# EXHIBIT A



### UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,304 | 05/23/2012 | 7,469,381 | P4304USREX2/120730-002US | 4807 |

108491     7590     03/29/2013

Apple Inc. and Goldberg, Lowenstein
& Weatherwax LLP
11400 W. Olympic Blvd.
Suite 400
Los Angeles, CA 90064

| EXAMINER |
|---|
| BONSHOCK, DENNIS G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/29/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

BRYAN CAVE LLP

1290 AVENUE OF THE AMERICAS

NEW YORK, NY  10104

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,304*.

PATENT NO. *7,469,381*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/012,304 | Patent Under Reexamination<br>7,469,381 |
|---|---|---|
| | Examiner<br>DENNIS BONSHOCK | Art Unit<br>3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a☒ Responsive to the communication(s) filed on <u>15 January 2013</u> .   b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination
certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days
will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.      3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.  4. ☐ _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims <u>1-20</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☐ Claims <u>14, 17, 18</u> are patentable and/or confirmed.
4. ☒ Claims <u>1-13, 15, 16, 19, 20</u> are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
      a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have
      1☐ been received.
      2☐ not been received.
      3☐ been filed in Application No. _____ .
      4☐ been filed in reexamination Control No. _____.
      5☐ been received by the International Bureau in PCT application No. _____.
      * See the attached detailed Office action for a list of the certified copies not received.
9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal
      matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D.
      11, 453 O.G. 213.
10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/012,304                       Page 2

Art Unit: 3992

## FINAL OFFICE ACTION

### *ex parte* Reexamination

This is an *ex parte* reexamination of U.S. Patent Number: 7,469,381 (Ording).

This action addresses patent claims 1-20 for which it has been determined in the Order

Granting *ex parte* Reexamination mailed 7-25-2012 that a substantial new question of

patentability was raised in the Request for ex parte reexamination filed 5-23-2012. This

is a Final Action in response to the request for reconsideration filed 1-15-2013.

Availability of References as Prior Art:

Claims 1-20 are reexamined on the basis of the following references:

Lira – PCT Publication no. WO 03/081458 by Luigi Lira

Ording '975 - U.S. Patent No. 7,786,975 issued to Ording et al.

Van Den Hoven – PCT Publication no. WO 01/029702 by Elise A. W. H. Van Den

Hoven

Declarations:

The Examiner has fully considered the Declarations Under 37 C.F.R. § 1.131 by

Greg Christie and Bas Ording, as well as the Declarations Under 35 C.F.R. § 132 by

Brad A. Myers, Ph.D.

Application/Control Number: 90/012,304                                    Page 3
Art Unit: 3992

<u>Rejections:</u>

The following rejections are utilized by the Examiner below, referencing the

proposed prior art listed on pages 23-85 of the Request:

Rejection A:  Claims 1-6, 8-12, 16, 19, and 20 as being anticipated by Lira

Rejection B:  Claims 7, 13, and, 15 as being obvious over Lira

Rejection D:  Claims 1-5, 7-13, and 15-20 as being anticipated by Ording '975

(since removed over the 1.131 declaration)


**REJECTIONS OVER LIRA**


With respect to the following rejections over Lira, the "edge of the electronic

document" has been shown to be capable of being construed as an internal edge, as

opposed to being limited to the outer edge of a document as a whole.  The Courts agree

with the Examiner's independently formulated interpretation, as can be seen in the April

4, 2012 Order Construing Disputed Claim Terms of the '381 Patent issued by the

Federal District Court for the Northern District of California in *Apple Inc. v. Samsung

Elecs. Co.,* 5:11-CV-01846-LHK, ECF No. 849 (Exhibit 7), where it was decided that "an

electronic document can be embedded in another electronic document, and therefor the

"edge of an electronic document" is not limited to "external" edges."  Under Lira, whole

documents (webpages) further contain individual images and column based text

portions (see page 11, line 27 through column 12, line 2 and in figure 8A) that are

internal to the webpage as a whole yet present internal boundaries where bounce back

Application/Control Number: 90/012,304                                          Page 4
Art Unit: 3992

is effected responsive to the window being misaligned with the column based sub-

document content (see page 15, lines 18-31).   Furthermore, under Lira, the column in

which the display window is located over could be an outside column where when the

window is moved away from the document and over an outside boundary, the bounce

back could be responsive to the document as a whole, moving from the whitespace on

the top, bottom, and sides of the webpage back over the webpage.

**REJECTION A:**

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in
the United States.

Claims 1-6, 8-12, 16, 19, and 20 are rejected under 35 U.S.C. 102(b) as being

anticipated by Lira.

The following claim mappings in the Request are incorporated by reference:

Claims 1-6 (Request Pages 23-38, Exhibit 6, Part A, Pages 1-18)

Claims 8-12 (Request Pages 39-41, Exhibit 6, Part A, Pages 21-24)

Claim 16 (Request Pages 42-43, Exhibit 6, Part A, Page 26)

Application/Control Number: 90/012,304                                    Page 5
Art Unit: 3992

      Claims 19-20 (Request Pages 26-37, Exhibit 6, Part A, Pages 26-30)


Rejection A Breakdown:

      This section acts as a supplement to the rejections set forth in the Non-final

Office Action, further showing how there are multiple ways in which the navigable

interface of LIRA can read on the independent claims.   Though this section shows a

detailed one to one correspondence with respect to claim 1, claims 19 and 20 have

nearly identical limitations and are rejected for the same reasons.


    **Edge between two columns:**

      There are two different sub-ways of interpreting the internal edges here, (a) one

interprets each column / image as an individual sub-document that is part of the larger

document (see page 11, line 1 through page 12, line 2), (b) the other interprets the

entire HTML page as a single document with internal edges between columns / images

/ header / colophon and relies upon the fact that the original document is broken into

document pieces and then reassembled, leaving internal edges in the document where

it has been pieced together and recorded in HTML or a language other than HTML (see

page 11, lines 1-24).  However, under each interpretation there exists these internal

edges between documents / document portions / images that is more than just a line or

a space between column based content but also acts as a smart border that interprets a

user's scrolling / panning intention, where a user would have to show that they really

intend to leave a column (through increased movements) to be directed to an adjacent

column and leave the prior (see page 15, lines 18-31), otherwise upon termination of

input the user would be relocated / reentered over the current column content of

interest.


**1. A computer-implemented method, comprising: at a device with a touch screen**

**display: displaying a first portion of an electronic document;**

      With respect to the device containing a computer device comprising a touch

screen, Lira discloses "a device having a small display.., for example, a PDA." Lira, p. 1,

lns. 16-17. "The display may include a touch screen." Lira, p. 3, ln. 10. See Exhibit 6,

Part A at 1 and 26-27.  With respect to displaying a first portion, Lira discloses a system

for traversing / panning / scrolling across a display where any display of any portion of a

document could read on this "first portion".  This first portion can be any portion of a

document or a portion of a sub-document and an adjacent sub-document, or a portion

of a document and a border (where any document portion may also be an image as per

page 11, line 27 through page 12, line 2 and various figures of LIRA that show

imbedded images), as input appears to already be placed on the display when the claim

initiates and provides for "movement of an object on or near the touch screen display",

only after removal of input will the window "snap" to display a centered column (see

page 15, lines 18-31).  Figure 14B for example provides for a path in which a user

traverses the display showing the example portions (along with several to several

hundred intermediate positions not displayed in the animated traversal).

Application/Control Number: 90/012,304                                    Page 7
Art Unit: 3992

**detecting a movement of an object on or near the touch screen display; in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion;**

Lira discloses detecting a movement of an object - namely, a stylus (which, is an example of an object disclosed in the '381 Patent (see, e.g., col. 12:66-col. 13:1)) - on the touch screen display. Lira further discloses translating the electronic document in a first direction in response to detecting the movement. For example, Lira discloses "touch-and-drag" scrolling, where the user can "scroll the display window by placing a stylus 600 on the display window 605 and then dragging the stylus 600." Lira, p. 11, lns. 27-29. Lira discloses detecting such movement based on "tracking the motion of the input tool on the touch screen." Lira, p. 3, lns. 1-14. As the user drags the display window to scroll in a first direction (see the general downward direction in which the filled arrows below point), the electronic document is translated in the display so that a second portion of the electronic document that is different than the first portion of the electronic document will be displayed, as illustrated in Figure 14B.  This second portion can be any portion of a document or a portion of a sub-document and an adjacent sub-document, or a portion of a document and a border, only after removal of input will the window "snap" to display a centered column (see page 15, lines 18-31).

**in response to an edge of the electronic document being reached while
translating the electronic document in the first direction while the object is still
detected on or near the touch screen display: displaying an area beyond the edge
of the document, and displaying a third portion of the electronic document,
wherein the third portion is smaller than the first portion; and**

Lira discloses in response to an edge of the electronic document being reached
(while translating the document in the first direction and while the object is still detected
on the touch screen) displaying an area beyond the edge of the document.

More specifically, Lira discloses "vertical alignment control" which will align the
display window to an edge of the electronic document. In one embodiment, "the vertical
alignment control is enabled when the user lifts the pen 1200 from the display 1205,"
which causes the column" to snap into alignment with the display window as the user
stops scrolling." Lira, p. 15, ins. 18-31. Thus, before the user lifts the pen, the translation
will remain while the object/pen is still detected on the touch screen displaying any area
the user is navigating over such as an area beyond the edge, when the edge of the
document (or image) is reached.

Figure 14B illustrates this "snap-to" behavior, including the conditions that trigger
this "snap" behavior. As shown and highlighted in the annotated figure, the display
window is displaying an exemplary area beyond the edge of the logical column 1220.
Specifically, the display window 1205 is displaying an area of logical column 1220 and
also displaying an area of logical column 1225 (a separate electronic document /
document portion).

Application/Control Number: 90/012,304                                    Page 9
Art Unit: 3992

     Lira also discloses displaying a third portion of the electronic document that is

smaller than the first portion, this third portion being smaller than a first portion as the

user has scrolled off of the current document / document portion and over the in-

between area and / or over an adjacent document / document portion (where again

each document/column could be an image document/column). Continuing the example

illustrated in the same figure herein, as the user continues to drag the display window

beyond the edge of the logical column 1220, the display window will increasingly pan

over the in between area and over areas of logical column 1225. When this occurs,

because the display window is only devoting a portion of its display area to the display

of logical column 1220, the third portion of the column 1220 being displayed is naturally

smaller than the first portion of column 1220 as depicted in the figure.


**in response to detecting that the object is no longer on or near the touch screen**

**display, translating the electronic document in a second direction until the area**

**beyond the edge of the electronic document is no longer displayed to display a**

**fourth portion of the electronic document, wherein the fourth portion is different**

**from the first portion.**

     Lira discloses, in response to detecting that the object is no longer on the touch

screen display, translating the electronic document in a second direction until the area

beyond the edge of the electronic document is no longer displayed to display a fourth

portion of the electronic document. More specifically, Lira discloses that, in response to

detecting that "the pen 1200 is lifted from the screen," the document 1220 will "snap"

Application/Control Number: 90/012,304                                    Page 10
Art Unit: 3992

into alignment (i.e., it will be translated in a second direction) such that the area beyond

the edge is no longer displayed. "[A]s the pen 1200 is lifted from the screen" certain

actions occur depending on whether the scrolling from column 1220 to column 1225

doesn't exceed a certain threshold. Specifically, when the user lifts the stylus or finger

from the screen, "the logical column 1220 [will] snap into alignment with the display

window 1205 as the user stops scrolling" by for example "snap[ping] to the nearest

logical column." Lira, p. 15, lns. 19-25. This action is taken as a result of an indication of

"an intention to continue to view the text column 1220" and, thus, "the display 1205

centers the logical column 1210 as the pen 1200 is lifted from the screen." Id.

        This snap-to function moves the document in a second direction, as indicated in

the white arrow in Figure 14B, until the area beyond the edge of the column is no longer

displayed. This will result in a fourth portion of the column 1220 being displayed, and

will also result in no area of column 1225 being displayed.


        The depiction of figure 14B below has been annotated with grey areas by the

Examiner to denote areas between the reformatted document areas, where the user is

capable of navigating to while the input is on the display, however this navigation is

subject to snapping to the nearest column upon removing the input (as per page 15,

lines 18-31).   Further Note: the area beyond the edge of a document may contain

space as well as another document area, as it still meets the claim limitation of being an

"area beyond the edge of the document".



FIG. 14B

**Edge between a column and an outside area:**

Lira provides for an embodiment where a user can scroll horizontally between columns with their finger on the screen, say the user starts on the middle column (first portion) of figure 10 and then moves their finger horizontally so as to display portions of each of the middle and the left column (second portion of the document), as the user continues to scroll horizontally eventually they reach the left edge of the left column, and even overtake the border displaying an area outside of the columns (outside of the document) along with a smaller area of the document (third portion) (see the first AOL browser window in figure 10), then according to and implementation explicitly defined in Lira of a "vertical alignment control", "when the user lifts the pen" (or finger) the window "snap"s to the nearest logical column, or in this case the left column, thereby displaying the fourth portion (as on page 15, lines 18-31 and on figure 14B).  This allows the bounds of the reformatted document to be overtaken so as to show that the document ends at this point, but then upon a release of the input replaces the user over the document as is described in the '381patent.  The outside edge could also be reached through downward scrolling in the far left or far right column (similar to 14B, but in an outside column), where when a horizontal component is added to the downward component of the scroll (diagonal), the windows leave the bounds of the columns area and into the area outside the columns on either the left or right.  Again, the beginning point of the scrolling (first portion) can be any portion of a document or a portion of a

Application/Control Number: 90/012,304                          Page 13
Art Unit: 3992

sub-document and an adjacent sub-document, or a portion of a document and a border

(where any document portion may also be an image as per page 11, line 27 through

page 12, line 2 and various figures of LIRA that show imbedded images), as input

appears to already be placed on the display when the claim initiates and provides for

"movement of an object on or near the touch screen display".

Again, there are two different sub-ways of interpreting the displayed content (a)

one interprets the reformatted HTML document as a plurality of pieced together

documents (header, columns, colophon) comprising shrunken columns that leaves

space outside of the column area on the left and right (boundary area) (see page 11,

line 1 through page 12, line 2), (b) the other interprets the reformatted HTML document

as a single reformatted document comprising shrunken columns that leaves space

outside of the column area on the left and right (boundary area) (see page 11, lines 1-

24).

**1. A computer-implemented method, comprising: at a device with a touch screen**

**display: displaying a first portion of an electronic document;**

With respect to the device containing a computer device comprising a touch

screen, Lira discloses "a device having a small display.., for example, a PDA." Lira, p. 1,

lns. 16-17. "The display may include a touch screen." Lira, p. 3, ln. 10. See Exhibit 6,

Part A at 1 and 26-27.  With respect to displaying a first portion, Lira discloses a system

for traversing / panning / scrolling across a display where any display of any portion of a

document could read on this "first portion".  This first portion can be any portion of a

document or a portion of a sub-document and an adjacent sub-document, or a portion

Application/Control Number: 90/012,304                              Page 14
Art Unit: 3992

of a document and a border (where each document/column could be an image document/column), only after removal of input will the window "snap" to display a centered column (see page 15, lines 18-31).  Figure 10 provides for a direct horizontal traversal where window states include views of (a) single columns, (b) single columns and intermediate column blank space, (c) multiple columns including intermediate blank space, and (d) a single column along with area beyond the outside left / right border of all columns.  Figure 14B for example provides for a path in which a user traverses the display showing the example portions (along with several to several hundred intermediate positions not displayed in the animated traversal). The outside edge could also be reached through a traversal of downward scrolling in the far left or far right column (similar to 14B, but in an outside column), where when a horizontal component is added to the downward component of the scroll (diagonal), the windows leave the bounds of the columns area and into the area outside the columns on either the left or right.  Again, the beginning point of the scrolling (first portion) can be any portion of a document or a portion of a sub-document and an adjacent sub-document, or a portion of a document and a border (where any document portion may also be an image as per page 11, line 27 through page 12, line 2 and various figures of LIRA that show imbedded images), as input appears to already be placed on the display when the claim initiates and provides for "movement of an object on or near the touch screen display".

Application/Control Number: 90/012,304                                           Page 15
Art Unit: 3992

**detecting a movement of an object on or near the touch screen display; in
response to detecting the movement, translating the electronic document
displayed on the touch screen display in a first direction to display a second
portion of the electronic document, wherein the second portion is different from
the first portion;**

Lira discloses detecting a movement of an object - namely, a stylus (which, is an
example of an object disclosed in the '381 Patent (see, e.g., col. 12:66-col. 13:1)) - on
the touch screen display. Lira further discloses translating the electronic document in a
first direction in response to detecting the movement. For example, Lira discloses
"touch-and-drag" scrolling, where the user can "scroll the display window by placing a
stylus 600 on the display window 605 and then dragging the stylus 600." Lira, p. 11, lns.
27-29. Lira discloses detecting such movement based on "tracking the motion of the
input tool on the touch screen." Lira, p. 3, lns. 1-14. As the user drags the display
window to scroll in a first direction (see the general downward direction in which the
filled arrows below point), the electronic document is translated in the display so that a
second portion of the electronic document that is different than the first portion of the
electronic document will be displayed, as illustrated in Figure 14B (similar movement
could be effected horizontally).  This second portion can be any portion of a document
or a portion of a sub-document and an adjacent sub-document, or a portion of a
document and a border, only after removal of input will the window "snap" to display a
centered column (see page 15, lines 18-31), otherwise the user is capable of moving

Application/Control Number: 90/012,304                                    Page 16
Art Unit: 3992

the displayable window to any position across the viewable content without any

document based constraints taking effect.

**in response to an edge of the electronic document being reached while**

**translating the electronic document in the first direction while the object is still**

**detected on or near the touch screen display: displaying an area beyond the edge**

**of the document, and displaying a third portion of the electronic document,**

**wherein the third portion is smaller than the first portion; and**

Lira discloses in response to an edge of the electronic document being reached

(while translating the document in the first direction and while the object is still detected

on the touch screen): displaying an area beyond the edge of the document.

More specifically, Lira discloses "vertical alignment control" which will align the

display window to an edge of the electronic document. In one embodiment, "the vertical

alignment control is enabled when the user lifts the pen 1200 from the display 1205,"

which causes the column" to snap into alignment with the display window as the user

stops scrolling." Lira, p. 15, ins. 18-31. Thus, before the user lifts the pen, the translation

will remain while the object/pen is still detected on the touch screen displaying any area

the user is navigating over such as an area beyond the edge of an outside column (or

image), when the edge of the document is reached.

Figure 14B illustrates this "snap-to" behavior, including the conditions that trigger

this "snap" behavior. As shown and highlighted in the annotated figure, the display

window is displaying an exemplary area beyond the edge of the logical column 1220, a

Application/Control Number: 90/012,304                                    Page 17
Art Unit: 3992

similar snap to nearest column would be effected when a user has located the view

window outside of an left edge or right edge of all columns, so as to be located partially

over one of the areas outside of the reformatted document area.

Lira also discloses displaying a third portion of the electronic document that is

smaller than the first portion, this third portion being smaller than a first portion as the

user has scrolled off of the current document / document portion and over the areas

outside of the reformatted document area (see figure 10s left most window depiction).

When this occurs, because the display window is only devoting a portion of its display

area to the display of logical column 905, the third portion of the column 905 being

displayed is naturally smaller than the first portion of column depicted as any of the

other window views of figure 10.

**in response to detecting that the object is no longer on or near the touch screen
display, translating the electronic document in a second direction until the area
beyond the edge of the electronic document is no longer displayed to display a
fourth portion of the electronic document, wherein the fourth portion is different
from the first portion.**

Lira discloses, in response to detecting that the object is no longer on the touch

screen display, translating the electronic document in a second direction until the area

beyond the edge of the electronic document is no longer displayed to display a fourth

portion of the electronic document. More specifically, Lira discloses that, in response to

detecting that "the pen 1200 is lifted from the screen," the document will "snap" into

alignment (i.e., it will be translated in a second direction) such that the area beyond the far left or far right edge is no longer displayed.  As represented by the intermediate column example, "[A]s the pen 1200 is lifted from the screen" certain actions occur depending on whether the scrolling from column 1220 to column 1225 doesn't exceed a certain threshold. Specifically, when the user lifts the stylus or finger from the screen, "the logical column 1220 [will] snap into alignment with the display window 1205 as the user stops scrolling" by for example "snap[ping] to the nearest logical column." Lira, p. 15, lns. 19-25. This action is taken as a result of an indication of "an intention to continue to view the text column 1220" and, thus, "the display 1205 centers the logical column 1210 as the pen 1200 is lifted from the screen." Id.

This snap-to function moves the document in a second direction, as indicated in the white arrow in Figure 14B (only with respect to the outside edge of the left or right column), until the area beyond the edge of the column is no longer displayed. This will result in a fourth portion of the column 1220 being displayed, and will also result in no area of column 1225 being displayed, or as in figure 10 this will result in the left column being displayed in the view window, with no area of the areas outside of the reformatted document area being displayed.


The depiction of figure 10 below has been annotated with grey areas by the Examiner to denote areas outside of the reformatted document area, where the user is capable of navigating to while the input is on the display, however this navigation is still

Application/Control Number: 90/012,304                    Page 19
Art Unit: 3992

subject to snapping to the nearest column upon removing the input (as per page 15,

lines 18-31).



**FIG. 10**

Application/Control Number: 90/012,304                                        Page 20
Art Unit: 3992

Other figures including 8A and 16 show navigation outside of the horizontal

borders of the header and colophon as well, let alone the reformatted columns.



FIG. 16

Application/Control Number: 90/012,304                                    Page 21
Art Unit: 3992

**REJECTION B:**

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 7, 13, and 15 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Lira.

The following claim mappings in the Request are incorporated by reference:

Claim 7 (Request Pages 43-44, Exhibit 6, Part B, Pages 1-6)

Claims 13 and 15 (Request Pages 45-47, Exhibit 6, Part B, Pages 1-2, 6-9)

**REJECTION D:**

### REJECTIONS OVER ORDING '975

The rejections over the Ording '975 reference have been removed in response to

the 37 C.F.R. § 1.131 declaration filed by Mr. Ording.

**Statement of Reasons for Patentability and/or Confirmation**

Application/Control Number: 90/012,304                                    Page 22
Art Unit: 3992

Claims 14 specifically teaches "the area beyond the edge of the document is visually distinct from the document", where Lira at no point mentions displaying the area beyond the edge of the document as visually distinct from the document.  Claim 14 is herein confirmed for the reasons provided above.

Claim 17 specifically teaches "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document; and wherein displaying an area beyond the edge of the electronic document comprises translating the electronic document in the first direction for a second associated translating distance, wherein the second associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document."  This basically has to do with dampening the movement of the display once the edge is crossed, where Lira at no point mentions such as dampening of the movement once the edge is crossed.  Claim 17 is herein confirmed for the reasons provided above.

Claim 18 specifically teaches "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object, and wherein displaying an area beyond the edge of the electronic document comprises translating the electronic document in the first direction at a second associated translating speed, wherein the second associated translating speed is slower than the first associated translating speed".  This basically has to do with dampening the speed of translation of the display

Application/Control Number: 90/012,304                                    Page 23
Art Unit: 3992

once the edge is crossed, where Lira at no point mentions such as dampening of the

speed of translation once the edge is crossed.  Claim 18 is herein confirmed for the

reasons provided above.


### *Response to Amendment*

The Declaration filed on 1/15/2013 under 37 CFR 1.131 is sufficient to overcome

the Ording et al. reference.


### Summary of the Offices position:

Given the Myers affidavit and arguments submitted by Patent Owner questioning

separation / edge between adjacent columns and diagonal movements, the below

described interpretation holds for interpreting all the columns as a document as a whole

while providing completely horizontal movement.

Lira provides for an embodiment where a user can scroll horizontally between

columns with their finger on the screen, say the user starts on the middle column (first

portion) of figure 10 and then moves their finger horizontally so as to display portions of

each of the middle and the left column (second portion of the document), as the user

continues to scroll horizontally eventually they reach the left edge of the left column, and

even overtake the border displaying an area outside of the columns (outside of the

document) along with a smaller area of the document (third portion) (see the first AOL

browser window in figure 10), then according to and implementation explicitly defined in

Lira of a "vertical alignment control", "when the user lifts the pen" (or finger) the window

Application/Control Number: 90/012,304                                    Page 24
Art Unit: 3992

"snap"s to the nearest logical column, or in this case the left column, thereby displaying

the fourth portion.  This allows the bounds of the reformatted document to be overtaken

so as to show that the document ends at this point, but then upon a release of the input

replaces the user over the document as is described in the '381patent.

Figure 14B teaches an analogous situation, where the user is scrolling in a

common down direction and although continually crossing the edge of an interior

column, the system eventually shown provides the bounce back only upon the user

releasing a contact when the window  is positioned on an area that includes an area not

in the interior column.


With regard to Patent Owner arguments that there is " no indication that, when

the electronic document is reformatted into a page having logical columns, the result

would be more than one document"; the Examiner respectfully submits that webpages

are known in the art to contain subdocument such as images that are separate files

imbedded within webpages (see figure 10 which clearly displays an image).

Remember, this Web page stopped being a traditional web page when it was

reformatted and prepared for display on the small screen display device.  The web page

(if it is still even recorded in HTML) was broken apart into components and then

reformatted in to aligned columns that are viewable on the small display (see page 11,

lines 1-9), while containing intelligent boundaries in between that interpret whether the

user intends on traversing a single column or desires to move to an adjacent area.

Never-the-less, even if all the column based content is one document, the area between

Application/Control Number: 90/012,304                                    Page 25
Art Unit: 3992

the columns and the area outside the bounds of all the columns (boundaries) is still non-

document content.


With regard to Patent Owner arguments that the area outside of the columns of

Lira is still part of the webpage; the Examiner respectfully submits that the content of the

document is reformatted where each portion is reformatted to best be viewed on a small

screen display device.  Noted embodiments include:  1) placing header, body, and

footer into a single column the width of the display window (see page 9, paragraph 5

and figure 3);  2)  separating the page into components and reformatting each of a

plurality of columns into a logical column with a width that is less than or equal to the

display window width (page 10, line 22 through page 11, line 17).


Additionally, Lira notes reformatting a page so as to create a plurality of logical

columns sized to the display window size, while allowing the header and colophon to

maintain their previous dimensions.  These columns are "reduced to a width that does

not exceed the width of the display window" (see page 10, paragraphs 1-3).  Lira at no

point describes reformatting a border area outside of the columns, merely showing it as

a traversable outside of the documents limits.


To better show the limits of the page in Lira, the page itself need be defined.  Lira

provides for the reformatting of a page coded in HTML, or a web page (see page 9,

paragraph 6 through page 10, paragraph 3), where Lira defines the page as elements

Application/Control Number: 90/012,304                                    Page 26
Art Unit: 3992

400 and 415, corresponding to the ordinary and reformatted page respectively.  Each

page is said to consist of 4 elements:

    for the ordinary web page:

        402, 404, 406, and 408 each having differing widths as ordinarily sized to

fit within a wide window; and



FIG. 4A

Application/Control Number: 90/012,304                                    Page 27
Art Unit: 3992

for the reformatted web page or non-HTML based content:

417, 419, 421, and 423 with widths corresponding to the width of the

narrow display

Application/Control Number: 90/012,304                                    Page 28
Art Unit: 3992



FIG. 4B

As Lira then reformats the page to the display of figure 4B, there is left as

additional space on the sides of the reduced columns that is not defined by the

document (not a portion of the 4 elements of the document).    Figures 8C and 10

Application/Control Number: 90/012,304                                    Page 29
Art Unit: 3992

show that this space outside of the columns can be navigated to, when the user

maintains input contact with the display, showing and area devoid of document

content.  This area has been greyed in by the Examiner to better illustrate the

offices position.



Where this area outside of the column document area, is only shown until

the user removes contact from the display, at which point a "vertical allignmet

control" causes the nearest logical column to snap into allignment with the

display window, thereby removing display of the non-document / outside area.

Additionally, a "horizontal allignment control" may also be used to keep the

document within the bounds of the display (see page 15, third paragraph through

page 16, third paragraph).



FIG. 14B

With regard to arguments by the Patent Owner regarding what is

interpretable as an edge of the document, Lira has been shown to take the

webpage and reformat into a more easily viewable form for a small screen

display device, doing this by creating its own logical columns intelligently sized so

as to fit within the screens bounds.  These logical columns are then displayed

adjacent to one another, and traversable in-between, but this is not a typical

traversal as would be the case if this were the original web page document, but

Application/Control Number: 90/012,304                                      Page 31
Art Unit: 3992

rather an intelligent constrained navigation where a user would have to show that

they really intend to leave a column (through increased movements) to be

directed to an adjacent column and leave the prior (see page 15, lines 18-31).

This new gap that exists between the columns is not part of the original

document but rather a non-document portion defined by the area between the

edges of the two logical columns.

Even if the internal edges where not edges of the document, which the

Office contends that they are and is further supported by the courts construction

of claim terms of exhibit 7 pages 17-23, the area outside of the columns would

clearly be an area beyond the edge, where this area can clearly be reached upon

traversal (see Figures 8C and 10).  The '381's specification even further defines

that a wallpaper image is displayed beyond the edge of the document (see

column 27, lines 36-40).  To say that the area outside of the columns is still part

of the document contradicts the teachings of Lira which shrinks columns so as to

allow them to fit within the reduced size display.  When the columns are shrunk

space is left below the header on the sides of the columns where document

content previously existed.  To go even one step further, Lira shows

embodiments where the window traversal stretches outside of the bounds of the

header and colophon (see figures 8C and 16, amongst others).


**Answers to individual arguments:**

**I.**

Application/Control Number: 90/012,304                                      Page 32
Art Unit: 3992

**A.**

**B.    Alignment Control Arguments**

With regard to the first described embodiment of "vertical alignment control" where horizontal wobble is minimized during vertical scrolling, so that slight horizontal motion is ignored (as described in page 14, third paragraph through page 15, second paragraph), the **Examiner agrees with the Patent Owner** that this can't read upon claimed "translating the electronic document in a second direction", as this action is occurring while input is applied and the purpose of this is to keep the window in display thereby not allowing an "area beyond the edge of the document" to come into view. However, the "another" second "implementation" of the "vertical alignment control", which is described on page 15, third paragraph through page 16, third paragraph). Under this second implementation of the "vertical alignment control", the user traverses the document allowing the document to be scrolled past its bounds when a user input is contacting the display, however, "when the user lifts the pen" (or finger) the window "snap[s]" to the nearest logical column, thereby displaying the fourth portion.  This allows the bounds of the reformatted document to be overtaken so as to show that the document ends at this point, but then upon a release of the input replaces the user over the document as is described in the '381 patent.

Application/Control Number: 90/012,304                                    Page 33
Art Unit: 3992

   Patent Owner argues that "Lira only depicts this "wobble" correction functionality in connection with a center column in a web page that has been reformatted into three columns, see Lira Fig. 14B.in connection with a center column in a web page that has been reformatted into three columns, see Lira Fig. 14B."

   In response, the Examiner respectfully submits that it is clear that what is shown in figures 14A and 14B is an example embodiment, where the center column is used.  It is clear by reading the disclosure that similar functionality would be performed for either the right or left column as well regarding all column edges (see page 15, third paragraph through page 16, third paragraph).


   Patent Owner argues that "As Professor Myers explains, these two implementations of the vertical alignment control in Figs. 14A and 14B, as described here, cannot be used for the same column at the same time, for one must operate when the pen is on the screen, and one must operate only after the user's pen lifts off the display. Myers Decl. paragraph 71."

   In response, the **Examiner agrees with the Patent Owner in this respect**.  The rejection utilizes the second implementation to cover the claim by itself.


   Patent Owner argues that "Indeed, Lira discloses nothing about what would occur if a user reached the top or bottom of one of Lira's columns. As Professor Myers

Application/Control Number: 90/012,304                           Page 34
Art Unit: 3992

explains, a person of ordinary skill in the art reading Lira at the time the '381 invention

was made would expect that, for example, if the user scrolled to the bottom of one of

Lira's logical columns, the user would simply continue moving down so the rest of the

page below it could be seen. See Myers Decl. ¶ 73."

In response, the Examiner respectfully submits that Lira provides additionally for

a "similar horizontal alignment control" to keep a user within the vertical limits of a

document (see page 16, first paragraph).  Where the combination of horizontal and

vertical document constraints is further discussed on page 16, third paragraph, noting:

> *The horizontal component may be compared to the threshold to constrain*
>
> *horizontal motion of the page 1210 in the display window 1205 … Vertical motion*
>
> *may be left unconstrained, or may be compared to the same or a different*
>
> *threshold.*

Patent Owner argues that "Lira never discloses any displayable area beyond the

edge of the web page, or beyond the edge of any electronic document, and as

Professor Myers explains, a person of ordinary skill in the art at the time of the '381

invention would not have expected the AOL browser in Lira's figures or touch screen

devices to allow display of areas beyond the web page. See Myers Decl. ¶ 67."

In response, the Examiner respectfully submits that the content of the document

is reformatted where each portion is reformatted to best be viewed on a small screen

display device.  Noted embodiments include:

Application/Control Number: 90/012,304                                    Page 35
Art Unit: 3992

  1) placing header, body, and footer into a single column the width of the display window (see page 9, paragraph 5 and figure 3);

  2).  Additionally, Lira notes reformatting a page so as to create a plurality of logical columns sized to the display window size, while allowing the header and colophon to maintain their previous dimensions.  These columns are "reduced to a width that does not exceed the width of the display window" (see page 10, paragraphs 1-3).

  Lira at no point describes reformatting a border area outside of the columns, merely showing it as a traversable area outside of the documents limits.  Further see the detailed description above describing the document edges and the area outside of the webpage.


**II.**

  **A.**

  Patent Owner argues that "Notably, the Office Action asserts, without expressed support, that each of the columns within a web page, plus the web page itself, are each individually electronic documents, and also cumulatively a single electronic document, see. e.g., Request, Exhibit 6, Part A, page 2 (emphasis added): As disclosed in Lira, the electronic document may be a web page with structured elements such as columns. Each Logical column may be further treated as an electronic document as discussed further below, where each logical column (e.g., items 1215, 1220, and 1225 shown in Figure 14) are subdocuments in a larger electronic document: the web page. See also, e.g., id. pages 5-8, 11-12."

Application/Control Number: 90/012,304                                                 Page 36
Art Unit: 3992

In response, the Examiner respectfully submits that webpages are known in the

art to contain subdocument such as images that are separate files imbedded within

webpages (see figure 10 which clearly displays an image).  Remember, this Web page

stopped being a traditional web page when it was reformatted and prepared for display

on the small screen display device.  The web page (if it is still even recorded in HTML)

was broken apart into components and then reformatted in to aligned columns that are

viewable on the small display (see page 11, lines 1-9), while containing intelligent

boundaries in between that interpret whether the user intends on traversing a single

column or desires to move to an adjacent area.  Never-the-less, even if all the column

based content is one document, the area between the columns and the area outside the

bounds of all the columns (boundaries) is still non-document content.


Patent Owner argues (from page 19) that "First, as explained in detail below, Lira

does not disclose column 1220 in Lira Fig. 14B to be "the electronic document."

Therefore, no edge of column 1220 can be "an edge of the electronic document.""

In response, the Examiner respectfully submits that Lira has been shown to take

the webpage and reformat into a more easily viewable form for a small screen display

device, doing this by creating its own logical columns intelligently sized so as to fit within

the screens bounds.  These logical columns are then displayed adjacent to one another,

and traversable in-between, but this is not a typical traversal as would be the case if this

were the original web page document, but rather an intelligent constrained navigation

Application/Control Number: 90/012,304                                    Page 37
Art Unit: 3992

where a user would have to show that they really intend to leave a column (through

increased movements) to be directed to an adjacent column and leave the prior.  This

new gap that exists between the columns is not part of the original document but rather

but rather a non-document portion defined by the area between the edges of the two

logical columns.

Even if the internal edges where not edges of the document, which the Office

contends that they are and is further supported by the courts construction of claim terms

of exhibit 7 pages 17-23, the area outside of the columns would clearly be an area

beyond the edge, where this area can clearly be reached upon traversal (see Figures

8C and 10).  The '381's specification even further defines that a wallpaper image is

displayed beyond the edge of the document (see column 27, lines 36-40).  To say that

the area outside of the columns is still part of the document contradicts the teachings of

Lira which shrinks columns so as to allow them to fit within the reduced size display.

When the columns are shrunk space is left below the header on the sides of the

columns where document content previously existed.  To go even one step further, Lira

shows embodiments where the window traversal stretches outside of the bounds of the

header and colophon (see figures 8C and 16, amongst others).


**1.**

Patent Owner argues that "Lira uses the term "electronic document" over 50

times, but not to refer to logical columns. Instead, Lira consistently uses "electronic

Application/Control Number: 90/012,304                                    Page 38
Art Unit: 3992

document" to refer to the entire page of information that is reformatted into logical

columns."

In response, the Examiner respectfully submits that this argument has been

answered above in describing how: (1) the document has been separated into

component parts and reassembled as an intelligent document / document portions; (2)

just because the document may all be one document doesn't mean that it doesn't have

internal edges; (3) images can be imbedded in document having 4 edges between it

and the rest of the document.

Patent Owner argues that "Judge Koh of the Northern District of California,

whose claim construction order regarding the '381 patent was consulted in the Office

Action at 3, issued an order on December 2, 2011 finding that there was no reasonable

likelihood that the '381 patent could be found invalid over Lira, and found that Lira

"generally addresses the problem of browsing large documents - such as a web

page .... For example, the patent discloses a method to reconfigure the

document into multiple columns..." (Apple, Inc. v. Samsung, Inc., 11- cv-1846,

2011 WL 7036077, at *34 (N.D. Cal. Dec. 2,2011)) (emphases added)"

In response, the Examiner respectfully submits that Judge Koh doesn't appear to

explicitly state that "there was no reasonable likelihood that the '381 patent could be

found invalid over Lira".  The site provided by this argument "Apple, Inc. v. Samsung,

Application/Control Number: 90/012,304                                    Page 39
Art Unit: 3992

Inc., 11- cv-1846, 2011 WL 7036077, at *34" does not pertain to the statement provided

by the Patent Owner, please clarify.  Additionally, even if this had been the position

taken by the courts it would not be controlling on the Office's decision.  The entirety of

page 34 is reproduced below:

Application/Control Number: 90/012,304                                          Page 40
Art Unit: 3992

1    The evidence regarding the causation between Samsung's infringing conduct and an

2    irreparable harm to Apple is somewhat contradictory. It seems that at least some smartphone

3    purchasers consider the product's look in deciding which product to buy. For example, Samsung's

4    expert acknowledged that ███████████████████████████████████████

5    ████████████████ Wagner Dep. 28-29. ███████████████████

6    ███████████████████████████████████████████████████

7    ███████ Sood Reply Decl. Ex. D at 67; Rangel Reply Decl. Ex. A at 28. Moreover, at least one

8    of Samsung's own surveys indicates that ██████████████████████████████

9    ████████████████. Ho Decl. Ex. A at 10. This evidence suggests,

10   then, that product design generally is at least *one factor*, and for some people may be the *primary*

11   *factor*, influencing a person's decision to purchase a smartphone.

12        Samsung, in contrast, has provided some evidence that Apple's market share and potential

13   loss of customers is unrelated to Samsung's product design, and that smartphone design in general

14   is not a determinative factor in consumer decision-making. ████████████████████

15   ████████████████████ Wagner Decl. ¶¶ 35-36

16   & 40-43. This suggests that the driver in consumer demand may be the novelty of the product, and

17   not necessarily the design. ████████████████████████████████████

18   ████████████ Jenkins Decl. Ex. MM at 13. Samsung also offers

19   evidence that smartphone buyers are motivated to purchase products for a whole host of reasons,

20   ████████████████████████████████████████ Wagner Decl. ¶

21   81. Although Apple has offered some evidence that survey results underreport the impact that

22   design may have on consumer decision-making, it is not clear how much underreporting is likely to

23   occur. *See* Sood Reply Decl. ¶¶ 21-33.

24        Moreover, evidence regarding consumer choice is even more ambiguous in light of the fact

25   that Apple's patents do not claim the entire article of manufacture. Therefore, even if "design"

26   matters to a new smartphone purchaser, it is not clear how much design of the front face of the

27   phone matters to that same purchaser.

28        **3. Delay**

United States District Court
For the Northern District of California

34

Case No.: 11-CV-01846-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Application/Control Number: 90/012,304                                    Page 41
Art Unit: 3992

Patent Owner argues (on page 22) that "The columns are not independent of the web page, and there is no indication that they have any independent existence or meaning other than as a means of conveniently arranging a subset of the web page's content."

In response, the Examiner respectfully submits that this argument has been previously answered supra.

Patent Owner argues (on page 23) that "Nor does Lira disclose that it's reformatting ever creates, or leaves, any space, gap or separation between logical columns."

In response, the Examiner respectfully submits that it can be seen from figures 8, 9, 10, and 14, that when the webpage is reformatted into logical columns there exists space between these smartly sized and arranged columns that need be traversed across to reach an adjacent column.  Additionally, there exists space on the sides of the columns, where the display window can be selectively panned over.

Patent Owner argues that "Lira's columns have no area between them that is not part of one of the columns", citing the office actions statement that "in Figure 14B, if the background of the web page is a solid color (e.g., white), that will be the color of the

Application/Control Number: 90/012,304                                      Page 42
Art Unit: 3992

area beyond the edge of the document, given that the area beyond the edge [of column

1220] will be a portion of the neighboring column 1225. Thus, under this example, the

area beyond the edge of the column displayed is a solid color, e.g., white."

    In response, the Examiner respectfully submits that when a user is traversing

outside of the current column, they are either displayed with an area of blank space that

is not part of either column or a portion of another document column (see figure 14B),

that is separately identifiable as provided above.

    Patent Owner argues that "HTML as a common page topology that is usually

"readily reformatted into constrained sets of logical columns," see Lira page 10, lines 12

to 30. HTML does distinguish among the topology of headers, footers, the body of the

text, etc., see page 10, lines 13-20. However, the entire page with header, footer and

body in HTML is still a single document; see Myers Decl. paragraphs 55-57."

    In response, the Examiner respectfully submits that the reformatted document

that is created in Lira need not be an HTML document (see page 11, lines 2-9).  Where

this newly formatted document reacts differently to traversal than a traditional HTML

document, providing the ability to keep a user in a column that they are traversing by

providing a bounce back function (see column 15, paragraph 3).

Application/Control Number: 90/012,304                                    Page 43
Art Unit: 3992

## 2.  Arguments directed at the "edge" of "the electronic document"

  **a.**

  Patent Owner argues that "Given that the '381 patent's method 700 treated the boundary of internal Block 9 as if it were not an "edge of the electronic document," the '381 patent lends no support for treating Lira's internal reformatted column of information 1220 as an "electronic document" either."  The '381 specification is fully consistent with the use of the term "edge of the electronic document" to mean what might be called the "outer" edges of the webpage, rather than internal edges.

  In response, the Examiner respectfully submits that the patent speaks to navigation on a traditional webpage with all content navigable in a connected manner, no separate treatment for individual components.  Lira teaches utilizing each of the columns as their own individual component, where scrolling and navigation is done with respect to the current column (for example) (see page 14, paragraph 3 through column 16, paragraph 3).  Where a "vertical alignment control is enabled when the user lifts the pen" (or finger) causing and action to be performed to the column, where the display window "snap[s]" to the nearest logical column.


  Returning to the Courts claim construction and what had been previously agreed to:

  "Apple argues that "edge of an electronic document" is a plain, non-technical term that should be given its ordinary meaning, and that this ordinary meaning precludes the possibility of "internal" edges. For example, Apple argues that when

Application/Control Number: 90/012,304                                          Page 44
Art Unit: 3992

images are embedded within a webpage, the webpage is the electronic document. In

that context, the images within the webpage cannot also be electronic documents."

(see page 18 of Exhibit 7)

        …

        "Thus, the dispute centers around whether "edge of an electronic document" can

refer to edges that are within an electronic document or whether "edge of an electronic

document" refers only to an external boundary."  (see page 19 of Exhibit 7)

        …

        "Called on to resolve the dispute between the parties, the **Court agrees with**

**Samsung that an electronic document can be embedded in another electronic**

**document, and therefore that "edge of an electronic document" is not limited to**

**"external" edges."** (see page 19 of Exhibit 7)

        …

        "Under the express language of the claims, webpages and digital images are

examples of electronic documents. See '381 Patent at 36:4-7 (claims 6 and 7). Noting

that a webpage can contain multiple embedded digital images, Samsung argues that an

electronic document can include other embedded electronic documents. Samsung's

Resp. at 7. Thus, according to Samsung's reasoning, an edge of an electronic

document can be internal. At the hearing, Apple disagreed that a digital image within a

webpage would be an "electronic document." However, Apple has not offered a limiting

principle, rooted in the intrinsic evidence, to establish why an electronic document may

not be nested in another electronic document and why an "edge of an electronic

Application/Control Number: 90/012,304                                    Page 45
Art Unit: 3992

document" therefore may not be internal to the document in light of Samsung's

example. Thus, the claim language supports Samsung's position. With this

understanding, the Court looks to other evidence for guidance." (see pages 20-21 of

Exhibit 7)

　　　　　…

　　　　"Thus, while none of the Blocks in Figure 8C is an electronic document on which

the snap back function is applied in this specific embodiment, nothing in the

specification precludes any Block from being an electronic document in another

embodiment. Phillips, 415 F.3d at 1323 (noting that "persons of ordinary skill in the art

rarely would confine their definitions of terms to the exact representations depicted in

the embodiments"). Indeed, at the Markman hearing, **Apple accepted the notion that**

**a display window could contain two adjacent electronic documents for purposes**

**of the '381 Patent when each document scrolled independently from the other.**

**Markman Hr'g Tr. at 99-101."** (see pages 21-22 of Exhibit 7)

　　　　　…

　　　　"Moreover, Dr. Van Dam has not explained why a webpage beyond the edge of

an embedded digital image is "new information," such that the snap back feature does

not apply, while a wallpaper image beyond the edge of a digital image is not "new

information," such that the snap back feature does apply. See '381 Patent at 27:36-39

**(specification expressly discloses embodiments that display a "wallpaper image**

**such as a picture or pattern" beyond the edge of the electronic document)**. Nor

Application/Control Number: 90/012,304                                    Page 46
Art Unit: 3992

has Dr. Van Dam explained why this distinction would be apparent to a person skilled in

the art.

Apple has not justified adopting a construction that would limit the claims to one

embodiment in the specification. Alternatively, Samsung's construction is in harmony

with the claim language and the specification. Accordingly, the Court construes "edge of

[an or the] electronic document" to have its plain and ordinary meaning. Thus, **the**

**Court does not limit the term "edge of [and or the] electronic document" to mean**

**only an external edge as is urged by Apple. An "edge" of an electronic document**

**may be internal."**  (see page 23 of Exhibit 7)


In Summary, and as supported by the Examiner through independent evaluation

of web pages can and do contain other individual files/document embedded within them

each of which has an edge that acts as a border between it and other documents, the

parent document, and or non-document traversable areas.

Under Lira, whole documents (webpages) further contain individual images and

column based text portions (see page 11, line 27 through column 12, line 2 and in figure

8A), that are internal to the webpage as a whole, where bounce back is effected

responsive to the window being misaligned with the column based sub-document

content (see page 15, lines 18-31).   Furthermore, under Lira, the column in which the

display window is located over could be an outside column where when the window is

moved away from the document and over an outside boundary, the bounce back could

Application/Control Number: 90/012,304                                   Page 47
Art Unit: 3992

be responsive to the document as a whole, moving from the whitespace on the top,

bottom, and sides of the webpage back over the webpage.


To further support the Examiner's view that content columns/image embedded in

the webpage are themselves separate documents, the Examiner has supplied the an

online article written in 1998, by J.Koren, under the title of "Including Images in Web

Pages", at http://unsco.org/webworld/infotraining/inline.html, hereinafter UNdoc.  UNdoc

provides a description of exactly how images are embedded in documents, specifying

that:

-        "Even though the images are all seen together along with the text, each is

a separate file." (see page 1).


-        "To include an image in a web document, you need to use an image tag,

<IMG SRC="*address*">, where "address" is the address and name of a given image file.

It can be a relative or absolute address, following the rules for relative and absolute

addresses given in the tutorial on links. For instance:

<IMG SRC="images/books.gif"> produces:



Application/Control Number: 90/012,304                                  Page 48
Art Unit: 3992

Additionally, it is also important to remember that even if there are no internal

edges, Lira still provides for an ability to navigate to an area beyond the edges of the

document as a whole while input is maintained on the display, thereafter returning to the

column.

**b.    Arguments Directed Toward an "Edge of the Electronic Document"**

**i.**

Patent Owner argues that "The Offices interpretation of "edge of the electronic

document" is unclear".

In response, the Examiner respectfully submits that the document has several

edges as each of which is provided below:

1.    Edges of individual columns—There are two way to look at this:

(1) if the columns are each treated as individual documents, as the Examiner and

3PR agree, they are then each bordered on the top, bottom and sides with a document

edge that separates that particular column for other columns, the header, the colophon,

and / or  an area outside of all other document content.

(2) even if columns are not interpreted as individual documents they are still

separated by edges that separate them from other document segments (other columns,

the header, the colophon, and / or  an area outside of all other document content),

Application/Control Number: 90/012,304                                        Page 49
Art Unit: 3992

where the area between the separate document segments is defined by either the client

or the host that reformatted the webpage (see page 11, lines 1-24).

     Leaving at least the following edges:



FIG. 14B

2.     Edges of images – were image have been shown above with reference to the

UNdoc to be separate files than the webpage.  Leaving at least the following edges:



FIG. 14B

3.      Edges of the reformatted document as a whole- as when the document goes

through reformatting for display on a small screen display device as described in LIRA it

transitions form a page filling square of a document:



FIG. 4A

To a reformatted document where column sizes are shrunk to the width of the small

screen display device [425]:



**FIG. 4B**

Application/Control Number: 90/012,304                                    Page 53

Art Unit: 3992

This leave an additional traversable area outside of the column on the left and right

sides, where this area is not shown to be part of the document (supra), and further it

could not possible be defined by the document as it didn't exist until the document was

reformatted by either the client or the host for view on the small screen display device

(see page 11, lines 1-24).  Leaving at least the following edges:



ii.  Argument pertaining to "column boundary"  (from page 29)

Application/Control Number: 90/012,304                                    Page 54
Art Unit: 3992

Patent Owner argues that "In other words, the edges of an internal embedded electronic document are "internal edges," but a simple line drawn somewhere on the web page is not an "internal edge" under the court's construction."

In response, the Examiner agrees with the Patent Owner that internal hand drawn lines are not images, as they are not the border of a document.

**iii.**

Patent Owner argues that "However, the phrase "edge of **an** electronic document" appears nowhere in the claims, or indeed in the patent. The proper phrase for construction is "edge of **the** electronic document," limited to the definite article "the," as reflected in the claims. If the indefinite article "an" were not erroneously substituted for "the" in this analysis, the court would not likely have concluded, in light of the disclosure, that an edge of "the" singular electronic document may be internal."

In response, the Examiner respectfully submits that an edge of an internal document is also a corresponding edge of the surrounding document, or neighboring document.  Specifically with the '381 Patent and Lira what is of importance is maintaining display of the display region of interest, so edges between display regions are these edges that warrant further processing by the system and effect the bounce back from an area beyond the edge.  The Examiner further notes that with respect to each embodiment described by the Examiner in Lira that reads on the claims the

Application/Control Number: 90/012,304                                    Page 55
Art Unit: 3992

document scrolled across / panned is the same document whose edge is reached and

then bounced back to from a non-document area.


Patent Owner argues that "As Professor Myers notes in his declaration, the

phrase "electronic file" in the '381 specification refers to a digital file which contains

display data for the display of an "electronic document having a document length and a

document width," Myers Decl. I[I[ 21-22; see '381 patent, col. 2, lines 14-19. To a

person of ordinary skill in the art, such electronic documents as described in the '381

specification would not "contain data for the display of areas beyond the edges of the

electronic document of a particular height and width." Myers Decl. paragraph 22.

Accordingly, the assertion that an edge of "the" electronic document could be internal,

and therefore that the electronic document could include within itself areas beyond

internal edges, runs contrary to the understanding of one skilled in the art."

In response, the Examiner respectfully submits that in this case the internal

image would not store data about the rest of the webpage in its file, nor would the web

page store anything more than a link to the image.  This is evidenced by the UNdoc's

description of exactly how images are embedded in documents, specifying that:

-        "Even though the images are all seen together along with the text, each is

a separate file." (see page 1).


-        "To include an image in a web document, you need to use an image tag,

<IMG SRC="*address*">, where "address" is the address and name of a given image file.

Application/Control Number: 90/012,304                                    Page 56
Art Unit: 3992

**3.      Arguments regard the "edge of the electronic document" being "reached**

**while translating the electronic document in the first direction"**


Patent Owner argues that the "edge of the electronic document" is not "reached while translating the electronic document in the first direction".

In response, the Examiner respectfully submits that:

With respect the embodiment described in figure 14B of Lira, where the **bounce back is done with respect the single middle column being traversed**, column boundaries are meet multiple times during vertical scrolling but the bounce back / rubber banding is only effected when the input is lifted.  Specifically, the claim can be read on alone by the last black arrow and the corrective white arrow, in this case scrolling starts from a position off of the left edge yet because input is maintained on the screen no horizontal correction will occur, now as the user traverses diagonally down and right several to several hundred different views of the web page column come into view until the point where the right edge of the column is meet here an area outside of the column will begin to be displayed until the point in which input is removed from the display, only then will the movement beyond the bounds of the column be corrected by the movement depicted by the white arrow.  (see page 15, lines 18-31)

Application/Control Number: 90/012,304                                    Page 57
Art Unit: 3992



Another example that Lira would provide for would be for direct vertical scrolling down, where several to several hundred images are depicted in a direct vertical scroll, where then a horizontal movement is imparted on the already downward movement (slight horizontal movement where there is still a downward component), this causes the column border to be reached, and exceeded displaying an area outside of the column will begin to be displayed until the point in which input is removed from the display, only then will the movement beyond the bounds of the column be corrected by the movement depicted by the white arrow.  (see page 15, lines 18-31)  Lira further provides for horizontal and vertical motion to be separately considered, allowing this to be looked at as still being a downward scrolling albeit with a horizontal component (see page 16, lines 12-18).

Application/Control Number: 90/012,304                                    Page 58
Art Unit: 3992

     With respect to the previously disclosed embodiment where a user can scroll horizontally between columns with their finger on the screen, say the user starts on the middle column (first portion) of figure 10 and then moves their finger horizontally so as to display portions of each of the middle and the left column (second portion of the document), as the user continues to scroll horizontally eventually they reach the left edge of the left column, and even overtake the border displaying an area outside of the columns (outside of the document) along with a smaller area of the document (third portion) (see the first AOL browser window in figure 10), then according to and implementation explicitly defined in Lira of a "vertical alignment control" (see page 15, lines 18-31), "when the user lifts the pen" (or finger) the window "snap[s]" to the nearest logical column, or in this case the left column, thereby displaying the fourth portion. This allows the bounds of the reformatted document to be overtaken so as to show that the document ends at this point, but then upon a release of the input replaces the user over the document as is described in the '381 patent.

     Patent Owner argues that "any right boundary of column 1220 must already be within the display window when translation in the asserted first direction begins."

     In response, the Examiner respectfully submits that nothing in the claim requires a beginning state where the window is centered, nor does the claim start at a point where input is first placed on the screen, rather the claim starts with a "movement of an

Application/Control Number: 90/012,304                                          Page 59
Art Unit: 3992

object on or near the touch screen display", which actually is much closer to an

intermediate state where contact is already applied.  Lira further does not expressly

teach that the boundary is displayed within the centered window.   Furthermore,

reformatting of the page (sizing of columns to a width equal to a display width) is

effected by either the host or the client themselves, allowing for diverse configuration

ability.

Patent Owner argues that "Lira is expressly disclosed to be programmed so that

any leftward or rightward translation interpreted as intentional does not snap the display

back to the starting column, but instead either does nothing, or moves the display

further in that direction to another column, see Lira page 15, lines 18-29. Thus, the only

situation in which an intentional translation toward the asserted "edge" would operate to

snap the display back to the column upon liftoff would be if the user had failed to

correctly set the sensitivity thresholds that Lira uses to interpret such movements as

intentional or not."

In response, the Examiner respectfully submits that this paragraph is inconsistent

with the disclosure of Lira.  Lira teaches a "snap to the nearest logical column" where

when a user over scrolls a column they are bounced back over the adjacent column

upon removal of input, so long as they don't over scroll it by a distance over a threshold

that would imply that they desire to scroll to an adjacent screen portion. (see Lira page

15, lines 18-29)

Application/Control Number: 90/012,304                                      Page 60
Art Unit: 3992

Patent Owner argues that ""The fact that a certain result or characteristic may occur or be present in the prior art is not sufficient to establish the inherency of that result or characteristic." M.P.E.P. § 2112(IV) (emphasis added) (citing In re Rijckaert, 9 F.3d 1531, 1534, 28 USPQ2d 1955, 1957 (Fed. Cir. 1993) (reversing rejection because inherency was based on what would result due to optimization of conditions, not what was necessarily present in prior art); In re Oelrich, 666 F.2d 578, 581-82,212 USPQ 323, 326 (CCPA 1981)."

In response, the Examiner respectfully submits that this is the way movements in Lira need operate under conditions expressly described or displayed in the figures.

**B.      Arguments directed at "displaying an area beyond the edge of the electronic document"**

Patent Owner argues that "the portion displayed in display window 1205 labeled "asserted area beyond the edge" is simply another portion of webpage electronic document 1210 beyond an asserted (and unidentified and undiscussed by Lira) boundary of column 1220. Since the column is not "the electronic document," this is not an area beyond the edge of it."

Application/Control Number: 90/012,304                                      Page 61
Art Unit: 3992

In response, the Examiner respectfully submits that to determine what is part of
the document and what is not part of the document we need to first discuss what makes
up the document.  Here the original document is a standard HTML based webpage, the
content of the document is reformatted where each portion is reformatted to best be
viewed on a small screen display device.  Noted embodiments include:  1) placing
header, body, and footer into a single column the width of the display window (see page
9, paragraph 5 and figure 3);  2)  separating the page into components and reformatting
each of a plurality of columns into a logical column with a width that is less than or equal
to the display window width, then "the logical columns ... are aligned for viewing on the
display" (page 10, line 22 through page 11, line 17).

**AREA BETWEEN COLUMNS**

Here this is no longer a standard single webpage document but rather a parsed
and reassembled document made up of separate distinct subdocument portions that
have been reformatted and then presented together for display, while additionally
proving for additional constraints between columns to control scrolling between columns
/ maintaining display in a column of interest.  Additionally the assembled components
can be saved "in a language other than HTML for easier viewing on the small display
window."  Below the Examiner has applied stripes to areas believe to be outside of the
column document:

Application/Control Number: 90/012,304                                    Page 62
Art Unit: 3992



FIG. 14B

### AREA OUTSIDE COLUMNS

Additionally, Lira notes reformatting a page so as to create a plurality of logical

columns sized to the display window size, while allowing the header and colophon to

maintain their previous dimensions.  These columns are "reduced to a width that does

not exceed the width of the display window" (see page 10, paragraphs 1-3).  Lira at no

point describes reformatting a border area outside of the columns, merely showing it as

a traversable outside of the documents limits.


To better show the limits of the page in Lira, the page itself need be defined.  Lira

provides for the reformatting of a page coded in HTML, or a web page (see page 9,

paragraph 6 through page 10, paragraph 3), where Lira defines the page as elements

Application/Control Number: 90/012,304                                    Page 63
Art Unit: 3992

400 and 415, corresponding to the ordinary and reformatted page respectively.  Each

page is said to consist of 4 elements:

for the ordinary HTML based web page:

402, 404, 406, and 408 each having differing widths as ordinarily sized to

fit within a wide window; and



FIG. 4A

for the reformatted:

> 417, 419, 421, and 423 with widths corresponding to the width of the
narrow display



**FIG. 4B**

Application/Control Number: 90/012,304          Page 65
Art Unit: 3992

As Lira then reformats the page to the display of figure 4B, there is left as
additional space on the sides of the reduced columns that is not defined by the
document (not a portion of the 4 elements of the document).    Figures 8C and 10
show that this space outside of the columns can be navigated to, when the user
maintains input contact with the display, showing and area devoid of document
content.  This area has been greyed in by the Examiner to better illustrate the
offices position.



Where this area outside of the column document area, is only shown until
the user removes contact from the display, at which point a "vertical allignmet
control" causes the nearest logical column to snap into allignment with the

Application/Control Number: 90/012,304                                      Page 66
Art Unit: 3992

display window, thereby removing display of the non-document / outside area.

Additionally, a "horizontal allignment control" may also be used to keep the

document within the bounds of the display (see page 15, third paragraph through

page 16, third paragraph).



FIG. 14B

With regard to arguments by the Patent Owner regarding what is

interpretable as an edge of the document, Lira has been shown to take the

webpage and reformat into a more easily viewable form for a small screen

Application/Control Number: 90/012,304                                    Page 67
Art Unit: 3992

display device, doing this by creating its own logical columns intelligently sized so as to fit within the screens bounds.  These logical columns are then displayed adjacent to one another, and traversable in-between, but this is not a typical traversal as would be the case if this were the original web page document, but rather an intelligent constrained navigation where a user would have to show that they really intend to leave a column (through increased movements) to be directed to an adjacent column and leave the prior.  This new gap that exists between the columns is not part of the original document but rather but rather a non-document portion defined by the area between the edges of the two logical columns.

Even if the internal edges where not edges of the document, which the Office contends that they are and is further supported by the courts construction of claim terms of exhibit 7 pages 17-23, the area outside of the columns would clearly be an area beyond the edge, where this area can clearly be reached upon traversal (see Figures 8C and 10).  The '381's specification even further defines that a wallpaper image is displayed beyond the edge of the document (see column 27, lines 36-40).  To say that the area outside of the columns is still part of the document contradicts the teachings of Lira which shrinks columns so as to allow them to fit within the reduced size display.  When the columns are shrunk space is left below the header on the sides of the columns where document content previously existed.  To go even one step further, Lira shows

Application/Control Number: 90/012,304                                    Page 68
Art Unit: 3992

embodiments where the window traversal stretches outside of the bounds of the

header and colophon (see figures 8C and 16, amongst others).


**C.     Arguments regarding "displaying an area beyond the edge of the electronic**

**document," … "in response to [the] edge... being reached"**


Patent Owner argues that "the asserted "area beyond the edge" is simply the

contiguous area adjacent to the previously displayed portion of the asserted "electronic

document," (column 1220), and which will be displayed by translation in that direction

without any regard to whether or not an edge of a column is reached. There is no

disclosure that Lira modifies its behavior in any way depending upon whether this

boundary reaches the screen, or even makes any special note of it reaching the

screen."

In response, the Examiner respectfully submits that Lira has been shown to take

the webpage and reformat into a more easily viewable form for a small screen display

device, doing this by creating its own logical columns intelligently sized so as to fit within

the screens bounds, where the page is even recordable in a "language other than

HTML" (11:1-9).  These logical columns are then displayed adjacent to one another,

and traversable in-between, but this is not a typical traversal as would be the case if this

were the original web page document, but rather an intelligent constrained navigation

where a user would have to show that they really intend to leave a column (through

increased movements) to be directed to an adjacent column and leave the prior.  This

Application/Control Number: 90/012,304                                      Page 69
Art Unit: 3992

new gap that exists between the columns is not part of the original document but rather

but rather a non-document portion defined by the area between the edges of the two

logical columns.


**D.**      Arguments directed at "displaying a third portion of the electronic document…

while translating in the first direction"


Patent Owner argues that "The scrolling described in the Office Action is not

displaying this portion while translating the electronic document "in the first direction." In

particular, as shown in the various copies of Fig. 14B annotated by the requester in

Exhibit 6, Part A, there are clearly several intermediate translations between the

translation in the first direction from the asserted first portion to the asserted second

portion and the subsequent later translation in a different direction to the asserted third

portion, so that the display of the asserted third portion and the area beyond the edge

do not occur while translating in the first direction (i.e., from the first to the second

portion)."

In response, the Examiner respectfully submits that with respect the embodiment

described in figure 14B of Lira, where the **bounce back is done with respect the**

**single middle column being traversed**, column boundaries are meet multiple times

during vertical scrolling but the bounce back / rubber banding is only effected when the

input is lifted.  Specifically, the claim can be read on alone by the last black arrow and

the corrective white arrow, in this case scrolling starts from a position off of the left edge

Application/Control Number: 90/012,304                                    Page 70
Art Unit: 3992

yet because input is maintained on the screen no horizontal correction will occur, now

as the user traverses diagonally down and right several to several hundred different

views of the web page column come into view until the point where the right edge of the

column is meet here an area outside of the column will begin to be displayed until the

point in which input is removed from the display, only then will the movement beyond

the bounds of the column be corrected by the movement depicted by the white arrow.

(see page 15, lines 18-31)



Another example that Lira would provide for would be for direct vertical scrolling

down, where several to several hundred images are depicted in a direct vertical scroll,

where then a horizontal movement is imparted on the already downward movement

(slight horizontal movement where there is still a downward component), this causes the

column border to be reached and exceeded displaying an area outside of the column

will begin to be displayed until the point in which input is removed from the display, only

Application/Control Number: 90/012,304                                         Page 71
Art Unit: 3992

then will the movement beyond the bounds of the column be corrected by the

movement depicted by the white arrow.  (see page 15, lines 18-31)  Lira further

provides for horizontal and vertical motion to be separately considered, allowing this to

be looked at as still being a downward scrolling albeit with a horizontal component (see

page 16, lines 12-18).


Patent Owner argues (from page 39) that "The claim requires that both the

"second portion" and the "third portion" be displayed "while translating in the first

direction." However, as shown in Fig. 14B, there are clearly several intermediate

changes of direction of translation between the translation in the "first direction" from the

display of the first portion to the display of the second portion, and the subsequent later

translation in a different direction to the third portion."

In response, the Examiner respectfully submits that again each arrow depicts for

several to several hundred translations of viewable content.  Additionally, each of the

arrow depict scrolling in a common down direction, with the white arrow clearly depicting

the only opposite direction of movement.


Patent Owner argues that "if the user has scrolled directly downward, with no

horizontal wobble, then when pen 100 lifts off the screen the display will not move and

no "snap" will be seen. In sum, even Lira takes different actions depending on these

different translation directions."

Application/Control Number: 90/012,304                                    Page 72
Art Unit: 3992

     In response, the Examiner agrees with the Patent Owner to the extent that there will be no bounce back, that is unless the user scrolls down past the bottom of the column where then a vertical bounce back may occur utilizing the "horizontal alignment control" to move back to the edge of the column, unless sufficient movement past the bottom column occurs so as to show that the user attempts to view the colophon rather than the column (see page 16, lines 1-18).

## E.    Arguments regarding "displaying a third portion of the electronic document… smaller than the first portion"

     Patent Owner argues that "Everything that is being displayed at this point in the scrolling is part of the web page, and part of the same electronic document. Myers Decl. I[I[ 87-88. Therefore, the third portion of column 1220, even if smaller than the first portion of column 1220, does not disclose "displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion," as claimed in Claim 1."

     In response, the Examiner respectfully submits that Lira has been shown to take the webpage and reformat into a more easily viewable form for a small screen display device, doing this by creating its own logical columns intelligently sized so as to fit within the screens bounds, where the page is even recordable in a "language other than HTML" (11:1-9).  These logical columns are then displayed adjacent to one another, and traversable in-between, but this is not a typical traversal as would be the case if this

Application/Control Number: 90/012,304                                 Page 73
Art Unit: 3992

were the original web page document, but rather an intelligent constrained navigation

where a user would have to show that they really intend to leave a column document

(through increased movements) to be directed to an adjacent column document and

leave the prior.  This new gap that exists between the columns is not part of the original

document but rather but rather a non-document portion defined by the area between the

edges of the two logical columns.  So under this premise when the user partially scrolls

off a column / image to partially display a neighboring border or other column or an

outside area, the display space remaining to show the partial original column /image is

diminished.(see figures 10 and 14B)

**F.**    Arguments regarding the "area beyond the edge of the electronic document"
being "no longer displayed"

        Patent Owner argues that "even if column 1220 were "the electronic document"

of the claim, and, even if Lira discloses the location of the asserted "edge" of column

1220, Lira still does not disclose, in response to detecting that the finger is no longer on

or near the touch screen display, translating the electronic document in a second

direction until the area beyond the edge of the column is no longer displayed. The

"snap"-to-center column does not translate the electronic document in a second

direction until the area beyond the edge of the column is no longer displayed.

Application/Control Number: 90/012,304                                      Page 74
Art Unit: 3992

In response, the Examiner respectfully submits that Lira provides for two different means of "vertical alignment control".  In the First, vertical bars can be set up a thresholds for user scrolling where when a user is traversing vertically, slight horizontal movements are merely ignored, providing for completely straight up and down scrolling. In the Second, the embodiment specifically used against the claims, the same set up of vertical scrolling with threshold bars is used, however, as a user scrolls vertically, slight horizontal movements can be made, causing an area outside of the column to be viewed so long as input is maintained on the display, however, when input is removed the window snaps back to the column document being viewed (see page 14, line 28 through page 15, line 15).

Patent Owner argues that "to the extent the right boundary does not happen to be flush with the right edge of the display window, at least some area beyond the edge of the column will still be displayed."

In response, the Examiner respectfully submits that "The width of each logical column is less than or equal to the display window width."  (see page 11, lines 10-11)

Patent Owner argues that "Lira certainly never discloses that column 1220 is precisely the same width as the display window."

Application/Control Number: 90/012,304                                    Page 75
Art Unit: 3992

In response, the Examiner respectfully submits that "**The width of each logical column is** less than or **equal to the display window width**."  (see page 11, lines 10-11)

Patent Owner argues that "Thus, even taking the rejection on its own terms, and setting aside whether a column is "the electronic document" of the claims at all, for just this one step of the claim to occur in the operation of Lira's alignment control, at least two unguaranteed events must occur first: (i) the column must be set to a width that is not simply no wider than the width of the display window, but exactly the same as the width of the display window; and (ii) the user's scrolling must wobble to an extent that does not exceed a user-defined threshold of snap sensitivity."

In response, the Examiner respectfully submits that Lira supplies results for both situations:

- "T**he width of each logical column is** less than or **equal to the display window width**."  (see page 11, lines 10-11)
- Determining the user's intent to continue to view the current column or traverse to an adjacent column. (see page 4, lines 1-8)

III.     **Dependent Claims 2-6, 8-12, and 16**

A.      **"wherein the electronic document is a web page"**

Application/Control Number: 90/012,304                                    Page 76
Art Unit: 3992

     With regard to claim 6, and applicants contention that the Office action merely treated the logical columns alone as documents, the Examiner contends that the logical columns are portions of the web page document as a whole.  where yes when a user moves away from a logical column the bounce back feature occurs, because a user is actually moving away from a portion of the electronic document, over a border that divides / provides an edge to the electronic document, even though this edge may serve as a divider between the current logical column and the next logical column of the same webpage.

**B.**    **"wherein the electronic document includes a list of items"**

     With regard to claim 9, the claim requires that "the electronic document includes a list of items", where, as can be seen from figure 14B multiple lists of items are included in the electronic documents, for example in the first column,

Top stories include:

- Photos

- Audio/Video

- Full Coverage

Community Tools includes a Message Board with a list of associated items and then further More Community Tools with a list of three more items

Recourses include:

Application/Control Number: 90/012,304                                              Page 77
Art Unit: 3992

Web Sites

- News and Media

- News and Media by Regions

- Newspapers

- Television

- Magazines

- Columns and columnists

- Internet Broadcasts

Yahoo! Events

- Internet Broadcasts

- Issues

- Local TV News

- Politics

**C.     "wherein the second direction is opposite the first direction"**

With regard to claim 10, the second direction movement is opposite the
horizontal component of the first movements.  Given the Example of figure 14B and the
explanation of page 15, 3rd paragraph and page 16, paragraphs 1-3, Lira teaches
movement in a first direction causing the traversal off of the portion of the document
(column), where subsequent to a user releasing their contact the window is moved back
over the column in the opposite direction to the horizontal component of the movement
off of the column.

Application/Control Number: 90/012,304                                        Page 78
Art Unit: 3992

Furthermore, given the example provided above where Lira provides for an embodiment where a user can scroll directly horizontally between columns with their finger on the screen, say the user starts on the middle column (first portion) of figure 10 and then moves their finger horizontally so as to display portions of each of the middle and the left column (second portion of the document), as the user continues to scroll horizontally eventually they reach the left edge of the left column, and even overtake the border displaying an area outside of the columns (outside of the document) along with a smaller area of the document (third portion) (see the first AOL browser window in figure 10), then according to and implementation explicitly defined in Lira of a "vertical alignment control" (page 15, 3rd paragraph), "when the user lifts the pen" (or finger) the window "snap[s]" to the nearest logical column, or in this case the left column, thereby displaying the fourth portion.  Where snapping in this situation would be a horizontal snapping in the exact opposite direction of all other movement.

IV.     **Independent claims 19 and 20**

No new arguments are presented under this heading only relying on "same reasons set forth above with respect to claim 1".

**Rejection B:**

I.      **Claims 7 and 13-15**

        A.      **Claim 7**

Application/Control Number: 90/012,304                                    Page 79
Art Unit: 3992

With regard to claim 7, Lira teaches giving images the same treatment as columns as far as bounce back in concerned.  Specifically, see page 11, paragraph 5, where touch an drag scrolling results in a situation where "only a portion of a column or an image is visible in the PDA display window", where this situation is later said to be dealt with via snapping to the column / image when the input is removed from contact with the display (page 15, 3rd paragraph).  Figure 14 further shows images that take up the entirety of columns within the webpage.

### B.    Claim 13

With regard to claim 13, Lira shows from figures 8C, 14B, and 16, displaying the area beyond the edge of the document in solid color, as in the figures white.

### C.    Claim 14

With regard to claim 14, which teaches the area beyond the edge of the document being visually distinct from the document, the 3PR provided that:

"As discussed above in connection with claim 13 (supra at 45), it would have been obvious to one of ordinary skill in the art to have the area beyond the edge of the document be a solid color or shade (e.g., white, black, gray, or any other solid color). Similarly, it would have been obvious to choose any one of these or other colors that have a sharp contrast from the document background to further clarify to the user that the end of the document has been reached, because an edge can be better conveyed by the application of contrast. Coloring

Application/Control Number: 90/012,304                                    Page 80
Art Unit: 3992

the area beyond the edge of the document a single shade so as to display some contrast with the edge of the document would have been a simple design choice representing a trivial and predictable variation, dependent on the designer's aesthetic preference. Visual distinctions were not novel in user interfaces, and their use here would have been entirely predictable to a person of ordinary skill."

The Examiner, however, notes that this is a primary objective of their invention that is not specifically discussed / satisfied by LIRA, and has such removed the rejection and confirmed dependent claim 14.

**D.      Claim 15**

There are only same "as noted above" arguments presented under this heading.

**II.**

The Examiner notes that all supplied documentation has been reviewed showing the industrial applicability as well as alleged and proven copying by other parties.

**REJECTION C:**

      **Rejections over Ording**

The Examiner has reviewed the 37 C.F.R. § 1.131 declaration by Mr. Ording, and has removed the Ording '975 reference based upon the sworn statements provided along with evidence of actual reduction to practice prior to the reference date.

All other arguments with respect to Ording '975 are moot given the accepted 37 C.F.R. § 1.131 declaration.

## **Summary**

The Patent Under Reexamination's purpose is to show an area beyond a document edge upon maintaining input so as to visually display to a user the area they are attempting to view and provide them with the perception that they have reached the end of the document in this direction, then upon removal of input bouncing back / rubber banding / snapping to a display of the nearest display area which was left.  This is exactly what Lira does by providing a display of an area beyond the document so as to show the user where they are in the traversal yet allowing for the window to "snap" back over the document upon removing input.

Claims 1-13, 15, 16, 19, and 20 are rejected.

Claims 14, 17, and 18 are confirmed.

Application/Control Number: 90/012,304                                Page 82
Art Unit: 3992

**<u>Litigation Reminder</u>**

The patent Owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent Number: 7,469,381 throughout the course of this

reexamination proceeding.  The third part requester is also reminded of the ability to

similarly apprise the Office of any such activity or proceeding throughout the course of

this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

**Conclusion**

**THIS ACTION IS MADE FINAL.**

A shortened statutory period for response to this action is set to expire 2 from the

mailing date of this action.

**Extensions of time under 37 CFR 1.136(a) do not apply in reexamination**

**proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to

parties in a reexamination proceeding.  Further, in 35 U.S.C. 305 and in 37 CFR

1.550(a), it is required that reexamination proceedings "will be conducted with special

dispatch within the Office."

**Extensions of time in reexamination proceedings are provided for in 37**

**CFR 1.550(c).**  A request for extension of time must be filed on or before the day on

which a response to this action is due, and it must be accompanied by the petition fee

Application/Control Number: 90/012,304                                          Page 83
Art Unit: 3992

set forth in 37 CFR 1.17(g).  The mere filing of a request will not affect any extension of

time.  An extension of time will be granted only for sufficient cause, and for a reasonable

time specified.

The filing of a timely first response to this final rejection will be construed as

including a request to extend the shortened statutory period for an additional month,

which will be granted even if previous extensions have been granted.  In no event

however, will the statutory period for response expire later than SIX MONTHS from the

mailing date of the final action.  See MPEP § 2265.

### *Correspondence Information*

All correspondence relating to this *ex parte* reexamination proceeding should be

directed:

By Mail to:       Mail Stop *Ex Parte* Reexam
                  Central Reexamination Unit
                  Commissioner for Patents
                  United States Patent & Trademark Office
                  P.O. Box 1450
                  Alexandria, VA 22313-1450

By FAX to:        (571) 273-9900
                  Central Reexamination Unit

By hand:          Customer Service Window
                  Randolph Building
                  401 Dulany Street
                  Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding should be directed to the Central
Reexamination Unit at telephone number (571)272-7705.
Information regarding the status of an application may be obtained from the Patent Application
Information Retrieval (PAIR) system.  Status information for published applications may be obtained form
either Private PAIR or Public PAIR.  Status information for unpublished applications is available through

Application/Control Number: 90/012,304                                    Page 84
Art Unit: 3992

Private PAIR only.  For more information about the PAIR systems, see http://pair-direct.uspto.gov.  For questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).


/Dennis  G. Bonshock/

Primary Examiner, Art Unit 3992


/Adam L Basehoar/

Primary Examiner, Art Unit 3992


/Alexander J Kosowski/

Supervisory Patent Examiner, Art Unit 3992

| **Notice of References Cited** | Application/Control No.<br>90/012,304 | | Applicant(s)/Patent Under<br>Reexamination<br>7,469,381 | |
|---|---|---|---|---|
| | Examiner<br>DENNIS BONSHOCK | | Art Unit<br>3992 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | J.Koren, 1998,  "Including Images in Web Pages", at http://unsco.org/webworld/infotraining/inline.html |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012304 | 7,469,381 |
| | **Certificate Date** | **Certificate Number** |

| **Requester Correspondence Address:** | ☐ **Patent Owner** | ☒ **Third Party** |
|---|---|---|

BRYAN CAVE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY  10104

| **LITIGATION REVIEW** ☒ | DGB<br>(examiner initials) | 07/23/2012<br>(date) |
|---|---|---|
| *Case Name* | | Director Initials |
| APPLE INC. v. SAMSUNG ELECTRONICS CO. case no. 5:11CV1846 | | |
| case no. 1:10CV167 | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| | |
| | |
| | |
| | |

| | |
|---|---|
| | |

DOC. CODE  **RXFILJKT**

| *Search Notes*  | Application/Control No. 90012304 | Applicant(s)/Patent Under Reexamination 7,469,381 |
|---|---|---|
| | Examiner DENNIS BONSHOCK | Art Unit 3992 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Reviewed Previous Prosecution History | 7-23-12 | dgb |
| Reviewed Previous Prosecution History | 10-9-12 | dgb |
| Reviewed Previous Prosecution History | 3-21-13 | dgb |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | |

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | *Electronically filed February 4, 2013* | |
|---|---|---|---|---|
| | | | Application Number | *90/012,304* |
| | | | Filing Date | *May 23, 2012* |
| | | | First Named Inventor | *Bas Ording* |
| | | | Art Unit | *3992* |
| | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 1 | of | 1 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| NON PATENT LITERATURE DOCUMENTS | | |
|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published |
| | NPL 1 | Apple Inc., v. Samsung Electronics, et al., No. 11-cv-01846-LHK (N.D. Cal.), *Order Granting In Part and Denying In Part Motion For Judgment As a Matter of Law*, January 29, 2013 |
| | | |
| | | |
| | | |
| | | |
| | | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

List of References/Form 1449/Initialed/Date Considered

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

<table>
<tr><td rowspan="7"><strong>INFORMATION DISCLOSURE CITATION</strong><br><br>Substitute for Form 1449-PTO</td><td colspan="2"><em>Electronically filed January 15, 2013</em></td></tr>
<tr><td>Application Number</td><td><strong>90/012,304</strong></td></tr>
<tr><td>Filing Date</td><td><strong>May 23, 2012</strong></td></tr>
<tr><td>First Named Inventor</td><td><strong>Bas Ording</strong></td></tr>
<tr><td>Art Unit</td><td><strong>3992</strong></td></tr>
<tr><td>Examiner Name</td><td><strong>BONSHOCK, DENNIS G</strong></td></tr>
<tr><td colspan="2"></td></tr>
</table>

| Sheet | 1 | of | 13 | Attorney Docket Number | **P4304USREX2/120730-002US** |
|---|---|---|---|---|---|

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No.[1] | Document Number<br>Number - Kind Code[2] | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
|  | US 1 | 6,920,619 | 07-19-2005 | Milekic |  |
|  | US 2 | 6,188,391 | 02-13-2001 | Seely et al. |  |
|  | US 3 | 6,570,594 | 05-27-2003 | Wagner |  |
|  |  |  |  |  |  |

**U.S. PATENT APPLICATION DOCUMENTS**

| Examiner Initials | Cite No.[1] | Document Number<br>Number - Kind Code[2] | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
|  | USA 1 | 2004/0160458 | 02-09-2004 | Igarashi et al. |  |
|  | USA 2 | 2002/0180763 | 12-05-2002 | Kung |  |
|  | USA 3 | 2005/0195154 | 09-08-2005 | Robbins et al. |  |
|  | USA 4 | 2005/0183026 | 08-18-2005 | Amano et al. |  |
|  | USA 5 | 2006/0026521 | 02-02-2006 | Hotelling et al. |  |
|  | USA 6 | 2004/0205504 | 10-14-2004 | Phillips |  |
|  | USA 7 | 2006/0001652 | 01-05-2006 | Chiu et al. |  |
|  | USA 8 | 2004/0125088 | 07-01-2004 | Zimmerman |  |
|  | USA 9 | 2009/0284478 | 11-19-2009 | De La Torre et al. |  |
|  | USA 10 | 2008/0013826 | 01-17-2008 | Hillis et al. |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Foreign Patent Document<br>Country Code[3] – Number[4] - Kind Code[5] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
|  | FP 1 | CN 1754141 | 03-01-2006 | Mulligan et al. |  |  |
|  | FP 2 | DE 102008 052485 | 04-22-2010 | Hohne |  |  |
|  | FP 3 | EP 0944218 | 09-22-1999 | Ringot |  |  |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in confqrmance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication tq applicant. [1] Applicant's unique citation designation number (optional). [2] See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION | | | *Electronically filed January 15, 2013* | |
|---|---|---|---|---|
| | | | Application Number | *90/012,304* |
| | | | Filing Date | *May 23, 2012* |
| | | | First Named Inventor | *Bas Ording* |
| Substitute for Form 1449-PTO | | | Art Unit | *3992* |
| | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 2 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | | | | | |
|---|---|---|---|---|---|
| FP 4 | EP 0725 331 | 07-08-1996 | Tae | | |
| FP 5 | EP 1517228 | 03-01-2005 | Hill | | |
| FP 6 | EP 2102738 | 07-17-2008 | Platzer et al. | | |
| FP 7 | GB 2319591 | 05-27-1998 | Sato et al. | | |
| FP 8 | JP 1999/126149 | 05-11-1999 | Miwa | | X |
| FP 9 | JP 2000/163031 | 06-16-2000 | Yasuhiro et al. | | X |
| FP 10 | JP 2000/322495 | 11-24-2000 | Toshiyuki | | X |
| FP 11 | JP 2002/254614 | 09-11-2002 | Yasushi | | X |
| FP 12 | JP 2002/342033 | 11-29-2002 | Rekimoto | | X |
| FP 13 | JP 2003/330613 | 11-21-2003 | Kuniaki | | X |
| FP 14 | JP 2005/234199 | 09-02-2005 | Daigo | | X |
| FP 15 | JP H03-271976 | 03-12-1991 | Kurosawa  Yoshiaki | | |
| FP 16 | JP 2003-345491 | 12-05-2003 | Shuichi | | X |
| FP 17 | EP 2069877 | 03-13-2008 | Ligtenberg | | |
| FP 18 | KR 2002-0095992 | 12-28-2002 | Ryu Hyeok Gon | | X |
| FP 19 | KR 2002-0038177 | 05-23-2002 | Yeong | | X |
| FP 20 | KR 2002-0081953 | 10-30-2002 | Kim Yong Bok | | X |
| FP 21 | WO 94/29788 | 12-22-1994 | Staggs et al. | | |
| FP 22 | WO 98/06054 | 02-12-1998 | Huffman et al. | | |
| FP 23 | WO 1998/07112 | 02-19-1998 | Gill | | |
| FP 24 | WO 1999/28812 | 06-10-1999 | Northern Telecom | | |
| FP 25 | WO 1999/57630 | 11-11-1999 | Scientific Atlanta | | |
| FP 26 | WO 01/029702 | 04-26-2001 | Van Den Hoven | | |
| FP 27 | WO 2002/08881 | 01-31-2002 | Worthington et al. | | |
| FP 28 | WO 2008/030563 | 03-13-2008 | Ligtenberg | | |
| FP 29 | WO 2008/086218 | 07-17-2008 | Ording | | |
| FP 30 | WO 2011/045805 | 04-21-2011 | Dey et al. | | |
| FP 31 | FR 2830093 | 03-28-2003 | Benoit | | |
| FP 32 | JPA H02-140822 | 05-30-1990 | Izeki Osamu | | X |
| FP 33 | JPA H07-230352 | 08-29-1995 | Kamimura Toshio et al. | | X |
| FP 34 | JPA H11-126149 | 05-11-1999 | Iketa Satoshi | | X |
| FP 35 | JPA H11-327733 | 11-30-1999 | Miyazaki Koichi | | X |
| FP 36 | JPA H10-240220 | 09-11-1998 | Nagae Hisayoshi | | X |
| FP 37 | JPA 2003-344059 | 12-03-2003 | Ito Masahiro | | X |
| FP 38 | JPA 2001-290585 | 10-19-2001 | Wakai Masanori | | X |

| Examiner Signature | /Dennis Bonshock/ | | Date Considered | 03/21/2013 |
|---|---|---|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in confgrmance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication tq applicant.   ¹ Applicant's unique citation designation number (optional).  ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement:  This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO:  Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| | | | | | | |
|---|---|---|---|---|---|---|
| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | *Electronically filed January 15, 2013* | | | |
| | | | Application Number | *90/012,304* | | |
| | | | Filing Date | *May 23, 2012* | | |
| | | | First Named Inventor | *Bas Ording* | | |
| | | | Art Unit | *3992* | | |
| | | | Examiner Name | *BONSHOCK, DENNIS G* | | |
| Sheet | 3 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | FP 39 | JPA 2003-288151 | 10-10-2003 | Murakoshi Toshio | | X |
| | FP 40 | JPA 2003-140802 | 05-16-2003 | Sowden Anthony et al | | X |
| | FP 41 | JPA 2005-284726 | 10-13-2005 | Watanabe Tomio et al | | X |
| | FP 42 | GB 2335105 | 08-09-1999 | Pringle | | |
| | FP 43 | WO 03/023593 | 03-20-2003 | Metsavainio et al. | | |
| | FP 44 | KR 2003-0088374 | 11-28-2006 | Kyocera Corp. | | X |
| | FP45 | WO 2008/05848 | 07-17-2008 | Blumenberg | | |
| | FP 46 | JPS63-146168 | 06-18-1988 | Tajima Hiroaki | | |
| | FP 47 | JP2001-318665 | 11-16-2001 | Sakano Keiichi | | X |
| | FP 48 | JP2006-154892A | 06-15-2006 | Ishida Kenichi | | X |
| | FP 49 | JP2006-090962A | 04-06-2006 | Niijima Hiroyuki | | X |
| | FP 50 | JP2005-515530A | 05-26-2005 | Zimmerman | | X |
| | FP 51 | JP2003-108279A | 04-11-2003 | Tokura | | X |
| | FP 52 | JPH10-161628A | 06-19-1998 | Kamata | | X |
| | FP 53 | JPS63-206827A | 08-26-1988 | Asami Toshihiro | | X |
| | FP 54 | JPH9-237175A | 09-09-1997 | Sawai Tetsuji | | X |
| | FP 55 | JPH8-249114A | 09-27-1996 | Tanaka Satoshi | | X |
| | FP 56 | JPH5-100809A | 04-23-1993 | Mizuguchi Tamotsu | | X |
| | FP 57 | JP2000-181428A | 06-30-2000 | Kato Kiyosh | | X |
| | FP 58 | JP2005-267631A | 09-29-2005 | Robertson George | | X |
| | FP 59 | JPH7-182134A | 07-21-1995 | Nashiki Noboru | | X |
| | FP 60 | JP2004-310388A | 11-04-2004 | Shimizu Hideyuk | | X |
| | FP 61 | JP2000-333044A | 11-30-2000 | Miama Masaki | | X |
| | FP 62 | JP2006-244353A | 09-14-2006 | Murayama Takanori | | X |
| | FP 63 | JP2006-179006A | 07-06-2006 | Kolmykov-Zotov | | X |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

List of References cited by applicant and considered by examiner. /D.B./

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /D.B./

| INFORMATION DISCLOSURE CITATION | | | | *Electronically filed January 15, 2013* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| Substitute for Form 1449-PTO | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 4 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| NON PATENT LITERATURE DOCUMENTS | | |
|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published |
| | NPL 1 | AGARAWALA, A., "Enriching the Desktop Metaphor with Physics, Piles and Pen," 2006, pp.10-101 |
| | NPL 2 | AGARAWALA, A. et al., "Keepin' It Real: Pushing the Desktop Metaphor with Physics, Piles and the Pen," CHI 2006, April 22-27, 2006, Montreal, Canada |
| | NPL 3 | BACH, M.J., The Design of the Unix Operating System, Eastern Economy Edition, 1986 |
| | NPL 4 | BAECKER et al., Reading in Human-Computer Interaction: A Multidisciplinary Approach, 1987 |
| | NPL 5 | BAECKER et al., Readings in Human-Computer Interaction: Toward the Year 2000, 1995 |
| | NPL 6 | Website (Tech On) |
| | NPL 7 | BEDERSON et al., "Pad++: A Zooming Graphical Interface for Exploring Alternate Interface Physics," UIST '94 Proceedings of the 7th annual ACM symposium on User Interface Software and Technology, November 2-4, 1994, pp.17-26 |
| | NPL 8 | BEDERSON et al., "Jazz: An Extensible Zoomable User Interface Graphics Toolkit in Java," ACM symposium on User Interfaces Software and Technology, May 2000 |
| | NPL 9 | BEDERSON et al., "Jazz: An Extensible 2D+ Zooming Graphics Toolkit in Java," July 1999 |
| | NPL 10 | BIC et al., The Logical Design of Operating Systems, Second Edition, 1988, pp. 1-370 |
| | NPL 11 | BIER, E., "Snap-Dragging: Interactive Geometric Design in Two and Three Dimensions," Ph.D. Thesis, University of California, Berkeley, 1989 |
| | NPL 12 | BIER et al., "Snap-Dragging," Proceedings of SIGGRAPH 86, Computer Graphics (20) 4, 1986, pp. 233-240 |
| | NPL 13 | BORMAN et al., Human Factors in Computing Systems, CHI '85 Conference Proceedings, April 14-18, 1985, San Francisco |
| | NPL 14 | BROWNE, H. et al., "Designing a Collaborative Finger Painting Application for Children," UM Computer Science Department; CS-TR-4184; 2000 |
| | NPL 15 | *The Technical System of Personal Computer 2000* |
| | NPL 16 | BUXTON, W., "Invited Paper: A Touching Story: A Personal Perspective on the History of Touch Interfaces Past and Future," Society for Information Display (SID) Symposium Digest of Technical Papers, May 2010, pp. 444-448, Volume 41(1), Session 31 |
| | NPL 17 | CHANG et al., "Animation: From Cartoons to the User Interface," UIST '93 Proceedings of the 6th annual ACM symposium on User Interface Software and Technology, 1993, pp. 1-18 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

<table>
<tr><td rowspan="7">INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO</td><td colspan="2"><em>Electronically filed January 15, 2013</em></td></tr>
<tr><td>Application Number</td><td><strong>90/012,304</strong></td></tr>
<tr><td>Filing Date</td><td><strong>May 23, 2012</strong></td></tr>
<tr><td>First Named Inventor</td><td><strong>Bas Ording</strong></td></tr>
<tr><td>Art Unit</td><td><strong>3992</strong></td></tr>
<tr><td>Examiner Name</td><td><strong>BONSHOCK, DENNIS G</strong></td></tr>
</table>

| Sheet | 5 | of | 13 | Attorney Docket Number | **P4304USREX2/120730-002US** |

| | NPL 18 | Communication Arts, 2006 September/October Communication Arts Interactive Annual 12 |
| --- | --- | --- |
| | NPL 19 | Communication Arts, 2005 September/ October Communication Arts Interactive Annual 11 |
| | NPL 20 | Communication Arts, 2004 September/ October Communication Arts Interactive Annual 10 |
| | NPL 21 | Communication Arts, 2003 September/ October Communication Arts Interactive Annual 9 |
| | NPL 22 | Communication Arts, 2001 September/ October Communication Arts Interactive Annual 7 |
| | NPL 23 | Wireless News, "Adobe Rolls Out Flash Player 9," June 28, 2006 |
| | NPL 24 | DENNING, P.J., The Invisible Future, 2001 |
| | NPL 25 | ZUKOWSKI, J., Java AWT Reference (Java 1.1) |
| | NPL 26 | ED. C. EPP, Prelude to Patterns in Computer Science Using Java, Beta Edition, 2001 |
| | NPL 27 | ERICKSON, T.D., Working with Interface Metaphors, in Human-computer Interaction, 1995, pp.65-73 |
| | NPL 28 | Flash to the Core Website (http://flashtothecore.praystation.com/), 2002 |
| | NPL 29 | Flashloaded SlideMem Website, (http://flashloaded.com/flashcomponents/slidemem/), 2007 |
| | NPL 30 | D. Patel et al. "Improving Photo Searching Interfaces for Small-screen Mobile Computers" in Proceedings Mobile HCI 2006, ACM Press, pp 149-156 (Sep. 2006) |
| | NPL 31 | FOLEY et al., Computer Graphics- Principles and Practice, 2nd Edition in C, 1996 |
| | NPL 32 | FOLEY et al., Computer Graphics- Principles and Practice, 2nd Edition, 1990 |
| | NPL 33 | FOLEY et al., Introduction to Computer Graphics, 1994 |
| | NPL 34 | GLEICHER, M., "Image Snapping," 1995, pp.183-190 |
| | NPL 35 | GROSS, MARK D., "Grids in Design and CAD," Proceedings of Association for Computer Aided Design in Architecture, 1991, pp.1-11 |
| | NPL 36 | Hewlett-Packard, User's Guide-HP iPAQ Pocket PC h1900 series, May 2003 |
| | NPL 37 | Hewlett-Packard, QuickSpecs-HP iPAQ rx1950 Pocket PC, September, 26, 2005 |
| | NPL 38 | ISHAK et al., "Content-Aware Scrolling," UIST'06 Proceedings of the 19th annual ACM symposium on User Interface Software and Technology, October 15-18, 2006, Montrex, Switzerland |
| | NPL 39 | JOHNSON, J. et al., "The Effect of Touch-Pad Size on Pointing Accuracy," April 1994, pp.1-8 |
| | NPL 40 | JOHNSON, J. et al., "A Comparison of User Interfaces for Panning on a Touch-Controlled Display," CHI '95 Proceedings of the SIGCHI Conference on Human Factors in Computing Systems, Mosaic of Creativity, May 1995, pp.1-8 |
| | NPL 41 | JOHNSON, J. et al., A Collection of Papers from FirstPerson, Inc., 1995, pp. 1-86 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE CITATION**<br><br>Substitute for Form 1449-PTO | *Electronically filed January 15, 2013* | |
| | Application Number | *90/012,304* |
| | Filing Date | *May 23, 2012* |
| | First Named Inventor | *Bas Ording* |
| | Art Unit | *3992* |
| | Examiner Name | *BONSHOCK, DENNIS G* |

| Sheet | 6 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |
|---|---|---|---|---|---|

| | NPL 42 | JOHNSON, E.A., "Touch Displays: A Programmed Man-Machine Interface," Ergonomics, March 1967, pp. 271-277, Volume 10, Number 2 |
|---|---|---|
| | NPL 43 | KARLSON et al., AppLens and LaunchTile: Two Designs for One-Handed Thumb Use on Small Devices," CHI 2005 (Powerpoint), 2005 |
| | NPL 44 | KROLIK, M., PIV Creator 3.41, Cross Browser DHTML 360 Panorama Image Viewer (PIV), 1999 |
| | NPL 45 | KRUEGER, M.W., Artificial Reality, 1983 |
| | NPL 46 | KRUEGER, M.W., Artificial Reality II, 1991 |
| | NPL 47 | LAUREL, B., The Art of Human-Computer Interface Design, 1990, pp.65-73 |
| | NPL 48 | LEE, S.K. et al., "A Multi-Touch Three Dimensional Touch-Sensitive Tablet," CHI '85 Proceedings, April 1985, pp. 21-25 |
| | NPL 49 | LEWIS et al., MAC OS In A Nutshell- A Power User's Quick Reference, 2000 |
| | NPL 50 | MASUI et al., "Elastic Graphical Interfaces for Precise Data Manipulation," ACM Conference on Human Factors in Computing Systems (CHI '95) Conference Companion, April 1995, pp. 143-144 |
| | NPL 51 | D. Patel et al, "An Evaluation of Techniques for Browsing Photograph Collections on Small Displays", Proceedings Mobile HCI 2004, pp. 132-143 |
| | NPL 52 | NORMAN et al., User Centered System Design, 1986 |
| | NPL 53 | A. Cockburn and J. Savage, "Comparing Speed-Dependent Automatic Zooming with Traditional Scroll, Pan, and Zoom Methods", in People and Computers XVII: British Computer Society Conference on Human Computer Interaction, 2003, p.87-102 |
| | NPL 54 | OWEN, G.S., Principles of Animation: Slow In and Out,  March 13, 1999 |
| | NPL 55 | PETZOLD, C., Programming Windows, 5th Edition, 1999 |
| | NPL 56 | PlasmaplugsScrollBar Website, 2006 |
| | NPL 57 | ROBERTSON et al., "Data Mountain: Using Spatial Memory for Document Management," UIST '98: Proceedings of the 11th Annual ACM symposium on User Interface Software and Technology, San Francisco, 1998, pp. 153-162. |
| | NPL 58 | RUBINE, D., "Combining Gestures & Direct Manipulation," CHI '92, May 3-7, 1992, pp. 659-660 |
| | NPL 59 | RUBINE et al., "The VideoHarp," ICMC Proceedings 1988, pp.49-55 |
| | NPL 60 | SHNEIDERMAN, B., "Direct Manipulation: A Step Beyond Programming Languages," Aug. 1983, pp. 57-69, Computer, Vol. 16(8) |
| | NPL 61 | P. Eslambolchilar and R. Murray-Smith, "Tilt-based automatic zooming and scaling in mobile devices – A state-space implementation." Mobile Human-Computer Interaction – MobileHCI 2004: 6th International Symposium, Glasgow, UK, September 13 - 16, 2004, pp. 120-131 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement:  This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO:  Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed January 15, 2013* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 7 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | NPL 62 | SILBERSCHATZ, A. et al., Operating System Concepts, Third Edition, 1991, pp. 1-696. |
|---|---|---|
| | NPL 63 | SMITH et al., "The Radial Scroll Tool: Scrolling Support for Stylus- or Touch-Based Document Navigation," UIST '04 Proceedings of the 17th Annual ACM symposium on User Interface Software and Technology, October 24-27, 2004, Santa Fe, New Mexico, pp. 1-4 |
| | NPL 64 | Forlines et al., Glimpse: A Novel Input Model for Multi-Level Devices, Mitsubishi Electric Laboratories, CHI 2005 |
| | NPL 65 | Sony, "The Power of a Full-Sized PC in the Palm of your Hand," 2004 |
| | NPL 66 | SUN et al., "Flipper: A New Method of Digital Document Navigation," CHI '05 extended abstracts on Human factors in computing systems, April 2-7, 2005, Portland, Oregon, pp.2001-2004 |
| | NPL 67 | Teleprompter-VBForums, 2003 |
| | NPL 68 | THOMAS, B.H., Thomas Dissertation-Animating Direct Manipulation in Human Computer Interfaces, 1997, pp. 1-207 |
| | NPL 69 | THOMAS et al., "Animating Direct Manipulation Interfaces," UIST 95 Pittsburg, PA, Nov. 1995, pp. 3-12 |
| | NPL 70 | TIDWELL, J., Designing Interfaces, 2006 |
| | NPL 71 | TOGNAZZINI, B., The "Starfire" Video Prototype Project: A Case History, 1994 |
| | NPL 72 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Apple's Reply Brief in PI Appeal |
| | NPL 73 | Affidavit of Benjamin Bederson, dated February 9, 2012 |
| | NPL 74 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), declaration of Ravin Balakrishnan in support of Apple's opposition to MSJ |
| | NPL 75 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Apple's opposition to Samsung MSJ, filed May 31, 2012 |
| | NPL 76 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Samsung motion for summary judgment, filed May 17, 2012 |
| | NPL 77 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Samsung brief, appealing PI ruling, dated January 11, 2012 |
| | NPL 78 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), reply declaration of Ravin Balakrisnan, filed September 30, 2011 |
| | NPL 79 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Apple's Opening Claim Construction Brief Pursuant to Patent L.R. 4-5, dated 12-08-2011, pp. 6-8 |
| | NPL 80 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Apple's Reply Claim Construction Brief Pursuant to Patent L.R. 4-5, dated 12-29-2011, pp. 3-5 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION | *Electronically filed January 15, 2013* | |
|---|---|---|
| | Application Number | *90/012,304* |
| | Filing Date | *May 23, 2012* |
| Substitute for Form 1449-PTO | First Named Inventor | *Bas Ording* |
| | Art Unit | *3992* |
| | Examiner Name | *BONSHOCK, DENNIS G* |

| Sheet | 8 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |
|---|---|---|---|---|---|

| | NPL 81 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Order Construing Disputed Claim Terms, dated 04-04-2012 |
|---|---|---|
| | NPL 82 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Order Construing Disputed Claim Terms of U.S. Patent Nos. 7,469, 381 and 7,864,163, dated 07-20-2012 |
| | NPL 83 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Joint Claim Construction and Prehearing Statement Pursuant to Patent L.R. 4-3, dated 11-14-2011, p. 6 |
| | NPL 84 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Order Denying Motion for Summary Judgment, dated 06-30-2012, pp. 11-17 |
| | NPL 85 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Expert Report of Ravin Balakrishan, Ph.D. Concerning Claim Construction of U.S. Patent Number 7,469,381, dated 01-18-2012 |
| | NPL 86 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Respondent's Notice of Prior Art, dated 10-21-2011 |
| | NPL 87 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Complainant Apple Inc.'s Claim Construction Brief, dated 01-18-2012, pp. 48-70 |
| | NPL 88 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Joint Motion to Amend the Joint Claim Construction Statement, dated 01-18-2012 |
| | NPL 89 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Order No. 25: Granting Joint Motion to Amend the Joint Claim Construction Statement, dated 01-19-2012 |
| | NPL 90 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Notice of Prior Art, dated 11-07-2011 |
| | NPL 91 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Order No. 57: Construing the Terms of the Asserted Claims of the Patent at Issue, dated 06-26-2012, pp.14-49 |
| | NPL 92 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-1 |
| | NPL 93 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-2 |
| | NPL 94 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-4 |
| | NPL 95 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-5 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /D.B./

| | | | *Electronically filed January 15, 2013* | |
|---|---|---|---|---|
| INFORMATION DISCLOSURE CITATION | | | Application Number | *90/012,304* |
| | | | Filing Date | *May 23, 2012* |
| Substitute for Form 1449-PTO | | | First Named Inventor | *Bas Ording* |
| | | | Art Unit | *3992* |
| | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 9 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | NPL 96 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-6 |
|---|---|---|
| | NPL 97 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-7 |
| | NPL 98 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-8 |
| | NPL 99 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, Invalidity Exhibit 381-9 |
| | NPL 100 | Search information statement dated June 27, 2008, received in Australian Patent Application No. 2008100283, which corresponds to U.S. Application No. 11/956,969, 2 pages. |
| | NPL 101 | Decision to grant a European patent, dated September 2, 2010, received in European Patent No. 2059868, which corresponds to U.S. Application No. 11/956,969, 9 pages. |
| | NPL 102 | Response to Examiners first report, dated October 21, 2008, received in Australian Patent Application No. 2008100283, which corresponds to U.S. Application No. 11/956,969, 12 pages. |
| | NPL 103 | Notice of certification dated November 7, 2008, received in Australian Patent Application No. 2008100283, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 104 | International Preliminary report on Patentability dated March 10, 2009, received in European Patent No. 2059868, which corresponds to PCT/US2007/077441 and U.S. Application No. 11/956,969, 9 pages. |
| | NPL 105 | Search information statement dated February 19, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969, 2 pages. |
| | NPL 106 | Response to Examiners report No.1 dated March 31, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 107 | Examiners report No.2 dated April 1, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969, 2 pages |
| | NPL 108 | Response to Examiners report No. 2 dated July 09, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969, 28 pages. |
| | NPL 109 | International search report dated April 8, 2008, received in European Patent No. 2059868, which corresponds to PCT/US2008/077441 and U.S. Application No. 11/956,969, 5 pages. |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

List of References cited from 1449 Form - Pg. 9 of 13

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION | *Electronically filed January 15, 2013* | |
|---|---|---|
| | Application Number | *90/012,304* |
| | Filing Date | *May 23, 2012* |
| Substitute for Form 1449-PTO | First Named Inventor | *Bas Ording* |
| | Art Unit | *3992* |
| | Examiner Name | *BONSHOCK, DENNIS G* |

| Sheet | 10 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| | NPL 110 | Response to Examiners report No. 3 dated August 3, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 111 | Notice of acceptance dated August 24, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 112 | International search report dated September 9, 2008, received in Australian Patent Application No. 2008201540, which corresponds to WO2008086218 and U.S. Application No. 11/956,969, 7 pages. |
| | NPL 113 | International Preliminary report on Patentability July 7, 2009, received in Australian Patent Application No. 2008201540, which corresponds to WO2008086218 and U.S. Application No. 11/956,969, 15 pages. |
| | NPL 114 | European search Opinion dated November 18, 2011, received in European Patent Application No. 2402850, which relates to U.S. Application No. 11/956,969, 4 pages. |
| | NPL 115 | Search information statement dated February 10, 2009, received in Australian Patent Application No. 2009200366, which corresponds to U.S. Application No. 11/956,969, 2 pages. |
| | NPL 116 | Response to examiners report No.1 dated March 12, 2009, received in Australian Patent Application No. 2009200366, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 117 | Notice of acceptance dated March 31, 2009, received in Australian Patent Application No. 2009200366, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 118 | European search Opinion dated November 29, 2011, received in European Patent Application No. 2402848, which relates to U.S. Application No. 11/956,969, 3 pages. |
| | NPL 119 | Search information statement dated April 08, 2010, received in Australian Patent Application No. 2009208103, which corresponds to U.S. Application No. 11/956,969, 3 pages. |
| | NPL 120 | Response to examiners report No.1 dated April 11, 2011, received in Australian Patent Application No. 2009208103, which corresponds to U.S. Application No. 11/956,969, 9 pages. |
| | NPL 121 | Reply to communication from Examining Division dated May 5, 2010, received in European Patent No. 2126678, which corresponds to U.S. Application No. 11/956,969, 7 pages. |
| | NPL 122 | Examiners report No.1 dated May 16, 2008, received in Australian Patent Application No. 2008100372, which corresponds U.S. Application No. 11/956,969, 1 page. |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION | Electronically filed January 15, 2013 | |
|---|---|---|
| | Application Number | 90/012,304 |
| | Filing Date | May 23, 2012 |
| | First Named Inventor | Bas Ording |
| Substitute for Form 1449-PTO | Art Unit | 3992 |
| | Examiner Name | BONSHOCK, DENNIS G |

| Sheet | 11 | of | 13 | Attorney Docket Number | P4304USREX2/120730-002US |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| | NPL 123 | Search information statement dated May 15, 2008, received in Australian Patent Application No. 2008100372, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 124 | Response to examiners report No.1 dated September 12, 2008, received in Australian Patent Application No. 2008100372, which corresponds to U.S. Application No. 11/956,969, 18 pages. |
| | NPL 125 | Notice of certification dated September 19, 2008, received in Australian Patent Application No. 2008100372, which corresponds to U.S. Application No. 11/956,969, 1 page. |
| | NPL 126 | Request for Further Processing, dated October 22, 2012, submitted in European Application No. EP 2 402 848 |
| | NPL 127 | Request for Further Processing, dated October 22, 2012, submitted in European Application No. EP 2 402 850 |
| | NPL 128 | European search report dated October 18, 2011, received in European Patent Application No. 2390799, which relates to U.S. Application No. 11/956,969, 2 pages. |
| | NPL 129 | European search Opinion dated October 31, 2011, received in European Patent Application No. 2390799, which relates to U.S. Application No. 11/956,969, 2 pages. |
| | NPL 130 | Rejection Decision dated September 20, 2012, received in Chinese Patent Application No. 20080000019.9, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent No. 7,469,381). |
| | NPL 131 | Karlson et al., AppLens and LaunchTile: Two Designs for One-Handed Thumb Use on Small Devices, Powerpoint dated 2002 |
| | NPL 132 | Technology, Safety, Community, Conference on Human Factors in Computing Systems, CHI 2005, April 2-7, 2005 |
| | NPL 133 | CHI 2005 Paper Abstracts, 2005 |
| | NPL 134 | CHI 2005 Schedule and Paper Abstracts, 2005 |
| | NPL 135 | Forlines et al., Input Techniques for Mobile Interaction, plus…, Mitsubishi Electric Research Laboratories, 2005 |
| | NPL 136 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from Markman hearing, February 7, 2012 |
| | NPL 137 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, HTC's Amended Notice of Prior Art, November 7, 2011 |
| | NPL 138 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from the evidentiary hearing transcript, August 14, 2012 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

List of References: Form 1449 Electronic QILR 10/2005

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION | *Electronically filed January 15, 2013* | |
|---|---|---|
| | Application Number | *90/012,304* |
| | Filing Date | *May 23, 2012* |
| Substitute for Form 1449-PTO | First Named Inventor | *Bas Ording* |
| | Art Unit | *3992* |
| | Examiner Name | *BONSHOCK, DENNIS G* |

| Sheet | 12 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |
|---|---|---|---|---|---|

| | NPL 139 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from the evidentiary hearing transcript, August 15, 2012 |
|---|---|---|
| | NPL 140 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from the evidentiary hearing transcript, August 16, 2012 |
| | NPL 141 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from the evidentiary hearing transcript, August 17, 2012 |
| | NPL 142 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from the evidentiary hearing transcript, August 22, 2012 |
| | NPL 143 | U.S. ITC, Investigation No. 337-TA-797, In the Matter of Certain Portable Electronic Devices and Related Software, excerpts from the evidentiary hearing transcript, August 24, 2012 |
| | NPL 144 | Apple Inc. v. Samsung Electronics Co. Ltd., et al., Nos. ZA11-730 and ZA11-731 (Netherlands), Judgment dated August 23, 2011. |
| | NPL 145 | Apple Inc. v. Samsung Electronics Co. Ltd., et al., No. ZA12-220 (Netherlands), Judgment dated November 28, 2012. |
| | NPL 146 | Apple Inc. v. Samsung Electronics Co. Ltd., et al., No. ZA12-220 (Netherlands), Judgment dated November 28, 2012. (Convenience English Translation) |
| | NPL 147 | HTC_User manual HTC P 3050 |
| | NPL 148 | Apple v. Samsung, No. (P) NSD 1243 of 2011 (Australia), "Particulars of Invalidity Australian Standard Patent No. 2009208103," May 16, 2012 |
| | NPL 149 | Apple v. Samsung, No. (P) NSD 1243 of 2011 (Australia), "Particulars of Invalidity Australian Standard Patent No. 2008100283," May 16, 2012 |
| | NPL 150 | Apple v. Samsung, No. (P) NSD 1243 of 2011 (Australia), "Particulars of Invalidity Australian Standard Patent No. 2009200366," May 16, 2012 |
| | NPL 151 | Apple v. Samsung, No. (P) NSD 1243 of 2011 (Australia), "Particulars of Invalidity Australian Standard Patent No. 2008100372," May 16, 2012 |
| | NPL 152 | Apple v. Samsung, No. (P) NSD 1243 of 2011 (Australia), "Particulars of Invalidity Australian Standard Patent No. 2008201540," May 16, 2012 |
| | NPL 153 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Judgment dated July 4, 2012 |
| | NPL 154 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 1, 2012 |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.   ¹ Applicant's unique citation designation number (optional).  ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.   ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  ⁶ Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement:  This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO:  Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

List of References cited by applicant

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| | | |
|---|---|---|
| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | *Electronically filed January 15, 2013* | |
| | Application Number | *90/012,304* |
| | Filing Date | *May 23, 2012* |
| | First Named Inventor | *Bas Ording* |
| | Art Unit | *3992* |
| | Examiner Name | *BONSHOCK, DENNIS G* |

| Sheet | 13 | of | 13 | Attorney Docket Number | *P4304USREX2/120730-002US* |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| | NPL 155 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 2, 2012 |
| | NPL 156 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 3, 2012 |
| | NPL 157 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 8, 2012 |
| | NPL 158 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 9, 2012 |
| | NPL 159 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 0, 2012 |
| | NPL 160 | Apple v. HTC, Nos. HC11 C02826, HC11 C02703, HC11 C03080 (UK), Hearing Transcript May 11, 2012 |
| | NPL 161 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), deposition transcript of Van Dam, dated May 2, 2012 |
| | NPL 162 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), deposition transcript of Van Dam, dated September 14, 2011 |
| | NPL 163 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Declaration of Benjamin Bederson, August 20, 2011 |
| | NPL 164 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), Videotaped Deposition of Benjamin Bederson, Transcript, September 17, 2011 |
| | NPL 165 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Apple's Motion for a Preliminary Injunction, filed 07-01-2011 |
| | NPL 166 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), declaration of Ravin Balakrishnan in support of Apple's motion for a preliminary injunction, filed 07-01-2011 |
| | NPL 167 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Samsung's opposition to Apple's motion for preliminary injunction, filed 11-29-2011 |
| | NPL 168 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), declaration of Van Dam in support of Samsung's motion in opposition to preliminary injunction, filed 11-29-2011 |
| | NPL 169 | Apple Inc. v. Samsung Electronics Co., Case no. 11-cv-01846 (N.D. Cal.), excerpts from Apple's reply motion for Preliminary Injunction, filed September 30, 2011 |
| | | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | | *Electronically filed October 9, 2012* | |
|---|---|---|---|---|---|---|
| | | | | | Application Number | *90/012,304* |
| | | | | | Filing Date | *May 23, 2012* |
| | | | | | First Named Inventor | *Bas Ording* |
| | | | | | Art Unit | *3992* |
| | | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 1 | of | 8 | Attorney Docket Number | | *P4304USREX2/120730-002US* |

| | | U.S. PATENT DOCUMENTS | | | |
|---|---|---|---|---|---|
| Examiner Initials | Cite No.[1] | Document Number<br><br>Number - Kind Code[2] | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
| | US1 | 4,550,221 | 10-29-1985 | Mabusth | |
| | US2 | 4,746,770 | 05-24-1988 | McAvinney | |
| | US3 | 4,843,568 | 06-27-1989 | Krueger et al. | |
| | US4 | 4,954,967 | 09-04-1990 | Hiroshi | |
| | US5 | 5,374,787 | 12-20-1994 | Miller et al. | |
| | US6 | 5,428,367 | 06-27-1995 | Mikan | |
| | US7 | 5,483,261 | 01-09-1996 | Yasutake | |
| | US8 | 5,488,204 | 01-30-1996 | Mead et al. | |
| | US9 | 5,534,893 | 07-09-1996 | Hansen et al. | |
| | US10 | 5,543,591 | 08-06-1996 | Gillespie et al. | |
| | US11 | 5,825,352 | 10-20-1998 | Bisset et al. | |
| | US12 | 5,835,079 | 11-10-1998 | Shieh | |
| | US13 | 5,869,791 | 02-09-1999 | Young | |
| | US14 | 5,880,411 | 03-09-1999 | Gillespie et al. | |
| | US15 | 5,903,902 | 05-11-1999 | Orr et al. | |
| | US16 | 5,942,733 | 08-24-1999 | Allen et al. | |
| | US17 | 5,956,020 | 09-21-1999 | D'Amico | |
| | US18 | 6,028,271 | 02-22-2000 | Gillespie et al. | |
| | US19 | 6,028,602 | 02-22-2000 | Weidenfeller et al. | |
| | US20 | 6,061,063 | 05-09-2000 | Wagner et al. | |
| | US21 | 6,067,068 | 05-23-2000 | Hussain | |
| | US22 | 6,141,018 | 10-31-2000 | Beri et al. | |
| | US23 | 6,18,391 | 02-13-2001 | Seely et al. | |
| | US24 | 6,239,389 | 05-29-2001 | Allen et al. | |
| | US25 | 6,278,443 | 08-21-2001 | Amro et al. | |
| | US26 | 6,320,610 | 10-30-2001 | Beaton et al. | |
| | US27 | 6,323,846 B1 | 11-27-2001 | Westerman et al. | |
| | US28 | 6,337,698 | 01-08-2002 | Keely et al. | |
| | US29 | 6,486,896 | 11-26-2002 | Ubillos | |
| | US30 | 6,509,907 | 01-21-2003 | Kuwabara | |
| | US31 | 6,570,557 B1 | 05-27-2003 | Westerman et al. | |
| | US32 | 6,677,932 B1 | 01-13-2004 | Westerman | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  [1] Applicant's unique citation designation number (optional).  [2] See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).  [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  [6] Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

List of References ... ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| | | | | | |
|---|---|---|---|---|---|
| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed October 9, 2012* | |
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 2 | of | 8 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | | | | |
|---|---|---|---|---|
| US33 | 6,677,965 | 01-13-2004 | Ulmann et al. | |
| US34 | 6,741,966 | 05-25-2004 | Brechner et al. | |
| US35 | 6,791,530 | 09-14-2004 | Vernier et al. | |
| US36 | 6,820,237 B1 | 11-16-2004 | Abu-Hakima et al. | |
| US37 | 6,839,721 | 01-04-2005 | Schwols | |
| US38 | 6,903,927 | 06-07-2005 | Anlauff | |
| US39 | 6,957,392 | 10-18-2005 | Simister et al. | |
| US40 | 6,958,749 | 10-25-2005 | Matsushita et al. | |
| US41 | 6,970,160 | 11-29-2005 | Mulligan et al. | |
| US42 | 7,009,626 | 03-07-2006 | David et al. | |
| US43 | 7,015,894 | 03-21-2006 | Morohoshi | |
| US44 | 7,030,860 | 04-18-2006 | Hsu et al. | |
| US45 | 7,081,866 | 07-25-2006 | Nakano et al. | |
| US46 | 7,109,978 | 9-19-2006 | Gillespie et al. | |
| US47 | 7,117,453 | 10-03-2006 | Drucker et al. | |
| US48 | 7,152,210 | 12-19-2006 | Van Den Hoven et al. | |
| US49 | 7,173,623 | 02-06-2007 | Calkins et al. | |
| US50 | 7,184,064 | 02-27-2007 | Zimmerman et al. | |
| US51 | 7,254,775 | 08-07-2007 | Geaghan et al. | |
| US52 | 7,337,412 | 02-26-2008 | Guido et al. | |
| US53 | 7,346,850 | 03-18-2008 | Swartz et al. | |
| US54 | 7,355,620 | 04-08-2008 | Ikehata et al. | |
| US55 | 7,382,139 | 06-03-2008 | Mackey | |
| US56 | 7,411,575 | 08-12-2008 | Hill et al. | |
| US57 | 7,446,783 | 11-04-2008 | Grossman | |
| US58 | 7,450,113 | 11-11-2008 | Gillespie et al. | |
| US59 | 7,450,114 | 11-11-2008 | Anwar | |
| US60 | 7,479,949 | 01-20-2009 | Jobs et al. | |
| US61 | 7,511,702 | 03-31-2009 | Hotelling | |
| US62 | 7,532,205 | 05-12-2009 | Gillespie et al. | |
| US63 | 7,561,159 | 07-14-2009 | Abel et al. | |
| US64 | 7,576,732 | 08-01-2009 | Lii | |
| US65 | 7,612,786 | 11-03-2009 | Vale et al. | |
| US66 | 7,658,675 | 02-09-2010 | Hotta | |
| US67 | 7,663,607 | 02-16-2010 | Hotelling et al. | |
| US68 | 7,735,016 | 06-08-2010 | Celik et al. | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed October 9, 2012* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | 3992 |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 3 | of | 8 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | | | | |
|---|---|---|---|---|
| US69 | 7,786,975 | 08-31-2010 | Ording | |
| US70 | 7,844,913 | 11-30-2010 | Amano et al. | |
| US71 | 7,872,640 | 01-18-2011 | Lira | |

| | | | | |
|---|---|---|---|---|
| **U.S. PATENT APPLICATION PUBLICATIONS** | | | | |
| USA1 | 2001/0028369 A1 | 10-11-2001 | Gallo et al. | |
| USA2 | 2001/045949 | 11-29-2001 | Chithamharam et al. | |
| USA3 | 2002/0015024 A1 | 02-07-2002 | Westerman et al. | |
| USA4 | 2002/0036618 | 03-28-2002 | Wakai | |
| USA5 | 2002/0067346 | 06-06-2002 | Mouton | |
| USA6 | 2002/0194589 | 12-01-2002 | Cristofalo et al. | |
| USA7 | 2003/0095096 | 05-22-2003 | Robbin et al. | |
| USA8 | 2003/0122787 | 07-03-2003 | Zimmerman et al. | |
| USA9 | 2003/0160832 | 08-01-2003 | Ridgley et al. | |
| USA10 | 2003/0231168 | 12-18-2003 | Bell et al. | |
| USA11 | 2003/132959 | 07-17-2003 | Simister et al. | |
| USA12 | 2003/174149 | 09-18-2003 | Fujisaki | |
| USA13 | 2004/0021698 | 02-01-2004 | Baldwin et al. | |
| USA14 | 2004/0034801 | 02-19-2004 | Jaeger | |
| USA15 | 2004/0100479 | 05-27-2004 | Nakano et al. | |
| USA16 | 2004/0167919 | 08-26-2004 | Sterling et al. | |
| USA17 | 2004/0215643 | 10-01-2004 | Brecher et al. | |
| USA18 | 2004/0224638 | 11-11-2004 | Fadell et al. | |
| USA19 | 2004/222992 | 11-11-2004 | Calkins et al. | |
| USA20 | 2005/0041385 | 02-24-2005 | Kikinis et al. | |
| USA21 | 2005/0057524 | 03-17-2005 | Hill et al. | |
| USA22 | 2005/0088418 | 04-28-2005 | Westerman et al. | |
| USA23 | 2005/0122806 A1 | 06-09-2005 | Arakawa et al. | |
| USA24 | 2005/0168353 | 08-04-2005 | Dement et al. | |
| USA25 | 2005/0193015 | 09-01-2005 | Logston et al. | |
| USA26 | 2005/0275636 A1 | 12-15005 | Dehlin et al. | |
| USA27 | 2005/088443 | 04-28-2005 | Blanco et al | |
| USA28 | 2006/0010400 A1 | 01-12-2006 | Dehlin et al. | |
| USA29 | 2006/0038796 | 02-23-2006 | Hinckley | |
| USA30 | 2006/0084852 | 04-20-2006 | Mason et al | |
| USA31 | 2006/0097991 | 05-11-2006 | Hotelling et al. | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  ¹ Applicant's unique citation designation number (optional).  ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3).  ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement:  This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO:  Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

List of References   F

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed October 9, 2012* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 4 | of | 8 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | | | | | |
|---|---|---|---|---|---|
| USA32 | 2006/0101354 | 05-11-2006 | Hashimoto et al. | |
| USA33 | 2006/0190833 A1 | 08-24-2006 | SanGiovanni et al. | |
| USA34 | 2006/0236263 | 10-19-2006 | Bathiche at al. | |
| USA35 | 2007/0028191 | 02-01-2007 | Tsuji | |
| USA36 | 2007/0035513 | 02-15-2007 | Sherrard et al. | |
| USA37 | 2007/0055967 | 03-08-2007 | Poff et al. | |
| USA38 | 2007/0064004 | 03-22-2007 | Bonner et al. | |
| USA39 | 2007/0075965 | 04-05-2007 | Huppi et al. | |
| USA40 | 2007/0081726 | 04-12-2007 | Westerman et al. | |
| USA41 | 2007/0132789 | 06-14-2007 | Ording et al. | |
| USA42 | 2007/0146337 | 06-28-2007 | Ording et al. | |
| USA43 | 2007/0149252 A1 | 06-28-2007 | Jobs et al. | |
| USA44 | 2007/0152984 | 07-05-2007 | Ording et al. | |
| USA45 | 2007/0157089 A1 | 07-05-2007 | Van Os et al. | |
| USA46 | 2007/0157094 | 07-05-2007 | Van Os et al. | |
| USA47 | 2007/0182743 A1 | 08-09-2007 | Aguera y Arcas | |
| USA48 | 2007/0185876 | 08-01-2007 | Howard | |
| USA49 | 2007/0252821 | 11-01-2007 | Hollemans et al. | |
| USA50 | 2007/0256026 | 11-01-2007 | Klassen et al. | |
| USA51 | 2007/0262964 A1 | 11-15-2007 | Zotov et al. | |
| USA52 | 2007/028856 | 12-01-2007 | Butlin et al. | |
| USA53 | 2008/0005703 | 01-01-2008 | Radivojevic et al. | |
| USA54 | 2008/0016096 | 01-17-2008 | Wilding et al. | |
| USA55 | 2008/0034029 | 02-01-2008 | Guido et al. | |
| USA56 | 2008/0048978 | 07-01-2008 | Ording et al. | |
| USA57 | 2008/0052945 | 03-06-2008 | Matas et al. | |
| USA58 | 2008/0062207 | 03-13-2008 | Park | |
| USA59 | 2008/0094369 | 04-24-2008 | Ganatra et al. | |
| USA60 | 2008/0168395 | 01-01-2004 | Ulmann et al. | |
| USA61 | 2008/0168404 | 07-10-2008 | Ording | |
| USA62 | 2008/0231610 | 09-01-2008 | Hotelling et al. | |
| USA63 | 2009/0244020 A1 | 10-01-2009 | Sjolin | |
| USA64 | 2009/0249252 A1 | 10-01-2009 | Lunday et al. | |
| USA65 | 2009/0307623 | 12-10-2009 | Agarawala et al. | |
| USA66 | 2010/0172624 | 07-08-2010 | Watts | |
| | | | | |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 23313-1450.

List of References ... ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed October 9, 2012* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 5 | of | 8 | Attorney Docket Number | *P4304USREX2/120730-002US* |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document<br>Country Code[3] – Number[4] - Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | FP1 | EP 0 626 635 A2 | 11-30-1994 | Firstperson, Inc. | | |
| | FP2 | WO 01/29702 A2 | 04-26-2001 | Koninklijke Philips Electronics N.V. | | |
| | FP3 | WO 01/77792 A2 | 10-18-2001 | RSA Security Inc. | | |
| | FP4 | WO 02/21338 A2 | 03-14-2002 | Oracle Corporation | | |
| | FP5 | WO 03/081458 A1 | 10-02-2003 | America Online Inc | | |
| | FP6 | WO 04/001560 A1 | 12-31-2003 | Nokia Corporation | | |
| | FP7 | WO 06/045530 A2 | 05-04-2006 | Novo Nordisk A/S | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published |
|---|---|---|
| | NPL1 | Apple Inc. vs. Samsung Electronics Co. Ltd. et al., Judgment dated August 24, 2011, 65 pages. |
| | NPL2 | Apple Inc. vs. Samsung Electronics Co. Ltd., et al., Samsung's Patent Local Rule 3-3 and 3-4 Disclosures dated October 7, 2011, together with Exhibits G-1 through G-7 and Exhibit H, 287 pages. |
| | NPL3 | Apple Inc. vs. Samsung Electronics Co. Ltd., et al., Samsung's Motion To Supplement Invalidity Contentions filed January 27, 2012 together with Exhibit 6, 47 pages. |
| | NPL4 | Ballard, P., "Microsoft Makes Research Technologies Available For Licensing," May 5, 2005, http://www.theserveside.com/discussions/thread.tss?thread_id=33761, 8 pages. |
| | NPL5 | Benko et al., "Precise Selection Techniques for Multi-Touch Screens," CHI 2006, April 22-27 2006, 10 pages. |
| | NPL6 | Certificate of Grant dated February 3, 2012, received in Hong Kong Patent Application No. 10103983.1, which corresponds to U.S. Application No. 11/956,969, 5 pages (Ording) |
| | NPL7 | Davis, J., "Flash to the Core-An Interactive Sketchbook, praystation.com. 2002, http://flashtothecore.praystation.com/, 3 pages. |
| | NPL8 | Decision to Grant dated October 7, 2011, received in European Patent Application No. 08 713 567.9, which corresponds to U.S. Application No. 11/956,969 (Ording). |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.   [1] Applicant's unique citation designation number (optional).   [2] See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.   [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3).   [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.   [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.   [6] Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

List of References Filed by Applicant page 5 of 8

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION | | Electronically filed October 9, 2012 | |
|---|---|---|---|
| | | Application Number | 90/012,304 |
| | | Filing Date | May 23, 2012 |
| | | First Named Inventor | Bas Ording |
| Substitute for Form 1449-PTO | | Art Unit | 3992 |
| | | Examiner Name | BONSHOCK, DENNIS G |

| Sheet | 6 | of | 8 | Attorney Docket Number | P4304USREX2/120730-002US |
|---|---|---|---|---|---|

| | NPL9 | Dodge et al., "Microsoft Office Excel 2003 Office Manual," Microsoft Press, July 12, 2004, vol. 1, p. 66-68, UNABLE TO LOCATE ENGLISH TRANSLATION. |
|---|---|---|
| | NPL10 | European Search Report dated December 1, 2011, received in European Patent Application No. 11182962.8, which corresponds to U.S. Application No. 11/956,969, 8 pages (Ording). |
| | NPL11 | European Search Report dated December 1, 2011, received in European Patent Application No. 11182963.6, which corresponds to U.S. Application No. 11/956,969, 8 pages (Ording). |
| | NPL12 | European Search Report dated November 30, 2011, received in European Patent Application No. 11182959.4, which corresponds to U.S. Application No. 11/956,969, 7 pages (Ording). |
| | NPL13 | European Search Report dated November 29, 2011, received in European Patent Application No. 11182954.5, which corresponds to U.S. Application No. 11/956,969, 6 pages (Ording). |
| | NPL14 | Examiner's Amendment dated October 29, 2008, to related application no. 11/956,969. |
| | NPL15 | Examiner's Report dated February 19, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent No. 7,469,381). |
| | NPL16 | Examiner's Report dated July 15, 2009, received in Australian Patent Application No. 2008201540, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent 7,469,381). |
| | NPL17 | Examiner's Report dated July 1, 2008, received in Australian Patent Application No. 2008100283, which corresponds to U.S. Application No. 11956,969 (issued U.S. Patent 7,469,381). |
| | NPL18 | Examiner's Report dated April 8, 2010, received in Australian Patent Application No. 2009208103, which corresponds to U.S. Application No. 11/956,969, 2 pages (Ording). |
| | NPL19 | Examiner's Report dated February 11, 2009, received in Australian Patent Application No. 2009200366, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent No. 7,469,381). |
| | NPL20 | Forlines, et al., "DTLens: Multi-user Tabletop Spatial Data Exploration," UIST '05, October 2005, Seattle Washington, USA, 6 pages. |
| | NPL21 | HAN, J., "Talks Jeff Han: Unveiling the Genius of Multi-touch Interface Design," Ted Ideas Worth Spreading, August 6, 2006, 1 page, http://www.ted.com/talks/lang/en/jeff_han_demos_his_breakthrough_touchscreen.html |
| | NPL22 | HTC Europe Co. Ltd and Apple Inc. Invalidity Claim dated July 29, 2011, together with amended Particulars of Claim and amended Grounds of Invalidity, 22 pages. |
| | NPL23 | HTC Europe Co. Ltd and Apple Inc. Invalidity Claim dated April 5, 2012, together with annexes, 84 pages. |
| | NPL24 | Japanese patent issued May 20, 2011, for Japanese patent application no. 2009 544996, which corresponds to U.S. Application No. 11/956,969 (Ording). |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.  ¹ Applicant's unique citation designation number (optional).  ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3).  ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement:  This form is estimated to take 2.0 hours to complete.  Time will vary depending upon the needs of the individual case.  Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO:  Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

List of References  ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed October 9, 2012* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 7 | of | 8 | Attorney Docket Number | *P4304USREX2/120730-002US* |

| | | |
|---|---|---|
| | NPL25 | KARLSON et al., "AppLens and LaunchTile: Two Designs for One-handed Thumb Use on Small Devices," CHI 2005 April 2-7, 2005, Portland, OR, pp.1-10 |
| | NPL26 | MERTZ et al., "The influence of design techniques on user interfaces: the DigiStrips experiment for air traffic control," Proceeding of HCI-Aero 2000 International Conference on Human-Computer Interaction in Aeronautics, Toulouse, France, 6 pages. |
| | NPL27 | Motorola Mobility Opposition Grounds to Apple Inc. European Patent EP 2126678 dated April 11, 2012, together with Exhibits E3, E4, and E5 re: CHI 2005, April 2-7, 2005, Portland Oregon, USA, 53 pages. |
| | NPL28 | Notice of Acceptance dated November 24, 2011, received in Australian Patent Application No. 2009208099, which corresponds to U.S. Application No. 11/956,969, 3 pages (Ording). |
| | NPL29 | Notice of Acceptance dated April 14, 2011, received in Australian patent Application No. 2009208103, which corresponds to U.S. Application No. 11/956,969 (Ording). |
| | NPL30 | Notice of Acceptance dated November 9, 2011, received in Australian Patent Application No. 2011201639, which corresponds to U.S. Application No. 11/956,969, 3 pages (Ording). |
| | NPL31 | Notice of Appeal in Expedited Appeal in Summary Proceedings dated September 11, 2011, 51 pages. |
| | NPL32 | Notice of Allowance dated January 30, 2012, received in Canadian Patent Application No. 2,658,177, which corresponds to U.S. Application No. 11/956,969, 1 page (Ording) |
| | NPL33 | Notice of Allowance dated May 11, 2012, received in U.S. Application No. 12/270,807, 16 pages (Ording) |
| | NPL34 | Notice of Allowance dated July 11, 2012, for related application no. 12/270,810 (Ording). |
| | NPL35 | Notice of Allowance dated October 29, 2008, for related application no. 11/956,969 (Ording). |
| | NPL36 | Office Action dated May 17, 2012, received in U.S. Application No. 12/270,812, 18 pages (Ording) |
| | NPL37 | Office Action dated May 17, 2012, received in U.S. Application No. 12/270,815, 17 pages (Ording) |
| | NPL38 | Office Action dated October 11, 2011, received in U.S. Application No. 12/270,807 (Ording). |
| | NPL39 | Office Action dated October 12, 2011, received in U.S. Application No. 12/270,810 (Ording). |
| | NPL40 | Office Action dated October 13, 2011, received in U.S. Application No. 12/270,812 (Ording). |
| | NPL41 | Office Action dated October 11, 2011, received in U.S. Application No. 12/270,815 (Ording). |
| | NPL42 | Office Action dated December 1, 2009, received in Canadian Patent Application No. 2,658,177, which corresponds to U.S. Application 11/956,969 (issued U.S. Patent 7,469,381). |
| | NPL43 | Office Action dated January 5, 2012, received in Chinese Patent Application No. 200880000019.9, which corresponds to U.S. Application No. 11/956,969, 14 pages (Ording). |
| | NPL44 | Office Action dated November 23, 2010, received in Chinese Patent Application No. 200880000019.9, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent 7,469,381). |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.  [1] Applicant's unique citation designation number (optional).  [2] See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04.  [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST. 3).  [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible.  [6] Applicant is to place a check mark here if English language Translation is attached.

Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

List of References   FORM PTO/SB/08 (Substitute)

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./

| INFORMATION DISCLOSURE CITATION<br><br>Substitute for Form 1449-PTO | | | | *Electronically filed October 9, 2012* | |
|---|---|---|---|---|---|
| | | | | Application Number | *90/012,304* |
| | | | | Filing Date | *May 23, 2012* |
| | | | | First Named Inventor | *Bas Ording* |
| | | | | Art Unit | *3992* |
| | | | | Examiner Name | *BONSHOCK, DENNIS G* |
| Sheet | 8 | of | 8 | Attorney Docket Number | *P4304USREX2/12073 0-002US* |

| | | |
|---|---|---|
| | NPL45 | Office Action dated October 29, 2010, received in German Patent Application No. DE 11 2008 000 144.8-53, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent 7,469,381). |
| | NPL46 | Office Action dated December 29, 2009, received in European Application No. 08 713 567.9, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent 7,469,381). |
| | NPL47 | Office Action dated February 12, 2010, received in Japanese Patent Application No. 2009-544996, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent 7,469,381). |
| | NPL48 | Office Action dated November 8, 2010, received in Japanese Patent Application No. 2009-544996, which corresponds to U.S. Application No. 11/956,969 (issued U.S. Patent 7,469,381). |
| | NPL49 | Office Action dated August 27, 2009, received in Korean Patent Application No. 10-2009-7003574, which corresponds to U.S. Application No. 11/956,969 (issued patent no. 7,469,381). |
| | NPL50 | Plaisant et all., "Touchscreen Toggle Design," Proceedings of the Conference on Human Factors in Computing Systems, Addison Wesley, US, May 3, 1992, 2 pages. |
| | NPL51 | Pleading notes Mr B.J. Berghuis van Woortman dated August 10 and 11, 2010, 16 pages. |
| | NPL52 | Pleading notes Mr Kleemans, Mr Blomme and Mr Van Oorschot dated August 10, 2011, 35 pages. |
| | NPL53 | Salmoni, "The Zooming User Interface," Advogato, August 16, 2004, http://www.advogato.org/article/788.html, 14 pages. |
| | NPL54 | Samsung Electronics GmbH/Apple Inc. Opposition dated January 30, 2012, 27 pages. |
| | NPL55 | Samsung Statement of Defense (Tablets) Also Counterclaim dated July 20, 2011, 44 pages. |
| | NPL56 | Samsung Statement of Defense (Smartphones) Also Counterclaim dated July 20, 2011, 48 pages. |
| | NPL57 | Summons dated October 28, 2011, received in European Patent Application No. 08705751.9, which corresponds to U.S. Application No. 11/968,059, 9 pages (Lamiraux). |

| Examiner Signature | /Dennis Bonshock/ | Date Considered | 03/21/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kind Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.
Burden Hour Statement: This form is estimated to take 2.0 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.

List of References — ~~Form~~ ... ~~PTO~~ ...

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /D.B./