# EXHIBIT B



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,311 | 11/01/2010 | 5,915,131 | 0314896.131 | 1355 |

45217        7590        08/15/2011

APPLE INC./BSTZ
BLAKELY SOKOLOFF TAYLOR & ZAFMAN LLP
1279 OAKMEAD PARKWAY
SUITE 300
SUNNYVALE, CA  94085-4040

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 08/15/2011

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Joseph J. Richetti
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/011,311*.

PATENT NO. *5,915,131*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| **Office Action in Ex Parte Reexamination** | **Control No.**<br>90/011,311 | **Patent Under Reexamination**<br>5,915,131 |
|---|---|---|
| | **Examiner**<br>WOO H. CHOI | **Art Unit**<br>3992 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

a☒ Responsive to the communication(s) filed on *13 June 2011* .       b☒ This action is made FINAL.
c☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire _2_ month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892. ·   3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.       4. ☐ _____

Part II   SUMMARY OF ACTION

1a. ☒ Claims *1-20* are subject to reexamination.

1b. ☐ Claims ____ are not subject to reexamination.

2. ☐ Claims ____ hav e been canceled in the present reexamination proceeding.

3. ☒ Claims *7-20* are patentable and/or confirmed.

4. ☒ Claims *1-6* are rejected.

5. ☐ Claims ____ are objected to.

6. ☐ The drawings, filed on ____ are acceptable.

7. ☐ The proposed drawing correction, filed on ____ has been  (7a) ☐ approved  (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some* c)☐ None   of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. ____.

   4☐ been filed in reexamination Control No. ____.

   5☐ been received by the International Bureau in PCT application No. ____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)                    **Office Action in Ex Parte Reexamination**                    Part of Paper No. 20110803

Application/Control Number: 90/011,311                              Page 2
Art Unit: 3992

## DETAILED ACTION

### *Reexamination*

1.      This is an *ex parte* reexamination of U.S. Patent Number 5,915,131 ('131 patent)

requested by a third party requester.  Claims 1-20 are subject to reexamination.  The references

discussed herein are as follows:

    1.  Teaff, Danny, et. al, *"The Architecture of High Performance Storage Systems (HPSS),"* 4th NASA Goddard Conference on Mass Storage Systems and Technologies, March 29-30, 1995 ("Teaff");

    2.  U.S. Patent No. 5,566,346 ("Andert");

    3.  Lennon, Seteve, et. al., *"An Object Oriented Device Driver Model,"* 1995 IEEE ("Lennon").

    4.  Andert, Glenn, *"Object Frameworks in the Taligent OS,"* 1994 IEEE ("Andert II").

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

    A person shall be entitled to a patent unless –

    (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

3.      <u>Claims 1 and 2 are rejected under 35 U.S.C. 102(a) as being anticipated by Teaff.</u>

4.      With respect to claim 1, Teaff discloses **a computer system** (p. 3, Figure 1) **comprising:**

Application/Control Number: 90/011,311                                                   Page 3
Art Unit: 3992

      **a bus** (Figure 1, control buses that connect network elements and workstations to the HPSS servers; also, a bus is an inherent component of a computer system);

      **at least one memory** (Figure 1, network attached memories or other memories in servers and workstations) **coupled to the bus for storing data and programming instructions that include applications and an operating system;  and**

      **a processing unit** (Figure 1, servers and workstations) **coupled to the bus and running the operating system and applications by executing programming instructions** (see pp. 4-5, Modularity and APIs, and Portability and Standards)**, wherein an application has a first plurality of tailored distinct programming interfaces** (p. 4, "The HPSS software components are loosely coupled, with open application program interfaces (APIs) defined at each component level"; see also Appendix A for a list of tailored APIs) **available to access a plurality of separate sets of computer system services** (p. 4, "Most users will access HPSS at its high level interfaces – client API, FTP, (both parallel and sequential), NFS, Parallel File system (PFS), with AFS/DFS, …") **through the operating system of the computer system via service requests** (see Figures 2 and 3, and the text associated with the figures; see Figure 6 for an example of security service requests handled through the operating system).

5.      With respect to claim 2, **each of the first plurality of tailored distinct programming interfaces are tailored to a type of I/O service provided by each set of I/O services** (p. 4, Modularity and APIs; see also Appendix A, APIs are tailored for each type of services).

6.      <u>Claims 1-6 are rejected under 35 U.S.C. 102(a) as being anticipated by Andert.</u>

Application/Control Number: 90/011,311                                    Page 4
Art Unit: 3992

7.      With respect to claim 1, Andert discloses **a computer system** (Figure 10) **comprising:**

**a bus** (see Figures 4, 7, and 8)**;**

**at least one memory** (Figure 10, 1008) **coupled to the bus for storing data and**

**programming instructions that include applications and an operating system;  and**

**a processing unit** (1006) **coupled to the bus and running the operating system** (1014)

**and applications** (1030) **by executing programming instructions, wherein an application**

**has a first plurality of tailored distinct programming interfaces** (see Figure 1 and c8:30-44;

see also c9:30-35, each framework presents it its clients an interface that is consistent from

platform to platform) **available to access a plurality of separate sets of computer system**

**services** (c8:45-67) **through the operating system** (see Figure 10, applications 1030 access I/O

services provided by Device Ensembles 1032 through the operating system 1014; see also c3:47-

49) **of the computer system via service requests** (c1:59-62)**.**

8.      With respect to claim 2, **each of the first plurality of tailored distinct programming**

**interfaces are tailored to a type of I/O service provided by each set of I/O services** (see

Figure 1; see also c8:45-67).

9.      With respect to claim 3, see the discussion of claim 1 above.  Andert discloses that **the**

**operating system comprises a plurality of servers** (see Figures 1 and 2, IO services

frameworks; see also c3:56-61)**, and each of the first plurality of programming interfaces**

**transfer service requests to one of the plurality of servers, wherein each of the plurality of**

Application/Control Number: 90/011,311                                    Page 5
Art Unit: 3992

servers responds to service requests from clients of the separate sets of I/O services (see

Figure 1, c10:1-6).

10.     With respect to claim 4, **service requests are transferred as messages in a messaging**

**system** (c10:1-6 and c17:36-40).

11.     With respect to claim 5, **each of the plurality of servers supports a message port** (see

c17:36-53, the message port limitation reads on the means for receiving messages from

application programs and interrupt service means).

12.     With respect to claim 6, **at least one of the plurality of servers is responsive to service**

**requests from applications and from at least one other set of I/O services** (c9:1-11).

### *Response to Arguments*

13.     Patent Owner's arguments filed June 16, 2011 have been fully considered.  While some

of the arguments are persuasive others are not.

### Andert

#### A. "a first plurality of tailored distinct programming interfaces"

14.     Patent Owner first argues that Andert does not disclose, teach, or suggest "a first

plurality of tailored distinct programming interfaces" allegedly because

Andert is silent regarding details of any interface made available by its I/O service frameworks

beyond disclosing that they "represent an end user's interface to the I/O system" (Patent Owner's

Response, p. 5). Relying on David Wilson's statements in a rule 132 declaration ("Wilson

Declaration") filed with the response, Patent Owner asserts that "it is probable that Andert's

interface to its I/O service frameworks was not tailored." The Examiner disagrees.


15.     Andert specifically discloses that "[a]t the IO Services Framework 102, **each framework**

presents to its clients 214 **an interface** which is consistent from platform to platform" (c8:30-

35). Andert does not disclose that all frameworks present the same interface to their clients as

Patent Owner suggests. Figure 1 of Andert clearly shows nine (9) different frameworks, each

having its own client interface, for nine different types of IO services. There is nothing to

suggest in Andert that the nine different frameworks share the same common client interface.

Evidence of record also suggests that Patent Owner's assertion is incorrect. Lemon discloses that

"[f]ramework design and definition focuses on two areas of interface specification: the Client

API presented to the client of the service, and the Customizing API presented to implementors"

(Lemon, p. 362, 3.3 Frameworks). If the Client API is the same for all frameworks, as Patent

Owner appears to be arguing, there would be no need to focus on the design and definition of the

interface specification for the Client API because it would be predefined to be the same for all

frameworks. Focus on the design and definition of the interface specification for the Client API

suggests tailoring to the need of a particular device family. Andert discloses a separate

framework for each family of devices that share some common characteristics. Andert also

specifically discloses that "each category of device must be allowed to define its own abstract

interface" (c11:34-35).

Application/Control Number: 90/011,311                                    Page 7
Art Unit: 3992

16.     Mr. Wilson states that "[t]he state of the art around the time Andert reference was filed

was for an operating system to provide application programs with a single programming

interface for accessing all of the I/O services available through the computer system" (Wilson

Declaration, p. 12, paragraph 36).   He cites the Macintosh OS and the Unix OS as examples.

Mcintosh OS was developed by Patent Owner.  It appears that the '131 patent was meant to

address the limitations of Patent Owner's own OS.  Unix OS was designed in 1970's.  It is

questionable whether the Unix OS still represented the state of the art in the operating system

design some 20 years later.  Moreover, Patent Owner's own evidence, submitted with the

declaration, suggests that the approach taken by Unix designers was one of many possible

solutions (see Wilson Declaration, p. 13, paragraph 37, "Some way is needed to allow programs

to access these [I/O] devices.  Although **various solutions are possible**, the UNIX one is to

integrate them into the file system as what are called **special files**").  Andert II discloses an

example of an operating system built with frameworks where different IO service frameworks

are not integrated into the file system as in Unix (see Andert II, p. 115, Figure 2 shows that I/O,

expansion bus, input, graphics devices, network, and directory services frameworks are not

integrated into the file system framework).

17.     The Examiner also notes that claim 1 does not require the operating system to provide a

plurality of tailored distinct programming interfaces.  The claim merely requires the tailored

programming interfaces to be available to an application to access system services **through** the

operating system.  Figure 3 clearly shows Client IO services being provided through the

Application/Control Number: 90/011,311                    Page 8
Art Unit: 3992

operating system.  Patent Owner cannot dispute that Andert has not adopted a "one-size-fits-all"

interface abstraction (see c11:28-35).  Instead, Andert specifically teaches allowing each family

of devices to have its own interface.  Figure 10 also clearly shows that applications 1030 access

services provided by device ensembles 1032 through the operating system 1014.

### B. "the operating system comprises a plurality of servers"

18.      Patent Owner argues that the Office Action does not assert that Andert's I/O Service

Frameworks are part of an operating system as required by the claims.  The Examiner disagrees

because the Office Action specifically mapped the I/O services frameworks to the server

limitation.  Andert specifically discloses that "[t]he device ensembles 1032 operate with each

other to provide IO services to end users (such as the application 1030)" (c3:47-49).  Andert also

discloses that "the device ensembles 1032 could be illustrated as being part of the operating

system 1014" (c3:56-61).  An ensemble is an implementation instance of a framework (c4:66-

67).  Thus, Andert specifically discloses that IO frameworks that provide IO services could be

part of the operating system.

### D. "the operating system comprises a plurality of activation models"

19.      Patent Owner argues that Andert's device access manager is not "an activation model"

that defines an operating environment, because an activation model is just a model while the

device access manager is actual executable code (Response, p. 13).  The Examiner agrees.

According to the specification of the '131 patent, "[a]n activation model defines how the family

is implemented and the environment within which plug-ins of the family executes" (c10:17-19).

Application/Control Number: 90/011,311                                    Page 9
Art Unit: 3992

"Each model provides a distinctly different environment for the plug-ins to the family, and

different implementation options for the family software" (c10:29-31). The specification

provides three exemplary tasking models (single-task model, task-per-plug-in model, and task-

per-request model) that define how the family code is activated.


20.    As noted by Patent Owner, Andert's device access managers appear to be a set of

executable codes that manage access to the devices and implement individualized access policies

for each device (see c11:25-54), not a model of how they are to be implemented and executed.

Thus, a device access manage is not an activation model as Requester alleged in the Request.

Although Andert also discloses a runtime environment that includes the necessary runtime

support and other fundamental services required to support the I/O servers (see c16:6-17), Andert

does not disclose that the runtime environment is defined or provided with an activation model.


**Teaff**

    **C. "the operating system comprises a plurality of servers"**

21.    Patent Owner asserts that Teaff never discloses that its HPSS servers are part of the

operating system (Response, p. 10). The Examiner agrees. As pointed out by Patent Owner,

Figure 3 of Teaff shows HPSS to be situated in a layer above the operating system. Accordingly,

the rejection of claim 3 and its dependent claims based on Teaff is withdrawn.


    **E. "A computer system comprising: a bus."**

Application/Control Number: 90/011,311                                Page 10
Art Unit: 3992

22.      Patent Owner's argues that Teaff does not disclose a computer system comprising a bus

or a processing unit having all of the recited elements.  The arguments are not persuasive

because a bus and a processing unit are inherent in any computer system.  Patent Owner does not

dispute the Teaff discloses tailored distinct APIs to access computer system services.  Any

computer system that has access to Teaff's APIs must have a bus, a processing system, and an

operating system, all of which are inherent elements of a computer system with API access.  As

discussed above, the claimed programming interfaces are not required to be provided by the

operating system.  They merely need to be available to access computer system services.


### Examiner's Statement of Reasons for Patentability/Confirmation

23.      Claims 7-20 are deemed to be patentable and/or confirmed over the prior art

of record for the following reasons: All of these claims require an activation model.

As discussed above, the prior art references considered in this proceeding do not

disclose an activation model as the term is used in the '131 patent.


### Conclusion

24.   **THIS ACTION IS MADE FINAL.**

        A shortened statutory period for response to this action is set to expire two (2) months

from the mailing date of this action.

        **Extensions of time under 37 CFR 1.136(a) do not apply in reexamination**

**proceedings**. The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

Application/Control Number: 90/011,311                                    Page 11
Art Unit: 3992

reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that

reexamination proceedings "will be conducted with special dispatch within the Office."

   **Extensions of time in reexamination proceedings are provided for in 37 CFR**

**1.550(c).** A request for extension of time must be filed on or before the day on which a response

to this action is due, and it must be accompanied by the petition fee set forth in 37 CFR 1.17(g).

The mere filing of a request will not effect any extension of time. An extension of time will be

granted only for sufficient cause, and for a reasonable time specified.

   The filing of a timely first response to this final rejection will be construed as including a

request to extend the shortened statutory period for an additional month, which will be granted

even if previous extensions have been granted. In no event however, will the statutory period for

response expire later than SIX MONTHS from the mailing date of the final action. See MPEP §

2265.

Application/Control Number: 90/011,311                                    Page 12
Art Unit: 3992

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as

follows:


By **U.S. Postal Service Mail** to:

      Mail Stop *Ex Parte* Reexam
      ATTN:  Central Reexamination Unit
      Commissioner for Patents
      P.O. Box 1450
      Alexandria, VA  22313-1450


By FAX to:    (571) 273-9900
             Central Reexamination Unit


By hand to:   Customer Service Window
            Randolph Building
            401 Dulany St.
            Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.


/Woo H. Choi/
Reexamination Specialist
Central Reexamination Unit 3992

ESK
EBK



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/011,311 | 11/01/2010 | 5,915,131 | 0314896.131 | 1355 |

45217      7590      12/18/2012
APPLE INC./BSTZ
BLAKELY SOKOLOFF TAYLOR & ZAFMAN LLP
1279 OAKMEAD PARKWAY
SUNNYVALE, CA 94085-4040

| EXAMINER |
|---|
| CHOI, WOO H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/18/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte*
APPLE, INC.

_____

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161
Technology Center 3900

_____

Before RICHARD M. LEBOVITZ, STEPHEN C. SIU, and
MICHAEL R. ZECHER, *Administrative Patent Judges*.

LEBOVITZ, *Administrative Patent Judge*.


DECISION ON APPEAL

This is a decision on appeal by the Patent Owner from the Patent
Examiner's rejections of claims 1-6 in an ex parte reexamination of U.S.
Patent No. 5,915,131, issued June 22, 1999.  The Board's jurisdiction for
this appeal is under 35 U.S.C. §§ 6 and 134.  We affirm.

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

STATEMENT OF THE CASE

A request for *ex parte* reexamination of U.S. Patent 5,915,131 (hereinafter, "the '131 patent) was made by a Third Party Requester on November 1, 2010, pursuant to 35 U.S.C. §§ 302-307 and C.F.R. § 1.510. Reexamination was ordered for claims 1-20.  The patentability of claims 7-20 was confirmed by the Examiner.  App. Br. 3 (Appeal Brief, filed February 15, 2012).  Claims 1-6, however, remain rejected by the Examiner. The rejections are appealed.   An oral hearing was held on November 7, 2012.  A transcript will be entered into the record in due course.  This is the decision on the appeal.

The claims stand rejected by the Examiner as follows:

1.  Claim 1 under 35 U.S.C. § 102(a) as anticipated by Teaff.[1] Answer 3-4.

2.  Claims 1-6 under 35 U.S.C. § 102(a) as anticipated by Andert.[2] Answer 4-6.

Claim 1 is representative and reads as follows:

A computer system comprising:
 a bus;
 at least one memory coupled to the bus for storing data
  and programming instructions that include
  applications and an operating system; and
 a processing unit coupled to the bus and running the
  operating system and applications by executing
  programming instructions, wherein an application

---

[1] Danny Teaff et al., *The Architecture of the High Performance Storage System* (4th NASA Goddard Conference on Mass Storage Systems and Technologies, March 29-30 1995).
[2] U.S. Patent 5,566,346 (filed Dec. 21, 1993) (issued Oct. 15, 1996).

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

> has a first plurality of tailored distinct
> programming interfaces available to access a
> plurality of separate sets of computer system
> services provided through the operating system of
> the computer system via service requests.

## CLAIM INTERPRETATION

The main dispute in the rejections at issue in this appeal is whether the cited publications describe a computer system comprising a "plurality of tailored distinct programming interfaces available to access a plurality of separate sets of computer system services." We must therefore first interpret this phrase before comparing the claims to the cited prior art.

During reexamination, claims are given their broadest reasonable interpretation as they would be understood in the context of the specification. *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004); *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010). For this reason, the patent specification is the starting point when interpreting a claim.

The '131 Patent does not explicitly define "tailored distinct programming interfaces." However, the patent does provide guidance as to how it should be interpreted.

The '131 Patent teaches that to gain access to input/out ("I/O") devices, "applications generate service requests to which are sent through an application programming interface (API)." '131 Patent, col. 1, ll. 19-27. The '131 Patent explains:

> The service requests are converted by the API to a common set
> of functions that are forwarded to the operating system to be

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

> serviced. The operating system then sees that service requests
> are responded to by the appropriate resources (e.g., device). For
> instance, the operating system may direct a request to a device
> driver.

'131 Patent, col. 1, ll. 21-27.

The '131 identifies a problem with the prior art APIs: "One problem in the prior art is that service requests are not sent directly to the I/O device or resource. All service requests from all applications are typically sent through the same API." '131 Patent, col. 1, ll. 28-31. To address this issue, the inventors describe APIs which are tailored to specific devices, rather than using the same API for each device.

The inventors state in the "Summary of the Invention" that each application program has "multiple separate programming interfaces available to access multiple sets of I/O services." '131 Patent, col. 1, ll. 56-58. The inventors explain that separate families of programing interfaces (FPI) are designed to meet the particular needs of a programming interface family. *Id.* at col. 5, ll. 20-21. The '131 Patent gives several examples:

● "For example, when an application generates data for a video device, a display FPI tailored to the needs of video devices is used to gain access to display services." *Id.* at col. 6, ll. 29-31.

● "For example, within the file systems family (File Manager), a plug-in implements file-system-specific services." *Id.* at col. 5, ll. 24-26.

● "That is, an FPI is designed to provide callers with services appropriate to a particular family, whether those calls originate from in the user domain or the operating system domain." *Id.* at col. 6, ll. 25-28

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

The '131 Patent summarizes:  "Therefore, the present invention provides family programming interfaces tailored to the needs of specific device families."  *Id*. at col. 6, ll. 34-36.  As indicated above, this is achieved using APIs specifically designed for the special purpose (video and calls) and using specifics components (e.g., a plug-in for the file manager).

In light of the statement of the problem and the description of how it was addressed, a person of ordinary skill in the art would construe "tailored distinct programming interfaces" to mean different programming interfaces that are designed ("tailored") with different components to provide access to the specific service functions of the device.  *See, e.g.*, '131 Patent, col. 1, ll. 56-58; col. 6, ll. 25-31 (pertinent passages reproduced above).  The programming interfaces are thus different or distinct from each by having different components and/or displays that perform different functions and operations depending on the needs of the device.

## ANTICIPATION BY TEAFF

### Findings of Fact ("FF")

FF1.  Teaff describes the "High Performance Storage System (HPSS)," a system designed to improve the performance and capacity of available storage systems.  Teaff, p. 1.

FF2.   Teaff describes the HPSS architecture as a highly modular with software components "loosely coupled, with open application program interfaces (APIs) defined at each component level."  Teaff, p. 4.

FF3.  Teaff refers to multiple API's for different software components.  These include (FF4-FF10):

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

FF4.

    Most users will access HPSS at its high level interfaces-
currently client API, FTP (both parallel and sequential), NFS,
Parallel File System (PFS), with AFS/DFS, Unix Virtual File
System (VFS), and Data Management Interface Group (DMIG)
interfaces in the future) [11,15,18,19]. However, APIs are
available to the underlying software components for
applications, such as large scale data management, digital
library or video-on-demand requiring high performance or
special services.

Teaff, p. 4.

    FF5.  "APIs have been turned over to the IEEE Storage System

Standards Working Group as a basis for its standards activities."  Teaff, p. 5.

    FF6.  Teaff describes a Client API:

    ***Client API***

    The HPSS Client file server API mirrors the POSIX file system
interface specification where possible. The Client API also
supports extensions to allow the programmer to take advantage
of the specific features provided by HPSS (e.g., class-of-
service, storage/access hints passed at file creation and support
for parallel data transfers).

Teaff, p. 11

    FF7.  For the Storage System Manager (SSM), Teaff states that the

"operations performed by SSM are usually accomplished through standard

HPSS server APIs."  Teaff, p. 15.

    FF8.  Figure 7 shows an SSM with a "Client API" and a "Sammi

API."  Teaff, p. 16.

    FF9.  Appendix A is titled:  "Application Programming Interfaces

(APIs) to HPSS Components.

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915,161

FF10.  An excerpt of Appendix A is reproduced below:

**The HPSS Client Library provides the following routines grouped by related functionality.**

| API | Clients | Description |
| --- | --- | --- |
| hpss_Open | client | Optionally create and open an HPSS file |
| hpss_Close | client | Close a file |
| hpss_Umask | client | Set the file creation mask |
| hpss_Read | client | Read a contiguous section of an HPSS file, beginning at the current file offset into a client buffer |
| hpss_Write | client | Write data from a client buffer to a contiguous section of an HPSS file, beginning at the current file offset |
| hpss_Lseek | client | Reposition the read/write file offset |
| hpss_ReadList | client | Read data from an HPSS file, specifying lists for data sources and sinks |
| hpss_WriteList | client | Write data to an HPSS file, specifying lists for data sources and sinks |
| hpss_Stat | client | Get file status |
| hpss_Fstat | client | Get file status |
| hpss_Lstat | client | Get file status, returning status about a symbolic link if the named file is a symbolic link |

**The Name Server provides *APIs* for the following operations:**

| API | Clients | Description |
| --- | --- | --- |
| ns_Insert | client | Insert a bitfile object into a directory |
| ns_Delete | client | Delete a name space object |
| ns_Rename | client | Rename a name space object |
| ns_MkLink | client | Create a hard link to file |
| ns_MkSymLink | client | Make a symbolic link |
| ns_ReadLink | client | Read data associated with a symbolic link |
| ns_GetName | client | Get path name for the specified bitfile |
| ns_GetACL | client | Get an ACL for the specified name server object |
| ns_SetACL | client | Set an ACL for the specified name server object |

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

Legal Principles

"To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). When the limitations of a claim are not expressly described in the prior art, the PTO must show "sound basis for believing" that despite the failure of the prior art to describe them, the limitations are inherently there and "the products of the applicant and the prior art are the same." *In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990).

Discussion

The Examiner found that Teaff discloses a computer system comprising a "plurality of tailored distinct programming interfaces" as recited in claim 1. Answer 4 & 6-7. Patent Owner challenges this determination. App. Br. 5. Patent Owner contends that the Examiner failed "to provide sufficient evidence or technical/scientific reasoning to establish that Teaff's explicit disclosure would expressly, inherently, or be capable of having a plurality of tailored distinct interfaces as called for in claim 1." *Id.* at 6. Patent Owner argues:

> While the Patent Owner acknowledges Teaff's explicit disclosure in Appendix A lists multiple APIs for different clients with different [sic], the Patent Owner respectfully disagrees with the Examiner [sic] inference (Ans. 6) that those APIs satisfy the plurality of tailored distinct programming interfaces as called for in claim 1. At most, Teaff just describes a listing APIs within a library provided by the HPSS wherein the APIs are for some clients and for a particular functionality.

Reply Br. 3.

8

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

Patent Owner's arguments are not supported by sufficient evidence.
We have interpreted "plurality of tailored distinct programming interfaces"
to mean different programming interfaces that are designed ("tailored") with
different components or displays to provide access to the specific service
functions of the device.  Thus, the different programming interfaces recited
in claim 1 must perform different functions, e.g., a video API for accessing a
video device and a call API to provide a call service.  *See supra* at p. 4.
There is adequate evidence that the APIs described in Teaff meet this
limitation.

First, Teaff expressly identifies different APIs with different names.
For example, Teaff refers to a Client API and a SAMMI API, suggesting
that the APIs have different names because they perform different functions
as required by claim 1.  FF5 & FF6.

Second, Teaff also refers to multiple APIs (FF2-FF5), and states they
are available for different services (FF4) – again suggesting the APIs
perform a different function depending upon the service they are coupled
with.

Third, and foremost, Teaff has a long list of APIs, each with a
different name and a different description of what it does.  FF10.  For
example, Teaff describes a Name Server which is said to provide multiple
APIs for performing different operations:  "ns_Insert" for "Insert a bitfile
object into a directory" and "ns_Delete" for "Delete a name space object."
FF10.  Teaff also describes a HPSS Client Library with APIs with different
functionalities:  "hpss_Open" for "Optionally create and open an HPSS file"
and "hpss_Close" for "Close a file."  FF10.  The most logical explanation is

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

that the listed APIs are not the same API performing different functions, but
instead different APIs designed to perform the stated function.

Based on this evidence, the Examiner had a factual basis to find that
Teaff described the claimed "plurality of tailored distinct programming
interfaces" as that phrase would be properly construed by one of ordinary in
the art in the context of the '131 Patent specification. Patent Owner
contends that the Examiner's finding lacked sufficient evidence and
reasoning, but did not point to a specific defect. To the contrary, Teaff
expressly describes APIs that perform different functions and operations,
providing more than ample basis to find the disputed limitation in the prior
art. *Spada*, 911 F.2d at 708.

## ANTICIPATION BY ANDERT
### Findings of Fact

FF11.  Andert describes an input/output (IO) architecture for a
computer system.  Andert, col. 1, ll. 10-15.

FF12.  Andert describes IO service frameworks "for enabling an end
user (such as a human operator, an operating system function, an application
program, etc.) to perform these and other input/output services. In particular,
an end user can interact with these IO service frameworks to perform any
supported input/output operations."  Andert, col. 8, ll. 38-44.

FF13.

Some of the input/output services provided by the IO system of
a preferred embodiment include (a) Mass Storage IO services;
(b) Keyboard processing services; (c) Mouse/Pointing device
processing services; (d) SCSI services; (e) Serial

10

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

communications port services; (f) Expansion bus management
services; (g) Desktop bus IO services; and (h) Power
management services.

Andert, col. 8, ll. 31-37

FF14.  Figure 1 is reproduced below:



FIG. 1 illustrates input/output service frameworks along with some of
the services they provide and devices they access.

FF15.

The major IO service frameworks 102, along with some
of the specific services they provide and devices they access,
are shown in FIG. 1 (services and devices are shown as ovals).
These IO service frameworks 102 include (1) a mouse/pointing
device framework 102A, which provides services relating to a
mouse port, a desktop bus, and a serial mouse; (2) a desktop
bus framework 102B, which provides services relating to an

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

> access bus; (3) a serial port framework 102C, which provides
> services relating to the synchronous and asynchronous transfer
> of data via serial ports; (4) a power management framework
> 102D, which provides services relating to power sensing and
> screen management; (5) a parallel port framework 102E, which
> provides services relating to interaction with parallel-type
> devices (such as printers, portable disks, network interfaces,
> etc.); (6) an expansion bus management framework 102F,
> which provides services relating to the interaction with
> expansion buses; (7) a mass storage device framework, which
> provides services relating to mass storage devices; (8) a
> keyboard framework 102H, which provides services relating to
> key-board input devices; and (9) a SCSI bus framework 102I,
> which provides services relating to a SCSI bus and devices
> connected to this bus.

Col. 8, ll. 45-67

FF16. "Each framework may present its clients with an appropriate

and desirable interface instead of being confined to a "one-size-fits-all"

paradigm enforced across all frameworks." Col. 5, ll. 8-11.

FF17.

In the description of Device Access Managers, it is stated:

> Why have Device Access Managers 208 instead of classic
> drivers? The answer is in the expanded role that is required of
> the IO ensembles of a preferred embodiment. Each type of
> device has differences in access rules and protocol. Constricting
> this diversity into a "one-size-fits-all" interface abstraction is
> common practice among current OS architectures.  To honor
> the goal of enabling innovation, it must be recognized that any
> given set of these access protocols may be diverse. Thus, each
> category of device must be allowed to define its own abstract
> interface.

Col. 11, ll. 25-35.

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915,161

Discussion

The issue in this rejection is whether Andert describes a
computer system with "a first plurality of tailored distinct
programming interfaces available to access a plurality of separate sets
of computer system services." The Examiner found that Andert's
description of IO service frameworks met the limitation of
"programming interfaces" as recited in the claims. Answer 5; FF12.
The Examiner further found that the IO service frameworks were
described and shown by Andert to be "tailored" and "distinct"
programming interfaces, particularly as shown in Figure 1 and its
description. Answer 5; FF12-FF15.

Patent Owner challenges this determination, and provides a
declaration by David Wilson, Ph.D., to support this position. Dr. Wilson has
a Ph.D. in Applied Physics and stated that he has over 20 years of
experience in developing and teaching advanced computer technologies.
Wilson Decl., Exhibit 1.

The examiner bears the burden of presenting at least a prima facie
case of anticipation. *In re King*, 801 F.2d 1324, 1327 (Fed. Cir. 1986). Once
that burden is met, Appellant has the burden of providing arguments and
evidence to rebut it. *In re King*, 801 F.2d at 1327.

After considering the totality of the evidence, we conclude that the
Examiner put forth sufficient evidence to establish that Andert describes a
"plurality of tailored distinct programming interfaces," and that Patent
Owner did not provide sufficient evidence to rebut the Examiner's
determination. We explain our reasoning as follows.

13

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

Andert describes IO service frameworks for enabling an end user to perform input/output services.  FF12.  It is undisputed that the service frameworks meet the limitation of "programming interfaces."  Figure 1 of Andert shows distinct interfaces 102A-102I for each service.  FF14.  These are identified by different names, depending upon the input/output service.  For example, several of the services are named as follows:  "Mouse/Pointing Dev" (102A), "Serial" (102C), and "Keyboard" (102H).  FF14.  The distinct interfaces are described by Andert as having different functions.  FF15.  For example:

●  mouse/pointing device framework 102A, which provides services relating to a mouse port, a desktop bus, and a serial mouse;

●  desktop bus framework 102B, which provides services relating to an access bus; and

●  serial port framework 102C, which provides services relating to the synchronous and asynchronous transfer of data via serial ports.

Andert also states that the frameworks "may present [their] clients with an appropriate and desirable interface instead of being confined to a 'one-size-fits-all' paradigm enforced across all frameworks."  FF16.  Andert acknowledges that "a 'one-size-fits-all' interface abstraction is common practice among current OS architectures," but concluded that to enable innovation, "each category of device must be allowed to define its own abstract interface."  FF17.  Thus, Andert expressly teaches against using the same framework for each device.

14

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

Based on this evidence – (1) the different names of the service frameworks (FF14), (2) their different stated functions (FF15), and (3) the explicit disclosure that frameworks may be different rather than "one-size-fits-all" (FF16 & FF17) – the Examiner had reasonable basis to believe that differently named IO frameworks described in Andert perform different functions and thus are "tailored" as that term would be reasonably construed in light the '131 patent.  The burden thus properly shifted to Patent Owner to show that Andert's frameworks are not tailored.  *Spada*, 911 F.2d at 708.

Patent Owner contends there is no explicit description of tailored interfaces.  App. Br.  9; Reply Br. 6.  Patent Owner's expert, Dr. David Wilson, testified in his written declaration that Andert does not disclosed a tailored interface as recited in the claims.  Dr. Wilson stated:

> One of Andert,,s [sic] frameworks, the IO Service Framework, provides an interface to a client of a particular I/O service. Andert provides no description of the interface to this framework and therefore I conclude that Andert does not disclose that the interface to the IO Service Framework is tailored.

Wilson Decl. ¶ 12.

Dr. Wilson also testified:

> Beyond the fact that Andert does not disclose a tailored interface, I do not understand the IO Service Frameworks in Andert to be a tailored interface. As I stated in my previous declaration, filed as Exhibit A to Patent Owner,,s [sic] June 13, 2011 Response to Non-final Office Action, a person of ordinary skill in the art would be more familiar with the traditional

15

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161

> interfaces to I/O services, which were not tailored to the
> specific I/O device being accessed. Therefore, even when
> reading Andert in view of my knowledge of the state-of-the-art,
> a practice that I am told is inconsistent with an anticipation
> analysis, I do not understand the Andert reference to disclose a
> tailored interface.

Wilson Decl. ¶ 13.

Dr. Wilson's testimony is not persuasive.  To begin, Dr. Wilson did not address the Examiner's findings regarding the different descriptions of the programming interfaces by Andert at col. 8, ll. 45-67 (Answer 5; FF15), the disparagement by Andert of the one size fits all approach (FF16 & FF17), and the specific disclosure in Andert that "each category of device must be allowed to define its own abstract interface" (FF17).  The latter provides sound factual evidence that the programming interfaces of Andert are distinct and tailored.

Dr. Wilson states that traditional interfaces to I/O services were not tailored.  Wilson Decl. ¶ 13.  But whatever was conventional at the time the '131 Patent was filed is not dispositive in view of the strong teachings in Andert of programming interfaces with different names and different functions, and the criticism of the standard one-size-fits-all approach.

For the foregoing reasons, we affirm the rejection of claim 1.


Claim 3

Independent claim 3 is also directed to a computer system having "a first plurality of tailored distinct programming interfaces available to access a plurality of separate sets of I/O services."  The same reasons that claim 1 is prima facie anticipated over Andert therefore apply here.

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915,161

Patent Owner contends that Andert's disclosure of 1) a listing of I/O services (a) through (h), col. 8, lines 30-37, and 2) an expression stating that I/O service frameworks enable an end user to perform the aforementioned services do not establish by a preponderance of the evidence that Andert either explicitly or inherently discloses the claimed plurality of tailored distinct interfaces.  App. Br. 12.

We do not agree.  To the contrary, Andert expressly identifies the services with different names and different functions, and distinguishes the framework services from a one size fits all approach.  The most logical and reasonable conclusion is that Andert's interfaces are distinct and tailored.

We thus affirm the rejection of claim 3.

Claims 2-6

Claims 2-6 were not separately argued.  We thus affirm the rejection of these claims for the reasons given by the Examiner.

SUMMARY

We affirm the anticipation rejection of claim 1 over Teaff and the anticipation rejection of claims 1-6 over Andert.

TIME PERIOD FOR RESPONSE

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).

AFFIRMED

17

Appeal 2012-009761
Application 90/011,311
Patent No. 5,915.161


KMF

Patent Owner:
      APPLE INC./BSTZ
      BLAKELY SOKOLOFF TAYLOR & ZAFMAN LLP
      1279 Oakmead Parkway
      Sunnyvale, CA 94085-4040


Third Party Requester:
      Joseph J. Richetti
      BRYAN CAVE LLP
      1290 Avenue of the Americas
      New York, NY 10104