1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA          )  C-11-01846 LHK
6  CORPORATION,                      )
                                    )  SAN JOSE, CALIFORNIA
7               PLAINTIFF,           )
                                    )  APRIL 29, 2013
8          VS.                       )
                                    )  PAGES 1-90
9  SAMSUNG ELECTRONICS CO., LTD.,    )
   A KOREAN BUSINESS ENTITY;         )
10 SAMSUNG ELECTRONICS AMERICA,      )
   INC., A NEW YORK CORPORATION;     )
11 SAMSUNG TELECOMMUNICATIONS        )
   AMERICA, LLC, A DELAWARE          )
12 LIMITED LIABILITY COMPANY,        )
                                    )
13              DEFENDANTS.          )
   _____  )
14                                   )
                                    )
15

16         TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
          TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      A P P E A R A N C E S:

 3      FOR PLAINTIFF          MORRISON & FOERSTER
        APPLE:                 BY:  MICHAEL A. JACOBS
 4                                  NATHANIEL B. SABRI
                               425 MARKET STREET
 5                             SAN FRANCISCO, CALIFORNIA  94105

 6                             BY:  ERIK J. OLSON
                               755 PAGE MILL ROAD
 7                             PALO ALTO, CALIFORNIA  94304

 8
        FOR COUNTERCLAIMANT    WILMER, CUTLER, PICKERING,
 9      APPLE:                 HALE AND DORR
                               BY:  WILLIAM F. LEE
10                             60 STATE STREET
                               BOSTON, MASSACHUSETTS  02109
11
                               BY:  MARK D. SELWYN
12                                  LAUREN FLETCHER
                               950 PAGE MILL ROAD
13                             PALO ALTO, CALIFORNIA  94304

14

15      FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                               OLIVER & HEDGES
16                             BY:  WILLIAM C. PRICE
                                    MICHAEL T. ZELLER
17                                  SCOTT B. KIDMAN
                               865 SOUTH FIGUEROA STREET
18                             10TH FLOOR
                               LOS ANGELES, CALIFORNIA  90017
19
                               BY:  KATHLEEN M. SULLIVAN
20                             51 MADISON AVENUE, 22ND FLOOR
                               NEW YORK, NEW YORK  10022
21
                               BY:  VICTORIA F. MAROULIS
22                             555 TWIN DOLPHIN DRIVE
                               SUITE 560
23                             REDWOOD SHORES, CALIFORNIA  94065

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    APRIL 29K, 2013

 2                     P R O C E E D I N G S

 3        (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

 4            THE CLERK:  CALLING CASE NUMBER C-11-01846 LHK,

 5    APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY LIMITED,

 6    ET AL.

 7            MR. JACOBS:  MICHAEL JACOBS FROM MORRISON & FOERSTER.

 8    WITH ME ARE ERIC OLSON AND NATHAN SABRI FOR APPLE, YOUR HONOR.

 9            MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE,

10    MARK SELWYN, AND LAUREN FLETCHER FROM WILMER, HALE FROM APPLE.

11            THE COURT:  OKAY.  I'M SORRY.  I DIDN'T EVEN CATCH

12    THE PEOPLE WITH MR. JACOBS.

13        ERIC OLSON, YOU SAID, AND WHO ELSE?

14            MR. JACOBS:  NATHAN SABRI, YOUR HONOR, S-A-B-R-I.

15            THE COURT:  OKAY.  THANK YOU.

16        AND THEN MR. LEE, OKAY.

17            MR. LEE:  MARK SELWYN, YOUR HONOR.

18            THE COURT:  OKAY.

19            MR. LEE:  AND LAUREN FLETCHER, F-L-E-T-C-H-E-R.

20            MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  BILL PRICE

21    WITH QUINN, EMANUEL FOR SAMSUNG.

22        AND WITH ME AT COUNSEL TABLE ARE KATHLEEN SULLIVAN,

23    SCOTT KIDMAN, WHO PROBABLY WON'T BE SPEAKING, MICHAEL ZELLER,

24    AND VICTORIA MAROULIS.

25            THE COURT:  OKAY.  GOOD AFTERNOON.
```

```
 1                 MR. PRICE:  GOOD AFTERNOON.

 2                 THE COURT:  OKAY.  I HAVE A FEW QUESTIONS, BUT I'M

 3       OTHERWISE READY TO RULE ON EVERYTHING.

 4           LET ME JUST ASK THE FEW QUESTIONS FIRST.  SO WHEN IS THE

 5       PTO LIKELY TO ISSUE A RE-EXAM CERTIFICATE FOR THE '381 AND THE

 6       '915 PATENTS?

 7                 MR. JACOBS:  BY ISSUING A RE-EXAMINATION CERTIFICATE,

 8       YOUR HONOR, I THINK YOUR HONOR IS ASKING WHEN IS THIS GOING TO

 9       BE OVER.

10                 THE COURT:  AS FAR AS THE PTO.

11                 MR. JACOBS:  AS FAR AS THE PTO.

12                 THE COURT:  I DON'T CARE ABOUT THE APPEALS BOARD.  I

13       DON'T CARE ABOUT THE APPELLATE CIRCUIT.  WHEN IS THE PTO GOING

14       TO BE OVER?

15                 MR. JACOBS:  THE PTO'S ROLE -- LET ME CHECK AND MAKE

16       SURE I HAVE THE RIGHT ANSWER.  I BELIEVE THE ANSWER IS NOT TOO

17       FAR AWAY, BUT SUBJECT TO THOSE APPEALS, ET CETERA.

18                 THE COURT:  SO MARCH 29TH, 2013 IS WHEN THE PTO

19       ISSUED THE FINAL OFFICE ACTION IN THE '381?

20                 MR. JACOBS:  YES.

21                 THE COURT:  AND WHAT IS IT THAT YOU ARE FILING ON

22       MAY 29TH OF 2013?

23                 MR. JACOBS:  MAY I HAVE A MOMENT, YOUR HONOR?

24                 MS. MAROULIS:  I'M SORRY, YOUR HONOR.  IS THE

25       QUESTION WHAT IS BEING FILED ON MAY 29TH?
```

1          THE COURT:  YES, PLEASE.

2          MS. MAROULIS:  IT'S THE NOTICE OF APPEAL TO PTAB, AND

3     THAT'S THE NOTICE THAT APPLE WOULD BE FILING PRESUMABLY.

4        AND THEN THEREAFTER, THE PARTIES DIFFER IN THEIR ESTIMATE

5     OF WHEN THE PTAB WILL ISSUE A FINAL DECISION.

6          THE COURT:  RIGHT.

7          MS. MAROULIS:  SAMSUNG ESTIMATES JULY 2014.

8          THE COURT:  SO LET ME ASK A QUESTION.  IS THERE ANY

9     FURTHER ACTION ANTICIPATED BY THE PTO ITSELF?

10       I MEAN, SOME OF THE CLAIMS SURVIVE; IS THAT CORRECT?

11         MS. MAROULIS:  NO, YOUR HONOR.  APPLE GETS TO FILE A

12    NOTICE OF APPEAL AND THEN IT GOES TO PTAB, WHICH IS PART OF THE

13    PTO, BUT IT'S THE APPELLATE WING, AND THEY CAN HOLD A HEARING

14    AND HAVE BRIEFING.

15       BUT THE EXAMINER, IN OUR UNDERSTANDING, HIMSELF OR HERSELF

16    DOES NOT DO ANYTHING ADDITIONAL.

17         MR. JACOBS:  AND YOUR HONOR --

18         THE COURT:  I SEE.  SO THERE IS NO FINAL CERTIFICATE

19    THAT GETS ISSUED UNTIL THE APPEALS BOARD --

20         MS. MAROULIS:  WHICH CAN ISSUE THE CERTIFICATE OF

21    CANCELLATION CANCELLING THE PATENT.

22       SO RIGHT NOW WE HAVE A FINAL REJECTION, OR FINAL OFFICE

23    ACTION, BUT APPLE GETS TO APPEAL IT.

24         THE COURT:  RIGHT.

25         MS. MAROULIS:  AND ONCE THE DECISION IS CONFIRMED,

1   WHICH WE BELIEVE IT WOULD BE, THE CERTIFICATE OF CANCELLATION

2   WILL BE ISSUED.

3           MR. JACOBS:  AND WE DISAGREE WITH THAT, YOUR HONOR.

4   THAT IS NOT WHAT WE EXPECT TO FILE ON MAY 29TH.

5       WE RESPOND TO THE FINAL OFFICE ACTION ON MAY 29TH, AND AT

6   THAT POINT THE EXAMINER HAS ANOTHER OPPORTUNITY TO ADDRESS OUR

7   RESPONSE.

8           THE COURT:  BUT DIDN'T YOU ALREADY RESPOND TO THE

9   FIRST OFFICE ACTION REJECTING CLAIM 19?

10          MR. JACOBS:  OH, YES.

11          THE COURT:  OKAY.

12          MR. JACOBS:  BUT THERE'S ANOTHER OPPORTUNITY TO

13  RESPOND TO THE LATEST ART -- TO THE LATEST ARGUMENTS THE

14  EXAMINER HAS ADVANCED, AND THAT'S BEFORE IT GOES TO THE PTAB.

15      THIS IS THE STEP --

16          THE COURT:  DO YOU AGREE WITH THAT, OR NOT?

17          MS. MAROULIS:  IT IS NOT OUR UNDERSTANDING.

18      OUR UNDERSTANDING IS THE ONLY OTHER THING THAT CAN HAPPEN

19  IS APPLE CAN ASK FOR AN EXTENSION TO FILE A NOTICE OF APPEAL.

20      BUT BASED ON OUR READING OF PTAB, THAT IS THE NEXT STEP.

21          MR. JACOBS:  THIS IS THE MISSING STEP IN SAMSUNG'S

22  ARTICULATION OF THE PROCESS, YOUR HONOR.  YOU CAN FIND THE

23  SPECIFIC REFERENCE TO THE NEXT STEP AT PAGE 1, LINE 37 OF OUR

24  RE-EXAMINATION BRIEF CITING C.F.R. 1.116.

25          THE COURT:  OKAY.  SO WHEN YOU -- IF YOUR RENDITION

1    OF THE PROCESS IS CORRECT, THEN WHEN WOULD YOU EXPECT TO HEAR

2    BACK FROM THE PTO EXAMINER?

3            MR. JACOBS:  I DON'T THINK WE HAVE A PARTICULAR

4    EXPECTATION ON THAT STEP.

5        IF THE EXAMINER DOES NOTHING, THEN BY OUR ACCOUNT -- IN

6    OTHER WORDS, IF THE EXAMINER SIMPLY MAINTAINS THE REJECTION,

7    THEN WE FILE A NOTICE OF APPEAL BY JUNE 29TH.

8        SO THAT'S IF THE EXAMINER DOES NOTHING IN RESPONSE TO OUR

9    RESPONSE.

10           THE COURT:  OKAY.  AND AS FAR AS THE EXAMINER, ARE

11   THEY REQUIRED TO DO ANYTHING OR IS LACK OF ACTION ASSUMED TO BE

12   A REJECTION OF YOUR CURRENT RESPONSE AND THEN YOU JUST FILE

13   YOUR APPEAL?

14           MR. JACOBS:  I'M SORRY, YOUR HONOR, I JUST DON'T KNOW

15   THE ANSWER TO THAT SPECIFIC ASPECT OF THE RE-EXAMINATION

16   PROCEDURE.

17           THE COURT:  OKAY.

18           MS. MAROULIS:  IT IS OUR UNDERSTANDING, YOUR HONOR,

19   THAT EVEN IF APPLE WERE TO RESPOND, YOU STILL NEED TO FILE A

20   NOTICE OF APPEAL, BUT THIS IS A VERY SPECIFIC PTO PROCEDURE.

21           THE COURT:  YOU MEAN THAT ON MAY 29TH, THEY CAN BOTH

22   FILE A RESPONSE TO THE FINAL OFFICE ACTION AND FILE THEIR

23   APPEAL?

24           MS. MAROULIS:  ONE OF MY COLLEAGUES JUST PASSED ME A

25   NOTE THAT EVEN IF THEY WERE TO RESPOND, THEY HAVE TO FILE A

```
 1        NOTICE OF APPEAL NO LATER THAN JUNE 29TH.

 2             THE COURT:  OH, I SEE.  OKAY.

 3        SO IT SOUNDS LIKE ONE WAY OR THE OTHER, WE'LL GET

 4   DEFINITIVE WORD AS TO THE EXAMINER'S RESPONSE AND WHETHER THIS

 5   IS GOING UP ON APPEAL OR WHETHER THE EXAMINER IS GOING TO TAKE

 6   MORE TIME TO HAVE BACK AND FORTH CORRESPONDENCE BY JUNE 29TH.

 7        DOES THAT SOUND CORRECT?  IT SOUNDS LIKE IT.

 8             MR. JACOBS:  I DON'T THINK SAMSUNG CAN PROMISE YOU

 9   THAT, YOUR HONOR.

10             MS. MAROULIS:  WELL, WE DON'T HAVE CONTROL OVER WHAT

11   THE PTO DOES.

12             THE COURT:  SURE.

13             MS. MAROULIS:  BUT WE DO KNOW THAT APPLE HAS TO FILE

14   A NOTICE TO PRESERVE THEIR APPELLATE RIGHTS, AND OUR ESTIMATION

15   OF WHEN THE FINAL DECISION WILL ISSUE IS BASED ON WHAT WE KNOW

16   ABOUT OTHER RE-EXAMS KEYED OFF FROM THAT NOTICE OF APPEAL.

17             THE COURT:  I SEE.

18             MS. MAROULIS:  THAT'S THE TIMELINE THAT WE'RE GOING

19   ON.

20             THE COURT:  I SEE.  AND AS FAR AS THE '915, THE FINAL

21   OFFICE ACTION IS EXPECTED NEXT MONTH?  WELL, POTENTIALLY IN A

22   COUPLE DAYS.

23             MS. MAROULIS:  WE'RE ESTIMATING IT TO BE IN MAY.  IT

24   HAS NOT ISSUED, YOUR HONOR, SO THIS IS A PROJECTION BASED ON,

25   AGAIN, OTHER RE-EXAMS.
```

```
1              THE COURT:  I SEE.

2              MR. JACOBS:  YOUR HONOR, IF I CAN REFER YOU TO THE --

3       THERE'S A HELPFUL CHART ATTACHED TO OUR PAPER AND IT EXPLAINS

4       THE PROCESS FLOW VISUALLY.

5              THE COURT:  UM-HUM.

6              MR. JACOBS:  THIS IS AT DOCKET 2309-1, PAGE 2 OF 3,

7       AND IF YOU LOOK DOWN AT THE BOTTOM, YOU CAN SEE THE STAGE

8       MARKED IN THE FLOW CHART AT WHICH WE CURRENTLY -- THE STAGE AT

9       WHICH WE CURRENTLY ARE.

10          '381 PATENT RE-EXAM, EXAMINER ISSUES WHAT THEY CALL A FINAL

11      REJECTION.

12          AND THEN PATENT OWNER PAPER AFTER FINAL REJECTION, THAT'S

13      THE PATENT -- THAT'S THE STEP WE'RE LOOKING AT NOW.  THAT'S THE

14      REFERENCE TO 1.116.

15             THE COURT:  RIGHT.

16             MR. JACOBS:  AND THEN EXAMINER CONSIDERS THE PAPER.

17             THE COURT:  UM-HUM.

18             MR. JACOBS:  THAT'S THE STEP THAT I THINK IS

19      INDETERMINATE IN TERMS OF ITS LENGTH.

20          AND THEN THERE'S AN ARROW DOWN TO EXAMINER REOPENS

21      PROSECUTION, NO, THEN THE PATENT OWNER FILES THE NOTICE OF

22      APPEAL.

23             THE COURT:  RIGHT.

24             MR. JACOBS:  YES, THEN WE GO BACK THROUGH THE LOOP.

25             THE COURT:  OKAY.  ALL RIGHT.
```

1        WELL, WHY DON'T I GO AHEAD -- I WOULD LIKE TO RULE ON

2   THE -- ON THE STAY PENDING RE-EXAM NOW, AND WHAT I'M GOING TO

3   DO TODAY, TO TRY TO MOVE THIS CASE MORE QUICKLY, IS I'M GOING

4   TO GIVE YOU ALL OF MY RULINGS ORALLY, AS WELL AS MY REASONS,

5   AND PLEASE JUST REQUEST A COPY OF THE TRANSCRIPT OF TODAY'S

6   HEARING FROM MS. SHORTRIDGE AND THAT'LL BE THE ORDER.

7        I WILL ISSUE A CASE MANAGEMENT ORDER THAT JUST SAYS "FOR

8   THE REASONS STATED ON THE RECORD, THE FOLLOWING MOTIONS WERE

9   GRANTED OR DENIED IN PART OR IN WHOLE."  OKAY?

10             MR. JACOBS:  THANK YOU, YOUR HONOR.

11             THE COURT:  SO THIS IS REGARDING THE STAY PENDING

12   RE-EXAM.

13        A STAY FOR PURPOSES OF RE-EXAM -- AND RE-EXAMINATION IS

14   WITHIN THE DISTRICT COURT'S DISCRETION.  THE COURT IS NOT

15   REQUIRED TO STAY JUDICIAL RESOLUTION IN LIGHT OF

16   RE-EXAMINATIONS.  SEE VISKASE, V-I-S-K-A-S-E, CORP. VERSUS

17   AMERICA NATIONAL CAN COMPANY, 269 F.3D 1316, FEDERAL CIRCUIT

18   2001.

19        IN DETERMINING WHETHER TO STAY A CASE PENDING

20   RE-EXAMINATION, THE COURT CONSIDERS FACTORS SUCH AS:  NUMBER

21   ONE, THE STAGE OF THE CASE; TWO, WHETHER A STAY WILL SIMPLIFY

22   THE COURT PROCEEDINGS; AND THREE, WHETHER A STAY WOULD UNDULY

23   PREJUDICE OR PRESENT A CLEAR TACTICAL DISADVANTAGE TO THE

24   NON-MOVING PARTY.  TELEMAC CORP. VERSUS TELEDIGITAL,

25   INCORPORATED, 450 F.SUPP.2D 1107, NORTHERN DISTRICT OF

1    CALIFORNIA, 2006.

2         SO AT THIS TIME, BECAUSE THE QUESTION OF WHETHER THE

3    RE-EXAMINATION COULD BE REOPENED IS STILL UNRESOLVED, THE COURT

4    MAKES THE FOLLOWING FINDINGS:  THAT THE STAGE OF THE CASE

5    FAVORS APPLE SINCE WE ARE POST-TRIAL AND POST-POST-TRIAL

6    MOTIONS AND POST-VERDICT.

7         THE SECOND FACTOR, WHETHER A STAY WOULD SIMPLIFY THE COURT

8    PROCEEDINGS, FAVORS SAMSUNG BECAUSE IT CERTAINLY WOULD SIMPLIFY

9    THE PROCEEDINGS TO HAVE THE '381 OR THE '915 PATENT NOT BE

10   RETRIED OR -- IT STILL -- IT WOULD CERTAINLY SIMPLIFY THE

11   PROCEEDINGS.

12        NUMBER THREE, RIGHT NOW, WHILE THE QUESTION IS STILL OPEN

13   BECAUSE AS FAR AS THE '915 PATENT WE DON'T YET HAVE A FINAL

14   OFFICE ACTION, SO WE DON'T KNOW HOW THE PTO EXAMINER IS GOING

15   TO ULTIMATELY RESOLVE ANY INVALIDITY CHALLENGES, AND RIGHT NOW

16   WHILE THE '381 STILL HAS A POTENTIAL OF HAVING THE

17   RE-EXAMINATION REOPENED, THE COURT BELIEVES THAT THE THIRD

18   FACTOR, WHETHER A STAY WOULD UNDULY PREJUDICE OR PRESENT A

19   CLEAR TACTICAL DISADVANTAGE TO THE NON-MOVING PARTY, THAT THAT

20   FAVORS APPLE AT THIS TIME BECAUSE THEY DO HAVE A JURY VERDICT

21   OF DAMAGES ON THESE PATENTS AND FURTHER DELAYING ACTUAL RELIEF

22   WOULD BE UNDULY PREJUDICIAL AND PRESENT A CLEAR TACTICAL

23   DISADVANTAGE.

24        NOW, HAVING SAID THAT, IF THE EXAMINER DECIDES NOT TO

25   REOPEN THE CASE AND APPLE IS FORCED TO FILE A NOTICE OF APPEAL,

1    THEN I THINK THAT THAT THIRD FACTOR MAY THEN SWING INTO

2    SAMSUNG'S FAVOR, BECAUSE IF THIS IS AN INVALID PATENT, THEN

3    CERTAINLY IT WOULD BE MORE PREJUDICIAL AND MORE OF A TACTICAL

4    DISADVANTAGE TO SAMSUNG TO HAVE TO DO A SECOND TRIAL AND TO

5    HAVE TO DO, YOU KNOW, FURTHER LITIGATION ON I.P. THAT MAY

6    ULTIMATELY NOT BE VALID.

7        SO WHAT I'M GOING TO DO IS FOR NOW I AM DENYING THE STAY

8    REQUEST.

9        HOWEVER, I WOULD ASK THAT YOU KEEP THE COURT INFORMED OF

10   ANY NEW DEVELOPMENTS WITH THE PTO, BECAUSE IF THE EXAMINER DOES

11   NOT REOPEN THE PROSECUTION AND APPLE IS FORCED TO FILE A NOTICE

12   OF APPEAL, THEN THE COURT WILL LIKELY STAY ANY PROCEEDINGS AS

13   TO THE '381.  OKAY?

14       AND THAT WILL NOT BE ANY -- IN ANY RETRIAL.  OKAY?

15       SO THAT'S MY RULING ON THE RE-EXAMS.

16           MR. JACOBS:  THANK YOU, YOUR HONOR.

17           MS. MAROULIS:  YOUR HONOR, MAY WE BE HEARD ON THE

18   FIRST FACTOR OR THIS IS THE FINAL RULING?

19           THE COURT:  I'M SORRY, THAT'S THE FINAL RULING.

20           MS. MAROULIS:  OKAY.  THANK YOU.

21           THE COURT:  BUT, MS. MAROULIS, YOU LET ME KNOW IF

22   THERE'S NO --

23           MS. MAROULIS:  YES, YOUR HONOR, ABSOLUTELY.  WE WILL

24   BE FILING SOMETHING IN MAY AND IN JUNE TO APPRISE THE COURT OF

25   THE PROCESS OF THE RE-EXAMINATION.

1          THE COURT:  THAT'S FINE.

2          MS. MAROULIS:  DO WE NEED TO REFILE THE MOTION OR

3    SIMPLY APPRISE THE COURT VIA ATTACHING PTO NOTICES?

4          THE COURT:  WHAT I WOULD --

5          MR. JACOBS:  WE WOULD LIKE AN OPPORTUNITY AT THAT

6    STAGE TO BRIEF WHAT HAPPENS NEXT, YOUR HONOR.

7          THE COURT:  WELL, I WOULD ONLY GIVE YOU THREE PAGES

8    BECAUSE THIS HAS BEEN LITIGATED AT LEAST TWO -- TWICE NOW.  WE

9    DID PREVIOUSLY HAVE A MOTION TO STAY.

10       SO, AT MOST, IF THE EXAMINER REJECTS A REQUEST TO REOPEN

11   THE PROSECUTION, THEN SAMSUNG WILL HAVE THREE PAGES TO BRIEF A

12   REQUEST FOR A STAY AND APPLE WILL HAVE THREE PAGES TO RESPOND.

13         MR. JACOBS:  THANK YOU, YOUR HONOR.

14         MS. MAROULIS:  THANK YOU, YOUR HONOR.

15         THE COURT:  I DON'T THINK A STAY -- A REPLY WILL BE

16   NECESSARY, BUT IF I CHANGE MY MIND, I'LL LET YOU KNOW.

17       BUT I THINK AT THIS POINT WE'VE BEEN THROUGH THIS SO MANY

18   TIMES, I'M NOT GOING TO REQUIRE AND WASTE A JURY'S TIME OR THIS

19   COURT'S TIME ON A PATENT THAT MIGHT BE INVALIDATED.

20         MS. MAROULIS:  THANK YOU, YOUR HONOR.

21         THE COURT:  ALL RIGHT.  SO THAT'S THAT ISSUE.

22       LET'S -- WELL, THIS ONE IS AN EASY ONE.

23       I WAS VERY SAD THAT BOTH SIDES AGREE THAT THE MARCH 1 ORDER

24   IS NOT RIPE FOR APPEAL AND ULTIMATELY THE FEDERAL CIRCUIT MAY,

25   IN ITS DISCRETION, REJECT THE COURT'S REQUEST FOR AN APPEAL

1        ANYWAY, SO AT THIS TIME THE COURT IS NOT GOING TO SEEK

2   APPELLATE REVIEW OF THAT ORDER.  OKAY?

3        BOTH SIDES ARE IN AGREEMENT THAT THAT ORDER IS NOT A FINAL

4   DISPOSITIVE RULING THAT ENDS LITIGATION ON THE MERITS, NOR IS

5   IT AN APPEALABLE, COLLATERAL ORDER.

6        SO --

7             MS. SULLIVAN:  YOUR HONOR, MAY I BE HEARD?

8             THE COURT:  YES, GO AHEAD.

9             MS. SULLIVAN:  YOUR HONOR, WE DON'T -- WE AGREE WITH

10  APPLE ON THE POINTS YOU'VE JUST MENTIONED, THAT IT'S NOT A

11  FINAL APPEALABLE ORDER; IT'S NOT A COLLATERAL ORDER SUBJECT TO

12  INTERLOCUTORY APPEAL; IT'S NOT AN INJUNCTION RELATED ORDER

13  SUBJECT TO INTERLOCUTORY APPEAL; AND IT'S NOT SUITABLE FOR THE

14  1292(B) CERTIFICATION AS AN INTERLOCUTORY APPEAL INSOFAR AS YOU

15  ORDERED A NEW TRIAL FOR INCORRECT NOTICE DATES BECAUSE THERE

16  YOU WERE, ABSOLUTELY CORRECTLY, RULING UNDER WELL-ESTABLISHED

17  LAW CONCERNING NOTICE DATES.  SO IT'S NOT A 1292(B) ELIGIBLE

18  CASE FOR CERTIFICATION AS A WHOLE.

19       BUT APPLE AND SAMSUNG DO NOT AGREE THAT IT'S NOT APPEALABLE

20  AT ALL, AND SO, YOUR HONOR, WE DO -- SAMSUNG HAS SUBMITTED TO

21  YOU A MOTION TO ENTER A PARTIAL FINAL JUDGMENT UNDER RULE

22  54(B).

23       WE THINK THAT YOU PLAINLY HAVE DISCRETION TO ENTER THE

24  FINAL JUDGMENT UNDER 54(B), AND THAT YOU WOULD PLAINLY BE

25  CORRECT, AS A LEGAL MATTER, IN DEEMING THE 14 PRODUCTS ON WHICH

1    APPLE HAS RECEIVED FINAL JUDGMENT IN ITS FAVOR, AND ALL OF

2    SAMSUNG'S AFFIRMATIVE CLAIMS, FINAL FOR PURPOSES OF THE 54(B).

3         THAT WOULD ENABLE SAMSUNG TO TAKE AN APPEAL ON THE 14

4    PRODUCTS AS TO WHICH JUDGMENT IS FINAL.

5         AND WE SUBMIT THAT, FURTHERMORE, THAT WOULD GREATLY

6    SIMPLIFY THE CASE BECAUSE AN APPEAL NOW TO THE FEDERAL CIRCUIT

7    ON THE 14 FINISHED PRODUCTS WOULD GREATLY AFFECT THE SCOPE AND

8    THE RELEVANT LEGAL FRAMEWORK FOR THE NEW TRIAL ON THE OTHER 14

9    PRODUCTS.

10        SO WHILE WE AGREE THAT THE ORDER IS NOT APPEALABLE IN

11   WHOLE, WE STRENUOUSLY ARGUE THAT IT IS APPEALABLE INSOFAR AS

12   YOU COULD ENTER A PARTIAL 54(B) FINAL JUDGMENT NOW AND THAT

13   WE -- WE REALLY TOOK VERY SERIOUSLY, YOUR HONOR, THE

14   ADMONITION, THE REQUEST IN YOUR MARCH 1 --

15             THE COURT:  THE BEGGING.

16             MS. SULLIVAN:  YES.

17             THE COURT:  THE PLEADING.

18             MS. SULLIVAN:  THE PLEADING, YOUR HONOR, WE TOOK THAT

19   VERY SERIOUSLY AND WE TRIED TO LOOK AT ANY WAY IT COULD BE

20   APPEALABLE IN WHOLE.  WE DIDN'T COME TO THE CONCLUSION IT COULD

21   BE.

22        BUT I'M AFRAID I DISAGREE A GREAT DEAL WITH OUR COLLEAGUES

23   ON THE APPLE SIDE ABOUT THE 54(B), AND IF I COULD JUST MAKE A

24   FEW QUICK POINTS ABOUT WHY THE 54(B) IS SO APPROPRIATE?

25             THE COURT:  GO AHEAD, PLEASE.

1        MS. SULLIVAN:  FIRST, THE JUDGMENT IS FINAL AS TO THE

2    14 PRODUCTS ON WHICH THE JURY HAS DETERMINED AND YOU HAVE RULED

3    POST-TRIAL IN A FINAL WAY ON LIABILITY AND DAMAGES.

4        SO AS TO THOSE 14 PRODUCTS, THERE'S A FINAL JUDGMENT AS TO

5    VALIDITY ISSUES, INFRINGEMENT ISSUES, DAMAGES ISSUES, AND, IN

6    FACT, REMEDY ISSUES OF ALL KINDS.  YOU'RE FINAL AS TO 14

7    PRODUCTS.

8        AS TO THOSE PRODUCTS, APPLE SAYS, "OH, WELL, YOU CAN'T HAVE

9    A PARTIAL FINAL JUDGMENT BY A PRODUCT.  YOU HAVE TO HAVE A

10    PARTIAL FINAL JUDGMENT AS TO CLAIMS."

11        SO WE'RE DISAGREEING ABOUT THE MEANING OF THE WORD "CLAIM."

12        BUT APPLE HASN'T CITED A SINGLE CASE TO YOU HOLDING THAT

13    PRODUCT-BY-PRODUCT PATENT DETERMINATIONS BY A JURY DO NOT

14    CONSTITUTE CLAIMS FOR 54(B) PURPOSES.

15        AND TO THE CONTRARY.  WE'VE CITED TO YOU CASES THAT HOLD

16    THAT A CLAIM FOR 54(B) PURPOSE IS NOT THE CAUSE OF ACTION, AS

17    APPLE SAYS.  IT'S THE TRANSACTION OR OCCURRENCE.

18        WE CITED YOU THE GOTTESMAN CASE FROM THE SECOND CIRCUIT,

19    FOR EXAMPLE, AND MOST PARTICULARLY WE CITED TO YOU THE WRIGLEY

20    VERSUS CADBURY CASE WHICH COMES UP ON A 54(B) PARTIAL FINAL

21    JUDGMENT WHERE SOME PATENTS, ON A PATENT-BY-PATENT BASIS, ARE

22    DETERMINED TO BE FINAL AND OTHER PATENTS -- JUDGMENT AS TO

23    OTHER PATENTS ARE DETERMINED ON A PATENT-BY-PATENT BASIS TO BE

24    NON-FINAL, IT GOES UP TO THE FEDERAL CIRCUIT, AND THE FEDERAL

25    CIRCUIT TAKES JURISDICTION ON A PATENT-BY-PATENT BASIS, HOLDING

1    THAT THE 54(B) FINAL JUDGMENT ON A PATENT-BY-PATENT BASIS WAS

2    APPEALABLE.

3        NOW, YOUR HONOR, THINKING ABOUT WHAT YOU'LL -- YOUR

4    CALCULUS AS TO THINK ABOUT WHETHER YOU CAN ENTER THE 54(B), ON

5    THE ONE HAND APPLE HAS NO CASE AGAINST YOU DOING IT ON A

6    PATENT-BY-PATENT BASIS, AND ALL OF THEIR OTHER CASES -- WE'VE

7    EXPLAINED IN THE PAPERS WHY ALL OF THEIR OTHER CASES ARE

8    DISTINGUISHABLE.  THEY DID NOT INVOLVE FINAL DETERMINATIONS ON

9    A PATENT-BY-PATENT BASIS AS TO DAMAGES AND LIABILITY AS WE HAVE

10   HERE.

11       BUT WE ACTUALLY WENT, YOUR HONOR, AND DID A SPREADSHEET.

12   WE ACTUALLY WENT AND WE LOOKED AT ALL 122 CASES THAT WE COULD

13   FIND IN WHICH THE FEDERAL CIRCUIT EVER LOOKED AT A 54(B)

14   RULING, AND IT AFFIRMED IN APPROXIMATELY 84 PERCENT OF THE

15   CASES -- IT AFFIRMED OR DENIED DISMISSAL OF MOTIONS IN 84

16   PERCENT OF THE CASES.

17       AND IN THE FEW CASES IN WHICH THERE WAS EVER ANY DISMISSAL

18   OR REVERSAL FOR 54(B) REASONS, IT WAS ONLY TEN TIMES FOR LACK

19   OF FINALITY, AND ONLY FOUR TIMES FOR LACK OF SEPARATE ISSUES IN

20   THE TWO TRIALS.

21       SO IN OTHER WORDS, THE FEDERAL CIRCUIT IS EXTREMELY

22   RECEPTIVE TO DISTRICT COURT DECISIONS TO ENTER A 54(B) PARTIAL

23   FINAL JUDGMENT RULING.

24       THE OTHER CASES THAT THERE WAS A REVERSAL INVOLVED

25   TECHNICAL ISSUES, LIKE FAILURE TO STATE THE REASONS.

1      SO TO SUMMARIZE, YOUR HONOR, WE THINK THERE'S PLAINLY

2      FINALITY AS TO THE PATENTS ON WHICH THERE'S BEEN A FINAL

3      ADJUDICATION.

4          AND FRANKLY, YOUR HONOR, APPLE WANTED A VERDICT FORM THAT

5      DETERMINED THE FINAL DAMAGES AMOUNTS ON A PRODUCT-BY-PRODUCT

6      BASIS, SO ON A PRODUCT-BY-PRODUCT BASIS, YOU HAVE FINAL

7      DETERMINATIONS AS TO 14 PRODUCTS.

8          AND THAT -- THEY SHOULD BE HELD TO THAT DECISION.  THEY

9      CAN'T SAY, "OUR CAUSE OF ACTION WAS ON A PATENT BASIS.  OUR

10     DETERMINATION NOW ON DAMAGES IS ON A PRODUCT BASIS."

11         SO YOU HAVE A FINAL JUDGMENT AS TO 14 PRODUCTS.  IT'S FINAL

12     AS TO INFRINGEMENT.  IT'S FINAL AS TO VALIDITY.  IT'S FINAL AS

13     TO ALL REMEDIES, INCLUDING DAMAGES, AND YOU CAN CERTIFY THAT

14     AND WRIGLEY VS. CADBURY IS YOUR CASE.

15         AND I THINK I MISSPOKE AND SAID PATENT-BY-PATENT.  WHAT I

16     MEANT IN WRIGLEY WAS PRODUCT-BY-PRODUCT.

17         NOW, THE SECOND THING IS YOU HAVE TO DECIDE THAT THERE ARE

18     TRULY SEPARATE ISSUES BETWEEN THE FIRST TRIAL AND THE SECOND

19     TRIAL, AND THEY ARE FULLY SEPARATE.

20         THE NEW PRODUCTS WILL BE RETRIED ON -- AS A MATTER SEPARATE

21     FROM, AND THE DAMAGES AS TO THOSE PRODUCTS WILL BE TRIED AS A

22     MATTER COMPLETELY SEPARATE FROM THE TRIAL THAT IS NOW FINAL AS

23     TO THE 14 PRODUCTS ON WHICH YOU CAN CERTIFY -- CAN ISSUE A

24     54(B) JUDGMENT.

25         SO THIS IS JUST A CASE IN WHICH THE WAY TO GET TO THE

1    FEDERAL CIRCUIT IS TO ENTER THE 54(B) ON THE 14 PRODUCTS ON

2    WHICH EVERYTHING IS FINAL, INFRINGEMENT, LIABILITY, DAMAGES,

3    REMEDIES OF ALL KINDS, AND THEN WE RESPECTFULLY ALSO ASK YOU TO

4    ISSUE A STAY OF NEW TRIAL PENDING THE APPEAL CYCLE ON THAT

5    JUDGMENT.

6        NOW, YOUR HONOR, THE KEY POINTS ON THE STAY ARE, WILL IT

7    PRODUCE JUDICIAL ECONOMY?

8        WELL, FOR THE REASONS YOU'VE JUST MENTIONED IN YOUR

9    RE-EXAMINATION RULING, OF COURSE IT WILL PRODUCE JUDICIAL

10   ECONOMY.  IT WILL SIMPLIFY THE CASE FOR YOU TO KNOW, GOING INTO

11   ANY NEW TRIAL, WHAT THE FEDERAL CIRCUIT THINKS ABOUT AN ENTIRE

12   VARIETY OF ISSUES.

13       THE FEDERAL CIRCUIT IS GOING TO DETERMINE ISSUES ABOUT THE

14   DESIGN INSTRUCTIONS AND CLAIM CONSTRUCTION ON THE DESIGN

15   PATENTS, ON WHETHER CAUSATION IS AN ISSUE IN DESIGN DAMAGES.

16       IT WILL DETERMINE VALIDITY OF CERTAIN PATENTS UNLESS THE

17   PTO GETS THERE FIRST ON SOME OF THE PATENTS.

18       AND ALL OF THOSE ISSUES WILL AFFECT THE SCOPE OF THE NEW

19   TRIAL.

20       IF THERE'S AN INVALID PATENT, YOU'RE GOING TO HAVE TO SET

21   NEW PRODUCTS FOR A NEW TRIAL BECAUSE THERE MAY BE INTERTWINED

22   ISSUED ON THE PRODUCTS THAT INVOLVE THE NOW INVALIDATED PATENT.

23       SO WE THINK, RESPECTFULLY, IT WILL SIMPLIFY THE CASE AND

24   BRING ABOUT GREAT JUDICIAL ECONOMY IF THE CIRCUIT CAN TELL US

25   NOW WHAT IT THINKS ABOUT ALL OF THE ISSUES THAT WILL AFFECT THE

1    NEW TRIAL.

2         AND THEN IF WE EVER HAVE A THIRD TRIAL -- AND I DON'T EVEN

3    LIKE TO RAISE THAT SPECTER WITH YOU, YOUR HONOR -- BUT IF WE

4    EVER HAVE A THIRD TRIAL, IT WILL BE A LOT SIMPLIFIED BECAUSE IT

5    WILL ONLY BE ON THE REMAINING ISSUES.

6         NOW, THE CRUCIAL POINT THAT APPLE MISSES IN ITS PAPERS

7    ABOUT THIS JUDICIAL ECONOMY POINT IS THAT THEY IGNORE THE LAW

8    OF THE CASE.

9         BUT THE LAW OF THE CASE DOCTRINE IS THE KEY TO WHY

10   APPEALING TO THE CIRCUIT NOW ON THE 14 FINALIZED PRODUCTS IS

11   THE WAY TO SERVE JUDICIAL ECONOMY, AND THAT'S BECAUSE WE CAN'T

12   GO TO THE CIRCUIT AND TRY TO GET RELIEF ON THE 14 FINAL

13   PRODUCTS AND THEN COME BACK AND REARGUE THOSE ISSUES ON THE 14

14   PRODUCTS SUBJECT TO YOUR NEW TRIAL ORDER.

15        IF WE WIN IN THE CIRCUIT OR LOSE IN THE CIRCUIT, WE'RE

16   BOUND BY WHATEVER THE CIRCUIT SAYS ON THOSE ISSUES AND YOU

17   WOULD THEN APPLY THE CIRCUIT'S RULING TO THE NEW TRIAL AS THE

18   LAW OF THE CASE.

19        THAT WOULD INSTANTLY SIMPLIFY ANY SECOND TRIAL BECAUSE IT

20   WOULD TAKE OUT OF THE SECOND TRIAL ALL OF THE ISSUES THAT WE

21   MIGHT BE ABLE TO LITIGATE NOW TO THE CIRCUIT.

22        SO WE THINK JUDICIAL ECONOMY IS SERVED, THE WAY TO GET AN

23   EFFICIENT SECOND TRIAL WITHOUT A DO-OVER OF EVERYTHING IN A

24   THIRD TRIAL POTENTIALLY, IS TO GO TO THE CIRCUIT NOW.

25        NOW, THE LAST THING I'M GOING TO SAY IS THE PREJUDICE TO

1    APPLE --

2            THE COURT:  I'M GOING TO ASK YOU TO PLEASE WRAP UP

3    BECAUSE WE HAVE A TON OF ISSUES TO COVER TODAY.

4            MS. SULLIVAN:  I'M SORRY, YOUR HONOR.

5        THERE'S NO PREJUDICE TO APPLE BECAUSE WE'RE WILLING TO HAVE

6    PRE-JUDGMENT INTEREST INCLUDED IN THE 54(B) FINAL JUDGMENT.

7    YOU CAN PUT PRE-JUDGMENT INTEREST IN NOW SO THEY HAVE NO

8    MONETARY PREJUDICE.

9        AND, OF COURSE, WE HAVE TO BOND THE APPEAL.  WE HAVE TO

10   FILE A SUPERSEDEAS BOND TO TAKE THE APPEAL UP.  SO THERE'S NO

11   PREJUDICE AS TO THEM.

12       AS TO PREJUDICE BECAUSE THEY'RE DENIED AN INJUNCTION, WELL,

13   THEY'VE ALREADY GOT THAT ON APPEAL TO THE CIRCUIT.  IT'S HIGHLY

14   INEFFICIENT FOR THE CIRCUIT TO BE CONSIDERING THEIR INJUNCTION

15   APPEAL WITHOUT THE LIABILITY APPEAL UP BEFORE IT AT THE SAME

16   TIME, BECAUSE IF THERE'S NO LIABILITY, THERE'S CERTAINLY NO

17   GROUNDS FOR AN INJUNCTION.

18       SO YOUR HONOR, WE RESPECTFULLY REQUEST THAT YOU ENTER THE

19   54(B) ON THE 14 PRODUCTS THAT ARE FINISHED AND ALL OF SAMSUNG'S

20   AFFIRMATIVE CLAIMS AND ALL OF THE PRODUCTS ON WHICH THERE WERE

21   ZERO DAMAGES, WRAP UP EVERYTHING THAT'S FINAL NOW IN A 54(B),

22   LET US TAKE IT TO THE CIRCUIT AND SPARE YOU AN ENORMOUSLY

23   COMPLICATED SECOND TRIAL WHICH CAN BE STREAMLINED AND

24   SIMPLIFIED WITH NO PREJUDICE TO APPLE.

25           THANK YOU.

```
 1            MR. LEE:  YOUR HONOR, IF I MIGHT?

 2        MS. SULLIVAN COLLAPSED TWO DIFFERENT QUESTIONS.  THE FIRST

 3    QUESTION YOUR HONOR WAS ASKING ABOUT IS, IS THE MARCH 1 ORDER

 4    APPEALABLE IN ITS ENTIRETY?

 5        AND WE ALL AGREE THAT IT'S NOT, AND BOTH PARTIES TRIED TO

 6    FIND SOME BASIS TO RESPOND TO YOUR HONOR'S ADMONITION IN A

 7    FINAL WAY TO APPEAL IT, BUT WE ALL AGREE IT'S NOT.

 8        AND FOR THE SAME REASONS WE OFFERED THE SAME PROVISIONS OF

 9    1292, 1295, COLLATERAL ORDER, IT'S NOT APPEALABLE.

10        AND I DON'T THINK THERE'S MUCH MORE TO SAY ABOUT IT OTHER

11    THAN EVERYBODY TRIED AND IT'S NOT.

12        SO THAT THEN LEAVES THE 54(B) ISSUE, WHICH IS A COMPLETELY

13    SEPARATE ISSUE AS YOUR HONOR'S APRIL 2ND ORDER RECOGNIZES.

14        AND LET ME -- WITHOUT GOING THROUGH ALL OF THE ARGUMENTS

15    YOU MADE, YOUR HONOR, LET ME MAKE THESE POINTS.

16        THE FIRST THING IS MS. SULLIVAN CHARACTERIZED 54(B) AS

17    SOMETHING THAT'S DISCRETIONARY WITH YOUR HONOR.

18        IT IS NOT DISCRETIONARY.  IT'S JURISDICTIONAL.

19        AND THERE ARE TWO DIFFERENT PARTS.  THERE'S A PART THAT IS

20    DISCRETIONARY, AND THAT IS THE NO JUST REASON FOR DELAY.

21        THAT'S THE SECOND PART OF THE TEST, AND FOR SURE YOUR HONOR

22    COULD EXERCISE HER DISCRETION IN DETERMINING WHETHER THERE WAS

23    A JUST REASON FOR DELAY.

24        BUT THE JURISDICTIONAL PREDICATE IS A CLAIM, COUNTERCLAIM,

25    CROSS-CLAIM, OR THIRD PARTY CLAIM, AND WE SET OUT THIS
```

```
 1      PROVISION IN OUR BRIEF INITIALLY AND EXPRESSLY BECAUSE THE

 2      CLAIM IS NOT JUST SOMETHING THAT'S IN 54(B) WITHOUT SOME

 3      CONTEXT.  IT IS A CLAIM, COUNTERCLAIM, CROSS-CLAIM, OR THIRD

 4      PARTY CLAIM.

 5          NOW, SAMSUNG HAS SAID TO YOU THAT A CLAIM IS NOT A CAUSE OF

 6      ACTION.

 7          BUT THEY'VE ACTUALLY SAID PRECISELY THE OPPOSITE THING IN

 8      THE FRACTUS CASE THAT WE QUOTE FOR YOUR HONOR AT PAGE 4 OF OUR

 9      BRIEF.  THEY SAY, AND THEY SAID IN THE FRACTUS CASE, AND I

10      QUOTE, "A CLAIM MEANS A CAUSE OF ACTION."

11          AND THAT'S PRECISELY WHAT IT MEANS.  A CAUSE OF ACTION IS A

12      CLAIM, IT'S A COUNTERCLAIM, IT'S A CROSS-CLAIM, OR IT'S A THIRD

13      PARTY CLAIM.

14          THE CLAIMS HERE WERE DEFINED BY THE PLEADINGS.  AND THE

15      BEST CASE, THE GOVERNING CASE, IS THE SEARS DECISION IN THE

16      SUPREME COURT THAT SAYS CLAIMS ARE DEFINED AS PLEADED.

17          AND WHAT WAS PLEADED HERE, YOUR HONOR, IS CLAIMS

18      PATENT-BY-PATENT.

19          WHAT WAS PROVEN AT TRIAL WERE CLAIMS PATENT-BY-PATENT.

20          DAMAGES WERE PROVEN PATENT-BY-PATENT, AND MS. SULLIVAN IS

21      CORRECT --

22          PARDON?

23              MS. SULLIVAN:  I'M SORRY, MR. LEE.

24      PRODUCT-BY-PRODUCT.

25              MR. LEE:  WELL, NO.  ACTUALLY, TO BE PRECISE, IT WAS
```

1      PATENT-BY-PATENT, AND THEN IN EACH PATENT IT WAS

2      PRODUCT-BY-PRODUCT.

3          AND YOUR HONOR WILL RECALL, THAT WASN'T TO TURN THIS CASE

4      FROM A CASE ABOUT PATENTS INTO A CASE ABOUT PRODUCTS.

5          IT WAS TO ENSURE THAT, AS YOU WENT THROUGH THE VARIOUS

6      DIFFERENT TYPES OF INTELLECTUAL PROPERTY THAT WERE INFRINGED,

7      THERE WOULDN'T BE A DUPLICATION OF DAMAGES.

8          AND THAT'S WHY THE VERDICT FORM THAT WE DISCUSSED WITH YOUR

9      HONOR LAST WEEK, THE VERDICT FORM THAT WAS SUBMITTED, WENT

10     PATENT-BY-PATENT AND PRODUCT-BY-PRODUCT TO AVOID DUPLICATION,

11     NOT TO SOMEHOW TRANSFORM OUR CLAIMS, WHICH WERE

12     PATENT-BY-PATENT, LITIGATED PATENT-BY-PATENT, TRIED

13     PATENT-BY-PRODUCT, INTO PRODUCT-BY-PRODUCT CLAIMS.

14         SO THE CLAIMS ARE THE CLAIMS UNDER THE PATENT, AND THE

15     SUPREME COURT CASE IN SEARS SAYS THAT'S WHAT GOVERNS.

16         THE ONLY CASES THAT SAMSUNG HAS GIVEN YOU ARE A CASE IN THE

17     NORTHERN DISTRICT OF ILLINOIS WHICH WAS NOT -- THE 54(B) ISSUE

18     WAS NOT APPEALED TO THE FEDERAL CIRCUIT AND WHERE THE PARTIES

19     APPARENTLY AGREED, I WOULD SUGGEST INCORRECTLY, THAT 54(B)

20     APPLIED, A CASE THAT WE ACTUALLY HANDLED CALLED PELLEGRINI

21     WHERE THERE WAS A 271(F) AND 271(A) DIFFERENT INFRINGEMENT

22     CLAIMS, DIFFERENT PROOF, DIFFERENT STANDARDS, DIFFERENT

23     EVIDENCE, AND ONE WAS SEPARATELY 54(B).

24         AND THEN THE GOTTESMAN CASE, AND THAT ACTUALLY IS THE BEST

25     EXAMPLE.  THERE WERE 14 CLAIMS, CAUSES OF ACTION STATED IN THE

1    COMPLAINT, AND TWO OF THE CLAIMS, THE CAUSES OF ACTION, WERE

2    SEPARATELY MADE THE SUBJECT OF THE 54(B).

3        SO I THINK THE CORE ISSUE, YOUR HONOR, GOES TO THE FIRST

4    PART OF 54(B).  IT'S, WHAT IS THE CLAIM?  IF WE TAKE SAMSUNG AT

5    ITS WORD, IT'S A CAUSE OF ACTION.  THE CAUSES OF ACTION HERE

6    WERE PATENT-BY-PATENT AS PLEADED AND SEARS SAYS THAT'S WHAT

7    GOVERNS.

8        NOW, BRIEFLY, YOUR HONOR, BECAUSE WE HAVE A LOT ELSE TO GET

9    TO, THE QUESTION OF NO JUST CAUSE FOR DELAY AND THE STAY

10   ACTUALLY COLLAPSE, AND HERE'S THE PREJUDICE IN A NUTSHELL FOR A

11   LOT OF WHAT'S GOING ON BEFORE YOUR HONOR TODAY.

12       THIS CASE HAS BEEN PENDING FOR A COUPLE YEARS.  YOUR HONOR

13   HAS RULED ON MORE MOTIONS, MORE PRELIMINARY INJUNCTIONS, MORE

14   POST-PERMANENT INJUNCTIONS THAN YOU EVER WANT TO SEE.

15       SAMSUNG IS TRYING TO DELAY THE DATE OF FINAL RESOLUTION.

16   WE BRING THIS -- THEY -- IF YOUR HONOR WERE TO ENTER A 54(B)

17   JUDGMENT, WHAT IS MOST LIKELY TO HAPPEN IS WE WILL MOVE TO

18   DISMISS THE APPEAL ON JURISDICTIONAL GROUNDS BECAUSE WE HAVE

19   TO.  THERE'S NO JURISDICTION.

20       IF THE APPEAL IS DISMISSED, IT'LL BE RULED ON END OF THE

21   SUMMER OR SO.  WE'LL BE BACK BEFORE YOUR HONOR.

22       A SECOND POSSIBILITY WHICH OFTEN OCCURS, BECAUSE THE PANELS

23   AT THE FEDERAL CIRCUIT AREN'T SET UNTIL THE BRIEFS ARE FILED,

24   IS THAT A HEARING ON THE 54(B) JURISDICTIONAL ISSUE WILL BE

25   CONSOLIDATED WITH THE MERITS OF THE APPEAL.

1         SO WE'LL HAVE A HEARING ON WHETHER THEY HAVE JURISDICTION A

2     YEAR FROM NOW, AND IF IT'S DISMISSED, AS WE THINK IT SHOULD BE

3     BECAUSE THERE'S NO CLAIM, IT WILL BE DISMISSED A YEAR FROM NOW,

4     IT WILL COME BACK TO YOUR HONOR, WE'LL BE RIGHT BACK WHERE WE

5     ARE, EXCEPT THE CASE WILL BE NEARLY FOUR YEARS OLD WITHOUT

6     APPLE HAVING A FINAL RESOLUTION.

7         THE PREJUDICE TO APPLE IS SIMPLY THIS:  WE BROUGHT A CASE

8     TWO YEARS AGO.  WE HAVE A JURY VERDICT THAT A VARIETY OF

9     INTELLECTUAL PROPERTY HAS BEEN INFRINGED, AT LEAST SUBJECTIVELY

10    WILLFULLY, AND WE WANT TO GET A FINAL APPEALABLE VERDICT ON ALL

11    OF THE ISSUES THAT SHOULD BE DECIDED AND WE WANT IT AS PROMPTLY

12    AS WE CAN.

13        ANYTHING THAT'S DONE TO DELAY THAT IS THE PREJUDICE TO

14    APPLE.

15         THE COURT:  ALL RIGHT.  I'M READY TO RULE, AND I

16    ACTUALLY HAD DENIED A REQUEST FOR A HEARING ON THIS MOTION, SO

17    I'VE BEEN, I THINK, GENEROUS ENOUGH IN LETTING YOU ALL MAKE

18    YOUR POINTS.

19         MS. SULLIVAN:  THANK YOU, YOUR HONOR.

20         THE COURT:  WITH REGARD TO THE DAMAGES ORDER OF

21    MARCH 1, MY RULING IS STILL THAT IT'S NOT RIPE FOR APPEAL.

22    IT'S NOT A FINAL DISPOSITIVE RULING THAT ENDS LITIGATION ON THE

23    MERITS PURSUANT TO 28 U.S.C. SECTION 1295(A)(1), NOR IS IT AN

24    APPEALABLE COLLATERAL ORDER PURSUANT TO 28 U.S.C. SECTION

25    1292(E)(1).

1    MOREOVER, EVEN IF I WERE TO TRY TO HAVE THE FEDERAL CIRCUIT

2    REVIEW IT, THEY COULD, IN THEIR DISCRETION, REJECT THE REQUEST

3    FOR AN APPEAL.

4    SO AT THIS TIME THE COURT IS NOT GOING TO URGE THE PARTIES

5    TO SEEK AN APPEAL OF THE MARCH 1 DAMAGES ORDER IN ITS ENTIRETY.

6    LET'S GO -- SINCE WE HAVE ALREADY HAD QUITE A BIT OF

7    DISCUSSION ON THE RULE 54(B) REQUEST FOR PARTIAL JUDGMENT AND A

8    STAY OF THE REST OF THE CASE, YOU KNOW, AS HAS ALREADY BEEN

9    STATED, A RULE 54(B) JUDGMENT IS PROPER WHEN A COURT HAS

10   REACHED AN ULTIMATE DISPOSITION OF SOME, BUT NOT ALL, CLAIMS IN

11   THE CASE AND THERE IS NO JUST REASON FOR DELAY.

12   A JUDGMENT IS FINAL FOR RULE 54(B) PURPOSES IF IT IS AN

13   ULTIMATE DISPOSITION OF AN INDIVIDUAL CLAIM ENTERED IN THE

14   COURSE OF AN ACTION INVOLVING MULTIPLE CLAIMS.  CURTIS WRIGHT

15   CORPORATION VERSUS GENERAL ELECTRIC COMPANY 446 U.S. 1, 1980,

16   PIN CITE PAGE 7.

17   HERE THE COURT FINDS THAT IT HAS NOT FINALLY RESOLVED

18   APPLE'S CLAIMS FOR RELIEF AS THE NEW TRIAL ON DAMAGES WILL

19   IMPLICATE PRODUCTS INVOLVING INFRINGEMENT OF THE '381 PATENT,

20   THE '915 PATENT, THE '163 PATENT, THE DESIGN PATENT NUMBERS

21   '305 AND '677.

22   THEREFORE, THE COURT HAS NOT FINALLY RESOLVED ALL ISSUES

23   RELATING TO BOTH LIABILITY AND REMEDIES FOR APPLE'S CLAIMS

24   RELATED TO THESE PRODUCTS AND THESE PATENTS.

25   MOREOVER, THE FEDERAL CIRCUIT HAS DISCRETION IN CHOOSING

1    WHETHER TO HEAR THIS PARTIAL APPEAL OR NOT.

2        THUS, SAMSUNG'S PROPOSAL DOES NOT JUSTIFY THE NO JUST

3    REASON FOR DELAY STANDARD AS ENTERING JUDGMENT NOW MAY JUST

4    LEAD TO FURTHER DELAY.

5        ACCORDINGLY, THE COURT DENIES SAMSUNG'S REQUEST FOR PARTIAL

6    JUDGMENT PURSUANT TO RULE 54(B) AND FOR A PARTIAL STAY OF THE

7    REST OF THE CASE.

8        NOW, LET'S GO TO APPLE'S RECONSIDERATION.  WHAT APPEARS TO

9    BE THE CASE IS THAT THE PARTIES STIPULATED TO A MAY 15TH, 2011

10   START DATE, OR FIRST SALE DATE FOR THE INFUSE 4G, BUT

11   MR. MUSIKA'S EXPERT REPORT THAT WENT TO THE JURY -- THE

12   STIPULATION OF THE PARTIES DID NOT GO TO THE JURY -- INCLUDED

13   SALES IN APRIL AND THUS PRECEDED THE MAY 15TH, 2011 DATE TO

14   WHICH THE PARTIES STIPULATED.

15       IT ALSO APPEARS THAT, AT A MINIMUM, OTHER EXHIBITS THAT

16   ALSO WERE SENT IN TO THE JURY DID INCLUDE DATES PRIOR TO THE

17   DATE TO WHICH THE PARTIES STIPULATED, AND BY THAT -- I HAVE

18   THEM SOMEWHERE IN MY PILES HERE -- BUT I'M REFERRING TO BOTH

19   THE PLAINTIFF EXHIBIT AS WELL AS A DEFENSE EXHIBIT THAT DID GO

20   TO THE JURY --

21           MS. SULLIVAN:  YOUR HONOR, WOULD IT HELP TO REFER TO

22   JX 1500 AND PX 180?

23           THE COURT:  YES, YES.  THANK YOU, THAT WOULD HELP.

24       -- AS WELL AS THE -- LET ME SEE HERE -- AS WELL AS THE PAGE

25   FROM TERRY MUSIKA'S REPORT WHICH ALSO INCLUDES APRIL 2011

1    SALES.

2        SO -- NOW, APPLE CONTENDS THAT THE FIRST SALE DATE FOR THE

3    INFUSE 4G WAS APRIL 30TH OF 2011, SO WHY WOULD YOU EVEN SUBMIT

4    THAT INFORMATION?  ISN'T THAT IN VIOLATION OF YOUR OWN

5    STIPULATION THAT YOU SHOULDN'T SEEK DAMAGES BEFORE THE FIRST

6    SALE DATE TO WHICH YOU'RE STIPULATING WAS MAY 15TH?

7            MR. JACOBS:  I THINK THE PURPOSE OF SUBMITTING THAT,

8    YOUR HONOR, WAS TO -- WAS A KIND OF EVEN-IF SORT OF ARGUMENT.

9        SO WE HAVE THE EXPERT REPORTS AND THEN WE HAVE THE JOINT

10   PRETRIAL STIPULATION, AND THE JPTS --

11           THE COURT:  I DON'T REALLY BUY THAT.  YOU'RE SAYING

12   IT'S BINDING POST-TRIAL TO SAMSUNG, BUT IT WASN'T BINDING TO

13   YOU DURING THE TRIAL?

14       YOU'RE SAYING THIS STIPULATION SHOULD BE ENFORCED AGAINST

15   SAMSUNG NOW, BUT YOU SUBMITTED EVIDENCE CONTRARY TO THAT TO THE

16   JURY.

17       WHY DID YOU DO THAT IF YOU REALLY FELT THAT THIS WAS AN

18   ENFORCEABLE STIPULATION AGAINST BOTH PARTIES?  IT SEEMS VERY

19   OPPORTUNISTIC TO ME.

20           MR. JACOBS:  I DON'T THINK IT WAS -- IT CERTAINLY

21   WASN'T INTENDED TO BE OPPORTUNISTIC.

22       SAMSUNG SUBMITTED SALES DATA -- YOU MAY RECALL THE SEQUENCE

23   OF THE DISCOVERY MISCONDUCT ON SAMSUNG'S DAMAGES INFORMATION.

24           THE COURT:  NO, THAT'S NOT THE QUESTION.  WHY DID YOU

25   SUBMIT PRE-MAY 15TH, 2011 DAMAGES NUMBERS FOR THE INFUSE 4G IF

1    YOU STIPULATED THAT THE FIRST DATE OF SALE WAS MAY 15TH?  WHY

2    DID YOU SUBMIT THAT?  WHY DID YOU ASK THE JURY TO GRANT YOU

3    DAMAGES FOR THOSE PRE-MAY 15TH SALES?

4          MR. JACOBS:  I THINK I -- WITH RESPECT, YOUR HONOR, I

5    WAS ANSWERING THE QUESTION.

6          THE COURT:  YEAH.

7          MR. JACOBS:  WE GET SALES DATA FROM SAMSUNG, WE

8    PREPARE AN EXPERT REPORT AND EXPERT EXHIBITS DURING THAT, THAT

9    HURLY-BURLY PERIOD WHEN 24 HOURS BEFORE THE REPORT IS DUE,

10   SAMSUNG FINALLY PRODUCES THE DATA.

11      THEN WE AGREE ON THE JPTS.

12      BUT WE HAVE OUR EXPERT REPORT AND OUR EXHIBITS.  THE COURT

13   ENFORCED THOSE RULES QUITE, QUITE RIGOROUSLY.

14      WHAT THE JPTS MAKES CLEAR IS THAT, AS A LEGAL MATTER, ALL

15   OF THE SALES THAT WERE EMBRACED BY MR. MUSIKA'S REPORT OCCURRED

16   AFTER THE NOTICE DATE, AND THAT'S THE ONLY POINT WE'RE DRIVING

17   AT.

18      AS A LEGAL MATTER, THE JPTS SAYS, "SAMSUNG, YOU CANNOT

19   ARGUE THAT THE SALES OCCURRED BEFORE THE STIPULATED DATE.  YOU

20   ARE BARRED FROM THAT ARGUMENT."

21      AND IT IS AS MUCH A LEGAL STIPULATION IN THAT REGARD AS A

22   FACTUAL STIPULATION.

23      BUT THE EXPLANATION FOR WHY IS SIMPLY ONE OF SEQUENCE.

24          THE COURT:  OKAY.  BUT YOUR -- YOUR CASE AT THE TRIAL

25   AND YOUR EXPERT CLEARLY REQUESTED DAMAGES SINCE THE LICENSING

```
 1    NEGOTIATIONS THAT OCCURRED IN THE FALL OF 2010, AND YOU MADE

 2    THAT REQUEST AND WANTED DAMAGES AWARDED FOR THAT PERIOD

 3    REGARDLESS OF THIS MAY 15TH STIPULATION.

 4              MR. JACOBS:  WE WERE URGING AN EARLIER NOTICE PERIOD,

 5    YES, YOUR HONOR.

 6              THE COURT:  ALL RIGHT.

 7              MR. JACOBS:  I THINK THAT'S --

 8              THE COURT:  IS THERE ANYTHING THAT YOU'D LIKE TO SAY,

 9    MS. SULLIVAN?  OTHERWISE I'M READY TO RULE ON THIS ONE AS WELL

10    AND I'D LIKE TO KEEP GOING SO WE CAN GET TO CASE MANAGEMENT.

11              MR. JACOBS:  JUST VERY BRIEFLY, YOUR HONOR, I WANTED

12    TO JUST UNDERSTAND WHERE YOU LED OFF WITH.

13       ON THE AT&T --

14              THE COURT:  RIGHT, THAT'S GOING TO BE GRANTED.

15       BUT I'M GOING TO DENY IT AS TO THE INFUSE 4G.

16              MR. JACOBS:  THANK YOU, YOUR HONOR.

17              MS. SULLIVAN:  THANK YOU, YOUR HONOR.

18              THE COURT:  ALL RIGHT.  DO YOU WANT ME TO GO AHEAD

19    AND STATE MY REASONS, OR IS THAT --

20              MR. JACOBS:  YES, PLEASE.

21              THE COURT:  OKAY.  ALL RIGHT.

22       WELL, FIRST AS TO THE GALAXY S II AT&T, THERE DOESN'T SEEM

23    TO BE ANY DISAGREEMENT BY THE PARTIES THAT THAT WAS AN ERROR ON

24    THE COURT'S PART, AND I APOLOGIZE FOR THAT, SO I AM REINSTATING

25    THE AWARD OF $40,494,356 FOR THE GALAXY S II AT&T.
```

1       NOW, AS FAR AS THE INFUSE 4G, IT IS CORRECT THAT THE

2    PARTIES SUBMITTED A JOINT PRETRIAL STATEMENT THAT THIS PRODUCT

3    WAS FIRST SOLD ON MAY 15TH, 2011.

4       NOW, NONETHELESS, APPLE'S EXPERT REPORT OF MR. TERRY MUSIKA

5    PROVIDED SALES NUMBERS TO THE JURY FOR SALES THAT OCCURRED

6    PRIOR TO MAY 15 OF 2011 AND THE JOINT PRETRIAL STATEMENT AND

7    THIS STIPULATION WAS NOT ANYTHING THAT THE JURY WAS EVER

8    INFORMED OF AND IT WAS NEVER BEFORE THE JURY.

9       MOREOVER, THOSE TWO ADDITIONAL EXHIBITS, ONE WAS A

10    PLAINTIFF EXHIBIT, ONE WAS A DEFENDANT EXHIBIT -- MS. SULLIVAN

11    STATED THE EXACT NUMBERS ON THE RECORD, UNFORTUNATELY, I DON'T

12    HAVE THEM UP WITH ME RIGHT NOW -- BUT THOSE ALSO INCLUDED SALES

13    DATA FOR APRIL OF 2011.  I THINK THAT WAS VERY CONFUSING TO THE

14    JURY.

15       AND I KNOW THAT APPLE IS CLAIMING THAT THERE WERE NO SALES

16    POST-APRIL 15TH, 2011, BUT I DON'T THINK THAT WAS EVER CLEAR TO

17    THE JURY WHETHER THAT WAS THE CASE OR NOT.

18       ALL THEY SAW WERE MULTIPLE EXHIBITS THAT HAD SALES OF

19    APRIL 2011 AND THEY HEARD THE TESTIMONY OF MR. MUSIKA THAT

20    APPLE WAS REQUESTING DAMAGES FOR -- YOU KNOW, THAT STARTED AND

21    STARTED TO ACCRUE FROM THE LICENSING NEGOTIATION MEETINGS THAT

22    OCCURRED IN THE FALL OF 2010.

23       SO ON THAT BASIS -- THE COURT ALSO NOTES THAT APPLE DID NOT

24    SPECIFICALLY RAISE THE FIRST SALE DATES IN ITS OPPOSITION TO

25    SAMSUNG'S JMOL MOTION.  I WENT BACK AND REVIEWED THOSE

1    PLEADINGS.

2         BUT BECAUSE BOTH PARTIES SUBMITTED DAMAGES EXHIBITS TO THE

3    JURY, APPLE'S DAMAGES EXPERT INCLUDED SALES PRIOR TO THE

4    STIPULATED DATE, BOTH PARTIES' DAMAGES EXHIBITS DID AS WELL

5    THAT PREDATE THE DATE TO WHICH THE PARTIES HAVE STIPULATED, SO

6    EFFECTIVELY BOTH PARTIES HAVE SORT OF VITIATED THEIR

7    STIPULATION.

8         NOW, BECAUSE OF THAT, I THINK THE JURY MAY HAVE BEEN

9    CONFUSED.  HAD THE JURY KNOWN THAT THEY SHOULD NOT HAVE BEEN

10   AWARDING DAMAGES ANY TIME BEFORE MAY 15TH OF 2011, IT MAY NOT

11   HAVE AWARDED THE SAME DAMAGES AMOUNT, SO I THINK IT WOULD BE

12   INAPPROPRIATE FOR ME JUST TO REINSTITUTE THAT OR REINSTATE THAT

13   AMOUNT AT THIS TIME.

14        HOWEVER, I AM GOING TO ALLOW A NEW TRIAL ON THIS PRODUCT,

15   BUT THE PARTIES WILL ONLY BE ABLE TO SUBMIT INFORMATION ON

16   SALES ON OR AFTER MAY 15TH.  THERE WILL BE NO INFORMATION GOING

17   TO THE JURY WITH ANY SALES NUMBER THAT PREDATES THAT DATE.

18        SO I'M GRANTING IN PART AND DENYING IN PART APPLE'S MOTION

19   FOR RECONSIDERATION OF ORDER GRANTING NEW DAMAGES TRIAL.  SO

20   THE GALAXY S II AT&T WILL NOT BE INCLUDED IN THE NEW TRIAL, BUT

21   THE INFUSE 4G WILL.

22        OKAY?

23             MR. JACOBS:  THANK YOU, YOUR HONOR.

24             THE COURT:  ALL RIGHT.

25        OKAY.  NOW, LET'S GO TO THE SEVENTH AMENDMENT ISSUE AND

1    THEN I'D LIKE TO START DOING ALL OF THE CASE MANAGEMENT, WHICH

2    UNFORTUNATELY IS GOING TO TAKE SOME TIME.

3        ALL RIGHT.  I HAVE REVIEWED ALL OF THE PLEADINGS THAT HAVE

4    BEEN FILED ON THIS TOPIC.

5        THIS PROCEEDING WAS SET FOR A CMC AND NOT FOR A HEARING.

6    IF YOU WANT TO SPEAK BRIEFLY ON THIS, I'LL GIVE YOU EACH ONE

7    MINUTE, BUT I'M GOING TO ASK YOU, PLEASE, NOT TO GO FURTHER

8    THAN THAT BECAUSE WE DO HAVE QUITE A BIT TO COVER WITH REGARD

9    TO EVERYTHING ELSE.

10           MS. SULLIVAN:  SHALL I BEGIN, YOUR HONOR?

11           THE COURT:  PLEASE, GO AHEAD.

12           MS. SULLIVAN:  YOUR HONOR, IT'S A VERY SIMPLE

13   ARGUMENT.  THE SEVENTH AMENDMENT FORBIDS A SECOND JURY FROM

14   RE-EXAMINING A FACT FOUND BY A PRIOR JURY.

15       THIS IS NOT RELEVANT IF INFRINGER'S PROFITS IS THE DAMAGES

16   MEASURE AT THE NEXT TRIAL.

17       BUT IF THE DAMAGES MEASURE IS, AS APPLE WILL SEEK TO MAKE

18   IT, LOST PROFITS OR REASONABLE ROYALTY, THEN THE SECOND JURY,

19   IN DETERMINING DAMAGES, WILL NECESSARILY RE-EXAMINE A FACT

20   DETERMINED AS TO INFRINGEMENT OF THE DESIGN PATENTS AT THE

21   FIRST TRIAL, AND THAT IS, NAMELY, WHAT IS THE QUANTUM OR EXTENT

22   OF INFRINGEMENT?

23       THAT'S A CONSEQUENCE OF YOUR HONOR'S INSTRUCTION ON THE

24   DESIGN PATENTS.  YOU SAID, "YOU MUST DETERMINE WHETHER THERE

25   ARE MAJOR DIFFERENCES OR MINOR DIFFERENCES.  MINOR DIFFERENCES

1    DO NOT DEFEAT INFRINGEMENT."

2        SO THE FIRST JURY, IN ORDER TO FIND INFRINGEMENT, HAD TO

3    FIND A QUANTUM, OR AN EXTENT OF INFRINGEMENT, MAJOR DIFFERENCES

4    OR MINOR DIFFERENCES, 51 PERCENT SIMILAR OR 90 PERCENT SIMILAR

5    OR 99 PERCENT SIMILAR.

6        THE SECOND JURY, TO DETERMINE LOST PROFITS, WILL HAVE TO

7    DETERMINE THE EXTENT OF INFRINGEMENT TO DETERMINE CAUSATION ON

8    LOST PROFITS, AND THE SECOND JURY WILL HAVE TO DETERMINE THE

9    EXTENT OF INFRINGEMENT ON DAMAGES FOR REASONABLE ROYALTY

10   BECAUSE OF FACTOR 11 IN THE GEORGIA PACIFIC FACTORS.

11       THAT MEANS THE SECOND JURY IS RE-EXAMINING THE FACT OF THE

12   EXTENT OF DESIGN PATENT INFRINGEMENT UNDER A LOST PROFITS OR A

13   REASONABLE ROYALTY THEORY, AND THAT'S FORBIDDEN BY THE SEVENTH

14   AMENDMENT, UNLESS YOU ALLOW THE SECOND JURY TO RE-EXAMINE

15   DESIGN PATENT LIABILITY AS WELL.

16       ALTERNATIVELY, YOU COULD EXCLUDE LOST PROFITS AND

17   REASONABLE ROYALTY THEORIES FROM THE SECOND TRIAL AND THEN WE

18   WOULD CONCEDE THAT THE INFRINGER'S PROFITS SITUATION WOULD BE

19   DIFFERENT BECAUSE ON THAT CAUSATION IS NOT RELEVANT TO

20   INFRINGER'S PROFITS AS THE COURT HAS RULED.

21       WE RESPECTFULLY RESERVE THE RIGHT TO APPEAL THAT, WE DON'T

22   AGREE WITH IT, WE'LL TAKE IT TO THE FEDERAL CIRCUIT WHENEVER WE

23   HAVE A CHANCE AFTER FINAL JUDGMENT IS ENTERED.

24       BUT YOUR HONOR, THAT'S REALLY THE ARGUMENT IN A NUTSHELL.

25   IT'S A DESIGN PATENT ISSUE, IT'S RELEVANT TO LOST PROFITS AND

1    REASONABLE ROYALTY THEORIES, AND IT'S BECAUSE OF THE FACT OF

2    THE EXTENT OF INFRINGEMENT IS RELEVANT TO INFRINGEMENT

3    LIABILITY AND INFRINGEMENT DAMAGES ON THE LOST PROFITS AND

4    REASONABLE ROYALTY THEORY, AND THAT'S WHY THE SEVENTH AMENDMENT

5    MEANS EITHER CUT LOST PROFITS AND REASONABLE ROYALTIES OUT OF

6    THE SECOND TRIAL, OR LET US TRY LIABILITY ANEW AT THE SECOND

7    TRIAL ON THE DESIGN PATENTS.

8            MR. JACOBS:  TO STATE THE ARGUMENT IS TO REFUTE IT,

9    YOUR HONOR.

10       THE STANDARD IS MUCH TIGHTER THAN SAMSUNG'S ARGUMENT

11   ACKNOWLEDGES.  IT IS NOT WHETHER THERE'S OVERLAP.  IT IS NOT

12   WHETHER THE EVIDENCE WILL BE -- THAT WAS ADDUCED IN THE FIRST

13   WILL BE RELEVANT TO THE SECOND.

14       IT IS WHETHER THE SAME ESSENTIAL ISSUES ARE NECESSARILY

15   GOING TO BE REDECIDED.

16       BY SAMSUNG'S ARGUMENT, NO -- BIFURCATION WITH A HIATUS

17   BETWEEN A LIABILITY AND DAMAGES TRIAL IS IMPOSSIBLE IN A PATENT

18   BECAUSE THERE ARE ALWAYS REASONABLE ROYALTIES IN PATENT CASES

19   AND THERE ARE OFTEN LOST PROFITS DAMAGES REQUESTED IN PATENT

20   CASES.

21       AND YET, WE SEE CASE AFTER CASE IN WHICH THE FEDERAL

22   CIRCUIT REMANDS FOR A NEW DAMAGES TRIAL, AND WE SEE CASE AFTER

23   CASE IN WHICH COURTS, IN THE EXERCISE OF THEIR DISCRETION,

24   DECIDE WHETHER TO BIFURCATE LIABILITY FROM DAMAGES.

25       THE NEW JURY WILL NOT BE RETRYING INFRINGEMENT.  THAT WOULD

 1      BE A VIOLATION OF OUR SEVENTH AMENDMENT RIGHTS.

 2          THE NEW JURY WILL BE DECIDING DAMAGES AND DAMAGES IS NOT

 3      INFRINGEMENT.

 4              MS. SULLIVAN:  YOUR HONOR, APPLE FAILS TO CITE A

 5      SINGLE CASE IN WHICH THERE'S BIFURCATION OR REMAND ON DAMAGES

 6      IN A DESIGN PATENT CASE.  EVERY PATENT CASE THEY CITED TO YOU

 7      IS A UTILITY PATENT CASE.

 8          AND, OF COURSE, A UTILITY PATENT CASE IS DIFFERENT BECAUSE

 9      FOR INFRINGEMENT YOU HAVE TO FIND THAT EVERY CLAIM WAS MET.

10          THAT'S NOT THE CASE WITH DESIGN PATENTS, AS YOUR HONOR

11      INSTRUCTED THE JURY.  YOUR HONOR DIDN'T DO A CLAIM CONSTRUCTION

12      ON THE DESIGN PATENTS, BUT SAID, "LOOK AT THE PICTURE," AND YOU

13      SAID "LOOK FOR MAJOR OR MINOR DIFFERENCES."

14          AND APPLE HAS FAILED TO CITE YOU A SINGLE BIFURCATION OR

15      REMAND ON DAMAGES ONLY CASE INVOLVING A DESIGN PATENT.

16          THAT'S WHY I TRIED TO NARROW THE ARGUMENT.  IT'S DESIGN

17      PATENTS.  IT'S ON LOST PROFITS OR REASONABLE ROYALTY.

18          THAT'S WHERE THE SEVENTH AMENDMENT VIOLATION IS PLAIN, AND

19      WE DO MEET THE TIGHTEST POSSIBLE STANDARD, WHICH IS THE ONE THE

20      FRAMERS PUT IN THE SEVENTH AMENDMENT, WILL THE SECOND JURY

21      RE-EXAMINE A FACT FROM THE FIRST TRIAL, NOT A HOLDING, NOT A

22      VERDICT, BUT A FACT.

23          AND THE FACT IS THE EXTENT OF INFRINGEMENT.

24              THE COURT:  WHY DIDN'T YOU PUT THAT IN YOUR JMOL

25      MOTION?  YOU ONLY REQUESTED A NEW TRIAL ON DAMAGES IN YOUR JMOL

```
 1      MOTION.  YOU'VE NEVER SAID THAT A NEW TRIAL ON LIABILITY WAS

 2      REQUIRED AS FOR A NEW TRIAL ON DAMAGES.

 3          IT SEEMS AWFULLY SNEAKY TO NEVER RAISE THAT IN THE JMOL

 4      MOTION, BECAUSE THAT'S WHEN IT WOULD HAVE BEEN APPROPRIATE

 5      BECAUSE THAT'S WHEN I WAS REVIEWING ALL THE LIABILITY

 6      DETERMINATIONS THAT THE JURY MADE.  RIGHT?

 7              MS. SULLIVAN:  WELL, YOUR HONOR, WITH RESPECT, WE DID

 8      ASK FOR JMOL ON EACH AND EVERY ISSUE, AND WE DIDN'T KNOW UNTIL

 9      THE MARCH 1ST ORDER THAT YOU WOULD ORDER THE NEW TRIAL AND NOT

10      SIMPLY GIVE US JMOL.

11          WE CONTINUE TO BELIEVE THAT YOU COULD HAVE, BUT FOR THE

12      '381 PATENT AND APPLE'S OPPORTUNISTIC BEHAVIOR ABOUT THE NOTICE

13      DATE, ENTERED JMOL FOR US ON THE PROPER NOTICE AND CALCULATION.

14          SO WE DIDN'T KNOW, UNTIL WE GOT YOUR ORDER, THAT WE'D BE

15      FACING A WHOLE NEW TRIAL ON DAMAGES AS OPPOSED TO THE JMOL

16      REMITTITUR WE REQUESTED.

17          WE DID SUBMIT THE SEVENTH AMENDMENT ARGUMENT AS SOON AS THE

18      LIGHT BULB WENT ON AND WE SAW THAT THE PROBLEM EXISTED.

19          BUT YOUR HONOR, WITH RESPECT, I DON'T THINK WE COULD HAVE

20      ANTICIPATED EXACTLY HOW THE MARCH 1ST ORDER WOULD HAVE COME

21      DOWN, AND IT'S A CONSTITUTIONAL ISSUE, SO IT'S PLAIN ERROR AND

22      CAN BE RAISED AT ANY TIME.

23              THE COURT:  WELL, LET ME ASK A QUESTION.  IF YOU

24      THINK THAT WITH THE CORRECT NOTICE DATES IT IS VERY CLEAR WHAT

25      THE DAMAGES SHOULD BE, WHY DON'T YOU TWO JUST STIPULATE?  THAT
```

```
 1        WOULD OBVIATE THE NEED FOR A NEW TRIAL.

 2            I WAS NOT ABLE TO MAKE THAT DETERMINATION, BUT IF SAMSUNG

 3        FEELS THAT IT CAN, THEN I WOULD LOVE FOR YOU TWO PARTIES TO

 4        REACH AN AGREEMENT ON WHAT THAT NUMBER SHOULD BE.

 5            I WAS UNABLE DO THAT BASED ON THE DATA THAT HAD BEEN

 6        SUBMITTED, BUT I WOULD ABSOLUTELY WELCOME -- IF YOU ALL FEEL

 7        THAT THERE IS A REDUCTION THAT CAN BE MADE ACCORDANCE WITH THE

 8        NOTICE DATES, THEN LET'S JUST GET THIS WHOLE THING UP TO THE

 9        FEDERAL CIRCUIT, WHICH I THINK IS WHAT EVERYONE WANTS.

10            I MEAN, WE'RE JUST AN OBSTACLE IN YOUR WAY TO GETTING A

11        FINAL RESOLUTION OF THESE DISPUTES.

12            SO IS THAT POSSIBLE?

13                MS. SULLIVAN:  WELL, YOUR HONOR, WE WILL, OF COURSE,

14        ALWAYS BE HAPPY TO TALK TO APPLE ABOUT WHETHER WE COULD ENTER A

15        STIPULATED FINAL JUDGMENT IN THIS MATTER, AND WE DO WANT TO

16        LIGHTEN THE BURDEN ON THE COURT.  WE DO NOT WANT TO IMPOSE --

17        THAT'S WHY WE ASKED FOR THE 54(B).  RESPECTFULLY, YOU'VE DENIED

18        IT.

19            BUT JUST TO MAKE CLEAR WHY THE CALCULATION AS TO NOTICE

20        DATE IS AN EASY MATHEMATICAL EXERCISE, WE WOULD REFER YOU BACK

21        TO THE WAGNER DECLARATION WE SUBMITTED WITH OUR FIRST JMOL

22        MOTION ON SEPTEMBER 21ST, 2012, AND ON PAGE 4 OF THAT SCHEDULE,

23        IT GIVES YOU THE NOTICE DATE, THE CORRECT REDUCTION OF THE

24        DAMAGES FOR THE CORRECT NOTICE DATES WITH RESPECT TO ALL THE

25        PRODUCTS AS TO WHICH THE '381 PROBLEM DOES NOT EXIST.
```

1    SO YOU CAN DO IT.  IF WE TAKE '381 OUT OF THE PICTURE, YOU

2    COULD DO THE REDUCTION TOMORROW.

3        WE THINK THERE'S ALSO -- AND THIS WAS USING MR. MUSIKA'S

4    METHODOLOGY.  IN OTHER WORDS, OUR EXPERT TOOK APPLE'S EXPERT'S

5    METHODOLOGY TO DO THE NUMBERS.

6            THE COURT:  CAN WE GET AGREEMENT HERE?

7            MR. JACOBS:  YOUR HONOR, I THINK WE HAVE A DIFFERENT

8    VIEW OF THE NEW TRIAL AND HOW DAMAGES WILL COME IN IN THE NEW

9    TRIAL.

10       TO START WHERE YOU STARTED, SAMSUNG VERY SPECIFICALLY, IN

11   ITS NOTICE SECTION OF ITS MOTION, SAID "THE NOTICE DATES WERE

12   WRONG.  WE WANT A NEW TRIAL."

13       THAT IS WHAT THEY ASKED FOR.  THAT IS WHAT YOU HAVE GRANTED

14   THEM.  AND NOW THEY ARE REVISITING THE WISDOM OF THEIR EARLIER

15   STRATEGY.

16       SO YOU'RE -- THE COURT IS DEAD ON ON THIS ONE.  THIS IS A

17   LATE REALIZATION AND THEY HAVE WAIVED THEIR CLAIM THAT THE

18   SEVENTH AMENDMENT VIOLATES A NEW TRIAL.

19       AS FOR THE STIPULATION, IF YOU LOOK AT WAGNER'S REPORT --

20   IF YOU LOOK AT WAGNER'S EXHIBIT, IT'S QUITE INTERESTING.  IN

21   SOME PLACES, WAGNER CAME UP WITH NUMBERS LARGER THAN THE JURY

22   CAME UP WITH.

23       THAT WAS PRECISELY OUR ARGUMENT TO YOUR HONOR.  IF YOU LOOK

24   AT THE VERDICT HERE AND YOU LOOK AT IT IN ITS AGGREGATE, YOU

25   LOOK AT IT AT LEAST AS TO CERTAIN PRODUCTS, THE NUMBER THE JURY

1    AWARDED IS SMALLER THAN WAGNER'S NUMBER.

2        IN THE NEW TRIAL, WE'RE GOING TO BE SEEKING OUR BEST --

3    WE'RE GOING TO BE TAKING OUR BEST SHOT AT DAMAGES ON THESE

4    PRODUCTS.  WE'RE NOT GOING TO WAIVE CLAIMS FOR MILLIONS OF

5    DOLLARS.

6            THE COURT:  WELL, ANY LAST WORD?  I'LL GIVE YOU 30

7    SECONDS.  OTHERWISE I'D LIKE TO RULE ON THIS.

8            MR. JACOBS:  I THINK YOU CAN RULE, YOUR HONOR.

9            MS. SULLIVAN:  THE SEVENTH AMENDMENT IS NOT WAIVABLE,

10   YOUR HONOR.  IT'S A CONSTITUTIONAL RESTRAINT ON THE CONTOURS OF

11   A NEW TRIAL.  YOU GO THROUGH IT WITH APPLE.  OPPORTUNISTIC,

12   OPPORTUNISTIC, OPPORTUNISTIC.  WE WANT A NEW TRIAL SO WE CAN GO

13   FOR EVEN BIGGER DAMAGES, EVEN THOUGH THE JURY IN THE PRIOR

14   TRIAL FOUND, ACCORDING TO AN INFRINGER'S PROFITS THEORY, THAT

15   NOW MAYBE THEY'D LIKE TO REDO.

16       THE SEVENTH AMENDMENT BARS THEM GOING FOR THOSE NEW

17   THEORIES, LOST PROFITS AND REASONABLE ROYALTY --

18           THE COURT:  THEY'RE NOT GOING TO GET ANYTHING NEW.

19   THIS IS GOING TO BE GROUNDHOG DAY.  YOU'RE GOING TO BE RELIVING

20   JULY OF 2012.  NO NEW THEORIES, NO NEW -- WE'LL GO THROUGH ALL

21   OF IT.  NO NEW DATA, NO NEW PRODUCTS, NO NEW SALES, NO NEW

22   DAMAGES PERIOD, NO NEW METHODS.

23       I MEAN, IT'S JUST GOING TO BE -- THIS CAN BE JUST A VERY

24   SIMPLE CHANGE OF MR. MUSIKA'S EXHIBITS TO START FROM THE

25   CORRECT DATE.  I'M NOT GOING TO ALLOW ANYTHING ELSE TO BE DONE.

```
1          I'M NOT GOING TO ALLOW NEW DAMAGES.

2              THERE IS NO DISCOVERY TO BE HAD HERE.  YOU ALREADY HAVE THE

3      NUMBERS THAT YOU NEED TO DO THIS.

4              THERE'S GOING TO BE NOTHING NEW IN THIS CASE.  IT'S JUST

5      GOING TO BE BRINGING IN THE NUMBERS ON THE DAMAGES REQUEST.

6              MR. JACOBS:  SO JUST TO BE CLEAR ABOUT THE

7      IMPLICATIONS OF THAT, WE URGED THAT THE -- THE COURT FOUND THAT

8      WE HAD -- THAT SAMSUNG HAD A RIGHT TO A JURY TRIAL DECISION ON

9      WHAT WE CHARACTERIZED AS SUPPLEMENTAL DAMAGES.

10             SO IF WE'RE FIXED TO THE JUNE 30 DATA, THE DATA AS OF

11     JUNE 30, WE JUST WANT THE COURT TO STATE FOR US THAT WE'RE NOT

12     WAIVING OUR CLAIM FOR SUPPLEMENTAL DAMAGES FROM THAT DATE

13     FORWARD.

14             PART OF WHAT WE WERE HOPING -- WHAT WE WERE ASKING SAMSUNG

15     TO DO WAS UPDATE THE SALES DATA SO THAT THE COURT WOULD NOT

16     HAVE TO DECIDE SUPPLEMENTAL DAMAGES FOR THE NEW TRIAL PRODUCTS.

17             THAT'S THE ONLY INFORMATION WE WANTED FROM SAMSUNG WAS

18     UPDATED SALES DATA.

19                 MS. SULLIVAN:  YOUR HONOR --

20             MR. JACOBS:  WHAT'LL HAPPEN INSTEAD, IF WE DON'T GET

21     UPDATED SALES DATA NOW, THEN AFTER THE NEW TRIAL, ASSUMING

22     SUCCESS FOR APPLE ON DAMAGES IN THE NEW TRIAL, WE WILL THEN

23     MOVE FOR SUPPLEMENTAL DAMAGES AND IT'LL BE ON THE NEW TRIAL --

24     THERE WILL BE SUPPLEMENTAL DAMAGES ON THE NEW TRIAL PRODUCTS

25     BECAUSE WE WON'T HAVE RECEIVED UPDATED SALES DATA.
```

1       THE COURT:  WELL, I'M NOT -- I'M GOING TO MAINTAIN

2  THE SAME POSITION I TOOK IN THE MARCH 1ST ORDER, THAT I'M NOT

3  GOING TO ORDER PRE-JUDGMENT INTEREST AND SUPPLEMENTAL DAMAGES

4  UNTIL THE APPEAL IS OVER, BECAUSE THERE MAY BE MANY ERRORS THAT

5  THIS COURT COMMITTED DURING THAT TRIAL AND WHO KNOWS WHAT IS

6  GOING TO REMAIN STANDING AFTER AN APPEAL.

7       SO THAT ISSUE I'M NOT GOING TO DEAL WITH NOW, AND I'M NOT

8  GOING TO DEAL WITH IT AFTER ANY RETRIAL ON DAMAGES.

9       IT'LL ONLY BE ADDRESSED AFTER THE FEDERAL CIRCUIT EITHER

10  COMPLETELY REVERSES EVERYTHING AND REMANDS IT FOR A NEW TRIAL,

11  OR WHATEVER HAPPENS.

12       SO I THINK IT WOULD BE CLEANER AND EASIER IF WE JUST DO A

13  NEW TRIAL BASED ON ALL THE OLD THEORIES, THE OLD NUMBERS, THE

14  OLD DISCOVERY AND NOT -- NO ONE IS GOING TO GET A DO-OVER IN

15  THIS CASE.

16       I JUST WANT TO DO A VERY LIMITED RETRIAL ON DAMAGES ON ALL

17  OF THE OLD INFORMATION AND THEN HAVE THIS GO UP TO THE FEDERAL

18  CIRCUIT.

19       MR. JACOBS:  UNDERSTOOD, YOUR HONOR.

20       THE COURT:  SO, YOU KNOW, THE ISSUE OF SUPPLEMENTAL

21  DAMAGES OR PRE-JUDGMENT INTEREST WILL HAVE TO BE RESOLVED AT A

22  DIFFERENT TIME, AND I AM PATHOLOGICALLY OPTIMISTIC -- MAYBE

23  DELUSIONAL -- AND I'M HOPING YOU MIGHT SETTLE BEFORE WE HAVE TO

24  DO A THIRD TRIAL.

25       BUT, YOU KNOW, THAT'S JUST AN ISSUE FOR A DIFFERENT DAY.

```
1         IT'S NOT GOING TO BE RESOLVED RIGHT NOW.

2              MR. JACOBS:  UNDERSTOOD, YOUR HONOR.

3         I THINK WE WENT -- YOU WENT ON TO THE CASE MANAGEMENT ISSUE

4    FROM THE SEVENTH AMENDMENT ISSUE, AND I THINK WE'VE ARGUED THAT

5    FAIRLY WELL.

6              THE COURT:  ALL RIGHT.  WELL, LET ME GO AHEAD AND

7    STATE MY RULING ON THE RECORD, AND ALSO -- WELL, LET ME JUST

8    SAY, FOR THE SUPPLEMENTAL DAMAGES AND PRE-JUDGMENT INTEREST,

9    SINCE THAT'S A LITTLE BIT EASIER, YOU KNOW, I HAD -- I

10   PREVIOUSLY RULED IN THE MARCH 1ST ORDER THAT BECAUSE SO MUCH

11   MAY BE SUBJECT TO REVERSAL ON APPEAL, IT SIMPLY DOES NOT MAKE

12   SENSE AT THIS POINT TO BE DEALING WITH THESE ISSUES AND

13   ORDERING THESE PAYMENTS AT THIS TIME.

14        AND I CONTINUE TO BELIEVE THAT THAT IS EQUALLY THE CASE

15   NOW, AND SO I'M NOT GOING TO CHANGE MY MARCH 1ST ORDER ON THIS

16   POINT AND I WILL NOT CALCULATE ANY SUPPLEMENTAL DAMAGES OR

17   PRE-JUDGMENT INTEREST UNTIL AFTER ALL OF THE APPEALS ON THIS

18   ENTIRE CASE ARE RESOLVED.  OKAY?

19        SO THAT'S THE RULING ON THE SUPPLEMENTAL DAMAGES.

20        LET'S GO BACK TO THE SEVENTH AMENDMENT ISSUE.

21             MS. SULLIVAN:  YOUR HONOR, MAY I JUST ASK A QUICK

22   QUESTION ABOUT SUPPLEMENTAL --

23             THE COURT:  YES.

24             MS. SULLIVAN:  I THINK WHAT MR. JACOBS WAS JUST

25   REFERRING TO WAS THAT APPLE WANTED TO TRY NEW PRODUCTS THAT
```

```
 1    WERE NOT ADJUDICATED, ACCUSED OR ADJUDICATED IN THE PRIOR

 2    TRIAL, IN THE NEW TRIAL, AND I'M HEARING YOU AS SAYING NO,

 3    THAT'S A MATTER OF SUPPLEMENTAL DAMAGES IN THE OLD TRIAL AND

 4    YOU'RE NOT GOING TO ALLOW ANY NEW PRODUCTS TO COME IN IN THE

 5    NEW TRIAL FOR NEW DAMAGES.

 6        IS THAT CORRECT?

 7             THE COURT:  WELL, I --

 8             MR. JACOBS:  THERE'S SOME CONFUSION HERE, YOUR HONOR.

 9             THE COURT:  OKAY.  WHAT --

10             MR. JACOBS:  THIS IS THE TRACFONE ISSUE, AND IF THE

11    COURT'S RULING ON SUPPLEMENTAL DAMAGES STANDS AND THE COURT'S

12    RULING IS THAT WE ARE TRYING, IN THE NEW TRIAL, BASED ON ALL

13    THE FACT DISCOVERY THAT OCCURRED ALREADY, THEN I THINK THIS IS

14    A MOOT ISSUE.

15        BUT IT'S THE TRACFONE ISSUE.

16             MS. SULLIVAN:  YES.

17             MR. JACOBS:  IT'S THE PHONE THAT SAMSUNG SAID IN ITS

18    BRIEF IS NOT A NEW PRODUCT AT ALL, QUOTE UNQUOTE.  IT IS THE

19    SAME PRODUCT AS THE AT&T REISSUED UNDER THE TRACFONE NAME.

20    THAT'S WHAT THEY SAID IN THEIR BRIEF.

21        BUT I THINK THIS ISSUE IS MOOT BASED ON THE COURT'S

22    EXISTING ORDER.

23             MS. SULLIVAN:  I JUST AM CONFIRMING AND I'M HAPPY TO

24    ACCEPT APPLE'S STIPULATION THAT IT'S MOOT.

25             MR. JACOBS:  LET ME JUST CHECK.
```

```
1        THAT'S CORRECT, YOUR HONOR.

2            THE COURT:  ALL RIGHT.  WELL, I WAS ACTUALLY NOT

3    SAYING THAT I WOULD ALLOW ANY NEW PRODUCTS TO BE SWEPT INTO THE

4    SUPPLEMENTAL DAMAGES ISSUE.

5        I THINK THE SUPPLEMENTAL DAMAGES ISSUE DEALS WITH THE

6    PRODUCTS THAT WERE THE SUBJECT OF THE TRIAL.

7            MS. SULLIVAN:  WE AGREE WITH THAT, YOUR HONOR.

8            THE COURT:  SO I DO NOT -- I'M NOT GOING TO HAVE, FOR

9    THE PURPOSES OF CALCULATING SUPPLEMENTAL DAMAGES IF IT BECOMES

10   NECESSARY AFTER ALL THE APPEALS, A MINI TRIAL ON WHETHER THE

11   TRACFONE IS IDENTICAL OR NOT TO A PRODUCT THAT WAS THE SUBJECT

12   OF THIS TRIAL.

13       I THINK IF THAT IS THE CASE AND YOU WANT TO GO AFTER THE

14   TRACFONE, THEN YOU'RE GOING TO FILE A NEW LAWSUIT AND I AM NOT

15   GOING TO RELATE THAT CASE.  THAT'S JUST GOING TO GO TO SOMEONE

16   ELSE.  OKAY?

17       OKAY.  SO LET'S AT LEAST ADDRESS THE SEVENTH AMENDMENT

18   ISSUE AND THEN LET'S HANDLE THE CASE MANAGEMENT, PLEASE.

19       ALL RIGHT.  FEDERAL COURTS HAVE RECOGNIZED THAT IN A

20   PATENT CASE, THE ISSUES OF LIABILITY AND DAMAGES ARE MOST

21   LIKELY SUSCEPTIBLE TO SEPARATE TRIALS WITHOUT VIOLATING THE

22   SEVENTH AMENDMENT.  F&G SCROLLING MOUSE VS. IBM, 190 F.R.D.

23   385, PIN CITE 388, MIDDLE DISTRICT OF NORTH CAROLINA, 1999.

24       THE FEDERAL CIRCUIT HELD IN IN RE: INNOTRON DIAGNOSTICS,

25   800 F.2D 1077, FEDERAL CIRCUIT, 1986, THE SEVENTH AMENDMENT
```

```
1     PROHIBITION IS NOT AGAINST HAVING TWO JURIES REVIEW THE SAME

2     EVIDENCE, BUT RATHER, HAVING TWO JURIES DECIDE THE SAME

3     ESSENTIAL ISSUES.

4          NOTABLY, THE FEDERAL CIRCUIT ROUTINELY REMANDS PATENT

5     CASES FOR NEW TRIALS ON DAMAGES ALONE, JUST CITING AS AN

6     EXAMPLE THE LUCENT CASE DOWN IN THE SOUTHERN DISTRICT OF

7     CALIFORNIA, BUT THERE ARE MANY OTHERS IN WHICH THAT HAS

8     HAPPENED.

9          IN ADDITION, WITHIN THE NINTH CIRCUIT, COURTS HAVE UPHELD

10    OR ORDERED NEW TRIALS ON DAMAGES ALONE IN A VARIETY OF CASES,

11    INCLUDING CASES BROUGHT FOR PATENT INFRINGEMENT.

12         WITH REGARD TO THE QUESTION OF THE '381 AND THE THREE

13    APPLICATIONS AT ISSUE IN THAT PATENT, THE COURT IS PERSUADED

14    THAT -- YOU KNOW, SAMSUNG PREVIOUSLY, IN THE PREVIOUS TRIAL,

15    DID NOT DRAW ANY DISTINCTION BETWEEN THE THREE TYPES OF

16    APPLICATIONS AND SAMSUNG'S EXPERT, MR. WAGNER, HIS EXPERT

17    OPINION WAS THAT MERELY A FLAT FEE OF $10,000 WAS APPROPRIATE.

18    THERE WAS NO DISTINCTION BETWEEN THE DIFFERENT APPLICATIONS.

19         SO THAT ARGUMENT HAS BEEN WAIVED AND IT MAY NOT BE MADE IN

20    A NEW TRIAL ON DAMAGES IF THE '381 IS IN THE CASE.

21         IT MAY WELL BE THAT THE '381 GETS STAYED IF, AS WE'VE

22    ALREADY DISCUSSED, THE PATENT OFFICE DOES NOT REOPEN

23    PROSECUTION OF THE RE-EXAMINATION.

24         THE COURT ALSO FINDS THAT SAMSUNG'S PROPOSAL WOULD VIOLATE

25    THE DOCTRINE OF LAW OF THE CASE.  THE FIRST JURY ALREADY
```

1    RENDERED A VERDICT THAT PARTICULAR SAMSUNG PRODUCTS INFRINGE

2    THE INTELLECTUAL PROPERTY THAT WOULD BE THE SUBJECT OF THE NEW

3    TRIAL ON DAMAGES.

4         THE COURT AGREES WITH APPLE THAT THE DETERMINATION

5    REGARDING THESE PRODUCTS IS NOW BINDING AND CANNOT BE REVISITED

6    IN A SECOND DAMAGES TRIAL.

7         FINALLY, THE COURT FINDS THAT SAMSUNG'S POSITION, WHICH

8    EFFECTIVELY CONSTITUTES A MOTION FOR RECONSIDERATION, IS

9    PROCEDURALLY AND SUBSTANTIVELY IMPROPER.

10        THIS COURT HAS ALREADY RULED ON A TOTAL OF EIGHT

11   POST-TRIAL MOTIONS IN WHICH THE COURT DID FIND SUFFICIENT

12   EVIDENCE SUPPORTING THE JURY'S FINDINGS OF LIABILITY.

13        MOREOVER, IF SAMSUNG TRULY BELIEVED THAT A NEW TRIAL ON

14   LIABILITY AND DAMAGES WOULD BE NECESSARY TO CURE THE

15   DEFICIENCIES IDENTIFIED DUE TO THE INCORRECT NOTICE DATES IN

16   ITS JMOL MOTIONS, THE APPROPRIATE TIME TO HAVE RAISED SUCH

17   CONCERNS WOULD HAVE BEEN IN ITS JMOL.

18        NOTABLY, IN OTHER PORTIONS OF ITS JMOL, SAMSUNG DID

19   REQUEST A NEW TRIAL ON LIABILITY.

20        HOWEVER, IF IT THOUGHT THAT THE NOTICE DATE ERROR

21   NECESSITATED A RETRIAL ON LIABILITY, IT SHOULD HAVE SO STATED.

22        THE COURT IS NOT PERSUADED THAT SAMSUNG COULD NOT HAVE

23   RAISED THIS ARGUMENT PREVIOUSLY, AND ON THAT BASIS THE COURT

24   FINDS THAT THE SEVENTH AMENDMENT DOES NOT PRECLUDE A NEW TRIAL

25   ON DAMAGES ALONE FOR THE PATENTS AND -- THE PATENTS THAT WOULD

1      BE THE SUBJECT OF A NEW TRIAL.

2          OKAY.  NOW, LET'S GO TO -- SO I AM GOING TO ORDER A NEW

3      TRIAL, AND AS I SAID, THERE WILL BE NO NEW SALES DATA, NO NEW

4      DAMAGES PERIOD, NO NEW PRODUCTS, NO NEW METHODS, NO NEW

5      THEORIES.

6          MS. MAROULIS:  YOUR HONOR, MAY WE ADDRESS YOU BRIEFLY

7      ON THIS POINT?

8          THE COURT:  YES.

9          MS. MAROULIS:  YOUR HONOR SAID THIS MIGHT BE LIKE A

10     GROUNDHOG DAY, BUT IT WILL NOT BE BECAUSE APPLE IS GETTING A

11     BRAND NEW EXPERT, OR POSSIBLY SEVERAL EXPERTS, AND THIS IS AN

12     ISSUE THAT WE WANTED TO ADDRESS TODAY, BECAUSE APPLE'S

13     METHODOLOGY AND REPORT WILL NECESSARILY CHANGE.  ANOTHER PERSON

14     OR PERSONS CANNOT SIMPLY PARROT OR ADOPT EVERYTHING THAT

15     MR. MUSIKA DID.

16         THE COURT:  WELL, HE -- THEY SAID THAT THEY MIGHT

17     SELECT SOMEBODY FROM MR. MUSIKA'S COMPANY.  WHY WOULD THOSE

18     PERSONS NECESSARILY HAVE ANY DIFFERENT THEORIES?

19         MS. MAROULIS:  FIRST OF ALL, YOUR HONOR, IF THEY'RE

20     AN INDEPENDENT EXPERT, THEY'RE LIKELY TO HAVE THEIR OWN

21     OPINION, SO IT'S NOT GOING TO BE A WORD-FOR-WORD WHAT

22     MR. MUSIKA SAID.

23         BUT SECONDLY, APPLE HAS NOT CONFIRMED WHO THEY WILL SELECT

24     OR EVEN WHAT SPECIALTY OF AN EXPERT THEY WILL BE.

25         AND HERE'S THE ISSUE.  THEY MIGHT GO THIS TIME, INSTEAD AN

```
1     ACCOUNTANT, FOR AN ECONOMIST.  WE HAD MR. WAGNER, WHO HAS

2     BACKGROUND IN ACCOUNTING.

3         IF THEY'RE GOING TO BRING IN A PERSON FROM A NEW FIELD,

4     ECONOMICS, AND PUT TO THE JURY AND SAY "WE HAVE AN ECONOMIST

5     AND SAMSUNG DOES NOT," WE NECESSARILY NEED TO HAVE AN

6     OPPORTUNITY TO BRING IN AN ECONOMIST AS WELL TO EITHER REPLACE

7     OR SUPPLEMENT MR. WAGNER.

8             THE COURT:  OKAY.  WELL, LET ME ASK APPLE -- LIKE, I

9     CAN EASILY SET THIS RETRIAL FOR 2017.  THERE IS NOTHING THAT

10    REQUIRES ME TO DO THIS IMMEDIATELY.

11        SO TELL ME, HOW REASONABLE ARE YOU GOING TO BE IN THIS

12    PROCESS?  BECAUSE IF THAT IS THE CASE, THEN I WILL NOT SET THIS

13    TRIAL FOR ANOTHER SEVERAL YEARS.  YOU ALREADY HAVE A TRIAL

14    GOING AGAINST SAMSUNG IN MARCH OF NEXT YEAR.  SO HOW REASONABLE

15    ARE YOU GOING TO BE ON THIS?

16        I THOUGHT -- I WAS VERY DISAPPOINTED THAT YOU WERE

17    UNWILLING, AFTER ALL THIS TIME, TO EVEN SAY WHO YOUR EXPERT IS

18    GOING TO BE.

19            MR. JACOBS:  WELL, WE'VE TOLD WHO THE OPTIONS ARE,

20    AND THE OPTIONS ARE MR. -- DR. VELLTURO, WHO IS THE DAMAGES

21    EXPERT IN THE '630 CASE, OR SOMEONE FROM INVOTEX, AND WE NEED

22    TO KNOW THE DATES SO WE CAN MAKE SURE OUR EXPERTS ARE

23    AVAILABLE.

24        I'M IN ANOTHER CASE RIGHT NOW WHERE THE OTHER SIDE HAD TO

25    FILE A MOTION TO CONTINUE THE TRIAL DATE BECAUSE ITS EXPERT WAS
```

1    UNAVAILABLE.

2       THE --

3            THE COURT:  WHO IS THE PERSON AT INVOTEX?  IS THAT --

4    IS THAT MR. MUSIKA'S COMPANY?

5            MR. JACOBS:  YES.

6            THE COURT:  OKAY.

7            MR. JACOBS:  THE -- ON MS. MAROULIS'S SPECIFIC POINT,

8    WE CAN CERTAINLY AGREE NOT TO ARGUE THAT ON ACCOUNT OF -- THIS

9    WOULD BE VELLTURO -- ON ACCOUNT OF VELLTURO BEING AN ECONOMIST,

10   HE OUT CREDENTIALS MR. WAGNER.  THERE'S NO REASON -- WE DON'T

11   NEED TO ARGUE THAT.  WE CAN STIPULATE THAT WE WILL NOT ARGUE

12   THAT.  WE WILL NOT ARGUE TO THE JURY THAT, BECAUSE HE'S AN

13   ECONOMIST AND SAMSUNG DOESN'T HAVE AN ECONOMIST, THEY SHOULD

14   BUY OUR DAMAGES EXPERT'S TESTIMONY OVER THEIR DAMAGES EXPERT'S

15   TESTIMONY.

16           MS. MAROULIS:  YOUR HONOR, MR. VELLTURO IS AN

17   ECONOMIST AND THAT STIPULATION IS A GOOD STEP, BUT IT'S NOT

18   ENOUGH, BECAUSE AS AN ECONOMIST, HE MIGHT HAVE A DIFFERENT

19   APPROACH, DIFFERENT MODELS, DIFFERENT THEORIES.

20       WE SIMPLY CANNOT BE PUT IN A SEPARATE --

21           THE COURT:  WELL, THEN I WILL SET THIS TRIAL FOR 2017

22   AND I WILL SET THIS CMC FOR DECEMBER 2016.

23       I'M TELLING YOU, THIS IS GOING TO HAVE TO BE VERY NARROW.

24   I'M NOT GOING TO HAVE A TOTAL DO-OVER OF THIS TRIAL.

25           MR. JACOBS:  IT WILL BE NARROW, YOUR HONOR.  WE

1    UNDERSTAND THE COURT'S DIRECTION, AND UNLESS MR. VELLTURO

2    THINKS THAT REALLY IN GOOD CONSCIENCE HE CAN'T ADOPT SOMETHING

3    THAT MR. MUSIKA HAS PUT FORWARD -- AND WE HAVE NO REASON TO

4    THINK THAT'S THE CASE -- THIS WILL BE BASED ON THE MODEL THAT

5    MR. MUSIKA ADVANCED.

6        YOU'LL RECALL THAT THERE IS A -- THAT IT IS QUITE A MODEL

7    AND THAT -- WE'LL PUT IN THE NEW INPUTS OF THE NEW DATES AND

8    WE'LL SEE WHAT THE MODEL GENERATES.

9        AND THEY HAVE THAT MODEL.

10        THE COURT:  LET ME HEAR FROM -- ARE YOU ASKING THAT

11    YOU ALSO BE ALLOWED TO GET A NEW EXPERT?  I'M A LITTLE BIT

12    UNCLEAR ON WHAT THE REQUEST IS.

13        MS. MAROULIS:  YOUR HONOR, WE NEED THE OPTION.  WE

14    NEED THE OPPORTUNITY, ONCE WE SEE APPLE'S REPORT, TO -- FIRST

15    OF ALL, ONCE WE KNOW WHO THEIR EXPERT IS, WE MIGHT HAVE A

16    CHALLENGE TO THEM UNDER WHATEVER PROTECTIVE ORDER.  I'M NOT

17    SAYING THAT WE WILL DO THAT, BUT WE HAVE THAT OPTION AND THEY

18    WON'T GIVE US THE NAME.

19        BUT SECONDLY, ONCE WE HAVE THEIR REPORT, WE SHOULD HAVE AN

20    OPPORTUNITY TO EITHER SUBSTITUTE OR SUPPLEMENT OUR EXPERTS.

21    AGAIN, WE MAY NOT NEED TO DO THAT, BUT WE HAVEN'T SEEN THE

22    REPORT.

23        AND WE WOULD BE VERY SURPRISED IF THE NEW EXPERT ADOPTED

24    WORD-FOR-WORD WHAT MR. MUSIKA DID.

25        ALSO, YOUR HONOR, TO REMIND YOU, THERE'S ANOTHER CONJOINT

1      SURVEY EXPERT, MR. HOUSER, ON WHOM MUSIKA RELIED.

2          SO THE NEW EXPERT WOULD NEED TO ADOPT NOT ONLY MR. MUSIKA'S

3      REPORT WHOLESALE, BUT MR. HOUSER'S FINDING ON THE CONJOINT

4      SURVEY AS WELL.

5          AND THE REPORT IS LIKELY TO CHANGE.  THEY CAN'T REPRESENT,

6      STANDING RIGHT HERE, THAT THE REPORT WILL NEVER CHANGE.

7          AND BECAUSE IT LIKELY IS GOING TO CHANGE, WE NEED AN

8      OPPORTUNITY TO REBUT IT WITH MORE EXPERT TESTIMONY AND

9      POTENTIALLY MORE DISCOVERY.

10         THE COURT:  WELL, I'M SAYING NOTHING IS GOING TO --

11     NOTHING IS GOING TO CHANGE.  IF IT DOES CHANGE, THEN I'M GOING

12     TO VACATE THE TRIAL DATE AND I WILL JUST SET A CMC AFTER

13     APPLE II GOES TO TRIAL.  SO IF THAT'S WHAT YOU WANT, THAT'S

14     WHAT I WILL DO.

15         I SIMPLY DON'T HAVE THE CAPACITY TO RELITIGATE THIS

16     WHOLE -- TO REOPEN THIS ENTIRE CASE.

17         SO LET ME HEAR FROM APPLE.  WHATEVER DATES I SET TODAY WILL

18     BE SUBJECT TO COMPLETELY BEING VACATED IF I FIND THE PARTIES

19     ARE UNREASONABLE.  YOU'VE HAD MORE THAN ENOUGH DUE PROCESS IN

20     THIS COURT.

21         MR. JACOBS:  WE HEAR YOUR HONOR.  WE WILL GUIDE

22     OURSELVES ACCORDINGLY.

23         THE COURT:  SO WHY CAN'T YOU JUST HAVE SOMEONE FROM

24     MR. MUSIKA'S FIRM?  I ASSUME HE DIDN'T WRITE THE WHOLE THING

25     HIMSELF.  HE HAD SUPPORT.  HE HAD STAFF.  WHY CAN'T SOMEONE

1    WITHIN HIS FIRM THEN JUST AFFIRM HIS REPORT PREVIOUSLY AND THEN

2    THIS WILL MAKE THIS A MUCH QUICKER, MUCH SMOOTHER PROCESS?

3              MR. JACOBS:  YOUR HONOR, IT'S A MATTER OF TRIAL

4    STRATEGY AND WHO WOULD BE AN EFFECTIVE WITNESS BEFORE THE JURY

5    AND OUR BEST JUDGMENT ON THAT.  IT'S -- IT'S NO LESS THAN THAT

6    AND IT'S NO MORE THAN THAT.

7         AND I HEAR WHAT YOU'RE SAYING AND WE UNDERSTAND THAT

8    SAMSUNG WILL BE IN HERE RAISING A RUCKUS IF THE REPORT

9    SUBSTANTIVELY VARIES FROM MR. MUSIKA'S REPORT.

10        WE WILL BE GUIDED ACCORDINGLY.

11             THE COURT:  I JUST SEE, FORESEE A HORRIBLE SCENARIO

12   OF JUST 30 BOXES OF MOTIONS TO STRIKE EVERY OTHER LINE OF THESE

13   NEW EXPERT REPORTS, THAT THAT WAS NOT PREVIOUSLY DISCLOSED,

14   THAT'S A NEW THEORY, THAT WAS NOT PREVIOUSLY ASSERTED IN THE

15   LAST TRIAL, ET CETERA.

16        AND IF THAT IS GOING TO HAPPEN, THEN I WILL POSTPONE THIS

17   TRIAL BECAUSE I'VE ALREADY SET MY TRIAL CALENDAR THROUGH -- UP

18   TO 2015.

19             MR. JACOBS:  AND ALL I CAN SAY, YOUR HONOR, IS WE

20   HEAR YOU AND WE WILL BE GUIDED ACCORDINGLY.

21        WE HAVEN'T WRITTEN THE REPORT YET.  I DON'T WANT TO MAKE

22   ABSOLUTE COMMITMENTS WITHOUT ASKING -- WITHOUT THE REPORT BEING

23   WRITTEN.

24        BUT WE UNDERSTAND LOUD AND CLEAR WHAT YOU ARE SAYING.  OUR

25   GOAL IS A SIMPLE, SOON TRIAL.  WE WILL BE CAUTIOUS BEFORE WE

1    JEOPARDIZE THAT.  WE WILL NOT JEOPARDIZE THAT.

2              THE COURT:  SO WHO ARE THE OTHER TESTIFYING EXPERTS

3    THAT -- IS IT INVOTEX?  WHO ARE THE OTHER TESTIFYING EXPERTS

4    THERE --

5              MR. JACOBS:  WELL, I THINK --

6              THE COURT:  -- OTHER THAN MR. MUSIKA?

7              MR. JACOBS:  I THINK WHAT WE WOULD DO IS, IF THE

8    SCHEDULE WORKS OUT, WE WILL ASK -- AND IF WE CAN MEET YOUR

9    HONOR'S DIRECTION ON THE REPORT, WE WOULD LIKELY HAVE

10   MR. VELLTURO TESTIFY AS OUR TESTIFYING EXPERT.

11       THERE IS A POSSIBILITY THAT THERE IS ONE COMPONENT OF WHAT

12   MR. MUSIKA DID THAT IS BEST TESTIFIED TO BY SOMEONE FROM

13   INVOTEX IN THAT SCENARIO.  THAT'S A TRIAL SCENARIO THAT WE HAVE

14   YET TO FINALLY LAND ON TO BE CANDID WITH YOUR HONOR ABOUT WHERE

15   THIS IS GOING.

16       WE WOULD PREFER TO HAVE THAT --

17             THE COURT:  I'M SORRY.  I DIDN'T HEAR THAT LAST -- I

18   DIDN'T UNDERSTAND THAT LAST PART.  CAN YOU --

19             MR. JACOBS:  IT'S JUST A MATTER THAT WE -- THERE'S A

20   DETAIL THAT'S OUTSTANDING, AS WE THINK AHEAD TO THE EXPERT

21   TESTIMONY, WHERE WE MIGHT HAVE A COMPONENT OF THE DAMAGES, A

22   CALCULATION THAT INVOTEX WOULD DO, THAT A WITNESS FROM INVOTEX

23   WOULD DO, MORE OF AN ACCOUNTING CALCULATION THAT SOMEONE THERE

24   IS BEST QUALIFIED TO HANDLE RATHER THAN MR. VELLTURO.

25             THE COURT:  THAT IS A CALCULATION THAT WAS NOT

1    INCLUDED IN LAST YEAR'S TRIAL?

2            MR. JACOBS:  NO.  TO THE CONTRARY.

3            THE COURT:  SO WHAT IS IT?

4            MR. JACOBS:  I'M SORRY, YOUR HONOR.  GIVE ME A

5    MINUTE.

6            THE COURT:  GO AHEAD.

7        (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

8            MR. JACOBS:  SO THIS IS THE QUESTION OF DEDUCTIBLE

9    EXPENSES, WHAT IS A DEDUCTIBLE EXPENSE FOR PURPOSES OF A

10   PROFITS ACCOUNTING, AND IT IS SOMETHING THAT WE MIGHT ASK A --

11   ONE OF THE INVOTEX IN-HOUSE PEOPLE, IF YOU WILL, TO COVER

12   RATHER THAN MR. VELLTURO.  WE WOULD LIKE TO RETAIN THE

13   FLEXIBILITY TO DO THAT.

14           MR. PRICE:  YOUR HONOR, YOU MIGHT RECALL THAT ONE OF

15   THE KEY ISSUES ON THE DAMAGES IS, WHAT WERE THE COSTS?  I MEAN,

16   THAT REALLY WAS THE DIFFERENCE IN THE TESTIMONY.

17           THE COURT:  UM-HUM.

18           MR. PRICE:  MR. JACOBS SAID THIS IS ABOUT TRIAL

19   STRATEGY, AND IT REALLY IS ABOUT GAINING AN UNFAIR ADVANTAGE.

20       BEFORE YOU HAD, YOU KNOW, A C.P.A. VERSUS A C.P.A., YOU

21   KNOW?  THE JURY COULD SEE, THESE ARE BEAN COUNTERS VERSUS BEAN

22   COUNTERS APPLYING THE EXPERTISE THEY HAVE AS C.P.A.'S.

23       NOW WE'RE TOLD, FOR THE FIRST TIME, THAT THE EXPERT WILL

24   PROBABLY BE DR. VELLTURO.  HE IS, TO MY UNDERSTANDING, NOT A

25   C.P.A.  HE IS AN ECONOMIST.

```
 1        AND I DON'T CARE IF THEY DON'T ARGUE IT, THE JURY IS VERY

 2   LIKELY TO THINK, "OH, WOW, AN ECONOMIST.  I MEAN, THAT'S A

 3   SIGNIFICANT POSITION.  I MEAN, I'VE GOT A C.P.A. WHO DOES MY

 4   TAXES."

 5        SO THIS IS REALLY TRYING TO CHANGE, YOU KNOW, THE NATURE OF

 6   THIS TRIAL ON DAMAGES.

 7             THE COURT:  IF APPLE GETS A NEW EXPERT, I'LL ALLOW

 8   SAMSUNG TO GET A NEW EXPERT ON DAMAGES.

 9             MR. PRICE:  AND BECAUSE OF THE EXPERTISE, WE WOULD

10   PROBABLY NEED DISCOVERY.  SO ONE THING WE MIGHT DO IS WAIT

11   UNTIL WE FIND OUT EXACTLY WHAT APPLE IS UP TO HERE, WHAT'S IN

12   THEIR REPORT, WHO'S THE EXPERT, YOU KNOW, HOW IS THIS GOING TO

13   CHANGE?

14             THE COURT:  YOU KNOW WHAT?  YOU KNOW WHAT?  I THINK

15   YOU ALL DON'T UNDERSTAND HOW CLOSE YOU ARE NOT TO GETTING A

16   TRIAL.  OKAY?

17        DO YOU KNOW HOW MANY TRIALS I'LL HAVE IN APPLE'S CASES NEXT

18   YEAR?  SHOULD I JUST REMIND YOU?  SO WE HAVE APPLE II MARCH 31

19   THROUGH APRIL 25; I HAVE THE IN RE: HIGH TECH TRIAL IN WHICH

20   APPLE IS ONE OF THE SEVEN DEFENDANTS, THAT'S SET FOR TRIAL

21   MAY 27TH THROUGH JULY 17TH; THE MDL PRIVACY CASE AGAINST APPLE

22   IS AUGUST 4TH THROUGH AUGUST 18TH OF 2014.

23        OKAY?  SO YOU HAVE GOTTEN A LOT OF DUE PROCESS IN THIS

24   COURT.  I'M ASKING YOU TO KEEP IT NARROW, NO NEW THEORIES, NO

25   NEW CALCULATIONS.
```

```
 1        BUT YOUR SAYING, "NO, NOW WE'RE GOING TO REDO THE COSTS

 2   WHICH THEY DIDN'T DO REALLY DURING THE LAST TRIAL" IS ALREADY

 3   SIGNALLING TO ME WHAT IS GOING TO HAPPEN.

 4        SO I WAS GOING TO GIVE YOU A TRIAL DATE TODAY, BUT NOW I'M

 5   NOT GOING TO.

 6            MR. JACOBS:  YOUR HONOR, WE --

 7            THE COURT:  WE CAN SET THIS FOR A FURTHER CMC AFTER

 8   YOU DISCLOSE YOUR EXPERT AND THEN I'LL DECIDE AT THAT POINT

 9   WHETHER I WANT TO TRY THIS CASE AND WHEN.  OKAY?  THAT IS

10   WITHIN MY DISCRETION.  OKAY?

11        SO WHEN SHOULD WE COME BACK FOR A CMC?  I'M NOT GOING TO

12   GIVE YOU A TRIAL DATE TODAY.

13            MR. JACOBS:  YOUR HONOR, WE NEED -- I'M SORRY.

14   WE'RE -- I REALLY AM TRYING TO MEET THE COURT'S OBJECTIVES

15   HERE.

16        THE POINT OF RETAINING SOME FLEXIBILITY ON WHO WOULD

17   TESTIFY WAS TO MAKE SURE OUR EXPERT WOULD BE AVAILABLE WHEN WE

18   HAVE A TRIAL DATE, SO THERE IS A KIND OF -- THERE IS,

19   REGRETTABLY, A CART BEFORE THE HORSE PROBLEM HERE.

20            THE COURT:  OKAY.  BUT WHAT YOU SAID ABOUT COSTS,

21   THAT IS A NEW ISSUE.

22            MR. JACOBS:  NO, COST IS NOT -- NO, DEDUCTIBLE

23   EXPENSE IS NOT A NEW ISSUE AT ALL.  MR. MUSIKA --

24            THE COURT:  OKAY.  THEN WHY DO YOU HAVE TO REDO

25   EXPENSES?  THE ONLY THING THAT WAS INCORRECT WAS THE NOTICE
```

```
 1      DATE.  THAT HAS NOTHING TO DO WITH EXPENSES OF APPLE.  SO --
 2             MR. JACOBS:  NO, NO, NOT APPLE EXPENSES.
 3             THE COURT:  SO WHY DOES THAT HAVE TO BE REDONE?
 4             MR. JACOBS:  SORRY.  NOT APPLE EXPENSES, YOUR HONOR.
 5      I'M SORRY I WASN'T CLEAR.
 6             THE COURT:  WHAT?
 7             MR. JACOBS:  YOUR HONOR, IGNORE -- FORGET THIS.  WE
 8      WILL HAVE A SINGLE --
 9             THE COURT:  EXPENSES OF WHAT?
10             MR. JACOBS:  OF SAMSUNG'S DEDUCTIBLE -- RECALL THAT A
11      MAJOR ISSUE AT TRIAL FOR INFRINGER'S PROFITS WAS WHETHER WHAT
12      SAMSUNG HAD CATEGORIZED AS GNA KINDS OF EXPENSES WAS, IN FACT,
13      DIRECTLY ATTRIBUTABLE TO THE SPECIFIC PRODUCTS.  AND THAT'S
14      WHAT THE INSTRUCTION SAYS.  IT SAYS DIRECTLY ATTRIBUTABLE.
15         IN THE NEW TRIAL, BOTH SIDES WILL BE ARGUING THAT ISSUE
16      AGAIN TO THE JURY.  WE HAVE TO ARGUE THAT ISSUE TO THE JURY.
17      WE CAN'T NOT ARGUE THAT ISSUE TO THE JURY.
18         AND OUR WITNESS WILL SAY THAT WHAT SAMSUNG IS PRESENTING TO
19      THE JURY AS DEDUCTIBLE EXPENSES ARE, IN FACT, NOT DIRECTLY
20      ATTRIBUTABLE.
21             THE COURT:  BUT WHAT DOES THAT HAVE TO DO WITH THE
22      NOTICE DATE?  THAT IS THE PIECE THAT I'M MISSING.
23             MR. PRICE:  THAT HAS NOTHING TO DO WITH THE NOTICE
24      DATE.
25         THIS HAS TO DO WITH WHAT THE INFRINGER'S PROFITS ARE.
```

```
1          I MEAN, THERE WAS A HUGE DIFFERENCE IN NUMBERS BETWEEN

2     THEIR EXPERT AND OURS BECAUSE MR. WAGNER DEDUCTED COSTS.

3          AND NOW WE'RE HEARING THAT THEY'RE GOING TO, YOU KNOW, HAVE

4     TWO EXPERTS.

5               THE COURT:  GET A DO-OVER.

6               MR. JACOBS:  WE'LL HAVE A SINGLE EXPERT.

7               THE COURT:  YOU'LL GET A DO-OVER ON EXPENSES.  I

8     UNDERSTAND.

9          FORGET IT THEN.  NO TRIAL DATE.  WE'LL SET ANOTHER CMC.

10         I'M TRYING TO CONVEY HOW SERIOUS I AM THAT THIS NEEDS --

11    I'M NOT GOING TO LET YOU GET A DO-OVER.  YOU ARE NOT GOING TO

12    BE ABLE TO RAISE NEW THEORIES IN THIS CASE.

13              MR. JACOBS:  IT'S NOT A NEW THEORY, YOUR HONOR.  IT'S

14    RIGHT IN MR. MUSIKA'S REPORT.

15              THE COURT:  WHAT IS THE DIFFERENCE OF A CORRECTED

16    NOTICE DATE ON EXPENSES?  YOU HAVE NOT BEEN ABLE TO ARTICULATE

17    WHAT IS THE CONNECTION THERE.  HOW DOES A NOTICE DATE OF

18    APRIL 15TH AFFECT THE EXPENSE?

19              MR. JACOBS:  WHAT I THINK -- LET ME -- WE'VE THOUGHT

20    ABOUT THIS, YOUR HONOR, AND IF YOU JUST GIVE ME A MINUTE HERE,

21    I THINK I CAN INTERPRET IN OUR LEGAL FRAMEWORK WHAT THE COURT

22    IS SAYING.

23         WHAT THE COURT IS SAYING IS THE JURY -- THE COURT BELIEVES

24    THAT THE JURY MADE A FINDING ON DEDUCTIBLE EXPENSES AND AWARDED

25    US A PERCENTAGE OF OUR SOUGHT AFTER LOST PROFITS.
```

```
1        AND WHAT THE COURT IS, IN ESSENCE, PROPOSING IS THAT WE

2   HAVE A NEW TRIAL LIMITED TO THE REVERSE ENGINEERING OF THE

3   PRIOR JURY VERDICT AS IT RELATES TO DEDUCTIBLE EXPENSES.

4        THE COURT WOULD BE, IN EFFECT, TAKING THE REVERSE

5   ENGINEERING AND MAKING IT, THAT PERCENTAGE, A KIND OF A LAW OF

6   THE CASE.

7             THE COURT:  NO, NO, NO.  I'M ASKING YOU TO EXPLAIN,

8   WHAT IS THE RELATION BETWEEN A NEW NOTICE DATE TO EXPENSES?

9             MR. JACOBS:  THERE IS NO --

10            THE COURT:  WHAT IS THAT RELATIONSHIP?  WHY DOES A

11  NEW NOTICE DATE NECESSITATE A NEW ANALYSIS AND A NEW

12  CALCULATION ON EXPENSES?  THAT'S WHAT I DON'T UNDERSTAND.

13            MR. JACOBS:  BECAUSE THE ONLY WAY YOU COULD NOT DO

14  THAT IS TO ACCEPT SOME PRIOR ADJUDICATION OF WHAT THE PROPER

15  DEDUCTIBLE EXPENSES WERE, AND THE COURT ACCEPTED SAMSUNG'S

16  ARGUMENT ON THIS POINT FOR PURPOSES OF DECIDING WHETHER THE

17  JURY'S AWARD WAS EXCESSIVE.

18       BUT TO NOW TURN THAT REVERSE ENGINEERING INTO A RESTRICTION

19  IN THE NEW DAMAGES TRIAL IS TO TAKE THAT REVERSE ENGINEERING

20  WAY, WAY, WAY TOO FAR.

21       THERE'S NO RELATIONSHIP, AS SUCH, BETWEEN THE NEW NOTICE

22  DATE --

23            THE COURT:  I GUESS I DON'T UNDERSTAND.  WHY DO YOU

24  HAVE TO GIVE NEW CALCULATIONS ON EXPENSES?

25            MR. JACOBS:  WE WILL NOT GIVE NEW CALCULATIONS ON
```

1    EXPENSES.

2        WE WILL SIMPLY ARGUE THAT -- OUR DAMAGES EXPERT WILL ARGUE

3    THAT SAMSUNG'S ASSIGNMENT IS INCORRECT, JUST AS IT DID IN THE

4    FIRST TRIAL.

5        THE COURT:  THAT'S NOT WHAT YOU SAID.  YOU SAID YOU

6    NEED TO GET SOMEONE TO SUPPLEMENT DR. VELLTURO FROM INVOTEX --

7        MR. JACOBS:  YES.

8        THE COURT:  -- TO REDO THE CALCULATION EXPENSES.

9        MR. JACOBS:  NO.  I'M SORRY.  IF I SAID THAT, I

10   MISSPOKE.

11       WE'RE NOT GOING TO REDO THE CALCULATIONS.  IT'S THE SAME

12   CALCULATION OF DEDUCTIBLE EXPENSES.

13       AND WE'LL HAVE A SINGLE EXPERT, YOUR HONOR.  WE WILL NOT GO

14   WITH TWO EXPERTS.  WE'LL FIGURE OUT HOW TO HANDLE THAT

15   DEDUCTIBLE EXPENSE ISSUE WITHOUT HAVING AN ADDITIONAL EXPERT.

16       MR. PRICE:  AND THEN THE QUESTION IS, IS THAT

17   ADDITIONAL EXPERT GOING TO BE AN ECONOMIST SO THEY CAN NOW PUT

18   AN ECONOMIST BEFORE THE JURY AND TRUMP US ON QUALIFICATIONS?

19   OR IS IT GOING TO BE WHAT IT WAS BEFORE, WHICH IS A C.P.A.?

20       THE COURT:  IT NEEDS TO BE A C.P.A.  OTHERWISE IF

21   THEY GET AN ECONOMIST, YOU'LL GET AN ECONOMIST, IT'LL REOPEN

22   DISCOVERY AND I WILL NOT SET THIS TRIAL.  I WON'T SET THE TRIAL

23   DATE.

24       I MEAN, NOT EVERY JUDGE TRIES A CASE IN 14 MONTHS LIKE I

25   DID THE FIRST ONE.  I AM NOT GOING TO GIVE YOU A TRIAL DATE.

```
 1          IF YOU ARE UNREASONABLE AND TAKE NO CONSIDERATION OF THE
 2     COURT'S RESOURCES, THEN YOU DESERVE TO HAVE THAT KIND OF --
 3              MR. JACOBS:  WE ARE --
 4              THE COURT:  -- THAT KIND OF TRIAL DATE WHICH IS GOING
 5     TO BE MUCH, MUCH LATER.
 6          I ALREADY TOLD YOU, I WILL BE IN TRIAL ON APPLE CASES FOR
 7     ABOUT SIX, SEVEN MONTHS NEXT YEAR.  OKAY?
 8          SO IF YOU'RE ASKING ME TO GIVE YOU YET ONE MORE TRIAL, THEN
 9     I'M ASKING YOU TO KEEP THIS VERY LIMITED AND NARROW.  NO NEW
10     THEORIES.  NO NEW NUMBERS.  NO NEW PRODUCTS.  NO NEW METHODS.
11          KEEP THIS NARROW SO THAT WE CAN LIMIT THIS SO THAT WE'RE
12     NOT REOPENING AND HAVING THE SAME NIGHTMARE WE'VE HAD
13     PREVIOUSLY.
14              MR. JACOBS:  WE WILL STIPULATE THAT THE -- WE -- IF
15     ALL OF US AGREE, WE CAN QUALIFY MR. VELLTURO AS AN ACCOUNTANT
16     EVEN THOUGH HE ISN'T.
17          I MEAN, IF THAT'S REALLY SAMSUNG'S WORRY, SAMSUNG COULD
18     SIMPLY STIPULATE TO HIS QUALIFICATIONS AND WE WON'T UTTER THE
19     WORD THAT HE'S AN ECONOMIST IF THAT'S WHAT THIS IS ALL ABOUT.
20              MR. PRICE:  HERE'S --
21              MR. JACOBS:  IF THEY WILL STIPULATE THAT HE'S
22     QUALIFIED TO TESTIFY, WE'LL GO THROUGH HIS CREDENTIALS WITHOUT
23     MENTIONING THAT HE'S A PH.D. ECONOMIST OR WHATEVER HE IS.
24              MR. PRICE:  THAT'S THE FUNNY THING.  HE'S NOT
25     QUALIFIED TO GIVE THE OPINION THEY WANT HIM TO GIVE.
```

```
1            MR. JACOBS:  NOW THAT'S A DIFFERENT --

2            MR. PRICE:  IF THE FIRST TRIAL, IT WAS AN OPINION BY

3    A C.P.A. ABOUT WHAT DEDUCTIBLE COSTS WERE, HUGE ISSUE, HOW TO

4    GET THESE THINGS, AND MR. JACOBS JUST SAID, "WE NEED TO BRING

5    IN AN ACCOUNTANT TO SUPPLEMENT VELLTURO BECAUSE VELLTURO IS NOT

6    QUALIFIED" --

7            THE COURT:  OKAY.  I'M SORRY.

8        YOU HAVE YOUR CLIENT HERE.  ASK IF YOU'RE GOING TO INSIST

9    ON AN ECONOMIST, OKAY?

10       IF YOU INSIST ON AN ECONOMIST, THEN I'M GOING TO GIVE

11   SAMSUNG THE OPPORTUNITY TO SELECT AN ECONOMIST AND WE WILL

12   REOPEN DISCOVERY.  OKAY?

13           MR. JACOBS:  GIVE ME A MINUTE, YOUR HONOR.

14           THE COURT:  GO AHEAD.

15       (PAUSE IN PROCEEDINGS.)

16           MR. JACOBS:  AGREED, YOUR HONOR.  OUR SUBSTITUTE

17   EXPERT FOR TERRY MUSIKA WILL BE A C.P.A.

18           THE COURT:  OKAY.  NOW, MR. PRICE, WHAT'S YOUR

19   RESPONSE TO THAT?

20           MR. PRICE:  WELL, I GUESS THE RESPONSE IS WE --

21   WHOOPS, SORRY.  -- IS THAT WE NEED TO KNOW WHO, WE NEED TO KNOW

22   WHAT THEIR OPINION IS GOING TO BE AND, YOU KNOW, WHETHER --

23   IT'S AMAZING WE'RE HERE AND WE DON'T KNOW WHO.  I DON'T

24   UNDERSTAND WHY WE'RE HERE AND WE DON'T KNOW WHO.

25           MR. JACOBS:  WE TOLD THEM AMONG WHOM IT COULD BE,
```

1    YOUR HONOR.  I THINK THIS HAS NOW TURNED INTO A GRAVER ISSUE.

2        THE COURT:  WELL, I HAVEN'T HEARD.  I'VE HEARD

3    DR. VELLTURO AND MAYBE SOMEBODY FROM INVOTEX.

4        MR. JACOBS:  WELL, NOW WE'RE GOING TO FIND A C.P.A.,

5    YOUR HONOR, BECAUSE -- AND THE BEST C.P.A., THE MOST EFFECTIVE

6    TRIAL WITNESS THAT CAN TESTIFY ON THE DATE THAT YOU SET FOR A

7    NEW TRIAL, THAT'S WHAT WE'RE GOING TO GO OUT AND FIND, AND WHO

8    CAN ADOPT MR. MUSIKA'S REPORT WITH VARIATIONS ONLY -- AS

9    LIMITED --

10        THE COURT:  CAREFUL.

11        MR. JACOBS:  AS LIMITED VARIATIONS AS POSSIBLE.

12        THE COURT:  I'M NOT GOING TO ALLOW ANY VARIATIONS

13    OTHER THAN THE NOTICE DATE.  I'M NOT GOING TO ALLOW ANY OTHER

14    VARIATIONS OTHER THAN THE NOTICE DATE.  I -- IS THAT CLEAR?

15        MR. JACOBS:  THAT SOUNDS LIKE A RULING.  WE'LL TAKE

16    IT AS A RULING.

17        THE COURT:  THAT IS A RULING.

18        MR. JACOBS:  WE'LL TAKE IT AS SUCH.

19        THE COURT:  THERE ARE NO VARIATIONS OTHER THAN THE

20    NOTICE DATE.  THIS IS JUST REDOING THE LAST TRIAL ON THIS ONE

21    LIMITED ISSUE.

22        MS. MAROULIS:  YOUR HONOR, THERE ARE SOME ISSUES THAT

23    WILL COME UP REGARDLESS OF WHAT THE REPORT LOOKS LIKE, AND AT

24    LEAST TWO OF THEM ARE THIS:

25    A NEW PERSON MIGHT BE SUBJECT TO DAUBERT CHALLENGE FOR

```
1     THEIR QUALIFICATIONS, THAT'S ONE.

2         THE SECOND ONE WE FLAGGED IN OUR PAPERS, WHICH IS THE

3     PRODUCTS THAT YOUR HONOR ENTERED THE FINAL ORDER ON, THOSE ARE

4     THE LOST PROFITS THEORIES.  THEY ACTUALLY KNOW -- THE JURY

5     WOULD KNOW LOST PROFITS FOR THE PRODUCTS THAT ARE GOING TO NEW

6     TRIAL POTENTIALLY, SO WE SHOULD BE ABLE TO BRIEF THAT AND

7     EXPLAIN WHY APPLE MAY OR MAY NOT BRING THAT THEORY FORWARD.

8         SO WHEN YOUR HONOR SAYS WE'LL BE LIMITED TO EVERYTHING LIKE

9     IN THE OLD CASE, WE WANT TO MAKE SURE IT'S CLEAR THAT THE

10    MOTION PRACTICE MIGHT BE DIFFERENT AND THERE WILL BE MOTIONS

11    COMING FORWARD, EVEN IF THE REPORT IS VERY SIMILARLY HUED TO

12    THE OLD REPORT.

13            MR. JACOBS:  YOUR HONOR, THIS IS --

14            THE COURT:  WAIT.  CAN I -- CAN YOU -- I'M SORRY.  I

15    DIDN'T UNDERSTAND WHAT YOU WERE SAYING ABOUT THE AVAILABLE

16    REMEDIES.

17            MS. MAROULIS:  YOUR HONOR, THE JURY REJECTED THE

18    FINDING OF LOST PROFITS AS TO THE PRODUCTS THAT YOUR HONOR

19    DESIGNATED FOR A NEW TRIAL.

20        SO SAMSUNG SHOULD BE ABLE TO SEEK EXCLUSION OF LOST PROFITS

21    THEORIES IF WE SEE IT IN THE NEW REPORT, BECAUSE WE DON'T KNOW

22    WHAT WE'LL SEE IN APPLE'S EXPERT REPORT.

23            MR. JACOBS:  THAT'S AN INFERENCE, YOUR HONOR.

24        IT'S -- THIS IS BACK TO THE POINT ABOUT HOW MUCH WE TAKE

25    THIS REVERSE ENGINEERING OF THE VERDICT AND TURN IT INTO LAW OF
```

1    THE CASE.  WE BELIEVE THAT WOULD BE LEGAL ERROR.

2        IT'S ONE THING TO LOOK AT -- WE DISAGREE WITH THE REVERSE

3    ENGINEERING THAT WAS DONE, BUT IT'S ONE THING TO DO THAT AND

4    AWARD A NEW TRIAL.

5        IT'S ANOTHER THING TO SAY, "WELL, I LOOK AT THIS JURY AND

6    THE JURY COULDN'T POSSIBLY HAVE AWARDED LOST PROFITS BASED ON

7    THIS NUMBER; THEREFORE, APPLE IS PRECLUDED FROM SEEKING LOST

8    PROFITS IN THE NEW TRIAL."

9        THE COURT:  WELL, I AGREE WITH THAT.  WE'RE REDOING

10   LAST YEAR'S TRIAL.

11       THAT DOESN'T MEAN THAT A THEORY THAT WAS PRESENTED TO LAST

12   YEAR'S JURY CANNOT BE PRESENTED IN A NEW TRIAL.  SO THAT

13   REQUEST IS GOING TO BE DENIED.

14       MS. MAROULIS:  YOUR HONOR, THE PRIOR JURY REJECTED

15   THAT, THE LOST PROFITS AS TO THESE SET OF PRODUCTS.

16       THE COURT:  I HEAR YOU, AND THE NEXT JURY MAY, TOO.

17       BUT I'M JUST SAYING, I'M GOING TO ALLOW -- WHATEVER

18   THEORIES EITHER SIDE PRESENTED TO THE LAST JURY CAN BE

19   PRESENTED TO THIS JURY.

20       YOU CAN -- YOU CAN PRESENT LESS IF YOU WANT TO, BUT YOU

21   CANNOT PRESENT MORE.  OKAY?

22       WHAT -- I UNDERSTAND ON DAUBERT ON QUALIFICATIONS.  I

23   WOULD --

24       MR. JACOBS:  IT'S NOT REALLY DAUBERT, YOUR HONOR.

25   IT'S A -- DAUBERT IS METHODOLOGY AND I THINK WE'VE PASSED ALL

```
1     THE METHODOLOGICAL CHALLENGES.

2         I THINK THAT'S ONE OF THE BENEFITS THAT WE'RE ACCRUING FROM

3     YOUR HONOR'S DIRECTION TO US IS WE WILL NOT HAVE DAUBERTS

4     BECAUSE DAUBERTS WERE DONE, AND DONE TO A FARE-THEE-WELL, LAST

5     YEAR.

6         IF THEY WANT TO CHALLENGE -- HAVING COERCED US INTO A

7     C.P.A. AND NOW SAYING, "OH, THE C.P.A. IS NOT QUALIFIED," FINE.

8             THE COURT:  ALL RIGHT.  WELL, WHAT ABOUT A -- THIS IS

9     WHAT I WAS GOING TO SUGGEST:  HAVE APPLE'S EXPERT -- IDENTIFY

10    ITS NEW C.P.A. EXPERT, ONE PERSON, BY MAY 13TH.

11            MR. JACOBS:  OKAY.

12            THE COURT:  OKAY?  APPLE SUBMIT -- I DON'T EVEN KNOW

13    IF YOU WOULD REALLY NEED ALL THESE DATES, OR ALL THIS TIME, BUT

14    I GUESS BECAUSE YOU'RE GETTING A NEW PERSON UP TO SPEED -- JUNE

15    24TH, WHICH IS I THINK THE DATE YOU REQUESTED.

16            MR. JACOBS:  IT'S TWO DAYS BEFORE, BUT THAT'S FINE,

17    YOUR HONOR.

18            THE COURT:  OKAY.  SAMSUNG'S REPORT, JULY 26TH.  YOU

19    REQUESTED, I THINK, 30 DAYS.

20        EXPERT DEPOSITIONS CONCLUDED BY AUGUST 7TH.

21        DOES THAT GIVE YOU ENOUGH TIME OR IS THAT TOO TIGHT?

22            MS. MAROULIS:  THAT MIGHT BE TOO TIGHT, YOUR HONOR,

23    BECAUSE WE'LL ALSO HAVE EXPERT DISCOVERY IN THE FOLLOW-ON CASE.

24            THE COURT:  OH, OKAY.  WHAT ABOUT AUGUST 30TH?

25    AUGUST 23RD?
```

1          MS. MAROULIS:  AUGUST 30TH, YOUR HONOR.

2          MR. JACOBS:  I THINK THE 23RD IS PLENTY, YOUR HONOR.

3    THAT IS NEARLY A MONTH FOR EXPERT DEPOSITIONS.

4          THE COURT:  OKAY.  THEN I WAS GOING TO ALLOW ONLY

5    SAMSUNG, NOT APPLE, ONE NO MORE THAN FOUR-PAGE, LET'S CALL IT A

6    RULE 702 OBJECTION BASED ON QUALIFICATIONS ALONE.

7          BECAUSE EVERYONE IS JUST GOING TO BE USING THE THEORIES

8    THAT HAVE ALREADY GONE THROUGH EXTENSIVE MOTION PRACTICE LAST

9    YEAR, THERE WILL BE NO NEW CHALLENGES TO THEORIES.  OKAY?

10          BUT IF YOU WANT TO CHALLENGE APPLE'S EXPERT ON WHETHER HE

11   OR SHE IS QUALIFIED TO GIVE THE OPINION, I THINK THAT IS

12   LEGITIMATE.  OKAY?  SO FOUR PAGES AT MOST.

13          MS. MAROULIS:  THANK YOU, YOUR HONOR.

14          AND WE HAVE TO RESERVE OUR RIGHT TO CHALLENGE IF THEY

15   CHANGE THE REPORT SUBSTANTIALLY, WHICH THEY CLAIM RIGHT NOW

16   THEY WON'T.

17          THE COURT:  OKAY.  SO I WAS GOING TO SET A DATE FOR

18   THAT AS WELL.

19          NOW, I'M GOING TO SET A HEARING DATE.  I WOULD LEAVE IT TO

20   THE PARTIES TO SET A BRIEFING SCHEDULE, ALTHOUGH I WANT FINAL

21   BRIEFS THREE WEEKS IN ADVANCE OF THE HEARING DATE.

22          BUT OCTOBER 10TH OF 2013 I WOULD HEAR THE ONE SAMSUNG

23   MOTION CHALLENGING THE QUALIFICATION SOLELY OF APPLE'S NEW

24   EXPERT AND ANY MOTIONS TO STRIKE FROM EITHER EXPERT REPORT.

25          NOW, LET'S PUT PAGE LIMITS ON THIS.  AND I DON'T THINK I

```
 1        NEED -- I CERTAINLY DON'T THINK I NEED A REPLY ON THE 702.

 2            BUT WE'LL SAY THAT APPLE CAN FILE A FOUR-PAGE RESPONSE TO

 3        SAMSUNG'S FOUR-PAGE OBJECTION TO THE QUALIFICATIONS OF YOUR NEW

 4        EXPERT.  NO REPLY ON THAT ONE.

 5                MR. JACOBS:  OKAY.  THANK YOU.

 6                THE COURT:  NOW, MOTION TO STRIKE FROM EACH OTHER'S

 7        EXPERT REPORTS, I WOULD -- CAN WE LIMIT THAT TO TEN PAGES?

 8                MR. JACOBS:  IS IT CLEAR, YOUR HONOR, THAT WE'RE

 9        NOT --

10                THE COURT:  THERE REALLY SHOULDN'T BE ANYTHING.

11                MR. JACOBS:  THERE SHOULDN'T BE ANYTHING.

12                THE COURT:  IF EVERYONE FOLLOWS MY RULING OF NO NEW

13        THEORIES, NO NEW METHODOLOGIES, NO NEW DATA, NO NEW DAMAGES

14        PERIOD, THERE REALLY SHOULDN'T BE.

15            BUT I'M NOT TOTALLY OPTIMISTIC BASED ON MY EXPERIENCE WITH

16        THIS CASE OVER THE LAST TWO YEARS.

17            SO, I MEAN, I WOULD LIKE TO LIMIT THAT FURTHER, IF AT ALL

18        POSSIBLE, IN TERMS OF PAGE LIMITS.

19            AND I THINK A REPLY ACTUALLY MIGHT BE HELPFUL ON THAT

20        SCORE.

21            SO -- AND I ASSUME THAT THERE WILL PROBABLY BE

22        CROSS-MOTIONS WOULD BE MY GUESS.

23                MR. JACOBS:  CAN IT BE CLEAR, YOUR HONOR, THAT THOSE

24        MOTIONS LITERALLY ONLY GO TO THE -- TO ANY DIFFERENCES?

25                THE COURT:  YES, ANY DIFFERENCES FROM LAST TIME.
```

1          MR. JACOBS:  SO WE'RE -- TO STATE IT AGAIN, THE

2    OBVERSE, WE ARE NOT GOING TO BE RELITIGATING MR. WAGNER'S OR

3    MR. MUSIKA'S REPORTS.

4       THE ONLY PROPER FOCUS OF ANY MOTIONS TO STRIKE WILL BE THE

5    INCREMENT, THE CHANGE IN THE NEW REPORTS?

6          THE COURT:  YES.

7          MR. JACOBS:  OKAY.

8          MS. MAROULIS:  YOUR HONOR, IN TERMS OF PRESERVING THE

9    RECORD FOR APPEAL --

10         THE COURT:  YES.

11         MS. MAROULIS:  -- WE MIGHT NEED TO SIMPLY STATE OR

12   RESTATE OUR PRIOR MOTIONS AND OBJECTIONS.  WE'LL DOUBLE-CHECK

13   THAT.

14         THE COURT:  OKAY.

15         MS. MAROULIS:  BUT WE MIGHT HAVE TO, AT SOME POINT IN

16   THE HEARING OR IN WRITING, SIMPLY SAY THAT WE'RE RESTATING THEM

17   SO THAT THEY'RE NOT WAIVED, MUCH THE SAME WAY AS JURY

18   INSTRUCTIONS, YOU HAVE TO REPEAT IT MULTIPLE TIMES.

19         THE COURT:  OKAY.  THAT'S FINE.

20      I'M HOPING THAT YOU MAY JUST BE ABLE TO, YOU KNOW, PER

21   STIPULATION, BOTH PARTIES PRESERVE THE PREVIOUS OBJECTIONS THAT

22   THEY MADE TO METHODOLOGIES AND THEORIES AND CALCULATIONS OF THE

23   EXPERT, SOMETHING LIKE THAT.

24      BUT, YES, I DON'T WANT TO RELITIGATE -- ANYTHING THAT'S

25   ALREADY BEEN DECIDED AND HAS ALREADY SURVIVED A DAUBERT MOTION

1     OR A MOTION IN LIMINE WILL CONTINUE TO BE ADMISSIBLE AND PART

2     OF THE CASE.

3          SO LET'S SET LIMITS ON THAT IN TERMS OF PAGES.  WHAT --

4           MS. MAROULIS:  TEN PAGES ON MOVING PAPERS, TEN PAGES

5     ON OPPOSITION, AND SEVEN ON REPLY?

6           THE COURT:  WELL, I'M REALLY HOPING THAT IF -- IF MY

7     RULING AS TO THE SCOPE OF THE NEW EXPERT REPORTS IS FOLLOWED,

8     WE REALLY SHOULDN'T NEED --

9           MR. JACOBS:  SEVEN, SEVEN, FOUR, YOUR HONOR?

10          THE COURT:  YOU KNOW, WE SHOULDN'T NEED 54 PAGES OF

11    BRIEFING ON THIS, RIGHT?

12          MR. JACOBS:  SEVEN, SEVEN, FOUR?

13          THE COURT:  SO YOU'RE NOT OPTIMISTIC, EITHER.

14          MR. JACOBS:  NO, I AM.  I JUST -- I DON'T THINK THIS

15    IS ABOUT PAGE LIMITS SO MUCH.  I ACTUALLY THINK IT'S ABOUT

16    SCOPE, AND IF THERE ARE NEW ISSUES THAT ARISE, THEY SHOULD BE

17    VENTILATED.

18          THE COURT:  ARE YOU SATISFIED WITH THOSE LIMITS?

19          MS. MAROULIS:  THAT WOULD BE FINE, YOUR HONOR.

20          THE COURT:  SEVEN, SEVEN, FOUR?

21          MS. MAROULIS:  THAT WOULD BE FINE, YOUR HONOR.

22          THE COURT:  ALL RIGHT.  SO SEVEN, SEVEN, FOUR.

23       WORK OUT THE BRIEFING SCHEDULE.  IF YOU NEED TO THEN MOVE

24    UP THE EXPERT DEPOSITION DISCOVERY DEADLINE TO GET THE

25    BRIEFING -- I WOULD LIKE, PLEASE, THREE WEEKS WITH THE REPLY

1      BRIEFS AND THE FINAL BRIEFS FOR EACH MOTION.

2              MS. MAROULIS:  IS THE MOTION TO STRIKE HERE DIFFERENT

3      FROM OCTOBER 10, OR IT'S THE SAME?

4              THE COURT:  NO.  WE'LL TRY TO DO BOTH AT THE SAME

5      TIME, PLEASE.

6        OKAY.  NOW, THERE IS GOING TO BE AN ISSUE OF WHAT THE JURY

7      HEARS ABOUT INFRINGEMENT AND WHETHER THAT'S DONE THROUGH

8      WITNESSES AND WITNESS TESTIMONY, WHETHER THAT'S DONE THROUGH

9      JURY INSTRUCTIONS.

10       I FANTASIZE ABOUT A STIPULATION, BUT I DON'T THINK THAT'S

11     GOING TO HAPPEN.

12       BUT I WOULD LIKE SOME OPPORTUNITY TO HAVE YOU ALL MAKE A

13     PROPOSAL AS TO WHAT WOULD BE THE BEST WAY FOR THAT INFORMATION

14     TO COME IN, EXACTLY HOW IT SHOULD BE WORDED.

15             MS. MAROULIS:  YOUR HONOR, PERHAPS THE PARTIES CAN

16     MEET AND CONFER SOMETIME IN THE NEXT MONTH OR TWO --

17             THE COURT:  OKAY.

18             MS. MAROULIS:  -- AND FIGURE OUT SOMETHING TO PROPOSE

19     TO THE COURT JOINTLY.

20             THE COURT:  OKAY.  I WOULD SET A HEARING FOR THAT IF

21     YOU -- FOR OCTOBER 17TH, AND THAT COULD ALSO BE A JURY

22     INSTRUCTION CONFERENCE AS WELL, MS. MAROULIS, IF YOU WANT TO

23     HANDLE THAT TOGETHER, BOTH --

24             MS. MAROULIS:  YOUR HONOR, THE REASON TO MOVE IT OUT

25     A LITTLE BIT IS IF DAUBERT CHALLENGES OR MOTIONS TO STRIKE

1       AFFECT OTHER RULINGS.

2            WE CAN TALK ABOUT THE SCOPE PERHAPS, BUT JURY INSTRUCTIONS

3       SHOULD FOLLOW THE PRIOR RULINGS OF YOUR HONOR.

4                 MR. JACOBS:  I'D BE SURPRISED IF THERE'S A CHANGE IN

5       JURY INSTRUCTIONS, YOUR HONOR.

6                 THE COURT:  WELL, I MEAN, I GUESS -- YEAH, HOPEFULLY

7       THE JURY INSTRUCTIONS WILL NOT CHANGE.

8            BUT MY -- HOWEVER YOU ALL PROPOSE THAT THE INFORMATION

9       ABOUT INFRINGEMENT GET CONVEYED TO THE JURY, I DON'T KNOW IF

10      THAT -- I MEAN, DO YOU THINK THAT'S A JURY INSTRUCTION OR IS

11      THAT LIVE WITNESSES TESTIFYING?  IS THAT EXHIBITS AS TO HOW

12      PRODUCTS FUNCTION?

13           LIKE WHAT FORM --

14                MR. JACOBS:  IT'S A MIX, YOUR HONOR.  I THINK IT'S A

15      MIX.  THERE ARE A LOT -- THERE ARE MODELS OUT THERE FOR HOW IT

16      CAN BE DONE.

17           BUT WHAT I WOULD PROPOSE IS THAT WE TAKE THIS UP IN THE

18      OCTOBER 10TH CONFERENCE AS WELL.  I THINK THE OTHER TWO ISSUES

19      ARE GOING TO BE PRETTY -- I DON'T THINK WE'RE GOING TO HAVE A

20      CHALLENGE TO THE QUALIFICATIONS OF OUR EXPERT AND PRETTY

21      CONCISE ON THE MOTIONS TO STRIKE.

22           SO LET'S SET THAT GENERALLY AS A PRETRIAL CONFERENCE,

23      INCLUDING THE QUESTION OF WHAT THE COURT SHOULD SAY TO THE JURY

24      AND WHAT THE WITNESS LINEUP LOOKS LIKE TO PRESENT DAMAGES

25      ISSUES.

```
 1          TO FORESHADOW A LITTLE BIT, I THINK WE WILL BE PROPOSING

 2     THAT THE COURT BEGIN THE TRIAL WITH A STATEMENT OF "THERE WAS A

 3     PREVIOUS TRIAL, AND IN THAT TRIAL, CERTAIN THINGS WERE FOUND BY

 4     THE PRIOR JURY AND YOU SHOULD TAKE THEM AS DECIDED FOR PURPOSES

 5     OF YOUR DELIBERATIONS."  I THINK WE DO THAT AT THE BEGINNING.

 6          AND WE'LL PROBABLY BOTH DRAFT COMPETING VERSIONS OF THAT,

 7     TRY AND MELD IT AND GIVE IT TO YOUR HONOR TO GO THROUGH AND,

 8     AND COME UP WITH SOMETHING YOU'RE SATISFIED WITH.

 9               MR. PRICE:  AND --

10               THE COURT:  WHAT DO YOU THINK, MR. PRICE?

11               MR. PRICE:  WE NEED TO THINK ABOUT IT.  I THINK THAT,

12     YES, WE WANT THE COURT TELLING THE JURY SOMETHING ABOUT WHAT

13     HAPPENED.

14          I DON'T THINK YOU'D WANT TO PHRASE IT, "THERE HAS BEEN A

15     PREVIOUS TRIAL AND SAMSUNG LOST."

16               THE COURT:  RIGHT.

17               MR. PRICE:  I THINK YOU JUST WANT TO SAY "HERE ARE

18     FACTS THAT YOU NEED TO ACCEPT."

19               THE COURT:  SURE.

20               MR. PRICE:  AND THE REASON THIS CAN BE TRICKY, AND

21     WHY WE HAVE TO THINK ABOUT IT IS, FOR EXAMPLE, I DON'T KNOW IF

22     YOU REMEMBER THE CONJOINT ANALYSIS TESTIMONY, I THINK THEIR

23     EXPERT TESTIFIED FOR A MINUTE AND A HALF ON DIRECT, BUT ONE OF

24     THE ATTACKS ON THAT IS WHAT HE -- WHAT THAT EXPERT DESCRIBED IN

25     A SURVEY AS THE FEATURE ISN'T THE FEATURE THAT'S IN THE PATENT.
```

1          SO WE DO HAVE TO FIGURE OUT SOME WAY TO TELL THE JURY,

2     WITHOUT RETRYING THE FIRST CASE, WHAT THE PATENTED FEATURES

3     ARE.

4          AND WE JUST -- WE NEED TO GIVE THAT A LOT OF THOUGHT TO

5     MAKE SURE NO ONE IS DEPRIVED OF WHAT THE JURY SHOULD KNOW AND

6     THAT NO ONE IS PREJUDICED BY THE WAY IT'S SAID.

7               THE COURT:  OKAY.  WELL, WHEN -- LET ME HEAR FROM

8     MS. MAROULIS.

9          DID YOU THINK THAT WE NEED TO DO THAT LONG AFTER THE MOTION

10    TO STRIKE AND DAUBERTS?  I WASN'T CLEAR ON --

11              MS. MAROULIS:  YOUR HONOR --

12              THE COURT:  -- YOUR PROPOSAL.

13              MS. MAROULIS:  -- WE WERE SIMPLY HOPING THAT THERE

14    WOULD BE RULINGS FROM THE COURT BEFORE WE HAVE THE CONFERENCE.

15    YOU CAN PUT IF OFF BY A WEEK OR SEVERAL WEEKS.  IT'S NOT GOING

16    TO TAKE A LENGTHY PERIOD OF TIME.

17         BUT WE THOUGHT THAT IT SHOULD BE SEQUENTIAL SUCH THAT THE

18    COURT DECIDES ON THE DAUBERT AND THE MOTIONS TO STRIKE AND THEN

19    HOLDS THIS LATER ON.

20              THE COURT:  WELL, WHAT ABOUT OCTOBER 10TH AND

21    OCTOBER 17TH?  DOES THAT GIVE YOU ENOUGH TIME?

22              MS. MAROULIS:  MAY WE HAVE ANOTHER COUPLE WEEKS?

23              MR. JACOBS:  WE'RE STRETCHING THIS OUT, YOUR HONOR.

24              THE COURT:  LET ME -- I'M GOING TO HAVE TO HAVE

25    MS. PARKER BROWN CHECK OUR DATES FOR, I GUESS, OCTOBER 17.

```
1    OCTOBER 24TH IS THE JUDGE'S MEETING.  I DON'T KNOW ABOUT THE

2    31ST.

3                THE CLERK:  OCTOBER 17TH IS THE DATE RESERVED FOR THE

4    CLASS CERT MOTION ON I BELIEVE IT'S HERSKOWITZ AND JUEL.

5                THE COURT:  RIGHT.  BUT I THINK THE SUGGESTION IS

6    THAT DATE'S TOO EARLY.

7                THE CLERK:  OH, OKAY.

8                THE COURT:  SO IF YOU WOULD CHECK OCTOBER 31, PLEASE?

9                THE CLERK:  OCTOBER 31, IT'S THE DATE FOR THE CLASS

10   CERT IN THE IPHONE CASE.

11               THE COURT:  OH, YEAH.  THAT'S NOT A GOOD DATE.

12               THE CLERK:  AND ALSO CLASS CERT IN BRAZIL VERSUS DOLE

13   FOODS.

14               THE COURT:  OKAY.

15               THE CLERK:  NOVEMBER 7TH IS THE DATE FOR APPLE'S

16   SUMMARY JUDGMENT MOTION IN THE IPHONE CASE.

17               THE COURT:  UM-HUM.

18               THE CLERK:  AND A COUPLE CASES LAST DAY FOR

19   DISPOSITIVE MOTIONS.

20               THE COURT:  AND WHICH ONES ARE THOSE, PLEASE?

21               THE CLERK:  OGDEN VERSUS BUMBLE BEE, A J & J, AND A

22   JOHNSON VERSUS SAN BENITO COUNTY.

23               THE COURT:  OKAY.  WHAT I WAS GOING TO SUGGEST AS

24   A -- WHEN IS COLUMBUS DAY?  THAT'S THE 11TH?

25               THE CLERK:  COLUMBUS DAY IS THE 14TH.
```

```
 1              THE COURT:  NO, VETERAN'S DAY.

 2              THE CLERK:  OH, VETERAN'S --

 3              THE COURT:  WHAT I WAS GOING TO SUGGEST AS A TRIAL

 4    DATE WAS NOVEMBER 12, 13, 14, 15, AND 18, SO I WANTED TO HEAR

 5    YOUR PROPOSALS AS TO WHAT WOULD GO TO THE JURY FAIRLY SOON IN

 6    OCTOBER SO THAT YOU COULD PREPARE THAT FOR NOVEMBER.

 7         IF I MOVE THE 31ST HEARING TO THE 7TH, THEN I -- THAT COULD

 8    OPEN UP THE 31ST.

 9         BUT THEN THAT GIVES YOU LESS THAN TWO WEEKS.  WOULD THAT BE

10    ENOUGH TIME FOR YOU TO --

11         (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

12              MS. MAROULIS:  THAT SHOULD BE FINE, YOUR HONOR.

13              THE COURT:  WHICH ONE?

14              MS. MAROULIS:  THE 31ST IF THAT'S AVAILABLE.

15              THE COURT:  OKAY.  DO YOU WANT TO BE HEARD ON THAT

16    DATE?

17              MR. JACOBS:  THAT'LL BE FINE, YOUR HONOR.

18         SHALL WE DECLARE THAT THE PRETRIAL CONFERENCE DATE, THEN,

19    FOR THE TRIAL IN --

20              THE COURT:  WELL, I'M JUST WONDERING IF WE SHOULD --

21    THE ONLY THING IS I DO HAVE -- WHAT WAS THAT? -- CLASS

22    CERTIFICATION IN AN MDL ON OCTOBER 31, SO I WOULD HAVE TO BUMP

23    THAT TO PUT THIS CASE ON THAT DATE.

24         WHAT I'D LIKE TO DO -- COULD WE TRY TO KEEP IT ON THE 17TH

25    AND THEN WHATEVER -- I MEAN, MY SENSE IS, FROM LAST TIME,
```

1    BREAKING THINGS UP INTO SMALLER INCREMENTS IS A LITTLE BIT

2    EASIER FOR THE COURT THAN HAVING BIG, MASSIVE HEARINGS.  IT'S

3    MORE DIFFICULT TO PREPARE FOR THEM AND WHATNOT.

4        COULD WE TRY TO KEEP IT ON THE 10TH AND THE 17TH, AND THEN

5    IF THERE IS POTENTIALLY SPILL OVER, WE'D HAVE THE 31ST AS A

6    POTENTIAL OVERFLOW DAY?  WOULD THAT GIVE YOU ENOUGH TIME?

7        MS. MAROULIS:  THAT'S FINE, YOUR HONOR.  IF THAT'S

8    WHAT'S NEEDED FOR THE COURT, OF COURSE.

9        THE COURT:  OKAY.  SO WHY DON'T WE KEEP THE 17TH ON?

10       I ALSO DON'T ANTICIPATE -- I WASN'T GOING TO EVEN SET ANY

11   MOTIONS IN LIMINE BECAUSE I REALLY DON'T THINK THERE SHOULD BE

12   ANYTHING REALLY DIFFERENT.  YOU'LL HAVE YOUR SAME WITNESSES

13   FROM LAST TIME.

14       OKAY.  SO THE TRIAL WILL BE NOVEMBER 12, 13, 14, 15, 18.

15       I WAS ANTICIPATING MAYBE OPENINGS OF 45 MINUTES EACH,

16   CLOSINGS OF ONE HOUR EACH.

17       I HAVEN'T DECIDED THE EVIDENCE TIME PERIOD.  I THINK WE'LL

18   HAVE TO FIGURE OUT IF THE '381 IS IN OR NOT.  WE'LL HAVE TO

19   MAKE THAT DECISION ONCE WE HAVE MORE SORT OF SENSE OF THE

20   SCOPE.

21       MS. MAROULIS:  YOUR HONOR, MAY WE SUGGEST THAT WHEN

22   WE SUBMIT TO THE COURT THE PAPERS REGARDING '381, AND WE

23   SUSPECT THE EXAMINER WILL NOT REOPEN ANYTHING, THAT THE PARTIES

24   REVISIT WHAT YOUR HONOR SUGGESTED, WHICH IS STAYING THE '381

25   AND STIPULATING POTENTIALLY TO THE REST TO OBVIATE THE TRIAL?

```
 1        WE WOULD LIKE AN OPPORTUNITY TO REAPPROACH THAT WITH BOTH
 2   THE COURT AND APPLE.
 3        THE COURT:  OH, THAT'S FINE.  THAT'S FINE.
 4        AND I DON'T HAVE TO SET ANY TIME PERIOD OR TIME LIMITATIONS
 5   NOW ON OPENING AND CLOSING AND EVIDENCE.  WE CAN DECIDE THAT
 6   LATER IF THE TRIAL DOES HAPPEN.
 7        BUT TENTATIVELY I WAS THINKING EIGHT JURORS WITH THREE
 8   PEREMPTORIES EACH, AND WE'LL HAVE TO GET A HUGE JURY POOL
 9   BECAUSE I THINK IT'LL BE MUCH MORE DIFFICULT TO FIND JURORS AT
10   THIS STAGE.
11        NOW, WITH REGARD TO YOUR MOTION, I WOULD SAY SET IT FOR A
12   HEARING, BUT SINCE WE DON'T KNOW EXACTLY WHEN THE FINAL DATES
13   WILL BE, I GUESS WHAT I WOULD ASK IS WHEN YOU DO GET FINAL WORD
14   FROM THE PTO AS TO BOTH PATENTS, '915 AND '381, IF YOU WOULD
15   CONTACT MS. PARKER BROWN, CC APPLE'S COUNSEL, AND WE'LL TRY TO
16   GET YOU A HEARING DATE IF A HEARING IS NECESSARY.
17        I MAY JUST BE ABLE TO DECIDE IT ON THE PAPERS, BUT A
18   HEARING DATE JUST GIVES ME A DATE BY WHICH I'VE GOT TO FOCUS ON
19   THIS PARTICULAR MOTION AND TRY TO GET IT RESOLVED.
20        MS. MAROULIS:  YES, YOUR HONOR, WE'LL DO THAT.
21        THE COURT:  OKAY.  ALL RIGHT.
22        MS. MAROULIS:  YOUR HONOR, THERE'S ONE ISSUE THAT I
23   WANTED TO REVISIT.
24        I KNOW THE COURT SAID THERE WILL BE NO DO-OVERS OF VARIOUS
25   KINDS, BUT WITH RESPECT TO THE DAMAGES PERIOD, LAST TIME
```

1    JUDGE GREWAL DISALLOWED DESIGN AROUND EVIDENCE TO COMPENSATE

2    FOR WHAT HE PERCEIVED AS PREJUDICE TO APPLE FOR LATE

3    PRODUCTION.

4         THE COURT:  OKAY.

5         MS. MAROULIS:  WE WOULD LIKE TO REVISIT THAT AND BE

6    ABLE TO ACTUALLY INCLUDE THE DESIGN AROUND EVIDENCE AND PERIODS

7    BECAUSE SAMSUNG ALREADY WAS PUNISHED THE FIRST TIME AROUND IN

8    THE TRIAL, AND WE BELIEVE THAT THIS TIME THE JURY SHOULD ONLY

9    HEAR THE TIMES WHEN THE DESIGN AROUNDS WERE NOT AVAILABLE.

10        IT'S UNDISPUTED THAT AT LEAST ONE OF THE DESIGN AROUNDS WAS

11   IMPLEMENTED AS OF OCTOBER OR NOVEMBER 2011, AND APPLE CONCEDED

12   DURING THE PRELIMINARY INJUNCTION STAGE THAT THAT'S A

13   NON-INFRINGING ALTERNATIVE.

14        SO WE WOULD LIKE AN OPPORTUNITY TO PRESENT TO THE JURY

15   DIFFERENT DAMAGES PERIOD BASED ON THE DESIGN AROUND

16   AVAILABILITY.

17        MR. JACOBS:  I THINK SAMSUNG IS -- THIS IS A CLASSIC

18   HAVE YOUR CAKE AND EAT IT, TOO.  FOR THE LAST HOUR THEY'VE BEEN

19   URGING THE COURT NOT TO ALLOW ANY REOPENING OF ANYTHING AND

20   THAT APPLE HAS TO BE RESTRICTED TO THE QUALIFICATIONS OF AN

21   EXPERT THAT IT HAD LAST TIME.

22        NOW SAMSUNG WOULD LIKE A DO-OVER ON AN EVIDENTIARY SANCTION

23   THAT JUDGE GREWAL ENTERED AND THIS COURT ENFORCED.

24        THE COURT SHOULD NOT ENTERTAIN THAT MOTION.

25         THE COURT:  THAT'S DENIED.  IT'S GOING TO BE LIMITED

1      TO THE SAME EVIDENCE THAT WAS BEFORE THE JURY OF 2012.

2          AND ONCE THIS IS RESOLVED, THEN YOU CAN TAKE ALL OF IT UP

3      TO THE FEDERAL CIRCUIT AND CERTAINLY APPEAL JUDGE GREWAL'S

4      RULING AND MY AFFIRMANCE OF THAT ORDER.  I THINK THAT WOULD BE

5      THE APPROPRIATE REMEDY FOR THAT ISSUE.

6              MR. PRICE:  YOUR HONOR, IF I CAN ADD ONE OTHER THING,

7      WHICH I DON'T KNOW, MR. JACOBS MIGHT AGREE TO.

8          FIRST, ON THAT ONE, THE REASON WE WERE MOVING TO BE ALLOWED

9      TO DO THAT IS BECAUSE OF THE LACK OF PREJUDICE AT THIS POINT.

10     I THINK THE SANCTION WAS BECAUSE THE CODE WAS TURNED OVER TOO

11     LATE, AND NOW IT SEEMS LIKE THERE'S BEEN PLENTY OF TIME TO

12     EXAMINE THAT CODE.

13         BUT A SECOND ISSUE, YOUR HONOR, IS YOU REMEMBER THERE WAS A

14     LOT OF TESTIMONY ON CAUSATION, ON WHAT DRIVES THE SALES OF

15     THESE PHONES, AND THAT'S PART OF MR. MUSIKA'S CALCULATIONS ON,

16     ON APPLE'S LOST PROFITS.

17         YOU KNOW, IF WE HAD A FEATURE IN OUR PHONE, THEN THAT MEANT

18     APPLE DIDN'T SELL A CERTAIN NUMBER OF PHONES.

19         AND SO THERE HAS TO BE, AND THERE WAS, TESTIMONY ABOUT WHAT

20     DRIVES THE SALE OF PHONES.

21         THERE'S BEEN MORE DATA ABOUT THAT NOW -- YOU CAN ACTUALLY

22     SEE IT IN THE PAPER ALMOST EVERY DAY -- AND THERE'S MORE

23     EXPERIENCE WITH THAT.

24         FOR EXAMPLE, YOU REMEMBER APPLE CAME OUT WITH ITS MAPS

25     APPLICATION AND THERE WERE SOME PROBLEMS WITH THAT AND THERE'S

1       SOME DATA ON, DOES THAT AFFECT SALES?

2           SO THERE'S -- THERE'S AVAILABLE, YOU KNOW, MORE RECENT

3       DATA ON THE CRITICAL ISSUE OF WHAT DRIVES THE SALE OF THESE

4       PHONES.

5           AND AT THIS POINT, TO HAVE A FAIR TRIAL, I WOULD THINK WE

6       SHOULD AT LEAST BE ABLE TO HAVE DISCOVERY ON THAT ISSUE BECAUSE

7       THERE IS BETTER LEARNING ON IT NOW.

8           MR. JACOBS:  YOUR HONOR, I THINK THEY'RE NOT

9       LISTENING TO --

10          THE COURT:  THAT'S DENIED.

11      OKAY.  WHAT ELSE?

12          MR. PRICE:  I LISTENED, BUT I THOUGHT I COULD GIVE IT

13      A SHOT.

14      (LAUGHTER.)

15          THE COURT:  YEAH, NO.  I APPRECIATE THAT AND I -- AND

16      I -- I CERTAINLY HEAR AND UNDERSTAND WHERE BOTH SIDES ARE

17      COMING FROM, THAT BECAUSE THIS IS THE SECOND TIME, YOU BOTH

18      KNOW THINGS THAT HAVE HAPPENED AND NOT HAPPENED THE WAY THAT

19      YOU HAD PLANNED AND THERE'S SOME INFORMATION THAT WOULD BE MORE

20      HELPFUL.

21      BUT I THINK FOR PURPOSES OF JUST TRYING TO GET THIS UP TO

22      THE CIRCUIT, I THINK IT WOULD CREATE MORE CONFUSION IF NOW WE

23      HAVE A COMPLETELY DIFFERENT RECORD ON INFRINGEMENT.  I THINK IT

24      WOULD BE MORE COMPLICATED FOR THE CIRCUIT TO EVEN REVIEW IT.

25          I JUST WANT TO GET THIS RESOLVED AS QUICKLY AS POSSIBLE AND

```
 1        THEN GET THIS REVIEWED.

 2              MR. PRICE:  SURE.  AND JUST TO BE CLEAR, YOUR HONOR,

 3        THAT'S NOT AN INFRINGEMENT ISSUE.  THAT'S A DAMAGES ISSUE.

 4        ASSUMING THAT THERE'S INFRINGEMENT, DOES THAT MAKE A

 5        DIFFERENCE?  WOULD THAT DRIVE THE SALE OF PHONES?  WOULD APPLE

 6        LOSE PROFITS?

 7              THE COURT:  I UNDERSTAND.  I UNDERSTAND.

 8              MR. PRICE:  OKAY.

 9              THE COURT:  BUT MY CONCERN IS IF WE REOPEN DAMAGES

10        FOR A LIMITED PURPOSE, THEN IT WILL UNFORTUNATELY OPEN UP THE

11        FLOODGATES FOR ALL PURPOSES AND THEN IT'S GOING TO BE A

12        FREE-FOR-FALL AND EXCEEDINGLY BURDENSOME FOR THE PARTIES TO

13        BASICALLY RELITIGATE THE WHOLE CASE.

14              MR. PRICE:  WELL, MAY I ASK YOU THIS ON ANOTHER

15        ISSUE?  I WANT TO MAKE SURE I UNDERSTAND ON HOW LIMITED WE ARE.

16           IN THE FIRST TRIAL, THEY HAD THEIR CONJOINT EXPERT TESTIFY,

17        WHICH I ASSUME HE'LL TESTIFY AGAIN.

18              THE COURT:  UM-HUM.

19              MR. PRICE:  BECAUSE OF TRIAL STRATEGY AND THE TIME WE

20        HAD, WE HAD ON OUR WITNESS LIST A REBUTTAL CONJOINT EXPERT.  WE

21        DIDN'T CALL HIM IN THAT TRIAL --

22              THE COURT:  UM-HUM.

23              MR. PRICE:  -- BECAUSE OF -- YOU KNOW, LARGELY

24        BECAUSE OF TIMING.

25           I WOULD THINK THAT, TO THE EXTENT WE WERE ABLE TO PRESENT
```

1     EVIDENCE IN THAT TRIAL, IF WE HAD ELECTED TO, IF WE HAD GIVEN

2     NOTICE AND HE WAS ON THE WITNESS LIST AND WHATEVER, WE CAN DO

3     IT IN THE SECOND TRIAL AND THAT WE'RE NOT PRECLUDED FROM, FOR

4     EXAMPLE, REBUTTING THEIR CONJOINT EXPERT WITH THE EXPERT WE HAD

5     DESIGNATED AND PUT ON THE WITNESS LIST.

6          THE COURT:  WHAT'S YOUR RESPONSE TO THAT?

7          MR. JACOBS:  JUST A MINUTES.

8     (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

9          MR. JACOBS:  I THINK WE'RE IN AGREEMENT, YOUR HONOR.

10    I THINK IF THE -- IF WHAT WE'RE DOING IS RESETTING TO THE

11    PRETRIAL ORDER AND WITNESS LISTS AND WITNESS DESIGNATIONS, THE

12    CONSTRAINED WITNESS LIST, THE ONE THAT WAS DELIVERED TO US

13    AFTER THE COURT SAID "WE'RE NOT GOING TO HAVE 150 WITNESSES ON

14    THE WITNESS LIST," SO IF WE'RE GOING BACK TO THE DATE OF

15    AUGUST 3RD -- WHATEVER IT WAS THE DAY THAT TESTIMONY STARTED --

16    IF THEY HAD A WITNESS ON THEIR WITNESS LIST OR IF WE HAD A

17    WITNESS ON OUR WITNESS LIST AS OF THE BEGINNING OF TRIAL, THEN

18    I THINK THAT'S FAIR GAME.

19          THE COURT:  IS THERE A STIPULATION?

20          MS. MAROULIS:  YOUR HONOR, THE SMALLEST WITNESS LIST

21    DID NOT INCLUDE DR. SUKUMAR, THE CONJOINT EXPERT, BUT THEN YOUR

22    HONOR ALLOWED US TO PUT HIM ON IN THE OFFENSIVE CASE, SO I

23    ASSUME THAT THEY'RE STIPULATING THAT WE CAN CALL HIM.

24          MR. JACOBS:  I DON'T UNDERSTAND THAT.

25          MS. MAROULIS:  I THINK THE STIPULATION OF MR. JACOBS

```
1     MEANS THAT WE CAN CALL HIM, RIGHT?

2          HE WAS NOT ON THE VERY LAST REDUCED LIST, HE WAS ON THE

3     PREVIOUS TWO LISTS, AND THEN HE GOT TO TESTIFY IN THE OFFENSIVE

4     CASE BECAUSE YOUR HONOR AGREED TO LET US USE HIM.

5          I JUST WANT TO BE CLEAR, BECAUSE MY RECOLLECTION, WITHOUT

6     SEEING THE ACTUAL LIST IN FRONT OF ME, IS THAT HE WAS NOT ON

7     THE VERY LAST WITNESS LIST.

8               MR. JACOBS:  IT'S THE FINAL WITNESS LIST, YOUR HONOR.

9     I DON'T UNDERSTAND WHAT MS. MAROULIS IS SAYING.

10              THE COURT:  BUT HE TESTIFIED, THOUGH.

11              MR. JACOBS:  THEN HE MUST HAVE BEEN ON THE FINAL

12    WITNESS LIST.

13              MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

14              MR. JACOBS:  I DON'T RECALL ANY SUPPLEMENTATION IN

15    THE OFFENSIVE CASE, BUT WE'LL HAVE TO GO BACK AND LOOK AT THE

16    FINAL WITNESS LIST.

17         IF THERE'S SOME RULING THAT ALLOWED HIM TO TESTIFY, THEN

18    WE'LL HAVE TO TAKE A LOOK AT THAT.

19              MS. MAROULIS:  THAT'S FINE.  I UNDERSTAND THAT APPLE

20    IS STIPULATING THAT WE CAN, IF WE WANT TO, CALL DR. SUKUMAR.

21              MR. JACOBS:  I'M NOT SO STIPULATING.  WE'LL GO BACK

22    AND LOOK AT THE FINAL WITNESS LIST.

23              THE COURT:  ALL RIGHT.  WELL, I'LL HAVE TO TAKE A

24    LOOK AT THAT ISSUE WITH EVERYTHING ELSE.  I HOPE IT DOESN'T

25    CREATE -- OPEN UP A CAN OF WORMS OF RELITIGATING EVERY SINGLE
```

```
 1      WITNESS.
 2          BUT AT LEAST AT THIS POINT I WOULD BE INCLINED TO ALLOW
 3      THAT.
 4              MS. MAROULIS:  THANK YOU, YOUR HONOR.
 5              THE COURT:  SO EVEN IF HE WERE EXCLUDED TO TESTIFYING
 6      ABOUT CONJOINT SURVEYS, BUT --
 7              MR. JACOBS:  I THINK MS. MAROULIS --
 8              MS. MAROULIS:  HE WAS NOT EXCLUDED.  HE WAS SIMPLY --
 9      BECAUSE WE WERE LIMITED TO THE NUMBER OF PEOPLE, HE WAS NOT
10      INCLUDED BY US IN THE VERY FINAL LIST.
11          BUT THEN YOUR HONOR ALLOWED US TO LET HIM TESTIFY ON THE
12      CONJOINT ISSUES IN THE OFFENSIVE CASE.
13          SO HE WAS DEPOSED.  HE SUBMITTED EXPERT REPORTS.
14          I SIMPLY DON'T WANT APPLE TO COME UP LATER AND SAY "WE ONLY
15      SAID PEOPLE ON THE VERY FINAL LIST CAN TESTIFY."
16          HE DID TESTIFY AT TRIAL.  HE WAS DEPOSED TWICE.  THEY KNOW
17      WHO HE IS.
18              THE COURT:  OKAY.
19              MR. JACOBS:  I THINK WHERE MS. --
20              THE COURT:  OKAY.  WHY DON'T YOU TRY TO RESOLVE THIS?
21              MR. JACOBS:  THANK YOU, YOUR HONOR.
22              THE COURT:  IF THERE'S A PROBLEM -- WELL, LET'S SET A
23      FURTHER CMC.  I WAS GOING TO SUGGEST AUGUST 14TH, BUT LET ME
24      KNOW IF THAT IS GOING TO PRESENT A PROBLEM.  IT WILL BE DURING
25      YOUR EXPERT DEPOSITIONS.
```

```
1        BUT AT THIS POINT, YOU KNOW, AUGUST 14TH, YOU MAY BE ABLE

2   TO FLAG SOME ISSUES THAT WE CAN RESOLVE THAT WILL HELP YOU IN

3   PREPARING.

4            MR. JACOBS:  I'M CURRENTLY SET FOR TRIAL THEN IN

5   ANOTHER MATTER.

6            MS. MAROULIS:  THAT'S FINE.

7            THE COURT:  OH.

8            MR. JACOBS:  BUT LET'S SET IT AT AUGUST 14TH.  I

9   FLAGGED IT FOR YOU.  IF I'M, IN FACT, IN TRIAL, CAN WE ALERT

10  CHAMBERS AND SEEK ANOTHER DATE OR ANOTHER TIME?

11           THE COURT:  WELL, WE COULD SET IT -- IF AUGUST 23RD

12  IS YOUR CLOSE -- WELL, WHAT WORKS BETTER?  THE 7TH?  THE 21ST?

13           MR. JACOBS:  21ST, YOUR HONOR.

14           THE COURT:  IS THAT -- MR. PRICE AND MS. MAROULIS, IS

15  THAT A GOOD DATE FOR YOU ALL?

16           MS. MAROULIS:  THE 21ST SHOULD BE FINE, YOUR HONOR.

17           THE COURT:  OKAY.  SO LET'S MOVE THAT TO AUGUST 21.

18       AND, YOU KNOW, MAYBE AT THAT POINT IF THERE ARE A VERY

19  LIMITED NUMBER OF ISSUES THAT YOU WANT TO FLAG, THEN HOPEFULLY

20  WE CAN RESOLVE IT AT THAT POINT SO THAT'LL HELP WITH YOUR

21  PREPARATION OF THE CASE.

22           MR. JACOBS:  PERFECT, YOUR HONOR.

23           THE COURT:  OKAY.  WHAT ELSE?  ANYTHING ELSE?  OR DID

24  WE COVER EVERYTHING THAT WAS ON THE AGENDA?

25       LET ME JUST ALSO CHECK MY OWN NOTES.
```

 1            MR. JACOBS:  WE'VE COVERED EVERYTHING FROM APPLE'S

 2      STANDPOINT, YOUR HONOR.

 3            THE COURT:  OKAY.  MR. PRICE AND MS. MAROULIS, DID

 4      YOU HAVE ANYTHING ELSE THAT WE NEEDED TO --

 5            MS. MAROULIS:  YOUR HONOR, WE DON'T HAVE ADDITIONAL

 6      ISSUES RIGHT NOW.  WE WILL BE BACK TO THE COURT WITH ANY

 7      FINDINGS FROM THE PTO.

 8            THE COURT:  OKAY.

 9            MS. MAROULIS:  PROBABLY WITHIN 30 TO 60 DAYS.

10            THE COURT:  OKAY.  LET ME ASK YOU, ARE ANY OF THE

11      OTHER -- THE '163 IS NOT IN RE-EXAM?

12            MS. MAROULIS:  NO, YOUR HONOR.

13            THE COURT:  OR THE D'305 OR THE D'677?

14            MR. JACOBS:  THAT'S CORRECT, YOUR HONOR, THEY'RE NOT.

15            MS. MAROULIS:  NOT TO MY KNOWLEDGE.

16            THE COURT:  OKAY.  THEN, YES, PLEASE LET ME KNOW ON

17      THE '381 AND THE '915.

18            MS. MAROULIS:  AND YOUR HONOR, WE WILL GET BACK TO

19      YOU WHEN THE '381 BECOMES FINAL, BECAUSE THE '915 IS A SLIGHTLY

20      DIFFERENT SITUATION.

21            THE COURT:  OKAY.  ALL RIGHT.

22            MS. MAROULIS:  THANK YOU.

23            THE COURT:  THANK YOU ALL.

24            MR. JACOBS:  THANK YOU, YOUR HONOR.

25            (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7           I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

17    LEE-ANNE SHORTRIDGE, CSR, CRR
      CERTIFICATE NUMBER 9595

18          DATED:  MAY 3, 2013

19

20

21

22

23

24

25

WITNESS

