# EXHIBIT 7B

Docket No: 0331834.381

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Request for *Ex Parte* Reexamination | § | |
| | § | |
| U.S. Patent No. 7,469,381 | § | REQUEST FOR *EX PARTE* |
| | § | REEXAMINATION |
| Issued:  December 23, 2008 | § | |
| | § | |
| | § | |
| For:   LIST SCROLLING AND | § | |
| DOCUMENT TRANSLATION, | | |
| SCALING, AND ROTATION ON | | |
| A TOUCH-SCREEN DISPLAY | | |

Mail Stop *Ex Parte* Reexam
Commissionner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

Sir:

Pursuant to 35 U.S.C. §§ 302-307 and C.F.R. § 1.510, the undersigned hereby requests *ex parte* reexamination of Claims 1-20 of U.S. Patent No. 7,469,381 ("the '381 Patent," submitted as Exhibit 1) titled "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display."  Apple Inc. is the assignee named on the face of the '381 Patent.  The application for the '381 Patent was filed on December 14, 2007 and claimed priority to a series of provisional patent applications, the earliest of which were filed on January 7, 2007.  The '381 Patent underwent reexamination and an *Ex Parte* Reexamination Certificate issued on April 26, 2011 confirming the patentability of the above claims.  In the January 13, 2011 Notice of Intent to Issue the certificate, the U.S. Patent and Trademark Office found these claims to be patentable because of the presence of certain features not taught or suggested in the art of record.  As set forth in detail in this request, these features are present in the new prior art references cited herein which were not previously considered by the Examiner and which raise substantial new questions of patentability, warranting another *ex parte* reexamination of all of the above claims.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................2

II.     DESCRIPTION OF THE '381 PATENT AND THE CLAIMS FOR WHICH
        REEXAMINATION IS REQUESTED .................................................................6

        A.      The Specification .......................................................................................6

        B.      The Claims ...............................................................................................11

                1.      The Independent Claims .................................................................11

                2.      The Dependent Claims ....................................................................13

        C.      The Prosecution History ..........................................................................15

III.    STATEMENT OF THE LAW ............................................................................18

IV.     PROPOSED REJECTIONS .................................................................................20

V.      STATEMENT OF SUBSTANTIAL NEW QUESTION OF PATENTABILITY ...........21

VI.     DETAILED EXPLANATION OF THE PERTINENCE AND MANNER OF
        APPLYING THE PRIOR ART TO THE CLAIMS OF THE '381 PATENT .................23

        A.      Claims 1-14, 16, 19 and 20 of the '381 Patent should be rejected under 35
                U.S.C. § 102(b) as anticipated by *Lira* ..................................................23

                1.      Claims 1, 19 and 20 should be rejected as anticipated by *Lira* .................26

                2.      Claim 2 should be rejected as anticipated by *Lira* ......................37

                3.      Claim 3 should be rejected as anticipated by *Lira* ......................37

                4.      Claim 4 should be rejected as anticipated by *Lira* ......................37

                5.      Claim 5 should be rejected as anticipated by *Lira* ......................38

                6.      Claim 6 should be rejected as anticipated by *Lira* ......................38

                7.      Claim 7 should be rejected as anticipated by *Lira* ......................38

                8.      Claim 8 should be rejected as anticipated by *Lira* ......................39

                9.      Claim 9 should be rejected as anticipated by *Lira* ......................39

U.S. Patent No. 7,469,381
Issued: December 23, 2008

10.   Claim 10 should be rejected as anticipated by *Lira* ...................................40

11.   Claim 11 should be rejected as anticipated by *Lira* ...................................41

12.   Claim 12 should be rejected as anticipated by *Lira* ...................................41

13.   Claim 13 should be rejected as anticipated by *Lira* ...................................41

14.   Claim 14 should be rejected as anticipated by *Lira* ...................................42

15.   Claim 16 should be rejected as anticipated by *Lira* ...................................42

B.   Claims 7, 13-15, 17 and 18 of the '381 Patent should be rejected under 35
U.S.C. § 103 as rendered obvious by *Lira* ...................................43

1.   Claim 7 should be rejected as rendered obvious by *Lira* ...........................43

2.   Claim 13 should be rejected as rendered obvious by *Lira* ........................45

3.   Claim 14 should be rejected as rendered obvious by *Lira* ........................45

4.   Claim 15 should be rejected as rendered obvious by *Lira* ........................46

5.   Claim 17 should be rejected as rendered obvious by *Lira* ........................47

6.   Claim 18 should be rejected as rendered obvious by *Lira* ........................50

C.   Claims 15, 17 and 18 should be rejected under 35 U.S.C. § 103 as
rendered obvious by *Lira* in view of *Van Den Hoven* ...........................52

1.   Claim 15 should be rejected as rendered obvious by *Lira* in view of
*Van Den Hoven* ...................................53

2.   Claim 17 should be rejected as rendered obvious by *Lira* in view of
*Van Den Hoven* ...................................54

3.   Claim 18 should be rejected as rendered obvious by *Lira* in view of
*Van Den Hoven* ...................................58

D.   Claims 1-5, 7-13 and 15-20 of the '381 Patent should be rejected under 35
U.S.C. § 102(e) as anticipated by *Ording* ...................................61

1.   Claims 1, 19 and 20 should be rejected as anticipated by *Ording* ...........63

2.   Claim 2 should be rejected as anticipated by *Ording* ...............................76

3.   Claim 3 should be rejected as anticipated by *Ording* ...............................76

4.   Claim 4 should be rejected as anticipated by *Ording* ...............................76

U.S. Patent No. 7,469,381
Issued: December 23, 2008

5.      Claim 5 should be rejected as anticipated by *Ording* ...............................77

6.      Claim 7 should be rejected as anticipated by *Ording* ...............................77

7.      Claim 8 should be rejected as anticipated by *Ording* ...............................77

8.      Claim 9 should be rejected as anticipated by *Ording* ...............................78

9.      Claim 10 should be rejected as anticipated by *Ording* ...........................78

10.     Claim 11 should be rejected as anticipated by *Ording* ...........................78

11.     Claim 12 should be rejected as anticipated by *Ording* ...........................79

12.     Claim 13 should be rejected as anticipated by *Ording* ...........................79

13.     Claim 15 should be rejected as anticipated by *Ording* ...........................80

14.     Claim 16 should be rejected as anticipated by *Ording* ...........................81

15.     Claim 17 should be rejected as anticipated by *Ording* ...........................82

16.     Claim 18 should be rejected as anticipated by *Ording* ...........................84

VII.    CONCLUSION.................................................................................................85

U.S. Patent No. 7,469,381
Issued: December 23, 2008

# I.   INTRODUCTION

In support of this Request for Reexamination ("the Request"), requestor provides the following:

- Pursuant to 37 C.F.R. § 1.510(a), payment for the filing fee for this Request.  The Director is authorized to charge TWO THOUSAND FIVE HUNDRED TWENTY DOLLARS ($2,520.00) for the filing fee for this Request pursuant to 37 C.F.R. § 1.20(c)(1), and any additional fees, if any, in connection with the filing of this Request, to Deposit Account No. 02-4467.  Any refund should be credited to the same deposit account;

- Pursuant to 37 C.F.R. § 1.510(b)(1), a statement pointing out each substantial new question of patentability based on prior patents and printed publications.  *See* Section V of this Request;

- Pursuant to 37 C.F.R. § 1.510(b)(2), an identification of every claim for which reexamination is requested (*see* Section II.B of this Request), and a detailed explanation of the pertinency and manner of applying the cited prior art to every claim for which reexamination is requested (*see* Section VI of this Request, along with the detailed claims chart submitted as Exhibit 6);

- Pursuant to 37 C.F.R. § 1.510(b)(3), a copy of every patent or printed publication relied upon or referred to in the above-identified statement of substantial new questions of patentability and detailed explanation.  *See* Exhibits 3-5.  None of these references are non-English language patents or printed publications.  These references are listed below (*Infra* at 3-4) and on form SB/08, which is submitted as Exhibit 2;

U.S. Patent No. 7,469,381
Issued: December 23, 2008

- Pursuant to 37 C.F.R. § 1.510(b)(4), a copy of the entire '381 Patent including the front face, drawings, specification/claims (in double column format), as well as a certificate of correction and a reexamination certificate. *See* Exhibit 1. No disclaimer issued in the '381 Patent; and

- Pursuant to 37 C.F.R. § 1.510(b)(5), a certification that a copy of the Request has been served in its entirety on the patent owner at the address as provided for in 37 C.F.R. § 1.33(c). *Infra* at 87.

As mentioned above, the application for the '381 Patent - namely U.S. patent application no. 11/956,969 - was filed on December 14, 2007, and claims priority to several provisional patent applications, the earliest of which - namely U.S. patent applications nos. 60/879,253 and 60/883,801 - were filed on January 7, 2007. Accordingly, the earliest possible priority date and effective filing date for the '381 Patent is January 7, 2007. Reexamination is respectfully requested in view of the following patents and published patent applications, each of which is prior art to the '381 Patent for the reasons set forth below. These references were not considered by the Examiner[1] and raise substantial new questions of patentability with respect to claims for which this reexamination is requested.

1.  PCT Publication No. WO 03/081458 by Luigi Lira ("*Lira*,") a copy of which is submitted as Exhibit 3. *Lira* is a PCT patent application that was published on October 2, 2003, more than one year before the January 7, 2007 earliest possible effective filing date for the '381 Patent. Therefore, *Lira* is prior art to the '381 Patent under 35 U.S.C. § 102(b). *Lira* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent;

2.  U.S. Patent No. 7,786,975 by Bas Ording, Scott Forstall, Greg Christie, Stephen O. Lemay and Imran Chaudhri ("*Ording*,") a copy of which is submitted as Exhibit 4. *Ording* is a U.S. patent that issued on a U.S. application that was filed on December 23, 2005, long before the January 7, 2007 earliest possible priority

---

[1]   These references were not of record, and their teachings were not applied, in the prosecution or reexamination files of the '381 Patent.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

date for the '381 Patent.  Therefore, *Ording* is prior art to the '381 Patent under 35 U.S.C. § 102(e).  *Ording* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent; and

3.    PCT Publication No. WO 01/029702 by Elise A. W. H. Van Den Hoven and Josephus H. Eggen ("*Van Den Hoven*,") a copy of which is submitted as Exhibit 5.  *Van Den Hoven*  is a PCT patent application that was published on April 26, 2001, more than one year before the January 7, 2007 earliest possible effective filing date for the '381 Patent.  Therefore, *Van Den Hoven* is prior art to the '381 Patent under 35 U.S.C. § 102(b).  *Van Den Hoven* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent.

As discussed in greater detail below, the alleged invention described and claimed in the '381 Patent is simple and straightforward.  Broadly speaking, it relates to the scrolling and translating of electronic documents displayed on handheld devices with touch screen displays.  In particular, the '381 Patent describes displaying an area beyond the edge of the document if an edge of the document is reached while translating the document in a first direction, so long as an object (*e.g.*, a user's finger or a stylus pen) is detected on or near the touch screen display.  It also describes translating the document in a second (*e.g.*, reverse) direction until the area beyond the edge is no longer displayed when the object is no longer detected (*e.g.*, once a gesture is complete).  '381 Patent, abstract, col. 1:45-48, col. 20:31-37, col. 21:22-25, col. 23:64-65, col. 24:1-4.

It is respectfully submitted that there is nothing new or novel described or claimed in the '381 Patent.  Indeed, this type of electronic document manipulation on handheld devices to display an area beyond the edge and translate the document until the area beyond the edge is no longer displayed is expressly described in several prior art patents and printed publications, such as the following references, as discussed in more detail below.

One such prior art patent is *Lira*, which discloses an electronic device for browsing an electronic document (*e.g.*, a web page having structured elements such as columns) through a

U.S. Patent No. 7,469,381
Issued: December 23, 2008

display screen having a small field-of-view window.  Using a finger or stylus pen, a user can scroll/translate back and forth to view different portions of the page.  *Lira* discloses several ways to align the display screen with structures in the document.  One such mechanism "snaps" the edge of the display screen to the edge of a structure in the document when a panning operation ends (for example, when a user lifts her finger off a touch-screen display).  This "snap" feature ensures that, when panning through a large document on the screen, the display remains properly aligned with the data in that document.  This way, if the user moves the screen away from the column being read (while translating the document), an area beyond the edge of the column/document will be displayed.  After detecting that an object is no longer on the display (*e.g.*, the pen has been lifted from the screen), the document is translated in another direction such that the area beyond the edge of the page is no longer displayed, and a new portion of the page is displayed instead.  *Lira*, p. 1, ln. 28-p. 2, ln. 3; pp. 14-15.

Another prior art patent which discloses the above features is *Ording*.  *Ording* generally relates to the scrolling of lists (*i.e.*, electronic documents) on handheld devices with touch-sensitive displays.  At the most basic level, *Ording* translates a displayed list in response to the user's contact and movement on the touch screen.  The user's movement on the touch screen determines the corresponding first scroll/translation direction.  For example, to scroll the list, the user issues a downward stroke (*i.e.,* a movement) on the touch screen display with a finger (*i.e.,* object), and the displayed information items change until the edge is reached, in which case an area beyond the edge of the electronic document is displayed.  *Ording* discloses the reversal of the scroll direction at an endpoint of the displayed list as it contacts and "bounces" off a virtual boundary, defined as the terminus.  As the first item in the list approaches the terminus, the displayed list may bounce off the virtual boundary and reverse direction.  In response to the user

U.S. Patent No. 7,469,381
Issued: December 23, 2008

breaking contact with the touch screen (*i.e.*, removing the object so that it is no longer detected

on the display), the document is free to scroll in the opposite direction (*i.e.,* translate in a second

direction).  The area beyond the edge will decrease in size as the first item reaches the top of the

display, until it disappears and a new portion of the page is displayed instead.  *Ording*, col. 1:18-

20; col. 1:50-54; col. 4:1-6; col. 4:44-59; col. 7:44-49; col. 9:25-27.

Thus, it is clear that each one of the foregoing references discloses translating an

electronic document in a first direction, displaying an area beyond the edge of the document, and

translating the document in a second direction in response to detecting that an object is no longer

on the touch screen display, until the area beyond the edge of the electronic document is no longer

shown and a new portion of the electronic document is displayed.

## II.   DESCRIPTION OF THE '381 PATENT AND THE CLAIMS FOR WHICH REEXAMINATION IS REQUESTED

The '381 Patent generally relates to the scrolling and translating of electronic documents

and lists displayed on devices with touch-screen displays.  It describes displaying and translating

electronic documents (including lists) that a user scrolls through on touch screen displays of

handheld devices.  In particular, the '381 Patent describes displaying an area beyond the edge of

the document if an edge of the document is reached while translating the document in a first

direction, so long as an object (*e.g.*, a user's finger) is detected on or near the touch screen

display.  It also describes translating the document in a second direction until the area beyond the

edge is no longer displayed when the object is no longer detected on or near the touch screen

display.  '381 Patent, abstract, col. 1:45-48; col. 23:64-65; col. 24:1-4.

### A.   The Specification

According to the '381 Patent, the alleged invention reduces or eliminates supposed

deficiencies in the prior art user interfaces for handheld devices that resorted to the addition of

U.S. Patent No. 7,469,381
Issued: December 23, 2008

push buttons and complex menu systems. '381 Patent, col. 1:62-67. Specifically, the patent purports to address a problem in these prior art systems wherein the scrolling of lists and the translating, rotating, scaling of electronic documents on the small-size display screens of portable devices could not be easily accommodated. '381 Patent, col. 2:14-18.

The '381 Patent describes interactions with the user interface primarily through finger contacts and gestures on the touch-sensitive display. '381 Patent, col. 2:47-50. User input to the touch-sensitive display is accomplished using a touch-sensitive surface that detects haptic and/or tactile contact (including movement and breaking of the contact) from the user and converts the detected contact into interaction with one or more displayed user interface objects (*e.g.,* soft keys, icons, web pages). '381 Patent, col. 12:30-40. Software components determine if a contact occurred, determine and track the movement of a contact, and determine the breaking of a contact on the touch-sensitive display system. '381 Patent, col. 15:6-15.

In response to detecting the movement of an object (*e.g.,* a user's finger) on or near the touch-sensitive display, a displayed list or electronic document may be respectively scrolled or translated. '381 Patent, col. 20:31-37. In response to the detection of a virtual boundary such as the edge of an electronic document (or the terminus of a list), the direction of scrolling or translation may be reversed. '381 Patent, col. 21:22-25. Although the '381 Patent discusses list scrolling and electronic document translation separately, list scrolling can be considered as a particular example of electronic document scrolling since, as suggested by the '381 Patent, electronic document scrolling can be characterized as a two-dimensional version of list scrolling. '381 Patent, col. 26:56-58.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

## List Scrolling

The list scrolling operation moves the contents of the displayed list across the screen along a single dimension. '381 Patent, col. 26:56-57. A list has two endpoints each identified as a terminus (*i.e.*, an edge) of the list. According to the '381 Patent, in response to detecting the movement of an object detected on or near a touch screen display of a device, a list of items (*e.g.,* emails, instant message conversations, phone numbers, contact information, album names) displayed on the touch screen is scrolled in a first direction (*e.g.*, horizontally or vertically). '381 Patent, col. 24:1-18. If the terminus of the list (*e.g.*, either the first or last item in the list) is reached while scrolling in the first direction, and the object is still detected on or near the touch screen display, an area beyond the terminus of the list is displayed. '381 Patent, col. 24:19-32. The area beyond the terminus may be white or visually indistinct from the background of the list. '381 Patent, col. 24:28-32. When the object is no longer detected, the list is scrolled in a second direction opposite the first, until the area beyond the terminus is no longer displayed. '381 Patent, col. 24:33-36. Figure 6C is a visual depiction of the area the beyond the terminus of the list being displayed on the touch-sensitive display.



U.S. Patent No. 7,469,381
Issued: December 23, 2008

**Electronic Document Translation**

Whereas list scrolling is disclosed to occur along a single dimension, the '381 Patent also discusses a similar type of scrolling for electronic documents; one in which documents are scrolled along two dimensions. '381 Patent, col. 26:56-58.  Just as list scrolling allows a user to view the un-displayed content of a list that is too large to fit on the display screen, an electronic document can be translated (*i.e.,* scrolled) to allow a user to view an electronic document to large for the physical display area.  '381 Patent, col. 26:58-62.  Examples of electronic documents include a web page, digital image, spreadsheet, email, word processing document.  '381 Patent, col. 27:5-12.  Much like the termini or edges of a list, electronic documents also have edges. '381 Patent, col. 26:65-67.

According to the '381 Patent, in response to detecting the movement of a of an object (*e.g.*, a user's finger) on or near a touch screen display of a device, an electronic document displayed on the touch screen is scrolled in a first direction (*e.g.*, horizontally, vertically, or diagonally).  '381 Patent, abstract, col. 23:64-65.  Upon reaching the edge of the document, while scrolling in the first direction and while the object is still detected on or near the touch screen display, an area beyond the edge of the document is displayed.  '381 Patent, abstract, col. 27:25-30.  The area beyond the edge of the document may be a solid color (*e.g.,* black, white, gray) or otherwise visually distinct from the document itself.  '381 Patent, col. 27:30-36.  When the object is no longer detected, the electronic document is translated in a second direction until the area beyond the edge of the document is no longer displayed.  '381 Patent, abstract, col. 27:40-43.  The second direction for electronic document translation may be opposite the first direction.  '381 Patent, col. 27:45-47.  Thus, after scrolling in the second direction some portion of the electronic document is displayed.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

Figure 8C is a visual depiction of the area the beyond the edge of the electronic document being displayed on the touch-sensitive display.



Figure 8C

The '381 Patent also discusses how the scrolling or translation in the second direction may give the appearance of an elastic attachment corresponding to the simulation of an elastic ball striking an inelastic object and such apparent motion can be damped by the inclusion of a friction term. '381 Patent, col. 21:26-43; col. 24:38-44; col. 27:48-55.

Scrolling or translating may be accelerated in response to an accelerated movement of the detected object. '381 Patent, col. 20:40. An example of such accelerated movement is a swipe or sweep gesture. '381 Patent, col. 20:52-67. The '381 Patent also discusses using the speed of the detected input movement to determine the associated speed of list scrolling or electronic document translation. '381 Patent, col. 24:61-67, col. 27:18-20. Also discussed is correlating the distance of translation or scrolling with the distance traveled by the object on or near the touch-sensitive display. '381 Patent, col. 24:45-52, col. 27:60-64.

10

U.S. Patent No. 7,469,381
Issued: December 23, 2008

## B.      The Claims

The '381 Patent includes 20 claims, three of which (claims 1, 19, and 20) are

independent, and seventeen of which (claims 2-18) are dependent.

### 1.      The Independent Claims

The independent claims are very similar, and generally require the following common

elements: (1) a device with a touch screen display; (2) displaying a first portion of an electronic

document; (3) detecting the movement of an object on or near the touch screen display, and in

response, displaying a second portion of the document; (4) displaying an area beyond the edge of

the document along with a third portion of the document in response to an edge of the document

being reached while translating the document; and (5) translating the document in a second

direction until the area beyond the edge of the document is no longer displayed in response to

detecting that the object is no longer on or near the touch screen display, such that a fourth

portion of the document is displayed.  The following chart sets forth each limitation of claims 1,

19, and 20, with analogous claim limitations appearing in the same row:

| Claim 1 | Claim 19 | Claim 20 |
|---|---|---|
| A computer-implemented method, comprising: | A device, comprising: | A computer readable storage medium having stored therein instructions, which when executed by a device with a touch screen display, cause the device to: |
| (a) at a device with a touch screen display: | (a) a touch screen display; | |

U.S. Patent No. 7,469,381
Issued: December 23, 2008

| Claim 1 | Claim 19 | Claim 20 |
|---|---|---|
| | (b) one or more processors; (c) memory; (d) and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the programs including: | |
| (b) displaying a first portion of an electronic document; | (e) instructions for displaying a first portion of an electronic document; | (a) display a first portion of an electronic document; |
| (c) detecting a movement of an object on or near the touch screen display; in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion; | (f) instructions for detecting a movement of an object on or near the touch screen display; instructions for translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement; | (b) detect a movement of an object on or near the touch screen display; translate the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement; |
| (d) in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display: displaying an area beyond the edge of the document, and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion; and | (g) instructions for displaying an area beyond an edge of the electronic document and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion, in response to the edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and | (c) display an area beyond an edge of the electronic document and display a third portion of the electronic document, wherein the third portion is smaller than the first portion, if the edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and |

12

U.S. Patent No. 7,469,381
Issued: December 23, 2008

| Claim 1 | Claim 19 | Claim 20 |
|---|---|---|
| (e) in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion. | (h) instructions for translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display. | (d) translate the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display. |

## 2.    The Dependent Claims

Dependent claims 2-18 of the '381 Patent all depend from independent claim 1, and are reproduced as follows:

2. The computer-implemented method of claim 1, wherein the first portion of the electronic document, the second portion of the electronic document, the third portion of the electronic document, and the fourth portion of the electronic document are displayed at the same magnification.

3. The computer-implemented method of claim 1, wherein the movement of the object is on the touch screen display.

4. The computer-implemented method of claim 1, wherein the object is a finger.

5. The computer-implemented method of claim 1, wherein the first direction is a vertical direction, a horizontal direction, or a diagonal direction.

6. The computer-implemented method of claim 1, wherein the electronic document is a web page.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

7. The computer-implemented method of claim 1, wherein the electronic document is a digital image.

8. The computer-implemented method of claim 1, wherein the electronic document is a word processing, spreadsheet, email or presentation document.

9. The computer-implemented method of claim 1, wherein the electronic document includes a list of items.

10. The computer-implemented method of claim 1, wherein the second direction is opposite the first direction.

11. The computer-implemented method of claim 1, wherein translating in the first direction prior to reaching an edge of the document has an associated speed of translation that corresponds to a speed of movement of the object.

12. The computer-implemented method of claim 1, wherein translating in the first direction is in accordance with a simulation of an equation of motion having friction.

13. The computer-implemented method of claim 1, wherein the area beyond the edge of the document is black, gray, a solid color, or white.

14. The computer-implemented method of claim 1, wherein the area beyond the edge of the document is visually distinct from the document.

15. The computer-implemented method of claim 1, wherein translating the document in the second direction is a damped motion.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

16. The computer-implemented method of claim 1, wherein changing from translating in the first direction to translating in the second direction until the area beyond the edge of the document is no longer displayed makes the edge of the electronic document appear to be elastically attached to an edge of the touch screen display or to an edge displayed on the touch screen display.

17. The computer-implemented method of claim 1, wherein translating in the first direction prior to reaching the edge of the electronic document has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document; and wherein displaying an area beyond the edge of the electronic document comprises translating the electronic document in the first direction for a second associated translating distance, wherein the second associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document.

18. The computer-implemented method of claim 1, wherein translating in the first direction prior to reaching the edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object, and wherein displaying an area beyond the edge of the electronic document comprises translating the electronic document in the first direction at a second associated translating speed, wherein the second associated translating speed is slower than the first associated translating speed.

## C.    The Prosecution History

Application No. 11/956,969 was filed along with a Petition to Make Special Under Accelerated Examination Procedure on December 14, 2007.  It contained 20 claims.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

On February 28, 2008, the U.S. Patent and Trademark Office (PTO) dismissed the Petition to Make Special citing the Applicant's search terms and the resulting narrowness of the search as the reason for dismissal. In response to the dismissal, Applicant filed on March 13, 2008 a Request for Reconsideration along with a revised Pre-Examination search statement which included the supplemental search terms required by the PTO. According to the Applicant, the supplemental search did not reveal any additional relevant references. Applicant's Petition to Make Special was granted on April 17, 2008. In the Applicant's Supplemental Accelerated Examination Support Document filed on April 30, 2008, Applicant cited U.S. Patent 6,690,387 to Zimmerman *et al.* ("Zimmerman"), U.S. Patent 5,495,566 to Kwatinetz *et al.* ("Kwatinetz"), U.S. Patent Application Publication 2005/0012723 ("Pallakoff") and D. Miller, *Personal Java Application Environment*, (1999) ("Miller") as the references most closely related to the subject matter claimed in the Application.

On June 2, 2008, the PTO Examiner conducted an interview with the Applicant during which the parties discussed Zimmerman, a collection of Microsoft Word screenshots and U.S. Patent Application Publication 2008/0104544 ("Collins"). At the interview, Applicant agreed to amend the last limitation of each of the independent claims to read "in response to detecting that the object is no longer on or near the touch screen display, translating the document in a second direction until the area beyond the edge of the document is no longer displayed." The agreed to amendment was to replace the following language "after the object is no longer detected" phrasing used in the independent claims of the original application with the phrasing "in response to detecting that the object."

During a second interview on June 30, 2008, the Applicant and Examiner again discussed the Zimmerman reference along with Photo Mesa screenshots and U.S. Patent Application

16

U.S. Patent No. 7,469,381
Issued: December 23, 2008

Publication 2004/0027398 ("Jaeger").  To distinguish over the cited prior art, Applicant proposed

to make further amendments to the claims.  During a third interview on August 4, 2008,

Applicant's proposed amended claims were discussed with the Examiner along with the Photo

Mesa and Jaeger references.  The Examiner conceded that the proposed amended claims were

patentable over the cited prior art, and agreed to enter the changes by an Examiner's amendment.

The Examiner's amendment mainly added four displayed portions of the electronic document at

various stages of the process recited in each independent claim.

A Notice of Allowance issued on October 29, 2008, in which the Examiner's

amendments and reasons for allowance were detailed.  In particular, the Examiner's reasons for

allowance stated that the prior art failed to teach: 1) in response to an edge of the document being

reached while translating the document in a first direction, displaying an area beyond the edge of

the document along with a third portion of the document that is smaller than the first portion; and

2) in response to no longer detecting the object, translating the document in a second direction

until the area beyond the edge is no longer displayed, and displaying a fourth portion of the

electronic document that is distinct from the first portion.  The '381 Patent subsequently issued

on December 23, 2008.

On April 28, 2010, a Request for *Ex Parte* Reexamination was filed at the PTO in

connection with the '381 Patent.  On July 14, 2010, the PTO issued a Decision Granting *Ex

Parte* Reexamination finding that the references cited in the request raised a substantial new

question of patentability with respect to all claims of the '381 Patent.  The Request for *Ex Parte*

Reexamination cited the following references as the basis for the substantial new question of

patentability: Forlines *et al.*, *Glimpse: A Novel Input Model for Multi-Level Devices*, (2005)

("Glimpse"), Millhollon *et al.*, *Microsoft Office Word 2003 Inside Out*, (2003) ("Inside Out"),

U.S. Patent No. 7,469,381
Issued: December 23, 2008

U.S. Patent Application Publication 2005/0195154 ("Robbins") and Zimmerman.  The Decision stated that although Zimmerman was previously cited, it had not been considered in combination with the new prior art, namely, Glimpse, Inside and Robbins which were submitted with the reexamination request.

On January 13, 2011, the PTO issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate confirming the patentability of claims 1-20 of the '381 Patent.  The Examiner found that, while the prior art (*e.g.*, Inside Out) discloses displaying an area beyond the edge of the document, none of the Glimpse, Inside Out, Robbins or Zimmerman references taught or suggested the following: "in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document wherein the fourth portion is different than the first portion."

Thus, the Examiner allowed the claims of the '381 Patent because the prior art of record did not disclose the required feature of: translating the document in a second direction, in response to detecting that the object is no longer on or near the touch screen display, until the area beyond the edge is no longer displayed (thereby displaying a portion of the document that is different than the one displayed at first).  This is the alleged point of novelty for the '381 Patent.

## III.    STATEMENT OF THE LAW

The Federal Circuit has clearly stated that, during a reexamination proceeding: (1) there is no presumption of validity; and (2) patent claims are interpreted with the broadest reasonable interpretation.  *See In re American Academy Of Science Tech. Center*, 367 F.3d 1359, 1364, 70 USPQ2d 1827 (Fed. Cir. 2004); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988); *In re Yamamoto*, 740 F.2d 1569, 1571, 222 USPQ 934, 936 (Fed. Cir. 1984).  Construing patent claims broadly during reexamination is not unfair to the patentee because the patentee has the

U.S. Patent No. 7,469,381
Issued: December 23, 2008

opportunity to amend its patent claims to obtain more precise claim coverage.  *See, e.g., In re American Academy Of Science Tech. Center*, 367 F.3d at 1364; *In re Yamamoto*, 740 F.2d at 1571.

A single prior art reference anticipates the claimed invention under 35 U.S.C. § 102 when the reference discloses, either expressly or under the principles of inherency, all of the elements of the claimed invention.  *See Akamai Tech., Inc. v. Cable & Wireless Internet Serv., Inc.*, 344 F.3d 1186, 1194-95, 68 USPQ2d 1186 (Fed. Cir. 2003) (reversing jury verdict of patent validity and infringement, and holding patent claim invalid for anticipation based on, *inter alia*, inherent teachings of the prior art); *In re Schreiber*, 128 F.3d 1473, 1477-79, 44 USPQ2d 1429, 1431 (Fed. Cir. 1997) (affirming Board of Patent Appeals and Interferences' sustaining a final rejection based on anticipation and inherent teachings of the prior art), rehearing denied, suggestion for rehearing en banc declined (1997); and *In re Samour*, 571 F.2d 559, 563-64, 197 USPQ 1, 4 (CCPA 1978) (upholding that a rejection for anticipation relying upon on a single, primary prior art reference can also rely upon additional references to show that the claimed subject matter, every material element of which is disclosed in the primary prior art reference, was in possession of the public), rehearing denied (1978).

Two or more prior art references invalidate the claimed invention under 35 U.S.C. § 103 when the combined teachings of the references make obvious the elements of the claimed invention to a person of ordinary skill in the art.  *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1740 (2007) ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.").  A single prior art reference can also invalidate the claimed invention under 35 U.S.C. § 103 based on obviousness.  *See KSR Int'l Co,* 127 S.Ct. at 1744-1746 (finding a patent claim invalid based on obviousness given that a person of ordinary skill in

U.S. Patent No. 7,469,381
Issued: December 23, 2008

the art could have modified the teaching of a reference in a fashion encompassed by the claim, and would have seen the benefits of doing so); *Sibia Neurosciences Inc. v. Cadus Pharmaceutical Corp.*, 255 F.3d 1349, 55 USPQ2d 1927, 1931-33 (Fed. Cir. 2000) (reversing the district court's denial of JMOL motion on the issue of invalidity following the rejection by the jury of the invalidity defense based on obviousness and finding that it would have been obvious to modify a single prior art reference to arrive at the claimed invention). *See also Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276-77,69 USPQ2d 1686 (Fed. Cir. 2004); and *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1368-71, 67 USPQ2d 1649 (Fed. Cir. 2003) (affirming invalidity of patent claims based on obviousness) *cert. denied L. Perrigo Co. v. McNeil-PPC, Inc.*, 124 S.Ct. 1061 (2004).

Finally, various rationales such as the following can result in the claimed invention being obvious under 35 U.S.C. § 103: combining or substituting various claimed elements known in the prior art according to known methods to yield a predictable result; using a known technique to improve a similar device in the same way; choosing from a finite number of identified, predictable solutions with a reasonable expectation of success or, in other words, the solution was one which was "obvious to try"; a known work in one field of endeavor prompting variations of it for use either in the same field or a different field based on given design incentives or other market forces in which the variations were predictable to one of ordinary skill in the art; and/or a teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill in the art to modify the prior art reference or to combine the teachings of various prior art references to arrive at the claimed invention. *See KSR Int'l Co.*, 127 S.Ct. at 1739-1742.

## IV. PROPOSED REJECTIONS

This Request for Reexamination of the '381 Patent, claims 1-20, provides the basis for the following proposed rejections:

U.S. Patent No. 7,469,381
Issued: December 23, 2008

1.       Claims 1-14, 16, 19 and 20 of the '381 Patent should be rejected under 35 U.S.C.

§ 102(b) as anticipated by *Lira*;

2.       Claims 7, 13-15, 17 and 18 of the '381 Patent should be rejected under 35 U.S.C.

§ 103 as rendered obvious by *Lira*;

3.       Claims 15, 17 and 18 should be rejected under 35 U.S.C. § 103 as rendered

obvious by *Lira* in view of *Van Den Hoven*; and

4.       Claims 1-5, 7-13 and 15-20 of the '381 Patent should be rejected under 35 U.S.C.

§ 102(e) as anticipated by *Ording*.

## V.   STATEMENT OF SUBSTANTIAL NEW QUESTION OF PATENTABILITY

As discussed above in Section II. C of this Request, the Examiner allowed the claims of

the '381 Patent because the prior art considered did not expressly disclose the claimed feature of:

translating an electronic document in a second direction, in response to detecting that an object is

no longer on or near the touch screen display, until an area beyond the edge is no longer

displayed (thereby displaying a portion of the document that is different than the one displayed at

first).  This is the alleged point of novelty for the '381 Patent.  *See* January 13, 2011 Notice of

Intent to Issue *Ex Parte* Reexamination Certificate, at 5.

As explained more fully below, *Lira* (which was not cited during prosecution or

reexamination) provides a new technological teaching not considered by the Examiner in the

prior examination by disclosing the feature cited by the Examiner as apparently missing from the

prior art, namely, in response to detecting that the object is no longer on or near the touch screen

display, translating the electronic document in a second direction until the area beyond the edge of

the electronic document is no longer displayed to display a fourth portion that is different from

the first displayed portion of the electronic document.  *Infra* at 32-36 discussing, e.g., how *Lira*

teaches limitations 1(d)-(e).  Specifically, *Lira* discloses a "snap-to" feature in which a "vertical

21

U.S. Patent No. 7,469,381
Issued: December 23, 2008

alignment control" aligns a display window to an edge of an electronic document such as a web page (*i.e.*, translating the document in a second direction) after detecting that a pen (*i.e.*, object) has been lifted from the screen.  This causes a previously-displayed area beyond the edge of the document to no longer be displayed, and a new portion of the page to be displayed (which is different from a previously displayed portion as a result of the user's scrolling through the page). *Lira*, p. 15, lns. 18-31; Figure 14B.  Thus, *Lira* presents a substantial new question of patentability.

Similarly, as explained more fully below, *Ording* (which was not cited during prosecution or reexamination) provides a new technological teaching not considered by the Examiner in the prior examination by disclosing the feature cited by the Examiner as apparently missing from the prior art, namely, in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion that is different from the first displayed portion of the electronic document.  *Infra* at 70-75 discussing, e.g., how *Ording* teaches limitations 1(d)-(e).  Specifically, *Ording* discloses a scrolling feature in which a list (*i.e.*, electronic document) is bounced off a virtual boundary and reverses direction (*i.e.*, translating the document in a second direction) after detecting that the user's finger (*i.e.*, object) has been lifted from the screen.  This causes a previously-displayed area beyond the edge of the document to no longer be displayed, and a new portion of the list to be displayed (which is different from a previously displayed portion as a result of the user's scrolling through the list).  *Ording*, col. 8:22-53, col. 9:25-27, col. 6:50-65; Figures 6 and 7A-C. Thus, *Ording* presents a substantial new question of patentability.

22

U.S. Patent No. 7,469,381
Issued: December 23, 2008

## VI.    DETAILED EXPLANATION OF THE PERTINENCE AND MANNER OF APPLYING THE PRIOR ART TO THE CLAIMS OF THE '381 PATENT

### A.    Claims 1-14, 16, 19 and 20 of the '381 Patent should be rejected under 35 U.S.C. § 102(b) as anticipated by *Lira*

As discussed above, *Lira* is a PCT patent application that was published on October 2, 2003, more than one year before the January 7, 2007 earliest possible effective filing date for the '381 Patent, and is therefore prior art to the '381 Patent under 35 U.S.C. § 102(b).  Moreover, *Lira* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent.  *Supra* at 3.

*Lira* discloses an electronic device for browsing an electronic document.  *Lira* at p. 1, ln. 28-p. 2, ln. 3.  As explained in *Lira* and illustrated in Figure 2, a display screen can be thought of as a small field-of-view window over a large image or electronic document.  The electronic document may be a web page with structured elements such as columns.  *Lira* discloses several ways for a display screen to pan through the web page (*e.g.*, item 100) whose size exceeds the size of the display screen.  *Lira* shows a display window (item 200) superimposed onto the larger web page 100, where the user scrolls back and forth (indicated by arrows of potential scrolling directions) to view different areas of the page.

23

U.S. Patent No. 7,469,381
Issued: December 23, 2008



**FIG. 2**

*Lira* discloses scrolling through this web page by illustrating the position over time of one browser window performing a panning operation.  In Figure 10, *Lira* illustrates a horizontal scrolling operation by showing multiple display windows that represent the path of a single window scrolling horizontally through the web page.  Figure 12 likewise illustrates scrolling this window in horizontal, vertical, or diagonal directions using a stylus.

Figure 14B shows a path along which the user moves her input tool to pan the display window through portions of the underlying web page.  This series of windows in Figure 14B depicts the positions over time of a single window 1205 as the window vertically scrolls through the underlying web page 1210.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



As shown in the annotated figure, the logical column 1220 is an electronic document

which has boundaries. *Lira*, p. 15, lns. 25-29 (logical columns 1215, 1220 and 1225 are likewise

each electronic documents which are sub-documents in a larger web page).  Any one of the

areas within window 1205 of the logical column 1220 is a portion of the electronic document

which is displayed as the user scrolls through the document.  An exemplary first portion is

shown in an annotated fashion in the figure above.

*Lira* discloses several ways for the panning to utilize structures in the document in order

to align the display screen with structures in the document.  One such mechanism is an animated

"snap" feature that "snaps" the edge of the display screen to the edge of a structure in the

document when a panning operation ends (for example, when a user lifts their finger off a touch-

screen display).  This "snap" feature is disclosed in *Lira* as one of several solutions for ensuring

that a display screen panning through a large electronic document remains properly aligned with

the data in the document.  *See, e.g., Lira*, p. 14-15.  In this mode, if the user moves the screen

U.S. Patent No. 7,469,381
Issued: December 23, 2008

away from the column being read (while translating the document), an area beyond the edge of the column/document will be displayed.

As part of the "snap-to" feature is a "vertical alignment control" which displays window 1205 to an edge of the document (*i.e.*, translates in a second direction) after detecting that a pen (*i.e.*, object) has been lifted from the screen. This causes a previously-displayed area beyond the edge of the page to no longer be displayed, and a new portion of the page to be displayed (which is different from a previously displayed portion as a result of the user's scrolling through the page). Figure 14B above illustrates this "snap-to" behavior.

As set forth in more detail below and in the chart attached at Exhibit 6, Part A, it is respectfully submitted that *Lira* anticipates claims 1-14,16, 19 and 20 of the '381 Patent.

### 1.     Claims 1, 19 and 20 should be rejected as anticipated by *Lira*

As explained above in Section II.B.1 (*supra* at 11-12), independent claims 1, 19, and 20 of the '381 Patent recite substantially similar limitations, and are therefore treated together in the section below. *Lira* discloses each and every limitation of these claims.

*Lira Discloses the Preambles of Claims 1, 19 and 20*: The preamble of claim 1 recites a "computer-implemented method," while the preamble of claim 19 recites a "device." The preamble of claim 20 recites a "computer readable storage medium having stored therein instructions" which are "executed by a device with a touch screen display." *Lira* discloses these features.

*Lira* discloses "a device having a small display ... for example, a PDA." *Lira*, p. 1, lns. 16-17. "The display may include a touch screen." *Lira*, p. 3, ln. 10. Thus, *Lira* discloses a device with a touch screen display. The device may be one or more general purpose or special purpose, programmed computers. *Lira*, p. 18, lns. 23-30. Therefore, *Lira* discloses the device required in the claim 19 preamble. According to *Lira*, this device includes a computer "storage

U.S. Patent No. 7,469,381
Issued: December 23, 2008

medium" where there is a "software application loaded on the client device … for commanding and directing communications enabled by the client device." *Lira*, p. 19, lns. 27-30. *Lira* states that "a program, a piece of code, an instruction, a device, a computer" instructs the device to operate as described. *Lira*, p. 1, 9, lns. 24-27. Thus, *Lira* discloses that the computer has a storage medium having instructions that are stored therein and that are executed by the device with a touch screen display, as required in the claim 20 preamble. Based on the foregoing, it is clear that *Lira* discloses that the resulting method by which the device operates is implemented by a computer, and thus discloses a computer-implemented method, as required in the claim 1 preamble.

Thus, *Lira* discloses the preambles of claims 1, 19 and 20. *See* Exhibit 6, Part A at 1, 26 and 28-29.

*Lira Discloses Limitations 1(a) and 19(a)*: These limitations require that the device have a "touch screen display." As discussed above in relation to the preambles of the independent claims, *Lira* discloses this feature. *Lira* discloses "a device having a small display ... for example, a PDA." *Lira*, p. 1, lns. 16-17. "The display may include a touch screen." *Lira*, p. 3, ln. 10. *See* Exhibit 6, Part A at 1 and 26-27.

*Lira Discloses Limitations 19(b)-(d)*: These limitations require that the device include "one or more processors," "memory" and "one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors". *Lira* discloses these features.

*Lira* makes clear that the (client) device includes one or more processors such as "one or more general-purposes computers… special purpose computers" or a combination thereof. *Lira*, p. 18, lns. 23-30. *Lira* also makes clear that the (client) device includes memory such as a

U.S. Patent No. 7,469,381
Issued: December 23, 2008

"storage medium." *Lira*, p. 19, lns. 27-30. As discussed above in relation to the preambles of

the independent claims (*supra* at 26-27), *Lira* also discloses one or more programs in the form of

software, code and/or instructions stored in memory and configured to be executed by the device

processor(s).

*Lira* also discloses that the one or more programs are stored in the memory and

configured to be executed by the one or more processors. For example, *Lira* discloses a

"storage medium" where there is a "software application loaded on the client device ... for

commanding and directing communications enabled by the client device." *Lira*, p. 19, lns. 27-

30. *Lira* states that "a program, a piece of code, an instruction" instructs the device (including

the processor(s) to operate as described. *Lira*, p. 19, lns. 24-27.

Thus, *Lira* discloses limitations 19(b)-(d). *See* Exhibit 6, Part A at 26-27.

*Lira Discloses Limitations 1(b), 19(e) and 20(a)*: These limitations require displaying "a

first portion of an electronic document." *Lira* discloses this feature.

*Lira* discloses an electronic device for browsing an electronic document. As illustrated

in *Lira* and explained further below in connection with Figures 2 and 14, a display screen can be

thought of as a small field-of-view window over a large image or electronic document. *Lira*, p. 1,

ln. 16-p. 2, ln. 3.

*Lira* illustrates the steps of scrolling through an electronic document in its figures. Much

like in the '381 Patent (*See*, *e.g.*, col. 27:5-12), an example of an electronic document that a user

may view through the device is a web page. *Lira*, Figure 2, item 100. Web page 100 in *Lira* is an

electronic document that is too large to display in its entirety on the relatively small screen of a

device such as a PDA. Instead, only a portion of the web page can be readably displayed in the

PDA's browser window at any given time. This is illustrated in Figure 2 by a display window

U.S. Patent No. 7,469,381
Issued: December 23, 2008

superimposed onto the web page. *Lira*, Figure 2, item 200. Since web page 100 is larger than

display window 200, the user must scroll back and forth along two dimensions (as indicated in

Figure 2 by arrows that show potential scrolling directions) to view different areas of the web page.

　　As part of that browsing of an electronic document, *Lira* will display a first portion of

an electronic document. This is illustrated in Figure 14B of *Lira*. More specifically, Figure 14B

shows a path along which the user moves an input tool (*e.g.*, stylus pen) to pan display window

1205 through portions of the underlying web page. *Lira*, p. 14, lns. 18-28; p. 15, lns. 18-19. This

series of windows in Figure 14B depicts the positions over time of a single window as the window

vertically scrolls through an underlying web page.



**FIG. 14B**

　　As shown in the annotated figure, the logical column 1220 is an electronic document.

For example, this logical column 1220 has boundaries. *Lira*, p. 15, lns. 25-29. Logical columns

1215 and 1225 are likewise each electronic documents. All of these logical columns 1215,

U.S. Patent No. 7,469,381
Issued: December 23, 2008

1220, and 1225 are sub-documents in a larger electronic document: the web page. Each of these sub-documents is displayed on the display screen.

Figure 14B illustrates several different portions of the electronic document 1220 being displayed in the display window over time. Any one of these displayed areas of the logical column 1220 is a *portion* of that electronic document. Accordingly, an example of a first portion of an electronic document 1220 displayed by *Lira* is the portion highlighted in the above figure. *Lira* therefore discloses displaying a first portion of an electronic document.

Thus, *Lira* discloses limitations 1(b), 19(e) and 20(a). *See* Exhibit 6, Part A at 1-8, 27 and 29.

*Lira Discloses Limitations 1(c), 19(f) and 20(b)*: These limitations require detecting "a movement of an object on or near the touch screen display," and "in response to detecting the movement," translating the electronic document "in a first direction to display a second portion of the electronic document." These limitations further require that the second portion be different from the first portion. *Lira* discloses these features.

*Lira* discloses detecting a movement of an object - namely, a stylus (which, is an example of an object disclosed in the '381 Patent (*see, e.g.,* col. 12:66-col. 13:1)) - on the touch screen display. *Lira* further discloses translating the electronic document in a first direction in response to detecting the movement. For example, *Lira* discloses "touch-and-drag" scrolling, where the user can "scroll the display window by placing a stylus 600 on the display window 605 and then dragging the stylus 600." *Lira*, p. 11, lns. 27-29. *Lira* discloses detecting such movement based on "tracking the motion of the input tool on the touch screen." *Lira*, p. 3, lns. 1-14.

As the user drags the display window to scroll in a first direction (*see* the general downward direction in which the filled arrows below point), the electronic document is

U.S. Patent No. 7,469,381
Issued: December 23, 2008

translated in the display so that a second portion of the electronic document that is different than the first portion of the electronic document will be displayed, as illustrated in Figure 14B.



**FIG. 14B**

An example of a second portion of the electronic document 1220 displayed by *Lira* is the portion highlighted in the above annotated figure. This second portion differs from the first portion due to the difference between the contents shown in the display area within the second highlighted portion in the figure above, and the contents shown in the display area within the first highlighted portion in the in the same figure depicted in the discussion of limitations 1(b), 19(e) and 20(a).

The foregoing demonstrates that *Lira* discloses detecting a movement of an object on the touch screen display and, in response, translating the electronic document to display a second portion of the electronic document that is different from the first portion.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

Thus, *Lira* discloses limitations 1(c), 19(f) and 20(b).  *See* Exhibit 6, Part A at 8-10, 27 and 29.

*Lira Discloses Limitations 1(d), 19(g) and 20(c)*:  These limitations require that "in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display," displaying "an area beyond the edge of the document" and "a third portion of the electronic document." .  These limitations further require that the third portion be "smaller than the first portion."  *Lira* discloses these features.

*Lira* discloses in response to an edge of the electronic document being reached (while translating the document in the first direction and while the object is still detected on the touch screen): displaying an area beyond the edge of the document.  For example, in one mode described in *Lira*, the user moves the screen away from the column being read (thus translating the document given that the column is an electronic document as explained in the discussion above pertaining to limitations 1(b), 19(e) and 20(a) (*supra* at 28-30)).  In this mode, if the user moves the screen away from the column being read (while translating the document), an area beyond the edge of the column/document will be displayed.

More specifically, *Lira* discloses "vertical alignment control" which will align the display window to an edge of the electronic document.  In one embodiment, "the vertical alignment control is enabled when the user lifts the pen 1200 from the display 1205," which causes the column " to snap into alignment with the display window as the user stops scrolling." *Lira*, p. 15, lns. 18-31.  Thus, before the user lifts the pen, the translation will remain while the object/pen is still detected on the touch screen.  In addition, an area beyond the edge will be displayed under these conditions when the edge of the document is reached.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

Figure 14B illustrates this "snap-to" behavior, including the conditions that trigger this "snap" behavior. As shown and highlighted in the annotated figure, the display window is displaying an exemplary area beyond the edge of the logical column 1220. Specifically, the display window 1205 is displaying an area of logical column 1220 and also displaying an area of logical column 1225 (a separate electronic document).



This same behavior is part of the continuation of the act of scrolling down the page described in the previous limitations. As the user continues to scroll the display window (*e.g.*, at an angle to true vertical as depicted above) down over the column and reaching an edge of the document, the area beyond the edge of the document is displayed as depicted in the figure above.[2]

---

[2] It is worth noting that an "edge" of an electronic document may be *internal*. In fact, at least one Federal Court construed the term "edge of an electronic document" as being "not limited to 'external' edges'" and stated that "[a]n 'edge' of an electronic document may be internal." *See* pp. 17-19 and 23 of April 4, 2012 Order Construing Disputed Claim Terms issued by the Federal District Court for the Northern District of California in *Apple Inc. v. Samsung Elecs. Co.*, 5:11-CV-01846-LHK, ECF No. 849 (attached hereto as Exhibit 7). An example of such an "internal" edge is the boundary of individual columns in *Lira*, such as the boundary between column 1220 and column 1225. Thus, regardless of whether individual columns (such as logical columns 1220 and 1225) within web page 1210 are considered to be separate "electronic documents", it is

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Lira* also discloses displaying a third portion of the electronic document that is smaller than the first portion.  Continuing the example illustrated in the same figure herein, as the user continues to drag the display window beyond the edge of the logical column 1220, the display window will increasingly pan over areas of logical column 1225.  When this occurs, because the display window is only devoting a portion of its display area to the display of logical column 1220, the third portion of the column 1220 being displayed is naturally smaller than the first portion of column 1220 as depicted in the figure shown in the discussion pertaining to limitations 1(b), 19(e) and 20(a).

The foregoing demonstrates that *Lira* discloses in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on the touch screen: displaying an area beyond the edge of the document, and a third portion that is smaller than the first portion.

Thus, *Lira* discloses limitations 1(d), 19(g) and 20(c).  *See* Exhibit 6, Part A at 10-13 and 27-29.

<u>*Lira Discloses Limitations 1(e), 19(h) and 20(d)*</u>:  These limitations require that "in response to detecting that the object is no longer on or near the touch screen display," translating the document "in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document.  These limitations further require that the fourth portion be "different from the first portion."  *Lira* discloses these features.

---

clear that *Lira* discloses displaying an area beyond an "internal" edge of electronic document 1210 as depicted in Figure 14B, given that window 1205 is displaying an area of column 1220 while also displaying an area of column 1225 beyond the boundary of column 1220.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Lira* discloses, in response to detecting that the object is no longer on the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document. More specifically, *Lira* discloses that, in response to detecting that "the pen 1200 is lifted from the screen," the document 1220 will "snap" into alignment (*i.e.*, it will be translated in a second direction) such that the area beyond the edge is no longer displayed. "[A]s the pen 1200 is lifted from the screen" certain actions occur depending on whether the scrolling from column 1220 to column 1225 doesn't exceed a certain threshold. Specifically, when the user lifts the stylus or finger from the screen, "the logical column 1220 [will] snap into alignment with the display window 1205 as the user stops scrolling" by for example "snap[ping] to the nearest logical column." *Lira*, p. 15, lns. 19-25. This action is taken as a result of an indication of "an intention to continue to view the text column 1220" and, thus, "the display 1205 centers the logical column 1210 as the pen 1200 is lifted from the screen." *Id.*

This snap-to function moves the document in a second direction, as indicated in the arrow in Figure 14B, until the area beyond the edge of the column is no longer displayed. This will result in a fourth portion of the column 1220 being displayed, and will also result in no area of column 1225 being displayed, as can be seen from the following:

U.S. Patent No. 7,469,381
Issued: December 23, 2008



*Lira* also discloses that the fourth portion is different from the first portion. This is simply due to the fact that the user will have scrolled down through the electronic document. An example of the fourth portion of the electronic document 1220 displayed by *Lira* is the portion highlighted in the above annotated figure. As can be seen, this fourth portion differs from the first portion due to the difference between the contents shown in the display area within the fourth highlighted portion in the figure above, and the contents shown in the display area within the first highlighted portion in the same figure as depicted in the discussion of limitations 1(b), 19(e) and 20(a).

The foregoing demonstrates that *Lira* discloses that, in response to detecting that the object is no longer on the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion that is different from the first portion of the electronic document.

Thus, *Lira* discloses limitations 1(e), 19(h) and 20(d). *See* Exhibit 6, Part A at 13-15, 28 and 30.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

In view of the foregoing, *Lira* discloses each and every limitation of, and therefore anticipates, claims 1, 19 and 20.

### 2.   Claim 2 should be rejected as anticipated by *Lira*

Claim 2 depends from claim 1, and further requires that the first, second, third and fourth portions of the electronic document be "displayed at the same magnification." *Lira* discloses this feature.

As Figure 14B of *Lira* illustrates, the magnification of the web page (*i.e.*, the electronic document) is not changed as the user browses through the page. Instead, the underlying web page is displayed at the same magnification as window 1205 moves to display the different first, second, third and fourth portions illustrated in the discussion above independent claim 1 (*supra* at 29, 31, 33 and 36).

Thus, *Lira* anticipates claim 2. *See* Exhibit 6, Part A at 15-16.

### 3.   Claim 3 should be rejected as anticipated by *Lira*

Claim 3 depends from claim 1, and further requires that the "movement of the object is on the touch screen display." *Lira* discloses this feature.

*Lira* discloses that the touch screen input occurs in response to the user touching or pressing the touch screen display, either through a finger or a stylus pen (*i.e.*, the object). The "motion of the input tool on the touch screen" is tracked, and therefore, the movement of such an object is on the touch screen display. *Lira*, p. 3, lns. 6-14.

Thus, *Lira* anticipates claim 3. *See* Exhibit 6, Part A at 16-17.

### 4.   Claim 4 should be rejected as anticipated by *Lira*

Claim 4 depends from claim 1, and further requires that "the object is a finger." *Lira* discloses this feature.

37

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Lira* discloses that "the input tool may be a pen stylus or a finger." *Lira*, p. 3, lns. 6-9.

*Lira* therefore discloses that the tool (*i.e.*, object) is a finger.

Thus, *Lira* anticipates claim 4.  *See* Exhibit 6, Part A at 17.

### 5.   Claim 5 should be rejected as anticipated by *Lira*

Claim 5 depends from claim 1, and further requires that the "first direction is a vertical

direction, a horizontal direction, or a diagonal direction."  *Lira* discloses this feature.

*Lira* discloses that the direction of scrolling (*i.e.*, the first translation direction) can be

horizontal, vertical, or diagonal, such that the first direction can be any direction as shown by the

arrows depicted in Figures 12 and 14B.

Thus, *Lira* anticipates claim 5.  *See* Exhibit 6, Part A at 17-18.

### 6.   Claim 6 should be rejected as anticipated by *Lira*

Claim 6 depends from claim 1, and further requires that the "the electronic document is a

web page." *Lira* discloses this feature.

As discussed above in connection with limitation 1(b) (*supra* at 28-30), *Lira* discloses

that the electronic document that the user views through the device is a web page (*e.g.*, item 100

in Figure 2 or item 1210 in Figure 14B).  *Lira*, p. 2, lns. 22-23.

Thus, *Lira* anticipates claim 6.  *See* Exhibit 6, Part A at 18-19.

### 7.   Claim 7 should be rejected as anticipated by *Lira*

Claim 7 depends from claim 1, and further requires that the "the electronic document is a

digital image." *Lira* discloses this feature.

*Lira* discloses that the electronic document includes a digital image.  *See*, *e.g.*, *Lira*,

Figures 2, 14B (showing web pages that include images such as items 100 and 1210).

Thus, *Lira* anticipates claim 7.  *See* Exhibit 6, Part A at 19-21.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

### 8.    Claim 8 should be rejected as anticipated by *Lira*

Claim 8 depends from claim 1, and further requires that the "electronic document is a word processing, spreadsheet, email or presentation document." *Lira* discloses this feature.

*Lira* discloses applying the methods discussed in it to electronic documents such as a presentation document (*i.e.*, "other electronic documents ... formatted for viewing and navigation."). *Lira*, p.1, ln. 7. *Lira* also discloses applying the methods discussed in it to electronic documents such as a "spreadsheet." *Lira*, p.16, lns. 1-3.

Thus, *Lira* anticipates claim 8.  *See* Exhibit 6, Part A at 21-22.

### 9.    Claim 9 should be rejected as anticipated by *Lira*

Claim 9 depends from claim 1, and further requires that the "electronic document includes a list of items." *Lira* discloses this feature.

*Lira* discloses that the web page (*i.e.*, electronic document) may include a list of items For example, as shown and highlighted in an annotated version of Figure 14B, the logical columns of the web page as disclosed by *Lira* include lists of items.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



Thus, *Lira* anticipates claim 9.  *See* Exhibit 6, Part A at 22-23.

**10.   Claim 10 should be rejected as anticipated by *Lira***

Claim 10 depends from claim 1, and further requires that the "second direction is opposite the first direction." *Lira* discloses this feature.

As discussed in above in connection with claim 5 (*supra* at 38), *Lira* discloses that the first direction can be horizontal, vertical, or diagonal, such that the first direction can be any direction - including the opposite direction of the "snap to" operation.  The goal of *Lira*'s snap-to function is to "cause[] the logical column 1220 to snap into alignment with the display window 1205 as the user stop[s] scrolling." *Lira*, p. 15, lns. 19-21.  Accordingly, in the case where the first direction is a horizontal translation only to the right, then the second direction is opposite the first direction (*i.e.*, a horizontal translation to the left).

Thus, *Lira* anticipates claim 10.  *See* Exhibit 6, Part A at 23-24.

40

U.S. Patent No. 7,469,381
Issued: December 23, 2008

### 11.    Claim 11 should be rejected as anticipated by *Lira*

Claim 11 depends from claim 1, and further requires that the "translating in the first direction prior to reaching an edge of the document has an associated speed of translation that corresponds to a speed of movement of the object." *Lira* discloses this feature.

*Lira* states that "[m]oving the page of information may include moving the page a distance equal to a change in the coordinate information of the input tool multiplied by a factor based on the acceleration or the velocity of the input tool." *Lira*, p. 5, lns. 13-15.  Thus, the speed of translation in the first direction prior to reaching the edge corresponds to a speed of movement of the input tool (*i.e.*, object).

Thus, *Lira* anticipates claim 11.  *See* Exhibit 6, Part A at 24.

### 12.    Claim 12 should be rejected as anticipated by *Lira*

Claim 12 depends from claim 1, and further requires that the "translating in the first direction is in accordance with a simulation of an equation of motion having friction."  *Lira* discloses this feature.

*Lira* states that the "the user may select a variable velocity that begins scrolling the display slowly, picks up speed, and then slows down again as the displayed portion approaches the second view." *Lira*, p. 14, lns 15-17.  Thus, *Lira* discloses that the translation speed may be slower at the beginning and end of the translations, thus simulating friction and inherently relying on some equation to calculate this variable translation speed.

Thus, *Lira* anticipates claim 12.  *See* Exhibit 6, Part A at 24.

### 13.    Claim 13 should be rejected as anticipated by *Lira*

Claim 13 depends from claim 1, and further requires that the "area beyond the edge of the document is black, gray, a solid color, or white."  *Lira* discloses this feature.

41

U.S. Patent No. 7,469,381
Issued: December 23, 2008

The area beyond the edge will be dictated by the particular web page column (*i.e.*,

document) being scrolled in *Lira*. For example, in Figure 14B, if the background of the web

page is a solid color (*e.g.* white), that will be the color of the area beyond the edge of the

document, given that the area beyond the edge will be a portion of the neighboring column

1225. Thus, under this example, the area beyond the edge of the column displayed is a solid

color, *e.g.* white.

Thus, *Lira* anticipates claim 13. *See* Exhibit 6, Part A at 24-25.

### 14.    Claim 14 should be rejected as anticipated by *Lira*

Claim 14 depends from claim 1, and further requires that the "area beyond the edge of the

document is visually distinct from the document." *Lira* discloses this feature.

For example, Figure 14B of *Lira* shows the neighboring column displayed beyond the

edge of the document, which is visually distinct from the document.

Thus, *Lira* anticipates claim 14. *See* Exhibit 6, Part A at 25.

### 15.    Claim 16 should be rejected as anticipated by *Lira*

Claim 16 depends from claim 1, and further requires that the "changing from translating

in the first direction to translating in the second direction until the area beyond the edge of the

document is no longer displayed makes the edge of the electronic document appear to be

elastically attached to an edge of the touch screen display or to an edge displayed on the touch

screen display." *Lira* discloses this feature.

As discussed above in connection with limitations 1(d) and (e) (*supra* at 32-36), *Lira*

discloses translating in the first direction, followed by translating in the second direction until the

area beyond the edge of the document is no longer displayed in the form of a snap-to function.

*Lira* further discloses that the snap-to function "causes the logical column 1220 to snap into

alignment with the display window 1205 as the user stop scrolling." *Lira*, p. 15, lns. 19-21.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

This snap-to-align function therefore makes the edge of the electronic document appear to be elastically attached to an edge of the touch screen display.

Thus, *Lira* anticipates claim 16.  *See* Exhibit 6, Part A at 26.

### B.   Claims 7, 13-15, 17 and 18 of the '381 Patent should be rejected under 35 U.S.C. § 103 as rendered obvious by *Lira*

As set forth in more detail below and in the chart attached at Exhibit 6, Part B, it is respectfully submitted that *Lira* renders obvious claims 7, 13-15, 17 and 18 of the '381 Patent.

### 1.   Claim 7 should be rejected as rendered obvious by *Lira*

Claim 7 depends from claim 1, and further requires that the "the electronic document is a digital image."  *Lira* discloses this feature as discussed above (*supra* at 38-39).  However, even assuming for the sake of argument that *Lira* does not explicitly disclose applying its methods to a digital image, it would have been obvious to do so for a number of reasons.  For example, it was well known in the art at the time of the invention that images could be included within a web page which is an electronic document disclosed by *Lira*.  In fact, the web page shown in *Lira* includes digital images.  *See*, *e.g.*, *Lira,* Figures 2, 14B (showing web pages that include images such as items 100 and 1210).  Accordingly, at a minimum, *Lira* explicitly discloses that its techniques apply to electronic documents that include digital images.  Thus it would have been obvious to one of ordinary skill in the art to apply the teaching of *Lira* to an electronic document which is a digital image.

Moreover, the user interface features identified above as anticipating claim 1 of the '381 Patent operate independently of the nature of the underlying electronic document.  In other words, the user can utilize these same techniques to manipulate any document displayed on the screen, regardless of whether the document is a list of items or a digital image or any other kind of electronic document.  Additionally, because digital images are commonly displayed

U.S. Patent No. 7,469,381
Issued: December 23, 2008

on computing devices, one of skill in the art would have been motivated to modify *Lira* so that its user interface features operated on digital images.

Importantly, having a digital image as an electronic document would have been a simple design choice representing a trivial and predictable variation.  As the '381 Patent admits, electronic documents – including images – were well-known and commonly displayed on portable electronic devices with small screens long before the priority date of the '381 Patent, as were other document types including word processing documents, spreadsheets, and presentation documents.  *See* '381 Patent col. 2: 14-23; col. 27:5-12.[3]  Thus, it would have been obvious to one of ordinary skill in the art to apply the disclosure of *Lira* to digital images.  A person of ordinary skill would have been motivated to use the techniques disclosed in *Lira* to improve navigation in any number of electronic documents, including digital images.

In addition, given that *Lira* discloses support for many well known and complex document types including web pages and their associated documents, *Lira* clearly was designed to support many document types.  As a result, a person of ordinary skill in the art would view the exemplary web page described in *Lira* as interchangeable with other types of electronic documents, including digital images.  Substituting one document type (such as an image) for another document type (such as a web page that includes an image) would have been nothing more than a modification yielding a predicable result based on known elements, and would be viewed as a mere design choice by one of ordinary skill.

Thus, *Lira* renders claim 7 obvious.  *See* Exhibit 6, Part B at 2-6.

---

[3] M.P.E.P. 2217 III and 2258 I. F 1-2 state that, during reexamination, "an admission by the patent owner of record in the file or in a court record may be utilized in combination with a patent or printed publication".  "An admission as to what is in the prior art is simply that, an admission, and requires no independent proof.  It is an acknowledged, declared, conceded, or recognized fact or truth".

U.S. Patent No. 7,469,381
Issued: December 23, 2008

### 2.  Claim 13 should be rejected as rendered obvious by *Lira*

Claim 13 depends from claim 1, and further requires that the "area beyond the edge of the document is black, gray, a solid color, or white." *Lira* discloses this feature as discussed above (*supra* at 41-42). However, even assuming for the sake of argument that *Lira* does not explicitly state that the area beyond the edge of the displayed column is white, black, gray, or any other solid color, requiring that the edge of the document be a solid color or shade does not add anything of patentable significance to the alleged invention.  The area beyond the edge will be dictated by the particular web page column (*i.e.*, document) being scrolled in *Lira*.  For example, in Figure 14B, if the background of the web page is a solid color (*e.g.,* white), that will be the color of the area beyond the edge of the document, given that the area beyond the edge will be a portion of the neighboring column 1225.  Thus, under this example, the area beyond the edge of the column displayed is a solid color, *e.g.,* white.

Nevertheless, making the area beyond the edge of the document white, black, gray, or any other solid color would have been a simple design choice for one of ordinary skill in the art. Indeed, colors were well-known in the graphic user interface art, and selecting or replacing one color for another among possible known colors for the area beyond the edge was an entirely predictable, trivial, variation.  Finally, to simplify implementation and to minimize memory and processor use, a solid color can be used rather than a pattern and, therefore, it would have been obvious to one of ordinary skill in the art to make the area beyond the edge of the document any solid color.

Thus, *Lira* renders claim 13 obvious.  *See* Exhibit 6, Part B at 6-7.

### 3.  Claim 14 should be rejected as rendered obvious by *Lira*

Claim 14 depends from claim 1, and further requires that the "area beyond the edge of the document is visually distinct from the document." *Lira* discloses this feature as discussed above

U.S. Patent No. 7,469,381
Issued: December 23, 2008

(*supra* at 42).  However, even assuming for the sake of argument that *Lira* does not explicitly state that the area beyond the edge of the document is visually distinct from the document, requiring that the area beyond the edge of the document be visually distinct from the electronic document does not add anything of patentable significance to the alleged invention.

As discussed above in connection with claim 13 (*supra* at 45), it would have been obvious to one of ordinary skill in the art to have the area beyond the edge of the document be a solid color or shade (*e.g.*, white, black, gray, or any other solid color).  Similarly, it would have been obvious to choose any one of these or other colors that has a sharp contrast from the document background to further clarify to the user that the end of the document has been reached, because an edge can be better conveyed by the application of contrast.  Coloring the area beyond the edge of the document a single shade so as to display some contrast with the edge of the document would have been a simple design choice representing a trivial and predictable variation, dependent on the designer's aesthetic preference.  Visual distinctions were not novel in user interfaces, and their use here would have been entirely predictable to a person of ordinary skill.

Thus, *Lira* renders claim 14 obvious.  *See* Exhibit 6, Part B at 7-8.

### 4.    Claim 15 should be rejected as rendered obvious by *Lira*

Claim 15 depends from claim 1, and further requires that the "translating the document in the second direction is a damped motion."  To the extent that *Lira* does not explicitly state that the translation in the second direction is a damped motion, it would have been obvious to one of ordinary skill in the art to modify the teachings of *Lira* relating to the translation in the second direction to ensure that this particular motion is damped.

*Lira* discloses a "snap-to" function that moves the document in the second direction so that when the user lifts the stylus or finger from the screen, "the logical column 1220 [will] snap into alignment with the display window 1205 as the user stops scrolling" by for

U.S. Patent No. 7,469,381
Issued: December 23, 2008

example "snap[ping] to the nearest logical column." *Lira*, p. 15, lns. 19-25.  Moreover, *Lira*

discloses that the scrolling velocity may be varied (*e.g.*, slowed down) as the displayed portion of

the document approaches a particular view.  *Lira*, p. 14, lns. 15-17.  Here, the "snap-to"

transition is an approach to such a view.  Such varying of scrolling velocities amounts to damped

motion.  It would have been obvious to modify the "snap-to" motion in the second direction to

include such a dampening feature.  One of ordinary skill in the art would have been motivated to

do so in order to provide a smoother transition between the document portions as the area beyond

the edge is no longer displayed, since *Lira* discloses improving readability and enabling users to

get a better sense of their position in the document through scrolling animation effects.  *Lira*, p.

1, lns. 10-14; p. 12, ln. 29 – p.13, ln. 13.  Such an implementation would have amounted to

nothing more than an application of a known technique (*e.g.*, the dampening) to another

technique (*e.g.*, the snap-to function) - both of which are taught by the same reference - to

achieve a predictable result.

Thus, *Lira* renders claim 15 obvious.  *See* Exhibit 6, Part B at 8-9.

### 5.      Claim 17 should be rejected as rendered obvious by *Lira*

*Lira Discloses the preamble of claim 17*:  Claim 17 depends from claim 1, and further

requires that "translating in the first direction prior to reaching the edge of the electronic

document has a first associated translating distance that corresponds to a distance of movement

of the object prior to reaching the edge of the electronic document."  *Lira* discloses this feature.

*Lira* discloses that the page can scroll (*i.e.*, translate) an amount equal to the distance of

movement of a stylus pen (*i.e.*, object).  *Lira*, p. 17, lns. 5-9.  *Lira* also discloses a scrolling

multiplier that can change the ratio between the movement of the stylus and the amount of

document translation.  *Lira*, p.17, lns. 13-21.  Thus, based on the foregoing and the discussion

above pertaining to claim 1(c) (*supra* at 30-31), *Lira* discloses that the first translating distance in

U.S. Patent No. 7,469,381
Issued: December 23, 2008

the first direction prior to reaching the edge of the document corresponds to the distance of

movement of the object.

Thus, *Lira* discloses the preamble of claim 17.  *See* Exhibit 6, Part B at 9-10.

*Lira Discloses Limitation 17(a)*:  This limitation requires that displaying the area beyond

the edge comprises "translating the electronic document in the first direction for a second

associated translating distance."  *Lira* discloses this feature.

As discussed above in connection with claim 1(d) (*supra* at 32-34), *Lira* discloses the

display of the area beyond the edge of the document comprises translating the electronic

document in a first direction.  *Lira* also discloses that this translation is for a second translating

distance that is associated with the direction of translation.  For example, as also discussed in

connection with the independent claims (*supra* at 32-36), *Lira* discloses a "vertical alignment

control" or "snap-to" function that aligns the display window to an edge of the electronic

document, after the object is lifted from the screen.  *Lira*, p. 15, lns. 18-31.   As the display

window moves between logical columns of the document, an area beyond the edge is displayed.

*Supra* at 32-34.  *Lira* allows the user to define a threshold between columns, which when

crossed, the display window will "snap" forward by translating in the first direction to align with

the next logical column, rather than "snap" back by translating in a second direction to align with

the original column.  *Lira*, p. 15, lns. 19-23.  Thus, the electronic document can be translated in

the same direction for a second associated translating distance which corresponds to the

threshold between logical columns.

Thus, *Lira* discloses limitation 17(a).  *See* Exhibit 6, Part B at 11-12.

*Lira Discloses Limitation 17(b)*:  This limitation requires that "the second associated

translating distance is less than a distance of movement of the object after reaching the edge of

48

U.S. Patent No. 7,469,381
Issued: December 23, 2008

the electronic document." It would have been obvious for the second translating distance to be less than the distance of movement of the stylus (*i.e.*, object) after reaching the edge of the electronic document.

Lira discloses a scrolling multiplier that can change the ratio between the distance of movement of the stylus (*i.e.*, object) and the amount of document translation. *Lira*, p.17, lns. 13-21. For example, when the multiplier is set such that "the proportional movement is set to 200%, document scrolling 1700 on a display 1705 is 20 pixels for each 10 pixels of stylus" movement. *Id.* Similarly, by adjusting the multiplier such that proportional movement is 50%, the translating distance of the document is less than the distance of movement of the stylus. Since this multiplier is merely a variable, it would have been obvious to decrease the multiplier (hence the proportional movement) from the set value, as the user translates the display window outside the original logical column (*i.e.*, beyond the edge of the electronic document). One of ordinary skill in the art would have been motivated to decrease this multiplier after reaching the edge (*i.e.*, when the user might be scrolling from one column to another) in order to prevent the user from inadvertently "snapping-to" the next logical column, thereby constraining the position of the visible portion of the displayed electronic document. *Lira,* p. 16, lns. 4-8. By providing a user-defined snap threshold, *Lira* allows the user to set a boundary which the system can use to evaluate the user's gestures and determine his/her intention to "snap" from one column to another. *Lira*, p. 15, lns. 25-27. Similarly, preventing the user from easily/inadvertently "snapping" from column to column would help further capture and confirm the user's intention as to whether to snap to the next column, which is one of *Lira's* stated goals. *Id.* Thus, one of ordinary skill in the art would have been motivated to decrease the multiplier disclosed in *Lira* after reaching the edge of the document in order to further the stated goal in *Lira*. Modifying

U.S. Patent No. 7,469,381
Issued: December 23, 2008

such an existing variable disclosed in *Lira* would have amounted to nothing more than an application of a known technique to achieve the predictable result of decreasing the translation distance in response to the object's movement.

Thus, *Lira* teaches or suggests limitation 17(b). *See* Exhibit 6, Part B at 12-14.

In view of the foregoing, *Lira* renders claim 17 obvious.

### 6. Claim 18 should be rejected as rendered obvious by *Lira*

*Lira Discloses the preamble of claim 18*: Claim 18 depends from claim 1, and further requires that "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object." *Lira* discloses this feature.

*Lira* states that "[m]oving the page of information may include moving the page a distance equal to a change in the coordinate information of the input tool multiplied by a factor based on the acceleration or the velocity of the input tool." *Lira*, p. 5, lns. 13-15. Thus, based on the foregoing and the discussion above pertaining to claim 1(c) (*supra* at 30-31), the speed of translation in the first direction prior to reaching the edge corresponds to a speed of movement of the input tool (*i.e.*, object).

Thus, *Lira* discloses the preamble of claim 18. *See* Exhibit 6, Part B at 14.

*Lira Discloses Limitations 18(a)-(b)*: Limitation 18(a) requires that displaying the area beyond the edge comprises "translating the electronic document in the first direction at a second associated translating speed." Limitation 18(b) requires that the "second associated translating speed is slower than the first associated translating speed." It would have been obvious to translate the document at a second speed that is slower than the first translating speed when displaying the area beyond the edge of the electronic document.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Lira* discloses a speed multiplier that can change the ratio between the movement of the stylus (*i.e.*, object) and the amount of document translation, based upon the speed of the object. *Lira*, p. 5, lns. 13-15.  Thus, for example, by adjusting this speed multiplier such that the proportional value is 50%, the translating distance of the document is reduced for a given input object speed.  This, in turn reduces the speed of translation, since speed is proportional to distance (*i.e.*, v=s/t). Since this multiplier is merely a variable, it would have been obvious to decrease the multiplier as the user translates the display window outside the original logical column (*i.e.*, beyond the edge of the electronic document).  One of ordinary skill in the art would have been motivated to decrease this multiplier after reaching the edge (*i.e.*, when the user might be scrolling from one column to another) in order to prevent the user from inadvertently "snapping-to" the next logical column, thereby constraining the position of the visible portion of the displayed electronic document.  *Lira,* p. 16, lns. 4-8.   By providing a user-defined snap threshold, *Lira* allows the user to set a boundary which the system can use to evaluate the user's gestures and determine his/her intention to "snap" from one column to another.  *Lira*, p. 15, lns. 25-27.  Similarly, preventing the user from easily/inadvertently "snapping" from column to column would help further capture and confirm the user's intention as to whether to snap to the next column, which is one of *Lira's* stated goals.  *Id.*  Thus, one of ordinary skill in the art would have been motivated to decrease the multiplier disclosed in *Lira* after reaching the edge of the document in order to further the stated goal in *Lira*.  Modifying such an existing variable disclosed in *Lira* would have amounted to nothing more than an application of a known technique to achieve the predictable result of decreasing the translation speed in response to the object's movement.

Thus, *Lira* teaches or suggest limitations 18(a)-(b).  *See* Exhibit 6, Part B at 14-16.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

In view of the foregoing, *Lira* renders claim 18 obvious.

**C.      Claims 15, 17 and 18 should be rejected under 35 U.S.C. § 103 as rendered obvious by *Lira* in view of *Van Den Hoven***

As discussed above, *Lira* is a PCT patent application that was published on October 2, 2003, more than one year before the January 7, 2007 earliest possible effective filing date for the '381 Patent, and is therefore prior art to the '381 Patent under 35 U.S.C. § 102(b).  Moreover, *Lira* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent.  *Supra* at 3.

As discussed above, *Van Den Hove*n is a PCT patent application that was published on April 26, 2001, more than one year before the January 7, 2007 earliest possible effective filing date for the '381 Patent, and is therefore prior art to the '381 Patent under 35 U.S.C. § 102(b). Moreover, *Van Den Hoven* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent.  *Supra* at 4.

*Van Den Hoven* describes a method for browsing a large collection of images on a handheld device.  *Van Den Hoven*, p. 5, lns. 10-20.  *Van Den Hoven* uses a windowed browsing area to select and view images from a sequence of images that are scrolled into the browsing area as if on a film strip.  *Van Den Hoven*, p. 2, lns. 18-22.  Scrolling from one image to another can be accomplished by user input strokes (*e.g.*, with a finger or stylus) inside the browsing area which results in a corresponding scroll distance or velocity.  *Van Den Hoven*, p. 6, lns. 18-25.

It would have been obvious to one of ordinary skill in the art to combine the teachings of *Lira* with the teachings of *Van Den Hoven* as both references relate to handheld device displays and touch screen inputs.  More specifically, *Lira* discloses a windowing method for viewing a web page too large for a handheld display, while *Van Den Hoven* provides a windowing method for viewing a large collection of images on a handheld display.  Thus, both references discuss

52

U.S. Patent No. 7,469,381
Issued: December 23, 2008

windowing methods for facilitating the viewing of electronic documents on small touch screen

displays of handheld devices.  Additionally, both methods allow a user to control the position of

the window by touch input.  Accordingly, it would have been obvious to combine the teachings

of such closely-related references for the purposes of enhancing the user's experience with, and

facilitating, the viewing of documents using touch screen displays.

As set forth in more detail below and in the chart attached at Exhibit 6, Part C, it is

respectfully submitted that *Lira* in combination with *Van Den Hoven* renders obvious claims 15,

17 and 18 of the '381 Patent.

### 1. Claim 15 should be rejected as rendered obvious by *Lira* in view of *Van Den Hoven*

Claim 15 depends from claim 1, and further requires that "translating the document in the

second direction is a damped motion."  As discussed above in connection with claim 1 (*supra* at

26-37), *Lira* discloses all the features recited in claim 1.  *Van Den Hoven* discloses the additional

feature recited in claim 15.

For example, *Van Den Hoven* discloses that the motion of the images (*i.e.*, translation of

the document) through the browsing area "may simulate inertia and friction." *Van Den Hoven,* p.

3, ln. 24.  This application of inertia or friction "gradually decreas[es] the scrolling speed, instead

of instantaneously stopping [it]." *Van Den Hoven,* p. 3, lns. 24-27.  As described in the '381

Patent (*see, e.g.*, col. 20:43-49), such a simulation of inertia and friction applied to the scrolling

speed amounts to a "damped motion."

Moreover, *Lira* discloses a "snap-to" function that moves the document in the second

direction so that when the user lifts the stylus or finger from the screen, "the logical column

1220 [will] snap into alignment with the display window 1205 as the user stops scrolling" by for

example "snap[ping] to the nearest logical column." *Lira*, p. 15, lns. 19-25.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

It would have been obvious to modify *Lira's* "snap-to" motion in the second direction to include a frictional/inertial feature (*i.e.*, a damped motion) as disclosed in *Van Den Hoven*.  One of ordinary skill in the art would have been motivated to implement *Van Den Hoven*'s dampening feature with *Lira*'s "snap-to" motion in order to provide a smoother transition between the document portions as the area beyond the edge is no longer displayed. Indeed, both *Lira* and *Van Den Hoven* are concerned with enhancing the user's experience in, and facilitating, the viewing of documents using touch screen displays.  For example, *Lira* discloses improving readability and enabling users to get a better sense of their position in the document through scrolling animation effects.  *Lira*, p. 1, lns. 10-14; p. 12, ln. 29 – p.13, ln. 13.  Likewise, *Van Den Hoven* discloses smoothing the scrolling of the image sequence.  *Van Den Hoven*, p. 2, ln. 22.  Such an implementation of *Van Den Hoven's* dampening feature to *Lira's* snap to scrolling feature would have amounted to nothing more than an application of a known method (*e.g.*, scrolling with inertia and frictional simulation) to achieve the predictable result of providing for smoother/slower scrolling transitions.

Thus, *Lira* in combination with *Van Den Hoven* teaches each and every limitation of, and therefore renders obvious, claim 15.  *See* Exhibit 6, Part C at 3-6.

### 2.    Claim 17 should be rejected as rendered obvious by *Lira* in view of *Van Den Hoven*

Claim 17 depends from claim 1, and further requires that translating the document in the first direction has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document and translating the document for a second associated translating distance that is less than a distance of movement of the object after reaching the edge of the electronic document.  As discussed above in connection with claim 1 (*supra* at 26-37), *Lira* discloses all the features recited in claim 1.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

_Lira Discloses the preamble of claim 17_:  The preamble of claim 17 requires that "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document."  _Lira_ discloses this feature.

_Lira_ discloses that the page can scroll (_i.e._, translate) an amount equal to the distance of movement of a stylus pen (_i.e._, object).  _Lira_, p. 17, lns. 5-9.  _Lira_ also discloses a scrolling multiplier that can change the ratio between the movement of the stylus and the amount of document translation.  _Lira_, p.17, lns. 13-21.  Thus, based on the foregoing and the discussion above pertaining to claim 1(c) (_supra_ at 30-31), _Lira_ discloses that the first translating distance in the first direction prior to reaching the edge of the document corresponds to the distance of movement of the object.

Thus, _Lira_ discloses the preamble of claim 17.  _See_ Exhibit 6, Part C at 6-8.

_Lira Discloses Limitation 17(a)_:  This limitation requires that displaying the area beyond the edge comprises "translating the electronic document in the first direction for a second associated translating distance."  _Lira_ discloses this feature.

As discussed above in connection with claim 1(d) (_supra_ at 32-34), _Lira_ discloses the display of the area beyond the edge of the document comprises translating the electronic document in a first direction.  _Lira_ also discloses that this translation is for a second translating distance that is associated with the direction of translation.  For example, as also discussed in connection with the independent claims, _Lira_ discloses a "vertical alignment control" or "snap-to" function that aligns the display window to an edge of the electronic document, after the object is lifted from the screen.  _Lira_, p. 15, lns. 18-31.  As the display window moves between logical columns of the document, an area beyond the edge is displayed.  _Supra_ at 32-24.  _Lira_

U.S. Patent No. 7,469,381
Issued: December 23, 2008

allows the user to define a threshold between columns, which when crossed, the display window will "snap" forward by translating in the first direction to align with the next logical column, rather than "snap" back by translating in a second direction to align with the original column. *Lira*, p. 15, lns. 19-23.  Thus, the electronic document can be translated in the same direction for a second associated translating distance which corresponds to the threshold between logical columns.

Thus, *Lira* discloses limitation 17(a).  *See* Exhibit 6, Part C at 8-10.

*Lira in view of Van Den Hoven Discloses Limitation 17(b)*:  This limitation requires that "the second associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document."

*Lira* discloses that the scrolling velocity of an electronic document may be varied (*e.g.*, slowed down) as the document displayed within a browsing window approaches a particular view.  *Lira*, p. 14, lns. 15-17.  *Van Den Hoven* also discloses that the speed of translation in the first direction can be accelerated or slowed.  *Van Den Hoven*, p. 3, lns 21-26; p. 6, lns. 27-32. *Van Den Hoven* further states that such acceleration/slowing down can be triggered as a function of the endpoint of the user's input relative to a threshold, namely, the edge of a browsing area. *Van Den Hoven*, p. 3, lns 21-26.  For example, a user input stroke that ends inside the browsing area may have a temporary acceleration; hence a first translating speed, followed by a deceleration period; hence a second slower translating speed.  *Id.*

It would have been obvious to combine *Lira* with *Van Den Hoven* so that a user input applied to the *Lira* browsing window that remained inside the current logical column without exceeding the threshold at the edge of the document would result in a temporary acceleration (*i.e.*, a first translating speed) followed by a deceleration period (*i.e.,* a second slower translating

U.S. Patent No. 7,469,381
Issued: December 23, 2008

speed) as described in *Van Den Hoven*.  Thus, causing the document to be scrolled to the threshold rather than proceed past the threshold to the next logical column.  Applying this deceleration feature to the user motion at the edge of the logical column (*i.e.*, the edge of the electronic document) would have the effect of shortening the translation (*i.e.*, decreasing the translating distance) relative to the distance of movement of the object (*e.g.*, stylus).  Thus, the second associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document.

One of ordinary skill in the art would have been motivated to decelerate the scrolling velocity upon reaching the edge of the document (*i.e.*, when the user might be scrolling from one column to another) in order to prevent the user from inadvertently "snapping-to" the next logical column, thereby constraining the position of the visible portion of the displayed electronic document.  *Lira,* p. 16, lns. 4-8.   By providing a user-defined snap threshold, *Lira* allows the user to set a boundary which the system can use to evaluate the user's gestures and determine his/her intention to "snap" from one column to another.  *Lira*, p. 15, lns. 25-27.  Similarly, preventing the user from easily/inadvertently "snapping" from column to column would help further capture and confirm the user's intention as to whether to snap to the next column, which is one of *Lira's* stated goals.  *Id.*  Thus, one of ordinary skill in the art would have been motivated to slow the scrolling velocity disclosed in *Lira* according to a user input within the user's defined threshold in order to further the stated goal in *Lira*.  Such triggering of the scroll deceleration feature disclosed in *Lira* based on the endpoint of the user's gesture as disclosed in *Van Den Hoven,* would have amounted to nothing more than an application of known methods (*e.g.*, scroll deceleration) to achieve the predictable result of stopping the scrolling motion before reaching the threshold disclosed in *Lira.*

U.S. Patent No. 7,469,381
Issued: December 23, 2008

Thus, *Lira* in combination with *Van Den Hoven* teaches limitation 17(b) of, claim 17. *See* Exhibit 6, Part C at 10-13.

In view of the foregoing, *Lira* in combination with *Van Den Hoven* teaches each and every limitation of, and therefore renders obvious, claim 17.

### 3.    Claim 18 should be rejected as rendered obvious by *Lira* in view of *Van Den Hoven*

Claim 18 depends from claim 1, and further requires that translating the document in the first direction has a first speed that corresponds to a speed of movement of the object and translating document in the first direction at a second associated translating speed at a speed that is slower than the first after displaying an area beyond the edge of the document. As discussed above in connection with claim 1 (*supra* at 26-37), *Lira* discloses all the features recited in claim 1.

*Lira Discloses the preamble of claim 18*:  The preamble of claim 18 requires that "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object." *Lira* discloses this feature.

*Lira* states that "[m]oving the page of information may include moving the page a distance equal to a change in the coordinate information of the input tool multiplied by a factor based on the acceleration or the velocity of the input tool." *Lira*, p. 5, lns. 13-15.  Thus, based on the foregoing and the discussion above pertaining to claim 1(c) (*supra* at 30-31), the speed of translation in the first direction prior to reaching the edge corresponds to a speed of movement of the input tool (*i.e.*, object).

Thus, *Lira* discloses the preamble of claim 18.  *See* Exhibit 6, Part C at 13-14.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Lira in view of Van Den Hoven Discloses Limitations 18(a)-(b)*:  Limitation 18(a) requires that displaying the area beyond the edge comprises "translating the electronic document in the first direction at a second associated translating speed."  Limitation 18(b) requires that the "second associated translating speed is slower than the first associated translating speed."

*Lira* discloses that the scrolling velocity of an electronic document may be varied (*e.g.*, slowed down) as the document displayed within a browsing window approaches a particular view.  *Lira*, p. 14, lns. 15-17.  *Van Den Hoven* also discloses that the speed of translation in the first direction can be accelerated or slowed.  *Van Den Hoven*, p. 3, lns 21-26; p. 6, lns. 27-32. *Van Den Hoven* further states that such acceleration/slowing down can be triggered as a function of the endpoint of the user's input relative to a threshold, namely, the edge of a browsing area. *Van Den Hoven*, p. 3, lns 21-26.  For example, a user input stroke that ends inside the browsing area may have a temporary acceleration; hence a first translating speed, followed by a deceleration period; hence a second slower translating speed.  *Id.*

It would have been obvious to combine *Lira* with *Van Den Hoven* so that a user input applied to the *Lira* browsing window that remained inside the current logical column without exceeding the threshold at the edge of the document would result in a temporary acceleration (*i.e.*, a first translating speed) followed by a deceleration period (*i.e.*, a second slower translating speed) as described in *Van Den Hoven*.  Thus, causing the document to be scrolled to the threshold rather than proceed past the threshold to the next logical column.  Applying this deceleration feature to the user motion at the edge of the logical column (*i.e.*, the edge of the electronic document) would have the effect of decreasing the scrolling velocity relative to the velocity of the object (*e.g.*, stylus).  Thus, the second associated translating speed is less than the first translating speed at the edge of the document.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

One of ordinary skill in the art would have been motivated to decelerate the scrolling velocity upon reaching the edge of the document (*i.e.*, when the user might be scrolling from one column to another) in order to prevent the user from inadvertently "snapping-to" the next logical column, thereby constraining the position of the visible portion of the displayed electronic document. *Lira,* p. 16, lns. 4-8. By providing a user-defined snap threshold, *Lira* allows the user to set a boundary which the system can use to evaluate the user's gestures and determine his/her intention to "snap" from one column to another. *Lira,* p. 15, lns. 25-27. Similarly, preventing the user from easily/inadvertently "snapping" from column to column would help further capture and confirm the user's intention as to whether to snap to the next column, which is one of *Lira's* stated goals. *Id.* Thus, one of ordinary skill in the art would have been motivated to slow the scrolling velocity disclosed in *Lira* according to a user input within the user's defined threshold in order to further the stated goal in *Lira.* Such triggering of the scroll deceleration feature disclosed in *Lira* based on the endpoint of the user's gesture as disclosed in *Van Den Hoven,* would have amounted to nothing more than an application of known methods (*e.g.*, scroll deceleration) to achieve the predictable result of stopping the scrolling motion before reaching the threshold disclosed in *Lira.*

Thus, *Lira* in combination with *Van Den Hoven* teaches limitation 18(a)-(b) of, claim 18. *See* Exhibit 6, Part C at 14-17.

In view of the foregoing, *Lira* in combination with *Van Den Hoven* teaches each and every limitation of, and therefore renders obvious, claim 18.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

     **D.**     **Claims 1-5, 7-13 and 15-20 of the '381 Patent should be rejected under 35 U.S.C. § 102(e) as anticipated by *Ording***

As discussed above, *Ording is* a U.S. patent that issued on a U.S. application that was filed on December 23, 2005, long before the January 7, 2007 earliest possible priority date for the '381 Patent, and is therefore prior art to the '381 Patent under 35 U.S.C. § 102(e). Moreover, *Ording* was not cited nor considered by the Examiner during the prosecution or reexamination of the '381 Patent. *Supra* at 3-4.

*Ording* generally relates to the scrolling of lists (*i.e.*, electronic documents) on handheld devices with touch-sensitive displays. *Ording*, col. 1:18-20. Similar to the '381 Patent, *Ording* seeks to reduce or eliminate the supposed deficiencies in prior art user interfaces for touch screen devices. *Ording*, col. 1:34-47. At the most basic level, *Ording* translates a displayed list in response to the contact and movement of a user's fingers on the touch screen. *Ording*, col. 1:50-54.

According to *Ording,* the scrolled lists contain items such as names addresses, photographs or other contact information. *Ording*, col. 3:59-66. The user's movement on the touch screen determines the corresponding first scroll direction along with its velocity and/or distance. *Ording*, col. 4:1-6, col. 7:44-49. The speed of scrolling (*i.e.*, translation) can also be further affected by other factors such as application of inertial models. *Ording*, col. 4:6-14. Figure 6 illustrates the portable handheld device, an exemplary scrolled list of information items and the user's interaction with the touch screen.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



Figure 6

To provide additional user feedback, *Ording* discloses the automatic reversal of the scroll direction as an endpoint of the displayed list contacts and "bounces" off a virtual boundary or boundaries, defined as the terminus. *Ording*, col. 4:44-51. The movement of the list in the second direction can be similarly modified by friction or elastic models, very similar to how the motion in the first direction can be affected. *Ording*, 4:47-59.

To scroll the list, the user issues a stroke (*i.e.*, a movement) on the touch screen display with a finger (*i.e.*, object), and the displayed information items change until the first item, list item **612-1**, and the edge are reached, in which case an area beyond the edge of the electronic document is displayed. As the first item in the list approaches the terminus, the displayed list may bounce off the virtual boundary and reverse direction. In response to the user breaking contact with the touch screen (*i.e.*, removing the object so that it is no longer detected on the display), the document is free to scroll in the opposite direction (*i.e.*, translate in a second

U.S. Patent No. 7,469,381
Issued: December 23, 2008

direction) since item **621-1** remains in contact with or has touched the terminus.  The area beyond the edge will decrease in size until it disappears as the first item reaches the top of the display, and a new portion of the page is displayed instead.

As explained in more detail below, *Ording* discloses the features claimed in the '381 Patent.  In fact, *Ording* discloses these features using very similar language to that used in the '381 Patent, which is not surprising given that both patents share a common inventor and were prosecuted by the same firm.  Yet, remarkably, *Ording* was never disclosed to the Examiner during the reexamination of the '381 Patent, nor during the original prosecution of the underlying application.

As set forth in more detail below and in the chart attached at Exhibit 6, Part D, it is respectfully submitted that *Ording* anticipates claims 1-5, 7-13 and 15-20 of the '381 Patent.

### 1.   Claims 1, 19 and 20 should be rejected as anticipated by *Ording*

As explained above in Section II.B.1 (*supra* at 11-12), independent claims 1, 19, and 20 of the '381 Patent recite substantially similar limitations, and are therefore treated together in the section below.  *Ording* discloses each and every limitation of these claims.

<u>*Ording Discloses the Preambles of Claims 1, 19 and 20*</u>:  The preamble of claim 1 recites a "computer-implemented method," while the preamble of claim 19 recites a "device."  The preamble of claim 20 recites a "computer readable storage medium having stored therein instructions" which are "executed by a device with a touch screen display."  *Ording* discloses these features.

*Ording* discloses that the "[i]nstructions for performing the aforementioned methods may be included in a computer program product configured for execution by one or more processors." *Ording*, col. 2:30-32.  Therefore, *Ording* discloses a computer implemented method as required in the claim 1 preamble.

63

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Ording* also explains that "[t]he aforementioned methods may be performed by a portable electronic device having a touch sensitive display, a processor, memory and one or more programs or sets of instructions stored in the memory for performing these methods." *Ording*, col. 2:23-27.  Therefore, *Ording* discloses the device required in the claim 19 preamble.

Furthermore, given that the foregoing demonstrates that the methods disclosed by *Ording* can be included in a computer program product for execution on a portable device having a touch sensitive (*i.e.*, touch screen) display, *Ording* discloses the preamble of claim 20.

Thus, *Ording* discloses the preambles of claims 1, 19 and 20.  *See* Exhibit 6, Part D at 1, 33 and 36-37.

*Ording Discloses Limitations 1(a) and 19(a)*:  These limitations require that the device have a "touch screen display."  As discussed directly above, *Ording* discloses this feature.  For example, *Ording* explains that "[t]he aforementioned methods may be performed by a portable electronic device having a touch sensitive display." *Ording*, col. 2:23-24.

Thus, *Ording* discloses claim limitations 1(a) and 19(a).  *See* Exhibit 6, Part D at 1 and 33.

*Ording Discloses Limitations 19(b)-(d)*:  These limitations require that the device include "one or more processors," "memory" and "one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors." *Ording* discloses these features.

As discussed above in relation to the preambles, *Ording* discloses that the device has one or more processors and memory.  For example, *Ording* discloses "a portable electronic device having a touch sensitive display, a processor, memory." *Ording*, col. 2:23-25.  Also, *Ording* discloses that the device **1200** in Figure 12 may include a "memory controller **1212**, one or more

U.S. Patent No. 7,469,381
Issued: December 23, 2008

data processors," "image processors and/or central processing units **1214**." *See Ording*, col. 12:17-23.

Also, *Ording* discloses that there are one or more programs stored in the memory for execution on one or more processors. According to *Ording*, the "memory may store an operating system," which is a type of program. *Ording*, col. 13:22-23. Also, the memory may store programs such as procedures, modules and sets of instructions. Among other examples, modules disclosed in *Ording* include modules for communicating with other devices or computers, modules "for governing the scrolling of a list on the display", and modules that "determine the point of contact and/or its movement." *See Ording*, col. 13:28-38. Thus, *Ording* discloses one or more programs stored in the memory. As discussed above, *Ording* also states that these programs are executed on, and the corresponding methods are performed by, the one or more processors. *Ording*, col. 2:23-25.

Thus, *Ording* discloses limitations 19(b)-(d). *See* Exhibit 6, Part D at 34-35.

*Ording Discloses Limitations 1(b), 19(e) and 20(a)*: These limitations require displaying "a first portion of an electronic document." *Ording* discloses this feature.

*Ording* discloses that the touch-sensitive display can display an electronic document. Much like in the '381 Patent (*See, e.g.*, col. 24:1-4), an example of an electronic document that a user may view through the device is a list. *Ording*, abstract.[4] Items such as contact information/address book or photographs may be included in the list displayed in *Ording*'s touch-sensitive display. *Ording*, col. 3:60-66, Figure 6.

---

[4] A list of items may have a number of subsets, where each subset may have a number of categories. *Ording* at col. 5:10-16; *see also Ording* Patent Figure 13. Thus, the list of items may take on the appearance of a spreadsheet, which is another example of an electronic document disclosed in the '381 Patent (*see, e.g.,* col. 27:10-12).

U.S. Patent No. 7,469,381
Issued: December 23, 2008



Figure 6

Figure 6 illustrates how the "first portion" of the electronic document may be displayed on the device.  A "first portion" may be displayed as the electronic document is first brought into view on the device or after the display reaches a quiescent state upon the completion of display operations (*e.g.*, translation) arising from a user input (contact, remove, complete translation). For example, window **610** may show any of four information items from a larger list, of which items **612-2**, **612-3**, **612-4** and **612-5** could comprise the "first portion" (instead of pictured items **612-1 - 612-4),** after a series of completed user inputs **614** scrolled information item **614-1** off of the display and item **612-5** onto the display.

Thus, *Ording* discloses limitations 1(b), 19(e) and 20(a).  *See* Exhibit 6, Part D at 1-3, 35 and 37.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Ording Discloses Limitations 1(c), 19(f) and 20(b)*:  These limitations require detecting

"a movement of an object on or near the touch screen display," and "in response to detecting the

movement," translating the electronic document "in a first direction to display a second portion

of the electronic document."  These limitations further require that the second portion be

different from the first portion.  *Ording* discloses these features.

*Ording* discloses detecting a movement of an object - namely, a user's finger/point of

contact (which, is an example of an object disclosed in the '381 Patent (*see, e.g.,* col. 2:47-50)) -

on the touch screen display.  For example, *Ording* discloses that the movement of a user's point

contact on a touch-sensitive display (*i.e.* touch screen) is determined.  *Ording*, col. 1:51-52, col.

4:14-21.  In fact, the first step in the process depicted in Figure 1 of *Ording* pertains to detecting

the object on the touch screen:

```
Determine Movement of a Point of Contact
Corresponding to a Sweeping Motion/Gesture by a
User of a Touch-Sensitive Display.
```

*Ording* discloses translating the electronic document in a first direction in response to

detecting the movement.  For example, *Ording* discloses that the list (*i.e.*, electronic document)

may be scrolled (*i.e.*, translated) in response to the determined movement.  *Ording*, col. 3:66-4:5.

In fact, the second step in the process depicted in Figure 1 pertains to scrolling the list in

response to the detected movement:

U.S. Patent No. 7,469,381
Issued: December 23, 2008



*Ording* also shows that the list may be scrolled in a direction corresponding to the user's motion (*i.e.*, a first direction). *Ording*, col. 6:17-21. For example, an upward movement on the touch screen causes the list to translate upward, thereby causing earlier entries in the list to be displayed. *Ording*, col. 6:21-24. Similarly, a downward movement causes the list to translate downwards, thereby causing later entries to be displayed. *Ording*, col. 6:28-33. Thus, according to *Ording*, a second portion of the list that is different than the first portion is displayed in response to the detected movement. This is because the entries shown in each portion are not the same given that a different entry (*e.g.*, an earlier or later entry) is displayed when the list is scrolled.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



Figure 6

Figure 6 illustrates how different portions of the electronic document may be displayed on the device.  As stated in connection with the description of limitations 1(b), 19(e) and 20(a) above, a "first portion" shown in window **610** provides for the display of four information items from a larger list, namely **612-2**, **612-3**, **612-4** and **612-5**.  The "second portion" is displayed as an intermediate graphical output arising from an ongoing user input **614** from finger/object **616** (*e.g.,* contact has not been broken).  Information item **612-1** may be partially or completely scrolled onto the display, while item **612-5** may be partially or completely scrolled off the display and items **612-2**, **612-3**, **612-4** will be translated up/down the display.  Since no previously displayed information item is in the same position now as in the first portion, and since the items shown in window **610** have changed from **612-2** through **612-5** to **612-1** through **612-4**, the second portion is different than the first portion.

69

U.S. Patent No. 7,469,381
Issued: December 23, 2008

The foregoing demonstrates that *Ording* discloses detecting a movement of an object on the touch screen display and, in response, translating the electronic document to display a second portion of the electronic document that is different from the first.

Thus, *Ording* discloses limitations 1(c), 19(f) and 20(b). *See* Exhibit 6, Part D at 3-7, 35 and 37.

*Ording Discloses Limitations 1(d), 19(g) and 20(c)*: These limitations require that "in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display," displaying "an area beyond the edge of the document" and "a third portion of the electronic document." These limitations further require that the third portion be "smaller than the first portion." *Ording* discloses these features.

*Ording* discloses in response to an edge of the electronic document being reached (while translating the document in the first direction and while the object is still detected on the touch screen): displaying an area beyond the edge of the document. *Ording* discloses that each list has a beginning and an end or a first and last item. *Ording*, col. 6:60-65. Thus, it follows that there is no item before the first item and no item after the last item. Given that there are no items located at the top of the display, and thus no item to display when a user keeps scrolling beyond the first list item, what is displayed above the first item is an area beyond the edge[5] of the list (*i.e.*, electronic document). *Ording* Figures 7A-B illustrate the state of the display as a list is

---

[5] In fact, in discussing embodiments of methods "of scrolling through a list," *Ording* even refers to a "virtual region" in which a symbol may be displayed as an alternative to displaying the symbol adjacent to list items (*i.e.*, in the list itself). Given that the virtual region is an alternative location and thus different than any portions of the list (*i.e.*, electronic document), it would follow that the virtual region would be separate from, and outside of (*e.g.*, above or below), the electronic document. Such a virtual region may therefore be considered to be an area beyond the edge of the document that is displayed while translating the document (*i.e.*, during scrolling). *Ording*, col. 10:13-15; col. 10:29-33; col. 10:37-40; col. 10:51-55.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

scrolled and first item **612-1** moves toward the terminus.  As first item **612-1** moves downwards,

the area above the item increases in size while the area below decreases in size.  Thus, *Ording*

discloses that as the first item moves downwards towards the terminus, the area above the first

item (*i.e.,* the area beyond the edge) is [already] displayed and increases in size as the list is

scrolled.  The below annotated figure highlights an exemplary third portion of the electronic

document along with an area beyond the edge of the document.



Figure 7A

*Ording* also discloses displaying a third portion of the electronic document that is smaller

than the first portion.  Continuing the example illustrated in the same annotated figure herein, as

the user scrolls beyond the edge of the document/list, the displayed portion of the list (*e.g.,* the

area that includes and is below item **612-1)** gets smaller as the area beyond the edge increases in

size because the screen is only devoting a portion of its display area to the list contents.  This

displayed portion of the list contents correspond to a third portion and is smaller in size than the

71

U.S. Patent No. 7,469,381
Issued: December 23, 2008

first portion which would include only list contents as discussed in connection with limitations 1(b), 19(e) and 20(a).

The foregoing demonstrates that *Ording* discloses, in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on the touch screen, displaying an area beyond the edge of the document, and a third portion that is smaller than the first portion.

Thus, *Ording* discloses limitations 1(d), 19(g) and 20(c).  *See* Exhibit 6, Part D at 7-10 and 35-37.

_Ording Discloses Limitations 1(e), 19(h) and 20(d)_:  These limitations require that "in response to detecting that the object is no longer on or near the touch screen display," translating the document "in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document.  These limitations further require that the fourth portion be "different from the first portion."  *Ording* discloses these features.

*Ording* discloses, in response to detecting that the object is no longer on the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document.  For example, the relevant list disclosed in *Ording* includes six information items (*e.g.*, **612-1**, **612-2**, **612-3**, **612-4**, **612-5**, and **612-6**) whereas the window is capable of displaying four information items at once.  *See Ording*, Figure 6.  To scroll the list, the user issues a downward stroke (*i.e.*, a movement) on the touch screen display with a finger (*i.e.*, object), and the displayed information items change until the first item, list item **612-1,** and the corresponding edge of the document are reached, in which case an area beyond the edge of the electronic

U.S. Patent No. 7,469,381
Issued: December 23, 2008

document is displayed as discussed above. *Ording* teaches that scrolling (*i.e.*, translation) may be stopped in response to the establishment of a substantially stationary point of contact on the touch screen display. *Ording*, col. 8:30-36. Although the cessation of scrolling is disclosed as part of the breaking and re-establishment of contact on the touch screen, *Ording* further teaches that some operations may be omitted, added, combined or reordered. *Ording*, col. 8:22-39.

As a result of either the displacement or velocity of the user's input movement, list item **612-1** can now come into contact with the terminus as illustrated in *Ording*. *See, e.g., Ording*, Figure 7B. As the first item in the list approaches the terminus, the displayed list may bounce off the virtual boundary and reverse direction. *Ording*, 4:44-51. Although contact with the terminus by a first list item such as item **612-1** can cause the direction of scrolling to reverse as in *Ording* Figures 7B-7C, precedence to the user's continued contact with the touch screen may be instead given so as to cause information item **621-1** to remain at the terminus. *Ording*, col. 8:30-36; *see also Ording*, col. 8:40-53 (stating that some operations may be omitted, added, combined or reordered in the context of discussing the terminus and reversing the direction of scroll).

Accordingly, in response to the user breaking contact with the touch screen (*i.e.*, removing the object so that it is no longer detected), the override on the scroll reversal is cancelled and the document is free to scroll in the opposite direction (*i.e.,* move in a second direction) since item **621-1** remains in contact with or has touched the terminus. *Ording*, col. 9:25-27. The annotated figure below depicts the state of the display after first item **612-1** has reached the terminus and has started to translate in the opposite direction (information items **612-2 - 612-6** are not shown but would sit below item **612-1** as in Figure 6). The highlighted area beyond the edge will decrease in size until it disappears as the first item reaches the top of the display.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



Figure 7C

According to *Ording*, "[a]fter the … scrolling direction reversal, the scrolling may automatically stop so as to leave the first or last item of the list in view on the touch-sensitive display." *Ording*, col. 6:50-65.  Thus, as a result of automatically stopping the movement in the second direction when the first or last item is in view, either information item **612-1** or **612-6** will be displayed.  Since neither information item **612-1** nor item **612-6** were displayed with the first portion (which displayed items **612-2 - 612-5**), the reversal will result in a fourth displayed portion that is different from the first portion shown in the discussion pertaining to limitations 1(b), 19(e) and 20(a).  The annotated figure below highlights the display returning to a quiescent state, an exemplary fourth portion of the electronic document, the area beyond the edge no longer being displayed and information item **612-1** now in view.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



Figure 6

The foregoing demonstrates that *Ordering* discloses that, in response to detecting that the object is no longer on the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion that is different from the first portion of the electronic document.

Thus, *Ordering* discloses limitations 1(e), 19(h) and 20(d).  *See* Exhibit 6, Part D at 10-17, 36 and 38.

In view of the foregoing, *Ordering* discloses each and every limitation of, and therefore anticipates, claims 1, 19 and 20.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

### 2.      Claim 2 should be rejected as anticipated by *Ording*

Claim 2 depends from claim 1, and further requires that "the first, second, third and fourth portions of the electronic document be "displayed at the same magnification." *Ording* discloses this feature.

As seen in *Ording* Figures 6, and 7A-7C, the relative size of the list items, and therefore the list or electronic document itself, remain the same as the user scrolls through the list, thereby showing that the first, second, third and fourth portions discussed above in connection with the independent claim 1 (*supra* at 71-75), are displayed at the same magnification.

Thus, *Ording* anticipates claim 2.  *See* Exhibit 6, Part D at 18.

### 3.      Claim 3 should be rejected as anticipated by *Ording*

Claim 3 depends from claim 1, and further requires that the "movement of the object is on the touch screen display."  *Ording* discloses this feature.

*Ording* discloses that the movement is detected with reference to the user's point of contact such as a finger (*i.e.*, the object) with the touch-sensitive display.  *Ording*, col. 1:51-55, col. 4:16-18.  With the point of contact and movement being made with the touch-sensitive display, the movement of such an object is on the touch screen display.

Thus, *Ording* anticipates claim 3.  *See* Exhibit 6, Part D at 18-19.

### 4.      Claim 4 should be rejected as anticipated by *Ording*

Claim 4 depends from claim 1, and further requires that "the object is a finger."  *Ording* discloses this feature.

*Ording* discloses that "the user may make contact with the touch-sensitive display, swipe or sweep one or more of his or her fingers along the display."  *Ording*, col. 4:16-21.  *Ording* therefore discloses that the point of contact (*i.e.*, object) is a finger.

Thus, *Ording* anticipates claim 4.  *See* Exhibit 6, Part D at 19.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

### 5.   Claim 5 should be rejected as anticipated by *Ording*

Claim 5 depends from claim 1, and further requires that the "first direction is a vertical direction, a horizontal direction, or a diagonal direction." *Ording* discloses this feature.

*Ording* discloses that the direction of scrolling (*i.e.*, the first translation direction) can be in the same direction as the detected user's movement. *Ording*, col. 6:19-21.  Furthermore, the user can make upwards or downward sweeps (*i.e.*, vertically) with an object on the touch-sensitive screen and have the list scroll in the same direction on the display. *Ording*, col. 6:21-28, 33-35.  Also, *Ording* Figures 6 and 7A-C show the displayed list being translated in a linear direction (*i.e.,* vertically, horizontally, or diagonally).

Thus, *Ording* anticipates claim 5. *See* Exhibit 6, Part D at 19-20.

### 6.   Claim 7 should be rejected as anticipated by *Ording*

Claim 7 depends from claim 1, and further requires that the "the electronic document is a digital image." *Ording* discloses this feature.

*Ording* discloses that the list of items may contain a photograph (*i.e.*, digital image). *Ording*, col. 3:62-66.  In addition, *Ording* describes the list itself as an image. *Ording*, col. 2:17-22.

Thus, *Ording* anticipates claim 7. *See* Exhibit 6, Part D at 20-21.

### 7.   Claim 8 should be rejected as anticipated by *Ording*

Claim 8 depends from claim 1, and further requires that the "electronic document is a word processing, spreadsheet, email or presentation document." *Ording* discloses this feature.

*Ording* discloses that a list of items may have a number of subsets, where each subset may have a number of categories. *Ording,* col. 5:10-16; *see also Ording*, Figure 13.  Thus, the list of items may take on the appearance of a spreadsheet. *Ording* further discloses that the translation of displayed documents can occur in multiple directions. *Ordin*g, col. 9:2-8.  Thus

U.S. Patent No. 7,469,381
Issued: December 23, 2008

allowing the user to easily scroll through horizontally and vertically aligned categories on a spreadsheet.

Thus, *Ording* anticipates claim 8.  *See* Exhibit 6, Part D at 21-22.

### 8.       Claim 9 should be rejected as anticipated by *Ording*

Claim 9 depends from claim 1, and further requires that the "electronic document includes a list of items."  *Ording* discloses this feature.

*Ording* discloses that the electronic document may include a list of items (*e.g.*, names, addresses, photographs, contact information).  *Ording*, col. 3:61-66.

Thus, *Ording* anticipates claim 9.  *See* Exhibit 6, Part D at 22-23.

### 9.       Claim 10 should be rejected as anticipated by *Ording*

Claim 10 depends from claim 1, and further requires that the "second direction is opposite the first direction."  *Ording* discloses this feature.

*Ording* discloses that when the endpoint (*i.e.* beginning or end) of a list reaches the terminus, the direction of scrolling may be reversed (*i.e.*, the movement is in an opposite direction).  *Ording*, col. 6:60-66, col. 4:45-46.  *Ording* Figures 7A-7C illustrate the initial scrolling (*i.e.*, translating) direction and the subsequent movement in the opposite direction upon the first item (*i.e.*, edge of the document) reaching the terminus.

Thus, *Ording* anticipates claim 10.  *See* Exhibit 6, Part D at 23-24.

### 10.      Claim 11 should be rejected as anticipated by *Ording*

Claim 11 depends from claim 1, and further requires that the "translating in the first direction prior to reaching an edge of the document has an associated speed of translation that corresponds to a speed of movement of the object."  *Ording* discloses this feature.

*Ording* discloses that the scrolling speed can be correlated with the kinematics of the detected input movement.  *Ording*, col. 3:66-col. 4:6.  For example, *Ording* discloses that the

U.S. Patent No. 7,469,381
Issued: December 23, 2008

scrolling speed may be in accordance with estimates of speed, velocity and acceleration of the input movement acquired over a time interval. *Ording*, col. 7:6-12. Thus, the speed of translation in the first direction prior to reaching the edge corresponds to a speed of the movement of the user's finger (*i.e.*, the object).

Thus, *Ording* anticipates claim 11. *See* Exhibit 6, Part D at 24-25.

### 11.    Claim 12 should be rejected as anticipated by *Ording*

Claim 12 depends from claim 1, and further requires that the "translating in the first direction is in accordance with a simulation of an equation of motion having friction." *Ording* discloses this feature.

*Ording* discloses that "the scrolling and acceleration of the scrolling may be in accordance with a simulation of a physical device having friction, *i.e.*, damped motion." *Ording*, col. 4:6-9. Additionally, friction or damped motion may correspond with motion equations having mass, inertial and dissipative (*i.e.*, frictional) terms. *Ording*, col. 4:9-12. Thus, *Ording* discloses that the translation is in accordance with a simulation of an equation of motion having friction.

Thus, *Ording* anticipates claim 12. *See* Exhibit 6, Part D at 25.

### 12.    Claim 13 should be rejected as anticipated by *Ording*

Claim 13 depends from claim 1, and further requires that the "area beyond the edge of the document is black, gray, a solid color, or white." *Ording* discloses this feature.

As presented earlier in the discussion of limitation 1(d) (*supra* at 70-72), annotated Figure 7A shows the state of the display as the highlighted area beyond the edge of the document is on the screen. The figure shows that the color of the area beyond the edge could be a solid color similar to the space between information items (*e.g.*, white). *See Ording*, Figures 6-7A.

U.S. Patent No. 7,469,381
Issued: December 23, 2008



**Figure 7A**

Thus, *Ording* anticipates claim 13.  *See* Exhibit 6, Part D at 25-26.

### 13.    Claim 15 should be rejected as anticipated by *Ording*

Claim 15 depends from claim 1, and further requires that "translating the document in the

second direction is a damped motion."  *Ording* discloses this feature.

*Ording* discloses that after the direction of scrolling reverses (*i.e.,* translation in a second

direction), the scrolling ceases as a result of damped motion.  *Ording*, col. 8:47-50.

Additionally, *Ording* discloses that the magnitude of the velocity of translation in the second

direction may be damped with respect to (*e.g.*, be less than) the magnitude of the immediately

prior velocity in the first direction at the same location on the display.  *Ording*, col. 9:29-35.

*Ording* also discloses that the scrolling (*i.e.*, translation) in the second direction may be damped

U.S. Patent No. 7,469,381
Issued: December 23, 2008

via the simulation of an elastic collision. *Ording*, col. 4:47-56. Thus, *Ording* discloses that translating the document in the second direction is a damped motion.

Thus, *Ording* anticipates claim 15. *See* Exhibit 6, Part D at 27-28.

### 14. Claim 16 should be rejected as anticipated by *Ording*

Claim 16 depends from claim 1, and further requires that the "changing from translating in the first direction to translating in the second direction until the area beyond the edge of the document is no longer displayed makes the edge of the electronic document appear to be elastically attached to an edge of the touch screen display or to an edge displayed on the touch screen display." *Ording* discloses this feature.

As discussed above in connection with limitations 1(d) and (e) (*supra* at 70-75), *Ording* discloses translating in the first direction, followed by translating in the second direction until the area beyond the edge of the document is no longer displayed. *Ording* further discloses that the motion can change from translating in a first direction to translating in a second direction by simulating an elastic collision between a displayed portion of the document and a virtual boundary. *Ording*, col. 4:44-59. One such location-variant, virtual boundary is the terminus that can be placed at the edge of the touch screen display. *Ording*, col. 9:18-21, Figures 7B-C. Furthermore, information objects can be scrolled into the terminus and "bounce." *Ording*, col. 9:22-35, Figure 7C. Thus, as the beginning/end of the list ( *i.e.*, edge of the electronic document) is translated into a terminus, the bouncing effect gives the impression that the edge of the document is elastically attached to the display edge on the far side of the terminus, since the document will rebound in that direction as if on a rubber-band. Accordingly, the change in translation direction in *Ording* makes the edge of the document appear to be elastically attached to a display edge.

Thus, *Ording* anticipates claim 16. *See* Exhibit 6, Part D at 28.

81

U.S. Patent No. 7,469,381
Issued: December 23, 2008

### 15.     Claim 17 should be rejected as anticipated by *Ording*

*Ording Discloses the preamble of claim 17*:  Claim 17 depends from claim 1, and further requires that "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document."  *Ording* discloses this feature.

*Ording* discloses that the list of items (*i.e.,* electronic document) may be scrolled when the movement of the finger/point of contact (*i.e.,* object) exceeds a pre-determined displacement threshold, and that the electronic document is scrolled (*i.e.,* translated) in response to the distance of the contact's movement.  *Ording*, col. 7:46-49.  Thus, based on the foregoing and on the discussion above pertaining to claim 1(c) (*supra* at 67-70), *Ording* discloses translating the document a first associated distance in the first direction prior to reaching the edge of the electronic document.

Moreover, *Ording* discloses that the first translating distance corresponds to the distance of movement.  For example, *Ording* discloses that "scrolling may be in accordance with a speed of movement of the point of contact."  *Ording*, col. 7:6-7.  As another example, *Ording* discloses that "[s]crolling of the list is accelerated in response to an accelerated movement of the point of contact."  *Ording*, col. 1:51-55.  Thus, since the scrolling speed (or acceleration) corresponds to the speed of movement (or acceleration) of the point of contact (*i.e.*, object), then the resulting translating distance also will correspond to the movement of the object (and therefore its distance).

Thus, *Ording* discloses the preamble of claim 17.  *See* Exhibit 6, Part D at 29.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Ording Discloses Limitation 17(a)*:  This limitation requires that displaying the area beyond the edge comprises "translating the electronic document in the first direction for a second associated translating distance."  *Ording* discloses this feature.

As discussed above in connection with claim 1(d) (*supra* at 70-72), *Ording* discloses the displaying the area beyond the edge comprises translating the list (*i.e.*, electronic document) in a first direction.  *Ording* also discloses that this translation of the electronic document is for a second translating distance that is associated with the direction of translation.  More specifically, *Ording* discloses the terminus to be a location-variant virtual boundary.  *Ording*, col. 9:18-21. As the beginning/end of the list is moving in the first direction and approaches the terminus, the displayed area beyond the edge of the list (*i.e.*, electronic document) grows in relation to the size of the list's displayed area.  *See, Ording*, Figures 7A-C.  As Figure 7B illustrates, when the terminus is at the bottom edge of the display, the second associated translating distance will be longer, the area the area beyond the edge of the document will encompass most of the display, and the document display itself is left with the smaller remainder.  However, when the terminus is placed in the middle of the display, the second associated translating distance will be shorter, and the displayed area of the document will be approximately equal to the area beyond the edge. Thus, the document can be translated for a second associated distance that is dependent on the placement of the terminus.

Thus, *Ording* discloses limitation 17(a).  *See* Exhibit 6, Part D at 29-31.

*Ording Discloses Limitation 17(b)*:  This limitation requires that "the second associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document."  *Ording* discloses this feature.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

As discussed above in connection with claim 12 (*supra* at 79), *Ording* discloses motion damping that can alter the relationship between scrolling and user movement input. *Ording* discloses that "the scrolling and acceleration of the scrolling may be in accordance with a simulation of a physical device having friction, *i.e.*, damped motion," by using motion equations having mass, inertial and dissipative (*i.e.*, frictional) terms. *Ording*, col. 4:6-12. Moreover, *Ording* discloses that these frictional terms are adjustable. *Ording,* col. 4:54-59. If one of these frictional terms is adjusted, then either additional or less user input would be required to achieve the same scrolling output. If the adjustment is made to increase any of these terms such that more user input is required, then a given finger movement distance will result in a smaller associated translating distance. Increasing these frictional terms as taught by *Ording* as the edge of the document is reached would require more user input to translate the list (*i.e.*, electronic document) and results in having the (second) translating distance be less than the distance of movement of the finger (*i.e.*, object).

Thus, *Ording* discloses limitation 17(b). *See* Exhibit 6, Part D at 32.

In view of the foregoing, *Ording* anticipates claim 17.

### 16.  Claim 18 should be rejected as anticipated by *Ording*

*Ording Discloses the preamble of claim 18*: Claim 18 depends from claim 1, and further requires that "translating in the first direction prior to reaching the edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object." *Ording* discloses this feature.

*Ording* discloses that the list of items (*i.e.,* electronic document) may be scrolled when the movement of the finger/point of contact (*i.e.,* object) exceeds a pre-determined displacement threshold, and that the electronic document is scrolled (*i.e.,* translated). *Ording*, col. 7:46-49. *Ording* further discloses the electronic document is scrolled (*i.e.,* translated) at a certain speed.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

*Ording*, col. 7:6-7.  Thus, based on the foregoing and on the discussion above pertaining to claim 1(c) (*supra* at 67-70), *Ording* discloses translating the document in the first direction prior to reaching the edge of the electronic document at a first associated translating speed.

Moreover, *Ording* discloses that the first translating speed corresponds to the speed of movement of the finger/point of contact (*i.e.*, object).  For example, *Ording* discloses that "scrolling may be in accordance with a speed of movement of the point of contact."  *Ording*, col. 7:6-7.

Thus, *Ording* discloses the preamble of claim 18.  *See* Exhibit 6, Part D at 32-33.

*Ording Discloses Limitation 18(a)-(b)*:  Limitation 18(a) requires that displaying the area beyond the edge comprises "translating the electronic document in the first direction at a second associated translating speed."  Limitation 18(b) requires that the "second associated translating speed is slower than the first associated translating speed."  *Ording* discloses these features.

*Ording* discloses translating the document at a second speed that is slower than the first translating speed.  Fore example, *Ording,* discloses that "[i]n some embodiments… the velocity of the scrolling may be tapered."  *Ording*, col. 7:35-42.  Thus, as the document continues to scroll in the first direction, the translation speed will decrease.

Thus, *Ording* discloses limitations 18(a) and 18(b).  *See* Exhibit 6, Part D at 33.

In view of the foregoing, *Ording* anticipates claim 18.

## VII.   CONCLUSION

For at least the reasons set forth above, it is clear that substantial new questions of patentability have been raised against claims 1-20 of the '381 Patent.  Therefore, it is requested that this request for reexamination be granted and that claims 1-20 be rejected.

U.S. Patent No. 7,469,381
Issued: December 23, 2008

As identified in the attached Certificate of Service and in accordance with 37 C.F.R. §§

1.33(c) and 1.510(b)(5), a copy of the present request, in its entirety, is being served to the

address of the attorney or agent of record.

I hereby certify that this correspondence is being transmitted in accordance with 37 CFR §§1.6(a)(4) and 1.8 via the U.S. Patent and Trademark Office (USPTO) electronic filing system (EFS-Web) to: Mail Stop *Ex Parte* Reexam, Commissioner For Patents, P.O. Box 1450, Alexandria, VA 22313-1450, on May 23, 2012.

Teresa C. Rodriguez

Respectfully submitted,

By:

Joseph J. Richetti, Reg. No. 47,024
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104
Tel. No. (212) 541-2000
Fax. No. (212) 541-4630

86

U.S. Patent No. 7,469,381
Issued: December 23, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this REQUEST FOR *EX PARTE*

REEXAMINATION has been served in its entirety on the patent owner as provided in 37 C.F.R.

§ 1.33(c) by being deposited on this date with the U.S. Postal Service in an envelope as "Express

Mail Post Office to Addressee" Mailing Label Number EB 780378155 US addressed to:

      Morgan Lewis & Bockius LLP
      2 Palo Alto Square
      3000 El Camino Real, Suite 700
      Palo Alto, CA 94306

Date of Service:  May 23, 2012

PTO/SB/57 (02-09)
Approved for use through 02/28/2013. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

# REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

Address to:
**Mail Stop *Ex Parte* Reexam**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA  22313-1450**

Attorney Docket No.: 0331834.381

Date: May 23, 2012

1. [x] This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number __7,469,381__

   issued __December 23, 2008__. The request is made by:

   [ ] patent owner.          [x] third party requester.

2. [x] The name and address of the person requesting reexamination is:

   Joseph J. Richetti

   BRYAN CAVE LLP

   1290 Avenue of the Americas, New York, NY  10104

3. [ ]     a.  A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   [x]     b.  The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1)
              to Deposit Account No. __02-4467__ ; or

   [ ]     c.  Payment by credit card.  Form PTO-2038 is attached.

4. [ ] Any refund should be made by [ ] check or [ ] credit to Deposit Account No. _____
       37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. [x] A copy of the patent to be reexamined having a double column format on one side of a separate paper is
       enclosed.  37 CFR 1.510(b)(4)

6. [ ] CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
       [ ] Landscape Table on CD

7. [ ] Nucleotide and/or Amino Acid Sequence Submission
       *If applicable, items a. – c. are required.*

          a.  [ ] Computer Readable Form (CRF)
          b. Specification Sequence Listing on:
             i.   [ ] CD-ROM (2 copies) or CD-R (2 copies); **or**
             ii.  [ ] paper
          c.  [ ] Statements verifying identity of above copies

8. [x] A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. [x] Reexamination of claim(s) __1-20__ is requested.

10. [x] A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
        Form PTO/SB/08, PTO-1449, or equivalent.

11. [ ] An English language translation of all necessary and pertinent non-English language patents and/or printed
        publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO  to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14.  This collection is estimated to take 18 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments  on the amount of time you require to complete this form should be sent to the Chief Information Officer, U.S. Patent  and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO:  Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/57 (02-09)
Approved for use through 02/28/2013. OMB 0651-0064
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. [x] The attached detailed request includes at least the following items:

    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)
    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2).

13. [ ] A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. [x] a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
The name and address of the party served and the date of service are:

MORGAN LEWIS & BOCKIUS LLP

2 Palo Alto Square, 3000 El Camino Real, Suite 700

Palo Alto, CA  94306

Date of Service: _____ May 23, 2012 _____; or

[ ] b. A duplicate copy is enclosed because service on patent owner was not possible. An explanation of the efforts made to serve patent owner **is attached.** <u>See</u> MPEP 2220.

15. Correspondence Address: Direct all communications about the reexamination to:

[x] The address associated with Customer Number: | 83559

**OR**

[ ] Firm or
Individual Name _____

| Address | | |
|---|---|---|
| | | |
| City | State | Zip |
| Country | | |
| Telephone | Email | |

16. [ ] The patent is currently the subject of the following concurrent proceeding(s):

    [ ] a. Copending reissue Application No. _____
    [ ] b. Copending reexamination Control No. _____
    [ ] c. Copending Interference No. _____
    [ ] d. Copending litigation styled: 

_____
_____

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

/Joseph J. Richetti, Reg. No. 47024/      May 23, 2012
_____    _____
Authorized Signature      Date

Joseph J. Richetti      47,024    [ ] For Patent Owner Requester
_____    _____
Typed/Printed Name      Registration No.    [x] For Third Party Requester

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

US007469381B2

(12) **United States Patent**
Ording

(10) Patent No.: **US 7,469,381 B2**
(45) Date of Patent: **Dec. 23, 2008**

(54) **LIST SCROLLING AND DOCUMENT TRANSLATION, SCALING, AND ROTATION ON A TOUCH-SCREEN DISPLAY**

(75) Inventor: **Bas Ording**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/956,969**

(22) Filed: **Dec. 14, 2007**

(65) **Prior Publication Data**

US 2008/0168404 A1    Jul. 10, 2008

**Related U.S. Application Data**

(60) Provisional application No. 60/937,993, filed on Jun. 29, 2007, provisional application No. 60/946,971, filed on Jun. 28, 2007, provisional application No. 60/945,858, filed on Jun. 22, 2007, provisional application No. 60/879,469, filed on Jan. 8, 2007, provisional application No. 60/883,801, filed on Jan. 7, 2007, provisional application No. 60/879,253, filed on Jan. 7, 2007.

(51) **Int. Cl.**
 *G06F 3/01*    (2006.01)

(52) **U.S. Cl.** ...................... **715/702**; 715/764; 715/863; 715/864; 715/769

(58) **Field of Classification Search** ............... 715/764, 715/769, 702, 863, 864
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,495,566 A | 2/1996 | Kwatinetz | .................. 395/157 |
| 5,844,547 A | 12/1998 | Minakuchi et al. | .......... 345/173 |
| 5,867,158 A | 2/1999 | Murasaki et al. | ............ 345/341 |
| 6,034,688 A | 3/2000 | Greenwood et al. | ........ 345/353 |
| 6,489,951 B1 | 12/2002 | Wong et al. | ................. 345/173 |
| 6,567,102 B2 | 5/2003 | Kung | ........................ 345/660 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 635 779 A1 | 1/1995 |

(Continued)

OTHER PUBLICATIONS

Microsoft Word 2003 Screen Shots.*

(Continued)

*Primary Examiner*—Boris Pesin
(74) *Attorney, Agent, or Firm*—Morgan, Lewis & Bockius LLP

(57)    **ABSTRACT**

In accordance with some embodiments, a computer-implemented method for use in conjunction with a device with a touch screen display is disclosed. In the method, a movement of an object on or near the touch screen display is detected. In response to detecting the movement, an electronic document displayed on the touch screen display is translated in a first direction. If an edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, an area beyond the edge of the document is displayed. After the object is no longer detected on or near the touch screen display, the document is translated in a second direction until the area beyond the edge of the document is no longer displayed.

**20 Claims, 38 Drawing Sheets**



**US 7,469,381 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,661,409 | B2 | 12/2003 | Demartines et al. ......... 345/173 |
| 6,690,387 | B2 * | 2/2004 | Zimmerman et al. ........ 345/684 |
| 6,707,449 | B2 | 3/2004 | Hinckley et al. ............ 345/173 |
| 6,809,724 | B1 | 10/2004 | Shiraishi et al. ............ 345/169 |
| 6,907,575 | B2 | 6/2005 | Duarte ...................... 715/784 |
| 6,912,462 | B2 | 6/2005 | Ogaki ....................... 701/208 |
| 6,972,776 | B2 | 12/2005 | Davis et al. ................ 345/684 |
| 6,975,306 | B2 | 12/2005 | Hinckley et al. ............ 345/173 |
| 7,009,599 | B2 | 3/2006 | Pihlaja ..................... 345/173 |
| 7,046,230 | B2 | 5/2006 | Zadesky et al. ............ 345/156 |
| 7,075,512 | B1 | 7/2006 | Fabre et al. ............... 345/156 |
| 7,102,626 | B2 | 9/2006 | Denny, III ................. 345/179 |
| 7,154,534 | B2 | 12/2006 | Seki et al. ............... 348/207.1 |
| 7,155,048 | B2 | 12/2006 | Ohara ..................... 382/132 |
| 7,181,373 | B2 | 2/2007 | Le Cocq et al. ............... 703/1 |
| 7,184,796 | B2 | 2/2007 | Karidis et al. ............ 455/566 |
| 7,240,291 | B2 | 7/2007 | Card et al. ................ 715/776 |
| 2003/0095135 | A1 | 5/2003 | Kaasila et al. ............ 345/613 |
| 2003/0095697 | A1 | 5/2003 | Wood et al. ................ 382/131 |
| 2003/0184525 | A1 | 10/2003 | Tsai ....................... 345/173 |
| 2004/0021676 | A1 | 2/2004 | Chen et al. ................ 345/684 |
| 2004/0027398 | A1 * | 2/2004 | Jaeger ..................... 345/863 |
| 2004/0080541 | A1 | 4/2004 | Saiga et al. ............... 345/805 |
| 2004/0155888 | A1 | 8/2004 | Padgitt et al. ............. 345/619 |
| 2004/0263486 | A1 | 12/2004 | Seni ....................... 345/173 |
| 2005/0012723 | A1 | 1/2005 | Pallakoff .................. 345/173 |
| 2005/0145807 | A1 | 7/2005 | Lapstun et al. ............ 250/566 |
| 2005/0168488 | A1 | 8/2005 | Montague .................. 345/659 |
| 2005/0198588 | A1 | 9/2005 | Lin et al. ................. 715/784 |
| 2005/0237308 | A1 | 10/2005 | Autio et al. .............. 345/173 |
| 2005/0270269 | A1 | 12/2005 | Tokkonen .................. 345/156 |
| 2005/0275618 | A1 | 12/2005 | Juh et al. ................. 345/156 |
| 2006/0025218 | A1 | 2/2006 | Hotta ........................ 463/37 |
| 2006/0026521 | A1 | 2/2006 | Hotelling et al. ......... 715/702 |
| 2006/0048073 | A1 | 3/2006 | Jarrett et al. ............ 715/784 |
| 2006/0055669 | A1 | 3/2006 | Das ........................ 345/156 |
| 2006/0061551 | A1 | 3/2006 | Fateh ...................... 345/158 |
| 2006/0077544 | A1 | 4/2006 | Stark ...................... 359/448 |
| 2006/0082549 | A1 | 4/2006 | Hoshino et al. ............ 345/157 |
| 2006/0094502 | A1 | 5/2006 | Katayama et al. ............. 463/31 |
| 2006/0156249 | A1 | 7/2006 | Blythe et al. ............. 715/781 |

| | | | |
|---|---|---|---|
| 2006/0181510 | A1 | 8/2006 | Faith ...................... 345/158 |
| 2006/0187215 | A1 | 8/2006 | Rosenberg et al. .......... 345/173 |
| 2006/0197753 | A1 | 9/2006 | Hotelling .................. 345/173 |
| 2006/0238495 | A1 | 10/2006 | Davis ...................... 345/156 |
| 2007/0008066 | A1 | 1/2007 | Fukuda .................... 340/5.52 |
| 2007/0024646 | A1 | 2/2007 | Saarinen et al. ........... 345/660 |
| 2007/0046646 | A1 | 3/2007 | Kwon et al. ............... 345/173 |
| 2007/0067745 | A1 | 3/2007 | Choi et al. ............... 715/863 |
| 2007/0109275 | A1 | 5/2007 | Chuang .................... 345/173 |
| 2007/0120835 | A1 | 5/2007 | Sato ....................... 345/173 |
| 2007/0150826 | A1 | 6/2007 | Anzures et al. ............ 715/772 |
| 2007/0150842 | A1 | 6/2007 | Chaudhri et al. ........... 715/863 |
| 2007/0152978 | A1 | 7/2007 | Kocienda et al. ........... 345/173 |
| 2007/0152979 | A1 | 7/2007 | Jobs et al. ............... 345/173 |
| 2007/0155434 | A1 | 7/2007 | Jobs et al. ............... 455/565 |
| 2007/0156364 | A1 | 7/2007 | Rothkopf .................. 702/117 |
| 2008/0104544 | A1 * | 5/2008 | Collins et al. ............ 715/846 |

## FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | | 0 701 220 A | 3/1996 |
| EP | | 0 880 091 A2 | 11/1998 |
| WO | WO 02/01338 A1 | | 1/2002 |
| WO | WO 03/060622 A2 | | 7/2003 |
| WO | WO 2005/052773 A2 | | 6/2005 |
| WO | WO 2006/003591 A | | 1/2006 |
| WO | WO 2006/020305 A2 | | 2/2006 |

## OTHER PUBLICATIONS

Photo Mesa 3.1.2 2006 Screen Shots.*
International Search Report and Written Opinion for International Application No. PCT/US2008/050292, mailed Sep. 19, 2008.
IBM, "Scroll Control Box," IBM Technical Disclosure Bulletin, vol. 38, No. 04, Apr. 1993, pp. 399-403.
Tidwell et al., "Magnetism," Designing Interfaces, Nov. 2005, Section 85.
Invitation to Pay Additional Fees for International Application No. PCT/US2008/050292, mailed Jul. 18, 2008.
Miller, D., "PersonalJava Application Environment," Sun Microsystems, http://java.sun.com/products/personaljava/touchable/, Jun. 8, 1999, 13 pages.

* cited by examiner



Figure 1



**Figure 2**



**Figure 3**

**U.S. Patent**     Dec. 23, 2008     Sheet 4 of 38     US 7,469,381 B2



Figure 4



500

502

Detect a movement of an object (e.g., a finger) on or near a touch screen display of a device.

504

Scroll a list of items displayed on the touch screen display in a first direction (e.g., vertical or horizontal).

506

Scroll the list at a speed corresponding to a speed of movement of the object.

508

Scroll the list in accordance with a simulation of an equation of motion having friction.

510

Is a terminus of the list reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display?

No

512

Process Complete

Yes

514

Display an area beyond the terminus of the list.

516

Display the area in white.

518

Display the area as visually indistinct from the background of the list.

520

After the object is no longer detected on or near the touch screen display, scroll the list in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed.

522

Scroll the list using a damped motion.

524

Make the terminus of the list appear to be elastically attached to an edge of the touch screen display or to an edge displayed on the touch screen display.

**Figure 5**



**Figure 6A**



**Figure 6B**



**Figure 6C**



**Figure 6D**

U.S. Patent          Dec. 23, 2008          Sheet 10 of 38          US 7,469,381 B2



Figure 7



**Figure 8A**



**Figure 8B**



**Figure 8C**



**Figure 8D**



900

902

Display an electronic document at a first magnification on a touch screen display. The electronic document has a document length and a document width.

904

Detect a gesture (e.g., a pinching gesture) on or near the touch screen display corresponding to a command to zoom out by a user-specified amount.

906

In response to detecting the gesture, display the electronic document at a magnification less than the first magnification.

908

Is the document length or document width entirely displayed while the gesture is still detected on or near the touch screen display?

No → 910 Process Complete

Yes

912

Display the electronic document at a magnification wherein areas beyond opposite edges of the electronic document are displayed.

914

Upon detecting termination of the gesture, display the electronic document at a magnification wherein the areas beyond opposite edges of the electronic document are no longer displayed.

Figure 9



**Figure 10A**



**Figure 10B**



**Figure 10C**



1100

1102

Display at least a first portion of an electronic document at a first magnification on a touch screen display.

1104

Detect a gesture (e.g., a de-pinching gesture) on or near the touch screen display corresponding to a command to zoom in by a user-specified amount.

1106

In response to detecting the gesture, display decreasing portions of the electronic document at increasing magnifications.

1108

Upon detecting termination of the gesture, does the magnification exceed a predefined magnification?

No

1110

Process Complete

Yes

1112

Display a respective portion of the electronic document at the predefined magnification.

Figure 11



**Figure 12A**

Case 5:11-cv-01846-LHK   Document 2338-15   Filed 07/08/13   Page 117 of 157



**Figure 12B**



**Figure 12C**



**To Figure 13B**

**Figure 13A**



To Figure 13C

Figure 13B



Figure 13C



1400

1402

Detect a multifinger twisting gesture on or near a touch screen display. The multifinger twisting gesture has a corresponding degree of rotation.

1404

Does the corresponding degree of rotation exceed a predefined degree of rotation?

Yes

1406

Execute a 90° screen rotation command.

No

1408

Execute a screen rotation command with an acute angle of rotation.

1410

Upon ceasing to detect the multifinger twisting gesture, executing a screen rotation command with an angle of rotation opposite to the acute angle.

Figure 14



To Figure 15B

**Figure 15A**



**Figure 15B**



**To Figure 15D**

**Figure 15C**



To Figure 15E

**Figure 15D**



**Figure 15E**



**Figure 16A**



**Figure 16B**



**Figure 16C**



**Figure 16D**



**To Figure 16F**

**Figure 16E**



**Figure 16F**



Figure 17

US 7,469,381 B2

**1**

## LIST SCROLLING AND DOCUMENT TRANSLATION, SCALING, AND ROTATION ON A TOUCH-SCREEN DISPLAY

### RELATED APPLICATIONS

This application claims priority to U.S. Provisional Patent Application Nos. 60/937,993, "Portable Multifunction Device," filed Jun. 29, 2007; 60/946,971, "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display," filed Jun. 28, 2007; 60/945,858, "List Scrolling and Document Translation on a Touch-Screen Display," filed Jun. 22, 2007; 60/879,469, "Portable Multifunction Device," filed Jan. 8, 2007; 60/883,801, "List Scrolling and Document Translation on a Touch-Screen Display," filed Jan. 7, 2007; and 60/879,253, "Portable Multifunction Device," filed Jan. 7, 2007. All of these applications are incorporated by reference herein in their entirety.

This application is related to the following applications: (1) U.S. patent application Ser. No. 10/188,182, "Touch Pad For Handheld Device," filed on Jul. 1, 2002; (2) U.S. patent application Ser. No. 10/722,948, "Touch Pad For Handheld Device," filed on Nov. 25, 2003; (3) U.S. patent application Ser. No. 10/643,256, "Movable Touch Pad With Added Functionality," filed on Aug. 18, 2003; (4) U.S. patent application Ser. No. 10/654,108, "Ambidextrous Mouse," filed on Sep. 2, 2003; (5) U.S. patent application Ser. No. 10/840,862, "Multipoint Touchscreen," filed on May 6, 2004; (6) U.S. patent application Ser. No. 10/903,964, "Gestures For Touch Sensitive Input Devices," filed on Jul. 30, 2004; (7) U.S. patent application Ser. No. 11/038,590, "Mode-Based Graphical User Interfaces For Touch Sensitive Input Devices" filed on Jan. 18, 2005; (8) U.S. patent application Ser. No. 11/057, 050, "Display Actuator," filed on Feb. 11, 2005; (9) U.S. Provisional Patent Application No. 60/658,777, "Multi-Functional Hand-Held Device," filed Mar. 4, 2005; (10) U.S. patent application Ser. No. 11/367,749, "Multi-Functional Hand-Held Device," filed Mar. 3, 2006; and (11) U.S. Provisional Patent Application No. 60/824,769, "Portable Multifunction Device," filed Sep. 6, 2006. All of these applications are incorporated by reference herein in their entirety.

### TECHNICAL FIELD

The disclosed embodiments relate generally to devices with touch-screen displays, and more particularly to scrolling lists and to translating, rotating, and scaling electronic documents on devices with touch-screen displays.

### BACKGROUND

As portable electronic devices become more compact, and the number of functions performed by a given device increases, it has become a significant challenge to design a user interface that allows users to easily interact with a multifunction device. This challenge is particularly significant for handheld portable devices, which have much smaller screens than desktop or laptop computers. This situation is unfortunate because the user interface is the gateway through which users receive not only content but also responses to user actions or behaviors, including user attempts to access a device's features, tools, and functions. Some portable communication devices (e.g., mobile telephones, sometimes called mobile phones, cell phones, cellular telephones, and the like) have resorted to adding more pushbuttons, increasing the density of push buttons, overloading the functions of pushbuttons, or using complex menu systems to allow a user

**2**

to access, store and manipulate data. These conventional user interfaces often result in complicated key sequences and menu hierarchies that must be memorized by the user.

Many conventional user interfaces, such as those that include physical pushbuttons, are also inflexible. This is unfortunate because it may prevent a user interface from being configured and/or adapted by either an application running on the portable device or by users. When coupled with the time consuming requirement to memorize multiple key sequences and menu hierarchies, and the difficulty in activating a desired pushbutton, such inflexibility is frustrating to most users.

As a result of the small size of display screens on portable electronic devices and the potentially large size of electronic files, frequently only a portion of a list or of an electronic document of interest to a user can be displayed on the screen at a given time. Users thus will frequently need to scroll displayed lists or to translate displayed electronic documents. Users also will need to rotate and to scale (i.e., magnify or de-magnify) displayed electronic documents. However, the limitations of conventional user interfaces can cause these actions to be awkward to perform.

Furthermore, scrolling displayed lists and translating electronic documents can be awkward on both portable and non-portable electronic devices with touch-screen displays. A user may become frustrated if the scrolling or translation does not reflect the user's intent. Similarly, a user may become frustrated if rotation and scaling of electronic documents does not reflect the user's intent.

Accordingly, there is a need for devices with touch-screen displays with more transparent and intuitive user interfaces for scrolling lists of items and for translating, rotating, and scaling electronic documents that are easy to use, configure, and/or adapt.

### SUMMARY

The above deficiencies and other problems associated with user interfaces for portable devices and devices with touch-sensitive displays are reduced or eliminated by the disclosed device. In some embodiments, the device has a touch-sensitive display (also known as a "touch screen") with a graphical user interface (GUI), one or more processors, memory and one or more modules, programs or sets of instructions stored in the memory for performing multiple functions. In some embodiments, the user interacts with the GUI primarily through finger contacts and gestures on the touch-sensitive display. In some embodiments, the functions may include telephoning, video conferencing, e-mailing, instant messaging, blogging, digital photographing, digital videoing, web browsing, digital music playing, and/or digital video playing. Instructions for performing these functions may be included in a computer program product configured for execution by one or more processors.

In accordance with some embodiments, a computer-implemented method for use in conjunction with a device with a touch screen display is disclosed. In the method, a movement of an object on or near the touch screen display is detected. In response to detecting the movement, an electronic document displayed on the touch screen display is translated in a first direction. If an edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, an area beyond the edge of the document is displayed. After the object is no longer detected on or near the touch

US 7,469,381 B2

3

screen display, the document is translated in a second direction until the area beyond the edge of the document is no longer displayed.

In accordance with some embodiments, a graphical user interface on a device with a touch screen display is disclosed, comprising a portion of an electronic document displayed on the touch screen display and an area beyond an edge of the document. In the graphical user interface, in response to detecting a movement of an object on or near the touch screen display, the electronic document is translated in a first direction. If the edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, the area beyond the edge of the document is displayed. After the object is no longer detected on or near the touch screen display, the document is translated in a second direction until the area beyond the edge of the document is no longer displayed.

In accordance with some embodiments, a device is disclosed, comprising a touch screen display, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include instructions for detecting a movement of an object on or near the touch screen display and instructions for translating an electronic document displayed on the touch screen display in a first direction, in response to detecting the movement. The one or more programs also include instructions for displaying an area beyond an edge of the electronic document if the edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display. The one or more programs further include instructions for translating the document in a second direction until the area beyond the edge of the document is no longer displayed, after the object is no longer detected on or near the touch screen display.

In accordance with some embodiments, a computer-program product is disclosed, comprising a computer readable storage medium and a computer program mechanism embedded therein. The computer program mechanism comprises instructions, which when executed by a device with a touch screen display, cause the device to detect a movement of an object on or near the touch screen display and to translate an electronic document displayed on the touch screen display in a first direction, in response to detecting the movement. The instructions also cause the device to display an area beyond an edge of the electronic document if the edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display. The instructions further cause the device to translate the document in a second direction until the area beyond the edge of the document is no longer displayed, after the object is no longer detected on or near the touch screen display.

In accordance with some embodiments, a device with a touch screen display is disclosed. The device comprises means for detecting a movement of an object on or near the touch screen display and means for translating an electronic document displayed on the touch screen display in a first direction, in response to detecting the movement. The device also comprises means for displaying an area beyond an edge of the electronic document if the edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display. The device further comprises means for translating the document in a second direction until the

4

area beyond the edge of the document is no longer displayed, after the object is no longer detected on or near the touch screen display.

In accordance with some embodiments, a computer-implemented method for use in conjunction with a device with a touch screen display is disclosed. In the method, a movement of an object on or near the touch screen display is detected. In response to detecting the movement, a list of items displayed on the touch screen display is scrolled in a first direction. If a terminus of the list is reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display, an area beyond the terminus of the list is displayed. After the object is no longer detected on or near the touch screen display, the list is scrolled in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed.

In accordance with some embodiments, a graphical user interface on a device with a touch screen display is disclosed, comprising a portion of a list of items displayed on the touch screen display and an area beyond a terminus of the list. In response to detecting a movement of an object on or near the touch screen display, the list is scrolled in a first direction. If the terminus of the list is reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display, the area beyond the terminus of the list is displayed. After the object is no longer detected on or near the touch screen display, the list is scrolled in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed.

In accordance with some emhodiments, a device is disclosed, comprising a touch screen display, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include instructions for detecting a movement of an object on or near the touch screen display and instructions for scrolling a list of items displayed on the touch screen display in a first direction in response to detecting the movement. The one or more programs also include instructions for displaying an area beyond a terminus of the list if the terminus of the list is reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display. The one or more programs further include instructions for scrolling the list in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed, after the object is no longer detected on or near the touch screen display.

In accordance with some embodiments, a computer-program product is disclosed, comprising a computer readable storage medium and a computer program mechanism embedded therein. The computer program mechanism comprises instructions, which when executed by a device with a touch screen display, cause the device to detect a movement of an object on or near the touch screen display and to scroll a list of items displayed on the touch screen display in a first direction in response to detecting the movement. The instructions also cause the device to display an area beyond a terminus of the list if the terminus of the list is reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display. The instructions further cause the device to scroll the list in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed, after the object is no longer detected on or near the touch screen display.

In accordance with some embodiments, a device with a touch screen display is disclosed. The device comprises means for detecting a movement of an object on or near the

US 7,469,381 B2

5                                                                          6

touch screen display and means for scrolling a list of items displayed on the touch screen display in a first direction in response to detecting the movement. The device also comprises means for displaying an area beyond a terminus of the list if the terminus of the list is reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display. The device further comprises means for scrolling the list in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed, after the object is no longer detected on or near the touch screen display.

In accordance with some embodiments, a computer-implemented method for use at a device with a touch screen display includes detecting a multifinger twisting gesture on or near the touch screen display. The multifinger twisting gesture has a corresponding degree of rotation. If the corresponding degree of rotation exceeds a predefined degree of rotation, a 90° screen rotation command is executed. If the corresponding degree of rotation is less than the predefined degree of rotation, a screen rotation command with an acute angle of rotation is executed and, upon ceasing to detect the multifinger twisting gesture, a screen rotation command with an angle of rotation opposite to the acute angle is executed.

In accordance with some embodiments, a device includes a touch screen display, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include: instructions for detecting a multifinger twisting gesture on or near the touch screen display, wherein the multifinger twisting gesture has a corresponding degree of rotation; instructions for executing a 90° screen rotation command, if the corresponding degree of rotation exceeds a predefined degree of rotation; and instructions for executing a screen rotation command with an acute angle of rotation and for executing, upon ceasing to detect the multifinger twisting gesture, a screen rotation command with an angle of rotation opposite to the acute angle, if the corresponding degree of rotation is less than the predefined degree of rotation.

In accordance with some embodiments, a computer-program product includes a computer readable storage medium and a computer program mechanism embedded therein. The computer program mechanism includes instructions, which when executed by a device with a touch screen display, cause the device to: detect a multifinger twisting gesture on or near the touch screen display, wherein the multifinger twisting gesture has a corresponding degree of rotation; execute a 90° screen rotation command, if the corresponding degree of rotation exceeds a predefined degree of rotation; and execute a screen rotation command with an acute angle of rotation and, upon ceasing to detect the multifinger twisting gesture, execute a screen rotation command with an angle of rotation opposite to the acute angle, if the corresponding degree of rotation is less than the predefined degree of rotation.

In accordance with some embodiments, a device with a touch screen display includes: means for detecting a multifinger twisting gesture on or near the touch screen display, wherein the multifinger twisting gesture has a corresponding degree of rotation; means for executing a 90° screen rotation command, if the corresponding degree of rotation exceeds a predefined degree of rotation; and means for executing a screen rotation command with an acute angle of rotation and, upon ceasing to detect the multifinger twisting gesture, for executing a screen rotation command with an angle of rotation opposite to the acute angle, if the corresponding degree of rotation is less than the predefined degree of rotation.

In accordance with some embodiments, a computer-implemented method of displaying an electronic document having a document length and a document width, for use at a device with a touch screen display, includes displaying the electronic document at a first magnification and detecting a gesture on or near the touch screen display corresponding to a command to zoom out by a user-specified amount. In response to detecting the gesture, the electronic document is displayed at a magnification less than the first magnification. If the document length or document width is entirely displayed while the gesture is still detected on or near the touch screen display, the electronic document is displayed at a magnification wherein areas beyond opposite edges of the electronic document are displayed, and upon detecting termination of the gesture, the electronic document is displayed at a magnification wherein the areas beyond opposite edges of the electronic document are no longer displayed.

In accordance with some embodiments, a graphical user interface on a device with a touch screen display includes an electronic document having a document length and a document width, to be displayed on the touch screen display at multiple magnifications including a first magnification, and areas beyond opposite edges of the electronic document. In response to detecting a gesture on or near the touch screen display corresponding to a command to zoom out by a user-specified amount, wherein the gesture is detected while displaying the electronic document at the first magnification, the electronic document is displayed at a magnification less than the first magnification. If the document length or document width is entirely displayed while the gesture is still detected on or near the touch screen display, the electronic document is displayed at a magnification wherein the areas beyond opposite edges of the electronic document are displayed, and upon detecting termination of the gesture, the electronic document is displayed at a magnification wherein the areas beyond opposite edges of the electronic document are no longer displayed.

In accordance with some embodiments, a device includes a touch screen display, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include: instructions for displaying an electronic document at a first magnification; instructions for detecting a gesture on or near the touch screen display corresponding to a command to zoom out by a user-specified amount; instructions for displaying the electronic document at a magnification less than the first magnification, in response to detecting the gesture; instructions for displaying the electronic document at a magnification wherein areas beyond opposite edges of the electronic document are displayed, if a document length or a document width is entirely displayed while the gesture is still detected on or near the touch screen display; and instructions for displaying the electronic document at a magnification wherein the areas beyond opposite edges of the electronic document are no longer displayed, upon detecting termination of the gesture.

In accordance with some embodiments, a computer-program product includes a computer readable storage medium and a computer program mechanism embedded therein. The computer program mechanism includes instructions, which when executed by a device with a touch screen display, cause the device to: display an electronic document at a first magnification; detect a gesture on or near the touch screen display corresponding to a command to zoom out by a user-specified amount; display the electronic document at a magnification less than the first magnification, in response to detecting the

US 7,469,381 B2

7      8

gesture; display the electronic document at a magnification wherein areas beyond opposite edges of the electronic document are displayed, if a document length or a document width is entirely displayed while the gesture is still detected on or near the touch screen display; and display the electronic document at a magnification wherein the areas beyond opposite edges of the electronic document are no longer displayed, upon detecting termination of the gesture.

In accordance with some embodiments, a device with a touch screen display includes: means for displaying an electronic document at a first magnification; means for detecting a gesture on or near the touch screen display corresponding to a command to zoom out by a user-specified amount; means for displaying the electronic document at a magnification less than the first magnification, in response to detecting the gesture; means for displaying the electronic document at a magnification wherein areas beyond opposite edges of the electronic document are displayed, if a document length or a document width is entirely displayed while the gesture is still detected on or near the touch screen display; and means for displaying the electronic document at a magnification wherein the areas beyond opposite edges of the electronic document are no longer displayed, upon detecting termination of the gesture.

In accordance with some embodiments, a computer-implemented method of displaying an electronic document, for use at a device with a touch screen display, includes displaying at least a first portion of the electronic document at a first magnification and detecting a gesture on or near the touch screen display corresponding to a command to zoom in by a user-specified amount. In response to detecting the gesture, decreasing portions of the electronic document are displayed at increasing magnifications. Upon detecting termination of the gesture, if the magnification exceeds a predefined magnification, a respective portion of the electronic document is displayed at the predefined magnification.

In accordance with some embodiments, a graphical user interface on a device with a touch screen display includes decreasing portions of an electronic document, to be displayed on the touch screen display at increasing magnifications. The decreasing portions of the electronic document include a first portion. In response to detecting a gesture on or near the touch screen display corresponding to a command to zoom in by a user-specified amount, wherein the gesture is detected while displaying at least the first portion of an electronic document at a first magnification, the decreasing portions of the electronic document are displayed at the increasing magnifications. Upon detecting termination of the gesture, if the magnification exceeds a predefined magnification, a respective portion of the electronic document is displayed at the predefined magnification.

In accordance with some embodiments, a device includes a touch screen display, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors. The one or more programs include: instructions for displaying at least a first portion of an electronic document at a first magnification; instructions for detecting a gesture on or near the touch screen display corresponding to a command to zoom in by a user-specified amount; instructions for displaying decreasing portions of the electronic document at increasing magnifications, in response to detecting the gesture; and instructions for displaying a respective portion of the electronic document at a predefined magnification if, upon detecting termination of the gesture, the magnification exceeds the predefined magnification.

In accordance with some embodiments, a computer-program product includes a computer readable storage medium and a computer program mechanism embedded therein. The computer program mechanism includes instructions, which when executed by a device with a touch screen display, cause the device to: display at least a first portion of an electronic document at a first magnification; detect a gesture on or near the touch screen display corresponding to a command to zoom in by a user-specified amount; display decreasing portions of the electronic document at increasing magnifications, in response to detecting the gesture; and display a respective portion of the electronic document at a predefined magnification if, upon detecting termination of the gesture, the magnification exceeds a predefined magnification.

In accordance with some embodiments, a device with a touch screen display includes means for displaying at least a first portion of an electronic document at a first magnification; means for detecting a gesture on or near the touch screen display corresponding to a command to zoom in by a user-specified amount; means for displaying decreasing portions of the electronic document at increasing magnifications, in response to detecting the gesture; and means for displaying a respective portion of the electronic document at a predefined magnification if, upon detecting termination of the gesture, the magnification exceeds the predefined magnification.

The disclosed embodiments provide for easy and intuitive scrolling of lists and translating of electronic documents on a device with a touch screen display, and for easy and intuitive rotation and scaling of electronic documents on a device with a touch screen display.

BRIEF DESCRIPTION OF THE DRAWINGS

For a better understanding of the aforementioned embodiments of the invention as well as additional embodiments thereof, reference should be made to the Description of Embodiments below, in conjunction with the following drawings in which like reference numerals refer to corresponding parts throughout the figures.

FIG. 1 is a block diagram illustrating a portable multifunction device with a touch-sensitive display in accordance with some embodiments.

FIG. 2 illustrates a portable multifunction device having a touch screen in accordance with some embodiments.

FIG. 3 illustrates an exemplary user interface for unlocking a portable electronic device in accordance with some embodiments.

FIG. 4 illustrates an exemplary user interface for a menu of applications on a portable multifunction device in accordance with some embodiments.

FIG. 5 is a flow diagram illustrating a method of scrolling through a list in accordance with some embodiments.

FIGS. 6A-6D illustrate an exemplary user interface for managing an inbox in accordance with some embodiments.

FIG. 7 is a flow diagram illustrating a method of translating an electronic document in accordance with some embodiments.

FIGS. 8A-8D illustrate an exemplary user interface for a browser in accordance with some embodiments.

FIG. 9 is a flow diagram illustrating a process of displaying an electronic document at multiple magnifications in accordance with some embodiments.

FIGS. 10A-10C illustrate the display of an electronic document at multiple magnifications in accordance with some embodiments.

9

FIG. **11** is a flow diagram illustrating a process of displaying an electronic document at multiple magnifications in accordance with some embodiments.

FIGS. **12A-12C** illustrate the display of an electronic document at multiple magnifications in accordance with some embodiments.

FIGS. **13A-13C** illustrate the display of an electronic document at multiple magnifications in accordance with some embodiments.

FIG. **14** is a flow diagram illustrating a process of executing a screen rotation command in accordance with some embodiments.

FIGS. **15A-15E** illustrate rotating the display of an electronic document or other digital object in accordance with some embodiments.

FIGS. **16A-16F** illustrate an exemplary screen rotation gesture in accordance with some embodiments.

FIG. **17** is a block diagram illustrating a device with a touch-screen display in accordance with some embodiments.

DESCRIPTION OF EMBODIMENTS

Reference will now be made in detail to embodiments, examples of which are illustrated in the accompanying drawings. In the following detailed description, numerous specific details are set forth in order to provide a thorough understanding of the present invention. However, it will be apparent to one of ordinary skill in the art that the present invention may be practiced without these specific details. In other instances, well-known methods, procedures, components, circuits, and networks have not been described in detail so as not to unnecessarily obscure aspects of the embodiments.

Embodiments of a portable multifunction device, user interfaces for such devices, and associated processes for using such devices are described. In some embodiments, the device is a portable communications device such as a mobile telephone that also contains other functions, such as PDA and/or music player functions.

The user interface may include a physical click wheel in addition to a touch screen or a virtual click wheel displayed on the touch screen. A click wheel is a user-interface device that may provide navigation commands based on an angular displacement of the wheel or a point of contact with the wheel by a user of the device. A click wheel may also be used to provide a user command corresponding to selection of one or more items, for example, when the user of the device presses down on at least a portion of the wheel or the center of the wheel. Alternatively, breaking contact with a click wheel image on a touch screen surface may indicate a user command corresponding to selection. For simplicity, in the discussion that follows, a portable multifunction device that includes a touch screen is used as an exemplary embodiment. It should be understood, however, that some of the user interfaces and associated processes may be applied to other devices, such as personal computers and laptop computers, that may include one or more other physical user-interface devices, such as a physical click wheel, a physical keyboard, a mouse and/or a joystick.

The device supports a variety of applications, such as a telephone application, a video conferencing application, an e-mail application, an instant messaging application, a blogging application, a digital camera application, a digital video camera application, a web browsing application, a digital music player application, and/or a digital video player application.

The various applications that may be executed on the device may use at least one common physical user-interface

10

device, such as the touch screen. One or more functions of the touch screen as well as corresponding information displayed on the device may be adjusted and/or varied from one application to the next and/or within a respective application. In this way, a common physical architecture (such as the touch screen) of the device may support the variety of applications with user interfaces that are intuitive and transparent.

The user interfaces may include one or more soft keyboard embodiments. The soft keyboard embodiments may include standard (QWERTY) and/or non-standard configurations of symbols on the displayed icons of the keyboard, such as those described in U.S. patent applications Ser. No. 11/459,606, "Keyboards For Portable Electronic Devices," filed Jul. 24, 2006, and Ser. No. 11/459,615, "Touch Screen Keyboards For Portable Electronic Devices," filed Jul. 24, 2006, the contents of which are hereby incorporated by reference herein in their entirety. The keyboard embodiments may include a reduced number of icons (or soft keys) relative to the number of keys in existing physical keyboards, such as that for a typewriter. This may make it easier for users to select one or more icons in the keyboard, and thus, one or more corresponding symbols. The keyboard embodiments may be adaptive. For example, displayed icons may be modified in accordance with user actions, such as selecting one or more icons and/or one or more corresponding symbols. One or more applications on the portable device may utilize common and/or different keyboard embodiments. Thus, the keyboard embodiment used may be tailored to at least some of the applications. In some embodiments, one or more keyboard embodiments may be tailored to a respective user. For example, based on a word usage history (lexicography, slang, individual usage) of the respective user. Some of the keyboard embodiments may be adjusted to reduce a probability of a user error when selecting one or more icons, and thus one or more symbols, when using the soft keyboard embodiments.

Attention is now directed towards embodiments of the device. FIG. **1** is a block diagram illustrating a portable multifunction device **100** with a touch-sensitive display **112** in accordance with some embodiments. The touch-sensitive display **112** is sometimes called a "touch screen" for convenience. The device **100** may include a memory **102** (which may include one or more computer readable storage mediums), a memory controller **122**, one or more processing units (CPU's) **120**, a peripherals interface **118**, RF circuitry **108**, audio circuitry **110**, a speaker **111**, a microphone **113**, an input/output (I/O) subsystem **106**, other input or control devices **116**, and an external port **124**. The device **100** may include one or more optical sensors **164**. These components may communicate over one or more communication buses or signal lines **103**.

It should be appreciated that the device **100** is only one example of a portable multifunction device **100**, and that the device **100** may have more or fewer components than shown, may combine two or more components, or a may have a different configuration or arrangement of the components. The various components shown in FIG. **1** may be implemented in hardware, software or a combination of both hardware and software, including one or more signal processing and/or application specific integrated circuits.

Memory **102** may include high-speed random access memory and may also include non-volatile memory, such as one or more magnetic disk storage devices, flash memory devices, or other non-volatile solid-state memory devices. Access to memory **102** by other components of the device **100**, such as the CPU **120** and the peripherals interface **118**, may be controlled by the memory controller **122**.

US 7,469,381 B2

11                                                    12

The peripherals interface **118** couples the input and output peripherals of the device to the CPU **120** and memory **102**. The one or more processors **120** run or execute various software programs and/or sets of instructions stored in memory **102** to perform various functions for the device **100** and to process data.

In some embodiments, the peripherals interface **118**, the CPU **120**, and the memory controller **122** may be implemented on a single chip, such as a chip **104**. In some other embodiments, they may be implemented on separate chips.

The RF (radio frequency) circuitry **108** receives and sends RF signals, also called electromagnetic signals. The RF circuitry **108** converts electrical signals to/from electromagnetic signals and communicates with communications networks and other communications devices via the electromagnetic signals. The RF circuitry **108** may include well-known circuitry for performing these functions, including but not limited to an antenna system, an RF transceiver, one or more amplifiers, a tuner, one or more oscillators, a digital signal processor, a CODEC chipset, a subscriber identity module (SIM) card, memory, and so forth. The RF circuitry **108** may communicate with networks, such as the Internet, also referred to as the World Wide Web (WWW), an intranet and/or a wireless network, such as a cellular telephone network, a wireless local area network (LAN) and/or a metropolitan area network (MAN), and other devices by wireless communication. The wireless communication may use any of a plurality of communications standards, protocols and technologies, including but not limited to Global System for Mobile Communications (GSM), Enhanced Data GSM Environment (EDGE), wideband code division multiple access (W-CDMA), code division multiple access (CDMA), time division multiple access (TDMA), Bluetooth, Wireless Fidelity (Wi-Fi) (e.g., IEEE 802.11a, IEEE 802.11b, IEEE 802.11g and/or IEEE 802.11n), voice over Internet Protocol (VoIP), Wi-MAX, a protocol for email, instant messaging, and/or Short Message Service (SMS), or any other suitable communication protocol, including communication protocols not yet developed as of the filing date of this document.

The audio circuitry **110**, the speaker **111**, and the microphone **113** provide an audio interface between a user and the device **100**. The audio circuitry **110** receives audio data from the peripherals interface **118**, converts the audio data to an electrical signal, and transmits the electrical signal to the speaker **111**. The speaker **111** converts the electrical signal to human-audible sound waves. The audio circuitry **110** also receives electrical signals converted by the microphone **113** from sound waves. The audio circuitry **110** converts the electrical signal to audio data and transmits the audio data to the peripherals interface **118** for processing. Audio data may be retrieved from and/or transmitted to memory **102** and/or the RF circuitry **108** by the peripherals interface **118**. In some embodiments, the audio circuitry **110** also includes a headset jack (not shown). The headset jack provides an interface between the audio circuitry **110** and removable audio input/output peripherals, such as output-only headphones or a headset with both output (e.g., a headphone for one or both ears) and input (e.g., a microphone).

The I/O subsystem **106** couples input/output peripherals on the device **100**, such as the display system **112** and other input/control devices **116**, to the peripherals interface **118**. The I/O subsystem **106** may include a display controller **156** and one or more input controllers **160** for other input or control devices. The one or more input controllers **160** receive/send electrical signals from/to other input or control devices **116**. The other input/control devices **116** may include physical buttons (e.g., push buttons, rocker buttons, etc.), dials, slider switches, joysticks, click wheels, and so forth. In some alternate embodiments, input controller(s) **160** may be coupled to any (or none) of the following: a keyboard, infrared port, USB port, and a pointer device such as a mouse. The one or more buttons (e.g., **208**, FIG. **2**) may include an up/down button for volume control of the speaker **111** and/or the microphone **113**. The one or more buttons may include a push button (e.g., **206**, FIG. **2**). A quick press of the push button may disengage a lock of the touch screen **112** or begin a process that uses gestures on the touch screen to unlock the device, as described in U.S. patent application Ser. No. 11/322,549, "Unlocking a Device by Performing Gestures on an Unlock Image," filed Dec. 23, 2005, which is hereby incorporated by reference herein in its entirety. A longer press of the push button (e.g., **206**) may turn power to the device **100** on or off. The user may be able to customize a functionality of one or more of the buttons. The touch screen **112** is used to implement virtual or soft buttons and one or more soft keyboards.

The touch-sensitive display system **112** provides an input interface and an output interface between the device and a user. The display controller **156** receives and/or sends electrical signals from/to the display system **112**. The display system **112** displays visual output to the user. The visual output may include graphics, text, icons, video, and any combination thereof (collectively termed "graphics"). In some embodiments, some or all of the visual output may correspond to user-interface objects, further details of which are described below.

A touch screen in display system **112** is a touch-sensitive surface that accepts input from the user based on haptic and/or tactile contact. The display system **112** and the display controller **156** (along with any associated modules and/or sets of instructions in memory **102**) detect contact (and any movement or breaking of the contact) on the display system **112** and converts the detected contact into interaction with user-interface objects (e.g., one or more soft keys, icons, web pages or images) that are displayed on the touch screen. In an exemplary embodiment, a point of contact between a touch screen in the display system **112** and the user corresponds to a finger of the user.

The touch screen in the display system **112** may use LCD (liquid crystal display) technology, or LPD (light emitting polymer display) technology, although other display technologies may be used in other embodiments. The touch screen in the display system **112** and the display controller **156** may detect contact and any movement or breaking thereof using any of a plurality of touch sensing technologies now known or later developed, including but not limited to capacitive, resistive, infrared, and surface acoustic wave technologies, as well as other proximity sensor arrays or other elements for determining one or more points of contact with a touch screen in the display system **112**. A touch-sensitive display in some embodiments of the display system **112** may be analogous to the multi-touch sensitive tablets described in the following U.S. Pat. Nos. 6,323,846 (Westerman et al.), 6,570,557 (Westerman et al.), and/or 6,677,932 (Westerman), and/or U.S. Patent Publication 2002/0015024A1, each of which is hereby incorporated by reference herein in their entirety. However, a touch screen in the display system **112** displays visual output from the portable device **100**, whereas touch sensitive tablets do not provide visual output. The touch screen in the display system **112** may have a resolution in excess of 100 dpi. In an exemplary embodiment, the touch screen in the display system has a resolution of approximately 168 dpi. The user may make contact with the touch screen in the display system **112** using any suitable object or append-

US 7,469,381 B2

13

age, such as a stylus, a finger, and so forth. In some embodiments, the user interface is designed to work primarily with finger-based contacts and gestures, which are much less precise than stylus-based input due to the larger area of contact of a finger on the touch screen. In some embodiments, the device translates the rough finger-based input into a precise pointer/cursor position or command for performing the actions desired by the user.

A touch-sensitive display in some embodiments of the display system 112 may be as described in the following applications: (1) U.S. patent application Ser. No. 11/381,313, "Multipoint Touch Surface Controller," filed on May 2, 2006; (2) U.S. patent application Ser. No. 10/840,862, "Multipoint Touchscreen," filed on May 6, 2004; (3) U.S. patent application Ser. No. 10/903,964, "Gestures For Touch Sensitive Input Devices," filed on Jul. 30, 2004; (4) U.S. patent application Ser. No. 11/048,264, "Gestures For Touch Sensitive Input Devices," filed on Jan. 31, 2005; (5) U.S. patent application Ser. No. 11/038,590, "Mode-Based Graphical User Interfaces For Touch Sensitive Input Devices," filed on Jan. 18, 2005; (6) U.S. patent application Ser. No. 11/228,758, "Virtual Input Device Placement On A Touch Screen User Interface," filed on Sep. 16, 2005; (7) U.S. patent application Ser. No. 11/228,700, "Operation Of A Computer With A Touch Screen Interface," filed on Sep. 16, 2005; (8) U.S. patent application Ser. No. 11/228,737, "Activating Virtual Keys Of A Touch-Screen Virtual Keyboard," filed on Sep. 16, 2005; and (9) U.S. patent application Ser. No. 11/367,749, "Multi-Functional Hand-Held Device," filed on Mar. 3, 2006. All of these applications are incorporated by reference herein in their entirety.

In some embodiments, in addition to the touch screen, the device 100 may include a touchpad (not shown) for activating or deactivating particular functions. In some embodiments, the touchpad is a touch-sensitive area of the device that, unlike the touch screen, does not display visual output. The touchpad may be a touch-sensitive surface that is separate from the touch screen in the display system 112 or an extension of the touch-sensitive surface formed by the touch screen.

In some embodiments, the device 100 may include a physical or virtual click wheel as an input control device 116. A user may navigate among and interact with one or more graphical objects (henceforth referred to as icons) displayed in the display system 112 by rotating the click wheel or by moving a point of contact with the click wheel (e.g., where the amount of movement of the point of contact is measured by its angular displacement with respect to a center point of the click wheel). The click wheel may also be used to select one or more of the displayed icons. For example, the user may press down on at least a portion of the click wheel or an associated button. User commands and navigation commands provided by the user via the click wheel may be processed by an input controller 160 as well as one or more of the modules and/or sets of instructions in memory 102. For a virtual click wheel, the click wheel and click wheel controller may be part of the display system 112 and the display controller 156, respectively. For a virtual click wheel, the click wheel may be either an opaque or semitransparent object that appears and disappears on the touch screen display in response to user interaction with the device. In some embodiments, a virtual click wheel is displayed on the touch screen of a portable multifunction device and operated by user contact with the touch screen.

The device 100 also includes a power system 162 for powering the various components. The power system 162 may include a power management system, one or more power

14

sources (e.g., battery, alternating current (AC)), a recharging system, a power failure detection circuit, a power converter or inverter, a power status indicator (e.g., a light-emitting diode (LED)) and any other components associated with the generation, management and distribution of power in portable devices.

The device 100 may also include one or more optical sensors 164. FIG. 1 shows an optical sensor coupled to an optical sensor controller 158 in I/O subsystem 106. The optical sensor 164 may include charge-coupled device (CCD) or complementary metal-oxide semiconductor (CMOS) phototransistors. The optical sensor 164 receives light from the environment, projected through one or more lens, and converts the light to data representing an image. In conjunction with an imaging module 143, the optical sensor 164 may capture still images or video. In some embodiments, an optical sensor is located on the back of the device 100, opposite the touch screen display 112 on the front of the device, so that the touch screen display may be used as a viewfinder for either still and/or video image acquisition. In some embodiments, an optical sensor is located on the front of the device so that the user's image may be obtained for videoconferencing while the user views the other video conference participants on the touch screen display. In some embodiments, the position of the optical sensor 164 can be changed by the user (e.g., by rotating the lens and the sensor in the device housing) so that a single optical sensor 164 may be used along with the touch screen display for both video conferencing and still and/or video image acquisition.

The device 100 may also include one or more proximity sensors 166. FIG. 1 shows a proximity sensor 166 coupled to the peripherals interface 118. Alternately, the proximity sensor 166 may be coupled to an input controller 160 in the I/O subsystem 106. The proximity sensor 166 may perform as described in U.S. patent application Ser. Nos. 11/241,839, "Proximity Detector In Handheld Device," filed Sep. 30, 2005, and 11/240,788, "Proximity Detector In Handheld Device," filed Sep. 30, 2005, which are hereby incorporated by reference herein in their entirety. In some embodiments, the proximity sensor turns off and disables the touch screen 112 when the multifunction device is placed near the user's ear (e.g., when the user is making a phone call). In some embodiments, the proximity sensor keeps the screen off when the device is in the user's pocket, purse, or other dark area to prevent unnecessary battery drainage when the device is a locked state.

In some embodiments, the software components stored in memory 102 may include an operating system 126, a communication module (or set of instructions) 128, a contact/motion module (or set of instructions) 130, a graphics module (or set of instructions) 132, a text input module (or set of instructions) 134, a Global Positioning System (GPS) module (or set of instructions) 135, and applications (or set of instructions) 136.

The operating system 126 (e.g., Darwin, RTXC, LINUX, UNIX, OS X, WINDOWS, or an embedded operating system such as VxWorks) includes various software components and/or drivers for controlling and managing general system tasks (e.g., memory management, storage device control, power management, etc.) and facilitates communication between various hardware and software components.

The communication module 128 facilitates communication with other devices over one or more external ports 124 and also includes various software components for handling data received by the RF circuitry 108 and/or the external port 124. The external port 124 (e.g., Universal Serial Bus (USB), FIREWIRE, etc.) is adapted for coupling directly to other

US 7,469,381 B2

15

devices or indirectly over a network (e.g., the Internet, wireless LAN, etc.). In some embodiments, the external port is a multi-pin (e.g., 30-pin) connector that is the same as, or similar to and/or compatible with the 30-pin connector used on iPod (trademark of Apple Computer, Inc.) devices.

The contact/motion module **130** may detect contact with the touch screen in the display system **112** (in conjunction with the display controller **156**) and other touch sensitive devices (e.g., a touchpad or physical click wheel). The contact/motion module **130** includes various software components for performing various operations related to detection of contact, such as determining if contact has occurred, determining if there is movement of the contact and tracking the movement across the touch screen in the display system **112**, and determining if the contact has been broken (i.e., if the contact has ceased). Determining movement of the point of contact may include determining speed (magnitude), velocity (magnitude and direction), and/or an acceleration (a change in magnitude and/or direction) of the point of contact. These operations may be applied to single contacts (e.g., one finger contacts) or to multiple simultaneous contacts (e.g., "multi-touch"/multiple finger contacts). In some embodiments, the contact/motion module **130** and the display controller **156** also detects contact on a touchpad. In some embodiments, the contact/motion module **130** detects movement of one or more objects on or near the touch screen and/or the touchpad. In some embodiments, the contact/motion module **130** and the controller **160** detects contact on a click wheel **116**.

The graphics module **132** includes various known software components for rendering and displaying graphics on the display system **112**, including components for changing the intensity of graphics that are displayed. As used herein, the term "graphics" includes any object that can be displayed to a user, including without limitation text, web pages, icons (such as user-interface objects including soft keys), digital images, videos, animations and the like.

The text input module **134**, which may be a component of graphics module **132**, provides soft keyboards for entering text in various applications (e.g., contacts **137**, e-mail **140**, IM **141**, blogging **142**, browser **147**, and any other application that needs text input).

The GPS module **135** determines the location of the device and provides this information for use in various applications (e.g., to telephone **138** for use in location-based dialing, to camera **143** and/or blogger **142** as picture/video metadata, and to applications that provide location-based services such as weather widgets, local yellow page widgets, and map/navigation widgets).

The applications **136** may include the following modules (or sets of instructions), or a subset or superset thereof:

- a contacts module **137** (sometimes called an address book or contact list);
- a telephone module **138**;
- a video conferencing module **139**;
- an e-mail client module **140**;
- an instant messaging (IM) module **141**;
- a blogging module **142**;
- a camera module **143** for still and/or video images;
- an image management module **144**;
- a video player module **145**;
- a music player module **146**;
- a browser module **147**;
- a calendar module **148**;
- widget modules **149**, which may include weather widget **149-1**, stocks widget **149-2**, calculator widget **149-3**,

16

alarm clock widget **149-4**, dictionary widget **149-5**, and other widgets obtained by the user, as well as user-created widgets **149-6**;

- widget creator module **150** for making user-created widgets **149-6**; and/or search module **151**.

Examples of other applications **136** that may be stored in memory **102** include memo pad and other word processing applications, JAVA-enabled applications, encryption, digital rights management, voice recognition, and voice replication.

In conjunction with display system **112**, display controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the contacts module **137** may be used to manage an address book or contact list, including: adding name(s) to the address book; deleting name(s) from the address book; associating telephone number(s), e-mail address(es), physical address(es) or other information with a name; associating an image with a name; categorizing and sorting names; providing telephone numbers or e-mail addresses to initiate and/or facilitate communications by telephone **138**, video conference **139**, e-mail **140**, or IM **141**; and so forth.

In conjunction with RF circuitry **108**, audio circuitry **110**, speaker **111**, microphone **113**, display system **112**, display controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the telephone module **138** may be used to enter a sequence of characters corresponding to a telephone number, access one or more telephone numbers in the address book **137**, modify a telephone number that has been entered, dial a respective telephone number, conduct a conversation and disconnect or hang up when the conversation is completed. As noted above, the wireless communication may use any of a plurality of communications standards, protocols and technologies.

In conjunction with RF circuitry **108**, audio circuitry **110**, speaker **111**, microphone **113**, display system **112**, display controller **156**, optical sensor **164**, optical sensor controller **158**, contact module **130**, graphics module **132**, text input module **134**, contact list **137**, and telephone module **138**, the videoconferencing module **139** may be used to initiate, conduct, and terminate a video conference between a user and one or more other participants.

In conjunction with RF circuitry **108**, display system **112**, display controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the e-mail client module **140** may be used to create, send, receive, and manage e-mail. In conjunction with image management module **144**, the e-mail module **140** makes it very easy to create and send e-mails with still or video images taken with camera module **143**.

In conjunction with RF circuitry **108**, display system **112**, display controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the instant messaging module **141** may be used to enter a sequence of characters corresponding to an instant message, to modify previously entered characters, to transmit a respective instant message (for example, using a Short Message Service (SMS) or Multimedia Message Service (MMS) protocol), to receive instant messages and to view received instant messages. In some embodiments, transmitted and/or received instant messages may include graphics, photos, audio files, video files and/or other attachments as are supported in a MMS and/or an Enhanced Messaging Service (EMS).

In conjunction with RF circuitry **108**, display system **112**, display controller **156**, contact module **130**, graphics module **132**, text input module **134**, image management module **144**, and browsing module **147**, the blogging module **142** may be used to send text, still images, video, and/or other graphics to a blog (e.g., the user's blog).

US 7,469,381 B2

17

In conjunction with display system **112**, display controller **156**, optical sensor(s) **164**, optical sensor controller **158**, contact module **130**, graphics module **132**, and image management module **144**, the camera module **143** may be used to capture still images or video (including a video stream) and store them into memory **102**, modify characteristics of a still image or video, or delete a still image or video from memory **102**.

In conjunction with display system **112**, display controller **156**, contact module **130**, graphics module **132**, text input module **134**, and camera module **143**, the image management module **144** may be used to arrange, modify or otherwise manipulate, label, delete, present (e.g., in a digital slide show or album), and store still and/or video images.

In conjunction with display system **112**, display controller **156**, contact module **130**, graphics module **132**, audio circuitry **110**, and speaker **111**, the video player module **145** may be used to display, present or otherwise play back videos (e.g., on the touch screen or on an external, connected display via external port **124**).

In conjunction with display system **112**, display system controller **156**, contact module **130**, graphics module **132**, audio circuitry **110**, speaker **111**, RF circuitry **108**, and browser module **147**, the music player module **146** allows the user to download and play back recorded music and other sound files stored in one or more file formats, such as MP3 or AAC files. In some embodiments, the device **100** may include the functionality of an MP3 player, such as an iPod (trademark of Apple Computer, Inc.).

In conjunction with RF circuitry **108**, display system **112**, display system controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the browser module **147** may be used to browse the Internet, including searching, linking to, receiving, and displaying web pages or portions thereof, as well as attachments and other files linked to web pages.

In conjunction with RF circuitry **108**, display system **112**, display system controller **156**, contact module **130**, graphics module **132**, text input module **134**, e-mail module **140**, and browser module **147**, the calendar module **148** may be used to create, display, modify, and store calendars and data associated with calendars (e.g., calendar entries, to do lists, etc.).

In conjunction with RF circuitry **108**, display system **112**, display system controller **156**, contact module **130**, graphics module **132**, text input module **134**, and browser module **147**, the widget modules **149** are mini-applications that may be downloaded and used by a user (e.g., weather widget **149-1**, stocks widget **149-2**, calculator widget **149-3**, alarm clock widget **149-4**, and dictionary widget **149-5**) or created by the user (e.g., user-created widget **149-6**). In some embodiments, a widget includes an HTML (Hypertext Markup Language) file, a CSS (Cascading Style Sheets) file, and a JavaScript file. In some embodiments, a widget includes an XML (Extensible Markup Language) file and a JavaScript file (e.g., Yahoo! Widgets).

In conjunction with RF circuitry **108**, display system **112**, display system controller **156**, contact module **130**, graphics module **132**, text input module **134**, and browser module **147**, the widget creator module **150** may be used by a user to create widgets (e.g., turning a user-specified portion of a web page into a widget).

In conjunction with display system **112**, display system controller **156**, contact module **130**, graphics module **132**, and text input module **134**, the search module **151** may be used to search for text, music, sound, image, video, and/or other files in memory **102** that match one or more search criteria (e.g., one or more user-specified search terms).

18

Each of the above identified modules and applications correspond to a set of instructions for performing one or more functions described above. These modules (i.e., sets of instructions) need not be implemented as separate software programs, procedures or modules, and thus various subsets of these modules may be combined or otherwise re-arranged in various embodiments. In some embodiments, memory **102** may store a subset of the modules and data structures identified above. Furthermore, memory **102** may store additional modules and data structures not described above.

In some embodiments, the device **100** is a device where operation of a predefined set of functions on the device is performed exclusively through a touch screen in the display system **112** and/or a touchpad. By using a touch screen and/or a touchpad as the primary input/control device for operation of the device **100**, the number of physical input/control devices (such as push buttons, dials, and the like) on the device **100** may be reduced.

The predefined set of functions that may be performed exclusively through a touch screen and/or a touchpad includes navigation between user interfaces. In some embodiments, the touchpad, when touched by the user, navigates the device **100** to a main, home, or root menu from any user interface that may be displayed on the device **100**. In such embodiments, the touchpad may be referred to as a "menu button." In some other embodiments, the menu button may be a physical push button or other physical input/control device instead of a touchpad.

FIG. **2** illustrates a portable multifunction device **100** having a touch screen **112** in accordance with some embodiments. The touch screen may display one or more graphics. In this embodiment, as well as others described below, a user may select one or more of the graphics by making contact or touching the graphics, for example, with one or more fingers **202** (not drawn to scale in the figure). In some embodiments, selection of one or more graphics occurs when the user breaks contact with the one or more graphics. In some embodiments, the contact may include a gesture, such as one or more taps, one or more swipes (from left to right, right to left, upward and/or downward) and/or a rolling of a finger (from right to left, left to right, upward and/or downward) that has made contact with the device **100**. In some embodiments, inadvertent contact with a graphic may not select the graphic. For example, a swipe gesture that sweeps over an application icon may not select the corresponding application when the gesture corresponding to selection is a tap.

The device **100** may also include one or more physical buttons, such as "home" or menu button **204**. As described previously, the menu button **204** may be used to navigate to any application **136** in a set of applications that may be executed on the device **100**. Alternatively, in some embodiments, the menu button is implemented as a soft key in a GUI in touch screen **112**.

In one embodiment, the device **100** includes a touch screen **112**, a menu button **204**, a push button **206** for powering the device on/off and locking the device, and volume adjustment button(s) **208**. The push button **206** may be used to turn the power on/off on the device by depressing the button and holding the button in the depressed state for a predefined time interval; to lock the device by depressing the button and releasing the button before the predefined time interval has elapsed; and/or to unlock the device or initiate an unlock process. In an alternative embodiment, the device **100** also may accept verbal input for activation or deactivation of some functions through the microphone **113**.

Attention is now directed towards embodiments of user interfaces ("UI") and associated processes that may be imple-

US 7,469,381 B2

19

mented on a portable multifunction device **100** and/or on a device **1700** with a touch-screen display (FIG. **17**).

FIG. **3** illustrates an exemplary user interface for unlocking a portable electronic device in accordance with some embodiments. In some embodiments, user interface **300** includes the following elements, or a subset or superset thereof:

Unlock image **302** that is moved with a finger gesture to unlock the device;

Arrow **304** that provides a visual cue to the unlock gesture;

Channel **306** that provides additional cues to the unlock gesture;

Time **308**;

Day **310**;

Date **312**; and

Wallpaper image **314**.

In some embodiments, the device detects contact with the touch-sensitive display (e.g., a user's finger making contact on or near the unlock image **302**) while the device is in a user-interface lock state. The device moves the unlock image **302** in accordance with the contact. The device transitions to a user-interface unlock state if the detected contact corresponds to a predefined gesture, such as moving the unlock image across channel **306**. Conversely, the device maintains the user-interface lock state if the detected contact does not correspond to the predefined gesture. As noted above, processes that use gestures on the touch screen to unlock the device are described in U.S. patent application Ser. No. 11/322,549, "Unlocking a Device by Performing Gestures on an Unlock Image," filed Dec. 23, 2005, which is hereby incorporated by reference herein in its entirety.

FIG. **4** illustrates an exemplary user interface for a menu of applications on a portable multifunction device in accordance with some embodiments. In some embodiments, user interface **400** includes the following elements, or a subset or superset thereof:

Signal strength indicator **402** for wireless communication;

Time **404**;

Battery status indicator **406**;

Tray **408** with icons for frequently used applications, such as one or more of the following:

Phone **138**;

E-mail client **140**, which may include an indicator **410** of the number of unread e-mails;

Browser **147**; and

Music player **146**; and

Icons for other applications, such as one or more of the following:

IM **141**;

Image management **144**;

Camera **143**;

Video player **145**;

Weather **149-1**;

Stocks **149-2**;

Blog **142**;

Calendar **148**;

Calculator **149-3**;

Alarm clock **149-4**;

Dictionary **149-5**; and

User-created widget **149-6**.

In some embodiments, UI **400** displays all of the available applications **136** on one screen so that there is no need to scroll through a list of applications (e.g., via a scroll bar or via a swipe gesture). In some embodiments, as the number of applications increases, the icons corresponding to the applications may decrease in size so that all applications may be displayed on a single screen without scrolling. In some embodiments, having all applications on one screen and a

20

menu button enables a user to access any desired application with at most two inputs, such as activating the menu button **204** and then activating the desired application (e.g., by a tap or other finger gesture on the icon corresponding to the application).

In some embodiments, UI **400** provides integrated access to both widget-based applications and non-widget-based applications. In some embodiments, all of the widgets, whether user-created or not, are displayed in UI **400**. In other embodiments, activating the icon for user-created widget **149-6** may lead to another UI (not shown) that contains the user-created widgets or icons corresponding to the user-created widgets.

In some embodiments, a user may rearrange the icons in UI **400**, e.g., using processes described in U.S. patent application Ser. No. 11/459,602, "Portable Electronic Device With Interface Reconfiguration Mode," filed Jul. 24, 2006, which is hereby incorporated by reference herein in its entirety. For example, a user may move application icons in and out of tray **408** using finger gestures.

In some embodiments, UI **400** includes a gauge (not shown) that displays an updated account usage metric for an account associated with usage of the device (e.g., a cellular phone account), as described in U.S. patent application Ser. No. 11/322,552, "Account Information Display For Portable Communication Device," filed Dec. 23, 2005, which is hereby incorporated by reference herein in its entirety.

As discussed above, UI **400** may display all of the available applications **136** on one screen so that there is no need to scroll through a list of applications. However, in some embodiments a touch-sensitive display may include a GUI with one or more windows that display only a portion of a list of items (e.g., information items) or of an electronic document. In response to detecting a movement of an object on or near the touch-sensitive display, the list may be scrolled or the electronic document may be translated. Detecting the movement of the object may include determining speed (magnitude), velocity (magnitude and direction), and/or an acceleration (including magnitude and/or direction) of the object. Scrolling through the list or translating the document may be accelerated in response to an accelerated movement of the object. In some embodiments, the scrolling and acceleration of the scrolling, or translation and acceleration of the translation, may be in accordance with a simulation of a physical device having friction, i.e., damped motion. For example, the scrolling or translation may correspond to a simulation of a force law or equation of motion having a mass or inertial term, as well as a dissipative term. In some embodiments, the simulation may correspond to a cylinder rotating about its axis.

In some embodiments, accelerated movement of the detected object may include an accelerated movement of a point of contact followed by a breaking of the point of contact. For example, the user may make contact with the touch-sensitive display, swipe or sweep one or more of his or her fingers along the display (i.e., move and/or accelerate the point of contact), and optionally, break the point of contact with the display, i.e., move the one or more fingers away from the display. The swipe or sweep may be along a predefined axis of the touch-sensitive display or may be within a predetermined angle of a predefined direction on the touch-sensitive display. In other embodiments, the accelerated movement of the point of contact may include a first user gesture oriented along a predefined axis of the touch-sensitive display or oriented within a predetermined angle of a predefined direction on the touch-sensitive display.

US 7,469,381 B2

21

Scrolling through the list of items or translating the electronic document may be further accelerated in response to detection of a second movement of an object on or near the touch-sensitive display, such as a second sweeping motion of the point of contact along the predefined axis or within the predetermined angle of a predefined direction on the touch-sensitive display and/or a second user gesture oriented along the predefined axis or within the predetermined angle of a predefined direction on the touch-sensitive display. For example, the user may swipe one or more of his or her fingers along the touch-sensitive display two or more times.

The scrolling through the list of items or the translation of the electronic document may be stopped in accordance with the user breaking the point of contact and then establishing a substantially stationary point of contact with the touch-sensitive display for at least a pre-determined period of time. For example, after swiping one or more of his or her fingers along the touch-sensitive display and breaking the point of contact, the user may touch the display and hold the one or more fingers that are touching the display stationary (or approximately stationary) for one or more seconds, or fractions of a second.

The direction of scrolling or translation may be reversed in response to intersecting a virtual boundary corresponding to a terminus of the list or an edge of the electronic document. The scrolling reversal or translation reversal may correspond to a damped motion. For example, during scrolling, a displayed portion of the list of items may appear to bounce off of a boundary of the window in the touch-sensitive display when a beginning or an end of the list of items is reached. Similarly, during translation, a displayed portion of the electronic document may appear to bounce off of a boundary of the window in the touch-sensitive display when an edge of the document is reached. The apparent bounce may correspond to a simulation of a viscous or elastic ball having momentum in a first direction striking an immovable and/or inelastic object, such as a wall. The subsequent motion of the document (the motion of which corresponds to the ball in the aforementioned analogy) may be damped, for example, by including a friction or dissipative term in the simulation. A parameter corresponding to the friction term in the simulation may be adjustable, allowing the document to reach equilibrium in contact with the virtual boundary, or displaced from the virtual boundary.

In some embodiments movement of the point of contact by the user over an index on the touch-sensitive display may be determined. In some embodiments, the index may be displayed in a first region or a first window of the touch-sensitive display while the list of items or information items during the scrolling may be displayed in a second region or a second window of the touch-sensitive display. The displayed index may have a sequence of index items. In an exemplary embodiment, the sequence of index items may include letters in the alphabet, i.e., the index may include an alphabetical index. The list of information items may include an alphabetically ordered list of information items. The alphabetically ordered list of information items may include contact information, for example, in a user's contact list or address book.

In response to movement of the user's point of contact over a displayed index, the list of information items on the touch-sensitive display may be scrolled. The list of information items may include a sequence of information items corresponding to the sequence of index items. The subsets may include one or more categories. For example, a respective category may include contact information for one or more individuals whose first and/or last names begin with one or more respective letters, such as the letter 's'. In an exemplary embodiment, there is a subset corresponding to each

22

letter in the alphabet that has one or more entries. In some embodiments, the scrolling may be in accordance with a simulation of an equation of motion having friction.

The scrolling may include scrolling through a respective information item subset if the point of contact moves over a corresponding respective index item in the index items. The scrolling may have an associated scroll speed based on a speed of movement of the point of contact over the respective index item and the number of items in the information item subset corresponding to the respective index item. For example, the scroll speed may be faster for subsets that have more entries than subsets with fewer entries. The scrolling may include scrolling through all items in a plurality of the information item subsets in response to the point of contact moving over the corresponding index items in the displayed index.

If it is determined that the point of contact with the index corresponds to a respective index item in the index, the list of information items may be scrolled to a corresponding subset of the list of information items. For example, if the user selects an index item, such as the letter 'R', in the set of index symbols, the list of items may be smoothly scrolled to the corresponding subset for the letter 'R' in the list of items. Alternatively, the displayed list of information items jump directly from a current scroll position to a scroll position in which information items corresponding to the index item 'R' are displayed.

In the present document, the term "if" may be construed to mean "when," or "upon," or "in response to determining," or "in response to detecting," depending on the context Similarly, the phrase "if it is determined" or "if [a stated condition or event] is detected" may be construed to mean "upon determining" or "in response to determining" or "upon detecting" the stated condition or event, or "in response to detecting" the stated condition or event, depending on the context.

If the point of contact with the touch-sensitive display corresponds to a user selection of a respective information item in the list of information items, information corresponding to the respective information item may be displayed on the touch-sensitive display. For example, if the user selects a respective name, the corresponding contact information may be displayed.

While scrolling through respective information subsets, an index symbol may displayed in conjunction with each respective information item subset. In some embodiments, respective index symbols may be displayed adjacent to corresponding subsets (such as displayed text) of the list of information items. In some embodiments, a respective index symbol may be displayed at an upper edge of a window containing the displayed text of the respective information item subset.

The index symbol corresponding to a respective information subset may be translucently displayed over the respective information item subset. The translucently displayed index symbol may have a different font color than that used to display text in the information item subset, and/or it may be displayed using a larger font than the font used to display text in the information item subset.

If the list of information items contains no items for a particular index symbol, i.e., no entries for a particular subset, a first index symbol preceding a particular index symbol and a second index symbol following the index symbol may be displayed in conjunction with scrolling through the list of information items from the information subset corresponding to the first index symbol to the information subset corresponding to the second index symbol. The particular index symbol may not be displayed in conjunction with the displayed text of the list of information items during the scroll

US 7,469,381 B2

23

through. For example, display of a respective index symbol may be skipped when the list of information items contains no items for the particular index symbol.

In some embodiments, the list scrolling described here operates without displaying a scroll bar. Similarly, in some embodiments, the translation of electronic documents described here operates without displaying scroll bars. The user's sweeping motion on the touch-sensitive display operation may be performed directly on top of the displayed list or displayed electronic document, and may include a sweeping or gliding motion, near or in contact with the display's surface, along a path anywhere within a display window in which the list or electronic document is displayed. While a scroll bar could potentially be displayed in conjunction with the displayed list, the scrolling or translation described here can be independent of any such scroll bar. In some embodiments, if a scroll bar is used, then an upward movement of a point of contact on the scroll bar may cause earlier entries in the list to be displayed, whereas a downward movement of the point of contact on the scroll bar may cause later entries in the list to be displayed.

In some embodiments, scrolling or translation may be in accordance with a speed of movement of a detected object, such as a speed of movement of a point of contact. The speed may be a time average of values determined during several time intervals. In an exemplary embodiment, the speed, velocity and/or acceleration may be determined over five time intervals, where a respective time interval corresponds to an inverse of a frame rate, such as 0.0167 s, of a display. In some embodiments, the speed, velocity and/or acceleration may be determined even when a variable frame rate is used, such as when one or more frames are skipped or not displayed. In these embodiments, the speed, velocity, and/or acceleration may be determined between two or more times for the respective time interval and/or may be projected based on values determined in a preceding and/or a subsequent time interval.

In some embodiments, the scrolling or translation after a user optionally breaks the contact may be in accordance with the change in the acceleration and the speed or the velocity in one or more time intervals prior to the breaking of the contact. For example, the velocity $v_f$ of scrolling or translation one or more time intervals after breaking contact may be determined using

$$v_f = v_o + \alpha \Delta t,$$

where $v_o$ is a current value of the velocity when the contact is broken, a is a current value of the acceleration when the contact is broken and $\Delta t$ is an elapsed time, such as one time interval. The velocities and/or acceleration in such a calculation may be projected along an axis or direction of the scrolling or translation. In some embodiments, in subsequent time intervals following the determination of the velocity based on the acceleration and/or the velocity in one or more time intervals prior to the breaking of the contact, the velocity of the scrolling or translation may be tapered. For example, in each successive time interval the velocity may be decreased by 5%. When the velocity crosses a lower threshold, it may be set to zero.

FIG. 5 is a flow diagram illustrating a method 500 of scrolling through a list in accordance with some embodiments. The method 500 provides a simple visual indicator to a user that a terminus of a list has been reached.

Movement of an object is detected on or near a touch screen display of a device (502). In some embodiments, the object is a finger. In some embodiments, the device is a portable multifunction device.

24

In response to detecting the movement, a list of items displayed on the touch screen display is scrolled in a first direction (504). In some embodiments, the list is a list of email messages, as illustrated in FIGS. 6A-6D. In some embodiments, the list of items is a list of instant message conversations, a list of favorite phone numbers, a list of contact information (sometimes called a contact list or address book list), a list of labels, a list of email folders, a list of email addresses, a list of physical addresses, a list of ringtones, a list of album names, or a list of bookmarks. In some embodiments, the first direction is a vertical direction; in some other embodiments, the first direction is a horizontal direction. In some embodiments, scrolling the list in the first direction prior to reaching a terminus of the list has an associated scrolling speed corresponding to a speed of movement of the object (506). In some embodiments, the list is scrolled in accordance with a simulation of an equation of motion having friction (508).

If a terminus of the list is reached (e.g., upon reaching the terminus of the list) while scrolling the list in the first direction while the object is still detected on or near the touch screen display, an area beyond the terminus of the list is displayed (510-Yes, 514). In some embodiments, the list has a first item and a last item and the terminus is either the first item or the last item. For example, in FIG. 6B the email 3534 from Aaron Jones is the first item and thus the terminus of the corresponding list of emails. In some embodiments, the area beyond the terminus of the list is white (516). In some embodiments, the list of items has a background and the area beyond the terminus of the list is visually indistinct from the background (518). For example, in FIG. 6C both the area 3536 and the background of the listed emails are white.

After the object is no longer detected on or near the touch screen display, the list of items is scrolled in a second direction opposite the first direction until the area beyond the terminus of the list is no longer displayed (520). In some embodiments, the list is scrolled in the second direction using a damped motion (522). In some embodiments, the change from scrolling the list in the first direction to scrolling the list in the second direction until the area beyond the terminus of the list is no longer displayed makes the terminus of the list appear to be elastically attached to an edge of the touch screen display or to an edge displayed on the touch screen display (524).

In some embodiments, scrolling in the first direction prior to reaching the terminus of the list has a first associated scrolling distance that corresponds to a distance of movement of the object prior to reaching the terminus of the list. For example, a scrolling distance prior to reaching the terminus of the list shown in FIGS. 6A-6D may correspond to a distance traversed on the touch screen display by the swipe gesture 3514 before the terminus is reached. Displaying an area beyond the terminus of the list includes scrolling the list in the first direction for a second associated scrolling distance that is less than a distance of movement of the object after the terminus is reached. For example, in FIG. 6C, after the terminus is reached the list is scrolled for a distance 3538, which may be less than a distance traversed on the touch screen display by the swipe gesture 3514 after the terminus is reached.

In some embodiments, scrolling in the first direction prior to reaching a terminus of the list has a first associated scrolling speed that corresponds to a speed of movement of the object. For example, a scrolling speed prior to reaching the terminus of the list shown in FIGS. 6A-6D may correspond to a speed on the touch screen display of the swipe gesture 3514 before the terminus is reached. Displaying an area beyond the

US 7,469,381 B2

25

terminus of the list includes scrolling the list in the first direction at a second associated scrolling speed. The second associated scrolling speed is slower than the first associated scrolling speed. For example, in FIG. 6C, displaying the area 3536 beyond the terminus of the list may include scrolling the list at a speed that is slower than the scrolling speed before the terminus is reached. In some embodiments, the second associated speed is a fraction (e.g., one-half or one-third) of the first associated speed. In some embodiments, the second associated speed is the square root of the first associated speed.

If a terminus of the list is not reached while scrolling the list in the first direction while the object is still detected on or near the touch screen display, the process 500 is complete (510-No, 512). The process 500 may be re-initiated upon subsequent detection of another movement of an object on or near the touch screen display (502).

FIGS. 6A-6D illustrate the scrolling of a list of items to a terminus of the list, at which point an area beyond the terminus is displayed and the list is then scrolled in an opposite direction until the area beyond the terminus is no longer displayed, in accordance with some embodiments. While FIGS. 6A-6D illustrate this scrolling in the context of a portable multifunction device 100, this scrolling is not limited to portable multifunction devices. In the example of FIGS. 6A-6D, the listed items are email messages; FIGS. 6A-6D illustrate an exemplary user interface 3500A for managing an inbox in accordance with some embodiments. An analogous user interface may be used to display and manage other mailboxes (e.g., drafts, sent, trash, personal, etc.). In addition, other types of lists are possible, including but not limited to lists of instant message conversations, favorite phone numbers, contact information, labels, email folders, email addresses, physical addresses, ringtones, album names or bookmarks.

In some embodiments, user interface 3500A include the following elements, or a subset or superset thereof:

402, 404, and 406, as described above;

a create email icon 3310 that when activated (e.g., by a finger tap on the icon) initiates display of a UI to create a new email message;

mailboxes icon 3502 that when activated (e.g., by a finger tap on the icon) initiates the display of a UI listing email mailboxes (i.e., folders);

unread messages icon 3504 that displays the number of unread messages in the inbox;

names 3506 of the senders of the email messages;

subject lines 3508 for the email messages;

dates 3510 of the email messages;

unread message icons 3512 that indicate messages that have not been opened;

preview pane separator 3518 that separates the list of messages from a preview of a selected message in the list;

settings icon 3520 that when activated (e.g., by a finger tap on the icon) initiates the display of a UI to modify settings;

move message icon 3522 that when activated (e.g., by a finger tap on the icon) initiates the display of a UI to move messages;

Delete symbol icon 3524 that when activated (e.g., by a finger tap on the icon) initiates display of a UI to confirm that the user wants to delete the selected email;

Reply/Forward icon 3526 that when activated (e.g., by a finger tap on the icon) initiates display of a UI to select how to reply or forward the selected email;

If the list of emails fills more than the allotted screen area, the user may scroll through the emails using vertically

26

upward and/or vertically downward swipe gestures on the touch screen. In the example of FIG. 6A, a portion of a list of emails is displayed in the screen area, including a top displayed email 3530 from Bruce Walker and a bottom displayed email 3532 from Kim Brook. A user performs a vertically downward swipe gesture 3514 to scroll toward the top of the list. The vertically downward gesture 3514, which may be a finger gesture, corresponds to the movement of an object on or near the touch screen that is detected in operation 502 of process 500 (FIG. 5). The vertically downward gesture 3514 need not be exactly vertical; a substantially vertical gesture is sufficient. In some embodiments, a gesture within a predetermined angle of being perfectly vertical results in vertical scrolling. In one embodiment, a gesture within 27 degrees of being perfectly vertical results in vertical scrolling.

As a result of detecting the vertically downward gesture 3514, in FIG. 6B the displayed emails have shifted down, such that the previous bottom displayed email 3532 from Kim Brook is no longer displayed, the previous top displayed email 3530 from Bruce Walker is now second from the top, and the email 3534 from Aaron Jones, which was not displayed in FIG. 6A, is now displayed at the top of the list. This shifting of emails is an example of the scrolling described in operation 504 of process 500 (FIG. 5).

In this example, the email 3534 from Aaron Jones is the first email in the list and thus is the terminus of the list. Upon reaching this email 3534, in response to continued detection of the vertically downward gesture 3514, an area 3536 (FIG. 6C) above the first email 3534 (i.e., beyond the terminus of the list) is displayed, as described in operation 514 of process 500 (FIG. 5). In some embodiments, the area displayed beyond the terminus of the list is visually indistinct from the background of the list, as described in operation 518 of process 500 (FIG. 5). In FIG. 6C, both the area 3536 and the background of the emails (e.g., emails 3534 and 3530) are white and thus are visually indistinct.

Once vertically downward gesture 3514 is complete, such that a corresponding object is no longer detected on or near the touch screen display, the list is scrolled in an opposite direction until the area 3536 is no longer displayed. FIG. 6D illustrates the result of this scrolling in the opposite direction, which corresponds to operation 520 of process 500 (FIG. 5): the email 3534 from Aaron Jones is now displayed at the top of the screen area allotted to the list and the area 3536 is not displayed.

In the example of FIGS. 6A-6D, a vertically downward gesture resulted in display of an area beyond the first item in the list. Similarly, a vertically upward gesture may result in display of an area beyond the last item of the list, if the vertically upward gesture continues once the list has been scrolled to the last item. The last item may be considered a terminus of the list, similar to the first item. As discussed above, the gesture need not be exactly vertical to result in vertical scrolling; a gesture within a predefined range of angles from perfectly vertical is sufficient.

In some embodiments, instead of scrolling a list of items in one dimension, a user may desire to translate an electronic document in two dimensions. If the electronic document fills more than the screen area allotted to display the document, the screen will only display a portion of the document. The user may translate the electronic document to view portions of the document that are not initially displayed.

FIG. 7 is a flow diagram illustrating a method 700 of translating an electronic document in accordance with some embodiments. The method 700 provides a simple visual indicator to a user that one or more edges of an electronic document are being displayed.

US 7,469,381 B2

27

Movement of an object is detected on or near a touch screen display of a device (702). In some embodiments, the object is a finger. In some embodiments, the device is a portable multifunction device.

In response to detecting the movement, an electronic document displayed on the touch screen display is translated in a first direction (704). In some embodiments, the electronic document is a web page, as illustrated in FIGS. 8A-8D. In some embodiments, the electronic document is a digital image. In some embodiments, the electronic document is a word processing, spreadsheet, email, or presentation document. In some embodiments, the first direction is a vertical direction, a horizontal direction, or a diagonal direction. In some embodiments, the first direction corresponds to the direction of movement of the object detected on or near the display but is not necessarily identical to the direction of movement of the object.

In some embodiments, translating the electronic document in the first direction prior to reaching an edge of the electronic document has an associated speed of translation corresponding to a speed of movement of the object (706). In some embodiments, the electronic document is translated in accordance with a simulation of an equation of motion having friction (708).

If an edge of the electronic document is reached (e.g., upon reaching an edge of the document) while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, an area beyond the edge of the electronic document is displayed (710-Yes, 714). In some emhodiments, the area beyond the edge of the electronic document is black, gray, a solid color, or white (716). In some embodiments, the area beyond the edge of the electronic document is visually distinct from the document (718). For example, the area 3930 beyond the edge of the web page 3912 in FIG. 8C is black, in contrast to the white background of the web page 3912. In some other embodiments, a wallpaper image such as a picture or pattern may be displayed in the area beyond the edge of the electronic document.

After the object is no longer detected on or near the touch screen display, the electronic document is translated in a second direction until the area beyond the edge of the electronic document is no longer displayed (720). For example, in FIG. 8D the web page 3912 has been translated such that the area 3930 beyond its edge is no longer displayed. In some embodiments, the second direction is opposite the first direction. In some embodiments, the electronic document is translated in the second direction using a damped motion (722). In some embodiments, the change from translating the electronic document in the first direction to translating the electronic document in the second direction until the area beyond the edge of the electronic document is no longer displayed makes the edge of the electronic document appear to be elastically attached to an edge of the touch screen display or to an edge displayed on the touch screen display (724).

In some embodiments, translating in the first direction prior to reaching an edge of the electronic document has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document. For example, a distance of translation of the web page 3912 shown in FIGS. 8A-8D prior to reaching the edge of the document may correspond to a distance traversed on the touch screen display by the swipe gesture 3925 before the edge is reached. In some embodiments, displaying an area beyond the edge of the electronic document includes translating the electronic document in the first direction for a second associated translating distance, wherein the second

28

associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document. For example, in FIG. 8C, after the edge is reached the web page 3912 is translated by a distance indicated by opposing arrows 3928-1 and 3928-2, which may be less than a distance traversed on the touch screen display by the swipe gesture 3925 after the terminus is reached.

In some embodiments, translating in the first direction prior to reaching an edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object. For example, a speed of translation prior to reaching the edge of the web page 3912 shown in FIGS. 8A-8D may correspond to a speed of movement of the swipe gesture 3925. Displaying an area beyond the edge of the electronic document includes translating the electronic document in the first direction at a second associated translating speed. The second associated translating speed is slower than the first associated translating speed. For example, in FIG. 8C, displaying the area 3930 beyond the edge of the web page 3912 may include translating the web page 3912 at a speed that is slower than the speed of translation before the edge is reached. In some embodiments, the second associated speed is a fraction (e.g., one-half or one-third) of the first associated speed. In some embodiments, the second associated speed is the square root of the first associated speed.

If an edge of the electronic document is not reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, the process 700 is complete (710-No, 712). The process 700 may be re-initiated upon subsequent detection of another movement of an object on or near the touch screen display (702).

FIGS. 8A-8D illustrate the translation of an electronic document to an edge of the document, at which point an area beyond the edge is displayed and the document is then translated in a second direction until the area beyond the edge of the document is no longer displayed, in accordance with some embodiments. While FIGS. 8A-8D illustrate this translation in the context of a portable multifunction device 100, this translation is not limited to portable multifunction devices. In the example of FIGS. 8A-8D, the document is a web page 3912; FIGS. 8A-8D illustrate an exemplary user interface for a browser in accordance with some embodiments. An analogous user interface may be used to display other types of electronic documents, such as word processing, spreadsheet, email, presentation documents, or digital images.

In some embodiments, user interface 3900A of FIGS. 8A-8D includes the following elements, or a subset or superset thereof:

- 402, 404, and 406, as described above;
- Previous page icon 3902 that when activated (e.g., by a finger tap on the icon) initiates display of the previous web page;
- Web page name 3904;
- Next page icon 3906 that when activated (e.g., by a finger tap on the icon) initiates display of the next web page;
- URL (Uniform Resource Locator) entry box 3908 for inputting URLs of web pages;
- Refresh icon 3910 that when activated (e.g., by a finger tap on the icon) initiates a refresh of the web page;
- Web page 3912 or other structured document, which is made of blocks 3914 of text content and other graphics (e.g., images);
- Settings icon 3916 that when activated (e.g., by a finger tap on the icon) initiates display of a settings menu for the browser;

US 7,469,381 B2

29

Bookmarks icon **3918** that when activated (e.g., by a finger tap on the icon) initiates display of a bookmarks list or menu for the browser;

Add bookmark icon **3920** that when activated (e.g., by a finger tap on the icon) initiates display of a UI for adding bookmarks; and

New window icon **3922** that when activated (e.g., by a finger tap on the icon) initiates display of a UI for adding new windows to the browser.

In some embodiments, the device analyzes the render tree of the web page **3912** to determine the blocks **3914** in the web page. In some embodiments, a block **3914** corresponds to a render node that is: replaced; a block; an inline block; or an inline table.

In FIG. **8**A, the web page fills more than the allotted screen area: only the left sides of block **7** (**3914-7**) and block **8** (**3914-8**) are displayed and only the top left corner of block **9** (**3914-9**) is displayed. To view the partially displayed blocks, a user may translate the displayed document by gesturing on the touch screen in accordance with some embodiments.

In some embodiments, in response to a substantially vertical upward (or downward) swipe gesture by the user, the web page (or, more generally, other electronic documents) may translate one-dimensionally upward (or downward) in the vertical direction. In some embodiments, a gesture is considered substantially vertical if it is within a predetermined angle of being perfectly vertical. For example, in response to an upward swipe gesture by the user that is within a predetermined angle (e.g., 27°) of being perfectly vertical, the web page may scroll one-dimensionally upward in the vertical direction.

Conversely, in some embodiments, in response to a gesture that is not within a predetermined angle (e.g., 27°) of being perfectly vertical, the web page may translate two-dimensionally (i.e., with simultaneous movement in both the vertical and horizontal directions). For example, in response to an upward swipe gesture by the user that is not within a predetermined angle (e.g., 27°) of being perfectly vertical, the web page may translate two-dimensionally along the direction of the swipe.

In the example of FIG. **8**A, an upward swipe gesture **3925** is not within a predetermined angle of being perfectly vertical. Therefore, as a result of detecting the upward swipe gesture **3925**, the web page is translated in two dimensions. In this example, the translation is approximately diagonal. FIG. **8**B illustrates the result of this translation: blocks **8** (**3914-8**) and **9** (**3914-9**) are now fully displayed; blocks **1** (**3914-1**) and **2** (**3914-2**) are now only partially displayed, and block **3** (**3914-3**) is no longer displayed at all. This translation is an example of the translation described in operation **704** of process **700** (FIG. **7**).

In FIG. **8**B, block **9** (**3914-9**) is in the lower right-hand corner of the web page **3912**; both the bottom and right edges of the web page have been reached while translating the web page. Upon reaching these edges of the document, in response to continued detection of the upward gesture **3925**, an area **3930** (FIG. **8**C) beyond the bottom and right edges of the web page is displayed. In some embodiments, the area displayed beyond the edge(s) of an electronic document is visually distinct from the document, as described in operation **718** of process **700** (FIG. **7**). In FIG. **8**C, the area **3930** is black and thus is visually distinct from the white background of the web page **3912**.

Once the upward gesture **3925** is complete, such that a corresponding object is no longer detected on or near the touch screen display, the web page **3912** is translated (e.g., in a direction opposite to the original direction of translation)

30

until the area **3930** is no longer displayed. FIG. **8**D illustrates the result of this translation, which corresponds to operation **720** of process **700** (FIG. **7**): block **9** (**3914-9**) is now displayed in the lower right-hand corner of the portion of the screen allotted to display the web page **3912** and the area **3930** not displayed. In some embodiments, the direction of translation is not necessarily opposite to the original direction but may be in any direction such that, upon completion of the translation, the area beyond the edge(s) of the electronic document is no longer displayed.

FIG. **9** is a flow diagram illustrating a process **900** of displaying an electronic document having a document length and a document width, in accordance with some embodiments. The process **900** provides a simple visual indicator to a user that an electronic document is being displayed at a minimum magnification (e.g., the electronic document cannot be zoomed out and/or demagnified further).

The process **900** is performed at a device with a touch screen display. In some embodiments, the device is a portable multifunction device. In some embodiments, the electronic document is a web page (e.g., web page **3912**, FIGS. **10**A-**10**C). In some embodiments, the electronic document is a digital image. In some embodiments, the electronic document is a word processing, spreadsheet, email or presentation document.

The electronic document is displayed (**902**) at a first magnification on the touch screen display. A gesture is detected (**904**) on or near the touch screen display corresponding to a command to zoom out by a user-specified amount. In some embodiments, the gesture is a pinching gesture (e.g., gesture **3951/3953**, FIG. **10**A).

In response to detecting the gesture, the electronic document is displayed (**906**) at a magnification less than the first magnification. For example, the web page **3912** is shown at a lesser magnification in FIG. **10**B than in FIG. **10**A.

If the document length or document width is not entirely displayed (**908**-No) while the gesture is still detected on or near the touch screen display, the process **900** is complete (**910**).

If, however, the document length (e.g., **3957**, FIG. **10**B) or document width (e.g., **3959**, FIG. **10**B) is entirely displayed (**908**-Yes) while the gesture (e.g., **3951/3953**) is still detected on or near the touch screen display, the electronic document is displayed (**912**) at a magnification wherein areas beyond opposite edges of the electronic document (e.g., areas **3955**, FIG. **10**B) are displayed.

In some embodiments, the areas beyond opposite edges of the electronic document include an area beyond a top edge of the document and an area beyond a bottom edge of the document. In some embodiments, the areas beyond opposite edges of the electronic document include an area beyond a right edge of the document and an area beyond a left edge of the document. In some embodiments, the areas beyond opposite edges of the electronic document include an area beyond a top edge of the document, an area beyond a bottom edge of the document, an area beyond a right edge of the document, and an area beyond a left edge of the document (e.g., FIG. **10**B).

In some embodiments, the areas beyond opposite edges of the electronic document are black, gray, a solid color, or white. In some embodiments, the areas beyond opposite edges of the electronic document are visually distinct from the document. For example, the areas **3955** (FIG. **10**B) are black and thus are visually distinct from the web page **3912**.

Upon detecting termination of the gesture, the electronic document is displayed (**914**) at a magnification wherein the

US 7,469,381 B2

31                                                          32

areas beyond opposite edges of the electronic document are no longer displayed. For example, the areas **3955** are not displayed in FIG. **10**C.

FIGS. **10**A-**10**C illustrate the display of an electronic document at multiple magnifications in accordance with some embodiments. While FIGS. **10**A-**10**C illustrate displaying these multiple magnifications in the context of a portable multifunction device **100**, displaying these multiple magnifications is not limited to portable multifunction devices. In the example of FIGS. **10**A-**10**C, the document is a web page **3912**; FIGS. **10**A-**10**C (like FIGS. **8**A-**8**D) illustrate an exemplary user interface for a browser in accordance with some embodiments. An analogous user interface may be used to display other types of electronic documents, such as digital images or word processing, spreadsheet, email, or presentation documents.

In FIG. **10**A, the web page **3912** is displayed at a first magnification. The web page **3912** fills more than the allotted screen area: only the left sides of block **7** (**3914**-**7**) and block **8** (**3914**-**8**) are displayed and only the top left corner of block **9** (**3914**-**9**) is displayed.

In response to detecting a pinching gesture **3951**/**3953** (FIG. **10**A), the web-page is displayed at a magnification less than the first magnification, as shown in FIG. **10**B. If a document length **3957** or a document width **3959** is entirely displayed while the gesture **3951**/**3953** is still detected, areas **3955** beyond opposite edges of the web page **3912** are displayed. Upon detecting termination of the gesture **3951**/**3953**, the web page **3912** is displayed at a magnification wherein the areas **3955** are no longer displayed, as shown in FIG. **10**C.

FIG. **11** is a flow diagram illustrating a process **1100** of displaying an electronic document at multiple magnifications in accordance with some embodiments. The process **1100** provides a simple visual indicator to a user that an electronic document is being displayed at a maximum magnification (e.g., the electronic document cannot be zoomed in and/or magnified further).

The process **1100** is performed at a device with a touch screen display. In some embodiments, the device is a portable multifunction device. In some embodiments, the electronic document is a web page (e.g., web page **3912**, FIGS. **12**A-**12**C). In some embodiments, the electronic document is a digital image (e.g., digital image **1302**, FIGS. **13**A-**13**C). In some embodiments, the electronic document is a word processing, spreadsheet, email or presentation document.

At least a first portion of the electronic document is displayed (**1102**) at a first magnification. A gesture is detected (**1104**) on or near the touch screen display corresponding to a command to zoom in by a user-specified amount. In some embodiments, the gesture is a de-pinching gesture (e.g., **3931**/**3933**, FIGS. **12**A and **13**A).

In response to detecting the gesture, decreasing portions of the electronic document are displayed (**1106**) at increasing magnifications. For example, in FIG. **12**B a decreased portion of the web page **3912** is displayed at a higher magnification than the portion in FIG. **12**A, and in FIG. **13**B a decreased portion of the digital image **1302** is displayed at a higher magnification than the portion in FIG. **13**A.

If, upon detecting termination of the gesture, the magnification does not exceed a predefined magnification (**1108**-No), the process **1100** is complete (**1110**).

If, however, upon detecting termination of the gesture, the magnification exceeds a predefined magnification (**1108**-Yes), a respective portion of the electronic document is displayed (**1112**) at the predefined magnification. In the examples of FIGS. **12**B and **13**B, the magnification exceeds a predefined magnification. Upon detecting termination of the

gesture **3931**/**3933**, a portion of the web page **3912** is displayed at the predefined magnification, as illustrated in FIG. **12**C, and a portion of the digital image **1302** is displayed at the predefined magnification, as illustrated in FIG. **13**C.

In some embodiments, immediately prior to detecting termination of the gesture, a last decreased portion of the electronic document is displayed at a first resolution. Upon detecting termination of the gesture, the respective portion of the electronic document is displayed at a second resolution that is greater than the first resolution.

FIGS. **12**A-**12**C illustrate the display of an electronic document at multiple magnifications in accordance with some embodiments. While FIGS. **12**A-**12**C illustrate displaying these multiple magnifications in the context of a portable multifunction device **100**, displaying these multiple magnifications is not limited to portable multifunction devices. In the example of FIGS. **12**A-**12**C, the document is a web page **3912**; FIGS. **12**A-**12**C (like FIGS. **8**A-**8**D) illustrate an exemplary user interface for a browser in accordance with some embodiments. An analogous user interface may be used to display other types of electronic documents, such as digital images or word processing, spreadsheet, email, or presentation documents.

In FIG. **12**A, a first portion of the web page **3912** is displayed at a first magnification. The web page **3912** fills more than the allotted screen area: only the left sides of block **7** (**3914**-**7**) and block **8** (**3914**-**8**) are displayed and only the top left corner of block **9** (**3914**-**9**) is displayed.

In response to detecting a de-pinching gesture **3931**/**3933** (FIG. **12**A), decreasing portions of the web-page **3912** are displayed at increasing magnifications compared to the magnification shown in FIG. **12**A. For example, the portion of the web page **3912** shown in FIG. **12**B is smaller than and has a higher magnification than the portion of the web page **3912** shown in FIG. **12**A.

In the example of FIG. **12**B, the magnification exceeds a predefined magnification. Upon detecting termination of the gesture **3931**/**3933**, a portion of the web page **3912** is displayed at the predefined magnification, as illustrated in FIG. **12**C.

FIGS. **13**A-**13**C illustrate the display of an electronic document at multiple magnifications in accordance with some embodiments. While FIGS. **13**A-**13**C illustrate displaying these multiple magnifications in the context of a portable multifunction device **100**, displaying these multiple magnifications is not limited to portable multifunction devices. In the example of FIGS. **13**A-**13**C, the document is a digital image **1302** that includes an image of a person **1304**.

In FIG. **13**A, a digital image **1302** is displayed at a first magnification. In response to detecting a de-pinching gesture **3931**/**3933**, decreasing portions of the digital image **1302** are displayed at increasing magnifications compared to the magnification shown in FIG. **13**A. For example, the portion of the digital image **1302** shown in FIG. **13**B is smaller than and has a higher magnification than the portion of the digital image **1302** shown in FIG. **13**A.

In the example of FIG. **13**B, the magnification exceeds a predefined magnification. Upon detecting termination of the gesture **3931**/**3933**, a portion of the digital image **1302** is displayed at the predefined magnification, as illustrated in FIG. **13**C.

FIG. **14** is a flow diagram illustrating a process **1400** of executing a screen rotation command in accordance with some embodiments. The process **1400** provides a simple visual indicator to a user that the user has not provided a sufficient gesture to initiate a 90° screen rotation command.

US 7,469,381 B2

33
34

The process **1400** is performed at a device with a touch screen display. In some embodiments, the device is a portable multifunction device.

A multifinger twisting gesture (e.g., **1506**, FIG. **15**A, or **1508**, FIG. **15**C) is detected (**1402**) on or near the touch screen display. The multifinger twisting gesture has a corresponding degree of rotation. In some embodiments, the multifinger twisting gesture includes gestures by two thumbs **1604**-L and **1604**-R (FIGS. **16**A and **16**D)

If the corresponding degree of rotation exceeds a predefined degree of rotation (**1404**-Yes), a 90° screen rotation command is executed (**1406**). For example, the digital image **1502** of FIGS. **15**A and **16**A is rotated from a portrait orientation to a landscape orientation, as shown respectively in FIGS. **15**B and **16**B.

If the corresponding degree of rotation does not exceed a predefined degree of rotation (**1404**-No), a screen rotation command with an acute angle of rotation (i.e., less than 90°) is executed (**1408**). For example, the digital image **1502** of FIGS. **15**C and **16**D is rotated by an acute angle, as shown respectively in FIGS. **15**D and **16**E. Upon ceasing to detect the multifinger twisting gesture, a screen rotation command is executed (**1410**) with an angle of rotation opposite to the acute angle (e.g., with the result shown in FIGS. **15**E and **16**F).

FIGS. **15**A-**15**E illustrate rotating the display of an electronic document or other digital object in accordance with some embodiments. While FIGS. **15**A-**15**E illustrate display rotation in the context of a portable multifunction device **100**, display rotation is not limited to portable multifunction devices. In the example of FIGS. **15**A-**15**E, the electronic document is a digital image **1502**.

In FIGS. **15**A and **15**C, the digital image **1502** is displayed in a portrait orientation. A multifinger twisting gesture **1506** (FIG. **15**A) or **1508** (FIG. **15**C) is detected on the touch screen display. The multifinger twisting gesture **1506** or **1508** has a corresponding degree of rotation. In some embodiments, the degree of rotation corresponds to a degree of rotation of an axis between the contact points on the touch screen display of the two fingers in the multifinger gesture (e.g., an axis between the center points or centroids of the contact regions of the two fingers).

In the example of FIG. **15**A, the multifinger twisting gesture **1506** has a corresponding degree of rotation that exceeds a predefined degree of rotation. Thus, a 90° screen rotation command is executed, with the result that the digital image is displayed in a landscape orientation, as shown in FIG. **15**B. In the example of FIG. **15**C, however, the multifinger twisting gesture **1508** has a corresponding degree of rotation that does not exceed a predefined degree of rotation. A screen rotation command with an acute angle of rotation is executed, with the result shown in FIG. **15**D. Upon ceasing to detect the multifinger twisting gesture **1508**, a screen rotation command with an angle opposite to the acute angle is executed, with the result that the portrait orientation of the digital image **1502** is restored, as shown in FIG. **15**E.

FIGS. **16**A-**16**F illustrate an exemplary screen rotation gesture in accordance with some embodiments. While FIGS. **16**A-**16**F illustrate this screen rotation gesture in the context of a portable multifunction device **100**, this screen rotation gesture is not limited to portable multifunction devices. In the example of FIGS. **16**A-**16**F, this screen rotation gesture is used to rotate the digital image **1502**.

In FIG. **16**A, the device **100** displays the digital image **1502** in a portrait orientation. Simultaneous rotation of two thumbs (e.g., **1604**-L and **1604**-R) in a first sense of rotation is detected on the touch screen display **112**. In some embodi-

ments, the first sense of rotation is a clockwise rotation (e.g., FIG. **16**C). The simultaneous rotation of the two thumbs has a corresponding degree of rotation.

In some embodiments, the sense of rotation for each thumb is detected by monitoring the change in orientation of the contact area of the thumb with the touch screen display. For example, if the contact area of the thumb is elliptical, the change in the orientation of an axis of the ellipse may be detected (e.g., from contact ellipse **1606**-L in FIG. **16**A to contact ellipse **1608**-L in FIG. **16**B, as shown on an enlarged portion of touch screen **112** in FIG. **16**C). In some embodiments, the change in the orientation of the axis of the ellipse determines the corresponding degree of rotation. In some embodiments, at least some of a user's other fingers (i.e., fingers other than thumbs **1604**-L and **1604**-R) support the device **100** by contacting the backside of the device.

In some embodiments, the first sense of rotation is a counterclockwise rotation. For example, if thumb **1604**-L is initially on the lower left side of touch screen **112** (rather than the upper left side in FIG. **16**A), thumb **1604**-R is initially on the upper right side of touch screen **112** (rather than the lower right side in FIG. **16**A), and the thumbs are moved apart from each other, then the sense of rotation detected by the touch screen **112** will be counterclockwise for both thumbs.

If the corresponding degree of rotation exceeds a predefined degree of rotation, a 90° screen rotation command is executed. For example, display of the digital image **1502** is rotated from the portrait orientation of FIG. **16**A to a landscape orientation in FIG. **16**B.

If, however, the corresponding degree of rotation does not exceed a predefined degree of rotation, a screen rotation command with an acute angle of rotation is executed. For example, the digital image **1502** in FIG. **16**D is rotated by an acute angle, with the result shown in FIG. **16**E. Once detection of the two thumbs **1604**-L and **1604**-R ceases, a screen rotation command with an angle of rotation opposite to the acute angle is executed, thereby restoring the digital image **1502** to a portrait orientation, as shown in FIG. **16**F.

While FIGS. **6**A-**6**D, **8**A-**8**D, **10**A-**10**C, **12**A-**12**C, **13**A-**13**C, **15**A-**15**E, and **16**A-**16**F illustrate scrolling, translation, scaling, and rotation operations in the context of a portable multifunction device **100**, similar operations may be performed on any device with a touch-screen display, in accordance with some embodiments. The device, such as device **1700** below, may or may not be portable and the function or functions performed by the device may vary.

FIG. **17** is a block diagram illustrating a device **1700** with a touch-screen display in accordance with some embodiments. Device **1700** need not be portable. The device **1700** typically includes one or more processing units (CPU's) **1710**, one or more network or other communications interfaces **1760**, memory **1770**, and one or more communication buses **1720** for interconnecting these components. The communication buses **1720** may include circuitry (sometimes called a chipset) that interconnects and controls communications between system components. The device **1700** includes a user interface **1730** comprising a touch-screen display **1740**. The user interface **1730** also may include a keyboard and/or mouse (or other pointing device) **1750**. Memory **1770** includes high-speed random access memory, such as DRAM, SRAM, DDR RAM or other random access solid state memory devices; and may include non-volatile memory, such as one or more magnetic disk storage devices, optical disk storage devices, flash memory devices, or other non-volatile solid state storage devices. Memory **1770** may optionally include one or more storage devices remotely located from the CPU(s) **1710**. In some embodiments, memory **1770** stores

35                                               36

programs, modules, and data structures analogous to the programs, modules, and data structures stored in the memory **102** of portable multifunction device **100** (FIG. **1**), or a subset thereof. Furthermore, memory **1770** may store additional programs, modules, and data structures (not shown) not present in the memory **102** of portable multifunction device **100**.

Each of the above identified elements in FIG. **17** may be stored in one or more of the previously mentioned memory devices. Each of the above identified modules corresponds to a set of instructions for performing a function described above. The above identified modules or programs (i.e., sets of instructions) need not be implemented as separate software programs, procedures or modules, and thus various subsets of these modules may be combined or otherwise re-arranged in various embodiments. In some embodiments, memory **1770** may store a subset of the modules and data structures identified above. Furthermore, memory **1770** may store additional modules and data structures not described above.

The foregoing description, for purpose of explanation, has been described with reference to specific embodiments. However, the illustrative discussions above are not intended to be exhaustive or to limit the invention to the precise forms disclosed. Many modifications and variations are possible in view of the above teachings. The embodiments were chosen and described in order to best explain the principles of the invention and its practical applications, to thereby enable others skilled in the art to best utilize the invention and various embodiments with various modifications as are suited to the particular use contemplated.

What is claimed is:

1. A computer-implemented method, comprising:
at a device with a touch screen display:
  displaying a first portion of an electronic document;
  detecting a movement of an object on or near the touch screen display;
  in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion;
  in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display:
    displaying an area beyond the edge of the document, and
    displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion; and
  in response to detecting that the object is no longer on or near the touch screen display, translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion.

2. The computer-implemented method of claim **1**, wherein the first portion of the electronic document, the second portion of the electronic document, the third portion of the electronic document, and the fourth portion of the electronic document are displayed at the same magnification.

3. The computer-implemented method of claim **1**, wherein the movement of the object is on the touch screen display.

4. The computer-implemented method of claim **1**, wherein the object is a finger.

5. The computer-implemented method of claim **1**, wherein the first direction is a vertical direction, a horizontal direction, or a diagonal direction.

6. The computer-implemented method of claim **1**, wherein the electronic document is a web page.

7. The computer-implemented method of claim **1**, wherein the electronic document is a digital image.

8. The computer-implemented method of claim **1**, wherein the electronic document is a word processing, spreadsheet, email or presentation document.

9. The computer-implemented method of claim **1**, wherein the electronic document includes a list of items.

10. The computer-implemented method of claim **1**, wherein the second direction is opposite the first direction.

11. The computer-implemented method of claim **1**, wherein translating in the first direction prior to reaching an edge of the document has an associated speed of translation that corresponds to a speed of movement of the object.

12. The computer-implemented method of claim **1**, wherein translating in the first direction is in accordance with a simulation of an equation of motion having friction.

13. The computer-implemented method of claim **1**, wherein the area beyond the edge of the document is black, gray, a solid color, or white.

14. The computer-implemented method of claim **1**, wherein the area beyond the edge of the document is visually distinct from the document.

15. The computer-implemented method of claim **1**, wherein translating the document in the second direction is a damped motion.

16. The computer-implemented method of claim **1**, wherein changing from translating in the first direction to translating in the second direction until the area beyond the edge of the document is no longer displayed makes the edge of the electronic document appear to be elastically attached to an edge of the touch screen display or to an edge displayed on the touch screen display.

17. The computer-implemented method of claim **1**, wherein translating in the first direction prior to reaching the edge of the electronic document has a first associated translating distance that corresponds to a distance of movement of the object prior to reaching the edge of the electronic document; and wherein displaying an area beyond the edge of the electronic document comprises translating the electronic document in the first direction for a second associated translating distance, wherein the second associated translating distance is less than a distance of movement of the object after reaching the edge of the electronic document.

18. The computer-implemented method of claim **1**, wherein translating in the first direction prior to reaching the edge of the electronic document has a first associated translating speed that corresponds to a speed of movement of the object, and wherein displaying an area beyond the edge of the electronic document comprises translating the electronic document in the first direction at a second associated translating speed, wherein the second associated translating speed is slower than the first associated translating speed.

19. A device, comprising:
a touch screen display;
one or more processors;
memory; and
one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the programs including:
  instructions for displaying a first portion of an electronic document;

US 7,469,381 B2

37

instructions for detecting a movement of an object on or near the touch screen display;

instructions for translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement;

instructions for displaying an area beyond an edge of the electronic document and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion, in response to the edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and

instructions for translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display.

**20**. A computer readable storage medium having stored therein instructions, which when executed by a device with a touch screen display, cause the device to:

38

display a first portion of an electronic document;

detect a movement of an object on or near the touch screen display;

translate the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement

display an area beyond an edge of the electronic document and display a third portion of the electronic document, wherein the third portion is smaller than the first portion, if the edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and

translate the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.            : 7,469,381 B2                                    Page 1 of  1
APPLICATION NO.  : 11/956969
DATED                    : December 23, 2008
INVENTOR(S)          : Ording

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 38, line 8, please insert -- ; -- after movement.

Signed and Sealed this

Seventeenth Day of February, 2009

*John Doll*

JOHN DOLL
*Acting Director of the United States Patent and Trademark Office*

US007469381C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (8187th)

# United States Patent
Ording

(10) **Number:**　　US 7,469,381 C1
(45) **Certificate Issued:**　　Apr. 26, 2011

(54) **LIST SCROLLING AND DOCUMENT TRANSLATION, SCALING, AND ROTATION ON A TOUCH-SCREEN DISPLAY**

(75) Inventor: **Bas Ording**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

**Reexamination Request:**
No. 90/010,963, Apr. 28, 2010

**Reexamination Certificate for:**
Patent No.: **7,469,381**
Issued: **Dec. 23, 2008**
Appl. No.: **11/956,969**
Filed: **Dec. 14, 2007**

Certificate of Correction issued Feb. 17, 2009.

**Related U.S. Application Data**

(60) Provisional application No. 60/879,253, filed on Jan. 7, 2007, provisional application No. 60/883,801, filed on Jan. 7, 2007, provisional application No. 60/879,469, filed on Jan. 8, 2007, provisional application No. 60/945,858, filed on Jun. 22, 2007, provisional application No. 60/946,971, filed on Jun. 28, 2007, and provisional application No. 60/937,993, filed on Jun. 29, 2007.

(51) **Int. Cl.**
*G06F 3/01* (2006.01)
*G06F 3/048* (2006.01)
*G06F 3/033* (2006.01)
*G06F 3/14* (2006.01)

(52) **U.S. Cl.** ........................ **715/702**; 715/764; 715/769; 715/863; 715/864

(58) **Field of Classification Search** .................. 715/702
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,463,725 | A | 10/1995 | Henckel et al. | ............. 395/155 |
| 6,690,387 | B2 | 2/2004 | Zimmerman et al. | |
| 2005/0195154 | A1 | 9/2005 | Robbins et al. | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 2007283771 A1 | 4/2008 |
| CN | 1695105 A | 11/2005 |
| JP | 02140822 | 5/1990 |
| JP | 03271976 | 12/1991 |

OTHER PUBLICATIONS

Forlines et al., Glimpse: A Novel Input Model for Multi-Level Devices, Apr. 2005, 6 pages total, Mitsubishi Electric Research Laboratories, Cambridge, MA (Exhibit B).
Millhollon et al., Microsoft Office Word 2003 Inside Out, 2003, Microsoft Press, Redmond, Washington, pp. 93, 762–765. (Exhibit C).

*Primary Examiner*—Rachna S Desai

(57) **ABSTRACT**

In accordance with some embodiments, a computer-implemented method for use in conjunction with a device with a touch screen display is disclosed. In the method, a movement of an object on or near the touch screen display is detected. In response to detecting the movement, an electronic document displayed on the touch screen display is translated in a first direction. If an edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, an area beyond the edge of the document is displayed. After the object is no longer detected on or near the touch screen display, the document is translated in a second direction until the area beyond the edge of the document is no longer displayed.



US 7,469,381 C1

1

**EX PARTE
REEXAMINATION CERTIFICATE
ISSUED UNDER 35 U.S.C. 307**

NO AMENDMENTS HAVE BEEN MADE TO
THE PATENT

2

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

The patentability of claims **1-20** is confirmed.

\* \* \* \* \*



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 4807**

| SERIAL NUMBER 90/012,304 | FILING OR 371(c) DATE 05/23/2012 RULE | CLASS 715 | GROUP ART UNIT 3992 | ATTORNEY DOCKET NO. 0331834.381 |
|---|---|---|---|---|

**APPLICANTS**

7,469,381, Residence Not Provided;
APPLE INC. (OWNER), CUPERTINO, CA;
JOSEPH J. RICHETTI (3RD PTY. REQ.), NEW YORK, NY;
BRYAN CAVE LLP, NEW YORK, NY

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

This application is a REX of 11/956,969 12/14/2007 PAT 7469381
which claims benefit of 60/879,253 01/07/2007
and claims benefit of 60/883,801 01/07/2007
and claims benefit of 60/879,469 01/08/2007
and claims benefit of 60/945,858 06/22/2007
and claims benefit of 60/946,971 06/28/2007
and claims benefit of 60/937,993 06/29/2007

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| Foreign Priority claimed ☐ yes ☐ no | STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS 20 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged     Examiner's Signature     Initials | | | | |

**ADDRESS**
61725

**TITLE**
LIST SCROLLING AND DOCUMENT TRANSLATION, SCALING, AND ROTATION ON A TOUCH-SCREEN DISPLAY

| FILING FEE RECEIVED 2520 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |