# Exhibit B

## Redacted Version

688

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4    -------------------------------------:

5    APPLE INC., a California corporation,:

6                   Plaintiff,          :

7        v.                             :

8    SAMSUNG ELECTRONICS CO., LTD., a    :Civil Action No.

9    Korean business entity, SAMSUNG     :11-CV-01846-LHK

10   ELECTRONICS AMERICA, INC., a New    :

11   York corporation, and SAMSUNG       :

12   TELECOMMUNICATIONS AMERICA, LLC, a  :

13   Delaware limited liability company, :

14                   Defendants.         :

15   -------------------------------------:

16   (Caption continued on next page.)

17       HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

18                     VOLUME 4

19      Videotaped Deposition of MICHAEL J. WAGNER

20               Palo Alto, California

21             Tuesday, August 20, 2013

22                    8:04 a.m.

23   Job No.: 42222

24   Pages: 688 – 963

25   Reported by:  Anne Torreano, CCSR, RPR, CCRR

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

695

| | | |
|---|---|---|
| 1 | Emanuel. | 08:05:23 |
| 2 | THE VIDEOGRAPHER:  The court reporter today | 08:05:23 |
| 3 | is Anne Torreano, representing Planet Depos. | 08:05:24 |
| 4 | Would the reporter please swear in the | 08:05:28 |
| 5 | witness? | 08:05:30 |
| 6 | MICHAEL J. WAGNER, | 08:05:30 |
| 7 | having been duly sworn to tell the truth, | 08:05:30 |
| 8 | testified as follows: | 08:05:30 |
| 9 | EXAMINATION | 08:05:36 |
| 10 | BY MR. QUARLES: | 08:05:36 |
| 11 | Q.  Good morning, Mr. Wagner. | 08:05:36 |
| 12 | A.  Good morning, Mr. Quarles. | 08:05:38 |
| 13 | Q.  And congratulations on becoming a grandfather | 08:05:39 |
| 14 | again. | 08:05:42 |
| 15 | A.  Thank you. | 08:05:42 |
| 16 | Q.  You have provided deposition testimony in | 08:05:43 |
| 17 | this case three times; correct? | 08:05:46 |
| 18 | A.  I have. | 08:05:47 |
| 19 | Q.  Is there any testimony in any of those | 08:05:48 |
| 20 | depositions that you would like to correct or amend? | 08:05:51 |
| 21 | A.  Maybe there's one thing that I would. | 08:05:53 |
| 22 | Q.  What would that be? | 08:05:58 |
| 23 | A.  Mr. Olson, in one of my depositions, and I | 08:05:59 |
| 24 | can't remember if it's the second or third, I think it | 08:06:05 |
| 25 | was the third, went over what appeared to be some | 08:06:07 |

797

| | | |
|---|---|---|
| 1 | response.  Can you tell me the paragraphs again? | 10:48:12 |
| 2 | Q.  39 to 41. | 10:48:14 |
| 3 | A.  Yes. | 10:48:30 |
| 4 | Q.  You discuss a supposed alternative to the | 10:48:30 |
| 5 | '915 patent supposedly made available due to | 10:48:35 |
| 6 | statements Apple made during the reexamination of the | 10:48:41 |
| 7 | '915 patent; correct? | 10:48:43 |
| 8 | A.  Yes. | 10:48:45 |
| 9 | Q.  You did not offer -- that alternative is | 10:48:48 |
| 10 | where three or more fingers are interpreted as a | 10:48:57 |
| 11 | scrolling command? | 10:48:58 |
| 12 | A.  Yes. | 10:48:58 |
| 13 | Q.  You did not offer any opinions about this in | 10:48:58 |
| 14 | your prior reports; correct? | 10:49:00 |
| 15 | A.  No, because at the date of my prior reports | 10:49:01 |
| 16 | this information didn't exist. | 10:49:04 |
| 17 | Q.  And the information that you're talking about | 10:49:05 |
| 18 | is the -- is the statement in the reexamination? | 10:49:16 |
| 19 | A.  Yes. | 10:49:21 |
| 20 | Q.  Now, you're not technically qualified to | 10:49:22 |
| 21 | express a view as to how someone would design-around | 10:49:28 |
| 22 | using three-fingered scrolling; correct? | 10:49:31 |
| 23 | A.  I agree with that. | 10:49:32 |
| 24 | Q.  You would have to take the word of someone | 10:49:34 |
| 25 | else on the technical aspects of the design-around; | 10:49:37 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

798

| | | |
|---|---|---|
| 1 | correct? | 10:49:40 |
| 2 | A.  Yes. | 10:49:40 |
| 3 | Q.  And so far as you know, no one has provided | 10:49:40 |
| 4 | an additional expert report on the three-fingered | 10:49:42 |
| 5 | scrolling design-around; correct? | 10:49:45 |
| 6 | MS. MAROULIS:  Objection.  Calls for | 10:49:47 |
| 7 | speculation. | 10:49:48 |
| 8 | THE WITNESS:  Yeah, I don't know one way or | 10:49:48 |
| 9 | the other, but if they have, it hasn't been given to | 10:49:51 |
| 10 | me. | 10:49:53 |
| 11 | BY MR. QUARLES: | 10:49:54 |
| 12 | Q.  So you haven't seen one? | 10:49:54 |
| 13 | A.  No. | 10:49:55 |
| 14 | Q.  And you're not technically qualified to | 10:49:56 |
| 15 | determine what would be a noninfringing three-fingered | 10:50:10 |
| 16 | scrolling operation; correct? | 10:50:17 |
| 17 | A.  That is correct. | 10:50:20 |
| 18 | Q.  In paragraph 488 of your report you discuss a | 10:50:21 |
| 19 | design-around  for the '915 patent where the software | 10:50:39 |
| 20 | skips the initial check for one versus two or more | 10:50:44 |
| 21 | inputs.  Do you see that? | 10:50:47 |
| 22 | A.  I do.  That -- that was based on discussion | 10:50:48 |
| 23 | before the first trial. | 10:50:52 |
| 24 | Q.  I'm not sure I understand. | 10:50:54 |
| 25 | The design-around that you're discussing | 10:51:01 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

799

| | | |
|---|---|---|
| 1 | there was based upon a discussion that was -- that you | 10:51:02 |
| 2 | had before the first trial; correct? | 10:51:06 |
| 3 | A.  Right, with Dr. Gray, who I believe is -- was | 10:51:08 |
| 4 | a technical expert retained in the first matter by | 10:51:11 |
| 5 | Samsung. | 10:51:17 |
| 6 | Q.  This was not an opinion identified -- this is | 10:51:17 |
| 7 | a new position in your August report; correct? | 10:51:18 |
| 8 | MS. MAROULIS:  Objection.  Assumes facts. | 10:51:21 |
| 9 | THE WITNESS:  You know, I -- I have not in | 10:51:23 |
| 10 | preparation for this deposition re-read my prior | 10:51:26 |
| 11 | reports.  I don't know whether it was in there or not | 10:51:28 |
| 12 | or whether it was discussed in my depositions, and if | 10:51:31 |
| 13 | they were not either of those sources, I would say | 10:51:34 |
| 14 | your answer's correct. | 10:51:36 |
| 15 | BY MR. QUARLES: | 10:51:38 |
| 16 | Q.  Okay.  I'll represent to you that we weren't | 10:51:38 |
| 17 | able to find it there.  Do you have a recollection | 10:51:43 |
| 18 | that you included it? | 10:51:45 |
| 19 | A.  Well, I have a recollection that I talked to | 10:51:46 |
| 20 | Dr. Gray about this, and I would assume that I would | 10:51:49 |
| 21 | have, but I can't tell you that I did. | 10:51:52 |
| 22 | Q.  In paragraphs 493 to 494 you discuss three | 10:51:57 |
| 23 | phones that the jury found not to infringe the '915 | 10:52:18 |
| 24 | patent, the Galaxy Ace, the Intercept and the | 10:52:21 |
| 25 | Replenish; correct? | 10:52:24 |

800

| | | |
|---|---|---|
| 1 | A.  I do. | 10:52:25 |
| 2 | Q.  And you suggest that they're available as | 10:52:26 |
| 3 | noninfringing alternatives; correct? | 10:52:29 |
| 4 | A.  Yes. | 10:52:31 |
| 5 | Q.  But you don't know why the jury found those | 10:52:32 |
| 6 | phones not to infringe the '915 patent, do you? | 10:52:35 |
| 7 | A.  I do not. | 10:52:37 |
| 8 | Q.  The jury could have tested those products for | 10:52:38 |
| 9 | themselves in the jury room; correct? | 10:52:42 |
| 10 | MS. MAROULIS:  Objection.  Calls for | 10:52:44 |
| 11 | speculation. | 10:52:45 |
| 12 | THE WITNESS:  They could have what? | 10:52:45 |
| 13 | MR. QUARLES:  Tested. | 10:52:47 |
| 14 | THE WITNESS:  My understanding is they had | 10:52:49 |
| 15 | those phones available to them in the jury room, so | 10:52:51 |
| 16 | yes, they could have. | 10:52:53 |
| 17 | BY MR. QUARLES: | 10:52:54 |
| 18 | Q.  So one of the possible explanations is that | 10:52:54 |
| 19 | the jury could have found on their inspections that | 10:52:56 |
| 20 | the products did not perform the required functions at | 10:52:59 |
| 21 | all; correct? | 10:53:02 |
| 22 | MS. MAROULIS:  Objection.  Calls for | 10:53:03 |
| 23 | speculation. | 10:53:03 |
| 24 | THE WITNESS:  I have no idea on what they | 10:53:04 |
| 25 | could have done. | 10:53:06 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

801

| 1 | BY MR. QUARLES: | 10:53:07 |
| 2 | Q.  If that's what the jury found, the absence of | 10:53:07 |
| 3 | the function would not be an acceptable noninfringing | 10:53:14 |
| 4 | alternative; correct? | 10:53:18 |
| 5 | A.  If you asked me to accept your assumption, | 10:53:19 |
| 6 | that would be true. | 10:53:21 |
| 7 | Q.  The jury could have found that there was | 10:53:23 |
| 8 | something about the way the three products performed | 10:53:27 |
| 9 | the function that caused it not to infringe; correct? | 10:53:29 |
| 10 | MS. MAROULIS:  Objection.  Calls for | 10:53:32 |
| 11 | speculation, incomplete hypothetical. | 10:53:33 |
| 12 | THE WITNESS:  Again, I don't know, but again, | 10:53:35 |
| 13 | that is another one of the possibilities that could | 10:53:37 |
| 14 | have happened in the jury room. | 10:53:39 |
| 15 | BY MR. QUARLES: | 10:53:41 |
| 16 | Q.  You can't tell us what they would have found | 10:53:41 |
| 17 | about the way the function was performed that caused | 10:53:45 |
| 18 | them to find it not to infringe; correct? | 10:53:48 |
| 19 | A.  No, but under that possibility, then there | 10:53:50 |
| 20 | would be a noninfringing alternative. | 10:53:53 |
| 21 | Q.  And if you wanted to modify the code to cause | 10:53:56 |
| 22 | the infringing products to behave like the products | 10:53:59 |
| 23 | found not to infringe instead of the products found to | 10:54:03 |
| 24 | infringe, you wouldn't have any input from the jury as | 10:54:06 |
| 25 | to how to modify the code to accomplish whatever was | 10:54:10 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER

802

| | | |
|---|---|---|
| 1 | the distinction; right? | 10:54:13 |
| 2 | MS. MAROULIS:  Objection.  Vague, incomplete | 10:54:14 |
| 3 | hypothetical. | 10:54:16 |
| 4 | THE WITNESS:  That's true.  I don't have that | 10:54:16 |
| 5 | information. | 10:54:18 |
| 6 | BY MR. QUARLES: | 10:54:18 |
| 7 | Q.  And do you know whether the jury had the | 10:54:18 |
| 8 | relevant code in the jury room? | 10:54:23 |
| 9 | A.  I don't know whether they did or not. | 10:54:25 |
| 10 | Q.  And there's surely no way of knowing whether | 10:54:28 |
| 11 | anyone on the jury could read the code; correct? | 10:54:32 |
| 12 | A.  I have some vague recollection of the | 10:54:35 |
| 13 | background of the jurors, and I don't know whether | 10:54:39 |
| 14 | anyone could or could not. | 10:54:41 |
| 15 | Q.  And you have not identified an opinion of a | 10:54:42 |
| 16 | technical expert or other person who has identified | 10:54:48 |
| 17 | the code changes that would be necessary to produce | 10:54:52 |
| 18 | any such difference; right? | 10:54:54 |
| 19 | A.  That is correct. | 10:54:56 |
| 20 | Q.  Turn to paragraphs 24 to 27 of your report. | 10:54:57 |
| 21 | You say there that there are noninfringing | 10:55:13 |
| 22 | alternatives for the '381 patent based on the | 10:55:16 |
| 23 | statements made in the reexam; right? | 10:55:20 |
| 24 | A.  I do. | 10:55:22 |
| 25 | Q.  And you repeat that opinion in the context of | 10:55:22 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

803

1    your Georgia-Pacific analysis; correct?                    10:55:25

2        A.  I believe I do.                                    10:55:28

3        Q.  You did not previously offer that opinion in       10:55:29

4    any report; correct?                                       10:55:32

5        A.  I did not.                                         10:55:33

6        Q.  And you didn't offer that opinion at the           10:55:35

7    prior trial?                                               10:55:38

8        A.  No.  Again, I think that these were facts          10:55:39

9    that didn't exist at that time.                            10:55:41

10       Q.  And you're not a patent lawyer; correct?           10:55:43

11       A.  I'm not licensed to practice in front of the       10:55:45

12   PTO.  In law school I did clerk for a patent law firm,     10:55:50

13   and I've been doing a lot of patent work in the            10:55:55

14   damages context, but I do not hold myself out as a         10:55:57

15   patent lawyer.                                             10:56:00

16       Q.  And so you're not offering an opinion as a         10:56:00

17   patent lawyer as to what the meaning of any claim is       10:56:03

18   after the reexamination?                                   10:56:09

19       A.  I am not.                                          10:56:10

20       Q.  And so far as you know, no one else has            10:56:11

21   offered an opinion as to what change, if any, to any       10:56:15

22   claim construction the Court may have adopted would be     10:56:20

23   necessary as a result of the reexamination according       10:56:24

24   to you?                                                    10:56:27

25       A.  Well, only Dr. Van Dam confirmed what I            10:56:28

804

1    represent here in a conversation, but I'm aware that        10:56:33

2    he's issued a report on the subject.                        10:56:36

3        Q.  So there's -- no technical expert has offered       10:56:37

4    an opinion?                                                 10:56:40

5            MS. MAROULIS:  Objection.  Assumes facts not        10:56:40

6    in evidence, calls for speculation.                         10:56:41

7            THE WITNESS:  Well, as I just said, I believe       10:56:43

8    he was giving me opinion statements in the phone            10:56:46

9    conversation I had with him, but if you're asking has       10:56:50

10   that been submitted as an expert report to you, I          10:56:53

11   don't know.                                                 10:56:56

12   BY MR. QUARLES:                                             10:56:57

13       Q.  Now, you don't have the technical expertise        10:56:57

14   to interpret the -- to interpret software code;           10:57:05

15   correct?                                                    10:57:08

16       A.  Again, I have some ability to interpret            10:57:08

17   software code, but I do not hold myself out as an          10:57:11

18   expert.                                                     10:57:15

19       Q.  So you don't know how the software code            10:57:15

20   obtains the visual bounce effect; correct?                 10:57:18

21       A.  I don't.                                           10:57:20

22       Q.  And you can't evaluate for yourself whether        10:57:22

23   it's possible to obtain that same visual effect with       10:57:26

24   code that does not infringe the '381 patent?              10:57:29

25       A.  I can't independently, and from a technical        10:57:32

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

805

| | | |
|---|---|---|
| 1 | standpoint I can only say what I've said in this | 10:57:35 |
| 2 | report based on statements by others. | 10:57:37 |
| 3 | Q.  And you're not going to offer a technical | 10:57:39 |
| 4 | opinion to the jury; correct? | 10:57:42 |
| 5 | A.  I am not. | 10:57:43 |
| 6 | Q.  Any such opinion would have to come from the | 10:57:44 |
| 7 | technical expert, Dr. Van Dam; correct? | 10:57:46 |
| 8 | A.  If it was a technical person speaking at | 10:57:49 |
| 9 | trial, yes.  Or it can come from, again, the | 10:57:52 |
| 10 | information I provided in these paragraphs. | 10:57:57 |
| 11 | Q.  You're not going to offer a technical | 10:58:05 |
| 12 | opinion; right? | 10:58:09 |
| 13 | MS. MAROULIS:  Objection.  Asked and | 10:58:10 |
| 14 | answered. | 10:58:11 |
| 15 | THE WITNESS:  Thank you. | 10:58:12 |
| 16 | For the second time, no. | 10:58:12 |
| 17 | BY MR. QUARLES: | 10:58:13 |
| 18 | Q.  Good. | 10:58:13 |
| 19 | Now, when you provide a design-around time -- | 10:58:14 |
| 20 | withdrawn. | 10:58:37 |
| 21 | When you asked the Samsung engineers to give | 10:58:37 |
| 22 | you a design-around time, did you ask them to give you | 10:58:39 |
| 23 | a design-around time if they dropped everything else | 10:58:44 |
| 24 | and devoted full-time to the design-around? | 10:58:49 |
| 25 | MS. MAROULIS:  Objection.  Vague. | 10:58:53 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

814

| | | |
|---|---|---|
| 1 | correct date, so yes. | 11:13:51 |
| 2 | Q.  All right.  Now, let's take a look at your | 11:13:53 |
| 3 | opinion on the white and gray design-around, which is | 11:14:08 |
| 4 | in paragraph 233 of your most recent report. | 11:14:13 |
| 5 | In paragraph 233 of your report you identify | 11:14:31 |
| 6 | a potential design-around that changes the color of | 11:14:34 |
| 7 | the phone from black to white or gray; correct? | 11:14:37 |
| 8 | A.  I do. | 11:14:40 |
| 9 | Q.  You did not disclose that opinion in any | 11:14:40 |
| 10 | prior report; correct? | 11:14:45 |
| 11 | A.  That is correct.  I didn't know that that | 11:14:47 |
| 12 | would be, quote, considered noninfringing by your | 11:14:50 |
| 13 | expert until he testified to that at trial.  Or pardon | 11:14:53 |
| 14 | me, in his declaration. | 11:14:57 |
| 15 | Scratch the last answer. | 11:15:06 |
| 16 | Yes, that was September 30th, 2011.  But | 11:15:08 |
| 17 | it -- and you're right, it was not a design-around in | 11:15:13 |
| 18 | my previous report. | 11:15:15 |
| 19 | Q.  Right.  So the declaration you were referring | 11:15:16 |
| 20 | to is a declaration that occurred prior to trial? | 11:15:19 |
| 21 | A.  It did. | 11:15:22 |
| 22 | Q.  And it was prior to your expert report? | 11:15:23 |
| 23 | A.  Yes. | 11:15:27 |
| 24 | Q.  And a white phone was available at the time | 11:15:28 |
| 25 | of your prior -- or I'm sorry.  The color white was | 11:15:33 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

815

1    obviously available at the time of your prior report;        11:15:37

2    is that --                                                   11:15:39

3         A.  It was.                                             11:15:39

4         Q.  There is no reason that you couldn't have           11:15:42

5    disclosed that opinion in your prior report; correct?        11:15:45

6         A.  There's no reason.                                  11:15:49

7         Q.  Samsung had notice of the D'677 patent in           11:15:51

8    April 2011; correct?                                         11:15:58

9         A.  Yes.                                                11:16:00

10        Q.  Samsung never marketed a white version of the       11:16:01

11   Infuse 4G; correct?                                          11:16:05

12        A.  As far as I know, they have not.                    11:16:09

13        Q.  All right.  Now, is it your conclusion that         11:16:10

14   every person who bought a black Infuse 4G would find a       11:16:16

15   white Infuse 4G to be an acceptable substitute?             11:16:21

16        A.  No.                                                 11:16:27

17        Q.  In figure 47 at page 197 of your report, you        11:16:27

18   show some alternative designs for the D'677 patent?          11:16:45

19        A.  Yes.                                                11:16:53

20        Q.  Involving a different placement of the phone        11:16:54

21   speaker; correct?                                            11:16:56

22        A.  Correct.                                            11:16:57

23        Q.  You did not offer an opinion in any of your         11:16:57

24   prior reports concerning the placement of the phone          11:17:02

25   speaker; correct?                                            11:17:04

816

1    A.  I did not.  And I believe these were all    11:17:05

2  accused phones at the time of my earlier report, so I    11:17:10

3  would not have done this analysis at that time.    11:17:14

4    Q.  Now, it was possible to have moved the    11:17:16

5  speaker slot in April 2012?    11:17:24

6    A.  It was.    11:17:27

7    Q.  Okay.  Now, in paragraph 524 of your report    11:17:28

8  you say that you spoke with a Mr. KwangJin Bei about a    11:17:39

9  possible design-around of the D'677 patent for the    11:17:45

10  Infuse 4G?    11:17:49

11    A.  Yes.    11:17:50

12    Q.  Correct?    11:17:51

13    You had that conversation on -- in July of    11:17:52

14  2013; correct?    11:18:00

15    A.  Yes.    11:18:01

16    Q.  You did not speak with Mr. Bei in forming the    11:18:02

17  opinions that you offered in your prior reports;    11:18:06

18  correct?    11:18:08

19    A.  That is correct.    11:18:08

20    Q.  You -- Mr. Bei is a Samsung engineer in    11:18:09

21  Korea; correct?    11:18:15

22    A.  He is.    11:18:15

23    Q.  Now, whatever information you got from    11:18:16

24  Mr. Bei in 2013 you could have gotten in 2012;    11:18:23

25  correct?    11:18:28

817

| | | |
|---|---|---|
| 1 | MS. MAROULIS:  Objection.  Calls for | 11:18:28 |
| 2 | speculation. | 11:18:29 |
| 3 | THE WITNESS:  Again, I don't know that, but | 11:18:30 |
| 4 | it's possible I could have. | 11:18:32 |
| 5 | BY MR. QUARLES: | 11:18:34 |
| 6 | Q.  You would have expected Mr. Bei to have -- | 11:18:34 |
| 7 | withdrawn. | 11:18:39 |
| 8 | Is there anything that you understand Mr. Bei | 11:18:39 |
| 9 | learned between 2012 and 2013 that informed his | 11:18:42 |
| 10 | ability to talk to you? | 11:18:46 |
| 11 | A.  No. | 11:18:47 |
| 12 | Q.  Okay.  Excuse me for just one second. | 11:18:49 |
| 13 | Now, reserving my -- our argument that this | 11:19:20 |
| 14 | new opinion comes too late, I want to see if I can | 11:19:34 |
| 15 | understand what it is you're talking about here. | 11:19:41 |
| 16 | You only asked Mr. Bei about the cost of | 11:19:47 |
| 17 | changing the design of the Infuse 4G, quote, at the | 11:19:51 |
| 18 | time of development of the Infuse 4G; correct? | 11:19:54 |
| 19 | A.  Correct. | 11:19:58 |
| 20 | Q.  So you were saying, "If you are writing on a | 11:19:59 |
| 21 | blank slate and you wanted to change the design, what | 11:20:07 |
| 22 | would the cost have been?" | 11:20:13 |
| 23 | A.  I don't think that's exactly what I asked | 11:20:16 |
| 24 | him, no. | 11:20:18 |
| 25 | Q.  You're saying -- am I saying -- withdrawn. | 11:20:18 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

834

| | | |
|---|---|---|
| 1 | your claim that Apple's profit margin in the United | 11:56:50 |
| 2 | States for that quarter is ███████ is wrong; right? | 11:56:52 |
| 3 | MS. MAROULIS:  Objection.  Incomplete | 11:56:57 |
| 4 | hypothetical. | 11:56:58 |
| 5 | THE WITNESS:  Yes, assuming all the other | 11:57:01 |
| 6 | costs are the same in the worldwide, except for that | 11:57:03 |
| 7 | one cost is -- should be ███ rather than ███, then | 11:57:07 |
| 8 | you're correct, that would change. | 11:57:12 |
| 9 | BY MR. QUARLES: | 11:57:14 |
| 10 | Q.  So your analysis in schedule 10.1 is mixing | 11:57:14 |
| 11 | the lower U.S. average selling price with a higher | 11:57:24 |
| 12 | worldwide average standard cost; correct? | 11:57:28 |
| 13 | MS. MAROULIS:  Objection.  Misleading. | 11:57:30 |
| 14 | THE WITNESS:  It's possible it's doing that, | 11:57:31 |
| 15 | yes. | 11:57:33 |
| 16 | BY MR. QUARLES: | 11:57:33 |
| 17 | Q.  Okay.  Thank you. | 11:57:33 |
| 18 | Shifting gears just a second, can you pull | 11:57:36 |
| 19 | out 484 of your expert report? | 11:57:52 |
| 20 | A.  You mean paragraph 484? | 11:57:59 |
| 21 | Q.  Yes, sir. | 11:58:02 |
| 22 | A.  Yes. | 11:58:13 |
| 23 | Q.  Now, there you once again rely upon the jury | 11:58:14 |
| 24 | verdict as an indicator of a possible additional | 11:58:22 |
| 25 | design-around; correct? | 11:58:28 |

835

1      A.  I do.                                              11:58:29

2      Q.  Once again, you don't know why the jury found      11:58:30

3   that the products you identify did not infringe the       11:58:40

4   '163 patent; correct?                                     11:58:47

5          MS. MAROULIS:  Objection.  Asked and               11:58:48

6   answered.                                                 11:58:49

7          THE WITNESS:  That is correct.                     11:58:50

8   BY MR. QUARLES:                                           11:58:52

9      Q.  We're talking about the '163 now.                  11:58:52

10     A.  We are.                                            11:58:55

11     Q.  Yes.                                               11:58:55

12         And so your answers to -- with respect to          11:58:56

13  this product would be the same as the answers I -- of     11:59:05

14  the questions I asked you earlier about a different       11:59:09

15  patent; correct?                                          11:59:12

16     A.  If you use "patent" both times in the              11:59:13

17  sentence rather than "product," then patent, yes.         11:59:16

18     Q.  Okay.  And that would be that you don't            11:59:18

19  know -- you don't know why the jury found it -- you       11:59:21

20  don't know whether they -- let me start again.            11:59:28

21         You don't know whether they found it didn't        11:59:30

22  perform the feature at all or whether it performed it     11:59:33

23  in a different way; correct?                              11:59:36

24     A.  Correct.                                           11:59:38

25     Q.  You wouldn't know how to write code -- as a        11:59:38

836

1    result, you wouldn't know how to write code to perform          11:59:45

2    the feature in a different way because you wouldn't             11:59:48

3    know how the feature was different; correct?                    11:59:50

4         A.  I wouldn't.  That's correct.  And I don't             11:59:52

5    know whether the jury did or not.                               11:59:54

6         Q.  Right.  Right.                                         11:59:56

7             So you don't have any information as to how            11:59:58

8    it is you would design around the '163 patent based             12:00:05

9    upon the jury's verdict; correct?                               12:00:09

10        A.  I would not.                                           12:00:11

11        Q.  And insofar as you know, no expert has                 12:00:12

12   provided any information concerning that?                       12:00:19

13        A.  I'm not aware of any.                                  12:00:26

14        Q.  At paragraph 216 of your report you observe           12:00:28

15   that Ms. Davis does not apply the same adjustment to            12:00:43

16   AT&T as she does to the other carriers?                         12:00:51

17        A.  Correct.                                               12:00:54

18        Q.  Are you saying that she should have applied            12:00:56

19   what I've been calling the 26 percent carrier                   12:00:59

20   switching adjustment to AT&T?                                   12:01:02

21        A.  No, I think it would be something different            12:01:04

22   than that, but there should be at least some                    12:01:06

23   consideration of an adjustment.                                 12:01:09

24        Q.  But you don't know what that adjustment would          12:01:11

25   be?                                                             12:01:15

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

840

1    Q.  After you served your April 2012 report, the        12:05:35

2    District Court issued its jury instructions; correct?    12:05:41

3    A.  Yes.                                                  12:05:45

4    Q.  And the jury instructions said that the only         12:05:46

5    expenses -- that only expenses directly attributable     12:05:49

6    to the sale of the infringing product can be deducted;   12:05:53

7    correct?                                                  12:05:56

8    A.  Yes.                                                  12:05:56

9    Q.  And you changed the language of your report          12:05:57

10   after that jury instruction; correct?                    12:06:03

11        MS. MAROULIS:  Objection.  Assumes facts.           12:06:07

12        THE WITNESS:  That's correct.                       12:06:08

13   BY MR. QUARLES:                                          12:06:09

14   Q.  Now, you agree that the jury should award            12:06:09

15   damages for every infringed product; correct?           12:06:20

16        MS. MAROULIS:  Objection.  Calls for legal          12:06:23

17   conclusion.                                              12:06:24

18        THE WITNESS:  As a damage expert, that's the        12:06:24

19   position I normally take.                                12:06:26

20   BY MR. QUARLES:                                          12:06:31

21   Q.  Turn to figure 36, page 160 of your new trial        12:06:31

22   report.                                                  12:06:38

23   A.  I'm sorry.  In which paragraph?                      12:06:38

24   Q.  Figure 36, page 160.                                 12:06:39

25   A.  160.  Thank you.                                     12:06:43

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

853

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

854

935

| | | |
|---|---|---|
| 1 | A.  Title of report is "Rebuttal Expert Report of | 03:40:45 |
| 2 | Michael J. Wagner on New Trial For Damages." | 03:40:49 |
| 3 | MS. MAROULIS:  I'm not objecting to the | 03:40:53 |
| 4 | title.  If you can repeat the question. | 03:40:55 |
| 5 | BY MR. QUARLES: | 03:40:56 |
| 6 | Q.  In that report you introduce for the first | 03:40:56 |
| 7 | time a concept which you call the summation method; | 03:40:58 |
| 8 | correct? | 03:41:02 |
| 9 | MS. MAROULIS:  Objection.  Mischaracterizes | 03:41:02 |
| 10 | the report. | 03:41:03 |
| 11 | THE WITNESS:  The use of the word "summation" | 03:41:04 |
| 12 | is new.  The actual underlying analysis was done in | 03:41:07 |
| 13 | previous reports. | 03:41:11 |
| 14 | BY MR. QUARLES: | 03:41:12 |
| 15 | Q.  Well, I would never find the words "summation | 03:41:12 |
| 16 | method"; correct? | 03:41:15 |
| 17 | A.  That is correct. | 03:41:16 |
| 18 | Q.  I would never find any calculation labeled as | 03:41:16 |
| 19 | being prepared using the summation method; correct? | 03:41:20 |
| 20 | MS. MAROULIS:  Objection.  Mischaracterizes | 03:41:22 |
| 21 | the prior report. | 03:41:24 |
| 22 | THE WITNESS:  Right.  The analyses that now I | 03:41:26 |
| 23 | call summation were not described as summation in the | 03:41:28 |
| 24 | prior report. | 03:41:31 |
| 25 | BY MR. QUARLES: | 03:41:33 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

936

| | | |
|---|---|---|
| 1 | Q.  All of the calculations of Samsung's profits | 03:41:33 |
| 2 | in the prior report were prepared using what you | 03:41:35 |
| 3 | referred to as the per-unit method; correct? | 03:41:39 |
| 4 | A.  The conclusions in the prior report were all | 03:41:41 |
| 5 | based on a per-unit approach, but the calculations | 03:41:46 |
| 6 | that -- all you have to do is add them up and now it's | 03:41:50 |
| 7 | called a summation approach was in my prior report. | 03:41:53 |
| 8 | Q.  Where do you say was in your prior -- | 03:41:57 |
| 9 | A.  I think it was schedule 21, the 21 series. | 03:42:00 |
| 10 | It was either 21 or 22. | 03:42:04 |
| 11 | Q.  You would agree that the conclusions that you | 03:42:06 |
| 12 | have drawn from those schedules are new? | 03:42:33 |
| 13 | A.  Yes. | 03:42:37 |
| 14 | Q.  Now, look at figures 26 and 27 of your | 03:42:38 |
| 15 | report.  Those figures are not prepared using the | 03:42:52 |
| 16 | per-unit method; correct? | 03:42:55 |
| 17 | A.  Can you tell me what pages those are? | 03:42:57 |
| 18 | They're on pages 110 and 111. | 03:43:17 |
| 19 | Q.  They were prepared by summing the gross | 03:43:21 |
| 20 | totals for each line item; correct? | 03:43:27 |
| 21 | A.  Yes. | 03:43:30 |
| 22 | Q.  And that is the summation method; correct? | 03:43:30 |
| 23 | A.  Yes. | 03:43:33 |
| 24 | Q.  When you prepare the summation method, you | 03:43:34 |
| 25 | simply add the line which refers to operating profit | 03:43:38 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

938

| | | |
|---|---|---|
| 1 | in that operating profit; correct? | 03:45:06 |
| 2 | A.  There are. | 03:45:09 |
| 3 | Q.  Do you know whether the operating profit at | 03:45:09 |
| 4 | SEC and at STA use the same number of units? | 03:45:13 |
| 5 | A.  Well, I know they do not. | 03:45:19 |
| 6 | Q.  So you are adding the profit for -- | 03:45:25 |
| 7 | withdrawn. | 03:45:30 |
| 8 | So you are summing profits across different | 03:45:31 |
| 9 | measures of units; correct? | 03:45:35 |
| 10 | MS. MAROULIS:  Objection.  Vague. | 03:45:36 |
| 11 | THE WITNESS:  Well, for the same period, yes, | 03:45:38 |
| 12 | that's correct. | 03:45:42 |
| 13 | BY MR. QUARLES: | 03:45:42 |
| 14 | Q.  Look at paragraphs 412 to 415 of your | 03:45:42 |
| 15 | report.  Those paragraphs are not present in your | 03:46:06 |
| 16 | prior report; correct? | 03:46:21 |
| 17 | A.  That is correct. | 03:46:23 |
| 18 | Q.  Figure 37 is new; correct? | 03:46:23 |
| 19 | A.  Clearly, because -- yes, it's clearly new. | 03:46:28 |
| 20 | Q.  You could have included the summation method | 03:46:33 |
| 21 | in your prior report; correct? | 03:46:41 |
| 22 | MS. MAROULIS:  Objection.  Misstates | 03:46:43 |
| 23 | testimony and prior report. | 03:46:45 |
| 24 | THE WITNESS:  I don't think that there was a | 03:46:49 |
| 25 | pretrial stipulation at the time I did my earlier | 03:46:50 |

945

| | | |
|---|---|---|
| 1 | Indulge, the Transform and the Replenish were all | 03:58:18 |
| 2 | accused phones until after the first trial.  So I | 03:58:21 |
| 3 | could not have done this comparison. | 03:58:23 |
| 4 | BY MR. QUARLES: | 03:58:25 |
| 5 | Q.  Am I correct that each of those phones has a | 03:58:25 |
| 6 | touch screen? | 03:58:29 |
| 7 | A.  Yes, and each one of those phones also has a | 03:58:31 |
| 8 | hard keyboard as well. | 03:58:36 |
| 9 | Q.  Look at schedule 31-NT to your report we'll | 03:58:39 |
| 10 | have to give to you.  Schedule 31-NT -- why don't we | 03:58:51 |
| 11 | get one that we can have marked. | 03:59:52 |
| 12 | MR. QUARLES:  Can we mark that? | 04:00:29 |
| 13 | (WAGNER EXHIBIT 26 MARKED.) | 04:00:32 |
| 14 | BY MR. QUARLES: | 04:00:32 |
| 15 | Q.  Ms. Maroulis can look over your shoulder | 04:00:32 |
| 16 | while I ask you these questions. | 04:00:43 |
| 17 | What is this schedule? | 04:00:55 |
| 18 | MS. MAROULIS:  Do you have a copy for me? | 04:01:17 |
| 19 | THE WITNESS:  Well, you marked as Exhibit 26 | 04:01:20 |
| 20 | schedules 31-NT through 31.4-NT, which is appropriate | 04:01:23 |
| 21 | because they all fit together. | 04:01:29 |
| 22 | MR. QUARLES:  Yes. | 04:01:30 |
| 23 | THE WITNESS:  But what this is intending to | 04:01:32 |
| 24 | do is to use the jury verdict for the 13 products at | 04:01:34 |
| 25 | issue in the new trial and award the same type of | 04:01:41 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

946

| | | |
|---|---|---|
| 1 | damages, which would be Samsung's profits and | 04:01:44 |
| 2 | reasonable royalty, for each of the 13 products and | 04:01:47 |
| 3 | not awarding any lost profits, because the jury found | 04:01:52 |
| 4 | no lost profits for any of these products, and then | 04:01:55 |
| 5 | also trying to correct for the notice dates that the | 04:02:00 |
| 6 | judge has stated in her rulings post trial, but making | 04:02:03 |
| 7 | one additional adjustment; and that is not using just | 04:02:13 |
| 8 | the early event possible date, but having to have both | 04:02:16 |
| 9 | Samsung notified that they're infringing a certain | 04:02:21 |
| 10 | patent but also they must -- Apple must identify the | 04:02:24 |
| 11 | product which is infringing that patent, which | 04:02:28 |
| 12 | sometimes will make the date later than that early | 04:02:32 |
| 13 | event possible notice date. | 04:02:34 |
| 14 | And if I've done it correctly, the logic in | 04:02:37 |
| 15 | these schedules will result in these numbers. | 04:02:42 |
| 16 | BY MR. QUARLES: | 04:02:44 |
| 17 | Q. And did you prepare this because this is a | 04:02:44 |
| 18 | theory you are prepared to present at trial? | 04:02:47 |
| 19 | A. If asked, yes. | 04:02:54 |
| 20 | Q. So if I understand what you've done, you've | 04:02:55 |
| 21 | taken the jury's award from the first trial, and then | 04:03:04 |
| 22 | under damage remedy, how did you figure out whether it | 04:03:11 |
| 23 | was Samsung's products plus reasonable royalty? | 04:03:14 |
| 24 | A. I was able to replicate the jury's verdict to | 04:03:19 |
| 25 | the penny for every one of these products. And I know | 04:03:24 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER, VOLUME 4
CONDUCTED ON TUESDAY, AUGUST 20, 2013

951

| | | |
|---|---|---|
| 1 | Q.  That one actually isn't compound.  You had to | 04:10:28 |
| 2 | do both. | 04:10:32 |
| 3 | A.  You're right, but I'm telling you that I have | 04:10:32 |
| 4 | reverse engineered jury's verdicts before, but I've | 04:10:36 |
| 5 | never had a new trial set like this fact situation. | 04:10:39 |
| 6 | Q.  Are you aware that one of the reasons the | 04:10:42 |
| 7 | Court gave for ordering a new trial was the inability | 04:11:06 |
| 8 | to reverse engineer the jury's verdict perfectly? | 04:11:10 |
| 9 | MS. MAROULIS:  Objection.  Assumes facts, | 04:11:14 |
| 10 | misstates the record. | 04:11:16 |
| 11 | THE WITNESS:  Yeah, I have an unrefreshed | 04:11:16 |
| 12 | recollection at one point she made a statement like | 04:11:20 |
| 13 | that; but I also believe that on later written | 04:11:23 |
| 14 | statements by the judge she recognized she could | 04:11:28 |
| 15 | replicate it and she did.  She explained what the jury | 04:11:32 |
| 16 | did. | 04:11:35 |
| 17 | BY MR. QUARLES: | 04:11:35 |
| 18 | Q.  Now, you would agree -- withdrawn. | 04:11:35 |
| 19 | Samsung is a commercial entity; right? | 04:11:45 |
| 20 | A.  It certainly is. | 04:11:47 |
| 21 | Q.  And it's a successful commercial entity; | 04:11:48 |
| 22 | correct? | 04:11:51 |
| 23 | A.  It is. | 04:11:51 |
| 24 | Q.  And it has as its goal maximizing its | 04:11:52 |
| 25 | profits; correct? | 04:12:02 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER

961

C E R T I F I C A T E

1
2          I, Anne M. Torreano, Certified Shorthand

3    Reporter, do hereby certify that the aforementioned

4    witness was first duly sworn as noted by stipulation

5    of counsel to testify to the truth; that I was

6    authorized to and did report said deposition in

7    stenotype; and that the foregoing pages are a true and

8    correct transcription of my shorthand notes of said

9    deposition.

10         I further certify that said deposition was

11   taken at the time and place hereinabove set forth and

12   that the taking of said deposition was commenced and

13   completed as hereinabove set out.

14         I further certify that I am not an attorney

15   or counsel of any of the parties, nor am I financially

16   interested in the action.

17         The foregoing certification of this

18   transcript does not apply to any reproduction of the

19   same by any means, unless under the direct control

20   and/or direction of the certifying reporter.

21         Dated this 16th day of August, 2013.

22

23

24

             ANNE M. TORREANO, CA-10520