# EXHIBIT 1

Highly Confidential - Outside Counsels' Eyes Only

Page 1

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4      APPLE, INC., a California

5      Corporation,

6               Plaintiff,        Civil Action No.

7        vs.                      11-CV-01846-LHK

8      SAMSUNG ELECTRONICS CO., LTD.,

9      et. al.,

10              Defendants.

11      _____/

12

13

14      HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

15          VIDEOTAPED DEPOSITION OF JULIE DAVIS

16                  CHICAGO, ILLINOIS

17               MONDAY, AUGUST 26, 2013

18

19

20

21

22

23      Reported by:

24      DEBORAH HABIAN, RMR, CRR, CLR

25      JOB NO. 65086

Highly Confidential - Outside Counsels' Eyes Only

Page 16

1          Q.   You've never been qualified by a court

2     as an expert on marketing, correct?

3          A.   Not strictly marketing, that's correct.

4          Q.   You're not an expert on consumer

5     decision-making, correct?                          08:43AM

6          A.   I do not think of myself as an expert

7     on consumer decision-making.

8          Q.   And you're not an expert on the

9     telecommunications industry, correct?

10          A.   I certainly have worked on a number of    08:43AM

11     cases in the telecommunications industry, but I

12     have not worked within that industry as an

13     employee.  I do not think of myself as an expert

14     in that industry, other than the knowledge that

15     I have acquired through my work on cases in that   08:43AM

16     industry.

17          Q.   You're not an expert on US smartphone

18     market, right?

19          A.   I know a considerable amount about the

20     US smartphone market having studied it for a       08:43AM

21     number of cases, but I do not consider myself to

22     be an expert in that marketing area.

23          Q.   You're similarly not an expert on US

24     tablet market, correct?

25          A.   Once again, I have learned a great deal   08:43AM

Highly Confidential - Outside Counsels' Eyes Only

Page 17

1     about the US tablet market through my work

2     involving products and technologies in that

3     market.  However, I do not think of myself as a

4     tablet marketing expert.

5          Q.  You're not an expert on U --               08:44AM

6     withdrawn -- the smartphone industrial design,

7     correct?

8          A.  I do not have any expertise in

9     industrial design.

10         Q.  You've never designed a phone, right?      08:44AM

11         A.  I have not.

12         Q.  You're not a computer scientist,

13    correct?

14         A.  I am not a computer scientist.

15         Q.  Do you read source codes?                  08:44AM

16         A.  I haven't done so for many years.

17         Q.  Have you ever done it?

18         A.  I probably had to do so in my college

19    courses.

20         Q.  But not since then?                        08:44AM

21         A.  Not since then.

22         Q.  You're not an electrical engineer,

23    correct?

24         A.  I'm not an electrical engineer.

25         Q.  And not a consumer on -- an expert on      08:44AM

Highly Confidential - Outside Counsels' Eyes Only

Page 18

1    consumer electronics, right?

2        A.   Consumer electronics is another area

3    where I have worked on a number of cases, but I

4    do not think of myself as being an expert on the

5    electronics themselves.  I've just learned a lot    08:45AM

6    about the market through my work in those cases.

7        Q.   In this case you're not purporting to

8    give an expert opinion on what drives demand for

9    smartphones or tablets, correct?

10       A.   I think my expert opinion does cover       08:45AM

11   aspects of what drives demand for smartphones

12   and tablets.

13       Q.   Is this your opinion or are you relying

14   on somebody else for that opinion?

15       A.   I'm relying upon the documents and         08:45AM

16   deposition testimony of a number of different

17   people, all of whom and all of which documents

18   I've identified in my report.

19       Q.   So in this case, are you appearing as

20   an expert on what drives demand for smartphones    08:45AM

21   or tablets?

22       A.   I think that aspect of my opinion

23   requires me to have considered that area, so to

24   some extent yes, I have to have knowledge and

25   expertise in that area to determine what drives    08:46AM

Highly Confidential - Outside Counsels' Eyes Only

Page 20

1    relied upon them, they are identified in my

2    report.

3        Q.   How many documents would you say you

4    reviewed in this case roughly?

5        A.   I have no idea how to quantify that.        08:47AM

6        Q.   Besides reviewing the documents in this

7    case, what else do you believe qualifies you to

8    render expert opinion on what drives demand?

9        A.   You said besides the documents --

10       Q.   Reviewed the documents, uh-huh.           08:47AM

11       A.   -- I have reviewed.  I think I've

12   mentioned the deposition testimony and the trial

13   testimony of the witnesses who address this

14   issue.

15       Q.   Anything else that you believe            08:47AM

16   qualifies you to render expert testimony in

17   this?

18       A.   I think we have covered that

19   information.  I don't think I have anything

20   sitting here right now I would add to that.        08:47AM

21       Q.   How did you decide which documents to

22   review with respect to what drives demand in the

23   smartphone market?

24       A.   I started my work in that area

25   reviewing Mr. Musika's reports and Mr. Wagner's    08:48AM

Highly Confidential - Outside Counsels' Eyes Only

Page 30

1   related to the '305.

2        Q.   How did you define -- how do you define

3   the short design-around period in this case?

4        A.   In this case the design-around period

5   for the '305 patent is a couple weeks or so.        08:59AM

6        Q.   But you did calculate lost profits on

7   the design Patent No. '677, correct?

8        A.   I did.

9        Q.   Do you understand that Apple claims

10  that patent covers the black front face of the      08:59AM

11  device?

12       A.   That's consistent with my

13  understanding, yes.

14       Q.   Okay.  So the front face of the device

15  in other color would not infringe the -- the        08:59AM

16  '677 correct?

17       A.   You may be asking a question that I'm

18  not qualified to answer, since I'm neither a

19  technical nor legal expert.  However, that is

20  generally my understanding, that if the front       08:59AM

21  face were white, for example, it would not

22  infringe the '677 patent.

23       Q.   Your report does not break out lost

24  profits on a patent-by-patent basis, correct?

25       A.   My report breaks out lost profits on a     08:59AM

Highly Confidential - Outside Counsels' Eyes Only

Page 52

1   something to do with the '381 technology.

2        Q.  Is it your opinion that one needs '381

3   technology to access the Internet?

4        A.  No.  That is not my understanding.

5   Anyway, I'm not a technical person.                    09:27AM

6        Q.  Okay.  What is more important for

7   consumer demand, sending and receiving an e-mail

8   or having a bounce-back feature on your phone?

9        A.  It depends on how you're addressing

10  consumer demand.  If the consumer is already         09:28AM

11  looking at only models of phones that access and

12  can send e-mail, then there's nothing

13  differentiating about that as a factor.

14          Therefore, the '381 technology that

15  would be available on the Samsung or Apple           09:28AM

16  phones would differentiate that phone, as an

17  example, from other phones that did not provide

18  that but all of them provided e-mail.

19       Q.  So is it your opinion that it's equally

20  important for a consumer to be able to send and      09:28AM

21  receive e-mail and to have bounce-back feature

22  on their phones?

23       A.  I think there are a list of fundamental

24  activities that need to be true for a consumer

25  to buy a phone.  For example, it has to actually  09:28AM

Highly Confidential - Outside Counsels' Eyes Only

Page 72

1    mean by that?

2         A.   The individual who is holding the phone

3    and scrolling on the touch screen goes beyond

4    the edge sufficiently enough to give rise to the

5    bounce back during the course of the ad.          09:53AM

6         Q.   And so for the purpose of your

7    analysis, you're assuming that anytime a

8    document -- a document goes to the edge, that is

9    sufficient to satisfy the '381 patented

10   technology?                                       09:53AM

11        A.   Once again, I don't have a technical

12   background.  So I couldn't tell you exactly

13   what's sufficient to evidence the '381 patented

14   technology.  However, because I think of the

15   '381 technology as the bounce-back aspect of the  09:54AM

16   phone, once you've gone beyond the edge of a

17   document or a photo or a list of e-mails and it

18   bounces back or exhibits, the rubber band

19   effect, I think of that as the '381 technology.

20        Q.   So you assume, for the purposes of your  09:54AM

21   report, that anytime you have the rubber banding

22   visual effect, that satisfies the patented

23   feature of the '381 patent?

24        A.   I don't know if that's true anytime,

25   but I believe it is in many cases.  I think       09:54AM

Highly Confidential - Outside Counsels' Eyes Only

Page 79

1      A.   Yes, probably so.

2      Q.   How do you personally define the '163

3  patented technology for our conversation here?

4      A.   Once again, I don't have a technical

5  background, but I think of the '163 technology    10:15AM

6  as the double-tap-to-zoom,

7  double-tap-to-recenter on a second box.

8      Q.   So if I refer to it as tap-to-zoom to

9  center today, you would understand I'm referring

10 to '163 technology?                               10:15AM

11     A.   That's a mouthful, but I would

12 understand what you're talking about.

13     Q.   And how do you personally define the

14 '915 technology?

15     A.   I think of the '915, once again having  10:16AM

16 no technical background myself, as the

17 pinch-to-zoom patent.  It's the scroll versus

18 the gesture.

19     Q.   And how do you define, for purposes of

20 today, the '677 design?                           10:16AM

21     A.   I think of the '677 design as the

22 overall face of the phone that includes the

23 black look and the frame around the touch screen

24 and that sort of thing.

25     Q.   The face -- the face of the phone has   10:16AM

Highly Confidential - Outside Counsels' Eyes Only

Page 190

1      A.   I am not a lawyer.  I cannot point you

2  to case law on that topic one way or the other.

3      Q.   Would you agree that Samsung wouldn't

4  negotiate to take a license for products that

5  didn't infringe?                            12:56PM

6      A.   I would agree that it would not pay for

7  products it did not infringe, but I have not

8  calculated damages for products it did not

9  infringe.

10      Q.   Would --                            12:56PM

11      A.   I probably conflated "products" and

12  "patents."  Let me clarify that answer.

13          I believe that Samsung would not pay

14  for patents it did not infringe, and I have not

15  calculated damages for products that were     12:57PM

16  noninfringing, or for patents that were

17  noninfringe -- not infringed.

18      Q.   If you had included the Apple/Samsung 2

19  patents in your hypothetical negotiation, your

20  income approach royalty rate would be lower,   12:57PM

21  wouldn't it?

22      A.   I know nothing about Apple/Samsung 2,

23  and therefore I can't comment on how that would

24  affect my analysis.

25      Q.   If hypothetically there was a set of   12:57PM

Highly Confidential - Outside Counsels' Eyes Only

Page 311

1    pan on a touch screen, does it?

2        A.  I don't believe so, but once again, I'd

3    want to defer to someone who has studied the

4    technical aspects of the patent.

5        Q.  The '915 patent doesn't claim pinching    04:46PM

6    to zoom on a touch screen, correct?

7        A.  That's outside my expertise and that's

8    getting too close to what it does claim for me

9    to make the distinction, what it does versus

10   what it doesn't.                                   04:46PM

11       Q.  You state in your report that it claims

12   scroll versus gesture functionality, right?

13       A.  That's what I think of it, yes.

14       Q.  It doesn't claim every single way to

15   achieve that scroll and gesture functionality on  04:47PM

16   that touch screen display, correct?

17       A.  I believe that's correct.

18       Q.  I'm going to hand you what's been

19   marked as Exhibit 2 for Identification and ask

20   you to confirm whether it's a transcript from a   04:47PM

21   case of LePage, Incorporated vs. 3M.

22                   (Davis 2 was marked for ID.)

23       A.  (Reviewing document.)

24            That looks to be the case.

25       Q.  Did you testify at trial in this case?    04:47PM