# EXHIBIT 5
# PUBLIC REDACTED VERSION

Page 110

1    of acceptable substitutes is only relevant
2    during the damages period and more specifically,
3    only relevant during the lost profits period,
4    and I just gave you when those periods start.
5        Q.   When did you assume they started?  Did        10:58AM
6    you assume they started on the notice date, the
7    availability of noninfringement alternatives?
8        A.   That's the date upon which I've
9    considered the availability of such alternatives
10   and determined that the design-around period        10:59AM
11   needs to be considered in order to address that
12   question.
13       Q.   How did you come to consider that as
14   the starting point?  Was it given to you by
15   attorneys?                                            10:59AM
16       A.   As I've explained in my report, I don't
17   see how Samsung can design around a patent until
18   it's notified of its existence and the fact that
19   it's infringing.  Because I know what those
20   notice dates are as determined by the judge,          10:59AM
21   that would be the first date that Samsung could
22   be assumed to start a design-around.
23       Q.   Do you believe it is appropriate to
24   calculate availability of acceptable
25   noninfringement alternatives at a different date     11:00AM

1   about design-around, would you credit the
2   testimony by Samsung's experts?
3       A.   I would need to review such information
4   and talk to people who have technical background
5   about what it means.                                11:24AM
6       Q.   Besides speaking with Mr. Lamaru, did
7   you do anything else to ascertain the length of
8   the design-around for the '915 patent?
9       A.   I think I've already described that I
10  talked to Dr. Singh and I've also reviewed the      11:24AM
11  documents in this case.
12      Q.   What documents did you review?
13      A.   The ones that come to mind related to
14  potential design-arounds would be the one that I
15  described to you earlier that was produced by       11:25AM
16  Samsung that shows an 18- to 24-month design
17  period.
18      Q.   Did that document speak about '915
19  specifically?
20      A.   No, not to my recollection.                11:25AM
21      Q.   In your report you assumed that Samsung
22  would start designing around Apple's patents
23  beginning on the latest of the dates of issuance
24  of the patent, the date Samsung first sold the
25  product, then infringed the patent or the date      11:26AM

Highly Confidential - Outside Counsels' Eyes Only

Page 131

1  when Samsung received actual notice; is that
2  correct?
3      A.  That is correct.
4      Q.  Okay.  Why did you choose these dates?
5      A.  Well, we'd have to take them                    11:26AM
6  one-by-one.  I can't choose a date before the
7  date of notice because you can't start designing
8  around a patent until you know of its existence
9  and the fact that you are infringing.  I can't
10 start designing around a patent that hasn't yet   11:26AM
11 issued, and so those are the two that I think
12 drive the calculation for the most part.
13     Q.  You got the notice dates from the
14 Court's March 1, 2013, order; is that right?
15     A.  I did.                                          11:27AM
16     Q.  Okay.  The dates identified by the
17 order are not the dates that Samsung actually
18 learned of the patents, are they?
19     A.  I don't know what you're talking about.
20     Q.  Aren't these the earliest dates              11:27AM
21 supported by the trial evidence in which Apple
22 provided notice to Samsung on the patents
23 pursuant to the statute?
24     A.  Say that again, the earliest dates that
25 Samsung...                                              11:27AM

Highly Confidential - Outside Counsels' Eyes Only

Page 133

1   drives the notice dates in this case.

2       Q.  You also prepared a set of calculations

3   assuming that the design period would begin on

4   the later of when the relevant patent issued or

5   the date when Samsung first sold a product that                11:29AM

6   infringed the patents at issue; is that correct?

7           THE WITNESS:  I'm going to have to have

8   you read that one back, please.

9                       (Record read.)

10          THE WITNESS:  I'm not following your                   11:29AM

11  question.  Do you have a particular calculation

12  in mind?

13  BY MS. MAROULIS:

14      Q.  So you performed calculations where

15  design-around period starts at the notice date,                11:29AM

16  correct?

17      A.  I did.

18      Q.  Okay.  You also prepared alternative

19  calculations where those design-around periods

20  start on a different date; is that right?                      11:29AM

21      A.  I have an alternative calculation that

22  shows the design-around periods starting as

23  Mr. Wagner alleges prior to the notice dates.

24      Q.  Okay.  Why did you prepare this

25  alternative set of calculations?                               11:30AM

Highly Confidential - Outside Counsels' Eyes Only

Page 134

1    A.   I expected Mr. Wagner to make that
2  argument and wanted to have available to the
3  judge, if she needs it, the calculation that
4  would show what the result would be if you
5  started with that assumption.                           11:30AM
6    Q.   Do you believe that calculation's
7  appropriate?
8    A.   I don't think so.  I don't think it's
9  logical to assume that Samsung could start
10 designing around a patent that it didn't yet            11:30AM
11 have notice about.
12   Q.   Okay.  Do you agree that beginning a
13 design-around period on that date as opposed to
14 your other calculated dates decreases your lost
15 profits analysis by 300 million?                        11:31AM
16   A.   I can look it up to give you the exact
17 number, but I certainly would agree with you
18 that it decreases the total damages number.
19   Q.   It decreases it substantially, correct?
20   A.   Yes, it does.                                    11:31AM
21   Q.   Lost profits analysis requires
22 reconstructing the market as it would have been
23 without the infringing product, correct?
24   A.   It does.
25   Q.   Okay.  This is called a "hypothetical           11:31AM



Page 166





Page 168

Highly Confidential - Outside Counsels' Eyes Only

Page 240



Highly Confidential - Outside Counsels' Eyes Only

Page 274

1  this case, because at the time, he was looking
2  at a much broader set of product than just the
3  seven that are remaining in this case.
4      Q.  He didn't do a product-by-product
5  calculation, did he?                                    03:29PM
6      A.  That's correct.  There were too many
7  products involved at that time.
8      Q.  So it's not simply that Mr. Musika
9  didn't do the incremental profit for the seven
10 products at issue; he didn't do it for any of           03:29PM
11 the accused products, correct?
12     A.  If you're talking about on a
13 product-by-product basis, that's correct.  He
14 clearly did it on an overall basis, by looking
15 at Exhibit 50 to his report.                            03:29PM
16     Q.  So you agree he did not do it on
17 product-by-product, correct?
18     A.  He did not show the incremental profit
19 margin on any specific product.  He did it on
20 the combined set of products involved in the            03:30PM
21 case at that time.
22     Q.  Okay.  In your report you state that
23 the proper basis is to calculate gross profits.
24         If that is the case, why do you also
25 calculate the incremental profits?                      03:30PM

Highly Confidential - Outside Counsels' Eyes Only

Page 276

1  specifically to the products left in the case.
2      Q.  Is it your opinion that only the
3  expenses you've deducted to calculate Samsung's
4  incremental profits are necessary for Samsung to
5  sell an additional unit for each of the seven        03:32PM
6  devices?
7          THE WITNESS:  I'm sorry.  I need to
8  have you read that back, please.
9          (Record read.)
10         THE WITNESS:  If I understand your           03:32PM
11 question correctly, I believe that my analysis
12 of the incremental profit margin has properly
13 deducted those costs that would increase from an
14 additional sale of that product.
15 BY MS. MAROULIS:
16     Q.  And Mr. Musika could have made the
17 product-by-product calculation if he wanted to,
18 correct?
19     A.  I don't know how many products were in
20 the case at that time that would have required       03:33PM
21 such a calculation, but I suppose that would
22 have been a possibility.
23     Q.  And he did not do that, right?
24     A.  He did not do that.
25     Q.  Your calculation of Samsung's               03:33PM