QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE PORTIONS OF MICHAEL WAGNER'S AUGUST 26, 2013 REBUTTAL REPORT**<br><br>**Date**: October 10, 2013<br>**Time**: 1:30 p.m.<br>**Place**: Courtroom 8, 4th Floor<br>**Judge**: Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

Apple's Motion to Strike alleges that Mr. Wagner's August 26, 2013 Report presents "new data, new methods, and new theories." Mot. at 1:5-7. Apple is incorrect. For the reasons that follow, each of Mr. Wagner's opinions, methods, and theories were disclosed in his prior reports or at trial. Where a minor change has been made, it was done solely in light of the jury's verdict, trial evidence, or to respond to new and unauthorized opinions by Ms. Davis. Apple's Motion overreaches in the hopes that the jury never gets to hear powerful criticisms of Ms. Davis's deliberately convoluted opinions, and should be denied.

### A. Mr. Wagner's Opinions Are Not New

*Mr. Wagner's Summation Methodology*. Apple alleges that Mr. Wagner's summation methodology is new. *See* Mot. at 4:5-7; 5:23-25. Apple is incorrect. Mr. Wagner's summation methodology was disclosed in Schedules 5.4 and 5.5 of his April 2012 Report.

*Mr. Wagner's Notice Date Assumptions*. Apple moves to strike all of Mr. Wagner's calculations that are based on the assumption of a June 16, 2011 notice date for Samsung products first accused of infringement in Apple's Amended Complaint. Apple argues that these calculations are "new," "contradict[] Mr. Wagner's prior trial exhibit (DX781)," and are "inconsistent with [the notice dates] set forth in the Court's March 1 Order re: Damages." Mot. at 2:16-22. None of these arguments has any merit. Mr. Wagner's April 2012 Report and DX781 both include calculations using April 15, 2011 *and* June 16, 2011 notice dates.[1] Furthermore, the Court's March 1, 2013 Order did not establish "Court-ordered notice dates," as Apple claims. Rather, the Court entered judgment as a matter of law as to "the *earliest notice dates* supported by the evidence" for each patent-in-suit. Dkt. 2271 at 18:12-14 (emphasis added). As the Court recognized in its jury instructions, actual notice requires a determination of "the date each Samsung entity received actual written notice of the patents *and specific products* alleged to infringe." Dkt. 1893 at 57, 75 (emphasis added); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d. 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").

---

[1] *See* Declaration of Anthony P. Alden ("Alden Decl."), Ex. 1 at 2.

Both Apple and the Court have recognized that the date of actual notice is a factual question to be determined by the jury. Dkt. 1206-1 at 26:13-14; Dkt. 1157 at 13:17-18 ("Samsung's objection turns on a factual dispute as to when Samsung received actual notice".) Mr. Wagner's calculations are entirely consistent with the Court's March 1 Order.

*Verdict-Based Non-Infringing Alternatives*. Mr. Wagner addressed non-infringing alternatives in both his April 2012 Report and at trial. *See* April 2012 Rpt. ¶¶ 439-443, 465-468, 475-487; Trial Tr. 3035:11-3038:19, 3053:18-3056:18. Apple asserts that Mr. Wagner is not entitled to consider the jury's verdicts that certain Samsung products do not infringe the patents at issue in the new trial in offering these opinions. Mot. at 9. But Apple's argument is directly contradicted by its own use of the same verdicts for the same purpose. Ms. Davis admits she adjusted Apple's damages claims in light of the jury's verdicts of noninfringement. *See* Davis Rpt. ¶ 92 (adjusting Mr. Musika's lost profits analysis "to account for the jury's verdict" that the Intercept and Galaxy Tab 10.1 4G LTE do not infringe); Alden Decl. Ex. 2, Davis Dep. Tr. 114:20-116:12 (Ms. Davis assumed the Intercept "is a noninfringing alternative" and Galaxy Tab 10.1 4G LTE would have been "an acceptable alternative.") Indeed, neither Ms. Davis nor Mr. Wagner can ignore these noninfringing alternatives under governing Federal Circuit law. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

Apple's argument (Mot. at 6, n.7) that the noninfringing Samsung phones are not noninfringing alternatives is without merit. Besides being inconsistent with its own position, Apple's argument is a *non-sequitur*. If the jury concluded that the phones did not infringe because they did not perform the functions to which the patents are directed, much less the specific and narrow functionality recited in the patent claims, then these phones are noninfringing alternatives. Mr. Wagner noted this very point at deposition. *See* Olson Decl. Ex. B at 801:16-20 ("Q. You can't tell us what they would have found about the way the function was performed that caused them to find it not to infringe; correct? A. No, but under that possibility, then there would be a noninfringing alternative.")

*Mr. Wagner's Method of Calculating D'305 Patent Royalty*. Apple claims that Mr. Wagner's opinion that the "Cost to Re-Design All Icons on 13 Phones" is $251,580 is "a new

1  method to calculate damages." Mot. at 7. Not so. In Mr. Wagner's April 2012 Report, he stated
2  that the cost to design new icons is $420 per icon. April 2012 Rpt. ¶ 530; *see also id.* ¶ 483 and n.
3  897 (citing Schedules 13.6 and 13.7). Schedule 17 to the April 2012 Wagner Report disclosed the
4  number of icons on each phone. Mr. Wagner's current report simply multiplies the number of
5  icons on the phones at issue in the new trial (599) by the cost to design new icons that was
6  disclosed in the April 2012 Report ($420) to arrive at a total of $251,580. *See* August 2013 Rpt.,
7  Schedules 13.5-NT, 1-NT, 13-NT. Because the methodology and figures have not changed since
8  Mr. Wagner's April 2012 Report, this opinion is not new and there is no basis to strike it.

9  *Mr. Wagner's Opinions on Fixed and Variable Costs.* Apple asserts that Mr. Wagner's
10 opinions on fixed versus variable costs are new. Mot. at 3:13-15. Apple is mistaken. Mr. Wagner
11 addresses fixed versus variable costs in paragraphs 29-33 of his May 2012 Supplemental Report.
12 While Mr. Musika referred to Samsung's "incremental profits," he never based any damages
13 calculations on it. Therefore, Mr. Wagner's criticisms of Mr. Musika's calculation were limited,
14 because it had no impact on Apple's damages claims. However, Ms. Davis's Report *for the first*
15 *time* includes damages calculations based on this theory. Dkt. 2391-1 at 5:3-19; August 2013 Rpt.
16 ¶¶ 255-256. To properly respond to these new calculations, Mr. Wagner was required to seek
17 additional information from Samsung employees (*id.* at ¶ 257), and to offer a more detailed
18 explanation of why the theory is fundamentally misplaced, including with respect to its use of the
19 distinction between fixed and variable costs. Apple's attempt to preclude Samsung from
20 responding to Apple's violation of the Court's instruction to include "no new calculations" should
21 be rejected. *See* Alden Decl. Ex. 3, 4/29/13 CMC Tr. at 57:24-25.

22 *Mr. Wagner Opinions on Samsung's Expenses*. In paragraphs 395-397, 399 and 408 of his
23 August 2013 Report, Mr. Wagner discusses his methodology for identifying deductible expenses
24 to calculate Samsung's profits. Apple moves to strike these paragraphs, claiming they contain
25 "new and modified opinions on expenses and financial data." Mot. at 5:6-22. In fact, each of
26 these paragraphs sets forth the exact same opinions using the exact same methodology and the

1 exact same categories of deductible expenses as in Mr. Wagner's April 2012 Report.[2]  Paragraphs
2 395-397 merely remove the accounting terms "direct" and "indirect" to describe certain categories
3 of deductible costs.  Those accounting terms have no impact on Mr. Wagner's opinion that these
4 costs are "necessary for the manufacture of the accused products," and therefore properly
5 deductible expenses.  An indirect cost for accounting purposes may have the requisite nexus to the
6 sale or manufacture of the infringing product to be deductible for the purposes of calculating
7 infringer's profits.  *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998)
8 (upholding deduction of direct and indirect expenses to arrive infringer's profits).  Indeed, Mr.
9 Wagner removed the accounting terms "direct" and "indirect" to avoid any potential confusion
10 with the relevant final jury instruction, which states that deductible expenses include costs
11 "directly attributable to the sale or manufacture of the infringing products resulting in a nexus
12 between the infringing products and the expense."  Dkt. 1893 at 72:12-14.  Similarly, paragraphs
13 399 and 408 merely add a sentence tracking the above quoted language from the Court's final jury
14 instruction, which is consistent with Mr. Wagner's original opinions.  Mr. Wagner's opinions and
15 methodologies have not changed.

16 *Mr. Wagner's Discussion of Retail Price Differences.*  Contrary to Apple's suggestion, Mr.
17 Wagner's April 2012 Report addressed both wholesale *and retail prices*.  See April 2012 Rpt. ¶¶
18 195-198 (evidence of Apple's higher retail prices); ¶¶ 199-200 (evidence of Samsung's lower
19 retail prices); Figs. 30 and 31 (evidence of differences between retail pricing levels for Apple and
20 Samsung); *see also* ¶ 413 ("[T]his price difference has manifested itself to consumers in the
21 generally higher price of Apple iOS handsets when compared to Android handsets.").  At trial, Mr.
22 Wagner also addressed evidence of Apple's higher retail prices.  See Trial Tr. 3049:4-3051:4
23 (evidence showing higher average retail prices for Apple phones and tablets compared to
24 Samsung's).  Mr. Wagner's focus on retail price differences during 2011 for products at issue in
25 the new trial is a necessary response to Ms. Davis's changes to Apple's lost profits periods.  As
26 explained in Samsung's Motion to Strike (Dkt. 2391-01 at 1:14-4:5), Ms. Davis replaced Mr.

---

[2]  *See* Alden Decl, Ex. 1 at 7.

1  Musika's design around periods with new ones, and changed Apple's lost profits periods
2  accordingly.  Apple cannot be heard to argue that Ms. Davis should be permitted to change Mr.
3  Musika's lost profits periods, but Mr. Wagner is not permitted to use rebuttal evidence directed to
4  Ms. Davis's new periods.  *See* Wagner August 2013 Rpt. Fig. 21, Schedules 15.3-NT and 15.4-NT
5  (addressing ASP during the new design around periods).

6           **B.       Mr. Wagner Does Not Use Excluded Methodology**

7           Apple claims that Mr. Wagner's royalty for the D'677 patent "uses a modified version of
8  allocation methods previously excluded by the Court following Apple's *Daubert* motion."  Mot. at
9  7:14-16.  But Apple does not tell the full story.  Apple's *Daubert* motion challenged Mr. Wagner's
10 opinions on three topics:  (1) disgorgement of profits under 35 U.S.C. § 289; (2) trade dress
11 damages; and (3) demand for the patented features when calculating lost profits.  Dkt. 1157 at
12 8:24-9:3.  Mr. Wagner's D'677 royalty opinion has nothing to do with any of these.  It concerns
13 reasonable royalty – an area Apple did not challenge and on which the Court did not rule.  *See id.*
14 at 9:4-17, 10:3-4.  Nor did the Court's *Daubert* Order exclude the methodology that Mr. Wagner
15 uses.  The Court was concerned about "Mr. Wagner's calculations" and "the reliability of Mr.
16 Wagner's arithmetic."  *Id.* at 9:27-28.  Mr. Wagner's alternative royalty studiously avoids the
17 calculations and arithmetic the Court found problematic.  Mr. Wagner makes this clear in his
18 Report:  "I have not included in my analysis the two opinions on apportionment that I understand
19 Judge Koh addressed in her Daubert Order."  August 2013 Rpt. ¶ 565.  Instead, Mr. Wagner's
20 royalty draws directly on the underlying consumer survey data, without applying any arithmetic or
21 calculations to them.  The Court found such data to be reliable.  Dkt. 1157 at 9:23-25 ("The Court
22 finds that the underlying consumer survey data on which Mr. Wagner relies for his calculations are
23 the kind of data on which 'experts in the particular field would reasonably rely.'  Fed. R. Evid.
24 703.").  Having been careful to avoid the calculations the Court found objectionable last time,
25 there is nothing about Mr. Wagner's opinion that is inconsistent with the Court's Order.   Nor is
26 Mr. Wagner's methodology new.  It was disclosed in Mr. Wagner's April 2012 Report (¶¶ 532-
27 536) and has simply been updated to conform to the Court's *Daubert* Order.
28

**C.     Mr. Wagner's Opinions That Respond to the Jury Verdict, New Davis Opinions or New Apple Admissions**

*Mr. Wagner's Break-Out of Gem Units By Carrier.*  Apple's motion to strike Mr. Wagner's break-out of Gem units by carrier (Mot. at 5:26-27) should be denied.  Mr. Wagner's April 2012 Report stated that the Gem phone was released on U.S. Cellular (Fig. 20), and also cited an article describing a Verizon release (Schedule 6.3 n. 15).  Mr. Musika calculated damages on every model of Gem sold in the U.S.  But at trial, Apple introduced only the Gem model sold on Verizon.  *See* JX1020 (Gem phone for Verizon); Dkt. 1931 (Amended Verdict Form referring to JX1020).  As a result, the jury found only that the version of the Gem sold to Verizon was infringing, and made no finding with respect to versions that were sold to U.S. Cellular or Alltel.  Mr. Wagner's break-out reflects the jury's verdict, and the limited number of Gem sales on Verizon for which Apple is entitled to damages based thereon.

*The Apple-HTC Patent License Agreement.*  Apple asks the Court to strike all references in Mr. Wagner's Report to the Apple-HTC Patent License Agreement.  Mot. at 4, 6.  But it is Apple that opened this door.  Ms. Davis cites the Agreement in her report, stating: ■

■

■

■

■

■                                *See* Davis Rpt. ¶ 185, n. 274.  There was no need for Ms. Davis to express any opinion about the HTC Agreement.  Now that she has, Mr. Wagner is entitled to respond.

*References to Reexamination Materials.*  Apple moves to strike purported "new design-around theories based on post-trial patent reexaminations and other new post-trial data."  Mot. at 1:17-18.  Apple's motion should be denied.  As an initial matter, Apple does not challenge Mr. Wagner's opinion regarding a design around to the '915 patent based on trial testimony by Apple's expert Dr. Singh.  August 2013 Rpt. ¶ 491 (citing to Section IV.A.1.c)(1), which includes

¶ 39 quoting Dr. Singh's trial testimony).³  Apple challenges only Mr. Wagner's reference to reexamination materials and discussions with Samsung's technical experts.  But Mr. Wagner does not rely on the '915 reexamination materials or further discussions with experts for any opinions.  Rather, they simply corroborate Ms. Davis's own description of the patent (*see* August 2013 Rpt. ¶¶ 36, 38), Dr. Singh's trial testimony concerning the patent's scope (*id.* at ¶ 39), and Mr. Wagner's prior opinions (*id.* at ¶¶ 478, 492).

Moreover, Apple should not be permitted to take one position as to the scope of the patents before the Patent Office and a different position before the new jury.  The patent's scope is the patent's scope–it does not change depending on the audience or Apple's strategic interest.  *See*, *e.g.*, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.") (citations omitted).  As the Court recently observed:  "the central function of a trial is to discover the truth."  *See* Alden Decl. Ex. 4, 8/21/13 CMC Tr. at 45:10-12.  Apple has taken a position in the Patent Office as to the '915 patent's scope.  It should not be permitted to mislead the jury by taking a different *and broader* position in the new trial.

Mr. Wagner's reference to the '381 reexamination is proper too.  As Mr. Wagner points out, Apple's representations to the Patent Office to overcome reexamination imposed significant additional limitations on the patent's scope.  August 2013 Rpt. ¶¶ 24-27.  Mr. Wagner's Report discusses a design around that is now feasible in light of Apple's new representations and the new reduced scope of the patent.  *Id.* at ¶¶ 477-478.  Importantly, Mr. Wagner does not rely on this design around to change any of his opinions, but simply states that it "corroborates the reasonable royalty conclusion" previously stated in his April 2012 Report.  *Id.* at ¶ 478.  Both Apple and the Patent Office have now further defined the scope of the '381 patent and that definition should govern the new trial.

---

³ At trial, Dr. Singh opined for the first time that the '915 patent covers a "scroll vs. gesture" function only where *every input above one* is interpreted as a gesture, as opposed to a scroll.  *See* Trial Tr. at 3622-3624.  Ms. Davis herself relies extensively on trial testimony.  *See* Davis Rpt. ¶¶ 131-139, 164-168, 252-257.

DATED: September 12, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC