# EXHIBIT 2

Highly Confidential - Outside Counsels' Eyes Only

Page 1

1         UNITED STATES DISTRICT COURT
2        NORTHERN DISTRICT OF CALIFORNIA
3              SAN JOSE DIVISION
4  APPLE, INC., a California
5  Corporation,
6           Plaintiff,        Civil Action No.
7    vs.                      11-CV-01846-LHK
8  SAMSUNG ELECTRONICS CO., LTD.,
9  et. al.,
10          Defendants.
11  _____/
12
13
14  HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY
15      VIDEOTAPED DEPOSITION OF JULIE DAVIS
16              CHICAGO, ILLINOIS
17           MONDAY, AUGUST 26, 2013
18
19
20
21
22
23  Reported by:
24  DEBORAH HABIAN, RMR, CRR, CLR
25  JOB NO. 65086

Page 2

1
2
3
4
5               August 26, 2013
6                8:33 a.m.
7
8
9       The videotaped deposition of Julie Davis,
10  held at the offices of QUINN EMANUEL URQUHART &
11  SULLIVAN, 500 West Madison Street, Suite 2450,
12  Chicago, Illinois, before Deborah Habian, a
13  Registered Merit Reporter, a Certified Realtime
14  Reporter,  Certified LiveNote Reporter and
15  Certified Shorthand Reporter of the State of
16  Illinois.
17
18
19
20
21
22
23
24
25

Highly Confidential - Outside Counsels' Eyes Only

Page 3

1        A P P E A R A N C E S:
2
3   FOR APPLE, INC.
4
5        MORRISON & FOERSTER
6          BY:   RACHEL KREVANS, ESQ.
7          425 Market Street
8          San Francisco, California   94105
9                 and
10
11         BY:   ERIK OLSON, ESQ.
12         755 Page Mill Road
13         Palo Alto, California   94304
14
15
16
17         WILMERHALE
18         BY:   JAMES QUARLES, III, ESQ.
19         1875 Pennsylvania Avenue
20         Washington, D.C.   20006
21
22
23
24
25

Highly Confidential - Outside Counsels' Eyes Only

```
                                                          Page 4
 1    (CONTINUED)
 2              A P P E A R A N C E S:
 3
 4   FOR THE SAMSUNG ENTITIES:
 5
 6          QUINN EMANUEL URQUHART &
 7          SULLIVAN
 8          BY:   ANTHONY ALDEN, ESQ.
 9                VICTORIA MAROULIS, ESQ.
10          865 South Figueroa Street
11          Los Angeles, California   90017
12
13
14
15
16
17
18
19   ALSO PRESENT:
20            GREGORY A. PINSONNEAULT
21            DIRECTOR/CEO LITINOMICS
22
23            JEREMY MANGAN
24            VIDEOGRAPHER
25
```

Highly Confidential - Outside Counsels' Eyes Only

Page 113

1       THE WITNESS:  Well, unless the accused
2  infringer learns of a patent and knows that it
3  is accused of infringing that patent, it can't
4  begin a design-around, and my understanding of
5  "date of notice" is that that is not only the            11:03AM
6  awareness of the patent but also some
7  notification that the accused infringer is
8  infringing that patent.
9  BY MS. MAROULIS:
10     Q.  If an accused infringer knows about the          11:03AM
11 patent but is given notice two months later, do
12 you believe it's appropriate to start
13 noninfringing alternatives analysis as of the
14 date the infringer knew about the patent or the
15 date the notice was given?                               11:03AM
16     A.  In your hypothetical, am I to assume
17 that the accused infringer not only knew about
18 the patent but knew that it was accused of
19 infringing the patent at that earlier date?
20     Q.  Yes.                                             11:03AM
21     A.  I don't know how to answer that
22 question, because it seems to me that then that
23 would be the notice date.
24     Q.  You understand the notice date is a
25 term of art, right?                                      11:04AM

Highly Confidential - Outside Counsels' Eyes Only

Page 114

1   A.   That's my understanding.
2   Q.   And that's the date when a patentee
3   provides accused infringer with notice that the
4   infringer's specific products allegedly infringe
5   specific patents, correct?                           11:04AM
6   A.   That's generally my understanding of
7   that term.
8   Q.   In the hypothetical, if an infringer
9   knew prior to the notice date that the product
10  may infringe and started a design-around, would    11:04AM
11  it be appropriate to calculate availability of
12  noninfringing alternatives as of that date or as
13  of the notice date?
14  A.   If the infringer knew about the patent
15  and knew that it was accused of infringing that   11:04AM
16  patent, then it could start design-around at
17  that point.  I'm not aware of any facts in this
18  case that there was such knowledge prior to the
19  dates of notice provided by the judge.
20  Q.   Okay.  You stated in your report that    11:05AM
21  you asked Invotex, which is Mr. Musika's
22  company, to stop the accumulation of lost
23  profits for Galaxy Tab 7.0 products in July 2011
24  based on the jury's findings that Samsung's
25  Galaxy Tab 10.1 4G LTE did not infringe Apple's   11:05AM

Page 115

1   patents; is that correct?
2        A.   Yes.
3        Q.   Why did you do that?
4        A.   I have assumed, for purposes of that
5   lost profits calculation, that the noninfringing        11:05AM
6   Galaxy tablet that was introduced in July
7   of 2011 would have been an acceptable
8   alternative for the buyers of the infringing
9   tablet and, therefore, they would have purchased
10  that product instead.                                   11:06AM
11       Q.   You're aware that Samsung's Intercept
12  phone was found not to infringe any Apple
13  patents; is that correct?
14       A.   I'm aware of that.
15       Q.   And that product was first sold in June       11:06AM
16  2010; is that right?
17       A.   I'd have to look that up to know
18  exactly when it was first sold.
19       Q.   Does that sound correct to you?
20       A.   I don't know one way or the other.            11:06AM
21       Q.   Okay.  Why did you not calculate lost
22  profits on sale of the 12-something -- Samsung
23  phones at issue after that date?
24       A.   Why did I what?
25       Q.   I'm sorry.  Why did you calculate lost        11:06AM

Highly Confidential - Outside Counsels' Eyes Only

Page 116

1  profits on sales of the 12 Samsung smartphones
2  at issue after that date?
3      A.  Because while that is a noninfringing
4  alternative, that doesn't mean that every buyer
5  who purchased an infringing phone would have         11:07AM
6  instead purchased an Intercept and so,
7  therefore, I have included the Intercept in the
8  market share data and given its appropriate
9  share as exhibited in the real world, but I do
10 not believe that every purchaser of an               11:07AM
11 infringing phone would have instead chosen an
12 Intercept.
13     Q.  And why not?
14     A.  The Intercept was not a particularly
15 popular product.  Therefore, I don't think it        11:07AM
16 would have taken the sales of all of the Samsung
17 products.  I think --
18     Q.  What is your --
19     A.  -- it would have been part of the
20 market share of other alternatives, but it           11:07AM
21 wouldn't have taken all of them.
22     Q.  What is your basis for saying that
23 Intercept was not a popular phone?
24     A.  The sales of that phone.
25     Q.  What is your basis for saying that           11:08AM

Highly Confidential - Outside Counsels' Eyes Only

Page 117

1   customers would not have switched to Intercept

2   in the same way they switched to a different Tab

3   that you did take into account?

4       A.  I think the Intercept is one of many

5   phones that would have been available in the         11:08AM

6   marketplace, and I have used all those phones as

7   part of my market share including Intercept.

8       Q.  I'm not sure I understand your answer.

9   You used the Galaxy Tab in one instance to cut

10  off the sales when the noninfringing alternative     11:08AM

11  was available, but you did not do the same with

12  Intercept, correct?

13      A.  I could have done with the Tab what I

14  did with the Intercept.  I thought it was more

15  conservative to do it the way I did it.  I do        11:08AM

16  not think the Intercept was a popular enough

17  phone that it would have commanded the sales of

18  12 million more infringing phones sold by

19  Samsung.

20      Q.  Other than your opinion that Intercept       11:09AM

21  was not a popular phone, there was no basis not

22  to cut off lost profits based on the

23  availability of that noninfringing alternative,

24  correct?

25      A.  I disagree with you.                         11:09AM