QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

CASE NO. 11-cv-01846-LHK

**SAMSUNG'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE***

**Date**: October 17, 2013
**Time**: 1:30
**Place**: Courtroom 8, 4th Floor
**Judge**: Hon. Lucy H. Koh

**NOTICE OF MOTIONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 17, 2013, at 1:30 p.m., or as soon as the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") will, and hereby does move the Court for an order to exclude:

1. Evidence and argument concerning Samsung's alleged copying and willfulness;
2. Evidence and argument contradicting Apple's prior admissions during the first trial and reexamination concerning the scope of the '915 and '381 patents;
3. Evidence and argument seeking lost profits; and
4. Evidence and argument relating to valuations of Apple's brand performed by Interbrand.

These motions are based on this Notice of Motions, the supporting Memorandum of Points and Authorities, the Declaration of Victoria Maroulis ("Maroulis Decl.") in Support of Samsung's Motions *in Limine* dated September 12, 2013 and exhibits thereto; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

**RELIEF REQUESTED**

Pursuant to the Federal Rules of Evidence, Samsung seeks an Order excluding: (1) evidence and argument concerning Samsung's alleged copying and willfulness; (2) evidence and argument contradicting Apple's prior admissions during the first trial and reexamination concerning the scope of the '915 and '381 patents; (3) evidence and argument seeking lost profits; and (4) evidence and argument relating to valuations of Apple's brand performed by Interbrand.

DATED: September 12, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria MaroulisWilliam C. Price
Michael T. Zeller

Attorney for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

**TABLE OF CONTENTS**

**Page**

A. Motion #1: To Exclude Evidence and Argument of Copying and Willfulness ..... 1

B. Motion # 2: To Exclude Evidence and Argument Broadening the Scope of the ‘915 and ‘381 Patents in the New Trial ..... 4

1. The ‘915 Patent ..... 4

2. The ‘381 Patent ..... 5

C. Motion # 3: To Exclude Evidence And Argument Seeking Lost Profits ..... 7

D. Motion # 4: To Exclude All Opinion and Argument Based on the Valuation of the Apple Brand Prepared By Interbrand ..... 10

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370 (Fed. Cir. 2012) ........ 8

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 909 F. Supp. 2d 1147 (N.D. Cal. 2012) ........ 2

*Calico Brand, Inc. v Ameritek Imports, Inc.*, 2013 WL 3746163 (Fed. Cir. July 18, 2013) ........ 8

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) ........ 8, 9

*ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486 (D. Del. 2010) ........ 3

*Kilopass Tech. Inc. v. Sidense Corp.*, 2012 WL 1534065 (N.D. Cal. May 1, 2012) ........ 4

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ........ 4, 5, 6

*Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541 (N.D. Cal. 2009) ........ 7

*Pescatore v. Pan Am*, 97 F.3d 1 (2d Cir. 1996) ........ 3

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ........ 2

*Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) ........ 4

*Rogers v. Raymark Indus. Inc.*, 922 F.2d 1426 (9th Cir. 1991) ........ 11

*Rolls-Royce PLC v. United Techs. Corp.*, Case No. 10-457, 2011 WL 1740143 (E.D. Va. May 4, 2011) ........ 7

*Samson v. NAMA Holdings, LLC*, 637 F.3d 915 (9th Cir. 2010) ........ 4

*Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991) ........ 7

*Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355 (Fed. Cir. 1992) ........ 4

**Statutes**

35 U.S.C. § 287 ....................................................................................................9

Fed. R. Evid. 401 ....................................................................................................11, 12

Fed. R. Evid. 402 ....................................................................................................7, 9

Fed. R. Evid. 403 ....................................................................................................7, 8, 9, 10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to the Court's August 22, 2013 Case Management Order (Dkt. No. 2369), Samsung moves *in limine* to exclude the categories of evidence and argument described below.

**A. Motion #1: To Exclude Evidence and Argument of Copying and Willfulness**

Apple intends to rehash its allegations that Samsung copied its products even though copying is irrelevant to the calculation of damages and outside the narrow scope of this retrial. 04/29/13 CMC Tr. 43:14-15. The impropriety of this tactic is belied by Apple's own consistent arguments that copying is relevant to liability, not damages. Apple's copying and willfulness allegations should be excluded under Federal Rules of Evidence 401-403 because any probative value is vastly outweighed by the risk of prejudice and wasted time.

Remarkably, Apple designated testimony from *fourteen* witnesses on the improper topic of "Samsung's awareness, consideration, analysis, and emulation of Apple's designs, technology, products, and/or intellectual property." Maroulis Decl. Ex. 1. In addition, Apple lists at least six potential live witnesses who gave testimony at the trial about Samsung allegedly copying or "ripping off" Apple. *Id*.. Roughly one-third of the documents on its exhibit list relate to alleged copying, which is more than *triple* the number of exhibits on its list that actually relate to the parties' financials. *Id*., Ex. 2. Finally, Apple's primary witness, Julie Davis, intends to assert that Samsung's alleged copying "corroborates" her conclusion that "the patented features are important to consumer demand," and relies on this copying "evidence" in connection with *Georgia-Pacific* factor nine as "further support [for] the conclusion that Apple's patents provided significant advantages." Davis Rpt. ¶¶ 136, 237.

Throughout this action, Apple has asserted that copying allegations relate only to liability. Prior to trial, Samsung moved to exclude copying evidence and Apple asserted numerous grounds for relevance related to infringement, validity, and willfulness, but never once mentioned damages as a basis for admissibility. Dkt. 1206 at 3-5. The Court ruled that copying evidence was admissible only as "a relevant secondary consideration" of nonobviousness and as "relevant to establish willfulness," neither of which relate to issues in the retrial. 7/18/2011 Hrg. Tr. 117:23-119:2. Indeed, the Court rejected the specific theory Apple now intends to advance by holding

that copying evidence shows only "what Samsung *thought* would attract purchasers, not what *actually* attracted purchasers," and thus "does not establish that those features actually drove consumer demand." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 909 F. Supp. 2d 1147, 1156 (N.D. Cal. 2012). That holding should preclude Ms. Davis from relying on the copying "evidence" to prove demand.

During trial, Apple repeatedly argued that Samsung's alleged copying demonstrated infringement, validity, and willfulness. *See*, *e.g.*, Trial Tr. 4107:16-4108:2-3 ("Copying is not only evidence of infringement, it's evidence of validity"); *id.* at 4133:15-4134:3 ("When you . . . address the issue of reckless disregard, think of the copying documents"). But Apple never referred to copying when urging the jury to adopt its damages calculations. *Id*. at 4128:9-4132:4. In post-trial briefing, Apple similarly relied on alleged copying evidence to defend the jury's findings on liability, validity and willfulness (Dkt. 2050 at 6-7, 10, 14, 16), but not to defend the jury's damages awards (*id.* at 18-22). Permitting Apple to change its position and put in all of this supposed copying evidence as proof of consumer demand would violate the Court's rule that "no one is going to get a do-over in this case." 4/29/13 CMC Tr. 43:14-15.

Moreover, even if copying could be relevant to consumer demand for the patented features as a general matter, the documents and testimony Apple uses to support this claim are not related to any product or feature at issue in the retrial. Many of the documents cited in the Davis Report as evidence of alleged copying are unrelated to *any* product features, or make only general references to Apple's "design" or "user interface,"[1] and thus are irrelevant to the value of the specific designs covered by the asserted patents. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute."). Many of the

---

[1] *See, e.g.*, PX34 ("easy and intuitive UI" and "beautiful design"); PX35 ("colorful and vibrant" icons); PX39 ("Improve UX with reference to iPhone"); PX40 (praising iPhone's "UX"); PX47 (Galaxy S "closely resembles the iPhone shape"); PX53 ("Luxurious texture"); PX54 ("user-friendly navigation and visual elements"); PX55 (screenshot of iPhone icons with no discussion of or praise for any features); *see also* PX179, PX2257 (same); PX58 (iPhone's "Design"); PX185 ("importance of exterior design"); PX194 (iPhone's "UX").

documents relate to patents and products not at issue in the new trial,[2] which is another ground for exclusion. *See ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010) (excluding evidence of copying related to unaccused products because "such contentions would cause substantial delay, wasted time, and confusion").

Allowing Apple to re-litigate copying issues creates a serious risk that the jury will award damages designed to punish what it perceives as wrongful conduct, even though wrongfulness and willfulness are irrelevant to Apple's claimed damages. *See, e.g.*, *Pescatore v. Pan Am*, 97 F.3d 1, 16-17 (2d Cir. 1996) ("Because compensatory damages are awarded to compensate the plaintiff, and not to punish the defendant, [in a damages trial] evidence showing the extent of the plaintiff's loss is relevant, while evidence characterizing the misconduct of the defendant is not."); Dkt. 1427, Inst. Nos. 35 and 53 (damages "are meant to compensate the patent holder and not to punish the infringer.") (using N.D. Cal. Model language); Dkt 1427, Inst. No. 18 ("If you decide that any infringement was willful, that decision should not affect any damage award you give.") (same).

Apple's purported copying evidence would also waste substantial trial time. Apple's pretrial disclosures reveal its intention to make copying a central issue in the new trial. Samsung would have to call multiple witnesses and offer other evidence to rebut Apple's copying allegations and attempt to mitigate their prejudicial effects. Opening the door to this liability evidence—which Ms. Davis relies on only as secondary "support" for Mr. Musika's analysis of consumer demand—all but ***guarantees*** that the new trial will become "the same nightmare we've had before." *See* 4/29/13 CMC Tr. 63:11-13. Apple's supposed copying and willfulness evidence and testimony must be excluded under Rules 401-403 and this Court's prior rulings.

---

[2] *See, e.g.,*, PX56 (relates only to D'889 and iPad trade dress); PX59 (same); PX38 (Rogue); PX39 (Alkon); PX40 (Omnia); PX44 (Galaxy S); *see also* PX48, PX53 (same); PX46 (Vibrant); PX57 (Galaxy Tab 8.9); PX59 (Galaxy Tab 10.1); PX194 (Lismore); PX2257 (Galaxy S, Galaxy S II); *see also* PX6, PX172, PX173, PX174, PX177 (press articles regarding Galaxy S, Vibrant, Mesmerize, Galaxy SII, Galaxy Tab 8.9).

**B. Motion # 2: To Exclude Evidence and Argument Broadening the Scope of the '915 and '381 Patents in the New Trial**

During the first trial and during reexamination, Apple made specific admissions concerning the scope of the '915 and '381 patents. All evidence now indicates that Apple intends to disavow those admissions and present a much broader and inaccurate picture of what those patents cover in order to inflate its damages. *See, e.g.*, Davis Rpt. ¶ 27 ("The '381 Patent covers a device with a "rubber banding" or "bounce back" function"). In the interests of fairness, consistency, and judicial integrity, Apple should be judicially estopped from doing so. Specifically, Apple should be precluded from introducing any evidence or argument contradicting its prior admissions as to the scope of the patents, as discussed below.

"Judicial estoppel … precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine extends to statements made in administrative proceedings (*id.* at 604), such as before the Patent Office, *Kilopass Tech. Inc. v. Sidense Corp.*, 2012 WL 1534065 at *6 (N.D. Cal. May 1, 2012), and "to positions taken in the same action or in different actions." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 935 (9th Cir. 2010). "It also applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion." *Id.* (citations omitted). Because judicial estoppel is not peculiar to patent law, regional circuit law applies. *See Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992). Although there is no rigid formula, *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), certain factors are typically considered in determining whether judicial estoppel should apply: "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position." *Id.* And "[t]hird, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

1. <u>The '915 Patent</u>

Apple should be judicially estopped from suggesting to the new jury that claim 8 of the

'915 patent covers the functionality of using a single finger for scrolling and/or multiple fingers for zooming/gesturing in general. During the first trial, Apple admitted that the '915 patent does *not* encompass the concepts of "scrolling" or "a gesture, a scale, a zoom, or detecting those." Trial Tr. 1855:25-1856:2, 1856:21-1857:1 (Singh). Rather, the invention was limited to source code that distinguishes between a single input point (scroll) and more than one input point (always gesture). *Id.* at 1822:22-1826:22 (describing this as the "quintessential test," a "very important test," and an "all-important test"). At trial, Apple expressly distinguished the prior art on this basis, *i.e.*, claim 8 required two or more fingers to zoom/pan, rather than scroll. *See* Trial Tr. 3624:15-18 (distinguishing DiamondTouch because "[c]laim element C says one finger scroll, two or more scales it, or gestures. You put three fingers down, three is greater than two, it should scale. It scrolls."); *id.* at 3627:5-8 (distinguishing the Han reference because, for "claim 8, a certain amount of rigor in terms of code analysis is necessary.").

Apple's representations satisfy each of the factors for judicial estoppel outlined in *New Hampshire*. Apple took a position on the scope of the '915 patent in the first trial to prove infringement and validity. Apple succeeded in persuading the first jury on both of these points. It would unfair and opportunistic for Apple to now claim that the patent is any broader. For example, Apple should be estopped from suggesting to the new jury that the '915 patent covers (a) scrolling, without more, (b) scaling or zooming, without more, (c) all "scroll vs. gesture" operations, and (d) using any number of fingers above one to achieve a scroll, rather than a scale or zoom. Having disclaimed this scope to obtain a verdict of infringement and validity, Apple should not be permitted to recapture it in the second trial to unfairly increase its claimed damages.

2. <u>The '381 Patent</u>

Apple should be judicially estopped from asserting that claim 19 of the '381 patent covers visual "bounce" and "snapback" behavior in general. During the reexamination of the '381 patent, Apple stated that claim 19 "requires executable program instructions rather than just a result achieved on the screen of a device." Dkt. 2339-3 at 191. Specifically, to overcome the *Lira* patent, Apple represented that claim 19 "must include **<u>instructions</u>** for performing translation in the second direction with the recited **<u>stop condition</u>** (*i.e.*, 'until the area beyond the edge of the

document is no longer displayed')." *Id.* at 190 (emphasis original). The Examiner relied on Apple's representations to issue the Reexamination Certificate. Dkt. 2338-10 at 6 ("The Patent Owner's Representatives noted that claim 19, specifically teaches 'instructions for' translating 'until the area beyond the edge of the electronic document is no longer displayed,' . . . The Office noted that though corrective traversal in *Lira* appears to stop when the area beyond the edge of the document is no longer displayed, it is not specifically responsive to instructions requiring said stop condition (area beyond the edge of the electronic document is no longer displayed) but rather a result of instructions to center (*same effect, different cause*).") (emphasis added).

Moreover, at trial, Apple conceded that the '381 patent does not cover all "bounce" effects. Trial Tr. 1783:13-20 (Q. "Aren't there bounce effects that are not covered by claim 19? . . A. Sure. You can have all kinds of things that bounce that don't -- . . . that don't meet the elements of claim 19."). Likewise, Apple admitted that claim 19 does not cover the bouncing that occurs in the Gallery application when pictures are not zoomed. *Id.* at 1784:10-16 ("Q. And in all of the examples that you showed in your videos [to the jury], even the ones that had the, the four-by-four, the user must first zoom in on the stick figure in order to meet the limitations of claim 19 of the '381; right? A. In all of those [videos], the image would have to be bigger than would fit on the screen, yes."); *see also* Maroulis Decl. Ex. 4 at 118:13-19 ("Q. Does a non-zoomed-in photo in the Gallery application in the Samsung products infringe the '381 patent? . . . A. I would have to sit down and do that analysis. I have not done that detailed analysis.").

As with the '915 patent, Apple should be judicially estopped from broadening the scope of the '381 patent in the new trial. Apple took clear positions on the scope of claim 19 in both reexamination and at trial. It overcame the reexamination and obtained a verdict of infringement and validity based on those positions. It would be unfair and inconsistent for Apple to now suggest to the new jury that the patent is any broader. For example, Apple should be estopped from: (a) suggesting that claim 19 covers all "bounce" and "snapback" effects; (b) denying that "bounce" and "snapback" effects can be generated without infringing claim 19; and (c) denying that claim 19 requires that the specific purpose or cause of the computer code that generates the "snapback" effect must be edge alignment.

**C. Motion # 3: To Exclude Evidence And Argument Seeking Lost Profits**

The Court should preclude Apple from seeking lost profits in the new trial. For the products and patents at issue, Apple's lost profits claims are baseless and futile, and if Apple is allowed to argue lost profits to the jury it will only lead to confusion and prejudice. Fed. R. Evid. 402, 403; *see Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 557 (N.D. Cal. 2009) (granting motion *in limine* to preclude plaintiff from presenting certain lost profits evidence at a hearing or at trial). Apple's baseless lost profits theory more than *doubles* the amount it seeks in the new trial. *Compare* Davis Rpt. Ex. 18.1-PT-H (no lost profits) and 17.1-PT-H (adding lost profits). In light of Apple's total failure to demonstrate demand for the specific features claimed in the new trial patents, these extraordinary lost profits figures would only serve to prejudice the jury by making Apple's already inflated damages claims appear more palatable than the relevant evidence shows them to be. Apple's lost profits claims should be excluded.

It would be futile to allow Ms. Davis to testify that Apple is entitled to lost profits because nothing in the record could legally support that conclusion. Fed. R. Evid. 402. *See, e.g., Rolls-Royce PLC v. United Techs. Corp.*, Case No. 10-457, 2011 WL 1740143 (E.D. Va. May 4, 2011) (granting motion in limine because "extensive overreaching" rendered patentee's lost profits claims unsupportable). Apple bears the burden of showing, *inter alia*, that the infringing functionality drives consumer demand for the accused product. *See Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming no lost profits for failure to prove buyers "specifically want" a product with the patented feature). This Court has already found that Apple presented no evidence that the patented features drive consumer demand. "Apple makes no attempt to prove that any more specific element of the iPhone's design, let alone one covered by one of Apple's design patents, actually drives consumer demand." Dkt. 2197 at 8. "Apple did not establish at the preliminary injunction stage that the '381 patent was central enough to Samsung's products to drive sales, and has not established that fact here either. Nor has Apple established that either the '915 or the '163 patents actually drive sales of any Samsung products." *Id.* at 12. Apple cannot meet the "but-for" test for lost profits because Ms. Davis cannot identify any evidence that Apple's patented features in this case drive consumer demand.

More specifically, this Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)). This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." *Id*. at 10.[3] Even survey evidence showing the importance of "ease of use" as a general matter did not establish that infringement of any Apple *patents* caused any economic harm to Apple. *Id*.

Additionally, an award of lost profits requires proving the absence of acceptable non-infringing alternatives. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). The liability verdict shows that 17 Samsung products from the first trial are noninfringing alternatives to the patents at issue in the new trial.[4] In light of this extensive list, Apple simply cannot prove the absence of acceptable non-infringing alternatives. *See Calico Brand, Inc. v Ameritek Imports, Inc.*, 2013 WL 3746163 at *8 (Fed. Cir. July 18, 2013) (vacating lost profits because patentee had no evidence that consumers preferred its patented mechanism to an alternative found in competitors' products). Moreover, the attempt to address the impact of these noninfringing alternatives would cause needless confusion and waste time. Fed. R. Evid. 403.

In its March 1, 2013 Order Re: Damages, the Court determined that the jury declined to award any lost profits on the new trial products. *See* Dkt. 2271 at 9-10. "The sole purpose of this

---

[3] If the Court nonetheless allows Apple to seek lost profits, it should preclude Apple from using documents directed to generic features, such as "ease of use" and "design," to attempt to establish consumer demand for the specific patented features at issue in the new trial.

[4] The 17 products from the first trial that do not infringe at least one of the new trial patents are: Captivate ('163 and D'677 not infringed), Continuum ('163, D'677), Droid Charge (D'677), Epic 4G (D'677), Exhibit 4G (D'677), Galaxy Prevail (D'677), Galaxy S II (Epic 4G Touch) ('163, '381, '915), Galaxy S II (T-Mobile) ('381), Galaxy S II (Skyrocket) ('163, '381, '915), Galaxy S Showcase (i500) ('163, '381, '915), Galaxy Tab 10.1 (4G LTE) ('163, '381, '915), Gem ('163, D'677), Indulge ('163, D'677), Intercept ('163, '381, '915, D'677), Nexus S 4G ('163, D'677), Replenish ('915, D'677), and Transform ('163, '381, D'677). Dkt. 1931 at 2-4, 6.

new trial is to correct for the erroneous notice dates." Dkt. 2316 at 3. Apple's failure to show lost profits is unconnected to the corrected notice dates. Accordingly, Samsung requests that the Court exclude Apple's claims of lost profits on these 13 products.

In the event that the court permits Apple to seek lost profits, and does not strike Ms. Davis's calculations shifting the start of the hypothetical design around period on the basis that they depart from Mr. Musika's methodologies, *see* Dkt. 2391 at 1-4 (Samsung's Motion to Strike), Samsung incorporates its argument from its Motion to Strike that Ms. Davis's opinions are contrary to governing Federal Circuit law, and moves *in limine* to preclude any lost profits calculations based on the shifted design around periods.[5] Apple should not be allowed to inflate its lost profits claim by relying on the irrelevant dates corresponding to the notice requirement of 35 U.S.C. § 287. Fed. R. Evid. 402. In *Grain Processing*, the Federal Circuit's analysis of the hypothetical design around attributed *no significance* to the date on which the patent holder satisfied the actual notice requirement of Section 287. 185 F.3d at 1347, n.3, 1353.

Likewise, this Court's ruling on Apple's failure to prove notice as required by 35 U.S.C. § 287 are irrelevant to lost profits here. Ms. Davis apparently intends to tell the jury that the *Grain Processing* approach – where the "design around [for] a particular patent would begin on the date of first infringement," irrespective of whether the alleged infringer had actual notice – is "illogical." Davis Rpt. ¶ 71. The Court should not allow Ms. Davis to confuse the jury by characterizing Federal Circuit law as "illogical." Fed. R. Evid. 403.

[5] Samsung reserves its *Daubert* challenges to Ms. Davis's new design around opinions to the extent they are not struck altogether by the Court. Because the opinions are new, Samsung could not have challenged them in a prior motion.

**D. Motion # 4: To Exclude All Opinion and Argument Based on the Valuation of the Apple Brand Prepared By Interbrand**[6]

Ms. Davis's "income approach" to calculating a reasonable royalty relies upon Apple's brand value as calculated by a company called Interbrand. *See* Maroulis Decl. Ex. 3 at 231:21-24; Davis Rpt. ¶ 192 (citing Musika Rpt. ¶¶ 182-80 and Ex. 41-S – 41.5-S). However, Ms. Davis candidly admitted during her deposition that she has *no basis* on which to use brand value to determine a reasonable royalty, let alone brand value as calculated by Interbrand. She has "never been in a case where there was a need to determine brand value" before. Maroulis Decl. Ex. 3 at 234:2-9. She has "never tried to value design patents using Interbrand." *Id.* at 234:6-22. She has never been "involved with a brand that was covered by an Interbrand report." *Id.* She has neither used brand value to derive a reasonable royalty, nor has she ever "seen it done" before. *Id.* at 235:6-25. Finally, she does not know whether using brand value to calculate a reasonable royalty has ever been peer reviewed. *Id.* at 234:2-5, 236:7-13.

What is more, Ms. Davis admits that she has *no idea* whether the Interbrand valuation is tied in any way to Apple's intellectual property, let alone the specific intellectual property at issue in the new trial. Ms. Davis's concedes that Interbrand's methodology for determining brand value is a secret. Interbrand's reports "do not disclose exactly how they arrive at their calculations," and Ms. Davis does not know how Interbrand derived its estimates because "that information . . . [is] proprietary to their analyses." *Id.* at 231:25-232:4, 233:15-21. Nor did Ms. Davis bother to speak to anyone at Interbrand to ascertain whether Interbrand included the Apple design patents at issue in the new trial in their valuation. *Id.* at 233:15-234:1. And no witness from Interbrand is on Apple's witness list to fill in these gaps. Maroulis Decl. Ex. 1 (Apple's 09/09/13 Witness List For New Damages Trial).

---

[6] Samsung is cognizant of the Court's ruling prohibiting additional *Daubert* motions beyond Samsung's motion directed to Ms. Davis's qualifications. While Ms. Davis's new admissions since the first round of *Daubert* briefing make clear that her "income approach" does not come close to meeting the *Daubert* standard, the present motion *in limine* uses her admissions to show that Interbrand brand valuation, and Ms. Davis's opinion based on it, lack any probative value and should be excluded to avoid severe prejudice to Samsung under Fed. R. Evid. 402 and 403.

In fact, Ms. Davis has admitted that, to the best of her knowledge, Interbrand's estimate of the value of Apple's brand bears no relationship at all to any specific Apple intellectual property. Ms. Davis believes that Interbrand "doesn't calculate a brand value by adding together all of the components of individual aspects of brand value," and its reports "do not reflect any components of brand IP that are part of that calculation." Maroulis Decl. Ex. 3 at 233:11-21. Instead, she speculated that the Interbrand valuation might speak to the value of Apple's *entire brand*, including aspects of Apple's brand that are not at issue in the new trial. *Id*. at 232:15-233:7. She testified that Interbrand's valuation may include "any aspect of Apple's intellectual property that contributes to the brand, including its design patents, trade dress, trademarks, and some . . . other things." *Id.* If she is correct, then the Interbrand valuation encompasses a massive amount of intellectual property not at issue in the new trial, and it is simply irrelevant to calculating a reasonable royalty for the specific asserted patents at issue. Fed. R. Evid. 401.

Allowing Ms. Davis to testify about "her" income approach to calculating a reasonable royalty would mislead the jury into believing that Ms. Davis has some foundation on which to give that opinion. She does not. She has never used brand value before to estimate a royalty, let alone one estimated by Interbrand. She does not know of any other expert who has ever used Interbrand's brand value to calculate a reasonable royalty. She does not how Interbrand calculates brand value. She does not know whether using Interbrand to calculate a reasonable royalty has ever been peer-reviewed. In short, her "income approach" based on Interbrand's brand value has no foundation and is thus misleading and irrelevant, and should be excluded under Federal Rules of Evidence 401 or 403. *See Rogers v. Raymark Indus. Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) ("Expert testimony, like any other testimony, must meet basic standards of relevance and pass muster under Rule 403.").

Moreover, cross examination to establish these facts would be time consuming and a truly inadequate remedy to combat the threatened prejudice. Allowing the jury to hear Ms. Davis's testimony on the topic would give the Interbrand valuation a patina of credibility and relevance not evident from the report itself and not within Ms. Davis's personal knowledge or experience. And cross-examining Ms. Davis to establish her lack of knowledge will unnecessarily waste

Samsung's limited trial time.

Accordingly, the Court should exclude all testimony, opinions, and argument regarding Ms. Davis's "income approach" to determining a reasonable royalty based upon the Interbrand valuation as irrelevant, unduly prejudicial, potentially misleading to the jury, and an unjustified waste of time. Fed. R. Evid. 401-03.

DATED: September 12, 2013

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *<u>/s/ Victoria F. Maroulis</u>*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC