# Exhibit 5

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4

 5   APPLE INC., a California
     corporation,
 6
                    Plaintiff,
 7
     vs.                          CASE NO.  11-cv-01846-LHK
 8                                          12-cv-00630-LHK
     SAMSUNG ELECTRONICS CO.,
 9   LTD., a Korean business
     entity; SAMSUNG ELECTRONICS
10   AMERICA,INC., a New York
     corporation; SAMSUNG
11   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited
12   liability company,

13                  Defendants.
     _____/
14

15

16        H I G H L Y   C O N F I D E N T I A L

17           A T T O R N E Y S'  E Y E S  O N L Y

18

19      VIDEOTAPED DEPOSITION OF STEVEN SINCLAIR

20             REDWOOD SHORES, CALIFORNIA

21              WEDNESDAY, APRIL 4, 2012

22

23   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

24   CSR LICENSE NO. 9830

25   JOB NO. 47582
```

28

1  recognition and don't necessarily also involve
2  performing searches across databases and applications;
3  correct?
4      A   Yes, I -- I can see that on -- on certain
5  products.
6          MR. QUINN:  Okay.  What's the protocol for
7  marking exhibits in these depositions?
8          MS. LOZANO:  Starting with a brand-new
9  number.
10         MR. QUINN:  So this will be Sinclair 1?
11         MS. LOZANO:  Sinclair 1.
12         MR. QUINN:  Showing you what we'll mark as
13 Exhibit Sinclair 1.  We can mark them later, if that's
14 okay, Madam Reporter.
15         (Document marked S. Sinclair Exhibit 1
16          for identification.)
17         MR. QUINN:  And I'll show you this e-mail
18 string which is Bates numbered '763 -- I won't read
19 the entire number -- through '767.
20     Q   And my question to you is going to be:  When
21 was the last time you saw this document?
22     A   Okay.  I'm sorry.
23     Q   When was the last time you saw this document?
24     A   So I saw this -- something like this
25 yesterday.

Sinclair, Steven

29

1    Q   And did you read it yesterday?
2    A   I read most of it yesterday.
3    Q   So this is an e-mail string in which you
4 participated?
5    A   Yes.
6    Q   And I call your attention to the second page.
7 Beginning down the middle of the page, it says:
8        "April 6, 2010, at 2:37 p.m., Steve Sinclair
9 wrote:"
10       Do you see that?
11   A   Yes, I do.
12   Q   Now, what was happening here was Apple has
13 a -- some type of advertising firm that it was working
14 with; is that true?
15   A   Yes, we do have an advertising firm that we
16 contract with.
17   Q   And this advertising -- there was a person by
18 the name of Eric Starr who was with this advertising
19 firm; is that true?
20   A   I don't know Eric myself, so I've got to
21 assume that, based on his e-mail address, yes.
22   Q   All right.
23       And what was the name of the advertising
24 firm?
25   A   It's called Media Arts Lab.

Sinclair, Steven

1    Q    And is that kind of what -- you sometimes
2    hear the term "captive firms."  Have you ever heard
3    that term?
4    A    No.
5    Q    I mean, is that a firm that works for Apple?
6    A    Yes.
7    Q    And did it work exclusively for Apple back in
8    the April 2010 time frame?
9    A    I don't know if it did or not.
10   Q    And so what was happening here as reflected
11   in this e-mail exchange was that Apple's advertising
12   firm was trying to gear up for some advertising plan
13   to do; correct?
14   A    Yes.
15   Q    And -- and they -- they wanted to come up
16   with some ideas.  They wanted some information about,
17   firsts, if you will, features that Apple was the first
18   to have --
19   A    Uh-huh.
20   Q    -- is that true?
21   A    That's how it reads, yes.
22   Q    And do you -- do you actually -- you say
23   "that's how it reads."  Do you actually recall this
24   interchange at the time?
25   A    I do recall.

32

1  question.
2      Q   My question is:  You were concerned at the
3  time about claiming features as being firsts in Apple
4  phones?
5          MR. PLUNKETT:  Objection; vague --
6          THE WITNESS:  So I --
7          MR. PLUNKETT:  -- mischaracterizes.
8          MR. QUINN:  Q.  Is that true?
9          So is -- it's a question about your state of
10 mind at the time.
11         Is it true that you were concerned at the
12 time about claiming that features on Apple phones were
13 features that Apple was the first to have?
14         MR. PLUNKETT:  Objection to the form.
15         THE WITNESS:  I want to make sure that any
16 first thing -- first features that we claimed were
17 accurate.
18         MR. QUINN:  Q.  And you were concerned to
19 make -- you were concerned about that; correct?
20         MR. PLUNKETT:  Objection; form.
21         THE WITNESS:  I wanted to make sure people
22 understood that there was -- there was work to be done
23 to make sure we could do that.
24         MR. QUINN:  Q.  So -- and you wrote:
25         "Hey Michael, it's tough to approach this

Sinclair, Steven

33

1   with the criteria being 'first.'  I don't know how
2   many things we can come up with that you could
3   legitimately claim we did first."
4           Have I read this correctly so far?
5       A   You're reading what's written, yes.
6       Q   "Certainly we have the first commercially
7   successful versions of many features, but that's
8   different than launching something to market first."
9           I'll just stop.  That's not the entire --
10  your entire response, but did I -- I read that
11  correctly?
12      A   You read the words, yes.
13      Q   Now, you read this document -- you read this
14  language yesterday; is that true?
15      A   Yeah, briefly.
16      Q   Okay.  So let me go back to the question I
17  began with, sir.
18      A   Uh-huh.
19      Q   Do you draw a distinction in your own mind
20  between claiming that a feature is first in a phone
21  and having the first commercially successful version
22  of a feature?  Is that a distinction that you draw,
23  sir?
24          MR. PLUNKETT:  Objection; vague.
25          THE WITNESS:  So I'm having trouble answering

Sinclair, Steven

```
 1    that question because it's missing the context of what
 2    feature we're talking about.
 3            I can give examples of features potentially
 4    that Apple has done better than someone else, not
 5    necessarily first.  And, therefore, you could consider
 6    it the first successful version of that feature.
 7            MR. QUINN:  Q.  Is it true that as of
 8    April 6, 2010, your own state of mind was that you
 9    didn't know how many things we could -- "we" meaning
10    Apple -- "can come up with that you could legitimately
11    claim we did 'first'"?  And does that accurately
12    reflect your state of mind at the time?
13            MR. STONE:  Objection; vague.
14            THE WITNESS:  So I wrote it, so I can't
15    dispute that the words on the paper you -- the
16    definition of "first" is -- is certainly, I think,
17    what we're talking about here.
18            MR. QUINN:  Q.  I mean, when you -- when you
19    said here "it's tough to approach this with the
20    criteria being 'first'," what did you mean by
21    "first" when you wrote that sentence?
22        A   So you can ship something first, and that's
23    the way this seemed to have been approached in the
24    questions they were asking.  Did we send -- did we
25    ship something first?
```

Sinclair, Steven

1            And I was pointing out that it's difficult to
2    come up with whether or not we were the first to ship
3    it, and comparing that to the fact that there are a
4    lot of features that we've produced and reworked and
5    refined that have made a feature actually successful
6    in the marketplace.
7         Q   Isn't it true that your point was that there
8    are many features which Apple really didn't introduce
9    first, but actually, Apple came up with the first
10   commercially successful version of the feature?
11        A   I think --
12            MR. PLUNKETT:  Objection; vague;
13   mischaracterizes.
14            THE WITNESS:  -- I think in general, that
15   statement is -- is true.  Here it's related
16   specifically to the things that they called out in
17   their document at the -- on the last page, things that
18   they wanted to research or validate had been done
19   first.
20            MR. QUINN:  Q.  Well, I mean, it's true,
21   isn't it, that you really thought you needed to do
22   some thinking to see if you could come up with some
23   features that Apple could legitimately claim to have
24   been first on?  Isn't that true?
25            MR. PLUNKETT:  Objection; vague; lacks

Sinclair, Steven

37

6  1           MR. QUINN:  Q.  Let's take a look at the last
   2   sentence of that e-mail we've been looking at.  It
   3   says, and I'll quote:
   4           "I'll keep thinking about it and see if I can
   5   come up with some firsts that are defendable."
   6           Do you see that?
   7       A   Uh-huh, I do.
   8       Q   And the reason that you wrote that is because
   9   when you wrote it, you actually couldn't think of any
  10   features that Apple was the first to implement; isn't
  11   that true?
  12           MR. STONE:  Objection.
  13           MR. PLUNKETT:  Objection; vague; lacks
  14   foundation; argumentative.
7 15           THE WITNESS:  I can't -- I can't say why I
  16   didn't list additional features that we were first.
  17   And you'll notice I put "firsts" in quotes because
  18   that's the -- that's questionable on what -- what the
  19   advertising firm wanted to use.  Did they want to talk
  20   about, again, first to market, or did they want to
  21   talk about something else?
  22           MR. QUINN:  Q.  Well, sir, at the -- at the
  23   time that you wrote that sentence that I just read,
  24   did you have in mind some features that Apple was
  25   first to implement on a phone?

Sinclair, Steven

1           MR. PLUNKETT:  Objection; vague; lacks

2    foundation; mischaracterizes.

3           THE WITNESS:  Well, certainly, you know, I'm

4    the phone product manager, so I'd be thinking about

5    features for the phone.

6           MR. QUINN:  Q.  Sir, my question is:  At the

7    time that you wrote this sentence that I just read to

8    you, did you have in mind some features that Apple was

9    first to implement on a phone?

10          MR. PLUNKETT:  Same objections.

11          THE WITNESS:  I -- again, I'm the iPhone

12   product marketing manager, so I'd be focused on phone

13   features.

14          MR. QUINN:  Right.

15      Q   So what were the -- are you telling me yes,

16   you had some features in mind that Apple was first to

17   implement at the time you wrote that sentence?  Is

18   that what you're telling me?

19      A   I'm telling you that I don't know if I had

20   features in mind.  I can't recall at the time.

21      Q   So, I mean, as of the time you wrote this --

22   I mean, I'll ask you to reflect now.  As of that time,

23   were there any firsts; that is to say, any features

24   that Apple was the first to implement on a phone as of

25   the time you wrote that e-mail?

Sinclair, Steven

1        MR. STONE:  Objection; lacks foundation.
2        MR. PLUNKETT:  Objection; vague; calls for a
3   legal conclusion.
4        THE WITNESS:  So I can't remember at that
5   time what I was thinking about what was first or what
6   was not first.
7        MR. QUINN:  Q.  Do you have a recollection
8   that at the time you wrote this that you had in mind
9   some firsts, that is to say, features, that Apple was
10  the first to implement, but for some reason you
11  decided not to share them with the advertising people?
12       MR. STONE:  Objection; argumentative --
13       MR. PLUNKETT:  Objection.
14       MR. STONE:  -- lacks foundation; vague.
15       THE WITNESS:  So my response to them was in
16  response to the list that they had sent to me.  And in
17  the other parts of the e-mail which we haven't read
18  back, I do point out some of the things that they had
19  put into their list.  And so I was mainly focused on
20  what they had presented to me and giving them feedback
21  on that.
22       MR. QUINN:  I move to strike; nonresponsive.
23       Q   My question is this:  Do you have a
24  recollection, as you sit here now, that at the time
25  you wrote this e-mail, you had in mind some features

Sinclair, Steven

40

1   which you thought Apple was the first to implement,
2   and you made a deliberate decision not to share them
3   with the advertising agency at that time?
4           MR. STONE:  Objection; argumentative.
5           MR. PLUNKETT:  Vague; lacks foundation; asked
6   and answered.
7           THE WITNESS:  So I don't recall what I was
8   thinking when I wrote this.
9           MR. QUINN:  Q.  Is that a possibility, that
10  actually you may have had some firsts in mind, and you
11  made a deliberate decision not to share it with them?
12          MR. STONE:  Objection; lacks foundation.
13          MR. PLUNKETT:  Same objections; speculation.
14          THE WITNESS:  I can't recall what I was
15  thinking at the time.
16          MR. QUINN:  Q.  You wrote:
17          "I'll keep thinking about it and see if I can
18  come up with some firsts that are defensible."
19          Why did you need to think about it in order
20  to come up with some firsts?
21      A   Well, again, I don't recall exactly what I
22  was thinking when I wrote this.  But I can say that I
23  certainly wouldn't want to send them down a path of
24  grabbing onto some idea if I didn't think I could
25  justify it, substantiate it.

Sinclair, Steven

1           So putting out a list for them wasn't going
2    to be very productive if later on I was going to
3    decide, oh, you know what, that wasn't really first.
4        Q    All right.
5            So thinking about it now, can you think of
6    any legitimate firsts that are defensible; that is,
7    features in iPhones which Apple had implemented as of
8    April 2010 where Apple was the first?
9            MR. PLUNKETT:  Objection; vague; calls for a
10   legal conclusion; lacks foundation; calls for
11   speculation.
12           THE WITNESS:  So off the top of my head, I
13   don't have any that I can list out.  I generally think
14   about things that Apple does better.
15           MR. QUINN:  Q.  That is to say, as you -- as
16   in your next sentence:
17           "We're usually the first at doing it right."
18           Is that what you're referring to, that
19   thought?
20       A    That's -- yes.
21           MR. PLUNKETT:  Objection; vague; lacks
22   foundation.
23           MR. QUINN:  Q.  So in other words, other
24   phone companies may come up with a feature, but -- and
25   Apple will then implement the feature, but do it

Sinclair, Steven

137

1    A    I got a call from Apple.  And they had in the
2    previous six to eight months announced something
3    called the iPhone, which I was impressed with, and
4    thought, This is a good opportunity.  I think Apple is
5    on to something here.  They've reinvented this
6    category.
7         And so when I went to the interview process
8    and got the job, I did the smart thing and I took it.
9    Q    And what was your job when you first went to
10   Apple?
11   A    So I was the iPhone product marketing
12   manager.
13   Q    What does that entail?
14   A    So two -- two aspects to that job.
15        One is similar to what I had done at Palm,
16   which is kind of an inbound product management role of
17   working with engineers to define a list of features,
18   prioritize the list of features that we want to --
19   both hardware and software, that we want to have
20   implemented in future products.
21        And then the other half is -- is more of an
22   outbound marketing role of defining the marketing
23   messaging for the product and making sure that it's
24   concise and tells the story that we want it to tell,
25   and making sure that everyone who is in a position to

Sinclair, Steven

```
1    talk about that story is given -- given a consistent
2    set of -- set of messaging.
3         Q    Is that the same position you have today?
4         A    It is.
5         Q    Cool.
6              About how many people report to you?
7         A    None.
8         Q    None.
9              How many people work in the same department
10   as you?
11        A    It's a very small group.  Up until about six
12   months ago, there were two of us.
13        Q    And who are those two?
14        A    It was myself and Eric Jue.
15        Q    And after -- is there somebody else now?
16        A    So Eric transferred to a different
17   department, and we got a product marketing manager
18   from a different department into our department, and
19   then we hired one additional person.
20        Q    Who was the one who came from the other
21   department?
22        A    Her name is Kaiann, K-A-I-A-N-N, Drance.
23        Q    And who was the person from outside?
24        A    Christine Eun, E-U-N.
25        Q    And what roles do they play versus what role
```

208

1        CERTIFICATE OF REPORTER

2

3

4        I, ANDREA M. IGNACIO HOWARD, hereby certify

5   that the witness in the foregoing deposition was by me

6   duly sworn to tell the truth, the whole truth, and

7   nothing but the truth in the within-entitled cause;

8

9        That said deposition was taken in shorthand

10  by me, a Certified Shorthand Reporter of the State of

11  California, and was thereafter transcribed into

12  typewriting, and that the foregoing transcript

13  constitutes a full, true and correct report of said

14  deposition and of the proceedings which took place;

15

16       That I am a disinterested person to the said

17  action.

18

19       IN WITNESS WHEREOF, I have hereunto set my

20  hand this 4th day of April 2012.

21

22  _____

23  ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

24

25

## Annotation Notes

1. **Pg: 28 Ln: 12 - Pg: 30 Ln: 25**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

2. **Pg: 32 Ln: 24 - Pg: 33 Ln: 15**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

3. **Pg: 34 Ln: 7 - 12**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

4. **Pg: 34 Ln: 14 - Pg: 35 Ln: 10**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

5. **Pg: 35 Ln: 14 - 19**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

6. **Pg: 37 Ln: 1 - 11**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

7. **Pg: 37 Ln: 15 - 25**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

8. **Pg: 38 Ln: 3 - 9**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

9. **Pg: 38 Ln: 11 - 25**

    **Note:** No Note Provided

    **Linked Issues:** Samsung Designations

Sinclair, Steven

10.  **Pg: 39 Ln: 4 - 6**

   **Note:** No Note Provided

   **Linked Issues:** Samsung Designations

11.  **Pg: 39 Ln: 23 - Pg: 40 Ln: 3**

   **Note:** No Note Provided

   **Linked Issues:** Samsung Designations

12.  **Pg: 40 Ln: 7 - 11**

   **Note:** No Note Provided

   **Linked Issues:** Samsung Designations

13.  **Pg: 40 Ln: 14 - Pg: 41 Ln: 8**

   **Note:** No Note Provided

   **Linked Issues:** Samsung Designations

14.  **Pg: 41 Ln: 12 - 20**

   **Note:** No Note Provided

   **Linked Issues:** Samsung Designations

15.  **Pg: 137 Ln: 9 - Pg: 138 Ln: 4**

   **Note:** No Note Provided

   **Linked Issues:** Samsung Designations

Sinclair, Steven