QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>             Plaintiff,<br>      vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>             Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S MOTION TO EXCLUDE APPLE'S PROPOSED TRIAL EXHIBITS**<br><br>Trial Date:   November 12, 2013<br>Hearing Date:   October 17, 2013<br>Time:   1:30 p.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh |

Pursuant to the Court's August 22, 2013 Case Management Order, Defendants respectfully submit the following objections to the admissibility of Apple's proposed trial exhibits.

## A. Apple Cannot Repeat Its Irrelevant Allegations Of Copying Through Its Exhibits

Samsung already exposed Apple's intention to turn this narrow damages re-trial into a side-show on Apple's irrelevant liability theories in Samsung's motion *in limine* regarding copying allegations, (Dkt. 2406 at 1-3), and motion to strike portions of the Davis expert report. Dkt. 2386 at 6-7 (both motions are incorporated by reference). That Apple's exhibit list has 105 exhibits, only 14 of which relate to financial information, further proves that Apple is attempting to circumvent the Court's orders setting a narrow scope for trial. Declaration of Anthony Alden Ex. 1 ("Ex. 1") at 43:14-15; Dkt. 2369 at 2. Nevertheless, Apple's own motions *in limine* disingenuously declare that the "sole purpose of the trial is to correct the erroneous notice dates," (Dkt. 2402 at 3, quoting Dkt. 2316 at 3); that evidence must be "limited to the products and patents at issue in the new trial," (Dkt. 2400 at 1); and that infringement is "not to be relitigated." Dkt. 2402 at 1. Samsung fully agrees and believes Apple's own statements require exclusion of the majority of Apple's exhibits, even though Samsung is limited to stating objections to only 30 exhibits in this motion.

Apple's "copying" exhibits make up 40% of its list and yet they contain no financial data, make no reference to the asserted patents, and offer no help to the jury in correcting for Apple's erroneous notice dates. Instead, they are included to smear Samsung on irrelevant "copying" topics unrelated to damages. Their admission would create a high likelihood that the jury will punish Samsung impermissibly by awarding damages based on the perceived nature of its actions, or will make duplicative damage awards based on many products not even at issue in this re-trial.

Indeed, many other courts have found alleged copying evidence to be prejudicial and a waste of time in trials far less narrow than this re-trial. *See, e.g.*, *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010) (excluding evidence of copying related to products not at issue because "such contentions would cause substantial delay, wasted time, and confusion"); *Asyst Techs., Inc. v. Empak, Inc.*, No. 98-20451, 2007 WL 120845, at *2 (N.D. Cal. 2007) (excluding copying evidence as related to a feature not expressly claimed by the patent and

1  "evidence of copying would be highly prejudicial to [defendant]").  Samsung would be forced to
2  call many witnesses to rebut allegations of copying Apple products; to confirm that hyperbolic
3  phrases like "crisis of design" were not a directive to copy; and to show that Apple itself evaluates
4  competitor products as part of its own normal business.  None of this testimony would be relevant
5  to damages, and would only be needed to rebut prejudicial exhibits and related testimony.

6  All documents discussed in this section should be excluded under Federal Rules of
7  Evidence 401-403 because they relate solely to liability and willfulness.  The following additional
8  grounds for exclusion apply to the specified subsets of Apple's "copying" exhibits.

9  *1. Numerous "Copying" Exhibits Relate To Samsung Smartphones Not At Issue.*
10  **PX 3** is a supposed timeline of Samsung smartphone development created by Apple's attorneys
11  and introduced through Peter Bressler, Apple's design expert, as support for his *infringement*
12  positions.  Trial Tr. 1072:1-1073:15.  The exhibit is designed to characterize Samsung's conduct,
13  not provide relevant information on Apple's claimed damages.  It includes *no* images of Samsung
14  phones subject to retrial and would require Samsung to waste trial time introducing countervailing
15  testimony that it developed various omitted touchscreen models prior to the iPhone's
16  announcement, which Mr. Bressler ignored.  *See, e.g.*, Trial Tr. 2817:9-2820:11; DX 684.001.

17  **PX 6** is a "summary" of press reports about perceived similarities between certain
18  Samsung devices and the iPhone.  *Not one* of the 18 article relates to a product at issue in this
19  trial.  The jury awards for *all* of the phones discussed were upheld.  Dkt. 2271 at 22, 25; Ex. 1 at
20  31:22-25; 33:18-21.  Moreover, the articles discuss features not covered by the patents at issue,
21  such as the "shiny plastic body," "the chrome edge around the screen," and the "volume and ringer
22  buttons."  At the first trial, this exhibit was used exclusively by Apple's trade dress dilution
23  expert on a subject not at issue here.  Trial Tr. 1521:14-1522:13; 1524:22-1525:5.

24  **PX 35** refers to the icon designs of the Eternity and Genie phones, which were never
25  accused in this case.  **PX 39** shows the design of the icon menus for Samsung products code
26  named Cooper (the Galaxy Ace) and Alkon (a European version of the Galaxy SII called Xcover).
27  Apple never accused the Ace of infringing the D'305; Apple never accused the Xcover of
28  anything.

1    **PX 48** and **PX 53** also relate to a product not at issue (Galaxy S i9000), and PX 48 further discusses a product never even accused (Wave), so comments about their industrial design are irrelevant.  Tellingly, Apple lists two Samsung designers who worked on the Galaxy S–not at issue in the new trial–as sponsoring witnesses, presumably because Apple intends to explore irrelevant and prejudicial issues of copying and intent.  **PX 2257** also refers to products not at issue, the Galaxy S i9000 and Galaxy S II.  Apple attempted to use this document at trial to establish copying, but the document was shown to have been created in response to litigation, not before it.  Trial Tr. 2541:17-2542:8; 2555:24-2557:21.  **PX 44** and **PX 179** are more reports referring to aspects of the user interface for the not-at-issue Galaxy S i9000.  **PX 47** relates to the external design and packaging of the Galaxy S i9000, Wave, and Monte, among other Samsung products not at issue.  Similarly, **PX 46** is a report that points out differences between the "Behold3" and the iPhone.  The Behold3 was the code name for the Samsung phone released as the Vibrant and the Galaxy S 4G, both products not at issue in the new trial.  Dkt. 2271.

***2. Numerous "Copying" Documents Relate To Failed Claims About The Industrial Design Of Samsung's Tablets.***  Apple lists at least four exhibits it introduced in the first trial to try to establish that Samsung had infringed Apple's tablet design patent and infringed and diluted the iPad trade dress.  Apple lost on those claims and yet seeks to use these same documents now.  Dkt. 1931 at 7, 10, 14.  **PX 56** was used by Apple's dilution expert in an unsuccessful bid to establish that "the iPad had acquired distinctiveness."  Trial Tr. 1513:22-1514:22.  **PX 89** was offered for Apple's allegation that consumers associated the design of a Samsung tablet with Apple, with the limiting instruction that it "may only be considered for purposes of showing intent, willfulness, and knowledge and not for any other purpose."  PX 203.2; Trial Tr. 2028:9-11; 2027:18-21.  **PX 59** was used to try to establish confusion regarding Apple's unprotectable iPad trade dress.  *See, e.g.*, Trial Tr. 986:13-987:12; 1085:24-1090:9; 4112:22-4113:7.  **PX 172** is an article that relates to Apple's unsuccessful allegations that the industrial design of Samsung tablets diluted the iPad trade dress and infringed the D'889 patent.  Listing its liability experts as sponsoring witnesses for these documents further exposes Apple's improper intent to re-litigate liability issues it lost and the sheer irrelevance of these exhibits.

**3. Certain "Copying" Exhibits Were Excluded In The First Trial Because Apple Failed To Disclose Them.** **PX 41** and **PX 178,** as well as **PX 179** (discussed above), were all excluded at trial because Apple's expert on design infringement, Susan Kare, failed to disclose them in her expert report. Dkt. 1563 at 4. Apple apparently intends to try to get these liability documents in through the back door by cross-examining Samsung's witnesses about them. Dkt. 2406-3. Just as Samsung was prevented from questioning Apple witnesses about liability theories and documents not timely disclosed in its expert reports, (*e.g.*, Dkt. 1519 at 1-2; Trial Tr. 951:25-952:15; 2806:22-2807:18), the same rule must apply to Apple.

**4. Several "Copying" Documents Will Be Used Solely To Relitigate Liability Claims.** **PX 40** is on Apple's list because it contains the phrase "crisis of design," which Apple latched on to for its liability theme in the first trial. Trial Tr. 319:16-320:19 (Apple opening). Even if the phrase were not merely hyperbole, as Samsung's witnesses explained, (Trial Tr. 969:23-970:19; 997:11-12), the document provides no help for this jury in its limited role. It has no financial information and does not reference any product or IP at issue. It has no bearing on this damages trial but would substantially prejudice Samsung by allowing Apple to relitigate liability issues.

**PX 55/PX 2261** are black and white and color versions of the same Samsung presentation with a screen shot of the iPhone and a Samsung device. Apple introduced these exhibits with a Samsung designer to try to establish liability. Trial Tr. 2542:22-2546:16. Apple's exhibit list identifies that same Samsung designer and Apple's design *infringement* expert Susan Kare as the sponsoring witnesses. Apple's improper purpose is to rehash its liability and willfulness story.

**PX 49** is titled "Apple Intelligence Report" and does not relate to any of the patents in suit. It can only conceivably be used as a means of characterizing Samsung as a bad actor for performing general business analysis of Apple, which is irrelevant and prejudicial.

**PX 57, PX 186,** and **PX 195** are internal Samsung documents that relate to development of a bounce feature. Ms. Davis contends they are relevant because "the decision by Samsung to adopt user interface technology and designs used by Apple after direct comparisons to Apple's products support the conclusion that there is substantial demand for Apple's patented designs and technology and that the noninfringing alternatives are not as desirable in the mobile device

1  market." Dkt. 2386-2 (Sealed) at ¶ 136. Nothing in these documents suggests that Samsung's
2  engineers were implementing these features to satisfy any consumer demand. Moreover, there is
3  no evidence that this particular feature bears any relation to the narrow bounce feature that was
4  found to infringe the '381 patent at trial, so these documents are irrelevant to damages here.

5  **B.   Apple Cannot Admit Praise For Its Products Generally Or For Features Not At Issue**

6  Apple also has proposed numerous irrelevant exhibits demonstrating nothing more than
7  generalized praise for Apple products. On the issue of lost profits, there is no dispute that
8  demand for Apple's products existed, (August 2013 Rpt. ¶ 98), but Apple still bears the burden of
9  proving that that the infringing functionality drives consumer demand for the accused product.
10 *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming no
11 lost profits for failure to prove buyers "specifically want" a product with the patented feature).
12 This Court and the Federal Circuit have already held that evidence of praise for Apple's products
13 in general, or for generic features such as "ease of use" and "design," are insufficient evidence to
14 prove a patented feature drives demand. Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs.*
15 *Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012)). Likewise, evidence in support of a reasonable
16 royalty opinion must be focused on the patented features. *ResQNet.com, Inc. v. Lansa, Inc.*, 594
17 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support
18 compensation for infringement but punishes beyond the reach of the statute."). Exhibits showing
19 third party or internal praise for Apple's products generally are therefore pointless and cannot be
20 used as evidence of consumer demand for the specific IP at issue. Fed. R. Evid. 402, 403.
21 Arguments by Apple seeking to broaden the scope of the intellectual property at issue in order to
22 generate some relevance for these exhibits should be judicially estopped, as demonstrated in
23 Samsung's motion *in limine*. Dkt. 2406 at 4-6. The Court should prevent Apple from using
24 exhibits allegedly praising Apple products in general, untied to the actual patented features at
25 issue.

26 **PX 26A** is an improper "summary" of documents that purports to reflect demand for
27 Apple's IP and should be excluded under Fed. R. Evid. 1006 as an inappropriate attempt to admit
28 documents that should be examined individually and would be objectionable on their own. The

1  exhibit is also a revision of Apple's previous exhibit PX 26, which was meant to establish demand
2  for its *trade dress*. Although it has been re-titled, the underlying documents are all irrelevant to
3  the few narrow patents at issue. For example, the sources it cites refer generally to the "design"
4  of various Apple products models, but none relate to the specific designs of D'677 or D'305.
5  Some documents refer to nothing more than "exterior design" or "attractive appearance," or refer
6  to irrelevant elements such as the "back of [the] phone." PX 26A.1. No design patents covering
7  the entire exterior design or user interface are at issue, let alone a patent on "sensual design" or
8  being a "delight to the eye." PX 26A.1, .2, .3. These exhibits have no probative value for a jury
9  tasked with valuing the limited patent claims at issue here. PX 26A is also an improper attempt to
10 get in many objectionable exhibits supposedly related to utility patents, such as PX 38 described
11 below, which refer to functionality outside the narrow scope of the patents.

12    **PX 38** describes a study comparing methods of zooming in and out on a document using
13 double-tap. *See* PX 38.13. But Apple's '163 Patent does not cover the tap to zoom functionality
14 described in PX 38, and it is therefore irrelevant. Fed. R. Evid. 401. The '163 Patent claims tap
15 to zoom *and* tap to recenter. *See* '163 Patent, Claim 50 ("in response to detecting the second
16 gesture, the structured electronic document is translated so that the second box is substantially
17 centered on the touch screen display"); Dkt. 2386-2 (Sealed) at ¶ 29 ("It relates to allowing a user
18 to double tap to enlarge and center on one portion of a document, then gesture on a different
19 portion of the document to center on that portion."). Apple admittedly does not own tap to zoom.
20 Trial Tr. 1878:22-1879:13 ("Q. …tap to zoom was, was out there in the field before this patent,
21 right? [Apple expert] Dr. Singh: That is correct."). This document creates a high likelihood of
22 confusion, by creating the false impression that the '163 Patent covers basic tap to zoom
23 functionality, or even all such functionality. Apple should not be allowed to improperly broaden
24 the scope of the '163 Patent with PX 38, which would mislead and confuse the jury.

25    **PX 37** is a third party presentation noting generally that "consumers recognize iPhone's
26 screen-centric design as the touch phone standard," and also that "[f]rom a UI perspective, it has
27 surpassed Nokia's existing 'Easy to Use' concept and is being judged to be 'Sexy to Use'."
28 PX 37.3. Apple's own design expert distinguished the D'677 patent from a number of other

"screen-centric" prior art and contemporary designs, (Trial Tr. 1110:23-1121:4, 1175:1-4 (referencing DX 511, DX 727, DX 728, and JX 1093)), and Apple asserted no patent that can claim a monopoly on such things as ease or sexiness of use. **PX 34** was referenced by Mr. Musika in the first trial because it remarks that the iPhone has "easy and intuitive U/I" and "beautiful design," (Trial Tr. 2078:4-2081:14), but those comments say nothing about demand for the specific IP at issue. And **PX 194** was similarly introduced by Apple to establish that there is general demand for the iPhone, which is undisputed. Trial Tr. 2081:19-22.

C.  **Apple's Financial Documents Cover Many Products Not At Issue**

**PX 1500A** must be excluded or revised because it includes sales and revenue data for accused products not at issue in the new trial. Indeed, these irrelevant products are listed under the inflammatory heading "infringing products." Samsung has asked Apple to edit these exhibits, but Apple has refused. Offering this exhibit runs contrary to Apple's own motion *in limine* arguments about the scope of trial and assertion that evidence must be "limited to the products and patents at issue in the new trial." Dkt. 2400 at 1:8-11 ("the Court's directive that the new trial be conducted with evidence . . . limited to the products and patents at issue in the new trial"); Dkt. 2402 at 1-3. By including these irrelevant products, Apple threatens to confuse and mislead the jury about the proper scope of damages, to Samsung's prejudice.

**PX 29A** purports to be a collection of "summaries" concerning purported discrepancies in Samsung's financial data. It should be stricken for multiple reasons. First, it includes products not at issue in the new trial (*e.g.*, Fascinate, Galaxy S 4G, Vibrant, Galaxy S II, Galaxy Tab 10.1), which Apple itself admits violates the Court's directives. *Id.* Second, it includes products that were not even at issue in the first trial (*e.g.*, Acclaim, Gravity Smart, Sidekick). Third, it includes products found not to infringe (*e.g.*, Intercept, Galaxy Tab 10.1 LTE). Finally, it includes pre-notice sales. *See, e.g.*, PX29A.1 (including all 2010 sales).

For all the foregoing reasons, the cited exhibits should be excluded from trial under Federal Rules of Evidence 401-403, and the cited authority. Given the Court's limitation to 30 document objections, Samsung reserves the right to object to additional exhibits at trial on these and other grounds.

DATED: September 16, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/*Victoria F. Maroulis*
   Charles K. Verhoeven
   Kevin P.B. Johnson
   Victoria F. Maroulis
   William C. Price
   Michael T. Zeller

   Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC