# EXHIBIT 1

1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3                SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA        )  C-11-01846 LHK
6  CORPORATION,                    )
                                   )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,          )
                                   )  APRIL 29, 2013
8         VS.                      )
                                   )  PAGES 1-89
9  SAMSUNG ELECTRONICS CO., LTD.,  )
   A KOREAN BUSINESS ENTITY;       )
10 SAMSUNG ELECTRONICS AMERICA,    )
   INC., A NEW YORK CORPORATION;   )
11 SAMSUNG TELECOMMUNICATIONS      )
   AMERICA, LLC, A DELAWARE        )
12 LIMITED LIABILITY COMPANY,      )
                                   )
13              DEFENDANTS.        )
   _____   )
14                                 )
                                   )

15

16           TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
           TRANSCRIPT PRODUCED WITH COMPUTER

1    YOU STIPULATED THAT THE FIRST DATE OF SALE WAS MAY 15TH?  WHY

2    DID YOU SUBMIT THAT?  WHY DID YOU ASK THE JURY TO GRANT YOU

3    DAMAGES FOR THOSE PRE-MAY 15TH SALES?

4              MR. JACOBS:  I THINK I -- WITH RESPECT, YOUR HONOR, I

5    WAS ANSWERING THE QUESTION.

6              THE COURT:  YEAH.

7              MR. JACOBS:  WE GET SALES DATA FROM SAMSUNG, WE

8    PREPARE AN EXPERT REPORT AND EXPERT EXHIBITS DURING THAT, THAT

9    HURLY-BURLY PERIOD WHEN 24 HOURS BEFORE THE REPORT IS DUE,

10   SAMSUNG FINALLY PRODUCES THE DATA.

11       THEN WE AGREE ON THE JPTS.

12       BUT WE HAVE OUR EXPERT REPORT AND OUR EXHIBITS.  THE COURT

13   ENFORCED THOSE RULES QUITE, QUITE RIGOROUSLY.

14       WHAT THE JPTS MAKES CLEAR IS THAT, AS A LEGAL MATTER, ALL

15   OF THE SALES THAT WERE EMBRACED BY MR. MUSIKA'S REPORT OCCURRED

16   AFTER THE NOTICE DATE, AND THAT'S THE ONLY POINT WE'RE DRIVING

17   AT.

18       AS A LEGAL MATTER, THE JPTS SAYS, "SAMSUNG, YOU CANNOT

19   ARGUE THAT THE SALES OCCURRED BEFORE THE STIPULATED DATE.  YOU

20   ARE BARRED FROM THAT ARGUMENT."

21       AND IT IS AS MUCH A LEGAL STIPULATION IN THAT REGARD AS A

22   FACTUAL STIPULATION.

23       BUT THE EXPLANATION FOR WHY IS SIMPLY ONE OF SEQUENCE.

24              THE COURT:  OKAY.  BUT YOUR -- YOUR CASE AT THE TRIAL

25   AND YOUR EXPERT CLEARLY REQUESTED DAMAGES SINCE THE LICENSING

1    NEGOTIATIONS THAT OCCURRED IN THE FALL OF 2010, AND YOU MADE

2    THAT REQUEST AND WANTED DAMAGES AWARDED FOR THAT PERIOD

3    REGARDLESS OF THIS MAY 15TH STIPULATION.

4              MR. JACOBS:  WE WERE URGING AN EARLIER NOTICE PERIOD,

5    YES, YOUR HONOR.

6              THE COURT:  ALL RIGHT.

7              MR. JACOBS:  I THINK THAT'S --

8              THE COURT:  IS THERE ANYTHING THAT YOU'D LIKE TO SAY,

9    MS. SULLIVAN?  OTHERWISE I'M READY TO RULE ON THIS ONE AS WELL

10   AND I'D LIKE TO KEEP GOING SO WE CAN GET TO CASE MANAGEMENT.

11             MR. JACOBS:  JUST VERY BRIEFLY, YOUR HONOR, I WANTED

12   TO JUST UNDERSTAND WHERE YOU LED OFF WITH.

13      ON THE AT&T --

14             THE COURT:  RIGHT, THAT'S GOING TO BE GRANTED.

15      BUT I'M GOING TO DENY IT AS TO THE INFUSE 4G.

16             MR. JACOBS:  THANK YOU, YOUR HONOR.

17             MS. SULLIVAN:  THANK YOU, YOUR HONOR.

18             THE COURT:  ALL RIGHT.  DO YOU WANT ME TO GO AHEAD

19   AND STATE MY REASONS, OR IS THAT --

20             MR. JACOBS:  YES, PLEASE.

21             THE COURT:  OKAY.  ALL RIGHT.

22      WELL, FIRST AS TO THE GALAXY S II AT&T, THERE DOESN'T SEEM

23   TO BE ANY DISAGREEMENT BY THE PARTIES THAT THAT WAS AN ERROR ON

24   THE COURT'S PART, AND I APOLOGIZE FOR THAT, SO I AM REINSTATING

25   THE AWARD OF $40,494,356 FOR THE GALAXY S II AT&T.

1        NOW, AS FAR AS THE INFUSE 4G, IT IS CORRECT THAT THE

2    PARTIES SUBMITTED A JOINT PRETRIAL STATEMENT THAT THIS PRODUCT

3    WAS FIRST SOLD ON MAY 15TH, 2011.

4        NOW, NONETHELESS, APPLE'S EXPERT REPORT OF MR. TERRY MUSIKA

5    PROVIDED SALES NUMBERS TO THE JURY FOR SALES THAT OCCURRED

6    PRIOR TO MAY 15 OF 2011 AND THE JOINT PRETRIAL STATEMENT AND

7    THIS STIPULATION WAS NOT ANYTHING THAT THE JURY WAS EVER

8    INFORMED OF AND IT WAS NEVER BEFORE THE JURY.

9        MOREOVER, THOSE TWO ADDITIONAL EXHIBITS, ONE WAS A

10   PLAINTIFF EXHIBIT, ONE WAS A DEFENDANT EXHIBIT -- MS. SULLIVAN

11   STATED THE EXACT NUMBERS ON THE RECORD, UNFORTUNATELY, I DON'T

12   HAVE THEM UP WITH ME RIGHT NOW -- BUT THOSE ALSO INCLUDED SALES

13   DATA FOR APRIL OF 2011.  I THINK THAT WAS VERY CONFUSING TO THE

14   JURY.

15       AND I KNOW THAT APPLE IS CLAIMING THAT THERE WERE NO SALES

16   POST-APRIL 15TH, 2011, BUT I DON'T THINK THAT WAS EVER CLEAR TO

17   THE JURY WHETHER THAT WAS THE CASE OR NOT.

18       ALL THEY SAW WERE MULTIPLE EXHIBITS THAT HAD SALES OF

19   APRIL 2011 AND THEY HEARD THE TESTIMONY OF MR. MUSIKA THAT

20   APPLE WAS REQUESTING DAMAGES FOR -- YOU KNOW, THAT STARTED AND

21   STARTED TO ACCRUE FROM THE LICENSING NEGOTIATION MEETINGS THAT

22   OCCURRED IN THE FALL OF 2010.

23       SO ON THAT BASIS -- THE COURT ALSO NOTES THAT APPLE DID NOT

24   SPECIFICALLY RAISE THE FIRST SALE DATES IN ITS OPPOSITION TO

25   SAMSUNG'S JMOL MOTION.  I WENT BACK AND REVIEWED THOSE

1    PLEADINGS.

2         BUT BECAUSE BOTH PARTIES SUBMITTED DAMAGES EXHIBITS TO THE

3    JURY, APPLE'S DAMAGES EXPERT INCLUDED SALES PRIOR TO THE

4    STIPULATED DATE, BOTH PARTIES' DAMAGES EXHIBITS DID AS WELL

5    THAT PREDATE THE DATE TO WHICH THE PARTIES HAVE STIPULATED, SO

6    EFFECTIVELY BOTH PARTIES HAVE SORT OF VITIATED THEIR

7    STIPULATION.

8         NOW, BECAUSE OF THAT, I THINK THE JURY MAY HAVE BEEN

9    CONFUSED.  HAD THE JURY KNOWN THAT THEY SHOULD NOT HAVE BEEN

10   AWARDING DAMAGES ANY TIME BEFORE MAY 15TH OF 2011, IT MAY NOT

11   HAVE AWARDED THE SAME DAMAGES AMOUNT, SO I THINK IT WOULD BE

12   INAPPROPRIATE FOR ME JUST TO REINSTITUTE THAT OR REINSTATE THAT

13   AMOUNT AT THIS TIME.

14        HOWEVER, I AM GOING TO ALLOW A NEW TRIAL ON THIS PRODUCT,

15   BUT THE PARTIES WILL ONLY BE ABLE TO SUBMIT INFORMATION ON

16   SALES ON OR AFTER MAY 15TH.  THERE WILL BE NO INFORMATION GOING

17   TO THE JURY WITH ANY SALES NUMBER THAT PREDATES THAT DATE.

18        SO I'M GRANTING IN PART AND DENYING IN PART APPLE'S MOTION

19   FOR RECONSIDERATION OF ORDER GRANTING NEW DAMAGES TRIAL.  SO

20   THE GALAXY S II AT&T WILL NOT BE INCLUDED IN THE NEW TRIAL, BUT

21   THE INFUSE 4G WILL.

22        OKAY?

23             MR. JACOBS:  THANK YOU, YOUR HONOR.

24             THE COURT:  ALL RIGHT.

25        OKAY.  NOW, LET'S GO TO THE SEVENTH AMENDMENT ISSUE AND

1    THEN I'D LIKE TO START DOING ALL OF THE CASE MANAGEMENT, WHICH

2    UNFORTUNATELY IS GOING TO TAKE SOME TIME.

3        ALL RIGHT.  I HAVE REVIEWED ALL OF THE PLEADINGS THAT HAVE

4    BEEN FILED ON THIS TOPIC.

5        THIS PROCEEDING WAS SET FOR A CMC AND NOT FOR A HEARING.

6    IF YOU WANT TO SPEAK BRIEFLY ON THIS, I'LL GIVE YOU EACH ONE

7    MINUTE, BUT I'M GOING TO ASK YOU, PLEASE, NOT TO GO FURTHER

8    THAN THAT BECAUSE WE DO HAVE QUITE A BIT TO COVER WITH REGARD

9    TO EVERYTHING ELSE.

10            MS. SULLIVAN:  SHALL I BEGIN, YOUR HONOR?

11            THE COURT:  PLEASE, GO AHEAD.

12            MS. SULLIVAN:  YOUR HONOR, IT'S A VERY SIMPLE

13   ARGUMENT.  THE SEVENTH AMENDMENT FORBIDS A SECOND JURY FROM

14   RE-EXAMINING A FACT FOUND BY A PRIOR JURY.

15        THIS IS NOT RELEVANT IF INFRINGER'S PROFITS IS THE DAMAGES

16   MEASURE AT THE NEXT TRIAL.

17        BUT IF THE DAMAGES MEASURE IS, AS APPLE WILL SEEK TO MAKE

18   IT, LOST PROFITS OR REASONABLE ROYALTY, THEN THE SECOND JURY,

19   IN DETERMINING DAMAGES, WILL NECESSARILY RE-EXAMINE A FACT

20   DETERMINED AS TO INFRINGEMENT OF THE DESIGN PATENTS AT THE

21   FIRST TRIAL, AND THAT IS, NAMELY, WHAT IS THE QUANTUM OR EXTENT

22   OF INFRINGEMENT?

23        THAT'S A CONSEQUENCE OF YOUR HONOR'S INSTRUCTION ON THE

24   DESIGN PATENTS.  YOU SAID, "YOU MUST DETERMINE WHETHER THERE

25   ARE MAJOR DIFFERENCES OR MINOR DIFFERENCES.  MINOR DIFFERENCES

1     DO NOT DEFEAT INFRINGEMENT."

2         SO THE FIRST JURY, IN ORDER TO FIND INFRINGEMENT, HAD TO

3     FIND A QUANTUM, OR AN EXTENT OF INFRINGEMENT, MAJOR DIFFERENCES

4     OR MINOR DIFFERENCES, 51 PERCENT SIMILAR OR 90 PERCENT SIMILAR

5     OR 99 PERCENT SIMILAR.

6         THE SECOND JURY, TO DETERMINE LOST PROFITS, WILL HAVE TO

7     DETERMINE THE EXTENT OF INFRINGEMENT TO DETERMINE CAUSATION ON

8     LOST PROFITS, AND THE SECOND JURY WILL HAVE TO DETERMINE THE

9     EXTENT OF INFRINGEMENT ON DAMAGES FOR REASONABLE ROYALTY

10    BECAUSE OF FACTOR 11 IN THE GEORGIA PACIFIC FACTORS.

11        THAT MEANS THE SECOND JURY IS RE-EXAMINING THE FACT OF THE

12    EXTENT OF DESIGN PATENT INFRINGEMENT UNDER A LOST PROFITS OR A

13    REASONABLE ROYALTY THEORY, AND THAT'S FORBIDDEN BY THE SEVENTH

14    AMENDMENT, UNLESS YOU ALLOW THE SECOND JURY TO RE-EXAMINE

15    DESIGN PATENT LIABILITY AS WELL.

16        ALTERNATIVELY, YOU COULD EXCLUDE LOST PROFITS AND

17    REASONABLE ROYALTY THEORIES FROM THE SECOND TRIAL AND THEN WE

18    WOULD CONCEDE THAT THE INFRINGER'S PROFITS SITUATION WOULD BE

19    DIFFERENT BECAUSE ON THAT CAUSATION IS NOT RELEVANT TO

20    INFRINGER'S PROFITS AS THE COURT HAS RULED.

21        WE RESPECTFULLY RESERVE THE RIGHT TO APPEAL THAT, WE DON'T

22    AGREE WITH IT, WE'LL TAKE IT TO THE FEDERAL CIRCUIT WHENEVER WE

23    HAVE A CHANCE AFTER FINAL JUDGMENT IS ENTERED.

24        BUT YOUR HONOR, THAT'S REALLY THE ARGUMENT IN A NUTSHELL.

25    IT'S A DESIGN PATENT ISSUE, IT'S RELEVANT TO LOST PROFITS AND

1    REASONABLE ROYALTY THEORIES, AND IT'S BECAUSE OF THE FACT OF

2    THE EXTENT OF INFRINGEMENT IS RELEVANT TO INFRINGEMENT

3    LIABILITY AND INFRINGEMENT DAMAGES ON THE LOST PROFITS AND

4    REASONABLE ROYALTY THEORY, AND THAT'S WHY THE SEVENTH AMENDMENT

5    MEANS EITHER CUT LOST PROFITS AND REASONABLE ROYALTIES OUT OF

6    THE SECOND TRIAL, OR LET US TRY LIABILITY ANEW AT THE SECOND

7    TRIAL ON THE DESIGN PATENTS.

8              MR. JACOBS:  TO STATE THE ARGUMENT IS TO REFUTE IT,

9    YOUR HONOR.

10         THE STANDARD IS MUCH TIGHTER THAN SAMSUNG'S ARGUMENT

11   ACKNOWLEDGES.  IT IS NOT WHETHER THERE'S OVERLAP.  IT IS NOT

12   WHETHER THE EVIDENCE WILL BE -- THAT WAS ADDUCED IN THE FIRST

13   WILL BE RELEVANT TO THE SECOND.

14         IT IS WHETHER THE SAME ESSENTIAL ISSUES ARE NECESSARILY

15   GOING TO BE REDECIDED.

16         BY SAMSUNG'S ARGUMENT, NO -- BIFURCATION WITH A HIATUS

17   BETWEEN A LIABILITY AND DAMAGES TRIAL IS IMPOSSIBLE IN A PATENT

18   BECAUSE THERE ARE ALWAYS REASONABLE ROYALTIES IN PATENT CASES

19   AND THERE ARE OFTEN LOST PROFITS DAMAGES REQUESTED IN PATENT

20   CASES.

21         AND YET, WE SEE CASE AFTER CASE IN WHICH THE FEDERAL

22   CIRCUIT REMANDS FOR A NEW DAMAGES TRIAL, AND WE SEE CASE AFTER

23   CASE IN WHICH COURTS, IN THE EXERCISE OF THEIR DISCRETION,

24   DECIDE WHETHER TO BIFURCATE LIABILITY FROM DAMAGES.

25         THE NEW JURY WILL NOT BE RETRYING INFRINGEMENT.  THAT WOULD

```
 1        BE A VIOLATION OF OUR SEVENTH AMENDMENT RIGHTS.

 2            THE NEW JURY WILL BE DECIDING DAMAGES AND DAMAGES IS NOT

 3        INFRINGEMENT.

 4                MS. SULLIVAN:  YOUR HONOR, APPLE FAILS TO CITE A

 5        SINGLE CASE IN WHICH THERE'S BIFURCATION OR REMAND ON DAMAGES

 6        IN A DESIGN PATENT CASE.  EVERY PATENT CASE THEY CITED TO YOU

 7        IS A UTILITY PATENT CASE.

 8            AND, OF COURSE, A UTILITY PATENT CASE IS DIFFERENT BECAUSE

 9        FOR INFRINGEMENT YOU HAVE TO FIND THAT EVERY CLAIM WAS MET.

10            THAT'S NOT THE CASE WITH DESIGN PATENTS, AS YOUR HONOR

11        INSTRUCTED THE JURY.  YOUR HONOR DIDN'T DO A CLAIM CONSTRUCTION

12        ON THE DESIGN PATENTS, BUT SAID, "LOOK AT THE PICTURE," AND YOU

13        SAID "LOOK FOR MAJOR OR MINOR DIFFERENCES."

14            AND APPLE HAS FAILED TO CITE YOU A SINGLE BIFURCATION OR

15        REMAND ON DAMAGES ONLY CASE INVOLVING A DESIGN PATENT.

16            THAT'S WHY I TRIED TO NARROW THE ARGUMENT.  IT'S DESIGN

17        PATENTS.  IT'S ON LOST PROFITS OR REASONABLE ROYALTY.

18            THAT'S WHERE THE SEVENTH AMENDMENT VIOLATION IS PLAIN, AND

19        WE DO MEET THE TIGHTEST POSSIBLE STANDARD, WHICH IS THE ONE THE

20        FRAMERS PUT IN THE SEVENTH AMENDMENT, WILL THE SECOND JURY

21        RE-EXAMINE A FACT FROM THE FIRST TRIAL, NOT A HOLDING, NOT A

22        VERDICT, BUT A FACT.

23            AND THE FACT IS THE EXTENT OF INFRINGEMENT.

24                THE COURT:  WHY DIDN'T YOU PUT THAT IN YOUR JMOL

25        MOTION?  YOU ONLY REQUESTED A NEW TRIAL ON DAMAGES IN YOUR JMOL
```

1    MOTION.  YOU'VE NEVER SAID THAT A NEW TRIAL ON LIABILITY WAS

2    REQUIRED AS FOR A NEW TRIAL ON DAMAGES.

3        IT SEEMS AWFULLY SNEAKY TO NEVER RAISE THAT IN THE JMOL

4    MOTION, BECAUSE THAT'S WHEN IT WOULD HAVE BEEN APPROPRIATE

5    BECAUSE THAT'S WHEN I WAS REVIEWING ALL THE LIABILITY

6    DETERMINATIONS THAT THE JURY MADE.  RIGHT?

7            MS. SULLIVAN:  WELL, YOUR HONOR, WITH RESPECT, WE DID

8    ASK FOR JMOL ON EACH AND EVERY ISSUE, AND WE DIDN'T KNOW UNTIL

9    THE MARCH 1ST ORDER THAT YOU WOULD ORDER THE NEW TRIAL AND NOT

10   SIMPLY GIVE US JMOL.

11       WE CONTINUE TO BELIEVE THAT YOU COULD HAVE, BUT FOR THE

12   '381 PATENT AND APPLE'S OPPORTUNISTIC BEHAVIOR ABOUT THE NOTICE

13   DATE, ENTERED JMOL FOR US ON THE PROPER NOTICE AND CALCULATION.

14       SO WE DIDN'T KNOW, UNTIL WE GOT YOUR ORDER, THAT WE'D BE

15   FACING A WHOLE NEW TRIAL ON DAMAGES AS OPPOSED TO THE JMOL

16   REMITTITUR WE REQUESTED.

17       WE DID SUBMIT THE SEVENTH AMENDMENT ARGUMENT AS SOON AS THE

18   LIGHT BULB WENT ON AND WE SAW THAT THE PROBLEM EXISTED.

19       BUT YOUR HONOR, WITH RESPECT, I DON'T THINK WE COULD HAVE

20   ANTICIPATED EXACTLY HOW THE MARCH 1ST ORDER WOULD HAVE COME

21   DOWN, AND IT'S A CONSTITUTIONAL ISSUE, SO IT'S PLAIN ERROR AND

22   CAN BE RAISED AT ANY TIME.

23           THE COURT:  WELL, LET ME ASK A QUESTION.  IF YOU

24   THINK THAT WITH THE CORRECT NOTICE DATES IT IS VERY CLEAR WHAT

25   THE DAMAGES SHOULD BE, WHY DON'T YOU TWO JUST STIPULATE?  THAT

```
 1        I'M NOT GOING TO ALLOW NEW DAMAGES.

 2            THERE IS NO DISCOVERY TO BE HAD HERE.  YOU ALREADY HAVE THE

 3     NUMBERS THAT YOU NEED TO DO THIS.

 4            THERE'S GOING TO BE NOTHING NEW IN THIS CASE.  IT'S JUST

 5     GOING TO BE BRINGING IN THE NUMBERS ON THE DAMAGES REQUEST.

 6            MR. JACOBS:  SO JUST TO BE CLEAR ABOUT THE

 7     IMPLICATIONS OF THAT, WE URGED THAT THE -- THE COURT FOUND THAT

 8     WE HAD -- THAT SAMSUNG HAD A RIGHT TO A JURY TRIAL DECISION ON

 9     WHAT WE CHARACTERIZED AS SUPPLEMENTAL DAMAGES.

10            SO IF WE'RE FIXED TO THE JUNE 30 DATA, THE DATA AS OF

11     JUNE 30, WE JUST WANT THE COURT TO STATE FOR US THAT WE'RE NOT

12     WAIVING OUR CLAIM FOR SUPPLEMENTAL DAMAGES FROM THAT DATE

13     FORWARD.

14            PART OF WHAT WE WERE HOPING -- WHAT WE WERE ASKING SAMSUNG

15     TO DO WAS UPDATE THE SALES DATA SO THAT THE COURT WOULD NOT

16     HAVE TO DECIDE SUPPLEMENTAL DAMAGES FOR THE NEW TRIAL PRODUCTS.

17            THAT'S THE ONLY INFORMATION WE WANTED FROM SAMSUNG WAS

18     UPDATED SALES DATA.

19            MS. SULLIVAN:  YOUR HONOR --

20            MR. JACOBS:  WHAT'LL HAPPEN INSTEAD, IF WE DON'T GET

21     UPDATED SALES DATA NOW, THEN AFTER THE NEW TRIAL, ASSUMING

22     SUCCESS FOR APPLE ON DAMAGES IN THE NEW TRIAL, WE WILL THEN

23     MOVE FOR SUPPLEMENTAL DAMAGES AND IT'LL BE ON THE NEW TRIAL --

24     THERE WILL BE SUPPLEMENTAL DAMAGES ON THE NEW TRIAL PRODUCTS

25     BECAUSE WE WON'T HAVE RECEIVED UPDATED SALES DATA.
```

```
 1              THE COURT:  WELL, I'M NOT -- I'M GOING TO MAINTAIN
 2    THE SAME POSITION I TOOK IN THE MARCH 1ST ORDER, THAT I'M NOT
 3    GOING TO ORDER PRE-JUDGMENT INTEREST AND SUPPLEMENTAL DAMAGES
 4    UNTIL THE APPEAL IS OVER, BECAUSE THERE MAY BE MANY ERRORS THAT
 5    THIS COURT COMMITTED DURING THAT TRIAL AND WHO KNOWS WHAT IS
 6    GOING TO REMAIN STANDING AFTER AN APPEAL.
 7          SO THAT ISSUE I'M NOT GOING TO DEAL WITH NOW, AND I'M NOT
 8    GOING TO DEAL WITH IT AFTER ANY RETRIAL ON DAMAGES.
 9          IT'LL ONLY BE ADDRESSED AFTER THE FEDERAL CIRCUIT EITHER
10    COMPLETELY REVERSES EVERYTHING AND REMANDS IT FOR A NEW TRIAL,
11    OR WHATEVER HAPPENS.
12          SO I THINK IT WOULD BE CLEANER AND EASIER IF WE JUST DO A
13    NEW TRIAL BASED ON ALL THE OLD THEORIES, THE OLD NUMBERS, THE
14    OLD DISCOVERY AND NOT -- NO ONE IS GOING TO GET A DO-OVER IN
15    THIS CASE.
16          I JUST WANT TO DO A VERY LIMITED RETRIAL ON DAMAGES ON ALL
17    OF THE OLD INFORMATION AND THEN HAVE THIS GO UP TO THE FEDERAL
18    CIRCUIT.
19              MR. JACOBS:  UNDERSTOOD, YOUR HONOR.
20              THE COURT:  SO, YOU KNOW, THE ISSUE OF SUPPLEMENTAL
21    DAMAGES OR PRE-JUDGMENT INTEREST WILL HAVE TO BE RESOLVED AT A
22    DIFFERENT TIME, AND I AM PATHOLOGICALLY OPTIMISTIC -- MAYBE
23    DELUSIONAL -- AND I'M HOPING YOU MIGHT SETTLE BEFORE WE HAVE TO
24    DO A THIRD TRIAL.
25          BUT, YOU KNOW, THAT'S JUST AN ISSUE FOR A DIFFERENT DAY.
```

1           IT'S NOT GOING TO BE RESOLVED RIGHT NOW.

2                   MR. JACOBS:  UNDERSTOOD, YOUR HONOR.

3               I THINK WE WENT -- YOU WENT ON TO THE CASE MANAGEMENT ISSUE

4           FROM THE SEVENTH AMENDMENT ISSUE, AND I THINK WE'VE ARGUED THAT

5           FAIRLY WELL.

6                   THE COURT:  ALL RIGHT.  WELL, LET ME GO AHEAD AND

7           STATE MY RULING ON THE RECORD, AND ALSO -- WELL, LET ME JUST

8           SAY, FOR THE SUPPLEMENTAL DAMAGES AND PRE-JUDGMENT INTEREST,

9           SINCE THAT'S A LITTLE BIT EASIER, YOU KNOW, I HAD -- I

10          PREVIOUSLY RULED IN THE MARCH 1ST ORDER THAT BECAUSE SO MUCH

11          MAY BE SUBJECT TO REVERSAL ON APPEAL, IT SIMPLY DOES NOT MAKE

12          SENSE AT THIS POINT TO BE DEALING WITH THESE ISSUES AND

13          ORDERING THESE PAYMENTS AT THIS TIME.

14              AND I CONTINUE TO BELIEVE THAT THAT IS EQUALLY THE CASE

15          NOW, AND SO I'M NOT GOING TO CHANGE MY MARCH 1ST ORDER ON THIS

16          POINT AND I WILL NOT CALCULATE ANY SUPPLEMENTAL DAMAGES OR

17          PRE-JUDGMENT INTEREST UNTIL AFTER ALL OF THE APPEALS ON THIS

18          ENTIRE CASE ARE RESOLVED.  OKAY?

19              SO THAT'S THE RULING ON THE SUPPLEMENTAL DAMAGES.

20              LET'S GO BACK TO THE SEVENTH AMENDMENT ISSUE.

21                  MS. SULLIVAN:  YOUR HONOR, MAY I JUST ASK A QUICK

22          QUESTION ABOUT SUPPLEMENTAL --

23                  THE COURT:  YES.

24                  MS. SULLIVAN:  I THINK WHAT MR. JACOBS WAS JUST

25          REFERRING TO WAS THAT APPLE WANTED TO TRY NEW PRODUCTS THAT

```
1          THAT'S CORRECT, YOUR HONOR.

2               THE COURT:  ALL RIGHT.  WELL, I WAS ACTUALLY NOT

3     SAYING THAT I WOULD ALLOW ANY NEW PRODUCTS TO BE SWEPT INTO THE

4     SUPPLEMENTAL DAMAGES ISSUE.

5          I THINK THE SUPPLEMENTAL DAMAGES ISSUE DEALS WITH THE

6     PRODUCTS THAT WERE THE SUBJECT OF THE TRIAL.

7               MS. SULLIVAN:  WE AGREE WITH THAT, YOUR HONOR.

8               THE COURT:  SO I DO NOT -- I'M NOT GOING TO HAVE, FOR

9     THE PURPOSES OF CALCULATING SUPPLEMENTAL DAMAGES IF IT BECOMES

10    NECESSARY AFTER ALL THE APPEALS, A MINI TRIAL ON WHETHER THE

11    TRACFONE IS IDENTICAL OR NOT TO A PRODUCT THAT WAS THE SUBJECT

12    OF THIS TRIAL.

13         I THINK IF THAT IS THE CASE AND YOU WANT TO GO AFTER THE

14    TRACFONE, THEN YOU'RE GOING TO FILE A NEW LAWSUIT AND I AM NOT

15    GOING TO RELATE THAT CASE.  THAT'S JUST GOING TO GO TO SOMEONE

16    ELSE.  OKAY?

17         OKAY.  SO LET'S AT LEAST ADDRESS THE SEVENTH AMENDMENT

18    ISSUE AND THEN LET'S HANDLE THE CASE MANAGEMENT, PLEASE.

19         ALL RIGHT.  FEDERAL COURTS HAVE RECOGNIZED THAT IN A

20    PATENT CASE, THE ISSUES OF LIABILITY AND DAMAGES ARE MOST

21    LIKELY SUSCEPTIBLE TO SEPARATE TRIALS WITHOUT VIOLATING THE

22    SEVENTH AMENDMENT.  F&G SCROLLING MOUSE VS. IBM, 190 F.R.D.

23    385, PIN CITE 388, MIDDLE DISTRICT OF NORTH CAROLINA, 1999.

24         THE FEDERAL CIRCUIT HELD IN IN RE: INNOTRON DIAGNOSTICS,

25    800 F.2D 1077, FEDERAL CIRCUIT, 1986, THE SEVENTH AMENDMENT
```

1    PROHIBITION IS NOT AGAINST HAVING TWO JURIES REVIEW THE SAME

2    EVIDENCE, BUT RATHER, HAVING TWO JURIES DECIDE THE SAME

3    ESSENTIAL ISSUES.

4         NOTABLY, THE FEDERAL CIRCUIT ROUTINELY REMANDS PATENT

5    CASES FOR NEW TRIALS ON DAMAGES ALONE, JUST CITING AS AN

6    EXAMPLE THE LUCENT CASE DOWN IN THE SOUTHERN DISTRICT OF

7    CALIFORNIA, BUT THERE ARE MANY OTHERS IN WHICH THAT HAS

8    HAPPENED.

9         IN ADDITION, WITHIN THE NINTH CIRCUIT, COURTS HAVE UPHELD

10   OR ORDERED NEW TRIALS ON DAMAGES ALONE IN A VARIETY OF CASES,

11   INCLUDING CASES BROUGHT FOR PATENT INFRINGEMENT.

12        WITH REGARD TO THE QUESTION OF THE '381 AND THE THREE

13   APPLICATIONS AT ISSUE IN THAT PATENT, THE COURT IS PERSUADED

14   THAT -- YOU KNOW, SAMSUNG PREVIOUSLY, IN THE PREVIOUS TRIAL,

15   DID NOT DRAW ANY DISTINCTION BETWEEN THE THREE TYPES OF

16   APPLICATIONS AND SAMSUNG'S EXPERT, MR. WAGNER, HIS EXPERT

17   OPINION WAS THAT MERELY A FLAT FEE OF $10,000 WAS APPROPRIATE.

18   THERE WAS NO DISTINCTION BETWEEN THE DIFFERENT APPLICATIONS.

19        SO THAT ARGUMENT HAS BEEN WAIVED AND IT MAY NOT BE MADE IN

20   A NEW TRIAL ON DAMAGES IF THE '381 IS IN THE CASE.

21        IT MAY WELL BE THAT THE '381 GETS STAYED IF, AS WE'VE

22   ALREADY DISCUSSED, THE PATENT OFFICE DOES NOT REOPEN

23   PROSECUTION OF THE RE-EXAMINATION.

24        THE COURT ALSO FINDS THAT SAMSUNG'S PROPOSAL WOULD VIOLATE

25   THE DOCTRINE OF LAW OF THE CASE.  THE FIRST JURY ALREADY

1    RENDERED A VERDICT THAT PARTICULAR SAMSUNG PRODUCTS INFRINGE

2    THE INTELLECTUAL PROPERTY THAT WOULD BE THE SUBJECT OF THE NEW

3    TRIAL ON DAMAGES.

4        THE COURT AGREES WITH APPLE THAT THE DETERMINATION

5    REGARDING THESE PRODUCTS IS NOW BINDING AND CANNOT BE REVISITED

6    IN A SECOND DAMAGES TRIAL.

7        FINALLY, THE COURT FINDS THAT SAMSUNG'S POSITION, WHICH

8    EFFECTIVELY CONSTITUTES A MOTION FOR RECONSIDERATION, IS

9    PROCEDURALLY AND SUBSTANTIVELY IMPROPER.

10       THIS COURT HAS ALREADY RULED ON A TOTAL OF EIGHT

11   POST-TRIAL MOTIONS IN WHICH THE COURT DID FIND SUFFICIENT

12   EVIDENCE SUPPORTING THE JURY'S FINDINGS OF LIABILITY.

13       MOREOVER, IF SAMSUNG TRULY BELIEVED THAT A NEW TRIAL ON

14   LIABILITY AND DAMAGES WOULD BE NECESSARY TO CURE THE

15   DEFICIENCIES IDENTIFIED DUE TO THE INCORRECT NOTICE DATES IN

16   ITS JMOL MOTIONS, THE APPROPRIATE TIME TO HAVE RAISED SUCH

17   CONCERNS WOULD HAVE BEEN IN ITS JMOL.

18       NOTABLY, IN OTHER PORTIONS OF ITS JMOL, SAMSUNG DID

19   REQUEST A NEW TRIAL ON LIABILITY.

20       HOWEVER, IF IT THOUGHT THAT THE NOTICE DATE ERROR

21   NECESSITATED A RETRIAL ON LIABILITY, IT SHOULD HAVE SO STATED.

22       THE COURT IS NOT PERSUADED THAT SAMSUNG COULD NOT HAVE

23   RAISED THIS ARGUMENT PREVIOUSLY, AND ON THAT BASIS THE COURT

24   FINDS THAT THE SEVENTH AMENDMENT DOES NOT PRECLUDE A NEW TRIAL

25   ON DAMAGES ALONE FOR THE PATENTS AND -- THE PATENTS THAT WOULD

1    BE THE SUBJECT OF A NEW TRIAL.

2         OKAY.  NOW, LET'S GO TO -- SO I AM GOING TO ORDER A NEW

3    TRIAL, AND AS I SAID, THERE WILL BE NO NEW SALES DATA, NO NEW

4    DAMAGES PERIOD, NO NEW PRODUCTS, NO NEW METHODS, NO NEW

5    THEORIES.

6         MS. MAROULIS:  YOUR HONOR, MAY WE ADDRESS YOU BRIEFLY

7    ON THIS POINT?

8         THE COURT:  YES.

9         MS. MAROULIS:  YOUR HONOR SAID THIS MIGHT BE LIKE A

10   GROUNDHOG DAY, BUT IT WILL NOT BE BECAUSE APPLE IS GETTING A

11   BRAND NEW EXPERT, OR POSSIBLY SEVERAL EXPERTS, AND THIS IS AN

12   ISSUE THAT WE WANTED TO ADDRESS TODAY, BECAUSE APPLE'S

13   METHODOLOGY AND REPORT WILL NECESSARILY CHANGE.  ANOTHER PERSON

14   OR PERSONS CANNOT SIMPLY PARROT OR ADOPT EVERYTHING THAT

15   MR. MUSIKA DID.

16        THE COURT:  WELL, HE -- THEY SAID THAT THEY MIGHT

17   SELECT SOMEBODY FROM MR. MUSIKA'S COMPANY.  WHY WOULD THOSE

18   PERSONS NECESSARILY HAVE ANY DIFFERENT THEORIES?

19        MS. MAROULIS:  FIRST OF ALL, YOUR HONOR, IF THEY'RE

20   AN INDEPENDENT EXPERT, THEY'RE LIKELY TO HAVE THEIR OWN

21   OPINION, SO IT'S NOT GOING TO BE A WORD-FOR-WORD WHAT

22   MR. MUSIKA SAID.

23        BUT SECONDLY, APPLE HAS NOT CONFIRMED WHO THEY WILL SELECT

24   OR EVEN WHAT SPECIALTY OF AN EXPERT THEY WILL BE.

25        AND HERE'S THE ISSUE.  THEY MIGHT GO THIS TIME, INSTEAD AN

```
 1          ACCOUNTANT, FOR AN ECONOMIST.  WE HAD MR. WAGNER, WHO HAS

 2          BACKGROUND IN ACCOUNTING.

 3               IF THEY'RE GOING TO BRING IN A PERSON FROM A NEW FIELD,

 4          ECONOMICS, AND PUT TO THE JURY AND SAY "WE HAVE AN ECONOMIST

 5          AND SAMSUNG DOES NOT," WE NECESSARILY NEED TO HAVE AN

 6          OPPORTUNITY TO BRING IN AN ECONOMIST AS WELL TO EITHER REPLACE

 7          OR SUPPLEMENT MR. WAGNER.

 8               THE COURT:  OKAY.  WELL, LET ME ASK APPLE -- LIKE, I

 9          CAN EASILY SET THIS RETRIAL FOR 2017.  THERE IS NOTHING THAT

10          REQUIRES ME TO DO THIS IMMEDIATELY.

11               SO TELL ME, HOW REASONABLE ARE YOU GOING TO BE IN THIS

12          PROCESS?  BECAUSE IF THAT IS THE CASE, THEN I WILL NOT SET THIS

13          TRIAL FOR ANOTHER SEVERAL YEARS.  YOU ALREADY HAVE A TRIAL

14          GOING AGAINST SAMSUNG IN MARCH OF NEXT YEAR.  SO HOW REASONABLE

15          ARE YOU GOING TO BE ON THIS?

16               I THOUGHT -- I WAS VERY DISAPPOINTED THAT YOU WERE

17          UNWILLING, AFTER ALL THIS TIME, TO EVEN SAY WHO YOUR EXPERT IS

18          GOING TO BE.

19               MR. JACOBS:  WELL, WE'VE TOLD WHO THE OPTIONS ARE,

20          AND THE OPTIONS ARE MR. -- DR. VELLTURO, WHO IS THE DAMAGES

21          EXPERT IN THE '630 CASE, OR SOMEONE FROM INVOTEX, AND WE NEED

22          TO KNOW THE DATES SO WE CAN MAKE SURE OUR EXPERTS ARE

23          AVAILABLE.

24               I'M IN ANOTHER CASE RIGHT NOW WHERE THE OTHER SIDE HAD TO

25          FILE A MOTION TO CONTINUE THE TRIAL DATE BECAUSE ITS EXPERT WAS
```

```
 1    UNAVAILABLE.

 2       THE --

 3              THE COURT:  WHO IS THE PERSON AT INVOTEX?  IS THAT --

 4    IS THAT MR. MUSIKA'S COMPANY?

 5              MR. JACOBS:  YES.

 6              THE COURT:  OKAY.

 7              MR. JACOBS:  THE -- ON MS. MAROULIS'S SPECIFIC POINT,

 8    WE CAN CERTAINLY AGREE NOT TO ARGUE THAT ON ACCOUNT OF -- THIS

 9    WOULD BE VELLTURO -- ON ACCOUNT OF VELLTURO BEING AN ECONOMIST,

10    HE OUT CREDENTIALS MR. WAGNER.  THERE'S NO REASON -- WE DON'T

11    NEED TO ARGUE THAT.  WE CAN STIPULATE THAT WE WILL NOT ARGUE

12    THAT.  WE WILL NOT ARGUE TO THE JURY THAT, BECAUSE HE'S AN

13    ECONOMIST AND SAMSUNG DOESN'T HAVE AN ECONOMIST, THEY SHOULD

14    BUY OUR DAMAGES EXPERT'S TESTIMONY OVER THEIR DAMAGES EXPERT'S

15    TESTIMONY.

16              MS. MAROULIS:  YOUR HONOR, MR. VELLTURO IS AN

17    ECONOMIST AND THAT STIPULATION IS A GOOD STEP, BUT IT'S NOT

18    ENOUGH, BECAUSE AS AN ECONOMIST, HE MIGHT HAVE A DIFFERENT

19    APPROACH, DIFFERENT MODELS, DIFFERENT THEORIES.

20       WE SIMPLY CANNOT BE PUT IN A SEPARATE --

21              THE COURT:  WELL, THEN I WILL SET THIS TRIAL FOR 2017

22    AND I WILL SET THIS CMC FOR DECEMBER 2016.

23       I'M TELLING YOU, THIS IS GOING TO HAVE TO BE VERY NARROW.

24    I'M NOT GOING TO HAVE A TOTAL DO-OVER OF THIS TRIAL.

25              MR. JACOBS:  IT WILL BE NARROW, YOUR HONOR.  WE
```

```
 1    UNDERSTAND THE COURT'S DIRECTION, AND UNLESS MR. VELLTURO

 2    THINKS THAT REALLY IN GOOD CONSCIENCE HE CAN'T ADOPT SOMETHING

 3    THAT MR. MUSIKA HAS PUT FORWARD -- AND WE HAVE NO REASON TO

 4    THINK THAT'S THE CASE -- THIS WILL BE BASED ON THE MODEL THAT

 5    MR. MUSIKA ADVANCED.

 6         YOU'LL RECALL THAT THERE IS A -- THAT IT IS QUITE A MODEL

 7    AND THAT -- WE'LL PUT IN THE NEW INPUTS OF THE NEW DATES AND

 8    WE'LL SEE WHAT THE MODEL GENERATES.

 9         AND THEY HAVE THAT MODEL.

10         THE COURT:  LET ME HEAR FROM -- ARE YOU ASKING THAT

11    YOU ALSO BE ALLOWED TO GET A NEW EXPERT?  I'M A LITTLE BIT

12    UNCLEAR ON WHAT THE REQUEST IS.

13         MS. MAROULIS:  YOUR HONOR, WE NEED THE OPTION.  WE

14    NEED THE OPPORTUNITY, ONCE WE SEE APPLE'S REPORT, TO -- FIRST

15    OF ALL, ONCE WE KNOW WHO THEIR EXPERT IS, WE MIGHT HAVE A

16    CHALLENGE TO THEM UNDER WHATEVER PROTECTIVE ORDER.  I'M NOT

17    SAYING THAT WE WILL DO THAT, BUT WE HAVE THAT OPTION AND THEY

18    WON'T GIVE US THE NAME.

19         BUT SECONDLY, ONCE WE HAVE THEIR REPORT, WE SHOULD HAVE AN

20    OPPORTUNITY TO EITHER SUBSTITUTE OR SUPPLEMENT OUR EXPERTS.

21    AGAIN, WE MAY NOT NEED TO DO THAT, BUT WE HAVEN'T SEEN THE

22    REPORT.

23         AND WE WOULD BE VERY SURPRISED IF THE NEW EXPERT ADOPTED

24    WORD-FOR-WORD WHAT MR. MUSIKA DID.

25         ALSO, YOUR HONOR, TO REMIND YOU, THERE'S ANOTHER CONJOINT
```

1    SURVEY EXPERT, MR. HOUSER, ON WHOM MUSIKA RELIED.

2        SO THE NEW EXPERT WOULD NEED TO ADOPT NOT ONLY MR. MUSIKA'S

3    REPORT WHOLESALE, BUT MR. HOUSER'S FINDING ON THE CONJOINT

4    SURVEY AS WELL.

5        AND THE REPORT IS LIKELY TO CHANGE.  THEY CAN'T REPRESENT,

6    STANDING RIGHT HERE, THAT THE REPORT WILL NEVER CHANGE.

7        AND BECAUSE IT LIKELY IS GOING TO CHANGE, WE NEED AN

8    OPPORTUNITY TO REBUT IT WITH MORE EXPERT TESTIMONY AND

9    POTENTIALLY MORE DISCOVERY.

10        THE COURT:  WELL, I'M SAYING NOTHING IS GOING TO --

11    NOTHING IS GOING TO CHANGE.  IF IT DOES CHANGE, THEN I'M GOING

12    TO VACATE THE TRIAL DATE AND I WILL JUST SET A CMC AFTER

13    APPLE II GOES TO TRIAL.  SO IF THAT'S WHAT YOU WANT, THAT'S

14    WHAT I WILL DO.

15        I SIMPLY DON'T HAVE THE CAPACITY TO RELITIGATE THIS

16    WHOLE -- TO REOPEN THIS ENTIRE CASE.

17        SO LET ME HEAR FROM APPLE.  WHATEVER DATES I SET TODAY WILL

18    BE SUBJECT TO COMPLETELY BEING VACATED IF I FIND THE PARTIES

19    ARE UNREASONABLE.  YOU'VE HAD MORE THAN ENOUGH DUE PROCESS IN

20    THIS COURT.

21        MR. JACOBS:  WE HEAR YOUR HONOR.  WE WILL GUIDE

22    OURSELVES ACCORDINGLY.

23        THE COURT:  SO WHY CAN'T YOU JUST HAVE SOMEONE FROM

24    MR. MUSIKA'S FIRM?  I ASSUME HE DIDN'T WRITE THE WHOLE THING

25    HIMSELF.  HE HAD SUPPORT.  HE HAD STAFF.  WHY CAN'T SOMEONE

1    WITHIN HIS FIRM THEN JUST AFFIRM HIS REPORT PREVIOUSLY AND THEN

2    THIS WILL MAKE THIS A MUCH QUICKER, MUCH SMOOTHER PROCESS?

3              MR. JACOBS:  YOUR HONOR, IT'S A MATTER OF TRIAL

4    STRATEGY AND WHO WOULD BE AN EFFECTIVE WITNESS BEFORE THE JURY

5    AND OUR BEST JUDGMENT ON THAT.  IT'S -- IT'S NO LESS THAN THAT

6    AND IT'S NO MORE THAN THAT.

7         AND I HEAR WHAT YOU'RE SAYING AND WE UNDERSTAND THAT

8    SAMSUNG WILL BE IN HERE RAISING A RUCKUS IF THE REPORT

9    SUBSTANTIVELY VARIES FROM MR. MUSIKA'S REPORT.

10        WE WILL BE GUIDED ACCORDINGLY.

11             THE COURT:  I JUST SEE, FORESEE A HORRIBLE SCENARIO

12   OF JUST 30 BOXES OF MOTIONS TO STRIKE EVERY OTHER LINE OF THESE

13   NEW EXPERT REPORTS, THAT THAT WAS NOT PREVIOUSLY DISCLOSED,

14   THAT'S A NEW THEORY, THAT WAS NOT PREVIOUSLY ASSERTED IN THE

15   LAST TRIAL, ET CETERA.

16        AND IF THAT IS GOING TO HAPPEN, THEN I WILL POSTPONE THIS

17   TRIAL BECAUSE I'VE ALREADY SET MY TRIAL CALENDAR THROUGH -- UP

18   TO 2015.

19             MR. JACOBS:  AND ALL I CAN SAY, YOUR HONOR, IS WE

20   HEAR YOU AND WE WILL BE GUIDED ACCORDINGLY.

21        WE HAVEN'T WRITTEN THE REPORT YET.  I DON'T WANT TO MAKE

22   ABSOLUTE COMMITMENTS WITHOUT ASKING -- WITHOUT THE REPORT BEING

23   WRITTEN.

24        BUT WE UNDERSTAND LOUD AND CLEAR WHAT YOU ARE SAYING.  OUR

25   GOAL IS A SIMPLE, SOON TRIAL.  WE WILL BE CAUTIOUS BEFORE WE

```
 1   DATE.  THAT HAS NOTHING TO DO WITH EXPENSES OF APPLE.  SO --
 2            MR. JACOBS:  NO, NO, NOT APPLE EXPENSES.
 3            THE COURT:  SO WHY DOES THAT HAVE TO BE REDONE?
 4            MR. JACOBS:  SORRY.  NOT APPLE EXPENSES, YOUR HONOR.
 5   I'M SORRY I WASN'T CLEAR.
 6            THE COURT:  WHAT?
 7            MR. JACOBS:  YOUR HONOR, IGNORE -- FORGET THIS.  WE
 8   WILL HAVE A SINGLE --
 9            THE COURT:  EXPENSES OF WHAT?
10            MR. JACOBS:  OF SAMSUNG'S DEDUCTIBLE -- RECALL THAT A
11   MAJOR ISSUE AT TRIAL FOR INFRINGER'S PROFITS WAS WHETHER WHAT
12   SAMSUNG HAD CATEGORIZED AS GNA KINDS OF EXPENSES WAS, IN FACT,
13   DIRECTLY ATTRIBUTABLE TO THE SPECIFIC PRODUCTS.  AND THAT'S
14   WHAT THE INSTRUCTION SAYS.  IT SAYS DIRECTLY ATTRIBUTABLE.
15       IN THE NEW TRIAL, BOTH SIDES WILL BE ARGUING THAT ISSUE
16   AGAIN TO THE JURY.  WE HAVE TO ARGUE THAT ISSUE TO THE JURY.
17   WE CAN'T NOT ARGUE THAT ISSUE TO THE JURY.
18       AND OUR WITNESS WILL SAY THAT WHAT SAMSUNG IS PRESENTING TO
19   THE JURY AS DEDUCTIBLE EXPENSES ARE, IN FACT, NOT DIRECTLY
20   ATTRIBUTABLE.
21            THE COURT:  BUT WHAT DOES THAT HAVE TO DO WITH THE
22   NOTICE DATE?  THAT IS THE PIECE THAT I'M MISSING.
23            MR. PRICE:  THAT HAS NOTHING TO DO WITH THE NOTICE
24   DATE.
25       THIS HAS TO DO WITH WHAT THE INFRINGER'S PROFITS ARE.
```

```
 1          I MEAN, THERE WAS A HUGE DIFFERENCE IN NUMBERS BETWEEN
 2     THEIR EXPERT AND OURS BECAUSE MR. WAGNER DEDUCTED COSTS.
 3          AND NOW WE'RE HEARING THAT THEY'RE GOING TO, YOU KNOW, HAVE
 4     TWO EXPERTS.
 5               THE COURT:  GET A DO-OVER.
 6               MR. JACOBS:  WE'LL HAVE A SINGLE EXPERT.
 7               THE COURT:  YOU'LL GET A DO-OVER ON EXPENSES.  I
 8     UNDERSTAND.
 9          FORGET IT THEN.  NO TRIAL DATE.  WE'LL SET ANOTHER CMC.
10          I'M TRYING TO CONVEY HOW SERIOUS I AM THAT THIS NEEDS --
11     I'M NOT GOING TO LET YOU GET A DO-OVER.  YOU ARE NOT GOING TO
12     BE ABLE TO RAISE NEW THEORIES IN THIS CASE.
13               MR. JACOBS:  IT'S NOT A NEW THEORY, YOUR HONOR.  IT'S
14     RIGHT IN MR. MUSIKA'S REPORT.
15               THE COURT:  WHAT IS THE DIFFERENCE OF A CORRECTED
16     NOTICE DATE ON EXPENSES?  YOU HAVE NOT BEEN ABLE TO ARTICULATE
17     WHAT IS THE CONNECTION THERE.  HOW DOES A NOTICE DATE OF
18     APRIL 15TH AFFECT THE EXPENSE?
19               MR. JACOBS:  WHAT I THINK -- LET ME -- WE'VE THOUGHT
20     ABOUT THIS, YOUR HONOR, AND IF YOU JUST GIVE ME A MINUTE HERE,
21     I THINK I CAN INTERPRET IN OUR LEGAL FRAMEWORK WHAT THE COURT
22     IS SAYING.
23          WHAT THE COURT IS SAYING IS THE JURY -- THE COURT BELIEVES
24     THAT THE JURY MADE A FINDING ON DEDUCTIBLE EXPENSES AND AWARDED
25     US A PERCENTAGE OF OUR SOUGHT AFTER LOST PROFITS.
```

```
1        AND WHAT THE COURT IS, IN ESSENCE, PROPOSING IS THAT WE

2   HAVE A NEW TRIAL LIMITED TO THE REVERSE ENGINEERING OF THE

3   PRIOR JURY VERDICT AS IT RELATES TO DEDUCTIBLE EXPENSES.

4        THE COURT WOULD BE, IN EFFECT, TAKING THE REVERSE

5   ENGINEERING AND MAKING IT, THAT PERCENTAGE, A KIND OF A LAW OF

6   THE CASE.

7             THE COURT:  NO, NO, NO.  I'M ASKING YOU TO EXPLAIN,

8   WHAT IS THE RELATION BETWEEN A NEW NOTICE DATE TO EXPENSES?

9             MR. JACOBS:  THERE IS NO --

10            THE COURT:  WHAT IS THAT RELATIONSHIP?  WHY DOES A

11  NEW NOTICE DATE NECESSITATE A NEW ANALYSIS AND A NEW

12  CALCULATION ON EXPENSES?  THAT'S WHAT I DON'T UNDERSTAND.

13            MR. JACOBS:  BECAUSE THE ONLY WAY YOU COULD NOT DO

14  THAT IS TO ACCEPT SOME PRIOR ADJUDICATION OF WHAT THE PROPER

15  DEDUCTIBLE EXPENSES WERE, AND THE COURT ACCEPTED SAMSUNG'S

16  ARGUMENT ON THIS POINT FOR PURPOSES OF DECIDING WHETHER THE

17  JURY'S AWARD WAS EXCESSIVE.

18       BUT TO NOW TURN THAT REVERSE ENGINEERING INTO A RESTRICTION

19  IN THE NEW DAMAGES TRIAL IS TO TAKE THAT REVERSE ENGINEERING

20  WAY, WAY, WAY TOO FAR.

21       THERE'S NO RELATIONSHIP, AS SUCH, BETWEEN THE NEW NOTICE

22  DATE --

23            THE COURT:  I GUESS I DON'T UNDERSTAND.  WHY DO YOU

24  HAVE TO GIVE NEW CALCULATIONS ON EXPENSES?

25            MR. JACOBS:  WE WILL NOT GIVE NEW CALCULATIONS ON
```

```
1              MR. JACOBS:  NOW THAT'S A DIFFERENT --

2              MR. PRICE:  IF THE FIRST TRIAL, IT WAS AN OPINION BY

3      A C.P.A. ABOUT WHAT DEDUCTIBLE COSTS WERE, HUGE ISSUE, HOW TO

4      GET THESE THINGS, AND MR. JACOBS JUST SAID, "WE NEED TO BRING

5      IN AN ACCOUNTANT TO SUPPLEMENT VELLTURO BECAUSE VELLTURO IS NOT

6      QUALIFIED" --

7              THE COURT:  OKAY.  I'M SORRY.

8         YOU HAVE YOUR CLIENT HERE.  ASK IF YOU'RE GOING TO INSIST

9      ON AN ECONOMIST, OKAY?

10        IF YOU INSIST ON AN ECONOMIST, THEN I'M GOING TO GIVE

11     SAMSUNG THE OPPORTUNITY TO SELECT AN ECONOMIST AND WE WILL

12     REOPEN DISCOVERY.  OKAY?

13             MR. JACOBS:  GIVE ME A MINUTE, YOUR HONOR.

14             THE COURT:  GO AHEAD.

15        (PAUSE IN PROCEEDINGS.)

16             MR. JACOBS:  AGREED, YOUR HONOR.  OUR SUBSTITUTE

17     EXPERT FOR TERRY MUSIKA WILL BE A C.P.A.

18             THE COURT:  OKAY.  NOW, MR. PRICE, WHAT'S YOUR

19     RESPONSE TO THAT?

20             MR. PRICE:  WELL, I GUESS THE RESPONSE IS WE --

21     WHOOPS, SORRY.  -- IS THAT WE NEED TO KNOW WHO, WE NEED TO KNOW

22     WHAT THEIR OPINION IS GOING TO BE AND, YOU KNOW, WHETHER --

23     IT'S AMAZING WE'RE HERE AND WE DON'T KNOW WHO.  I DON'T

24     UNDERSTAND WHY WE'RE HERE AND WE DON'T KNOW WHO.

25             MR. JACOBS:  WE TOLD THEM AMONG WHOM IT COULD BE,
```

1    YOUR HONOR.  I THINK THIS HAS NOW TURNED INTO A GRAVER ISSUE.

2              THE COURT:  WELL, I HAVEN'T HEARD.  I'VE HEARD

3    DR. VELLTURO AND MAYBE SOMEBODY FROM INVOTEX.

4              MR. JACOBS:  WELL, NOW WE'RE GOING TO FIND A C.P.A.,

5    YOUR HONOR, BECAUSE -- AND THE BEST C.P.A., THE MOST EFFECTIVE

6    TRIAL WITNESS THAT CAN TESTIFY ON THE DATE THAT YOU SET FOR A

7    NEW TRIAL, THAT'S WHAT WE'RE GOING TO GO OUT AND FIND, AND WHO

8    CAN ADOPT MR. MUSIKA'S REPORT WITH VARIATIONS ONLY -- AS

9    LIMITED --

10             THE COURT:  CAREFUL.

11             MR. JACOBS:  AS LIMITED VARIATIONS AS POSSIBLE.

12             THE COURT:  I'M NOT GOING TO ALLOW ANY VARIATIONS

13   OTHER THAN THE NOTICE DATE.  I'M NOT GOING TO ALLOW ANY OTHER

14   VARIATIONS OTHER THAN THE NOTICE DATE.  I -- IS THAT CLEAR?

15             MR. JACOBS:  THAT SOUNDS LIKE A RULING.  WE'LL TAKE

16   IT AS A RULING.

17             THE COURT:  THAT IS A RULING.

18             MR. JACOBS:  WE'LL TAKE IT AS SUCH.

19             THE COURT:  THERE ARE NO VARIATIONS OTHER THAN THE

20   NOTICE DATE.  THIS IS JUST REDOING THE LAST TRIAL ON THIS ONE

21   LIMITED ISSUE.

22             MS. MAROULIS:  YOUR HONOR, THERE ARE SOME ISSUES THAT

23   WILL COME UP REGARDLESS OF WHAT THE REPORT LOOKS LIKE, AND AT

24   LEAST TWO OF THEM ARE THIS:

25        A NEW PERSON MIGHT BE SUBJECT TO DAUBERT CHALLENGE FOR

1    THEIR QUALIFICATIONS, THAT'S ONE.

2        THE SECOND ONE WE FLAGGED IN OUR PAPERS, WHICH IS THE

3    PRODUCTS THAT YOUR HONOR ENTERED THE FINAL ORDER ON, THOSE ARE

4    THE LOST PROFITS THEORIES.  THEY ACTUALLY KNOW -- THE JURY

5    WOULD KNOW LOST PROFITS FOR THE PRODUCTS THAT ARE GOING TO NEW

6    TRIAL POTENTIALLY, SO WE SHOULD BE ABLE TO BRIEF THAT AND

7    EXPLAIN WHY APPLE MAY OR MAY NOT BRING THAT THEORY FORWARD.

8        SO WHEN YOUR HONOR SAYS WE'LL BE LIMITED TO EVERYTHING LIKE

9    IN THE OLD CASE, WE WANT TO MAKE SURE IT'S CLEAR THAT THE

10   MOTION PRACTICE MIGHT BE DIFFERENT AND THERE WILL BE MOTIONS

11   COMING FORWARD, EVEN IF THE REPORT IS VERY SIMILARLY HUED TO

12   THE OLD REPORT.

13            MR. JACOBS:  YOUR HONOR, THIS IS --

14            THE COURT:  WAIT.  CAN I -- CAN YOU -- I'M SORRY.  I

15   DIDN'T UNDERSTAND WHAT YOU WERE SAYING ABOUT THE AVAILABLE

16   REMEDIES.

17            MS. MAROULIS:  YOUR HONOR, THE JURY REJECTED THE

18   FINDING OF LOST PROFITS AS TO THE PRODUCTS THAT YOUR HONOR

19   DESIGNATED FOR A NEW TRIAL.

20       SO SAMSUNG SHOULD BE ABLE TO SEEK EXCLUSION OF LOST PROFITS

21   THEORIES IF WE SEE IT IN THE NEW REPORT, BECAUSE WE DON'T KNOW

22   WHAT WE'LL SEE IN APPLE'S EXPERT REPORT.

23            MR. JACOBS:  THAT'S AN INFERENCE, YOUR HONOR.

24       IT'S -- THIS IS BACK TO THE POINT ABOUT HOW MUCH WE TAKE

25   THIS REVERSE ENGINEERING OF THE VERDICT AND TURN IT INTO LAW OF