HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

Case No. 11-cv-01846-LHK (PSG)

**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO PRECLUDE CERTAIN TESTIMONY IDENTIFIED ON APPLE'S WITNESS LIST AND DEPOSITION DESIGNATIONS**

Date: October 17, 2013
Time: 1:30 PM
Place: Courtroom 8, 4th Floor
Judge: Hon. Lucy H. Koh

## INTRODUCTION

Having just moved to limit Ms. Davis's testimony, arguing that any testimony regarding other witnesses "must come directly from the witnesses themselves" (Dkt. No. 2432 at 4), Samsung now asks the Court to prevent Apple from calling those other witnesses. Samsung objects to all of Apple's experts other than Ms. Davis and Dr. Hauser, and seeks to preclude any testimony from any Samsung designer, developer, or engineer on Apple's list.[1] In seeking to preclude testimony relating to its use of Apple's patented features and designs, Samsung ignores multiple *Georgia-Pacific* factors, including "[t]he extent to which the infringer has made use of the invention[.]" (Dkt No. 1903 at 56 ¶ 11.) Samsung seeks to preclude testimony on its designers' copying of Apple inventions, ignoring that such evidence shows demand for Apple's products and inventions, and is relevant to lost profits. No Apple witnesses or testimony should be struck.

## I. TESTIMONY REGARDING SAMSUNG'S USE OF APPLE'S PATENTED FEATURES AND DESIGNS AND SAMSUNG'S COPYING IS RELEVANT.

Samsung's insistence that all testimony relating to Samsung's use of Apple's patented features and designs is irrelevant, even evidence of copying, ignores the law. Such testimony is relevant to several reasonable royalty factors, including factor 11, which identifies "[t]he extent to which the infringer has made use of the invention[.]" (Dkt. No. 1903 at 56 ¶ 11.) Testimony regarding "similarity of [the parties'] products," "functionality and operation of [Samsung's products] as they relate to [Apple's] patents," and the other topics that Samsung casts as "infringement" testimony (Mot. at 2), are directly relevant to this factor. Other reasonable royalty factors include value of the invention, popularity and commercial success of the products made under the patent, utility/advantage of the invention, and benefits to those who have used the invention. (*Id.*, Factors 6, 8, 9, 10.) Evidence that Samsung employees targeted and adopted specific features and designs shows that at the time of the hypothetical negotiation, Samsung

[1] Samsung even asks in its conclusion and proposed order that the Court exclude testimony from Ki Hyung Nam, a Samsung engineer who is not discussed anywhere in Samsung's brief.

understood that Apple's inventions were valuable, useful, popular, and beneficial to Apple and those trying to compete with Apple. Apple should be permitted to present testimony on this topic from Apple's experts and Samsung employees on Apple's witness list as proof of the amount of damages.

Similarly, Samsung has repeatedly argued that Apple does not have evidence of demand for Apple's patented features and designs (*see, e.g.*, Dkt. No. 2431 at 4), but seeks in its motion to prevent Apple from presenting testimony showing such demand. Evidence that Samsung's own employees and consultants believed that Samsung needed to adopt Apple's patented features and designs is directly relevant to this issue, as well as to the demand for the patented products, one of the four *Panduit* factors for lost profits. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 2013-1129, Oral Argument at 1:01:22-1:01:42 (Fed. Cir. Aug. 9, 2013) (Judge Bryson stating that "evidence of copying is definitely relevant" to demand), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1129.mp3; *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1360 (Fed. Cir. 2012) (lost profits award supported by infringer's internal documents comparing infringer's previous product and patentee's product and describing advantage of patented feature); *cf. Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1327-28 (Fed. Cir. 2012) (stating that "the evidence that Samsung's employees believed it to be important to incorporate the patented feature into Samsung's products is certainly relevant to the issue of nexus between the patent and market harm").

Samsung seeks simultaneously to prevent Ms. Davis from discussing the prior testimony that supports her conclusions that there is demand for Apple's patented features and designs and that noninfringing alternatives were not as desirable, and to preclude Apple from calling witnesses to deliver that testimony directly. For example, Ms. Davis relied on the testimony of Samsung designer Dong Hoon Chang that Samsung developers considered Apple utility patents when designing Samsung phones, and on the testimony of Drs. Balakrishnan, Singh, and Kare regarding Samsung documents showing studying and adoption of specific patented features and GUI designs. (Dkt. No. 2407-4 Ex. C ¶ 136 (summarizing testimony).) Yet Samsung asks the Court to preclude every one of the above witnesses from testifying and to prevent Ms. Davis from

testifying as to their opinions. (*Compare* Dkt. No. 2432 at 4, *with* Mot. at 7.) Apple should be permitted to present testimony from these witnesses and the other witnesses to which Samsung objects. (*See* Mot. at 2, 4.)

Samsung's claim that Apple "never" referred to copying or Samsung's internal comparisons as evidence of consumer demand when arguing damages before the jury or in post-trial briefing and that Apple is "chang[ing] its position now" (Mot. at 3-4) is simply wrong. Mr. Musika testified that internal Samsung documents evidenced consumer demand, including PX34, in which Samsung referred to iPhone's "easy and intuitive U/I" and "beautiful design," and PX194, in which Samsung executives referred to iPhone's UX and acknowledged iPhone set the "standard of the industry." (Trial Tr. 2078:4-2083:3.) And in opposing Samsung's Motion for JMOL, Apple referred to the "ample evidence" of consumer demand and cited a separately filed list of documents showing "Samsung's intensive effort to copy" Apple's features. (*See* Dkt. No. 2050 at 21 (citing Dkt. No. 1982 at 7-9 as "exhibits and testimony showing that Apple's designs and navigation technology drive consumer demand for smartphones"); Dkt. No. 1982 at 7-9 (listing internal Samsung documents and arguing that "Samsung's intensive effort to copy these specific patented features confirms their importance to consumer demand").)

Samsung's objection that any testimony regarding GravityTank (via deposition from Ms. Conley) should be excluded as it is only evidence of "fame" mischaracterizes the content of the GravityTank document. That document—a consultant's report commissioned by Samsung to assess what consumers want in a smartphone, and admitted in the first trial as PX36—shows that pundits called the iPhone a "revolution" and that consumers praised Apple's design, bounce feature, and two-fingered pinch functionality. (PX36.20, 22, 31, 36.) Samsung's attempt to preclude testimony regarding this evidence of demand for Apple's inventions is meritless.

## II. TESTIMONY REGARDING APPLE'S DESIGN AND DEVELOPMENT PROCESS IS RELEVANT.

Samsung's reference to testimony on "validity" is a misnomer. The term "validity" is nowhere in Apple's witness list. Apple agrees with Samsung that Apple need not re-prove validity and that arguments on patent validity are irrelevant in the new trial.

However, Apple's witnesses should be permitted to testify regarding Apple's design and development process, its graphical user interfaces, and the background and conception of its inventions. The jury needs to understand the patents and the work that went into them in order to evaluate the damages experts' respective opinions, including demand for the features and designs as discussed above. Apple's witnesses should also be permitted to testify regarding the amount of work that went into developing Apple's features and designs to counter Samsung's assertion that it could quickly and easily design around all of Apple's intellectual property. (*See, e.g.*, Aug. 26, 2013 Wagner Report ¶ 478 (lodged by Samsung at Dkt. No. 2401).) Apple should be permitted to present testimony that Apple's patents are not, as Samsung described them in closing argument, "trivial little U/I features like bounceback" that do not drive demand (Trial Tr. 4214:3-4), including through the witnesses to whom Samsung objects. (*See* Mot. at 3.)[2]

## III. SAMSUNG'S OBJECTION TO TESTIMONY THAT PURPORTEDLY RELATES TO RIGHTS AND PRODUCTS NOT AT ISSUE IN THE CASE IS NOT WELL-FOUNDED.

Samsung again mischaracterizes the topics that Apple has disclosed for its witnesses by referring to a broad set of topics as "property rights and products that are not at issue." (Mot. at 5-7.) These objections should be rejected as well.

***Testimony regarding Apple's brand and the relationship between design and brand.*** The relationship between Apple's product design and brand and the other brand-related topics to which Samsung objects are relevant to show consumer demand for design. As Samsung's damages expert Mr. Wagner has admitted, Apple's advertisements try to associate design with brand. (Sabri Decl. Ex. A at 34:17-25, 44:9-14, 46:3-10.) To the extent Apple has succeeded and consumers view the Apple brand as associated or synonymous with design, consumer demand for the Apple brand is evidence of consumer demand for Apple's designs, including the designs that Samsung infringed. In order to prove this, Apple's witnesses must be free to discuss Apple's brand, the strength of Apple's brand, publicity and marketing—at least to the extent such

---

[2] Should Apple call Mr. Forstall, his testimony will be limited pursuant to the Court's order. (Dkt. No. 1563 at 6.)

publicity and marketing includes features or designs that Samsung infringed—the relationship between Apple's design and the strength of its brand, and the impact Samsung's infringing products have on Apple's designs and the Apple brand.

***General topics such as Apple's products, marketing and strategy.*** Samsung's objections to general topics such as "Apple's products," "marketing," and "strategy" should be rejected, as the topics to which it objects are relevant to many areas of the case. Testimony regarding Apple's products, mobile devices, and Apple's history is relevant to introduce the patents and the products at issue and provide the context in which a hypothetical negotiation would have occurred. Testimony regarding marketing and advertising that includes the features and designs Samsung infringed is relevant to show consumer demand and, as discussed above, a link between Apple's brand and the inventions at issue. Testimony regarding Samsung's advertising or corporate strategy is relevant as discussed above to show Samsung's own recognition of consumer demand for Apple's inventions. Samsung's objection that any such topics should be excluded for "undue delay" or "wasting time" is nonsensical—the Court has given the parties time limits, and Apple will present all of its relevant testimony within those limits.

***Products "Not at Issue."*** Samsung argues that any testimony relating to products "not at issue in the upcoming trial" should be excluded, with specific reference only to Mr. Benner, Ms. Yeo, and Dr. Sood.[3] With respect to Mr. Benner, Apple listed "consumer surveys in Samsung's possession relating to the smartphone and tablet markets" as the substance of Mr. Benner's proposed deposition testimony, and such surveys are relevant. With respect to Ms. Yeo, Apple included design and development of "smartphone devices" in the substance of Ms. Yeo's proposed deposition testimony, and will not designate testimony related solely to tablet industrial design. With respect to Dr. Sood, testimony regarding whether buyers of consumer products

---

[3] Without any discussion, Samsung's proposed order seeks to limit the testimony of several other witnesses to "Samsung products at issue." The Court should reject this effort because Samsung fails to support it, and the testimony Samsung seeks to limit—for example, smartphone competition between the parties in the relevant time period—is relevant even if not related to specific products.

value design is relevant, regardless of whether it was tested with reference to the specific products at issue here. No limitation or exclusion is warranted.

***Hyoung Shin Park.*** Samsung argues that Apple should not be able to present any deposition testimony from Hyoung Shin Park, because her prior testimony focused on her design of the F700.[4] Samsung designated the F700 and a document showing the F700 as exhibits (DX526 and DX2627), and Apple objected to the admission of those exhibits (Dkt. No. 2415 at 4; Dkt. No. 2416-1 at 4, 33). If this evidence is admitted over Apple's objection, Apple would then introduce Ms. Park's testimony that she was not aware of any Samsung phones that reference the F700 and that the F700 is a different design than the iPhone to rebut any purported relevance of the F700 and the "independent development theory" Samsung has continually attempted to raise. (Sabri Decl. Ex. B at 50:1-5, 55:3-19.)

***Licensing negotiations.*** Testimony of Mr. Lee and Mr. Watrous about Apple-Samsung licensing negotiations is highly relevant to reasonable royalties. Mr. Lee is SEC's Director of Licensing and his testimony covers the first meetings between the parties when Apple informed Samsung that Samsung was infringing. (Sabri Decl. Ex. C at 30:10-32:19.) Mr. Watrous, as Vice President & Chief IP Counsel at Apple, is familiar with Apple's licensing negotiations with Samsung and the relevant documents regarding the same.

## IV. SAMSUNG'S CURSORY ATTACK ON OTHER TESTIMONY SHOULD BE REJECTED.

Samsung's laundry list of objections to other topics as "not otherwise related to the appropriate amount of damages," "inadequately disclosed" or "irrelevant and unfairly prejudicial" should be rejected as well.

***Samsung's taxes and transfer/allocation of profits among entities.*** The Court already rejected Samsung's objection in the prior trial. Samsung moved to exclude evidence that Samsung has paid lower taxes than it should have, and Apple opposed, explaining that Samsung's

[4] Samsung's suggestion that Apple "claimed [the F700] copied the iPhone" (Mot. at 6) is not true. Samsung appears to have misunderstood Apple's opening statement, in which Apple presented the F700 as an example of a slider phone Samsung was working on before it began adopting Apple's designs—not an example of a copied phone. (Trial Tr. 320:24-321:4.)

tax accounting is essential to understanding Samsung's profits. (*See* Dkt. No. 1206-1 at 27-30.) The Court denied Samsung's motion other than to exclude argument that Samsung's tax arrangement with the United States government is a form of tax evasion. (Dkt. No. 1267 at 5.)

***Samsung's relationship with wireless network carriers.*** Samsung's relationships with carriers are relevant to show competition between the parties and market reconstruction for the market share component of the lost profits analysis. Testimony relating to Samsung's negotiation with wireless carriers and its dependence on approval from carriers is also relevant to demonstrate the unreasonable nature of Samsung's short design-around estimates.

***Samsung's document preservation practices.*** Samsung's retention, preservation, and production of documents is relevant to support Apple's argument that Samsung's financial documents are unreliable. The unreliability of Samsung's financial information is a key issue in the dispute between the parties over appropriate costs to deduct in determining Samsung's profits. (*See, e.g.*, Trial Tr. 2063:5-2066:22.)

***Competitive intelligence and strategy.*** Samsung's objections that Apple should not elicit testimony regarding "competitive intelligence practices," "business strategies," and "corporate strategy" should be rejected for the reasons discussed above regarding the relevance of Samsung's intent and design strategy to show demand for Apple's inventions. (*Supra*, at 1-3.)

***Testimony regarding "subjects of" prior depositions or "authenticity."*** Samsung's objection to any description of testimony as concerning "the subjects of" a witness's prior depositions or reports is hollow, particularly as Samsung used the same language in its list. (*See, e.g.*, Dkt. No. 2413-3 at 3, 4, 5.) Apple also provided examples of what those subjects included. Apple's disclosure that it may use deposition testimony to authenticate documents is reasonable and consistent with the parties' practice. (*See, e.g.*, Dkt. Nos. 1278, 1287.)

**CONCLUSION**

For the reasons set forth above, Apple respectfully submits that Samsung's motion to preclude certain testimony should be denied in its entirety.

Dated: September 23, 2013

MORRISON & FOERSTER LLP

By: */s/ Harold J. McElhinny*
HAROLD J. MCELHINNY

Attorneys for Plaintiff
APPLE INC.