# Exhibit A
# (Submitted Under Seal)

1
2
3
4
5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No.11-cv-01846-LHK |
| Plaintiff, | **REBUTTAL EXPERT REPORT OF TERRY L. MUSIKA, CPA** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

**SUBJECT TO PROTECTIVE ORDER**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

## TABLE OF CONTENTS

| | | |
|---|---|---|
| A. | QUALIFICATIONS | 1 |
| B. | ASSIGNMENT | 1 |
| C. | DATA AND OTHER INFORMATION CONSIDERED | 2 |
| D. | SAMSUNG'S FEATURE PATENTS | 2 |
| E. | APPLE INC. | 4 |
| F. | SAMSUNG | 5 |
| G. | INDUSTRY AND MARKET | 5 |
| H. | ASSUMPTIONS | 5 |
| I. | SUMMARY OF CONCLUSIONS AND OPINIONS | 5 |
| J. | DETAILED OPINIONS CONCERNING DR. O'BRIEN'S ANALYSIS AND CONCLUSIONS | 5 |
| K. | POSSIBLE REVISIONS TO THIS REPORT | 23 |
| L. | EXHIBITS | 24 |
| M. | PROFESSIONAL ARRANGEMENT | 24 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**APPLE INC.**

**V.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**

**AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**

**REBUTTAL EXPERT WITNESS REPORT OF**

**TERRY L. MUSIKA, CPA**

**A.     QUALIFICATIONS**

1.    I am a CPA with over 37 years of business experience. I am a former audit and consulting partner for the international accounting firm of Coopers & Lybrand which is today named PricewaterhouseCoopers, former Managing Director for Navigant Consulting, Inc. and have previously formed, owned and operated a proprietary database company, two national financial and economic consulting firms, and a merger and acquisition company.  Additionally, I have frequently served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, and Paying Agent.  My resume, attached as **Exhibit 1**, lists my work experience, academic degrees, and publications.

2.    My business address is 1637 Thames Street, Baltimore, Maryland 21231.

3.    During the past 37 years I have provided expert testimony in over 200 separate proceedings before 47 different Federal District Courts throughout the U.S., nine separate state courts, numerous proceedings before the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, numerous arbitration matters and the United States International Trade Commission.  I was accepted as a designated expert in all cases.  **Exhibit 2** lists the cases in which I have testified as an expert witness in deposition and at trial from 2008 to the present.

**B.     ASSIGNMENT**

4.    In the matter of Apple Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, I have been asked by counsel for Apple Inc. ("Apple")

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

to review and comment on the Expert Report of Vincent E. O'Brien dated March 22, 2012 ("Dr. O'Brien's Report").

5. I am prepared to explain my opinions in testimony at deposition and at trial.

**C. DATA AND OTHER INFORMATION CONSIDERED**

6. In arriving at the testimony outlined below, I have based my opinions on my expertise in accounting, auditing, financial and damage analysis, independent research of publicly-available information, and my review of various documents and pleadings produced thus far by both the Plaintiff and the Defendants. I considered the documents identified in **Exhibit 3** to this report in forming the opinions expressed in this report.

7. I previously issued the Expert Report of Terry L. Musika, CPA dated March 22, 2012 ("Original Expert Report"). My opinions expressed in the Original Expert Report are unchanged. Accordingly, I also base my opinions herein on the information and analysis contained in my Original Expert Report including the documents identified on **Exhibit 3** of my Original Expert Report.

8. In addition, I discussed this matter with the following experts for Apple:

- Osman Balci (U.S. Patent No. 7,079,871)
- J. Paul Dourish (U.S. Patent No. 7,456,893)
- Tony Givargis (U.S. Patent No. 7,698,711)
- William Griswald (U.S. Patent No. 7,069,055)
- Mani Srivastava (U.S. Patent No. 7,577,460)
- Peter Rossi (Rebuttal of Dr. R. Sukamar)

9. I have considered and evaluated the reliability of the underlying data and the degree to which my assumptions are supported by the record. The techniques I used to calculate damages are generally accepted within and reliable according to the standards of my profession, and are sufficiently explained and disclosed to permit a review of my work.

**D. SAMSUNG'S FEATURE PATENTS**

10. It is my understanding that Apple is accused of infringing the following Samsung patents:

REBUTTAL EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

2

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

11.    U.S. Patent No. 7,069,055 ("the '055 Patent") "relates generally to calculating and displaying time in a selected world city."[1]

12.    U.S. Patent No. 7,079,871 ("the '871 Patent") "relates generally to a portable phone capable of displaying character messages to be transmitted while carrying out another telephone function. In particular, the '871 patent describes 'a portable telephone having a window division function when drawing up character messages to be transmitted and a telephone data displaying method.' ('871 Patent, "Background of the Invention," Col.1, ll.15-19.)."[2]

13.    U.S. Patent No. 7,456,893 ("the '893 Patent") relates to "a digital image processing apparatus that provides a user with the ability to return to the same image she was viewing in a reproduction (display) mode, when she switches from reproduction mode to a photographing mode, where new images are stored, and then back to the reproduction mode to view the previously viewed image, which is different from the most recently stored image. The user is able to view the previously viewed image when returning to reproduction mode 'irrespective of the duration' that the apparatus was in photographing mode."[3]

14.    U.S. Patent No. 7,577,460 ("the '460 Patent") "purports to teach a particular method for a user to send an e-mail on a portable device that integrates phone and camera functions. The user follows a different sequence of steps depending on whether or not the E-Mail has an image attached to it. If the camera is on, the user can send an E-Mail with an attached image. The attached image can either be the most recent image taken by the camera or an image selected via a scrolling function from among those previously taken. If the camera is off, the user can send an E-Mail without an attached image."[4]

15.    U.S. Patent No. 7,698,711 ("the '711 Patent") "describes a 'portable terminal,' such as a cellular telephone, which can be used by the operator to listen to an MP3 music file while simultaneously working in another application, such as a messaging function."[5]

---

[1] Expert Report of William Griswold, Ph.D. Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,069,055, p. 8.
[2] Expert Report of Osman Balci Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,079,871, p. 8.
[3] Expert Report of J. Paul Dourish, Ph.D. Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,456,893, p. 8.
[4] Expert Report of Mani Srivastava, Ph.D. Regarding Invalidity of the Asserted Claim of U.S. Patent No. 7,577,460, p. 16.
[5] Expert Report of Tony D. Givargis, Ph.D.Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,698,711, p. 20.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

16.  Samsung's intellectual property described above is collectively referred to herein as the "Samsung Feature Patents In Suit."

**E.   APPLE INC.**

17.  My description of Apple as set forth in my Original Expert Report remains unchanged.

*iPod*

18.  In addition to the iPhone and iPad, described in my Original Expert Report, Apple sells media players under the iPod name. Apple introduced the first iPod on October 23, 2001 describing it as "a breakthrough MP3 music player that packs up to 1,000 CD-quality songs into an ultra-portable, 6.5 ounce design that fits in your pocket."[6] Steve Jobs stated, "With iPod, Apple has invented a whole new category of digital music player that lets you put your entire music collection in your pocket and listen to it wherever you go. With iPod, listening to music will never be the same again."[7] Since 2001, Apple has introduced multiple versions of the iPod including, but not limited to, the iPod mini in 2004 (replaced by the iPod nano in 2005), the iPod shuffle in 2005, the iPod with video in 2005 and the iPod touch in 2007.[8]

19.  It is my understanding based on Dr. O'Brien's Table 1, that the iPod touch is the only accused iPod in this matter. The iPod touch was introduced on September 5, 2007.[9] Following the initial launch, Apple released three additional generations of the iPod touch on September 9, 2008,[10] September 9, 2009,[11] and September 1, 2010.[12] ███████████████████████████████

████████████████████████████████████████████

---

[6] Apple Press Info, "Apple Presents iPod," October 23, 2001 (http://www.apple.com/pr/library/2001/10/23Apple-Presents-iPod.html).

[7] Apple Press Info, "Apple Presents iPod," October 23, 2001 (http://www.apple.com/pr/library/2001/10/23Apple-Presents-iPod.html).

[8] Apple Press Info, "iPod + iTunes Timeline" (http://www.apple.com/pr/products/ipodhistory/).

[9] Apple Press Info, "Apple Unveils iPod touch," September 5, 2007 (http://www.apple.com/pr/library/2007/09/05Apple-Unveils-iPod-touch.html).

[10] Apple Press Info, "Apple Introduces New iPod touch," September 9, 2008 (http://www.apple.com/pr/library/2008/09/09Apple-Introduces-New-iPod-touch.html).

[11] Apple Press Info, "Apple Introduces New iPod touch Lineup," September 9, 2009 (http://www.apple.com/pr/library/2009/09/09Apple-Introduces-New-iPod-touch-Lineup.html).

[12] Apple Press Info, "Apple Introduces New iPod touch," September 1, 2010 (http://www.apple.com/pr/library/2010/09/01Apple-Introduces-New-iPod-touch.html).

[13] Totals based on APLNDC-Y0000051599 to APLNDC-Y0000051605.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

██████████████████████████████████████████

███████.[14]

**F.    SAMSUNG**

20.    My description of Samsung as set forth in my Original Expert Report remains unchanged.

21.    Throughout my report Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") will be referred to collectively as Samsung.

**G.    INDUSTRY AND MARKET**

22.    My description of the Industry and Market as set forth in my Original Expert Report remains unchanged.

**H.    ASSUMPTIONS**

23.    Although I understand that Apple disputes the validity of the Samsung Feature Patents In Suit and infringement thereof, I have been asked to assume that each of the Samsung Feature Patents In Suit is enforceable and not invalid in reviewing and considering the opinions of Dr. O'Brien.

**I.    SUMMARY OF CONCLUSIONS AND OPINIONS**

24.    Based on my review and analysis of the Expert Report of Vincent E. O'Brien, I have concluded that Dr. O'Brien's reasonable royalty rates, royalty base, and paid-up royalty for the Samsung Feature Patents In Suit as set forth in "Table 6: Royalty Rates," "Table 8: Total Royalty Base (Units)," and paragraph 68 of Dr. O'Brien's report are speculative because they lack adequate credible support and are fatally flawed due to the mathematical and conceptual errors described below.

**J.    DETAILED OPINIONS CONCERNING DR. O'BRIEN'S ANALYSIS AND CONCLUSIONS**

Dr. O'Brien's Final Calculation Contains a Material Math Error and Includes Sales of the iPhone 4S, a Product Which the Court has Excluded

25.    Dr. O'Brien overstates his royalty base by approximately 17.5 million units for the '460 and '871 Patents and approximately 15 million units for the '893 and '711 Patents (**Exhibit 5.3**). This causes an overstatement in damages of $10,390,891, the removal of which causes a decrease in Dr.

---

[14] Totals based on APLNDC-Y0000051599 to APLNDC-Y0000051605.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

O'Brien's running royalty damages from $32,955,721 to $22,564,829 (**Exhibit 5**).   As described below, there are two reasons the royalty base identified by Dr. O'Brien is overstated.

26. First, Dr. O'Brien has included sales of the iPhone 4S in his calculation. It is my understanding that Judge Koh ruled on March 27, 2011, after the issuance of Dr. O'Brien's report, that the iPhone 4S should not be included in this matter.[15] Accordingly I have removed ███████ units from Dr. O'Brien's royalty base for each of Samsung's Feature Patents In Suit (**Exhibit 5.3**). This adjustment represents ██████ of the total overstatement (**Exhibit 5.1**).

27. Next, Dr. O'Brien incorrectly accounted for reported sales data of the iPhone 4 from the second, third, and fourth quarters of fiscal year 2011 by placing these sales in the first, second and third quarters, respectively. Additionally, Dr. O'Brien used Apple's total fiscal year 2011 sales of the iPhone 4 as fourth quarter sales for that year. This mistake doubles Apple's unit sales for 2011, overstating his royalty base by ██████.[16] **Exhibit 5.4** outlines the mistake in detail**. This error represents ██████ of the total overstatement (**Exhibit 5.2**).

_Dr. O'Brien's Use of a $0.99 App as a Proxy is Unsupported, Speculative and Directly Contradicted by Existing Financial Facts_

28. Dr. O'Brien concludes that Apple's sale of a $0.99 application is equivalent to the rate Apple should pay to Samsung for four of the Samsung Feature Patents In Suit that he refers to as "Feature Patents." Although he provides no supporting economic analysis for this conclusion, he explains his conclusion as follows. "The technologies protected by the Feature Patents can all generally be described as enabling features that enhance the consumer experience. As such, they are consistent with Apple's strategy of attempting to provide the best user experience and making something 'really great.' While these features are embedded in the Apple devices, they are similar to applications purchased by consumers from Apple's iTunes Store and their economic value can be gauged by examining the amount consumers pay to purchase similar functionality. Examples of iTunes applications that

---

[15] Order Denying Samsung's Motion to Amend Invalidity Contentions; Order Denying Samsung's Motion to Amend Infringement Contentions, dated 3/27/12, pp. 11-12.
[16] 6,199,100 + 1,299,100 = 7,498,200. See Exhibit 5.4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   contain functionality similar to the Feature Patent technologies include: EZ Pic Share,

2   PhotoOrganizer, ItsABetterClock, TwoView, and SplitScreen."[17]

3   29.   As indicated above, Dr. O'Brien performed no supporting analysis to conclude that a $0.99

4   application is in any way comparable to the specific technology contained in the four Samsung

5   Feature Patents In Suit. In fact, Samsung's Director of Licensing, Jun Won Lee confirmed in

6   deposition that Samsung has never used, considered using, or heard of the price of an application

7   being a factor in determining a royalty or a royalty rate.[18] Further, by Dr. O'Brien's own admittance,

8   the great majority of applications are free, not $0.99. In his report, Dr. O'Brien states that "As of July,

9   2011 one analyst estimated that 82% of all apps downloaded from Apple were free […]"[19] yet he

10  gives no indication why $0.99 is a comparable value for the Samsung Feature Patents In Suit. Dr.

11  O'Brien failed to investigate and therefore understand the application business model and the basic

12  economic statistics surrounding applications.

13  30.   Additionally, Dr. O'Brien did not explain how the functionality of the accused technology is

14  comparable to the apps that he cites by name. Indeed, based on the description of the features of these

15  applications in the iTunes App Store, these applications appear to be either irrelevant to the Samsung

16  Feature Patents In Suit, or offer more expansive features than the accused technology. For example,

17  according to the app description, ItsABetterClock provides information about phases of the moon, not

18  world time.[20] Dr. O'Brien does not explain why this technology is comparable to the '055 Patent.

19  Also, the TwoView application is a "dual pane, six window, 'multitasking' browser" allowing the

20  user to "browse in two windows at once" and to "switch between 3 windows per 'side.'"[21] This

21  functionality appears to be both different from the '871 patent since it deals with web browsing and

22  not text messaging, and more robust since it provides for six different windows. Dr. O'Brien fails to

23  explain or account for these differences, and therefore these $0.99 applications are not a useful,

24  reliable, or proper basis for calculation of damages.

---

[17] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 15.
[18] Deposition of Jun Won Lee, March 26, 2012, pp. 70-72.
[19] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 15-16.
[20] iTunes App Store.
[21] iTunes App Store.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

31.    Dr. O'Brien attempts to assign the same level of demand associated with a $0.99 application to each of the four Samsung Feature Patents In Suit without any consideration of the actual number of downloads associated with the $0.99 applications. Dr. O'Brien never investigated how many consumers actually paid $0.99 for an application. For example, Dr. O'Brien lists five applications that "contain functionality similar to the Feature Patent technologies." Listed below, as well as in **Exhibit 6.1**, are the total number of actual paid downloads and the total resulting revenue to both developer and licensee for each of the five applications listed by Dr. O'Brien as comparable.

- EZ Pic Share – 2 downloads, totaling $2
- PhotoOrganizer –142 downloads, totaling $282
- ItsABetterClock – 15 downloads, totaling $15
- TwoView – 2,340 downloads, totaling $2,761
- SplitScreen – 1,953 downloads, totaling $1,976

32.    Based on the above results of the applications identified by Dr. O'Brien, the four Samsung Feature Patents In Suit would have an average value of approximately $1,007 over the current life of the application as seen in **Exhibit 6.1**.

33.    However, Dr. O'Brien ignores the fact that the maximum number of paid downloads for any of his comparable applications was only 2,340 over the current life of the application. Ignoring this fact, Dr. O'Brien then applies the same $0.99 to between 24 and 58 million downloads or sales for iPhones.[22] Dr. O'Brien's flawed logic assumes that because 2,340 applications involving a feature were sold for $0.99 each, Samsung or Apple could therefore sell 58 million applications containing a feature associated with one of the Samsung's Feature Patents In Suit for $0.99 each. His assumption lacks any quantitative support and fundamentally ignores the law of demand. "All markets must respect the law of demand. According to the law of demand, consumers will almost always purchase fewer units of a product at a higher price than at a lower price, possibly substituting other products."[23]

---

[22] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 20-22, Tables 6, 8 and 9.
[23] Patent Damages Law & Practice, §2:15 (2009) (quoting *Crystal Sem. Conductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336,1359 (Fed. Cir. 2001)).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

34.   Dr. O'Brien's flawed assumption and incomplete analysis is not limited to just the applications that he considered comparable. Analysis by a third party, seen in **Exhibit 7**, places the total value of an individual non-game paid $0.99 application at approximately $3,456.77.[24] In comparison, Dr. O'Brien has calculated total damages for each patent ranging from $4,769,990 for the '711 Patent to $15,642,001 for the '460 Patent.[25] The public source data is consistent with Apple's data and highlights the fact that Dr. O'Brien's use of a $0.99 application as a proxy for the rate on the four Samsung Feature Patents In Suit totally ignores the fundamental law of demand. Further, Dr. O'Brien's opinion is directly contradicted by the economic facts associated with $0.99 applications. Based on the value associated with a $0.99 application, total damages for each of the four Samsung Feature Patents In Suit should not exceed $3,500 per patent.

Dr. O'Brien has Mistakenly Reversed the Percent of Application Developer Revenue that is Paid to Developers in the Real World

35.   Providing Samsung ▮▮▮▮▮ of the royalty as the developer is the direct opposite of the application arrangement Dr. O'Brien claims to be using as his model. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮.[26] Dr. O'Brien's illogical reversal of the ▮▮▮▮▮▮▮▮▮ is yet another conceptual error in his analysis.

Dr. O'Brien's Usage Factor Lacks Adequate Support and is Therefore Speculative

36.   I understand, based on my discussion with Peter Rossi, that there is inadequate support for Dr. O'Brien's  use of the "Percent of Customers Using the Feature Patent Technologies" identified in his Table 4.  Dr. Rossi informed me that in his opinion there are multiple flaws in this data including an improper survey construction.

Dr. O'Brien Inexplicably Varies the Rate Based on Percent of Consumers Using the Technologies Related to the Samsung Feature Patents In Suit

37.   Dr. O'Brien's reasonable royalty rate for the four Samsung Feature Patents In Suit which is applied to all three Apple accused products (iPhone, iPad, and iPod) starts with the same $0.99 rate. The royalty

---

[24] Goetz, Geoffrey, "The Average iOS App Publisher Isn't Making Much Money," April 21, 2011 (http://gigaom.com/apple/the-average-ios-app-publisher-isnt-making-much-money/).

[25] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 22.

[26] Deposition of Mark Buckley, February 23, 2012, p. 161.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

rates for each of the patents or the rates for a particular accused product within a single patent vary solely based on the percent of consumers that allegedly use the featured technology. This rate variation based solely on percent of consumer use is illogical and has no economic foundation. According to Dr. O'Brien, the '460 Patent is of less value to an iPod consumer than either an iPad or iPhone consumer.[27] Further, on Table 4 of his report, Dr. O'Brien lists the third most valuable Patent as the '055 Patent for iPhones. The table shows 63 percent usage by iPhone users for the '055 Patent which is the third highest percentage out of eleven presented and is within three percent of the most highly used patent. However, Dr. O'Brien assigned a total damage amount of only $375,000 to the '055 Patent.

38.    According to the usage percentages in Table 4 of Dr. O'Brien's analysis, all of the Samsung Feature Patents In Suit for the iPad and iPod are used less frequently than the '055 Patent. As such, damages for the use of those patents should be lower than $375,000. Further, damages for all uses of the '893 Patent and '871 Patent should be lower than $375,000 royalty Dr. O'Brien assigned to the '055 Patent. Dr. O'Brien provides no explanation or analysis as to why the patents with low usage rates end up having a damage amount significantly higher than the '055 Patent which has been assigned a higher usage rate. Dr. O'Brien's incomplete and incomprehensible conclusion renders his damages economically illogical and unreliable.

---

[27] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 17, Table 5.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

39.     The following table demonstrates by example Dr. O'Brien's illogical conclusions by showing the Samsung Feature Patents In Suit sorted by Dr. O'Brien's iPhone usage rate along with his corresponding iPhone damage claim:

| Patent | Dr. O'Brien's Usage Percent for iPhones[28] | Dr. O'Brien's Damage Claim for iPhones[29] |
|---|---|---|
| '711 | 65.4% | $4,769,990 |
| '460 | 63.9% | $11,007,551 |
| '055 | 63% | $375,000 |
| '871 | 43.5% | $5,742,382 |
| '893 | 42.0% | $3,063,296 |

Dr. O'Brien has Incorrectly Compared the Worldwide R&D for all SEC Products and Services to the Five Samsung Feature Patents In Suit

40.     Dr. O'Brien states that "Samsung invests heavily in R&D and has an extensive patent portfolio."[30] He further states that "From 2005 through 2010 alone, Samsung invested more than $35 billion in research and development."[31] However, Dr. O'Brien fails to relate a single dollar of the claimed R&D to any of the Samsung Feature Patents In Suit. In fact two of the five Samsung Feature Patents In Suit were issued in 2006 and therefore bear no relationship to the R&D expenses incurred by Samsung in 2007 through 2010.

41.     More significantly, Dr. O'Brien's reference to $35 billion in R&D expenses is from Samsung's Answer, Affirmative Defenses and Counterclaims which is for the entire worldwide operations of SEC that bear little to no direct relationship to the Samsung Feature Patents In Suit. The SEC worldwide numbers include R&D for all of Samsung's product lines including but not limited to televisions, Blu-ray players, 3D home-theater systems, laptops, printers, refrigerators, ovens, vacuum

---

[28] Expert Report of Vincent E. O'Brien, March 22, 2012, Table 4.
[29] Expert Report of Vincent E. O'Brien, March 22, 2012, Table 9 and p. 22.
[30] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 4.
[31] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 4.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   cleaners, smartphones, telecommunication systems, digital cameras and camcorders, semiconductors

2   and TV panels.[32] For example, in 2009 Samsung's total worldwide sales of Samsung products that

3   embody the Samsung Feature Patents In Suit were ████████.[33] Total sales in 2009 for SEC were

4   $119 billion.[34] Accordingly, Dr. O'Brien attempts to equate products that represent less than two

5   percent of the sales to 100 percent of the corporate worldwide R&D expense.

6   42.   Dr. O'Brien's failure to establish any causal connection or relationship of the worldwide SEC R&D

7          to the Samsung Feature Patents In Suit in his determination of an appropriate reasonable royalty rate

8          renders his conclusions unsupported, speculative and unreliable.

9          Dr. O'Brien's Criticism of Apple's License Production is Incorrect

10  43.   I have been informed by counsel that Apple searched for and produced patent license agreements

11         related to the accused iPhone, iPad, and iPod Touch products.  However, Apple did not produce other

12         non-patent types of agreements for which it pays royalties related to the accused products, such as

13         copyright, trademark, software, and data licensing agreements. I understand that Samsung did not

14         produce such non-patent agreements either. These other types of agreements account for the

15         unproduced agreements from the royalty reports referenced by Dr. O'Brien.[35]

16         Dr. O'Brien Failed to Consider that the Majority of Apple Licenses are Lump Sum Payments

17  44.   My review of 56 Apple licenses produced in this matter finds that nearly all of Apple's licenses

18         involve lump sum payments for rights to a portfolio of worldwide patents.[36] I identified seven

19         exceptions which are listed below:

20              • Creative Technology Cross License and Settlement[37]

21              • Nokia Cross License and Settlement[38]

22  ────────────────────

23  [32] 2009 Samsung Electronics Annual Report, pp. 30-37.
    [33] SAMNDCA00376902 to SAMNDCA00377405 at SAMNDCA00376906. I have not included sales of additional products

24  which embody the Samsung Feature Patents In Suit included in the file SAMNDCA00372946 because those sales take place after
    2009.

25  [34] 2009 Samsung Electronics Annual Report, p. 44.
    [35] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 10-11.
    [36] The Apple licenses are specifically listed in **Exhibit 3**.

26  [37] Binding Term Sheet between Apple Computer Inc. and Creative Technology LTD and Creative Labs, Inc., August 22, 2006

27  (APLNDC-WH0000536155 to APLNDC-WH0000536171).
    [38] Patent License Agreement between Nokia and Apple Inc., dated June 12, 2011 (APLNDC-X0000007220 to APLNDC-

28  X0000007335).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- Ericsson Cross License[39]

- VoiceAge Corporation and Nokia Cross License[40]

- Audio MPEG, Inc. License[41]

- Audio MPEG, Inc. License[42]

- Via Licensing Corporation License[43]

45. Dr. O'Brien proposes per unit royalties for the Samsung Feature Patents In Suit while failing to consider that the majority of Apple's licenses involved lump sum payments.  My review identified seven exceptions out of 56 licenses where a running royalty was included as a financial component of an Apple license. Dr. O'Brien does not specifically reference any of these eight licenses in determining his per unit royalty rates.

Dr. O'Brien's Use of the Klausner Agreement is Speculative and Unsupported and Materially Overstates Any Damages Due to the Alleged Infringement of the '055 Patent

46. Dr. O'Brien indicates that the '055 Patent cites US Patent No. 5,375,018 ("the '018 Patent"). Further, Dr. O'Brien indicates that the '018 Patent was included in a portfolio of patents licensed to Apple by Klausner ███████████████████████. Based solely on the reference by the '055 Patent to the '018 Patent, Dr. O'Brien concludes "Given the nature of this patent I conclude that this license is comparable to a hypothetical license to the '055 World Clock patent."[44]

47. I am unaware of any financial, economic or other precedential basis wherein the reference of one patent to another patent within the patent text establishes an acceptable basis for the determination of a reasonable royalty rate. Even more significantly, the facts concerning the licensing of the '018

---

[39] Global Patent License Agreement between Apple Inc. and Telefonaktiebolaget L M Ericsson, dated January 14, 2008 (APLNDC-WH0000536194 to APLNDC-WH0000536213).

[40] Patent License Narrowband AMR and Wireband AMR Standards between Apple Computer, Inc. and VoiceAge Corporation and Nokia Corporation, June 3, 2003 (AppDel0158906 to AppDel0158943).

[41] License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer, Inc., July 1, 2005 (APLNDC-WH0000725229 to APLNDC-WH0000725257).

[42] Software License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer Inc., January 1, 2006 (APLNDC-WH0000725258 to APLNDC-WH0000725288).

[43] MPEG-4 Audio Patent License Agreement between Apple Computer, Inc. and Via Licensing Corporation, October 6, 2003 (APLNDC-WH0000725289 to APLNDC-WH0000725319).

[44] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 12.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Patent from Klausner by Apple are completely contradictory to the manner in which Dr. O'Brien has attempted to use the Klausner agreement.

48. 

49.

**Dr. O'Brien Failed to Provide any Support that either Samsung or Apple Promoted the Use or Availability of the Patented Features**

50.   Dr. O'Brien fails to demonstrate that either party has promoted any features related to Samsung's Feature Patents In Suit. By failing to do so, he has directly contradicted his own opinion expressed in an article he co-authored in the Summer of 2011. In his article Dr. O'Brien groups patents which are an "incremental improvement to an existing product" into three categories.   Patents which (1)

---

[45] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 19.

[46] Settlement and Non-Exclusive License Agreement between Apple Inc. and Klausner Technologies, Inc. and Judah Klausner, May 12, 2008, Appendix A (APLNDC-WH0000536237 to APLNDC-WH0000536251 at APLNDC-WH0000536250 to APLNDC-WH0000536251).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   increase revenue and/or profits, (2) add an attractive but not necessary feature, and (3) maintain

2   existing revenue and/or profits.[47] Dr. O'Brien does not identify which category the Samsung Feature

3   Patents In Suit fall into. However, it would appear that his category number (2) is most appropriate.

4   Dr. O'Brien stated in his article that "A reasonable royalty analysis of the second member of this

5   category would appear to be self-evident. If it is indeed a nice but not necessary feature, any market-

6   based royalty would be small if not zero. The analysis here would likely focus on how significant the

7   feature was in the marketplace and whether there are alternatives that are equally attractive."[48] Dr.

8   O'Brien has failed to analyze either the significance of the feature or the availability of alternatives.

9   <u>Dr. O'Brien Failed to Consider Samsung Marketing Deposition</u>

10  51.   Dr. O'Brien either did not have access to, or did not review the deposition of Todd Pendleton, the

11        Chief Marketing Officer for STA, taken on March 21, 2012. In his deposition, Mr. Pendleton was

12        asked specifically about the five features at issue in this matter and Samsung's marketing efforts

13        related thereto.  First, Mr. Pendleton stated that the world clock feature was "Not something that STA

14        or -- in my time here we have ever marketed" and that "I don't believe a world clock or a clock is a

15        reason why you are going to buy a phone.  It wouldn't be worthy of the time and the investment."[49]

16  52.   Second, Mr. Pendleton was asked about "a feature that permits a user to send an email from the mail

17        application, and to send an email with a photo attachment from the photo application at

18        approximately the same time," he stated:

19              THE WITNESS: Again, it's not something that would warrant a

20              marketing campaign as a function or a feature.

                MR. HEYISON:  Q. Why not?

21              A.  It just doesn't seem that important.[50]

22

23

24

---

25  [47] Kiddler, D. and O'Brien, V. "Reasonable Royalties by the New Rules." Dunn on Damages Issue 3, Summer 2011, pp. 8-12 at p. 11.

26  [48] Kiddler, D. and O'Brien, V. "Reasonable Royalties by the New Rules." Dunn on Damages Issue 3, Summer 2011, pp. 8-12 at p. 11.

27  [49] Deposition of Todd Pendleton, March 21, 2012, pp. 150-151.
    [50] Deposition of Todd Pendleton, March 21, 2012, pp. 151-152.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

53. Third, Mr. Pendleton was asked about "a feature that  permits a user of the camera application to view a photo in display mode and then use the camera to take a picture and then return to the display mode to view the last photo they were using before taking the picture," he stated:

> THE WITNESS: […] Again, it's not something that would be deemable to a marketing campaign or something in advertising.  I just don't see the value in it.[51]

54. Next, Mr. Pendleton was asked about "a feature that permits the user to listen to music while using other applications," he stated:

> THE WITNESS:   Again, it's not a feature that we would consider deemable for marketing or communications.
>
> MR. HEYISON:  Q. Why is that?
>
> A.  It just doesn't seem like a reason to, again, buy a smartphone.[52]

55. Finally, Mr. Pendleton was asked about "a feature that would permit a user to compose a text message in one window while viewing another function on the phone," he stated:

> THE WITNESS:  It would be the same answer. It wouldn't be something that we would focus in on marketing or communications.
>
> MR. HEYISON:  Q. And why is that?
>
> A.  Just, again, not another core reason to buy a phone.[53]

56. This lack of marketing and/or promotion of the features related to Samsung's Feature Patents In Suit show the limited value of those features.  By ignoring the acknowledged lack of value by Samsung, Dr. O'Brien has determined a conclusion which is unsupported by the sworn testimony of Samsung and rendered his final conclusion speculative and unreliable.

Dr. O'Brien Failed to Consider the Extent to Which Each of Samsung's Feature Patents In Suit was Necessary to the Accused Products or if they Could be Designed Around

57. As mentioned above, in the article written by Dr. O'Brien, two considerations that should be addressed are "how significant the feature was in the marketplace and whether there are alternatives

---

[51] Deposition of Todd Pendleton, March 21, 2012, pp. 152-153.
[52] Deposition of Todd Pendleton, March 21, 2012, pp. 153-154.
[53] Deposition of Todd Pendleton, March 21, 2012, pp. 154-155.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

that are equally attractive."[54] Dr. O'Brien fails to acknowledge either of these points in relation to the Samsung Feature Patents In Suit.  Based on my discussion with Apple's technical experts for the Samsung Feature Patents In Suit, I understand that none of these features is essential to the operation of the accused products. Secondly, I understand based on my discussions with the respective technical experts that there are multiple commercially acceptable design arounds regarding each of the Samsung Feature Patents In Suit. The following is a short description of each design around:

- The '055 Patent – I understand that in the alternative to the claimed technology, Apple could simply replace the relative day label ("Today" / "Tomorrow" / "Yesterday") with an absolute date label.  "Interestingly, Samsung's investigation into iPhone owners' opinions as to the desirability of the relative day indicator labels revealed that 60% of iPhone users would prefer an absolute date."[55]

- The '871 Patent – I understand that there are at least three readily available alternatives to the claimed technology, some of which are already in practice.  First, to design around the App Switcher, Apple could disable the App Switcher allowing the user to "switch between apps by tapping the hardware Home button once to bring up the full-screen home screen displaying icons for all available apps." Additionally, Apple could "permit a user to switch between the UIs of the Background Apps by using multi-finger gestures" as currently implemented in the iPad. Second, a design around to Notification Center banners, is to "remove the Banners alert style and permit users to receive either (i) no notifications, or (ii) notifications by using the Alerts style" which are currently implemented in the accused products. Last, to design around Bluetooth keyboard decoupling, Apple could "instruct users not to decouple a Bluetooth keyboard while composing a text message."[56]

- The '893 Patent – I understand that there are multiple alternatives to the claimed technology.  In the first alternative, the device could display the "latest stored image file (i.e.,

---

[54] Kiddler, D. and O'Brien, V. "Reasonable Royalties by the New Rules." Dunn on Damages Issue 3, Summer 2011, pp. 8-12 at p. 11.
[55] Rebuttal Expert Report of William Griswold, Ph.D. Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,069,055, April 16, 2012, pp. 37-39.
[56] Rebuttal Expert Report of Dr. Osman Balci Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,079,871, April 16, 2012, pp. 56-59.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the most recently captured and stored image) first when a user enters reproduction mode."  In the second alternative, the "last displayed image would be displayed for predetermined period of time, but once that time period elapses, the last captured image is displayed instead." Third, the "most recently captured image could be displayed with the previously-viewed image as a split screen" allowing the user to select which image to view. Next, "the most recently captured image could be displayed for a short period of time (e.g., a few seconds)," after "the time elapses, the previously viewed image could be displayed." Finally, the user could be presented with an "album view, displaying a collection of images rather than a single image."[57]

- The '460 Patent – I understand that one alternative to the claimed technology would be "not to display the actual image in the email" but to "display the file name that corresponds to the image and include the image as an attachment." Alternatively, Apple could simply not allow "a user to start drafting a second email before transmitting a first email already in progress."[58]

- The '711 Patent – I understand that an alternative to the claimed technology is that the small music indicator icon "could simply be removed while all music player multitasking functionality is kept the same. The playing of the music file itself indicates to the user that the music is playing without additionally requiring a visual symbol."[59]

Dr. O'Brien's Conclusion Concerning the Extent to Which Samsung Feature Patents In Suit are Used as a Generator of Sales of Non-Patented Items is Improperly Conceived, Lacks Relevant Results and is Directly Contradicted by Samsung's Own Disclosures

58. *Georgia-Pacific* Factor 6 begins by stating, "The effect of selling the patented specialty in promoting sales of other products of the licensee."[60] ████████████████████████████████████████

---

[57] Rebuttal Expert Report of J. Paul Dourish, Ph.D. Regarding Non-Infringement Of The Asserted Claims Of U.S. Patent No. 7,456,893, April 16, 2012, pp. 29-31.

[58] Rebuttal Expert Report of Mani Srivastava, Ph.D. Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,577,460, April 16, 2012, pp. 35-37.

[59] Rebuttal Expert Report of Tony Givargis, Ph.D. Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,698,711, April 16, 2012, pp. 29-31.

[60] *Georgia-Pacific Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4 [black redaction bar]"[61] Although Apple has had considerable

5 commercial success with the sale of collateral and derivative products, Dr. O'Brien's comment is

6 fatally flawed because he performed no analysis to measure the extent of the Apple sales that were

7 made due to Apple's own contributions as opposed to any contributions from the Samsung Feature

8 Patents In Suit. This point is reinforced by Samsung's own marketing witness as discussed above.

9  59.  As discussed elsewhere in my report, Dr. O'Brien acknowledges that "Apple has significant

10 capabilities in product design, marketing, distribution and supply chain management."[62] In fact, Dr.

11 O'Brien acknowledges that "Apple became the most valuable company in the world."[63] Further,

12 Apple's brand was ranked number eight in the world by Interbrand in 2011.[64] Additionally, a 2012

13 ranking by Brand Finance ranked Apple the number one brand in the world.[65] Finally, Dr. O'Brien

14 states in his report that Apple "is committed to bringing the best user experience to its customers

15 through its innovative hardware, software, peripherals and services. The Company's business strategy

16 leverages its unique ability to design and develop its own operating systems, hardware, application

17 software, and services to provide its customers new products and solutions with superior ease-of-use,

18 seamless integration, and innovative design."[66] Thus, Dr. O'Brien acknowledges in his report that

19 Apple's own commitment to its products, design, and brand are key generators of Apple's sales.

20 60.  Dr. O'Brien has also failed to properly address the remainder of Factor 6. Factor 6 goes on to state

21 "the existing value of the invention to the **licensor** as a generator of sales of his non-patented items"

22 (emphasis added).[67] Dr. O'Brien incorrectly discusses Apple and is silent on whether Samsung's

23

---

[61] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 13-14.
[62] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 18.
[63] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 3.
[64] "2011 Ranking of Top 100 Brands" (http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx).
[65] Brand Finance, "Global 500 2012" (http://brandirectory.com/league_tables/table/global-500-2012).
[66] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 4.
[67] *Georgia-Pacific Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  Feature Patents In Suit have promoted sales of non-patented items of Samsung, the licensor. I would

2  agree with Dr. O'Brien's omission of any analysis and discussion regarding this point because there

3  is no evidence that Samsung has used its Feature Patents In Suit in any way to generate convoyed

4  sales. Even more significantly, Samsung's listing of "Products Practicing The Claimed Inventions"

5  fails to list a single Samsung device that embodies either the '893 or '460 Patent.[68] Accordingly, the

6  Samsung Feature Patents In Suit cannot be responsible for promoting the sales of convoyed items if

7  they are not even included in Samsung products.

8  Dr. O'Brien Completely Ignores Investigating and Analyzing the Established Profitability of the

9  Products Made Under the Alleged Patents

10  61.  The adequacy of the damage compensation is measured by the value of the claimed patent benefits. A

11  benefit conveyed through a patent may initially take various forms (e.g., early market entrance,

12  increased market share, enhanced product visibility, a reduction in manufacturing time, etc.).

13  However, the alleged patent benefit(s) are ultimately measured by the profits such benefits produce.

14  Increased profits basically result from one or more of the following: increased sales volume,

15  increased sales price and/or reduced costs.  If the patent is unable to generate future profits to a

16  reasonable degree of certainty, the patent has little to no value other than speculative value.

17  62.  Dr. O'Brien is silent on the issue as to the amount of profit, if any; Samsung claims may be

18  attributable to the Samsung Feature Patents In Suit. Dr. O'Brien provides no identification of the

19  "established profitability of the product made under the patent" as required in *Georgia-Pacific* Factor

20  8.[69] Without analysis or disclosure regarding the established profitability, he concludes that "this

21  factor is neutral in my consideration of a reasonable royalty rate."[70]

22  63.  As shown on **Exhibits 8 and 9**, SEA's reported audited net profit percent for the years 2007 through

23  2011 was reported as ██████████████████████████████████████

24  ████████████████████████████████  I understand that Samsung does not consider the U.S.

25  sales entities' profit margins as representative of the total profit earned on the sale of Samsung

---

[68] Samsung's Disclosure Of Asserted Claims And Infringement Contentions, Exhibit M.

[69] *Georgia-Pacific Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971).

[70] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 14.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  wireless devices. As discussed in my Original Expert Report, Samsung contends that it uses transfer

2  pricing as a mechanism to avoid paying U.S. taxes and as a result transfer profits out of the U.S.[71]

3  Accordingly, Samsung's disclosed manufacturing operating profit from SEC in Korea is considerably

4  higher. Samsung's reported average manufacturing operating margin as shown on **Exhibit 10** of

5  Samsung products that embody the FRAND and Feature Patents is ███████████████

6  However, this margin is still less than half of ████████████████████████

7  ████████████████████████████.[72]

8  64.  Dr. O'Brien's analysis is incomplete and fails to investigate and determine the actual consolidated

9       profit margins on Samsung products that embody the Samsung Feature Patents In Suit. It is not

10      possible to determine the extent of actual economic loss, if any, that Samsung may have incurred

11      assuming infringement without a proper accounting and analysis of the consolidated profits earned

12      through the sale of the Samsung products and the full extent of tax benefits enjoyed by avoiding U.S.

13      taxes.

14      Dr. O'Brien Fails to Properly Distinguish Between the Realizable Profit of an Accused Product

15      Resulting From the Patented Versus Unpatented Elements

16  65.  *Georgia-Pacific* Factor 13 establishes that a distinction should be made between the realizable profit

17      of an accused product resulting from the patented versus unpatented elements. Factor 13 reads, "The

18      portion of the realizable profit that should be credited to the invention as distinguished from non-

19      patented elements, the manufacturing process, business risks, or significant features or improvements

20      added by the infringer."[73] Dr. O'Brien concludes no amount of realizable profit should be credited to

21      the significant features and improvements added by Apple. Dr. O'Brien's conclusion to *Georgia-*

22      *Pacific* Factor 13 reads as follows. "This factor is neutral in my consideration of a reasonable

23      royalty."[74]

24

25

26  [71] Expert Report of Terry L. Musika, CPA, March 22, 2012, p. 85.
    [72] GAAP Line of Business Reporting (APLNDC-Y0000051610-615 at 612).

27  [73] *Georgia-Pacific Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971).

28  [74] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 18.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

66.    Dr. O'Brien's neglect of this required distinction comes even after he specifically acknowledges the numerous and significant contributions made by Apple. Dr. O'Brien acknowledges that "Apple has significant capabilities in product design, marketing, distribution and supply chain management."[75] In fact, Dr. O'Brien acknowledges that "Apple became the most valuable company in the world."[76] Further, Apple's brand was ranked number eight in the world by Interbrand in 2011.[77] Additionally, a 2012 ranking by Brand Finance ranked Apple the number one brand in the world.[78] Finally, Dr. O'Brien states in his report that Apple "is committed to bringing the best user experience to its customers through its innovative hardware, software, peripherals and services. The Company's business strategy leverages its unique ability to design and develop its own operating systems, hardware, application software, and services to provide its customers new products and solutions with superior ease-of-use, seamless integration, and innovative design."[79] Each of these significant contributions, although mentioned by Dr. O'Brien, were assigned no amount of the accused products' realizable profit.

67.    Dr. O'Brien's failure to consider and properly include the numerous and significant non-patented contributions of Apple in his determination of an appropriate reasonable royalty rate renders his conclusions unsupported, speculative and fatally unreliable.

Dr. O'Brien's Conclusion that Apple would Accept an Offer from Samsung for the Feature Patents In Suit of Less than $6 per Phone and $8 per Tablet is Illogical and a Complete Mischaracterization of Apple Document upon which he Relies

68.    Dr. O'Brien states that he is aware of a licensing proposal put forth by Apple to Samsung, citing an October 2010 presentation.  He states "Apple discussed licensing patents to Samsung covering its 'Proprietary Features' including 'distinctive industrial designs, software platforms or feature sets' for $6 per unit for phones and $8 per unit for tablets."[80] Dr. O'Brien proceeds to equate the "Proprietary

---

[75] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 18.
[76] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 3.
[77] "2011 Ranking of Top 100 Brands" (http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx).
[78] Brand Finance, "Global 500 2012" (http://brandirectory.com/league_tables/table/global-500-2012).
[79] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 4.
[80] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 17 (citing Samsung-Apple Licensing Discussion, October 5, 2010 (APLNDC00010886 to APLNDC00010917 at APLNDC00010898 and APLNDC00010900)).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Features" with the Samsung Feature Patents In Suit, stating "The Feature Patents can be similar to the 'feature sets' contained in this offer.  This indicates that Apple would accept an offer from Samsung for the Feature Patents of less than $6 per phone and $8 per tablet."[81] Dr. O'Brien's characterization of the October 2010 proposal and its relevance to a reasonable royalty calculation are unsupported and illogical.  First, the document to which Dr. O'Brien refers states that Apple offered Samsung a license to a portfolio of Apple patents for $30 per unit for phones and $40 per unit for tablets, but was willing to offer Samsung a 20% discount, if Samsung refrained from using Apple "Proprietary Features"; the document does not indicate that Apple offered to license its proprietary features for $6 per phone and $8 per tablet.[82] Second, Dr. O'Brien provides no explanation for his conclusion that the offer of a discount for not practicing Apple's patents has any bearing on the appropriate license rate for the five Samsung Feature Patents In Suit nor is there any such basis for comparison.  Dr. O'Brien presents no evidence that any patent in the portfolio of Apple "Proprietary Features," let alone all of the patents in the portfolio, provide similar features to the Samsung Feature Patents In Suit.  Thus the October 2010 presentation cited by Dr. O'Brien provides no support for his contentions concerning the reasonable royalty rate for the Samsung Feature Patents In Suit.

69. Accordingly, Dr. O'Brien's conclusions based on his mistaken understanding are incorrect and unreliable.

**K. POSSIBLE REVISIONS TO THIS REPORT**

70. In Dr. O'Brien's analysis of *Georgia-Pacific* Factor 2, he references a dispute in the discovery process between Apple and Samsung relating to licensing. For the purposes of my report, I have assumed that the parties have produced all relevant license agreements and royalty reports. If additional information becomes available, I will supplement my analysis and conclusions if asked to do so.

71. I also intend to review and consider any other additional information provided to me after the production of this report and will supplement my analysis and conclusions if asked to do so.

---

[81]   Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 17-18.
[82]   APLNDC00010886 to APLNDC00010917 at APLNDC00010900.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  **L.  EXHIBITS**

2  72.  **Exhibits 4 through 10** are attached to this report and support my analyses and opinions in this

3  matter.

4  **M. PROFESSIONAL ARRANGEMENT**

5  73.  My work for expert services provided in this matter is charged at a standard billing rate of $550 per

6  hour and is in no way contingent on the outcome of this matter.  In addition, I will be reimbursed for

7  all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this

8  case.

9

10

11  April 16, 2012                                    Terry L. Musika, CPA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INVOTEX**®
GROUP

EXHIBIT 1

# Terry L. Musika, CPA, MPA

Terry L. Musika
Managing Director

Invotex Group
1637 Thames Street
Baltimore, Maryland 21231
Tel  410 824-0145
Fax  410 752-7227

tmusika@invotex.com

**Education and Professional**

- BS, 1970, Indiana University

- Master of Public Affairs in Public Finance, 1974, Indiana University Graduate School of Public and Environmental Affairs

- Certified Public Accountant (CPA), licensed in MD

**Employment**

- Invotex Group

- Maryland First Financial Services Corp. and Intellectual Property Management & Finance, LLC

- Navigant Consulting, Inc.

- PENTA Advisory Services, LLC

- C.W. Amos & Company, LLC

- Maryland First Financial Services Corp.

- Coopers & Lybrand

- Peat Marwick & Mitchell

**Professional Associations**

- American Institute of Certified Public Accountants

- Maryland Association of Certified Public Accountants

- Licensing Executives Society

## Current Position

Mr. Musika is a Managing Director and co-founder of Invotex Group. Mr. Musika serves a broad range of client engagements involving matters of accounting, finance, valuation and general business planning and restructuring.

## Professional Experience

Mr. Musika has served the accounting profession in a variety of roles and responsibilities for over 35 years. His experience includes every level of the accounting and auditing profession from staff level auditor to National Audit Partner in one of the world's largest international accounting firms. Mr. Musika's experience includes 15 years as an auditor and consultant in a wide range of industries for two international accounting firms and one regional accounting firm. Mr. Musika's prior "Big 4" public accounting background includes five years with Peat, Marwick and Mitchell (predecessor of KPMG) as auditor and consultant and seven years with Coopers & Lybrand (predecessor of PricewaterhouseCoopers) as a national research consultant, audit partner and Partner-In-Charge of the Firm's Baltimore Business Investigative Services Practice. Mr. Musika's audit and consulting experience includes both private and public companies from various industries and numerous governmental entities. Mr. Musika also established and served as the Member-in-Charge of the consulting practice for C.W. Amos & Company, a regional accounting firm.

## Federal And State Court Appointments

Mr. Musika has been appointed by both Federal and State Court Judges on numerous occasions to provide the court systems with a range of trustee duties and services. Mr. Musika has served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, Liquidating and Paying Agent.  Mr. Musika has served the state court system as Receiver, Special Master and Court Appointed Special Advocate. Mr. Musika also served as a member of the Panel of Chapter 7 Trustees for the U.S.  Trustee in Maryland for eight years.

## Business Founder, Owner And Operator

Mr. Musika has formed, owned and operated four separate companies. Mr. Musika founded both Maryland First Financial

*March 22, 2010*

Services Corp. and Intellectual Property Management & Finance, LLC, which were combined and now operate as Invotex Group. Previously, Mr. Musika owned and operated Central Data Technologies, a proprietary database company that maintained a private database of financial information and regional economic data on Chapter 11 bankruptcies. Mr. Musika also founded and served as President and CEO of PENTA Advisory Services ("PENTA"), a national financial and economic consulting firm. Mr. Musika began PENTA as the first employee and eventually built the company into 125 accounting, economic and legal professionals with offices in Washington DC, Baltimore, Richmond, Wilmington, New York and Atlanta. Mr. Musika eventually sold PENTA to Navigant Consulting, Inc.

### Expert Testimony

During the past 35 years Mr. Musika has provided expert testimony in over 200 separate proceedings before 47 different Federal District Courts throughout the U.S., nine separate state courts, the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, the American Arbitration Association, and the U.S. International Trade Commission. Mr. Musika's intellectual property experience encompasses patent, trademark, trade secret and copyright matters. He has performed numerous damage analyses including both reasonable royalty and lost profit calculations. Mr. Musika's antitrust damage opinion and expert qualifications were recently cited in a published opinion by The United States Court of Appeals for the Third Circuit.

### Papers, Publications, and Presentations

- "IP Valuation," November 16, 2004, presentation to the UMBC Technology Center (with Debora R. Stewart, CPA).
- "Strategic Valuation Issues Related to the Sale and Purchase of IP Out of Bankruptcy," September 18, 2003, presentation to the BioAlliance Network of the Tech Council of Maryland (with Charles R. Goldstein, CPA).
- "Tax Implications of Intellectual Asset Management," March 12, 2002, Kilpatrick Stockton LLP's <u>IP Masters Teleconference Series</u> (with John K. Lyons, CPA).
- "Valuation of Intellectual Property," May 22, 2001, presentation at the Licensing Intellectual Property Conference of the American Conference Institute.
- "Don't Shoot the Messenger! A Response to the Bankruptcy Information on the Internet Debate," <u>Bankruptcy Court Decisions Weekly News & Comment</u>, September 15, 1998.
- "Creating A Company to Capitalize on Your Technology," January 14, 1998, presentation to the Washington, DC Chapter of the Licensing Executives Society.

**Terry L. Musika, CPA, MPA**                                                    Page 3

- "How Creditors Can Use Regional Bankruptcy Data," <u>Business Credit</u>, October 1997.  (with Charles R. Goldstein, CPA).
- "Valuation of Intellectual Properties – Case Studies," 1997, Licensing Executives Society (LES) Annual Meeting.
- "Approaches to Prejudgment Interest Awards Vary by Court," <u>Legal Times Special Report on Intellectual Property</u>, April 7, 1997 (with Gregory E. Smith, CPA).
- "Valuation of Intellectual Property Assets," 1996, presentation to the Greater Richmond Intellectual Property Law Association (GRIPLA).
- "Prejudgment Interest in Patent Damage Decisions, A Quantitative Analysis," <u>ALI-ABA Trial of A Patent Case Study Materials</u>, September 1995.
- "Trial of A Patent Case," 1993-1995, faculty member and presenter for the American Law Institute — American Bar Association (ALI-ABA), sponsored with the cooperation of the Intellectual Property Law Association of Chicago.
- "Implementing SOP 90-7 for Bookkeeping and Financial Reporting of Companies in Chapter 11." <u>The Journal of Professional Bookkeeping and Management</u>, May 1992 (with Jalal Soroosh, Ph.D.).
- "Financial Reporting Under Chapter 11," <u>The CPA Journal</u>, December 1991.
- "AICPA's Statement of Position on 'Financial Reporting By Entities in Reorganization Under Bankruptcy Code'" <u>NABTALK</u> 1991, pp. 15-20.
- "Montgomery's Auditing - Tenth Edition," 1985 (contributing author).



EXHIBIT 2

# TERRY L. MUSIKA, CPA, MPA
## TESTIMONY, AFFIDAVITS AND EXPERT REPORTS
## 2008 – PRESENT

### Litigation Cases

- Expert Report and Declaration in Apple Inc. v. Samsung Electronics Co., Ltd; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC, Case No. 11-cv-01846-LHK, U.S. District Court for the Northern District of California, San Jose Division (report filed in 2012; declaration filed in 2011).

- Expert Report in Adrienne Andros Ferguson, et al. v. Donald E. Stout, et al., Case No. 08-09767CA, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida Complex Business Litigation Section (report filed in 2011).

- Trial and Deposition Testimony and Expert Report in MeadWestvaco Corporation and MeadWestvaco Calmar, Inc. v. Rexam PLC, Rexam Beauty and Closures Inc., Valois S.A.S., and Valois of America, Inc., Case No. 1:10-cv-00511, U.S. District Court for the Eastern District of Virginia, Alexandria Division (trial and deposition testimony given and report filed in 2011).

- Expert Report in VS Technologies, LLC v. Twitter, Inc., Case No. 2:11-CV-43, U.S. District Court for the Eastern District of Virginia, Norfolk Division (report filed in 2011).

- Deposition Testimony and Expert Reports and Declaration in Bed Bath & Beyond, Inc. v. Sears Brands, LLC, Civil Action No. 08 CV 5839-SDW-MCA, U.S. District Court for the District of New Jersey (deposition testimony given and reports filed in 2011; declaration filed in 2010).

- Deposition Testimony and Expert Report in Fujifilm Corporation v. HTC Corporation and HTC America, Inc., Case No. 09-cv-4109, U.S. District Court for the Northern District of Texas, Houston Division (deposition testimony given and report filed in 2011).

- Trial and Deposition Testimony and Expert Reports in Chevron U.S.A., Inc. v. United States, Case No. 1:04cv1365C, U.S. Court of Federal Claims (trial and deposition testimony given and reports filed in 2011).

- Deposition Testimony and Expert Report in re: Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation, MDL No. 1668, in re: Fannie Mae Securities Litigation, Consolidated Civil Action No. 1:04-CV-01639, U.S. District Court for the District of Columbia (deposition testimony given in 2011; report filed in 2010).

- Trial and Deposition Testimony and Damage Summary in Altavion, Inc. v. Konica-Minolta Holdings, Inc.; Konica-Minolta Business Solutions, USA, Inc.; Konica-Minolta Business

Technologies, Inc.; Konica-Minolta Technology Center, Inc.; Konica-Minolta Systems Laboratory, Inc.; Paul Cattrone; and Does 1 through 50, inclusive, Case No. CIV 467662, Superior Court of the State of California, County of San Mateo (trial and deposition testimony given and summary exchanged in 2010).

- Deposition Testimony and Expert Report in Software Tree, LLC v. Red Hat, Inc., Hewlett-Packard Company, Genuitec, L.L.C., and Dell, Inc., Case No. 6:09-cv-00097-LED, U.S. District Court for the Eastern District of Texas, Tyler Division (deposition testimony given and report filed in 2010).

- Trial and Deposition Testimony, Declaration and Expert Reports in The SCO Group, Inc. v. Novell, Inc., Case No. 2:04cv00139, U.S. District Court for the District of Utah, Central Division (trial and deposition testimony given and declaration filed in 2010; reports filed in 2007).

- Deposition Testimony and Expert Report in The Pep Boys – Manny, Moe & Jack v. GMAC Commercial Finance LLC, Civil Action No. 08-3342 (RBS), U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given and report filed in 2009).

- Deposition Testimony and Expert Report in Cordance Corporation v. Amazon.com, Inc. and Amazon Web Services, LLC, C.A. No. 06-491-MPT, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2009).

- Expert Report in Hitachi Plasma Patent Licensing Co., Ltd. v. LG Electronics, Inc. and LG Electronics U.S.A., Inc. and LG Electronics, Inc. and LG Electronics U.S.A., Inc. v. Hitachi Plasma Patent Licensing Co., Ltd., Civil Action No. 2:07-CV-155 (CE), U.S. District Court for the Eastern District of Texas (Marshall Division) (report filed in 2009).

- Trial and Deposition Testimony and Expert Reports in American Savings Bank, F.A., et al. v. United States, Civil Action No. 92-872 C, U.S. Court of Federal Claims (trial and deposition testimony given in 2009; reports filed in 2000 and 2009).

- Trial and Deposition Testimony and Expert Reports in Lockheed Martin Corporation v. L-3 Communications Corporation and L-3 Communications Integrated Systems, L.P., Case No. 1:05-cv-0902, U.S. District Court for the Northern District of Georgia (Atlanta Division) (trial testimony given in 2009; deposition testimony given and reports filed in 2007).

- Deposition Testimony and Expert Report in Bank of America, N.A., as Successor by merger to Fleet National Bank as Agent for a Syndicate of Lenders v. Deloitte & Touche LLP,  Civil Action No. 06-2218-BLS1, Superior Court for the Commonwealth of Massachusetts (deposition testimony given and report filed in 2009).

- Deposition Testimony and Expert Report in Dennis J. Buckley, as Trustee of the DVI Liquidating Trust v. Deloitte & Touche USA LLP and Deloitte & Touche LLP, Case No. 1:06-cv-03291-SHS, U.S. District Court for the Southern District of New York (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Report In Re: DVI, Inc. Securities Litigation, Case No. 2:03-CV-05336-LDD, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Report in WM High Yield Fund, WM Income Fund, AT High Yield Fund, WM VT Income Fund, AT Income Fund, Evergreen Funding Ltd./Evergreen Funding Corp., and Stellar Funding Ltd. v. Michael A. O'Hanlon, Steven R. Garfinkel, Richard Miller, Anthony J. Turek, John P. Boyle, Terry W. Cady, Matthew Colasanti, Raymond Fear, Gerald Cohn, Harry T. J. Roberts, William S. Goldberg, John E. McHugh, Nathan Shapiro, Deloitte & Touche LLP, Harold Neas, Oncure Technologies Corporation, Jeffrey Goffman, Presgar Imaging LLC, and Dolphin Medical Inc., Case No. 04-CV-3423, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Reports in McKesson Information Solutions LLC v. Epic Systems Corporation, Civil Action No. 1:06-cv-2965 (JTC), U.S. District Court for the Northern District of Georgia, Atlanta Division (deposition testimony given in 2009; reports filed in 2008 and 2009).

- Trial and Deposition Testimony and Expert Report in Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company (Plaintiffs) v. Lincoln National Life Insurance Company (Defendant) and Lincoln National Life Insurance Company (Defendant/Counterclaimant) v. Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company (Plaintiffs/Counterclaim Defendants), Case No. C 06-110-MWB, U.S. District Court for the Northern District of Iowa, Cedar Rapids Division (trial testimony given in 2009; deposition testimony given and report filed in 2008).

- Supplemental Declaration, Trial and Deposition Testimony and Expert Reports in Pioneer Corporation v. Samsung SDI Co., Ltd., Samsung Electronics Co., Ltd., Samsung SDI America, Inc., and Samsung Electronics America, Inc., Civil Action No. 2:06-CV-384 (DF), U.S. District Court for the Eastern District of Texas, Marshall Division (declaration filed, trial and deposition testimony given and reports filed in 2008).

- Deposition Testimony and Expert Report in Kevin Keithley and TREN Technology Holdings, LLC v. The Homestore.com, Inc., The National Association of Realtors, and The National Association of Home Builders of the United States, Case No. C03-04447 SI (EDL), U.S. District Court for the Northern District of California, San Francisco Division (deposition testimony given and report filed in 2008).

- Expert Report in Cisco Systems, Inc. and Cisco Technology, Inc. v. Telcordia Technologies, Inc., Civil Action No. 07-113-GMS, U.S. District Court for the District of Delaware (Wilmington) (report filed in 2008).

- Deposition Testimony and Expert Report in Lincoln National Life Insurance Company v. Transamerica Financial Life Insurance Company, Cause No. 1:04-CV-396-TLS-RBC, U.S.

District Court for the Northern District of Indiana, Fort Wayne Division (deposition testimony given and report filed in 2008).

- Deposition Testimony and Expert Report in Pioneer Corporation (Plaintiff) v. Samsung SDI Co., Ltd., Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. (Defendants) and Samsung SDI Co., Ltd. (Counterclaim Plaintiff) v. Pioneer Corporation, Pioneer Electronics (USA) Inc., and Pioneer Electronics Technology, Inc. (Counterclaim Defendants), Civil Action No. 2:07-CV-170 (DF), U.S. District Court for the Eastern District of Texas, Marshall Division (deposition testimony given and report filed in 2008).

- Arbitration Proceeding Testimony in the matter of the Arbitration between Syngenta Crop Protection, Inc. and LG Life Sciences, Ltd. before the American Arbitration Association, Case No. 16 171 Y 00954 06 (arbitration proceeding testimony filed in 2008).

- Deposition Testimony and Expert Report in Oracle Corporation and Oracle U.S.A., Inc. v. EpicRealm Licensing, LP, Case No. 06-414-SLR, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2008).

- Trial and Deposition Testimony and Expert Report in Tessera, Inc. (Claimant) v. Amkor Technology, Inc. (Respondent) and Amkor Technology, Inc. (Counter-claimant) v. Tessera, Inc. (Counter-respondent), Ref. No. 14 268/EBS, International Court of Arbitration of the International Chamber of Commerce (trial testimony given in 2008; deposition testimony given and report filed in 2007).

- Expert Report in the matter of Franklin D. Raines, J. Timothy Howard and Leanne G. Spencer (Fannie Mae officers), Notice Number 2006-1, U.S. Office of Federal Housing Enterprise Oversight (report filed in 2008).

- Expert Report in Ron Nystrom v. Trex Company, Inc., The Home Depot, Inc., and Snavely Forest Products, Inc., Case No. 2:06-cv-569, U.S. District Court for the Eastern District of Virginia, Norfolk Division (report filed in 2008).

- Deposition Testimony and Expert Reports in Parker-Hannifin Corporation, et al. v. Wix Filtration Corporation, Case No. 1:06-CV-0098-LJO-WMW, U.S. District Court for the Eastern District of California, Fresno Division (deposition testimony given in 2008; reports filed in 2007 and 2008).

- Expert Reports in Eric Shaw, receiver of the Estate of Nikota USA, Inc. v. Pep Boys, Inc., Case No. 06-0550, U.S. District Court for the Eastern District of Pennsylvania (reports filed in 2007 and 2008).

- Trial and Deposition Testimony and Expert Reports in Energy Transportation Group, Inc. v. Sonic Innovations, Inc., et al., Case No. 05-422 (GMS), U.S. District Court for the District of Delaware (trial testimony given in 2008; deposition testimony given in 2007; reports filed in 2007 and 2008).

- Expert Reports in Silicon Graphics, Inc. v. ATI Technologies Inc., ATI Technologies ULC and Advanced Micro Devices, Inc., Case No. 06-C-0611-C, U.S. District Court for the Western District of Wisconsin (reports filed in 2007 and 2008).

4

- Deposition Testimony and Expert Report in Elan Pharmaceutical International Limited v. Abraxis Bioscience, Inc., Case No. 06-438-GMS, U.S. District Court for the District of Delaware (Wilmington) (deposition testimony given in 2008; report filed in 2007).

- Expert Reports in Morning Sun, Inc. d/b/a Collegiate Graphics v. Eagle Promotions, LLC et al., Case No. A505399, Superior Court of State of Nevada (reports filed in 2007 and 2008).

**Bankruptcy Cases**

- Trial and Deposition Testimony and Expert Report in re: Railworks Corporation, et al. (Debtors), Case Nos. 01-6-4463-SD through 01-6-4485-SD (Chapter 11) and Zvi Guttman (Litigation Trustee, Plaintiff) v. Steven G. Hutchinson, Douglas W. Hutchinson and C.C. Hutchinson (Defendants), Adversary No. 03-5794, U.S. Bankruptcy Court for the District of Maryland (Baltimore Division) (trial and deposition testimony given in 2010; report filed in 2009).

*Last updated 3.23.12*

5

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                      **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | |
| **Apple Production** | | |
| APLNDC0001248231 | APLNDC0001248250 | License agreement between the University of Delaware, and FingerWorks of Delaware,7/19/1999 |
| APLNDC-Y0000236371 | APLNDC-Y0000236405 | Apple Inc iPhone Royalties Q3FY2007 - Q1FY2012 |
| APLNDC-WH-A0000029886 | APLNDC-WH-A0000029891 | Launch To Date Net Sales by Adam ID (with ITS Billings) 4/1/10-4/4/12 |
| | | |
| **Apple Production** | | |
| **Apple License Agreements** | | |
| | | |
| APL7940018564430 | APL7940018564430 | Wireless Patent License Agreement between Apple Inc. and Koninklijke Philips Electronics N.V., dated 10/1/2010 |
| APL7940018564474 | APL7940018564474 | Wireless Patent License Agreement between Apple Inc. and Koninklijke Philips Electronics N.V. and Sharp Corporation, dated 10/1/2010 |
| APLNDC0001221082 | APLNDC000122113 | Patent Cross License Agreement between Apple Inc. and International Business Machines Corporation (IBM), dated 12/18/2002 |
| APLNDC00014215 | APLNDC00014224 | License Amendment between Apple Computer, Inc. and International Business Machines Corporation (IBM), dated 3/31/2006 |
| APLNDC-WH0000536132 | APLNDC-WH0000536140 | Settlement Agreement between Apple Computer, Inc. and Temic Telefunken Microelectronic GmbH, dated 12/8/1994 |
| APLNDC-WH0000536141 | APLNDC-WH0000536147 | Settlement and License Agreement between Apple Computer, Inc. and Blumenau,Trevor (Individual), dated 5/26/2005 |
| APLNDC-WH0000536148 | APLNDC-WH0000536154 | License Agreement between Apple Computer, Inc. and Advanced Audio Devices, LLC and SP Technologies, LLC, dated 3/31/2010 |
| APLNDC-WH0000536155 | APLNDC-WH0000536171 | Binding Term Sheet between Apple Computer, Inc. and Creative Technology LTD. and Creative Labs, Inc., dated 8/22/2006 |
| APLNDC-WH0000536172 | APLNDC-WH0000536184 | Settlement and License Agreement between Apple Inc. and Burst.com Inc., dated 11/28/2007 |
| APLNDC-WH0000536185 | APLNDC-WH0000536193 | License Agreement between Apple Inc. and Global Patent Holdings, LLC, dated 10/30/2007 |
| APLNDC-WH0000536214 | APLNDC-WH0000536220 | Settlement and License Agreement between Apple Inc. and Reese, Morris, dated 1/31/2008 |
| APLNDC-WH0000536221 | APLNDC-WH0000536236 | License Agreement between Apple Inc. and SP Technologies, LLC ("SPT"), dated 5/1/2008 |
| APLNDC-WH0000536237 | APLNDC-WH0000536251 | Settlement and Non-Exclusive License Agreement between Apple Inc. and Klausner Technologies, Inc., dated 5/12/2008 |
| APLNDC-WH0000536252 | APLNDC-WH0000536259 | Settlement and License Agreement between Apple Inc. and Media Digital Corporation, dated 7/7/2008 |
| APLNDC-WH0000536260 | APLNDC-WH0000536267 | Settlement and License Agreement between Apple Inc. and Morris, Frances E. and the Morris Family Trust, Elizabeth A. Morris Child's Trust, Michael K. Morris Child's Trust, and David K. Morris Child's Trust, dated September 2008 |
| APLNDC-WH0000536268 | APLNDC-WH0000536289 | Patent License Agreement between Apple Inc. and Siemens Aktiengesellschaft, dated 10/2/2008 |
| APLNDC-WH0000536290 | APLNDC-WH0000536298 | Settlement and License Agreement between Apple Inc. and Cloakworks, Inc.; Davide R. Wallace, dated 10/15/2008 |
| APLNDC-WH0000536299 | APLNDC-WH0000536306 | NWay/IEEE Standard Patent License Agreement between Apple Inc. and Negotiated Data Solutions LLC, dated 9/17/2008 |
| APLNDC-WH0000536307 | APLNDC-WH0000536320 | Settlement and License Agreement between Apple Inc. and Texas MP3 Technologies, Ltd., dated 1/9/2009 |
| APLNDC-WH0000536321 | APLNDC-WH0000536330 | Settlement and License Agreement between Apple Inc. and Traffic Information, LLC, dated 1/23/2009 |
| APLNDC-WH0000536332 | APLNDC-WH0000536344 | Settlement Agreement between Apple Inc. and Accolade Systems LLC, dated 4/6/2009 |
| APLNDC-WH0000536345 | APLNDC-WH0000536367 | Patent License Agreement between Apple Inc. and Helferich Patent Licensing, LLC ("HPL"), dated 7/16/2009 |
| APLNDC-WH0000536368 | APLNDC-WH0000536381 | Settlement and License Agreement between Apple Inc. and Fractus, SA, dated 7/23/2009 |
| APLNDC-WH0000536400 | APLNDC-WH0000536409 | Settlement and License Agreement between Apple Inc. and Figa, Romek (d/b/a Abraham & Son), dated 12/8/2009 |
| APLNDC-WH0000536535 | APLNDC-WH0000536563 | Settlement and License Agreement between Apple Inc. and Monec Holding AG, dated 1/22/2010 |
| APLNDC-WH0000536568 | APLNDC-WH0000536578 | Patent License Agreement between Apple Inc. and Haystack Alley, LLC, dated 2/19/2010 |
| APLNDC-WH0000536579 | APLNDC-WH0000536588 | License Agreement between Apple Inc. and ADC Technology Inc., dated 3/31/2010 |
| APLNDC-WH0000536589 | APLNDC-WH0000536602 | License and Settlement Agreement between Apple Inc. and Intellect Wireless, Inc. and Henderson, Daniel A., dated 3/8/2010 |
| APLNDC-WH0000536603; and APLNDC-WH0000536564 | APLNDC-WH0000536682; and APLNDC-WH0000536567 | Re: Letter Agreement Regarding the Saxon Patents between Apple Inc. and RPX Corporation ("RPX"), dated 3/31/2010 |
| APLNDC-WH0000536683 | APLNDC-WH0000536692 | Settlement and License Agreement between Apple Inc. and Tsera, LLC and Li, Chuang and Lin-Li, Jane, dated 5/17/2010 |
| APLNDC-WH0000536693 | APLNDC-WH0000536703 | Patent License Agreement between Apple Inc. and Lady Kensington, LLC, dated 5/10/2010 |
| APLNDC-WH0000536704 | APLNDC-WH0000536714 | Patent License Agreement between Apple Inc. and Stature Ventures, LLC, dated 05/10/2010 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-WH0000536715 | APLNDC-WH0000536726 | Patent License Agreement between Apple Inc. and TurnBridge Wells, LLC, dated 5/10/2010 |
| APLNDC-WH0000536727 | APLNDC-WH0000536740 | Settlement and License Agreement between Apple Inc. and Minerva Industries, Inc. and Kim, Ki Il, dated 7/8/2010 |
| APLNDC-WH0000536741 | APLNDC-WH0000536755 | Settlement and License Agreement between Apple Inc. and EMG Technology, LLC and Gottfurcht, Elliot and Elliot Gottfurcht Revocable Trust and Gottfurcht, Grant and Grant Gottfurcht 2003 Irrevocable Trust and Longstreet, Marlo and Marlo Lonsgreet 2003 Irrevocable Trust, dated 8/2/2010 |
| APLNDC-WH0000536756 | APLNDC-WH0000536764 | Settlement Agreement between Apple Inc. and UO! IP of Delaware, LLC, dated 8/23/2010 |
| APLNDC-WH0000536765 | APLNDC-WH0000536782 | Settlement and License Agreement between Apple Inc. and Bandspeed, Inc. LLC, dated 12/23/2010 |
| APLNDC-WH0000725229 | APLNDC-WH0000725257 | License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer, Inc., July 1, 2005 |
| APLNDC-WH0000725258 | APLNDC-WH0000725288 | Software License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer Inc., January 1, 2006 |
| APLNDC-WH0000725289 | APLNDC-WH0000725319 | MPEG-4 Audio Patent License Agreement between Apple Computer, Inc. and Via Licensing Corporation, October 6, 2003 |
| APLNDC-X0000007220 | APLNDC-X0000007355 | Patent Licenses Agreement between Apple Inc. and Nokia, dated 6/12/2011 |
| AppDel0000001; and APLNDC-WH0000536194 | AppDel0000020; and APLNDC-WH0000536213 | Global Patent License Agreement between Apple Inc. and Telefonaktiebolaget L M Ericsson, dated 1/14/2008 |
| AppDel0000021 | AppDel0000037 | Wireless Patent License Agreement between Apple Inc. and InterDigital Group, dated 6/29/2007 |
| AppDel0000038; and APLNDC-WH0000536465 | AppDel0000051; and APLNDC-WH0000536478 | Settlement and License Agreement between Apple Inc. and SPH America, LLC, dated 12/31/2009 |
| AppDel0000052; and APLNDC-WH0000536410 | AppDel0000070; and APLNDC-WH0000536428 | Settlement and License Agreement between Apple Inc. and SPH America, LLC, dated 12/31/2009 |
| AppDel0000071; and APLNDC-WH0000536429 | AppDel0000091; and APLNDC-WH0000536449 | Settlement and License Agreement between Apple Inc. and SPH America, LLC and Dr. Choongsoo Park, dated 12/31/2009 |
| AppDel0000092; and APLNDC-WH0000536450 | AppDel0000106; and APLNDC-WH0000536464 | Settlement and License Agreement between Apple Inc. and SPH America, LLC, dated 12/31/2009 |
| AppDel0000107; and APLNDC-WH0000536479 | AppDel0000120; and APLNDC-WH0000536492 | Settlement and License Agreement between Apple Inc. and WIAV Networks, LLC (WIAV), dated 12/31/2009 |
| AppDel0000121 | AppDel0000155 | Settlement and License Agreement between Apple Inc. and WiAV Solutions LLC (WIAV), dated 12/29/2008 |
| AppDel0073610 | AppDel0073648 | Settlement Agreement between Apple Inc. and Unova, Inc., dated 2/4/2004 |
| AppDel0158839; and APLNDC-WH0000536493 | AppDel0158880; and APLNDC-WH0000536534 | Apple - ETRI Collaboration Agreement between Apple Inc. and Electronics and Telecommunications Research Institute (ETRI), dated 12/31/2009 |
| AppDel0158881 | AppDel0158905 | Patent License - Narrowband AMR and Wideband AMR Standards between Apple Inc. and Telefonaktiebolaget L M Ericsson, dated 06/03/2003 |
| AppDel0158906 | AppDel0158943 | Patent License - Narrowband AMR and Wideband AMR Standards between Apple Computer, Inc. and VoiceAge Corporation and Nokia Corporation, dated 6/3/2003 |
| AppDel0158944; and APL-ITC796-0000010019 | AppDel0158966; and APL-ITC796-0000010040 | Patent Cross Licenses Agreement between Apple Inc. and Microsoft Corporation, dated 8/5/1997 |
| AppDel0158967 | AppDel0159005 | Patent Cross License Agreement between Apple Inc. and International Business Machines Corporation (IBM), dated 10/1/1991 |
| AppDel0166188; and APLNDC-WH0000536382 | AppDel0166205; and APLNDC-WH0000536399 | Standstill and Option Agreement between Apple Inc. and MSTG, Inc., dated 11/10/2009 |
|  |  |  |
| **Samsung Production** |  |  |
| S-794-ITC-000001547 | S-794-ITC-000001582 |  |
| S-794-ITC-005280718 | S-794-ITC-005280737 |  |
| SAMNDCA00176178 | SAMNDCA00176178 |  |
| SAMNDCA00202221 | SAMNDCA00202221 |  |
| SAMNDCA00203728 | SAMNDCA00203728 |  |
| SAMNDCA00229396 | SAMNDCA00229397 |  |
| SAMNDCA00354386 | SAMNDCA00354600 |  |
| SAMNDCA00365857 | SAMNDCA00365859 |  |
| SAMNDCA00365866 | SAMNDCA00365867 |  |
| SAMNDCA00365881 | SAMNDCA00365896 |  |
| SAMNDCA00365897 | SAMNDCA00365902 |  |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.    **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00365903 | SAMNDCA00365905 | |
| SAMNDCA00365990 | SAMNDCA00366013 | |
| SAMNDCA00366079 | SAMNDCA00366080 | |
| SAMNDCA00366081 | SAMNDCA00366082 | |
| SAMNDCA00366083 | SAMNDCA00366085 | |
| SAMNDCA00366086 | SAMNDCA00366087 | |
| SAMNDCA00366100 | SAMNDCA00366100 | |
| SAMNDCA00366109 | SAMNDCA00366110 | |
| SAMNDCA00373139 | SAMNDCA00373531 | |
| SAMNDCA00374342 | SAMNDCA00374365 | |
| SAMNDCA00376623 | SAMNDCA00376901 | |
| SAMNDCA00376902 | SAMNDCA00377405 | |
| SAMNDCA00376902 | SAMNDCA00377405 | |
| SAMNDCA00380019 | SAMNDCA00380081 | |
| SAMNDCA10850822 | SAMNDCA10850824 | |
| | | |
| **Expert Reports** | | |
| | | Expert Report of Alex C. Snoeren, Ph.D., and Exhibits 1-8, 3/22/2012 |
| | | Expert Report of Dr. Gregory D. Abowd on the Infringement of U.S. Patent Number 7,069,055, and Exhibits A-F, 3/22/2012 |
| | | Expert Report of Hal Poret in Matter of Apple Inc. v. Samsung Electronics Co., LTD. et al., and Appendices A-F, 3/22/2012 |
| | | Expert Report of Henry Urbach, and Exhibits 1-4, 3/22/2012 |
| | | Expert Report of J. Paul Dourish, Ph.D. Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,456,893, and Exhibits 1-3G, 3/22/2012 |
| | | Expert Report of John R. Hauser, and Exhibits A-K, 3/22/2012 |
| | | Expert Report of Karen Singh, Ph.D., Regarding Infringement of U.S. Patents Nos. 7,864,163, 7,844,915 and 7,853,891, and Exhibits 1-29, 3/22/2012 |
| | | Expert Report of Kent D. Van Liere, Ph.D., and Exhibits A-I, 3/22/2012 |
| | | Expert Report of Mani Srivastava, Ph.D. Regarding Invalidity of the Asserted Claim of U.S. Patent No. 7,577,460, and Exhibits 1-9, 3/22/2012 |
| | | Expert Report of Michael Maharbiz, Ph.D. Regarding Infringement of U.S. Patent Nos. 7,663,607 and 7,920,129, and Exhibits A-G, 3/22/2012 |
| | | Expert Report of Osman Balci Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,079,871, and Exhibits 1-3K, 3/22/2012 |
| | | Expert Report of Peter W. Bressler, FIDSA, and Exhibits 1-34, 3/22/2012 |
| | | Expert Report of Professor David J. Teece, Exhibits 1-11 and Attachments 1-3, 3/22/2012 |
| | | Expert Report of Ravin Balakrishnan, Ph.D. Regarding Infringement of U.S. Patent No. 7,469,381, and Exhibits 1-3 and V1-V9, 3/22/2012 |
| | | Expert Report of Ravin Balakrishnan, Ph.D. Regarding Infringement of U.S. Patent No. 7,812,828, and Exhibits 1-7, 3/22/2012 |
| | | Expert Report of Richard L. Donaldson, Esq., and Appendices A-B, 3/22/2012 |
| | | Expert Report of Russell S. Winer, and Exhibits 1-8, 3/22/2012 |
| | | Expert Report of Sanjay Sood and Exhibits A-H, 3/22/2012 |
| | | Expert Report of Susan Kare, and Exhibits 1-33, 3/22/2012 |
| | | Expert Report of Tony D. Givargis, Ph.D. Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,698,711, and Exhibits 1-7, 3/22/2012 |
| | | Expert Report of Vincent E. O'Brien, and Exhibits 1-5, 3/22/2012 |
| | | Expert Report of William Griswold, Ph.D. Regarding Invalidity of the Asserted Claims of U.S. Patent No. 7,069,055, and Exhibits 1-5.8, 3/22/2012 |
| | | Expert Report of Woodward Yang Regarding the Infringement of U.S. Patent Nos. US 7,577,460, US 7,456,893, US 7,698,711 and US 7,079,871, Appendices A-B and Exhibits 1-6, 3/22/2012 |
| | | Peter C. Grindley Comments on Samsung Royalty Rates in Samsung Licenses with 'X', 'Y' and 'Z', and Annex 1, 3/22/2012 |
| | | Rebuttal Expert Report of Dr. Osman Balci Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,079,871, 4/16/2012 |
| | | Rebuttal Expert Report of J. Paul Dourish, Ph.D. Regarding Non-Infringement Of The Asserted Claims Of U.S. Patent No. 7,456,893, 4/16/2012 |
| | | Rebuttal Expert Report of Mani Srivastava, Ph.D. Regarding Non-Infringement of the Asserted Claim of U.S. Patent No. 7,577,460, 4/16/2012 |
| | | Rebuttal Expert Report of Tony Givargis, Ph.D. Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,698,711, 4/16/2012 |
| | | Rebuttal Expert Report of William Griswold, Ph.D. Regarding Non-Infringement of the Asserted Claims of U.S. Patent No. 7,069,055, 4/16/2012 |
| | | Report: "Results from A Survey Measuring Use and Valuation of Four Patented Features (Patented Features: 460, 893, 711, 871) and A Survey of World Clock Patented Feature Usage (Patented Feature 055)," by R. Sukumar, and Exhibits A-G, 3/22/2012 |
| | | Supplemental Expert Report of Professor David J. Teece, Exhibits R-2B to R-10N and Appendix D, 4/2/2012 |
| | | |
| **Expert Reports** | | |
| **Public docs from Professor David Teece Expert Report, 3/22/12** | | |
| | | 3G - CDMA2000 1xEV-DO Technologies |
| | | A. Pakes and M. Simpson, "Patent Renewal Data," Brookings Papers on Economic Activity, 1989 |
| | | About mobile technology and IMT-2000, International Telecommunication Union (http://www.itu.int/osglspu/imt-2000/technology.html) |
| | | Accessibility, Apple (http://www.apple.com/accessibility/iphone/vision.html). |
| | | Accessibility, Apple (http://www.apple.com/accessibility/itunes/ipodtouch.html). |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                    EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Alan C. Marco, "The Selection Effects (and Lack Thereof) in Patent Litigation: Evidence from Trials," Topics in Economic Analysis & Policy, Vol. 4: No.1, 2004, Article 21 |
| | | Anne Layne-Farrar, A. Jorge Padilla, Richard Schmalensee, "Pricing Patents for Licensing in Standard Setting Organizations: Making Sense of FRAND Commitments," Antitrust Law Journal, 2007 |
| | | Annual Review of Industry Royalty Rates, Licensing Economics Review, December 2001 |
| | | Apple _ Game Center, Apple (http://www.apple.com/game-center/) |
| | | Apple Adds New iPhone & iPod touch Models, Press Release (http://www.apple.com/pr/library/2008/02/05Apple-Adds-New-iPhone-iPod-Touch-Models.html) |
| | | Apple Announces the New iPhone 3GS-The Fastest, Most Powerful iPhone Yet, Press Release, dated June 8, 2009 (http://www.apple.com/pr/library 12009/06/08Apple-Announces-the-New-iPhone-3 GS-The-Fastest-Most-Powerful-iPhone-Yet.html) |
| | | Apple Inc. Form 10-K (2011 Annual Report) for the period ending September 24,2011 |
| | | Apple Introduces New iPod Touch Lineup, Press Release, dated September 9, 2009 (http://www.apple.com/pr/library/2009/09/09Apple-Introduces-New-iPod-touch-Lineup.html) |
| | | Apple Introduces New iPod Touch, Press Release, dated September 1, 2010 (www.apple.com/pr/library/2010109/01Apple-Introduces-New-iPod-touch.html) |
| | | Apple Introduces the New iPhone 3G, Apple, Press Release, dated June 9, 2008 (http://www.apple.com/pr/library/2008/06/09Apple-Introduces-the-New-iPhone-3G.html) |
| | | Apple iPhone 4S - Buy the New iPhone with Free Shipping - Apple Store (U.S) (store.apple.com/us/browse/home/shop_iphone/family/iphone) |
| | | Apple iTunes Platform to Contribute $13 Billion in 2013, The New iPAD Owners App Buying Guide, dated March 19, 2012 |
| | | Apple iTunes Revenue to Push $13 Billion in 2013: Report, The next Web Family, dated July 5, 2011 |
| | | Apple Launches iPad, Press Release, dated January 27, 2010 (http://www.apple.com/pr/library/2010101127 Apple-Launches-iPad.html) |
| | | Apple Launches iPhone 4S, iOS 5 & iCloud, Press Release, dated October 4,2011 (http://www.apple.com/pr/library/2011/10104Apple-Launches-iphone-4S-iO-S5-iCloud.html) |
| | | Apple Presents iPhone 4, Press Release, dated June 7, 2010 (http://www.apple.com/pr/library/2010106/07Apple-Presents-iPhone-4.html) |
| | | Apple Reinvents the Phone with iPhone, Press Release, dated January 9, 2007 (http://www.apple.com/pr/library/2007/01/09 Apple-Reinvents-the-Phone-with-iPhone.html) |
| | | Apple said to offer full-price iPhone sans AT&T contract, CNET, dated March 22, 2010 (http://www.pcworld.com/article192107/apple_sells contractfree but_ not_unlocked iphones at_list_price.html). |
| | | Apple Store, under "Or get iPhone unlocked and contract-free" (http://store.apple.com/us/browse/home/shop iphone/family/iphone/iphone4s) |
| | | Apple Stores Now Selling IPhone 3G without a Contract, AppleInsider, dated March 26,2009 (http://www.appleinsider.com/articles/09/03/26/apple _stores_now selling_iphone3g_ without_ acontract.html) |
| | | Apple Unveils iPod Touch, Press Release, dated September 5, 2007 (http://www.apple.com/pr/library/2007/09/05Apple-Unveils-iPod-Touch .html) |
| | | B. Hall and R. Ziedonis, "The Patent Paradox Revisited: An Empirical Study of Patenting in the U.S. Semiconductor Industry, 1979-95," RAND Journal of Economics, Vol. 32, pp. 101-128, 2001 |
| | | Ben Reid, "Apple Set To Revamp ITunes And App Store Later This Year," Redmond Pie, dated February 21, 2012 (http://www.redmondpie.com/Apple-Set-To-Revamp-Itunes-And-App-Store-Later-This-Year-report/) |
| | | CDMA2000 IX Advanced, CDMA Development Group, dated September 2010 (http://www.cdg.orgiresources/files/fact_sheets/CDMA2000%201X%20AdvancedCDG01 SEP2010v2.pdt) |
| | | Compare iPhone Models (http://www.apple.com/iphone/compare-iphones/) |
| | | Countries Where Any Verizon Wireless Phone Will Work, (http://businessportals.verizonwireless.com/international/technologylcdma.html) |
| | | D. Harhoff, F. Scherer, and K. Vopel, "Citations, Family Size, Opposition and the Value of Patent Rights - Evidence from Germany," Prepared for the NBER Productivity Program Meeting, March 6, 1998 |
| | | D. Teece, "Profiting from Technological Innovation: Implications for integration, collaboration, licensing and public policy," Research Policy, Vol. 15, No.6, 1986 |
| | | Damon Poeter, "Apple, With 4 Percent of Handset Market, Captures 52 Percent of Profits," PC Magazine, dated November 5, 2011 (http://www.pcmag.com/article2/0,2817,2395951,00.asp) |
| | | Daniel Kessler, Thomas Meites and Geoffrey Miller, "Explaining Deviations from the 50-Percent Rule - A Multimodal Approach to the Selection of Cases for Litigation," 25 Journal of Legal Studies, 1996 |
| | | Daniel M. McGavock, David A. Haas, and Michael P. Patin, "Licensing Practices, Business Strategy, and Factors Affecting Royalty Rates: Results of A Survey," Licensing Law and Business Report, Vol. 13, No.6, March-April 1991 |
| | | David J. Teece and Edward F. Sherry, "Standards Setting and Antitrust," Minnesota Law Review, Vol. 87, 2003 |
| | | David Teece, Managing Intellectual Capital, Oxford University Press, 2000 |
| | | Ed Shepard, "Mac Treat #123: MobileMe's Remote Wipe and Find Features," Barkings! The SmallDog Apple Blog, May 3, 2010 (http://blog.smalldog.com/article/mac-treat-123-mobileme-s-remotewipe-and-find-features/) |
| | | Edward Sherry and David Teece, "Royalties, evolving patent rights, and the value of innovation," Research Policy, Vol. 33, No.2, 2004 |
| | | Enable/disable MMS Messaging (support.verizon.com/clc/devices/knowledge base.html?id=43985) |
| | | Eric Stasik, "Royalty Rates and Licensing Strategies For Essential Patents On LTE (4G) Telecommunication Standards," Royalty Rates for Telecommunications, September 2010 |
| | | ETSI Guide on IPRs, dated 30 November 2011 |
| | | ETSI IPR Policy F Aqs (http://www.etsi.orglWebSite/AboutETSVIPRsInETSIIIPRPolicyF AQ.aspx) |
| | | ETSI Rules of Procedure, dated 8 April 2009, Annex 6: ETSI Intellectual Property Rights Policy |
| | | Find My iPod Touch (http://images.apple.com/ipodtouch/built-in-apps/find-my-ipodtouch.html) |
| | | First Generation vs. Second Generation iPod Touch Screen, eHow, dated July 5, 2011 (http://www.ehow.com/info8692879first-generation-ipod-touch-screen.html) |
| | | Goliath Business Knowledge on Demand - Samsung Telecommunications America Profile (http://goliath.ecnext.com/coms2/product-compint-000073 873 I-page.html). |
| | | GPRS & EDGE, 3GPP (http://www.3gpp.org/article/gprs-edge) |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | GSM, GSMA (http://www.gsma.com/gsm/) |
| | | HSPA, GSMA (http://www.gsma.com/hspa/) |
| | | Industry and Royalty Rate Data Summary, Licensing Economics Review, December 2006 |
| | | iPad 2 Arrives Tomorrow, Press Release, dated March 10, 2011 (http://www.apple.com/pr/library/2011103/1OiPad-2-Arrives-Tomorrow.html) |
| | | iPad Available in US on April 3, Press Release, dated March 5, 2010 (http://www.apple.com/pr/library/2010103/05iPad-A vailable-in-US-on-April-3.html) |
| | | iPad Wi-Fi + 3G Models Available in US on April 30, Press Release, dated April 20, 2010 (http://www.apple.com/pr/library/20 1 0104/20iPad-Wi-F i-3G-Models-A vailab le-in-US-on-Apri 1-30.html) |
| | | iPhone 3G on Sale Tomorrow (http://www.apple.com/pr/library/2008/07110iPhone-3G-on-Sale-Tomorrow.html) |
| | | iPhone 3GS Tech Specs (http://www.apple.com/iphone/iphone-3gs/specs.html) |
| | | iPhone 4 - Technical Specifications, (http://www.apple.com/iphone/iphone-4/specs.html) |
| | | iPhone 4 price without contract, os X Daily (http://osxdaily.com/2010/07/08/iphone-4-price-withoutcontract/). |
| | | iPhone 4 to Become Available on Verizon, Short Sharp Science, dated March 19, 2012 (http://www.newscientist.com/blogs/shortsharpscience12011/01/iphone-4-to-become-available-o.html) |
| | | iPhone 4 with 8GB Memory Description and Price information (http://www.bestbuy.com/site/olstemplatemapper.jsp?_dyncharset=ISO-8859-1&dynSessConf=3184673227948351912&id=pcatl70808type=page&lcn=Mobile+Phones&sc=phoneOfficeSP&st=processingtime%3A %3E1900-01-01&usc=abcat0800000&cp=1&sp=-bestsellingsort+skuid&nrp=35&qp=q70726f63657373696e6774696d6e653a3e313930302d30312d3031%7E%7Ecabca t0800000%23%230%23%232av%7E%7Enf953%7C%7C4170706c65&add to pkg=false&pagetype=listing) |
| | | iPhone 4S Description and Price information (http://www.walmart.com/ip/Apple-iPhone-4s-16GBBlack-or-White-AT-T-or-Verizon-Price-based-on-new-line-activation-or-eligible-upgrade-with-2-yearcontractl13082132) |
| | | iPhone 4S Description and Price information (www.samsclub.comisams/htmllContentMgmt/iphone4s.html) |
| | | iPhone OS 4.0: Multitasking, Folders, Home Screen, IBooks, Rich Ads, April 8, 2010 (http://www.ilounge.com/index.php/news/comments/iphone-os-4.0-multitasking-folders-home-screenibooks-rich-ads) |
| | | iPhone Premieres This Friday Night at Apple Retail Stores, Press Release, dated June 28, 2007 (http://www.apple.com/pr/library/2007106/28iPhone-Premieres-This-Friday-Night-at -Apple-Retail-Stores.html |
| | | IPod Touch (3rd Generation) - Technical Specifications, dated April 8,2010 (http://support.apple.com/kb/SP570) |
| | | IPod Touch (4th Generation) - Technical Specifications, dated November 21,2011 (http://support.apple.com/kb/SP594) |
| | | IPod Touch: Which IOS 4 Software Features Does My IPod Touch Support? Apple, dated March 9, 2011 |
| | | Jean O. Lanjouw and Mark Schankerman, "Characteristics of Patent Litigation: A Window on Competition," RAND Journal of Economics, Vol. 32, 2001 |
| | | John Allison and Mark Lemley, "Empirical Evidence on the Validity of Litigated Patents," 26 AIPLA Quarterly Journal, 1998 |
| | | John Ledyard, "Incentive Compatibility," in Eatwell, Milgate and Newman (eds.), The New Palgrave Dictionary of Economics, Vol. 2, 1998 |
| | | K. Moore, "Worthless Patents," George Mason School of Law, Law and Economics Working Paper Series, 04-29, 2005 |
| | | Letter from Allen Lo, Deputy General Counsel, Google Corporation, to Gordon Day, President, IEEE, 2/8/2012 |
| | | IOS: Getting Started with VoiceOver for Accessibility, Apple, dated October 12,2011 (http://support.apple.com/kb/HT3598) |
| | | IOS: Understanding Multitasking, Apple, dated October 14, 2011 (http://support.apple.com/kb/HT42l1 |
| | | LTE, GSMA (http://www.gsma.com/lte/) |
| | | LTE-Advanced, 3GPP (http://www.3gpp.orglLTE-Advanced) |
| | | M. Schankerman, "How Valuable Is Patent Protection? Estimates by Technology Field," RAND Journal of Economics, Vol. 29, No.1, Spring 1998 |
| | | M. Trajtenberg, "A Penny for your Quotes: Patent Citations and the Value of Innovations," RAND Journal of Economics, Vol. 21, No. I, Spring 1990 |
| | | Mark Lemley and Carl Shapiro, "Patent Holdup and Royalty Stacking," Texas Law Review, Vol. 85, 2007 |
| | | Mark Lemley and Carl Shapiro, "Probabilistic Patents," Journal of Economic Perspectives, Vol. 19, 2005 |
| | | Mark Sullivan, "New iPhone 4S: Antenna 'Death Grip' Now Slightly Harder," PC World, dated October 5, 2011 (http://lwww.pcworld.com/printable/article/id,241186/printable.html) |
| | | Meet the Fourth US Carrier for the iPhone 4S (www.idownloadblog.com/2011110119fourth-uscarrier-iphone-4s.html) |
| | | MobileMe News, Apple, dated November 22, 2010 (http://www.apple.com/mobileme/news/20 10/11lfind-my-iphone-now-available-free-with-ipad-iphone-4-and-ipod-touch.html) |
| | | Our Mobile Broadband and GSM Technology, Wireless from AT&T (http://www.wireless.att.com/learnlwhy/technology/mobile-broadband-and-GSM.jsp) |
| | | Panduit Corp. v. Stahl Bros. Fibre Works, Inc., 575 F.2d 115 (6th Cir. 1978) |
| | | Product and price information for the Nokia C 1-0 1 Unlocked Phone (http://www.amazon.comINokia-C1-0l-Unlocked-GSMPhone/dp/B0047DVFOO/ref=sr 1 6?s=wireless&ie=UTF8&qid=1332282866&sr=l-6) |
| | | Product and price information for the Samsung A107 Unlocked Phone (http://www.amazon.com/Samsung-A1 07 -Unlocked-Display-Organizer/dp/B004HlN7HO/ref=sr12?s=wireless&ie=UTF8&qid=1332283085&sr=l-2) |
| | | Product and price information for the Samsung GT -E 1 086i Unlocked Phone (http://www.amazon.com/Samsung-GT-El086i-Dual-Band-Ringtones-Organizer/dp/B00495YFG2/ref=sr14?s=wireless&ie=UTF8&qid=1332283407&sr=l-4) |
| | | R. Ziedonis, "Patent Protection and Firm Strategy in the Semiconductor Industry" unpublished Ph.D. dissertation, Haas Graduate School of Business, UC Berkeley, Fall 2000 |
| | | Rudi Bekkers and Joel West, "IPR Standardization Policies and Strategic Patenting in UMTS," Paper to be presented at the 25th Celebration Conference 2008 on Entrepreneurship and Innovation - Organizations, Institutions, Systems and Regions, Copenhagen, CBS, Denmark, June 17-20, 2008 |
| | | Samsung Electronics 2010 Annual Report |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                    **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Short Sharp Science_ iPhone 4 to become available on Verizon (http://www.newscientist.com/blogs/shortsharpscience/2011/01/iphone-4-to-become-available-o.html) |
| | | Stephen Degnan and Corwin Horton, "A Survey of Licensed Royalties," les Nouvelles, June 1997 |
| | | Stephen Kalos and Jonathan Putnam, "On the Incomparability of 'Comparables': An Economic Interpretation of 'Infringer's Royalties'," Journal of Proprietary Rights ,Vol. 9 No.4, April 1997 |
| | | Thomas R. Varner, "Technology Royalty Rates In SEC Filings," les Nouvelles, September 2010 |
| | | UMTS (Universal Mobile Telecommunications Service), SearchMobileComputing (http://searchmobilecomputing.techtarget.com/definitionlUMTS) |
| | | United States Patent No. 6,928,604 August 9, 2005 |
| | | United States Patent No. 7,050,410 May 23,2006 |
| | | United States Patent No. 7,200,792 April 3, 2007 |
| | | United States Patent No. 7,362,867 April 22, 2008 |
| | | United States Patent No. 7,386,001 June 10,2008 |
| | | United States Patent No. 7,477,516 November 4,2008 |
| | | United States Patent No. 7,675,941 March 9, 2010 |
| | | Using the IPhone 4 Compass with Google Maps, Know Your Cell, dated June 10,2010 (http://www.knowyourcell.com/apple/apple-iphone-4/iphone-4guides/506307/using the iphone4compasswithgooglemaps.html) |
| | | W-CDMA 3GPP (http://www.3gpp.orglarticle/w-cdma) |
| | | What is 'HSCSD,' Mobileburn (http://www.mobileburn.com/definition.jsp?term=HSCSD) |
| | | Why Choose Sprint, Sprint 3G & 4G Network (http://m2m.sprint.com/why-choose-us/why-chooseus.aspx) |
| | | William M. Landes, "An Empirical Analysis of Intellectual Property Litigation: Some Preliminary Results," Houston Law Review, Vol. 41, 2004 |
| | | |
| **Expert Reports** | | |
| **Documents from Professor David Teece Supplemental Expert Report, 4/2/12** | | |
| APL794-F0000008247 | APL794-F0000008258 | Apple iPod Touch and iPad sales |
| APLNDC-Y0000051357 | APLNDC-Y0000051362 | Apple iPhone sales |
| S-794-ITC-005280718 | S-794-ITC-005280737 | Samsung-Motorola Licensing Discussions |
| | | (Gartner) Forecast Carrier Network Infrastructure |
| | | (Gartner) MS_carrier network_2006.xls |
| | | (Gartner) MS_carrier network_2007.xls |
| | | (Gartner) MS_carrier network_2008.xls |
| | | (Gartner) MS_carrier network_2009.xls |
| | | (Gartner) MS_carrier network_2010.xls |
| | | (Gartner) MS_carrier network_2011.xls |
| | | Apple Announces the New iPhone 3GS - The Fastest, Most Powerful iPhone Yet (http://www.apple.com/pr/library/2009/06/08Apple-Announces-the-New-iPhone-3GS-The-Fastest-Most-Powerful- |
| | | Apple Launches iPhone 4S, iOS 5 & iCloud (http://www.apple.com/pr/library/2011110/04Apple-Launches-iphone-4S-iO-S5-iCloud.html) |
| | | Countries Where Any Verizon Wireless Phone Will Work |
| | | iClarified - Apple News - A Majority of First Wave iPad 2s Will Be 3G Models |
| | | New iPhone 4S: Antenna 'Death Grip' Now Slightly Harder, PC World (http://www.pcworld.com/printable/article/id,241186/printable.html) |
| | | Our Mobile Broadband and GSM Technology - Wireless from AT&T (http://www.wireless.att.com/learn/why/technology/mobile-broadband-and-GSM.jsp) |
| | | Strategy Analytics - Global Handset Market Share Update - Q4 2005 |
| | | Strategy Analytics - Value Share Global Handset Revenue and Profit - Q1 2011.xls |
| | | Strategy Analytics - Vendor Share Global Handset Market by Technology - Q2 2011.xls |
| | | Strategy Analytics - Vendor Share Global Handset Market Update - Q42007.xls |
| | | Why Choose Sprint, Sprint 3G & 4G Network (http://m2m.sprint.com/why-choose-us/why-choose-us.aspx) |
| | | |
| **Legal** | | |
| | | Deposition of Corey Kerstetter, dated March 29, 2012 |
| | | Deposition of Jaehwang Sim, Volume 2, dated March 31, 2012 |
| | | Deposition of John G. Elias, Ph.D., 10/13/2011 and exhibits 518-520, 522-535 |
| | | Deposition of Jun Won Lee, dated March 26, 2012 |
| | | Deposition of Kenneth S. Korea, dated March 23, 2012 |
| | | Deposition of Oh Chae Kwon, Ph.D., Volume 2, dated March 30, 2012 |
| | | Deposition of Steven Hotelling, dated October 21, 2011 and exhibits 815-825 |
| | | Deposition of Tang Yew Tan, dated March 2, 2012 and exhibits 2100-2110 |
| | | Deposition of Timothy Benner, dated March 30, 2012 |
| | | Deposition of Timothy Sheppard, dated March 30, 2012 |
| | | Deposition of Todd Pendleton, dated March 21, 2012 |
| | | Deposition of Tony Blevins (rough), dated April 3, 2012 |
| | | Order Denying Samsung Motion 3.27.12 |
| | | Samsung Amended Obj and Resp to Apple 6th Set of Interrogatories 2012.03.07 |
| | | Samsung Supp Objections and Responses to Apple 8th Set of Interrogatories, dated March 16, 2012 |
| | | Samsung's Disclosure of Asserted Claims and Infringement Contentions [Patent L.R. 3-1, 3-2], 9/7/2011 |
| | | Samsung's Patent L.R. 3-1(G) Disclosures - Exhibit M |
| | | |
| **Public** | | |
| | | Apple - Press Info - 2001.10.23 - Apple Presents iPod |
| | | Apple - Press Info - 2007.09.05 - Apple Unveils iPod touch |
| | | Apple - Press Info - 2008.09.09 - Apple Introduces New iPod touch |
| | | Apple - Press Info - 2009.09.09 - Apple Introduces New iPod touch Lineup |
| | | Apple - Press Info - 2010.09.01 - Apple Introduces New iPod touch |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                    **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Apple - Press Info - Products - iPod History (Accessed 4.5.12) |
| | | Brand Finance, Best Global Brands - Top 500 Brands, 2012 |
| | | Dunn on Damages Issue 3, Summer 2011 |
| | | Gigaom - The Average iOS App Publisher Isn't Making Much Money |
| | | iTunes App Store |
| | | Patent Damages Law & Practice, 2009 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                              **EXHIBIT 4**

**Apple iPod Touch U.S. Sales Summary** 1/, 2/



| (Units in Thousands, Revenue in Millions USD) | iPod Touch Generation 3/ | FY 2007 | FY 2008 | FY 2009 | FY 2010 | FY 2011 | FY 2012 | Total |
|---|---|---|---|---|---|---|---|---|
| _U.S. Sales_ | | | | | | | | |
| **Unit** | | $    172 | 4,531 | 8,853 | 12,549 | 11,452 | 5,175 | $   42,732 |
| **Revenue** | | $    57 | 1,336 | 2,025 | 2,547 | 2,572 | 993 | $   9,531 |

**Sources/Notes:**
1/  Fiscal year ending September 31.
2/  Deposition of Mark Buckley, February 23, 2012, Exhibit 25 (APL794-F0000008247 to APL794-F0000008258).
3/  Deposition of Mark Buckley, February 23, 2012, pp. 231-232.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 5**

## Adjustment to Dr. O'Brien's Royalty Calculation
*(Using Dr. O'Brien's Methodologies 1/)*

| | |
|---|---|
| Consumer Value | $ 0.99 |
| Samsung Portion | 30% |
| Rate for Use | $ 0.30 |

### Dr. O'Brien's Percent of Respondents Using the Feature Patent Technology

| Patent | Description | iPhone | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | 63.9% | 54.9% | 43.9% |
| '893 | Photo Gallery Bookmark | 42.0% | 50.0% | 38.1% |
| '711 | Music in Background | 65.4% | | |
| '871 | Window Dividing | 43.5% | 37.9% | 26.9% |

### Dr. O'Brien's Royalty Rates

| Patent | Description | iPhone | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | $ 0.19 | $ 0.16 | $ 0.13 |
| '893 | Photo Gallery Bookmark | $ 0.12 | $ 0.15 | $ 0.11 |
| '711 | Music in Background | $ 0.19 | | |
| '871 | Window Dividing | $ 0.13 | $ 0.11 | $ 0.08 |

### Dr. O'Brien's Royalty Base - Adjusted

| Patent | Description | iPhone 2/ | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | 40,428,820 | 14,679,533 | 17,187,119 |
| '893 | Photo Gallery Bookmark | 9,553,776 | 9,410,284 | 6,637,532 |
| '711 | Music in Background | 9,553,776 | - | - |
| '871 | Window Dividing | 26,875,498 | 9,410,284 | 6,637,532 |

### Dr. O'Brien's Royalty Calculation - Adjusted

| Patent | Description | iPhone | iPad | iPod | Total |
|---|---|---|---|---|---|
| '460 | Email Photo | $ 7,672,703 | $ 2,393,542 | $ 2,240,908 | $ 12,307,153 |
| '893 | Photo Gallery Bookmark | 1,191,738 | 1,397,427 | 751,083 | 3,340,248 |
| '711 | Music in Background | 1,855,706 | - | - | 1,855,706 |
| '871 | Window Dividing | 3,472,180 | 1,059,250 | 530,292 | 5,061,722 |
| **Total** | | **$ 14,192,327** | **$ 4,850,219** | **$ 3,522,284** | **$ 22,564,829** |
| | | | | | |
| | Dr. O'Brien's Total Royalty Calculation | $ 24,583,218 | $ 4,850,219 | $ 3,522,284 | $ 32,955,721 |
| | **Dr. O'Brien's Overstatement of Damages** | **$ 10,390,891** | **-** | **-** | **$ 10,390,891** |

**Sources/Notes:**
1/  Expert Report of Vincent E. O'Brien, March 22, 2012, Exhibit 5.
2/  Exhibit 5.3.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 5.1**

## Adjustment to Dr. O'Brien's Royalty Calculation
## Removing Sales of the iPhone 4S
*(Using Dr. O'Brien's Methodologies 1/)*

| | | |
|---|---|---|
| Consumer Value | $ | 0.99 |
| Samsung Portion | | 30% |
| Rate for Use | $ | 0.30 |

### Dr. O'Brien's Percent of Respondents Using the Feature Patent Technology

| Patent | Description | iPhone | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | 63.9% | 54.9% | 43.9% |
| '893 | Photo Gallery Bookmark | 42.0% | 50.0% | 38.1% |
| '711 | Music in Background | 65.4% | | |
| '871 | Window Dividing | 43.5% | 37.9% | 26.9% |

### Dr. O'Brien's Royalty Rates

| Patent | Description | iPhone | | iPad | | iPod |
|---|---|---|---|---|---|---|
| '460 | Email Photo | $ | 0.19 | $ | 0.16 | $ 0.13 |
| '893 | Photo Gallery Bookmark | $ | 0.12 | $ | 0.15 | $ 0.11 |
| '711 | Music in Background | $ | 0.19 | | | |
| '871 | Window Dividing | $ | 0.13 | $ | 0.11 | $ 0.08 |

### Dr. O'Brien's Royalty Base - Adjusted by Removing the iPhone 4S

| Patent | Description | iPhone 2/ | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | 47,927,020 | 14,679,533 | 17,187,119 |
| '893 | Photo Gallery Bookmark | 14,483,749 | 9,410,284 | 6,637,532 |
| '711 | Music in Background | 14,483,749 | - | - |
| '871 | Window Dividing | 34,373,698 | 9,410,284 | 6,637,532 |

### Dr. O'Brien's Royalty Calculation - Adjusted

| Patent | Description | iPhone | | iPad | | iPod | | Total |
|---|---|---|---|---|---|---|---|---|
| '460 | Email Photo | $ | 9,095,734 | $ | 2,393,542 | $ | 2,240,908 | $ 13,730,184 |
| '893 | Photo Gallery Bookmark | | 1,806,703 | | 1,397,427 | | 751,083 | 3,955,213 |
| '711 | Music in Background | | 2,813,295 | | - | | - | 2,813,295 |
| '871 | Window Dividing | | 4,440,910 | | 1,059,250 | | 530,292 | 6,030,452 |
| **Total** | | **$** | **18,156,641** | **$** | **4,850,219** | **$** | **3,522,284** | **$ 26,529,143** |
| | | | | | | | | |
| | Dr. O'Brien's Total Royalty Calculation | $ | 24,583,218 | $ | 4,850,219 | $ | 3,522,284 | $ 32,955,721 |
| | **Dr. O'Brien's Overstatement of Damages** | **$** | **6,426,577** | **$** | **-** | **$** | **-** | **$ 6,426,577** |

**Sources/Notes:**
1/  Expert Report of Vincent E. O'Brien, March 22, 2012, Exhibit 5.
2/  Exhibit 5.3.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 5.2**

**Adjustment to Dr. O'Brien's Royalty Calculation**
**Fixing Math Errors in the Royalty Base**
*(Using Dr. O'Brien's Methodologies 1/)*

| | | |
|---|---|---:|
| Consumer Value | $ | 0.99 |
| Samsung Portion | | 30% |
| Rate for Use | $ | 0.30 |

### Dr. O'Brien's Percent of Respondents Using the Feature Patent Technology

| Patent | Description | iPhone | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | 63.9% | 54.9% | 43.9% |
| '893 | Photo Gallery Bookmark | 42.0% | 50.0% | 38.1% |
| '711 | Music in Background | 65.4% | | |
| '871 | Window Dividing | 43.5% | 37.9% | 26.9% |

### Dr. O'Brien's Royalty Rates

| Patent | Description | iPhone | | iPad | | iPod |
|---|---|---|---|---|---|---|
| '460 | Email Photo | $ | 0.19 | $ | 0.16 | $ 0.13 |
| '893 | Photo Gallery Bookmark | $ | 0.12 | $ | 0.15 | $ 0.11 |
| '711 | Music in Background | $ | 0.19 | | | |
| '871 | Window Dividing | $ | 0.13 | $ | 0.11 | 0.08 |

### Dr. O'Brien's Royalty Base - Adjusted for Math Errors

| Patent | Description | iPhone 2/ | iPad | iPod |
|---|---|---|---|---|
| '460 | Email Photo | 50,502,520 | 14,679,533 | 17,187,119 |
| '893 | Photo Gallery Bookmark | 19,627,476 | 9,410,284 | 6,637,532 |
| '711 | Music in Background | 19,627,476 | - | - |
| '871 | Window Dividing | 36,949,198 | 9,410,284 | 6,637,532 |

### Dr. O'Brien's Royalty Calculation - Adjusted

| Patent | Description | iPhone | | iPad | | iPod | Total |
|---|---|---|---|---|---|---|---|
| '460 | Email Photo | $ | 9,584,520 | $ | 2,393,542 | $ 2,240,908 | $ 14,218,970 |
| '893 | Photo Gallery Bookmark | | 2,448,331 | | 1,397,427 | 751,083 | 4,596,842 |
| '711 | Music in Background | | 3,812,402 | | - | - | 3,812,402 |
| '871 | Window Dividing | | 4,773,652 | | 1,059,250 | 530,292 | 6,363,194 |
| **Total** | | **$** | **20,618,904** | **$** | **4,850,219** | **$ 3,522,284** | **$ 28,991,407** |
| | | | | | | | |
| | Dr. O'Brien's Total Royalty Calculation | $ | 24,583,218 | $ | 4,850,219 | 3,522,284 | $ 32,955,721 |
| | **Dr. O'Brien's Overstatement of Damages** | **$** | **3,964,313** | **$** | **-** | **$ -** | **$ 3,964,314** |

**Sources/Notes:**
1/  Expert Report of Vincent E. O'Brien, March 22, 2012, Exhibit 5.
2/  Exhibit 5.3.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                          **EXHIBIT 5.3**

### Dr. O'Brien's Incorrect Calculation of Royalty Base - iPhone Details

**Dr. O'Brien's iPhone Royalty Base - Units** 1/

| Patent | iPhone | iPhone 3G | iPhone 3GS | iPhone 4 | iPhone 4S | Total |
|--------|--------|-----------|------------|----------|-----------|-------|
| '460 | | | | | | 58,000,720 |
| '893 | | | | | | 24,557,449 |
| '711 | | | | | | 24,557,449 |
| '871 | | | | | | 44,447,398 |
| '055 | | | | | | 44,447,398 |

**Dr. O'Brien's Royalty Base - Adjusted by Removing the iPhone 4S**

| Patent | iPhone | iPhone 3G | iPhone 3GS | iPhone 4 | iPhone 4S | Total |
|--------|--------|-----------|------------|----------|-----------|-------|
| '460 | | | | | | 47,927,020 |
| '893 | | | | | | 14,483,749 |
| '711 | | | | | | 14,483,749 |
| '871 | | | | | | 34,373,698 |
| '055 | | | | | | 34,373,698 |

**Dr. O'Brien's iPhone Royalty Base - Adjusted for Math Error** 3/

| Patent | iPhone | iPhone 3G | iPhone 3GS | iPhone 4 | iPhone 4S | Total |
|--------|--------|-----------|------------|----------|-----------|-------|
| '460 | | | | | | 50,502,520 |
| '893 | | | | | | 19,627,476 |
| '711 | | | | | | 19,627,476 |
| '871 | | | | | | 36,949,198 |
| '055 | | | | | | 36,949,198 |

**Dr. O'Brien's Total iPhone Royalty Base - Adjusted** 4/

| Patent | iPhone | iPhone 3G | iPhone 3GS | iPhone 4 | iPhone 4S | Total |
|--------|--------|-----------|------------|----------|-----------|-------|
| '460 | | | | | | 40,428,820 |
| '893 | | | | | | 9,553,776 |
| '711 | | | | | | 9,553,776 |
| '871 | | | | | | 26,875,498 |
| '055 | | | | | | 26,875,498 |

**Dr. O'Brien's Overstatement of Royalty Base**

| Patent | iPhone | iPhone 3G | iPhone 3GS | iPhone 4 | iPhone 4S | Total |
|--------|--------|-----------|------------|----------|-----------|-------|
| '460 | | | | | | 17,571,900 |
| '893 | | | | | | 15,003,674 |
| '711 | | | | | | 15,003,674 |
| '871 | | | | | | 17,571,900 |
| '055 | | | | | | 17,571,900 |

**Sources/Notes:**
1/ Expert Report of Vincent E. O'Brien, March 22, 2012, Exhibit 3.1.
2/ I understand that Dr. O'Brien should not have included the iPhone 4S in his damage calculation based on the Order Denying Samsung's Motion to Amend Invalidity Contentions; Order Denying Samsung's Motion to Amend Infringement Contentions, dated 3/27/12.
3/ Exhibit 5.4.
4/ Dr. O'Brien's Royalty Base less overstatements.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                EXHIBIT 5.4

## Calculation of Dr. O'Brien's iPhone 4 Royalty Base

| Units Sold | | Q3 FY10 | Q4 FY10 | Q1 FY11 | Q2 FY11 | Q3 FY11 | Q4 FY11 | Q1 FY12 |
|---|---|---|---|---|---|---|---|---|

| Royalty Base 4/ | '460 | '893 | '711 | '871 | '055 |
|---|---|---|---|---|---|
| Start Date: | 8/18/2009 | 6/30/2011 | 6/30/2011 | 9/10/2010 | 9/10/2010 |
| Start Period: | Q4 FY09 | Q4 FY11 | Q4 FY11 | Q4 FY10 | Q4 FY10 |
| Relevant Portion of Period: | 0.43 | 0.95 | 0.95 | 0.16 | 0.16 |

| Apple Sales Data 1/ | | Q3 FY10 | Q4 FY10 | Q1 FY11 | Q2 FY11 | Q3 FY11 | Q4 FY11 | Q1 FY12 | Adjusted Royalty Base | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| iPhone | IPHONE 4 N90 16GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N90 32GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N92 16GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N92 32GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N90A 8GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N92A 8GB | | | | | | | | | | | | |
| **Total** | | 1,084,400 | 4,069,000 | 2,894,900 | 5,289,400 | 4,274,300 | 3,897,500 | 3,876,900 | 25,386,400 | 7,560,252 | 7,560,252 | 20,903,714 | 20,903,714 |

| O'Brien's Royalty Base 2/ 3/ | | Q3 FY10 | Q4 FY10 | Q1 FY11 | Q2 FY11 | Q3 FY11 | Q4 FY11 | Q1 FY12 | O'Brien's Royalty Base | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| iPhone | IPHONE 4 N90 16GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N90 32GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N92 16GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N92 32GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N90A 8GB | | | | | | | | | | | | |
| iPhone | IPHONE 4 N92A 8GB | | | | | | | | | | | | |
| **Total** | | 1,084,400 | 4,069,000 | 5,958,900 | 4,378,000 | 4,403,300 | 9,114,100 | 3,876,900 | 32,884,600 | 12,490,225 | 12,490,225 | 28,401,914 | 28,401,914 |

**Sources/Notes:**
1/ APLNDC-Y0000051357 through APLNDC-Y0000051362.
2/ Expert Report of Vincent E. O'Brien, March 22, 2012, Exhibit 3.2 through 3.6.
3/ Dr. O'Brien's Q4 FY11 unit sales are equal to the total of the actual Q2 through Q4 FY11 unit sales.
4/ Start Date, Start Period, Relevant Portion of Period based on Dr. O'Brien's Workpaper file named: Ex. 3 Royalty Base.xlsx, tab name: Infringement dates.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 6**



## Dr. O'Brien's Comparable App Downloads vs. Dr. O'Brien's Royalty Base

Notes/Sources:
1/ Exhibit 6.1.
2/ Exhibit 6.2.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 6.1**

## Summary of Sales of Dr. O'Brien's Example Apps  1/

| App Titles | | First Month of Sale | Last Month of Sale | Free Units | Paid Units | Total App Revenue | Royalty Paid to Vendor | Apple Proceeds | Weighted Average Margin 6/ |
|---|---|---|---|---|---|---|---|---|---|
| 5/ | | | | | | | | | |
| EZ Pic Share | | Mar-12 | Mar-12 | - | 2 | $ 2 | $ 1 | $ 1 | 29.3% |
| Its A Better Clock (Free) | | Feb-12 | Apr-12 | 79 | - | $ - | $ - | $ - | n/a |
| ItsABetterClock | 2/ | Jan-12 | Mar-12 | 1,657 | 15 | $ 15 | $ 12 | $ 3 | 24.6% |
| PhotoOrganizer | | Feb-12 | Apr-12 | - | 142 | $ 282 | $ 199 | $ 84 | 29.7% |
| Split Screen (Free) | | Feb-11 | Apr-12 | 6,852 | - | $ - | $ - | $ - | n/a |
| Split Screen | | Apr-10 | Apr-12 | - | 1,953 | $ 1,976 | $ 1,408 | $ 578 | 29.2% |
| TwoView | | May-10 | Apr-12 | 1,690 | 2,340 | $ 2,761 | $ 1,965 | $ 794 | 28.8% |
| **Total:** | | | | **10,278** | **4,452** | **$ 5,036** | **$ 3,585** | **$ 1,460** | **29.0%** |
| **Average of Paid Apps:** 4/ | | | | **-** | **890** | **$ 1,007** | **$ 717** | **$ 292** | **29.0%** |

**Notes/Sources:**

1/ Apple, Inc. Launch To Date Net Sales by Adam Id (with ITS Billings) From 4/1/10 To 4/4/12, US Sales (APLNDC-WH-A0000029886 - APLNDC-WH-A0000029891).

2/ In addition to the data reflected, "ItsABetterClock" had U.S. sales of 2 paid "Inapp" units for $2 of Total App Revenue ( $1 in Apple Proceeds). I understand based on discussions with counsel that an "Inapp" is a complementary product to an app.  For example, an "Inapp" may allow a consumer to purchase add-ons for a previously purchased game.

3/ Average Price per Download is calculated by dividing Total App Revenue by Paid Units.

4/ Average of Paid Applications is calculated by dividing the total for each paid App by 5 (the number of paid apps).

5/ Apps based on Expert Report of Vincent E. O'Brien, March 22, 2012, p. 15. The source file includes data for the "PhotoOrganizer" and "Photorganizer." I have only included data for "PhotoOrganizer" because that name is listed in Dr. O'Brien's report.

6/ Weighted Average Margin calculated by weighting margin using the Paid Units for each month of sales.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 6.2

## Corrected Royalty Base Using Dr. O'Brien's Methodology

| Patents | Description | iPhone | iPad | iPod | Total |
|---|---|---|---|---|---|
|  |  | 1/ | 2/ | 2/ |  |
| '460 | Email Photo | 40,428,820 | 14,679,533 | 17,187,119 | **72,295,472** |
| '893 | Photo Gallery Bookmark | 9,553,776 | 9,410,284 | 6,637,532 | **25,601,592** |
| '711 | Music in Background | 9,553,776 | - | - | **9,553,776** |
| '871 | Window Dividing | 26,875,498 | 9,410,284 | 6,637,532 | **42,923,314** |
| '055 | World Clock | 26,875,498 | - | - | **26,875,498** |

**Notes/Sources:**

1/ Exhibit 5.3.

2/ Expert Report of Vincent E. O'Brien, dated 3/22/12, Table 8: Total Royalty Rate (Units), pp. 21.

Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 7**

# Third Party Analysis of Revenue Per App

### Analysis of iOS Non-Game App Sales

| Price Per App | Number of Apps | Percent of Total Paid Apps | Percent of Non-Game Sales | Total Downloads | Total Sales | Revenue Per App |
|---|---|---|---|---|---|---|
| US$0.99 | 86,102 | 36.60% | 42.95% | 300,641,253 | US$297,634,840.59 | US$3,456.77 |
| US$1.99 | 40,015 | 17.01% | 24.54% | 171,795,002 | US$341,872,053.55 | US$8,543.60 |
| US$2.99 | 20,255 | 8.61% | 14.02% | 98,168,572 | US$293,524,031.62 | US$14,491.44 |
| US$3.99 | 11,759 | 5.00% | 8.01% | 56,096,327 | US$223,824,345.18 | US$19,034.30 |
| US$4.99 | 12,372 | 5.26% | 4.58% | 32,055,044 | US$159,954,669.88 | US$12,928.76 |
| US$5.99 | 4,335 | 1.84% | 2.62% | 18,317,168 | US$109,719,836.54 | US$25,310.23 |
| US$6.99 | 2,651 | 1.13% | 1.50% | 10,466,953 | US$73,164,002.62 | US$27,598.64 |
| US$7.99 | 4,694 | 2.00% | 0.85% | 5,981,116 | US$47,789,117.59 | US$10,180.89 |
| US$8.99 | 1,268 | 0.54% | 0.49% | 3,417,781 | US$30,725,847.82 | US$24,231.74 |
| US$9.99 | 7,279 | 3.09% | 0.28% | 1,953,018 | US$19,510,644.83 | US$2,680.40 |
| Over $10 | 9,862 | 4.19% | 0.16% | 1,116,010 | US$33,226,292.86 | US$3,369.12 |

TheAppleBlog @GigaOM.com

**Source**: Goetz, Geoffrey, "The Average iOS App Publisher Isn't Making Much Money," April 21, 2011
(http://gigaom.com/apple/the-average-ios-app-publisher-isnt-making-much-money/).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Samsung Electronics America, Inc. 1/
Statement of Income

*(In Thousands USD, unless otherwise stated)*



**Revenue**
    To third parties
    To related parties
**Total Revenue**
    Cost of sales
**Gross profit (loss)**
    *Gross Margin*

Operating Expenses
    Selling, general, and administrative expenses
    Other operating income
    Other operating expenses
Total operating expenses

**Operating profit (loss)**
    *Operating Margin*

Non-operating income (expense)
    Finance Income
    Finance Expense
    Interest expense from third parties, net of interest income
    Interest income from related parties, net of interest expense
    Other Income
Total non-operating income

Profit before income taxes
    Income tax benefit (expense)
**Profit (loss)**
    *Net Margin*

**Sources/Notes:**
1/ Parent Company Only, Including American Distribution Center.
2/ Samsung Electronics America, Inc. Financial Statements, dated December 31, 2010, p. 3 (SAMNDCA00322239-283, at SAMNDCA00322243).
3/ Samsung Electronics America, Inc. Financial Statements, dated December 31, 2011, p. 3 (SAMNDCA00322398-2445, at SAMNDCA00322402).
4/ Samsung Electronics America, Inc. Financial Statements, dated December 31, 2008, p. 3 (SAMNDCA00322374-397, at SAMNDCA00322378).
5/ Samsung Electronics America, Inc. Financial Statements, dated December 31, 2007, p. 3 (SAMNDCA00322475-498, at SAMNDCA00322479).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 9**

**Samsung Telecommunications America, LLC**

Statement of Income

*(In Thousands USD, unless otherwise stated)*

| | Year | | | | |
|---|---|---|---|---|---|
| | **2007** | **2008** | **2009** | **2010** | **2011 Q3** |

**Revenue**
  Product revenue
  Research revenue
**Total Revenue**
  Cost of sales
**Gross profit (loss)**
  *Gross Margin*

Operating Expenses
  Selling, general and administrative expenses
  Research and development income (expense)
  Other operating income
  Other operating expenses
Total operating expenses

**Operating profit (loss)**
  *Operating Margin*

Finance income (expense)
  Finance income
  Finance expenses
  Interest expense
Total non-operating income (expense)

Profit before income taxes
  Income tax expense
**Profit (loss)**
  *Net Margin*

Other comprehensive loss, net of tax
Comprehensive income

**Sources/Notes:**
1/  Samsung Telecommunications America, LLC Financial Statements December 31, 2010 and 2009 and January 1, 2009, p. 5 (SAMNDCA00322209-238, at SAMNDCA00322214).
2/  Samsung Telecommunications America, LLC Financial Statements December 31, 2008, p. 3 (SAMNDCA00322161-276, at SAMNDCA00322164).
3/  Samsung Telecommunications America, LLC Financial Statements December 31, 2007, p. 3 (SAMNDCA00322177-192, at SAMNDCA00322180).
4/  Samsung Telecommunications America, LLC Financial Statements September 30, 2011, pp. 5 (SAMNDCA00354601-630, at SAMNDCA00354606).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

**EXHIBIT 10**

## Summary of Samsung Products Practicing Samsung's Asserted Patents

| Products | Ref | STA Qty | STA Sales | SEA Qty | SEA Sales | Manu-facturing Gross Margin | Manu-facturing Operating Margin | Embodying Products According to Rog. 14 | FRAND Patents | | | | | | | Feature Patents | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | U.S. 6,928,6 04 | U.S. 7,050,4 10 | U.S. 7,200,7 92 | U.S. 7,362,8 67 | U.S. 7,386,0 01 | U.S. 7,447,5 16 | U.S. 7,675,9 41 | U.S. 7,069,0 55 | U.S. 7,079,8 71 | U.S. 7,456,8 93 | U.S. 7,577,4 60 | U.S. 7,698,7 11 |
| | | | | | | | | 3/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ |
| Eternity II (SGH-A597) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Bound (SGH-A657) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Evergreen (SGH-A667) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Strive (SGH-A687) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Propel (SGH-A767) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Flight (SGH-A797) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Solstice II (SGH-A817) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Rugby (SGH-A837) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Rugby II (SGH-A847) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Eternity (SGH-A867) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Impression (SGH-A877) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Solstice (SGH-A887) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Mythic (SGH-A897) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Flight II (SGH-A927) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Blackjack (SGH-I607) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Propel Pro (SGH-I627) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Jack (SGH-I637) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Focus Flash (SGH-I677) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Talor (SGH-I707) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Doubletime (SGH-I857) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Epix (SGH-I907) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Captivate Glide (SGH-I927) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Focus S (SGH-I937) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Siena (T259) (SGH-T259) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Smiley (SGH-T359) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Gravity TXT (SGH-T379) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Gravity 2 (SGH-T469) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Gravity 3 (SGH-T479) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Dart (SGH-T499) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Sub-Marine (T528) (SGH-T528) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Comeback (SGH-T559) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Carrera (T636) (SGH-T636) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Scarlet (T659) (SGH-T659) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Exhibit II 4G (SGH-T679) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Highlight (SGH-T749) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Behold (SGH-T919) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Memoir (SGH-T929) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Behold II (SGH-T939) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Trovre (SGH-A777) | 1/ | | | | | | | Yes | | | | | | | | | | | | |
| Focus (SGH-I917) | 1/ | | | | | | | Yes | | | | | | | | | | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

| Products | Ref | STA Qty | STA Sales | SEA Qty | SEA Sales | Manu-facturing Gross Margin | Manu-facturing Operating Margin | Embodying Products According to Rog. 14 | FRAND Patents | | | | | | | Feature Patents | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | U.S. 6,928,6 04 | U.S. 7,050,4 10 | U.S. 7,200,7 92 | U.S. 7,362,8 67 | U.S. 7,386,0 01 | U.S. 7,447,5 16 | U.S. 7,675,9 41 | U.S. 7,069,0 55 | U.S. 7,079,8 71 | U.S. 7,456,8 93 | U.S. 7,577,4 60 | U.S. 7,698,7 11 |
| | | | | | | | | 3/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ | 4/ |
| Acclaim (SCH-R880) | 2/ | | | | | | | Yes | | | | | | | | | Yes | | | Yes |
| Captivate (SGH-I897) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| Continuum (SCH-I400) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| Droid Charge (SCH-I510) | 2/ | | | | | | | Yes | | | | | | | | Yes | Yes | | | Yes |
| Epic 4G (SPH-D700) | 2/ | | | | | | | Yes | | | | | | | | Yes | Yes | | | Yes |
| Exhibit 4G (SGH-T759) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| Fascinate (SCH-I500) | 2/ | | | | | | | Yes | | | | | | | | Yes | Yes | | | Yes |
| Galaxy Ace (GT-S5830) | 2/ | | | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | | Yes | | | Yes |
| Galaxy Prevail (SPH-M820) | 2/ | | | | | | | Yes | | | | | | | | | Yes | | | Yes |
| Galaxy S (I9000) (GT-I9000) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| Galaxy S 4G (SGH-T959) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| Galaxy S II/2 (GT-I9100) | 2/ | | | | | | | Yes | | | | | | | | | | | | |
| Galaxy Tab 10.1 (GT-P7510) | 2/ | | | | | | | Yes | | Yes | Yes | Yes | Yes | Yes | Yes | | | | | Yes |
| Galaxy Tab 7.0 (P1, P2) | 2/ | | | | | | | Yes | | Yes | Yes | Yes | Yes | Yes | Yes | | | | | Yes |
| Galaxy Tab 8.9 (GT-P7310, SGH-I957) | 2/ | | | | | | | Yes | | | | | | | | | | | | |
| Gem (SCH-I100) | 2/ | | | | | | | Yes | | | | | | | | | | | | Yes |
| Gravity (SGH-T589) | 2/ | | | | | | | Yes | | | | | | | | | | | | |
| Indulge (SCH-R910) | 2/ | | | | | | | Yes | | | | | | | | Yes | Yes | | | Yes |
| Infuse 4G (SGH-I997) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| Intercept (SPH-M910) | 2/ | | | | | | | Yes | | | | | | | | | Yes | | | Yes |
| Mesmerize (SCH-I500) | 2/ | | | | | | | Yes | | | | | | | | Yes | Yes | | | Yes |
| Nexus S (GT-I9020) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes | | | Yes |
| Replenish (SPH-M580) | 2/ | | | | | | | Yes | | | | | | | | | Yes | | | Yes |
| Showcase (SCH-I500) | 2/ | | | | | | | Yes | | | | | | | | Yes | Yes | | | Yes |
| Sidekick (SGH-T839) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes | | | Yes |
| Vibrant (SGH-T959) | 2/ | | | | | | | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes | | | Yes |
| **Total** | | | | | | | | | | | | | | | | | | | | |

**Notes/Sources:**

1/ Data covers 2007 to 2011 per SAMNDCA00376902-7405.

2/ Data covers May of 2010 to December of 2011. STA, SEA, Manufacturing Quantity and Sales data is from SAMNDCA00372946-3138. Cost of Good Sold, Gross Profit, Gross Margin, Operating Profit, and Operating Margin data are from SAMNDCA00354292-

3/ Samsung's Amended Objections and Response to Apple's Sixth Set of Interrogatories (No. 14), 3/7/2012. "Gravity T" is also listed among the embodying products, but not included among the Samsung sales data produced.

4/ Samsung's Disclosure of Asserted Claims and Infringement Contentions, Exhibit M.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only