# Exhibit 9
# (Submitted Under Seal)

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**EXPERT REPORT OF WOODWARD YANG REGARDING THE INFRINGEMENT OF U.S. PATENT NOS. US 7,577,460, US 7,456,893, US 7,698,711 AND US 7,079,871** |

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      INTRODUCTION ................................................................................................1

II.     QUALIFICATIONS ...........................................................................................1

III.    COMPENSATION .............................................................................................3

IV.     OVERVIEW OF OPINIONS .............................................................................3

V.      CLAIM CONSTRUCTION AND INFRINGEMENT ......................................5

VI.     BACKGROUND OF PATENTED TECHNOLOGY ........................................7

VII.    U.S. PATENT NO. 7,577,460 ..........................................................................10

        A.      Infringement of U.S. Patent No. 7,577,460 ........................................12

        B.      Response to Apple's Non-Infringement Contentions as to the '460 Patent............13

VIII.   U.S. PATENT NO. 7,456,893 ..........................................................................15

        A.      Infringement of U.S. Patent No. 7,456,893 ........................................17

        B.      Response to Apple's Non-Infringement Contentions as to the '893 Patent............18

IX.     U.S. PATENT NO. 7,698,711 ..........................................................................20

        A.      Infringement of U.S. Patent No. 7,698,711 ........................................22

        B.      Response to Apple's Non-Infringement Contentions as to the '711 Patent............23

X.      U.S. PATENT NO. 7,079,871 ..........................................................................24

        A.      Infringement of U.S. Patent No. 7,079,871 ........................................25

        B.      Response to Apple's Non-Infringement Contentions as to the '871 Patent............26

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

## I.  INTRODUCTION

1.      I, Woodward Yang, am the Gordon McKay Professor of Electrical Engineering and Computer Science in the School of Engineering and Applied Science at Harvard University.

2.      I have been retained by Samsung as an expert witness in this action.  If called upon to testify as to the truth of the matters stated herein, I could and would do so competently.

## II.  QUALIFICATIONS

3.      I am presently the Gordon McKay Professor of Electrical Engineering and Computer Science in the School of Engineering and Applied Science at Harvard University, where I have taught and pursued research endeavors since 1990.  I have taught classes related generally to the design and analysis of microelectronic circuits and Very Large Scale Integration ("VLSI") systems: the process of creating integrated circuits by combining thousands of transistors into a single chip. VLSI began in the 1970s when complex semiconductor and communication technologies were being developed.  The microprocessors typically used in smartphones are an example of a VLSI device.  I have also taught graduate and undergraduate level courses in computer architecture, computing hardware, digital logic design, mixed signal circuit design, circuit theory, and engineering design.  My research pursuits have been directed to the development of advanced computing and memory systems for high performance image processing and computer vision applications, data encryption, error correcting codes, and integrated sensor and computing systems.

4.      Since 2008, I have also served as the Harvard Business School ("HBS") University Fellow and teach courses at HBS as a Visiting Professor.  In this capacity, I have conducted research and taught business school courses on the commercialization of new technologies, technological innovation, and industry architecture.

5.      I have over 25 years of experience in the field of electrical engineering and computer science, during which time I have published many peer-reviewed papers in the field and have been extensively involved in the development and commercialization of several important mobile phone technologies.  These technologies, which are now common in mobile

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

phones, include CMOS image sensors and pseudo-SRAM.  Over the course of my career, I have been a named inventor on at least 9 patents.

6.      I graduated with a Bachelor of Science degree in Electrical Engineering and Computer Science from the University of California, Berkeley in 1984.  During my undergraduate studies, I also pursued research in the university's Electronic Research Laboratory, where I researched the measurement and analysis of hot electron degradation in MOS ("metal oxide semiconductor") transistors.

7.      I received a Master's of Science degree in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology in 1987.  While pursuing my Masters degree, I served as a research assistant in the Microsystems Technology Laboratory, where I assisted in developing and characterizing low pressure ammonia and oxygen annealing processes that improve the reliability of scaled MOS transistors.

8.      I received my Ph.D. in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology in 1990.  My doctoral thesis concerned "The Architecture and Design of CCD Processors for Computer Vision."  While pursuing my doctorate, I served as research assistant in the university's Artificial Intelligence Laboratory, where I contributed to the development, design, and implementation of analog VLSI hardware in computer vision systems.

9.      From approximately 1990-2000, I taught and pursued advanced research at Harvard in the general areas of high performance VLSI computing systems and computer architecture, and also worked as a consultant in the area of advanced image sensors based on both CCD and CMOS technology.  The culmination of a large portion of this work was the successful commercialization of CMOS image sensors into miniature cameras that were integrated into computer and mobile phones.

10.     In 2000, I founded a company called Silicon7.  The company designed, developed, manufactured, and marketed advanced memory components and systems for mobile communication devices and platforms.  These advanced memory components and systems were optimized for the distinct requirements of mobile communication devices.

2

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

11.     Over the course of my career, I have received various honors and fellowships.  In 1984, I received both the National Science Foundation Fellowship and Hertz Foundation Fellowship.  In 1992, I received both the Army Research Office Young Investigator Award and the National Science Foundation Young Investigator Award.  I have also served as an IEEE Distinguished Lecturer in the areas of CMOS Image Sensors and High Performance VLSI Systems.

12.     I have previously been qualified as an expert witness in the field of electrical engineering and computer science in the matter of Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers, ITC Investigation No. 337-TA-701.

13.     Attached as **Appendix A** to this report is my curriculum vitae, which contains a complete listing of my education, my professional experience, the publications that I have authored, and the cases in which I have testified as an expert at trial or in depositions during the previous four years.

## III.    COMPENSATION

14.     I am being compensated at the rate of $550 per hour for my work on this case.  I have received no other compensation for my work in this litigation.  My compensation is in no way contingent upon the opinions I arrive at or the result of the litigation.

## IV.    OVERVIEW OF OPINIONS

15.     In preparing this report, I have reviewed the documents listed in **Appendix B**.

16.     I have been asked to offer my opinion as an expert in the field of electrical engineering and computer science as to whether Apple Inc. infringes certain claims of U.S. Patent No. 7,577,460 ("'460 patent"); U.S. Patent No. 7,456,893 ("'893 patent"); U.S. Patent No. 7,698,711 ("'711 patent"); and U.S. Patent No. 7,079,871 ("'871 patent").

17.     I have investigated whether the following Apple products infringe the '460, '893, '711, and '871 patents:  iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, iPod Touch (4th Generation).  As described more fully below, it is my opinion that:

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

- The iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, and iPod Touch (4th Generation) ("the '460 Accused Products") infringe claim 1 of the '460 patent, either literally or under the doctrine of equivalents;

- iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, and iPod Touch (4th Generation) ("the '893 Accused Products") infringe claims 1-4, 6-8, and 10-16 of the '893 patent, either literally or under the doctrine of equivalents;

- The iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, and iPod Touch (4th Generation) ("the '711 Accused Products") infringe claims 1, 2, 3, 7, 8, 9, 10, 15, 16, 17, and 18 of the '711 patent, either literally or under the doctrine of equivalents;

- The iPhone 3GS, iPhone 4, iPhone 4S, iPad 2, and iPod Touch (4th Generation) ("the '871 Accused Products") infringe claims 5, 9, 10, and 20 of the '871 patent, either literally or under the doctrine of equivalents.

18.     These opinions rely on my review of the devices themselves, the source code produced by Apple corresponding to the accused devices, the documents listed in this report and in **Appendix B**, and my academic and professional experience.

19.     With regard to each patent, I am prepared to testify to my understanding of the claims, the specification, the relevant aspects of the prosecution history, and the level of ordinary skill in the art applicable to each.

20.     I understand that claims of a patent are to be construed as they would have been understood by a person of ordinary skill in the art at the time of the invention of the claimed subject matter.  I am of the opinion that such a person of ordinary skill in the art for the '460, '893, '711, and '871 patents would have a Bachelor's Degree in computer science/engineering and several years of industry experience in multitasking systems and computer programming, or a Master's Degree with less relevant industry experience, or a person with equivalent industry experience in portable digital devices including cell phones, digital cameras, camera phones or smart phones.

21.     I understand that, to the extent Apple's accused products do not infringe the asserted claims literally, the accused products may still infringe under the doctrine of equivalents.  As discussed in detail below, I believe Apple's accused products literally infringe

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

each and every element of the asserted claims, or, alternatively, under the doctrine of equivalents because the manner in which the products perform the claimed methods and the products themselves are at most insubstantially different from each and every element of the asserted claims.

22.     I understand that Apple has provided certain non-infringement contentions for the '460, '893, '711, and '871 patents.  I address those below.  To the extent that Apple provides additional non-infringement contentions in its expert reports or elsewhere, I reserve the right to supplement the opinions expressed herein.

## V.    CLAIM CONSTRUCTION AND INFRINGEMENT

23.     I understand that claim construction is an issue of law decided by the Court.  I further understand that the purpose of claim construction is to determine the meaning and scope of the patent claims asserted by a party to be infringed.  I have reviewed and analyzed the proposed claim construction arguments advanced by both parties for "applet," the disputed claim term of the '711 patent, and I note that the Court was not asked to construe any claim terms in the '460, '893, and '871 patents.  I understand that the Court will construe "applet," but has not done so yet.  My analysis is consistent with Samsung's position on the proper construction of the term "applet."  However, my analysis is not inconsistent with Apple's proposed construction in light of Apple's arguments, including those advanced by Apple's expert witness.

24.     Counsel has instructed me that, in the absence of the Court's construction as to a particular term, claims should be given their ordinary and customary meaning within the context of the patent.  That is, claims are accorded the meaning that the term would have to a person of ordinary skill in the art at the time of the invention, in light of the teaching of the patent.  In setting forth my opinions below, I have explained the ordinary and customary meaning of claims asserted by Samsung in this litigation.

25.     I understand that determination of patent infringement requires two steps.  First, as discussed above, the proper meaning and scope of the asserted claims are construed.  Second,

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

the properly construed claims are compared to the accused devices or accused processes of the devices.

26.     I understand that direct infringement entails a person infringing a patent by making, using, selling, or offering for sale in the United States a product or method embodying the patented invention.  I understand that direct infringement requires that the person infringing the patent actually performs the act of making, using, selling, or offering for sale the patented embodiment in the United States.

27.     As touched on above, I understand that a person may infringe a patent literally or under the doctrine of equivalents.  To literally infringe a patent claim, a product or process must contain or embody each and every element of that claim.

28.     I understand that a product or process may also be found to infringe the claims of a patent under the doctrine of equivalents.  Specifically, if a product or process does not literally infringe, based upon the express terms of a patent claim, the product or process may nonetheless be found to infringe if the accused product or process is considered to be an equivalent product or process to the patented invention.  Such equivalency is typically found, I understand, if the accused product or process contains "insubstantial differences" from the claimed invention.  I understand that whether equivalency exists may be determined based on the "insubstantial differences" test or based on the "triple identity" test, namely, whether the element of the accused product or process performs substantially the same function in substantially the same way to obtain substantially the same result.

29.     I further understand that there can be no infringement under the doctrine of equivalents if even one claim element, or its equivalent, is missing from the accused product or process.

30.     I understand that liability for infringement also may arise from actively inducing infringement of a patent.  I understand that induced infringement requires proof of direct infringement of an asserted claim, and further requires that the infringer knew or should have known that his actions would induce infringement.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

## VI.     BACKGROUND OF PATENTED TECHNOLOGY

31.     The digital revolution—the ongoing paradigm shift from analog and other traditional technologies to digital technologies—has reshaped our world over the last fifty years. The building block of the digital revolution is the encoding of information into a single bit: a "1" or a "0."  The central insight of the digital revolution is that digitally encoding information as bits has yielded immense advantages over previous analog information-encoding techniques from the perspective of durability, performance, cost, speed, storage, power consumption, and size.  By offering these advantages, the development of digital technologies has vastly expanded our capacity to store, access, manipulate, acquire, and transmit information across several media, including audio and visual information.  At the same time, the increased complexity of the hardware and software has required significant, long term research and development.

32.     In the 1980's and early-1990's, portable digital devices in the fields of telephony (mobile phones), photography (digital cameras), internet email (laptops), and music playback (CDROM players and MP3 players) first entered the market.  Initially, these devices were expensive, unwieldy, and offered only dedicated and limited features.  For example, mobile phones were only able to make and receive phone calls and only had limited other functionality such as displaying caller ID type information or sending or receiving brief text messages through SMS (Short Message Service).  In contrast, modern mobile phones now contain all of these features, such as the ability to play digital music, take and send pictures and movies, receive and send email through the internet and text messages through SMS, navigate using GPS, and many other functions.

33.     Significant hurdles, including technological and economic hurdles, limited inclusion of multiple features into a single portable device.  Technologically, supporting these features in a single portable device presented both hardware and software challenges.  These challenges stemmed in part from the resource demands of these various features, including processing resources, wireless data transmission resources, memory resources, and power-supply resources.  Due in part to these demands, engineers faced daunting technical imperatives to

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

miniaturize and reduce power consumption such that the hardware components could fit into a convenient portable form factor.  On the software front, engineers faced a two-fold challenge in (1) designing software capable of utilizing the hardware efficiently while (2) providing an intuitive, user friendly interface which permitted seamless feature interoperability.

34.     From an economic perspective, engineers faced the additional hurdle that—even if engineers could overcome the aforementioned technological challenges—the resulting devices needed to remain affordable, easy to use, and portable.

35.     In 1991, more than 15 years before Apple announced its first mobile phone, Samsung began developing digital mobile phone technology.  Samsung has since invested billions of dollars researching and developing patented technologies necessary to practice modern wireless standards, as well as novel feature technologies for wireless products.  From 2005 through 2010 alone, Samsung invested more than $35 billion in research and development.  More than a quarter of Samsung employees – 50,100 engineers overall, including more than 20,000 who work in telecommunications – engage daily in cutting-edge research and development projects.

36.     Samsung's milestones of innovation in wireless communications are legion.  Samsung paved the way for today's 3G and 4G technology by introducing the first CDMA handset in Korea in 1996.  In 1999, Samsung introduced the first multi-function smartphone that combined a wireless Internet phone with a touch screen PDA— eight years before the iPhone.  That same year, Samsung introduced the first cell phone with MP3 audio playback functionality and the first phone with TV functionality.  In 2000, Samsung released the first camera phone, and continued to improve on this technology by later introducing the first 5, 7, and 8 megapixel camera phones.  Samsung was also at the vanguard of reducing mobile phone size, unveiling an ultra-slim handset in 2001.

37.     Samsung's innovative contributions to the mobile device industry have been recognized through its receipt of numerous awards for excellence in mobile device and user interface design.  Samsung's mobile phones and devices were awarded close to 60 design awards

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

between 2007 and the beginning of 2011, while Apple's devices received only eight such awards. Samsung, for example, has received numerous "Red Dot Design Awards" in one of the largest international design competitions and a number of Samsung's mobile devices have been awarded the "iF Design Award" for features including the user interface. The iF Design Awards are among the most important in the world, as evidenced by the more than 11,000 annual entries from almost 50 countries.

38.    The '460, '893, '711, and '871 patents' claimed technologies share a common thread, as all are solutions invented by Samsung engineers in the process of achieving the convergence of multiple digital technologies into a single device. The claimed technologies are building blocks of the modern smart phone and are necessary to provide all-in-one portable digital devices that can perform voice, image capture, music, and email features. Specifically:

- The '460 patent is directed to the convergence and integration of cell phone, digital camera, and email technologies in a single device.

- The '893 patent is directed to the convergence and integration of digital photography and image review/storage technologies in a single device.

- The '711 patent is directed to the convergence and integration of music playback and other multitasking functions in single mobile communication device.

- The '871 patent is directed to the convergence and integration of text entry and advanced display methods for multitasking functions in a single portable telephone.

39.    Since the 1990's, Samsung has also played a leading role in developing processors, memory chips, and other hardware components that have increased the computing power and storage capabilities of mobile devices. Samsung developed hardware components that were not only increasingly powerful, but also increasingly energy efficient, affordable, and compact.

40.    To this day, Samsung is a leading supplier of hardware components for not only its own devices but for other leaders in the industry, such as Apple. For example, Apple's Accused Devices all use "A4" or "A5" processors designed and manufactured by Samsung for

9

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION

Apple.  In 2011, it was widely publicized that approximately 25% of the iPhone 4's hardware is purchased from Samsung.  In 2012, Apple began selling its newest iPad, the iPad HD, using Samsung's touchscreen technology.

## VII.    U.S. PATENT NO. 7,577,460

41.     The '460 patent application was filed on July 26, 2006 and issued on August 18, 2009, but claims priority to a Korean application filed on March 31, 1999.  The '460 patent is directed to the convergence of three digital technologies—e-mail, digital telephony, and digital photography—on a single device.  In particular, the patent is directed to the performance of three core functions on the device:  (i) transmitting an email displaying a message only (i.e., without any image); (ii) transmitting an email displaying an image and a message; and (iii) displaying images stored on the device in sequence.  As set forth in the background of the invention:  "A user can therefore photograph an object or images as needed in business and store the photographs on the device.  The MVP (mobile video phone) may also function as a radio transmitter and therefore the user can transmit/receive a desired image without logging into a personal computer (PC)."

42.     Claim 1 of the '460 patent claims the performance of these three core functions through performance of a five step method.  Using 1999 terminology, the preamble of claim 1 specifies that this claimed method is a "data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera."  However, today in 2012, this preamble can now be more easily described as a data transmitting method for a camera phone.  The preamble further specifies that this claimed method "comprises the following steps."  I am informed that "comprises" is open-ended transitional language, meaning that infringement requires proof of each of the claimed steps.

43.     Claim 1 next describes the performance of the three core functions of a camera phone in five steps (i.e. steps one through five can be found in the '460 patent in column 14; line 27, line 31, line 36, line 38, and line 41, respectively).  Although performance of these steps in the recited sequence would certainly infringe the patent, I do not understand claim 1 to require

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

of the duration" limitation to pending claims to help distinguish their claimed invention from U.S. Patent No. 6,867,807, issued to Malloy Desormeaux ("Malloy patent"). I have reviewed the Malloy patent, which is directed to the selection of an image to display upon activating the display. Specifically, the patent discloses displaying a last image viewed before deactivation, where less than a "first time period" has elapsed. However, where more time has elapsed, the Malloy patent discloses first displaying a default image, rather than a last image viewed.

74.     Thus, when the applicants added the "irrespective of the duration limitation," they did so to clarify that their claimed invention was not dependent on time. In other words, the applicants had claimed displaying the last-image viewed regardless of the expiration of a first time period.

75.     In contrast, in each event cited by Apple, the passage of time alone does not cause the display of an image other than the last-image displayed. For example, Apple cites examples in which a low memory states or a decision to clear the Photos app from short term memory are the triggering events. In fact, the examples cited by Apple are fully consistent with claim 8 of the '893 patent, which claims:

> *The method of claim 4 wherein the reading step comprises the step of determining if the index value is in a reset state.*

76.     In each of the examples cited by Apple, an event other than the elapse of time causes an accused device to enter a "reset state." In this reset state, the index value of the last-viewed image no longer resides in memory. In each instance, it is not elapsed time but instead entering a reset state that results in displaying an image or reset screen, rather than the last-viewed image.

## IX.     U.S. PATENT NO. 7,698,711

77.     The '711 patent application was filed on July 16, 2007 and issued on April 13, 2010, but claims priority to a Korean patent application filed on August 30, 2005. The claimed invention of the '711 patent allows a user to simultaneously listen to digital music files on a portable communication device while performing other tasks on the device. Specifically, the

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

patent is directed to use of a background music player that plays MP3 files while allowing a user to perform other functions on the device. As stated in the '711 Abstract: "An apparatus and method capable of performing multiple tasks in a portable terminal are provided, in which menu functions of the portable terminal can be implemented while continuing to play the music."

78.     Claim 1 of the '711 patent is a method claim directed to using multitasking techniques to implement this music player functionality/capability. The preamble of claim 1 requires performance of a "a multi-tasking method in a pocket-sized mobile communication device including an MP3 playing capability, the multi-tasking method comprising:…" I understand this to mean that the preamble describes a method for a pocket-sized mobile communication device which can multi-task including playing MP3 audio files, by involving and performing eight steps (i.e., steps one through eight can be found in the '711 patent in column 7; line 5, line 8, line 10, line 12, line 14, line 16, line 18, and line 22, respectively). I further understand that there is no requirement of involving and performing these steps in this order or any other particular sequence.

79.     In step one, the initiation of playing of background music requires the creation of some scheduled task to be performed in a multi-tasking environment such that the task involves the use of an application module and applet. In step two, there needs to be a user interface which can be used to control music play, such as the play or pause or volume controls.

80.     The next two steps of claim 1 involve the ability to select the music player interface and initiate the playing of music files. Step three requires that the device has an MP3 mode which can be selected using an interface. Once in MP3 mode, step four requires that the device allows the selecting and playing of a music file.

81.     The next three steps describe how the device behaves while switching from various modes. Step five requires that the music should continue to play even after switching from the MP3 mode to a standby mode. Step six requires that the device should display an indication that the music continues to play in standby mode. Step seven requires that the multi-

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

tasking device should be able to select and perform at least one (non MP3) function while music play continues in the background.

82.     Finally, step eight of claim 1 requires the device to continue to have some display indicating that music play is continuing even while performing the non-MP3 function from step seven.

83.     The '711 patent also sets forth several dependent claims.  Claim 2 of the '711 patent requires that the indication claimed in step eight of claim 1 must be an icon.  Claim 7 of the '711 patent requires showing the indication described in claim 1 (i.e., that the music is playing) while performing a non-MP3 messaging function, such as email or SMS.  Claim 8 of the '711 patent requires showing the indication described in claim 1 (i.e., that the music is playing) while performing a non-MP3 phone-book function.

84.     I understand claims 9 and 17 to be similar to claim 1; claim 16 to be similar to claim 8; and claim 18 to be similar to claim 10.

### A.     Infringement of U.S. Patent No. 7,698,711

85.     I understand that Apple manufactures, sells, offers for sale and/or imports the iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, and iPod Touch (4th Generation) ('711 Accused Devices).  It is my opinion that these products infringe claims 1, 2, 3, 7, 8, 9, 10, 15, 16, 17, and 18 of the '711 patent.  These '711 Accused Devices include or practice each and every element recited in these claims, either literally or equivalently.  My detailed analysis of how these products infringe the asserted claims of the '711 patent is provided in **Exhibit 3** to this Report.

86.     Furthermore, with respect to the infringing features of the '711 Accused Devices, I understand from Apple's interrogatory responses that iOS version 4 software produced by Apple in this case is representative of all commercially released versions of iOS 4 software, namely 4.0, 4.0.1, 4.0.2, 4.1, 4.2, 4.2.1, 4.2.5, 4.2.6, 4.2.7, 4.2.8, 4.2.9, 4.2.10, 4.3, 4.3.1, 4.3.2, 4.3.3, 4.3.4, and 4.3.5.  I further understand that, for these infringing features, iOS version 5 software produced by Apple in this case is representative of all commercially released versions of iOS 5.0 and 5.0.1 software.  I further understand that, with respect to the infringing features of

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

the '711 Accused Devices, there are no material differences between commercially released versions of iOS 4 software and that there are no material differences between iOS 5.0 and 5.0.1 software. Finally, based on Apple's interrogatory responses, I understand that the relevant software and corresponding source code of all commercially released versions of iOS 4 software have been available and are the same on all '711 Accused Products, with the exception of the iPhone 4S, and that all commercially released versions of iOS 5 software have been available and are the same on all '711 Accused Products.

87. Therefore, it is my understanding that my infringement analysis applies with equal force and relevance for all '711 Accused Products.

**B.    Response to Apple's Non-Infringement Contentions as to the '711 Patent**

88. Apple's non-infringement contentions as to the '711 patent are largely conclusory. Statements that Apple's Accused Products do not infringe because they do not are largely unhelpful.

89. Relevant to claims 1, 9, and 17, Apple's only non-infringement argument is based on an unsupported attempt to construe the term "applet." Apple alleges its products do not infringe because "background processes" it has identified run in "its own context, directly on the processor (scheduled individually by the Operating System process scheduler), and each can run without the presence of the other."

90. This non-infringement position is wholly dependent on Apple's own construction of "applet," one for which Apple has provided no support. Furthermore, Apple has provided no basis for choosing these "background processes." Apple appears to have picked these for the sole purpose of manufacturing a non-infringement position. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

91. Finally, Apple makes a straw man argument by stating that the "mediaserverd" background process "manages" the user experience. As an initial matter, Apple has not produced

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

any source code to support its claim regarding "mediaserverd".  Furthermore, even if "mediaserverd" background processes ran directly on the processor, as Apple alleges, other iPhone features utilize "mediaserverd".  Under Apple's own definition, these other features would be "applets" within the '711 patent because they do not "run in their own context."

## X.    U.S. PATENT NO. 7,079,871

92.    The patent application for the '871 patent was filed on January 21, 2003 and issued on July 18, 2006, but claims priority to a June 21, 2002 Korean application.  The claimed invention of the '871 patent permits a user to perform many tasks at once on a portable telephone while drafting (composing) a message.  Prior to the invention of the '871 patent, if a user began drafting (composing) a message, they had to save the draft message and exit the messaging application in order to access any other feature or device function.  The invention of the '871 patent eliminated this need by saving the message being composed and by dividing the display into two windows.  In the first window, the device displays text as it is being entered.  While maintaining the text in the message, a second window displays other functions accessible to the user, such as apps allowing the user to search for information or read incoming text messages.  Multitasking is better enabled by dividing the display window between two functions being performed simultaneously.  More specifically, a user can view useful incoming information at the same time that he enters text.  As set forth in the Summary of the Invention, among other aspects of invention:  "It is still another aspect of the present invention to provide a portable telephone which is capable of preserving character messages being drawn up when carrying out another telephone function, such as a telephone number search function, while drawing up the character messages to be transmitted, and a telephone data displaying method."

93.    Claim 5 of the '871 patent requires a portable telephone, or mobile phone, having certain features, which are described below.  First, the mobile phone must have some method for entering text-character messages and some ability to decide if the display should be split when certain multitasking events occur.  Next, the mobile phone must have the necessary wireless (e.g.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

DATED:  March 22, 2012                    Respectfully submitted,


_____
Woodward Yang

# EXHIBIT 3

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

**Expert Report of Woodward Yang – Exhibit 3A-1**

INFRINGEMENT OF U.S. PATENT NO. 7,698,711

| Asserted Claim | Proof of Infringement |
|---|---|
| 1. A multi-tasking method in a pocket-sized mobile communication device including an MP3 playing capability, the multi-tasking method comprising: | The '711 Accused Devices are mobile, capable of multi-tasking, can be used to communicate, and all play MP3 files, the multi-tasking comprising of the method below:<br><br>For example, all of the '711 Accused Devices are capable of making phone calls.[1] The iPhone 4, 4S and the iPod Touch include video phone call functionality, such as with Apple's Facetime app.[2] Further, all of the '711 Accused Devices have MP3 playing capability.[3] Lastly, the '711 Accused Devices are all pocket-sized and capable of multitasking.[4] |
| [a] generating a music background play object, wherein the music background play object | The '711 Accused Devices generate a music background play object (MBPO) when the Music App is selected and launched.[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |

---

[1]  Ex. 6.

[2]  Ex. 6.

[3]  Ex. 6.

[4]  Ex. 6; http://www.apple.com/iphone/ios/; http://www.apple.com/iphone/specs.html.

[5]  Ex. 6;

[6]  See, e.g., Ex. 3A-2 at Claim 1, step one; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ APLNDC-WH SC 00000433-444, APLNDC-WH SC 00000 496-498, APLNDC-WH SC 00000448-449, APLNDC-WH SC 00000450-452, APLNDC-WH SC 00000298, APLNDC-WH SC 00000299, APLNDC-WH SC 00000300, APLNDC-WH SC 00000301-00000304, APLNDC-WH-SC 00000410-414, APLNDC-WH-SC 00000415-416; APLNDC-WH-SC 00000315-326; APLNDC-WH-SC 00000327-328; APLNDC-WH-SC

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| includes an application module including at least one applet; | |
| [b] providing an interface for music play by the music background play object; | The '711 Accused Devices have an interface, such as a touchscreen interface, and home button which allow the user to interface with the MBPO.[7] |
| [c] selecting an MP3 mode in the pocket-sized mobile communication device using the interface; | From the standby mode (i.e. Apple Home screen) touchscreen interface is used to select and launch the Music App on the '711 Accused Devices.[8] Launching the Music App puts the '711 Accused Devices in an MP3 mode |
| [d] selecting and playing a music file in the pocket-sized mobile communication device in the MP3 mode; | Which is used to select and play a music file in the '711 Accused Devices.[9] |

---

00000333-336; APLNDC-WH-SC 00000307-314; APLNDC-WH-SC 00000337-359; APLNDC-WH-SC 00000329-332; APLNDC-WH-SC 00000360-363; APLNDC-WH-SC 00000305; APLNDC-WH-SC 00000364; APLNDC-WH-SC 00000306, APLNDC-WH-SC 00000365-369; APLNDC-WH-SC 00000370-378;APLNDC-WH-SC 00000379;APLNDC-WH-SC 00000380-385;APLNDC-WH-SC 00000386-389;APLNDC-WH-SC 00000390-400;APLNDC-WH-SC 00000401-403;APLNDC-WH-SC 00000404-409;APLNDC-WH-SC 00000417-432; APLNDC-WH-SC 000007874-7889; APLNDC-WH-SC 00000234; APLNDC-WH-SC 00000453-454; APLNDC-WH-SC 00000479-492, APLNDC-WH-SC 00000471-475, APLNDC-WH-SC 00000468-471, APLNDC-WH-SC 00000475-479, APLNDC-WH-SC 00000458-468, APLNDC-WH-SC 00000513-517.

[7] See, e.g., Ex. 6, 3A-2 at Claim 1, steps one and two.

[8] See, e.g., Ex. 6, 3A-2 at Claim 1, steps one to three.

[9] See, e.g., Ex. 6, 3A-2 at Claim 1, steps one to four.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| [e] switching the MP3 mode to a standby mode while the playing of the music file continues; | The '711 Accused Devices can switch from the MP3 mode back to a standby mode (i.e. Apple Home screen), by, for example, taping on the home button.[10] |
| [f] displaying an indication that the music file is being played in the standby mode; | While in the standby mode (i.e. Apple Home screen), the '711 Accused Devices display an icon as an indication that the music file continues to be played.[11] |
| [g] selecting and performing at least one function of the pocket-sized mobile communication device from the standby mode while the playing of the music file continues; | A different function or application on the '711 Accused Device can be selected and launched from standby mode (i.e. Apple Home screen) and performed while the playing of the music file continues. For example, selecting the Mail or Messages app icon opens the respective apps and the playing of the music file continues.[12] |
| [h]and continuing to display the indication that the music file is being played while | Furthermore, while in the Mail or Messages App, the '711 Accused Devices continue to display an icon as an indication that the music file continues to be played (see screenshots).[13] |

---

[10] See, e.g., Ex. 6, 3A-2 at Claim 1, steps one to five.

[11] See, e.g., Ex. 6, 3A-2 at Claim 1, steps one to five.

[12] See, e.g., Ex. 3A-2 at Claim 1, steps six, seven, and eight.

[13] See, e.g., Ex. 3A-2 at Claim 1, steps six, seven, and eight.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| performing the selected function. | |
| 2. The multi-tasking method of claim 1, wherein the displaying of the indication comprises displaying an icon. | For the method of claim 1, the '711 Accused Devices indicate playing of the music file continues by displaying  an icon.[14] |
| 7. The multi-tasking method of claim 1, wherein the function selected from the standby mode comprises a message function. | For the method of claim 1, the function selected from the standby mode comprises a message function, such as the Mail or Messages app.[15] <br><br> The '711 Accused Devices can select and perform a message function (e.g. Message App) from the standby mode (e.g. Apple Home screen) while playing of the music file continues.[16] |
| 8. The multi-tasking method of claim 1, wherein the function selected from the standby mode comprises a phone-book function. | For the method of claim 1, the function selected from the standby mode comprises the Contacts app, which provides phone-book functionality.[17] <br><br> The '711 Accused Devices can select and perform a phone-book function (e.g. Contacts App) from the standby mode (e.g. Apple Home screen) while playing of the music file continues. |
| 9. A multi-tasking apparatus in a pocket-sized mobile communication device including an MP3 playing | Each of the '711 Accused Devices is a multi-tasking apparatus in a pocket-sized mobile communication device including an MP3 playing capability, the multi-tasking apparatus comprising: <br><br> For example, all of the '711 Accused Devices are capable of making phone calls.[18]  The iPhone 4, 4S |

---

[14]  *Id.*

[15]  *Id.*

[16]  *Id.*

[17]  See, e.g., Ex. 3A-2 at Claim 8.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| capability, the multi-tasking apparatus comprising: | and the iPod Touch include video phone call functionality, such as with Apple's Facetime app.[19] Further, all of the '711 Accused Devices have MP3 playing capability and are all pocket-sized mobile devices.[20] |
| [a] a controller for generating a music background play object, wherein the music | The '711 Accused Devices have a controller which runs the software that generates a music background play object (MBPO) when the Music App is selected and launched.[21] ███████████ |

---

[18]  See, e.g., Ex. 6.

[19]  See, e.g., Ex. 6.

[20]  Ex. 6; http://www.apple.com/iphone/ios/; http://www.apple.com/iphone/specs.html.

[21]  See, e.g., Ex. 5.

[22]  See, e.g., Ex. 3A-2 at Claim 1, step one; ███████████████████████████████ APLNDC-WH SC 00000433-444,APLNDC-WH SC 00000 496-498, APLNDC-WH SC 00000448-449, APLNDC-WH SC 00000450-452, APLNDC-WH SC 00000298, APLNDC-WH SC 00000299,APLNDC-WH SC 00000300, APLNDC-WH SC 00000301-00000304, APLNDC-WH-SC 00000410-414, APLNDC-WH-SC 00000415-416; APLNDC-WH-SC 00000315-326; APLNDC-WH-SC 00000327-328; APLNDC-WH-SC 00000333-336; APLNDC-WH-SC 00000307-314; APLNDC-WH-SC 00000337-359; APLNDC-WH-SC 00000329-332; APLNDC-WH-SC 00000360-363; APLNDC-WH-SC 00000305; APLNDC-WH-SC 00000364; APLNDC-WH-SC 00000306, APLNDC-WH-SC 00000365-369; APLNDC-WH-SC 00000370-378;APLNDC-WH-SC 00000379;APLNDC-WH-SC 00000380-385;APLNDC-WH-SC 00000386-389;APLNDC-WH-SC 00000390-400;APLNDC-WH-SC 00000401-403;APLNDC-WH-SC 00000404-409;APLNDC-WH-SC 00000417-432; APLNDC-WH-SC 000007874-7889; APLNDC-WH-SC 00000234; APLNDC-WH-SC 00000453-454; APLNDC-WH-SC 00000479-492, APLNDC-WH-SC 00000471-475, APLNDC-WH-SC 00000468-471, APLNDC-WH-SC 00000475-479, APLNDC-WH-SC 00000458-468, APLNDC-WH-SC 00000513-517.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| background play object includes an application module including at least one applet, for providing an interface for music play by the music background play object, for selecting an MP3 mode in the pocket-sized mobile communication device using the interface, for selecting and playing a music file in the pocket-sized mobile communication device in the MP3 mode, for switching from the MP3 | The controller of the '711 Accused Devices are either the A4 processor or A5 processor—the manufacturer, Samsung, refers to these processors as the H3 and H4, respectively.[23]<br><br>The '711 Accused Devices have an interface, such as a touchscreen interface, and home button which allow the user to interface with the MBPO.[24]<br><br>From the standby mode (i.e. Apple Home screen) touchscreen interface is used to select and launch the Music App on the '711 Accused Devices.[25]  Launching the Music App puts the '711 Accused Devices in an MP3 mode, which is used to select and play a music file in the '711 Accused Devices.[26]<br><br>The '711 Accused Devices can switch from the MP3 mode back to a standby mode (i.e. Apple Home screen), by, for example, taping on the home button.[27]<br><br>While in the standby mode (i.e. Apple Home screen), the '711 Accused Devices display an icon as an indication that the music file  continues to be played.[28]<br><br>A different function or application on the '711 Accused Device can be selected and launched |

---

[23]   See, e.g., Ex. 5.

[24]   Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one and two.

[25]   Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to three.

[26]   Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to four.

[27]   Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to five.

[28]   Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to five.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

| Asserted Claim | Proof of Infringement |
|---|---|
| mode to a standby mode while the playing of the music file continues and for selecting and performing at least one function of the pocket-sized mobile communication device from the standby mode while the playing of the music file continues; | from standby mode  (i.e. Apple Home screen) and performed while the playing of the music file continues.[29]  For example, selecting the Mail or Messages app icon opens the respective apps and the playing of the music file continues.[30] |
| [b] and a display unit for displaying an indication that the music file is being played in the standby mode and for continuing to display the indication that the music file is being played while performing the selected function. | The '711 Accused Devices all have a display unit, such as a screen, that continues to display an icon as an indication that the music file continues to be played (see screenshots).[31] |
| 10. The multi-tasking apparatus of claim 9, wherein the indication | The '711 Accused Devices display an  icon as an indication that the music file continues to be played (see screenshots)..[32] |

[29]  See, e.g., Ex. 3A-2 at Claim 1, steps six, seven, and eight.

[30]  See, e.g., Ex. 3A-2 at Claim 1, steps six, seven, and eight.

[31]  See, e.g., Ex. 3A-2 at Claim 1, steps six, seven, and eight.; Ex. 6.

[32]  See, e.g., Ex. 3A-2 at Claim 1, steps six, seven, and eight.; Ex. 6.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| comprises an icon. | |
| 15. The multi-tasking apparatus of claim 9, wherein the function selected from the standby mode comprises a message function. | The '711 Accused Devices of claim 9, wherein the function selected from the standby mode comprises a message function, such as the Mail or Messages app.[33]<br><br>The '711 Accused Devices can select and perform a message function (e.g. Message App) from the standby mode (e.g. Apple Home screen) while playing of the music file continues. |
| 16. The multi-tasking apparatus of claim 9, wherein the function selected from the standby mode comprises a phone-book function. | The function selected from the standby mode comprises the Contacts app, which provides phone-book functionality.[34]<br><br>The '711 Accused Devices can select and perform a phone-book function (e.g. Contacts App) from the standby mode (e.g. Apple Home screen) while playing of the music file continues. |
| 17. A multi-tasking apparatus in a pocket-sized mobile communication device consisting of a single display unit and including an MP3 playing capability, the multi-tasking apparatus comprising: | Each of the '711 Accused Devices is a multi-tasking apparatus in a pocket-sized mobile communication device with a single display unit and including an MP3 playing capability, the multi-tasking apparatus comprising:<br><br>For example, all of the '711 Accused Devices are capable of making phone calls. The iPhone 4, 4S and the iPod Touch include video phone call functionality, such as with Apple's Facetime app.[35]  Further, all of the '711 Accused Devices have MP3 playing capability and are all pocket-sized mobile devices..[36] |

---

[33]  *Id.*

[34]  See, e.g., Ex. 3A-2 at Claim 8.

[35]  Ex. 6.

[36]  Ex. 6; http://www.apple.com/iphone/ios/; http://www.apple.com/iphone/specs.html.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

| Asserted Claim | Proof of Infringement |
|---|---|
|  |  |
| [a] a controller for generating a music background play object, wherein the music background play object includes an application module including at least one applet, for providing an interface for music play by the music background play object, for selecting an MP3 mode in the | The '711 Accused Devices have a controller which runs the software that generates a music background play object (MBPO) when the Music App is selected and launched. ███████████ ████████████████████████████████████████████████████████████████████████████████ <br><br>The controller of the '711 Accused Devices are either the A4 processor or A5 processor—the manufacturer, Samsung, refers to these processors as the H3 and H4, respectively.[38] <br><br>The '711 Accused Devices have an interface, such as a touchscreen interface, and home button which allow the user to interface with the MBPO.[39] <br><br>     From the standby mode (i.e. Apple Home screen)  touchscreen interface is used to select and launch the Music App on the '711 Accused Devices.[40]  Launching the Music App puts the '711 |

---

[37]   See, e.g., Ex. 3A-2 at Claim 1, step one; ████████████████████████████████████████ ███████████████████████████████████████████ APLNDC-WH SC 00000433-444,APLNDC-WH SC 00000 496-498, APLNDC-WH SC 00000448-449, APLNDC-WH SC 00000450-452, APLNDC-WH SC 00000298, APLNDC-WH SC 00000299,APLNDC-WH SC 00000300, APLNDC-WH SC 00000301-00000304, APLNDC-WH-SC 00000410-414, APLNDC-WH-SC 00000415-416; APLNDC-WH-SC 00000315-326; APLNDC-WH-SC 00000327-328; APLNDC-WH-SC 00000333-336; APLNDC-WH-SC 00000307-314; APLNDC-WH-SC 00000337-359; APLNDC-WH-SC 00000329-332; APLNDC-WH-SC 00000360-363; APLNDC-WH-SC 00000305; APLNDC-WH-SC 00000364; APLNDC-WH-SC 00000306, APLNDC-WH-SC 00000365-369; APLNDC-WH-SC 00000370-378;APLNDC-WH-SC 00000379;APLNDC-WH-SC 00000380-385;APLNDC-WH-SC 00000386-389;APLNDC-WH-SC 00000390-400;APLNDC-WH-SC 00000401-403;APLNDC-WH-SC 00000404-409;APLNDC-WH-SC 00000417-432; APLNDC-WH-SC 000007874-7889; APLNDC-WH-SC 00000234; APLNDC-WH-SC 00000453-454; APLNDC-WH-SC 00000479-492, APLNDC-WH-SC 00000471-475, APLNDC-WH-SC 00000468-471, APLNDC-WH-SC 00000475-479, APLNDC-WH-SC 00000458-468, APLNDC-WH-SC 00000513-517.

[38]   Ex. 6.

[39]   Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one and two.

SUBJECT TO PROTECTIVE ORDER
CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Asserted Claim | Proof of Infringement |
|---|---|
| pocket-sized mobile communication device using the interface, for selecting and playing a music file in the pocket-sized mobile communication device in the MP3 mode, and for switching from the MP3 mode to a standby mode while the playing of the music file continues; | Accused Devices in an MP3 mode, which is used to select and play a music file in the '711 Accused Devices.[41]<br><br>The '711 Accused Devices can switch from the MP3 mode back to a standby mode (i.e. Apple Home screen), by, for example, taping on the home button.[42] |
| [b] and a display unit for displaying an indication that the music file is being played in the standby mode. | While in the standby mode (i.e. Apple Home screen), the '711 Accused Devices display an icon as an indication that the music file  continues to be played.[43] |
| 18. The multi-tasking apparatus of claim 17, wherein the indication comprises an icon. | The '711 Accused Devices display an  icon as an indication that the music file continues to be played (see screenshots)..[44] |

[40]  Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to three.

[41]  Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to four.

[42]  Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to five.

[43]  Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to five.

[44]  Ex. 6; See, e.g., Ex. 3A-2 at Claim 1, steps one to five.

**SUBJECT TO PROTECTIVE ORDER**
**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

**SUBJECT TO PROTECTIVE ORDER**

**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

**<u>Expert Report of Woodward Yang – Exhibit 3A-2</u>**

**INFRINGEMENT OF U.S. PATENT NO. 7,698,711**

| Claim 1 |
|---|
| Preamble |

 

Each Accused Device also functions as a phone.

SUBJECT TO PROTECTIVE ORDER

CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Step one |
|---|



**SUBJECT TO PROTECTIVE ORDER**

**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**



SUBJECT TO PROTECTIVE ORDER

CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

## Step two



SUBJECT TO PROTECTIVE ORDER

CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

**Step three**



SUBJECT TO PROTECTIVE ORDER

CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

### Step four



**SUBJECT TO PROTECTIVE ORDER**

**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**



SUBJECT TO PROTECTIVE ORDER

CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

| Step five |
| --- |
|  |

**SUBJECT TO PROTECTIVE ORDER**

**CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION**

**Steps six, seven, eight**



SUBJECT TO PROTECTIVE ORDER

CONTAINS HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE INFORMATION

**Claim 8**



# EXHIBIT 6

**Expert Report of Woodward Yang – Exhibit 6**

| User Manuals |
| --- |

## User Manual for iPhone 3GS, e.g.:[1]



2



### Phone Calls
Making a call on iPhone is as simple as tapping a name and number in your contacts, tapping one of your favorites, or tapping a recent call to return it.

### Making Calls
Buttons at the bottom of the Phone screen give you quick access to your favorites, recent calls, your contacts, and a numeric keypad for dialing manually.



### About Camera
With the built-in camera, it's easy to take photos and record videos with iPhone. The lens is on the back of iPhone, so you can use the screen to see the photo or video you're taking. "Tap to focus" (iPhone 3GS only) lets you focus on a specific area of your shot and automatically adjust the exposure. You can quickly review—and keep or delete—photos and videos you've taken.

*Note:* Video features are available only on iPhone 3GS.

3

---

[1] SAMNDCA00371436-371709; SAMNDCA00371219-371435.

[2] SAMNDCA00371445

[3] SAMNDCA00371265; SAMNDCA00371321.

## Music and Other Audio

The high-resolution Multi-Touch display makes listening to songs on iPhone as much a visual experience as a musical one. You can scroll through your playlists, or use Cover Flow to browse through your album art. [4]

**User Manual for iPhone 4, e.g.:[5]**



[6]

---



## About Camera

With iPhone, you have a great still camera and video camera wherever you go. iPhone 4 has a main camera that takes photos and high-definition video, an LED flash for photos and videos taken with the main camera, and a front camera that lets you make FaceTime video calls and take photos and videos of yourself.

The main camera is on the back of iPhone. You use the screen to control the camera and to see the photo or video you're taking. Tap-to-focus lets you tap anywhere on the screen to focus on a specific object or area of your shot and automatically adjust the exposure. The macro autofocus feature (about 10 cm) and a 5x digital zoom let you take great close-ups. 7

**View photos and videos:**

1 In Photos, tap a photo album. Tap the buttons at the bottom of the screen to view your photos and videos by albums, events, faces, or places if available.

Photos are sorted by creation date. If you tap Places, a map shows each location that you've tagged photos from. Tap a pin, then tap ⓘ to see your photos and videos from that location.

2 Tap a thumbnail to see the photo or video in full screen.

**Show or hide the controls:** Tap the full-screen photo or video to show the controls. Tap again to hide the controls.

 

**Play a video:** Tap ▶ in the center of the screen.

To replay a video, tap ▶ at the bottom of the screen. If you don't see ▶, tap the screen to show the controls. 8

## Sending Email

You can send an email message to anyone who has an email address.

**Compose and send a message:**

1 Tap ✉.

2 Type a name or email address in the To field, or tap ⓘ to add a name from your contacts.

As you type an email address, matching email addresses from your contacts list appear below. Tap an address to add it. To add more names, tap Return or ⓘ.

**Note:** If you're composing a message from your Microsoft Exchange account and have access to your enterprise Global Address List (GAL), matching addresses from the contacts on iPhone appear first, followed by matching GAL addresses.

3 Tap Cc/Bcc/From if you want to copy or blind copy the message to others, or change the account you send the message from. If you have more than one email account, or if you have email aliases for your MobileMe account, you can tap the From field to change the account or alias you're sending from.

4 Enter a subject, then your message.

You can tap Return to move from one field to another.

5 Tap Send. 9

Mail works with MobileMe, Microsoft Exchange, and many of the most popular email systems—including Yahoo!, Google, and AOL—as well as other industry-standard POP3 and IMAP email systems. You can send and receive photos, videos, and graphics, and view PDFs and other attachments. You can also print messages, and attachments that open in Quick Look.

---

7   SAMNDCA00371560.

8   SAMNDCA00371560; SAMNDCA00371553.

| Send a photo or video in an email message | In Photos, choose a photo or video, tap 📧, then tap Email Photo or Email Video. You can also copy and paste photos and videos. |
| | To send multiple photos or videos, tap 📧 while viewing thumbnails in an album. Tap to select the photos and videos, tap Share, then tap Email. 10 |



**Phone Calls**
Making a call on iPhone is as simple as tapping a name and number in your contacts, tapping one of your favorites, or tapping a recent call to return it.

**Making Calls**
Buttons at the bottom of the Phone screen give you quick access to your favorites, recent calls, your contacts, and a numeric keypad for dialing manually.

**FaceTime**
FaceTime video calls (iPhone 4) let you see as well as hear the person you're talking to. You can make a video call to someone with a device that supports FaceTime. No setup is needed, but you must have a Wi-Fi connection to the Internet. FaceTime uses the front camera so the person you call can see your face, but you can switch to the main camera to share what you see around you. 11



Use the iPod app to enjoy your favorite music, widescreen videos, and more. Browse your content on iPhone by playlists, artists, songs, videos, or other categories, or browse your album artwork using Cover Flow. Play your music on AirPlay speakers or sound systems, or watch your videos on a TV using AirPlay and Apple TV. 12

---

9   SAMNDCA00371510; SAMNDCA00371516.

10   SAMNDCA00371516.

11   SAMNDCA00371587; SAMNDCA00371500 (in "Phone" section of user manual).

12   SAMNDCA00371526.

## Opening and Switching Applications

You open an application on iPhone by tapping its icon on the Home screen.

**View the most recently used applications (iPhone 3GS or later):** Double-click the Home button.

The four most recently used application are shown at the bottom of the screen. Flick left to see more applications.



13

**See the next or previous photo or video:** Flick left or right. Or tap the screen to show the controls, then tap ➡ or ⬅.



14

---

13   Apple iPhone User Guide for iOS 4 Software at SAMNDCA00001943-44.

14   SAMNDCA00371510; SAMNDCA00371554.

**User Manual for iPhone 4S, e.g.:**[15]



16



Phone calls

**Making a call**

Making a call on iPhone is as simple as tapping a name or number in your contacts, using Siri to say "call bob" (iPhone 4S), tapping one of your favorites, or tapping a recent call to return it. Buttons at the bottom of the Phone screen give you quick access to your favorites, recent calls, your contacts, and a numeric keypad for dialing manually.

**FaceTime**

FaceTime video calls (iPhone 4 or later) let you see as well as hear the person you're talking to. You can make a video call to someone with a Mac or iOS device that supports FaceTime. No setup is needed, but you must have a Wi-Fi connection to the Internet. By default, FaceTime uses the front camera so the person you call can see your face; switch to the rear camera to share what you see around you.



About Camera

Built-in cameras let you take both still photos and videos. iPhone 4 and iPhone 4S include a front camera for FaceTime and self-portraits (in addition to the camera on the back), and an LED flash.

17

---

[15]  SAMNDCA00371710-371888.

[16]  SAMNDCA00371718

[17]  SAMNDCA00371765; SAMNDCA00371800; SAMNDCA00371769 (in "Phone" section of user manual).

### Playing songs and other audio

*WARNING:* For important information about avoiding hearing loss, see the *Important Product Information Guide* at www.apple.com/support/manuals/iphone.

The buttons along the bottom of the screen let you browse content on iPhone by playlists, artists, songs, and other categories.

**Play a song or other item:** Tap the item.

Use the onscreen controls to control playback. You can also use the buttons on the earphones. See "Apple Earphones with Remote and Mic" on page 33.      18

## User Manual for iPad 2, e.g.:[19]



---

[18]   SAMNDCA00371784.

[19]   SAMNDCA00370528-370725; SAMNDCA00370726-370923; SAMNDCA00370924-371064.

[20]   SAMNDCA00370536



## About FaceTime

FaceTime lets you make video calls over Wi-Fi. Use the front camera to talk face-to-face, or the back camera to share what you see around you.

To use FaceTime, you need iPad 2 and a Wi-Fi connection to the Internet. The person you call must also have a device or computer that works with FaceTime. For more information, see "FaceTime" on page 169.

*Note:* FaceTime may not be available in all countries or regions.





## About Camera

With iPad, you have a great still camera and video camera wherever you go. iPad has a back camera that takes photos and high-definition video, and a front camera that lets you make FaceTime video calls and take photos and videos of yourself.

Use the screen to control the back camera and to see the photo or video you're taking. You can tap anywhere on the screen to select a specific object or area, and automatically adjust the exposure based on that part of the image. Autofocus (up to about 4 inches or 10 cm) and a 5x digital zoom let you take great close-ups. 21

## Playing Music and Other Audio

Listen to audio using the built-in speaker. You can also attach wired headphones to the headphones port, or pair wireless Bluetooth headphones. Sound doesn't come out of the speaker when you attach or pair headphones.

> *WARNING:* For important information about avoiding hearing loss, see the *iPad Important Product Information Guide* at support.apple.com/manuals/ipad.

## Playing Songs

**Browse your collection:** Tap Music, Podcasts, Audiobooks, iTunes U, or Purchased. At the bottom of the screen, tap Songs, Artists, Albums, Genres, or Composers to browse. 22

**User Manual for iPod Touch (4th Gen.), e.g.:23**

---

21  SAMNDCA00370788; SAMNDCA00370785.

22  SAMNDCA00370830.

23  SAMNDCA00372575-372804; SAMNDCA00372805-372945.



Front camera

Main camera (on back)

Volume buttons (on side)

Status bar

App icons

Touchscreen

Home button

Dock connector

24

## About FaceTime

FaceTime lets you make video calls over Wi-Fi. Use the front camera to talk face-to-face, or the main camera to share what you see around you.

To use FaceTime, you need an iPod touch 4th generation and a Wi-Fi connection to the Internet. The person you call must also have a Wi-Fi connection, and either an iPod touch 4th generation, iPad 2, or iPhone 4. For more information, see "Connecting to the Internet" on page 19.

*Note:* FaceTime may not be available in all countries or regions.





## About Camera

With iPod touch 4th generation, you can capture photos and video wherever you go. iPod touch 4th generation has a main camera that takes photos and high-definition video, and a front camera that lets you make FaceTime video calls and take photos and videos of yourself.

The main camera is on the back of iPod touch. You use the screen to control the camera and to see the photo or video you're taking. You can tap anywhere on the screen to set the exposure based on that part of the image.

25

---

24   SAMNDCA00372583.

25   SAMNDCA00372642; SAMNDCA00372646.

**About FaceTime**

FaceTime lets you make video calls over Wi-Fi. Use the front camera to talk face to face, or the main camera to share what you see around you.

To use FaceTime, you need iPod touch 4th generation and a Wi-Fi connection to the Internet. The person you call must also have an iOS device or computer that works with FaceTime.

*Note:* FaceTime may not be available in all areas.



Drag your image to any corner.

Switch cameras.

Mute (you can hear and see; the caller can see but not hear).

26

 

Use the Music and Videos apps to enjoy your favorite music, widescreen videos, and more. Browse your content on iPod touch by playlists, artists, songs, videos, or other categories, or browse your album artwork using Cover Flow. Play your music on AirPlay speakers or sound systems, or watch your videos on a TV using AirPlay and Apple TV.

27

---

26   SAMNDCA00372853.

27   SAMNDCA00372626.

**User Manual for iPhone 3G, e.g.:**[28]



## Sending Email

You can send an email message to anyone who has an email address.

**Compose and send a message:**

1 Tap ✐.

2 Type a name or email address in the To field, or tap ⊕ to add a name from your contacts.

As you type an email address, matching email addresses from your contacts list appear below. Tap an address to add it. To add more names, tap Return or ⊕.

*Note:* If you're composing a message from your Microsoft Exchange account and have access to your enterprise Global Address List (GAL), matching addresses from the contacts on iPhone appear first, followed by matching GAL addresses.

3 Tap Cc/Bcc/From if you want to copy or blind copy the message to others, or change the account you send the message from. If you have more than one email account, you can tap the From field to change the account you're sending from.

4 Enter a subject, then your message.

You can tap Return to move from one field to another.

5 Tap Send.

| | |
|---|---|
| Send a photo or video (iPhone 3GS only) in an email message | In Photos, choose a photo or video, tap ⬛, then tap Email Photo or Email Video. You can also copy and paste photos and videos. The photo or video is sent using your default email account (see "Mail" on page 152). |
| Send a video in an email message (iPhone and iPhone 3G) | In Photos, choose a video, then touch and hold the video until the Copy command appears. Tap Copy. Go to Mail and create a new message. Tap to place an insertion point where you want the video, then tap the insertion point to display the edit commands and tap Paste. The video is sent using your default email account (see "Mail" on page 152).  **30** |

---

30   SAMNDCA00371277-78.

### About Camera

With the built-in camera, it's easy to take photos and record videos with iPhone. The lens is on the back of iPhone, so you can use the screen to see the photo or video you're taking. "Tap to focus" (iPhone 3GS only) lets you focus on a specific area of your shot and automatically adjust the exposure. You can quickly review—and keep or delete—photos and videos you've taken.                                         **31**

### Music and Other Audio

The high-resolution Multi-Touch display makes listening to songs on iPhone as much a visual experience as a musical one. You can scroll through your playlists, or use Cover Flow to browse through your album art.

*WARNING:* For important information about avoiding hearing loss, see the *Important Product Information Guide* at www.apple.com/support/manuals/iphone.

### Playing Songs

**Browse your collection:**  Tap Playlists, Artists, or Songs. Tap More to browse Albums, Audiobooks, Compilations, Composers, Genres, iTunes U, or Podcasts.                     **32**

---

[31]  SAMNDCA00371321.

[32]  SAMNDCA00371291.