# Exhibit 32
# (Submitted Under Seal)

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

United States District Court
Northern District of California

Apple Inc.

v.

Samsung Electronics Co., Ltd. et al.

Corrected Expert Report of Michael J. Wagner

April 20, 2012

Volume 1

LitiNomics

# Apple Inc. v. Samsung Electronics Co., Ltd. et al.

## Table of Contents

### Corrected Expert Report of Michael J. Wagner

### Volume 1

| Tab # | Description |
|---|---|
| 1 | Corrected Expert Report of Michael J. Wagner |
| 2 | Damages Analysis |
| 3 | License Agreement Matrix |
| 4 | List of Documents Considered |
| 5 | Curriculum Vitae of Michael J. Wagner |
| 6 | Corrected Damages Analysis Based on U.S. Manufacturing Costs |

# Tab 1

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

United States District Court

Northern District of California

San Jose Division

Case No. 11-cv-01846 LHK

APPLE INC.

v.

SAMSUNG ELECTRONICS CO., LTD, SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

Corrected Expert Report of

Michael J. Wagner

April 20, 2012

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

I.    **INTRODUCTION** ............................................................................................................ 1

II.   **SUMMARY OF OPINIONS** ........................................................................................ 2

III.  **BACKGROUND AND DESCRIPTION OF THE INVENTIONS** ........................................ 7

   A. PARTIES TO THE LITIGATION ........................................................................................ 7

      1. Apple Inc. ............................................................................................................ 7

      2. Samsung Electronics Co., Ltd. ........................................................................... 8

      3. Samsung Electronics America, Inc. ................................................................... 9

      4. Samsung Telecommunications America, LLC ................................................ 10

   B. APPLE'S ASSERTED INTELLECTUAL PROPERTY ............................................................. 11

      1. Apple's Utility Patents ...................................................................................... 11

         a) User Interface Utility Patents .................................................................. 11

         b) Touchscreen-Related Utility Patents ...................................................... 13

      2. Apple's Design Patents .................................................................................... 15

         a) UI Design Patents ................................................................................... 15

         b) Electronic Device Design Patents ........................................................... 19

      3. Apple's Trade Dress at Issue ............................................................................ 33

         a) Original iPhone Trade Dress ................................................................... 33

         b) iPhone 3G Trade Dress ........................................................................... 34

         c) iPhone 4 Trade Dress .............................................................................. 34

         d) iPhone Trade Dress ................................................................................. 35

         e) Trade Dress Registrations ....................................................................... 35

         f) 85/299,118 Trade Dress Application ..................................................... 37

         g) iPad and iPad 2 Trade Dress ................................................................... 38

         h) 77/921,838, 77/921,829, and 77/921,869 Trade Dress Applications ..... 38

      4. Apple's Trademarks at Issue ............................................................................ 40

         a) Registered Icon Trademarks ................................................................... 40

         b) iTunes Store Trademark .......................................................................... 41

         c) iTunes Eighth Note and CD Design Trademark ..................................... 42

    C. SAMSUNG'S ALLEGEDLY INFRINGING PRODUCTS .................................................................................. 42

        1.    Samsung Galaxy Smartphones .............................................................................. 44

        2.    Other Samsung Smartphones ............................................................................... 46

        3.    Tablet Computers ................................................................................................. 47

IV.    **BASES FOR OPINIONS** ............................................................................................................... 47

    A. DISAGREEMENTS WITH THE OPINIONS EXPRESSED BY TERRY L. MUSIKA .............................................. 48

        1.    Mr. Musika's analysis is a high-level analysis and is largely divorced from the specific intellectual property that is at issue in this lawsuit. ............................................................... 48

            a)    Mr. Musika fails to provide evidence of demand for the specific design IP at issue. ..................... 48

            b)    Mr. Musika fails to provide evidence of demand for the specific utility patents at issue. ............... 54

        2.    Although Mr. Musika claims not to use the entire market value rule, in effect he does. ........ 57

        3.    Mr. Musika does not establish Apple's entitlement to lost profits related to Samsung's infringement of the intellectual property at issue. ................................................................. 58

            a)    Mr. Musika has not provided sufficient evidence of demand for the intellectual property at issue. 60

            b)    Samsung has acceptable, non-infringing alternatives available for the asserted intellectual property. ....................................................................................................................... 76

            c)    Mr. Musika has not proven that Apple has sufficient capacity for all time periods. ......................... 78

        4.    Even if Mr. Musika were to prove entitlement to lost profits, his lost profits calculations significantly overstate the amount of lost profits. .................................................................... 88

            a)    Mr. Musika does not take price elasticity of demand into consideration in his lost profits calculation. .................................................................................................................... 88

            b)    Mr. Musika includes lost profits for the Galaxy Tab 7.0 (3G), which is not appropriate based on Mr. Musika's own analysis. ........................................................................................... 94

            c)    Mr. Musika incorrectly uses an assumption that 26% of users select a new carrier when purchasing a cell phone in calculating his lost profits damages. ................................................. 95

            d)    Mr. Musika's analysis does not properly take into account platform competition and the fact that Samsung customers chose to not purchase an iPhone. ............................................................ 97

            e)    Mr. Musika's incremental profitability is overstated, resulting in significantly overstated lost profits.101

        5.    Mr. Musika's calculation of Samsung's profits related to the infringement is overstated. ... 101

        6.    Mr. Musika's reasonable royalty analysis relies on unreasonable benchmarks and results in an overstated concluded reasonable royalty rate. ................................................................. 102

            a)    Mr. Musika's cost approach does not provide a reasonable value for the intellectual property at issue. .......................................................................................................................... 103

  b)   Mr. Musika's income approach does not provide a reasonable value for the intellectual property at issue. .................................................................................................................108

  c)   The other benchmarks mentioned by Mr. Musika are not relevant to the reasonable royalty analysis. ..................................................................................................................114

  d)   Mr. Musika's analysis does not take into account several data points that would result in a much lower reasonable royalty rate. ...............................................................................115

  e)   Mr. Musika takes into account inappropriate considerations in his *Georgia-Pacific* analysis that result in an artificially high royalty rate. ......................................................124

  f)   Mr. Musika's concluded royalty rate is unreasonably high. ..........................................125

 7.   Mr. Musika's discussion of the irreparable harm done to Apple is divorced from actual market conditions. .................................................................................................................125

B. APPLE IS NOT ENTITLED TO LOST PROFITS ............................................................................ 131

 1.   Utility Patents ................................................................................................................ 131

 2.   Design-Related IP......................................................................................................... 131

C. OPINIONS REGARDING SAMSUNG'S PROFITS RELATED TO THE DESIGN IP .......................... 132

 1.   Samsung's Sales Data ................................................................................................... 132

 2.   Samsung's Deductible Expenses .................................................................................. 133

  a)   SEC's Deductible Expenses............................................................................................134

  b)   STA's and SEA's Deductible Expenses .........................................................................137

 3.   Calculation of Samsung's Profits on the Accused Products................................................. 139

 4.   Apportionment of Profit to the Design-Related IP at Issue .................................................. 141

  a)   Apportionment to "Design" ...........................................................................................143

  b)   Apportionment of Design to Specific Design-Related IP at Issue................................152

  c)   Apportionment based on design arounds.......................................................................154

  d)   Conclusion on Apportionment .......................................................................................155

 5.   Samsung's Unjust Enrichment....................................................................................... 155

D. OPINIONS REGARDING REASONABLE ROYALTY RATE........................................................... 156

  a)   Basic Framework for Calculating Reasonable Royalty Damages for Patent Infringement ..........156

  b)   *Georgia-Pacific* Factor Analysis .................................................................................163

  c)   Major Facts Known or Knowable to Both Parties at the Hypothetical Negotiation.......208

  d)   Conclusions Regarding Reasonable Royalty .................................................................210

    2. Calculation of Royalties Due..................................................................................210

  E. ALTERNATIVE REASONABLE ROYALTY FOR ELECTRONIC DEVICE DESIGN PATENTS AND TRADE DRESS 211

**V. DOCUMENTS, DATA AND OTHER INFORMATION CONSIDERED ......................... 213**

**VI. POTENTIAL ADDITIONAL ANALYSES TO PERFORM ............................................... 213**

**VII. QUALIFICATIONS .................................................................................................................. 213**

**VIII. COMPENSATION ................................................................................................................... 214**

additional sales, I am analyzing a group of customers that *affirmatively* selected to NOT purchase an iPhone. I therefore conclude that the consumer would have made the same selection to NOT purchase an iPhone if the customer would be forced to wait a couple weeks.

167. As discussed in *Georgia-Pacific* factor 9, Samsung also has acceptable, non-infringing alternatives to every asserted design IP. This is evidenced by the accused products themselves given a) each asserted design IP element is not asserted against several smartphones within the accused product set, b) Samsung's smartphones that are not accused in this lawsuit, and c) smartphones that are sold by other carriers that have not been accused of infringement of Apple's design IP.

168. As admitted by Mr. Musika,[397] when Samsung has an acceptable, non-infringing alternative, Samsung's redesigned products would enjoy the same sales as the earlier products that Samsung actually sold in the market. Therefore, Apple is not entitled to lost profits during the periods that Samsung has a non-infringing alternative available to it.

        c)    **Mr. Musika has not proven that Apple has sufficient capacity for all time periods.**

169. As part of his lost profits analysis, Mr. Musika evaluated "Apple's ability to handle the excess demand created by the need to supply iPhones and iPads in the 'but-for' market ..."[398] This analysis provides a crucial stepping stone for a lost profits calculation because without the capacity to manufacture, supply, and sell more units in the "but for" world, a plaintiff could not claim that it suffered lost profits due to the alleged infringement. While Mr. Musika's analysis, documented in Exhibits 26 (smartphones) and 27 (tablets) to his report, attempts to quantify Apple's ability to handle excess demand, his assumptions lead to an unreliable and overstated result.

170. The first assumption that Mr. Musika made in his analysis is that any fabricated iPhone or iPad is available for purchase by a U.S. consumer. Exhibits 15 and 16 to the Mark Buckley deposition, the documents on which Mr. Musika's capacity analysis is based,[399] appear to show Worldwide rather than U.S. supply and sales data.[400] This means that while Apple may

---

[397] Musika Report, p. 40. [2.2]
[398] Musika Report, p. 40. [2.2]
[399] Musika Report, Exhibit 26. [2.2]
[400] With respect to the iPad and Buckley Exhibit 15, see Deposition of Mark Buckley, February 23, 2012, pp. 186, 188, 193, 200. [5.2] With respect to the iPhone, a comparison between the section titled

78

have had excess installed capacity during any given quarter, not all of this capacity could have been used to build devices that would have worked in the U.S. on a U.S. network.[401]

171. In addition to the incompatibility issues described above, Mr. Musika also assumed that the many iPhone variants, that is iPhones and iPads that are different colors or have different storage capacities, are perfect substitutes. This assumption implies, for example, that an 8GB iPhone 4 and a 32GB iPhone 4 are interchangeable in the eyes of the consumer; that one can fill demand for the other. This assumption is questionable, if only due to the price difference in the devices with different storage capacities.[402]

172. Mr. Tony Blevins, Apple's Vice President of Procurement, discussed this concept during his deposition with respect to the iPad 2:[403]

> Q. So from early March of 2011 until late July of 2011, did Apple have any excess supply of the iPad 2?
>
> A. We would potentially have had some.
>
> Q. Why wouldn't you have used that excess supply to meet the demand for the iPad 2?
>
> A. Because there are multiple SKUs, and you don't necessarily have exactly the right SKU the customers want to buy at the time they want to buy it.
>
> Q. So can you give me an example of that situation with respect to some actual versions of the iPad 2?
>
> A. An example would be that we may have built 64 gigabyte black versions where consumers actually want 16 gigabyte white. So in aggregate, we could be short, but a specific SKU, we could have excess.

---

"Units Sold In - Cumulative" of Buckley Exhibit 16 and Apple's SEC filings indicates that Exhibit 16 shows Worldwide data. For example, Exhibit 16 indicates that Apple sold 8,398,000 iPhone units in Q3 of FY2010 (calculated by subtracting the Q2 cumulative value from the Q3 cumulative value). Apple's 10Q filing for the same period also shows 8,398,000 units sold. See Exhibit 16 to Buckley Deposition, iPhone Supply and Sales: 2010 – 2011: K Units, APLNDC-Y0000055417. [5.3] *See also* Apple Form 10Q for the Quarter Ending June 26, 2010, p. 35. [5.4]

[401] During his deposition, Mr. Buckley said that Apple manufactures iPads "for the world there, and [it] has the ability to pretty easily switch from building a product for a U.S. market or a French market or a German market. That's not a big effort to do." However, Mr. Buckley did not describe in detail the work required or how long such modifications would take.

[402] For examples of the price difference in certain iPhone and iPad products, see Apple Inc. iPhone US Carrier & Reseller Pricing, February 17, 2012, APLNDC-Y0000051622. [5.5] *See also* US Price List, APLNDC-Y0000051621. [5.6]

[403] Deposition of Tony Blevins, April 3, 2012, pp. 23-24. [5.7]

173. Mr. Musika's analysis further assumed that different iPhone and iPad models would have been interchangeable. For example, Mr. Musika's analysis combined "Ending Potential Inventory" of the iPhone 3GS with "Ending Potential Inventory" of the iPhone 4 in Apple's fiscal Q3, 2010 through fiscal Q1, 2012 and then assumed that that combined excess inventory would have filled the hypothetical increase in sales in the "but for" world.[404] Mr. Musika made the same assumption with respect to the iPad and iPad 2 in fiscal Q2, 2011 through fiscal Q1, 2012.[405] However, if unable to purchase a Samsung product, a customer would not likely have seen older Apple phone or tablet models as interchangeable.

174. In addition to the problems described above, Mr. Musika's capacity analysis did not take into account that in February, 2011 Apple released the iPhone 4 on Verizon's network in addition to the device that was already available on AT&T's network.[406] Since he did not make this distinction, his analysis implicitly assumed that an iPhone 4 running on AT&T's network was a perfect substitute for Verizon's iPhone 4. This assumption is questionable; as discussed in Section IV.A.4.c), customers often show strong preferences for a particular carrier over another. Mr. Musika's capacity analysis does not make any effort to control for this effect.

175. Notwithstanding the oversights elucidated above, Mr. Musika concluded that "Apple demonstrated its ability to have capacity to accommodate additional units …"[407] However, as evidenced above, Mr. Musika's analysis is high-level and not specific enough to draw strong conclusions. In fact, there is overwhelming evidence, provided by both public documentation as well as Apple's own analyses, that Apple did suffer real supply constraints, despite the availability of Samsung's accused products, with respect to its iPhone and iPad line of products. The following analysis focuses on the iPhone 4 and iPad 2, the Apple products most temporally relevant to Samsung's accused products.

*(a) iPhone 4*

176. On June 29, 2010, five days following the June 24 launch of the iPhone 4,[408] market research firm iSuppli stated that "Apple Inc.'s difficulties in satisfying the massive demand for the iPhone 4 [were] raising questions about the company's management of the

---

[404] Musika Report, Exhibits 17.2 and 26. [2.2]
[405] Musika Report, Exhibits 17.2 and 27. [2.2]
[406] Musika Report, p. 13. [2.2]
[407] Musika Report, p. 41. [2.2]
[408] "Preparing for iPhone 4 Launch Day (FAQ)," CNET, June 23, 2010, <http://news.cnet.com/8301-30686_3-20008509-266.html>. [5.11]

supply chain and prompting frustrated customers to consider competitors' smart phones …"[409] iSuppli observed that "[t]he huge early demand for the iPhone 4 … has come at some cost to Apple," noting that with 600,000 pre-orders on the first day of availability, "the Apple Store and partner carrier AT&T Inc. very quickly became overwhelmed, prompting both to stop taking orders just one day after the pre-order was available."[410]  Notably, this shortage prompted an apology by the late CEO Steve Jobs.[411]

177.    A senior analyst at iSuppli was quoted as saying that "[c]onsumers, questioning Apple's supply chain management capability, have started looking for alternative devices."[412] Though, as pointed out by iSuppli, "the ambitious plans of Apple's competitors – and even Apple's own stumbles in delivering its much heralded product – probably pose no deterrent to hordes of devoted Apple fans aching to get their hands on the next available iPhone 4."[413]  Still, "the moves from a battle-weary – yet determined – competition to step up its game [were] all too real and could pose a real risk to Apple."[414]

178.    

---

[409] "Apple's iPhone 4 Delivery Difficulties in Might Open Up Company to Risk," iSuppli, June 29, 2010, <http://www.isuppli.com/Mobile-and-Wireless-Communications/News/Pages/Apples-iPhone-4-Delivery-Difficulties-in-Might-Open-Up-Company-to-Risk.aspx>. [5.12]

[410] "Apple's iPhone 4 Delivery Difficulties in Might Open Up Company to Risk," iSuppli, June 29, 2010, <http://www.isuppli.com/Mobile-and-Wireless-Communications/News/Pages/Apples-iPhone-4-Delivery-Difficulties-in-Might-Open-Up-Company-to-Risk.aspx>. [5.12]

[411] "iPad 2 shortages continue, relief 1-2 months away," Computerworld, March 15, 2011, <http://www.computerworld.com/s/article/9214618/iPad_2_shortages_continue_relief_1_2_months_away>. [5.8]

[412] "Apple's iPhone 4 Delivery Difficulties in Might Open Up Company to Risk," iSuppli, June 29, 2010, <http://www.isuppli.com/Mobile-and-Wireless-Communications/News/Pages/Apples-iPhone-4-Delivery-Difficulties-in-Might-Open-Up-Company-to-Risk.aspx>. [5.12]

[413] "Apple's iPhone 4 Delivery Difficulties in Might Open Up Company to Risk," iSuppli, June 29, 2010, <http://www.isuppli.com/Mobile-and-Wireless-Communications/News/Pages/Apples-iPhone-4-Delivery-Difficulties-in-Might-Open-Up-Company-to-Risk.aspx>. [5.12]

[414] "Apple's iPhone 4 Delivery Difficulties in Might Open Up Company to Risk," iSuppli, June 29, 2010, <http://www.isuppli.com/Mobile-and-Wireless-Communications/News/Pages/Apples-iPhone-4-Delivery-Difficulties-in-Might-Open-Up-Company-to-Risk.aspx>. [5.12]

[415] Worldwide iPhone Q3'10 Performance Summary, July 7, 2010, APL7940000082356-378 at '358. [5.20]



---

[416] Worldwide iPhone Q3'10 Performance Summary, July 7, 2010, APL7940000082356-378 at '358. [5.20]
[417] Worldwide iPhone Q4'10 Performance Summary, October 6, 2010, APL7940001120491-512 at '493. [5.21]
[418] Worldwide iPhone Q4'10 Performance Summary, October 6, 2010, APL7940001120491-512 at '493. [5.21]
[419] Worldwide iPhone Q4'10 Performance Summary, October 6, 2010, APL7940001120491-512 at '495. [5.21]
[420] Worldwide iPhone Q4'10 Performance Summary, October 6, 2010, APL7940001120491-512 at '499. [5.21]
[421] Worldwide iPhone Q4'10 Performance Summary, October 6, 2010, APL7940001120491-512 at '499. [5.21]
[422] Worldwide iPhone Q4'10 Performance Summary, October 6, 2010, APL7940001120491-512 at '499. [5.21]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



181.   In light of Apple's iPhone 4 supply challenges, Peter Oppenheimer, Apple's CFO, reflected on these constraints during the introductory remarks of Apple's Q1 2011 earnings call held on January 18, 2011.   Notably, Mr. Oppenheimer stated that, at the time, Apple "continue[d] to have a sizable backlog, and believe[d] [it] could have sold even more iPhones if [it] had been able to supply them."[426]   These remarks came more than six months after the iPhone 4's release, indicating multiple months during which Apple was unable to meet demand for this device.

182.   During the same earnings call, Tim Cook, Apple's COO at the time, noted that what Apple had been able to do with regard to the supply of its iPhone was "not enough."[427] Apple "still [had] a significant backlog" and was "working around-the-clock to build more" iPhones.[428]   Foreshadowing the success of the Verizon iPhone 4, Mr. Cook said that he was

---

[423] Worldwide iPhone Q1'11 Performance Summary, January 5, 2011, APL7940000102312-332 at '320. [5.23]

[424] Worldwide iPhone Q1'11 Performance Summary, January 5, 2011, APL7940000102312-332 at '320. [5.23]

[425] Worldwide iPhone Q1'11 Performance Summary, January 5, 2011, APL7940000102312-332 at '320. [5.23]

[426] "Apple Management Discusses Q1 2011 Results – Earnings Call Transcript," Seeking Alpha, January 18, 2011, <http://seekingalpha.com/article/247197-apple-management-discusses-q1-2011-results-earnings-call-transcript>. [5.13]

[427] "Apple Management Discusses Q1 2011 Results – Earnings Call Transcript," Seeking Alpha, January 18, 2011, <http://seekingalpha.com/article/247197-apple-management-discusses-q1-2011-results-earnings-call-transcript>. [5.13]

[428] "Apple Management Discusses Q1 2011 Results – Earnings Call Transcript," Seeking Alpha, January 18, 2011, <http://seekingalpha.com/article/247197-apple-management-discusses-q1-2011-results-earnings-call-transcript>. [5.13]

"not going to predict when supply and demand [would] meet" because Apple "believe[d] the reaction and results from the Verizon customers [would] be huge …"[429] Mr. Cook's statement proved correct; fewer than 24 hours after it was released for preorder on February 3, 2011, Verizon ceased taking such orders for its version of the iPhone 4.[430]

### (b)  iPad 2

183. Apple released its second generation iPad on March 11, 2011 both online and via retail stores.[431] Just four days later on March 15, 2011, reports indicated that the shipping delay for new orders had reached four to five weeks.[432] One analyst, Brian Marshall of Gleacher & Co., characterized the shipping delay: "Five weeks is pretty intense."[433]

184. Apple's management discussed the short supply of the iPad 2 during an earnings call on April 20, 2011, 40 days after its release.[434] Mr. Cook stated that, at the time, Apple was "still amazed that [it was] heavily backlogged not only at the end of the quarter but also up to date."[435] Later on during the same call, Mr. Cook expressed the size of the iPad 2 shortage: "the iPad [2] [had] the mother of all backlogs that [Apple was] working very, very hard to get out to customers as quickly as [it could]."[436]

---

[429] "Apple Management Discusses Q1 2011 Results – Earnings Call Transcript," Seeking Alpha, January 18, 2011, <http://seekingalpha.com/article/247197-apple-management-discusses-q1-2011-results-earnings-call-transcript>. [5.13]

[430] "Verizon iPhone 4: Sold Out," Mobile Marketing Watch, February 4, 2011, <http://www.mobilemarketingwatch.com/verizon-iphone-4-sold-out-13001/>. [5.14]

[431] "iPad 2 Release Day: How To Get Apple's New Tablet," Huffington Post, <http://www.huffingtonpost.com/2011/03/10/ipad-2-release-day-2011_n_834017.html?view=print>. [5.28]

[432] "iPad 2 shortages continue, relief 1-2 months away," Computerworld, March 15, 2011, <http://www.computerworld.com/s/article/9214618/iPad_2_shortages_continue_relief_1_2_months_away>. [5.8]

[433] "iPad 2 shortages continue, relief 1-2 months away," Computerworld, March 15, 2011, <http://www.computerworld.com/s/article/9214618/iPad_2_shortages_continue_relief_1_2_months_away>. [5.8]

[434] "Apple Management Discusses Q2 2011 Results – Earnings Call Transcript," Seeking Alpha, p. 1, <http://seekingalpha.com/article/264616-apple-management-discusses-q2-2011-results-earnings-call-transcript>. [5.29]

[435] "Apple Management Discusses Q2 2011 Results – Earnings Call Transcript," Seeking Alpha, p. 5, <http://seekingalpha.com/article/264616-apple-management-discusses-q2-2011-results-earnings-call-transcript>. [5.29]

[436] "Apple Management Discusses Q2 2011 Results – Earnings Call Transcript," Seeking Alpha, p. 13, <http://seekingalpha.com/article/264616-apple-management-discusses-q2-2011-results-earnings-call-transcript>. [5.29]  Though the citation identifies the "iPad" as the product for which a large backlog existed, given that the call took place in April of 2011, the month after the launch of the iPad 2, I assume that Mr. Cook was referring to the second-generation of Apple's tablet.

185.     Potentially exacerbating the constraint on iPad 2 supply, reports surfaced that the plant which manufactured around 20 to 30% of iPad 2s had suffered an explosion two months after the launch.[437]  According to Morgan Stanley analysts, production at the site was halted pending an investigation.[438]

186.     A month subsequent to the explosion, a J.P. Morgan report published June 28, 2011, observed that "no model of iPad 2 [was] available for immediate shipping in ANY of Apple's online stores in its major markets."[439]  (emphasis in original) As J.P. Morgan aptly pointed out, "the shortage of iPad 2[s] provide[d] an opportunity for many vendors … to enjoy some shelf space at retailers."[440]  J.P. Morgan estimated at the time that the shortage would begin easing in 3Q 2011.[441]

*(c)   Testimony of Tony Blevins*



---

[437] "Hon Hai Precision: Fire at Chendu Plant Likely to Depress iPad 2 Production," Morgan Stanley, May 22, 2011, p. 1. [5.30]
[438] "Hon Hai Precision: Fire at Chendu Plant Likely to Depress iPad 2 Production," Morgan Stanley, May 22, 2011, p. 1. [5.30]
[439] "Tablets Part 4: Extent of iPad 2 shortage and what we think will happen when it eases – ALERT," J.P. Morgan, June 28, 2011, p. 1. [5.31]
[440] "Tablets Part 4: Extent of iPad 2 shortage and what we think will happen when it eases – ALERT," J.P. Morgan, June 28, 2011, p. 1. [5.31]
[441] "Tablets Part 4: Extent of iPad 2 shortage and what we think will happen when it eases – ALERT," J.P. Morgan, June 28, 2011, p. 1. [5.31]
[442] Deposition of Tony Blevins, April 3, 2012, pp. 2, 10-11. [5.7]
[443] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, p. 2. [5.32]
[444] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, p. 2. [5.32]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



---

[445] Deposition of Tony Blevins, April 3, 2012, p. 14. [5.7]
[446] Deposition of Tony Blevins, April 3, 2012, p. 15. [5.7]
[447] Deposition of Tony Blevins, April 3, 2012, pp. 15-16. [5.7]
[448] Deposition of Tony Blevins, April 3, 2012, p. 17. [5.7]
[449] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, p. 3. [5.32]
[450] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, p. 3. [5.32]
[451] Deposition of Tony Blevins, April 3, 2012, p. 20. [5.7]
[452] Deposition of Tony Blevins, April 3, 2012, p. 20. [5.7]
[453] Deposition of Tony Blevins, April 3, 2012, p. 22. [5.7]



192. However, in the hypothetical situation that excludes Samsung from the marketplace, those customers who did, in fact, brave a backlog in order to secure an Apple product are not the customers relevant to the calculation of lost profits. Rather, it is the marginal customer who, in reality, purchased a Samsung accused smartphone or tablet from among the many available options, including the Apple products that were the subject of supply shortages. These customers, now hypothetically unable to purchase the accused Samsung product, would have chosen between alternatives: buy a different Samsung product, buy an Apple product which may take weeks to arrive, buy another manufacturer's product (e.g., HTC, Motorola, Nokia, RIM, etc.), or, forego the purchase altogether and buy no product at all. It is sales to these customers that must be apportioned among the market players in the lost profit's analysis. And it is these customers, who have already shown a real propensity to purchase non-Apple products, who are unlikely to wait weeks for an Apple product when the market presents a multitude of readily available alternatives.

(d) Conclusion

193. Apple has not proven that it had sufficient capacity for the entire damages period. For the iPhone 4 and iPad 2, I conclude that Apple does not have sufficient capacity to make any additional sales for at least the periods until Mr. Blevins concluded that Apple's had excess supply. ▮▮▮▮▮▮▮▮▮▮ I do not believe that Apple has sufficient capacity in periods after these dates, but I do not have sufficient data from Apple to determine whether or not Apple has sufficient capacity.

---

[454] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, pp. 2-3. [5.32]
[455] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, p. 3. [5.32]
[456] Deposition of Tony Blevins, April 3, 2012, p. 17. [5.7]
[457] Declaration of Tony Blevins in Support of Apple's Motion for a Preliminary Injunction, October 13, 2011, p. 3. [5.32]