QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION TO STRIKE EXPERT TESTIMONY BASED ON UNDISCLOSED FACTS AND THEORIES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date**:   June 26, 2012<br>**Time**:   10:00 a.m.<br>**Place**:  Courtroom 5, 4th Floor<br>**Judge**:  Hon. Paul S. Grewal |

PUBLIC REDACTED VERSION

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF ...................... 1

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     STATEMENT OF RELEVANT FACTS ................................................ 2

      A.    Apple's Initial Disclosures and Infringement Contentions ....................................... 2

      B.    Apple's Experts Rely on Facts That Were Withheld in Discovery ........................... 4

           1.    Dr. Michel Maharbiz ............................................................... 4

           2.    Mr. Peter Bressler ................................................................... 5

           3.    Dr. Susan Kare ...................................................................... 6

           4.    Dr. Sanjay Sood ..................................................................... 8

           5.    Dr. Tony Givargis ................................................................... 8

           6.    Dr. Ravin Balakrishnan ........................................................... 9

           7.    Terry Musika ......................................................................... 10

           8.    Russell Winer ........................................................................ 14

      C.    Apple's Experts Assert Undisclosed Theories on Infringement ............................ 16

           1.    Dr. Michel Maharbiz ............................................................... 16

           2.    Dr. Tony Givargis ................................................................... 17

III.    ARGUMENT AND CITATION OF AUTHORITY ................................ 17

      A.    Apple's Nondisclosure of Critical Facts Violates the Federal Rules of Civil Procedure and the Case Management Order ............................................................ 17

      B.    Apple's Untimely Assertion of New Infringement Contentions Violates the Patent Local Rules, the Federal Rules of Civil Procedure, and the Court's Case Management Order ................................................................. 20

      C.    Apple's Failure to Comply with the Federal Rules of Civil Procedure, the Patent Local Rules, and the Court's Scheduling Order Is Neither Harmless, Nor Justified ................................................................. 22

           1.    Samsung Suffered Significant Prejudice from Apple's Conduct ............... 22

           2.    Samsung Is Unable to Cure the Prejudice Caused by Apple's Conduct ................................................................. 23

3.      Likelihood of Disruption of the Trial ........................................................... 24

4.      Apple's Failure to Disclose Was Willful ..................................................... 24

IV.     CONCLUSION ............................................................................................................ 25

1

# TABLE OF AUTHORITIES

2
**Page**

3

## Cases

4  *Ash v. Ford Motor Co.*,
    2008 WL 1745545 (N.D. Miss. Apr. 11, 2008) ...................................................10

5

6  *Avago Techs. Gen. IP Ltd. v. Elan Microelectronics Corp.*,
    2007 WL 2433386 (N.D. Cal. Aug. 22, 2007) ......................................................7

7  *DCG Sys. v. Checkpoint Techs., LLC*,
    2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ......................................................7

8

9  *Dollar v. Long Mfg., N. C., Inc.*,
    561 F.2d 613 (5th Cir. 1977) .............................................................................10

10 *Dominguez v. Excel Mfg., Inc.*,
    2010 WL 5300863 (N.D. Cal. Dec. 20, 2010) ...................................................5, 9

11

12 *Guifu Li v. A Perfect Day Franchise, Inc.*,
    2012 WL 929784 (N.D. Cal. Mar. 19, 2012) ......................................................4, 5

13 *Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
    2006 WL 463549 (N.D. Cal. Feb. 23, 2006) .........................................................8

14

15 *InterTrust Techs. Corp. v. Microsoft Corp.*,
    2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) ......................................................7

16 *Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ...........................................................................9

17

18 *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
    2004 WL 5363616 (N.D. Cal. Mar. 2, 2004) ........................................................7

19 *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    2009 WL 3353306 (N.D. Cal. Oct. 16, 2009) .......................................................8

20

21 *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ............................................................................8

22 *ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ..............................................................................9

23

24 *Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ............................................................................9

25 *Volterra Semiconductor Corp. v. Primarion, Inc.*,
    796 F. Supp. 2d 1025 (N.D. Cal. 2011) ...............................................................8

26

27 *Von Brimer v. Whirlpool Corp.*,
    536 F.2d 838 (9th Cir. 1976) .............................................................................4, 5

28

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001)..................................................................................5, 9

## **Statutes**

Fed. R. Civ. P. 26 ...............................................................................................1, 3, 4, 6, 8

Fed. R. Civ. P. 37 ...................................................................................................3, 4, 5, 9

## **Miscellaneous**

Patent Local Rule 3–1 ...............................................................................................3, 22

Patent Local Rule 3–6        ...........................................................................................22

Patent Local Rule 3–7        ...........................................................................................22

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, June 26, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Paul S. Grewal in Courtroom 5, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung")  will, and hereby does, move the Court for an order striking portions of Apple's expert reports that rely on previously undisclosed facts or that assert new theories of infringement or invalidity.

This Motion is made pursuant to Fed. R. Civ. P. 26 and 37, and Patent Local Rules 3-1 and 3-3, and is made on the grounds that Apple expert reports rely on facts and theories that Apple improperly failed to disclose during discovery, causing prejudice to Samsung in its ability to prepare for trial.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Diane C. Hutnyan, Christopher E. Price, Jeffrey Johnson, and James J. Ward dated May 17, 2012, together with all accompanying exhibits, all pleadings on file in this action, and such other evidence or argument as may be presented at or before the time this Motion is deemed submitted by the Court, and such matters of which this Court may take judicial notice.

DATED: May 17, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By/s/ Victoria F. Maroulis
_____
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

1

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2

## I.        PRELIMINARY STATEMENT

3       Although the Federal Rules of Civil Procedure and the Patent Local Rules establish clear

4  guidelines for the disclosure of contentions and facts supporting expert opinions, Apple has failed

5  to comply with both in this case.  Apple's experts have widely relied on materials that were never

6  produced to Samsung during fact discovery, and cited evidence that Samsung saw for the first

7  time when it reviewed the expert reports.

8       Dr. Maharbiz, Apple's technical expert on its '607 patent, predicates the bulk of his

9  opinion on scanning electron microscope tests.  But Apple refused to disclose even the very

10 existence of these tests until it was impossible for Samsung to investigate critical facts relating to

11 them and the conclusions reached.  Likewise, Dr. Balakrishnan, another one of Apple's patent

12 infringement experts, examined Samsung devices to reach his infringement opinion on Apple's

13 '381 patent.  However, not only could he not name what version of the relevant software he

14 examined, neither he nor Apple *ever* produced the devices he examined for review by Samsung.

15 In a similar way, Apple's failure to disclose licensing agreements that its damages expert, Mr.

16 Musika, relied on in his report deprived Samsung of any ability to test Apple's conclusory

17 representations about its licensing agreement payments, and has left Samsung with no ability to

18 investigate or properly rebut his conclusions on reasonable royalties, a central plank in any

19 reasonable royalty analysis.  Apple has kept this critical information from Samsung despite

20 unambiguous obligations to produce it under the Federal Rules and the Court's Scheduling Order,

21 all to Samsung's prejudice.

22       Apple has similarly deviated from the Patent Local Rules' requirement that infringement

23 contentions be disclosed well in advance of the close of discovery.  For example, Dr. Maharbiz

24 offers a theory of infringement that was not disclosed in Apple's infringement contentions.  Apple

25 experts have also disclosed non-infringement and infringement theories that were not disclosed in

26 response to Samsung interrogatories.  For example, Apple's expert on Samsung's '711 patent

27 introduced an entirely new non-infringement theory that was not disclosed in response to a

28 Samsung interrogatory seeking all such theories.  Rather than follow the rules, Apple chose to

disclose new infringement theories after the close of fact discovery.   But if infringement contentions can be changed at will after the close of fact discovery, then parties have every incentive to invert the discovery process, and delay the assertion of true theories until after fact discovery closes for strategic gain.   This is the exact path Apple chose to follow.

Apple's conduct is a clear violation of a host of discovery rules that set out unambiguous obligations to make discovery an orderly matter.   Adherence to these rules is even more critical in a highly expedited proceeding like this one.   Because Apple has violated its discovery obligations under the applicable Federal Rules of Civil Procedure and the Patent Local Rules, and presented novel facts from *eight* experts and two entirely new contentions that have never before been disclosed to Samsung, all to Samsung's extreme prejudice, the Court should strike those portions of Apple's expert reports that rely on the previously undisclosed facts and purport to assert new theories regarding invalidity or infringement.

## II.   STATEMENT OF RELEVANT FACTS

### A.   Apple's Initial Disclosures and Infringement Contentions

Apple was obligated under the Federal Rules, the Patent Local Rules, and the Court's Scheduling Order to disclose all relevant facts and contentions to Samsung pursuant to the following schedule:

- August 26, 2011:  Apple serves its infringement contentions

- March 8, 2012:  Fact discovery closes

- March 22, 2012 and April 16, 2012:  Experts serve their reports and rebuttals, respectively, based on the disclosed facts.

Dkt. No. 187 (Aug. 25, 2011 Scheduling Order); *see* Fed. R. Civ. P. 26(a); Patent Local R. 3-1.

These rules exist to ensure that the parties will not be sandbagged with last-minute disclosures or game-changing alterations in theories of the case.  *See* Fed. R. Civ. P. 37(c)(1) (any party "fail[ing] to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").  Similarly, Patent Local Rule 3-1 explicitly requires that parties identify all infringement contentions they intend to assert by no later than 14 days after the Case Management Conference.

1   The parties cannot change their contentions without seeking leave of Court and showing good

2   cause.  *See* Patent Local R. 3-1, 3-3, 3-6 ("Amendment of the Infringement Contentions [] may be

3   made only by order of the Court upon a timely showing of good cause.").

4        Apple served its infringement contentions in August 2011.  (*See* May 17, 2012 Ward

5   Declaration ("Ward Dec."), Ex. A (Apple's Disclosure of Asserted Claims & Infringement

6   Contentions, Aug. 26, 2011).)  These contentions purported to set forth how Samsung's devices

7   allegedly infringe Apple's patents.  (*See id.*, Ex. A, at 2 (listing which "Accused Instrumentalities"

8   infringe Apple's asserted patents).)  By August 26 of last year, Apple's disclosures should have

9   laid out the entirety of its arguments in this case.

10        In addition, Samsung served Apple with detailed requests for production ("RFP") and

11   interrogatories.  For example, Samsung's RFPs sought:

12   •   For each person You intend to rely on as an expert witness, all DOCUMENTS concerning
         . . .  (d) each and every DOCUMENT the expert has reviewed or relied upon in
13       formulating his or her opinion and each and every DOCUMENT the expert will assert
         supports each of his or her opinions and each fact; and (e) all reports prepared by the
14       expert.  (RFP No. 47.)

15   •   All DOCUMENTS concerning the infringement or non-infringement of any of the claims
16       of any of the APPLE IP by any entity or person.  (RFP No. 122.)

17   •   All DOCUMENTS regarding any instrumentalities that APPLE contends or has contended
18       infringe any of the APPLE IP.  (RFP No. 123.)

19   •   All DOCUMENTS and things relating to APPLE'S analysis, consideration, or evaluation
         of whether any SAMSUNG product, device, apparatus, method, process, or system
20       infringes any of the APPLE IP, including, without limitation, all documents and things
         concerning any test, evaluation, or reverse engineering of any SAMSUNG product, device,
21       apparatus, method, process, or system.  (RFP No. 127.)

22   (Ward Dec., Ex. B (Samsung's First Set of Requests for Production to Apple, Aug. 3, 2011).)

23   Samsung's Interrogatories were similarly detailed, requiring that Apple:
24
25   •   IDENTIFY all facts RELATING TO studies, including formal or informal analysis,
         investigation, surveys, focus groups, consumer research, or other information or reports
26       that relate to, support, or refute YOUR claims in this action, including, for each such study,
         when it was commissioned, conducted, and completed, by whom it was conducted, and its
27       conclusions.  (Interrogatory No. 16.)

28   (Ward Dec., Ex. C (Samsung's First Set of Interrogatories to Apple, Aug. 3, 2011).)

1    Apple's responses to these and Samsung's other discovery requests should have disclosed

2    all of the facts upon which Apple's experts base their opinions.  Expert opinions were submitted

3    *after* the close of fact discovery because they depend on facts disclosed *during* fact discovery.

4         **B.    Apple's Experts Rely on Facts That Were Withheld in Discovery[1]**

5         Apple's experts rely on a host of facts that were not disclosed during fact discovery,

6    despite being directly responsive to Samsung's discovery requests.  Many of these facts serve as

7    the foundation for their opinions.  The first time that Samsung saw these materials was when

8    Apple's experts used them in their reports or discussed them during their deposition.

9              1.   Dr. Michel Maharbiz

10        On March 22, 2012, Apple served Dr. Maharbiz's report, which contains his infringement

11   opinions on Apple's '607 patent.  To support his contention that Samsung infringed the '607

12   patent, Dr. Maharbiz relies almost exclusively on two Scanning Electron Microscopy ("SEM")

13   Laboratory Analysis Reports ("SEM Reports") dated March 9, 2012, which were apparently

14   prepared by an individual named Ian Ward.  (*See, e.g.*, Ward Dec., Ex. D (Maharbiz Report at 11,

15   12, 16, 18, 23, 28, 30, 31, 44, 57, 66).)  These Reports include purported analyses of two Samsung

16   products – the Galaxy Tab 7.0 and Galaxy Tab 10.1.  The SEM Reports were included as exhibits

17   to Dr. Maharbiz's expert report.  (*See id.* at Exs. C, D to Maharbiz Report).  Dr. Maharbiz relied

18   on the SEM Reports as purported proof that the Galaxy Tab 7.0 and Galaxy Tab 10.1 infringed

19   claims of the '607 patent.  (*See, e.g.*, *id.* at 22-23 (using SEM Report photographs to purportedly

20   show that the Galaxy Tab 10.1 has "electrically isolated" conductive lines that are transverse to

21   each other, an element of a claim of the '607 patent).)

22        Even though the SEM Reports are responsive to numerous discovery requests (*see, e.g.*,

23   _____

24        [1]   Samsung's motion is filed in reliance on the eventual formal stipulation of dismissal of
     certain claims, pursuant to Apple's Statement Identifying Claims It Will Assert at Trial.  (Dkt. No.
25   907 (filed May 7, 2012).)  Other Apple experts rely on undisclosed materials and assert novel
     theories in their reports, but those experts' opinions are for claims that Apple states that it intends
26   to "drop."  If, however, Apple does not "drop" those claims, as it has indicated, Samsung reserves
     the right to revise this motion to seek preclusion of any additional report that improperly asserts an
27   opinion.

28

1    Ward Dec., Ex. B (RFP Nos. 47(d), 97, 122, 123, 127)), nowhere in any of its disclosures or

2    discovery responses did Apple ever mention SEM Reports.  Apple also failed to disclose the SEM

3    Reports in its Infringement Contentions.  Indeed, even as late as March 9, 2012 – one day after the

4    close of fact discovery and *the date that appears on the SEM Reports* – Apple served corrected

5    amended interrogatory responses to Samsung's Interrogatory Nos. 16 and 18, which still did not

6    disclose the existence of the SEM Reports.  (Ward Dec., Ex. E (Apple's Corrected Amended

7    Objections and Responses to Samsung's Interrogatory Nos. 4, 6, 7, 16, 17, 18 (dated March 9,

8    2012).)

9                              2.    Mr. Peter Bressler

10        Mr. Bressler's March 22 report on infringement opines on the "context of [the patents], the

11   progression of the designs preceding and following the designs. . . and the state of the art both

12   before and after filing each of the [] patents."  (Ward Dec., Ex. F (Bressler Infringement Report at

13   ¶ 16).)  The devices that Mr. Bressler and Apple consider to be commercial alternatives are the

14   central thrust of his report, and form the basis for any opinion that Apple's products are not

15   designed based on functionality.  (*See, e.g.*, *id.* at ¶ 51 ("[N]umerous alternative designs to the

16   patented D'889 design were and are commercially available. Because these alternative designs

17   were commercially released, they show that the D'889 design is not required for a tablet, and that

18   there are multiple designs for a functioning tablet").)  Samsung's RFP No. 127 sought "[a]ll

19   DOCUMENTS and things relating to APPLE'S analysis, consideration, or evaluation of whether

20   any SAMSUNG product, device, apparatus, method, process, or system infringes any of the

21   APPLE IP, including, without limitation, all documents and things concerning any test, evaluation,

22   or reverse engineering of any SAMSUNG product, device, apparatus, method, process, or system.

23   (Ward Dec., Ex. B.)   Yet Apple never disclosed numerous devices during discovery that Mr.

24   Bressler considered to be adequate for comparison, including:

25        •      Coby Kyros (*Id.* at ¶¶ 51, 358);

26        •      Sony Reader (*Id.* at ¶ 56);

27        •      Freescale smartbook concept (*Id.* at ¶¶ 56, 360);

28        •      Panasonic Toughbook Tablet (*Id.* at ¶¶ 56, 360);

1      •      Panasonic Toughpad (*Id.* at ¶¶ 56, 360);

2      •      T-Mobile My-Touch (*Id.* at ¶¶ 68, 81, 341);

3      •      Ematic Touch Screen MP3 Video Player (*Id.* at ¶ 81);

4      •      Coby MP826 (*Id.* at ¶ 92);

5      •      Memorex TouchMP (*Id.* ¶ 92); and

6      •      All Samsung devices other than the Samsung M7600 Beat DJ and Samsung F700.

7   (*See also, e.g., id.* at ¶¶ 64-67, 77-80, 89-91, 338-340, and 342-344 (conducting comparisons

8   based on these products).)   Apple never disclosed any of these devices to Samsung, nor did it

9   amend any of its discovery responses in order to provide a proper basis for its expert's opinion.

10      In addition, Interrogatory No. 72 required Apple to state fully and in detail all facts

11   supporting its contention of design patent infringement.  (Ward Dec., Ex. G (Samsung's Fourth

12   Set of Interrogatories to Apple, Feb. 7, 2012).)  Apple responded by copying and pasting pictures

13   of the accused devices next to figures of the design patents, and stating that the accused devices

14   are substantially the same.  (Ward Dec., Ex. H (Apple's Objections and Responses to Samsung's

15   Fourth Set of Interrogatories, Mar. 10, 2012, at 94-151).)  Mr. Bressler, however, now relies on

16   new theories.  First, Mr. Bressler cites product reviews and evidence that allegedly show consumer

17   confusion, even though consumer confusion and these reviews were never disclosed in response to

18   Interrogatory No. 72.  (*See* Ward Dec., Ex. F, at ¶¶ 104, 136.)  Second, Mr. Bressler identifies

19   differences between the asserted design patents and prior art cited by Samsung, notwithstanding

20   Apple's failure to disclose its intention to rely on such a comparison.  (*See id.* at ¶¶ 110-127, 141-

21   143, 191-193, 255-259.)  Third, Mr. Bressler articulates a detailed description of alleged design

22   patent elements, purportedly embodied in Apple products, that appears nowhere in Apple's

23   response to Interrogatory No. 72.  (*See id.* at ¶¶ 34, 60, 73, and 86.)

24          3.   Dr. Susan Kare

25      Apple retained Dr. Kare to opine on possible alternative designs to Apple's design patents.

26   Much like Mr. Bressler, Dr. Kare's report relies on the use of alternatives to argue "there are

27   stylistic options that do not mirror the styles" of Apple's products, to reach her conclusion that

28   Apple's products are not designed based on functionality.  (Ward Dec., Ex. I (Kare Report, Mar.

22, 2012, at 47; *see also id.* at 16-47 (conducting comparisons between alternative designs and Apple's products and trade dress).)  Samsung's interrogatories clearly requested that Apple "fully and in detail [state] all facts that support YOUR contention as to the non-functionality of any claimed feature, element, or combination of features and elements."   (Ward Dec., Ex. G (Interrogatory No. 68).)  Yet Apple never produced or disclosed any of the following devices that Dr. Kare relies upon:

- Sony Experia Arc S (*Id.* at ¶ 45);

- Sony Xperia Neo V (*Id.* at ¶ 46 & Ex. 9);

- Blue Bee concept (*Id.*);

- Synaptics FuSE (*Id.*);

- Pantech Pocket (*Id.*);

- MeeGo concept (*Id.*, Ex. 10); and

- KDDI Infobar (*Id.*)

Dr. Kare's report also refers to a "Camera" icon, noting that the image is the subject of U.S. Trademark Reg. No. 3,983,841, even though that trademark is not asserted in Apple's Amended Complaint, and she argues that, "at a glance, the overall similarities between [Apple's icons and Samsung icons] is evident."  (Ward Dec., Ex. I at ¶ 53, 54 and 62.)   Dr. Kare also discusses Samsung icons that Apple has never before identified as being subject to a trademark or trade dress claim.  (*See id.* at ¶¶ 63 and 64 (examining Apple and "Samsung icons for the Gmail (or Google Mail), Email, [] Talk" and "Clock" applications noting an "overall visual similarity" between them).)  Samsung's Interrogatory Nos. 70-71 requested that Apple, for all Apple trade dress and Apple trademarks "state fully and in detail all facts that support YOUR contention that SAMSUNG is diluting or has diluted such trade dress," as well as "all facts that support YOUR contention that the SAMSUNG product or product packaging is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of SAMSUNG with APPLE, or as to origin, sponsorship, or approval by APPLE of SAMSUNG'S goods, services or commercial activities."  (Ward Dec., Ex. G.)   Apple never identified any of these icons as being disputed, and indeed never noted them at all until Dr. Kare's report.

#### 4.    Dr. Sanjay Sood

Dr. Sood's report expresses opinions regarding the importance of design in driving consumer choice and in particular the importance of the design of Apple products in driving purchasing decisions even though consumers might not identify design as an important factor. (*See* Ward Dec., Ex. J (Sood Report, Mar. 22, 2012, at ¶¶ 12-30 and 63-64).  These opinions are no doubt intended to address the fact that Apple's own internal consumer market research shows that design is *not* an important factor in purchasing decisions.   To support his opinions, Dr. Sood relies heavily on surveys he conducted concerning consumer purchases of basic household items, such as tape dispensers and wall clocks.  (*See, e.g., id.* at ¶ 21 ("[W]e asked consumers two sets of questions that were designed to test directly and indirectly whether they felt that "design" justified purchase decisions.").)  Dr. Sood admitted that the form and content of the questions asked can have an effect on the results.  (*See* Ward Dec., Ex. K (Depo. Tr. of Sanjay Sood, Apr. 20, at 155:25-156:3 ("Q. And so the form of the question is really very important in terms of formulating a survey?  A. Definitely.  That's what I struggle with all the time when I'm designing surveys.").)  Yet Apple has *never* produced either the questions in the survey questionnaires or the questionnaires themselves.  (*Id.* at 167:5-68:3 (noting that he had not obtained or produced the surveys on which he bases his opinions).)  Without the survey questionnaires and responses, Samsung is greatly prejudiced in its ability to challenge Dr. Sood's opinions regarding the importance of design as driver of consumer choice and his application of those opinions to the products at issue in this lawsuit.

Apple's disclosures and discovery responses do not identify these materials, nor did Apple ever inform Samsung that its expert would rely on them.

#### 5.    Dr. Tony Givargis

Dr. Givargis's March 22 Invalidity Report cites a document that was not disclosed in Apple's Invalidity Contentions.  Specifically, when attempting to explain how Samsung's '711 patent is invalid based on obviousness, he cites a document he refers to as a "Tutorial."  (*See* Ward Dec., Ex. L (Givargis Invalidity Report at ¶ 127 (citing "J2ME Tutorial," found at APLNDC-WH-A0000025002)); Ex. M, (Depo. Tr. of Tony Givargis of April 23, 2012 at 122:7-124:10; 137:24-

140:20).)  Dr. Givargis uses this so-called "Tutorial" to characterize prior art allegedly disclosed in documents that were properly listed in Apple's Invalidity Contentions.  For example, although the document at APLNDC-WH0000006738 (the "Mahmoud article") discloses a technology known as Java "Midlets" (See APLNDC-WH0000006738),  Dr. Givargis continually characterizes the Mahmoud article as disclosing the use of  Java Applets.  (*See, e.g.*, Ward Dec., Ex. L, at ¶ 148 ("[T]he Mahmoud article…disclose[s] use of applets[.]").)  Indeed, Dr. Givargis makes similar characterizations throughout his Invalidity Report and through his deposition testimony.  (*See, e.g.*, Ward Dec., Ex. M, at 122:7-9; 140:13-20; Ex. L at ¶¶ 97, 127, 136, 148, 150, 164, 167, 168, 169, 170, 171, 174,183, 184, 185, 188, 191, 222, 231, 253, 260, 288, 295, and 324).)  The only documentary evidence supporting Dr. Givargis's assertion that the Mahmoud article discloses the use of Java Applets is this late disclosed document.  (*See* Ward Dec., Ex. M, at 122:15-18.)

Yet, this document was never listed anywhere in Apple's Invalidity Contentions on the '711 patent, despite the fact that the contentions list many other materials.  (*See* Ward Dec., Ex. N, at 37-38 (listing references for the '711 patent).)  Dr. Givargis was retained approximately two months before Apple's Invalidity Contentions were served, and Apple failed to identify this document.  (Ward Dec., Ex. O (Depo. Tr. of Tony Givargis of Dec. 6, 2011, at 21:21-22:2).)  Nor did Apple or Dr. Givargis identify this document during the parties' claim construction proceedings regarding the term "applet."

## 6.    Dr. Ravin Balakrishnan

The '381 patent covers the "bounceback" feature, where the screen appears to "bounce" when a user attempts to scroll past the edge of the viewable area of an electronic document on the display.  (Ward Dec., Ex. P (Balakrishnan Report, March 22, 2012, at ¶ 45).)  Dr. Balakrishnan examined 27 Samsung products to determine whether they infringed the '381 patent.  Dr. Balakrishnan's product examination was one of the primary bases for his conclusions as to whether Samsung's products infringed the '381 patent, and the only physical inspection of devices that took place.  (*Id.* at ¶¶ 14-19.)   Apple has refused to make these devices available for inspection.  (*See* Ward Dec., Ex. Q (Letter, Patel to Mazza, May 6, 2012 (noting that Apple has never permitted Samsung to inspect the devices Dr. Balakrishnan used to formulate his opinions).)

Dr. Balakrishnan did not review source code for every accused device but, instead, "looked at representative examples" of the source code. (Ward Dec., Ex. R (Depo Tr. of Ravin Balakrishnan, Apr. 20, 2012, at 36:17-23.)  Dr. Balakrishnan testified, however, that he examined each of the accused devices to determine whether they met the limitations of the asserted claims.  (*Id.* at 39:12-22.)

In addition, Dr. Balakrishnan was unable to identify which versions of the Android operating system, or which versions of the allegedly infringing applications were running on the devices that he inspected.  (*Id.* at 40:4-42:5 (admitting that he did not know which version of Android OS was operating on the devices reviewed in his report or whether the ThinkFree Office, Gallery, Browser or Contacts source code in the accused products was stock Android code).)  In response to Samsung's request for inspection of the examined products, Apple has provided only version numbers of the Android OS (and ThinkFree Office) running on the inspected devices, which is an insufficient basis by itself to determine how the accused "bounceback" functionality behaves on the actual devices Dr. Balakrishnan relied upon.  (*See* Ward Dec., Ex. S (Letter, Mazza to Patel, May 10, 2012 (noting that Apple has provided version numbers of Android OS on the devices that Dr. Balakrishnan inspected, but not more than that).)  To date, Apple has still not made these devices available.  (*See id.*  ("Samsung obviously has access to its own products and its own source code, and can easily confirm the operation of those products.").)

One cannot determine behavior of the bounceback functionality in the accused applications based on Android version number alone.  For example, Dr. Balakrishnan asserts that Samsung's Galaxy SII SGH-I777 (AT&T) infringes the '381 patent via the Gallery, Contacts and Browser applications.  (Ward Dec., Ex. R, at ¶ 37.)  According to Apple, the Galaxy SII SGH-I777 (AT&T) that Dr. Balakrishnan examined ran Android OS version 2.3.4.  (*See* Ward Dec., Ex. S, at 3.)  However, the Samsung Galaxy S (i9000), running the same version of Android, does not exhibit the same functionality.  (*See* May 17, 2012 Declaration of Jeffrey Johnson, Ex. ███  Similar discrepancies exist for other accused devices running Android versions 2.2.1 and 2.2.2.

      7.    <u>Terry Musika</u>

          (a)    <u>Licensing Information</u>

Apple's damages expert, Terry Musika, relies on Apple's production of licensing information to opine on Apple's reasonable royalty damages. Mr. Musika also relies on Apple licensing information in his rebuttal report, to criticize the reasonably royalty rate conclusions of Samsung's damages expert, Dr. Vincent O'Brien. (Ward Dec., Ex. T (Musika Report, March 22, 2012, at ¶¶ 169-80); Ex. U (Musika Rebuttal Report, Apr. 16, 2012, at ¶ 29, 43-45, 69-69).) Yet Apple failed to timely produce the licensing information which underlies Mr. Musika's opinions; obstructed Samsung's discovery efforts into Apple's licensing practices; and cherry picked the licensing information that Mr. Musika relies on.

Samsung made extraordinary efforts to obtain all relevant licensing agreements from Apple. Samsung's RFPs required the production of, among other things:

- "All DOCUMENTS relating to or evidencing any Licenses, or the negotiation thereof, relating to the APPLE ACCUSED PRODUCTS or the technology claimed or disclosed by the SAMSUNG PATENTS-IN-SUIT."

- "All licenses in which You have received or conveyed rights under a patent relating to the APPLE ACCUSED PRODUCTS." (Ward Dec., Ex. B (RFP No. 9); *id.* (RFP No. 11).)[2]

Apple has produced *eight inconsistent versions* of "licensing charts," purporting to show (a) Apple's payments pursuant to licenses related to its iPhone, iPad, and iPod products, (b) the identity of the licensors, and (c) brief descriptions of the technology involved. The charts fail to identify whether the license is a patent license, trademark license, other license, or combination thereof. The first two charts Apple produced, on February 5 and 16, 2012, respectively, were similar but contain no information about the iPod. (May 17, 2012 Price Declaration ("Price Dec.") at ¶¶ 2, 7; Ex. N (Apple Privilege Log); Exs. K and L (redacted versions of Feb. 5 and 16 charts).) This was the version of the licensing chart available to Samsung when it deposed

---

[2] Samsung also served Interrogatory No. 6, which requires identification of "any and all persons to whom YOU have ever licensed or offered to license, or persons who have requested to license, or to whom YOU have granted or offered to grant any other rights under the patent, trade dress, or trademark, including the status of those requests and offers, whether continuing, successful, or terminated, and identify (by Bates number) all DOCUMENTS RELATED to any such license, offer, request, or other grant of rights." (Ward Dec., Ex. C (Interrogatory No. 6).)

1   Apple's Rule 30(b)(6) witness on certain licensing issues and royalty payments, Mark Buckley, on

2   February 23.  At that time, Apple had not produced most of its patent license agreements; instead

3   waiting until March 2 and March 8 to produce them.  (Price Dec., at ¶¶ 2-3.)

4        On March 8, 2012, the day fact discovery closed, Apple produced a *dramatically different*

5   series of licensing charts, which more than *doubled* the number of licensors, added hundreds of

6   millions of dollars in payments for 2011Q2 through 2012Q1, added hundreds of millions of

7   dollars in iPhone and iPad payments for the same time periods covered by the earlier versions, and

8   added licensing and royalty information for the iPod.  (Price Dec., at ¶ 5; *compare* Ex. K (redacted

9   Feb. 5 chart) and Ex. L (redacted Feb. 16 chart) *with* Ex. M (redacted "replacement" chart

10  produced on April 11, 2012).)

11       Then, on March 13, 2012, just eight days before opening expert reports were due, Apple

12  clawed back *all* of its licensing charts, claiming privilege and third-party confidentiality.  (Price

13  Dec., Ex. G (Letter, Mazza to Jenkins, March 13, 2012).)  Two days later, on March 15, 2012,

14  Apple produced yet another series of licensing charts.  And, on the evening of March 21, 2012—

15  *the night before opening expert reports were due*—produced yet another "superseding" series of

16  replacement charts.  (*Id.,* Ex. I (Letter, Mazza to Hutnyan, March 21, 2012).)

17       On April 11, 2012, Apple decided to claw back the March 21 charts and produce yet

18  another series of licensing charts—*six weeks* after its Rule 30(b)(6) witness's deposition, *one*

19  *month* after the close of discovery, and *three weeks* after Samsung served its opening damages

20  report.  (*Id.,* Ex. J (April 11, 2012 email from Mia Mazza).)  That same day, Apple served, for the

21  first time, a privilege log for the clawed back licensing charts.  (Price Decl., ¶ 7, Ex. N.)

22       All told, Apple has produced *eight sets* of licensing charts, of which *six* were produced

23  after the close of fact discovery and after the deposition of Apple's licensing witness, and *five* of

24  which have been clawed back by Apple.  (*Id.*)  Despite repeated requests, Apple refused to make

25  its Rule 30(b)(6) licensing witness available to address these late produced, inconsistent, and

26  ambiguous charts.  (Price Dec., at ¶ 4, Exs. B at 2, E at 3, F at 3.)

27       By its own admission, Apple has also refused to produce all of the licenses identified in the

28  licensing charts.  (Ward Dec., Ex. T, at ¶ 43.)  This refusal was recently repeated by Apple's

1  counsel at Dr. O'Brien's deposition:  "In fact, Apple has told you they produced all the patent

2  licenses on the royalty report" and "you are aware that Apple has informed Samsung that the

3  licenses that were not produced are licenses that consist of software licenses, licenses, technology

4  licenses?"  (Price Dec., Ex. O, at 177:8-9, 170:19-22.)   Apple refuses to produce non-patent

5  licenses – which it implicitly concedes are related to the Accused Products by identifying them on

6  its licensing charts – even though Mr. Musika relies on one such license in his reasonable royalty

7  analysis.[3]

8      Despite its counsel's representations on the record, it is also clear that Apple has failed to

9  make a full production of patent licenses related to the Accused Products.  On May 9 and 11, 2012

10 – over *two months* since Mr. Buckley's deposition and the close of fact discovery, and almost *one

11 month* since expert rebuttal reports – Apple produced four additional patent license agreements,

12 two of which were relied on by Mr. Musika and two of which Apple had not even provided to

13 him.  (Price Dec., at ¶¶ 9-10, Exs. P, Q, R, and S.)  Then, on May 15, 2012, Apple produced six

14 more patent licenses that had been listed on Apple's licensing charts.  (*Id.*, at ¶ 11, Exs. Y-DD.)

15     Even with these grossly belated disclosures, however, Apple's production is still

16 incomplete.  According to media accounts, Apple entered into patent license agreements with Cliff

17 Island LLC and/or Digitude Innovations, transferring up to a dozen patents from Apple to

18 Digitude.  This includes at least two feature patents related to the Accused Products, U.S. Patent

19 No. 6,208,879 (Mobile Information Terminal Equipment and Portable Electronic Apparatus) and

20 U.S. Patent No. 6,456,841 (Mobile Communication Apparatus Notifying User Of Reproduction

21 Waiting Information Effectively).[4]  These accounts are confirmed by Apple's productions, ███

22 ████████████████████████████████████████████████████████

23 
24   [3]  In his expert report, Terry Musika relies on "Made for iPod" licenses (which includes
   software licenses and the rights to use the iPod logo) to determine a reasonably royalty for Apple's
25   purported damages.  (Ward Dec., Ex. T, at Exhibit 3, at 15.)  These licenses are attached to the
   Price Declaration as Exs.  FF and GG.
26   [4]  "Apple Made A Deal With The Devil (No, Worse: A Patent Troll)", accessed on May 10,
27   2012  at  http://techcrunch.com/2011/12/09/apple-made-a-deal-with-the-devil-no-worse-a-patent-troll/; "Apple partners with patent troll Digitude Innovations — and wow, what a deal", accessed
28   on May 10, 2012, at http://venturebeat.com/2011/12/10/apples-patents-digitude-innovations/.

1   ████████████████████████████████████████████.  (Price Dec., Exs. U and V.)  Indeed,

2   Apple's latest licensing chart identifies Digitude as a licensor to whom Apple has paid over

3   ████████ for technologies related to the iPad and iPod.  Yet Apple conspicuously *omits* from the

4   licensing chart any description of the technology involved in the licenses.  (*Id.*; Ex. M at 19, 21,

5   23, 25, 27, 29, 31, 33, 35.)  Apple has still failed to produce these agreements.

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ██████████████████████████████████ (*Id.*, Ex. V at 1.)  Although Apple has

11  produced a draft, it has not produced the final agreement.  (*Id.*, Ex. W.)

(b)   <u>Manufacturing Capacity</u>

13  Mr. Musika also relies on summary tables prepared by Mark Buckley, Apple's Rule

14  30(b)(6) witness on manufacturing capacity.  Mr. Musika uses these tables in his lost profits

15  analysis purportedly to show that Apple could meet additional demand for its iPhones and iPads.

16  (Ward Dec., Ex. T, at Exhibit 3, at 45 (citing manufacturing capacity tables, listed as exhibits 15

17  and 16 to Mark Buckley Deposition).)   But despite numerous requests, Apple has refused to

18  produce the documents underlying Mr. Buckley's tables.  (*See* May 17, 2012 Declaration of Diane

19  C. Hutnyan, at ¶¶ 2-3.)   These tables, by Mr. Buckley's admission, were compiled by pulling

20  information from various documents and are the product of the "expertise" of the people in

21  Apple's "operations finance" team.  (*See* Ward Dec., Ex. V (Depo. Tr. of Mark Buckley, Feb. 23,

22  2012, at 179:3-18; 198:12-18).)  Apple has not produced these materials, nor has their underlying

23  factual basis been disclosed to Samsung.

8.   <u>Russell Winer</u>

25  In Sections VII through X of his March 22, 2012 report, Dr. Winer offers numerous

26  opinions on Apple's trade dress, including fame and distinctiveness (Sections VII and VIII),

27  likelihood of infringement (Section IX) and likelihood of dilution (Section X).  But the opinions

28  he offers are based on facts and theories that were not disclosed in response to Samsung's

contention interrogatories on these very same issues.

For example, Interrogatory No. 71 sought all "facts that support YOUR contention that the SAMSUNG product or product packaging is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of SAMSUNG with APPLE, or as to origin, sponsorship, or approval by APPLE of SAMSUNG'S goods, services or commercial activities." (Ward Dec., Ex. G.)  Although Apple's responses never disclosed that it would do so, Dr. Winer advanced the following theories and alleged facts to support his opinions on trade dress infringement:

- Consumers' post-sale personal experiences with and public exposure to Apple products.  (Ward Dec., Ex. W (Winer Report at ¶¶ 101, 105, 107, 108, 141 and 143).)

- Samsung research and other internal Samsung documents purportedly showing the strength of the Apple trade dress, in connection with first *Sleekcraft* factor.  (*Id.* at ¶¶ 92, 110, 140 and 145.)

- Competition between Samsung and Apple products for the same market share, in connection with the second *Sleekcraft* factor.  (*Id.* at ¶¶ 96, 111, 112, 114-116, 147-151.)

- Alleged instances of consumer confusion, in connection with the third and fourth *Sleekcraft* factors (*Id.* at ¶¶ 154 and 157.)

- Marketing and sale of Samsung and Apple products in the same channels, including retail stores where both Samsung and Apple products are sold, and the relative placement of Apple and Samsung products in stores and on websites, in connection with the second and fifth *Sleekcraft* factors.  (*Id.* at ¶¶ 123, 124, 158 and 159.)

- Product price and the sophistication of and degree of care exercised by consumers, in connection with the sixth *Sleekcraft* factor.  (*Id.* at ¶¶ 127-130 and 160.)

- Details regarding the look of Samsung phones and tablets prior to the release of the Galaxy line of smartphones and tablets, and internal Samsung documents referencing the iPhone and iPad, in connection with the seventh *Sleekcraft* factor.  (*Id.* at ¶¶ 132 -138 and 163-165.)

Similarly, although Interrogatory No. 70 required Apple to identify all facts that supported its "contention that SAMSUNG is diluting or has diluted such trade dress," Dr. Winer puts forth facts and theories that were never disclosed to support his opinions on trade dress dilution:

- Consumers' post-sale interactions with Apple products, in connection with second and fourth likelihood of dilution factor.  (*Id.* at ¶¶ 171 and 181.)

- Samsung research and other internal Samsung documents purportedly showing recognition of the Apple trade dress, in connection with the fifth likelihood of

dilution factor.  (*Id.* at ¶¶ 174 and 184.)

- Alleged instances of consumer confusion, in connection with the sixth likelihood of dilution factor.  (*Id.* at ¶ 185.)

Finally, Dr. Winer offers facts and theories to support his opinions regarding consumer recognition and fame of the trade dress, including internal Apple research regarding the purported importance of the appearance and design of Apple products to consumers (*id.* at ¶¶ 83-86.) and internal Samsung documents that purportedly show an intent to copy.  (*Id.* at ¶ 92.)  Yet Apple never disclosed these facts or theories, despite the clear language of Samsung's Interrogatory No. 69, which requested "the date on which YOU contend such trade dress and trademark became famous and acquired secondary meaning and state fully and in detail all facts that support YOUR contention that such trade dress and trademark became famous and acquired secondary meaning as of that date."  (Ward Dec., Ex. G.)

## C.    Apple's Experts Assert Undisclosed Theories on Infringement

In addition to citing undisclosed facts as support for their opinions, Apple's experts have asserted entirely novel positions on the alleged patent infringement of Samsung's products and the supposed invalidity of Samsung's patents, presenting opinions that never appeared in its August 26, 2011 Infringement Contentions or its October 10, 2011 Invalidity Contentions.

### 1.    Dr. Michel Maharbiz

Apple is asserting claim 8 of the '607 patent against Samsung.  (*See* Dkt. No. 907 (Apple's Statement Identifying Claims It Will Assert at Trial, at 2).)  This claim requires a "virtual ground charge amplifier."  In its Infringement Contentions for claim 8, Apple merely asserted that "the specific circuit elements performing this [virtual ground charge amplifier] function will be identified in discovery."  (Ward Dec., Ex. A (Ex. 17).)  During the course of discovery and to this day, Apple has never sought leave to amend its Infringement Contentions to identify any circuitry that corresponds to the "virtual ground charge amplifier" limitation in claim 8.

In his expert report, Dr. Maharbiz alleges for the first time that the accused Samsung products infringe claim 8 of the '607 patent because they include "a form of charge/current integration" in connection with the touchscreens.  (Ward Dec., Ex. D, at ¶ 67.)  Dr. Maharbiz also

1  cites to documentation produced by third-party Atmel during the course of fact discovery, as well

2  as deposition testimony from an Atmel employee.  The Atmel documentation and deposition

3  testimony Dr. Maharbiz relies upon were not contained in Apple's contention disclosures and

4  Apple never sought leave to amend its Infringement Contentions to identify the Atmel

5  documentation or testimony.

6        2. <u>Dr. Tony Givargis</u>

7    Dr. Givargis's Non-Infringement Report states that Apple's devices do not infringe

8  Samsung's '711 patent because the Apple products lack an MP3 mode.  (Ward Dec., Ex. X

9  (Givargis Non-Infringement Report, Apr. 16, 2012, at ¶¶ 14-16, 27-28, 30, 62-63, 64, 65).)

10  Further, although not expressed in Dr. Givargis's Non-Infringement Report, Dr. Givargis testified

11  that the devices do not infringe because they lack a standby mode.  (*See* Ward Dec., Ex. M, at

12  201:17-202:11 and 226:7-227:17.)

13    Dr. Givargis opines that rather than having standby and MP3 modes, the Apple devices

14  transition from the "springboard module" or "springboard application" to a music playing

15  application.  (*See id.* at 225:25-230:6).)  Dr. Givargis explains that the "springboard

16  module"/springboard application" is a standalone application presenting an array of icons that

17  represents an application.  (Ward Dec., Ex. X, at ¶¶ 14-16, 27-28, 30, 62-63, 64, 65.)  Further,

18  according to Dr. Givargis, the Apple devices do not have a MP3 mode, but achieve music

19  playback through the music application.  (Ward Dec., Ex. M, at 228:22-229:5.)  The presence of

20  the "springboard" and the absence of an "MP3 mode" and "standby mode" then, are part of Dr.

21  Givargis's effort to differentiate between the accused Apple products and Samsung's '711 patent.

22  But in his deposition, Dr. Givargis admitted that Apple's response to Samsung's Interrogatory

23  regarding non-infringement contentions does not make any reference to "MP3 modes" or

24  "springboard modules."  (*Id.* at 188:21-89:13.)

25    In short, Apple's experts have asserted opinions based on facts that were never disclosed in

26  seven months of discovery.

27  **III. <u>ARGUMENT AND CITATION OF AUTHORITY</u>**

28    **A. <u>Apple's Nondisclosure of Critical Facts Violates the Federal Rules of Civil</u>**

**Procedure and the Case Management Order**

Apple's failure to produce or disclose facts upon which its experts rely, and its failure to adhere to its announced theories on infringement and invalidity, violate the Federal Rules of Civil Procedure, the Patent Local Rules, and the Court's Scheduling Order. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Civ. P. 26(e).

It is axiomatic that any nondisclosure of facts is a violation of the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Civ. P. 26(e). A party that "fails to provide information . . . as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). Failure to obey a Case Management Order is also improper when the Order requires the parties to complete fact discovery and disclosure of all infringement theories by a date certain (*i.e.*, the fact discovery cutoff date) especially in a case like this one where Apple has insisted on an expedited schedule. *See Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 843 (9th Cir. 1976) (finding that district court properly excluded evidence under Fed. R. Civ. P. 37(b)(2) for failure to comply with pre-trial orders); *Guifu Li v. A Perfect Day Franchise, Inc.*, 2012 WL 929784, at *18-19 (N.D. Cal. Mar. 19, 2012) (precluding parties from introducing at trial documents requested during the course of discovery that were not produced by the discovery cut-off date). Indeed, courts do not hesitate to punish a party that sandbags their opponent with new and undisclosed facts by precluding the offending party from using the challenged portions of a report, or even by striking the an entire report, irrespective of its importance. *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (it was not an abuse of discretion to exclude an improperly disclosed expert report, even where "the district court made it much more difficult, perhaps impossible for [the sanctioned party] to rebut [the other party's] damages calculations").

Unsurprisingly, improper expert disclosures are prejudicial and harmful, turning discovery into a game of "blind man's bluff." Failure to disclose an expert witness or provide the required information can result in exclusion of the expert witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Dominguez v. Excel Mfg., Inc.*, 2010 WL 5300863, at *5 (N.D. Cal. Dec. 20, 2010). Rules 37(b) and (d) apply these preclusive sanctions

equally where a party has failed to sufficiently answer interrogatories. Fed. R. Civ. P. 37(b)(2)(A), 37(d)(1). In addition, the Court's Case Management Order required Apple to submit its Initial Disclosures and Infringement Contentions on August 26, 2011, and complete all fact discovery by March 8, 2012. Failure to comply with a Case Management Order may result in Rule 37 sanctions. *See Von Brimer,* 536 F.2d at 843; *Guifu Li,* 2012 WL 929784, at *18-19.

During the seven months of discovery in this case, Apple has failed to identify, produce, or disclose many materials relied upon by its experts, including facts, witnesses, documents, or things. Instead, Apple waited until the deadline for its expert reports – well after the close of fact discovery – to ambush Samsung with new evidence and studies that it has concealed for strategic gain. Because of Apple's gamesmanship, Samsung has had no meaningful opportunity to investigate or respond to these improperly assertions of undisclosed facts, so any opinion that relies on them should be stricken.

For example, the portions of Dr. Maharbiz's report that rely on SEM Reports are entirely improper and illustrate why opinions based on undisclosed facts should be stricken. Not only did Apple fail to disclose that its expert would rely on such reports, it failed to disclose the very existence of these Reports, the underlying facts, and the results. These Reports were generated by a third-party, Evans Analytical Group. Samsung and its expert, however, never had an opportunity to inspect the site where the testing took place, the Samsung devices that were allegedly tested, the equipment used during testing, whether such equipment was properly calibrated, etc. Nor did Samsung have an opportunity to depose the author(s) of the SEM Reports or the individuals that conducted the tests to determine if they were properly qualified and performed the testing with proper equipment and under proper conditions. The nondisclosure of the SEM Reports evidences a complete disregard for Rule 26 obligations, and places Samsung at a substantial disadvantage by having no meaningful opportunity to test the validity of those Reports.

The SEM Reports and all of the underlying facts and analyses are clearly responsive to at least Samsung RFP No. 127, which seeks "[a]ll DOCUMENTS and things relating to APPLE'S analysis, consideration, or evaluation of whether any SAMSUNG product, device, apparatus, method, process, or system infringes any of the APPLE IP, including, without limitation, all

documents and things concerning any test, evaluation, or reverse engineering of any SAMSUNG product, device, apparatus, method, process, or system." (Ward Dec., Ex. B.) The SEM Reports and all of the underlying facts and analyses are also responsive to Samsung's Interrogatory No. 16, which sought information concerning any infringement analysis conducted on Samsung's products. (*See* Ward Dec., Ex. C.) The Court's Case Management Order established March 8, 2012 as the deadline for the completion of fact discovery, and the fact that Apple's consultant conveniently dated the Reports March 9 does not alter Apple's disclosure obligation. Apple should have disclosed the SEM Reports as part of fact discovery in accordance with the Federal Rules of Civil Procedure and the Court's Case Management Order.

A complete response to RFP No. 127 or compliance with Rule 26(e) would have mandated disclosure of the undisclosed materials relied upon by Apple's other experts as well. Mr. Bressler, for example, relies on examples of "alternative devices" to substantiate his opinions. (*See* Ward Dec., Ex. F, at 16-47 (conducting comparative analysis).) As such, these materials should have been disclosed well before the close of discovery. Apple's failure to do so was improper, and those portions of the reports that rely on these alternatives should be stricken, as should those similarly offending portions of the expert reports identified in Part II.B. *See, e.g.*, *Avago Techs. Gen. IP Ltd. v. Elan Microelectronics Corp.,* 2007 WL 2433386 (N.D. Cal. Aug. 22, 2007) (striking portions of an expert report that "did not merely use [an] undisclosed reference to explain other invalidating prior art, but also relied on the undisclosed reference itself").

Finally, Apple's refusal to timely and completely produce its licensing agreements is frankly outrageous, and the haphazard, late, and inconsistent character of Apple's licensing disclosures violate discovery rules. Apple's flagrant discovery abuse has deprived Samsung of its ability to properly formulate its position on damages and rebut Mr. Musika's opinions.

The rules governing discovery are clear: facts must be disclosed if they are to be relied upon by experts, and failure to disclose facts properly and timely warrants remedial action by the Court. Here, any opinion based on undisclosed facts meets that standard, and the Court should excise the offending portions of Apple's expert reports or strike them entirely.

**B.      Apple's Untimely Assertion of New Infringement Contentions Violates the**

1      **Patent Local Rules, the Federal Rules of Civil Procedure, and the Court's**

2      **Case Management Order**

3          The Patent Local Rules provide for a "streamlined mechanism to replace the series of

4      interrogatories that accused infringers would likely have propounded in its absence.  These rules

5      require parties to crystallize their theories of the case early in litigation and to adhere to those

6      theories once they have been disclosed.  They provide structure to discovery and enable the parties

7      to move efficiently toward claim construction and the eventual resolution of their dispute."  *DCG*

8      *Sys. v. Checkpoint Techs., LLC,* 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) (Grewal, M.J.)

9      (internal quotation omitted); *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.,* 2004

10     WL 5363616, at *4 (N.D. Cal. Mar. 2, 2004) (internal quotations omitted).  "The overriding

11     principle of the Patent Local Rules is that they are designed to make the parties more efficient, to

12     streamline the litigation process, and to articulate with specificity the claims and theory of a

13     plaintiff's infringement claims."  *InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 WL 23120174,

14     at *2 (N.D. Cal. Dec. 1, 2003).   The Patent Local Rules "requir[e] both the plaintiff and the

15     defendant in patent cases to provide early notice of their infringement and invalidity contentions,

16     and to proceed with diligence in amending those contentions when new information comes to light

17     in the course of discovery."  *O2 Micro Int'l Ltd v. Monolithic Power Sys., Inc*., 467 F.3d 1355,

18     1365-66 (Fed. Cir. 2006).   Any deviation from the announced infringement and invalidity

19     contentions without an appropriate amendment under Rule 3-7 "deprives [the opposing party] of

20     the notice to which it [is] entitled."  *Volterra Semiconductor Corp. v. Primarion, Inc.,* 796 F.

21     Supp. 2d 1025, 1043 (N.D. Cal. 2011).

22         Here, Dr. Maharbiz sets forth an entirely new and undisclosed infringement theory for

23     claim 8 of the '607 patent based on Atmel documentation and testimony that was not disclosed in

24     Apple's Infringement Contentions.   Apple never sought leave to amend its Infringement

25     Contentions pursuant to Patent Local Rule 3-6 to include this theory.  Accordingly, all portions of

26     Dr. Maharbiz's expert report relating to this new theory of infringement should be stricken

27     pursuant to Patent Local Rule 3-1.  Likewise, Dr. Maharbiz relies on a new interpretation of a

28     claim element and offers previously undisclosed support for this new interpretation. Additionally,

1    Dr. Givargis spends substantial time discussing "MP3 Modes" and "Springboard" and Dr. Winer

2    provides an entirely new explanation for the secondary meaning of Apple's products – yet these

3    theories were clearly responsive to Samsung's interrogatories.  *See supra* Part II.C.

4        This Court has consistently stricken infringement theories and claims asserted for the first

5    time in expert reports.  *See, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2009 WL

6    3353306, at *3 (N.D. Cal. Oct. 16, 2009) (striking newly asserted claims that were first raised

7    outside the discovery period and without leave of the Court); *Informatica Corp. v. Bus. Objects

8    Data Integration, Inc*., 2006 WL 463549, at *14 (N.D. Cal. Feb. 23, 2006) (striking new

9    infringement claims because the standard for amendment of contentions was not met).  It should

10   do so here as well.

11   **C.    Apple's Failure to Comply with the Federal Rules of Civil Procedure, the**

12   **Patent Local Rules, and the Court's Scheduling Order Is Neither Harmless,**

13   **Nor Justified**

14       Failure to provide the disclosures mandated by Fed. R. Civ. P. 26 can result in exclusion of

15   the expert witness "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P.

16   37(c)(1); *Dominguez,* 2010 U.S. Dist. LEXIS 137582, at *5.  Rules 37(b) and (d) apply these

17   preclusive sanctions equally where a party has failed to sufficiently answer interrogatories.  Fed.

18   R. Civ. P. 37(b)(2)(A), 37(d)(1).  The burden of proving an excuse is on the party facing sanctions.

19   *See Yeti*, 259 F.3d at 1107.  The four factors courts consider in evaluating harmlessness and

20   justification are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2)

21   the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4)

22   bad faith or willfulness involved in not timely disclosing the evidence."  *Dominguez,* 2010 U.S.

23   Dist. LEXIS 137582 at *5.  Because all of these factors support Samsung's motion, the portions of

24   Apple's experts' reports which rely upon and cite undisclosed facts or which assert novel

25   infringement or invalidity theories should be stricken.

26       1.    Samsung Suffered Significant Prejudice from Apple's Conduct

27       Apple's patent licensing agreements are highly relevant to the *Georgia-Pacific* analysis.

28   *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326-32 (Fed. Cir. 2009).  The Federal

Circuit has increasingly emphasized the importance of a full and rigorous evaluation of a party's licensing agreements and practices to determining a reasonable royalty.  In *Lucent Technologies,* 580 F.3d at 1329, the court rejected a damages award based on a reasonable royalty rate analysis because the plaintiff failed to prove that the licenses underlying the analysis were "sufficiently comparable."  In *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), the Federal Circuit held that evidence of royalty rates from licenses that lacked a relationship to the claimed invention could not form the basis of a reasonable royalty calculation.  The following year, the Federal Circuit rejected the "25% rule," holding that "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiations at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

Here, Apple's haphazard, inconsistent, untimely and incomplete production of licensing information – producing eight different versions of its licensing chart (of which five were clawed back); failing to produce, timely or at all, all relevant licenses; and refusing to make its Rule 30(b)(6) licensing witness available for further deposition – has impaired Samsung' ability to undertake a full analysis of Apple's comparable licenses and licensing practices.  It has also allowed Apple to "cherry pick" the data relied on by Mr. Musika, allowing him to rely on patent and non-patent licenses beneficial to Apple, while shielding a fair and full inquiry into Apple's licensing agreements and strategies.

Regarding the other experts, had Apple properly amended its contention disclosures, Samsung would not have been deprived of its right to conduct directed discovery and prepare for trial with knowledge of Apple's theory of the case.  Instead, Apple has strategically used new materials and shifted its contentions to gain a competitive edge.  "There is a necessary element of gamesmanship which applies in discovery, but parties must act in the spirit of discovery.  The parties' mutual knowledge of all the relevant facts is a prerequisite for proper litigation."  *Ash v. Ford Motor Co.,* 2008 WL 1745545 (N.D. Miss. Apr. 11, 2008) (*citing Dollar v. Long Mfg., N. C., Inc.,* 561 F.2d 613, 616 (5th Cir. 1977)).

2.      Samsung Is Unable to Cure the Prejudice Caused by Apple's Conduct

At this point in the case, Samsung can do nothing to cure the prejudice caused by Apple's

concealment of facts and changing positions on infringement and invalidity.  Samsung cannot now commission new expert reports to rebut Apple's alleged findings.    Furthermore, as explained above, Samsung cannot now take discovery to verify the accuracy, reliability, and validity of the new facts and analyses contained within Apple's expert reports.  Nor can Samsung effectively alter its strategy, at this late date, to correspond to Apple's entirely new infringement and invalidity contentions.

### 3. Likelihood of Disruption of the Trial

At Apple's request, this case is proceeding under an accelerated schedule, with dispositive motions due on May 17, and trial set to begin on July 30.  Discovery is complete and it is simply too late for Samsung to take full discovery on undisclosed facts, conduct any of its own tests or analyses based on these new materials, incorporate information learned into its experts' opinions and trial strategy, and prepare supplemental expert reports.  Apple has known that the trial date could not be disrupted, and failed to disclose its facts and contentions knowing Samsung would not have the opportunity to respond.  That the trial date cannot be changed emphasizes why there is no way for Samsung to cure the prejudice caused by Apple's late disclosures.

### 4. Apple's Failure to Disclose Was Willful

Apple's failure to substantively respond to Samsung's discovery requests can only be construed as purposeful concealment of critical evidence in bad faith.  The undisclosed facts upon which Apple relies are not new, and most have been available for some time.  For example, Apple concealed the very existence of the SEM Reports – allegedly completed one day after the close of fact discovery – that Dr. Maharbiz relies upon in his report, despite every opportunity and obligation to disclose them even after the cutoff.    Indeed Apple has produced hundreds of thousands of pages after the cutoff.  Mr. Musika relied on licensing agreements that Apple has readily available in its licensing database, and on representations that Apple's production of patent licensing information was complete, when in fact it was not.  Apple's failure to disclose much of the basis for its experts' reports, as well as its decision to make last-minute changes regarding infringement and invalidity theories were clearly "willful."

IV.     **CONCLUSION**

For the forgoing reasons, at least those portions of Apple's expert reports that rely on undisclosed facts or assert novel theories, which are listed with particularity in Samsung's accompanying Proposed Order, are improper, prejudicial, and should be stricken.

DATED: May 17, 2012                     Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC