# EXHIBIT T
# PUBLIC REDACTED VERSION

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
**dianehutnyan@quinnemanuel.com**

May 11, 2012

**VIA ELECTRONIC MAIL**

Peter J. Kolovos, Esq.
WilmerHale
60 State Street
Boston, Massachusetts 02109

Re:   *Apple v. Samsung Elecs. Co. et al.*, Case No. 11-cv-1846 LHK (N.D. Cal.)

Dear Peter,

I write in response to Apple's May 9, 2012 production of three patent licenses, over two months after the February 23 deposition of Mark Buckley—Apple's Rule 30(b)(6) designee on licensing issues—and the March 8 close of discovery, six weeks after Samsung served the Expert Report of Vincent O'Brien, and over two weeks after the deposition of Dr. O'Brien.  Apple's repeated, belated productions of inconsistent and misleading licensing information has significantly impaired Samsung's discovery efforts and interfered with its experts' efforts to analyze the parties' damages claims.

Apple's May 9 production proves, once again, that Apple has failed to make a full production of documents relating to patent licenses concerning the Accused Products.  Apple has produced a series of six inconsistent versions of "royalty charts" purporting to show Apple's royalty payments, the identity of licensors, and brief descriptions of the technology involved.  The first two charts, produced on February 5 and 16 respectively, Bates numbered APLNDC0001772330-2340 and APLNDC-Y0000051350-1356, are similar but contained no information about the iPod.  This was the only version of the royalty chart available to Samsung when it deposed Mr. Buckley on February 23.  Additionally, at that time, Apple had not produced most of its patent licensing agreements; instead waiting until the close of discovery to produce them.

On March 8, 2012, the day factual discovery closed, Apple produced a dramatically different

quinn emanuel urquhart & sullivan, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100
MOSCOW | Voentorg Building, 3rd Floor, 10 Vozdvizhenka Street, Moscow 125009, Russia | TEL +7 495 797 3666 FAX +7 495 797 3667

series of royalty charts, Bates numbered APLNDC-Y0000232396-2430, which more than doubled the number of licensors, added hundreds of millions in royalty payments for 2011Q2 through 2012Q1, added hundreds of millions of dollars in iPhone and iPad royalty payments for the same time periods covered by the earlier versions, and added licensing and royalty information for the iPod.

On March 13, 2012, Apple purported to claw back all prior versions of the licensing charts, claiming privilege and third-party confidentiality, further obstructing the analysis of Samsung's experts. Although Apple produced another series of replacement charts on March 15, 2012, it clawed them back the evening of March 21, 2012—the night before opening expert reports were due—and produced yet another series of replacement charts. Then, Apple clawed back the March 21 charts and produced yet another series of licensing charts on April 11, 2012, Bates numbered APLNDC-Y0000236371, three weeks *after* Samsung served its opening expert report on damages. That same day Apple served, for the first time, a privilege log for the clawed back licensing charts.[1]

Despite Apple's untimely and contradictory productions of licensing information, Apple's counsel aggressively questioned Dr. O'Brien about Apple's patent licenses, insisting that Dr. O'Brien was incorrect in doubting that Apple had made a full production of relevant licensing documents. Apple's counsel declared: "In fact, Apple has told you they produced all the patent licenses on the royalty report" (Depo Tr. of Vincent O'Brien, at 177:8-9) and "you are aware that Apple has informed Samsung that the licenses that were not produced are licenses that consist of software licenses, licenses, technology licenses?" (*Id*., at 169:19-22). Apple's counsel and Mr. Musika's Rebuttal Report also criticized Dr. O'Brien on the basis that Apple's production of patent licenses shows that Dr. O'Brien's use of a "lump sum payment" is incorrect (Musika Rebuttal Report, at 12-13).

Dr. O'Brien's concerns are well-founded. Apple has deprived Samsung of any means to test its methodology and representations by its untimely productions and dubious redactions. Apple has failed to identify the nature of the licenses in the charts, redacted the identify of licensors and technologies at issue in previous versions of the charts, and doubled the number of licensors identified in the chart only after the close of discovery, depriving Samsung of the ability to question Mr. Buckley or any other Apple witness about the new charts.

To this day, Apple's production of licensing agreements remains incomplete. In his rebuttal report, Mr. Musika relies on license agreements that lack N.D. Cal. Bates numbers (Ex. 3 to Musika Rebuttal Report, at 2-3). For example, although Apple has produced a draft (Bates numbered APLNDC-WH0000684912-4926) of the license agreement identified as

---

[1] Notably, the privilege log and accompanying letter purport to claw back APLNDC-Y0000232449-2454, but concedes that it is not protected by any privilege and therefore by Apple's own admission is not covered by the Protective Order's clawback provisions. The only basis Apple offers for purporting to "claw back" APLNDC-Y0000232449-2454 is to "avoid confusion," which is not a basis to withdraw documents. Accordingly, Samsung does *not* recognize this document as clawed back.

AppDel0000121 in Musika's Rebuttal Report, it does not appear that Apple has produced a final, executed version.  It also appears that Apple has not produced the agreement identified as AppDel0158967, Microsoft Corp., dated 8/5/1997, in Musika's Rebuttal Report.  Apple must immediately produce these agreements.  If Apple claims to have produced these documents, it must identify them by Bates number.

Even more troubling than the missing licenses referenced by Mr. Musika is Apple's effort to conceal feature patent licensing agreements with a non-practicing entity, Digitude Innovations.  According to numerous media accounts, Apple entered into patent licensing agreements with Cliff Island LLC and/or Digitude Innovations, transferring up to a dozen patents to it.[2]  This includes at least two patents related to the accused products, USPTO #6208879 (Mobile Information Terminal Equipment and Portable Electronic Apparatus) and USPTO #6456841 (Mobile Communication Apparatus Notifying User Of Reproduction Waiting Information Effectively).  These patents appear to be potentially relevant to, among other things, a determination of a reasonable royalty rate for Apple's infringement of Samsung's feature patents.

The media reports are confirmed by Apple's productions in this matter.



. Apple has also produced a draft "Assignment of License Agreement" with Digitude, dated March 25, 2010, but does not appear to have produced a final, executed agreement.  Apple must produce the final, executed agreement, all drafts, and all documents related to the negotiation of the agreement.  If Apple claims to have produced these documents, it must identify them by Bates number.

 In his May 26, 2011 deposition in the Nokia matter, Boris Teksler confirmed that Apple had "acquired patents from other companies that are applicable to cellular handsets," including from Shoah.  Depo. Tr. of Boris Teksler, *Nokia v. Apple*, D. Del. No. 09-791 (GMS), at 69:13-71:12.  Although Apple has produced a draft of an agreement between USC and Apple, it does not appear to have produced a final, executed version of the Agreement.  (APL7940018046927-6940).  Apple must produce the final, executed agreement, all drafts, and all documents related to the negotiation of the agreement.  If Apple claims to have produced these documents, it must identify them by Bates number.

---

[2]  "Apple Made A Deal With The Devil (No, Worse: A Patent Troll)", accessed on May 10, 2012 at http://techcrunch.com/2011/12/09/apple-made-a-deal-with-the-devil-no-worse-a-patent-troll/; "Apple partners with patent troll Digitude Innovations — and wow, what a deal", accessed on May 10, 2012, at http://venturebeat.com/2011/12/10/apples-patents-digitude-innovations/.

It also appears that Apple has improperly withheld another agreement or agreements with Digitude, whereby Digitude licensed technology related to the Accused Products to Apple. Apple's most recent licensing royalty chart lists "Digitude" as a licensor for iPad and iPod technologies, with Apple paying over ▓▓▓▓▓▓ in royalty payments. But Apple conspicuously *omits* the "Technology" involved in the licenses. (APLNDC-Y0000236389-R, APLNDC-Y0000236399-R). In addition to concealing the nature of the licensing agreement, it appears Apple has redacted the Digitude entry from the iPhone section of its royalty charts. (APLNDC-Y0000236373-R). Apply must immediately produce the final, executed agreement underlying these entries, all drafts, and all documents related to the negotiation of the agreement.

There are other entries in Apple's latest royalty chart that appear to be patent licenses but which have not been produced. Apple identifies "PREMIER" as a licensor for "Playlist Functionality" for the iPad, APLNDC-Y0000236386-R, but has redacted out the reference to PREMIER in the iPhone licensing chart, APLNDC-Y0000236372-R. Apple has failed to produce either of these license agreements. Please explain immediately whether the PREMIER license(s) includes patents and explain why Apple identifies the PREMIER license for the iPad but redacted it out for the iPhone. Apple also identifies "ROVI" as a licensor in its charts for "Software and Entertainment Metadata," which likely includes patent licenses, but failed to produce those licenses. Please confirm immediately whether the ROVI license includes any patents.

Apple's delays and obfuscations must end. Apple should, by 5:00 p.m., Tuesday, May 14, 2012, do the following:

(1)   Produce the documents identified as AppDel0000121 and AppDel0158967 in Mr. Musika's Rebuttal Report.

(2)   Produce any and all license agreements related to Cliff Island LLC, Digitude Innovations, and/or the University of Southern California, as well as all related documents.

(3)   Confirm the nature of its licensing agreements related to ROVI and PREMIER.

(4)   Produce all patent licenses related to the Accused Products.

(5)   Identify by Bates number, party, and date, all patent licensing agreements Apple has produced in this matter.

Samsung reserves its rights to move to preclude Apple from relying on its belated, incomplete, contradicting and misleading production of licensing information.

Kind Regards,

*/s/ Diane C. Hutnyan*

Diane C. Hutnyan

02198.51855/4745726.2