# EXHIBIT U
# PUBLIC REDACTED VERSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br>  v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No.11-cv-01846-LHK<br><br>**REBUTTAL EXPERT REPORT OF TERRY L. MUSIKA, CPA** |

**SUBJECT TO PROTECTIVE ORDER**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

cleaners, smartphones, telecommunication systems, digital cameras and camcorders, semiconductors and TV panels.[32] For example, in 2009 Samsung's total worldwide sales of Samsung products that embody the Samsung Feature Patents In Suit were $1.8 billion.[33] Total sales in 2009 for SEC were $119 billion.[34] Accordingly, Dr. O'Brien attempts to equate products that represent less than two percent of the sales to 100 percent of the corporate worldwide R&D expense.

42. Dr. O'Brien's failure to establish any causal connection or relationship of the worldwide SEC R&D to the Samsung Feature Patents In Suit in his determination of an appropriate reasonable royalty rate renders his conclusions unsupported, speculative and unreliable.

<u>Dr. O'Brien's Criticism of Apple's License Production is Incorrect</u>

43. I have been informed by counsel that Apple searched for and produced patent license agreements related to the accused iPhone, iPad, and iPod Touch products. However, Apple did not produce other non-patent types of agreements for which it pays royalties related to the accused products, such as copyright, trademark, software, and data licensing agreements. I understand that Samsung did not produce such non-patent agreements either. These other types of agreements account for the unproduced agreements from the royalty reports referenced by Dr. O'Brien.[35]

<u>Dr. O'Brien Failed to Consider that the Majority of Apple Licenses are Lump Sum Payments</u>

44. My review of 56 Apple licenses produced in this matter finds that nearly all of Apple's licenses involve lump sum payments for rights to a portfolio of worldwide patents.[36] I identified seven exceptions which are listed below:

- Creative Technology Cross License and Settlement[37]
- Nokia Cross License and Settlement[38]

---

[32] 2009 Samsung Electronics Annual Report, pp. 30-37.
[33] SAMNDCA00376902 to SAMNDCA00377405 at SAMNDCA00376906. I have not included sales of additional products which embody the Samsung Feature Patents In Suit included in the file SAMNDCA00372946 because those sales take place after 2009.
[34] 2009 Samsung Electronics Annual Report, p. 44.
[35] Expert Report of Vincent E. O'Brien, March 22, 2012, pp. 10-11.
[36] The Apple licenses are specifically listed in **Exhibit 3**.
[37] Binding Term Sheet between Apple Computer Inc. and Creative Technology LTD and Creative Labs, Inc., August 22, 2006 (APLNDC-WH0000536155 to APLNDC-WH0000536171).
[38] Patent License Agreement between Nokia and Apple Inc., dated June 12, 2011 (APLNDC-X0000007220 to APLNDC-X0000007335).

1. - Ericsson Cross License[39]
2. - VoiceAge Corporation and Nokia Cross License[40]
3. - Audio MPEG, Inc. License[41]
4. - Audio MPEG, Inc. License[42]
5. - Via Licensing Corporation License[43]

45. Dr. O'Brien proposes per unit royalties for the Samsung Feature Patents In Suit while failing to consider that the majority of Apple's licenses involved lump sum payments. My review identified seven exceptions out of 56 licenses where a running royalty was included as a financial component of an Apple license. Dr. O'Brien does not specifically reference any of these eight licenses in determining his per unit royalty rates.

Dr. O'Brien's Use of the Klausner Agreement is Speculative and Unsupported and Materially Overstates Any Damages Due to the Alleged Infringement of the '055 Patent

46. Dr. O'Brien indicates that the '055 Patent cites US Patent No. 5,375,018 ("the '018 Patent"). Further, Dr. O'Brien indicates that the '018 Patent was included in a portfolio of patents licensed to Apple by Klausner ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Based solely on the reference by the '055 Patent to the '018 Patent, Dr. O'Brien concludes "Given the nature of this patent I conclude that this license is comparable to a hypothetical license to the '055 World Clock patent."[44]

47. I am unaware of any financial, economic or other precedential basis wherein the reference of one patent to another patent within the patent text establishes an acceptable basis for the determination of a reasonable royalty rate. Even more significantly, the facts concerning the licensing of the '018

---

[39] Global Patent License Agreement between Apple Inc. and Telefonaktiebolaget L M Ericsson, dated January 14, 2008 (APLNDC-WH0000536194 to APLNDC-WH0000536213).
[40] Patent License Narrowband AMR and Wireband AMR Standards between Apple Computer, Inc. and VoiceAge Corporation and Nokia Corporation, June 3, 2003 (AppDel0158906 to AppDel0158943).
[41] License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer, Inc., July 1, 2005 (APLNDC-WH0000725229 to APLNDC-WH0000725257).
[42] Software License Agreement between Audio MPEG, Inc., Societa' Italiana Per Lo Sviluppo Dell'Elettronica, S.I.SV.EL, S.P.A. and Apple Computer Inc., January 1, 2006 (APLNDC-WH0000725258 to APLNDC-WH0000725288).
[43] MPEG-4 Audio Patent License Agreement between Apple Computer, Inc. and Via Licensing Corporation, October 6, 2003 (APLNDC-WH0000725289 to APLNDC-WH0000725319).
[44] Expert Report of Vincent E. O'Brien, March 22, 2012, p. 12.

### L. EXHIBITS

72. **Exhibits 4 through 10** are attached to this report and support my analyses and opinions in this matter.

### M. PROFESSIONAL ARRANGEMENT

73. My work for expert services provided in this matter is charged at a standard billing rate of $550 per hour and is in no way contingent on the outcome of this matter. In addition, I will be reimbursed for all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this case.

April 16, 2012

Terry L. Musika, CPA