HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTIONS *IN LIMINE***<br><br>Date:    October 17, 2013<br>Time:    1:30 p.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

I.  MIL #1 REGARDING COPYING EVIDENCE SHOULD BE DENIED ......................1

    A.  Copying Is Relevant to Determining Lost Profits and a Reasonable Royalty............................................................................................................1

    B.  The Copying Evidence Shows Demand for the Patented Products and Features ................................................................................................2

    C.  Apple Never Disclaimed Relevance of the Copying Documents to Damages...........................................................................................................3

II.  MIL #2 REGARDING THE SCOPE OF THE '915 AND '381 PATENTS SHOULD BE DENIED................................................................................................4

III.  MIL #3 REGARDING APPLE'S LOST PROFITS CLAIM SHOULD BE DENIED ....................................................................................................................6

IV.  MIL #4 REGARDING THE VALUATION OF THE APPLE BRAND PREPARED BY INTERBRAND SHOULD BE DENIED ............................................9

## I.     MIL #1 REGARDING COPYING EVIDENCE SHOULD BE DENIED

While captioned as a motion to exclude evidence of "copying and willfulness," Samsung

seeks exclusion of a much broader category of completely appropriate damages evidence,

encompassing evidence of "Samsung's awareness, consideration, analysis, and emulation of

Apple's designs, technology, products, and/or intellectual property." (Mot. at 1:12-13.)

Samsung's arguments address only copying, and in no way justify exclusion of evidence proving

that Samsung deliberately copied Apple's innovations.  Samsung never even addresses the bulk

of what it seeks to exclude:  Samsung's analysis of and acknowledgment of the importance of

Apple's innovations to smartphone consumers.  Samsung's motion is wholly without merit.

### A.     Copying Is Relevant to Determining Lost Profits and a Reasonable Royalty

Evidence of Samsung's awareness, consideration, analysis, and/or emulation of Apple's

patented designs and features is relevant to both lost profits and reasonable royalty damages

measures.  Accordingly, all such evidence, including evidence of Samsung's copying, is

appropriate for the jury to consider and will not waste time or lead the jury to award "damages

designed to punish" Samsung.[1]  (Mot. at 3:6.)  Although Samsung repeats the refrain that

"copying is irrelevant to the calculation of damages" (Mot. at 1:6), Samsung has failed to cite a

single case that supports its assertion.  Nor can it, as the Federal Circuit has made clear that

evidence of copying is relevant to damages.

In the lost profits context, copying evidence can be used to demonstrate demand for the

patented product and features as well as the lack of suitable non-infringing alternatives.  *See*

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1360 (Fed. Cir. 2012)

(demand and lack of suitable non-infringing alternatives in the lost profits analysis supported by

infringer's internal documents comparing its products with desired and advantageous features of

the patentee's product).  The Federal Circuit has stated as much in connection with this case.  *See*

*Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1327-1328 (Fed. Cir. 2012) ("the evidence that

---

[1] The Court has set time limits for trial and will instruct the jury that punitive damages are not appropriate.  (*See* Dkt. No. 1903 at 49 (Final Jury Instruction No. 35 stating that "the damages you award are meant to compensate the patent holder and not to punish an infringer").)

1  Samsung's employees believed it to be important to incorporate the patented feature into

2  Samsung's products is certainly relevant to the issue of nexus between the patent and market

3  harm").  Copying is also relevant to the reasonable royalty analysis, as it is probative of the utility

4  and advantages of the patented property over old modes as set forth in *Georgia-Pacific* factor 9.

5  Neither of the decisions cited by Samsung supports the position that "copying is

6  irrelevant" to damages.  The Court's permanent injunction order found that copying evidence is

7  "relevant" to, but not "dispositive" of, demand.  *Apple Inc. v. Samsung Elecs. Co.*, 909 F. Supp.

8  2d 1147, 1156 (N.D. Cal. 2012).  Indeed, the Court previously ruled that copying is relevant to

9  commercial success, which requires a showing that consumers purchased the products for the

10  patented features, *i.e.*, consumer demand.  (*See* July 18, 2012 Hr'g Tr. 117:23-118:2.)  Samsung's

11  other cited case did not even involve damages; the patentee there sought to introduce evidence

12  that the defendant had copied unrelated products twenty years earlier, for purposes of willfulness

13  and obviousness.  *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010).

14  Ultimately, whether the evidence of Samsung's copying is sufficient to support Apple's

15  damages awards is a question for the jury.  But nothing in this Court's prior rulings (or any ruling

16  by any other court) precludes the jury from considering such evidence.

17  ### B.  The Copying Evidence Shows Demand for the Patented Products and Features

18  

19  Samsung admits that the copying evidence relates to Apple's "design" and "user

20  interface."  (Mot. at 2:20.)  The patents at issue in the new trial directly relate to those features,

21  *e.g.*, design features like the black reflective front of the iPhone and the look of the icons on the

22  iPhone home screen, and user interface features like double-tap-to-zoom and bounce-back.  These

23  patented design and user interface features cover several important elements of Apple's products.

24  Accordingly, evidence of demand for Apple's "design" and "user interface" demonstrates

25  demand for the patented features.

26  Furthermore, although lost profits "does not require any allocation of consumer demand

27  among the various limitations recited in a patent claim," *Presidio Components*, 702 F.3d at 1360

28  (citation omitted), several of Samsung's copying documents make explicit reference to the

specific features claimed by Apple's patents-in-suit.  (*See*, *e.g.*, admitted exhibits PX35 (icons "in contained square[s]"); PX40 ("make something like the iPhone"); PX44.58 (double-tap-to-zoom); PX46.66 ("bouncing visual effect"); PX55.8 ("iphone icon container"); PX57.19 & PX55.73 ("bounce effect"); PX186 ("latex effect"); PX195 ("bounce effect").)

### C.   Apple Never Disclaimed Relevance of the Copying Documents to Damages

Samsung claims that "Apple has asserted that copying allegations relate only to liability" (Mot. at 1:22), but fails to cite a single document supporting that statement.  While Apple has stated that copying is relevant to issues such as willfulness and non-obviousness, Apple has never stated that copying is irrelevant to damages.  On the contrary, Apple has consistently maintained that Samsung's copying is relevant to damages.  For example, in his reports Mr. Musika opined that numerous documents, including many of the same documents that Samsung now claims are solely relevant to "copying" for willfulness purposes, demonstrate demand for the patented features.  (*See*, *e.g.*, Dkt. No. 2407-5 ¶ 124 (opining that "[t]here is ample evidence that Samsung copied Apple's designs and its patented technology" and further that Samsung "did so based on a belief that such actions made the resulting products significantly more desirable to customers."); Dkt. No. 2407-6 at Ex. 24-S (identifying as relevant to lost profits and reasonable royalty analysis several of the copying documents that Samsung now seeks to exclude, including PX44 (admitted) and PX185).)  At the first trial, he similarly testified that several documents—including many of the same documents that Samsung now claims are merely "copying" evidence—demonstrated demand for the patented features.  (*See*, *e.g.*, Trial Tr. 2078:4-2083:3 (testifying that PX34 (admitted), Samsung's internal "iPhone Effect Analysis," provided evidence of demand); *see also* PX26.)  After the verdict, in opposing Samsung's motion for a new trial, Apple cited the copying documents at issue to argue that there was "ample evidence [at trial] that design, user interface, and Apple's proprietary touch screen navigation technology affect consumer demand."  (*See* Dkt. No. 2050 at 21.)  Apple further argued in support of its motion for a permanent injunction that "Samsung's intensive effort to copy these specific patented features confirms their importance to consumer demand."  (Dkt. No. 1982 at 7-9 (listing internal Samsung documents).)

## II.   MIL #2 REGARDING THE SCOPE OF THE '915 AND '381 PATENTS SHOULD BE DENIED

The Court's prior orders, including its claim constructions for the '915 and '381 patents, continue to control.  (Dkt. No. 2316 at 2-3.)  Apple has never contended otherwise.  Samsung fails to support its accusation that Apple intends to "present a much broader and inaccurate picture of what those patents cover in order to inflate its damages," and it has no basis to invoke judicial estoppel to prevent Apple's supposed intent to "disavow" positions it urged the Court or Patent Office to adopt.  (Mot. at 4.)

Samsung's sole cited support for its claim that Apple intends to present an inaccurate picture of the '915 and '381 patents is a single sentence in Ms. Davis's report that introduces the '381 patent and refers to the patented feature as "rubber banding" or "bounce back"—which is the same shorthand used at the first trial.  (Mot. at 4 (quoting Davis Rpt. ¶ 27); *see*, *e.g.*, Trial Tr. 2124:19-2125:10 (Musika), 3036:11-16 (Wagner).)  That single sentence does not justify filing (much less granting) a motion *in limine*, especially when viewed in the context of the full paragraph, which describes the invention in terms aligned not only with the claim language, but also with Mr. Wagner's description of the '381:

| Davis Rpt. ¶ 27 (emphasis added)[2] | 8/26/2013 Wagner Rpt. ¶ 471 (emphasis added) |
|---|---|
| The '381 Patent covers a device with a "rubber banding" or *"bounce back" function*, an effect that users associate with Apple's user interface. It relates to *letting a user know when he or she has reached the edge of an electronic document on a screen*. For example, it covers a method for displaying an electronic document and translating the document in response to object movement, such as a gesture from a finger. *When the user drafts a document past the edge of the document with a finger, an area beyond the edge is displayed.*  This provides a visual indicator to the user that the user reached the edge of the document.  *When the user releases the finger such that the device no longer detects movement, the page snaps back so the area beyond the edge is no longer displayed.* | Based on my discussions with Dr. Andries Van Dam and Dr. Jeff Johnson, I understand that the '381 Patent covers a method for implementing the *'bounceback' feature that indicates to the user when he or she has reached the edge of an electronic document* when translating the document on a touch screen display. According to the claimed method in the '381 Patent, *when a user translates an electronic document beyond the edge, an area beyond the edge of the electronic document is displayed and when the user removes his or her finger from the display, the document 'bounces back' so that the area beyond the edge of the document is no longer displayed.* |

---

[2]  Ms. Davis's report can be found at Dkt. No. 2386-2.  Mr. Wagner's August 26, 2013 report is lodged with Dkt. No. 2401.

Samsung's motion does not even address how Apple or Ms. Davis allegedly misstates the scope of the '915 patent. In fact, Mr. Wagner adopts a much *broader* description of the '915 than Ms. Davis does. (*Compare* 8/26/2013 Wagner Rpt. ¶ 486 ("[T]he '915 patent covers the single finger swipe to scroll and a two or more finger gesture to scale, as well as rubberbanding."), *with* Davis Rpt. ¶ 28 ("[I]t covers a method that includes creating an 'event object' in response to the user's touch, and distinguishing between a single input point from the user, which the device interprets as a 'scroll operation,' and two or more input points from the user, which the device interprets as invoking a 'gesture operation.'").)

Samsung's motion also fails to identify any opinion from Ms. Davis that actually relies on an overbroad scope of the '381 patent (e.g., covering all "rubber banding" or "bounce back" features) to "inflate" damages. The same is true for the '915 patent. As there is nothing to preclude, Samsung's motion should be denied.

Samsung's motion fails for the additional reason that Samsung cannot establish the factors that courts require for judicial estoppel, including that Apple's current position is "'clearly inconsistent' with its earlier position," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), and that the Court "adopted the original . . . position," *Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997). *See also Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998) (adopting majority rule applying judicial estoppel only "if the court has relied on the party's previously inconsistent statement"). Samsung fails to establish that the Court adopted any prior inconsistent statements by Apple.

First, Samsung contends that Apple should be precluded from contradicting *trial testimony* from Apple's experts regarding alleged claim scope. (Mot. at 5:2-12, 6:9-17.)[3] But Samsung does not contend that the Court adopted that trial testimony, as is necessary for judicial estoppel. Instead, Samsung argues that "Apple succeeded in persuading the first jury." (*Id.* at 5:15.) Samsung cites no law for the idea that a jury verdict is the same as adoption by a court, or

---

[3] Samsung also cites an excerpt from a pre-trial deposition (Mot. at 6:17-19) but does not argue that deposition testimony is a basis for judicial estoppel.

1   the expansive proposition that a favorable verdict constitutes adoption of every word of testimony

2   adduced by a party during trial.  Samsung cannot convert speculation as to the evidence the jury

3   relied on to reach its verdict into a basis for judicial estoppel.

4   Second, the earlier positions that Samsung assigns to Apple—in experts' trial testimony

5   and Apple's (post-trial) statements in the '381 reexamination—are completely consistent with

6   Apple's position throughout the entire litigation.  The claim language and the Court's claim

7   constructions control the scope of Apple's patents.  Samsung points to Apple's position in

8   reexamination that the prior art fails to show "instructions for performing translation in the

9   second direction with the recited stop condition (i.e., 'until the area beyond the edge of the

10  document is no longer displayed')" (Mot. at 5-6), but that simply restates the claim language

11  "instructions for . . . translat[ing] the electronic document in a second direction until the area

12  beyond the edge of the electronic document is no longer displayed" (JX1045 at 59-60).  Similarly,

13  Dr. Singh's trial testimony distinguishing DiamondTouch followed claim 8 of the '915 patent,

14  which "distinguish[es] between a single input point applied to the touch-sensitive display that is

15  interpreted as the scroll operation and two or more input points applied to the touch-sensitive

16  display that are interpreted as the gesture operation."  Likewise, testimony that the '381 patent

17  does not cover all "bounce" behavior and the '915 patent does not cover all "scroll" or "gesture"

18  functions is consistent with Apple's position that claim language, rather than shorthand, controls a

19  patent's scope.

20  Finally, the Court should reject Samsung's allegations that Apple is "playing fast and

21  loose" with the Court.  *See Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993) (no estoppel

22  where "there was no 'fast and loose' behavior").  Apple is not seeking to contradict in the re-trial

23  the claim scope it urged in the first trial or in reexamination, which is consistent with the claim

24  language and the Court's orders.

25  **III.    MIL #3 REGARDING APPLE'S LOST PROFITS CLAIM SHOULD BE DENIED**

26  Samsung's motion to "preclude Apple from seeking lost profits" is an improper motion

27  for partial summary judgment in the guise of a motion *in limine* and should be denied on that

28  basis alone.

1      Moreover, the Court has already rejected Samsung's argument that "nothing in the record"

2  supports Apple's entitlement to lost profits.  (Mot. at 7:14.)  Samsung's JMOL motion argued

3  "that Apple has not established entitlement to lost profits, and that accordingly, all of the awards

4  that include a lost profits component must be set aside."  (Dkt. No. 2271 at 13:10-12.)  The Court

5  rejected that argument, finding that Apple "provided detailed evidence regarding how the market

6  would likely have behaved absent Samsung's infringement," which "constitutes exactly the type

7  of economic evidence of causation that the Federal Circuit requires in sustaining an award of lost

8  profits."  (*Id.* at 13:25-14:10.)  The Court's prior ruling controls.  (*See* Dkt. No. 2316 at 2:26-27.)

9      That same ruling demonstrates the falseness of Samsung's claim that the Court previously

10  found that Apple "presented no evidence" of consumer demand for the patented features.  (Mot.

11  at 7:21.)  The Court explicitly held that Apple presented sufficient evidence of "consumer

12  demand" for a jury to award lost profits (Dkt. No. 2271 at 14:3-4), including patent-specific

13  consumer demand.  (*See* Dkt. No. 2050 at 21:3-8.[4])  For example, Apple presented numerous

14  Samsung product engineering documents containing side-by-side comparisons of Samsung's

15  prototype Galaxy S phone with the Apple iPhone, commentary on the advantages of Apple's

16  patented features, and instructions to Samsung engineers to make "improvements" by adopting

17  those features.  (*See, e.g.*, admitted exhibits PX44.58 & PX44.131; PX57.19 & PX57.73.)  This is

18  exactly the type of evidence Mr. Wagner testified constitutes evidence of consumer demand for

19  Apple's patented features.  (Dkt. No. 2407-17 at 466:5-20.)

20      Nor can Samsung support its request to exclude relevant and previously admitted evidence

21  of consumer demand for "ease of use" and "design" on the basis that this evidence allegedly lacks

22  sufficient specificity to the new trial patents.  (Mot. at 8:5-6 & n.3.)  This evidence about demand

23

---

24      [4] *See, e.g.*, admitted exhibits PX143-146 (surveys showing that more than 80% of iPhone
purchasers identified "attractive appearance and design" as significant to their purchases);
25  PX54.13 (market study recognizing "Apple's sleek and intuitive user interface has been a key
driver of its value proposition"); PX36.24 & PX36.36 (GravityTank study praising Apple's
26  patented "two finger pinch and flick" and "bounce" features as "fun" and "whimsical"); PX30
(Professor Hauser's conjoint survey showing that consumers will pay a substantial price premium
27  for the '915, '163, and '381 patented features); *see also* PX185.11 (Samsung study concluding
that "Exterior Design" was the "[b]iggest reason for purchasing" a smartphone).
28

1   for "the patented products" is relevant to at least the first factor of the *Panduit* lost profits test.

2   Indeed, the Federal Circuit has explicitly rejected the argument "that the requisite demand under

3   the first *Panduit* factor is demand for the specific feature (*i.e.* claim limitation) . . . , not simply

4   demand for the patented product." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567

5   F.3d 1314, 1330 (Fed. Cir. 2009).  Moreover, all of the inventions at issue in the new trial relate

6   to the industrial design and user interface of Apple's products.  Evidence of praise for those

7   features—e.g., for the iPhone's easy-to-use U/I or beautiful design—are probative of demand for

8   the patents.  Samsung cites no authority that would justify denying the jury access to relevant

9   evidence regarding the ease of use and design of Apple's products.[5]

10      Samsung's reliance on the Court's factual findings on consumer demand in the permanent

11   injunction context is misplaced.  (Mot. at 7:21-8:9.)  While the Court may resolve disputed facts

12   when ruling on Apple's equitable claims, those factual findings cannot defeat Apple's right to

13   have a jury try the same facts as they relate to its legal claims.  *See Ross v. Bernhard*, 396 U.S.

14   531, 537-38 (1970) ("where equitable and legal claims are joined in the same action, there is a

15   right to jury trial on the legal claims which must not be infringed . . . by a court trial of a common

16   issue existing between the claims"); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir.

17   2001) (same principle); *see also* Dkt. No. 1267 (excluding evidence of preliminary injunction

18   rulings because "the jury is, in fact, the final arbiter of the factual questions in this case").

19      Samsung cannot show that there is "no genuine dispute" that 17 products found not to

20   infringe some Apple patents in the first trial are acceptable design-arounds.  (Mot. at 8:10-19.)

21   Samsung's argument rests on rank speculation about the jury's reasoning.  Although the jury

22   found noninfringement, it did not find that these 17 products would provide acceptable substitutes

23   for the specific features claimed in Apple's patents.  Mr. Wagner admitted that he has "no idea"

24   how the jury made its noninfringement findings and that, if the jury found that the 17 accused

25

26      [5] Samsung relies on inapposite authorities in which the patentees failed to present any
proof satisfying the second *Panduit* factor—that commercially acceptable non-infringing
27   substitutes were unavailable.  *See Slimfold Mfg. Co. v. Kinkead Indus.*, 932 F.2d 1453, 1458 (Fed.
Cir. 1991); *Calico Brand, Inc. v. Ameritek Imports, Inc.*, No. 2008-1234, 2013 WL 3746163, at
*8 (Fed. Cir. July 18, 2013) (nonprecedential).

28

1    products did not perform the required functions at all, they would *not* be acceptable noninfringing

2    alternatives.  (8/26/2013 Wagner Rpt. ¶ 494; Dkt. No. 2388 Ex. B at 799:22-801:14.)

3        Samsung also relies on speculation as to whether the first jury awarded lost profits (Mot.

4    at 8:20-9:3), but the Court already rejected this exact argument when Samsung raised it at the

5    Case Management Conference.  (*See* Dkt. No. 2320 at 66:17-67:21.)

6        Finally, Samsung incorporates its arguments from its motion to strike portions of Ms.

7    Davis's report to preclude lost profits based on the notice dates from the Court's March 1 Order.

8    (Mot. at 9:4-19.)  Apple likewise incorporates its opposition arguments.  (*See* Dkt. No. 2407-3 at

9    2:24-4:08.)  In short, there is no legal rule requiring Ms. Davis to assume that Samsung would

10   have begun designing around Apple's patents *before* it had notice of them.[6]  No case has held that

11   design-around efforts must be deemed to start on the date of first infringement when the period

12   for which damages starts is a *later* date of notice of the patent.  The only court to have discussed

13   this question treated the design-around start date as a fact issue for the jury.  *See Callaway Golf*

14   *Co. v. Acushnet Co.*, 691 F. Supp. 2d 566, 574-75 (D. Del. 2010).  Moreover, *Grain Processing*

15   confirmed that the ultimate question is one of "causation in fact" that takes into account

16   alternatives a rational infringer would have offered after notice.  *Grain Processing Corp. v. Am.*

17   *Maize Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999).

18   **IV.    MIL #4 REGARDING THE VALUATION OF THE APPLE BRAND PREPARED
         BY INTERBRAND SHOULD BE DENIED**

19

20       Like Apple's prior damages expert Terry Musika, one of the analyses that Apple's new

21   expert Julie Davis used in assessing a reasonable royalty for Samsung's design patent

22   infringement was an "income approach" based upon the value of Apple's brand as measured by

23   Interbrand.  The Court rejected Samsung's prior challenge to the admissibility of this

24

25       [6] Apple has already explained in its opposition to Samsung's motion to strike that Davis
     uses exactly the same methodology as Musika by beginning her design-around start dates on the

26   date of notice.  (*See* Dkt. No. 2407-3 at 2:5-4:08.)  Samsung's own damages expert, Mr. Wagner,
     testified at deposition that he is not aware of any fact suggesting that Samsung would have begun

27   designing around Apple's patents at the date of first infringement.  (Robinson Decl. in Support of
     Apple's Opposition to Samsung's Motions *in Limine* ("Robinson Decl.") Ex. A at 939:8-16.)

28

1    methodology, holding that Mr. Musika's "basic income approach methodology is sound and is

2    not subject to exclusion under FRE 702 and *Daubert*." (Dkt. No. 1157 at 12.) Samsung's motion

3    *in limine* improperly attempts to reargue the Court's prior ruling, and the Court has made clear

4    that it will not reopen those issues now or entertain any new challenges to theories that could have

5    previously been raised. (Dkt. No. 2316 at 2 ("The Court's prior rulings on the parties' *Daubert*

6    motions, motions in limine, discovery disputes, and evidentiary objections will remain in effect as

7    law of the case. The parties may not relitigate these issues."); Dkt. No. 2320 at 69:7-9 ("Because

8    everyone is just going to be using the theories that have already gone through extensive motion

9    practice last year, there will be no new challenges to theories.").) For that reason alone, the Court

10   should deny Samsung's motion.

11          Nor is Samsung correct that Ms. Davis conceded that Interbrand's valuations are

12   unreliable or that they have no application to this case. To the contrary, Ms. Davis explained that

13   Interbrand's calculations "are highly regarded in the industry." (Dkt. No. 2406-4 at 232:4-5; *see*

14   *also* Robinson Decl. Ex. B at 518:7-9, 18-21 (describing Interbrand's calculations as "well

15   respected inside the industry" and "a trusted source" on brand valuation).) The fact that Ms.

16   Davis has not used this type of data in the past is easily explained. Interbrand's valuations are

17   only available for a select group of companies, and Ms. Davis has "never been in a case where the

18   brand was one of them that had already been valued by Interbrand." (Dkt. No. 2406-4 at 234:15-

19   16; *see also id.* at 234:19-22 ("I can't think of any case where I've been involved with a brand

20   that was covered by an Interbrand report. Therefore, I've not used it, because it wasn't

21   available."); *id.* at 235:2-5 ("Because I've never been in a case where Interbrand has valued the

22   brand, I don't know whether there's been any other expert to do that or not.").) The fact that Ms.

23   Davis has not had similar data available to her in other cases should not prevent her from using

24   that data where it is available, particularly since Samsung offers no factual basis (and only

25   attorney argument) for its suggestion that the data is in any way unreliable.

26          At most, Samsung's criticisms of Ms. Davis's reliance on Interbrand's valuation go to the

27   weight of that evidence, but not its admissibility—as the Court recognized when rejecting

28   Samsung's prior challenge to the same opinions offered by Mr. Musika. (*See* Dkt. No. 1157 at 12

1   ("Samsung's criticisms of Mr. Musika's 'income approach' and 'cost approach' analyses largely

2   go to weight, not admissibility.").)  Samsung will suffer no unfair prejudice if Ms. Davis testifies

3   about Interbrand's valuation because it will have every opportunity to address these issues

4   through its cross-examination of Ms. Davis.  And contrary to Samsung's assertion, there is no

5   reason to think that cross-examination will be unreasonably time consuming.  Indeed, having

6   thoroughly deposed Ms. Davis on this very topic (*see* Dkt. No. 2406-4), Samsung should have no

7   difficulty efficiently addressing these issues on cross-examination.

8          The Court should deny Samsung's motion, just as it denied Samsung's prior challenge to

9   the same opinions offered through Mr. Musika.

10  Dated: September 26, 2013                    MORRISON & FOERSTER LLP

11

12                                              By: */s/  Harold J. McElhinny*
                                                    HAROLD J. MCELHINNY
13
                                                Attorneys for Plaintiff
14                                              APPLE INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S OPPOSITION TO SAMSUNG'S MOTIONS *IN LIMINE*
Case No. 11-cv-01846-LHK (PSG)                                                    11
sf- 3333966