1   RANDALL L. ALLEN (Ca. Bar No. 264067)
    randall.allen@alston.com
2   RYAN W. KOPPELMAN (Ca. Bar. No. 290704)
    ryan.koppelman@alston.com
3   ALSTON & BIRD LLP
    275 Middlefield Road, Suite 150
4   Menlo Park, CA 94025
    Telephone:     650-838-2000
5   Facsimile:     650-838-2001

6   PATRICK J. FLINN (Ca. Bar No. 104423)
    patrick.flinn@alston.com
7   ALSTON & BIRD LLP
    1201 West Peachtree Street
8   Atlanta, GA 30309
    Telephone:     404-881-7000
9   Facsimile:     404-881-7777

10  Attorneys for Non-Party
    NOKIA CORPORATION

11

12

13                      UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                          SAN JOSE DIVISION

16

17

18  APPLE, INC., a California corporation,        Case No.:  5:11-CV-01846-LHK (PSG)
                                                             5:12-CV-00630-LHK (PSG)
19                  Plaintiff,

20          v.                                    **NON-PARTY NOKIA'S RESPONSE
                                                  OPPOSING SAMSUNG'S MOTIONS FOR
21  SAMSUNG ELECTRONICS CO., LTD., a              RELIEF FROM NONDISPOSITIVE
    Korean corporation, SAMSUNG                   PRETRIAL ORDERS OF MAGISTRATE
22  ELECTRONICS AMERICA, INC., a New York         JUDGE ON OCTOBER 2, 2013**
    corporation; SAMSUNG
23  TELECOMMUNICATIONS AMERICA, LLC,
    a Delaware limited liability company,
24
                    Defendants.
25

26

27

28

NON-PARTY NOKIA'S RESPONSE OPPOSING          Case No.: 5:11-CV-01846
SAMSUNG'S MOTIONS FOR RELIEF.                          5:12-CV-00630

This Court should reject Samsung's attempt to conceal (1) the extent of its inappropriate receipt of highly confidential information subject to protective order, and (2) the extent of its purposeful and deceptive use of that highly confidential information.

The following is clear: The Nokia-Apple license is highly confidential and was provided to Samsung's outside counsel subject to a protective order.  Despite this, certain terms of that license were inappropriately disclosed to Samsung personnel and other third parties.  Samsung senior licensing executives used the terms of the Nokia-Apple license to attempt to gain an advantage in business negotiations, despite knowing that they received those terms inappropriately from their attorneys.  Samsung had months to submit information to Judge Grewal and a live hearing to answer the Court's questions, but as Judge Grewal wrote, Samsung's only response to the most basic questions about its violations of the Protective Order was "[w]e're working on it."  (Dkt. No. 2483 at 4, Case No. 5:11-CV-1846.)  Because Samsung has failed to meaningfully respond to the Court, Judge Grewal ordered an expedited initial discovery schedule, including production of some of documents evidencing the disclosure of the highly confidential information, and depositions of a Samsung executive, a limited number of other Samsung employees who received the confidential information, and a Rule 30(b)(6) corporate representative ("Apple Order").  In a second order, Judge Grewal adopted a stipulation Samsung agreed to with Nokia to conduct an initial investigation to determine what further discovery is needed into the inappropriate disclosures ("Stipulated Order"). By entering the Apple Order and the Stipulated Order, Judge Grewal found that the procedures set forth in the Stipulated Order were necessary, but insufficient to quickly resolve the issues surrounding the inappropriate disclosures. Samsung now moves this Court to vacate *both* orders.

Judge Grewal's orders are neither "clearly erroneous [nor] contrary to law" and should therefore be affirmed. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).[1] This Court should not

---

[1] Samsung cites "[r]ulings regarding privilege" and rulings related to court scheduling orders to request *de novo* review.  Neither the word "privilege" nor the word "scheduling" appear in Magistrate Judge Grewal's orders; the orders are about a non-dispositive issue – Samsung's undisputed inappropriate disclosure and use of highly confidential information in violation of protective orders.  Such orders are subject to the deferential clearly erroneous or contrary to law standard set forth in Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A).  Also, unlike Nokia's response opposing Samsung's request to stay the October 2, 2013 orders pending

NON-PARTY NOKIA'S RESPONSE OPPOSING
SAMSUNG'S MOTIONS FOR RELIEF

Case No.: 5:11-CV-01846
5:12-CV-00630

1  allow Samsung's attempt to further delay the expedited initial discovery schedule set forth in the

2  Apple Order and Stipulated Order.

3  **BACKGROUND**

4  During discovery in the first case pending in the Northern District of California between

5  Apple and Samsung (Case No. 5:11-CV-01846), Apple produced copies of certain highly

6  confidential license agreements, including a June 2011 agreement between Apple and Nokia.

7  Apple properly designated that license agreement as "Highly Confidential" and "Attorneys' Eyes

8  Only."

9  Later, Samsung's outside counsel sent dozens of Samsung employees, among others, a

10  draft report from their retained expert, David Teece.  The report contained, among other things,

11  highly confidential licensing terms in the current license between Nokia and Apple. The licensing

12  terms had previously been designated as Highly Confidential – Attorney's Eyes Only under this

13  Court's protective order.  There can be no serious dispute that it was a violation of the Court's

14  protective order for Samsung's outside counsel to provide Samsung employees, and others not

15  covered by the protective order, with the highly confidential terms of the Nokia/Apple license.

16  Then, as Judge Grewal's order reported, at a June 4, 2013 meeting with Nokia, Samsung

17  executive Dr. Seungho Ahn informed Nokia licensing executives that he knew the terms of the

18  Apple-Nokia license agreement.  (Dkt. No. 2483 at 3, Case No. 5:11-CV-1846.)  According to Dr.

19  Ahn, the agreement had been received by Samsung's attorneys in the course of litigation, and that

20  the terms had been provided to Samsung's in-house team. (*Id.*)  Dr. Ahn said that "all information

21  leaks," and ultimately tried to use the terms of the Apple-Nokia license to attempt to gain an

22  advantage in negotiations with Nokia.  (*Id.*)

23  When a request to produce additional Nokia confidential information came up in the

24  context of the second pending case between Apple and Samsung (Case No. 5:12-CV-0630), Nokia

25  responded by moving for a protective order on July 1, 2013.  (Dkt. No. 647, Case No. 5:12-CV-

26  630.)  Following negotiations and certain confirmations about admitted inappropriate disclosures

27

28  appeal, this brief is not a response to a motion for administrative relief under N.D. Cal. L.R. 7-11 because it is controlled by these other rules.

NON-PARTY NOKIA'S RESPONSE OPPOSING
SAMSUNG'S MOTIONS FOR RELIEF

2

Case No.: 5:11-CV-01846
5:12-CV-00630

by Samsung's outside counsel, Nokia and Samsung filed a stipulation and proposed order on August 18, 2013, providing, among other things, that Samsung agreed not to use Nokia's confidential business information in several pending cases, and that Samsung would initiate an investigation into the subject matter of the improper disclosures.  (Dkt. No. 742, Case No. 5:12-CV-630.)  Within forty-five days, Samsung agreed to:  (1) retain a computer forensics firm to independently audit Samsung employee files to collect and preserve documents evidencing Samsung's receipt, dissemination, or use of the disclosed information; and (2) request the computer forensics firm to prepare a log of all instances where the disclosed information was disseminated, referenced or used by Samsung employees—including the author of the document, the recipient, the date and time, the subject line, and a brief description of the subject matter.  (*Id.* at 3-4.)  Preparation of the log was an interim step before Samsung would have to produce documents reflecting its transmission and use of Nokia's confidential business information and the depositions of the relevant Samsung employees.  The Stipulated Order would have ultimately led to a similar result embodied in the Apple Order.  The only difference is the timing.

The stipulation also provided for several additional steps.  Specifically, Samsung agreed under the stipulation: (1) "not to use in any legal or business matter any Nokia Confidential Business Information ("CBI") designated as Confidential or higher under the protective orders" of the NDCA cases or the 794 ITC investigation, (2) "to provide Nokia with a sworn statement reporting on  . . . and identifying any further dissemination of the Disclosed Information" by other Samsung law firms and "also explain the reasons why the Disclosed Information was forwarded" to the firms, (3) that "Stroz Friedberg will conduct an independent review of Quinn Emanuel's investigation and collection process as is necessary to ensure that Quinn Emanuel's search of its own firm Documents is complete and accurate," and (4) that "[i]f Nokia seeks the courts assistance to enforce the stipulation or resolve disputes regarding its implementation, Nokia shall be entitled to its reasonable attorneys' fees and costs associated with the any such meritorious motion."  (Dkt. No. 785 at 1-2, 4-5, Case No. 5:12-CV-630.)  These are all important and necessary procedures which were specifically negotiated and agreed upon by Samsung, and they are not duplicative of the Apple Order.

On October 2, 2013, Judge Grewal signed and entered the stipulation as the Stipulated Order.  (Dkt. No. 785, Case No 5:12-CV-630.)   In the companion case, Judge Grewal issued an order on Apple's August 23, 2013 motion for sanctions ("Apple Order").  (Dkt. No. 2483, Case No. 5:11-CV-1846.)  In doing so, Judge Grewal found that further expedited and court-supervised discovery about the improper disclosures was needed in addition to the procedures negotiated by Nokia and Samsung.  (*Id.* at 4.)  To that end, Judge Grewal ordered Samsung to produce certain emails and other communications related to Apple's license agreements and provide up to seven employees—including Dr. Ahn and a Rule 30(b)(6) witness—for deposition no later than October 16, 2013.  (*Id.* at 5.)

Five days later, Samsung filed its motions to stay and for relief from both the Apple Order and the Stipulated Order to which Samsung had already agreed.

## ARGUMENT

Samsung raises four arguments in response to Judge Grewal's orders. Each argument fails.

**I.      Judge Grewal's Order Does Not Mention Privilege or Work Product, and the Emails Ordered Produced are not Subject to Withholding on Either Basis**

This Court should reject Samsung's argument that Judge Grewal's Apple Order should be reversed because it requires disclosure of privileged communications.  Judge Grewal's order never mentions privilege or work product, and Samsung made no showing that the documents ordered produced are, in fact, worthy of such protection.

Judge Grewal ordered Samsung to produce "[t]he e-mails listed on Attachment A to Mr. Becher's August 1, 2013 letter to Mr. Selwyn" and all emails after March 24, 2012 from the Samsung employees listed in that attachment "to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips."   (Dkt. No. 2483 at 5, Case No. 5:11-CV-1846.) Samsung has not made the requisite showing under *Upjohn v. United States* – that the "communications at issue were made . . . at the direction of corporate superiors in order to secure legal advice from counsel." 449 U.S. 383, 394 (1981).  Samsung did not even attempt to apply the *Upjohn* test in its briefing to Judge Grewal prior to the Apple Order or in its subsequent motions for relief.  Samsung described only a few of the documents at issue – those in Attachment A to the

1   August 1 letter – and admitted in its brief to Judge Grewal that the information listed in

2   Attachment A constituted all known relevant information about these documents. (Dkt. No. 2395-

3   3 at 8, Case No. 5:11-CV-1846.) Yet nothing in those descriptions remotely establishes any

4   colorable privilege claim. Samsung had months to provide sworn testimony, disclose supporting

5   documents or even create a privilege log outlining the basis of their privilege claim on document

6   by document basis.  For whatever reason—perhaps to avoid highlighting the sheer magnitude of

7   disclosures—Samsung chose not to make any showing to the Court. Samsung has chosen, instead,

8   to rely upon broad, superficial claims that the orders require production of privileged materials.

9   This is not sufficient to establish any claim to privilege.  And now the time for Samsung to prove

10  up its claims has passed.  In this extraordinary situation involving a massive and consequential

11  breach of a protective order, Samsung has had ample time to make its case.

12          Instead of attempting to establish privilege, Samsung sets up straw men regarding the

13  *exceptions* to privilege – specifically the crime-fraud exception and waiver.  But because Samsung

14  never made any showing that any documents were protected, Judge Grewal did not need to

15  address whether these exception apply to hypothetical, unarticulated privilege claims.

16          Moreover, Samsung now argues that these exceptions cannot apply because Samsung

17  merely "fail[ed] to redact a handful of lines" which "is a far cry from an intentional crime or

18  fraud."  (Dkt. No. 2495 at 3, Case No. 5:11-CV-1846.) By characterizing counsel's behavior as

19  merely "failing to redact a handful of lines" Samsung has put its attorney-client communications

20  directly in issue, again waiving the privilege.  In "certain circumstances a party's assertion of

21  factual claims can, out of consideration of fairness to the party's adversary, result in the

22  involuntary forfeiture of privileges for matters pertinent to the claims asserted." *John Doe Co. v.*

23  *United States*, 350 F.3d 299, 302 (2d Cir.2003) (citing *United States v. Bilzerian*, 926 F.2d 1285

24  (2d Cir.1991)). At-issue waiver implicates fairness in the situation where a party must "defend

25  against a privilege holder's claim without access to pertinent privilege material that might refute

26  the claim," *John Doe Co.*, 350 F.3d at 304 – situations in which the litigant attempts to "wield[]

27  the attorney-client privilege and the work product doctrine as both a shield and a sword." *Trudeau*

28  *v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 340-41 (N.D.N.Y. 2006).

1      If Samsung (1) injected the contents of privileged communications into the litigation, and

2    (2) either Nokia or Apple are unfairly prejudiced by the lack of dual access or truthful resolution

3    of the issue requires disclosure, at-issue waiver applies to vitiate any privilege claim. *Allen v. West*

4    *Point-Pepperell, Inc.*, 848 F.Supp. 423, 429 (S.D.N.Y.2000). Here, Samsung argues that Judge

5    Grewal's orders should be vacated by injecting the notion that the disclosures of highly

6    confidential information were merely the result of attorneys' negligent failure to redact an expert

7    report.  But the only way to determine whether Samsung's defense is true, and the only way to

8    avoid the prejudice to Nokia and Apple caused by both the original protective order violation *and*

9    the lack of dual access, is to provide Nokia and Apple with the documents. Therefore, even had

10   Samsung made an appropriate showing of privilege, it waived any privilege by putting the

11   contents of its communications in issue.  Put another way, protective orders have very little

12   meaning if the protected information can be disclosed in attorney-client communications and

13   never subject to any scrutiny.

14   **II.     Samsung's Speculation That Judge Grewal's Order "May" Require Samsung**

15   **to Violate Other Protective Orders is Not Reversible Error**

16       This Court should next reject Samsung's argument that the portion of Judge Grewal's

17   Apple Order requiring a Rule 30(b)(6) deposition should be reversed because it requires testimony

18   relating to "the use of the confidential information in any proceeding before the United States

19   International Trade Commission and in any court or jurisdiction outside the United States" and

20   that information "may" be subject to a different protective order.  First, Samsung fails to tie its

21   speculation about potential Rule 30(b)(6) testimony to any clear error or reasoning contrary to law

22   in Judge Grewal's order; it merely guesses that future issues might arise when the ordered

23   deposition proceeds.  Additionally, there will be no issues with other protective orders because the

24   Apple Order requires only testimony about Samsung's *own use* of the confidential information.[2]

25      [2] *Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) is completely inapposite.  In that case, the court
26   had to determine whether a permanent injunction barring the Department of Labor from certifying
     certain apple pickers for a guest-worker program could be superseded by a different federal district
27   court's subsequent preliminary injunction ordering that several of the apple pickers be certified.
     *Id.* at 727. The court simply applied preliminary injunction standards and held that it was an abuse
28   of discretion for the district court to grant the contrary preliminary injunction in the second case
     because, among other reasons, the preliminary injunction did not preserve the status quo, but

### III.    Judge Grewal's Orders Provide for Appropriate Initial Discovery

The Court should also reject Samsung's contention that the Apple Order is overbroad because "this dispute relates only to the alleged dissemination of certain monetary terms of an Apple-Nokia license that were incompletely redacted."[3]  (Dkt. No. 2495 at 5, Case No. 5:11-CV-1846.) As Judge Grewal cogently reasoned, there is far more at stake:

> Time and again in competitor patent cases, parties resist producing confidential information to their adversaries' lawyers. They fear, among other things, that the lawyers will insufficiently shield the information from the competitors that they represent. Yet time and again, the court assuages these fears with assurances that a protective order will keep the information out of the competitors' hands.
>
> A casual observer might reasonably wonder what magic a protective order works that allows outside counsel access to confidential information to advance the case without countenancing untoward uses by the client.
>
> The answer is not a magical one at all: confidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless.
>
> There is reason to believe the rule has been breached in the present case.

(Dkt. No. 2483 at 1-2, Case No. 5:11-CV-1846.)

There is no dispute that Samsung's attorneys disclosed highly sensitive competitor information to Samsung in violation of this Court's protective orders, and there is no dispute that Samsung knowingly used that same highly sensitive competitor information to attempt to create leverage during negotiations with Nokia. Yet despite having months to investigate, Judge Grewal noted that

> Samsung is unable to provide evidence on even the most basic questions, such as: who has now had access to the confidential licensing information? For what purpose? When? Where? How? Has Samsung relied on any of the confidential information in taking any position before any other court or jurisdiction? Exactly what steps has Samsung taken to prevent dissemination and use of the confidential information in the future?

(Dkt. No. 2483 at 4, Case No. 5:11-CV-1846.)  The discovery schedule ordered by Judge Grewal in the Apple Order, in combination with the Stipulated Order, is an appropriate mechanism to

---

instead unsettled it. *Id.* at 727-28.

[3] Samsung challenges only the breadth of the second category of documents Judge Grewal ordered it to produce – certain emails and communications since March 24, 2012 sent or received by Samsung employees who received the confidential information.

NON-PARTY NOKIA'S RESPONSE OPPOSING
SAMSUNG'S MOTIONS FOR RELIEF

Case No.: 5:11-CV-01846
5:12-CV-00630

determine the answers to these basic questions, and to protect the judiciary's interest in ensuring that its assurances of confidentiality mean something.[4]   It was not an abuse of discretion or contrary to law to order that discovery.[5]

### IV.   Samsung Cannot Challenge the Stipulated Order to Which it Already Agreed

Samsung **negotiated for**, **agreed to**, and **jointly proposed** the discovery procedures outlined in the Stipulated Order.  Samsung cannot now be heard to complain about those same procedures because "a party cannot appeal from an order which it consented to have entered against it." *Christian Sci. Reading Room Jointly Maintained v. City & County of San Francisco*, 784 F.2d 1010, 1017 (9th Cir. 1986).[6]   Moreover, Samsung's suggestion that the Stipulated Order "is fundamentally flawed in light of Apple's insistence . . . that the procedure set forth in the Stipulation would result in waiver of privilege" is off the mark.  Samsung does not even attempt to explain why Apple's arguments about waiver of privilege should undo Samsung's agreement with Nokia and allow Samsung to avoid all of its various obligations under the Stipulated Order, such as Samsung's agreement to cease using Nokia's confidential information in various lawsuits.[7]   (*See*

---

[4]  Because the discovery is as much about the judiciary protecting its interests as it is about Nokia and Apple, Samsung's citation to *Mitsui O.S.K. Lines v. SeaMaster Logistics*, No. 10-CV-5591, 2012 WL 6082475 (N.D. Cal. Dec. 6, 2012) is meaningless. As the quote cherry picked by Samsung itself shows, that case was about balancing the *plaintiff's* need for additional discovery against the defendant's burden in providing that discovery; it was not about protecting the integrity of the judiciary.  *Id.* at *2.

[5]  Samsung's statement that the Stipulated Order is what "Samsung and Nokia had already agreed was sufficient for the purposes of Nokia's motion" is completely misleading. (Dkt. No. 2495 at 5.) The Stipulated Order was intended to establish an initial process to reveal what additional discovery was necessary and was by no means an agreement to simply perform the procedures in the Stipulated Order and let the issue go.

[6]  *See also Hoa Hong Van v. Barnhart*, 483 F.3d 600, 610 n.5 (9th Cir. 2007) ("In general, a party cannot appeal a judgment entered with its consent."); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 592 (E.D.N.Y. 1997) ("The Court finds that because the plaintiffs expressly signed the consent judgment . . . in which they agreed that '[t]here shall be no live music nor dancing on the subject premises' and 'there shall be no sound, noise or music emanation disturbing to the adjoining residents,' they have no likelihood of success on the merits.").

[7]  Samsung also argues that the Stipulated Order "has been effectively abrogated" by the Apple Order.  (Dkt. No. 790 at 5, Case No. 5:12-CV-630.)  That is plainly false.  Judge Grewal made clear his intent that Samsung be bound by the independent obligations outlined in each – he entered both the Apple Order and the Stipulated Order on the same day.  Also, the orders have different requirements and scope:  The Apple Order addresses not only disclosures about the Apple-Nokia license, but also the Apple-Ericsson, Apple-Phillips, and Apple-Sharp licenses.  (Dkt. No. 2483 at 4, Case No. 5:11-CV-1846.)  Moreover, Samsung agreed to additional proceedings in the Stipulated Order that are not required by the Apple Order.

1   *also supra* at 3-4.)    Any potential for waiver based on the Stipulated Order is the product of

2   Samsung's own voluntary, calculated decision to enter into it.

3          Samsung's challenges relate only to the documents to be produced and the Rule 30(b)(6)

4   deposition, and therefore Samsung acquiesces to the depositions of Dr. Ahn and up to five

5   additional Samsung employees identified in the August 1, 2013 letter from Mr. Becher to Mr.

6   Selwyn.  In addition, for the foregoing reasons, the Court should overrule Samsung's objections to

7   the portions Judge Grewal's October 2, 2013 orders that Samsung does challenge.

8

9   DATED:  October 9, 2013

10                                                      Respectfully submitted,

11

12                                                      By: */s/ Randall L. Allen*
                                                        Randall L. Allen
13                                                      ALSTON & BIRD, LLP
                                                        275 Middlefield Road, Suite 150
14                                                      Menlo Park, CA  94025-4008

15                                                      *Attorneys for Non-Party Nokia Corporation*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURES**

2
        I, Ryan W. Koppelman, am the ECF user whose ID and password are being used to file this

3
RESPONSE OPPOSING SAMSUNG'S MOTIONS FOR RELIEF FROM NONDISPOSITIVE

4
PRETRIAL ORDERS OF MAGISTRATE JUDGE ON OCTOBER 2, 2013 on behalf of non-party

5
Nokia Corporation.  In compliance with Civil L.R. 5-1(i) (3), I hereby attest that Randall L. Allen

6
has concurred in this filing.

7

8

9
Dated: October 9, 2013                              By: */s/ Ryan W. Koppelman*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

       The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil L.R. 5-1(h)(1).  As such, this document was served on all counsel who have consented to electronic service, Civil L.R. 5-1(h)(1) and 5-5(a).

3

4

DATED:  October 9, 2013                    */s/ Randall L. Allen*_____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28