1  [COUNSEL LISTED ON SIGNATURE PAGE]

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK (PSG)

13                  Plaintiff,                    **PROPOSED JURY INSTRUCTIONS
                                                  WITH OBJECTIONS**
14        v.

15
     SAMSUNG ELECTRONICS CO., LTD., a Korean
16   corporation; SAMSUNG ELECTRONICS
     AMERICA, INC., a New York corporation; and
17   SAMSUNG TELECOMMUNICATIONS
     AMERICA, LLC, a Delaware limited liability
18   company,

19
                  Defendants.
20

21

22

23

24

25

26

27

28

1    The parties provide the accompanying proposed preliminary and final jury instructions in

2  accordance with the Court's April 29, 2013 Order (Dkt. No. 2316) regarding the effect of the

3  Court's prior orders and the scope of the new trial on damages.  The parties expressly preserve and

4  do not waive any of their rights and objections with respect to (1) jury instructions previously

5  submitted by any party but not given by the Court; (2) any of their rights and objections with

6  respect to jury instructions previously given by the Court, and including any such instructions

7  included herein in whole or in part; or (3) jury instructions stemming from orders from the first

8  trial and post-trial proceedings, including but not limited to the March 1, 2013 Order re: Damages

9  that granted Samsung's motion for a new trial.  For Apple, those objections and proposed

10  instructions include but are not limited to those set forth in Dkt. Nos. 895-1, 1231, 1232, 1241,

11  1264, 1279, 1279-1, 1327, 1329, 1426, 1591, 1640, 1641, 1693, 1694, 1803, 1810, 1811, 1815,

12  1822, 1830, 1834, 1845, 1856, 1861, 1863, 1883, 1884, as well as any objections or proposed

13  instructions stated orally before the Court (*see, e.g.*, 7/24/12 Hr'g Tr. 32-39; 7/27/12 Hr'g Tr. 4,

14  39-51, 72-76; 8/10/12 Hr'g Tr. 4-45; and Trial Tr. 1642-1643, 3730-3940). For Samsung, those

15  objections and proposed instructions include but are not limited to those set forth in Dkt. Nos.

16  987-03, 1221, 1231, 1232, 1238, 1264, 1279, 1279-01, 1329, 1388, 1426, 1428, 1591, 1600, 1622,

17  1656, 1670, 1693, 1694, 1800, 1809, 1812, 1821, 1821-01, 1831, 1846, 1858, 1859, 1862, 1867,

18  1883, 1892, as well as any objections or proposed instructions stated orally before the Court (see

19  e.g., 7/24/12 Hr'g Tr. 32-39; 7/27/12 Hr'g Tr. 4, 39-51, 72-76; 8/10/12 Hr'g Tr. 4-45; Trial Tr. at

20  1642-43, 3730-3940).  The parties incorporate by reference all of their previously submitted

21  proposed jury instructions and objections to jury instructions.

22    Attached as Exhibit A is the parties' proposed set of preliminary jury instructions.

23    Attached as Exhibit B is the parties' proposed set of final jury instructions.

24

25

26

27

28

1       Dated:  October 10, 2013

2

3   MORRISON & FOERSTER LLP      QUINN EMANUEL URQUHART &
    HAROLD J. McELHINNY (CA SBN     SULLIVAN, LLP
    66781)                          Charles K. Verhoeven (Cal. Bar No. 170151)

4   hmcelhinny@mofo.com          charlesverhoeven@quinnemanuel.com
    MICHAEL A. JACOBS (CA SBN 111664)   50 California Street, 22nd Floor

5   mjacobs@mofo.com            San Francisco, California 94111
    RACHEL KREVANS (CA SBN 116421)    Telephone: (415) 875-6600

6   rkrevans@mofo.com           Facsimile: (415) 875-6700
    ERIK OLSON (CA SBN 175815)

7   ejolson@mofo.com            Kevin P.B. Johnson (Cal. Bar No. 177129)
    MORRISON & FOERSTER LLP      kevinjohnson@quinnemanuel.com

8   425 Market Street           Victoria F. Maroulis (Cal. Bar No. 202603)
    San Francisco, California  94105-2482   victoriamaroulis@quinnemanuel.com

9   Telephone:  (415) 268-7000      555 Twin Dolphin Drive 5th Floor
    Facsimile:  (415) 268-7522       Redwood Shores, California 94065

10                                   Telephone: (650) 801-5000
    WILLIAM F. LEE            Facsimile: (650) 801-5100

11   william.lee@wilmerhale.com
    WILMER CUTLER PICKERING

12   HALE AND DORR LLP         Michael T. Zeller (Cal. Bar No. 196417)
    60 State Street             michaelzeller@quinnemanuel.com

13   Boston, MA 02109           865 S. Figueroa St., 10th Floor
    Telephone: (617) 526-6000      Los Angeles, California 90017

14   Facsimile: (617) 526-5000       Telephone: (213) 443-3000
                                  Facsimile: (213) 443-3100

15   MARK D. SELWYN (SBN 244180)
    mark.selwyn@wilmerhale.com

16   WILMER CUTLER PICKERING    By:     _/s/ Victoria F. Maroulis_
    HALE AND DORR LLP           Victoria F. Maroulis

17   950 Page Mill Road
    Palo Alto, California 94304      Attorneys for Defendants

18   Telephone: (650) 858-6000      SAMSUNG ELECTRONICS CO., LTD.,
    Facsimile: (650) 858-6100       SAMSUNG ELECTRONICS

19                                   AMERICA, INC. and SAMSUNG
                                  TELECOMMUNICATIONS

20                                   AMERICA, LLC

21   By:     _/s/ Harold J. McElhinny_
        Harold J. McElhinny

22       Attorneys for Plaintiff APPLE INC.

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

# TABLE OF CONTENTS

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1 DUTY OF JURY ...................... 1

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 2 WHAT IS EVIDENCE ............. 2

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 3 WHAT IS NOT
EVIDENCE ...................................................................................................................... 3

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 4 EVIDENCE FOR
LIMITED PURPOSE ........................................................................................................ 4

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 5 DIRECT OR
CIRCUMSTANTIAL EVIDENCE ................................................................................... 5

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 6 RULING ON
OBJECTIONS .................................................................................................................. 6

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 7 CREDIBILITY OF
WITNESSES .................................................................................................................... 7

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 8 IMPEACHMENT
EVIDENCE—WITNESS ................................................................................................. 8

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 9 CONDUCT OF THE JURY
........................................................................................................................................ 9

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 10 NO TRANSCRIPT
AVAILABLE/TAKING NOTES ................................................................................... 10

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 11 STIPULATIONS OF
FACT ............................................................................................................................. 11

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 12 DEPOSITIONS IN LIEU
OF LIVE TESTIMONY ................................................................................................ 12

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 13 USE OF
INTERROGATORIES OF A PARTY ............................................................................ 13

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 14 EXPERT OPINION .............. 14

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 15 FOREIGN LANGUAGE
TESTIMONY ................................................................................................................ 15

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 16 USE OF
INTERPRETERS IN COURT ........................................................................................ 16

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 17 BENCH CONFERENCES
AND RECESSES ........................................................................................................... 17

PROPOSED PRELIMINARY INSTRUCTION NO. 18 (APPLE) WHAT A PATENT IS ....... 18

PROPOSED PRELIMINARY INSTRUCTION NO. 18 (SAMSUNG) WHAT A
PATENT IS ................................................................................................................... 20

JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 19 PATENTS AT ISSUE .......... 22

EXHIBIT A:  PROPOSED PRELIMINARY JURY INSTRUCTIONS
Case No. 11-cv-01846-LHK (PSG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
(continued)

**Page**

PROPOSED PRELIMINARY INSTRUCTION NO. 20 (APPLE) THE PARTIES AND QUESTIONS TO BE DECIDED ............................................................................23

PROPOSED PRELIMINARY INSTRUCTION NO. 20 (SAMSUNG) THE PARTIES AND QUESTIONS TO BE DECIDED ....................................................................26

PROPOSED PRELIMINARY INSTRUCTION NO. 20.1 (SAMSUNG) INFRINGING AND NON-INFRINGING PRODUCTS ...............................................................28

PROPOSED PRELIMINARY INSTRUCTION NO. 21 (APPLE) OUTLINE OF TRIAL........30

PROPOSED PRELIMINARY INSTRUCTION NO. 21 (SAMSUNG) OUTLINE OF TRIAL ..............................................................................................................32

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1**

**DUTY OF JURY**

Ladies and gentlemen: You are now the jury in this case.  It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Source:**

Preliminary Instruction No. 1 (Dkt. No. 1427 at 2).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 2**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

**Source:**

Preliminary Instruction No. 2 (Dkt. No. 1427 at 3).

1
2

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 3**

**WHAT IS NOT EVIDENCE**

3
4
5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

6
7
8
9
10

1.    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

11
12
13
14

2.    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

15
16
17
18

3.    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

19
20

4.    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

21
22

**Source:**

23

Preliminary Instruction No. 3 (Dkt. No. 1427 at 4).

24
25
26
27
28

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 4**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

**Source:**

Preliminary Instruction No. 4 (Dkt. No. 1427 at 5).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 5**

**DIRECT OR CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**Source:**

Preliminary Instruction No. 5 (Dkt. No. 1427 at 6).

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 6

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**Source:**

Preliminary Instruction No. 6 (Dkt. No. 1427 at 7).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 7**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.   the opportunity and ability of the witness to see or hear or know the things testified to;

2.   the witness's memory;

3.   the witness's manner while testifying;

4.   the witness's interest in the outcome of the case and any bias or prejudice;

5.   whether other evidence contradicted the witness's testimony;

6.   the reasonableness of the witness's testimony in light of all the evidence; and

7.   any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Source:**

Preliminary Instruction No. 7 (Dkt. No. 1427 at 8).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 8

### IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give the testimony of the witness and for no other purpose.

**Source:**

Preliminary Instruction No. 8 (Dkt. No. 1427 at 9).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 9**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**Source:**

Preliminary Instruction No. 9 (Dkt. No. 1427 at 10).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 10**

**NO TRANSCRIPT AVAILABLE/TAKING NOTES**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**Source:**

Preliminary Instruction No. 10 (Dkt. No. 1427 at 11).

1

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 11**

2

**STIPULATIONS OF FACT**

3       The parties have agreed to certain facts that will be read to you.  You should therefore treat

4   these facts as having been proved.

5

6   **Source:**

7   Preliminary Instruction No. 11 (Dkt. No. 1427 at 12).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 12

### DEPOSITIONS IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony insofar as possible, in the same way as if the witness had been present to testify.

**Source:**

Preliminary Instruction No. 12 (Dkt. No. 1427 at 13).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 13**

**USE OF INTERROGATORIES OF A PARTY**

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Source:**

Preliminary Instruction No. 13 (Dkt. No. 1427 at 14).

1

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 14**

2

**EXPERT OPINION**

3

      Some witnesses, because of education or experience, are permitted to state opinions and

4

the reasons for those opinions.

5

      Opinion testimony should be judged just like any other testimony.  You may accept it or

6

reject it, and give it as much weight as you think it deserves, considering the witness's education

7

and experience, the reasons given for the opinion, and all the other evidence in the case.

8

9

**Source:**

10

Preliminary Instruction No. 14 (Dkt. No. 1427 at 15).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 15**

**FOREIGN LANGUAGE TESTIMONY**

Languages other than English may be used during this trial.

Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter.  Although some of you may know Korean or Japanese, it is important that all jurors consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's testimony.  You must disregard any different meaning.

**Source:**

Preliminary Instruction No. 15 (Dkt. No. 1427 at 16).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 16**

**USE OF INTERPRETERS IN COURT**

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

**Source:**

Preliminary Instruction No. 16 (Dkt. No. 1427 at 17).

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 17**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source:**

Preliminary Instruction No. 17 (Dkt. No. 1427 at 18).

**PROPOSED PRELIMINARY INSTRUCTION NO. 18 (APPLE)**

**WHAT A PATENT IS**

This case involves disputes relating to United States utility and design patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what patents are.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). There are two basic types of patents in the United States: utility patents and design patents. In general terms, a "utility patent" protects the way an article is used and works. It also protects a method or process of making or doing something. On the other hand, a "design patent" protects the way an article looks. A design patent protects the ornamental design of an article of manufacture. "Ornamental design" means the shape of the design and/or the surface decoration on the design.

A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent owner's rights is called infringement. A patent owner is entitled to receive money damages as a result of the infringement of its patent rights.

A patent includes what is called a "specification." For a utility patent, the specification must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

For a design patent, the specification must contain one or more drawings of the designs as well as a description of the drawings, and it serves as a single claim. The "claim" for design patents generally refers to the drawings and how they are described.

1    **Source:**

2    Adapted from Preliminary Instruction No. 18 (Dkt. No. 1427 at 19); 35 U.S.C. § 284.

3

4    **<u>Samsung's Objections</u>**

5            For this instruction, Samsung has replicated the first five paragraphs of the Court's prior

6    Preliminary Jury Instruction Number 18 regarding what a patent is, omitting the material related to

7    how a patent holder may seek to enforce a patent by persons perceived to be infringers.  Apple has

8    likewise kept the first five paragraphs of the Court's instruction, but has added a new sentence at

9    the end of paragraph 3 that was not in the original.  That sentence states, "A patent owner is

10   entitled to receive money damages as a result of the infringement of its patent rights."  As an initial

11   matter, this sentence is out of place because it relates to damages while this instruction is meant to

12   be a general primer on what a patent is.  There are a number of instructions that follow relating

13   specifically to damages, and do so in the context of stating Apple's burden of proof on damages.

14   This sentence in isolation gives the misimpression that a patent holder is entitled to receive money

15   damages apart from any evidentiary burden to prove them.  Apple's new sentence should be

16   removed as contrary to law and therefore highly prejudicial to Samsung.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED PRELIMINARY INSTRUCTION NO. 18 (SAMSUNG)**

**WHAT A PATENT IS**

3

4

5

This case involves disputes relating to United States utility and design patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what patents are.

6

7

8

9

10

11

12

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). There are two basic types of patents in the United States: utility patents and design patents. In general terms, a "utility patent" protects the way an article is used and works. It also protects a method or process of making or doing something. On the other hand, a "design patent" protects the way an article looks. A design patent protects the ornamental design of an article of manufacture. "Ornamental design" means the shape of the design and/or the surface decoration on the design.

13

14

15

16

A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent owner's rights is called infringement.

17

18

19

20

21

22

A patent includes what is called a "specification." For a utility patent, the specification must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

23

24

25

For a design patent, the specification must contain one or more drawings of the designs as well as a description of the drawings, and it serves as a single claim. The "claim" for design patents generally refers to the drawings and how they are described.

26

27

28

**Source:**

Adapted from Preliminary Instruction No. 18 (Dkt. No. 1427 at 19).


**Apple's Objections**

Apple objects to Samsung's Proposed Preliminary Instruction No. 18 to the extent that it does not include a statement about remedies for patent infringement.  This instruction is based on Northern District of California Model Patent Instruction No. A.1 and the Court's prior instruction, which includes a statement explaining that patent owners may enforce their patents through a lawsuit filed in federal court.  Apple's proposed instruction tailors the model instruction's statement about relief for patent infringement to the scope and posture of the new trial by explaining that "[a] patent owner is entitled to receive money damages as a result of the infringement of its patent rights."  That is an undeniably correct statement of the law under 35 U.S.C. § 284, and it is proper to include given the scope and posture of the new trial.  The Court should reject Samsung's alternative proposal that omits that language.

1    **JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 19**

2    **PATENTS AT ISSUE**

3         There are three Apple utility patents involved in this trial:  United States Patent Nos.

4    7,469,381, 7,844,915, and 7,864,163.  Utility patents are often referred to by their last three digits,

5    so Apple's utility patents may be referred to in shorthand as the '381, '915, and '163 patents.

6         There are two Apple design patents involved in this trial:  United States Patent Nos.

7    D618,677 and D604,305.  Design patents are often referred to by their last three digits, so the

8    design patents here may be referred to in shorthand as the D'677 and D'305 patents.

9

10   **Source:**

11   Adapted from Preliminary Instruction No. 19 (Dkt. No. 1427 at 21).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **PROPOSED PRELIMINARY INSTRUCTION NO. 20 (APPLE)**

2  **THE PARTIES AND QUESTIONS TO BE DECIDED**

3      To help you follow the evidence, I will now give you a summary of the positions of the

4  parties with respect to the issues you will decide.

5      The parties in this case are Apple Inc., which I will refer to as "Apple," and Samsung

6  Electronics Company Ltd., Samsung Electronics America Inc., and Samsung Telecommunications

7  America LLC, which I will refer to collectively as "Samsung."  The case involves three United

8  States utility patents and two United States design patents owned by Apple.

9      This is the second part of a patent infringement trial between Apple and Samsung.  Apple

10  and Samsung both manufacture and sell smartphones and tablet computers.

11      In the first part of the trial, the following products were found to infringe the following

12  patents:

13

|                       | Utility Patents |       |       | Design Patents |        |
| --------------------- | :-------------: | :---: | :---: | :------------: | :----: |
| **Infringing Products** | **'163**      | **'381** | **'915** | **'D305**    | **'D677** |
| 1 Captivate           |                 |   x   |   x   |       x        |        |
| 2 Continuum           |                 |   x   |   x   |       x        |        |
| 3 Droid Charge        |        x        |   x   |   x   |       x        |        |
| 4 Epic 4G             |        x        |   x   |   x   |       x        |        |
| 5 Exhibit 4G          |        x        |   x   |   x   |                |        |
| 6 Galaxy Prevail      |        x        |   x   |   x   |                |        |
| 7 Galaxy Tab          |        x        |   x   |   x   |                |        |
| 8 Gem                 |                 |   x   |   x   |       x        |        |
| 9 Indulge             |                 |   x   |   x   |       x        |        |
| 10 Infuse 4G          |        x        |   x   |   x   |       x        |   x    |
| 11 Nexus S 4G         |                 |   x   |   x   |                |        |
| 12 Replenish          |        x        |   x   |       |                |        |
| 13 Transform          |                 |       |   x   |                |        |

25      Those patents were found to be valid.  You are not to revisit those findings concerning

26  Samsung's infringement or the validity of Apple's patents.

1    In the first trial, the jury awarded Apple damages on some of the products that were found

2 to infringe Apple's patents. This trial concerns thirteen products for which Apple has not yet been

3 awarded damages.

4    In this trial, you must determine the amount of money damages to which Apple is entitled

5 as a result of Samsung's infringement of five Apple patents through Samsung's sales of twelve

6 infringing smartphone products and one infringing tablet computer product.

7    Samsung disputes the amount of money damages that Apple is entitled to receive as a result

8 of Samsung's infringement.

9

10 **Source:**

11 Adapted from Preliminary Instruction No. 20 (Dkt. No. 1427 at 22).

12

13 **Samsung's Objection**

14    The Court made clear that it wanted at most a sentence or two telling the jury what its job

15 is. (8/21/13 Hearing Tr. at 11:11-12:1 ("I do envision that the preliminary jury instructions would

16 have to give some indication to the jury as to what issue is before them and what issue they do not

17 need to decide . . . I expect this issue to, at most, be one or two sentences of the preliminary jury

18 instructions"). The inappropriate length of Apple's statement of the questions to be decided is

19 caused in part by various characterizations about the parties and the prior trial that are unnecessary

20 and confusing to the jury about its role here. For instance, Apple's proposed instruction includes

21 purported facts about what the parties manufacture and sell. The specific nature of the parties'

22 business operations is more appropriately explained through trial testimony. The instruction also

23 includes references to the first jury's liability and damages findings on products not at issue here.

24 Such an instruction runs the risk of confusing the second jury into thinking it needs to compensate

25 for infringement outside what is at issue here. The instruction also states in the last sentence that

26 "Samsung disputes the amount of money damages that Apple is entitled to receive." First, as with

27 Apple's Proposed Preliminary Instruction No. 18, Apple states without qualification that it is

28 entitled to money damages without making reference to any burden of proof. Second, Samsung

disputes not only the amount of damages, but the type of damages Apple seeks.  The jury will need to decide whether Apple has met its evidentiary burden with respect to both issues.

Samsung's alternate version of this instruction is preferable as it lays out the essential information about this jury's task without any unnecessary commentary about the first trial. Samsung's instruction lists the specific products at issue and also includes an explanatory note that the three Samsung entities will generally be referred to collectively, but in some instances may be distinguished for a particular instruction.

## PROPOSED PRELIMINARY INSTRUCTION NO. 20 (SAMSUNG)

## THE PARTIES AND QUESTIONS TO BE DECIDED

To help you follow the evidence, I will now give you a summary of the parties and the issue to be decided in this trial.

The parties in this case are Apple Inc., which I will refer to as "Apple," and Samsung Electronics Company, Ltd.; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC, which I will refer to collectively as "Samsung," unless I think it is important to distinguish between these three entities for a specific instruction. Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC are wholly-owned subsidiaries of Samsung Electronics Company, Ltd.

Your sole job in this trial is to determine the type and amount of damages to be awarded to Apple in connection with five patents owned by Apple.  For the purposes of this trial, you should assume that each of Apple's patents are valid and infringed by one or more of the following 13 Samsung products:  Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail, Gem, Indulge, Infuse 4G, Nexus S 4G, Replenish, Transform, and Galaxy Tab 7.0 (3G).  However, you should also assume that Samsung's infringement of Apple's patents was not willful.

**Source:**

Adapted from Preliminary Instruction No. 20 (Dkt. No. 1427 at 22); 8/21/13 Hearing Tr. at 11:11-12:1.

**<u>Apple's Objections</u>**

Samsung's proposed instruction is misleading and misstates the facts in three ways.

First, Apple objects to Samsung's Proposed Preliminary Instruction No. 20 to the extent that it mentions the "type" of damages.  The jury at the first trial was only instructed that it should decide the amount of damages, not the type of damages to be awarded.  (*E.g.*, Dkt. No. 1903 at 49 (Final J.I. 35) ("If you find that either party infringed any valid and enforceable claim of the other side's patents, you must then determine the amount of damages to be awarded to the patent holder

1  to compensate it for the infringement.").) Indeed, the prior verdict form did not require the jury to

2  disclose the type of damages it was awarding. (*See* Dkt. No. 1931 at 15-16.) Samsung's additional

3  proposed language concerning the type of damages would instruct this jury differently than the

4  jury at the first trial, which creates the risk of inconsistent results and complicates appellate review

5  of the juries' verdicts.

6         Second, Apple also objects to the statement that the jury should "assume" that Apple's

7  patents are valid and infringed. The first jury rendered a verdict as to infringement, which is now

8  "law of the case." (April 29, 2013 H'rg Tr. at 47:24-48:3.) The first jury also rendered a verdict

9  that Apple's patents are not invalid. (Dkt. No. 1931 at 9.) Instructing the jury merely to "assume"

10 validity and infringement misstates the record and creates the risk that the new jury may

11 improperly revisit the first jury's findings. The jurors should be instructed that the first jury found

12 the patents valid and infringed and that they are not to revisit those findings, as set forth in Apple's

13 Proposed Preliminary Instruction No. 20.

14        Finally, Samsung improperly interjects the issue of willfulness into this instruction.

15 Willfulness is not at issue at the retrial, and it is irrelevant to the jury's calculation of damages.

16 Samsung presumably wants to point to this instruction during closing argument in order to argue

17 that the jury must disregard "copying documents" (even though such documents are highly

18 relevant to the parties' dispute over the demand for Apple's patented features, designs, and

19 products). Including an instruction on willfulness will only confuse the jury. The first jury found

20 that Samsung acted with subjective willfulness. Instructing the jury to assume that Samsung's

21 infringement was not willful will cause the jury to decide this case with a different understanding

22 than the first jury had. Affirmatively instructing the jury that to assume that Samsung's

23 infringement was not willful is contrary to the findings made by the first jury, invites inconsistent

24 results, and complicates appellate review of the two juries' verdicts together. Accordingly, no

25 instruction on willfulness should be given.

26

27

28

EXHIBIT A:  PROPOSED PRELIMINARY JURY INSTRUCTIONS
Case No. 11-cv-01846-LHK (PSG)                                                                    27

**PROPOSED PRELIMINARY INSTRUCTION NO. 20.1 (SAMSUNG)**

**INFRINGING AND NON-INFRINGING PRODUCTS**

For the purposes of this trial, you should assume that the following products infringe the following patents where marked with an x.

| Products Found to Infringe | Utility Patents | | | Design Patents | |
|---|---|---|---|---|---|
| | '163 | '381 | '915 | D'305 | D'677 |
| Captivate | | x | x | x | |
| Continuum | | x | x | x | |
| Droid Charge | x | x | x | x | |
| Epic 4G | x | x | x | x | |
| Exhibit 4G | x | x | x | | |
| Galaxy Prevail | x | x | x | | |
| Galaxy Tab | x | x | x | | |
| Gem | | x | x | x | |
| Indulge | | x | x | x | |
| Infuse 4G | x | x | x | x | x |
| Nexus S 4G | | x | x | | |
| Replenish | x | x | | | |
| Transform | | | x | | |

You should also assume for purposes of this trial that the following products do not infringe the following patents:

'163 — Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, Vibrant

'915 — Galaxy Ace, Intercept, Replenish

D'677 — Galaxy Ace

**Source:**

Amended Jury Verdict Form (Dkt. No. 1931).

**Apple's Objections**

Samsung's proposed instruction introduces four substantial errors. First, the present jury should not merely "assume" that the patents are infringed. It must be told that the jury or Court has determined that Samsung's products infringe. The first jury rendered a verdict as to infringement, which is now "law of the case." (April 29, 2013 H'rg Tr. at 47:24-48:3.) Instructing the jury merely to "assume" infringement misstates the record and creates the risk that the new jury may

improperly revisit the first jury's findings.  The jurors should be instructed that the first jury found the patents infringed and that they are not to revisit those findings, as set forth in Apple's Proposed Preliminary Instruction No. 20.

Second, the jury should be told that the patents at issue in the new trial were found to be valid.  This was a critical part of the prior verdict and, in the absence of an instruction on the issue, there is a substantial chance that the jury will improperly revisit the first jury's findings.

Third, the final sentences are not a proper summary of the prior jury's verdict, introduce new products not at issue in this trial, and omit critical information from the amended verdict form.  Samsung has hand selected a misleading subset of the prior verdict that it hopes to emphasize.  It fails to state that in addition to the 13 products at issue in this case, 13 other products infringed the one of more of the five patents in suit.  Among those, the jury concluded that Samsung willfully diluted Apple's trade dress by selling six products.  The jury further concluded that Samsung's conduct was subjectively willful and awarded over $640,000 million with respect to the prior products.  For example, the Vibrant, a product listed in the new sentences, violated an additional Apple design patent and diluted Apple's iPhone trade dress.  Samsung cannot selectively identify a portion of the amended verdict  and omit the remaining findings in which the jury overwhelmingly found Samsung to have infringed valid patents asserted by Apple.  The new language is an improper effort to suggest to the jury in the new trial that the jury in the new trial rendered a split verdict.  The final sentences are improper, incomplete and an misstatement of the prior verdict.

Finally, the final sentences are an improper attempt to support late disclosed and improper arguments and opinions included for the first time in Michael Wagner's new expert reports.  As discussed in Apple's motion to strike, the new theories are both a violation of the Court's "groundhog" day orders and lack a proper legal foundation.  It requires speculation as to the basis and evidence supporting the jury's prior verdict.  Further, it lacks any technical or other support to show that the products that did not infringe provided the same features and benefits that were provided by the patents.  It is irrelevant to the new trial.  These new theories should be stricken and Samsung's belated effort to build them into the jury instructions should be rejected.

**Samsung's Position**

1    If the Court finds it useful to include an instruction detailing which products were found to

2    infringe each specific patent-in-suit, Samsung believes its proposed preliminary instruction 20.1

3    provides a better option than the chart in Apple's proposed preliminary instruction 20.  In addition

4    to the objections Samsung raised against that instruction, Apple's chart provides information only

5    as to the products found to infringe the patents-in-suit, but not the products found to not infringe

6    those patents.  Such information is directly relevant to the second jury's determination of damages,

7    in particular its consideration of non-infringing alternatives.  Just as the second jury must rely on

8    the first jury's infringement findings, it should also be able to rely on its non-infringement findings

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED PRELIMINARY INSTRUCTION NO. 21 (APPLE)**

**OUTLINE OF TRIAL**

3       The trial will now begin.  First, each side may make an opening statement.  An opening

4   statement is not evidence.  It is simply an outline to help you understand what that party expects

5   the evidence will show.

6       The presentation of evidence will then begin.  Witnesses will take the witness stand and the

7   documents will be offered and admitted into evidence.

8       Apple will start by presenting its damages contentions.  Apple's witnesses will be

9   questioned by Apple's counsel in what is called direct examination. After the direct examination of

10  a witness is completed, Samsung has an opportunity to cross-examine the witness.  Apple has the

11  burden to persuade you of its damages by a preponderance of the evidence.  Proof by a

12  preponderance of the evidence means that you must decide whether something is more likely true

13  than not.

14      After Apple has presented its witnesses, Samsung will call its witnesses, who will also be

15  examined and cross-examined.  Samsung will present its evidence of what it believes Apple's

16  damages to be.

17      Apple will have the option to put on rebuttal evidence to any evidence offered by Samsung.

18      Because the evidence is introduced piecemeal, you need to keep an open mind as the

19  evidence comes in and wait for all the evidence before you make any decisions.  In other words,

20  you should keep an open mind throughout the entire trial.

21      After the evidence has been presented, I will give you final instructions on the law that

22  applies to the case, and the attorneys will make closing arguments. Closing arguments are not

23  evidence.  After the instructions and closing arguments, you will then decide the case.

24

25  **Source:**

26  Adapted from Preliminary Instruction No. 23 (Dkt. No. 1427 at 27).

27

28  **Samsung's Objections**

1    The parties' separate versions of this instruction are identical except for the last sentence of

2    the third paragraph.  There, Samsung objects to Apple's omission of the following sentence:

3    "While Apple is not required to prove its damages with mathematical precision, it must prove them

4    with reasonable certainty."  This is an integral part of the standard of proof in this trial, and Apple

5    agrees in its proposed final instructions numbers 21 and 31 that this is the standard.  Samsung

6    believes the jury should be fully instructed on the burden of proof at the outset so that the parties

7    can refer to the standard in opening statements.  By omitting part of the standard here, Apple

8    appears to want the jury to hear its damages case before it is properly instructed on how to weigh it.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROPOSED PRELIMINARY INSTRUCTION NO. 21 (SAMSUNG)

## OUTLINE OF TRIAL

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the witness stand and the documents will be offered and admitted into evidence.

Apple will start by presenting its damages contentions.  Apple's witnesses will be questioned by Apple's counsel in what is called direct examination. After the direct examination of a witness is completed, Samsung has an opportunity to cross-examine the witness.  Apple has the burden to persuade you of its damages by a preponderance of the evidence.  While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.

After Apple has presented its witnesses, Samsung will call its witnesses, who will also be examined and cross-examined.  Samsung will present its evidence of what it believes Apple's damages to be.

Apple will have the option to put on rebuttal evidence to any evidence offered by Samsung.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case, and the attorneys will make closing arguments. Closing arguments are not evidence.  After the instructions and closing arguments, you will then decide the case.

**Source:**

Adapted from Preliminary Instruction No. 23 (Dkt. No. 1427 at 27) and Final Instruction No. 35 (Dkt. No. 1903 at 49).

**Apple's Objections**

1    Preliminary Instruction No. 23 from the first trial referenced the burden of proof that

2  applied to each issue.  With respect to the preponderance of the evidence standard, Preliminary

3  Instruction No. 23 explained that the jury would have to decide whether something is more likely

4  true than not. More detailed instructions concerning the applicable burdens of proof were included

5  in the final jury instructions, such as Final Jury Instruction No. 35.  Rather than follow the Court's

6  model, Samsung's Proposed Preliminary Instruction No. 21 injects into the preliminary

7  instructions the type of detailed information about burdens of proof that the Court included only in

8  the final jury instructions in the first trial.  As was the case with the first jury, the new jury should

9  receive a preliminary instruction that identifies the correct standard, preponderance of the

10  evidence, and explains that proof by a preponderance of the evidence means that the jury must

11  decide whether something is more likely true than not, as set forth in Apple's Proposed

12  Preliminary Instruction No. 21.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1
2

# TABLE OF CONTENTS

**Page**

JOINT PROPOSED FINAL JURY INSTRUCTION No. 1 DUTY OF JURY ...........................1

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2 BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE................................................................2

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3 WHAT IS EVIDENCE .................3

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4 WHAT IS NOT EVIDENCE ........4

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5 EVIDENCE FOR LIMITED PURPOSE.......................................................................................................................5

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 6 CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE ..............................................................................................6

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7 CHARTS AND SUMMARIES IN EVIDENCE ..........................................................................................7

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 8 DIRECT AND CIRCUMSTANTIAL EVIDENCE ..................................................................................8

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9 CREDIBILITY OF WITNESSES ....................................................................................................................9

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10 IMPEACHMENT EVIDENCE—WITNESS.................................................................................................10

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11 TAKING NOTES .....................11

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12 DEPOSITION IN LIEU OF LIVE TESTIMONY........................................................................................................12

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13 USE OF INTERROGATORIES OF A PARTY...................................................................................13

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14 EXPERT OPINION ...................14

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15 USE OF DEVICES DURING DELIBERATIONS ............................................................................................15

PROPOSED FINAL JURY INSTRUCTION NO. 16 (APPLE) SUMMARY OF CONTENTIONS..........................................................................................................20

PROPOSED FINAL JURY INSTRUCTION NO. 16 (SAMSUNG) SUMMARY OF CONTENTIONS..........................................................................................................22

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17 DUTY TO DELIBERATE .........23

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 18 COMMUNICATION WITH COURT ...............................................................................................................24

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19 RETURN OF VERDICT...........25

PROPOSED FINAL JURY INSTRUCTION NO. 20 (SAMSUNG) UTILITY PATENTS—INTERPRETATION OF CLAIMS.................................................................27

PROPOSED FINAL JURY INSTRUCTION NO. 21 (APPLE) UTILITY PATENT DAMAGES—BURDEN OF PROOF................................................................................29

# TABLE OF CONTENTS
(continued)

Page

PROPOSED FINAL JURY INSTRUCTION NO. 21 (SAMSUNG) UTILITY PATENT DAMAGES—BURDEN OF PROOF........................................................................31

PROPOSED FINAL JURY INSTRUCTION NO. 22 (APPLE) UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY ................................................33

PROPOSED FINAL JURY INSTRUCTION NO. 22 (SAMSUNG) UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY ................................................35

PROPOSED FINAL JURY INSTRUCTION NO. 23 (SAMSUNG) UTILITY PATENT DAMAGES — LOST PROFITS — CAUSATION ................................................37

PROPOSED FINAL JURY INSTRUCTION NO. 24 (APPLE) UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER ................................39

PROPOSED FINAL JURY INSTRUCTION NO. 24 (SAMSUNG) UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER ................................41

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 25 UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT ................................43

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26 UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE ................................44

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 27 UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT ................................45

PROPOSED FINAL JURY INSTRUCTION NO. 28 (APPLE) UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION ................................46

PROPOSED FINAL JURY INSTRUCTION NO. 28 (SAMSUNG) UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION ................................50

PROPOSED FINAL JURY INSTRUCTION NO. 29 (APPLE) UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ................................54

PROPOSED FINAL JURY INSTRUCTION NO. 29 (SAMSUNG) UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ................................56

PROPOSED FINAL JURY INSTRUCTION NO. 30 (SAMSUNG) DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS ................................59

PROPOSED FINAL JURY INSTRUCTION NO. 31 (APPLE) DESIGN PATENT DAMAGES—BURDEN OF PROOF........................................................................62

PROPOSED FINAL JURY INSTRUCTION NO. 31 (SAMSUNG) DESIGN PATENT DAMAGES—BURDEN OF PROOF........................................................................64

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 32 DESIGN PATENT INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS ................................66

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 33 DESIGN PATENT DAMAGES—LOST PROFITS........................................................................67

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34 DESIGN PATENT DAMAGES—REASONABLE ROYALTY ................................68

1

2

**TABLE OF CONTENTS**
(continued)

3
**Page**

PROPOSED FINAL JURY INSTRUCTION NO. 35 (APPLE) DESIGN PATENT
DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ..................................................69

PROPOSED FINAL JURY INSTRUCTION NO. 35 (SAMSUNG) DESIGN PATENT
DAMAGES—DATE OF COMMENCEMENT—PRODUCTS ..................................................71

JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36 MONETARY
REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE............................................73

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINT PROPOSED FINAL JURY INSTRUCTION NO. 1

### DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**Source:**

Final Jury Instruction No. 1 (Dkt. No. 1903 at 8).

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 2**

2

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

3

When a party has the burden of proof on any claim or defense by a preponderance of the

4

evidence, it means you must be persuaded by the evidence that the claim or defense is more

5

probably true than not true.

6

You should base your decision on all of the evidence, regardless of which party presented

7

it.

8

9

**Source:**

10

Final Jury Instruction No. 2 (Dkt. No. 1903 at 9).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 3**

**WHAT IS EVIDENCE**

The trial is now over.  The evidence you are to consider in deciding what the facts are consists of:

      1.     the sworn testimony of any witness;

      2.     the exhibits which are received into evidence; and

      3.     any facts to which the lawyers have agreed.

**Source:**

Final Jury Instruction No. 5 (Dkt. No. 1903 at 12).

1

## JOINT PROPOSED FINAL JURY INSTRUCTION NO. 4

2

## WHAT IS NOT EVIDENCE

3        In reaching your verdict, you may consider only the testimony and exhibits that were

4 received into evidence.  Certain things are not evidence, and you may not consider them in

5 deciding what the facts are.  I will list them for you:

6        1.      Arguments and statements by lawyers are not evidence.  The lawyers are not

7                witnesses.  What they said in their opening statements and throughout the trial, and

8                what they will say in their closing arguments or at other times are all intended to

9                help you interpret the evidence.  But these arguments and statements are not

10               evidence.  If the facts as you remember them differ from the way the lawyers have

11               stated them, your memory of them controls.

12       2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to

13               their clients to object when they believe a question is improper under the rules of

14               evidence.  You should not be influenced by the objection or by the court's ruling on

15               it.

16       3.      Testimony that has been excluded or stricken, or that you have been instructed to

17               disregard, is not evidence and must not be considered.  In addition, sometimes

18               testimony and exhibits are received only for a limited purpose; when I give a

19               limiting instruction, you must follow it.

20       4.      Anything you may have seen or heard when the court was not in session is not

21               evidence.  You are to decide the case solely on the evidence received at the trial.

22

23 **Source:**

24 Final Jury Instruction No. 6 (Dkt. No. 1903 at 13).

25

26

27

28

1

## JOINT PROPOSED FINAL JURY INSTRUCTION NO. 5

2

## EVIDENCE FOR LIMITED PURPOSE

3

   Some evidence may have been admitted for a limited purpose only.  You must consider it

4

only for that limited purpose and for no other.

5

6

**Source:**

7

Final Jury Instruction No. 7 (Dkt. No. 1903 at 13).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 6**

2

**CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE**

3        Certain charts and slides not received in evidence have been shown to you in order to help

4    explain the contents of books, records, documents, or other evidence in the case.  They are not

5    themselves evidence or proof of any facts.

6

7    **Source:**

8    Final Jury Instruction No. 8 (Dkt. No. 1903 at 15).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 7**

**CHARTS AND SUMMARIES IN EVIDENCE**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  You may use those charts and summaries as evidence, even though the underlying documents and records are not here.  You should give them only such weight as you think they deserve.


**Source:**

Final Jury Instruction No. 9 (Dkt. No. 1903 at 16).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 8**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**Source:**

Final Jury Instruction No. 10 (Dkt. No. 1903 at 17).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 9**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testified about it.

In considering the testimony of any witness, you may take into account:

1.      the opportunity and ability of the witness to see or hear or know the things testified to;

2.      the witness's memory;

3.      the witness's manner while testifying;

4.      the witness's interest in the outcome of the case and any bias or prejudice;

5.      whether other evidence contradicted the witness's testimony;

6.      the reasonableness of the witness's testimony in light of all the evidence; and

7.      any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Source:**

Final Jury Instruction No. 11 (Dkt. No. 1903 at 18).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 10**

**IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness lied under oath or gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Source:**

Final Jury Instruction No. 12 (Dkt. No. 1903 at 19).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 11**

**TAKING NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

**Source:**

Final Jury Instruction No. 13 (Dkt. No. 1903 at 20).

## JOINT PROPOSED FINAL JURY INSTRUCTION NO. 12

## DEPOSITION IN LIEU OF LIVE TESTIMONY

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**Source:**

Final Jury Instruction No. 14 (Dkt. No. 1903 at 21).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 13**

**USE OF INTERROGATORIES OF A PARTY**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Source:**

Final Jury Instruction No. 15 (Dkt. No. 1903 at 22).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 14**

**EXPERT OPINION**

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Source:**

Final Jury Instruction No. 16 (Dkt. No. 1903 at 23).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 15**

**USE OF DEVICES DURING DELIBERATIONS**

**<u>Device Handling Directions</u>**

The physical devices you received are evidence in this trial.

You may use them in your deliberations, and may connect to the Internet through the Web Browser application, but must not alter or modify the devices in any way.

Some of the devices have SIM cards in their packaging.  These SIM cards are not to be inserted into the phones.

Some of the devices have a mobile data connection, and you will not need to take any additional action to use the Web Browser application.

Others must first be connected to the Court's Wi-Fi network to access the Internet.

Once connected, you must decline any software update notifications that may be presented to you.

You also must not download any content, such as apps, music, photographs, or games, to the devices.

*Connecting to the Internet*

To connect a device to the Court's Wi-Fi network, select "USDCSJ01" from the list of available wireless networks, as depicted below.



From the Applications menu, select the Web Browser application.



From the Court's Wi-Fi log in page, scroll to the bottom and click on the blue "Connect!" button.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



26   *Declining System Update Notifications*

27         Some devices may display a "System update" notification like the ones below.

28







If you see such a screen, you must decline the request to update the system.  Select "Install later" or press the "home" or "back" button to exit the notification screen.



**Source:**

Final Jury Instruction No. 17 (Dkt. No. 1903 at 24-28).

**PROPOSED FINAL JURY INSTRUCTION NO. 16 (APPLE)**

**SUMMARY OF CONTENTIONS**

I will now again summarize for you each side's positions on the issues you must decide.

Apple seeks money damages from Samsung for infringing the '381, '915, '163, D'677, and D'305 patents through Samsung's sales of twelve infringing smartphone products and one infringing tablet computer product.

Samsung disputes the amount of money damages that Apple is entitled to receive as a result of Samsung's infringement.

A prior jury already decided that Samsung infringed Apple's patents through the sale of the smartphone and tablet devices at issue in this trial and that Apple's patents are valid.  You are not to revisit those issues.  You will only need to decide the amount of money damages to award to Apple as a result of Samsung's infringement.


**Source:**

Adapted from Final Jury Instruction No. 18 (Dkt. No. 1903 at 29-30).


**Samsung's Objections**

Samsung objects that this instruction is unnecessary in light of the preliminary instructions on this issue.  In fact, the Court previously stated that it wanted only a preliminary instruction setting out for the jury what issues were and were not before it.  (8/21/13 Hearing Tr. at 11:11-12:1 ("I do envision that the preliminary jury instructions would have to give some indication to the jury as to what issue is before them and what issue they do not need to decide . . . I don't intend to give any other statement beyond a preliminary jury instruction, and I expect this issue to, at most, be one or two sentences of the preliminary jury instructions").  Samsung further objects that Apple's summary of contentions instruction is confusing and contains unnecessary and inaccurate information.  In the second and fourth paragraphs, Apple's instruction reads as if all thirteen Samsung products were found to infringe all five patents, which is not true and could lead to serious mistakes by the jury in determining damages.  Apple also mischaracterizes Samsung's

contentions, which are that it disputes the types as well as the amounts of Apple's damages claims. Apple's instruction also unnecessarily refers once again to the first jury. The second jury's task is the same regardless whether the infringement was found by a prior jury. Referencing the prior jury can only be seen as another attempt by Apple to make repetitive comments about Samsung having been found to infringe, or having lost the first trial. Although Samsung believes that no summary of contentions instruction need be given here, Samsung's alternative instruction lays out the contentions in a neutral and accurate fashion and does not make the errors or the unnecessary commentary that Apple's does. If any Summary of Contentions instruction is to be given after the close of evidence it should be Samsung's.

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 16 (SAMSUNG)**

**SUMMARY OF CONTENTIONS**

3   I will now summarize for you each side's positions on the issues you must decide.

4   Apple seeks money damages for Samsung's sales of 13 products that infringe one or more

5   of the five Apple patents involved in this trial.

6   Samsung disputes the types and amounts of damages Apple claims.

7   Your sole job in this trial is to determine the type and amount of damages to be awarded to

8   Apple.

9

10  **Source:**

11  Adapted from Final Jury Instruction No. 18 (Dkt. No. 1903 at 29-30).

12

13  **Apple's Objections**

14

15  Apple objects to Samsung's Proposed Final Instruction No. 16 to the extent that it mentions

16  the "types" of damages.  The jury at the first trial was only instructed that it should decide the

17  amount of damages, not the type of damages to be awarded.  (*E.g.*, Dkt. No. 1903 at 49 (Final J.I.

18  35) ("If you find that either party infringed any valid and enforceable claim of the other side's

19  patents, you must then determine the amount of damages to be awarded to the patent holder to

20  compensate it for the infringement.").)  Indeed, the prior verdict form did not require the jury to

21  disclose the type of damages it was awarding.  (*See* Dkt. No. 1931 at 15-16.)  Samsung's additional

22  proposed language concerning the type of damages would instruct this jury differently than the

23  jury at the first trial, which creates the risk of inconsistent results and complicates appellate review

24  of the juries' verdicts.  Samsung omits any statement regarding how the prior verdict of

25  infringement and validity should be treated.  Apple's proposed instruction appropriately states that

26  none of those issues can be revisited.

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 17**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Source:**

Final Jury Instruction No. 19 (Dkt. No. 1903 at 31).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 18**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**Source:**

Final Jury Instruction No. 20 (Dkt. No. 1903 at 32).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 19**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**Source:**

Final Jury Instruction No. 21 (Dkt. No. 1903 at 33).

**UTILITY PATENT JURY INSTRUCTIONS**

**PROPOSED FINAL JURY INSTRUCTION NO. 20 (SAMSUNG)**

**UTILITY PATENTS—INTERPRETATION OF CLAIMS**

Before you make any award of damages for infringement of Apple's utility patents, you will need to understand the patent claims.  A patent's claims define what is covered by the patent.  Utility patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the utility patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the amount of damages you should award.  The decision regarding the amount of damages to award  is yours to make.

- U.S. Patent No. 7,469,381

The term "displaying" means "showing or revealing to the viewer."

The term "electronic document" means "a document stored in a digital format."  An "electronic document" includes, but is not limited to, a web page; a digital image; a word processing, spreadsheet or presentation document; or a list of items in a digital format.  An electronic document need not be stored in a single file.

The term "first direction" does not require a strictly linear finger movement.

The term "edge of the electronic document" has its plain and ordinary meaning.  An edge of an electronic document is not limited to an external edge and may be internal.

- U.S. Patent No. 7,844,915

The term "invokes" means "causes" or "causes a procedure to be carried out."

For claim language where I have not provided you with any meaning, you should apply the claim language's plain and ordinary meaning.


**Source:**

Adapted from Final Jury Instruction No. 22 (Dkt. No. 1903 at 35).

1

**Apple's Objections**

2

 Samsung's Proposed Final Instruction No. 20 is the latest of Samsung's efforts to relitigate

3

infringement and validity.  (*See, e.g.*, Dkt. No. 2415 at 1, 3 (objecting to Samsung proposed

4

invalidity and infringement exhibits).)  As the Court held when it rejected Samsung's Seventh

5

Amendment argument, the first jury rendered a verdict as to infringement, which is now "law of

6

the case."  (April 29, 2013 H'rg Tr. at 47:24-48:3.)  The first jury also rendered a verdict that

7

Apple's patents are not invalid.  (Dkt. No. 1931 at 9.)  This jury will not have occasion to "apply

8

the claim language" as stated in Samsung's proposed instruction, and to suggest that the jury

9

should do so is inviting error.

10

11

**Samsung's Position**

12

 This instruction sets forth the Court's claim construction language from Final Jury

13

Instruction No. 22 in the first trial. (Dkt. No. 1903 at 35.)  Samsung submits this instruction not to

14

re-litigate issues of infringement and validity as Apple claims, but rather because a proper

15

understanding of the scope of the patents-in-suit is essential to the jury's assessment of the value of

16

the patented features and thus Apple's damages claim and the damages award it will be asked to

17

render.  Indeed, a proper understanding of what is covered by the patented features is directly

18

relevant to the *Georgia-Pacific* analysis. *See Georgia-Pacific Corp. v. United States Plywood*

19

*Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.

20

1971) (Factor #9: "The utility and advantages of the patent property over the old modes or devices,

21

if any, that had been used for working out similar results;" Factor #10: "The nature of the patented

22

invention;" Factor #13: "The portion of the realizable profit that should be credited to the invention

23

as distinguished from non-patented elements . . .").  Moreover, the scope of the patent claims goes

24

directly to Apple's claim for lost profits and, in particular, whether Apple will be able to "show

25

that but for the infringement, there is a reasonable probability that it would have made sales that

26

Samsung made of the infringing products."  (*See* Final Jury Instruction No. 36, Dkt. No. 1903 at

27

50.)  Without instruction as to the construction of Apple's patent claims, the jury will not be able to

28

properly determine their value and the damages it should award to Apple.

**PROPOSED FINAL JURY INSTRUCTION NO. 21 (APPLE)**

**UTILITY PATENT DAMAGES—BURDEN OF PROOF**

I will instruct you about the measure of damages for utility patent infringement.

You must determine the amount of money damages to award to Apple for Samsung's infringement. The amount of those damages must be adequate to compensate Apple for the infringement. A damages award should put Apple in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate Apple and not to punish Samsung.

Apple has the burden to persuade you of the amount of its damages. You should award only those damages that Apple proves it suffered by a preponderance of the evidence. While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Apple is not entitled to damages that are remote or speculative.

**Source:**

Adapted from Final Jury Instruction No. 35 (Dkt. No. 1903 at 49).

**<u>Samsung's Objections</u>**

Apple's proposed instruction deviates from the Court's original Final Jury Instruction No. 35 (Dkt. No. 1903 at 49) in a way that alters the Court's language to make it more favorable to Apple. Where the Court previously used the neutral phrase "patent holder" in the last sentence of paragraph 2 to make clear that it was giving an instruction about patent damages generally, Apple has substituted its own name instead. The Court's prior version matches ND Cal Model Instruction 5.1, which does not contemplate inserting the parties' names into that sentence, as it does in other places. Apple also omits the Court's useful prior statement in paragraph 1, also taken from Model Instruction 5.1, that in instructing the jury about damages, it is not taking a position on any issue.

1      Samsung's alternative proposed instruction is preferable in several ways.  It makes clear

2   that the jury is not simply deciding an amount of damages, but also must decide the type of

3   damages to award.  Second, Samsung's instruction retains the Court's prior admonition that

4   although it is instructing the jury on damages, it takes no position on how the jury should decide

5   any issue.  Third, it maintains the neutral language at the end of paragraph 2 used before by the

6   Court to describe the important general principle that patent damages are not meant to punish, but

7   only to compensate.

## PROPOSED FINAL JURY INSTRUCTION NO. 21 (SAMSUNG)

## UTILITY PATENT DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages for claims of utility patent infringement. By instructing you on damages, I am not suggesting the type or amount of damages you should award.  You must determine the type and amount of money damages to be awarded to the patent holder to compensate it for the infringement.

The amount of those damages must be adequate to compensate Apple for the infringement. A damages award should put Apple in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Apple has the burden to persuade you of the amount of its damages.  You should award only those damages that Apple proves it suffered by a preponderance of the evidence.  While Apple is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Apple is not entitled to damages that are remote or speculative.

**Source:**

Adapted from Final Jury Instruction No. 35 (Dkt. No. 1903 at 49).

**<u>Apple's Objections</u>**

Apple objects to the inclusion of the sentence "By instructing you on damages, I am not suggesting the type or amount of damages you should award" in Samsung's Proposed Final Instruction No. 21.  At the first trial, it was appropriate to qualify this damages instruction by stating that it was not meant to suggest which party should prevail on the merits because the issue of liability was an open question.  Now that liability has been decided, however, there is no need to qualify the instruction.  Unlike at the first trial, the damages instructions in this trial *are* intended to suggest that the jury should award damages.

1    Apple further objects to Samsung's Proposed Final Instruction No. 21 to the extent that it

2  mentions the "type" of damages.  It is misleading and legally incorrect to suggest that Apple has

3  the burden to prove the type of damages as a threshold to receiving damages.  Indeed, Apple is

4  statutorily entitled to not less than a reasonable royalty under 35 U.S.C. § 284 without meeting any

5  separate burden to prove the type of damages.  Moreover, the jury at the first trial was not

6  instructed that Apple had any burden to prove the type of damages.  (*See* Dkt. No. 1903 at 49 (Final

7  J.I. 35).)  Nor did the verdict form require the jury to disclose the type of damages it was awarding.

8  See Dkt. No. 1931 at 15-16.  Samsung's additional proposed language concerning the type of

9  damages would instruct this jury differently than the jury at the first trial, which creates the risk of

10  inconsistent results and complicates appellate review of the juries' verdicts.

11    Likewise, Apple objects to Samsung's Proposed Final Instruction No. 21 because it does

12  not state that the jury "must" determine the amount of money damages to award Apple.  Apple is

13  undeniably entitled to receive damages now that Samsung is an adjudicated infringer.  *See* 35

14  U.S.C. § 284 ("Upon finding for the claimant the court *shall* award the claimant damages adequate

15  to compensate for the infringement …." (emphasis added)).  Consistent with that statutory

16  mandate, the Court instructed the jury at the first trial that it "must" award damages upon a finding

17  of infringement of a valid patent.  (*See* Dkt. No. 1903 at 49 (Final J.I. 35).)  To avoid the risk of

18  inconsistent verdicts and to facilitate appellate review of the juries' verdicts, the Court should give

19  the same instruction here.

20

21

22

23

24

25

26

27

28

1    **PROPOSED FINAL JURY INSTRUCTION NO. 22 (APPLE)**

2    **UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY**

3          In this case, Apple seeks to recover lost profits for some of Samsung's sales of infringing

4    products, and a reasonable royalty on the rest of Samsung's infringing sales.

5          To recover lost profits for infringing sales, Apple must show that but for the infringement,

6    there is a reasonable probability that it would have made sales that Samsung made of the infringing

7    products.  Apple must show the share of Samsung's sales that it would have made if the infringing

8    products had not been on the market.

9

10   **Source:**

11   Adapted from Final Jury Instruction No. 36 (Dkt. No. 1903 at 50); *Versata Software, Inc. v. SAP*

12   *Am., Inc.*, ___ F.3d ___, 2013 U.S. App. LEXIS 8838, at *25 (Fed. Cir. May 1, 2013); *Nuance v.*

13   *ABBYY*, No. 3:08-cv-02912-JSW, Dkt. No. 895 at 26, Dkt. No. 921 at 2016 (N.D. Cal. Aug. 22,

14   2013) (Whyte, J.).

15

16   **Samsung's Objections**

17         Apple's proposed instruction deletes the last paragraph from the Court's original Final Jury

18   Instruction No. 36 (Dkt. No. 1903 at 50).  The Court's prior instruction (and Samsung's proposed

19   instruction here) requires the jury to "determine which profits derive from the patented invention .

20   . . and not from other [unpatented] features of these infringing products." The  language Apple

21   deletes appears in the Model Patent Jury Instructions for the Northern District of California

22   (Model Instruction 5.2) and is firmly grounded in both Supreme Court and Federal Circuit

23   precedent. *See, e.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (patentees "must in every case

24   give evidence tending to separate or apportion . . . the patentee's damages between the patented

25   feature and the unpatented features"); *Ferguson Beauregard v. Mega Sys.*, LLC, 350 F.3d 1327,

26   1346 (Fed. Cir. 2003) ("The district court therefore failed to distinguish the allocation of profits

27   that would have been made 'but for' the infringement of the '376 patent with the profits that could

28   fairly be allocated to" other features not covered by the patent).  Apple's attempt to depart from the

1   original final Jury Instruction and the Model Patent Jury Instruction mischaracterizes the Federal

2   Circuit's decision in *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed.

3   Cir. 2009) and Apple's reasoning similarly conflates the first and second *Panduit* factors.  It is the

4   second *Panduit* factor that requires a showing of consumer demand for the patented features (*see*

5   *DePuy Spine*, 567 F.3d at 1330-31), and the final paragraph of Final Jury Instruction No. 36

6   accurately represents the four-factor *Panduit* lost profits analysis.  *DePuy Spine* and *Versata*

7   *Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013) (using similar language and

8   expressly citing to *DePuy Spine*, but with no suggestion that lost profits on a software patent could

9   include recoveries on revenues from hardware, which Apple seeks here) are no basis for

10  reconsidering arguments the Court has rejected on multiple occasions. Moreover, Apple points to

11  jury instructions given Judge White in *Nuance v. ABBYY*, but fails to cite anything that would

12  indicate Judge White's reasoning in departing from the model instruction. This instruction should

13  not be modified as Apple urges, and should include, as does Samsung's proposed instruction, the

14  allocation language from the Court's original Final Jury Instruction No. 36 and the Model Patent

15  Jury Instructions.

1    **PROPOSED FINAL JURY INSTRUCTION NO. 22 (SAMSUNG)**

2    **UTILITY PATENT DAMAGES — LOST PROFITS — GENERALLY**

3    In this case, Apple seeks to recover lost profits for some of Samsung's sales of infringing

4    products, and a reasonable royalty on the rest of Samsung's infringing sales.

5    To recover lost profits for infringing sales, Apple must show that but for the infringement,

6    there is a reasonable probability that it would have made sales that Samsung made of the infringing

7    products.  Apple must show the share of Samsung's sales that it would have made if the infringing

8    products had not been on the market.

9    You must allocate the lost profits based upon the customer demand for the patented feature

10   of the infringing products.  That is, you must determine which profits derive from the patented

11   invention that Samsung sells, and not from other features of the infringing products.

12

13   **Source:**

14   Adapted from Final Jury Instruction No. 36 (Dkt. No. 1903 at 50).

15

16   **Apple's Objections**

17   The Federal Circuit has recently made clear that lost profits should not be allocated based

18   upon the consumer demand for the patented features of the infringing products.  *See Versata*

19   *Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013) (holding that the lost profits

20   analysis under *Panduit* does not "require any allocation of consumer demand among the various

21   limitations recited in a patent claim").  Although Samsung's proposed instruction, like the Court's

22   prior Final Jury Instruction No. 36, tracks the language from Northern District of California Model

23   Patent Jury Instruction No. B.5.2, the statement in the model instruction concerning the allocation

24   of lost profits cannot be reconciled with *Versata*.  Indeed, in other cases recently tried in this

25   district, the court has omitted the model instruction's statement on allocation to comport with the

26   Federal Circuit's recent guidance in *Versata*.  *See Nuance v. ABBYY*, No. 3:08-cv-02912-JSW,

27   Dkt. No. 895 at 26 (N.D. Cal. Aug. 20, 2013) (White, J.); *id.*, Dkt. No. 921 at 2016.  The Court

28   should do the same here and reject Samsung's Proposed Instruction No. 22, which erroneously

states that lost profits should be allocated according to the consumer demand for the patented features.

**PROPOSED FINAL JURY INSTRUCTION NO. 23 (SAMSUNG)**

**UTILITY PATENT DAMAGES — LOST PROFITS — CAUSATION**

Where the infringing product includes many features of which only one or a small minority infringe the patent-in-suit, the patent holder may recover damages for lost profits only if it proves a sufficiently strong causal nexus between the infringing feature and the alleged lost sales. It is not enough for the patent holder to show that it lost sales to the infringing product. The patent holder must show that the patented feature drives consumer demand for the infringing product.

**Source:**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374-75 (Fed. Cir. 2012).

**Apple's Objections**

Samsung's new Proposed Final Instruction No. 23 is contrary to the Federal Circuit's lost profits cases. The Federal Circuit has expressly held that proof of consumer demand for the specific patented features is not required in order to award lost profits. *See Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1360 (Fed. Cir. 2012) (rejecting argument that the patentee is not entitled to lost profits because it failed to "link market demand with the claimed fringe-effect capacitance limitation"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (holding that proof of lost profits "does not require any allocation of consumer demand among the various limitations recited in a patent claim"). Rather, the availability of lost profits depends upon demand for the patented product as a whole, not any of the specific patented features. *Presidio*, 702 F.3d at 1360; *DePuy Spine*, 567 F.3d at 1330. Indeed, the Court previously excluded the opinion offered by Samsung's expert that proof of demand for the patented features is required under the first *Panduit* factor as "contrary to law." Dkt. No. 1157 at 10. Samsung relies entirely on inapposite preliminary injunction decisions and cites no lost profits cases as supporting its novel rule that proof of a consumer demand for the patented features is required.

1    Not only is Samsung's proposed instruction legally erroneous, but it also was not an

2  instruction given to the jury in the first trial.  Adding a new instruction such as this creates a high

3  risk of inconsistent outcomes and complicates appellate review of the juries' verdicts from the first

4  trial and new trial together.  The Court therefore should reject Samsung's Proposed Final

5  Instruction No. 23.

6

7  **Samsung's Position**

8    Northern District of California Model Patent Jury Instruction No. 5.2, adopted by the Court

9  as Final Jury Instruction No. 36 in the first trial, sets forth the general requirement that to recover

10  lost profits for infringing sales, the patent holder "must show that but for the infringement, there is

11  a reasonable probability that it would have made sales that [alleged infringer] would have made of

12  the infringing product."  The Federal Circuit has recently addressed the requisite causal nexus in

13  cases like this one "where the accused product includes many features of which only one (or a

14  small minority) infringe."  *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 695 F.3d 1370, 1374 (Fed. Cir.

15  2012).  As this Court recently pointed out, "The Federal Circuit made clear in *Apple II* that

16  consumer demand for a *general* feature of the type covered by a patent was not sufficient; Apple

17  must instead show that consumers buy the infringing product specifically because it is equipped

18  with the *patented* feature. (Dkt. 2197 at 8-9 (citing *Apple II*, 695 F.3d 1370, 1376); *see also id.* at

19  10-11 (Apple failed to provide evidence for consumer demand driven by its utility

20  patents).)  Although the Federal Circuit's decisions in *Apple I and Apple II* involved claims for

21  injunctive relief, the principle applies with equal force in the context of claims for lost

22  profits.  Particularly where, as here, the patented features constitute discrete parts of complex,

23  multi-featured products, it is not enough for the patent holder to show that it lost sales to the

24  infringing product.  The patent holder should be required to show that the patented feature drove

25  consumer demand for the infringing product.  Samsung's proposed instruction will properly guide

26  the jury in determining whether Apple has established the requisite causal nexus to recover

27  damages for lost profits.

28

1
2
3

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (APPLE)**

**UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

Apple is entitled to lost profits if it proves all of the following:

4    1.    that there was demand for the patented products;

5    2.    that there were no non-infringing substitutes for each of the infringing products, or,

6          if there were, the number of the sales of each product made by Samsung that Apple

7          would have made despite the availability of other non-infringing substitutes.  An

8          alternative may be considered available as a potential substitute even if it was not

9          actually on sale during the infringement period.  Factors suggesting that the

10         alternative was available include whether the material, experience, and know-how

11         for the alleged substitute were readily available.  Factors suggesting that the

12         alternative was not available include whether the material was of such high cost as

13         to render the alternative unavailable and whether Samsung had to design or invent

14         around the patented technology to develop an alleged substitute;

15   3.    that Apple had the manufacturing and marketing capacity to make any infringing

16         sales actually made by Samsung and for which Apple seeks an award of lost profits;

17         and

18   4.    the amount of profit that Apple would have made if Samsung had not infringed.

19
20   **Source:**

21   Adapted from Final Jury Instruction No. 37 (Dkt. No. 1903 at 51).

22
23   **Samsung's Objections**

24         Samsung objects to Ms. Davis's use of new design periods in her lost profits opinion as

25   contrary to the this Court's evidentiary rulings and as contrary to Federal Circuit law.  (*See*

26   Samsung's Motion to Strike, Dkt. No. 2386 at 1-4.)  Apple contends, incorrectly,  that the

27   hypothetical start date of design around periods is question of fact.  (*See* Apple's Opposition to

28   Motion to Strike , Dkt No. 2407-03 at 2-3.)  Even if the Court allows Ms. Davis to present to the

jury the question of when Samsung would have hypothetically started to design around, it is indisputable that the relevant time period for determining availability of a non-infringing substitute is the entire period during which Samsung is presumed to have infringed Apple's patents. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349-51 (Fed. Cir. 1999). The Court should instruct the jury to consider the availability of a non-infringing substitute during the presumed time of infringement. The only difference between the parties' competing versions of this instruction is that Samsung includes this language while Apple does not. Accordingly, the Court should adopt Samsung's proposed instruction.

1

**PROPOSED FINAL JURY INSTRUCTION NO. 24 (SAMSUNG)**

2

**UTILITY PATENT DAMAGES—LOST PROFITS—FACTORS TO CONSIDER**

3

Apple is entitled to lost profits if it proves all of the following:

4

    1.      that there was demand for the patented products;

5

    2.      that there were no non-infringing substitutes for each of the infringing products, or,

6

if there were, the number of the sales of each product made by Samsung that Apple

7

would have made despite the availability of other non-infringing substitutes.  The

8

time period relevant to determining availability of a non-infringing substitute is the

9

entire period during which Samsung is presumed to have infringed Apple's

10

patents.  An alternative may be considered available as a potential substitute even if

11

it was not actually on sale during the infringement period.  Factors suggesting that

12

the alternative was available include whether the material, experience, and

13

know-how for the alleged substitute were readily available.  Factors suggesting that

14

the alternative was not available include whether the material was of such high cost

15

as to render the alternative unavailable and whether Samsung had to design or

16

invent around the patented technology to develop an alleged substitute;

17

    3.      that Apple had the manufacturing and marketing capacity to make any infringing

18

sales actually made by Samsung and for which Apple seeks an award of lost profits;

19

and

20

    4.      the amount of profit that Apple would have made if Samsung had not infringed

21

**Source:**

22

Adapted from Final Jury Instruction No. 37 (Dkt. No. 1903 at 51); *Grain Processing Corp. v. Am.*

23

*Maize-Prods. Co.*, 185 F.3d 1341, 1349-51 (Fed. Cir. 1999).

24

<u>**Apple's Objections**</u>

25

        Apple objects to the inclusion of the highlighted sentence, which was not included in the

26

Court's final jury instructions and is not included in the Northern District of California model jury

27

instruction.  The Federal Circuit has held that "[t]he critical time period for determining

28

availability of an alternative is *the period of infringement for which the patent owner claims*

*damages*, i.e., the 'accounting period.'"  *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185

F.3d 1341, 1353 (Fed. Cir. 1999) (emphasis added).  Despite this clear holding, Samsung asks the Court to insert the following sentence into the Ninth Circuit model jury instruction that is in direct conflict with this law:  "The time period relevant to determining availability of a non-infringing substitute is *the entire period during which Samsung is presumed to have infringed* Apple's patents."  Samsung's proposed insertion is also vague and confusing for failing to define when Samsung is "presumed to have infringed."  The Court should reject Samsung's Proposed Final Jury Instruction No. 24, and should use instead the Northern District of California model jury instruction delivered at the first trial.  Doing so will avoid the risk of inconsistent verdicts and facilitate appellate review of the juries' verdict.

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 25**

**UTILITY PATENT DAMAGES—LOST PROFITS—AMOUNT OF PROFIT**

Apple may calculate its lost profits on any lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

**Source:**

Final Jury Instruction No. 38 (Dkt. No. 1903 at 52).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 26**

**UTILITY PATENT DAMAGES—LOST PROFITS—MARKET SHARE**

One way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products.  You may award Apple a share of profits equal to that market share.

In deciding Apple's market share, you must decide which products are in Apple's market.  Products are in the same market if they are sufficiently similar to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

**Source:**

Final Jury Instruction No. 39 (Dkt. No. 1903 at 53).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 27**

**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—ENTITLEMENT**

Apple also seeks a reasonable royalty for the infringement of its utility patents.

If Apple has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Apple should be awarded a reasonable royalty for all infringing Samsung sales for which Apple has not been awarded lost profits damages.

**Source:**

Adapted from Final Jury Instruction No. 40 (Dkt. No. 1903 at 54).

**PROPOSED FINAL JURY INSTRUCTION NO. 28 (APPLE)**

**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of .01 times the base revenue of $200.

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component.  For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty

because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

In determining a reasonable royalty, you may consider the following factors:

1. The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source:**

Final Jury Instruction No. 41 (Dkt. No. 1903 at 55-56).

**<u>Samsung's Objections</u>**

Apple's proposed instruction fails to take into account controlling Federal Circuit law (*LaserDynamics, Inc. v. Quanta*, 694 F.3d 51, 66-70 (Fed. Cir. 2012)), and persuasive authority issued by this District (*Network Protection Sciences v. Fortinet*, 2013 WL 5402089, at *5-*8 (N.D. Cal. Sep. 26, 2013). Both of these decisions concern the proper application of the Entire Market Value Rule – which is implicated by Ms. Davis's opinions – and were issued after the

1  model instruction and after the first trial.  Samsung accounts for this recent authority by including

2  clarifying language in paragraph 3 of its proposed instruction which addresses the Entire Market

3  Value Rule.  The Court should give Samsung's proposed instruction.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**PROPOSED FINAL JURY INSTRUCTION NO. 28 (SAMSUNG)**

**UTILITY PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION**

3   A royalty is a payment made to a patent holder in exchange for the right to make, use or sell
4 the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the
5 license that would have resulted from a hypothetical negotiation between the patent holder and the
6 infringer taking place at the time when the infringing activity first began.  In considering the nature
7 of this negotiation, you must assume that the patent holder and the infringer would have acted
8 reasonably and would have entered into a license agreement.  You must also assume that both
9 parties believed the patent was valid and infringed.  Your role is to determine what the result of
10 that negotiation would have been.  The test for damages is what royalty would have resulted from
11 the hypothetical negotiation and not simply what either party would have preferred.

12   A royalty can be calculated in several different ways and it is for you to determine which
13 way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty
14 is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must
15 first determine the "base," that is, the product on which the infringer is to pay.  You then need to
16 multiply the revenue the defendant obtained from that base by the "rate" or percentage that you
17 find would have resulted from the hypothetical negotiation.  For example, if the patent covers a
18 nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If
19 the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty
20 would be $2, or the rate of .01 times the base revenue of $200.

21   If a product with multiple components is accused of infringement, the base is generally the
22 smallest saleable feature or component that practices the patent, not the entire accused product.
23 For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the
24 base revenue would be $5.  The only exception to this rule is if the patent holder proves that the
25 patented feature drives the demand for the entire multi-component accused product.  Even if a
26 multi-component accused product is itself the smallest saleable unit, the patentee must still show
27 that the patented feature drives demand for the entire multi-component product.

28

1    A second way to calculate a royalty is to determine a one-time lump sum payment that the

2    infringer would have paid at the time of the hypothetical negotiation for a license covering all sales

3    of the licensed product both past and future.  This differs from payment of an ongoing royalty

4    because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed

5    products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license

6    covering both past and future infringing sales.

7    In determining a reasonable royalty, you may consider the following factors:

8    1.    The royalties received by the patentee for the licensing of the patent-in-suit,

9          proving or tending to prove an established royalty.

10   2.    The rates paid by the licensee for the use of other patents comparable to the

11         patent-in-suit.

12   3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or

13         nonrestricted in terms of territory or with respect to whom the manufactured

14         product may be sold.

15   4.    The licensor's established policy and marketing program to maintain his or her

16         patent monopoly by not licensing others to use the invention or by granting licenses

17         under special conditions designed to preserve that monopoly.

18   5.    The commercial relationship between the licensor and licensee, such as whether

19         they are competitors in the same territory in the same line of business, or whether

20         they are inventor and promoter.

21   6.    The effect of selling the patented specialty in promoting sales of other products of

22         the licensee, the existing value of the invention to the licensor as a generator of

23         sales of his nonpatented items, and the extent of such derivative or convoyed sales.

24   7.    The duration of the patent and the term of the license.

25   8.    The established profitability of the product made under the patents, its commercial

26         success, and its current popularity.

27   9.    The utility and advantages of the patented property over the old modes or devices,

28         if any, that had been used for working out similar results.

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13.    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.    The opinion and testimony of qualified experts.

15.    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**Source**

Adapted from Final Jury Instruction No. 41 (Dkt. No. 1903 at 55-56); *LaserDynamics v. Quanta*, 694 F.3d 51, 66-70 (Fed. Cir. 2012); *Network Protection Sciences v. Fortinet*, 2013 WL 5402089, at *5-*8 (N.D. Cal. Sep. 26, 2013).

**Apple's Objections**

There is no reason to deviate from the instruction given at the first trial by including the additional language proposed by Samsung concerning the entire market value rule that is

EXHIBIT B:  PROPOSED FINAL JURY INSTRUCTIONS
Case No. 11-cv-01846-LHK (PSG)                                                                          52

1    contained in the highlighted text.  Apple's instruction is identical to what the Court used in its final

2    instructions in the case.  Neither Ms. Davis nor Mr. Wagner proposes any reasonable royalty based

3    on the entire market value of any products.  Ms. Davis calculates a *per unit* royalty rate based on

4    the value of Apple's asserted patents.  (*See* Dkt. 2407, Robinson Decl. Ex. C (Davis Report) ¶ 175

5    ("In this matter, I agree with Mr. Musika that the appropriate royalty would be a per unit amount

6    applied to the unit sales of Samsung smartphones and tablets at issue.").)  And the primary royalty

7    calculation proposed by Mr. Wagner is based on Samsung's supposed design around costs.  (*See*

8    Dkt. No. 2382, Olson Decl. Ex. A (Wagner Report) ¶ 562 ("In my opinion, based on all the

9    considerations described above, the reasonable royalty amount should be the full cost of designing

10   around the patents-in-suit.").)  The instruction provided to the first jury did not include the

11   additional language that Samsung now proposes, and there is no reason to create a risk of

12   inconsistent results or to complicate appellate review by providing a different instruction now.

13          Moreover, Samsung's proposed instruction is an incorrect statement of the entire market

14   value rule.  The patentee need not show that the patented feature drives demand for the entire

15   product when that royalty is based on the smallest saleable patent-practicing unit.  *See*

16   *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (explaining that

17   proof that the patented features drive demand required under the entire market value rule is "a

18   narrow exception" to the general rule applicable to royalties based on the smallest saleable

19   patent-practicing unit).  Indeed, Samsung itself did not include such a rigid statement of the entire

20   market value rule in its proposed instructions for the first trial.  (*See* Dkt. No. 1238 at 66 ("Even if

21   the patented feature is not the reason for customer demand, the value of the whole product could be

22   used if, for example, the value of the patented feature could not be separated out from the value of

23   the whole product.").)  The Court should reject Samsung's shifting positions with respect to this

24   instruction and provide the instruction that it gave at the first trial instead.

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 29 (APPLE)**

**UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

Damages that you must award Apple commence on the date that Samsung has been notified of the patent or patents it infringed.  I have determined that Samsung received notice of Apple's claim of infringement for the '381 patent on August 4, 2010, for the '915 patent on April 15, 2011, and for the '163 patent on June 16, 2011.

**Source:**

Adapted from Final Jury Instruction No. 42 (Dkt. No. 1903 at 57); March 1 Order Re: Damages (Dkt. No. 2271 at 18-20).

**Samsung's Objections**

Apple's proposed instruction misstates the Court's March 1, 2013 Order as well controlling Federal Circuit authority that was accurately reflected in the Court's prior instruction on the notice date issue.  First, the Court's March 1 Order did not "determine" the notice date for any of the patents-in-suit as Apple claims in its proposed instruction.  Rather, the Court entered judgment as a matter of law as to "the *earliest notice dates* supported by the evidence" for each of the patents-in-suit.  (Dkt. No. 2271 at 18:12-14) (emphasis added).  Second, as the Court recognized in its instruction to the jury in the first trial, notice for commencement of the damages period requires a determination of both "the date that each Samsung entity received actual written notice of the patents *and* the specific products alleged to infringe."  (Dkt. No. 1903 at 57:4-5) (emphasis added).  *See also Amsted Industries Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").  Apple's proposed instruction deletes this sentence from the Court's prior instruction and, contrary to Federal Circuit authority, omits any reference to notice of the specific products alleged to infringe.

The actual notice dates for the products at issue in the new trial is a question for the jury to decide.  Samsung's proposed instruction accurately reflects the Court's March 1, 2013 Order and the controlling law that should guide the jury's determination.  Apple's proposed instruction

1   creates a serious risk of another notice date error.  The Court should reject Apple's proposed

2   instruction and give Samsung's instead.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 29 (SAMSUNG)**

**UTILITY PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

3

4

Damages that Apple may be awarded by you commence on the date that Samsung has both infringed and been notified of the patent or patents it infringed.

5

6

You must determine the date that each Samsung entity received actual written notice of the patents and the specific products alleged to infringe.

7

8

9

10

11

The Samsung entities received actual written notice of the '381 patent no earlier than August 4, 2010, actual written notice of the '915 patent no earlier than April 15, 2011, and actual written notice of the '163 patent no earlier than June 16, 2011.  It is up to you based on your evaluation of the evidence to determine the date the Samsung entities received actual written notice of the specific products alleged to infringe each of those patents.

12

13

**Source:**

14

15

Adapted from Final Jury Instruction No. 42 (Dkt. No. 1903 at 57); March 1, 2013 Order re: Damages (Dkt. No. 2271); *Amsted Industries Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994).

16

17

**Apple's Objections**

18

19

20

21

22

The Court's March 1 Order re: Damages determined "the correct notice date[s]" for Apple's asserted patents that will apply in this trial.  (Dkt. No. 2271 at 18.)  As a result, the notice date will not be an issue for the jury to decide in the new trial on damages, and the jury should be instructed as to the notice dates that the Court's March 1 Order, as provided in Apple's proposed instruction.

23

24

25

26

27

28

Samsung's proposed instruction that it received notice "no earlier than" the dates set forth in the March 1 Order cannot be reconciled with the Order's explicit rulings:  "Regarding the '381 Patent, Apple has presented evidence that Apple specifically put Samsung on notice of that patent in a meeting between Apple and Samsung on August 4, 2010"; "the correct notice date for the . . . '915 Patent[] is April 15, 2011"; and "the correct notice date for the '163 . . . Patent[] is June 16, 2011."  (*Id.* at 16, 18.)  The Court also set out a chart with those dates, explaining that the chart

1  "indicates the correct notice dates, available remedies, and infringing products for each form of

2  IP."  (*Id.* at 18.)  Finally, as the Court noted, the dates of Apple's complaints in this case are also

3  dates on "which the parties agree gave Samsung notice of all of the asserted IP."  (*Id.* at 16.)

4  Indeed, the notice dates for the '915 and '163 patents cannot be any later than the dates provided in

5  the Court's March 1 Order because those are the dates from the complaints accusing Samsung of

6  infringing those patents.

# DESIGN PATENT JURY INSTRUCTIONS

1

2

**PROPOSED FINAL JURY INSTRUCTION NO. 30 (SAMSUNG)**

**DESIGN PATENTS—INTERPRETATION OF PATENT CLAIMS**

3

4

5

6

Design patents protect the ornamental appearance, including shape or configuration, of an article of manufacture.  Design patents do not protect the functional aspects of how the article claimed in the patent works.  Before you make any award of damages for design patent infringement, you will have to understand the design patent claims.

7

8

9

10

11

12

Unlike utility patents, a design patent can only have one claim.  That claim covers all the figures in the patent.  It is permissible to illustrate more than one embodiment of a design in a single design patent application.  Each design patent contains multiple drawings to illustrate the claimed design.  The scope of the claim encompasses the design's visual appearance as a whole.  It does not cover a general design concept, and is not limited to isolated features of the drawings.  All matter depicted in solid lines contributes to the overall appearance of the design.

13

14

15

16

17

It is my job as a judge to interpret for you what is claimed by the patents.  You must accept my interpretations as correct.  My interpretations should not be taken as an indication that I have an opinion one way or another regarding the type or amount of damages you should award.  Decisions regarding the type and amount of damages to award are yours to make.  When considering the design patents, you should view certain features in the drawings in this way:

18

- **D'677 Patent**

19

20

21

22

23

The D'677 Patent claims the ornamental design of an electronic device as shown in Figures 1-8.  The broken lines in the D'677 Patent constitute unclaimed subject matter. The use of solid black surface shading on the D'677 Patent represents the color black.  The use of oblique line shading on the D'677 Patent is used to show a transparent, translucent, or highly polished or reflective surface.

24

- **D'305 Patent**

25

26

27

The D'305 Patent claims the ornamental design for a graphical user interface for a display screen or portion thereof, as shown in Figures 1-2. The broken line showing of a display screen in both views forms no part of the claimed design.

28

**Source:**

Adapted from Final Jury Instruction No. 43 (Dkt. No. 1903 at 59-60).

**Apple's Objections**

Along with Samsung's Proposed Final Jury Instruction No. 20 regarding utility patent claim interpretation discussed above, this proposed instruction is the latest of Samsung's efforts to relitigate infringement and validity.  (*See, e.g.*, Dkt. No. 2415 at 1, 3 (objecting to Samsung proposed invalidity and infringement exhibits).)  As the Court held when it rejected Samsung's Seventh Amendment argument, the first jury rendered a verdict as to infringement, which is now "law of the case."  (April 29, 2013 Hearing Tr. at 47:24-48:3.)  The first jury also rendered a verdict that Apple's patents are not invalid.  (Dkt. No. 1931 at 9.)  This jury will not have occasion to interpret Apple's design patent claims, and to suggest that the jury should do so is inviting error.

**Samsung's Position**

This instruction sets forth the Court's claim construction language from Final Jury Instruction No. 43 in the first trial. (Dkt. No. 1903 at 59-60.)  Samsung submits this instruction not to re-litigate issues of infringement and validity as Apple claims, but rather because a proper understanding of the scope of the patents-in-suit is essential to the jury's assessment of the value of the patented features and thus Apple's damages claim and the damages award the jury will be asked to render.  Indeed, a proper understanding of what is covered by the patented features is directly relevant to the *Georgia-Pacific* analysis. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971) (Factor #9: "The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;" Factor #10: "The nature of the patented invention;" Factor #13: "The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements . . .").  Moreover, the scope of the patent claims goes directly to Apple's lost profits claim and, in particular, whether Apple will be able to "show that but for the infringement, there is a reasonable probability that it would have made sales

1  that Samsung made of the infringing products." (*See* Final Jury Instruction No. 36, Dkt. No. 1903

2  at 50.)  Without instruction as to the construction of Apple's patent claims, the jury will not be able

3  to properly determine their value and the damages it should award to Apple.

1   **PROPOSED FINAL JURY INSTRUCTION NO. 31 (APPLE)**

2   **DESIGN PATENT DAMAGES—BURDEN OF PROOF**

3        I will instruct you about the measure of damages for infringement of Apple's design

4   patents.

5        You must determine the amount of damages to award to Apple for Samsung's

6   infringement.  The amount of those damages must be adequate to compensate Apple for the

7   infringement.  You should keep in mind that the damages you award are meant to compensate

8   Apple and not to punish Samsung.

9        In relation to design patents, Apple can elect to prove either actual damages, known as

10  compensatory damages, or it may elect to prove Samsung's profits as its measure of potential

11  recovery with respect to the sale of each unit of an infringing product.  As compensatory damages,

12  Apple may prove either its own lost profits, or a reasonable royalty for the design patent.  Apple is

13  not entitled to recover both compensatory damages and Samsung's profits on the same sale.

14       Apple has the burden to prove that Apple's calculation of damages is correct by a

15  preponderance of the evidence.  While Apple is not required to prove its damages with

16  mathematical precision, it must prove them with reasonable certainty.  Apple is not entitled to

17  damages that are remote or speculative.

18

19  **Source:**

20  Adapted from Final Jury Instruction No. 53 (Dkt. No. 1903 at 71).

21  <u>**Samsung's Objections**</u>

22       As with Apple's Proposed Final Jury Instruction No. 22, this proposed instruction deviates

23  from the Court's prior instruction in a way that alters the Court's language to make it more

24  favorable to Apple.  Where the Court previously used the neutral phrase "patent holder" in the last

25  sentence of paragraph 2 to make clear that it was giving an instruction about patent damages

26  generally, Apple has substituted its own name instead.  The Court's prior version matches ND Cal

27  Model Instruction 5.1, which does not contemplate inserting the parties' names into that sentence,

28  as it does in other places.  Apple also omits the Court's useful prior statement in paragraph 1, also

taken from Model Instruction 5.1, that in instructing the jury about damages, it is not taking a position on any issue.

Samsung's alternative proposed instruction is preferable in several ways. It makes clear that the jury is not simply deciding an amount of damages, but also must decide the type of damages to award. Second, Samsung's instruction retains the Court's prior admonition that although it is instructing the jury on damages, it takes no position on how the jury should decide any issue. Third, it maintains the neutral language at the end of paragraph 2 used before by the Court to describe the important general principle that patent damages are not meant to punish, but only to compensate.

1    PROPOSED FINAL JURY INSTRUCTION NO. 31 (SAMSUNG)

2    DESIGN PATENT DAMAGES—BURDEN OF PROOF

3    I will instruct you about the measure of damages for infringement of Apple's design

4    patents.  By instructing you on damages, I am not suggesting the type or amount of damages you

5    should award.  You must determine the type and amount of money damages to be awarded to the

6    patent holder.

7    The amount of those damages must be adequate to compensate Apple for the infringement.

8    You should keep in mind that the damages you award are meant to compensate the patent holder

9    and not to punish an infringer.

10   In relation to design patents, Apple can elect to prove either actual damages, known as

11   compensatory damages, or it may elect to prove the defendant's profits as its measure of potential

12   recovery with respect to the sale of each unit of an infringing product.  As compensatory damages,

13   Apple may prove either its own lost profits, or a reasonable royalty for the design patent.  Apple is

14   not entitled to recover both compensatory damages and defendant's profits on the same sale.

15   Apple has the burden to prove that Apple's calculation of damages is correct by a

16   preponderance of the evidence.  While Apple is not required to prove its damages with

17   mathematical precision, it must prove them with reasonable certainty.  Apple is not entitled to

18   damages that are remote or speculative.

19

20   **Source:**

21   Adapted from Final Jury Instruction No. 53 (Dkt. No. 1903 at 71).

22

23   **Apple's Objections**

24   Apple objects to the inclusion of the sentence "By instructing you on damages, I am not

25   suggesting the type or amount of damages you should award" in Samsung's Proposed Final

26   Instruction No. 31.  At the first trial, it was appropriate to qualify this damages instruction by

27   stating that it was not meant to suggest which party should prevail on the merits because the issue

28   of liability was an open question.  Now that liability has been decided, however, there is no need to

1   qualify the instruction.  Unlike at the first trial, the damages instructions in this trial *are* intended to

2   suggest that the jury should award damages.

3          Apple further objects to Samsung's Proposed Final Instruction No. 31 to the extent that it

4   mentions the "type" of damages.  It is misleading and legally incorrect to suggest that Apple has

5   the burden to prove the type of damages as a threshold to receiving damages.  Indeed, Apple is

6   statutorily entitled to not less than a reasonable royalty under 35 U.S.C. § 284 without meeting any

7   separate burden to prove the type of damages.  Moreover, the jury at the first trial was not

8   instructed that Apple had any burden to prove the type of damages.  (*See* Dkt. No. 1903 at 71 (Final

9   J.I. 53).)  Nor did the verdict form require the jury to disclose the type of damages it was awarding.

10  (*See* Dkt. No. 1931 at 15-16.)  Samsung's additional proposed language concerning the type of

11  damages would instruct this jury differently than the jury at the first trial, which creates the risk of

12  inconsistent results and complicates appellate review of the juries' verdicts.

13         Likewise, Apple objects to Samsung's Proposed Final Instruction No. 31 because it does

14  not state that the jury "must" determine the amount of money damages to award Apple.  Apple is

15  undeniably entitled to receive damages now that Samsung is an adjudicated infringer.  *See* 35

16  U.S.C. § 284 ("Upon finding for the claimant the court *shall* award the claimant damages adequate

17  to compensate for the infringement ...." (emphasis added)).  Consistent with that statutory

18  mandate, the Court instructed the jury at the first trial that it "must" award damages upon a finding

19  of infringement of a valid patent.  (*See* Dkt. No. 1903 at 71 (Final J.I. 53).)  To avoid the risk of

20  inconsistent verdicts and to facilitate appellate review of the juries' verdicts, the Court should give

21  the same instruction here.

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 32**

**DESIGN PATENT INFRINGEMENT DAMAGES—DEFENDANT'S PROFITS**

In this case, Apple seeks Samsung's profits from sales of products that infringe Apple's design patents.  You may award Apple Samsung's total profit attributable to the infringing products.

Samsung's "total profit" means the entire profit on the sale of the article to which the patented design is applied, and not just the portion of profit attributable to the design or ornamental aspects covered by the patent.  "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

Apple is entitled to all profit earned by Samsung on sales of articles that infringe Apple's design patents.  Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of the infringer's receipts from the sale of articles using any design found infringed.  Apple has the burden of proving Samsung's gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods.  Other costs may be included as deductible expenses if they are directly attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense.  Samsung has the burden of proving the deductible expenses.


**Source:**

Adapted from Final Jury Instruction No. 54 (Dkt. No. 1903 at 72).

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 33**

**DESIGN PATENT DAMAGES—LOST PROFITS**

Apple may alternatively recover compensatory damages in the form of lost profits.  As previously explained, Apple may not recover both Samsung's profits and compensatory damages on each sale of an infringing product.  In assessing Apple's right to recover lost profits for Samsung's infringement of its design patents, you should apply the same rules I already explained in the context of lost profits for infringement of Apple's utility patents.  Those Instructions are set out in Jury Instruction Nos. 22-26.

Wherever in those Instructions I referred to Apple's utility patents, you should now focus on Apple's design patents.  Wherever in those Instructions I referred to the patented invention, you should now focus on the patented design.  Wherever in those Instructions I referred to patented products or products covered by a patent claim, you should now focus on products or articles that use or embody the patented design.

**Source:**

Adapted from Final Jury Instruction No. 55 (Dkt. No. 1903 at 73).

1

2

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 34**

**DESIGN PATENT DAMAGES—REASONABLE ROYALTY**

3

4

5

6

    If Apple has not proved its claim for lost profits or has not proved its claim to Samsung's profits, then Apple should be awarded a reasonable royalty for all infringing sales by Samsung.  In no event should the damages you award Apple for design patent infringement be less than a reasonable royalty.

7

8

9

10

    The definition of a reasonable royalty for design patent infringement is the same as the definition I explained to you in Jury Instruction No. 29 for utility patent infringement.  However, wherever in that Instruction I referred to the patented invention or a utility patent, you should now focus on the design patents or patented designs.

11

12

**Source:**

13

Adapted from Final Jury Instruction No. 56 (Dkt. No. 1903 at 74).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROPOSED FINAL JURY INSTRUCTION NO. 35 (APPLE)**

**DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

Damages that you must award Apple commence on the date that Samsung has both infringed and been notified of the design patent or patents it infringed.  I have determined that Samsung received notice of Apple's claim of infringement for the D'677 patent on April 15, 2011, and for the D'305 patent on June 16, 2011.

**Source:**

Adapted from Final Jury Instruction No. 57 (Dkt. No. 1903 at 75); March 1 Order Re: Damages (Dkt. No. 2271 at 18-20).

**Samsung's Objections**

Apple's proposed instruction misstates the Court's March 1, 2013 Order as well controlling Federal Circuit authority that was accurately reflected in the Court's prior instruction on the notice date issue.  First, the Court's March 1 Order did not "determine" the notice date for any of the patents-in-suit as Apple's claims in its proposed instruction.  Rather, the Court entered judgment as a matter of law as to "the ***earliest notice dates*** supported by the evidence" for each of the patents-in-suit.  (Dkt. No. 2271 at 18:12-14) (emphasis added).  Second, as the Court recognized in its instruction to the jury in the first trial, notice for commencement of the damages period requires a determination of both the "the date each Samsung entity received actual written notice of the patents ***and*** the specific products alleged to infringe."  (Dkt. No. 1903 at 75:4-5) (emphasis added).  *See also Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994) ("actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.").  Apple's proposed instruction deletes this sentence from the Court's prior instruction and, contrary to Federal Circuit authority, omits any reference to notice of the specific products alleged to infringe.

The actual notice dates for the products at issue in the new trial is a question for the jury to decide.  Samsung's proposed instruction accurately reflects the Court's March 1, 2013 Order and

the controlling law that should guide the jury's determination.  Apple's proposed instruction creates a serious risk of another notice date error.  The Court should reject Apple's proposed instruction and give Samsung's instead.

1    **PROPOSED FINAL JURY INSTRUCTION NO. 35 (SAMSUNG)**

2    **DESIGN PATENT DAMAGES—DATE OF COMMENCEMENT—PRODUCTS**

3         Damages that Apple may be awarded by you for design patent infringement commence on

4    the date that Samsung has both infringed and been notified of the design patent or patents it

5    infringed.

6         You must determine the date that each Samsung entity received actual written notice of the

7    patents and the specific products alleged to infringe.

8         The Samsung entities received actual written notice of the D'677 patent no earlier than

9    April 15, 2011 and actual written notice of the D'305 patent no earlier than June 16, 2011. It is up

10   to you based on your evaluation of the evidence to determine the date the Samsung entities

11   received actual written notice of the specific products alleged to infringe each of those patents.

12

13   **Source:**

14   Adapted from Final Jury Instruction No. 54 (Dkt. No. 1903 at 72); March 1, 2013 Order re:

15   Damages (Dkt. No. 2271); *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187

16   (Fed. Cir. 1994).

17

18   **<u>Apple's Objections</u>**

19        The Court's March 1 Order re: Damages determined "the correct notice date[s]" for

20   Apple's asserted patents that will apply in this trial.  (Dkt. No. 2271 at 18.)  As a result, the notice

21   date will not be an issue for the jury to decide in the new trial on damages, and the jury should be

22   instructed as to the notice dates that the Court's March 1 Order, as provided in Apple's proposed

23   instruction.

24        Samsung's proposed instruction that it received notice of the D'677 and D'305 patents "no

25   earlier than" the dates set forth in the March 1 Order cannot be reconciled with the Order's explicit

26   rulings:  "[T]the correct notice date for the . . . D'677 Patent[] is April 15, 2011"; and "the correct

27   notice date for the '. . . D'305 . . . Patents is June 16, 2011."  (*Id.* at 16, 18.)  The Court also set out

28   a chart with those dates, explaining that the chart "indicates the correct notice dates, available

1   remedies, and infringing products for each form of IP." (*Id.* at 18.) Finally, as the Court noted, the

2   dates of Apple's complaints in this case are also dates on "which the parties agree gave Samsung

3   notice of all of the asserted IP." (*Id.* at 16.) Indeed, the notice dates for the  D'677, and D'305

4   patents cannot be any later than the dates provided in the Court's March 1 Order because those are

5   the dates from the complaints accusing Samsung of infringing those patents.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED FINAL JURY INSTRUCTION NO. 36**

**MONETARY REMEDIES—ONLY ONE RECOVERY PER ACCUSED SALE**

You should award any remedy to which Apple has proven it is entitled with respect to each sale of an infringing smart phone or tablet, except that you should not award Apple twice for the same sale of any infringing smartphone or tablet.  This means that if you award infringer's profits under design patent infringement for the sale of a certain number of infringing smartphones, you may not also award reasonable royalties or lost profits for those same sales.  If you award reasonable royalties or lost profits for the sale of a certain number of infringing smartphones or tablets, you may not award infringer's profits as to those smartphones or tablets.

You do not have to use the same theory to calculate damages for every sale, however.  For example, an award may be split between lost profits for some sales and a reasonable royalty for the remainder of sales of a product that infringes a patent.

For any sale where you measure damages by a reasonable royalty or lost profits, you may include royalty amounts or lost profits for each patent infringed by the sale.

If a sale is awarded one form of monetary recovery, that same sale cannot be awarded another form of monetary recovery.

**Source:**

Adapted from Final Jury Instruction No. 74 (Dkt. No. 1903 at 96).