QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF JULIE L. DAVIS**<br><br>**Date**: October 10, 2013<br>**Time**: 1:30 p.m.<br>**Place**: Courtroom 8, 4th Floor<br>**Judge**: Hon. Lucy H. Koh<br><br>**FILED UNDER SEAL** |

1  PLEASE TAKE NOTICE that on October 10, 2013, at 1:30 p.m., or as soon as the matter
2 may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the
3 Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San
4 Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung
5 Telecommunications America, LLC (collectively, "Samsung") shall and hereby do move pursuant
6 to the Court's April 29, 2013 and August 22, 2013 Case Management Orders for an order striking
7 portions of the Expert Report of Julie L. Davis, CPA.

8  This motion is based on this notice of motion and supporting memorandum of points and
9 authorities; the Declaration of Robert J. Becher ("Becher Decl.") and exhibits thereto; and such
10 other written or oral argument as may be presented at or before the time this motion is taken under
11 submission by the Court.

## RELIEF REQUESTED

13  An order striking certain identified paragraphs, and the corresponding portions of the
14 Expert Report of Julie L. Davis, CPA.

## STATEMENT OF ISSUES

16  Whether the Expert Report of Julie L. Davis, CPA includes new theories, new
17 methodologies, new data, and new damages periods.

19 DATED: August 30, 2013          QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP

                                  By */s/ Victoria F. Maroulis*
                                     Victoria F. Maroulis
                                     Attorney for SAMSUNG ELECTRONICS CO.,
                                     LTD., SAMSUNG ELECTRONICS AMERICA,
                                     INC., and SAMSUNG
                                     TELECOMMUNICATIONS AMERICA, LLC

**INTRODUCTION**

The Court ruled that "the sole purpose of the [new] trial is to correct for the erroneous notice dates" (Dkt. 2316 at 2-3), and the parties are thus limited to the theories raised in the first trial. *See, e.g.,* Becher Decl.[1] Ex. 4, 4/29/13 Hrg. Tr. at 67:17-21. The Court explicitly instructed that there can be "no variations other than the notice date." *Id.* at 65:12-21; *see also* 70:12-13 ("No new theories, no new methodologies, no new data, no new damages period."). Despite the Court's rulings, Apple's new expert, Ms. Davis, attempts to increase Apple's claimed damages by (a) presenting damages methodologies and damages periods that Mr. Musika did not discuss in his reports or at trial; (b) proffering opinions and calculations that the Court previously excluded; and (c) relying on exhibits and testimony that Mr. Musika did not cite in his report or discuss at trial. While the changes may look small on paper, they result in the addition of hundreds of millions of dollars in additional claimed damages, severely prejudice Samsung, and should be stricken.

**I.     MS. DAVIS'S NEW THEORIES SHOULD BE STRICKEN**

   **A.     Ms. Davis's Lost Profits Opinions Relying On New Design-Around Periods Should Be Stricken**

Ms. Davis improperly changes Mr. Musika's method for calculating Apple's lost profits in order to claim over *$33 million more* than the amount of lost profits Apple sought at the first trial for the same 13 products at issue in the new trial. *Compare* Davis Rpt. Ex. 17.1-PT-H ($419,029,253 in lost profits for the 13 new trial products) *with* PX25A1.4 ($385,937,640 in lost profits for the same 13 products). Mr. Musika's method for calculating lost profits assumed that Samsung would design around Apple's asserted intellectual property, and that Apple should be entitled to lost profits only during those hypothetical design around periods. *See* Trial Tr. at 2084:3-19. Mr. Musika assumed those design around periods would begin at the date of the first allegedly infringing sale: "This period begins at the later of the issuance of the item of Apple Intellectual Property In Suit or the date in which Samsung first sold the product embodying the Apple Intellectual Property In Suit and assumes that Samsung had notice of the patents on that

---

[1] Copies of the Davis Report, Musika Report, and Supplemental Musika Report are attached as Exhibits 1-3 to the Declaration of Robert J. Becher ("Becher Decl.").

1  date." Musika Rpt. ¶129.

2  In contrast, Ms. Davis now includes calculations that "adjust[ ]" the design around periods
3  used for calculating lost profits for all but the '381 patent to start as of the dates Apple filed its
4  complaint and amended complaint (the earliest potential dates Samsung received actual notice
5  under 35 U.S.C. § 287).  Davis Rpt. ¶93; Becher Decl. Ex. 5, 8/26/13 Davis Dep. Tr. at 110:5-12,
6  130:21-131:3.  By changing start date of the design around periods and the corresponding lost
7  profits periods to start later, Ms. Davis increases Apple's lost profits claim by *more than $305*
8  *million*, as compared to her calculations using Mr. Musika's methodology where the design
9  around period started as of the date of first infringement.  *Compare* Davis Rpt. Ex. 17.1-PT-H
10 ($419,029,253 in lost profits using new theory) *with* Ex. 17.1-PT-J ($113,777,344 in lost profits
11 using Mr. Musika's original theory); Becher Decl. Ex. 5 at 134:12-20.[2]

12 The Court previously barred Mr. Musika from presenting the methodology that Ms. Davis
13 now seeks to use, because it was not timely disclosed in his expert reports.  Dkt. 1678, 1690.  The
14 Court held:  "Mr. Musika did not timely disclose his calculations pursuant to an alternative two
15 notice period theory."  Dkt. 1690 at 2.  Under Mr. Musika's excluded "two notice period theory,"
16 Apple sought to increase its claimed damages by shifting certain design around periods to start
17 after first infringement, as Ms. Davis has done.  *See, e.g.,* Davis Rpt. Ex. 17.2-PT-H, 17.2-PT-I.[3]
18 The Court precluded Mr. Musika from doing so.  Because the Court's ruling excluding Mr.
19 Musika's alternate lost profits theory remains binding, Ms. Davis's new calculations should be
20 stricken.  *See* Dkt. 2316 at 2-3 (prior rulings on . . . evidentiary objections remain in effect as law
21 of the case."); Becher Decl. Ex. 6, 8/21/13 Hrg. Tr. at 12:14-16 ("[A]nything that was previously

---

[2] Ms. Davis knew this would be a problem and thus included an alternative set of calculations that adhere to Mr. Musika's methodology, specifically Exhibits 17-PT-J and 17-PT-K.  Tellingly, using her new methodology, Ms. Davis calculates lost profits for the Exhibit 4G, despite the fact that Mr. Musika did not—either in his reports or at trial. *Compare* Davis Rpt. 17-PT-H (lost profits on Exhibit 4G using new theory) *with* Musika Rpt. Ex. 17 and PX25A1.4 (no lost profits on Exhibit 4G).  Ms. Davis's alternative calculation using Mr. Musika's methodology does not calculate lost profits for the Exhibit 4G.  *See, e.g.,* Davis Rpt. Ex. 17-PT-J, 17-PT-K,

[3] The "two notice period theory" is shorthand for the fact that shifting these design around periods results in two lost profits periods per product–one lost profits period for the '381 patent that starts on August 4, 2010, and one for other patents that starts on the filing of the complaint or amended complaint.

1  excluded . . . does not fall within the proper scope of this trial.").[4]

2      Ms. Davis's new approach is also contrary to Federal Circuit law.  When calculating lost
3  profits, courts look to whether noninfringing design arounds are available *starting on the date of*
4  *first infringement*—even if it is earlier than the notice date.  In *Grain Processing Corp. v.*
5  *American Maize-Products Co.,* 185 F.3d 1341, 1347 n.3 (Fed. Cir. 1999), the patent holder could
6  not recover damages for infringing sales prior to giving notice via filing its complaint in 1981,
7  because it did not mark its products.  The court found that because a non-infringing alternative
8  first used in 1991 could have theoretically been implemented in 1979, the defendant could have
9  completed its design around before receiving notice.  *Id.* at 1347-48.  Accordingly, the Federal
10 Circuit affirmed the denial of lost profits.  *Id.* at 1353-55.[5]

11     Likewise, in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l.*, 711 F.3d 1348
12 (Fed. Cir. 2013), the Federal Circuit distinguished between (1) the bar on recovery of damages for
13 failure to mark or provide actual notice under 35 U.S.C. § 287, and (2) the hypothetical
14 reconstruction of the market for purposes of calculating lost profits, which takes place at the date
15 of first infringement regardless of actual notice.  *See id.* at 1378-1379 (finding error in a lost
16 profits award where the price erosion analysis used the date of actual notice, rather than the date of
17 first infringement).  As the Federal Circuit explained, "what the patentee would have made *but for*
18 *the infringement*" requires analysis of *"infringement-free* market conditions, and thus the proper
19 starting point of such a price erosion analysis is the date of first infringement." *Id*. at 1379.[6]  Ms.

---

[4] This outcome is consistent with the Court's application of these rules to Samsung.  At the April 29, 2013 CMC, Samsung requested that it have "an opportunity to present to the jury different damages period."  (Becher Decl. Ex. 4 at 81:14-16.)  Apple vociferously opposed (*id.* at 81:17-23) and the Court denied Samsung's request.

[5] Ms. Davis improperly relies on the March 1 Order to justify her decision to shift the design-around dates.  *See, e.g.*, Davis Rpt. ¶93 (stating that she "modified the calculation of damages to reflect the March 1 Order" by "[a]djust[ing] the calculation of Apple's lost profits so that lost profits damages did not accrue, and the period during which Samsung would attempt to design around a patent did not start, before the date on which the Court found that Samsung had actual notice of the patents.").  But the March 1 Order says nothing about the proper period to evaluate available non-infringing alternatives for lost profits purposes and should not be interpreted to contradict Federal Circuit precedent.

[6] In her reasonable royalty opinion, Ms. Davis acknowledges that design arounds should be considered as at the date of first infringement, as she must under governing law.  *See Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d 858, 869-870 (Fed. Cir. 1993) (hypothetical negotiations should
(footnote continued)

1  Davis's attempt to shift the design around dates violates this cardinal principle by assuming that
2  Samsung would have continued infringing until the notice date and only then stopped.

3        Accordingly, Ms. Davis's new opinions that move the start of the hypothetical design
4  around periods should be stricken as new, contrary to the Court's orders, and inconsistent with
5  Federal Circuit precedent.

6      **B.**     **Ms. Davis's New Opinion on Apple's Sales Capacity Should Be Stricken**

7        In her report, Ms. Davis concedes that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Nonetheless, she
9  asserts that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  *Id*.  At her deposition, Ms. Davis clarified that this
11 includes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓ opinion is entirely new.  It is nowhere to be found in Mr. Musika's reports, deposition
14 transcript, or trial testimony.  Indeed, Mr. Musika agreed at trial that Apple had no capacity to
15 make *any additional sales* of the iPhone 4 from June through October 2010.  Trial Tr. at 2141:13-
16 2142:14 ("Q.  And this is a time [June-October 2010] when Apple couldn't even service its own
17 customers for the iPhone 4; correct?  A. [Mr. Musika]  Well, yes, with the iPhone 4.  They had
18 available iPhones, but not the iPhone 4.").  At no point did Mr. Musika say that Apple could have
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, as Ms. Davis now asserts for the first time.  Ms. Davis's new
20 opinion should be stricken.

21     **C.**     **Ms. Davis's New Infringer's Profits Theories Should Be Stricken**

22       At trial, Apple sought infringer's profits solely based on Samsung's *gross profits*.  Now,

---

be as of date of patent issuance, even if this was before the notice date); *Laserdynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, at 75 (Fed. Cir. 2012) (the six year limitation on recovery of past damages does not preclude the hypothetical negotiation from taking place on the date infringement started, even if damages cannot be collected until a later time) (citing *Wang*, 993 F.2d at 870).  *Panduit Corp. v. Stahlin Bros. Fibreworks, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978), recognized that the date for evaluating noninfringing substitutes for a lost profits analysis is the date of first infringement, the same as the date for evaluating a hypothetical negotiation.  *Id.* at 1162.  Indeed, the *Panduit* court's analysis of non-infringing substitutes for purposes of assessing lost profits and a reasonable royalty was one and the same.  *Id.* at 1156, 1161, 1162.

1  Apple seeks to inflate its potential damages by presenting two additional theories of infringer's
2  profits—one based on Samsung's "incremental profits" and the other based on its revenues.

3  Mr. Musika never calculated infringer's profits equal to Samsung's "incremental profit" on
4  a product-by-product basis in his expert reports or at trial.  *See* Musika Rpt. ¶151 ("I have
5  calculated Samsung's accused revenue and adjusted gross profit."); Becher Decl. Ex. 5 at 274:4-
6  19, 276:16-24.  Mr. Musika did not even mention "incremental profits" to the jury.  Trial Tr. at
7  2031-2172.  Yet, Ms. Davis now calculates infringer's profits for each of the 13 products at issue
8  in the new trial based on Samsung's "incremental profit."  *See, e.g.,* Davis Rpt. Ex. 17.1-PT-I; *see
9  also id.* at Ex. 50.1-PT - Ex. 50.9-PT.

10  Apple has claimed that Ms. Davis's "incremental profit" theory is not new because she
11  used Mr. Musika's methodology.  But Mr. Musika only calculated overall "incremental profit" for
12  *all* Samsung products (including non-accused products).  *See* Musika Rpt. Ex. 50-S; Trial Tr. at
13  2058:4-6 (admitting that PX28 (identical to Ex. 50-S) shows "the numbers for the overall entity,"
14  and includes "other sales of non-accused items.").  Mr. Musika *never* calculated Samsung's
15  "incremental profit" for just the accused products (whether combined or individually), nor did he
16  ever opine that Apple should receive infringer's profits equal to Samsung's "incremental profit."
17  Ms. Davis now does both.  Her new "incremental profit" theory—which calculates as much as
18  $16.8 million more in infringer's profits (*compare* Davis Rpt. Ex. 18.1-PT-I ($268,593,600 in
19  "incremental profit") *with* Ex. 18.1-PT-H ($251,778,375 in gross profit))—should be stricken.

20  Ms. Davis's presentation of infringer's profits based on revenue, *see, e.g.*, Davis Rpt. Ex.
21  17-PT-H, Ex. 18-PT-H, is inconsistent with Apple's assurances that it would present "the same
22  calculation of deductible expenses."  Becher Decl. Ex. 4 at 59:21-62:12.  Although Mr. Musika's
23  expert report included calculations of Samsung's revenue, at trial, Mr. Musika presented
24  infringer's profits as equal to Samsung's *gross profits*.  *See* Trial Tr. at 2053:17-2055:16.  Mr.
25  Musika did not dispute that Samsung was entitled to deduct at least *some* costs.  *Id.* at 2063:23-24;
26  *see also id.* at 2066:18-19 (in deducting costs, he "stop[ped] at the gross profit line").

27  **D.  The Court Should Strike Ms. Davis's New Descriptions of the Utility Patents**
28  Ms. Davis's descriptions of the '381, '915 and '163 patents (Davis Rpt. ¶¶27-29) differs

dramatically from Mr. Musika's descriptions (Musika Rpt. ¶¶11, 13, 15). As shown by the redline comparing the experts' descriptions of the patents, her descriptions broaden and change the scope of the patented technology. Becher Decl. Ex. 7. This unjustified change should not be allowed.

### E. Ms. Davis Offers Opinions That Have Already Been Excluded

During the first trial, the Court barred Apple from offering testimony that Samsung "[v]iolated court orders to produce financial records," and limited Apple to asking Mr. Musika a single leading question related to Samsung's discovery conduct. Dkt. 1668 at 1-2. Yet, Ms. Davis purports to narrate the complete history of Judge Grewal's order compelling Samsung to produce financial documents, Samsung's production of such documents, and Judge Grewal's imposition of sanctions. *See, e.g.,* Davis Rpt. ¶¶145, 147-148, 152-155. Additionally, in its *Daubert* ruling, the Court excluded Mr. Musika's opinion that Apple suffered irreparable harm as a result of Samsung's alleged infringement, and his opinion that Samsung's cost data failed to meet Samsung's burden of proving deductible expenses. Dkt. 1157. Ms. Davis revives both of these opinions by devoting an entire section of her report to Apple's alleged irreparable harm (Davis Rpt. ¶¶74-88) and opining on whether Samsung satisfied its "burden" to produce reliable cost information (*id.* at ¶162). The Court should enforce its prior rulings and strike these opinions. *See* Dkt. 2316 at 2-3 ("prior rulings on . . . evidentiary objections remain in effect as law of the case.").

## II. THE COURT SHOULD STRIKE MS. DAVIS'S RELIANCE ON NEW EVIDENCE

Ms. Davis relies on dozens of documents that Mr. Musika did not cite in his reports or at trial. For example, while Mr. Musika's lost profits analysis relied on the documents listed in Exhibits 24 and 25 to his original report as evidence of demand for the patented products (Musika Rpt. ¶¶121-122; *see also* Musika Supp. Rpt. Ex. 24-S), Ms. Davis cites numerous additional documents.[7] Ms. Davis relies on this evidence in connection with *Georgia-Pacific* factor 9, asserting that Samsung's alleged copying shows the advantages of Apple's design patents (Davis Rpt. ¶¶234, 236-237), but Mr. Musika did not rely on any copying allegations in analyzing

---

[7] *See* Davis Rpt. ¶¶106, 134, 136, 137, 41-42, 58-60 (citing SAMNDCA00214969, SAMNDCA10246338, PX58, PX60, PX62, PX55, PX2261, PX186, PX21A, PX7, PX8, PX3, PX6 and PX174).

1 Apple's design patents. Musika Rpt. ¶¶246-247.  Similarly, Ms. Davis's lost profits analysis cites
2 advertisements and "press articles reflecting industry praise" for Apple's products, even though
3 Mr. Musika's reports did not cite these materials.[8] All these references should be stricken. *See*
4 Becher Decl. Ex. 6 at 20:24-21:4 (acknowledging that the Court's order "compelled [Ms. Davis]
5 to give exactly the same opinions that Mr. Musika gave . . . using the same documents he used").

6 Ms. Davis also relies extensively on testimony not cited by Mr. Musika in his reports or at
7 trial. *First*, Ms. Davis cites deposition transcripts and declarations that do not appear anywhere in
8 Mr. Musika's reports—including the declaration of Eric Roberts, a Morrison Foerster employee
9 who was never deposed in this case.[9] *Second*, Ms. Davis relies on the trial testimony of several
10 individuals, including Scott Forstall, Chris Stringer, Russell Winer, Susan Kare, Peter Bressler,
11 and Dong Hoon Chang, none of whom were even mentioned in Mr. Musika's reports or trial
12 testimony. Davis Rpt. ¶¶135, 136.  *Finally*, Ms. Davis belatedly addresses testimony that Mr.
13 Musika did not respond to at trial. *Id.* (Junyeun Wang); *see also id.* at ¶165 (Tim Sheppard).
14 Because Apple chose not to recall Mr. Musika for further testimony at the conclusion of
15 Samsung's case, Ms. Davis should not be permitted to address this testimony.

16 Finally, Mr. Musika testified at trial about just four trial exhibits.[10] Trial Tr. at 2031-2172
17 (testimony limited to PX25A1, PX28, PX34 and PX194).  In contrast, Ms. Davis refers to dozens
18 of documents about which Mr. Musika did not testify, and which are directed to liability issues,
19 rather than damages.  *See, e.g.*, Davis Rpt. ¶¶132, 166, 254-256.  Apple's transparent strategy is to
20 introduce its entire liability case through Ms. Davis.  Such testimony is impermissible.

---

[8] Davis Rpt. ¶133 (citing APLNDC-Y0000146961, APLNDC-Y0000233381, APLNDC-Y0000234932, APLNDC-Y0000235973, PX142, PX11, PX12, PX13 and PX127).

[9] Davis Rpt. at ¶147 (citing 2/28/12 Decl. of Eric R. Roberts); *id.* at ¶¶152-153 (3/31/12 Depo, of Jaehwan Sim).

[10] Samsung understands the Court's order as limiting Ms. Davis's trial testimony to the evidence Mr. Musika presented to the jury at trial. *See, e.g.,* Becher Decl. Ex. 4 at 41:18-42:5 (the new trial is to be "a very simply change of Mr. Musika's exhibits to start from the correct date"). If Samsung's understanding of the Court's order is incorrect, both sides' damages experts should be permitted to rely on exhibits discussed in reports but not presented to the jury.

| | | |
|---|---|---|
| 1 | DATED: August 30, 2013 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By /s/ *Victoria F. Maroulis*
   Charles K. Verhoeven
   Kevin P.B. Johnson
   Victoria F. Maroulis
   William C. Price
   Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC