Exhibit 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   11-cv-01846-LHK<br><br>**EXPERT REPORT OF RAVIN BALAKRISHNAN, PH.D. REGARDING INFRINGEMENT OF U.S. PATENT NO. 7,469,381** |

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT TO A PROTECTIVE ORDER\*\***

Apple v. Samsung
Confidential – Attorneys' Eyes Only

1  (Application No. 11/956,969) is December 14, 2007, and its date of issue is December 23, 2008.

2  There are a number of related patent applications to which the '381 application claims priority,

3  the earliest of which is dated January 7, 2007.  I have reviewed portions of the deposition

4  transcript of Bas Ording, the named inventor of the '381 patent, and understand that Mr. Ording

5  conceived of his invention in early February 2005, and reduced it to practice in a prototype by

6  February 11, 2005.  (B. Ording 8/9/11 Dep. Tr. at 126:3 – 130:7.)

7          43.     According to the abstract, the '381 patent relates to translation of an electronic

8  document on a touch screen display in response to a user's movement of an object, such as the

9  user's finger, on or near the touch screen.  The '381 patent generally claims an innovative method

10  of informing the user of a touch screen mobile device that the edge of an electronic document has

11  been reached by allowing the user to scroll beyond the edge of the document and to view an area

12  beyond the edge of the document for as long as the user keeps his finger in contact with the

13  screen.  Once the user's finger is removed, the '381 patent describes having the document or

14  image scroll back into place so that the area beyond its edge is no longer shown, and the

15  document or image can be viewed.

16          44.     An overview of the invention is depicted in Figures 8A-8D, which show the '381

17  patent's "rubber banding" feature in action:



25          45.     This invention provides an elegant and appealing form of visual feedback to a user

26  that there is no more of a document to be seen.  For example, if a user is zoomed in on one part of

27  a large photo, he may continue to scroll the photo as he looks at other parts of the image.  Not

28

knowing exactly where the photo ends, he may continue to scroll in a direction even when there is no more of the photo to display. When this happens, an area beyond the edge of the photo will be displayed, and once the user lifts his finger, the photo will "bounce" or "rubber band" back to fill the screen. This form of visual feedback is readily understood and makes clear to the user that he cannot continue to scroll in that direction.

46. It also solves two primary problems with user interfaces. First, it averts situations in which a user believes his device has frozen or become inoperable (the "frozen screen" problem) because there is a "hard stop" and no clear visual feedback that no further scrolling is possible. Second, it prevents a user from scrolling infinitely away from an electronic document and getting lost in what is known as "desert fog." Accordingly, the inventions of the '381 patent make possible a user interface that is more visually appealing and intuitive in its handling of the display of electronic documents.

### B. Person of Ordinary Skill in the Art

47. If called to testify at trial on the topic of the definition of a person of ordinary skill in the art for the '381 patent, I expect to testify regarding the skill, education, and experience that a person of ordinary skill in the relevant art would have had at the time of the invention of the '381 patent. In my opinion, and as submitted by Apple in a January 19, 2012 Joint Statement (Dkt. No. 650), a person of ordinary skill in the relevant art of the '381 patent at the time of the invention would have a Bachelor's degree in computer science or electrical engineering, or the equivalent, and one or more years experience working on designing and/or implementing user interfaces.

### C. Apple's Practice Of The '381 Patent

48. I have examined a number of Apple products, including the iPhone 4S, iPhone 4, iPhone 3GS, iPhone 3G, iPhone, iPad 2, iPad, and iPod touch. It is my opinion that each of these products practices the claims of the '381 patent. For example, with Apple's iPhone 4, a user can open an electronic document such as a photograph or a web page, and view a first portion of that electronic document. The iPhone 4 can detect the movement of a user's finger, such as a scrolling gesture, and then display a second portion of that electronic document. If the user

attempts to scroll the electronic document beyond its edge, the iPhone 4 displays an area beyond the edge of the electronic document along with a third smaller portion of the electronic document. When the user lifts his finger from the touch screen, the electronic document moves back into place to fill the screen, and a fourth portion of the electronic document different from the first portion is displayed.

49. Based on my examination of the aforementioned Apple products, I conclude that they practice the asserted apparatus and system claims of the '381 patent, and their ordinary and intended use practices the asserted method claims of the '381 patent. I have examined portions of the source code for Apple's iOS version 4.1 operating system and confirmed the behavior I saw on the iPhone 4 in the following source code modules: the UIScrollView class or subclass (for example, UIWebBrowserView and UIWebDocumentView); the touch panel (e.g., Grape) driver; UIKit classes; IOKit classes; SBHIDinterface.m; the SpringBoard application; and UIPanGestureRecognizer class or subclasses.

50. Moreover, my examination was further confirmed by the testimony of the inventor of the '381 patent, Bas Ording, who testified generally that certain applications on an iPhone 4 behaved in a manner consistent with his ideas in the '381 patent. (Ording 8/9/11 Dep. Tr. at 198:6 – 201:3.)

**D.   Samsung's Emulation Of Apple And The Features Of The '381 Patent**

51. I have also reviewed a number of documents produced by Samsung in this litigation, including analyses of features in Apple products and email messages. Based on my review of these documents, it appears that Samsung studied a number of Apple products that embody the asserted claims of the '381 patent, recognized the benefits of the '381 patent, and implemented the features of the '381 patent in Samsung products.

52. As just one example, in the document titled "Behold3 Usability Evaluation Results" (SAMNDCA00508318 – 508411), Samsung evaluated its Behold3 phone against Apple's iPhone. (SAMNDCA00508331; *see* translations of excerpts in Apple's Appendix of Certified Translations in Support of Opening Expert Reports ("Translations App'x").) This evaluation concluded that Samsung's "Behold3 [was] shown inferior to Apple's iPhone in both

1  the task success rate (68.5%) and satisfaction score (86)." (SAMNDCA00508333.)  On a page

2  titled "Aesthetics_Browsing," the document notes that the iPhone has "a 'bouncing' visual

3  effect," which "generates fun for the user," while the Behold3 has "no visual effect" when "a web

4  page is dragged to its endpoint." (SAMNDCA00508383.)  On that page, there is a side by side

5  comparison between the Behold3 and the iPhone, where the rubber-banding feature of the '381

6  patent is being demonstrated on a web page displayed on the iPhone. (*Id.*)  Specifically, the

7  displayed web page is being pulled to the upper right hand corner, revealing an area beyond the

8  edge of the web page to the left and below. (*Id.*)  The caption notes that "If a web page is

9  dragged to the edge, and the hand is released, a 'bouncing' visual effect is provided."  At the

10 bottom of the page, following the column "Direction of Improvement," is a direction to "Provide

11 a fun visual effect when dragging a web page." (*Id.*)  Based on the existence of this feature in the

12 Samsung devices I examined, it appears that this instruction was carried out.

13     53.   As another example, in the document titled "P5 Usability Evaluation Results"

14 (SAMNDCA00176053 – 176171; *see* translation of excerpts in Translations App'x), Samsung

15 evaluated a prototype of its "GT-P7300" (the Galaxy Tab 8.9) against Apple's iPad 2.

16 (SAMNDCA00176053.)  The document notes that the "GUI and Visual Effect are lacking in

17 comparison to iPad 2." (SAMNDCA00176055.)  Subsequently, the evaluation notes that when a

18 Browser application window is scrolled to the top or bottom, the P5 "lack[s] bounce effect," and

19 that the Samsung's product "Lacks Fun, Wow Effect." (SAMNDCA00176071.)  This issue

20 appears to have been designated "Critical," with the direction that the "Bounce effect is scheduled

21 to be reviewed." (*Id.*)  Later in the evaluation, there is a side by side comparison between the P5

22 and the iPad 2, where the rubber-banding feature of the '381 patent is being demonstrated on a

23 web page displayed on the iPad 2. (SAMNDCA00176125.)  Specifically, the displayed web page

24 is being pulled to the lower right hand corner, revealing an area beyond the edge of the web page

25 to the left and above. (*Id.*)  To the right, it states that "In case of iPad 2, there is a fun element

26 from a natural Bounce effect that follows hand gestures." (*Id.*)  Based on this statement, it

27 appears that Samsung understood at least part of the purpose and value of the rubber banding

28 feature of the '381 patent, which were to provide a natural, intuitive experience for the user that

Apple v. Samsung
Confidential – Attorneys' Eyes Only

1   could also inspire wonder and a sense of delight.  On the other hand, the P5 prototype is described

2   as lacking the "Bounce effect."  (*Id*.)  Finally, the evaluation notes as an area for "Proposed

3   Improvement" of the P5 the incorporation of the "Bounce effect" from the iPad 2.  (*Id*.)

4        54.     I have also reviewed a spreadsheet titled "Analysis of Galaxy tab Operation Speed

5   and Screen Effects" (SAMNDCA00201771 – 201780; *see* translation in Translations App'x.)

6   This ten-page chart shows a detailed side-by-side comparison and analysis of over 70 features in

7   the iPad and the Galaxy Tab.  Samsung concluded that its Memo and Browser applications had

8   "no emotional impact" because they lacked the "Bounce effect" included in the iPad.

9   (SAMNDCA00201773-6.)  As discussed above, the "bouncing" or "bounce" feature described in

10  Samsung's documents is an example of a feature covered by the '381 patent.  Based on my

11  analysis of the Galaxy Tab and Galaxy Tab 10.1, I conclude that Samsung implemented this

12  feature in the Galaxy Tab and Galaxy Tab 10.1 products as well.

13       55.     I understand that Samsung has identified Mr. Wookyun Kho as a person involved

14  in the implementation of the "bounce" feature in Samsung products.  (*See* Samsung's

15  Supplemental Response to Apple's Interrogatory No. 16.)  Based on Samsung emails and the

16  portions of the Wookyun Kho deposition transcript I reviewed, it appears that Mr. Kho studied

17  the "bounce" or "bouncing" feature in various Apple products including the iPhone 3GS, iPhone

18  4, iPad, and iPad 2 in order to improve Samsung's products.  (*See, e.g.*, W. Kho 1/12/12 Dep. Tr.

19  at 40:1-44:11, 48:18-49:21.)  In particular, Mr. Kho appears to have worked with an outside

20  contractor company called NemusTech to emulate the features of the iPad and make the "bounce

21  effect" in Samsung's Galaxy Tab prototype similar to the iPad.  (SAMNDCA10851706-7;

22  SAMNDCA10850604-6; *see* translations in Translations App'x.)

23       56.     Other documents I have reviewed also indicate that Samsung carried out extensive

24  analysis of various Apple products and emulated many of Apple's features beyond the '381

25  patent features discussed above.  For example, in December 2007, Samsung analyzed various

26  multi-touch features of the iPhone and compared the iPhone with non-touch-based phones from

27  other competitors.  (SAMNDCA11394122-26; *see* translation of excerpts in Translations App'x.)

28  Observing that the iPhone represented a "new paradigm" in the mobile phone market and

provided "Intuitive, Inventive UI," Samsung considered an internal development proposal for implementing the touch features of the iPhone, including multi-touch features, in its future products. (SAMNDCA11394125, 31, 32.)

57. In April 2008, Samsung compared the iPhone and the phones from other competitors with its products. (SAMNDCA00229011-108.) None of the phones from Samsung or other competitors had the iPhone's multi-touch user interface. (SAMNDCA00229018.) Samsung remarked that the iPhone had a "highly animated interface," and that it was "a delight to the eye as well as a highly usable device." (SAMNDCA00229020.) Samsung conducted many more detailed studies of the iPhone user interface from 2008 to 2010 comparing it with various Samsung products and/or other competitors' products. (SAMDNCA10248844-913; SAMNDCA10244357-412; SAMNDCA10993206-211; SAMNDCA10252803-841; SAMNDCA10988469-504.)

58. Although Samsung looked at phones from most of its competitors, Samsung had decided by the end of 2009 to follow the design of the iPhone. For example, the "CEO's Directives" given out in December 2009 included a direction that "[g]oing forward our comparison standard is Apple iPhone." (SAMNDCA10907803; *see* translation in Translations App'x.) In March 2010, an email from a high level UX (user experience) designer at Samsung conveyed the CEO's message that "strongly criticized Samsung UX's mindset of 'clinging to the past generation'," which the designer interpreted as an "instruction to think about and decide all matters from the perspective of the user," the most representative example of which was "obviously the iPhone." (SAMNDCA10247549; *see* translation in Translations App'x.)

59. A Samsung report dated April 2, 2010, titled "Next Phase UX Direction" summarized the status of the Samsung UX as: "Benchmarking iPhone led to cut and paste improvements resulting in lack of consistent philosophy." (SAMNDCA10998232; *see* translation of excerpts in Translations App'x.) The same document characterized the "Philosophy and Characteristics" of the iPhone's UX as "Easy and simple Usability," "Modern and minimal Look & style," and "Emotional and joyful Experiencing." (SAMNDCA10998214.) I understand that Samsung's Galaxy S phone was released in the United States during the summer of 2010.

60. Additional Samsung documents show that Samsung continued its analysis of Apple and its examination and comparison of Apple products, including the iPhone, iPad, and iPad 2, throughout 2010 and 2011. (*See* SAMNDCA00203811-3879; SAMNDCA00203880-4010; SAMNDCA00229399-9409; SAMNDCA00229449-9451; SAMNDCA00525347-5349; SAMNDCA00525353-5356; SAMNDCA00525362; SAMNDCA10244357-4412; SAMNDCA10247283-7372; SAMNDCA10252803-2841; SAMNDCA10988469-88504; SAMNDCA10989107-9179; SAMNDCA10989363-9379; SAMNDCA10989840-9941; SAMNDCA10990627-0713; SAMNDCA10992025-2057; SAMNDCA10992072-2131; SAMNDCA10993206-3226; SAMNDCA10997825-7879; SAMNDCA10998016-8035; SAMNDCA11289451-9473; and SAMNDCA11313301-3303; *see* select translations in Translations App'x.)

### E. Samsung's Knowledge of the '381 Patent

61. I understand that Samsung knew of the '381 patent by no later than August 27, 2010. On that day, Chip Lutton, counsel for Apple, sent an email to K.J. Kim, counsel for Samsung, that attached two presentations that identified the '381 patent and provided an overview of its features. (*See* APLNDC00001101-1102 (email), APLNDC00001103-1123 (presentation identifying '381 patent), and APLNDC00001126-1192 ('381 overview at (1152-1153).))

### F. Samsung's Infringement of Claim 1 of the '381 Patent

62. **Claim 1.** Claim 1 of the '381 patent recites:

> A computer-implemented method, comprising:
>
> [a] at a device with a touch screen display:
>
> [b] displaying a first portion of an electronic document;
>
> [c] detecting a movement of an object on or near the touch screen display; in response to detecting the movement, translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion;
>
> [d] in response to an edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display: displaying an area beyond the edge of the document, and displaying

## AA. Supplementation

267. I reserve the right to supplement this report with new information and/or documents that may be discovered or produced in this case, or to address any new claim constructions offered by Samsung or ordered by the Court.

268. In connection with my anticipated testimony in this action, I may use as exhibits various documents produced in this case that refer or relate to the matters discussed in this report. In addition, I may have demonstrative exhibits prepared to assist in the presentation of my testimony and opinions as set forth or cited in my report.

Dated: March 22, 2012

_____
RAVIN BALAKRISHNAN