Exhibit 7

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
 3    _____
 4    APPLE INC., a California          )
      corporation,                      )
 5                                      )
              Plaintiff,                )
 6                                      )
         vs.                            ) Case No.
 7                                      ) 11-CV-01846-LHK
      SAMSUNG ELECTRONICS CO.,          )
 8    LTD., a Korean business           )
      entity; SAMSUNG ELECTRONICS       )
 9    AMERICA, INC., a New York         )
      corporation; SAMSUNG              )
10    TELECOMMUNICATIONS AMERICA,       )
      LLC, a Delaware limited           )
11    liability company,                )
                                        )
12            Defendants.               )
      _____
13
         HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15      VIDEOTAPED DEPOSITION OF KARAN SINGH, PH.D.
16             Redwood Shores, California
17              Thursday, April 26, 2012
18                   Volume I
19
20
21    Reported by:
      Danielle de Gracia
22    CSR No. 13650
23    Job No. 143641
24
25    PAGES 1 - 285
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 8

1  Foerster, also for Apple.
2         THE VIDEOGRAPHER:  The court reporter today
3  is Danielle de Gracia of Veritext.  Would the
4  reporter please swear in the witness?
5                                                    11:04:52
6             KARAN SINGH PH.D.,
7  having been administered an oath, was examined and
8  testified as follows:
9
10        THE VIDEOGRAPHER:  Please begin.            11:05:02
11
12                  EXAMINATION
13 BY MR. BRIGGS:
14    Q   Good morning.
15    A   Good morning.                               11:05:04
16    Q   Please state your name for the record.
17    A   Karan Singh.  My passport has my first name
18 as Karansher.
19    Q   What is your business address?
20    A   My university address?                      11:05:16
21    Q   Yes.
22    A   40 St. George Street, Toronto, Ontario,
23 University of Toronto.
24    Q   Do you live in Toronto?
25    A   Yes.                                        11:05:29

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 157

1  BY MR. BRIGGS:
2      Q   Based on your experience in the industry?
3      A   Sometimes.
4      Q   If a company, you know, wants to be
5  successful, they need to know what their competitors    04:10:25
6  are doing, correct?
7      A   Depends on the situation.  If they are
8  indeed inventing something that is completely new,
9  then there's -- there's nothing to necessarily
10 emulate.                                                04:10:45
11     Q   Do you believe there is anything unlawful
12 about looking at a competitor's products?
13         MR. MONACH:  Objection.  Lack of foundation.
14 Incomplete hypothetical.
15         THE WITNESS:  I'm not a lawyer.  I couldn't     04:10:58
16 opine on the legality of looking at a competitors's
17 products.
18 BY MR. BRIGGS:
19     Q   Well, based on -- on your experience in the
20 industry, do you think it's wrong to look at a          04:11:08
21 competitor's product?
22     A   Answered -- asked in a completely general
23 setting, no, there is nothing wrong.
24     Q   Now, you cite several documents in the
25 section called Samsung's Emulation of the Features of   04:11:38

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 158

1    the '163 patent.  In reviewing those documents, did
2    you see anything in those documents that suggested
3    that that Samsung was doing anything wrong?
4           MR. MONACH:  Objection.  Lack of foundation
5    and vague.                                              04:11:55
6           THE WITNESS:  I'm not sure what you mean by
7    wrong.  So if you can qualify what you mean by wrong,
8    then I can answer such a question.
9    BY MR. BRIGGS:
10       Q   What, if you remember, what -- what did you    04:12:06
11   see in these documents?
12       A   Well, I believe I saw what I point out in
13   my -- in my report, which is statements and
14   instructions instructing or encouraging what I would
15   perhaps call emulation or copying off another -- off   04:12:41
16   a competitor's product.
17       Q   Okay.  What specifically did you see in
18   these documents that led you to believe that there
19   might be emulation or copying?
20       A   Well, one such document would be -- it's a    04:13:01
21   document where -- where the -- where the -- the Apple
22   product and Samsung product's browser zooming
23   functionality was being -- was being compared and
24   the -- the -- sort of the -- kind of the -- the cont-
25   -- the contrusion of that somewhat that analysis was   04:13:46

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 159

1  that -- was that the Apple products functionality was
2  superior and perhaps that the Samsung product should
3  attempt to -- should attempt to emulate that and
4  perform in a manner that is -- that is substantially
5  equivalent to that.                                    04:14:07
6      Q   What performance was being measured in this
7  document to the best of your recollection?
8      A   This was not a performance document.
9      Q   Okay.
10     A   There were other performance documents as     04:14:17
11 well, but this was a design document.
12     Q   Let me ask you this.  If BMW came out with a
13 car and it went from 0 to 60 in 5 seconds and, let's
14 say, Porsche looked at that car and they had a
15 competing car which was going 0 to 60 in 5.5 seconds, 04:14:41
16 and somebody at Porsche said, "Let's make our car go
17 0 to 60 in 5 seconds because that's what the BMW
18 does," do you think there is anything wrong with
19 that?
20     A   So that's somewhat of a hypothetical picture  04:15:04
21 that you painted.  Let me -- I can try and make your
22 analogy a little closer.
23     Q   Okay.
24     A   If in fact you were just trying to somehow
25 overall turn -- turn, you know, a car that happened   04:15:31

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 162

| | | |
|---|---|---|
| 1 | THE WITNESS:  I believe it was the document | |
| 2 | that gave me reason to believe that this was the | |
| 3 | case. | |
| 4 | BY MR. BRIGGS: | |
| 5 | Q   Okay.  But as you sit here today, you can't | 04:18:52 |
| 6 | remember a specific document that showed a double tap | |
| 7 | to zoom followed by -- or described that followed by | |
| 8 | another tap? | |
| 9 | A   No.  As I sit here today, I believe there | |
| 10 | was a design document that indicated that -- | 04:19:07 |
| 11 | indicated that the -- that two taps, you know, | |
| 12 | that -- that multiple gestures, a first gesture and | |
| 13 | then a second gesture was desirable and perhaps | |
| 14 | should be emulated. | |
| 15 | Q   Are you aware of any design-arounds to the | 04:19:32 |
| 16 | '163 patent? | |
| 17 | MR. MONACH:  Objection.  Vague. | |
| 18 | THE WITNESS:  I mean, I don't know | |
| 19 | conclusively but I believe there may have been | |
| 20 | some -- some suggestions proffered in -- in the -- in | 04:19:55 |
| 21 | one of the reports of Mr. Gray. | |
| 22 | BY MR. BRIGGS: | |
| 23 | Q   Could you implement a design-around to the | |
| 24 | '163 patent? | |
| 25 | MR. MONACH:  Objection.  Vague. | 04:20:10 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 163

1  THE WITNESS:  I think the '163 is a
2  wonderful design.  I would have to question the
3  motivation to even -- even want to design around it.
4  BY MR. BRIGGS:
5      Q   What about the second gesture, could --   04:20:18
6  could you instead of performing the second tap, make
7  that second tap do something different like, for
8  example, zoom -- zoom the device out after you zoom
9  in?
10     A   Well, that's sort of a hypothetical        04:20:41
11 scenario.  But I would -- I would question, firstly,
12 as I said, I would question the motivation -- the
13 desire to do it.  I mean, the design of having a
14 second gesture, I think shows wonderful insight in
15 the -- in the browsing experience that the likelihood 04:21:14
16 that when you are in a zoomed in view to read a
17 particular portion of a document, that you are likely
18 to want to continue to perhaps read other neighboring
19 or -- or other content rather than wanting to go back
20 out of context, and then potentially come back.      04:21:42
21         So to me, that's -- that's -- that's
22 quite poor -- quite a poor alternative.  Plus I would
23 have to look at that alternative precisely and
24 analyze it to -- to -- to make sure that it didn't
25 actually -- that it in fact was a design-around.     04:22:04

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 191

1  of tape number four in the deposition of Karan Singh.
2  Going back on the record.  The time is 5:27.
3  BY MR. BRIGGS:
4      Q   Okay.  Dr. Singh, do you have any evidence
5  that the feature covered by the claims of the '163       05:27:24
6  patent is responsible for the commercial success of
7  any product?  I'm focusing on the specific feature
8  covered by the '163 patent.
9      A   As I mentioned before, I believe that the --
10 the claims of the -- the innovations represented in     05:27:52
11 the claims of the '163 product are -- are certainly
12 in part responsible for -- for -- for the success of
13 the Apple products.
14          I have indicated certain articles.  And as I
15 also mentioned that these articles are written by --    05:28:17
16 by people that are -- that are sort of critics and
17 reviewers.  And they -- I think they -- they tend to
18 speak to the holistic experience because they are
19 also writing these articles to -- for -- that are
20 going to be readable by a completely lay audience.      05:28:46
21          So I think for them to delve into very
22 specific detail is -- is going to lead -- is going to
23 result in very -- very bland reading, I would
24 imagine, for a lay, you know, a layperson.  And on
25 the other hand what they've -- they've attempted to     05:29:10

Page 192

1 do is lowered the overall browser experience, which I
2 believe is what the '163 holistically attempts to
3 capture.
4 Q But it's true that none of these articles
5 describe a specific technique covered by the claims    05:29:30
6 of the '163 patent, right?
7 A They refer to the overall design of the '163
8 patent, as I said, holistically. They do not
9 specifically use the claim language or claim elements
10 of not and certain, you know. They might use some of  05:29:52
11 them. They certainly don't use -- they may or may
12 not use -- they may or may not use all of them.
13        But I still believe that -- that they are --
14 they sufficiently indicate to me that the overall --
15 yeah. The overall experience that the '163 provides   05:30:18
16 is quite -- quite successful and considered novel --
17 considered useful and powerful over what people had
18 before.
19        To me, you know, the sentence that says, you
20 know, is lighter, simply more powerful than any other  05:30:45
21 machine is somewhat testimony to that.
22 Q There is no mention in these articles of the
23 second gesture that's covered in the claims of '163
24 patent, correct?
25 A Well, you know, I have some excerpts over    05:31:06

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 285

1       I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:
4       That the foregoing proceedings were taken
5   before me at the time and place herein set forth;
6   that any witnesses in the foregoing proceedings,
7   prior to testifying, were placed under oath; that a
8   verbatim record of the proceedings was made by me
9   using machine shorthand which was thereafter
10  transcribed under my direction; further, that the
11  foregoing transcript is an accurate transcription
12  thereof.
13      I further certify that I am neither
14  financially interested in the action nor a relative
15  or employee of any attorney or party to this action.
16      IN WITNESS WHEREOF, I have this date
17  subscribed my name.
18
19  Dated:  April 30, 2012
20
21
22                  _____
                    Danielle de Gracia
23                  CSR No. 13650
24
25