# Exhibit 11

1            UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3                SAN JOSE DIVISION
4
5   APPLE INC., a California         )
    Corporation,                     )
6                                    )
          Plaintiff,                 )
7                                    )
    vs.                              )No. 11-CV-01846-LHK
8                                    )
    SAMSUNG ELECTRONICS CO., LTD. ,  )
9   a Korean business entity;        )
    SAMSUNG ELECTRONICS AMERICA,     )
10  INC., a New York corporation;    )
    SAMSUNG TELECOMMUNICATIONS       )
11  AMERICA, LLC, a Delaware    )
    limited liability company,       )
12                                   )
          Defendants,                )
13  _____    )
14
15     HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
16            DEPOSITION OF TIMOTHY BENNER
17           WEDNESDAY, FEBRUARY 22, 2012
18
19
20
21
22
23
24  REPORTED BY:  JUDIE A. NICHOLAS, CSR NO. 12229
25  JOB NO:  46809

Attorneys' Eyes Only

Page 6

1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                    SAN JOSE DIVISION
4
5    APPLE INC., a California         )
     Corporation,                     )
6                                     )
            Plaintiff,                )
7                                     )
     vs.                              )No. 11-CV-01846-LHK
8                                     )
     SAMSUNG ELECTRONICS CO., LTD. ,  )
9    a Korean business entity;        )
     SAMSUNG ELECTRONICS AMERICA,     )
10   INC., a New York corporation;    )
     SAMSUNG TELECOMMUNICATIONS       )
11   AMERICA, LLC, a Delaware         )
     limited liability company,      )
12                                    )
            Defendants,               )
13   _____  )
14
15         BE IT REMEMBERED, that on Wednesday,
16   February 22, 2012, commencing at the hour of 9:12
17   a.m. thereof, at the offices of Morrison & Foerster,
18   755 Page Mill Road, Palo Alto, California, before
19   me, Judie A. Nicholas, a Certified Shorthand
20   Reporter of the State of California, there
21   personally appeared.
22                    TIMOTHY BENNER,
23   called as a witness by the Plaintiff, who, being by
24   me first duly sworn, was thereupon examined and
25   testified as hereinafter set forth.

Attorneys' Eyes Only

Page 30

1  now I've kind of forgotten what the first part of                09:37
2  the question was.                                                 09:37
3         MR. ROBINSON:  Q.  We have to start                        09:37
4  somewhere with this deposition.                                   09:37
5         I'm trying to get STA's testimony                          09:37
6  regarding something you agree you're here to                      09:37
7  testify about, which is the importance of physical                09:37
8  appearance to consumers of smartphones.                           09:38
9         Now, do you agree with me you're here to                   09:38
10 give testimony on behalf of STA on that subject                   09:38
11 matter?                                                           09:38
12      A.  I do agree to that.                                      09:38
13      Q.  Please explain to me, as you would to the                09:38
14 jury, in simple terms, STA's position on whether                  09:38
15 the physical appearance of a smartphone is or is                  09:38
16 not an important factor in consumer purchasing                    09:38
17 decisions.                                                        09:38
18      A.  I would say --                                           09:38
19         MS. CARUSO:  Objection:  Calls for a                      09:38
20 narrative; compound and vague.                                    09:38
21         THE WITNESS:  I would say that physical                   09:38
22 appearance is a factor in the decision -- purchase                09:38
23 decisions.  I cannot rate the relative importance                 09:38
24 across all of consumers because it varies in                      09:38
25 importance by consumer group or segment.                          09:38

Attorneys' Eyes Only

Page 37

| | | |
|---|---|---|
| 1 | relative importance.  It is an aspect. | 09:45 |
| 2 | Q.  Isn't it true, Mr. Benner, that surveys | 09:46 |
| 3 | that Samsung had received show that the single most | 09:46 |
| 4 | important reason why consumers purchase a | 09:46 |
| 5 | particular smartphone brand is because they like | 09:46 |
| 6 | its overall physical appearance? | 09:46 |
| 7 | MS. CARUSO:  Objection:  Mischaracterizes | 09:46 |
| 8 | the record; lacks foundation. | 09:46 |
| 9 | THE WITNESS:  Can you show me which | 09:46 |
| 10 | surveys you're referring to? | 09:46 |
| 11 | MR. ROBINSON:  Q.  Do you -- did you | 09:46 |
| 12 | understand the question, sir? | 09:46 |
| 13 | A.  I did understand the question. | 09:46 |
| 14 | Q.  Do you not know how to answer the question | 09:46 |
| 15 | without looking at a document? | 09:46 |
| 16 | A.  I have many surveys which show different | 09:46 |
| 17 | things among different consumer groups, so I cannot | 09:46 |
| 18 | answer the question as phrased because it is too | 09:46 |
| 19 | broad. | 09:46 |
| 20 | Q.  Can you name, sir, one survey that Samsung | 09:47 |
| 21 | has received which shows that the physical | 09:47 |
| 22 | appearance of a particular smartphone -- strike | 09:47 |
| 23 | that. | 09:47 |
| 24 | Mr. Benner, can you name a single survey | 09:47 |
| 25 | which Samsung has received that shows that the | 09:47 |

Attorneys' Eyes Only

Page 38

| | | |
|---|---|---|
| 1 | physical appearance of a smartphone is unimportant | 09:47 |
| 2 | to consumer purchasing behavior? | 09:47 |
| 3 | MS. CARUSO: Objection: Vague. | 09:47 |
| 4 | THE WITNESS: I cannot. | 09:47 |
| 5 | MR. ROBINSON: Q. Why is that, sir? | 09:47 |
| 6 | A. Because appearance is an aspect of choice | 09:47 |
| 7 | in almost every decision. | 09:47 |
| 8 | Q. Are there any surveys, to your knowledge, | 09:47 |
| 9 | that show the physical appearance of a smartphone | 09:47 |
| 10 | is not an important consideration driving consumer | 09:47 |
| 11 | purchases of smartphones? | 09:47 |
| 12 | MS. CARUSO: Objection: Asked and | 09:47 |
| 13 | answered, and vague. | 09:47 |
| 14 | THE WITNESS: I answered that question. | 09:47 |
| 15 | That was the same question. | 09:47 |
| 16 | MR. ROBINSON: Q. And your answer was no; | 09:47 |
| 17 | is that right? | 09:47 |
| 18 | MS. CARUSO: Objection: Mischaracterizes | 09:47 |
| 19 | the prior testimony. | 09:47 |
| 20 | THE WITNESS: My answer was no to the | 09:47 |
| 21 | previous question. | 09:47 |
| 22 | MR. ROBINSON: Q. The answer is no, you | 09:47 |
| 23 | can't think of a single survey which shows that the | 09:48 |
| 24 | physical appearance of a smartphone is unimportant | 09:48 |
| 25 | to consumer purchasing decisions; is that right? | 09:48 |

Attorneys' Eyes Only

Page 45

| | | |
|---|---|---|
| 1 | you? | 09:55 |
| 2 | A. Yes, I do. | 09:55 |
| 3 | Q. Do you recognize this document? | 09:55 |
| 4 | A. Yes, I do. | 09:55 |
| 5 | Q. What is it? | 09:55 |
| 6 | A. It is a report by a third-party, J.D. | 09:55 |
| 7 | Powers and Associates, 2009 Wireless Smartphone | 09:55 |
| 8 | Satisfaction Study, Volume I. | 09:56 |
| 9 | Q. For the record, Exhibit 1593 is entitled | 09:56 |
| 10 | 2009 Wireless Consumer Smartphone Satisfaction | 09:56 |
| 11 | Study, Volume I, Bates SAMNDCA00190144 through | 09:56 |
| 12 | 190243. | 09:56 |
| 13 | Is Exhibit 1593 a true and correct copy of | 09:56 |
| 14 | the J.D. Powers and Associates 2009 Wireless | 09:56 |
| 15 | Consumer Smartphone Satisfaction Study? | 09:56 |
| 16 | MS. CARUSO: Objection: Lacks foundation. | 09:56 |
| 17 | THE WITNESS: As far as I can tell it is, | 09:56 |
| 18 | but I would have to compare it to my own copy. But | 09:56 |
| 19 | I don't see any reason to believe it is not. | 09:56 |
| 20 | MR. ROBINSON: Q. Sir, do you understand | 09:57 |
| 21 | that documents were produced from your files in | 09:57 |
| 22 | this litigation? | 09:57 |
| 23 | A. Yes. That's why I said I don't see any | 09:57 |
| 24 | reason to say it's not. | 09:57 |
| 25 | Q. Did you have any role in selecting which | 09:57 |

Attorneys' Eyes Only

Page 56

| | | |
|---|---|---|
| 1 | the record and vague. | 10:27 |
| 2 |     THE WITNESS: I disagree. It does not say | 10:27 |
| 3 | that. | 10:27 |
| 4 |     MR. ROBINSON: Q. Could you turn, please, | 10:27 |
| 5 | to page an 52 of this document, SAMNDCA00190195. | 10:27 |
| 6 |     A. I'm sorry, which page? | 10:27 |
| 7 |     Q. 52 of this report. The Bates number at | 10:27 |
| 8 | the bottom, 190195. | 10:27 |
| 9 |     A. Yes, 52. | 10:27 |
| 10 |     Q. You understand that what's being depicted | 10:27 |
| 11 | in this chart that you see is the results of a | 10:27 |
| 12 | consumer survey done by J.D. Powers relating to | 10:27 |
| 13 | smartphones? | 10:27 |
| 14 |     A. Correct. | 10:27 |
| 15 |     Q. And this is an online survey; is that | 10:27 |
| 16 | correct? | 10:27 |
| 17 |     A. Yes. | 10:27 |
| 18 |     Q. Do you know approximately what the sample | 10:27 |
| 19 | size is? | 10:28 |
| 20 |     A. I could look. It's in the front of the | 10:28 |
| 21 | page. | 10:28 |
| 22 |     Q. Does about 2,000 sound about right? | 10:28 |
| 23 |     A. Sounds about right. | 10:28 |
| 24 |     Q. And do you see at the top it says "Reason | 10:28 |
| 25 | for choosing hand set brand"? | 10:28 |

Attorneys' Eyes Only

Page 57

| | | |
|---|---|---|
| 1 | A. Yes. | 10:28 |
| 2 | Q. What do you see is the number one reason | 10:28 |
| 3 | listed on the chart for why consumers chose a hand | 10:28 |
| 4 | set brand? | 10:28 |
| 5 | MS. CARUSO: Objection: Vague; | 10:28 |
| 6 | mischaracterizes the record. | 10:28 |
| 7 | THE WITNESS: There is no numeric titles | 10:28 |
| 8 | beside them. The highest percentage is 46, which | 10:28 |
| 9 | is design and style. | 10:28 |
| 10 | MR. ROBINSON: Q. And you get that all | 10:28 |
| 11 | the way on the top of this chart; is that correct? | 10:28 |
| 12 | A. Yes. However, this is a multiple select, | 10:28 |
| 13 | and, again, these are aspects of choice that go | 10:28 |
| 14 | together. It is not a single -- none of these are | 10:28 |
| 15 | exclusive of each other. | 10:28 |
| 16 | Q. Do you disagree that nearly half of all | 10:28 |
| 17 | respondents of this survey said that the reason for | 10:28 |
| 18 | choosing a hand set brand was they liked its | 10:28 |
| 19 | overall design and style? | 10:29 |
| 20 | A. I disagree with the way you phrased the | 10:29 |
| 21 | question. | 10:29 |
| 22 | Q. Do you disagree with the content? | 10:29 |
| 23 | A. Yes. | 10:29 |
| 24 | Q. Why? | 10:29 |
| 25 | A. Because it is -- you said "the" reason. | 10:29 |

Attorneys' Eyes Only

Page 59

| | | |
|---|---|---|
| 1 | A.   Correct.  Well, no.  Actually, it's not | 10:30 |
| 2 | tied for last place because, again, it just means | 10:30 |
| 3 | that fewer people selected it. | 10:30 |
| 4 | MR. ROBINSON:  I'd like to have this | 10:30 |
| 5 | marked as Exhibit 1594 a J.D. Powers and Associates | 10:30 |
| 6 | report entitled 2011 Wireless Smartphone | 10:30 |
| 7 | Satisfaction Study, Bates number SAMNDCA10246338. | 10:30 |
| 8 | (Exhibit No. 1594 marked | 10:30 |
| 9 | for identification.) | 10:30 |
| 10 | Do you have Exhibit 1594 front of you? | 10:31 |
| 11 | A.   Yes. | 10:31 |
| 12 | Q.   Is Exhibit 1594 a true and correct copy of | 10:31 |
| 13 | a J.D. Powers survey relating to smartphones? | 10:31 |
| 14 | A.   It appears to be. | 10:31 |
| 15 | Q.   Do you recognize this document? | 10:31 |
| 16 | A.   Yes. | 10:31 |
| 17 | Q.   Did STA purchase this document from J.D. | 10:31 |
| 18 | Powers? | 10:31 |
| 19 | A.   Yes. | 10:31 |
| 20 | Q.   Was Exhibit 1594 among the consumer | 10:31 |
| 21 | surveys that STA maintains in the ordinary course | 10:31 |
| 22 | of its business? | 10:31 |
| 23 | MS. CARUSO:  Objection: Vague. | 10:31 |
| 24 | THE WITNESS:  What do you mean by | 10:31 |
| 25 | "maintains?" | 10:31 |

Attorneys' Eyes Only

Page 60

1  MR. ROBINSON:  Q.  Does STA keep these    10:31
2  documents in its files somewhere?    10:31
3     A.  Yes.    10:31
4     Q.  And is Exhibit 1594, in fact, a document    10:31
5  that STA keeps in its files?    10:31
6     MS. CARUSO:  Objection:  Vague.    10:31
7     THE WITNESS:  To the best of my knowledge,    10:32
8  yes.    10:32
9     MR. ROBINSON:  Q.  Now, you said earlier    10:32
10 that the 2011 J.D. Powers Survey incorporated --    10:32
11 would you agree with me that -- actually, I can't    10:32
12 remember what you said about the reliability or the    10:32
13 improvement of the J.D. Powers studies over time,    10:32
14 and I believe you said that the 2011 was improved    10:32
15 versus the 2009.    10:32
16    A.  Yes.    10:32
17    Q.  Could you please turn to Bates number    10:32
18 SAMNDCA10246395.  This is page 58 of this document.    10:32
19    Let me know when you're there?    10:32
20    (Document reviewed by witness.)    10:32
21    A.  I'm there.    10:32
22    Q.  Do you see a similar chart that looks like    10:32
23 a 2009 study that says "Reasons for choosing hand    10:32
24 set brand"?    10:32
25    A.  Yes.    10:32

Attorneys' Eyes Only

Page 61

```
1       Q.   What is the criteria at the top?  Could        10:32
2   you read that for me, and the percentage into the       10:33
3   record.                                                 10:33
4       A.   Liked overall design/style, 45.                10:33
5       Q.   Thank you.                                     10:33
6            And do you see Operating System Platform       10:33
7   on this survey?                                         10:33
8       A.   I do.                                          10:33
9       Q.   Is it down towards the bottom?                 10:33
10      A.   Down towards the bottom.                       10:33
11      Q.   With about 20 percent?                         10:33
12      A.   That is correct.                               10:33
13      Q.   Does this mean that 45 percent of the          10:33
14  respondents said that the reason for choosing a         10:33
15  handset brand because they liked the style?             10:33
16      A.   No.  It says "a" reason.                       10:33
17      Q.   Thank you.                                     10:33
18           With that clarification, do you see touch      10:33
19  screen on this list?                                    10:33
20      A.   Yes.                                           10:33
21      Q.   And do you see that it says 43 percent         10:33
22  near it?                                                10:33
23      A.   I do see that.                                 10:33
24      Q.   Do you disagree that consumers ranked          10:33
25  highly the physical appearance of a smartphone?         10:34
```

Attorneys' Eyes Only

Page 64

| | | |
|---|---|---|
| 1 | dated 2006.  I started at STA in 2007. | 10:37 |
| 2 | Q.  Could you please turn to the Bates page | 10:37 |
| 3 | numbered SAMNDCA00248762? | 10:37 |
| 4 | A.  What's the actual page on that?  Are these | 10:37 |
| 5 | numbers -- | 10:37 |
| 6 | Q.  I'm not sure if it has actual page | 10:37 |
| 7 | numbers, so I'll probably just be -- | 10:37 |
| 8 | A.  It does. | 10:37 |
| 9 | MS. CARUSO:  It's page 21. | 10:37 |
| 10 | THE WITNESS:  Thank you. | 10:37 |
| 11 | MR. ROBINSON:  Q.  Do you see up at the | 10:37 |
| 12 | top it says "Design is a Key Driver That Gets | 10:38 |
| 13 | Phones Noticed At Point of Purchase and Delivers | 10:38 |
| 14 | Functional and Emotional Benefits"? | 10:38 |
| 15 | A.  I do see that. | 10:38 |
| 16 | Q.  Do you agree or disagree with the | 10:38 |
| 17 | statement? | 10:38 |
| 18 | MS. CARUSO:  Objection:  Vague as to time. | 10:38 |
| 19 | THE WITNESS:  This document was produced | 10:38 |
| 20 | in 2006, so my response to this document is that it | 10:38 |
| 21 | was produced before I was at STA.  I received a | 10:38 |
| 22 | large number of files from my predecessor, so this | 10:38 |
| 23 | was most likely in her files.  This is not a | 10:38 |
| 24 | document which I have ever read nor seen. | 10:38 |
| 25 | MR. ROBINSON:  Court reporter, could you | 10:38 |

```
                                                          Page 73
 1   of a key driver, rather than the key driver.         10:49
 2   Design is an issue we consider.  I would not         10:49
 3   consider it to be "the key," so my answer would be   10:49
 4   STA does not believe that design is "the" key        10:49
 5   driver.                                              10:49
 6       Q.  Are you referring to, under HHP, of the      10:49
 7   picture of the phone, looks like the iPhone?         10:49
 8           MS. CARUSO:  Objection:  Mischaracterizes    10:49
 9   the record.                                          10:49
10           THE WITNESS:  There's nothing that looks     10:49
11   like the iPhone on that page.                        10:49
12           MR. ROBINSON:  Q.  You don't think that      10:49
13   the phone depicted next to HHP looks like an         10:49
14   iPhone?                                              10:49
15           MS. CARUSO:  Objection:  Asked and           10:49
16   answered; argumentative; mischaracterizes the        10:49
17   record.                                              10:49
18           MR. ROBINSON:  Q.  What does HHP mean?       10:49
19       A.  Handheld phone.                              10:49
20       Q.  And do you see underneath in red print it    10:49
21   says "Design (Stylish)," do you see that?            10:49
22       A.  I do see that.                               10:49
23       Q.  Does that mean that headquarters             10:49
24   identified the Design (Stylish) as a strategic       10:49
25   driver?                                              10:50
```

Attorneys' Eyes Only

Page 74

1   A.   It does mean that headquarters identified   10:50
2   it as such.   10:50
3   Q.   Does -- do you see where it says "Easy to   10:50
4   Use"?   10:50
5   A.   I do see that.   10:50
6   Q.   What -- what is meant by "Easy to Use" in   10:50
7   this context?   10:50
8   A.   I honestly could not tell you that.   10:50
9   Q.   Do you see on the next page, page 9 --   10:50
10  A.   Yes.   10:50
11  Q.   Bates 245853, it says at the top, Meanings   10:50
12  of Global Strategic Attributes, do you see that?   10:50
13  A.   Yes.   10:50
14  Q.   And under the box that says HHP, it says   10:50
15  "Stylish Design, Trendy Design."   10:50
16  A.   I do see that.   10:50
17  Q.   It also says "Easy to Use"?   10:50
18  A.   Yes.   10:50
19  Q.   And it also says "High Quality, Trusted   10:50
20  Platform and Application & Tech," do you see that?   10:50
21       MS. CARUSO:  Objection:  Mischaracterizes   10:50
22  the record.   10:50
23       THE WITNESS:  I do see it.   10:50
24       MR. ROBINSON:  Q.  I guess literally it   10:50
25  says "Trusted perform in Application & Tech;" is   10:50

Page 112

1  back, please.                                                          11:57
2        THE REPORTER:  Question:  "Was it one of                         11:57
3  Samsung's objectives at this time to launch a                          11:57
4  product with touch screen ability to directly                          11:57
5  compete with the iPhone?"                                              11:57
6        THE WITNESS:  As expressed in this                               11:58
7  document, that is a possibility.                                       11:58
8        MR. ROBINSON:  Q.  Was that, in fact, what                       11:58
9  Samsung was considering at this time?                                  11:58
10       MS. CARUSO:  Objection:  Beyond the scope.                       11:58
11       THE WITNESS:  If it was in this document,                        11:58
12 it was most likely considered.  We considered all                      11:58
13 possibilities, or we like to think that.                               11:58
14       MR. ROBINSON:  Q.  Can you turn to page 6,                       11:58
15 Bates-labeled SAMNDCA00251513.  Do you see up at                       11:58
16 the top where it says Samsung short/medium term                        11:58
17 plan?                                                                  11:58
18    A.  I'm sorry, I think I'm on the wrong page.                       11:58
19    Q.  Page 8.                                                         11:58
20       MS. CARUSO:  You said 6.                                         11:58
21       MR. ROBINSON:  Q.  Did I?  I'm sorry.                            11:58
22       Looking at Bates 251513.                                         11:58
23    A.  Yes.                                                            11:58
24    Q.  What was Samsung's -- what is depicted on                       11:58
25 this page?                                                             11:59

```
                                                        Page 113
1          MS. CARUSO:  Objection:  Vague.              11:59
2          THE WITNESS:  Can you clarify what you're    11:59
3  asking, because there's a lot of things on this      11:59
4  page.                                                11:59
5          MR. ROBINSON:  Q.  You are here to --        11:59
6     A.   No, I understand that.                       11:59
7     Q.   I just want to make clear that you're here   11:59
8  to testify regarding the substantive content of      11:59
9  this document as well, okay?                         11:59
10    A.   Yes.                                         11:59
11    Q.   SO what is the substantive content being     11:59
12 portrayed here on this page, page 251513?            11:59
13         MS. CARUSO:  Objection:  Vague.              11:59
14         THE WITNESS:  In this page, it looks at      11:59
15 product short term, medium term plans, which is a    11:59
16 possible strategy being expressed as an option of    11:59
17 what to do regarding product.  It's fairly vague     11:59
18 and high level, so there's no definitive plan.  But  12:00
19 it's a high level.                                   12:00
20         MR. ROBINSON:  Q.  Down at the bottom        12:00
21 where it says "Samsung is addressing areas that      12:00
22 have limited value driving capabilities," did that   12:00
23 refer to Samsung's current product line as of 2008?  12:00
24    A.   In this case I'm not sure what exactly it    12:00
25 is referring to.  It looks like that it is           12:00
```

```
                                                        Page 114
 1   referring to a lot of different features.            12:00
 2        Q.  To the best of Samsung's knowledge and      12:00
 3   information, were the features depicted on this      12:00
 4   page, browser/user interface display and other,      12:00
 5   were those areas of high value driving consumer      12:00
 6   demand for smartphones following the release of the  12:00
 7   3G iPhone?                                           12:00
 8           MS. CARUSO:  Objection:  Vague; compound.    12:00
 9           THE WITNESS:  In my opinion, this is a --    12:00
10   a lot of these, or all of these in combination make  12:01
11   up, again, issues or items that consumers consider.  12:01
12           MR. ROBINSON:  Q.  Was the touch screen,     12:01
13   in particular the multi-finger touch screen, an      12:01
14   important driver of consumer purchasing decisions    12:01
15   following the launch of the 3G iPhone?               12:01
16           MS. CARUSO:  Objection:  Beyond the scope;   12:01
17   vague.                                               12:01
18           THE WITNESS:  As I stated earlier, it is     12:01
19   an element of decision making, and I'm not going to  12:01
20   testify to the multi-touch, just to the touch        12:01
21   screen, because I don't remember ever asking about   12:01
22   multi-touch.                                         12:01
23        Q.  You don't remember asking about             12:01
24   multi-touch?                                         12:01
25        A.  In a survey.                                12:01
```

Page 115

| | | |
|---|---|---|
| 1 | Q.  In a survey.  So there are -- so STA has | 12:01 |
| 2 | no consumer survey relating to the multi-touch | 12:02 |
| 3 | screen aspects of smartphones? | 12:02 |
| 4 | MS. CARUSO:  Objection:  Vague. | 12:02 |
| 5 | THE WITNESS:  Again, in my knowledge, in | 12:02 |
| 6 | the things that I do, I don't specifically ask | 12:02 |
| 7 | about multi-touch. | 12:02 |
| 8 | MR. ROBINSON:  Q.  On page 9, the next | 12:02 |
| 9 | page, Bates 251514, it says at the top "Product: | 12:02 |
| 10 | Samsung strengths do not translate well to touch." | 12:02 |
| 11 | Do you see that? | 12:02 |
| 12 | A.  I do see that. | 12:02 |
| 13 | Q.  What is meant by the sentence, "In the | 12:02 |
| 14 | touch segment differentiated IDs have little | 12:02 |
| 15 | utility"? | 12:02 |
| 16 | A.  In this case, it means that in the touch | 12:02 |
| 17 | segments that form factor or differentiated ideas | 12:02 |
| 18 | in terms of like flip and things like that are not | 12:03 |
| 19 | as big an issue for touch screen. | 12:03 |
| 20 | Q.  What does "ID" refer to? | 12:03 |
| 21 | A.  Identification. | 12:03 |
| 22 | Q.  Identification.  What's an example of ID? | 12:03 |
| 23 | A.  It would be something like candy bar or | 12:03 |
| 24 | slider or touch, or all of these different things. | 12:03 |
| 25 | Q.  I see.  And these are referring to the | 12:03 |

1    I, JUDIE A. NICHOLAS, a Certified
2 Shorthand Reporter of the State of California, duly
3 authorized to administer oaths, do hereby certify:
4    That the foregoing proceedings were taken
5 before me at the time and place herein set forth;
6 that any witnesses in the foregoing proceedings,
7 prior to testifying, were duly sworn; that a record
8 of the proceedings was made by me using machine
9 shorthand which was thereafter transcribed under my
10 direction; that the foregoing transcript is a true
11 record of the testimony given.
12    Further, that if the foregoing pertains to
13 the original transcript of a deposition in a
14 Federal Case, before completion of the proceedings,
15 review of the transcript (X) was ( ) was not
16 required.
17    I further certify that I am neither
18 financially interested in the action nor a relative
19 or employee of any attorney or party to this
20 action.
21    IN WITNESS WHEREOF, I have this date
22 subscribed my name.
23 Dated: 2/23/2012
24    _____
25    JUDIE A. NICHOLAS, CSR #12229