# EXHIBIT 1

Page 1

1         UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF CALIFORNIA
2             SAN JOSE DIVISION

3

4

5

6
   APPLE INC., A CALIFORNIA       :
7  CORPORATION,                   :
              PLAINTIFF,          :
8
                                  :
9      VS.                        : CASE NO.
                                  : 11-CV-01846-LHK
10 SAMSUNG ELECTRONICS, CO.,      :
   LTD., A KOREAN BUSINESS        :
11 ENTITY; SAMSUNG ELECTRONICS    :
   AMERICA, INC., A NEW YORK      :
12 CORPORATION; SAMSUNG           :
   TELECOMMUNICATIONS AMERICA,    :
13 LLC, A DELAWARE LIMITED        :
   LIABILITY COMPANY,             :
14
                 DEFENDANTS
15

16

17

18

19

20      DEPOSITION OF ANDRIES VAN DAM, an Expert
   Witness in the above-entitled cause, taken on
21 behalf of the Plaintiff, before Barbara
   Warner, RPR, Notary Public in and for the
22 State of Rhode Island, at the offices of
   Allied Court Reporters, 115 Phenix Avenue,
23 Cranston, RI, on September 14, 2011
   at 9:30 A.M.
24

25 Job Number: 41901

TSG Reporting - Worldwide        877-702-9580

```
 1   Q.  And it is your view that the path that the
 2       user has taken in figure 14B from the first,
 3       to the second, to the third portion, follows
 4       a first direction, even though there is some
 5       variation in the path?
 6       A. Yes.
 7   Q.  I wanted to clarify one thing for the record
 8       in your declaration.  And that is in the
 9       heading of your declaration for Exhibit 4,
10       you refer both to the WO, or PCT application?
11       A. Yes.
12   Q.  And also to the U.S. Patent.  Do you see
13       that?
14       A. I don't see it right now, because I don't
15       have it in front of me.
16   Q.  If you turn to page 1 of Exhibit 4, you will
17       see that.
18       A. Yes.  There is an and there, that's right.
19   Q.  And to be clear, Exhibit 4, that is Exhibit 4
20       to your declaration, which is Exhibit 136 in
21       today's deposition?
22       A. Yes.
23   Q.  You see that in Exhibit 4 to your
24       declaration, there is a reference to a PCT
25       application and U.S. Patent 7872640 to Lira.
```

1       Do you see that?
2       A. I do.
3   Q.  For purposes of your analysis to Lira, you
4       are equating the two references, correct?
5       A. To the best of my recollection, yes.
6   Q.  I'm asking this because --
7       A. I frankly don't recall which version I
8       studied.
9   Q.  As you sit here today, you are not offering
10      an opinion that your positions on
11      anticipation for the PCT/Lira application are
12      different than your positions on anticipation
13      for the U.S. 640 Patent to Lira, correct?
14              MR. BRIGGS:  Object to form.
15      A. Since I can't remember which version of
16      the patent I looked at, I can only suppose
17      that they cover substantially the same
18      material.
19  Q.  Do you believe you viewed both versions?
20      A. At one point I must have, but frankly I
21      can't recall.  I looked at so many things.
22  Q.  If you turn to page 11 of Exhibit 4 of your
23      declaration, you will see that there is a
24      purple, there's purple text which says, area
25      beyond the edge.  Do you see that?

| | | |
|---|---|---|
| 1 | | A. That's right. I do. |
| 2 | Q. | First of all in the Lira reference, what is |
| 3 | | the electronic document? |
| 4 | | A. The electronic document is that column, |
| 5 | | and this animation sequence of snapshot was |
| 6 | | moving the view port or window, whatever you |
| 7 | | want to call it, that exposes as you move |
| 8 | | downward, different parts, different |
| 9 | | portions, of the electronic document. |
| 10 | Q. | And the area beyond the edge as depicted, as |
| 11 | | you depicted on page 11 of Exhibit 4 to your |
| 12 | | declaration, how does the user know that they |
| 13 | | have moved beyond the edge? |
| 14 | | A. Because they are seeing material that |
| 15 | | wasn't there before and that doesn't seem to |
| 16 | | have any connection to the material that is |
| 17 | | shown inside that moving, sliding window. |
| 18 | | In the same way that we moved a |
| 19 | | zone, and we started moving into the area of |
| 20 | | the next zone, we saw a little bit of border |
| 21 | | area, and then the dominant visual includes |
| 22 | | the fact that we started seeing pictures of |
| 23 | | other tiles.  So here you see the beginning |
| 24 | | of a column of the next column over. |
| 25 | Q. | Between the middle and the rightmost column |

1      in figure 14B, how does one know where the
2      edge is between those two columns?
3      A. Well, in the illustration in the
4      specification for which this figure was
5      taken, there is some amount of solid area
6      demarcating the columns.  So you could have
7      your first clue by the fact that there is a
8      vertical stripe.  And if you move a little
9      further, you begin to see the pixels of the
10     neighboring column.
11  Q. We don't see a vertical stripe in figure 14B,
12     though, do we?
13     A. No.  I think we went beyond that in this
14     snapshot.  I think if you look at the master
15     drawing and you try to reconstruct it without
16     the successive snapshots of the window, you
17     will see that there is a border area between
18     the three columns in this particular
19     specification.
20             So you would have seen the start
21     of intruding into the next column signaled by
22     seeing a light, vertical stripe.  And then a
23     little bit later the vertical stripe would
24     have disappeared.  And in the purple region
25     you are not seeing it anymore because you

1   advanced too far, and you are now seeing a
2   vertical stripe, which is coming from the
3   neighboring column. Did that make sense?
4  Q. It did. Thank you. I have handed you
5   Exhibit van Dam 137, which bears Bates
6   numbers van damn 1156 through 1219. I wanted
7   to ask you whether you have seen this
8   previously?
9       (EXHIBIT 137 MARKED FOR IDENTIFICATION)
10      A. I have.
11 Q. What is this exhibit?
12      A. This is Lira's patent, with a publication
13  date of 2003, registered with the World
14  Intellectual Property Organization.
15 Q. Can you turn to figure 10, which is at van
16  Dam 1209?
17      A. Sorry, in which document are we at?
18 Q. I apologize. In Exhibit 137, the Lira PCT
19  application.
20      A. Yes.
21 Q. Could you turn to figure 10, which is at van
22  Dam 1209?
23      A. Okay. 1209, I'm too far.
24 Q. Figure 10 of the PCT application to Lira
25  shows three columns, correct?

1     A. Um-hum.
2  Q. And your opinion is that each of these
3     columns is an independent document, correct?
4     A. That's correct.
5  Q. For the middle column, how does one know when
6     they have reached the edge of that column,
7     how does one know?
8     A. Well, again, in this embodiment, they
9     chose to have separating white space, so you
10    would get a sliver, or a slice, of vertical
11    light.  And then as you would march forward
12    into the next column, you would start seeing
13    pixels there.
14 Q. Is it your testimony that the edge of the
15    second document, the second column --
16    A. The middle column.
17 Q. Is it your opinion that the edge for the
18    middle column is marked by the left edge of
19    the rightmost column?
20    A. It is marked by the border region.  And
21    then if there is a discernable edge, leading
22    edge, to the third column, that would be
23    shown, but you could have a bleeding affect
24    whereby pixels of the third column could
25    bleed into the separating sliver.  You know,

1      there are any number of ways to do it.
2  Q.  What about further down in the middle column
3      where you see the phrase, New Day, New Rulers
4      in Afghanistan; do you see that?
5      A. Can you show me, it would be faster?
6  Q.  At the very bottom of the page right here.
7      A. Yes, those links.
8  Q.  If one had positioned the A wall browser
9      window in this figure, figure 10 of the Lira
10     PCT application, over that New Day, New
11     Rulers in Afghanistan text, how would one
12     know when they had moved the window beyond
13     the edge of the column?
14     A. One wouldn't know for sure, because it
15     depends on the layout for this column.  But
16     the fact that you have wrapping to the next
17     line might give you a clue that you were
18     about to go over the column boundary,
19     particularly if you saw a solid, gray area on
20     the right.
21  Q.  Assuming --
22     A. I'm sorry, but let me make a point that
23     applies to all of your questions.  There are
24     clues, but it is mostly in the motion as you
25     move around that you get a sense of where you

Case 5:11-cv-01846-LHK   Document 2521-1   Filed 10/13/13   Page 10 of 13

Page 173

1        are, and the snapping behavior helps with
2        that.  The visual queues are just that, they
3        are queues.  There is no definitive Marching
4        ants, or something, demarcation in these
5        implementations that tells you that you are
6        about to go off the edge.  There is nothing
7        that prevents you from having that.  All of
8        these references are silent on that.
9   Q.   What was the checkerboard exhibit to your
10       right, what number was that?
11       A. That was 133.
12  Q.   For Exhibit 133, if we removed all of black
13       from that page and simply had a bright red
14       square --
15       A. You mean this red square?
16  Q.   Correct.  The entire page was covered with
17       the red square, there were no visual
18       indicators at all as to separate anything on
19       that page in that square, could there be
20       multiple documents on that page?
21       A. In that particular case, that's kind of a
22       reductural ad absurdum example, because it is
23       a solid field of red.  You could say,
24       absolutely.  You can have columns.  You can
25       have rows, so you could define, even on the

1        solid field of red, for there to be
2        subdocuments, but there wouldn't be any
3        visual indication of where they are in that
4        case.
5                  You have defined it in such away
6        that I can't see any demarcation for
7        anything, any subset of that solid, that
8        square, that for whatever purposes I might
9        want to designate as an electronic
10       subdocument.  There's no visual queue.
11   Q.  Returning to van Dam 1209, the same figure 10
12       we that were just looking at, imagine if the
13       entire second half of the second column were
14       blank, okay?
15       A. Okay.
16   Q.  And now assume that the A wall browser window
17       were positioned entirely in the lower half of
18       that column?
19       A. So below the area that was for whatever
20       purposes left blank, or did I misunderstand
21       you?
22   Q.  Imagine in figure 10, which depicts three
23       columns, that the middle column is only
24       comprised of half a page of text?
25       A. Okay.  So the text starts here, and this

1              is all solid background?
2     Q.       Actually, the opposite.  The text begins at
3              the top and stops halfway through the column.
4              A. And the rest of this is blank?
5     Q.       Correct?
6              A. So it's a short column in newspaper
7              terminology?
8     Q.       Exactly right.  If we had in figure 10 the
9              first column as depicted, a short column in
10             the second middle column, and the third
11             column as depicted, and we positioned the
12             browser window in the blank portion of the
13             middle column, how would one know when they
14             reached the edge of that column?
15             A. One wouldn't, because in this very
16             peculiar and artificial case, the color you
17             have chosen for the empty space and the
18             gutter are the same color, so you can't
19             distinguish them.
20                      If it were important to
21             distinguish them, the user interface designer
22             might say, let's have dotted lines around
23             each column and then we don't care whether a
24             column is occupied or not.  And the user
25             could see you going over the edge of that

Page 176

1   column.  It's a design choice.  But you are
2   confronting me with a hypothetical that I
3   have not seen in practice.
4 Q. Nevertheless, you would agree, wouldn't you,
5   that in figure 10 one could define the
6   document, your view is that one could define
7   the document to span the entire middle
8   column, including the blank second half in
9   the hypothetical I just presented?
10  A. Yes, as a very special case.
11     (EXHIBIT 138 MARKED FOR IDENTIFICATION)
12 Q. I am handing you, Dr. van Dam, what has been
13   marked as Exhibit 138, which is Exhibit 5 to
14   your declaration.  I wanted to ask you if you
15   recognized it.
16  A. I do.
17 Q. Before I get to Van Den Hoven --
18  A. You're pronouncing it right, mostly.
19 Q. Before I get to Van Den Hoven, I wanted to
20   ask you a question about your opinions on the
21   references that you disclosed in your
22   declaration.  Do you have a favorite as in
23   anticipatory references beyond those
24   references?
25            MR. BRIGGS:  Objection.  Vague.