QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11, 2013 CASE MANAGEMENT ORDER**<br><br>Pre-Trial Conference:   October 17, 2013<br>Place:   Courtroom 8,   4th Floor<br>Judge: Hon. Lucy H. Koh |

1    Pursuant to the Court's October 11, 2013 Case Management Order and Order Requiring

2    Additional Briefing (Dkt. 2516), the Samsung Defendants respectfully submit as Exhibits A and B

3    hereto proffers of evidence regarding the trial or deposition testimony and exhibits they intend to

4    use to prove non-infringing alternatives (Exhibit A) and Samsung's product development process

5    (Exhibit B).   Each proffer indicates:   (a) whether the testimony was offered during the first trial,

6    and if so, the page and line numbers to the trial transcript; (b) whether the testimony was elicited

7    during depositions and if so, the deposition excerpts are attached to the concurrently filed

8    declaration of Anthony P. Alden; and (c) whether the particular exhibit was admitted for a limited

9    purpose in the first trial and what that limited purpose was.

10    Samsung's proffers are made within the parameters of the Court's prior rulings concerning

11    the scope of and evidence that may be used at the first trial, including, without limitation:   (a)

12    each party may call at the new trial only those witnesses that were previously identified on its July

13    23, 2012 final witness list for the prior trial ("First Trial Final Witness List"); (b) where a party's

14    First Trial Final Witness List indicated that a witness would be called live, such witness may only

15    be called live at the new trial; (c) where a party's First Trial Final Witness List indicated that a

16    witness would be called by deposition, such witness may only be called by deposition at the new

17    trial; (d) the parties may only use exhibits identified on their July 23, 2012 final exhibit lists from

18    the first trial or exhibits actually used at the first trial; (e) all prior rulings concerning the exclusion

19    of testimony and evidence and any limitations place on the use of testimony and evidence remain

20    in effect for the new trial.   The Samsung Defendants reserve all their prior objections and

21    arguments concerning these rulings and all witnesses and evidence wholly or partially excluded or

22    limited as a result thereof.

23

24

25

26

27

28

1  DATED: October 13, 2013              Respectfully submitted,

2                                       QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
3

4

5                                       By /s/ Victoria F. Maroulis
                                           Charles K. Verhoeven
6                                          Kevin P.B. Johnson
                                           Victoria F. Maroulis
7                                          William C. Price
                                           Michael T. Zeller
8

9                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                           LTD., SAMSUNG ELECTRONICS AMERICA,
10                                         INC. and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**SAMSUNG'S PROFFERED EVIDENCE REGARDING**

**NON-INFRINGING ALTERNATIVES**

Samsung intends to call Michael Wagner to testify concerning non-infringing alternatives and hypothetical design-arounds, as it did at the first trial.   However, depending on the arguments and evidence Apple puts on at trial, Samsung may call one or more of the additional witnesses identified below.   Samsung reserves the right to elicit additional testimony and to use additional exhibits on cross-examination of Apple's witnesses.

A.     **Michael Wagner**

1.     Witness Role

Mr. Wagner will testify regarding the availability of acceptable non-infringing alternatives to the '163, '381, '915, D'305 and D'607 patents.   Mr. Wagner will also testify regarding hypothetical design arounds for these patents, including the time, personnel, and costs associated with particular hypothetical design arounds.

2.     Previous Disclosures and Testimony

Mr. Wagner previously submitted several written reports and declarations in this matter, including:

- Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, August 21, 2011.   (Dkt. 173.)
- Expert Report of Michael J. Wagner, April 16, 2012.
- Corrected Expert Report of Michael J. Wagner, April 20, 2012.   (Dkt. 2401-4.)
- Supplemental Expert Report of Michael J. Wagner, May 11, 2012.   (Dkt. 2401-5.)
- Declaration of Michael J. Wagner in Support of Samsung's Motion to Strike Expert Testimony Based on Undisclosed Facts and Theories, June 7, 2012.   (Dkt. 1060-35.)

- Declaration of Michael J. Wagner in Support of Samsung's Motion for Judgment as a Matter of Law, New Trial and/or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59, September 21, 2012.   (Dkt. 1990.)

- Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for Judgment as a Matter of Law (Renewed), New Trial, and Amended Judgment, October 19, 2012.   (Dkt. 2059.)

- Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Permanent Injunction, October 19, 2012.   (Dkt. 2065.)

- Rebuttal Expert Report of Michael J. Wagner for New Trial on Damages, July 26, 2013.

- Updated Rebuttal Expert Report of Michael J. Wagner for New Trial on Damages, August 26, 2013 ("Updated Expert Report").   (Dkt. 2401-6.)

Mr. Wagner has been deposed several times in this matter, including on September 14, 2011, May 12, 2012, July 17, 2012, and August 30, 2013.   Mr. Wagner testified at trial in this matter on August 16, 2012.   Mr. Wagner was identified in Samsung's July 7, 2012 and July 23, 2012 live witness lists as a damages expert.   (Dkt. 1193-1 at 28; Dkt. 1278 at 8.)   He was disclosed on Samsung's List of Witnesses for Trial.   (Dkt. 2486-3 at 2.)

### 3.   Potential Exhibits To Be Used With Witness

The following chart outlines the potential exhibits to be used by Mr. Wagner.

| Wagner Trial Exhibit List | | |
|---|---|---|
| Trial Ex. No. | Description | Status per Dkt. 1889 |
| PX 7 | Photographs of accused Samsung devices | Admitted |
| PX 10 | Design alternatives considered by Peter Bressler | Admitted |
| PX 20 | Design alternatives considered by A. Hedge | Not admitted |
| PX 22 | Design alternatives considered by S. Kare | Not admitted |
| PX25A1 | Summary of Apple's damages calculations | Admitted |
| PX 30 | Summary of surveys conducted by J. Hauser | Admitted |
| PX 52 | Presentation: Samsung's Use of Apple Patents in Smartphones | Admitted |
| PX 69 | 2011 Wireless Smartphone Satisfaction Study, March 2011 | Admitted |
| PX 147 | Sony Xperia Arc S | Not admitted |
| PX 148 | Nokia Lumia 800 | Admitted |
| PX 158A | Photos of Blackberry Torch GUI | Admitted |

| | Wagner Trial Exhibit List | |
|---|---|---|
| **Trial Ex. No.** | **Description** | **Status per Dkt. 1889** |
| PX 159 | Photos of Nokia N9 GUI | Not admitted |
| PX 160 | Screenshot of Meizu M8 GUI | Not admitted |
| PX 167 | Phone model 956 | Admitted |
| PX 168 | Phone model 961 | Admitted |
| DX 526 | Samsung F700 | Admitted for limited purpose Do not consider as evidence of invalidity or non-infringement. However, you may consider as evidence of alternative designs and functionality. |
| DX 534 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q2 | New Trial Exhibit |
| DX 535 | ComTech United States Report Q1, 2011 | Not admitted |
| DX 536 | IDC Worldwide Quarterly Mobile Phone Tracker - 2011 Q4 | Not admitted |
| DX 537 | IDC Worldwide Quarterly Media Tablet Tracker - 2011 Q4 | Not admitted |
| DX 556 | Jefferson Han TED Video - Unveiling the genius of multi-touch interface design available at http://www.ted.com/talks/jeff_han_demos_his_breakthrough_touchscreen.html | Admitted |
| DX 562 | March 8, 2006 email from R. Howarth to J. Ive | Admitted for Limited Purpose Do not consider as evidence of invalidity or non-infringement. However, you may consider as evidence of functionality. |
| DX 572 | April 15, 2011 email string, subject: "Re: iPhone v Android Preso", with Smartphone Market Study US January 2011 attached | Admitted |
| DX 578 | April 14, 2010 email string and meeting agenda, subject : "iPhone 'firsts'" | Admitted |
| DX 581 | Worldwide iPhone Q3'10 Performance Summary, July 7, 2010 | Not admitted |
| DX 586 | Samsung-Apple Licensing Discussion, October 5, 2010 | Admitted for Limited Purpose Do not consider this evidence to prove or disprove the validity or invalidity of a claim or the amount of a disputed claim. However, you may consider this as evidence of whether or not Samsung lacked notice of Apple's infringement claims. |
| DX 587 | Worldwide iPhone Q4 '10 Performance Summary, October 6, 2010 | Not admitted |
| DX 589 | Worldwide iPhone Q1 '11 Performance Summary, January 5, 2011 | Not admitted |
| DX 592 | ComTech United States Report Q4, 2010 | Admitted |
| DX 594 | March 10, 2011 email string, subject: "Android shipments grow 1580%, now 'king of the hill' in Europe" | Not admitted |
| DX 595 | Android Market Overview, CY10 Q4 | Not admitted |

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11. 2013 CMO

| | Wagner Trial Exhibit List | |
|---|---|---|
| Trial Ex. No. | Description | Status per Dkt. 1889 |
| DX 601 | October 20, 2010 email string, subject: Joz Q4 Earnings Notes | Not admitted |
| DX 605 | ComTech United States Report Q4, 2011 | Not admitted |
| DX 614 | iPad Buyer Survey: Initial US Results, Apple Market Research & Analysis, August 2010 | Not admitted |
| DX 617 | iPad Tracking Study FY11-Q2 Report, Apple Market Research & Analysis, May 2011 | Not admitted |
| DX 687 | Apple email string regarding competitor products | Admitted |
| DX 692 | J. Han email string | Not admitted |
| DX 694 | April 7, 2005 email from S. Hotelling to G. Christie then to S. Forstall, subject "LaunchTile" | Not admitted |
| DX 701 | Summaries of Apple's Consumer Surveys Pursuant to FRE 1006 (updated for new trial) | New Trial Exhibit |
| DX 702 | Summaries of Data Concerning Hypothetical Design Around Cost Pursuant to FRE 1006 (updated for new trial) | New Trial Exhibit |
| DX 704 | Summary of jury's liability findings for 13 products at issue in new trial (updated for new trial) | New Trial Exhibit |
| DX 709 | Competitive analysis document | Not admitted |
| DX 710 | Internal Apple email regarding competitive update | Not admitted |
| DX 711 | Competitive update presentation | Not admitted |
| DX 712 | Internal Apple email regarding competitive phone tracker | Admitted |
| DX 714 | Email and Presentation: Samsung Juke (SGH-F210) Cell Phone/MP3 Player $300 - iPod Engineering Teardown Report - January 2008 | Not admitted |
| DX 716 | Email and HTC Touch HD Take Apart presentation | Not admitted |
| DX 717 | Samsung Galaxy Tab 10.1 Take-Apart | Admitted |
| DX 724 | April 7, 2005 email from S. Forstall to G. Christie | Not admitted |
| DX 728 | Japanese Design Patent JP D1241383 ( N.B. Certified translation has unique bates range following original) | Admitted |
| DX 760 | January 15, 2009 email from G. Joswiak to P. Oppenheimer | Not admitted |
| DX 761 | Presentation: Taking on The iPad | Not admitted |
| DX 762 | October 31, 2010 email from S. Jobs to S. Forstall | Not admitted |
| DX 763 | iPad Consideration: Quantitative Research Among CE Buyers, August 2011 | Not admitted |
| DX 764 | 09-01-11 E-mail from Rangel to Ng (Ng, Exh 2) September 1, 2011 email from A. Rangel to S. Ng | Not admitted |
| DX 765 | Email from G. Joswiak with attached "earnings call transcript," attachment dated July 22, 2010 | Not admitted |
| DX 766 | iPad Tracking Study FY11-Q4 Report, Apple Market Research & Analysis, November 2011 | Not admitted |
| DX 767 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q4 | Not admitted |
| DX 768 | iPad Tracking Study July 2010 Report, Apple Market Research & Analysis, September 2010 | Not admitted |
| DX 769 | iPad Tracking Study FY10-Q4 Report, Apple Market Research & Analysis, October 2010 | Not admitted |
| DX 770 | iPad Tracking Study FY11-Q1 Report, Apple Market Research & Analysis, February 2011 | Not admitted |

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11. 2013 CMO

| Wagner Trial Exhibit List | | |
|---|---|---|
| Trial Ex. No. | Description | Status per Dkt. 1889 |
| DX 771 | iPad Tracking Study FY11-Q3 Report, Apple Market Research & Analysis, August 2011 | Not admitted |
| DX 772 | iPhone Buyer Survey, Apple Market Research & Analysis, FY10 - Q2 | Not admitted |
| DX 773 | iPhone Buyer Survey, Apple Market Research & Analysis, FY10 - Q3 | Not admitted |
| DX 774 | iPhone Buyer Survey, Apple Market Research & Analysis, FY10 - Q4 | Not admitted |
| DX 775 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q1 | Not admitted |
| DX 776 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q3 | Not admitted |
| DX 938 | Apple Agreement | New Trial Exhibit |
| DX 952 | Summary of Damages Calculations For New Trial | New Trial Exhibit |
| DX 953 | Annotated Video of ThinkFree Office on Samsung Intercept | New Trial Exhibit |
| DX 957 | Apple Demonstrative re P. Bressler (PDX026) | New Trial Exhibit |
| DX 958 | Ex Parte Reexamination File History of U.S. Patent No. 7,469,381 (Application No. 90/012,304) | New Trial Exhibit |
| DX 959 | Ex Parte Reexamination File History of U.S. Patent No. 7,844,915 (Application No. 90/012,332) | New Trial Exhibit |
| DX 962 | Apple Demonstrative re Kare (PDX014) | New Trial Exhibit |
| DX 963 | Claim Construction Orders (Dkt. No. 1447) | New Trial Exhibit |
| DX 964 | Claim Construction Orders (Dkt. No.   0849) | New Trial Exhibit |
| DX 965 | Claim Construction Orders (Dkt. No. 1266 ) | New Trial Exhibit |
| DX 966 | Claim Construction Orders (Dkt. No. 1425) | New Trial Exhibit |
| JX 1007 | Galaxy S (i9000) | Admitted |
| JX 1008 | Acclaim | Not admitted |
| JX 1009 | Intercept | Admitted |
| JX 1010 | Galaxy S Vibrant | Admitted |
| JX 1011 | Galaxy S Captivate | Admitted |
| JX 1012 | Galaxy S Epic 4G | Admitted |
| JX 1013 | Galaxy S Fascinate | Admitted |
| JX 1014 | Transform | Admitted |
| JX 1015 | Galaxy S Mesmerize | Admitted |
| JX 1016 | Galaxy S Continuum | Admitted |
| JX 1017 | Galaxy S Showcase 500 | Admitted |
| JX 1018 | Nexus S | Admitted |
| JX 1019 | Galaxy S 4G | Admitted |
| JX 1020 | Gem | Admitted |
| JX 1021 | Sidekick 4G | Not admitted |
| JX 1022 | Galaxy Prevail | Admitted |
| JX 1023 | Nexus S 4G | Admitted |
| JX 1024 | Replenish | Admitted |
| JX 1025 | Droid Charge | Admitted |
| JX 1026 | Indulge | Admitted |
| JX 1027 | Infuse 4G | Admitted |
| JX 1028 | Exhibit 4G | Admitted |
| JX 1029 | Gravity Smart | Not admitted |
| JX 1030 | Galaxy Ace | Admitted |

| | Wagner Trial Exhibit List | |
|---|---|---|
| **Trial Ex. No.** | **Description** | **Status per Dkt. 1889** |
| JX 1031 | Galaxy S II (AT&T) | Admitted |
| JX 1032 | Galaxy S II (i9100) | Admitted |
| JX 1033 | Galaxy S II (T-Mobile) | Admitted |
| JX 1034 | Galaxy S II (Epic 4G Touch) | Admitted |
| JX 1035 | Galaxy S II (Skyrocket) | Admitted |
| JX 1036 | Galaxy Tab 7.0 | Admitted |
| JX 1037 | Galaxy Tab 10.1 (WiFi) | Admitted |
| JX 1038 | Galaxy Tab 10.1 (4G LTE) | Admitted |
| JX 1042 | Certified copy of US D604,305, issued November 17, 2009 | Admitted |
| JX 1043 | Certified copy of D618,677, issued June 29, 2010 | Admitted |
| JX 1044 | Certified copy of US 7,844,915, issued November 30, 2010 | Admitted |
| JX 1045 | Certified copy of US 7,469,381, issued December 23, 2008 | Admitted |
| JX 1046 | Certified copy of US 7,864,163, issued January 4, 2011 | Admitted |
| JX 1047 | Certified file history of US 7,469,381, issued December 23, 2008 | Admitted |
| JX 1048 | Certified file history of US 7,844,915, issued November 30, 2010 | Admitted |
| JX 1049 | Certified file history of US 7,864,163, issued January 4, 2011 | Admitted |
| JX 1063 | File wrapper for U.S. D604,305 | Not admitted |
| JX 1064 | File history    for U.S. D618,677 | Not admitted |
| JX 1086 | Korean design patent KR 30-0452985 | Not admitted |
| JX 1093 | LG Prada Phone | Admitted for Limited Purpose Do not consider this exhibit as prior art to the D'305 patent. |
| JX 1095 | U.S. Patent No. D461,802 | Not admitted |
| JX 1098 | Fascinate (with Android version 2.1-update1) | Not admitted |
| JX 1099 | Galaxy Tab 7.0 (with Android version 2.2) | Not admitted |
| PX 2277 | Pantech Hotshot | Admitted |
| PX 2278 | Blackberry Storm | Admitted |
| DX 2515 | Email string ending in 10-14-05 T. Fadell to S. Forstall, et al., re: Samsung SGH-T809 | New Trial Exhibit |
| DX 2517 | November 18, 2008 email from H. Zhang to Isable-staff, subject "Competitive Analysis" | Admitted |
| DX 2519 | Presentation: Mini-Teardown Samsung Galaxy S (T-Mobile Vibrant) iPod/iPhone New Tech 8.10.10 | Admitted |
| DX 2520 | Email string ending in March 30, 2011 email from R. Huang to S. Forstall, subject: "Navigation on iPhone" | New Trial Exhibit |
| DX 2522 | January 24, 2011 email E. Cue to T. Cook, subject "Why I Just Dumped the iPad (Hing: Size Matters)" | Admitted |
| DX 2524 | October 5, 2005 email S. Jobs to J. Ive, et al., subject:"=?WINDOWS-1252?Q?Fwd:_Samsung=92s_SGH-10_Bang_&_Olufsen_=93fas?==?WINDOWS-252?Q?hionphone=94?=" | Admitted |
| DX 2525 | November 7, 2006 email T. Fadell to S. Jobs, et al., subject: "Samsung Unveils New Communications Device (AP)" | Admitted |

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11. 2013 CMO

| Wagner Trial Exhibit List | | |
|---|---|---|
| Trial Ex. No. | Description | Status per Dkt. 1889 |
| DX 2526 | Nook Color Tablet | Admitted for Limited Purpose Do not consider for any purpose except to evaluate Dr. Van Liere's survey. |
| DX 2527 | Blackberry Storm 9550 | New Trial Exhibit |
| DX 2528 | LG G2x | Admitted for Limited Purpose Do not consider for any purpose except to evaluate how Mr. Poret chose his control devices. |
| DX 2530 | Sony XPERIA X1 phone | New Trial Exhibit |
| DX 2531 | Blackberry Storm 2 9550 phone | New Trial Exhibit |
| DX 2532 | HTC EVO 4G phone | New Trial Exhibit |
| DX 2533 | HTC myTouch 4G phone | New Trial Exhibit |
| DX 2534 | Motorola Atrix phone | Admitted for Limited Purpose Do not consider for any purpose except to evaluate how Mr. Poret chose his control devices. |
| DX 2535 | HTC Desire S phone | New Trial Exhibit |
| DX 2627 | 3GSM Congress Trade Show Report | Admitted for Limited Purpose Do not consider as evidence of invalidity or non-infringement. However, you may consider as evidence of alternative designs and functionality. The date on the document is incorrect. The correct date is 2007. |
| DX 2628 | CES & Macworld Trade Show Report | New Trial Exhibit |

4.     Summary of Proposed Testimony

Samsung intends to present Mr. Wagner in order to rebut Apple's testimony regarding damages.   Mr. Wagner's testimony may include opinions expressed in his written reports, declarations, depositions, and trial testimony in this matter.     Much of this testimony was already presented during the first trial.

(a)     Samsung had commercially acceptable noninfringing alternatives to each of Apple's patented features and designs.

Mr. Wagner will again testify that there were commercially acceptable noninfringing alternatives to each and every one of Apple's patented features and designs.   (*See* Tr. 3035:11-3038:19; 3053:18-3056:18; *see also* Updated Expert Report at ¶¶ 140-148; 172; 185; 208; 232-237; 239-243; 283; 350-356; 381-386; 433; 437; 438; 439; 441; 443; 448; 455; 459; 470; 471-476;

477-478; 479-483; 484-485; 486-490; 491-492; 493-494; 495-499; 500-504; 505-507; 508-513; 514-516; 517-526; 527; 531; 534; 556; 560-561; and figures, schedules and exhibits cited therein.) This testimony is relevant to the absence of lost profits, Ms. Davis's incorrect calculation of lost profits, and to the amount of a reasonable royalty.

Mr. Wagner also expects to testify about the impact on his previous opinions and testimony of Apple's failure to show infringement by certain accused Samsung products.   At the first trial, Mr. Wagner testified that if the jury found that some, but not all, of the accused products infringed a patent, then the non-infringing products "would be commercially acceptable alternatives, designs that could have been used instead of the infringing designs."   (Trial Tr. 3038:4-19.)   Findings in the Amended Jury Verdict Form (Dkt. No. 1931) that certain Samsung products accused of infringement by Apple did not infringe specific forms of Apple IP are relevant to Mr. Wagner's earlier trial testimony on noninfringing alternatives.

Ms. Davis also accepts that certain jury findings of non-infringement prove the existence of non-infringing alternatives, and she adjusts Mr. Musika's damages calculations as a result. (*See* Davis Rpt. ¶ 92 (adjusting Mr. Musika's lost profits analysis "to account for the jury's verdict" that the Intercept and Galaxy Tab 10.1 4G LTE do not infringe); *see also* Davis Dep. Tr. 114:20-116:12 (Ms. Davis assumed the Intercept "is a noninfringing alternative" and Galaxy Tab 10.1 4G LTE "would have been an acceptable alternative.").)

Accordingly, Mr. Wagner expects to testify that certain of the jury's non-infringement verdicts show there are additional "commercially acceptable alternatives, designs that could have been used instead of the infringing designs."   (Trial Tr. 3038:4-19.)   Specifically, contrary to Apple's contentions during the first trial, the Captivate, Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and Vibrant do not infringe the '163 patent; the Galaxy Ace, Intercept, and Replenish do not infringe the '915 patent; and the Galaxy Ace does not infringe the D'677 patent.   Each of these products is therefore an additional commercially acceptable alternative.

Furthermore, Mr. Wagner may testify regarding Apple's admission, first disclosed by Apple after Mr. Wagner's testimony in the first trial, that the Intercept does not infringe the '381 patent (Dkt. 2440 at 3; Dkt. 2443 at ¶12.)   Mr. Wagner may testify that he agrees with Ms.

1   Davis's opinion that the Intercept does not infringe any of Apple's asserted IP and is therefore a

2   noninfringing alternative.   (*See* Wagner August 2013 Rpt. ¶¶ 232-33, 484-85, 493-94, 518-19;

3   Davis Rpt. ¶ 92; Davis Dep. Tr. 114:20-116:12.)

4        Mr. Wagner may also testify regarding the availability of additional existing Samsung

5   phone designs as noninfringing alternatives to the D'677 patent in light of the jury's verdict

6   finding no trade dress liability for these phones.   (*See id.* at ¶¶ 517-526.)   Specifically, contrary

7   to Apple's contentions during the first trial, the Captivate, Continuum, and Epic 4G do not violate

8   Apple's trade dress, and they would thus also be available as noninfringing alternatives to the

9   D'677 patent.   (*See* Wagner Depo Aug. 20, 2013 815:17–816:6.)   Likewise, Samsung's Exhibit

10  4G and Transform would also be available as noninfringing alternatives to the D'677 patent

11  because they include the same noninfringing speaker placement as the Epic 4G.   Mr. Wagner may

12  also testify regarding the availability of a white or grey Infuse 4G as a noninfringing alternative to

13  the D'677 patent in light of the jury's verdict that the Infuse 4G does not infringe the D'087 patent

14  and does not dilute registered iPhone trade dress; unregistered iPhone 3G trade dress; and

15  unregistered combination iPhone trade dress.   (Wagner August 2013 Rpt. ¶¶ 232-237, 518.)

16  Because, contrary to Apple's contentions during the first trial, a white or grey Infuse 4G does not

17  violate other Apple design IP, such an Infuse 4G is now conclusively an available noninfringing

18  alternative to the D'677 patent.

19       Mr. Wagner may also testify that, based on his conversation with Mr. KwangJin Bae, a

20  Samsung engineer, Samsung would not have incurred any significant additional design, R&D or

21  manufacturing costs to develop and produce these additional alternatives.   (*See id.* at ¶¶ 524-526;

22  Wagner Depo Aug. 20, 2013 816:7–820:17.)

23            (b)    In a hypothetical negotiation of a reasonable royalty, Samsung

24                   would believe that it could hypothetically design around Apple's

25                   patented features and designs.

26       Mr. Wagner expects again to testify that, in a hypothetical negotiation of a reasonable

27  royalty as provided in *Georgia-Pacific*, Samsung would believe it could hypothetically design

28  around the '381 patent in four weeks and three days at a cost of $11,340; that it could

-11

1   hypothetically design around the '163 patent in two weeks and two days at a cost of $5,880; and

2   that it could hypothetically design around the '915 patent in four weeks at a cost of $10,800.   (Tr.

3   3053:18- 3055:12.)   Mr. Wagner expects again to testify that in forming his opinion he relied on

4   several sources.

5        At trial, Mr. Wagner testified regarding Mr. Musika's opinions on hypothetical design

6   around periods.   (*See, e.g.*, 3055:13-3056:18.)   Mr. Wagner has now reviewed both Ms. Davis's

7   and Mr. Musika's expert reports on hypothetical design around periods.   In each report, Apple's

8   expert opined that Samsung could design around the '381 patent in one month; that Samsung

9   could design around the '163 patent in one month; and that Samsung could design around the '915

10   patent in six months.   (Musika Rpt. Ex. 45; *see also* Davis Rpt. Ex. 45 (no change).)   Both of

11   Apple's experts cited as sources "Apple representatives" Henri Lamiraux and Steve Hotelling, and

12   technical experts retained by Apple in this matter:   Ravin Balakrishnan, Michel Maharbiz, Karan

13   Singh, and Alex Snoeren.   (*Id.* at n. 3.)

14        As disclosed in Mr. Wagner's April 20, 2012 report, Mr. Wagner had a series of

15   conversations with technical experts retained by Samsung in this matter, including Jeff Johnson

16   and Stephen Gray, about the availability of possible design arounds for Apple's patents.   In these

17   conversations, Mr. Johnson mentioned multiple design around possibilities for the '381 patent, and

18   Mr. Gray mentioned a possible design around for the '163 patent and multiple design around

19   possibilities for the '915 patent.   (Wagner April 2012 Rpt. ¶439-442; 448-450; 465-468.)

20        Also in April 2012, Mr. Wagner had a conversation with Samsung engineer Jaewoo Park

21   and Samsung designer Sun-young Yi.   They provided Mr. Wagner with a series of estimates for

22   the time required for a hypothetical design around of the '381, '163, '915 and D'305 patents if

23   Samsung would have known that it may have been out of the market without the design around.

24   (Wagner April 2012 Rpt. ¶443; 451; Schedule 13.)   These estimated times were reasonably

25   comparable with Mr. Musika's opinions.   Based on his experience and professional judgment, Mr.

26   Wagner found these estimates to be reasonable.

27        On April 12, 2012, Mr. Wagner had a conversation regarding Samsung employee

28   compensation with Jong-wook Shim from Samsung Human Resources.   Using this hourly wage

1   data, Mr. Wagner calculated the hypothetical expected labor costs for the work to do these

2   hypothetical design arounds.   Mr. Wagner relied on his experience and professional judgment to

3   evaluate these hypothetical expected costs, and found the estimates to be reasonable.   (Wagner

4   April 2012 Rpt. ¶443; 451; Schedule 13.)

5        Mr. Wagner may also testify that, as discussed in his April 2012 report, Samsung would

6   have had available to it acceptable noninfringing designs to the D'305 patent based on the

7   Graphical User Interface ("GUI") in Samsung's Galaxy S II products, which were never accused

8   of infringing the D'305 Patent.   (Wagner April 2012 Report, ¶481.)   Mr. Wagner may also testify

9   that Samsung had acceptable noninfringing designs to the D'305 patent based on smartphones it

10  sold in Korea with a grid of 3 icons wide by 5 icons tall.   (Id.)   Mr. Wagner had conversations

11  with Sun-young Yi and Jaewoo Park regarding the work required for a hypothetical design around

12  of the D'305 patent based on these possible alternatives.   (Wagner April 2012 Report, ¶483,

13  Schedules 13.6 and 17.)   Using estimates for the time required for a hypothetical design around

14  and hourly wage data, Mr. Wagner estimated the hypothetical design around cost to be $420 per

15  icon and $1,152 for the GUI interface.   (Wagner April 2012 Report, ¶390, 483, Schedules 13.6

16  and 17.)   Mr. Wagner also calculated the number of icons on each phone accused of infringement.

17  (See id. Schedule 17.)   Mr. Wagner testified at trial that the design around cost for icon designs

18  would be the maximum amount of reasonable royalty for the D'305 patent.   (Trial Tr. 3072:16-21

19  ("You can design around these and get a similar product with similar features, and that's the most

20  you would pay").)

21       In addition, in light of the limited number of products found to infringe the D'305 patent at

22  issue in the new trial, as compared to the first trial, Mr. Wagner expects to multiply the total

23  number of icons on the phones at issue in the new trial (599) by the cost to design new icons that

24  was disclosed in his April 2012 Report ($420) to arrive at a total of $251,580.   (See August 2013

25  Rpt., Schedules 13.5-NT, 1-NT, 13-NT.)

26       Also, Mr. Wagner may testify about the impact on his previous opinions and testimony of

27  Apple's admissions regarding the limited scope of its '381 and '915 patents.   During the

28  reexamination proceedings on the '381 patent, Apple made representations to the USPTO about

the limited scope of the '381 patent in order to avoid invalidity by prior art.   (Wagner Rpt. ¶¶24-27, 447.)   Mr. Wagner confirmed with Dr. Andries van Dam, whom he had consulted regarding the '381 patent before (*id.* at ¶471), that Apple's statements to the USPTO provide an additional option for designing around the '381 patent.   (*Id.* ¶478.)   Mr. Wagner expects to testify that these facts corroborate his opinion on a reasonable royalty for the '381 patent.   (*Id.*)

During trial proceedings on the '915 patent, Apple's technical expert Dr. Karan Singh presented for the first time an opinion on the limited scope of the '915 patent.   (Wagner Rpt. ¶39.) And, during reexamination proceedings for the '915 patent, Apple made representations to the USPTO about the limited scope of the '915 patent in order to avoid invalidity by prior art. (Wagner Rpt. ¶¶40, 491.)   Mr. Wagner confirmed with Stephen Grey, whom he had consulted regarding the '915 patent before (*id.* at ¶486), that Apple's statements provide an additional option for designing around the '915 patent.   (*Id.* ¶492.)   Mr. Wagner expects to testify that these facts corroborate his opinion on a reasonable royalty for the '915 patent.   (*Id.*)


### B.   Sun-young Yi

#### 1.   Witness role

Sun-young Yi is a Senior Designer at the Design Strategy Department at Samsung Electronics Co., Ltd. ("SEC").

#### 2.   Previous Disclosures and Testimony

Ms. Yi was disclosed to Apple in Samsung's initial disclosures on September 7, 2011 as knowledgeable about "Samsung user interface design for accused Samsung Android phones." She was timely deposed in this case on February 8, 2012, and was also identified on Samsung's July 23, 2012 live trial witness list for testimony "on Samsung user interface design for accused Samsung Android phones and hypothetical design arounds of the '381 and '163 patents, and certain Apple design IP; and hypothetical design around cost."   (Dkt. 1278 at 8-9.)

#### 3.   Summary of Proposed Testimony

Ms. Yi will testify as to the time it would take Samsung to hypothetically design around the '381, '163 and D'305 patents.   Mr. Wagner relied upon conversations with Ms. Yi, which

1    were disclosed in his April 2012 expert report, to derive his hypothetical design around costs.

2    (Dkt. 2401-4 at 182 n. 848, 183 n. 849, 185 nn. 859-61, 197 n. 896, 213, Schedule 13.1 n. [b],

3    Schedule 13.3 n. [b], Schedule 13.6 n. [b], Schedule 13.7 [b].)   Mr. Wagner testified to these

4    hypothetical design around costs at the first trial.   (Trial Tr. 3054:20-3055:12.)

5

6    **C.   Jaewoo Park**

7         1.   Witness role

8    Jaewoo Park is an Assistant Engineer at Android R&D Group 2 at SEC.

9         2.   Previous Disclosures and Testimony

10        Mr. Park was disclosed to Apple in Samsung's supplemental initial disclosures on June 18,

11   2012 as knowledgeable about the "design around of '381, '163, '607 and '915 patents and certain

12   Apple design IP, and cost of design around."   He was identified on Samsung's July 23, 2012 live

13   trial witness list for testimony "regarding hypothetical design around of the '381, '163, and '915

14   patents and certain Apple design IP, and cost of design around."   (Dkt. 1278 at 5.)

15        3.   Summary of Proposed Testimony

16        Mr. Park will testify as to the time it would take Samsung to hypothetically design around

17   the '381, '163,   '915 and D'305 patents.   Mr. Wagner relied upon conversations with Mr. Park,

18   which were disclosed in his April 2012 expert report, to derive his hypothetical design around

19   costs.   (Dkt. 2401-4 at 182 n. 846 & 848, 183 n. 849, 185 nn. 859-61, 197 n. 896, 213, Schedule

20   13.1 n. [b], Schedule 13.3 n. [b], Schedule 13.5 n. [b], Schedule 13.6 n. [b], Schedule 13.7 [b].)

21   Mr. Wagner testified to these hypothetical design around costs at the first trial.   (Trial Tr.3054:20-

22   3055:12.)

23

24   **D.   Jong-wook Shim**

25        1.   Witness role

26   Jong-wook Shim is an Associate in the Human Resources Group 1 at SEC.

27        2.   Previous Disclosures and Testimony

28

-15-

1    Mr. Shim was identified on Samsung's July 23, 2012 live trial witness list for testimony

2 "as to hypothetical design around costs."   (Dkt. 1278 at 7.)

3              3.     Summary of Proposed Testimony

4    Mr. Shim will testify as to the approximately hourly rate Samsung incurs to compensate

5 the employees who would be involved in a hypothetical design around of the '381, '163, '915 and

6 D'305 patents.   Mr. Wagner relied upon conversations with Mr. Shim, which were disclosed in

7 his April 2012 expert report, to derive his hypothetical design around costs.   (Dkt. 2401-4 at 183

8 n. 849, 185 n. 861, 197 n. 896, 213, Schedule 13.1 n. [a], Schedule 13.3 n. [a], Schedule 13.5 n. [a],

9 Schedule 13.6 n. [a], Schedule 13.7 [a].)   Mr. Wagner testified to these hypothetical design

10 around costs at the first trial.   (Trial Tr.3054:20-3055:12.)

11

12         **E.     Jinsoo Kim**

13              1.     Witness Role

14    Jinsoo Kim was involved in designing Samsung's smartphones, including the Galaxy Ace,

15 which was found not to infringe the D'677 patent.

16              2.     Previous Disclosures and Testimony

17    Mr. Kim was disclosed to Apple in Samsung's initial disclosures on September 7, 2011 as

18 knowledgeable about "Samsung design" generally, and about the "design of Galaxy Tab" and

19 Galaxy S 2 products.   The disclosure was timely supplemented to include the Galaxy Ace

20 smartphone.   He was deposed in this case on February 2, 2012, and in the related ITC proceeding

21 (*In the Matter of Certain Electronic Digital Media Devices and Components Thereof*,

22 Investigation No. 337-TA-796) ("ITC 796")[1] on February 3, 2012.   Mr. Kim was also identified

23 on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony "regarding

24 Samsung design, design of Galaxy Tab products, and Ace."   (Dkt. 1193-1 at 13; Dkt. 1278 at

25 4.)   Mr. Kim testified at the first trial on August 15, 2012.   (*See* Trial Tr. 2787-2837.)

26

27

28    _____
       [1]   The parties stipulated to a cross-use agreement whereby evidence produced in ITC 796

1

3.     Potential Exhibits To Be Used With Witness

2

Samsung may use the following exhibits with Mr. Kim.   The DX exhibit listed below was

3

disclosed in Samsung's July 23, 2012 final exhibit list for the first trial.   (Dkt. 1285-1.)   All of the

4

JX exhibits were included in the parties' July 23, 2012 joint exhibit list.   (Dkt. 1281 at 3.)

5

- DX 683 — Jinsoo Kim Sketchbook (not offered in first trial)

6

- JX 1001 — iPhone 3G (admitted)

7

- JX 1030 — Galaxy Ace (admitted)

8

4.     Summary of Proposed Testimony

9

Mr. Kim will testify that he is a principal industrial designer for Samsung, and has worked

10

at Samsung for 10 years designing mobile phones and tablets.   (Trial Tr. 2787:14-2788:8.)   As a

11

principal designer, Mr. Kim is the most senior level of designer at Samsung below the executive

12

level.   He will testify that he directed the exterior design of the Galaxy Ace.   (Alden Decl. Ex. 3

13

(Jinsoo Kim 02/02/2012 Dep. Tr. 45:5-7).)   Mr. Kim will be able to testify as to the timing and

14

overall design goals for the Galaxy Ace project, to make it "friendly and simple" and to give it a

15

"big display in a small size".   (*Id.* at 47.)   He will also testify that he borrowed from pre-existing

16

Samsung design work in creating the Ace.   (*Id.* at 48.)   Mr. Kim will also be able to testify in

17

detail about the design features of the Ace, including specifics about its color (*id.* at 51-52), shape

18

(*id.* at 53), front face mask (*id.* at 56, 59), touch sensitive parts (*id.* at 57-58), precise positioning

19

of the display screen (*id.* at 60), and the physical button (*id.* at 64-65).   Mr. Kim will testify that

20

he and his team did not consult the iPhone in designing the Ace.   (*Id.* at 67:5-12.)   And consistent

21

with the testimony Apple's own counsel elicited during deposition, Mr. Kim will be able to give a

22

detailed comparison as needed between the Ace and the iPhone 3G, pointing out various

23

differences in design, including the shape and decoration of the receiver slot (*id.* at 68), presence

24

of writing on the Ace (*id.*), the look of the Ace's button (*id.*), the metallic detail (*id.* at 69), and the

25

curvature of the Ace's top and bottom edges (*id.* at 70).

26

27

28

-17-

**F.** **Stephen Gray**

   1.  Witness Role

Scope of Apple's '163 and '915 patents and non-infringing alternatives.

   2.  Previous Disclosures and Testimony

  Mr. Stephen Gray submitted an Expert Report on Invalidity regarding the '915 and '163 Patents on March 22, 2012 (Dkt. 2255-2), and an Expert Report on Noninfringement regarding the '915 and '163 Patents on April 16, 2012 (Dkt. 2255-12).   He submitted a Declaration in Support of Samsung's Motion for Summary Judgment on May 17, 2012.   (Dkt. 931.)   He was deposed on May 4, 2012, July 7, 2012 and November 6, 2012.    Mr. Gray was identified in Samsung's July 7, 2012 and July 23, 2012 live witness lists as "a technical expert [who] may provide testimony relating to Apple's '163 and '915 patents."   (Dkt. 1193-1 at 9; Dkt. 1278 at 2.)   Mr. Gray testified at trial on August 15, 2012.   (Trial Tr. at 2893:5-2935:20.)   He further submitted two Declarations in Support of Samsung's Opposition to Apple's Motion for Permanent Injunction on October 19, 2012 and December 5, 2012.   (Dkt. 2054 and 2183.)   He was timely disclosed on Samsung's List of Witnesses for Trial on October 1, 2013 as "a technical expert [who] may provide testimony relating to Apple's '163 and '915 patents."

   3.  Potential Exhibits To Be Used With Witness

Samsung may use the following exhibits with Mr. Gray:

- Exhibits Apple may use with Dr. Karan Singh
- DX 546 – Bederson, et al., Pad++ (admitted)
- DX 548 – MERL DiamondTouch and Mandelbrot (admitted)
- DX 550 – Nomura Patent (admitted)
- DX 551 – Van Ee Application, U.S. Patent Appl. No. 2002/0030699 (not admitted but on Samsung's exhibit list)
- DX 556 – Jefferson Han TED Video (admitted)
- DX 561 – Agnetta reference, U.S. Patent No. 7,933,632; U.S. Patent Appl. No. 60/718,187 (admitted)
- DX 692 – J. Han email string (not admitted but on Samsung's exhibit list)

-18

- DX 694 – April 7, 2005 email from S. Hotelling to G. Christie then to S. Forstall, subject "LaunchTile" (not admitted but on Samsung's exhibit list)
- DX 722 – Annotated Videos of LaunchTile and XNav (not admitted but on Samsung's exhibit list)
- DX 959 – '915 Ex Parte Reexamination File History (not previously offered for admission)
- DX 961 – Apple's Demonstrative re Singh (PDX 29) (presented but not admitted)
- DX 963 – Claim Construction Order (Dkt 1447) (not previously offered for admission)
- DX 964 – Claim Construction Order (Dkt 849) (not previously offered for admission)
- DX 965 – Claim Construction Order (Dkt 1266) (not previously offered for admission)
- DX 966 – Claim Construction Order (Dkt 1425) (not previously offered for admission)

4.      Summary of Proposed Testimony

Should it be necessary, Samsung intends to present Mr. Gray in order to rebut Apple's arguments regarding the scope of the '915 and '163 patent.   Much of Mr. Gray's testimony was already presented during the first trial.   In addition, Samsung seeks to present testimony regarding the scope of the '915 patent as indicated by Apple's statements during reexamination.   Apple's statements inform the proper scope of the claims of the '915 patent.

As an initial matter, Mr. Gray will testify regarding his credentials to establish himself as an expert in software programming and user interface, the subject matter of the '915 and '163 patents.   Such testimony was elicited during the first trial.   (Trial Tr. at 2893:7-2895:15.)

(a)      The '915 Patent

Regarding the '915 patent, Mr. Gray will provide testimony explaining that the '915 patent does not cover the general concepts of single-finger scroll or two-finger gestures.   He will explain that Apple's patent instead covers a specific and narrow implementation, in which any number of

1  finger inputs from two to infinity must cause a gesture operation.   Accordingly, potential non-

2  infringing alternatives include systems in which multiple finger inputs cause a scrolling operation,

3  and systems where the number of finger inputs is not considered at all.

4        Mr. Gray will demonstrate the limited scope of the '915 patent by describing the

5  limitations required by the patent.   Mr. Gray will explain the scope of each limitation, as he did

6  during the first trial.   (*See* Trial Tr. at 2898:15-22, 2899:3-5, 2899:11-13, 2899:25-9, 2899:20-23,

7  2901:16-2902:5, 2904:1-2, 2904:15-22, 2905:4-6, 2906:1-3, 2910:8-22 and 2912:12-15.)   The

8  scope of the '915 patent was further described in Mr. Gray's Opening Expert Report (Dkt. 2255-2)

9  at ¶¶123-133 and 139-142, the Declaration of Dr. Stephen Gray Support of Samsung's Motion for

10  Summary Judgment (Dkt. 931) at ¶¶17-27, and the May 4, 2012 Deposition of Stephen Gray at

11  105:6-106:2.

12        Consistent with his prior testimony, Mr. Gray will explain that the '915 patent requires

13  machine readable storage, such as memory and receiving user input on a touch sensitive display

14  that is integrated with the data processing system (Trial Tr. at 2898:15-22, 2904:1-2); creating an

15  event object in response to the user input (*id.* at 2899:3-5, 2899:11-13, 2904:15-22, 2905:4-6);

16  distinguishing between a single input point scroll and multiple input point gesture (*id.* at 2899:25-

17  9); issuing a scroll or gesture call based on invoking the scroll or gesture operation (*id*. at 2899:20-

18  23, 2906:1-3); and that a scroll or gesture operation result in either a scroll or a scaling of the

19  image (*id.* at 2901:16-2902:5).

20        For the key limitation of distinguishing between a single-finger scroll and multi-finger

21  gesture, Mr. Gray will highlight the narrow scope of the limitation by contrasting it with the

22  Nomura, DiamondTouch and Jefferson Han prior art, along with Apple's related admissions.

23        Mr. Gray will contrast the '915 patent with the Nomura reference.   (DX 550.)   Mr. Gray

24  will explain that features very similar to the elements of the '915 patent were found in the Nomura

25  reference, as he testified during the first trial.   (Trial Tr. 2902:6-2907:14.)   He will explain that

26  among the elements disclosed, the Nomura reference discloses distinguishing between a single-

27  finger scrolling operation and a two-finger zoom operation.   (*See* Trial Tr. 2905:10-18.)   He will

28

1  testify that the only distinction between Nomura and the '915 patent is that three or more fingers

2  must also cause a scrolling operation.

3     Mr. Gray will testify that Apple's own testimony and documents confirm his interpretation

4  of the '915 patent.   He will cite to Apple's statements to the PTO during the reexamination of the

5  '915 patent as evidence supporting his view regarding the scope of the '915 patent.   (DX 959.)

6  These statements, which constitute admissions by Apple, are clearly relevant to determining the

7  scope of the patent claims.   (*See also* Dkt. 2467, Samsung's Opposition to Apple's Motion in

8  Limine re Reexamination Proceedings.)

9     For example, as stated in Apple's Response to the Initial Office Action, the '915 patent

10  "distinguishes between a) one and b) two or more [input points]."   *See* DX 959 at 95, Apple's

11  Response to Initial Office Action at 3.   By contrast, "Nomura involved distinguishing between i)

12  two input points and ii) not two input points."   (*Id.*)   Specifically, Apple stated:

13     "Dr. Nieh explained how Nomura disclosed a computer with logic that does not
   distinguish (*i.e.* recognize a difference) between a) a single input point and b) two

14     or more input points.   Rather, the computer disclosed in Nomura involved
   distinguishing between i) two input points and ii) not two input points.

15     Mathematically and logically, a test that distinguishes between a) one and b) two or
   more is not equivalent to a test that distinguishes between i) two and ii) not two.

16     Patent Owner's representatives made clear that a computer performing the test of
   Nomura does not perform the test recited in the '915 Patent claims."

17

18  (*Id.* (emphasis in original).)

19     "The rejection is premised on Nomura's disclosure that both gesture operations

20     (*e.g.*, zoom-in) and scroll operations can be performed on a map display.   But a
   reference's disclosure of both scroll operations and gesture operations is not the

21     same as a disclosure of distinguishing between a single input point and two or more
   input points.   Treating these two different disclosures as being identical confuses

22     the result (*i.e.*, scroll and gesture operations) with the mechanism for achieving that
   result (*i.e.*, distinguishing one input point from multiple input points).   **A device**

23     **with both scroll operations and gesture operations may be implemented**
   **without distinguishing between a single input point and two or or input points,**

24     **as Nomura itself demonstrates.**"

25  (DX 959 at 99-100, Apple's Response at 7-8 (emphasis added).)

26     "The algorithm for Nomura's scroll and gesture operations involve(s) a gesture

27     recognition process that distinguishes exactly two, and only two, input points.   The
   method described in Nomura, however, does not, and cannot, involve

28

> distinguishing exactly one input point.   Rather, the algorithm of Nomura
> implements a scroll as the default operation when there are *not* two input points,
> assuming all other conditions are met.   In contrast, the claimed subject matter
> involves performing a test that distinguishes one input point versus two or more
> input points.   If there is one input point, the input is interpreted as a scroll
> operation.   Otherwise, if there is *not* one input point (*i.e.* two or more input points),
> the input is interpreted as a gesture operation.

(DX 959 at 100, Apple's Response at 8 (emphasis in original).)

Mr. Gray will also cite to Apple's Request for Personal Interview, dated October 3, 2013, in which Apple again made statements confirming that the '915 patent does not cover "the mere coincidental alignment of results under a limited set of circumstances (*e.g.*, scroll operation on one input, gesture operation on two inputs.").   (Dkt 2507-1, Apple's Request for Personal Interview at 3.)   Mr. Gray will point out that the Nomura reference is distinguished only because "Nomura's logic would handle three (or greater) inputs as scroll operations rather than gesture operations, as clearly required by claim 8."   (*Id.*)   As Apple explained in detail:

> "One of skill would understand the phrase "two or more inputs" to essentially mean
> "2 – infinite", which defines a set of input types, **all** of which would be interpreted
> as a gesture operation."

(*Id.* (emphasis in original).)

> "With respect to claim 8 in particular, a person of ordinary skill in the art would
> understand that the computer readable storage medium includes a **predefined set** of
> instructions that dictate the logic by which the computer operates under all
> circumstances.   Accordingly, mere coincidental alignment of results under a
> limited set of circumstances (*e.g.*, scroll operation on one input, gesture operation
> on two inputs), would not anticipate if it is clear that the logic does not match.
> Again, this is shown by how Nomura's logic would handle three (or greater) inputs
> as scroll operations rather than gesture operations, as clearly required by claim 8.

(*Id.* (emphasis in original).)

Similarly, Mr. Gray will demonstrate the limited scope of the '915 patent by contrasting it with the DiamondTouch Fractal Zoom reference.   (DX 548.)   Mr. Gray will explain that features very similar to the elements of the '915 patent were found in the DiamondTouch reference, as he testified during the first trial.   (Trial Tr. 2897:24-2902:5.)   He will explain that among the elements disclosed, the DiamondTouch reference discloses distinguishing between a single-finger

-22

1  scrolling operation and a two-finger zoom operation.   (*See* Trial Tr. 2899:25-2900:12.)   He will

2  testify that the only distinction between DiamondTouch and the '915 patent is that three or more

3  fingers must also cause a scrolling operation.   Mr. Gray will explain that statements by Dr. Singh

4  confirm his view.   For example, Dr. Singh distinguished the DiamondTouch reference because

5  "Claim Element C says one finger scroll, two or more scales it, or gestures.   You put three fingers

6  down, three is greater than two, it should scale.   It scrolls."   (Trial Tr. 3624:15-18, *see id*. at

7  3624:6-18.)

8        Mr. Gray will also demonstrate the limited scope of the '915 patent by contrasting it with

9  the Jefferson Han reference.   (DX 556.)   Mr. Gray will explain that features very similar to the

10  elements of the '915 patent were found in the Jefferson Han reference, as he testified during the

11  first trial.   (Trial Tr. 2908:8-2910:5.)   He will explain that among the elements disclosed, the

12  Jefferson Han reference also discloses single input scrolls and multi-input zooming operations.

13  (Trial Tr. 2908:18-22.)   Mr. Gray will explain that statements by Dr. Singh confirm that the '915

14  patent does not cover the general concept of single-finger scroll and two-finger zoom, but rather

15  covers a particular implementation in source code.   For example, Dr. Singh distinguished the

16  Jefferson Han reference because there was no evidence regarding whether the Han reference had

17  particular programming constructs.   (*See* Trial Tr. at 3627:4-14.)

18        Based on the foregoing, Mr. Gray will testify that the '915 patent would not be infringed

19  by a product that had single-finger scrolling and two-finger gestures alone.   Rather, the '915

20  patent is only infringed based on a particular implementation of that behavior in the source code.

21  For example, so long as three input points, four input points, five input points, or any arbitrarily

22  large number of input points causes a scrolling operation instead of a gesture operation, there

23  would be no infringement of the '915 patent.   Thus, Samsung could easily design around the '915

24  patent by programming an arbitrarily large number of input points to perform a scrolling operation

25  instead of a gesture operation.

26        In addition, Samsung could implement a number of additional non-infringing alternatives,

27  as described in Mr. Gray's Expert Report on Noninfringement.   Mr. Gray will testify that source

28  code could be written to still perform a single-finger scroll and two-finger gesture, without even

1   considering the number of input points being used.   (Gray Noninfringement Report (Dkt. 2255-

2   12) at ¶¶197-204.)   Alternatively, Samsung could implement a tilt zoom functionality instead of a

3   pinch to zoom.   (*Id.* at ¶¶205-207.)

4        Apple has not disclosed how it will describe the scope of the '915 patent.   To the extent

5   that Apple provides additional theories in order to broaden the scope of the '915 patent, Mr. Gray

6   will provide testimony to rebut those positions.   Mr. Gray is prepared to testify regarding the

7   construction and interpretation of the '915 patent claim terms, should Apple attempt to expand the

8   scope of any of those terms.   (*See* DX 963-966, claim construction orders.)

9                    (b)    The '163 patent

10        Regarding the '163 patent, Mr. Gray will provide testimony explaining that the '163 patent

11   does not cover the general concept of double-tap to zoom, or the concept of double-tap to zoom

12   and double-tap to recenter generally.   He will explain that Apple's patent instead covers a feature

13   in which the user must perform a tap gesture on a first box of content to enlarge and center, and

14   then, detecting a tap gesture on a second box of content which is different from the first box,

15   recentering on that second box.   Accordingly, a non-infringing alternative includes not

16   recentering on the second box of content.

17        Mr. Gray will describe the scope of the limitations of the '163 patent, as he did during the

18   first trial.   (Trial Tr. at 2913:14-17, 2913:22-24, 2914:12-17, 2915:13-16, 2916:1-6.)   The scope

19   of the '163 patent was further described in Mr. Gray's Opening Expert Report (Dkt. 2255-2) at

20   ¶¶287-292, 308-314, the Declaration of Stephen Gray in Support of Samsung's Motion for

21   Summary Judgment (Dkt. 931) at ¶¶56-61, and the May 4, 2012 Deposition of Stephen Gray at

22   150:17-152:10, 156:14-160:7.

23        Consistent with his prior testimony, Mr. Gray will explain that the '163 patent requires a

24   portable electronic device (Trial Tr. at 2913:14-17); displaying at least a portion of a structured

25   electronic document (*id* at 2913:22-24); detecting a first gesture for determining a first box in the

26   plurality of boxes at that location (*id.* at 2914:12-17); after the first box is enlarged, detecting a

27   gesture on a second box which is not the first box (*id.* at 2915:13-16); and the gesture on a second

28

box causes the structured electronic document to be translated and substantially centered (*id*. at 2916:1-6).

Mr. Gray will also highlight the narrow scope of the '163 patent by contrasting it with the prior art references, including LaunchTile and the Agnetta reference.   Mr. Gray will demonstrate that the '163 patent does not cover tap to zoom, and tap to center generally by comparing it to LaunchTile.   (DX 722.)   Mr. Gray will demonstrate that LaunchTile also allowed a user to tap on a first box of content to zoom in to that content.   LaunchTile further allowed a user to tap on a second box of content to substantially center that content, while also zooming in on that content.   Mr. Gray described in detail the operation of the LaunchTile system during the initial trial.   (Trial Tr. 2913:2-2917:2.)

Similarly, Mr. Gray will demonstrate that the '163 patent does not cover tap to zoom, and tap to center generally by comparing it to the Agnetta reference.   (DX 561.)   Mr. Gray will demonstrate that the Agnetta reference also allows a user to select a first box of content – a tile – to enlarge and center.   Mr. Gray will further demonstrate that the user can select a second box of content – any adjacent tile – to enlarge and center as well.   Mr. Gray also detailed the operation of the Agnetta reference during the initial trial.   (Trial Tr. 2918:14-2919:10.)

Mr. Gray will discuss non-infringing alternatives to the '163 as described in his expert report.   A non-infringing alternative would be to simply remove the second "tap to pan" feature. (Gray Noninfringement Report (Dkt. 2255-12) at ¶425-432.)

Apple has not disclosed how it will describe the scope of the '163 patent.   To the extent that Apple provides additional theories in order to broaden the scope of the '163 patent, Mr. Gray will provide testimony to rebut those positions.   Mr. Gray is prepared to testify regarding the construction and interpretation of the '163 patent claim terms, including the term "structured electronic document," should Apple attempt to expand the scope of any of those terms.   (*See* DX 963-966, claim construction orders.)

1

**G.**     **Andries van Dam**

2

      1.     Witness Role

3

Scope of Apple's '381 Patent and non-infringing alternatives.

4

      2.     Previous Disclosures and Testimony

5

Dr. Andries van Dam submitted a Declaration in Opposition to Apple's Motion for

6

Preliminary Injunction regarding the '381 patent on August 22, 2011.   (Dkt. 168.)   He submitted

7

an Expert Report on Invalidity regarding the '381 Patent on March 22, 2012.   He submitted a

8

Declaration in Support of Samsung's Motion for Summary Judgment on May 17, 2012.   (Dkt.

9

937.)   He was deposed on September 14, 2011 and May 2, 2012.   Dr. van Dam was identified in

10

Samsung's July 7, 2012 and July 23, 2012 live witness lists as "a technical expert [who] may

11

provide testimony relating to Apple's '381 patent."   (Dkt. 1193-1 at 27; Dkt. 1278 at 8.)   Dr. van

12

Dam testified at trial on August 15, 2012.   (Trial Tr. at 2845:13-2885:19.)   He further submitted

13

a Declaration in Support of Samsung's Opposition to Apple's Motion for Permanent Injunction on

14

October 19, 2012.   He submitted a Declaration in Support of Samsung's Motion for New Trial

15

regarding the '381 patent.   (Dkt. 2338-04.)   He was timely disclosed on Samsung's List of

16

Witnesses for Trial on October 1, 2013 as "a technical expert [who] may provide testimony

17

relating to Apple's '381 patent."

18

      3.     Potential Exhibits To Be Used With Witness

19

Samsung may use the following exhibits with Dr. van Dam:

20

- Exhibits Apple may use with Dr. Ravin Balakrishnan

21

- DX 528 – XNav source code (admitted)

22

- DX 546 – Bederson, et al., Pad ++ (admitted)

23

- DX 556 – Jefferson Han TED Video (admitted)

24

- DX 590 – Lira reference, U.S. Patent No. 7,872,640 and WO 03/081458 (admitted)

25

- DX 655 – DiamondTouch and TableCloth (admitted)

26

- DX 692 – J. Han email string (not admitted but on Samsung's exhibit list)

27

- DX 694 – April 7, 2005 email from S. Hotelling to G. Christie then to S. Forstall,

28

      subject "LaunchTile" (not admitted but on Samsung's exhibit list)

1    • DX 720 – Annotated Video of TableCloth Running on a DiamondTouch (not

2    admitted but on Samsung's exhibit list)

3    • DX 721 – Annotated Videos of LaunchTile and XNav (not admitted but shown at

4    trial and on Samsung's exhibit list)

5    • DX 751 – '381 video dated July 5, 2012 (published at trial)

6    • DX 952 – Annotated Video of ThinkFree Office on Samsung Intercept (not

7    previously offered for admission)

8    • DX 958 – '381 Ex Parte Reexamination File History (not previously offered for

9    admission)

10    • DX 963 – Claim Construction Order (Dkt 1447) (not previously offered for

11    admission)

12    • DX 964 – Claim Construction Order (Dkt 849) (not previously offered for

13    admission)

14    • DX 965 – Claim Construction Order (Dkt 1266) (not previously offered for

15    admission)

16    • DX 966 – Claim Construction Order (Dkt 1425) (not previously offered for

17    admission)

18        4.    Summary of Proposed Testimony

19    Should it be necessary, Samsung intends to present Dr. van Dam in order to rebut Apple's

20    arguments regarding the scope of the '381 patent.   Much of Dr. van Dam's testimony was already

21    presented during the first trial.   In addition, Samsung seeks to present testimony regarding the

22    scope of the '381 patent as indicated by Apple's statements during reexamination.   Apple's

23    statements inform the proper scope of the claims of the '381 patent.

24    As an initial matter, Dr. van Dam will present his credentials to establish himself as an

25    expert in computer science, computer graphics, and graphical user interfaces, the subject matter of

26    the '381 patent.   Such testimony was elicited during the first trial.   (Trial Tr. at 2847:13-2851:5.)

27    Dr. van Dam will provide testimony explaining that the '381 patent does not cover the

28    general concepts of snapback, or snapback across an edge or boundary of an electronic document.

1   He will explain that Apple's patent instead covers a specific and narrow implementation, in which

2   the snapback has a specific stop condition, namely that the area beyond the edge of the electronic

3   document is no longer displayed.

4        Dr. van Dam will demonstrate the limited scope of the '381 patent by describing the

5   limitations required by the patent.   Dr. van Dam will explain the scope of each limitation, as he

6   did during the first trial.   (*See* Trial Tr. at 2854:10-17, 2855:10-20, 2857:16-20, 2857:23, 2857:25,

7   2858:2, 2860:21-25, 2861:9-10, 2861:13-2862:1, 2862:15-20, 2863:3-6, 2862:12-14, 2865:10-13,

8   2868:21, 2870:16-17.)   The scope of the '381 patent was further described in Dr. van Dam's

9   Expert Report (Dkt. 2255-6) at ¶¶51-58, and the Declaration of Dr. Andries van Dam in Support

10  of Samsung's Motion for Summary Judgment (Dkt. 937) at ¶¶30-41.   Specifically, Dr. van Dam

11  will explain that the '381 patent requires a touchscreen display, a processor, memory, and a

12  program stored in memory (Trial Tr. at 2857:16-2858:2); an electronic document (*id.* at 2855:10-

13  20, 2865:10-13); displaying a first portion of an electronic document (*id.* at 2860:21-25);

14  translating the document in a first direction (*id.* at 2861:9-10); displaying a second portion of an

15  electronic document (*id.* at 2861:13-2862:1); displaying a third portion of an electronic document

16  smaller than the first portion (*id.* at 2862:15-20); translation of the document in a second direction

17  (*id.* at 2863:3-6); and displaying a fourth portion different from the first portion (*id.* at 2862:12-14,

18  2870:16-17).

19       Dr. van Dam will explain that the '381 patent does not cover snapback behavior generally

20  by comparing it to Samsung's own products, demonstrating the additional behavior on the

21  Samsung products that Apple concedes falls outside the scope of the '381 patent.   Dr. van Dam

22  will discuss how the bounce effect on a zoomed out image in the Gallery application does not

23  infringe.   (*See, e.g.*, Trial Tr. at 1784:10-22.)   Dr. van Dam will also highlight the snapback

24  behavior on the ThinkFree Office program, a program that Apple dropped from its infringement

25  case at the close of evidence, noting that it does not fall under the scope of the '381 patent because

26  the area beyond the edge is still visible.   (DX 952.)   Finally, Dr. van Dam will demonstrate that

27  the scope of the '381 patent does not include any behavior where there is simply no snapback at all.

28  (DX 751.)   Each of these would be a potential non-infringing alternative to the '381 patent.

1     In addition, Dr. van Dam will explain that the '381 patent does not cover snapback

2  behavior generally by comparison to the prior art references.   Dr. van Dam will demonstrate that

3  the DiamondTouch with TableCloth (DX 655, 720), LaunchTile (DX 721), and Lira (DX 590)

4  references demonstrate snapback behavior that does not infringe the '381 patent.   Much of the

5  testimony described above was presented during the first trial.   (*See* Trial Tr. at 2855:1-2858:22,

6  2860:19-2864:23 (describing DiamondTouch), *id.* at 2864:24-2871:14 (describing LaunchTile).)

7  DiamondTouch was also the subject of the van Dam Declaration in Support of Samsung's Motion

8  for Summary Judgment.   (Dkt. 937.)   While Dr. van Dam did not present Lira during trial, the

9  Lira reference has been at issue since the beginning of this litigation.   (*See* Declaration of Andries

10  van Dam in Support of Samsung's Opposition to Apple's Motion for Preliminary Injunction (Dkt.

11  168 at ¶¶33, 37 and Exhibit 4), and Dr. van Dam's Expert Report on Invalidity (Dkt. 2255-6) at

12  ¶¶30, 31, 33, 34, 44, 47-48, 94-98, 107-110, and Exhibits 5-7.)   The Lira reference was also

13  discussed during Dr. van Dam's depositions.   (*See* September 14, 2011 van Dam Dep. at 166:7-

14  176:10; May 2, 2012 van Dam Dep. at 13:22-49:13, 92:21-96:17.)   Apple cannot reasonably

15  claim any prejudice or unfair surprise based on the inclusion of the Lira reference.

16     Furthermore, the Lira reference is central to the reexamination of the '381 patent.   During

17  the reexamination, Apple specifically made statements describing the narrow scope of the patent.

18  These statements, which constitute admissions by Apple, are clearly relevant to determining the

19  scope of the patent claims.   (*See also* Dkt. 2467, Samsung's Opposition to Apple's Motion in

20  Limine re Reexamination Proceedings.)   For example, during an interview with the examiner,

21  Apple explained that "the Lira reference lacked the 'stop condition' in the claims where the

22  translating in the second direction occurs 'until the area beyond the edge of the electronic

23  document is no longer displayed.'"   (DX 958 at 4249, *Ex Parte* Reexamination Interview

24  Summary.)   Similarly, in its Response to Final Office Action, Apple explained:

25        As discussed in the interview, Patent Owner asserts that, even under the broadest
         reasonable construction standard, a person of ordinary skill in the art would
26        understand that a device of claim 19 must include **instructions** for performing
         translation in the second direction with the recited **stop condition** (*i.e.*, "until the
27        area beyond the edge of the electronic document is no longer displayed").   Further,
         the person of ordinary skill would understand that incidentally achieving a similar

28

-29

visual result, based on a different stop condition, is neither an express nor inherent disclosure of the required instructions.

(DX 958 at 4049, Apple's Response to Final Office Action at 3.)   Dr. van Dam will explain that, under Apple's own construction, a device could achieve the same visual effect without infringing the '381 patent, so long as it lacked the claimed stop condition that the area beyond the edge of the electronic document is no longer displayed.   Such a configuration would be a non-infringing alternative to the '381 patent.

Apple has not disclosed how it will describe the scope of the '381 patent.   To the extent that Apple provides additional theories in order to broaden the scope of the '381 patent, Dr. van Dam will provide testimony to rebut those positions.   Dr. van Dam is prepared to testify regarding the construction and interpretation of the '381 patent claim terms, including the terms "electronic document" and "edge of the electronic document" should Apple attempt to expand the scope of any of those terms.   (*See* DX 963-966, claim construction orders.)


**H.     Itay Sherman**

       1.     Witness Role

Scope of the D'677 patent and non-infringing alternatives.

       2.     Previous Disclosures and Testimony

Itay Sherman was timely disclosed during the preliminary injunction phase as an expert witness on design patent infringement and invalidity with regard to the D'677 patent, among others.   Mr. Sherman submitted an expert declaration in opposition to Apple's motion for a preliminary injunction on August 22, 2011.   (Dkt. 172.)   Mr. Sherman also submitted expert reports on invalidity and functionality for the D'677, D'087, and D'889 patents.   (*See* Dkt. 2255-19.)   Apple deposed Mr. Sherman in this case on September 15, 2011 and April 20, 2012, and in the parallel ITC 796 proceeding on April 21, 2012.   Mr. Sherman was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony regarding the invalidity and functionality of Apple's asserted design patents.   (Dkt. 1193-1 at 24; Dkt 1278 at 6.)   Mr. Sherman testified at trial on August 14, 2012.   (*See generally* Trial Tr. 2573-2636.)

3.      Potential Exhibits To Be Used With Witness

Samsung may use the following exhibits with Mr. Sherman:

- DX 511 — Japanese Design Patent JP D1241638 (admitted)

- DX 727 — Korean Design Patent KR30-0418547 (admitted)

- DX 728 — Japanese Design Patent JP D1241383 (admitted)

- JX 1043 — D'677 patent (admitted)

- JX 1086 — Korean Design Patent KR 30-0452985 (not previously offered for admission)

- JX 1093 — LG Prada Phone (admitted)

4.      Summary of Proposed Testimony

Should it be necessary, Samsung intends to present Mr. Sherman in order to rebut Apple's arguments regarding the scope of the D'677 patent.   As an initial matter, Mr. Sherman will testify regarding his credentials to establish himself as an expert in the industrial design and functionality of mobile electronic consumer devices and as having experience applying for and obtaining design patents.   (Dkt. 2255-19 at 1-2 (Sherman Expert Report); Trial Tr. 2573:1-2575:17.)

Mr. Sherman will testify as to the proper interpretation of the claim of the D'677 patent. (Trial Tr. 2578:1-2579:7.)   If necessary, Mr. Sherman will also testify that the D'677 patent has a scope that is narrow enough to avoid being anticipated by the prior art references that Mr. Sherman analyzed for the jury at trial:   Japanese Design Patent JP D1241638 (DX 511); Korean Design Patent KR30-0418547 (DX 727); Japanese Design Patent JP D1241383 (DX 728); and the LG Prada (JX 1093).   (See Trial Tr. 2580:7-2593:6.)   For each piece of prior art, Mr. Sherman will testify consistent with his testimony at the first trial that the scope of the D'677 patent is narrow enough that it does not encompass the prior art otherwise it would be anticipated by it. (Id.)   Mr. Sherman will testify that in light of the prior art, the scope of the D'677 cannot encompass a smartphone device simply because it has a rectangular shape, evenly rounded corners, a centered display, a lozenge-shaped speaker slot in the upper border, a completely flat face, and is the color black.   (Trial Tr. 2581:2-2582:7; 2583:22-2585:11; 2588:10-2589:3; 2589:7-20.)   Mr. Sherman will testify that these features were already shown in the prior art.   (Id.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.    **Robert Anders**

    1.    Witness Role

Scope of the D'677 patent and non-infringing alternatives.

    2.    Previous Disclosures and Testimony

Robert Anders was timely disclosed during the discovery phase as an expert witness on design patents and trade dress, including the D'677 patent.   Mr. Anders submitted an expert report on non-infringement for the D'677, D'087, and D'889 patents.   (*See* Dkt. 2255-22.) Apple deposed Mr. Anders in this case on April 26, 2012, and in the parallel ITC 796 proceeding on April 24, 2012.   Mr. Anders was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony regarding "non-infringement analyses for the design patents and trade dress claims."   (Dkt. 1193-1 at 1; Dkt. 1278 at 1.)

    3.    Potential Exhibits To Be Used With Witness

- DX 511 — Japanese Design Patent JP D1241638 (admitted)
- DX 728 — Japanese Design Patent JP D1241383 (admitted)
- JX 1043 — D'677 patent (admitted)
- JX 1086 — Korean Design Patent KR 30-0452985 (not previously offered for admission)
- JX 1093 — LG Prada Phone (admitted)

    4.    Summary of Proposed Testimony

Should it be necessary, Samsung intends to present Mr. Anders in order to rebut Apple's arguments regarding the scope of the D'677 patent.   As an initial matter, Mr. Anders will testify regarding his credentials to establish himself as an expert in industrial design.

Mr. Anders will testify regarding the figures in the D'677 patent.   (Dkt. 2255-22 at Part C, pages 1-3.)   Mr. Anders will testify that he examined various prior art references for the D'677 patent, including JP'638, JP'383, KR'985,[1] and the LG Prada.   (*Id.* at Part C, pages 3-9, 12-14.) Mr. Anders will testify that in light of the prior art, Apple cannot claim that the following elements

---

[1]    As indicated in Samsung's proffer regarding independent product development, Apple previously agreed in writing that the KR'985 reference was not stricken.

1  were original to D'677:   a clear and reflective rectangular face with rounded corners; a black and

2  reflective rectangle on the frontal plane of an electronic device; a rectangle display within the front

3  face; or an oblong shaped speaker slot.   (*Id.* at Part C, pages 3.)   Mr. Anders will testify that the

4  D'677 patent must have a scope that is narrow enough that it does not encompass the prior art

5  references and that it cannot claim general design concepts.

6

7       **J.**     **Samuel Lucente**

8              1.    Witness Role

9       Scope of the D'305 patent and non-infringing alternatives

10             2.    Previous Disclosures and Testimony

11      Samuel Lucente was timely disclosed to Apple on December 13, 2011 as an expert witness.

12  Mr. Lucente submitted expert reports on design patent and trade dress issues related to user

13  interface designs.   (Dkts. 2255-18 and 2255-21.)   Apple deposed Mr. Lucente in this case on

14  April 20, 2012.   Mr. Lucente was also identified on Samsung's July 7, 2012 and July 23, 2012

15  live trial witness lists for testimony regarding Apple's graphical user interface design patents, and

16  GUI-related trade dress issues, including non-infringement and invalidity.   (Dkt. 1193-1 at 16;

17  Dkt. 1278 at 4.)   Mr. Lucente also submitted a declaration supporting Samsung's opposition to

18  Apple's motion for a permanent injunction, discussing the D'305 and D'677 patents.   (Dkt.

19  2057.)

20             3.    Potential Exhibits To Be Used With Witness

21      Samsung may use the following exhibits with Mr. Lucente:

22      • Exhibits Apple may use with its user interface design expert, Susan Kare, regarding

23         the scope of D'305.

24      • PX 7 — Photographs of accused Samsung devices (admitted)

25      • PX 147 — Sony Xperia Arc S (not admitted)

26      • PX 148 — Nokia Lumia 800 (admitted)

27      • PX 158 — User Interface - Blackberry Torch 9850 (admitted)

28      • PX 159 — Nokia N9 GUI (not admitted)

1
- JX 1007 — Galaxy S (i9000) (admitted)

2
- JX 1010 — Galaxy S Vibrant (admitted)

3
- JX 1011 — Captivate (admitted)

4
- JX 1012 — Epic 4G (admitted)

5
- JX 1013 — Fascinate (admitted)

6
- JX 1014 — Transform (admitted)

7
- JX 1015 — Mesmerize (admitted)

8
- JX 1016 — Continuum (admitted)

9
- JX 1017 — Showcase (admitted)

10
- JX 1019 — Galaxy S 4G (admitted)

11
- JX 1020 — Gem (admitted)

12
- JX 1025 — Droid Charge (admitted)

13
- JX 1026 — Indulge (admitted)

14
- JX 1027 — Infuse 4G (admitted)

15
- JX 1031 — Galaxy S II (AT&T) (admitted)

16
- JX 1032 — Galaxy S II (i9100) (admitted)

17
- JX 1033 — Galaxy S II (T-Mobile) (admitted)

18
- JX 1034 — Galaxy S II (Epic 4G Touch) (admitted)

19
- JX 1035 — Galaxy S II (Skyrocket) (admitted)

20
- JX 1042 — D'305 Patent (admitted)

21
- JX 1063 — File wrapper for D'305 Patent (not admitted)

22
- PX 2277 — Pantech Hotshot (admitted)

23
- PX 2278 — Blackberry Storm (admitted)

24
- PX 2531 — Blackberry Storm 2 (not admitted)

25
- PDX 14 — Demonstrative used during S. Kare's trial testimony (published at trial)

26
      4.    <u>Summary of Proposed Testimony</u>

27
      Should it be necessary, Samsung intends to present Mr. Lucente in order to rebut Apple's

28
arguments regarding the scope of the D'305 patent.   As an initial matter, Mr. Lucente will testify

1  regarding his credentials to establish himself as an expert in the design of a graphical user

2  interface, the subject matter of the D'305 patent.   (Dkt. 2255-18 at 2 (Opening Expert Report);

3  Dkt. 2255-21 at 2 (Rebuttal Expert Report).)

4        Consistent with the opinions Mr. Lucente already disclosed in his expert reports and which

5  were not subject to any motion to strike, he will testify regarding the scope of the D'305 patent in

6  several ways.   Mr. Lucente will testify regarding the proper interpretation of the drawings of the

7  D'305 patent.   (*See, e.g.*, Dkt. 2255-21 at 14.)   Mr. Lucente will also testify about the scope of

8  the D'305 patent by comparing it to alternative designs that Apple put forward as non-infringing

9  alternatives.   Mr. Lucente considered these alternative designs in his rebuttal report in response to

10  the opinions of Susan Kare.   Thus, as necessary to cabin any unduly broad assertions about the

11  scope protected by the D'305 patent, Mr. Lucente can compare it to user interface designs of the

12  Pantech Hotshot, Sony Xperia Arc S, Nokia Lumia 800, Blackberry Torch 9850, Blackberry

13  Storm, Blackberry Storm 2 and the Nokia N9 and show that the D'305 patent cannot encompass

14  these designs as they were put forward by Apple as non-infringing alternatives.   (*Id.* at 39-41, 42

15  & n. 52.)   Mr. Lucente will also testify that the design of the graphic user interfaces of the Galaxy

16  S II phones were not accused of infringing D'305, and are thus noninfringing alternative designs.

17  (*Id.* at 43-44.)   As needed, Mr. Lucente will also be able to compare the user interfaces of the

18  products found to infringe the D'305 patent to the non-infringing alternatives because he analyzed

19  all of their graphical user interfaces in creating his report.   (*Id.* at 3 & n.1.)

20        Mr. Lucente will also testify that the icons in the D'305 patent give the appearance of a

21  "cropped view" or "cut out", such that the icons appear to be rounded square image cut out of a

22  larger image, or an image embossed on a uniform "container".   (*Id.* at 35.)

23

24

25

26

27

28

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11. 2013 CMO

**EXHIBIT B**

**SAMSUNG'S PROFFERED EVIDENCE REGARDING INDEPENDENT DERIVATION**

Apple has stated that it intends to re-introduce liability evidence in an attempt to once again paint Samsung as a "copier."   For the reasons stated in Samsung's various pre-trial filings (which it incorporates herein by reference), Apple should not be allowed to turn a limited damages trial solely to correct notice dates into a full-blown repeat of its liability case from the first trial. (*See, e.g.*, Dkt. 2406 at 1-3 (motion *in limine*); Dkt. 2419 at 3-7 (motion to preclude testimony); Dkt. 2418 at 1-7 (motion to exclude exhibits); Dkt. 2386 at 6-7 (motion to strike portions of Davis report).)   Among other reasons such alleged "copying" evidence should be excluded is that the first jury already found infringement.   Moreover, any tangential relevance such evidence may have (which is disputed) is greatly outweighed by the severe prejudice to Samsung.   In light of the fact that the jury will already be instructed to presume Samsung's infringement, if Apple is allowed to introduce highly inflammatory "copying" evidence, there will be no way for Samsung to undo that damage.    Apple will always simply point back to Samsung's presumed infringement, which Samsung cannot dispute at trial.   There will thus be the very real risk that the jury awards damages to punish Samsung, rather than merely to compensate Apple.   Nonetheless, if despite these serious risks, Apple is allowed to make allegations of copying, Samsung must be allowed to introduce rebuttal evidence.   The following proffer lists the main witnesses and exhibits that Samsung will rely on for this defensive purpose.   Samsung reserves the right to elicit additional testimony and to use additional exhibits on cross-examination of Apple's witnesses.

**K.     Jinsoo Kim**

1.     Witness Role

Jinsoo Kim was involved in designing Samsung's smartphones and tablets, including the Galaxy Tabs.

2.     Previous Disclosures and Testimony

Mr. Kim was disclosed to Apple in Samsung's initial disclosures on September 7, 2011 as knowledgeable about "Samsung design" generally, and about the "design of Galaxy Tab" products.

1    He was timely deposed in this case on February 2, 2012, and in the related ITC proceeding (*In the*

2    *Matter of Certain Electronic Digital Media Devices and Components Thereof*, Investigation No.

3    337-TA-796) ("ITC 796")[2] on February 3, 2012.   Mr. Kim was also identified on Samsung's July

4    7, 2012 and July 23, 2012 live trial witness lists for testimony "regarding Samsung design, design

5    of Galaxy Tab products, and Ace."   (Dkt. 1193-1 at 13; Dkt 1278 at 4.)   Mr. Kim testified at the

6    first trial on August 15, 2012.   (*See* Trial Tr. 2787-2837.)

7                          3.        Potential Exhibits To Be Used With Witness

8          If necessary, Samsung may use the following exhibits with Mr. Kim.   All of the DX

9    exhibits listed below were disclosed in Samsung's July 23, 2012 final exhibit list for the first trial,

10   or otherwise admitted at trial.   (Dkt. 1285-1.)   All of the JX exhibits were included in the parties'

11   July 23, 2012 joint exhibit list.   (Dkt. 1281 at 3.)

12            •   DX 526 — Samsung F700 (admitted for purposes other than invalidity)

13            •   DX 683 — Jinsoo Kim Sketchbook (not offered in first trial)

14            •   DX 684 — Photographic summary of Samsung devices (admitted)

15            •   DX 900 — January 6, 2010 e-mail to Jinsoo Kim (admitted)

16            •   JX 1030 — Galaxy Ace (admitted)

17            •   JX 1031 — Galaxy S II (AT&T) (admitted)

18            •   JX 1034 — Galaxy S II (Epic 4G Touch (admitted)

19            •   JX 1035 — Galaxy S II (Skyrocket) (admitted)

20            •   JX 1036 — Galaxy Tab 7.0 (admitted)

21            •   JX 1037 — Galaxy Tab 10.1 (WiFi) (admitted)

22            •   JX 1038 — Galaxy Tab 10.1 (4G LTE) (admitted)

23                          4.        Summary of Proposed Testimony

24         Mr. Kim will testify that he is a principal industrial designer for Samsung, and has worked

25   at Samsung for 10 years designing mobile phones and tablets.   (Trial Tr. 2787:14-2788:8.)   As a

26   _____

27        [2]     The parties stipulated to a cross-use agreement whereby evidence produced in ITC 796 can
     be used in this case.   (Dkt. 687 at 33.)   Apple was also ordered to produce depositions and other
28   materials from ITC 796 in this case.   (Dkt. 867 at 7-12.)

1   principal designer, Mr. Kim is the most senior level of designer at Samsung below the executive

2   level.   He will testify that he helped to design the Droid Charge (JX 1025) and Galaxy S Epic 4G

3   (JX 1012), which are at issue in the new trial.   (Trial Tr. 2817:9-16; Alden Decl. Ex. 3 (Jinsoo

4   Kim 02/02/2012 Dep. Tr. 45:5-7).)   Mr. Kim will testify as to his reasons for designing each

5   phone differently, including screen size, form factor, and touch screen.   (Trial Tr. 2817:20-

6   2818:11.)   Mr. Kim will testify as to the development process of each smartphone.   Mr. Kim will

7   testify that as a senior and principal designer, he was aware of Samsung's smartphone

8   development prior to 2007.   Mr. Kim will testify as to his  identification and recollection of

9   Samsung smartphone development, including the images of Samsung phones and mockups from

10  2006 pictured in DX 684.001.   (*Id.* at 2818:12-2820:12.)

11          Although not directed to the products and patents at issue in the new trial, if Apple is

12  permitted to make sweeping allegations about alleged copying of its iPad, Mr. Kim can testify that

13  he was involved in the design of the Galaxy Tab 10.1 WiFi (JX 1037) and Galaxy Tab 10.1 4G

14  LTE (JX 1038) tablets.   Mr. Kim can testify that Samsung began the Tab 10.1 development in

15  October 2009, months before Apple's January 2010 announcement of the iPad.   (Trial Tr.

16  2802:17-2803:11.)   Mr. Kim can testify that, on January 6, 2010, he received an email from the

17  Samsung Development Office with the packaging review specifications for the display and border

18  area of the Tab 10.1.   (*Id.* at 2803:11-2804:25.)   That email, DX 900, is dated before Apple

19  announced the original iPad.   (*Id.*)   DX 900 was admitted with no objection through Mr.

20  Kim.   (*Id.* at 2804:17-21.)

21          Mr. Kim can also testify as to the design principles that he considered when developing the

22  Galaxy Tab.   (*Id.* at 2805:2-2817:9.)   Mr. Kim can testify that, while designing and developing

23  the tablet, he considered such features as the size of display, manufacturability of the product,

24  thickness of the tablet, and functionality for the user.   (*Id.*).   Furthermore, Mr. Kim can testify that,

25  during the development of the tablets, Samsung designers created prototypes of various tablets

26  with different configurations, widths, sizes, and orientations.   (*Id.* at 2812:19-24.)   Mr. Kim can

27  testify that Samsung first debuted the Galaxy 10.1 Tab model at the Mobile World Congress in

28

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11. 2013 CMO

1   February 2011, but that the thicker design shown there was ultimately discarded when Samsung

2   observed the over 80 competitor tablets.   (*Id.* at 2813:6-2815:8.)

3      Finally, Mr. Kim will testify that neither he nor his team copied or imitated Apple's

4   products when designing Samsung's Galaxy smartphones or tablets.   (*Id.* at 2821:1-5.)   He will

5   testify about the competitive analysis that his team conducts, and will testify that they do not use

6   competitive analysis to copy competitors.   (Alden Decl., Ex. 9 (Jinsoo Kim 02/03/2012 Dep. Tr.

7   59:25-60:4).)   While the Court ruled that Mr. Kim could not testify as to infringement or

8   invalidity concerning the tablets (Trial Tr. 2807:16-17), the Court did not preclude him from

9   testifying regarding allegations of copying or the development process of Samsung's tablets and

10  smartphones.

11

12    **L.**  **Itay Sherman**

13      1.  Witness Role

14    If necessary, Mr. Sherman will testify concerning Samsung smartphone design prior to the

15  announcement of the iPhone.

16      2.  Previous Disclosures and Testimony

17    Itay Sherman was timely disclosed during the preliminary injunction phase as an expert

18  witness on design patent infringement and invalidity with regard to the D'677 patent, among

19  others.   Mr. Sherman submitted an expert declaration in opposition to Apple's motion for a

20  preliminary injunction on August 22, 2011.   (Dkt. 172.)   Apple deposed Mr. Sherman in this case

21  on September 15, 2011 and April 20, 2012, and in the parallel ITC 796 proceeding on April 21,

22  2012.   Mr. Sherman was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial

23  witness lists for testimony regarding the invalidity and functionality of Apple's asserted design

24  patents.   (Dkt 1193-1 at 24; Dkt 1278 at 6.)   Mr. Sherman testified at trial on August 14, 2012.

25  (*See* Trial Tr. 2573-2636.)

26      3.  Potential Exhibits To Be Used With Witness

27    If necessary, Samsung may use the following exhibits with Mr. Sherman:

28      •  DX 526 — Samsung F700 (admitted for purposes other than invalidity)

- JX 1086 — Korean Design Patent KR 30-0452985 (on the parties' July 23, 2012 joint exhibit list but Samsung was not able to admit this exhibit into evidence because Ms. Park was precluded from testifying about it)

4.      Summary of Proposed Testimony

In his declaration at the preliminary injunction phase, Mr. Sherman included a discussion of the design application that gave rise to Korean Design Registration KR 30-0452985 ("KR'985"), which is JX 1086.   (Dkt. 172 at 24-25.)   Mr. Sherman noted that the application was filed by Samsung in December 2006, before the iPhone was announced, and that it showed a phone sharing a number of characteristics with the iPhone and D'677 patent.   (*Id.*)   Mr. Sherman will be able to testify to these facts to rebut any assertions by Apple that Samsung did not develop a smartphone with a smooth continuous surface, a large display screen surrounded by thin side borders and more substantial borders top and bottom, a thin speaker slot centered in the top border, a front face essentially free of ornamentation, a rectangular overall shape, and four evenly rounded corners until after the iPhone was announced.   Mr. Sherman also included reference to the KR'985 patent in his invalidity expert report, and Apple confirmed in writing on July 5, 2012 that KR'985 was not stricken from that report because it had been discussed in and attached to his preliminary injunction declaration.   (Alden Decl., Ex. 12 (July 5, 2012 email from R. Hung).)

**M.      Min-Hyouk Lee**

1.      Witness Role

Min-Hyouk Lee was involved in designing Samsung smartphones, including the Galaxy S phones.

2.      Previous Disclosures and Testimony

Mr. Lee was disclosed to Apple in Samsung's initial disclosures on September 7, 2011 as knowledgeable about "Samsung design" generally, and the "design of [the] accused Samsung products."   He was timely deposed in this case on March 2, 2012 and in the related ITC 796 proceeding on March 3, 2012.   Mr. Lee was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony regarding "Samsung design and design of the

1  accused Samsung products."   (Dkt. 1193-1 at 15; Dkt 1278 at 4.)   Mr. Lee also testified at ITC

2  796 hearing on June 4-5, 2012 through a sworn, written witness statement.   (Alden Decl., Ex. 10.)

3         3.        Potential Exhibits To Be Used With Witness

4         If necessary, Samsung may use the following exhibits with Mr. Lee.   All of the DX

5  exhibits listed below were disclosed in Samsung's July 23, 2012 final exhibit list for the first trial.

6  (Dkt. 1285-1.)   The JX exhibits listed below were included in the parties' July 23, 2012 joint

7  exhibit list.   (Dkt. 1281 at 1.)

8         • DX 522 — MPCP Project 2006 (Samsung was not able to admit this exhibit into

9                evidence because Ms. Park was precluded from testifying about it)

10        • DX 526 — Samsung F700 (admitted for purposes other than invalidity)

11        • DX 566 — IReen Interactive Design - September 14, 2006 (Samsung was not able

12               to admit this exhibit into evidence because Ms. Park was precluded from testifying

13               about it)

14        • DX 596 — MPCP Project 2006 (Samsung was not able to admit this exhibit into

15               evidence because Ms. Park was precluded from testifying about it)

16        • DX 625 — Untitled Mobile Design Team Presentation with images of mock-ups

17               (Samsung was not able to admit this exhibit into evidence because Ms. Park was

18               precluded from testifying about it)

19        • DX 682 — Minhyouk Lee Sketchbook (not offered in first trial)

20        • DX 684 — Photographic summary of Samsung devices (admitted)

21        • JX 1007 — Galaxy S (i9000) (admitted)

22        • JX 1010 — Galaxy S Vibrant (admitted)

23        • JX 1013 — Fascinate (admitted)

24        • JX 1014 — Transform (admitted)

25        • JX 1015 — Mesmerize (admitted)

26        • JX 1017 — Showcase (admitted)

27        • JX 1019 — Galaxy S 4G (admitted)

28

1          4.      Summary of Proposed Testimony

2          Consistent with the testimony that Mr. Lee provided in his sworn testimony in the ITC 796

3   proceeding on June 4-5, 2012, he will offer the following testimony.  (*See* Alden Decl., Ex. 10

4   (M.H. Lee ITC 796 Witness Statement).)  Mr. Lee will testify that he was a main designer for the

5   Galaxy S Project, which resulted in the series of phones known as Galaxy S.  (Ex. 10 at 5; Alden

6   Decl., Ex. 6 (03/02/2012 MH Lee N.D. Cal. Dep. Tr.) at 35:16-18; Alden Decl., Ex. 15

7   (03/03/2012 MH Lee ITC Dep. Tr.) at 13:7-15.)  This included the Transform, which is at issue in

8   the new trial.  (Ex. 10 at 10-22, 27-30.)  Mr. Lee will testify that he did not copy the iPhone in

9   designing the first Galaxy S phones, and that he had never seen an Apple design patent while he

10  was working on the Galaxy S designs.  (Ex. 10 at 35-36; Ex. 6 at 84:9-24; Ex. 15 at 126:14-21.)

11  He will also testify that he never received pressure from anyone above him at Samsung to make

12  the Galaxy S or any other phone look more like an iPhone.  (Ex. 10 at 35; Ex. 6 at 61:3-14.)  Nor

13  did he ever hear anyone at Samsung even make this suggestion.  (Ex. 10 at 36; Ex. 6 at 60:22-

14  61:2, 86:17-24.)  Mr. Lee will instead testify that he based his work on Samsung's heritage

15  designs that were created before the iPhone.  (Ex. 10 at 35; Ex. 15 at 46:5-47:8.)  And although

16  the iPhone was released in mid-2007, Mr. Lee will testify that he could not recall ever even

17  handling one until late November 2009, after he had already designed the Jet (pictured on admitted

18  exhibit DX 684) and other Samsung phones, on which he based the design of the original Galaxy

19  S.  (Ex. 10 at 35; *see* Ex. 15 at 117:19-118:7.)

20          Mr. Lee will also testify that, among the other Samsung heritage phone designs he drew on,

21  was the F700.  Mr. Lee testified in deposition that he helped design the F700 because he sat next

22  to Ms. Park's supervisor, Sang Min Hyun,[3] during its creation and collaborated with him. (Ex. 6 at

23  69:23-70:1.) He was aware of the F700 when he later designed the Galaxy S, and the F700 was

24  one of the Samsung designs he drew on in creating the original Galaxy S design.  (*See* Ex. 6 at

25  69:2-70:21.)

26

27      [3]   Sang Min Hyun is listed as a co-inventor on the KR'985 design patent for the Q
    Bowl/F700 design that was filed Dec. 2006, before the iPhone was ever revealed.  (*See* JX 1086

28  at 6.)



**Q Bowl/F700**                    **Galaxy S i9000**

Mr. Lee will also testify to more specifics about the reasons for his design, and how he had to adapt it from more stylized and less functional concepts he had early on, so it would be more durable and sufficiently cost effective to produce it on a mass scale.   (*See* Ex. 10 at 12-15, 18 ; Ex. 6 at 48:9-50:23; Ex. 15 at 46:5-47:8.)   Mr. Lee can also testify to the various practical and functional reasons behind the designs of the features in the Galaxy S phones (Ex. 10 at 16-20; Ex. 6 at 13:22-14:7; Ex. 15 at 47:10-50:2, 81:4-25), showing that his designs were arrived at for a host of reasons other than Apple's allegation of copying.

**N.**     **Jeeyeun Wang**

1.     Witness Role

Jeeyeun Wang was involved in designing Samsung's user interfaces, including icon design.

2.     Previous Disclosures and Testimony

Ms. Wang was disclosed to Apple in Samsung's initial disclosures on September 7, 2011 as knowledgeable about the "Icons [in the] graphic user interface of Samsung products."   She was timely deposed in this case on February 2, 2012.   Ms. Wang was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony "regarding the graphic user interface of Samsung products."   (Dkt. 1193-1 at 29; Dkt. 1278 at 8.)   Ms. Wang also testified at the first trial in this case on August 14, 2012.   (*See* Trial Tr. 2522-2557.)

3.     Potential Exhibits To Be Used With Witness

If necessary, Samsung may use the following exhibits with Ms. Wang.   All the JX exhibits listed below were included in the parties' July 23, 2012 joint exhibit list.   (Dkt. 1281 at 1.)

1    • JX 1007 — Galaxy S (i9000) (admitted)

2    • JX 1010 — Galaxy S Vibrant (admitted)

3    • JX 1011 — Captivate (admitted)

4    • JX 1012 — Epic 4G (admitted)

5    • JX 1013 — Fascinate (admitted)

6    • JX 1014 — Transform (admitted)

7    • JX 1015 — Mesmerize (admitted)

8    • JX 1016 — Continuum (admitted)

9    • JX 1017 — Showcase (admitted)

10   • JX 1019 — Galaxy S 4G (admitted)

11   • JX 1020 — Gem (admitted)

12   • JX 1025 — Droid Charge (admitted)

13   • JX 1026 — Indulge (admitted)

14   • JX 1027 — Infuse 4G (admitted)

15   • JX 1031 — Galaxy S II (AT&T) (admitted)

16   • JX 1032 — Galaxy S II (i9100) (admitted)

17   • JX 1033 — Galaxy S II (T-Mobile) (admitted)

18   • JX 1034 — Galaxy S II (Epic 4G Touch) (admitted)

19   • JX 1035 — Galaxy S II (Skyrocket) (admitted)

20   • PX 44 (on rebuttal) (permitted by the Court at Trial Tr. 2519 2:7) (admitted)

21   • PX-2257 (on rebuttal) (admitted)

22        4.    Summary of Proposed Testimony

23   While the Court ruled that Ms. Wang could not testify about comparisons of specific icons

24   as part of Samsung's non-infringement defense, the Court did not preclude her from rebutting

25   allegations of copying or from testifying about the process of developing the user interface and

26   icons of the products at issue.  (Trial Tr. 2514-15.)

27   Ms. Wang will offer the following testimony.   Ms. Wang will testify that she is a user

28   experience designer in the wireless design team at Samsung.  (Trial Tr. at 2523, 2525-26.)  She is

-44-

1  a senior designer and creative director who is responsible for user experience on mobile

2  devices.  (*Id.* at 2525-26.)   Ms. Wang will testify that she led the team at Samsung responsible for

3  designing the icons and the icon layout on the menu page of the Galaxy phones.   (*Id.* at 2523.)

4  Ms. Wang will testify about Samsung's general design process for user interface and its past

5  history of icon designs.  (*See, e.g.*, Alden Decl., Ex. 4 (2/2/12 Wang Depo. Tr. at 11).)   She will

6  testify about Samsung design practices, guidelines and principles.  (*See, e.g., id.* at 54.)   For

7  example, she will testify that Samsung has a principle of making icons as colorful as possible, and

8  as bright and big as possible, and interfaces as pleasing as possible.  (*See, e.g., id.* at 76, 106-110.)

9        Ms. Wang will testify also that she and her team did not copy any Apple icons or the

10  layout on the Apple application page, and that she and her team try to develop Samsung's own

11  unique style.   (Trial Tr. at 2523, 2552.)   Ms. Wang will testify that her team worked extensively

12  on the menu page of the Galaxy phones, building on Samsung's user interface design history.   She

13  will testify that in the months prior to the launch of the Galaxy line of phones, a team of user

14  experience designers gathered together and worked continuously to complete the user interface

15  design.   (*Id.* at 2530-31.)   She will testify about the process of designing the Galaxy user

16  interfaces, including the reasons Samsung chose to use certain icons in the user interface.   (*Id.* at

17  2533- 38.)   She will also testify about the input wireless carriers provide to Samsung regarding

18  user interfaces, including at times providing their own icons and color palates.  (Ex. 4 (2/2/12

19  Wang Depo Tr. at 86-87).)

20        Ms. Wang will testify about Samsung's competitive analysis and consideration of

21  competitors' user interfaces.  (*Id.* at 2539; Ex. 4 (2/2/12 Wang Depo Tr. at 12, 96-100, 118-

22  19).)   She will testify about the competitive analysis she and her team conducts, and will testify

23  that they do not use competitive analysis to copy competitors.   (*Id.*)   If Apple is permitted to

24  introduce PX 44 to show alleged copying, she will tell the jury that the user experience design

25  group did not refer to this document in designing the Galaxy user interfaces, and will explain the

26  significance of and context for PX 44.   (Trial Tr. at 2549-56.)   If Apple is permitted to introduce

27  PX 2257, she will explain that it was created after Apple's complaint was filed, and the

28  significance of and context for this document.   (*Id.* at 2555-57.)   Ms. Wang will testify regarding

the meaning, significance and context for any competitive analysis or alleged copying documents Apple introduces regarding the D'305 patent.   She will testify that internal documents referring to Apple and the iPhone were intended to spur Samsung designers to continue to innovate and do better, not to copy.   (*See, e.g.,* Ex. 4 (2/2/12 Wang Dep. Tr. at 79, 91-92).)

**O.     Dongseok Ryu**

1.     Witness Role

Dongseok Ryu was involved in designing Samsung's user interfaces.

2.     Previous Disclosures and Testimony

Mr. Ryu was disclosed to Apple during discovery and was deposed by Apple on February 29, 2012.   Mr. Ryu was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony "regarding Samsung UX design, the design of accused Samsung products, and contemporaneous designs."   (Dkt. 1193-1 at 22; Dkt. 1278 at 6.)

3.     Potential Exhibits To Be Used With Witness

If necessary, Samsung may use the following exhibit with Mr. Ryu, which was disclosed in Samsung's July 23, 2012 final exhibit list for the first trial.   (Dkt. 1285-1.)

- DX 566 — IReen Interactive Design - September 14, 2006 (not admitted)

4.     Summary of Proposed Testimony

Mr. Ryu will testify as to his current position at Samsung, as well as his prior roles as head of North America Mobile UX Design for Samsung and as a member of the Next Tablet UX Task force team and the Advanced Mobile UX design team.   (Alden Decl., Ex. 5 (02/29/2012 Ryu Dep. Tr. 7:19-24; 8:23-9:7; 10:2-19).)   Mr. Ryu will testify that as part of his work on UX design issues at Samsung, he designed icons and worked with the UX design teams to develop user interface design elements for Samsung's mobile products.   (*Id.* at 26:25-27:10.)

Mr. Ryu will testify as to the design and development of the grid UX for Galaxy S phones, including the reasons and considerations that went into choosing the correct matrix and icon shape based on the size and shape of the display.   Mr. Ryu will testify that while he was working in Samsung's Advanced Mobile UX Design Team, he was involved in the creation of DX 566, the

1  IReen Interaction Design document dated September 14, 2006.   He will testify that the Mobile

2  UX Group created this report in 2006 concerning how to design the IReen user interface, the code

3  name for Intelligent Screen.   He will testify that the Mobile UX Group planned to create a mobile

4  device with touch interaction capability that had icons arranged in a grid layout.   Mr. Ryu will

5  testify as to the development of the grid UX, including the reasons and considerations that went

6  into choosing the correct matrix and icon shape based on the size and shape of the display.   Mr.

7  Ryu will testify that Samsung's Mobile UX group had begun working on the development of the

8  IReen user interface during the summer of 2006, prior to the release of the iPhone.

9

10      **P.      Hyoung Shin Park**

11          1.      Witness Role

12      Hyoung Shin Park was involved in designing Samsung's smartphones, and in particular

13  Samsung's F700 phone, which was designed prior to the release of the iPhone.

14          2.      Previous Disclosures and Testimony

15      Ms. Park was disclosed to Apple in Samsung's initial disclosures on September 7, 2011 as

16  knowledgeable about "Samsung design" generally, and specifically about the "design of F700."

17  She was timely deposed in this case on February 29, 2012, and in the related ITC 796 proceeding

18  on March 1, 2012, for a total of approximately ten hours on the record.   (*See* Dkt. 1463 at 6; Dkt.

19  1465 at 1.)   Ms. Park was also identified on Samsung's July 7, 2012 and July 23, 2012 live trial

20  witness lists for testimony "regarding Samsung design, including design of F700 and

21  contemporaneous designs."   (Dkt. 1193-1 at 19; Dkt. 1278 at 5.)   Ms. Park testified at the trial

22  for the ITC proceeding on June 4, 2012 through a sworn witness statement.   (*See* Dkt. 1970-28.)[4]

23          3.      Potential Exhibits To Be Used With Witness

24      If necessary, Samsung may use the following exhibits with Ms. Park.   All of the DX

25  exhibits listed below were disclosed in Samsung's July 23, 2012 final exhibit list for the first trial.

26  (Dkt. 1285-1.)   JX 1086 was included in the parties' July 23, 2012 joint exhibit list.   (Dkt. 1281

27  at 3.)

28          [4]      Samsung has requested permission to call Ms. Park in the Joint Pre-trial Statement.

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11, 2013 CMO

1      • DX 522 — MPCP Project 2006 (Samsung was not able to admit this exhibit into
2        evidence because Ms. Park was precluded from testifying)

3      • DX 526 — Samsung F700 (admitted for purposes other than invalidity)

4      • DX 566 — IReen Interactive Design - September 14, 2006 (Samsung was not able
5        to admit this exhibit into evidence because Ms. Park was precluded from testifying)

6      • DX 596 — MPCP Project 2006 (Samsung was not able to admit this exhibit into
7        evidence because Ms. Park was precluded from testifying)

8      • DX 625 — Untitled Mobile Design Team Presentation with images of mock-ups
9        (Samsung was not able to admit this exhibit into evidence because Ms. Park was
10       precluded from testifying)

11     • DX 684 — Photographic summary of Samsung devices (admitted)

12     • JX 1086 — Korean Design Patent KR 30-0452985 (Samsung was not able to admit
13       this exhibit into evidence because Ms. Park was precluded from testifying)

14           4.    Summary of Proposed Testimony

15     As noted above, Samsung timely disclosed Ms. Park on the topic of Samsung's

16 contemporaneous designs.     However, she was not allowed to testify at the first trial because the

17 Court ruled that, although she was permitted to rebut allegations of copying and willfulness, the

18 there was a risk the jury could consider her testimony for purposes of invalidity and a limiting

19 instruction would not be sufficient.   (Dkt 1690 at 8-9.)   In the Joint Pretrial Statement and Order

20 (Dkt. 2486 at 18-19), Samsung has requested reconsideration of that ruling in light of the posture

21 of the new trial.   Specifically, there is no risk of confusion in the new trial because invalidity is

22 not at issue, Samsung will not argue invalidity, and the jury will not be asked to make any findings

23 on invalidity.   To the contrary, the jury will be instructed that the patents are presumed valid.

24     Consistent with the testimony she provided in her sworn witness statement in ITC 796 on

25 June 4, 2012, , as well as during her February 29, 2012 deposition in this case and her March 1,

26 2012 deposition in ITC 796, Ms. Park will offer the following testimony.   (*See* Dkt. 1970-28 (ITC

27 796 Witness Statement of H.S. Park); Alden Decl., Exs. 16, 17.)   Ms. Park will testify that she

28 created the design for the Samsung F700 smartphone as part of a project known at Samsung as the

1   "MPCP Project", which started in May 2006.   (Ex. 16 (2/29/12 Park Dep. Tr. at 7:16-8:16, 10:11-

2   13, 11:19-20); Ex. 17 (3/1/12 Park Dep. Tr. at 29:22-30:5, 36:17-24, 39:7-23).)   Ms. Park was

3   part of a group that included industrial designers, user interface and sound designers, and a

4   specialist in colors, materials and finishes, among others, which was selected to come up with a

5   new Samsung mobile phone design.   (Ex. 16 at 10:11-11:15, 26:2-9; Ex. 17 at 64:23-65:17, 68:6-

6   20.)   The goals of designing the F700 were to create an iconic design for Samsung.   (Ex. 16 at

7   12:2-8.)   Each of the designers submitted designs for the F700 as part of an internal Samsung

8   design competition.   (Ex. 16 at 31:17-32:5.)   Ms. Park's design was ultimately chosen as the

9   design that became what was mass produced as the F700.   (Ex. 16 at 32:21-33:1, 40:12-20.)   She

10  was not given any instructions when told to create a design for the F700, and was free to be

11  creative with her designs.   (Ex. 16 at 34:21-35:9.)

12         Ms. Park will testify that, after a series of initial brainstorming sessions, the MPCP Group

13  prepared a presentation, identified as exhibit DX 596, to summarize the design concepts generated

14  during some of their meetings and the marketing position of the products the group was

15  conceptualizing.   (*See* DX 596.)   She will testify that the chart shown below from DX 596 was

16  created by the MPCP Group to show the evolution of cell phones over time.

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11, 2013 CMO

1    Ms. Park will further testify that this chart illustrated a trend observed by the MPCP Group

2  that LCD screen sizes on mobile phones were getting larger over time as screen technology

3  improved, allowing people to use their mobile phones for purposes other than making phone calls.

4  These other purposes included text messaging, playing music, camera functions and viewing

5  media content like videos and mobile television, even though phones had been used almost

6  exclusively for voice-related activities in the past.   Ms. Park will testify that, based on this

7  observed trend, the MPCP Group decided that the new phone design should include a full-touch,

8  large size LCD display screen that would allow users to view a variety of content.   (Ex. 17 at

9  40:13-41:5.)

10    Ms. Park will testify that she, and three other designers who participated in the MPCP

11  Project, sought to create phone designs consistent with this concept.    She will testify that

12  exhibits DX 522 and DX 625 are presentations prepared by the MPCP Group showing computer

13  renderings and physical mock-ups of various designs created by them in July and August 2006.

14  (*See* DX 522 and DX 625.)   For example, Ms. Park will testify that the page below (DX 522.033)

15  shows computer renderings of a design called "Bowl" that she created in collaboration with one of

16  the other MPCP designers,   and, on the right are images of some of the inspirations for the

17  "Bowl" design, which she will testify include a flat body of water, a bowl containing water, and

18  color combinations.   (*See* Ex. 16 at 15:1-18:25.)

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11. 2013 CMO

1        Ms. Park will also testify that the page below (DX 522.045) shows a photograph of a

2   mock-up of a design she created called "Q Bowl," which was completed by August 2006.



15       The "Q" in Q Bowl stood for QWERTY, which is the type of slider keyboard used in her

16  design, and "Bowl"   reflected her inspiration for the "Bowl" design.   (Ex. 16 at 15:1-21; Ex. 17

17  at 59:7-60:8.)   Ms. Park will also identify designs created by the other designers participating in

18  the MPCP Project, which are shown in DX 522 and DX 625.

19       Ms. Park will also testify that Samsung's F700, shown below, is a Samsung smartphone

20  based on her Q Bowl design, which was announced by Samsung in early 2007 and released later

21  that year.



1   Ms. Park will testify that she is a named inventor on a design patent issued by the Korea

2   Intellectual Property Office for her Q Bowl design, and that the date of the application for the

3   design patent is December 20, 2006, prior to Apple's announcement of the iPhone in January 2007.

4   (*See* JX 1086).



12   Ms. Park's testimony will also make clear that she first saw the iPhone on the Internet

13   shortly after Apple publicly announced it in January 2007, months after she had completed her Q

14   Bowl design in August 2006.   She will also make clear that her Q Bowl design, and the F700 that

15   was based on it, were not copied from the iPhone.   Ms. Park will testify that she did not reference

16   any third party phones when designing the F700.   (Ex. 16 at 27:20-23, 30:11-14; Ex. 17 at 61:3-

17   6.)   Specifically, she did not consider the design of the iPhone when designing the F700.   (EX.

18   16 at 50:1-5.)   She will testify that she did not do anything to change the way she designed

19   phones in response to the iPhone, and is not aware of Samsung changing its designs in response to

20   the iPhone after its release. (Ex. 16 at 60:25-61:9.)

21   Ms. Park will also testify that while she and the other three industrial designers were

22   working on external phone designs as part of the MPCP Project, user interface designers were

23   working on a user interface to be used with the full-touch, large size LCD display screen

24   envisioned by the MPCP Group.   The internal Samsung name for this user interface was "IReen,"

25   which stood for Interactive Screen and Intelligent Screen.   IReen is specifically referenced in the

26   MPCP presentation identified as DX 596.   Ms. Park will identify DX 566 as a presentation dated

27   September 14, 2006, regarding the IReen user interface developed in connection with the MPCP

28

-52

project.   (*See* DX 566.)   Ms. Park will also identify the images from DX 566 shown below as being Samsung's plan for a user interface for a full-touch, LCD display made up of rounded rectangle icons arranged in a grid layout of a dimension comfortable for human fingers to touch and activate.



She will testify that the grid layout shown in the figure on the right with the redline through it was rejected because it limited how accurately the user could control the touch screen with his or her finger, given the dimensions of the screen, which was more narrow than the iPhone screen.

Samsung has previously filed various proffers for Ms. Park and the exhibits identified above, and incorporates them here by reference.   (*See, e.g.*, Dkt 1970 at 11-18; Dkt 1463 at 1-3, 6; Dkt 1474 at 1; Dkt 1664 at 1-7.)

## Q.     Yongseok Bang

### 1.     Witness Role

Yongseok Bang was involved in designing Samsung smartphones, including the Infuse 4G.

1          2.      Previous Disclosures and Testimony

2          Mr. Bang was timely disclosed to Apple in Samsung's supplemental initial disclosures on

3   January 26, 2012 as a Samsung product designer.   Despite this, Apple chose not to depose Mr.

4   Bang.   Mr. Bang was also identified on Samsung's July 7, 2012 trial witness list for testimony

5   regarding Samsung design, including various accused products.   (Dkt 1193-1 at 18.)   Mr. Bang

6   also testified in the parallel ITC 796 proceeding through a June 4, 2012 sworn, written witness

7   statement.   (*See* Alden Decl., Ex. 11.)

8          3.      Potential Exhibits To Be Used With Witness

9          If necessary, Samsung may use the following exhibits with Mr. Bang.   DX 684 listed

10   below was disclosed in Samsung's July 23, 2012 final exhibit list for the first trial. (Dkt. 1285-1.)

11   DX 680 was disclosed in Exhibit 6 to the Joint Pretrial Statement, filed July 6, 2012.   The JX

12   exhibits listed below were included in the parties' July 23, 2012 joint exhibit list.   (Dkt. 1281 at

13   1.)

14          •   DX 680 — Y.S. Bang Sketchbook (not offered in first trial)

15          •   DX 684 — Photographic summary of Samsung devices (admitted)

16          •   JX 1027 — Infuse 4G (admitted)

17          •   JX 1031 — Galaxy S II (AT&T) (admitted)

18          •   JX 1032 — Galaxy S II (i9100) (admitted)

19          •   JX 1033 — Galaxy S II (T-Mobile) (admitted)

20          •   JX 1034 — Galaxy S II (Epic 4G Touch) (admitted)

21          •   JX 1035 — Galaxy S II (Skyrocket) (admitted)

22          4.      Summary of Proposed Testimony

23          Consistent with the testimony that Mr. Bang provided in the ITC proceeding, he will offer

24   the following testimony.   (*See* Alden Decl., Ex. 11 (Y.S. Bang ITC 796 Witness Statement).)   Mr.

25   Bang will testify that he was involved in the design of the Samsung Infuse 4G smartphone.   (*Id.* at

26   6-7.)   Mr. Bang will testify that his design process began with receiving specifications from the

27   product planning team regarding the elements to be used in the product, such as the LCD size,

28   chipset factor, software factor, battery capacity and speaker size.   (*Id.* at 7.)   Mr. Bang will testify

that, in designing the Infuse 4G, he set out to create a design that was smarter and more refined than the phones other manufacturers were making, so he used more tightly-rounded corners, a flatter, less rounded body, and a unibody construction with no bezel.  (*Id.* at 9.)   He will also testify that he set out to give the phone a thin appearance and used a textured material for the battery cover called a hyperskin to provide a better grip.   (*Id.* at 10.)   He will also testify that the design included a 4.5 inch screen that was considered huge at the time because it was much bigger than other smartphone displays.   (*Id.* at 11.)

He will also testify that he and the Samsung designers referenced other manufacturer's products in designing the Infuse 4G in order to make something that looked new and different, not to copy them.   (*Id.* at 15, 23-24.)   Mr. Bang will also testify that the Infuse 4G and other Samsung smartphones incorporated common design elements, such as a generally rectangular shape, rounded corners, and a large display screen, among others, that were found in Samsung's heritage designs, including the F700, Jet, and Galaxy S, as well as others.   (*Id.* at 17.)

Mr. Bang will also testify that the basic design elements of the Infuse 4G, such as the rectangular shape, rounded corners, flat front surface, thin speaker slot, transparent cover over the display, and black borders were the result of functional and economic considerations, not the result of any copying.   (*Id.* at 18-23.)   Mr. Bang will also testify that he never received pressure to copy the look of the iPhone, nor did he ever hear anyone at Samsung suggest that the Infuse design should be made to look more like the iPhone.   (*Id.* at 23-24.)


### R.      Samuel Lucente

#### 1.      Witness Role

If necessary, Samuel Lucente will offer rebuttal testimony concerning Apple's design expert's assertions regarding copying of graphical user interface designs.

#### 2.      Previous Disclosures and Testimony

Mr. Lucente was timely disclosed to Apple on December 13, 2011 as an expert witness. Mr. Lucente submitted expert reports on design patent and trade dress issues related to user interface designs.   Apple deposed Mr. Lucente in this case on April 20, 2012.   Mr. Lucente was

1    also identified on Samsung's July 7, 2012 and July 23, 2012 live trial witness lists for testimony

2    regarding Apple's graphical user interface design patents, and GUI-related trade dress issues,

3    including non-infringement.   (Dkt. 1193-1 at 16; Dkt. 1278 at 4.)

4                    3.    Potential Exhibits To Be Used With Witness

5        If necessary, Samsung may use the following exhibits with Mr. Lucente:

6        • PX 7 — Photographs of accused Samsung devices (admitted)

7        • JX 1007 — Galaxy S (i9000) (admitted)

8        • JX 1010 — Galaxy S Vibrant (admitted)

9        • JX 1011 — Captivate (admitted)

10       • JX 1012 — Epic 4G (admitted)

11       • JX 1013 — Fascinate (admitted)

12       • JX 1014 — Transform (admitted)

13       • JX 1015 — Mesmerize (admitted)

14       • JX 1016 — Continuum (admitted)

15       • JX 1017 — Showcase (admitted)

16       • JX 1019 — Galaxy S 4G (admitted)

17       • JX 1020 — Gem (admitted)

18       • JX 1025 — Droid Charge (admitted)

19       • JX 1026 — Indulge (admitted)

20       • JX 1027 — Infuse 4G (admitted)

21       • JX 1031 — Galaxy S II (AT&T) (admitted)

22       • JX 1032 — Galaxy S II (i9100) (admitted)

23       • JX 1033 — Galaxy S II (T-Mobile) (admitted)

24       • JX 1034 — Galaxy S II (Epic 4G Touch) (admitted)

25       • JX 1035 — Galaxy S II (Skyrocket) (admitted)

26       • Any exhibits Apple may use with its user interface design expert, Susan Kare, if

27         she is allowed to testify about alleged copying.

28

4.      Summary of Proposed Testimony

Apple listed its user interface design expert, Susan Kare, on its witness list and stated that "she may testify regarding the contents of and subjects disclosed in her expert reports." (Dkt. 2486-2 at 5 (Apple's Witness List).)   In her infringement report, Ms. Kare asserted that Samsung possibly used Apple's user interface as a guide in designing its own icons.   (Dkt. 935-9 at 44-47 (Kare Expert Report).)   Mr. Lucente countered those assertions in his rebuttal report and, except for a few sentences, those opinions were not subject to any motion to strike.   (*See* Dkt. 2255-21 at 6-12 (Lucente Rebuttal Report) (portions without highlighting not stricken).)   If needed to rebut Apple's allegations of copying, Mr. Lucente will testify to the content in his expert report on this topic.   For instance, Mr. Lucente will testify that based on his experience as a designer in the field of consumer electronics, he does not believe Samsung used Apple products as a guide in designing user interfaces, but that Samsung developed a design philosophy and culture that produced world-class, award winning designs.   (*Id.* at 6-10.)   Mr. Lucente will also testify that the Samsung designs reflect a unique look and feel based on Samsung's own design approach.   (*Id.* at 10.)   Mr. Lucente will also testify that the Samsung designs were not the product of copying, but of considerations of consumer needs, and were driven by functional and technological considerations, such as optimizing hit space on a small touchscreen, making the designs intuitive and simple, and incorporating widely known functional elements for human-computer interaction.   (*Id.* at 10-12.)

**S.      Wookyun Kho**

1.      Witness Role

If necessary, Wookyun Kho will testify concerning independent derivation of snapback behavior for the Contacts application.

2.      Previous Disclosures and Testimony

Mr. Kho was disclosed to Apple during discovery and was deposed on January 12, 2012 in his individual capacity.   On March 4, 2012, Mr. Kho was deposed by Apple in both his individual capacity and Samsung's Rule 30(b)(6) designee regarding the development of the snapback effect for lists and Samsung's work with an outside consulting company called NemusTech.   During

these depositions, Mr. Kho testified regarding the development of snapback behavior, particularly as to the Contacts Application found on the accused devices.   Mr. Kho was identified on Samsung's July 7, 2012 live trial witness list for "testimony relating to the Samsung products accused of infringing Apple's '381 patent."   (Dkt. 1193-1 at 12.)   He was also identified on Samsung's July 23, 2012 live trial witness list as a person Samsung may have called if permitted. (Dkt. 1278 at 24.)

### 3.    Potential Exhibits To Be Used With Witness

If necessary, Samsung may use the following exhibit with Mr. Kho, which was disclosed in Samsung's July 23, 2012 final exhibit list for the first trial.   (Dkt. 1285-1.)

- DX 751 – '381 video completed on July 5, 2012 (not admitted)

### 4.    Summary of Proposed Testimony

Apple seeks to introduce evidence that Samsung copied Apple in developing the '381 snapback functionality.   Mr Kho will be able to rebut these assertions by testifying to his role in the development of snapback effects during his time at Samsung.   As explained during his depositions, Mr. Kho will testify that his primary responsibility at Samsung was to adjust the source code to improve the performance of the snapback effect, including the effect found on the Contacts application on Samsung's products.   (*See, e.g.*, January 12, 2012 Deposition of Wookyun Kho at 109:15-112:22, 118:12-119:2.)   He will explain that snapback effects are not all identical, as there are many variables which can be adjusted to alter the behavior of the snapback functionality, such as the bouncing speed, the duration of the effect, and the particular mathematical functions used to simulate that behavior.   (*See id.* at 86:14-91:9.)   He will further testify about the competitive analyses that Samsung conducts and will testify that these analyses are not used to copy competitors.

Moreover, Apple has included Exhibit 195 on its exhibit list, which Apple relies on to imply that Samsung was working with NemusTech, an outside consultant, to mimic the snapback behavior on the iPad.   Should Apple be permitted to introduce this document, Mr. Kho will testify that the comparison was standard competitive analysis done to improve the behavior of snapback feature generally.   In particular, he would explain that neither he nor Samsung ever incorporated

1   the bounce effect described in that document, but instead incorporated a different version of the

2   bounce effect.

3

4       **T.**      **Jaegwan Shin**

5               1.      Witness Role

6       If necessary, Jaegwan Shin will testify concerning the independent derivation of

7   Samsung's user interface and functionality.

8               2.      Previous Disclosures and Testimony

9       Mr. Shin was disclosed to Apple during discovery.   He was deposed on January 27, 2012

10  in this case and deposed on April 5, 2012 in connection with the related ITC 796 proceeding.

11              3.      Summary of Proposed Testimony

12      Mr. Shin will testify that he was a senior director at Samsung, responsible for managing

13  technical communications between Samsung's headquarters and engineers in Samsung's San Jose

14  office.   (January 27, 2012 Deposition Transcript of Jaegwan Shin at 11:6-12:21.)   Mr. Shin will

15  testify that he participated in the development of user interface features on the accused products,

16  including the bounce effect for the Browser application.   (*Id.* at 47:1-47:24; 61:25-63:4.)   He will

17  testify about the competitive analyses that Samsung conducts and will testify that these analyses

18  are not used to copy competitors.   (*Id.* at 19:10-20:11, 89:11-90:20.)   He will testify that neither

19  he nor other employees at Samsung copied or imitated Apple's products when developing the user

20  interface and functionality of the accused products, including the bounce effect for the Browser

21  application.   (*Id.* at 89:11-90:20, April 5, 2012 Deposition Transcript of Jaegwan Shin at 81:17-

22  82:8.)

23

24

25

26

27

28

SAMSUNG'S PROFFER OF EVIDENCE PURSUANT TO THE OCTOBER 11, 2013 CMO