HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No.   11-cv-01846-LHK (PSG)<br><br>**APPLE'S STATEMENT CONCERNING CAPACITY ANALYSIS**<br><br>Date:     October 17, 2013<br>Time:     1:30 PM<br>Place:    Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh |

**PUBLIC REDACTED VERSION**

### I. MS. DAVIS'S USE OF ROWS AND COLUMNS IN EXHIBITS 26-S AND 17.2-PT-H

Exhibit 26-S is a summary which lists (for each fiscal quarter) the Beginning Inventory, Maximum Manufacturing Capacity, and Units Sold with a row for each relevant product.[1] (Olson Decl. Ex. 3.) The rows labeled Ending Potential Inventory show the net amount that was available for purposes of calculating lost profits. Underneath these rows, in the shaded section, the experts added certain constraints, which they describe in the footnotes of that section, when evaluating Apple's ability to manufacture additional units in any quarter. One of those constraints was ███████████████████████████████████[2] The rows below the heading "Adjustments for Capacity Available for Lost Profits" apply that constraint, among other considerations.

When determining the amount of Apple's starting capacity at the beginning of the relevant period for the lost profits calculation, Mr. Musika and Ms. Davis adopted an additional conservative assumption: they set Apple's available starting capacity for the period January to September 2010 to the lowest Ending Potential Inventory of the iPhone 3GS in that period. The rows and columns in Exhibit 26-S (which is annotated to highlight the numbers referenced in this statement) that Ms. Davis used in calculating lost profits start with the "BOH" (Beginning on Hand) column. The BOH column shows ███████████████████████████████ ████████████. Apple's manufacturing capacity for those phones was ████████████ ██████████████████████████████████████████ The lowest Ending Potential Inventory during that time period was ███████████████████████████ and to be conservative, that amount is used as the starting point for the lost profits calculations in Exhibit 17.2-PT-H (shown as the baseline amount in the Additional Excess Capacity row). (Olson Decl. Ex. 4.)

In short, at least ████████████████████████████████████████

---

[1] The information summarized comes from PX182.2, a document listed on Apple's final exhibit list that was not offered at trial because of the parties' stipulation regarding the reduction of sealing requests. (Dkt. No. 1597 ¶ 6; *see also* 8/23/2013 Davis Rpt. ¶¶ 113-116).

[2] 3/22/2012 Musika Rpt. ¶ 127; 8/23/2013 Davis Rpt. ¶ 116.

████████████████████████████████ [3] The last row of Exhibit 26-S determines when and in what amounts Apple's capacity to manufacture additional units increased after September 2010[4] and the numbers on the last row of Exhibit 26-S and the row titled "Add'l Excess Capacity" in Exhibit 17.2-PT-H correspond to one another. Excess Unused Capacity for each quarter is determined, according to the conservative assumptions the experts made, by subtracting the amount in the "Excess Inventory (2 Weeks)" row from the Quarterly Additional Capacity Created amount[5] in the same column. The difference (unless the result is negative) is determined to be Excess Unused Capacity for that quarter. Thus, for Fiscal Q1 2011, Apple ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Through the same computations based on the same data sources, shown in the rows and columns for each successive fiscal quarter, Apple ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ As noted, these amounts appear in Exhibit 17.2-PT-H in the row labeled "Add'l Excess Capacity" for the corresponding time periods. Exhibit 17.2-PT-H is a summary by month of Apple's Lost Profits. All rows from

---

[3] Ending Potential Inventory in the iPhone 4 row for that quarter was ████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ At trial, Mr. Musika was shown a deposition excerpt in which Samsung's counsel asked Mr. Blevins first about Apple's ability to produce the iPhone 4. Mr. Blevins answered using the word "supply." Mr. Blevins was then asked the question: "From June 2010 until October of 2010, did Apple have excess supply of the iPhone 4?" Mr. Blevins answered, "No." (Dkt. No. 2527-4 at 17:1-7.) Mr. Musika at trial, while looking at that deposition excerpt gave the same answer to substantially the same question. (*See* Trial Tr. 2141:13-18.) Samsung's lawyer, without showing Ms. Davis the Blevins excerpt, asked Ms. Davis twice at her deposition ninety pages apart: "From June 2010 to October of 2010, Apple did not have excess supply of the iPhone 4. Correct?" She first answered: "That is correct." (Olson Decl. Ex. 2 at 159:10-13.) The second time, she answered: ████████████ ████████████████████████████████████████████████████████ (Dkt. No. 2386-6 at 240:7-10.) Her second answer explicitly refers to ████████████, before once again agreeing that at the time Apple had no ability to produce excess iPhone 4's. There was no inconsistency with Mr. Musika, nor with the facts.

[4] Samsung's expert, Mr. Wagner, does not contest that after October 2010, Apple had capacity to supply additional iPhone 4 units and could also supply iPhone 3GS units earlier. (Olson Decl. Ex. 6 at 793:1-794:3.)

[5] Quarterly Additional Capacity Created shows how many extra units could be available from increases, if any during the quarter, to the number of units that Apple could have manufactured net of Apple's sales.

the top of the table through "Ending Capacity," and all columns from the earliest lost profits period forward, are used in Ms. Davis's capacity analysis. (The way in which they are used is explained further in Section III below.)

## II. APPLE FISCAL QUARTERS THAT INCLUDE DESIGN-AROUND PERIODS

| Patent | Lost Profits Design-Around Period | Apple Fiscal Quarter(s) |
|---|---|---|
| '381 Patent | Aug. 4, 2010 to Sept. 3, 2010 | FYQ4 2010 (July-Sept. 2010) |
| D'677 Patent | Apr. 15, 2011 to Dec. 14, 2011 | FYQ3 2011 to FYQ1 2012 (Apr.-Dec. 2011) |
| '915 Patent | Apr. 15, 2011 to Oct. 14, 2011 | FYQ3 2011 to FYQ1 2012 (Apr.-Dec. 2011) |
| '163 Patent | June 16, 2011 to July 15, 2011 | FYQ3 2011 to FYQ4 2011 (Apr.-Sept. 2011) |

## III. THE RELATIONSHIP BETWEEN EXHIBIT 26-S AND EXHIBIT 17.2-PT-H

Section I above explained the sources in Exhibit 26-S for the entries in the "Add'l Excess Capacity" rows of Exhibit 17.2-PT-H. Exhibit 17.2-PT-H compares Apple's capacity (using a "rolling" evaluation of ending excess capacity) to the lost profits units claimed. Using August 2010 as an example: Apple began with ███████████████████████████████████ ███████████████████████████████████████. From this ██████ Ms. Davis deducts 131,036 in units eligible for lost profits, resulting in ending capacity of ██████ ███████████████████████████. This pattern continues for each month.

Ms. Davis's Exhibit 17.2-PT-H contains rows for the infringing Samsung products at issue in the new trial. The entries for each product and month in Ms. Davis's Exhibit 17.2-PT-H are sales Apple could make (after applying the *Mor-Flo* analysis) for those products during the Design-Around Periods listed in Section II above. The differences in amounts from those in Mr. Musika's Exhibit 17.2-S2 are the result of—and are required by—the issues decided in the jury verdict and the Court's orders (*e.g.*, which products were found to infringe and the Court-ordered corrected notice dates). (Olson Decl. Ex. 5; Davis Rpt. ¶¶ 89-93.)

Ms. Davis's analysis does not assume that any Apple units included in the 2012 damages award already confirmed (and included in Mr. Musika's prior analysis) were available to support lost profits for the new trial products. As Ms. Davis's Expert Report states:

> In analyzing whether Apple had the capacity necessary to sell the additional units reflected in my analysis, I have also taken into consideration the possibility that the jury's prior damages award for the products not subject to the new damages trial included an award of Apple's lost profits. Apple had substantial excess capacity in the relevant time periods – enough to make all the lost sales calculated in this report plus all the lost sales calculated by Mr. Musika and presented to the jury for the products not subject to the new damages trial (compare, e.g., **Exhibit 17.2-PT-H** with **Exhibit 17.2-S2**). Thus, whether the jury awarded some, all, or none of the lost profits calculated by Mr. Musika with respect to the products not subject to this new trial, sufficient excess capacity existed to make the lost sales derived from the 13 products that are the subject of the new trial and reflected in the analysis above.

(8/23/2013 Davis Rpt. at 51 n.153.) To set forth this analysis in a single table, the amounts to which Ms. Davis's explanation refer are shown in Exhibit 1 to this statement.[6]

Exhibit 1 lists all Samsung products accused in the first trial, including, for products found to infringe and for which the jury's verdict was allowed to stand, the same units in the same months as in Mr. Musika's Exhibit 17.2-S2.[7] The attachment lists "n/a" for products as to which the new trial was ordered and for products not found to infringe. When the lost profits units from Mr. Musika prior analysis are subtracted from each row and column from the available units (according to the same rolling calculation that both Mr. Musika and Ms. Davis used), the results are shown in the row labeled "Remaining Capacity." These units can be used for new trial lost profits calculations without double counting or overestimating Apple's capacity.

The rows following the heading "Less: Products Eligible for Lost Profits in the New Trial" reproduce the lost profits units in the rows and columns for New Trial Products from Ms. Davis's Exhibit 17.2-PT-H. The row entitled Ending Capacity shows substantial remaining capacity for every month even after supplying all units assumed in the lost profits calculation Mr. Musika presented for Samsung products found to infringe and for which a new trial is not required, and also for the lost profits units Ms. Davis calculates for the New Trial Products.

---

[6] Olson Decl. Ex. 1 sets out the computations described in Ms. Davis's footnote 153, but was not an exhibit to her report because it details amounts for products that are not in the new trial, which is the subject of her report.

[7] Exhibit 17.2-S2 provides the detailed calculations that support PX25A1. This page was not included in PX25A1 because of the parties' stipulation regarding the reduction of sealing requests, which provided that no challenge to the sufficiency of evidence would be made based on the failure to introduce the covered documents in evidence. (Dkt. No. 1597 ¶ 6.)

1
2
3  Dated: October 14, 2013
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

MORRISON & FOERSTER LLP

By: */s/ Harold J. McElhinny*
    HAROLD J. MCELHINNY

Attorneys for Plaintiff
APPLE INC.