1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

6

      APPLE INC., A CALIFORNIA          )   C-11-01846 LHK
7     CORPORATION,                      )
                                        )   SAN JOSE, CALIFORNIA
8                    PLAINTIFF,         )
                                        )   OCTOBER 10, 2013
9            VS.                        )
                                        )   PAGES 1-138
10    SAMSUNG ELECTRONICS CO., LTD.,    )
      A KOREAN BUSINESS ENTITY;         )
11    SAMSUNG ELECTRONICS AMERICA,      )
      INC., A NEW YORK CORPORATION;     )
12    SAMSUNG TELECOMMUNICATIONS        )
      AMERICA, LLC, A DELAWARE          )
13    LIMITED LIABILITY COMPANY,        )
                                        )
14                   DEFENDANTS.        )
      _____   )
15                                      )
                                        )
16

17                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE LUCY H. KOH
18               UNITED STATES DISTRICT JUDGE

19

20

21                  APPEARANCES ON NEXT PAGE

22

23

24

25    OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, CRR
                                  CERTIFICATE NUMBER 8074

```
 1

 2

 3      A P P E A R A N C E S:

 4      FOR PLAINTIFF          MORRISON & FOERSTER
        APPLE:                 BY:  HAROLD J. MCELHINNY
 5                                  RACHEL KREVANS
                                    CHRISTOPHER ROBINSON
 6                                  NATHAN SABRI
                               425 MARKET STREET
 7                             SAN FRANCISCO, CALIFORNIA  94105

 8      FOR COUNTERCLAIMANT    WILMER, CUTLER, PICKERING,
        APPLE:                 HALE AND DORR
 9                             BY:  WILLIAM F. LEE
                                    MARK D. SELWYN
10                                  KEVIN PRUSSIA
                               950 PAGE MILL ROAD
11                             PALO ALTO, CALIFORNIA 94304

12      FOR THE DEFENDANT:
                               BY:  VICTORIA F. MAROULIS
13                                  WILLIAM PRICE
                                    CARL ANDERSON
14                                  ANTHONY ALDEN
                               555 TWIN DOLPHIN DRIVE
15                             SUITE 560
                               REDWOOD SHORES, CALIFORNIA  94065
16

17

18

19

20

21

22

23

24

25
```

```
1       SAN JOSE, CALIFORNIA                    OCTOBER 10, 2013

2                        P R O C E E D I N G S

3          (COURT CONVENED AT 1:44 P.M.)

4              THE CLERK:  CALLING CASE NUMBER CV-11-01846-LHK,

5     APPLE INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY LIMITED,

6     ET AL.

7              COUNSEL, STATE YOUR APPEARANCES, PLEASE.

8              MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.  HAROLD

9     MCELHINNY, RACHEL KREVANS, NATE SABRI, AND CHRISTOPHER ROBINSON

10    FROM MORRISON & FOERSTER FOR APPLE.

11             THE COURT:  GOOD AFTERNOON.

12             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE,

13    MARK SELWYN, AND KEVIN PRUSSIA FROM WILMER HALE FOR APPLE.

14             THE COURT:  GOOD AFTERNOON.

15             MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  BILL PRICE,

16    VICTORIA MAROULIS, ANTHONY ALDEN, AND CARL ANDERSON FOR

17    SAMSUNG.

18             THE COURT:  ALL RIGHT.  GOOD AFTERNOON.  ARE YOU ALL

19    SURE YOU WANT TO DO THIS AGAIN?  ARE YOU SURE ABOUT THIS?

20         ALL RIGHT.  I HAVE SOME SPECIFIC QUESTIONS ABOUT ISSUES

21    THAT YOU HAVE RAISED BOTH FOR TODAY AND FOR NEXT WEEK, BUT I

22    ALSO JUST HAVE SOME PROCESS QUESTIONS FOR YOU.

23         WITH REGARD TO MANY OF YOUR OBJECTIONS, I DON'T THINK I

24    CAN DECIDE THEM IN A VACUUM.  I DON'T HAVE A CLEAR SENSE.  FOR

25    EXAMPLE, THE MOTION TO STRIKE SOME OF THE WITNESSES THAT IS ON
```

1      FOR NEXT WEEK, I DON'T HAVE A CLEAR SENSE ABOUT WHAT THEY'RE

2      GOING TO TESTIFY TO.  THE DESCRIPTIONS OF THE SUBJECT MATTER OF

3      THEIR TESTIMONY THAT IS IN YOUR WITNESS LIST IS JUST NOT

4      DETAILED ENOUGH.

5          AND I FEEL LIKE IF I GIVE YOU A RULING IN A VACUUM THAT I

6      MIGHT, YOU KNOW, COMMIT EVEN MORE ERRORS THAN I USUALLY DO.

7          SIMILARLY, FOR THE EXHIBITS IT'S NOT CLEAR FOR WHAT

8      PURPOSE THEY'RE BEING ADMITTED FOR AND, YOU KNOW, FOR EXAMPLE,

9      WHETHER YOU WANT TO CALL IT DEMAND OR WHETHER YOU WANT TO CALL

10     IT COPYING.  YOU KNOW, IT'S JUST NOT VERY CLEAR.

11         SO I WANTED TO WORK OUT A PROCESS BY WHICH, EVEN IF I

12     CAN'T GIVE YOU A RULING ON EVERY SINGLE EXHIBIT FAR IN ADVANCE,

13     MAYBE WE IDENTIFY CERTAIN THEMES THAT WE KNOW ARE GOING TO BE

14     PROBLEMATIC OR CERTAIN EXHIBITS THAT YOU KNOW YOU WANT TO USE

15     IN YOUR OPENING OR THAT YOU WANT TO USE FOR YOUR VERY FIRST SET

16     OF WITNESSES SO THAT WE CAN AT LEAST DECIDE THOSE EARLY ENOUGH

17     THAT YOU CAN INCORPORATE THEM IN YOUR PREPARATION AND WE'RE NOT

18     STUCK, YOU KNOW, DOING THEM BETWEEN, YOU KNOW, 11:00 P.M. AND

19     2:30 A.M. LIKE LAST TIME.

20         SO CAN WE -- SO I REALLY WANT TO HAVE SORT OF AN OVERALL

21     PROCESS DISCUSSION, AND THEN I WILL GET TO THE SPECIFICS OF

22     SOME OF THE ISSUES.

23         WHAT ARE YOUR THOUGHTS ON THAT?  I MEAN, I REALLY AM

24     RELUCTANT -- SOME OF THESE RULINGS I CAN GIVE YOU NOW, AND I

25     CAN GIVE YOU SOME PRINCIPLES, BUT WITH SPECIFICS, IT REALLY

1   DOES SEEM LIKE IT WOULDN'T BE APPROPRIATE AND IT WOULD BE

2   PREMATURE TO MAKE IT IN A VACUUM WITHOUT UNDERSTANDING THE

3   CONTEXT.

4        DO EITHER OF YOU -- ANY OF YOU WANT TO BE HEARD ON THAT

5   QUESTION AND THEN WE CAN SORT OF IDENTIFY WHAT IT IS THAT WE

6   WANT TO HAVE DECIDED EARLY VERSUS DECIDING CLOSER TO THE TIME?

7            MR. MCELHINNY:  WE AGREE WITH YOUR HONOR.

8            THE COURT:  OKAY.

9            MR. MCELHINNY:  ON THE WITNESSES, HOWEVER, SOME OF

10  THE OBJECTIONS ARE SOME THAT THEY WERE NOT ON LIST.

11           THE COURT:  RIGHT.  SOME OF THE OBJECTIONS, IF I CAN

12  GIVE YOU A RULING, I WILL, BUT THERE ARE OTHERS THAT I FEEL ARE

13  REALLY VERY MUCH CONTEXT SPECIFIC.  IT DEPENDS ON THE ARGUMENT

14  THAT IS BEING MADE THAT ARE NOT QUITE AS BRIGHT LINED RULE-ISH.

15           MR. MCELHINNY:  I DO AGREE WITH THAT.

16           THE COURT:  YEAH.

17           MR. MCELHINNY:  I MEAN, THIS IS, THIS IS -- MAYBE

18  IT'S SOMEWHAT MY PROBLEM TO WORRY ABOUT IT, BUT I WORRIED

19  THROUGH THE LAST TRIAL AND I WORRY ABOUT THIS TRIAL ABOUT A

20  PROCESS THAT HAS YOUR HONOR WORKING IN THE MIDDLE OF THE NIGHT

21  AND WORKING ON OBJECTIONS COMING THE NEXT DAY.

22       SO IF WE CAN GET A PROCESS THAT WORKS BETTER THAN THAT, I

23  CERTAINLY WOULD FAVOR THAT.

24           THE COURT:  WELL, HOW FAR IN ADVANCE, SINCE THIS IS

25  THE SECOND TIME AROUND, HOW FAR IN ADVANCE?

1    LAST TIME YOU FILED THINGS AT 8:00 A.M., AND WE GAVE YOU A

2    RULING THE SAME DAY, BUT IT DID REQUIRE US TO WORK INTO THE

3    NIGHT.

4        HOW FAR IN ADVANCE NOW THAT THIS IS THE SECOND TIME AROUND

5    COULD YOU FILE YOUR OBJECTIONS AND YOUR RESPONSES TO THE

6    OBJECTIONS?

7        COULD YOU GIVE ME, YOU KNOW, AT LEAST THREE DAYS THIS

8    TIME?

9            MR. MCELHINNY:  WE'RE TALKING PROCESS.  WHAT DRIVES

10   IT -- WHAT DRIVES THE PROCESS IS THE DISCLOSURE FROM ONE SIDE

11   TO THE OTHER.

12       SO LAST TIME WE -- THE PARTY THAT WAS CALLING THE WITNESS

13   GAVE THE OTHER SIDE NOTICE TWO DAYS BEFORE WITH THE EXHIBITS AS

14   I RECALL.

15       AND THEN IT WAS THE FOLLOWING DAY THAT THE CROSS-EXAM AND

16   THE EXHIBITS CAME.

17           THE COURT:  RIGHT.  CAN YOU ADVANCE THAT EXCHANGE TO

18   72 HOURS?  OR 96 HOURS?  WHAT CAN YOU DO?

19       DON'T YOU ALL LIKE HAVE MORNING SHIFT, NIGHT SHIFT, DAY

20   SHIFT?  I MEAN, COME ON.

21           MR. PRICE:  THE PROBLEM -- CERTAINLY WE'LL TRY TO DO

22   AS MUCH AS POSSIBLE.  THE PROBLEM IS THAT FROM THE DEFENDANT'S

23   POINT OF VIEW IS WE WOULD BE GIVING THEM NOTICE BEFORE OUR CASE

24   STARTED OF OUR FIRST WITNESS, AND WE HAVE NOT SEEN THEIR CASE

25   YET BECAUSE WE ONLY HAVE EIGHT HOURS A PIECE TO PUT ON A CASE.

1          THE COURT:  RIGHT.

2          MR. PRICE:  AND SO -- I MEAN, I GUESS IF WE GET

3    ENOUGH EARLY NOTICES AND A GOOD SENSE OF WHAT THEIR CASE IS

4    GOING TO BE AND THE ORDER OF PROOF, THEN WE WOULD BE ABLE TO

5    GIVE NOTICE AS WELL.

6        BUT, YOU KNOW, IT'S KIND OF HARD AS A DEFENDANT TO SAY WHO

7    IS YOUR FIRST WITNESS BEFORE YOU HAVE HEARD THE PLAINTIFF'S

8    CASE.

9          THE COURT:  SURE.  BUT I WOULD ASSUME AT LEAST, YOU

10   KNOW, THE FIRST DAY, THE SECOND DAY IT'S GOING TO BE ALL APPLE

11   WITNESSES.  I WOULD --

12         MR. PRICE:  I WOULD THINK SO.

13         THE COURT:  YEAH.  SO I DON'T EVEN THINK YOU WOULD

14   BE PUTTING ON A WITNESS UNTIL FRIDAY, PERHAPS, IF YOU PICK A

15   JURY TUESDAY, MAYBE A LITTLE BIT IT BLEEDS INTO WEDNESDAY

16   MORNING; WEDNESDAY AFTERNOON AND THURSDAY IS APPLE'S CASE.

17       SO WHAT DO YOU THINK?

18         MR. PRICE:  I THINK THAT'S RIGHT.

19         THE COURT:  UH-HUH.  SO COULD YOU AT LEAST GIVE ME

20   48 HOURS INSTEAD OF, YOU KNOW, LITERALLY LESS THAN 24 HOURS?

21       BECAUSE WE GET THIS AT 8:00 A.M., AND WE TRY TO TURN IT

22   AROUND THAT NIGHT.

23         MR. PRICE:  I THINK WE CAN, YOUR HONOR.

24         THE COURT:  OKAY.  SO IF YOU COULD -- WHY DON'T WE

25   SAY THEN JUST A -- OKAY.  SO YOU WILL BE FILING YOUR OBJECTIONS

1    AND RESPONSES AND WE'LL KEEP THE SAME, YOU KNOW, MEET AND

2    CONFER PROCESS IN PERSON, KEEP THE SAME PROCESS IN PLACE.

3         YOU'LL JUST FILE YOUR OBJECTIONS AND RESPONSES 48 HOURS

4    IN ADVANCE OF WHEN THAT WITNESS, EXHIBIT, DEMONSTRATIVE IS TO

5    BE USED, CALLED, ET CETERA, OKAY, INSTEAD OF 24 HOURS.  THANK

6    YOU.  I WOULD REALLY APPRECIATE THAT.

7              MR. MCELHINNY:  MAY I SUGGEST THAT WE ACTUALLY MEET

8    AND CONFER AND PUT THIS INTO A WRITTEN -- SO YOUR HONOR CAN

9    ISSUE AN ORDER SO THAT WE'RE WORKING OFF OF A GROUND RULE.

10             THE COURT:  THAT'S FINE.  I'M GOING TO ASSUME THAT

11   YOUR EXCHANGE IS THEN GOING TO BE 72 HOURS IN ADVANCE.

12             MR. MCELHINNY:  THAT'S WHAT WE WOULD LIKE, TOO.

13             THE COURT:  AND YOU'LL FILE 48 HOURS IN ADVANCE.

14   OKAY.

15             MR. MCELHINNY:  MAY I PUT ON YOUR LIST ANOTHER

16   SUBJECT THAT YOU JUST ALREADY ACCIDENTALLY RAISED?

17             THE COURT:  WHAT IS THAT?

18             MR. MCELHINNY:  THE QUESTION OF WHETHER OR NOT WE'LL

19   BE ABLE TO PUT ON A REBUTTAL CASE.  AND SO TRADITIONALLY, I

20   MEAN, THE PLAINTIFF PUTS ON THEIR CASE.  THE WITNESSES COME ON,

21   AND THEN WE HAVE THE FREEDOM TO REBUT WHATEVER TESTIMONY OF THE

22   WITNESSES, IF WE SAVE THE TIME.

23        AND SO I'M TRYING TO GET, I'M TRYING TO GET -- LAST TIME

24   WE NEVER ACTUALLY DECIDED IT, BUT THERE WAS SOME CONFUSION AT

25   LEAST IN OUR MIND AT LEAST ABOUT WHAT THE SCOPE OF REBUTTAL

```
 1      WOULD BE AND THE TIME LIMITS ENDED UP MAKING THAT NOT

 2      COMPLETELY RELEVANT.

 3           BUT FOR PLANNING PURPOSES WE WOULD LIKE TO -- WE WOULD

 4      ASSUME, UNLESS YOUR HONOR IS GOING TO TELL US NOT, THAT WE'RE

 5      FREE TO PUT ON ANY WITNESS THAT IMPEACHES OR CHALLENGES THE

 6      TESTIMONY THAT THE DEFENDANTS PUT ON IN THEIR CASE IN CHIEF.

 7              THE COURT:  WHAT IS YOUR -- I THOUGHT WE HAD SET

 8      FORTH PRETTY CLEARLY WHAT WAS GOING TO BE ALLOWED, AND I EVEN

 9      TOLD MR. JACOBS THAT I MAY HAVE TO SANCTION HIM IF HE KEPT

10      GOING INTO AN AREA THAT HE WASN'T ALLOWED TO.

11           I REMEMBER THAT THERE WERE PRETTY CLEAR DELINEATIONS OF

12      WHICH CASE WAS -- YOU KNOW, WE HAD THIS LONG ELABORATE BACK AND

13      FORTH BETWEEN THE CASE THAT HAD THE BURDEN GOING FIRST AND THEN

14      THE OPPOSITION AND WE ACTUALLY DID HAVE A PRETTY SET --

15              MR. MCELHINNY:  BUT THE CONFUSION LAST TIME WAS

16      BECAUSE THERE WERE MULTIPLE CASES, AND SO BOTH SIDES WERE

17      PLAINTIFFS AT ONE POINT.

18           AND SO WHEN REBUTTAL WAS DONE -- AT LEAST -- THE COURT MAY

19      HAVE BEEN COMPLETELY CLEAR, BUT AT LEAST WE WERE A LITTLE BIT

20      CONFUSED.

21           AND THIS TIME I JUST WANT TO MAKE SURE THAT THE

22      TRADITIONAL REBUTTAL -- I WANT TO RESERVE SOME TIME FOR

23      REBUTTAL, AND I WANT TO MAKE SURE IF WE RESERVE IT, THAT WE GET

24      TO USE IT.  THAT'S WHAT I --

25              MR. PRICE:  THAT'S THE WAY IT USUALLY WORKS, THE
```

1    PLAINTIFF HAS REBUTTAL AND WE CAN ADDRESS WHETHER IT'S WITHIN

2    THE SCOPE OF REBUTTAL OR NOT AT THE TIME, UNLESS THEY WANT TO

3    TELL US NOW WHAT THEIR REBUTTAL IS.  WE CAN ADDRESS IT NOW.

4            THE COURT:  I MEAN, IF YOU RESERVE THE TIME, I THINK

5    YOU HAVE IT, YOU HAVE THE BURDEN AND YOU ARE THE MOVING PARTY

6    ON DAMAGES SO.

7            MR. MCELHINNY:  THANK YOU, YOUR HONOR.

8            THE COURT:  OKAY.  SO WHAT ARE -- THERE ARE A COUPLE

9    OF ISSUES FROM REVIEWING ALL OF THE MOTIONS THAT YOU FILED FOR

10   THIS WEEK AND NEXT WEEK THAT I SEE ARE PROBABLY THE MOST

11   CONTENTIOUS, BUT MAYBE YOU WOULD HAVE A BETTER SENSE OF WHAT

12   YOU THINK IS GOING TO BE THE MOST CONTENTIOUS THIS TIME.

13       DEFINITELY THE SORT OF COPYING VERSUS DEMAND QUESTION,

14   WHAT THE TECHNICAL EXPERTS ARE GOING TO TESTIFY TO, PROCESS OF

15   DEVELOPMENT AT EACH RESPECTIVE COMPANY, NON-INFRINGING

16   ALTERNATIVES.

17       ARE THOSE THE MAIN OR THE MOST CONTENTIOUS ISSUES?  LET ME

18   ASK YOU ALL, YOU KNOW THIS BETTER THAN THAT I.  THAT'S JUST THE

19   IMPRESSION THAT I HAVE GOTTEN IN READING YOUR FILINGS.

20       WHAT DO YOU THINK?

21           MR. MCELHINNY:  I WOULD HAVE ONE THAT I WOULD ADD TO

22   THAT.

23           THE COURT:  OKAY.  WHAT IS THAT?

24           MR. MCELHINNY:  IT'S A PROCESS ISSUE.  THE QUESTION

25   TO WHICH -- THE EXTENT TO WHICH EXPERTS WILL BE ENTITLED TO

1    RELY ON THE FACTUAL RECORD THAT WAS MADE AT THE FIRST TRIAL.

2              THE COURT:  OKAY.  WELL, YOU KNOW, UNFORTUNATELY --

3              MR. MCELHINNY:  THIS IS WHAT I CALL THE LONG

4    TRIAL/SHORT TRIAL.

5        IF YOU THINK ABOUT HOW EXPERTS -- IN REGULAR CASES EXPERTS

6    CAN GO OFF AND THEY CAN TALK TO PEOPLE AND THEY COME BACK AND

7    SAY I SPOKE TO THIS PERSON.

8        AND BASED ON THAT, THAT'S HAPPENING HERE, AND WE HAVE HAD

9    A LOT OF TESTIMONY FROM WITNESSES AS TO FACTS.  AND THE

10   QUESTION IS AS TO WHETHER OR NOT IN THIS CONDENSED TRIAL THE

11   EXPERT WILL BE ABLE TO SAY SO AND SO TESTIFIED TO THIS, AND I'M

12   RELYING ON THAT FACT.

13             THE COURT:  NO, I'M NOT GOING TO ALLOW IT.

14             MR. MCELHINNY:  THANK YOU, YOUR HONOR.

15             MS. MAROULIS:  YOUR HONOR, THOSE ISSUES ARE CORRECT

16   FROM SAMSUNG'S PERSPECTIVE IN TERMS OF WHAT ARE THE MAIN ISSUES

17   OF DISPUTE.

18             THE COURT:  MR. MCELHINNY, DID YOU HAVE ANY OTHER

19   POINTS OTHER THAN THAT ISSUE OF CAN YOU RELY ON 2012 TRIAL

20   TESTIMONY?

21             MR. MCELHINNY:  NO, YOUR HONOR.

22             THE COURT:  SO THEN WE CAN EITHER GO ONE OF TWO

23   WAYS, EITHER WE CAN JUST WAIT AND I'LL GET THE OBJECTIONS

24   48 HOURS IN ADVANCE AND THE RESPONSES 48 HOURS IN ADVANCE AND

25   JUST RULE THEN, OR WE CAN TRY TO AT LEAST DO A LITTLE BIT IN

1    ADVANCE ON THESE PARTICULAR MOST CONTENTIOUS SUBJECTS.

2        I PARTICULARLY WANT TO AT LEAST TRY TO SORT OUT WHATEVER

3    EXHIBITS YOU THINK YOU'LL USE IN YOUR OPENING BECAUSE YOU'LL

4    NEED TO INCORPORATE THAT IN YOUR PREPARATION.  AND YOU ALL

5    PROBABLY KNOW THE MOST CONTENTIOUS DOCUMENTS ON THAT SCORE.

6        SO HOW -- TELL ME WITH REGARD TO -- WHAT I WAS GOING TO

7    SUGGEST, WITH REGARD TO SORT OF COPYING VERSUS DEMAND TECHNICAL

8    EXPERTS, PROCESS OF DEVELOPMENT AT EACH COMPANY, AND

9    NON-INFRINGING ALTERNATIVES, I WAS GOING TO ASK THAT YOU FILE

10   BY MONDAY A MORE DETAILED DESCRIPTION OF WHAT YOUR EXPERTS ARE

11   GOING TO SAY AND TO CITE AND PROVIDE A COPY OF ANY DEPOSITION

12   EXCERPTS OR CITE THE TRIAL LINE AND PAGE NUMBERS THAT ARE THE

13   SUBJECT OF THEIR ANTICIPATED TESTIMONY IN NOVEMBER SO THAT WE

14   CAN THEN TAKE A LOOK AT THAT AND GIVE YOU A RULING.

15       HOW DOES THAT SOUND?  CAN YOU DO THAT?  DO YOU NEED MORE

16   TIME THAN THAT?

17           MS. MAROULIS:  YOUR HONOR, CAN YOU CLARIFY?  IS THIS

18   AN OFFER OF PROOF OF WHAT EACH EXPERT TESTIFIES, OR SIMPLY A

19   LIST OF EXHIBITS THAT THE EXPERT IS GOING TO RELY ON?

20           THE COURT:  WELL, I ACTUALLY THINK WE COULD DO BOTH

21   OR WE COULD JUST FOCUS ON THE TESTIMONY FOR NOW.  I MEAN, GIVE

22   ME YOUR -- WE'RE SORT OF PROBLEM SOLVING HERE.

23       I DON'T WANT TO DO A LOT OF UNNECESSARY WORK IF YOU DON'T

24   END UP CALLING THAT WITNESS OR USING THAT EXHIBIT, BUT ON THE

25   OTHER HAND, IF WE KNOW WE'RE GOING TO HAVE THESE FIGHTS, IT

1    WOULD BE BETTER FOR US TO HAVE THE TIME AND TO BE ABLE TO THINK

2    ABOUT THIS MORE CAREFULLY AND NOT BE UNDER THE PRESSURE OF

3    TIGHT DEADLINES AND BE IN TRIAL SO.

4              MR. PRICE:  YOUR HONOR, I THINK IT'S GENERALLY A

5    GOOD IDEA BUT WITH THE TECHNICAL EXPERTS IT'S A LITTLE

6    DIFFICULT BECAUSE WE DON'T THINK BASICALLY ANY TECHNICAL

7    EXPERTS SHOULD BE TESTIFYING.  INFRINGEMENT AND VALIDITY HAVE

8    BEEN DETERMINED, AND WE PUT THEM ON OUR LIST BECAUSE IN CASE

9    YOU DISAGREE, WE DON'T WANT TO BE EMPTY HANDED.

10     AND OUR TECHNICAL EXPERTS WOULD BE MORE AND APPLY TO WHAT

11   APPLE'S TECHNICAL EXPERTS ARE GOING TO SAY.  IF YOU ASK ME

12   RIGHT NOW WHAT OUR TECHNICAL EXPERTS ARE GOING TO SAY, MY

13   RESPONSE WOULD BE IT DEPENDS ON WHAT APPLE PUTS ON AS EVIDENCE

14   OR IS ALLOWED TO PUT ON.

15             THE COURT:  WELL, I MEAN, FRANKLY, WHAT LITTLE THERE

16   IS OF WHAT APPLE'S TECHNICAL EXPERTS ARE GOING TO SAY, TO ME IT

17   ALL SEEMED LIKE INFRINGEMENT, WHAT BALAKRISHANAN IS SAYING AND

18   KARE.

19     I MEAN, YOU CAN DESCRIBE IT AS THEY NEED TO TALK ABOUT,

20   YOU KNOW, THE EXISTENCE OF THE PATENTED FEATURES IN THE SAMSUNG

21   PRODUCTS.  I MEAN, WHY IS THAT NOT INFRINGEMENT?  WHY DO WE

22   NEED THAT?

23             MR. MCELHINNY:  WELL, THAT IS EXACTLY DEMAND FOR THE

24   FEATURE.  THE FACT THAT THE SPECIFIC FEATURE WAS INCORPORATED

25   IN THE PRODUCT SHOWS THAT SAMSUNG THOUGHT THERE WAS -- WELL,

1        IT'S TWO THINGS.

2              ONE, WE HAVE DOCUMENTS THAT SAY THERE IS COMMERCIAL.

3                 THE COURT:  YOU ALREADY HAVE THE JURY BEING TOLD

4        THAT INFRINGEMENT HAS BEEN FOUND BY THESE PRODUCTS OF THESE

5        THREE UTILITY PATENTS AND THESE DESIGN PATENTS.

6              DO YOU REALLY NEED THREE DOCTORS OR WHATEVER TO SAY, OH,

7        YEAH, THEY'RE IN THERE?  I MEAN, I DON'T UNDERSTAND.

8                 MR. MCELHINNY:  IN FAIRNESS, THIS IS NOT HELPING

9        YOUR HONOR WITH THE PROCESS, BUT IT IS ALL SORT OF INTERWOVEN.

10       IT IS NOT CLEAR TO US WHAT THE JURY IS GOING TO BE TOLD BECAUSE

11       WE -- WHAT YOU TOLD US LAST TIME IS THAT THERE IS NOT GOING TO

12       BE A PRELIMINARY STATEMENT.  THERE WILL BE A JURY INSTRUCTION,

13       AND WE DON'T KNOW WHAT THAT JURY INSTRUCTION IS GOING TO SAY.

14             JUST TO TAKE YOUR HONOR'S EXAMPLE --

15                THE COURT:  LET'S SAY THE JURY INSTRUCTION SAYS IN A

16       PRIOR PROCEEDING THE FOLLOWING PRODUCTS WERE FOUND TO INFRINGE

17       THE FOLLOWING PATENTS OF APPLE AND JUST LIST THEM.

18                MR. MCELHINNY:  THE ANSWER TO THAT IS I DON'T THINK

19       THAT COMMUNICATES EITHER LEGALLY OR EITHER CERTAINLY NOT IN

20       PLAIN ENGLISH THAT THE SPECIFIC IMPLEMENTATION OF THAT

21       PARTICULAR INVENTION WAS PUT INTO A PRODUCT.

22             IN OTHER WORDS, YOU CAN HAVE IMPLEMENTATIONS THAT ARE NOT

23       IDENTICAL THAT INFRINGE A PATENT, BUT THAT'S NOT WHAT WE HAD

24       HERE, AND THAT'S NOT WHAT WE PROVED IN THE INITIAL CASE.

25             WE PROVED, AS YOUR HONOR WILL REMEMBER, EXHIBIT 45

1     SIDE-BY-SIDE COMPARISONS INCORPORATION OF VERY SPECIFIC

2     PRODUCTS BECAUSE IT HAD A FUN FACTOR OR BECAUSE CONSUMERS

3     WANTED IT.  THAT GOES DIRECTLY TO CONSUMER DEMAND.

4          SO WHERE I SAY THIS IS NOT ALL -- WE DON'T KNOW EXACTLY

5     WHAT THE JURY INSTRUCTION IS GOING TO SAY.  WE HAVE

6     OBJECTIONS --

7               THE COURT:  I THINK IT'S GOING TO SAY WHAT I JUST

8     SAID.

9               MR. MCELHINNY:  OKAY.

10              THE COURT:  IN A PRIOR PROCEEDING THE FOLLOWING

11    SAMSUNG PRODUCTS WERE FOUND TO INFRINGE THE FOLLOWING APPLE

12    PATENTS AND FOUND THAT THE PATENTS WERE VALID.

13              MR. MCELHINNY:  THE ANSWER TO YOUR QUESTION IS THAT

14    -- I TAKE THAT.  BUT THE ANSWER TO YOUR QUESTION THEN IS THAT I

15    DO NOT THINK THAT, THAT COMMUNICATES TO A JURY EITHER LEGALLY

16    OR FACTUALLY THE VALUE OF THE SPECIFIC IMPLEMENTATION OF WHERE

17    THE CUSTOMER DEMAND FOR IT OR WHY THERE WERE NOT OTHER

18    ACCEPTABLE ALTERNATIVES THAT WERE AVAILABLE.

19         ON THE OTHER HAND, JUST SO THAT -- WE HAVE OBJECTIONS, AS

20    YOUR HONOR KNOWS, TO HAVING OUR DAMAGE EXPERT TESTIFY AS TO

21    INTERNAL -- OBJECTIONS THAT WE THINK ARE MISTAKEN, BUT THAT OUR

22    DAMAGES EXPERT CANNOT SAY, I'VE LOOKED AT SAMSUNG DOCUMENTS

23    THAT SHOW THAT THIS SPECIFIC FEATURE WAS INCORPORATED AND THAT

24    SUPPORTS MY -- SO IF BOTH OF THOSE ARE GOING TO BE FORECLOSED

25    FOR US --

1          THE COURT:  NO.  I AGREE WITH SAMSUNG THAT

2     JULIE DAVIS IS NOT QUALIFIED TO TESTIFY AS TO WHETHER THERE'S

3     COPYING OR NOT, BUT MR. MUSIKA DID INCLUDE DOCUMENTS WHICH HE

4     OPINED SHOWED DEMAND FOR THE PATENTED FEATURES.  THAT'S COMING

5     IN.

6          SO IT'S EFFECTIVELY THE SAME DOCUMENT.  WHETHER YOU CALL

7     IT BANANA OR PICKLE, IT'S THE SAME DOCUMENT.

8          SO SHE'S NOT GOING TO BE ABLE TO CALL IT COPYING, AND

9     SHE'S NOT GOING TO BE ABLE TO SAY I FIND THESE ARE IDENTICAL

10    PRODUCTS AND THESE ARE COPIED PRODUCTS, BUT SHE CAN SAY WHAT

11    MR. MUSIKA SAID IN HIS REPORTS, IN BOTH THE SUPPLEMENTAL AND

12    THE ORIGINAL, THAT HE LOOKED AT THESE, WHATEVER, 97 DOCUMENTS

13    AND THEY SHOW DEMAND FOR THE PRODUCT.

14         SO DOES THAT TAKE CARE OF IT.  DO WE STILL NEED --

15              MR. MCELHINNY:  I MEAN, I'M THINKING THIS OUT WITH

16    YOU.

17              THE COURT:  YEAH.

18              MR. MCELHINNY:  BUT NOW I HAVE TO GO BACK AND THINK

19    ABOUT, GIVEN THAT, THAT'S HELPFUL, WHETHER OR NOT IN THE

20    LIMITED TIME I HAVE AVAILABLE, I THINK IT'S GOING TO HELP ME

21    WITH THIS JURY TO HAVE A TECHNICAL EXPERT SAY THESE ARE, IN

22    FACT, IDENTICAL.  AND THEY WENT THROUGH A PROCESS WHERE THEY

23    TOOK IT FROM APPLE AND PUT IT INTO THE SAMSUNG PRODUCT.

24              THE COURT:  ALL RIGHT.  WELL, I'M LIKELY TO GRANT

25    SAMSUNG'S MOTION TO EXCLUDE THAT BECAUSE I THINK THAT YOU'RE

```
1        JUST REHASHING INFRINGEMENT, WHICH HAS ALREADY BEEN FOUND.

2            THE ONLY POINT THAT WE'RE HAVING THIS TRIAL IS FOR THE

3        JURY TO SAY WHAT IS THE SPECIFIC VALUE OF THIS PATENTED FEATURE

4        OF VALID PATENTS THAT ARE INFRINGED.

5            SO, I MEAN, YOU CAN MAKE YOUR CASE, BUT I'M PROBABLY GOING

6        TO DENY THAT.  I DON'T SEE ANY REASON WHY WE NEED

7        BALAKRISHANAN, SINGH, AND KARE AGAIN.

8                MR. MCELHINNY:  IN A CASE --

9                THE COURT:  WELL, YOU CAN BRIEF IT.

10               MR. MCELHINNY:  ALL RIGHT.  ALL RIGHT.

11               THE COURT:  AND I WANT SPECIFICS.  I WANT TO KNOW

12       WHAT LINE AND PAGE OF THE TRIAL OR GIVE ME THE DEPOSITION

13       EXCERPTS OF EXACTLY WHAT THEY'RE GOING TO SAY.

14               MR. MCELHINNY:  THAT'S FINE, YOUR HONOR.  BUT I'LL

15       REMIND YOUR HONOR OF WHAT YOU ALREADY KNOW, ONE OF SAMSUNG'S

16       DEFENSES IS THAT THESE INVENTIONS ARE TRIVIAL.

17           OUR DAMAGES EXPERT CAN SAY WHAT THE MARKET REFLECTS OUR

18       DOCUMENTS, BUT YOUR HONOR IS LIMITING HER TO HER TESTIMONY.  IT

19       TAKES A TECHNICAL PERSON TO TALK ABOUT THE VALUE OF THE

20       INVENTION IN THE CONTEXT OF AN ELECTRONIC COMMUNICATIONS

21       DEVICE.

22               THE COURT:  I DIDN'T HEAR ANY OF THAT DURING THE

23       LAST TRIAL FOR BALAKRISHANAN, SINGH, AND KARE.

24               MR. MCELHINNY:  YOUR MEMORY, I'M SURE, IS BETTER

25       THAN MINE, BUT THAT'S THE POINT OF THE BRIEFING THAT YOUR HONOR
```

```
 1          JUST ASKED US FOR.

 2                    THE COURT:  ALL RIGHT.  SO WHEN ARE YOU GOING TO

 3          PROVIDE THAT?

 4                    MS. MAROULIS:  YOUR HONOR, MAY WE HAVE A RESPONSE

 5          BRIEF TO WHATEVER THEY FILE ON MONDAY BECAUSE IT SOUNDS LIKE

 6          IT'S GOING TO BE MOSTLY APPLE FILING ON MONDAY, AND WE NEED TO

 7          RESPOND TO IT.

 8                    THE COURT:  I WANT TO GO THROUGH THIS.  SO THERE'S

 9          CERTAIN THINGS WHERE I FEEL LIKE ONE SIDE DOES NOT WANT TO

10          INCLUDE IT BUT HAS FELT COMPELLED TO INCLUDE REBUTTALS IN THEIR

11          REPORTS AND THEIR DISCLOSURES AND THEIR LISTS.

12             CAN WE FIGURE THAT OUT BECAUSE I UNDERSTAND THE TECHNICAL

13          EXPERTS, AND I DID THINK IT WAS JUST APPLE THAT DID WANT TO GET

14          THIS IN.

15             BUT IF APPLE'S EXPERTS ARE EXCLUDED, THEN SAMSUNG IS ALSO

16          NOT GOING TO SEEK TO HAVE TECHNICAL EXPERTS TESTIFY; IS THAT

17          RIGHT?

18                    MR. PRICE:  I THINK THAT'S RIGHT, UNLESS SOMETHING

19          SURPRISES US.

20                    THE COURT:  WELL, I NEED TO KNOW THE SURPRISES NOW

21          SO TELL ME.  SO SURPRISE ME NOW.

22                    MR. PRICE:  OH, WE DON'T HAVE ANY.  SO OUR INTENTION

23          IS TO NOT CALL TECHNICAL EXPERTS.

24                    THE COURT:  ALL RIGHT.  SO THEN APPLE IS GOING TO

25          FILE ON MONDAY.
```

```
1              MR. MCELHINNY:  I'M SORRY.

2              THE COURT:  YES.

3              MR. MCELHINNY:  IS THIS FOR SOMETHING THAT YOUR

4    HONOR IS GOING TO RULE ON, ON THURSDAY?  BECAUSE MONDAY IS VERY

5    QUICK.  IF YOUR HONOR IS NOT GOING TO RULE ON THURSDAY, WE

6    WOULD LIKE TO PUSH THAT OUT TO WEDNESDAY, IF WE COULD.

7              THE COURT:  WELL, I'D LIKE TO HAVE THE HEARING ON --

8    UNFORTUNATELY OUR CALENDARS ARE PRETTY IMPACTED.  WE HAVE

9    SUMMARY JUDGMENT AND CLASS CERT IN MDL'S FOR THE END OF OCTOBER

10   AND NOVEMBER 7TH.

11        SO I CAN'T -- I WOULD LIKE TO PUSH THIS AS FAR AS WE CAN

12   NOW.  THIS IS THE TIME THAT WE HAVE AS A CHAMBERS DEVOTED TO

13   WORK ON YOUR CASE.

14        SO IF I PUSH IT MUCH FURTHER, YOU'RE GOING TO HAVE TO

15   COMPETE WITH OTHER CASES THAT WE HAVE ALREADY SET, YOU KNOW,

16   GIVE ATTENTION TO.

17             MR. MCELHINNY:  9:00 O'CLOCK, TUESDAY MORNING, YOUR

18   HONOR?

19             THE COURT:  HOW QUICKLY CAN YOU DO A RESPONSE?

20             MS. MAROULIS:  WE'LL DO WHAT THE COURT NEEDS.  WE

21   DON'T KNOW HOW LONG IT'S GOING TO BE WHAT THEY WRITE OR HOW

22   EXTENSIVE OR DETAILED, BUT WE'LL DO IT ON WEDNESDAY.

23             MR. MCELHINNY:  AS I UNDERSTAND IT, ALL YOU'RE GOING

24   TO WANT IS THE TESTIMONY FROM THE EARLIER TRIAL?

25             THE COURT:  WELL, I DON'T KNOW WHAT IT IS THAT
```

1    YOU'RE SEEKING TO HAVE THESE EXPERTS SAY.  I DON'T KNOW THAT.

2    THAT'S NOT CLEAR FROM YOUR WITNESS LIST, AND IT'S DEFINITELY

3    NOT CLEAR FROM THE MOTIONS.  IT'S LIKE ONE SENTENCE IN THE

4    MOTION AS TO WHAT BALAKRISHANAN, SINGH, AND KARE IS SAYING.

5        SO I'M TELLING YOU, WHATEVER IT IS THAT YOU WANT TO CALL

6    THESE WITNESSES FOR, GIVE ME NOTICE OF WHAT THAT IS, EXPLAIN

7    WHY THAT IS RELEVANT, EXPLAIN WHY JUST A JURY INSTRUCTION THAT

8    THESE PATENTS ARE VALID, THAT THESE PATENTS ARE INFRINGED BY

9    THESE PRODUCTS, WHY IT'S STILL REQUIRED ON TOP OF THAT.

10       SO DO YOU KNOW THE EXHIBITS THAT YOU'RE GOING TO USE FOR

11   THAT?  OR WOULD THAT BE TOO MUCH FOR YOU TO DO?

12       I MEAN, I WOULD LIKE YOU TO DO IT ON SUNDAY SO THAT I

13   COULD GET AT LEAST -- IF YOU GIVE THIS TO ME ON WEDNESDAY, I'M

14   NOT SURE THAT I CAN TURN THIS AROUND AND REALLY ANALYZE IT AND

15   READ IT AND THINK ABOUT IT AND HAVE REASONABLE QUESTIONS FOR

16   YOU NEXT THURSDAY, WHICH I'D LIKE TO DO.

17           MR. MCELHINNY:  WE'LL DO IT AS FAST AS WE CAN.  BUT,

18   YOUR HONOR, YOU'RE FLIPPING THE ORDER ON US.  I MEAN, WE

19   THOUGHT WE WERE GOING TO GET RULINGS ABOUT WHAT THE SUBJECT

20   MATTER WAS AND THEN WE WERE GOING TO DEFINE THE EXAMINATIONS,

21   AND WE'RE JUST NOT AT THE POINT WHERE WE HAVE ACTUAL

22   EXAMINATIONS READY TO GO THAT WOULD SUPPORT THAT.  AND NOW WE

23   NEED TIME TO DO IT, AND WE'LL DO IT.

24           THE COURT:  WELL, THEN WHY DON'T I JUST DO THIS, THE

25   SUBJECT MATTER THAT YOU IDENTIFIED, THE MOTION TO EXCLUDE IS

```
 1    GRANTED.  I DON'T FEEL LIKE THAT IS RELEVANT.  IT'S NOT -- YOU

 2    HAVE NOT PERSUADED ME THAT IT IS RELEVANT TO THE DAMAGES IN

 3    THIS TRIAL OR THAT IT'S NECESSARY BEYOND THE INSTRUCTION THAT

 4    IS GOING TO BE GRANTED GIVEN TO THE JURY THAT THESE ARE INVALID

 5    INFRINGED PATENTS.  SO WE DON'T EVEN HAVE TO DO IT.  FINE,

 6    TECHNICAL EXPERTS ARE EXCLUDED.  I'M NOT CONVINCED.

 7              MR. MCELHINNY:  MAY I GO BACK TO THE ONE DAY

 8    SHOWING, YOUR HONOR, PLEASE?

 9              THE COURT:  NO.  BECAUSE I CAN'T -- IF YOU DO IT ON

10    MONDAY AND I DON'T GET THIS UNTIL WEDNESDAY, IT'S NOT HUMANLY

11    POSSIBLE FOR ME TO TURN THAT AROUND.

12              MR. MCELHINNY:  MAY WE FILE IT ON SUNDAY THEN, YOUR

13    HONOR?

14              THE COURT:  OKAY.  SO TODAY IS THURSDAY.  HOW

15    QUICKLY CAN SAMSUNG TURN IT AROUND?

16              MS. MAROULIS:  IF THEY FILE SUNDAY, CAN WE FILE ON

17    TUESDAY?

18              THE COURT:  THAT'S FINE.  DEPENDING ON THE VOLUME,

19    WE MAY NOT BE ABLE TO HAVE IT COMPLETELY DIGESTED IN TIME FOR

20    THURSDAY.

21         SO ON SUNDAY, WHICH IS OCTOBER 13TH, AND THEN ON TUESDAY,

22    OCTOBER 15TH, THAT'S SAMSUNG'S RESPONSE.

23         OKAY.

24              MS. MAROULIS:  AND, YOUR HONOR, CAN WE MAKE CLEAR

25    IT'S NOT JUST TECHNICAL EXPERTS BUT DESIGN EXPERTS?
```

```
1              THE COURT:  WELL, LET'S GO THROUGH THE OTHER TOPICS.

2      SO FOR THE TECHNICAL EXPERTS IS THE UNIVERSE JUST

3      BALAKRISHANAN, SINGH, AND KARE OR IS THERE SOMEONE ELSE THAT

4      WOULD FALL IN THAT CATEGORY THAT WE SHOULD INCLUDE?

5              MR. MCELHINNY:  THOSE ARE THE ONLY ONES WE HAVE ON

6      OUR LIST, YOUR HONOR.

7              THE COURT:  OKAY.  NOW, LET'S GO THROUGH THE OTHERS.

8      COPYING VERSUS DEMAND.

9          I'M -- YOU KNOW, OTHER THAN THE DEMAND EXHIBITS TO THE

10     MUSIKA REPORT, EXHIBITS 24 AND 25, WHAT ELSE -- PARDON ME -- IS

11     APPLE SEEKING TO BRING IN?

12             MR. MCELHINNY:  THERE WERE A HANDFUL OF DOCUMENTS

13     THAT CAME IN THROUGH OTHER WITNESSES.  FOR EXAMPLE, THE "TIME

14     INVENTION OF THE YEAR," THE "TIME NEWSWEEK" ARTICLE ABOUT

15     CINDERELLA.  THERE WERE SOME OF THESE DOCUMENTS IN TERMS OF THE

16     IMPORTANCE OF THIS, WHICH WE INTRODUCED THROUGH OTHER WITNESSES

17     THAT WE WOULD JUST AS SOON NOT CALL THOSE WITNESSES IF THE

18     DOCUMENTS WERE ALREADY IN EVIDENCE FROM THE FIRST TRIAL.

19             THE COURT:  BUT THEY'RE NOT PART OF MR. MUSIKA'S

20     DEMAND EXHIBITS?

21             MR. MCELHINNY:  THAT THEY WERE NOT -- BECAUSE THEY

22     CAME IN THROUGH A DIFFERENT WITNESS, THEY WERE NOT ON HIS

23     CHARTS 24 AND 25, THAT'S CORRECT.

24             THE COURT:  OKAY.  AND HOW MANY ARE THOSE?

25             MR. MCELHINNY:  I THINK THERE IS -- WE LABELLED
```

```
1        THOSE FOR YOUR HONOR EXHIBIT G, YOUR HONOR.

2               THE COURT:  WELL, LET ME ASK APPLE TO DO ONE THING

3        FOR ME.  EXHIBITS 24 AND 25 TO THE MUSIKA ORIGINAL REPORT AND

4        IN THE S VERSIONS THAT ARE EXHIBITS TO THE SUPPLEMENTAL REPORT,

5        THE NUMBERS OF THOSE DOCUMENTS DON'T CORRELATE TO TRIAL EXHIBIT

6        NUMBERS.

7               MR. MCELHINNY:  THAT'S CORRECT.

8               THE COURT:  IT WOULD JUST BE HELPFUL FOR US TO KNOW,

9        YOU KNOW, WHO -- YOU KNOW, WITH WHICH WITNESS THAT EXHIBIT CAME

10       IN ON.  WAS IT ADMITTED?  WAS IT NOT ADMITTED?  WAS IT ADMITTED

11       FOR A LIMITED PURPOSE OR NOT?

12          CAN YOU SUBMIT A CHART OR SOMETHING THAT IDENTIFIES THE

13       CORRELATION?  IT WOULD BE REALLY HELPFUL FOR US.

14              MR. MCELHINNY:  YES, WE CAN DO THAT.

15              THE COURT:  WHEN CAN YOU DO THAT?

16              MR. MCELHINNY:  TOMORROW.

17              THE COURT:  SO THAT WOULD BE OCTOBER 11TH.  THANK

18       YOU.

19          SO LET ME TALK TO SAMSUNG'S COUNSEL.  I HEAR WHAT YOU'RE

20       SAYING REGARDING WILLFULNESS AND COPYING, BUT I AGREE WITH

21       APPLE THAT IT'S RELEVANT TO DEMAND.  IT'S RELEVANT TO THE

22       ABSENCE OF NON-INFRINGING ALTERNATIVES.  I THINK THAT THAT --

23       IT WOULD COME IN, AND IT WOULD BE RELEVANT TO A DAMAGES

24       RETRIAL.

25          SO UNDERSTANDING THAT THAT'S HOW THE RULING IS GOING TO
```

1      BE, ARE YOU STILL OBJECTING TO ALL OF THEM AND TO ALL OF THE

2      WITNESSES?

3          I MEAN, I CERTAINLY UNDERSTAND PRESERVING YOUR OBJECTION,

4      BUT CAN WE NARROW THIS DISPUTE AT ALL?

5              MS. MAROULIS:  YOUR HONOR, IN OUR BRIEFING WE

6      EXPLAINED THAT WE OBJECT TO THE DOCUMENTS THAT GENERALLY ALLEGE

7      THAT THERE WAS COPYING INVOLVED.

8          WE'RE NOT OBJECTING TO, FOR EXAMPLE, TO SURVEYS, SAMSUNG

9      OR APPLE SURVEYS THAT SAY CUSTOMERS LIKE A PARTICULAR FEATURE.

10         WHAT WE'RE OBJECTING TO IS A VARIETY OF DOCUMENTS, SOME

11     PRODUCED BY SOFTWARE GROUPS AND SOME PRODUCED BY VARIOUS

12     ENGINEERS, WHERE APPLE WANTS TO PUT IN FRONT OF THE JURY SOME

13     SIDE-BY-SIDES COMPARING APPLE DOCUMENTS AND SAMSUNG DEVICES AND

14     APPLE DEVICES.  THOSE DOCUMENTS DON'T ACTUALLY SHOW DEMAND.

15     THEY SHOW MERELY WHAT SOMEONE AT SAMSUNG THOUGHT WAS

16     INTERESTING IN FORMULATING THEIR JOB.

17         AND THE PREJUDICIAL IMPACT OF THESE DOCUMENTS IS GOING TO

18     BE TREMENDOUS BECAUSE WE CANNOT ARGUE NON-INFRINGEMENT, BUT

19     THEY WILL BE ESSENTIALLY LITIGATING INFRINGEMENT AND ALLEGED

20     COPYING.

21         AND SO THAT IS THE GIST OF OUR OBJECTION, WHICH WE ADDRESS

22     IN THE MOTION IN LIMINE AND MOTION TO EXCLUDE EXHIBITS AND

23     WITNESSES.

24             THE COURT:  I'M SORRY.  GO AHEAD, PLEASE.

25             MS. MAROULIS:  ONE MORE THING, YOUR HONOR.  IN

1     PARTICULAR, MOST OF THESE DOCUMENTS DON'T ACTUALLY ADDRESS

2     SPECIFIC PATENTED FEATURES AT ISSUE IN THIS CASE.  THEY TALK

3     GENERALLY WHEN SOMETHING IS BEAUTIFUL OR SOMETHING IS A NEW

4     STANDARD OR DESIGN OR HOW WONDERFUL THE DESIGN IS.

5          THESE PATENTS HAVE SPECIFIC SCOPE.  IT WAS LITIGATED IN

6     THE PREVIOUS CASE.  THEY WERE CONSTRUED, AND CERTAIN THINGS

7     WERE FOUND BY THE JURY, AND WE'RE GOING TO STAND BY THOSE

8     RULINGS IN THIS TRIAL, BUT THESE DOCUMENTS DON'T ACTUALLY SHOW

9     DEMAND FOR THESE SPECIFIC FEATURES AND THE PATENTED FEATURES.

10          THE RISK OF PREJUDICE IS TREMENDOUS BECAUSE IT IS GOING TO

11     BE A DAMAGES TRIAL ONLY, AND THE JURY IS GOING TO BE TOLD

12     THROUGH INSTRUCTIONS THAT INFRINGEMENT IS TO BE ASSUMED AND THE

13     403 RISK HERE IS MUCH GREATER THAN THE REGULAR TRIAL WHERE YOU

14     HAVE A WHOLE VARIETY OF ISSUES PRESENTED AND THESE DOCUMENTS

15     COULD BE RELEVANT TO NONOBVIOUSNESS, COMMERCIAL SUCCESS,

16     WILLFULNESS, AND THERE'S A VARIETY OF OTHER ASPECTS.  AND HERE

17     THEY WOULD BE SOLELY USED TO INFLAME THE JURY.  AND THEY ARE

18     DIFFERENT FROM THE DOCUMENTS WHERE YOU CAN SEE THE DEMAND FOR

19     PHONES IN A MORE TRADITIONAL MARKETING DOCUMENT.

20          THE COURT:  SO I AGREE WITH YOU PARTIALLY, AND I

21     DON'T AGREE WITH YOU PARTIALLY.

22          IF THE DOCUMENT ACTUALLY IS DISCUSSING A PATENTED FEATURE

23     THAT IS PART OF THIS TRIAL, WHICH IS TRUE OF SOME OF THE PAGES

24     OF THOSE SIDE-BY-SIDE COMPARISONS, THEN I THINK FOR

25     COMPLETENESS THAT WHOLE SIDE-BY-SIDE COMPARISON COMES IN.

1    IF IT'S A DOCUMENT THAT JUST GENERICALLY TALKS ABOUT

2    DESIGN, THEN I WOULD AGREE THAT APPLE NEEDS TO MAKE SOME KIND

3    OF SHOWING OF HOW THAT IS TIED TO A PATENTED FEATURE BECAUSE

4    THERE'S NO WILLFULNESS CLAIM HERE, THERE'S NO INVALIDITY,

5    THERE'S NO INFRINGEMENT.  THIS IS REALLY JUST TARGETED AT WHAT

6    IS THE VALUE OF THIS PATENTED FEATURE.

7    SO I WOULD REQUIRE APPLE TO MAKE MORE THAN JUST A GENERIC

8    "THIS IS BEAUTIFUL" WON'T COME IN UNLESS APPLE CAN MAKE A

9    SHOWING ABOUT EITHER THROUGH THE TIMELINE OF THE PRODUCTS THAT

10   THIS MUST HAVE BEEN INCLUDED.  THIS FEATURE, IT MUST HAVE BEEN

11   REFERRING TO THE SHAPE OF THE BEZEL OR WHATEVER THE ISSUE IS.

12   MS. MAROULIS:  YOUR HONOR, THE PROBLEM WITH THAT IS

13   THAT IF A DOCUMENT ACTUALLY SAYS PEOPLE REALLY PREFER

14   BOUNCEBACK TO BLUE GLOW, THAT WAS A DOCUMENT THAT SHOWED DEMAND

15   OF THAT FEATURE BUT IF YOU HAVE A DOCUMENT AUTHORED BY AN

16   ENGINEER OR A SOFTWARE DEVELOPER THAT GOES THROUGH A VERY

17   DIFFERENT -- VERY SMALL ASPECTS OF THE PHONE AND PUTS THEM SIDE

18   BY SIDE, THAT DOES NOT ACTUALLY SHOW THAT PEOPLE BUY PHONES.

19   THIS SHOWS THAT THIS PARTICULAR PERSON WAS GIVEN AN

20   ASSIGNMENT WHERE THEY WERE COMPARING IT TO DEVICES.

21   IT'S NOT SOMETHING WHERE YOU CAN INFER DEMAND JUST FROM

22   THAT DOCUMENT ALONE.

23   THE COURT:  WELL, I RECALL THAT IN SOME OF THOSE

24   SIDE-BY-SIDE COMPARISONS OF THE PRODUCT, AT LEAST 2 OUT OF THE

25   WHATEVER, 120 PAGES, DID ACTUALLY COVER PATENTED FEATURES, AT

```
1     LEAST IN THE LAST TRIAL.

2          SO I THINK THAT IS RELEVANT TO DEMAND, AND IT IS RELEVANT

3     TO ABSENCE OF NON-INFRINGING ALTERNATIVE.  I THINK IT'S

4     RELEVANT FOR DAMAGES AND THAT DOCUMENT SHOULD COME IN.

5          TELL ME WHAT -- MR. MCELHINNY, WHO ARE YOU INTENDING TO

6     CALL FOR THIS QUESTION OTHER THAN MS. DAVIS?

7               MR. MCELHINNY:  I MAY BE CALLING ARTNELL.  I MAY BE

8     CALLING OUR EXPERTS.

9               THE COURT:  ALL RIGHT.  WELL, THAT WILL HAVE TO BE

10    INCLUDED IN WHAT YOU FILE.

11              MR. MCELHINNY:  RIGHT.  AND WE MAY BE USING SAMSUNG

12    DEPOSITIONS, AND WE MAY BE USING CROSS-EXAMINATION.

13              THE COURT:  WELL, I MEAN, I THINK WHATEVER YOU WANT,

14    I MEAN, YOU CALL IT DEMAND AND YOU CALL IT COPYING, WHATEVER, I

15    WOULD LIKE TO KNOW WHAT IT IS THAT YOU INTEND TO USE FOR THAT

16    SO THAT I CAN, YOU KNOW, AS MUCH AS POSSIBLE GIVE YOU SOME

17    EARLY RULINGS.

18              MR. MCELHINNY:  I APPRECIATE THAT, YOUR HONOR.

19              THE COURT:  SO THAT NEEDS TO BE INCLUDED IN WHATEVER

20    YOU FILE ON SUNDAY.

21              MR. MCELHINNY:  ONLY IF WE'RE GOING TO USE IT FOR A

22    TECHNICAL EXPERT?

23              THE COURT:  NO.  I THINK WHEN WE STARTED THIS

24    HEARING, THE ISSUES THAT I SAW WOULD BE THE BIGGEST FLASH

25    POINTS ARE THIS COPYING/DEMAND QUESTION, THE TECHNICAL EXPERTS,
```

1    THE PROCESS OF DEVELOPMENT, AND THE NON-INFRINGING

2    ALTERNATIVES.

3         SO I THINK IT WOULD BE BEST TO TRY TO RESOLVE SOME OF

4    THESE EARLY OR AT LEAST GIVE THE COURT A RUNNING START ON WHAT

5    THESE PROBLEMS ARE LIKELY TO BE DURING THE TRIAL, AND I'M GOING

6    TO HAVE TO GIVE YOU A RULING, YOU KNOW, ON THE SPOT WITH A JURY

7    WAITING.

8              MR. MCELHINNY:  RIGHT.

9              THE COURT:  I WOULD LIKE SOME LEAD TIME ESPECIALLY

10   IF IT'S GOING TO REQUIRE US TO GO BACK AND LOOK AT THE EXPERT

11   REPORTS AND GO BACK AND LOOK AT WHAT EXHIBITS WERE ADMITTED FOR

12   A LIMITED PURPOSE.  I MEAN, THIS IS GOING TO BE A

13   TIME-CONSUMING PROCESS, AND THERE ARE A LOT OF EXHIBITS HERE

14   SO.

15             MR. MCELHINNY:  BUT JUST SO THE RECORD IS CLEAR, THE

16   LEGAL TEST IS DEMAND FOR THE PATENTED PRODUCT, THE LEGAL TEST

17   IS NOT DEMAND FOR THE PATENTED FEATURE.

18             MS. MAROULIS:  AND THAT ACTUALLY MAKES ONE OF OUR

19   POINTS, WHICH IS THAT IN MR. WAGNER'S REPORT HE SAYS THAT HE

20   AGREES THAT THERE WAS DEMAND FOR PRODUCT AND WE STATED THAT IN

21   OUR VARIOUS PLEADINGS.

22        WE'RE CONTESTING SPECIFIC FEATURES BUT THE -- ACTUALLY

23   THERE'S NO DISPUTE BETWEEN THE TWO EXPERTS THAT THERE IS DEMAND

24   FOR THE PRODUCT.

25             MR. MCELHINNY:  AND BOTH ARE RELEVANT.  BOTH ARE

```
 1        RELEVANT.  AND, SECONDLY, JUST ON THIS DESIGN POINT.

 2              THE COURT:  SO WHY DO YOU NEED THAT, IF YOU'RE

 3        WILLING TO CONCEDE DEMAND AND YOU HAVE ALL OF THE SALES NUMBERS

 4        AND REVENUE NUMBERS AND UNIT NUMBERS FOR THEIR PRODUCTS AND

 5        YOUR PRODUCTS, WHY DO YOU NEED MORE?

 6              MR. MCELHINNY:  BECAUSE THEY SAY THE PATENTED

 7        INVENTIONS ARE TRIVIAL.  AND THEY SAY IT OVER AND OVER AND OVER

 8        AGAIN.

 9              THE COURT:  BUT YOU'RE GOING TO COUNTER THAT BY

10        SAYING DEMAND FOR THE PRODUCT AND NOT DEMAND FOR THE FEATURE,

11        THAT'S WHAT I'M HEARING FROM YOU.

12              MR. MCELHINNY:  NO, NO.  WHAT I'M SAYING IS THAT

13        WE'RE GOING TO SHOW BOTH BECAUSE BOTH ARE RELEVANT.

14              THE COURT:  WELL, I THINK THIS IS ALSO ONE OF THE

15        AREAS THAT WE SHOULD FLUSH OUT IN ADVANCE, AND I THINK THIS IN

16        PARTICULAR WILL PROBABLY IMPLICATE SOME OPENING STATEMENT

17        EXHIBITS; IS THAT RIGHT?

18              MR. MCELHINNY:  IT WILL.  BUT CAN I JUST FLAG ONE

19        OTHER ISSUE TO WHAT YOUR HONOR JUST SAID?

20              THE COURT:  YES.  WHAT'S THAT?

21              MR. MCELHINNY:  ONE OF THE WAYS -- I MEAN, WE WERE

22        VERY FORTUNATE TO FIND SOME DOCUMENT, YOU KNOW, INDIVIDUAL

23        DOCUMENTS THAT ARE JUST COMPLETE ADMISSIONS, BUT WE ALSO HAVE

24        TO BE ABLE TO PROVE OTHER THINGS THROUGH FOUNDATIONAL EVIDENCE

25        AND A COMBINATION OF EVIDENCE.
```

1    SO IF DOCUMENTS SAY THE DESIGN IS EXTREMELY IMPORTANT TO

2    CONSUMERS, COUPLED WITH DOCUMENTS THAT SHOW HOW SAMSUNG CHANGED

3    ITS DESIGN TO BECOME IPHONE LIKE, PROVES THE DEMAND FOR THIS

4    PARTICULAR DESIGN, THIS INFRINGING DESIGN.

5    TO SET THE BURDEN ON US TO SAY TO THAT WE HAD TO FIND A

6    DOCUMENT THAT SAYS THIS PARTICULAR PATENTED DESIGN PROVES

7    CONSUMER DEMAND, THAT'S JUST TOO HIGH.

8    WHAT WE HAVE ARE JUST FACTS.  WHAT WE HAD OUR CONSUMER

9    REPORTS AND WE HAD THEIR INTERNAL DOCUMENTS THAT GO OUT AND SAY

10    CUSTOMERS BUY PHONES BECAUSE OF WHAT THEY LOOK LIKE AND THEN WE

11    HAVE THE HISTORY OF HOW THEY CHANGE THEIR DESIGN TO MAKE IT

12    LOOK LIKE THE IPHONE.  AND THAT COMBINATION OF FACTS IS WHAT I

13    CAN ARGUE TO THE JURY IS PROOF THAT SAMSUNG ACKNOWLEDGED HOW

14    IMPORTANT THIS DESIGN WAS TO SALES.

15    MS. MAROULIS:  YOUR HONOR, APPLE IS TRYING TO

16    RELITIGATE THE INFRINGEMENT AND WILLFULNESS AGAIN.  AND THIS

17    TRIAL WE UNDERSTOOD TO BE A NARROW DAMAGES TRIAL, SOMETHING

18    THAT IS FOCUSED ON CALCULATION OF DAMAGES THAT IS DUE FOR THOSE

19    13 PRODUCTS THAT INFRINGE THE FILED PATENTS.

20    WE'RE PREPARED TO PUT TOGETHER A NARROW CASE THAT

21    ADDRESSES THAT AND REBUTS THEIR ALLEGATIONS.

22    BUT IF THEY'RE GOING TO GO BACK AND RECREATE THE WHOLE

23    STORY OF INFRINGEMENT, IT WOULD BE UNFAIR BECAUSE WE CANNOT

24    PRESENT NON-INFRINGEMENT, AND WE CANNOT PRESENT HOW WE DID NOT

25    DO CERTAIN THINGS.  AND WE WILL TRY, BUT THAT WILL EXPAND THE

1    TRIAL EXPONENTIALLY FOR EVERYONE BECAUSE THEN WE WILL NEED TO

2    BRING DESIGNERS TO SAY, NO, THAT IS NOT HAPPENED.  DID YOU GET

3    CONFUSED AS TO -- WELL, DO YOU STATE WE INFRINGE OR ARE YOU

4    JUST SAYING THAT IS NOT HOW.

5         IT'S GOING TO LEAD TO A LOT OF CONFUSION AND IT IS NOT

6    WHAT THIS CASE NOR WHAT THIS TRIAL WAS SUPPOSED TO BE ABOUT,

7    WHICH IS FIXING THE NOTICE DATE THAT APPLE HELPED THEMSELVES TO

8    THROUGHOUT THE FIRST TRIAL.

9              THE COURT:  WELL, THAT'S WHY I THINK IT'S IMPORTANT

10   TO MAKE THIS DECISION ON A DEPOSITION LINE-BY-LINE BASIS AND ON

11   AN EXHIBIT-BY-EXHIBIT BASIS.

12             MR. MCELHINNY:  I HAVE NO PROBLEM WITH THAT.

13             THE COURT:  I THINK SORT OF SAYING SOMETHING IN THE

14   ABSTRACT IS PROBABLY NOT GOING TO HELP YOU IN FIGURING OUT WHAT

15   IS IN OR OUT OF THE CASE.

16             MS. MAROULIS:  YOUR HONOR, JUST AS A MATTER OF

17   PROCESS, COUNSEL SAYS THAT THE ONLY THREE EXPERTS ON THEIR LIST

18   ARE KARE, SINGH, BALAKRISHANAN AND THEY ALSO HAVE MR. BRESSLER.

19   AND I WANT TO MAKE SURE THAT MR. BRESSLER IS INCLUDED IN

20   WHATEVER PROFFER THAT THEY'RE GOING TO MAKE ON SUNDAY.

21             MR. MCELHINNY:  HE IS, YOUR HONOR.

22             THE COURT:  OKAY.  SO YOUR DEMAND WITNESSES THEN ARE

23   JUST GOING TO BE BRESSLER, KARE, SINGH, BALAKRISHANAN, AND

24   DAVIS?

25             MR. MCELHINNY:  NO, YOUR HONOR.  THOSE ARE THE

```
 1        WITNESSES WHO ARE GOING TO TESTIFY ABOUT SAMSUNG DOCUMENTS

 2        PROVING DEMAND.

 3            WE'RE GOING TO HAVE OUR OWN, MR. SCHILLER, WHO TESTIFIED

 4        EXTENSIVELY ABOUT DEMAND AND THE IMPORTANCE OF ALL OF THESE

 5        ISSUES BUT DIDN'T HAVE THE BENEFIT OF THE SAMSUNG DOCUMENTS.

 6            THESE ARE OUR SALES AND MARKETING PEOPLE WHO GOING TO

 7        TESTIFY INDEPENDENTLY FROM OUR DOCUMENTS AND THEIR OWN

 8        KNOWLEDGE ABOUT THE IMPORTANCE OF THESE PARTICULAR PATENTS AND

 9        HOW THEY DRIVE THE SALES OF THE PHONES.

10            BUT THERE'S NO OBJECTION TO THAT YET.  THERE WASN'T.

11        THOSE ARE NOT BASED ON THE SAMSUNG DOCUMENTS.

12                    THE COURT:  WHAT --

13                    MR. MCELHINNY:  THEY DON'T RAISE THE COPYING ISSUE.

14                    THE COURT:  DO YOU HAVE ANY OBJECTION TO

15        MR. SCHILLER?  I DIDN'T SEE ANY IN THE BRIEFING.

16                    MS. MAROULIS:  YOUR HONOR, I THINK WE ONLY HAD ONE

17        OBJECTION TO THE EXTENT THAT HE WAS GOING TO GO INTO THE APPLE

18        HISTORY AND TALK ABOUT THINGS THAT WERE NOT NECESSARILY

19        RELEVANT IN THE CASE.  I DO NOT RECALL THE OBJECTION.  I WILL

20        HAVE SOMEONE LOOK IT UP, AND WE'LL LET YOU KNOW VERY SHORTLY,

21        BUT HE WOULDN'T BE TALKING ABOUT SAMSUNG DOCUMENTS BECAUSE HE'S

22        A FACT WITNESSES AND HE CANNOT SPECULATE ABOUT SAMSUNG

23        DOCUMENTS.

24                    MR. MCELHINNY:  WE HAVE A PROTECTIVE ORDER IN THIS

25        CASE, YOUR HONOR, AND UNDER THE PROTECTIVE ORDER HE WAS NOT
```

```
 1        ALLOWED TO SEE THE SAMSUNG DOCUMENTS.

 2              THE COURT:  SO LET ME UNDERSTAND THE SCOPE OF WHAT

 3        YOU WOULD BE PROVIDING BECAUSE I THINK I PROBABLY SHOULD GIVE

 4        YOU MORE TIME.

 5           SO YOU'RE GOING TO BE GIVING OR FILING, I SHOULD SAY, WHAT

 6        YOU INTEND TO HAVE BALAKRISHANAN, SINGH, KARE, BRESSLER,

 7        SCHILLER, DAVIS -- AND WHO ELSE?

 8              MR. MCELHINNY:  I THINK YOUR HONOR JUST EXPANDED ON

 9        WHAT I THOUGHT.  MAY I TELL YOU WHAT I THOUGHT YOU ASKED ME TO

10        FILE?

11           I THINK SO FAR YOU HAVE ASKED ME TO FILE TWO THINGS.  ONE

12        IS THAT YOU HAVE ASKED ME TO FILE AN OFFER OF PROOF, IS THE WAY

13        I WOULD PUT IT, FOR EACH OF OUR TECHNICAL EXPERTS IN TERMS OF

14        WHY WE NEED TO CALL THEM AND EXACTLY WHAT THEY WOULD SAY AND

15        WHAT EXHIBITS THAT WOULD BE OFFERED WITH THEIR EXAMINATION.

16        THAT WAS THE FIRST THING.

17              THE COURT:  UH-HUH.

18              MR. MCELHINNY:  THE SECOND THING THAT YOU ASKED US

19        TO FILE IS AN IDENTIFICATION OF EVERY SAMSUNG DOCUMENT THAT WE

20        INTEND TO OFFER TO PROVE THE VALUE OF OUR PATENTS AND DEMAND

21        FOR THE PATENTED PRODUCTS.

22           SO FAR I THINK THAT WAS THE LIST.

23              THE COURT:  I WAS HOPING THAT WE CAN PREVIEW EARLY

24        THE DISPUTES THAT ARE GOING TO ARISE ON THE COPYING VERSUS

25        DEMAND ISSUE, THE TECHNICAL EXPERTS, THE PROCESS OF
```

1    DEVELOPMENT, AND THE NON-INFRINGING ALTERNATIVES, ALL FOUR OF

2    THOSE AREAS.  AND I THINK THERE'S GOING TO BE QUITE A BIT OF

3    OVERLAP.

4            MR. MCELHINNY:  BUT I DON'T THINK SCHILLER HAS

5    ANYTHING TO DO WITH ANY OF THAT, FOR EXAMPLE, BECAUSE HE

6    DOESN'T RAISE A COPYING ISSUE AND HE DOESN'T --

7            THE COURT:  WELL, YOU JUST LISTED HIM WHEN I ASKED

8    YOU WHO ELSE WOULD YOU BE CALLING.

9            MR. MCELHINNY:  ON THE ISSUE OF CONSUMER DEMAND FOR

10   THESE PATENTS, YES.

11           THE COURT:  SO HE DOESN'T RAISE A COPYING.

12           MR. MCELHINNY:  HE DOESN'T RAISE A COPYING ISSUE.

13           MS. MAROULIS:  YOUR HONOR, THAT'S CORRECT, THAT HE

14   DOESN'T RAISE AN ALLEGED COPYING ISSUE, BUT I'M REMINDED THAT

15   IN OUR PAPERS WE OBJECTED TO GENERAL DOCUMENTS TALKING ABOUT

16   APPLE BRAND AND NOT SPECIFICALLY GEARED TOWARDS THE PATENTS IN

17   SUIT.  SO THAT WAS THE BASIS OF OUR OBJECTION TO PART OF HIS

18   TESTIMONY.

19           THE COURT:  OKAY.  WELL, THAT ONE I THOUGHT WAS A

20   SLIGHTLY MORE MINOR DISPUTE THAN THE ONES WE'RE TALKING ABOUT

21   NOW.  THAT'S FINE.

22       BUT I DO THINK THAT THERE'S OVERLAP BETWEEN THE TECHNICAL

23   EXPERTS'S TESTIMONY AND WHAT YOU INTEND TO INTRODUCE FOR

24   DEMAND, ISN'T THERE?

25           MR. MCELHINNY:  YES.

```
1              THE COURT:  SO YOU'RE PROVIDING BOTH THE EXHIBITS AS

2     WELL AS THE TESTIMONY THAT YOU INTEND TO INTRODUCE FOR THIS

3     COPYING/DEMAND QUESTION?

4              MR. MCELHINNY:  YES, YOUR HONOR, THAT'S WHAT I

5     UNDERSTAND.

6              THE COURT:  ALL RIGHT.

7              MS. MAROULIS:  FOR THE MULTIPAGE DOCUMENTS, MAY WE

8     HAVE A SPECIFIC CITE AS TO WHAT IS GOING TO BE INTRODUCED SO WE

9     CAN RESPOND APPROPRIATELY?

10             THE COURT:  I ASSUME THAT'S FINE, RIGHT,

11    MR. MCELHINNY?  YOU'RE JUST GOING TO GIVE A SPECIFIC, WHAT,

12    BATES RANGE FOR THE DOCUMENT OR EXHIBIT NUMBER FROM THE LAST

13    TRIAL?

14             MS. MAROULIS:  IF IT'S A DOCUMENT THAT IS 200 PAGES

15    AND THEY CLAIM THAT IT REPRESENTS PATENTED FEATURE, WE WOULD

16    LIKE A CITE TO THE SPECIFIC PAGE BECAUSE OTHERWISE THERE WILL

17    BE A DISPUTE AS TO WHETHER THE DOCUMENT DOES OR DOES NOT SPEAK

18    TO THE PATENTED FEATURE.

19             MR. MCELHINNY:  TO BE CLEAR, WE'RE GOING TO DO

20    WHATEVER YOUR HONOR NEEDS.  I DON'T WANT TO GET PUSHED AROUND

21    HERE IN GIVING STUFF THEY WOULD LIKE IF YOUR HONOR DOESN'T NEED

22    IT.  IF YOUR HONOR WANTS IT, WE'LL GIVE IT TO YOU.

23             THE COURT:  OKAY.  WHAT ARE WE TALKING IN TERMS OF

24    QUANTITY OR VOLUME?

25             MR. MCELHINNY:  I THINK THE FIRST SET IN TERMS OF
```

```
 1        THE TECHNICAL EXPERTS AND WHAT THEY WOULD SAY AT LEAST I HAVE

 2        THE, I HAVE THE IGNORANCE ON MY SIDE HERE, BUT I THINK THAT'S A

 3        VERY TINY VOLUME.

 4                 THE COURT:  GREAT.

 5                 MR. MCELHINNY:  I THINK WE WERE CALLING THEM JUST TO

 6        SAY THAT THIS IS A VALUABLE INVENTION.

 7            SO I DON'T THINK THAT'S -- THE NUMBER OF SAMSUNG DOCUMENTS

 8        IS BASICALLY SOME 24 AND 25, AND I DON'T THINK WE'RE GOING TO

 9        OFFER ALL OF THOSE.  SO IT WOULD BE SOME SUBSET OF THAT.

10                 THE COURT:  THERE'S 97 ON 24 SO I HOPE YOU'RE NOT

11        GOING TO USE ALL OF THOSE.

12            AND YOU'RE GOING TO INCLUDE IN THAT WHATEVER YOU WANT TO

13        USE IN YOUR OPENING.  SO WE MIGHT AS WELL HASH OUT ANY

14        CHALLENGE AS TO THAT AS WELL.

15                 MR. MCELHINNY:  I HADN'T THOUGHT ABOUT THE OPENING

16        YET, BUT OKAY.

17                 THE COURT:  SO YOU THINK THE SAMSUNG DOCUMENTS WOULD

18        BE MAYBE, WHAT, 40?

19                 MR. MCELHINNY:  HOW MANY?

20                 THE COURT:  SO 40 OR 50.

21                 MR. MCELHINNY:  I THINK 50.

22                 THE COURT:  LESS THAN THAT?

23                 MR. MCELHINNY:  WE DON'T HAVE TIME IN THIS TRIAL TO

24        OFFER 50 DOCUMENTS, YOUR HONOR.

25                 THE COURT:  GOOD.
```

1          MR. MCELHINNY:  I MEAN, THAT'S THE LIMITATION, YOUR

2     HONOR.  IF YOU'LL GIVE US A WEEK TO PROVE HOW CAREFULLY SAMSUNG

3     COPIED OUR PRODUCTS, WE WOULD LIKE TO HAVE THAT, BUT WE DON'T

4     HAVE THE TIME FOR THAT.

5          THE COURT:  WELL, I APPRECIATE THAT IT'S A VERY

6     NARROW SET.  AND WHAT ABOUT PROCESS OF DEVELOPMENT AND

7     NON-INFRINGING ALTERNATIVES?

8          THAT SEEMS LIKE ANOTHER POTENTIAL FLASH POINT.

9          MR. MCELHINNY:  I DON'T -- AT LEAST AS I UNDERSTAND

10    THE ISSUE I DON'T THINK THAT IT'S THE SAME LEVEL OF ISSUE.

11         THERE WAS TESTIMONY ABOUT NON-INFRINGING ALTERNATIVES AND

12    OUR OBJECTION IS NOT TO THAT.  OUR OBJECTION IS AS TO NEW

13    TESTIMONY THAT IS DONE.

14         THE SUBJECT CAME IN, IN THE ORIGINAL TRIAL, AND WE DON'T

15    HAVE A PROBLEM ABOUT THAT.

16         THE COURT:  WELL, LET ME ASK, I AM NOT GOING TO

17    ALLOW THE JURY VERDICT FOR PRODUCTS FOR WHICH INFRINGEMENT WAS

18    NOT FOUND TO BE ADDED AS A NEW NON-INFRINGING ALTERNATIVES

19    THEORY.  SO THAT'S OUT.

20         BUT SEPARATE FROM THAT I SENSE THAT THERE IS GOING TO BE

21    SOME FIGHT WHEN EITHER INTERNAL SAMSUNG ENGINEERS TALK ABOUT

22    THE DESIGN DEVELOPMENT OF THE PRODUCTS AND WHAT IS A

23    NON-INFRINGING ALTERNATIVE?  MY SENSE FROM THE BRIEFING IS THAT

24    IS ESSENTIALLY A FLASH POINT BETWEEN THE PARTIES.

25         MR. MCELHINNY:  ONLY BECAUSE IT DIDN'T HAPPEN IN THE

```
1        FIRST TRIAL.

2                 THE COURT:  AND THAT SAMSUNG WAS ALSO OPPOSED TO

3        APPLE'S DEVELOPMENT STORY; IS THAT RIGHT?

4                 MS. MAROULIS:  YES, YOUR HONOR.  IT IS NOT RELEVANT

5        TO ISSUES IN TRIAL, AND IT WOULD TAKE UP THE TIME OF THE COURT

6        AND IT WOULD CONFUSE THE JURY BECAUSE IT'S NOT RELEVANT TO THE

7        SPECIFIC FIVE PATENTS AT ISSUE AND HOW THEY WERE DEVELOPED

8        BECAUSE WE'RE GOING TO HAVE WITNESS AFTER WITNESS SORT OF

9        EXPLAINING THE SAME APPLE STORY, AND IT'S NOT RELEVANT TO

10       DAMAGES, AND IT WOULD BE PREJUDICIAL TO SAMSUNG.

11                MR. MCELHINNY:  THE CONTENTS OF THE INVESTMENT, THE

12       CONTENT OF THE RISK, THE CONCEPT OF THE WHAT VALUE THESE

13       PATENTS WERE AND HOW HARD THEY WERE TO COME BY GOES DIRECTLY TO

14       VALUE.  IT GOES DIRECTLY TO ROYALTY RATES.  IT GOES DIRECTLY TO

15       EVERY POSSIBLE ISSUE THAT YOU CAN THINK OF IN DAMAGES.

16          BUT, AGAIN, MS. MAROULIS AND HER STYLE KEEPS TALKING ABOUT

17       "I ONLY HAVE EIGHT HOURS."  I MEAN, I ONLY HAVE EIGHT HOURS.

18       SO WE'RE NOT GOING TO SPEND THREE HOURS ON THE DEVELOPMENT

19       STORY.

20          BUT WE ARE GOING TO TALK ABOUT THE FACT THAT APPLE TOOK A

21       HUGE RISK.  WE'RE GOING TO TALK ABOUT THE FACT THAT THESE ARE

22       CRITICAL INVENTIONS, AND THEY ARE CREDIBLY VALUABLE.  AND

23       THAT'S WHAT THIS CASE IS ABOUT.

24                MS. MAROULIS:  YOUR HONOR, NONE OF THE ISSUES JUST

25       COVERED BY COUNSEL ARE IN MS. DAVIS'S REPORT.  THERE'S NO
```

1 SPECIFIC DISCUSSION OF INVESTMENT OR RISKS.

2  THESE ARE NOT ISSUES THAT ARE SOMETHING THAT THE DAMAGES

3 EXPERT CAN DISCUSS.

4   MR. MCELHINNY:  NOW WE'RE CHANGING SUBJECTS.  I

5 DIDN'T SAY ANYTHING ABOUT MS. DAVIS.

6   THE COURT:  ALL RIGHT.  WELL, I DO THINK THAT

7 APPLE'S INVESTMENT IS RELEVANT TO DAMAGES.  SO THAT MOTION

8 WOULD BE DENIED.

9  BUT I DO HAVE A QUESTION WITH REGARD TO THE WITNESSES THAT

10 YOU'RE OBJECTING TO, YOU KNOW, THE SAMSUNG ENGINEERS.  WE CAN

11 TALK ABOUT PRODUCTS.  IT'S A LITTLE BIT UNCLEAR TO ME WHETHER

12 THEY WERE DISCLOSED TIMELY, WHETHER THEY WERE DISCLOSED FOR THE

13 SUBJECT MATTER FOR WHICH THEY WOULD BE TESTIFYING IN THIS

14 TRIAL.

15  THAT PART IS NOT CLEAR.  SO I THINK ON THIS SCORE I WOULD

16 LIKE TO HAVE SAMSUNG TO MAKE THE PROFFER OF WHAT IT IS THAT YOU

17 WANT YOUR DESIGN ENGINEERS AND EMPLOYEES TO TESTIFY AND, YOU

18 KNOW, PROVIDE EITHER THE DEPOSITION EXCERPT OR THE TRIAL

19 TESTIMONY IF THEY DID TESTIFY.

20   MR. MCELHINNY:  WHAT EXHIBITS THEY INTEND TO PUT IN?

21   THE COURT:  WHAT EXHIBITS AS WELL.

22  SO WHEN CAN YOU, WHEN CAN YOU FILE THAT?  I JUST DON'T

23 THINK THAT THERE IS SUFFICIENT INFORMATION IN THE MOTIONS TO

24 STRIKE EXHIBITS AND WITNESSES FOR ME TO MAKE AN INFORMED

25 DECISION RIGHT NOW SO.

```
1              MS. MAROULIS:  WE'LL DO IT AT THE SAME TIME THAT

2    APPLE FILES THEM.

3              THE COURT:  THAT'S FINE.  CAN YOU THEN TURN AROUND

4    YOUR RESPONSE, OKAY?

5              MR. MCELHINNY:  YES, YOUR HONOR.

6              THE COURT:  SO THEN SAMSUNG IS GOING TO PROVIDE THE

7    EXHIBITS, TESTIMONY, AND I WANT TO KNOW THE DISCLOSURES, BOTH

8    THE NAME OF THE WITNESS AND THE SUBJECT MATTER OF THEIR

9    TESTIMONY, FOR WHICH THEY WERE DISCLOSED REGARDING WHATEVER YOU

10   INTEND TO RAISE REGARDING NON-INFRINGING ALTERNATIVES AND THE

11   PROCESS OF DEVELOPMENT AT SAMSUNG, OKAY?

12             MS. MAROULIS:  YES, YOUR HONOR.

13             THE COURT:  ALL RIGHT.  HAVE WE HIT SORT OF THE MAIN

14   FLASH POINTS OR IS THERE SOMETHING ELSE THAT I'M MISSING?

15             MR. MCELHINNY:  I THINK NOW THAT I'M LOOKING AT

16   THIS, THIS MAY NOT BE IN THE SAME CATEGORY OF EVIDENTIARY BUT

17   WE DO HAVE THIS CLASH, THE LEGAL CLASH ABOUT WHAT IS THE

18   APPROPRIATE DATE, WHAT IS THE NOTICE DATE?

19             THE COURT:  YEAH, WE HAVE THAT.  WE'LL GET TO THAT.

20        JUST A HOUSEKEEPING, YOUR EXHIBIT NUMBERS THAT YOU'RE

21   USING ARE ALL THE SAME NUMBERS AS THE LAST TRIAL FROM LAST

22   YEAR, IS THAT RIGHT, BOTH SIDES ARE DOING THAT?

23             MS. MAROULIS:  YES, YOUR HONOR, WITH THE EXCEPTION

24   OF THE NEW EXHIBITS.  FOR EXAMPLE, EVERYTHING WE USED AGAINST

25   MS. DAVIS HAS A BRAND NEW NUMBER BUT OTHERWISE THEY'RE THE
```

1      SAME.

2              THE COURT:  THEY'RE THE SAME, ALL RIGHT.  AND LAST

3      TIME WHEN WE WERE TOGETHER IN AUGUST, THERE WAS A QUESTION OF

4      WHETHER OPENINGS WOULD BE 45 MINUTES AND THAT DEPENDED ON

5      MR. PRICE.

6              MR. PRICE:  WOW, SUCH POWER.  I WOULD PREFER AN

7      HOUR.

8              THE COURT:  THAT'S FINE.  ON YOUR MOTION FOR NEXT

9      WEEK ABOUT KEEPING WITNESSES THAT WERE PROPOSED TO TESTIFY BY

10     DEPOSITION TO THEIR DEPOSITION TOPICS THAT WERE IN THE

11     DESIGNATIONS, I'M GOING TO GRANT THAT.  I THINK WE SHOULD KEEP

12     THAT.

13         I'M ALSO GOING TO INSIST THAT IF YOU PREVIOUSLY SAID

14     SOMEONE WAS COMING LIVE, THEY WOULD COME LIVE.  IF YOU

15     PREVIOUSLY SAID THAT THEY ARE APPEARING BY DEPOSITION, THEY

16     WOULD APPEAR BY DEPOSITION.  I'D JUST LIKE TO KEEP EVERYTHING

17     THE SAME.

18         I'M NOT GOING TO ALLOW SWITCHING FROM VIDEO TO LIVE AND

19     LIVE TO VIDEO, AND I'M ALSO NOT GOING TO ALLOW USING THE OTHER

20     PARTY'S WITNESS LIST TO AUGMENT YOUR OWN.

21         DO YOU ALL WANT TO BE HEARD ON THAT?

22              MS. MAROULIS:  YES, YOUR HONOR.  IN OUR PAPERS WE

23     CITE A DECISION FROM A COUPLE OF COURTS SAYING THAT TO THE

24     EXTENT THAT THE OTHER SIDE IDENTIFIED A WITNESS AND THE WITNESS

25     WAS PROPERLY DISCLOSED IN DISCOVERY, WE COULD CALL THAT

1    WITNESS.

2         THERE'S A COUPLE OF WITNESSES WHERE WE RELIED ON APPLE'S

3    WITNESS LIST FROM THE LAST TIME.  SO IT'S CORRECT THAT THEY

4    WERE NOT DISCLOSED IN OUR LIST OF 50, BUT THEY WERE DISCLOSED

5    IN APPLE'S.  SO WE WOULD APPRECIATE THE COURT GIVING US AN

6    OPPORTUNITY TO CALL THOSE WITNESSES BECAUSE THEY WERE KNOWN,

7    THEY WERE DISCLOSED IN DISCOVERY, AND THEY WERE DISCLOSED IN

8    INITIAL DISCOVERY AND THEY APPEARED ON APPLE'S LIST.

9         MR. MCELHINNY:  ONE OF THE PROBLEMS IS THAT IT'S NOT

10   SYMMETRICAL, YOUR HONOR.  OUR WITNESSES LIVE HERE AND THEIR

11   WITNESSES LIVE IN KOREA.  SO IF IT ADOPTS THIS POSITION, IT

12   ONLY WORKS IN SAMSUNG'S FAVOR.  IF THEY HAD WANTED TO IDENTIFY

13   SOMEONE ON THE WITNESS LIST, THEY COULD HAVE PUT THEM ON THEIR

14   LIST, AND THEY DIDN'T.  AND THEY HAVE HAD MULTIPLE CHANCES.

15        MS. MAROULIS:  YOUR HONOR, PART OF THE ISSUE WAS THE

16   PROBLEM WE HAD WITH A VERY EXPANSIVE SCOPE OF THE CASE AND WE

17   HAD MULTIPLE PATENT TRADE DRESS AND A DEFENSIVE CASE AND LOTS

18   OF A VARIETY OF ISSUES.

19        AND SO WHEN WE HAD TO NARROW DOWN OUT LIST TO 50, WE HAD

20   TO PICK ONLY SO MANY TO COVER ALL OF THE BASES.  SO SOME OF THE

21   WITNESSES WERE EXCLUDED WHO OTHERWISE WOULD HAVE MADE THE LIST.

22   FOR EXAMPLE, FOR DAMAGES, WE WERE NOT PUT ON THE LIST BECAUSE

23   OF THE NEED TO COVER OTHER ISSUES IN THE CASE.

24        AND NOW WE HAVE A NARROW TRIAL.  AND WE CERTAINLY

25   UNDERSTAND THE RULING IF IT STANDS, BUT THERE WERE ONE OR TWO

1    WITNESSES THAT WERE ON APPLE'S LIST THAT WERE DEPOSED, AND THEY

2    WERE SAMSUNG EMPLOYEES.  THEY WERE NOT ON OUR LIST.  WE BELIEVE

3    THERE'S CASE LAW AUTHORITY TO SUPPORT US.

4         THE COURT:  WELL, I AM MAINTAINING MY RULING THAT

5    THE LIST AS THEY EXISTED LAST YEAR WILL CONTROL THIS YEAR, AND

6    I'M NOT GOING TO ALLOW ALTERATION OF THOSE LISTS NOW.

7         WHEN YOU SUBMIT -- WOULD YOU PLEASE SUBMIT FOR YOUR

8    FILINGS ON THE 13TH OF OCTOBER CAN YOU PROVIDE A -- WELL, FILE

9    WHAT YOU CAN, BUT I WOULD LIKE THE ACTUAL EXHIBITS AS WELL.  SO

10   THOSE PROBABLY SHOULD BE HAND DELIVERED, RIGHT, BECAUSE THEY'RE

11   GOING TO BE TOO VOLUMINOUS?

12        MS. MAROULIS:  YOUR HONOR, CAN WE LODGE SOMETHING,

13   YOUR HONOR, MONDAY MORNING?

14        THE COURT:  I GUESS YOU CAN DO THAT.  BUT I WOULD

15   LIKE ALL OF THE EXHIBITS AS WELL, OKAY.

16        MS. MAROULIS:  YOUR HONOR, MAY I ASK ABOUT THE

17   WITNESSES?  IS THIS THE COURT'S FINAL RULING OR WILL IT BE

18   VISITED ON NEXT THURSDAY BECAUSE WE HAVE NOT COVERED

19   DR. SUKAMAR, WHO IS PROBABLY IN A UNIQUE POSITION, AND I CAN

20   ADDRESS IT NOW OR WAIT UNTIL THURSDAY.

21        THE COURT:  LET'S WAIT ON DR. SUKAMAR.  I'M NOT

22   READY TO DISCUSS HIM FULLY TODAY.

23        MS. MAROULIS:  UNDERSTOOD.  THANK YOU.

24        THE COURT:  YOU KNOW, THE COURTHOUSE IS GOING TO BE

25   CLOSED ON MONDAY.  SO WE SHOULD PICK A TIME WHERE YOU'RE GOING

1          TO DROP THAT OFF THIS WEEKEND.

2                    MR. MCELHINNY:  IRONICALLY, YOUR HONOR, IT WOULD BE

3          EASIER FOR US TO LODGE WITH THE COURT A COMPLETE SET OF

4          EXHIBITS, YOU KNOW, WHICH EXHIBITS ARE AT ISSUE.  SO IF WE CAN

5          GIVE YOU A COMPLETE SET SO YOU HAVE ALL OF THE EXHIBITS THAT

6          WOULD BE EASIER.

7                    THE COURT:  YOU MEAN FOR THE WHOLE TRIAL OR DO YOU

8          MEAN JUST FOR WHAT YOU'RE SUBMITTING EARLY NEXT WEEK?

9                    MR. MCELHINNY:  I MEAN THE EXHIBITS THAT HAVE BEEN

10         IDENTIFIED FOR THE TRIAL.

11                   THE COURT:  THE WHOLE EXHIBITS FOR THE TRIAL?  DO

12         YOU HAVE THEM ALREADY?

13                   MR. MCELHINNY:  YES.

14                   THE COURT:  DO YOU ALREADY HAVE YOUR BINDERS OF

15         EXHIBITS?

16                   MS. MAROULIS:  THEY ARE NOT IN BINDERS, BUT WE'VE

17         EXCHANGED A SET OF EXHIBITS.  IT'S THE TOTAL UNIVERSE.

18                   THE COURT:  OH, ACTUALLY THAT WOULD EVEN BE BETTER.

19                   MR. MCELHINNY:  GREAT.

20                   THE COURT:  CAN YOU PROVIDE THAT?  IF IT'S GOING TO

21         BE IN RED WELLS, IT IS GOING TO BE MORE COMPLICATED FOR US.

22         CAN YOU PROVIDE THEM IN BINDER TOMORROW?

23             EACH PARTY PROVIDES ITS OWN SET OF EXHIBITS TO THE COURT

24         TOMORROW.  CAN YOU DO THAT?

25                   MR. MCELHINNY:  EXCUSE ME.  THE PERSON WHO ACTUALLY

```
1        HAS TO DO IT IS WRITING NOTES.  YES, YOUR HONOR.

2               THE COURT:  GREAT.  THANK YOU.  SO IF YOU WOULD HAVE

3        SOMEONE COME AND RING THE BELL NEXT TO MY NAME IN THE -- NEXT

4        TO THE DOOR IN BETWEEN THE ELEVATOR ON THIS FLOOR AND THEN

5        WE'LL COME AND GET THEM.

6               MS. KREVANS:  YOUR HONOR, LET ME ASK A QUESTION.  WE

7        GOT A REQUEST FROM MS. BROWN TODAY TO GET IN SOME OF THE

8        EXHIBITS ON PAPER.  CAN WE JUST GIVE THE FULL SET RATHER THAN

9        SOME TODAY AND SOME TOMORROW?  I THINK IT WOULD BE EASIER AND

10       MORE ORGANIZED.

11              THE COURT:  THAT'S FINE.

12              MS. KREVANS:  GREAT.

13              THE COURT:  IF YOU WOULD GIVE US -- THEN WHEN YOU

14       MAKE YOUR FILING ON SUNDAY, WE'LL HAVE THE EXHIBITS ALREADY.

15       OKAY.  THAT IS BETTER.  SO PLEASE DROP OFF THE TRIAL EXHIBITS

16       TOMORROW.

17              MS. KREVANS:  SINGLE SET OR MULTIPLE SETS?  WHATEVER

18       WORKS FOR THE COURT.

19              THE COURT:  WHAT IS THE VOLUME ON THIS?  I'M AFRAID

20       TO ASK.

21              MS. KREVANS:  IT'S NOT VERY BIG EXCEPT THERE ARE A

22       COUPLE ON EXHIBITS THAT ARE FILE STREAM ON SAMSUNG'S LIST THAT

23       ARE QUITE LARGE.

24              THE COURT:  SO ARE WE TALKING THREE BANKER'S BOXES?

25              MS. KREVANS:  PROBABLY.  PROBABLY.
```

```
 1                MS. MAROULIS:  I'M TOLD FIVE.

 2                THE COURT:  OKAY.  I'LL HAVE TO LOOK AT THESE ON THE

 3      STREET.  I DON'T THINK WE HAVE ROOM WITH ALL OF THE PAPER WE

 4      ALREADY HAVE.

 5           I GUESS JUST BRING ONE SET AND WE'LL ALL SHARE.  AND

 6      HOPEFULLY THIS WILL GET NARROWED DOWN AND I MAY EVEN RETURN

 7      THESE TO YOU.

 8           ALTHOUGH HOW ARE WE GOING TO DO THIS FOR APPEAL?  I GUESS

 9      ARE YOU GOING TO SUBMIT THE WHOLE SET TO THE CLERK'S OFFICE?

10                MS. KREVANS:  IF I COULD, WE EACH SUBMIT THE FULL

11      SETS NOW OF EXHIBITS THAT MAY BE OFFERED AND THEN AS WE GO

12      THROUGH THE TRIAL WE CAN REDUCE AND START CREATING WITH

13      MS. BROWN A BINDER SET OF EXHIBITS ADMITTED.

14           SO AT THE END OF THE TRIAL WE WOULD HAVE TO TAKE TO THE

15      JURY A SET OF EXHIBITS ADMITTED.

16           SO AT THE END OF THE TRIAL, WE WOULD TAKE TO THE JURY A

17      SET THAT HAS ACTUALLY BEEN ADMITTED, AND WE'LL, OF COURSE, HAVE

18      A RECORD OF EVERYTHING THAT HAS BEEN LODGED AS WELL.

19           AND I SO I THINK WE'LL BE COVERED ON EVERY BASIS.  WE'VE

20      ALSO FILED EXHIBIT LISTS TO HAVE ALL THESE DOCUMENTS IDENTIFIED

21      ONLINE.

22                THE COURT:  RIGHT.  I GUESS I'M JUST CONCERNED IF

23      YOU WANT APPEAL THE EXCLUSION OF A DOCUMENT THAT WAS NOT

24      ADMITTED, WILL THERE BE A RECORD IN THE CLERK'S OFFICE?

25                MS. MAROULIS:  LAST TIME, YOUR HONOR, WE FILED ALL
```

```
1        OF THE EXCLUDED EXHIBITS, BOTH PARTIES DID.

2                THE COURT:  OH, OKAY.  SO I DON'T HAVE TO WORRY

3        ABOUT WHAT YOU ARE GOING TO GIVE ME ON FRIDAY BEING THE

4        OFFICIAL SET.  WE'LL PASS AND MARK THEM UP.

5                MS. KREVANS:  WE'LL TAKE CARE OF THAT ON MONDAY.

6                MS. MAROULIS:  YOUR HONOR, WOULD THE COURT LIKE THE

7        PHYSICAL EXHIBIT AS WELL?

8                THE COURT:  IS THAT GOING TO BE IMPLICATED BY WHAT

9        YOU'RE FILING ON SUNDAY?

10               MR. MCELHINNY:  IT SHOULDN'T BE, YOUR HONOR.

11               MS. MAROULIS:  NO.

12               THE COURT:  BUT I THINK FOR NOW -- CAN YOU THINK OF

13       ANY REASON WHY WE WOULD NEED THEM FOR THESE MOTIONS?  I DON'T

14       THINK SO.

15               MS. MAROULIS:  NOT FOR THE ISSUES YOUR HONOR FLAGGED

16       THAT THE PARTIES ARE PUTTING PROFFERS TOGETHER.

17               THE COURT:  SO LET'S SAY NO FOR NOW, AND THAT'S

18       FINE.

19           IF YOU WOULD, CAN YOU INCLUDE A PHOTOGRAPH OF THE PHONE IN

20       THAT EXHIBIT NUMBER?

21               MS. MAROULIS:  YEAH.

22               THE COURT:  OKAY.  SO WE SOMEWHAT ADDRESSED THIS.

23       CAN I JUST CONFIRM THE FINAL EXHIBIT LIST THAT WAS GIVEN TO THE

24       JURY LAST TIME WAS ECF 1947?  IS THAT RIGHT?

25               MS. KREVANS:  WE'RE CHECKING, YOUR HONOR.
```

1              THE COURT:  BECAUSE THERE HAVE BEEN MANY THAT HAVE

2      BEEN FILED.

3              MS. MAROULIS:  YOUR HONOR, THAT'S THE VERDICT I'M

4      TOLD, BUT IT'S A DIFFERENT NUMBER.  WE'LL GET YOU THE NUMBER

5      SHORTLY.

6              THE COURT:  WELL, I MEAN, I HAVE THAT DOCUMENT AND

7      IT SAYS ECF 1947.  I'M ASSUMING THAT IT'S -- THIS IS WHAT THE

8      CLERK'S OFFICE HAS AS A FINAL EXHIBIT LIST.  I JUST WANT TO

9      CONFIRM IT.

10             MS. MAROULIS:  I'M TOLD IT'S 1889 BUT MAYBE AFTER

11     THE HEARING WE'LL RESEARCH.

12             THE COURT:  CAN YOU LOOK AT THAT ACTUALLY.  I HAD

13     THAT IN MY OWN PERSONAL BINDER AS THE FINAL AS WELL, BUT THE

14     CLERK'S OFFICE HAS 1947.

15             MS. MAROULIS:  THAT'S THE VERDICT FORM.

16             THE COURT:  WELL, MAYBE IT'S BOTH BECAUSE I DO HAVE

17     AN EXHIBIT LIST HERE THAT HAS THAT DOCUMENT NUMBER ON THE TOP.

18         SO YOU ALSO HAVE 18 --

19             MS. MAROULIS:  1889.

20             THE COURT:  OKAY.  THAT'S WHAT I HAD IN MY BINDERS

21     AS WELL.  CAN YOU FIND -- LOOK INTO THAT AND JUST LET ME KNOW

22     NEXT WEEK?

23             MS. MAROULIS:  YES, YOUR HONOR.

24             MS. KREVANS:  YES, YOUR HONOR.

25             THE COURT:  HOW DO YOU WANT TO HANDLE EXHIBITS THAT

1    WERE OFFERED FOR A LIMITED PURPOSE BUT DIDN'T DISCUSS DAMAGES

2    LAST TIME?

3         THIS HAS COME UP IN THE NON-INFRINGING ALTERNATIVE CONTEXT

4    IN SOME OF THE EARLY SAMSUNG PHONES.

5              MS. MAROULIS:  YOUR HONOR, WE MAY NEED TO DO IT ON A

6    CASE-BY-CASE BASIS.  WE'RE NOT SURE WHAT THE COURT IS REFERRING

7    TO RIGHT NOW.

8              THE COURT:  ALL RIGHT.  WELL, WHY DON'T WE -- WHEN

9    YOU SUBMIT YOUR EXHIBITS FOR NON-INFRINGING ALTERNATIVES AND

10   SAMSUNG ALTERNATIVE DEVELOPMENT, WHY DON'T YOU JUST INCLUDE IF

11   THERE WERE ANY EXHIBITS THAT WERE OFFERED FOR LIMITED PURPOSES

12   LAST TIME, IF YOU WOULD JUST IDENTIFY WHAT THE LIMITED PURPOSE

13   WAS.

14             MS. MAROULIS:  YES, YOUR HONOR.

15             THE COURT:  OKAY.  ALL RIGHT.  LET'S TALK ABOUT THE

16   DESCRIPTION OF THE PATENTS IN MS. DAVIS'S REPORT.  IF I REQUIRE

17   APPLE TO JUST USE THE DESCRIPTIONS THAT ARE IN MR. MUSIKA'S

18   REPORT, DO YOU HAVE ANY OBJECTION TO THAT?

19        I FIND THAT MR. MUSIKA'S DESCRIPTIONS IS CUED MORE CLOSELY

20   TO THE PATENT THEMSELVES, AND SHE'S KIND OF COLLOQUIALIZED

21   THEM.  SHE SAYS IT'S COVERED IN THE DEVICE NOW AND IT'S USED TO

22   COVER THE METHOD.

23        SHE HAS MADE IT -- I KIND OF AGREE WITH SAMSUNG, SHE HAS

24   MADE THE PATENTS BROADER.  I UNDERSTAND THAT SHE MAY HAVE BEEN

25   TRYING TO SIMPLIFY BUT NOW SHE SAYS ALL OF THE DEVICES THAT

```
 1      HAVE SNAPBACK ARE, FOR EXAMPLE, MUCH, MUCH MORE NARROW THAN

 2      WHAT --

 3              MR. MCELHINNY:  IN ANSWER TO YOUR HONOR'S QUESTIONS,

 4      WE HAVE NO OBJECTION TO THAT.

 5              THE COURT:  THANK YOU.  THAT WOULD ELIMINATE SOME

 6      UNNECESSARY FIGHTS HERE.

 7              MR. MCELHINNY:  BUT I WANT TO FLAG AN ISSUE FOR YOUR

 8      HONOR.

 9              THE COURT:  OKAY.  WHAT'S THAT?

10              MR. MCELHINNY:  NO REASONABLE EXPERT WOULD HAVE

11      SIMPLY SIGNED SOME OTHER EXPERT'S REPORT.  SO MS. DAVIS, WE DID

12      ALL OF THE WORK, AND AS YOU HAD SEEN HER REPORT IS DRAFTED IN

13      HER OWN WORDS, BUT SHE WAS SUBJECT TO LIMITATIONS FROM THE

14      COURT IN TERMS OF THE CONTENT OF HER OPINIONS.

15          AND SO WHAT I'M WORRYING ABOUT HERE IS THAT

16      CROSS-EXAMINATION COULD BE USED TO CLAIM THAT SHE DIDN'T DO

17      INDEPENDENT WORK OR DIDN'T STUDY THE PATENTS AND DIDN'T COME UP

18      WITH HER OWN.

19              THE COURT:  LET ME INTERRUPT YOU FOR ONE SECOND.

20      CAN I GET A STIPULATION THAT SAMSUNG IS NOT GOING TO

21      CROSS-EXAMINE MS. DAVIS ON WHY SHE'S USING MR. MUSIKA'S

22      DESCRIPTIONS OF THE PATENT?

23              MR. ALDEN:  YES.

24              THE COURT:  THAT TAKES CARE OF IT.

25              MR. MCELHINNY:  THANK YOU, YOUR HONOR.
```

```
 1            THE COURT:  IN APPLE'S OPPOSITION TO SAMSUNG'S

 2    MOTION IN LIMINE NUMBER 2, AGAIN, READING THIS, BUT IT SORT OF

 3    SEEMED LIKE APPLE WAS CLAIMING THAT THEY HAVE A RIGHT TO

 4    CONTRADICT TRIAL TESTIMONY REGARDING THE '381 CLAIM SCOPE?

 5        IS THAT RIGHT OR ARE YOU REALLY JUST TRYING TO NEGATE

 6    JUDICIAL ESTOPPEL?  IT FELT VERY SQUIRLY TO ME WHEN I WAS

 7    READING IT.

 8        ANYONE PREPARED TO ADDRESS THAT OR DO YOU WANT TO SAVE

 9    THAT ARE TO NEXT WEEK?

10            MR. MCELHINNY:  CAN WE SAVE THAT FOR NEXT WEEK?

11            THE COURT:  THAT'S FINE.  LET'S GO TO REGARDING

12    MS. DAVIS'S CAPACITY EXCLUSIONS, I AGREE WITH APPLE THAT SHE

13    SHOULD REFLECT THE NEW NOTICE DATES, BUT I DISAGREE WITH APPLE

14    AND AGREE WITH SAMSUNG IT'S NOT FAIR FOR HER TO NOW SAY THAT

15    ALL OF APPLE'S CAPACITY WOULD HAVE BEEN DEVOTED AND COMMITTED

16    JUST AS THIS NARROWEST SET OF PRODUCTS WHICH MAKES IT APPEAR

17    THAT APPLE HAD MORE CAPACITY THAN IT DID LAST TIME.

18        SO DO YOU UNDERSTAND THE DISTINCTIONS?  I AGREE WITH YOU

19    ON THE NOTICE DATES, BUT I DISAGREE AND I THINK IT'S A CHANGE

20    IN THE THEORY AND THE METHODOLOGY WHICH I'VE ALREADY PROHIBITED

21    TO NOW SAY WELL --

22            MR. MCELHINNY:  I'M GETTING AN EXHIBIT, YOUR HONOR.

23            THE COURT:  OKAY.

24            MR. MCELHINNY:  YOUR HONOR, I HAVE EXHIBIT 26S.  MAY

25    I HAND THAT UP TO YOU?
```

1          THE COURT:  YES.  MS. MAROULIS, DO YOU HAVE THIS?

2          MS. MAROULIS:  YES, IT'S BEEN HANDED UP.

3          THE COURT:  GO AHEAD.

4          MR. MCELHINNY:  JUST TO BE CLEAR WHAT MS. DAVIS DID,

5    WHEN WE CHANGED THE DATES, IT CHANGES TWO THINGS.  IT CHANGES

6    THE NUMBERS OF PHONES THAT WE'RE LOOKING AT, AND IT CHANGES THE

7    CALENDAR PERIOD AT WHICH THE SALES WOULD HAVE HAD TO BE MADE

8    BECAUSE OBVIOUSLY IT MOVES IT TO A DIFFERENT PART OF THE

9    CALENDAR THAN WE WERE USING THE LAST TIME.

10         THIS DOCUMENT, 26S, WAS OFFERED INTO EVIDENCE AND IT WAS

11   IN EVIDENCE AT THE FIRST TRIAL.  IT WAS USED BY MR. MUSIKA.  IT

12   SHOWS BOTH MANUFACTURING CAPACITY AND THE INVENTORY.

13         AND WHAT MS. DAVIS HAS DONE ESSENTIALLY IS JUST MOVED THE

14   DATES ON THIS DOCUMENT.

15         THE COURT:  BUT DIDN'T SHE HAVE TO REMOVE THE

16   PRODUCTS THAT ARE NOT PART OF THIS TRIAL?

17         MR. MCELHINNY:  SHE DID.

18         THE COURT:  OKAY.  SO THEN THAT MAKES APPLE'S

19   MANUFACTURING CAPACITY SEEM GREATER JUST BECAUSE IT'S A MORE

20   LIMITED NUMBER OF PRODUCTS THAT ARE THE SUBJECT OF THIS TRIAL.

21         MR. MCELHINNY:  WELL, FOR THE LIMITED PURPOSE OF

22   THIS TRIAL, IT MAKES THE NUMBER OF PRODUCTS THAT APPLE HAD TO

23   HAVE ON HAND SMALLER, YES, THAT'S RIGHT.

24         MS. MAROULIS:  YOUR HONOR, THE PROBLEM WITH THIS

25   ARGUMENT IS THAT MR. MUSIKA TESTIFIED THAT CAPACITY WAS ZERO

1    DURING TRIAL.  SO IT'S NOT THAT HE TESTIFIED IT WAS SMALL AND

2    NOW BECAUSE OF A DIFFERENT SALES PERIOD SOMEHOW THAT CAPACITY

3    CARRIES FOR MORE.  IF IT'S ZERO, IT CANNOT CHANGE AND THERE'S

4    STILL MORE CAPACITY.

5              MR. MCELHINNY:  I NEED TO BE HEARD ON THIS SPECIFIC

6    POINT BECAUSE THAT'S NOT CORRECT.

7         WHAT WE HAVE FROM THE EARLIER TRIAL IS THAT WE HAVE

8    MR. MUSIKA'S REPORT WHICH SAYS EXACTLY THE SAME THING AS

9    MS. DAVIS'S REPORT SAYS, AND IT HAS THE EXHIBIT THAT HE USED,

10   WHICH IS EXACTLY THE SAME EXHIBIT THAT MS. DAVIS IS USING.

11        AND WHAT WE HAVE IS A CROSS-EXAMINATION QUESTION IN A

12   CONTEXT OF MANUFACTURING CAPACITY ONLY AT A PARTICULAR TIME AS

13   TO A PARTICULAR NUMBER.

14        SO THIS IS -- WHAT THEY'RE TRYING TO DO IS THAT THEY'RE

15   TRYING TO SAY A QUESTION AND AN ANSWER IN CROSS-EXAMINATION

16   SOMEHOW TRUMPED EVERYTHING ELSE THAT MR. MUSIKA SAID AND

17   SPECIFICALLY TRUMPED WHAT HIS REPORT SAID AND WHAT THE EXHIBIT

18   SAID.

19              THE COURT:  OKAY.  BUT IS IT POSSIBLE TO CHANGE HER

20   CAPACITY AND CONCLUSION TO REFLECT THE CHANGED NOTICE DATES BUT

21   NOT TO INFLATE APPLE'S CAPACITY BECAUSE YOU'RE NOT HAVING TO

22   ASSUME MANUFACTURING OF THE OTHER PRODUCTS THAT ARE NOT PART OF

23   THIS TRIAL?

24              MR. MCELHINNY:  YES.  I MEAN, WE DON'T THINK THAT'S

25   THE RIGHT WAY TO DO IT FOR THIS TRIAL, BUT IF YOUR HONOR

```
 1      LIMITED US TO DOING THAT, WE CAN DO THAT.

 2             THE COURT:  DO YOU SEE WHAT I'M GETTING AT,

 3      MS. MAROULIS?  I AGREE THAT THEY SHOULDN'T BE ABLE TO INFLATE

 4      THE MANUFACTURING CAPACITY OF APPLE BY SAYING, WELL, WE WOULD

 5      NOW DEVOTE 100 PERCENT OF ALL OF OUR CAPACITY IN JUST THIS

 6      LIMITED SET OF PRODUCTS.

 7             MS. MAROULIS:  YOUR HONOR, THE PROBLEM WITH THAT IS

 8      IF THAT THEY HAD ZERO CAPACITY AND THIS EXHIBIT THAT COUNSEL

 9      JUST HANDED UP TO YOU HAS NO NUMBERS FOR THE RELEVANT PERIOD

10      SHOWING THAT IT'S ZERO, AND IN TESTIMONY MR. MUSIKA SAID, SO

11      BETWEEN JUNE OF 2010 THROUGH OCTOBER OF 2010 APPLE DID NOT HAVE

12      EXCESS SUPPLY OF THE IPHONE 4; CORRECT?

13          ANSWER:  THAT'S CORRECT.

14          THE PROBLEM IS THAT IT'S NOT THAT THEY CAN REALLOCATE

15      SMALL CAPACITY AMOUNT TO A LARGER GROUP OF PHONES.  THEY HAVE

16      MORE.  THEY STILL HAVE ZERO.

17          NOW, FOR THE FIRST TIME IN DEPOSITION MS. DAVIS SAYS THAT

18      THERE WAS SOME INVENTORY THAT SHE CANNOT RELY ON TO FILL THE

19      CAPACITY OF SPECIFICALLY IPHONE 4.

20             THE COURT:  I'M SORRY.  CAN YOU GIVE ME THE PAGE AND

21      LINE NUMBER FROM MR. MUSIKA.  THIS IS FROM THE TRIAL?

22             MS. MAROULIS:  YES, YOUR HONOR.  THERE ARE TWO

23      CITES.  ONE IS TRIAL TRANSCRIPT 2141, LINES 13 THROUGH 18; AND

24      2142, LINES 10 THROUGH 19 AND THAT QUOTE SAYS:

25          "QUESTION:  AND THIS IS A TIME WHEN APPLE COULDN'T EVEN
```

1      SERVICE ITS OWN CUSTOMERS FOR THE IPHONE 4; CORRECT?

2           "ANSWER:  WELL, YES, WITH THE IPHONE 4.  THEY HAVE

3      AVAILABLE IPHONES, BUT NOT THE IPHONE 4.

4                THE COURT:  IF YOU WANT TO RESPOND TO THAT?

5                MR. MCELHINNY:  I DO, YOUR HONOR.  I MEAN, THIS IS A

6      QUESTION OF CROSS-EXAMINATION.  I MEAN, IT'S A QUESTION OF THE

7      DOCUMENT SAYS WHAT IT SAYS, AND IT SHOWS CAPACITY AND IN THE

8      TOP CHARTS FOR THE TWO QUARTERS THAT WE'RE GOING TO BE TALKING

9      ABOUT AT THIS TRIAL.

10          AND IN THE CROSS-EXAMINATION THAT YOU WERE JUST SHOWN WHAT

11     MR. MUSIKA WAS TESTIFYING ABOUT WAS ABOUT THE DEPOSITION

12     TESTIMONY THAT SOME OTHER WITNESS GAVE AND WHAT IT SHOWED IN A

13     PARTICULAR CONTEXT, BUT HIS REPORT, THAT'S WHY WE GAVE YOU THE

14     REPORT, HIS REPORT IS IDENTICAL TO MS. DAVIS'S REPORT AND HIS

15     OPINION THAT HE GAVE.  AND THEY CAN DO THE SAME

16     CROSS-EXAMINATION, BUT THE DOCUMENTS REFLECT WHAT THEY REFLECT.

17               MS. MAROULIS:  YOUR HONOR, THEY NEVER PREVIOUSLY

18     RELIED ON THE INVENTORY LISTED ABOVE FROM THE FIRST SEVERAL

19     ROWS.  THEY'VE ALWAYS LOOKED TO THEIR LOCKED BOTTOM PLACES,

20     EXCESS AND CAPACITY.

21               MR. MCELHINNY:  THAT'S JUST WRONG.  THE DOCUMENT IS

22     IN EVIDENCE.  THE ENTIRE DOCUMENT --

23               MS. MAROULIS:  THE DOCUMENT WAS THERE.  THAT IS NOT

24     WHAT THE OPINION OF MR. MUSIKA WAS.  AND, IN FACT, WE DID NOT

25     DISCOVER THAT MS. DAVIS COMPLETELY CHANGED THE CAPACITY.  IT

```
1    WAS NOT UNTIL DEPOSITION WHEN IN QUESTIONING WE LEARNED THAT

2    SHE IS NOW RELYING ON THIS INVENTORY THAT THEY NEVER RELIED ON

3    BEFORE.

4           MR. MCELHINNY:  THEY DIDN'T DISCOVER IT BECAUSE, AS

5    REQUIRED BY THE COURT, THE OPINION THAT SHE EXPRESSED IS

6    IDENTICAL TO THE OPINION THAT MR. MUSIKA EXPRESSED IN HIS

7    REPORT.

8        AND THEY HAVE CROSS-EXAMINATION THAT THEY WANT TO CARRY

9    OUT ON HER, HAVE AT IT.  BUT THE OPINIONS THAT SHE EXPRESSED

10   ARE THE SAME.  THE TIME PERIOD HAS SHIFTED.  THE NUMBER OF

11   PHONES HAS BEEN REDUCED.  AND, AGAIN, WE DON'T KNOW HOW THE

12   JURY ATTRIBUTED CAPACITY ISSUES IN THE PRIOR VERDICT, BUT WE'RE

13   DEALING WITH A DIFFERENT NUMBER OF PHONES HERE.

14          MS. MAROULIS:  YOUR HONOR, WE NEVER HAD DISCOVERY

15   THIS ALLEGED INVENTORY THAT MS. DAVIS IS NOW RELYING ON.  IT

16   WOULD BE PROBABLY UNFAIR FOR US TO BE CONFRONTED WITH THIS

17   OPINION.

18          MR. MCELHINNY:  HOW CAN THEY SAY THAT?  IT WAS AN

19   EXHIBIT AT TRIAL AND IT WAS AN EXHIBIT TO HER REPORT.  THEY

20   HAVE TAKEN HER DEPOSITION.  HOW CAN A LAWYER STAND HERE --

21          THE COURT:  WHAT WAS THE TRIAL EXHIBIT NUMBER FOR

22   THIS DOCUMENT?

23          MR. MCELHINNY:  26 -- OH, THE TRIAL EXHIBIT?

24          THE COURT:  I DON'T THINK IT'S 26F.

25          MS. KREVANS:  IT'S PART OF EXHIBIT 25.
```

```
 1              MR. MCELHINNY:  PART OF EXHIBIT 25, YOUR HONOR.

 2              THE COURT:  IT WAS ADMITTED AT TRIAL?

 3              MR. MCELHINNY:  NO.  WHAT WAS THE EXHIBIT AT TRIAL?

 4              MS. KREVANS:  25A-1.

 5              MR. MCELHINNY:  25A-1.

 6              THE COURT:  DO YOU DISPUTE THAT IT WAS AN EXHIBIT

 7      ADMITTED AT TRIAL?

 8              MS. MAROULIS:  NO, YOUR HONOR.  THE EXHIBIT WAS

 9      ADMITTED IN FACT, BUT MS. DAVIS CHANGED MR. MUSIKA'S OPINION ON

10      CAPACITY AND INVENTORY AND IT'S A BRAND NEW OPINION.

11              MR. MCELHINNY:  WELL, IT'S BRAND NEW BECAUSE THE

12      DATE HAS CHANGED.

13              MS. MAROULIS:  NO, YOUR HONOR, THAT'S NOT THE CASE.

14         THERE'S NOTHING IN MUSIKA'S REPORT OR HIS TESTIMONY THAT

15      PUTS FORWARD THIS OPINION REGARDING INVENTORY AND FILLING IN

16      THE CAPACITY.  THERE ARE VERY CLEAR ADMISSIONS DURING TRIAL

17      THAT THERE WAS ZERO CAPACITY ON THE IPHONE 4.

18              MR. MCELHINNY:  TO BE CLEAR, THEY CAN HAVE THIS LINE

19      OF CROSS-EXAMINATION AND THEY CAN CROSS-EXAMINE THIS WITNESS

20      WITH MR. MUSIKA'S TESTIMONY.  THEY HAVE ALL OF THE FACTS.  THE

21      FACTS HAVE ALWAYS BEEN IN THE RECORD.  THE OPINIONS HAVE ALWAYS

22      BEEN IN THE RECORD.

23         WE'RE NOT ASKING TO ACCEPT HER OPINION ON IT.

24              THE COURT:  WELL, LET ME ASK IF I WERE TO ALLOW

25      MS. DAVIS TO REVISE HER CAPACITY CONCLUSION TO INCLUDE CHANGES
```

```
1     FROM THE NOTICE DATE CHANGING, BUT NOT ALLOWING HER TO VOTE ALL

2     OF APPLE'S MANUFACTURING CAPACITY TO THE PHONES THAT ARE IN

3     THIS CASE, WOULD YOU NEED ANOTHER DEPOSITION OR WHAT?

4              MS. MAROULIS:  LET ME CONSULT MY TEAM, YOUR HONOR,

5     BUT IT WOULD BE A NEW OPINION DEPARTURE FROM PRIOR ANALYSIS.

6              THE COURT:  BUT HOW WOULD YOU LIKE -- WOULD YOU WANT

7     THIS TO BE THE EXHIBIT THEN?  HOW WOULD YOU LIKE ME TO DEAL

8     WITH THIS?  I WANT PROBLEM SOLVING HERE.  I AGREE WITH YOU, SHE

9     SHOULDN'T BE ALLOWED TO USE MAXIMUM CAPACITY.

10             MS. MAROULIS:  SHE SHOULD NOT BE ABLE TO TESTIFY

11    THAT APPLE HAS CAPACITY NOW.  THIS EXHIBIT HAS ALREADY BEEN

12    ADMITTED SO WE CANNOT IN THIS PARTICULAR INSTANCE CHALLENGE

13    THIS PARTICULAR EXHIBIT, BUT SHE CANNOT GIVE OPINIONS THAT

14    APPLE HAD CAPACITY BECAUSE IT'S A MAJOR, MAJOR CHANGE FROM THE

15    LAST TRIAL.

16             THE COURT:  OKAY.  AND THIS EXHIBIT SAYS NO EXCESS

17    UNUSED CAPACITY FROM SECOND QUARTER FISCAL YEAR 2010 THROUGH

18    QUARTER ONE --

19             MS. MAROULIS:  YOUR HONOR, IT'S ROUGHLY JUNE THROUGH

20    OCTOBER OF 2010.

21             THE COURT:  SO IT'S Q3 AND Q4 OF FISCAL YEAR 2010?

22             MS. MAROULIS:  YES, YOUR HONOR.

23             THE COURT:  IT DOES SAY ZERO.

24             MR. MCELHINNY:  EXCUSE ME.  YOUR HONOR, YOU HAVE TO

25    LOOK AT -- DO I HAVE OTHER COPIES?
```

1          MS. KREVANS:  YES.

2          MR. MCELHINNY:  MAY I APPROACH, YOUR HONOR?

3          THE COURT:  YES.  DO YOU HAVE A COPY FOR

4    MS. MAROULIS?

5          MS. MAROULIS:  YES.

6          MR. MCELHINNY:  I GAVE A COPY.  THIS IS GOING TO BE

7    EVEN MORE COMPLEX.

8          THE COURT:  OH.

9          MR. MCELHINNY:  THIS IS ONE OF THE DOCUMENTS THAT

10   BOTH OF OUR EXPERTS RELIED.  IT WAS NOT MOVED INTO EVIDENCE,

11   BUT IT WAS NOT MOVED INTO EVIDENCE UNDER THE STIPULATION THAT

12   CONFIDENTIAL DOCUMENTS DIDN'T HAVE TO BE MOVED IN, BUT THE

13   SUFFICIENCY OF THE EVIDENCE WOULD NOT BE CHALLENGED.

14       AND YOU HAVE TO READ THE TWO DOCUMENTS TOGETHER.  AND AS

15   YOU SEE, WHEN YOU TAKE INTO ACCOUNT BEGINNING CAPACITY AND

16   EXCESS CAPACITY, IT SHOWS CAPACITY IN EVERY ONE, OF COURSE.

17   THAT'S WHAT THE OPINION IS.

18       I MEAN, WHAT WE'RE ASKING HER TO GIVE IS THE OPINION THAT

19   MR. MUSIKA AND SHE GAVE IN THEIR REPORTS.

20         MS. MAROULIS:  YOUR HONOR, IF I UNDERSTAND THE

21   EXHIBIT CORRECTLY IF YOU LOOK AT THE LINE CALLED ADDITIONAL

22   EXCESS CAPACITY.

23         THE COURT:  UH-HUH.

24         MS. MAROULIS:  COUNSEL, MAY I REFER TO THE ROW OR

25   NOT?

```
1            MR. MCELHINNY:  JUST DON'T READ THE NUMBERS.

2            MS. MAROULIS:  SO IF YOUR HONOR CAN TAKE A LOOK AT

3   ADDITIONAL EXCESS CAPACITY ROW AND LOOK FOR NUMBERS FOR JUNE,

4   JULY, AUGUST, SEPTEMBER, OCTOBER, NOVEMBER, AND DECEMBER, IT

5   CONFIRMS THE POINT I WAS MAKING EARLIER.

6            MR. MCELHINNY:  NO, IT DOESN'T, YOUR HONOR, BECAUSE

7   IT SHOWS THE BEGINNING CAPACITY AND IT SHOWS THE TOTAL

8   CAPACITY, AND THOSE ARE THE NUMBERS THAT OUR EXPERTS RELY ON.

9        THAT'S WHY THE CROSS-EXAMINATION AS TO THIS DOCUMENT WAS

10  PARTICULAR TO THIS DOCUMENT AND IN THE CONTEXT AND IT'S NOT --

11  IT DOESN'T CHALLENGE THE VALIDITY OF THE ENTIRE OPINION.

12           THE COURT:  AND THE CROSS-EXAMINATION WAS DURING

13  DEPOSITION?

14           MS. MAROULIS:  IT WAS IN TRIAL, YOUR HONOR.  THE

15  QUOTES THAT I READ FOR THE COURT WAS EXAMINATION AND TRIAL OF

16  MR. MUSIKA.  SO AT TRIAL HE ADMITTED ZERO CAPACITY.

17           THE COURT:  OKAY.  AND THIS WAS AS TO THE DOCUMENT

18  THAT WAS NOT ADMITTED AT TRIAL THOUGH?  YOU'RE SAYING HE WAS --

19           MR. MCELHINNY:  AND WITH THE DEPOSITION -- HE WAS

20  SHOWN AT THE DEPOSITION OF ANOTHER.  AND, AGAIN, I JUST WANT TO

21  MAKE SURE, THE ONLY QUESTION AT ALL WE WERE TALKING ABOUT AT

22  TRIAL AND EVEN IN THIS MOTION WAS IPHONE 4 CAPACITY.  THERE WAS

23  NO QUESTION ABOUT CAPACITY OF OTHER PHONES, NEVER CHALLENGED.

24           THE COURT:  IS THAT RIGHT, MS. MAROULIS?

25           MS. MAROULIS:  TO BE CLEAR, YOUR HONOR, MS. DAVIS
```

1    CHANGED HER OPINION ABOUT THE CAPACITY OF IPHONE 4.  SO THAT'S

2    THE OPINION THAT SHE IS CHANGING.

3              THE COURT:  ALL RIGHT.  AND TO -- AND YOU'RE SAYING

4    THAT CHANGE IS BEYOND REFLECTING THE CHANGE IN TIME PERIOD

5    BECAUSE OF THE NEW NOTICE DATES?

6              MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.

7              MR. MCELHINNY:  WELL, IT'S HER ARGUMENT.  WHAT

8    THEY'RE SAYING IS THAT SHE'S BOUND BY THE CROSS-EXAMINATION

9    QUESTION AND ANSWER THAT MR. MUSIKA GAVE.  THERE'S NO CHANGE

10   FROM REPORT TO REPORT OTHER THAN THE TIME DATES.

11             MS. MAROULIS:  MS. DAVIS IS BOUND BY OPINIONS AND

12   METHODOLOGY OF MR. MUSIKA EXPRESSED IN HIS REPORT, HIS

13   DEPOSITION, AND HIS TRIAL TESTIMONY.

14             THE COURT:  WELL, WITH HER ANSWERS SHE WAS ASKED THE

15   SAME QUESTION AS MR. MUSIKA DURING THE TRIAL BE THE SAME?

16             MS. MAROULIS:  NOT THE WAY WE UNDERSTAND IT.  SHE

17   WOULD SAY, YES, THERE WAS CAPACITY BASED ON DEPOSITION.

18             MR. MCELHINNY:  IF SHE WAS ASKED THE QUESTION ABOUT

19   WHETHER THE NUMBER AT THAT LINE IS ZERO, WHICH IS WHAT WE THINK

20   MR. MUSIKA WAS ASKED, HER ANSWER WOULD BE THE SAME, THE NUMBER

21   AT THAT LINE IS ZERO.

22         BUT THAT WASN'T -- THIS IS ONE QUESTION.  THAT WAS NOT HIS

23   OPINION.  THAT WAS NOT THE BASIS FOR HIS OPINION THAT THERE WAS

24   CAPACITY.

25             MR. MUSIKA ULTIMATELY TESTIFIED THAT THERE WAS CAPACITY.

```
 1        THAT WAS HIS TESTIMONY.

 2             THE COURT:  ALL RIGHT.  WE'LL HAVE TO GO BACK AND

 3        LOOK AT THAT CLOSELY.

 4        LET ME LOOK -- REMIND ME, WHAT WAS THE -- I KNOW THAT

 5        SAMSUNG OPPOSED THE MEETINGS IN 2010 AS THE NOTICE DATES FOR

 6        ALL OF THE IP, BUT WHAT ARE THE SPECIFIC DATES THAT SAMSUNG

 7        WANTED?  DO YOU REMEMBER?

 8             MS. MAROULIS:  YOUR HONOR, OUR POSITION WAS THAT AS

 9        TO ONE PATENT, THE '381 PATENT, IT WAS AUGUST 2010 AND AS TO

10        EVERYTHING ELSE IT WAS EITHER THE DATE OF THE FILING OF THE

11        PLEADING IN WHICH THAT PRODUCT WAS IDENTIFIED BY PATENT OR IN

12        SOME INSTANCES IN AMENDED PLEADING BECAUSE THAT WOULD BE THE

13        FIRST TIME THAT THE DEAL OR PRODUCT WERE MATCHED UP.  SO NOTICE

14        REQUIRES SPECIFICITY AS TO BOTH PRODUCT AND PATENT.

15             THE COURT:  SO I GUESS THAT'S THE ONE I'M UNCLEAR

16        ON.

17             MR. MCELHINNY:  IN THE NEW TRIAL MOTION FOR THE D, I

18        THINK, '305 PATENT, WHICH WE'RE TALKING ABOUT, THEY

19        SPECIFICALLY SAID IN THEIR PAPERS THAT THE CORRECT DATE WAS

20        APRIL 15TH, YOUR HONOR.  AND WE CITED THAT, I THINK, IN OUR

21        PAPERS TO THE PAGE AND LINE.

22             THE COURT:  WELL, THAT'S WHAT I'M GOING TO REQUIRE,

23        BUT I'M STILL TRYING TO UNDERSTAND.

24        ARE YOU SAYING THAT, YOU KNOW, THE APRIL 2011 COMPLAINT,

25        YOU KNOW, SAYS SAMSUNG GALAXY SMARTPHONE.  YOU'RE SAYING THAT
```

```
 1      IS AN INSUFFICIENT IDENTIFICATION OF THE PRODUCT AND THEY NEED

 2      TO SAY INFUSE 4G?  IS THAT SAMSUNG'S POSITION?  I'M NOT CLEAR.

 3              MS. MAROULIS:  YOUR HONOR, IF IT WASN'T IDENTIFIED

 4      IN THE FIRST COMPLAINT, IT WAS IDENTIFIED IN THE SECOND BUT

 5      THAT WAS OUR POSITION, YES.

 6          IF SOMETHING IS IDENTIFIED AS GALAXY S, WHICH IS A FAMILY

 7      OF PRODUCTS, BUT INFUSE 4G WAS ADDED AT A LATER PLEADING, THAT

 8      IS WHEN THE NOTICE TRIGGERS.

 9          BECAUSE THE COURT'S STATES IN THE MARCH 1 ORDER WHICH SAID

10      THAT THE NOTICE DATE WOULD BE NO EARLIER THAN THE FILING DATE,

11      BUT FOR SOME OF THE PRODUCTS, IDENTIFICATION BY PATENT AND BY

12      PRODUCT DID NOT OCCUR UNTIL AMENDED PLEADING.

13              THE COURT:  DO YOU HAVE A CASE THAT SAYS THAT THE

14      PRODUCT HAS TO BE IDENTIFIED SPECIFICALLY BY NAME?  BECAUSE THE

15      NOTICE IS WHEN THE PATENT IS IDENTIFIED.

16              MS. MAROULIS:  YOUR HONOR, I BELIEVE THERE WAS SUCH

17      A CASE, BUT I DON'T HAVE IT HANDY.  IF I COULD FIND IT SHORTLY

18      WE WILL --

19              MR. MCELHINNY:  MAY I GIVE YOU A CONTRARY CASE

20      DIRECTLY ON POINT?  IN FUNAI ELECTRIC COMPANY VERSUS DAEWOO,

21      D-A-E-W-O-O, AT 616 F.3D 1357 DECIDED IN 2010, AT PAGE 11 OF

22      THE TYPED -- I CAN'T FIGURE OUT THE ACTUAL PAGE.  THE COURT

23      DEALS EXACTLY WITH THIS ISSUE, AND THE LAW IS THAT THE ORIGINAL

24      NOTICE, AS YOUR HONOR HAS RULED, HAS TO BE SPECIFIC SO AS TO

25      IDENTIFY THE PATENTS AND PRODUCTS.  THAT'S A SPECIFICITY
```

1    REQUIREMENT.

2         BUT THEN THE COURT SAID, "HOWEVER, WHEN THE THRESHOLD

3    SPECIFICITY IS MET, THE ENSUING DISCOVERY OF OTHER MODELS AND

4    RELATED PRODUCTS MAY BRING THOSE PRODUCTS WITHIN THE SCOPE OF

5    NOTICE."

6         SO YOU DON'T GET WHAT SAMSUNG SAYS IS, OH, YEAH, I KNEW I

7    WAS INFRINGING AS TO THE GALAXY LINE BUT THEN I INTRODUCED THIS

8    ONE AND THIS ONE AND THIS ONE AND I NEEDED NEW NOTICE EACH

9    TIME.  AND THAT'S INCORRECT.

10        EVEN IF THEY HADN'T TOLD THE COURT AND EVEN IF THE COURT

11   HADN'T ALREADY RULED GIVING THEM EXACTLY THE DATE THEY ASKED

12   FOR, THEY'RE WRONG ON THIS ISSUE AS A MATTER OF LAW.

13             MS. MAROULIS:  YOUR HONOR, IF I MAY PROVIDE THE

14   CITE.  IT'S CALLED GART, G-A-R-T, VERSUS LOGITECH,

15   L-O-G-I-T-E-C-H, 254 F.3D 1334, PIN CITE 1335, FEDERAL CIRCUIT

16   2001.  AND I'M SORRY, YOUR HONOR, I CANNOT PROVIDE THE EXACT

17   FACTS OF THE CASE.  I DON'T HAVE IT HANDY.

18             THE COURT:  OKAY.

19             MS. MAROULIS:  BUT MY TEAM INFORMS ME THAT THEY SAY

20   THAT'S THE CASE THAT YOU HAVE TO DEFINE, IDENTIFY PRODUCTS BY

21   IDENTIFYING THEM BY PATENT AND PRODUCT NUMBER.

22             THE COURT:  IT JUST SEEMS LIKE THAT WOULD BE

23   CONTRARY TO PATENT MARKETING.  IT'S JUST NOTICE IS WHEN THE

24   PATENTEE HAS IDENTIFIED AND NOT ALL THESE OTHER ISSUES AND

25   PRODUCTS ARE IDENTIFIED, AND THAT'S NOT HOW WE SORT OF RUN OUR

1        PATENT CASES HERE.

2             IF YOU SAID, OH, THERE'S NO NOTICE UNTIL THE INFRINGEMENT

3        CONTENTIONS ARE SERVED AND EVERY SINGLE MODEL IS IDENTIFIED,

4        THAT WOULD BE SORT OF CONTRARY TO HOW THEY DO THINGS IN THE

5        DISTRICTS THAT HAVE NO INFRINGEMENT CONTENTIONS WOULD SAY THAT

6        THERE'S BEEN NO NOTICE UNTIL SOME LATER POINT WHEN ALL OF THE

7        DIFFERENT MODELS ARE IDENTIFIED AND INTERROGATORY RESPONSE OR

8        SOMETHING LIKE THAT.  IT'S JUST -- ANYWAY.

9             MS. MAROULIS:  YOUR HONOR, IF I RECALL CORRECTLY,

10       THERE WERE FAMILIES OF PRODUCTS BUT THERE WERE ALSO SOME

11       PRODUCTS OUTSIDE OF THE GALAXY FAMILY.  SO AT LEAST AS TO THOSE

12       PRODUCTS IT WOULD NEED TO BE A DIFFERENT DATE.

13            ANOTHER CASE THAT ADDRESSES THIS ISSUE IS AMSTED

14       INDUSTRIES VERSUS BUCKEYE STEEL CASTINGS, 24 F.3D 178, 187,

15       FEDERAL CIRCUIT 1994.

16            THE COURT:  I'M SORRY?  AMSTED VERSUS WHOM?

17            MS. MAROULIS:  BUCKEYE STEEL CASTINGS, 24 F.3D 178,

18       AT PAGE 187, FEDERAL CIRCUIT 1994.

19            "ACTUAL NOTICE REQUIRES THE AFFIRMATIVE COMMUNICATION OF A

20       SPECIFIC CHARGE OF INFRINGEMENT BY A SPECIFIC ACCUSED PRODUCT

21       OR DEVICE."

22            THE COURT:  SO HOW ARE YOU -- YOU'RE ONLY OBJECTING

23       TO THE NOTICE DATE FOR INFUSE 4G, RIGHT?  I DIDN'T SEE THAT YOU

24       WERE ACTUALLY DISPUTING AS TO ANY OTHER PRODUCT.

25            MS. MAROULIS:  ONE MINUTE, YOUR HONOR.  I'M SORRY.

1          THE COURT:  OKAY.  NO PROBLEM.

2          MS. MAROULIS:  I'M GOING TO LET ME PARTNER MR. ALDEN

3     EXPRESS OUR POSITION.

4          THE COURT:  SURE.  PLEASE.

5          MR. ALDEN:  GOOD AFTERNOON, YOUR HONOR.  SO

6     MR. WAGNER HAS PREPARED CALCULATIONS THAT ARE JUST APPLE'S

7     CLAIMED DAMAGES ON THE BASIS OF WHETHER THE PRODUCT WAS

8     IDENTIFIED IN THE -- DEPENDING ON WHERE AND IN WHICH COMPLAINT

9     THE PRODUCT WAS IDENTIFIED.  SO IT'S NOT JUST AN ISSUE OF THE

10    INFUSE 4G.

11         WITH RESPECT TO MR. WAGNER'S AFFIRMATIVE CALCULATIONS THAT

12    HE'S OFFERING IN TERMS OF APPLE'S CLAIMED DAMAGES, IT IS ONLY

13    THE INFUSE 4G THAT IS IMPACTED BUT INSOFAR AS MR. WAGNER SAYS,

14    WELL, MS. DAVIS ACTUALLY GOT THE NOTICE DATES WRONG BECAUSE SHE

15    DIDN'T TAKE INTO ACCOUNT THE FACT THAT SOME PRODUCTS WERE NOT

16    IDENTIFIED UNTIL THE AMENDED COMPLAINT, HE PROVIDES ALTERNATIVE

17    CALCULATIONS THAT, IN FACT, DO ADJUST HER CALCULATIONS

18    DEPENDING ON WHEN THE SPECIFIC PRODUCT WAS IDENTIFIED IN THE

19    COMPLAINT.

20         THE COURT:  HOW COME YOU DIDN'T RAISE THIS IN YOUR

21    POST-TRIAL MOTIONS?

22         MR. MCELHINNY:  THEY DID.

23         THE COURT:  THEY DID?

24         MR. MCELHINNY:  THEY DID.  WELL, LET'S BE CLEAR,

25    LET'S BE CLEAR.  IN THEIR POST-TRIAL MOTION AT PAGE 25, THEY

```
1     SAY, "MR. MUSIKA'S CALCULATION OF SAMSUNG'S PROFITS ON THESE

2     PHONES AFTER ADJUSTMENT FOR THE CORRECT NOTICE DATES, BASED ON

3     THE FILING OF THE COMPLAINT FOR THE D677 AND THE AMENDED

4     COMPLAINT FOR D087 AND D0305," AND THEY CITE TO THE WAGNER

5     DECLARATION THAT THEY SUBMITTED IN SUPPORT AT PARAGRAPH 27.

6          AND PARAGRAPH 27 MR. WAGNER SETS OUT A CHART FOR EACH OF

7     THE PRODUCTS AND SAYS HERE IS THE CORRECT NOTICE DATE.

8          AND THE CORRECT NOTICE DATE THAT HE GIVES FOR THE INFUSED

9     4G IS -- NOW I'M TRYING TO FIND IT.

10          THE COURT:  WHAT I'M SAYING IS THAT THEY DID NOT

11    RAISE THAT THEY WANTED THE NOTICE DATE TO BE OFF OF WHEN A

12    PRODUCT WAS SPECIFICALLY IDENTIFIED BY NAME AND MODEL NUMBER.

13          MR. MCELHINNY:  WELL, THEY GAVE YOU A CHART WITH PER

14    PRODUCT.  BUT THEIR LEGAL ARGUMENT IS ALSO JUST WRONG.  THE

15    FUNAI CASE, WHICH I CITED TO YOU, WHEN YOU HAVE A CHANCE TO

16    LOOK AT IT.  I DIDN'T READ YOU THE WHOLE THING INTERMINABLY.

17          BUT IT SAYS WHAT THE GENERAL RULE IS, IT CITES THE GART

18    CASE, WHICH THEY CITED TO YOU, AND IT THEN SAYS WHAT HAS TO BE

19    IN A LETTER AND IT CITES THE AMSTED INDUSTRY CASES WHICH THEY

20    JUST CITED TO YOU.

21          AND THEN IT SAYS BUT ONCE YOU HAVE GIVEN NOTICE AS TO A

22    PRODUCT OR A CATEGORY OF PRODUCTS, RELATED PRODUCTS COME IN

23    UNDER THAT NOTICE.  AS YOUR HONOR SAYS, THIS IS THE ONLY THING

24    THAT MAKES SENSE.

25          THE COURT:  WELL, WE DO NEED TO TAKE A BREAK.  LET
```

```
 1        ME ASK BEFORE WE TAKE A BREAK, ARE YOUR CLIENTS STILL TALKING,

 2        OR WHAT IS HAPPENING?

 3               MR. MCELHINNY:  NOTHING NEW TO REPORT.

 4               THE COURT:  NOTHING?  THAT MEANS NO NEW

 5        COMMUNICATIONS?

 6               MR. MCELHINNY:  I HAVE NO INFORMATION OF ANYTHING

 7        NEW, YOUR HONOR.

 8               THE COURT:  ALL RIGHT.  WELL, I'M GOING TO SET A

 9        DEADLINE BY WHICH YOU HAVE TO FILE A STIPULATION OF DISMISSAL

10        AND IF IT'S NOT DONE BY THIS DATE, I MEAN, IF YOU'RE GOING TO

11        SETTLE.  IF YOU'RE NOT GOING TO SETTLE, OBVIOUSLY WE'RE ALL SET

12        TO START.

13               MR. MCELHINNY:  JUST A MINUTE, YOUR HONOR.

14               THE COURT:  IF I COULD HAVE DONE THIS BY FIAT, IT

15        WOULD HAVE BEEN DONE YEARS AGO, OKAY.

16               MS. MAROULIS:  IT SOUNDED GOOD.

17               MR. MCELHINNY:  THINK OF US AS BOTH BEING ESSENTIAL.

18               THE COURT:  HUH?

19               MR. MCELHINNY:  THINK OF US AS BOTH BEING ESSENTIAL.

20               THE COURT:  NO.  WHAT I WAS GOING TO SAY THOUGH I DO

21        NEED TO, WITH OUR GOVERNMENT SEQUESTRATION SHUTDOWN AND

22        WHATNOT, IF THE STIPULATION OF DISMISSAL IS NOT FILED BY 3:00

23        P.M. ON FRIDAY, NOVEMBER 8TH, I WILL HAVE TO CHARGE THE PARTIES

24        THE FEES FOR THE JURORS WHO DO SHOW UP ON THE 12TH, THEIR

25        PARKING AND THEIR MILEAGE.
```

1        NOW, THIS IS PROBABLY NOT ANYTHING TO YOUR COMPANY'S, BUT

2    I DO JUST WANT TO PUT YOU ON NOTICE THAT IF THEY ARE GOING TO,

3    THEY WOULD PLEASE LET US KNOW BY 3:00 P.M. THE FRIDAY BEFORE SO

4    WE DON'T HAVE TO HAVE PEOPLE DRIVING IN FROM MONTEREY AND

5    SALINAS AND THEN BEING TOLD TO GO BACK HOME.

6        MR. MCELHINNY:  WE UNDERSTAND THAT, YOUR HONOR, AND

7    ACTUALLY APPRECIATE THAT.

8        MS. MAROULIS:  ALL RIGHT.

9        THE COURT:  I'M NOT AT ALL CONCERNED THAT YOUR

10   COMPANIES CANNOT AFFORD THAT.  IT'S A SMALL AMOUNT.

11       ALL RIGHT.  LET'S GO AHEAD AND TAKE OUR BREAK.  LET'S

12   BREAK UNTIL 3:30.

13       MR. MCELHINNY:  THANK YOU, YOUR HONOR.

14       MS. MAROULIS:  THANK YOU, YOUR HONOR.

15       THE COURT:  OKAY.  THANK YOU.

16   (RECESS FROM 3:19 P.M. UNTIL 3:41 P.M.)

17       THE COURT:  WELCOME BACK AND THANK YOU.

18       PLEASE TAKE A SEAT.

19       LET'S CONTINUE WITH THIS, I GUESS, TWO ISSUES.

20       WELL, LET'S KEEP TALKING ABOUT THE QUESTION OF THE NOTICE

21   PERIOD.  IS THE GALAXY FAMILY OF PHONES OR THE GALAXY S FAMILY

22   OF PHONES?

23       WHAT DOES THE APRIL 2011 COMPLAINT HAVE?

24       MS. MAROULIS:  THERE'S A GALAXY 2 FAMILY.  I THINK

25   THAT'S WHERE THE NOTICE ISSUES ARE RELATED TO.

```
 1                    THE COURT:  YOU'RE SAYING INFUSE 4G IS NOT PART OF

 2       THE GALAXY FAMILY OF PHONES?

 3                    MS. MAROULIS:  IT IS PART OF THE GALAXY.

 4                    THE COURT:  SO I GUESS I'M UNCLEAR IF THE COMPLAINT

 5       SAYS THE GALAXY LINE OF PHONES, WHICH IS I THINK WHAT THE

 6       APRIL 2011 COMPLAINT SAYS, I GUESS I'M UNCLEAR ON WHY THAT IS

 7       NOT SUFFICIENT NOTICE.

 8              CAN YOU --

 9                    MR. MCELHINNY:  WE'RE NOT FINDING THE COMPLAINT.

10                    THE COURT:  I'M SORRY?

11                    MR. MCELHINNY:  WE'RE NOT FINDING THE COMPLAINT.

12                    THE COURT:  THAT'S FINE.  IS IT YOUR POSITION THAT

13       NONE OF THE -- THAT SOME OF THE ACCUSED PHONES ARE NOT PART OF

14       THE GALAXY LINE?  I THOUGHT THEY WERE ALL PART OF THE GALAXY

15       LINE?

16                    MS. MAROULIS:  NO, YOUR HONOR.  SOME OF THEM ARE NOT

17       PART OF THE GALAXY S2 FAMILY.

18                    THE COURT:  OKAY.  BUT HOW ARE YOU DEFINING?

19       BECAUSE I DON'T THINK THAT THE ORIGINAL COMPLAINT NARROWED IT

20       DOWN TO -- WELL, WHAT IS APPLE'S ALLEGATION?  IS IT THE GALAXY

21       FAMILY OF PHONES?  GALAXY S?  GALAXY S1?  GALAXY S2?

22              WHAT IS YOUR -- FOR PURPOSES OF GIVING NOTICE TO SAMSUNG,

23       WHAT IS IT THAT YOU HAVE GIVEN NOTICE?

24                    MR. MCELHINNY:  WE'RE LOOKING FOR THE COMPLAINT.

25                    THE COURT:  MAYBE WE'LL HAVE TO RESERVE THIS FOR --
```

```
1    MAYBE WE'LL NEED TO RESERVE THIS FOR NEXT WEEK.  BUT DO YOU SEE

2    WHAT MY ISSUE IS?

3         I'M TRYING TO FIGURE OUT WHAT EXACTLY DID THE APRIL 2011

4    COMPLAINT IDENTIFY AS THE ACCUSED PRODUCTS.  AND IS THAT

5    SUFFICIENT TO INCLUDE ALL OF THE ACCUSED PRODUCTS THAT ARE IN

6    THIS CASE?

7         ORIGINALLY I WAS NOT GOING TO ALLOW SAMSUNG TO ARGUE FOR A

8    DIFFERENT DATE, BUT I'M NOW, YOU KNOW, IF FUNAI IS THE BEST

9    THAT YOU HAVE, THEN I'M NOT --

10             MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  THE BEST WE

11   HAVE WAS THAT THEY FILED A DECLARATION BEFORE YOUR HONOR ON A

12   MOTION IN WHICH THEY SAID THAT THEY HAD NOTICE AS OF THAT DATE.

13             MS. MAROULIS:  I DON'T THINK THAT'S CORRECT, YOUR

14   HONOR.

15             MR. MCELHINNY:  THAT'S WHAT WAGNER SAYS, AS OF THE

16   DATE OF THE FILING OF THE COMPLAINT THAT IS THE CORRECT DATE

17   FOR THE INFUSE 4G, THAT'S WHAT HE SAID.

18        AND BASED ON THAT YOUR HONOR ISSUED AN ORDER SAYING HERE

19   ARE THE CORRECT DATES.  THERE WAS NO MOTION TO CORRECT THAT.

20   THERE WAS NO THIS IS A MISTAKE OR NOTHING.  I MEAN, WE'RE

21   WORKING ON A RECORD HERE THAT THEY HAVE CREATED.

22             THE COURT:  WELL, YOU SEE, THAT'S WHAT I WAS ASKING.

23             MR. ALDEN:  THAT'S NOT TRUE.

24             THE COURT:  I THOUGHT FOR THE PRETRIAL MOTION THE

25   FIGHT WAS OVER WHAT WAS THE EARLIEST POSSIBLE DATE.  I DON'T
```

```
1    KNOW IF THERE WAS AN EXPLICIT DISPUTE AS TO WHAT WAS THE ACTUAL

2    DATE.

3              MR. MCELHINNY:  THE LANGUAGE YOUR HONOR USED WAS THE

4    EARLIEST POSSIBLE DATE SUPPORTED BY THE EVIDENCE AND THEN IN

5    YOUR ORDER IT SAYS THESE ARE THE DATES, THE NOTICE DATES.

6              THE COURT:  YEAH.  AND I DON'T RECALL SAMSUNG

7    RAISING THIS ISSUE EXPLICITLY THAT IT HAS TO BE BY PRODUCT

8    MODEL NAME.  IT WASN'T -- IT WAS CERTAINLY NOT PART OF THE

9    POST-TRIAL MOTIONS.

10             MR. MCELHINNY:  THEY SUBMITTED A DECLARATION, THEY

11   SUBMITTED A DECLARATION THAT GOES PRODUCT BY PRODUCT THAT SAYS

12   FOR THE INFUSE 4G THAT THE CORRECT DATE IS THE DATE OF THE

13   FILING OF THE COMPLAINT.

14             THE COURT:  AND WHAT DECLARATION IS THAT?

15             MR. MCELHINNY:  THAT'S THE WAGNER DECLARATION,

16   PARAGRAPH 27 IN SUPPORT OF THEIR JMOL MOTION.  I HAVE A COPY.

17   I CAN SHOW IT TO YOU.

18             THE COURT:  JMOL ON?

19             MR. MCELHINNY:  DAMAGES.

20             THE COURT:  DO YOU HAVE IT?

21             MR. MCELHINNY:  YES, YOUR HONOR.

22             THE COURT:  AND CAN YOU SHOW IT TO MS. MAROULIS

23   FIRST, PLEASE?

24             MS. MAROULIS:  YOUR HONOR, THE DECLARATION I HAVE

25   SHOWN YOU DOES NOT SAY THAT THOSE ARE THE CORRECT DATES.  IT
```

```
1    SAYS THAT I HAVE BEEN ASKED TO ASSUME THAT THE EARLIEST NOTICE

2    SAMSUNG RECEIVED ON '915 AND '677 PATENTS AND APPLE'S

3    REGISTERED TRADE DRESS WAS APPLE'S FILING OF THE APRIL 15TH

4    COMPLAINT.

5        IT IS NOT THAT MR. WAGNER PROFFERED THOSE DATES AS CORRECT

6    DATES.  HE SAID HE WAS ASKED TO ASSUME THAT.

7        AND MR. ALDEN WILL ADDRESS SPECIFICS, BUT GENERALLY THE

8    ISSUE BEFORE THE COURT ON JMOL WAS AS A MATTER OF LAW WHAT IS

9    THE EARLIEST DATE THAT APPLE COULD BE HELD TO HAVE HAD NOTICE.

10           THE COURT:  ALL RIGHT.  OKAY.  WELL, WHY DON'T WE DO

11   THIS, JUST GIVE ME YOUR BEST CITATIONS AND THEN I'LL TAKE IT

12   UNDER ADVISEMENT.

13           MR. MCELHINNY:  I HAVE THE PAGE FROM THE JMOL BRIEF

14   AND THE SUPPORTING WAGNER DECLARATION.

15           THE COURT:  OKAY.

16           MS. MAROULIS:  YOUR HONOR, THE DOCKET NUMBER FOR

17   WAGNER DECLARATION IS 1990-20.

18           THE COURT:  ECF 1190-20?

19           MS. MAROULIS:  1990-20.  IT WAS FILED ON

20   SEPTEMBER 21, 2012.

21           MR. ALDEN:  YOUR HONOR, IF I COULD JUST ADD ONE

22   POINT VERY QUICK.

23           THE COURT:  OKAY.  COULD YOU JUST GIVE ME ONE SECOND

24   SO I COULD REVIEW THIS, PLEASE.

25           (PAUSE IN PROCEEDINGS.)
```

```
 1              THE COURT:  IT DOES SAY BASED ON THE CORRECT NOTICE

 2     DATE BASED ON THE FILING OF THE COMPLAINT.

 3          THAT'S PAGE 25 OF THE MOTION.

 4              MR. MCELHINNY:  AND THAT RESULTED IN A SPECIFIC

 5     ORDER TO WHICH THERE WAS NEVER ANY CHALLENGE UNTIL THE DAMAGES

 6     EXPERT REPORTS CAME IN.

 7          (PAUSE IN PROCEEDINGS.)

 8              MR. ALDEN:  YOUR HONOR, IF I COULD BE HEARD FOR A

 9     MINUTE.

10              THE COURT:  GO AHEAD.

11              MR. ALDEN:  PART OF THE REASON IS BECAUSE THERE WAS

12     NO NEED FOR US TO ADDRESS THAT BECAUSE THAT WAS SIMPLY WRONG IN

13     TERMS OF THE NOTICE OF WHEN SAMSUNG HAD THE PATENTS.

14          THERE WAS NO NEED TO ADDRESS A PRODUCT SPECIFIC DATE IN

15     THAT MOTION BECAUSE WE -- APPLE WAS SIMPLY WRONG AT TRIAL BASED

16     ON WHEN THE PATENTS WERE ISSUED.  SO THERE'S NO NEED FOR US TO

17     MAKE THAT ARGUMENT.

18          IN ADDITION --

19              THE COURT:  WELL, YES, THERE WAS, BECAUSE YOU GAVE

20     YOUR OWN ALTERNATIVE DAMAGES AWARDS AND YOU BASED IT ON WHAT

21     YOU SAID WERE THE CORRECT NOTICE DATES BASED ON THE FILING OF

22     THE COMPLAINT FOR THE D677 AND THE FILING OF THE AMENDED

23     COMPLAINT FOR THE D087 AND THE D305.

24              MR. ALDEN:  YES, YOUR HONOR, BUT THOSE CALCULATIONS

25     WERE BASED ON MR. MUSIKA'S METHODOLOGY THAT HE GAVE AT TRIAL
```

1    AND THE METHODOLOGY THAT MR. MUSIKA GAVE AT TRIAL WAS TO SAY,

2    WELL, JUST TO REMOVE THE QUARTER, THE SALES REVENUES AND THE

3    PROFITS FROM THE QUARTER IN WHICH NOTICE FAILED.

4         SO WE WERE LIMITED TO WHAT THE JURY -- THE INFORMATION

5    THAT THE JURY WAS GIVEN AT TRIAL AND WE SAID IF YOU TAKE

6    MR. MUSIKA'S METHODOLOGY FOR ADJUSTING NOTICE THAT WAS GIVEN AT

7    TRIAL AND YOU REMOVE THE QUARTER IN WHICH NOTICE FAILED, HERE

8    ARE THE NUMBERS.

9              THE COURT:  BUT I THINK IF YOU WERE TO BE CONSISTENT

10   WITH YOUR POSITION TODAY, YOU WOULD SAY THAT THE CORRECT NOTICE

11   DATE FOR THE INFUSE 4G IS THE DATE OF THE AMENDED COMPLAINT.

12             MR. ALDEN:  BUT, YOUR HONOR, WE -- AGAIN, THAT POINT

13   WAS NOT RELEVANT TO OUR MOTION BECAUSE THERE WAS NO -- APPLE

14   NEVER INTRODUCED AS THE COURT FOUND.

15             THE COURT:  NO.  YOU WOULD HAVE SAID THAT EVEN THE

16   APRIL 2011 DATE IS NOT THE CORRECT DATE.  THAT'S NOT THE

17   EARLIEST POSSIBLE FILING DATE.

18        YOU WOULD SAY BASED ON CASE LAW, WE BELIEVE THAT THE

19   SPECIFIC PRODUCT MUST BE IDENTIFIED AND THAT WAS NOT DONE UNTIL

20   JUNE 2011 IN THE COMPLAINT, AND THAT IS THE EARLIEST POSSIBLE

21   CORRECT NOTICE DATE.

22             MR. MCELHINNY:  AND IT WOULD HAVE BEEN RELEVANT TO

23   MR. WAGNER'S DAMAGES ARGUMENT AT THE FIRST TRIAL AND THIS WAS

24   ARGUMENTS THAT WERE NOT MADE AT THE FIRST TRIAL.

25        AND YOU HAVE A JMOL BUT YOU ALSO HAD A REMITTITUR IN WHICH

```
 1    THEY WERE ASKING YOU TO ENTER JUDGEMENT FOR THOSE, IN FACT,

 2    DAMAGES.  SO IT WAS RELEVANT TO EVERY ARGUMENT THAT THEY MADE,

 3    AND THEY MADE IT COMPLETELY CLEAR.

 4         THE COURT:  ALL RIGHT.  WELL, LET ME GO BACK TO THE

 5    CAPACITY QUESTION.

 6       THE TWO DOCUMENTS THAT YOU HAVE GIVEN ME, THE CATEGORIES

 7    OF NUMBERS ARE NOT THE SAME AND MAYBE THAT'S WHY THE NUMBERS

 8    DON'T MATCH UP BETWEEN THE TWO DOCUMENTS.

 9       CAN YOU EXPLAIN -- LIKE, THERE'S NO BEGINNING CAPACITY

10    NUMBER IN TRIAL EXHIBIT 25A-1, AND THERE'S NO ADDITIONAL EXCESS

11    CAPACITY NUMBER IN TRIAL EXHIBIT 25- -- YOU KNOW, A-1.  AND SO

12    THE NUMBERS DON'T SEEM TO CORRELATE BETWEEN THE TWO DOCUMENTS.

13         DOES ANYONE WANT TO EXPLAIN THAT, WHY THEY DON'T MATCH UP?

14         MS. MAROULIS:  YOUR HONOR, I'M GOING TO LET

15    MR. MCELHINNY EXPLAIN THE MATCHING UP, BUT I JUST WANT TO MAKE

16    ONE POINT CLEAR THAT MAYBE I DIDN'T EXPRESSLY EXPLAIN, WHICH IS

17    THE PERIOD FOR WHICH THEY'RE SEEKING LOST PROFITS IS THE SAME

18    AT THIS TIME.  THAT IS WHY THE SUBPOENA WAS MOOT BECAUSE THE

19    PERIOD HAS NOT CHANGED.  IT'S STILL JUNE THROUGH OCTOBER OF

20    2010.

21         THE COURT:  WHAT IS THE RELEVANT TIME?  DO YOU AGREE

22    THAT IT'S JUNE THROUGH OCTOBER OF 2010?

23         MR. MCELHINNY:  THE LOST PROFITS PERIOD IS AUGUST

24    THROUGH SEPTEMBER, YOUR HONOR.

25         THE COURT:  AUGUST THROUGH SEPTEMBER OF 2010?
```

```
 1            MR. MCELHINNY:  RIGHT.  THE CAPACITY -- WHAT WE'RE

 2   TALKING ABOUT IS THE CAPACITY CONSTRAINT -- AUGUST THROUGH

 3   DECEMBER OF 2010, AND APRIL TO -- AUGUST TO SEPTEMBER 2010 AND

 4   APRIL THROUGH SEPTEMBER OF 2011.

 5            THE COURT:  I THOUGHT IT'S APRIL TO DECEMBER?  YEAH.

 6            MR. MCELHINNY:  YOU'VE GOT IT CORRECT, YOUR HONOR.

 7            THE COURT:  OKAY.  SO WHAT WAS MR. MUSIKA ASKED

 8   ABOUT?  HE WAS ASKED ABOUT Q2 AND Q3 OF 2010?

 9            MR. MCELHINNY:  HE WAS ASKED FOR JUNE THROUGH

10   OCTOBER OF 2010, IPHONE 4 ONLY.

11            MS. MAROULIS:  AND, YOUR HONOR, HE TESTIFIED THAT

12   THERE WAS NO CAPACITY.  HE SAID THAT THERE WAS CAPACITY FOR

13   OTHER PHONES BUT NOT IPHONE 4 AND NOW MS. DAVIS WANTS TO CHANGE

14   THAT.  THAT'S WHY IT IS A CHANGE.

15            THE COURT:  I'M SORRY TO INTERRUPT YOU.  MR. MUSIKA

16   WAS TESTIFYING AS TO JUNE THROUGH OCTOBER OF 2010.

17            MR. MCELHINNY:  MR. MUSIKA WAS TESTIFYING AS TO WHAT

18   A PARTICULAR APPLE WITNESS SAID IN HIS DEPOSITION, AND THAT

19   HASN'T BEEN QUOTED TO YOU AND I DON'T HAVE IT IN FRONT OF ME.

20            THE COURT:  BUT WHAT TIMEFRAME?

21            MS. MAROULIS:  YOUR HONOR, HE WAS QUESTIONED IN THE

22   SPECIFIC QUOTES I GAVE YOU ABOUT JUNE OF 2010 THROUGH OCTOBER

23   OF 2010.

24       SO IF THEY'RE CLAIMING THE PERIOD OF AUGUST THROUGH

25   SEPTEMBER, THAT'S SUBSUMED WITHIN THAT PERIOD.  IT'S NOT A
```

```
1        DIFFERENT TIME PERIOD.
2             MR. MCELHINNY:  WELL, THE QUESTION WAS JUNE THROUGH
3    OCTOBER AND THE QUESTION -- AND IT IS A DIFFERENT TIME PERIOD.
4             THE COURT:  UH-HUH.
5             MR. MCELHINNY:  BECAUSE IT'S ON A MONTH -- IT
6    REPORTS ON A MONTH-BY-MONTH BASIS.
7             THE COURT:  SO WHAT IS THE CORRELATION BETWEEN THESE
8    TWO DOCUMENTS?  HOW COME THE NUMBERS DON'T -- I CAN'T FIGURE
9    OUT WHAT THE RELATIONSHIP IS BECAUSE THE CATEGORIES ARE
10   DIFFERENT AND THE NUMBERS ARE DIFFERENT.
11            MR. MCELHINNY:  THAT'S WHY WE USE MS. DAVIS.
12         BUT AS I UNDERSTAND IT, ONE GOES TO INVENTORY AND ONE GOES
13   TO MANUFACTURING.
14            MS. KREVANS:  WHEN BOTH MR. MUSIKA AND MS. DAVIS
15   GAVE THEIR OPINIONS BASED ON THESE DOCUMENTS --
16            THE COURT:  UH-HUH.
17            MS. KREVANS:  -- WHAT THEY WERE LOOKING FOR WAS THE
18   TOTAL POOL THAT APPLE HAD AVAILABLE TO IT TO SUPPLY A CUSTOMER
19   WITH A PHONE.
20            THE COURT:  OKAY.
21            MS. KREVANS:  YOUR TOTAL POOL OF AVAILABLE PHONE
22   INVENTORY IS A COMBINATION OF FOR ANY PERIOD THE INVENTORY YOU
23   START WITH ON HAND.  SO BEGINNING INVENTORY SHOWS AS THE TOP
24   LEFT LINE IN ONE OF THOSE TABLES.
25            THE COURT:  OKAY.
```

```
 1            MS. KREVANS:  PLUS FOR EACH PERIOD HOW MUCH

 2    ADDITIONAL MANUFACTURING CAPACITY YOU HAVE IN THAT PERIOD.

 3            THE COURT:  OKAY.

 4            MS. KREVANS:  SO YOU MAKE A ROLLING CALCULATION.

 5    AND I'M NOT AN ACCOUNTANT SO IF WE NEED TO RECONCILE THESE

 6    DOCUMENTS, WE MAY HAVE TO GIVE YOU SOMETHING ON PAPER, BUT YOU

 7    SAY ON THE FIRST DATE OF THIS PERIOD HOW MUCH INVENTORY DO I

 8    HAVE?  NOW HOW MUCH CAN I MANUFACTURE IN THIS PERIOD?

 9            THE COURT:  UH-HUH.

10            MS. KREVANS:  HOW MUCH DID THEY REALLY SELL IN THAT

11    PERIOD?  AND AT THE END OF THE PERIOD NOW YOU HAVE A NEW NET

12    INVENTORY ON HAND.  IT'S A COMBINATION OF THE INVENTORY YOU

13    STARTED WITH AND HOW MUCH MORE YOU CAN MANUFACTURE DURING THAT

14    TIME PERIOD.

15        AND SO WHEN YOU TALK ABOUT A WORD LIKE "SUPPLY," WHICH WAS

16    THE ACTUAL WORD IN THE QUESTION THAT WAS ASKED OF MR. MUSIKA AT

17    TRIAL WHEN HE WAS ASKED ABOUT THE TESTIMONY OF THIS APPLE

18    WITNESS.  SUPPLY CAN BE HOW MUCH MORE CAN YOU MAKE, BUT HOW

19    MUCH YOU HAVE AVAILABLE TO SATISFY THESE LOST PROFITS PHONES IS

20    A COMBINATION OF HOW MUCH MORE YOU CAN MAKE AND HOW MUCH YOU

21    ALREADY HAVE ON HAND.

22            THE COURT:  SO WHAT IS BEGINNING CAPACITY?  IS THAT

23    INVENTORY?  IS THAT BEGINNING INVENTORY OR SOMETHING ELSE?

24            MS. KREVANS:  THE BEGINNING INVENTORY IS THAT

25    BEGINNING INVENTORY ON HAND ON THE LEFT-HAND SIDE.
```

1              THE COURT:  OH, YEAH I KNOW.  I'M LOOKING AT THE

2     NOT-ADMITTED EXHIBIT, WHEN IT SAYS BEGINNING CAPACITY, IS

3     THAT --

4              MS. KREVANS:  THAT'S A COMBINATION OF ALL OF THOSE

5     NUMBERS AS THEY KEEP NETTING ACROSS PERIODS.

6          AND YOU'LL SEE WHEN YOU LOOK AT THE HORIZONTAL DOCUMENTS,

7     EXHIBIT 17, AS YOU LOOK ACROSS, THE NUMBERS REPEAT FOR SEVERAL

8     MONTHS IN A ROW BECAUSE THE NUMBERS WERE ACTUALLY KEPT IN A

9     QUARTERLY BASIS.  SO FOR EACH MONTH IN THE QUARTER, YOU'LL SEE

10    REPETITION.

11         THE OTHER THING THAT IS IMPORTANT ABOUT BOTH OF THESE

12    EXPERTS IS THAT IF YOU LOOK AT THEIR REPORTS AND YOU LOOK AT

13    THE EXHIBITS, YOU'LL SEE THAT THE EXHIBITS AND THE REPORTS,

14    THEY DON'T TRY TO DISTINGUISH BETWEEN DIFFERENT MODELS OF APPLE

15    PHONES THAT THEY'RE CONTRIBUTING OVERALL TO THE POOL OF

16    AVAILABLE APPLE PHONES.

17         AND WHEN YOU LOOK AT THE UNDERLYING DOCUMENTS YOU SEE

18    THERE'S IPHONE 3 AND 3GS AND 4.  AND THEY'RE ALL CONTRIBUTING

19    TO AN OVERALL POOL OF PHONES BOTH FROM INVENTORY, DRAWING FROM

20    ORIGINAL MANUFACTURING, AND THEY GO TO A BOTTOM LINE NUMBER

21    THAT THEN GETS CARRIED FORWARD INTO THE LOST PROFITS

22    CALCULATION.

23              THE COURT:  AND WHAT IS THE ADDITIONAL CAPACITY?  IS

24    THAT MAXIMUM CAPACITY OR IS THAT -- I'M JUST WONDERING, DO YOU

25    THINK THESE TWO CHARTS ARE CORRELATED?

1          MS. KREVANS:  THEY DO CORRELATE, YOUR HONOR.  IF I

2     HAD TO ACTUALLY DO THAT, I THINK THAT I WOULD HAVE TO GIVE YOU

3     SOMETHING IN WRITING MAYBE TOMORROW BECAUSE I DON'T WANT TO DO

4     THEM ON THE FLY HERE WITHOUT THEM IN FRONT OF ME.  AND WHEN I

5     WENT THROUGH THEM WITH THE EXPERT, IT TOOK ME A LITTLE WHILE TO

6     UNDERSTAND IT MYSELF.

7          MS. MAROULIS:  WHATEVER THESE DOCUMENTS SHOW, THE

8     PROBLEM IS THAT ONE EXPERT DID NOT GIVE AN OPINION THAT THERE

9     WAS A CAPACITY BASED ON INVENTORY OR BASED ON ANYTHING ELSE AND

10    A NEW EXPERT NOW HAS THAT OPINION.

11        IT WAS AN OPINION THAT WAS NOT DISCLOSED BY MUSIKA AT

12    TRIAL IN HIS REPORT, AND THAT'S WHY WE OBJECTED TO IT.

13         MS. KREVANS:  YOUR HONOR, THAT IS JUST 100 PERCENT

14    INCORRECT.  WHEN YOU LOOK AT THE PARAGRAPHS OF MR. MUSIKA'S

15    REPORT, YOU WILL SEE THAT HE CITES FOR HIS OVERALL CAPACITY

16    OPINION, WHICH IS THAT THERE WAS ENOUGH CAPACITY SUPPLIED IN

17    LOST PROFITS PHONES, HE CITES THESE TWO EXHIBITS TO HIS REPORT,

18    EXHIBIT 26 AND EXHIBIT 17.

19        WHEN YOU LOOK AT -- WHICH HAVE NUMBERS BASED ON A

20    COMBINATION OF INVENTORY ON HAND PLUS NEW MANUFACTURING.  WHEN

21    YOU LOOK AT MS. DAVIS'S REPORT, IN THE REPORT SHE CITES TO THE

22    EXACT SAME TWO EXHIBITS WITH THE EXACT SAME NUMBERS IN THEM.

23        THEY WERE BOTH USING THE WHOLE POOL WHICH WAS MADE UP OF A

24    COMBINATION FOR EACH PERIOD STARTING INVENTORY PLUS ADDITIONAL

25    UNITS YOU COULD MANUFACTURE, MINUS ADDITIONAL ACTUAL UNITS

1      APPLE SOLD IN THAT PERIOD.

2          NOTHING CHANGED BETWEEN THOSE TWO REPORTS.  THE ONLY

3      THING, IF YOU LOOK BACK AT THEIR MOTION, THEY'RE BASING THIS

4      ALL ON A CROSS-EXAMINE QUESTION THAT WAS ASKED OF MR. MUSIKA AT

5      TRIAL ABOUT WHETHER IN A PARTICULAR PERIOD THERE WAS EXCESS

6      SUPPLY OF THE IPHONE 4 SPECIFICALLY.

7          BUT THERE'S NO DIFFERENCE IN THEIR TWO REPORTS.  THEY BOTH

8      RELIED ON THIS POOL OF NUMBERS BASED ON A COMBINATION OF

9      INVENTORY AND ADDITIONAL MANUFACTURING IN EACH PERIOD.

10             MS. MAROULIS:  YOUR HONOR, WHAT I --

11             THE COURT:  LET ME ASK A LAST QUESTION.  I'LL TAKE A

12     LOOK AT ALL OF THE INFORMATION THAT YOU HAVE PROVIDED.

13         IF I DO ALLOW MS. DAVIS TO REVISE HER CAPACITY CONCLUSIONS

14     TO REFLECT THE NEW NOTICE DATES BUT NOT TO ASSUME THAT ALL

15     APPLE CAPACITY WOULD BE DEVOTED JUST TO MANUFACTURING THE

16     ACCUSED PRODUCTS IN THIS RETRIAL, DO YOU NEED A DEPOSITION?  DO

17     YOU NEED A SUPPLEMENTAL VERY SHORT RESPONSE?

18             MS. KREVANS:  YOUR HONOR, I'M SORRY, BUT MS. DAVIS

19     HAS NEVER OFFERED AN OPINION THAT WAS BASED ON THE ASSUMPTION

20     THAT ALL APPLE MANUFACTURING CAPACITY IN THIS TIME PERIOD WAS

21     DEVOTED TO THESE PHONES.

22             THE COURT:  I KNOW.  BUT MR. MCELHINNY DID SAY THAT

23     THERE WAS SOME ACCOUNTING TAKEN INTO CONSIDERATION THAT APPLE'S

24     CAPACITY FOR MANUFACTURING WOULD HAVE -- YOU WOULD BE

25     CALCULATING THAT BASED ON THE REDUCED NUMBER OF PRODUCTS IN

1      THIS TRIAL VERSUS WHAT YOU HAD TO CALCULATE FOR THE LAST TRIAL,

2      WHICH INVOLVED MANY MORE PRODUCTS.

3              MS. KREVANS:  SO, YOUR HONOR, I WOULD NEVER ACCUSE

4      MR. MCELHINNY OF MISSPEAKING OR YOUR HONOR OF MISHEARING, BUT

5      THE FACTS ARE THAT THE NUMBERS THAT ARE APPLE'S CAPACITY TO

6      MEET LOST PROFITS PHONES NEEDS ARE COMPLETELY UNCHANGED BECAUSE

7      THE NUMBER ONLY SPEAKS TO THE PAPER, AND I BELIEVE MS. MAROULIS

8      WILL AGREE WITH ME THAT THE NUMBERS ON THESE PIECES OF PAPERS

9      HAVE NOT CHANGED.

10      THE NUMBERS THAT HAVE CHANGED IS HOW MANY PHONES YOU'RE

11      COMPARING TO THE APPLE CAPACITY TO SEE IF THE CAPACITY IS HIGH

12      ENOUGH.

13      SO IF BEFORE THE CAPACITY WAS A MILLION PHONES AND THE

14      LOST PROFITS PHONES THAT THE CALCULATION YIELDED WERE 800,000,

15      YOU HAD TO SEE, WAS THERE ENOUGH CAPACITY FOR 800,000 LOST

16      PROFIT PHONES?

17      ANSWER:  YES, BECAUSE THERE WERE A MILLION.

18      I'M MAKING UP THESE NUMBERS SO I'M NOT USING CONFIDENTIAL

19      NUMBERS IN OPEN COURT.

20      SO BEFORE THIS EXHIBIT GETS PARED SOME MORE, APPLE'S

21      CAPACITY, A MILLION LOST PROFITS, CANDIDATE PHONES 800,000.

22      DID APPLE HAVE THE CAPACITY FOR 800,000?

23      YES, BECAUSE IT HAD A MILLION.

24      NEW SET OF CALCULATIONS, NEW TIME PERIOD, AND ALSO ONLY

25      THE SMALLER NUMBER OF INFRINGING PHONES.  CAPACITY NUMBER IS

1      STILL A MILLION.

2          QUESTION NOW:  LOST PROFITS CANDIDATE PHONES ONLY 100,000

3      INSTEAD OF 800,000.  SO THE NUMBER OF PHONES YOU NEED TO TEST

4      AGAINST THE CAPACITY NUMBER IS LOWER.  THE CAPACITY NUMBER HAS

5      NOT CHANGED.

6          MS. MAROULIS:  BUT IF THE CAPACITY NUMBER IS ZERO,

7      IT DOESN'T MATTER HOW MANY YOU'RE COMPARING IT TO.

8          BUT TO ANSWER YOUR HONOR'S PRIOR QUESTION, IF YOUR HONOR

9      IS INCLINED TO LET THEM CHANGE THEIR OPINION, WE WOULD LIKE TO

10     DEPOSE MR. DAVIS AND WE WOULD LIKE TO DEPOSE MR. BUCKLEY, THE

11     APPLE EMPLOYEE WHO SUPPLIED THE INVENTORY DATA TO MR. MUSIKA.

12         MS. KREVANS:  AND, YOUR HONOR, THERE IS NO CHANGE IN

13     OPINION.

14         THE COURT:  BUT DO YOU AGREE THAT YOU HAVE NO

15     PROBLEM WITH THE FACT THAT APPLE IS TAKING THE CAPACITY NUMBER

16     AND JUST DIVIDING IT BY A SMALLER NUMBER OF PRODUCTS SO THAT

17     THEY'RE GETTING INCREASED CAPACITY JUST BECAUSE THERE ARE NOT

18     THE 26 PRODUCTS THAT WERE AT TRIAL LAST YEAR?  THAT WAS MY,

19     THAT WAS MY CONCERN THAT YOU'RE INFLATING BECAUSE THERE ARE

20     FEWER PRODUCTS THAT YOU'RE NOW NOT ACCOUNTING FOR.

21         MS. KREVANS:  THAT'S NOT THE ISSUE THAT THEY'VE

22     RAISED, AND WE DON'T BELIEVE THAT WE HAVE DONE THAT, BUT THAT'S

23     CERTAINLY NOT THE ISSUE THAT THEY'VE RAISED.

24         THE ISSUE THEY'VE RAISED IS THAT, ALTHOUGH THE REPORT SAYS

25     THE SAME THING IN BOTH CASES AND THE UNDERLYING DOCUMENTS ARE

```
1     LITERALLY THE EXACT SAME DOCUMENT, THERE WAS A QUESTION AND

2     ANSWER ADDRESSED TO MR. MUSIKA DURING TRIAL THAT THEY SAY MEANS

3     THAT APPLE CAN'T USE AS PART OF THAT CAPACITY POOL, WHICH IT

4     HAD ALL ALONG, AND IT'S USUALLY THE SAME ONE AT THE LAST TRIAL,

5     YOU CAN'T USE THE PART OF IT THAT WAS MADE OF IPHONE 4 PHONES

6     BECAUSE AT TRIAL WHEN MR. MUSIKA WAS ASKED, IN LOOKING AT THIS

7     DEPOSITION TESTIMONY, DOES THAT NOT MEAN THAT IN THIS PERIOD

8     THERE WAS NOT AN EXCESS SUPPLY OF IPHONE 4'S AND HE SAID

9     CORRECT.

10         THEY'RE NOT -- THEY HAVE NOT ASKED ABOUT THE QUESTION THAT

11    YOUR HONOR HAS RAISED, AND THERE IS NO SUCH ISSUE.  SHE'S NOT

12    OFFERING ANY NEW OPINION ABOUT THE NUMBERS ON CAPACITY.  THIS

13    IS ABOUT WHETHER ANY OF THAT CAPACITY WAS IPHONE 4'S BASED ON A

14    QUESTION AND ANSWER IN MR. MUSIKA'S TRIAL TESTIMONY.

15         MR. PRICE:  NOT REALLY.  WHAT MR. MUSIKA WAS ASKED

16    ABOUT WAS WHETHER OR NOT THEY WERE ABLE TO SERVICE THEIR

17    CUSTOMERS, THEIR DEMANDS FOR IPHONE 4'S DURING THAT TIMEFRAME.

18         AND WHAT HE ADMITTED, AND HE HAD THIS CHART LOOKING AT IT,

19    IS THAT THERE WERE BACKORDERS FOR THE IPHONE.  THAT'S BECAUSE

20    THE DEMAND EXCEEDED THE ABILITY TO PRODUCE THEM JUNE THROUGH

21    SEPTEMBER OF 2010.  THEY WERE NOT ABLE TO PROVIDE SUPPLY

22    BETWEEN THOSE MONTHS.

23         AND THEN THE FINAL ULTIMATE QUESTION WAS SO THAT BETWEEN

24    JUNE OF 2010 THROUGH OCTOBER OF 2010 APPLE DIDN'T HAVE EXCESS

25    SUPPLY OF THE IPHONE?  NOW, SUPPLY WOULD BE MANUFACTURING AND
```

1     WHAT YOU HAVE ON HAND.

2         SO, YES, THERE ARE CHARTS IN HIS REPORT BUT HIS OPINION

3     BASED ON THE CHART IS BASED UPON HIS DISCUSSIONS WITH

4     MR. BLEVINS, WHO WAS THE CORPORATE REPRESENTATIVE FOR APPLE ON

5     THE SUPPLY ISSUE.  HIS CONCLUSION BASED ON THIS CHART IS DURING

6     THIS TIMEFRAME THERE WERE BACKORDERS, AND THEY COULDN'T SERVICE

7     THEIR OWN CUSTOMERS.  AND THERE WAS NO EXCESS SUPPLY.  THAT

8     WASN'T MANUFACTURING CAPACITY.  WE'RE TALKING ABOUT THE ABILITY

9     TO PROVIDE TO THE CUSTOMER.

10        AND NOW THE NEW EXPERT LOOKING AT THE SAME CHART IS

11    SAYING, AH-HAH, I'M GIVING A DIFFERENT OPINION.

12        NOW, MR. MR. MUSIKA DID SAY THAT THERE WAS SUPPLY BECAUSE

13    YOU COULD SHIFT CAPACITY FROM THE IPHONE 3 TO THE OTHER PHONES,

14    BUT HE NEVER SAID THAT THERE WAS ENOUGH SUPPLY BECAUSE IF YOU

15    ADDED INVENTORY WITH CAPACITY THERE WAS ENOUGH TO SELL TO

16    PEOPLE.

17        THERE WERE BACKLOGS OF ORDERS.

18            THE COURT:  LET ME ASK, DO YOU ALL CARE, AND MAYBE

19    THIS IS JUST ON THE WRONG FOCUS, DO YOU CARE THAT BASICALLY THE

20    CAPACITY IS BEING DIVIDED BY A SMALLER NUMBER OF PRODUCTS SO

21    IT'S LOOKING LIKE THE CAPACITY HAS INCREASED?

22            MR. PRICE:  OH, YEAH, THAT WOULD BE MISLEADING

23    OBVIOUSLY.

24            THE COURT:  BUT HOW DO WE ACCOUNT FOR THAT IF WE'RE

25    NOT GOING TO GET INTO PRODUCTS THAT ARE NOT IN THIS CASE?

```
 1              YOU SEE, HOW DO WE SOMEHOW ACCOUNT BECAUSE I THINK THAT

 2      WOULD BE DIFFERENT FROM THE LAST TRIAL.  THE LAST TRIAL THE

 3      TOTAL CAPACITY HAD TO BE DIVIDED BY 26 PRODUCTS, AND THIS ONE

 4      IT'S WHAT, 13 OR 14?

 5              MS. KREVANS:  IT'S 12, YOUR HONOR.

 6              THE COURT:  IT'S 12.

 7              MS. KREVANS:  BUT JUST TO BE CLEAR, THEY'VE NEVER

 8      EVER MADE A MOTION ON THIS BASIS.  THIS IS AN ENTIRELY NEW

 9      ARGUMENT THAT WE'RE HEARING FOR THE FIRST TIME HERE IN COURT

10      TODAY THAT SOMEHOW THERE'S A DIFFERENT PROBLEM WITH HER OPINION

11      BECAUSE OF THE NUMBER OF PHONES THAT ARE AT ISSUE.  THIS IS

12      BRAND NEW.

13              AND ANOTHER THING, JUST TO BE CLEAR, THIS WHOLE ISSUE WAS

14      ONLY ABOUT --

15              THE COURT:  WELL, I THINK THAT MAKES THE THEORY

16      DIFFERENT, AND I PRECLUDED DIFFERENT THEORIES IN THE

17      CALCULATIONS.

18              MS. KREVANS:  YOUR HONOR, THERE WERE ALSO -- THIS IS

19      THE EXACT SAME THEORY.  THE ISSUE IS ARE THERE ENOUGH PHONES AT

20      APPLE THAT IF SOMEONE WHO BOUGHT A SAMSUNG PHONE DURING THE

21      DESIGN AROUND PERIOD, AND, THEREFORE, IN THE LOST PROFITS WORLD

22      COULDN'T BUY THE SAMSUNG PHONE, IF THEY HAD COME TO APPLE

23      INSTEAD, COULD APPLE HAVE SOLD THEM A PHONE?

24              APPLE'S, BOTH EXPERTS, HAVE ALWAYS BASED THEIR OPINION ON

25      THIS -- ON A POOL OF PHONES, BASED ON INVENTORY AND
```

1    MANUFACTURING IPHONE 3, 3GS, AND 4.

2         THE COURT:  BUT IT'S GOING TO INFLATE THE

3    MANUFACTURING NUMBER TO SAY NOW YOU DON'T HAVE MANUFACTURING 12

4    PRODUCTS VERSUS 26.

5         MS. KREVANS:  NO, NO.  THE MANUFACTURING NUMBER

6    HASN'T CHANGED.

7         THE COURT:  I KNOW, BUT YOU CAN DEVOTE MORE

8    RESOURCES TO MANUFACTURING 12 PRODUCTS THAN YOU CAN TO 26.  SO

9    IT'S GOING TO INCREASE THE LOST PROFIT NUMBER FOR THE 12

10   PRODUCTS IN THIS CASE.

11        MS. KREVANS:  NO, YOUR HONOR, BECAUSE HERE WE'RE NOT

12   ACTUALLY TALKING IN THIS CASE ABOUT ANY MANUFACTURING THAT

13   DIDN'T REALLY HAPPEN.  THESE ARE THE JUST REAL APPLE

14   MANUFACTURING INVENTORY NUMBERS.  AND THE QUESTION IS WAS THE

15   EXCESS IN EACH QUARTER ENOUGH, THE NUMBER THAT APPLE HAD BUT

16   DID NOT SELL IN THAT QUARTER, ENOUGH THAT IF THE SAMSUNG

17   CUSTOMERS HAD COME TO APPLE THEY COULD HAVE BOUGHT AN APPLE

18   PHONE?

19        AND IN BOTH PERIODS, NO MATTER WHAT THE LOST PROFITS

20   NUMBER OF PHONES WAS, THE APPLE INVENTORY WAS HIGHER.  THIS IS

21   THE DISPUTE ABOUT WHETHER ANY OF THE APPLE INVENTORY THAT A

22   CUSTOMER COULD HAVE COME AND BOUGHT INSTEAD OF A SAMSUNG PHONE

23   MIGHT HAVE BEEN AN IPHONE 4, AND THAT IS THE ISSUE THAT WAS

24   RAISED IN THIS CROSS-EXAMINATION LINE BY MR. PRICE AT TRIAL,

25   AND THAT'S THE ISSUE THAT WAS RAISED IN THEIR MOTION.

```
1          IT HAS NOTHING TO DO WITH HOW MUCH BIGGER THE APPLE SUPPLY

2     WAS THAN THE LOST PROFITS PHONES.  IN BOTH CASES THE APPLE

3     NUMBER IS LARGER THAN THE NUMBER OF LOST PROFITS PHONES.

4          THIS HAS TO DO WITH WERE ANY OF THE APPLE PHONES

5     AVAILABLE, IPHONE 4'S?  AND THAT'S WHAT THE CROSS-EXAMINATION

6     WAS ABOUT.  AND MR. MUSIKA ANSWERED THIS QUESTION ABOUT EXCESS

7     OF SUPPLY OF THE IPHONE 4.  IN THIS TIME PERIOD HE SAID, THAT'S

8     CORRECT, THAT'S WHAT THAT DEPOSITION TESTIMONY INDICATED.

9          HE WAS NEVER ASKED HOW MUCH OF THE INVENTORY --

10            THE COURT:  WHAT DEPOSITION TESTIMONY ARE YOU

11    TALKING ABOUT?

12            MR. PRICE:  I WAS QUOTING TO YOU FROM MR. MUSIKA'S

13    TESTIMONY AND HE IS -- HIS TRIAL TESTIMONY.

14            THE COURT:  TRIAL I THOUGHT.

15            MR. PRICE:  TRIAL TESTIMONY.

16            THE COURT:  SO WHAT ARE YOU TALKING ABOUT IN THE

17    DEPOSITION TESTIMONY?

18            MR. PRICE:  I'M SORRY, I MEANT TRIAL.

19            THE COURT:  NO, NO.  SHE SAID DEPOSITION TESTIMONY.

20            MS. KREVANS:  THE QUESTION THAT MR. PRICE ADDRESSED

21    TO MR. MUSIKA AT TRIAL WAS THE QUESTION ABOUT DEPOSITION

22    TESTIMONY FROM AN APPLE EMPLOYEE NAMED MR. BLEVINS.

23            THE COURT:  HAVE YOU SUBMITTED THAT?  IS THAT

24    SUBMITTED WITH THE MOTION?  IS BLEVINS?

25            MR. ALDEN:  NO, YOUR HONOR, BUT WE CAN DO SO.
```

```
1              THE COURT:  WOULD YOU PLEASE.  CAN YOU FILE THAT

2    TOMORROW?

3              MR. ALDEN:  YES.

4              MR. PRICE:  AND, YOUR HONOR, JUST SO YOU CAN FOCUS,

5    MR. BLEVINS WAS THE CORPORATE REPRESENTATIVE FOR CAPACITY THAT

6    MR. MUSIKA WAS RELYING UPON.

7          AND SO AFTER PRESENTING, HAVING ADMITTED WHAT MR. BLEVINS

8    ADMITTED, THERE IS THEN THE ULTIMATE QUESTION SO THAT BETWEEN

9    THIS TIME PERIOD APPLE DIDN'T HAVE EXCESS SUPPLY OF THE IPHONE.

10         AND, YES, WE'RE TALKING ABOUT THE IPHONE 4 BECAUSE OUR

11   THEORY IS THAT IF YOU CAN'T GET THE LATEST SAMSUNG, YOU'RE

12   GOING TO WANT THE LATEST APPLE.

13         AND THERE MAY BE A DISPUTE ABOUT THAT.  AND MR. MUSIKA

14   SAID, OH, THEY CAN BUY AN APPLE THAT WAS THREE YEARS OLD OR

15   TWO YEARS OLD.  OKAY.  THE JURY CAN DETERMINE WHETHER OR NOT

16   THAT WOULD SATISFY SOMEONE.

17             THE COURT:  UH-HUH.

18             MR. PRICE:  BUT WHAT SHE'S SAYING, WHAT THEIR EXPERT

19   SAYS NOW IS, OH, NO, THEY COULD HAVE SUPPLIED IPHONE 4'S AND AT

20   LEAST THAT'S OUR UNDERSTANDING AND THAT'S THE BASIS OF OUR

21   MOTION.

22             THE COURT:  OF YOUR MOTION.

23             MR. PRICE:  YEAH, IS THAT SHE CAN'T SAY I FIGURED

24   OUT ANOTHER WAY FROM THIS CHART, AND MR. MUSIKA DIDN'T FIGURE

25   OUT, I GUESS, AS TO HOW THEY COULD SELL THE LATEST IPHONE TO A
```

```
 1          SAMSUNG CUSTOMER.

 2                    THE COURT:  OKAY.  WOULD THE DEPOSITION EXCERPTS

 3          THAT YOU'RE GOING TO SUBMIT FOR MR. BLEVINS, DO THEY TALK ABOUT

 4          THESE TWO CHARTS OR NOT?

 5                    MR. ALDEN:  NO, YOUR HONOR.

 6                    THE COURT:  LET'S MOVE ON A SECOND TO SOME OF THE

 7          OTHER ISSUES.

 8                    MR. MCELHINNY:  YOUR HONOR, JUST FOR YOUR

 9          CONVENIENCE, CAN I JUST GIVE YOU THE TWO PARAGRAPH NUMBERS SO

10          YOU CAN GET RIGHT TO THEM?

11                    THE COURT:  FOR MR. BLEVINS OR FOR WHOM?

12                    MR. MCELHINNY:  IN COMPARING THE LANGUAGE FOR THE

13          DAVIS REPORT TO THE MUSIKA REPORT.  IT'S PARAGRAPH 116 OF THE

14          DAVIS REPORT COMPARED TO PARAGRAPH 127 OF THE MUSIKA REPORT.

15                    THE COURT:  OKAY.

16                    MR. MCELHINNY:  AND AT FOOTNOTE 153 IN THE DAVIS

17          REPORT MS. DAVIS MAKES THE POINT THAT MS. KREVANS WAS JUST

18          EXPLAINING TO YOU ABOUT CAPACITY AND COVERING BOTH MR. MUSIKA'S

19          CLAIMS.

20                    MS. MAROULIS:  AND, YOUR HONOR, FOR COMPLETENESS,

21          SAMSUNG REFERS YOU TO THE DEPOSITION TESTIMONY OF MS. DAVIS

22          PAGES 166, LINE 12 THROUGH 168, LINE 25 AND THEN PAGE 240, 4

23          THROUGH 15 BECAUSE THAT NEEDS TO BE COMPARED AGAINST WHAT

24          MR. MUSIKA SAID.

25                    THE COURT:  DO WE HAVE THAT?  DID YOU SUBMIT THAT AS
```

1      AN EXHIBIT TO YOUR MOTION?

2              MS. MAROULIS:  YES, YOUR HONOR.  THAT'S PART OF OUR

3      MOTION SUBMITTED AS AN EXHIBIT TO THE DECLARATION OF

4      MR. BECKERT, EXHIBIT 5.

5              THE COURT:  ALL RIGHT.  THANK YOU.

6          LET'S GO TO THE RETAIL PRICING OPINIONS OF MR. WAGNER.

7      YOU KNOW, WE CANNOT TELL WHAT IS NEW.  SO HOW CAN YOU

8      PROVIDE WHICH OF HIS NEW RETAIL PRICING OPINIONS ARE BASED ON

9      GENERALLY NEW DATA AS OPPOSED TO NEW STATEMENTS BASED ON DATA

10     THAT HE PREVIOUSLY RELIED ON?  WHO CAN CLARIFY THAT?

11         I MEAN, OTHERWISE I CAN JUST ISSUE AN ORDER THAT SAYS, YOU

12     KNOW, TO THE EXTENT THAT HE'S RELYING ON ANYTHING NEW, IT'S

13     EXCLUDED AND TO THE EXTENT THAT HE'S NOT, IT'S NOT EXCLUDED BUT

14     THAT MAY NOT DO ANYTHING OTHER THAN KICK THE CAN DOWN THE ROAD

15     A LITTLE BIT.

16         DOES ANYONE WANT TO COMMENT ON THAT?

17             MS. MAROULIS:  YOUR HONOR, IT'S OUR BELIEF THAT IT

18     WAS PROMULGATED ON EXISTING DATA, BUT IT'S APPLE'S MOTION TO

19     IDENTIFY BUT IF THEY'RE SEEKING TO STRIKE, WE'LL RESPOND.

20             THE COURT:  UH-HUH.

21             MR. MCELHINNY:  IT'S A LOT EASIER WHEN YOU DO

22     WAGNER, YOUR HONOR, BECAUSE WE'RE TALKING ABOUT PARAGRAPHS 189

23     AND 190 OF HIS REPORT AND 198 AND 294.

24         AND IN WAGNER'S REPORT YOU OUGHT TO BE ABLE TO TRACK IT

25     WORD FOR WORD TO HIS PRIOR REPORTS BECAUSE WE DON'T HAVE THE

```
 1      MUSIKA PROBLEM.

 2          AT TRIAL ALL OF HIS OPINIONS, LET'S BE CLEAR IN THIS CASE,

 3      THE DATA WAS AVAILABLE.  IT'S ALWAYS BEEN AVAILABLE.  THE

 4      PRICING DATA HAS BEEN AVAILABLE.

 5              THE COURT:  UH-HUH.

 6              MR. MCELHINNY:  BUT AT TRIAL MR. WAGNER BASED ALL OF

 7      HIS OPINIONS ON AVERAGE SELLING PRICE.

 8          AND NOW HE HAS COME UP WITH NEW OPINIONS BASED ON

 9      HISTORICAL DATA THAT TURN NOT ON AVERAGE SELLING PRICE BUT ON

10      RETAIL PRICES.

11              THE COURT:  SO WHY DON'T YOU GIVE ME THE PARAGRAPH

12      NUMBERS, PLEASE.

13              MR. MCELHINNY:  189 TO 190.

14              THE COURT:  FOR WHICH ONE?  HE HAS THREE.

15              MR. MCELHINNY:  I'M SORRY.  I'M TALKING ABOUT HIS --

16              THE COURT:  THE CURRENT ONE?

17              MR. MCELHINNY:  HIS NEW OPINION, THE ONE THAT HE

18      WROTE FOR THIS CASE, YOUR HONOR.

19              THE COURT:  OKAY.  AND WHAT IS THE NUMBER AGAIN?

20              MR. MCELHINNY:  IT'S ON PAGE 189 AND 190, ON PAGE 78

21      OF HIS REPORT.

22              THE COURT:  HE'S SAYING HE'S JUST RESPONDING TO

23      MS. DAVIS'S NEW LOST PROFITS CALCULATIONS SO.

24              MR. MCELHINNY:  WELL, YOU SEE, THAT'S THE ARGUMENT

25      BUT LET'S THINK ABOUT WHAT HAS HAPPENED HERE.
```

1        MS. DAVIS HAS BEEN TOLD -- THERE'S NOTHING NEW -- IF THERE

2   WAS ANYTHING NEW IN MS. DAVIS, YOUR HONOR WOULD BE STRIKING IT

3   OTHER THAN ANYTHING THAT GOES TO THE NUMBER OF PRODUCTS OR THE

4   DATE.

5        MS. DAVIS IS USING THE SAME AVERAGE -- THE SAME NUMBERS

6   THAT MR. MUSIKA USED.  AND SO IF THEY HAD THIS CHALLENGE, THEY

7   SHOULD HAVE USED IT THE LAST TIME AGAINST MR. MUSIKA.

8            MR. ALDEN:  YOUR HONOR, IF I MAY?

9            MR. MCELHINNY:  THEY'RE CLEARLY RESPONDING TO

10  MS. DAVIS.  SHE HAS A REPORT.  BUT HER REPORT, UNDER YOUR

11  HONOR'S ORDER, HAD TO HAVE EXACTLY THE SAME OPINIONS THAT

12  MR. MUSIKA'S DID.

13            THE COURT:  WELL, THERE'S JUST NO WAY THAT THE WAY

14  THAT THE MOTION IS CURRENTLY DRAFTED AND JUST LOOKING AT THESE

15  PARAGRAPHS THEMSELVES, IT'S NOT POSSIBLE FOR US TO TELL HOW

16  MUCH OF THIS IS ACTUALLY BASED ON -- I MEAN, IF IT'S JUST A

17  REFOCUSSING OF HIS EXISTING RETAIL PRICING ANALYSIS OR WHETHER

18  THIS IS ACTUALLY RELYING ON NEW INFORMATION OR A NEW THEORY.

19        DO YOU WANT TO POINT TO HIS RELEVANT PARAGRAPHS OF HIS

20  EITHER ORIGINAL REPORT OR THE SUPPLEMENTAL REPORT?

21            MR. ALDEN:  YOUR HONOR, I CAN GIVE YOU PARAGRAPHS IN

22  HIS ORIGINAL REPORT.  IT'S PARAGRAPHS 195 TO 197.

23            THE COURT:  OKAY.

24            MR. ALDEN:  FIGURES 30 AND 31 AND PARAGRAPH 413.

25            THE COURT:  LET ME JUST SEE IF I UNDERSTAND.  SO

1    YOUR POSITION, MR. MCELHINNY, IS THAT IT'S JUST A NEW THEORY.

2         MR. MCELHINNY:  IT IS, YOUR HONOR.  AND IF YOU LOOK

3    AT THE RED LINE, IT'S ABSOLUTELY CLEAR WHAT HE SAID THE LAST

4    TIME AROUND AND THEN ADDED IN THIS NEW THEORY.

5         MR. ALDEN:  YOUR HONOR, THIS WAS NOT A NEW THEORY.

6    HE DISCUSSED RETAIL PRICING IN HIS PRIOR REPORT.  HE DISCUSSED

7    IT AT TRIAL.  HE HAS MERELY REFOCUSSED THE SAME THEORY ON THE

8    PRODUCTS THAT ARE NOW AT ISSUE, AND THAT'S ALL THAT IS

9    HAPPENING HERE.  AND APPLE IS TRYING TO STRIKE AN OPINION THAT

10   HE EXPRESSED AT THE PRIOR TRIAL AS TO RETAIL PRICE DIFFERENCES.

11        THE COURT:  SO YOU SAID, OF THE ORIGINAL REPORT,

12   PARAGRAPHS 195 THROUGH --

13        MR. ALDEN:  -- 197 AT FIGURES 30 TO 31 AND AS WELL

14   AS PARAGRAPH 413.

15     I'M ALSO TOLD PARAGRAPH 199, YOUR HONOR.

16        THE COURT:  SO LET ME UNDERSTAND YOUR POSITION IS

17   THAT IT'S A NEW THEORY BUT IT'S THE SAME OLD DATA?  WHAT IS

18   YOUR POSITION?

19        MR. MCELHINNY:  OUR POSITION IS THAT IT'S A NEW

20   THEORY BECAUSE IT'S A DEFENSE BASED ON COMPARISON IN RETAIL

21   PRICING WHEREAS IN THE EARLIER TESTIMONY IT WAS BASED ON

22   AVERAGE SALE PRICING.

23     AND LITERALLY WHEN YOU LOOK AT THE RED LINE IT JUMPS OUT

24   AT YOU IN TERMS OF HOW THEY HAVE EDITED THIS PRIOR REPORT TO

25   ADD IN THIS THEORY.

1          MR. ALDEN:  YOUR HONOR, OUR POSITION IS THAT IT'S

2     NOT A NEW THEORY.  IT IS MERELY REFOCUSSED.

3          MR. MCELHINNY KEEPS REFERRING TO ASP.  THERE ARE BOTH

4     RETAIL ASP AND WHOLESALE ASP.  MERELY TALKING ABOUT ASP DOESN'T

5     INDICATE WHICH PARTICULAR CATEGORY ONE IS TALKING ABOUT.

6          BUT IN ANY EVENT YOUR HONOR CAN LOOK AT MR. WAGNER'S

7     REPORT TO SEE THAT HE DISCUSSED RETAIL PRICE DIFFERENCES IN HIS

8     OLD REPORT, AND HE DISCUSSED THEM AT TRIAL.  HE'S MERELY

9     REFOCUSSED IT TO -- ON THE PRODUCTS THAT ARE NOW AT ISSUE IN

10    THE NEW TRIAL.

11         MR. MCELHINNY:  THAT'S CLEARLY NOT TRUE BECAUSE HE

12    TALKS ABOUT RETAIL PRICES FOR THE IPHONE, WHICH HE DIDN'T USE

13    AT TRIAL.  SO IT'S NOT FOCUSSED JUST ON THEIR RETAIL PRICES.

14    IT'S A COMPARISON OF THE TWO.

15         DO YOU HAVE THE RED LINED, YOUR HONOR?  I HAVE AN EXTRA

16    COPY IF IT WOULD BE HELPFUL TO YOU.

17         THE COURT:  OKAY.  WHAT IS THE DIFFERENCE BETWEEN

18    THE AVERAGE SALE PRICE AND THE RETAIL PRICE?

19         MR. ALDEN:  YOUR HONOR, THE AVERAGE SALE PRICE CAN

20    BE A RETAIL SALE PRICE OR IT COULD BE -- ONE CAN TALK ABOUT THE

21    AVERAGE SALE PRICE OF A WHOLESALE PRICE, WHICH WAS THE SALE

22    FROM SAMSUNG TO CARRIERS OF THE PHONES, OR ONE CAN TALK ABOUT

23    AN AVERAGE SALE PRICE AT THE RETAIL LEVEL, WHICH IS THE SALE BY

24    THE CARRIERS OF THE PHONES TO CUSTOMERS.

25         MR. MCELHINNY:  THE REASON THE COMPANIES USE AVERAGE

1    SALES PRICE INTERNALLY AND THE REASON IT WAS USED BY BOTH

2    EXPERTS AT THE ORIGINAL TRIAL IS BECAUSE PRICES FLUCTUATE

3    RAPIDLY, AND THEY DO CHANGE BASED ON WHETHER YOU'RE SENDING

4    THEM TO PHONE COMPANIES OR WHETHER IT'S THE PHONE COMPANY

5    SELLING IT TO THE RETAILER.

6         AND THE AVERAGE SALE PRICE GIVES YOU EXACTLY THAT NUMBER.

7    IT GIVES YOU A NUMBER THAT REFLECTS AN APPLES TO APPLES

8    COMPARISON, IF YOU PARDON THE EXPRESSION, AN APPLES TO APPLES

9    COMPARISON THAT ALLOWS FOR A FAIR DETERMINATION.

10        BY HANDPICKING PARTICULAR RETAIL PRICES YOU CREATE A

11   MISLEADING PICTURE BECAUSE THEY'RE SO LIMITED IN TIME AND THEY

12   TURN ON WHO THE RETAILER IS AND THE CROSS-EXAMINATION OF THAT

13   IS EXTRAORDINARILY LENGTHY.

14        AND IT WAS NOT DONE IN THE ORIGINAL TRIAL.

15             MR. ALDEN:  YOUR HONOR -- I'M SORRY.

16             THE COURT:  GO AHEAD.  IF YOU COULD REPLY QUICKLY.

17   I'D LIKE TO MOVE ON TO ANOTHER ISSUE.

18             MR. ALDEN:  YOUR HONOR, I WOULD JUST POINT YOU TO

19   PAGE 129 OF THE RED LINE, AND YOU CAN SEE THE SUBHEADING, YOUR

20   HONOR, IS MS. DAVIS'S ANALYSIS DOES NOT TAKE INTO ACCOUNT THE

21   PRICE SEGMENTS TARGETED BY THE SPECIFIC PRODUCT AT ISSUE IN A

22   NEW TRIAL.

23        SO THERE WERE PARAGRAPHS BEFORE, WHICH WERE NOT

24   HIGHLIGHTED, WHERE MR. WAGNER TALKS ABOUT RETAIL PRICE

25   DIFFERENCES IN GENERAL BUT THEN HAS REFOCUSSED THE SAME OPINION

1    AS TO DIFFERENT RETAIL PRICE DIFFERENCES ON THE PRODUCTS THAT

2    ARE AT ISSUE SPECIFICALLY IN THE NEW TRIAL.  AND THAT IS ALL

3    THAT HAS HAPPENED, YOUR HONOR.

4            MR. MCELHINNY:  THAT IS NOT -- ALL THEY DID WAS PUT

5    A DIFFERENT TITLE ON WHAT WAS, IN FACT, THEORY AND TRY TO KEEP

6    IT WITHIN YOUR HONOR'S ORDER, BUT THAT'S JUST NOT WHAT HAPPENED

7    HERE.

8            MR. ALDEN:  THE OPINION -- MR. WAGNER OFFERED THE

9    OPINION THAT THERE WERE RETAIL PRICE DIFFERENCES BETWEEN APPLE

10   AND SAMSUNG PHONES AND IS NOW OFFERING THE EXACT SAME OPINION,

11   THAT IS NOT A NEW THEORY.  THAT IS THE EXACT SAME OPINION.

12           MR. MCELHINNY:  WHEN WAGNER WAS DEPOSED HE WAS ASKED

13   DISCUSSION OF RETAIL PRICES IN PARAGRAPHS 197 TO 204 IS NEW,

14   CORRECT?

15       IT'S NOT CONTAINED IN YOUR EARLIER REPORT?

16       HIS ANSWER:  YES, BECAUSE I'M ONLY FOCUSSING ON THE SUBSET

17   OF PRODUCTS THAT ARE NOW RELEVANT TO THIS TRIAL.

18       IT'S A NEW WAY TO ANALYZE IT, BUT IT'S NOT DRIVEN BY THE

19   FACT THAT THERE'S A SUBSET OF PRODUCTS.  IT'S AN ENTIRELY NEW

20   METHOD USING RETAIL PRICE INSTEAD OF AVERAGE SALES PRICE.

21           MR. ALDEN:  YOUR HONOR, MR. MCELHINNY JUST ANSWERED

22   HIS OWN QUESTION BY MR. WAGNER'S DEPOSITION TESTIMONY.  HE JUST

23   SAYS IT IS THE SAME OPINION, BUT IT IS FOR THE SAME SUBSET OF

24   PRODUCTS THAT ARE AT ISSUE IN THE NEW TRIAL.

25           MR. MCELHINNY:  HE SAID IT IS A NEW OPINION.

1          THE COURT:  WELL, DO YOU AGREE THAT'S CHANGING FROM

2     LOOKING AT AVERAGE SALES PRICING TO RETAIL PRICING?

3          MR. ALDEN:  NO, YOUR HONOR.  MR. WAGNER PREVIOUSLY

4     LOOKED AT RETAIL PRICING AND HE'S LOOKING AT RETAIL PRICING

5     AGAIN.  HE'S JUST LOOKING AT THE SUBSET OF PRODUCTS THAT ARE

6     NOW AT ISSUE BECAUSE THERE WOULD BE NO POINT IN LOOKING AT IT

7     FOR ALL OF THE PRODUCTS THAT WERE PREVIOUSLY AT ISSUE IN THE

8     OTHER TRIAL.

9          MR. MCELHINNY:  IF THAT WERE TRUE, YOUR HONOR, YOU

10    COULD STRIKE THE NEW STUFF, AND THEY WOULD BE PERFECTLY HAPPY.

11         MR. ALDEN:  WELL, NO, YOUR HONOR, THAT DOESN'T

12    REALLY FOLLOW, YOUR HONOR.

13         THE COURT:  WELL, I'M LOOKING AT 195 THROUGH 197 AND

14    IT JUST DOESN'T RESEMBLE 189 AND 190.

15         MR. ALDEN:  YES, YOUR HONOR, BECAUSE 18 -- SORRY.

16    YOU'RE REFERRING TO?

17         THE COURT:  189 TO 190, THE 2013 REPORT.  IT DOESN'T

18    RESEMBLE PARAGRAPH 195 THROUGH 197 OF THE 2012 REPORT AT ALL.

19         AND SAME FOR 413.  I AGREE IT WAS FOCUSSED ON AVERAGE

20    SALES PRICE AND IN THE 2012 REPORT AND IT WAS DIFFERENT.  SO

21    I'M PROBABLY GOING TO GRANT THIS MOTION.

22         LET'S GO AHEAD WITH SOME OTHER ISSUES.

23         I'M UNCLEAR WITH -- HOW DOES MS. DAVIS RELY ON THE JURY'S

24    FINDINGS OF NON-INFRINGEMENT IN THE LAST TRIAL IN UPDATING

25    MR. MUSIKA'S CALCULATIONS?  WHERE DOES THAT --

1          MR. MCELHINNY:  WHEREAS BEFORE THERE WAS A UNIVERSE

2   OF INFRINGING PHONES AND THAT UNIVERSE HAD TO BE DIVIDED

3   AMONGST OTHER ALTERNATIVES AND POSSIBILITIES.

4     SHE HAS MADE THAT UNIVERSE LARGER BECAUSE THE NUMBER OF

5   THE INFRINGING PHONES THAT WE'RE DEALING WITH HERE IS SMALL.

6   SO IT CHANGES APPLE'S MARKET SHARE.

7     WHAT SHE DOES NOT DO IS OPINE ON WHETHER ANY OF THOSE

8   PHONES WOULD BE AN ACCEPTABLE ALTERNATIVE DESIGN TO CUSTOMERS.

9          MS. MAROULIS:  YOUR HONOR, THAT'S NOT CORRECT.  IN

10  HER DEPOSITION MS. DAVIS ADMITS SHE'S USING THE PRODUCT THAT DO

11  NOT INFRINGE AS NON-INFRINGING ALTERNATIVES.

12    IN PARTICULAR, ON PAGE 115 OF HER DEPOSITION SHE SAYS, SHE

13  ASSUMES THAT THE NON-INFRINGING GALAXY TABLET THAT WAS

14  INTRODUCED IN JULY OF 2011 WOULD HAVE BEEN AN ACCEPTABLE

15  ALTERNATIVE FOR THE BUYERS OF THE INFRINGING TABLET, AND,

16  THEREFORE, THEY WOULD HAVE PURCHASED THAT PRODUCT INSTEAD.

17    THAT WAS -- THAT IS WHY WE SAY THAT SHE RELIES ON PRODUCTS

18  FOUND NOT TO INFRINGE IN HER REPORT AND SO DOES MR. WAGNER.

19    AND I WAS HOPING I COULD ADDRESS YOUR HONOR'S PRIOR

20  STATEMENT ABOUT NON-INFRINGING PHONES AT THIS POINT.

21         THE COURT:  SO -- BUT YOU WANT HER TO DO THAT; IS

22  THAT CORRECT?  YOU'RE NOT CHALLENGING HER, YOU KNOW, REDUCING

23  HER CALCULATIONS TO REFLECT THE JURY'S OWN INFRINGEMENT

24  FINDINGS OR HER FINDINGS THAT THOSE ARE NOT INFRINGING; IS THAT

25  RIGHT?  CAN WE GET AGREEMENT HERE?  YOU LIKE THAT?

1          MS. MAROULIS:  WE'RE FINE WITH THAT.  WE'RE SIMPLY

2     SAYING THAT MR. WAGNER DID THE SAME, AND WE SHOULD BE ABLE TO

3     USE THOSE PHONES THAT WERE FOUND NOT TO INFRINGE AS ACCEPTABLE

4     NON-INFRINGING SUBSTITUTES BECAUSE THE LAST TRIAL APPLE CAME

5     HERE AND SAID ALL OF THESE PHONES INFRINGE AND THEY SHOWED THE

6     ANALYSIS TO THE JURY, THEY PRESENTED THEIR EXPERTS AND THEIR

7     MODELS AND THEIR SLIDES.  AND THEN THEY, THE JURY, SAID THESE

8     PRODUCTS INFRINGE AND THESE DO NOT.

9          SO IT IS CLEAR FROM THAT, THAT THE PHONES THAT DO NOT

10     INFRINGE ARE ACCEPTABLE COMMERCIAL ALTERNATIVES BECAUSE APPLE

11     THEMSELVES THOUGHT THEY WERE INFRINGING AND THERE WERE SALES

12     PROVEN DURING THE TRIAL OF THOSE PHONES.  SO CLEARLY CUSTOMERS

13     BOUGHT THOSE PHONES.  THOSE PHONES WERE NOT PHONES SITTING ON

14     THE SHELF THAT NO ONE EVER BOUGHT BECAUSE THE SALES NUMBERS

15     WERE INTRODUCED IN THE LAST TRIAL.

16          SO WE NEED TO USE THESE AS NON-INFRINGING ALTERNATIVES

17     BECAUSE IT IS THE CLOSEST AND LEAST DISPUTED POSSIBLE WAY

18     BECAUSE -- AND NOW THE JURY HAS SPOKE AND FOUND NON-INFRINGING.

19          THE COURT:  WELL, LET ME HEAR FROM -- I WOULD AGREE

20     THAT I THINK THE NUMBERS, THE CALCULATIONS SEEM TO REFLECT -- I

21     DON'T KNOW, MAYBE THEY DON'T -- THE JURY'S FINDINGS OF

22     NON-INFRINGEMENT, BUT I'M INCLINED NOT TO OPEN UP THE

23     FLOODGATES AND START HAVING OTHER THINGS FROM THE LAST TRIAL

24     CHANGING THE RECORD BEFORE THIS JURY.

25          SO LET ME ASK, MR. MCELHINNY, HOW DO YOU RECONCILE THAT

```
 1        IT'S NOT FAIR TO HAVE THE CALCULATION INCLUDE PRODUCTS THAT

 2   DON'T INFRINGE, ON THE OTHER HAND, I WOULD PREFER TO KEEP MY

 3   BRIGHT LINE RULE.

 4        MR. MCELHINNY:  YOU HAVE KEPT YOUR BRIGHT LINE RULE.

 5   WE'RE TALKING ABOUT TWO COMPLETELY -- MAYBE NOT COMPLETELY,

 6   THAT'S ARGUMENTATIVE -- BUT TWO DIFFERENT REAL ISSUES HERE.

 7        ONE IS WHAT ARE THE NUMBER OF INFRINGING PHONES FOR WHICH

 8   WE'RE ENTITLED TO RECOVER EITHER LOST PROFITS OR A ROYALTY?

 9        OBVIOUSLY THAT NUMBER HAS TO COME DOWN BECAUSE SOME OF THE

10   PHONES WERE FOUND NOT TO INFRINGE.

11        SO THAT JUST HAS TO HAPPEN AS A RESULT OF THE FACT THAT

12   WE'RE HAVING A NEW TRIAL.

13        THERE'S A SEPARATE QUESTION.  THERE'S A SEPARATE DEFENSE

14   THAT SAMSUNG PUT FORWARD, WHICH IS THERE WERE OTHER ACCEPTABLE

15   NON-INFRINGING ALTERNATIVES ON THE MARKETPLACE OR THEY ACTUALLY

16   MAKE BOTH HALVES.  ONE, THEY SAY THERE WERE ACCEPTABLE

17   NON-INFRINGING ALTERNATIVES; AND, TWO, THEY SAY IN A VERY SHORT

18   PERIOD OF TIME WE COULD HAVE DESIGNED AN ACCEPTABLE.

19        BUT ON THAT LEVEL WHEN YOU'RE LOOKING AT THAT QUESTION,

20   WHAT YOU'RE ASKED TO DETERMINE IS WHETHER OR NOT THERE'S A

21   NON-INFRINGING ALTERNATIVE THAT HAS THE FEATURES OF THE PATENT.

22        AND WHAT WE DON'T KNOW IN THIS CASE IS THAT WE DON'T KNOW

23   THE BASIS, NO ONE KNOWS, AND MR. WAGNER CERTAINLY DOESN'T KNOW,

24   THE BASIS ON WHICH THE JURY FOUND NON-INFRINGEMENT HERE.

25        THEY HAD THE PHONES IN THERE.  WE DON'T KNOW WHETHER THEY
```

```
1     FOUND THE FEATURE AND SAID IT WASN'T COVERED BY THE PATENT

2     LANGUAGE OR WE DON'T KNOW WHETHER THEY TRIED THE PHONES AND IT

3     SAID IT DIDN'T HAVE THE FEATURE ON IT.

4          SO TO SAY THAT THOSE PHONES ARE AN ACCEPTABLE DESIGN

5     AROUND IS A DIFFERENT QUESTION AND IT REQUIRES A COMPLETELY --

6     LITERALLY IT WOULD REQUIRE RETRYING THE QUESTION OF WHETHER OR

7     NOT THE FEATURES IN THE PATENT WERE PRESENT IN THE PHONES AND

8     WHETHER CUSTOMERS WOULD FIND THEM ACCEPTABLE.

9          THE COURT:  WELL, I FIND THAT LESS CONVINCING.  I'M

10    MORE CONVINCED BY -- YOU KNOW, EVERY COURT HAS TO SET A

11    DEADLINE, YOU KNOW, A CUTOFF OF WHEN EVIDENCE CAN BE ADMITTED

12    AND THAT WILL NECESSARILY UNFORTUNATELY MEAN THAT SOME RELEVANT

13    EVIDENCE THAT IS CREATED OR DISCOVERED, OR WHATEVER, AFTERWARDS

14    IS NOT GOING TO BE INCLUDED IN THE TRIAL.

15         AND FOR PURPOSES OF CASE MANAGEMENT, CASE SCHEDULING, AND

16    ALSO TRYING TO KEEP THE RECORD FOR APPELLATE REVIEW TO BE

17    LARGELY THE SAME, I NEED TO ENFORCE THIS RULE.

18         AND AS WITH MOST THINGS IN THIS CASE, IT'S LIKE A CANCER.

19    IT JUST METASTASIZES ANY TIME EXTENSIONS ARE MADE.  SO I THINK

20    THAT WE HAVE TO KEEP THIS AS CLOSE, IF NOT IDENTICAL, TO THE

21    RECORD AS POSSIBLE STARTING BEFORE THE LAST TRIAL AND JUST HAVE

22    THE QUESTION OF THE VALUE OF THE PATENTED FEATURES BE THE

23    SUBJECT OF THIS TRIAL.  SO --

24         MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS THIS

25    BRIEFLY?
```

1          THE COURT:  YES, GO AHEAD, PLEASE.

2          MS. MAROULIS:  THESE PHONES ARE ALREADY IN EVIDENCE.

3    THEY WERE ADMITTED INTO EVIDENCE LAST TIME.  SO WE'RE NOT

4    TALKING ABOUT PHONES THAT WERE DISCOVERED OR FOUND IN DISCOVERY

5    LATER.

6          SO WE UNDERSTAND WHAT YOUR HONOR IS SAYING.  BEFORE THE

7    TRIAL THEY WERE ACCUSED OF INFRINGEMENT AND THEY WERE NOT FOUND

8    INFRINGING, BUT WE CANNOT IGNORE THE JURY'S FINDINGS THAT THESE

9    PHONES, THE VERY PHONES THAT APPLE SAID DID EVERYTHING IN THE

10   SAME WAY, USING THE SAME WAYS AND RESULTS THAT ARE THE PHONES

11   THAT ARE FOUND INFRINGING ARE NOT ACTUALLY INFRINGING.

12         AND IT DOESN'T MATTER WHETHER MR. WAGNER KNOWS HOW THE

13   JURY DID IT OR NOT, THE FACT OF THEM BEING NON-INFRINGING IS

14   VERY USEFUL HERE FOR THE LOST PROFITS ANALYSIS BECAUSE THE LOST

15   PROFITS ANALYSIS SAYS ARE THERE ANY NON-INFRINGING ALTERNATIVES

16   THAT ARE EITHER ON THE MARKET OR AVAILABLE, COULD BE AVAILABLE?

17         SO THEY COULD BE AVAILABLE IS THE DESIGN AROUND PART BUT

18   ON THE MARKET THESE VERY PHONES, BECAUSE WE HEARD THEIR OWN

19   DAMAGES EXPERT TESTIFY THAT THESE PHONES WERE SOLD, THEY WERE

20   SOLD IN LARGE NUMBERS, THEY WERE POPULAR, THEY CLAIMED THEY

21   WERE POPULAR FOR VARIOUS REASONS, AND THOSE PHONES WERE THE

22   PHONES THAT THE JURY FOUND NON-INFRINGING.  SO THEY ALREADY

23   MADE NON-INFRINGING ALTERNATIVES THAT IS A VERY, VERY CLOSE FIT

24   FOR THE LOST PROFITS ANALYSIS HERE.

25         MR. MCELHINNY:  THE THING THAT IS RIGHT ABOUT YOUR

 1    HONOR'S RULING IS THAT SAMSUNG COULD HAVE MADE ALL OF THESE

 2    ARGUMENTS AT THE FIRST TRIAL.  THEY COULD HAVE ARGUED NOT ONLY

 3    DOES THIS NOT INFRINGE BUT IT'S A NON-INFRINGING ALTERNATIVE,

 4    AND THEY WOULD HAVE BOUGHT THIS INSTEAD.

 5          THE WHITE PHONE AND BLACK PHONE IS ENTIRELY NEW.  WE DON'T

 6    HAVE ANY JURY FINDING ABOUT THE WHITE PHONE.  THAT COULD HAVE

 7    BEEN A DEFENSE THAT WAS PUT IN THE FIRST TRIAL.

 8          THEY COULD HAVE ARGUED -- THERE'S NO NEW FACTS THAT HAVE

 9    CHANGED OTHER THAN THE FACT THAT MR. WAGNER THINKS HE KNOWS HOW

10    THE JURY DID IT.

11          SO YOUR HONOR'S POINT ABOUT WHETHER OR NOT -- THIS IS NOT

12    ONLY A NEW THEORY, IT'S A NEW THEORY BASED ON NEW DATA THAT

13    THAT COULD HAVE BEEN BROUGHT IN THE FIRST TRIAL AND THEY CHOSE

14    NOT TO DO IT.

15              MR. PRICE:  YOUR HONOR, IF I COULD JUST ADD, IN THE

16    FIRST TRIAL WITH DAMAGES YOU ASSUMED LIABILITY.  ASSUMING

17    LIABILITY, WHAT ARE THE DAMAGES?

18          YOU CAN'T HOLD OUR DAMAGES EXPERT TO THAT ASSUMPTION FOR

19    THIS PART OF THE TRIAL BECAUSE WE NOW HAVE A DETERMINATION

20    THERE IS NOT LIABILITY ON CERTAIN PHONES, AND, THEREFORE, THEY

21    ARE NON-INFRINGING ALTERNATIVES.

22          HE COULDN'T ASSUME THAT IN THE FIRST PART OF TRIAL BECAUSE

23    THEIR DAMAGES EXPERTS ASSUME LIABILITY.  IF APPLE IS RIGHT,

24    WHAT ARE THE DAMAGES?

25              AND SO NOW WE KNOW THAT THESE PHONES ARE NOT INFRINGING.

1        IT'S A DIFFERENT WORLD CREATED BY THE JURY VERDICT.

2        AND SO THE QUESTION IS GIVEN THAT JURY'S VERDICT, WHAT ARE

3   THE DAMAGES?  AND THAT'S WHAT THIS WHOLE PART OF THE TRIAL IS.

4   IT'S NOT WHAT ARE DAMAGES IN THE ABSTRACT OR WHAT WOULD THEY

5   HAVE BEEN AT THE START OF THE FIRST TRIAL?  IT'S NOW WE'RE

6   TALKING ABOUT DAMAGES AND GIVEN THE JURY'S VERDICT, FOR

7   EXAMPLE, THIS JURY IS GOING TO BE TOLD THAT THERE WAS

8   INFRINGEMENT AND THERE IS VALIDITY TO CERTAIN PATENTS, BUT NOW

9   WE KNOW GIVEN THE JURY'S VERDICT THERE IS NO INFRINGEMENT AS TO

10  OTHER PATENTS, OTHER PRODUCTS.

11       SO WE SHOULD BE PERMITTED TO USE THAT IN DETERMINING WHAT

12  THE DAMAGES ACTUALLY ARE.

13            MR. MCELHINNY:  EVEN IF YOU WERE TEMPTED TO GO

14  THERE, MR. WAGNER, THE QUESTION OF WHETHER SOMETHING IS AN

15  ACCEPTABLE ALTERNATIVE IS A QUESTION OF TECHNICAL KNOWLEDGE AND

16  TECHNICAL COMPETENCY.

17       DAMAGES EXPERTS DON'T MAKE THAT DETERMINATION.  WHAT

18  THEY'RE SAYING IS THAT BECAUSE THERE'S A JURY VERDICT HERE,

19  THAT PROVES THAT THIS IS -- WELL, A ROTARY PHONE IS A

20  NON-INFRINGING TELEPHONE, BUT NO ONE WOULD HAVE ASSERTED THAT

21  IT'S AN ACCEPTABLE NON-INFRINGING ALTERNATIVE TO THE PATENTS AT

22  ISSUE IN THIS CASE.

23       THAT'S FOUNDATIONAL THAT YOU WOULD HAVE TO HAVE A TRIAL,

24  AND MR. WAGNER CAN'T DO THAT.  AND IT WAS NEVER DONE IN THE

25  FIRST TRIAL, AND IT'S A VERY COMPLEX QUESTION.

1           MS. MAROULIS:  YOUR HONOR, MR. WAGNER DOES NOT NEED

2      TO DO THAT.  APPLE PRESENTED EVIDENCE IN THE LAST TRIAL WHERE

3      THEY THOUGHT THEY SAID THOSE PHONES ARE INFRINGING AND THOSE

4      PHONES COMPETE WITH APPLE AND THOSE PHONES POSSESS

5      CHARACTERISTICS.  THEY HAVE PROVEN THEIR CASE.  THERE WAS NO

6      ROTARY PHONES IN THE LAST TRIAL.

7           MR. MCELHINNY COMES UP WITH A HYPOTHETICAL EXAMPLE, BUT

8      THE PHONES THAT WERE IN THE TRIAL WERE PRESENTED BY APPLE TO

9      INFRINGE IN THE EXACT SAME WAY.

10          IF YOU RECALL MR. BALAKRISHANAN AND MR. SINGH WOULD PUT UP

11     ONE PHONE AND TALK ABOUT IT AND THEN SAY AND ALL OF THE OTHERS

12     DO IT IN THE SAME WAY, AND THAT'S ONE OF THE REASONS WE MOVE

13     FOR A JMOL SAYING IT WAS NOT SUFFICIENT AND IT WAS UPHELD.

14          SO THE POINT IT IS THAT THEY SAID THESE PHONES ACTED IN

15     THE SAME WAY.  THEY INTRODUCED THE NUMBER OF THE SALES AND THEY

16     INTRODUCED THE INFORMATION ABOUT THOSE PHONES.  AND NOW THEY

17     ARE SAYING WE DON'T KNOW IF THEY INFRINGE, AND EVEN THOUGH THEY

18     SAID THEY DID, AND NOW THEY SAY WE DON'T KNOW IF THEY'RE

19     ACCEPTABLE, EVEN THOUGH THEY PRESENTED TESTIMONY THAT CUSTOMERS

20     WERE BUYING THEM ACCORDING TO APPLE FOR THE VERY INFRINGING

21     FEATURE AND THAT WAS THEIR EVIDENCE AND THAT'S WHAT THEY PUT

22     ON.

23          THE COURT:  HOW WOULD IT WORK IF I ALLOWED YOU TO

24     BRING THIS IN?  WOULD YOU HAVE AN EXPERT TESTIFY OR HOW WOULD

25     YOU --

1          MS. MAROULIS:  WE CAN HAVE MR. WAGNER SIMPLY STATE

2     THAT THESE ARE THE PHONES THAT ARE NON-INFRINGING ALTERNATIVES

3     AND GIVE HIS OPINION.

4          IF THE COURT NEEDS OTHER FOUNDATIONAL WITNESSES, WE CAN

5     CONFER AND COME UP WITH A METHOD BUT MR. WAGNER'S OPINION

6     RELIES ON THESE PHONES, AND HE DOESN'T NEED TO EXPLAIN HOW THEY

7     WORK.

8          MR. MCELHINNY:  YOUR HONOR, AS YOU REMEMBER, THE

9     QUESTION OF DEMAND AND WHAT PEOPLE WOULD TAKE AND WHETHER THEY

10    WERE ACCEPTABLE, THAT WAS, THAT WAS PUT IN AT THE LAST TRIAL

11    THROUGH SURVEY EVIDENCE, IT WAS PUT IN THROUGH WHAT CUSTOMER

12    REACTIONS WAS.

13         THE COURT:  WELL, WHAT IF IT IS JUST AN INSTRUCTION

14    THAT SAYS, "IN THE PRIOR PROCEEDINGS THE FOLLOWING PHONES WERE

15    FOUND NOT TO INFRINGE"?

16         MS. MAROULIS:  YES, YOUR HONOR, WE WOULD TAKE THAT.

17         MR. MCELHINNY:  I DON'T THINK THAT'S -- ONE, I DON'T

18    THINK THAT'S RELEVANT TO THIS TRIAL; AND, TWO, THEN YOU'RE JUST

19    OPENING IT UP FOR ATTORNEY ARGUMENT, I MEAN, BASED ON NO -- IT

20    DOESN'T GO TO THIS ISSUE.

21         THE COURT:  IT GOES TO DAMAGES.  I THINK IT'S

22    RELEVANT TO DAMAGES.

23         MR. MCELHINNY:  IT DOESN'T GO TO THE ISSUE OF

24    WHETHER OR NOT SOMETHING IS A NON-INFRINGING ALTERNATIVE.

25    THEY'RE NOT CO-EQUAL.

1    THE FACT THAT IT DIDN'T INFRINGE, BECAUSE WE DON'T KNOW

2    WHY IT DIDN'T INFRINGE, WE DON'T KNOW THE BASIS UPON WHICH THE

3    JURY -- I MEAN, LET'S BE CLEAR, I STILL DON'T KNOW WHAT THE

4    BASIS WAS BECAUSE WE THOUGHT THAT THEY DID INFRINGE.  WE DO

5    THINK THAT THEY INFRINGE.

6    BUT THE QUESTION OF WHETHER OR NOT A CONSUMER, HAVING

7    WHATEVER REASONING THE JURY WOULD HAVE HAD FOR THAT, WOULD HAVE

8    FOUND THAT PHONE TO BE SOMETHING ALTERNATIVE THAT THEY WOULD

9    BUY IS A FACTUAL ISSUE THAT HAS TO BE TRIED.

10   MR. PRICE:  HE'S RIGHT, THE JURY DID NOT FIND THAT

11   THESE PHONES ARE NON-INFRINGING ALTERNATIVES.  WHAT THEY FOUND

12   IS THAT THESE PHONES DON'T INFRINGE.

13   AND SO WHAT WE SHOULD BE ABLE TO DO IS TO SAY, WELL, THEY

14   SAY THIS PHONE INFRINGES THIS PATENT AND TO A CONSUMER WHAT

15   THAT LOOKS LIKE IS THIS.  AND LOOK AT THIS PHONE, IT DOESN'T

16   INFRINGE, AND HERE'S WHAT THIS PHONE DOES.  AND THAT DOESN'T

17   EVEN REQUIRE EXPERT TESTIMONY.

18   THE PHONES ARE THE PHONES ARE THE PHONES.  I MEAN, THERE

19   IS TESTIMONY ABOUT WHAT THEY DO, THAT'S BY APPLE, BUT WE CAN

20   JUST SAY, AND MR. WAGNER CAN SAY, HERE'S A PHONE WHICH WE KNOW

21   DOES NOT INFRINGE AND HERE'S WHAT IT DOES.

22   AND THE JURY CAN DECIDE WHETHER OR NOT THEY WOULD THINK AS

23   CONSUMERS WHETHER OR NOT THAT'S AN ALTERNATIVE TO THE PHONES

24   THAT DO INFRINGE.

25   MR. MCELHINNY:  YOU SEE, THAT'S SPECULATION.  THE

```
1    JURY COULD HAVE FOUND AGAINST US ON A FAILURE OF SUFFICIENT

2    PROOF, AND THEY MADE THAT ARGUMENT.  THEY MADE THE ARGUMENT YOU

3    HAVE TO COME IN AND SHOW EACH ONE OF THESE PHONES.

4         AND THE JURY SAID, WE DIDN'T GET ENOUGH PROOF ABOUT THIS

5    PARTICULAR PHONE.  THEY COULD HAVE ACTUALLY TRIED THE PHONE AND

6    NOT FOUND THE FUNCTION BECAUSE THEY WERE ABLE TO DO THAT IN THE

7    JURY ROOM.

8         IF YOU TRY, IF YOU LOOK AT THE LAW OF WHAT AN ACCEPTABLE

9    NON-INFRINGING ALTERNATIVE IS, YOU HAVE TO PROVE THAT IT HAS

10   THE SAME FEATURES AND THAT IT OPERATES IN THE SAME WAY AND THAT

11   A CONSUMER WOULD FIND THEM INTERCHANGABLE.  AND THERE'S NO

12   FACTUAL BASIS TO MAKE THAT FINDING HERE.

13        AND AS I'VE SAID, IT COULD HAVE BEEN TRIED IN THE FIRST

14   CASE.  IF THEY BELIEVED THAT, THEY COULD HAVE TRIED IT THE

15   FIRST TIME AROUND.  THEY COULD HAVE SAID -- THEY HAVE ARGUED TO

16   YOU THAT THEY SHOULD BE ABLE TO ARGUE TO YOU A WHITE PHONE,

17   MR. WAGNER SAYS A WHITE PHONE IS AN ALTERNATIVE NON-INFRINGING

18   FEATURE BECAUSE BLACK PHONES WERE FOUND TO INFRINGE.  THEY

19   COULD HAVE DONE THAT IN THE FIRST TRIAL AND THEY DIDN'T.

20             MS. MAROULIS:  YOUR HONOR, THE WHITE PHONE ARGUMENT

21   IS COMPLETELY DIFFERENT.  WE ARE TALKING ABOUT THE PHONES THAT

22   WERE INTRODUCED INTO EVIDENCE IN THIS TRIAL AND FOUND

23   NON-INFRINGING.

24        COUNSEL SAYS THEY HAVE TO HAVE THE SAME FEATURE.  APPLE

25   ARGUED THEY HAD THE SAME FEATURES.  COUNSEL SAYS THE PUBLIC HAS
```

1    TO DEMAND THEM.  APPLE ARGUED THAT THERE WAS A CONSUMER DEMAND

2    FOR THESE PHONES.  THESE PHONES ARE ACTING AS ALTERNATIVES.

3            AND I STILL WANT TO GO BACK TO MS. DAVIS'S TESTIMONY IN

4    HER DEPOSITION WHERE SHE USED GALAXY TABLET THAT WAS FOUND AS A

5    NON-INFRINGING SUBSTITUTE.  WE DON'T QUARREL WITH THAT.

6            WE SIMPLY WILL ILLUSTRATE THAT THAT'S HOW DAMAGES EXPERTS

7    USE THESE FINDINGS.  THEY USE THE FINDING FROM THE TRIAL TO

8    DEDUCT THAT THIS IS A -- I READ TO YOU ONE QUOTE FROM HER

9    DEPOSITION PAGE 115.  THERE'S ANOTHER ONE WHERE SHE STATED THAT

10   SHE STOPPED THE ACCUMULATION OF LOST PROFITS FOR THE GALAXY TAB

11   7.0 PRODUCTS IN JULY OF 2011.

12           BASED ON THE JURY'S FINDINGS, THAT SAME GALAXY TAB 10.1 4G

13   LT DID NOT INFRINGE.  SHE USES IT IN THE SAME WAY AND

14   MR. WAGNER WOULD AS WELL.

15               THE COURT:  YES.  I DID WANT TO ASK WHY MS. DAVIS

16   CAN DO IT BUT MR. WAGNER CANNOT?

17               MR. MCELHINNY:  SHE DIDN'T IN HER REPORT.  IT'S A

18   DIFFERENT -- WE CAN'T CLAIM DAMAGES FOR PHONES THAT WERE FOUND

19   NOT TO INFRINGE.  SO THE NUMBER OF INFRINGING PHONES HAS TO GO

20   DOWN, AND THAT'S HOW SHE USED THE NUMBER.

21               MS. MAROULIS:  YOUR HONOR, I READ FROM THE

22   DEPOSITION.

23               MR. MCELHINNY:  SHE DID NOT OPINE IN ANY WAY, SHAPE

24   OR FORM THAT A CUSTOMER WOULD HAVE FOUND THIS AN ACCEPTABLE

25   ALTERNATIVE TO OUR PHONE.

```
 1           MS. MAROULIS:  YOUR HONOR, I DEPOSED MS. DAVIS.

 2    THOSE ARE HER WORDS, AND WE ATTACHED THEM TO THE DECLARATION IN

 3    SUPPORT OF THE MOTION.

 4           THE COURT:  ALL RIGHT.  LET ME TAKE THAT UNDER

 5    ADVISEMENT.

 6        LET ME JUST GO BACK TO A HOUSEKEEPING ISSUE ON WHAT APPLE

 7    IS GOING TO PROVIDE.  I WOULD REQUEST THAT YOU NOT LIMIT YOUR

 8    COPYING/DEMAND DOCUMENTS TO JUST SAMSUNG INTERNAL DOCUMENTS

 9    SINCE THIS IS GOING TO BE A FAIRLY DISPUTED ISSUE.  IF THERE

10    ARE OTHER DOCUMENTS THAT YOU INTEND TO SEEK TO ADMIT FOR THAT

11    PURPOSE OF DEMAND, YOU WOULD INCLUDE THEM UNLESS THERE'S REALLY

12    NO OBJECTION.

13        DO YOU -- IS YOUR OBJECTION MOSTLY FOCUSSED ON YOUR OWN

14    INTERNAL DOCUMENTS ON THE COPYING ISSUE?

15           MR. MCELHINNY:  THAT WAS THEIR ONLY OBJECTION.

16           MS. MAROULIS:  YOUR HONOR, IN OUR BRIEFING WE ALSO

17    ADDRESS THIRD PARTY DOCUMENTS.  I THINK THERE WERE DOCUMENTS

18    THAT IMPLY THE COPYING AS WELL.  SO IT'S ALL IN OUR MOTION.  WE

19    DID OBJECT.  OUT OF THE 30 EXHIBITS WE CHALLENGED, PROBABLY 25

20    TO 27 ADDRESS THIS ISSUE.

21           THE COURT:  SO ARE YOU TALKING ABOUT THE JOURNAL,

22    THE NEW --

23           MR. MCELHINNY:  I UNDERSTAND WHAT THEIR ISSUE IS,

24    AND WE WILL DISCLOSE TO YOU EVERY DOCUMENT THAT THEY'RE GOING

25    TO BE WORRIED ABOUT MIGHT BE THE BASIS OF A COPYING.
```

```
 1            THE COURT:  OKAY.  AND I'D LIKE YOU TO IDENTIFY
 2    WHERE THE PATENTED FEATURE IS DISCUSSED, AND IF IT'S NOT, WHY
 3    THE DOCUMENT IS STILL RELEVANT AND SHOULD BE ADMITTED IF IT
 4    DOESN'T DISCUSS A SPECIFIC PATENTED FEATURE.  AND I WOULD LIKE
 5    YOU TO DISCUSS THEIR QUESTION OF IF IT'S NOT A PRODUCT THAT IS
 6    AT ISSUE IN THIS TRIAL AND YOUR POSITION IS THAT IT'S DEMAND
 7    FOR THE PRODUCT AND NOT DEMAND FOR THE PATENTED FEATURE.
 8            MR. MCELHINNY:  NO, YOUR HONOR.
 9            THE COURT:  THEN DEMAND FOR THE PRODUCT SHOULDN'T
10    MATTER IF IT'S NOT A PRODUCT IN THIS CASE.
11            MR. MCELHINNY:  I'M SORRY IF I MISSPOKE.  IT IS A
12    DEMAND FOR BOTH.  SO, FOR EXAMPLE, IF THEY INFRINGE OUR PATENT
13    IN PRODUCT ONE AND THEN THEY RE -- AND THAT WORKS FOR THEM AND
14    SO THEY CONTINUE TO USE THAT PATENT IN PRODUCTS TWO, THREE,
15    FOUR, FIVE, AND SIX, THAT SHOWS A DEMAND FOR THE FEATURE.
16            THE COURT:  OKAY.  WELL, WHY DON'T YOU LAY OUT
17    WHATEVER YOUR THEORY IS, LAY IT OUT, PLEASE, FOR THE DIFFERENT
18    DOCUMENTS.
19            MR. MCELHINNY:  THANK YOU.
20            THE COURT:  ALL RIGHT.  SO LET ME GO TO MY OTHER
21    QUESTIONS.
22        ON THIS ISSUE ABOUT THE GEM SALES, DOES APPLE CONCEDE THAT
23    AT TRIAL YOU ONLY SOUGHT TO INTRODUCE THE VERIZON U.S. SALES OR
24    NOT?  BECAUSE IT SEEMED LIKE --
25            MR. MCELHINNY:  NO.
```

```
1            THE COURT:  NO?

2            MR. MCELHINNY:  AT TRIAL BOTH PARTIES WERE WORKING

3    OFF A TOTAL NUMBER OF GEM SALES AND THOSE -- THERE WAS AN

4    AGREEMENT IN TERMS OF THE NUMBER OF GEM SALES, THE PRODUCTS,

5    THE SALES PRODUCTS THAT WERE AT ISSUE.

6         AND SO WE PUT IN A DOCUMENT THAT WENT TO VERIZON TO SHOW

7    THE GEM INFRINGEMENT, BUT THIS ISSUE OF OTHER CARRIERS WAS NOT

8    AT ISSUE BECAUSE WAGNER HAD NOT RAISED IT.  HE AGREED ON OUR

9    NUMBERS IN TERMS OF THE NUMBER OF PRODUCTS THAT WERE AT ISSUE.

10        AND SO THAT NUMBER OF PRODUCTS WAS WHAT WAS AT ISSUE.

11            THE COURT:  OKAY.  AND THAT WAS NOT LIMITED BY THE

12   DISTRIBUTOR?

13            MR. MCELHINNY:  IT WAS NOT.  WELL --

14            THE COURT:  WELL, WHERE IS THIS ISSUE COMING FROM,

15   THAT'S WHAT I --

16            MR. MCELHINNY:  THE ONE EXHIBIT THAT WE PUT IN WAS

17   PARTICULAR TO AN EXHIBIT.

18            THE COURT:  YES.  WAS PARTICULAR TO A WHAT, A

19   DISTRIBUTOR?

20            MR. MCELHINNY:  TO A DISTRIBUTOR.

21            THE COURT:  AND THAT WAS VERIZON?

22            MR. MCELHINNY:  RIGHT.

23            THE COURT:  OKAY.

24            MR. MCELHINNY:  BUT THE NUMBERS IN OUR DAMAGES

25   REPORT, THE NUMBERS WE CLAIMED FOR, AND THE NUMBER OF ITEMS
```

```
 1        THAT WERE UNDISPUTED, WE BOTH HAD THE SAME NUMBER OF GEMS THAT

 2        HAD BEEN SOLD, WE TOOK THAT NUMBER FROM SAMSUNG.  WE USED THEIR

 3        NUMBER THAT THEY REPORTED TO US OF GEM SALES.

 4             THE COURT:  OKAY.  SO WHY DID YOU INTRODUCE AN

 5        EXHIBIT THAT ONLY HAD VERIZON SALES?

 6             MR. MCELHINNY:  IN ORDER TO MEET OUR BURDEN OF PROOF

 7        WE PUT IT IN FOR A REASON.  WE ALSO PUT IN OUR DAMAGES REPORTS

 8        AND OUR DEMONSTRATIVES THAT SHOWED THE ACCUSED NUMBERS OF

 9        DEVICES AND THAT WAS UNCONTESTED.

10          IF IT HAD BEEN CONTESTED, IF THERE WAS AN ISSUE, THEN WE

11        COULD HAVE PUT IN OTHER DOCUMENTS, BUT WE DIDN'T FIGHT ISSUES

12        THAT WERE NOT CONTESTED AT TRIAL.

13             THE COURT:  WELL, YOU SAID THAT YOU PUT IN THE

14        VERIZON DOCUMENT TO MEET YOUR BURDEN OF PROOF.  DOES THAT MEAN

15        YOU DIDN'T MEET YOUR BURDEN OF PROOF AS TO NON-VERIZON

16        DISTRIBUTOR?

17             MR. MCELHINNY:  NO, YOUR HONOR.  WE HAD TO PROVE

18        THAT INFRINGING GEM PHONES WERE SOLD IN THE UNITED STATES, AND

19        WE PUT IN EVIDENCE THAT THOSE PHONES WERE SOLD IN THE UNITED

20        STATES.

21          BUT THE ISSUE OF HOW MANY OF THEM WAS NOT IN DISPUTE.

22             THE COURT:  OKAY.  DO YOU WANT TO RESPOND TO THAT?

23             MR. ALDEN:  YES, YOUR HONOR.  YOUR HONOR, THIS IS

24        NOT A QUESTION OF WHAT THE SALES NUMBERS THAT WERE PUT IN AT

25        THE FIRST TRIAL.
```

1        THIS IS A QUESTION OF WHETHER APPLE MET ITS BURDEN OF

2    PROOF TO SHOW THAT GEM PHONES THAT WERE SOLD TO OTHER CARRIERS

3    INFRINGE, AND THEY DID NOT MEET THAT BURDEN AT TRIAL.

4        THEY GAVE THE JURY ONE VERSION OF THE PHONE.

5            THE COURT:  WELL, THIS IS GROUNDHOG DAY.  IT DOESN'T

6    MATTER.  YOU'RE STARTING OVER.

7            MR. MCELHINNY:  IT'S ALSO A JMOL MOTION.

8            MR. ALDEN:  NO, YOUR HONOR, BECAUSE THEY ONLY GOT A

9    VERDICT ON ONE VERSION OF THE PHONE.  NOW THEY'RE SEEKING

10   DAMAGES -- NOW THEY WANT DAMAGES ON ALL VERSIONS OF THE PHONE.

11       IF THEY WANTED THE JURY TO RENDER A VERDICT ON ALL

12   VERSIONS OF THE PHONE, THEY SHOULD HAVE GIVEN THE JURY ALL

13   VERSIONS OF THE PHONE AND THEY DIDN'T.  AND I DON'T KNOW WHY

14   THEY DIDN'T.

15           THE COURT:  HOW DO YOU KNOW THAT THE VERDICT ONLY

16   COVERED VERIZON SALES?

17           MR. ALDEN:  BECAUSE, YOUR HONOR, THE VERDICT FORM

18   REFERS TO EXHIBIT NUMBERS WHENEVER IT REFERS TO A PRODUCT.  SO

19   IT HAS THE PRODUCT NAMES AND IT ASKS THE JURY TO FILL IN

20   WHETHER IT INFRINGED OR NOT, AND THE EXHIBIT NUMBER THAT WAS

21   PUT NEXT TO THE GEM WAS REFERRED TO THE VERIZON VERSION OF THE

22   GEM AND NO OTHER VERSION OF THE GEM.

23       AND SO THAT'S HOW WE KNOW WHAT THE JURY WAS ACTUALLY

24   LOOKING AT AND RENDERED A VERDICT ON.

25           THE COURT:  WAS THERE ANY -- THE EXHIBIT NUMBERS

1      WERE ACTUALLY EXHIBIT NUMBERS TO THE ACTUAL PHONES THEMSELVES.

2              MR. ALDEN:  CORRECT.

3              THE COURT:  SO WERE THERE ANY OTHER GEMS OTHER THAN

4      THE VERIZON VERSION THAT WERE INTRODUCED AT TRIAL?

5          I MEAN, EITHER WAY I DON'T THINK IT MATTERS.  I MEAN, WAS

6      IT IN THE UNDERLYING ORIGINAL WAGNER OR SUPPLEMENTAL WAGNER

7      REPORT, THE SALES FROM ALL GEMS IN THE U.S.?

8              MR. MCELHINNY:  IT WAS, YOUR HONOR, IT WAS ADMITTED

9      INTO EVIDENCE AS DEFENDANT'S EXHIBIT 676.025.

10         AND AS YOUR HONOR WILL RECALL, THIS IS THE SANCTIONS

11     ISSUE.  THE FINANCIAL DOCUMENTS SORT OF DRIBBLED OUT FROM, BUT

12     THIS DOCUMENT RELATES TO ALL GEM SALES IN THE UNITED STATES.  I

13     HAVE A COPY IF YOUR HONOR WOULD LIKE.  AND IT WAS ADMITTED INTO

14     EVIDENCE, AND IT DOES NOT BREAK IT DOWN BY DISTRIBUTOR.

15             MR. ALDEN:  YOUR HONOR, THIS IS THE SAME CONFUSION

16     ISSUE THAT WE HAVE HAD BEFORE WHICH IS APPLE PRESENTED SALES

17     NUMBERS FOR ALL GEM PHONES BUT DIDN'T PROVE THAT ALL GEM PHONES

18     INFRINGE.

19         APPLE PRESENTED ONE GEM PHONE AT TRIAL, THE VERIZON, AND

20     THE JURY MADE NO FINDING AS TO ANY OTHER VERSION OF THE GEM.

21             MR. MCELHINNY:  THAT'S A JMOL ISSUE, YOUR HONOR.  IT

22     SHOULD HAVE BEEN RAISED AT THE END OF THE TRIAL.  WE HAVE A

23     VERDICT THAT A CERTAIN NUMBER OF GEM PHONES AND DAMAGES

24     ASSIGNED FOR THOSE GEM PHONES AND THE BASIS WAS UPON THE NUMBER

25     OF SALES THAT WERE SHOWN.  THERE WAS NO DISTINCTION WHATSOEVER

1       BASED ON THE CARRIER.

2              AND NOW THEY'RE SAYING THAT BECAUSE WE ONLY PUT IN ONE

3       VERSION INTO THE EXHIBIT THAT THERE WASN'T ENOUGH EVIDENCE TO

4       CONVICT THE OTHERS, BUT THE NUMBERS AND DAMAGES ARE THERE AND

5       THEY DIDN'T RAISE IT IN A JMOL.

6              MR. ALDEN:  YOUR HONOR, WE'RE HAVING A TRIAL ON THIS

7       PHONE BECAUSE THE NUMBERS GIVEN BY THE PREVIOUS JURY WERE

8       VACATED.

9              SO THIS IS WHY WE'RE HERE TO DETERMINE WHAT DAMAGES ARE ON

10      THIS PARTICULAR PHONE THAT THE JURY RENDERED A LIABILITY

11      VERDICT ON AND NOT OTHER PHONES THAT THE JURY DIDN'T RENDER A

12      LIABILITY VERDICT ON.

13             APPLE SHOULDN'T BE ABLE TO GET DAMAGES FOR PHONES THAT THE

14      JURY NEVER RENDERED A VERDICT ON.  IF THEY WANTED TO RENDER A

15      VERDICT ON OTHER PHONES, THEY SHOULD HAVE PUT OTHER PHONES IN

16      EVIDENCE AND THEY SHOULD HAVE GIVEN THEM TO THE JURY.

17             MR. MCELHINNY:  WE DID, YOUR HONOR.  WE GAVE AN

18      EXAMPLE OF A PHONE.  AND I HANDED YOU THE WRONG DOCUMENT I'VE

19      BEEN TOLD, AND I'M SORRY.

20             WE PUT IN SAMSUNG'S SALES NUMBERS AS EXHIBIT 676.025, AND

21      WHICH SHOWS ALL OF THE PHONES OF GEM PHONES IN THE UNITED

22      STATES AS THEY HAVE BEEN DESCRIBED TO US BY SAMSUNG.

23             MR. ALDEN:  THEY PUT IN AN EXAMPLE OF THE VERIZON

24      PHONE THAT DIDN'T SHOW ANY OTHER PHONES, THAT'S THE PROBLEM.

25             THE COURT:  AND ARE YOU SAYING THAT THE FEATURES OF

1    THE GEM PHONE, WHETHER THE CARRIER IS AT & T VERSUS VERIZON IS

2    A DIFFERENT PHONE, THAT IT FUNCTIONS DIFFERENTLY, IT'S NOT

3    INFRINGING?

4          MR. ALDEN:  I CAN'T SAY THAT STANDING HERE.  I WOULD

5    NEED TO COMPARE THE PHONES.

6          THE COURT:  OKAY.  LET ME GO TO -- ARE YOU GOING TO

7    SUBMIT YOUR PROPOSED VOIR DIRE?

8          MR. MCELHINNY:  IT'S COMING IN TODAY.

9          THE COURT:  YOU'RE DOING IT TODAY?  I DON'T WANT TO

10   GET INTO ANY SITUATIONS LIKE WE HAD LAST TIME.  IF YOU THINK

11   SOMEBODY IS AN ABSOLUTELY CRITICAL BUSINESS PARTNER, THEY

12   SHOULD BE PART OF THE VOIR DIRE.  AND I WANT YOU TO PUT IN

13   THERE WHAT THE EXACT RELATIONSHIP OR PARTNERSHIP IS, OKAY?

14         MR. MCELHINNY:  THANK YOU, YOUR HONOR.  I ASSUME

15   THAT WAS FOR BOTH PARTIES, RIGHT?

16         THE COURT:  YES, AS TO BOTH PARTIES.

17     NOW, ON THE TAX RATE ISSUE, THIS IS REALLY FOR NEXT WEEK,

18   DID MUSIKA USE THE TAXES REPORTED ON THE AUDITED FINANCIALS AND

19   ON THE ANNUAL REPORT OR THE TAXES ACTUALLY PAID IN APPLE'S TAX

20   RETURNS?  WHAT DID HE USE?

21         MR. MCELHINNY:  I'M DOING THIS FROM MEMORY.  I

22   BELIEVE HE USED THE AUDITED RETURNS, YOUR HONOR.

23         MR. ALDEN:  THAT'S CORRECT, YOUR HONOR.

24         THE COURT:  OKAY.  I WILL SAY ONE THING ON THIS

25   POINT, I HAD EXCLUDED ANY OF THE TAX EVASION DOCUMENT ISSUES

1      QUESTIONS IN THE LAST TRIAL BUT APPLE STILL ASKED A QUESTION

2      ABOUT IT, WHICH I STRUCK.

3          BUT IF YOU DO THAT AGAIN IN THIS TRIAL, THEN YOU'RE

4      OPENING THE DOOR.  I'M GOING TO ALLOW SAMSUNG TO GET INTO THE

5      SENATE INVESTIGATION ABOUT APPLE NOT PAYING ABOUT $5 BILLION

6      WORTH OF TAXES TO THE U.S. GOVERNMENT.  SO I'M PUTTING YOU ON

7      NOTICE.

8          IF YOU DO THAT AGAIN, WHICH IS AN INTENTIONAL WILLFUL

9      VIOLATION OF MY EXCLUSION ORDER, YOU'LL GET IT BACK IN FORCE

10     BECAUSE THEN YOU'LL GET INTO THE 5 BILLION THAT APPLE HAS NOT

11     PAID TO THE UNITED STATES, OKAY?  I'M JUST LETTING YOU KNOW

12     THAT.

13         LET'S GET TO -- I'M UNCLEAR ON EXACTLY WHAT COPYING

14     TESTIMONY APPLE INTENDS TO USE WITH MS. DAVIS AND WHAT THE

15     BASIS FOR HER CONCLUSION IS THAT SAMSUNG COPIED.

16             MR. MCELHINNY:  I THINK BASED ON AT LEAST YOUR

17     EARLIER, I'M NOT SURE WE ACTUALLY HAVE -- WE DON'T INTEND TO

18     CALL MS. DAVIS TO OPINE THAT SAMSUNG -- ANYTHING ABOUT WHAT WAS

19     GOING ON IN THE HEADS OF SAMSUNG PEOPLE.

20         WHAT WE INTEND TO CALL HER IS TO SHOW HER -- TO ASK HER

21     THE QUESTIONS ABOUT WHETHER OR NOT IN VIEWING INTERNAL SAMSUNG

22     DOCUMENTS SHE IDENTIFIED DOCUMENTS THAT SHOW THE VALUE OF THE

23     INVENTIONS AND CUSTOMERS DEMANDS FOR THOSE INVENTIONS.

24         AND SHE OBVIOUSLY HAS.  AND THOSE DOCUMENTS ARE DOCUMENTS

25     THAT WE ALL SHORTHAND REFER TO AS "COPYING DOCUMENTS."

1       BUT THAT'S WHAT SHE'S GOING TO DO.

2           THE COURT:  I'M NOT CLEAR ON THAT.  I WANT YOU TO

3   FILE ON SUNDAY WHAT IT IS THAT SHE'S GOING TO TESTIFY TO

4   BECAUSE I THINK THIS IS A PRETTY TRICKY ISSUE.

5       THERE ARE MULTIPLE SECTIONS OF HER REPORT WHERE SHE MAKES

6   CONCLUSIONS ABOUT COPYING.  AND I HEAR YOU'RE SAYING THAT SHE'S

7   NOT GOING TO TESTIFY TO THAT, BUT SECTION 43, 58, 60.110 ARE

8   ALL VARIOUS CONCLUSIONS ABOUT COPYING AND SO CAN YOU INCLUDE

9   THAT WITH WHATEVER ELSE YOU ARE FILING ON SUNDAY.

10      I WANT TO KNOW EXACTLY WHAT SHE'S GOING TO SAY AND WHAT IS

11  THE BASIS FOR HER CONCLUSION.  BECAUSE IF SHE'S RELYING ON

12  EXPERT TESTIMONY FROM THE FIRST TRIAL, THAT'S STRICKEN.

13          MR. MCELHINNY:  RIGHT, I UNDERSTAND THAT.

14          THE COURT:  SO I WANT TO KNOW WHAT BASIS SHE HAS FOR

15  THE CONCLUSION.  SO I WANT TO KNOW WHAT HER CONCLUSION IS AND

16  WHAT HER BASIS IS.

17          MR. MCELHINNY:  I UNDERSTAND THAT, YOUR HONOR.

18          THE COURT:  OKAY.  I WAS NOT CLEAR ON THE MOTIONS

19  THEMSELVES ON ALL OF THE TEXT THAT IS HIGHLIGHTED WHETHER

20  THAT'S WHAT YOU WANT TO SEAL, OR IS THAT WHAT YOU WANT TO

21  STRIKE OR IS IT SOME COMBINATION?

22      BECAUSE CERTAIN THINGS WERE HIGHLIGHTED THAT DIDN'T REALLY

23  SEEM TO FIT INTO WHAT WAS BEING REQUESTED TO BE STRICKEN, BUT

24  THEN ALSO SEEMED WAY OVERBROAD FOR WHAT WAS REQUESTING TO BE

25  SEALED.

```
1              IS THERE SOME WAY TO DISTINGUISH?

2              MS. MAROULIS:  YOUR HONOR, I UNDERSTAND THE

3     HIGHLIGHTING IS FOR WHAT WE SEEK STRICKEN, AND WE HAVE A

4     DETAILED PROPOSED ORDER THAT GOES PARAGRAPH BY PARAGRAPH WHAT

5     WE WANT TO STRIKE FOR THE DAVIS MOTION.

6          SO THE PROPOSED ORDER IS A GOOD GUIDE AS TO WHAT EXACTLY

7     WE'RE SEEKING TO STRIKE.

8              THE COURT:  WELL, I'M WONDERING IF IT MIGHT BE

9     EASIER IF YOU SUBMITTED A SEPARATE -- BECAUSE SO MUCH IS

10    HIGHLIGHTED AND IT'S DIFFICULT TO FIGURE OUT WHAT YOU'RE

11    SEEKING TO SEAL AND WHAT YOU'RE SEEKING TO STRIKE.

12        CAN YOU FILE, PERHAPS -- I DON'T WANT TO CREATE MORE

13    PAPER -- BUT A SEPARATE MOTION TO SEAL THAT JUST HIGHLIGHTS

14    WHAT YOU WANT TO SEAL?  AND THEN I CAN ASSUME, SINCE YOU HAVE

15    ALREADY IDENTIFIED WHAT YOU WANT TO STRIKE, THAT I CAN GET FROM

16    YOUR MOTION BECAUSE OTHERWISE I CAN'T FIGURE IT OUT WHAT YOU'RE

17    SEALING.

18             MS. MAROULIS:  YES, YOUR HONOR.  WE WILL RE-FILE A

19    MOTION TO SEAL TOMORROW, OKAY?

20             THE COURT:  THAT'S FINE.  AND JUST SEAL WHAT YOU

21    WANT -- I MEAN, HIGHLIGHT WHAT YOU WANT TO SEAL VERSUS WHAT YOU

22    WANT TO STRIKE.

23             MS. MAROULIS:  YES, YOUR HONOR.  WE WILL IDENTIFY

24    THAT.

25             THE COURT:  OKAY.  THANK YOU.  WHAT I WAS GOING TO
```

```
 1          ASK TODAY, BUT MAYBE I'LL ASK NEXT WEEK, IS THAT IT WOULD HELP

 2     IN RULING ON ALL OF THESE, OR I DON'T KNOW IF YOU CAN TODAY,

 3     JUST GENERALLY WHAT YOUR TRIAL IS GOING TO LOOK LIKE, LIKE WHAT

 4     YOUR THEMES ARE GOING TO BE AND WHAT WITNESSES YOU'RE GOING TO

 5     CALL.

 6          DO YOU HAVE ANYTHING MORE SPECIFIC THAN WHAT YOU SUBMITTED

 7     IN YOUR WITNESS LIST?  I DIDN'T FIND THAT TO BE VERY DETAILED.

 8     IT WAS VERY GENERAL.  SO I DON'T HAVE A CLEAR SENSE.

 9          BUT IT WOULD HELP IN RULING ON THESE MOTIONS TO FIGURE OUT

10     EXACTLY WHAT IS STILL RELEVANT AND FOR THE 403 BALANCING ISSUE.

11          I DON'T KNOW IF THAT'S SOMETHING THAT YOU'RE PREPARED TO

12     DO TODAY OR NOT.

13               MS. MAROULIS:  YOUR HONOR, BECAUSE WE'RE GOING

14     SECOND, WE'RE GOING TO BE RESPONDING TO APPLE'S CASE.  SO IT'S

15     HARD FOR US TO PARE THE WITNESS LIST DOWN, BUT IT SOUNDS LIKE

16     IF A LOT OF THEIR EXPERTS ARE EXCLUDED, THEN WE WOULD NEED TO

17     BRING PEOPLE IN REBUTTAL.

18               THE COURT:  WHAT ABOUT FOR APPLE, IS IT GENERALLY

19     THE SAME THEMES AS THE LAST TIME?

20               MR. MCELHINNY:  THAT IS THE RISK IS THAT YOUR HONOR

21     WILL HAVE SEEN IT ALL BEFORE, BUT THE THEMES ARE BASICALLY THAT

22     THESE WERE CRITICAL, IMPORTANT INVENTIONS THAT CHANGED THE

23     PHONE BUSINESS; THAT THEY WERE A RESULT OF A SUBSTANTIAL

24     INVESTMENT AND RISK; AND THAT AS A RESULT OF THESE INVENTIONS

25     OTHER COMPETITORS, INCLUDING SAMSUNG, TOOK THESE FEATURES AND
```

1    PUT THEM INTO PHONES AND ATTEMPTED TO USE THEM TO COMPETE

2    AGAINST US; AND THAT WE HAVE THROUGH MARKETPLACE SURVEYS

3    DETERMINED THE VALUE OF THESE PARTICULAR FEATURES AND WE HAVE

4    CREATED BOTH WHAT THE APPROPRIATE ROYALTY WOULD BE FOR THESE

5    PATENTS, THIS INTELLECTUAL PROPERTY, AND WHAT PERCENTAGE OF THE

6    MARKET WE WOULD HAVE SOLD TO BUT FOR THE INFRINGING DEVICES.

7           THE COURT:  WELL, I DON'T HAVE ANYTHING ELSE ON MY

8    LIST.  IS THERE ANYTHING ELSE THAT YOU WOULD LIKE TO TALK ABOUT

9    TODAY?  I REALLY APPRECIATE YOUR PATIENCE, AND THIS HAS BEEN

10   VERY HELPFUL.  AND I REALLY APPRECIATE IT.

11        ANYTHING ELSE THAT WE SHOULD COVER TODAY?

12          MR. PRICE:  YOUR HONOR, I DON'T THINK WE NEED TO

13   ADDRESS THIS TODAY BUT NEXT WEEK CERTAINLY ONE OF THE BIG

14   ISSUES IDENTIFIED WAS WHETHER WE USED THE CHANGED NOTICE DATE

15   OR THE INFRINGEMENT DATE WITH RESPECT TO DAMAGES CALCULATIONS

16   AND THE EFFECT OF THE JURY'S FINDINGS ON THOSE DATES BECAUSE

17   THAT'S ABOUT A $300 MILLION QUESTION.  BUT THERE'S NO REASON WE

18   NEED TO ARGUE IT TODAY AS OPPOSED TO NEXT WEEK.

19          THE COURT:  WELL, I CAME IN INCLINED TO KEEP THE

20   EARLIEST POSSIBLE DATES, WHICH ARE THE FILING DATES OF THE

21   APRIL 2011 COMPLAINT AND THEN FOR ADDITIONAL PATENTS IN THE

22   JUNE 2011 COMPLAINT.

23        I'D LIKE TO THINK ABOUT IT A LITTLE BIT MORE.

24          MS. MAROULIS:  YOUR HONOR, THAT'S NOT PRECISELY THE

25   ISSUE.  THE ISSUE THAT MR. PRICE RAISED WAS WHEN DOES DESIGN

1    AROUND COMMENCE?  DOES IT COMMENCE ON THE DATE OF FIRST

2    INFRINGEMENT OR DOES IT COMMENCE ON THE NOTICE DATE?

3            THE COURT:  OH, OH, I THINK IT'S THE NOTICE DATE.

4            MS. MAROULIS:  YOUR HONOR, WE WOULD DISAGREE AND WE

5    BRIEFED THIS EXTENSIVELY IN MS. DAVIS'S MOTION WE MADE.  MAY WE

6    ADDRESS THIS RIGHT NOW?

7            THE COURT:  OKAY.  GO AHEAD.

8            MS. MAROULIS:  IF YOUR HONOR RECALLS MR. MUSIKA

9    CALCULATED THE DESIGN AROUNDS FOR LOST PROFITS ANALYSIS WITH

10   THE START OF THE INFRINGEMENT.  SO HIS ANALYSIS WAS THAT THE

11   DESIGN AROUNDS FOR PURPOSE OF LOST PROFITS, MARKET

12   RECONSTRUCTION COMMENCE AT THE DATE OF FIRST INFRINGEMENT.

13       MS. DAVIS RADICALLY CHANGED THAT METHODOLOGY AND IS NOW

14   RELYING ON NOTICE DATES TO START HER DESIGN AROUNDS.

15       THAT RESULTED IN A VERY, VERY MUCH INFLATED LOST PROFITS

16   DAMAGES NUMBER.

17       AND IT IS INCORRECT FOR SEVERAL REASONS.  ONE, IT'S NEW

18   AND NOTHING NEW IS ALLOWED FOR THE METHODOLOGIES; AND, TWO,

19   THAT THEORY WAS ALREADY EXCLUDED.  AND I'LL EXPLAIN IN A SECOND

20   WHY.  AND, THREE, IT'S INCORRECT AS A MATTER OF LAW.

21       THE ONE QUESTION YOUR HONOR MIGHT HAVE IS HOW CAN IT BE

22   BOTH NEW AND EXCLUDED?

23       IF YOU RECALL, IN THE MIDDLE OF TRIAL MR. MUSIKA TRIED TO

24   INTRODUCE WHAT WE REFERRED TO AS THE "TWO NOTICE DATE THEORY"

25   BECAUSE WHILE HE PREVIOUSLY CALCULATED THIS OF THE DATE OF

```
1     FIRST INFRINGEMENT, HE THEN HAD A CHANGE OF HEART AND SAID,

2     LET'S ALSO PROVIDE AN ALTERNATIVE CALCULATION WHERE DESIGN

3     AROUND STARTS WITH THE NOTICE DATE.

4            THE COURT:  OKAY.

5            MS. MAROULIS:  WE MOVED TO EXCLUDE THAT BECAUSE IT

6     WAS NOT PREVIOUSLY DISCLOSED.  YOUR HONOR RULED ON THAT AND

7     SUSTAINED THAT OBJECTION.

8           THE SAMSUNG OBJECTION THAT ADDRESSES THIS IS DOCKET NUMBER

9     1678 FILED ON AUGUST 12TH.  ON PAGE 1 IT'S THE FIRST HIGH

10    PRIORITY OBJECTION.  AND YOUR HONOR RULED ON THAT AND SUSTAINED

11    THAT OBJECTION.

12          ALSO ON AUGUST 12TH, IN DOCUMENT NUMBER 1690 ON PAGE 1

13    WHERE THE COURT FOUND THAT SAMSUNG OBJECTS TO THE RIGHT SIDE

14    COLUMN ON SLIDE TWO, THAT'S THE SLIDE WHERE THIS THEORY WAS

15    EXPRESSED AND FOUND THAT THE THEORY SHOULD BE STRICKEN BECAUSE

16    IT WAS NOT PREVIOUSLY DISCLOSED.

17          SO THAT REASON ALONE SHOULD BE ENOUGH TO PREVENT MS. DAVIS

18    FROM CHANGING THE THEORY BECAUSE MR. MUSIKA HAD A DIFFERENT

19    THEORY TO START AND THEN ATTEMPTED TO CHANGE THAT MID-TRIAL.

20    BECAUSE IT WAS NOT DISCLOSED BEFORE, YOUR HONOR EXCLUDED THAT.

21          SO THAT ALONE SHOULD PUT THE END OF THAT THEORY THAT

22    MS. DAVIS SHOULD PROCEED WITH CALCULATING LOST PROFITS DESIGN

23    AROUND STARTING WITH THE DATE OF FIRST INFRINGEMENT.

24          BUT IF YOUR HONOR IS NOT CONVINCED BY THAT, AFTER LOOKING

25    AT THE TWO DOCKET NUMBERS THAT WE CITED IN OUR BRIEFS AND WHAT
```

127

```
1    I JUST EXPLAINED, IT'S ALSO NOT CORRECT AS TO WHAT MS. DAVIS IS

2    DOING AS A MATTER OF LAW.

3         THERE ARE SEVERAL CASES WE ADDRESS IN OUR BRIEFING

4    STARTING WITH GRAIN PROCESSING, A FEDERAL CIRCUIT CASE, THE

5    INTEGRATED POWER, THE FEDERAL CIRCUIT CASE, AND ALSO WANG

6    LABORATORIES CASE, ALL OF WHICH COLLECTIVELY EXPLAIN THAT FOR

7    LOST PROFITS DESIGN AROUND STARTS AT THE DATE OF FIRST

8    INFRINGEMENT.  IT DOES NOT HAPPEN AT THE NOTICE DATE.

9         SO WHILE MS. DAVIS SAYS THAT THE REASON FOR HER CHANGE

10   FROM MR. MUSIKA'S THEORY IS THE COURT RULING ON THE NOTICE

11   DATE, THAT'S NOT CORRECT.  SHE CANNOT DO THAT AS A MATTER OF

12   LAW.

13        GRAIN PROCESSING AND INTEGRATED POWER ARE BOTH -- I'M

14   SORRY.  IT'S POWER INTEGRATIONS VERSUS FAIRCHILD, THEY'RE BOTH

15   LOST PROFITS CASES.  THE WANG LABORATORIES IS A REASONABLE

16   ROYALTY CASE, BUT IT IS CITED APPROVINGLY IN THE LOST PROFITS

17   JURISPRUDENCE.  AND ALL OF THEM COLLECTIVELY SAY THAT IT HAS TO

18   BE AS TO THE FIRST INFRINGEMENT.

19        SO WE HAVE THE OPINION IS NEW AND THE OPINION IS

20   PREVIOUSLY EXCLUDED BECAUSE IT WASN'T INTRODUCED AT TRIAL AND

21   WE ALSO HAVE LEGAL SUPPORT BY THE FEDERAL CIRCUIT THAT AS A

22   MATTER OF LAW THE DESIGN AROUNDS ARE NON-INFRINGING

23   ALTERNATIVES GET STARTED AT THE DATE OF FIRST INFRINGEMENT,

24   EVEN IF THE NOTICE DATE IS SUBSTANTIALLY LATER.

25             THE COURT:  DO YOU HAVE THE PARAGRAPH NUMBER OF
```

```
 1        WHERE IN MR. MUSIKA'S ORIGINAL REPORT HE HAD THE DESIGN AROUND

 2        STARTING FROM THE DATE OF FIRST INFRINGEMENT?

 3                 MR. MCELHINNY:  I HAVE IT, YOUR HONOR.  IT'S

 4        PARAGRAPH 139 -- I'M SORRY.  129.  I'M SORRY.

 5                 THE COURT:  OKAY.

 6                 MS. MAROULIS:  AND MR. MUSIKA'S REPORT EXHIBIT 17

 7        AND FOR TRIAL EXHIBIT IT'S PX 25A-1.4.

 8                 THE COURT:  IT'S MR. MUSIKA'S REPORT EXHIBIT 17, PX

 9        25A-1.4?

10                 MS. MAROULIS:  PX 25A-1.4.

11                 THE COURT:  PX 25A-1.4?

12                 MS. MAROULIS:  YES.

13                 THE COURT:  DO YOU WANT TO RESPOND TO THAT,

14        MR. MCELHINNY?

15                 MR. MCELHINNY:  I DO, YOUR HONOR.  ALMOST NONE OF IT

16        IS ACCURATE.  WHAT MR. MUSIKA TESTIFIED AND ALWAYS TESTIFIED

17        WAS THAT THE DESIGN AROUND DATE STARTED AT THE TIME OF FIRST

18        NOTICE.

19            IT ONLY MAKES SENSE, IF YOU THINK ABOUT IT, THE CONCEPT

20        THAT SOMEBODY WOULD DESIGN AROUND A PATENT BEFORE THEY KNEW

21        THAT THEY WERE BEING ACCUSED OF INFRINGEMENT, BUT THAT'S WHAT

22        HE SAID.

23            AND SPECIFICALLY IN THE PARAGRAPH I CITED TO YOU, WHICH

24        SAMSUNG REFUSES TO ACKNOWLEDGE IN THEIR PAPERS AT 129,

25        MR. MUSIKA SAID I UNDERSTAND THAT SAMSUNG CONTENDS THAT IT
```

1    LACKED ACTUAL OR CONSTRUCTIVE NOTICE OF ITS INFRINGEMENT FOR AT

2    LEAST SOME OF THE PATENTS UNTIL SUIT WAS FILED.

3        TO THE EXTENT THAT SAMSUNG SUCCEEDS WITH RESPECT TO THIS

4    CLAIM, THE CALCULATIONS DONE TO DETERMINE THE AMOUNT OF TIME

5    THAT SAMSUNG WOULD BE UNABLE TO SELL PRODUCTS SHOULD BEGIN AT

6    THE DATE IN WHICH NOTICE IS PROVEN.

7        THAT WAS MR. MUSIKA'S -- HAS ALWAYS BEEN MR. MUSIKA'S

8    OPINION.  IT WAS NOT STRICKEN.  WHAT WAS STRICKEN WAS THAT HE

9    CAME UP WITH THE SPECIFIC NUMBERS BASED ON A SUBSEQUENT DATE

10   AND YOUR HONOR HELD THAT THOSE WERE DISCLOSED TOO LATE.

11       BUT THE CONCEPT THAT THE DESIGN AROUND PERIOD STARTS AT

12   THE TIME OF NOTICE HAS ALWAYS BEEN MR. MUSIKA'S OPINION AND

13   MS. DAVIS'S OPINION, AND IT'S THE OPINION WITH ALMOST EVERY

14   PERSON WHO IS FAMILIAR WITH THE INDUSTRY HERE.

15       IT IS ALSO INACCURATE TO CITE GRAIN PROCESSING CORPORATION

16   BECAUSE WHAT SAMSUNG CITES TO IS A FOOTNOTE ABOUT WHAT THE

17   FACTS IN THAT CASE WERE.

18       WHAT THEY DO NOT CITE TO YOU IS THE BLACK LETTER STATEMENT

19   OF LAW THAT THE COURT MADE WHERE IT SAID THE CRITICAL TIME

20   PERIOD FOR DETERMINING THE AVAILABILITY OF AN ALTERNATIVE IS

21   THE PERIOD OF INFRINGEMENT FOR WHICH THE PATENT OWNER CLAIMS

22   DAMAGES:  THE ACCOUNTING PERIOD.  THAT'S THE LANGUAGE OF THE

23   COURT IN THAT CASE.  THAT'S THE CORRECT APPLICATION HERE.

24       IF WE'RE GOING TO TALK ABOUT THE POSSIBILITY THAT SAMSUNG

25   HYPOTHETICALLY WOULD HAVE DESIGNED AROUND, WHICH IS WHAT WE'RE

1       TALKING ABOUT, IT IS COMPLETELY ILLOGICAL TO TRY TO CREATE A

2       WORLD WHERE THEY WOULD HAVE TRIED TO DESIGN AROUND BEFORE THEY

3       WERE EVEN ON NOTICE OF INFRINGEMENT OF THE PATENT.  AND THAT IS

4       THE HOLDING OF JUDGE ROBINSON IN THE CALLAWAY GOLF COMPANY, THE

5       DELAWARE CASE THAT WE CITED TO YOUR HONOR.

6              MS. MAROULIS:  YOUR HONOR, COUNSEL, NOT INCORRECTLY,

7       PORTRAYS THE COURT'S RULING ON MR. MUSIKA'S THEORY, AND I

8       HESITATE TO TAKE UP THE COURT'S TIME TO READ ALL OF THIS INTO

9       THE RECORD, BUT THE ORDER SAYS, "MR. MUSIKA DID NOT TIMELY

10      DISCLOSE HIS CALCULATIONS PURSUANT TO AN ALTERNATIVE TWO NOTICE

11      PERIOD.

12          "MR. MUSIKA'S EXPERT REPORT EXPLAINED ONLY THAT 'I'M

13      PREPARED TO CALCULATE AND RENDER AN OPINION ON THE AMOUNT OF

14      DAMAGES IF LESS THAN THE TOTAL NUMBER OF SAMSUNG ACCUSED

15      PRODUCTS PROCEEDS TO TRIAL BECAUSE IF LESS THAN ALL PATENTS

16      PROCEED TO TRIAL, IF DAMAGES ARE LIMITED TO ANY PARTICULAR

17      PERIOD FOR ANY OF THE INTELLECTUAL PROPERTY IN SUIT OR IF

18      SAMSUNG WAS ON NOTICE OF INTELLECTUAL PROPERTY IN SUIT AND

19      BEGAN AN EFFORT TO DESIGN AROUND THE PATENTS ON A DIFFERENT

20      DATE IF AND WHEN REQUESTED TO DO SO BY COUNSEL OR THE COURT OR

21      BASED ON THE EVIDENCE PRESENTED AT TRIAL.'

22          "HOWEVER, MR. MUSIKA DID NOT DISCUSS A TWO NOTICE PERIOD

23      THEORY, CALCULATED DAMAGES BASED ON AN ALTERNATIVE THEORY OR

24      OTHERWISE DISCLOSE THE ASSUMPTIONS AND ANALYSIS THAT HE

25      INTENDED TO RELY ON TO CALCULATE THE ALTERNATIVE THEORY OF

1      DAMAGES.

2           "THUS, SAMSUNG WAS NOT ABLE TO CROSS-EXAMINE MR. MUSIKA OR

3      OTHERWISE TEST HIS APPLICATION OF THE ALTERNATIVE THEORY.

4           "ACCORDINGLY, THE COURT SUSTAINS SAMSUNG'S OBJECTION.

5      APPLE MAY NOT INTRODUCE A VERSION OF PX 25A ADMITTING SLIDES 6,

6      7 AND THE RIGHT-HAND COLUMN OF SLIDE 2."

7           SO IT WAS UNQUESTIONABLY EXCLUDED BECAUSE WHILE COUNSEL IS

8      CORRECT THAT THERE WAS A STATEMENT IN THE REPORT THAT HE COULD

9      CALCULATE THE DAMAGES USING THAT ALTERNATIVE NUMBER, HE DIDN'T

10     ACTUALLY DO THAT, AND THAT IS WHY IT WAS EXCLUDED AT TRIAL.

11          WITH RESPECT TO THE CASE LAW, YOUR HONOR, THERE'S

12     TWO CASES, THE GRAIN PROCESSING, WHICH EXPRESSLY HOLDS IN

13     SEVERAL PLACES THAT DESIGN AROUNDS AND ALTERNATIVE START AT THE

14     PERIOD OF INFRINGEMENT AND ANOTHER CASE THAT IS ON POINT IS A

15     VERY, VERY RECENT FEDERAL CIRCUIT CASE CALLED POWER INTEGRATION

16     AND IT'S FROM 2013, AND THERE WE'RE DEALING WITH THE DAMAGES OF

17     PRICE EROSION, A FORM OF LOST PROFITS.

18          AND THE COURT ALSO HELD THAT WHILE THE DAMAGES PERIOD

19     STARTS FROM THE NOTICE DATE, THE EVIDENCE OF PRE-NOTICE DATE

20     INFORMATION IS RELEVANT BECAUSE YOU WANT TO LOOK AT THE MARKET

21     AT THE DATE OF FIRST INFRINGEMENT.  WE CITED ALL OF THESE CASES

22     IN OUR BRIEFS ON MS. DAVIS.

23          IT IS NOT ILLOGICAL, AS MR. MCELHINNY SUGGESTS, BECAUSE

24     BOTH REASONABLE ROYALTY AND LOST PROFITS ARE HYPOTHETICAL

25     CONSTRUCTS.  THE LAW IS WHAT IS IT IS, AND IN THE WANG CASE THE

1     COURT EVEN SAYS, IT MAY BE ILLOGICAL TO HAVE THIS HYPOTHETICAL

2     NEGOTIATION BEFORE THE ACTUAL NOTICE IS GIVEN, BUT THAT IS THE

3     LAW.

4         BOTH HYPOTHETICAL NEGOTIATION AND ACCEPTABLE ALTERNATIVES

5     BEGIN AT THE DATE OF FIRST INFRINGEMENT, NOT LATER ON IN THE

6     NOTICE TIME.

7         WHY?  BECAUSE NOTICE IS THERE TO ENCOURAGE MARKETING, TO

8     ENCOURAGE PEOPLE NOT TO SIT AND WAIT UNTIL THE PRODUCT CLIMBS

9     THE CHARTS AND THE PRODUCT ACTUALLY GETS HIGH SALES BUT TO SUE

10    OR GIVE NOTICE AS SOON AS THEY CAN.  THAT IS WHAT THE LAW

11    ENCOURAGES.

12        IT DOESN'T MEAN THAT THE DESIGN AROUND EFFORTS WOULDN'T

13    HAVE BEGAN AS SOON AS THE FIRST INFRINGEMENT DATE OCCURS

14    BECAUSE IN LOST PROFITS YOU WANT TO RECREATE A MARKETPLACE

15    WITHOUT AN INFRINGEMENT AND SO YOU NEED TO HAVE THAT DESIGN

16    AROUND PERIOD TO START ON THE DATE OF FIRST INFRINGEMENT.

17        BUT THAT IS AN ILLEGAL ISSUE THAT WE RESPECTFULLY SUBMIT

18    THAT YOUR HONOR DOESN'T ACTUALLY NEED TO ADDRESS BECAUSE THIS

19    THEORY OF MR. MUSIKA WAS EXCLUDED AT TRIAL.

20          THE COURT:  I'LL GO BACK AND LOOK AT ECF 1668 AND

21    1690.  ARE THERE ANY OTHER DOCUMENTS OR ANYTHING ELSE THAT YOU

22    THINK YOU SHOULD LOOK AT?

23          MR. PRICE:  YOUR HONOR, I WOULD ADD ONE THING IN

24    RESPONSE TO WHAT MR. MCELHINNY SAID.  IF THE RULE WERE THAT YOU

25    WOULD NOT CALCULATE DESIGN AROUND UNTIL ACTUAL NOTICE, THEN THE

```
 1        PATENT OWNER COULD TIME HIS COMPLAINT OR NOTICE TO MAXIMIZE

 2     DAMAGE.

 3        I MEAN, THE PURPOSE OF CALCULATING DAMAGES, YOU KNOW, IT'S

 4     UNDISPUTED THAT WITH ROYALTIES, YOU KNOW, YOU HAVE A

 5     HYPOTHETICAL NEGOTIATION AT THE TIME OF INFRINGEMENT.

 6        YOU KNOW, BECAUSE THE LAW WANTS TO ENCOURAGE MARKETING,

 7     THAT'S WHY YOU CAN'T GET DAMAGES UNTIL NOTICE ON LOST PROFITS

 8     BUT AS THE CASES WE CITED SHOW IT'S THE SAME LOGIC AS TO WHEN

 9     YOU WOULD CALCULATE A DESIGN AROUND.  IT WOULD BE AT THE TIME

10     OF ACTUAL INFRINGEMENT OTHERWISE THE PLAINTIFF COULD MANIPULATE

11     SOME DAMAGES BY DELAYED NOTICE.

12            THE COURT:  OKAY.

13            MS. MAROULIS:  YOUR HONOR, I'M VERY SORRY.  ONE MORE

14     THING THAT MIGHT BE USEFUL TO THE COURT IS TO LOOK AT DAVIS

15     REPORT EXHIBITS 17.2 PT-H AND 17.2 PT-I, WHICH ARE IDENTICAL TO

16     WHAT THE COURT EXCLUDED WITH MR. MUSIKA.

17            THE COURT:  17.2 PT-H AND I?

18            MS. MAROULIS:  CORRECT.

19            THE COURT:  OKAY.  ANYTHING ELSE?  WITH SOME OF

20     THESE I AM STILL PROBABLY A LITTLE CONFUSED ABOUT THE CAPACITY.

21     AND SO IT MAY BE THAT I COME BACK NEXT WEEK AND HAVE MORE

22     QUESTIONS FOR YOU, AND I MAY NOT HAVE BEEN ABLE TO ISSUE A

23     RULING BUT MAYBE WE CAN.

24            MR. MCELHINNY:  NOW, THE ONLY THING I WANT TO SAY IS

25     I THINK I UNDERSTAND THEIR ARGUMENT BETTER.  THIS EXCLUSION
```

1      THING MAKES -- THAT HAS NOTHING TO DO WITH THIS.  IT MAKES NO

2      SENSE.

3           IN THE FIRST TRIAL WE CLAIMED AN EARLY NOTICE DATE.

4      MR. MUSIKA CALCULATED DAMAGES FROM THAT DATE.  WE THEN TRIED TO

5      PUT IN AN ALTERNATIVE NUMBER, WHICH IF WE HAD DISCLOSED WE

6      WOULDN'T BE HAVING THIS TRIAL, OF AN ALTERNATIVE ON THE SECOND

7      DATE, BUT WHAT HAS HAPPENED SINCE THEN IS THAT YOUR HONOR HAS

8      CHANGED THE DATES.  AND SO YOUR HONOR HAS HELD THAT NOW WE HAVE

9      SPECIFIC DATES FROM WHICH TO CALCULATE THE DAMAGES.

10          AND SO ALL -- BOTH OF THE DAMAGES EXPERTS HAVE DONE

11     DISCLOSURES BASED ON THOSE DATES AND WHAT THE EFFECT OF THAT.

12          THE QUESTION HERE IS THE LEGAL QUESTION OF WHAT IS THE

13     TRIGGER DATE FOR THAT.  AND, IN FACT, THE LEGAL TEST, THE TEST

14     I READ TO YOU ON GRAIN PRODUCTS IS THE ACCOUNTING PERIOD.  AND

15     THE QUESTION OF WHEN SOMEONE ACTUALLY WOULD HAVE DONE IT OR HOW

16     LONG IT WOULD HAVE TAKEN IT AND WHEN THEY HAVE IT IS A QUESTION

17     OF FACT AND IT IS NOT A LEGAL ISSUE.

18          MS. MAROULIS:  COUNSEL IS CONFUSING THE FACTUAL

19     ISSUE OF WHETHER SOMETHING IS OR IS NOT AN ACCEPTABLE

20     ALTERNATIVE OF WHEN THE ALTERNATIVE SHOULD BE CALCULATED TO

21     BEGIN IN THE LOST PROFITS ANALYSIS.

22          THE GRAIN PROCESSING CASE IS VERY CLEAR ON ITS FACTS.

23     IT'S A CASE WITH A LONG HISTORY, BUT THE PARTICULAR OPINION

24     WE'RE CITING SHOWS THAT THE NOTICE WAS GIVEN IN 1981, AND THE

25     PRODUCT WENT IN THE MARKET IN 1970.  AND THE COURT FOUND NO

1    LOST PROFITS BECAUSE AN ALTERNATIVE WAS AVAILABLE TO THE

2    INFRINGER IN 1970.  IT WAS A VERY SHORT DESIGN AROUND PERIOD OF

3    MAYBE TWO OR THREE WEEKS.  IT WAS A FOOD ADDITIVE, BUT THE

4    ALTERNATIVE WAS AVAILABLE BEFORE NOTICE EVEN STARTED.

5        SO THAT CASE, WHILE DISCUSSING THIS LONG FACTUAL HISTORY

6    OF IT, FOUND THAT AS A MATTER OF LAW THE TIME TO START THE

7    DESIGN AROUNDS BEGINS THEN.

8        BUT BEFORE WE EVEN GET TO LEGAL ISSUE, THERE'S -- I DIDN'T

9    HEAR COUNSEL'S EXPLANATION OF WHY THE EXCLUSION OF MR. MUSIKA'S

10   OPINION IS IRRELEVANT HERE BECAUSE MR. MUSIKA DID ATTEMPT TO

11   PRESENT A CALCULATION USING THE NOTICE DATE.  HE JUST WAS

12   PREVENTED FROM DOING IT BECAUSE OF FAILURE TO DISCLOSE.

13       IT DOESN'T MATTER THAT THE COURT NOW HAS A DIFFERENT

14   NOTICE DATE.  IF HE DISCLOSED THAT PREVIOUSLY, WE WOULD HAVE

15   TALKED ABOUT THE LEGAL ISSUES SOLELY AND NOT EXCLUSION ISSUE.

16       BUT BECAUSE HE DIDN'T, WE HAVE TWO REASONS NOT TO ALLOW

17   THIS THEORY IN, EXCLUSION AND THE LEGAL ISSUE.

18            THE COURT:  WELL, THIS IS WHY I'M CONFUSED BECAUSE

19   HIS REPORT SAYS THAT -- I MEAN, IT SAYS BOTH, DATE OF THE FIRST

20   INFRINGEMENT, BUT HE'S ALSO ASSUMING THAT THE ALLEGEDLY

21   INFRINGING PARTY HAS NOTICE.

22       SO HE DOES -- YOU KNOW, HE'S ASSUMING THAT THE NOTICE DATE

23   AND THE FIRST INFRINGEMENT DATE ARE THE SAME.

24       SO HE DOES, AT LEAST IN PARAGRAPH 129, SAY THAT IT'S, YOU

25   KNOW, CALCULATED BASED ON THE FIRST NOTICE DATE.

1              MS. MAROULIS:  BUT HE DIDN'T PROVIDE THE

2      CALCULATIONS FOR ANYTHING OTHER THAN THE CALCULATION THEY DID.

3      AND THE COURT IN THIS TRIAL SAID NO NEW CALCULATIONS.  THIS

4      WOULD BE A NEW CALCULATION.

5              MR. MCELHINNY:  THAT'S EXACTLY RIGHT, WHICH IS WHAT

6      YOUR HONOR SAID WAS THAT HIS CALCULATIONS.  THE THEORY THAT IT

7      SHOULD START ON THE DATE OF THE NOTICE DATE HAS ALWAYS BEEN HIS

8      OPINION IT'S THE LAW, AND IT WAS NOT STRICKEN.

9          WHAT WAS STRICKEN WAS THE SPECIFIC SET OF CALCULATIONS

10     BECAUSE THEY WERE DISCLOSED TOO LATE, BUT NOW YOUR HONOR HAS

11     GIVEN US DATES.

12             THE COURT:  BUT THE ONES THAT WERE STRICKEN WERE THE

13     NOTICE DATES ACCORDING TO THE DATES FOUND IN THE MARCH 1ST

14     DAMAGES ORDER.

15             MS. MAROULIS:  THAT'S RIGHT.

16             MR. MCELHINNY:  BASED ON WHAT SAMSUNG WAS ALLEGING

17     AS ALTERNATIVES IN THE FIRST TRIAL, THAT'S CORRECT, BUT THAT

18     WASN'T OUR POSITION IN THE FIRST TRIAL.

19             MS. MAROULIS:  THE CALCULATION WAS STRICKEN.  IT'S

20     THE SAME CALCULATION THAT WE'RE SEEKING TO STRIKE NOW.

21             THE COURT:  UH-HUH, OKAY.  WELL, THIS ONE IS

22     COMPLICATED.  OKAY.

23         ANYTHING ELSE OR SHALL WE JUST MEET AGAIN NEXT WEEK?

24             MS. MAROULIS:  I THINK WE HAVE EXHAUSTED EVERYONE

25     ENOUGH HERE.

1              THE COURT:  THANK YOU ALL VERY MUCH.  I APPRECIATE

2       IT.

3              (COURT CONCLUDED AT 5:20 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
17       CERTIFICATE NUMBER 8076

18

19            DATED:  OCTOBER 15, 2013

20

21

22

23

24

25