**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**FLATWORLD INTERACTIVES LLC,**

                **Plaintiff,**

      **v.**

**APPLE INC.,**

                **Defendant.**

**THIS DOCUMENT RELATES TO:**
**All Actions**

Case No. 3:12-01956-WHO (EDL)

**APPLE'S FIRST MOTION TO COMPEL DISCOVERY**

**REDACTED – PUBLIC VERSION**
**DEFENDANT'S DESIGNATED CONFIDENTIAL INFORMATION**

Rachel Krevans (SBN 116421)
rkrevans@mofo.com
Wesley E. Overson (SBN 154737)
woverson@mofo.com
Diana B. Kruze (SBN 247605)
dkruze@mofo.com
John K. Blake, Jr. (SBN 262906)
jblake@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

Attorneys for Defendant
APPLE INC.

James A. Shimota (admitted pro hac vice)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
Adam R. Brausa (admitted pro hac vice)
abrausa@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N. LaSalle, Suite 2215
Chicago, IL 60601
Telephone: (312) 216-1620
Facsimile: (312) 216-1621

John J. Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEY AT LAW
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
Telephone: (650) 320-7662

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC,<br><br>                      Plaintiff,<br><br>          v.<br><br>APPLE INC.,<br><br>                      Defendant. | Case No. 3:12-01956-WHO (EDL)<br><br>**APPLE'S FIRST MOTION TO COMPEL DISCOVERY**<br><br>Date:          November 19, 2013<br>Time:          9:00 a.m.<br>Courtroom:   E, 15th Floor<br>Judge:       Hon. Elizabeth D. Laporte |

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 19, 2013 at 9:00 a.m., or at such earlier or later date as set by the Court, Defendant Apple Inc. ("Apple") shall and hereby does move the Court pursuant to Civil Local Rule 7-11 and Federal Rules of Civil Procedure 30 and 34 for an order compelling discovery from FlatWorld Interactives LLC ("FlatWorld").

This motion is based on this notice of motion and supporting memorandum of points and authorities; the Declaration of John K. Blake, Jr. in Support of Apple's First Motion to Compel Discovery ("Blake Decl."), and the exhibits attached thereto; and such other argument as may be presented at or before the time this motion is taken under submission by the Court.  Counsel for Apple met and conferred with counsel for FlatWorld before filing this motion, but were not able to resolve the issues raised herein.  (Blake Decl. ¶ 2; Exs. 41-54.)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................................i

TABLE OF AUTHORITIES ....................................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND ........................................................................................1

       A.    FlatWorld Targeted Apple ..................................................................................1

       B.    FlatWorld's Privilege Assertions ........................................................................2

       C.    Third-Party Discovery ........................................................................................3

       D.    FlatWorld Productions of Allegedly Privileged Documents ...............................5

       E.    Meet and Confer Regarding FlatWorld's Privilege Assertions ...........................6

III.   ARGUMENT ...............................................................................................................6

       A.    The Spousal Privilege Does Not Apply. ..............................................................6

             1.    The Spouses Had No Expectation of Privacy In
                   Communications Sent or Received Through
                   Mr. McAleese's Morgan Lewis E-Mail Account. ....................................8

             2.    The Spouses' Business-Related Communications Should
                   Not Be Protected. .................................................................................10

       B.    FlatWorld Waived Any Spousal Privilege. .........................................................11

             1.    FlatWorld Waived the Privilege as to Discussions With
                   Potential Purchasers by Producing Documents Relating to
                   that Subject. ..........................................................................................12

             2.    FlatWorld Has Put The Marital Communications At Issue. ....................13

       C.    The Attorney-Client Privilege Does Not Apply. .................................................13

             1.    FlatWorld Had No Expectation of Privacy In
                   Communications Sent To or From Mr. McAleese's Morgan
                   Lewis E-Mail Account. ..........................................................................14

             2.    FlatWorld's Business-Related Communications Should Not
                   Be Protected. .........................................................................................15

       D.    FlatWorld Waived Any Attorney-Client Privilege. .............................................16

             1.    FlatWorld Waived the Privilege as to Advice Regarding the
                   Valuation of the Patent by Producing Documents Relating
                   to that Subject. ......................................................................................16

             2.    FlatWorld Waived the Privilege as to Its Patent Reissue
                   Strategy by Producing Documents Relating to that Subject. ...................17

             3.    FlatWorld Has Disclosed Ostensibly Privileged
                   Communications To Mr. McAleese. .......................................................17

       E.    The Common Interest Privilege Does Not Apply To FlatWorld's
             Communications With Adverse-Party Acacia. .....................................................18

F.      FlatWorld and Acacia Have Waived Any Common Interest
        Privilege. ........................................................................................................19

G.      FlatWorld's Communications With Rembrandt Are Not Work
        Product. ...........................................................................................................19

IV.     CONCLUSION ...........................................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

CASES

4

*Aventa Learning, Inc. v. K12, Inc.*,
5
    830 F. Supp. 2d 1083 (W.D. Wash. 2011) ........................................................................ 8, 9

6

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) .......................................................................................... 17

7

*Cason v. Builders FirstSource-Southeast Grp., Inc.*,
8
    159 F. Supp. 2d 242 (W.D.N.C. 2001) ............................................................................ 20

9

*Chevron Corp. v. Pennzoil Co.*,
10
    974 F.2d 1156 (9th Cir. 1992) ................................................................................. 13, 16

11

*Diagnostics Sys. Corp. v. Symantec Corp.*,
    No. SA CV 06-1211 DOC, 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008) .................... 19, 20

12

*Hickman v. Taylor*,
13
    329 U.S. 495 (1947) ...................................................................................................... 20

14

*In re Asia Global Crossing, Ltd.*,
15
    322 B.R. 247 (Bankr. S.D.N.Y. 2005) .............................................................................. 8, 9

16

*In re Juniper Networks, Inc. Sec. Litig.*,
    Nos. C 06-4327 JW (PVT) & C-08-00246 JW (PVT),
17
    2009 WL 4644534 (N.D. Cal. Dec. 9, 2009) .................................................................... 18

18

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*
    *on April 20, 2010*,
19
    No. MDL 2179, 2011 WL 1193030 (E.D. La. Mar. 28, 2011) ........................................ 8, 9

20

*In re Southern Air Transport, Inc.*,
21
    255 B.R. 706 (Bankr. S.D. Ohio 2000) ........................................................................ 7, 10

22

*Katz v. AT&T Corp.*,
    191 F.R.D. 433 (E.D. Pa. 2000) ................................................................................ 19, 20

23

*Keystone Driller Co. v. Gen. Excavator Co.*,
24
    290 U.S. 240 (1933) ...................................................................................................... 13

25

*Knepp v. United Stone Veneer, LLC*,
26
    No. 4:06-CV-1018, 2007 WL 2597936 (M.D. Pa. Sept. 5, 2007) .................................... 12

27

*McCaugherty v. Siffermann*,
    132 F.R.D. 234 (N.D. Cal. 1990) .................................................................................... 16

28

*New York Life Ins. Co. v. Mason*,
  272 F. 28 (9th Cir. 1921)........................................................................... 7, 10, 11

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007) ........................................................................ 18

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
  No. 12-cv-1067 BEN, 2013 WL 4774765 (S.D. Cal. Sept. 5, 2013)..................... 16

*People v. Byrd*,
  525 N.W.2d 507 (Mich. Ct. App. 1994) ................................................................ 7

*SCM Corp. v. Xerox Corp.*,
  70 F.R.D. 508 (D. Conn. 1976)............................................................................ 19

*SmithKline Beecham Corp. v. Apotex Corp.*,
  232 F.R.D. 467 (E.D. Pa. 2005) .......................................................................... 20

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling U.S.A., Inc.*,
  699 F.3d 1340 (Fed. Cir. 2012)............................................................................ 16

*U.S. v. Austin*,
  416 F.3d 1016 (9th Cir. 2005).............................................................................. 18

*U.S. v. Kahn*,
  471 F.2d 191 (7th Cir. 1972)........................................................................... 7, 10

*U.S. v. Montgomery*,
  384 F.3d 1050 (9th Cir. 2004)................................................................................ 7

*U.S. v. Nobles*,
  422 U.S. 225 (1975) ............................................................................................ 20

*U.S. v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009)........................................................................... 7, 15

*U.S. v. Strobehn*,
  421 F.3d 1017 (9th Cir. 2005)............................................................................ 7, 8

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
  647 F.2d 18 (9th Cir. 1981)................................................................... 11, 12, 16

**OTHER AUTHORITIES**

Fed. R. Civ. P.
  Rule 26(b)(1)................................................................................................. 6, 18
  Rule 26(b)(3)...................................................................................................... 20

Fed. R. Evid. 501 ................................................................................................... 7

McCormick on Evidence § 86...................................................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

FlatWorld has withheld thousands of relevant communications based on assertions of spousal, attorney-client, and common interest privileges as well as the work product doctrine. Because many of FlatWorld's assertions of privilege are improper, Apple respectfully requests this Court to order that the underlying documents, as detailed below, be produced.

First, FlatWorld improperly asserts the spousal and attorney-client privileges over: (1) documents sent to/from John McAleese, the husband of one of FlatWorld's officers, through his work e-mail account at the law firm of Morgan Lewis, in which he had no reasonable expectation of privacy; (2) communications relating to business, rather than confidential spousal matters or legal advice; and (3) documents over which FlatWorld has expressly or impliedly waived the privileges.

Second, FlatWorld continues improperly to assert the common interest privilege over its communications with patent monetization company Acacia, even though FlatWorld did not have an attorney-client relationship or common interest with Acacia. Moreover, to the extent any such privilege ever existed, the parties voluntarily waived that privilege.

Finally, FlatWorld improperly asserts the work product doctrine over communications with Rembrandt, another patent monetization company, even though the parties did not have a common interest.

Apple respectfully requests that the Court order FlatWorld to produce the improperly withheld documents as set forth below.

## II.    FACTUAL BACKGROUND

### A.    FlatWorld Targeted Apple

Since its founding in January 2007, FlatWorld was either considering suing Apple for patent infringement or seeking a purchaser for its patent, such as Acacia, Rembrandt, or Nokia, who could itself use FlatWorld's patent to sue Apple. (*See* ECF No. 196 at 3; ECF No. 135 Exs. 1, 20, 27.) To that end, FlatWorld applied for a reissue of the patent-in-suit in July 2007 to "tailor it more closely to iphone [sic] claims." (ECF No. 135 Ex. 2.)

FlatWorld's co-founder, Jennifer McAleese, asked her husband John McAleese to assist FlatWorld in exploring suing Apple.  (*See* ECF No. 196 at 3.)  Mr. McAleese is an attorney and was a partner of Morgan Lewis, Apple's outside counsel, until May 2013.  (ECF No. 196 at 2.)

Judge Orrick has found that Mr. McAleese was acting as FlatWorld's attorney and breached his fiduciary duty to Apple, Morgan Lewis's client, by assisting FlatWorld:

> "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." John McAleese breached that duty.  Since 2007, John McAleese has acted as FlatWorld's attorney in a manner contrary to the interests of Morgan Lewis's (and thus McAleese's) client, Apple. . . .
>
> Over a period of nearly six years, by assisting FlatWorld and his wife in finding and retaining a law firm that would sue Apple for patent infringement, and by assisting in efforts to find a firm that would buy the patent to sue Apple itself, John McAleese acted contrary to Apple's interests.

(ECF No. 196 at 9-11 (citations omitted).)

On April 19, 2012, FlatWorld filed its complaint against Apple for patent infringement of touch- and gesture-based user-interface technology allegedly used in Apple products.  (ECF No. 1.)  On June 11, 2012, Apple filed its answer and counterclaims, pleading, *inter alia*, the defenses of laches and unclean hands.  (ECF No. 13 ¶ 41.)  Pursuant to these defenses, FlatWorld's claims are barred as a result, *inter alia*, of FlatWorld's concealment of its intention to file a patent infringement suit against Apple with the assistance of Apple's attorney, FlatWorld's encouragement and concealment of Mr. McAleese's breaches of his fiduciary duty, and other wrongdoing.[1]

## B.    FlatWorld's Privilege Assertions

FlatWorld served its first privilege log on February 22, 2013.  (*See* ECF No. 135 Ex. 9.) The log asserted that its communications to and from Mr. McAleese were protected by the attorney-client privilege.  (*See id.*)  On February 25, 2013, Apple in-house counsel Jeff Risher

---

[1] Apple served its Supplemental Interrogatory Responses on October 14, 2013 further outlining the factual bases for its defenses.  (*See* Ex. 56.)

1    discussed with Morgan Lewis FlatWorld's claims of privilege over communications with

2    Mr. McAleese.  (ECF No. 136 ¶¶ 4-5.)  Morgan Lewis forwarded this confidential

3    communication to John McAleese.  (*See* ECF No. 138 ¶ 3.)  Mr. McAleese, in turn, called

4    Hagens Berman, FlatWorld's counsel, stated that Apple had taken issue with the appearance of

5    his name on FlatWorld's privilege log, and asked that those documents be produced.  (ECF No.

6    149 ¶ 7.)

7         FlatWorld served a "First Amended Privilege Log" on Apple's counsel on February 27,

8    2013, in which it added to its claims of "attorney-client privilege," or replaced them with, claims

9    of "spousal privilege" with respect to FlatWorld's communications with Mr. McAleese.  (ECF

10   No. 135 Ex. 13.)  On February 28, 2013, Mr. McAleese again called Hagens Berman and

11   requested that FlatWorld produce all the logged communications between himself and

12   Ms. McAleese.  (*See* ECF No. 149 ¶ 11.)  Hagens Berman refused because "production of the

13   privileged documents to Apple would waive the [spousal] privilege."  (*Id.*)

14        FlatWorld ultimately served three more versions of its privilege log, in which it continued

15   to assert spousal and attorney-client privilege for communications between Mr. and

16   Ms. McAleese.  (*See* ECF No. 135 Exs. 3, 15; ECF No. 164 Ex. 49.)

17        **C.    Third-Party Discovery**

18        Meanwhile, Apple pursued discovery relating to Mr. McAleese's association with

19   FlatWorld from John McAleese and Morgan Lewis.  (*See, e.g.*, Exs. 5, 6.)[2]  The parties agreed to

20   a procedure by which FlatWorld would have the opportunity to inspect and assert alleged

21   privileges for the documents collected by Morgan Lewis and John McAleese.  (*See* ECF No. 147

22   at 7; ECF No. 149 ¶ 15.)  Accordingly, on April 5, 2013, FlatWorld served privilege logs

23   asserting privileges it alleged applied to documents possessed by Morgan Lewis and McAleese.

24   (*See* Blake Decl. ¶ 3.)

25        With regard to documents possessed by itself, Mr. McAleese, and Morgan Lewis,

26   ―――――――――――――――――
        [2] FlatWorld has yet to produce or log all documents responsive to Apple's June 6, 2013
27   document requests regarding Mr. McAleese's association with FlatWorld.  (*See* Blake Decl. ¶ 4;
     ECF No. 150 ¶ 7a; Ex. 54.)

28

1    FlatWorld has asserted, *inter alia*: (1) spousal privilege and attorney-client privilege for

2    communications sent to or received by Mr. McAleese at his Morgan Lewis e-mail account;

3    (2) spousal privilege and attorney-client privilege as to communications regarding business

4    matters; and (3) attorney-client and/or common interest privileges over 33 communications

5    between itself and Acacia.[3]

6        Apple also pursued discovery against third parties with whom FlatWorld communicated

7    regarding the patent-in-suit, including Acacia and Rembrandt.  (*See, e.g.*, Ex. 7, Ex. 11.)  On

8    April 26, 2013 and May 7, 2013, Acacia served privilege logs, asserting attorney-client privilege

9    as well as common interest and work product doctrines over Acacia's correspondence with

10   FlatWorld.  (*See* Exs. 8, 9.)  On May 17, 2013, Acacia removed all such assertions of privilege

11   over correspondence with FlatWorld and produced the documents that it had withheld.  (*See*

12   Ex. 10.)  In its May 31, 2013 privilege log, FlatWorld removed its privilege assertions for the

13   documents Acacia had produced.  (*See* Ex. 4 (entries with no highlights).)  Yet FlatWorld:

14   (1) refused to produce the documents that it admits are not privileged[4] (*see* Ex. 50 at 2); and

15   (2) continues to assert common interest and attorney-client privileges over 13 *other*

16   communications between itself and Acacia (*see* Ex. 4 (entries with yellow highlights)).

17       On April 23, 2013 and July 10, 2013, Rembrandt served privilege logs asserting the work

18   product doctrine over communications with FlatWorld dated primarily between June and July of

19   2007.  (*See* Exs. 12, 13.)  Rembrandt produced some of the documents on its log with redactions.

20   (*See id.* (entries not shaded gray).)  Apple challenged Rembrandt's work product assertions,

21   arguing that the documents were not prepared in anticipation of litigation.  (*See* Ex. 51.)

22   Rembrandt explained that it was withholding two categories of documents as protected from

23   _____

[3] FlatWorld asserted both attorney-client and common interest privileges for all but three
24   of those documents, and for those other three it asserted only attorney-client privilege.  (*See* ECF
     No. 135 Ex. 3; *see also* ECF No. 164 Ex. 49 at PRIV0484, PRIV0293B, and PRIV0426B.)

25       [4] On June 4, 2013, FlatWorld produced 37 documents, two of which appear to contain the
     October 3, 2009 email from Jonathan Taub to Slavko Milekic, Jennifer McAleese, and Gordon
26   Nelson that Acacia produced, but FlatWorld maintained on its privilege logs.  (*See* ECF No. 135
     Ex. 5 at JMPriv151B; ECF No. 135 Ex. 4 at MLB_F0000210B; ECF No. 164 Ex. 49 at
27   PRIV0293A-B; Ex. 25.)  FlatWorld refused to confirm whether the produced documents
     corresponded to any entries on its privilege logs.  (*See* Ex. 50 at 3.)

28

disclosure by the work product doctrine: "(1) confidential communications from FlatWorld to Rembrandt that Rembrandt understands contain FlatWorld's work product ('FlatWorld's Work Product'), and (2) documents containing the internal work product of Rembrandt ('Rembrandt's Work Product')." (Ex. 52 at 1.)[5] Rembrandt explained that it could not produce the former "[u]nless and until Flatworld either informs us that the documents are not work product or gives us permission to produce them." (*Id*.) Rembrandt sent the documents to FlatWorld so that FlatWorld could advise whether it had any objection to Rembrandt producing the documents. (*See* Ex. 53 at 2.) FlatWorld stated that it believed that the documents identified by Rembrandt as FlatWorld's Work Product are protected by the work product doctrine. (*See id.* at 1.)[6]

**D.      FlatWorld Productions of Allegedly Privileged Documents**

Despite its assertions of privilege, FlatWorld has nonetheless produced some, but not all, documents that it has described similarly, or identically, to the ones over which it still maintains a privilege claim and that were—and in some cases still are—on its privilege logs:

- FlatWorld produced Exhibits 14-16, which relate to FlatWorld's efforts to sell its patent to a monetization company. But FlatWorld continues to assert spousal privilege over the very same documents on the McAleese and Morgan Lewis privilege logs. (ECF No. 150 ¶ 7b (produced documents correspond to JMPriv143A, JMPriv155, MLB_F0000180 respectively).)

- FlatWorld produced six documents that it had claimed were privileged on its February 22, 2013 log. (*See* Exs. 17-20; Ex. 46; ECF No. 135 Ex. 9.) FlatWorld informed Apple that, while it believed that the spousal privilege applied to these documents, it elected not to claw them back. (*See* Ex. 43 at 1-2.)[7]

- FlatWorld and ICAP Ocean Tomo both produced an e-mail wherein Ms. McAleese forwarded to monetization company ICAP Ocean Tomo an attorney-client privileged e-mail regarding FlatWorld's reissue strategy from FlatWorld's attorney Gordon Nelson. (Exs. 21 and 24.) FlatWorld stated that it would "remove our claim of privilege as to that email" as to other documents that were identical to or contained the produced document, but argued that the scope of the waiver was limited to the four corners of the e-mail Ms. McAleese had forwarded. (Ex. 47 at 1.)

---

[5] Apple does not move to compel internal Rembrandt work product.

[6] While FlatWorld stated in an email to Rembrandt its position that the common interest privilege also applies to the documents, Rembrandt has not asserted common interest privilege. (*See* Ex. 53.)

[7] Exhibit 19 is an email exchange between Ms. McAleese and Dr. Milekic. It does not include Mr. McAleese. Spousal privilege clearly does not apply.

- FlatWorld produced an e-mail wherein Ms. McAleese disclosed to Google the legal advice that FlatWorld had received regarding the value of its claims. (Ex. 22.) FlatWorld acknowledged that it had waived the privilege, but it argued that the scope of the waiver was limited to the four corners of the document. (*See* Ex. 50 at 7.)[8]

### E.    Meet and Confer Regarding FlatWorld's Privilege Assertions

The parties engaged in a meet and confer process during which Apple asserted, *inter alia*, that the documents sent to/from Mr. McAleese's Morgan Lewis e-mail account are not privileged because he had no expectation of privacy on his work computer; that FlatWorld could not assert spousal or attorney-client privilege over documents relating to business matters; and that FlatWorld had waived privilege for all documents that have the same subject matter as documents for which it had voluntarily waived privilege. (*See, e.g.* Exs. 41-43, 45, 48.)  The parties also discussed whether FlatWorld had properly asserted the common interest and work product doctrines over its communications with Acacia and Rembrandt respectively.  (*See* Exs. 49-50, 53.)  The parties reached an impasse regarding these issues.  (*See* Ex. 50; Ex. 54.)

In explaining its assertion of attorney-client privilege over documents sent or received by Mr. McAleese, FlatWorld maintained that "Mr. McAleese has never been counsel to FlatWorld. . . .  FlatWorld claims no attorney-client privilege for any email sent directly to, or received directly from, Mr. McAleese."  (Ex. 42 at 2.)

## III.    ARGUMENT

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Here, FlatWorld does not deny that the documents at issue are relevant.  Rather, it asserts various privileges.  Those privileges, however, either are inapplicable to the documents at issue or were waived.

### A.    The Spousal Privilege Does Not Apply.

The spousal communications privilege, sometimes known as the marital communications

---

[8] On June 4, 2013, FlatWorld produced 37 additional documents.  (*See* Ex. 44.)  Apple inquired whether any of them were previously withheld as privileged.  (*See* Ex. 50 at 3.)  FlatWorld refused to respond.  (*See id.*)

privilege, protects "statements or actions that are intended as a communication by one spouse to the other, that are made during the existence of a valid marriage, and that are intended as confidential by the spouse who makes the communication." *U.S. v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005).[9]  The privilege seeks to protect spouses from the disclosure of private, marital communications, which, if revealed, "would tend to unduly embarrass or disturb the parties in their marital relations." *New York Life Ins. Co. v. Mason*, 272 F. 28, 31 (9th Cir. 1921). Accordingly, communications between spouses concerning merely business transactions are not covered by the spousal privilege since each party's role as spouse is merely incidental.  *See, e.g.*, *U.S. v. Kahn*, 471 F.2d 191, 194 (7th Cir. 1972) (communications between spouses concerning business do not fall under spousal privilege).  "It would be improper to shield non-confidential conversations between 'business associates' about business matters solely based on the fact that the 'business associates' are also married."  *In re Southern Air Transport, Inc.*, 255 B.R. 706, 713 (Bankr. S.D. Ohio 2000); *see also People v. Byrd*, 525 N.W.2d 507, 509 (Mich. Ct. App. 1994) (holding that a "party may rebut a claim of confidential communication by showing, among other things, that the communication concerned 'business matters transacted by one spouse as agent for the other'") (quoting *People v. Hamacher*, 432 Mich. 157, 166 (1989)).  Because the privilege "obstructs the truth-seeking process," the Ninth Circuit has construed it narrowly.  *Montgomery*, 384 F.3d at 1056 (quoting *U.S. v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990).

Here, FlatWorld seeks to assert the spousal privilege on Ms. McAleese's behalf[10] over documents that were not confidential and documents that were solely business-related.  The spousal privilege applies to neither.

---

[9] The application of the attorney-client, spousal, and common interest privileges as well as the work product doctrine is governed by federal common law in this case.  *See* Fed. R. Evid. 501; *U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (applying federal law regarding attorney-client privilege in federal question case); *U.S. v. Montgomery*, 384 F.3d 1050, 1058 (9th Cir. 2004) (applying federal law and considering state law regarding spousal privilege).

[10] Ms. McAleese is the Executive Director of Flatworld.  In consultation with Ms. McAleese, FlatWorld's attorneys asserted the privilege on her behalf on FlatWorld's own privilege log and on the logs that it prepared for Morgan Lewis and John McAleese.  (*See* Ex. 57 at 1.)

1.      **The Spouses Had No Expectation of Privacy In Communications Sent or Received Through Mr. McAleese's Morgan Lewis E-Mail Account.**

FlatWorld's logs contain over 200 entries in which it improperly asserts the spousal privilege over e-mails sent through Mr. McAleese's work e-mail account at Morgan Lewis.  (*See* Ex. 1.)  The Court should compel production of these documents because Mr. McAleese did not have a reasonable expectation of privacy over communications sent via Morgan Lewis's network.

The spousal privilege applies only to confidential communications.  *See Strobehn*, 421 F.3d at 1021.  Courts generally consider four factors in determining whether e-mails sent or received through an employee's work computer are considered confidential:  (1) Does the corporation maintain a policy banning personal or other objectionable use; (2) Does the company monitor the use of the employee's computer or e-mail; (3) Do third parties have a right of access to the computer or e-mails; and (4) Did the corporation notify the employee, or was the employee aware, of the use and monitoring policies.  *See, e.g.*, *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 257-59 (Bankr. S.D.N.Y. 2005); *see also Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1109-10 (W.D. Wash. 2011) (most state and federal courts evaluating whether employee has waived a claim of privilege over personal communications transmitted through company computer have applied *Asia Global* test); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* ("*In re Deepwater Horizon*"), No. MDL 2179, 2011 WL 1193030 (E.D. La. Mar. 28, 2011) (spousal privilege waived where notice stated that networks may be monitored and code of conduct stated that e-mails were not private).

Since at least 2006, Morgan Lewis has had a policy stating:  "The e-mail system and <u>all</u> messages it handles are the property of the Firm.  There is no confidentiality with respect to any message sent or received through [Morgan Lewis's] system, unless such confidentiality is specifically provided for by law."  (*See* Ex. 28 at 153 (emphasis in original) (May 3, 2006 policy); *see also* Ex. 29 at 159 (April 1, 2009); Ex. 30 at 167 (February 10, 2012); Ex. 31 at 175 (February 27, 2013).)  Moreover, all four *Asia Global* factors confirm that Mr. McAleese did not have a reasonable expectation of privacy in the e-mails he sent or received through his Morgan Lewis e-mail address:

- First, Morgan Lewis's e-mail policy states that its e-mail system is "provided for business purposes" and encourages the use of non-work e-mail accounts for sending and receiving personal e-mail.  (*See id*.)

- Second, the e-mail policy specifically states that Morgan Lewis reserves the right to monitor an attorney's e-mail use:  "The Firm maintains the right to review, audit, intercept, access and disclose all messages created, received, sent, or stored over the electronic mail system for any purpose."  (*See, e.g.*, Ex. 28 at 155.)  In fact, Morgan Lewis did monitor its employees' e-mails:  it reviewed the e-mails and hard drives of Mr. McAleese and other employees to determine whether Mr. McAleese had improperly accessed Apple's confidential information (s*ee, e.g.*, ECF No. 149 Ex. 4 at 16:14-22; ECF No. 135 ¶ 24; ECF No. 196 at 13; ECF No. 147 at 8).

- Third, in addition to Morgan Lewis's aforementioned "right to review, audit, intercept, access and disclose" e-mails, as of April 2009, each attorney's assistant also had access to attorneys' e-mail accounts.  (*See* Ex. 29 at 159.)

- Finally, Morgan Lewis notified attorneys of its policies by distributing them firmwide.  (*See, e.g.*, Exs. 32, 33 (e-mails distributing policy in 2009 and 2010).)  In fact, Mr. McAleese certified on an annual basis that he understood and agreed to comply with Morgan Lewis's E-mail and Internet Policy.  (*See* Ex. 34 at 281 (signed 2007); Ex. 35 at 247-48 (signed 2008); Ex. 36 at 273-74 (signed 2009); Ex. 37 at 298-99 (signed 2010); Ex. 38 at 240-41 (signed 2011); Ex. 39 at 181-82 (signed 2012).)

Several courts have applied the *Asia Global* factors to policies similar to those of Morgan Lewis and concluded that employees had no reasonable expectation of privacy with respect to e-mails stored on their company's networks.  *See, e.g.*, *Aventa Learning, Inc.*, 830 F. Supp. 2d at 1109 (applying *Asia Global* factors and finding privilege waived where company policy discouraged personal use, warned that e-mails are not private, and stated that any stored communication can be monitored); *see also In re Deepwater Horizon*, 2011 WL 1193030 (same).

Because Mr. McAleese did not have a reasonable expectation of privacy in the e-mails he sent or received through his Morgan Lewis e-mail address, the Court should order FlatWorld to produce all such documents.  (*See* Ex. 1.)[11]

---

[11]Despite repeated requests that FlatWorld identify the email address for all correspondence involving Mr. McAleese (*see, e.g.*, Ex. 43 at 2), FlatWorld has failed to identify the email address he used in all instances.  Apple requests that the Court order FlatWorld to produce documents sent to/from Mr. McAleese's Morgan Lewis email account, whether or not FlatWorld's log currently identifies the email account he used.

APPLE'S FIRST MOTION TO COMPEL
Case No. 3:12-01956-WHO (EDL)
sf-3342571

9

### 2.    The Spouses' Business-Related Communications Should Not Be Protected.

FlatWorld has asserted spousal privilege on Ms. McAleese's behalf over communications between Mr. and Ms. McAleese for which the stated "Purpose" is FlatWorld "litigation," "business planning," "business operation," "business administration," "[patent] prosecution," "obtaining a patent," "client engagement," "preserving confidential nature of business information," and "market knowledge." (*See* Ex. 2.) However, the spousal privilege does not apply to merely business-related transactions, as the fact that the parties are spouses is incidental to the communication. *See, e.g.*, *Kahn*, 471 F.2d at 194; *In re Southern Air Transport, Inc.*, 255 B.R. at 713. This makes sense, as the policy underlying the spousal privilege is to prevent "prying into the secrets of husband and wife," (McCormick on Evidence § 86), rather than to protect business transactions, *see New York Life Ins. Co.*, 272 F. at 31 (interpreting Montana statute) ("There can be no reason arising out of public policy, or otherwise, requiring that every word spoken between husband and wife shall be privileged, irrespective of . . . the subject or occasion thereof. . . .   The spirit of the rule . . . is that the privilege shall be construed to embrace only the knowledge which the husband or wife obtains from the other, which . . . is of such nature or character as that, to repeat the same, would tend to unduly embarrass or disturb the parties in their marital relations.").

Here, it is clear that each party's role as a spouse is merely incidental and that the communications are, in reality, communications between business associates about business matters. For example, FlatWorld has claimed the spousal privilege over a June 6, 2006 e-mail from Mr. McAleese to Ms. McAleese that it describes as an "[e]mail with discussion about FlatWorld business development" that was "[d]rafted for purpose of business planning." (Ex. 2 at 1 (MLB_F0000001A).)  As another example, FlatWorld has claimed the privilege over an October 19, 2009 e-mail from Mr. McAleese to Ms. McAleese that it describes as an "[e]mail regarding FlatWorld initiatives" that was "[d]rafted for purposes of business administration." (*Id.* at 13 (MLB_F0000230A).)  There is nothing matrimonial about "business development," "business planning," "business administration," or "FlatWorld initiatives," and such

1  correspondence is not spousal privileged.

2         In fact, FlatWorld initially did not even assert spousal privilege over these documents.

3  (*See* ECF No. 135 Ex. 9.)  Mr. McAleese himself insisted that FlatWorld *not* assert the spousal

4  privilege.  (*See* ECF No. 149 ¶ 11.)  Moreover, produced documents confirm that Mr. McAleese's

5  advice was solicited—in some instances by FlatWorld's co-founder Dr. Milekic—not in the

6  context of his marriage, but rather as an agent of FlatWorld.  (*See* ECF No. 135 Ex. 27 (Dr.

7  Milekic noted that Mr. McAleese was reviewing documents relating to sale of FlatWorld patent to

8  ICAP Ocean Tomo); Ex. 23 (███████████████████████████████████████████████

9  ███████████████████████████████████████); ECF No. 180 Ex. 45 (Dr. Milekic asked

10 Ms. McAleese to ask her husband to review materials sent by Acacia to FlatWorld).)

11        FlatWorld is nevertheless attempting to shield other communications between Mr. and

12 Ms. McAleese regarding business matters solely based on the fact that these business associates

13 are also married.  The policy underlying the spousal privilege would not be served by protecting

14 such communications.  *See New York Life Ins. Co.*, 272 F. at 31.  FlatWorld should not be

15 permitted to conceal relevant documents regarding the value of its patents or regarding its

16 encouragement and concealment of Mr. McAleese's breach of fiduciary duty to Apple as

17 "secrets" between Mr. McAleese and his wife.

18        Thus, the Court should order FlatWorld to produce the responsive business-related

19 documents in its possession that it has withheld on the basis of spousal privilege.  (*See* Ex. 2.)

20        **B.     FlatWorld Waived Any Spousal Privilege.**

21        FlatWorld bears the burden to show that its privileges have not been waived.  *See Weil v.*

22 *Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  There are two primary

23 ways in which a party can waive privilege.  *See id.* at 24-25.  First, a party may expressly waive

24 the privilege by disclosing privileged communications to third parties.  *See id.*  Second, a party

25 may impliedly waive the privilege by asserting a claim or defense that relies on privileged

26 materials as its basis.  *See id.*  Here, FlatWorld has done both:  (1) FlatWorld's disclosure of the

27 substance of the communications effected a waiver of that privilege as to the subject matter of

28 those communications; and (2) FlatWorld impliedly waived the spousal privilege by putting

1    Ms. McAleese's communications with Mr. McAleese at issue.[12]

2              **1.    FlatWorld Waived the Privilege as to Discussions With Potential
                       Purchasers by Producing Documents Relating to that Subject.**
3

4          Disclosure of the content of privileged communications constitutes a waiver of the

5    privilege as to all other such communications on the same subject.  *See id.* (stating rule for

6    attorney-client privilege); *see also Knepp v. United Stone Veneer, LLC*, No. 4:06-CV-1018, 2007

7    WL 2597936, *5 (M.D. Pa. Sept. 5, 2007) (finding that spousal privilege was waived as to all

8    communications on same subject matter).  A party cannot disclose a privileged communication

9    about a matter that is relevant and material to issues in the case, and then invoke the privilege to

10   prevent discovery of other communications about the same matter.  *See Weil*, 647 F.2d at 24-25

11   (where defendant's understanding of its legal obligations regarding registration was relevant, and

12   defendant disclosed content of privileged communication regarding registration requirement,

13   defendant waived privilege as to communications about substance of counsel's advice regarding

14   registration).

15         FlatWorld has waived the spousal privilege for all documents regarding FlatWorld's

16   discussions with potential third party purchasers of the patent-in-suit by producing various

17   allegedly privileged documents regarding FlatWorld's discussions with such third parties.  For

18   example, FlatWorld produced documents regarding its negotiations with Nokia to purchase the

19   patent, while simultaneously maintaining that the spousal privilege applies to those very same

20   documents.  (*See* Exs. 17-18, 20 (Mr. and Ms. McAleese agreed to discuss Ms. McAleese's

21   response to Nokia's e-mail requesting a bidding deadline and target price); *see also* Ex. 43

22   (asserting spousal privilege); Ex. 46 at 1-2 (identifying Bates numbers of documents

23   corresponding to privilege log entries).)  FlatWorld's discussions with potential third party

24   purchasers of the patent-in-suit relate to the value of the patent, which is highly relevant.

25

26   _____

27         [12] FlatWorld acknowledged that it could waive the privilege by producing documents to
     which the spousal privilege purportedly applied.  (*See* ECF No. 149 ¶ 11 (stating that "production
     of the privileged documents to Apple would waive the [spousal] privilege").)

28

### 2.     FlatWorld Has Put The Marital Communications At Issue.

FlatWorld has also impliedly waived the spousal privilege by putting Ms. McAleese's conversations with her husband at issue.  "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (defendant waived privilege where he put tax advice at issue by claiming that tax position was reasonable because it was based on advice of counsel).  A privilege "may not be used both as a sword and a shield." *Id.* at 1162-63.

Here, through Mr. and Ms. McAleese's actions, FlatWorld has asserted a patent against Apple with the aid of a lawyer who had fiduciary duties to Apple.  Under these circumstances, FlatWorld put its good faith with respect to the patent at issue.  *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (patent infringement case cannot proceed where patentee did not act in good faith).  Because the communications between Mr. and Ms. McAleese pertaining to the patent are relevant to whether FlatWorld aided and abetted Mr. McAleese's breach of fiduciary duties (or rather acted in good faith), FlatWorld put those communications at issue.

Moreover, FlatWorld has selectively disclosed certain communications between Mr. and Ms. McAleese when doing so suited its needs.  For example, in its responses to Apple's interrogatories, FlatWorld states that it first became aware that Apple was a client of Morgan Lewis in March 2012 when "John McAleese verbally informed Jennifer McAleese of this fact and also that he would inform MLB of FlatWorld's intention to file suit against Apple."  (*See* ECF No. 164 Ex. 41 at ROG 15.)  FlatWorld thus revealed spousal communications, which suggested that it only learned of Morgan Lewis's conflict in 2012, to gain a tactical advantage in the face of Apple's impending Motion to Disqualify—and thereby used the spousal privilege as a sword.  It cannot now be permitted to use the spousal privilege as a shield to protect damaging communications relating to the same subject.  The Court should thus order FlatWorld to produce all the documents over which it asserts spousal privilege.  (*See* Ex. 2.)

### C.     The Attorney-Client Privilege Does Not Apply.

"'The attorney-client privilege protects confidential disclosures made by a client to an

1   attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such

2   disclosures.'" *Ruehle*, 583 F.3d at 607 (quoting *U.S. v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)).

3   Typically, an eight-part test determines whether information is covered by the attorney-client

4   privilege:  "'(1) Where legal advice of any kind is sought (2) from a professional legal adviser in

5   his capacity as such, (3) the communications relating to that purpose, (4) made in confidence

6   (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or

7   by the legal adviser, (8) unless the protection be waived.'"  *Id.* (quoting *In re Grand Jury*

8   *Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).  Because it "impedes full and free

9   discovery of the truth," and "stands in derogation of the public's 'right to every man's evidence'

10  and as 'an obstacle to the investigation of the truth,'" the attorney-client privilege is "strictly

11  construed" and "confined within the narrowest possible limits consistent with the logic of its

12  principle."  *Ruehle*, 583 F.3d at 607. (citations omitted).  "[A] party asserting the attorney-client

13  privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the

14  privileged nature of the communication."  *Id.* (quoting *Bauer*, 132 F.3d at 507).

15      FlatWorld asserts the attorney client privilege over documents that are not confidential

16  and that relate only to business matters rather than to the procurement of legal advice.  The

17  privilege does not apply to either category of documents.

### 1.   FlatWorld Had No Expectation of Privacy In Communications Sent To or From Mr. McAleese's Morgan Lewis E-Mail Account.

20      FlatWorld improperly asserts the attorney-client privilege over e-mails sent to or from

21  Mr. McAleese's Morgan Lewis e-mail account.  (*See* Ex. 1 (highlighted documents).)  The Court

22  should compel production of these documents because FlatWorld did not have a reasonable

23  expectation of privacy over communications sent via Morgan Lewis's network.

24      As an initial matter, ***FlatWorld has withdrawn its assertion that communications with***

25  ***Mr. McAleese himself are protected by the attorney-client privilege.***  (*See* ECF No. 150 ¶ 11

26  (FlatWorld originally designated communications with Mr. McAleese as attorney-client

27  privileged because he is an attorney but later determined that "designating these communications

28  as subject to the attorney-client privilege was incorrect"); *see also* Ex. 42 at 2 (FlatWorld "claims

1   no attorney-client privilege for any email sent directly to, or received directly from,

2   Mr. McAleese" because "Mr. McAleese has never been counsel to FlatWorld").)  Because

3   FlatWorld has decided not to claim attorney-client privilege over such communications, it has

4   waived the privilege as to them.

5          Apparently, FlatWorld still maintains its claim to attorney-client privilege over documents

6   where Mr. McAleese appears in the "to," "from," or "cc" field because they include underlying

7   communications with *other* attorneys.  Thus, by FlatWorld's logic, Mr. McAleese was acting in

8   his personal capacity when he was sending and receiving the emails for which FlatWorld asserts

9   attorney-client privilege.  If, as FlatWorld would have it, Mr. McAleese was using his Morgan

10  Lewis e-mail for personal use, then, as discussed in Section III.A.1, FlatWorld did not have a

11  reasonable expectation of privacy in the e-mails sent or received through that e-mail address.  *Cf.*

12  *Ruehle*, 583 F.3d at 607 (attorney-client privilege applies only to confidential communications).

13  The Court should thus order FlatWorld to produce all the documents over which it asserts

14  attorney-client privilege that were sent or received through Mr. McAleese's Morgan Lewis e-mail

15  account.  (*See* Ex. 1 (highlighted documents).)

16                **2.     FlatWorld's Business-Related Communications Should Not Be
                          Protected.**

17

18         As with the spousal privilege, the attorney-client privilege does not apply to documents

19  whose purpose is to discuss business matters.  FlatWorld has asserted attorney-client privilege

20  over nearly 400 communications for which the stated "Subject Matter" is "business planning,"

21  "business organization," or "business administration," such as a December 14, 2006 e-mail from

22  Ms. McAleese to Mr. Milekic and attorney John Kenney that was "regarding business planning."

23  (Ex. 3 at 7 (PRIV1119F); *see generally* Ex. 3.)  A party seeking to withhold discovery based upon

24  the attorney-client privilege must prove that "*each* communication in question was made

25  *primarily* for the purpose of generating legal advice."  *McCaugherty v. Siffermann*, 132 F.R.D.

26  234, 238 (N.D. Cal. 1990).  "No privilege can attach to any communication as to which a

27  business purpose would have served as a sufficient cause, *i.e.*, any communication that would

28  have been made because of a business purpose, even if there had been no perceived additional

1    interest in securing legal advice." *Id.* at 238.  Because there is no evidence that these documents

2    were drafted *primarily* for the purpose of generating legal advice—and indeed, e-mails regarding

3    "business planning" do not indicate that they were created to secure legal advice at all—the Court

4    should order their production.

5        **D.     FlatWorld Waived Any Attorney-Client Privilege.**

6            **1.     FlatWorld Waived the Privilege as to Advice Regarding the Valuation
                       of the Patent by Producing Documents Relating to that Subject.**

7

8        FlatWorld has waived any possible attorney-client privilege for documents relating to

9    advice it received regarding the valuation of its patent by producing an e-mail, addressed to a

10   Google employee, wherein Ms. McAleese recounted the advice that FlatWorld had received

11   regarding the value of its claims.  *See Weil*, 647 F.2d at 24-25.  In that e-mail, she stated:  "We

12   have been told by many law firms that the patent is extremely valuable even without the reissue

13   possibilities."  (Ex. 22.)  Her e-mail clearly reveals privileged legal advice that FlatWorld

14   received from its attorneys.  During a meet and confer, FlatWorld acknowledged that it had

15   waived the privilege, but it argued that the scope of any waiver was limited to the four corners of

16   the e-mail Ms. McAleese forwarded.  (*See* Ex. 50 at 7.)  But the value of the patent-in-suit is

17   relevant to issues in this case, including damages and obviousness.  *See Transocean Offshore*

18   *Deepwater Drilling, Inc. v. Maersk Drilling U.S.A., Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012)

19   (noting commercial success, licensing, and industry praise as considerations relevant to

20   obviousness).  FlatWorld cannot waive the privilege as to helpful communications about the

21   value of its patent while simultaneously concealing other communications under the cloak of

22   privilege:  this is exactly the abuse of the privilege that the subject matter waiver rule was

23   designed to avoid.  *See Chevron Corp.*, 974 F.2d at 1162.  Moreover, Apple would be prejudiced

24   if FlatWorld were permitted to reveal legal advice that suggests a high valuation of the patent-in-

25   suit while simultaneously concealing communications that suggest a low valuation.  Thus, black

26   letter law as well as fairness dictates that FlatWorld be required to produce all documents

27   regarding the same subject matter.  *See Pacing Techs., LLC v. Garmin Int'l, Inc.*, No. 12-cv-1067

28   BEN (WMc), 2013 WL 4774765, at *5 (S.D. Cal. Sept. 5, 2013) (finding subject waiver

1    regarding documents related to preparation, finalization, and filing of draft patent application

2    where plaintiff produced communications discussing that draft).

3            **2.      FlatWorld Waived the Privilege as to Its Patent Reissue Strategy by
                        Producing Documents Relating to that Subject.**

4

5            Similarly, FlatWorld has waived the attorney-client privilege for all documents regarding

6    its reissue strategy by forwarding to monetization company ICAP Ocean Tomo an attorney-client

7    privileged e-mail regarding FlatWorld's reissue strategy written by FlatWorld's attorney Gordon

8    Nelson.  (*See* Ex. 21; *see also* Ex. 55 at 102:1-13 (Mr. Nelson testified that he intended the e-mail

9    to be confidential legal advice).)  FlatWorld admits that it waived privilege as to the e-mail.  (*See*

10   Ex. 47.)  Because FlatWorld's reissue strategy for the patent-in-suit is relevant to issues in this

11   case, such as invalidity, FlatWorld has also waived privilege for all other documents regarding

12   FlatWorld's reissue strategy.

13           **3.      FlatWorld Has Disclosed Ostensibly Privileged Communications To
                        Mr. McAleese.**

14

15           FlatWorld asserts attorney-client privilege over:  (1) e-mails that were forwarded to

16   Mr. McAleese by Ms. McAleese, (2) e-mails that purportedly were sent to him at her behest, and

17   (3) any response that he made to the sender of such e-mails.  Even assuming the attorney-client

18   privilege would otherwise apply to the underlying communications between FlatWorld and

19   attorneys ***other than*** Mr. McAleese, FlatWorld waived that privilege when it disclosed those

20   communications to Mr. McAleese.

21           As discussed in Section C.1, *supra*, FlatWorld has withdrawn its attorney-client privilege

22   assertion as to communications with Mr. McAleese himself.  Given this withdrawal, FlatWorld

23   cannot maintain its claim to attorney-client privilege over communications with ***other*** attorneys

24   where those communications were sent to Mr. McAleese, because an express waiver occurs when

25   a party discloses privileged information to a third party who is not bound by the privilege.  *See*

26   *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).  The Court should order FlatWorld to

27   produce all the documents over which it asserts attorney-client privilege that it disclosed to

28   Mr. McAleese.  (*See* Ex. 2 (documents highlighted in yellow).)

**E.      The Common Interest Privilege Does Not Apply To FlatWorld's Communications With Adverse-Party Acacia.**

The common interest privilege serves to "protect[] . . . the confidentiality of communications passing . . . 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'"  *U.S. v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).  The burden of establishing the "common interest" privilege is on the party asserting the privilege.  *See In re Juniper Networks, Inc. Sec. Litig.*, Nos. C 06-4327 JW (PVT) & C-08-00246 JW (PVT), 2009 WL 4644534, at *1 (N.D. Cal. Dec. 9, 2009).

Despite admitting that the majority of documents over which it initially asserted common interest privilege were not actually privileged, FlatWorld:  (1) refuses to produce the documents that it admits are not privileged; and (2) continues to improperly assert common interest privilege over 13 communications between itself and Acacia.  (*See* Ex. 4; *see also* ECF No. 164 Ex. 49; ECF No. 135 Ex. 4; ECF No. 135 Ex. 5.)  FlatWorld should be ordered to produce all relevant documents that it admits are not privileged, *see* Fed. R. Civ. P. 26(b)(1), as well as all other communications with Acacia over which it continues to assert the common interest privilege.

The common interest doctrine does not apply to these documents because there was no attorney-client relationship between FlatWorld, Acacia, and their respective attorneys.  The common interest doctrine is not a privilege in and of itself; it is rather an exception to the rule on waiver where otherwise privileged communications are disclosed to third parties.  *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  "[S]ince it is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance."  *Id.*  FlatWorld has refused to identify the attorney and client for these communications.  (*See* Ex. 45 at 2; Ex. 49 at 1.)  In fact, it has admitted that 20 of the 33 communications with Acacia that it initially withheld as attorney-client privileged are not privileged.  (*See* ECF No. 164 Ex. 49; *see also* Ex. 4.)  There is no evidence that any attorney-client relationship existed between FlatWorld, Acacia, and their respective attorneys.

Moreover, Acacia and FlatWorld did not share a common interest, but rather had adverse interests in arm's-length negotiations of a potential license or sale of the patent-in-suit.  *See Katz v. AT&T Corp.*, 191 F.R.D. 433, 438 (E.D. Pa. 2000) (documents which related to negotiations between patentee and potential licensee prior to final licensing agreement were not protected from discovery under the common interest doctrine); *see also SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 512-13 (D. Conn. 1976) (price for relinquishing control in joint venture was an issue on which parties were not commonly interested but rather "adverse, negotiating at arm's length a business transaction between themselves").  In fact, the documents over which FlatWorld previously asserted the common interest privilege—before Acacia produced them—confirm that the parties were merely negotiating the terms of a *potential* agreement, which they never reached: ██████████████████████████████████ (*see* Ex. 25); ██ ██████████████████████████████████ (*see* Ex. 26); ██████████████ ██████████████████ (*see* Ex. 27).  Because the parties never had a common legal interest, the common interest privilege cannot attach.

### F.    FlatWorld and Acacia Have Waived Any Common Interest Privilege.

Even if the privilege were to apply (and it does not), both FlatWorld and Acacia have waived it.  On May 17, 2013, Acacia removed all assertions of attorney-client and common interest privileges over correspondence with FlatWorld and produced the documents that it had withheld.  (*See* Ex. 10.)  In its May 31, 2013 privilege log, FlatWorld admitted that the documents Acacia had produced were not privileged.  (*See* ECF No. 164 Ex. 49; *see also* Ex. 4.)  Thus, to the extent that the attorney-client and/or common interest privileges applied to any correspondence between Acacia and FlatWorld, both parties have waived the privileges for all remaining communications between them.  FlatWorld has stated no valid basis for continuing to withhold: (1) documents that it admits are not privileged; and (2) other communications between itself and Acacia regarding the same subject matter.  The Court should thus order FlatWorld to produce all communications between Acacia and FlatWorld.  (*See* Ex. 4.)

### G.    FlatWorld's Communications With Rembrandt Are Not Work Product.

The work product doctrine does not apply to FlatWorld's communications with

1  Rembrandt because they do not reflect attorney work product and, according to FlatWorld's

2  admissions, were not prepared in anticipation of litigation.

3      As an initial matter, Rembrandt's log reflects communications with FlatWorld's

4  managers—Ms. McAleese and Dr. Milekic—not attorneys.  "[T]he work-product doctrine

5  shelters the mental processes *of the attorney*, providing a privileged area within which he can

6  analyze and prepare his client's case."  *U.S. v. Nobles*, 422 U.S. 225, 238 (1975) (emphasis

7  added).  The work product doctrine does not protect Ms. McAleese's and Dr. Milekic's mental

8  processes.  *See Cason v. Builders FirstSource-Southeast Grp., Inc.*, 159 F. Supp. 2d 242, 247

9  (W.D.N.C. 2001) (notes prepared by defendant's management staff not protected by work

10 product doctrine).

11     Moreover, FlatWorld has waived any work product by sending it to Rembrandt.  *See*

12 *Nobles*, 422 U.S. at 240 (by electing to present as a witness investigator who had interviewed key

13 prosecution witnesses, defendant waived work product privilege with respect to matters covered

14 in investigator's testimony).  The common interest doctrine does not operate to prevent waiver

15 because Rembrandt and FlatWorld did not share a common interest, but rather had adverse

16 interests in arm's length negotiations of a potential license or sale of the patent-in-suit.  *See Katz*,

17 191 F.R.D. at 438; *see also* Ex. 40 (FlatWorld determined that Rembrandt's business model was

18 not appropriate).

19     Finally, for the work product doctrine to apply, the documents must have been prepared in

20 anticipation of litigation.  *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510-11

21 (1947).  The asserting party bears the burden of establishing that the materials it seeks to protect

22 are documents prepared "in anticipation of litigation."  *See Diagnostics Sys. Corp. v. Symantec*

23 *Corp.*, No. SA CV 06-1211 DOC (ANx), 2008 WL 9396387, at *5 (C.D. Cal. Aug. 12, 2008)

24 (work product doctrine did not apply where "anticipation of litigation was a developing process"

25 and plaintiff "had not yet formalized specific litigation plans"); *see also SmithKline Beecham*

26 *Corp. v. Apotex Corp.*, 232 F.R.D. 467, 473 (E.D. Pa. 2005) (work product doctrine did not apply

27 even though litigation was "likely" because plaintiff failed to show "existence of an identifiable

28 specific claim or impending litigation at the time the materials were prepared").  But FlatWorld

claims that it was *not* anticipating litigation with Apple before 2009.  (*See* ECF No. 153 ¶ 15 (in November 2008 "FlatWorld had not decided to enforce its patent through litigation"), ¶ 17 ("I could not have known for certain whether any reissued claims would read on any Apple product.").)   Given FlatWorld's position, it cannot meet its burden.  Thus, the Court should order FlatWorld to produce all communications between Rembrandt and FlatWorld.  (*See* Ex. 13.)

## IV.     CONCLUSION

Apple respectfully requests that the Court order FlatWorld to produce all the documents over which it has improperly asserted, or waived, privilege as discussed above.

Dated:  October 15, 2013

/s/ Rachel Krevans
Rachel Krevans (SBN 116421)
rkrevans@mofo.com
Wesley E. Overson (SBN 154737)
woverson@mofo.com
Diana B. Kruze (SBN 247605)
dkruze@mofo.com
John K. Blake, Jr. (SBN 262906)
jblake@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Kenneth H. Bridges (SBN 243541)
kbridges@bridgesmav.com
Michael T. Pieja (SBN 250351)
mpieja@bridgesmav.com
Lawrence Lien (SBN 265851)
llien@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

1   James A. Shimota (admitted pro hac vice)
    jshimota@bridgesmav.com
2   Aaron Taggart (SBN 258287)
    ataggart@bridgesmav.com
3   Adam R. Brausa (admitted pro hac vice)
    abrausa@bridgesmav.com
4   BRIDGES & MAVRAKAKIS LLP
    180 N. LaSalle, Suite 2215
5   Chicago, IL 60601
    Telephone: (312) 216-1620
6   Facsimile: (312) 216-1621

7   John J. Steele (SBN 122872)
    john.steele@johnsteelelaw.com
8   JOHN STEELE, ATTORNEY AT LAW
    2225 East Bayshore Road, Suite 200
9   Palo Alto, CA 94303
    Telephone: (650) 320-7662
10
    Attorneys for Defendant Apple Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 15, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.1(h).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.


By:   /s/ Rachel Krevans
        Rachel Krevans