# Exhibit 15

# EXCLUSIVE LICENSE AGREEMENT

**This Exclusive License Agreement (the "Agreement")** is entered into by and between _____ ("Licensor"), a _____ having a principal place of _____ at _____, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

# BACKGROUND

**WHEREAS,** Licensor is the sole and exclusive owner of **U.S. Patent No(s).** _____ and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations–in–part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof (collectively referred to as the "Patents"); and

**WHEREAS,** Licensor is willing to grant worldwide exclusive license rights in the Patents to APAC and APAC in turn, desires to acquire all substantial rights in and to the Patents.

**NOW, THEREFORE,** in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, Licensor and APAC agree as follows:

1. **GRANT**

    1.1.    Exclusive License. Effective immediately upon the date of Acceptable Completion as set forth in Section 1.3 below, Licensor grants to APAC all substantial rights in and to the Patents including the worldwide, exclusive right and license under the Patents to make, have made, use, import, offer or sell products or services covered by the Patents, including the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the Patents. Except as expressly set forth in this Agreement, Licensor retains no rights in or to the Patents, including without limitation, the right to sue for and collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the Patents and specifically grants APAC all such rights for the term as set forth in Section 6 below.

    1.2.    Investigation Period. Licensor acknowledges and agrees that APAC shall undertake and perform a due diligence investigation of the Patents during the period of up to sixty (60) days following the Effective Date (the "Investigation Period"). In consideration of APAC's due diligence investigation of the Patents, Licensor agrees that, during the Investigation Period, Licensor shall not discuss, negotiate or pursue with any third parties any offers or proposals with respect to or otherwise relating to any of the Patents. Licensor agrees to cooperate with APAC and to promptly provide to APAC all information in Licensor's possession or control regarding the Patents, including, but not limited to, a copy of the complete prosecution history of each of the Patents (each a "File History") and copies of all files, information and documents relating to the Patents. In the event that any of the File Histories or any of the files, information and documents relating to the Patents are not delivered to APAC within the seven (7) day period following the Effective Date, the Investigation Period shall be automatically extended by the greater of

FWAPP00006751

the number of days for which the last of the File Histories or any files, information and documents relating to the Patents is delayed. On or before the completion of the Investigation Period, APAC shall provide written notice to Licensor of its conclusion regarding the investigation of the Patents. The Investigation Period will commence on the Effective Date and conclude on the earlier of: (i) automatically at 11:59 P.M. Pacific Time, sixty (60) calendar days following, but not including, the Effective Date, subject to the extensions set forth in this <u>Section</u> 1.2, provided that, if the Investigation Period ends on a Saturday, Sunday, or a U.S. Federal holiday, such Investigation Period shall conclude on the next business day; or (ii) such time within the Investigation Period as APAC transmits written notice to Licensor of its conclusion regarding the investigation of the Patents.

1.3.  <u>Due Diligence Completion</u>. If APAC determines, in its sole and absolute discretion, that the Patents are acceptable and transmits written notice to Licensor by the end of the Investigation Period that the Patents are acceptable ("Acceptable Completion"), then this Agreement shall continue with full force and effect following such Acceptable Completion of the Investigation Period. Otherwise**,** if APAC determines, in its sole and absolute discretion, that the Patents are not acceptable, then (i) APAC shall have no payment obligations or liability to Licensor hereunder; and (ii) this Agreement shall automatically terminate upon completion of the Investigation Period. For the purposes of this <u>Section</u> 1.3, written notice of Acceptable Completion (or mutual extension of the Investigation Period) may be sent by first class mail, facsimile, recorded delivery or electronic mail.

1.4.  <u>Obligations of Licensor during the Investigation Period</u>. Notwithstanding anything to the contrary in this Agreement, during the Investigation Period, Licensor will (i) pay all maintenance fees for the U.S. Patents on or before their due dates at the appropriate small or large entity fee rate; (ii) pay all foreign maintenance fees with respect to the Patents on or before their due dates; (iii) continue the prosecution of any and all activities, matters and proceedings before the United States Patent and Trademark Office (the "USPTO") and foreign patent offices relating to the Patents, including without limitation any reissues or reexaminations of any issued United States patent and the prosecution and the continuing prosecution of any pending United States or foreign patent applications among the Patents; and (iv) not engage in any activity that may affect the accuracy or completeness of Licensor's representations and warranties in <u>Section</u> 1.9 below. Any costs, fees and expenses related to such maintenance, prosecution of the Patents and attorney fees incurred in the negotiation of this Agreement or consulting support provided by Licensor to APAC during the Investigation Period will be borne by Licensor.

## 2.  <u>CONSIDERATION</u>

1.5.  <u>Royalty Payments</u>. In consideration of the rights assigned to APAC hereunder, Licensor's share of the Net Proceeds (as defined below) shall be equal to _____ percent (___%) of Net Proceeds. APAC's share of the Net Proceeds shall be equal to _____ percent (___%) of Net Proceeds. For purposes hereof, the following terms shall have the following meanings:

"<u>Net Proceeds</u>" shall mean Total Recoveries less the APAC Costs.

"<u>Total Recoveries</u>" shall mean all amounts actually received by APAC from the licensing and enforcement of the Patents including all licensing proceeds and

recoveries from any lawsuits or settlements.

"APAC Costs" shall mean all costs and expenses incurred with third parties in connection with prosecuting, licensing, enforcing or defending the Patents, including without limitation:

(a)  attorneys' and paralegal fees (whether on an hourly or contingent basis and whether for general or local counsel), costs and disbursements;

(b)  the fees and costs of consultants, experts or technical advisors;

(c)  travel and lodging expenses;

(d)  duplicating, secretarial, stenographer, postage, courier and similar expenses;

(e)  filing fees and other Patent Office fees or costs;

(f)  court costs;

(g)  legal and other costs related to any re-examination or reissue proceeding;

(h)  legal and other costs incurred in defending any action or counterclaim in respect of the Patents; and

(i)  legal and other costs in prosecuting or processing any U.S. or foreign application, including without limitation, any continuing application or continuation in part application.

(j)  any foreign tax now or hereafter imposed by any non-U.S. governmental or taxing authority on any aspect of this Agreement and the obligations hereunder.

1.6.  <u>Application of Total Recoveries</u>. Total Recoveries shall be applied in the following order of priority: first to APAC in an amount equal to the APAC Costs, then to APAC and Licensor in proportion to their respective shares of the Net Proceeds. All Taxes (as defined below) shall be the financial responsibility of the Party obligated to pay such Taxes as determined by the applicable law and neither Party is or shall be liable at any time for any of the other Party's Taxes incurred in connection with or related to amounts paid under this Agreement. The term "Taxes" shall mean any federal, state, local, municipal or other governmental taxes, duties, levies, fees, excises or tariffs, arising as a result of or in connection with any amounts paid under this Agreement, including without limitation:

(a)  any state or local sales or use taxes;

(b)  any import, value added or consumption tax;

(c)  any business transfer tax;

(d)  any taxes imposed or based on or with respect to or measured by any net or gross income or receipts of either Party;

FWAPP00006753

(e)   any franchise taxes, taxes on doing business, gross receipts taxes or capital stock taxes; or

If Taxes are required to be withheld on any amounts otherwise to be paid by one Party to the other, the paying Party shall deduct and set off such Taxes from the amount otherwise due and owed to the receiving Party and pay them to the appropriate taxing authority.

1.7.   <u>Reporting/Payments</u>. All amounts payable to Licensor with respect to Net Proceeds, if any, shall be due within thirty (30) calendar days after the end of each calendar quarter. Within thirty (30) calendar days after the end of each quarter that APAC Costs are incurred or Total Recoveries are received, APAC will provide Licensor with a report of Total Recoveries, APAC Costs and Net Proceeds, if any, for such calendar quarter. Licensor shall have the right to audit such reports in accordance with <u>Section</u> 1.12 below. All other payments from one Party to the other hereunder shall be due and payable within thirty (30) days following receipt of the applicable invoice.

1.8.   <u>Licensor Availability</u>. Licensor will be available when necessary to assist and consult with APAC or its attorneys on matters relating to the Patents. If any pending applications of the Patents exist, at the request and cost of APAC, the Licensor shall execute all documents including, but not limited to, powers of attorney and perform all acts as may be necessary to enable APAC to control prosecution of such applications. In the event that the testimony of any employee, director, officer, consultant or agent of Licensor is taken in any action relating to the Patents, APAC's attorneys will represent such party without additional charge, and Licensor and such party will cooperate with APAC and its attorneys in preparing for such testimony. APAC will pay for Licensor's reasonable out of pocket travel expenses incurred at the request of APAC and any such expenses will be treated as an APAC Cost.

## 3.   REPRESENTATIONS AND WARRANTIES

1.9.   <u>Licensor's Representations and Warranties</u>. Licensor represents and warrants to APAC that, as of the Effective Date hereof:

1.9.1.   Licensor is the sole owner of the Patents and has all right, title, claims, interest and privileges arising from such ownership, free and clear of any liens, security interests, encumbrances, rights or restrictions;

1.9.2.   the identity of all inventors of the inventions described in the Patents has been fully disclosed to the U.S. Patent Office as required by U.S. law;

1.9.3.   the Patents (i) are not the product or subject of any joint development activity or agreement with any third party; (ii) are not the subject of any consortia agreement; and (iii) have not been financed in whole or in part by any third party;

1.9.4.   the Patents remain in full force and effect as of the Effective Date of this Agreement;

1.9.5.   Licensor has not assigned, licensed or cross-licensed, granted covenants not to sue, transferred or otherwise conveyed to any other person or entity any of its rights, title, claims, interest or privileges with respect to the Patents;

1.9.6.  Exhibit A includes all patents and patent applications worldwide, including all continuations, continuations-in-part, divisionals, extensions, renewals, reissues and re-examinations related to the Patents, and if any related patents, patent applications, foreign counterparts, continuations, continuations-in-part, divisionals, extensions, renewals, reissues, re-examinations, or any issued patents which are subject to a Terminal Disclaimer under 37 C.F.R. §1.321 are omitted, the Parties agree that they shall be automatically included in such exhibit;

1.9.7.  all maintenance fees that have become due have been paid in full (i) for U.S. Patents at the appropriate small or large entity fee rate; and (ii) for foreign Patents;

1.9.8.  all prosecution fees related to the Patents that have become due have been paid in full;

1.9.9.  the Patents are not and have not been subject to any action or proceeding concerning their validity, enforceability, inventorship or ownership;

1.9.10. Licensor has no knowledge of any facts that could give rise to a claim that the Patents are invalid or unenforceable; and Licensor has not engaged in any conduct, or omitted to perform any necessary act, the result of which would invalidate the Patents or preclude their enforceability;

1.9.11. Licensor has all requisite legal and corporate power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to carry out and perform its obligations under the terms of this Agreement; and

1.9.12. the execution, delivery, performance of and compliance with this Agreement has not resulted and will not result in any violation of, or conflict with, or constitute a default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under any agreement to which Licensor is a party.

1.10.  APAC's Representations and Warranties. APAC represents and warrants to Licensor that, as of the Effective Date hereof:

1.10.1. APAC is a company duly organized and in good standing under the laws of Delaware;

1.10.2. APAC has authority to enter into this Agreement and implement its terms; and

1.10.3. the person executing this Agreement on behalf of APAC is duly authorized to do so.

## 4.  RECORDS AND FEES

1.11.  Records. APAC shall keep complete and proper records of the Total Recoveries, APAC Costs, and Net Proceeds.

1.12.  Audit. Licensor shall have the right, during reasonable business hours, but no more than once per calendar year, to audit, at Licensor's expense, the correctness of any previously

FWAPP00006755

unaudited report by an independent public accountant chosen by Licensor who may examine APAC's records pertinent to this Agreement. Licensor and its representatives shall hold in confidence any such information and shall not use the information for any purposes other than verifying APAC's reporting in connection with this Agreement.

1.13.   <u>Maintenance Fees</u>. For so long as this Agreement is in effect, Licensor shall pay all U.S. and foreign maintenance fees with respect to the Patents on or before their due dates, at the large entity rate. In the event Licensor fails to make any maintenance fee payment when due, APAC may make such payment. APAC shall be reimbursed for such maintenance fees paid from Licensor's share of the Net Proceeds.

1.14.   <u>Patent Prosecution</u>. Subsequent to Acceptable Completion during the term of the Agreement, APAC shall assume sole control of any and all activities, matters and proceedings before the United States Patent and Trademark Office (the "USPTO") and foreign patent offices relating to the Patents, including without limitation any reissues or re-examinations of any issued United States patent, the prosecution of any United States or foreign patent applications and the continuing prosecution of any pending United States or foreign patent applications among the Patents and the costs, fees and expenses paid by APAC in connection therewith shall be treated as APAC Costs. APAC will have sole and absolute discretion in filing, prosecuting and/or abandoning any patent applications. Licensor hereby grants APAC a power of attorney permitting APAC to assume such sole control of any and all activities, matters and proceedings before the USPTO and foreign patent offices relating to the Patents and Licensor shall fully cooperate with APAC, including without limitation the execution of such documents as APAC shall reasonably require, to timely address and prosecute all such activities, matters and proceedings before the USPTO and foreign patent offices.

## 5.   ENFORCEMENT OF PATENT RIGHTS AND COOPERATION

5.1.   <u>Good Faith</u>. Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Patents at its expense. APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Patents if APAC determines, in its sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal.

1.15.   <u>Enforcement Litigation</u>. APAC may, in its sole judgment, decide to institute enforcement actions against any or all of the companies that APAC believes are infringing the Patents. APAC shall have the exclusive right to bring suit to enforce the Patents. Licensor shall join as a plaintiff at APAC's request in the event APAC's counsel determines that Licensor is a necessary party to the action. Licensor hereby grants APAC a power of attorney allowing APAC (i) to add Licensor as a party to any such action; (ii) to bring an action directly in Licensor's name; and (iii) to settle any claims relating to the Patents on behalf of Licensor. Regardless of whether Licensor is named as a party to any enforcement action, APAC reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition of such action. In the event Licensor joins as a plaintiff at APAC's request, APAC brings an action in Licensor's name, or Licensor is named as a party by another party to such action, APAC shall defend and indemnify Licensor against all liabilities, costs and expenses for proving infringement and defending validity and title of the Patents, except

FWAPP00006756

that, as provided below, Licensor shall be responsible for its own counsel's fees and costs if it elects to retain separate counsel. Notwithstanding any of the foregoing, in the event that a court holds that Licensor has engaged in fraud, gross negligence, or willful misconduct, APAC shall have no obligation to indemnify Licensor for any judgments, liability, loss, damages, costs and expenses (including attorneys' fees and expenses of litigation) in connection therewith.

1.16.   Choice of Counsel. In the event that Licensor joins in any suit, either before or after it is initiated, Licensor shall have the right to be represented by counsel of its choice, provided that if Licensor chooses to have representation separate from APAC, Licensor shall be responsible for paying all its own fees and costs related to such representation and APAC shall be solely responsible for the fees and costs incurred by its own counsel.

5.2.   Cooperation. The Parties agree to fully cooperate with each other in any litigation that is brought and any other matters in connection with licensing, enforcing or defending the Patents.

## 6.   TERMINATION

6.1.   Term. Unless earlier terminated as provided for in this Agreement, all grants, obligations and provisions recited in this Agreement and relating to the Patents shall continue in full force and effect until the conclusion of APAC's pursuit of licensing and enforcement efforts related to the Patents.

6.2.   APAC Bankruptcy. Licensor may terminate this Agreement in the event that APAC files for bankruptcy protection under any state or federal bankruptcy law or a petition for bankruptcy is filed against APAC and not dismissed within ninety (90) days.

1.17.   Material Breach. Either Party may terminate this Agreement upon written notice to the other if the other Party breaches any material representation, warranty or agreement in this Agreement and fails to cure such breach within ninety (90) days of receipt of such written notice detailing the alleged breach.

1.18.   Commercially Unreasonable. APAC may terminate this Agreement, upon the sending written notice to Licensor, if APAC determines, in its sole judgment, that licensing or enforcement of the Patents is not commercially reasonable or practicable.

1.19.   Termination Period. In the event of Acceptable Completion, Licensor may terminate this Agreement within the ninety (90) day period beginning three (3) years from the date of Acceptable Completion (such ninety (90) day period referred to as the "Termination Period") unless APAC has either (i) filed any action or counterclaim for infringement of any of the Patents, or (ii) generated any Total Recoveries from licensing or enforcement of the Patents (the failure of (i) and (ii) above shall be referred to as a "Termination Event"). In order to terminate this Agreement pursuant to this Section 6.1, within the Termination Period, Licensor shall provide APAC with written notice of its intention to exercise its right to terminate this Agreement under this Section 6.1, at which time APAC shall have a ninety (90) day period from the time it receives such notice, in which it may cure the Termination Event giving rise to the right of termination (the "Cure Period") by either (i) filing an action (or counterclaim) to enforce any of the Patents or (ii) generating Total Recoveries and paying Licensor its share of the Net Proceeds, if any. If Licensor does not give APAC notice of its intention to terminate within the Termination Period or

FWAPP00006757

APAC cures the Termination Event during the Cure Period, then Licensor's right to terminate this Agreement under this Section 6.1 shall lapse.

1.20. <u>Final Ruling</u>. In the event of any dispute as to whether a Party has breached this Agreement pursuant to Section 1.17 above or whether a cure has been effected, the matter shall be submitted to litigation pursuant to Section 8 hereof, and there shall be no termination of the license under this Agreement unless and until there is a final ruling that there has been an uncured breach, as provided herein.

1.21. <u>Licensor Payments after Termination</u>. Any termination of this Agreement shall not relieve APAC of liability for any payments due to Licensor accrued prior to the effective date of such termination.

1.22. <u>APAC Payments after Termination</u>. In the event of any termination of this Agreement, regardless of the cause, after payment of any monies due Licensor, APAC shall be entitled to retain or receive the portion of Total Recoveries that it would be entitled to retain or receive if this Agreement were in effect, which (i) accrued or was received prior to the termination date, (ii) accrues or is received after the termination date as a result of any settlement, license agreement or other agreement or transaction that was negotiated, made or occurred prior to the termination date, or (iii) resulted from any lawsuit or negotiations that were pending at or prior to the occurrence of such termination.

1.23. <u>Licensor Bankruptcy</u>. The Parties acknowledge and agree that this Agreement is a contract under which APAC is a licensee of intellectual property as provided in Section 365(n) of title 11, United States Code (the "Bankruptcy Code"). Licensor acknowledges that if Licensor, as a debtor in possession or a trustee in bankruptcy in a case under the Bankruptcy Code (the "Bankruptcy Trustee"), rejects this Agreement, APAC may elect to retain all of its rights under this Agreement as provided in Section 365(n) of the Bankruptcy Code. Upon written request of APAC to Licensor or the Bankruptcy Trustee, Licensor will not interfere with any of the rights of APAC as provided in this Agreement.

## 7. ASSIGNMENT

1.24. <u>Assignment/Successors</u>. Licensor may transfer or assign its interest in this Agreement provided that the transferee or assignee (i) is not a party with which APAC has initiated or undertaken licensing negotiations; (ii) is not a declaratory judgment plaintiff or an infringement defendant under any of the Patents; (iii) is not a party infringing any claim of any of the Patents; and (iv) agrees to be bound by the terms of this Agreement in writing. APAC may transfer or assign its interest in this Agreement to an affiliate of APAC provided that such affiliate agrees to be bound by all the terms and conditions of this Agreement in writing, including the obligation to make payments hereunder. This Agreement shall inure to the benefit of, and be binding upon the respective successors, assigns, heirs, beneficiaries and personal representatives of Licensor and APAC. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

## 8.  GOVERNING LAW AND CONSENT TO JURISDICTION

FWAPP00006758

1.25. <u>Choice of Laws</u>. This Agreement shall be governed by and construed under applicable federal law and the laws of the State of California, excluding any conflict of law provisions. APAC and Licensor each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement. APAC and Licensor hereby waive personal service of any summons, complaint, or other process in any action in any California state or federal court sitting in the Central District of California, and agree that all service thereof may be made by (i) certified or registered mail, return receipt requested, to the other Party's address identified in the opening paragraph of this Agreement; or (ii) by such other method authorized by the California Long Arm Statute.

1.26. <u>Consequential Liability</u>. In no event shall either Party be entitled to special, indirect, consequential damages, including lost profits, or punitive damages for breach of this Agreement.

## 9. <u>CONFIDENTIALITY</u>

1.27. Except for the existence of this Agreement, all information provided pursuant to this Agreement, including without limitation, the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein. Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Either Party may disclose Confidential Information to its financial advisors, partners, consultants and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Confidential Information shall not include information that:

(a) was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b) has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or

(c) was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

1.28. <u>Preservation of Privilege</u>. The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to

FWAPP00006759

such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this <u>Section</u> 1.28 shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand.

**10. <u>MISCELLANEOUS</u>**

1.29. <u>Notice</u>. Except as allowed in <u>Section</u> 1.3 herein with respect to written notification of Acceptable Completion, all notices or communications which either Party may desire, or be required, to give or make to the other shall be in writing and shall be deemed to have been duly given or made if and when forwarded by registered mail, certified mail, or recognized overnight courier to the address set forth below or to such other address as a Party shall give to the other in writing delivered at the last address specified in the manner prescribed by this Agreement.

> **To APAC:**
> **ACACIA PATENT ACQUISITION LLC**
> 500 Newport Center Drive
> 7th Floor
> Newport Beach, CA 92660
> Phone: (949) 480-8300
> Fax: (949) 480-8379
>
> **To Licensor:**
> **[COMPANY NAME]**
> Address: _____
> _____
> e-mail:_____
> Phone: _____
> Fax: _____

If no confirmation of receipt is available or such notice is refused, the Parties agree that for the purposes herein, notice shall be deemed to have been duly given or made three (3) business days after forwarding such notice to the other Party.

1.30. <u>No Waiver</u>. The failure to act upon any default hereunder shall not be deemed to constitute a waiver of such default.

1.31. <u>Provision Invalidity</u>. If for any reason in any jurisdiction in which any provision of this Agreement is sought to be enforced, any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect, such holding shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein.

1.32. <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed or e-mailed copy of a signature page shall be considered an original for purposes of this Agreement.

1.33.   <u>Headings</u>. The headings contained in this Agreement have been inserted for convenient reference only and shall not modify, define, expand or limit any of the provisions of this Agreement.

1.34.   <u>Entire Agreement</u>. This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth below.

_____                            **ACACIA PATENT ACQUISITION LLC**

By:_____                   By:_____

Print Name: _____              Print Name: Dooyong Lee

Title: _____                  Title: Executive Vice President

Date:_____                 Date:_____

FWAPP00006761

# EXHIBIT A

**U.S. PATENTS & APPLICATIONS**

| US Patent No. | US Appl. No. | Filing Date | Issue Date | Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**FOREIGN PATENTS & APPLICATIONS**

| Foreign Patent or Publication No. | Publication Date | Filing Date | Country | Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

FWAPP00006762