# Exhibit 56

1  Rachel Krevans (SBN 116421)
   rkrevans@mofo.com
2  Wesley E. Overson (SBN 154737)
   woverson@mofo.com
3  Diana B. Kruze (SBN 247605)
   dkruze@mofo.com
4  John K. Blake, Jr. (SBN 262906)
   jblake@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, CA 94105-2482
   Telephone: (415) 268-7000
7  Facsimile: (415) 268-7522

8  Kenneth H. Bridges (SBN 243541)
   kbridges@bridgesmav.com
9  Michael T. Pieja (SBN 250351)
   mpieja@bridgesmav.com
10 Lawrence Lien (SBN 265851)
   llien@bridgesmav.com
11 BRIDGES & MAVRAKAKIS LLP
   3000 El Camino Real
12 One Palo Alto Square, 2nd Floor
   Palo Alto, CA 94306
13 Telephone: (650) 804-7800
   Facsimile: (650) 852-9224

14
   Attorneys for Defendant
15 APPLE INC.

James A. Shimota (admitted pro hac vice)
jshimota@bridgesmav.com
Aaron Taggart (SBN 258287)
ataggart@bridgesmav.com
Adam R. Brausa (admitted pro hac vice)
abrausa@bridgesmav.com
BRIDGES & MAVRAKAKIS LLP
180 N. LaSalle, Suite 2215
Chicago, IL 60601
Telephone: (312) 216-1620
Facsimile: (312) 216-1621

John J. Steele (SBN 122872)
john.steele@johnsteelelaw.com
JOHN STEELE, ATTORNEY AT LAW
2225 East Bayshore Road, Suite 200
Palo Alto, CA 94303
Telephone: (650) 320-7662

16

17                 IN THE UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20

21  FLATWORLD INTERACTIVES LLC,          |  Case No. 3:12-01956-WHO (EDL)

22              Plaintiff,               |  **APPLE'S SUPPLEMENTAL**
                                         |  **RESPONSES TO FLATWORLD'S**
23         v.                            |  **FIRST SET OF**
                                         |  **INTERROGATORIES (NUMBER**
24  APPLE INC.,                          |  **9)**

25              Defendant.

26

27

28

1

2

     Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Apple

3

Inc. ("Apple") objects and responds to the interrogatories served by Plaintiff FlatWorld

4

Interactives, LLC ("FlatWorld") as follows.  Apple provides herein a supplemental response to

5

FlatWorld's interrogatory number 9 only.

6

     Apple incorporates herein its general objections, specific objections and responses from

7

its other responses to FlatWorld's First Set of Interrogatories, including but not limited to Apple's

8

Original Responses dated November 13, 2012, Apple's Supplemental Responses dated December

9

21, 2012, Apple's Supplemental Responses dated January 3, 2013, Apple's Supplemental

10

Responses dated January 29, 2013, and Apple's Supplemental Responses dated July 17, 2013.

11

### INTERROGATORY

**INTERROGATORY NO. 9:**

12

13

     State with particularity the complete factual and legal basis for Apple's Fourth Defense,

14

that "FlatWorld's claims for relief are barred in whole or in part by the doctrines of laches,

15

prosecution laches, estoppel, waiver and/or unclean hands," identify all documents relating to

16

such basis, and identify all person(s) having knowledge or information relating to such basis.

17

**RESPONSE TO INTERROGATORY NO. 9:**

18

     Apple objects to this interrogatory as calling for information protected by the attorney-

19

client privilege and/or the work product protection.  Apple further objects to this interrogatory as

20

vague and ambiguous in its references to "documents relating to such basis" and "knowledge or

21

information relating to such basis."  Apple further objects to this interrogatory as a premature

22

contention interrogatory.

23

     Subject to its general objections, and the foregoing specific objections, Apple states that it

24

will provide an answer to this interrogatory at a time to be agreed upon between the parties for

25

responses to contention interrogatories.

26

**JANUARY 29, 2013, SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

27

     Further responding, Apple states that FlatWorld was aware of the features of certain

28

Apple products, such as the iPhone, that it now accuses of infringing the '318 patent at a time no

later than June, 2007.  FlatWorld has stated that, at that time, Jennifer McAleese purchased an iPhone and investigated the accused features to determine if she believed they practiced FlatWorld's patents.  (*See* FlatWorld's Response to Apple's Interrogatory No. 10.)  At the time Ms. McAleese did this, U.S. Patent No. 6,920,619, which was the patent that reissued as the '318 patent, had issued, was in force, and was assigned to FlatWorld.  Claims 1-17 of the '619 patent reissued in identical form in the '318 patent, and FlatWorld has accused Apple of infringing claims 1, 2, 5, 6, 7, 8, and 15 of the '318 patent, all of which were present in identical form in the '619 patent.

Rather than assert its purported claims of infringement against Apple, FlatWorld's outside counsel, Gordon Nelson, sent Apple a letter directed to Apple's Chief Patent Counsel, Chip Lutton, and to Apple's vice president of software engineering, Bertrand Serlet, reciting the patent number of U.S. Patent No. 6,920,619 and stating that FlatWorld believed Apple "may have knowledge of pertinent prior art."  At the time of sending this letter, FlatWorld, and Mr. Nelson, intended to pursue patent infringement litigation against Apple, and misrepresented the purpose of their letter as seeking Apple's "knowledge of pertinent prior art."  FlatWorld and Mr. Nelson intended Apple to rely upon this misrepresentation for the purposes of providing FlatWorld a tactical advantage in any later litigation.

Under these circumstances, and in view of market conditions in the consumer electronics industry, and Apple's subsequent product launch history, FlatWorld's delay in filing suit against Apple was unreasonable and worked to the prejudice of Apple.  Moreover, having represented to Apple that its letter was sent for the purpose of seeking "knowledge of pertinent prior art" when in reality FlatWorld in fact intended to file litigation against Apple on the '619 or '318 patent and had sent its letter for that purpose, FlatWorld's claims against Apple for past damages are barred by the doctrines of estoppel, waiver, and unclean hands.

Apple further states that discovery is at an early stage, Apple has not yet deposed any individuals associated with FlatWorld, and its investigation into the facts relevant to its defenses

is ongoing.  Apple reserves the right to further supplement this response in the event that it obtains additional or different information relating to the subject matter of this interrogatory.

**OCTOBER 11, 2013, SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Further responding, Apple states that FlatWorld's claims are barred due to the equitable doctrines of unclean hands and laches.  Specifically, FlatWorld's claims are barred as a result of:

1)  FlatWorld's assistance in causing Morgan, Lewis & Bockius LLP ("Morgan Lewis") and John McAleese to breach their fiduciary and contractual duties to Apple;

2)  FlatWorld's and Mr. McAleese's concealment of FlatWorld's intentions to file a patent infringement suit against Apple;

3)  FlatWorld's and Mr. McAleese's concealment of his involvement with and relationship to FlatWorld; and

4)  FlatWorld's delay in bringing suit and the resulting prejudice to Apple.

Mr. McAleese was a partner of Morgan Lewis at all relevant times.  Morgan Lewis was Apple's counsel continuously since 2003.  In that capacity, Apple entrusted Morgan Lewis with thousands of matters and paid it more than $22 million in legal fees.  Morgan Lewis also prosecuted hundreds of patent applications relating to the touch- and gesture-based user interface of the iPhone on Apple's behalf.  This same area of technology—the touch interface of the iPhone and other Apple products—is what FlatWorld accuses of infringement of its patent in the present case.

As Apple's attorneys, Morgan Lewis and Mr. McAleese have owed fiduciary and ethical duties to Apple since 2003.  Among their many ethical obligations, Morgan Lewis and Mr. McAleese were under a duty to keep Apple informed of the status of the representation, to zealously represent Apple's interests, to notify Apple of any potential conflicts, and to not take any action adverse to Apple's interests.  These duties arose immediately upon Apple's retention of Morgan Lewis as its attorneys, and they bound all Morgan Lewis attorneys, including Mr. McAleese, from that moment on.

In addition to the general rules of professional responsibility by which they were bound, Morgan Lewis and Mr. McAleese also agreed to be bound by explicit contractual provisions that Apple required of its outside counsel.  These included explicit provisions in Apple's "Legal Services Management and Billing Guidelines for Outside Counsel" ("Apple's Guidelines"), which Morgan Lewis explicitly adopted in its engagement letters with Apple, as well as Apple's "Master Legal Services Agreement with Morgan Lewis & Bockius" ("MLSA") and Apple's "Outside Service Provider Policy" ("OSPP"), to which Morgan Lewis and John McAleese agreed.

Apple's Guidelines, under the heading "Ethical Issues and Conflicts of Interest," stated that:

> Apple expects that outside counsel at all times will comply with all applicable laws, rules, regulations, express public policies, and codes of professional responsibility.

> Apple expects zealous representation of its interests by outside counsel.  To avoid even the appearance of impropriety, disclosure of any actual or potential conflict of interest must be made by your firm in writing in situations such as, but not limited to, the following:

> 1.  Representation of any adverse party, or that party's principals, officers, directors, agents or affiliates;

> 2.  Where any other client, the firm, firm personnel, or relative of your firm's personnel has a non-trivial interest in the matter for which your firm was hired to represent Apple;

> 3.  Representation by your firm of any known material witness in the matter involving Apple;

> 4.  Any litigation involving a material legal issue directly opposed to Apple's interests;

> 5.  Any situation where your firm seeks documents or testimony from Apple on a matter where your firm represents a third party; and

> 6.  Any situation raising similar ethical questions, whether covered by application of a code of professional conduct or not.

Apple's Guidelines went on to state that "**Conflicts may only be waived in writing and must be approved by Apple's General Counsel.  Any waiver not in writing or not specifically approved by Apple's General Counsel is ineffective.**"  (Emphasis in original.)

The MLSA provides that:

**8.1 Professional Responsibility.** By commencing Services on any Matter, the Law Firm is thereby representing and warranting to Apple that the Law Firm has conducted conflict of interest searches, and has brought all known actual and potential conflicts of interest, as defined under applicable laws, rules, and regulations, express public policies and codes of professional conduct governing the conduct of the Law Firm and Law Firm Personnel (collectively, "Conflicts") to Apple's attention and that, if a Conflict has been identified, the Law Firm has received a written conflict waiver from the Apple General Counsel or the Apple Associate General Counsel, Litigation.

**8.2 Notice of Conflicts.** Upon learning of any Conflict, the Law Firm must immediately provide the Apple Associate General Counsel, Litigation, written notice specifically describing the Conflict. . . .

Additionally, the OSPP provides that:

You will maintain the highest standards of professionalism, ethics, and integrity so as to avoid even the appearance of conflicts of interest or other impropriety.

By commencing services on any matter, you assert that you have conducted a thorough conflict of interest ("conflict") search, you have notified us of all known actual and potential conflicts, and you have obtained approval to commence the respective work from us. . . . Should you learn of any conflict prior to or during the course of your work on any Apple Matter, you will immediately disclose the actual or potential conflict by submitting a disclosure statement that specifically describes the conflict to the extent permitted by law ("Conflict Waiver Request" form in Attachment D of this Policy) to Apple's Associate General Counsel-LGS Operations.

Through these agreements, Morgan Lewis and Mr. McAleese explicitly agreed that they would maintain the highest standards of conduct, that they would perform thorough conflict-of-interest checks, that they would notify Apple in writing of any conflict or similar situation, and that they would not work on any matter where any potential conflict with Apple existed without obtaining written, informed consent from Apple's General Counsel or the Apple Associate General Counsel of Litigation.

Despite owing both fiduciary and contractual duties to Apple, Mr. McAleese invested in FlatWorld and provided legal counsel to the company, all the while knowing that the main purpose of the company was to litigate against or extract money from Apple based on FlatWorld's patent rights.  Mr. McAleese admitted the fact of his personal financial investment in FlatWorld in an email to other Morgan Lewis partners, writing that "we (my wife and I)

contributed capital in connection with the start-up [*i.e.*, FlatWorld]." (MLB_A0000041-42.)
When FlatWorld needed funds to assist in the prosecution of the reissuance of the patent-in-suit,
Jennifer McAleese advised the co-owner of FlatWorld that they would need to wait until John
McAleese received his partner distribution from Morgan Lewis. As of January 2007, FlatWorld
decided that it would pursue the reissue process in the PTO so that its claims would better read on
the iPhone. (*See* ECF No. 135 Exs. 2, 37 at 5-6.) However, neither Morgan Lewis nor Mr.
McAleese ever informed Apple that a partner at the law firm prosecuting its patents on
touchscreen technology was investing in and counseling a start up that had Apple in its sights as
its primary target for litigation pertaining to a patent on touchscreen technology. Meanwhile,
FlatWorld and its manager/executive director Jennifer McAleese were not only aware of Mr.
McAleese's financial and legal assistance to FlatWorld; they actively cultivated it.

Jennifer McAleese became the holder of 35% of the outstanding shares of FlatWorld
based on a joint investment with her husband. Despite knowing of Mr. McAleese's ethical and
legal obligations to Apple, Ms. McAleese repeatedly sought his legal advice for FlatWorld. As
an investor, part owner, corporate officer, and manager with full authority over FlatWorld
(HASPS000005), Ms. McAleese's misconduct should also be attributed to FlatWorld for the
purposes of Apple's equitable defenses.

Mr. McAleese's involvement with FlatWorld's legal affairs is extensive and spans
FlatWorld's entire corporate existence. Indeed, Mr. McAleese helped draft the corporate
documents that brought FlatWorld into existence. FlatWorld's privilege logs alone contain
dozens of examples in which Jennifer McAleese sent John McAleese emails discussing "potential
litigation," "patent strategy," and "patent prosecution status," or which were "[d]rafted for
purpose of prosecution." These emails to John McAleese include Jennifer McAleese's
communications with FlatWorld's patent attorneys, such as Gordon Nelson (who was hired to
prosecute the patent in this case). Mr. McAleese essentially acted as FlatWorld's in-house
counsel. As an investor in and an attorney and agent for FlatWorld, Mr. McAleese's misconduct
should be attributed to FlatWorld for the purposes of Apple's equitable defenses.

As the Court found in its Order regarding Apple's Disqualification Motion, "[w]hile the privilege logs show that most of the emails between John and Jennifer McAleese are from her to him, John McAleese's role with regard to FlatWorld was not passive: he apparently assisted FlatWorld in exploring suing Apple."  (ECF No. 196 at 3.)  For example, on June 13, 2007, around the same time Jennifer McAleese wrote emails about "litigation theories" and the "iPhone," John McAleese emailed Daniel Golub, a fellow partner at Morgan Lewis, to request the name of a firm "that will purchase patents to enforce against infringers. . . . [M]y wife and her partner would like to talk with them."  (JM-00000036.)  As another example, Mr. McAleese sent FlatWorld an email relating to enforcement options on April 8, 2011, attaching an article describing the ITC as a potential forum for patent disputes.  Mr. McAleese also participated in interviewing and selecting Hagens Berman to represent FlatWorld in this very suit.

While simultaneously exploring the option of asserting FlatWorld's patents directly against Apple, Mr. McAleese also helped FlatWorld in attempting to sell its patents, repeatedly mentioning Apple as an alleged infringer in an effort to increase the patents' value.  As one example, John McAleese drafted a letter on his Morgan Lewis computer to a potential purchaser of FlatWorld, stating that FlatWorld's patent "is being used by Apple" and "[a]ccording to legal counsel and troll patent companies, we have an excellent position against Apple if we decide to take that course."  (MLB_A0000013-17.)  Similarly, Mr. McAleese advised FlatWorld during its negotiations with patent troll and monetization companies, such as Rembrandt IP Management, Acacia, and Ocean Tomo.

Mr. McAleese also assisted FlatWorld in contacting Apple's competitors, such as Nokia, who were known to be involved in patent disputes with Apple.  For instance, in an April 5, 2011 email to Nokia, FlatWorld (via Jennifer McAleese) told Nokia that "[g]iven your various patent litigations with Apple, I strongly encourage you to take a look at this patent as a potential patent for your portfolio."  (FWAPP00004778.)  After receiving Nokia's response, FlatWorld (again via Jennifer McAleese) emailed John McAleese, asking him to "[c]all me when u r [sic] driving home so we can discuss a response."  (FWAPP00004699.)  John McAleese responded at nearly

the same moment, advising FlatWorld to "talk [with him] before you reply to this, okay?"  (*See* FWAPP00004777.)

Mr. McAleese's misconduct also extends to his direct involvement in the present case. Jennifer McAleese, acting as a FlatWorld officer, has forwarded case pleadings, invalidity contentions, and Hagens Berman communications to John McAleese so that he could continue to act as in-house FlatWorld counsel.  As an especially egregious example, John McAleese has disclosed at least one Apple privileged communication to FlatWorld's attorneys.  (ECF No. 196 at 6.)  Apple first learned of Mr. McAleese's relationship to FlatWorld on February 22, 2013, when FlatWorld served a privilege log containing more than 50 entries that listed Mr. McAleese's name.  FlatWorld's privilege log asserted that communications involving Mr. McAleese were protected only by the attorney-client privilege.  When Apple learned that its attorneys were also apparently representing its adversary, Apple's in-house counsel sent a confidential, attorney-client communication to Morgan Lewis, who then forwarded this communication to Mr. McAleese.  Mr. McAleese, without first requesting permission to do so or otherwise informing Apple, promptly called FlatWorld's outside litigation counsel in this case, and the next day FlatWorld amended its privilege log to add a claim of "spousal privilege" for all communications involving Mr. McAleese.  Mr. McAleese also negotiated a procedure with Hagens Berman by which Hagens Berman could review communications between Mr. McAleese and FlatWorld.

Mr. McAleese's extensive participation, assistance, and legal counsel led the Court to specifically find that "John McAleese breached his ethical duty to Apple" by acting as FlatWorld's counsel, contrary to the interests of Apple.  (ECF No. 196 at 9.)  The Court held that:

> "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process."  *SpeeDee Oil*, 980 P.2d at 379.  John McAleese breached that duty.  Since 2007, John McAleese has acted as FlatWorld's attorney in a manner contrary to the interests of Morgan Lewis's (and thus McAleese's) client, Apple.
>
> The Supreme Court of California held in *SpeeDee Oil*, "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."  980 P.2d at 374.  An attorney cannot be adverse to one of his firm's clients even if the attorney never worked on that client's matters.  "For attorneys in the same firm to represent adverse parties [] is [] patently improper."  *Kirk v. First Am. Title Insur. Co.*, 108

Cal. Rptr. 3d 620, 635 (Ct. App. 2010) (citations omitted).  Most obviously, an attorney cannot "represent[] clients who have conflicting interests."  *SpeeDee Oil*, 980 P.2d at 379.  The requirement that an attorney act loyally towards his firm's clients also extends to actions that are not "technically legal services."  *See Cord v. Smith*, 338 F.2d 516, 524 (9th Cir. 1964).

While at Morgan Lewis, John McAleese acted contrary to his firm's client's interest.  "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*."  *SpeeDee Oil*, 980 P.2d at 379-80 (citation omitted).  Neither "[t]he absence of an agreement with respect to the fee to be charged" nor "a formal retainer agreement is [] required" for there to be an attorney-client relationship; all that is needed is that "the attorney knowingly obtains material confidential information . . . and renders legal advice or services as a result."  *Id.* at 380 (citations and quotation marks omitted).  As detailed in Background sections II and III above, John McAleese performed legal functions for FlatWorld.  Acting as an attorney for FlatWorld, John McAleese was part of numerous communications clearly adverse to Apple, both before and after suit was filed.

As a partner at Morgan Lewis, John McAleese owed a duty to his firm's client regardless of whether or not he personally worked on that client's matters.  Just as a Morgan Lewis attorney working on Apple matters could not act adversely against Apple, so too was John McAleese barred from doing so, whether in a legal capacity or not.  He owed a duty of loyalty to his firm's client, and "it is a violation of that duty for him to assume a position adverse or antagonistic to [that] client without the latter's free and intelligent consent."  *Flatt v. Superior Court of Sonoma Cnty.*, 9 Cal. 4th 275, 289 (Cal. 1994).  Over a period of nearly six years, by assisting FlatWorld and his wife in finding and retaining a law firm that would sue Apple for patent infringement, and by assisting in efforts to find a firm that would buy the patent to sue Apple itself, John McAleese acted contrary to Apple's interests.

(*Id.* at 9-10.)

Moreover, FlatWorld knew that Morgan Lewis and John McAleese represented Apple.  Mr. and Ms. McAleese knew by July 2007 that Morgan Lewis represented Apple.  (*See* REM-0000391.)  In fact, Ms. McAleese admitted that she knew *no later than* March 2012 that Morgan Lewis represented Apple.  Jennifer McAleese was a member and manager of FlatWorld, and John McAleese was FlatWorld's attorney and agent.  Their knowledge is imputed to FlatWorld.

John McAleese, Jennifer McAleese, and FlatWorld also knew that their actions raised serious conflict-of-interest issues that could disrupt, or even destroy, the attorney-client relationship between Apple and Morgan Lewis.  FlatWorld has known since at least 2007 that Morgan Lewis's s conflicts of interest could prevent Mr. McAleese from assisting FlatWorld where Morgan Lewis represented the opposing party.  In fact, in July 2007, Ms. McAleese told a partner at Synnestvedt & Lechner, LLP that Morgan Lewis could not represent FlatWorld

because Morgan Lewis had a conflict—presumably because of its existing representation of Apple.  (*See* REM-0000391.)  Moreover, Ms. McAleese wrote a representative of Rembrandt (a potential purchaser of FlatWorld's patent), saying, "My husband, John McAleese will be contacting you today to further discuss the NDA. . . . He is a partner with Morgan Lewis & Bockius."  (REM-00000432.)  A few hours later, Jennifer McAleese again wrote the representative, "Given a conflict of interest check this morning, my husband, John McAleese is unable to speak with you as his law firm, Morgan Lewis & Bockius represents Rembrandt."  (REM-00000370.)

Mr. McAleese, as an attorney bound by ethical and professional rules of responsibility, has known since the inception of his representation of FlatWorld that what he, his wife, and FlatWorld were doing was improper.

John McAleese, Jennifer McAleese, and FlatWorld also knew of John McAleese's and Morgan Lewis's explicit contractual obligations to not take any actions adverse to Apple, to immediately inform Apple once any actual or potential conflict arose, and to seek a written waiver from Apple's General Counsel in the event of a conflict.  Indeed, under Morgan Lewis's agreements with Apple, it had to inform Apple of Mr. McAleese's investment in FlatWorld and his provision of legal advice to FlatWorld.  However, at no time did Morgan Lewis or Mr. McAleese inform Apple of the conflict of interest, nor did they seek a waiver from Apple.  Instead, FlatWorld, Mr. McAleese, and Morgan Lewis proceeded with the conflicting representations without a waiver of those conflicts.

Moreover, despite having a duty to inform Apple of FlatWorld's intention to sue Apple for patent infringement, Mr. McAleese did not do so.  Indeed, Morgan Lewis, the McAleeses, and FlatWorld actively concealed this information from Apple.  For example, in October 2007, Jayna Whitt of Apple responded to Gordon Nelson's letter of September 2007 and informed Mr. Nelson that FlatWorld had not identified any reason why Apple should consider the '619 patent to be relevant to Apple.  FlatWorld, Mr. McAleese, and Morgan Lewis then failed to inform Apple why FlatWorld believed the patent applied to Apple, what FlatWorld's intentions were in pursuing the

reissue, who was behind the assertion of the patent against Apple, or who was providing legal services to FlatWorld in that effort.  They also continued to conceal FlatWorld's efforts to seek out an enforcement partner or contingency counsel for several years.  As a further example, in the first quarter of 2012, after having negotiated the retention agreement between FlatWorld and Hagens Berman, Mr. McAleese told Morgan Lewis's general counsel, Michael Bloom, that FlatWorld intended to sue Apple, but that Morgan Lewis could not disclose this information to Morgan Lewis's client Apple.  (MLB_A0000028.)

Apple has been prejudiced as a result of FlatWorld's, Morgan Lewis's, and the McAleeses' misconduct, omissions, and misrepresentations.  Apple is prejudiced because it has been sued with the aid of its own attorneys.  Moreover, had Apple known that FlatWorld was being represented by a Morgan Lewis partner when Apple received a letter from FlatWorld in 2007 about the '619 patent, Apple would have reacted much differently.  For example, it could have promptly designed around the patent-in-suit.  While trivial from a technical perspective at either time, a potential design around in 2007 would have been much easier logistically and less expensive than any design around that could potentially have occurred since the filing of the Complaint or could occur in the future.  Since 2007, Apple has released new versions of the iPhone and several new, interrelated products, such as the iPad.  As opposed to a potential design around in 2007, any design around that Apple might be able to undertake since the filing of the Complaint or in the future has to account for new products and software, legacy products and software, and interoperability issues—all of which directly affect the over 1 billion people currently using iPhones and iPads.

Further, Apple could have initiated declaratory judgment proceedings to obtain an early adjudication of the issues so that it could understand the validity and scope of FlatWorld's patent claims prior to the first public sales of the iPhone.

Likewise, Apple could also have become involved in the patent reissue proceedings, or disclosed relevant prior art to FlatWorld.

Alternatively, given that:  (1) FlatWorld was actively seeking buyers for the patent-in-suit in 2007; (2) Jennifer McAleese was able to purchase a 35% share in FlatWorld for a relatively small amount; and (3) Mr. Nelson was able to obtain a 10% share in exchange for a relatively small number of hours of work, Apple could have also purchased the patent-in-suit outright in 2007 for much, much less than FlatWorld's claims for damages today.

Apple relied upon Mr. McAleese's and FlatWorld's silence in response to Apple's letter of October 2007 in forgoing the opportunities for an early resolution with FlatWorld or to design around FlatWorld's patent.  In the years from 2007 to 2012, while Apple was unaware of FlatWorld's intentions to sue and Mr. McAleese's involvement, Apple continued to build in to its environment software that allegedly infringed the patent.  Then, years later and after waiting for there to be a sales base of over a billion dollars, FlatWorld decided to bring suit.

Apple would have acted differently had it known that FlatWorld was being represented by John McAleese, a partner at Morgan Lewis, the very firm that Apple had entrusted to prosecute patents related to the iPhone and iPad.  As a preliminary matter, Apple would have responded differently to the 2007 FlatWorld letters regarding the patent-in-suit had Apple known that a Morgan Lewis attorney was representing FlatWorld.  Moreover, had Morgan Lewis informed Apple that it was also representing a third party adverse to Apple in the touchscreen-related patent space, Apple could have terminated its attorney-client relationship with Morgan Lewis in 2007. Instead, Apple gave Morgan Lewis hundreds of new prosecution matters over the following years, including dozens of matters related to patent prosecution, spending millions of dollars in legal fees.  Transitioning all of those matters to a new firm has prejudiced and will prejudice Apple in terms of getting new counsel up to speed, loss of institutional knowledge (which can be especially costly in patent prosecution matters), and the inevitable delay caused in both litigation and non-litigation matters by switching counsel.

Apple has also been prejudiced because Mr. McAleese provided funding for fees associated with FlatWorld's reissue application, which FlatWorld has claimed was for the purpose of "tailor[ing] [its claims] more closely to iPhone claims," and fees for the maintenance

of FlatWorld's patent, without which FlatWorld would not have a valid patent to assert. (FWAPP00006343.)

Additionally, Apple has been prejudiced by Mr. McAleese's concealment and FlatWorld's delay because evidence that would have been available to Apple absent FlatWorld's delay is now lost. Ms. McAleese has admitted that she "closed" at least two email accounts that she previously used for FlatWorld business. (ECF No. 153 at ¶¶ 14-17.) Furthermore, discovery from various third parties has revealed numerous documents that FlatWorld failed to retain and produce in this case. Similarly, deponents have been unable to recall relevant events due to the passage of time. (*See, e.g.*, Transcript of July 12, 2013 30(b)(6) Deposition of Daniel Golub at 85:17-86:3 (Rembrandt did not recall whether financial terms of arrangement with FlatWorld were discussed in July 2007); Transcript of August 23, 2013 Deposition of Brian Goodman at 88:11-89:19 (witness identified by FlatWorld as having information related to conception and reduction to practice did not recall how early incarnation of FlatWorld patent worked); Transcript of June 27, 2013 Deposition of Gordon Nelson at 163:18-164:7 (witness was unable to recall amount of 2011 offer by Mrs. McAleese to purchase back his interest in FlatWorld patent).) Discovery is ongoing, and the full extent of FlatWorld's destruction of and/or failure to retain evidence is unknown at this time.

Based on the aforementioned facts, the doctrine of unclean hands bars FlatWorld from any recovery, or, in the alternative, from a substantial portion of its alleged recovery. FlatWorld acted in bad faith relative to its claims of patent infringement for which it now seeks relief. For example, despite knowing that Mr. McAleese had a clear conflict of interest, Jennifer McAleese, acting as a FlatWorld officer, continued to forward case pleadings and Hagens Berman communications to John McAleese so that he could act as in-house FlatWorld counsel. FlatWorld actively encouraged and assisted John McAleese and Morgan Lewis in breaching their fiduciary duties to Apple, destroying their attorney-client relationship. As another example, FlatWorld's 2007 letters to Apple regarding the reissue of the patent-in-suit were deceptive. FlatWorld, the McAleeses, and Morgan Lewis did not give Apple notice that FlatWorld was

targeting the iPhone or that FlatWorld was working with an attorney who had a fiduciary duty to Apple. FlatWorld has also engaged in litigation misconduct by knowingly receiving and using privileged material forwarded from John McAleese. Given these and similar actions, it would be inequitable to award FlatWorld any damages for patent infringement.

FlatWorld's claims are also barred by the doctrine of laches. It is undisputed that FlatWorld targeted Apple no later than 2007. Instead of suing in 2007, however, FlatWorld waited five years to sue, mostly on the same claims it possessed in 2007. During this undue delay, Apple suffered both economic and evidentiary prejudice. As detailed above, had FlatWorld been honest in 2007 that the reissue was targeting Apple with the help of a Morgan Lewis attorney, Apple could have designed around the patent, purchased it, searched for and provided prior art, brought an action for declaratory relief, or become involved in the reissue proceedings. Instead, FlatWorld sat on its claims until after Apple was fully committed to an ecosystem including numerous products and product lines and millions of applications developed for those products. Now, a design around is far more complicated from a logistical perspective. Moreover, in the interim, important evidence, including relevant email accounts, has been destroyed, and witnesses cannot remember certain events and details. For example, Mrs. McAleese admits that she no longer has access to two email accounts that she used for FlatWorld business. Moreover, several witnesses have said that they do not recall pertinent events. Due to FlatWorld's delay and the resulting prejudice Apple has suffered, laches prevents FlatWorld from recovering any damages until after the date that FlatWorld sued.

Estoppel and waiver also bar FlatWorld from any recovery. FlatWorld and the McAleeses actively concealed John McAleese's misconduct, Morgan Lewis's representation of FlatWorld, and FlatWorld's intent to sue Apple. Moreover, FlatWorld sent Apple misleading letters in 2007, and then refused to explain the relevance of the patent-in-suit when Apple inquired in response. Apple relied on those omissions and representations to its detriment. Consequently, FlatWorld is estopped and has waived any right to relief.

The documents relating to these claims include the following: FlatWorld and third-party privilege logs; Apple-Morgan Lewis engagement letters and retention agreements; FlatWorld's Responses to Apple Third Set of Interrogatories Nos. 14-15, served on May 3, 2013; Transcript of May 28, 2013 Deposition of Michael Ossip; ECF No.149-1; June 20, 2013 email from Mark Carlson of Hagens Berman to Michael Pieja; May 30, 2013 email from Ryan Meyer to Aaron Taggart; April 17, 2013 email from Elizabeth Blenner of Susanin Widman & Brennan, PC to James Shimota and Kenneth Bridges of Bridges & Mavrakakis LLP; May 7, 2013 printout from the website of Hagens Berman showing Mark S. Carlson's attorney profile; February 27, 2013 email from Hagens Berman to Apple attorneys; January 9, 2007 Apple Press Release; log of documents located by Morgan Lewis on John J. McAleese III's computer; April 10, 2013 email from Ryan Meyer of Hagens Berman to James Shimota of Bridges & Mavrakakis LLP; Mary 7, 2013 email from Mark Carlson of Hagens Berman to Michael Pieja of Bridges & Mavrakakis LLP; FWAPP00006341-42, FWAPP00004699-4700, FWAPP00004777-79, FWAPP00005248, FWAPP00006343, FWAP00007052-54, FWAP00009879, FWAPP00010044, HASPS000004-13, JMPriv004A-B, JMPriv011A-C, JMPriv013A-B, JMPriv014A-B, JMPriv014C-D, JMPriv014E-F, JMPriv017A, JMPriv017B, JMPriv018A-C, JMPriv023A-C, JMPriv023D, JMPriv026A, JMPriv026B, JMPriv027A, JMPriv027B, JMPriv028A-B, JMPriv028C, JMPriv028D, JMPriv028E-F, JMPriv039A, JMPriv039B, JMPriv041, JMPriv052, JMPriv83A-B, JMPriv118A, JMPriv126, JMPriv139A, JMPriv143A, JMPriv151A, JMPriv155, JMPriv205A, JMPriv225A, JM-00000001-2, JM-00000036, JM-00000045; John J. McAleese III Production 304-308, MLB_A0000013-17, MLB_A0000027, MLB_A0000028, MLB_A0000037-38, MLB_A0000039, MLB_A0000041-42, MLB_F0000157, MLB_F0000180, MLB_F0000210A-D, MLB_F0000216, MLB_F0000218-229, MLB_F0000325, MLB_F0000327-328, PRIV0131, PRIV0134, PRIV0135, PRIV0136, PRIV0137, PRIV0215D, PRIV0386, PRIV0443, PRIV0473, PRIV0584, PRIV0714, PRIV0865, PRIV0903, PRIV0951, PRIV1036, PRIV1048, PRIV1072, PRIV1125, PRIV1161, PRIV1186, PRIV1271, PRIV1315, REM-00000370, REM-00000432, REM-00000747, REM-00000800, REM-00000822, REM-00000849, and ICAP00003367-3368.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The following persons have knowledge or information relating to the facts underlying these claims: John J. McAleese III, Jennifer McAleese, Slavoljub Milekic, Michael Ossip, Michael Bloom, Gary Williams, other Morgan Lewis attorneys, Steve Berman, Mark Carlson, Ryan Meyer, Gordon E. Nelson, Scott Garner, Daniel Golub, John Widman, Jayna Whitt, Jeff Risher, and Josh Shafer.

Apple hereby incorporates in its response its Motion to Disqualify Hagens Berman Sobol Shapiro and its Reply in support of the same, in their entirety.  (*See* ECF Nos. 134, 163.)  Apple further states that discovery is at an early stage.  Apple has not yet deposed many of the individuals associated with FlatWorld (such as John or Jennifer McAleese), and its investigation into the facts relevant to its defenses is ongoing.  Moreover, FlatWorld has wrongfully withheld numerous relevant documents under the guise of various privilege claims.  Apple reserves the right to further supplement this response in the event that it obtains additional or different information relating to the subject matter of this interrogatory.

Dated: October 14, 2013

RACHEL KREVANS
WESLEY E. OVERSON
DIANA B. KRUZE
JOHN K BLAKE JR
MORRISON & FOERSTER LLP


By:   ___/s/ Diana Kruze_____
       Diana Kruze

Attorneys for Defendant

1

**PROOF OF SERVICE**

2

The undersigned hereby certifies that a true and correct copy of the above and foregoing
document has been served on October 14, 2013 by electronic mail to:

3

4
            HAGENS BERMAN SOBOL SHAPIRO LLP

            Mark S. Carlson

5
            MarkC@hbsslaw.com

            Steve W. Berman

6
            steve@hbsslaw.com

            Ryan Meyer

7
            ryanm@hbsslaw.com

            J. D. Scholten

8
            JDS@hbsslaw.com

9

            Attorneys for Plaintiff

10
            FlatWorld Interactives LLC

11

12

            By:    /s/ Diana Kruze

13
                  Diana Kruze

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28