# Exhibit A

Highly Confidential - Outside Counsels' Eyes Only

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                SAN JOSE DIVISION

4   APPLE, INC., a California

5   Corporation,

6           Plaintiff,     Civil Action No.

7      vs.                 11-CV-01846-LHK

8   SAMSUNG ELECTRONICS CO., LTD.,

9   et. al.,

10          Defendants.

11   _____/

12

13

14   HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

15        VIDEOTAPED DEPOSITION OF JULIE DAVIS

16                CHICAGO, ILLINOIS

17             MONDAY, AUGUST 26, 2013

18

19

20

21

22

23   Reported by:

24   DEBORAH HABIAN, RMR, CRR, CLR

25   JOB NO. 65086

Highly Confidential - Outside Counsels' Eyes Only

Page 36

1  that, Apple would have sold a certain number of
2  units after the notice date that the judge has
3  asked us to use for the new trial.  If you'd
4  like to know that number and you want me to
5  confirm that, I will look that up for you.  I                  09:06AM
6  don't have those numbers memorized.
7       Q.  What is the distinction you're drawing
8  with respect to the notice date?
9       A.  I think if in your question Samsung had
10 never put the Epic 4G on the market, Apple would               09:06AM
11 have sold more phones throughout the entire
12 period that Samsung has instead sold the Epic
13 4G.  It wouldn't have started selling those
14 phones after the notice date.
15      Q.  And it's your opinion that if Samsung                 09:06AM
16 hadn't sold the Indulge phone, about 4,000
17 people would have bought Apple's iPhone products
18 instead, right?
19      A.  Well, once again, I would limit the
20 lost profits calculation in your question to                   09:07AM
21 only that period of time after the notice date,
22 and since we're getting into specific numbers,
23 let me look those up for you so we can be
24 talking about the same numbers.
25      Q.  You may refer to your Exhibit 17.2                    09:07AM

Highly Confidential - Outside Counsels' Eyes Only

Page 37

1  PT-H.

2     A.  And that's what I'm planning to do.

3         And you asked me about which phone in
4  this particular matter?

5     Q.  Indulge.                                      09:07AM

6     A.  Yes.  I'm showing 4,910 units that
7  would have been sold by Apple after the notice
8  date on that particular phone.

9     Q.  Okay.  And it's your opinion that if
10 Samsung hadn't sold the Replenish phone, 6,000     09:08AM
11 or so people would have bought iPhone instead,
12 correct?

13    A.  Once again, if we're limiting the lost
14 profits calculation to only that period after
15 the notice date, I believe 6,933 phones would     09:08AM
16 have been sold, not necessarily to one phone per
17 person.  So it might be a fewer number of people
18 than 6,933.

19    Q.  Okay.  It's also your opinion that if
20 Samsung hadn't sold its Transform phone, Apple     09:08AM
21 would have sold on the order of 10,000 more
22 products, correct?

23    A.  Once again, we would talk only about
24 the lost profits period after the notice date,
25 and if that's the period we're talking about, I   09:08AM

Highly Confidential - Outside Counsels' Eyes Only

Page 38

1  would expect, based upon my calculation, that
2  Apple would have sold 10,504 more phones if
3  Samsung was not selling the Transform.
4     Q.  In your opinion on lost profits, did
5  you consider the court's findings on the order        09:09AM
6  denying a permanent injunction to Apple?
7     A.  Yes, I did.
8     Q.  How did that order affect your opinion?
9     A.  I'm aware that there is no permanent
10 injunction against Apple, at least as of this         09:09AM
11 point.  I'm aware that that issue has been
12 appealed.  I'm aware that the Federal Circuit
13 has now heard that argument.  My understanding
14 of the state of affairs right now is that there
15 is no permanent injunction assessed against any       09:09AM
16 of the infringing products.
17    Q.  In the order, the Court states that
18 "Apple's evidence does not establish that any of
19 Apple's three design patents cover a particular
20 feature that actually drives consumer demand."        09:10AM
21        Do you recall a statement to that
22 effect?
23    A.  I recall something to that effect.
24    Q.  How did that impact your expert
25 opinion?                                              09:10AM

Highly Confidential - Outside Counsels' Eyes Only

Page 109

1  that correct?
2      A.  I do not recall any documents on
3  Exhibit 24-PT that relate specifically to the
4  placement of the speakers.
5      Q.  We're going to switch topics now.                10:57AM
6          In addressing the availability of lost
7  profits, at what point in time is the
8  availability of acceptable noninfringement
9  alternative relevant?
10     A.  That would be relevant during the                10:57AM
11 damages period in which I compute lost profits.
12     Q.  At what point in time, though?  When
13 does the availability start?
14     A.  For the '381 patent, that would start
15 in August of 2010.  For the '915 and the '677             10:57AM
16 patent, it would start in April of 2011, as I
17 recall, and the remaining patent, the '163, as I
18 recall, starts in June based upon the judge's
19 order.
20     Q.  Now, when does the availability of                10:58AM
21 acceptable noninfringement alternatives become
22 relevant?  It's a slightly different question
23 than damages period.
24     A.  I view them to be related, though,
25 because the acceptability -- or the availability          10:58AM

Highly Confidential - Outside Counsels' Eyes Only

Page 110

1   of acceptable substitutes is only relevant
2   during the damages period and more specifically,
3   only relevant during the lost profits period,
4   and I just gave you when those periods start.
5       Q.  When did you assume they started?  Did         10:58AM
6   you assume they started on the notice date, the
7   availability of noninfringement alternatives?
8       A.  That's the date upon which I've
9   considered the availability of such alternatives
10  and determined that the design-around period         10:59AM
11  needs to be considered in order to address that
12  question.
13      Q.  How did you come to consider that as
14  the starting point?  Was it given to you by
15  attorneys?                                             10:59AM
16      A.  As I've explained in my report, I don't
17  see how Samsung can design around a patent until
18  it's notified of its existence and the fact that
19  it's infringing.  Because I know what those
20  notice dates are as determined by the judge,          10:59AM
21  that would be the first date that Samsung could
22  be assumed to start a design-around.
23      Q.  Do you believe it is appropriate to
24  calculate availability of acceptable
25  noninfringement alternatives at a different date    11:00AM

1  such as date of awareness of the patent?
2      A.  I don't know what you mean by "date of
3  awareness of the patent."  Are you
4  distinguishing that from date of notice?
5      Q.  Do you believe the date of notice and           11:00AM
6  date of awareness of patent is the same?
7      A.  I believe "date of notice" to be a term
8  of art in your profession.  I've never heard of
9  "date of awareness" as a term of art. So I don't
10 know what you mean by that.                             11:00AM
11     Q.  Do you assume that date of notice is
12 when an accused infringer becomes aware of the
13 patent?
14     A.  I suspect there's a much more technical
15 definition in the law for what date of notice          11:00AM
16 means, but that's generally the way I think of
17 it, as the date by which Samsung in this case
18 became aware of the patent and the fact that it
19 was infringing that patent.
20     Q.  So you assume that the date on which           11:01AM
21 Samsung was given notice by Apple was the same
22 date on which Samsung became aware of the
23 patents, correct?
24     A.  Yes.
25     Q.  If the dates were different, would that        11:01AM

Highly Confidential - Outside Counsels' Eyes Only

Page 112

1  affect your analysis in any way?

2      A.  We may be talking semantics differences

3  here, but I don't know how Samsung could be

4  aware of a patent at a different date than it

5  was given notice, if I understand the judge's        11:01AM

6  order correctly.

7      Q.  In other words, for purpose of your

8  lost profits analysis, you assume that the two

9  are the same, right?

10     A.  I have assumed that Samsung in the real     11:01AM

11 world did not become aware of the patents until

12 they were given notice and those notice dates

13 are as provided in the judge's order.

14     Q.  If your assumption was not correct, if

15 it was different -- there was a difference,          11:02AM

16 would that affect your analysis?

17     A.  If what you're asking me to assume is

18 that the notice dates are actually different

19 than they are, then yes, it would affect my

20 analysis.                                            11:02AM

21     Q.  No.  My assumption is different.  It's

22 that notice date is different from the date the

23 accused infringer learns of a patent.

24         MS. KREVANS:  Objection to the

25 incomplete hypothetical.                             11:02AM

Highly Confidential - Outside Counsels' Eyes Only

Page 113

1  THE WITNESS: Well, unless the accused
2  infringer learns of a patent and knows that it
3  is accused of infringing that patent, it can't
4  begin a design-around, and my understanding of
5  "date of notice" is that that is not only the          11:03AM
6  awareness of the patent but also some
7  notification that the accused infringer is
8  infringing that patent.
9  BY MS. MAROULIS:
10    Q.  If an accused infringer knows about the         11:03AM
11 patent but is given notice two months later, do
12 you believe it's appropriate to start
13 noninfringing alternatives analysis as of the
14 date the infringer knew about the patent or the
15 date the notice was given?                             11:03AM
16    A.  In your hypothetical, am I to assume
17 that the accused infringer not only knew about
18 the patent but knew that it was accused of
19 infringing the patent at that earlier date?
20    Q.  Yes.                                            11:03AM
21    A.  I don't know how to answer that
22 question, because it seems to me that then that
23 would be the notice date.
24    Q.  You understand the notice date is a
25 term of art, right?                                    11:04AM

Highly Confidential - Outside Counsels' Eyes Only

Page 114

1  A. That's my understanding.

2  Q. And that's the date when a patentee
3  provides accused infringer with notice that the
4  infringer's specific products allegedly infringe
5  specific patents, correct?    11:04AM

6  A. That's generally my understanding of
7  that term.

8  Q. In the hypothetical, if an infringer
9  knew prior to the notice date that the product
10 may infringe and started a design-around, would   11:04AM
11 it be appropriate to calculate availability of
12 noninfringing alternatives as of that date or as
13 of the notice date?

14 A. If the infringer knew about the patent
15 and knew that it was accused of infringing that   11:04AM
16 patent, then it could start design-around at
17 that point. I'm not aware of any facts in this
18 case that there was such knowledge prior to the
19 dates of notice provided by the judge.

20 Q. Okay. You stated in your report that   11:05AM
21 you asked Invotex, which is Mr. Musika's
22 company, to stop the accumulation of lost
23 profits for Galaxy Tab 7.0 products in July 2011
24 based on the jury's findings that Samsung's
25 Galaxy Tab 10.1 4G LTE did not infringe Apple's   11:05AM

Highly Confidential - Outside Counsels' Eyes Only

Page 130

1   about design-around, would you credit the
2   testimony by Samsung's experts?
3       A.  I would need to review such information
4   and talk to people who have technical background
5   about what it means.                                    11:24AM
6       Q.  Besides speaking with Mr. Lamaru, did
7   you do anything else to ascertain the length of
8   the design-around for the '915 patent?
9       A.  I think I've already described that I
10  talked to Dr. Singh and I've also reviewed the          11:24AM
11  documents in this case.
12      Q.  What documents did you review?
13      A.  The ones that come to mind related to
14  potential design-arounds would be the one that I
15  described to you earlier that was produced by          11:25AM
16  Samsung that shows an 18- to 24-month design
17  period.
18      Q.  Did that document speak about '915
19  specifically?
20      A.  No, not to my recollection.                    11:25AM
21      Q.  In your report you assumed that Samsung
22  would start designing around Apple's patents
23  beginning on the latest of the dates of issuance
24  of the patent, the date Samsung first sold the
25  product, then infringed the patent or the date         11:26AM

Highly Confidential - Outside Counsels' Eyes Only

Page 131

1  when Samsung received actual notice; is that
2  correct?
3      A.  That is correct.
4      Q.  Okay.  Why did you choose these dates?
5      A.  Well, we'd have to take them                    11:26AM
6  one-by-one.  I can't choose a date before the
7  date of notice because you can't start designing
8  around a patent until you know of its existence
9  and the fact that you are infringing.  I can't
10 start designing around a patent that hasn't yet   11:26AM
11 issued, and so those are the two that I think
12 drive the calculation for the most part.
13     Q.  You got the notice dates from the
14 Court's March 1, 2013, order; is that right?
15     A.  I did.                                          11:27AM
16     Q.  Okay.  The dates identified by the
17 order are not the dates that Samsung actually
18 learned of the patents, are they?
19     A.  I don't know what you're talking about.
20     Q.  Aren't these the earliest dates            11:27AM
21 supported by the trial evidence in which Apple
22 provided notice to Samsung on the patents
23 pursuant to the statute?
24     A.  Say that again, the earliest dates that
25 Samsung...                                              11:27AM

Highly Confidential - Outside Counsels' Eyes Only

Page 132

1  Q.  Was provided -- strike that.
2      Aren't they the earliest dates
3  supported by the trial evidence on which Apple
4  provided notice to Samsung on the patents
5  pursuant to the patent statute?                           11:27AM
6  A.  I can't know for sure how the judge
7  formed that conclusion, but it would seem that
8  it likely has something to do with that fact.
9  Q.  Okay.  Are you aware of the fact that
10 the Federal Circuit has ruled that awareness of           11:27AM
11 the patents is not the same as actual notice
12 pursuant to the patent statute?
13 A.  I don't know what that means exactly.
14 Q.  Do you know whether a Federal Circuit
15 has spoken on the fact whether -- spoken on the           11:28AM
16 principle of whether the notice date is the same
17 as the awareness date?
18 A.  I'm aware that there is case law that
19 says knowledge of a patent is not sufficient to
20 constitute notice because the alleged infringer           11:28AM
21 didn't have any reason to think that they were
22 infringing that patent.  So simply because they,
23 for instance, may have performed a search and
24 found the patent doesn't constitute notice.  To
25 my knowledge, that type of fact is not what              11:28AM

Case 5:11-cv-01846-LHK   Document 2544-1   Filed 10/15/13   Page 15 of 18

Highly Confidential - Outside Counsels' Eyes Only

Page 133

1    drives the notice dates in this case.

2        Q.  You also prepared a set of calculations
3    assuming that the design period would begin on
4    the later of when the relevant patent issued or
5    the date when Samsung first sold a product that        11:29AM
6    infringed the patents at issue; is that correct?

7            THE WITNESS:  I'm going to have to have
8    you read that one back, please.

9                      (Record read.)

10           THE WITNESS:  I'm not following your           11:29AM
11   question.  Do you have a particular calculation
12   in mind?

13   BY MS. MAROULIS:

14       Q.  So you performed calculations where
15   design-around period starts at the notice date,        11:29AM
16   correct?

17       A.  I did.

18       Q.  Okay.  You also prepared alternative
19   calculations where those design-around periods
20   start on a different date; is that right?             11:29AM

21       A.  I have an alternative calculation that
22   shows the design-around periods starting as
23   Mr. Wagner alleges prior to the notice dates.

24       Q.  Okay.  Why did you prepare this
25   alternative set of calculations?                       11:30AM

Highly Confidential - Outside Counsels' Eyes Only

Page 134

1    A.   I expected Mr. Wagner to make that
2  argument and wanted to have available to the
3  judge, if she needs it, the calculation that
4  would show what the result would be if you
5  started with that assumption.                         11:30AM
6    Q.   Do you believe that calculation's
7  appropriate?
8    A.   I don't think so.  I don't think it's
9  logical to assume that Samsung could start
10 designing around a patent that it didn't yet          11:30AM
11 have notice about.
12   Q.   Okay.  Do you agree that beginning a
13 design-around period on that date as opposed to
14 your other calculated dates decreases your lost
15 profits analysis by 300 million?                      11:31AM
16   A.   I can look it up to give you the exact
17 number, but I certainly would agree with you
18 that it decreases the total damages number.
19   Q.   It decreases it substantially, correct?
20   A.   Yes, it does.                                  11:31AM
21   Q.   Lost profits analysis requires
22 reconstructing the market as it would have been
23 without the infringing product, correct?
24   A.   It does.
25   Q.   Okay.  This is called a "hypothetical         11:31AM

Highly Confidential - Outside Counsels' Eyes Only

Page 135

1  reconstruction"?

2     A.  I don't know that I've heard that term

3  particularly often, but that probably is a term

4  that could be used.

5     Q.  Okay.  In the hypothetically                    11:31AM

6  reconstructed market, Samsung could have begun

7  designing around Apple's patents immediately

8  rather than releasing an infringing product; is

9  that right?

10    A.  Well, it can't start designing around       11:31AM

11 those patents until it knows of their existence

12 and the fact that the product that they're about

13 to sell or are already selling would infringe.

14    Q.  If Samsung was aware of a patent and

15 was concerned it may have been infringing the     11:32AM

16 patent, it could have begun a design-around

17 period without the notice from Apple; is that

18 correct?

19    A.  Hypothetically, I suppose it could

20 have, but it has not done so in the real world    11:32AM

21 because it certainly knew of these patents and

22 knew of the possibility that it was infringing

23 the patents.

24    Q.  For the purpose of your analysis,

25 though, it matters what it could have done,       11:32AM

Highly Confidential - Outside Counsels' Eyes Only

Page 136

1  right?  It doesn't necessarily need to be what
2  had happened in the real world, correct?
3      A.  Well, I think we have to think about
4  the reality of what did happen in the real world
5  in considering what would have likely happened          11:32AM
6  in the reconstructed world.
7      Q.  So is your opinion based in part on
8  your understanding of what Samsung has or has
9  not done in the real world with these
10 design-arounds?                                         11:33AM
11     A.  I think there are aspects of my damages
12 calculation overall that does ride on what
13 Samsung has actually done in the real world.
14     Q.  Which aspects of your calculation
15 depend on that?                                         11:33AM
16     A.  I wouldn't be able to name them all off
17 the top of my head, but the ones that come to
18 mind right now are the fact that Samsung hasn't
19 provided design-around for the '915.  '381
20 design-arounds, I understand to be limited to          11:33AM
21 the blue glow or yellow glow, primarily which
22 many customers do not find to be as appealing.
23     Q.  Anything else?
24     A.  My understanding of the '163
25 design-around that Samsung may have implemented        11:34AM