QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG TELECOMMUNICATIONS AMERICA,
LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S RESPONSE TO APPLE'S STATEMENT REGARDING CAPACITY ANALYSIS**<br><br>**Date**:  October 17, 2013<br>**Time**:  1:30 p.m.<br>**Place**:  Courtroom 8, 4th Floor<br>**Judge**:  Hon. Lucy H. Koh<br><br>**PUBLIC REDACTED VERSION** |

1    Pursuant to the October 11, 2013 Case Manager Order (Dkt. 2516), the Samsung Defendants
2  respectfully submit this response to Apple's Statement Concerning Capacity Analysis (Dkt. 2531-3.)
3    Apple makes a fairly simple issue unnecessarily complicated.  To be entitled to lost profits,
4  Apple must prove that it had the manufacturing and marketing capacity to make additional sales it
5  claims it would have made "but for" Samsung's infringement.  *See* Final Jury Inst. No. 37, Dkt.
6  1903 at 51.  As both Samsung and Apple agree, one of the periods for which Apple seeks lost profits
7  in the new trial is August 4, 2010 through September 3, 2010.  (Dkt. 2531-3 at 3:6.)  The parties also
8  agree that, in evaluating Apple's capacity, both Mr. Musika and Ms. Davis relied upon Exhibit 26-S
9  to Mr. Musika's May 8, 2012 Supplemental Report.  (Dkt. 2531-3 at 1.)
10 
11  As the Court recognized at the October 10, 2013 hearing, the
12  "Excess Unused Capacity" row in Exhibit 26-S for the iPhone 4 is zero until Apple's second fiscal
13  quarter of 2011.  Alden Decl. Ex. 1, 10/10/13 Tr. at 58:16-23 ("The Court:  Okay.  And this exhibit
14  [26-S] says no Excess Unused Capacity from second quarter fiscal year 2010 through quarter one --
15  Ms. Maroulis:  Your Honor, it's roughly June through October of 2010.  The Court:  So it's Q3 and
16  Q4 of fiscal year 2010? Ms. Maroulis:  Yes, Your Honor.  The Court:  It does say zero.").)
17    The lack of iPhone 4 capacity shown in Exhibit 26-S is confirmed by the deposition
18  testimony of Apple's Rule 30(b)(6) designee on capacity, Tony Blevins.  Dkt. 2527-3 at 81:7-10.
19  Mr. Blevins admitted that Apple had no capacity to sell any additional iPhone 4s from June 2010
20  through November 2010.

21  Q. From about June of 2010 until about September 2010, did Apple have excess
22     supply of the iPhone 4?
23  A. No.
24  Q. What about in October of 2010, did Apple have excess supply of the iPhone 4?
25  A. No.
26  . . .
27  Q. So from June through September 3 2010, why was there a backlog of orders for the
       iPhone 4?
28  A. Because demand exceeded our ability to produce them.

Q. When you say your ability to produce them, can you be a little bit more specific about what you mean?

A. Our ability to supply them to consumers who were willing to buy them.

Q. During that time period, did you do anything to try to increase supply of the iPhone 4?

A. Yes.

Q. What did you do to try to increase supply of the iPhone 4 from about June of 2010 until September of 2010?

A. We increased our orders to component suppliers.

Q. What else did you do?

A. We would expedite shipping, for example, where possible. Where possible, we would expedite shipping.

Q. Did you do anything else to try to increase supply of the iPhone 4 from June of 2010 until about September of 2010?

A. I'm sure we did everything that we could, but those are the things that come to mind.

*Id.* at 17:1-7, 15:2-16:5; *see also* Dkt. 425, Declaration of Tony Blevins, at ¶ 5.

In light of Exhibit 26-S and Mr. Blevins's sworn admissions, Samsung questioned Mr. Musika at trial about whether Apple could have sold any additional iPhone 4s from June through October 2010. Mr. Musika admitted that Apple could not have sold *any* additional iPhone 4s during this period, but opined that Apple would instead have sold more iPhone 3Gs.

Q. So between June of 2010 through October of 2010, Apple did not have excess supply of the iPhone; correct?

A. That's correct.

Q. iPhone 4?

A. That's correct.

. . .

Q. *And this is a time [June - October 2010] when Apple couldn't even service its own customers for the iPhone 4; correct?*

A. *Well, yes, with the iPhone 4. They had available iPhones, but not the iPhone 4.*

Q. So Apple couldn't service its own customers for the iPhone 4, but it could service the customers it didn't have, that it would have gotten from Samsung during that same timeframe?

A. iPhone 3's, 3G, not iPhone.

1 Trial Tr. at 2141:13-2142:19 (emphasis added).

2 In contradiction to Exhibit 26-S, Mr. Blevin's sworn testimony, and Mr. Musika's opinion, Ms.
3 Davis now says that Apple *could* have sold additional iPhone 4s from June through October 2010.
4 During her deposition, Ms. Davis's testimony was initially consistent with Mr. Musika's opinion.
5 Dkt. 2531-6 at 159:10-13 ("Q.  From June 2010 to October 2010, Apple did not have excess supply
6 of the iPhone 4; is that correct?  A.  That is correct."); *see also id.* at 159:14-22.

7

8

9

10

11

12 Dkt. 2386-6 at 168:19-25; *see also id.* at 166:5-168:18; 240:7-15.

13 Samsung moved to strike this opinion because it is entirely new.  Dkt. 2391-1 at 4:6-20.  As
14 discussed above, Mr. Musika did not testify that Apple lacked capacity to *manufacture* additional
15 iPhone 4s from June through November 2010.  He testified – consistent with Mr. Blevins – that
16 Apple could not *sell* any additional iPhone 4s during this period – it could not even service demand
17 for the iPhone 4 from its own customers.  Trial Tr. at 2141:13-2142:19.  Ms. Davis's inconsistent
18 opinion that Apple could sell additional iPhone 4s during this period is new and should be stricken.[1]

19 Apple's arguments to justify the change are meritless.  *First*, it argues that Ms. Davis's
20 "inventory" opinion is not new because she relies on the same document (Exhibit 26-S) as Mr.
21 Musika.  That is beside the point.  Mr. Musika relied on Exhibit 26-S and yet he opined that Apple
22 had no capacity to sell additional iPhone 4s from June through October 2010.  Ms. Davis now has a
23 different opinion and the Court has ruled that any different opinions will be stricken.  Dkt. 2316 at
24 3:3-5 ("The Court will not permit the parties to expand the scope of the damages trial by relying
25 upon: . . . (3) new methodologies or theories.").  Indeed, Apple has argued that portions of Mr.
26 Wagner's new report should be stricken even though they rely on his original data.  Dkt. 2428 at

27 ---
[1] That Ms. Davis's opinion is new is also confirmed by the redline of her report to Mr. Musika's.
28 *See* Alden Decl. Ex. 2.

2:23-25 ("That Mr. Wagner's prior report contained underlying data to which this new methodology could be applied . . . does not excuse his use of a new methodology.").[2]

*Second*, Apple suggests that Ms. Davis's new opinions are somehow justified by the Court's post-trial ruling on notice dates and the fewer products now at issue in the new trial. Not so. Mr. Musika's lost profits period – before the Court's notice ruling – included the period from August 4, 2010 through October 2010 (*see* Musika Rpt. Ex. 17.2), during which he admitted that Apple had no additional iPhone 4 capacity. So too, Ms. Davis's lost profits period of August 4, 2010 to September 3, 2010 (Dkt. 2531-3 at 3:5-6) – after the Court's notice ruling – still falls within the June through October 2010 period during which Apple could sell no additional iPhone 4s. And the fact that fewer products are now at issue makes no difference. Mr. Musika did not opine that Apple could sell a *certain number* of additional iPhone 4s. He said Apple could sell *zero* additional iPhone 4s during this period. Whether 1,000 or 100,000 additional sales are at issue in the new trial, zero is still zero.

*Finally,* Apple argues that this is an issue for cross-examination, not exclusion. But the same could also be said for any number of Mr. Wagner's opinions that Apple erroneously seeks to exclude. The bottom line is that the Court ruled that Ms. Davis could not depart from Mr. Musika's opinions and she has. Samsung should not be forced to cross-examine Ms. Davis about an opinion she should not be allowed to offer in the first place.

---

[2]   Notably, Apple concedes that neither Mr. Musika's nor Ms. Davis's lost profits calculations even use the "Ending Potential Inventory" rows in Exhibit 26-S, upon which Ms. Davis's new capacity opinion is based. Apple states that Ms. Davis's "Exhibit 17.2-PT-H is a summary by month of Apple's lost profits." Dkt. 2531-3 at 2:15. Apple then admits that Exhibit 17.2-PT-H uses the "Excess Unused Capacity" rows in Exhibit 26-S (which show zero excess iPhone 4 capacity until FQ2'11), *not* the "Ending Potential Inventory" rows in Exhibit 26-S. *Id.* at 2:3-4 ("[T]he numbers on the last row of Exhibit 26-S [Excess Unused Capacity] and row entitled "Add'l Excess Capacity" in Exhibit 17.2-PT-H correspond to one another.").

DATED: October 15, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC