QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | **SAMSUNG'S RESPONSE TO APPLE'S BRIEF ON EVIDENCE OF COPYING OR DEMAND** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, Defendants. | Pre-Trial Conference:   October 17, 2013<br>Place:   Courtroom 8,   4th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

I.    APPLE'S SUMMARY OF "RELEVANT LAW" IS INAPPROPRIATE, FAILS TO ADDRESS THE ISSUES BEFORE THE COURT, AND SEEKS TO OBSCURE RATHER THAN CLARIFY THE LAW ON CAUSATION AND LOST PROFITS. ......................................................................................... 1

    A.    Apple Seeks to Obscure Its Failure to Prove Demand for the Patented Features. ............................................................................................ 2

    B.    Apple Fails to Address Substantial Prejudice. ....................................... 4

    C.    Apple's Legal Arguments Are Without Merit. ....................................... 5

    D.    Apple's Analysis of Georgia-Pacific Factors Again Highlights the Requirement to Show Demand for the Specific Patented Features........... 7

II.    WITNESS TESTIMONY ............................................................................... 8

    A.    Witnesses Designated For Live Trial Testimony ................................... 8

          1.    Julie Davis ................................................................................. 8

               (a)    Apple Has Failed to Comply with the Court's Order...................... 8

               (b)    Apple's Brief and Statement Concerning the Proposed Testimony of Julie Davis Confirm Its Intention to Offer Improper Testimony ................................................................. 9

               (c)    Apple's Brief Confirms That It Intends to Use Ms. Davis As a Mouthpiece for Other Witnesses ................................................. 10

               (d)    Apple's Brief Confirms That It Intends to Have Ms. Davis Testify Regarding Documents and Testimony on Which Mr. Musika Never Relied.......................................................................... 11

               (e)    Ms. Davis Should Not Be Permitted to Reply On Any Documents from Exhibit 24-PT to Her Report ............................. 12

               (f)    The Overwhelming Majority of the Exhibits Identified in Apple's Proffer for Ms. Davis Have Nothing to Do With Demand for the Patented Features ................................................. 13

               (g)    Apple's Brief Confirms That It Intends to Have Ms. Davis Offer Opinions That Are Irrelevant As a Matter of Law ............... 15

          2.    John Hauser ............................................................................... 16

          3.    Ravin Balakrishnan ................................................................... 17

4.    Karan Singh ................................................................. 18

5.    Phil Schiller ................................................................. 20

6.    Greg Joswiak ................................................................. 23

7.    Boris Teksler ................................................................. 26

8.    Mark Buckley ................................................................. 27

9.    BJ Watrous ................................................................. 28

B.    Designated Deposition Testimony ................................................................. 29

1.    Timothy Benner ................................................................. 29

2.    Dong Hoon Chang ................................................................. 30

3.    Gee Sung Choi ................................................................. 32

4.    Cira Conley ................................................................. 33

5.    Wong Pyo Hong ................................................................. 33

6.    Wookyun Kho ................................................................. 34

7.    Ioi Lam ................................................................. 34

8.    MinHyouk Lee ................................................................. 35

9.    Junho Park ................................................................. 35

10.   Todd Pendleton ................................................................. 35

11.   DongSeok Ryu ................................................................. 35

12.   Jaegwan Shin ................................................................. 37

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

*Abaxis v. Cepheid,*
    Case No. 10-CV-02849-LHK, Dkt. No. 196 (N.D. Cal July 19, 2012) .............................17, 19

*Adams v. U.S.,*
    2009 WL. 1324231 (D. Idaho May 8, 2009)...................................................................10

*Apple, Inc. v. Samsung Elecs. Co.,*
    678 F.3d 1314 (Fed. Cir. 2012) ...................................................................................13, 27

*Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
    695 F.3d 1370 (Fed. Cir. 2012) ...................................................3, 13, 15, 16, 17, 19

*Asyst Techs., Inc. v. Empak, Inc.,*
    No. 98-20451, 2007 WL. 120845 (N.D. Cal. 2007) ...........................................................4

*Calico Brand, Inc. v Ameritek Imports, Inc.,*
    2013 WL. 3746163 (Fed. Cir. July 18, 2013) ....................................................................2

*Datascope Corp. v. SMEC, Inc.,*
    879 F.2d 820 (Fed. Cir. 1989) ...........................................................................................6

*DePaepe v. Gen. Motors Corp.,*
    141 F.3d 715 (7th Cir. 1998).............................................................................................10

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
    567 F.3d 1314 (Fed. Cir. 2009) .....................................................................................3, 5

*Flex-Rest, LLC v. Steelcase, Inc.,*
    455 F.3d 1351 (Fed. Cir. 2006) ...................................................................................17, 19

*Fonar Corp. v. General Elec. Co.,*
    107 F.3d 1543 (Fed Cir. 1997) ......................................................................................5, 6

*Funai Elec. Co. v. Daewoo Elecs. Corp.,*
    616 F.3d 1357 (Fed. Cir. 2010) .........................................................................................7

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................7, 8, 9, 26

*ICU Med., Inc. v. RyMed Techs., Inc.,*
    752 F. Supp. 2d 486 (D. Del. 2010) ...................................................................................4

*In re Imperial Credit Indus., Inc. Sec. Litig.,*
    252 F. Supp. 2d 1005 (C.D. Cal. 2003)............................................................................11

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.,*
    2005 WL. 1331216 (D. Del. June 6, 2005) ........................................................................3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................8

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ......................................................11

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...................................................10

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ............................................................3, 13

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ......................................................10

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) ........................................................1, 2, 5

*Slimfold Mfg.   Co. v. Kinkead Indus., Inc.*,
    932 F.2d 1453 (Fed. Cir. 1991) ................................................................2

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991) ................................................................6

*Stryker Corp. v. Intermedics orthopedics, Inc.*,
    96 F.3d 1409 (Fed. Cir. 1996) ................................................................6

*Tate Access Floors, Inc. v. Maxcess Tech., Inc.*,
    222 F.3d 958 (Fed. Cir. 2000) ............................................................6, 7

*Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.*,
    1999 WL. 12931 (4th Cir. Jan. 17, 1999) ................................................11

*Versata Software, Inc. v. SAP Am., Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013) ................................................................6

## **Statutes**

Fed. R. Evid. 401-403 ...................................................................................2, 8

Fed. R. Evid. 403 ........................................................................................4, 18

Fed. R. Evid. 602 ............................................................................................29

Fed. R. Evid. 702-703 ...........................................................................9, 10, 11

-iv-

**INTRODUCTION**

Apple's brief makes clear that it intends to use testimony and documents alleging that Samsung copied Apple's patented features to improperly prejudice the jury and to seek damages meant to punish Samsung rather than to compensate Apple.   Apple's tenuous theories of relevance for its copying evidence are nothing more than a pretext to repeat its trial strategy—to paint Samsung as a bad actor and plead for a windfall damages award.   *See* Trial. Tr. at 4244:21-4245:5 ("Samsung wins if you compromise on damages . . . They will not change their way of operating if you slap them on the wrist."); *see also id.* at 4219:20-4220:3 ("They copied our products and made $8 billion . . . That's the number for you to focus on.   And the question of do they get a get-out-of-jail card for free?").   As Samsung has explained at length in its objections to Apple's trial exhibits and witnesses, and in its motion *in limine* on copying, this evidence should be excluded as irrelevant to damages and/or far more prejudicial than probative of the value of Apple's patents.

I.      **APPLE'S SUMMARY OF "RELEVANT LAW" IS INAPPROPRIATE, FAILS TO ADDRESS THE ISSUES BEFORE THE COURT, AND SEEKS TO OBSCURE RATHER THAN CLARIFY THE LAW ON CAUSATION AND LOST PROFITS.**

Apple's summary of law is inappropriate in a proffer of testimony and evidence.   Apple abused the Court's leave to submit a brief on its testimony and evidence on copying by submitting *eight additional pages of legal argument*.   Worse, Apple's legal argument wholly avoids the two real issues before the Court: causation and prejudice.

It is undisputed that lost profits requires proof of causation, evidence that "but for" use of the particular patented features the patentee would have made additional sales.   *See Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545-46 (Fed. Cir. 1995) (patentee must establish both but-for and proximate causation between infringement and lost profits).   Apple seeks to obscure this requirement.   In response the Court's straightforward invitation to "present its argument regarding why it need not show that the testimony or exhibits relate to a particular patented feature at issue in the retrial," Dkt. 2516 at 2, Apple can only dodge the question.   Apple cannot deny it must present evidence that particular patented features drive demand.   But Apple has no such evidence.

1    Therefore, Apple attempts to move the bar lower, and pleads for the right to rely on "generalized

2    evidence of demand" for the iPhone, or for Apple's user experience, or Apple's overall designs.

3    That is not a substitute for particularized evidence of demand for specific patented features, and

4    Apple identifies no case law holding that it is.

5          Likewise, Apple ignores the issue of prejudice.   Apple's bald assertion that "any

6    evidence" relevant to 'but-for' causation "should be admissible," Dkt. 2522, ignores that

7    Samsung's objections to Apple's exhibits are based on lack of relevance and likelihood of

8    prejudice under Fed. R. Evid. 401-403.   *See* Dkt. 2418 at 2 ("All documents discussed in this

9    section should be excluded under Federal Rules of Evidence 401-403."); Dkt. 2406 at 1 ("Apple's

10   copying and willfulness allegations should be excluded under Federal Rules of Evidence 401-403

11   because any probative value is vastly outweighed by the risk of prejudice and wasted time.").

12   Apple's copying evidence will necessarily cause great prejudice to Samsung by encouraging the

13   jury to see Samsung as a bad actor.   That has no place in a trial solely on the value of patents,

14   where there are no issues of nonobvious or wilfullness.   The prejudice caused by Apple's copying

15   evidence will far outweigh the relevance, even if Apple's tenuous theories of "generalized

16   evidence" were credible – which they are not.   Apple's brief does not mention the word prejudice,

17   not even once.

18      **A.      Apple Seeks to Obscure Its Failure to Prove Demand for the Patented**

19              **Features.**

20         Apple cannot deny that lost profits requires proof of causation, and specifically proof that

21   the patented features drive demand for its products.   *Rite-Hite Corp.,* 56 F.3d at 1545-46; *see also*

22   *Calico Brand, Inc. v Ameritek Imports, Inc*., 2013 WL 3746163 at *8-9 (Fed. Cir. July 18, 2013)

23   (vacating lost profits because patentee had no evidence that consumers preferred its patented

24   mechanism to an alternative found in competitors' products).   Apple has no proof that consumers

25   choose a smartphone or tablet because of the limited patented features that are the subject of the

26   new trial.   Instead, Apple seeks to obscure this fundamental requirement of proof of causation.

27         Apple's lengthy discussion of "relevant law" does not even address the cases requiring

28   causation cited in Samsung's motion to exclude exhibits.   *See* Dkt. 2418 at 5 (citing *Slimfold Mfg.*

1   *Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming no lost profits for

2   failure to prove buyers "specifically want" a product with the patented feature); this Court's prior

3   ruling, Dkt. 2197 at 9-10, and the Federal Circuit's ruling, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*,

4   695 F.3d 1370, 1376 (Fed. Cir. 2012), that evidence of praise for Apple's products in general, or

5   for generic features such as "ease of use" and "design," are insufficient evidence to prove a

6   patented feature drives demand; and *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir.

7   2010) ("Any evidence unrelated to the claimed invention does not support compensation for

8   infringement but punishes beyond the reach of the statute.")); *see also* Dkt. 2476 at 2 (citing

9   *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 2005 WL 1331216, at *3 (D. Del. June 6, 2005)

10  (excluding copying evidence under Rule 402 as "irrelevant to lost profits")).

11          Apple's plea that "generalized evidence of demand for patented products" can be used to

12  fill the gaps in its proof of causation is without merit.   Demand for the specific patented features

13  is a separate and further requirement beyond demand for the products.   *See DePuy Spine, Inc. v.*

14  *Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330-1331 (Fed. Cir. 2009) (demand for the

15  patented features goes to *Panduit* factor 2, addressing the absence of noninfringing alternatives).

16  Apple's argument that it should be allowed to rely on "generalized evidence of demand" for

17  Apple's user experience, or Apple's overall designs (generically including hundreds of "design"

18  features in both hardware and software) as a substitute for particularized evidence of demand for

19  specific patented features should be rejected.   This Court has already held that that praise for

20  general features such as "ease of use" or "design" are simply not sufficient to show that patented

21  features drive customer demand for the patented features because "many factors go into making a

22  product easy to use, but the features for which Apple is asserting patent protection are very

23  specific." Dkt. 2197 at 10.

24          Apple has signaled that it intends to rely separately on evidence that consumers appreciate

25  "ease of use" and good "design" together with unconnected testimony – not from consumers – that

26  Apple's patents contribute to these general qualities.   Apple cannot use separate testimony *not*

27  *tied to consumer demand* to bridge the gap in its proof.   Apple's "generalized evidence" strategy

28  will simply invite the jury to mistake its task.   The jury must consider whether, in the absence of

1   the specific infringing features in Samsung products, *consumers* would have purchased iPhones

2   and iPads instead of Samsung products.   That requires a particularized showing that patented

3   features drive *consumer* demand.   No amount of "generalized evidence" abstracted from the

4   patented features can suffice as a substitute for that particularized showing.

5        Apple's exercise in distraction does nothing to address its failure to identify any evidence

6   that "but for" use of the particular patented features the patentee would have made additional sales.

7        **B.        Apple Fails to Address Substantial Prejudice.**

8        Even if copying could be relevant to consumer demand for the patented features as a

9   general matter, the documents and testimony Apple uses to support this claim are not admissible.

10  As explained below, many of these documents do not address any product at issue in the new trial,

11  and many do not address any particular patented feature at issue in the retrial.   They are all highly

12  prejudicial.   Apple's argument that highly prejudicial copying evidence can show consumer

13  demand for the patented features is nothing more than a pretext to repeat its improper trial strategy

14  – namely, to paint Samsung as a bad actor, in the hope of a windfall award.

15       Apple's lengthy discussion of "relevant law" does not address the two cases on Rule 403

16  prejudice from Samsung's motion to exclude exhibits, which are directly on point. *See* Dkt. 2418

17  at 1-2 (citing *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010)

18  (excluding evidence of copying related to products not at issue because "such contentions would

19  cause substantial delay, wasted time, and confusion"); *Asyst Techs., Inc. v. Empak, Inc.*, No. 98-

20  20451, 2007 WL 120845, at *2 (N.D. Cal. 2007) (excluding copying evidence as related to a

21  feature not expressly claimed by the patent and stating that "evidence of copying would be highly

22  prejudicial to [defendant]")).   Apple offers no response at all to Samsung's objection that Apple's

23  copying evidence will necessarily cause great prejudice.

24       Even if there were some small probative value to evidence of copying in a damages trial

25  where liability and willfulness are not at issue – which there is not – the likelihood of prejudice

26  from this inflammatory evidence far outweighs any probative value.   Fed. R. Evid. 403 exists to

27  prevent such highly prejudicial evidence from distracting the jury from the real issues before it.

28

1   Apple offers nothing to address the clear and substantial threat of prejudice from its alleged

2   evidence of copying.

3   **C.    Apple's Legal Arguments Are Without Merit.**

4          As an initial matter, Apple's emphasis on *Panduit* factor 1, demand for the patented

5   products, is beside the point.   There is no dispute that demand for Apple's products existed

6   (August 2013 Wagner Rpt. ¶ 98).   At trial, there will be evidence of the sales volume of the

7   products at issue.   The first *Panduit* factor is uncontested; it cannot justify Apple's claims that

8   highly prejudicial copying evidence should be admissible in a trial on damages.

9          Apple still bears the burden of proving that specific patented features drive consumer

10   demand.   And the law is settled that there is a requirement to prove demand for specific patented

11   features under *Panduit*.   *See Rite-Hite Corp.,* 56 F.3d at 1548 (stating that *Panduit* incorporates a

12   required "'but for' analysis" and explaining "if the patent infringement had nothing to do with the

13   lost sales, 'but for' causation would not have been proven.")   But Apple also seeks to obscure

14   Federal Circuit authority requiring a showing of consumer demand for the patented features under

15   *Panduit* factor 2.   This Court held at the *Daubert* stage that "*DuPuy* made it very clear that, []

16   evidence of demand for the patented feature 'goes to the availability of acceptable noninfringing

17   substitutes under the second *Panduit* factor…'"   Dkt. 1157 at 10 (citing *DePuy Spine, Inc. v.*

18   *Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330-1331 (Fed. Cir. 2009).   None of Apple's

19   cases are to the contrary.

20          Here, Apple concedes that there are noninfringing alternatives available for all the patents

21   in the new trial.   *See* Davis Rpt. at ¶100 (acknowledging there were "noninfringing alternatives

22   available" and separately that Samsung could "design and market an alternative that does not use

23   Apple's patented technology").   The parties dispute the number of noninfringing alternatives

24   available and for some patents, how long it would take to design around.   But there is no dispute

25   in this case that there are noninfringing alternatives.

26          Accordingly, Apple's reliance on cases laying out proof of "a lack of suitable

27   noninfringing alternatives," Dkt. 2522 at 6, are not on point.   *See Fonar Corp. v. General Elec.*

28   *Co.*, 107 F.3d 1543, 1553 (Fed Cir 1997) (citing testimony that no acceptable noninfringing

1    alternative existed); *Stryker Corp. v. Intermedics orthopedics, Inc.*, 96 F.3d 1409, 1418 (Fed. Cir.

2    1996) (affirming the district court's conclusion that there were no acceptable non-infringing

3    substitutes); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989) (noting that

4    defendant's president had doubts about the efficacy of one purported alternative, which was never

5    marketed, and that another purported alternative did not have FDA approval).   The present case

6    does not present a situation like in *Fonar Corp.*, where the lack of the specific patented advantage

7    rendered the competing products inferior to the point of being unacceptable to consumers.   *Fonar*

8    *Corp*, 107 F.3d at 1553.   Moreover, Apple's *ipse dixit* argument that its patented features are

9    "sleek," "fun," and "enhance the overall user experience" are not relevant to the required showing

10   of consumer demand for the patented features.

11       Apple's reading of *Versata Software, Inc. v. SAP Am., Inc*., 717 F.3d 1255 (Fed. Cir. 2013),

12   another case finding no noninfringing alternatives, is overreaching.   The fact that it is not

13   necessary to allocate demand "among the various limitations recited in a patent claim" does not

14   alter the requirement to allocate lost profits based on the particular patented features as contrasted

15   to other, nonpatented features of the accused products.   *Id.* at 1265.   Moreover, in *Versata* there

16   was no claim that lost profits on a software patent could include recoveries on revenues from

17   hardware, which is what Apple seeks here.

18       The Federal Circuit's opinion in *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953

19   F.2d 1360 (Fed. Cir. 1991), is likewise consistent with the requirement to show demand for

20   specific patented features.   Again, *Standard Havens* is a case where the patentee argued there

21   were no noninfringing alternatives available, unlike here.   Apple selectively quotes *Standard*

22   *Havens*.   The full quote makes explicit that demand for the unique features of the patented

23   product must be shown: "[t]hus, to prove that there are no acceptable noninfringing substitutes, the

24   patent owner must show either that (1) the purchasers in the marketplace generally were willing to

25   buy the patented product *for its advantages*, or (2) the specific purchasers of the infringing product

26   purchased *on that basis*."   *Id*. at 1373 (emphasis added).

27       *Tate Access Floors, Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958 (Fed. Cir. 2000), is no better

28   for Apple.   Another case finding no noninfringing alternatives, Tate Access Floors turns on the

1    finding "that other floor panels with add-on trim were not acceptable as substitutes for those

2    customers." *See id.* at 971.   The court also specifically referred to customers seeking a product

3    with the patented features: "[t]hus, for any customer specifically seeking a floor panel with

4    recessed edges, there were no noninfringing substitutes for the claimed floor panel.").   *Id.*

5         *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357 (Fed. Cir. 2010), is another case

6    where the court explicitly discusses how the particular patented features drove consumer demand

7    and the patentee proved the absence of noninfringing alternatives.   Again selectively quoting,

8    Apple omits the language immediately following its parenthetical, where the court analyzes how

9    each patented invention contributed to the final product to drive demand.   "The jury heard

10   evidence that the invention in the '018 patent shrank the size of VCRs, the '538 invention reduced

11   costs and increased reliability of VCRs, and the '210 invention enabled use of a high-performance

12   motor that reduced rewind speed for VCR cassette tapes.   There was evidence that *these benefits*

13   *were the basis of consumer demand*."   *Id.* at 1375-76 (emphasis added).   Proof that Apple's

14   specific patented features are the basis of consumer demand is precisely what Apple is unable to

15   provide in this case.   It is the match between the specific patented features and consumer demand

16   that is required to provide the crucial link in the "logical chain of inferences."   Apple's highly

17   prejudicial copying evidence should not be admitted fill the gaps in Apple's failed proof that

18   consumer demand is driven by Apple's patented features.

19        **D.      Apple's Analysis of Georgia-Pacific Factors Again Highlights the Requirement**

20        **to Show Demand for the Specific Patented Features.**

21        Apple incorrectly argues that *Georgia-Pacific* factors 6 and 8-11 justify the admissibility

22   of its prejudicial copying evidence.   Dkt. 2522 at 6-8.   First, Apple does not suggest that copying

23   itself is relevant to any of the *Georgia-Pacific* factors.   Second, neither Mr. Musika nor Ms. Davis

24   relied on evidence of copying to support their analyses of *Georgia-Pacific* factors 6, 8, 10 and 11,

25   Apple cannot justify admitting this evidence based on undisclosed theories of relevance.   Third,

26   Apple cites no case law holding that copying documents are relevant to any of the *Georgia-Pacific*

27   factors.   Moreover, as Apple concedes, factors 6, 10 and 11 refer specifically to the patented

28   "invention" and therefore require analysis of the specific patented features – not merely analysis of

the patented products more generally.   *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009) ("Factor 11 relies on evidence about how much the patented invention has been used.").   Likewise, factor 9 speaks to "[t]he utility and advantages of the patent[ed] property over the old modes or devices," and hence requires an comparison of the specific patented features with prior art solutions.   *Id*. at 1335.   Factor 9 does not justify the consideration of "generalized evidence of demand" for Apple's user experience or overall designs because as this Court has recognized, "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific."   Dkt. 2197 at 10.   "Generalized evidence of demand" does not show the economic impact of the specific patented features under these factors, and cannot be used to justify Apple's introduction of highly prejudicial evidence.

Finally, Factor 8 refers to "the established profitability of the product made under the patent; its commercial success; and its current popularity."   *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).   As is the case for *Panduit* factor 1, it is not disputed that the patented products are profitable, successful and popular.   The jury will have evidence of high sales volumes for many products.   Apple cannot use the uncontroversial factor 8 to justify the admission of highly prejudicial copying evidence.   Apple's claim that such evidence is needed to show commercial success of the products is plainly a pretext to smear Samsung.

Apple fails to provide any basis for the admissibility of its copying evidence, which is of little and sometimes no relevance at all, and all of which is highly prejudicial.   It should be excluded under Federal Rules of Evidence 401-403.

## II.   WITNESS TESTIMONY

### A.   Witnesses Designated For Live Trial Testimony

#### 1.   Julie Davis

##### (a)   Apple Has Failed to Comply with the Court's Order

The Court's October 11, 2013 Case Management Order directed Apple to "file a brief discussing the substance of all the exhibits (not just internal Samsung documents) and testimony *Apple will introduce at trial* as evidence of copying or demand."   (Dkt. 2516 at 2:1-3.)   Yet, in

the section of Apple's brief on Ms. Davis alone, Apple has identified over *40 exhibits*.   The most specific Apple gets is to say that it "fully expects that Ms. Davis will use any selection of documents contained in Exhibits 24-PT, 25-PT, and 53-PT as part of her testimony relating to demand for the patented products and patented features."   (*Id.* at 15:6-8.)   But, as the Court noted at the October 10, 2013 hearing, these exhibits identify over *100 documents*.   The purpose of this round of briefing was to provide the Court more context in which to rule on objections to testimony and exhibits.   Identifying over 100 documents does not remotely serve this purpose.

Additionally, the Court ordered Apple to "file a statement regarding to what July Davis will testify at trial regarding copying, any specific conclusions she will make about copying, and the basis for those conclusions."   (*Id.* at 2:15-16.)   Yet, Apple's statement (Dkt. 2519) fails to do any of this.   Instead, it offers nothing more than vague testimonial categories and fails to include a single specific conclusion or basis for a conclusion.

Apple's failure to comply with the Court's order alone warrants exclusion of any testimony by Ms. Davis concerning copying or purporting to divine Samsung's corporate intent.

(b)     Apple's Brief and Statement Concerning the Proposed Testimony of Julie Davis Confirm Its Intention to Offer Improper Testimony

Apple's brief and statement (Dkt. 2516) both repeat the refrain that Ms. Davis "will not use the word 'copying' to describe Samsung's actions or intentions."   (Dkt. 2522 at 19: 12-13; Dkt. 2519 at 1:12-13.)   Apple is being cute.   It is abundantly clear that – whatever terms Ms. Davis will use ("replicate," "reproduce," "emulate") – Apple fully intends to use Ms. Davis to charge Samsung with copying.   Indeed, Apple's proffer quotes exactly the same portions of Ms. Davis's report challenged by Samsung in its Rule 702 motion.   *See, e.g.,* Dkt. 2522 at 15:12-14 ("This document shows that Samsung studied and adopted Apple's bounce feature when developing certain Galaxy tablet products."); *Id. at* 17:22-24 ("Samsung designers recommended . . . adoption of Apple's features".); *Id.* at 17:23-26 ("Samsung recommended adopting an icon layout design that looks more similar to Apple's designs."); *Id.* at 20:20-22 ("In addition, evidence was introduced at trial that Samsung referred to and use the features of the iPhone and the New Trial patents in the process of creating the designs and the user interface that are included in Samsung's

1   products."); *Id.* at 20:24-21:1 ("The scope of similarity between the patented technology and

2   Samsung's products and the decision by Samsung to adopt user interface technology and designs

3   used by Apple after direct comparisons to Apple's products . . .").

4          Thus, it is clear that – despite Apple's carefully crafted pledge – it intends to use Ms. Davis

5   as a mouthpiece to tarnish Samsung with allegations of copying, and to speculate as to Samsung's

6   corporate intent.   For all the reasons discussed in Samsung's Rule 702 motion (Dkt. 2385-3) – not

7   least of which is that Ms. Davis is an accountant who admits to having no expertise in the patents,

8   technology or designs – such testimony should be precluded.   *See, e.g., In re REMEC Inc. Sec.*

9   *Litig.*, 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010) ("The Court agrees with Defendants that [the

10  expert] exceeded his role as an expert witness on accounting when he gave his opinions about the

11  Defendants' mental state."); *Adams v. U.S.*, 2009 WL 1324231, at *1 (D. Idaho May 8, 2009)

12  (granting motion to exclude expert testimony as to "corporate intent"); *DePaepe v. Gen. Motors*

13  *Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (error to permit expert to "speculate" that motive for

14  design-change was cost-cutting); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546

15  (S.D.N.Y. 2004) ("[O]pinions of . . . witnesses on the intent, motives or states of mind of

16  corporations, regulatory agencies and others have no basis in any relevant body of knowledge or

17  expertise.").

18             (c)    <u>Apple's Brief Confirms That It Intends to Use Ms. Davis As a</u>

19                  <u>Mouthpiece for Other Witnesses</u>

20         At the October 10, 2013 hearing, the Court ruled that Ms. Davis would not be allowed to

21  act as a conduit for the testimony of witnesses Apple decides not to call at trial.   Nonetheless, it is

22  clear from Apple's brief that it still intends to do just that.   (*See, e.g.,* Dkt. 2522 at 19:25-26 ("Ms.

23  Davis also discussed the deposition testimony of Mr. Benner played at trial . . ."); *Id.* at 20:3 ("Ms.

24  Davis also discussed the substance of Christopher Stringer's trial testimony . . ."); *id.* at 20:8-9

25  ("Ms. Davis similarly discussed the trial testimony of Scott Forestall . . ."); *id.* at 20:12-13 (Ms.

26  Davis "also discussed Dr. Balakrishnan's testimony relating to the '381 patent and Dr. Singh's

27  testimony relating to the '163 and '915 patents . . ."); *id.* at 21:4 ("Ms. Davis also discussed Mr.

28  Schiller's trial testimony . . ."); *Id.* at 22:1-2 ("Ms. Davis also specified the trial testimony of Mr.

1  Teksler, Mr. Stringer, Mr. Stringer, Mr. Forstall, Dr. Bressler, Dr. Balakrishnan, Dr. Kare, Dr.

2  Singh, and Dr. Winer . . .").   Apple should not be permitted to use Ms. Davis to shield other

3  witnesses from cross-examination.    *See, e.g., In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F.

4  Supp. 2d 1005, 1012-13 (C.D. Cal. 2003) (Fed. R. Evid. 702-703 "do not permit an expert to rely

5  upon excerpts from opinions developed by another expert for the purposes of litigation."); *Tokio*

6  *Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.*, 1999 WL 12931 at *4 (4th Cir. Jan. 17,

7  1999) ("one expert may not give the opinion of another expert who does not testify"); *Malletier v.*

8  *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664-66 (S.D.N.Y. 2007) (experts "cannot simply be

9  a conduit for the opinion of an unproduced expert").   This Court already rejected Apple's

10  attempts to shield it experts from cross-examination by having another expert recite their

11  conclusions.   (*See* Dkt. 1596 at 1-2.)

12              (d)      Apple's Brief Confirms That It Intends to Have Ms. Davis Testify

13                       Regarding Documents and Testimony on Which Mr. Musika Never

14                       Relied

15         At the August 21, 2013 Case Management Conference, Apple's counsel acknowledged

16  that the Court's prior orders "compelled [Ms. Davis] to give exactly the same opinions that Mr.

17  Musika gave . . . *using the same documents he used*."   (Dkt. 2386, Becher Decl. Ex. 6 at 20:24-

18  21:4 (emphasis added).)    Yet, Apple now intends to have Ms. Davis testify about dozens of

19  documents and to recount trial testimony Mr. Musika never even considered, let alone relied upon.

20  For example, while Mr. Musika's lost profits analysis relied on the documents listed in Exhibits 24

21  and 25 to his original report as evidence of demand for the patented products (Musika Rpt. ¶¶121-

22  122; see also Musika Supp. Rpt. Ex. 24-S), Ms. Davis cites numerous additional documents.[1]

23  Similarly, Ms. Davis's lost profits analysis cites advertisements and "press articles reflecting

24

25

26

27         [1]      See Davis Rpt. ¶¶106, 134, 136, 137, 41-42, 58-60 (citing SAMNDCA00214969,

28  SAMNDCA10246338, PX58, PX60, PX62, PX55, PX2261, PX186, PX21A, PX7, PX8, PX3,
    PX6 and PX174).

1   industry praise" for Apple's products, even though Mr. Musika's reports did not cite these

2   materials.[2]

3          Apple attempts to justify Ms. Davis's reliance on testimony never considered by Mr.

4   Musika – for example, that of Mr. Teksler, Mr. Stringer, Mr. Forstall, Dr. Bressler, Dr. Kare, and

5   Dr. Winer – on the basis that all of it "was available to Mr. Musika."   But whether it was

6   available is irrelevant.   The test is whether he relied upon it in forming his opinions.   His reports

7   show that he did not.   Ms.   Davis should be precluded from relying on any documents or

8   witnesses not relied upon by Mr. Musika.   The Court's decision to allow Apple to substitute a

9   new damages expert was not an invitation to fill holes in Mr. Musika's theories.

10                  (e)      Ms. Davis Should Not Be Permitted to Reply On Any Documents

11                          from Exhibit 24-PT to Her Report

12         Apple states that Ms. Davis will "use any selection of documents contained in Exhibit 24-

13   PT."   (Dkt. 2522 at 15:7.)   But Exhibit 24-PT does not purport to relate solely to the patents at

14   issue in this case.   Rather, the exhibit is entitled "Demand for Design Patents *and Trade Dress*."

15   (Dkt. 2518-5 at 1.)   Even though Apple purported to update the exhibit to shade materials

16   "reflect[ing] documents and columns that address patents other than the new trial patents" (*id.* at

17   6 n.2), it made no effort to remove documents directed to Apple's trade dress, which is no longer

18   at issue.   Indeed, at her deposition, Ms. Davis was unable to identify a single document listed on

19   Exhibit 24-PT directed solely to the D'677 patent.   (Dkt. 2520-1 (Davis Dep. Tr.) at 106:17-107:3

20   ("Q. Okay. So going back to my question, if we take specifically '677 design, none of the

21   documents on that list address that expressly as separate from other design patents or trade dress

22   of Apple, correct?   A. I'd have to look back at the documents themselves to answer that.   Q. But

23   sitting here right now, you don't have any recollection of a document like that?     A. There isn't

24   one that jumps out to me, as I sit here right now, that addresses that point in particular.").)

25

26

27   _____

28          [2]    Davis Rpt. ¶133 (citing APLNDC-Y0000146961, APLNDC-Y0000233381,
     APLNDCY0000234932, APLNDC-Y0000235973, PX142, PX11, PX12, PX13 and PX127).

(f)     The Overwhelming Majority of the Exhibits Identified in Apple's
Proffer for Ms. Davis Have Nothing to Do With Demand for the
Patented Features

The overwhelming majority of exhibits identified by Apple in connection with Ms. Davis's proposed testimony have nothing to do with demand for the patented features at issue in this trial. This Court and the Federal Circuit have already held that evidence of praise for Apple's products in general, or for generic features such as "ease of use" and "design," are insufficient to prove a patented feature drives demand.   Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012)).   Likewise, evidence in support of a reasonable royalty opinion must be focused on the patented features.   *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.").    Moreover, in the injunction context, the Federal Circuit has held that the "relevant inquiry" into consumer demand "focuses on the objective reasons as to why the patentee lost sales, *not* on the infringer's subjective beliefs as to why it gained them (or would be likely to gain them)."   *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1327-28 (Fed. Cir. 2012) (emphasis added).   Apple has offered no reason – nor can it – why the same logic would not apply in the lost profits context.

Samsung's objections to the exhibits identified in Apple's brief are identified in its Motion to Exclude Apple's Proposed Trial Exhibits (Dkt. 2418), and in Appendix 1 hereto.   Nonetheless, it is worth examining a few of the proposed exhibits discussed in connection with Ms. Davis to highlight their irrelevance.

For example, Apple states that it intends to use Ms. Davis to show the jury PX3.   Dkt. 2522 at 18, n. 2.   PX3 is a supposed timeline of Samsung smartphone development created by Apple's attorneys and introduced through Peter Bressler, Apple's design expert, as support for his infringement positions. Trial Tr. 1072:1-1073:15. But it fails to include a single image of any Samsung phones subject to the new trial and would require Samsung to waste trial time introducing countervailing testimony that it developed various omitted touchscreen models prior to the iPhone's announcement, which Mr. Bressler ignored.   *See, e.g.*, Trial Tr. 2817:9-2820:11;

1   DX 684.001.   Similarly, Apple asserts that Ms. Davis may testify about PX37.   Dkt. 2522 at

2   16:8-11.   PX37 is a third party presentation noting generally that "consumers recognize iPhone's

3   screen-centric design as the touch phone standard," and also that "[f]rom a UI perspective, it has

4   surpassed Nokia's existing 'Easy to Use' concept and is being judged to be 'Sexy to Use'."

5   PX37.3.   But, as Ms. Davis herself admitted, Apple has no patent on ideas such as "screen-centric

6   design" or "sexy to use."   Indeed, Apple's own design expert distinguished the D'677 patent from

7   a number of other "screen-centric" prior art and contemporary designs.   Trial Tr. 1110:23-1121:4,

8   1175:1 (referencing DX511, DX727, DX728, and JX1093).

9          Likewise, it appears that Ms. Davis may be Apple's vehicle for showing the jury PX34,

10   PX194, and PX40.   PX34 was referenced by Mr. Musika in the first trial because it remarks that

11   the iPhone has "easy and intuitive U/I" and "beautiful design" (Trial Tr. 2078:4-2081:14), but

12   those comments say nothing about demand for the specific IP at issue.   And PX194 was similarly

13   introduced by Apple to establish that there is general demand for the iPhone, which is undisputed.

14   Trial Tr. 2081:19-22.   PX40 is on Apple's list because it contains the phrase "crisis of design,"

15   which Apple latched on to for its liability theme in the first trial. Trial Tr. 319:16-320:19 (Apple

16   opening). Even if the phrase were not merely hyperbole, as Samsung's witnesses explained, (Trial

17   Tr. 969:23-970:19; 997:11-12), the document provides no help for this jury in its limited role. It

18   has no financial information and does not reference any product or IP at issue.

19          Apple's strategy is two-fold transparent:   *first*, it wants to use Ms. Davis as the vehicle to

20   show the jury a laundry list of highly inflammatory documents in the hopes that the jury is

21   motivated to punish Samsung, rather than merely compensate Apple.   *Second*, it wants to use Ms.

22   Davis as the vehicle to show the jury documents that make no mention of any of the specific

23   patented features or Samsung products at issue, but rather generic ideas such as "design" and "user

24   interface," in the hopes that the jury conflates Apple's narrow patents with much broader, and

25   hence more valuable, concepts.   Allowing Apple to pursue this strategy would severely prejudice

26   Samsung and has the significant potential to unfairly inflate the damages award.

27

28

1

2

(g)     Apple's Brief Confirms That It Intends to Have Ms. Davis Offer
Opinions That Are Irrelevant As a Matter of Law

3         It is now evident from Apple's brief that it intends to have Ms. Davis offer a number of

4   opinions that are simply irrelevant to the sole issue in this trial – damages.   Ms. Davis apparently

5   intends to testify that "Apple's patented design elements and user interface technology were

6   attractive to consumers."   Dkt. 2522 at 18:13-14.   This is irrelevant.   The issue is not whether

7   the patented features were "attractive," but whether they drove demand.   *See Apple Inc.*, 695 F.3d

8   at 1376 (Federal Circuit holding that demand, in the injunction context, "is not satisfied simply

9   because removing an allegedly infringing component would leave a particular feature, application,

10  or device less valued or inoperable.").

11        Ms. Davis also apparently intends to testify to "public acclaim for" the iPhone and iPad.

12  Dkt. 2522 at 19:17.   This too is irrelevant.   The question is not whether design critics or

13  technology bloggers thought the iPhone and iPad were good products.   *See Apple Inc.*, 695 F.3d

14  at 1377 (Federal Circuit observing that one bloggers "individual belief" that a feature is "important

15  to consumers" "does not suffice to establish" demand for a patented feature in the injunction

16  context.")   The pertinent question is whether consumers bought the Samsung products at issue in

17  the new trial *because of* the specific patented features at issue.   "[N]ews articles and magazine

18  articles" (Dkt. 2522 at 19:20-21), "television and print advertisements" (*id.* at 219:21-22),

19  "professional awards for design" (*id.* at 20:6-7), and museum exhibitions (*id.* at 20:7-8) about the

20  iPhone and iPad say nothing about whether consumers actually bought any Samsung devices

21  because of the specific patented features at issue.

22        Finally, Apple seems intent on using Ms. Davis to tell the jury about "the economic and

23  corporate investment in time and effort devoted to creating the patented features at issue."   *Id.* at

24  20:16-17.   Again, this has nothing to do with showing consumer demand, but is merely an effort

25  to paint Apple in a sympathetic light.   Whether Apple spent one week, one year, or one decade

26  developing the patented features has nothing to do with whether consumers actually bought any

27  Samsung products at issue because of the patented features at issue.   Ms. Davis should not be

28

1   permitted to testify to subjects that have nothing to do with consumer demand, and are merely an

2   attempt to confuse the issues.

### 2.    John Hauser

4           Apple seeks to have John Hauser testify regarding the surveys that he conducted that it

5   alleges show that Samsung customers would pay more for devices that contain the inventions that

6   Apple claims in its utility patents.   However, Mr. Hauser's surveys do not test the proper scope of

7   Apple's patents and his testimony should not be allowed.   Mr. Hauser's surveys were conducted

8   prior to Apple narrowing the scope of its claims for the '381 and '915 patents during

9   reexamination.   (See Samsung's Motion in Limine #2, Dkt. 2406 at 4-6.)   To avoid the prior art

10  during the '381 reexamination, Apple presented a brand new narrow interpretation of Claim 19

11  during reexam by disclaiming any subject matter where the specific purpose or cause of the

12  computer code that generates the snap back effect is anything other than edge alignment.   (Dkt.

13  2338-3 at 5-7.)   Similarly, during the reexamination of the '915 patent, Apple argued that the

14  Nomura reference does not meet the distinguishing limitation of the claims because "one of

15  ordinary skill would understand the phrase 'two or more input points' to essentially mean '2 –

16  infinite,' which defines a set of input points, all of which would be interpreted as a gesture

17  operation." (Dkt. 2507 at 1.)   In other words, according to Apple, the scope of the '915 patent is

18  so narrow that so long as three input points, four input points, five input points, or any arbitrarily

19  large number of input points causes a scrolling operation instead of a gesture operation, there

20  would be no infringement.   *Id*.

21          Dr. Hauser's surveys therefore artificially inflate the value that the survey respondents

22  would give to any individual patented feature, as he tested features that are broader than what

23  Apple claims in its patents.   Because of this, there is no way to determine how much value (if any)

24  the survey respondents would credit to the current narrowed scope of these patent

25  claims.   Additionally, allowing Dr. Hauser's testimony would be prejudicial to Samsung as it

26  could confuse the jury by suggesingt that the scope of Apple's '381 and '915 patents are broader

27  than what Apple currently claims.

28

### 3.     Ravin Balakrishnan

Apple is seeking to transform their '381 patent infringement and validity technical expert, Dr. Balakrishnan, into a consumer demand expert.  Dr. Balakrishnan is an expert in computer science, and is not qualified to testify on topics such as "the importance and value of the '381 feature to the iPhone user experience" or the "reaction of consumers to the specific patented features."  (Apple's Brief at 26.)  Dr. Balakrishnan is not qualified in and has no experience in consumer demand for a commercial product or feature, the valuation of patented features, or surveys, popularity, reaction to, or " user experience" feature.  Moreover, Apple has only offered Dr. Balakrishnan as a technical expert, and never purported to offer him as an expert in consumer demand. (*See* Dkt 2486-2 at p. 6).  Accordingly, Dr. Balakrishnan's testimony should be excluded because he lacks qualifications in the non-technical area of consumer demand.   *See* F.R.E. 702; *Abaxis v. Cepheid*, Case No. 10-CV-02849-LHK, Dkt. No. 196 (N.D. Cal July 19, 2012) (excluding non-technical testimony in sales, marketing or consumer preferences and demand where the technical expert was only qualified in pharmacy); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006) (testimony of ergonomics expert on the subject of invalidity was excluded because the expert not one of ordinary skill in the art at the time of the invention).

In addition, Dr. Balakrishnan's proffered testimony on consumer demand does not link any alleged consumer demand to the bounce feature of the '381 patent.  Instead, Dr. Balakrishnan's proffered testimony would somehow connect the bounce feature to the "user experience." (Apple's Brief at 25-26.)  This Court and the Federal Circuit have already found that such testimony is insufficient evidence to prove that a patented feature drives consumer demand. (Dkt. 2196 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012.))  It would be improper to allow Dr. Balakrishnan, an unqualified expert, to render opinion on consumer demand that can have no relevance to the specific patented features at issue.

Even if Apple could offer evidence sufficient to prove the bounce feature drives demand, none of the proffered testimony is relevant because it is not tied to the asserted claim of the '381 patent.  Dr. Balakrishnan's proffered testimony identifies and relates only to the accused "bounceback" feature, as opposed to the narrowly claimed implementation of the

1   feature.   Because the proffered testimony does not capture the specific claimed feature, the jury

2   will be confused into believing the claim covers more than it does.

3          Dr. Balakrishnan should not be permitted to testify about PX46 and PX57.   During the

4   first trial, the Court found that PX46 was only relevant to willful infringement. (Dkt. 1596 at

5   5).   Willful infringement is not at issue in this trial, and therefore, PX46 is irrelevant to the issues

6   at this trial.   PX46 and PX57, which is similar to PX46, have no probative value and are

7   extremely prejudicial.   FRE 403.   Neither the exhibits nor Dr. Balakrishnan's analysis shows that

8   Samsung intended to or did create a bounce effect that embodies the '381patent.   Apple's intent in

9   offering these exhibits could only be to confuse the jury into believing that any bounceback

10   feature whether or not it is tied to the '381 patent somehow drives consumer demand – something

11   Dr. Balakrishnan is not qualified to testify about.

12          Apple also purports to offer *new* testimony that is not relevant to consumer demand.   For

13   example, Dr. Balakrishnan's opinions regarding "descriptions of the desert fog and frozen screen

14   problems and how the patented functionality solved them" may have been relevant to his

15   infringement analysis, but have no relevance to consumer demand.   Apple has no evidence that

16   consumers demanded a solution to these alleged problems, nor does Apple have any evidence that

17   Samsung's implementation is the only solution that would fulfill that alleged demand.[3]

18                **4.     Karan Singh**

19          Like Dr. Balakrishnan, Apple's infringement and validity expert for the '163 and '915

20   patents, Dr. Singh is not a consumer demand expert.   Dr. Singh is not qualified in and has no

21   expertise in consumer demand for a feature valuation of patents features, or surveys, popularity,

22   reaction to, or "experience" of a user for a commercial product or feature.   Dr. Singh testified at

23   his deposition that he never saw a single user using the accused '163 functionality, so he can't

24   possibly testify to the user's experience of a feature he's never seen used. (Singh Dep. Tr., 134:4-

25   4-18).   Like Dr. Balakrishnan, Apple offered Dr. Singh as a technical expert and not one in

26   consumer demand. (*See* Dkt. No. 2486-2 at p. 9.)   Accordingly, Dr. Singh's testimony should be

27   excluded because he lacks the qualifications to testify as to consumer demand, despite being well-

28          [3]     In fact, Samsung has designed around claim 18 of the '381 patent.

credentialed in other areas. *See* F.R.E. 702; *Abaxis v. Cephid*, Case No. 10-CV-02849-LHK, Dkt.

No. 196 (N.D. Cal July 19, 2012) (excluding non-technical testimony in sales, marketing or

consumer preferences and demand where the technical expert was only qualified in pharmacy);

*Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006).

Like the proffered testimony for the '381 patent, Apple did not identify any legitimate

basis for '163 and '915 consumer demand in Dr. Singh's testimony.   Apple only identifies generic

reasons for demand that can relate to any features such as the '163 patent being "a wonderful

design" and is "useful and powerful." (Apple brief at 27.)   For the '915 patent, Apple purports to

offer testimony that it is "highly intuitive," that products without the '915 patent are "less

useable," "inconvenient," and "less satisfying."   All of these are generic features that have already

been found insufficient to prove a patented feature drives demand. (Dkt. 2196 at 8-11 (citing

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012.)))

Even if Apple can make a legitimate argument for consumer demand, the identified

testimony is not relevant to the '163 and '915 patents.   The '163 patent claims a specific

algorithm that implements functionality to tap to zoom and center, *and then* tap to recenter.

(*See* '163 patent claim 50.)   A solitary "tap to zoom" does not infringe claim 50 of the '163 patent.

Apple's entire '163 patent related proffer excludes the second required gesture.   Exhibit PX38

does not mention or discuss the the second gesture that is required in '163 claim 50.   PX44 does

not mention another key element of the claim – recentering in a structured electronic document.

The same is true for the proffered '915 testimony.   Claim 8 of the '915 patent requires

specific instructions for distinguishing between a single input point, which causes a scroll

operation, from two or more input points, which must always cause a gesture operation.   Apple

repeatedly took this position during trial.   *See* Trial Tr. 1822:22-1826:22 (describing this as the

"quintessential test," a "very important test," and an "all-important test"); 3624:15-18

(distinguishing the DiamondTouch reference because the DiamondTouch reference included

three-finger scrolling).   Claim 8 of the '915 patent also requires instructions and object oriented

programming to implement the accused functionality.   The proffered testimony excludes these

important claim limitations.   Apple recently narrowed claim 8 by telling the Patent and

1   Trademark Office that the claim was patentable because the prior art did not disclose limitations

2   such as "creating an event object, " (Dkt. 2349-1 at Final Office Action, p. 8) or "distinguishing

3   between a single input point ... that is interpreted as the scroll operation and two or more input

4   points ... that are interpreted as the gesture operation" (Dkt. 2470-2 at Apple's Response to Initial

5   Office Action, p.4, 7-8, 11-12).[4]   Apple's proffer does not mention the "event object," or the other

6   requirements of the claim.   Permitting Dr. Singh to proffer such testimony will be highly

7   prejudicial since the jury will be mislead into believing the '163 and '915 patents have a broader

8   scope.

9           **5.       Phil Schiller**

10          Nothing in Mr. Schiller's prior or proposed testimony is probative of the availablity of

11  acceptable non-infringing alternatives for lost profits analysis or the value of the specific patents-

12  in-suit for reasonable royalty.   To begin, Apple did not assert a design patent monopolizing

13  "attractive appearance and design" or "ease of use" in a smartphone.   (Dkt. 2524 at 31.)   Even if

14  the jury believes Mr. Schiller's testimony that consumer's put a high value on these general

15  concepts in making purchasing decisions, this reveals nothing about whether consumers would

16  accept alternatives that did not practice the specific patents at issue here.   Thus, testimony from

17  Mr. Schiller that "[c]ustomers value beautiful products and so design contributes to the success of

18  products" (Dkt. 2524 at 31:2-3) is not probative of the disputed damages factors at issue here

19  where the patents are not for "beautiful products."   That is, even if consumers value such things

20  as beauty in buying a smartphone, Mr. Schiller's testimony offers no help to the jury in deciding

21  whether other beautiful designs were available that do not infringe the specific features covered by

22  Apple's design patents-in-suit.[5]   Similarly, testimony by Mr. Schiller that "ease of use" has

23

24

25

26  _____

27      [4]   The Patent and Trademark Office rejected these arguments, and issued a final office action
    rejecting all claims, including claim 8 as unpatentable.

28      [5]   In fact, any testimony by Mr. Schiller that there are no acceptable design alternatives to the
    iPhone would be in direct contradiction with Apple's own design expert witnesses who claimed at

1   significance to consumers says nothing about whether Apple's utility patents-in-suit are the only

2   way to create a product that is easy to use.

3        None of the proposed testimony from Mr. Schiller, or Apple's other witnesses, forecloses

4   the possibility that non-infringing alternatives could also exist for products with attractive designs

5   and that are easy to use.   Apple's attempt to seek lost profits through this testimony is

6   inappropriate.   Similarly, Apple should not be allowed to seek a reasonable royalty on the

7

8   privilege of making an attractive or easy to use mobile device.

9        Relatedly, Mr. Schiller's previous testimony of what supposedly makes the iPhone designs

10  "distinctive" and "unique" (Dkt. 2524 at 30) is not probative of the value of the design patents-in-

11  suit because his descriptions would have applied just as readily to other designs Apple said were

12  distinguishable from the patents at issue.   For example, the appearance of rounded corners,

13  rectangular shape, full glass face with black screen, and black area around the screen that Mr.

14  Schiller mentioned about the iPhone (Dkt. 2524 at 25-27) would encompass at least the F700 and

15  LG Prada phones that Apple's design expert Peter Bressler opined were *not* covered by the D'677

16

17  patent (Trial Tr. 1185:17-1186:8 (F700); 1340:22-1341:1 (LG Prada)).[6]   Likewise, the colorful

18  icons, applications, squares, and box along the bottom of the screen that Mr. Schiller mentioned

19  (Dkt. 2524 at 27-28) were also features of GUI designs that Apple claimed to the Court and the

20  jury were non-infringing alternatives.   (Trial Tr. 1399:22-1401.01; Dkt. 1137-1 at 16-21.)

21  Because Mr. Schiller's descriptions of the supposedly distinctive designs of the iPhone encompass

22  non-infringing alternatives, Mr. Schiller's testimony on this topic is not going to be useful in

23

24

25  the last trial that various acceptable design alternatives *did* exist for the designs at issue.   (Trial Tr.
    1092:2-1094:18 & PX10 (Bressler); Trial Tr. 1399:22-1401.01, PX158A & PDX14A.30 (Kare).)

26      [6]   Apple even alleged in its amended complaint that the F700 copied the iPhone, but took the
    opposite position that it was a non-infringing alternative when it realized the date of its creation .

27  (Dkt. 75 (Apple's Amended Complaint) at ¶ 80 (alleging that "Samsung released the Samsung
    F700 in November 2007 — copying the clean flat clear surface of the Apple iPhone Trade Dress

28  and the Apple iPhone/iPhone 3G/iPhone 4 Trade Dress.").)

-21-

1   helping the jury understand the value of design patents.   As Samsung has argued elsewhere,

2   Apple should not be allowed to argue a narrow scope for its patents at the liability trial to avoid

3   invalidity and a broad scope at the damages trial to increase the perceived value of the patents.

4   (*See, e.g.*, Dkt. 2468 at 1-3 (Samsung's Opposition to Apple's Motion *in Limine* to Preclude

5   References to "Prior Art").)   To the extent Apple seeks to do this through Mr. Schiller under the

6   guise of consumer demand, Samsung reiterates and incorporates its previous arguments here by

7

8   reference.

9       Apple also seeks to introduce Mr. Schiller's testimony about the iPhone's supposed

10   distinctiveness to show that Samsung's alleged copying has caused Apple to suffer from a lack of

11   product distinctiveness that Mr. Schiller says causes consumer confusion.   (*E.g.*, Dkt. 2524 at

12   31:28-32:16.)   Such testimony is irrelevant and unduly prejudicial as it either impermissibly

13   attempts to retread trade dress dilution findings for phones not at issue here and for which Apple

14   has already been awarded damages, or it seeks to reargue dilution and infringement allegations

15   that Apple lost at the first trial.   (Dkt. 1931 at 11-15 (Amended Verdict Form).)

16       Specific objections to the exhibits listed for Mr. Schiller are included in the section below

17   responding to Apple's proffer for its exhibits.   Those objections are also incorporated here by

18   reference.   As a general matter, the exhibits listed for Mr. Schiller in Apple's brief (Dkt. 2524 at

19   29-33) do not relate to consumer demand for the specific features at issue.   They are selective and

20   incomplete excerpts from surveys that include no information about demand for the specific

21   features-in-suit (PX143, PX144, PX145, PX146), advertisements made by Apple for its own

22   products that do not reveal what consumers demanded (PX127, PX128), bare sales data (PX15),

23   photos of Apple devices taken for trial (PX8), and general comments by third party journalists that

24   are subject to limiting instructions that they are hearsay (*see* PX17, PX133, PX134, PX135,

25   PX142; *see also* Dkt. 1889, Ex. A at 1, 4).

26

27

28

6.      **Greg Joswiak**

Apple's proposed testimony for Mr. Joswiak is irrelevant to demand for the patented features or their value, and in many instances is even at odds with what Mr. Joswiak testified to during his deposition.

First, Apple admits that Mr. Joswiak was its designated 30(b)(6) witness for demand of the accused products and "analysis, studies, data and commentary" on marketing and advertising (Dkt 2524 at 34), and that Mr. Joswiak receives and uses the same survey information that Mr. Schiller discussed at trial.   (Dkt. 2524 at 34:11-13.)   For the same reasons explained in the section above on Mr. Schiller, those surveys fail to give any information about demand for the specific features at issue and are therefore not probative of the value of those specific features or in determining whether consumers would accept non-infringing alternatives without those features.   (*See, supra*, Schiller section (II)(A)(5).)   Additionally, in deposition, Mr. Joswiak admitted that Apple's own survey results came to conclusions contrary to what Mr. Schiller testified to, showing, for example, that fast internet access was a chief consumer need, with attractive design at the bottom of the list. (Alden Decl. Ex. 2 at 366:8-21.)

Apple also proposes to use Mr. Joswiak to testify about how Apple supposedly uses the features in suit when promoting its products, but Mr. Joswiak noted a number of times in deposition that when a new product is launched, his goal is to present it to consumers not by emphasizing the same design and utility features each time, but by trying to highlight and explain what makes the device new.   (*See, e.g.*, *id.* at 286:9-12 ("I'm trying mostly to explain new features, when we create a new product. What makes it new and different than the product that preceded it.")   Where there is no change in the design, Mr. Joswiak does not highlight that fact, instead he has to explain it away.   (*Id.* at 286:6-8 ("[I]f it isn't a new design, somewhere up front, I have to explain why it's not.").)   In other words, Mr. Joswiak apparently seeks to meet

consumer demand not by emphasizing the same design or utility functions each time, but by pointing out new features that make the product different than the last generation.   And these features do not match the asserted patents.   For example, for design, Mr. Joswiak emphasized various times that thinness is a key driver of interest.   (*See, e.g.*, *id.* at 290:21-291:1 ("thinness is important because we think thinner products look better.   You know, and there's an excitement that goes with that."); *id.* at 150:12-14 ("[O]ur goal is to have amazing products, and thinness is part of it.   We like when we can be the thinnest.").)   Neither design patent covers this feature.

Apple also proposes Mr. Joswiak will testify about the use of various product features in advertising, but he admitted knowing of no reports measuring consumer reactions to those ads (Alden Decl. Ex. 2 at 297:14-298:7), so any link between what's in the ads and the effect of those ads on consumer demand for particular features is admittedly missing for Mr. Joswiak.

Apple also claims Mr. Joswiak will discuss how Apple seeks to distinguish its products in the marketplace from competitor offerings, supposedly by reference to product design and ease of use.   (Dkt 2524 at 34:13-14.)   In his deposition, however, Mr. Joswiak made clear that Apple's efforts in relation to competitors was to try and outdo them in all categories, including things like browser speed (Alden Decl. Ex. 2 at 141:11-142:1), thickness of the design (*id.* at 142:2-9), sound quality (*id.* at 142:11-143:1), faster transfer speeds on the network (*id.* at 152:8-153:19), lower frequency of call drops (*id.*), and extended battery life (*id.* at 181:9-182:12), none of which are has anything to do with the patented features.

Apple also claims Mr. Joswiak will discuss how Samsung's Galaxy line of products affected Apple's sales and market share.   (Dkt. 2524 at 34-35.)   At deposition, however, Mr. Joswiak pled ignorance on these topics, admitting he had no data to show that any affect on Apple sales was attributable to Samsung or that Samsung's customers would otherwise have gone to Apple.   (*See, e.g.*, Alden Decl. Ex. 2 at 473:4-7 ("Q. But there is no determinative way to say that

1    Samsung is selling to consumers that otherwise would have bought Apple products? A. As I stated,

2    I don't have data to that effect."); *id.* at 134:16-19 ("Q. Apple hasn't done a study showing

3    whether Samsung's gain in the market came from Apple versus its other competitors? A. Not one

4    that I'm aware of at least."); *see also id.* at 132:16-133:5.)   He also did not have any data to show

5    whether Apple's consumer retention rates had been affected by Samsung.   (*Id.* at 227:5-14.)   And

6    Mr. Joswiak admitted that any testimony he gave attributing sales to Samsung that would

7    otherwise have gone to Apple would be intuitive guesswork.   (*Id.* at 127:6-128:7.)

8

9         Apple's brief also says that Mr. Joswiak has knowledge of the supposed "erosion" of

10   Apple's "distinctive features."   (Dkt. 2524 at 34.)   At deposition, however, Mr. Joswiak

11   repeatedly admitted he had no data showing dilution or loss of distinctiveness (Alden Decl. Ex. 2

12   at 263:25-264:10; 274:22-275:22 ("Is there any evidence of loss of distinctiveness on behalf of

13   Apple's customers, of Apple products? A. Again, marketing didn't commission a study to that

14   effect, so anything I would offer you would be my intuition as a marketing professional."), or

15   showing a loss of customers resulting from the purported loss of distinctiveness (*id.* at 275:9-15

16   ("we have no studies that we've commissioned, one way or the other, that would offer a pro or con

17   to that position.")).   Mr. Joswiak also admitted Apple had no data showing any consumers

18   confusing a Samsung phone for an Apple phone.   (*Id.* at 236:22-237:6 ("Q. Is Apple aware of any

19   instances of consumers confusing a Samsung phone for an Apple phone? A. So actually thinking

20   that the Samsung was an Apple; is that the form of the question? Q. Correct. A. I don't have any

21   data to that effect.").)   Or that consumers buying Samsung phones thought they looked similar to

22   an Apple phone.   (*Id.* at 240:18-23.)   The same goes for Samsung's icon designs.   (*Id.* at 257:2-

23   9.)

24

25        In sum, Apple offers no specific testimony from Mr. Joswiak to explain how he will

26   address consumer demand for the specific features and designs at issue.   (Dkt. 2524 at 35.)

27

28

Instead, Apple relies only on conclusory assertions that Mr. Joswiak will testify to "the importance of ease of use [and] design" generally, and that such testimony will somehow be relevant to the much more granular questions of whether there is demand for the specific patents-in-suit, about which Mr. Joswiak will impliedly not be testifying.   (Dkt. 2524 at 35:7-13.)

Specific objections to the exhibits alluded to for Mr. Joswiak are included in the section below responding to Apple's proffer for its exhibits.   Those objections are also incorporated here by reference.

### 7.    Boris Teksler

Apple's claim that its purported unwillingness or reluctance to license its "unique user experience I.P." is evidence of consumer demand rests entirely on a new theory that was not disclosed in either of its experts' reports.   Mr. Musika's expert report did not rely on Apple's purported unwillingness to license the patents-in-suit as evidence of consumer demand.   Likewise, Ms. Davis relies on Mr. Teksler's testimony and her discussions with Mr. Teksler solely in analyzing the comparability of Apple's past licenses and Apple's licensing policies for purposes of *Georgia-Pacific* factor 4—not in analyzing consumer demand.   Davis Rpt. ¶¶ 186-189, 305; *see also id.* at   ¶ 254 (stating that Mr. Teksler's trial testimony "confirms [her] opinions regarding the hypothetical negotiation between the parties and the factors that would be considered in it, including at least the discussion regarding factors 1 to 5.").   Neither Mr. Musika or Ms. Davis included PX52--the subject of Mr. Teksler's proposed testimony--among the documents that support their opinions regarding demand.   *See* Musika Supp. Rpt. Ex. 24-S, Ex. 25-S; Davis Rpt. Ex. 24-PT, Ex. 25-PT.[7]

Apple's argument that Teksler's testimony is relevant to demand also fails on the merits. Contrary to Apple's claim, the fact that Apple believes that the patents-in-suit are part of a group of "unique user experience I.P. " that collectively contributes to Apple's "brand identity" does not show consumer demand for the patented features.   First, Apple's "brand identity" is completely irrelevant to the value of the patents-in-suit.   Second, Apple's subjective beliefs regarding its

---

[7]    In fact, Mr. Musika did not cite PX52 *anywhere* in his expert report.

1   brand identity do not show demand--as the Federal Circuit has recognized, the "relevant inquiry"

2   for purposes of analyzing consumer purchasing decisions "focuses on the *objective* reasons as to

3   why the patentee lost sales," not any subjective belief held by Apple or Samsung.   *Apple, Inc. v.*

4   *Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1327-28 (Fed. Cir. 2012).   Finally, Teksler himself

5   admitted that Apple's "unique user experience I.P." includes hundreds--if not thousands--of

6   intellectual property rights that are not at issue in the new trial, including trademarks, trade dress,

7   "*all*" of Apple's design patents, and utility patents that "deal with user interface elements."   Trial

8   Tr. at 1956:8-13.   In any event, Mr. Teksler himself confirmed that Apple licenses the technology

9   and designs that Apple considers a "unique user experience I.P."   *Id.* at 1957: 3-9; 1972:18-24.

10      Apple's statement that Mr. Teksler's testimony is only relevant to demand "in combination

11  with other evidence" amounts to a concession that Mr. Teksler's testimony is tangential, at best, to

12  disputed issues regarding consumer demand.   Apple makes no attempt to identify the "other

13  evidence" that would link Teksler's testimony with demand, and is silent as to whether this "other

14  evidence" will include the prejudicial allegations regarding "copycat products" that pervaded

15  Teksler's testimony in the first trial.   *See, e.g., id.* at 1956:23-1957:1, 1957:19-21, 1960:18-20.

16      Regardless of whether Apple is willing to license its purported "unique user experience

17  I.P.," there is no question that Apple *has* shown a willingness to license the patents-in-suit and

18  other similar utility and design patents.   For example, Apple licensed the '381, '915 and '163

19  patents to IBM and entered into a license with Microsoft as to all of its design patents filed prior to

20  August 2002.   *See* Dkt. No. 2197 at 17 .   And prior to filing this suit, Apple offered Samsung a

21  "royalty-bearing license" to manufacture the products that Apple said "embrace[d] and imitate[d]

22  Apple's iPhone archetype," including "Android-based full touch screen devices" that Apple now

23  seeks to enjoin. DX 586 at 17; *see* Trial Tr. 1971:4-1972:17 (Teksler admitting Apple offered to

24  "provide Samsung with a number of options for obtaining a cost-effective license to our patent

25  portfolio," without carving out any patents that it was refusing to license).

**8.    Mark Buckley**

27      Apple misrepresents the scope of Mr. Buckley's Rule 30(b)(6) designation.   The

28  deposition topics set forth in Apple's Brief are topics 2-7 and 13-18 of Samsung's Amended First

30(b)(6) Deposition Notice (*see* Alden Decl. Ex. 3).   Apple strenuously objected to the breadth of these topics and made clear that Mr. Buckley was not designated on the full scope of these topics:

> "Mark Buckley is designated to testify about Apple financial information that is relevant to this lawsuit. He will address Apple's sales, costs, and profits relating to the iPhone, iPad and iPod touch and Apple's capacity to make those products. These topics relate to topics 2-7 and 13-18 from Samsung's "Damages Topics" notice and topics 7-8 from Samsung's "Design and Trade Dress" notice."

Alden Decl. Ex. 4, letter from J. Bartlett to D. Hutnyan, dated 2/11/2012; *see also* Ex. 5, Buckley Dep. Tr. at 16:1-9.

During Mr. Buckley's deposition, Apple's counsel reiterated that Mr. Buckley's designation was strictly limited to financial information.   *See id.* at 13:20-14:13 (stating that the scope of Apple's designation of Mr. Buckley was "subject to objections and certain correspondence that have gone on between the parties.")   With respect to topic 5 in particular— the only designated topic that related to demand—Apple's counsel specifically stated that Mr. Buckley was ***not*** designated to testify regarding market demand:

> "And as to [topic] 5, the -- he will be testifying about information on revenue on behalf of Apple, and that could be used as a part of the calculation of market share, but he's -- or more advanced to market demand -- but he's not specifically being identified here to testify regarding market share as compared to other parties."

*Id.* at 15:4-10.   Apple cannot now offer Mr. Bucley's testimony regarding market demand, having expressly limited Mr. Buckley's designation to exclude that topic.

In any event, Mr. Buckley's proposed testimony regarding "Apple's sales, selling prices, revenues and profitability" is not relevant to any disputed issue regarding consumer demand.   As Samsung has repeatedly made clear, there is no dispute that there is demand for Apple's patented products.   The only disputed issue regarding consumer demand is whether there is demand for the patented features.   Apple offers no basis to link Mr. Buckley's proposed testimony to consumer demand for the patented features.

### 9.    BJ Watrous

Apple's claim that Mr. Watrous "can testify to the same subject matter regarding demand as . . . Mr. Teksler" (Br. at 37) ignores the fact that Mr. Watrous *did not even begin working for*

*Apple until June 2011*—more than a year after Apple's final meeting with Samsung prior to filing suit.[8]  Mr. Watrous therefore lacks any personal knowledge that is relevant to the only subject for which he is disclosed, Apple's "licensing negotiations with Samsung." Apple has argued that Mr. Watrous is "familiar with Apple's licensing negotiations with Samsung and the relevant documents regarding the same," but second-hand familiarity is insufficient to render admissible testimony. *See* Fed. R. Evid. 602.

Furthermore, the Court has already rejected Apple's claim that "the patents in suit represent unique intellectual property, which Apple seeks to retain for itself" (*see* Br. at 37).   As the Court held in denying Apple's motion for permanent injunction:

> Apple's past licensing behavior does not demonstrate that it treats either these specific patents, or Samsung as a licensing partner, as somehow off limits. Specifically, Apple offered Samsung a license to some of Apple's patents. Apple has also licensed the precise utility patents at issue here, in agreements with Nokia ('381 patent), IBM ('915 patent; '163 patent), and HTC ('381 patent; '915 patent; '163 patent). Further, when asked if Apple ever licenses its "unique user experience IP," Apple's top licensing executive, Boris Teksler, said, "Certainly over time we have."   The fact that Apple is now expressing an unwillingness to license these properties does not change the fact that Apple has, in the past, felt that money was a fair trade for the right to practice its patents, and that Apple has in the past been willing to extend license offers to Samsung.

Dkt. No. 2197 at 17 (internal citations omitted).   The Court's ruling precludes Apple from using Mr. Watrous as a vehicle for offering contrary testimony.

## B.  Designated Deposition Testimony

### 1.  Timothy Benner

Apple misstates Mr. Benner's testimony to fit it within its argument about demand.   Far from testifying that various surveys indicated that "physical design is a *significant* factor in the appeal of smartphones" (Dkt. 2524 at 38 (emphasis added)),   Mr. Benner actually testified that he could *not* make a blanket statement about whether design as "an important factor in consumer

---

[8]  Mr. Watrous's testimony is cumulative insofar as it is substantively the same as Mr. Teksler's testimony.   Because Mr. Watrous's proposed testimony concerns the same subject matter as Mr. Teksler's, Samsung incorporates by reference its objections to Mr. Teksler's proposed testimony.

1    purchasing decisions."   (Dkt. 2520-11 (Benner Dep. Tr.) at 30:13-25; *see also id.* ("I cannot rate

2    the relative importance across all of consumers.").)     At most, Mr. Benner said that design can be

3    *a* factor in purchasing decisions.   (*Id.*)   And while Apple lists 16 pages of Mr. Benner's

4    deposition as supposedly relevant to demand, 10 of those pages involve questions directed at

5    documents that are not on Apple's new trial exhibit list.   (*See id.* at 45, 56-57, 64, 73-74, 112-

6    115.)   On this basis alone, Apple cannot seek to admit the majority of Mr. Benner's designated

7    deposition testimony.   Apple also failed to provide the Court with a highlighted transcript

8    showing the specific lines of testimony on each page that it actually designated for the first trial.

9    The designated deposition questions for Mr. Benner relate only to design of smartphones in

10   general or to the presence of a touch screen, not the specific designs of any products, let alone the

11   designs of the specific patents-at-issue.   (Alden Decl. Ex. 6 (highlighted Benner transcript

12   showing designated portions of pages cited in Apple's brief); Dkt. 1294-1 at 3 (listing Apple's

13   designations for Mr. Benner).)   In sum, nothing that Apple designated relates to specific features

14   of Apple's patents.   Nor does it include reference to Apple's "intuitive user interface," as Apple

15   wrongly states in its brief.   (Dkt. 2524 at 38.)

16

17

18            Specific objections to the exhibits alluded to for Mr. Benner are also included in the

19   section below responding to Apple's proffer for its exhibits.   Those objections are also

20   incorporated here by reference.

21

22                    **2.        Dong Hoon Chang**

23            Apple did not previously designate pages 61-63, 70-72, 76-77, and 96-103 from Mr.

24   Chang's deposition, and it is precluded from doing so at this stage.   In any event, this testimony is

25   not relevant to demand.    Mr. Chang's testimony regarding PX34, SAMNDCA00203092 (Chang

26   Ex. 2149, a document which does not appear on Apple's exhibit list), and PX37 was that he had

27

28

1  never seen these documents before.[9]  *See* Sabri Decl. Ex. 12 at 61-63, 68-70, 96-97.   He further

2  testified that PX36 did not reflect any kind of consensus within Samsung, and that he personally

3  rejected each of the statements in PX36 that Apple now claims is evidence of demand.  *See id.* at

4  97-98, 100, 103-104.

5         Mr. Chang's testimony regarding PX40 undercuts Apple's assertion that this document is

6  relevant evidence of consumer demand.   Mr. Chang characterized the "crisis of design" comment

7  attributed to President J.K. Shin as follows: "He says, let's do better. Come on.   This is an

8  emergency. We're in a crisis mode . . . the overall context being, hey, guys, let's do a great job."

9  *Id.* at 113-115.   Mr. Chang further testified that the term "'crisis' as a word is something that we

10 hear so often" within Samsung.  *Id.* at 115-116.   He denied that the statements attributed to

11 President Shin were a directive to "do things the way some other particular phone does things."

12 *Id.* at 121-122.

13        Similarly, Mr. Chang testified that PX194—an email attributing to CEO Gee Sung Choi a

14 comment regarding "the wisdom of the iPhone"—merely reflected a message of "come up with

15 the best thing out there.   Up the ante in comparison to what we've got right now."   *Id.* at 124; *see*

16 *also id.* at 125 ("when you look at the overall context of this, they're not saying, let us come up

17 with an iPhone-like UX; they're saying, let's come up with a great UX.   In fact the way in which

18 we mull over things is mostly in terms of how we can come up with a UX that's different from the

19 iPhone UX.")      Mr. Chang further testified that these comments reflected the beliefs of the

20 email's author, not CEO Choi.  *Id.* at 125.   Furthermore, PX194 comments solely on the

21 iPhone's "UX," not any of the patented features, and relates to a Samsung product (Lismore) that

22 Apple has never accused of infringing the patents-in-suit.

23        Mr. Chang offered no testimony regarding PX44 that is relevant to consumer demand.

24 Instead, he repeatedly stated that this document was prepared by a different group and that he did

25 not have any relevant knowledge regarding its contents.   See id. at 128; see also id. at 130 ("this is

_____

26   [9]   Although Apple claims that Mr. Chang testified regarding PX36 and PX37, the only
27 document discussed at pages 96-104 of Mr. Chang's deposition is PX37; Mr. Chang was not
   questioned regarding PX36.   Moreover, the only product feature discussed in PX37 that is
28 identified in Apple's brief—"screen-centric design"—is by no means a patented feature.

1   not by our department.   It's not by me.   I don't know as to the basis on which this written as to

2   what the intent may have been.   And here I see what it reads, but I don't agree whatsoever").   He

3   also disagreed with any suggestion that Samsung changed its icons to more closely resemble the

4   iPhone, and that the features described in PX44 were done "well before the iPhone," and testified

5   that Samsung did not in fact implement any of the recommended changes to Samsung's icons.   *Id.*

6   at 130-131.

7               **3.      Gee Sung Choi**

8               Apple's claim that Mr. Choi "testified regarding whether . . . the iPhone was becoming the

9   '*de facto* standard' in the smartphone market" (Br. at 39) grossly mischaracterizes Mr. Choi's

10  testimony.   Mr. Choi never said anything to this effect.   The statement quoted by Apple appears

11  in PX9, a document which Mr. Choi testified he had never seen before.   Furthermore, the

12  document discussed at pages 38-40 of Mr. Choi's deposition transcript (PX9) does not state that

13  the ***iPhone*** was a "de facto standard."   Rather, PX9 states that the "iPhone's touch ***C-type***

14  ***method***" was becoming the de facto standard" (*see* PX9.1), a reference to the iPhone's *capacitive*

15  *touchscreen*—a feature that is completely irrelevant to the patents-in-suit.

16              Mr. Choi's testimony "regarding whether Samsung decided in 2009 to make the iPhone a

17  standard for comparison" (Br. at 39) concerned a document (deposition Ex. 2321,

18  SAMNDCA10907803) that neither Mr. Musika nor Ms. Davis cited as evidence of consumer

19  demand.   The only testimony Mr. Choi offered regarding this document was that he had never

20  seen it before, could not discern whether the document referred to him, or even if he had attended

21  the meeting discussed in the document.   *See* Sabri Decl. Ex. 13 at 43.

22              Finally, while PX194 attributes to Mr. Choi the statement that the iPhone's "UX" has "set

23  the standard in the industry," Mr. Choi testified that he did not recall making this statement, and

24  could only speculate over whether PX194 was an accurate reflection of anything he said.   *Id.* at

25  50.   Furthermore, as is clear from Mr. Choi's deposition transcript and the document itself,

26  PX194 comments solely on the iPhone's "UX," not any of the patented features, and relates to a

27  Samsung product (Lismore) that Apple has never accused of infringing the patents-in-suit.

28

1

### 4.   Cira Conley

2

The testimony that Apple has designated for Cira Conley relates only to the general facts

3 that GravityTank was hired by Samsung to prepare market reports, that GravityTank prepared

4 reports for Samsung, and that GravityTank then gave these reports to Samsung.   (*See* Sabri Decl.

5 Ex. 14 at 10-12, 28; 31, 35-40, 44-48).   Ms. Conley did not work on any of the deliverables for

6 the Samsung account.   Nothing in her proffered testimony relates to demand, and her testimony

7 should be excluded on that basis alone.   In addition, the reports in question (PX36 and PX37)

8 should be excluded from trial for the reasons set forth in the chart regarding exhibits.   Ms.

9 Conley's testimony has no other relevance and therefore should be excluded as well.

10

### 5.   Wong Pyo Hong

11

Mr. Hong's testimony regarding the GravityTank survey (PX36) was that he had never

12 seen the document, had never heard of GravityTank, and did not understand what "screen-centric

13 design" meant.   Apple asserts that Mr. Hong testified regarding a "directive to Samsung

14 employees to provide comparsion's [*sic*] to the iPhone when presenting their ideas to more senior

15 executives" (Br. at 40), but Mr. Hong was questioned solely in reference to SAMNDCA00507493,

16 a document that neither of Apple's damages experts cited in their reports.   Furthermore, Mr.

17 Hong testified that Samsung compares its products to all competitive products within a particular

18 market segment, not just Apple's products, and that the purpose of this comparison is merely to

19 ensure that Samsung's products are superior in terms of price and performance.   Neither Mr.

20 Hong's testimony nor the underlying document says anything about consumer demand for the

21 iPhone, much less demand for the patented features.   Finally, while Apple claims that Mr. Hong

22 testified regarding "reports he received from third parties that they believed Samsung had copied

23 the iPhone," these "reports" actually consist of a single email that Mr. Hong received from a

24 former classmate—a document that does not appear on Apple's trial exhibit list and was not cited

25 by either of its damages experts.

26

27

28

6.      **Wookyun Kho**

Mr. Kho is a Samsung engineer that participated in the development of the bounce feature for some of Samsung's products.   Mr. Kho did not testify at the first trial, and Apple did not present any deposition testimony from him during the first trial.

Mr. Koh did not provide any testimony that is relevant to consumer demand.   During his deposition, he merely testified about comparisons he performed between the bounce feature in Apple's products and Samsung products.   *See, e.g.*, Sabri Decl. Ex 16 at 40:8-12, 43:20-44:21. He never testified that the bounce feature related in any way to consumer demand or that he implemented the bounce feature in any particular way in response to consumer demand.

In addition, Mr. Koh testified about the bounce effect generally.   He did not testify about the specific bounce behavior that falls within the narrow scope of the '318 patent.   Claim 19 of the '381 patent covers a very specific bounce effect, not any bouncing effect.   For example, Apple has never claimed that bouncing of unzoomed images in the Gallery application infringes the '381 patent.   Apple only claims that images in the Gallery application that are zoomed-in and then manipulated in a very specific way by a user infringes the '381 patent.   Accordingly, even if the testimony of Mr. Koh somehow related to consumer demand, there is no connection between that consumer demand and the specific behavior covered by the '381 patent.

7.      **Ioi Lam**

Mr. Lam is a Samsung engineer   that provided testimony relating to "scroll, zoom and double-tap" functions in some Samsung products.   Mr. Lam did not testify at the first trial, and Apple did not present any deposition testimony from these witnesses during the first trial.

Mr. Lam did not provide any testimony that is relevant to consumer demand.   Mr. Lam testified that he implemented the bounce feature because of his preference for the feature, not because of any consumer demand.   (Sabri Decl. at 55-56.)   Mr. Lam also testified that Samsung was optimizing "bounce," "pinching and depinching," and "tap to zoom" features, but not as a result of consumer demand.   (Id. at 124-125.)   Furthermore, there is no testimony that establishes that these features were in any way related to the specific features covered by Apple's patents.

1

2          **8.      MinHyouk Lee**

2          Apple claims that Mr. Lee's testimony relates to demand because he testified regarding

3     PX40.   *See* Br. at 41.   Apple fails to identify anything in Mr. Lee's testimony regarding PX40

4     that conveys relevant "information about the 'crisis of design' at Samsung in light of customer

5     praise for the user interface of the iPhone."   *See id.*   In fact, PX40 says nothing about Apple's

6     "user interface" at all—PX40 comments on iPhone's "UX," or user experience, a much broader

7     concept than user interface.   In any event, Apple does not explain how praise for Apple's "user

8     interface" is relevant to the patented features.

9          **9.      Junho Park**

10         Junho Park's proffered testimony regarding PX38 is that he does not remember whether he

11    ever received it or saw it.   (*See* Sabri Decl. Ex. 19 at 175-177.)   Mr. Park's testimony is not

12    relevant to demand of any patented product or feature, and so it should be excluded.   Additionally,

13    PX 38 should be excluded from trial for the reasons set forth in the chart regarding exhibits.

14    Because Mr. Park's testimony relates only to PX38, it should be excluded as well.

15         **10.     Todd Pendleton**

16         Apple's proffer misstates the testimony that it seeks to rely on from Todd Pendleton.   Mr.

17    Pendleton's testimony is not that the exterior design of the iPhone is "exceptionally well done" as

18    Apple states, but that the general industrial design of all of Apple's products is "well done."   (*See*

19    Sabri Decl. Ex. 20 at 167.)   Additionally, Mr. Pendleton did not testify that the exterior design is

20    "a factor that creates an emotional connection with customers" for the iPhone, but rather testified

21    that "for some folks design could be on the list" of things that might create an emotional

22    connection between a generic consumer and his or her smartphone.   (*Id*. at 190.)   Mr. Pendleton's

23    testimony does not relate to the demand for anything, much less the demand for any of the

24    patented products or features that are at issue in this case.   Accordingly, Mr. Pendleton's

25    testimony should be excluded.

26         **11.     DongSeok Ryu**

27         Mr. Ryu's deposition testimony is devoid of anything related to consumer demand.   First,

28    contrary to Apple's brief, Mr. Ryu's designations do not include PX37.   For PX36, if it is not

excluded from the damages trial, the few lines of Mr. Ryu's testimony about it that Apple designated is limited solely to his general understanding that a third party made this presentation, not an explanation of any sections of the document.   (Dkt. 2520-21 (Ryu Dep. Tr.) at 27:20-29:14.)   Mr. Ryu's designated testimony also relates to consumer complaints about Samsung products in 2008, not consumer demand or availability of alternative designs at the time relevant to this trial.   (*Id.*)

Apple also claims generally that Mr. Ryu will testify about PX179.   (Dkt. 2524 at 42:5.) Similar to PX36, Mr. Ryu's brief designated testimony about the content of PX179, however, goes no further than his merely reading a sentence of it into the record.   (Dkt. 2520-21 (Ryu Dep. Tr.) at 74:14-75:6.)   And Apple gives no basis for how a vague statement that Samsung's GUI has a similar feel to Apple's has anything to do with consumer demand for the patented features at issue or the unavailability of non-infringing alternatives.   To the extent Apple wants to point to any statement comparing a Samsung GUI to Apple's it is likely an attempt to impermissibly rehash liability issues.

Also, any connection to the *Panduit* factors in Mr. Ryu's testimony goes to factor #2, availability of non-infringing alternatives, and Mr. Ryu's testimony supports *Samsung's* position, not Apple's.   In the designations that Apple itself cites, Mr. Ryu confirms that there were equally acceptable alternative designs available for Samsung's GUIs, including those that had icons that did not use a square shape with rounded corners (*id.* at 46:5-17) and that had a differently colored band behind the dock (*id.* at 54:2-5:21).   Mr. Ryu also testified that the individual icon images were customizable, as were the number of icons in the grid, further showing that alternative designs were available.   (*Id.* at 56:4-10; 57:16-23; 63:12-65:6.)   Nothing in Mr. Ryu's designated testimony shows consumer demand for any patented features, let alone demand for Apple's products in general.

1

2

3

Additional objections to the exhibits listed for Mr. Ryu are included in the section below responding to Apple's proffer for its exhibits.   Those objections are also incorporated here by reference.

4

### 12.   Jaegwan Shin

5

6

Mr. Shin is a Samsung engineer.   Mr. Shin did not testify at the first trial, and Apple did not present his deposition testimony at the first trial.

7

8

9

10

11

12

13

None of Mr. Shin's testimony is relevant to consumer demand.   Apple seeks to introduce testimony relating to an email Mr. Shin forwarded in 2010 and a related video.   As an initial matter, Apple did not identify this email or video on its new trial exhibit list.   Consequently, Apple should be precluded from offering this email/video or any testimony about this email/video at trial.   Moreover, Mr. Shin was not the author of the email and did not know what was meant by the phrase "emotionally appealing" in the email.   (Sabri Decl. Ex 22 at 45:18-24.)   Nothing in this email relates to consumer demand or the specific bounce feature covered by the '381 patent.

14

15

16

17

18

Apple also seeks to introduce Mr. Shin's testimony relating to technical comparisons between Samsung and Apple products.   However, none of these technical comparisons relate to consumer demand much less consumer demand for the specific features covered by Apple's patents.

19

20

21

Additional objections to the exhibits listed for Mr. Shin are included in the section below responding to Apple's proffer for its exhibits.   Those objections are also incorporated here by reference.

22

23

24

25

26

27

28

1    DATED: October 15, 2013              Respectfully submitted,

2                                          QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
3

4

5                                          By  */s/ Victoria F. Maroulis*
                                                Charles K. Verhoeven
6                                               Kevin P.B. Johnson
                                                Victoria F. Maroulis
7                                               William C. Price
                                                Michael T. Zeller
8

9                                          Attorneys for SAMSUNG ELECTRONICS CO.,
                                           LTD., SAMSUNG ELECTRONICS AMERICA,
10                                         INC. and SAMSUNG
                                           TELECOMMUNICATIONS AMERICA, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A

Pursuant to the Court's October 11, 2013 Case Management Order and Order Requiring Additional Briefing (Dkt. 2516), the Samsung Defendants respectfully submit as Appendix A the following opposition to Appendix 1 and Appendix 2 to Apple's proffer (Dkt. 2524-01, 2524-02), which purport to address the substance of all the exhibits Apple will introduce at trial as evidence of copying or demand.

Apple divided its proffer into one list of exhibits "challenged" as "copying" in Samsung's motions (Dkts. 2406, 2418), and one list of exhibits "not challenged" in Samsung's objections, in a thinly veiled attempt to make it appear that Samsung had not objected and/or waived its objections to the Appendix 2 exhibits.   (Dkt. 2524-01, 2524-02).  However, the Court's order regarding the motion to strike trial exhibits was clear – the parties could object to only thirty exhibits prior to trial, and the Court would consider those objections in a representative manner.  (Dkt. 2369 at 2; 8/22 Hr. Tr. at 32:14-17 ("[I]f it can be representative, then hopefully a ruling on one will help with some other documents that may be in a somewhat similar category.").)  Apple's proposed "copying" exhibits made up 40% of its proposed trial exhibit list, and Samsung's selection of the thirty most egregious documents did not waive future objections to the remainder of these irrelevant documents.  (Dkt. 2418 at 7 ("Given the Court's limitation to 30 document objections, Samsung reserves the right to object to additional exhibits at trial on these and other grounds.").)

Samsung's opposition incorporates and applies the Court's prior rulings concerning the scope of and evidence that may be used at the first trial, including, without limitation: (a) the parties may only use exhibits identified on their July 23, 2012 final exhibit lists from the first trial or exhibits actually used at the first trial; (b) the parties may object to the relevance of exhibits for the purposes of the new trial; and (c) all prior rulings concerning the exclusion of testimony and evidence and any limitations place on the use of testimony and evidence remain in effect for the new trial. Samsung reserves all their prior objections and arguments concerning these rulings and all witnesses and evidence wholly or partially excluded or limited as a result thereof.

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| 1 | Admitted at trial: Not Offered.<br><br>Admitted for limited purpose: N/A.<br><br>Included in Musika exhibits: No.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Philip Schiller; Greg Joswiak; Cross-Examination. | Apple should not be permitted to introduce PX 1 into evidence for multiple reasons.  PX 1 is a collection of images of Apple prototype devices.  Apple's prototypes have no bearing on the value of its design patents or consumer demand.  Apple's allegation that the prototypes contain individual features Apple claims are also present in the D'677 patent is insufficient to establish any probative value relating to the patents themselves. Furthermore, Apple's proffer demonstrates its prejudicial intent in offering PX 1, indicating that Apple intends to suggest to the jury that its patents claim "attractive appearance" and "beautiful |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | PX1 is an FRE 1006 summary of iPhone prototype phone models that Apple created over the course of its development of the original iPhone.  It took Apple years to develop the iconic design of the iPhone, which includes the sleek all-black front face protected by the D'677 patent.  The photographs of the iPhone product also help to establish the importance of the black front, even borders and all glass top to the external appearance of the iPhone.  Each of these design features are part of the claim of the D'677 Patent.  The photographs also help to demonstrate the prominence of the Apple graphical user interface to the appearance of the products.  This rebuts Samsung's claim that reference to exterior design, attractive appearance and design or Apple's beautiful designs are unrelated to the claims of the patents in suit. | design," intangible qualities that Apple cannot claim ownership of. Apple should not be allowed to introduce an exhibit that was not admitted in the first trial or even included in Mr. Musika's exhibits, and that has no bearing on the issue of damages. |
| 3 | Admitted at trial:  Admitted.<br>    •   Bressler (Trial Tr. 1071).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>    •   Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination.<br><br>PX3 is an FRE 1006 summary of Samsung's phones showing how Samsung's phone design evolved over time to look more like the iPhone.  This exhibit reflects industry praise and market demand for Apple's patented design features, namely the distinctive front face of the iPhone as covered by the D'677 patent.  The document supports Apple's argument that the translucent, black-colored face of the iPhone is distinctive and | The complete lack of relevance of PX 3 to Apple's damages case is demonstrated by Apple's failure to include this document in Mr. Musika's exhibits.  Apple only questioned its design patent infringement expert, Peter Bressler, about PX 3, (Trial Tr. 1071-73).Apple's attempt to create a connection between PX 3 and its damages case has no merit.<br><br>PX 3 is a supposed timeline of Samsung smartphone development. The exhibit purports to characterize Samsung's conduct—as Apple's admits in its proffer, it intends to use PX 3 to argue that Samsung changed its designs to copy Apple's. PX 3 includes no images of Samsung phones subject to retrial and would require Samsung to waste trial time introducing countervailing testimony that it developed various omitted touchscreen models prior to the iPhone's announcement, which Mr. Bressler ignored. (*See, e.g.*, Trial Tr. 2817:9-2820:11; DX 684.001.) |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | instantly recognizable among smartphone designs that existed before and immediately after its launch.  The document also shows that Samsung considered and, in fact, implemented other design alternatives before adopting the infringing design—including, a curved, clear material on the front surface of the phone; a display screen that is not centered on the front surface of the phone; and a front surface that is not entirely covered with a clear material—yet, Samsung abandoned those design concepts to adopt the infringing design.  Such evidence raises a reasonable inference of demand for the infringing design, the unique value of the infringing design, and the lack of commercially acceptable non- infringing alternatives to the infringing design.  Further, the exhibits reflects the advantages of Apple's patented design compared to other prior modes and other options considered by Apple, which is independently relevant to the amount of a reasonable royalty for Apple's patents. | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 3, or as to Samsung's beliefs or intent. |
| 6 | Admitted at trial:   Admitted.<br>• Winer (Trial Tr. 1524-1525).<br><br>Admitted for limited purpose:  Yes.<br>• Do not consider for the truth of the matter asserted.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>• Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination.<br><br>PX6 is a summary of press reports regarding Samsung phone designs.  The document reflects third party industry praise for | Apple did not include PX 6 in Mr. Musika's trial exhibits, and should not now be allowed to claim that PX 6 is related to damages in an effort to put inflammatory material before the jury.  PX 6 is irrelevant to any dispute at issue in the new trial.  It is a "summary" of press reports about perceived similarities between certain Samsung devices and the iPhone. At trial, Mr. Winer testified about PX 6 in support of his dilution opinions.  (Trial Tr. 1521:22-1522:13.)  Apple's trade dress is not at issue in  this trial.  In addition, *none* of the 18 article relates to a product at issue in this trial. The jury awards for *all* of the phones discussed were upheld. (Dkt. 2271 at 22, 25; Ex. 1 at 31:22-25; 33:18-21.) Moreover, the articles discuss features not covered by the patents at issue, such as the "shiny plastic body," "the chrome edge around the scrren," and the "volume and |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | and market demand for the patented products and in specific cases, the patented features.  For example, the fact that the Samsung infringing phones were compared to the iPhone at launch demonstrates the degree to which the iPhone served as the standard of the industry against which other phones were being measured, particularly in the context of external design and user experience.<br><br>The document also reflects direct evidence of industry praise and demand and value of some of the specific patented features.  For example, a PC World review of the infringing Samsung Galaxy S, titled "How Does it Measure Up to the Competition," specifically identified that the Galaxy "design is actually very iPhone 3GS-like with an all black, shiny plastic body and minimal buttons on the phone's face," which reflect design features covered by the D'677 patent.  (PX6.1.)<br><br>Another reviewer in Wires, identified the infringing Vibrant phone as "shockingly similar to the iPhone 3G" because of, among other things, its "the glossy, black finish and the chrome-colored metallic border around the display," which again reflect design features covered by the D'677 patent.  (PX6.1.) The reviewer goes on to describe the Vibrant as having a "derivative design" and that "there's little to make the phone notable, apart from its striking similarity to the iPhone." (PX6.1.) The comments themselves reflect how Samsung's copying of Apple's exterior design diminished Apple's ability to distinguish these products using these characteristics, and when combined with the importance of design as a driver of consumer behavior, made it more likely that a consumer would have purchased an iPhone had a Samsung phone not been available. | ringer buttons." At the first trial, this exhibit was used by Mr. Winer to show trade dress dilution, a subject not at issue here. (Trial Tr. 1521:14-1522:13; 1524:22-1525:5.)<br><br>The Court held that PX 6 could not be admitted for the truth of the matter asserted, recognizing that this exhibit alleges that Samsung intentionally copied Apple.  PX 6 furthers Apple's irrelevant, inflammatory and prejudicial allegations, containing headlines such as, "Samsung Vibrant Rips Off iPhone 3G Design," (PX 6 at 1).  Apple claims that PX 6 is relevant to this trial because the articles summarized within describe similarities between the infringing phones and the D'677 patent, but infringement is not at issue in the new damages trial.  PX 6 does not address any competitive disadvantage to Apple.<br><br>Furthermore, PX 6 is an improper summary under Fed. R. Evid. 1006.  It is not a summary to prove the contents of voluminous writings that cannot be conveniently examined in court.  It is, instead, a compilation of excerpts from news articles chosen by Apple for their accusatory and prejudicial value.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 6, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Another review from Laptop, again specifically identifies the infringing design features, such as: "chrome-like border, edge to edge glass display (overlying black plastic), and curved candy bar shape of the Vibrant could easily be mistaken for the iPhone 3GS" (PX6.1, 6.2.)." <br><br> Another review from MobileTechReview also specifically identifies the infringing design features covered by the D'677 patent:   "[a]t first glance, the Vibrant looks like a thinner iPhone 3GS, complete with curved plastic back and a front face dominated by glass and a black surround." (PX6.2.) <br><br> While the foregoing comments in some cases refer to the Vibrant and Galaxy S, the repetition of these design elements in the Infuse 4G reflects an extension of this design style in the later Galaxy smartphones, which further reduces the distinctiveness and competitive advantage Apple had sought from the exclusive use of the patented design. | |
| 7A | Admitted at trial:  Original PX7 Admitted. <br><br> • Original PX7 admitted by Bressler (Trial Tr. 1049).  PX7A is a subset of PX7 after excluding Samsung products found not to infringe any Apple intellectual property. Admitted for limited purpose:  No. <br><br> Included in Musika exhibits: No. <br><br> Potential sponsoring witnesses at new trial: <br><br> • Philip Schiller; Greg Joswiak; Julie Davis; Cross- | PX 7A was not included in Mr. Musika's exhibits because it is not relevant to damages.  Apple claims that PX 7A is relevant to prove that Samsung used Apple's intellectual property, but infringement is not at issue in the new trial.  Apple failed to include PX 7A in Mr. Musika's exhibits in the first trial.  In addition, PX 7A contains multiple irrelevant pages featuring images of products, such as of the Replenish and of multiple tablets(PX 7A.36-.38, .48.) Apple should not be allowed to present these images to the jury. <br> Samsung also objects to the inclusion of irrelevant products from the first trial not at issue in the damages trial.  The use of information suggesting infringement by other products not at issue in the new trial is prejudicial because it will likely confuse the jury about the amount of sales at issue, and inflate the jury's |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Examination.<br><br>PX7A is an FRE 1006 summary of Samsung products determined to infringe at least one Apple intellectual property right.  These images are relevant to demand at least because the extent of Samsung's infringement is relevant—specifically, the jury will be instructed that it may consider in determining a reasonable royalty "the extent to which the infringer has made use of the invention and any evidence probative of the value of that use."  (Dkt. No. 1903 at 56 *(Georgia Pacific* factor 10).)  Apple intends to show that Samsung made use of Apple's D'677 and D'305 patented features by incorporating those features into some of its infringing phones, and profited from that use through the sale of millions of infringing phones. | impression of the amount of damages necessary to compensate for the limited products at issue in the new trial. |
| 8 | Admitted at trial: Admitted.<br><br>    &bull;     Bressler (Trial Tr. 1021).<br><br>Admitted for limited purpose: No.<br><br>Included in Musika exhibits: No.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;     Philip Schiller; Greg Joswiak, Julie Davis; Cross-Examination<br><br>PX8 is an FRE 1006 summary of photographs of all iPhone versions, which embody the patented D'677 and D'305 design features, and all iPad versions.  This evidence is relevant to many issues in the case other than demand, including without limitation providing necessary context to the parties' arguments | PX 8 was not included in Mr. Musika's exhibits because it is not relevant to damages.  In the first trial, Mr. Bressler testified about PX 8 in the context of infringement, stating that it is a "photographic presentation of all the views" of the iPhone original, 3G, 3GS, and 4, and that he believes that these images show "a design that is similar to . . . the patent." (Trial Tr. 1020-21).  Infringement has been determined and is not at issue in the new trial.  The consistency of Apple's designs is not relevant to the *Panduit* factors, does not show lack of non-infringing alternatives, and does not show the "significance" of Apple's design patents.  In addition, the "beauty" of Apple's designs is not relevant to demand for the patented features.  The Federal Circuit has already held that evidence relating to generic concepts like "beauty" is irrelevant to demand for the patented features.   (Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012)).)  Also, PX 8 is a collection of photographs, not evidence of Apple's sales, as Apple claims. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|-----------------|---------------------|
|  | about whether their products directly compete in the relevant market.<br><br>Looking specifically at consumer demand, PX8 supports an inference about demand for Apple's patented design features and the lack of acceptable non-infringing alternatives under the second *Panduit* factor.  First, like PX1 discussed above, it establishes the significance of the D'677 Patent and the D'305 Patent to the exterior design of the Apple iPhone product line.  The exhibit also shows the consistency with which these designs were used by Apple between 2007 and 2012, when the damages period ends.  This context helps establish the relevance of earlier statements about Apple's beautiful design to the D'677 Patent and the marketplace between 2010 and 2012.  Apple intends to offer evidence establishing the success of the iPhone (including without limitation, for example, through evidence of sales — e.g., PX15, PX102). | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 8. |
| 9 | Admitted at trial: Not Offered.<br><br>Admitted for limited purpose: N/A.<br><br>Included in Musika exhibits:  Yes.<br><br>    •    5/8 Rpt. Exhibit 24-S, item 90.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •    Karan Singh; Julie Davis; Cross-Examination<br><br>PX9 is an email chain among Samsung executives regarding development of Samsung smartphones to include new touch | Apple should not be permitted to introduce PX 9 into evidence for multiple reasons.  PX 9 is not relevant to consumer demand.  This document is an analysis comparing touch sensor technology that could be used on a smartphone device, contrasting the benefits of a capacitive (C-type) touch screen to a resistive (R-type) touch screen.  There is no indication consumer demand for either technology.  PX 9 cites to touchscreen technology that is unquestionably **not** the subject of Apple's patents asserted at trial.  Apple attempts to shoehorn the '163 and '915 patents by noting passing references to multi-touch and zoom.  However, Apple does not have a patent to multi-touch touchscreen technology, or zooming in general.  The '915 patent does not cover multitouch, or even "two fingered pinch," but rather the "all-important test" of distinguishing a one-finger scroll versus a |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
|  | methods.  (PX9.1.)  The document reflects direct evidence of industry praise, demand, and value of the specific infringing features.  For example, the document states that to implement the "C Type" or Apple touch method would require changing the icons and implementing a unique zooming method.  (See PX9. 1 ("To apply the C method, the Icons would have to be large, and when viewing a screen with small letters, there would have to be a Zooming function.").)  The document goes on to discuss the benefits of Apple's patented features, including those covered by D'677, and the '163 and '915 patents.  (See e.g., PX9.2 ("C-type's strengths are the sleek exterior product design, superior recognition of the touchscreen, and multi-touch, these 3 points.  Even among these, 1 think that the sleek product design execution shown by the iPhone is what is considered by the above or in Sales to be the greatest appealing factor.").) | two finger gesture.  (Trial Tr. 1857:20-24.)  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '163 and '915 patents cover the ability to perform multi-touch or zooming generally. PX 9 is not relevant to any products at issue.  The document discusses touch screen technology in a general sense only.<br><br>In addition, this document was not offered during trial.  Moreover, this document and opinions regarding this document are not disclosed in Dr. Singh's expert report.<br><br>Furthermore, Dr. Singh is not an expert on consumer demand, and are not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Singh.<br><br>Evidence that Samsung employees – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 9.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 9, or as to Samsung's beliefs or intent. |
| 15 | Admitted at trial: Admitted.<br><br>• Schiller (Trial Tr. 612). | While bare sales data for the iPhone and iPad may show demand for the patented products, which is undisputed here, it does not, as Apple claims, "allow the jury to draw the inference that at least some consumers unable to purchase an infringing Samsung |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|-----------------|--------------------|
| | Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination<br><br>PX15 is an FRE 1006 summary of Apple's cumulative sales of the iPhone and iPad.  The exhibit includes evidence of Apple's sales of the iPhone and iPad, and hence evidence of demand for the patented product under the first Panduit factor.  Evidence of the success of the iPhone will help Apple establish "but for" causation of lost profits because it will allow the jury to draw the inference that at least some consumers unable to purchase an infringing Samsung phone would be reasonably likely to purchase an iPhone instead. | phone would be reasonably likely to purchase an iPhone instead." |
| 17 | Admitted at trial: Admitted.<br><br>• Schiller (Trial Tr. 605).<br><br>Admitted for limited purpose: Yes.<br><br>• Do not consider for the truth of the matter asserted<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Philip Schiller; Greg Joswiak; Julie Davis; Cross- | PX 17 is a collection of irrelevant third party praise for Apple's products.  It is not probative of damages and was not included in Mr. Musika's exhibits.  There is no dispute regarding demand for the patented products .  (2013 Wagner Rpt. at ¶ 98.)  PX 17 is not probative of demand for the patented features because it is unrelated to the narrow claims of Apple's patents. Apple alleges that PX 17 is evidence of consumer demand for "beauty"—an abstract concept that Apple does not own and that is not on trial in this litigation.  Evidence of a generic concept like beauty is irrelevant to the issue of demand for the patented features.  (Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012)).)  Apple's claim that PX 17 is evidence of lack of noninfringing alternatives is without support |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Examination.<br><br>PX17 is an FRE 1006 summary of news articles reflecting market commentary on the beauty of the iPhone (e.g., PXI7.1 ("the iPhone is gorgeous")), consumer demand for beauty in a smartphone product (e.g., PX17.1 "the iPhone's beauty alone would he enough to prompt certain members of the iPod cult to dig for their credit cards")); and the iPhone's stunning success (*e.g.*, PX17.1 ("two-thirds of the population of the United States seem to be aware of the device"). PX17 includes evidence of Apple's sales of the iPhone and iPad, and hence evidence of demand for the patented product under the first *Panduit* factor. PX17 also includes evidence relevant to the absence of commercially acceptable non-infringing alternatives under the *Panduit* factor. The praise applied to the iPhone in coverage reflects the scope of consumer interest in Apple's products and the degree to which consumers would not find an ugly design or less functional user interface acceptable in comparison to incorporation of the patented designs and features. PX17 includes information relating at least the first and second categories of evidence probative of this inference. Further, PX17 includes information relevant to multiple categories related to use, praise and benefits of the patent within the *Georgia Pacific* factors that are relevant to a reasonable royalty. | and misstates the evidence, which is unrelated to the patented features.<br><br>Likewise, evidence in support of a reasonable royalty opinion must be focused on the patented features. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.") Exhibits showing third party praise for Apple's products generally are therefore irrelevant and cannot be used as evidence of consumer demand for the specific IP at issue. Fed. R. Evid. 402, 403. Apple should be precluded from seeking to to broaden the purported scope of the intellectual property at issue as demonstrated in Samsung's motion *in limine*. Dkt. 2406 at 4-6. The Court should prevent Apple from using exhibits allegedly praising Apple products in general, untied to the actual patented features at issue.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 17, or as to Samsung's beliefs or intent. |
| 21A | Admitted at trial: Admitted.<br><br>•      Kare (Trial Tr. 1399).<br><br>Admitted for limited purpose:  No. | PX 21A was introduced at trial with Susan Kare, Apple's expert on infringement of the D'305 patent. (Trial Tr. 1399). PX21A was not included in Mr. Musika's exhibits, and should not be admitted in a trial in which infringement is not at issue.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>&bull;   Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination.<br><br>PX21A is a summary of screenshots showing the graphical user interfaces of the Samsung phones accused of infringing the D'305 patent.  Samsung's close imitation of the patented iPhone design is relevant to show Samsung's recognition of consumer demand for the patented design and its advantages over other modes, which is also relevant to the determination of a reasonable royalty. | such as PX 21A, or as to Samsung's beliefs or intent.<br><br>Apple fails to explain how bare screenshots of graphical user interfaces of Samsung phones "accused of infringing the D'305 patent show consumer demand or Samsung's recognition of consumer demand for the patented features or its purported advantages over other modes.  They do not |
| 25D | Admitted at trial: Original PX25A1 Admitted.<br><br>&bull;   Musika (Trial Tr. 2094).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br><br>&bull;   This exhibit is a revised version of Admitted PX25A1, which Musika prepared for the first trial. It includes information from numerous Musika exhibits, including Exhibit 17-S, Exhibit 26-S, Exhibit 27-S, Exhibit 32-S, Exhibit 33-S, and many others.<br><br>Potential sponsoring witnesses at new trial: | PX 25D is not evidence.  It is an assemblage of materials Ms. Davis created and affixed to her expert report.  This exhibit is an improper compilation under Fed. R. Evid. 1006.  It contains Ms. Davis's opinions, not summaries of voluminous evidence. E.g. PX 25D.2 (statement of Ms. Davis's damages conclusions).  The Court should not allow Apple to introduce this exhibit of Ms. Davis's opinions as though they were fact evidence, thereby giving Ms. Davis's opinions added weight with the jury. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • Julie Davis; Cross-Examination.<br><br>PX25D is an FRE 1006 summary of Ms. Davis's calculation of damages.<br><br>The exhibit includes evidence of Apple's sales of the iPhone and iPad, and hence evidence of demand for the patented product under the first *Panduit* factor. | |
| 25E | Admitted at trial:  Not Offered. The parties entered into a stipulation before the first trial not to offer this exhibit to simplify the sealing issues at trial.  (Dkt. No. 1597.)<br><br>• Musika (Trial Tr. 2094).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br><br>• This exhibit is a revised version of PX25, which Musika prepared for the first trial.  Original PX25A contained highly confidential information that the parties agreed to remove before trial by stipulation in exchange for a promise not to challenge the verdict in post-trial proceedings or on appeal for lack of more detailed financial information.  (*See* Dkt. No. 1597; Dkt. No. 1649 n.1.)  It includes information from numerous Musika exhibits, including Exhibit 17-S, Exhibit 32-S, Exhibit 33-S, and many others.<br><br>Potential sponsoring witnesses at new trial: | PX 25E is not evidence.  It is an assemblage of materials Ms. Davis created and affixed to her expert report.  This exhibit is an improper compilation under Fed. R. Evid. 1006.  It contains Ms. Davis's opinions, not summaries of voluminous evidence. (*E.g.* PX 25E.2 (including statement of Ms. Davis's conclusions regarding Samsung's profits, a contested issue).)  The Court should not allow Apple to introduce this exhibit of Ms. Davis's opinions as though they were fact, thereby giving Ms. Davis's opinions added weight with the jury |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • Julie Davis; Cross-Examination. PX25E is a more detailed supplement to PX25 D, and also constitutes a FRE 1006 summary of Ms. Davis's calculation of damages.  The exhibit includes evidence of Apple's sales of the iPhone and iPad, and hence evidence of demand for the patented product under the first *Panduit* factor. | |
| 26A | Admitted at trial:  Not Offered. Admitted for limited purpose:  N/A. Included in Musika exhibits:  Yes. • This exhibit is a revised version of PX26, which Musika prepared for the first trial.  PX26A is a subset of the items discussed Ms. Davis's Exhibits 24-PT and 25-PT. Potential sponsoring witnesses at new trial: • Julie Davis; Cross-Examination. PX26A is an FRE 1006 summary prepared by Ms. Davis that provides a non-exhaustive discussion of Samsung documents relevant to demand and competition issues.  It is identical in format and content to PX26 prepared by Mr. Musika for use in the first trial, except that translations have been revised to reflect agreements reached between the parties during the course of the first trial, and content has been removed to reflect the reduced scope of patents at issue. Numerous rows on PX26A relate specifically to Apple's | PX 26A is an improper "summary" of documents that purports to reflect demand for Apple's IP and should be excluded under Fed. R. Evid. 1006 as an inappropriate attempt to admit documents that should be examined individually and that would be objectionable on their own. The exhibit is also a revision of Apple's previous  PX 26, which purported to show demand for Apple's trade dress, which is not at issue in the new trial. Although it has been re-titled, the underlying documents are all irrelevant to the specific features and designs of the   patents at issue. For example, the sources it cites refer generally to the "design" of various Apple product models, but none relate to the specific designs of D'677 or D'305. Some documents refer to nothing more than "exterior design" or "attractive appearance," or refer to irrelevant elements such as the "back of [the] phone." PX 26A.1. None of the design patents at issue here cover the entire exterior design , let alone a patent on "sensual design" or being a "delight to the eye." (PX 26A.1, .2, .3.) Evidence relating to general design concepts is not relevant to demand for the narrow patent claims.  (Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co.*, Ltd., 695 F.3d 1370, 1376 (Fed. Cir. 2012)).)  These exhibits have no probative value for a jury tasked with valuing the limited patent claims at issue here. PX 26A is also an improper attempt to get in many objectionable exhibits supposedly related to utility patents, such as PX 38 |

13

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | patented features.  Examples of documents falling within this category include item 35 on PXA.5 (PX44), item 66 on PX26A.9 (PX39), item 4 on PX26A. 11 (PX128), items 9 on PX26A.1 1 and 51 on PX26A.14 (PX36), item 30 on PX26A.12 (PX57), item 31 on PXA.12 (PX44), item 32 on PX26A.12 (PX46), item 34 on PX26A.12 (PX195), and item 44 on PX26A.13 (PX38).  The chart summarizes information in exhibits discussed elsewhere in Apple' appendices.  Its purpose in the Musika and Davis report was to gather in one place certain of the relevant evidence of consumer demand for the product and patented features to support Mr. Musika's and Ms. Davis's opinions and conclusions. | described below, which refer to functionality outside the narrow scope of the patents.  Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 26A, or as to Samsung's beliefs or intent. |
| 27A | Admitted at trial:  Not Offered.  Admitted for limited purpose:  N/A.  Included in Musika exhibits:  Yes.<br><br>• This exhibit is a revised version of PX26, which Musika prepared for the first trial.  PX26A is a subset of the items discussed Ms. Davis's Exhibits 24-PT and 25-PT.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Cross-Examination.<br><br>PX26A is an FRE 1006 summary prepared by Ms. Davis that provides a non-exhaustive discussion of Samsung documents relevant to demand and competition issues.  It is identical in format and content to PX26 prepared by Mr. Musika for use in | PX 27A is an improper "summary" of documents that purports to reflect comments on the smartphone and tablet marketplace and should be excluded under Fed. R. Evid. 1006 as an inappropriate attempt to admit documents that should be examined individually and would be objectionable on their own. The underlying documents are all irrelevant to the few narrow patents at issue, and are all part of Apple's campaign to turn the new damages trial into a referendum on Samsung's alleged copying. For example, the sources it cites refer to Samsung's intention to compete with Apple and Samsung's competitive analysis.  In addition, Apple chose not to proffer some of the documents summarized in PX27A. These exhibits have no probative value for a jury tasked with valuing the  patent claims at issue here. Rather, these exhibits are an improper attempt for Apply to cherry-pick statements and present them out of context to prejudice Samsung on an issue not relevant to the new trial. Apple chose not to present this exhibit at trial, and should not be allowed to present it at a trial to which it has no relevance. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | the first trial, except that translations have been revised to reflect agreements reached between the parties during the course of the first trial, and content has been removed to reflect the reduced scope of patents at issue.<br><br>Numerous rows on PX26A relate specifically to Apple's patented features.  Examples of documents falling within this category include item 35 on PXA.5 (PX44), item 66 on PX26A.9 (PX39), item 4 on PX26A. 11 (PX128), items 9 on PX26A.1 1 and 51 on PX26A.14 (PX36), item 30 on PX26A.12 (PX57), item 31 on PXA.12 (PX44), item 32 on PX26A.12 (PX46), item 34 on PX26A.12 (PX195), and item 44 on PX26A.13 (PX38).  The chart summarizes information in exhibits discussed elsewhere in Apple' appendices.  Its purpose in the Musika and Davis report was to gather in one place certain of the relevant evidence of consumer demand for the product and patented features to support Mr. Musika's and Ms. Davis's opinions and conclusions. | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 27A, or as to Samsung's beliefs or intent. |
| PX28 | Admitted at trial:  Admitted.<br><br>    &bull;    Musika (Trial Tr. 2057).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br><br>    &bull;    5/8 Rpt. Exhibit 50-S.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;    Julie Davis: Cross-Examination. | Samsung objects to the inclusion in PX28 of irrelevant financial data, particularly that relating to unaccused products and to products from the first trial not at issue in the damages trial.  The use of financial information including products, sales figures and revenues not at issue in the new trial is prejudicial because it will likely confuse the jury about the amount of sales at issue, and inflate the jury's impression of the amount in controversy.<br><br>PX28 is not evidence.  This exhibit is an improper compilation under Fed. R. Evid. 1006.  It contains summaries of Mr. Musika's conclusions regarding Samsung's costs. The issue of costs is disputed between the parties.  Mr. Musika's conclusions have not been updated since the first trial to reflect the smaller |

15

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | PX28 is an FRE 1006 summary of Samsung's fixed and variable costs.  Ms. Davis considered PX28A along with other evidence commonly relied upon experts in her field to support her calculation of Samsung's profits.  This document is primarily relevant to issues in the case other than demand, including without limitation evidence supporting the disputed factual issue about what costs should be deducted from Samsung's revenue under an unjust enrichment remedy.

Looking specifically at the demand issue, PX28 shows revenue and profitability data from Samsung's sales of phones incorporating Apple's design patent features.  Such evidence is relevant to demand for the patented features when considered together with evidence of the role of physical appearance as a demand factor for smartphone sales and the contribution of Apple's patented features to physical attractiveness, PX28 helps support the inference that the patented features drive demand the smartphone sales.  It is also relevant to the jury's calculation of a reasonable royalty.  Specifically, the jury will be instructed that it may consider in determining a reasonable royalty "the extent to which the infringer has made use of the invention and any evidence probative of the value of that use." (Dkt. No. 1903 at 56 *(Georgia Pacific* factor 10).)  Evidence of Samsung's revenue and profitability data from Samsung's sales of phones incorporating Apple's design patent features is relevant to this question. | subset of products at issue in the new trial.  The Court should not allow Apple to introduce this exhibit of Mr. Musika's outdated opinions as though they were fact, thereby giving these opinions added weight with the jury.

Nor should Apple be permitted to argue that this financial data is in any way indicative of demand for the patented features, or to a reasonable royalty.  It is not tied to demand for the narrow set of features at issue in the new trial, and to permit Apple to tell the jury otherwise would be misleading and  prejudicial. |
| 28A | Admitted at trial:  Original PX28 Admitted.

   •   Musika (Trial Tr. 2057). | This exhibit is an improper compilation under Fed. R. Evid. 1006.  It contains summaries of Ms. Davis's conclusions regarding Samsung's costs. The issue of costs is disputed between the parties.  The Court should not allow Apple to introduce this exhibit of Ms. Davis's disputed outdated opinions |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:<br><br>• PX28A is identical in format to Admitted PX28. The content of entries in PX28A differs from Admitted PX28 to reflect the reduced set of Samsung design-patent infringing products at issue in the new trial.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Cross-Examination.<br><br>PX28A is an FRE 1006 summary of Samsung's fixed and variable costs.  The content of entries in PX28A differs from PX28 to reflect the reduced set of Samsung design-patent infringing products at issue in the new trial.  Ms. Davis considered PX28A along with other evidence commonly relied upon experts in her field to support her calculation of Samsung's profits.  This document is primarily relevant to issues in the case other than demand, including without limitation evidence supporting the disputed factual issue about what costs should be deducted from Samsung's revenue under an unjust enrichment remedy.<br><br>Looking specifically at the demand issue, PX28A shows revenue and profitability data from Samsung's sales of phones at issue in the new trial incorporating Apple's design patent features at issue in the new trial.  Such evidence is relevant to demand for the patented features when considered together with evidence of the role of physical appearance as a demand factor for | as though they were fact, thereby giving these opinions added weight with the jury.<br><br>Nor should Apple be permitted to argue that this financial data is in any way indicative of demand for the patented features, or to a reasonable royalty.  It is not tied to demand for the narrow set of features at issue in the new trial, and for Apple to tell the jury otherwise would be misleading and prejudicial. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | smartphone sales and the contribution of Apple's patented features to physical attractiveness, PX28 helps support the inference that the patented features drive demand for smartphone sales.  It is also relevant to the jury's calculation of a reasonable royalty. Specifically, the jury will be instructed that it may consider in determining a reasonable royalty "the extent to which the infringer has made use of the invention and any evidence probative of the value of that use."<br><br>(Dkt. No. 1903 at 56 *(Georgia Pacific* factor 10).) Evidence of Samsung's revenue and profitability data from Samsung's sales of phones incorporating Apple's design patent features is relevant to this question. | |
| 28B | Admitted at trial:  Original PX28 Admitted.<br><br>• Musika (Trial Tr. 2057).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:<br><br>• PX28B is identical in format to Admitted PX28. The content of entries in PX28B differs from Admitted PX28 to reflect the reduced set of Samsung design-patent infringing products at issue in the new trial, and to present the information in PX28 on a product-by-product basis.<br><br>Potential sponsoring witnesses at new trial: | This exhibit is an improper compilation under Fed. R. Evid. 1006.  It contains summaries of Ms. Davis's's conclusions regarding Samsung's costs. The issue of costs is disputed between the parties.  The Court should not allow Apple to introduce this exhibit of Ms. Davis's disputed outdated opinions as though they were fact, thereby giving these opinions added weight with the jury.<br><br>Nor should Apple be permitted to argue that this financial data is in any way indicative of demand for the patented features, or to a reasonable royalty.  It is not tied to demand for the narrow set of features at issue in the new trial, and for Apple to tell the jury otherwise would be misleading and prejudicial. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | •       Julie Davis; Cross-Examination.<br><br>PX28B is an FRE 1006 summary of Samsung's fixed and variable costs.  The content of entries in PX28B differs from PX28 to reflect the reduced set of Samsung design-patent infringing products at issue in the new trial, and to present the information in PX28 on a product-by-product basis.  Ms. Davis considered PX28B along with other evidence commonly relied upon experts in her field to support her calculation of Samsung's profits.  This document is primarily relevant to issues in the case other than demand, including without limitation evidence supporting the disputed factual issue about what costs should be deducted from Samsung's revenue under an unjust enrichment remedy.<br><br>Looking specifically at the demand issue, PX28B shows revenue and profitability data from Samsung's sales of each phone at issue in the new trial incorporating Apple's design patent features at issue in the new trial.  Such evidence is relevant to demand for the patented features when considered together with evidence of the role of physical appearance as a demand factor for smartphone sales and the contribution of Apple's patented features to physical attractiveness, PX28 helps support the inference that the patented features drive demand for smartphone sales.  It is also relevant to the jury's calculation of a reasonable royalty. Specifically, the jury will be instructed that it may consider in determining a reasonable royalty "the extent to which the infringer has made use of the invention and any evidence probative of the value of that use."  (Dkt. No. 1903 at 56 (*Georgia Pacific* factor 10).)  Evidence of Samsung's revenue and profitability data from Samsung's sales of phones incorporating Apple's design patent features is relevant to this | |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | question. | |
| 29A | Admitted at trial:  Not Offered.  The parties entered into a stipulation before the first trial not to offer this exhibit to simplify the sealing issues at trial.  (Dkt. No. 1597.)<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes.<br><br>    •  This exhibit is a revised version of PX29, which Musika prepared for the first trial based on documents in Exhibit 53-S.  PX29A is identical to PX29, except that a column heading was updated for accuracy to reflect an updated Samsung financial production.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •  Julie Davis; Cross-Examination.<br><br>PX29 is an FRE 1006 summary of Samsung's financial productions in this case.  Ms. Davis considered PX29 along with other evidence commonly relied upon experts in her field to support her calculation of Samsung's profits.  This document is primarily relevant to issues in the case other than demand, including without limitation evidence supporting the disputed factual issue about what costs should be deducted from Samsung's revenue under an unjust enrichment remedy.<br><br>Looking specifically at the demand issue, PX29 shows revenue and profitability data from Samsung's sales of products | PX 29A purports to be a collection of "summaries" concerning purported discrepancies in Samsung's financial data. It should be stricken for multiple reasons. First, it includes products not at issue in the new trial (e.g., Fascinate, Galaxy S 4G, Vibrant, Galaxy S II, Galaxy Tab 10.1), which Apple itself admits violates the Court's directives. *Id.* Second, it includes products that were not even at issue in the first trial (e.g., Acclaim, Gravity Smart, Sidekick). Third, it includes products found not to infringe (e.g., Intercept, Galaxy Tab 10.1 LTE). Finally, it includes pre-notice sales. See, e.g., PX29A.1 (including all 2010 sales).  Apple admits that the issue of costs is disputed.  Ms. Davis should not be allowed to present her disputed opinions to the jury under the imprimatur of fact evidence.<br><br>Apple should not be permitted to argue that this financial data is in any way indicative of demand for the patented features, or to a reasonable royalty.  PX 29 does not reflect any causal nexus between demand for the narrow set of patented features at issue in the new trial, and for Apple to tell the jury otherwise would be misleading and misrepresentative. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | incorporating Apple's design and utility patent features.  Such evidence is relevant to demand for the patented features when considered together with evidence of the role of physical appearance and ease of use as demand factors for smartphone and tablet sales and the contribution of Apple's patented features to physical attractiveness and ease of use, PX29 helps support the inference that the patented features drive demand for smartphone sales.  It is also relevant to the jury's calculation of a reasonable royalty. Specifically, the jury will be instructed that it may consider in determining a reasonable royalty "the extent to which the infringer has made use of the invention and any evidence probative of the value of that use."  (Dkt. No. 1903 at 56 (*Georgia Pacific* factor 10).) Evidence of Samsung's revenue and profitability data from Samsung's sales of products incorporating Apple's design and utility patent features is relevant to this question. | |
| 30 | Admitted at trial: Admitted.<br><br>• Hauser (Trial Tr. 1915).<br><br>Admitted for limited purpose: No.<br><br>Included in Musika exhibits:  Yes.<br><br>• 3/22 Rpt. Ill 122.<br><br>Potential sponsoring witnesses at new trial:<br><br>• John Hauser; Julie Davis; Cross-Examination.<br><br>PX30 is an FRE 1006 summary of Dr. Hauser's conjoint survey | PX 30 is an improper "summary" of findings of Apple's expert, Dr. Hauser.  This exhibit is impermissible under Fed. R. Evid. 1006 because it is not a summary of "writings, recordings, or photographs" that it would be inconvenient to examine in court. *Id.*  Rather, if Apple wishes to present Dr. Hauser's conclusions to the jury, it must call Dr. Hauser himself to explain his conclusions, and must make Dr. Hauser available for cross examination.  In addition, Apple should not be allowed to present evidence of Dr. Hauser's conjoint survey results given that his survey was administered prior to Apple making statements significantly narrowing the scope of the '381 and '915 patents during reexamination proceedings after trial. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | results and tablet consumers will pay a substantial price premium to obtain the '915, and '163 patents.  The price premium is a measure of willingness pay is an economic measure of consumer demand.  Thus, this evidence of importance of Apple's utility patent features to consumer demand showing that smartphone benefits of Apple's '381, to pay and willingness to directly establishes the importance of Apple's utility patent features to consumer demand. | |
| 34 | Admitted at trial: Admitted.

   Musika (Trial Tr. 2079).

Admitted for limited purpose:  No.

Included in Musika exhibits:  Yes.
   •    Exhibit 24-S, item 68

Potential sponsoring witnesses at new trial:
   •    Julie Davis; Dong Hoon Chang; Cross-
         Examination.

PX34 is an internal Samsung document dated September 2007 that analyzes smartphone market drivers and trends soon after the introduction of the iPhone.  The document notes that "the Apple iPhone" is one of "four key factors that we expect will shape handsets in the coming five years." (PX34.13.) It also predicts that the "factors that could make the iPhone a success" are its "Easy and intuitive UI" and its "Beautiful design." (PX34.38.) The document also refers to:  "HW portion: easy imitation," including Apple's "Touchscreen UI" or user interface. Samsung's comments reflect the importance of the design and | PX 34 is yet another exhibit irrelevant to the new damages trial which Apple seeks to admit to prejudice Samsung and bolster its alleged copying case. In the first trial, Mr. Musika referenced the remarks in PX 34 that that the iPhone has "easy and intuitive U/I" and "beautiful design," (Trial Tr. 2078:4-2081:14).  These remarks, as well as the statements from PX 34 identified by Apple in its proffer, are irrelevant to the second *Panduiit* factor, because they does not speak to demand for the specific patented features at issue in the new trial.  PX 34 is entirely unrelated to the existence of noninfringing alternatives.  In addition, contrary to Apple's arguments in its proffer, Apple should not be able to use PX34 to establish demand for the patented product.  Mr. Wagner has already stated that he agrees with Ms. Davis that this *Panduit* factor is satisfied.  (Wagner Rpt. at ¶ 98.)

 Apple's intent to use PX 34 to build its irrelevant and prejudicial copying case is apparent from its reliance on PX 34 in its opening and closing statements from the first trial.  In the first trial, Apple discussed PX 34 in its opening statements and told the jury that PX 34 showed that "Once the market turned against Samsung's own designs, at its highest corporate levels, Samsung decided simply to copy every element of the iPhone. Samsung may bring a couple of designers to this trial to tell you |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | utility patents to customer acceptance and interest in the iPhone. Apple will show through separate evidence, including for example testimony from Schiller, that the design of the D'677 Patent and D'305 Patent make up significant elements of the exterior design of the iPhone and that the utility patents contribute to the easy and intuitive user interface that characterizes the iPhone.<br><br>As this exhibit relates to evidence of demand, Samsung's commentary on the iPhone's success is directly relevant at least to the first *Panduit* factor – demand for the patented product. Evidence of the success of the iPhone alone will help Apple establish "but for" causation of lost profits because it will allow the jury to draw the inference that at least some consumers unable to purchase an infringing Samsung phone would be reasonably likely to purchase an iPhone instead.<br><br>In addition, Samsung's commentary on the relationship between the iPhone's "beautiful design" and the iPhone's market leadership position is relevant at least to the second *Panduit* factor – the absence of commercially acceptable non-infringing alternatives. The same is true for Samsung's commentary on the relationship between the iPhone's "easy and intuitive UI" and the iPhone's market leadership position.  [insert on relationship] PX34 thus includes information relevant to at least the first and second factors of the *Panduit* test. | that they personally didn't copy.  But . . . the documents that Samsung has provided tell a much different story."  Trial Tr. 317:18-319:15.  In its closing argument, Apple used PX34 to imply that Samsung had misused Apple's confidential information to "ambush their [business] partner with a knock-off phone," stating, "It shows that Samsung was evaluating how easy it would be to copy the iPhone" (Tr. 4222:14-4224:2)<br><br>Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 34.<br><br>Nor does this document showing copying in any event.  The System LSI division at Samsung produces the component parts for various smartphone manufacturers, including Apple.  What this document and phrases such as "the iPhone effect" actually reflect is recognition by Samsung's components division in 2007 that the demand for certain components would increase due to the popularity of the iPhone.  Although there was no testimony at trial from the author of this document, the document read neutrally is simply a forecasting of potential demand and industry trends by a Samsung division that neither makes nor designs products.  The phrase "easy imitation" does not refer to the copying of patented features, but to Samsung's ability to provide other smartphone manufacturers with hardware (H/W) items they will likely need to compete with the iPhone, such as a touch screen components, multimedia capability, flash memory capacity, etc.  Apple has no monopoly on general features such as these. The document specifically refers to "H/W," hardware, not software, user interface (UX) or industrial design (ID). Thus, PX 34 cannot truly be considered a competitive analysis or copying document. Samsung should not be forced  to call |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|----------------|--------------------|
| | | witnesses to rebut Apple's specious claims of copying<br><br>Apple cannot rely separately on this exhibit as evidence that Samsung's employees appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 34, or as to Samsung's beliefs or intent. |
| 35 | Admitted at trial:  Admitted.<br>• Wagner (Trial Tr. 3071)<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>• Cross-Examination<br><br>PX35 is an internal Samsung document that compares, side-by-side, the patented design features of the iPhone with Samsung products that, at the time, were in development.<br><br>The document contains evidence of industry praise and consumer demand for the patented product and features as well | PX 35 is irrelevant to the issue of damages, as is evidenced by Apple's failure to include it in Mr. Musika's exhibits.  Indeed, Apple cannot identify an appropriate sponsoring witness for this document, instead justifying its use as a cross-examination exhibit.  Not only is PX 35 unrelated to damages generally, it has no relevance for the new trial products.  It refers to the icon designs of the Eternity and Genie phones, which were never accused in this case. (PX 35.1.)  Apple seeks to use PX 35 its efforts to turn the new trial into side show centered on its copying allegations.  Apple's proffer for PX 35 centers around its allegations regarding Samsung's intent and competitive analysis.  These allegations are not probative of damages and are highly prejudicial to Samsung.<br><br>Evidence that Samsung employees – not consumers – found the |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | as the unique value of the patented features and the lack of suitable substitutes.  For example, the document suggests changes to Samsung's icon design because of comments from AT&T.  (PX35.1.) Specifically, the document states "iPhone icons to [sic] are colorful and vibrant, however they are in contained square which appear more organized and consistent" and includes a directive that Samsung "designers take this into consideration when proposing/designing icons and to also take into consideration the target audience the device is for." (PX35.1.) As another example, the document suggests that Samsung not make the design change to products that have already launched into the market, because "if existing customers see new icons/menus they will have the perception their devices is [sic] outdated." (PX35.1.) The document goes on to state that such a change to adopt Apple's patented icon design features to those existing products will result "calls to increase for the new s/w for upgrades and return of product will occur for existing customer wanting to have newer s/w." (PX35.1.) The document reflects that Samsung intent was to develop its products to be responsive to consumer and carrier demands and that Samsung adopted the design of the D'305, which included the relevant containers and icon layout, to address customer interest.  This evidence is also relevant to how the D'305 design was an improvement over other options, which is relevant to the determination of a reasonable royalty. | icon designs related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX35.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 35, or as to Samsung's beliefs or intent. |
| 36 | Admitted at trial:  Yes.<br><br>     •    Winer (Trial Tr. 1526).<br><br>Admitted for limited purpose:  No. | PX 36 has no relevance to any issue in the new damages trial.  In the first trial, Mr. Winer testified that PX 36 supported his opinion that Samsung's products were likely to dilute the iPhone trade dress.  Trial Tr. 1525:7-1527:21.  The iPhone trade dress is not at issue in the current trial. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Included in Musika exhibits:  Yes.<br><br>• 5/8 Rpt. Exhibit 24-S, items 69 & 93.<br><br>• 5/8 Rpt. Exhibit 25-S, item 6 I .<br><br>• 5/8 Rpt. Exhibit 53-S, item 10.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Ravin Balakrishnan; Cira Conley; Cross-Examination<br><br>PX36 is a Samsung commissioned market research report analyzing smartphone consumer demand factors, and offering recommendations to Samsung on how to improve its smartphone portfolio.  It is directly relevant evidence of consumer demand and, as such, Samsung has never challenged its relevance.  This document includes numerous examples of industry praise and consumer demand for Apple's patented utility features, including without limitation, for example, the '381 bounce feature (reference to this being "fun" and "whimsical") and the '915 scroll-v-gesture feature (reference to "gestures like the two fingered pinch and flick add a game-like quality to interactions").  (PX36.36.)  The document also praises the iPhone as "intuitive everywhere," including "consistent behavior across apps — zoom, scroll, etc.," which could reasonably be interpreted by consumers as a reference to the benefits of the utility patents, which are used in multiple applications. (PX36.35.)  Separately, the document reinforces the importance of easy to use interface to purchases. (PX26.97.)  This evidence directly establishes the importance of Apple's utility patent | Apple seeks to use PX 36 to bolster its irrelevant and prejudicial copying allegations against Samsung.  Apple's intent is clear from its discussion of PX 36 during its opening statement from the first trial, where it used PX 36 as an example of a document the jury would see to prove that "at its highest corporate levels, Samsung decided simply to copy every element of the iPhone." Trial Tr. 318: 8-319:15.<br><br>Apple argues that PX 36 is relevant to the first *Panduit* factor, but demand for the patented products is undisputed.  (2013 Wagner Rpt. at ¶ 98). Apple's discussion of PX 36 in its opening statement demonstrates the lack of nexus between PX 36 and the narrow patent claims at issue in the new trial; Apple described PX 36 as discussing "beautiful" and "enjoyable, engaging, and cool," Apple products, as well as the "whimsical" nature of features. Trial Tr. 318: 8-319:15.  Apple argues that the third party praise mentioned in this document is admissible to demand, when in reality this praise also deals with vague concepts such as the iPhone's "beauty" and "on trend and cool" design.  Apple does not have a monopoly on these broad concepts and they bear no relation to demand for the patented features,  (Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co.*, Ltd., 695 F.3d 1370, 1376 (Fed. Cir. 2012)).)<br><br>PX 36 is also not relevant to Apple's utility patents.   Apple argues that the document refers to the '381 and '915 patents, citing PX36.36.  However, PX 36.36 merely says the words "lists bounce."  The '381 patent does not cover "bounce" generally, as Dr. Balakrishnan conceded at trial.  (Trial Tr. 1783:17-20 ("You can have all kinds of things that bounce that don't -- that don't meet the elements of claim 19.").)  Similarly, |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | features to consumer demand and consumer purchasing decisions, as verified by a third party.  This evidence is also relevant to the jury's determination of a reasonable royalty, which includes evidence of the "utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results." (Dkt. No. 1903 at 56 (*Georgia Pacific* factor 9).)  The exhibit also includes numerous examples of industry praise and consumer demand for the iPhone's beautiful physical appearance ( iPhone "hailed for its beauty") and the attractiveness and importance of its front face — an element of the D'677 patent ("strong, screen-centric design has come to equal what's on trend and cool for many consumers"). (PX36.20, PX36.31.)  Many other examples of evidence of demand for Apple's products may be found in this document, including without limitation PX36.31, PX36.32, PX36.59 and PX36.64.  These assist to establish the first factor of the *Panduit* test. | the '915 patent does not cover "two fingered pinch," but rather the "all-important test" of distinguishing a one-finger scroll versus a two finger gesture.  (Trial Tr. 1857:20-24.)  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce generally and the '915 covers pinch to zoom generally.<br><br>Other pages of PX 36 are likewise not relevant to the patented features.  PX 36.35's general reference to "zoom, scroll, etc." is clearly not within the scope of any Apple patent.  Apple cannot claim invention and ownership of all zooming and scrolling.  Apple does not dispute that other pages of the document are not related to the patented features.  The Court has also recognized that a discussion of "ease of use" generally is not probative of whether the patented features r drive consumer demand.  (*See* Dkt. 2197, Order Denying Apple's Motion for Permanent Injunction at 10.)<br><br>In addition, Dr. Balakrishnan did not testify regarding this exhibit at the first trial.  Indeed, this document and opinions regarding this document are not disclosed in Dr. Balakrishnan's expert report.<br><br>Furthermore, Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan proffered testimony.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 36, or as to Samsung's beliefs or intent. |
| 37 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes.<br><br>    •     5/8 Rpt. Exhibit 24-S, item 97.<br><br>    •    •    5/8 Rpt. Exhibit 53-S, item 12.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •    Julie Davis; Dong Hoon Chang; Won Pyo Hong; Cira Conley; Cross-Examination<br><br>PX37 is a report from consultants retained by Samsung (GravityTank) concerning Samsung's portfolio of touch-enabled smartphones.  It provides a set of "key takeaways" from the complete version of the report.  (The complete version of the report was admitted as PX36.)  The document thus provides further evidence of industry praise and demand and value for | Samsung incorporates by reference its response to Apple's proffer of PX 36.  PX 37 is similarly irrelevant to any issue in the new trial, and instead will be used by Apple to prejudice Samsung with claims of alleged copying..<br><br>PX 37 is a third party presentation referencing general design concepts.  For example, it notes that "consumers recognize iPhone's screen-centric design as the touch phone standard," and also that "[f]rom a UI perspective, it has surpassed Nokia's existing 'Easy to Use' concept and is being judged to be 'Sexy to Use'." PX 37.3. Apple does not have a monopoly on a "screen-centric design" or "ease of use."  Indeed, Apple's own design expert distinguished the D'677 patent from a number of other "screen-centric" prior art and contemporary designs, (Trial Tr. 1110:23-1121:4, 1175:1-4 (referencing DX 511, DX 727, DX 728, and JX 1093)), and Apple asserted no patent that can claim a monopoly on such things as ease or sexiness of use. (Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012)).) |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Apple's patented products. For example, the document states: "It appears that the iPhone is the most preferred touch phone brand in all 5 high value segments." (PX37.3.)<br><br>The document also provides evidence of industry praise and demand and value for Apple's patented design features. For example, the document states "Consumers recognize iPhone's screen-centric design as the touch phone standard." (PX37.3) The document also provides additional evidence of the demand for the specific infringing design and utility features and the value of those features, which the jury in combination with other evidence use as support for a lost profits or reasonable royalty award. For example, the document states that "the biggest motivating factor in purchasing touch phones is intuitive/easy use of a variety of functions." (PX37.2.) As another example, the document states that "From a UI perspective, [the iPhone] has surpassed Nokia's existing 'Easy to Use' concept and is being judged to be 'Sexy to Use.'" (PX37.3); (see also PX37.4 (Samsung external design consistency "inadequate").) These comments can be tied to the comments in PX36 to show the relationship to the specific patented features. This connection is itself additional evidence that contributes to and will support the testimony of other witnesses that the patented features form an relevant aspect of the user interface that others documents and material praise as being a substantial factor in consumer demand for Apple's smartphones. | Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities. Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof. Apple must make a particularized showing that patented features drive consumer demand. Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 37, or as to Samsung's beliefs or intent. |
| 38 | Admitted at trial: Admitted.<br>    •    Singh (Trial Tr. 1845).<br><br>Admitted for limited purpose: No. | Apple should not be permitted to introduce PX-38 into evidence for multiple reasons.<br><br>FRE 402/403, Relevance/Prejudice: PX 38 is not relevant to the patented features. Apple argues that the document refers to the |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
|  | Included in Musika exhibits:  Yes.<br>    •   5/8 Rpt.  Exhibit 25-S, item 52.<br><br>Potential sponsoring witnesses at new trial:<br>    •   Karan Singh; Ravin Balakrishnan; Julie Davis; Cross-Examination<br><br>PX38 is a report from consultants hired by Samsung to evaluate different browser zooming methods.  The document provides direct evidence of the demand and value for Apple's patented utility features of the ' 163 patent.  For example, the document tests consumer preferences for three different zooming methods, including Apple's patented double-tap zooming method (PX38.13), and concludes that the patented Apple method is the "most preferred" (nearly 90%) browsing method.  (PX38.19.)  The report provides a "Design & Research Recommendation" that Samsung "[a]dopt Double-Tap as a supplementary zooming method." (PX38.24.) The exhibit reflects third party confirmation based on expected consumer preference that there is demand for the ' 163 Patent and that Samsung's adoption of the technology stemmed from a belief that it would make Samsung's products more desirable to consumers.  Samsung's damages expert, Mr.  Wagner, agreed that PX38 recommends that Samsung "adopt the double tap as supplementary zooming method for up to two levels of zooming." (*See* PX38; 770:12-25; 771:4-772:4).) Under Mr.  Wagner's own methodology such evidence is relevant to demand. (Dkt.  No.  2407-17 at 466:5-13.) | '163 patents based on PX38.13.  However, PX38.13 is very clearly describing "Double Tap to zoom in, Double Tap again to zoom out."  This is **not** the '163 patent, which would require a second double tap to recenter.  In fact, it is explicitly a **non-infringing alternative** to the '163 patent.  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '163 covers tap to zoom generally.  This document creates a high likelihood of confusion, by creating the false impression that the '163 Patent covers basic tap to zoom functionality, or even all such functionality.<br><br>Drs. Singh and Balakrishnan are not experts on consumer demand, and are not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Drs. Singh and Balakrishnan.   In addition, Dr. Balakrishnan did not provide an expert report regarding the '163 patent at all.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "double tap zooming" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 38, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| 39 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes.<br>    •    5/8 Rpt.  Exhibit 24-S, item 88.<br><br>Potential sponsoring witnesses at new trial:<br>    •    Julie Davis; Cross-Examination<br><br>PX39 is an internal development document that compares, side-by-side, features of a Samsung development phone with the iPhone.<br><br>The document also provides evidence of the value and demand for Apple's patented products.<br><br>For example, the document contains detailed, side-by-side, feature-by-feature, comparisons of the Samsung development phone against the iPhone.  (See e.g. PX39.5, 39.6.)<br><br>The document also provides strong indirect evidence of the value and demand for Apple's patented design and utility features.  For example, the report reflects instructions from Samsung's CEO to "[i]mprove UX while referring to iPhone 3GS."  (PX39. 1.)  As another example, the document includes a directive that the "icons [as compared to the iPhone 3GS] have too much space and are strange." (PX39.1.) The latter comment also provides evidence of the value of the D'305 Patent in comparison to other methods, which is separately relevant to the reasonable royalty that should be paid for that patent. | Apple's only possible intent in seeking to introduce PX 39 is to make irrelevant and prejudicial arguments to the jury regarding its allegations of Samsung's intentional copying.  PX 39 is a presentation that features images of various user interfaces.  Only one page of this document pictures the application screens of Samsung devices, PX 39.5, and this page depicts the designs of icon menus for Samsung products code named Cooper (the Galaxy Ace) and Alkon (a European version of the Galaxy SII called Xcover). Apple never accused the Ace of infringing the D'305; Apple never accused the Xcover of anything.  This document is therefore entirely irrelevant to the infringement of the D'305 patent.<br><br>In its proffer Apple itself admits that there is no connection between PX 39 and the new trial patents and products.  It alleges that PX 39 "provides strong *indirect* evidence of the value and demand for Apple's patented design and utility features."  Apple admits that it wants to use a document with *no relation* to the infringing products in the case and *no connection* to the patented features so that it can tell a story about Samsung's competitive analysis.  A reference to "UX" and images of noninfringing phones is not a sufficient link to the narrow claims of the D'305 patent as practiced by the infringing products.<br><br>Evidence that Samsung employees – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 39.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | accountant and has no basis to testify concerning documents such as PX 39, or as to Samsung's beliefs or intent. |
| 40 | Admitted at trial:  Admitted.<br>• Denison (Trial Tr. 994).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br>• 5/8 Rpt  Exhibit 24-S, item 21.<br><br>Potential sponsoring witnesses at new trial:<br>• Julie Davis; Cross-Examination<br><br>PX40 is an internal email from from Samsung's Head of Mobile Division providing his directives in light of his assessment of the smartphone marketplace in February 2010, when the infringing smartphones were under development.  In light of exterior commentary about the iPhone, he states that there is a "crisis of design" at Samsung and that the difference between the user interface of iPhone and Samsung's phones was "truly that of Heaven and Earth." (PX40.5.) The exhibit provides direct evidence of industry praise and consumer demand and value for Apple's iPhone and for the utility patents, which Apple will establish form a significant part of the Apple user interface to which Samsung's executive were comparing their products. These comments reinforce both consumer demand for and the value of Apple's patented designs and features.  As further examples, the document states that the carriers were imploring Samsung to "make something like the iPhone" because "[w]hen everybody (both consumers and the industry talk about UX [user interface], they weigh it against the iPhone." (PX40.2 (stating | PX 40 is on Apple's list because it contains the phrase "crisis of design," which Apple latched onto for its liability theme in the first trial. (Trial Tr. 319:16-320:19 (Apple opening), 4082:19-4083:10 ("Samsung listened to its most important customers, the telephone carriers, and they were telling Samsung to make something like the iPhone.").)  Even if the phrase were not merely  hyperbole, as Samsung's witnesses explained, (Trial Tr. 969:23-970:19; 997:11-12), PX 40 would still be wholly irrelevant to the issue of damages in the new trial.  Apple alleges in its proffer that PX 40 is relevant to the patented features, but PX 40 does not reference any product or intellectual property at issue in the new trial; nor does it contain any financial information.  Apple's sole intention in seeking to use PX 40 is to persuade the jury that Samsung intentionally copied Apple. Apple's allegation is not only irrelevant to damages, it is highly prejudicial.<br><br>Evidence that Samsung employees – not consumers – found the designs  related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 40.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 40, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | "The iPhone has become the standard. That's how things are already.").) These comments again are direct reflection of consumer and carrier feedback regarding the iPhone and the patented features. | |
| 41 | Admitted at trial: Not Offered.<br><br>Admitted for limited purpose: N/A.<br><br>Included in Musika exhibits: No.<br><br>Potential sponsoring witnesses at new trial:<br>• Cross-Examination.<br><br>PX41 is titled "Samsung TN GUI Framework Final Presentation" and summarizes the findings of a Samsung internal study on the challenges and goals for its graphical user interface design. The document includes user survey information identifying the "container" icon design style as "an important part of design" that is "[s]trongly associated with iPhone UI" and further recommending that Samsung employ such a "container" icon design style in its UI. (See, e.g., PX41.193.) The document is relevant at least as a Samsung admission on consumer demand for the graphical user interface design covered by Apple's D'305 patent, as well as the advantages of the patented design over market substitutes and prior designs, which is relevant to the reasonable royalty for that patent under the *Georgia Pacific* factors. | PX 41 was excluded at trial because Ms. Susan Kare failed to disclose them in her expert report. Dkt. 1563. This Court has ruled that the parties may not seek to relitigate past evidentiary rulings. (Dkt. No. 2316 at 2 ("The Court's prior rulings on the parties' *Daubert* motions, motions in limine, discovery disputes, and evidentiary objections will remain in effect as law of the case. The parties may not relitigate these issues."). Apple apparently intends to violate this Court's ruling by cross-examining Samsung's witnesses about this excluded document. Just as Samsung was prevented from questioning Apple witnesses about liability theories and documents not timely disclosed in its expert reports, (e.g., Dkt. 1519 at 1-2; Trial Tr. 951:25-952:15; 2806:22-2807:18), the same rule must apply to Apple.<br><br>In addition, Apple fails to identify any connection between PX 41 and the D'305 patent's claim. Apple identifies PX 41.193 as relevant to the D'305 because it discusses icon containers, but the D'305 patent does not claim the concept of icon containers generally. It is limited to the specific drawing featured in the patent.<br><br>Evidence that Samsung employees – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*. Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 41. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 41, or as to Samsung's beliefs or intent. |
| 44 | Admitted at trial:  Admitted.<br>• Denison (Trial Tr. 823).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br>• 5/8 Rpt.  Exhibit 24-S, item 49.<br><br>• 5/8 Rpt.  Exhibit 25-S, item 38.<br><br>Potential sponsoring witnesses at new trial:<br>• Karan Singh; Julie Davis; Ravin Balakrishnan; Cross-Examination.<br><br>As the Court's prior comments have recognized, PX44 is a significant reflection of Samsung's conscious decision to emulate Apple's products, including specifically certain of the patented features, to enhance consumer interest in its products.  These actions and the comments in the document reflect Samsung's belief that by doing so, it was improving the customer experience and would enhance consumer demand for the product.  The document is titled "Relative Evaluation Report on S1, iPhone" and was authored in March 2010—just a few months before the release of Samsung's initial Galaxy smartphones, including the new trial products.  The document compares over 100 features of the iPhone to a Samsung's developmental smartphone, which was the basis for the Galaxy line of smartphones.  For each, it provides "directions for | Apple should not be permitted to introduce PX 44 into evidence for multiple reasons.<br><br>44 is not relevant to consumer demand.  This document is a competitive analysis of products, and does not indicate whether or not consumers demand any of the features described therein. At trial, Apple used this exhibit to elicit opinions that Samsung intentionally copied Apple.  For example, Ms. Kare testified that PX 44 was evidence that Samsung used Apple's icons as a guide in designing its own application screens.  (Trial Tr. at 1409:5-1412:18.)  Apple's attorney, Ms. Rachel Krevans, admitted that she was using PX 44 with Ms. Kare to elicit testimony about what icons looked like "before steps were taken," to create a comparison with the appearance of the final versions of the icons. (Trial Tr. 1479-88.)  In its openings and closings, Apple used PX 44 as evidence of deliberate copying. ( *E.g.*, Trial Tr. 323:6-324:22 (opening)("To be clear, Samsung did not simply copy the outward appearance of Apple's phone and tablet. Samsung copied every detail . . . . Samsung's copying was intentional.  In this trial, you will see documents that show how over 100 times Samsung made detailed changes to its phone and tablets so that the end result was identical to Apple products."), 4226:5-21 ("This is 100 pages of side-by-side comparison where they're saying we're going to copy the iPhone"). (Tr. 4226:5-21.) Allowing Apple to present this irrelevant document will only prejudice Samsung. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | improvement" for the Samsung phone, which repeatedly recommend adoption of the iPhone feature.  These include a recommendation to adopted Apple's patented double-tap-to-zoom feature (the ' 163 Patent) (PX44.58) and the lighting effect in Apple's patented graphical user interface (the D'305 Patent) (PX44.131).  The document specifically reflects consumer demand for the D'305 and ' 163 patents and the advantages of the patented designs over market substitutes and prior designs.  It further reflects demand for the iPhone in the marketplace and the significance of user interface and graphical user interface design to consumer preferences, based on the assessments of Samsung's engineers. | PX 44 is not relevant to any products at issue.  The document discusses the Galaxy S i9000 which is not at issue in the new trial.<br><br>Furthermore, PX 44 is not relevant to the patented features.  PX 44.58 is not relevant to the patented features.  Apple argues that this excerpt refers to the '163 patent.  However, the '163 patent does not cover double-tap to zoom generally, but rather double-tap to zoom based on a "structured electronic document."  There is no indication that the behavior shown operates based on the underlying structure of the electronic document.  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '163 covers double-tap to zoom generally.  Other pages of PX 44 are not relevant to the patented features.  Apple does not dispute that other pages of the document are not related to the patented features.<br><br>Also, Drs. Balakrishnan and Singh did not testify regarding this exhibit at the first trial.  This document and opinions regarding this document are not disclosed in either Dr. Balakrishnan's or Dr. Singh's expert report.  In addition, Dr. Balakrishnan did not provide an expert report regarding the '163 patent at all.  Drs. Balakrishnan and Singh did not provide an expert report regarding the D'305 patent at all.  Drs. Balakrishnan and Singh are not an expert on consumer demand, and are not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Drs. Balakrishnan and Singh.<br><br>Evidence that Samsung employees – not consumers – found the |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*. Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 44.

Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 44, or as to Samsung's beliefs or intent. |
| 46 | Admitted at trial:  Admitted.
  • Balakrishnan (Trial Tr. 1758).

Admitted for limited purpose:  N/A.

Included in Musika exhibits:  Yes (in Exhibit 25-S).
  • 5/8 Rpt.  Exhibit 25-S, item 40.

Potential sponsoring witnesses at new trial:
  • Ravin Balakrishnan; Julie Davis; Cross-Examination.

PX46 is a Samsung document titled "Behold3 Usability Evaluation Results," dated May 2010, that summarizes Samsung's testing and evaluation of its user interface design against third party phones, including the iPhone.  The Behold product later became the Vibrant smartphone, which was one of the first of the Galaxy line of smartphones launched in mid-2010.  This product line includes new trial products.  The document identifies 75 areas of improvement for a Galaxy smartphone that was "shown [to be] inferior to Apple's iPhone." (PX46.16.) These comments reflect an internal Samsung assessment of what customers are likely to find desirable. Among the "directions for improvement" was to provide a "fun | Apple should not be permitted to introduce PX 46 into evidence for multiple reasons.

PX 46 is not relevant to consumer demand.  This document is a competitive analysis of products, and does not indicate whether or not consumers demand any of the features described therein. During the first trial, this document was not used to demonstrate consumer demand.  The Court's order at trial recognized that the evidence herein was relevant only to the issue of willful infringement, which is not at issue in the new trial.  (*See* Dkt. 1596 at 5.)   Apple's use of this document at the first trial demonstrates that Apple intends to use it to show willfulness and intentional copying. (Trial Tr. 4087:16-22 (closing)("where even more changes were made to incorporate iPhone effects into the Galaxy product.").)

PX 46 is not relevant to any products at issue.  The Behold3 was the code name for the Samsung phone released as the Vibrant and the Galaxy S 4G.  Neither product is at issue in the new trial. (Dkt. 2271.)

PX 46 is also not relevant to the patented features. PX 46.66 is not relevant to the patented features.  Apple argues that this |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | visual effect when dragging a web page" like the iPhone's "bouncing effect." (PX46.66.) The Samsung product was found to be "[d]ull because" it had no such "bouncing effect." (*Id.*) These statements are relevant specifically to consumer demand for the '381 patent and the advantages of the patented design over market substitutes and prior designs. | excerpt refers to the '381 patent.  However, the '381 patent does not cover the concept of bounce or bounce across an edge generally.  Instead, it covers a very specific implementation of bounce, which must include software instructions disclosing a "stop condition" for translating the document "until the area beyond the edge of the electronic document is no longer displayed."  There is no indication that the stop condition is disclosed in the document.  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally. All other pages of PX 46 are not relevant to the patented features.  PX 46.16 does not describe any patented feature of Apple's patents. Apple does not dispute that any other pages of the document are not related to the patented features.  The inclusion of such evidence is more prejudicial than probative, as it discusses information unrelated to any of the patented features, and improperly suggests that the information is relevant to consumer demand of the patented features.<br><br>Also, Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan.<br><br>Evidence that Samsung employees – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 46. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 46, or as to Samsung's beliefs or intent. |
| 47 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>• Dong Hoon Chang; Cross-Examination.<br><br>PX47 is an e-mail report to DongHoon Chang, Senior Vice President of design at Samsung's mobile electronics unit, on the results of an evaluation of Samsung phone designs by prominent Chinese designers.  In it, Mr.  Chang is told that the evaluators felt that the Samsung Galaxy S's industrial design had "copied the iPhone too much." (PX47.1 ("Not just the shape, but even the packaging looks like it copied the iPhone too much").) | Apple opted not to attempt to introduce PX 47 at the first trial, and failed to disclose PX 47 as an exhibit Mr. Musika may testify about.  Apple never indicated that it considered PX 47 to be relevant to damages and should not be permitted to now argue for the admission of this exhibit under a new theory of relevance.<br><br>In addition, PX 47 is irrelevant to the products and patented features at issue.  Apple argues that PX 47 is relevant because it discusses the "shape" and the packaging of the Galaxy S series, but the D'677 does not claim a general shape, but rather a specific design, and trade dress is not at issue in the damages trial.  PX 47 relates to Samsung products not at issue in the new trial, including the Galaxy S i9000, Wave, and Monte.  Apple seeks to introduce this exhibit now because it uses the word "copied," which is not relevant to damages.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 47, or as to Samsung's beliefs or intent. |
| 48 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>• Dong Hoon Chang; Ravin Balakrishnan; Cross- | Apple should not be permitted to introduce PX-48 into evidence for multiple reasons.  Apple never offered PX 48 at trial, and failed to disclose PX 48 as an exhibit Mr. Musika may testify about.  Apple never indicated that it considered PX 48 to be relevant to damages and should not be permitted to now argue for the admission of this exhibit under a new theory of relevance<br><br>PX 48 is not relevant to any products at issue.  The document |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Examination.<br><br>PX48 is a document titled "Wave & Galaxy S Expert & regular users UX critique" and is dated July 2010, around the time of Samsung's initial release of the Galaxy S phones.  It summarizes a Samsung survey of both expert and regular users regarding their opinions of the Samsung operating systems that were recently released.  (PX48.4.) The study noted that "[a] key point of discussion with the Galaxy S Phone was its similarities to the iPhone." (Id.) In particular, users saw the Samsung Galaxy graphical user interface main menu "as a copy" of the iPhone's (PX48.32) and "too much like an iPhone" (PX48.63.) The document suggests that Samsung copied the iPhone's patented graphical user interface design because it recognized its desirability among consumers and its advantages over market substitutes and prior designs and is relevant at least as to damages for the Apple D'305 patent, which is relevant to demand for the iPhone as well as the amount of a reasonable royalty for the D'305 Patent. | references the Galaxy S i9000 and the Wave.  The Galaxy S i9000 is not at issue in the new trial, and the Wave was never accused of infringement.  PX 48 is also not relevant to any of the patented features.  And, all pages of PX 48 not referenced by Apple are admittedly not relevant to the patented features.  The inclusion of such evidence is more prejudicial than probative, as it discusses information unrelated to any of the patented features, and improperly suggests that the information is relevant to consumer demand of the patented features.<br><br>Apple alleges that PX 48.32 and PX 48.63 are relevant because they prove that users found Samsung interfaces to be similar to Apple's, but infringement is not at issue in the new damages trial, so this evidence is irrelevant.  Apple seeks to introduce this exhibit because it uses the word "copy," and therefore supports the narrative of alleged wrongdoing that Apple seeks to tell the jury.<br><br>Because this document was not included in the first trial, neither Dr. Balakrishnan nor Dong Hoon Chang provided testimony regarding this document.  This document and opinions regarding this document are not disclosed in Dr. Balakrishnan's expert report.  Dr. Balakrishnan did not provide an expert report on the D'305 patent at all.  This document was also not presented by Apple to Dong Hoon Chang during any deposition, and there is no foundation that he has any knowledge regarding the document. Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|----------------|--------------------|
| | | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 48, or as to Samsung's beliefs or intent. |
| 52 | Admitted at trial:  Admitted.<br><br>• Teksler (Trial Tr. 1959).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:<br><br>• Musika discussed the content of PX52 (the August 4, 2010 presentation) in paragraphs l 74 and 175 of his 3/22 report.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Boris Teksler; Bi Watrous; Ravin Balakrishnan; Philip Schiller; Greg Joswiak; Jun Won Lee; Julie Davis; Cross-Examination<br><br>PX52 is an August 4, 2010, presentation delivered by Apple to Samsung during the course of the parties' pre-litigation negotiations.  This document is primarily relevant to issues in the case other than demand, including without limitation, for example, Samsung's actual notice of infringement with respect to the '381 patent (to the extent notice remains at issue) and Apple's demand before suit was filed that Samsung stop copying Apple's products and stop using Apple's patented technology, which relates to competition between Apple and Samsung. | No objection. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Looking specifically at demand issues, PX52.14 and PX52.17 include references to Samsung's incorporation of Apple's patented utility and design features into Samsung's phones. When considered together with evidence that factors such as physical appearance and ease of use drive consumer demand and sales, that Apple's patented features substantially contribute to physical attractiveness and ease of use, evidence that Samsung incorporated Apple's patented utility and design features into its products supports the inference that Apple would have sold even more phones in the hypothetical market in which the infringing products were absent because the iPhone would not have to compete against infringing phones that offer Apple's patented features and its specific implementation of those features that consumers find highly desirable. | |
| 54 | Admitted at trial:  Admitted.<br>• Denison (Trial Tr. 814).<br><br>Admitted for limited purpose:<br>• In overruling Samsung's objection to this exhibit, the Court held: "Overruled.  The document was produced by BCG at Samsung's request and is relevant at least to issues of willfulness and damages.  The document is not offered for the truth of the matter asserted and therefore is not hearsay.  FRE 613(b) is inapplicable.  The probative value is not outweighed by the risk of confusing the issues or wasting time under FRE 403." (Dkt.  No.  1520 at 5.) However, the document is also admissible for the truth of the matters asserted as an adoptive admission and a busines record made of regularly conducted | PX 54 is not relevant to consumer demand.  Apple's proffer alleges that it is relevant because it discusses Apple's "innovative hardware design & intuitive user experience," "sleek and intuitive user interface,"  and "innovative designs."  Apple's patents do not claim these broad concepts.  Statements about abstract and/or general features of devices are not probative of demand for the specific features of Apple's patents.  Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012)).<br><br>It is clear that Apple's real purpose for proffering this document is not to prove consumer demand, but to build its irrelevant, prejudicial case regarding Samsung's alleged intentional copying Apple by showing competitive analysis documents.  This Court held during the first trial that PX 54 is evidence of copying.  Trial Tr. 836:12-14.  Copying is not relevant to the new damages trial, and so PX 54 should be excluded as |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | market research.<br><br>Included in Musika exhibits:  Yes (in Exhibit 24-S).<br>• 5/8 Rpt.  Exhibit 24-S, item 83; 5/8 Rpt.  Exhibit 53-S, item 4.<br><br>Potential sponsoring witnesses at new trial:<br>• Julie Davis; Cross-Examination.<br><br>PX54 is a document titled "Lessons from Apple," a presentation that was given to STA in Dallas in November 2010.  Its "content is based on a strategic benchmarking project focused on Apple that was conducted for Samsung's DMC Planning group in early 2009.  The findings are based on a combination of market research and interviews with Apple experts and ex-employees." (PX54.2.) The document answers the question "Why you should care about Apple" by explaining that Apple was "Gaining massive share in smartphones." (PX54.4.) The document states that "Apple is universally regarded as being a master of innovation" and offers "Innovative hardware design & intuitive user experience." (PX54.6; see also PX54.20 (iPhone has "superior design"); PX54.13 ("Apple's sleek and intuitive user interface has been a key driver of its value proposition.") ("Clean, beautiful interface.  Clean menu screens.") ("Intuitive, user-friendly navigation & visual elements.  Contextual menus.  Minimization of complexity.").) If admitted for the truth of the matters asserted, this document is relevant to show consumer demand for Apple's patented iPhone hardware and user interface designs, as covered by the D'677, D'305, '915, '163, and '381 patents.  In particular, the document directly ties these innovative designs to the commercial success of the iPhone.  If not admitted for the truth of the matters asserted, it is | irrelevant and highly prejudicial.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 54, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | circumstantial evidence of what Samsung was told about specific features that Samsung included in its Infuse 4G phone, introduced five months later, in April 2011. | |
| 55 | Admitted at trial:  Admitted.<br>• Wang (Trial Tr. 2545).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>• Julie Davis; Cross-Examination.<br><br>PX55 is an internal Samsung presentation titled "Samsung mobile icon design for 2011," which traces the history of Samsung's home screens icons since 2007.  The document illustrates Samsung's move toward iPhone-like icons.  (PX55.5.) It touts as an "example of Good design approach," Apple's "iphone icon container" and notes that "all [Samsung] applications" are following an iPhone-like "icon guideline." (PX55.8.) The document is relevant to show Samsung's recognition of the superiority of Apple's patented D'305 user interface design, which is relevant to both consumer demand and the utility of Apple's invention over other modes, which is relevant to a reasonable royalty for the D'305 Patent. | Apple introduced PX 55 in the first trial with Ms. Jeeyeun Wang in an effort to establish infringement of the D'305 patent.  Trial Tr. 2542:22-2546:16.  Apple did not include this exhibit in Mr. Musika's exhibits. Apple should not be able to propound this exhibit now as evidence of damages.<br><br>Furthermore, this exhibit bears no relevance to consumer demand.  It is an internal Samsung competitive analysis document regarding Samsung's design styles.  The pages Apple cites as relevant to the D'305 say nothing about consumer opinion or demand. In reality, Apple intends to use this document to make its alleged copying case, as is evident from its proffer, which describes this document as "illustrat[ing] Samsung's move towards iPhone-like icons."  The Court should exclude this document as irrelevant and prejudicial<br><br>Evidence that Samsung employees – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX56.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 55, or as to Samsung's beliefs or intent. |
| 57 | Admitted at trial:  Admitted. | Apple should not be permitted to introduce PX 57 into evidence |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • Balakrishnan (Trial Tr. 1763). <br><br> Admitted for limited purpose:  No. <br><br> Included in Musika exhibits:  Yes. <br> • 5/8 Rpt.  Exhibit 24-S, item 57. <br><br> • 5/8 Rpt.  Exhibit 25-S, item 36. <br><br> Potential sponsoring witnesses at new trial: <br> • Ravin Balakrishnan; Julie Davis; Cross-Examination. <br><br> PX57 is a evaluation created by Samsung during development of the Galaxy tablet line of products.  It presents side-by-side screenshots comparing the functionality of a Samsung prototype tablet with that of the iPad 2 on dozens of user-experience issues.  For each issue, Samsung provided commentary about the importance of an iPad 2 feature and the drawbacks associated with the absence or imperfection of that feature in the Samsung prototype.  In the top right corner of each page, Samsung labeled each issue as either "Critical," "Serious," or "Minor." <br><br> Samsung identified the lack of "bounce" in its prototype tablet as "Critical" and "Serious" issues.  For example, Samsung acknowledged that its product "Lacks Fun, Wow Effect" because its "top-most, bottom-most, and diagonal movements lack bounce effect." (PX57.19.) Samsung also noted that the iPad 2 possessed a "fun element from a natural Bounce effect that follows hand gestures." (PX57.73.) These references point to the value of the '381 Patent, as assessed by Samsung's engineers. This evidence establishes the bounce feature's value to the user | for multiple reasons. <br><br> Nothing in PX 57 suggests that Samsung's engineers were implementing these features to satisfy any consumer demand. In this exhibit, Samsung is evaluating the performance of its own pre-production model, P5. This document is a competitive analysis of pre-production products, and does not indicate whether or not consumers demand any of the features described therein. During the first trial, this document was not used to demonstrate consumer demand. <br><br> PX 57 is not relevant to any products at issue, or any accused products whatsoever.  The document references the P5, code name for the Galaxy Tab 8.9.  The Galaxy Tab 8.9 was never accused of infringement. <br><br> PX 57 is not relevant to the patented features.  Apple argues that this excerpt refers to the '381 patent.  However, the '381 patent does not cover the concept of bounce or bounce across an edge generally.  Instead, it covers a very specific implementation of bounce, which must include software instructions disclosing a "stop condition" for translating the document "until the area beyond the edge of the electronic document is no longer displayed."   There is no indication that the stop condition is disclosed in the document.  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally.  All pages of PX 57 not cited by Apple are not relevant to the patented features.  Apple does not dispute that other pages of the document are not related to the patented features.  The inclusion of such evidence is more prejudicial than probative, as it |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | experience, and hence to consumer demand for products incorporating that feature.  This evidence is also directly relevant to the jury's determination of a reasonable royalty, which includes evidence of the "utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results." (Dkt.  No.  1903 at 56 (*Georgia Pacific* factor 9).)<br><br>PX57 further indicates that "Bounce effect is scheduled to be reviewed." It can be inferred from the presence of the patented bounce feature in Samsung tablet devices subsequently sold the public that Samsung instructed its engineers to build the bounce feature into its devices.  Other testimony in depositions establishes that Samsung revised its implementation of the bounce effect in its Galaxy Tab line of tablets by reference to the Apple feature.  The Galaxy Tab 7.0 is one of the infringing products in the new trial.  This is a type of evidence that Mr. Wagner has admitted constitutes evidence of demand.  (Dkt. No.  2407-17 at 466:14-20 ("Q:  And would you count in – as evidence of demand instructions from executives to designers, that they needed to design products in a way that looked like Apple's in order to make them more attractive to consumers? . . . A:  Yes.").) | discusses information unrelated to any of the patented features, and improperly suggests that the information is relevant to consumer demand of the patented features.<br><br>In addition, Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan.<br><br>Evidence that Samsung employees – not consumers – found the functions related to Apple's patents to be of interest is not probative of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX57.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 57, or as to Samsung's beliefs or intent. |
| 58 | Admitted at trial:  Admitted.<br>    •     Denison (Trial Tr. 810).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br>    •     5/8 Rpt.  Exhibit 53-S, item 3. | PX 58 is not relevant to demand for a number of reasons.  PX 58 is not relevant to any Samsung products or patented features at issue. The presentation references the Galaxy S smartphone on one page (PX 58.14), a phone that is not at issue for the damages trial.<br><br>Apple's attempt to link this exhibit to relevant demand is convoluted and unsupported.  The exhibit has never been used in |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Cross-Examination.<br><br>PX58 is a June 17, 2011 e-mail and attachment from Justin Denison to a group of SEC and STA stakeholders with the subject line "GS Choi's [then SEC CEO] Direction and Request to STA." (PX58. 1.) The e-mail attaches the "updated presentation that was shown for purposes of discussion today re; Beat Apple strategy update" and includes "all recent Apple analysis projects that have occurred in the last 6 ~ 9 months." (Id.) The document notes that "STA smart revenue has grown . . . however, still lagging behind Apple." (PX58.11.) The document also notes that "iPhone 4 hardware costs [are] similar to Galaxy S, but ASP premium driving GM gap." (PX58.14.) This document is relevant because it shows Samsung's emphasis on Apple and its recognition that Apple products embodying patented designs allow Apple to maintain price premiums (due to consumer demand) that Samsung cannot.  Further, separate and apart from its value as evidence of consumer demand for the iPhone and the patented features, the document reflects the belief within Samsung that was directly competing with Apple with the Galaxy line of smartphones, which is a disputed issue. The PX58.13 & 14 also provide evidence of the profits that Samsung and Apple earn from sales of the smartphones, which is independently a disputed fact. | a damages capacity.  It was not cited as evidence of demand for design patents or utility patents in either the Musika Report or the Davis Report Ex. 24-S and Ex. 25-S.  At trial, the exhibit was admitted for impeachment of Justin Denison's 30(b)(6) testimony regarding copying and competitive analysis. The Court recognized the purpose of the exhibit during questioning: "He was designated on copying and that document is Apple's evidence of copying.  I think it was fair." (Trial Tr. 836:12-14.)<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 58, or as to Samsung's beliefs or intent. |
| 60 | Admitted at trial:  Admitted.<br><br>• Denison (Trial Tr. 818).<br><br>Admitted for limited purpose:  No. | PX 60 is not relevant to demand for a number of reasons.  PX 60 is not relevant to any patented features at issue. The presentation references the Galaxy S smartphone on one page (PX 58.14), a phone that is not at issue for the damages trial.<br><br>Apple's attempt to link this exhibit to relevant demand is convoluted and unsupported.  Reflecting the success of Apple's |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Included in Musika exhibits:  Yes (in Exhibit 53-S).<br><br>•      5/8 Rpt. Exhibit 53-S, item 11 .<br><br>Potential sponsoring witnesses at new trial:<br><br>•      Julie Davis; Cross-Examination.<br><br>PX60 is a "Top Secret" internal Samsung document analyzing the "Paradigm Shift" in the smartphone marketplace.  The document reflects evidence of the tremendous value of the patented designs and features and the benefit that Samsung has enjoyed from employing Apple's patented designs and features in its infringing devices.  (PX60.5; 60.6; 60.8.)  The document also reflects the success of the patented product.  (See e.g. PX60.8-60.19.)  The document also reflects direct evidence that consumers not only demand the latest Apple models, but also demand older Apple models.  (See PX60.56)  This directly rebuts Samsung's (and Mr. Wagner's) argument that Apple would not have capacity to recoup sales lost due to the infringing phones and that a consumer would not consider an older model phone if it could not purchase the latest model (due to lack of supply).  (See PX60.56 (nearly 20% of new iPhone activations are used or second hand iPhones); id. (since iPhone 4S launch, 11% of total iPhone activations at US carriers were used models of earlier iPhones); PX60.58.  Mr. Wagner contends that an insignificant number of the 2.7 million consumers (and not more than 5%) that purchased an infringing Samsung phone during the design around period would have purchased an Apple phone.  (Wagner Dep. Tr. at 825:23-826:6.)  This internal Samsung document rebuts that claim. The document also reflects direct evidence that Samsung's Galaxy Tab is in direct competition | products is not relevant to the lost profits inquiry because Samsung does not dispute demand for the products.  However, Apple cannot name a single patented feature listed in the exhibit, just a claim that the document "reflects evidence…of the patented designs and features" without citation. The exhibit has never been used in a damages capacity.  It was not cited as evidence of demand for design patents or utility patents in either the Musika Report or the Davis Report Ex. 24-S and Ex. 25-S. At trial, the exhibit was admitted for impeachment of Justin Denison's 30(b)(6) testimony regarding copying and competitive analysis. The Court recognized the purpose of the exhibit during questioning: "He was designated on copying and that document is Apple's evidence of copying.  I think it was fair." (Trial Tr. 836:12-14.)<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 60, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
|  | with the Apple iPad, which is an issue that Samsung disputes in this case.  (PX60.6; see also PX60.8 (describing a "two horse race between Apple & Samsung").  The document also is direct evidence that Samsung's general business plan is to hold itself out as Apple's direct competitor.  (See id; see also 60 24; 60.43 (Galaxy was "1st to Challenge iPhone Directly"). |  |
| 62 | Admitted at trial:  Admitted.<br><br>    •   Denison (Trial Tr. 816).<br><br>Admitted for limited purpose:  Yes.<br><br>    •   Do not consider as evidence that Samsung's conduct was willful: however, you may consider it for some other purpose.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •   Julie Davis; Cross-Examination.<br><br>PX62 is an internal Samsung document reflecting Samsung's "iPhone 5 Counter Strategy."  The document reflects market demand for Apple's patented products.  The document also rebuts Samsung (and Mr. Wagner's) contention that there is no demand from Android users to purchase an iOS device (and vice versa) and that Apple and Samsung do not compete in all relevant market segments.  It makes specific reference to multiple new trial products, including the Captivate, Epic 4G, Infuse 4G (Demsey), and Druid Charge.  (PX62.12 to PX62.15).  This document, which identifies an "Offensive Portfolio | PX 62 is not relevant to demand for a number of reasons. PX 62 is not relevant to any patented features at issue. Samsung does not dispute that there is demand for Apple's products, but the exhibit does not include evidence of demand for any of Apple's patented features.<br><br>Apple's attempt to link this exhibit to relevant demand is convoluted and unsupported.  STA's competitive strategy is simply a reflection of the market demand for Apple products – undisputed in this trial – but has not relation to the lost profits demand for patented features.  It was not cited as evidence of demand for design patents or utility patents in either the Musika Report or the Davis Report Ex. 24-S and Ex. 25-S.  At trial, the exhibit was admitted for impeachment of Justin Denison's 30(b)(6) testimony regarding copying and competitive analysis. The Court recognized the purpose of the exhibit during questioning: "He was designated on copying and that document is Apple's evidence of copying.  I think it was fair." (Trial Tr. 836:12-14.)<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 62, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Strategy [to go] directly after ... potential iPhone purchasers" as well as a "Defensive Portfolio Strategy [to] minimize iPhone defections," reflects the competition across carriers and price points and supports Apple's position that Samsung consumers would have purchased Apple iPhones and not a Samsung product in significant numbers if Samsung had not infringed. (PX62.3; 62.11-62.20.) | |
| 69 | Admitted at trial:  Admitted.<br><br>    •    Benner [video] (Trial Tr. 2028).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br><br>    •    3/22 Rpt. Exhibit 3 at p. 47 of 51 (cited as Benner Exhibit 1594.  (Admitted PX69 is the same as Benner Exhibit 1594, as reflected on the deposition exhibit sticker on the front of Admitted PX69.)<br><br>Potential sponsoring witnesses at new trial:<br><br>    •    Timothy Benner; Julie Davis; Cross-Examination.<br><br>PX69 is an independent market research and survey report by J.D. Powers.  It seeks to directly measure consumer preferences with respect to smartphones. It includes evidence of the high consumer demand for Apple's smartphone products.  (*See, e.g.*, PX69.87-88.)  Evidence of the success of the iPhone alone will help Apple establish "hut for" causation of lost profits because it will support an inference that at least some consumers unable to | This third-party evidence of consumer demand for Apple's products is not relevant to the damages trial because demand for the products is not disputed.  However, Apple's attempt to use this exhibit as evidence that features such as "physical appearance" and "ease of use" are not supported.  But praise for the beauty and design of the iPhone are not sufficient to prove demand for the patented design features.  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).)  This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.)<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | purchase an infringing Samsung phone would be reasonably likely to purchase an iPhone instead.  PX69 also includes numerous references to consumer demand for the physical appearance and ease of use of smartphone products.  (*See, e.g.,* PX69.57 ("Main reasons for choosing the smartphone manufacturer include *Liked overall design or style* (45%), *Internet capability* (44%), and *Touch screen* (43%).").)  This evidence is relevant to the second *Panduit* factor (absence of commercially acceptable non-infringing alternatives).  Apple will establish through other testimony and exhibits that the design patents reflect substantial elements of the overall design of the iPhone and that the utility patents contribute to the intuitive user interface that make the iPhone easy to use. | bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 69, or as to Samsung's beliefs or intent. |
| 102 | Admitted at trial:  Not Offered.  The parties entered into a stipulation before the first trial not to offer this exhibit to simplify the sealing issues at trial.  (Dkt. No. 1597.)<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes (in Exhibit 32-S).<br><br>    &bull;    5/8 Rpt. Exhibit 32-S.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;    Philip Schiller; Greg Joswiak; Mark Buckley; Julie Davis; Cross-Examination.<br><br>PX102 is an Apple financial document showing sales of the iPhone.  The exhibit includes evidence of Apple's sales of the iPhone and iPad, and hence evidence of demand for the patented product under the first Panduit factor. | Samsung objects to Apple's characterization that PX 102 is relevant to demand.  Samsung does not dispute demand for the Apple products, so there is no reason to admit PX 102 on those grounds.  These financial calculations were cited Exhibit 32-S of Mr. Musika's Report and Exhibit 32-S2 of Ms. Davis's Report under the heading "Apple iPhone P&L Summary," not in the list of documents considered for Demand for Design Patents and Trade Dress (Ex. 24-PT) or Demand for Utility Patents (Ex. 25-PT).  Samsung also notes that the bates number for PX 102.01 (APLNDC-Y0000408219) does not appear in Exhibit 32-S of Mr. Musika's 5/08 Report. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| 103 | Admitted at trial:  Not Offered.  The parties entered into a stipulation before the first trial not to offer this exhibit to simplify the sealing issues at trial.  (Dkt. No. 1597.)<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes (in Exhibit 33-S).<br><br>    &bull;    5/8 Rpt. Exhibit 33-S.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;    Philip Schiller; Greg Joswiak; Mark Buckley; Julie Davis; Cross-Examination.<br><br>PX103 is an Apple financial document showing sales of the iPad.  The exhibit includes evidence of Apple's sales of the iPhone and iPad, and hence evidence of demand for the patented product under the first Panduit factor. | Samsung objects to Apple's characterization that PX 103 is relevant to demand.  Samsung does not dispute demand for the Apple products, so there is no reason to admit PX 103 on those grounds.  These financial calculations were cited in Exhibit 33-S2 of Ms. Davis's Report under the heading "Apple iPhone P&L Summary," not in the list of documents considered for Demand for Design Patents and Trade Dress (Ex. 24-PT) or Demand for Utility Patents (Ex. 25-PT). The bates range for PX 103 (APLNDC-Y0000408212-408231) does not appear in Exhibit 33-S of Mr. Musika's 5/08 report. Samsung also objects to the inclusion of iPod Touch sales data in PX 103 as the iPod Touch is not an accused product. |
| 127 | Admitted at trial:  Admitted.<br><br>    &bull;    Schiller (Trial Tr. 642).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;    Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination. | Apple should not be permitted to introduce PX-127 into evidence for multiple reasons.<br><br>FRE 402/403, Relevance/Prejudice: PX 127 is not relevant to the '381 patent.  Apple argues that this advertisement  refers to the '381 patent.  However, the '381 patent does not cover the concept of bounce or bounce across an edge generally.  Instead, it covers a very specific implementation of bounce.  The video fails to show the patented method of bounce.<br><br>First, the '381 patent requires that part of the snapback occur while the user still has a finger on the screen.  *See* '381 patent at |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | PX127 is an advertisement that shows marketing of the '381 patent, as well as Apple's "product as hero" focus on the industrial design of its product.  "Product as hero" advertisements focus on the image of the product as a central element of the advertisement and thus emphasis Apple's exterior design in its marketing.  This advertisement is relevant as it 1) demonstrates the interrelationship between demand for Apple's products and demand for Apple's patented features, as Apple markets its products by focusing on its patented features and patented designs, 2) shows Apple generating demand for a specific patented feature at issue in the new trial:  and 3) rebuts Samsung's expert Mr. Wagner's charge that Apple's commercials "generally focus on advertising other functionalities of their products."  (Wagner 8-26-2013 Report 83.) | claim 19 ("in response to an edge of the electronic document being reached … while the object is still detected on or near the touch screen display:).  The video fails to demonstrate this behavior, because no finger is near the screen as the bounceback occurs.  This video simply underscores the fact that there are many types of bounce not covered by the '381 patent.<br><br>Second, the '381 patent requires an implementation of bounce based on software instructions disclosing a "stop condition" for translating the document "until the area beyond the edge of the electronic document is no longer displayed."  There is no disclosure of the software performing the bounce in the advertisement.<br><br>In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task. |
| 133 | Admitted at trial:  Admitted<br><br>    •    Schiller (Trial Tr. 601) | Apple should not be permitted to introduce PX-133 into evidence for multiple reasons. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Admitted for limited purpose:  Yes<br><br>• Do not consider for the truth of the matter asserted<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination<br><br>PX133 is a New York Times article by David Pogue, published in January 2007 shortly after the announcement of the iPhone. The article praises the design of the iPhone, likening its creation to the work of the "fairy godmother in 'Cinderella' "who would "wave her wand and turn some homely and utilitarian object, like a pumpkin or a mouse, into something glamorous and amazing." (PX133.1.) The article states that "1 Steve Jobs] granted the wishes of millions of Apple followers and rumormongers by turning the ordinary cellphone into ... the iPhone." (Id.) "[T]he iPhone is gorgeous. Its face is shiny black, rimmed by mirror-finished stainless steel." (Id.) "The phone is slightly taller and wider than a Palm Treo." (Id.) "You won't complain about too many buttons on this phone; it comes very close to having none at all. The front is dominated by a touch screen." (Id.) "The iPhone's beauty alone would be enough to prompt certain members of the iPod cult to dig for their credit cards. But its Mac OS X-based software not so much a smartphone as something out of 'Minority Report.'" (PX133.2.) "[T]here's no scroll wheel. Instead, you flick your finger on the glass to send the list scrolling freely ... the effect is | Throughout trial Apple consistently referenced this exhibit as evidence – notwithstanding the Court's limiting instruction as to the truth of the matter assserted – that the iPhone was "glamorous and exciting" (Trial Tr. 313:11-17 (opening)), "gorgeous" (Trial Tr. 4078:18-22 (closing)), and that it's beauty "alone would be enough to excite people." (Trial Tr. 600:10-602:19.) But praise for the beauty and design of the iPhone are not sufficient to prove demand for the patented design features. This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.) Even the article's reference to the "shiny black" face is praise for the "gorgeous" generalized design, not for the narrow construction of the D'677.<br><br>Apple argues that the document shows consumer demand for the features of the '915 and '163 utility patents. However, the document discusses only general scrolling and pinch-to-zoom behavior. In contrast, the '915 patent does not cover "two ginered pinch," but rather the "all important test" of distinguishing a one-finger scroll versus a two finger gesture. Trial Tr. 1857:20-24. Similarly, the document discusses double-tap to zoom. In contrast, the '163 does not cover "double-tap to |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | both spectacular and practical." (Id.) "To enlarge [tiny type], you can double-tap any spot." (PX133.3.) "[Y]ou can use a brand-new feature that Apple calls multitouch: you slide your thumb and forefinger together (like pinching) or apart on the glass. As you do so, the Web page before you grows or shrinks in real time ... it's wicked cool." "[H]ow many would leap at the chance to replace their current awkward models with something with the class, the looks and the effortlessness of an iPod?" The document is relevant to show consumer demand for the iPhone's patented industrial design, including the design of the D'677 patent, and the patented design of iPhone's user interface features, such as those of the '915 and '163 patents. The document is also relevant to show industry recognition of the advantages of Apple's designs over other modes. The document also helps establish that the elements of the D'677 Patent are significant elements of the overall exterior appearance of the iPhone, which supports the relevance of other testimony and exhibits. | zoom" but instead requires double-tap to zoom, double-tap to recenter (as well as an underlying structured electronic document). Trial Tr. 1878:17-1879:13 (testimony by Dr. Singh admitting that tap-to-zoom is disclosed in the prior art). In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '915 covers pinch to zoom generally and the '163 covers double-tab to zoom generally.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities. Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof. Apple must make a particularized showing that patented features drive consumer demand. Apple's "generalized evidence" strategy will simply invite the jury to mistake its task. |
| 134 | Admitted at trial: Admitted<br><br>    •   Schiller (Trial Tr. 607)<br><br>Admitted for limited purpose: Yes<br><br>    •   Do not consider for the truth of the matter asserted<br><br>Included in Musika exhibits: No.<br><br>Potential sponsoring witnesses at new trial: | Apple should not be permitted to introduce PX-134 into evidence for multiple reasons.<br><br>Apple argues that the document shows consumer demand for the features of the '915 and '163 utility patents. However, the document discusses only general scrolling and pinch-to-zoom behavior. In contrast, the '915 patent does not cover "two ginered pinch," but rather the "all important test" of distinguishing a one-finger scroll versus a two finger gesture. Trial Tr. 1857:20-24. Similarly, the document discusses double-tap to zoom. In contrast, the '163 does not cover "double-tap to zoom" but instead requires double-tap to zoom, double-tap to |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination<br><br>PX134 is a Wall Street Journal article titled "Testing Out the iPhone," published in June 2007.  The article notes that "most of these 'smart phones' have had lousy software, contusing user interfaces." (PX134.1.)  The article praises the iPhone's design.  "[T]he iPhone is, on balance, a beautiful and breakthrough handheld computer ... its clever finger-touch interface, which dispenses with a stylus and most buttons, works well."  (Id.)  The article also notes the iPhone's "simple interface, with just four rows of colorful icons on a black background."  (PX134.2.)  The article specifically praises the iPhone's patented industrial design:  "Hardware:  The iPhone is simply beautiful. . . . almost its entire surface is covered by a huge, vivid 3.5-inch display.  There's no physical keyboard, just a single button ... The phone is about as long as the Treo 700 . . . but it's slightly wider than the BlackJack or Treo."  (Id.)  The article specifically praises iPhone's patented user interface features:  "Touch-screen interface:  To go through long lists of emails, contacts, or songs, you just 'flick' with your finger . . .  To enlarge photos, you 'pinch' them by placing two fingers on their corners and dragging them in or out.  To zoom in on portions of Web pages, you double-tap with your fingers . . . In general, we found this interface, called 'multi- touch,' to be effective, practical and fun."  (PX134.3.)  In sum, the article concludes, "the iPhone is a whole new experience and a pleasure to use."  (PX134.5.)  The document is relevant to show consumer demand for the iPhone's patented industrial design, including the design of the D'677 patent, and the patented design of iPhone's user interface, such as those of the D'305, '915, and '163 patents.  The document is also relevant to show industry recognition of the advantages of | recenter (as well as an underlying structured electronic document).  Trial Tr. 1878:17-1879:13 (testimony by Dr. Singh admitting that tap-to-zoom is disclosed in the prior art).  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '915 covers pinch to zoom generally and the '163 covers double-tab to zoom generally.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Apple's designs over other modes.  It also reinforces the significance of the patents to both the exterior design of the product and the easy to use multi-touch user interface, which supports the relevance of other exhibits. | |
| 135 | Admitted at trial:  Admitted<br><br>&bull;   Schiller (Trial Tr. 608)<br><br>Admitted for limited purpose:  Yes<br><br>&bull;   Do not consider for the truth of the matter asserted<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>&bull;   Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination<br><br>PX135 is a Time magazine special article regarding "Best Inventions of 2007," which names the iPhone as "Invention of the Year."  (PX135.1.)  The cover photo of the magazine is of the iPhone's industrial design.  (PX135.3.)  The article praises the iPhone's design and lists as the first reasons for its selection, "The iPhone is pretty."  (PX135.1.)  The article further praises the iPhone's multitouch technology:  "Apple's engineers used the touchscreen to innovate past the graphical user interface to create a whole new kind of interface, a tactile one that gives users the illusion of actually physically manipulating data with their hands—flipping through album covers . . . stretching and | Apple should not be permitted to introduce PX-135 into evidence for multiple reasons.<br><br>Apple argues that the document shows consumer demand for the feature of the '915 utility patent.  However, the document discusses only general scrolling and pinch-to-zoom behavior.  In contrast, the '915 patent does not cover "two ginered pinch," but rather the "all important test" of distinguishing a one-finger scroll versus a two finger gesture.  Trial Tr. 1857:20-24.  The inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '915 covers pinch to zoom generally.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | shrinking photographs with their fingers." (PX135.2.)  "This is, as engineers say, nontrivial.  It's part of a new way of relating to computers."  (Id.)  The document is relevant to show consumer demand for the iPhone's patented industrial design, including the design of the D'677 patent, and the patented design of iPhone's user interface, such as those of the '915 patent.  The document is also relevant to show industry recognition of the advantages of Apple's patented multi-touch features, such as those covered in the '915 and '163 patents, over earlier modes.  Further, it supports Apple's contention that the utility patents reflect a significant contribution to the simple, intuitive user interface on the touchscreen that made the iPhone product easy to use and thus supports the relevance of additional exhibits. | |
| 142 | Admitted at trial:  Admitted<br><br>    •     Schiller (Trial Tr. 610)<br><br>Admitted for limited purpose:  Yes<br><br>    •     Do not consider for the truth of the matter asserted<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •     Philip Schiller; Greg Joswiak; Julie Davis; Cross-Examination<br><br>PX142 is an article from the NY Times reporting the US PTO's unprecedented exhibit honoring "Apple's history of design and | Apple should not be permitted to introduce PX 142 into evidence for multiple reasons.  This exhibit was not included in Mr. Musika's report and Ms. Davis only references it as part of Mr. Schilller's testimony regarding industry praise.  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.)<br><br>Apple claims that this exhibit "illustrates… market demand for Apple's patented design features, namely the distinctive front |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | innovation." (PX142.1.)  The document reflects industry praise and value for Apple's patented products, designs, and features. The article specifically notes that "Patents on technological devices do not always result in real products that hit the consumer market, but they document an inventor's research and methodology in different areas of design and engineering. Often, multiple patented technologies come together to form one real product, like the iPad." (Id.)  The document illustrates the industry praise and market demand for Apple's patented design features, namely the distinctive front face of the iPhone as covered by the D'677 patent.  The document supports Apple's argument that the translucent, black-colored face of the iPhone is distinctive and instantly recognizable, as it was displayed prominently as the central aspect of the PTO's exhibit. | face of the iPhone as covered by the D'677 patent" yet the patented features of the D'677 are not mentioned once within the article.  This exhibit was admitted through Mr. Schiller, and his testimony indicates that it is much more about praise for Steve Jobs than of the patented features: "I thought it was really great...after the passing of Steve Jobs, to create an exhibit for people to see his patents and design inventions that he was named on and set that up for people just to go read and see." (Trial Tr. 609:10-611:20.) |
| 143 | Admitted at trial:  Admitted<br><br>    •    Schiller (Trial Tr. 630)<br><br>Admitted for limited purpose:  No<br><br>Included in Musika exhibits:  Yes (in Exhibit 24-S).<br><br>    •    5/8 Rpt. Exhibit 24-S, item 6.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •    Philip Schiller; Greg Joswiak; Julie Davis⁻, Cross-Examination<br><br>PX143 contains excerpts from an iPhone buyer survey showing that 94% of respondents rated "ease of use" as important to their | PX 143 does not demonstrate demand for the patented features, and is therefore not relevant to the question of acceptable non-infringing alternatives. In fact, not a single patented feature is referenced in the seven page excerpt.  Instead, Apple's marketing department determined that "Web capabilities, ease of use, and apps are key features in the decision to purchase an iPhone," while "The importance of Attractive appearance and design is rated relatively lower." (PX 143.5, .7).  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|----------------|--------------------|
| | purchase decision, while 72% rated "attractive appearance and design" important to purchase decision.  This evidence is relevant to demonstrating consumer demand for the products and patented features and to the absence of commercially acceptable non-infringing alternatives.  Apple will separately provide testimony and evidence that the patents in suit contribute in a significant way to the exterior appearance of the iPhone and to the easy and intuitive user interface provided with Apple's smartphones and tablets. | which Apple is asserting patent protection are very specific." (*Id.* at 10.)<br><br>Mr. Schiller's trial testimony regarding these buyer surveys similarly focused on the unpatentable "attractive appearance" and "ease of use" of iPhones.  (Trial Tr. 634:4-638:8.) There was no consideration given to demand for the specific patented features at issue – e.g., the black, flat front face depicted in D'677.  In this limited damages trial Samsung does not dispute that there is consumer demand for the iPhone 3GS and iPhone 4, yet Apple's circular argument that demand for the products proves that there is demand for the features conflates the first two *Panduit* factors and risks jury confusion over exhibits such as PX 143.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 143, or as to Samsung's beliefs or intent. |
| 144 | Admitted at trial:  Admitted | PX 144 does not demonstrate demand for the patented features, and is therefore not relevant to the question of acceptable non- |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • Schiller (Trial Tr. 630)<br><br>Admitted for limited purpose: No<br><br>Included in Musika exhibits: Yes (in Exhibit 24-S).<br><br>• 5/8 Rpt. Exhibit 24-S, item 6.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Philip Schiller; Greg Joswiak: Julie Davis˙, Cross-Examination<br><br>PX144 contains excerpts from an iPhone buyer survey showing that 95% of respondents rated "ease of use" as important to their purchase decision, while 81% rated "attractive appearance and design" important to purchase decision. This evidence is relevant to demonstrating consumer demand for the products and patented features and to the absence of commercially acceptable non-infringing alternatives. Apple will separately provide testimony and evidence that the patents in suit contribute in a significant way to the exterior appearance of the iPhone and to the easy and intuitive user interface provided with Apple's smartphones and tablets. | infringing alternatives. In fact, not a single patented feature is referenced in the seven page excerpt. Instead, Apple's marketing department determined that "Web capabilities, ease of use, and apps are key features in the decision to purchase an iPhone," while "The importance of Attractive appearance and design is rated moderately important." (PX 144.5, .7). This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.)<br><br>Mr. Schiller's trial testimony regarding these buyer surveys similarly focused on the unpatentable "attractive appearance" and "ease of use" of iPhones. (Trial Tr. 634:4-638:8.) There was no consideration given to demand for the specific patented features at issue – e.g., the black, flat front face depicted in D'677. In this limited damages trial Samsung does not dispute that there is consumer demand for the iPhone 3GS and iPhone 4, yet Apple's circular argument that demand for the products proves that there is demand for the features conflates the first two *Panduit* factors and risks jury confusion over exhibits such as PX 144.<br><br>Apple cannot rely separately on this exhibit as evidence that |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 144, or as to Samsung's beliefs or intent. |
| 145 | Admitted at trial:  Admitted<br><br>    &bull;    Schiller (Trial Tr. 631)<br><br>Admitted for limited purpose:  No<br><br>Included in Musika exhibits:  Yes (in Exhibit 24-S).<br><br>    &bull;    5/8 Rpt. Exhibit 24-S, item 6.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;    Philip Schiller; Greg Joswiak: Julie Davis˙, Cross-Examination<br><br>PX145 contains excerpts from an iPhone buyer survey showing that 96% of respondents rated "ease of use" as important to their purchase decision, while 82% rated "attractive appearance and design" important to purchase decision.  This evidence is | PX 145 does not demonstrate demand for the patented features, and is therefore not relevant to the question of acceptable non-infringing alternatives. In fact, not a single patented feature is referenced in the six page excerpt.  Instead, Apple's marketing department surveyed only "ease of use" and "attractive appearance and design." (PX 145.5, .6).  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.) |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | relevant to demonstrating consumer demand for the products and patented features and to the absence of commercially acceptable non-infringing alternatives.  Apple will separately provide testimony and evidence that the patents in suit contribute in a significant way to the exterior appearance of the iPhone and to the easy and intuitive user interface provided with Apple's smartphones and tablets. | Mr. Schiller's trial testimony regarding these buyer surveys similarly focused on the unpatentable "attractive appearance" and "ease of use" of iPhones.  (Trial Tr. 634:4-638:8.)  There was no consideration given to demand for the specific patented features at issue – e.g., the black, flat front face depicted in D'677.  In this limited damages trial Samsung does not dispute that there is consumer demand for the iPhone 3GS and iPhone 4, yet Apple's circular argument that demand for the products proves that there is demand for the features conflates the first two *Panduit* factors and risks jury confusion over exhibits such as PX 145.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms.Davis is an accountant and has no basis to testify concerning documents such as PX 145, or as to Samsung's beliefs or intent. |
| 146 | Admitted at trial:  Admitted<br><br>• Schiller (Trial Tr. 631)<br><br>Admitted for limited purpose:  No | PX 146 does not demonstrate demand for the patented features, and is therefore not relevant to the question of acceptable non-infringing alternatives. In fact, not a single patented feature is included in the surveyed "features and attributes in iPhone purchase decision" (PX 146.5), nor referenced in the seven page |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Included in Musika exhibits:  Yes (in Exhibit 24-S).<br><br>&bull; 5/8 Rpt. Exhibit 24-S, item 6.<br><br>Potential sponsoring witnesses at new trial:<br><br>&bull; Philip Schiller; Greg Joswiak; Julie Davis˗, Cross-Examination<br><br>PX146 contains excerpts from an iPhone buyer survey showing that 95% of respondents rated "ease of use" as important to their purchase decision, while 82% rated "attractive appearance and design" important to purchase decision.  This evidence is relevant to demonstrating consumer demand for the products and patented features and to the absence of commercially acceptable non-infringing alternatives.  Apple will separately provide testimony and evidence that the patents in suit contribute in a significant way to the exterior appearance of the iPhone and to the easy and intuitive user interface provided with Apple's smartphone and tablets. | excerpt.  Instead, Apple's marketing department again focused on "ease of use" and "attractive appearance and design." (PX 144.6, .7).  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id*. at 10.)<br><br>Mr. Schiller's trial testimony regarding these buyer surveys similarly focused on the unpatentable "attractive appearance" and "ease of use" of iPhones.  (Trial Tr. 634:4-638:8.) There was no consideration given to demand for the specific patented features at issue – e.g., the black, flat front face depicted in D'677.  In this limited damages trial Samsung does not dispute that there is consumer demand for the iPhone 3GS and iPhone 4, yet Apple's circular argument that demand for the products proves that there is demand for the features conflates the first two *Panduit* factors and risks jury confusion over exhibits such as PX 146.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 146, or as to Samsung's beliefs or intent. |
| 178 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes.<br>• 3/22 Rpt.  Exhibit 3, p.  16 of 54.<br><br>Potential sponsoring witnesses at new trial:<br>• Julie Davis; Cross-Examination.<br><br>PX178 is a Samsung commissioned market research report dated November 2008 providing detailed information on the smartphone market and smartphone features that consumers find attractive, and suggesting ways to improve Samsung's user experience strategy.  The research firm spent six weeks preparing the report, which spans over 230 pages.  The report includes comments reflecting demand for Apple's specific patented features, including a reference to Apple's "Patented (application) multi-point touch-screen system that is highly innovative from user interface standpoint" under the heading "Strength." (PX178.160.) This evidence is highly probative of the value of the utility patents, including the '915 Patent's multi-point touch feature, to the user experience, and hence to | Apple should not be permitted to introduce PX 178 into evidence for multiple reasons.<br><br>The Court has made clear that "anything that was previously excluded . . . does not fall within the proper scope of this trial." *See* Dkt. 2443-1 at 12:14-16. Apple itself identified PX 178 as excluded from the first trial.  Dkt. 1973 at 2-3  This exhibit was excluded at trial because Apple's expert on design infringement, Susan Kare, failed to disclose it in her expert report (Dkt. 1563 at 4), and Apple should not be allowed to re-offer an excluded liability document though the back-door of cross-examination during the damages trial.  (*See* Dkt. 2418 at 4.)<br><br>In addition, PX 178 was not cited at as evidence of demand in either the Musika or Davis reports.<br><br>Apple proffers that that third parties and consumers both find exterior appearance and ease of use to be significant factors in purchasing decisions, yet those generalized factors do not drive demand.  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | consumer demand for products incorporating that feature. Market research reports are prototypical evidence on consumer demand.  This evidence is also directly relevant to the jury's determination of a reasonable royalty, which includes evidence of the "utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results." (Dkt.  No.  1903 at 56 (*Georgia Pacific* factor 9).) The report is also replete with references relevant to the first and second *Panduit* factors.  Regarding the first *Panduit* factor (demand for the patented product), PX178 includes numerous references to the iPhone's popularity.  For example, the report notes that "Apple will continue to dominate the touch-screen/3G market." (PX178.160.) The report also reinforces that third parties and consumers both find exterior appearance and ease of use to be significant factors in purchasing decisions.  PX178 includes numerous references relating to all three categories of evidence probative of this inference.  (*See, e.g.*, PX178.97 ("finding a handset that is attractive to the consumer is a key factor in that consumer's handset purchase decision"); PX178.92 ("smartphone users consider the ease of operation the top factor in satisfaction"); PX178.207 ("UX [user experience] of the iPhone has made it a BIC [best in class] device"); PX178.160 (one of Apple's "Strength[s]" is "Patented (application) multi-point touch-screen system that is highly innovative from user interface standpoint").) Apple will separately provide testimony and evidence that the patents in suit contribute in a signficant way to the exterior appearance of the iPhone and to the easy and intuitive user interface provide with Apple's smartphones and tablets.  In combination with other documents that point to the edge to edge glass front and prominence of the black display on the front of the iPhone, the evidence in PX178 both reflects | insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).)  This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.)  Furthermore, PX 178 does not have any connection to the '915 patent.  Apple provides no evidence that the '915 patent, entitled "Application programming interfaces for scrolling operations," is the patent referenced herein.  The citation may be referencing any number of Apple patent applications.  To give just one hypothetical example Apple has a patent to U.S. Patent No. 7,663,607, entitled "Multipoint touchscreen."  Apple cannot rely separately on this exhibit as evidence that consumers appreciate "ease of use" and good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.  Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 178, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | consumer demand for the iPhone and the patented features. | |
| 179 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>    •    DongSeok Ryu; Cross-Examination<br><br>PX179 is an internal Samsung document that compares the graphical user interface ("GUI") of a Samsung development phone (now part of the infringing Galaxy line of smartphones) against several competitors, including the Apple GUI.<br><br>The document reflects industry praise and market demand and value for Apple's patented design features, namely the distinctively smooth, rounded corners and soft and transparent feel of the icons covered by the D'305 patent.  For example, the document specifically describes the Apple GUI as an "Aqua Theme GUI," the only GUI amongst all of those considered that was distinctively characterized.  (PX179.12.) The document further specifically acknowledges that "[i]nfluence of [the iPhone's] GUI is great" and touts Samsung's user interface as having an "Apple-like design." (PX179.13.) The document supports Apple's argument that the patented features offer value over other alternatives and that Samsung enjoyed substantial benefit from its use, particularly as it tried to position itself as a direct competitor to Apple by distinguishing itself among other Android manufacturers that had not employed Apple's patented designs.  This information is relevant to consumer demand and also to the utility of the patent in comparison to other options, | PX 179 has no relevance to the damages trial because the only Samsung phone referenced or featured in the exhibit is the not-at-issue Galaxy S i9000.  (Dkt. 2271 at 27.)<br><br>PX 179 was not cited at all in either the Musika or Davis reports.  Furthermore, the exhibit was excluded at trial because Apple's expert on design infringement, Susan Kare, failed to disclose it in her expert report (Dkt. 1563 at 4), and Apple should not be allowed to re-offer an excluded liability document though the back-door of cross-examination during the damages trial.  (*See* Dkt. 2418 at 4.) |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | which is relevant to the amount of the reasonable royalty for the D'305 Patent. | |
| 180 | Admitted at trial:  Admitted.<br><br>    •    Sheppard (Trial Tr. 3016).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br><br>    •    PX180 was incorporated into Musika's expert report by stipulation and court order. (See Dkt. No. 1554.)<br><br>Potential sponsoring witnesses at new trial:<br><br>    •    Julie Davis; Cross-Examination.<br><br>PX180 is a Samsung financial document showing sales of the infringing phones.  Ms. Davis used financial information in PX180 to calculate Apple's damages.  The number of infringing sales made by Samsung is also relevant to demand because the extent of Samsung's infringement is relevant to demand. Specifically, the jury will be instructed that it may consider in determining a reasonable royalty "the extent to which the infringer has made use of the invention and any evidence probative of the value of that use."  (Dkt. No. 1903 at 56 (*Georgia Pacific* factor 10).)  Apple intends to show that Samsung made use of Apple's patented design and utility features by incorporating them into its infringing phones, and profited from that use through the sale of millions of infringing phones. | Samsung objects to the inclusion of irrelevant financial data, particularly that relating to unaccused products or products not at issue in the damages trial.  The use of financial information including products, sales figures and revenues not at issue in the new trial is prejudicial because it will likely confuse the jury about the amount of sales at issue, and inflate the jury's impression of the amount in controversy.<br><br>PX 180 includes a large number of such irrelevant products, sales figures and revenues: **Acclaim** (SCH-R880) (PX 180.4-.6); **Fascinate** (SCH‑I500) (PX 180.22-.24); **Galaxy Ace** (GT-S5830, GT-S5838, SCH-I579, SCH-I589, SHW-M240S) (PX 180.28-.30); **Galaxy S (I9000)** (GT-I9000, GT-I9001, GT-I9008, GT-I9018, SCH-I909, SGH-N013, SHW-M110S) (PX 180.34-.36); **Galaxy S 4G** (SGH-T959) (PX 180.37-.39); **Galaxy S II/2** (GT-I9100, GT-I9108, SGH-I777, SGH-N033, SHW-M250K, SHW-M250S) (PX 180.40-.42); **Hercules** (SGH-T989) (PX 180.43-.45); **Gravity** (SGH-T589) (PX 180.46-.48); **Intercept** (SPH‑M910) (PX 180.55-.57); **Mesmerize** (SCH-I500) (PX 180.58-.60); **Nexus S** (GT‑I9020, GT‑I9023, SHW‑M200K, SHW‑M200S) (PX 180.61-.63); **Showcase** (SCH-I500) (PX 180.70-.72, .103-.104);  **Sidekick** (SGH‑T839) (PX 180.73-.75); **Vibrant** (SGH‑T959) (PX 180.79-.81); **Galaxy Tab 7.0 (P1, P2)** (PX 180.85-.87); **Galaxy Tab 10.1** (GT‑P7510, GT‑P7511, SHW‑M380W) (PX 180.88-.90); **Galaxy Tab 8.9** (GT-P7310, SGH-I957)) (PX 180.91-.93); **Galaxy S2 Skyrocket** (SGH‑I727) (PX 180.94-.96); **Epic 4G Touch** (SPH-D710) (PX 180.97-.99); **Galaxy** |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|----------------|--------------------|
| | | **Tab 10.1 LTE** (SCH – I905, SGH – N014) (PX 180.100-.102). Samsung further objects to Apple's characterization that PX 180 is relevant to demand, *inter alia,* Georgia-Pacific factor 10. When PX 180 was admitted on cross-examination through Mr. Sheppard, it was in the context of impeachment with regard to the different versions of  Samsung financial spreadsheets produced during the course of the litigation, not as evidence of demand.<br><br>The Joint Stipulation and Order Regarding Updated Damages Opinions and Exhibits (Dkt. 1554) specifically preserves "all other objections to the content of the experts' opinions and the admission of exhibits...By this stipulation, neither party agrees to the admission of the exhibits identified in paragraph 2." |
| 181 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A<br><br>Included in Musika exhibits:  Yes (in Exhibit 32-S),<br><br>    •    5/8 Rpt. Exhibit 32-S.<br><br>Potential sponsoring witnesses at new trial:<br><br>    •    Julie Davis; Mark Buckley; Cross-Examination<br><br>PX181 is an Apple financial document showing sales of the iPhone and iPad.  Ms. Davis used financial information in PX181 to calculate Apple's damages.  Apple's sales are relevant to demand for the patented product under the first Panduit factor. | Samsung objects to the inclusion of irrelevant financial data, particularly that relating to Apple products such as the iPod and older models of iPhones not related to products not at issue in the damages trial.  The use of financial information including products, sales figures and revenues not at issue in the new trial is prejudicial because it will likely confuse the jury about the amount of sales at issue, and inflate the jury's impression of the amount in controversy.<br><br>Samsung objects to Apple's characterization that PX 181 is relevant to demand, and in particular to demand for the patented product.  Samsung does not dispute demand for the Apple products, so there is no reason to admit PX 181 on those grounds.  These financial calculations were cited in Exhibit 32-S2 of Ms. Davis's Report under the heading "Apple iPhone P&L Summary," not in her list of documents considered for Demand |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | for Design Patents and Trade Dress (Ex. 24-PT) or Demand for Utility Patents (Ex. 25-PT).  The bates range for PX 181 (APLNDC-Y0000408220-408223) does not appear in Ex. 32-S of Mr. Musika's 5/8 Report.  Furthermore, PX 181.04 includes financial data for the iPod, a product not at issue in the damages trial, and PX 181.01-.03 do not specify for which particular iPhone or iPad model the profit is being calculated. |
| 182 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes (in Exhibits 26-S and 27-S).<br><br>• 5/8 Rpt. Exhibit 26-S and 27-S.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Tony Blevins; Mark Buckley; Cross-Examination.<br><br>PX182 is an Apple capacity document showing Apple's manufacturing capacity of the iPhone and iPad.  It also shows units sold by Apple of the iPhone and iPad.  Apple's sales are relevant to demand for the patented product under the first Panduit factor. | Samsung objects to Apple's characterization that PX 182 is relevant to demand in particular.  Samsung does not dispute demand for the Apple products, so there is no reason to admit PX 182 on those grounds.  Furthermore, Apple's manufacturing capacity to produce the products at issue is clearly distinct from evidence of consumer demand for those products.  This exhibit was cited in the Musika and Davis Reports as a source for their respective iPhone and iPad capacity analyses (Ex. 26-S and 27-S), not in the list of documents considered for Demand for Design Patents and Trade Dress (Ex. 24-PT) or Demand for Utility Patents (Ex. 25-PT). |
| 183 | Admitted at trial:  Not Offered<br><br>Admitted for limited purpose:  N/A<br><br>Included in Musika exhibits:  Yes (in Exhibit 24-S), | PX 183 is not relevant to the products at issue in this damages trial.  None of the accused Samsung phones are referenced anywhere in this exhibit, and none of the marketing research results or strategy reflected in the document are related to the patented features.  And while this exhibit does state that there is demand for the iPhone as a product, Samsung does not dispute |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • 5/8 Rpt. Exhibit 24-S, items 73 and 94.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Cross-Examination<br><br>PX183 is a 2008 internal Samsung document reflecting Samsung "Counter-Apple Strategy."  The document reflects industry praise and value for Apple's patented products, designs, and features. It also reflects the level of direct competition between Samsung and Apple. (PX183.8-183.10.)  The document also provides strong evidence that Samsung was in 2008 shifting its focus towards rebutting the "competitive threat from Apple" by "profil[ing] which end-user segments are purchasing the iPhone and why" and by "specifically assess[ing] which unmet needs the iPhone addressed in these segments and why they were successful." (PX183.3.)  The document also puts in context several subsequent documents were Samsung engages in detailed side-by-side, feature-by-feature analysis of Apple's patented products, designs, and features, and provides recommendations and directions to implement those designs and features into Samsung's products. (See e.g. 183.35; 183.79.)  The document also provides direct evidence of the demand generated by Apple's patented products and the effect of that demand on the marketplace.  For example, the document states that "Apple is a serious threat to Samsung's leadership in the US." (PX183.7.)  The document states that the "iPhone, by all accounts, has been the most disruptive and successful new entrant in the history of the mobile device market." (PX183.7.) | that *Panduit* factor and therefore PX 183 has no relevance to the remainder of the damages trial.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 183.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 183, or as to Samsung's beliefs or intent. |
| 184 | Admitted at trial:  Not Offered. | PX 184 is not relevant to demand and should not be admitted. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes (in Exhibit 53-S).<br><br>• 5/8 Rpt. Exhibit 53-S, item 19.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Cross-Examination.<br><br>PX184 is an internal Samsung business plan and strategy document.  This document is relevant at least to the disputed factual issue underpinning Apple's lost profits calculation of how long it would take Samsung after receiving notice of infringement to develop a commercially acceptable non-infringing alternative to the D'677 patent features.  This fact is relevant because Ms. Davis calculated lost profits only for the time it would take Samsung to re-enter the market with a commercially acceptable non-infringing alternative.  Whereas Apple contends Samsung would be off the market for 8 months developing a suitable alternative, Samsung contends that this process would happen instantaneously.  PX184 contradicts Samsung's assertion by stating that it would take Samsung "18-24 months" to develop an "archetype design." (PX184.26.)  The document also reflects the scope of competition between Apple and Samsung during the relevant period and the scope of demand for Apple's patented products during the damages period.  Thus, while it is primarily relevant for other reasons, it is also relevant to proof of demand for Apple's iPhone and i Pad products. | First, Apple's quoted language from 184.26 is not relevant to the design around period.  The lost profits calculation requires any commercially acceptable non-infringing alternative to the D'677 patented features.  An "archetype design" is a Samsung term of art that refers to a early stage product design looking at trends a year or two ahead.  PX 184 does not contradict Samsung's contention regarding the design-around period, and therefore it has no relevance to the lost profits calculations on the products at issue in the damages trial.<br><br>Apple has no evidence to connect the particular reference in this document to an "archetype design" to the D'677 patented features, much less evidence equating the two.  As such Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 184.<br><br>Apple also claims that it is relevant to the scope of demand for Apple's patented products, a factor that Samsung does not dispute.  Apple does not proffer any reason why this exhibit is relevant to demand for the patented features.  Thus, PX 184 is not relevant for demand at all and should not be admitted on those grounds.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 184, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| 185 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes.<br>• 5/8 Rpt.  Exhibit 24-S, items 15 and 16.<br><br>Potential sponsoring witnesses at new trial:<br>• Julie Davis; Cross-Examination<br><br>PX185 is an internal Samsung survey whose stated objective was to "[i]mprove [Samsung's] product competitiveness." (PX185.3.) It contains evidence of demand relevant to Apple's patented features and to the importance of those features in driving consumer demand.  For example, PX185 shows that nearly 75% of male respondents stated that "Black" was their most preferred smartphone color.  This evidence contradicts Samsung's frequent (and misleading) argument that less than 4% percent of smartphone purchasers value "design or color" as a reason for purchase.  Further, PX185 also shows that "Exterior Design" was the "Biggest Reason" among Samsung customers "for Purchasing their Current Smartphone." (PX185.11.) As stated above, evidence that a smartphone's physical appearance drives consumer demand and sales is highly relevant to whether there is demand for the designs of the D'677 Patent.  It further rebuts Samsung's claims that exterior design does not matter, that black is not significant, and that other features make Apple's patented exterior design trivial.  Apple will separately establish that the D'677 Patent and the D'305 Patent contribute in a significant way to the exterior design and appearance of the iPhone.  Further, this survey, which was reported in spring 2011, speaks to a particularly relevant time in the smartphone | PX 185 is not relevant to the patented features at issue in this damages trial.  Samsung does not dispute demand for the Apple products, so there is no reason to admit PX 185 on those grounds.  However, the patents and the patented features have specific limitations, and it is not sufficient to simply show that "exterior design" was 1 out of 11 of the "biggest reason[s]" that consumers purchased a Samsung smartphone. (PX 185.11.) D'677 is much narrower than that.  Even evidence that 74.4% of male survey respondents prefer a black smartphone to, among other color options, a pink smartphone (PX 185.13), doesn't necessarily indicate that it was that feature driving demand.  This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.)<br><br>Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 185.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities.  Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | marketplace because it overlaps with the period in which Apple is seeking a substantial amount of its lost profits damages. Samsung's comments, based on consumer feedback, are directly relevant to consumer demand and support the inference that Apple would have sold *even more* iPhones in the hypothetical market because the iPhone would offer patented features not present in non-infringing devices that are desirable to consumers. | proof.  Apple must make a particularized showing that patented features drive consumer demand.  Apple's "generalized evidence" strategy will simply invite the jury to mistake its task.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 185, or as to Samsung's beliefs or intent. |
| 186 | Admitted at trial:  Admitted.<br>    &bull;    Wagner (Trial Tr. 3067).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>    &bull;    Ravin Balakrishnan; Julie Davis; Cross-Examination.<br><br>PX186 is an email exchanged between Samsung engineers involved in developing the Samsung Galaxy Tab 7.0, which is an infringing product.  The email is dated October 27, 2010—less than one month before product launch.  In it, Samsung's Vice President of Software Engineering states:  "Please actively move forward to enable application of at least the Browser change items to previously approved p1 [Galaxy Tab 7.0] also before releasing into the market.  There are two items that have been omitted. . . . . 2. . . . . in browser scroll, there is no latex effect of having the screen follow along and then retuning when you are moving past the edge.  (Refer to the Ipad)." (PX186.4.) The "latex" effect refers to the "bounce" functionality claimed in the '381 Patent.  This is the type of evidence that Mr. Wagner | PX 186 is not relevant to consumer demand.  This email contains correspondence regarding a various features of Samsung's Galaxy Tab, and does not indicate whether or not consumers demand any of the features described therein.  During the first trial, this document was not used to demonstrate consumer demand.<br><br>PX 186 is not relevant to any products at issue.  The document discusses the Galaxy Tab 7.0, which is not at issue in the new trial.<br><br>PX 186 is not relevant to the patented features.  Apple argues that this excerpt refers to the '381 patent.  However, the '381 patent does not cover the concept of a "latex effect" or any other sort of bounce or bounce across an edge generally.  Instead, it covers a very specific implementation of bounce, which must include software instructions disclosing a "stop condition" for translating the document "until the area beyond the edge of the electronic document is no longer displayed."  There is no indication that the stop condition is disclosed in the document.  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | admitted constitutes evidence of demand. (Dkt. No. 2407-17 at 466:14-20 ("Q: And would you count in – as evidence of demand instructions from executives to designers, that they needed to design products in a way that looked like Apple's in order to make them more attractive to consumers? . . . A: Yes.").) Evidence that Samsung intentionally incorporated the bounce feature into its Galaxy Tab 7.0 product before releasing it to the public is highly probative of demand for the patented feature, the absence of commercially acceptable non-infringing alternatives, and Apple's lost profits claim. | In addition, Dr. Balakrishnan did not testify regarding this exhibit at the first trial. Moreover, this document and opinions regarding this document are not disclosed in Dr. Balakrishnan expert report. Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan.

Evidence that engineers – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*. Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 186.

Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 186, or as to Samsung's beliefs or intent. |
| 194 | Admitted at trial: Admitted.
  • Musika (Trial Tr. 2082).

Admitted for limited purpose: No.

Included in Musika exhibits: Yes.
  • 5/8 Rpt. Exhibit 24-S, item 22.

Potential sponsoring witnesses at new trial:
  • Julie Davis; Ravin Balakrishnan; Dong Hoon Chang; Cross-Examination. | PX 194 was introduced by Apple to establish within the lost profits analysis that there is general demand for the iPhone (Trial Tr. 2081:19-22.), which is undisputed. However, the ease and intuitiveness of the user interface generally, which is the subject of this exhibit, is not relevant to showing consumer demand for the patented features. The GUI and utility patent features are limited, specific constructions. This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | PX194 is an internal March 2010 Samsung email summarizing a speech given by Samsung's then-CEO, GeeSung Choi, at a "critique meeting" of an early smartphone during development of the Galaxy line of smartphones. This line of smartphones includes new trial products. Mr. Choi "strongly pointed out Samsung UX's mindset of 'clinging to the past generation. He then stated: "I am not saying to make a UX that is exactly identical to the iPhone, but I am saying to learn the wisdom of the iPhone and recognize that the standard (?) of the industry which was set by them already." (PX194.1) Mr. Choi's commentary on the iPhone's success is directly relevant at least to the first *Panduit* factor – demand for the patented product. Evidence of the success of the iPhone alone will help Apple establish "but for" causation of lost profits because it will allow the jury to draw the inference that at least some consumers unable to purchase an infringing Samsung phone would be reasonably likely to purchase an iPhone instead. Indeed, this is exactly the type of evidence that Mr. Wagner admitted at his deposition could suggest "what consumers are demanding." (Sabri Decl. Ex. 23 at 750:16-22.) Other instances of demand may be found in this exhibit, including, for example, a specific reference reflecting demand for "pinch zoom"—a feature claimed within the Apple's '915 patent. (*See* PX194.1.) This evidence reflects the value of the '915 patent to the overall user experience, and hence to consumer demand for products incorporating that feature. It further helps to establish Apple's position that the utility patents form a part of the easy and intuitive user interface that other documents show to be in substantial demand from consumers of smartphones and tablets. | *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id.* at 10.) <br><br> Apple's choice to call out Mr. Choi's exactly language from PX 194.1 indicates that they intend to use this exhibit for liability and copying purposes, in addition to their irrelevant generalized demand proffer. <br><br> PX 194 is not relevant to the '915 patent. Apple states that the document contains a reference to "pinch zoom," but the '915 patent does not cover "pinch zoom" or any multi-finger zoom generally. Instead, it covers the "all-important test" of distinguishing a one-finger scroll versus a two finger gesture. Trial Tr. 1857:20-24. <br><br> Neither Dr. Balakrishnan nor Dong Hoon Chang are appropriate witnesses to discuss this document. Dr. Balakrishnan did not testify regarding PX 194 at the first trial. Nor was he designated to testify regarding PX 194 during the first trial. Dkt. 1286 at 20. He did not disclose this document or opinions regarding this document in his expert report. Indeed, Dr. Balakrishnan did not offer any opinions regarding the '915 patent whatsoever. <br><br> Evidence that engineers – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*. Apple's use of this exhibit |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | would prejudice Samsung and risks jury confusion over exhibits such as PX 194.<br><br>Similarly, Dong Hoon Chang did not provide any testimony regarding this document at trial. This document was not presented by Apple to Dong Hoon Chang during any deposition, and there is no foundation that he has any knowledge regarding the document whatsoever. Mr. Chang is not even listed as a recipient of this email.<br><br>In addition, Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 194, or as to Samsung's beliefs or intent. |
| 195 | Admitted at trial: Admitted.<br>• Wagner (Trial Tr. 3070).<br><br>Admitted for limited purpose: No.<br><br>Included in Musika exhibits: Yes.<br>• 5/8 Rpt. Exhibit 25-S, item 42.<br><br>Potential sponsoring witnesses at new trial:<br>• Wookyun Kho; Julie Davis; Ravin Balakrishnan; Cross-Examination. | Nothing in PX 195 suggests that Samsung's engineers were implementing these features to satisfy any consumer demand. In fact, the e-mail indicates that the feature being developed was <u>not</u> implemented.<br><br>PX 195 is not relevant to any products at issue. The document discusses the Galaxy Tab 7.0, which is not at issue in the new trial.<br><br>PX 195 is not relevant to the patented features. Apple argues that this excerpt refers to the '381 patent. However, the '381 |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|-----------------|--------------------|
| | PX195 is an email exchanged between Samsung engineers involved in incorporating the bounce feature into the Galaxy Tab 7.0 device.  The email is dated October 28, 2010—less than one month before product launch, and one day after PX186 discussed *supra*.  In it, a Samsung engineer writes:  "With regards to bounce, we used the Mass Spring Damper model which was modeled after the actual physical effect and obtained the bounce effect that is similar to the iPad . . . ." (PX186.4.)  According to Mr.  Wagner, evidence of demand includes instructions from Samsung to engineers to incorporate features that make them look more like Apple products.  (Dkt.  No. 2407-17 at 466:14-20.) PX195 shows the execution of Samsung's instruction in PX186 to incorporate bounce into the Galaxy Tab 7.0.  PX195 further shows Samsung's efforts to incorporate the commercial embodiment of Apple's patented feature into its product in order to make it more competitive. For example, a Samsung engineer notes that the bounce feature had improved over a prior iteration, then states:  "However, compared to our competitor's product (you know well which one T^T [emoticon for crying]), it is still not satisfactory." (PX195.3.) PX195 is relevant to demand for the patented feature of the '381 Patent, the absence of commercially acceptable non-infringing alternatives, and Apple's lost profits claim. | patent does not cover the concept of bounce or bounce across an edge generally.  Instead, it covers a very specific implementation of bounce, which must include software instructions disclosing a "stop condition" for translating the document "until the area beyond the edge of the electronic document is no longer displayed."   There is no indication that the stop condition is disclosed in the document.  In addition, the inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally.<br><br>In addition, Dr. Balakrishnan is not an expert on consumer demand, and is not qualified to provide an opinion regarding whether Apple's patented features are relevant to consumer demand, or any other related issues, as described in Samsung's objections to Dr. Balakrishnan.<br><br>Evidence that engineers – not consumers – found the functions related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 195.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 195, or as to Samsung's beliefs or intent. |
| 196 | Admitted at trial:  Not Offered.<br><br>Admitted for limited purpose:  N/A.<br><br>Included in Musika exhibits:  Yes (in Exhibit 24-S), | PX 196 is not relevant to the patented features at issue in this damages trial.  Samsung does not dispute demand for the Apple products, so there is no reason to admit PX 196 on those grounds.  However, the patents and the patented features have specific limitations, and it is not sufficient to simply show praise |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | • 5/8 Rpt. Exhibit 24-S, item 81.<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis; Cross-Examination.<br><br>PX196 is a late 2010, early 2011 Samsung internal document titled "Premium & Mass, Design Preference Study." (PX196.1.) Its stated objective was "To Understand US Consumer's Design Perception of Premium and Mass Design." (PX196.3.) The document focuses on industrial design of smartphones. The very first "Key Finding" in the executive summary is that U.S. consumers believe "iPhone design — premium/good design." (PX196.6-7.) It also characterizes the design of Apple's iPhones as "Most trendy," "High priced," and something consumers "Would buy next." (PX196.21-22.) The document is relevant to show consumer demand for the iPhone's patented industrial design, including the design of the D'677 patent. The document is also relevant to show industry recognition of the advantages of iPhone's patented design over other modes, which is relevant to the determination of a reasonable royalty. Apple will further support the relevance of this exhibit with evidence that the D'677 Patent and the D'305 Patents reflects important elements of iPhones exterior design. | or demand for the "industrial design" of the iPhone – D'677 is much narrower than that. This Court and the Federal Circuit have already held that evidence of praise and demand for the iPhone and iPad, or generic features such as "ease of use" and "design" are insufficient evidence to prove a patented feature drives demand. (Dkt. 2197 at 8-11 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)).) This Court was particularly clear in holding that terms such as "ease of use" or "design" are too general to drive customer demand for the patented features because "many factors go into making a product easy to use, but the features for which Apple is asserting patent protection are very specific." (*Id*. at 10.)<br><br>PX 196 reflects a survey of only 46 participants. The context-less and unattributed pull quotes from are hardly evidence of industry recognition for reasonable royalty calculations, and Apple has provided no evidence other than the existence of this survey that Samsung considered the "high price" and "trend[iness]" of the iPhone an advantage. Those are not reflections of patented features, and this exhibit is therefore irrelevant to the damages trial.<br><br>Apple cannot rely separately on this exhibit as evidence that consumers appreciate good "design" together with unconnected testimony – not from consumers – that Apple's patents contribute to these general qualities. Apple cannot use separate testimony *not tied to consumer demand* to bridge the gap in its proof. Apple must make a particularized showing that patented features drive consumer demand. Apple's "generalized evidence" strategy will simply invite the jury to mistake its task. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | | Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 196, or as to Samsung's beliefs or intent. |
| 2257 | Admitted at trial:  Admitted.<br>• Wang (Trial Tr. 2542).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>• Cross-Examination<br><br>PX2257 is an internal Samsung document that shows direct comparisons between Galaxy S icons, Galaxy S II icons, and Apple icons, which are a component of Apple's graphical user interface patent, the D'305.  At the first trial, Jinyeun Wang, a Samsung UX designer, acknowledged that she was listed as the custodian of this document.  (Trial Tr. 2541:20-2542:4.) In combination with other evidence discussed above that Samsung considered Apple's patented inventions, discussed the value and superiority of Apple's patented inventions, and implemented Apple's patented inventions, this evidence is relevant to show that Samsung recognized a demand for Apple's inventions and that the D'305 Patent is an improvement over other options, which is relevant to the amount of a reasonable royalty for that patent. | PX 2257 is not relevant to the products or issues in the damages trial.  PX 2257 refers to products and features not at issue, the icons of the Galaxy S i9000 and Galaxy S II.<br><br>Apple attempted to use this document at trial to establish copying, but the document was shown to have been created in response to litigation, more than a year after Jeeyeun Wang designed the Galaxy S I icons, not before it. (Trial Tr. 2541:17-2542:8; 2555:24-2557:21.)  Yet Apple provides no support for their remarkable claim that a Samsung employee looking at designs over a year after she completed the feature is relevant for damages – that it would show *consumer* demand for a product or patented features or that Samsung considered the D'305 icons to be an improvement.  Instead, Apple intends to use this document to rehash its liability and willfulness arguments.<br><br>PX 2257 was cited in neither the Musika nor the Davis report as evidence for damages.<br><br>Evidence that engineers – not consumers – found the icon designs related to Apple's patents to be of interest is not probative evidence of *consumer demand*.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX2257.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 2257, or as to Samsung's beliefs or intent. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|----|----------------|--------------------|
| 2261 | Admitted at trial:  Admitted<br>    &bull;    Wang (Trial Tr. 2543).<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br>    &bull;    Julie Davis; Cross-Examination<br><br>PX2261 is a black-and-white version of PX55.  After PX2261 was admitted into evidence, the Samsung employee who was testifying requested a color version of the document.  (Trial Tr. 2544:25-2546:9.) In response, Apple introduced PX55 and resumed its questioning with respect to pages in PX55.  (*Id.*) This document is therefore relevant evidence of demand for the same reasons as PX55, discussed above. | PX 2261 is a black and white version of the color presentation in PX 55.  It is irrelevant to damages for the same reasons as PX 55, discussed above.  Accordingly, Samsung incorporates that response. |
| 2281 | Admitted at trial:  Admitted<br><br>    &bull;    Wang (Trial Tr. 2547)<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  No.<br><br>Potential sponsoring witnesses at new trial:<br><br>    &bull;    Cross-Examination<br><br>PX2281 is a copy of Apple's iPhone Human Interface Guidelines found in the files of a Samsung UX designer, Jinyeun Wang.  At the first trial, Ms. Wang acknowledged that she was | PX 2281 was not cited in either the Musika or Davis Reports as evidence of damages.  Instead, it was introduced through a Samsung designer, Jeeyeun Wang, for liability purposes.  (Trial Tr. 2541:20-2542:4.)  Apple offers no support for their remarkable theory that having a single copy of Apple guidelines proves that Samsung recognized demand or considered the D'305 icons an improvement.  This exhibit was used for copying purposes in the first trial, and even in its proffer Apple makes it clear that it will do so again – "it also rebuts Ms. Wang's claim that 'she did not make reference to Apple icons.'"  Liability has already been established, and Apple's inclusion of PX 2281 on their exhibit list makes it clear that Apple intends to shoehorn additional "copying" exhibits into the damages trial however possible. |

| PX | APPLE'S PROFFER | SAMSUNG'S RESPONSE |
|---|---|---|
| | listed as the custodian of this document.  (Trial Tr. at 2546:17-2547:3.)  The fact that a Samsung designer had a copy of Apple user interface guidelines in her files is relevant to show demand for Apple's user interface and therefore Apple's graphical user interface patent, the D'305. It also rebuts Ms. Wang's claim that she "did not make reference to Apple icons" when designing Samsung icons.  (Trial Tr. at 2541:17-19.)  In combination with other evidence discussed above that Samsung considered Apple's patented inventions, discussed the value and superiority of Apple's patented inventions, and implemented Apple's patented inventions, this evidence is relevant to show that Samsung recognized a demand for Apple's inventions and that the D'305 Patent is an improvement over other options, which is relevant to the amount of a reasonable royalty for that patent. | Evidence that engineers – not consumers – found the Apple user interface guidelines to be of interest is not probative of *consumer demand* for anything, much less consumer demand for the patented features.  Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX2281.<br><br>Finally, as discussed in its Rule 702 motion, Ms. Davis is an accountant and has no basis to testify concerning documents such as PX 2281, or as to Samsung's beliefs or intent. |
| JX1500A | Admitted at trial:  Admitted<br><br>Admitted for limited purpose:  No.<br><br>Included in Musika exhibits:  Yes.<br><br>• Exhibits 32-S, 33-S, 36-S, 37-S<br><br>Potential sponsoring witnesses at new trial:<br><br>• Julie Davis<br><br>JX1500 contains Apple and Samsung sales information.  Ms. Davis used financial information in JX1500 (also contained in PX25E) to calculate Apple's damages.  The exhibit includes evidence of Apple's sales orate iPhone and iPad, and hence evidence of demand for the patented product under the first Panduit factor. | Samsung objects to the inclusion of irrelevant financial data, particularly that relating to unaccused products or products not at issue in the damages trial.  The use of financial information including products, sales figures and revenues not at issue in the new trial is prejudicial because it will likely confuse the jury about the amount of sales at issue, and inflate the jury's impression of the amount in controversy.<br><br>Samsung objects to Apple's characterization that JX 1500A is relevant to demand in particular.  Samsung does not dispute demand for the Apple products, so there is no reason to admit JX 1500A on those grounds.  These financial calculations were cited in a footnote to Ms. Davis's Report alongside Exhibits 32-S2 and 33-S2 ("P&L Summar[ies]") not in the list of documents considered for Demand for Design Patents and Trade Dress (Ex. 24-PT) or Demand for Utility Patents (Ex. 25-PT). |