# EXHIBIT 3

```
 1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Cal. Bar No. 170151)
 2  charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
 3  San Francisco, California 94111
    Telephone: (415) 875-6600
 4  Facsimile: (415) 875-6700

 5  Kevin P.B. Johnson (Cal. Bar No. 177129)
    kevinjohnson@quinnemanuel.com
 6  Victoria F. Maroulis (Cal. Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
 7  555 Twin Dolphin Drive 5th Floor
    Redwood Shores, California 94065
 8  Telephone: (650) 801-5000
    Facsimile: (650) 801-5100
 9
    Michael T. Zeller (Cal. Bar No. 196417)
10  michaelzeller@quinnemanuel.com
    865 S. Figueroa St., 10th Floor
11  Los Angeles, California 90017
    Telephone: (213) 443-3000
12  Facsimile: (213) 443-3100

13  Attorneys for SAMSUNG ELECTRONICS
    CO., LTD., SAMSUNG ELECTRONICS
14  AMERICA, INC. and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC
15
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S AMENDED FIRST 30(b)(6) DEPOSITION NOTICE TO APPLE INC. (DAMAGES TOPICS)** |

EXHIBIT NO. 1
Buckley, M
2.23.12
Andrea Ignacio, CSR 9830

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30, Defendants and Counterclaimants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") will take the deposition upon oral examination of Apple Inc. ("Apple") pursuant to 30(b)(6) of the Federal Rules of Civil Procedure. The deposition will commence on a mutually agreeable date at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 555 Twin Dolphin Drive, Redwood Shores, California, 94065 and will continue day-to-day until completed. The deposition will be taken by a notary public or other authorized officer and will be videotaped and recorded stenographically. Pursuant to Rule 30(b)(6), Apple shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

DATED: January 30, 2012          QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

# EXHIBIT A

# DEFINITIONS

The Topics for deposition, as well as the Instructions provided below, are subject to and incorporate the following definitions:

1. The terms "APPLE," "PLAINTIFF," "YOU," and "YOUR" shall refer to Apple, Inc., any predecessor or successor of Apple, Inc., and any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, or other representative of Apple, Inc., including counsel and patent agents, in any country.

2. The term "DEFENDANTS" and "SAMSUNG" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

3. "This Lawsuit" shall mean the action entitled *Apple, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 11-cv-01846-LHK.

4. The term "'604 PATENT" shall mean U.S. Patent No. 6,928,604 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

5. The term "'410 PATENT" shall mean U.S. Patent No. 7,050,410 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

6. The term "'792 PATENT" shall mean U.S. Patent No. 7,200,792 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

7. The term "'867 PATENT" shall mean U.S. Patent No. 7,362,867 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

8. The term "'001 PATENT" shall mean U.S. Patent No. 7,386,001 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

and all foreign counterpart applications and patents which claim the same subject matter.

9.  The term "'516 PATENT" shall mean U.S. Patent No. 7,447,516 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

10.  The term "'941 PATENT" shall mean U.S. Patent No. 7,675,941 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

11.  The term "'055 PATENT" shall mean U.S. Patent No. 7,069,055 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

12.  The term "'871 PATENT" shall mean U.S. Patent No. 7,079,871 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

13.  The term "'893 PATENT" shall mean U.S. Patent No. 7,456,893 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

14.  The term "'460 PATENT" shall mean U.S. Patent No. 7,577,460 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

15.  The term "'711 PATENT" shall mean U.S. Patent No. 7,698,711 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

16.  "SAMSUNG PATENTS-IN-SUIT" shall mean the '604 PATENT, the '410 PATENT, the '792 PATENT, the '867 PATENT, the '001 PATENT, the '516 PATENT, the '941 PATENT, the '055 PATENT, the '871 PATENT, the '893 PATENT, the '460 PATENT, and the '711 PATENT.

17.  The term "'002 PATENT" shall mean U.S. Patent No. 6,493,002 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof

and all foreign counterpart applications and patents which claim the same subject matter.

18. The term "'381 PATENT" shall mean U.S. Patent No. 7,469,381 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

19. The term "'607 PATENT" shall mean U.S. Patent No. 7,663,607 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

20. The term "'828 PATENT" shall mean U.S. Patent No. 7,812,828 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

21. The term "'915 PATENT" shall mean U.S. Patent No. 7,844,915 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

22. The term "'891 PATENT" shall mean U.S. Patent No. 7,853,891 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

23. The term "'163 PATENT" shall mean U.S. Patent No. 7,864,163 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

24. The term "'129 PATENT" shall mean U.S. Patent No. 7,920,129 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications and patents which claim the same subject matter.

25. "APPLE UTILITY PATENTS" shall mean the '002 PATENT, the '381 PATENT, the '607 PATENT, the '828 PATENT, the '915 PATENT, the '891 PATENT, the '163 PATENT, and the '129 PATENT.

26. The term "D'790 PATENT" shall mean U.S. Design Patent No. D627,790 and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, registrations, and patents which claim the same

1  subject matter.

2  27.   The term "D'334 PATENT" shall mean U.S. Design Patent No. D617,334 and all
3  parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues
4  thereof and all foreign counterpart applications, registrations, and patents which claim the same
5  subject matter.

6  28.   The term "D'305 PATENT" shall mean U.S. Design Patent No. D604,305 and all
7  parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues
8  thereof and all foreign counterpart applications, registrations, and patents which claim the same
9  subject matter.

10 29.   The term "D'087 PATENT" shall mean U.S. Design Patent No. D593,087 and all
11 parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues
12 thereof and all foreign counterpart applications, registrations, and patents which claim the same
13 subject matter.

14 30.   The term "D'677 PATENT" shall mean U.S. Design Patent No. D618,677 and all
15 parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues
16 thereof and all foreign counterpart applications, registrations, and patents which claim the same
17 subject matter.

18 31.   The term "D'270 PATENT" shall mean U.S. Design Patent No. D622,270 and all
19 parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues
20 thereof and all foreign counterpart applications, registrations, and patents which claim the same
21 subject matter.

22 32.   The term "D'889 PATENT" shall mean U.S. Design Patent No. D504,889 and all
23 parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues
24 thereof and all foreign counterpart applications, registrations, and patents which claim the same
25 subject matter.

26 33.   "APPLE DESIGN PATENTS" shall mean the D'790 PATENT, the D'334
27 PATENT, the D'305 PATENT, the D'087 PATENT, the D'677 PATENT, the D'270 PATENT,
28 and the D'889 PATENT.

34.     "APPLE PATENTS-IN-SUIT" shall mean the APPLE UTILITY PATENTS and the APPLE DESIGN PATENTS.

35.     The term "APPLE TRADE DRESS" shall mean U.S. Registration Nos. 3,470,983; 3,457,218; 3,475,327; US Application Serial Nos. 77/921,838; 77/921,829; 77/921,869; 85/299,118; and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, and registrations that claim the same subject matter; and the unregistered iPhone, iPhone 3G, iPhone 4, iPhone/iPhone 3G/iPhone 4, iPad, iPad 2, and packaging trade dress claimed by APPLE.

36.     The term "APPLE TRADEMARKS" shall mean U.S. Trademark Registration Nos. 3,886,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; 3,886,197; 2,935,038; U.S. Application Serial No. 85/041,463, and all parents, progeny, continuations, applications, divisional applications, reexaminations, or reissues thereof and all foreign counterpart applications, and registrations that claim the same subject matter.

37.     The term "APPLE ACCUSED PRODUCTS" shall mean electronic devices that allow for communications and data transfer over networks including establishing data connections, execution of user operations and audio play back of digital data that are manufactured, distributed, and/or sold by YOU or YOUR parent, subsidiary, or affiliate companies or on YOUR behalf, or on behalf of YOUR parent, subsidiary, or affiliate companies anywhere in the world, at any time between April 15, 2005 through the pendency of This Lawsuit, including each and every APPLE product that SAMSUNG has identified as infringing in any of its complaints or infringement contentions served in this action. The term shall include, without limitation, the following devices: the Apple iPhone, the Apple iPhone 3G, the Apple iPhone 3GS, the Apple iPhone 4, the iPod Touch, the iPad, the iPad 3G, the iPad 2, the iPad 2 3G. The term "APPLE ACCUSED PRODUCTS" also includes all products APPLE alleges embody the APPLE PATENTS-IN-SUIT.

38.     The term "SAMSUNG ACCUSED PRODUCTS" shall mean the products APPLE alleges infringe, dilute, unfairly compete with, or otherwise violate APPLE's rights in any of the APPLE PATENTS-IN-SUIT, APPLE TRADE DRESS, or APPLE TRADEMARKS, including,

without limitation, the Acclaim, Captivate, Continuum, Droid Charge, Exhibit 4G, Epic 4G, Fascinate, Gem, Galaxy Ace, Galaxy Prevail, Galaxy S, Galaxy S i9000, Galaxy S 4G, Gravity, Indulge, Infuse 4G, Intercept, Mesmerize, Nexus S, Nexus S 4G, Replenish, Showcase i500, Showcase Galaxy S, Sidekick, Transform, and Vibrant phones, and Galaxy Tab and Galaxy Tab 10.1 tablet computers.

39. The term "Software" shall include source code, hardware code, machine code, assembly code, or code written in any programming language, and code that can be compiled or acted upon by a processor, any listings or printouts thereof, and any release notes describing the features or modifications of such code.

40. The term "Hardware" includes all constituent parts of a device including, but not limited to, assemblies, subassemblies, modules, individual integrated circuits, chipset, chipsets, software, hardware-based capabilities, and/or application specific integrated circuits.

41. The terms "COMMUNICATION" or "COMMUNICATIONS" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail.

42. The terms "DOCUMENT" and "DOCUMENTS" shall have the broadest meaning ascribed to them by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001. The terms shall include within their meaning, by way of example and not limitation, any and all accounts, analyses, books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-mail, films, financial statements, floppy disks, hard disks, source code, inter-office memoranda, invoices, ledgers, letters, licenses, logs, memoranda, microfilms, minutes, notes, notes of conversations, notes of meetings, notes of telephone calls, office communications, photographs, printouts, recordings of conversations (whether written or electronic), reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other video recordings, and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ from the original in any way, including handwritten

notations or other written or printed matter. The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such DOCUMENTS are presently in documentary form or not. A draft or non-identical copy of a DOCUMENT is a separate DOCUMENT within the meaning of this term.

43. The term "person" or "persons" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies. The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

44. The terms "any," "all," "every," and "each" shall each mean and include the other as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

45. The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of its scope.

46. The term "thing" refers to any physical specimen or tangible item in YOUR possession, custody or control, including research and development samples, prototypes, productions samples and the like.

47. The terms "referring to," "relating to," "concerning" or "regarding" shall mean containing, describing, discussing, embodying, commenting upon, identifying, incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

48. The use of the singular form of any word includes the plural and vice versa, as necessary to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of its scope.

49. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

# TOPICS

## General Damages Topics

1. Marketing and promotion relating to the APPLE ACCUSED PRODUCTS, including: (a) sales and marketing strategies and methods relating to the APPLE ACCUSED PRODUCTS; (b) development of sales and marketing materials relating to the APPLE ACCUSED PRODUCTS; and (c) content of sales and marketing materials relating to the APPLE ACCUSED PRODUCTS.

2. Industry, market, and competition analyses performed by APPLE or on APPLE's behalf for the APPLE ACCUSED PRODUCTS.

3. Business plans, strategies, forecasts, studies, or reports related to the APPLE ACCUSED PRODUCTS.

4. Sales, pricing, and revenue relating to the APPLE ACCUSED PRODUCTS, including actual and forecasted unit prices, shipments of each Product from January 1, 2007 to the present, amount and value of sales from January 1, 2007 to the present, and revenue and profits derived by APPLE from each Product.

5. Historical, current and projected market share of, and market demand for, the APPLE ACCUSED PRODUCTS.

6. Products or services marketed, purchased, sold, or offered for sale in conjunction with the sale, purchase, rental, lease or other distribution of the APPLE ACCUSED PRODUCTS.

7. APPLE's accounting procedures and systems, including the accounting procedures and systems related to the sale, licensing, and/or distribution of APPLE ACCUSED PRODUCTS.

8. For each APPLE ACCUSED PRODUCT, the identity of all entities involved in moving that PRODUCT from its place of manufacture to its point of sale, the location and types of DOCUMENTS and things relating to such delivery, and the identity of each custodian of such DOCUMENTS and things.

9. For each APPLE ACCUSED PRODUCT, any agreements with another entity concerning the manufacture, distribution or sale of that Product.

10. For each APPLE ACCUSED PRODUCT, the identity of all Products that APPLE views as competing in the market with that Product.

11. APPLE's policies regarding entering into licensing agreements with others.

12. Licensing by APPLE (as licensee, licensor or cross-license) of patents, trade secrets, intellectual property or other technical "know-how" relating to the APPLE ACCUSED PRODUCTS, including: (a) any corporate policies/procedures relating to said licensing; (b) any royalties or fees paid to APPLE relating to the use, manufacture, or sale of the APPLE ACCUSED PRODUCTS; and (c) any royalties or fees paid by APPLE in connection with the use, manufacture, or sale of the APPLE ACCUSED PRODUCTS.

13. All injuries, including the scope of such injuries, APPLE believes it has suffered and will suffer as a result of SAMSUNG's accused actions.

14. APPLE's annual, monthly, and weekly profits, revenues, costs and sales for all iPhone, iPad, and iPod Touch versions, including reasons for increases or decreases in profits, revenues, costs and sales of these products.

15. Cost to APPLE of all iPhone, iPad, and iPod Touch versions.

16. Cost to consumers of all iPhone, iPad, and iPod Touch versions, including shipping and related costs, and the availability of discounts and coupons.

17. Cost to distributors of all iPhone, iPad, and iPod Touch versions, including shipping and related costs, and the availability of discounts and coupons.

18. APPLE's manufacturing, sales and distribution capacities from 2010 to the present for all iPhone, iPad, and iPod Touch versions, including without limitation, staffing levels and needs and operating budgets, on a monthly basis for each of the manufacturing, sales and distribution organizations involved in the sale of any products for which APPLE claims lost profits.

### Damages Topics Related to Particular Samsung Claims

#### '867 Patent

19. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relates to or enables the APPLE ACCUSED PRODUCTS to generate, store or process scrambling codes.

#### '055 Patent

20. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relates to or enables the APPLE ACCUSED PRODUCTS to perform the following functions:

   (a) providing the ability to select a plurality of cities in the world clock application;

   (b) calculating the local time of the cities included in the world clock application;

   (c) calculating the local time of where the APPLE ACCUSED PRODUCT is currently located; and

   (d) process by which the APPLE ACCUSED PRODUCTS receive a sync channel messages from any cellular networks.

#### '871 Patent

21. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relates to or enables the APPLE ACCUSED PRODUCTS to perform the following functions:

   (a) generation of the notification bar and pull down menu;

   (b) dividing the display into two windows by double-clicking the home button;

(c) displaying data relating to application in the most recently used applications bar, which is displayed by double-clicking the home button; and

(d) dividing the display of the APPLE ACCUSED PRODUCTS into multiple windows.

### '711 Patent

22. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relates to or enables the APPLE ACCUSED PRODUCTS to perform the following functions:

(a) playing of digital audio or digital audio data;

(b) processing of digital audio or digital audio data;

(c) multi-tasking while continuing to perform the playing of digital audio or digital audio data in the background; and

(d) using Java to perform multi-tasking functions while playing digital audio or digital audio data in the background.

### **Damages Topics Related to Particular Apple Claims**

### '002 Patent

23. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '002 ACCUSED PRODUCTS to perform the following functions:

(a) cursor control device;

(b) cursor;

(c) operating environment;

(d) programming modules;

(e) application programs;

(f) status and/or control functions;

(g) first window region;

(h) display area;

(i) first window region is independently displayed and independently active;

(j) each of the plurality of display areas is associated with one of the plurality of individual programming modules;

1  (k)   the first window region and the plurality of independent display areas implemented in a window layer that appears on top of application programming windows that may be generated;

2

3  (l)   indicia generation logic;

4  (m)   associated programming module is sensitive to user input;

5  (n)   message-based communication;

6  (o)   variably sized;

7  (p)   provide access to control information when selected;

8  (q)   displays an additional display element;

9  (r)   individually and variably sized;

10 (s)   always appears in front of application windows;

11 (t)   implemented in a private window layer that appears in front of windows;

12 (u)   indicia graphics generation logic; and

13 (v)   user sensitive graphics.

### '381 Patent

24. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '381 ACCUSED PRODUCTS to perform the following functions:

(a)   a touch screen display;

(b)    displaying a first portion of an electronic document;

(c)   detecting movement of an object on or near the touch screen display;

(d)   translating an electronic document displayed on a touch screen in a first direction;

(e)   reaching the edge of the electronic document while translating the electronic document in a first direction;

(f)   displaying an area beyond the edge of the electronic document;

(g)   displaying a third portion of an electronic document that is smaller than the first portion; and

(h)   translating the document in a second direction until the area beyond the edge of the electronic document is no longer displayed.

'607 Patent

25. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '607 ACCUSED PRODUCTS to perform the following functions:

(a)     transparent capacitive sensing medium configured to detect multiple touches or near touches at the same time and at distinct locations;

(b)     a first layer having a plurality of transparent first conductive lines that are electrically isolated from one another;

(c)     a second layer spatially separated form the first layer;

(d)     a plurality of transparent second conductive lines that are eclectically isolated from each other;

(e)     each second conductive line operatively coupled to capacitive monitoring circuitry;

(f)     capacitive monitoring circuitry configured to detect changes in charge coupling between the first conductive lines and the second conductive lines;

(g)     conductive lines on each of the layers are substantially parallel to one another;

(h)     conductive lines on different layers are substantially perpendicular to each other;

(i)     a first glass member disposed over the screen of the display;

(j)     a second glass member disposed over the first transparent conductive layer;

(k)     a first transparent conductive layer comprising a plurality of spaced apart parallel lines having the same pitch and linewidths;

(l)     a second transparent conductive layer disposed over the second glass member comprising a plurality of spaced apart parallel lines having the same pitch and linewidths;

(m)     a third glass member disposed over the second transparent conductive layer; and

(n)     one or more sensor integrated circuits operatively coupled to the lines.

'828 Patent

26. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '828 ACCUSED PRODUCTS to perform the following functions:

(a)     receiving at least one proximity image representing a scan of a plurality of electrodes of the touch-sensitive surface;

(b)     segmenting each proximity image into one or more pixel groups that indicate significant proximity, each pixel group representing proximity of a distinguishable hand part or other touch object on or near the touch-sensitive surface;

(c)     mathematically fitting an ellipse to at least one of the pixel groups;

(d)     transmitting one or more ellipse parameters as a control signal to an electronic or electromechanical device;

(e)     where the one or more ellipse parameters is selected from the group consisting of position, shape, size, orientation, eccentricity major radius, minor radius, and any combination thereof;

(f)     tracking a path of at least one of the one or more pixel groups through a time-sequenced series of proximity images;

(g)     fitting an ellipse to at least one of the one or more pixel groups in each of the time-sequences series of proximity images;

(h)     tracking a change in one or more ellipse parameters through the time-sequenced series of proximity images; and

(i)     fitting an ellipse to one or more pixel groups comprising of computing one or more eigenvalues and one or more eigenvectors of a covariance matrix associated with the pixel group.

'915 Patent

27. Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '915 ACCUSED PRODUCTS to perform the following features:

(a)     receiving as user input one or more input points applied to the touch-sensitive display that is integrated with the device;

(b)     creating an event object in response to the user input;

(c)     determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;

(d)     issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;

(e)     responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object;

(f)     responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input;

(g)     if applicable to the particular '915 ACCUSED PRODUCT, scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input;

(h)     if applicable to the particular '915 ACCUSED PRODUCT, rubberbanding a scrolling region displayed within the window;

(i)   if applicable to the particular '915 ACCUSED PRODUCT, attaching scroll indicators and/or scroll bars to the window;

(j)   if applicable to the particular '915 ACCUSED PRODUCT, determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period;

(k)   if applicable to the particular '915 ACCUSED PRODUCT, rotating a view associated with the event object based on receiving a plurality of input points; and

(l)   whether the particular '915 ACCUSED PRODUCT is any (one or more) of a data processing device, a portable device, a portable data processing device, a multi touch device, a multi touch portable device, a wireless device, and/or a cell phone.

## '891 Patent

28.   Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '891 ACCUSED PRODUCTS and/or Mac OS X, version 10.0 to perform the following functions:

(a)   displaying a first window;

(b)   displaying a first window in response to receiving a first input from a user input device;

(c)   starting a timer;

(d)   closing the first window in response to a determination that the timer expired;

(e)   the first window does not close in response to any input from a user input device;

(f)   the first window has been displayed independently from a position of a cursor on the screen;

(g)   the first window is translucent;

(h)   fading out an image of the first window;

(i)   the first window does not respond to any input from a user input device;

(j)   restarting the timer;

(k)   closing the first window without user input; and

(l)   determining whether or not a condition is met.

## '163 Patent

29.   Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '163 ACCUSED PRODUCTS to perform the following functions:

(a)   a touch screen display;

(b)   displaying documents and displaying documents with boxes of content;

(c)   detecting gestures on a touchscreen;

(d)   enlarging and translating a document;

(e)   substantially centering a box of content;

(f)   scaling a document; and

(g)   rotating a document between a landscape and portrait view.

'129 Patent

30.   Any licensing agreements, negotiations for licensing agreements, supply agreements, or negotiations for supply agreements regarding Hardware, Software, methods, processes, or apparatuses that relate to or enable the '129 ACCUSED PRODUCTS to perform the following functions:

(a)   first set of traces and/or sense traces of conductive material along a first dimension;

(b)   a second set of traces and/or drive traces of conductive material spatially separated from the first set by a dielectric;

(c)   the first set of traces and/or sense traces having one or more widths including a maximum width;

(d)   a second set of traces and/or drive traces having one or more widths including a minimum width;

(e)   the width of the second set of traces and/or drive traces being substantially greater than the maximum width of the first set of traces at an intersection;

(f)   the second set of traces and/or drive traces to provide shielding for the first set of traces and/or sense traces;

(g)   the second set of traces and/or drive traces configured for shielding the first set of traces and/or sense traces from the modulated Vcom signal;

(h)   sensors formed at locations where the first set of traces and/or sense traces intersects with the second set of traces and/or drive traces;

(i)   an LCD emitting a modulated Vcom signal;

(j)   second set of traces and/or drive traces are widened to substantially electrically isolate the first set of traces and/or sense traces from an LCD;

(k)   computing system;

(l)   digital audio player;

(m)   a media player;

(n)   shielding a capacitive touch sensor panel from a source of capacitive coupling;

-17-   Case No. 11-cv-01846-LHK
SAMSUNG'S AMENDED FIRST 30(b)(6) DEPOSITION NOTICE TO APPLE INC. (DAMAGES TOPICS)

(o) a first set of traces and/or sense traces further from the source of capacitive coupling than a second set of traces and/or drive traces;

(p) the first set of traces and/or sense traces configured for sensing changes in mutual capacitance;

(q) second set of traces and/or drive traces configured for being driven by low impedance driver outputs;

(r) drive traces widened as compared to the sense traces to substantially cover the second layer except for a gape between adjacent drive traces;

(s) touch processor;

(t) a display and/or LCD;

(u) a touch sensor panel adjacent to the display and coupled to the touch processor;

(v) drive traces of a substantially constant width; and

(w) a second set of traces and/or drive traces closer to the source of capacitive coupling than the first set of traces and/or sense traces.

# CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2012 I caused **SAMSUNG'S AMENDED FIRST 30(b)(6) DEPOSITION NOTICE TO APPLE INC. (DAMAGES TOPICS)** to be electronically served on the following via email:

**ATTORNEYS FOR APPLE INC.**

HAROLD J. MCELHINNY
hmcelhinny@mofo.com
MICHAEL A. JACOBS
mjacobs@mofo.com
JENNIFER LEE TAYLOR
jtaylor@mofo.com
ALISON M. TUCHER
atucher@mofo.com
RICHARD S.J. HUNG
rhung@mofo.com
JASON R. BARTLETT
jasonbartlett@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

I declare under penalty of perjury that the foregoing is true and correct. Executed in Los Angeles, California, on January 30, 2012.

/s/ Curran M. Walker