QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**PUBLIC REDACTED**<br><br>**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**<br><br>Date: October 22, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 5, 4th Floor<br>Judge: Hon. Paul S. Grewal |

02198.51981/5577408.1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. I

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. THERE WAS NO WILLFUL VIOLATION OF THE PROTECTIVE ORDER WARRANTING ANY SANCTIONS AGAINST SAMSUNG ........................................... 2

    A. The Disclosure Was Inadvertent ................................................................... 3

    B. The Protective Order's Inadvertent-Disclosure Procedures Were Followed ............ 3

    C. There Was No Misuse Of Inadvertently Disclosed Confidential Information .......... 4

        1. Dr. Ahn Did Not Misuse Confidential Information ..................................... 4

        2. Samsung Did Not Misuse Confidential Information In Other Litigation ........................................................................................................ 5

        3. No Other Evidence Shows Misuse of Confidential Information .................. 7

II. APPLE AND NOKIA SHOULD NOT BE GRANTED ANY FURTHER RELIEF IN CONNECTION WITH THE PROTECTIVE ORDER ...................................................... 8

    A. Samsung Has Complied Fully With The October 2 Order ....................................... 8

    B. Apple and Nokia Have Abused The Discovery Process .......................................... 9

    C. Samsung's Assertions Of Attorney-Client Privilege And Work-Product Protection Have Not Been Overcome ..................................................................... 11

        1. The Crime-Fraud Exception Does Not Apply............................................. 12

        2. Samsung's Disclosures To Stroz Friedberg Did Not Waive Privilege ....... 13

        3. Samsung Did Not Impliedly Waive Privilege............................................. 14

CONCLUSION ............................................................................................................................. 15

02198.51981/5577408.1

-i-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

**Page**

### Cases

*Adele v. Dunn*,
    2013 WL 593291 (D. Nev. Feb. 14, 2013) ........................................................................... 3

*Barnhill v. Boilermakers Nat. Health & Welfare Fund*,
    2011 WL 5396064 (D. Kan. Nov. 8, 2011) ....................................................................... 14

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) ............................................................................................ 15

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
    232 F.3d 1258 (9th Cir. 2000) .......................................................................................... 12

*Genentech, Inc. v. Insmed Inc.*,
    236 F.R.D. 466 (N.D. Cal. 2006) ...................................................................................... 14

*Hearn v. Rhay*,
    68 F.R.D. 574 (E.D. Wash. 1975) ..................................................................................... 14

*Home Indem. Co. v. Lane Powell Moss & Miller*,
    43 F.3d 1322 (9th Cir. 1995) ............................................................................................ 14

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) .......................................................................................................... 13

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) ......................................................................................... 12

*Lambright v. Ryan*,
    698 F.3d 808 (9th Cir. 2012) .............................................................................................. 2

*Laser Indus., Ltd. v. Reliant Techs., Inc.*,
    167 F.R.D. 417 (N.D. Cal. 1996) ................................................................................ 13, 15

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) .......................................................................................................... 12

*Mosley v. V Secret Catalogue Inc.*,
    537 U.S. 418 (2003) .......................................................................................................... 12

*Nabisco, Inc. v. PF Brands, Inc.*,
    191 F.3d 208 (2d Cir. 1999) ............................................................................................. 12

*In re Napster, Inc. Copyright Litig.*,
    479 F.3d 1078 (9th Cir. 2007) ..................................................................................... 12, 13

*In re Richard Roe, Inc.*,
    68 F.3d 38 (2d Cir. 1995) ................................................................................................. 13

02198.51981/5577408.1

-ii-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

*SEC v. Roberts*,
    254 F.R.D. 371 (N.D. Cal. 2008) ..................................................................................14

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) ......................................................................................15

*United States v. Zolin*,
    491 U.S. 554 (1989) ......................................................................................................13

*Walker v. County of Contra Costa*,
    227 F.R.D. 529 (N.D. Cal. 2005) ..................................................................................13

**Statutes**

18 U.S.C. § 1503 ...........................................................................................................................13

18 U.S.C. § 1509 ...........................................................................................................................13

Fed. R. Evid. 502(d) ......................................................................................................................14

Fed. R. Evid. 502(e) ......................................................................................................................14

02198.51981/5577408.1

-iii-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

**Preliminary Statement**

Samsung respectfully submits this supplemental brief in response to this Court's invitation in its October 2 Order Re: Apple's Motion for Sanctions (Dkt. 2483 at 6). As this Court knows, but as has been widely mischaracterized in the press, this dispute arises from the fact that certain terms of Apple licenses with Nokia and other companies were inadvertently disclosed to Samsung in a few lines of a 295-paragraph expert report that was otherwise heavily redacted to remove confidential licensing or other information and from which all exhibits (including those containing licensing information) were carefully removed. This inadvertent disclosure was a regrettable mistake. But such mistakes sometimes happen when many thousands of documents are prepared and transmitted in a complex patent case, and the Protective Order accordingly anticipates and provides for them, setting forth explicit remedial procedures for inadvertent disclosures such as those here (Dkt. 687 at 30), and Samsung and Quinn Emanuel have fully complied with them.

Samsung and Quinn Emanuel also have worked tirelessly to provide Apple and Nokia with the additional discovery the Court compelled in its October 2 Order, including by producing thousands of pages of documents and producing Samsung witnesses for nearly 40 hours of depositions. These efforts have enabled Samsung to provide answers to this Court's questions "who has now had access to the confidential licensing information? For what purpose? When? Where? How? Has Samsung relied on any of the confidential information in taking any position before any other court or jurisdiction? Exactly what steps has Samsung taken to prevent dissemination and use of the confidential information in the future?" Dkt. 2483 at 4; *see also* Dkt. 2538 (Koh, J., affirming this Court's October 2 Order) at 9. These efforts have similarly enabled Samsung to answer Judge Koh's concern that "this information may have been used by Samsung's lawyers in other courts." *Id.* at 10.

As these discovery efforts have made clear, ***there was no willful violation of the Protective Order warranting any sanctions*** and there is likewise ***no evidence that Samsung improperly used any confidential Apple patent licensing information*** from the inadvertent disclosures in connection with any of Samsung's licensing negotiations with Nokia, Apple or anyone else, or in connection with litigation in other courts. Accordingly, Samsung respectfully

02198.51981/5577408.1

-1-
SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL
FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER

1  requests that the Court deny any request for sanctions against Samsung and likewise deny any
2  demands by Apple and Nokia for further discovery,[1] thus bringing this satellite litigation to a
3  swift end lest it further distract from the need to allow the "two Apple v. Samsung cases proceed
4  to a decision on the merits."  Dkt. 2538 at 15 (Koh, J.).

**Argument**

**I.    THERE WAS NO WILLFUL VIOLATION OF THE PROTECTIVE ORDER WARRANTING ANY SANCTIONS AGAINST SAMSUNG**

The Protective Order prohibits the "use" of protected information for any purpose other than this litigation and provides that "Protected Material shall not *voluntarily* be distributed, disclosed or made available to anyone except as expressly provided in this Order."  Dkt. 687 at 5 (emphasis added).  It also provides that, when an "*inadvertent* disclosure" of information designated confidential occurs, the disclosing party must provide "all known relevant information concerning the nature and circumstances of the disclosure" and "promptly take all reasonable measures to retrieve" the material and limit its further dissemination.  *Id.* at 30 (emphasis added).

Here, there was no voluntary disclosure but rather an inadvertent failure to catch a few lines in a report that was otherwise properly redacted, in a case involving the generation and transmission of many thousands of documents containing some confidential information.   Here, Samsung and Quinn Emanuel fully complied with the procedures provided for in the Protective Order, which expressly anticipates that such inadvertent disclosures will happen and provides the means for correcting them.  And here, despite the extensive discovery the Court compelled, the record provides no support whatsoever for Apple's and Nokia's inflammatory allegations that Samsung misused the inadvertently-disclosed confidential licensing information.  Under such circumstances, sanctions are clearly inappropriate.  *See*, *e.g.*, *Lambright v. Ryan*, 698 F.3d 808, 826 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2770 (2013) (affirming a sanction merely "ordering

---

[1] If the Court does allow any further discovery, which it should not, then Samsung respectfully requests offensive discovery to show lack of any willful disclosure of confidential information, as set forth in Samsung's forthcoming motion for such relief.

02198.51981/5577408.1

-2-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

Respondents to retrieve the file" where any violation of a protective order was "inadvertent" ); *Adele v. Dunn*, 2013 WL 593291, *5-6 (D. Nev. Feb. 14, 2013) (declining to order sanctions for defendants' disclosure of plaintiff's unredacted medical records where disclosure was unintentional and  "appropriate steps" were taken to insure this does not occur in the future").

### A.     The Disclosure Was Inadvertent

The substantial information Samsung has produced since the Court issued its October 2 Orders shows that the disclosures of confidential licensing information were *inadvertent* and not *voluntary*.  Any remaining question the Court might have as to whether the expert report was "intentionally or inadvertently" left incompletely redacted (Dkt. 2483 at 2) can surely now be put to rest.  Not a single piece of evidence adduced in discovery, either voluntary or compelled, exists to suggest that any disclosure was intentional rather than inadvertent , nor has Apple or Nokia alleged as much.[2]

### B.     The Protective Order's Inadvertent-Disclosure Procedures Were Followed

Samsung likewise has *complied with* the Protective Order by providing Apple and Nokia, subject to the rules of attorney-client privilege and work-product protection, with "all known relevant information concerning the nature and circumstances of the disclosure."  Upon receipt of Nokia's motion for a protective order, Samsung promptly began an internal investigation, which continued through its collection of information pursuant to the stipulation with Nokia (which was ongoing at the time of the October 1 hearing).  While Samsung recognizes that the Court was dissatisfied with the status of Samsung's provision of relevant information as of the October 1 hearing, Samsung wished to avoid providing incomplete or inaccurate information regarding the dissemination and potential use of the alleged confidential information before its investigation was complete.  Now that Samsung's investigation is compete, and neither Apple nor Nokia can

---

[2]  In declining to concede that it had "violated" the Protective Order at the October 1 hearing, Samsung had no wish to minimize the inadvertent disclosure of protected material or the importance of correcting it, but merely sought to emphasize that such unintentional disclosures followed by proper corrective action are not appropriately regarded as "violations" of a court order—which are typically associated with intentional and knowing acts.

02198.51981/5577408.1

-3-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

1  demonstrate any prejudice resulting from the time it took Samsung to collect and provide full
2  information, the Court should conclude that Samsung has complied with its disclosure obligations
3  under the Protective Order.

4      **C.**    **There Was No Misuse Of Inadvertently Disclosed Confidential Information**

5          **1.**    **Dr. Ahn Did Not Misuse Confidential Information**

6  ████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████
8  ████████████████████████████████████ The suggestion is facially
9  implausible, as Dr. Ahn is an experienced licensing negotiator and an attorney who has been
10 responsible directly or indirectly for the supervision of hundreds of patent litigations, who well
11 understands the importance of the confidentiality of licensing terms, the need to comply with
12 protective orders and the consequences of not doing so.  Ahn Decl. ¶ 4.  The full record now
13 confirms that Nokia's allegations concerning Dr. Ahn are not only implausible but factually false.

14 ████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████
17 ███████████████████████████████ Mr. Melin called for a break in the meeting to
18 consider this offer. ████████████████████████████████████
19 ████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████
22 ████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████
25 ████████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████████
27 ███████████████████████
28

02198.51981/5577408.1

-4-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL
FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**



2. **Samsung Did Not Misuse Confidential Information In Other Litigation**

Apple has compounded Nokia's erroneous accusations by suggesting that Samsung has used the confidential licensing information in the expert report in other litigation, contrary to the

02198.51981/5577408.1

-5-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL
FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

Protective Order's terms. Specifically, Apple suggests that a Samsung employee requested a copy of the redacted expert report from Quinn Emanuel on December 21, 2012, and Quinn Emanuel provided it, so that Samsung could use that information to formulate a "straw man" ▉ settlement offer to Apple that Samsung knew Apple would reject, thus allowing Samsung to use that rejection to argue in the pending 794 ITC Investigation that Apple was an "unwilling licensee." *See* Apple's Reply (Dkt. 2410-02) at 4; Oct. 1, 2013 Hearing Tr. at 7:4-9 (Apple's counsel stating his "particular concern" about the December 2012 transmittal). Apple's theory, like Nokia's, is belied by the undisputed evidence:

***First*,** ▉

▉ *See* Korea Decl., ¶¶ 15-19.

***Second*,** the offer Samsung made to Apple does not track the terms of the Apple/Nokia license in any way. ▉

▉ *See id.* ¶¶ 18-20.

***Third*,** ▉

▉. *See* Estrich Decl., Dkt. 2497, Ex. A.

***Fourth*,** Daniel Shim, the Samsung employee who requested a copy of the expert report on December 21, 2012, has given unrebutted testimony that he did so for purposes of an unrelated lawsuit between Samsung and MicroUnity, and for reasons entirely unrelated to any confidential Apple licensing information disclosed in the expert report. Shim Decl., ¶ 8.

***Fifth*,** if Samsung had "used" the terms of Apple's license with Nokia for purposes of any

---

[3] The Apple/Nokia license agreement has previously been filed in the 1846 case as Ex. 28 to the Pernick Decl. in Support of Apple's Opposition to Samsung's Motion to Strike (Dkt. 996).

02198.51981/5577408.1

-6-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

positions it took in the 794 Investigation, nothing about that would be improper as Apple had produced that license in discovery in the investigation, even though Nokia was apparently unaware of this.  Becher Decl., ¶ 20.  While Quinn Emanuel would not have been permitted to disclose confidential terms of the license to Samsung, Quinn Emanuel, on Samsung's behalf, was certainly entitled to take positions that were made in consideration of the terms of that license.

### 3. No Other Evidence Shows Misuse of Confidential Information

The record is devoid of any other evidence showing improper use of the confidential licensing information in the expert report.  Samsung's 30(b)(6) witness, Ken Korea, conducted an extensive investigation that spanned several continents to identify how the alleged confidential information was received, further disseminated or used by each of the recipients of that information, including Samsung's employees and its outside law firms.  Korea Decl., ¶¶ 9-14. The results of Mr. Korea's investigation are summarized in Exhibits 1-3 to his declaration.[4]  Those results belie any claim by Apple or Nokia that any confidential information was used:

- Thirty Samsung employees recall reviewing an email to which one of the inadvertent disclosures was attached.

- Sixteen employees recall reviewing the attachments to those emails.

- No employee recalls seeing the alleged confidential terms of the Apple-Nokia, Apple-Sharp, Apple-Philips or Apple-Ericsson licenses in the Teece Report.

- ***No employee used the alleged confidential information for any purpose***.

The results of Mr. Korea's investigation of use by any of the law firms representing Samsung in other matters likewise belie any claim of improper use of Apple's alleged confidential information:

- Two firms have no record of ever receiving any email containing the inadvertently-disclosed information.

- Of the remaining 14 firms that confirmed receipt of the information, 12 never included the financial terms of Apple's licenses with Nokia, Sharp, Philips or Ericsson in or with any motion or filing they prepared, nor was the information otherwise used in any way.

---

[4] Similar documents were also made available to Apple's and Nokia's counsel at Mr. Korea's deposition.

02198.51981/5577408.1

-7-
SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER

1
2
3
4 [REDACTED] these instances merely confirm that the disclosures
5 were *inadvertent* and not voluntary, as surely Samsung would not have permitted this information
6 to be filed in court if its intent was to conceal that it had misused it.  These isolated incidents
7 therefore do not establish any willful misuse of confidential information.  Nor was Apple
8 prejudiced by these instances, as in both cases the filed documents are not publicly available, and
9 only the Court, Samsung and/or Apple have access to the documents, and Samsung has now
10 undertaken efforts to withdraw the information from the record, even though Apple never
11 requested such removal despite having full notice of the Italy filing.  *See* Vanzetti Decl., ¶¶ 2-8;
12 Camesaca Decl., ¶¶ 2-5.

## II. APPLE AND NOKIA SHOULD NOT BE GRANTED ANY FURTHER RELIEF IN CONNECTION WITH THE PROTECTIVE ORDER

Apple and Nokia have had a comprehensive opportunity to develop their arguments about misuse of confidential information based on an enormous discovery record.  While it is inevitable they will claim to be unsatisfied with the results, there is no proper basis to permit them to continue their fishing expedition.  Their satellite litigation should end here.

### A. Samsung Has Complied Fully With The October 2 Order

Samsung has undertaken herculean efforts to provide information to Apple and Nokia regarding the inadvertent disclosures, both prior to and in response to the Court's October 2 Order. By the October 16, 2013 deadline set by the Court, the e-discovery vendor Nokia chose, Stroz Friedberg, had gathered, imaged, processed and run keyword searches ***on over a terabyte of data***, from 71 Samsung employees on three continents who received the alleged confidential information. Kavanagh Decl., ¶¶ 6-8; Becher Decl., ¶¶ 3-17.  To ensure this work was timely completed, Samsung gave the Stroz team access to its facility on a Korean holiday on October 9, and also allowed Stroz to work continuously over weekends. Becher Decl., ¶ 14.  Stroz sent an examiner to Paris and Belgium to collect images of Samsung employees' computers. *Id.* ¶ 15.

02198.51981/5577408.1

-8-

**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

1   Stroz processed and loaded approximately 140 GB of data that hit on the search strings into its
2   online review system so it could be reviewed for responsiveness. *Id.* ¶ 17.  Quinn Emanuel
3   assembled a team of more than twenty attorneys to work on compliance with the Court's Order.
4   *Id.*  This team worked without pause and ultimately reviewed 69,862 documents—many in
5   Korean—for responsiveness.  *Id.*  Samsung ultimately produced 470 responsive documents,
6   consisting of a total of 12,988 pages.  *Id.*

7   Samsung also undertook tremendous efforts to provide prompt and thorough depositions of
8   the six Samsung employees whose depositions Apple and Nokia noticed, one of whom, Ken
9   Korea, also testified as a 30(b)(6) witness.  *Id.* ¶ 18.  Samsung brought each of its witnesses to Los
10  Angeles for deposition, even though five of the six work and reside in Korea, and the deposition of
11  one of them, James Kwak, was not even noticed until days before the deposition was to occur.  *Id.*
12  These witnesses provided almost 40 hours of deposition testimony.

13  **B.     Apple and Nokia Have Abused The Discovery Process**

14  While Samsung has moved mountains in its effort to comply with the Court's Orders,
15  Apple and Nokia have sought to exploit the situation to engage in an overly-burdensome
16  discovery campaign.  In fact, much of the discovery taken pursuant to the October 2 Order has
17  nothing to do with any alleged protective-order violation, and instead is an improper effort to
18  support claims in other actions where merits discovery closed long ago.

19  For example, Apple and Nokia hardly asked any questions of Samsung's 30(b)(6) witness
20  Ken Korea regarding the actual dissemination or use of the confidential information at issue,
21  despite Mr. Korea's rigorous efforts to prepare for this topic through more than ninety witness
22  interviews, communications with recipient law firms, and production of two interview summary
23  charts and four email dissemination charts that were barely discussed.  Korea Decl, ¶ 10.  Apple
24  and Nokia complained that seven hours was insufficient time to depose Dr. Ahn, despite the fact
25  that Nokia's counsel wasted excessive time asking granular questions about Dr. Ahn's education
26  and employment history—topics covered in Dr. Ahn's prior depositions in this action, and Apple's
27  counsel did not address the critical negotiation between Dr. Ahn and Mr. Melin in June 2013 until
28  halfway through counsel's examination.  The other depositions likewise show that Apple and

02198.51981/5577408.1

-9-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL
FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

1  Nokia preferred to ask questions concerning Samsung's unrelated litigations and business plans.
2  For example, Mr. Kwak was asked about Samsung's future plans regarding Nokia, which is not
3  only irrelevant, but plainly improper.  Becher Decl., ¶ 45, Ex. X.
4       Apple and Nokia have also taken discovery positions that have made it as difficult as
5  possible for Samsung to comply with the Court's Orders.  For example, Samsung offered—
6  repeatedly—to disclose even privileged information relating to its alleged use and dissemination
7  of the alleged confidential information, provided that Apple and Nokia would stipulate that such
8  disclosures would not yield a broader waiver.  Becher Decl., ¶¶ 21-33.  ***Apple and Nokia refused***
9  ***to stipulate to the non-waiver of privilege***, and thus barred Samsung from its willing disclosure of
10  even more information than it already has disclosed in response to the Court's October 2 order.
11  *Id*. ¶ 30.
12       Apple similarly refused to agree that it will not argue that Samsung's production of
13  documents to Nokia violates any applicable protective order in this case or another case.  *Id*. ¶ 28,
14  Ex. F, ¶ 33, Ex. M.   Apple has provided only selective authorization for Samsung to produce
15  documents to Nokia, insisting that Samsung redact some documents, and that Apple review and
16  approve those redactions, before Samsung provides them to Nokia.  *Id*.  Meanwhile, Nokia has
17  been demanding immediate production of all Samsung's documents, leaving Samsung with an
18  impossible choice between Nokia's argument that Samsung has failed to produce documents
19  required by the October 2 Order and Apple's argument that Samsung has violated a protective
20  order.
21       At depositions as well, Apple and Nokia have refused to enter into basic agreements that
22  would give Samsung assurance that it could provide information without subjecting itself to any
23  arguments that doing so violates an applicable nondisclosure agreement—which of course is an
24  issue of particular concern to Samsung given the nature of the dispute at hand.  For example, at the
25  deposition of Dr. Ahn, Nokia's counsel at times refused to agree that it would not assert that Dr.
26  Ahn's provision of testimony regarding his negotiation session with Nokia's Mr. Melin in the
27  presence of an Apple attorney did not violate an NDA governing those negotiations.  *Id*. ¶ 38, Ex.
28  Q.  Nokia's refusal to agree is not only counterproductive to the development of the facts that

1  Nokia and Apple claim they need to fully understand Samsung's alleged use and dissemination of
2  the information at issue, but also is ironic given that Nokia and Apple flatly rejected Samsung's
3  attempts to preserve the confidentiality of its respective negotiations with Nokia and Apple, and
4  instead have willfully shared with each other information about Samsung's offers to each of them.
5  This was done over Samsung's objections.  *Id.* ¶ 39, Ex. R.

6      In sum, the information Samsung has provided in response to the October 2 Order is more
7  than sufficient to show that neither Apple nor Nokia has been harmed by the disclosures at issue.
8  Apple and Nokia should not be permitted to continue their efforts to box Samsung into untenable
9  discovery positions.  Apple and Nokia should be denied further discovery.

10      **C.**    **Samsung's Assertions Of Attorney-Client Privilege And Work-Product**
11            **Protection Have Not Been Overcome**

12      As part of their effort to expand their satellite litigation even further, it is predictable that
13  Apple and Nokia will complain that Samsung has used the attorney-client privilege and work-
14  product doctrine to shield relevant information from disclosure, and that they should be entitled to
15  discover Samsung's privileged information.  There is no basis for any complaints by Apple or
16  Nokia in this regard.  In fact, it is Apple and Nokia that have acted wrongfully by repeatedly
17  asking questions at deposition that were expressly intended to elicit privileged information,
18  including about irrelevant topics relating to Samsung's business and litigation activities, as part of
19  their clear strategy to develop a record they could attempt to use to seek more discovery from
20  Samsung.  *E.g.*, Becher Decl., ¶¶ 35-37, Exs. N, O, P.

21      As Judge Koh confirmed in her Order denying relief from the Court's October 2 Order,
22  nothing in that Order abrogated Samsung's privileges.  Dkt. 2538 at 7.  Apple's suggestions to
23  the contrary[5] are thus unavailing.  In addition to all its other compliance efforts, Samsung prepared

---

[5] For example, on October 4 Samsung asked Apple if it "believes Samsung is required to produce documents in response to the Magistrate Judge's Order, including the documents listed in the first category, without regard for assertions of the attorney-client privilege or attorney work product protections," to which Apple responded that the "Court's Order obligates Samsung to produce unredacted versions of the documents."  Becher Decl., ¶ 24, Ex. D.

02198.51981/5577408.1

-11-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL
FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

and served by October 16 two privilege logs that provided detailed information regarding the dates, senders, recipients, descriptions, and claimed privileges, as to both withheld and redacted documents, in order to permit a document-by-document analysis of the privilege.  Becher Decl., ¶ 34.  Samsung also appropriately instructed its witnesses not to disclose privileged communications at deposition.

Moreover, no negative inference can be drawn from Samsung's assertions of its privileges. *See*, *e.g.*, *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (citing approvingly to decision "in which a court found that no negative inference could be drawn from a party's assertion of the attorney-client privilege") (citing *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 226 (2d Cir. 1999) ("We believe the district court erred in drawing an adverse inference against Nabisco by reason of its invocation of the attorney-client privilege."), *abrogated on other grounds by Mosley v. V Secret Catalogue Inc.*, 537 U.S. 418 (2003)); *accord Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (same rule applies to work product).

### 1. The Crime-Fraud Exception Does Not Apply

The record provides no support for Apple's assertion  (Dkt. 2410 at 6-8) that the crime-fraud exception applies here.  "A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must" show that (i) "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme" and (ii) "the attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing illegality.'"  *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) (quotations omitted), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).  Upon a *prima facie* showing, the Court has discretion to order *in camera* review of each document in question to determine whether to order, on a document by document basis, "that the communications be disclosed."

02198.51981/5577408.1

-12-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

1  *Napster*, 479 F.3d at 1091.[6]

2  There is no evidence that the alleged inadvertent protective-order violation here constituted
3  a "crime or fraud" of any kind, or that any privileged communications were made in furtherance of
4  any such crime or fraud. To the contrary, the record fails to show that either the disclosure by
5  Quinn Emanuel was willful or that Samsung made any willful misuse of the information
6  disclosed.[7] In any event, rulings regarding privilege must be based on findings as to specific,
7  identifiable documents. *E.g.*, *Walker v. County of Contra Costa*, 227 F.R.D. 529, 533 (N.D. Cal.
8  2005) (a court "should not issue a blanket nullification of the privilege but should make findings
9  on a document-by-document basis").

### 2. Samsung's Disclosures To Stroz Friedberg Did Not Waive Privilege

Nor should this Court give any credence to Apple's suggestion (Oct. 1, 2013 Hearing Tr. at 71:9-12) that Samsung waived the privilege by providing documents to its e-discovery vendor, Stroz Friedberg, pursuant to the so-ordered stipulation with Nokia. Not only were the disclosures

---

[6] *See United States v. Zolin*, 491 U.S. 554, 574-75 (1989) ("before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability" through "any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged"); *In re Richard Roe, Inc.*, 68 F.3d 38, 41 (2d Cir. 1995) (instructing that on remand, the "district court shall determine which, if any, of the documents or communications were in furtherance of a crime or fraud, as discussed above. If production is ordered, the court shall specify the factual basis for the crime or fraud that the documents or communications are deemed to have furthered, which of the parties asserting claims of privilege possessed a criminal or fraudulent purpose with respect to those documents or communications, and, if appropriate, whether the crime-fraud exception applies to an innocent joint privilege-holder.").

[7] The application of fraud to satisfy the "crime or fraud" exception requires, at a minimum, proof of intentional fraudulent conduct. *See*, *e.g.*, *Napster*, 479 F.3d at 1097 (fraud required for application of crime-fraud exception requires an intention to defraud). There is no evidence of such intentional conduct here, much less that any privileged communications furthered it. Nor is there any evidence of criminal liability or fraud on the Court or a government agency. *See id.* at 1096 (fraud on the court); *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 422-23 (N.D. Cal. 1996) (fraud on the Patent Office). Potential crimes related to violation of court orders require prove of a willful violation beyond a reasonable doubt. 18 U.S.C. § 1509 (crime of "obstruction of court order"); 18 U.S.C. § 1503 (crime of "obstruction of justice"); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833-34 (1994) (criminal contempt).

02198.51981/5577408.1

-13-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**

1  to Stroz not a waiver in the first place, *e.g.*, *SEC v. Roberts*, 254 F.R.D. 371, 381-82 (N.D. Cal.
2  2008) (disclosure even to independent third-party auditors did not waive privilege where
3  assistance was "necessary for [party] to properly conduct [its] investigation"), but the so-ordered
4  stipulation itself confirms there is no waiver (Dkt. 785 at 3-4), and that confirmation now has the
5  force of a Court Order, binding on Nokia and third parties alike. *See* Fed. R. Evid. 502(d) & (e).[8]
6  Moreover, Judge Koh confirmed that there was no "actual ruling on the issue of whether
7  Samsung's transmission of documents to Stroz Friedberg will constitute a waiver of any assertions
8  of privilege Samsung wants to advance against Apple," and that "Samsung will still have the
9  chance to argue that its documents are privileged vis-à-vis Apple even after giving information to
10  Stroz Friedberg pursuant to the stipulation." Dkt. 2538 at 13.

### 3.     **Samsung Did Not Impliedly Waive Privilege**

12  Nokia, after agreeing in the stipulation that there would be no waiver of privilege, argued
13  for the first time to Judge Koh that Samsung had "impliedly" waived the privilege by
14  "characterizing counsel's behavior as merely 'failing to redact a handful of lines,'" which
15  allegedly put Samsung's "attorney-client communications directly in issue." Dkt. 2502 at 5. That
16  too is simply wrong. Implied waiver can occur only when a party, through an affirmative act, puts
17  privileged information "at issue," and when upholding the privilege would deny the opposing
18  party access to information vital to its defense. *Home Indem. Co. v. Lane Powell Moss & Miller*,
19  43 F.3d 1322, 1326 (9th Cir. 1995) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).
20  Samsung has taken no action that could impliedly waive the privilege—to the contrary, it has
21  studiously asserted the privilege at all times, both in producing documents and at deposition. Nor
22  has Samsung put its privileged communications at issue by simply denying Apple's accusation of
23  improper use of the disclosed information. *See*, *e.g.*, *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D.

---

[8] *See Barnhill v. Boilermakers Nat. Health & Welfare Fund*, 2011 WL 5396064, *4 (D. Kan. Nov. 8, 2011) ("Rule 502(e) recognizes that agreements addressing 'the effect of disclosure in a Federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order.' *In other words, 'if parties want protection against non-parties from a finding of waiver by disclosure, the agreement must be made part of a court order.*'" (emphasis added) (quoting Fed. R. Evid. 502(e) explanatory note)).

466, 469 (N.D. Cal. 2006) (overruling decision finding implied waiver: "mere denial of intent is insufficient to establish waiver of the privilege"); *Laser Indus.*, 167 F.R.D. at 446 ("denials of knowledge of the undisclosed prior art did not purport to disclose the contents of a specific communication, and do not appear to go beyond 'mere denial[s].' More important, their denials have not placed the contents of any privileged communication 'in issue.'" (citations omitted)). Furthermore, ample non-privileged evidence affirmatively shows that the disclosed information was not exploited by Samsung in licensing negotiations, as shown in detail below. *United States v. Amlani*, 169 F.3d 1189, 1995 (9th Cir. 1999) ("When the sought-after evidence is 'only 'one of several forms of indirect evidence' about an issue,' the privilege has not been waived.") (quoting *In re Geothermal Resources Int'l, Inc.*, 93 F.3d 648, 653 (9th Cir. 1996) (*per curiam*)).[9]

## Conclusion

For the reasons set forth above, the Court should deny any sanctions or other relief in connection with the alleged violations of the Protective Order.

DATED:  October 21, 2013            QUINN EMANUEL URQUHART & SULLIVAN, LLP


By /s/ *Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

---

[9] Where implied waiver is found, it must be "no broader than needed to ensure the fairness of the proceedings before it." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (*en banc*).

02198.51981/5577408.1

-15-
**SAMSUNG'S SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**