QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**DECLARATION OF SEUNGHO AHN IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**<br><br>**Date**:  October 22, 2013<br>**Time**:  10:00 a.m.<br>**Place**:  Courtroom 5, 4th Floor<br>**Judge**:  Hon. Paul S. Grewal |

I, Seungho Ahn, declare:

1. I am an Executive Vice President and Head of the Intellectual Property Center at Samsung Electronics Co., Ltd. and have held this position since the summer of 2010. One of my responsibilities is to oversee Samsung's license negotiations, including its negotiations with Nokia Corporation ("Nokia").

2. I hold an undergraduate degree in Polymer Engineering from Seoul National University in South Korea; a master's degree in Metallurgical Engineering from Seoul National University in South Korea; a Ph.D in Materials Engineering from the University of Illinois, Urbana-Champaign; and a J.D. from Santa Clara University.

3. English is not my first language. Although I am able to read, write and communicate to a large extent in English, I am not able to fully express myself in English and am most comfortable communicating in Korean. For instance, when I go to English language movies I cannot understand everything that is being said, because the actors speak too fast. I am also told by native English speakers that my speech is highly accented. In my day to day work activities at Samsung, I primarily speak Korean with my colleagues. I am more comfortable with written English than I am with spoken English.

4. I have been involved directly or indirectly in the negotiation of hundreds of licenses during my time at Samsung. As part of this work, my team and I try to stay on top of industry licensing intelligence relevant to our business, including by gathering information available in the marketplace about who is paying how much for what technology. This is an important part of my job and also for those on my team. This is particularly true when it comes to smartphones and the major portfolios our competitors have developed and acquired in recent years because of the contentious licensing and litigation activity in this business. My team and I try to stay abreast of press reports, analyst reports and other news regarding our competitors and our industry. We make it a point to talk to lawyers, consultants and industry participants to learn what we can.

5. I have a general familiarity with the inadvertent disclosure issue that the Court is currently considering. I have cooperated fully in the investigation, including by preserving my documents, making my computer available to be imaged, providing an interview to Samsung VP

1  Ken Korea, and traveling to California to sit for a deposition last week that lasted nearly nine
2  hours, including breaks.

3      6.    I do not remember receiving or reviewing any emails from Quinn Emanuel
4  containing instructions for accessing a version of a Teece Report via a File Transfer Protocol site,
5  nor do I remember receiving or reviewing any emails or attachments from other outside counsel
6  attaching a version of the Teece Report.  I receive hundreds of emails each day, and often dozens
7  of emails each day just from Quinn Emanuel.  It is my general practice not to read emails or even
8  open attachments where the email has many addressees of which I am just one.  I do not remember
9  reading any emails or other documents reciting the terms of the Apple/Nokia license, or learning
10  those terms from any discussions, nor do I know with certainty what those terms are from any
11  other source.

12      7.    I do not remember receiving or reviewing any emails or attachments from Quinn
13  Emanuel regarding Samsung's International Trade Commission ("ITC") public interest brief, nor
14  do I remember receiving or reviewing any emails or attachments from fellow Samsung employees
15  attaching the ITC public interest brief, or discussing it with anyone.

16      8.    [REDACTED]

21      9.    [REDACTED]

26      10.    [REDACTED]

02198.51855/5575829.8

-2-

Case No. 11-cv-01846-LHK
DECLARATION OF SEUNGHO AHN

1  ████████████████████████  After that, Nokia requested that we take a break from the
2  meeting so that Nokia could think about Samsung's offer.  The break lasted approximately one
3  hour.

4       11.  ████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████
9  ██████████████████████████████████████████

10      12.  ████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████████
13 ██████████████████████████████████████████████████████████
14 ██████████████████████████████████████

15      13.  ████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████
17 ██████████████████████████████████████████████████

18      14.  ████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████
22 ████████████████████████████████████████████████████████████████
23 ██████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████
25 ██████████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████████████
28 ████████████████████████████████████████████████████████████████

15. ███████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

16. █████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
██████████████████████

17. █████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████

18. █████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

19. As discussed above, my estimate ████████████████████████████████ came from multiple media reports and discussions with non-Samsung lawyers and representatives of other companies who have negotiated with Samsung. These lawyers included lawyers representing patent trolls, as well as lawyers hoping to be hired by Samsung and in-house counsel from other companies. When Nokia and Apple settled in 2011, virtually everybody within the

1  industry was interested in it.  So upon the parties settling, there were many public reports about
2  what the probable royalty terms were.  Whenever industry people would get to see each other the
3  settlement terms were often a point of discussion and speculation.  And so, based upon all the
4  things that I'd come across in the media and publications -- many of which I had personally read --
5  and my talking with people in the industry, I had come up with my estimate.

6      20.   ███████████████████████████████████████████████████████████
7  ███████████████████████████████████████████████████████████████████
8  ███████████████████████████████████████████████████████████████
9  ████████████████

10     21.   To my knowledge, no outside counsel representing Samsung in its various
11 litigations around the world against Apple has ever told me the terms of the Apple-Nokia license.

12     22.   I am certain that I did not tell Mr. Melin at the June 4, 2013 meeting that I received
13 Apple/Nokia licensing terms from my outside counsel in the Apple/Samsung case, because it is
14 not true, and because it would be a very foolish thing to say.  I hold a J.D. from an American law
15 school, Santa Clara University, and until I moved to Korea approximately ten years ago I was a
16 member of the California Bar.  I am well aware of the importance of protective orders in United
17 States litigation.  I have been responsible directly or indirectly for the supervision of hundreds of
18 patent litigations.  In most, if not all of them, a protective order is entered.   These invariably cover
19 license terms which I know from experience are highly confidential and sensitive information.
20 The confidentiality of this type of license information is as important to Samsung as it is to any
21 other technology company.   It would be incredibly reckless for me to have made such a comment
22 to Nokia.  It would amount to my admitting to an adversary that our outside counsel and Samsung
23 had violated a protective order protecting the adversary's information and that I was attempting to
24 use the information gained by such a violation to negotiate license terms.   The idea that I would
25 violate a protective order is simply wrong, and the idea that I would tell my adversary that I and
26 my outside counsel had violated it and furthermore were violating it in that very instance by trying
27 to profit from its use is preposterous.  ████████████████████████████████
28 ████████████████████████████████████████████████████████████████████

1. █████████████████████████████████████████████████████████

2. 23. I may have used the word "leak" at the June 4th, 2013 meeting with Nokia, or some other word to reference the idea that all information gets out, though I don't recall the precise phrase I used. I do believe that there may have been some sort of leak due to the contemporaneous media reports outlining the terms of the Apple-Nokia license. But I cannot be certain of this. It has in fact been my own experience that information gets out. I know this from my own experience and I recounted to Mr. Melin a situation a few years ago where Samsung had entered into a confidential settlement with another company and very shortly thereafter everyone in the industry seemed to know it.

24. I do not know the specific terms of Apple's licenses with Ericsson, Sharp, or Philips, nor do I remember ever knowing them, or being informed of them in any written document or conversation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Suwon, South Korea, on October 21, 2013.

                                                                    */s/ Seungho Ahn*
                                                                    Seungho Ahn, Ph.D

**ATTESTATION**

I, Victoria Maroulis, am the ECF user whose ID and password are being used to file the foregoing document.   I hereby attest pursuant to Civil L.R. 5-1 that concurrence in the electronic filing of this document has been obtained from Seungho Ahn, Ph.D.

                 */s/ Victoria F. Maroulis*
                 Victoria F. Maroulis