# Exhibit 24

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                            SAN JOSE DIVISION

 4

 5

     APPLE, INC.,                    )   CV-11-1846-LHK
 6                                    )
                       PLAINTIFF,     )   SAN JOSE, CALIFORNIA
 7                                    )
                 VS.                  )   OCTOBER 1, 2013
 8                                    )
     SAMSUNG ELECTRONICS, ET AL,      )   PAGES 1-76
 9                                    )
                       DEFENDANT.     )
10                                    )

11

12                       TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HONORABLE PAUL S. GREWAL
13                       UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:        WILMER PICKERING HALE & DORR LLP
                               BY:  WILLIAM F. LEE
17                                  JOSEPH J. MUELLER
                               60 STATE STREET
18                             BOSTON, MA 02109

19   FOR THE DEFENDANT:        THE LAW CENTER/USC
                               BY:  SUSAN ESTRICH
20                             UNIVERSITY PARK
                               LOS ANGELES, CA 90089-0071

21

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
23

24            APPEARANCES CONTINUED ON THE NEXT PAGE

25   OFFICIAL COURT REPORTER:       SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
```

```
 1       FOR THE PLAINTIFF:        WILMER HALE
                                   BY:  MARK SELWYN
 2                                 950 PAGE MILL ROAD
                                   PALO ALTO, CA 94304
 3

 4       FOR THE DEFENDANT:        QUINN EMANUEL
                                   BY:  ROBERT BECHER
 5                                 865 SOUTH FIGUEROA STREET
                                   LOS ANGELES, CA 90017
 6

 7       FOR THE MOVANT:           ALSTON AND BIRD
         NOKIA                     BY:  RANDALL ALLEN
 8                                 275 MIDDLEFIELD ROAD, SUITE 150
                                   MENLO PARK, CA 94025
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    OCTOBER 1, 2013

 2                    P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5              THE COURT:  MR. RIVERA, WOULD YOU CALL THE NEXT

 6    MATTER, PLEASE.

 7              THE CLERK:  YES, YOUR HONOR.

 8        CALLING APPLE, INC. VERSUS SAMSUNG ELECTRONICS, ET AL.

 9    CASE CV-11-1846-LHK.

10        MATTER ON FOR PLAINTIFF, APPLE'S AND NON PARTY NOKIA'S

11    MOTION TO COMPEL FURTHER DISCOVERY AND MOTION FOR SANCTIONS.

12              MR. ZELLER:  MICHAEL ZELLER FOR SAMSUNG.

13              THE COURT:  MR. ZELLER, GOOD MORNING.

14              MS. ESTRICH:  GOOD MORNING, YOUR HONOR.

15        SUSAN ESTRICH FOR SAMSUNG.

16              THE COURT:  GOOD MORNING TO YOU AS WELL.

17              MR. BECHER:  GOOD MORNING, YOUR HONOR.

18        ROB BECHER FOR SAMSUNG.

19              THE COURT:  MR. BECHER, WELCOME.

20              MR. LEE:  GOOD MORNING, YOUR HONOR.

21        BILL LEE, MARK SELWYN AND JOSEPH MUELLER FROM WILMER HALE

22    FOR APPLE.

23              THE COURT:  GENTLEMAN, GOOD MORNING.  WELCOME TO YOU

24    AS WELL.

25              MR. ALLEN:  GOOD MORNING, YOUR HONOR.
```

```
1              RANDALL ALLEN FOR NOKIA CORPORATION.

2                   THE COURT:  MR. ALLEN, WELCOME.

3              ALL RIGHT.  ARE ANY PARTIES APPEARING BY PHONE?  NO?

4                   MR. LEE:  I DON'T THINK SO, YOUR HONOR.

5                   THE COURT:  OKAY.  LET'S PROCEED THEN.

6              MR. LEE, THIS IS YOUR MOTION, AND I UNDERSTAND MR. ALLEN

7     YOU ARE JOINING IT.  SO I WILL BEGIN WITH MR. LEE THEN I WILL

8     GIVE YOU AN OPPORTUNITY, MR. ALLEN, TO WEIGH IN AS WELL BEFORE

9     I TURN TO SAMSUNG.

10                  MR. LEE:  THANK YOU, YOUR HONOR.

11             WE HAVE BEEN BEFORE YOU ON THESE CASES ON MANY OCCASIONS

12    AND WE HAVE HAD VERY IMPORTANT MOTIONS AND THEY HAVE BEEN.

13                  THE COURT:  I SEEM TO RECALL, MR. LEE.

14                  MR. LEE:  YES.  BUT THIS ONE, YOUR HONOR, IS

15    PARTICULARLY IMPORTANT.

16             AND RECOGNIZING ALL THE OTHER MATTERS THE COURT HAS, I

17    WOULD LIKE TO MAKE FIVE POINTS BRIEFLY TO SUMMARIZE WHAT'S IN

18    THE PAPERS BEFORE YOU.

19             I'M GOING TO DO SOME OF IT IN SUMMARY FORM TO AVOID

20    CONFIDENTIALITY ISSUES.

21             BUT THE FIVE POINTS ARE THESE:  THIS IS A MATTER IN WHICH

22    THERE ARE ADMITTED VIOLATIONS FOR PROTECTIVE ORDER.

23             THERE ARE MORE THAN SEVEN VIOLATIONS, YOUR HONOR, OF

24    CONFIDENTIAL INFORMATION THAT HAS NOW GONE TO MORE THAN 90

25    PEOPLE, NOT AUTHORIZED TO RECEIVE THE MATERIAL IN TEN DIFFERENT
```

1    COUNTRIES.

2         WE HAVE ACTUALLY COMPILED A LIST FROM WHAT SAMSUNG HAS

3    GIVEN TO US.  IT GOES COUNTRY BY COUNTRY PERSON BY PERSON OF

4    THE FOLKS WHO HAVE RECEIVED THIS CONFIDENTIAL INFORMATION.

5         CRITICALLY, YOUR HONOR, THE DISCLOSURES TO THESE 90 SOME

6    PEOPLE INCLUDE SOME OF THE HIGHEST RANKING EXECUTIVES OF

7    SAMSUNG, SOME OF THE HIGHEST RANKING LICENSING EXECUTIVES AT

8    SAMSUNG.

9         NOW, I CAN REPRESENT YOUR HONOR, THAT THIS ISN'T THE FULL

10   EXTENT OF THE VIOLATIONS.  YOUR HONOR KNOWS THERE'S A COMPANION

11   CASE BEFORE THE ITC.

12         THE COURT:  THIS IS THE 794 INVESTIGATION?

13         MR. LEE:  YES, YOUR HONOR.

14         AND IN THE 794 INVESTIGATION YOUR HONOR, BOTH SAMSUNG AND

15   WE HAVE PROVIDED INFORMATION ABOUT VIOLATIONS TO THE ITC THAT

16   ARE COMPARABLE OR ANALOGOUS.

17         OUR POSITION IS THAT THOSE VIOLATIONS ARE ACTUALLY

18   VIOLATIONS OF THIS COURT'S PROTECTIVE ORDER AS WELL.  BUT WE

19   HAVE NO PRELIM ON THAT SO I'M NOT GOING TO ADDRESS IT.

20         BUT UNLIKE CASE THAT IS MAY HAVE COME BEFORE YOU, WE ARE

21   NOT GOING TO HAVE TO FIGHT ABOUT WHETHER THERE'S BEEN A

22   VIOLATION OR NOT.  WE ARE NOT GOING TO HAVE TO FIGHT ABOUT THE

23   MAGNITUDE WHICH IS ENORMOUS, AND WE ARE NOT GOING TO HAVE TO

24   FIGHT ABOUT THE GEOGRAPHIC DISTRIBUTION, IT IS ENORMOUS AS

25   WELL.

1      SO MY SECOND POINT IS THIS:  YOUR HONOR ALSO HAS EVIDENCE

2   NOT ONLY OF THE DISCLOSURE OF THE INFORMATION BUT OF MISUSE OF

3   THE INFORMATION.

4      NOW HERE I'M GOING TO SUMMARIZE THE DECLARATION THAT'S

5   BEFORE YOUR HONOR ON THE RELATED MOTION.  BUT YOUR HONOR KNOWS

6   THAT THE INFORMATION WAS USED IN VIOLATION OF THE PROTECTIVE

7   ORDER FOR PURPOSES THAT HAD NOTHING TO DO WITH LITIGATION AND

8   EVERYTHING TO DO WITH THE REASON THAT THE INFORMATION WAS

9   PROTECTED.

10      THE COURT:  MR. LEE, COULD YOU BEFORE CONTINUING WITH

11   YOUR POINTS, PERHAPS OUTLINE FOR ME A TIMELINE OR SEQUENCE HERE

12   THAT I CAN WORK WITH.  I'M HAVING SOME DIFFICULTY APPRECIATING

13   WHAT HAPPENED WHEN IN THIS STORY.

14      MR. LEE:  SURE.

15      YOUR HONOR, THERE'S AN EXTENSIVE CHRONOLOGY.  NOW THE

16   DISCLOSURES THAT HAVE THE INFORMATION THAT'S BEEN GIVEN TO US

17   BY SAMSUNG, AND NOW I'M GOING TO HAVE TO DO THIS A LITTLE BIT

18   ON THE FLY WITHOUT DISCLOSING CONFIDENTIAL INFORMATION.

19      THE DISCLOSURES THAT I'VE NOW LEARNED OF GO BACK TO

20   JANUARY OF 2012.  THAT, YOUR HONOR, WAS BEFORE THE TRIAL OF THE

21   794 WHICH TOOK PLACE LAST JUNE.  IT WAS BEFORE THE TRIAL BEFORE

22   JUDGE KOH WHICH TOOK PLACE LAST AUGUST.

23      THERE WERE A NUMBER OF DISCLOSURES THAT OCCURRED IN THIS

24   CASE, THE 1846 CASE BEFORE THE TRIAL TOOK PLACE AND A NUMBER OF

25   DISCLOSURES THAT TOOK PLACE AFTER.

1        LET ME DEAL WITH THIS CASE FIRST.  SO THERE WERE A NUMBER

2     OF DISCLOSURES THAT OCCURRED BEFORE.  THE TRIAL OCCURS IN

3     AUGUST, RIGHT.

4        TO GIVE YOU AN EXAMPLE OF THE REASON WE ARE PARTICULARLY

5     CONCERNED IN THIS CASE, HERE IS THE EXAMPLE:  FOUR MONTHS AFTER

6     THE TRIAL WAS OVER IN DECEMBER OF 2012, OUR CONFIDENTIAL

7     INFORMATION IS COMMUNICATED TO AN INTERNAL SAMSUNG EMPLOYEE NOT

8     AUTHORIZED TO SEE THE MATERIAL.  NOW THE TRIAL IS OVER.  THE

9     TRIAL TOOK PLACE FOUR MONTHS AGO.

10        BUT PROBABLY MORE IMPORTANTLY YOUR HONOR, THE POST TRIAL

11     BRIEFING WAS OVER.  THERE WAS ABSOLUTELY NO REASON TO

12     COMMUNICATE THAT INFORMATION FOR PURPOSES OF THE CASE THAT WAS

13     TRIED BEFORE JUDGE KOH.  BUT THERE WAS FOR THE 794 PROCEEDING.

14        THAT CASE WAS TRIED IN JUNE.  THE ALJ INITIALLED AN

15     INITIAL DETERMINATION IN EARLY SEPTEMBER, LATE AUGUST, EARLY

16     SEPTEMBER.

17        THE ITC TOOK REVIEW AND ASKED A SERIES OF QUESTIONS.  AND

18     WITHOUT GOING THROUGH ALL THE DATES, THERE WAS A FILING THAT

19     WAS DUE ON APRIL 5TH, 2013.  AND IT WAS A FILING, AGAIN TO

20     AVOID THE PROTECTIVE ORDER, IT WAS A FILING THAT WAS

21     SPECIFICALLY ADDRESSING LICENSING ISSUES.

22        BETWEEN DECEMBER 2012 AND THE FILING BY BOTH SAMSUNG AND

23     US, BUT BY SAMSUNG IN PARTICULAR ON THIS ISSUE, THERE WAS JUST

24     A FLOOD OF TRANSMISSIONS OF OUR CONFIDENTIAL INFORMATION BACK

25     AND FORTH TO SAMSUNG AND SAMSUNG'S EMPLOYEES.

1     ALL THIS IS OCCURRING WITHOUT OUR KNOWING ANYTHING.  THE

2     ISSUE FIRST APPARENTLY SURFACES WITH SAMSUNG ON JULY 1ST OF

3     THIS YEAR.  APPLE WASN'T PROVIDED NOTICE.

4          THE COURT:  WELL, ON JULY 1ST THE ISSUE SURFACED WITH

5     SAMSUNG'S OUTSIDE COUNSEL, CORRECT?

6          MR. LEE:  YES, FOR SURE.

7     AND IT WAS IN NOKIA'S FILING.

8     NOW, I THINK IT SURFACED WITH SAMSUNG BEFORE, GIVEN

9     WHAT'S DISCLOSED IN THE NOKIA FILING.  BUT AS OF JULY 1ST, THE

10    ISSUE IS BEFORE THE COURT, THE ISSUE IS BEFORE OUTSIDE COUNSEL.

11         THE COURT:  AND THE FILING YOU ARE REFERRING TO

12    SPECIFICALLY, MR. LEE, IS A FILING IN 630 OR THE 794

13    INVESTIGATION?

14         MR. LEE:  630.

15    BEFORE YOUR HONOR, AND IT'S ALL UNDER SEAL.

16    NO NOTICE IS GIVEN TO APPLE, YOUR HONOR, NONE AT ALL.  IN

17    FACT, WE DON'T GET NOTICE OF THE VIOLATIONS UNTIL AUGUST

18    THE 1ST.

19    AND TWO IMPORTANT THINGS HAVE OCCURRED.  THE FIRST IS

20    SAMSUNG APPARENTLY HAS PROPOSED TO DELETE ALL OF THE E-MAIL

21    THAT IS HAVE OUR CONFIDENTIAL INFORMATION BEFORE NOTIFYING US.

22    BUT FORTUNATELY NOKIA SAID NO, YOU CAN'T DO THAT, DON'T DO IT.

23    THE SECOND IS THAT THE BEGINNING OF AUGUST HAD TWO VERY

24    IMPORTANT DATES IN THE 794 AND 796 PROCEEDINGS.

25    IN THE 794 PROCEEDING THE U.S. TRADE REPRESENTATIVE WAS

```
 1      TO DECIDE WHETHER TO EXERCISE THE VETO.  AND IN FACT, AS

 2      YOUR HONOR KNOWS, HE DID EXERCISE THE VETO AT THE END OF THE

 3      DAY.

 4           A FEW DAYS LATER THE ITC WAS TO RENDER ITS DECISION IN

 5      APPLE'S AFFIRMATIVE CASE AGAINST SAMSUNG AND IT DID.

 6           THE DISCLOSURE TO US WAS ON AUGUST 1ST WHICH WAS A

 7      FRIDAY.  WE THINK IT WAS ON AUGUST 1ST FOR A REASON.  WE ASKED

 8      PERMISSION TO BE ABLE TO DISCLOSE IT TO OUR CLIENTS AND ALSO TO

 9      THE COMMISSION AND OTHERS.  IT TOOK SEVERAL DAYS BEFORE THAT

10      PERMISSION CAME THROUGH

11           THE COURT:  AND THE PERMISSION YOU SOUGHT

12      SPECIFICALLY WAS PERMISSION TO DISCLOSE THE FACT OF THE

13      INADVERTENT TRANSMISSION OR THE UNDERLYING MATERIAL ITSELF?

14      WHAT EXACTLY WERE YOU ASKING FOR?

15           MR. LEE:  I THINK A LITTLE BIT MORE BROAD, WE WANTED

16      TO DISCLOSE THE LETTER WE GOT FROM THEM DISCLOSING THAT THERE

17      HAD BEEN PROTECTIVE ORDER VIOLATIONS.

18        AND WE WERE GRANTED PERMISSION BUT GRANTED PERMISSION ON A

19      TIME LINE THAT WOULD HAVE PROHIBITED US FROM MAKING AN ISSUE

20      BEFORE THE COMMISSION.

21          NOW AT THE END OF THE DAY, YOUR HONOR, IT DIDN'T MATTER

22      BECAUSE U.S. TRADE REPRESENTATIVE IN FACT EXERCISED THE VETO

23      POWER.  THE ITC ISSUED A DECISION THAT FOUND FOR APPLE IN TWO

24      OF THE PATENTS.

25           BUT IF THEY HAD BEEN NOTIFIED IN JULY, THINGS MIGHT HAVE
```

1    BEEN DIFFERENT.

2         OUR BIGGER CONCERN IS THIS YOUR HONOR, AND THIS GOES TO

3    THE SECOND HALF OF MY SECOND POINT, THE ISSUE OF APPLE'S

4    LICENSING ACTIVITIES WITH SAMSUNG WAS AN ISSUE IN THE 1846

5    CASE, IT'S AN ISSUE IN THE 630 CASE, JUST TWO WEEKS AGO SAMSUNG

6    FILED EXPERT REPORTS SPECIFICALLY RELYING UPON THE LICENSING

7    HISTORY AMONG THE PARTIES.

8         THE ISSUE IS ALSO AN ISSUE PRESENTLY BEING LITIGATED ALL

9    OVER THE WORLD IN JAPAN, KOREA, GERMANY, EUROPEAN COMMISSION

10   BEFORE THE DG COMP, AUSTRALIA, AND A NUMBER OF OTHER

11   JURISDICTIONS.

12            THE COURT:  NETHERLANDS.

13            MR. LEE:  YES.

14       AND ALL OF OUR INFORMATION HAS GONE -- THIS CONFIDENTIAL

15   INFORMATION WHICH I THINK YOUR HONOR KNOWS EXTENDS BEYOND

16   NOKIA, IT EXTENDS TO ERICSSON, SHARP AND PHILLIPS.

17       AND INCIDENTALLY YOUR HONOR, SAMSUNG IS IN LITIGATION WITH

18   ERICSSON.  AND OUR CONFIDENTIAL INFORMATION ABOUT OUR

19   AGREEMENTS WITH ERICSSON HAS GONE TO THEM AS WELL.

20       ALL OF THIS INFORMATION AS WELL HAS GONE TO THE LAWYERS

21   WHO ARE LITIGATING THIS ISSUE IN THE FOREIGN JURISDICTIONS.  SO

22   THERE ARE TWO EXAMPLES OF MISUSE BEFORE YOUR HONOR.

23       THERE IS THE ONE THAT'S IN THE DECLARATION THAT WAS FILED

24   ON JULY 1ST, AND I THINK YOUR HONOR, ONE VERY IMPORTANT POINT

25   IS THIS, THAT DECLARATION HAS BEEN BEFORE YOU FOR 90 DAYS.  NO

```
 1       ONE HAS SAID IT'S NOT TRUE.  AND IT'S QUITE SPECIFIC.  NO ONE

 2       HAS SAID IT'S NOT TRUE.

 3            AND WE THEN HAVE ALL THIS INFORMATION GOING TO OTHER

 4       VENUES WHERE THE ISSUE OF OUR LICENSING ACTIVITY IS BEING

 5       LITIGATED WHERE FRANKLY SAMSUNG HAS BEEN CONSTRUCTING AN UN

 6       WILLING LICENSEE DEFENSE OR ATTACK ON US.  AND THE CHRONOLOGY

 7       WOULD SUGGEST THIS MATERIAL HAS BEEN USEFUL AND USED.

 8            THE THIRD POINT IS THIS, YOUR HONOR, SOMETIMES PROTECTIVE

 9       ORDER VIOLATIONS ARE JUST SEEKING SANCTIONS THAT ARE

10       RETROSPECTIVE OR PARTIALLY REVIEWABLE IN ORDER, AND THAT

11       CLEARLY MIGHT BE AN ISSUE AT THE END OF THE DAY HERE.  BUT THIS

12       ONE IS DIFFERENT BECAUSE OF ALL THESE LITIGATION PROCEEDINGS.

13            WE ARE GOING TO LITIGATE THIS IN THE 630 CASE IN MARCH.

14       WE ARE GOING TO LITIGATE IT IN JAPAN, KOREA, GERMANY,

15       AUSTRALIA, DG COMP.  IT IS BEING LITIGATED ON A DAILY BASIS.

16       AND EVERYBODY LITIGATING AGAINST US IS ARMED WITH OUR

17       CONFIDENTIAL INFORMATION.

18            SO THERE IS AN IMMEDIACY AND A PROSPECTIVE NATURE THAT IS

19       A LITTLE DIFFERENT THAN MANY PROTECTIVE ORDER ISSUES.

20            THE COURT:  CAN I ASK YOU, MR. LEE, WITH RESPECT TO

21       THE 630 CASE IN PARTICULAR, IT WOULD SEEM THAT THE PREJUDICE

22       THAT YOU'VE JUST DESCRIBED IS LESS SIGNIFICANT.  AFTER ALL,

23       SAMSUNG IS YOUR ADVERSARY IN THAT PROCEEDING, WE'RE IN THE SAME

24       COURT, JUDGE KOH IS THE SAME JUDGE.

25            SO COULD YOU ARTICULATE THE BURDEN OR THE PREJUDICE YOU
```

1     FACE IN THIS CASE.

2           MR. LEE:  SURE.

3           YOUR HONOR, IT'S A GOOD QUESTION BECAUSE IF THE

4     INFORMATION HAD JUST GONE TO THEIR OUTSIDE COUNSEL, THEY COULD

5     HAVE CONSTRUCTED, THEY MIGHT HAVE USED IT TO CONSTRUCT A

6     DEFENSE.

7           BUT THIS IS DIFFERENT.  YOUR HONOR HAS FREQUENTLY SEEN

8     PROTECTIVE ORDERS THAT PROHIBIT INFORMATION ABOUT A DEFENDANT'S

9     PRODUCT FROM GOING TO LAWYERS THAT PROSECUTE A PATENT.

10          THIS IS OUR INFORMATION GOING TO PEOPLE OUTSIDE OF QUINN

11    EMANUEL WHO HAVE NO RIGHT TO SEE IT WHO ARE ACTUALLY

12    CONSTRUCTING A DEFENSE BASED UPON EVENTS IN REAL TIME.

13          SO THIS IS MORE AKIN TO SOMEONE CONSTRUCTING A CLAIMS OF

14    A PENDING PATENT APPLICATION BASED UPON INFORMATION THEY

15    SHOULDN'T HAVE.  AND BECAUSE THE LICENSING ACTIVITY, RIGHT, FOR

16    THE 630 IS NOT JUST HISTORICAL, IN TERMS OF WHAT OCCURRED

17    BEFORE THE FILING OF THE COMPLAINT

18          THE COURT:  NO, IT'S PROSPECTIVE BY DEFINITION,

19    RIGHT.

20          MR. LEE:  IT'S PROSPECTIVE.

21          AND ALL THE EVENTS OCCURRED -- AND AGAIN WITHOUT GETTING

22    INTO CONFIDENTIAL INFORMATION, THE ITC'S DECISION OF THE 794

23    PATENT, THE PUBLIC VERSION TALKS ABOUT THE LICENSING

24    DISCUSSIONS THAT OCCURRED BETWEEN US AFTER THE TRIAL WAS OVER.

25          SO THIS -- THAT'S THE IMMEDIACY OF THE ISSUE AND THE

1    REASON THAT IT'S IMPORTANT.

2        THE FOURTH POINT IS THIS.  RESPECTFULLY, AND I'M SURE

3    THEY ARE GOING TO DISAGREE.  WE HAVE BEEN GIVEN THE ROPE-A-DOPE

4    SINCE THE ISSUE WAS RAISED IN AUGUST THE 1ST.  WE RAISED ISSUES

5    AS SIMPLE AS THE AUTO BILLING FEATURE STILL ON AND HOW IS THAT

6    GOING TO IMPLICATE THINGS, AN ISSUE YOUR HONOR HAS CONSIDERED

7    BEFORE.

8        WE GOT AN ANSWER LAST NIGHT AT 2:00 IN THE MORNING, I

9    THINK BECAUSE WE WERE COMING TO SEE YOU, AND I DON'T EVEN QUITE

10   UNDERSTAND THE ANSWER.

11       BUT MORE IMPORTANTLY --

12       THE COURT:  MAY I ASK WHAT THE ANSWER WAS SINCE THIS

13   IS AN ISSUE OF SOME INTEREST TO ME.

14       MR. LEE:  AS I UNDERSTAND THE ANSWER IS THE FEATURE

15   IS STILL ON BUT WE HAVE BACKED UP MATERIALS FROM PEOPLE WHO

16   COULD HAVE GOT THIS INFORMATION BUT IT'S BACKED UP ONLY TO AN

17   UN IDENTIFIED DATE.

18       AND I'M PRETTY SURE THAT IF IT HAD BEEN BACKED UP TO

19   JANUARY 2012 WHEN THE FIRST BREACH OCCURRED IT WOULD HAVE SAID

20   NO IN THE LETTER.

21       SO WHEN I SAY I DON'T UNDERSTAND IT THERE'S SOME

22   INFORMATION THAT IS, IT'S SAY, PROMINENT BY ITS ABSENCE.

23       THE COURT:  MR. LEE, HAVE YOU BEEN TOLD, FOR EXAMPLE,

24   EXACTLY WHOM WITHIN SAMSUNG HAS ACCESS TO THE FTP SITE WHERE

25   THE UNREDACTED INFORMATION WAS STORED?

```
 1              MR. LEE:  YOUR HONOR, WE DON'T KNOW.  WE KNOW THAT

 2     THERE'S SOME FOLKS IN KOREA, WE KNOW THERE'S SOME FOLKS IN THE

 3     U.S.  THERE MAY BE FOLKS IN OTHER JURISDICTIONS NOW.

 4              WE THINK THAT THE ANSWER MAY BE DIFFERENT.  BUT WE HAVE

 5     BEEN ASKED -- WE HAVE BEEN ASKING ABOUT THE AUTO DELETE

 6     FEATURE.

 7              WE HAVE ASKED A SIMPLE QUESTION AS THIS, YOUR HONOR,

 8     PLEASE CONFIRM TO US THAT UNTIL YOU GOT THIS CONFIDENTIAL

 9     INFORMATION YOU DIDN'T KNOW THE TERMS OF THE LICENSE

10     AGREEMENTS.

11              WE ASKED THAT ON AUGUST THE 4TH OF THIS YEAR, TWO MONTHS

12     LATER, NO ANSWER.  IF THERE WAS A GOOD ANSWER, WE WOULD HAVE

13     GOTTEN IT.  IF THERE'S AN ANSWER TODAY, IT WOULD HAVE BEEN AN

14     ISSUE.

15              LET ME SAY THESE THREE THINGS ABOUT THE PROCESS.  FIRST

16     IS YOUR HONOR, ALLOWING SAMSUNG TO MANAGE THE PROCESS ITSELF

17     DOESN'T WORK.  YOU CAN'T PLACE YOUR OWN VIOLATIONS.  AND LET ME

18     GIVE YOUR HONOR A VERY GOOD EXAMPLE.

19              I MENTIONED TO YOU THIS DISCLOSURE ON DECEMBER 21, 2012,

20     AFTER THE TRIAL WAS OVER BEFORE JUDGE KOH.  THAT STOOD OUT TO

21     US LIKE THE PROVERBIAL SORE THUMB.

22              SO WE SAID ALMOST TWO MONTHS AGO, TELL US HOW COULD IT

23     BE, WHY IS THIS INFORMATION GOING TO SAMSUNG AT A TIME WHEN THE

24     TRIAL IS OVER AND POST TRIAL BRIEFING IS OVER.

25              WE GOAT TWO ANSWERS.  WE GET AN ANSWER THEN WE GET
```

1    INFORMATION FROM SAMSUNG THAT'S INCONSISTENT WITH THE ANSWER.

2    THE FIRST ANSWER IS, WELL, YEAH, IT WENT TO HIM, HE SHOULDN'T

3    HAVE HAD IT, HE WAS TOLD TO DELETE IT, HE DELETED IT, HE NEVER

4    HAD IT AFTER THAT, RIGHT.

5         WELL THAT WORKED UNTIL WE GOT ANOTHER DISCLOSURE AND IT

6    TURNED OUT THAT FIVE MONTHS LATER IN THE MIDST OF ALL THIS ITC

7    BRIEFING, THE VERY LAWYER WHO HAD GOT IT IN DECEMBER IS

8    RETRANSMITTING IT FOR THE PURPOSES, FOR PURPOSES WE DON'T KNOW,

9    RIGHT.  BUT IN THE MIDST OF ALL THE ITC BRIEFING.

10        IT DOESN'T MATCH.  I MEAN, EITHER HE DELETED IT AND

11   DIDN'T HAVE IT OR HE KEPT IT AND RETRANSMITTED IT.

12        SO ALLOWING SAMSUNG TO PLACE POLICE ITS OWN ACTIVITY AND

13   ALLOWING QUINN TO POLICE IT DOESN'T MATTER GIVEN THE MAGNITUDE

14   OF WHAT'S OCCURRED.

15        THE SECOND POINT IN THE PROCESS IS MOST OF WHAT'S BEEN

16   SAID YOUR HONOR IS WE REACHED AGREEMENT WITH NOKIA, THIS IS

17   GOOD ENOUGH FOR NOKIA IT OUGHT TO BE GOOD ENOUGH FOR APPLE.

18        THAT DOESN'T WORK FOR THREE REASONS.  WE HAVE MUCH

19   BROADER INTERESTS, RIGHT.  ERICSSON, PHILLIPS, SHARP, PLUS

20   NOKIA ARE ALL INVOLVED.  THAT'S REASON NUMBER ONE.

21        REASON NUMBER TWO IS WE ARE LITIGATING WITH THESE FOLKS

22   NOW ALL OVER THE WORLD AND WE ARE LITIGATING THIS ISSUE.  WHO

23   THE HAS BEEN REASONABLE AND WHO HAS BEEN UNREASONABLE IN THEIR

24   LICENSING ACTIVITIES.

25        THEY ARE ABLE TO USE CONFIDENTIAL INFORMATION AND TALK TO

1    INTERNAL SAMSUNG FOLKS AND INVOLVE THE DISCUSSIONS INVOLVING

2    CHARACTERIZING THIS IS A SIGNIFICANT DIFFERENCE FROM NOKIA.

3         THE THIRD THING IS THIS, THE NOKIA STIPULATION AT THE END

4    OF THE DAY WILL GET US A PRIVILEGE LOG.  A PRIVILEGE LOG

5    45 DAYS FROM NOW ON THE EVE OF THE 630 TRIAL AFTER EVENTS HAVE

6    OCCURRED THAT ALL OF THESE JURISDICTIONS AROUND THE COUNTRY

7    WORKS TO THEIR ADVANTAGE.  IT POSTPONES UNTIL THE END OF THE

8    DAY AN ISSUE THAT NEEDS TO BE RESOLVED NOW.

9         SO IF YOUR HONOR TAKES, THERE'S A MONTH LONG DELAY IN

10   NOTIFYING US DURING WHICH BY THEIR OWN ADMISSION THEY THOUGHT

11   THEY CONSIDERED ACTUALLY DELETING THE DOCUMENTS WHICH QUITE

12   HONESTLY I DON'T JUST GET, RIGHT.  HOW COULD YOU NOT NOTIFY US

13   AND CONSIDER DELETING THE DOCUMENTS.

14        WE HAD FUNDAMENTAL QUESTIONS WE'VE ASKED THAT EVEN WITH

15   LAST NIGHT'S 2:00 IN THE MORNING LETTER, HAVEN'T BEEN ANSWERED.

16   WE HAVE INCONSISTENCIES IN THE ANSWERS EVEN THAT WE HAVE BEEN

17   GIVEN.

18        SO THAT BRINGS YOU TO MY FIFTH AND LAST POINT WHICH IS WE

19   THINK IT'S IMPORTANT TO HAVE A COURT SUPERVISED PROCESS THAT

20   GIVES US DISCOVERY.

21        YOUR HONOR, IT'S NOT A COINCIDENCE THAT WE GOT THIS

22   LETTER AT 2:00 IN THE MORNING THAT FINALLY ANSWERED QUESTION

23   THAT IS HAD BEEN PENDING FOR TWO MONTHS.  WE GOT IT BECAUSE WE

24   WERE COMING TO SEE YOU AT 10:00 IN THE MORNING.

25        WITHOUT THE MUSCLE OF THE COURT TO POLICE THE PROCESS OF

```
 1    UNCOVERING WHAT THE EXTENT AND THE MAGNITUDE OF THE DISCLOSURES

 2    IS, DISCOVERING THE MAGNITUDE AND THE NUMBER OF PEOPLE WHO HAVE

 3    GOTTEN THEM, BUT MOST IMPORTANTLY, WHAT THE USE HAS BEEN OF

 4    THEM, WE JUST WON'T BE ABLE TO GET TO THE BOTTOM LINE IN A TIME

 5    THAT MAKES SENSE AND FAIRLY.

 6         AT THE END OF THE DAY, THEY SHOULD BE PROHIBITED FROM

 7    MAKING ANY FURTHER ARGUMENTS BASED UPON USE OF THIS

 8    INFORMATION.

 9         PEOPLE WHO HAVE CONSTRUCTED ARGUMENTS ON THE BASIS OF IT

10    SHOULD NOT BE PERMITTED TO PARTICIPATE IN THE PROCESS.  AND TO

11    THE EXTENT THEY USED IT IN ANY JURISDICTION THERE OUGHT TO BE A

12    REMEDY.

13         BUT LIKE NOKIA, I THINK WHAT WE ARE SAYING TO YOU IS WE

14    ARE AS SURPRISED AS I'M SURE THE COURT IS TO THE MAGNITUDE OF

15    THE VIOLATION.  UNTIL WE KNOW THE FULL EXTENT, WE CAN'T COME TO

16    YOU AND SAY THIS IS THE RELIEF WE REQUEST.

17         WHAT WE CAN SAY IS WE DO NEED TO UNCOVER THE MAGNITUDE OF

18    THE VIOLATION.  WE DO NEED TO UNCOVER THE MAGNITUDE OF THE

19    HARM.  AND WE NEED TO DO IT IN A TIME FRAME AND WITH LEGITIMATE

20    SEE OF THE COURT BEHIND IT SO THAT WE CAN GET TO THE BOTTOM

21    LINE IN A MEANINGFUL TIME FRAME.

22         THE COURT:  MR. LEE, LET ME ASK YOU THIS, AT THIS

23    POINT ARE YOU FOCUSED EXCLUSIVELY ON A DISCLOSURE IN, TEECE, AM

24    I PRONOUNCING THE GENTLEMAN'S NAME CORRECTLY.

25         MR. LEE:  FOR THIS PROCEEDING, TEECE IS THE PRIMARY
```

```
1    FOCUS BECAUSE IT'S HIS DISCLOSURE THAT GETS --

2              THE COURT:  CIRCULATED.

3              MR. LEE:  BECOMES VIRAL.

4              THE COURT:  OKAY.  SO, AND THAT REALLY IS MY

5    QUESTION.

6         YOU SAY FOR PURPOSES OF THIS CONVERSATION OR SOMETHING TO

7    THAT EFFECT, ARE WE TALKING ABOUT THE TEECE REPORT ALONE OR IS

8    THERE ADDITIONAL DISCLOSURE THAT'S AT ISSUE IN YOUR REQUEST

9              MR. LEE:  FOR NOW IT'S THE TEECE DISCLOSURE.

10   THERE'S -- AS I SAID, THE REASON I'M HESITATING IS I'M TRYING

11   TO ANSWER CORRECTLY BUT WITHOUT VIOLATING THE ITC PROTECTIVE

12   ORDER.

13        THERE'S AN ANALOGOUS ISSUE INVOLVING DIFFERENT

14   INFORMATION OVER LAPPING BUT DIFFERENT INFORMATION AT THE ITC

15             THE COURT:  ALL RIGHT.

16             MR. LEE:  BUT IT'S THE TEECE, THE UNREDACTED TEECE

17   REPORT THAT HAS THIS INFORMATION ON THESE FOUR LICENSES.

18             THE COURT:  AND COULD YOU LIST FOR ME AGAIN THE

19   PARTIES TO THESE LICENSE AGREEMENTS.  I SEE NOKIA AS ONE.

20             MR. LEE:  NOKIA, ERICSSON, PHILLIPS SHARP.  ARE THE

21   FOUR.

22             THE COURT:  ALL RIGHT.

23        MY NEXT QUESTION, MR. LEE, IS THIS:  IN TERMS OF

24   STRUCTURING THIS EXERCISE SO THAT WE AVOID A SATELLITE

25   LITIGATION ON THE EVE OF NOT JUST ONE TRIAL BUT TWO --
```

```
 1                  MR. LEE:  RIGHT.

 2                  THE COURT:  -- IT WOULD SEEM TO ME WHAT YOU ARE

 3       SUGGESTING IS THAT WE CABIN THE DISCOVERY TO FOCUS ON THE

 4       DISCLOSURES THEMSELVES AS WELL AS THE USE THAT THE PARTICULAR

 5       SENIOR EXECUTIVE AT SAMSUNG MADE OF THAT INFORMATION.

 6              ARE YOU ALSO PROPOSING TO EXPLORE WHAT USE WAS MADE BY

 7       OTHERS AT SAMSUNG?

 8                  MR. LEE:  YES, YOUR HONOR.

 9          I THINK IT'S PROBABLY IN BETWEEN THE FIRST AND THE SECOND

10       OF YOUR POINTS.

11                  THE COURT:  OKAY.

12                  MR. LEE:  I THINK EVIDENCE OF THREE BOXES IF THIS

13       HELPS THE COURT AT ALL.

14              THE FIRST BOX IS OBVIOUSLY THE THREE TRANSMISSIONS

15       BETWEEN OUTSIDE COUNSEL AND SAMSUNG.

16              NOW, THAT BOX HAS TWO PARTS.  IT'S THE SAMSUNG

17       REPRESENTATIVES THAT YOU SEE THERE BUT IT'S ALSO SAMSUNG'S

18       LAWYERS AND ALL THESE NORTHERN FOREIGN COUNTRIES BECAUSE THEY

19       ARE PART OF THE SAME BECAUSE THEY ARE COMING FROM U.S. COUNSEL.

20       BUT THEY HAVE DIFFERENT IMPLICATIONS.

21              THE SECOND THING YOUR HONOR, WHICH ACTUALLY MAY BE MORE

22       IMPORTANT, THE COMMUNICATIONS BY THE PEOPLE WHO RECEIVE THE

23       INFORMATION WITH OTHER FOLKS WHO ARE INVOLVED IN LICENSING

24       DISCUSSIONS WHO MIGHT BE CRAFTING A RESPONSE TO OFFERS OF

25       LICENSING,
```

1          THE COURT:  AND WHEN YOU SAY OTHER FOLKS YOU MEAN

2     INTERNAL TO SAMSUNG.

3          MR. LEE:  AND YOUR HONOR, THIS WOULD BE A SITUATION

4     WHERE THE COMMUNICATIONS WOULD NOT BE PRIVILEGED BY ANY STRETCH

5     OF THE IMAGINATION.  IT WOULD BE BUSINESS PERSON TO BUSINESS

6     PERSON.

7          WE ASKED ON AUGUST 4TH HAVE YOU GATHERED THAT INFORMATION

8     AND THE ANSWER WAS NO.

9          AND AS FAR AS I KNOW TODAY, UNLESS IT'S BEING GATHERED AS

10    PART OF THE NOKIA STIPULATION, NO PROGRESS HAS BEEN MADE.

11         YOU KNOW, WE HAVE NOT BEEN GIVE A SINGLE DOCUMENT

12    YOUR HONOR, 90 DAYS LATER.  BUT YOUR HONOR, IF I'M RIGHT AS TO

13    THE END GOAL IN THE PROBLEM, WE NEED TO KNOW THE TRANSMISSIONS

14    FROM THE LAWYERS TO THE FOREIGN COUNSEL AND TO THE INTERNAL

15    SAMSUNG FOLKS.

16         WE THEN NEED TO KNOW WHAT THEY DID WITH IT, DID THEY

17    RETRANSMIT IT, DID THEY DISCUSS IT.  THAT'S IN PART OVER

18    LAPPING WITH YOUR HONOR'S THIRD QUESTION WHICH IS WHAT USE WAS

19    MADE.  BUT IT'S NOT ENTIRELY OVER LAPPING.

20         THE THIRD IS WHAT USE WAS MADE WHICH IS CRITICALLY

21    IMPORTANT BECAUSE IF THESE DOCUMENTS SHOW FOR INSTANCE

22    YOUR HONOR, THAT THAT INFORMATION WAS USED, TO CRAFT A

23    PARTICULAR RESPONSE, IN A FOREIGN PROCEEDING, OR IT WAS USED TO

24    CRAFT A PARTICULAR POSITION IN A NEGOTIATION WHICH YOUR HONOR

25    NOW KNOWS IT HAS BEEN, THAT'S A PROBLEM.

```
 1              THIS ISN'T A PROBLEM OF AN INADVERTENT DISCLOSURE, THIS

 2      IS A PROBLEM OF SOMEONE HAVING DONE PRECISELY WHAT THE

 3      PROTECTIVE ORDER IS INTENDED TO PREVENT, MISUSE OF THE

 4      INFORMATION

 5              THE COURT:  IN TERMS OF THE PREJUDICE IN THE FOREIGN

 6      TRIBUNALS, PRESUMABLY APPLE IS A PARTY OF AT LEAST SOME OF

 7      THESE FILINGS AND SUBMISSIONS.

 8              I DON'T HAVE ENOUGH FAMILIAR ART WITH HOW THINGS WORK IN

 9      MILAN FOR EXAMPLE TO THE EXPERT OR AN ARMATURE ON THE SUBJECT.

10      SO I'M GOING TO ASK YOU IT YOU CAN SHED SOME LIGHT ON WHAT ROLE

11      OR WHAT WINDOW APPLE HAS INTO HOW THIS INFORMATION HAS BEEN

12      SHARED WITH THE REGULATING AUTHORITY OR THE COURTS IN THOSE

13      JURISDICTIONS.

14              MR. LEE:  YOUR HONOR, MINIMAL IS THE ANSWER.   I

15      THINK IN FAIRNESS TO SAMSUNG AND TO QUINN, A LITTLE BIT OF THIS

16      IS MY PUTTING TOGETHER LOGICAL CONCLUSIONS FROM THE CHRONOLOGY

17      THEY HAVE GIVE US, BUT FOR INSTANCE, THERE WAS BRIEFING ON

18      FRAND AND LICENSE RELATED ISSUES IN JAPAN IN EARLY 2013,

19      CORRECT, THERE'S A FLURRY OF E-MAILS INVOLVING THE TEECE

20      INFORMATION RIGHT BEFORE THOSE FILINGS.

21              NOW, I THINK THE FACT THAT THE FILING ADDRESSED THE

22      ISSUE, RIGHT, AND AN ISSUE THAT TRIES TO CAST US AS AN

23      UNWILLING LICENSEE.  AND THERE'S AN FLURRY OF E-MAILS GOING TO

24      JAPANESE COUNSEL.  BUT THERE'S AN INFERENCE TO BE DRAWN.

25              BUT WE ARE NOT MAKING AN ACQUISITION BASED UPON AN
```

1    INFERENCE.  WHAT WE ARE ASKING IS LET'S IF I UNDERSTAND OUT.

2           AND IN FACT IF THE INFERENCE IS INCORRECT THEN WE WERE

3    WRONG TO HAVE SURMISED IT.  ON THE OTHER HAND, IF IT WAS USED,

4    IT'S A BIG PROBLEM.

5           AND I WOULD BE LESS EMPHATIC YOUR HONOR IF WE DIDN'T KNOW

6    FROM THE DECLARATION BEFORE YOU THAT IT HADN'T BEEN USED.  BUT,

7    IT HAD BEEN USED IN EXACTLY THE WAY IT WASN'T SUPPOSED TO BE

8    USED AND IT WOULD BE LESS EMPHATIC IF I DIDN'T KNOW WHAT HAD

9    BEEN SAID IN OTHER JURISDICTIONS AFTER A FLURRY OF E-MAILS

10   EXCHANGES THAT I THINK RESULT IN ONLY ONE INFERENCE WHICH WAS

11   IT WAS USED.

12          AND LET ME FINALLY SAY THIS IN ANSWER TO YOUR QUESTION,

13   YOUR HONOR.  IF IT HAD ONLY KNOW BEEN USED IN ONE JURISDICTION

14   IN A FLURRY OF E-MAILS IT COULD BE A COINCIDENCE.     I'M OLD

15   ENOUGH NOT TO BELIEVE IN COINCIDENCES ANYMORE.  BUT WHEN YOU

16   HAVE MULTIPLE JURISDICTIONS AND THERE ARE E-MAIL FLURRIES RIGHT

17   BEFORE THE FILINGS IN JAPAN AND KOREA AND AT THE ITC, SOMETHING

18   IS NOT QUITE RIGHT.

19              THE COURT:  HAVE YOU BEEN PROVIDED WITH FOR EXAMPLE

20   DECLARATION FROM SAMSUNG ATTESTING TO HOW THIS HAS BEEN USED?

21              MR. LEE:  NO.  WE ASKED FOR IT TWO MONTHS AGO.

22              THE COURT:  SO WE ARE SITTING HERE IN OCTOBER, THIS

23   BROKE IN JULY AND YOU STILL HAVEN'T BEEN GIVEN ANY SWORN

24   TESTIMONY WHATSOEVER ABOUT THAT SUBJECT.

25              MR. LEE:  WE DON'T HAVE A SINGLE DOCUMENT, WE DON'T

1    HAVE A LOG.  WE ASKED FOR DECLARATIONS AND PEOPLE RECEIVED IT.

2    WE ASKED FOR DEPOSITION.

3         BASICALLY WE WERE TOLD YOU'RE UNREASONABLE, THIS IS YOUR

4    FAULT, GO AWAY.  BUT WE ARE NOT GOING TO GO AWAY ON THIS ONE.

5              THE COURT:  ALL RIGHT.  I WILL UNDOUBTEDLY HAVE

6    FURTHER QUESTIONS.

7         WHO IS GOING TO SPEAK TO THIS FOR -- I'M SORRY,

8    MR. ALLEN, I SEE YOU THERE.

9              MR. ALLEN:  I HAVE VERY LITTLE TO SAY YOUR HONOR.

10        LET ME JUST HIT A COUPLE OF POINTS.

11        WE DID JOIN IN APPLE'S MOTION FOR THE PURPOSE OF ENSURING

12   THAT TO THE EXTENT THAT THERE WERE GOING TO BE DISCLOSURES OF

13   DOCUMENTS OR THERE WERE GOING TO BE DEPOSITIONS THAT WE HAD THE

14   ABILITY TO PARTICIPATE IN THAT.

15        WE ALSO ASKED THAT WHILE WE ARE NOT A PARTY IN THIS CASE,

16   WE ARE CERTAINLY A PARTY TO THIS ISSUE IN THE 630 CASE AND IN

17   THIS CASE, AND WE ASKED THAT WE BE OR THAT SAMSUNG AND APPLE BE

18   INSTRUCTED THAT IF FILINGS ARE MADE IN CONNECTION WITH THIS

19   MATTER THAT WE BE SERVED WITH COPIES OF THOSE FILINGS.

20        THERE WERE FILINGS -- WE RECEIVED A REDACTED COPIES OF

21   MANY OF THE FILINGS BUT THERE WERE FILINGS MADE LAST WEEK THAT

22   WE DO NOT YET HAVE.

23        WE HAVE AS YOU'VE HEARD TALK AND I WILL LET SAMSUNG

24   PROVIDE THE UPDATE ON WHAT'S HAPPENED WITH OUR STIPULATION, WE

25   WOULD ASK WITH THE COURT'S INDULGENCE THAT THE STIPULATION BE

1    ENTERED.

2         ACCORDING TO THE TERMS OF THE STIPULATION, THE PROCESS

3    WAS TO BE COMPLETED IN 45 DAYS OF THE FILING OF THE STIP.

4    THAT'S TOMORROW.

5         THE PROCESS WILL NOT BE COMPLETED TOMORROW, IT'S MORE

6    EXTENSIVE THAN WE HAVE THOUGHT AND IT'S TAKEN MORE TIME THAN WE

7    ALL THOUGHT.

8         THE COURT:  IT'S NOT UNUSUAL, ISN'T IT.

9         MR. ALLEN:  NOTHING IS EVER AS EASY AS IT SHOULD BE.

10        ONE OF THE REASONS THAT WE THINK IT'S IMPORTANT FOR US TO

11   BE INCLUDED, IT MAY BE EVIDENCE SAID HERE THIS MORNING OF.  I

12   HEARD 22 THINGS THIS MORNING THAT I DIDN'T KNOW BEFORE YOU

13   WALKED INTO THE COURTROOM.

14        ONE I HEARD THE SUGGESTION THAT THERE WAS A DISCLOSURE IN

15   JANUARY OF 2012.  THE EARLIEST DISCLOSURE THAT HAS BEEN MADE TO

16   US WAS ON MARCH 22, 2012.

17        MR. LEE:  THAT ACTUALLY IS CORRECT, YOUR HONOR.  I

18   WAS OFF FOR TWO MONTHS, SO MARCH IS RIGHT.

19        MR. ALLEN:  PROBLEM SOLVED.

20        THE SECOND THING THAT I HEARD WAS THAT FILINGS WERE MADE

21   IN THE 630 CASE THAT USED THE CONFIDENTIAL INFORMATION.

22        I HAVEN'T SEEN THAT INFORMATION SO I DON'T KNOW WHAT'S

23   INCLUDED IN IT.  BUT ONE OF THE PROVISIONS OF THE STIPULATION

24   IS THAT NONE OF OUR INFORMATION NONE OF NOKIA'S INFORMATION

25   WILL BE USED ANY LONGER IN THIS CASE BY SAMSUNG.

```
1        AND SO IF, I WANT TO MAKE SURE THE STIPULATION GETS OF

2   RECORD IN THIS CASE SO THAT THE PROVISIONS AND THE PROTECTIONS

3   OF THE STIPULATION ARE MADE.

4        AS I MENTIONED, I WILL LET SAMSUNG SPEAK TO THE PROGRESS

5   OF THE PROCESS UNDER THE STIPULATION.  IT APPEARS THAT IT

6   PROBABLY WILL NOT BE INCLUDED FOR ANOTHER THREE WEEKS.

7        I BELIEVE IT WOULD BE BENEFICIAL FOR THE COURT TO

8   SCHEDULE A HEARING, IT WOULD PROBABLY BE MORE APPROPRIATE FOR

9   IT TO BE SCHEDULED IN THE 630 CASE BECAUSE THAT'S WHERE THE

10  STIPULATION IS PENDING BECAUSE THE STIPULATION IS THE START OF

11  THE PROCESS TO BEGIN TO GET TO THE BOTTOM OF WHAT HAPPENED, AND

12  IT DOESN'T, IT CERTAINLY DOESN'T FORECLOSE, IN FACT I THINK IT

13  PREDICTS THERE WILL BE ADDITIONAL STEPS THAT WILL BE NECESSARY

14  WHEN THAT PROCESS IS CONCLUDED.

15          THE COURT:  CAN I ASK YOU A QUESTION ABOUT THE

16  MECHANICS OF YOUR STIPULATION.

17      IT PROBABLY WON'T SURPRISE YOU THAT I'VE HELD ON TO IT IN

18  ORDER TO HEAR MORE ABOUT THE SITUATION HERE THIS MORNING BEFORE

19  I MAKE ANY DECISION.

20        AS I UNDERSTAND IT YOU ALL HAVE, AND WHEN I SAY YOU ALL I

21  MEAN NOKIA AND SAMSUNG HAVE AGREED THAT STROZ WILL COME IN AND

22  LEAD THIS INVESTIGATION.

23      WHO IS SUPERVISING STROZ?

24          MR. ALLEN:  QUINN EMANUEL.

25          THE COURT:  OKAY.
```

```
 1        SO QUINN IS GIVING THE DIRECTION TO THE INVESTIGATORS AS TO

 2   WHERE TO LOOK, WHO TO TALK TO, WHEN TO LOOK, THAT SORT OF

 3   THING?

 4        MR. ALLEN:  WELL I DON'T KNOW, YOUR HONOR, IN

 5   FAIRNESS I THINK THE SHORT ANSWER IS YES, BUT THERE IS SOME

 6   OVERSIGHT OF THAT THAT DERIVES FROM THE STIPULATION.  AND WE

 7   HAVE BEEN PERMITTED TO SPEAK DIRECTLY TO STROZ AS WELL.

 8        THEY HAVE BEEN IN KOREA FOR QUITE SOME TIME COLLECTING

 9   INFORMATION.  WE ARE NOT PERMITTED TO BE IN THE SAMSUNG

10   FACILITY WITH THEM.  SO WE ARE NOT PRESENT WHEN THE DISCUSSIONS

11   ARE GOING ON

12        THE COURT:  SO UNDER THIS ARRANGEMENT IS STROZ AT

13   LIBERTY TO DISCLOSE TO YOU WHAT THEY'VE LEARNED FROM THEIR

14   VISIT TO THE FACILITY, FOR EXAMPLE?

15        MR. ALLEN:  I WOULD HAVE TO SAY, YOUR HONOR, THAT I

16   THINK IT'S BEEN LIMITED IN SOME INSTANCES.

17    I KNOW JUST A FEW INSTANCES THAT I THINK HAVE LATER BEEN

18   REMEDIED WHERE THEY HAVE BEEN INSTRUCTED NOT TO RESPOND TO OUR

19   QUESTIONS.

20        THE COURT:  CAN YOU GIVE ME AN EXAMPLE OF A QUESTION

21   YOU HAVE PUT TO THEM THAT THEY HAVE REFUSED TO RESPOND TO?

22        MR. ALLEN:  YOUR HONOR, I BELIEVE THE QUESTION WAS

23   ABOUT THE PRELIMINARY RESULTS OF SEARCH TERMS BUT I DON'T

24   RECALL --

25        THE COURT:  SO LET'S TAKE THAT ISSUE UP JUST AS AN
```

1    EXAMPLE.

2        I'M JUST TRYING TO GET MY HEAD AROUND WHAT'S BEEN HAPPENING

3    IN THE MEANTIME.  SEARCH TERMS, WHO CAME UP WITH THE SEARCH

4    TERMS?

5            MR. ALLEN:  INITIALLY QUINN PROVIDED SEARCH TERMS TO

6    US THEN WE PROVIDED ADDITIONAL SEARCH TERMS BACK TO THEM.

7        I BELIEVE AS OF AGREEMENT YESTERDAY WE WERE IN AGREEMENT

8    OF SEARCH TERMS.

9            THE COURT:  SO AS OF SEPT 30TH YOU REACHED AGREEMENT

10   ON WHICH TERMS TO USE?

11           MR. ALLEN:  CORRECT.

12           THE COURT:  OKAY.

13       WHO DECIDES WHAT CUSTODIANS OR INDIVIDUALS GETS SEARCHED?

14           MR. ALLEN:  WELL, IT'S THE INITIAL CUSTODIANS THAT

15   HAVE BEEN IDENTIFIED THAT QUINN HAS IDENTIFIED AS RECEIVING THE

16   COMMUNICATIONS FROM QUINN, OR I'M TRYING TO THINK IF THERE WERE

17   INSTANCES WHEN OTHER LAW FIRMS MIGHT HAVE SENT STUFF.  OTHER

18   LAW FIRMS THAT RECEIVED THE INFORMATION FROM THE SAME GENESIS

19   IT MIGHT HAVE GOTTEN CIRCULAR TO SAMSUNG.  BUT ESSENTIALLY THE

20   PEOPLE THAT QUINN HAS IDENTIFIED RECEIVED THE INFORMATION ARE

21   THE STARTING POINTS.

22           THE COURT:  FROM QUINN ATTORNEYS.

23           MR. ALLEN:  CORRECT.

24           THE COURT:  BUT WHAT ABOUT AN INDIVIDUAL WHO WAS ON

25   THAT LIST AT SAMSUNG, THAT IS AN INDIVIDUAL WHO WORKS FOR

1    SAMSUNG WHO RECEIVED A COPY OF THE UNREDACTED TEECE REPORT FROM

2    A QUINN ATTORNEY, WHAT THIS THAT INDIVIDUAL AT SAMSUNG SEND ITS

3    TO ANOTHER INDIVIDUAL, HAS THAT SECOND INDIVIDUAL BEEN

4    SEARCHED, TO YOUR KNOWLEDGE?

5              MR. ALLEN:  IT IS CONTEMPLATED BY THE STIPULATION

6    THAT THAT SECOND INDIVIDUAL WOULD BE IDENTIFIED FROM THE FIRST

7    SEARCH AND THAT THE SECOND TIER OF POTENTIAL CUSTODIANS WOULD

8    BE FOLLOWED UP ON.

9        I BELIEVE THERE HAS BEEN SOME OF THAT.  I DON'T KNOW THE

10   EXTENT OF IT BECAUSE I DON'T KNOW WHAT THE FINDINGS ARE YET.

11             THE COURT:  YOU DON'T KNOW WHAT YOU DON'T KNOW, SO I

12   APPRECIATE THAT.

13        HAVE YOU BEEN TOLD WHAT THIS UNIVERSE OF SECOND TIER

14   PEOPLE ARE?

15             MR. ALLEN:  NO, SIR.

16             THE COURT:  SO STANDING HERE ON OCTOBER 1ST YOU DON'T

17   EVEN KNOW WHETHER THERE'S FIVE PEOPLE WHO ARE IN THE SECOND

18   TIER OR FIVE HUNDRED?

19             MR. ALLEN:  I DO NOT.  I DO NOT.

20             THE COURT:  OKAY.  ALL RIGHT, MR. ALLEN.

21        WELL, I UNDOUBTEDLY WILL HAVE FURTHER QUESTIONS FOR YOU AS

22   WELL BUT I WOULD LIKE TO HEAR FROM SAMSUNG.

23             MR. ALLEN:  THANK YOU, YOUR HONOR.

24             THE COURT:  MS. ESTRICH?

25             MS. ESTRICH:  THANK YOU VERY MUCH, YOUR HONOR.   AND

1    I MAY NEED TO CONSULT WITH MY PARTNERS AS TO SOME OF THE MORE

2    TECHNICAL QUESTIONS.

3        WE ARE HERE BECAUSE WE OBVIOUSLY TAKE THIS VERY

4    SERIOUSLY.  WE HAVE AGREED TO DO A COMPREHENSIVE INVESTIGATION.

5    I'M HAPPY TO GO INTO THE DETAILS, BUT I THINK THE STIPULATION

6    REFLECTS THAT THE FIRST STAGE OF THIS INVESTIGATION INVOLVED

7    THE HIRING UPON AN INDEPENDENT THIRD PARTY AUDITING MONITORING

8    FIRM, STROZ.

9        WE HAVE DEALT WITH NOKIA AT GREAT LENGTH TO NEGOTIATE THE

10   SEARCH TERMS, IDENTIFY THE INDIVIDUALS TO BE SEARCHED, AS THE

11   STIPULATION PROVIDES.

12       ONCE WE HAVE COMPLETED THAT INITIAL REVIEW, AND FRANKLY

13   YOUR HONOR, STROZ CAME IN, THEY'VE HAD PEOPLE ON SITE FOR FIVE

14   WEEKS, THEY HAVE IMAGED 70 HARD DRIVES ALREADY.  WE HAVE AGREED

15   TO SEARCH TERMS.

16       WE'VE -- AND I WILL GET BACK TO THIS IN A MINUTE, WE

17   REACHED OUT TO APPLE.  WE PROVIDED THEM THE SEARCH TERMS.  WE

18   HAVE INVITED THEM TO SUGGEST ADDITIONAL SEARCH TERMS.

19           THE COURT:  WHEN DID YOU PROVIDE SEARCH TERMS TO

20   APPLE?

21           MS. ESTRICH:  LAST WEEK WHEN WE AGREED, AFTER WE

22   PROVIDED THEM TO NOKIA, WE HAD BEEN TALKING TO NOKIA, WE

23   PROVIDED THEM TO APPLE LAST WEEK.  WE HAVE INVITED THEM TO

24   PROVIDE ADDITIONAL SEARCH TERMS.

25       AS TO THE ADDITIONAL COMPANIES, APPLE HAS IDENTIFIED WE

 1   HAVE NOTIFIED EACH OF THOSE COMPANIES AS TO WHAT'S GOING ON.

 2   AS TO THE ITC AS YOU KNOW I HAVE TO BE VERY CAREFUL HERE BUT WE

 3   FILED A LETTER WITH THE ITC ON AUGUST 1ST NOTIFYING THEM AS TO

 4   THE RELEVANT DISCLOSURES.  WE TAKE THEM VERY SERIOUSLY.

 5           I DO WANT TO PUT THEM IN CONTEXT.  AS THE COURT WELL

 6   KNOWS THERE HAVE BEEN SOME 12 MILLION PAGES OF DOCUMENTS

 7   PRODUCED IN THIS CASE.

 8           WHAT WE ARE TALKING ABOUT HERE IN THE TEECE REPORT AND I

 9   CAN SHOW IT TO YOU IS ONE FOOTNOTE AND TWO PARAGRAPHS THAT WERE

10   IMPROPERLY REDACTED.  THE REST OF THE REPORT WAS REDACTED.

11           THE COURT:  SO THERE'S NO DISPUTE THE PROTECTIVE

12   ORDER WAS VIOLATED, CORRECT?

13           MS. ESTRICH:  YES, I THINK THERE IS A DISPUTE.

14           THE COURT:  HOW COULD IT BE NOT BE A VIOLATION OF

15   THIS COURT'S PROTECTIVE ORDER TO DISCLOSE THAT INFORMATION

16   THROUGHOUT SAMSUNG?

17           MS. ESTRICH:  BECAUSE THE PROTECTIVE ORDER, I DON'T

18   WANT TO GET TECHNICAL HERE BUT THE PROTECTIVE ORDER.

19           THE COURT:  I DON'T THINK MY QUESTION IS TERRIBLY

20   TECHNICAL.

21           MS. ESTRICH:  THE PROTECTIVE ORDER CONTEMPLATES THAT

22   THERE MAY BE INADVERTENT DISCLOSURES IN VIRTUALLY EVERY CASE OF

23   THIS SIZE MISTAKES ARE MADE.

24           THE COURT:  THE FACT THAT THE PROTECTIVE ORDER,

25   INCLUDING A REFERENCE TO MEDIATION IN THE EVENT OF THE

```
1     INADVERTENT DISCLOSURE CANNOT MEAN IT'S OKAY IN THE PROTECTIVE

2     ORDER TO DISCLOSE IT.

3               MS. ESTRICH:  IT'S NOT OKAY.

4               THE COURT:  SO HOW IS THIS NOT A VIOLATION?

5               MS. ESTRICH:  WE ARE FOLLOWING ALL THE PROCEDURES SET

6     FORTH IN THE PROTECTIVE ORDER.

7               THE COURT:  THE PROTECTIVE ORDER HAS FOUR LINES,

8     MAYBE FIVE ABOUT THIS.

9               MS. ESTRICH:  AND THE LINES REQUIRE --

10              THE COURT:  THERE'S NO PROCEDURE LAID OUT.

11              MS. ESTRICH:  WELL, THE PROCEDURE IS TO GIVE NOTICE

12    AND TO TAKE ALL NECESSARY STEPS.

13              THE COURT:  WHY IS THE -- CAN WE AT LEAST ACKNOWLEDGE

14    THIS WAS A VIOLATION OF THE 1846 ORDER.

15         CAN WE AT LEAST AGREE ON THAT?

16              MS. ESTRICH:  I CERTAINLY CAN AGREE THAT THERE WERE

17    INADVERTENT DISCLOSURES HERE.

18              THE COURT:  BUT YOU ARE NOT WILLING TO CONCEDE THERE

19    WAS EVEN ONE VIOLATION OF THIS COURT'S PROTECTIVE ORDER WHEN

20    QUINN EMANUEL SENT COPIES OF PROTECTED INFORMATION TO DOZENS

21    AND DOZENS OF INDIVIDUALS AROUND THE WORLD?

22              MS. ESTRICH:  THAT'S WHY I SAID I DON'T WANT TO GET

23    TECHNICAL HERE.

24              THE COURT:  IT'S NOT A TECHNICAL QUESTION, COUNSEL.

25    YOU WON'T AT LEAST CONCEDE THAT.
```

1          MS. ESTRICH:  CERTAINLY I WILL CONCEDE, AND I JUST

2     WANT TO BE CAREFUL, YOUR HONOR.  CERTAINLY I WILL CONCEDE THAT

3     THERE WERE INADVERTENT DISCLOSURE.  I WILL NOT CONCEDE USE.

4          MR. LEE REFERENCED A DECLARATION --

5          THE COURT:  LET'S TALK ABOUT THE USE SINCE YOU ARE

6     NOT WILLING TO CONCEDE THAT THERE'S EVEN ONE VIOLATION.

7          ARE YOU WILLING TO CONCEDE THAT IN INFORMATION WAS USED

8     IN THE NEGOTIATION?

9          MS. ESTRICH:  NO, YOUR HONOR.  I AM NOT.

10         BUT IF YOU WANTED TO DISCUSS THAT, I UNDERSTAND MY COUNSEL

11    FOR NOKIA WOULD AGREE WITH ME, I THINK HE WOULD BE ON HIS FEET.

12    WE NEED TO SEAL THE COURTROOM TO DISCUSS THAT.

13         THE COURT:  WELL, I'M NOT GOING TO SEAL ANY

14    COURTROOM.  YOU ALL SUBMITTED YOUR PROTOCOL UNDER SEAL THE

15    FIRST INSTANCE, RIGHT.

16         MS. ESTRICH:  THEN WE UNSEALED IT.

17         THE COURT:  AFTER THE COURT CALLED YOU ON IT.

18         MS. ESTRICH:  THAT'S CORRECT.

19         THE COURT:  AFTER YOU'VE PUT THIS COURT THROUGH HOW

20    MANY GO-AROUNDS ON SEALING, SO I'M NOT ABOUT TO SEAL THIS

21    COURTROOM.  THIS COURTROOM WILL BE OPEN TO THE PUBLIC.

22         TELL ME WAS THIS INFORMATION USED IN THE NEGOTIATION OR

23    NOT?

24         MS. ESTRICH:  CONFIDENTIAL -- I DO NOT -- I BELIEVE,

25    BUT OBVIOUSLY THE PARTIES ARE GOING TO ADDRESS THAT.  IF YOU

```
 1    ARE ASKING ME PERSONALLY FOR SAMSUNG DO WE CONCEDE THAT, WE DO

 2    NOT.

 3              THE COURT:  SO YOU'RE DENYING THAT THIS INFORMATION

 4    WAS USED IN THAT NEGOTIATION?

 5              MS. ESTRICH:  I'M DENYING THAT CONFIDENTIAL

 6    INFORMATION GOVERNED BY THE PROTECTIVE ORDER LEARNED THAT

 7    SAMSUNG, THAT SAMSUNG LEARNED ABOUT IT FROM INADVERTENT

 8    DISCLOSURES WAS USED IN A NEGOTIATION.

 9         BUT LET ME JUST FINISH BY SAYING, THE FIRST STAGE --

10              THE COURT:  SO THE DECLARATION FROM THE GENTLEMAN

11    FROM NOKIA IS FALSE?

12              MS. ESTRICH:  YOUR HONOR, I'M NOT SAYING IT'S FALSE.

13    I'M SAYING IT'S --

14              THE COURT:  SO HOW CAN YOU DENY THAT IT WAS USED?

15              MS. ESTRICH:  BECAUSE THE DECLARATION HAD A NUMBER OF

16    SENTENCES IN IT WHICH SUGGEST THAT THE INFORMATION THAT WAS

17    ACTUALLY REFERENCED WAS INFORMATION THAT WAS NO LONGER

18    CONFIDENTIAL THAT HAD BEEN SUBJECT TO LEAKS, THAT HAD APPEARED

19    IN PUBLIC, THAT HAD BEEN PROVIDED AND PUBLICIZED IN OTHER AREAS

20    AND IT WAS ONLY BECAUSE THAT INFORMATION WAS NO LONGER

21    CONFIDENTIAL AND SECRET THAT IT WAS REFERENCED IN THE

22    NEGOTIATION.

23              THE COURT:  WHAT PROOF DO YOU HAVE OF ANY OF THIS?

24    IS THERE A DECLARATION FROM YOUR EXECUTIVE IN THE RECORD?

25              MS. ESTRICH:  THERE IS NOT AND I WILL EXPLAIN WHY NOT
```

1        AND WE WILL BE HAPPY TO PROVIDE ONE AT THE APPROPRIATE TIME.

2              THE COURT:  NO, NO.  THIS IS THE APPROPRIATE TIME.

3           WE ARE STANDING HERE -- WE ARE SITTING HERE ON OCTOBER 1,

4        3 MONTHS AFTER THIS ISSUE WAS BROUGHT TO YOUR ATTENTION.

5           WHERE IS THE EVIDENCE FOR THE COURT TO LOOK AT?

6              MS. ESTRICH:  THE STIPULATION WHICH WE ENTERED INTO

7        WITH NOKIA PROVIDED THAT THE FIRST STAGE WOULD INVOLVE REVIEW

8        OF ALL THE DOCUMENTS AND ALL THE E-MAILS.

9           THAT AT THE CONCLUSION OF THAT FIRST STAGE, THE PARTIES AND

10       WE INVITE APPLE TO JOIN WITH US IN THIS, WOULD EXAM THE LAW,

11       THERE WERE SERIOUS PRIVILEGE ISSUES OBVIOUSLY, AND WOULD COME

12       TO AN UNDERSTANDING OF WHETHER FURTHER DECLARATIONS WERE

13       NEEDED, DEPOSITIONS WERE NEEDED.

14          BUT YOUR HONOR, THAT MAY WELL BE UNNECESSARY.  AND OUR VIEW

15       HAD BEEN AND NOKIA AGREED --

16             THE COURT:  HOW CAN IT NOT BE -- YOU JUST DENIED THE

17       VORACITY OF THE DECLARATION SUBMITTED UNDER OATH BY NOKIA'S

18       DEBT.

19             MS. ESTRICH:  I WAS NOT TRYING TO CHALLENGE THE

20       VORACITY.  WHAT I WAS TRYING TO SUGGEST, AND I'M TRYING TO DO

21       IT CAREFULLY, IS THAT DECLARATION HAS TO BE PUT IN CONTEXT.

22       AND THE VERY INVESTIGATION WE ARE DOING NOW WILL HOPEFULLY

23       PROVIDE THAT CONTEXT.  IF IT DOESN'T PROVIDE THE FULL

24       CONTEXT --

25             THE COURT:  HAVE YOU SPOKEN TO THIS EXECUTIVE?

```
 1              MS. ESTRICH:  YOUR HONOR, I CAN'T REVEAL PRIVILEGED

 2    COMMUNICATIONS.  THE ANSWER IS WHETHER --

 3              THE COURT:  I DON'T THINK WHETHER THE FACT OF YOUR

 4    CONVERSATION WITH THE CLIENT IS PRIVILEGED, CERTAINLY NOT ON

 5    THIS TOPIC.  HAVE YOU HAD A CONVERSATION?

 6              MS. ESTRICH:  I HAVE.

 7              THE COURT:  WHEN DID YOU SPEAK TO HIM FIRST?

 8              MS. ESTRICH:  THAT WOULD BE SOME TIME IN JULY.

 9         WE WERE FIRST NOTIFIED --

10              THE COURT:  HAS THERE BEEN MORE THAN ONE

11    CONVERSATION?

12              MS. ESTRICH:  THERE HAVE BEEN MULTIPLE CONVERSATIONS

13    BY MEMBERS OF QUINN EMANUEL.

14         WE HAVE SOMEONE ON SITE IN KOREA.  WE ARE DOING AN

15    INDEPENDENT INVESTIGATION.  WE ARE SEARCHING E-MAILS IN

16    ARCHIVES.

17         YES.  THERE'S BEEN MULTIPLE CONVERSATIONS.  WE HAVE ALSO,

18    I SHOULD ADD, AGREED NOT TO USE THIS INFORMATION IN ANY FURTHER

19    PROCEEDINGS IN ND CAL.  WE WILL NOT BE USING IT IN THE

20    FORTHCOMING TRIALS.

21         WE HAVE AGREED AT NOKIA'S REQUEST AND IN LIGHT OF THESE

22    CIRCUMSTANCES WE ARE NOT GOING TO USE IT.

23              THE COURT:  WHAT ABOUT IN THE ITC, HAVE YOU AGREED

24    NOT TO USE IT THERE?

25              MR. ZELLER:  THE DIFFICULTY, YOUR HONOR, IS THAT
```

1     THERE ARE ISSUES PERTAINING TO WHAT WE CAN DISCLOSE AND EVEN

2     DISCUSS ABOUT ANY OF THIS UNDER THE ITC RULES.  THERE'S THE

3     PROTECTIVE ORDER IN PLACE THERE AS WELL.  SO --

4              THE COURT:  YOU ARE SAYING THAT THE ITC PROTECTIVE

5     ORDER BARS YOU FROM ANSWERING MY QUESTION OF WHAT YOU HAVE

6     AGREED TO DO OR NOT TO IN THE ITC PROCEEDING.

7              MR. ZELLER:  IT DOES, YES, YOUR HONOR.

8              MS. ESTRICH:  IT DOES, YOUR HONOR.

9              MR. ZELLER:  OR AT LEAST --

10             THE COURT:  SO A TAXPAYER FUNDED INSTITUTION

11    OPERATING IN PARALLEL TO THIS COURT CAN BAR THIS COURT FROM

12    UNDERSTANDING WHETHER YOU ARE TAKING THE POSITION IN THAT

13    PROCEEDING?

14             MR. ZELLER:  YOUR HONOR, WE HAVE BEEN ACCUSED OF

15    PROTECTIVE ORDER VIOLATIONS.  THAT'S WHY WE ARE BEING ULTRA

16    CAUTIOUS BECAUSE WE DON'T WANT THEM TO COME BACK AND SAY NOW WE

17    HAVE DONE SOMETHING IN THE ITC THAT'S IMPROPER.  WE DON'T WANT

18    TO CONTINUE TO END LESS LOOP OF ACCUSATIONS.

19         THE FACT IS THAT THERE ARE ITC RULES.  APPLE HAS ASKED

20    THE ITC FOR RELIEF.  THERE ARE ISSUES THAT ARE PENDING BEFORE

21    THE ITC ABOUT ITS OWN PROTECTIVE ORDER.

22         SO ULTIMATELY YOUR HONOR, WE ACTUALLY THINK IT'S --

23             THE COURT:  HOW DOES AN ITC PROTECTIVE ORDER BAR YOU

24    FROM TELLING THE COURT WHAT POSITION YOU ARE TAKING BEFORE THE

25    ITC.  THAT'S -- THE POSITION IS NOT CONFIDENTIAL.

```
1              MR. ZELLER:  YOUR HONOR --

2              THE COURT:  OR MAYBE AM I WRONG ABOUT THAT.

3              MR. ZELLER:  THERE'S AN ITC RULE THAT ACTUALLY SAYS

4    IT IS BARRED, IT IS IMPROPER FOR US TO EVEN DISCLOSE WHO HAS

5    BEEN ACCUSED OF DISSEMINATING THE PROTECTED INFORMATION.

6              THE COURT:  WE ARE NOT TALKING ABOUT THE

7    DISSEMINATION OF PROTECTED INFORMATION.

8        I'M JUST TRYING TO UNDERSTAND WHETHER YOU ARE RELYING UPON

9    THIS INFORMATION ADVOCATING FOR A POSITION FROM THE ITC.  I'M

10   FAILING TO UNDERSTAND HOW THE PROTECTIVE ORDER --

11             MR. ZELLER:  YOUR HONOR, CAN I AT LEAST HAVE A

12   REPRESENTATION FROM APPLE AND NOKIA THAT IF I ANSWER THAT

13   QUESTION THEY ARE NOT GOING ON TO ACCUSE US IN A VIOLATION OF

14   THE ITC.

15             MR. ALLEN:  YOUR HONOR, THIS IS COVERED IN OUR

16   STIPULATION.

17             THE COURT:  DOES APPLE HAVE A PROBLEM.  I'M JUST

18   TRYING TO FIGURE OUT WHAT'S GOING ON.

19             MR. LEE:  I THINK IT WOULD BE BENEFICIAL FOR THE

20   COURT TO KNOW EXPRESSLY WHAT SAMSUNG SAID IN APRIL 2013 ON THIS

21   ISSUE.

22        YOU WILL NOT GET FROM US ANY COMPLAINT IF YOU VIOLATE THE

23   PROTECTIVE ORDER, AND I THINK YOU SHOULD TELL THE COURT WHAT

24   YOU SAID ABOUT LICENSING AND THE APPLE NOKIA LICENSE.

25             MR. ZELLER:  IF I MAY, YOUR HONOR, THAT WOULD ALSO
```

```
 1     EXTEND ANYTHING WE DISCUSSED ABOUT THE ITC'S DECISION.  BECAUSE

 2     THAT'S WHAT'S REALLY NECESSARY HERE.

 3         THE RED HERRING THAT THEY'RE THROWING OUT ABOUT THE ITC

 4     PROCEEDING IS THAT THEY ARE ATTEMPTING TO ARGUE THAT SOMEHOW IT

 5     RELATED TO THE DECISIONS AND IT SIMPLY DID NOT.

 6             THE COURT:  OKAY.  SO LET'S GO BACK TO MY QUESTION.

 7         ARE YOU COMMITTING NOT TO USE THEM INFORMATION IN ANY WAY

 8     IN ADVOCATING FOR A POSITION BEFORE THE ITC?

 9             MR. ZELLER:  IF I MIGHT, YOUR HONOR, JUST TO DOUBLE

10     CHECK.

11             (OFF-THE-RECORD DISCUSSION.)

12             MR. ZELLER:  THE ANSWER IS IT'S IN THE STIPULATION

13     ITSELF, YOUR HONOR.  I WANTED TO DOUBLE -CHECK ON THAT.

14             MS. ESTRICH:  WE ARE NOT.

15             MR. ZELLER:  THERE'S A PARAGRAPH THAT LISTS THE

16     ACTIONS IN WHICH WE SAY WE WILL NOT USE THE INFORMATION.

17             THE COURT:  COULD WE LOOK AT THE STIPULATION AND CAN

18     SOMEONE TELL ME WHETHER THE ANSWER TO MY QUESTION IS YES OR NO.

19             MR. ALLEN:  IT'S YES.  PARAGRAPH 3 SAYS THEY CAN'T

20     USE IT IN THE NORTHERN DISTRICT OF CALIFORNIA CASE NOR --

21             THE COURT:  WHAT ABOUT ITALY?  ARE YOU ALL RELYING

22     UPON THIS INFORMATION IN ITALY?

23             MR. ZELLER:  WITH RESPECT TO THAT, YOUR HONOR, THAT'S

24     NOT RECITED IN THE STIPULATION THAT'S NOT SOMETHING THAT THE

25     PARTIES HAVE DISCUSSED YET.
```

1    WHAT IS CONTEMPLATED BY THE STIPULATION, HOWEVER, IS THAT

2    WE WILL BE PROVIDING FOREIGN COUNSEL DECLARATIONS ABOUT THESE

3    ISSUES BECAUSE OBVIOUSLY WE, QUINN EMANUEL, HAVE TO LOOK AT

4    THESE SITUATIONS AND GET THE INFORMATION TO THAT WHICH THEY ARE

5    GOING TO PROVIDE TO NOKIA AND PRESUMABLY ULTIMATELY APPLE.

6    THEN WE CAN DECIDE FROM THERE WHAT POTENTIAL STEPS, IF ANY, ARE

7    NEEDED.

8        WE JUST DON'T KNOW THE ANSWERS TO THOSE QUESTIONS.

9        THE COURT:  SO IS IT CORRECT FOR ME TO UNDERSTAND,

10   STANDING HERE TODAY, YOU ARE NOT MAKING ANY COMMITMENTS

11   WHATSOEVER VIS A VI ITALY THE UK, THE NETHERLANDS, AUSTRALIA

12   ANY FOREIGN JURISDICTION?

13       MR. ZELLER:  WE'RE -- WE DON'T KNOW, YOUR HONOR.  WE

14   JUST DON'T KNOW.

15       MS. ESTRICH:  WE JUST DON'T KNOW.  WE SHOULD HAVE

16   THOSE DECLARATIONS WITHIN A MATTER OF DAYS.

17       MR. ZELLER:  RIGHT.

18    AND PART OF IT, YOUR HONOR, IS I THINK THE COURT HAS

19   ALREADY ALLUDED TO THIS.  WE ARE ALL OBVIOUSLY SOMEWHAT HAVING

20   TO REPLY ON FOREIGN COUNSEL TO KNOW WHAT THE PROCEDURES NEAR

21   THESE JURISDICTIONS WHAT CAN BE DONE, WHAT'S ALREADY PUBLIC

22   THERE, YOU KNOW, SO THERE'S JUST A NUMBER OF ISSUES.

23    AND WE ARE NOT TRYING TO BE CAGEY HERE, IT'S JUST THAT

24   THERE'S AN ONGOING INVESTIGATION, IT'S A VERY BROAD SCOPE.

25   THERE ARE A NUMBER OF MOVING PARTS OF THIS.  WE ARE ATTEMPTING

1    TO GET THE INFORMATION, THERE'S A MECHANISM WE HAVE IN PLACE TO

2    PROVIDE THAT INFORMATION TO NOKIA, AND AGAIN, AND TO APPLE WE

3    INVITED TO COME IN TO THAT.

4        AND THEN FROM THERE IF THEY ARE NOT SATISFIED, WE CAN GO

5    FURTHER.

6            THE COURT:  ALL RIGHT.

7        SO IN THE INTEREST OF NOT BEING CAGEY, ARE THERE ANY

8    RESTRICTIONS WHATSOEVER ON WHAT NOKIA CAN LEARN ABOUT /STROE'S

9    INVESTIGATION.

10           MS. ESTRICH:  THE ONLY RESTRICTIONS WOULD BE

11   PRIVILEGE, YOUR HONOR.  AND WE HAVE A PROCEDURE.

12           THE COURT:  WELL, IF YOU DISCLOSE IT TO STROZ THEY

13   ARE NOT YOUR AGENT, CORRECT?

14           MR. ZELLER:  THERE'S A PROVISION IN THE STIPULATION.

15           MS. ESTRICH:  THERE IS A PROVISION IN THE STIPULATION

16   THAT STROZ IS SEEKING, AND THEN WE WILL PREPARE THE LOG.  AND

17   IF THERE ARE ISSUES OF PRIVILEGE IF THERE ARE DOCUMENTS ON THAT

18   LOG AS TO WHICH NOKIA OR APPLE HAS AN INTEREST IN SEEING IN AN

19   UNREDACTED FORM, RAISING PRIVILEGE ISSUES, WE WOULD ADDRESS

20   THOSE ISSUES AT THAT TIME COME TO THE COURT FOR THE COURT TO

21   ADDRESS THIS.

22           THE COURT:  SO IS STROZ WORKING FOR QUINN OR IS STROZ

23   WORKING FOR SAMSUNG OR NOKIA?

24           MS. ESTRICH:  STROZ IS INDEPENDENT.  WE ARE PAYING

25   THEM.  WE ARE WITH THEM BECAUSE OF THE PRIVILEGE ISSUES.

1          THE COURT:  SO HOW CAN YOU PRESERVE A PRIVILEGE BY

2     DISCLOSING INFORMATION TO THEM?

3          MR. ZELLER:  BECAUSE YOUR HONOR, THEY -- UNDER THE

4     TERMS OF THE STIPULATION, THEY HAVE AGREED THAT IT IS NOT A

5     WAIVER.

6          MS. ESTRICH:  THAT IS WHY.

7          THE COURT:  THEY MAY HAVE AGREED, BUT WHAT DOES THAT

8     SAY VIS A VI OTHER PARTIES?

9       I'M AT A BIT OF A LOSS.  IT'S ONE THING IF THEY ARE YOUR

10    AGENT OR UNDER YOUR CUSTODY OR CONTROL.  YOU ARE TELLING ME

11    THEY ARE INDEPENDENT ON THE ONE HAND, AND ON THE OTHER HAND YOU

12    ARE SAYING YOU CAN DISCLOSE ALL SORTS OF PRIVILEGE AND WORK

13    PRODUCT INFORMATION TO THEM WITHOUT ANY WAIVER WHATSOEVER.

14         MR. ZELLER:  THAT'S THE AGREEMENT, YOUR HONOR.

15         MS. ESTRICH:  CORRECT.  THAT WAS OUR AGREEMENT.

16       STROZ WAS SUGGESTED NOT BY US WE SUGGESTED A DIFFERENT

17    VENDOR FRANKLY WHO HAD WORKED WITH US IN THE PAST.  NOKIA ASKED

18    THAT WE USE STROZ.  WE AGREED.

19       STROZ HAS COME IN UNDER THE TERMS OF THE STIPULATION IN

20    ORDER TO DO A FULL AND THOROUGH INVESTIGATION.

21       WE ARE LITERALLY AN OPEN BOOK.  NOT ONLY IN KOREA BUT

22    AROUND THE WORLD TO STROZ.  AND THEY ARE IN TURN PROVIDING A

23    PRIVILEGE LOG WHICH WOULD THEN BE THE BASIS FOR ANY, A FULL

24    LOG, SOME OF WHICH WILL HAVE PRIVILEGED INFORMATION, AND AT THE

25    APPROPRIATE TIME IF APPLE FEELS THERE ARE DOCUMENTS ON THAT LOG

1      THAT THEY HAVE A RIGHT TO SEE IN AN UNREDACTED FORM, WE WOULD

2      COME TO YOUR HONOR AND ADDRESS THOSE ISSUES.

3          THE STIPULATION ALSO PROVIDES THAT THE CONCLUSION OF THIS

4      INITIAL INVESTIGATION, WHICH IS A VERY BROAD INVESTIGATION, WE

5      ARE IMAGING THE HARD DRIVES OF EVERY SINGLE PERSON WHO RECEIVED

6      ANY E-MAIL ON ANY ONE OF THESE E-MAILS.

7                THE COURT:  SO YOU ARE SAYING AS TO E-MAIL, YOU HAVE

8      IMAGED THE HARD DRIVES OF EACH OF THE INDIVIDUALS WHO RECEIVED

9      ONE OF THE E-MAILS.

10               MS. ESTRICH:  CORRECT.

11               THE COURT:  IS THAT ALSO TRUE FOR EACH INDIVIDUAL

12     THAT ACCESSED THE FTP SITE?

13               MR. BECHER:  YES, YOUR HONOR.  TO THE EXTENT --

14               THE COURT:  SO YOU ARE TELLING ME THAT EVERY PERSON

15     AT SAMSUNG WHO HAD ACCESS TO THAT FTP SITE HAS HAD THEIR ENTIRE

16     HARD DRIVE IMAGES?

17               MR. ZELLER:  YOUR HONOR, EVERY PERSON WHO RECEIVED AN

18     E-MAIL.

19               THE COURT:  NO, NO, NOT E-MAIL.

20               MS. ESTRICH:  THE INSTRUCTIONS AS TO THE FTP SITE.

21               THE COURT:  I WANT TO KNOW IF THE HARD DRIVES FROM

22     EACH INDIVIDUAL WHO, TO USE YOUR DESCRIPTION, RECEIVED AN

23     E-MAIL INSTRUCTION HAS HAD THE HARD DRIVE IMAGES.

24               MR. BECHER:  YES, YOUR HONOR, HAS OR IT'S IN PROCESS

25     FOR SEVERAL PEOPLE BECAUSE THIS PROCESS HAS RESULTED IN THE

1     IDENTIFICATION OF SOME ADDITIONAL CUSTODIANS WHICH I HAVE

2     PASSED ALONG REGULARLY TO THE ATTORNEYS FOR NOKIA AND WE HAVE

3     PUT IN OUR LETTERS.

4              THE COURT:  WHAT ADDITIONAL CUSTODIANS?

5              MR. BECHER:  FOR EXAMPLE, IF AN E-MAIL WAS NOT SENT

6     TO OUR FIRM BUT WE DISCOVERED THAT FOREIGN COUNSEL SENT AN

7     E-MAIL TO SOMEONE AT SAMSUNG THAT WE WERE PREVIOUSLY UNAWARE

8     OF, THEN WE HAVE IDENTIFIED THAT PERSON AND TAKEN MEASURES TO

9     ARCHIVE, EXCUSE ME, TO TAKE AN IMAGE OF THEIR HARD DRIVE.

10        SO IT'S BEEN AN ITERATIVE PROCESS WHEN WE STARTED WITH THE

11     BASELINE OF WHAT WE KNEW, AND THEN AS WE HAVE BEEN

12     INVESTIGATING TO THE EXTENT WE IDENTIFIED ADDITIONAL RECIPIENTS

13     WITHIN SAMSUNG, WE HAVE TAKEN MEASURES TO IMAGE THEIR HARD

14     DRIVE, BUT ALSO TO OBTAIN AND ARCHIVE THE E-MAIL.

15        THIS HAS BEEN GOING ON FOR SEVERAL WEEKS ACTUALLY WITH 4 TO

16     5 PEOPLE FROM STROZ THERE, A QUINN EMANUEL REPRESENTATIVE TO

17     FACILITATE GETTING ALL THE DATA TO STROZ.

18        AND THERE'S BEEN A TREMENDOUS EFFORT GOING ON IN KOREA AND

19     IN THE UNITED STATES TO GATHER THIS INFORMATION AND TO MAINTAIN

20     AN UNDATED LIST OF WHO'S IN PO SESSION OR WAS A RECIPIENT OF

21     THE E-MAILS OR THE FTP INSTRUCTIONS.

22              THE COURT:  SO CAN YOU TELL ME TODAY WHAT THE LIST

23     WHAT THE UNIVERSE OF INDIVIDUALS WHO HAVE RECEIVED THIS

24     UNREDACTED DOCUMENT IN VIOLATION OF THE 1846 ORDER CONSISTS OF?

25              MS. ESTRICH:  I BELIEVE WE PROVIDED THAT LIST.  I

1    SHOULD ADD ONE POINT WHILE MR. BECKER IS FINDING THE LIST.

2        AFTER THIS COURT'S RULING LAST AUGUST, A YEAR AGO AUGUST,

3    SAMSUNG INSTITUTED AN ARCHIVE SYSTEM SO THAT IN ANSWER TO YOUR

4    EARLIER QUESTION --

5        THE COURT:  SO THERE'S NO LONGER ANY AUTO DELETE

6    FUNCTIONALITY FOR ANY OF THESE INDIVIDUALS.

7        MS. ESTRICH:  EVERY SINGLE PERSON WHO WE BELIEVED OR

8    HAD REASON TO BELIEVE, IT'S QUITE A LONG LIST, MIGHT POSSESS

9    RELEVANT INFORMATION, IT HAS BEEN ARCHIVED AS OF AUGUST A YEAR

10    AGO.

11        THE COURT:  OKAY.  AS OF AUGUST A YEAR AGO.

12        WHAT ABOUT SINCE AUGUST A YEAR AGO?  ARE ANY OF THE

13    INDIVIDUALS ON THIS LIST THAT WE WERE JUST DISCUSSING THAT I

14    STILL HAVEN'T RECEIVED, ARE THEY ABLE TO RELY UPON THE AUTO

15    DELETE FUNCTIONALITY?

16        MS. ESTRICH:  THE AUTO DELETE WOULD NOT IN FACT, I

17    MEAN THEY CAN I SUPPOSE PRESS A BUTTON ON THE COMPUTER BUT THE,

18    MAILS ARE PRESERVED.

19        THE COURT:  ALL RIGHT.  DO WE HAVE A LIST?

20        MR. BECHER:  YOUR HONOR, THE LETTERS PROVIDE ALL THE

21    NAMES.

22        THE COURT:  HOW MANY?

23        MR. BECHER:  YES, IT'S OVER 80.

24        THE COURT:  SO WE ARE UP TO 80 INDIVIDUALS AT SAMSUNG

25    WHO RECEIVED ONE OR MORE COPIES OF THIS UNREDACTED TEECE

```
 1    REPORT.

 2                MR. BECHER:  THAT IS CORRECT, YOUR HONOR.

 3                MS. ESTRICH:  CORRECT.

 4        ALL THE E-MAILS THAT HAVE BEEN ARCHIVED ARE BEING ARCHIVED

 5    AND HAVE BEEN SEARCHED.  WE WILL PROVIDE A REPORT.

 6        OUR POSITION SIMPLY IS VERY SIMPLE, YOUR HONOR.  I CAN GO

 7    THROUGH EACH OF MR. LEE'S POINTS.  I CAN EXPLAIN TO YOU THE

 8    DECEMBER 2012 REQUEST WAS NOT FOR ANY NEFARIOUS PURPOSE AS WE

 9    HAVE INFORMED APPLE, IT WAS A REQUEST FOR THE REPORT BECAUSE IT

10    MIGHT BE RELEVANT TO A LAWSUIT THAT HAS BEEN BROUGHT BY A

11    TROLL.

12                THE COURT:  I'M SORRY, WHAT'S IT RELEVANT TO?

13                MS. ESTRICH:  A LAWSUIT THAT HAD BEEN BROUGHT -- A

14    SEPARATE LAWSUIT THAT HAD BEEN BROUGHT BY A NONPRACTICING

15    ENTITY.

16                THE COURT:  SO YOU ARE SAYING THAT IN DECEMBER OF

17    2012 THIS UNREDACTED OR INSUFFICIENTLY REDACTED TEECE REPORT

18    WAS MATERIAL TO A LAWSUIT BROUGHT BY A THIRD PARTY AND ON THAT

19    BASIS ALONE IT WAS DISCLOSED?

20                MS. ESTRICH:  YOUR HONOR, OBVIOUSLY IT SHOULD HAVE

21    BEEN REDACTED, BUT ONE OF THE PEOPLE AT SAMSUNG IS LOOKING FOR

22    THE REPORT.  THERE'S NO EVIDENCE HE WAS LOOKING FOR THAT

23    FOOTNOTE BECAUSE THE REPORT ITSELF MIGHT BE RELEVANT TO A

24    SEPARATE LITIGATION.  IT WAS NO NEFARIOUS PURPOSES, WE'VE TOLD

25    APPLE.
```

```
1              THE COURT:  WHEN DID YOU TELL APPLE THAT?

2              MS. ESTRICH:  THAT QUESTION CAME IN --

3              MR. BECHER:  WE INITIALLY, SEVERAL WEEKS AGO, SENT A

4    LETTER TO APPLE RESPONDING TO THEIR QUESTION THEN THEY --

5              THE COURT:  I LOOKED THROUGH A LOT OF LETTERS OVER

6    THE LAST 72 HOURS, I DIDN'T SEE ANY REFERENCE TO ANY LETTER

7    THAT I WAS -- THAT TENDERED TO A LAWSUIT BROUGHT BY A THIRD

8    PARTY.

9              MR. BECHER:  I CAN PULL THE LETTER, YOUR HONOR.

10       AND THEN LAST NIGHT WE IDENTIFIED THE SPECIFIC LAWSUIT

11   WHICH WAS A MICROUNITY LAWSUIT.  SO WE PROVIDED THAT LAST

12   NIGHT.

13       I PULLED THE PRIOR LETTER WHERE THE QUESTION WAS INITIALLY

14   ANSWERED THEN THERE WAS A FOLLOWUP ASSOCIATED WITH THAT ISSUE.

15             THE COURT:  OKAY.

16       WHY WOULD AN EXPERT REPORT IN THIS CASE BE RELEVANT TO ANY

17   ISSUES IN ANOTHER CASE?  MORE IMPORTANTLY, WHY WAS IT PERMITTED

18   TO BE SHARED?

19             MR. BECHER:  YOUR HONOR, AS I UNDERSTAND IT OTHER

20   PARTIES TO LITIGATION WITH SAMSUNG HAVE ATTEMPTED TO DETERMINE

21   WHAT POSITIONS SAMSUNG HAS TAKEN IN ANY OTHER LITIGATIONS AND

22   WHAT EXPERTS SAMSUNG HAS USED IN OTHER LITIGATIONS AND HAVE

23   TRIED TO USE THAT AS A STRATEGIC MATTER.

24             THE COURT:  CAN WE AT LEAST AGREE THAT DISCLOSING THE

25   INSUFFICIENT REDACTED TEECE REPORT IN THE COURSE OF THAT THIRD
```

```
 1        PARTY LITIGATION WAS A VIOLATION OF THE 1846 ORDER?

 2                  MR. BECHER:  WELL, I WILL LET --

 3                  THE COURT:  NO?  WE ARE NOT EVEN GOING TO AGREE TO

 4        THAT?

 5                  MR. BECHER:  WE WERE NOT DISCUSSING THAT ISSUE.  THE

 6        E-MAIL PROVIDING IT INTENDED TO --

 7                  THE COURT:  SO NOTHING HAPPENED HERE?

 8                  MS. ESTRICH:  NOTHING WRONG HAS HAPPENED HERE.

 9                  THE COURT:  IF THERE'S NOT EVEN ONE VIOLATION OF

10        1846, THEN WHY ARE WE CONSUMING ALL THESE RESOURCES TO GET --

11                  MS. ESTRICH:  BECAUSE WE TAKE IT VERY SERIOUSLY, AND

12        BECAUSE THE PROTECTIVE ORDER REQUIRES US AND WE AGREE THAT

13        WHERE THERE'S AN INADVERTENT DISCLOSURE AND THERE WAS AN

14        INADVERTENT DISCLOSURE.

15                  THE COURT:  SO IS IT YOUR VIEW, MS. ESTRICH, THAT THE

16        ONLY VIOLATION COULD HAVE TAKEN PLACE HERE IS IF SAMSUNG

17        PURPOSEFULLY DISCLOSED?

18            ARE YOU SAYING THERE'S AN INTENT OR A WILLFULLNESS

19        REQUIREMENT FOR A VIOLATION OF A PROTECTIVE ORDER?

20                  MS. ESTRICH:  THERE'S AN INTENT OF WILLFULNESS

21        REQUIREMENT FOR A VIOLATION OF A PROTECTIVE ORDER.

22            NOW IF YOU ARE GOING TO ASK ME CAN THERE BE A VIOLATION

23        WITHOUT SANCTIONS, THAT'S A DIFFERENT ISSUE.  BUT THE WAY THE

24        COURTS HAVE ADDRESSED VIOLATIONS AND PROTECTIVE ORDERS IS THEY

25        ASK A KEY QUESTION, AND I CAN GIVE YOU PLENTY OF CITES, YES,
```

1    THERE WAS A DISCLOSURE.  WAS IT WILLFUL, IN THIS CASE, NO.  DID

2    YOU FOLLOW THE PROCEDURES UNDER THE PROTECTIVE ORDER TO

3    REMEDIATE THE SITUATION?  AND WHERE THE ANSWER IS YES, COURTS

4    AS A RULE HAVE SAID WE ARE NOT GOING TO SANCTION YOU.

5           THE COURT:  YOU'VE JUST TOLD ME A NUMBER OF MINUTES

6    AGO YOU CAN'T EVEN TELL ME WHETHER YOU'VE TAKEN ANY STEPS IN

7    ANY OF THESE OTHER TRIBUNALS TO RETRACT RELIANCE UPON THIS

8    INFORMATION.

9           MS. ESTRICH:  LET ME CLARIFY.

10      WE HAVE CONTACTED FOREIGN COUNSEL IN EACH CASE WHERE WE

11   KNOW THAT A TEECE REPORT MIGHT HAVE BEEN SENT OR USED, AND ASK

12   THEM TO PREPARE A DECLARATION FOR US TO DOCUMENT WHAT HAPPENED,

13   THAT WAS DONE, WHAT REMEDIAL STEPS WERE TAKEN, ET CETERA.

14      AND WE INTEND TO PROVIDE THAT INFORMATION TO NOKIA AND

15   APPLE WITHIN A MATTER OF DAYS.  AND IF THEY NEED FURTHER

16   INFORMATION, THIS IS AN ONGOING PROCESS, YOUR HONOR.  WE ARE

17   DOING EVERYTHING AND MORE THAT WE CAN IMAGINE A COURT COULD

18   ORDER AS A FIRST STEP TO GET TO THE BOTTOM --

19           THE COURT:  I THINK THERE IS SOME OTHER THINGS THE

20   COURT COULD ORDER THAT YOU AREN'T DOING.

21           MS. ESTRICH:  CERTAINLY SO.

22      AND OUR SUGGESTION WOULD BE THAT IF AT THE END OF -- IT'S

23   STROZ'S AS FOR THREE MORE WEEKS.

24           AS MR. ALLEN SAID, THIS JOB IS A HUGE JOB.  WE USED

25   KOREAN SEARCH TERMS, WE ARE DOING THIS ALL OVER THE WORLD.  WE

1    ARE FOLLOWING UP.  WE EXPECT APPLE WILL HAVE ADDITIONAL SEARCH

2    TERMS.

3         IF AT THE END THREE-WEEKS FROM NOW WHEN WE ARE PROVIDED

4    EVERYBODY WITH THE LOG AND THEY SEE WHAT THE DOCUMENTS ARE, IF

5    AT THAT POINT OUR HOPE IS OBVIOUSLY THAT AT THAT POINT THIS

6    MIGHT BE RESOLVED AND NO FURTHER DISCOVERY WOULD BE NECESSARY.

7         BUT IF AT THAT POINT IT MAKES SENSE FOR THERE TO BE

8    ADDITIONAL DISCOVERY, EVEN THOUGH DISCOVERY IS NOT CONTEMPLATED

9    IN THE PROTECTIVE ORDER AND EVEN THOUGH WE ARE TRYING TO AVOID

10   SATELLITE LITIGATION, WE HAVE ABSOLUTELY NO OBJECTION TO COMING

11   BACK TO THIS COURT AT A DATE CERTAIN TO ADDRESS WHAT FURTHER

12   STEPS WOULD BE TAKEN.

13        AT THIS POINT FOR INSTANCE APPLE SAYS WE WANT 30(B)(6)

14   DEPOSITIONS BUT WE HAVE NO NOTICE OF WHAT THOSE WOULD BE WHAT

15   TOPICS WOULD BE COVERED.  WE NEED TO TAKE THIS, WE BELIEVE, IN

16   AN ORDERLY STEP-BY-STEP PROCESS TO GET TO THE BOTTOM OF THIS

17   AND FULLY REMEDIATE.

18        MR. LEE SAID WE WERE READY TO DELETE THE E-MAILS.  UNDER

19   THE PROTECTIVE ORDER IT SAYS YOU'VE GOT TO CLAW BACK THIS STUFF

20   AND TAKE IT BACK.

21        WE RAISED WITH NOKIA, HOW WOULD YOU LIKE US TO HANDLE IT?

22   THEY SAID, WE DON'T WANT ANY DELETIONS AT THIS POINT.  SO WHAT

23   DO WE DO?  WE SENT A PRESERVATION NOTICE TO EVERY SINGLE PERSON

24   WHO HAS THE LIST.

25             THE COURT:  SO NOKIA SAID YEAH, GO AHEAD AND DELETE

```
1        IT.  WHAT WOULD THAT HAVE DONE TO APPLE'S?

2            AT THAT POINT APPLE HADN'T EVEN BEEN CONTACTED, RIGHT?

3                MS. ESTRICH:  THEY HAD BEEN -- AND THE POINT -- WE

4    LEARNED OF THIS FOR THE FIRST TIME ON JULY 1ST.  WE BEGAN AN

5    INVESTIGATION.

6            ON JULY 16TH WE SAID TO NOKIA, WE HAVE FOUND SOME INSTANCES

7    OF IMPROPERLY REDACTED TEECE REPORT.

8            WE CONTINUED OUR INVESTIGATION BUT WE HAD JUST BEGUN,

9    THIS IS A RATHER MASSIVE PROBLEM, INVESTIGATION, WE WAITED TWO

10   MORE WEEKS UNTIL WE HAD A FULL PICTURE OF WHAT WAS GOING ON AND

11   WE NOTIFIED APPLE AT THAT POINT.

12           AND SINCE THAT TIME, WE HAVE BEEN COMMUNICATING ON A

13   REGULAR BASIS WITH APPLE SO THAT THEY UNDERSTAND WHERE THE

14   PROCESS IS.  WE HAVE OFFERED THEM THE SAME LOG WE ARE GOING TO

15   PROVIDE TO NOKIA.  WE HAVE ASKED THEM WHAT SEARCH TERMS.  WE

16   HAVE SHOWN THEM THE SEARCH TERMS WE ARE USING.

17           THEY SENT US VARIOUS LETTERS ASKING THE QUESTIONED.  WE

18   ANSWERED THE LETTERS.  WE CONTINUE TO ADDRESS THIS.

19           OBVIOUSLY AS WE GO ALONG WE DISCOVER WHO SENT WHAT TO

20   WHOM AND WHEN IT WAS SENT AND WHO OPENED WHAT.

21           AND ALL OF THIS INFORMATION, YOUR HONOR, IS PART OF THE

22   FIRST STAGE OF THE INVESTIGATION AND IS BEING DONE, FRANKLY WE

23   BELIEVE, IN GOOD FAITH TO SHOW FULL ATTENTION TO ADDRESS THE

24   ISSUES THAT HAVE BEEN RAISED AND TO DO SO IN AN ORDERLY

25   FASHION.
```

```
 1              THE COURT:  MS. ESTRICH, CAN YOU SHED SOME LIGHT ON

 2    ME FOR HOW THIS REPORT CAME TO BE INSUFFICIENTLY REDACTED IN

 3    THE FIRST INSTANCE.  WHAT'S THE PROCESS THAT LEAD TO THIS?

 4              MS. ESTRICH:  THE ASSOCIATE.

 5         CAN YOU GIVE ME A COPY OF THE REPORT, THE COPY THAT'S

 6    REDACTED.

 7              THIS IS A 150 PAGE REPORT, YOUR HONOR, AS YOU CAN SEE.

 8    AND AN ASSOCIATE WAS ASKED TO GO THROUGH AND REDACT IT.

 9              THE COURT:  WHO SUPERVISED THE ASSOCIATE?

10              MS. ESTRICH:  A PARTNER IN OUR NEW YORK OFFICE.

11              THE COURT:  AND THAT INDIVIDUAL'S NAME IS.

12              MS. ESTRICH:  MR. TOM PEESE.

13              THE COURT:  I HAVE HIS DECLARATION.

14              MS. ESTRICH:  SO MR. PEESE SUPERVISED AN ASSOCIATE

15    AND THE ASSOCIATE REDACTED THIS REPORT AND THE ASSUMPTION WAS

16    THAT HE HAD FULLY REDACTED IT.  SO WHAT WAS SENT OUT WAS A

17    REDACTED REPORT.  IT WASN'T AS IF WE SENT A REPORT WITH NO

18    REDACTIONS.

19         HE MADE A MISTAKE.  MOST OF US IN LIFE HAVE.  HE MADE A

20    MISTAKE.  HE LEFT IN A FOOTNOTE THAT SHOULD HAVE BEEN REDACTED.

21    THERE WERE TWO ADDITIONAL PARAGRAPHS WHICH --

22              THE COURT:  IF YOU HAVE A COPY OF IT MAY I SEE THE

23    FOOTNOTE.  CAN YOU JUST POINT IT OUT.

24              MR. ALLEN:  YOUR HONOR, I'VE NEVER SEEN THE DOCUMENT.

25    IS IT POSSIBLE FOR ME TO GET A COPY OF IT?
```

1          MS. ESTRICH:  SURE.  WHAT FOOTNOTE NUMBER IS IT?

2          MR. ZELLER:  WHILE WE ARE DOING THAT YOUR HONOR,

3     MAYBE JUST ONE ISSUE I KNOW HAS BEEN RAISED IS THE SHARING OF

4     INFORMATION BETWEEN US AND APPLE AND NOKIA.  OBVIOUSLY EACH

5     PARTY HAS SOMEWHAT DIFFERENT INTERESTS IN TERMS OF WHAT

6     INFORMATION CAN BE SHARED.

7          SO THERE HAS BEEN A PROCESS AROUND THAT.  JUST SO THE COURT

8     IS AWARE.  I MEAN OBVIOUSLY APPLE AND NOKIA HAVE THEIR OWN

9     INTERESTS IN TERMS OF WHAT INFORMATION IS TRANSMITTED TO THE

10    OTHER.

11         AND AGAIN, BECAUSE WE ARE IN THE MIDDLE OF THAT PART OF IT

12    AND ALL THE OTHER ALLEGATIONS ARE GOING ON, WE DON'T WANT TO BE

13    ACCUSED OF YET MORE PROTECTIVE ORDER VIOLATIONS.

14         SO JUST SO IT'S CLEAR, WE HAVE EVERY INTEREST IN SHARING

15    ANY INFORMATION THAT THEY WANT TO SEE BUT WE JUST NEED TO MAKE

16    SURE THAT ALL PARTIES AGREE TO IT.

17         THE COURT:  WELL, APPLE HAS ASKED, I THINK AT

18    MINIMUM, FOR A LIST OF THE NAMES OF PEOPLE THAT HAVE BEEN

19    IDENTIFIED AS HAVING RECEIVED.

20         MR. ZELLER:  WE HAVE GIVEN THAT.

21         MR. LEE:  YOUR HONOR, WE ASKED SPECIFICALLY, GIVE US

22    THE LIST OF PEOPLE WHO GOT IT FROM THE RECIPIENT TO THE

23    INFORMATION AND WE HAVE GOTTEN 22 RESPONSES.

24         THE FIRST IS LAST FRIDAY WE WERE TOLD THE ORIGINAL LIST

25    OF 60 IS ACTUALLY 90.

 1           AND IN TERMS OF THE FOLLOW-ON, THEY HAVEN'T IDENTIFIED

 2    ANYBODY WHO GOT THE INFORMATION FROM THE RECIPIENTS.

 3           ON THIS -- WELL, WHILE MR. ALLEN AND I HAVE INTERESTS, HE

 4    ACTUALLY CAN'T SEE THE FOOTNOTE BECAUSE IT HAS THE CONFIDENTIAL

 5    INFORMATION OF THE THREE OTHER PARTIES.

 6           THE COURT:  SURE.

 7       ERICSSON AND THE REST WOULD NOT BE TERRIBLY HAPPY WITH

 8    NOKIA SEEING THEIR INFORMATION.  BUT I WOULD LIKE TO SEE THE

 9    INFORMATION.

10           MS. ESTRICH:  I AGREE.

11       IT IS PERHAPS A REFLECTION OF THE CHALLENGE FOR THE

12    ASSOCIATE THAT MY TWO PARTNERS ARE STILL LOOKING FOR THE

13    FOOTNOTE.

14           MR. ALLEN:  YOUR HONOR, IT MIGHT HELP TO JUST

15    MEMORIALIZE THIS.

16       I THINK THE AGREEMENT THAT WE HAVE REACHED COLLECTIVELY IS

17    THAT NOKIA MAY RECEIVE THE INFORMATION WITH THE FINANCIAL TERMS

18    ONLY REDACTED SO THAT WE ARE NOT EXPOSING OTHER THIRD PARTY'S

19    INFORMATION.

20       AND I'M CERTAINLY HERE TO RESPECT THE OTHER INTERESTS OF

21    THIRD PARTIES, THAT'S HOW I FIND MYSELF HERE IN THE FIRST

22    PLACE.

23           THE COURT:  WHILE THAT FOOTNOTE IS BEING IDENTIFIED

24    IF I COULD JUST ASK A FEW MORE QUESTIONS.

25           MS. ESTRICH:  SURE, YOUR HONOR.

```
1              THE COURT:  AS I UNDERSTAND IT THERE WERE ESSENTIALLY

2    TWO PATHS OF INFORMATION FROM QUINN EMANUEL TO INDIVIDUALS AT

3    SAMSUNG.

4        THE FIRST CONCERNED E-MAILS IN WHICH THE INSUFFICIENTLY

5    REDACTED TEECE REPORT WAS ATTACHED.  THE SECOND CONCERNS THE

6    FTP SITE.

7              IS IT CORRECT THAT AT THIS POINT IN TIME WE STILL DON'T

8    KNOW WHICH OF THOSE INDIVIDUALS WHO HAD ACCESS TO THE FTP SITE

9    IN FACT EXERCISED THAT ACCESS RIGHT?

10             MR. BECHER:  I APOLOGIZE, YOUR HONOR, I WAS IN THE

11   PROCESS OF GETTING YOU THE REPORT.

12             MS. ESTRICH:  WHICH OF THE INDIVIDUALS --

13             THE COURT:  CAN YOU TELL ME FOR EXAMPLE, OF THE

14   INDIVIDUALS WHO HAD ACCESS TO THE FTP SITE, DO WE KNOW TODAY

15   WHO ACTUALLY CHOSE TO GO LOOK AT IT?

16             MR. BECHER:  SO WITH RESPECT TO THE QUINN EMANUEL FTP

17   SITE, WE HAVE NOT BEEN ABLE TO IDENTIFY WHO ACCESSED IT FROM

18   THE QUINN EMANUEL SIDE, BUT THE STROZ PROCESS INVOLVES LOOKING

19   TO SEE IF DOCUMENTS WITH AN IDENTICAL HASH VALUE WHICH IS SOME

20   TYPE OF SPECIFIC INDICATOR OF WHAT A DOCUMENT IS THAT THEY CAN

21   USE WHEN THEY ARE SEARCHING, IF THOSE DOCUMENTS ARE ON PEOPLE'S

22   COMPUTERS OR ON PEOPLE'S HARD DRIVES OR IN PEOPLE'S E-MAILS.

23       SO THEY ARE SEARCHING FOR THAT DOCUMENT TO SEE IF IT'S ON A

24   DIFFERENT COMPUTER.

25             AND TO THE EXTENT THAT THEY LOCATE IT, THEY SHOULD BE
```

1    ABLE TO IDENTIFY THE SOURCE

2           THE COURT:  SO YOU ARE SEARCHING FOR AN INDIVIDUAL

3    HASH TAG VALUE TO CONFIRM THAT A COPY OF THE DOCUMENT IS

4    ACTUALLY STORED ON THE LOCAL HARD DRIVE.

5        WHAT I'M INTERESTED IN IS ACCESS ON THE FTP, BECAUSE I

6    DON'T PRETEND TO BE AN EXPERT HERE, BUT MY UNDERSTANDING IS

7    THAT THE HASH TAG VALUES WOULD NOT IDENTIFY MERELY LOOKING AT

8    THE FTP SITE AS OPPOSED TO DOWNLOADING AND SAVING A COPY

9           MR. BECHER:  YES, YOUR HONOR.  THAT'S CORRECT.  MY

10   UNDERSTANDING OF THE RECORD OF WHO ACCESSED THIS PARTICULAR FTP

11   DOES NOT EXIST, SO THERE'S NO INDICATION OF WHO ACCESSED IT.

12       BUT WHAT I AM SAYING IS ANOTHER WAY TO GET TO THAT ANSWER

13   IS ALSO TO DETERMINE IF PEOPLE ACTUALLY HAD IT ON THEIR

14   COMPUTER.

15       IN ADDITION, THERE ARE INTERNET HISTORY SEARCHES WHICH

16   ARE BEING DONE.  THERE ARE FOUR ACTUALLY DIFFERENT TYPES OF

17   INTERNET HISTORY SEARCHES THAT ARE BEING DONE ON, WHAT WE WILL

18   CALL THE TOP 20 CUSTODIANS WHICH IS A SELECT GROUP OF PEOPLE

19   WHO IT WAS CONCLUDED BY STROZ AND BY THE PARTIES, MERITED

20   ADDITIONAL ATTENTION.

21       THEIR INTERNET HISTORY SEARCH IS BEING DONE AND IT MAY BE

22   THAT THOSE INTERNET HISTORY SEARCHES WOULD INDICATE WHETHER

23   SOMEONE ACCESSED SOMETHING BY FTP.

24       I DON'T PURPORT TO BE AN EXPERT IN THAT BUT I UNDERSTAND

25   THE INTERNET HISTORY IS RESULTING IN INFORMATION WELL BEYOND

1    JUST DID SOMEBODY GO TO A PARTICULAR WEBSITE BUT ACTUALLY ALSO

2    CORRELATES WITH SERIOUS ACCESS THAT PEOPLE HAD TWO DOCUMENTS.

3         SO IT MIGHT BE IDENTIFIED THROUGH THAT METHODOLOGY.  IT

4    WOULD OBVIOUSLY BE IDENTIFIED TO THE EXTENT SOMEBODY E-MAILED

5    THE DOCUMENT AFTER DOWNLOADING IT.

6         SO THE METHODS THAT STROZ IS USING ARE VARIED AND THERE'S

7    A WIDE VARIETY OF WAYS THAT SOMETHING COULD BE IDENTIFIED.

8         WITH RESPECT TO DID IT GET ACCESSED AT THE ACCESS POINT,

9    IT'S MY UNDERSTANDING THAT THE LIST OF PEOPLE WHO ACCESSED IT,

10   BECAUSE THE FTP'S HAVE BEEN CHANGED OVER TIME, DOES NOT, IT

11   DOES NOT EXIST.

12        THE COURT:  CAN I ASK, WHO IS SUPERVISING STROZ IN

13   ALL OF THIS AT QUINN EMANUEL?  WHO IS THE MAIN CONTACT POINT?

14        MR. BECHER:  THAT'S ME, YOUR HONOR.

15    AND I HAVE ACTUALLY BEEN THE MAIN CONTACT POINT ALSO FOR

16   THE NOKIA LAWYERS.  WE'VE BEEN IN REGULAR CONTACT.

17    I WAS IN KOREA FOR ONE WEEK WITH ONE OF THE PARTNERS FROM

18   ALSTON & BIRD WHEN WE WERE GETTING EVERYTHING STARTED.  WE

19   HAVE -- WE HAVE CONVERSATIONS SEVERAL TIMES A WEEK.

20        THE COURT:  SO OTHER THAN PRIVILEGE OR WORK PRODUCT,

21   ARE YOU IMPOSING ANY RESTRICTION WHATSOEVER ON WHAT NOKIA CAN

22   LEARN FROM STROZ?

23        MR. BECHER:  WELL YOUR HONOR, THERE'S BEEN A LITTLE

24   BIT OF A CONCERN JUST BECAUSE OF THE FACT THAT THE STIPULATION

25   HASN'T BEEN ENTERED AND THE STIPULATION HAS SOME PROVISIONS

1    ABOUT THE PROTECTION OF THE PRIVILEGE AND WORK PRODUCT.  BUT I

2    HAVE NOT IMPOSED ANY RESTRICTIONS.

3         THERE WAS AN INSTANCE THAT WAS MENTIONED WHERE THERE WAS A

4    QUESTION POSED ABOUT WHAT THE RESULTS WERE, AND I SAID PLEASE

5    LET'S WAIT AND LET'S DISCUSS THAT ON FOLLOW-ON CALL.  THEN I

6    REPORTED BACK THAT STROZ DID NOT YET HAVE ANY RESULTS BECAUSE

7    THINGS WERE STILL PRELIMINARY.

8         BUT I HAVE ONLY BEEN IMPOSING RESTRICTIONS TO THE EXTENT IT

9    CAUSES CONCERN ABOUT THE PRIVILEGE.

10        I HAVE HAD NUMEROUS CONFERENCE CALLS WITH THE STROZ

11   PEOPLE AND THE NOKIA LAWYERS WHERE WE HAVE DISCUSSED ISSUES

12   SUCH AS WHY ARE THERE PROBLEMS WITH SOME OF THE SEARCH TERMS,

13   AND WHAT ARE THE SPECIFICS AS TO HOW THE SEARCH TERMS WORK AND

14   WHY CERTAIN CHARACTERS CANNOT BE SEARCHED.  WHAT DO THESE

15   INTERNET HISTORY SEARCHES DO.  WHAT IS STROZ'S RECOMMENDATION

16   AS TO WHAT IS ADEQUATE.  WOULD IT BE MORE SENSIBLE TO DO THIS

17   PARTICULAR TEST OR THIS PARTICULAR TEST.  IF THERE'S A DEBATE

18   AS TO WHICH TYPE OF SEARCH SHOULD BE DONE.

19        SO THERE HAVE BEEN EXTENSIVE DISCUSSIONS WITH STROZ AND

20   WITH THE NOKIA LAWYERS.

21        NOW I ALSO HAVE BEEN SITTING IN A CONFERENCE ROOM IN

22   KOREA, AS HAVE MY COLLEAGUES WITH STROZ, PROVIDING THEM HARD

23   DRIVES SPEAKING TO CUSTODIANS BRINGING THINGS IN AND ENSURING

24   E-MAILS HAVE BEEN PROVIDED.

25        AND THAT OF COURSE IS NOT SOMETHING WE ALLOWED NOKIA TO

1    BE INVOLVED WITH, AND OUR STIPULATION RECOGNIZED THAT SUCH A

2    PROCESS WOULD TAKE PLACE AND WOULD NOT INVOLVE NOKIA.

3          BUT I BELIEVE I HAVE BEEN ATTEMPTING TO PROVIDE AS MUCH

4    VISIBILITY AS POSSIBLE WITH A CAREFUL REGARD FOR THE FACT THAT

5    I DO NOT WANT AN ALLEGATION TO BE MADE THAT THE PRIVILEGE HAS

6    BEEN WAIVED.

7              THE COURT:  WHAT IS STROZ'S DELIVERABLE IN ALL OF

8    THIS?

9              MR. BECHER:  THEIR DELIVERABLE IS SPECIFIED IN THE

10   STIPULATION.

11         THEY ARE GOING TO DELIVER A LOG THAT ESSENTIALLY PROVIDES

12   AN INDICATION OF WHAT USE OR DISSEMINATION HAS BEEN MADE OF

13   THIS MATERIAL.

14             THE COURT:  SO THEY ARE GOING TO IDENTIFY -- THIS LOG

15   WILL IDENTIFY THOSE COMMUNICATIONS IN WHICH THIS INFORMATION

16   HAS BEEN DISTRIBUTED EITHER INTERNALLY OR EXTERNALLY.

17             MR. BECHER:  YES, YOUR HONOR.

18         AND IT WOULD NOT JUST INCLUDE COMMUNICATIONS WHERE THE

19   SPECIFIC DOCUMENT WAS DISTRIBUTED, BUT BASED UPON THE SEARCH

20   TERMS NEGOTIATED IT WOULD ALSO INCLUDE AN INSTANCE WHERE THERE

21   WAS ACTUALLY A COMMUNICATION AND IN THE BODY OF THE E-MAIL

22   THERE WAS A DISCUSSION OF THE INFORMATION THAT IS AT ISSUE

23   HERE.

24          SO IF SOMEBODY DID NOT CIRCULATE THE DOCUMENT BUT INSTEAD

25   JUST BEGAN TALKING ABOUT THE SPECIFIC TERMS THAT ARE AT ISSUE,

```
1    THAT WOULD BE CAPTURED BY THE SEARCH TERMS WHICH NOKIA

2    NEGOTIATED AND THEY OBVIOUSLY PRESSED AGGRESSIVELY FOR TERMS

3    THEY THOUGHT WOULD BE ALL ENCOMPASSING.

4         AND WE HAVE BEEN QUITE FLEXIBLE IN AGREEING TO SOMETHING

5    THAT RESULTED IN A REASONABLE NUMBER OF HITS AND WE BELIEVE

6    ADDRESS THEIR CONCERNS.

7              THE COURT:  AND ARE YOU, BASED UPON THE RESULTS OF

8    THIS TERM SEARCH, DOING FURTHER INDIVIDUALIZED UNITIZED REVIEW

9    OF THE DOCUMENTS TO SEE WHETHER THEY ARE IN FACT RESPONSIVE TO

10   THE QUESTION?

11             MR. BECHER:  SO THAT IS ACTUALLY STROZ'S JOB TO DO.

12        AND TO THE EXTENT THAT THEY NEED TO ENGAGE PERSONS WHO ARE

13   KOREAN SPEAKERS, THEY WILL BE DOING THAT.

14        THEY ARE GOING TO REVIEW, AND THE STIPULATION SPECIFIES

15   TO THE EXTENT THAT THE DOCUMENT REFLECTS A USE OR DISSEMINATION

16   OF THE INFORMATION IN QUESTION THEN THEY ARE OBLIGATED TO

17   PREPARE A LOG IN WHICH THEY IDENTIFY THE SPECIFICS.

18        IN OUR DISCUSSIONS WITH THE NOKIA LAWYERS, THEY WERE

19   INSISTENT THAT THIS GO BEYOND JUST DISSEMINATION OF THOSE

20   DOCUMENTS OR THAT THIS GO INTO USE ABOUT THE DISCUSSIONS OF THE

21   TERMS AT ISSUE.

22        SO THE STROZ DELIVERABLE IS A LOG.  THEN TO THE EXTENT

23   THAT THOSE DOCUMENTS ARE NON PRIVILEGED THEN WE WILL DISCUSS

24   THE PRODUCTION OF THOSE DOCUMENTS TO THE EXTENT THOSE DOCUMENTS

25   ARE PRIVILEGED THEN THE LOG WILL BE WHAT --
```

1          THE COURT:  WHAT YOU SAY YOU ARE GOING TO DISCUSS THE

2     PRODUCTION OF THE DOCUMENTS ARE YOU PRODUCING THEM OR NOT.

3          MR. BECHER:  SO LET ME JUST CONSULT THE STIPULATION,

4     YOUR HONOR.

5       THE STIPULATION SPECIFICALLY PROVIDES THAT AFTER REVIEWING

6     THE LOG WITH ANY QUINN EMANUEL REDACTIONS, NOKIA SHOULD BE

7     ENTITLED TO REQUEST AND RECEIVE ALL COPIES OF ALL DOCUMENTS

8     FURTHER DISSEMINATING OR REFERENCING OR USING THE DISCLOSED

9     INFORMATION, PROVIDING THE COPIES OR DOCUMENTS ARE REDACTED, AT

10    LEAST IN THE FIRST INSTANCE TO ELIMINATE ANY CLAIMED

11    ATTORNEY-CLIENT PRIVILEGED INFORMATION, ATTORNEY WORK PRODUCT

12    OR THIRD PARTY CONFIDENTIALITY INFORMATION.

13        AND THEN NOKIA STATES IN HERE THAT THEY RESERVE THE RIGHT

14    OF COURSE TO SEEK MORE.

15        SO YES, IF NOKIA SEEKS THE DOCUMENTS AND THEY ARE NON

16    PRIVILEGED DOCUMENTS THEN WE WILL PROVIDE THEM WITH THE

17    DOCUMENTS.

18          THE COURT:  ARE YOU CLAIMING A PRIVILEGE OVER ANY

19    COMMUNICATION ABOUT THIS MATERIAL BETWEEN A QUINN EMANUEL

20    ATTORNEY AND A SAMSUNG EMPLOYEE?

21          MR. BECHER:  YES.  THERE ARE COMMUNICATIONS,

22    YOUR HONOR, THAT TALK ABOUT --

23          THE COURT:  SO WHAT'S GOING TO BE PRODUCED IF YOU ARE

24    GOING TO BASICALLY THROW THE PRIVILEGE OVER EVERY DOCUMENT

25    BETWEEN QUINN EMANUEL AND SAMSUNG ON THIS?

```
 1              MR. BECHER:  BY MATERIAL, THE COMMUNICATIONS ABOUT
 2     THE MATERIAL, THERE ARE COMMUNICATIONS ABOUT THE TEECE REPORT
 3     IN GENERAL NOT DISCUSSING THE TERMS AT ISSUE, AND THERE ARE
 4     TALK -- THERE'S DISCUSSION THERE OF STRATEGY AND THINGS OF THAT
 5     NATURE.
 6              WHAT WOULD BE PRODUCED INTERNAL COMMUNICATIONS, THAT ARE
 7     BETWEEN BUSINESS PEOPLE WHERE THERE IS NOT A PRIVILEGE AT
 8     ISSUE.
 9              OBVIOUSLY WHEN THE LOG IS CREATED THE WAY THIS PROCEDURE
10     WORKS IS THAT WE LOOK AT IT AND WE IDENTIFY WHAT IS SUBJECT TO
11     A PRIVILEGE AND WHAT IS NOT.  SO IT WOULD BE --
12              THE COURT:  SO STROZ ISN'T SUPERVISING THAT PORTION
13     OF THE WORK FLOW THAT'S SOMETHING QUINN IS HANDLING, CORRECT?
14              MR. BECHER:  WELL, THE WAY IT WORKS IS THAT STROZ
15     FRIEDBERG IS GOING TO PREPARE THE LOG AND THEN SAMSUNG IS
16     ALLOWED TO REVIEW THE LOG AND REDACT ANY ATTORNEY CLIENT
17     PRIVILEGE INFORMATION.  BUT NOKIA'S ATTORNEYS ARE NOTIFIED IF
18     SUCH A REDACTION TAKES PLACE.
19              SO THEY ARE ON NOTICE THAT WE HAVE TAKEN ISSUE WITH
20     SOMETHING THAT STROZ HAS PLACED IN THE LOG.  THE PEOPLE DOING
21     THIS FOR STROZ WILL PROBABLY NOT JUST BE ATTORNEYS BUT THERE
22     ARE ALL KINDS OF TECHNICIANS AND SPECIALISTS.
23              I DON'T KNOW WHO EXACTLY THEY ARE ASSIGNING TO DO THE LOG,
24     BUT YES, WE HAVE A RIGHT TO REVIEW THE LOG, BUT IF THERE'S
25     SOMETHING THAT REVEALS ATTORNEY-CLIENT PRIVILEGE THEN THE NOKIA
```

1        LAWYERS WOULD KNOW THAT WE HAVE TAKEN ISSUE.

2               THE COURT:  AND YOU ARE NOT CLAIMING PRIVILEGE OVER

3        THE FACT THAT YOU HAD A DISCUSSION WITH SAMSUNG ABOUT THE

4        SUBSTANCE OF THE UNREDACTED MATERIAL.

5               WHAT I'M TRYING TO FIGURE OUT IS IF YOU ARE CLAIMING

6        PRIVILEGE OVER SOME OF YOUR COMMUNICATIONS WITH TEECE WITH

7        SAMSUNG BUT NOT OTHERS, WHAT LINE ARE YOU DRAWING?

8               MR. BECHER:  WELL, I THINK RIGHT NOW THE

9        COMMUNICATIONS WE HAVE IDENTIFIED ARE COMMUNICATIONS WHERE THE

10       REPORTS REPORT WAS TRANSMITTED THEN THERE WAS PERHAPS SOME

11       DISCUSSION OF OTHER ISSUES TOTALLY UNRELATED TO THE NOKIA

12       LICENSE IN THE BODY OF THE E-MAIL.

13              AND WE ARE CLAIMING PRIVILEGE OVER THAT.  WE HAVE YET TO

14       SEE ANY INSTANCE WHERE THERE WAS ACTUALLY A COMMUNICATION

15       BETWEEN QUINN EMANUEL AND SAMSUNG WHERE THERE WAS ANY

16       DISCUSSION OF THE CONFIDENTIAL TERMS OF THE NOKIA LICENSE.

17              SO THERE'S BEEN NO NEED TO ADDRESS WHERE THAT LINE WOULD

18       BE DRAWN.

19              OBVIOUSLY AS THIS PROCESS IS ONGOING, DOCUMENTS INTERNAL

20       TO SAMSUNG WILL BE IDENTIFIED AND WILL BE PRESENTED WITH ISSUES

21       OF WHETHER A PARTICULAR COMMUNICATION IS OR IS NOT PRIVILEGED

22       IN TERMS OF INTERNAL THINGS, COMMUNICATIONS WITH OTHER COUNSEL,

23       BUT AT THIS POINT THE ISSUE REALLY HASN'T PRESENTED ITSELF IN

24       TERMS OF THE CONTENT OF ANY E-MAIL BECAUSE THERE HAS NOT BEEN

25       ANY COMMUNICATION WHERE WE'VE ACTUALLY SAID LOOK, THESE ARE THE

1    TERMS OR WE DISCUSSED THOSE CONFIDENTIAL TERMS EXCEPT IN THE

2    ATTACHMENT TO AN E-MAIL.  AND WE HAVE OBVIOUSLY DISCLOSED THAT

3    IN OUR PRIVILEGE LOG FORMAT.

4         THE COURT:  SO YOU HAVE BEGUN THIS REVIEW THEN?

5         MR. BECHER:  WE HAVE BEGUN THE REVIEW, YES.

6       THE REVIEW -- SO WHAT'S BEEN GOING ON IN KOREA IS I BELIEVE

7    THIS IS THE FOURTH WEEK THAT STROZ HAS BEEN THERE.  THEY HAVE

8    BEEN DOING THESE INTERNET HISTORY SEARCHES, THEY HAVE BEEN

9    DOING WHAT THEY CALL THE DEEP DIVE REVIEW ON THE 20 CUSTODIANS.

10        THEY HAVE JUST STARTED THE E-MAIL SEARCHING BECAUSE OF

11   THE FACT THAT THERE WAS A SOMEWHAT LENGTHY NEGOTIATION OVER THE

12   SEARCH TERMS.

13        I WOULD NOTE THOUGH THAT WHAT HAPPENED IN THAT

14   NEGOTIATION WAS AT ONE POINT TERMS THAT HAVE BEEN PROPOSED

15   RESULTED IN OVER A HUNDRED THOUSAND DOCUMENTS, MANY OF WHICH WE

16   REALIZE WERE COMPLETELY IRRELEVANT.

17        SO WE WENT BACK AND SAY WE ARE GETTING THIS PARTICULAR

18   RESULT BUT IT'S BECAUSE OF THIS PARTICULAR TERM AND WE WERE

19   ABLE TO REDUCE IT IN ORDER TO COME UP WITH A MORE MANAGEABLE

20   UNIVERSE.

21        THE COURT:  AND YOU BELIEVE YOU TOLD ME EARLIER THAT

22   YOU HAVE INVOLVED APPLE IN THAT TERMED NEGOTIATION FOR

23   SATISFACTORILY DAYS IF NOT WEEKS NOW?

24        MR. BECHER:  YES.  APPLE WAS NOTIFIED LAST WEEK OF

25   THE TERM.

```
 1                THE COURT:  WHEN LAST WEEK?

 2                MR. BECHER:  ONCE -- I BELIEVE IT WAS ON THURSDAY.

 3                MR. LEE:  IT WAS FRIDAY AFTERNOON AFTER THE CLOSE OF

 4    BUSINESS EAST COAST TIME.

 5                MR. BECHER:  THAT'S FINE, MR. LEE, I AGREE WITH THAT.

 6                THE COURT:  OKAY.

 7            SO YOU SENT APPLE TERMS -- AFTER -- IF I COULD, PLEASE.

 8    YOU SENT APPLE THESE TERMS AFTER THE CLOSE OF BUSINESS ON

 9    FRIDAY?

10                MR. BECHER:  I DON'T REMEMBER THE EXACT TIME OF DAY

11    ON FRIDAY, BUT YES THEY WERE SENT AFTER WE HAD REACHED

12    AGREEMENT WITH NOKIA BECAUSE OF THE FACT THAT WE WERE RUNNING

13    SEARCHES WITH STROZ AND WE WERE GETTING HIT COUNTS, WE WERE

14    FINDING HUNDREDS, THOUSANDS, 120,000 HITS RESULTING FROM

15    PARTICULAR TERMS AND WE WERE DETERMINING WHAT WOULD BE A MORE

16    EFFECTIVE SEARCH.

17            SO YES, ONCE THE TERMS WERE AGREED UPON THEN WE SENT THEM

18    TO APPLE.

19                THE COURT:  AND EVEN THOUGH YOU REACHED AN AGREEMENT

20    WITH NOKIA, I TAKE IT BY SHARING WITH APPLE YOU ARE INVITING

21    THEM TO CHANGE THE TERMS AND NEGOTIATE ADDITIONAL TERMS?

22                MR. BECHER:  WE ESSENTIALLY INVITED THEM TO PROVIDE

23    SUGGESTIONS FOR ADDITIONAL TERMS.

24            AND WE THINK, AND HOPEFULLY APPLE WILL AGREE, THAT NOKIA

25    HAS DONE A VERY GOOD JOB OF NEGOTIATING ON BEHALF OF ITS
```

1    LICENSE.  THE TERMS DO INCLUDE APPLE IN THEM.

2         YES, WE HAVE INVITED APPLE TO COME AND WE HAVE INVITED

3    APPLE TO BE THE BENEFICIARY OF THIS WHOLE PROCESS BUT THEY HAVE

4    NOT OBVIOUSLY EXPRESSED AN INTEREST IN THAT PER SE.

5         THE COURT:  IS STROZ INTERVIEWING ANY OF THE

6    INDIVIDUALS WHO RECEIVED THIS INFORMATION?

7         MR. BECHER:  STROZ IS NOT INTERVIEWING THE

8    INDIVIDUALS WHO RECEIVED THIS INFORMATION.

9         THERE WAS SOME DISCUSSION AS TO WHETHER INTERVIEWS WOULD

10   TAKE PLACE OR WHETHER ANOTHER METHOD WOULD BE USED, AND THE

11   PARTIES CONCLUDED THAT DOING THIS INTERNET HISTORY SEARCH AS

12   WELL AS THE E-MAIL ARCHIVE SEARCH WAS AN EFFECTIVE WAY TO GET

13   TO THE ULTIMATE QUESTION AS OPPOSED TO RELYING UPON

14   RECOLLECTIONS FROM A LONG TIME AGO ABOUT THINGS THAT MAY HAVE

15   BEEN INCONSEQUENTIAL TO PEOPLE.

16        SO THE DETERMINATION WAS MADE THAT WE WOULD GO TO THE

17   DATA AS OPPOSED TO HAVING THEM CONDUCT INTERVIEWS.

18        THEY ARE ELECTRONIC DISCOVERY VENDOR, SO OBVIOUSLY THEIR

19   STRONG SUIT IS TO DO THE ELECTRONIC ANALYSIS.

20        THEY HAVE BEEN GIVEN ACCESS TO SAMSUNG EMPLOYEES AND

21   REPRESENTATIVES TO THE EXTENT THAT THEY HAVE HAD QUESTIONS

22   ABOUT HOW CERTAIN MECHANISMS WORK.  HOW THE DECRYPTION, WORKS

23   HOW THE IMAGING WORKS.

24        AND JUST TO GIVE YOU A SENSE, YOU RECEIVE THE LAPTOP.

25   THE LAP TOPS ARE ENCRYPTED AND THEN STROZ TAKES AN IMAGE.  IT

1    TAKES SEVERAL HOURS FOR STROZ TO TAKE THE IMAGE, THEN IT HAS TO

2    PROVIDE THE ENCRYPTED IMAGE TO THE SAMSUNG EMPLOYEE WHO

3    CONTROLS THE PROPRIETARY ENCRYPTION TECHNOLOGY.

4         THAT HAS TO RUN WHICH TAKES SEVERAL HOURS OR A DAY

5    SOMETIMES.

6         SO THERE'S A LOT OF WORK INVOLVED IN DOING THIS.  I KNOW

7    IT SEEMS LIKE IT'S BEEN GOING ON FOR A LONG TIME AND OBVIOUSLY

8    THE TIME PERIOD SPEAKS FOR ITSELF.

9         BUT THIS IS A VERY DEMANDING, VERY DIFFICULT PROCESS WITH

10   LOTS OF MECHANICAL STEPS THAT UNFORTUNATELY ARE NECESSARY TO

11   GET TO THE POINT WHERE YOU CAN DO THE SEARCHING WHERE YOU CAN

12   PREPARE THE LOG.

13            THE COURT:  BUT AS I UNDERSTAND IT ONCE ALL THIS WORK

14   IS DONE AND ONCE STROZ HAS TENDERED ITS DELIVERABLE, ITS

15   REPORT, NOTHING IN THAT REPORT WILL TELL NOKIA, APPLE, THIS

16   COURT, ANYTHING THAT ANY OF THESE INDIVIDUALS MIGHT HAVE SHARED

17   IN AN INTERVIEW, CORRECT?

18        IN OTHER WORDS, THERE'S NO COMPONENT TO ANY OF THIS

19   INVESTIGATION THAT WOULD HAVE AN INDEPENDENT PARTY OR PARTY

20   ASSOCIATED WITH EITHER NOKIA OR APPLE, SIT ANY ONE OF THESE 80,

21   90 PEOPLE AND SAY WHAT DID YOU DO WITH THIS STUFF ONCE YOU GOT

22   IT?

23            MR. BECHER:  WELL IT'S ENVISIONED THAT WHAT WILL

24   HAPPEN IS THAT ONCE THIS INFORMATION IS RECEIVED IS THAT

25   THERE'S A SECOND STEP OF THE PROCEDURE WHERE THERE'S AN

```
 1        OPPORTUNITY TO ASK THE COURT TO ALLOW ADDITIONAL DISCOVERY.

 2             TO THE EXTENT, FOR EXAMPLE, YOUR HONOR FEELS THAT THERE'S

 3        NO INDICATION OF ANY E-MAILS DISCUSSING THE INFORMATION OR

 4        THERE'S NO INDICATION OF ANY DOWNLOADS OR PEOPLE DID NOT HAVE

 5        THE DOCUMENTS ON THEIR COMPUTERS, THEN OBVIOUSLY YOUR HONOR

 6        WOULD HAVE TO MAKE A JUDGMENT AS TO WHETHER DISCOVERY IS

 7        WARRANTED IN SUCH A SITUATION.

 8             TO THE EXTENT THAT IT REVEALED THAT AN INDIVIDUAL WAS

 9        COMMUNICATING ABOUT THE SPECIFIC TERMS THEN YOUR HONOR WOULD

10        HAVE TO MAKE THAT JUDGMENT.

11             SO THE STROZ RESULT WOULD PROVIDE A VERY CLEAR INDICATION

12        OF WHO, IF ANYONE, WAS DOING ANYTHING WITH THIS INFORMATION.

13        WE KNOW WHO RECEIVED THE INFORMATION.  AND THEN THERE'S AN

14        OPPORTUNITY ONCE THAT INFORMATION IS AVAILABLE TO ASK FOR

15        FURTHER DISCOVERY AS NECESSARY.

16             THE COURT:  ALL RIGHT.

17             MS. ESTRICH:  AND I SHOULD JUST NOTE THAT THE PARTIES

18        DO NOT AGREE.

19             YOUR HONOR, I WANT TO CORRECT MYSELF.  I BELIEVE I

20        MISSTATED THE FOOTNOTE WAS IN THE ITC MATTER.  I HAVE TWO

21        PARAGRAPHS HERE I CAN SHOW YOU.

22             THE COURT:  HAND IT TO MR. RIVERA, IF YOU WOULD.

23             THE CLERK:  I CAN TAKE IT.

24             MS. ESTRICH:  THANK YOU.

25             THE COURT:  ALL RIGHT.
```

```
1           SO MS. ESTRICH, LET ME MAKE SURE -- I DO NEED TO WRAP THIS

2     UP BECAUSE I HAVE A TRIAL THAT RETURNS THIS AFTERNOON AS WELL.

3           ARE YOU PROPOSING THEN THAT APPLE RECEIVED NOTHING MORE

4     AND NOTHING LESS THAN WHAT NOKIA HAS AGREED TO IN THE

5     STIPULATION?

6           MS. ESTRICH:  NOT NECESSARILY, YOUR HONOR.

7           WE ARE PROPOSING THAT APPLE COME TO US IF IT HAS

8     ADDITIONAL SEARCH TERMS WE COULD ADD THOSE SEARCH TERMS.  IF IT

9     HAS ADDITIONAL REQUESTS IT SHOULD MAKE THOSE REQUESTS AND WE

10    WILL CONSIDER THEM.

11          WE BELIEVED GOING IN THAT AFTER EXTENSIVE NEGOTIATION WE

12    HAD ARRIVED AT A STIPULATION WHICH WOULD INDEED PRODUCE A

13    BASIS, HOPEFULLY A BASIS FOR CONCLUDING THE INVESTIGATION, BUT

14    IF NOT THAT AT LEAST A BASIS FOR NEXT STEPS.

15          WE HAVE INVITED APPLE TO PARTICIPATE IN THAT PROCESS.  WE

16    HAVE INVITED THEM TO OFFER SEARCH TERMS.  WE HAVE TAKEN THE

17    POSITION THAT THIS INVESTIGATION IS AN EFFICIENT AND EFFECTIVE

18    WAY HOPEFULLY TO ADDRESS OR NARROW THE SCOPE OF ANY FURTHER

19    STEPS TO AVOID A FULL SATELLITE LITIGATION.

20          SO THAT IT WOULD BE OUR HOPE AND WE WOULD WELCOME THAT

21    ONCE THIS PROCESS IS COMPLETED, IF EITHER APPLE OR NOKIA HAVE

22    ADDITIONAL REQUESTS, EITHER WE'LL AGREE TO THEM OR IF WE DON'T

23    AGREE TO THEM WE WILL COME TO YOU AND PRESENT THEM.

24          BUT THAT WE WOULD SIMPLY ASK TO BE ALLOWED TO FINISH THIS

25    PROCESS WITH APPLE'S INPUT AND THEN TAKE THE NEXT STEP OF
```

1    DETERMINING WHETHER ANY FURTHER DISCOVERY IS WARRANTED.

2            THE COURT:  ALL RIGHT.  THANK YOU.

3        MR. LEE, I WILL GIVE YOU ONE FURTHER CHANCE FOR REBUTTAL

4    BUT I DO NEED TO BRING THIS TO A HEAD.

5            MR. LEE:  I WILL TRY TO BE BRIEF, YOUR HONOR.

6        I THINK, YOUR HONOR, THAT THE DISCUSSION YOU HAVE HEARD

7    THIS MORNING EMPHASIZES THE NEED FOR DISCOVERY.  AFTER 90 DAYS

8    SAMSUNG WON'T CONCEDE A VIOLATION.  THEY WON'T CONCEDE THE

9    ACCURACY OF THE DECLARATION YOUR HONOR REFERRED TO.

10        IN RESPONSE TO YOUR QUESTION THEY HAVE SAID THEY

11   INTERVIEWED THAT EXECUTIVE MULTIPLE TIMES SINCE JULY.  IF WHAT

12   WAS SAID IN THAT DECLARATION WHICH IS VERY SPECIFIC ABOUT

13   MISUSE AND IT WERE NOT TRUE, YOUR HONOR WOULD KNOW IT'S NOT

14   TRUE.

15        SO WE HAVE FOR ALL OF THIS WE HAVE BEEN INVITED TO

16   PARTICIPATE IN THE PARTY WE REALLY HAVEN'T.  AND WE HAVE A

17   DIFFERENCE SET OF IMPERATIVES YOUR HONOR THAN NOKIA'S.

18        BUT THE FACT THAT EVEN TODAY WE CAN'T AGREE ON A

19   VIOLATION, A MISUSE, IT'S AN INDICATION OF WHY WE NEED THE

20   COURT BEHIND US.

21        THE SECOND POINT IS THE STIPULATION HAS BEEN NEGOTIATED

22   BETWEEN MR. BECHER AND MR. ALLEN.  IT'S NOT ACCEPTABLE TO US.

23   WE ARE NOT SURE THAT STROZ AS A VENDOR IS ACCEPTABLE TO US.  I

24   UNDERSTAND THAT STROZ MAY HAVE DONE DOCUMENT SEARCHES FOR NOKIA

25   AND SAMSUNG AS PART OF THIS CASE EARLIER.

1    WE HAD NO INVOLVEMENT IN PICKING THEM.  I HAVE NOTHING

2    BAD TO SAY ABOUT THEM, BUT WE DIDN'T PICK THEM.  WE HAVE AT

3    LEAST THREE OTHER PARTIES WHO HAVE CONFIDENTIAL INFORMATION

4    THAT ARE AT ISSUE.  AND UNLIKE NOKIA WHICH HAS THE MISUSE

5    THAT'S DESCRIBED IN THE DECLARATION, WE HAVE WHAT WE BELIEVE IS

6    MISUSE IN ONGOING PROCEEDINGS.

7    SO LET'S ME GO TO THAT POINT THIRD, YOUR HONOR.

8    SO YOUR HONOR UNDERSTANDS OUR ARGUMENT.  WHAT HAS

9    HAPPENED IS THIS:  WE MADE DISCLOSURES IN THE ITC AND HERE.

10   THAT INFORMATION HAS UNDISPUTEDLY BEEN SENT, AS YOUR HONOR

11   KNOWS, THAT WAS ALL OVER THE WORLD.

12   WE KNOW THAT THAT INFORMATION FROM THESE DISCLOSURES WAS

13   USED TO CRAFT ARGUMENTS AT THE ITC, I'M NOW RESPONDING TO

14   MR. ZELLER'S STATEMENT.

15   THE ITC ISSUED AN OPINION ON THE LICENSING NEGOTIATIONS

16   THAT SPECIFICALLY ACCEPTED SAMSUNG'S ARGUMENT IN WHICH THIS

17   CONFIDENTIAL INFORMATION WAS USED.

18   THAT DECISION IT'S THE U.S. TRADE REPRESENTATIVE HAS

19   DISPROVED IT, THAT DECISION NOW HAS BECOME A FOCUS OF THE 630

20   CASE IN THE EXPERT PHASE.  AND IN OTHER FOREIGN PROCEEDINGS.

21   AND IT'S PARTICULARLY EGREGIOUS IN THE FOREIGN

22   PROCEEDINGS BECAUSE AS YOUR HONOR KNOWS THERE'S NOT DISCOVERY

23   IN MANY FOREIGN PROCEEDINGS.  THOSE FOREIGN LAWYERS WHO GOT

24   THAT INFORMATION HAVE NO ACCESS TO THEM.

25   THESE LICENSE AGREEMENTS HAVE NEVER BEEN PRODUCED IN THE

1    FOREIGN PROCEEDINGS.  THEY HAVE THAT INFORMATION ONLY AS A

2    RESULT OF THE VIOLATIONS OF THE PROTECTIVE ORDER.

3         THE STIPULATIONS ALSO IS NOT ACCEPTABLE YOUR HONOR

4    BECAUSE MR. BECHER WAS VERY CAREFUL.  BUT ALL OF THE EVIDENCE

5    OF THE MISUSE OF THIS IS GOING TO BE, MOST OF IT'S GOING TO BE

6    IN COMMUNICATIONS BETWEEN SAMSUNG EMPLOYEES AND LAWYERS.

7    THAT'S HOW WE ARE GOING TO FIGURE OUT WHAT USE WAS MADE OF IT.

8    WE DON'T THINK THAT'S PRIVILEGED.

9         NOW, WE ARE NOT A PARTY TO THIS STIPULATION.  IF STROZ

10   REALLY IS INDEPENDENT AND THEY LOOK AT THE INFORMATION, THAT'S

11   NOT PRIVILEGED.  CERTAINLY NOT PRIVILEGED AS TO US WHO IS NOT A

12   PARTY TO THIS STIPULATION AND HASN'T SIGNED IT.

13        THE LAST TWO POINTS, YOUR HONOR, ARE THESE:  YOUR HONOR

14   MENTIONED THE SEALING ISSUES FROM LAST SUMMER.  YOUR HONOR WILL

15   RECALL AT THE UNDERSTAND OF THE DAY WHEN JUDGE KOH FOUND SOME

16   THINGS SEALABLE AND SOME NOT, ONE OF THE THINGS SHE SAID WAS

17   SEALABLE WERE LICENSE TERMS OF LICENSES.  THAT NEVER BECAME AN

18   ISSUE.

19        AND DURING THE TRIAL SHE WAS SUFFICIENTLY CONCERNED ABOUT

20   IT THAT IT WAS PUT UP ON THE SCREEN THAT ONLY THE JURORS COULD

21   SEE AND THE PUBLIC WAS PRECLUDED FROM SEEING.

22        SO THE VERY INFORMATION THAT COURT HAS HELD AS

23   CONFIDENTIAL AND FOR THOSE COMPELLING REASONS DID NOT LET THE

24   PUBLIC SEE IT DURING THE TRIAL HAS NO BEEN DISSEMINATED ALL

25   OVER THE WORLD.

1        AND THE LAST POINT IS THIS:  THIS MAY SEEM MORE GRANULAR

2    THAN THE COURT WANTS TO CONSIDER, BUT I THINK IT REALLY WILL

3    INDICATE TO YOU THE REASON WE NEED THE COURT'S AUTHORITY BEHIND

4    A DISCOVERY PROCESS.

5        MS. ESTRICH AND MR. BECHER MADE REPRESENTATIONS TO YOU

6    ABOUT THIS DECEMBER 2012 DISCLOSURE.  YOUR HONOR, I WOULD JUST

7    DRAW YOUR ATTENTION TO THE AUGUST 16TH, 2013 LETTER THAT'S

8    BEFORE YOU FROM MR. BECHER AND TO THE SECOND PARAGRAPH ON THE

9    SECOND PAGE.  THIS IS THE FIRST TIME THEY ADDRESS THE ISSUE AND

10    WHAT YOU WILL SEE YOUR HONOR ARE TWO THINGS.

11        THEY NEVER MENTION THE MICROUNITY LITIGATION, BUT MORE

12    IMPORTANTLY, NOTWITHSTANDING SAMSUNG'S EFFORT TODAY TO MAKE

13    THIS INADVERTENT DISCLOSURE OF INCONSEQUENTIAL INFORMATION,

14    THAT PARAGRAPH MR. BECHER SAID SAMSUNG IMMEDIATELY RECOGNIZED

15    THAT IT SHOULD HAVE BEEN REDACTED, IMMEDIATELY RECOGNIZED THAT

16    IT SHOULD NOT HAVE BEEN TRANSMITTED AND NEITHER THE LAWYER OR

17    ANYBODY ELSE DISSEMINATED IT, RIGHT.

18        THAT'S DECEMBER 2012.  SO WITHOUT A DOUBT THEY KNOW IT

19    HASN'T BEEN REDACTED, WITHOUT A DOUBT THEY KNOW IT'S

20    CONFIDENTIAL.

21        WHAT HAPPENS AFTER DECEMBER 2012 AS YOUR HONOR KNOWS,

22    MORE DISCLOSURES.  HOW COULD THAT HAPPEN.

23        AND THEN LASTLY YOUR HONOR ON THE AUTO DELETE FEATURE,

24    JUST SO WE ARE CLEAR ON THE DATES, WHAT THEY SAY IS THEY PUT

25    THIS PROCESS IN PLACE IN AUGUST OF LAST YEAR, AUGUST 2012 GOING

1    FORWARD.

2         THAT MEANS THAT EVERYTHING THAT WAS SUBJECT TO THE AUTO

3    DELETE FEATURE BETWEEN LAST MARCH OR THIS FIRST OCCURRED IN

4    AUGUST IS POTENTIALLY GONE.

5              THE COURT:  ALL RIGHT.

6         MR. ALLEN, I WILL GIVE YOU THE FINAL WORD, SIR.

7              MR. ALLEN:  I WILL TRY TO BE BRIEF.

8         AS LAWYERS SOMETIMES SAY.

9         LET ME SPEAK FIRST YOUR HONOR TO THE QUESTION OF WHETHER

10   OR NOT FOLKS WILL BE INTRUDE.  I AGREE WITH MR. BECHER'S

11   DESCRIPTION THAT WE CERTAINLY FORESEE THERE WILL BE ADDITIONAL

12   DISCOVERY AT THE PRECLUSION OF THIS.

13        THIS WAS A PROVISION INITIALLY IMBEDDED IN THE PROCESS,

14   NOT THE STIPULATION, BUT THE PROCESS THAT CALLED FOR STROZ TO

15   INTERVIEW THE PEOPLE WHO HAD RECEIVED THE DATA.

16        THERE WAS NOT A PROVISION, AND IN FACT THERE WAS A GREAT

17   TUSSLE ABOUT WHOSE HARD DRIVES WOULD ACTUALLY BE IMAGED.  IT

18   SOUNDS, TO HEAR IT NOW, LIKE THIS WAS A BIG ROCK ROLLING DOWN

19   THE HILL AND THERE WAS NO STOPPING IT.

20        AS SOMEONE WHO WAS INVOLVED IN PUSHING THE ROCK UP THE

21   HILL, I SORT OF SAW IT FROM A DIFFERENT PERSPECTIVE.

22        THE INITIAL OFFER WAS TO IMAGE THE HARD DRIVES OF 17 OF

23   THESE PEOPLE.  AND IN ORDER TO GET THE OTHER HARD DRIVES

24   IMAGED, TO GET THAT AGREEMENT, WE HAD TO TRADE THE INTERVIEWS.

25        SO WE HAD TO AGREE THAT THEY DIDN'T HAVE TO INTERVIEW THE

1       PEOPLE IN ORDER TO IMAGE THOSE HARD DRIVES.

2           STROZ MAY NOW SAY THEY DON'T NEED TO INTERVIEW, WELL I

3       DON'T KNOW IF THEY'RE GOING TO SAY THAT OR NOT, BUT I WAS

4       INVOLVED IN THE TRADING AND THAT'S HOW THAT'S HAPPENED.

5           WHILE THIS IS MOVING FORWARD QUICKLY, THERE IS STILL ONE

6       OR TWO ISSUES THAT ARE OUTSTANDING ABOUT THIS STROZ REVIEW.

7       AND ONE OF THEM IS THE DATE RANGE THAT THEY ARE GOING TO

8       SEARCH.

9           WE HAVE ASKED THAT THE DATE RANGE SHOULD BE THE FIRST

10      DATE THAT THE INFORMATION WAS PRODUCED IN THIS CASE SO THAT WE

11      GOT THE BEGINNING DATE, AND THE SECOND OR THE END DATE OUGHT TO

12      BE THE DATE THAT THE HARD DRIVES WERE IMAGED.

13          I BELIEVE QUINN'S POSITION AT LEAST ON THE END DATE HAS

14      BEEN THAT THEY SHOULDN'T HAVE TO SEARCH HARD DRIVES AFTER WE

15      FILED OUR MOTION.

16          AND THE INFORMATION STILL RESIDES ON THE SYSTEM, SO WE

17      DON'T HAVE ANY GOOD JUSTIFICATION FOR THAT.

18          WE HAD A LOT OF NEGOTIATION LAST THURSDAY AND FRIDAY

19      ABOUT WHETHER OR NOT THE SEARCH TERMS WOULD ALSO BE APPLIED IN

20      KOREAN WHICH SEEMED TO BE COMMON SENSE TO ME BUT I HAVE NOT YET

21      HEARD AN AGREEMENT FROM THEM THAT THEY WILL IN FACT AGREE TO DO

22      THAT.

23          WE HAD TO RETAIN A TRANSLATOR.  WE HAVE DONE THAT AND WE

24      NOW HAVE THE TRANSLATION AND WE WILL PROVIDE THOSE AFTER COURT

25      TO TODAY TO SAMSUNG OR TO SAMSUNG'S COUNSEL.

1          LAST POINT, I HEARD SEVERAL TIMES TODAY THAT EVERYBODY IS

2     UNDER THIS ARCHIVAL SYSTEM THAT WAS IMPOSED IN AUGUST OF 2012.

3     I HAVE BEEN INFORMED ONLY THAT THE PEOPLE IN KOREA ARE UNDER

4     THE ARCHIVAL SYSTEM.  THERE ARE CUSTODIANS WHO RECEIVE THIS

5     INFORMATION IN THE UNITED STATES AS WELL AND AS WE NOW KNOW IN

6     OTHER SAMSUNG LOCATIONS.

7          IT'S NEVER BEEN REPRESENTED TO ME THAT THEY WERE UNDER

8     SOME SORT OF AN ARCHIVE SYSTEM.

9          THANK YOU, YOUR HONOR.

10          THE COURT:  ALL RIGHT.  THANK YOU.

11          ALL RIGHT.  I'M GOING TO TAKE THIS MATTER UNDER SUBMISSION.

12     YOU HAVE GIVEN ME A LOT TO THINK ABOUT.  YOU WILL GET AN ORDER

13     FROM ME SHORTLY.

14          HAVE A GOOD DAY.

15          (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10  THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11  FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12  CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14  CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16  SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17  HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18  TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24  _____

25  SUMMER A. FISHER, CSR, CRR
    CERTIFICATE NUMBER 13185            DATED: 10/3/13