UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC., A CALIFORNIA CORPORATION, | ) | C-11-01846 LHK |
| | ) | |
| | ) | SAN JOSE, CALIFORNIA |
| PLAINTIFF, | ) | |
| | ) | OCTOBER 17, 2013 |
| VS. | ) | |
| | ) | PAGES 1-200 |
| SAMSUNG ELECTRONICS CO., LTD., A KOREAN BUSINESS ENTITY; | ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., A NEW YORK CORPORATION; | ) | |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, A DELAWARE LIMITED LIABILITY COMPANY, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE

APPEARANCES ON NEXT PAGE

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

 1

 2     A P P E A R A N C E S:

 3     FOR PLAINTIFF          MORRISON & FOERSTER
       APPLE:                 BY:   HAROLD J. MCELHINNY
 4                                  RACHEL KREVANS
                                    NATHANIEL B. SABRI
 5                            425 MARKET STREET
                             SAN FRANCISCO, CALIFORNIA  94105
 6
                             BY:   CHRISTOPHER L. ROBINSON
 7                           755 PAGE MILL ROAD
                             PALO ALTO, CALIFORNIA  94303
 8

 9     FOR COUNTERCLAIMANT    WILMER, CUTLER, PICKERING,
       APPLE:                 HALE AND DORR
10                            BY:   WILLIAM F. LEE
                                    LAUREN B. FLETCHER
11                                  KEVIN S. PRUSSIA
                             60 STATE STREET
12                           BOSTON, MASSACHUSETTS  02109

13

14     FOR THE DEFENDANT:     QUINN, EMANUEL, URQUHART,
                             OLIVER & HEDGES
15                            BY:   WILLIAM C. PRICE
                                    JON C. CEDERBERG
16                                  ANTHONY P. ALDEN
                             865 SOUTH FIGUEROA STREET
17                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
18
                             BY:   VICTORIA F. MAROULIS
19                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
20                           REDWOOD SHORES, CALIFORNIA  94065

21                            BY:   CARL G. ANDERSON
                                    JOBY MARTIN
22                           50 CALIFORNIA STREET, 22ND FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111

23

24

25

SAN JOSE, CALIFORNIA                    OCTOBER 17, 2013

P R O C E E D I N G S

(COURT CONVENED AT 1:47 P.M.)

        THE CLERK:  CALLING CASE NUMBER C-11-01846 LHK,

APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY,

LIMITED, ET AL.

        MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.  ON

BEHALF OF MORRISON & FOERSTER REPRESENTING APPLE, WE HAVE

HAROLD MCELHINNY, RACHEL KREVANS, CHRISTOPHER ROBINSON, AND

NATE SABRI.

        MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  FOR APPLE FROM

WILMER, HALE, BILL LEE, LAUREN FLETCHER, AND KEVIN PRUSSIA.

        THE COURT:  OKAY.

        MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  FROM QUINN,

EMANUEL REPRESENTING SAMSUNG ARE BILL PRICE, JOHN CEDERBERG,

CARL ANDERSON, JOBY MARTIN, ANN REYNOLDS, ANTHONY ALDEN, AND

VICTORIA MAROULIS.

        THE COURT:  OKAY.  GOOD AFTERNOON.

    ALL RIGHT.  LET'S GO THROUGH THE, THE MOTIONS IN LIMINE.

LET'S DO THE APPLE MOTION IN LIMINE NUMBER 1 FIRST REQUESTING

AN EXCLUSION OF EVIDENCE REGARDING THE PATENT RE-EXAMINATION

PROCEEDINGS.

    LET ME JUST ASK, WHAT'S THE CURRENT STATUS OF THOSE

RE-EXAMS?

        MR. MCELHINNY:  THERE WERE TWO.  THE '831, AS YOU

1    KNOW, WAS CERTIFIED, RE-CERTIFIED AS A VALID PATENT.  THAT

2    RE-EXAMINATION PROCEEDING IS OVER.

3        THE '915 IS CONTINUING.

4            THE COURT:  NOW, THE '831, IS THAT BEING APPEALED?

5            MR. MCELHINNY:  '381.  I'M SORRY, YOUR HONOR.

6            MS. MAROULIS:  NO, YOUR HONOR.  IT'S EX PARTE

7    EXAMINATION, SO ANY OTHER PARTY CANNOT APPEAL IF A PATENT IS

8    CONFIRMED.

9            THE COURT:  OKAY.  SO THAT IS COMPLETELY RESOLVED

10   THEN?

11           MR. MCELHINNY:  IT IS, YOUR HONOR.

12           MS. MAROULIS:  CORRECT.

13           THE COURT:  OKAY.  ALL RIGHT.  AND THE STATUS OF THE

14   '915?

15           MR. MCELHINNY:  THE STATUS OF THE '915 IS THAT IT IS

16   IN THE MIDST OF EXAMINATION.

17           THE COURT:  OKAY.

18           MR. MCELHINNY:  WE DO NOT BELIEVE THERE WILL BE A

19   FINAL ACTION BY THE PATENT AND TRADEMARK OFFICE BEFORE THIS

20   TRIAL IS CONCLUDED.

21           THE COURT:  OKAY.

22           MS. MAROULIS:  YOUR HONOR, APPLE WAS ORDERED TO FILE

23   A RESPONSE TO THE EXAMINER'S FINAL REJECTION BY OCTOBER 26TH.

24           THE COURT:  OKAY.

25           MS. MAROULIS:  THE EXAMINER TYPICALLY THEN ISSUES

1    EITHER A CONFIRMATION OF THE PRIOR REJECTION OR SOMETHING

2    DIFFERENT.  M.P.E.P. SUGGESTS IT BE DONE IN FIVE DAYS.  IT

3    DOESN'T ALWAYS HAPPEN IN FIVE DAYS.

4        IF IT HAPPENS IN THIS INSTANCE BEFORE THE TRIAL, WE WILL

5    BE BACK WITH A MOTION TO STAY ACCORDINGLY.

6        THE COURT:  AND WAS THE REJECTION OF THE CLAIMS THAT

7    ARE AT ISSUE IN THE RETRIAL?

8        MS. MAROULIS:  YES, YOUR HONOR, CLAIM 8.

9        THE COURT:  OKAY.  LET ME ASK, LAST WEEK I HAD

10   ORDERED THAT THE DESCRIPTIONS OF THE PATENT THAT WERE IN

11   MR. MUSIKA'S REPORT BE USED IN MS. DAVIS'S REPORT AND APPLE

12   AGREED TO THAT.

13       DOES THAT MOOT YOUR EFFORTS TO GET MORE TECHNICAL EVIDENCE

14   IN TO REBUT ANY EFFORT BY APPLE TO BROADEN THE SCOPE OF THE

15   PATENTS?

16       MS. MAROULIS:  YOUR HONOR, APPLE IS STILL MAINTAINING

17   THAT THEY WILL CALL THEIR TECHNICAL EXPERTS.  THEIR LATEST

18   PROFFER SUGGESTS THAT THEIR TECHNICAL EXPERTS, BALAKRISHNAN AND

19   SINGH, WILL BE TESTIFYING.

20       THE COURT:  UM-HUM.

21       MS. MAROULIS:  SO TO THE EXTENT THEY'RE TESTIFYING,

22   WE NEED TO REBUT THEM WITH OUR TECHNICAL EXPERTS.

23       SO IT DID SOLVE ONE OF THE ISSUES, WHICH IS THE

24   IMPROPERLY BROAD DESCRIPTION BY MS. DAVIS.

25       BUT FROM WHAT WE UNDERSTAND IN THIS WEEKEND'S PROFFER,

1    APPLE STILL SUGGESTS THAT ITS TECHNICAL EXPERTS WILL BE HERE

2    AND THEY WILL BE ADDRESSING, UNLESS EXCLUDED, A NUMBER OF

3    TOPICS, INCLUDING PATENT SCOPE.

4         THE COURT:  WELL, WHAT ABOUT YOUR RE-EXAMINATION

5    EVIDENCE?  IS THAT NOW MOOTED BY THE CHANGE IN THE PATENT SCOPE

6    DESCRIPTION IN MS. DAVIS'S REPORT?

7         MS. MAROULIS:  NO, YOUR HONOR, BECAUSE MS. DAVIS'S

8    REPORT MERELY GOES BACK TO WHERE MR. MUSIKA WAS, BUT IT DOES

9    NOT TAKE INTO ACCOUNT APPLE'S ADMISSIONS IN THE PATENT OFFICE

10   FURTHER NARROWING THE SCOPE OF THE '381 AND THE '915 PATENT.

11        THE '381 PATENT DID ISSUE, BUT THAT IS WHAT GIVES RISE TO

12   OUR MOTION IN LIMINE BECAUSE APPLE IS NEW JUDICIALLY ESTOPPED

13   HAVING OBTAINED A POSITIVE RESULT IN THE PATENT OFFICE BASED ON

14   ITS LIMITING ADMISSIONS.

15        THE COURT:  ALL RIGHT.  WELL, I DID LOOK AT THIS

16   ISSUE SOME.  IN THE MOTIONS THAT WERE FILED BEFORE THE

17   AUGUST 21 CASE MANAGEMENT CONFERENCE, I DIDN'T QUITE AGREE WITH

18   SAMSUNG THAT THERE WERE THE DISAVOWALS AND SPECIFIC LIMITATIONS

19   THAT SAMSUNG ASSERTED THAT APPLE WAS PROPOSING.

20        BUT SEPARATE FROM THAT, I'M NOT CONVINCED THAT -- AND WE

21   CAN TALK ABOUT NON-INFRINGEMENT ALTERNATIVES LATER, BUT FOR

22   PURPOSES OF APPLE'S MOTION IN LIMINE NUMBER 1, VALIDITY IS NOT

23   AN ISSUE IN THE RETRIAL, AT LEAST THE '381 WAS CONFIRMED BY THE

24   PTO.

25        I JUST THINK ANY PROBATIVE VALUE IS, IS MINIMAL AND FOR US

1    TO HAVE A SATELLITE LITIGATION ON WHETHER THERE WAS A DISAVOWAL

2    OR FURTHER NARROWING OF A SCOPE IN RE-EXAMINATION, I THINK THAT

3    WOULD BE A WASTE OF TIME AND WOULD BE HIGHLY CONFUSING TO THE

4    JURY.

5        SO UNDER 403 BALANCING, I WOULD EXCLUDE IT.

6        SO THE FIRST MOTION IN LIMINE FILED BY APPLE IS GRANTED.

7        MS. MAROULIS:  YOUR HONOR, IS THAT REFERRING TO THE

8    RE-EXAM STATEMENTS OR THE PRIOR ART?  I THINK APPLE MOVED ON

9    TWO DIFFERENT GROUNDS.

10       THE COURT:  OKAY.  WELL, I'M JUST GOING TO DO NUMBER

11   1, AND THAT WOULD BE AS TO -- WELL, WHAT ARE YOU SEEKING TO

12   INTRODUCE THE PRIOR ART FOR?

13       MS. MAROULIS:  YOUR HONOR, ONCE AGAIN, WE'RE --

14   BECAUSE WE GO SECOND, WE NEED TO SEE WHAT APPLE DOES WITH THEIR

15   TECHNICAL EXPERTS, BUT IF THEIR TECHNICAL EXPERTS CLAIM THAT

16   THEY INVENTED THE WORLD, THE PHONE, TOUCHSCREEN, WHATEVER,

17   WHATEVER IT IS THAT'S MUCH, MUCH BROADER THAN THEIR ACTUAL

18   PATENTS, WE NEED TO SHOW THE JURY THAT THERE ARE OTHER WAYS TO

19   PERFORM, WHETHER IT'S SCROLLING OR GESTURING OR BOUNCE BACK.

20   IT ALL GOES TO THE SCOPE OF THE PATENT.

21       AND LAST WEEK WE SUGGESTED THAT APPLE SHOULD BE BARRED

22   FROM INTRODUCING ITS TECHNICAL EXPERTS BECAUSE IT'S A DAMAGE

23   TRIAL AND THEY CANNOT REALLY ADD ANYTHING.  THEY'RE NOT EXPERTS

24   IN CONSUMER DEMAND.  THEY DON'T HAVE ANY SPECIALIZED KNOWLEDGE,

25   OTHER THAN COMPUTER SCIENCE, WHICH IS NOT AT ISSUE HERE.

1          BUT YET, IF THEY DO GO FORWARD AND TESTIFY, OUR EXPERT

2     SHOULD BE ABLE TO DISABUSE THE JURY OF THE VERY BROAD SCOPE OF

3     THE PATENTS THAT APPLE SUGGESTS.

4               THE COURT:  ALL RIGHT.  WELL, LET -- YOU KNOW -- ALL

5      RIGHT.  LET'S BACK UP HERE A SECOND.

6          FIRST OF ALL, THANK YOU BOTH FOR THE ADDITIONAL FILINGS

7     THAT YOU MADE.  THEY WERE VERY HELPFUL.  WE OBVIOUSLY HAVE NOT

8     BEEN ABLE TO GO THROUGH ALL OF THEM AND DON'T HAVE RULINGS ON

9     EVERYTHING FOR YOU, BUT THEY'RE VERY HELPFUL.

10         LET ME ASK -- LET ME SORT OF BACK UP HERE AND SUGGEST IF

11    THERE ARE POSSIBLE POTENTIAL STIPULATIONS HERE, BECAUSE OVERALL

12    I DO THINK THAT -- I DO AGREE WITH APPLE THAT THEY SHOULD BE

13    ABLE TO -- YOU KNOW, FOR PURPOSES OF AT LEAST GEORGIA PACIFIC

14    FACTORS, WHAT, 9, 10, AND 11, GET IN SOME, YOU KNOW, TESTIMONY

15    ABOUT THE NATURE OF THE PATENTED INVENTION, THE CHARACTER OF

16    THE COMMERCIAL EMBODIMENT, THE BENEFITS ASSOCIATED WITH THOSE

17    FEATURES, AND I THINK THAT RELYING ON WHETHER IT'S BALAKRISHNAN

18    AND SINGH HERE, OR WHOMEVER IT IS, THAT THAT IS RELEVANT AND

19    SHOULD BE ADMITTED IN SOME FORM.

20         ON THE OTHER HAND, I ALSO AGREE WITH SAMSUNG THAT THEY

21    SHOULD BE ABLE TO LOOK AT SOME OF THE PRIOR ART TO BE ABLE TO

22    SAY, "LOOK, THE BENEFIT OF THIS PATENTED FEATURE IS SO MINIMAL

23    COMPARED TO WHAT EXISTED AT THE TIME OF THE INVENTION."

24         SO I JUST THINK THIS, THIS TYPE OF TESTIMONY, WE'RE NOT

25    GOING TO NECESSARILY CALL IT -- IT WON'T BE FOR THE PURPOSE OF

1    VALIDITY, BUT I THINK IT'S RELEVANT TO DAMAGES.

2         SO LET ME ASK, IS THERE SOME AGREEMENT THAT YOU ALL COULD

3    REACH -- IT IS GOING TO COME IN IN SOME FORM, SO MY

4    UNDERSTANDING LAST WEEK FROM SAMSUNG WAS THAT YOU WOULD PREFER,

5    YOU KNOW, THAT PERHAPS IT MIGHT COME IN BY STIPULATION, SUCH AS

6    THERE IS A DEMAND FOR THE PATENTED PRODUCTS, RATHER THAN

7    THROUGH LIVE TESTIMONY OR THROUGH MS. DAVIS.

8         CAN WE REACH SOME STIPULATIONS HERE -- I ALSO DON'T WANT

9    TO OPEN THIS TRIAL UP TO ERROR BECAUSE THEN SOMEONE IS GOING TO

10   SAY, "WELL, WE NEVER HAD AN OPPORTUNITY TO CROSS-EXAMINE ANY

11   WITNESS AND THIS SORT OF CAME IN THROUGH HEARSAY THROUGH A

12   DAMAGES EXPERT."

13        I MEAN, THERE ARE, YOU KNOW, CASES IN SAMSUNG'S FOOTNOTE

14   SAYING HOW THAT WOULD BE ERROR NOT TO PROVIDE AN OPPORTUNITY TO

15   CROSS-EXAMINE FROM THE SIDE THAT'S NOT INTRODUCING THAT SORT OF

16   HEARSAY EXPERT TESTIMONY.

17        SO WHAT -- I MEAN, I'M ASKING YOU ALL, IN THE HOPES THAT

18   WE CAN DO SOME PROBLEM SOLVING HERE, IS THERE SOME MEETING OF

19   THE MINDS THAT WOULD ADDRESS ALL OF YOUR VARIOUS CONCERNS OF

20   GETTING THE EVIDENCE THAT YOU WANT IN, BUT US NOT CROSSING THE

21   LINE INTO REDOING THE JURY'S VERDICT ON VALIDITY OR

22   INFRINGEMENT OR ANYTHING LIKE THAT?

23        WHAT -- ANYONE HAVE ANY THOUGHTS ON THAT?  WOULD IT BE

24   WORTH YOU ALL MEETING AND CONFERRING TO SEE -- I MEAN, SOME OF

25   THE SIMPLE ONES, THE DEMAND FOR THE PATENTED PRODUCTS, I DON'T

1       KNOW IF THERE'S ANYTHING THAT COULD BE STIPULATED TO WITH

2       REGARD TO BENEFITS ASSOCIATED WITH THE PATENTED FEATURES.

3               WHAT DO YOU THINK?  I MEAN, I'M GOING TO ALLOW IT IN, SO

4       LET'S FIGURE OUT WHAT'S THE BEST WAY THAT BOTH SIDES WOULD

5       BE -- YOU KNOW, YOU MAY HAVE TO COMPROMISE, BUT BE SOMEWHAT

6       COMFORTABLE WITH HOW IT'S COMING IN.

7               MR. PRICE:  THAT'S SOMETHING WE HAVEN'T GIVEN A LOT

8       OF THOUGHT TO, EXCEPT WITH RESPECT TO DEMAND FOR THE PATENTED

9       PRODUCT.  I MEAN, MR. MUSIKA, IN HIS TESTIMONY AT TRIAL,

10      DEVOTED AN ENTIRE PARAGRAPH TO THAT SAYING THAT'S

11      STRAIGHTFORWARD AND THAT WAS ALL THE TESTIMONY THAT HE GAVE ON

12      THE DEMAND FOR THE PATENTED PRODUCT.

13              THE COURT:  UM-HUM.

14              MR. PRICE:  AND WE AGREE IT'S STRAIGHTFORWARD.

15              THE COURT:  OKAY.

16              MR. PRICE:  SO CERTAINLY WE WOULD HAVE NO TROUBLE

17      STIPULATING TO THERE WAS DEMAND FOR THE PATENTED PRODUCT.

18              THE COURT:  OKAY.

19              MR. PRICE:  BUT I DON'T KNOW IF WE'VE FIGURED OUT HOW

20      TO, HOW TO DO THAT WITH RESPECT TO THE ADVANTAGES OF THE

21      PATENTED FEATURE OVER THE PRIOR ART.  WE JUST HAVEN'T THOUGHT

22      THAT THROUGH.  I'D BE WILLING TO HAVE DISCUSSIONS ABOUT IT, BUT

23      I DON'T KNOW HOW FRUITFUL THOSE MIGHT BE.

24              THE COURT:  WELL, WHAT -- MY SENSE -- MY SENSE,

25      MR. PRICE, FROM LAST WEEK WAS THAT SAMSUNG'S PREFERENCE IS NOT

1    TO HAVE LIVE TECHNICAL EXPERT TESTIMONY FROM APPLE.  ISN'T THAT

2    RIGHT?

3              MR. PRICE:  THAT'S TRUE.  THAT'S TRUE.

4              THE COURT:  OKAY.  SO IF I'M TELLING YOU THAT I THINK

5    THAT -- I MEAN, I'M NOT PARSING IT AS FINELY AS YOU BRIEFED IT,

6    BUT WE'RE JUST SORT OF TALKING GENERAL PRINCIPLES HERE, IF I'M

7    GOING TO ALLOW SOME TESTIMONY FROM TECHNICAL EXPERTS ABOUT

8    BENEFITS ASSOCIATED WITH THE PATENTED FEATURES, IT'S COMING IN

9    ONE WAY OR THE OTHER.

10             MR. PRICE:  RIGHT.

11             THE COURT:  WOULD YOU PREFER THAT CAME IN THROUGH

12   MS. DAVIS RATHER THAN COMING IN THROUGH LIVE TESTIMONY?  WHAT

13   WOULD YOUR --

14             MR. PRICE:  WELL, NO.  I MEAN, IF WE CAN'T COME TO AN

15   AGREEMENT AS TO WHAT THE JURY SHOULD BE TOLD ON THAT --

16             THE COURT:  OKAY.

17             MR. PRICE:  -- I THINK WE NEED IT TO COME IN THROUGH

18   WHOEVER IS QUALIFIED TO SAY IT SO THAT THEY CAN BE SUBJECT TO

19   CROSS-EXAMINATION.

20         OBVIOUSLY MS. DAVIS WOULD NOT BE SUBJECT TO

21   CROSS-EXAMINATION ON THAT BECAUSE SHE'S TAKING SOMEBODY'S WORD

22   FOR IT.

23             THE COURT:  ALL RIGHT.  SO YOU WOULD PREFER THAT THEY

24   DO COME IN, BALAKRISHNAN, SINGH, KARE?

25             MR. PRICE:  IF THERE'S GOING TO BE TESTIMONY, IF

1       YOU'RE GOING TO ALLOW TESTIMONY FROM EXPERTS, OR SOMEONE, ABOUT

2       THE ADVANTAGES OF THESE PARTICULAR PATENTED FEATURES, I THINK

3       THEY'RE GOING TO HAVE TO -- IT WOULD HAVE TO BE THROUGH SOMEONE

4       QUALIFIED TO DO SO, YES.

5               THE COURT:  OKAY.  ALL RIGHT.

6               MR. MCELHINNY:  CAN I -- UNFORTUNATELY -- OBVIOUSLY

7       AS WE WALKED IN TODAY, THEY WERE OPPOSING ANY KIND OF DEMAND

8       EVIDENCE, SO MAYBE AS YOUR HONOR'S RULINGS SINK IN AND WE START

9       PLANNING THIS, WE MAY BE ABLE TO GET SOME DISCUSSIONS.

10              BUT THERE'S A THIRD COMPLICATING FACTOR THAT I WANT TO

11      MAKE SURE GETS FED IN, BECAUSE YOU HAVE THIS QUESTION OF

12      WHETHER OR NOT THERE'S GOING TO BE DEMAND EVIDENCE AT ALL,

13      WHICH YOUR HONOR HAS JUST EXPRESSED A VIEW ON.

14              THERE'S A QUESTION ABOUT WHETHER EXPERTS ARE GOING TO BE

15      ABLE TO TESTIFY, WHICH YOUR HONOR HAS JUST EXPRESSED A VIEW ON.

16              BUT THEN THERE'S THE ISSUE, OF COURSE, OF WHETHER THE

17      EXPERTS ARE GOING TO BE LIMITED TO THE REPORTS THAT THEY FILED

18      IN THE ORIGINAL CASE AND THE DISCLOSURES THEY MADE, BECAUSE IN

19      A SEPARATE LINE OF OBJECTIONS ON THE SAMSUNG EXPERTS, AS YOUR

20      HONOR KNOWS, WE HAVE OBJECTED TO PEOPLE WHO WERE STRICKEN FOR

21      SANCTIONS REASONS, WE'VE OBJECTED TO PARTS OF REPORTS THAT WERE

22      STRICKEN BECAUSE WE NEVER GOT DISCOVERY ON THEM.

23              SO THAT'S A -- IT'S A SEPARATE FILTER OVER WHETHER OR NOT

24      TESTIMONY COMES IN, WHICH IS WHETHER OR NOT IT'S IN SOMEBODY'S

25      REPORT, IF THERE'S EVER BEEN ANY DISCOVERY TAKEN ON IT, THEY'VE

1  EVER BEEN EXAMINED ABOUT IT, OR WHETHER WE WOULD BE HEARING

2  STUFF FOR THE FIRST TIME AT TRIAL.

3      AND THAT'S A FACTOR THAT HAS TO FIT INTO OUR --

4          THE COURT:  WELL, WE'RE GOING TO PAINFULLY GO THROUGH

5  ALL OF THE MOTIONS THIS AFTERNOON, SO WE WILL GET TO THOSE.

6          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

7          THE COURT:  I -- AND I RECOGNIZE THAT THESE MOTIONS

8  ARE QUITE BROAD, SO I JUST WANT TO SORT OF HANDLE ONE AT A

9  TIME, EACH MOTION TO THE EXTENT THAT WE CAN.

10     IF THERE ARE PROBLEMS LATER ON WHERE THERE ARE

11 INCONSISTENCIES THAT I'M NOT RECOGNIZING NOW, THEN I HOPE YOU

12 BRING THAT TO MY ATTENTION AND WE CAN TRY TO WORK THOSE OUT.

13         MR. MCELHINNY:  THE ABSOLUTE AND HONEST AND FRANK

14 ANSWER TO YOUR SPECIFIC QUESTION IS I HAVEN'T HAD THE

15 OPPORTUNITY TO WORK CLOSE TO MR. PRICE BEFORE.  I DON'T KNOW

16 WHETHER WE WILL HAVE MORE SUCCESS WORKING ON STIPULATIONS THIS

17 TIME THAN WE DID THE LAST TIME.

18         THE COURT:  OKAY.  WELL, I WOULD LIKE YOU ALL AT

19 LEAST TO TRY, AND MAYBE AS WE GO THROUGH AND I TELL YOU WHERE

20 I'M TENTATIVELY -- THERE ARE CERTAIN ONES THAT I KNOW I

21 PROBABLY NEED TO DO A WRITTEN ORDER ON BECAUSE THE LAW IS NOT

22 CLEAR.

23     THERE ARE OTHERS -- SO I CAN GIVE YOU A TENTATIVE RULING

24 TODAY, BUT UNDERSTANDING THAT I'LL PROBABLY DO A WRITTEN ORDER

25 LATER THAT LAYS OUT MY REASONING JUST FOR APPELLATE REVIEW.

1          BUT TO THE EXTENT THAT I CAN GIVE YOU RULINGS TODAY,

2     TENTATIVE OR FINAL, I WILL.  HOPEFULLY THAT CAN GIVE YOU SOME

3     SENSE OF WHAT'S COMING IN AND THEN, WITH THAT, YOU CAN ARM

4     YOURSELVES WITH THAT INFORMATION AND THEN DECIDE WHAT'S THE

5     BEST WAY THAT YOU CAN POTENTIALLY AGREE TO GET THAT INFORMATION

6     IN TO BOTH OF YOUR SATISFACTION.

7          MR. MCELHINNY:  THANK YOU, YOUR HONOR.

8          MR. PRICE:  THANK YOU.

9          THE COURT:  SO WHEN COULD YOU DO THAT?  BECAUSE I WAS

10    ACTUALLY GOING TO SUGGEST, SINCE WE HAD SO MUCH FUN LAST WEEK

11    AND I ASSUME TODAY IS EQUALLY GOING TO BE FUN, I WAS GOING TO

12    SUGGEST THAT WE MEET ONE MORE TIME BEFORE THE 12TH JUST TO

13    RESOLVE ANY LAST ISSUES.  NOT THAT I'M ENCOURAGING TO YOU FILE

14    MORE THINGS, BUT JUST IN CASE, I WOULD LIKE US TO BE ABLE TO

15    START ON THE 12TH JUST COMPLETELY READY TO GO WITH JURY

16    SELECTION AND NOT HAVE, YOU KNOW, SIGNIFICANT UNRESOLVED

17    ISSUES.

18         I WAS GOING TO SUGGEST TUESDAY, NOVEMBER 5 AT 1:30.  DOES

19    THAT WORK FOR YOU ALL?

20         MR. PRICE:  YOUR HONOR, I HAVE A CONFLICT ON THE 5TH

21    WHICH I DON'T KNOW IF I CAN MOVE.

22         THE COURT:  OKAY.

23         MR. PRICE:  I PREFER TO BE HERE, BUT CERTAINLY I

24    THINK ANY OTHER TIME THAT WEEK.

25         MR. LEE:  I HAVE SIMILAR PROBLEMS.

```
1              THE COURT:  OKAY.  I THINK THURSDAY WE HAVE A FULL

2       LAW AND MOTION CALENDAR, RIGHT?

3              THE CLERK:  THE 6TH?  OR THE 7TH?

4              THE COURT:  THE 3RD -- OR THE 7TH.  YEAH, THE 7TH WE

5       DO.

6              THE CLERK:  WE DO, PRETTY MUCH.

7              THE COURT:  YEAH.  AND WE'RE FULL ON THE 6TH.

8          I'D RATHER NOT DO IT THE 8TH BECAUSE THAT IS GETTING A

9       LITTLE TOO CLOSE.

10         IF I HAD IT IN THE MORNING, WOULD YOU BE ABLE TO

11      PARTICIPATE, AT LEAST BY PHONE?

12             MR. PRICE:  I COULD -- I COULD PARTICIPATE BY PHONE

13      EARLY IN THE MORNING, AROUND 9:00, SAY 9:00 TO 11:00.

14             THE COURT:  OKAY.

15             MR. PRICE:  THAT'S NOT OPTIMAL.

16         I ALSO SUGGEST, YOUR HONOR, I DON'T KNOW IF THIS IS TOO

17      EARLY, BUT I ALSO HAVE GOOD AVAILABILITY THE WEEK OF OCTOBER,

18      THE LAST WEEK OF OCTOBER.

19             MR. LEE:  YOUR HONOR, WE HAVE A CASE MANAGEMENT

20      CONFERENCE WITH YOU IN THE SECOND CASE SCHEDULED FOR

21      NOVEMBER 30TH -- FOR THE 30TH.

22             MS. MAROULIS:  OCTOBER 30TH.

23             THE COURT:  RIGHT.  THE PROBLEM IS HAVE YOU SEEN THE

24      CALENDAR?  IT'S -- IT'S QUITE LENGTHY ALREADY.

25             MR. LEE:  OKAY.
```

1           THE COURT:  AND UNFORTUNATELY ON THE 31ST, I HAVE A

2    REALLY HEAVY LAW AND MOTION --

3           MR. LEE:  OKAY.

4           THE CLERK:  WHAT ABOUT THE 1ST?

5           THE COURT:  -- SO I WON'T HAVE TIME TO PREPARE.

6      THE 1ST IS --

7           THE CLERK:  FRIDAY.

8           THE COURT:  I WON'T BE AVAILABLE.

9           MR. PRICE:  YOUR HONOR, I'M AVAILABLE ON MY BIRTHDAY,

10   OCTOBER 28TH.

11          THE CLERK:  I DON'T SEE THAT WE HAVE ANYTHING THEN.

12          MR. PRICE:  AND GIFTS WOULD BE APPRECIATED.

13     (LAUGHTER.)

14          THE COURT:  WELL, MY CONCERN WITH THAT IS I WAS -- I

15   WAS HOPING THAT BY THE TIME OF THIS NEXT PRETRIAL CONFERENCE

16   THAT I WOULD HOPEFULLY HAVE MOST THINGS DECIDED FOR YOU, AND

17   I'M A LITTLE BIT CONCERNED ABOUT HAVING IT THAT EARLY, THAT I

18   MAY NOT BE ABLE TO GET YOU ALL THE RULINGS THAT MIGHT MAKE THE

19   DISCUSSION MORE USEFUL FOR EVERYBODY.

20     (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

21   CLERK.)

22          THE COURT:  COULD WE SET IT FROM 9:00 TO 11:00?

23          MR. MCELHINNY:  WHAT DAY, YOUR HONOR?

24          THE COURT:  MR. LEE, WOULD YOU BE AVAILABLE BY PHONE

25   ON NOVEMBER 5?

1          (PAUSE IN PROCEEDINGS.)

2          MR. LEE:  IS THERE ANY CHANCE OF DOING IT BY PHONE

3    LATER THAT DAY, YOUR HONOR?

4          THE COURT:  OH, YEAH.  YEAH.  I JUST THOUGHT THAT FOR

5    MR. PRICE, MORNING WAS BETTER FOR YOU.

6          MR. PRICE:  IT IS.  I'VE GOT SOMETHING BETWEEN, LIKE,

7    11:00 AND 2:00.

8          THE COURT:  OH, OKAY.

9          MR. PRICE:  SO 2:00 O'CLOCK WOULD WORK.

10         THE COURT:  OH, THAT'S FINE.  IS THAT OKAY WITH YOU?

11         MR. LEE:  THAT'S FINE.  2:00 O'CLOCK PACIFIC?

12         THE COURT:  YES.  OKAY, LET'S DO THAT.  IF THERE ARE

13   NO ISSUES, I CAN EVEN VACATE THIS, BUT I SUSPECT THAT THAT

14   WOULD NOT BE LIKELY.

15         MR. MCELHINNY:  DO YOU WANT THE WHOLE THING BY PHONE,

16   YOUR HONOR, OR DO YOU WANT THOSE OF US WHO HAVE NO OTHER

17   CLIENTS OR CASES TO BE HERE IN PERSON?

18         THE COURT:  EXACTLY.  IT'S ACTUALLY DIFFICULT TO DO

19   THINGS BY PHONE, SO I PREFER WHOEVER CAN, PLEASE COME IN

20   PERSON.

21         MR. MCELHINNY:  THANK YOU.

22         MR. PRICE:  I'M GOING TO TRY TO MOVE THINGS AROUND,

23   YOUR HONOR, AND TRY TO BE HERE IN PERSON.

24         THE COURT:  OH, OKAY.  THANK YOU.  THANK YOU.

25         OKAY.  SO THAT'S THE RULING ON APPLE MOTION IN LIMINE

1    NUMBER 1 IS GRANT.

2        WITH REGARD TO NUMBER 2, THAT IS EXCLUDING REFERENCES TO

3    PRIOR ART.

4        I DO THINK, AS I SAID BEFORE, FOR GEORGIA PACIFIC FACTOR

5    NUMBER 10, THE BENEFIT OF THE PATENTED INVENTION, I DON'T SEE

6    HOW SAMSUNG CAN DISPUTE THAT WITHOUT BEING ABLE TO COMPARE IT

7    TO WHAT EXISTED IN THE ART.  SO WHILE I AGREE WITH YOU, I DON'T

8    WANT THIS TO GO INTO A VALIDITY CASE, I DO THINK IT'S RELEVANT

9    FOR DAMAGES.

10        SO WHAT'S YOUR SUGGESTION AND HOW CAN WE, YOU KNOW, FINELY

11    DRAW THE LINE SO IT'S NOT INVALIDITY, BUT YET, WHAT THEY NEED

12    TO REBUT A SIGNIFICANT GEORGIA PACIFIC FACTOR IS ADMITTED?

13            MR. LEE:  YOUR HONOR, LET ME SAY THREE THINGS.

14            THE COURT:  UM-HUM.

15            MR. LEE:  I THINK IT WOULD BE DEPENDENT A LITTLE BIT

16    ON WHAT WE PUT IN IN OUR EIGHT HOURS OF ALLOTTED TIME ON THESE

17    ISSUES, WHICH I SUSPECT WILL BE PRETTY BRIEF AND PRETTY DIRECT.

18        THE SECOND THING IS WE HEAR -- WE UNDERSTAND WHERE YOUR

19    HONOR IS HEADED --

20            THE COURT:  UM-HUM.

21            MR. LEE:  -- IN FAIRNESS TO GET A BALANCED

22    PRESENTATION, PUTTING BEFORE THE JURY OTHER THINGS THAT EXISTED

23    WITHOUT CALLING IT PRIOR ART.

24            THE COURT:  UM-HUM.

25            MR. LEE:  BECAUSE PRIOR ART HAS AN IMPLICATION, WHICH

1      IS IT'S SOMETHING THAT MAY OR MAY NOT INVALIDATE THE PATENT.

2      IT'S PROBABLY GOING TO MEAN NOTHING TO THE FOLKS IN THE BOX.

3           SO TO THE EXTENT THAT YOUR HONOR IS INCLINED TO ALLOW

4      SOME EVIDENCE OF OTHER THINGS THAT WERE OUT THERE THAT MIGHT GO

5      TO THE VALUE OF THE PATENTED INVENTION, WE WOULD JUST SAY THESE

6      TWO THINGS.

7           THERE'S A FINE LINE TO BE DRAWN, BUT IT PROBABLY HAS TO BE

8      DRAWN IN REALTIME AS THINGS HAPPEN, BETWEEN LETTING IT COME IN

9      FOR THAT PURPOSE AND HAVING IT EVOLVE INTO WE ARE NOW GOING TO

10     START ATTACKING THE INVALIDITY OR INFRINGEMENT FINDING, AND IT

11     MAY BE QUESTION-BY-QUESTION.

12          THE COURT:  UM-HUM.

13          MR. LEE:  BUT THE LAST POINT IS THIS, AND IT GOES TO

14     MR. MCELHINNY'S POINT AND, AGAIN, I THINK IT'S SOMETHING THAT

15     WILL BE DEALT WITH DOWN THE ROAD.

16          BUT, FOR INSTANCE, WE DID NOT MOVE TO EXCLUDE MR. GRAY

17     FROM TESTIFYING.  YOUR HONOR WILL RECALL HE TESTIFIED ON

18     VALIDITY AND INFRINGEMENT ON THE '163 AND THE '915 PATENTS, IN

19     PART BECAUSE IN HIS REPORT, THERE IS INFORMATION THAT WOULD BE

20     RELEVANT TO THE ISSUES YOUR HONOR HAS IDENTIFIED ON DAMAGES.

21          THE COURT:  UM-HUM.

22          MR. LEE:  DR. VAN DAM, BY CONTRAST, WHO WAS THE BROWN

23     PROFESSOR WHO TESTIFIED WHO HAD A VERY NARROW REPORT JUST ON

24     INVALIDITY, HE HAS NOTHING, AT LEAST IN OUR VIEW, THAT WOULD GO

25     TO THE ISSUES THAT YOUR HONOR IS CONCERNED ABOUT.

1       SO I THINK WE WOULD SAY THAT I THINK YOUR HONOR KNOWS WHAT

2   OUR OBJECTIONS ARE, WHICH IS WE DON'T WANT THIS TO MORPH INTO A

3   RETRIAL OF VALIDITY.  THE JURY IS GOING TO BE TOLD THAT

4   VALIDITY HAS BEEN DETERMINED.  IT WOULD BE DEPENDENT A LITTLE

5   BIT UPON WHAT WE PUT IN.

6       I THINK IF IT GOES FARTHER, WE'LL BE UP ON OUR FEET

7   OBJECTING FOR THE REASONS THAT YOUR HONOR IDENTIFIED, AND THEN

8   WE WILL ALSO, AT THE APPROPRIATE TIME, MAKE THE OBJECTIONS TO,

9   FOR INSTANCE, MR. VAN DAM IF HIS EXPERT REPORT DOESN'T HAVE THE

10  INFORMATION THAT WOULD ENTITLE HIM TO TESTIFY TO THAT.

11          THE COURT:  OKAY.  WELL, I STRONGLY AGREE WITH WHAT

12  YOU SAID AT THE VERY BEGINNING, WHICH IS THIS IS PROBABLY BEST

13  LEFT FOR A DOCUMENT-BY-DOCUMENT OR QUESTION-BY-QUESTION RULING

14  VERSUS A BROAD, BLANKET RULING RIGHT NOW, SO I'M NOT GOING TO

15  DO.

16      I'M GOING TO -- DO YOU WANT ME TO JUST RESERVE THIS ONE?

17  DO YOU WANT ME TO JUST, YOU KNOW, DENY IT WITHOUT PREJUDICE?

18          MS. MAROULIS:  YOUR HONOR, WE WOULD APPRECIATE IT IF

19  IT WERE DENIED WITHOUT PREJUDICE BECAUSE THE JURY IS GOING TO

20  BE INSTRUCTED THAT THE PATENTS ARE PRESUMED VALID, AND SO

21  THERE'S NOT GOING TO BE A DISPUTE ABOUT VALIDITY.

22      TO THE EXTENT APPLE THINKS THAT WE'RE CROSSING THE LINE

23  INTO ATTACKING VALIDITY, THEY'LL BE ABLE TO, AT THAT POINT,

24  OBJECT.

25          BUT WE NEED TO PREPARE FOR THE TRIAL, SO IF THE COURT

1  DENIES THIS MOTION, WE'LL KNOW THAT WE HAVE CERTAIN LATITUDE IN

2  MEETING THE GEORGIA PACIFIC FACTORS THAT THE COURT REFERENCED.

3        MR. LEE:  YOUR HONOR, I -- WHICHEVER WAY YOU WANT TO

4  DEAL WITH IT IS FINE.  I THINK THE MORE IMPORTANT THING IS WE

5  HAVE SOME GUIDANCE FROM YOUR HONOR ON WHAT CAN GO IN, WHAT

6  CAN'T GO IN AND THAT IF WE STAND UP AND OBJECT, IT WILL BE

7  CONSISTENT WITH WHAT YOUR HONOR HAS SAID TODAY.

8        THE COURT:  AND I AGREE WITH WHAT YOU SAID, MR. LEE,

9  ALSO, THAT WHAT I'M GOING TO ALLOW SAMSUNG TO DO DOES DEPEND

10  UPON WHAT APPLE PUTS IN IN YOUR CASE, SO IT'S REALLY HARD TO

11  PREEMPTIVELY RULE ON THAT.

12        MR. LEE:  SO -- AND WE DON'T DISAGREE.  I MEAN, I

13  THINK OUR MOTION WAS, IN PART, AND THE BRIEFING WE SUBMITTED TO

14  YOUR HONOR WAS IN PART IN RESPONSE TO SUGGESTIONS THAT THEIR

15  WITNESSES SHOULD TESTIFY BROADLY BECAUSE OUR EXPERTS WERE GOING

16  TO REDEFINE THE SCOPE OF THE PATENTS, REDEFINE WHAT FELL WITHIN

17  THE PATENTS.

18        THAT'S NOT GOING TO HAPPEN, AND SO WE'RE NOT GOING TO

19  HAVE TO WORRY ABOUT IT.

20        THE COURT:  OKAY.  ALL RIGHT.  LET'S HOPE THAT IS THE

21  CASE.

22        LET'S GO TO -- LET'S GO TO APPLE'S MOTION IN LIMINE -- I

23  WILL GO AHEAD, THEN, WITH REGARD TO MOTION IN LIMINE NUMBER 2

24  FILED BY APPLE, I WILL DENY IT WITHOUT PREJUDICE, UNDERSTANDING

25  THAT THERE WILL BE, AND MAY BE, OBJECTIONS TO PARTICULAR

```
 1    EXHIBITS AND TO PARTICULAR QUESTIONS, AND PERHAPS EVEN TO

 2    OBJECTIONS TO PARTICULAR WITNESSES THAT WE WILL HANDLE IN DUE

 3    COURSE.

 4         BUT LET'S GO TO NUMBER 3 THEN, WHICH IS EXCLUDING

 5    MR. WAGNER'S NEW DESIGN AROUND THEORIES.

 6         SO I'M GRANTING THIS MOTION AS TO ANY DESIGN AROUND

 7    THEORIES THAT ARE BASED ON THE PATENT RE-EXAMINATION

 8    PROCEEDINGS FOR THE SAME REASONS I SAID BEFORE, YOU KNOW, ONE

 9    PATENT RE-EXAM, THE '182 AND '915 IS INCONCLUSIVE, STILL

10    PENDING.  THE '381, THE PATENT CLAIM AT ISSUE WAS CONFIRMED.

11    VALIDITY IS NOT AN ISSUE.  I THINK THAT THE PROBATIVE VALUE OF

12    GETTING INTO THINGS FROM THE RE-EXAM IS VERY LOW.  AND I DON'T

13    WANT SATELLITE LITIGATION ON, YOU KNOW, WHAT DISAVOWALS OR

14    LIMITATIONS OF CLAIM SCOPE OR CONCEDED DURING THE RE-EXAM.  I

15    JUST THINK IT'S SATELLITE LITIGATION THAT'S A WASTE OF TIME AND

16    IT'S GOING TO COMPLETELY CONFUSE THE JURY.

17         SO ON 403 GROUNDS, I AM DENYING IT.

18         NOW, THERE IS AN ISSUE WITH REGARD TO THE --

19              MR. LEE:  YOUR HONOR?

20              THE COURT:  -- TO THE VERDICT -- YES?

21              MR. LEE:  I THINK THE REASONS YOU ARTICULATED WOULD

22    MEAN THE MOTION IS GRANTED AS OPPOSED TO DENIED.

23              THE COURT:  I'M SORRY.  IT'S GRANTED.  WHAT I MEANT

24    TO SAY IS THE THEORIES OF DESIGN AROUND BASED ON THE

25    RE-EXAMINATION WILL BE EXCLUDED.
```

1           MR. LEE:  OKAY.  THANK YOU.

2           THE COURT:  OKAY.  NOW, I AM PLANNING TO DENY APPLE'S

3     MOTION WITH RESPECT TO THE JURY VERDICTS OF NON-INFRINGEMENT

4     AND, YOU KNOW, I'M GOING TO GIVE APPLE AN OPPORTUNITY TO

5     RESPOND, BUT WHILE I AGREE WITH YOU THE FIRST PANDUIT FACTOR

6     REQUIRES A SHOWING OF DEMAND FOR THE PRODUCT, THE SECOND

7     PANDUIT FACTOR REQUIRES A SHOWING OF DEMAND FOR THE PATENTED

8     FEATURE TO DETERMINE WHETHER NON-INFRINGING ALTERNATIVES WERE

9     AVAILABLE, AND THE CASE LAW PRETTY CONSISTENTLY SEEMS TO HOLD

10    THAT A NON-INFRINGING ALTERNATIVE DOESN'T HAVE TO HAVE --

11    DOESN'T HAVE TO BE IDENTICAL TO THE PATENTED PRODUCT, OR

12    IDENTICAL EVEN WITH REGARD TO THE PATENTED FEATURE, THAT A

13    NON-INFRINGING PRODUCT THAT LACKS ONE OR MORE FEATURES OF THE

14    PATENTED INVENTION IS STILL A NON-INFRINGING ALTERNATIVE.  IT

15    DOESN'T HAVE TO BE AND IS NOT REQUIRED TO BE AN EMBODIMENT OF

16    THE INVENTION, AND I THINK THE CASE LAW IS PRETTY CLEAR ON

17    THAT.

18          SO I'M INCLINED TO DENY IT AS TO THE JURY VERDICT WITH

19    REGARD TO CERTAIN PRODUCTS AND ALLOW SAMSUNG TO ARGUE THAT

20    THOSE NON-INFRINGEMENT FINDINGS, THAT THOSE PRODUCTS CAN BE

21    NON-INFRINGING ALTERNATIVES.

22          DO YOU WANT TO GO AHEAD AND ADDRESS THAT?

23          MR. LEE:  I WOULD, YOUR HONOR, AND LET ME START BY

24    DEFINING WHAT WE THINK THE ISSUE IS.

25          ACTUALLY THE ISSUE IS NOT JUST NON-INFRINGING

1     ALTERNATIVE, IT'S ACCEPTABLE NON-INFRINGING ALTERNATIVES, AND

2     ONE CRITICALLY IMPORTANT FACT THAT SAMSUNG HASN'T ADDRESSED IS

3     THIS:  WITH THE EXCEPTION OF THE INTERCEPT, EVERY SINGLE OTHER

4     PRODUCT THAT WAS FOUND NOT TO INFRINGE A PARTICULAR PATENT

5     INFRINGES ANOTHER APPLE PATENT.  THEY CAN'T BE ACCEPTABLE

6     NON-INFRINGING SUBSTITUTES.

7          IT'S LIKE RITE-HITE.  IF WE HOLD ANOTHER PATENT ON THAT

8     PRODUCT, THAT'S NOT AN ACCEPTABLE NON-INFRINGING SUBSTITUTE FOR

9     THEM.

10          SO THIS IS A DIFFERENT CASE THAN MOST OF THE CASES THAT

11    ARE BEFORE YOUR HONOR.  ACTUALLY, THE RATIONALE OF RITE-HITE I

12    THINK ANSWERS THE QUESTION, BECAUSE IN RITE-HITE, IT WAS AN

13    UNPATENTED PRODUCT THAT WAS OWNED BY THE PATENTEE.

14          BUT HERE, AND I BELIEVE I HAVE THIS CORRECTLY, BUT SOMEONE

15    WHO KNOWS --

16          THE COURT:  OKAY.  I'M SORRY TO INTERRUPT YOU.

17          SO YOUR POSITION IS THAT IF A PRODUCT INFRINGES ONE APPLE

18    I.P. AND DOESN'T INFRINGE ANOTHER APPLE I.P., IT CANNOT BE A

19    NON-INFRINGING ALTERNATIVE FOR THE I.P. FOR WHICH THE PRODUCT

20    DOESN'T INFRINGE?

21          MR. LEE:  IT CAN'T BE AN ACCEPTABLE NON-INFRINGING

22    SUBSTITUTE BECAUSE THE REQUIREMENT IS THAT IT BE A COMMERCIALLY

23    ACCEPTABLE NON-INFRINGING SUBSTITUTE.

24          THE COURT:  AND WHAT IS YOUR BEST CASE FOR THAT?

25    BECAUSE OF WHAT YOU ALL CITED SO FAR, I DIDN'T SEE THAT

1    ARGUMENT, AND I DIDN'T SEE ANY CASES THAT YOU CITED THAT

2    SUPPORTED YOUR POSITION.  BUT THIS SOUNDS LIKE A NEW ARGUMENT

3    THAT I'M GOING TO HAVE TO LOOK INTO.

4            MR. LEE:  YOUR HONOR, I THINK WE TRIED TO ADDRESS IT,

5    BUT IF YOUR HONOR LOOKS AT RITE-HITE --

6            THE COURT:  OKAY.  CAN YOU GIVE ME THE CITE, PLEASE?

7            MR. LEE:  YES.  CAN I JUST HAVE A SECOND?

8            MS. MAROULIS:  YOUR HONOR, WHILE MR. LEE IS GETTING

9    THE RITE-HITE CITE, THIS IS A BRAND NEW ARGUMENT.

10           THE COURT:  I KNOW.

11           MS. MAROULIS:  AND THERE'S NOT A SINGLE CASE THAT

12   WE'RE AWARE OF THAT SAYS THAT, IN ANY JURISPRUDENCE, NOT JUST

13   IN THIS CASE.

14           THE COURT:  OKAY.  ALL RIGHT.

15           MR. LEE:  ACTUALLY -- RITE-HITE, YOUR HONOR, IS

16   56 F.3D 1538.

17           THE COURT:  56 F.3D 1538?

18           MR. LEE:  1538.  AND THE FIRST PORTION OF THE

19   OPINION, YOUR HONOR, DEALS WITH WHETHER AN UNPATENTED PRODUCT

20   SOLD BY THE PATENTEE WOULD BE A NON-INFRINGING SUBSTITUTE, A

21   COMMERCIALLY ACCEPTABLE NON-INFRINGING SUBSTITUTE, AND WE BOTH

22   HAVE BRIEFED RITE-HITE TO YOU EXTENSIVELY.

23       THE CANDID ANSWER, IN BRIEFING THE ISSUES YOUR HONOR HAS

24   ADDRESSED, AND I'VE GOT A COUPLE OTHER REASONS I'D LIKE TO PUT

25   BEFORE YOUR HONOR --

1          THE COURT:  OKAY.  MAY I ASK YOU, WHAT YEAR IS

2     RITE-HITE?

3          MR. LEE:  RITE-HITE IS 1995.  IT'S AN EN BANC

4     DECISION BY JUDGE LOURIE.

5          THE COURT:  OKAY.

6          MR. LEE:  BUT, YOUR HONOR, THIS IS THE DIFFERENCE

7     BETWEEN SAMSUNG AND US, I THINK, AT A COUPLE DIFFERENT POINTS.

8     RITE-HITE AND THE DAMAGES LAW THAT HAS FOLLOWED HAVE TRIED TO

9     GET THE DAMAGES LAW PRINCIPLES CONSISTENT WITH WHAT'S GOING ON

10    IN THE REAL WORLD AND WITH REAL WORLD VALUE, AND WHAT RITE-HITE

11    SAYS IN DEALING WITH THIS UNPATENTED PRODUCT IS, "WELL, WAIT A

12    MINUTE, THE UNPATENTED PRODUCT'S OWNED BY THE PATENTEE.  THAT'S

13    NOT GOING TO BE A COMMERCIALLY REASONABLE SUBSTITUTE FOR YOU."

14         AND IF YOUR HONOR, WHEN YOU GET TO THAT PORTION, IT'S AT

15    PAGE 1548 ON THE RIGHT-HAND COLUMN, AND IT'S --

16         THE COURT:  OKAY.

17         MR. LEE:  -- THE REMAINING DISCUSSION ON THIS

18    UNPATENTED DEVICE.

19         THE COURT:  OKAY.

20         MR. LEE:  AND IT CONTINUES OVER ON TO 1549 UNTIL

21    ROMAN NUMERAL II.

22         AND SO TO GO TO YOUR HONOR'S TENTATIVE RULING, LET ME SAY

23    THESE THREE THINGS.  ONE IS IT'S NOT AN ACCEPTABLE

24    NON-INFRINGING SUBSTITUTE IF IT'S, IN FACT, OWNED BY THE

25    PATENTEE, WHICH IS TRUE HERE.

1          THE SECOND, YOUR HONOR, IS THIS THEORY THAT IF THERE ARE

2     SOME PATENTS THAT ARE NOT INFRINGED, THEY'RE ACCEPTABLE

3     NON-INFRINGING SUBSTITUTES, THAT'S A THEORY THAT COULD HAVE

4     BEEN OFFERED BY MR. WAGNER IN THE FIRST TRIAL.  YOU'LL RECALL

5     THAT THEY SAID THEY DIDN'T INFRINGE ANY OF OUR I.P.

6          AND THE IDEA THAT IF THE JURY HAD AGREED WITH SAMSUNG ON

7     SOME PATENTS, WHICH THEY DID, OR SOME PRODUCTS, THEN THOSE

8     BECAME ACCEPTABLE NON-INFRINGING SUBSTITUTES --

9          THE COURT:  BUT I THOUGHT HE DID TESTIFY THAT IF ANY

10    OF THE PRODUCTS WERE FOUND NOT TO INFRINGE, THOSE WOULD BE

11    NON-INFRINGING ALTERNATIVES.

12          MR. LEE:  VERY --

13          MS. MAROULIS:  YES, YOUR HONOR, HE DID.  IN TRIAL

14    TRANSCRIPT PAGE 3038, LINES 4 THROUGH 19, MR. WAGNER SAID THAT

15    THOSE PRODUCTS WOULD BE COMMERCIALLY ACCEPTABLE ALTERNATIVE

16    DESIGNS THAT COULD HAVE BEEN USED INSTEAD OF THE INFRINGING

17    DESIGNS.

18          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19          MR. LEE:  AND YOUR HONOR, IF I COULD JUST --

20          THE COURT:  THAT ONE IS NOT PERSUADING ME.

21    RITE-HITE, I'M INTRIGUED.  BUT THE SECOND ARGUMENT IS KIND OF A

22    LOSER, SO IF YOU WANT TO MOVE ON TO THE THIRD ONE?  IT'S JUST

23    THAT WE HAVE SO MUCH TO COVER TODAY.

24          MR. LEE:  I KNOW.  TWO SENTENCES ON THIS ONE.

25          THE COURT:  OKAY.

1          MR. LEE:  HE DID SAY THAT, AND I WAS GOING TO CONCEDE

2     THAT HE DID.

3          THE COURT:  UH-HUH.

4          MR. LEE:  IT'S NOWHERE IN HIS EXPERT REPORT, AT ALL.

5     THIS IS SOMETHING THAT GOT POPPED ON US AT THE TRIAL.

6        NOW, IT BECAME UNIMPORTANT ULTIMATELY, BUT IT'S NOT, WE

7     BELIEVE, IN HIS EXPERT REPORT.

8        BUT LET ME MOVE ON.  THE THEORY IS WRONG FOR TWO REASONS.

9     ONE IS THE REASON I JUST MENTIONED UNDER RITE-HITE.

10        THE SECOND, YOUR HONOR, GOES AGAIN TO THE CHARACTERIZATION

11    OF THE ISSUE, WHICH IS A COMMERCIALLY ACCEPTABLE NON-INFRINGING

12    SUBSTITUTE.

13          THE COURT:  LET ME ASK ON NUMBER 2, DID YOU ALL

14     OBJECT?  YOU DIDN'T OBJECT, I THINK --

15          MR. LEE:  NO, I DON'T --

16          THE COURT:  SO --

17          MR. LEE:  THE ANSWER IS NO.

18          THE COURT:  THE ANSWER IS NO?

19          MR. LEE:  NO.  THE ANSWER IS WE DID NOT OBJECT.

20          THE COURT:  ALL RIGHT.

21          MR. LEE:  SO IF I GO TO THE MERITS, I'VE GIVEN YOU

22     THE FIRST REASON, WHICH IS RITE-HITE.

23        BUT HERE IS THE SECOND REASON.

24          THE COURT:  OKAY.

25          MR. LEE:  AND IT AGAIN GOES TO THE QUESTION OF IT

1    BEING A COMMERCIALLY ACCEPTABLE NON-INFRINGING SUBSTITUTE.

2         WE DON'T HAVE ANY IDEA WHY THE JURY FOUND THESE PRODUCTS

3    TO BE NON-INFRINGING.  THEY COULD HAVE DECIDED THAT THE FEATURE

4    IS NOT THERE, THE FEATURE DOESN'T SATISFY ALL OF THE

5    LIMITATIONS.  IT DOESN'T SATISFY ALL OF THE LIMITATIONS, AND BY

6    THE WAY, WE THINK IT DOESN'T DO WHAT THE APPLE PATENTS CLAIM.

7         IN FACT, MR. WAGNER BASICALLY CONCEDED IN HIS DEPOSITION

8    THAT HE DOESN'T HAVE A CLUE WHY THE JURY REACHED THE DECISION

9    THEY REACHED.

10         THE COURT:  UM-HUM.

11         MR. LEE:  SO THAT'S WHY THE PHRASING OF THE ISSUE,

12   WHICH IS AN ACCEPTABLE NON-INFRINGING SUBSTITUTE, IS SO

13   IMPORTANT, BECAUSE THERE IS NOTHING TO BE DRAWN FROM -- ON THAT

14   ISSUE FROM THE JURY'S VERDICT.

15         THE COURT:  UM-HUM.

16         MR. LEE:  AND, YOUR HONOR, THERE'S A 403 ASPECT TO IT

17   AS WELL.  THE IDEA THAT THEY WOULD BE -- THAT THE JURY WOULD BE

18   TOLD THAT CERTAIN PRODUCTS DIDN'T INFRINGE, WITHOUT ANY BASIS

19   TO DETERMINE WHETHER THEY'RE ACCEPTABLE OR NOT, WOULD BE VERY

20   PREJUDICIAL AND ULTIMATELY --

21         THE COURT:  BUT WHY ISN'T THAT A WEIGHT AND NOT AN

22   ADMISSIBILITY ISSUE?  THAT'S WHEN YOU ALL DO THE KILLER

23   CROSS-EXAMINATION, RIGHT?  I MEAN, WHY SHOULD THAT EVEN BE

24   ADMITTED?

25         MR. LEE:  YOUR HONOR, BECAUSE IT'S -- I THINK

1    ALLOWING THE JURY -- HAVING THE JURY BE INSTRUCTED ON VERDICTS

2    REACHED BY ANOTHER JURY AND HAVING THEM SPECULATE AS TO THE

3    REASON WHY, IT'S JUST -- IT JUST INJECTS AN UNCERTAINTY, A

4    PREJUDICE.

5         WE CAN DO THE CROSS-EXAMINATION.  BUT YOUR HONOR WOULD

6    BE -- WE WOULD BE ASKING THEM, BASED UPON THE CROSS OF THE

7    WITNESS, TO SAY, "BELIEVE US," RIGHT?  "HE DOESN'T HAVE A CLUE

8    WHAT THIS OTHER JURY DECIDED."

9         THE COURT:  RIGHT.  BUT, YOU KNOW, YOU WOULD CONCEDE

10   THAT A NON-INFRINGING ALTERNATIVE DOESN'T HAVE TO BE AN

11   EMBODIMENT OF THE PATENT; CORRECT?

12        MR. LEE:  TRUE.

13        THE COURT:  SO IF IT DOESN'T HAVE TO BE EXACTLY THE

14   SAME, IT DOESN'T HAVE TO DO THINGS EXACTLY THE SAME WAY, IT

15   DOESN'T HAVE TO HAVE ALL THE EXACT SAME PATENTED FEATURES, THEN

16   WHAT DOES IT MATTER?

17        MR. LEE:  IT MATTERS, YOUR HONOR --

18        THE COURT:  IT STILL IS A NON-INFRINGING ALTERNATIVE

19   THAT THE JURY SHOULD AT LEAST BE ABLE TO CONSIDER.

20        MR. LEE:  YOUR HONOR, IT HAS TO BE AN ACCEPTABLE

21   NON-INFRINGING ALTERNATIVE.

22        NOW, THERE'S A COUPLE POSSIBILITIES, RIGHT?  THE FACT THAT

23   THE JURY FOUND THAT THESE DIDN'T INFRINGE DOESN'T MAKE IT

24   ACCEPTABLE OR NOT.

25        THE COURT:  UM-HUM.

1          MR. LEE:  AND, YOU KNOW, MAYBE THE LINE IS THIS, YOUR

2    HONOR:  IF -- AND, AGAIN, WE DON'T THINK THAT MR. WAGNER'S

3    QUALIFIED TO DO THIS, BUT IF MR. WAGNER WANTS TO TAKE PRODUCT X

4    THAT WAS FOUND BY THE JURY NOT TO INFRINGE AND SAY, "HERE'S A

5    NON-INFRINGING SUBSTITUTE," SET IT -- YOU KNOW, I UNDERSTAND

6    THAT YOUR HONOR'S PROBABLY GOING TO NOT BE PERSUADED BY OUR

7    PROCEDURAL ARGUMENTS, BUT IF HE GETS UP AND SAYS "HERE'S PHONE

8    X.  I THINK IT'S A NON-INFRINGING SUBSTITUTE," WE'LL

9    CROSS-EXAMINE HIM ON THAT.

10         THAT'S DIFFERENT THAN THE JURY BEING TOLD, "ANOTHER JURY

11   FOUND THIS NOT TO BE INFRINGING."

12         THE LATTER IS MUCH MORE PREJUDICIAL TO US, AND IF WHAT

13   YOUR HONOR IS REALLY CONCERNED ABOUT IS THEIR ABILITY TO SAY,

14   "WELL, HERE'S THIS OTHER PHONE, IT WASN'T FOUND TO BE -- IT'S

15   NOT -- IT'S A COMMERCIALLY ACCEPTABLE SUBSTITUTE," IF HE WANTS

16   TO SAY THAT, THEN WE'LL CROSS-EXAMINE HIM ON THAT.

17         BUT THAT'S DIFFERENT THAN SAYING "A PRIOR JURY MADE A

18   DETERMINATION."  AM I CLEAR --

19         THE COURT:  HOW IS IT PREJUDICIAL?  THAT IS THE

20   TRUTH.  THAT IS WHAT A JURY FOUND.

21         MR. LEE:  BUT --

22         THE COURT:  I KNOW THAT'S NOT BENEFICIAL TO YOUR

23   CASE, BUT I DON'T SEE HOW THAT'S PREJUDICIAL.  THAT IS THE

24   TRUTH.

25         MR. LEE:  WELL, YOUR HONOR, IT'S -- TO GIVE YOU AN

1    ANALOGY, AND AT SOME POINT TODAY WE'LL TALK ABOUT THE

2    WILLFULNESS ISSUE, THE PRIOR JURY FOUND THAT THE INFRINGEMENT

3    WAS WILLFUL.  YOUR HONOR SET IT ASIDE UNDER BAR.  BUT THE TRUTH

4    FOR THIS JURY IS THAT THE PRIOR JURY FOUND IT TO BE WILLFUL.

5         WE UNDERSTAND, WE THINK, THE WILLFULNESS SHOULD NOT BE

6    BEFORE THEM AT ALL.

7         SO THERE ARE CERTAIN THINGS THAT THIS -- THAT THE PRIOR

8    JURY FOUND AND DECIDED, LIKE WILLFULNESS, THAT WE THINK, EVEN

9    THOUGH TRUE, SHOULDN'T GO BEFORE THE NEW JURY.

10         THE COURT:  OKAY.

11         MR. LEE:  I THINK WE'RE A STEP FURTHER DOWN THE ROAD,

12    WHICH IS IT'S NOT JUST IS IT TRUE, THE QUESTION IS, WHAT ARE

13    YOU ASKING THEM TO DO WITH IT?

14         THE COURT:  UM-HUM.

15         MR. LEE:  AND REALLY WHAT WE'RE ASKING THEM TO DO IS

16    TO SPECULATE ABOUT WHETHER THEY FOUND THE FEATURE, THEY FOUND

17    THE FEATURE TO BE DIFFERENT, THE FEATURE DIDN'T WORK AS THEY

18    THOUGHT THE PATENT DID, THAT'S THE SPECULATION THAT WE'RE

19    CONCERNED ABOUT.

20         THE COURT:  ALL RIGHT.  WELL, LET ME -- SINCE WE HAVE

21    SO MANY ISSUES TO COVER TODAY, I'M INCLINED -- I THINK THAT ON

22    THIS ISSUE, BECAUSE IT'S AN IMPORTANT ONE AND THE LAW IS

23    COMPLICATED, I WILL NEED TO GIVE YOU A WRITTEN RULING ON THIS

24    ONE.

25         SO I WANTED TO ASK IF, SAMSUNG, IF YOU WANTED -- I DON'T

1    KNOW IF YOU EVEN LOOKED AT RITE-HITE IN THIS WAY -- IF YOU

2    WANTED TO FILE, LIKE, A TWO PAGE RESPONSE, I'D GIVE YOU TIME TO

3    DO THAT.

4         MS. MAROULIS:  YES, YOUR HONOR, WE'D LIKE TO ADDRESS

5    THAT.

6         BUT FUNDAMENTALLY, THE RITE-HITE CASE, FROM WHAT I

7    REMEMBER IN READING IT FOR OTHER PURPOSES, DOES NOT SAY THAT

8    THE ONLY ACCEPTABLE NON-INFRINGING SUBSTITUTE IS THE ONE THAT

9    DOESN'T INFRINGE ANYONE'S PATENT AT ALL.  THAT'S NOT THE

10   REQUIREMENT OF THE LAW.  WE DON'T BELIEVE THAT'S WHAT THE LAW

11   SAYS.

12        THE COURT:  OKAY.

13        MS. MAROULIS:  OBVIOUSLY THIS CASE WAS SPRUNG ON US

14   TODAY.  IT'S NOT CITED ANYWHERE IN APPLE'S MOTION IN LIMINE.

15        APPLE ALSO DOESN'T USE THE WORDS "COMMERCIALLY ACCEPTABLE

16   ALTERNATIVES" IN THEIR PROPOSED JURY INSTRUCTIONS AND LOST

17   PROFITS.  THIS IS A BRAND NEW THEORY.

18        IF IT'S HELPFUL TO YOUR HONOR, WE'LL DEFINITELY FILE

19   SOMETHING VERY QUICKLY ON THIS.

20        BUT THE FUNDAMENTAL ISSUE IS THIS:  APPLE'S OWN EXPERT IS

21   USING THESE PRODUCTS AS NON-INFRINGING ALTERNATIVES.  WE

22   DEPOSED HER.  SHE ADMITTED THAT SHE WAS USING THEM IN HER

23   ANALYSIS.  FOR APPLE NOW TO SAY "THESE DON'T MATTER, THEY'RE

24   NOT ALTERNATIVES, OR THEY'RE NOT ACCEPTABLE, WE DON'T KNOW WHY

25   THE JURY FOUND THEM TO BE SO," THE FACT THAT THE JURY FOUND

1    THEM TO NOT INFRINGE IS WHAT MAKES THEM NON-INFRINGING

2    SUBSTITUTES.  WHY THE JURY DID THAT IS NOT IMPORTANT.  THE FACT

3    IS THAT THEY ARE NON-INFRINGING SUBSTITUTES.

4         AND AT THE TRIAL, IN ADDITION TO THAT, APPLE ARGUED AT

5    LENGTH THAT THESE PHONES WERE EXTREMELY SUCCESSFUL, VERY

6    POPULAR, AND IN GREAT DEMAND, WHICH ALSO MAKES THEM

7    COMMERCIALLY ACCEPTABLE, IF THAT WERE THE REQUIREMENT, WHICH IT

8    IS NOT.

9         TO SUGGEST THAT NOW SAMSUNG'S EXPERT, MR. WAGNER, CANNOT

10    RELY ON THEM IS DISINGENUOUS.

11         SO WE'LL ADDRESS THE LEGAL ARGUMENT IN THE WRITTEN

12    SUBMISSION, BUT THERE'S AT LEAST SEVERAL REASONS WHY THIS

13    ARGUMENT FAILS.  ONE OF THEM IS APPLE IS USING THEM IN THE SAME

14    WAY AS SAMSUNG; THESE PRODUCTS WERE FOUND AS A MATTER OF LAW,

15    FACT, TO BE NON-INFRINGING; AND MR. WAGNER IS ENTITLED TO RELY

16    ON THEM.

17              THE COURT:  ALL RIGHT.  WELL, LET'S FIGURE OUT, ARE

18    YOU GOING TO WANT A RESPONSE, MR. LEE?

19              MR. LEE:  YES, A BRIEF ONE.

20              THE COURT:  I MEAN IN WRITING.  DO YOU WANT ONE IN

21    WRITING?

22              MR. LEE:  YES.

23              THE COURT:  CAN WE SET UP A SCHEDULE FOR THAT NOW?

24              MS. MAROULIS:  ACTUALLY, YOUR HONOR, MY TEAM MEMBERS

25    SUGGEST THAT SINCE APPLE SAYS THERE'S SOME CASE LAW THAT

1    SUPPORTS THEM, THEY SHOULD FILE IT FIRST AND WE'LL FILE A

2    RESPONSE.

3            MR. LEE:  I CAN MAKE IT EVEN EASIER TO MAKE IT EASIER

4    FOR YOU TO RESPOND.  LET ME READ TO YOU FROM RITE-HITE.  "HERE,

5    THE ONLY SUBSTITUTE FOR THE PATENTED DEVICE WAS THE ADL-100,

6    ANOTHER OF THE PATENTEE'S DEVICES.  SUCH A SUBSTITUTE WAS NOT

7    AN 'ACCEPTABLE, NON-INFRINGING SUBSTITUTE' WITHIN THE MEANING

8    OF PANDUIT BECAUSE, BEING PATENTED BY RITE-HITE, IT WAS NOT

9    AVAILABLE TO CUSTOMERS."

10        THAT'S EXACTLY THE SITUATION.

11           THE COURT:  OKAY.  I STILL THINK IT WOULD BE HELPFUL,

12   BECAUSE EVERYTHING IN THIS CASE IS A MOVING AND EVOLVING

13   TARGET, IT WOULD JUST BE HELPFUL IF YOU JUST WANTED A

14   PARAGRAPH -- I MEAN, I'LL GIVE YOU -- IF YOU DON'T WANT TO FILE

15   ANYTHING OTHER THAN THAT QUOTE, THAT'S OKAY.  THAT'S YOUR, YOU

16   KNOW, OPTION IF THAT'S WHAT YOU'D LIKE.

17           MR. LEE:  HOW ABOUT TWO PAGES BY MONDAY?

18           THE COURT:  THAT'S FINE.  OKAY.  ALL RIGHT.  OH,

19   YEAH, BECAUSE TODAY IS ALREADY THE 17TH.  THAT'S FINE.

20           MR. LEE:  YEAH.

21           THE COURT:  ALL RIGHT.  SO APPLE IS GOING TO FILE TWO

22   PAGES ON OCTOBER 21.

23        AND THEN, MS. MAROULIS, WHEN -- DO YOU WANT A TWO PAGE

24   RESPONSE?

25           MS. MAROULIS:  WEDNESDAY, YOUR HONOR, THE 23RD?

1           THE COURT:  THAT'S FINE.

2           MS. MAROULIS:  THANK YOU.

3           MR. LEE:  AND YOUR HONOR, IF I COULD JUST -- AS YOUR

4    HONOR CONSIDERS THE MOTION, AND WE WON'T ADDRESS THIS IN THE

5    WRITTEN SUBMISSION, BUT THERE ARE A COUPLE OTHER ASPECTS OF THE

6    MOTION CONCERNING MR. WAGNER.  ONE IS HIS RELIANCE ON

7    POST-TRIAL CONVERSATIONS WITH SAMSUNG TECHNICAL EXPERTS.

8    THAT'S A SEPARATE ISSUE, THAT HE RELIES UPON IT FOR NEW DESIGN

9    AROUNDS OR NEW ACCEPTABLE --

10          THE COURT:  OH, THAT'S EXCLUDED.  I THOUGHT THAT WAS

11   LATER, THOUGH.  I THOUGHT THAT HAD TO DID WITH YEE, SHIN, AND

12   THE THIRD ENGINEER, PARK.

13          MR. LEE:  THE CANDID ANSWER IS, YOUR HONOR, LIKE A

14   LOT OF WHAT WE BRIEFED, IT OVERLAPS.

15          THE COURT:  IT'S ALL OVERLAPPING.

16          MS. MAROULIS:  I THINK IT'S A DIFFERENT ISSUE, YOUR

17   HONOR, BUT --

18          THE COURT:  OKAY.  WELL, WITH -- OKAY.  SO WITH

19   REGARD TO THE DESIGN AROUNDS BASED ON THE RE-EXAM, THE MOTION

20   IS GRANTED.

21      WITH REGARD TO DESIGN AROUNDS BASED ON THE JURY'S

22   NON-INFRINGEMENT FINDINGS AS TO '915 AND '163, IT'S TENTATIVELY

23   DENIED SUBJECT TO FURTHER BRIEFING FROM THE PARTIES.

24          THAT'S TRUE AS TO THE D'677 JURY NON-INFRINGEMENT FINDING.

25          WITH REGARD TO THE THEORIES FIRST DISCLOSED ON THE

1    POST-TRIAL BRIEFING ON THE PERMANENT INJUNCTION, I WOULD GRANT

2    THAT AS WELL.

3        OKAY.  SO THE ONLY THING THAT'S STILL REALLY LIVE IS, YOU

4    KNOW, WHETHER THE JURY'S NON-INFRINGEMENT FINDINGS ESTABLISH

5    NON-INFRINGING ALTERNATIVES.  OKAY?

6        ALL RIGHT.  LET ME ASK A RELATED QUESTION, AND MAYBE THIS

7    ACTUALLY GOES TO A LATER MOTION, BUT I DID WANT TO JUST RAISE

8    IT.  SO IT APPEARED THAT THE FEDERAL CIRCUIT LAW WAS PRETTY

9    CONSISTENT THAT PANDUIT FACTOR 1 IS DEMAND FOR PRODUCTS;

10   PANDUIT FACTOR 2 IS DEMAND FOR THE PATENTED FEATURE TO

11   ESTABLISH THE AVAILABILITY OF NON-INFRINGING ALTERNATIVES.

12       BUT THEN THERE'S A 2013 CALICO CASE, WHICH IS CONSISTENT

13   ON PANDUIT FACTOR 2, BUT THEN SEEMS TO BE CONTRARY TO EXISTING

14   FEDERAL CIRCUIT LAW AS TO PANDUIT FACTOR 1.

15       DOES ANYONE WANT TO ADDRESS THIS QUESTION?

16       MS. MAROULIS:  YOUR HONOR, MR. ANDERSON OF OUR TEAM

17   WILL ADDRESS THAT.

18       THE COURT:  OH, OKAY.  THANK YOU.

19       WHAT AM I SUPPOSED TO DO WITH CALICO?  IS THAT JUST AN

20   ANOMALY OR IS THAT THE NEW LAW NOW?  WHAT --

21       MR. ANDERSON:  WE AGREE, YOUR HONOR, IT'S SOMEWHAT

22   LESS THAN CLEAR ABOUT PANDUIT FACTOR 1 VERSUS PANDUIT FACTOR 2.

23       WHAT YOUR HONOR JUST SAID BEFORE ABOUT THE LAW, THAT

24   UNDER -- THAT DEMAND FOR THE PATENTED FEATURE SPECIFICALLY GOES

25   TO PANDUIT FACTOR 2, THE AVAILABILITY OF NON-INFRINGING

1    ALTERNATIVES, I BELIEVE THAT'S TRUE AND THAT'S NOT DISPUTED.

2         CALICO JUST SEEMS TO KIND OF BLUR TOGETHER 1 AND 2.

3              THE COURT:  UM-HUM.

4              MR. ANDERSON:  AND WE'RE NOT -- SAMSUNG IS NOT

5    RELYING ON IT FOR ANY PURPOSE TO SAY THAT, NO, THE LAW HAS

6    CHANGED, IT'S BACK TO PANDUIT FACTOR 1.

7         THE REALITY IS IN THIS CASE, PANDUIT FACTOR 1 IS A VERY

8    LOW BAR TO GET OVER BECAUSE IT'S DEMAND FOR THE PATENTED

9    PRODUCTS.

10             THE COURT:  UM-HUM.

11             MR. ANDERSON:  RIGHT?  SALES VOLUME SHOWS THAT.  WE

12   DON'T NEED TO BE ARGUING ABOUT THAT.

13             THE COURT:  UM-HUM.

14             MR. ANDERSON:  SO -- BUT APART FROM THAT WRINKLE THAT

15   CALICO BRAND SEEMS TO BE A LITTLE VAGUE ON WHAT FACTOR 1 IS AND

16   WHAT FACTOR 2 IS, THE IMPORTANCE OF CALICO BRAND IS IT SAYS IF

17   YOU CAN'T SHOW DEMAND FOR THE PATENTED FEATURES, NO LOST

18   PROFITS, AND THAT IS CONSISTENT WITH ALL THE OTHER FEDERAL

19   CIRCUIT LAW.

20             THE COURT:  UM-HUM.

21             MR. LEE:  TWO THINGS, YOUR HONOR.  FIRST, CALICO IS A

22   NON-PRECEDENTIAL OPINION OF THE FEDERAL CIRCUIT, WHICH --

23             THE COURT:  WAS THAT BECAUSE IT WASN'T PUBLISHED, OR

24   WHY --

25             MR. LEE:  THEY LABELLED IT NON-PRECEDENTIAL WHEN

1   THEY -- EVERYTHING IS PUBLISHED TODAY.

2          THE COURT:  RIGHT.

3          MR. LEE:  EVERYTHING IN THE WORLD IS PUBLISHED TODAY.

4      BUT THEY LABEL CERTAIN THINGS PRECEDENTIAL AND CERTAIN

5   THINGS NON-PRECEDENTIAL.

6          THE COURT:  OKAY.

7          MR. LEE:  IN THE OLD DAYS, YOU WERE NOT ALLOWED TO

8   CITE NON-PRECEDENTIAL OPINIONS, BUT I THINK REALITY HAS SET IN

9   AND YOU CAN CITE THEM, BUT THEY HAVE MUCH LESS WEIGHT, IN PART

10  BECAUSE THEY'RE USUALLY DETERMINED ON THEIR SPECIFIC FACTS.

11     AND THAT ACTUALLY IS THE ANSWER ON CALICO, BECAUSE IF THE

12  COURT CONSIDERS THE FACTS IN CALICO, THE ONLY EVIDENCE OF

13  DEMAND FOR THE PATENTED PRODUCT OR FEATURE WAS GROSS SALES

14  INFORMATION.

15         THE COURT:  UM-HUM.

16         MR. LEE:  AND WHAT THE CALICO COURT SAID IS THAT

17  "ACTUALLY, THE EVIDENCE IS THAT'S NOT WHAT WILL DETERMINE

18  DEMAND.  DEMAND HERE IS DETERMINED ON THE BASIS OF PRICE, SO WE

19  FIND THAT WHAT YOU HAVE OFFERED US, WHICH IS EVIDENCE OF GROSS

20  SALES DATA, IS NOT SUFFICIENT."  AND THAT'S ALL THAT THAT CASE

21  STANDS FOR.

22     AND I THINK ACTUALLY, YOUR HONOR, WE PROBABLY AGREE,

23  THERE'S A CONSISTENT LINE OF CASES CONSIDERING PANDUIT 1 AND

24  PANDUIT 2, WHICH WE'VE BRIEFED TO YOUR HONOR REPEATEDLY, AND I

25  DON'T THINK CALICO CHANGES THAT AT ALL.

1    IT'S A NON-PRECEDENTIAL OPINION, VERY SPECIFIC FACTS AND,

2    FUNDAMENTALLY, BASED UPON A DISAGREEMENT AS TO WHETHER THE

3    GROSS SALES DATA WAS SUFFICIENT TO DEMONSTRATE DEMAND.

4        THE COURT:  LET ME ASK, CAN WE ALSO SET A -- I'D LIKE

5    TO SET A SCHEDULE BY WHICH YOU ALL WILL MEET AND CONFER IN

6    PERSON TO SEE IF YOU CAN REACH SOME AGREEMENTS AND STIPULATIONS

7    AS TO WHAT INFORMATION IS COMING IN AND HOW IT'S COMING IN, AND

8    THEN SET UP A SCHEDULE WHERE YOU CAN LET ME KNOW IN TIME SO

9    THAT WE CAN INCORPORATE THAT INTO THE WORK THAT WE HAVE TO DO.

10   WE HAVE QUITE A BIT OF WORK TO DO HERE.

11       SO WHEN IS IT POSSIBLE FOR YOU TO MEET?  WHEN IS IT

12   POSSIBLE FOR YOU TO FILE AN UPDATE WITH THE COURT SAYING, OKAY,

13   CERTAIN MOTIONS NO LONGER -- THAT WE DON'T HAVE TO KEEP

14   CHURNING OUT ORDERS ON THOSE?

15       MR. LEE:  CAN WE TALK AMONG THE THREE OF US AT THE

16   FIRST RECESS, AT THE RECESS AND THEN COME BACK AND TELL YOUR

17   HONOR?

18       THE COURT:  OKAY.  BUT LET'S JUST -- IF I FORGET

19   BEFORE WE LEAVE TODAY, CAN YOU REMIND ME THAT WE DO NEED TO --

20   I'LL MAKE A NOTE TO MYSELF THAT WE NEED TO SET A SCHEDULE FOR A

21   MEET AND CONFER AND THEN FOR A FILING ON ANY AGREEMENTS.

22       I MEAN, YOU HAVE LIMITED TIME, SO IT MIGHT BE IN YOUR

23   INTEREST TO STIPULATE TO THINGS THAT ARE NOT -- YOU KNOW, THAT

24   YOU REALLY DON'T NEED TO HAVE LIVE TESTIMONY ABOUT.

25       DID YOU WANT TO ADD ANYTHING ON CALICO, MR. ANDERSON?

1          MR. ANDERSON:  YES, I DID.

2          THE COURT:  OKAY.

3          MR. ANDERSON:  THE CASES -- I MEAN, THE RULE HAS BEEN

4     SUPERSEDED.  I'M NOT SURE IT MEANS ANYTHING THAT IT'S NOT

5     PUBLISHED ANYMORE.  IT MEANS IT'S GOING IN FED APPENDIX INSTEAD

6     OF F.3D.

7          THE CASE -- I DISAGREE WITH MR. LEE ABOUT WHAT THE CASE

8     TURNS ON.  IT'S A CASE WHERE THERE'S A LIGHTER, LIKE FOR A

9     BARBECUE GRILL, AND THERE'S A PATENT ON THE SAFETY TRIGGER SO

10    THAT YOU DON'T ACCIDENTALLY CLICK THE LIGHTER.

11         AND MR. LEE IS RIGHT.  THERE WAS NO EVIDENCE OF DEMAND FOR

12    THE PATENTED FEATURE.

13         WHAT THERE WAS, WAS EVIDENCE OF PEOPLE BUYING LIGHTERS

14    LIKE THIS FOR PRICE.

15         AND I WOULD SUBMIT THAT IN SAMSUNG'S OPINION, THAT'S

16    PRETTY SQUARELY ON POINT HERE.  NO ONE BUYS THESE PHONES FOR

17    THE PATENTED FEATURES THAT ARE IN THE ISSUE IN THE NEW TRIAL,

18    SO WE THINK THIS CASE ACTUALLY IS QUITE INFORMATIVE AND ON

19    POINT.

20         THE COURT:  ALL RIGHT.  LET'S GO TO THE NEXT -- ALL

21    RIGHT.  THE MOTION IN LIMINE FILED BY SAMSUNG AS TO COPYING,

22    OBVIOUSLY WE ARE STILL GOING THROUGH WHAT WAS FILED ON SUNDAY

23    AND TUESDAY.  I THINK THIS IS PROBABLY MORE APPROPRIATELY

24    DECIDED ON AN INDIVIDUAL DOCUMENT OR TESTIMONY BASIS.

25         HOWEVER, I DO THINK THAT IT IS RELEVANT TO DEMAND, WHICH

1    IS PART OF APPLE'S BURDEN, SO I THINK IT'S RELEVANT AND IT'S

2    GOING TO COME IN.  WHETHER WE CALL IT COPYING OR WHETHER WE

3    CALL IT DEMAND, IT ALMOST -- YOU KNOW, WE'RE IN THE SAME ISSUE

4    WITH REGARD TO WHETHER IT'S NON-INFRINGING ALTERNATIVE VERSUS

5    INVALIDITY.

6         SO --

7              MR. PRICE:  YOUR HONOR, IF I COULD SUGGEST THAT MAYBE

8    WE GET SOME GUIDELINES FROM THE COURT AND MAYBE GIVE SOME

9    BACKGROUND AS TO HOW WE SEE DOING THAT, BECAUSE I THINK THERE

10   ARE SOME DOCUMENTS WHICH SIMPLY SHOULDN'T COME IN, PERIOD, KIND

11   OF CATEGORIES.

12        THERE'S SOME WHICH I BELIEVE, IF YOU DO A 403 ANALYSIS,

13   WHICH APPLE DOESN'T DO AT ALL, SHOULD NOT COME IN.

14             THE COURT:  OKAY.

15             MR. PRICE:  AND THERE'S A RANGE OF THESE.  AND

16   ACTUALLY, WE PREPARED SOME SLIDES WHICH MIGHT HELP A BIT.

17        DO WE HAVE THOSE?

18        AND THEY'RE SLIDES FOR THEIR VARIOUS MOTIONS, SO THEY'RE

19   NOT IN THE RIGHT NUMERICAL ORDER.

20             THE COURT:  CAN YOU GIVE ONE TO MR. MCELHINNY,

21   PLEASE?

22             MR. ANDERSON:  (HANDING.)

23             MR. MCELHINNY:  THANK YOU.

24             THE COURT:  ANY MORE?  DO YOU HAVE ANY MORE COPIES?

25        THANK YOU.

1          MR. PRICE:  AND, YOUR HONOR, THERE'S NO QUESTION, YOU

2    CAN PROBABLY CATEGORIZE ANY DOCUMENT THAT PRAISES AN APPLE

3    PRODUCT OR A SPECIFIC FEATURE AS HAVING SOME, YOU KNOW,

4    RELEVANCE, TANGENTIAL RELEVANCE TO DEMAND.

5          BUT IF WE'RE LOOKING AT THE FIRST FACTOR, AND IF I COULD

6    CALL YOUR ATTENTION TO SLIDE 9 -- I'M SORRY.  I'M ON THE WRONG

7    ONE.  HERE WE GO.  SLIDE 10, YOUR HONOR.

8          MR. MUSIKA'S TESTIMONY AT TRIAL -- REMEMBER, IN THE FIRST

9    TRIAL, APPLE WAS TRYING TO GET DAMAGES ON THESE SAME PRODUCTS.

10          THE ENTIRETY OF HIS TESTIMONY ON PANDUIT FACTOR 1 IS WHAT

11    YOU SEE ON SLIDE 9.  THEY ASKED, "WHAT DID YOU FIND?"

12          AND HE SAID THAT "THERE WAS ADEQUATE EVIDENCE OF DEMAND,

13    AND I THINK THAT'S RATHER STRAIGHTFORWARD, THAT APPLE'S IPHONES

14    AND IPADS HAVE BEEN TREMENDOUSLY SUCCESSFUL AND THERE IS A

15    SIGNIFICANT DEMAND IN THE MARKETPLACE FOR THEIR PRODUCTS."

16          THAT WAS IT.

17          NOW, I'M NOT SAYING THAT HE -- OR THAT APPLE IS LIMITED TO

18    THAT FOR THIS TRIAL AT ALL.

19          THE COURT:  UM-HUM.

20          MR. PRICE:  I'M SAYING, THOUGH, THAT WHEN YOU'RE

21    DOING A WEIGHING OF THE EVIDENCE, THAT IS, IS ITS POTENTIAL TO

22    PREJUDICE AND CONFUSE GREATER THAN ITS, ITS PROBATIVE VALUE,

23    THEN THIS IS INFORMATIVE BECAUSE IT KIND OF SHOWS YOU, THE

24    FIRST TIME AROUND, APPLE, AND THEIR EXPERT PRESENTED TO THE

25    JURY, DIDN'T THINK IT WAS NECESSARY TO HAVE THEIR EXPERT, IN

1    TALKING ABOUT THE FIRST FACTOR, DEMAND, TO GO THROUGH 80

2    DOCUMENTS TO SHOW THERE'S DEMAND.

3         THERE IS GOOD, DIRECT EVIDENCE OF DEMAND.

4         SO THE QUESTION IS, ON ANY PARTICULAR PIECE OF EVIDENCE,

5    YOU KNOW, IS -- IS THIS GOING TO REALLY ASSIST THE JURY IN

6    DETERMINING WHETHER THERE IS SOMETHING CALLED DEMAND -- THERE'S

7    DEMAND FOR THESE PRODUCTS, WHICH MR. MUSIKA SAYS THAT'S JUST

8    PRETTY STRAIGHTFORWARD, LOOK AT HOW WELL THEY'VE DONE.

9         THE COURT:  UM-HUM.

10        MR. PRICE:  SO YOU CAN HAVE A RANGE FROM, FOR

11   EXAMPLE, "TIME MAGAZINE'S PRODUCT OF THE YEAR," SAY.  I MEAN,

12   WE WOULD ARGUE THAT, WELL, THAT'S OF SOME RELEVANCE.  I MEAN,

13   IT CERTAINLY DOESN'T RELATE TO THE PATENTED PRODUCTS, SO IT

14   COULD BE CONFUSING.

15        BUT, YOU KNOW, IN THAT SORT OF THING, YOU'RE NOT GOING TO

16   HAVE THE POSSIBLE PREJUDICE OF THE JURY THINKING, OH, SAMSUNG,

17   THEY'RE JUST BAD ACTORS.  THEY DID SOMETHING WRONG.

18        THE COURT:  UM-HUM.

19        MR. PRICE:  THEY COPIED.

20        THE COURT:  UM-HUM.

21        MR. PRICE:  BUT ON OTHER TYPES OF EVIDENCE, WHICH

22   APPLE NOW SAYS THEY WANT IN FOR DEMAND, BUT WHICH WASN'T USED

23   FOR THAT IN THE FIRST TRIAL, IT'S TANGENTIALLY RELEVANT AND HAS

24   SIGNIFICANT, SIGNIFICANT PREJUDICE AGAINST SAMSUNG BECAUSE IT

25   BASICALLY SAYS SAMSUNG IS A BAD ACTOR.

1           SO I THINK WE'RE GOING TO NEED TO LOOK AT WEIGHING THAT

2      403 ISSUE, WHICH APPLE DOESN'T DO AT ALL IN THEIR ANALYSIS.

3           THE COURT:  BUT WHAT'S BETTER EVIDENCE OF WHETHER

4      THERE'S DEMAND, A COMPETITOR IN THE SAME MARKET THINKS THAT

5      THAT'S A GOOD FEATURE, OR WHETHER SOME JOURNALIST IN NEW YORK

6      WORKING FOR TIME WARNER THINKS IT'S A GOOD FEATURE?

7           I THINK I WOULD -- I MEAN, I'LL PROBABLY GET REVERSED SO

8      MANY WAYS ON THIS CASE ANYWAY, BUT IF I DON'T LET APPLE, YOU

9      KNOW, TRY TO AT LEAST GET SOME OF THESE EXHIBITS IN, I REALLY

10     THINK IT WOULD BE ERROR.

11          MR. PRICE:  WELL, AND I UNDERSTAND THAT SOME EXHIBITS

12     SHOULD COME IN.

13          THE COURT:  YEAH, UM-HUM.

14          MR. PRICE:  BUT IF YOU WANT TO LOOK AT, FOR EXAMPLE,

15     THE WEIGHING THAT WE'RE TALKING ABOUT, I'LL GIVE YOU ONE

16     EXAMPLE, FOR EXAMPLE.

17          THERE IS EXHIBIT 40, AND --

18          DO WE HAVE A COPY OF THAT FOR THE COURT?

19          EXHIBIT 40 IS AN EXAMPLE OF THE DOCUMENT APPLE WANTS TO

20     USE TO SAY, YOU KNOW, THERE'S DEMAND FOR THE APPLE PRODUCT.

21          THE COURT:  UM-HUM.

22          MR. PRICE:  AND I CAN HAND UP A COPY TO THE COURT.

23          THE COURT:  OKAY.  THANK YOU.

24          YOU CAN GIVE ONE TO MR. MCELHINNY.

25          MR. MCELHINNY:  I ALREADY HAVE ONE.

1          THE COURT:  AND CAN YOU GIVE ONE TO EMILY, PLEASE?

2     CAN WE GET ONE MORE, MR. PRICE?

3          MR. PRICE:  SURE.

4          THE COURT:  I WOULD LIKE MS. CURRAN-HUBERTY TO HAVE

5     ALL OF THE EXHIBITS YOU HAVE IN YOUR HAND TODAY IF YOU HAVE AN

6     EXTRA COPY.

7          MR. PRICE:  SURE.  I THINK WE'LL RIP ONE OUT OF

8     SOMEONE ELSE'S HANDS IF WE DON'T.

9          THE COURT:  OKAY.  WELL, I CAN SHARE IT.  THAT'S NOT

10    A PROBLEM.

11         MR. PRICE:  SO --

12         THE COURT:  IS THIS THE HEAVEN AND EARTH DOCUMENT?

13         MR. PRICE:  THIS IS THE HEAVEN AND EARTH AND THE

14    CRISIS IN DESIGN DOCUMENT.

15         THE COURT:  OKAY.

16         MR. PRICE:  NOW, TO BEGIN WITH, THIS DOES CERTAINLY

17    REFLECT A CERTAIN MANAGEMENT STYLE AT SAMSUNG.

18         BUT THERE'S NOTHING IN THIS DOCUMENT ABOUT THE PATENTED

19    FEATURES AT ISSUE HERE, AND THIS DOCUMENT WASN'T DISCUSSED AT

20    ALL IN THE FIRST TRIAL BY MR. MUSIKA IN CONNECTION WITH PROVING

21    THAT THERE'S DEMAND.  HE ACTUALLY ONLY DISCUSSED FEW DOCUMENTS

22    AT ALL IN SAYING THAT THERE WAS EVIDENCE OF DEMAND FOR SPECIFIC

23    PATENTED FEATURES.

24         SO LOOKING AT THE RELEVANCE, YOU'VE GOT TO ASK YOURSELF,

25    WELL, APPLE DIDN'T THINK IT WAS NECESSARY FOR THEIR EXPERT TO

1    EVEN DISCUSS THIS TO SHOW DEMAND WHEN IT CAME TO DETERMINING

2    DAMAGES.

3         BUT THERE'S A DOWNSIDE TO THIS DOCUMENT, AND THAT'S HOW

4    APPLE DID USE IT, AND IF YOU LOOK AT SLIDE 22, AND

5    UNFORTUNATELY, THESE ARE -- I'M SORRY.  LET ME GIVE YOU ANOTHER

6    NUMBER.  SOMEHOW THE NUMBERS GOT MIXED UP.

7              THE COURT:  WHOSE TESTIMONY IS THAT ON 22?

8              MR. PRICE:  HERE WE GO.  22 IS THE WRONG EXHIBIT.

9         IT'S EXHIBIT 23 WHERE -- THIS IS DURING THE OPENING WHERE

10   EXHIBIT 40 IS REFERRING TO.

11             MR. MCELHINNY:  IT'S MY TESTIMONY, YOUR HONOR.

12             MR. PRICE:  IT'S MR. MCELHINNY'S TESTIMONY.

13        THIS IS HOW IT WAS ARGUED.

14             MR. MCELHINNY:  WITHOUT OBJECTION.

15             MR. PRICE:  OPENING STATEMENT IS NOT SUPPOSED TO BE

16   AN ARGUMENT.

17             MR. MCELHINNY:  WITHOUT OBJECTION.

18             MR. PRICE:  I TEND NOT TO OBJECT IN OPENING

19   STATEMENTS.

20        AND BY THE WAY, IN THE LAST TRIAL, THERE WERE ISSUES,

21   LEGITIMATE ISSUES ABOUT COPYING, YOU KNOW, ABOUT WILLFULNESS.

22        SO HERE WE'RE JUST TALKING ABOUT DAMAGES.

23             THE COURT:  UM-HUM.

24             MR. PRICE:  AND SO THE OPENING STATEMENT ON THIS

25   BASICALLY IS THAT EXHIBIT 40 SHOWS COPYING.  THAT'S WHAT THE

1    DOCUMENTS -- THE INESCAPABLE CONCLUSION FROM THE DOCUMENT IS

2    COPYING, NOT DEMAND.

3           AND THEN IF YOU GO TO 25, THIS IS THE CLOSING ARGUMENT, I

4    THINK ALSO PROBABLY MR. MCELHINNY, AND IN REFERRING TO

5    EXHIBIT 40, AGAIN, THE ARGUMENT ISN'T THAT IT IS EVIDENCE OF

6    DEMAND, BUT INSTEAD THAT SAMSUNG CHOSE TO GO DOWN THE PATH OF

7    COPYING.

8           SO WE KNOW THAT, IN THE FIRST TRIAL AT LEAST, APPLE DIDN'T

9    THINK THIS DOCUMENT WAS TERRIBLY RELEVANT TO GIVING ADDITIONAL

10   EVIDENCE OF DEMAND.  THEY THOUGHT IT WAS TERRIBLY RELEVANT AND

11   ONLY ARGUED ISSUES WHICH WERE, ARGUABLY, IN THE FIRST PHASE,

12   WHICH IS, YOU KNOW, WILLFULNESS, COPYING.

13          IN THIS PHASE, WHEN YOU DO A 403 ANALYSIS, I THINK IT'S

14   IMPORTANT THAT YOU WEIGH THE -- WHAT DOES THIS DOCUMENT ADD TO

15   WHAT IS, YOU KNOW, VIRTUALLY UNDISPUTED, THAT THERE'S HUGE

16   DEMAND FOR APPLE'S PRODUCTS, YOU KNOW, VERSUS IS THIS LIKELY TO

17   CONFUSE THE JURY AND PREJUDICE SAMSUNG?

18          AND THIS IS KIND OF A PRIME EXAMPLE OF THE TYPE OF

19   DOCUMENT THAT WE SHOULD REALLY BE WORRIED ABOUT, BECAUSE IT

20   REALLY DOESN'T ADD MUCH, IF ANYTHING, ON DEMAND.

21          BUT IT REALLY DOES PAINT SAMSUNG AS BEING JUST A BAD

22   ACTOR, EVEN THOUGH IT HAS NOTHING TO DO, YOU KNOW, WITH THE

23   PARTICULAR PATENTED FEATURES.

24              THE COURT:  LET ME HEAR MR. MCELHINNY'S RESPONSE AS

25    TO THIS E-MAIL.

1          MR. MCELHINNY:  OKAY.  AS TO THIS E-MAIL, IF YOUR

2     HONOR TURNS TO PAGE 7374 AT THE BATES NUMBER --

3          THE COURT:  OKAY.

4          MR. MCELHINNY:  -- AND JUST BELOW THE HALFWAY POINT,

5     MR. SHIN IS TALKING TO ALL OF HIS EXECUTIVES IN HIS COUNTRY --

6     COMPANY, AND HE SAYS, "THAT'S A SHORTCUT TO GOING OUT OF

7     BUSINESS.  ALL THE CARRIERS," TALKING ABOUT AMERICAN CARRIERS,

8     "ALL THE AMERICANS TELL ME, HEY, JK, YOUR PHONES HAVE GREAT

9     TECHNOLOGICAL PROWESS AND EVERYTHING IS GREAT, BUT IT'S HARD TO

10    SELL THEM AS HIGH END PHONES.  THAT'S BECAUSE WE SPENT ALL OF

11    OUR SUBSIDY PHONES ON THE IPHONE AND CAN'T GIVE A PENNY IN

12    SUBSIDY TO YOUR PHONES, SO OF COURSE YOUR PHONES WILL BE

13    EXPENSIVE AND THEN IT FOLLOWS THAT THEY WON'T SELL."

14         AND MR. SHIN SAYS, "I HEAR THINGS LIKE THIS.  LET'S MAKE

15    SOMETHING LIKE THE IPHONE."

16         THERE SIMPLY IS NOT A STRONGER PIECE OF SINGLE EVIDENCE

17    ABOUT THE DEMAND OF U.S. CARRIERS FOR THE IPHONE THAN THIS

18    PARTICULAR DOCUMENT, AND THAT IS WHAT CREATED THE CRISIS OF

19    DESIGN AT SAMSUNG.

20         I -- CAN I MAKE MY OTHER POINTS JUST AS -- FIRST I WANT TO

21    APOLOGIZE TO THE COURT.  I OWE YOU AN APOLOGY.  LAST WEEK WHEN

22    I WAS HERE I HAD NOT PREPARED ON THE MOTIONS IN LIMINE, AND I

23    WAS NOT AS PREPARED ON THE CASES AS I SHOULD HAVE BEEN AND I

24    DIDN'T GIVE YOU, I THINK, THE FAIR PRESENTATION THAT YOUR HONOR

25    DESERVED LAST WEEK AND I JUST WANTED TO APOLOGIZE FOR THAT.

 1          WHAT I KNOW NOW, WHICH I SHOULD HAVE KNOWN LAST WEEK, OF

 2     COURSE, IS THAT PANDUIT, THE ORIGINAL OF THESE CASES, THE CASE

 3     IS WRITTEN IN THE SIXTH CIRCUIT BY CHIEF JUDGE MARKEY, THE

 4     FIRST OF THESE LOST PROFIT CASES WAS ITSELF A COPYING DOCUMENT

 5     CASE.  THAT WAS THE CASE THAT WAS OBJECTED TO.

 6          AND WHAT CHIEF JUDGE MARKEY SAID IS THIS, AND THIS IS AT

 7     PAGE 1160 OF THE PANDUIT OPINION, HE SAID, "NOTEWORTHY IS THE

 8     FACT THAT, DESPITE THE ALLEGEDLY FIERCE COMPETITION BETWEEN THE

 9     WELDTEX AND OTHER DECORATIVE PLYWOODS, GP," THE DEFENDANT,

10     "DELIBERATELY DECIDED TO DUPLICATE WELDTEX, NOTWITHSTANDING THE

11     CAVEAT OF GP'S OWN COUNSEL THAT AN EXPENSIVE INFRINGEMENT SUIT

12     WAS INEVITABLE."

13          YOU WILL REMEMBER GOOGLE, IN OUR OTHER DOCUMENTS, TELLING

14     SAMSUNG THAT THEY WERE GETTING TOO CLOSE TO THE DESIGNS HERE.

15          BUT WHAT CHIEF JUDGE MARKEY SAID IS "GP'S CALCULATED

16     INFRINGEMENT OF WELDTEX IS AN ADMISSION BY CONDUCT THAT IT

17     REGARDED WELDTEX AS OCCUPYING A," QUOTE, "'UNIQUELY FAVORABLE

18     POSITION IN THE MARKET.'"

19          IT'S EXACTLY WHAT YOUR HONOR SAID INSTINCTIVELY AT THE

20     BEGINNING OF THIS HEARING, AND THIS IS IN THE CONTEXT OF

21     PROVING DEMAND UNDER BOTH WHAT BECAME THE PANDUIT FACTORS AND

22     UNDER THE GEORGIA PACIFIC FACTORS.

23          INTENTIONAL COPYING IS, IN FACT, THE STRONGEST POSSIBLE

24     EVIDENCE OF DEMAND FOR THE PRODUCT AND FOR THE SPECIFIC

25     CHARACTERISTIC THAT WAS COPIED.

1        ON THIS ISSUE JUST ABOUT OUR EXPERT ONLY GAVE ONE LINE ON

2   DEMAND, YOUR HONOR KNOWS, WHEN EVIDENCE COMES IN AT A TRIAL, IT

3   DOESN'T HAVE A LITTLE NAMEPLATE ON IT THAT SAYS "THIS IS IN FOR

4   DEMAND," "THIS IS IN FOR WILLFULNESS," "THIS IS IN FOR"

5   WHATEVER.

6        THE REASON THAT OUR EXPERT WAS ABLE TO SAY THERE IS

7   ENORMOUS DEMAND WAS BECAUSE THE JURY HAD HEARD ALL OF THESE

8   COPYING DOCUMENTS, THEY CAME IN THROUGH MR. DENISON, THEY HAD

9   HEARD OUR EXPERTS TALK ABOUT THE IMPORTANCE, THEY HEARD ABOUT

10  MR. SCHILLER TALK ABOUT THE SALES, THEY HAD ALL OF THE EVIDENCE

11  THAT WE HAVE PRESENTED TO YOU IN OUR WRITING ABOUT OUR DEMAND,

12  AND THAT ALLOWED OUR DAMAGES EXPERT TO SAY TO THE JURY, WHO HAD

13  SAT THROUGH ALL THIS, "THERE'S HUGE EVIDENCE OF DEMAND.  YOU

14  JUST HEARD IT ALL," WHICH, BY THE WAY, IS THE WAY SAMSUNG IS

15  TELLING YOU TODAY THE TRIAL HAS TO GO.  THEY'RE TELLING YOU THE

16  EXPERT CAN'T COME IN AND PUT IN THE EVIDENCE OF DEMAND.  WE

17  HAVE TO PUT IN OTHER WITNESSES TO PUT IN THE EVIDENCE OF DEMAND

18  SO THAT THE EXPERT CAN THEN SAY, "BASED ON THE EVIDENCE THAT

19  YOU'VE HEARD, MY OPINION IS THAT THERE'S EVIDENCE OF DEMAND."

20  THAT'S EXACTLY WHAT HAPPENED IN THE FIRST TRIAL.

21       BUT TO TRY TO SAY ALL THIS EVIDENCE OF COPYING JUST WENT

22  TO WILLFULNESS AND DIDN'T GO TO DEMAND, THAT'S JUST WRONG.

23       AND PANDUIT IS DIRECTLY ON POINT.

24       MR. PRICE:  YOUR HONOR --

25       THE COURT:  ALL RIGHT.  WELL, I -- I CAN'T GIVE YOU

1    RULINGS ON ALL OF THE -- YOU KNOW, APPLE'S SUBMISSION WAS,

2    LIKE, 44 PAGES, SO I CAN'T DO THAT TODAY.  WHAT I'M INCLINED TO

3    DO IS, AS I DID WITH APPLE'S MOTION IN LIMINE NUMBER 2, DENY

4    THIS WITHOUT PREJUDICE.  TO THE EXTENT THAT I CAN GIVE YOU

5    RULINGS BASED ON WHAT APPLE FILED ON SUNDAY, I'LL DO THAT, NOT

6    TODAY.

7         OTHERWISE WE MIGHT BE IN A SIMILAR SITUATION AS WITH

8    APPLE MOTION IN LIMINE NUMBER 2 IN THAT WE KIND OF NEED TO SEE

9    HOW THE CASE COMES IN AND MAKE RULINGS THAT ARE REALLY MORE,

10   YOU KNOW, CONTEMPORANEOUS WITH THE TRIAL VERSUS BLANKET RULINGS

11   IN ADVANCE.

12        NOW, I UNDERSTAND THAT WITH CERTAIN DOCUMENTS, LIKE THE

13   ONE THAT YOU'VE GIVEN ME, MR. PRICE, THAT THESE ARE GOING TO BE

14   OPENING DOCUMENTS SO YOU NEED A RULING ON THAT FAIRLY SOON.

15             MR. PRICE:  YES.

16             THE COURT:  SO I WILL TRY TO PRIORITIZE THAT.

17        I HEAR WHAT YOU'RE SAYING AND, YOU KNOW, AT SOME POINT 403

18   MAY BE CROSSED, BUT I WILL TELL YOU MY TENTATIVE ON EVEN THIS

19   DOCUMENT IS TO DENY YOUR MOTION TO EXCLUDE IT BECAUSE I DO

20   THINK IT'S RELEVANT AND IT WOULD BE ERROR IF I EXCLUDE IT.

21             MR. MCELHINNY:  AND I FORGOT TO REMIND YOUR HONOR

22   THAT THESE DOCUMENTS, THESE EXHIBITS, BY DEFINITION ALREADY

23   SURVIVED 403 THE FIRST TIME AROUND AT TRIAL.

24             MR. PRICE:  WELL, YOUR HONOR, AGAIN, THE FIRST TRIAL

25   HAD A LOT OF ISSUES IN IT, AND SO THERE -- MR. MCELHINNY ARGUED

1    AND ARGUED TO THE JURY, AND ACTUALLY ONLY ARGUED TO THE JURY

2    ABOUT THIS DOCUMENT, THAT IT WENT TO COPYING AND NOT THAT IT

3    WENT TO DEMAND.  SO OBVIOUSLY SAYING IT SURVIVED 403 BEFORE IS

4    IRRELEVANT.

5         I WOULD SUGGEST, OBVIOUSLY, IN THE SCALE OF --

6              THE COURT:  BUT WHAT'S YOUR RESPONSE TO WHAT

7    MR. MCELHINNY SAID, THAT COPYING IS RELEVANT TO DEMAND?  I

8    MEAN, WHY WOULDN'T COPYING BE RELEVANT TO WHETHER THERE'S

9    DEMAND FOR A CERTAIN FEATURE OR NOT?

10             MR. PRICE:  WELL, I THINK THERE ARE TWO RESPONSES.

11             THE COURT:  YEAH.

12             MR. PRICE:  ONE IS ON THE PANDUIT FACTOR 1, JUST

13   ABOUT EVERYTHING IS RELEVANT TO DEMAND.

14             THE COURT:  SURE.

15             MR. PRICE:  AND AS PANDUIT FACTOR 1, THAT IS, IS A --

16   THAT DEMAND FOR THE APPLE PRODUCT IS UNDISPUTED.  I KNOW APPLE

17   GETS A CHANCE TO PUT IN EVIDENCE OF THAT, BUT MR. MCELHINNY IS

18   MISCHARACTERIZING MR. MUSIKA'S TESTIMONY.  HE DIDN'T SAY

19   "COPYING SHOWS THERE'S DEMAND."  HE DIDN'T SAY ANYTHING LIKE

20   THAT.

21        HE SAID WHAT'S STRAIGHT FORTH IS THE TREMENDOUS SUCCESS

22   APPLE HAS HAD.

23             THAT'S ON PANDUIT FACTOR 1.  I MEAN, THAT IS SUCH A LOW

24   THRESHOLD, IT'S NOT EVEN GOING TO BE AN ISSUE.

25             SO WHY USE THIS AS AN EXCUSE TO SHOW SOMETHING WHICH WE'RE

1    NOT EVEN GOING TO DISPUTE AND THE JURY IS CERTAINLY GOING TO

2    THINK, WHICH IS THAT THERE IS DEMAND FOR THE PRODUCT?

3              THE COURT:  BUT YOU ARE GOING TO DISPUTE WHETHER

4    THERE'S DEMAND FOR THE PATENTED FEATURE.

5              MR. PRICE:  I AGREE.

6              THE COURT:  AND YOU'RE GOING TO SAY, "THIS IS REALLY

7    TRIVIAL.  IT'S NOT WORTH ANYTHING."

8         SO I THINK THEY DO NEED TO BE ABLE TO SAY, "WELL,

9    ACTUALLY, NOT IN THE CONTEXT OF LITIGATION, BUT WHEN MAKING

10   THEIR PHONES, SAMSUNG DID THINK THIS FEATURE WAS WORTH

11   INCORPORATING INTO THEIR PRODUCTS."

12             MR. PRICE:  AND I AGREE, AND THAT'S WHERE WE'RE

13   TALKING ON THE SCALE.

14             THE COURT:  OKAY.

15             MR. PRICE:  WHEN YOU HAVE A DOCUMENT WHICH ACTUALLY

16   GOES TO THE PATENTED FEATURE, YOU KNOW, THEN YOU'RE HIGHER UP

17   ON THE SCALE OF RELEVANCE BECAUSE WE'RE TALKING ABOUT PANDUIT

18   FACTOR 2.

19             THE COURT:  OKAY.

20             MR. PRICE:  THIS DOCUMENT, THERE'S NO WAY TO CONCLUDE

21   THIS GOES TO THE PANDUIT 2.  IT SAYS, FOR EXAMPLE, "LET'S MAKE

22   SOMETHING LIKE THE IPHONE," WHICH HAS HUNDREDS AND HUNDREDS OF

23   FEATURES.  THAT IS NOT A SCINTILLA OF EVIDENCE AS TO THE DEMAND

24   FOR THE PATENTED FEATURES IN THIS TRIAL.

25             BUT THE JURY WILL THINK IT IS AND, MORE IMPORTANTLY, THEY

1    WILL JUST THINK, SAMSUNG, ALL THEY DO IS COPY.

2         SAMSUNG IS ENTITLED TO COPY.  COMPETITORS CAN COPY IF

3    THEIR COMPETITOR DOESN'T OWN THE INTELLECTUAL PROPERTY.  IT

4    HAPPENS ALL THE TIME.  IT'S PART OF COMPETITION.

5              THE COURT:  UM-HUM.

6              MR. PRICE:  THAT'S HOW PRODUCTS EVOLVE.  THAT

7    BENEFITS CONSUMERS.

8         THE QUESTION IS, YOU KNOW, IS THE DOCUMENT RELEVANT TO THE

9    PATENTED FEATURE THAT APPLE OWNS?  AND THAT'S WHY THIS CAN

10   CAUSE GREAT CONFUSION, HAS A TREMENDOUS DOWNSIDE BECAUSE IT

11   JUST PAINTS US AS BAD PEOPLE WHEN, IN FACT, APPLE -- SAMSUNG IS

12   ENTITLED, AND OTHER COMPETITORS, ARE ENTITLED TO DO EXACTLY

13   WHAT SAMSUNG HAS DONE.

14             THE COURT:  OKAY.  SO YOU WOULD SAY FOR THE, WHAT,

15   109 PAGE, YOU KNOW, PAGE-BY-PAGE COMPARISON WHERE IT SAYS -- IF

16   I RECALL THE TRIAL EVIDENCE CORRECTLY, THERE WERE AT LEAST TWO

17   PAGES I THOUGHT WHERE IT ACTUALLY WAS ADDRESSING A SPECIFIC

18   PATENTED FEATURE.  SO YOU WOULD SAY THOSE TWO PAGES, YOU WOULD

19   FIND WOULD SURVIVE A 403 CHALLENGE BECAUSE IN THOSE INSTANCES

20   WHEN IT'S ACTUALLY TALKING ABOUT A SPECIFIC PATENTED FEATURE,

21   YOU THINK THE PROBATIVE VALUE IS SUFFICIENT TO OUTWEIGH ANY

22   PREJUDICE.

23        BUT IF IT'S NOT DIRECTLY TIED TO A SPECIFIC PATENTED

24   FEATURE, THEN THE PROBATIVE VALUE IS LOW ENOUGH THAT THE

25   PREJUDICIAL EFFECT WOULD OUTWEIGH IT.  IS THAT YOUR POSITION?

1          MR. PRICE:  I THINK THAT'S GENERALLY, GENERALLY

2     CORRECT.

3          THE COURT:  OKAY.

4          MR. PRICE:  BECAUSE WE'RE ENTITLED TO LOOK AT

5     COMPETITORS' PRODUCTS AND COPY WHAT WE THINK CONSUMERS DEMAND

6     UNLESS WE DON'T OWN IT.

7          AND OF COURSE I THINK FOR THOSE PARTICULAR PAGES, YOU

8     REALLY NEED TO LOOK TO SEE WHETHER OR NOT IT IS THE PATENTED

9     FEATURE THAT'S BEING COPIED, NOT SOMETHING --

10          THE COURT:  BECAUSE I UNDERSTOOD THAT YOU WERE

11     OBJECTING TO THOSE ENTIRE COMPARISON DOCUMENTS, AND THAT WOULD

12     SEEM TO BE INCONSISTENT WITH YOUR POSITION THAT YOU'RE ACTUALLY

13     OKAY IF IT'S A DOCUMENT RELEVANT TO DEMAND FOR A PATENTED

14     FEATURE, WHICH I THINK THOSE COMPARISONS ARE.

15          MR. PRICE:  AND LET ME SAY FOR THE RECORD, WE'RE

16     OBJECTING TO THE WHOLE DOCUMENT BECAUSE WE BELIEVE -- YOU KNOW,

17     AND I KNOW WE'RE PROBABLY NOT GOING TO PREVAIL HERE ON THAT --

18          THE COURT:  UM-HUM.

19          MR. PRICE:  -- WHICH IS THAT THE SUBJECTIVE -- THE

20     RELEVANT INQUIRY FOR WHY A PATENTEE LOST SALES IS AN INQUIRY ON

21     THE OBJECTIVE REASONS AS TO WHY, THAT IS, USING EVIDENCE,

22     SURVEY REPORTS, ET CETERA, AND NOT ON THE INFRINGER'S OBJECTIVE

23     BELIEFS, NOT ON WHETHER OR NOT AN ENGINEER AT SAMSUNG SAID,

24     "OH, THIS IS SUPER COOL.  LET'S DO IT."

25          THE COURT:  UM-HUM.

1        MR. PRICE:  SO, I MEAN, I'M NOT WAIVING THAT

2    OBJECTION.  I'M JUST TRYING TO FOCUS NOW ON TRYING TO HELP YOU,

3    BECAUSE I KIND OF THINK THAT -- AND I GET THE IMPRESSION, YOUR

4    HONOR, THAT THAT'S SOMETHING WHICH I'M NOT GOING TO WIN.

5        SO IF WE LOOK AT -- IF WE ASSUME --

6        THE COURT:  UM-HUM.

7        MR. PRICE:  -- THAT COPYING BY SAMSUNG, YOU KNOW, OF

8    A PATENTED FEATURE IS RELEVANT TO DEMAND FOR THE PATENTED

9    FEATURE, IF WE ASSUME THAT, THEN CERTAINLY I WOULD THINK THAT,

10   YOU KNOW, EVIDENCE OF DIRECT COPYING OF A PATENTED FEATURE,

11   UNDER A 403 ANALYSIS, MAY SURVIVE.

12       THE COURT:  UM-HUM.

13       MR. PRICE:  THERE ARE PROBABLY THREE, MAYBE FOUR

14   DOCUMENTS TOTAL IN THE CASE --

15       THE COURT:  UM-HUM.

16       MR. PRICE:  -- THAT FIT THAT CATEGORY.

17       THE COURT:  UM-HUM.

18       MR. PRICE:  MOST ARE GENERAL DEMAND, GENERAL

19   DESCRIPTIONS LIKE THIS, "HEY, LET'S DO SOMETHING LIKE THE

20   IPHONE," OR, "OH, ISN'T THE IPHONE BEAUTIFUL?"

21       THE COURT:  UM-HUM.

22       MR. PRICE:  AND ON EVERY ONE OF THOSE DOCUMENTS,

23   EXCEPT FOR ONE, WHICH I COULD TALK ABOUT, IN THE LAST TRIAL

24   THOSE DOCUMENTS WERE ARGUED TO THE JURY NOT TO PROVE DEMAND AT

25   ALL.  THERE WASN'T A HINT OF THAT.

1           THE COURT:  UM-HUM.

2           MR. PRICE:  THE ARGUMENT TO THE JURY WAS SAMSUNG

3      COPIED, SAMSUNG WILLFULLY DID SOMETHING WRONG.

4           THE COURT:  UM-HUM.

5           MR. PRICE:  AND WHILE THAT WAS RELEVANT THERE, YOU

6      KNOW, THE FACT THAT DEMAND WASN'T EVEN ARGUED FROM THOSE

7      DOCUMENTS IS, I THINK, SIGNIFICANT.  IT KIND OF SHOWS YOU HOW

8      MUCH THOSE DOCUMENTS REALLY GO TO THIS ISSUE.

9           THE COURT:  UM-HUM.

10          MR. PRICE:  BUT THE FACT THAT THEY ARE SO OBVIOUSLY,

11     YOU KNOW, CONFUSING PREJUDICES THE JURY --

12          THE COURT:  UM-HUM.

13          MR. PRICE:  -- THAT WAS MADE BY THOSE ARGUMENTS.

14       AND SO CERTAINLY IF WE'RE GOING TO GET TO THE

15     IDENTIFICATION OF WHAT DOCUMENTS ARE GOING TO BE USED IN

16     OPENING, AND I DON'T THINK WE'VE GOTTEN THERE, I KNOW WE TALKED

17     ABOUT THAT LAST TIME, I DON'T THINK THAT'S BEEN FILED, I

18     CERTAINLY WOULD REQUEST --

19          THE COURT:  I ASKED FOR IT FOR FRIDAY, AUGUST THE

20     8TH, I BELIEVE, AT 8:00 O'CLOCK IS WHEN I ASKED FOR THAT.

21          MR. PRICE:  I KNOW IT WASN'T IN YOUR ORDER.

22          MR. MCELHINNY:  CAN'T BE AUGUST.

23          THE COURT:  I'M SORRY?

24          MR. MCELHINNY:  CAN'T BE AUGUST.

25          THE COURT:  I'M SORRY.  NOVEMBER 8TH.  SORRY.

1      MR. PRICE:  I DO THINK I WOULD REQUEST THE

2  OPPORTUNITY TO BE HEARD ON THOSE, THAT LIMITED SUBSET SO I CAN

3  KIND OF DEMONSTRATE TO YOU WHAT I'M TALKING ABOUT IN TERMS OF

4  THE RANGE OF DOCUMENTS WE'RE TALKING ABOUT.

5      THE COURT:  WELL, WE'RE GETTING TOGETHER ON THE 5TH,

6  SO I WAS ASSUMING YOU WOULD WANT ME TO ISSUE RULINGS BEFORE

7  TUESDAY, SO IF YOU'RE GIVING THEM TO ME ON THE 8TH, I'LL HAVE

8  TO GIVE YOU A RULING EITHER SATURDAY, SUNDAY, OR MONDAY.  I

9  DON'T -- I WASN'T PLANNING ON US GETTING TOGETHER AGAIN.  I

10  MEAN, I'M NOT OPPOSED TO IT IF YOU SAY YOU REALLY NEED IT.

11      MR. PRICE:  I'M CERTAINLY AVAILABLE.  I THINK -- I

12  MEAN, I THINK THIS IS AN IMPORTANT ENOUGH ISSUE.

13      I ALSO THINK, YOUR HONOR, THAT EVEN BEFORE YOU GET TO THAT

14  ISSUE --

15      THE COURT:  OKAY.

16      MR. PRICE:  -- THAT RANGE, YOU'VE GOT DOCUMENTS THAT

17  WERE NOT CITED IN MR. MUSIKA'S EXHIBITS 24S OR 25S, WHICH ARE

18  NOW BEING -- WHERE WE HAVE PROFFERS ON THEM.

19      YOU'VE GOT DOCUMENTS WHICH WEREN'T CITED EVEN BY

20  MS. DAVIS.

21      YOU'VE GOT DOCUMENTS WHICH WERE --

22      THE COURT:  IF THEY WEREN'T IN 24 OR 25, 24S OR 25S,

23  THEN THEY SHOULD NOT BE COMING IN FOR DEMAND.

24      MR. PRICE:  YES.

25      MR. MCELHINNY:  THROUGH THAT EXPERT?  IF THEY CAME

1    IN -- IF THEY WERE ADMITTED AT THE TRIAL AND USED BY SOME

2    OTHER -- THAT'S AN EXPERT EXCLUSION RULE, THAT'S NOT A TRIAL

3    EXCLUSION RULE.

4         THE COURT:  WHO WAS THE WITNESS THAT BROUGHT THEM IN

5    AND WHAT WERE THEY BROUGHT IN FOR?

6         MR. MCELHINNY:  SOME OF THEM CAME IN THROUGH SAMSUNG.

7    THEY ALL CAME THROUGH IN THIS COPYING STUFF.  MR. DENISON IS

8    THE PERSON -- YOU'LL REMEMBER, MR. QUINN OPENED THE DOOR, JUST

9    AS MR. PRICE JUST DID, SAYING, "WELL, THIS IS JUST KOREAN --

10   THE WAY THE KOREANS TALK TO EACH OTHER," AND YOUR HONOR THEN

11   SAID, "WELL, THEN" -- AND THEN HE SAID, "WELL, I HAVE NEVER

12   SEEN THE DOCUMENT," SO YOU LET HIM TALK ABOUT THIS CRISIS IN

13   DESIGN DOCUMENT AND THAT'S WHAT OPENED THE DOOR TO THAT.  BUT

14   IT CAME IN THROUGH THEIR WITNESS.

15        MR. PRICE:  CAN I ANSWER THAT?

16        YOUR HONOR, IT DOESN'T MATTER.  THE QUESTION IS, WERE WE

17   GIVEN NOTICE THAT THEIR EXPERT, IN GIVING AN OPINION ON DAMAGE

18   AND DEMAND, WAS RELYING ON CERTAIN DOCUMENTS?

19        AND WITH RESPECT TO A NUMBER OF DOCUMENTS, THERE WAS

20   NEVER ANY DISCLOSURE OR ANY TESTIMONY THAT MR. MUSIKA WAS

21   RELYING ON DOCUMENTS TO SUPPORT HIS OPINION ABOUT DEMAND AND

22   DAMAGES EXCEPT, AT A MINIMUM, 24S AND 25S.

23        MR. MCELHINNY:  I -- JUST ONE REBUTTAL REPORT.  I

24   DON'T -- WE CAN'T LOSE SIGHT OF THE BIG PICTURE QUESTION.  WHAT

25   WE HAVE TO PROVE IS THAT IF A SAMSUNG INFRINGING PHONE WAS NOT

1    AVAILABLE ON THE MARKETPLACE, THAT A PERSON WOULD HAVE BOUGHT

2    THE IPHONE INSTEAD.  THAT'S THE BUT FOR TEST TO PROVE LOST

3    PROFITS.

4        AND WHAT THE FEDERAL CIRCUIT HAS SAID CONSISTENTLY IS THAT

5    RITE-HITE IS ONE WAY OF DOING THAT.

6        BUT I SUGGEST A DOCUMENT THAT SAYS THE U.S. CARRIERS ARE

7    TELLING SAMSUNG TO MAKE A PHONE LIKE THE IPHONE CONTINUES TO BE

8    THE STRONGEST POSSIBLE EVIDENCE, PARTICULARLY WHEN IT'S BASED

9    ON THE DESIGN OF THE PHONE, THAT IF THE SAMSUNG PHONE HAD NOT

10   BEEN AVAILABLE, THE LIKELY ALTERNATIVE PURCHASE WAS AN IPHONE,

11   WHICH IS WHY WE LOST PROFITS.

12       THE COURT:  ALL RIGHT.  WELL, I -- I SAID THAT I

13   WOULD BE DENYING THIS ONE WITHOUT PREJUDICE AND MAKING

14   DECISIONS AS TO INDIVIDUAL DOCUMENTS AND TESTIMONY.

15       I RECOGNIZE THAT THIS IS A VERY IMPORTANT POINT FOR YOUR

16   CLIENT, MR. PRICE, SO, YOU KNOW, MAKE THOSE OBJECTIONS, PLEASE,

17   TO THE OPENING DEMONSTRATIVES AND OPENING EXHIBITS AND I WILL

18   CERTAINLY -- I MEAN, I WAS THINKING, IT IS GOING TO BE A FINE

19   LINE, YOU KNOW, BECAUSE PANDUIT FACTOR 1 IS SO BROAD, DEMAND

20   FOR THE PRODUCT, YOU KNOW, I DON'T THINK THAT EXCLUDES VERY

21   MUCH.

22       SO -- BUT I WILL CERTAINLY TAKE INTO ACCOUNT THE POINT

23   THAT YOU'RE RAISING ABOUT AT WHAT POINT DO VERY, VERY GENERIC

24   COMMENTS BECOME LESS PROBATIVE.  SO I WILL TAKE THAT INTO

25   CONSIDERATION.

1          LET'S MOVE ON, PLEASE, TO SAMSUNG MOTION IN LIMINE NUMBER

2     2 REGARDING BROADENING THE SCOPE OF THE PATENTS.

3          LAST WEEK I ALREADY RULED THAT MS. DAVIS HAS TO

4     INCORPORATE MR. MUSIKA'S DESCRIPTIONS OF THE SCOPE OF THE

5     PATENTS.

6          DOES THAT ADDRESS YOUR MOTION IN LIMINE NUMBER 2

7     SUFFICIENTLY?

8          MS. MAROULIS:  YOUR HONOR, THIS MOTION IS THE FLIP

9      SIDE OF APPLE'S MOTION ABOUT RE-EXAM, SO WE STILL MAINTAIN THAT

10    WE SHOULD BE ABLE TO HOLD APPLE TO THE ADMISSIONS MADE IN THE

11    RE-EXAM OFFICE TO GET ITS PATENT RE-ISSUED.

12         WE UNDERSTAND YOUR HONOR RULED AGAINST US ON THAT, SO WE

13    DID NOT WANT TO WASTE THE COURT'S TIME.

14         BUT THE POINT BEING HERE IS THAT APPLE MADE A NUMBER OF

15    ADMISSIONS, A NUMBER OF STATEMENTS TO THE U.S. GOVERNMENT TO

16    OBTAIN THE PATENTS, TO SAVE THESE PATENTS FROM BEING

17    INVALIDATED, AND WE THINK IT'S IMPORTANT TO CONFRONT APPLE'S

18    TECHNICAL EXPERTS WITH WHAT APPLE ITSELF SAID TO THE PATENT

19    OFFICE.

20         IT WILL NOT BE SATELLITE LITIGATION.  IT WOULD BE

21    NARROWLY -- IF THEY PUT ON THEIR TECHNICAL EXPERTS, THEY SHOULD

22    BE CONFRONTED WITH THE POSITIONS APPLE TOOK IN THE PATENT

23    OFFICE.

24         MR. MCELHINNY:  THIS IS THE MIRROR IMAGE OF THE

25     RE-EXAM MOTION, YOUR HONOR.

1        THE COURT:  OKAY.

2        MS. MAROULIS:  YOUR HONOR, THE ADDITIONAL ASPECT THAT

3   WAS NOT IN APPLE'S MOTION IS THAT THIS IS ALSO JUDICIAL

4   ESTOPPEL BECAUSE APPLE MADE CERTAIN STATEMENTS IN THE PATENT

5   OFFICE AND PREVAILED ON THOSE STATEMENTS, WHICH IS THE BASIS OF

6   JUDICIAL ESTOPPEL, SO THEY CANNOT GET AWAY FROM THOSE

7   STATEMENTS.

8        MR. MCELHINNY:  WE, OF COURSE, DENY WE MADE THE

9   STATEMENTS.  YOUR HONOR HAS JUST SAID YOU DIDN'T FIND THE

10  STATEMENTS IN THEIR MOTION.  THEY KEEP SAYING WE MADE THEM, BUT

11  THERE'S NO BASIS FOR ANY OF THIS.

12       MS. MAROULIS:  YOUR HONOR, THERE'S A NUMBER OF

13  STATEMENTS THAT APPLE MADE IN DISTINGUISHING LIRA PRIOR ART FOR

14  THE '381 PATENT AND THE MAURA PRIOR ART FOR THE '915 PATENT.

15       ONCE APPLE MADE THOSE STATEMENTS AND DISTINGUISHED THE

16  PRIOR ART, AT LEAST THE '381 PATENT ISSUED.  SO IN TERMS OF

17  SUCCEEDING IN THE PATENT OFFICE, APPLE DID SUCCEED.  THEY WON

18  AFTER THEY MADE CERTAIN STATEMENTS AND DISTINCTIONS.

19  THEREFORE, IT TRIGGERS THE DOCTRINE OF JUDICIAL ESTOPPEL FOR

20  FUTURE PROCEEDINGS.

21       THE COURT:  OKAY.  WELL, I'M DENYING THIS MOTION FOR

22  THE SAME REASONS I'VE RULED ON APPLE'S MOTION IN LIMINE NUMBER

23  1.

24       YOU KNOW, HOWEVER, I AM GOING TO STRONGLY ENCOURAGE APPLE,

25  PLEASE, TO NOT GET GREEDY AND START EXPANDING LIKE YOU DID IN

1    THE DESCRIPTION OF THE PATENT SCOPE IN MS. DAVIS'S REPORT.

2    THAT WAS REALLY UNNECESSARY.

3              MR. MCELHINNY:  MAY I MAKE A SUGGESTION?  I ACTUALLY

4    GAVE THIS SOME THOUGHT.

5              THE COURT:  UM-HUM.

6              MR. MCELHINNY:  YOU DON'T -- I'M NOT ASKING FOR A

7    RULING ON THIS, BUT WHAT I THOUGHT PROBABLY THE BEST WAY TO DO

8    IT IS IN THE JURY INSTRUCTIONS, I THINK YOU SHOULD JUST GIVE

9    YOUR CLAIM INTERPRETATION JURY INSTRUCTION AND THE WITNESSES

10   JUST BE BOUND BY THAT, AND ANY TIME ANY WITNESS TRIES TO EXPAND

11   ON THAT OR MAKE IT SMALLER OR WHATEVER, WE'LL JUST OBJECT AND

12   SAY, "YOUR HONOR, YOU ARE INTERPRETING THESE CLAIMS," AND YOUR

13   HONOR --

14             THE COURT:  NO, BECAUSE I ONLY CONSTRUED, WHAT, NINE

15   TERMS OUT OF ALL THE CLAIMS YOU'RE ASSERTING.  IT WOULD NOT --

16   NO.  I THINK YOU'RE NOT GOING TO BE ABLE TO WALK AWAY FROM THE

17   DESCRIPTIONS OF THE PATENT SCOPE IN MR. MUSIKA'S REPORTS FROM

18   LAST YEAR.

19             MR. MCELHINNY:  OKAY.  THEN FINE.  I'M GOOD.

20             THE COURT:  NOT HAPPENING.

21             MR. MCELHINNY:  I ACCEPT THAT.

22             THE COURT:  DON'T TRY IT.

23             MR. MCELHINNY:  OKAY.

24             THE COURT:  BECAUSE THEN WE'RE GOING TO BE TO BE BACK

25   HERE AND I MAY SAY YOU'VE OPENED THE DOOR AND THEN WE'RE GOING

1          TO HAVE TO GET INTO ALL THE SATELLITE LITIGATION.  PLEASE DON'T

2     GO THERE.

3          OKAY.  SAMSUNG'S MOTION IN LIMINE NUMBER 3, TO EXCLUDE

4     APPLE'S EVIDENCE OF LOST PROFITS.

5          WE'VE KIND OF ALREADY HAD A NUMBER OF CONVERSATIONS ABOUT

6     THIS, YOU KNOW, REGARDING THE DEMAND FOR THE PATENTED FEATURE

7     VERSUS THE DEMAND FOR THE PRODUCT, PANDUIT, CALICO BRAND, ET

8     CETERA, ALL THE OTHER CASES.

9          ON THIS ONE I AGREE WITH APPLE THAT, YOU KNOW, THE COURT'S

10    FINDING IN A PERMANENT INJUNCTION MOTION IS DIFFERENT THAN WHAT

11    THE COURT IS TO FIND WITH REGARD TO A JMOL MOTION, AND THAT IS

12    JUST WHETHER THERE WAS SUFFICIENT EVIDENCE OF DEMAND TO SUPPORT

13    THE JURY'S AWARD OF LOST PROFITS, WHICH I DID FIND IN DENYING

14    SAMSUNG'S JMOL MOTION.

15         SO I'M GOING TO DENY THIS, THIS MOTION.

16         MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS BRIEFLY --

17    THERE ARE TWO ASPECTS OF THE MOTION.

18         THE COURT:  OKAY.

19         MS. MAROULIS:  ONE HAS TO DO WITH THE DEMAND ON THE

20    PATENTED FEATURE.

21         THE COURT:  OKAY.

22         MS. MAROULIS:  WITH RESPECT TO THAT, YOUR HONOR

23    ORDERED APPLE TO SUBMIT A PROFFER OF HOW ITS SUPPOSEDLY COPYING

24    DOCUMENTS SHOW THE DEMAND FOR PATENTED FEATURE.  IF YOU LOOK AT

25    THE 100 PAGE SUBMISSION, IT'S ALMOST GOES TO PANDUIT FACTOR 1.

1    THERE'S VERY LITTLE, NOT AT ALL, DISCUSSION OF PATENTED

2    FEATURES SPECIFICALLY.

3         SO WHILE WE UNDERSTAND WHAT YOUR HONOR IS SAYING, THAT

4    WE'RE NOT GOING TO RELY ON THE PERMANENT INJUNCTION FINDINGS

5    HERE, EVEN TODAY, EVEN ON THE EVE OF TRIAL, THROUGH THEIR

6    PROFFER, APPLE IS UNABLE TO POINT TO THE DEMAND FOR THE

7    SPECIFIC PATENTED FEATURES, WHICH IS THE PANDUIT FACTOR NUMBER

8    2.

9         BUT THE SECOND ASPECT OF THAT MOTION, WE JUST WANT TO MAKE

10   SURE IT DOESN'T GET SWEPT IN WITH THE REST OF THE MOTION, IS WE

11   INCORPORATED BY REFERENCE OUR MOTION TO STRIKE PORTIONS OF

12   MS. DAVIS'S REPORT REGARDING MOVING DESIGN AROUND DATES, AND WE

13   ARGUED THAT EXTENSIVELY LAST WEEK, BUT BECAUSE WE INCORPORATE

14   THAT BY REFERENCE, WE WANT TO MAKE SURE THAT THAT IS CONSIDERED

15   SEPARATELY AND ADDRESSED SEPARATELY AS WELL.

16         THE COURT:  OKAY.

17         MR. PRICE:  WHAT SHE MEANS BY THAT, YOUR HONOR, IS

18   I'M --

19         THE COURT:  I THINK I MAY HAVE THAT AS A DIFFERENT

20   MOTION, THE DATE QUESTION.

21         MR. LEE:  I THINK YOUR HONOR MAY HAVE IT AS THE

22   ARGUMENT IN RESPONSE TO THE SPECIFIC BRIEFING YOUR HONOR ASKED

23   FOR ON THE NOTICE DATE ISSUE.  THAT'S ONE OF THE TWO THINGS YOU

24   ASKED US TO ADDRESS.  SO IF YOU HAVE THAT ON YOUR COMPILATION,

25   IT MAY BE SEPARATE FOR THAT REASON.

1          MS. MAROULIS:  YOUR HONOR, THIS ISSUE APPEARS IN

2     ABOUT THREE DIFFERENT BRIEFS.

3          THE COURT:  I KNOW.

4          MS. MAROULIS:  ONE IS THE ONE THAT YOU ORDERED US TO

5     FILE.

6          THE COURT:  SURE.

7          MS. MAROULIS:  IT'S THE SUBMISSION REGARDING THE

8     DESIGN AROUND DATES, WHICH MR. PRICE WILL ADDRESS IN A MINUTE.

9          BUT IT ALSO APPEARS IN THIS MOTION, SO THE ONLY THING I

10    WAS SAYING IS THAT I DIDN'T WANT THE BROAD DENIAL OF THE MOTION

11    TO ENCOMPASS THAT ISSUE, WHICH REMAINS UNRESOLVED AND WHICH THE

12    BRIEFING WAS SUBMITTED.

13         THE COURT:  I SEE.

14         MS. MAROULIS:  AND IF YOUR HONOR PERMITS, WE'D LIKE

15    MR. PRICE TO MAKE A COUPLE OF POINTS ON THE DESIGN AROUND

16    ISSUE.

17         THE COURT:  WELL --

18         MR. PRICE:  IF YOU WANT TO HEAR IT NOW.

19         THE COURT:  WELL, NOT RIGHT NOW.  I -- I'D LIKE TO

20    JUST GO DOWN MY LIST.  OTHERWISE I WILL GET CONFUSED.

21         YOU KNOW, I WILL SAY, ON THAT ISSUE, I'M INCLINED TO AGREE

22    WITH WHAT MR. PRICE SAID LAST WEEK IN THAT THE DATE IS AS OF

23    THE DATE OF INFRINGEMENT VERSUS THE DATE OF NOTICE.

24         BUT I THINK I MIGHT HAVE THAT SEPARATELY ON MY LIST.

25         SO NUMBER 3 IS A DENIAL.

1    LET'S GO TO NUMBER 4, EXCLUDING OPINIONS BASED ON DATA

2 PROVIDED BY INTERBRAND.  I THINK THIS IS THE SAME AS THE MOTION

3 IN LIMINE FROM LAST YEAR.  IT'S OVERLAPPING WITH THE DAUBERT

4 RULINGS.

5    SO THIS ONE IS DENIED ON THE GROUND THAT IT WAS PREVIOUSLY

6 ALREADY DECIDED IN ECF NUMBER 1157 AT PAGE 12.  SO THAT'S A

7 DENIAL.  LET'S KEEP GOING.

8    MS. MAROULIS:  YOUR HONOR, MAY WE ADDRESS THIS VERY

9 BRIEFLY?  RESPECTFULLY, IT'S A VERY DIFFERENT MOTION.

10    HERE MS. DAVIS IS A COMPLETELY DIFFERENT EXPERT FROM

11 MR. MUSIKA.  MR. MUSIKA HAD DIFFERENT AND POTENTIALLY BROADER

12 EXPERIENCE THAN SHE HAD.  WE DEPOSED HER AND WE FOUND OUT THAT

13 SHE NEVER USED INTERBRAND AS A STUDY TO SUPPORT REASONABLE

14 ROYALTY ANALYSIS.  SHE HAD NEVER BEEN AWARE OF ANYBODY ELSE

15 USING IT AS WELL.  IT WAS NOT PEER REVIEWED AND PEER CITED.  WE

16 PROVIDED THE DEPOSITION EXCERPTS IN SUPPORT OF OUR MOTION.

17    AND SHE NEVER -- NOT ONLY SHE DIDN'T USE THE INTERBRAND,

18 BUT SHE DOESN'T USE BRAND VALUATION TO SUPPORT REASONABLE

19 ROYALTY.

20    IN OTHER WORDS --

21    THE COURT:  WELL, WHY DIDN'T YOU BRING THIS AS A

22 DAUBERT MOTION?  WHY DID YOU BRING IT AS 402, 403?

23    MS. MAROULIS:  YOUR HONOR DID NOT PERMIT US TO BRING

24 DAUBERT MOTIONS.  WE WERE ONLY PERMITTED TO BRING A 702 MOTION,

25 WHICH WE HAVE ON A DIFFERENT ISSUE.

1       BUT IT HAD TO DO WITH QUALIFICATIONS, NOT SPECIFIC

2    EVIDENCE THAT MS. DAVIS RELIES ON.

3       BUT IF YOUR HONOR HAS A MOMENT TO REVIEW THE DEPOSITION

4    TESTIMONY WE SUBMITTED, IT'S CLEAR.  SHE WAS ASKED, "ASIDE FROM

5    INTERBRAND STUDY ITSELF, HAVE YOU EVER USED BRAND TO DERIVE A

6    ROYALTY RATE FOR PATENT?"

7       SHE SAID, "I DON'T HAVE IN MIND ANY OTHER SOURCE FOR

8    BRAND VALUE BESIDES INTERBRAND.  I CAN'T RECALL EVER HAVING

9    USED ANY SUCH SOURCE TO DERIVE VALUE."

10       SHE WAS ASKED WHETHER ANYBODY ELSE DID THAT, WHETHER

11    SHE'S EVER SEEN IT IN THE PEER REVIEW, WHETHER IT'S BEEN CITED

12    ANYWHERE.  THE ANSWERS TO ALL OF THOSE IS NO.

13       I DON'T THINK APPLE DISPUTES THAT.  I THINK THEY CONCEDE

14    THAT THAT'S BOTH HER TESTIMONY AND IT'S TRUE AS A MATTER OF

15    FACT THAT INTERBRAND HAS NOT BEEN PUBLISHED IN THE LITERATURE

16    AS APPROPRIATE EVIDENCE, APPROPRIATE VEHICLE TO DERIVE

17    REASONABLE ROYALTY.

18         THE COURT:  OKAY.  DO YOU HAVE A QUICK RESPONSE?

19         MR. LEE:  YES, YOUR HONOR.

20       MS. DAVIS WAS OBLIGATED TO ADOPT MR. MUSIKA'S THEORIES

21    AND HIS METHODS FOR DETERMINING DAMAGES.  SHE DID.  SHE MADE --

22    ALTHOUGH SHE DIDN'T USE IT HERSELF BEFORE, SHE MADE THE EFFORT

23    TO DETERMINE THAT IT WAS A REASONABLE WAY TO DETERMINE AND GIVE

24    THE OPINION SHE GAVE.

25       MR. WAGNER CONFIRMED THE INTERBRAND VALUATIONS ARE WELL

1    RESPECTED IN THE INDUSTRY AND A TRUSTED SOURCE.

2        SO YOU HAVE MS. DAVIS, WHO'S OBLIGATED TO ADOPT

3    MR. MUSIKA'S THEORIES BECAUSE THOSE WERE THE GROUND RULES, SHE

4    DOES DO THE WORK TO BE SURE THAT SHE CAN AGREE WITH THIS

5    THEORY, AND SHE DID, AND YOU HAVE MR. WAGNER CONFIRMING THAT

6    IT'S A TRUSTED SOURCE.

7        THE COURT:  WELL, I THINK THE ISSUES THAT YOU RAISE,

8    MS. MAROULIS, ARE MORE APPROPRIATE FOR CROSS-EXAMINATION AND

9    GOING MORE TO WEIGHT AND NOT ADMISSIBILITY, SO THAT'S DENIED.

10        LET'S GO TO APPLE'S MOTION TO EXCLUDE WITNESSES.

11        SO I'M ACTUALLY RETHINKING WHAT I HAD SAID LAST WEEK ON

12    THE QUESTION OF LIVE VERSUS DEPOSITION.  LAST YEAR I THINK IF

13    YOU HAD DECIDED LAST MINUTE TO BRING SOMEONE IN LIVE WHO YOU

14    PREVIOUSLY DESIGNATED BY DEPOSITION, I PROBABLY WOULD HAVE

15    ALLOWED IT, SO I'M JUST WONDERING IF THE SAME GROUND RULES THAT

16    WOULD HAVE APPLIED LAST YEAR SHOULD APPLY THIS YEAR, ALTHOUGH I

17    DON'T KNOW IF THAT CREATES MORE PROBLEMS OR POSES ANY

18    PREJUDICE.

19        SO IF YOU WANT TO BE HEARD ON THAT, I'M -- I'M INCLINED,

20    AT THIS POINT, TO KEEP THE RULING FROM LAST WEEK THAT YOU'RE

21    NOT ALLOWED TO CROSS PARTY LISTS.  AND THAT MEANS, YOU KNOW,

22    YOU HAD AN OPPORTUNITY TO DO, TO DESIGNATE ABOUT 99 WITNESSES

23    IN YOUR FINAL LIST, AND IF THAT PERSON WAS NOT ON YOUR LIST OF

24    99, YOU SHOULD NOT BE ABLE TO USE SOMEONE ON THE OTHER PARTY'S

25    LIST, ALTHOUGH -- MY CONCERN IS JUST TRYING TO LIMIT THE AMOUNT

1       OF PREJUDICE IF A PARTY WAS NOT PREVIOUSLY ON NOTICE THAT A

2       CERTAIN PERSON WOULD BE TESTIFYING ABOUT A CERTAIN TOPIC, THAT

3       THEY SHOULDN'T BE SANDBAGGED NOW.

4              DOES ANYONE WANT TO BE HEARD ON THE --

5              MS. MAROULIS:  YES, YOUR HONOR.

6          WE RESPECTFULLY REQUEST THAT WE BE PERMITTED TO CALL

7       MR. TODD PENDLETON.  HE WAS ON APPLE'S LIST, NOT ON SAMSUNG'S

8       LIST.

9              THE COURT:  BUT WHAT WAS HE DESIGNATED FOR?  WHAT

10      TOPIC?

11             MS. MAROULIS:  HE WAS DESIGNATED FOR THE SAME TOPICS

12      THAT WE WOULD BE CALLING HIM FOR, WHICH IS SALES AND MARKETING,

13      AND ESSENTIALLY WHY PEOPLE BUY PHONES.  I DON'T HAVE APPLE'S

14      DESCRIPTION IN MY HAND, BUT I DON'T BELIEVE APPLE WOULD

15      DISAGREE THAT THE SALES AND MARKING TOPICS WERE WHAT THEY

16      DESIGNATED MR. PENDLETON FOR.  HE WAS DEPOSED.

17             THE COURT:  WHO DOES HE WORK FOR?

18             MS. MAROULIS:  HE'S A SAMSUNG EMPLOYEE, YOUR HONOR,

19      AND HE WAS DEPOSED IN THE CASE AT LEAST ONCE, MAYBE MULTIPLE

20      TIMES.

21             THE COURT:  ALL RIGHT.  LET ME HEAR FROM -- IS THAT

22      THE ONLY ONE THAT YOU CARE ABOUT?

23             MS. MAROULIS:  IT'S THE ONLY ONE WHERE I WOULD SAY HE

24      WAS ON APPLE'S LIST, BUT WE'D LIKE TO CALL HIM OURSELVES.

25             THE COURT:  BUT HE'S NOT ON YOUR LIST.  OKAY.

1          MR. MCELHINNY:  YOUR HONOR, MR. PENDLETON HAS NEVER

2     BEEN ON ANY SAMSUNG LIST.  HE WASN'T ON THE SUPER MEGA LIST.

3     HE WASN'T ON ANY LIST WHATSOEVER.  HE'S NEVER BEEN ON A LIST AS

4     A PERSON THAT THEY WERE GOING TO CALL IN THIS TRIAL.

5          THE FACT THAT WE --

6          THE COURT:  BUT HOW ARE YOU PREJUDICED IF HE WAS ON

7     YOUR LIST?

8          MR. MCELHINNY:  BECAUSE WE DIDN'T CALL HIM.  WHEN WE

9     MAKE A LIST, WE HAVE TO MAKE A LIST THAT COVERS WHO WE'RE

10    CALLING IN OUR CASE-IN-CHIEF AND WHO WE'RE CALLING FOR REBUTTAL

11    IN CASE THEY TAKE CERTAIN POSITIONS THAT THEY DO AT TRIAL.

12         AND SO WE PUT HIM ON A DEPOSITION ONLY LIST BECAUSE WE HAD

13    SOME DEPOSITION QUOTES THAT WE WERE PREPARED TO USE AS

14    IMPEACHMENT IF IT BECAME NECESSARY IF ONE OF THEIR WITNESSES

15    EVER TOOK A POSITION.

16         THE COURT:  OKAY.  BUT HOW WOULD YOU BE PREJUDICED

17    NOW IF THEY WANT TO CALL HIM?

18         MR. MCELHINNY:  WELL, WE'RE PREJUDICED -- ONE, WE'RE

19    PREJUDICED BY GROUND RULES.  I MEAN, WE'RE PREJUDICED BY THE

20    FACT THAT WE HAD LIMITED LISTS, WE HAD TO MAKE SELECTIONS OF

21    WHO HAD TO GO ON IT, AND WE FOLLOWED YOUR HONOR'S RULES TO THE

22    LETTER, OBVIOUSLY.

23         AND TO SAY NOW WE'RE GOING TO GIVE THEM A FREEBIE AND PUT

24    SOMEBODY ON A LIST THAT WE HAVEN'T DONE ON SUBJECTS THAT, AS

25    THEY KEEP SAYING, ARE CHANGING AND WE'RE GOING TO GET DESIGN

1    AROUND AND, AND A DIFFERENT FOCUS IN TERMS OF EVEN WHEN HE WAS

2    DEPOSED IN TERMS OF THE LIMITED NUMBER OF HOURS WE HAD, IT'S

3    JUST UNFAIR.  IT JUST OPENS IT UP.  IT GIVES THEM A FREE PASS

4    TO A WITNESS.

5              MS. MAROULIS:  YOUR HONOR, THERE'S NO PREJUDICE AT

6    ALL.  HE WAS DEPOSED.  APPLE KNEW ABOUT HIM.  THEY PUT HIM ON

7    THEIR OWN LIST.  WE CITE CASES IN OUR BRIEFS THAT THE COURTS

8    HAVE ALLOWED PARTIES TO CROSS LISTS.  IN THIS INSTANCE, THIS IS

9    THE ONLY ONE WE'RE ASKING FOR --

10             MR. MCELHINNY:  WELL, THE --

11             MS. MAROULIS:  -- ON THE CROSSING THE LIST POINT.

12             MR. MCELHINNY:  THIS THE ONLY POSSIBLE --

13             MS. MAROULIS:  AND APPLE CANNOT POSSIBLY CLAIM THEY

14   ARE PREJUDICED WITH WHAT MR. PENDLETON HAS TO SAY.

15             MR. MCELHINNY:  THIS THE ONLY CROSSING LIST.

16        BUT THEY'RE ALSO ASKING FOR PROFESSOR SUKUMAR, WHO WASN'T

17   ON THE LIST.  I MEAN, WE'VE GOT A BUNCH OF EXCEPTIONS HERE THAT

18   ARE ALLOWING THEM TO PUT ON A CASE THAT THEY COULD NOT HAVE PUT

19   ON LAST TIME BECAUSE THEY FOLLOWED YOUR HONOR'S RULES AND MADE

20   THE SPECIFIC CHOICES THAT THEY MADE THE LAST TIME AND NOW

21   THEY'RE ASKING YOU TO FREE THEM FROM THEM.

22             THE COURT:  WHAT ABOUT THE LIVE VERSUS DEPOSITION?

23             MR. MCELHINNY:  I -- FRANKLY, THAT WAS OUR PROPOSAL.

24   MOST OF THE PEOPLE ON THEIR DEPOSITIONS ARE APPLE WITNESSES AND

25   THEY CAN'T CALL APPLE WITNESSES BY DEPOSITION, SO WE OFFERED TO

1    ALLOW THEM TO CALL THEM LIVE.

2          MS. MAROULIS:  YOUR HONOR, AT LEAST FOUR OF THE

3    WITNESSES ON OUR DEPOSITION LIST ARE 30(B)(6) CORPORATE

4    REPRESENTATIVES, SO WE DO GET AUTHORIZED TO PLAY THEIR

5    DEPOSITION TESTIMONY.

6          MR. MCELHINNY:  IF THEY WANT TO PLAY --

7          THE COURT:  YEAH, I DON'T THINK IT'S -- I MEAN, THESE

8    ARE SAMSUNG WITNESSES.  IF THEY WANT TO USE THE DEPOSITION

9    INSTEAD OF CALLING THEM LIVE, THEN THEY'RE GOING TO BE ABLE TO

10   DO THAT.

11         I GUESS I DON'T UNDERSTAND.  I KNOW APPLE WOULD PREFER TO

12   HAVE THEM HERE LIVE.

13         MR. MCELHINNY:  I SHOULD JUST GIVE YOU STRAIGHT

14   ANSWERS TO YOUR QUESTIONS.

15         THE COURT:  YEAH.

16         MR. MCELHINNY:  WE HAVE NO OBJECTION TO THAT, TO YOUR

17   HONOR'S PROPOSAL THAT THEY CAN SUBSTITUTE DEPOSITION, LIVE FOR

18   DEPOSITION.

19         THE COURT:  BUT I DON'T KNOW, IS THAT WHAT SAMSUNG

20   WANTS?

21         MS. MAROULIS:  I THINK, YOUR HONOR, THERE WERE

22   SEVERAL DIFFERENT CONVERSATIONS GOING ON.

23         THE COURT:  UM-HUM.

24         MS. MAROULIS:  SO WE'RE TALKING ABOUT APPLE

25   WITNESSES, SOME OF WHICH ARE ON THE LIVE LIST AND SOME ON THE

1    DEPOSITION LIST.  MR. MCELHINNY IS SAYING, I THINK, THAT EVEN

2    IF THEY WERE NOT ON OUR LIVE LIST, BUT WERE ON OUR DEPOSITION

3    LIST, APPLE WOULD NOT OBJECT IF WE BROUGHT THEM LIVE IF WE NEED

4    TO.

5         THE COURT:  NO.  THEY WANT YOU TO BRING THEIR OWN

6    PEOPLE LIVE SO THEY'LL HAVE AN OPPORTUNITY TO ASK QUESTIONS AND

7    CLARIFY ANYTHING THAT DOESN'T LOOK GOOD ON THE DEPOSITION

8    TRANSCRIPT, VIDEO.

9         MR. MCELHINNY:  TO BE CLEAR, WE THINK THEY -- UNLESS

10   IT'S A 30(B)(6), THEY CAN ONLY PLAY THE DEPOSITION IF THE

11   WITNESS IS UNAVAILABLE.

12        MS. MAROULIS:  YOUR HONOR, IT'S A PARTY ADMISSION.

13        MR. PRICE:  I THINK IT'S A 30(B)(3).  I'M NOT QUITE

14   SURE.  A PARTY'S DEPOSITION CAN BE PLAYED AT ANY TIME.

15        AND AS TO WHETHER -- I'M GLAD MR. MCELHINNY'S AGREED TO

16   CALL THEM LIVE.

17        THE COURT:  I THINK YOUR HEARSAY ARGUMENT WAS REALLY

18   ABSURD, SO I'M NOT BUYING IT.

19        EVEN IF APPLE WANTS ITS OWN WITNESSES CALLED LIVE, BUT

20   YOU PREVIOUSLY DESIGNATED THEM THROUGH DEPOSITION, YOU WILL BE

21   ABLE TO HAVE THEIR TESTIMONY SHOWN BY DEPOSITION.

22        MR. PRICE:  AND WE APPRECIATE THE OFFER TO BRING THEM

23   LIVE IF WE WANT TO, IF WE CHOOSE TO.

24        THE COURT:  IF YOU WANT TO, THAT'S FINE.

25        MR. MCELHINNY:  YOUR HONOR, FOR OUR PLANNING

1    PURPOSES, THESE ARE REAL EMPLOYEES WHO HAVE REAL LIVES.  CAN WE

2    GET A NEW LIST FROM THEM NOW ABOUT WHO THEY'RE CALLING LIVE AND

3    WHO THEY'RE CALLING BY DEPOSITION RELATIVELY QUICKLY SO THAT

4    THESE PEOPLE CAN ARRANGE THEIR LIVES?

5            THE COURT:  DO YOU WANT ANYONE LIVE?

6            MS. MAROULIS:  PROBABLY NOT, BUT IF WE HAVE A DISPUTE

7    AS TO --

8            MR. MCELHINNY:  FINE.

9            THE COURT:  I THINK YOU'RE THE ONE THAT WANTS THEM

10   LIVE.

11           MS. MAROULIS:  IF WE CAN PLAY DEPOSITIONS, WE'RE NOT

12   GOING TO TAKE UP OUR EIGHT HOURS BY CALLING THEM LIVE.

13           MR. MCELHINNY:  THANK YOU.  I EXPECT THEM NOT TO BE

14   SUBPOENAED FOR THE TRIAL THEN.  THAT'S WHAT HAPPENED THE LAST

15   TIME.

16           MR. PRICE:  IF WE NEED AN APPLE WITNESS, WE'LL

17   CONTACT APPLE'S COUNSEL.  THIS SHOULDN'T BE AN ISSUE.

18           THE COURT:  OKAY.  WHO ELSE WAS AN ISSUE WITH REGARD

19   TO -- ALL RIGHT.  SO AS FAR AS -- OKAY.  I'M GOING TO AGREE

20   THAT THE PARTIES ARE BOUND BY THEIR OWN FINAL JULY 23RD, 2012

21   WITNESS LISTS.

22           MS. MAROULIS:  YOUR HONOR, FOR THE RECORD, THE CASE I

23   WAS REFERRING TO IS THE PRICE CASE, AND IT'S 961 F.2D AT 1474.

24   THAT PARTICULAR CASE, THE NINTH CIRCUIT HELD IT WAS ABUSE OF

25   DISCRETION TO PREVENT A PARTY FROM CALLING WITNESSES LISTED ON

1   THE OTHER PARTY'S WITNESS LISTS.

2            MR. MCELHINNY:  THAT'S -- THEY CITED THAT LAST WEEK.

3   THAT'S ACTUALLY NOT AN ACCURATE REPRESENTATION OF WHAT THE CASE

4   HOLDS.

5            THE COURT:  WELL, EACH PARTY DESIGNATED ABOUT 99

6   WITNESSES LAST YEAR IN THEIR FINAL WITNESS LIST FILED ON

7   JULY 23RD OF 2012 AND, IN ORDER TO PREVENT SANDBAGGING, WAS

8   REQUIRED TO IDENTIFY WHOM THEY MAY CALL, WHOM THEY WOULD CALL,

9   AS WELL AS FOR WHAT TOPICS, AND THE COURT FINDS THAT IT WOULD

10  BE PREJUDICIAL AT THIS POINT, A YEAR AND A HALF LATER, NOW TO

11  SUDDENLY CHANGE THAT WHEN IT WAS VERY CLEAR TO THE PARTIES THAT

12  THEY WERE MAKING CHOICES THAT THEY WOULD BE BOUND BY, AND WERE

13  BOUND BY, DURING THE FIRST TRIAL.

14       SO BY VIRTUE OF THE FACT THAT THE PARTIES WERE ALLOWED TO

15  DESIGNATE 100 WITNESSES, I DON'T FIND THAT THERE'S ANY

16  PREJUDICE TO BIND PARTIES BY THEIR LIST OF 100 WITNESSES.

17  OKAY?  ESPECIALLY FOR A RETRIAL ON A MORE LIMITED SCOPE OF THE

18  SAME TRIAL THAT WAS TRIED LAST YEAR.

19            OKAY.  LET'S --

20            MS. MAROULIS:  YOUR HONOR, THERE'S ONE ISSUE THAT YOU

21  RESERVED LAST TIME --

22            THE COURT:  WHAT'S THAT?

23            MS. MAROULIS:  -- WHICH IS DR. SUKUMAR.  HE WAS NOT

24  ON OUR FINAL WITNESS LIST.  HE WAS NOT ON APPLE'S WITNESS LIST,

25  SO HE'S IN A CATEGORY OF HIS OWN, AND WE'VE BRIEFED THAT

1    SEVERAL TIMES.

2         BUT THE BASIC ISSUE HERE IS THAT LAST TIME APPLE'S SURVEY

3    EXPERT, DR. HAUSER, SPENT ABOUT THREE AND A HALF MINUTES ON THE

4    STAND.  IT WAS NOT PARTICULARLY MEMORABLE TESTIMONY.

5         WE HAD MANY, MANY OTHER PATENTS AND ISSUES AND BOTH SIDES

6    HAD CLAIMS AGAINST EACH OTHER, SO WE COULD NOT HAVE FIT

7    EVERYTHING WE NEEDED IN THAT TRIAL.

8         RIGHT NOW THE ISSUES ARE GOING TO BE MUCH MORE LIMITED AND

9    WE EXPECT DR. HAUSER TO SPEND A LOT MORE TIME ON THE STAND AND

10   WE WOULD BE SEVERELY PREJUDICED IF HE WAS NOT MET BY A COUNTER

11   FROM SAMSUNG, WHICH IS THE PERSON WHO REBUTTED HIM IN

12   DISCOVERY, WHO SUBMITTED AN EXPERT REPORT, WHO WAS DEPOSED, AND

13   WHO ACTUALLY TESTIFIED AT TRIAL, ALBEIT ON A DIFFERENT TOPIC.

14        SO WE RESPECTFULLY REQUEST THAT DR. SUKUMAR BE ALLOWED TO

15   TESTIFY, EVEN THOUGH HE WAS ON THE PRELIMINARY SAMSUNG LIST,

16   BUT NOT THE JULY 23RD WITNESS LIST.

17             MR. MCELHINNY:  THIS IS A REPEAT OF A RULING YOUR

18   HONOR MADE IN THE FIRST TRIAL BECAUSE, AS THEY SAY, THEY

19   INTENTIONALLY DID NOT PLACE DR. SUKUMAR ON THEIR FINAL WITNESS

20   LIST.

21        WHEN THEY GOT TO TRIAL, THEY CAME TO YOUR HONOR AND ASKED

22   TO BE RELIEVED OF THAT BURDEN, AND YOUR HONOR DID, IN FACT,

23   RELIEVE THEM OF THE BURDEN, BUT ONLY AS TO THEIR OFFENSIVE

24   CASE, AND YOU REFUSED TO GRANT THE MOTION THAT THEY'RE NOW

25   ARGUING RIGHT NOW BECAUSE THIS WOULD BE LITERALLY BRINGING IN A

1    NEW EXPERT INTO THE RETRIAL --

2              MS. MAROULIS:  YOUR HONOR, THAT'S NOT --

3              MR. MCELHINNY:  -- THAT DID NOT TESTIFY IN THE FIRST

4    CASE.

5              MS. MAROULIS:  THAT'S NOT A CORRECT CHARACTERIZATION

6    BECAUSE WE ONLY SOUGHT TO PUT DR. SUKUMAR IN FOR THE OFFENSIVE

7    CASE.  THE REASON IS THAT ON THE OFFENSIVE DAMAGES WE BORE THE

8    BURDEN.

9         APPLE BEARS THE BURDEN OF DAMAGES ON THE DEFENSIVE CASE,

10   SO DR. SUKUMAR'S TESTIMONY LAST TIME WAS NOT CRUCIAL FOR

11   MEETING THE BURDEN ON THE DEFENSIVE SIDE.

12        SO --

13             MR. MCELHINNY:  WELL, IT HASN'T BECOME CRUCIAL --

14             MS. MAROULIS:  SO IT'S NOT CORRECT TO SAY THAT THE

15   COURT REJECTED HIM TO TESTIFY ON THE DEFENSIVE SIDE.  THAT WAS

16   NEVER BEFORE THE COURT.  WE ONLY MOVED TO HAVE HIM TESTIFY

17   DURING THE OFFENSIVE PART OF THE CASE.

18             MR. MCELHINNY:  IF IT WASN'T CRUCIAL IN THE FIRST

19   TRIAL, YOUR HONOR, ON DEFENSE, IT CANNOT BE CRUCIAL IN THIS

20   TRIAL AND IT WOULD BE UNFAIR TO GIVE THEM A NEW EXPERT.

21             MS. MAROULIS:  YOUR HONOR, WE'VE ARGUED THIS A FAIR

22   NUMBER OF TIMES, BUT HE'S NOT A NEW EXPERT.  HE SUBMITTED A

23   REPORT.  HE WAS DEPOSED BY ONE OF COUNSEL'S COLLEAGUES.  THEY

24   HAVE PLENTY OF AMMUNITION FOR CROSS-EXAMINATION IF THEY CHOOSE

25   TO.  IT IS NOT A PREJUDICIAL SITUATION.

```
 1              THE COURT:  ALL RIGHT.  THIS MOTION IS GRANTED.
 2    MR. SUKUMAR -- DR. SUKUMAR WAS ALLOWED TO TESTIFY LAST YEAR ON
 3    SURVEY DATA UNDERLYING DAMAGE ANALYSIS FOR SAMSUNG'S OFFENSIVE
 4    PATENTS, WHICH IS NOT AT ISSUE IN THIS TRIAL.  SO FOR UNTIMELY
 5    DISCLOSURE AND ON 403 GROUNDS --
 6              MR. MCELHINNY:  I'M SORRY.  OUR MOTION TO STRIKE HIM
 7    IS GRANTED?
 8              THE COURT:  I'M GRANTING YOUR MOTION TO EXCLUDE
 9    DR. SUKUMAR.
10              MR. MCELHINNY:  THANK YOU.
11              THE COURT:  OKAY.  THIS IS APPLE'S -- OH, YOU KNOW,
12    WE SHOULD TAKE A BREAK.
13         (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE
14    REPORTER.)
15              THE COURT:  OKAY.  APPLE'S MOTION TO EXCLUDE
16    WITNESSES J. PARK, JONG SHIN, SUN-YUNG YI, I HAD ALREADY
17    PREVENTED MR. WAGNER FROM BASING HIS DESIGN AROUND TESTIMONY ON
18    INFORMATION FROM SUN-YOUNG YI AND J. PARK, SO I'M A LITTLE BIT
19    CONFUSED AS TO WHY WE'RE RELITIGATING THIS AGAIN NOW.
20              MS. MAROULIS:  ACTUALLY, YOUR HONOR, THE COURT RULED
21    THAT MR. WAGNER COULD TESTIFY ABOUT DESIGN AROUNDS AND DID
22    TESTIFY ABOUT DESIGN AROUNDS DURING THE LAST TRIAL.
23              THE COURT:  THEY WERE HYPOTHETICAL DESIGN AROUNDS.
24    THEY WEREN'T BASED ON WHAT MR. PARK --
25              MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.  AND THIS
```

1    IS AGAIN THE ISSUE OF HYPOTHETICAL DESIGN AROUNDS.

2        THE ONLY THING THESE THREE GENTLEMEN WOULD TESTIFYING

3    ABOUT IS HYPOTHETICALLY HOW LONG WOULD IT TAKE TO DESIGN AROUND

4    AND HOW MANY -- HOW MUCH WOULD IT COST IN HUMAN -- IN WORK

5    HOURS TO DO THAT.

6        SO THIS IS VERY LIMITED TESTIMONY REGARDING HYPOTHETICAL

7    DESIGN AROUNDS, WHICH WAS ALLOWED LAST TIME.

8        AND WE MAY NOT EVEN NEED TO CALL THEM.  IT MIGHT JUST BE

9    MR. WAGNER.  BUT WE DO HAVE THEM ON THE WITNESS LIST BECAUSE WE

10   HAD THEM ON THE LAST WITNESS LIST AND IN THE EVENT THEY NEED TO

11   COME AND BACK HIM UP, THEY WILL BE AVAILABLE.  BUT --

12       THE COURT:  I SPECIFICALLY PROHIBITED MR. WAGNER FROM

13   RELYING ON HIS CONVERSATIONS WITH YI AND PARK.  YOU CAN LOOK AT

14   THE TRANSCRIPT, PAGE 2999, LINES 12 THROUGH 17.  SO WHY ARE WE

15   RELITIGATING THAT QUESTION?

16       MS. MAROULIS:  YOUR HONOR, MAY WE HAVE THE PAGE AND

17   LINE AGAIN?

18       THE COURT:  SURE.  PAGE 2999, LINES 12 THROUGH 17.

19   2999, LINES 12 THROUGH 17.

20       WELL, I RELIED -- THE TESTIMONY FROM MR. WAGNER ABOUT

21   HYPOTHETICAL DESIGN AROUNDS, HE TESTIFIED TO IT AT 2997, LINE 9

22   THROUGH IT LOOKS LIKE PAGE 3000, LINE 18.

23       BUT BASED ON JUDGE GREWAL'S SANCTIONS ORDER, BECAUSE OF

24   THE LATE PRODUCTION OF THE SOURCE CODE FOR ANY DESIGN AROUNDS

25   AND THAT BEING EXCLUDED, I DID NOT ALLOW MR. WAGNER TO RELY ON

1    SUN-YOUNG YI OR J. PARK ABOUT THE DESIGN AROUNDS.

2            MS. MAROULIS:  YOUR HONOR, I'M LOOKING AT PAGE 3000

3    OF THE TRIAL TRANSCRIPT, AND MR. PRICE MADE AN ARGUMENT SAYING

4    THAT DOES MAKE A DIFFERENCE IN DAMAGES, BUT IT HAS NOTHING TO

5    DO WITH AN ACTUAL DESIGN AROUND IN THE SOURCE CODE.  IT'S JUST

6    ENGINEERS SAYING "WE BELIEVE THIS IS HOW LONG IT WOULD TAKE,"

7    JUST AS APPLE DID, AND THEN THE COURT SAYS, "I'M GOING TO ALLOW

8    IT IN."

9          SO THE COURT DID ALLOW MR. WAGNER TO TESTIFY ABOUT

10   HYPOTHETICAL DESIGN AROUNDS, NOT ANY ACTUAL DESIGN AROUNDS, NOT

11   ANY ENGINEERING EFFORTS, BUT SIMPLY, HYPOTHETICALLY, HOW LONG

12   WOULD IT TAKE SOMEONE TO DESIGN AROUND.

13           THE COURT:  MR. WAGNER DIDN'T RELY ON SUN-YOUNG YI OR

14   J. PARK LAST TIME.

15           MS. MAROULIS:  HE DID, YOUR HONOR.  THEY DID NOT

16   TESTIFY -- THEY WERE ON OUR WITNESS LIST.  THEY DID NOT TESTIFY

17   LIVE.  HE DID RELY ON THEM AND HE DID TESTIFY AT TRIAL

18   REGARDING DESIGN AROUNDS.

19           MR. MCELHINNY:  I NEED TO RAISE WITH THE COURT A

20   SEPARATE ISSUE OF SOMETHING ON THIS.  YOU'LL REMEMBER LAST WEEK

21   I ASKED WHETHER OR NOT THE DAMAGE EXPERTS COULD SIMPLY

22   INCORPORATE STUFF FROM WHAT THEY'D HEARD OR WHETHER WE HAD TO

23   CALL THE WITNESSES LIVE, AND THE DECISION WAS THAT WE HAD TO

24   CALL THE WITNESSES LIVE.

25           THIS MORNING YOU ASKED MR. PRICE IF HE WANTED TO REVISIT

1    THAT, IF HE WAS PREPARED, IN ORDER TO MAKE THE TRIAL GO, TO LET

2    THE DAMAGES EXPERT INCORPORATE THIS, AND HE SAID NO.

3        IF OUR DAMAGES EXPERTS ARE GOING TO BE RELYING ON

4    FOUNDATIONAL TESTIMONY, THE WITNESS HAS TO PUT IT IN LIVE.

5        AND I DON'T CARE WHICH WAY WE GO ON THE RULE, BUT NOW THAT

6    IT'S THEIR DAMAGES EXPERT, THEY'RE TAKING A DIFFERENT POSITION.

7            MS. MAROULIS:  YOUR HONOR, THAT'S A DIFFERENT ISSUE

8    ENTIRELY BECAUSE PREVIOUSLY THERE WAS TECHNICAL TESTIMONY AND

9    THEY WERE TRYING TO USE MS. DAVIS AS A MOUTHPIECE FOR TECHNICAL

10   TESTIMONY, WHICH SHE DOESN'T HAVE ANY EXPERTISE IN, AND THAT IS

11   WHAT MR. PRICE SUGGESTED THAT WE HAVE LIVE WITNESSES FOR.

12       DAMAGES EXPERTS ROUTINELY RELY ON CONVERSATIONS WITH

13   ENGINEERS REGARDING HOW THEY ARRIVED AT DESIGN AROUND

14   CALCULATIONS.  MS. DAVIS RELIES ON CONVERSATIONS WITH APPLE

15   WITNESSES REGARDING THAT IN FASHIONING HER DESIGN AROUND

16   CALCULATIONS.

17       SO WE DO NOT BELIEVE THAT THESE WITNESSES ARE NECESSARY TO

18   HAVE MR. WAGNER'S OPINION BE HEARD, BUT WE DID PUT THEM ON THE

19   WITNESS LIST JUST IN CASE WE NEED THEM.

20           MR. MCELHINNY:  BOY, THAT WENT PRETTY FAST, BUT AS I

21   UNDERSTAND IT, MS. DAVIS DOESN'T HAVE THE COMPETENCE TO TESTIFY

22   ABOUT TECHNICAL INFORMATION, BUT MR. WAGNER DOES BECAUSE IT'S

23   ABOUT DESIGN AROUND TIMING.

24       I -- IT HAS TO BE A SINGLE RULE HERE, YOUR HONOR, AND THEN

25   IT HAS TO BE APPLIED FAIRLY ACROSS BOTH SIDES.

1    AND THEY'RE THE ONES WHO ASKED FOR MAKING US BRING THE

2    WITNESSES.  THAT'S WHY OUR TECHNICAL WITNESSES ARE COMING,

3    BECAUSE THEY OBJECT TO OUR DAMAGE EXPERT TRYING TO INCORPORATE

4    TESTIMONY THAT WAS GIVEN AT THE LAST TRIAL, WHICH IS FINE,

5    WE'RE GOING TO LIVE WITH THAT, BUT THEY NEED TO LIVE WITH IT,

6    TOO.

7         MS. MAROULIS:  YOUR HONOR, THAT'S COMPLETELY

8    INCOMPARABLE CIRCUMSTANCES.  THEY'RE TRYING TO IMPORT TECHNICAL

9    TESTIMONY BY DR. BALAKRISHNAN AND DR. SINGH, BOTH OF WHOM

10   TESTIFIED AT TRIAL, THROUGH MS. DAVIS, WHICH EVERYONE AGREES

11   SHE'S NOT COMPETENT TO DO.  MS. DAVIS IN HER REPORT RELIES ON

12   APPLE'S ENGINEERS, WHO ARE NOT ON ANYONE'S WITNESS LIST,

13   APPLE'S OR SAMSUNG'S, IN DECIDING ON THE DESIGN AROUND TIMING.

14        THE COURT:  WHO HAS THE TRANSCRIPT AT PAGE 2999?

15        MS. MAROULIS:  YOUR HONOR, I'M GOING TO HAND THIS UP.

16        THE COURT:  WERE YOU GOING TO SAY SOMETHING, MR. LEE?

17   YOU HAD STOOD UP.

18        MR. LEE:  NO, NO.  MR. MCELHINNY MADE THE POINT.

19   I WAS GOING TO ASK YOU TO ADDRESS 2999 AND 3000, WHICH

20   YOUR HONOR IS LOOKING AT RIGHT NOW.

21        (PAUSE IN PROCEEDINGS.)

22        THE COURT:  YOU KNOW, PAGE 2999, "THE COURT:  RIGHT,

23   WELL, THEN, I THINK THAT IS GETTING INTO JUDGE GREWAL'S ORDER.

24   SO I'M GOING TO STRIKE IT AS TO J. PARK AND SUN-YOUNG YI, BUT

25   EVERYTHING ELSE IS FINE."

1    SO, MS. MAROULIS, WHAT PART OF THIS TRANSCRIPT ARE YOU

2  SAYING THAT I DID ALLOW IT AS TO MR. PARK AND SUN-YOUNG YI?

3        MS. MAROULIS:  YOUR HONOR, IT'S THE NEXT PAGE.  IT'S

4  PAGE 3000.  I GAVE YOUR HONOR MY COPY OF THE TRANSCRIPT, I

5  THINK IT'S IN THE MIDDLE OF THE PAGE AFTER MR. PRICE MAKES THE

6  ARGUMENT, AND THE COURT SAYS, "I WILL LET IT IN."

7        AND -- OKAY.  SO MR. PRICE'S ARGUMENT TO YOUR HONOR

8  STARTS AT PAGE 2999.

9        THE COURT:  OKAY.  JUST STOP A SECOND.

10   (PAUSE IN PROCEEDINGS.)

11       THE COURT:  NO, I DON'T THINK IT WAS ALLOWING, AND

12  EVEN MR. PRICE HIMSELF SAYS HE WANTS CLARIFICATION BECAUSE HE'S

13  NOT CLEAR ON WHAT I MEANT.  IT LOOKS LIKE WHAT WAS ALLOWED WAS

14  A SPECIFIC TIMING OF WHETHER THE DESIGN AROUND WOULD TAKE SIX

15  MONTHS VERSUS FOUR WEEKS.

16       MS. MAROULIS:  THAT'S RIGHT, YOUR HONOR.

17       THE COURT:  THAT LOOKS LIKE THE ISSUE.  BUT I SAID

18  THAT WHATEVER MR. PARK AND I ASSUME SUN-YOUNG -- IS THAT A MAN

19  OR A WOMAN?

20       MS. MAROULIS:  I THINK IT'S A SHE, YOUR HONOR.  I'M

21  SORRY.  I CHARACTERIZED IT AS A MAN.

22       THE COURT:  WELL, SUN-YOUNG YI, WHATEVER THEY SAID,

23  THAT THAT'S SOUNDING LESS HYPOTHETICAL AND I WOULDN'T LET THEM

24  GET INTO ACTUAL DESIGN AROUNDS.

25       MS. MAROULIS:  YOUR HONOR, MAY I READ INTO THE RECORD

1    THE TRIAL TRANSCRIPT PAGES WHERE MR. WAGNER DOES TESTIFY ABOUT

2    HYPOTHETICAL DESIGN AROUND?  IT'S PAGE 3035, LINE 11 THROUGH

3    3038, LINE 19, AND PAGE 3053, LINE 18 TO PAGE 3056, LINE 18.

4        AND BASICALLY ALL WE'RE SAYING HERE IS THAT MR. WAGNER

5    SHOULD BE ABLE TO TESTIFY AT THIS TRIAL IN THE SAME WAY HE

6    TESTIFIED IN THE LAST TRIAL, AND APPLE IS TRYING TO PREVENT US

7    FROM DOING THAT.

8        SINCE WE ARE ENGAGED IN THIS GROUND HOG DAY ANALYSIS, IF

9    HE TESTIFIED ABOUT IT LAST TIME, HE SHOULD BE ABLE TO AGAIN --

10    TO HAVE THE SAME TESTIMONY.

11        THE COURT:  WELL, I DON'T THINK THAT'S THEIR

12    OBJECTION.  THEIR OBJECTION IS YOU'RE PUTTING J. PARK,

13    JONG SHIN, AND SUN-YOUNG YI ON YOUR WITNESS LIST.  I THINK

14    THAT'S THE OBJECTION.

15        MR. LEE:  THAT'S THE OBJECTION.

16        THE COURT:  THAT'S DIFFERENT THAN SAYING YOU CAN'T

17    TESTIFY -- THAT MR. WAGNER CAN'T REPEAT WHAT HE SAID ABOUT

18    DESIGN AROUNDS.

19        MR. LEE:  YOUR HONOR, HE GAVE TESTIMONY AS TO TIME

20    AND COST OF HYPOTHETICAL DESIGN AROUNDS, WHICH IS WHAT YOUR

21    HONOR WAS ADDRESSING ON PAGE 3000.

22        THE QUESTION OF WHETHER THESE FOLKS CAN BE ON THE WITNESS

23    LIST AND NOW BE CALLED LIVE WHEN THE TESTIMONY WAS STRICKEN AND

24    EXCLUDED FROM THE LAST TRIAL IS WHAT THIS ISSUE IS ABOUT.

25    THEY'RE TWO DIFFERENT ISSUES.

1           MS. MAROULIS:  YOUR HONOR, AS EXPLAINED IN OUR

2   WITNESS LIST, THEIR TESTIMONY WOULD BE LIMITED TO THE EXACT

3   SAME THING.

4           THE COURT:  BUT THEY DIDN'T TESTIFY LAST TIME.

5           MS. MAROULIS:  NO, THEY DID NOT.

6           THE COURT:  WHAT?

7           MS. MAROULIS:  THEY DID NOT.

8           THE COURT:  I KNOW.  I GUESS I'M UNCLEAR.  YOU'RE

9   SAYING THEY'RE LIMITED TO WHAT THEY TESTIFIED TO LAST TIME,

10   WHICH WAS NOTHING.

11          MS. MAROULIS:  NO, YOUR HONOR.  I MISSPOKE.

12    MR. WAGNER TESTIFIED TO THE LENGTH OF THE DESIGN AROUND

13   PERIOD, AND THAT'S THE ONLY INFORMATION THAT THOSE INDIVIDUALS

14   IMPARTED TO HIM.

15      SO IF THEY'RE CALLED AT ALL, WHICH THEY MAY NOT BE,

16   MR. WAGNER RELIED ON THEM FOR THE SPECIFIC LENGTH OF TIME OF

17   THE DESIGN AROUND.  THAT'S THE ONLY INFORMATION THEY WOULD BE

18   IMPARTING, WHICH IS STILL HYPOTHETICAL, NOT ACTUAL DESIGN

19   AROUND.

20          MR. LEE:  YOUR HONOR --

21          THE COURT:  WELL, I'VE EXCLUDED AS TO SUN-YOUNG YI

22   AND J. PARK AND THAT RULING STANDS.

23      AS I SAID FROM THE VERY BEGINNING OF THE DISCUSSION OF

24   THIS MOTION, I DON'T UNDERSTAND WHY WE'RE RELITIGATING THE SAME

25   THING AGAIN.

1    SO THE MOTION IS GRANTED.  THANK YOU FOR THE TRANSCRIPT.

2    OKAY.  AND THE SAME FOR -- SAME FOR JONG-WOOK SHIN,

3    J-O-N-G-W-O-O-K, SURNAME S-H-I-N.

4         MR. LEE:  YOUR HONOR, THERE'S A THIRD, I THINK.

5    OH, YOU HAVE THAT?  I'M SORRY.

6         THE COURT:  OKAY.  NOW, AS TO THE MOTION TO EXCLUDE

7    WITNESSES RELEVANT ONLY TO INFRINGEMENT AND VALIDITY, I'M GOING

8    TO DENY THAT WITHOUT PREJUDICE.

9         I THINK, BECAUSE WE HAVE THESE QUESTIONS OF WHAT IS THE

10   INCREMENTAL BENEFIT THAT THE PATENTED FEATURES CONFER ON

11   CONSUMERS, THAT WE'RE NECESSARILY GOING TO HAVE POTENTIALLY

12   EVIDENCE, TESTIMONY ON WHAT EXISTED IN THE PRIOR ART BEFORE

13   THESE INVENTIONS AND WHAT NON-INFRINGING ALTERNATIVES ARE

14   AVAILABLE.

15        SO IT MAY, TO SOME EXTENT, OVERLAP WITH INFRINGEMENT AND

16   VALIDITY TOPICS, SO THIS MOTION IS DENIED WITHOUT PREJUDICE.

17        OBVIOUSLY EVERYTHING WILL BE SUBJECT TO A 403 ANALYSIS

18   WHEN IT ACTUALLY IS INTRODUCED OR SOUGHT TO BE INTRODUCED.

19        LET'S GO TO THE MOTION TO EXCLUDE VALIDITY EXHIBITS.  I

20   THINK IT'S THE SAME.

21        I'M GOING TO DENY IT WITHOUT PREJUDICE.  APPLE IS BOUND BY

22   THE PATENT SCOPE DESCRIPTION IN MR. WAGNER'S ORIGINAL REPORT.

23        BUT AS I SAID BEFORE, THERE WILL BE SOME EVIDENCE ADMITTED

24   AS TO THE INCREMENTAL BENEFIT CONFERRED BY THE PATENTED

25   INVENTIONS WHICH MAY OVERLAP WITH MAYBE SOME OF THE SAME

1  EVIDENCE THAT WILL GO TO VALIDITY.

2      OKAY.  WE'LL JUST DO ONE MORE AND THEN I THINK WE'RE GOING

3  TO TAKE OUR BREAK, BUT WE'RE VERY -- HOPEFULLY WE'RE SOMEWHAT

4  CLOSE TO BEING DONE.

5      THE MOTION TO EXCLUDE RE-EXAMINATION EVIDENCE IS GRANTED

6  FOR THE REASONS STATED ABOVE.

7      THE -- REGARDING THE INFRINGEMENT EXHIBITS, I STILL THINK

8  THIS ONE AS WELL I SHOULD JUST DENY WITHOUT PREJUDICE AND

9  THEN -- BECAUSE WE HAVE THE QUESTION OF NON-INFRINGING

10  ALTERNATIVES AND -- I THINK I SHOULD JUST RESERVE RULING ON

11  THIS.  OKAY?

12      MR. MCELHINNY:  YOUR HONOR, THERE IS ONE ON THAT

13  LIST, WHICH IS NUMBERED NEW TRIAL EXHIBIT 10, WHICH IS AN

14  EXHIBIT THAT WAS NOT -- IT'S NEW.  IT WAS NEVER ON ANY EXHIBIT

15  LIST.  IT WAS NEVER OFFERED IN THE FIRST TRIAL.  IT'S AN

16  INTERCEPT NON-INFRINGEMENT VIDEO.

17      THE COURT:  ALL RIGHT.  WELL, IT'S GRANTED AS TO THE

18  NEW TRIAL EXHIBIT 10.

19      MS. MAROULIS:  YOUR HONOR, THE INTERCEPT PRODUCT IS

20  THE PRODUCT THAT APPLE ACCUSED OF INFRINGEMENT AND THEN DROPPED

21  RIGHT BEFORE THE VERDICT, SO WE PUT IT IN AS A NON-INFRINGING

22  ALTERNATIVE AND WOULD APPRECIATE IT IF IT COULD GET IN.

23      MR. MCELHINNY:  THAT'S DIFFERENT THAN CREATING NEW

24  EVIDENCE.  THEY HAD THE INTERCEPT AT TRIAL.  THEY'LL HAVE THE

25  INTERCEPT AT THIS TRIAL.  IT WAS AN EXHIBIT.

1          BUT NOW THEY'RE CREATING NEW VIDEOS FOR THIS CASE.

2          MS. MAROULIS:  IT IS NOT A MISLEADING VIDEO.  IT'S

3  NOT EDITORIALIZED.  IT'S SIMPLY A VIDEO OF HOW THE PRODUCT

4  OPERATES.

5          MR. MCELHINNY:  BUT SOMEBODY IS GOING TO TESTIFY.

6  IT'S GOING TO BE ALL NEW TESTIMONY.

7          THE COURT:  ARE YOU DISPUTING WHETHER THAT WOULD BE A

8  NON-INFRINGING ALTERNATIVE?

9          MR. MCELHINNY:  WE DISPUTE -- WELL, WE DISPUTED IT --

10  BUT AT TRIAL WE'RE GOING TO SAY THAT THE INTERCEPT WOULD NOT BE

11  A COMMERCIALLY ACCEPTABLE ALTERNATIVE --

12          THE COURT:  UNDER THIS NEW RITE-HITE THEORY?

13          MR. MCELHINNY:  NO.  THE INTERCEPT IS THE ONE -- THE

14  INTERCEPT IS THE ONE PHONE THAT ESCAPES THE RITE-HITE THEORY.

15  THE INTERCEPT WAS FOUND NOT TO INFRINGE ANY OF OUR PATENTS.

16          MS. MAROULIS:  YOUR HONOR, INTERCEPT WAS DROPPED

17  BEFORE THE VERDICT.

18          THE COURT:  YEAH, I KNOW.

19          MR. MCELHINNY:  SO REMEMBER, THEY WON THIS MOTION

20  BECAUSE MR. WAGNER SAID THAT ANYTHING, YOU KNOW, THAT DIDN'T

21  INFRINGE COULD HAVE BEEN A NON -- THAT'S PERFECTLY FINE, AND HE

22  CAN SAY THAT AGAIN ABOUT THE INTERCEPT.

23          BUT TO ALLOW THEM TO CREATE NEW EVIDENCE SHOWING WHY IT'S

24  AN ACCEPTABLE NON-INFRINGING PRODUCT, THAT VIOLATES ALL OF YOUR

25  HONOR'S RULES.  WE'RE NOT DOING ANY OF THAT.  WE'RE NOT

1    CREATING NEW EVIDENCE ABOUT WHY THESE THINGS ARE NOT

2    ACCEPTABLE.  WE'RE RELYING ON THE ORIGINAL TRIAL LIST OF

3    EXHIBITS AND TESTIMONY.

4         THE COURT:  WELL, ARE YOU GOING TO ALLOW THEM TO SAY

5    THAT APPLE DISMISSED THE INTERCEPT FROM THE CASE?  HOW ELSE ARE

6    THEY GOING TO PROVE IT'S A NON-INFRINGING ALTERNATIVE OTHER

7    THAN YOUR OWN ADMISSION THAT --

8         MR. MCELHINNY:  WE ARE NOT GOING TO CLAIM THAT IT

9    INFRINGES ONE OF OUR PATENTS.

10        THE COURT:  AND ARE YOU GOING TO OBJECT IF SAMSUNG

11   SAYS THAT APPLE DISMISSED THIS PRODUCT FROM THE CASE?

12        MR. MCELHINNY:  TO THAT WE WOULD OBJECT, OF COURSE,

13   BECAUSE THAT'S NOT RELEVANT.  THE QUESTION IS WHETHER OR NOT --

14   THE QUESTION -- LET'S GO BACK.  THE QUESTION --

15        THE COURT:  OKAY, WAIT.  BUT IF YOU'RE REQUIRING THEM

16   TO PROVE THAT IT'S A NON-INFRINGING ALTERNATIVE, ISN'T IT

17   RELEVANT THAT APPLE THOUGHT THAT THIS WAS NOT AN INFRINGING

18   PRODUCT?  THAT'S NOT RELEVANT?

19        MR. MCELHINNY:  THE REASON YOU'RE ALLOWING THEM TO DO

20   THAT IS BECAUSE THEY HAVE CONVINCED YOU THAT THEY MADE THAT

21   SAME ARGUMENT AT THE FIRST TRIAL.

22        THE COURT:  NO.  YOU DROPPED THE INTERCEPT BEFORE THE

23   FIRST TRIAL.  INTERCEPT WAS NOT ONE OF THE ONES THAT THE JURY

24   FOUND --

25        MR. MCELHINNY:  WELL, THAT'S EVEN WORSE.  I'M SORRY.

1    THAT'S EVEN WORSE.

2              MS. MAROULIS:  IT WAS DROPPED DURING THE TRIAL.

3              THE COURT:  OH, DURING THE TRIAL, EXCUSE ME.

4              MR. MCELHINNY:  BUT THE INTERCEPT PHONE IS IN

5    EVIDENCE, I BELIEVE.

6         THAT WOULD BE WORSE.  IF THEY HAD A PHONE THAT WE HAD

7    DROPPED BEFORE TRIAL AND THEY CHOSE, AT THE FIRST TRIAL, NOT TO

8    ARGUE THAT IT WAS A NON-INFRINGING ALTERNATIVE --

9              THE COURT:  NO.  YOU DROPPED IT DURING THE TRIAL.

10             MR. MCELHINNY:  WELL, BUT, OKAY, AND THEY DIDN'T MAKE

11   THE ARGUMENT.  I -- THAT'S -- THAT'S THE POINT.

12             THE COURT:  WELL, IF THEY HAD MADE THE ARGUMENT

13   DURING THE TRIAL, YOU WOULD HAVE MOVED TO EXCLUDE IT BECAUSE

14   THEN IT WOULD BE A NEW THEORY.

15             MR. MCELHINNY:  OF COURSE.

16             MS. MAROULIS:  YOUR HONOR, WE COULDN'T HAVE --

17             MR. MCELHINNY:  OF COURSE, BECAUSE THAT'S TRUE.

18             MS. MAROULIS:  WE COULDN'T HAVE ASSERTED IT, BECAUSE

19   THEY DROPPED IT AFTER THE NEGOTIATIONS OF THE VERDICT FORM,

20   WHICH WAS AFTER THE EVIDENCE CLOSED.  SO EVEN IF WE COULD HAVE

21   MADE THIS ARGUMENT, WE WERE NO LONGER ABLE TO.

22             MR. MCELHINNY:  YOUR HONOR, THEY -- LET'S TAKE IT

23   BACK.  THEY HAD A DUTY, BEFORE THE FIRST TRIAL, TO LIST ALL OF

24   THEIR THEORIES -- WELL, NO.  THE JURY CAME BACK WITH A VERDICT

25   ON THE INTERCEPT.  I'M HOLDING THE VERDICT.  THE VERDICT SAYS

1    NON-INFRINGING.

2          MS. MAROULIS:  THEY DROPPED IT AS TO THE '381 PATENT,

3    YOUR HONOR.

4          MR. MCELHINNY:  SO IT WAS IN EVIDENCE.  THE PHONE WAS

5    IN EVIDENCE.  THEY COULD HAVE SAID ANYTHING THEY WANTED TO DO

6    IT, AND MR. WAGNER MADE HIS ONE LINE STATEMENT ABOUT

7    NON-INFRINGING PHONES COULD HAVE BEEN ALTERNATIVE.  THEY COULD

8    HAVE ARGUED IT.

9          BUT REALLY, I MEAN, IF YOU'RE GOING TO OPEN THE DOOR TO

10   NEW VIDEOS AND TO NEW TESTIMONY THAT WASN'T PRESENTED, THEN IT

11   HAS TO BE ON BOTH SIDES AND THEN WE'VE -- THEN YOU'VE LET THE

12   CAT OUT OF THE BAG.

13         THE COURT:  WELL, I DO THINK THAT THE INTERCEPT

14   SHOULD BE ALLOWED, SUBJECT TO THE RITE-HITE THEORY, WHICH I

15   HAVEN'T LOOKED INTO --

16         MR. MCELHINNY:  RITE-HITE DOESN'T TOUCH INTERCEPT.

17         THE COURT:  -- IT SHOULD BE A NON-INFRINGING

18   ALTERNATIVE AS '381.  ARE YOU GOING TO DISPUTE THAT?

19         MR. MCELHINNY:  ON THE MERITS.  WE'RE GOING TO

20   DISPUTE THAT ON THE MERITS.

21         THE COURT:  THAT WHAT?  IT ACTUALLY DOES INFRINGE AND

22   YOU --

23         MR. MCELHINNY:  NO, NO.  IF THEY HAVE A WITNESS WHO

24   TESTIFIES AT TRIAL THAT A PERSON WHO COULD NOT HAVE GOTTEN ANY

25   OF THE PHONES THAT ARE AT ISSUE IN OUR CASE WOULD HAVE THEN

1    GONE TO THE INTERCEPT AS OPPOSED TO AN APPLE PHONE, THAT'S

2    GOING TO BE -- LIKE ALL OF THEIR NON-INFRINGING ALTERNATIVE

3    THEORIES, THAT'S GOING TO BE CONTESTED AT TRIAL.

4         MS. MAROULIS:  AND SAMSUNG CONTESTS THAT.

5         MR. MCELHINNY:  LIKE ALL OF THE PHONES, IT'S GOING TO

6    BE BASED ON THE EVIDENCE THAT WAS SUBMITTED IN THE FIRST CASE.

7         BUT IF WE'RE GOING TO HAVE A MINI TRIAL ON THE INTERCEPT,

8    THEN THEY'RE GOING TO HAVE WITNESSES TESTIFYING THAT WE'VE

9    NEVER DEPOSED ON THIS SUBJECT.  WE'RE GOING TO HAVE WITNESSES

10   TESTIFYING.

11        THEY'RE GOING TO HAVE VIDEOS, I GUESS, THAT WE HAVE NOT

12   BEEN ABLE TO TALK TO THE PEOPLE WHO MADE THE VIDEO OR FIND

13   OUT -- WE HAVE NO IDEA WHAT IT'S BEING USED FOR.

14        THE COURT:  ALL RIGHT.  LET'S GO AHEAD AND TAKE A

15   BREAK UNTIL 4:00 O'CLOCK NOW.  IF YOU WOULD, PLEASE, CONFER

16   ABOUT DATES FOR A MEET AND CONFER AND A FILING DATE FOR ANY

17   POTENTIAL AGREEMENTS.

18        MR. MCELHINNY:  THANK YOU, YOUR HONOR.

19        THE COURT:  THANK YOU.

20        MS. MAROULIS:  THANK YOU.

21     (RECESS FROM 3:50 P.M. UNTIL 4:11 P.M.)

22        THE COURT:  OKAY.  PLEASE TAKE A SEAT.

23        MR. LEE:  YOUR HONOR, THE QUESTION YOU POSED TO US

24   RIGHT BEFORE THE RECESS, WE CAN REPORT TO YOU THAT WE'VE AGREED

25   TO A CHAIN TO PROPOSE STIPULATIONS BETWEEN US BY OCTOBER 25TH,

1      TO MEET AND CONFER AND ON OCTOBER 30TH, AND TO REPORT BACK TO

2      YOU BY NOVEMBER THE 1ST.

3              THE COURT:  OKAY.  AND IT CAN'T BE DONE ANY SOONER?

4      BECAUSE IF YOU WANTED ME TO ISSUE RULINGS SOONER THAN THAT,

5      OTHERWISE I CAN SAVE THE RULINGS TO BETWEEN THE 1ST AND THE

6      5TH.  THAT WOULD STILL GIVE YOU THE RULINGS, WHAT, A WEEK

7      BEFORE TRIAL.

8          I MEAN, I MAY -- YOU KNOW, TO THE EXTENT I'M ABLE, WE'LL

9      ISSUE THE RULINGS AS SOON AS WE CAN.  BUT IN CASE WE'RE NOT

10     ABLE TO DO ALL OF THEM --

11             MR. LEE:  I THINK WE ALL THOUGHT, COLLECTIVELY, THAT

12     THAT ALLOWS US TIME TO MAKE A MEANINGFUL EFFORT TO COME UP WITH

13     SOMETHING THAT WE EACH MIGHT SELL TO THE OTHER AND MEET AND

14     CONFER AND REPORT BACK TO YOU TWO DAYS LATER.

15             THE COURT:  OKAY.  THAT'S FINE.  OKAY.  BUT YOU CAN'T

16     DO IT BEFORE THE 25TH?  IF IT'S NOT POSSIBLE, IT'S NOT

17     POSSIBLE.

18         (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

19             MR. LEE:  WHY DON'T WE TALK AFTER COURT AND IF WE CAN

20     MOVE IT UP EARLIER, WE'LL REPORT BACK.  IS THAT OKAY?

21             THE COURT:  OKAY.  THAT'S FINE.

22         ALL RIGHT.  SO LET'S KEEP GOING.  I'M NOT GOING TO BE ABLE

23     TO GIVE YOU ALL THE RULINGS TODAY.  I'LL JUST GO AS FAR AS I

24     CAN TODAY.  OKAY?

25             WITH REGARD TO THE NEW TRIAL EXHIBIT 10, I WILL GRANT

1    APPLE'S MOTION TO EXCLUDE.  OBVIOUSLY THEY'LL -- YOU'LL HAVE

2    THE ELMO, SO IF YOU WANT TO JUST DEMONSTRATE IT ON AN ACTUAL

3    PHONE, YOU CAN DO THAT.

4         MS. KREVANS:  YOUR HONOR, MAY I JUST ASK A QUESTION

5    THAT I THINK MIGHT HELP BOTH PARTIES IN TERMS OF TRIAL

6    PLANNING?

7         AT THE LAST TRIAL, THERE WERE VIDEOS OFFERED BY BOTH

8    PARTIES OF VARIOUS DEVICES AND SOME WERE OFFERED JUST AS

9    DEMONSTRATIVES THAT WERE SHOWN TO THE JURY, SOME WERE OFFERED

10   AS EXHIBITS THAT WERE FIRST ADMITTED, AND THEN ULTIMATELY THE

11   COURT DECIDED TO EXCLUDE ALL VIDEOS THAT WERE MADE FOR PURPOSES

12   OF LITIGATION AND TREAT THEM JUST AS DEMONSTRATIVES.

13        THE COURT:  UM-HUM.

14        MS. KREVANS:  AND WE WOULD SUBMIT THAT -- WE HAD

15   REASONS TO SAY THAT EXHIBIT 10 SHOULDN'T BE SHOWN AT ALL

16   BECAUSE WE DON'T KNOW WHERE IT CAME FROM AND IT'S REALLY BRAND

17   NEW.

18        BUT AS TO THE OTHER VIDEOS, I THINK IT WOULD BE HELPFUL

19   TO BOTH SIDES TO KNOW, IS THE COURT GOING TO TREAT THEM THE WAY

20   IT DID IN THE FIRST TRIAL?  IN OTHER WORDS, IF THEY'RE PROPER,

21   THEY'RE PROPER.  IF NOT, THEY CAN BE SHOWN, BUT THEY WILL NOT

22   BE ADMITTED INTO EVIDENCE?

23        THE COURT:  YES.

24        MS. KREVANS:  OKAY.  SO THAT WE THINK WOULD ALSO

25   APPLY TO PDX 29 AND 750, 751?

1          MR. SABRI:  751.

2          MS. KREVANS:  751.  THE OTHER ONE, WHICH WAS NOT

3    ADMITTED AT THE FIRST TRIAL EITHER, CONSISTENT WITH --

4          MS. MAROULIS:  IT WAS OFFERED BY APPLE AS AN EXHIBIT.

5          MS. KREVANS:  PDX 29 WAS OFFERED BY APPLE BUT WAS NOT

6    ADMITTED ULTIMATELY, ACCORDING TO THE RULE THE COURT SET, THAT

7    VIDEOS MADE FOR PURPOSES OF LITIGATION WOULD BE DEMONSTRATIVES

8    ONLY.

9         SO I THINK IT WOULD BE HELPFUL TO BOTH SIDES TO JUST KNOW

10   EXACTLY, IS THAT GOING TO BE THE RULE AGAIN FOR THIS TRIAL?

11         MS. MAROULIS:  YOUR HONOR, PDX 29 WAS ON APPLE'S

12   EXHIBIT LIST AND WE WANTED TO USE IT FOR THIS TRIAL AND WE

13   RESPECTFULLY REQUEST THAT WE USE IT AS AN EXHIBIT, NOT A

14   DEMONSTRATIVE.

15         MS. KREVANS:  THIS IS EXACTLY A VIDEO, YOUR HONOR,

16   THAT WAS BEFORE EXCLUDED AND USED -- AND THE COURT RULED

17   DEMONSTRATIVE ONLY.  WE HAVE OTHER REASONS TO OBJECT TO IT, BUT

18   CERTAINLY PER THE COURT'S RULING IN THE FIRST TRIAL, NOT

19   EVIDENCE.

20         THE COURT:  WHAT IS THIS BEING OFFERED FOR?  BECAUSE

21   IT WAS OFFERED FOR INFRINGEMENT LAST TIME.

22         MS. KREVANS:  I HAVE NO IDEA WHAT THEY'RE OFFERING IT

23   FOR THIS TIME.

24         MS. MAROULIS:  LAST TIME IT WAS OFFERED FOR

25   INFRINGEMENT.  THIS TIME IT'S A NON-INFRINGING ALTERNATIVE.

1          THE COURT:  IS THIS THE INTERCEPT?

2          MS. MAROULIS:  I DON'T KNOW EXACTLY THE PHONES.  IT'S

3     SEVERAL DIFFERENT PHONES, BUT I CANNOT NAME THEM RIGHT NOW,

4     YOUR HONOR.

5          THE COURT:  OKAY.  WELL, ALL VIDEOS WILL BE TREATED

6     AS DEMONSTRATIVES AND NOT ADMITTED.

7          MR. ALDEN:  YOUR HONOR, WE WOULD RESPECTFULLY REQUEST

8     THAT IF WE CAN LAY A FOUNDATION FOR ADMITTING THE EXHIBIT AT

9     THE NEW TRIAL, THAT WE SHOULD BE PERMITTED TO DO THAT.  THERE'S

10    NO OBJECTION ON THE BASIS OF FAILURE TO DISCLOSE.  IT WAS AN

11    APPLE DEMONSTRATIVE, AND IF WE, FOR EXAMPLE, WISH TO USE IT AND

12    CROSS-EXAMINE EITHER DR. SINGH ABOUT THAT, THEN WE WOULD

13    REQUEST THE OPPORTUNITY TO BE --

14         THE COURT:  HOW MANY RECONSIDERATIONS IS SAMSUNG

15    GOING TO ASK FOR TODAY?  I'M TRYING TO GET YOU RULINGS ON AS

16    MANY MOTIONS AS YOU CAN, BUT IF YOU'RE GOING TO KEEP ASKING FOR

17    RECONSIDERATION AFTER I GIVE YOU A RULING, WE WILL BE HERE

18    UNTIL MIDNIGHT.  I HAVE A LIST OF, LIKE, SEVEN MORE PAGES TO

19    GO.

20         MR. ALDEN:  THAT'S FINE.

21         THE COURT:  THAT'S WHY I'M STARTING TO FEEL

22    FRUSTRATED, BECAUSE I'M GIVING YOU A RULING, I'M GIVING YOU A

23    REASON AS BEST AS I CAN AND YOU'RE CONTINUING TO FIGHT ME.  SO

24    IF YOU WANT TO JUST RIGHT NOW DO RECONSIDERATIONS ON

25    EVERYTHING, LET'S STOP AND DO IT RIGHT NOW.  GO AHEAD.

1          MR. ALDEN:  THAT'S FINE.

2          THE COURT:  HOW MANY ARE YOU GOING TO DO?

3          MR. ALDEN:  NONE.  I'M GOING TO SIT DOWN.

4          THE COURT:  THANK YOU.  THANK YOU.  I'M DOING THE

5     BEST I CAN.  YOU HAVE BOTH FILED A LOT OF THINGS, OKAY?  SO WE

6     NEED TO GET THROUGH IT.  PLEASE.  WORK WITH ME HERE.

7          ALL RIGHT.  SO THE MOTION TO EXCLUDE WILL BE DENIED AS TO

8     PDX 29.

9          IT'S GOING TO BE GRANTED AS TO NEW EXHIBIT 10.

10         NOW, DX 751, YOU'RE SAYING THAT IS AN EXHIBIT THAT SAMSUNG

11    WOULD LIKE TO INTRODUCE NOW AND IT WAS SHOWN BY APPLE LAST

12    TIME?  IS THAT CORRECT?

13         MS. KREVANS:  THAT WAS NOT SHOWN BY APPLE LAST TIME,

14    YOUR HONOR.  NOT ADMITTED.

15         THE COURT:  IT'S WHAT?

16         MS. MAROULIS:  YOUR HONOR, WE APOLOGIZE.  WE JUST

17    NEED A MINUTE TO CHECK WHETHER IT WAS ADMITTED OR NOT.

18         MS. KREVANS:  IT WAS NOT ADMITTED, YOUR HONOR.  IT

19    WAS A SAMSUNG EXHIBIT, SO THEY WOULD HAVE TO SAY WHAT THEY PLAN

20    TO USE IT FOR THIS TIME.

21         THE COURT:  YOU WANT TO USE IT AS A NON-INFRINGING

22    ALTERNATIVE?  IS THAT CORRECT?

23         MS. MAROULIS:  YES, YOUR HONOR.

24         MS. KREVANS:  YOUR HONOR, IT'S HARD FOR ME TO

25    UNDERSTAND HOW THIS COULD BE A NON-INFRINGING ALTERNATIVE

1    EXHIBIT.  IT'S A VIDEO.  IT WAS EXCLUDED BEFORE.  IT SHOWS A

2    FEATURE IN A NUMBER OF SAMSUNG PRODUCTS THAT, ACCORDING TO

3    SAMSUNG'S ARGUMENT IN THE TRIAL FIRST, MEANT THAT THOSE

4    PRODUCTS DID NOT INFRINGE THE '381 PATENT.

5         THE JURY FOUND THAT ALL THE PRODUCTS THAT WERE ACCUSED OF

6    THE '381 INFRINGED IT, THESE PRODUCTS.  SO I DON'T UNDERSTAND

7    WHAT THIS COULD EVEN PROVE.  THIS IS AN ATTEMPT TO ARGUE

8    NON-INFRINGEMENT AGAIN.

9         THE COURT:  AND ECF NUMBER 1695, AT PAGE 1791, LINE

10   14 THROUGH 1793, LINE 1 IS NOT AN ADMISSION FROM APPLE THAT THE

11   FEATURES OF THE VIDEO DON'T INFRINGE THE '381.

12        SO I'M GOING TO GRANT THE MOTION AS TO DX 751 AND THE NEW

13   TRIAL EXHIBIT 10, BUT DENY THE MOTION AS TO PDX 29.  OKAY?

14        MS. KREVANS:  THANK YOU, YOUR HONOR.

15        THE COURT:  OKAY.  WITH REGARD TO THE INDEPENDENT

16   DEVELOPMENT, I REALLY NEED TO -- IF IT'S FOR THE PURPOSE OF

17   REBUTTAL AS TO COPYING EVIDENCE, THEN I REALLY NEED TO SEE WHAT

18   APPLE'S CASE-IN-CHIEF IS, AND THIS REALLY IS MORE

19   APPROPRIATELY, I THINK, DECIDED ON A DOCUMENT-BY-DOCUMENT BASIS

20   ONCE I'VE SEEN THE CASE-IN-CHIEF.

21        BUT AS FAR AS DX 680, WHICH WAS NOT ON THE FINAL EXHIBIT

22   LIST IN THE FIRST TRIAL, IT IS GRANTED.  THE MOTION TO EXCLUDE

23   IS GRANTED.

24        BUT AS FAR AS COPYING REBUTTAL EVIDENCE, I'M GOING TO

25   DECIDE THIS ON A DOCUMENT-BY-DOCUMENT BASIS DURING THE TRIAL.

1          MR. LEE:  AND CAN I JUST ASK ONE QUESTION, YOUR

2    HONOR --

3          THE COURT:  YES.

4          MR. LEE:  -- SO THAT WHEN WE MAKE OUR OBJECTIONS,

5    WE'RE WORKING WITH THE COURT TO MAKE SURE WE'RE NOT WASTING

6    TIME?

7          THE RULINGS THAT THE COURT MADE DURING THE FIRST TRIAL

8    EXCLUDING EVIDENCE, SOME OF THIS WAS OFFERED BEFORE AS EVIDENCE

9    OF INDEPENDENT DEVELOPMENT, AND THOSE ARE GOOD OBJECTIONS

10   AGAIN, RIGHT?

11         TO THE EXTENT YOU EXCLUDED IT THE FIRST TIME WHEN IT WAS

12   OFFERED AS INDEPENDENT DEVELOPMENT EVIDENCE, AND TO THE EXTENT

13   IT'S OFFERED AGAIN AS INDEPENDENT DEVELOPMENT EVIDENCE, IT

14   SHOULD BE EXCLUDED IF IT WAS EXCLUDED THE LAST TIME?

15         THE COURT:  YES.  THAT'S FINE.

16         MR. LEE:  ALL RIGHT.

17         THE COURT:  BUT IF THERE ARE -- I'M LOOKING AT

18   DX 526.  IT WAS ADMITTED FOR ALTERNATIVE DESIGNS AND

19   FUNCTIONALITY, BUT NOT FOR INDEPENDENT DEVELOPMENT.

20         MR. LEE:  THAT'S EXACTLY WHAT I'M THINKING ABOUT.

21         THE COURT:  SO I WOULD THINK THAT THAT WOULD BE

22   ADMITTED FOR ALTERNATIVE DESIGNS.

23         MR. LEE:  BUT NOT INDEPENDENT DEVELOPMENT?

24         THE COURT:  NOT INDEPENDENT DEVELOPMENT.  BUT IT

25   WOULD BE COMING IN, EVEN IF IT'S FOR A LIMITED PURPOSE.

1        SO 680, WELL, THAT WASN'T ON THE FINAL LIST, SO THAT'S

2    OUT.

3        I DON'T KNOW HOW 682 AND 683, SKETCH BOOKS, HOW THEY'RE --

4    THEY DON'T SEEM TO BE RELEVANT TO DAMAGES.

5            MS. MAROULIS:  YOUR HONOR, THIS IS AGAIN SAMSUNG'S

6    REBUTTAL OF APPLE'S COPYING CASE BECAUSE FROM THEIR PROFFERS,

7    THEY'RE GOING TO PUT A LOT OF, A LOT OF TIME INTO THE COPYING

8    ALLEGATIONS.  WE SHOULD BE ABLE TO PROVE THE ABSENCE OF COPYING

9    AND THE WAY THESE PEOPLE DESIGNED THE PHONES.  SO THAT'S THE

10   REASON.

11           THE COURT:  WERE 682 AND 683 ADMITTED LAST TIME?

12           MR. LEE:  THEY WERE NOT.  THEY WERE NEITHER OFFERED,

13   NOR ADMITTED.

14       AND RECOGNIZING --

15           MS. MAROULIS:  THEY WERE ON THE EXHIBIT LIST.  I

16   DON'T BELIEVE THEY WERE ADMITTED, YOUR HONOR.

17           THE COURT:  OKAY.  ALL RIGHT.

18           MR. LEE:  AND YOUR HONOR, IF I COULD JUST OFFER ONE

19   THOUGHT TO MOVE IT ALONG?

20           THE COURT:  WHAT'S THAT?

21           MR. LEE:  IT IS THIS:  EVIDENCE, WHETHER YOU WANT TO

22   CALL IT COPYING OR WHATEVER, BUT EVIDENCE OF EMULATING THE

23   PATENTED FEATURE IS EVIDENCE OF DEMAND FOR THE PATENTED FEATURE

24   IN THE PRODUCT.

25           EVIDENCE OF INDEPENDENT DEVELOPMENT IS NOT EVIDENCE OF THE

1        LACK OF DEMAND.  THE ISSUE IS DEMAND NOW.

2             IF SAMSUNG SAW THE FEATURE AND SENT SOMEONE OFF TO A ROOM

3        AND SAID, "DESIGN IT," AND THEY INDEPENDENTLY DEVELOPED IT,

4        THAT DOESN'T SHOW THE ABSENCE OF DEMAND.

5             SO THIS ACTUALLY, TO TAKE MR. PRICE'S CORRECT

6        CHARACTERIZATION, IT'S A DIFFERENT SET OF ISSUES THIS TIME AND

7        IT'S TRUE, AND IN FACT, THE APPLE I DECISION FROM THE FEDERAL

8        CIRCUIT SAID THAT WHILE NOT DISPOSITIVE EVIDENCE OF COPYING, IT

9        IS EVIDENCE OF DEMAND.  INDEPENDENT DEVELOPMENT DOESN'T PROVE

10       THE NEGATIVE.

11            THE COURT:  WELL, THIS IS MY ONLY CONCERN.

12       MR. MCELHINNY JUST GOT UP TODAY AND SAID, "OH, NO, COPYING IS

13       RELEVANT TO DEMAND."  SO WHY CAN'T THEY REBUT COPYING?

14            MR. LEE:  YOUR HONOR, THEY CAN REBUT COPYING IF

15       THAT'S THE WAY THE EVIDENCE WERE TO COME IN.

16            THE COURT:  AND ISN'T INDEPENDENT DEVELOPMENT A

17       REBUTTAL OF COPYING?

18            MR. LEE:  NOT IN THE WAY THAT THEY'RE THINKING OF

19       WITH THIS F700 AND OTHERS, NO.

20            BUT MAYBE, YOUR HONOR, AS YOU SAID, WE DEAL WITH IT

21       DOCUMENT-BY-DOCUMENT, WITNESS-BY-WITNESS.  A LOT OF THIS IS

22       GOING TO BE EXCLUDED BECAUSE IT WAS EXCLUDED LAST TIME BECAUSE

23       IT HADN'T BEEN DISCLOSED, IT HADN'T BEEN IDENTIFIED AS

24       INDEPENDENT DEVELOPMENT EVIDENCE.

25            I JUST WANT TO MAKE SURE THAT WE CAN MAKE THOSE

1    OBJECTIONS AGAIN.  IF YOUR HONOR EXCLUDED IT LAST TIME, IT

2    OUGHT TO BE EXCLUDED THIS TIME.

3            THE COURT:  AND F700, WHY IS THAT NOT INDEPENDENT

4    DEVELOPMENT?

5            MR. LEE:  BECAUSE YOUR HONOR EXCLUDED IT BECAUSE THEY

6    HADN'T DISCLOSED IT FOR THAT PURPOSE LAST TIME.  IN FACT, YOUR

7    HONOR EXPLICITLY SAID AT DOCKET NUMBER 1690, I THINK AT PAGE 9,

8    THAT SAMSUNG COULD NOT OFFER TESTIMONY CONCERNING THE F700 TO

9    REBUT ALLEGATIONS OF COPYING.

10       THAT'S ACTUALLY -- THAT'S THE REASON I'M RAISING THE

11   ISSUE --

12           THE COURT:  UM-HUM.

13           MR. LEE:  -- WHICH IS YOU MADE A SERIES OF RULINGS

14   THAT EVIDENCE COULDN'T COME IN BECAUSE DISCLOSURES HADN'T BEEN

15   MADE ON THE ISSUE OF COPYING.

16       IF IT WAS NOT ADMISSIBLE THE FIRST TIME TO REBUT COPYING

17   BECAUSE THEY HADN'T COMPLIED WITH THE DISCLOSURES EITHER OF

18   WITNESSES OR EXHIBITS, IT SHOULDN'T COME IN THIS TIME AS

19   REBUTTAL ON THE SAME ISSUE.

20           THE COURT:  SO IN THE FINAL EXHIBIT LIST, WHICH I

21   THINK IS, WHAT, 1898 THAT WE DISCUSSED LAST WEEK, THERE WERE

22   LIMITATIONS ON THE PURPOSE FOR WHICH EVIDENCE WAS ADMITTED, AND

23   THAT WAS ACTUALLY ON THE EXHIBIT LIST.

24       THOSE SAME LIMITATIONS WOULD APPLY IN THIS TRIAL.

25       SO WE CAN JUST RELY ON THAT EXHIBIT LIST FOR WHAT THOSE

1  LIMITATIONS WERE.

2        MR. LEE:  OKAY.

3        MS. KREVANS:  AND, YOUR HONOR, IF I MAY JUST HELP

4  MR. LEE HERE FOR A MOMENT, BECAUSE THIS WAS AN ISSUE THAT I WAS

5  RESPONSIBLE FOR AT THE FIRST TRIAL.

6        PART OF THE REASON THAT THIS EVIDENCE GOT EXCLUDED THE

7  LAST TIME IS BECAUSE WHEN SAMSUNG SAID IT WAS BEING OFFERED FOR

8  INDEPENDENT DEVELOPMENT, NOT ONLY HAD IT NOT BEEN PROPERLY

9  DISCLOSED, BUT IN FACT, WE SHOWED YOUR HONOR, AND YOU AGREED,

10  THAT THIS HAS NOTHING TO DO WITH THE ACTUAL DESIGNS OF THE

11  ACCUSED PRODUCTS.

12        THE F700 IS A COMPLETELY DIFFERENT PRODUCT.  IT'S NOT

13  ACCUSED IN THIS CASE OF ANYTHING, AND THERE'S NO EVIDENCE TYING

14  THE DESIGN OF THE ACTUAL ACCUSED PRODUCTS TO THE F700.

15        IN FACT, THE DEPOSITION TESTIMONY OF SAMSUNG DESIGNERS,

16  WHO ACTUALLY DESIGNED THE ACCUSED PRODUCTS, WAS THEY DIDN'T USE

17  THE F700 DESIGN FOR REFERENCE IN ANY WAY, SO IT WAS ACTUALLY

18  COMPLETELY IRRELEVANT AND THAT'S PART OF WHY YOUR HONOR

19  EXCLUDED IT.  IT HAD NOTHING TO DO WITH THE DEVELOPMENT OF THE

20  ACCUSED PRODUCTS.

21        THE COURT:  WELL, THEN WE GET INTO THAT SAME ISSUE

22  WITH THE CRISIS OF DESIGN DOCUMENTS, RIGHT?  THOSE ARE

23  PRECURSOR PRODUCTS TO ANY OF THE PRODUCTS THAT ARE AT ISSUE IN

24  THIS CASE, AND MOST OF THAT LANGUAGE IS NOT SPECIFIC TO THE

25  PATENTED FEATURES.

1        SO THAT'S GOING TO BE SORT OF --

2            MR. LEE:  ACTUALLY --

3            THE COURT:  -- A DOUBLE-EDGED SWORD.  TO THE EXTENT

4    THAT YOU CAN SHOW THAT A PATENTED FEATURE WAS INCORPORATED IN A

5    PREDECESSOR PRODUCT AND, AS A LEGACY FEATURE, IT KEPT GETTING

6    INCLUDED IN PRODUCTS THAT ARE NOW ACCUSED, THAT'S ONE THING.

7        BUT IF IT'S TALKING ABOUT GENERIC FEATURES OF PREDECESSOR

8    PRODUCTS, I THINK THAT ARGUMENT EQUALLY APPLIES TO BOTH SIDES.

9            MS. KREVANS:  BUT YOUR HONOR, WITH RESPECT, THE

10   CRISIS OF DESIGN DOCUMENT IS QUITE DIFFERENT BECAUSE AT THE

11   LAST TRIAL, WE DID TIE THAT DOCUMENT AND SAMSUNG'S REACTION TO

12   THAT DIRECTIVE --

13           THE COURT:  UM-HUM.

14           MS. KREVANS:  -- TO A DESIGN EFFORT THAT DIRECTLY LED

15   TO THE FIRST ACCUSED PRODUCT, WHICH WAS THE FIRST IN A LINE

16   THAT THE ACCUSED PRODUCTS ALL WERE DERIVATIVE OF.

17       THE F700 IS A COMPLETELY DIFFERENT PRODUCT.  IT HAS

18   NOTHING TO DO WITH THESE.  YOUR HONOR MAY REMEMBER, FROM THE

19   FRONT, SAMSUNG TRIED TO SUGGEST THAT IT LOOKED A LITTLE BIT

20   LIKE SOME OF THE ACCUSED PRODUCTS, BUT IT'S ACTUALLY A SLIDER

21   PHONE WITH A KEYBOARD THAT SLIDES OUT.  COMPLETELY DIFFERENT.

22   IT JUST HAS NOTHING TO DO WITH THESE PRODUCTS, WHEREAS THE

23   CRISIS OF DESIGN DOCUMENT IS A DOCUMENT THAT IS DIRECTLY LINKED

24   TO THE DESIGN, THE DESIGN DIRECTIVE THAT CAME DOWN FROM THE TOP

25   AT SAMSUNG, "GO MAKE SOMETHING LIKE THE IPHONE," THAT LED TO A

1    WHOLE SERIES OF THE ACCUSED PRODUCTS.

2            MS. MAROULIS:  YOUR HONOR --

3            THE COURT:  WELL, I THINK WHEN YOU FILE YOUR

4    OBJECTIONS TO SPECIFIC DOCUMENTS, YOU'RE GOING TO HAVE TO LAY

5    THAT OUT.  IF IT'S A SAMSUNG INTERNAL DOCUMENT THAT APPLE IS

6    SEEKING TO HAVE ADMITTED, YOU'RE GOING TO HAVE TO LAY OUT HOW

7    THAT SOMEHOW TIES TO THE SPECIFIC PATENTED FEATURES IN THE

8    ACCUSED PRODUCTS THAT ARE IN THIS CASE.  YOU'RE GOING TO HAVE

9    TO JUST DRAW THAT CONNECTION.

10           AND SAME THING GOES FOR SAMSUNG.  IF THEY WANT TO SAY THAT

11   SOME PREDECESSOR PRODUCT IS EVIDENCE THAT A PATENTED FEATURE

12   WAS NOT COPIED, THEY'RE GOING TO HAVE TO LAY OUT THAT LINEAGE

13   OF THAT PRODUCT TO ESTABLISH THAT.

14           MS. KREVANS:  THANK YOU, YOUR HONOR.  THAT'S ALL

15   WE'RE ASKING FOR.

16           THE COURT:  OKAY.  BUT OTHERWISE I THINK THIS IS --

17   I'M GRANTING IT AS TO DX 680, BUT I THINK THIS IS BEST TO BE

18   DECIDED ON A DOCUMENT-BY-DOCUMENT BASIS FOR EXACTLY THE REASONS

19   YOU ALL ARE STATING.  THERE'S QUITE A BIT OF COMPLICATED

20   HISTORY THAT'S UNIQUE TO EACH DOCUMENT, EACH PRODUCT, AND DOING

21   A BLANKET RULING I THINK WOULD BE OVERINCLUSIVE AND

22   UNDERINCLUSIVE.

23           OKAY.  ON THE ACTUAL NOTICE DATE, YOU KNOW, LAST WEEK I

24   ASKED YOU SPECIFICALLY, MS. MAROULIS, WAS THE INFUSE 4G PART OF

25   THE GALAXY FAMILY, AND YOU SAID YES.  SO I WAS A LITTLE BIT

1    SURPRISED BY YOUR FILING.  WHAT HAS CHANGED BETWEEN

2    OCTOBER 10TH AND YOUR FILING WHERE INFUSE 4G IS NO LONGER A

3    GALAXY PHONE?

4              MS. MAROULIS:  YOUR HONOR, I WAS INCORRECT, AND

5    MR. ALDEN IS GOING TO SET THE RECORD STRAIGHT.

6              THE COURT:  OKAY.  WELL, WHAT IS YOUR RESPONSE TO

7    EXHIBIT 1 TO THE DECLARATION OF NATHAN SABRI, WHICH IS THE

8    SAMSUNG WEBSITE SAYING THAT THE INFUSE 4G IS GALAXY S?

9              MR. ALDEN:  YOUR HONOR, EXHIBIT 1 TO MR. SABRI'S

10   DECLARATION IS ACTUALLY A CANADIAN WEBSITE.  IT'S NOT A U.S.

11   WEBSITE.  THE U.S. WEBSITE DOES NOT, IN FACT, REFER TO THE

12   INFUSE 4G AS A GALAXY PRODUCT.

13             THE COURT:  OH, OKAY.  SO IS THIS FALSE?

14             MR. ALDEN:  IS IT FALSE?

15             THE COURT:  WHY ARE YOU REPRESENTING THAT THIS IS A

16   GALAXY PHONE IN CANADA?  IS THAT A FALSE STATEMENT?  IS THAT A

17   FALSE REPRESENTATION?  SHOULD WE TELL THE PLAINTIFF'S CONSUMER

18   CLASS ACTION LAWYERS THAT THIS IS A FALSE STATEMENT THAT YOU'RE

19   MAKING ON THE RECORD?

20             MR. ALDEN:  NO, YOUR HONOR.  THE DESIGNATION OF

21   WHETHER A PHONE IS GALAXY IS CARRIER DRIVEN.  SO IN THE

22   UNITED STATES, THE MARKET IS CARRIER DRIVEN.

23             THE COURT:  OKAY.

24             MR. ALDEN:  IN CANADA, IT IS NOT.

25             AND SO REALLY WHETHER A PHONE WAS CONSIDERED A GALAXY

```
1        PHONE OR NOT IN THE UNITED STATES, UP UNTIL ABOUT THE RELEASE

2        OF THE GALAXY S III, WAS DETERMINED BY WHAT THE CARRIER WANTED

3        TO DO.

4              THE COURT:  OKAY.

5              MR. ALDEN:  AND IN THE UNITED STATES, FOR THE

6        INFUSE 4G, THE CARRIER DID NOT WANT TO LABEL IT A GALAXY PHONE,

7        WHEREAS IN CANADA, WHERE THERE IS NO -- WHERE THERE IS NO

8        MARKET, CARRIER SPECIFIC MARKET, IT WAS LABELED A GALAXY PHONE.

9           SO REALLY THE MARKETING NAME FOR THE PRODUCT DETERMINES --

10       IN THE UNITED STATES DEPENDS ON THE CARRIER UP UNTIL ABOUT THE

11       S III.

12             THE COURT:  OKAY.  SO WHERE U.S. CELLULAR, A CARRIER,

13       WANTS TO CALL THE DROID CHARGE A SAMSUNG GALAXY S AVIATOR, DOES

14       THAT MEAN THAT IT IS PART OF THE GALAXY FAMILY BECAUSE THE

15       CARRIER WANTS IT TO BE?

16             MR. ALDEN:  SO --

17             THE COURT:  I'M LOOKING AT EXHIBIT 2 TO THE SAME

18       DECLARATION.  SO THIS SAYS "U.S. CELLULAR HAS ANNOUNCED

19       AVAILABILITY OF THE FIRST 4G LTE HANDSET, THE SAMSUNG GALAXY S

20       AVIATOR."

21             MR. ALDEN:  SORRY, YOUR HONOR.  I'M JUST PULLING UP

22       THE DECLARATION.

23             THE COURT:  UM-HUM.

24             MR. ALDEN:  SO YES, YOUR HONOR, THE DROID CHARGE IS A

25       SPECIFIC NAME ON A CERTAIN CARRIER.
```

1          THE COURT:  UM-HUM.

2          MR. ALDEN:  ON A DIFFERENT CARRIER, IT WAS CALLED THE

3     GALAXY S AVIATOR, THAT IS CORRECT.

4          THE COURT:  SO THEN THE DROID CHARGE IS PART OF THE

5     GALAXY FAMILY?

6          MR. ALDEN:  WELL, AGAIN, YOUR HONOR, THE -- THERE

7     IS -- IN A SENSE, THE GALAXY FAMILY IS DEFINED JUST BY WHAT THE

8     CARRIERS WANT TO CALL THE PRODUCT.

9          THERE'S NO INTRINSIC CHARACTERISTIC ABOUT THE PRODUCT

10    THAT MAKES IT A GALAXY FAMILY PRODUCT OR NOT.  IT'S JUST

11    WHETHER THE -- UP UNTIL THE S III, IT WAS WHETHER THE CARRIER

12    WANTED TO CALL IT A GALAXY PHONE OR NOT.

13         SO IN THE CASE OF THE DROID CHARGE, THE CARRIER DID NOT

14    WANT TO CALL IT A GALAXY PHONE, WHEREAS IN THE CASE OF THE

15    GALAXY S AVIATOR, THE CARRIER DID WANT TO CALL IT A GALAXY

16    PHONE.  I HOPE THAT PROVIDES HELP.

17         THE COURT:  ALL RIGHT.  SO TELL ME WITH EXHIBIT 1,

18    WHO'S THE CARRIER HERE?

19         MR. ALDEN:  SO IN TERMS OF EXHIBIT 1, THAT IS THE

20    CANADIAN VERSION OF THE INFUSE, AND I DON'T BELIEVE -- I DON'T

21    BELIEVE THERE IS A CARRIER DRIVEN MARKET IN -- OR A CARRIER

22    BASED MARKET IN CANADA.

23         THE COURT:  UM-HUM.

24         MR. ALDEN:  SO IT WOULD NOT BE DEPENDENT ON WHO THE

25    CARRIER IS.  IN TERMS OF THE --

1        THE COURT:  WAIT.  YOU JUST DID A COMPLETE REVERSAL.

2   YOU JUST SAID IT'S THE CARRIER WHO DEFINES AN INFUSE 4G AS A

3   GALAXY S, AND NOW YOU'RE SAYING, NO, IN CANADA, THAT'S NOT THE

4   CASE.

5        MR. ALDEN:  NO.  I'M SAYING IN CANADA, IT IS NOT --

6   THE MARKET IS NOT DRIVEN BY CARRIERS.

7        THE COURT:  UM-HUM.

8        MR. ALDEN:  AND SO THE -- THE NAME OF THE PHONE DOES

9   NOT DEPEND, IN CANADA, ON THE CARRIER, WHEREAS IN THE

10  UNITED STATES, IT DOES DEPEND ON THE CARRIER.

11     SO YOU -- THE COURT --

12       THE COURT:  OKAY.  SO THIS IS SAMSUNG, ON

13  WWW.SAMSUNG.COM, CALLING AN INFUSE 4G A GALAXY S PHONE AND NOT

14  AT THE BEHEST OF A CARRIER.

15       MR. ALDEN:  IN CANADA, CORRECT, YOUR HONOR, YES.

16       THE COURT:  MR. LEE, DO YOU WANT TO COMMENT?

17       MR. LEE:  I WOULD SAY THESE TWO THINGS, YOUR HONOR.

18     YOU HAVE BEFORE YOU THE FACT THAT SAMSUNG CALLED IT A

19  GALAXY PHONE.  AT DOCKET NUMBER 2541, EXHIBIT 3, YOU WILL FIND

20  THE TESTIMONY OF A SAMSUNG DESIGNER CALLING THE INFUSE 4G A

21  DERIVATIVE DESIGN OF THE GALAXY S II, AND YOU HAVE

22  MS. MAROULIS'S COMMENT LAST WEEK, ALL OF WHICH ARE TRUE.

23     AND THE SECOND POINT IS THIS, YOUR HONOR:  WE'RE MEASURING

24  THIS DISCLOSURE AGAINST THE REQUIREMENT OF FUNAI AND WHAT THE

25  FEDERAL CIRCUIT HAS SAID, WHICH IS IF YOU'VE GIVEN A CHARGE AS

1    TO SPECIFIC PATENTS, OF SPECIFIC PRODUCTS BY SPECIFIC PATENTS,

2    THAT'S GOOD ENOUGH FOR ENSUING OTHER MODELS THAT HAVE THE SAME

3    FEATURE.

4         AND IN FACT, IN FUNAI, YOUR HONOR, YOU'LL FIND IT WASN'T

5    EVEN A COMPLAINT.  IT WAS A DEMAND LETTER THAT SAID, "HERE ARE

6    THE PATENTS, HERE ARE THE PRODUCTS," AND THE FEDERAL CIRCUIT

7    EXPLICITLY HELD, JUST THREE YEARS AGO, THAT'S GOOD ENOUGH FOR

8    SUBSEQUENT MODELS THAT HAVE THE SAME FEATURE.

9         SO THIS IS -- I MEAN, SAMSUNG'S COUNSEL HAS CALLED IT A

10   GALAXY; SAMSUNG'S ENGINEERS HAVE CALLED IT A GALAXY; SAMSUNG

11   HAS CALLED IT A GALAXY.

12        THE IDEA THAT THE CHARGE IN THE ORIGINAL COMPLAINT IN THE

13   GALAXY FAMILY WOULDN'T COVER THIS IS HARD TO BELIEVE.

14            THE COURT:  BUT YOU DON'T HAVE ANY TESTIMONY AS TO

15    THE DROID CHARGE?

16            MR. LEE:  AS TO THE DROID CHARGE, YOUR HONOR, ALL WE

17    HAVE IS THE NEWS REPORT AND THE WEBSITE THAT SAYS IT'S BEEN

18    BRANDED AS A GALAXY PHONE, WHICH IS AT DOCKET NUMBER 2541-2.

19        THERE ARE -- SO THE RECORD IS COMPLETE FOR THE COURT AS

20   YOU CONSIDER IT, THERE ARE THE GEM, THE NEXUS, REPLENISH,

21   TRANSFORM, AND WE DID NOT HAVE EVIDENCE THEY WERE PART OF THE

22   GALAXY FAMILY.

23        BUT THE TRANSFORM WAS PART OF THE ORIGINAL COMPLAINT, AND

24   FOR THE REPLENISH, IT'S ONLY ACCUSED OF INFRINGING THE '163, SO

25   THE DATE -- THE ISSUE WE'RE DEALING WITH HERE DOESN'T MATTER.

1    THE COURT:  SO WHAT AM I SUPPOSED TO DO WITH THE

2   DROID CHARGE?  MR. ALDEN IS SAYING IF A U.S. CARRIER WANTS TO

3   CALL IT A GALAXY, THAT MAKES IT A GALAXY.

4    SO IN THIS CASE, THE U.S. CELLULAR CARRIER WANTS THIS TO

5   BE CALLED A GALAXY S AVIATOR.  SO DOES THAT MEAN I TREAT IT AS

6   A GALAXY FAMILY PHONE IF VERIZON WANTED TO CALL IT DROID CHARGE

7   INSTEAD OF GALAXY S AVIATOR?

8    MR. ALDEN:  YOUR HONOR, RESPECTFULLY, OUR POSITION IS

9   THAT APPLE, IN ITS COMPLAINT, I BELIEVE, SAID GALAXY FAMILY OF

10   PHONES, SOMETHING TO THAT EFFECT.

11    THERE IS NOTHING INTRINSIC ABOUT, AT THAT TIME, ABOUT

12   WHETHER A PHONE WAS A GALAXY OR NOT.  AS I EXPLAINED, IN THE

13   UNITED STATES, IT DEPENDED ON WHAT THE CARRIER WANTED TO CALL

14   IT.

15    SO IN TERMS OF PROVIDING NOTICE TO SAMSUNG OF ITS

16   INFRINGEMENT ALLEGATIONS, IF THE PHONE WAS NOT A GALAXY PHONE

17   IN THE UNITED STATES, IT WAS NOT -- SAMSUNG WAS NOT PUT ON

18   NOTICE THAT THAT'S WHAT APPLE WAS SAYING INFRINGED.

19    THE COURT:  OKAY.  BUT WHAT ABOUT THE TESTIMONY OF

20   BORA KIM, WHO SAYS --

21    MR. ALDEN:  I DON'T BELIEVE --

22    THE COURT:  -- WHO SAYS --

23    MR. ALDEN:  I DON'T BELIEVE BORA KIM SAYS THAT THE

24   INFUSE 4G WAS A GALAXY PHONE.  BORA KIM SAYS THAT THE DESIGN

25   WAS DERIVATIVE OF ANOTHER PHONE THAT WAS A GALAXY PHONE, BUT

1       NEVER SAYS THAT THE INFUSE 4G WAS A GALAXY PHONE.

2             AND IN FACT, AS I CAN HAND UP TO THE COURT, IT WASN'T A

3       GALAXY PHONE IN THE UNITED STATES.

4             MR. LEE:  YOUR HONOR, COULD I PUT THIS IN CONTEXT?

5       BECAUSE THIS IS AN EFFORT TO MOVE AWAY FROM THE DATES FOR ALL

6       THESE PRODUCTS THAT YOUR HONOR HAS IDENTIFIED AS THE CORRECT

7       NOTICE DATES.

8             AND, VERY QUICKLY, YOUR HONOR, YOU ACTUALLY INSTRUCTED

9       THE JURY, IN FINAL JURY INSTRUCTION NUMBER 42 AND 57, ON THE

10      VERY NOTICE DATES THAT WE'VE ALL USED HERE, AND YOU SAID THERE

11      COULD BE AN EARLIER NOTICE DATE, BUT AS OF THE DATE OF THE

12      FILING OF THE COMPLAINT AND THE AMENDED COMPLAINT, THESE ARE

13      THE NOTICE DATES.  THAT WAS THE INSTRUCTION.  NO OBJECTION FROM

14      SAMSUNG.

15            THEN WE GET TO THE NEW TRIAL MOTION AND SAMSUNG

16      CHARACTERIZES THOSE DATES IN YOUR HONOR'S JURY CHARGE AS THE

17      CORRECT NOTICE DATES.

18            THAT'S AT DOCKET NUMBER 2013 AT 25 TO 26 AND NOTE 21, AND

19      THEY SUBMIT A DECLARATION FROM MR. WAGNER, WHO'S ASKED BY HIS

20      COUNSEL TO ASSUME DATES.

21            BUT IF YOUR HONOR LOOKS AT PARAGRAPH 31 OF HIS

22      DECLARATION, HE SAYS -- HIS CHART SAYS THE CORRECT NOTICE

23      DATES.

24            SO WE HAVE YOUR HONOR'S CHARGE TO THE JURY, WHICH SHOULD

25      BE, ON THIS ELEMENT, THE SAME; THEIR REPRESENTATION TO YOUR

1    HONOR TO GET JMOL; MR. WAGNER'S REPRESENTATION; AND THEN YOUR

2    HONOR SAYS THESE ARE THE CORRECT NOTICE DATES.

3         NOW WE'RE HEARING AN ARGUMENT NEVER MADE BEFORE, NEVER

4    MADE AT THE FIRST TRIAL, NEVER DISCLOSED AT THE FIRST TRIAL,

5    THAT, "WELL, ACTUALLY, THE GALAXY IS -- YOU KNOW, THE INFUSE 4G

6    IS A GALAXY IN CANADA, BUT IT'S NOT A GALAXY HERE, SO WE REALLY

7    DIDN'T HAVE NOTICE UNTIL LATER."

8         YOU KNOW, IT'S A NEW THEORY.  I DON'T THINK IT'S A VERY

9    GOOD THEORY, BUT IT'S A NEW THEORY.

10        AND I THINK, YOUR HONOR, IF YOU -- WHEN WE'RE NOT ALL HERE

11   WITH YOU, WHEN YOU LOOK AT YOUR JURY INSTRUCTIONS, THE JMOL

12   BRIEFING, THE WAGNER DECLARATION, AND YOUR HONOR'S ORDER WHICH

13   SAID, AS A MATTER OF LAW, THESE ARE THE DATES --

14        THE COURT:  LET ME ASK MR. ALDEN, WHY DIDN'T YOU

15   RAISE THIS IN THE LAST TRIAL?  WHY DIDN'T YOU RAISE THIS IN THE

16   POST-TRIAL MOTIONS?  I MEAN, I ISSUED NINE POST-TRIAL ORDERS.

17   YOU NEVER RAISED THIS BEFORE.  I AM HEARING THIS FOR THE FIRST

18   TIME NOW.  WHY DIDN'T YOU RAISE IT BEFORE?

19        MR. ALDEN:  THANK YOU, YOUR HONOR.  I APPRECIATE THAT

20   QUESTION BECAUSE, IN FACT, WE DID RAISE IT BEFORE.

21        IF YOU LOOK AT OUR -- THE JMOL MOTION THAT MR. LEE JUST

22   REFERRED TO, WHICH IS DOCKET NUMBER 2013 AT PAGE 23, LINES 13

23   TO 14, WE REINSTATED THE JURY INSTRUCTION -- TO WHICH APPLE

24   DIDN'T OBJECT, BY THE WAY -- WHICH WAS THAT APPLE'S PATENT

25   INFRINGEMENT DAMAGES ARE LIMITED TO THE TIME PERIOD AFTER IT

1    GAVE SAMSUNG ACTUAL WRITTEN NOTICE OF THE ALLEGEDLY INFRINGING

2    PATENTS AND SPECIFICALLY ACCUSED PRODUCTS.  THAT'S A LINE FROM

3    OUR JMOL MOTION.

4          THE COURT:  YOU NEVER SAID THESE WERE NOT GALAXY

5    PHONES, EVER.  EVER.  I'VE HAD THIS CASE FROM THE BEGINNING.

6    YOU HAVE NEVER SAID THESE ARE NOT GALAXY PHONES.

7          AND EVEN LAST WEEK, OCTOBER 10TH, YOU SAID, YES, THE

8    INFUSE 4G IS A GALAXY PHONE.

9          MR. ALDEN:  SORRY, YOUR HONOR.

10          THE COURT:  I ASKED POINT BLANK.  IT'S IN THE

11    TRANSCRIPT.  IT WAS A VERY CLEAR QUESTION.  IT WAS A VERY CLEAR

12    ANSWER.  SO I'M HEARING THIS FOR THE FIRST TIME.

13          MR. ALDEN:  YOUR HONOR, SORRY.  I WAS MISINTERPRETING

14    THE QUESTION.  I THOUGHT THE QUESTION WAS WHETHER WE HAD RAISED

15    THE ISSUE OF --

16          THE COURT:  YOU'VE NEVER RAISED THIS SPECIFIC ISSUE

17    BEFORE.  I WOULD HAVE REMEMBERED IT IF YOU HAD RAISED IT.

18    ANYTHING IN THE POST-TRIAL MOTIONS WE, WITH EXCRUCIATING

19    DETAIL, TRIED TO ADDRESS.  THIS WAS NOT RAISED BEFORE.  AND WHY

20    IS THAT?

21          MR. ALDEN:  YOUR HONOR, THE REASON IT WASN'T RAISED

22    BEFORE WAS BECAUSE WE HAD -- THE ISSUE THAT WAS ON THE TABLE

23    BEFORE WAS WHEN APPLE HAD PROVIDED CORRECT NOTICE, OR THE

24    CORRECT NOTICE DATE.  APPLE WAS SAYING THAT THE DATA WAS

25    AUGUST 4, 2010.

1    WE WERE SAYING THAT COULD NOT BE THE CORRECT DATE BECAUSE

2    WE DIDN'T HAVE EVEN NOTICE OF THE PATENTS ON AUGUST 4, 2010.

3          SO FOR SAMSUNG, THE THRESHOLD ISSUE WAS, DID WE EVEN KNOW

4    AT THAT TIME THAT WE HAD NOTICE OF THE PATENT?

5          THE COURT:  AND THEN YOU SHOULD HAVE SAID THE CORRECT

6    DATE FOR THE INFUSE 4G WAS THE FILING OF THE AMENDED COMPLAINT.

7    THAT WOULD HAVE TAKEN CARE OF THIS ISSUE.

8          MR. ALDEN:  WELL, THE -- ON JMOL, YOUR HONOR, THE

9    REASON THAT WASN'T DONE WAS BECAUSE WE WERE LIMITED TO THE

10   EVIDENCE THAT WAS SUBMITTED AT TRIAL, AND AT TRIAL MR. MUSIKA

11   EXPLAINED THAT IF THE NOTICE DATE WAS, IN FACT, GOING TO BE

12   LATER, THE WAY YOU WOULD ADJUST FOR THAT, FOR A LATER NOTICE

13   DATE, WAS THAT YOU WOULD REMOVE ALL SALES OF THE PRODUCT --

14         THE COURT:  AND MR. WAGNER NEVER INTRODUCED ANY

15   DIFFERENT OR ANY OF YOUR WITNESSES NEVER SAID THE NOTICE DATE

16   SHOULD BE LATER, AND YOU CERTAINLY FOUGHT THE AUGUST 2010

17   NOTICE DATE DURING TRIAL.

18         MR. ALDEN:  IN FACTS, MR. WAGNER DID INTRODUCE AN

19   EXHIBIT, IT WAS EXHIBIT 781, WHICH HAD A NOTICE DATE FOR THE

20   INFUSE 4G OF JUNE 16, 2011, WHICH WAS THE AMENDED COMPLAINT.

21         THE COURT:  ALL RIGHT.  GIVE ME THE SITE FOR THE

22   RECORD ON THAT.

23         MR. ALDEN:  YOUR HONOR, I'LL JUST NEED A MOMENT TO

24   GET THE ACTUAL TRIAL TRANSCRIPT.

25         THE COURT:  OKAY.  OTHER THAN FUNAI AND GART, ANY

1    OTHER CASES YOU WANT TO RELY ON FOR THIS?

2        MR. LEE:  NO.  FUNAI IS ONLY THREE YEARS OLD, YOUR

3    HONOR, AND I THINK YOU'LL SEE AT PAGE 1373, ON FACTS VERY CLOSE

4    TO THIS, I THINK THEY ADOPT THE POSITION THAT WE'VE BEEN

5    OFFERING TO YOUR HONOR.

6        THE COURT:  IT'S WHAT?

7        MR. LEE:  I THINK IF YOU LOOK AT PAGE 1373, THEY

8    EXPLICITLY ADDRESS THIS ISSUE, AND THE WAY THEY PHRASE IT IS

9    ENSUING OTHER MODELS AND WHETHER ADDITIONAL NOTICE IS REQUIRED.

10       THE COURT:  OKAY.

11   WHAT'S THE SITE, MR. ALDEN?  GIVE ME THE SITE.

12       MR. ALDEN:  IT'S COMING, YOUR HONOR.  WE HAVE PEOPLE

13   WORKING ON IT DILIGENTLY.

14       THE COURT:  ALL RIGHT.  WITH REGARD TO THE TAXES,

15   THIS IS THE MOTION TO EXCLUDE APPLE'S TAXES.

16   SO IT APPEARS -- MR. MUSIKA RELIED ON APPLE'S AUDITED

17   FINANCIALS, WHICH WAS ALSO USED FOR APPLE'S ANNUAL REPORT FILED

18   WITH THE SEC, BUT THOSE ARE BETWEEN 1 AND $4.4 BILLION

19   DIFFERENT THAN WHAT IS IN APPLE'S FEDERAL TAX RETURNS, IS THAT

20   CORRECT, OVER A THREE YEAR PERIOD?

21       MR. MCELHINNY:  THE FIRST PART IS TRUE, YOUR HONOR,

22   IN TERMS OF WHAT MR. MUSIKA RELIED ON AT TRIAL.  I DON'T KNOW

23   IF THE SECOND --

24       MR. ALDEN:  YOUR HONOR, COULD I JUST INTERRUPT TO

25   PROVIDE WITH YOU THAT CITE?

1               THE COURT:  YES.

2               MR. ALDEN:  SO IT'S TRIAL TRANSCRIPT 3031 AT LINE 24.

3     THAT'S THE INTRODUCTION OF EXHIBIT 781, YOUR HONOR, WHICH I

4     PREVIOUSLY SAID INCLUDED A DATE FOR THE INFUSE 4G THAT WAS THE

5     SECOND AMENDED COMPLAINT.

6           AND THEN I WOULD ALSO REFER YOUR HONOR TO TRIAL TRANSCRIPT

7     3032, LINES 21 TO 25.

8               THE COURT:  DOES APPLE HAVE A RESPONSE TO THIS ON THE

9     INFUSE 4G?

10              MR. LEE:  YOUR HONOR, THIS IS THE FIRST TIME IT'S

11    BEEN RAISED.

12              THE COURT:  IF YOU WANT AN OPPORTUNITY TO RESPOND TO

13    THIS, I'LL GIVE YOU TWO PAGES.

14              MR. LEE:  OKAY.

15              THE COURT:  WHEN DO YOU WANT TO FILE THAT?

16              MR. LEE:  MONDAY.

17              THE COURT:  OKAY.

18              MR. ALDEN:  YOUR HONOR, AM I PUSHING IT IF I ASK FOR

19    A RESPONSE?

20              THE COURT:  SO APPLE TWO PAGES IS GOING TO BE --

21    DON'T PUSH ME TOO MUCH, MR. ALDEN.

22              MR. ALDEN:  SORRY?

23              THE COURT:  I SAID DON'T PUSH ME TOO MUCH.  I DON'T

24    LIKE IT IF YOU MISREPRESENT TRANSCRIPTS.

25              MR. ALDEN:  I'M CERTAINLY NOT TRYING TO, YOUR HONOR.

```
 1              THE COURT:  WELL, I DIDN'T FEEL LIKE YOUR CITE TO THE

 2    JMOL WAS ACCURATE.

 3              MR. ALDEN:  WELL, I APOLOGIZE FOR THAT, YOUR HONOR.

 4              THE COURT:  OKAY.  SO YOU WANT TO FILE TWO PAGES BY

 5    OCTOBER 21?

 6              MR. ALDEN:  YES, YOUR HONOR.

 7              MR. LEE:  YOUR HONOR --

 8              THE COURT:  NO, NO.  THAT WAS APPLE.

 9              MR. ALDEN:  OH, SORRY.

10              MR. LEE:  YEAH.

11              THE COURT:  I WANT A DECLARATION FROM A SAMSUNG

12    CORPORATE REPRESENTATIVE TO SAY THAT ONLY CARRIERS MAKE THE

13    DECISION AS TO WHAT IS CALLED A GALAXY AND THAT SAMSUNG,

14    WHATEVER YOU WANT TO REPRESENT, ABOUT HOW THAT IS DONE.  OR

15    MAYBE YOU WANT A DEPOSITION.  LET'S GET A DEPOSITION ON THIS

16    TOPIC.  I WOULD LIKE A DEPOSITION ON THIS TOPIC.

17              MR. LEE:  WE'RE HAPPY TO DO IT.

18              THE COURT:  ALL RIGHT.  LET'S TAKE A DEPOSITION ON

19    THIS TOPIC.  LET'S DRILL DOWN HERE.  I WANT YOU TO GIVE ME A

20    30(B)(6) WITNESS ON THIS QUESTION.  WHEN CAN YOU DO THAT?

21    WE'RE GOING TO NAIL DOWN THIS ISSUE.  I DON'T WANT TO CREATE AN

22    UNNECESSARY ISSUE ON APPEAL.  LET'S DRILL DOWN --

23              MS. MAROULIS:  YOUR HONOR, THE RELEVANT PERSON --

24              THE COURT:  -- ON THESE PRODUCTS.  WHO ELSE DO YOU

25    NEED?  DO YOU NEED ENGINEERS?  WHO ELSE DO YOU NEED?  LET'S
```

1    DRILL THIS DOWN, BECAUSE I DON'T THINK THERE'S BEEN SUFFICIENT

2    INFORMATION ON THIS.  IT'S -- I'M GETTING INFORMATION DIFFERENT

3    ON OCTOBER 10TH THAN I'M GETTING ON OCTOBER 17TH, SO I NEED --

4    WHO DO WE NEED?

5              MS. MAROULIS:  YOUR HONOR, MAY WE SUBMIT A

6    DECLARATION?  BECAUSE THE RELEVANT PERSON MAY BE IN KOREA.

7              THE COURT:  WELL, I DON'T THINK THAT'S AN ISSUE WITH

8    AS MUCH MONEY AS HAS BEEN SPENT ON TAKING DEPOSITIONS OVERSEAS.

9    I WANT A DEPOSITION ON THIS.  YOU CAN FILE A DECLARATION, AND

10   THEN I WANT A DEPOSITION TO NAIL THIS ISSUE DOWN.  I DON'T

11   THINK WE SHOULD HAVE TO RELY ON WEBSITES.  THIS IS A QUESTION

12   THAT CAN BE ANSWERED CLEARLY.  OKAY?

13        SO WHO DO YOU NEED?  WHO DO YOU NEED?  LET'S DRILL DOWN.

14   LET'S GET AN ANSWER.  I DON'T WANT TO CREATE A BUNCH OF

15   UNNECESSARY APPELLATE ISSUES BY RELYING ON A BUNCH OF WEBSITES.

16             MR. LEE:  WE'LL TAKE A 30(B)(6) ON THE ISSUE OF

17   WHETHER THE INFUSE 4G IS A GALAXY PHONE.

18             THE COURT:  OKAY.  WHAT ABOUT THE DROID CHARGE?

19             MR. LEE:  FOR BOTH.

20             MS. MAROULIS:  AND YOUR HONOR, MAY WE ASK THAT IT BE

21   VERY LIMITED TO THIS SUBJECT AND NOT OPEN DISCOVERY INTO

22   ANYTHING ELSE?

23             MR. LEE:  NO, BUT IT SHOULD COVER THE THINGS THAT

24   MR. ALDEN SAID, LIKE DOES THE CARRIER NAME IT?  OR DOES SAMSUNG

25   NAME IT?  WHO CONTROLS THE NAMING?  WHO CONTROLS THE

1    IDENTIFICATION OF THE FAMILY?  THAT WOULD FALL WITHIN IT.

2            THE COURT:  OKAY.  SO WHEN IS -- OKAY.  I'D LIKE

3    THE -- BECAUSE I NEED TO ISSUE A RULING ON THIS FAIRLY SOON, SO

4    I WANT THE DECLARATION BY -- CAN YOU FILE IT BY MONDAY?

5            MS. MAROULIS:  YES, YOUR HONOR.

6            THE COURT:  OKAY.  I WANT THE DEPOSITION BY THE END

7    OF THE WEEK.  CAN YOU DO IT BY THE 25TH?

8            MR. LEE:  YES.

9            MS. MAROULIS:  YES, YOUR HONOR.  IT MAY NEED TO BE IN

10   KOREA, THOUGH.

11           THE COURT:  THAT'S FINE.  I MEAN, YOU ALL ARE JUST

12   GOING TO HAVE TO TRAVEL IF THAT'S THE CASE.

13           MR. MCELHINNY:  WE'RE NOT -- IN FAIRNESS, YOUR HONOR,

14   WE'RE NOT RAISING THIS ISSUE.  THIS IS THEIR ISSUE.  THEY'RE

15   THE ONES THAT ARE GIVING THE CONFLICTING -- WE'RE HERE, WE'RE

16   TRYING TO PREPARE FOR TRIAL.  WE NEED THE DEPOSITION, BUT --

17           THE COURT:  ALL RIGHT.  FLY YOUR PERSON TO THE

18   UNITED STATES.  THIS IS AN ISSUE THAT YOU DID NOT RAISE IN THE

19   JMOL.  OKAY?  WE'VE BEEN LITIGATING THIS CASE SINCE APRIL OF

20   2011.  I'M JUST HEARING FOR THE FIRST TIME THAT INFUSE 4G IS

21   NOT A GALAXY PHONE AND DROID CHARGE IS NOT A GALAXY PHONE.

22       IF YOU WANT THIS ISSUE, I'D LIKE TO DRILL DOWN AND GET A

23   CORRECT ANSWER SO WE CAN PROCEED, AS MUCH AS POSSIBLE,

24   CORRECTLY FOR THIS TRIAL SO THAT WE'RE NOT CREATING UNNECESSARY

25   RULE 50 ISSUES AND APPELLATE ISSUES AND REMAND RETRIAL ISSUES.

1          LET'S JUST DRILL DOWN, GET THE ANSWER, AND THEN IF YOU

2     ARE CORRECT THAT THESE ARE NOT GALAXY PHONES, THEN PERHAPS

3     RATHER THAN JUST LEAVING THE ISSUE OPEN FOR BOTH SIDES TO

4     PRESENT CONFLICTING EVIDENCE, THEN I'LL JUST MAKE A RULING THAT

5     THE CORRECT DATE IS THE AMENDED COMPLAINT FILING DATE.  LET'S

6     JUST RESOLVE IT.  OKAY?

7               MS. MAROULIS:  WE'LL PRESENT A WITNESS, YOUR HONOR.

8               THE COURT:  OKAY.  SO I WANT THAT PERSON FLOWN TO THE

9     U.S. BY OCTOBER 25TH.

10              MS. MAROULIS:  IT MAY BE SOMEONE IN THE UNITED STATES

11    AS WELL.  WE'LL PRESENT A CORPORATE REPRESENTATIVE BY THE 25TH,

12    YOUR HONOR.

13              THE COURT:  OKAY.  ALL RIGHT.  WHAT ELSE DO WE NEED

14    TO DO TO DRILL DOWN THIS ISSUE?  THERE CLEARLY MUST BE AN

15    ANSWER HERE BEYOND, YOU KNOW, PRINTING OUT WEBSITES.  WHAT ELSE

16    DO WE NEED TO DRILL DOWN ON THIS QUESTION?  ANYTHING ELSE?  DO

17    YOU NEED AN ENGINEER?  WHAT DO YOU NEED?

18              MR. LEE:  YOUR HONOR, I THINK THIS IS SUFFICIENT FOR

19    NOW --

20              THE COURT:  OKAY.

21              MR. LEE:  -- IF THEY PRODUCE SOMEONE FOR A 30(B)(6).

22              THE COURT:  OKAY.  ALL RIGHT.  THEN DO YOU STILL WANT

23    TO FILE A RESPONSE BY MONDAY?

24              MR. LEE:  NO, YOUR HONOR.  I THINK WE'RE PROBABLY

25    BETTER TO TAKE THE DEPOSITION AND THEN, WITHIN TWO DAYS AFTER

1    THE DEPOSITION IS TAKEN, WE'LL FILE THE TWO PAGER.

2         THE COURT:  SO WHEN ARE YOU GOING TO FILE THAT?

3         MR. LEE:  TWO DAYS AFTER THE DEPOSITION.  SO IF THE

4    DEPOSITION IS THE 25TH, THAT'S A FRIDAY.

5         THE COURT:  YEAH.  YOU WANT TO FILE IT ON THE 28TH?

6         MR. LEE:  YES.

7         THE COURT:  OKAY.  SO THEN APPLE IS GOING TO FILE A

8    TWO PAGE RESPONSE ON OCTOBER 28TH.  DOES SAMSUNG WANT A TWO

9    PAGE RESPONSE ON OCTOBER 30TH?

10        MS. MAROULIS:  YES, YOUR HONOR.

11        THE COURT:  OKAY.  LET'S MOVE ON TO THE NEXT

12   QUESTION.  ALL RIGHT.  LET'S GO TO THE TAX ISSUE.

13       LOOK, IF MR. -- IF APPLE HAS INFORMATION ON ITS AUDITED

14   FINANCIALS AND IN ITS SEC FILINGS AND HAD ITS DAMAGES EXPERT

15   RELY ON THOSE, EVEN THOUGH THOSE DOCUMENTS ARE INCONSISTENT

16   WITH ITS ACTUAL FEDERAL TAX RETURNS AND ITS ACTUAL FEDERAL TAX

17   PAYMENTS, THEN I THINK IT WOULD BE AN INJUSTICE TO ALLOW APPLE

18   THE BENEFIT OF ITS OWN DISCREPANCY IN ITS OWN FINANCIALS, AND

19   SO I AM NOT GOING TO ALLOW MS. DAVIS TO USE THE TAX RATE BASED

20   ON WHAT APPEARS TO BE AT LEAST INCONSISTENT, TO PUT IT AT ITS

21   BEST FACE, AUDITED FINANCIALS AND SHAREHOLDER SEC FILINGS.

22       I THINK THAT WOULD BE MISLEADING THE JURY.  SO I -- YOU

23   KNOW, BECAUSE YOU ALL MAY HAVE MISLED MR. MUSIKA LAST YEAR.  I

24   DON'T THINK EVEN THE GROUND HOG RULE SHOULD NOT HAVE AN

25   EXCEPTION FOR JUST PUTTING OUT FALSE INFORMATION.

1       SO I'M NOT GOING TO ALLOW MS. DAVIS TO RELY ON THE AUDITED

2    FINANCIALS WHEN THEY ARE DIFFERENT THAN THE ACTUAL TAX RETURNS

3    AND APPLE'S ACTUAL TAX PAYMENTS.

4       SO YOUR MOTION TO EXCLUDE --

5          MR. MCELHINNY:  MAY --

6          THE COURT:  -- IS DENIED.

7          MR. MCELHINNY:  MAY I BE HEARD ON THAT?

8          THE COURT:  GO AHEAD.

9          MR. MCELHINNY:  FIRST OF ALL, THE MOTION TO EXCLUDE

10   IS TO A PARTICULAR EXHIBIT, YOUR HONOR.  IT IS TO A SENATE

11   REPORT WHICH IS NOT A FACTUAL DOCUMENT.  IT MAKES NO FACT

12   FINDINGS.  IT'S A QUESTION THAT DOESN'T ADDRESS --

13        THE COURT:  ALL RIGHT.  DO WE NEED TO HAVE A -- I'M

14   GOING TO HAVE A DEPOSITION THEN ON THIS TOPIC.  OKAY?  EITHER

15   YOU CAN ANSWER WHETHER THE AUDITED FINANCIAL THAT YOU PROVIDED

16   TO MR. MUSIKA IS CONSISTENT WITH YOUR FEDERAL TAX RETURNS OR

17   NOT.  OKAY?

18        MR. MCELHINNY:  WHAT I WOULD SAY --

19        THE COURT:  LET'S HAVE A 30(B)(6) DEPOSITION.  WE'LL

20   DO IT ON THE SAME SCHEDULE.  YOU CAN FILE A DECLARATION SAYING

21   THAT THEY ARE EITHER THE SAME OR THEY ARE NOT.

22        MR. MCELHINNY:  I ACCEPT THAT.

23        THE COURT:  OKAY.

24        MR. MCELHINNY:  I ACCEPT THAT.  BUT BECAUSE WE ARE

25   HERE TODAY IN OPEN COURT, WHAT I WOULD LIKE TO MAKE SURE THAT

1    YOUR HONOR UNDERSTANDS IS THAT AUDITED TAX RETURNS, AUDITED

2    FINANCIALS ARE PREPARED UNDER GAAP ACCOUNTING.  GAAP ACCOUNTING

3    IS DIFFERENT THAN TAX ACCOUNTING.  NUMBERS ARE ACCRUED

4    DIFFERENTLY.

5         YOU CAN'T -- IT IS NOT -- IT IS NOT EVEN PRIMA FACIE

6    EVIDENCE OF MALFEASANCE THAT THE NUMBERS MAY BE DIFFERENT

7    BECAUSE THE ACCOUNTING SYSTEMS, UNDER SEPARATE RULES

8    ESTABLISHED BY SEPARATE BODIES, ARE DIFFERENT.

9         AND THE CONCLUSION THAT YOUR HONOR IS JUMPING TO IS

10   REALLY -- UNFORTUNATELY, IT IS ERRONEOUS, BUT IT'S ALSO

11   MISINFORMED IN TERMS OF HOW THESE THINGS ACTUALLY COME ABOUT IN

12   THE REAL WORLD.

13        NUMEROUS -- THAT'S WHY THE SENATE REPORT WAS SO

14   INFLAMMATORY.

15             THE COURT:  WHO HAS MADE --

16             MR. MCELHINNY:  THE SEC HAS LOOKED AT THIS.

17             THE COURT:  WHO HAS MADE A BIG DEAL ABOUT WHETHER

18   SAMSUNG'S FINANCIALS ARE CHANGING?

19             MR. MCELHINNY:  WE HAVE.

20             THE COURT:  AND WHETHER THERE ARE DIFFERENT NUMBERS

21   WHEN DIFFERENT NUMBERS ARE GENERATED?

22             MR. MCELHINNY:  WE HAVE.

23             THE COURT:  AND IF THAT IS THE SITUATION ON APPLE'S

24   SIDE, I THINK IT'S FAIR GAME.  OKAY?  SO I DON'T UNDERSTAND WHY

25   YOU ARE INSISTING THAT MS. DAVIS SHOULD USE THE TAX RATE IN THE

1    AUDITED FINANCIALS RATHER THAN THE TAX RATE THAT'S ACTUALLY IN

2    A FEDERAL TAX RETURN.

3            MR. MCELHINNY:  BECAUSE -- I'M SORRY.  I DIDN'T MEAN

4    TO INTERRUPT YOU.

5            BECAUSE ALL CPA'S, ALL DAMAGES EXPERTS, ALL USE AUDITED

6    FINANCIALS BECAUSE THEY WERE PREPARED ACCORDING TO GAAP

7    ACCOUNTING PRINCIPLES AND SO YOU ALWAYS HAVE AN APPLES TO

8    APPLES AND ORANGES TO ORANGES COMPARISON.

9            OUR ATTACK ON THE SAMSUNG FINANCIALS, AS YOUR HONOR WILL

10   REMEMBER, IS WE NEVER GOT ANYTHING THAT WAS GAAP OR ANYTHING

11   THAT WAS AUDITED.  WHAT WE GOT WAS SINGLE SHEETS THAT CAME OUT

12   WEEK AFTER WEEK, MONTH AFTER MONTH WITH THE NUMBERS.  SO --

13           THE COURT:  OKAY.  SO I'M NOT GOING TO ALLOW -- I

14   THINK WHETHER THERE WAS A SENATE HEARING OR NOT IS NOT

15   RELEVANT.

16           MR. MCELHINNY:  THANK YOU, YOUR HONOR.

17           THE COURT:  BUT I THINK IF YOU ARE GOING TO HAVE

18   MS. DAVIS RELY ON A TAX RATE, WHICH SHE DID IN HER TAX REPORT,

19   THEN I THINK IT IS FAIR FOR SAMSUNG TO BE ABLE TO CROSS-EXAMINE

20   HER ON WHETHER THERE ARE, IN FACT, OTHER TAX RATES THAT WOULD

21   MORE ACCURATE REFLECT THAT.

22           MR. MCELHINNY:  I HAVE NO OBJECTION TO THAT, YOUR

23   HONOR.

24           THE COURT:  OKAY.  IS THERE ANYTHING ELSE THAT YOU

25   WANT WITH REGARD TO APPLE'S TAXES?

1          MR. PRICE:  NO, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  SO SHE CAN BE CROSS-EXAMINED

3    ON THE ACTUAL TAX RATE IN APPLE'S FEDERAL TAX RETURNS AND THE

4    ACTUAL PAYMENTS THAT APPLE HAS MADE REGARDING ITS FEDERAL

5    TAXES, BUT THERE'S NO NEED TO GO INTO ANY SENATE HEARINGS AND

6    THAT IS EXCLUDED.

7          BUT TO THE EXTENT IT OVERLAPS WITH THE ACTUAL TAX RATE AND

8    TAX PAYMENT, THE MOTION IS DENIED.  OKAY?

9          ALL RIGHT.  WITH REGARD TO THE HTC SETTLEMENT, SAMSUNG

10   SAYS THAT THEY'RE JUST RELYING ON IT BECAUSE IT'S IN

11   MS. DAVIS'S REPORT SO THEY NEED TO CROSS HER.

12         IF MS. DAVIS DOES NOT HAVE IT IN HER REPORT, THEN DOES

13   SAMSUNG WANT TO HAVE HTC SETTLEMENT IN ITS REPORT, OR NOT?  CAN

14   WE JUST REACH A RESOLUTION HERE?

15         MS. MAROULIS:  WE WOULD LIKE TO HAVE IT AND DISCUSS

16   IT AS WELL, YOUR HONOR, IF WE MAY.

17         MR. MCELHINNY:  TO BE CLEAR, WE WERE ON NOTICE THAT

18   THEY WANTED TO RAISE THIS HTC ISSUE.

19         THE COURT:  UM-HUM.

20         MR. MCELHINNY:  AND OBVIOUSLY WE WERE RUNNING UNDER A

21   RULE THAT SAYS IF IT'S NOT IN THE REPORT, IT CAN'T GET

22   MENTIONED.

23         SO WHAT MS. DAVIS SAID IN HER REPORT IS OUR POSITION.  IT

24   SHOULDN'T BE IN.  IT'S POST-TRIAL.  IT VIOLATES THE GROUND HOG

25   DAY RULES.  IT'S COMPLETELY NEW EVIDENCE.  NO ONE HAS EVER BEEN

1    DEPOSED ON IT.  THERE'S NO WITNESSES ABOUT IT.  IT WILL ALL BE

2    COMPLETELY NOVEL.

3         AND THEN SHE SAYS, "HOWEVER, IF THE COURT ULTIMATELY LETS

4    IT IN, THIS IS MY VIEW."

5         BUT WHAT WE STUCK WITH -- WE TOOK OUR -- WE HAD TO

6    PROTECT, IN CASE YOUR HONOR RULES AGAINST US, SO THAT SHE COULD

7    REBUT WHATEVER THEY WANTED TO SAY.  BUT WHAT SHE SAYS IS IT'S

8    NOT RELEVANT AND SHE'S NOT GOING TO MENTION IT AT ALL IN HER

9    DIRECT TESTIMONY, EVER.

10        MS. MAROULIS:  YOUR HONOR, IT'S A HIGHLY RELEVANT

11   LICENSE.  I CANNOT GO INTO ANY DETAILS AT ALL REGARDING WHY

12   IT'S RELEVANT.  IT DID HAPPEN AFTER TRIAL, ABSOLUTELY, BUT IT'S

13   VERY MUCH ON POINT AND MAKES THIS AN EXCEPTION TO THE GROUND

14   HOG DAY.

15        BUT IT ALSO WAS IN MS. DAVIS'S REPORT AND WE NEED TO

16   RESPOND TO THAT.

17        THE COURT:  WELL, THIS IS MY CONCERN.  I DEFINITELY

18   AGREE THAT IT IS POST-TRIAL EVIDENCE.  MY ONE CONCERN IS IT MAY

19   BE PERHAPS ONE OF THE MOST INFORMATIVE --

20        MR. MCELHINNY:  OUR VIEW OF --

21        THE COURT:  -- PIECES OF EVIDENCE.

22        MR. MCELHINNY:  OUR VIEW ABOUT THAT IS THAT IT'S NOT.

23        THE COURT:  I UNDERSTAND, AND YOU CAN MAKE THAT

24   ARGUMENT.

25        MR. MCELHINNY:  WELL, BUT NO -- I'M SORRY.  I KEEP --

AND IT IS LATE.

WE CAN'T BECAUSE WE DON'T KNOW WHAT WITNESSES THEY'RE GOING TO CALL. NO ONE HAS BEEN DEPOSED ON IT. WE DON'T HAVE A WITNESS ON OUR LIST THAT IS KNOWLEDGEABLE AND INTENDS TO ADDRESS IT.

WE ONLY HAVE EIGHT HOURS. IF I HAVE TO SPEND AN HOUR EXPLAINING THAT IN SEPARATE LITIGATION, THIS WAS A RESOLUTION OF A LITIGATION AND WHAT IT MEANT, THEN, ONE, WE'RE GOING TO HAVE TO CLOSE YOUR COURTROOM; BUT, TWO, IT IS COMPLETELY A SIDESHOW THAT COMPLETELY CHANGES ALL OF THE, ARGUABLY, ALL OF THE THINGS THAT YOU HAVE FIXED FROM THE EARLIER TRIAL.

MS. MAROULIS: YOUR HONOR, WE WILL BE PRESENTING MR. WAGNER TO TALK ABOUT THIS LICENSE.

MR. MCELHINNY: HE'S NEVER BEEN DEPOSED ON IT.

MS. MAROULIS: HE HAS BEEN DEPOSED IN THIS CASE.

MR. MCELHINNY: NOT ON THIS LICENSE.

MS. MAROULIS: YOUR HONOR, I BELIEVE HE WAS DEPOSED ON HTC LICENSE, BUT I CANNOT QUOTE THE TRANSCRIPT. I WAS THERE, I WAS DEFENDING HIM, SO I SHOULD KNOW, BUT I JUST CAN'T REMEMBER EXACTLY.

THE COURT: DID YOU CHOOSE NOT TO ASK HIM ABOUT IT?

MR. MCELHINNY: NO. WE THINK IT'S NOT RELEVANT, YOUR HONOR. WE DON'T HAVE A WITNESS. WE DON'T HAVE ANYBODY WHO'S GOING TO TALK ABOUT IT. IF YOUR HONOR LETS HIM TALK ABOUT IT, I'M GOING TO HAVE TO PUT SOMEBODY ON IN REBUTTAL THAT'S NOT ON

1    MY WITNESS LIST, IT'S GOING TO TAKE MY TIME, AND IT'S

2    COMPLETELY POST-TRIAL.

3        THE COURT:  WOULD SAMSUNG OBJECT IF APPLE IDENTIFIED

4    A NEW WITNESS ON THE HTC LICENSE?

5        MS. MAROULIS:  YOUR HONOR, THEY HAVE THEIR LICENSING

6    REPRESENTATIVE, MR. TEKSLER, ON THE LIST, SO PRESUMABLY HE CAN

7    ADDRESS THAT.

8        THE COURT:  WELL, I DON'T KNOW IF HE WAS INVOLVED IN

9    THAT LICENSE.

10        MR. MCELHINNY:  HE'S NOT A CURRENT EMPLOYEE, YOUR

11    HONOR.

12        MS. MAROULIS:  MAY I CONFER WITH MR. PRICE FOR ONE

13    SECOND?

14        WE'RE NOT GOING TO OBJECT.

15        AND, YOUR HONOR, YES, I'M TOLD THAT MR. WAGNER WAS ASKED

16    ABOUT THE LICENSE SPECIFICALLY.  IT'S AT PAGE 220 OF HIS MOST

17    RECENT DEPOSITION -- I'M SORRY -- IT'S 907 OF THE DEPOSITION

18    DATED AUGUST 20, 2013.

19        MR. MCELHINNY:  FRANKLY, I'M MOST CONCERNED ABOUT THE

20    TIME, YOUR HONOR, PERSONALLY.

21        THE COURT:  UM-HUM.

22        MR. MCELHINNY:  THAT'S --

23        THE COURT:  WELL, I WILL THINK ABOUT THIS FURTHER,

24    BUT I'M ACTUALLY INCLINED TO ALLOW IT IN JUST BECAUSE I THINK

25    IT'S HIGHLY PROBATIVE.

1          ON THE OTHER HAND, I HAVE ESTABLISHED THIS GROUND HOG DAY

2     RULE AND I DON'T WANT YOU TO BE PREJUDICED BY THAT.

3          IF I ALLOWED ADDITIONAL LIMITED DISCOVERY ON THIS ISSUE,

4     WHAT WOULD YOU WANT?

5          MR. MCELHINNY:  YOUR HONOR, I HAVE A RULING FROM THE

6     ITC THAT HAS FOUND THAT SAMSUNG COPIED.  IT'S A DIRECT FINDING

7     BY AN ITC JUDGE THAT HAPPENED AFTER THIS TRIAL THAT I WOULD

8     LIKE TO BRING INTO THE TRIAL BECAUSE IT'S HIGHLY PROBATIVE,

9     IT'S A FINDING OF FACT, IT'S COLLATERAL ESTOPPEL, AND I WOULD

10    LOVE TO BRING IN POST-TRIAL STUFF THAT HAPPENED IN THIS CASE.

11         THE COURT:  IS IT THE SAME I.P.?

12         MS. MAROULIS:  NO, YOUR HONOR, IT'S NOT REMOTELY THE

13    SAME I.P.

14         THE COURT:  HTC IS THE SAME, OVERLAPPING?

15         MR. MCELHINNY:  IT'S NOT THE SAME PATENTS, BUT IT'S

16    THE SAME PRODUCT LINE, IT'S THE SAME INVENTORS, AND IT'S A

17    DIRECT FINDING OF FACT THAT COPYING OCCURRED.

18         MS. MAROULIS:  THE ITC --

19         MR. MCELHINNY:  IT COULD NOT BE MORE PROBATIVE.

20         MS. MAROULIS:  -- INVOLVES COMPLETELY DIFFERENT I.P.,

21    DIFFERENT PRODUCTS.

22         MR. MCELHINNY:  BUT IT'S POST-TRIAL AND IT REQUIRES A

23    WHOLE BIG STORY FROM SAMSUNG ABOUT WHY THE JURY SHOULDN'T PAY

24    ATTENTION TO IT.  IT'S EXACTLY THE MIRROR IMAGE OF THIS.

25         MS. MAROULIS:  AND MOST IMPORTANTLY, THE COURT RULED

1    LAST TIME IN MOTIONS IN LIMINE THAT RULINGS FROM OTHER COURTS

2    DO NOT COME IN.

3         THE COURT:  WELL, THEN THAT'S CONSISTENT WITH KEEPING

4    HTC OUT.

5         BUT THAT WAS THE SAME I.P., WASN'T IT?  HTC WAS THE SAME

6    DESIGN PATENTS, THE SAME PATENTS?

7         MR. MCELHINNY:  HTC IS A -- I CAN'T SPEAK ABOUT WHERE

8    THE LICENSE GOES, BUT IT IS -- IT'S MISLEADING TO SAY IT'S THE

9    SAME I.P.

10        THE COURT:  WHAT ABOUT THE LAWSUIT?  JUST TELL ME

11   ABOUT THE LITIGATION, NOT ABOUT THE SETTLEMENT.  THE LAWSUIT

12   INVOLVED THE SAME INTELLECTUAL PROPERTY FOR THE MOST PART, I

13   RECALL.

14        MS. MAROULIS:  MANY OF THE SAME PATENTS.

15        MR. MCELHINNY:  SOME YES AND SOME NO.  OVERLAPPING.

16        MR. LEE:  YOUR HONOR, IF WE COULD ADD ONE OTHER

17   THING, THIS CAME UP AT THE -- BEFORE THE FEDERAL CIRCUIT ON THE

18   PERMANENT INJUNCTION APPEAL.

19        THE COURT:  UM-HUM.

20        MR. LEE:  AND ONE OF THE QUESTIONS WAS HOW RELEVANT

21   IS THE HTC LICENSE UNDER RESQNET, BECAUSE -- RESQNET IS THE

22   FEDERAL CIRCUIT RECENT DECISION.

23        SO THE HTC LICENSE IS A LITIGATION SETTLEMENT AS A RESULT

24   OF LITIGATION, AND WHILE WE CAN'T GO INTO THE PROVISIONS, THERE

25   WERE SPECIFIC PROVISIONS THAT CARVED OUT FROM THAT LICENSE THE

1    VERY I.P. THAT WAS LITIGATED HERE AND FOUND TO INFRINGE BY

2    CATEGORY.

3              MS. KREVANS:  IT'S RIGHT HERE.

4              MR. LEE:  AND THERE WAS -- THIS PART I CAN SAY

5    BECAUSE IT WAS SAID AT THE ARGUMENTS SO IT'S ON THE TAPE.  IT

6    WAS ANTI-CLONING OR ANTI-COPYING PROVISIONS IN THE LICENSE.

7              SO YOUR -- AND THE VERY ISSUE CAME UP THAT WAS FROM

8    JUDGE BRYSON WAS HOW CAN THIS BE RELEVANT IF IT'S A LITIGATION

9    SETTLEMENT, THAT A LICENSE RESULTING FROM LITIGATION SETTLEMENT

10   THAT HAD DIFFERENT PROVISIONS, THAT CARVED OUT THE TYPE OF I.P.

11   THAT WAS FOUND TO INFRINGE HERE, THAT'S THE KIND OF COLLATERAL

12   LITIGATION -- COLLATERAL TRIAL WE'RE GOING TO HAVE BECAUSE THE

13   PROVISION -- I CAN TELL YOU, I'VE READ THE LICENSE AGREEMENT

14   AND IT'S VERY COMPLICATED.  HOW YOU WOULD APPLY THAT LICENSE TO

15   THIS I.P. IS VERY COMPLICATED.  IT CARVES OUT PORTIONS OF THE

16   I.P. THAT HAVE BEEN FOUND TO BE INFRINGED HERE.

17             SO IT'S NOT JUST LATE IN THE DAY, IT'S A LITIGATION

18   SETTLEMENT THAT, UNDER RESQNET, THERE'S A REAL QUESTION AS TO

19   WHETHER IT HAS ANY RELEVANCE AT ALL.

20             BUT IT ALSO IS SO DIFFERENT IN ITS PROVISIONS THAT THE

21   WHOLE QUESTION OF, GEE, HOW DOES THIS APPLY TO THESE IS GOING

22   TO CONSUME A DISPROPORTIONATE AMOUNT OF THE TRIAL.

23             MS. KREVANS:  AND YOUR HONOR, MR. LEE IS BEING VERY

24   CAREFUL BECAUSE OF CONFIDENTIALITY RULES, BUT I HAVE IT IN MY

25   HANDS AND I CAN SHOW YOU THE PAGE HE'S REFERRING TO IF IT WOULD

1    BE HELPFUL TO YOU RIGHT NOW.  THAT CARVES THESE THINGS OUT.

2            THE COURT:  THAT CARVES OUT, WHAT, THE I.P. THAT'S

3    ASSERTED IN THIS CASE?

4            MR. LEE:  THE CATEGORIES.  I THINK IF YOUR HONOR SEES

5    IT, YOU'LL -- WE'RE HAPPY TO BRING IT UP TO YOU SO THAT WE CAN

6    COMPLY WITH THE CONFIDENTIALITY.

7            MS. KREVANS:  IT'S RIGHT IN THE MIDDLE OF THE PAGE,

8    YOUR HONOR.

9            MR. LEE:  DO YOU WANT TO SEE IT?

10           MS. MAROULIS:  I DO.  THE PROBLEM IS, YOUR HONOR, I

11   CANNOT REALLY REFER TO TERMS HERE IN OPEN COURT, BUT ONE OF THE

12   THINGS THAT APPLE ARGUED LAST TRIAL WAS THAT THEY WOULD NEVER

13   LICENSE I.P. TO A COMPETITOR LIKE SAMSUNG, AND WHATEVER THE

14   COMPLICATED NATURE OF THAT AGREEMENT, THIS AGREEMENT SHOWS THAT

15   THAT'S NOT THE CASE.  IT'S VERY PROBATIVE TO WHAT WE HAVE TO

16   DECIDE IN THIS TRIAL.

17           (PAUSE IN PROCEEDINGS.)

18           THE COURT:  ALL RIGHT.  I AM GOING TO GRANT THE

19   MOTION TO EXCLUDE THE HTC SETTLEMENT ON THE FOLLOWING BASES:

20   NUMBER ONE, UNDER A 403 BALANCING REGARDING ITS TREATMENT OF

21   THE DIFFERENT I.P.

22           FURTHERMORE, I THINK THERE WILL NECESSARILY HAVE TO BE A

23   SATELLITE LITIGATION AS TO THE HTC LAWSUIT AND WHAT

24   SIMILARITIES OR DIFFERENCES THERE ARE TO HTC'S POSITION AS

25   RESPECT WITH REGARD TO, OR IN COMPARISON, EXCUSE ME, TO

1       SAMSUNG'S POSITION, AND THAT THAT WOULD UNDULY CONSUME TIME AND

2       MAY ALSO CONFUSE THE JURY.

3           AND I'M ALSO JUST CONCERNED ABOUT TRYING TO CREATE A

4       RECORD THAT IS CLOSE ENOUGH TO THE LAST TRIAL FOR A MORE, I

5       GUESS A MORE CONSISTENT RECORD FOR APPELLATE REVIEW SINCE THIS

6       IS A RETRIAL AS A LIMITED ISSUE AND I THINK APPELLATE REVIEW

7       MAY BE MORE COMPLICATED IF IT'S A COMPLETELY DIFFERENT SET OF

8       ISSUES THAT ARE PRESENTED TO THIS JURY.

9           I ALSO HAVE SET A RULE THAT WE WOULD TRY TO KEEP THIS

10      EVIDENCE, AS MUCH AS POSSIBLE, THE SAME AS THE EVIDENCE FROM

11      THE 2012 TRIAL.

12          UNFORTUNATELY, YOU KNOW, COURTS HAVE TO SET DEADLINES FOR

13      DISCOVERY AND FOR THE OBTAINING OF RELEVANT EVIDENCE FOR THE

14      PURPOSES OF MANAGING OUR CALENDARS AND TO KEEP CASES

15      PROGRESSING TO RESOLUTION ON THEIR MERITS, AND THAT DEADLINE

16      NECESSARILY UNFORTUNATELY DOES EXCLUDE RELEVANT EVIDENCE, AND

17      IN THIS CASE THE CUTOFF HAS EFFECTIVELY BEEN WHATEVER YOU COULD

18      HAVE USED IN THE AUGUST 2012 TRIAL YOU CAN USE NOW, AND WE'RE

19      PRECLUDING ANYTHING THAT HAS OCCURRED SINCE THAT TRIAL.

20          AND I RECOGNIZE THAT IT IS CUTOFF THAT WILL,

21      UNFORTUNATELY, NECESSARILY EXCLUDE SOME RELEVANT EVIDENCE, BUT

22      I THINK IN TERMS OF THE COURT'S INHERENT AUTHORITY TO MANAGE

23      ITS OWN CALENDARS AND TO HAVE CASES PROGRESS FORWARD TO

24      RESOLUTION ON THE MERITS, THAT'S NECESSARY IN THIS INSTANCE.

25      SO I'M GRANTING THIS MOTION.

1      LET'S GO TO THE COMPETITIVE ANALYSIS, AND I'M SORRY TO

2 KEEP YOU HERE FOR SUCH A LONG HEARING.

3           MR. PRICE:  YOUR HONOR --

4           MR. LEE:  YOUR HONOR, CAN WE GET THAT LICENSE BACK?

5           THE COURT:  YES.  I DON'T WANT TO KEEP IT.

6           MR. PRICE:  YOUR HONOR, MAY I JUST ASK, SO WE

7 PRESERVE THE RECORD, CAN WE FILE A PROFFER UNDER SEAL AS TO

8 WHAT WE WOULD HAVE TRIED TO ELICIT CONCERNING THIS, JUST SO WE

9 HAVE A RECORD?  NOT ON A MOTION, JUST --

10           THE COURT:  IT'S ALREADY IN THE EXPERT'S REPORTS.

11           MR. MCELHINNY:  I THINK HE HAS TO MAKE AN OFFER OF

12 PROOF IN ORDER TO PRESERVE HIS RECORD, YOUR HONOR.

13           THE COURT:  OKAY.  YOU WANT TO DO THAT IN WRITING?

14           MR. PRICE:  YEAH, I THINK THAT'S BEST.

15           MR. MCELHINNY:  IT DOESN'T REQUIRE A FURTHER RULING

16 FROM THE COURT.  HE JUST HAS TO --

17           MR. PRICE:  I JUST NEED TO PUT SOMETHING --

18           THE COURT:  OKAY.  WHEN WOULD YOU LIKE TO FILE THAT?

19           MS. MAROULIS:  NEXT WEEK, BY THE END OF NEXT WEEK.

20           THE COURT:  ACTUALLY, IF YOU DO IT SOONER, I MAY

21 RECONSIDER MY RULING.

22           MR. PRICE:  OH, GOSH, I'LL DO IT SOONER.

23           MS. MAROULIS:  OKAY.  MONDAY.

24      (LAUGHTER.)

25           MR. MCELHINNY:  IN THAT EVENT, WE WOULD --

```
 1              THE COURT:  DO YOU WANT A RESPONSE?

 2              MR. MCELHINNY:  YES, YOUR HONOR.

 3              THE COURT:  OKAY.  CAN YOU DO YOURS BY WEDNESDAY?

 4              MR. MCELHINNY:  YES, YOUR HONOR.

 5              THE COURT:  CAN WE IMPOSE A PAGE LIMIT ON THIS?  IF

 6    SO, YOU TELL ME.

 7          AND IF ANYONE WOULD LIKE TO TAKE THEIR -- IT'S EXTREMELY

 8    WARM IN HERE, SO IF YOU'D LIKE TO TAKE YOUR JACKET OFF -- I'D

 9    LIKE TO TAKE A QUICK BREAK MYSELF.  I'M REALLY SORRY THAT WE'RE

10    GOING TO BE GOING QUITE A BIT TODAY.

11              MR. PRICE:  I WAS GOING TO ASK FOR A QUICK BIO BREAK.

12              THE COURT:  WHY DON'T WE TAKE A QUICK BIO BREAK RIGHT

13    NOW?

14          BUT BEFORE WE GO, HOW MANY PAGES WOULD YOU LIKE?

15              MS. MAROULIS:  WE CAN DO IT IN THREE PAGES, YOUR

16    HONOR.

17              THE COURT:  OKAY.  DO YOU NEED THREE PAGES FOR YOURS?

18              MR. MCELHINNY:  WE NEED TWO.

19              THE COURT:  OKAY.  SO OCTOBER 21 WILL BE THREE PAGES

20    AND OCTOBER 23 WILL BE TWO PAGES.

21          AND I'D -- IF YOU NEED TO TAKE YOUR JACKETS OFF, I WELCOME

22    YOU TO DO THAT.  IT'S VERY HOT IN HERE.

23              MS. MAROULIS:  THANK YOU, YOUR HONOR.

24              MR. MCELHINNY:  THANK YOU.

25          (RECESS FROM 5:15 P.M. UNTIL 5:22 P.M.)
```

```
 1          THE COURT:  DO ANY OF YOU NEED ANYTHING TO DRINK?
 2   BECAUSE I REALIZE YOU DON'T HAVE -- WE HAVE WATER.  WE ALSO
 3   HAVE SOME SODAS IF YOU'D LIKE.
 4          MS. KREVANS:  THANK YOU, YOUR HONOR.
 5          THE COURT:  I DON'T WANT ANYONE TO FAINT.
 6          MS. KREVANS:  WE ACTUALLY BROUGHT A BOX OF WATER
 7   BOTTLES.
 8          MR. ANDERSON:  WE DID THE SAME.
 9          THE COURT:  WE ALSO HAVE SOME LEFTOVER CAFFEINATED
10   DRINKS FROM OUR LAST JURY.  IT WAS JUST IN SEPTEMBER, SO
11   THEY'RE NOT TERRIBLY OLD.  BUT I'M HAPPY TO SHARE THOSE.
12      OKAY.  LET ME ASK -- I NEED TO -- OBVIOUSLY I NEED TO LOOK
13   AT THE PROFFER AND LOOK AT YOUR RESPONSE, AND I HEAR YOUR POINT
14   ABOUT OPENING UP THE FLOODGATES AND SATELLITE LITIGATION, BUT
15   LET ME ASK, IF I WERE TO ALLOW HTC, WHO WOULD YOU NEED TO
16   RESPOND?  ANOTHER DEPOSITION?  WHAT WOULD YOU -- OR DO YOU WANT
17   TO INCLUDE THAT IN YOUR RESPONSE ON WEDNESDAY?
18          MR. MCELHINNY:  IT WOULD BE MORE EFFICIENT IF WE
19    INCLUDED IT IN OUR REPLY.
20          THE COURT:  THAT'S FINE.
21      ALL RIGHT.  THE COMPETITIVE ANALYSIS, LET ME ASK
22   SAMSUNG --
23          MR. MCELHINNY:  EXCUSE ME, YOUR HONOR.  I HAVE BEEN
24    CRITICIZED BY ONLY ASKING FOR TWO PAGES.  IT TURNS OUT WE
25    ACTUALLY WILL NEED THE THREE.
```

1          THE COURT:  THAT'S FINE.

2          MR. MCELHINNY:  THANK YOU.

3          THE COURT:  OKAY.  WITH REGARD TO APPLE'S COMPETITIVE

4    ANALYSIS, LET ME ASK SAMSUNG, WHAT IS THE PURPOSE FOR WHICH YOU

5    WANT TO INTRODUCE THAT?  JUST TO SAY EVERYBODY DOES

6    COMPARISONS?  IS THAT --

7          MS. MAROULIS:  YOUR HONOR, IF APPLE IS GOING TO

8    PRESENT A CASE WHERE THEY'RE GOING TO PRESENT INTERNAL ANALYSES

9    FROM SAMSUNG, IT WOULD BE USEFUL TO SHOW THE JURY THAT IT'S

10   VERY COMMON AND THAT APPLE HAS STUDIED SAMSUNG'S PRODUCTS AND

11   OTHER PRODUCTS OF OTHER COMPANIES AS WELL.

12       IT WOULD BE UNFAIR TO ONLY HAVE SAMSUNG'S INTERNAL

13   ANALYSES, BUT NOT TO SHOW THE JURY THAT APPLE DOES IT AND THAT

14   WHEN APPLE DOES IT, THEIR WITNESSES EXPLAINED THAT THEY THOUGHT

15   THAT IT WAS PERFECTLY NORMAL, FINE, AND DID NOT HAVE ANY BAD

16   INTENT.

17         MR. MCELHINNY:  THIS IS WRONG FOR TWO REASONS.  ONE,

18   IT'S THE NON-SYMMETRICALITY ARGUMENT THAT MR. LEE RAISED THIS

19   MORNING, WHICH IS WE'RE GOING TO PUT IN EVIDENCE THAT SHOWS

20   THAT SAMSUNG ACKNOWLEDGED THE DEMAND FOR THE IPHONE AND FOR THE

21   SPECIFIC INFRINGING DEVICES.

22         THE COURT:  UM-HUM.

23         MR. MCELHINNY:  THE FACT THAT APPLE DOES COMPETITIVE

24   ANALYSIS HAS NOTHING TO DO WITH THAT ISSUE WHATSOEVER.  WE'RE

25   NOT INTERESTED IN DEMAND FOR THE SAMSUNG PHONE OR OTHER PHONES

1    OR WHATEVER.

2         SO THAT DOESN'T.

3         AND SIMILARLY, IF, IN FACT, HERE SAMSUNG FOCUSSED ON

4    PARTICULAR PHONES, PARTICULAR -- AND THEN ACTUALLY INCORPORATED

5    THAT INTO THE DEVICES, WHICH IS THE CHAIN OF EVIDENCE, THE FACT

6    THAT APPLE DOES COMPETITIVE ANALYSIS DOESN'T REBUT THAT.

7         MS. MAROULIS:  YOUR HONOR, MR. PRICE ILLUSTRATED TO

8    THE COURT HOW APPLE, LAST TIME, USED THE SO-CALLED COPYING AND

9    ANALYSES DOCUMENTS.  IT WAS TO INFLAME THE JURY TO PRESENT

10   SAMSUNG'S ACTIONS AS WRONG SOMEHOW.

11        APPLE'S DOCUMENTS ARE VERY SIMILAR.  WE SHOULD BE ABLE TO

12   SHOW THEM TO THE JURY TO REBUT APPLE'S ALLEGATIONS OF COPYING.

13        MR. MCELHINNY:  WHOA, WHOA.

14        THE COURT:  THIS IS WHAT I'M GOING TO DO.  I'M GOING

15   TO DENY THIS.  I'LL DO IT WITHOUT PREJUDICE.

16        I DO THINK THAT IT WOULD BE RELEVANT TO REBUT COPYING

17   ALLEGATIONS, BUT I WILL ALSO DO A 403 ANALYSIS AS TO ANY

18   SPECIFIC DOCUMENT.

19        MR. MCELHINNY:  THANK YOU, YOUR HONOR.

20        MS. MAROULIS:  THANK YOU.

21        THE COURT:  ALL RIGHT.  LET'S GO TO THE MOTION TO

22   EXCLUDE THE COURT'S POST-TRIAL RULINGS.  I GUESS IT'S MOSTLY

23   FOCUSSED ON THE PERMANENT INJUNCTION ORDER.

24        DO YOU REALLY NEED THAT?  OR WAS THAT SORT OF A PREEMPTIVE

25   IN CASE -- I MEAN, I --

 1          MR. MCELHINNY:  NO.  WE'RE MOVING TO EXCLUDE IT.

 2          MS. MAROULIS:  YOUR HONOR, IN MS. DAVIS'S REPORT, SHE

 3    RELIED ON VARIOUS PARTS OF THE COURT'S FINDINGS AND MR. WAGNER

 4    SHOULD BE AS WELL, BOTH TO REBUT MS. DAVIS, BUT ALSO TO, YOU

 5    KNOW, FOR OPINIONS OF HIS OWN.

 6          THE COURT:  SO IF DAVIS TAKES IT OUT, THEN CAN WE

 7    JUST --

 8          MR. MCELHINNY:  SHE WON'T.

 9          THE COURT:  CAN WE JUST MUTUALLY TAKE IT OUT OF BOTH

10    EXPERTS' REPORTS AND THIS ISSUE IS MOOTED?

11       (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

12          THE COURT:  I MEAN, I AM INCLINED TO JUST GRANT THIS

13    MOTION.  I DON'T THINK THERE'S ANY NEED TO RELY ON ANY

14    POST-TRIAL RULINGS.

15       BUT FROM WHAT I UNDERSTAND FROM SAMSUNG, THEN, YOU STILL

16    WANT TO RELY ON IT, EVEN IF MS. DAVIS TAKES IT OUT OF HER

17    REPORTS?

18          MS. MAROULIS:  ONE OF THINGS THAT MS. DAVIS DOES IS

19    SHE RELIES ON THE ROBINSON DECLARATION, WHICH WAS SUBMITTED IN

20    THE POST-TRIAL PHASE, SO THAT WE WOULD NEED TO BE ABLE TO

21    CROSS-EXAMINE HER ON THAT AND THEIR ARGUMENTS THEREIN.

22          MR. MCELHINNY:  WELL, I'M TOLD WE'RE NOT RELYING ON

23    THE ROBERTSON DECLARATION, EITHER.

24          THE COURT:  OKAY.  SO IF APPLE DOESN'T RELY ON THE

25    ROBINSON DECLARATION --

```
1              MR. MCELHINNY:  I THINK IT'S ROBERTSON.

2              MS. KREVANS:  ROBERTSON.

3              THE COURT:  THE ROBINSON DECLARATION.

4              MR. MCELHINNY:  ROBERTSON.

5              THE COURT:  OH, EXCUSE ME, ROBERTSON.

6          -- WOULD THAT ADDRESS YOUR CONCERN?

7              MS. MAROULIS:  ONE MINUTE, YOUR HONOR.  I'M SORRY.

8          (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

9              MR. MCELHINNY:  YOU WERE RIGHT.  I WAS WRONG.  I'M

10     SORRY.  IT IS ROBINSON.

11             MS. MAROULIS:  YES, YOUR HONOR, IT WAS THE ROBINSON

12     DECLARATION.

13         THERE WAS ALSO A SEPARATE ROBERTSON DECLARATION.

14         BUT WE'RE TALKING ABOUT THE MARYLEE ROBINSON DECLARATION,

15     WHICH WAS SUBMITTED POST-TRIAL, AND MS. ROBINSON FOLLOWED

16     MR. MUSIKA'S COMPANY THAT WE UNDERSTAND ASSISTED MS. DAVIS WITH

17     THE REPORT, AND WE WOULD LIKE TO BE ABLE TO CROSS-EXAMINE

18     MS. DAVIS WITH THE ROBINSON DECLARATION.

19             MR. MCELHINNY:  THAT'S -- WHAT'S A POLITE WORD FOR

20     THAT?  AT 5:30, THE CONCEPT THAT THEY'RE GOING TO

21     CROSS-EXAMINATION OUR DAMAGES EXPERT WITH A DECLARATION DONE BY

22     SOMEBODY ELSE WHO WORKS AT A COMPANY THAT WAS SUBMITTED IN

23     OPPOSITION TO A POST -- TO A PRELIMINARY INJUNCTION MOTION ON

24     WHETHER THERE'S IRREPARABLE HARM, I --

25             THE COURT:  YEAH, OKAY.  WELL, THE MOTION IS GRANTED
```

1        TO EXCLUDE EXHIBITS RELATED TO ANY POST-TRIAL RULINGS OF THE

2        COURT.  THAT'S GRANTED.

3             OKAY.  NOW, WITH REGARD TO THE MOTION TO EXCLUDE WAGNER'S

4        DAMAGES SUMMARIES, IT'S NOT CLEAR WHAT THE RELATIONSHIP IS

5        BETWEEN THIS MOTION AND APPLE'S MOTION TO STRIKE PORTIONS OF

6        MR. WAGNER'S SUPPLEMENTAL DAMAGES REPORT.

7             IS THIS MOOTED BY THE MOTION TO STRIKE?  DO YOU NEED A

8        SEPARATE RULING ON THIS, OR NOT?

9             MR. MCELHINNY:  NO.  THEY ARE -- THESE ARE THE

10       EXHIBITS IN WHICH HE ILLUSTRATES THE NEW THEORIES WHICH WE HAVE

11       ALSO MOVED TO STRIKE FROM HIS REPORT.

12            THE COURT:  OKAY.  SO THIS IS LARGELY DUPLICATIVE?  I

13       DON'T NEED TO RULE ON IT SEPARATELY?

14            MR. MCELHINNY:  THEY WOULD RISE AND FALL TOGETHER.

15            THE COURT:  OKAY.  SO THEN I'M JUST GOING TO DENY

16       THIS ONE AS MOOT THEN AND GIVE YOU A RULING ON THE MOTION TO

17       STRIKE.

18            MR. MCELHINNY:  THANK YOU, YOUR HONOR.

19            MS. MAROULIS:  THANK YOU.

20            THE COURT:  OKAY.  NOW, WITH REGARD TO WHEN THE

21       DESIGN AROUND PERIOD STARTS, I HAVE BEEN PERSUADED BY SAMSUNG

22       THAT THAT SHOULD START AT THE DATE OF FIRST INFRINGEMENT RATHER

23       THAN THE DATE OF NOTICE.

24            OTHER THAN GRAIN PROCESSING, IS THERE ANYTHING ELSE THAT

25       APPLE WANTS TO RELY ON ON THIS POINT?  THIS IS ONE OF THE ONES

1    WHERE THE LAW IS, I THINK, COMPLICATED ENOUGH WHERE I'M GOING

2    TO HAVE TO GIVE YOU A WRITTEN ORDER.

3            MR. LEE:  YOUR HONOR, THERE ARE, I THINK, TWO

4    QUESTIONS HERE.  I KNOW IT'S LATE, BUT THIS IS AN IMPORTANT

5    ISSUE.  AS MR. PRICE DESCRIBED IT, IT'S A $300 MILLION ISSUE,

6    SO IF I COULD GET YOUR HONOR'S INDULGENCE FOR A FEW MINUTES?

7    THIS ISSUE TENDS TO RISE AT 5:30 EVERY TIME WE'RE BEFORE YOUR

8    HONOR.

9            YOUR HONOR, THERE'S A THRESHOLD ISSUE OF WHETHER THIS IS

10   A LEGAL ISSUE OR A FACTUAL ISSUE.  WE SAY IT'S A FACTUAL ISSUE.

11           THEY CAN MAKE THEIR CONTENTION THAT THE DESIGN AROUND

12   PERIOD SHOULD BEGIN AT THE DATE OF INFRINGEMENT, BUT IT'S NOT A

13   LEGAL ISSUE.  THAT'S THE STARTING POINT.

14           AND I THINK, QUITE HONESTLY, YOUR HONOR, TO INVITE YOU TO

15   FIND IT TO BE A LEGAL ISSUE, IT'S AN INVITATION TO A

16   $300 MILLION ERROR, AND I'LL GIVE YOU THE BEST INDICATION WHY.

17           IF YOU LOOK AT GRAIN PROCESSING, AND IN PARTICULAR AT

18   SECTION 3, WHICH SPECIFICALLY TURNS TO THE ISSUES WHICH WERE

19   ADDRESSED WITH YOUR HONOR LAST TIME, YOU WILL SEE THE COURT

20   VERY EXPLICITLY SAYS, "WE'RE REVIEWING THE FACTS," AND THEN IT

21   SAYS, "WE'RE REVIEWING THESE FACTUAL FINDINGS FOR CLEAR ERROR."

22           IF THIS WERE A LEGAL ISSUE, AS SAMSUNG HAS URGED YOU TO

23   DECIDE IT, IT WOULD HAVE BEEN DECIDED AS A LEGAL ISSUE AND THE

24   DATE OF INFRINGEMENT WOULD HAVE BEEN DETERMINED AS A LEGAL

25   MATTER TO BE WHEN THE DESIGN AROUND PERIOD COMMENCES.

1      WHAT GRAIN PROCESSING SAYS IS IT'S A FACTUAL ISSUE.

2  "WE'RE GOING TO REVIEW IT AS A FACTUAL ISSUE FOR CLEAR ERROR,

3  AND HERE'S WHAT WE FIND."

4      "THE RELEVANT PERIOD IS THE ACCOUNTING PERIOD," IN THE

5  VERY NEXT SENTENCE, AND THE QUESTION IS, WERE THERE

6  NON-INFRINGING SUBSTITUTES IN THE ACCOUNTING PERIOD?  AND AS

7  THE OPINION GOES ON, YOUR HONOR, IT IS FACTS THAT DETERMINE THE

8  ISSUE IN THAT CASE.

9      AND IN FACT, ON THE VERY NEXT PAGE, YOUR HONOR, THEY SAY,

10  "IN THIS PARTICULAR CASE, THE DESIGN AROUND PERIOD WAS

11  VIRTUALLY NON-EXISTENT.  SO WHEN INFRINGEMENT STARTED AS A

12  FACTUAL MATTER, YOU COULD HAVE DESIGNED AROUND IT IMMEDIATELY."

13      BUT THERE ARE THREE IMPORTANT ASPECTS -- AND I THINK THE

14  CALLAWAY CASE THAT WE CITED TO YOUR HONOR FROM DELAWARE IS

15  CONSISTENT.  IT'S NOT A LEGAL ISSUE.  IT'S A FACTUAL ISSUE.

16      AND ALL YOU HAVE TO DO IS LOOK AT GRAIN PROCESSING AND

17  LOOK AT THE STANDARD OF REVIEW THAT THE FEDERAL CIRCUIT

18  APPLIED, CLEAR ERROR.

19      THE SECOND THING, YOUR HONOR, IS IF YOU LOOK AT HOW IT WAS

20  DECIDED, IT'S DECIDED AS A FACTUAL ISSUE FOR CLEAR ERROR, AND

21  ON THE FACTS OF THAT CASE, THEY DECIDED THAT THE DESIGN AROUND

22  PERIOD WAS VIRTUALLY NON-EXISTENT BECAUSE IT WOULD COMMENCE

23  SIMULTANEOUSLY WITH THE ACCOUNTING PERIOD.

24      THE ACCOUNTING PERIOD, YOUR HONOR, GRAIN PROCESSING SAYS,

25  IS THE PERIOD DURING WHICH DAMAGES ARE CLAIMED.

1          THE THIRD POINT IS THIS, YOUR HONOR:  THE DAMAGES LAW THAT

2     YOUR HONOR HAS BEEN ADDRESSING IN THIS CASE AND IN OTHER CASES

3     BEFORE YOU FROM THE FEDERAL CIRCUIT -- AND THERE'S BEEN A LOT

4     OF IT RECENTLY, RESQNET IS A GOOD EXAMPLE -- ALL HAVE BEEN

5     DESIGNED TO MAKE THE DAMAGES LAW MORE CONSISTENT WITH ECONOMIC

6     REALITY.

7          AND TO PUT IT IN THE STARKEST TERMS POSSIBLE -- AND THIS

8     IS WHY IT'S IMPORTANT THAT IT'S A FACTUAL ISSUE -- MR. WAGNER'S

9     DAMAGES --

10          THE COURT:  AND WHAT IS THE FACTUAL QUESTION HERE?

11          MR. LEE:  HERE'S THE FACTUAL QUESTION, YOUR HONOR:

12     THEY WANT THE DESIGN AROUND PERIOD TO BEGIN ON THE DATE OF

13     INFRINGEMENT RATHER THAN THE DATE OF NOTICE.  THE DESIGN AROUND

14     PERIODS ARE RELATIVELY SHORT BY AGREEMENT, SO WHAT WE'RE SAYING

15     IS, IF THE DESIGN AROUND PERIOD BEGAN BEFORE THE DATE OF

16     NOTICE, THERE ARE NO LOST PROFITS.

17          THAT'S WHY THE DOLLAR NUMBERS THAT ARE ATTACHED TO THIS

18     ARE SO SIGNIFICANT.

19          THE ISSUE FOR THE JURY ON THE FACTUAL ISSUE IS WHEN THEY

20     SIT IN THE BOX, WHO DO THEY ACTUALLY THINK IS ADOPTING A MORE

21     REASONABLE POSITION?  MS. DAVIS, WHO SAYS, CONSISTENTLY WITH

22     WHAT MR. MUSIKA SAID, THAT THE DESIGN AROUND PERIOD BEGINS WHEN

23     THERE'S BOTH INFRINGEMENT AND NOTICE, THAT'S WHAT HE SAID IN

24     HIS --

25          THE COURT:  BUT HOW IS THAT A FACTUAL QUESTION FOR

1    THE JURY?  WHAT IS SUPPOSED TO HELP THEM DECIDE WHEN THE DESIGN

2    AROUND PERIOD STARTS?

3         MR. LEE:  YOUR HONOR, HERE'S WHAT -- THE

4    CROSS-EXAMINATION, WHICH HAS OCCURRED IN THE DEPOSITIONS, WILL

5    BE THIS:  MR. WAGNER IS GOING TO TAKE THE POSITION THAT THE

6    DESIGN AROUND PERIOD WOULD START BEFORE SAMSUNG KNEW OF THE

7    PATENT.  THE JURY CAN DECIDE WHETHER THAT IS A RATIONAL AND

8    BELIEVABLE POSITION.

9         MS. DAVIS IS GOING TO TAKE THE POSITION, CONSISTENT WITH

10   WHAT MR. MUSIKA SAID, THAT, NO, REAL WORLD ECONOMIC REALITY AND

11   GRAIN PROCESSING WOULD SAY YOU'RE GOING TO BEGIN THE DESIGN

12   AROUND AFTER YOU HAVE NOTICE AND AFTER YOU'RE INFRINGING.

13        TO BE REALLY CLEAR, YOUR HONOR, WHAT THEY'RE ASKING YOU TO

14   DO, AND I CAN USE ONE OF THEIR SLIDES, IF I COULD --

15        THE COURT:  BUT, YOU KNOW, WITH THE REASONABLE

16   ROYALTY, IT'S DATE OF FIRST INFRINGEMENT AS WELL.  IT SEEMS

17   LIKE THERE ARE OTHER INSTANCES --

18        MR. LEE:  YOUR HONOR, THERE IS.  BUT -- AND THIS IS

19   WHEN IT WAS LATE IN THE DAY LAST THURSDAY.

20        THE COURT:  YEAH.

21        MR. LEE:  THIS IS A HYPOTHETICAL NEGOTIATION THAT

22   OCCURS FOR REASONABLE ROYALTY PURPOSES UNDER GEORGIA PACIFIC.

23   THERE'S SOME CONCERN ABOUT WHETHER THAT EVEN IS A

24   COMMONSENSICAL WAY TO DO IT TODAY.

25        THERE'S NO HYPOTHETICAL NEGOTIATION.

1          THE COURT:  RIGHT.  BUT THEY SAY THE HYPOTHETICAL

2     NEGOTIATION IS THE DATE OF FIRST INFRINGEMENT AND NOT THE DATE

3     YOU GOT NOTICE OF THE I.P.

4          MR. LEE:  FOR REASONABLE ROYALTY PURPOSES.

5          THE COURT:  RIGHT.

6          MR. LEE:  NOW WE'RE DEALING WITH LOST PROFITS.

7          AND IF YOU LOOK AT THEIR SLIDE NUMBER 5, WHICH ACTUALLY

8     MAY BE THE MOST HELPFUL, THIS WILL BOTH DESCRIBE TO YOU THE

9     CONSEQUENCES OF WHAT THEY'RE URGING, BUT I'M GOING TO USE THEIR

10    OWN WORDS.

11         YOU'LL SEE, IF WE START AT THE TOP, THEY HAVE A DESIGN

12    AROUND PERIOD THAT BEGINS, DATE OF FIRST INFRINGEMENT, 1979,

13    AND AN ACCOUNTING PERIOD THAT BEGINS LATER, AND THEY SAY THAT

14    MEANS NO DAMAGES.  RIGHT?

15         WELL, YOUR HONOR, WHAT GRAIN PROCESSING SAYS IS THERE IS

16    SOMETHING CALLED THE ACCOUNTING PERIOD.  THE ACCOUNTING PERIOD

17    IS THE PERIOD DURING WHICH YOU CAN CLAIM DAMAGES, AND THAT'S

18    WHEN THE RELEVANT DESIGN AROUND PERIOD IS.

19         THE COURT:  WELL, IT JUST MEANS NO LOST PROFITS,

20    RIGHT?  IT DOESN'T MEAN YOU CAN'T GET REASONABLE ROYALTY, OR

21    IT -- IT DOESN'T MEAN NO DAMAGES, RIGHT?

22         MR. LEE:  NO.  BUT, YOUR HONOR, GO BACK TO WHERE I

23    STARTED EARLIER WITH YOU TODAY WHERE WE WERE TALKING ABOUT

24    ACCEPTABLE NON-INFRINGING SUBSTITUTES.  THE QUESTION HERE IS,

25    BUT FOR THE INFRINGEMENT BY THE DEFENDANT, WOULD WE HAVE MADE

1    THE SALES?

2              THE COURT:  UM-HUM.

3              MR. LEE:  THIS IS WHAT THIS IS ALL DIRECTED TO.

4         WHETHER THERE ARE ACCEPTABLE NON-INFRINGING SUBSTITUTES

5    DURING THE ACCOUNTING PERIOD IS WHAT THIS IS ALL ABOUT.

6         THE IDEA -- WHAT THEY'RE TRYING TO URGE UPON YOUR HONOR

7    IS, AS A MATTER OF LAW, YOU SHOULD DECIDE THAT THE DATE OF

8    INFRINGEMENT, WHICH OCCURS BEFORE NOTICE, BEFORE THE ACCOUNTING

9    PERIOD, IS WHEN THE DESIGN AROUND PERIOD STARTS, EVEN THOUGH

10   THAT WOULD NEVER HAPPEN IN THE REAL WORLD, AND, THEREFORE, IT

11   WOULD HAVE BEEN DESIGNED AROUND BEFORE YOU GET TO THE

12   ACCOUNTING PERIOD.

13        THAT'S NOT -- IT'S NOT CONSISTENT WITH THE BUT FOR

14   ANALYSIS.  IT'S NOT EVEN ANSWERING THE QUESTION THAT'S BEING

15   ASKED.

16        THE QUESTION IS, IF THEY HADN'T INFRINGED, WOULD WE HAVE

17   MADE THE SALES?

18        AND THE FACTUAL QUESTIONS ARE, WERE THERE ACCEPTABLE,

19   NON-INFRINGING SUBSTITUTES DURING THE ACCOUNTING PERIOD?

20        HOW LONG IS THE DESIGN AROUND PERIOD?  BECAUSE THAT WILL

21   DETERMINE, FOR THE ACCOUNTING PERIOD, HOW LONG THERE WERE NO

22   NON-INFRINGING SUBSTITUTES.

23        THAT'S WHAT GRAIN PROCESSING IS TALKING ABOUT.  BUT IN

24   GRAIN PROCESSING, THEY BASICALLY SAID THE DESIGN AROUND IS

25   GOING TO BE AVAILABLE IMMEDIATELY.

1    HERE IT'S A PERIOD OF WEEKS AND MONTHS.

2    BUT WHAT THE JURY IS GOING TO -- WHAT THE JURY SHOULD

3    DETERMINE AS A FACTUAL MATTER, NOT AS A LEGAL MATTER, IS SIMPLY

4    DOES, RIGHT, DOES IT MAKE SENSE TO IDENTIFY NON-INFRINGING

5    SUBSTITUTES AT A PERIOD OF TIME BEFORE THE ACCOUNTING PERIOD

6    HAS STARTED?

7    OR DOES IT MAKE MORE SENSE, BOTH AS A MATTER OF LOGIC AND

8    A MATTER OF FACT, TO HAVE THE DESIGN AROUND PERIOD START ON THE

9    DATE THAT THE ACCOUNTING -- THE DATE OF NOTICE?  THAT WOULD

10   CARVE OUT A PERIOD OF TIME WHEN THERE ARE NO NON-INFRINGING

11   SUBSTITUTES.

12   AND WHAT MS. DAVIS SAYS IS -- AND SHE'S NOT A LAWYER, SO

13   SHE'S NOT DOING THE LEGAL INTERPRETATION -- SHE'S SAYING, AS

14   MR. MUSIKA DID, AND THIS IS WHAT HE DID IN PARAGRAPH 129 --

15           THE COURT:  UM-HUM.

16           MR. LEE:  -- HE SAID, "I'M GOING TO SAY IT'S THE

17   LATER OF INFRINGEMENT AND NOTICE."  IT'S EXPLICIT IN HIS

18   REPORT.  AND THAT'S WHAT HE DID.

19   NOW, YOUR HONOR KNOWS THAT THE PROBLEM YOU IDENTIFIED FOR

20   US IS THAT IN THAT OCCASION, NOTICE PRE-DATED -- I MEAN, NOTICE

21   PRE-DATED INFRINGEMENT.

22   NOW INFRINGEMENT IS GOING TO PRE-DATE NOTICE UNDER THE

23   NOTICE DATES THAT YOUR HONOR HAS ORDERED ON JMOL.

24   SO THE JURY NEEDS TO -- THE JURY WILL HAVE THE CHARGE ON

25   THE PANDUIT FACTORS, IT WILL HAVE A GRAIN PROCESSING TYPE

1    CHARGE, AND AS A FACTUAL MATTER, THEY HAVE TO DECIDE THIS FACT:

2    WERE THERE ACCEPTABLE NON-INFRINGING SUBSTITUTES DURING THE

3    ACCOUNTING PERIOD?  THAT'S A FACT THEY'RE GOING TO DECIDE.

4         AND WHEN THEY DECIDE IT, THEY WILL LOOK AT WHAT MS. DAVIS

5    HAS SAID ABOUT WHEN THE DESIGN AROUND PERIOD STARTS, HOW LONG

6    IT WOULD BE, AND BOTH SHE AND MR. WAGNER ARE RELYING UPON

7    OTHERS FOR SOME OF THAT INFORMATION, AND SHE SAYS HERE ARE THE

8    DATES, HERE ARE THE PERIODS OF TIME.

9         BUT TO HAVE IT DECIDED AS A MATTER OF LAW, WHICH I DON'T

10   THINK SAMSUNG ASKED YOU TO DO IN THE FIRST TRIAL, YOU WEREN'T

11   ASKED TO DECIDE IN THE FIRST TRIAL THAT IT WAS THE DATE OF

12   INFRINGEMENT, SO WHAT THEY'RE TRYING TO DO NOW IS TO HAVE YOU

13   MAKE A LEGAL RULING ON A FACTUAL QUESTION, TAKE IT OUT OF THE

14   JURY'S HANDS, TAKE $300 MILLION AWAY FROM THE JURY'S DECISION,

15   AND THAT'S NOT WHAT GRAIN PROCESSING SAYS.

16        AND, YOUR HONOR, I COULDN'T -- I DON'T THINK YOU COULD SAY

17   IT ANY MORE -- THAT YOU COULD IDENTIFY IT ANY MORE CLEARLY THAN

18   THAT IF YOU JUST LOOK AT HOW THE COURT OF APPEALS CHARACTERIZED

19   THE ISSUE AND THE FACT THAT THEY REVIEWED IT AS A FACTUAL

20   MATTER.

21        IF THIS WERE A LEGAL ISSUE, THEY WOULD HAVE SAID, "AS A

22   MATTER OF LAW, THE DESIGN AROUND PERIOD BEGINS ON THE DATE OF

23   INFRINGEMENT."

24        IF THIS WERE A -- IF SAMSUNG WERE CORRECT, THE STATEMENT

25   THEY MAKE ABOUT THE DESIGN AROUND, HOW LONG IT WOULD TAKE AND

1    HOW IT WOULD BE COINCIDENT WITH THE BEGINNING OF THE ACCOUNTING

2    PERIOD WOULD BE IRRELEVANT.  THEY WOULDN'T HAVE HAD TO DECIDE

3    ANY OF THAT UNLESS IT'S A FACTUAL MATTER.

4         AND CALLAWAY DEALT WITH IT AS A FACTUAL MATTER.

5              MR. PRICE:  MY HEAD IS SPINNING, AND I MUST ADMIT, I

6    GENUINELY DO NOT UNDERSTAND THE ARGUMENT AND I'M KIND OF

7    AWESTRUCK, BECAUSE LAST WEEK MR. MCELHINNY, TO AVOID YOUR

8    EXCLUSION OF MR. MUSIKA'S CALCULATIONS, SAID THAT THIS IS NOT

9    A -- SAID -- DIDN'T SAY THIS WAS A FACTUAL ISSUE.  HE SAID IT'S

10   A LEGAL ISSUE.

11             MR. LEE:  NO.  ACTUALLY, IF YOU LOOK AT IT, HE SAID

12   THERE'S A LEGAL ASPECT TO IT, AND HE SAID JUST TWO SENTENCES

13   LATER, IT'S A FACTUAL ISSUE.  SAME PAGE OF THE TRANSCRIPT.

14             MR. PRICE:  HE SAYS -- AND I DON'T MIND IF MR. LEE

15   READS ANYTHING AFTER THIS -- "BUT THE QUESTION HERE IS THE

16   LEGAL QUESTION OF WHAT IS THE TRIGGER DATE FOR THAT."  THAT'S A

17   TRIGGER DATE FOR THE DESIGN AROUND.

18        YOU AGREE WITH ME THAT'S WHAT HE'S TALKING ABOUT, THE

19   TRIGGER DATE?

20             MR. LEE:  CAN WE GO TO THE NEXT --

21             THE COURT:  LET ME ASK YOU A QUESTION.  THIS ONE IS A

22   REALLY TOUGH QUESTION AND I DON'T THINK THE LAW IS SUPER CLEAR

23   AND THERE ARE WAYS THAT YOU COULD ARGUE GRAIN PROCESSING AND

24   POWER INTEGRATION WERE KIND OF -- IN DIFFERENT WAYS AND TRY TO

25   DISTINGUISH IT, WHETHER IT'S PRICE EROSION OR SOME OTHER

1   SITUATION.

2         UNFORTUNATELY, I THINK THIS ONE IS COMPLICATED ENOUGH THAT

3   I PROBABLY NEED TO GIVE YOU A WRITTEN RULING ON MY REASONS TO

4   MAKE IT A MORE CLEAR RECORD FOR APPELLATE REVIEW.

5         WOULD IT -- NOT THAT I WANT TO GENERATE MORE PAPER, BUT

6   WOULD THIS BE ONE THAT WOULD BE HELPFUL FOR YOU TO HAVE TWO

7   PAGES TO, IF, YOU KNOW, YOUR THOUGHTS ON THESE HAVE --

8         MR. PRICE:  I --

9         MR. LEE:  YES.

10        THE COURT:  OR NOT?

11        MR. PRICE:  I THINK WE FULLY BRIEFED IT.  I'D BE GLAD

12  TO DISCUSS HOW WE THINK WE HAVE.

13        THE COURT:  UM-HUM.

14        MR. PRICE:  IF APPLE WANTS TO FILE TWO PAGES, WE CAN

15  FILE TWO PAGES.  I DON'T --

16        MR. LEE:  YOUR HONOR -- YOUR HONOR, I -- WE WOULD

17  LIKE TO HAVE TWO PAGES.

18        WE AGREE WITH YOU.  IF THERE WERE PERFECT CLARITY ON THE

19  ISSUE, IF ONE OF US WOULD TELL YOU THERE'S PERFECT CLARITY, I

20  THINK WE CAN DEMONSTRATE TO YOUR HONOR THAT THIS IS AN ISSUE

21  THAT SHOULD NOT BE TAKEN AWAY FROM THE JURY NOW, BUT THEY

22  SHOULD BE ALLOWED TO DECIDE.

23        POWER INTEGRATION, QUITE APART FROM BEING --

24        THE COURT:  I GUESS I'M STILL CONFUSED, THOUGH.  IT

25  DOES SEEM LIKE IT'S A LEGAL MATTER OF WHEN, WHEN THE TRIGGER

1    FOR DESIGN AROUND SHOULD BE.  UNLESS YOU'RE SAYING --

2         MR. LEE:  YOUR HONOR, THIS -- WE'RE NOW PHRASING THE

3    QUESTION NOT AS THE FEDERAL CIRCUIT HAS RAISED IT, BUT AS

4    SAMSUNG HAS TRIED TO CHARACTERIZE IT FOR YOU, AND THE QUESTION

5    IS, DURING THE ACCOUNTING PERIOD, ARE THERE ACCEPTABLE,

6    NON-INFRINGING SUBSTITUTES?  THAT'S THE QUESTION, NOT THE

7    QUESTION THAT THEY'VE PHRASED TO YOU.

8         SO THEN THE QUESTION BECOMES, OKAY, IF YOUR EXPERT IS

9    GOING TO GIVE AN OPINION ON WHETHER THERE WAS AN ACCEPTABLE

10   NON-INFRINGING SUBSTITUTE, RIGHT, WHEN DOES THAT ANALYSIS

11   BEGIN?

12        AND THAT IS A FACTUAL QUESTION.  IT WAS A FACTUAL QUESTION

13   IN THE FIRST TRIAL.  NO ONE ASKED YOUR HONOR TO TAKE THIS AWAY

14   FROM THE JURY IN THE FIRST TRIAL.

15        AND THAT'S NOT A COINCIDENCE.  THIS IS AN ARGUMENT THAT'S

16   BEING MADE, AND I WOULD LIKE TO HAVE THE TWO PAGES.  IF I HAD

17   MR. PRICE'S HEAD SPINNING, MAYBE THE TWO PAGES WILL LET ME DO

18   IT A LITTLE MORE CLEARLY.

19        MR. PRICE:  YOUR HONOR, IF I CAN ARGUE SOME OF THIS

20   NOW, EVEN THOUGH IT'S LATE?

21        FIRST OF ALL, IF THIS IS A FACTUAL ISSUE, AND I REFER YOU

22   TO OUR SLIDE 1, THEN YOU'VE ALREADY EXCLUDED THIS BECAUSE

23   MR. MUSIKA WAS AN ACCOUNTANT, HE'S NOT AN EXPERT, NEITHER IS

24   THE CURRENT EXPERT, HE'S NOT AN EXPERT IN ECONOMICS, BUT AN

25   ACCOUNTANT, AS IS MS. DAVIS.

1          HIS ROLE, AND HER ROLE, WERE TO MAKE CALCULATIONS GIVEN

2     ASSUMPTIONS --

3               THE COURT:  UM-HUM.

4               MR. PRICE:  -- THAT WERE PROVIDED BY COUNSEL.

5          AT THE TIME THAT MR. MUSIKA DID HIS REPORT, HE KNEW OF

6     WHAT WE SHOW HERE, THE FOLLOWING ASSUMPTIONS THAT COULD BE MADE

7     ABOUT WHEN YOU WOULD LOOK AT THE DESIGN AROUND DATE.

8          HE KNEW -- HE COULD USE FIRST INFRINGEMENT, WHICH WAS THE

9     EARLIEST POSSIBLE; APPLE'S CONTENTIONS ABOUT NOTICE; SAMSUNG'S

10    CONTENTION ABOUT NOTICE; OR THE FILING OF THE COMPLAINTS, WHICH

11    WAS THE LATEST POSSIBLE.

12         HE KNEW AT THE TIME HE DID HIS REPORT THAT HE COULD GIVE

13    YOU NUMBERS BASED ON ANY OF THESE ASSUMPTIONS, BECAUSE CLEARLY

14    HE, AND MS. DAVIS, AREN'T QUALIFIED AS ACCOUNTANTS TO GIVE YOU

15    AN ACTUAL OPINION ON WHAT THE LAW REQUIRES YOU TO LOOK AT.

16         THE ONLY CALCULATION HE DID THAT HE PRESENTED IN HIS

17    REPORT WAS FIRST INFRINGEMENT, AND SO WHEN HE TRIED TO ADD

18    CALCULATIONS USING SAMSUNG'S CONTENTIONS ABOUT NOTICE, YOU

19    SAID, "NO, YOU CAN'T DO THAT."

20         SO, YOU KNOW, THESE EXPERTS ARE NOT INDUSTRY EXPERTS.

21    THEY'RE NOT LEGAL EXPERTS.  THEY ARE ACCOUNTANTS LOOKING AT

22    DATA AND THEN COMING UP WITH WHAT THEY THINK ARE REASONABLE

23    ACCOUNTINGS OF WHAT, YOU KNOW, OF WHAT THE DATA SHOULD BE, OR

24    WHAT THE LOST PROFITS ARE.

25               THE COURT:  UM-HUM.

1          MR. PRICE:  MS. DAVIS HAS MADE THAT SAME CALCULATION.

2     SHE -- I MEAN, SHE'S BOTH MADE A CALCULATION BASED ON FIRST

3     INFRINGEMENT, I BELIEVE, AND ON THE ACTUAL NOTICE.

4          SO SHE'S DOING THE SAME THING MR. MUSIKA IS TRYING TO DO,

5     TRIED TO DO AND THAT YOU PREVENTED.

6          THEY KNEW ABOUT THESE POSSIBLE ASSUMPTIONS TO MAKE.

7          I DON'T THINK EITHER OF THEM, MR. MUSIKA OR MS. DAVIS, CAN

8     SAY, AS A MATTER OF LAW, THIS IS WHERE YOU FOCUS YOUR ANALYSIS.

9          NOW, SURELY THE JURY CAN CONCLUDE THERE ARE NO, YOU KNOW,

10    THERE ARE NO REASONABLE ALTERNATIVES.  THAT WOULD BE A LITTLE

11    ODD BECAUSE MR. MUSIKA, YOU KNOW, SAID THAT IN HIS ANALYSIS,

12    AND MS. DAVIS, BOTH HAVE ABOUT 80 PERCENT OF THE PEOPLE WHO

13    BOUGHT THE SAMSUNG PHONES GOING TO SOMEONE OTHER THAN APPLE.  I

14    MEAN, THAT'S PART OF THEIR ANALYSIS.  AND THEY SAY THEY'RE

15    BEING CONSERVATIVE, SO I REALLY DON'T THINK THERE'S A DISPUTE

16    THAT THERE ARE NON-INFRINGING ALTERNATIVES.

17         THE QUESTION IS WHETHER OR NOT, YOU KNOW, HOW MANY PEOPLE

18    ARE GOING TO GO TO THOSE ALTERNATIVES VERSUS APPLE.

19         BUT THE QUESTION OF WHAT DATE YOU LOOK AT, YOU KNOW, OR

20    WHEN YOU CAN START DOING THAT DESIGN AROUND, DO YOU HAVE TO

21    WAIT UNTIL YOU'RE GIVEN NOTICE, AS A MATTER OF LAW IS JUST

22    WRONG AND IT MAKES NO SENSE.

23         IN THE GRAIN PROCESSING CASE, IF YOU LOOK AT CHART 4, FOR

24    EXAMPLE, THE DATE OF FIRST INFRINGEMENT WAS FOUND, AS A FACTUAL

25    MATTER, TO BE 1979.  THE TIME TO DESIGN AROUND, TWO WEEKS.

1    FACTUAL MATTER.

2         NOW, HERE THERE'S PRETTY MUCH AGREEMENT AMONG THE EXPERTS,

3    EXCEPT FOR WITH RESPECT TO ONE PATENT, AS TO WHAT THE DESIGN

4    AROUND TIME IS.

5         THE NOTICE DATE IN GRAIN PROCESSING WAS MAY 12TH, 1981.

6         NOW, IN TWO WEEKS YOU'RE GOING TO GET LOST PROFITS.

7    YOU'RE GOING TO LOSE SOME SALES IN TWO WEEKS.

8         BUT THE GRAIN PROCESSING COURT SAID NO LOST PROFITS WAS

9    APPROPRIATE, AND THE ONLY WAY THAT HAPPENS IS IF THAT DESIGN

10   AROUND TIME IS FOCUSSED ON THE TIME OF FIRST INFRINGEMENT,

11   BECAUSE THEN YOU WOULD HAVE DESIGNED AROUND THE TIME -- BEFORE

12   THE TIME THAT YOU WERE ALLOWED TO COLLECT PROFITS BECAUSE YOU

13   DIDN'T GIVE NOTICE.

14        NOW, CERTAINLY FACTUALLY, THE JURY COULD FIND THAT THE

15   DESIGN AROUND PERIOD WOULD TAKE FOUR YEARS.  THEY COULD DO THAT

16   IN THIS CASE, BUT THEY COULD IN SOME OTHER CASE, AND IF THEY

17   DID -- FOR EXAMPLE, IF YOU LOOK AT CHART 5, THAT PURPLE BAR

18   WOULD GO INTO THE GREEN BAR AND THERE WOULD BE SOME PERIOD

19   WHERE YOU COULD -- WHERE THE PLAINTIFF COULD OBTAIN LOST

20   PROFITS.

21        BUT IN GRAIN PROCESSING, THE FACTUAL FINDING -- AND

22   THERE'S -- AND CERTAINLY THE STANDARD OF REVIEW ON THAT IS

23   CLEAR ERROR -- WAS IT'S TWO WEEKS.  AND, THEREFORE, THERE COULD

24   BE NO RECOVERY OF LOST PROFITS BECAUSE THEY AREN'T ALLOWED

25   LEGALLY TO COLLECT LOST PROFITS UNTIL THE ACCOUNTING PERIOD.

1    NOW, HERE'S WHAT HAPPENS IF THE RULE IS ANYTHING ELSE.

2    AND BY THE WAY, YOUR HONOR, YOU DID REFER TO, ALSO TO WANG

3    AND POWER INTEGRATIONS, AND I THINK POWER INTEGRATIONS IS

4    REALLY INSTRUCTIVE BECAUSE IT'S A LOST PROFIT CASE.  IT

5    INVOLVES PRICE EROSION, BUT IT'S A LOST PROFIT CASE, AND THEY

6    DISCUSS TIME AND AGAIN THAT, "LOOK, EVEN THOUGH YOU'RE NOT

7    ALLOWED TO COLLECT LOST PROFITS BECAUSE YOU HAVEN'T GIVEN

8    NOTICE, YOU KNOW, THERE'S STILL INFRINGEMENT."

9    AND SO WHEN YOU'RE LOOKING AT THIS HYPOTHETICAL BUT FOR

10   WORLD, AND WHEN MR. LEE TALKS ABOUT WE'RE LOOKING AT THE REAL

11   WORD, NO, WE'RE NOT.  WE'RE LOOKING AT A HYPOTHETICAL, BUT FOR

12   WORLD.  YOU LOOK AT THE WORLD FROM THE TIME OF INFRINGEMENT,

13   AND THAT'S WHAT POWER INTEGRATIONS SAID WITH RESPECT TO PRICE

14   EROSION.

15   IT'S THE EXACT SAME ANALYSIS HERE.  THIS IS A BUT FOR

16   WORLD.  IT IS WHAT WOULD HAVE HAPPENED, YOU KNOW, IF, AT THE

17   TIME OF INFRINGEMENT, WE HAD HAD THE OPPORTUNITY TO DESIGN

18   AROUND?  WHAT WOULD HAVE HAPPENED?

19   NOW, THE FACTS MIGHT SHOW NOTHING WOULD HAVE HAPPENED,

20   THAT THERE WAS NOTHING OUT THERE.

21   THAT'S NOT GOING TO HAPPEN IN THIS CASE BECAUSE BOTH

22   EXPERTS ASSUMED THERE WAS AND THEY ASSUMED THERE WAS A DESIGN

23   AROUND.

24        THE COURT:  LET ME INTERRUPT YOU JUST ONE SECOND,

25    PLEASE.

1      MR. LEE, YOU WOULD -- LOOKING AT POWERPOINT SLIDE

2      NUMBER 2, YOU WOULD AGREE THAT I DID EXCLUDE THOSE ACTUAL

3      NOTICE OF PATENT DESIGN AROUND START DATES WITH MR. MUSIKA LAST

4      YEAR --

5           MR. LEE:  RIGHT.

6           THE COURT:  -- BECAUSE IT WAS UNTIMELY DISCLOSED?

7           MR. LEE:  BUT, YOUR HONOR, THIS IS -- WE OUGHT TO BE

8      REAL CLEAR ON WHAT'S HAPPENING HERE.  THESE ARE TWO ARGUMENTS

9      THAT COULD HAVE BEEN MADE TO YOUR HONOR ON JMOL AND WIPED OUT

10     THREE-QUARTERS OF THIS RETRIAL.  IF THEY'RE RIGHT ON

11     GRAIN PROCESSING, THAT WOULD HAVE BEEN MADE AT JMOL AND YOU

12     NEVER WOULD HAVE HAD TO RETRY THIS.

13          IF THEY'RE RIGHT ON MR. MUSIKA BEING EXCLUDED, THEY WOULD

14     HAVE MADE IT AT JMOL AND WE NEVER WOULD HAVE HAD THIS RETRIAL.

15          SO WE OUGHT TO BE CLEAR ABOUT WHAT'S GOING ON HERE, AND

16     THIS IS WHAT HAPPENED WHEN YOUR HONOR EXCLUDED IT.

17          FIRST, MR. PRICE, RESPECTFULLY, IS SIMPLY INCORRECT ABOUT

18     WHAT MR. MUSIKA SAID.  IF YOUR HONOR LOOKS AT PARAGRAPH 129 OF

19     HIS REPORT, HE SAYS THAT IN ORDER TO HAVE THE DESIGN AROUND

20     PERIOD START, YOU HAVE TO HAVE BOTH INFRINGEMENT AND NOTICE.

21          THE COURT:  RIGHT.  I REMEMBER SEEING THAT.

22          MR. LEE:  AND SO HE COMPUTED HIS BASED UPON THAT.

23     THIS IS A CASE IN WHICH THE NOTICE, WHICH YOUR HONOR ULTIMATELY

24     FOUND WAS NOT SUFFICIENT, PRE-DATED INFRINGEMENT, AND SO HE

25     USED THE NOTICE DATE.

1    MS. DAVIS HAS USED THE SAME PROTOCOL, WHICH IS YOU HAVE TO

2    HAVE BOTH INFRINGEMENT AND NOTICE, BUT NOW THE NOTICE IS LATER.

3    SHE'S APPLYING EXACTLY THE SAME METHODOLOGY.  YOU HAVE TO HAVE

4    BOTH, AND HE WAS CLEAR ON THAT, AND SHE'S APPLIED IT TO A

5    DIFFERENT SET OF FACTS.

6    YOUR HONOR, WHEN YOU EXCLUDED MR. MUSIKA'S ALTERNATIVE

7    COMPUTATIONS, WHICH YOU DID, HE HAD GIVEN HIS OPINION IN HIS

8    REPORT IN THE VERY WAY IT WENT TO THE JURY.  HE DID PROPOSE AN

9    ALTERNATIVE SET OF COMPUTATIONS BASED UPON MR. WAGNER'S DATE

10   WHICH, INCIDENTALLY, WERE THE DATES YOUR HONOR FOUND TO BE

11   CORRECT WHICH SAMSUNG SAYS NOW ARE NOT THE CORRECT DATES, AND

12   HE SAID, IF YOU ACCEPT WHAT HE SAYS, "HERE'S THE ALTERNATIVE."

13   YOU DID EXCLUDE THEM.

14   BUT THEN WHEN YOU RULED JMOL, YOU SAID, "WHEN HE MADE HIS

15   AFFIRMATIVE PROOF TO THE JURY, HE USED THE WRONG DATE.  HERE

16   ARE THE CORRECT DATES," WHICH IS WHAT YOU SAID IN THE JMOL

17   ORDER.

18   AND THEN YOU SAID, "GIVEN THAT MR. MUSIKA HAS PASSED AWAY,

19   YOU CAN HAVE A REPLACEMENT EXPERT, MS. DAVIS, AND SHE IS TO

20   COMPUTE THE DAMAGES USING THOSE DATES."

21   OF COURSE THEY'RE NOT GOING TO BE IDENTICAL, BUT THEY'RE

22   GOING TO BE -- SOME OF THEM ARE IDENTICAL BECAUSE THE NOTICE

23   DATES ARE THE SAME THAT MR. WAGNER USED.

24   IF THIS WERE A LEGAL ISSUE RATHER THAN A FACTUAL ISSUE, AS

25   IT WAS IN THE FIRST TRIAL, IF THIS WERE -- IF, IN FACT, SHE WAS

1    EXCLUDED FROM DOING A RECOMPUTATION ON THE BASIS OF YOUR

2    CORRECT DATES, THEN JMOL WOULD HAVE BEEN RENDERED.

3         AND AT WHAT -- NO ONE ASKED YOU FOR IT, YOUR HONOR, AND

4    THERE'S A GOOD REASON FOR IT.  NO ONE THOUGHT THIS WAS A LEGAL

5    ISSUE.

6         MR. MCELHINNY, AS WE CITE AND RECALL THE TRANSCRIPT, SAID,

7    YOUR HONOR, LAST WEEK THAT THERE'S A LEGAL ASPECT TO IT, BUT

8    THEN HE QUICKLY SAID, "HERE ARE THE FACTUAL ISSUES THAT HAVE TO

9    BE DECIDED ON THIS ISSUE."

10        AND SO TAKE -- I THINK IF WE LOOK AT WHAT -- YOU KNOW,

11   OFTEN, YOUR HONOR, WHAT PEOPLE DO, RATHER THAN WHAT WE SAY, IS

12   MOST INSTRUCTIVE.  IF THIS REALLY WERE OUT, WOULD WE REALLY

13   HAVE HAD A YEAR OF PROCEEDINGS TO GO AFTER OPINIONS THAT ARE

14   EXCLUDED?  WOULD WE REALLY HAVE HAD A YEAR OF ADDITIONAL

15   DISCOVERY TO GO AFTER OPINIONS THAT ARE IRRELEVANT BECAUSE THIS

16   IS A LEGAL MATTER?

17        THE ANSWER IS NO.  IT'S NOT A COINCIDENCE IT WASN'T MADE

18   THE FIRST TIME.  IT'S NOT A COINCIDENCE IT WASN'T MADE ON JMOL.

19        THE ISSUE IS WHAT GRAIN PROCESSING SAYS IS THE ISSUE, WERE

20   THERE NON-INFRINGING SUBSTITUTES DURING THE ACCOUNTING PERIOD?

21        MR. WAGNER IS GOING TO SAY NO AND EXPLAIN WHY.

22        WE'RE GOING TO SAY THERE WEREN'T FOR A PERIOD OF TIME AND

23   WE'RE GOING TO EXPLAIN WHY.

24        AND THAT'S FOR THE JURY TO DECIDE.

25        THE LAST POINT, YOUR HONOR, IS THE ALTERNATIVE COMPUTATION

1    THAT MS. DAVIS DID WAS TO USE MR. WAGNER'S NUMBERS JUST IN

2    CASE.  IT WASN'T AN ANALYSIS SHE ADOPTED.  SHE SAID -- AS

3    MR. MCELHINNY SAID, SHE PUT EVERYTHING IN TO RESPOND TO HIM.

4              THE COURT:  ALL RIGHT.  WELL --

5              MR. PRICE:  YOUR HONOR --

6              THE COURT:  LET ME ASK THIS, MR. PRICE.

7              MR. PRICE:  SURE.

8              THE COURT:  THIS IS CLEARLY GOING TO BE A VERY

9    IMPORTANT ISSUE.

10             MR. PRICE:  OBVIOUSLY.

11             THE COURT:  AND I DON'T FEEL -- I DON'T FEEL THAT

12   APPLE'S BRIEFING WAS AS CLEAR.  THAT'S WHY I'VE ASKED THEM,

13   "WHAT DO YOU HAVE OTHER THAN GRAIN PROCESSING?"

14        NOW, I DO -- I UNDERSTAND THAT YOU MIGHT SAY, "WELL, THEN

15   THEY'RE STUCK WITH THAT."

16        BUT ON THE OTHER HAND, THIS WILL GO UP ON APPEAL, THERE

17   WILL BE FIVE MILLION NEW ARGUMENTS THAT BOTH OF YOU WILL THEN

18   DECIDE AND AGREE TO ARGUE BEFORE THE CIRCUIT.

19        SO I FEEL LIKE I SHOULD TRY, AS MUCH AS POSSIBLE, TO HAVE

20   YOU FLUSH OUT YOUR BEST ARGUMENTS SO I CAN TRY TO GET A RIGHT

21   DECISION MADE HERE.

22             MR. PRICE:  CAN I --

23             THE COURT:  SO THAT'S WHY I'M WONDERING IF VERY

24   MINIMAL ADDITIONAL BRIEFING, WHERE YOU WOULD GET THE LAST

25   WORD --

1          MR. PRICE:  I LIKE THE LAST WORD.

2          THE COURT:  YEAH.

3          MR. PRICE:  CERTAINLY IF YOU DO IT, I THINK THAT

4   MAKES SENSE THAT WE GET THE LAST WORD.

5          THE COURT:  UH-HUH.

6          MR. PRICE:  BUT YOU CAN AVOID THIS IF YOU AGREE THAT

7   MR. MUSIKA HAD THE OPPORTUNITY TO DO THE SAME THING AND DID NOT

8   AND YOU EXCLUDE IT, BECAUSE NO MATTER HOW YOU TRY TO PHRASE

9   THIS --

10         THE COURT:  UM-HUM.

11         MR. PRICE:  -- AND AGAIN, MR. MUSIKA IS AN

12  ACCOUNTANT.  HE'S ASKED TO MAKE ASSUMPTIONS, AND HE MADE A

13  CALCULATION ONLY BASED ON THE FIRST INFRINGEMENT -- WHICH BY

14  THE WAY WAS COINCIDENT.  WE HAD NO PROBLEM WITH THAT.  THAT'S

15  WHY THERE WAS NO ISSUE RAISED IN JMOL. -- WHEN HE KNEW AT THE

16  TIME, AS AN ACCOUNTANT, WHAT THE OTHER DATES COULD BE.  HE DID

17  NOT DO THE CALCULATIONS.

18      WE GET MS. DAVIS ALL OF A SUDDEN AND WE'VE GOT THESE

19  TOTALLY NEW CALCULATIONS.

20         THE COURT:  UM-HUM.

21         MR. PRICE:  IT'S NOT BASED UPON NEW FACTS.  IT'S --

22  THERE ARE NO FACTS ESTABLISHED BEFORE THE TRIAL.

23         THE COURT:  SURE.

24         MR. PRICE:  SO I THINK THAT, THAT YOU CAN DECIDE IT

25  WITHOUT REACHING THE QUESTION THAT WE PRESENTED ON, AS A MATTER

```
1     OF LAW, WHEN IS THE RIGHT DATE TO START, ALTHOUGH --

2            THE COURT:  WELL, THEN, ARM ME WITH ALL OF THOSE

3     OTHER ARGUMENTS SO THAT -- I MEAN, I WILL GIVE A WRITTEN ORDER

4     THAT WILL TRY TO LAY OUT ALL THE REASONS WHY I'M COMING OUT

5     WHICHEVER DIRECTION.

6            MR. PRICE:  SURE.

7            THE COURT:  BUT PLEASE ARM ME WITH ALL OF THOSE

8     ADDITIONAL REASONS TO GO YOUR WAY VERSUS JUST --

9            MR. PRICE:  WE'LL --

10           THE COURT:  THIS IS A COMPLICATED LEGAL QUESTION

11    WHICH IS, YOU KNOW, I THINK IT'S NOT PERFECTLY CLEAR.

12        AT THIS POINT, I'M INCLINED TO THINK IT IS YOUR WAY, BUT

13    GIVE ME THE BEST ARGUMENTS AS TO WHY, FOR OTHER REASONS,

14    PRECLUSION, PREVIOUS RULINGS, CONSISTENCY.

15           MR. PRICE:  WE WILL WRITE THE BEST OPINION FOR YOU

16    THAT WE CAN IN OUR RESPONSIVE BRIEF.

17           THE COURT:  SO LET ME ASK, WHAT WOULD YOU -- THIS IS

18    AN IMPORTANT ISSUE --

19           MR. LEE:  IT IS --

20           THE COURT:  -- FOR BOTH SIDES, SO I WANT TO TRY TO

21    GET IT RIGHT AS MUCH AS I CAN.  SO HOW MUCH -- I DON'T WANT,

22    OBVIOUSLY, VOLUMINOUS.  BUT TWO PAGES?  THREE PAGES?  WHAT

23    WOULD YOU --

24           MR. LEE:  COULD WE HAVE FIVE?

25           THE COURT:  FIVE?  OKAY.  AND IF YOU, YOU KNOW,
```

1    ADDRESS BOTH THE SORT OF PRACTICAL, MECHANICAL ONES AND WAS

2    THIS PREVIOUSLY PRECLUDED OR NOT, WAS THIS PREVIOUSLY DECIDED

3    OR NOT, AND THEN THE LEGAL QUESTION OF GRAIN PROCESSING AND

4    POWER INTEGRATIONS.

5              MR. LEE:  RIGHT.  AND YOUR HONOR WILL RECALL THAT THE

6    REASON YOU PRECLUDED IT WAS THAT THERE WERE A DIFFERENT SET OF

7    NUMBERS NOT IN THE REPORT THAT NO ONE HAD EVER HAD A CHANCE TO

8    TAKE A DEPOSITION ON.

9              THE COURT:  UM-HUM.

10             MR. LEE:  MS. DAVIS -- THE COMPUTATIONS THAT

11   MR. PRICE IS TALKING ABOUT ARE THE ONES THAT YOUR HONOR ORDERED

12   HER TO DO AND SHE DID THEM AND SHE WAS DEPOSED ON THEM AD

13   NAUSEAM.

14        SO THE SURPRISE ISSUE THAT YOUR HONOR WAS CONCERNED ABOUT

15   WITH AN ALTERNATIVE SET DOESN'T EXIST HERE.  SHE ACTUALLY DID

16   WHAT YOUR HONOR ORDERED HER TO DO, AS PRECISELY AS SHE CAN.

17        AND THEY'RE NOT JUST NUMBER CRUNCHERS.  THESE ARE.  AND I

18   KNOW MR. WAGNER, THEY'RE EXPERIENCED FOLKS IN THIS AREA.

19   THEY'RE NOT JUST ADDING UP 2 PLUS 2 EQUALS 4.

20             THE COURT:  ALL RIGHT.  SO WHEN CAN YOU -- WHEN CAN

21   YOU FILE --

22             MR. LEE:  MONDAY?

23             THE COURT:  OKAY.  ALL RIGHT.  WHAT ABOUT FOR

24   SAMSUNG?  DO YOU NEED --

25             MR. PRICE:  MY BACKUP TEAM IS SAYING FRIDAY.

1        THE COURT:  THAT'S FINE.  OKAY.  SO WHY DON'T I --

2    WHY DON'T I RESERVE RULING ON THAT ONE?  I THINK IT'S

3    COMPLICATED ENOUGH AND IT'S IMPORTANT ENOUGH TO BOTH SIDES.

4    OKAY?

5        MR. PRICE:  THANK YOU.

6        THE COURT:  ON THE CAPACITY QUESTION, THANK YOU FOR

7    WHAT YOU FILED THIS WEEK.  I -- YOU KNOW, THERE'S -- I'M SORRY,

8    I JUST KIND OF WANT TO ASK YOU A BOTTOM LINE QUESTION, AND THAT

9    IS, IS MS. DAVIS CONCLUDING THEN THAT THERE WOULD HAVE BEEN --

10   I ASSUME THE ANSWER IS YES -- ENOUGH CAPACITY TO MEET ALL OF

11   THE ADDITIONAL DEMAND FOR ALL OF THE UNITS ELIGIBLE FOR LOST

12   PROFITS, INCLUDING THOSE NOT AT ISSUE IN THE FIRST TRIAL?

13       I ASSUME THE ANSWER IS YES BASED ON WHAT YOU FILED THIS

14   WEEK.  CORRECT?

15       MS. KREVANS:  YES.

16       THE COURT:  AND IS THAT WHAT EXHIBIT 1 TO YOUR

17   CAPACITY STATEMENT SUPPORTS?

18       MS. KREVANS:  EXHIBITS 1, 3, 4, AND 5, YES.  ALL OF

19   THEM SHOW THAT.

20       THE COURT:  ALL RIGHT.

21       MS. KREVANS:  AND JUST TO BE CLEAR, YOUR HONOR,

22   BECAUSE THIS ALL STARTED WITH NOT SOMETHING IN MS. DAVIS'S

23   REPORT, BUT WITH HER ANSWER TO A QUESTION SHE WAS ASKED ON

24   CROSS-EXAMINATION IN DEPOSITION, AND THAT RESULTED IN THIS

25   MOTION SAYING SHE CAN'T COME TO TRIAL AND TESTIFY THAT APPLE

1    WOULD HAVE SATISFIED LOST PROFITS UNITS DURING A PARTICULAR

2    TIME PERIOD -- THIS IS THIS JUNE TO SEPTEMBER TIME PERIOD --

3    WITH IPHONE 4 UNITS.

4         SHE DIDN'T GIVE THAT OPINION IN HER REPORT AND NEITHER DID

5    MR. MUSIKA.  THE DOCUMENTS THAT WE GAVE YOU SHOW -- I'M TRYING

6    NOT TO SAY THE ACTUAL NUMBERS OUT LOUD BECAUSE THESE ARE

7    CONFIDENTIAL, BUT WE'VE HIGHLIGHTED AND CIRCLED THE NUMBERS.

8    YOU CAN SEE FROM THE DOCUMENTS AND FROM OUR FILING THE POOL OF

9    PHONES IN THE PARTICULAR PERIOD SAMSUNG IS CHALLENGING THAT

10   MR. MUSIKA USED AND THAT SHE USED TO SATISFY, TO SAY ENOUGH

11   PHONES WERE THERE FOR ALL THE LOST PROFITS UNITS WERE IPHONE

12   3GS PHONES.

13        SHE ISN'T GOING TO OFFER AN OPINION THAT THEY WOULD HAVE

14   SATISFIED THOSE LOST PROFIT PHONES WITH IPHONE 4 PHONES, AND

15   THAT'S THE ONLY THING THEY'RE CHALLENGING.

16        AND THE REASON IT CAME UP IS BECAUSE AT HER DEPOSITION,

17   SHE WAS ASKED A QUESTION WHICH SHE THOUGHT WENT TO DID APPLE,

18   IN FACT, HAVE ANY IPHONE 4 INVENTORY AT THAT TIME?

19        THE ANSWER IS THEY DID, AND YOU SEE THAT IN THE SAME

20   DOCUMENTS WE SUBMITTED.

21        BUT NEITHER SHE NOR MR. MUSIKA USED THAT IPHONE 4

22   INVENTORY AS PART OF THE POOL OF PHONES THAT WERE AVAILABLE TO

23   BE LOST PROFIT PHONES IN THAT PERIOD BECAUSE THEY WERE MAKING A

24   CONSERVATIVE ASSUMPTION, CONSISTENT WITH SOMETHING THEY'D BEEN

25   TOLD BY APPLE PEOPLE, THAT APPLE TRIED TO KEEP TWO WEEKS OF

1    INVENTORY ON HAND, AND SO THEY JUST DIDN'T EVEN COUNT THE

2    IPHONE 4 PHONES.

3            THE COURT:  SO YOU'RE SAYING THAT APPLE WOULD HAVE

4    MET THE DEMAND WITH IPHONE 3'S?

5            MS. KREVANS:  3GS'S IN THAT PARTICULAR TIME PERIOD,

6    YES.

7            THE COURT:  3GS'S.  OKAY.

8            MS. KREVANS:  AND YOU CAN SEE THOSE ARE THE NUMBERS

9    THAT ARE PICKED UP IN THESE SPREADSHEET.

10           THE COURT:  OKAY.  SO DOES THAT CONCESSION IN ANY WAY

11   SATISFY SAMSUNG?  I MEAN, YOUR MAIN CONCERN WAS THAT THEY DON'T

12   HAVE IPHONE 4'S TO, TO MEET THE DEMAND OF IPHONE 4'S.  DOES

13   THAT CONCESSION --

14           MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.

15           THE COURT:  DOES THAT SATISFY YOU?

16           MS. MAROULIS:  YES.  WE UNDERSTOOD MS. DAVIS TO OPINE

17   THAT THERE WOULD BE ENOUGH IPHONE 4'S, WHICH IS IMPROPER NEW

18   OPINION.

19       IF THEY'RE SAYING THEY'RE NOT GOING TO DO THAT AT TRIAL

20   AND WILL BE CONSISTENT WITH WHAT MUSIKA SAID, WHICH IS THAT

21   THERE WERE OTHER PHONES, THAT'S FINE.

22           MS. KREVANS:  AND YOUR HONOR --

23           THE COURT:  OH, OKAY.  SO THIS IS YOUR MOTION TO

24   STRIKE.  CAN I NOW DENY THAT AS MOOT, OR --

25           MS. MAROULIS:  ASSUMING THERE'S A STIPULATION FROM

1       APPLE ON THE RECORD.

2               MS. KREVANS:  YOUR HONOR, WE ONLY INTEND TO OFFER HER

3       ON THE OPINIONS IN HER REPORT BASED ON THE NUMBERS I SHOWED

4       YOU.

5           THIS ONLY CAME UP BECAUSE THEY ASKED HER A QUESTION IN

6       HER DEPOSITION THAT LED TO THE FACT THAT THERE WAS ALSO

7       INVENTORY.

8           WE DO NOT INTEND TO OFFER THAT OPINION.  IF THEY ASK HER

9       AT TRIAL, "WAS THERE ALSO IPHONE INVENTORY," HER ANSWER WOULD

10      BE YES, BECAUSE IT'S TRUE.

11          BUT WE ARE NOT USING THAT, AND WE WOULD BE HAPPY TO SAY

12      AGAIN THAT WE'RE NOT USING THAT BECAUSE WE WERE BEING

13      CONSERVATIVE AND WE WERE TREATING THAT AS A RESERVE.  WE WERE

14      ONLY USING IPHONE 3GS PHONES IN THAT TIME PERIOD.

15          WE HAVE NO INTENTION OF OFFERING HER TO TESTIFY

16      OTHERWISE.

17              MS. MAROULIS:  IF MS. DAVIS AND APPLE'S COUNSEL

18      CONCEDE THAT SHE WILL NOT TESTIFY THAT THERE WAS EXCESS

19      CAPACITY OF IPHONE 4'S, THEN THE MOTION IS MOOT.

20              THE COURT:  ALL RIGHT.

21              MS. KREVANS:  WE NEVER DID OFFER THAT OPINION, YOUR

22      HONOR, SO I THINK THE MOTION IS MOOT.

23              THE COURT:  ALL RIGHT.  SO YOU -- ALL RIGHT.  SO I

24      CAN --

25              MS. MAROULIS:  IT WAS IN DEPOSITION.

1           THE COURT:  ALL RIGHT.  SO I'M GOING TO DENY THIS AS

2   MOOT BECAUSE MS. DAVIS WILL NOT TESTIFY THAT APPLE COULD MEET

3   THE DEMAND FOR IPHONE 4'S.

4           AND WHAT WAS THAT PERIOD, FROM JUNE THROUGH OCTOBER OF

5   2011?

6           MS. MAROULIS:  2010.

7           MS. KREVANS:  JUNE 2010, YOUR HONOR.

8           THE COURT:  OKAY.  FOR JUNE THROUGH OCTOBER 2010 WITH

9   IPHONE 4'S.

10          MS. MAROULIS:  CORRECT.

11          THE COURT:  IS THAT CORRECT?

12          MS. MAROULIS:  YES.

13          THE COURT:  ARE YOU SATISFIED WITH THAT, MS. KREVANS?

14  MS. DAVIS WILL NOT TESTIFY THAT APPLE COULD MEET THE DEMAND FOR

15  IPHONE 4'S FROM OCTOBER THROUGH -- FROM JUNE THROUGH

16  OCTOBER 2010 WITH IPHONE 4'S.

17          MR. MCELHINNY:  BUT SHE WILL ANSWER EVERY QUESTION

18  THAT SHE IS ASKED ON CROSS-EXAMINATION HONESTLY.

19          MS. MAROULIS:  WELL, YOUR HONOR, THAT'S COMPLETELY

20  DEPARTING FROM THE STIPULATION WE JUST DID.

21          THE COURT:  OKAY.  WHICH IS WHAT?  LET'S FIGURE OUT

22  WHAT THAT IS.  THAT THERE WAS SOME EXCESS CAPACITY, THERE WAS

23  SOME INVENTORY PHONES OF IPHONE 4'S, THERE WAS JUST NOT A

24  SUFFICIENT NUMBER TO MEET THE DEMAND?  IS THAT WHAT I'M --

25          MS. KREVANS:  ACTUALLY, YOUR HONOR, IF THEY -- IF

1    THEY -- WE ARE NOT GOING TO ASK HER THIS, BUT IF THEY ASK HER

2    ON CROSS A QUESTION THAT CALLS FOR A TRUTHFUL ANSWER ABOUT HOW

3    MANY IPHONE 4'S THERE WERE IN INVENTORY IN THAT TIME PERIOD,

4    SHE HAS TO ANSWER TRUTHFULLY, AND AS IT TURNS OUT, THERE WERE A

5    NUMBER OF PHONES IN INVENTORY, WHICH SHE DIDN'T USE BECAUSE SHE

6    WAS BEING CONSERVATIVE, BUT THERE WERE 150 -- SORRY, I

7    SHOULDN'T SAY A NUMBER.

8        THERE WERE IPHONE 4'S IN INVENTORY, AND AS IT HAPPENS,

9    GIVEN THE NUMBER OF LOST PROFIT PHONES, IT WOULD HAVE MET IT.

10       WE DON'T INTEND TO OFFER THAT TESTIMONY.  I'M JUST

11   SAYING, IF THEY OPEN THE DOOR, I SAID A FEW MINUTES AGO, WE

12   CAN'T ASK HER TO TESTIFY UNTRUTHFULLY.  WE WILL NOT ELICIT THAT

13   TESTIMONY AND THEY SIMPLY SHOULD NOT, EITHER.

14       MR. PRICE:  YOUR HONOR, IT WAS IMPORTANT IN THE FIRST

15   TRIAL THAT WE GET THE ADMISSION OF APPLE'S EXPERT, WHICH HE

16   GAVE, THAT THERE WERE NOT ENOUGH -- THAT THERE WEREN'T ENOUGH

17   IPHONE 4'S DURING THAT PERIOD TO EVEN MEET THEIR OWN CUSTOMERS.

18   IT WAS IMPORTANT THAT WE GET THOSE ADMISSIONS FROM THEIR

19   EXPERT.

20       THEIR NEW EXPERT, WE'RE BEING TOLD, WILL NOT SAY THAT

21   BECAUSE IT'S, QUOTE, NOT THE TRUTH.

22       MS. KREVANS:  THAT'S NOT WHAT I SAID, YOUR HONOR.

23       MR. PRICE:  I'M TALKING ABOUT IN CROSS-EXAMINATION.

24   I UNDERSTAND THEY'RE NOT GOING TO ADDRESS IT IN DIRECT.  BUT I

25   SHOULD BE ALLOWED TO ESTABLISH -- MAYBE THE SOLUTION IS JUST TO

1   SAY "APPLE HAD AN EXPERT WHO TESTIFIED TO THE FOLLOWING" AND

2   NOT ASK HER QUESTIONS ON IT SO THAT SHE WON'T GIVE A NEW

3   OPINION.

4           THE COURT:  CAN'T WE JUST HAVE A STIPULATION TO

5   RESOLVE THIS, PLEASE?

6           MS. KREVANS:  IF -- MAYBE THEY CAN OFFER A

7   STIPULATION THAT WOULD BE ACCEPTABLE.  WE'RE NOT GOING TO PUT

8   OUR EXPERT UP THERE AND TELL HER SHE CAN'T ANSWER TRUTHFULLY IF

9   THEY ASK QUESTIONS ON CROSS-EXAMINATION.

10          SHE HAS NOT OFFERED ANY KIND OF --

11          THE COURT:  I THINK WHAT MR. PRICE IS SUGGESTING IS

12  THAT IF YOU JUST STIPULATE THAT APPLE COULD NOT MEET THE DEMAND

13  OF ITS CUSTOMERS FOR IPHONE 4'S FROM JUNE THROUGH OCTOBER OF

14  2010 WITH THE IPHONE 4'S, HE WOULD BE SATISFIED.

15          IS THAT CORRECT?

16          MR. PRICE:  IT'S, LIKE, A PAGE OF EXAMINATION.  HE

17  MAY ALSO HAVE SAID THERE WAS NO CAPACITY.

18          SO IF THEY'LL ADMIT THAT THAT'S THE FACT, OR IF THEY WILL

19  JUST SAY THAT'S WHAT AN EXPERT FOR APPLE SAID AND THEY SAY

20  NOTHING TO CONTRADICT THAT, THEN THAT WOULD PROBABLY WORK.

21          THE COURT:  I WOULD LIKE TO HAVE THIS RESOLVED,

22  PLEASE.

23          MS. KREVANS:  I MEAN, FRANKLY, I'M NOT QUITE SURE

24  WHAT THEIR PROBLEM IS, BECAUSE SHE DIDN'T OFFER THE OPINION

25  THAT SHE'S RELYING ON IPHONE 4'S.  THE REPORT IS CLEAR.  THE

1    DOCUMENTS ARE VERY CLEAR.  IN THIS --

2         THE COURT:  I DON'T THINK THE DEPOSITION TESTIMONY IS

3    CLEAR.  I DON'T THINK IT'S CLEAR.  I'VE READ EVERYTHING YOU ALL

4    SUBMITTED.  I DON'T THINK IT'S CLEAR.

5         BUT I ALSO DON'T THINK THE CROSS-EXAMINATION OF

6    MR. MUSIKA -- I READ THROUGH ALL OF HIS DIRECT AND CROSS FROM

7    THE TRIAL.  I DON'T REALLY THINK THAT'S CLEAR EITHER BECAUSE

8    HE'S REALLY TESTIFYING TO THE DEPOSITION OF MR. BLEVINS --

9    THERE'S SO MANY LAYERS HERE THAT I DON'T THINK IT IS REALLY

10   CLEAR.

11        SO I WOULD LIKE YOU TO ADD THIS TO THE ITEMS THAT YOU

12   MEET AND CONFER ABOUT AND SEE IF THERE'S SOME AGREEMENT YOU CAN

13   REACH SO BOTH SIDES ARE SATISFIED, AND THEN I WOULD JUST LIKE

14   TO AVOID GETTING INTO QUESTIONS THAT ARE GOING TO CAUSE

15   PROBLEMS.

16        MS. KREVANS:  WE'RE HAPPY TO MEET AND CONFER ON IT,

17   YOUR HONOR.  I THINK THERE SHOULDN'T BE QUESTIONS THAT CAUSE

18   PROBLEMS, BUT THAT'S IN THEIR CONTROL.

19        THE COURT:  OKAY.  JUST SO I UNDERSTAND IT, YOU'RE

20   SAYING THAT THERE ARE -- THERE WERE, IN FACT, IPHONE 4'S IN

21   INVENTORY TO COVER THE LOST PROFITS IN THIS CASE, BUT NOT IN

22   THE CASE LAST YEAR, WHICH WAS MUCH LARGER, JUST BECAUSE THIS IS

23   A NARROWER CASE.  CORRECT?

24        MS. KREVANS:  NOT EXACTLY, YOUR HONOR.

25        IN THIS CASE, EXACTLY LIKE LAST TIME, IN THAT PARTICULAR

1     TIME PERIOD, THE ONLY PHONES THAT MS. DAVIS USED AS THE

2     AVAILABILITY POOL FOR APPLE PHONES TO MEET A LOST SALE THAT WAS

3     YIELDED BY THE LOST PROFITS CALCULATION WERE IPHONE 3GS'S.

4          AS A MATTER OF FACT, THERE WERE ALSO IPHONE 4'S IN

5     INVENTORY AT THAT TIME.  SHE DID NOT USE THEM BECAUSE, LIKE

6     MR. MUSIKA, SHE USED THE CONSERVATIVE ASSUMPTION THAT APPLE

7     WANTED TO KEEP A CERTAIN INVENTORY LEVEL OF ALL OF THEIR

8     PHONES.

9          SHE DID NOT USE IPHONE 4'S AS THE APPLE PHONES THAT WOULD

10    HAVE BEEN THE REPLACEMENT SALE IN THAT TIME PERIOD.  SHE ONLY

11    USED IPHONE 3GS'S.

12          MR. PRICE:  AND SO YOU UNDERSTAND WHAT WE WANT TO

13    ESTABLISH, YOUR HONOR, WE WANT TO ESTABLISH THAT PEOPLE

14    WOULDN'T HAVE WANTED TO GET THE OLD IPHONES.  FOR PURPOSES OF

15    WOULD YOU GO FROM SAMSUNG TO APPLE, YOU WOULD WANT TO GO TO AN

16    IPHONE 4.

17          SO IT'S IMPORTANT FOR US TO GET AN ADMISSION, AS WE DID

18    FROM MR. MUSIKA, THAT DURING THAT TIME PERIOD, HE SAID -- THE

19    QUESTION:  "AND THIS IS A TIME WHEN APPLE COULDN'T EVEN SERVICE

20    ITS OWN CUSTOMERS FOR THE IPHONE 4; CORRECT?

21          "ANSWER:  WELL, YES, WITH THE IPHONE 4.  THEY HAD

22    AVAILABLE IPHONES, BUT NOT THE IPHONE 4."

23          AND NOW WE'RE BEING TOLD THAT IF SHE IS ASKED THAT

24    QUESTION, SHE'LL SAY, "OH, WE DID HAVE AVAILABLE IPHONE 4'S NOW

25    THAT YOU BRING IT UP," AND THAT'S A CHANGE, A SIGNIFICANT

1   CHANGE, BECAUSE THEN WE CAN'T TELL THE JURY, AS WE DID LAST

2   TIME, CONSISTENT WITH MR. MUSIKA'S TESTIMONY, "WELL, THEY

3   WOULDN'T HAVE GOTTEN THESE SALES BECAUSE THEY COULDN'T OFFER

4   THEM THE IPHONE 4."

5           THE COURT:  ALL RIGHT.  BUT WHAT I UNDERSTAND FROM

6   MS. KREVANS IS THAT SHE IS NOT GOING TO INTRODUCE THAT APPLE

7   HAD IPHONE 4'S IN INVENTORY THAT COULD HAVE COVERED THE LOST

8   PROFITS.

9           MS. KREVANS:  WE ARE NOT GOING TO OFFER THIS WITNESS

10  TO TESTIFY THAT APPLE COULD HAVE SATISFIED A LOST PROFITS PHONE

11  IN THAT PARTICULAR TIME PERIOD WITH ANYTHING OTHER THAN AN

12  IPHONE 3GS.

13          THE COURT:  OKAY.  DOES THAT SATISFY YOU?

14          MR. PRICE:  NO, BECAUSE IT'S HALF THE TRUTH.  I NEED

15  TO GET HER TO TELL THE OTHER PART OF THE TRUTH, WHICH IS WHAT

16  MR. MUSIKA SAID.

17          THE COURT:  WHICH IS THEY DID NOT HAVE IPHONE 4'S TO

18  MEET THE IPHONE 4 DEMAND?

19          MR. PRICE:  YEAH.

20          MS. KREVANS:  AND YOUR HONOR, THAT'S -- THAT'S

21  EXACTLY WHAT SHE SAID IN HER DEPOSITION, BECAUSE EVEN THOUGH

22  THEY HAD SOME IN INVENTORY, SHE TREATED THE PHONES IN INVENTORY

23  AS NOT AVAILABLE AND DIDN'T USE THEM IN HER ANALYSIS.

24          THE COURT:  OKAY.  THEN YOU SHOULD HAVE NO PROBLEM

25  STIPULATING TO THAT.  OKAY?  WHY DON'T YOU JUST -- WHAT'S THE

1      HESITATION?

2              MS. KREVANS:  WE'LL MEET AND CONFER ABOUT THIS.  WE

3      HAVE TOLD THEM OVER AND OVER AGAIN, SHE DID NOT USE THE PHONES

4      IN HER ANALYSIS AND THE DOCUMENTS SHOW IT.

5              THE COURT:  WHAT'S THE PROBLEM WITH STIPULATING TO IT

6      THEN?

7              MR. PRICE:  IF THEY STIPULATE --

8              THE COURT:  I KNOW.  I'M ASKING MS. KREVANS.

9              MS. KREVANS:  I DON'T KNOW WHAT THE STIPULATION IS

10     THAT THEY'RE PROPOSING BECAUSE WE HAVE SAID OVER AND OVER

11     AGAIN, WE DID NOT USE, AND THE DOCUMENTS SHOW THAT IN THAT TIME

12     PERIOD, WE DID NOT USE IPHONE 4'S AS PHONES AVAILABLE TO MEET

13     LOST PROFITS DEMANDS.

14             THE COURT:  OKAY.  CAN WE JUST GET A STIPULATION THAT

15     APPLE COULD NOT MEET THE DEMAND FOR IPHONE 4'S WITH IPHONE 4'S

16     FROM JUNE TO OCTOBER OF 2010?

17          IS THAT THE STIPULATION YOU WANT, MR. PRICE.

18             MR. PRICE:  BETWEEN JUNE AND OCTOBER OF 2010, APPLE

19     HAD AVAILABLE IPHONES, BUT NOT THE IPHONE 4.

20             THE COURT:  OKAY.  CAN YOU STIPULATE TO THAT?

21             MS. KREVANS:  YOUR HONOR, WE WOULD HAVE TO SEE IT

22     WRITTEN DOWN, BECAUSE I THINK --

23             THE COURT:  ALL RIGHT.  WRITE IT DOWN RIGHT NOW.  I'M

24     GOING TO SHOW IT TO HER.

25             MS. KREVANS:  WELL, I DON'T THINK WE CAN STIPULATE TO

1    THAT AT THIS MOMENT, YOUR HONOR.  I THINK WE NEED TO BE ABLE TO

2    MEET AND CONFER BECAUSE I NEED TO BE ABLE TO LOOK AT IT AND

3    MAKE SURE THAT THERE'S NOT SOME UNINTENTIONAL MEANING THERE.

4         WE ARE NOT OFFERING, IN THIS TIME PERIOD, TO SAY THAT WE

5    HAD AN IPHONE 4 THAT WE COULD HAVE USED TO MEET A LOST PROFITS

6    DEMAND, AND THEY KNOW THAT, AND WE'RE NOT GOING TO HAVE THE

7    WITNESS TESTIFY THAT THEY DID.

8         MR. PRICE:  IT'S IMPORTANT FOR US TO ESTABLISH THAT

9    THEY DIDN'T HAVE IT AS AN AFFIRMATIVE FACT, AND WE GOT THAT

10   FROM MR. MUSIKA FROM HIS ANALYSIS.  IT WAS AN AFFIRMATIVE FACT.

11        THE COURT:  ALL RIGHT.  I'M GOING TO GRANT YOUR

12   MOTION.  IF THEY'RE NOT GOING TO STIPULATE, I'M GOING TO GRANT

13   YOUR MOTION TO STRIKE.  OKAY?

14        MR. PRICE:  THANK YOU.

15        THE COURT:  OKAY.  PATENT DESCRIPTIONS, I'VE ALREADY

16   GRANTED THAT LAST WEEK.  MS. DAVIS IS GOING TO USE MR. MUSIKA'S

17   PATENT DESCRIPTIONS IN HER TESTIMONY AND IN HER REPORT.

18        REGARDING SAMSUNG'S MOTION TO STRIKE NEW EVIDENCE, I'D

19   LIKE YOU TO MEET AND CONFER ON THAT TO SEE IF THERE IS EITHER

20   SOME TRIAL TESTIMONY OR SOME STIPULATION THAT CAN ADMIT THE

21   INFORMATION YOU WANT FROM TECHNICAL EXPERTS AND TRIAL WITNESSES

22   ABSENT THEIR COMING LIVE TO TRIAL.

23        SO APPLE'S MOTION TO STRIKE REGARDING THE NOTICE DATES, I

24   THINK WE'VE ALREADY TALKED ABOUT THAT.  YOU'RE GOING TO DO THE

25   DEPOSITION AND THE DECLARATION ON THAT AND I WILL ISSUE A

1    RULING AFTER YOUR SUPPLEMENTAL MATERIALS.

2        I THINK THE OTHER ONES ARE LARGELY DUPLICATIVE.  APPLE'S

3    MOTION TO STRIKE THE POST-TRIAL EVIDENCE, I THINK THAT IS KIND

4    OF SUBSUMED IN THE OTHERS, WOULDN'T YOU SAY, MR. MCELHINNY?

5            MR. MCELHINNY:  YES, YOUR HONOR.

6            THE COURT:  ALL RIGHT.  SO I'M GOING TO -- THE JURY'S

7    NON-INFRINGEMENT FINDINGS, I THINK THAT'S ALSO SUBSUMED IN

8    OTHER RULINGS.

9        THE RETAIL PRICING ANALYSIS, I THINK I'M GOING TO GRANT

10   THAT.  I'M GRANTING THAT MOTION, APPLE'S MOTION TO STRIKE THE

11   RETAIL PRICING ANALYSIS OF MR. WAGNER.

12       OKAY.  WITH REGARD TO THE GEM UNITS, I'M A LITTLE BIT

13   STILL CONFUSED.  SO APPLE CONCEDES THAT YOUR INFRINGEMENT

14   EVIDENCE WAS LIMITED TO THE VERIZON GEM PHONES, BUT YOU ASKED

15   FOR DAMAGES ON ALL GEM UNITS, REGARDLESS OF WHETHER IT WAS A

16   VERIZON CARRIER PHONE OR NOT.  IS THAT RIGHT?

17           MR. MCELHINNY:  NOT EXACTLY, YOUR HONOR.

18           THE COURT:  OKAY.

19           MR. MCELHINNY:  THE HISTORY IS THAT WHAT WE ACCUSED

20   WAS WE ACCUSED THE GEM PHONE.

21           THE COURT:  UM-HUM.

22           MR. MCELHINNY:  AND THEN WE SERVED AN INTERROGATORY

23   ON THEM AND ASKED THEM TO IDENTIFY THE PRODUCTS, NAMES, AND

24   MODEL NUMBERS, AND IN RESPONSE TO INTERROGATORY NUMBER 36, THEY

25   SAID THE NAME OF THE PHONE WAS THE GEM (MAX).

1       THEN WHEN THEY GAVE US FINANCIAL DATA, THEY GAVE US NINE

2  VERSIONS WITH COMBINED CARRIER DATA FOR THE GEM (SCH-I100) AND

3  THEY GAVE US THOSE TOTAL DATA.

4       SO WE TREATED THE GEM PHONE AS A SINGLE PRODUCT NAME.

5           THE COURT:  UM-HUM.

6           MR. MCELHINNY:  AND THAT WAS WHAT WAS OFFERED INTO

7  EVIDENCE WAS THE INTERROGATORY RESPONSE -- BASED ON THEIR

8  INTERROGATORY RESPONSE AND THEIR FINANCIAL NUMBERS WHICH THEY

9  GAVE US.

10          THEY ARE NOW COMING TO YOU AND SAYING, "THOSE GEMS WERE

11 ACTUALLY SOLD THROUGH THREE DIFFERENT DISTRIBUTION CHANNELS,

12 AND SO NOW WE WANT TO TREAT THEM AS THREE DIFFERENT PHONES,"

13 ALTHOUGH THEY DIDN'T IN THEIR INTERROGATORY RESPONSES AND THEY

14 DIDN'T IN THE FINANCIAL INFORMATION THAT THEY GAVE US DURING

15 THE DISCOVERY PERIOD.

16          THE COURT:  OKAY.  I'M WONDERING, ON THIS ISSUE AS

17 WELL, SINCE I'M ASSUMING IT HAS FAIRLY SIGNIFICANT DAMAGES

18 CONSEQUENCES, WHETHER IT WOULD BE WORTHWHILE, SINCE THAT IS

19 WHAT YOU'VE TOLD ME IS DIFFERENT THAN WHAT'S BEEN BRIEFED, IF I

20 WERE TO GIVE YOU TWO PAGES ON THIS QUESTION.

21          MR. MCELHINNY:  CAN WE HAVE TWO?

22          THE COURT:  TWO PAGES.  I SAID TWO PAGES.

23          MR. MCELHINNY:  OH, I'M SORRY.

24          THE COURT:  AND THEN HOW DO YOU WANT TO -- SAMSUNG

25 WANTS TO RESPOND?  OR DO YOU WANT SAMSUNG TO GO FIRST?

1          MR. MCELHINNY:  THIS IS THEIR ISSUE, YOUR HONOR,

2     ABOUT WHY THESE ARE DIFFERENT AND WE'D LIKE TO BE IN A POSITION

3     TO RESPOND TO THIS.

4          MS. MAROULIS:  THEY MOVED TO STRIKE, SO WE'D LIKE TO

5     RESPOND.

6          THE COURT:  WELL, I'M GOING TO GIVE APPLE THE LAST

7     WORD, BUT I -- I DO THINK WHAT YOU'VE JUST RAISED IS A NEW

8     ARGUMENT, BUT IT'S -- IT SOUNDS SOMEWHAT COMPELLING.  I'M

9     WONDERING IF IT SHOULD GO FIRST.

10          MR. MCELHINNY:  WELL, AND IT'S CONSISTENT WITH THE

11     REPRESENTATION THAT YOU GOT LAST WEEK, WHICH IS NO ONE ON THAT

12     SIDE IS TELLING YOU THERE'S ANY DIFFERENCE BETWEEN ANY OF THESE

13     PHONES.  YOU ASKED THAT QUESTION SPECIFICALLY.

14          THE COURT:  RIGHT.  BUT IF -- I MEAN, THEY ARE BOUND

15     BY THEIR INTERROGATORY RESPONSES.

16          MR. MCELHINNY:  THEY ARE.

17          THE COURT:  SO IF THEY NEVER MADE ANY REPRESENTATION,

18     THEN I WOULD FIND THAT PRETTY COMPELLING.

19          MR. MCELHINNY:  OKAY.

20          THE COURT:  AND I WOULD HOLD THEM TO IT.

21          MR. MCELHINNY:  YEAH.

22          THE COURT:  SO WHY DON'T -- CAN YOU DO A TWO PAGE,

23     THEN SAMSUNG CAN DO A TWO PAGE, AND THEN DO YOU WANT TO DO A

24     ONE PAGE REPLY, OR --

25          MR. MCELHINNY:  FINE, YOUR HONOR.

1          THE COURT:  OKAY.  SO WHAT'S THE TIMING ON THAT?

2    WHEN CAN YOU DO THAT?

3          MR. MCELHINNY:  I WOULD SAY MONDAY, WEDNESDAY, FRIDAY

4    WOULD BE THE --

5          THE COURT:  ALL RIGHT.  SO IS THAT OKAY,

6    MS. MAROULIS?  MR. PRICE?

7          MS. MAROULIS:  THE ONLY THING IS WE HAVE THREE OR

8    FOUR BRIEFS ON MONDAY BASED ON PRIOR DISCUSSIONS, SO CAN WE DO

9    IT TUESDAY AND THURSDAY AND SOME OTHER DAY?

10         THE COURT:  I THINK THEY'RE WILLING TO DO MONDAY.

11         MR. MCELHINNY:  WE'RE GOING TO GO FIRST.

12         THE COURT:  THEY'RE GOING FIRST.

13         MS. MAROULIS:  OH, OKAY.  THAT'S FINE.

14         THE COURT:  SO IS WEDNESDAY OKAY FOR YOU?

15         MR. MCELHINNY:  WE'VE JUST REACHED THE FIRST

16   STIPULATION IN THE HISTORY OF THE TRIAL, YOUR HONOR.  WE'LL

17   TAKE TUESDAY.

18       (LAUGHTER.)

19         THE COURT:  WHATEVER IS WORKING RIGHT, WE'VE GOT TO

20   KEEP THAT GOING.

21         MR. MCELHINNY:  YEAH.

22         THE COURT:  OKAY.  SO WHAT ABOUT, THEN, APPLE FILES

23   TWO PAGES ON THE 21ST, SAMSUNG FILES TWO PAGES ON THE 23RD, AND

24   THEN -- YOU KNOW WHAT?  YOU CAN JUST DO TWO PAGES ON THE 25TH.

25         MR. MCELHINNY:  THANK YOU.

1          THE COURT:  I JUST REALLY WOULD APPRECIATE IT IF YOU

2    ALL CAN HELP ME IN TRYING TO GET TO THE RIGHT ANSWER.  I DON'T

3    WANT TO KEEP COMMITTING UNNECESSARY ERRORS HERE.

4          OKAY.  WHAT ARE WE GOING TO DO ABOUT SEALING?  I

5    UNDERSTAND THAT THERE WAS -- APPLE WANTED TO GO FORWARD,

6    SAMSUNG WANTED MY RULINGS, AND I'M SORRY, BUT I'M NOT GOING TO

7    GIVE YOU ALL THE RULINGS TODAY.  I'VE TRIED TO GIVE YOU WHAT I

8    CAN.

9          AND I'M AFRAID PROBABLY A LOT OF THE RULINGS ARE GOING TO

10   BE SORT OF DRIBBLING OUT, YOU KNOW, TRICKLING OUT.  I'M NOT

11   GOING TO BE ABLE TO JUST -- I DON'T SEE ANY REASON TO HOLD THEM

12   TO THE END.  I FEEL LIKE WHEN THEY'RE READY AND I'M CONFIDENT

13   THAT THEY'LL BE OVERALL CONSISTENT, I'D LIKE TO JUST ISSUE IT.

14         SO HOW DO YOU WANT TO PROCEED?

15         MS. MAROULIS:  YOUR HONOR, WE'VE ALWAYS COOPERATED ON

16   SEALING EACH OTHER'S INFORMATION, SO FOR US IT'S A MATTER OF

17   TIME.

18         WE WANTED TO SEE WHAT THE EXHIBIT LIST LOOKS LIKE --

19         THE COURT:  SURE.

20         MS. MAROULIS:  -- BECAUSE SOME EXHIBITS WERE EXCLUDED

21   FROM BOTH SIDES TODAY AND MORE WILL BE PROBABLY IN THE NEXT FEW

22   DAYS.

23         SO WE RECOMMEND THAT WE MEET AND CONFER AFTER THE LAST

24   RULING ON THE CURRENT MOTIONS IS ISSUED, BECAUSE WE DON'T WANT

25   TO BE NEGOTIATING SEALING EXHIBITS THAT ARE EXCLUDED FOR

1    WHATEVER REASON.

2              THE COURT:  WELL, BUT THIS IS THE PROBLEM.  A LOT OF

3    THE EXHIBITS I'VE JUST SAID I'M GOING TO RULE DURING THE TRIAL

4    AND ON A DOCUMENT-BY-DOCUMENT BASIS AND NOT KIND OF

5    PROSPECTIVELY NOW.

6         SO --

7              MR. MCELHINNY:  LET ME BE AS CLEAR AS I POSSIBLY CAN

8    BE.  THE IMPORTANT THING THAT WE AGREED UPON LAST TIME WAS THAT

9    THERE WAS EVIDENCE THAT WAS RELEVANT TO THE JURY'S

10   CONSIDERATION.

11             THE COURT:  UM-HUM.

12             MR. MCELHINNY:  BUT AT THE TIME YOUR HONOR WAS RULING

13   THAT IF IT CAME IN AS EVIDENCE, IT WAS A PUBLIC DOCUMENT.

14             THE COURT:  UM-HUM.

15             MR. MCELHINNY:  SO WE REACHED A STIPULATION THAT

16   SAID -- THAT AT THE TIME APPEARED TO BE IN BOTH PARTIES'

17   INTERESTS -- THAT IF THE DOCUMENT WAS HIGHLY CONFIDENTIAL, IT

18   WOULD NOT ACTUALLY GO INTO THE RECORD.

19             THE COURT:  UM-HUM.

20             MR. MCELHINNY:  BUT THAT THERE WOULD BE NO CHALLENGE

21   TO THE RECORD FOR SUFFICIENCY.

22             THE COURT:  OKAY.

23             MR. MCELHINNY:  WE HAVE ASSUMED THAT THAT WOULD APPLY

24   AGAIN, BUT OBVIOUSLY THAT'S A VERY IMPORTANT STIPULATION FOR

25   OUR POINT, AND IF WE DON'T GET THAT STIPULATION --

1          THE COURT:  UM-HUM.

2          MR. MCELHINNY:  -- THEN WE HAVE TO COME TO YOUR HONOR

3     AND FIGURE OUT A WAY TO PROTECT THAT INFORMATION, EVEN THOUGH

4     IT GOES INTO THE RECORD AND EVEN THOUGH --

5          THE COURT:  OH, I'LL SEAL THIS WHOLE TRIAL.  I

6     MEAN -- YOU KNOW, I'LL -- I READ THE FEDERAL CIRCUIT ORDER.

7     THEY CLEARLY DISAPPROVED THAT I DIDN'T HAVE -- I ACTUALLY DID

8     HAVE MOUNDS OF SEALED DOCUMENTS, BUT I GUESS YOU ALL DIDN'T

9     CHALLENGE EVERYTHING.

10        BUT THEY CLEARLY SAID PATENT CASES SHOULD HAVE MOUNDS OF

11    SEALED DOCUMENTS AND -- BUT I -- I'M HOPING THAT THAT IS NOT

12    THE CASE.  I'M HOPING THAT YOU WILL NOT BE OVERLY AGGRESSIVE.

13         MR. MCELHINNY:  WE -- WE HAD -- IT WORKED PERFECTLY

14    LAST TIME, AND OUR ONLY CONCERN IS WE HAVEN'T BEEN ABLE TO

15    AUTOMATICALLY REACH THE SAME STIPULATION BECAUSE NOW IT SEEMS,

16    ON THE OTHER SIDE, TO TURN ON WHO'S GOT MORE DOCUMENTS AT RISK,

17    AND THAT'S NOT WHAT WE THINK WOULD BE APPROPRIATE.

18         MS. MAROULIS:  THAT'S NOT ACTUALLY THE CASE.  IT'S

19    SIMPLY THAT WE HAVE SO MANY PRETRIAL TASKS, BOTH WHAT THE COURT

20    NEEDS AND WHAT THE PARTIES NEED TO PREPARE FOR TRIAL, WE

21    THOUGHT IT WOULD BE A BETTER USE OF EVERYONE'S TIME TO ADDRESS

22    THIS DOCUMENT-BY-DOCUMENT WHEN WE HAVE MORE CLARITY TO ADDRESS

23    WHAT'S IN AND WHAT'S OUT.

24         THE COURT:  UM-HUM.

25         MS. MAROULIS:  MAYBE IN A WEEK.  MAYBE IN TWO WEEKS.

1          BUT RIGHT NOW SITTING THERE FOR SIX OR SEVEN HOURS LIKE

2     WE DID IN THE LAST TRIAL WHEN WE NEEDED TO INTRODUCE THOSE

3     DOCUMENTS, THE PARTIES SIMPLY DON'T HAVE THE TIME.

4          THE COURT:  WELL, WHY DON'T WE DO THIS:  IT SEEMS

5     LIKE IT'S PREMATURE AND IT DOESN'T REALLY REQUIRE MY

6     INVOLVEMENT AT THIS TIME, SO WHY DON'T YOU PLEASE TRY TO WORK

7     IT OUT AS SOON AS YOU CAN?  IF YOU HAVE ANY PROBLEMS, THEN LET

8     ME KNOW.

9          I'M JUST WONDERING, WOULD IT BE HELPFUL TO BOTH SIDES IF

10    YOU SET A DATE BY WHICH YOU'RE GOING TO NARROW YOUR EXHIBIT

11    LISTS OR YOUR WITNESS LISTS?  WOULD THAT BE HELPFUL TO YOU IN

12    PREPARING SO YOU'RE NOT GOING TO DO A SCATTERSHOT PREPARATION?

13         MS. MAROULIS:  IT'S PROBABLY MORE THE QUESTION OF

14    WHAT'S GOING TO BE SUBJECT TO THE MOTIONS THAN --

15         THE COURT:  OH, OKAY.

16         MR. MCELHINNY:  WE HAVE ALREADY AGREED THAT, AS PART

17    OF THIS MEETING AND CONFERRING ON THE STIPULATIONS, THAT THIS

18    WOULD BE ONE OF THE STIPULATIONS THAT WE WOULD -- WE GAVE YOU

19    WHERE THE PARTNERS --

20         MS. MAROULIS:  WE WILL BE TALKING ABOUT IT ON -- I

21    THINK THE 30TH WAS THE DATE THAT WE SET TO MEET AND CONFER.  SO

22    WE'LL REPORT BACK ON THE 1ST.

23         THE COURT:  OKAY.  ALL RIGHT.  I DON'T HAVE ANYTHING

24    ELSE, THANKFULLY, TODAY.

25         DO YOU ALL HAVE ANYTHING ELSE THAT YOU WANTED TO RAISE?

1      YOUR OBJECTIONS TO EACH OTHER'S PRELIMINARY JURY

2  INSTRUCTIONS LOOKED, THANKFULLY, VERY MANAGEABLE COMPARED TO

3  LAST YEAR.

4      ANYTHING ELSE?  OTHERWISE THANK YOU.

5          MS. MAROULIS:  JUST --

6          MR. PRICE:  I HOPE NOT, YOUR HONOR.  WE'RE CHECKING.

7          THE COURT:  OKAY, YES.

8          MR. PRICE:  LET ME WEIGH IN.

9          THE COURT:  SURE.

10         MR. MCELHINNY:  I ACTUALLY DO HAVE ONE ADDITIONAL

11  THING.

12         THE COURT:  WHAT'S THAT?

13         MR. MCELHINNY:  I JUST WANT TO MAKE SURE THAT WE

14  UNDERSTAND THE PROCESS.

15      WHEN WE FILED OUR 30 OBJECTIONS --

16         THE COURT:  UM-HUM.

17         MR. MCELHINNY:  -- BOTH PARTIES FILED CHARTS OF

18  OBJECTIONS TO THE TRIAL EXHIBITS AND THEY FILED A MOTION AND

19  OURS WERE STRICKEN.

20      WHAT I UNDERSTAND THE PROCESS IS GOING TO BE NOW IS THAT

21  FOR THE ONES YOU HAVEN'T RULED ON, THE OBJECTIONS COME UP AS

22  OUR DOCUMENTS ARE OFFERED YOUR HONOR THE PROCESS OF THE -- THE

23  PROCESS THAT WE'RE WORKING ON IN TERMS OF EXHIBITS WILL BE

24  EXCHANGED THREE DAYS IN ADVANCE.  IF THERE ARE OBJECTIONS,

25  THEY'LL BE PRESENTED TO THE COURT.  THAT'S THE TIMING YOUR

1    HONOR NOW WANTS FOR OBJECTIONS TO THOSE EXHIBITS?

2             THE COURT:  WELL, I DON'T WANT ANYTHING NEW RIGHT NOW

3    BECAUSE THERE'S STILL QUITE A BIT THAT WE HAVE TO DO AND

4    PROBABLY WE JUST WILL NOT HAVE THE BANDWIDTH TO BE ABLE TO

5    HANDLE MORE.

6        I THINK -- TO THE EXTENT WE CAN GIVE YOU A RULING SOONER

7    THAN THE TRIAL, WE WILL.

8        I THINK FOR A LOT OF THE SPECIFIC OBJECTIONS, THOUGH, IT

9    DOES DEPEND ON WHAT EVIDENCE COMES IN AT TRIAL --

10            MR. MCELHINNY:  RIGHT.

11            THE COURT:  -- AND HOW THINGS ARE PRESENTED, WHAT'S

12   NEEDED TO REALLY RESPOND.

13       BUT, YOU KNOW, IF THERE ARE ANY THAT WE CAN DECIDE RIGHT

14   NOW SORT OF WITH THE CONTEXT THAT WE HAVE, WHICH IS QUITE

15   LIMITED, WE'LL DO THAT.

16            MR. MCELHINNY:  FOR NOW, ALL I'M TRYING TO MAKE SURE

17   IS THAT YOUR HONOR HAS NOT CONCLUDED THAT -- LET ME PUT IT

18   DIFFERENTLY, THAT WE WILL GET A CHANCE TO OBJECT AT SOME POINT

19   TO EVIDENCE THAT'S BEING OFFERED IN AN EVIDENTIARY FASHION.

20            THE COURT:  OH, YES.  WE'RE STILL GOING TO USE THE

21   SAME PROCEDURE.  YOU ALL JUST KINDLY AGREED TO ADVANCE THE TIME

22   SO WE HAVE A LITTLE BIT MORE TIME TO DIGEST AND GIVE YOU AN

23   ORDER, BUT WE'LL STILL GO THROUGH THAT PROCEDURE.

24       NOW, I THINK LAST TIME IT WAS LIMITED TO, I THINK, WHAT --

25   IT WAS UNLIMITED, BUT THEN LATER WE LIMITED IT TO, WHAT, TWO

1    PRIMARY OBJECTIONS PER WITNESS?  OR WHAT WAS IT?  I CAN'T

2    RECALL THE SPECIFICS.  WE'LL HAVE TO GO BACK AND LOOK.

3            MS. MAROULIS:  THAT SOUNDS ABOUT RIGHT, YOUR HONOR.

4    WE'LL HAVE TO DOUBLE-CHECK.  I THINK IT WAS TWO HIGH PRIORITY

5    OBJECTIONS PER WITNESS.

6            THE COURT:  PER WITNESS.

7            MS. MAROULIS:  BUT THERE WERE SOME OTHER PARAMETERS.

8    WE'LL DOUBLE-CHECK.

9            THE COURT:  OKAY.  SO, YOU KNOW, WE HAD TO GET TO

10   THAT JUST BECAUSE WE COULD NOT PROCESS THE SHEER VOLUME OF

11   OBJECTIONS THAT YOU ALL WERE FILING.

12       YOU KNOW, I CERTAINLY DON'T WANT TO PREVENT YOU FROM

13   FILING VALID OBJECTIONS.  I MIGHT BE WILLING TO RECONSIDER THAT

14   NUMBER, BUT I -- YOU KNOW, I'M ALSO JUST CONCERNED ABOUT HOW

15   MUCH WE CAN HANDLE --

16           MR. MCELHINNY:  I --

17           THE COURT:  -- EVERY DAY.

18           MR. MCELHINNY:  AND I THINK I'M -- I MAY BE -- WE MAY

19   BE TALKING SLIGHTLY AT CROSS PURPOSES.

20       THE STANDING PRETRIAL ORDERS AND ALL THE PRETRIAL ORDERS

21   REQUIRE, AT SOME POINT, THE PARTY TO FILE A LIST OF WHAT THEIR

22   OBJECTIONS ARE.

23           THE COURT:  UM-HUM.

24           MR. MCELHINNY:  IT DOESN'T REQUIRE THE COURT TO RULE

25   ON THEM AT THAT TIME, AND THEY MAY NOT EVER BE RAISED

1    SUBSEQUENTLY, BUT FOR THE RECORD, WE -- AT SOME POINT NORMALLY

2    YOU'RE SUPPOSED TO SUBMIT A LIST OF, YOU KNOW, THE TRIAL

3    EXHIBITS AND WHICH ONES ARE OBJECTED TO AND WHAT THOSE

4    OBJECTIONS ARE SO THAT EVERYBODY KNOWS WHAT THAT UNIVERSE IS.

5    THAT'S YOUR HONOR'S STANDING RULE.  APPARENTLY IT WAS TRUMPED

6    IN THIS ONE BECAUSE WE HAD THE 30 LIMITATION.

7        I'M NOT SEEKING TO GET YOUR HONOR --

8        THE COURT:  NO, I DON'T WANT YOU TO FILE THAT.  I

9    THINK WE HAVE SET UP AN ORDERLY PROCESS FOR YOU TO RAISE YOUR

10   OBJECTIONS AND WE SHOULD JUST FOLLOW THAT.

11       THIS -- I DON'T DO THAT IN EVERY CASE.  THIS IS JUST

12   BECAUSE THIS CASE IS TOO COMPLEX FOR ME TO MANAGE JUST

13   SPONTANEOUSLY.  IT'S NOT LIKE A CRIMINAL CASE WHERE I JUST RULE

14   ON EVERYTHING ON THE BENCH.

15       MR. MCELHINNY:  THAT'S FINE.  BUT THEN I NEEDED TO

16   MAKE SURE THAT OUR RIGHT TO MAKE OBJECTIONS WILL BE PRESERVED

17   IN SOME WAY IN THIS PROCESS.

18       THE COURT:  BEYOND WHAT?  I MEAN, YOU'VE ALREADY

19   FILED THOSE CHARTS AND CHARTS OF MAKING 403 OBJECTIONS AND

20   RELEVANCE OBJECTIONS.

21       MR. MCELHINNY:  THAT'S WHAT YOU -- YOU STRUCK OURS,

22   YOUR HONOR.

23       THE COURT:  I KNOW.

24       MR. MCELHINNY:  THEY HAVE THEIRS -- THEIRS IS IN THE

25   RECORD, OURS WAS STRICKEN.  THAT'S -- SO THE QUESTION IS, AS AN

1    EVIDENTIARY MATTER, HOW DO I PRESERVE THE FACT THAT I'M

2    OBJECTING TO A DOCUMENT?  THAT'S -- AND AS I UNDERSTOOD IT,

3    BECAUSE YOU WEREN'T TAKING THE CHART, THEN WE WERE GOING TO DO

4    IT IN THIS ROLLING PROCESS.

5              THE COURT:  YES.  BUT ARE YOU GOING TO -- I THOUGHT A

6    LOT OF THOSE WERE QUITE ABSURD IN YOUR CHART, THE OBJECTIONS.

7    ARE YOU GOING TO BE DOING THAT EVERY NIGHT?  YOU'RE GOING TO BE

8    FILING THOSE KIND OF SAME FRIVOLOUS OBJECTIONS TO EVERY SINGLE

9    DOCUMENT?

10             MR. MCELHINNY:  I AM NOT GOING TO FILE EITHER A

11   FRIVOLOUS OR AN ABSURD OBJECTION.

12             THE COURT:  OKAY.  BECAUSE I DID LOOK THROUGH THAT

13   CHART BEFORE I STRUCK IT AND I THOUGHT, "I CANNOT BELIEVE THEY

14   ARE DOING THIS."

15             MR. MCELHINNY:  YOUR HONOR, AS YOUR HONOR KNOWS, THE

16   PROCESS -- IT'S JUST A QUESTION -- IT'S A QUESTION OF

17   PRESERVING -- WE'RE NOT DOING IT THIS WAY, BUT NORMALLY IN YOUR

18   CHARTS, YOU FILE A CHART TO PRESERVE WHAT YOUR OBJECTIONS ARE.

19             THE COURT:  OKAY.

20             MR. MCELHINNY:  AND THEN AT A SUBSEQUENT POINT, YOU

21   HAVE TO --

22             THE COURT:  SO HOW MANY OBJECTIONS ARE YOU GOING TO

23   BE FILING FOR EVERY EXHIBIT THAT IS GOING TO BE INTRODUCED IN

24   THIS TRIAL?

25             MR. MCELHINNY:  SEE, THAT'S -- WE DON'T KNOW WHAT

1    EXHIBITS THEY'RE GOING TO OFFER.  IF YOU'RE DEALING FROM AN

2    EXHIBIT LIST, THAT'S ONE THING.  IF YOU'RE DEALING FROM

3    EXHIBITS THAT THEY'VE TOLD YOU TWO, THREE DAYS, FOUR DAYS IN

4    ADVANCE THAT THEY'RE GOING TO OFFER, IT'S A MUCH SMALLER

5    NUMBER.

6         I DON'T HAVE TO BOTHER OBJECTING -- LAST TIME WE OBJECTED

7    TO 10'S AND 20'S AND 30'S OF EXHIBITS ON A CHART THEY WERE

8    NEVER OFFERED AT TRIAL.  THE ISSUE NEVER CAME UP BEFORE YOUR

9    HONOR.

10             THE COURT:  WELL, I WOULD LIKE THE PROCEDURE THAT WE

11    HAD ESTABLISHED LAST TIME, THAT YOU DO AN EXCHANGE A FEW DAYS

12    BEFORE, YOU MEET AND CONFER IN PERSON TO SEE IF YOU CAN RESOLVE

13    ANY OBJECTIONS, AND THEN YOU ONLY FILE REALLY -- I MEAN, I WAS

14    GETTING FULL PARAGRAPHS OF NOTHING BUT OBJECTIONS AS TO THE

15    SAME DOCUMENT.  I MEAN, THAT WAS REALLY EXCESSIVE.

16         SO YOU FILE YOUR OBJECTIONS AT THAT TIME AND RESPONSES AT

17    THE SAME TIME AND I'LL GIVE YOU A RULING.

18             MR. MCELHINNY:  THANK YOU.

19             THE COURT:  OKAY.

20             MS. MAROULIS:  YOUR HONOR, THERE'S ONE ISSUE THAT

21    NEEDS TO BE RESOLVED BEFORE TRIAL, BUT NOT NECESSARILY TODAY.

22             THE COURT:  OKAY.

23             MS. MAROULIS:  AND MAYBE WE CAN RESOLVE IT, BUT APPLE

24    INCLUDED A LOT OF INFORMATION IN THE FINANCIAL DOCUMENTS ABOUT

25    THE PRODUCTS THAT WERE SUBJECT TO THE PRIOR TRIAL.

1          THE COURT:  OKAY.

2          MS. MAROULIS:  AND IT'S, FOR EXAMPLE, THE JOINT

3     EXHIBIT ON FINANCES, SO WE WILL TRY TO MEET AND CONFER WITH

4     THEM, BUT IF WE'RE NOT ABLE TO RESOLVE IT, IT'S PART OF OUR

5     MOTION TO STRIKE, SO WE JUST WANTED TO FLAG THAT BECAUSE IT IS

6     SOMETHING THAT NEEDS TO BE RESOLVED BEFORE THE TRIAL.

7          THE COURT:  SO WHAT WOULD YOU LIKE?  YOU WOULD LIKE

8     TO HAVE A SORT OF REVISED DOCUMENT THAT ONLY HAS THE --

9          MS. MAROULIS:  YES, YOUR HONOR, ONLY THE 13 PRODUCTS

10    AT ISSUE HERE.  AND IT'S A JOINT EXHIBIT, SO IT SHOULDN'T BE

11    CONTROVERSIAL ABOUT HOW TO REVISE IT.

12         THE COURT:  DO YOU HAVE ANY OBJECTION TO THAT?

13         MR. MCELHINNY:  YES.  THESE ARE FINANCIAL CHARTS

14    SHOWING SALES OF PHONES.  THEY'RE USED AS BACKGROUNDS FOR

15    OPINIONS FROM AN EXPERT THAT COVER SEVERAL DIFFERENT OPINIONS

16    THAT COME IN.  ONE IS THE SIZE OF THE MARKET.  TWO, DEMAND IN

17    TERMS OF DEMAND FOR INFRINGING PHONES GETS COUNTED AS DEMAND

18    FOR THE DEVICES AND THE PHONES.

19         THE COURT:  SO ARE YOU OBJECTING TO IDENTIFYING WHICH

20    PHONES DON'T INFRINGE, EITHER THE INTERCEPT AND THE OTHER ONES

21    THAT WERE FOUND NON-INFRINGING BY THE JURY?

22         MR. MCELHINNY:  TO BE CLEAR, OUR CHARTS ARE JUST

23    LISTS OF PHONES.

24         THE COURT:  UM-HUM.

25         MR. MCELHINNY:  I MEAN, I -- WE'RE NOT TALKING -- I

1           MEAN, THE ANSWER TO YOUR QUESTION -- I'M SORRY.  I SHOULDN'T BE

2      DOING THIS AT THIS HOUR.

3           WE DON'T THINK THIS JURY SHOULD BE TOLD "THE PRIOR JURY

4      FOUND THIS PHONE DOES NOT INFRINGE."

5               THE COURT:  BUT YOU THINK THEY SHOULD BE TOLD THAT

6      THESE DO INFRINGE AND THUS SHOULD BE COUNTED TOWARDS THE MARKET

7      AND DEMAND FOR INFRINGING PRODUCTS THAT INCORPORATE THE

8      PATENTS?

9               MR. MCELHINNY:  WE -- YOU TOOK THE JURY OUT, AND

10     THAT'S THE IMPORTANT PART.  WE THINK THAT THE JURY SHOULD BE

11     TOLD THAT THERE WERE SALES OF OTHER INFRINGING PHONES, YES.

12     THAT'S -- OUR EXPERT HAS THAT.

13              THE COURT:  I GUESS I DON'T UNDERSTAND.  YOU'RE

14     SAYING YOU'RE GOING TO TELL THEM WHICH ONES WERE FOUND

15     INFRINGING, BUT NOT TELL THEM WHICH ONES WERE FOUND

16     NON-INFRINGING?  AND WHY SHOULD YOU HAVE THAT KIND OF DOUBLE

17     STANDARD?

18              MR. MCELHINNY:  I THINK -- I THINK IT'S LATE.  I

19     MEAN, THE -- I THINK THE ANSWER IS THAT IT GOES TO THE QUESTION

20     FOR WHICH IT'S OFFERED AND WHETHER OR NOT IT'S RELEVANT TO THE

21     QUESTION FOR WHICH IT'S OFFERED.

22          AND IT IS RELEVANT TO CERTAIN OF THE FINANCIAL NUMBERS

23     THAT GO IN IN TERMS OF HOW MANY PHONES WERE SOLD, WHAT THE

24     MARKET WAS.

25              THE COURT:  AND IT'S ALSO RELEVANT FOR NON-INFRINGING

1    ALTERNATIVES.

2            MR. MCELHINNY:  WELL, THAT'S -- THAT IS -- WE

3    HAVEN'T --

4            THE COURT:  YOU CAN'T --

5            MR. MCELHINNY:  WE HAVEN'T FAILED TO --

6            THE COURT:  YOU CAN'T GET A DOUBLE STANDARD HERE.

7    IT'S EITHER -- I DON'T THINK IT'S RIGHT THAT YOU CHERRY PICK

8    THE JURY VERDICTS THAT HELP YOU AND TRY TO EXCLUDE EVERYTHING

9    THAT'S NOT HELPFUL TO YOUR CASE.  I THINK IT'S RELEVANT TO

10   INFRINGING ALTERNATIVES.

11           MR. MCELHINNY:  THIS IS WHERE WE GOT IN TROUBLE THE

12   LAST TIME.  WE DIDN'T CHERRY PICK.  WE EXCLUDED THE

13   NON-INFRINGING SALES FROM THESE CHARTS, SO WE DIDN'T PUT THOSE

14   NUMBERS IN.  WE USED THEM CONSISTENTLY.

15       BUT THE NUMBERS ARE RELEVANT --

16           THE COURT:  WHICH MOTION -- I'M SORRY TO INTERRUPT

17   YOU.  WHICH MOTION IS THIS?

18           MS. MAROULIS:  THIS IS PART OF SAMSUNG'S MOTION TO

19   EXCLUDE EXHIBITS.  IT'S THE VERY TAIL END OF IT.

20           THE COURT:  OKAY.  WELL, I'M SORRY.  I DON'T HAVE ALL

21   OF THE RULINGS ON YOUR EXHIBITS.

22           MS. MAROULIS:  YEAH, THAT'S FINE.  WE WANTED TO FLAG

23   THIS, NOT RESOLVE IT RIGHT NOW.

24           THE COURT:  SURE.  SO IF I DIDN'T GET TO IT TODAY, I

25   WILL TRY TO ISSUE YOU A WRITTEN RULING, AND I APOLOGIZE THAT

1      YOUR MOTIONS DID NOT MAKE IT TO MY LONG LIST TODAY FOR THE MOST

2      PART.

3           SO IT WILL BE IN A WRITTEN RULING.  IF THERE'S SOMETHING

4      UNCLEAR, THEN I MIGHT ASK YOU ABOUT IT ON NOVEMBER 5TH.

5                MS. MAROULIS:  SURE.

6                THE COURT:  BUT REST ASSURED THAT YOUR MOTIONS ARE

7      CAREFULLY BEING STUDIED, ANALYZED.  WE'RE JUST TRYING TO DO OUR

8      BEST HERE.

9                MS. MAROULIS:  ABSOLUTELY.  THANK YOU, YOUR HONOR.

10     WE SHOULD CLOSE FOR TODAY.

11               MR. MCELHINNY:  I'M ACTUALLY IMPRESSED ON HOW MUCH

12     YOU DID RULE ON TODAY, YOUR HONOR, GIVEN THE FILINGS.

13               THE COURT:  OKAY.  ALL RIGHT.  I THINK YOU'RE SET.  I

14     REALLY, REALLY HOPE THAT YOU'RE ABLE TO REACH SOME AGREEMENTS,

15     HOPEFULLY.  I'LL LOOK FORWARD TO SEEING THAT.

16          AND THEN I'LL SEE YOU ON NOVEMBER 5TH AT 2:00 O'CLOCK.

17     WHAT I'M PLANNING TO DO ON THE PRELIMINARY -- THE PRELIMINARY

18     JURY INSTRUCTIONS HAVE TO GET DONE BEFORE THE 12TH.  THE FINAL

19     ONES I'LL PROBABLY LEAVE -- I MEAN, WE'LL START WORKING ON THEM

20     BECAUSE THEY TAKE A LONG TIME, BUT I'LL PROBABLY LEAVE FOR A

21     JURY CONFERENCE THAT'S CLOSER TO THE END OF THE TRIAL.

22          BUT FOR THE PRELIMINARIES, I WILL, YOU KNOW, FILE A

23     PROPOSED SET BEFORE THE 5TH TO GIVE YOU AN OPPORTUNITY ON THE

24     5TH TO RAISE ANY OF YOUR OBJECTIONS TO THOSE.

25          ON THE VERDICT FORM, I'M PROBABLY LIKELY TO GO WITH

1   SOMETHING THAT MORE RESEMBLES THE FORM THAT WE USED LAST YEAR,

2   JUST TO TRY TO KEEP SOME CONSISTENCY FOR APPELLATE REVIEW,

3   WHICH THEN MEANS PROBABLY IT'S GOING TO BE CLOSER TO APPLE'S

4   PROPOSED VERDICT FORM.

5       THE VOIR DIRE, I THOUGHT WHAT YOU ALL PROPOSED LOOKED

6   FINE.

7       I AM PLANNING, AT THIS POINT, WHEN WE'RE ASKING THE

8   POTENTIAL JURORS ABOUT THEIR KNOWLEDGE OF THIS CASE, TO

9   PROBABLY DO THAT ONE JUROR AT A TIME, AND I'M GOING TO

10  LOGISTICALLY HAVE TO FIGURE OUT WHERE TO HOUSE EVERYBODY AND

11  WORK OUT A VERY QUICK SYSTEM WHERE WE BRING THEM IN AND OUT AS

12  QUICKLY AS POSSIBLE SO WE DON'T LOSE A LOT OF TIME WITH JUST

13  MOVING PEOPLE.

14      IF THERE ARE ANY OTHER THINGS THAT YOU WANT ME TO DO

15  SPECIAL WITH THIS JURY SELECTION, IF YOU COULD LET ME KNOW, I

16  DON'T KNOW IF YOU'VE THOUGHT ABOUT ANYTHING OTHER THAN THAT

17  ONE.

18          MR. MCELHINNY:  THIS DOESN'T ANSWER THAT.

19          THE COURT:  YEAH.

20          MR. MCELHINNY:  BUT IS THERE A POSSIBILITY WE COULD

21  USE THIS COURTROOM?  WE JUST DON'T THINK THAT COURTROOM

22  UPSTAIRS IS THAT MUCH BIGGER AND THIS ONE IS MUCH MORE

23  CONVENIENTLY LAID OUT FOR TRIAL COUNSEL.  THAT'S FOR YOUR HONOR

24  TO CONSIDER.

25          MR. PRICE:  THAT'S OKAY WITH US --

1          MR. MCELHINNY:  WE MAY NOT DRAW THE HUGE CROWDS THIS

2      TIME.

3          MR. PRICE:  -- IF YOU GET SOME AIR CONDITIONING.

4          THE COURT:  I'M SORRY?

5          MR. PRICE:  IF YOU GET SOME AIR CONDITIONING, IT'S

6      OKAY WITH US.

7          (LAUGHTER.)

8          THE COURT:  I KNOW.  I'VE GOT A ROBE, TOO.  I'M DYING

9      TODAY.

10          MR. LEE:  THE GOVERNMENT IS UP AND RUNNING.

11          THE COURT:  WELL, WE'LL SEE WHAT WE CAN DO ON THE

12      TEMPERATURE.  I'M NOT SURE WHY IT IS SO HOT TODAY IN HERE.

13          YEAH, IF WE DON'T HAVE THE DEMAND -- NOW, YOU ALL LAST

14      TIME HAD A LOT OF CLIENTS, A LOT OF YOUR LEGAL TEAMS.  WILL YOU

15      NOT BE NEEDING THE SPACE?  BECAUSE I THINK LAST TIME YOU ALL

16      HAD THE FIRST TWO OR THREE ROWS.  DO YOU NOT NEED THAT MUCH

17      SPACE THIS TIME?

18          MR. MCELHINNY:  WE PROBABLY DO NEED THE SAME, BUT WE

19      THINK IT'S -- GIVEN THE SPACE AROUND THE TABLES, WE THINK,

20      RACHEL THINKS THERE'S MORE ROOM DOWN HERE THAN THERE IS

21      UPSTAIRS.  I'M SPATIALLY CHALLENGED.  I DON'T KNOW.

22          THE COURT:  BUT YOU HAD, LIKE, SEPARATE TABLES.

23      REMEMBER, LAST TIME YOU ALL HAD TWO OR THREE TABLES EACH.

24      REMEMBER, YOU BROUGHT IN YOUR BACK TABLE WHERE MR. LEE SAT

25      AND --

1          MR. PRICE:  I THINK THERE'S A LOT MORE ROOM UPSTAIRS

2     AND I THINK WE PROBABLY WOULD NEED TWO ROWS.

3          THE COURT:  OKAY.

4          MR. LEE:  I ENDED UP SITTING CLOSER TO MR. VERHOEVEN

5     THAN I DID TO HIM, SO --

6          MR. PRICE:  YEAH.

7          THE COURT:  I MEAN, IF YOU THINK YOU WON'T NEED THE

8     SPACE, YOU KNOW, AS LONG AS WE CAN GET THE TEMPERATURE RIGHT IN

9     HERE, THIS IS FINE.

10         DO YOU THINK -- HOW MANY -- WHAT ARE YOUR -- LIKE LAST

11    TIME, REMEMBER, YOU HAD SEPARATE TABLES.  YOU HAD TWO OR THREE

12    TABLES.  YOU WON'T NEED THAT THIS TIME?

13         MR. PRICE:  I THINK WE'LL NEED TO USE THE FIRST TWO

14    ROWS.

15         THE COURT:  OKAY.  BUT YOU WON'T NEED THE SEPARATE

16    TABLES?

17         MS. MAROULIS:  CAN WE TALK ABOUT THIS WITH THE FOLKS

18    THAT --

19         THE COURT:  SURE.  YOU CAN LET ME KNOW ON THE 5TH.

20    AND IF THERE ARE ANY OTHER THINGS YOU WANT DONE DIFFERENTLY,

21    BETTER, JUST, YOU KNOW, LET ME KNOW.

22         BUT THAT'S WHAT I WAS THINKING IN TERMS OF JURY SELECTION,

23    AT LEAST THAT WOULD BE ONE AT A TIME.  I DON'T THINK WE NEED TO

24    DO ANYTHING ELSE ONE AT A TIME.  I JUST DON'T WANT THEM

25    TAINTING EACH OTHER WITH WHATEVER STRONG VIEWS THEY HAVE ABOUT

1    WHAT HAPPENED ALREADY.

2              MR. PRICE:  YEAH.

3              THE COURT:  OKAY.  SO IF THERE'S NOT ANYTHING ELSE, I

4    WILL SEE YOU THEN ON THE 5TH OF NOVEMBER, AND IF THERE ARE ANY

5    OTHER ISSUES, YOU CAN RAISE THEM THEN.

6         OKAY.  THANK YOU.

7              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

8              MS. MAROULIS:  THANK YOU, YOUR HONOR.

9              MR. PRICE:  THANK YOU, YOUR HONOR.

10             MR. LEE:  THANK YOU, YOUR HONOR.

11         (PROCEEDINGS CONCLUDED AT 6:40 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                         CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  OCTOBER 21, 2013

19

20

21

22

23

24

25