HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S STATEMENT REGARDING DESIGN-AROUND START DATES IN RESPONSE TO THE COURT'S OCTOBER 18, 2013 ORDER**<br><br>Judge:    Hon. Lucy H. Koh<br>Place:    Courtroom 8, 4th Floor<br>Trial:    November 12, 2013 at 9 a.m. |

For the reasons stated below and in Apple's prior submissions (Dkts. 2407-3, 2465, 2543), Apple submits that Ms. Davis should be permitted to present to the jury lost profits calculations based on design-around periods that begin on the date of notice and not of first infringement.

### A. Samsung Bears The Burden Of Proving That Its Alleged Design-Arounds Would Have Been Available During The Damages Period.

Lost profits are appropriate whenever there is a "reasonable probability that, 'but for' the infringement, [the patentee] would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).  To prevent the hypothetical reconstruction of the "but for" market "from lapsing into pure speculation," the Federal Circuit "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999).

As to the second *Panduit* factor—absence of acceptable non-infringing alternatives—"an accurate reconstruction of the hypothetical 'but for' market takes into account any alternatives available to the infringer." *Grain Processing*, 185 F.3d at 1351.  Since the relevant question is whether (and to what extent) non-infringing alternatives would have displaced lost sales that the patentee seeks to recover, "[t]he critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the accounting period." *Id.* at 1353; *see Funai Elec. Co. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1105 (N.D. Cal. 2009).  Thus, if a non-infringing alternative were available only before or after the damages period, it would not curtail any lost sales claimed by the patentee and (if the other factors are met) lost profits should be awarded for the entire period.  But if a non-infringing alternative were available for at least some of the damages period, the calculation must account for sales that likely would have gone to the non-infringing alternative rather than to the patentee.

When an alleged alternative is not actually on the market during the period for which the patentee seeks lost profits—and, for example, the infringer would have had to "design around" the patent to create an alternative—the factfinder may "reasonably infer that it was not available as a noninfringing substitute at that time." *Grain Processing*, 185 F.3d at 1353.  The burden

shifts to the infringer to show "that the substitute was available during the accounting period." *Id.*; *see DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009). "Mere speculation or conclusory assertions will not suffice" to overcome the inference that the alleged substitute was not available. *Grain Processing*, 185 F.3d at 1353. Thus, Samsung bears the burden of proving—based on facts and sound economic realities, not conclusory assertions or speculation—that its design-arounds would have been available during the damages period.

### B. When Samsung Would Have Started Designing Around Apple's Patents Is A Disputed Question Of Fact For The Jury To Decide.

Whether Samsung can meet its burden of proving that a suitable non-infringing alternative would have been available during the damages period is a question of fact. *Grain Processing*, 185 F.3d at 1353-55 (reviewing factual findings as to whether and when a non-infringing alternative was "in fact 'available'" for clear error); *DePuy*, 567 F.3d at 1332 ("[S]ubstantial evidence supports the jury's factual finding under the second *Panduit* factor."). Here, the experts dispute—as a factual matter—when Samsung would have started designing around the patents to develop non-infringing alternatives and when those alternatives would have become available.

Apple's expert Julie Davis calculated lost profits only on infringing units sold during the months that Samsung would have been out of the market while designing around Apple's patents. (Dkt. No. 2386-2, Davis Rpt. ¶¶ 109, 120.) To determine when the design-around period would begin, Ms. Davis did not simply pick the dates on which Samsung received notice of Apple's patents; she took the latest of the dates on which (i) the patent issued, (ii) Samsung first sold an infringing product, and (iii) Samsung received actual notice of infringement of the specific patent. (*Id.* ¶ 120.) Applying the notice dates determined by the Court in the March 1 Order, Ms. Davis observed that Samsung received notice *after* the patents issued and after Samsung had begun selling infringing products. (*Id.*) She thus determined that Samsung would have begun designing around Apple's patents on the notice dates determined by the Court. (*Id.*) As Ms. Davis explained in deposition, those notice dates are "the first date[s] that Samsung could be assumed to start a design-around" because "I don't see how Samsung can design around a patent until it's

APPLE'S STATEMENT RE DESIGN-AROUND START DATES IN RESPONSE TO OCTOBER 18, 2013 ORDER
Case No. 11-cv-01846-LHK (PSG)
sf-3346111

2

notified of its existence and the fact that it's infringing." (Dkt. No. 2544-1 at 110:13-22; *see id.* at 113:1-4, 130:21-131:12, 135:5-13.) Ms. Davis's design-around start dates appropriately reflect the actual facts underlying the "but for" world that must be reconstructed in a lost profits analysis. (*Id.* at 136:3-6 ("[W]e have to think about the reality of what did happen in the real world in considering what would have likely happened in the reconstructed world.").)

Samsung's expert Michael Wagner, in contrast, assumed the design-around period would have started on the date of first infringement—although Samsung did not have notice of Apple's patents at that time. (Dkt. No. 2382-4, Wagner Rpt. ¶¶ 174-175.) As Ms. Davis has explained, that position is "illogical" as Samsung could not have designed around patents it did not know about. (Dkt. No. 2386-2, Davis Rpt. ¶ 71; Dkt. No. 2544-1 at 134:21-135:13.)[1] Apparently agreeing with Ms. Davis on this point, Mr. Wagner conceded at his deposition that it is "highly unlikely" that anyone would design around a patent he does not know about. (Olson Decl. Ex. A at 794:22-795:1.) Mr. Wagner also admitted that he is not "aware of any fact that suggests that the design-around would have started" at the time of first infringement. (*Id.* at 939:11-16.)

While Apple maintains that Mr. Wagner's opinion is inappropriately based on conclusory assumptions rather than the facts of this case, this is a quintessential factual dispute about which expert is interpreting the facts more reasonably. After hearing the evidence and the testimony of both experts, the jury should be permitted to determine when Samsung would have begun designing around Apple's patents, how long it would have taken Samsung to design around, and what impact any design-arounds would have had on Apple's sales in the "but for" world. Indeed, those factual questions are all subsumed in the Court's instruction to the first jury that it was to decide whether "there were no non-infringing substitutes for each of the infringing products, or, if there were, the number of sales of each product made by Samsung ... that Apple would have made despite the availability of other non-infringing substitutes" and "whether Samsung had to design or invent around the patented technology to develop an alleged substitute." (Dkt. No. 1903 at

---

[1] Nor has Samsung provided any evidence that it learned of the infringed patents earlier. Rather, Samsung has maintained that it became aware of the '381 patent in August 2010, and of the other patents when it was sued by Apple. (*E.g.*, Olson Decl. Ex. B at 9-11.)

APPLE'S STATEMENT RE DESIGN-AROUND START DATES IN RESPONSE TO OCTOBER 18, 2013 ORDER
Case No. 11-cv-01846-LHK (PSG)
sf-3346111

3

51.) The Court should ask the second jury to decide the same factual questions.[2]

### C. Samsung's Insistence That The Design-Around Period Must, As A Matter of Law, Start On The Date Of First Infringement Is Wrong.

*Grain Processing* does not suggest, let alone legally compel a presumption, that the design-around period must begin on the date of first infringement. That case did not even find a design-around period to be applicable. Instead, the court found—based on real-world facts—that the infringer "did not have to 'invent around' the patent" because it had a non-infringing alternative already available to it at the start of the damages period. 185 F.3d at 1354. The court awarded no lost profits because (among other reasons) the infringer could have brought that alternative to market in just two weeks, a period that was, in that market, "practically instantaneous." *Id.* at 1346, 1354-55. In any event, the Federal Circuit stated that "[t]he critical time period for determining availability of an alternative" is the damages period. *Id.* at 1353.

Samsung's reliance on *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013), is similarly misplaced. Again, that case did not involve a design-around; it addressed the effect of price erosion on lost profits. The district court had precluded the patentee from "introducing evidence that … pre-notice infringing sales had depressed the market price of the patented products, thus reducing [the patentee's] profits on sales *after* the notice date." *Id.* at 1378. The Federal Circuit reversed that ruling because the exclusion of evidence had imposed a ***counter-factual*** assumption regarding the price of the patented products that skewed the calculation of lost profits during the damages period. *Id.* at 1378-79.

Samsung's focus on the date of first infringement also conflates the design-around period in a lost profits analysis with the hypothetical negotiation in a reasonable royalty analysis. But one has nothing to do with the other. A reasonable royalty analysis asks what agreement the parties would have reached if, assuming infringement of a valid patent, they had negotiated a license at the time of first infringement. As the Federal Circuit has explained:

---

[2] Even if the Court disagrees with Apple, it should still allow the jury to award lost profits after hearing the experts' competing calculations to allow for full appellate review without the need for another retrial. If Apple prevails but the Court decides to remit the damages award because it concludes Samsung's "infringement date" argument is correct, the Federal Circuit (to the extent it disagrees with this Court) could simply reinstate the jury verdict without a retrial.

APPLE'S STATEMENT RE DESIGN-AROUND START DATES IN RESPONSE TO OCTOBER 18, 2013 ORDER
Case No. 11-cv-01846-LHK (PSG)
sf-3346111

4

> [T]he purpose of the hypothetical negotiation framework [is] to discern the value of the patented technology to the parties in the marketplace when infringement began…. Were we to permit a later notice date to serve as the hypothetical negotiation date, the damages analysis would be skewed because, as a legal construct, we seek to pin down how the prospective infringement might have been avoided via an out-of-court business solution.

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).  A lost profits analysis asks an entirely different question:  what sales made by the infringer during the actual damages period would the patentee reasonably have made "but for" the infringement?  As noted above, the relevant period for considering whether a design-around would have been available and displaced some of the patentee's lost sales is the period for which lost profits are claimed.[3]

### D. Ms. Davis's Analysis Applies The Same Methodology That Mr. Musika Used And Complies With The Court's March 1 Order.

Samsung seeks to exclude Ms. Davis's lost profits calculations on the basis that Ms. Davis purportedly used a new methodology for determining the design-around start dates.  But Ms. Davis used *the same methodology* as Mr. Musika: both took the latest of the dates on which (i) the patent issued, (ii) Samsung first sold an infringing product, and (iii) Samsung received notice of infringement of the patent.  (Dkt. No. 2407-5, Musika Rpt. ¶ 129; Dkt. No. 2386-2, Davis Rpt. ¶ 120; *see* Dkt. No. 2543.)  Ms. Davis's opinion reflects only a change in the underlying facts (the notice dates), not a change in methodology.

Samsung also argues that the Court's exclusion of Mr. Musika's alternative computations at the first trial precludes Ms. Davis's opinions at the retrial.  But Mr. Musika offered his opinions based on the same methodology that Ms. Davis uses, and those opinions were admitted without objection.  Mr. Musika's alternative computations based on *Mr. Wagner's* notice dates were excluded not because of method, but timing.  Samsung had not had the opportunity to depose Mr. Musika on that issue.  (Dkt. No. 1690 at 2.)  Ms. Davis, however, is offering an opinion based not on *Mr. Wagner's* notice dates but on the *Court-ordered* notice dates, and she was deposed at length on that subject.  (*See* Dkt. No. 2544-1 at 36-38, 109-114, 130-136.)

---

[3] Samsung has misleadingly relied on *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978), because it refers to "the date on which the determination of available substitutes must focus, i.e., the date of first infringement."  *Id.* at 1162.  But that statement was *not about lost profits*; it was part of a *reasonable royalty* analysis.

| | | |
|---|---|---|
| 1 | Dated: October 21, 2013 | MORRISON & FOERSTER LLP |

By:  */s/ Harold J. McElhinny*
     HAROLD J. McELHINNY

Attorneys for Plaintiff
APPLE INC.

APPLE'S STATEMENT RE DESIGN-AROUND START DATES IN RESPONSE TO OCTOBER 18, 2013 ORDER
Case No. 11-cv-01846-LHK (PSG)
sf-3346111

6