```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4
     APPLE, INC.,                  )   CV-11-1846-LHK
5                                  )
                   PLAINTIFF,      )   SAN JOSE, CALIFORNIA
6                                  )
           VS.                     )   OCTOBER 22, 2013
7                                  )
     SAMSUNG ELECTRONICS CO. LTD, ET )  PAGES 1-96
8    AL,                           )
                                   )
9                  DEFENDANT.      )

10

11               TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE PAUL S. GREWAL
12              UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFF:     WILMER HALE
                            BY:  WILLIAM LEE
16                               JOSEPH MUELLER
                            60 STATE STREET
17                          BOSTON, MA 02109

18   FOR THE DEFENDANT:     QUINN EMANUEL
                            BY:  JOHN B. QUINN
19                               ROBERT BECHER
                                 DANIEL POSNER
20                               MICHAEL ZELLER
                            865 S. FIGUEROA ST., 10TH FL
21                          LOS ANGELES, CA 90017

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
23
                  APPEARANCES CONTINUED ON THE NEXT PAGE
24

25   OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
```

```
 1      FOR THE PLAINTIFF:        WILMER HALE
                                  BY:  MARK SELWYN
 2                                950 PAGE MILL ROAD
                                  PALO ALTO, CA 94304
 3

 4      FOR THE DEFENDANT:        QUINN EMANUEL
                                  BY:  RACHEL KASSABIAN
 5                                555 TWIN DOLPHIN DRIVE, 5TH FL
                                  REDWOOD SHORES, CA 94065
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      SAN JOSE, CALIFORNIA                      OCTOBER 22, 2013

 2                        P R O C E E D I N G S

 3         (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4      WERE HELD:)

 5               THE CLERK:  ALL RIGHT.

 6         MR. RIVERA, WOULD YOU CALL THE NEXT MATTER SET FOR THIS

 7      AFTERNOON'S CALENDAR.

 8               THE CLERK:  YES, YOUR HONOR.

 9         CALLING APPLE, INC. VERSUS SAMSUNG ELECTRONICS, ET AL.

10      CASE CV-11-1846-LHK.

11         MATTER ON FOR FURTHER HEARING ON PLAINTIFF'S MOTION TO

12      COMPEL FURTHER DISCOVERY AND FOR SANCTIONS.

13          PLEASE STATE YOUR APPEARANCES.

14               MR. LEE:  GOOD AFTERNOON, YOUR HONOR.

15         BILL LEE AND MARK SELWYN AND JOE MUELLER FOR APPLE.

16               THE COURT:  MR. LEE, GOOD AFTERNOON TO YOU AND YOUR

17      COLLEAGUES.

18               MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.

19         JOHN B QUINN, ROB BECHER, DAN POSNER AND MIKE ZELLER AND

20      RACHEL CASSABIAN FOR QUINN EMANUEL.

21               THE COURT:  MR. QUINN, GOOD AFTERNOON.

22               MR. QUINN:  FOR SAMSUNG.

23               THE COURT:  AND TO YOUR COLLEAGUES AS WELL.  GOOD

24      AFTERNOON.

25               MR. ALLEN:  GOOD AFTERNOON, YOUR HONOR.
```

1          RANDALL ALLEN FOR NOKIA.

2              THE COURT:  MR. ALLEN, WELCOME BACK, SIR.

3          ALL RIGHT.  LET ME BEGIN BY OBSERVING OVER THE LAST

4    24 HOURS I HAVE DONE MY BEST TO UNDERSTAND WHAT HAS HAPPENED

5    BETWEEN THAT POINT IN TIME AND THE LAST TIME WE GOT TOGETHER

6    WHICH I BELIEVE WAS OCTOBER 1ST OR OCTOBER 2ND.

7          YOU HAVE GIVEN ME PLENTY OF PAPER TO READ AND IT'S PAPER

8    I ASKED FOR, SO I CAN'T COMPLAIN.

9          I HAVE A NUMBER OF QUESTIONS I WOULD LIKE TO ADDRESS BUT

10   CANDIDLY I'M EAGER TO HEAR ALL THREE OF YOUR PERSPECTIVES ON

11   WHAT THIS EXERCISE WE HAVE RUN OVER THE PAST FEW WEEKS HAS

12   TAUGHT US AND WHAT, IF ANYTHING, REMAINS TO BE UNDERSTOOD

13   BEFORE THE COURT CAN CONSIDER THE MOTION FOR SANCTIONS AND

14   ISSUE A FINAL DECISION.

15         MR. LEE, I WILL START WITH YOU SINCE YOU ARE THE ONE WHO

16   BROUGHT THE MOTION IN THE FIRST PLACE.

17             MR. LEE:  THANK YOU, YOUR HONOR.

18        WHEN WE LAST APPEARED BEFORE THE COURT ON OCTOBER 1ST WE

19   SUGGESTED THE ISSUES UNDERLYING THE MOTION FOR DISCOVERY AND

20   SANCTIONS WERE CRITICALLY IMPORTANT TO THIS LITIGATION.

21         EVERYTHING THAT HAS OCCURRED TO DATE WAS CONFIRMED AS

22   TRUE.  BUT AS THE COURT STATED IN YOUR OCTOBER 2ND ORDER,

23   ISSUES ARE ALSO CRITICALLY IMPORTANT TO THE LITIGANTS WHO RELY

24   UPON PROTECTIVE ORDERS FROM THE COURT SUCH AS THIS.

25         WHAT I'M GOING TO DESCRIBE NOW WITHOUT VIOLATING ANY

1    PROTECTIVE ORDERS IS A MASSIVE UNAUTHORIZED DISCLOSURE OF

2    HIGHLY CONFIDENTIAL LICENSING INFORMATION.  IT'S A DISCLOSURE

3    WHICH UNDERMINES THE TRUST THAT CLIENTS, COMPANIES, LITIGANTS,

4    THEIR EXECUTIVES, AND FRANKLY, COUNSEL PLACE IN THE SYSTEM TO

5    PROTECT INFORMATION, INFORMATION THAT'S REQUIRED TO LITIGATE

6    DISPUTES FAIRLY AND SQUARELY, REQUIRED TO LITIGATE DISPUTES

7    WITHOUT COMPROMISING THE FUNDAMENTAL BUSINESSES OF PEOPLE.

8         WE ALL RELY UPON IT, SAMSUNG HAS RELIED UPON OUR LIVING

9    BY THE PROTECTIVE ORDER.  WE HAVE THOUGHT THE SAME.

10        I CAN TELL YOUR HONOR THAT ON A DAILY BASIS SINCE WE HAVE

11   APPEARED BEFORE YOUR HONOR WE ARE GETTING TELEPHONE CALLS AND

12   E-MAILS FROM OUR OTHER LICENSED PARTNERS OR OTHER CONTRACT

13   PARTNERS THAT SAY, DID YOU PRODUCE OUR INFORMATION DURING THE

14   DISCOVERY, WHAT HAS SAMSUNG DONE WITH IT?  AND WE DON'T HAVE AN

15   ANSWER.

16        WE THOUGHT AT THE TIME A WEEK AGO OR TWO WEEKS AGO THAT

17   WE HAD PRESENTED A CASE FOR DISCOVERY AND SANCTIONS THAT WAS IN

18   OUR VIEW AT THE TIME COMPELLING.  I KNOW SOME DISAGREE BUT WE

19   THOUGHT IT WAS COMPELLING.

20        WHAT I WOULD LIKE TO SAY FOR THE COURT NOW IS WHAT WE

21   HAVE DISCOVERED IS ACTUALLY REMARKABLE AT LEAST IN THE MY

22   EXPERIENCE.

23        IT IS REMARKABLE IN THE SCOPE AND EXTENT OF THE

24   VIOLATIONS.  WE NOW KNOW THAT APPLE'S CONFIDENTIAL INFORMATION

25   HAS GONE TO TWO 23 OR MORE PEOPLE.  OVER 90 SAMSUNG EMPLOYEES

1    NOT AUTHORIZED TO RECEIVE THE MATERIALS HAVE RECEIVED THE

2    MATERIALS.

3         OVER 130 OUTSIDE LAWYERS IN 19 DIFFERENT LAW FIRMS, SOME

4    OF THEM LITIGATING AGAINST APPLE, SOME OF THEM LITIGATING

5    AGAINST OTHER PARTIES, THAT HAVE ALL HAD SIMILAR LICENSE

6    ISSUES, ALL WITHOUT AUTHORIZATION.

7         THE DOCUMENTS THAT ARE AT ISSUE WERE SENT, THEY WERE

8    RESENT, AND WERE FORWARDED LITERALLY SCORES OF TIMES.

9         AND ONE THING WE HAVE LEARNED THAT'S PARTICULARLY

10   IMPORTANT IS THIS, YOUR HONOR MAY RECALL THAT WE REFERRED ON

11   THE PUBLIC RECORD TO A DISCLOSURE IN DECEMBER OF 2012.  WE

12   DIDN'T GO INTO THE DETAILS FOR OBVIOUS REASONS.

13        IT IS A DISCLOSURE WHICH SAMSUNG ADMITS IN EXHIBIT 10 AT

14   PAGES 2 TO 3, WAS A VIOLATION OF THE PROTECTIVE ORDER AND A

15   DISCLOSURE OF APPLE'S CONFIDENTIAL INFORMATION.

16        NOW YOUR HONOR, THAT IS ALMOST A YEAR AGO.  WHAT WE NOW

17   KNOW IS ACCORDING TO MR. BECHER, SAMSUNG AND QUINN KNEW IT WAS

18   IN VIOLATION OF THE PROTECTIVE ORDER.  NO INVESTIGATION WAS

19   UNDERTAKEN.  NO NOTICE WAS GIVEN TO APPLE 11 MONTHS AGO, TEN

20   MONTHS AGO.  NO INVESTIGATION WAS MADE OF THE NATURE AND EXTENT

21   OF THE DISCLOSURE.  NO EFFORT WAS MADE TO CABIN THE BREACH.

22        AND WHILE AS WE'VE TOLD YOU IN OUR BRIEFS, LITERALLY THE

23   DISCOVERY HAS BEEN AS MINIMAL AS POSSIBLE, WE HAVE BEEN ABLE TO

24   GLEAM MANY THINGS AND ONE IS THERE ARE LITERALLY SCORES OF

25   BREACHES OF THE PROTECTIVE ORDER BEFORE DECEMBER 2012.  NOTHING

1    WAS DONE TO DETERMINE THE MAGNITUDE, THE EXTENT, REMEDIATE,

2    GIVE NOTICE.

3         BUT THERE'S MORE.  AFTER THAT DATE, AFTER DECEMBER 2012,

4    WHEN SAMSUNG ADMITS IT WAS ON NOTICE THERE HAD BEEN A VIOLATION

5    OF THIS VERY MATERIAL, WE NOW KNOW THERE ARE MORE THAN 50

6    ADDITIONAL MATERIAL WHO RECEIVED THE MATERIAL OVER A PERIOD OF

7    APPROXIMATELY SIX MONTHS.

8         WHEN WE SAY IT'S REMARKABLE, WE THINK THAT'S REMARKABLE.

9         IT IS ALSO REMARKABLE THAT CONTRARY TO WHAT SAMSUNG HAS

10   SAID IN ITS BRIEF, THE EVIDENCE IS THAT THEY HAVE USED THE

11   CONFIDENTIAL INFORMATION.

12        WITHOUT, AGAIN, VIOLATING THE PROTECTIVE ORDER OF GOING

13   INTO CONFIDENTIAL INFORMATION I WILL DO THIS IN SUMMARY FORM

14   BUT YOUR HONOR HAS THE DETAILS OF THE REDACTED BRIEFS.

15        WE NOW KNOW THAT SAMSUNG'S EMPLOYEES CHARGED WITH

16   FORMULATING SAMSUNG'S ARGUMENTS ON THIS VERY ISSUE NOT ONLY HAD

17   THIS INFORMATION, THEY SENT IT THEY RESENT IT AND THEY SAID

18   THEY REVIEWED IT CAREFULLY.

19        WE KNOW THAT THE INFORMATION WENT DIRECTLY TO SAMSUNG

20   EXECUTIVES WHO ARE ACTUALLY NEGOTIATING WITH APPLE IN AN EFFORT

21   TO RESOLVE THE WORLDWIDE DISPUTES.

22        WE NOTE IT WAS USED IN SAMSUNG'S NEGOTIATION WITH NOKIA

23   WHICH I'LL LEAVE TO MR. ALLEN IN DETAIL.

24        YOUR HONOR NOW KNOWS IT WAS USED IN NEGOTIATIONS WITH

25   ANOTHER COMPANY.  AND WE KNOW, WE WOULD SUGGEST, THAT DR. AHN'S

1    EXPLANATION MONTHS AFTERWARDS REALLY IS QUITE IMPLAUSIBLE.

2         LET ME GIVE YOUR HONOR ONE EXAMPLE TO ANSWER YOUR

3    QUESTION OF WHAT WE HAVE LEARNED.  AND TO AVOID VIOLATING THE

4    PROTECTIVE ORDER, I WOULD ASK YOUR HONOR TO TURN TO PAGE 5 OF

5    OUR BRIEF.  I ACTUALLY HAVE A COPY OF IT.

6         AND YOUR HONOR, I'M GOING TO REFER TO THE PARAGRAPH THAT

7    BEGINS ON LINE FOUR AND GOES TO LINE 7.  THIS IS A DOCUMENT

8    THAT WAS DISCLOSED BY SAMSUNG.  THIS IS THE DOCUMENT THAT AS

9    YOU CAN SEE EXPLICITLY REFERENCES OUR CONFIDENTIAL INFORMATION.

10        SAMSUNG ADMITS THAT PEOPLE NOT AUTHORIZED TO SEE THIS

11   INFORMATION SAW THEM BRIEF.  BUT LET ME TELL WHAT YOU WE HAVE

12   ALSO LEARNED.  WE HAVE TRIED TO DETERMINE HOW THIS INFORMATION

13   MADE ITS WAY INTO THE BRIEFS.

14        SAMSUNG SAYS TO YOU, WELL, OUTSIDE COUNSEL PUT THIS IN

15   THEY ARE AUTHORIZED TO SEE THE INFORMATION.  TRUE.  BUT OUTSIDE

16   COUNSEL IS NOT AUTHORIZED TO CONFER WITH SAMSUNG'S EMPLOYEES TO

17   CRAFT THE POSITION THAT GOES INTO THE BRIEF.

18        AND THIS IS, YOUR HONOR, AS I SAID THIS IS ANALOGOUS TO

19   THE PROTECTIVE ORDER THAT PREVENTS A PLAINTIFF'S EXECUTING

20   ATTORNEY FROM SEEING INFORMATION ABOUT PRODUCTS IN DESIGN.

21        WE TRIED TO INQUIRE ABOUT HOW IT MADE ITS WAY INTO THE

22   BRIEF BUT WE WERE REBUFFED AT EVERY TURN.  BUT HERE'S WHAT WE

23   DO KNOW.  AND THEIR CHRONOLOGY AS IT IS IN MANY MANY

24   CIRCUMSTANCES IS COMPELLING.

25        THE ITC REQUESTED ADDITIONAL BRIEFING ON MARCH 13TH,

1    2013.  THE RESPONSE THAT'S BEFORE YOUR HONOR ON PAGE 5

2    EXHIBIT 6 PAGE 29 WAS FILED ON APRIL 3, 2013.  THAT'S A 20-DAY

3    PERIOD WHEN THIS ISSUE WAS RAISED BY THE ITC AND THEN BRIEFED

4    USING OUR CONFIDENTIAL INFORMATION.

5         YOUR HONOR IN THAT 20-DAY PERIOD, THERE WERE 37 E-MAILS

6    THAT HAD BEEN IDENTIFIED GOING BACK AND FORTH BETWEEN SAMSUNG

7    EMPLOYEES, QUINN AND SAMSUNG TO PEOPLE WHO WERE NOT AUTHORIZED

8    TO RECEIVE THE MATERIAL.  WITH THE UN REDACTED TEECE REPORT OR

9    INAPPROPRIATELY REDACTED TEECE REPORT ATTACHED.

10        THAT BY ITSELF WILL TELL YOU THERE'S SOMETHING GOING ON,

11   BUT THERE'S REALLY MORE.  WE'VE GOTTEN TWO PRIVILEGE LOGS FROM

12   THESE FOLKS.  WE'VE ACTUALLY ASKED WHAT'S THE DIFFERENCE

13   BETWEEN THE TWO.

14        ONE IS A LOG FOR DOCUMENTS THAT HAVE BEEN PRODUCED BUT

15   EVERY SINGLE SENTENCE HAS BEEN REDACTED.

16        THE OTHER IS A LOG FOR DOCUMENTS NOT PRODUCED.  THERE'S

17   REALLY NO DIFFERENCE BECAUSE WE HAVEN'T GOTTEN A SINGLE SENT OF

18   SUBSTANTIVE INFORMATION

19        THE COURT:  MR. LEE, ON THAT POINT LET ME ASK YOU A

20   PRELIMINARY QUESTION IF I MIGHT.

21        MR. LEE:  SURE.

22        THE COURT:  MY REVIEW OF THE SAMPLE OF REDACTED

23   DOCUMENTED PRODUCED INDICATED THAT EACH AND EVERY DOCUMENT

24   REDACTED INCLUDED REDACTIONS AS TO THE ENTIRE CONTENT OF EVERY

25   PAGE OTHER THAN PERHAPS SOME HEADER INFORMATION.

1    IS THAT YOUR UNDERSTANDING OF WHAT WAS PRODUCED IN THAT

2    SET?

3        MR. LEE:  YES.

4    AND IN MOST CIRCUMSTANCES, THE SUBJECT LINE, IN A FEW CASES

5    THE DELETIONS WERE IN THE -- SOME HEADER INFORMATION WHICH WE

6    BRIEFED YOUR HONOR WAS REMAINED.  BUT THE ANSWER IS THERE'S NOT

7    A SINGLE SUBSTANTIVE SENTENCE.

8        NOW THESE DOCUMENTS BY DEFINITION MUST HAVE BEEN

9    RESPONSIVE TO YOUR HONOR'S ORDER, RIGHT, OTHERWISE THERE'S NO

10   REASON TO PUT THEM ON THE LOG.

11       WE HAVE TWO LOGS.  WE ASKED FIVE DAYS AGO WHAT'S THE

12   DIFFERENCE BETWEEN THE TWO LOGS?  AND QUITE HONESTLY IT'S BEEN

13   RADIO SILENCE, NO ANSWER TO THE QUESTION.

14       IN SOME SENSE IT'S INCONSEQUENTIAL SINCE THE END RESULT

15   IS WE DON'T HAVE A CLUE WHAT'S IN ANY OF THEM.

16       BUT I CAN TELL YOU THIS, ONE THING WE DID DO AT OUR END

17   IS WE CAN COUNT.  THERE ARE 496 DOCUMENTS BETWEEN MARCH 13TH

18   AND APRIL THE 3RD WHICH ARE LOGGED.

19       NOW THEY ARE PRESUMABLY RESPONSIVE TO YOUR HONOR'S ORDER.

20   THEY ARE ALL IN THIS CRITICAL PERIOD.  THEY'RE ALL IN THE TIME

21   BEFORE YOU GET TO PAGE FIVE.  NONE OF THEM HAVE BEEN PRODUCED.

22       THE COURT:  AND SO IF I JUST, IF I CAN FOLLOW YOUR

23   ACCOUNTING MR. LEE, LET ME SUMMARIZE WHAT YOU'VE JUST SAID AND

24   YOU CAN CORRECT ME AND I WILL GIVE SAMSUNG THE SAME

25   OPPORTUNITY.

```
 1          YOU ARE SAYING BETWEEN MARCH 13, 2013, AND APRIL 3RD OF

 2    2013, E-MAILS WERE SENT TO SOME 37 PEOPLE AT SAMSUNG WHO ARE

 3    NOT AUTHORIZED TO SEE THE TEECE REPORT THAT WE HAVE BEEN

 4    DISCUSSING.

 5               MR. LEE:  NOW, IT'S ACTUALLY, YOUR HONOR, IT'S

 6    ACTUALLY MORE PEOPLE.  I DON'T HAVE THE EXACT NUMBER.  I THINK

 7    THE 37 NUMBER COMES FROM THE DOCUMENTS WERE IDENTIFIED FOR US

 8    BEFORE WE SAW YOUR HONOR THE FIRST TIME.

 9               THE COURT:  OKAY.  IN THE LETTER THAT MR. BECHER --

10               MR. LEE:  YEAH.  MR. BECHER'S LETTER.

11          AND MR. BECHER'S LETTER HAS BEEN SUPPLEMENTED TO THE COUNT

12    OF 37.  IN ADDITION, AND I THINK THEY ARE IN OVERLAP.  I THINK

13    WHAT'S IDENTIFIED IN THE LETTER BECAUSE IT'S ALL BEEN VIRTUALLY

14    ENTIRELY REDACTED HAS ALSO BEEN INCLUDED IN THE LARGER NUMBER.

15          MAYBE THE BEST WAY TO THINK OF IT IS SO WE DON'T -- LET'S

16    ASSUME THEY ALL OVER LAP.  THERE ARE 496 RESPONSIVE E-MAILS

17    NONE OF WHICH WE KNOW, NONE OF THE TEXT OF WHICH WE KNOW

18    INVOLVING LITERALLY SCORES OF PEOPLE NOT AUTHORIZED TO SO THE

19    INFORMATION.  ALL WHICH IS RIGHT AT THIS PERIOD OF TIME AND

20    RIGHT, AS YOUR HONOR KNOWS, IN THIS CHRONOLOGY AT A TIME WHEN

21    APPLE AND SAMSUNG ARE ACTUALLY TALKING TO EACH OTHER.

22          NOW SAMSUNG SAYS TO YOU, WELL, THE INFORMATION FLYING

23    BACK AND FORTH DIDN'T HAVE EXACTLY THE SAME NUMBERS AS THE

24    LICENSE AGREEMENT.  AND AGAIN I WON'T GO INTO THE NUMBERS.

25          WELL YOUR HONOR IF I'M NEGOTIATING WITH MR. MUELLER AND
```

1    I'VE ENTERED INTO A LICENSE WITH MR. SELWYN, AND MR. SELWYN

2    PAID ME $500 AND I'M ASKING MR. MUELLER FOR A THOUSAND BECAUSE

3    HE'S IN A DIFFERENT POSITION, MR. MUELLER IS GOING TO BE PRETTY

4    ADVANTAGED IF HE KNOWS I'VE DONE ANOTHER AGREEMENT FOR $500.

5    HE MAY NOT SAY $500, HE MAY SAY 450, HE MAY SAY 550, BUT HE'S

6    CLEARLY USING THE INFORMATION.

7         AND IN SOME SENSE YOU DON'T NEED ANY BETTER INDICATION OF

8    WHETHER THE INFORMATION IS GETTING USED THAN WHAT'S THERE.

9         AND LASTLY YOUR HONOR, I WILL COME BACK TO SOME OF THESE

10   ISSUES, BUT THE LAST WE IN WHICH THE CASE IS REMARKABLE IS IN

11   OUR VIEW AND NOKIA'S VIEW, I KNOW THAT SAMSUNG DISAGREES, WE

12   THINK THEY HAVE JUST DISREGARDED YOUR HONOR'S ORDER.

13        TO BELIEVE SAMSUNG, THIS WAS AN INADVERTENT DISCLOSURE,

14   NOT TRUE, OF A FEW LINES, CLEARLY NOT TRUE, OF INFORMATION THAT

15   WAS NEVER USED.  NOT TRUE.

16        THIS IS A SITUATION WHERE THE FOX IS, TO QUOTE

17   YOUR HONOR, HAVE TAKEN IT UPON THEMSELVES TO BASICALLY ARROGATE

18   THE INVESTIGATION OF THEMSELVES AND TELL US WHAT WE ARE ALLOWED

19   TO KNOW AND WHAT WE ARE NOT ALLOWED TO KNOW.

20        THEY HAVE DONE IT TO BE MORE REPETITIVE BY REDACTING THE

21   ENTIRETY OF EVERY SINGLE DOCUMENT PRODUCED.  THEY HAVE DONE IT

22   BY GIVING INSTRUCTIONS NOT TO ANSWER ON THE VERY QUESTIONS THAT

23   WOULD GO TO THE HEART OF WHETHER OUR INFORMATION WAS USED AND

24   JUST HOW.

25        THEY HAVE DONE IT, IF I COULD SHOW YOU THE BRIEF THEY

1    SERVED ON US, YOUR HONOR GOT A BRIEF ARE FROM THEM WHICH WAS UN

2    REDACTED.  THIS IS WHAT WE GOT.

3         A DOCUMENT THAT THEY REDACTED IN SUBSTANTIAL PORTION, I

4    THINK CLAIMING THAT THE NDA WITH NOKIA TRUMPED YOUR HONOR'S

5    ORDERS.

6         I DON'T EVEN KNOW TODAY AS I STAND HERE, WHAT WAS SAID.

7         I DO KNOW THAT IT RELATES TO DR. AHN'S VERSION OF EVENTS

8    AND I THINK YOUR HONOR KNOWS WHAT DR. AHN ADMITTED TO DURING

9    THE COURSE OF HIS DEPOSITION.

10        BUT BY REFUSING TO GIVE US ANY OF THE DOCUMENTS REFUSING

11   TO ALLOW QUESTIONS TO BE ANSWERED, THIS IS REALLY A

12   REPRESENTATION THAT NOTHING BAD HAPPENED, TRUST US, LET'S NOT

13   HAVE A SETTLE IMPLICATION.

14        IT EVEN GOES SO FAR YOUR HONOR TO GO BACK TO THE

15   CONVERSATION YOU HAD WITH THE PARTIES ABOUT THE STROZ

16   RELATIONSHIP WHERE YOU EXPLICITLY ASKED WHETHER STRODE'S

17   INVOLVEMENT WOULD BE INDEPENDENT.

18        AND THE REPRESENTATION TO YOU AND THE STIPULATION WAS IT

19   WOULD BE INDEPENDENT.  THE REPRESENTATION ON THE RECORD IT

20   WOULD BE INDEPENDENT, LET ME SHOW YOU WHAT STROZ SAYS TODAY.

21   AND THIS IS THE MANNER IN WHICH THE INVESTIGATION HAS TAKEN

22   PLACE.

23        SO ON THE LEFT-HAND SIDE, YOUR HONOR, ARE THE

24   REPRESENTATIONS THAT WERE MADE EITHER IN THE STIPULATION OR ON

25   THE RECORD ON OCTOBER THE 1ST.

1        WHEN WE RECEIVED THE INFORMATION YESTERDAY, THERE'S A

2    DECLARATION FROM A STROZ.  AND THE SENTENCE AT THE TOP WHICH IS

3    QUOTED FROM PARAGRAPH 6 IS, STROZ UNDERSTOOD AT ALL TIMES THAT

4    IT WAS ACTING AS QUINN'S AGENT.

5        YOUR HONOR WILL RECALL LAST TIME HOW YOU WERE TOLD SO

6    MUCH HAD OCCURRED ALREADY AND THERE HAD BEEN SO MUCH PROGRESS

7    AND YOUR HONOR INQUIRED, WELL, IT WAS DONE INDEPENDENTLY, WAS

8    IT JUST SOMEONE ACTING AS YOUR AGENT AND THE ANSWER IS NO THEY

9    ARE NOT OUR AGENT THEY ARE INDEPENDENT.

10        THEN WE GET A DECLARATION THAT SAYS, AT ALL TIMES WE WERE

11    ACTING AS THE PLAINTIFF'S AGENT.

12        NOW I WAS TRYING TO FIGURE OUT WHY THERE WERE TWO

13    DECLARATIONS FROM THESE FOLKS.  I THINK THE ARGUMENT THAT'S

14    BEING OFFERED TO YOUR HONOR WAS ACTUALLY THEY WERE INDEPENDENT

15    BUT THEN AFTER YOUR HONOR ENTERED ITS ORDER IT CHANGED AND

16    BECAME NOT INDEPENDENT, IT BECAME AN AGENT.

17        I DON'T KNOW IF IT'S TRUE OR NOT.  I'M NOT SURE THAT IT

18    MATTERS THAT MUCH.  WHAT DOES MATTER IS THEY ACTED AS QUINN AND

19    SAMSUNG'S AGENT AT ALL TIMES IN THIS INVESTIGATION.

20        SO YOUR HONOR, WHEN I SAY THIS IS REMARKABLE, I THINK A

21    DISCLOSURE OF CONFIDENTIAL INFORMATION TO THIS MANY PEOPLE IN

22    THIS MANY JURISDICTIONS IN THIS MANY DIFFERENT LITIGATIONS IS

23    REMARKABLE.

24        I THINK THAT THE EVIDENCE OF USE IN NEGOTIATIONS WITH

25    NOKIA AND ANOTHER PARTY, THE EVIDENCE OF USE IN CRAFTING

```
 1    ARGUMENTS AGAINST APPLE, THE FACT THAT IT WENT INTO THE HANDS

 2    OF PEOPLE WHO HAD NO REASON TO HAVE IT OTHER THAN TO CRAFT THE

 3    ARGUMENTS OR TO NEGOTIATE WITH APPLE IS REMARKABLE.  AND IT'S

 4    ALSO REMARKABLE THE ANSWER TO ALL OF THIS IS WE ARE NOT GOING

 5    TO LET YOU SEE THE DOCUMENTS WE ARE NOT GOING TO GIVE YOU THE

 6    INFORMATION.

 7         THAT IS WHY WE SUGGEST YOUR HONOR THAT FURTHER

 8    INVOLVEMENT OF THE COURT IS NECESSARY.

 9         LET ME TAKE SOMETHING OUT OF THAT THEN QUICK GO TO A

10    COUPLE OF POINTS THEN YIELD THE FLOOR TO MR. ALLEN.

11         YOUR HONOR WAS CONCERNED WITH SATELLITE LITIGATION.

12    YOUR HONOR I HAVE BEEN IN SITUATIONS LIKE THIS BEFORE AND

13    SOMETIMES PARTY VS COME IN AND SAID WE MADE A MISTAKE, WE

14    DIDN'T INTEND IT, WE ARE GOING TO FIGURE OUT WHAT THE SCOPE IS

15    AND WE WILL FIGURE OUT WHAT THE RIGHT WITH MEDIATION AND WORK

16    IT OUT WITH YOU.

17         AND OTHER CIRCUMSTANCES LIKE THIS IS WE ARE GOING TO

18    FIGHT EVERY STEP OF THE WAY.  THE LAST FIVE PAGES OF SAMSUNG'S

19    BRIEF HERE AS I COULD TELL IS IT'S ALL OUR FAULT.  IT'S

20    MR. ALLEN'S FAULT AND IT'S OUR FAULT BECAUSE OF THE MANNER WE

21    HAVE GONE ABOUT COMPLYING WITH YOUR HONOR'S ORDER.

22         IT MAY TAKE IS THE SATELLITE LITIGATION.  IT MAY TAKE

23    SOME TIME FROM YOUR HONOR, WE HAVE TRIED TO CRAFT A WAY TO

24    MINIMIZE THAT INVOLVEMENT.  BUT THE PRINCIPLE AT STAKE IS

25    CRITICALLY IMPORTANT IN THIS CASE.
```

```
 1            YOUR HONOR KNOWS FROM THE SEALS MOTIONS YOU ADDRESSED IN

 2     THIS CASE THE SEALING MOTIONS YOU ADDRESSED IN THE SECOND CASE.

 3     YOU KNOW WE WENT UP TO THE COURT OF APPEALS AND THEY AFFIRMED

 4     ON SOME AND CONFIRMED OTHERS SHOULD HAVE BEEN SEALED.

 5            IN THESE CASES THE ABILITY FOR PARTIES TO HAVE CONFIDENCE

 6     WHEN THEY DISCLOSE THEIR INFORMATION IT'S GOING TO STAY WITHIN

 7     THE BOUNDS OF THE COURT IT'S GOING TO BE USED FOR THE PURPOSES

 8     THAT THE COURT INTENDED TO BE USED, AND IT'S NOT GOING TO BE

 9     USED OTHERWISE, IS CRITICAL.

10            I MEAN, I'M GETTING ASKED ON A DAILY BASIS NOW, DO THEY

11     HAVE OUR SOURCE CODE.  HOW DO YOU KNOW WHETHER IT'S GONE OUT

12     TOO?  THEY HAVE OUR MARKETING INFORMATION, HOW DO YOU KNOW,

13     MR. LEE, HAS IT GONE OUT TOO?

14             AND THE ANSWER, YOUR HONOR, IS I DON'T HAVE GOOD

15     ANSWERS.

16            I THINK YOUR HONOR, WHAT WE WOULD SAY IS THIS, GIVEN THE

17     MAGNITUDE OF THE BREACHES, GIVEN THE FACT THERE WAS NOTICE IN

18     DECEMBER 2012 AND NO ACTION WAS TAKEN, GIVEN THE FACT THAT WE

19     HAVE BEEN STONEWALLED, FOR LACK OF A BETTER WORD, IN OUR

20     EFFORTS TO GET AT THE VERY DOCUMENTS WHICH WOULD PROVE EVEN

21     FURTHER THE POINTS WE BELIEVE EXIST, WE NEED SOME MORE HELP

22     FROM THE COURT.

23            NOW LET ME SAY THESE THREE THINGS THEN GO TO THE RELIEF

24     WE'VE ASKED FOR.  AS I READ THE SAMSUNG BRIEF, THE PRIMARY

25     LEGAL ARGUMENT YOUR HONOR IS THIS WAS NOT VOLUNTARY, WAS
```

```
 1    INADVERTENT.

 2         WELL, AS YOUR HONOR KNOWS, VOLUNTARY MEANS YOU DON'T DO

 3    IT WITHOUT A COURT ORDER.  I KNOW THERE HAVE BEEN A NUMBER OF

 4    CASES IN WHICH THE PARTIES ASKED YOUR HONOR FOR AN ORDER,

 5    ORDERING PEOPLE TO PRODUCE CERTAIN DOCUMENTS THEN IT CAN BE

 6    PRODUCED.  IT DOESN'T MEAN THAT YOU HAVE TO HAVE A VOLUNTARY

 7    ACT.

 8         BUT THIS ISN'T INADVERTENT.  I WANT TO REMIND YOUR HONOR

 9    OF THESE FACTS WHICH ARE ON THE RECORD PUBLICLY.  THERE IS THE

10    DECEMBER 2012 DISCLOSURE CONCEDED TO BE A VIOLATION, NO ACTION

11    TAKEN.

12         THERE IS THE NOTICE THAT NOKIA PROVIDED IN JULY, AND WHAT

13    WAS THE RESPONSE?  TELL APPLE THERE HAD BEEN A PROBLEM?  NO, IT

14    WAS TO GO TO NOKIA BEFORE EVER GIVING NOTICE TO APPLE AND

15    SUGGESTING THE DOCUMENTS BE DESTROYED.

16         AND THEN THE NOTICE THAT FINALLY ARRIVES 5:00 AUGUST 1ST

17    ON A FRIDAY AFTERNOON, THE DAY BEFORE THE ITC, U.S. TRADE

18    REPRESENTATIVES, THIS WAS NOT INADVERTENT.

19         SECOND POINT, THERE IS A SUGGESTION THAT SAMSUNG AND

20    MR. KOREA IN PARTICULAR HAVE UNDERTAKEN THIS THOROUGH

21    INVESTIGATION AND THEY HAVE REPRESENT TO YOUR HONOR THAT NO USE

22    HAS OCCURRED.

23         LET ME TELL YOU ABOUT THIS INVESTIGATION.  IT WAS

24    MR. KOREA AND A QUINN PARTNER INTERVIEWING THESE PEOPLE.  THEY

25    WEREN'T SHOWN ANY DOCUMENTS.
```

```
 1              SO THE FIRST QUESTION WAS, DO YOU RECALL SEEING THE
 2     E-MAILS?  THERE WERE NO E-MAILS TO LOOK AT.  THEN THERE WERE A
 3     SERIES OF SEVEN OTHER LEADING QUESTIONS BUILT OFF OF THAT, ALL
 4     I THINK FAIRLY DESIGNED TO ELICIT WHAT THEY IN FACT ELICITED.
 5              IF YOU DON'T SHOW MR. X THE DOCUMENT WITH HIS NAME ON IT,
 6     DO YOU REALLY THINK HE'S GOING TO SAY YES I REMEMBER THAT.  A
 7     FEW OF THEM DID.
 8              BUT NO DOCUMENTS WERE SHOWN.  WASN'T DONE INDEPENDENTLY
 9     AT ALL.  THERE APPARENTLY WERE NOTES TAKEN BUT THEY ARE GONE.
10     WE DON'T HAVE THEM.
11              THAT'S NOT THE TYPE OF INVESTIGATION --
12                  THE COURT:  YOU SAY THEY ARE GONE.
13          ARE THEY SIMPLY NOT IN YOUR POSSESSION AT LEAST NOT YET OR
14     HAVE THEY BEEN DESTROYED?
15                  MR. LEE:  I THINK SAMSUNG -- I HAVE TO SAY I THINK
16     IT'S THE LATTER.  I THINK IT'S THE LATTER.
17          BUT I THINK THEY WILL KNOW BETTER.  WE DON'T HAVE THEM.  IN
18     ANY EVENT WE HAVE THE TABLES THAT YOUR HONOR HAS AND NOTHING
19     MORE.
20              THE THIRD POINT AND THEN I WILL GET TO THE RELIEF WE ARE
21     REQUESTING, IS THIS QUESTION OF WHAT TO DO ABOUT OUR PRIVILEGE.
22              AND I THINK YOUR HONOR A CRITICAL STARTING POINT IS TO
23     FOCUS ON THE ISSUES WE ARE ADDRESSING.  AN ISSUE WE ARE
24     ADDRESSING IS THIS, IF THERE HAS BEEN CONFIDENTIAL INFORMATION
25     UNDER THE PROTECTIVE ORDER, WHICH HAS BEEN COMMUNICATED FROM
```

1    COUNSEL TO CLIENT, INDISPUTABLY AND REPUTEDLY, DOES THE

2    ATTORNEY CLIENT PRIVILEGE PROTECT THAT COMMUNICATION SO THAT

3    THE PARTY WHOSE CONFIDENTIAL INFORMATION IT WAS CAN NEVER LEARN

4    WHAT WAS SAID, WHAT WAS DONE, HOW MANY TIMES IT OCCURRED AND

5    WHAT WAS DONE WITH IT.

6         AS A MATTER OF LOGIC, IT CAN'T BE.  BECAUSE IF THAT'S

7    RIGHT, WE MIGHT AS WELL FORGET ABOUT PROTECTIVE ORDERS.

8         IT MEANS THAT THE LAWYER ON THE PLAINTIFF'S SIDE WHO

9    FINDS OUT WHAT THE NEXT GREAT SAMSUNG PRODUCT IS, CAN FREELY

10   RUN TO HIS CLIENT AND SAY, LET ME TELL YOU WHAT I'VE FOUND OUT,

11   GO DO WITH IT WHAT YOU WANT TO DO.

12        IT CAN'T WORK THAT WAY.  AND AT THE BOTTOM OF WHAT'S

13   HAPPENED THE LAST TWO WEEKS IN INSTRUCTING WITNESS IT IS NOT TO

14   ANSWER, AND REFUSING TO ALLOW US TO ELICIT TESTIMONY IN

15   PRODUCING DOCUMENTS BUT NOT A SINGLE LINE OFFERED TO US, IT IS

16   YOU CAN'T SEE WHAT WE DID WITH YOUR CONFIDENTIAL INFORMATION.

17        NOW, IF THEY DID NOTHING, IF THERE ARE NO REFERENCES, YOU

18   WOULDN'T HAVE HUNDREDS OF PAGES ON THE PRIVILEGE LOG.  THERE

19   WOULDN'T BE HUNDREDS OF -- THERE WOULD NOT BE SCORES OF ENTRY

20   OF MR. BECHER'S LOG.

21        WHETHER IT'S WAIVER BECAUSE OF THE MANNER WHICH THEY HAVE

22   GONE ABOUT THE INVESTIGATION WHICH IS ARROGATING THE

23   INVESTIGATION FOR THEMSELVES, PUTTING MR. KOREA UP TO SAY I'VE

24   DONE AN INVESTIGATION BUT I'M NOT WILLING TO LET YOU ASK ME OR

25   ANYBODY ELSE WHAT OTHER INVESTIGATIONS HAVE BEEN DONE, I WILL

```
 1      TELL YOU WHAT I'VE LEARNED, BUT I'M NOT GOING TO TELL YOU WHAT

 2      ANYBODY ELSE HAS LEARNED.

 3           OR IT'S AN APPLICATION OF THE CRIME FRAUD DOCTRINE, THE

 4      PRIVILEGE SHOULD NOT APPLY HERE.

 5           NOW, THE CRIME FRAUD EXCEPTION IN THE FIRST INSTANCE IS

 6      DONE SO IF I'M TALK TALKING TO MY LAWYER AND I TELL THEM I'M

 7      COMMITTING A BANK FRAUD OR A MURDER THAT'S NOT PROTECTED THAT'S

 8      A CONVERSATION IN FURTHERANCE OF A CRIME.

 9           THE COURT'S RECOGNIZE THAT THAT WAS PRETTY NARROW THEY

10      CABINED IT SIGNIFICANTLY.  AND SO IT BECAME THE CRIME FRAUD

11      EXCEPTION.

12           SO YOU DIDN'T HAVE TO BE COMMITTING A CRIME BUT IF YOU

13      ENGAGED ACTIVITY THAT FURTHERED SOMETHING LESS THAN A CRIME BUT

14      A FRAUD, THEN THE PRIVILEGE DIDN'T PROTECT IT.

15           IF YOU ARE REPEATEDLY COMMUNICATING CONFIDENTIAL

16      INFORMATION AFTER YOU KNEW IN DECEMBER 2012, I COULD MAKE AN

17      ARGUMENT TO GO ALL THE WAY BACK TO MARCH 2012, BUT I DON'T

18      THINK WE EVEN NEED TO DO THAT ON THESE FACTS BECAUSE

19      DECEMBER 2012 BY MR. BECHER'S ADMISSION THEY KNEW.  THEY KNEW

20      THIS HAD GOTTEN OUT THERE.

21           IF YOU REPEATEDLY DO THAT AND YOU DO IT FOR ANOTHER SIX

22      MONTHS AND DURING THAT SIX MONTHS THE LICENSING EXECUTIVES USE

23      IT TO NEGOTIATE WITH NOKIA THEY USE IT TO NEGOTIATE WITH

24      ANOTHER PARTY.

25           YOU SEND IT TO 16 LAW FIRMS LITIGATING EITHER AGAINST
```

```
 1    APPLE OR OTHER CLIENTS ON THE SAME LICENSING ISSUES AND YOU

 2    CRAFT POSITIONS AGAINST APPLE IN NEGOTIATIONS, THAT IS

 3    FURTHERANCE OF WHAT IS A FRAUD.

 4         AND A FRAUD IS VIOLATION OF THE PROTECTIVE ORDER.  DOES

 5    NOT HAVE TO BE AS NAPSTER SAYS, WILLFUL, THERE'S NO MENS REA.

 6         AND YOUR HONOR, IN SOME SENSE IT HAS TO BE THAT WAY.

 7    BECAUSE IF IT ISN'T YOU WILL HAVE ALL THIS BUSINESS BECAUSE

 8    CLIENTS ARE JUST NOT GOING TO COME TO COURT BECAUSE THEY ARE

 9    NOT SURE THEIR CONFIDENTIAL INFORMATION WOULD BE PROTECTED.

10         SO TO ADDRESS THIS PROBLEM WE HAVE PROPOSED TWO

11    ALTERNATIVES.  WE BELIEVE THAT AS A RESULT OF SAMSUNG'S CONDUCT

12    AND THE MANNER IN WHICH THE -- AND THE CHRONOLOGY WHICH

13    YOUR HONOR NOW HAS, THE PRIVILEGE DOESN'T APPLY.  IT'S EITHER

14    BEEN ABROGATED BY WAIVER OR BY THE CRIME FRAUD DOCTRINE.

15         BUT WE RECOGNIZE THIS IS AN ISSUE THAT COURTS APPROACH

16    CAUTIOUSLY.  AND WE ALSO RECOGNIZE THAT YOUR HONOR DOESN'T WANT

17    TO SIT AND PAGE THROUGH HUNDREDS OF DOCUMENTS.  SO WHAT WE

18    SUGGESTED AS NEXT STEPS IS THE COURT ORDER SAMSUNG FIRST TO

19    IMMEDIATELY COMPLY WITH THE STIPULATION.  I WILL LEAVE IT UP TO

20    MR. ALLEN.  BUT THE ANSWER IS IF THE STIPULATION NEVER EXISTED.

21         WE ASK THE COURT TO ORDER SAMSUNG TO PRODUCE A LOG THAT

22    HAS MEANINGFUL INFORMATION FOR ALL OF THESE DOCUMENTS.  ONCE

23    THAT LOG IS PRODUCED, AND WE SUGGEST IT BE DONE WITHIN THREE

24    DAYS.

25         ONCE THAT LOG IS PRODUCED WITHIN THREE DAYS WE WILL
```

1    IDENTIFY 50 DOCUMENTS FROM THAT UNIVERSE THAT WE WOULD REQUEST

2    THE COURT REVIEW IN CAM.

3         AND THEN IF THE COURT ON THOSE RULINGS CAN GIVE SOME

4    GUIDELINES AS TO WHAT YOU THINK IS PRIVILEGED AND NOT

5    PRIVILEGED WHAT YOU THINK IS PROTECTED AND NOT PROTECTED, WE

6    EITHER OUGHT TO BE ABLE TO WORK OUT THE REST OR FIND SOME

7    MECHANISM WITHOUT BURDENING THE COURT WITH REVIEWING EVERY

8    SINGLE ADDITIONAL DOCUMENT.

9         THE COURT:  MR. LEE, IF I MIGHT ASK A QUESTION OR TWO

10   ABOUT THAT PARTICULAR REMEDY.

11        FIRST, WHEN YOU SAY THAT YOU WOULD LIKE AS PART OF THIS

12   SECOND ALTERNATIVE A LOG WITH MEANINGFUL INFORMATION, WHAT

13   PRECISELY DO YOU HAVE IN MIND?

14        MR. LEE:  YOUR HONOR, I THINK IF YOU TAKE A LOOK AT

15   THEIR LOG RIGHT NOW, THERE'S NOTHING TO INDICATE EVEN GENERALLY

16   WHAT THE SUBJECT MATTER IS.

17        AND IT LOOKS TO ME LIKE THEY WERE JUST SORT OF EIGHT

18   DIFFERENT STOCK RESPONSES.  IT WAS LIKE YOU IF I CAN, 1, 2, 3,

19   4, 5, 6, 7, 8 AND JUST PICK AND PUT THEM IN.

20        THE COURT:  IT WAS PROBABLY A PICK LIST.

21        MR. LEE:  THAT'S NOT A MEANINGFUL LOG.

22     I THINK WE NEED THE INFORMATION WITH THE SUBJECT MATTER,

23   OBVIOUSLY THE PEOPLE WHO WERE GETTING THE COMMUNICATIONS, THE

24   SUBJECT MATTER, THE ATTACHMENTS, AND SINCE THERE'S NOT

25   PRIVILEGED INFORMATION, WE SHOULD BE GETTING THAT.

1       I'M LOOKING AT THE FOLKS WHO WERE SMARTER THAN ME ON

2   THIS.  BUT IT'S SOMETHING YOUR HONOR THAT WOULD ALLOW US TO SAY

3   THAT WE COULD LOOK AT IT AND SAY WOULD YOUR HONOR REVIEW THIS.

4       YOUR HONOR NOW KNOWS THERE'S A DOCUMENT REFERRED TO AS

5   THE NOKIA APPLE LICENSING MEMO.

6           THE COURT:  I HAVE A QUESTION ABOUT THAT I WANT TO

7   GET TO THAT IN A MOMENT.

8       IF I COULD, THE OTHER QUESTION I HAD ABOUT THE SECOND OF

9   THESE ALTERNATIVES YOU ARE PROPOSING.

10      COULD YOU GIVE ME SOME SENSE OF THE UNIVERSE OF DOCUMENTS

11  THAT WOULD BE SUBJECT TO THIS PROCEDURE.

12      AT THIS POINT, HOW MANY DOCUMENTS IN TOTAL ARE ON EITHER

13  THE REDACTION LOG OR THE PRIVILEGE LOG?

14          MR. LEE:  YOUR HONOR, THIS IS THE -- THESE ARE THE

15  TWO.  SO IT'S LITERALLY IN THE THOUSANDS.

16          THE COURT:  ALL RIGHT.

17          MR. LEE:  AND AGAIN, I THINK THE IMPORTANT POINT HERE

18  IS THIS, THESE ARE ALL DOCUMENTS THAT ARE RESPONSIVE.

19      I MEAN, I ASSUME WE DID A LOT OF THINGS THAT ARE NOT

20  RESPONSIVE TO YOUR HONOR'S ORDER.  SO THEY ARE WITHIN THE

21  UNIVERSE OF THAT WHICH WE ARE CONCERNED.  THAT'S BASICALLY WHAT

22  WE SAID THERE WAS LAST NIGHT.

23      BEFORE I GO BACK AND COUNT OUT THE DOCUMENTS BEFORE THIS

24  CRITICAL APPEARED OF TIME, THAT'S ACTUALLY WHAT CAUSED US TO GO

25  BACK AND CONFIRM THAT THE RECIPIENT OF THE DECEMBER 12, 2012,

1    E-MAIL, NOW THE INTERESTING THING IS YOU RECALL IT WAS

2    REPRESENTED HE WAS TOLD TO DELETE IT RIGHT AWAY.  HE FILED A

3    DECLARATION.  HE DOESN'T SAY THAT.

4          IN FACT IN MAY, WE NOW KNOW, IT WAS RE COMMUNICATED.

5          BUT I THINK YOUR HONOR WHAT WE ARE DOING AND WE WILL WORK

6    WITH THE COURT ON ANY BASIS WE CAN, BUT WE CAME ASKING FOR

7    JUDICIAL INTERVENTION BECAUSE WE DIDN'T THINK THAT THE FOX

8    COULD SUPERVISE THE HEN HOUSE ON THEIR OWN AND THAT WE NEEDED

9    TO FIND SOME WAY WITHOUT BURDENING THE COURT BEGIN ALL ITS

10   OTHER RESPONSIBILITIES.  WE COULD START TO IDENTIFY UNIVERSE OF

11   WHAT WAS HERE.

12         I THINK, YOU KNOW, WE COULD COME TO YOUR HONOR NOW AND

13   SAY, YOU CAN MAKE A DETERMINATION BASED UPON THE DECLARATIONS

14   YOU HAVE FOR THE NOKIA CONVERSATION.

15         YOU HAVE THEIR OWN TESTIMONY ABOUT THE OTHER NEGOTIATION.

16   I CAN DEMONSTRATE TO YOU CIRCUMSTANTIALLY HOW WE GOT TO PAGE 5.

17         I CAN DEMONSTRATE TO YOU THAT THE PEOPLE WHO GOT THE

18   INFORMATION HAD NOTHING TO DO WITH LITIGATION AND I COULD

19   DEMONSTRATE TO YOU AS A MATTER OF PUBLIC RECORD THAT THE LAW

20   FIRMS THAT GOT THE INFORMATION, RIGHT, IN FACT, WERE LITIGATING

21   AGAINST APPLE OR OTHER PEOPLE WITH SIMILAR ISSUES.

22         THAT WOULD BE SANCTIONABLE IN AND OF ITSELF, BUT I THINK

23   THAT WE ARE SAYING TO THE COURT IS, WE REALLY NEED TO KNOW IN

24   THE FULL SCOPE AND THEN WE CAN COME BACK TO YOUR HONOR TO SHAPE

25   SOMETHING THAT IS BOTH CONFIRMS THE INTEGRITY OF THE PROTECTIVE

1    ORDERS, CONFIRMS THE IMPORTANCE OF COMPLYING WITH THEM BUT ALSO

2    REMEDIATES THE PROBLEM THAT HAS OCCURRED HERE.

3           OUR INFORMATION NOW IN THIS LICENSE AGREEMENT, AND

4    YOUR HONOR KNOWS IF YOU'VE LOOKED IT'S NOT A FEW LINES IT'S

5    SEVERAL PARAGRAPHS, IT TALKS ABOUT APPLE'S NEGOTIATING

6    STRATEGIES IT TALKS ABOUT HOW THE NEW LICENSES, THAT

7    INFORMATION IS IN THE HEAD OF EVERY SINGLE SAMSUNG LICENSING

8    EXECUTIVE NOW.

9           WE NEED TO COME UP WITH A REMEDY THAT WILL ADDRESS THAT.

10          THE COURT:  MR. LEE, A FURTHER SUBJECT I WOULD LIKE

11   YOUR THOUGHTS ON HAS TO DO WITH THREE PARTICULAR RECIPIENTS OF

12   THE TEECE MEMORANDUM THAT WE HAVE BEEN TALKING ABOUT THE TEECE

13   REPORT.  DG COMP, THE ITALIAN AUTHORITIES, AND THEN I'M ALSO

14   INTERESTED SINCE YOU BROUGHT UP THE MEMO, WILLIAMS & CONNOLLY.

15   WHAT EVIDENCE OR WHAT INFORMATION WE HAVE ON THIS RECORD ABOUT

16   THE -- THOSE THREE RECIPIENTS AND WHAT THEY'VE DONE WITH THE

17   INFORMATION.

18          MR. LEE:  YOUR HONOR, WE DON'T HAVE MUCH MORE THAN

19   YOU HAVE.  DG COMP, IT WAS FILED WITH DG COMP, IT HAD THE UN

20   REDACTED TEECE REPORT, SAME IS TRUE IN ITALY.

21        WILLIAMS & CONNOLLY, I THINK MR. ALLEN IS GOING TO ADDRESS.

22          MR. ALLEN:  I WILL DO MY BEST.

23          MR. LEE:  THERE IS -- THERE WERE COMPARABLE E-MAILS,

24   WELL ACTUALLY I THINK THE REFERENCE TO THAT MEMO WAS REDACTED

25   THIS, ONE MADE ITS WAY THROUGH.

1        AND WHAT IT SAYS AT A POINT IN TIME BEFORE THE NEGOTIATION

2    IS HERE'S THE MEMO CALLED APPLE NOKIA LICENSE.  BUT WE HAVEN'T

3    GOTTEN IT AND WE DON'T KNOW WHAT IT SAYS.

4        AND WHAT YOUR HONOR WILL SEE IS FOR MOST OF THE OTHER LAW

5    FIRMS ALL THAT'S HAPPENED UNTIL ABOUT TWO HOURS AGO WAS YOU GOT

6    ONE SENTENCE THAT SAID WE GOT IT, WE DIDN'T READ IT, WE GOT IT,

7    WE HAVE NO BASES TO BELIEVE WE USED IT, WE HAVE NO IDEA WHAT

8    INVESTIGATION HAS BEEN UNDER TAKEN.

9        BUT THE TIMING OF THAT MEMO IS SURELY BEFORE THE

10   DISCUSSIONS.  AND WHEN YOU GET TO THE DISCUSSION YOUR HONOR, I

11   WOULD ASK FOR THREE THINGS.

12       THERE IS A SUGGESTION IN SAMSUNG'S BRIEF THAT MR. MELIN'S

13   ACCOUNT WAS A FABRICATION.  WHAT POSSIBLE REASON WOULD AN

14   EMPLOYEE OF A THIRD PARTY OF THE LAWSUIT WHO IS NOT INVOLVED IN

15   THE DISPUTE HAVE TO FILED A FALSE DECLARATION TO GET A

16   PROTECTIVE ORDER.  IT DOESN'T MAKE A WHOLE LOT OF CENTS.

17       THE SECOND THING IS, WHY DID IT TAKE FOUR MONTHS BEFORE

18   YOU HEARD THE OTHER SIDE OF THE STORY.  AND THE THIRD AS

19   YOUR HONOR KNOWS FROM OUR BRIEFING, THERE WAS MORE THAN ONE

20   SAMSUNG PERSON THERE, THEIR STORES DON'T EVEN MATCH.

21       BUT PROBABLY MOST CRITICALLY, ON THE MOST IMPORTANT

22   THINGS, DR. AHN CONCEDED THEY WERE TRUE.  AND THAT SPEAKS

23   VOLUMES AFTER ALL TIME HAS PASSED

24            THE COURT:  THANK YOU, MR. LEE.

25       I WANT TO HEAR FROM MR. ALLEN.  MR. QUINN, I WILL GIVE YOU

```
 1        A CHANCE TO RESPOND.

 2            MR. ALLEN, GO AHEAD.

 3                MR. ALLEN:  YOUR HONOR, I HAVE FIVE THINGS I WANTED

 4        TO ADDRESS.

 5            FIRST OF ALL, WITH REGARD TO THE DOCUMENTS THAT MR. LEE HAS

 6        BEEN TALKING ABOUT.  FOR A NUMBER OF THOSE DOCUMENTS WE STILL,

 7        NOKIA, HAS NOT RECEIVED EVEN THE REDACTED VERSION OF THOSE

 8        DOCUMENTS.

 9            SAMSUNG APPARENTLY TAKES THE POSITION THAT EVEN THOUGH

10        YOUR HONOR ORDERED THEM TO PRODUCE THE DOCUMENTS, AND THAT

11        NOKIA WAS SUPPOSED TO PARTICIPATE IN THAT FULLY, THAT THEY

12        COULD PICK AND CHOOSE WHICH OF THE DOCUMENTS NOKIA WAS SUPPOSED

13        TO GET BASED UPON INDEPENDENT THIRD PARTY CONTRACTS OR MDA'S.

14            AS MR. LEE CITED MOST MAJOR RESPECTS, SAMSUNG DOESN'T

15        REFUTE THE STATEMENTS IN NOKIA'S INITIAL MOTION.  WE STILL

16        DON'T HAVE THE ANSWERS TO THE BASIC QUESTIONS.  WHO SENT WHAT

17        TO WHOM, WHEN AND HOW?

18            DESPITE AGREEING TO NEGOTIATE A STIPULATION, APPROACHING

19        THE COURT WITH NOKIA AND ASKING THAT THE STIPULATION BE ENTERED

20        INTO AS AN ORDER, SAMSUNG HAS NOW UNILATERALLY DECIDED THAT

21        THERE'S NO LONGER ANY NEED TO FOLLOW THAT ORDER.

22            FINALLY, I WANT TO TALK ABOUT NEXT STEPS.  AND LET ME

23        PAUSE HERE BRIEFLY, I WANT TO THE GO BACK IF I COULD YOUR HONOR

24        AND ADDRESS ONE OF THE QUESTION THAT IS YOU ASKED MR. LEE AND

25        THAT IS, WHAT SHOULD BE ON THE LOG.
```

1          AT THE TIME THAT -- AFTER WE NEGOTIATED THE STIPULATION

2     AND WE WERE ACTUALLY IMPLEMENTING THE PROCEDURES FOR THE

3     STIPULATION, ONE OF THE THING THAT IS WE DID WAS PREPARE A LOG.

4     I APOLOGIZE, I DIDN'T BRING IT WITH ME TODAY, I'M HAPPY TO

5     PROCEED IT TO THE COURT.  WE PROVIDE TODAY TO SAMSUNG.

6          AND IN PARTICULAR, I WILL SAY I'VE NEVER RECEIVED ANY

7     RESPONSE FROM SAMSUNG ABOUT THE LOG OR WHETHER THEY LIKED IT OR

8     DIDN'T LIKE IT.  THEY CERTAINLY DIDN'T IMPLEMENT IT.  I'M

9     ASSUMING THEY DON'T LOVE IT.

10         BUT ONE OF THE THINGS THAT WE ASKED BE INCLUDED IN THE

11    LOG IS A DESCRIPTION OF THE MANNER IN WHICH THE INFORMATION

12    THAT IS AT ISSUE IN THIS CASE, THE CONFIDENTIAL BUSINESS

13    INFORMATION, WAS INCLUDED IN THE DOCUMENT AT ISSUE.  INCLUDING

14    QUOTING IT.

15         SO IF FOR EXAMPLE A SECONDARY DOCUMENT WAS CREATED FROM

16    THE TEECE REPORT OR FROM THE 794 PUBLIC INTEREST STATEMENT, IF

17    INFORMATION WAS EXTRACTED FROM THAT AND PUT INTO ANOTHER

18    DOCUMENT, QUOTE IT SO WE KNOW IF WE HAVE SOME SENSE OF HOW THE

19    INFORMATION IS BEING USED.

20         THE SAME WOULD BE TRUE IF IT WAS INFORMATION THAT WAS

21    INDIRECTLY REFERENCED FOR EXAMPLE, YOU KNOW, IT DOESN'T QUOTE

22    THE SPECIFIC FINANCIAL TERMS BUT IT REFERENCE THAT IS THESE ARE

23    THE SAME AS THE SPECIFIC FINANCIAL TERMS.

24         GOING BACK TO THE DOCUMENTS AT ISSUE, YOUR HONOR, IN YOUR

25    OCTOBER 2ND ORDER.  YOU DIRECTED THAT ALL E-MAILS AND OTHER

1    COMMUNICATIONS TO THE EXTENT THEY RELATE TO APPLE'S LICENSE

2    WITH NOKIA ERICSSON, ETC., WERE TO BE PRODUCED.

3            AS I MENTIONED, NOKIA HAS NOT RECEIVED THE VERY DOCUMENTS

4    THAT STARTED THIS THING, THE TEECE REPORT OR THE 794 DOCUMENTS,

5    EVEN IF A REDACTED FORM.

6            NOW THIS IS PARTICULARLY ODD BECAUSE THE LANGUAGE THAT'S

7    IN THOSE DOCUMENTS OR TO REFERENCE THE NOKIA CBI THAT'S IN THE

8    DOCUMENTS HAS PREVIOUSLY BEEN DISCLOSED TO US IN MR. BECHER'S

9    JULY 16TH LETTER.

10           SO EVEN THOUGH THEY REVEALED TO US THE HARMFUL

11   INFORMATION THAT'S IN THERE, THEY STILL HAVE YET TO PRODUCE THE

12   DOCUMENTS AND THAT'S BEEN -- I THINK YOU WILL RECALL I RAISED

13   THIS ISSUE WHEN WE WERE HERE LAST, THAT THERE'S, IN SAMSUNG'S

14   MIND THERE'S A PERCEPTION THAT NOKIA PLAYS SOME SECONDARY ROLE

15   IN THIS PROCESS AND WHILE WE ARE NOT A PARTY TO THE LITIGATION

16   THIS IS OUR INFORMATION JUST AS MUCH AS IT IS APPLE'S.

17           IN CONNECTION WITH THE INVESTIGATION THAT SAMSUNG UNDER

18   TOOK, I WANT TO MAKE SEVERAL POINTS ABOUT THAT.

19           FIRST OF ALL, IN PREPARATION OF THEIR 30(B)(6) WITNESS,

20   THEY TOOK AN INCREDIBLY NARROW OVERLY PRECISE INVESTIGATORY

21   CHARGE.  TELL ME ABOUT THE TRANSMITTAL OF THE DOCUMENTS FROM

22   QUINN TO SAMSUNG.  AND TELL ME WHETHER YOU REMEMBER RECEIVING

23   THOSE DOCUMENTS AND TELL ME WHETHER YOU REMEMBER USING THOSE

24   DOCUMENTS.

25           THEY FOR EXAMPLE DID NOT ASK ANY OF THE INTERVIEW

1     TARGETS, DO YOU KNOW THE TERMS OF THE NOKIA APPLE LICENSE?  HAS

2     ANYBODY INFORMED YOU OF THE TERMS OF THE NOKIA APPLE LICENSE?

3          SAMSUNG'S COUNSEL DID NOT PREPARE MR. KOREA AND OBJECTED

4     TO HIS TESTIMONY ABOUT THE JUNE 4TH MEETING THAT STARTED THIS

5     ENTIRE PROCESS.

6          SO WHEN THE 30(B)(6) WITNESS SHOWED UP AT HIS DEPOSITION

7     AND SHE WAS ASKED WHAT HAPPENED, HE SAID I DON'T KNOW.  IT WAS

8     NOT PART OF HIS CHARGE TO PREPARE FOR HIS 30(B)(6) DEPOSITION

9     TO HAVE KNOWLEDGE OF THE EVENT THAT STARTED THIS ENTIRE DEBATE.

10         IT REMINDS ME OF WHEN WE HAD OUR VERY FIRST CALL TO STROZ

11    FRIEDBERG AND WE HAD THAT CALL YOUR HONOR ON FRIDAY AND I

12    APOLOGIZE YOUR HONOR I DON'T REMEMBER WHEN THE FRIDAY WAS.  IT

13    WAS ON FRIDAY AND SATURDAY.  EVERYBODY WAS GETTING ON THE PLANE

14    TO LEAVE FOR KOREA TO BEGIN THE INVESTIGATION.

15         SO THIS IS OUR FIRST CHANCE TO TALK TO THEM AND

16    UNDERSTAND WHAT IT IS THEY ARE GOING TO DO AND HOW THEY ARE

17    GOING TO DO IT AND I THINK WAS SUPPOSED TO HAPPEN, COLLABORATE

18    ON THE PROCESS.

19         AND DURING THE COURSE OF THAT CALL, WE LEARNED THAT

20    STRAWS FREED BERG DIDN'T KNOW ANYTHING ABOUT THE JUNE 4TH

21    MEETING.  THEY DIDN'T KNOW WHO MR. AHN WAS, THEY DIDN'T KNOW

22    WHO ANY OF THE OTHER PARTICIPANTS IN THE JUNE 4TH MEETING WERE.

23         SO THERE'S A PROBLEM IN THE WAY THIS PROCESS IS BEING

24    APPROACHED AND IT'S NOT BEING APPROACHED TO FIND OUT WHAT

25    HAPPENED, IT'S BEING APPROACHED IN A WAY TO SORT OF CHECK THE

1    BOX.  WE TALKED TO SOMEBODY WE LOOKED AT SOME DOCUMENTS AND BUT

2    WE STILL DON'T KNOW THE ANSWER TO WHAT HAPPENED.

3         MR. LEE TALKED ABOUT THE DISCLOSURE IN DECEMBER 2012.  I

4    WON'T BELABOR THAT ISSUE FURTHER.  AS AN EXAMPLE OF SOMETHING

5    WE DON'T KNOW.  AND THIS IS COVERED IN GREATER DETAIL

6    YOUR HONOR ON PAGE 3 AND 4 OF OUR BRIEF.

7         ON THE DAY THAT THAT DOCUMENT WAS DISCLOSED TO SAMSUNG,

8    IT WAS THE TEECE REPORT IN DECEMBER 2012, SOME UNIDENTIFIED

9    ASSOCIATE, WE DON'T KNOW WHO IT IS, WE JUST KNOW FROM

10   MR. BECHER THAT THERE WAS AN ASSOCIATE FROM HIS LETTER TO US,

11   EXCUSE ME, THIS WAS NOT A LETTER TO US, WE NEVER RECEIVED THIS

12   LETTER, IT WAS A LETTER TO APPLE THAT WAS ATTACHED AS AN

13   EXHIBIT TO ONE OF THE BRIEFS.

14        THAT AN ASSOCIATE DETERMINED WITHIN HOURS THAT THAT WAS A

15   DOCUMENT THAT SHOULD NOT PROPERLY HAVE BEEN SENT TO SAMSUNG.

16        SO IN DECEMBER 2012 AN ASSOCIATE AT QUINN EMANUEL FIGURES

17   OUT THE TRUTH.  THIS IS LONG AFTER MANY MANY PEOPLE HAD ALREADY

18   SENT THE DOCUMENT AND BEFORE MANY MANY MORE PEOPLE ARE GOING TO

19   SEND THE DOCUMENT.  AND CIRCULATE IT WITHIN SAMSUNG.  I DON'T

20   KNOW WHO THE ASSOCIATE IS.  I DON'T KNOW WHAT POWERS OF INSIGHT

21   AND GENOUS THAT ASSOCIATE HAS THAT HE CAN FIGURE THIS OUT IN

22   SUCH SHORT ORDER.

23        WHILE A LETTER WAS NOT SENT TO US THE LETTER IS ATTACHED

24   AS TAB EIGHT, THE REFERENCE TO THIS EVENT IS AT PAGE 2, THE

25   SECOND PARAGRAPH OF THAT LETTER TO OUR BRIEF.

```
1         WHAT WE ALSO KNOW IS THAT THE PERSON THAT THE ASSOCIATE

2    CONTACTED AND SAID PLEASE DELETE IT, PROVIDED REPRESENTATIONS

3    THAT IT WAS DELETED BUT WE KNOW MONTHS LATER THE SAME PERSON

4    SENT THE SAME DOCUMENT OUT AGAIN.

5         SO SOMEBODY, THE STORY THAT QUINN EMANUEL IS TELLING US

6    ABOUT WHAT HAPPENED DOESN'T JUSTIFY WITH WHAT IN FACT HAPPENED.

7    SOMEBODY IS NOT TELLING THE TRUTH ABOUT THAT EVENT.

8         SO IT'S EITHER QUINN EMANUEL OR SAMSUNG IS NOT PROVIDING

9    A CANDID ASSESSMENT OF WHAT HAPPENED.

10        BUT AS MR. LEE POINTED OUT AND I THINK THERE JUST CAN BE

11   NO DISPUTE ABOUT THIS AT THIS STAGE, THERE'S NO QUESTION THAT

12   IN DECEMBER OF 2012, QUINN EMANUEL, SAMSUNG'S COUNSEL, AND

13   SAMSUNG HAD ACTUAL KNOW THAT IN INFORMATION HAD BEEN IMPROPERLY

14   DISCLOSED TO SAMSUNG EMPLOYEES.

15        THE SECOND STORY I WANT TO TELL YOU AND YOU ASKED ABOUT

16   THIS, YOUR HONOR, IT'S DETAILED ON PAGE FOUR OF OUR BRIEF, IS

17   THE SORT OF INEXPLICABLE APPEARANCE OF WILLIAMS AND CONNOLLY.

18        SO WILLIAMS AND CONNOLLY IN MARCH RECEIVES THE IMPROPERLY

19   DISCLOSED INFORMATION.  AND WITHIN A RELATIVELY SHORT PERIOD

20   AFTER THAT, GENERATES A MEMO, THE TITLE OF WHICH IS THE NOKIA

21   APPLE LICENSE DOT DOCKS MEMO.

22        I THINK IT'S FAIR TO SAY THERE WAS SOME EFFORT IN THE

23   DOCUMENT PRODUCTION TO CONCEAL THE EXISTENCE OF THAT DOCUMENT.

24   THE NAME OF THE DOCUMENT WHICH CAN'T REVEAL ANY ATTORNEY CLIENT

25   INFORMATION WAS REDACTED ON A NUMBER OF THE DOCUMENTS AT ISSUE.
```

```
 1            IT HAS BEEN -- I THINK THE ROLE -- I WILL SAY IT THIS WAY

 2    AND I WILL LET MR. QUINN EXPLAIN IT IF HE WOULD LIKE.

 3            THE ROLE OF WILLIAMS & CONNOLLY IN THIS CASE AS IT

 4    RELATES TO NOKIA IS FAIRLY CLEARLY ESTABLISHED IN THE BRIEFS.

 5    AND IT'S INEXPLICABLE TO ME HOW THEY -- THEY WERE NOT AT THE

 6    TIME THEY RECEIVED THIS DOCUMENT A COUNSEL A PARTY IN THIS CASE

 7    WHATSOEVER.

 8            SO WHY IT WAS THEY WERE SENT THIS INFORMATION IS

 9    DIFFICULT FOR ME TO COMPREHEND.

10            WHY IT IS WE DON'T HAVE AT LEAST A REDACTED COPY OF THE

11    MEMO SINCE IT WAS IN FACT ENTERED ON THEIR LOG SO IT MUST BE

12    RESPONSIVE TO YOUR HONOR'S ORDER, HAVEN'T SEEN IT, DON'T KNOW

13    WHAT IT SAYS.

14            THE COURT:  AND WILLIAMS & CONNOLLY IN MY

15    UNDERSTANDING IS A -- IS COUNSEL IN THE 12-630 CASE BUT ONLY

16    ENTERED AN APPEARANCE AFTER THE EVENTS THAT WE WERE TALKING

17    ABOUT.

18            MR. ALLEN:  THAT IS CORRECT, YOUR HONOR.  THAT IS MY

19    UNDERSTANDING.  I DON'T KNOW WHEN THEY PRECISELY ENTERED THEIR

20    APPEARANCE.

21            NOW LET ME SAY JUST A FEW THINGS ABOUT THE I'LL LOOKING

22    FOR A NAME I GUESS I WILL CALL IT THE AHN STORY.

23            I SAID AT THE OUTSET THAT I DON'T BELIEVE THAT SAMSUNG

24    HAS MATERIAL ALLEY REFUTED ANY REPRESENTATIONS THAT MR. MELIN

25    MADE IN HIS DECLARATION.
```

1    AND LET'S RECALL THE CIRCUMSTANCES OF WHEN MR. MELIN

2    TENDERED HIS DECLARATION.  IT WAS BEFORE WE EVEN KNEW THAT EVEN

3    ONE DOCUMENT HAD BEEN SENT FROM QUINN EMANUEL TO SAMSUNG.

4    WHAT WE LEARNED WITHIN WEEKS OF THE TIME THAT WE FILED

5    THEIR MOTION WHICH I BELIEVE WAS ON JULY THE 2ND WAS THAT QUINN

6    EMANUEL HAD SENT LEGIONS OF DOCUMENTS TO SAMSUNG.

7    BUT AT THE TIME MR. MELIN SIGNED THAT DECLARATION UNDER

8    OATH HE DIDN'T KNOW ANY OF THIS.  HE SIGNED A SIMPLE

9    DECLARATION AND TOLD HIS STORY.

10   AND HIS STORY WAS THAT AT THE JUNE 4TH MEETING MR. AHN

11   SAID HE KNEW THE TERMS.

12   NOW MR. AHN SAYS I KNEW THE TERMS, I ACTED LIKE I KNEW

13   THE TERMS AT THE MEETING.  I CONDUCTED MYSELF IN A WAY TO

14   COMMUNICATE TO THEM THAT I KNEW THE TERMS OF THE NOKIA APPLE

15   LICENSE.

16   NOW HE SAYS NOW HE'S PRETENDING.  I DON'T KNOW WHEN HE'S

17   PRETENDING BUT HE SAID WHAT HE SAID.

18   IF YOU CLICK THROUGH WHETHER IT'S THE SPECIFIC FINANCIAL

19   TERMS AND I WON'T GO INTO THOSE HERE, THERE'S NO NEED TO DO

20   THAT.  OR HIS REPRESENTATIONS ABOUT LEAKS, WHILE HE CAN'T

21   REMEMBER PRECISELY WHAT HE SAID HE REMEMBERS MAKING A COMMENT

22   ABOUT LEAKS.

23   THE ONLY THING THAT HE SAYS HE DID NOT DO IS THAT HE DID

24   NOT SAY TO MR. MELIN, I GOT THIS INFORMATION FROM MY COUNSEL.

25   HE SAYS THAT WOULD BE FOOLISH FOR ME.

```
 1            I AGREE THAT IT WAS FOOLISH BUT IT IS EXACTLY WHAT HE

 2     SAID.  AND IT'S THE ONLY FACT THAT IS NOT MATERIALLY IN

 3     DISPUTE.  BECAUSE WHAT WE DIDN'T KNOW AT THE TIME WE FILED OUR

 4     MOTION THAT WE ALL KNOW NOW IS THAT COUNSEL DID SEND HIM THE

 5     INFORMATION.  THEY SENT IT REPEATEDLY TO PEOPLE INSIDE SAMSUNG

 6     INCLUDING MR. AHN AND INCLUDING TO THE OTHER PARTICIPANTS IN

 7     THAT MEETING.

 8            SO THE THING HE DISPUTES SAYING IS BEYOND REFUTE AT THIS

 9     STAGE AND FRANKLY I DON'T THINK IS CERTAINLY IN ANY MATERIAL

10     DISPUTE FROM SAMSUNG, IF I'M WRONG ABOUT THAT THEY CAN SAY.

11            NOKIA HAS SET FORTH RELIEF IT REQUESTED IN ITS BRIEF.

12     AND LET ME SPEAK TO JUST A COUPLE OF THOSE POINTS.

13            SAMSUNG HAS AT LEAST FOR THE TIME BEING COMPLETELY

14     DISAVOWED ANY RESPONSIBILITY THAT IS IT UNDERTOOK IN AGREEING

15     TO THE STIPULATION THAT NEGOTIATED, WE SORT OF TRIED TO TAKE

16     THE RIGHT APPROACH.

17            WE WORKED WITH THEM.  IT WASN'T PERFECT, IT WASN'T

18     EVERYTHING WE WANTED.  WE TRIED TO COME UP WITH A STIPULATION.

19     THEY APPROACHED THE COURT.  WE APPROACHED TO COURT TO GET IT

20     ENTERED, IT WAS ENTERED, IT'S AN ORDER.

21            AFTER THE OCTOBER 1ST HEARING THE OCTOBER 2ND ORDER IS

22     ENTERED.  THEY HAVE LARGELY IGNORED.  AND I SAY LARGELY I WAS

23     READY TO COME TO COURT TODAY AND SAY THEY HAVE COMPLETELY

24     IGNORED.  THEY HAVE NOT COMPLETED A SINGLE, LITERALLY, BEFORE

25     11 CLOCK 12:00 TODAY THEY HAD NOT COMPLETED A SINGLE
```

1    REQUIREMENT UNDER THE STIPULATION.

2            THE COURT:  WHAT HAPPENED AT 11 OR 12:00 TODAY?

3            MR. ALLEN:  I DON'T REMEMBER EXACTLY WHAT THE TIME

4    WAS, BUT I GOT A 26 PAGE DECLARATION FROM SOMEBODY AT QUINN

5    EMANUEL FORWARDING A DECLARATION TO ME FROM MR. BECHER.  I WILL

6    JUST ADMIT THIS OUT LOUD, I HAVEN'T READ IT.

7            IT APPEARS TO BE A DECLARATION THAT DETAILS THE

8    DISSEMINATION OF THE INFORMATION BY QUINN EMANUEL TO OUTSIDE

9    LAW FIRMS.  AND I SAY APPEARS, I DID READ OR LOOK AT IT

10   QUICKLY.  I KNOW THAT'S ONE OF THE THINGS THAT QUINN EMANUEL IS

11   REQUIRED TO DO IT TO HAVE ONE OF THEIR PARTNERS TENDER SUCH A

12   DECLARATION.

13           BUT OTHER THAN, AND LET'S JUST SET THAT ONE ASIDE.  OTHER

14   THAN THAT ONE, NOTHING UNDER THE STIPULATION HAS BEEN UNDER

15   TAKEN.  AND IN FACT WHAT I NOW KNOW, MR. LEE REFERRED TO AND

16   IT'S IN MR. BECHER'S DECLARATION, THAT THEY HIJACKED STROZ

17   FRIEDBERG.

18           SO STROZ FRIEDBERG WAS THE ONE WHO AGREED TO UNDERTAKE

19   THE INVESTIGATION AND PROVIDE REPORTS TO NOKIA SO WE COULD SE

20   IF WE COULD PURSUE A REASON INTO THIS MADNESS.

21           AND NOW QUINN EMANUEL HAS APPARENTLY ISSUED ANOTHER

22   RETENTION LETTER TO STROZ FRIEDBERG APPARENTLY -- I'M JUST

23   GOING TO GUESS, ERECTING AN ATTORNEY CLIENT PRIVILEGE WALL.  I

24   THINK YOU SAW SOME REFERENCE THAT IN THE DECLARATION FROM THE

25   STROZ FRIEDBERG REPRESENTATIVE, SO THAT WE CAN'T CONTACT STROZ

1    FRIEDBERG AND LEARN THE STATUS OF WHAT IT IS THEY HAVE DONE AND

2    LEARNED.

3         AND IN FACT IN PREPARATION FOR THIS HEARING ON SATURDAY

4    ALL OF THIS WAS UNKNOWN TO ME AT THE TIME I DID IT, I SENT

5    MR. BECHER AN E-MAIL AND I SAID I WOULD LIKE TO ARRANGE A CALL

6    WITH STROZ FRIEDBERG.  I KNOW THAT'S HAPPENED.

7         I SAID, LET'S GET ON THE PHONE AND FIND OUT, HOW FAR OFF

8    ARE WE?  WHERE ARE WE AT WITH ALL THESE PROJECTS?

9         AND IN SHORT ORDER MR. BECHER SAID, NO, THE STIPULATION

10   DIDN'T PROVIDE FOR YOU TO HAVE CONFERENCES WITH STROZ

11   FRIEDBERG.

12        AND I THOUGHT THAT'S REMARKABLY DIFFERENT KIND OF TONE

13   THAN I THOUGHT IT WAS I HEARD WHEN I WAS HERE WITH THEM IN

14   COURT.

15        I THINK THE SUGGESTION IS THAT IF YOU THINK THE DOCUMENTS

16   DON'T SATISFY THE LOG OR THE PRIVILEGE LOGS WE HAVE CREATED

17   DON'T SATISFY THE LOG THAT'S CALLED FOR UNDER THE STROZ

18   FRIEDBERG PROCESS, COME TALK TO ME AND LET'S SEE WHAT WE CAN

19   WORK OUT.

20        ONE OF THE FORMS OF RELIEF THAT WE HAVE ASKED FOR IN OUR

21   MOTION, OUR PAPERS TODAY, IT'S I SAID UP FRONT, WE CAME TO THE

22   TABLE IN GOOD FAITH WE TRIED TO WORK OUT A RESOLUTION WITH

23   SAMSUNG AND QUINN EMANUEL.

24        WE THOUGHT WE HAD AT LEAST A WORKABLE I RECOGNIZE THE

25   COURT HAD SOME HESITATION ABOUT IT.  WE THOUGHT WE HAD AT LEAST

1    A WORKABLE START TO THE PROCESS.  QUINN EMANUEL CANNOT

2    SUPERVISE THAT PROCESS.  IT'S UTTERLY AND COMPLETELY FAILED.

3         AND LIKE WE SUGGESTED IN OUR PAPERS THAT A SPECIAL MASTER

4    BE APPOINTED FOR THE PURPOSE OF SUPERVISING THAT PROCESS, I

5    HAVE TO TELL YOU, YOUR HONOR, I AM THE PERSON WHO INITIALLY

6    SUGGESTED STROZ FRIEDBERG.

7         THEY MAY STILL BE THE RIGHT PERSON BUT I THINK THAT BALL

8    IS BACK UP IN THE AIR AS TO WHETHER OR NOT THEY ARE THE RIGHT

9    PARTIES GIVEN WHAT'S HAPPENED TO CONTINUE THE PROCESS.

10        I'M NOT TRYING TO JUMP TO CONCLUSIONS THERE, THEY MAY AND

11   BE IT MAY WORK FINE, BUT I THINK SOMEBODY HAS TO BE BROUGHT IN

12   WHO IS GOING TO TAKE RESPONSIBILITY TO FINISH THAT PROCESS AND

13   NOT UNILATERALLY DECIDE WHEN THEY ARE GOING TO JUMP ON THE

14   TRAIN AND WHEN THEY ARE GOING TO JUMP OFF THE TRAIN AS IT SUITS

15   THEIR PURPOSE.

16        I DO THINK RECOGNIZING THE BURDEN IT WILL PLACE WHETHER

17   IT'S THE COURT OR SPECIAL MASTER APPOINTED BY THE COURT, SOME

18   PROCESS HAS TO BE ADDRESSED TO RESOLVE THE PRIVILEGE ROADBLOCK

19   ISSUE THAT CONFRONTS THIS MATTER.

20        I WILL SAY THAT I HAVE A LOT OF HESITATION ABOUT WHETHER

21   OR NOT A 50 DOCUMENT IN CAMERA REVIEW WILL GET IT DONE.  I'M

22   MORE THAN WILLING TO START AT THAT PLACE.

23        I WOULD LIKE FOR NOKIA TO HAVE A SEAT AT THE TABLE.  I

24   THINK IN OUR VIEW THE NUMBER THAT WE CAME UP WITH WAS THAT THE

25   STARTING PLACE OUGHT TO BE AROUND 75 DOCUMENTS, MAYBE THAT'S

```
 1    NOT THAT BIG A DIFFERENCE BUT IT IN FACT COULD BE A BIG

 2    DIFFERENCE.

 3         AFTER THE DOCUMENT ISSUE IS RESOLVED AND THE DOCUMENTS

 4    THAT NEED TO BE PRODUCED ARE IN FACT PRODUCED, IT'S CLEARLY

 5    GOING TO BE NECESSARY TO RESEAT SEVERAL OF THE WITNESSES WHO

 6    HAVE PREVIOUSLY TESTIFIED.  IN PARTICULAR, DR. AHN AND IN

 7    PARTICULAR MR. KWAK AND IN PARTICULAR THE 30(B)(6)

 8    REPRESENTATIVE OF SAMSUNG PROPERLY PREPARED TO ANSWER THE

 9    QUESTIONS ABOUT WHAT SAMSUNG KNEW AND WHEN THEY KNEW IT AND HOW

10    THEY USED THE INFORMATION AT ISSUE.

11         I WANT TO ADDRESS ONE FINAL POINT AND THEN I WILL SIT

12    DOWN.  IN THEIR MOVING PAPERS, AND IT'S A FOOTNOTE -- I

13    APOLOGIZE, I DON'T RECALL WHICH ONE, SAMSUNG'S MOVING PAPERS IN

14    SAMSUNG'S BRIEF THAT THEY FILED YESTERDAY, ONE OF THE THINGS

15    THEY SAY IS IF THE COURT IS GOING TO, YOU KNOW, NO DISCOVERY IS

16    NECESSARY, THE BLACKED OUT DOCUMENTS ARE SUFFICIENT, THESE ARE

17    NOT THE DROIDS YOU ARE LOOKING FOR, GO AWAY.

18         ONE OF THE THINGS THEY ARE GOING TO SAY IS IF THE COURT

19    ORDERS DISCOVERY, WE, SAMSUNG HAS THE TEMERITY TO SUGGEST THEY

20    WANT TO ENGAGE IN OFFENSIVE DISCOVERY FOR THE PURPOSES OF

21    DETERMINING WHEN THEY MADE AN INADVERTENT DISCLOSURE.

22         OFFENSIVE IS AN UNDERSTATEMENT TO THAT PROCESS.  THEY

23    DON'T GET IT.  THEY DON'T GET WHAT THEIR OBLIGATIONS ARE, THEY

24    DON'T GET WHAT THEIR RESPONSIBILITIES ARE, AND THEY NEED TO BE

25    MADE TO ANSWER TO THAT.
```

1    AND I WILL SIT DOWN AND SHUT UP.  WE ASK THE COURT'S

2    INDULGENCE IN THIS AND YOUR FURTHER HELP.

3    THANK YOU.

4    THE COURT:  THANK YOU, MR. ALLEN.

5    MR. QUINN?

6    MR. QUINN:  THANK YOU, YOUR HONOR.

7    WE DO GET IT, YOUR HONOR.  THIS CASE IS, THIS WHOLE

8    PROCEEDING IS ABOUT A FEW LINES CONCERNING THE TERMS OF A

9    LICENSE IN THE TEECE -- IN THE DRAFT TEECE REPORT.

10    IT DOESN'T CONCERN A BRIEF FILED IN THE ITC OR A DRAFT OF

11    A BRIEF FILED IN THE ITC OR A SUMMARY OF A BRIEF POINT TO BE

12    MADE IN THE ITC.

13    MR. LEE CONCEDED THAT IN RESPONSE TO YOUR HONOR'S

14    QUESTION AT THE LAST HEARING.

15    EVEN IF THERE WERE AN IMPROPER DISCLOSURE IN A BRIEF

16    HYPOTHETICALLY SPEAKING IN A BRIEF PREPARED BY THE ITC OR A

17    SUMMARY THAT WAS IMPROPERLY SHARED, THAT WOULD NOT BE A

18    VIOLATION OF THIS COURT'S PROTECTIVE ORDER.  THERE IS A

19    PROVISION HERE THAT PROVIDES AND THE PARTIES DID STIPULATE,

20    THAT DOCUMENTS PRODUCED IN THE ITC PROCEEDING ARE DEEMED

21    PRODUCED IN THIS CASE.

22    THERE IS NOTHING, NOTHING THAT SAYS DRAFTS OF BRIEFS OR

23    BRIEFS CREATED IN THE ITC PROCEEDING ARE DEEMED SUBJECT TO THIS

24    COURT'S PROTECTIVE ORDER.

25    MUCH OF WHAT MR. LEE WAS TELLING YOUR HONOR ABOUT THOSE

1    HUNDREDS DURING THAT CRITICAL TIME PERIOD, DOCUMENTS GOING BACK

2    AND FORTH, DOESN'T RELATE TO THE TEECE REPORT.

3         IT RELATES TO DOCUMENTS CONCERNING THE ITC.  THERE WAS A

4    PROTECTIVE ORDER.  THERE IS A PROTECTIVE ORDER IN PLACE IN THE

5    ITC.  APPLE HAS COMMENCED A PROCEEDING SIMILAR TO THIS ONE IN

6    THE ITC.

7         THAT IS NOT, I SUBMIT YOUR HONOR, THERE ARE SERIOUS

8    ISSUES HERE, BUT THAT'S NOT ONE OF THEM.  AND MR. LEE HAS VERY

9    CLEVERLY MIXED THE TWO ISSUES.  THERE IS NO WAY THAT THAT TEECE

10   REPORT WENT BACK AND FORTH DURING THAT TIME PERIOD.

11        NOW IF THIS CASE DOES -- IT'S IMPORTANT, IT CONCERNS AN

12   INADVERTENT DISCLOSURE OF INFORMATION THAT SHOULD NOT HAVE BEEN

13   DISCLOSED.

14        THE COURT:  MR. QUINN, IF I COULD JUST STOP YOU THERE

15   FOR A MOMENT, SIR, I APOLOGIZE.

16     ARE YOU SAYING BETWEEN MARCH 13TH AND APRIL 23RD, 2013, THE

17   TEECE REPORT WE HAVE BEEN DISCUSSING WAS NOT SENT BACK AND

18   FORTH BETWEEN QUINN AND FOLKS AT SAMSUNG?

19        MR. QUINN:  I'M TRYING TO FIND THE DOCUMENT,

20   YOUR HONOR.  I APOLOGIZE.

21        WHEN MR. LEE TALKS ABOUT 496 DOCUMENTS ON PRIVILEGE LOG,

22   THOSE DOCUMENTS GOING BACK BETWEEN MARCH 13TH AND APRIL 3RD,

23   THEY ARE REFERRING TO ON THOSE DOCUMENTS ITC RELATED DOCUMENTS.

24   NOT REFERRING TO TEECE DOCUMENTS.  NOT REFERRING TO A DRAFT OF

25   THE TEECE REPORT.

```
1              THE COURT:  OKAY.

2         SO YOU'RE TELLING ME THAT IF I LOOK AT THIS PAIR OF LOGS

3    THAT YOU ALL GENERATED, I WILL NOT FIND ANY COMMUNICATIONS

4    BETWEEN THAT PERIOD OF TIME OR IN THAT PERIOD OF TIME?

5              MR. QUINN:  I'M TURNING TO MR. BECHER TO MAKE SURE WE

6    GET THIS EXACTLY RIGHT.

7              THE COURT:  DO YOU WANT TO ADDRESS THAT ISSUE,

8    PERHAPS?

9              MR. BECHER:  YES, YOUR HONOR.

10        WHAT I CAN SAY IS THAT MY UNDERSTANDING OF THE DISCLOSURES

11   DURING THAT PERIOD OF TIME IS THAT THEY ALL RELATE TO THE ITC

12   EITHER THE BRIEF OR THE OUT LINE OR THE FINAL BRIEF OR THE

13   DRAFT BRIEF AND NOT THE TEECE REPORT.

14        AND WHAT MR. LEE STATED IT HAD BEEN SENT DOZENS OF TIMES

15   DURING THAT TIME PERIOD I CAN FIND NOWHERE INDICATING THAT.

16             THE COURT:  OKAY.

17        IF I CAN ASK YOU TO FOLLOW UP ON THAT, MR. BECHER, SINCE

18   YOU PROBABLY HAVE A DEEPER AND RICHER UNDERSTANDING OF THIS LOG

19   THAN ANY OF US IN THIS ROOM.

20        WHAT I'M INTERESTED IN IS WHETHER ANY OF THOSE ITC

21   COMMUNICATIONS IN THAT PERIOD OF TIME REFER TO OR INCLUDED THE

22   TEECE REPORT WE HAVE BEEN DISCUSSING.  I TAKE IT FROM YOUR

23   STATEMENT JUST NOW THEY DO NOT.  BUT I WANT TO MAKE SURE I

24   UNDERSTAND.

25             MR. BECHER:  I'M NOT AWARE OF ANY.
```

1          IF MR. LEE HAD A BASIS FOR HIS STATEMENT, I WOULD CERTAINLY

2     BE WELCOME TO HEAR IT, BUT I'M NOT AWARE OF IT.

3               MR. LEE:  YOUR HONOR, IF I COULD ASK --

4               THE COURT:  I WILL GIVE YOU A CHANCE FOR RESPONSE,

5     MR. LEE.  TO BE FAIR, MR. QUINN, I WILL GIVE YOU AN

6     OPPORTUNITY.

7               MR. QUINN:  THE COURT'S QUESTION WAS DID ANY OF THOSE

8     ITC DOCUMENTS ALSO QUOTE DATA THAT WAS IN THE TEECE REPORT.

9          IF THAT'S THE COURT'S QUESTION, I MEAN, I'M DRAWING -- I

10    THINK THIS IS A MEANINGFUL DISTINCTION IMPORTANT DISTINCTION

11    YOUR HONOR BETWEEN THE DOCUMENTS AND THE DATA THE NUMBERS.

12               THE COURT:  UNDERSTOOD.

13          MR. BECHER, DO YOU WANT TO RESPOND?

14               MR. BECHER:  YES, YOUR HONOR.

15          I DIDN'T UNDERSTAND THAT TO BE YOUR QUESTION, BUT TO THE

16    EXTENT IT WAS, THE DOCUMENTS DID REFER TO TERMS OF THE NOKIA

17    LICENSE THAT DIDN'T COMPLETELY OVERLAP WITH THE INFORMATION

18    THAT WAS CONTAINED IN THE TEECE REPORT REGARDING THE NOKIA

19    LICENSE.

20          AND I WOULD SAY MORE BUT I BELIEVE THAT MR. ALLEN OR OTHERS

21    WOULD TELL ME THAT I CANNOT SPEAK FURTHER.

22               THE COURT:  WELL, WE WILL GET TO THAT ISSUE IN A

23    MOMENT.

24               MR. BECHER IF THESE COMMUNICATIONS IN THIS PERIOD ON YOUR

25    LOG DO NOT REFER TO THE TEECE REPORT ITSELF, I'M NOT TALKING

1    ABOUT INFORMATION THAT MAY BE INCLUDED IN THE TEECE REPORT AS

2    WELL AS OTHER DOCUMENTS, BUT IF THOSE DOCUMENTS IN THAT PERIOD

3    DO NOT REFER TO THE TEECE REPORT, WHY ARE THEY ON THE LOG IN

4    THE FIRST PLACE.

5              MR. BECHER:  THAT'S A GOOD QUESTION, YOUR HONOR.

6              THE COURT:  WHAT'S A GOOD ANSWER?

7              MR. BECHER:  I WILL PROVIDE A GOOD ANSWER.

8         I THINK WE ARE REFERRING BOTH TO THE LOG AND TO PRODUCED

9    DOCUMENTS.

10        SO SOME OF THESE DOCUMENTS THAT I'M REFERRING TO AT

11   LEAST, I'M NOT FOCUSSING ON THE LOG I'M ALSO REFERRING TO

12   DOCUMENTS THAT WERE PRODUCED IN REDACTED FORM.

13             THE COURT:  OKAY.

14        BUT MY UNDERSTANDING IS IF THEY WERE PRODUCED IN REDACTED

15   FORM THERE WAS A LOG WHICH IDENTIFIED EACH DOCUMENT THAT WAS

16   SUBJECT TO REDACTION.  I THOUGHT THERE WAS A REDACTION LOG AND

17   PRIVILEGE LOG.

18             MR. BECHER:  THAT IS CORRECT, YOUR HONOR.

19        I'M REFERRING TO THE DOCUMENTS BECAUSE THAT'S SOMETHING

20   EVERYBODY CAN LOOK AT BECAUSE IT HAS THE RECIPIENTS.

21        THE REASON WE INCLUDED THOSE IS BECAUSE WE INTERPRETED

22   YOUR HONOR'S ORDER TO CALL FOR US TO PRODUCE ANY DOCUMENT THAT

23   EVEN MADE BARE MENTION OF THE EXISTENCE OF THE APPLE/NOKIA,

24   APPLE/SHARP, APPLE/ERICSSON AND APPLE/PHILIPS LICENSE.  AND WE

25   COMPLIED.  WE DID NOT CONSIDER THE ORDER TO BE LIMITED TO THE

1   TEECE REPORT AND THE ITC AND WE WANTED TO BE FULLY COMPLIANT

2   EVEN IF WE WERE PERHAPS DOING MORE THAN WHAT WAS EXPECTED OF US

3   AND THAT IS WHY THOSE DOCUMENTS WERE INCLUDED.

4         THE COURT:  ALL RIGHT.

5      THANK YOU, MR. BECHER.

6      MR. QUINN, I INTERRUPTED YOU.  GO AHEAD.

7         MR. QUINN:  IN OTHER WORDS, MY UNDERSTANDING AND I

8   HOPE MR. BECHER WILL GIVE ME A KICK IF I GET THIS WRONG,

9   YOUR HONOR'S ORDER REQUIRED ANY DOCUMENT REFERRING TO ANY OF

10  THOSE LICENSES WHETHER OR NOT IT REFERRED TO THE LICENSE TERMS

11  THAT WERE IN THE TEECE REPORT.

12        THE COURT:  THAT'S RIGHT.  I WAS FAIRLY EXPLICIT ON

13  PAGE 5.

14        MR. QUINN:  HENCE THE HUGE NUMBER OF DOCUMENTS ON THE

15  PRIVILEGE LOG.

16     SO YOUR HONOR, WE DEEPLY REGRET THAT THERE WAS A

17  DISCLOSURE REGARDING A DRAFT OF THE TEECE REPORT

18        THE COURT:  MR. QUINN, CAN I ASK YOU A QUESTION I PUT

19  TO MS. ESTRICH SOME WEEKS AGO.  WAS THERE A VIOLATION OF THIS

20  PROTECTIVE ORDER OR NOT?

21        MR. QUINN:  IF AN INADVERTENT DISCLOSURE IS A

22  VIOLATION WE VIOLATED IT.  WE VIOLATED IT.  IT WAS INADVERTENT

23  YOUR HONOR.  WHAT IS HAPPENS HERE IS A DOCUMENT IS IMPROPERLY

24  REDACTED.  IT APPEARS THEN IN DIRECTORIES ON PEOPLE'S FILES IT

25  SAYS TEECE REPORT REDACTED.

1    WHEN SOMEBODY THEN SENDS THAT DOCUMENT OUT FORWARDS IT TO

2    SOMEBODY THEY DON'T GO BACK AND RECHECK THE REDACTION, SADLY

3    FOR US IN THIS CASE.

4    THEY FORWARD IT.  SO ONCE THE MISTAKE IS MADE, PEOPLE SEE

5    THAT TEECE REPORT REDACTED, IT GETS FORWARDED.

6    WE DEEPLY REGRET IT.  YOUR HONOR, EVERY LAWYER IN OUR LAW

7    FIRM KNOWS ABOUT THIS.  AND WE HAVE INSTITUTED A RULE AT OUR

8    FIRM THAT GOING FORWARD, ANY REDACTIONS FOR PUBLIC FILES OR TO

9    GO TO CLIENTS WILL BE TWO SETS OF EYES THAT MUST BE ON IT AND A

10   PARTNER MUST MAKE SURE THAT THAT ACTUALLY HAPPENS, IS

11   RESPONSIBLE FOR THAT.  NOT ONLY FOR THIS CASE, BUT FOR ANY

12   CASE, YOUR HONOR.

13   AND IT SHOULD NOT HAVE HAPPENED.  AND WE DEEPLY REGRET

14   THAT.  BUT I SUBMIT YOUR HONOR, THAT HAVING GONE THROUGH THE

15   PROCESS THAT WE HAVE GONE THROUGH, THERE IS NO EVIDENCE OF

16   INTENT, AND I WANT TO ADDRESS EACH OF THE THINGS THAT MR. LEE

17   TALKED ABOUT.

18   THERE'S NO EVIDENCE OF USE EXCEPT TO THE EXTENT THAT THE

19   ORIGINAL MR. -- DECLARATION OF MR. MELIN IS FACIALLY SOME

20   EVIDENCE OF USE, BUT WE HAVE NOW GOT A FULL RECORD OF THAT.

21   AND I WANT TO ADDRESS THAT AS WELL.

22   BUT THE PUNCH LINE HERE, YOUR HONOR, IS SADLY I BELIEVE

23   THIS IS A CIRCUMSTANCE WHERE WE MADE A MISTAKE AND OTHERS ARE

24   SEEKING TO TAKE ADVANTAGE OF THAT AND THEY ARE NEVER GOING TO

25   BE SATISFIED NO MATTER WHAT WE DO.

```
 1          NOW LET ME GO BACK.  THE EVIDENCE OF USE OF THE TEECE

 2     REPORT AND WE HAD MR. MELIN'S DECLARATION WHICH WE RECEIVED, IN

 3     CONNECTION WITH THE PROTECTIVE ORDER A MONTH AFTER THE MEETING.

 4     THERE WAS NO COMMUNICATION IN BETWEEN.  MR. MELIN DOES NOT SAY

 5     WHAT MR. AHN SAID WERE THE TERMS.  HE JUST SAID MR. AHN RECITED

 6     THE TERMS TO ME.

 7          WE NOW HAVE A FULL RECORD, TWO OF THE SAMSUNG

 8     PARTICIPANTS HAVE BEEN DEPOSED, DR. AHN AND MR. KWAK.  WE HAVE

 9     DECLARATIONS FROM ALL THREE PEOPLE.  ON THE PRESENT RECORD IT'S

10     UN DISPUTED THAT MR. MELIN IS THE FIRST ONE WHO HAS SUGGESTED

11     THAT APPLE WAS AN APPROPRIATE COMPARISON HERE AND BROUGHT UP

12     THE NOTION.

13          HE SAID THERE'S A COMPANY SIMILAR TO YOU THAT'S PAYING X,

14     Y, Z AND THAT WAS JUSTIFICATION GIVEN AS JUSTIFICATION FOR WHAT

15     APPLE WAS REQUESTING.

16          MR. AHN, THEY WERE NEGOTIATING, THAT WAS A NEGOTIATION.

17     MR. AHN WAS NEGOTIATING.  HE SAID THE NUMBERS THAT HE SAID, TWO

18     NUMBERS.  YOUR HONOR, NEITHER OF THOSE NUMBERS MATCHED WHAT'S

19     IN THE TEECE REPORT.  NEITHER ONE OF THEM.

20          FIRST OFF, THE LARGER NUMBER THE INITIAL NUMBER, IS NOT

21     IN THE IMPROPERLY REDACTED TEECE REPORT.  THAT NUMBER IS NOT

22     THERE.  THE OTHER NUMBER IS EXPRESSED DIFFERENTLY AND I CAN'T

23     GO INTO ANY DETAIL BUT IT IS DIFFERENT.

24          IT DOESN'T MATCH THE ACTUAL DEAL.

25          APPLE SAYS IN THEIR BRIEF AT PAGE 6 THAT WHAT MR. AHN
```

1     SAID THEY SAY "MATCHED EXACTLY WITH WHAT THE APPLE NOKIA

2     LICENSE WAS."

3          NOT TRUE.  NOT TRUE.  THE LARGER NUMBER HAPPENED TO BE

4     WAS, BUT THAT WAS NOT, THAT'S NOT ALLEGED TO HAVE BEEN

5     DISCLOSED, COULDN'T BE ALLEGED TO HAVE BEEN DISCLOSED IN THE

6     IMPROPERLY REDACTED TEECE REPORT.  IT WASN'T THERE.

7          IT'S LIKE A TRADE SECRETS CASE.  THERE WERE FINGERPRINTS

8     WHERE THERE'S A MISSPELLING AND THERE'S A PLAGIARISM AND

9     COPYING.  IT DOESN'T MATCH UP.  BUT IT DOES MATCH UP WITH

10    PUBLISHED REPORTS.

11         WE CITED TO THE COURT PUBLISHED REPORTS, PUBLIC

12    INFORMATION WHERE PEOPLE PUT -- REPORTERS PUT THE EXACT SAME

13    NUMBERS THAT DR. AHN TOLD TO MR. MELIN SO THAT WHEN APPLE SAYS

14    IN THEIR BRIEF ON PAGE 6, THAT WE HAVE COME UP WITH NO

15    IMMEDIATE SUPPORT FOR THE IDEA THAT IN INFORMATION WAS ALREADY

16    OUT THERE, THAT'S SIMPLY FLATLY WRONG.  WE HAVE GIVEN THE COURT

17    THOSE NEWS ARTICLES WHICH MATCH UP EXACTLY WITH WHAT DR. AHN

18    SAID AND DON'T MATCH UP WITH WHAT THE DEAL WAS AND DON'T MATCH

19    UP WITH WHAT THE IMPROPERLY REDACTED TEECE REPORT SAID

20         THE COURT:  MR. QUINN, ON THAT POINT, WHILE YOU

21    CONTINUE WITH YOUR ARGUMENT IF I MIGHT ASK ONE OF YOUR

22    COLLEAGUES IF YOU HAPPEN TO HAVE COPIES OF THOSE REPORTS YOU

23    ARE CITING TO FOR SOME REASON I COULDN'T FIND THEM IN THE

24    VOLUMES --

25         MR. QUINN:  WE'RE GOING TO GET THOSE, YOUR HONOR.

1          THE COURT:  I APPRECIATE THAT.  GO AHEAD.

2          MR. QUINN:  I WILL TELL YOU I KNOW ONE OFF THE TOP OF

3     MY READ SOMETHING CALLED THE BUSINESS INSIDER THOSE EXACT TWO

4     NUMBERS WHICH DR. AHN SAYS HE SAID.

5          NOW THAT'S THE STATE OF THE RECORD.  IT WOULD HAVE BEEN

6     VERY EASY FOR NOKIA TO COME IN WITH A DECLARATION AND SAY,

7     RATHER THAN THIS BALD STATEMENT THAT WE ORIGINALLY HAVE HAD

8     THAT HE RECITED TO ME THE TERMS, THAT'S ALL WE HAD, TO COME AND

9     N AND I THOUGHT WE WOULD SEE SOMETHING FROM MR. MELIN, THIS IS

10    WHAT DR. AHN SAID THE NUMBERS ARE.  WE DON'T HAVE IT.

11         THERE WAS ANOTHER NOKIA PERSON IN THE ROOM.  WE DON'T

12    HAVE ANYTHING FROM THAT PERSON.  WHY DON'T WE HAVE THAT.  THE

13    ISSUE IS JOINED ON US.  THEY TOOK DR. AHN'S DEPOSITION LAST

14    THURSDAY.  IT EXACTLY MATCHES THE PUBLISHED ACCOUNTS.

15         NOW YOUR HONOR, WE HAVE THE SITUATION WHERE THE CHIEF

16    INTELLECTUAL PROPERTY OFFICER, NOW INACTIVE MEMBER OF THE

17    CALIFORNIA BAR, OF ONE OF THE PREMIERE TECHNOLOGY COMPANIES IN

18    THE WORLD WHO IS RESPONSIBLE DIRECTLY OR INDIRECTLY FOR

19    SUPERVISING SCORES OF PATENT CASES, HAS BEEN, WHO IS FULLY

20    FAMILIAR AS HE TESTIFIED, WITH PROTECTIVE ORDERS AND THEIR

21    IMPORTANCE; WHO HAS TESTIFIED THAT SAMSUNG'S PROTECTIVE ORDERS

22    ARE EQUALLY IMPORTANT TO SAMSUNG, AS THEY ARE TO ANY OTHER

23    TECHNOLOGY COMPANY.  HAD THAT MAN IN THE ROOM NEGOTIATING WITH

24    SOMEBODY FROM NOKIA.

25         YOU HAVE TO ASK YOURSELF, WOULD THAT PERSON WOULD WITH

```
1        THAT SELF OF SOPHISTICATION FAMILIAR WITH PROTECTIVE ORDERS IN

2        U.S. LITIGATION DEALING WITH OUTSIDE COUNSEL, WOULD HE SAY, I

3        KNOW THE TERMS BECAUSE THEY WERE GIVEN TO MY OUTSIDE COUNSEL IN

4        THIS LITIGATION AND THEY GAVE IT TO ME.

5             I REALLY STRANGE CREDULITY THAT IS MR. MELIN'S ACCOUNT.

6        TO ME THAT IS, THAT'S PREPOSTEROUS.

7                  THE COURT:  WOULDN'T YOU AGREE WITH ME, MR. QUINN,

8        THAT IT APPEARS AT THE VERY LEAST WE CAN ALL AGREE THAT THERE

9        ARE TWO PEOPLE TO THIS CONVERSATION AND THEY HAVE PRESENTED

10       DIAMETRICALLY OPPOSED ACCOUNTS OF WHAT HAPPENED.  CAN WE AT

11       LEAST AGREE ON THAT?

12                 MR. QUINN:  YES, BECAUSE MR. MELIN SAYS HE TOLD ME

13       THE TERMS OF THE LICENSE.

14                 THE COURT:  SO IN TERMS OF UNDERSTANDING WHAT MR. AHN

15       SAID OR DIDN'T SAY, IF IT EVEN MATTERS AT THE END OF THE DAY,

16       WOULD YOU AGREE I HAVE TO MAKE A CREDIBILITY DETERMINATION

17       BASED ON A COLD RECORD?

18                 MR. QUINN:  WELL, IF THE COURT IS GOING TO GET INTO

19       THE ISSUE OF WAS DR. AHN USING IT, YES I THINK THERE WILL BE A

20       CREDIBILITY ISSUE AND COUNSEL WILL CASTIGATES US FOR SUGGESTING

21       THIS, BUT IF THIS IS THE ROAD WE ARE GOING TO GO DOWN I SUBMIT

22       WE SHOULD BE ABLE TO DEPOSE MR. MELIN AND THE OTHER INDIVIDUAL

23       IN THE ROOM.

24            WE ASKED THEM LAST WEEK, YOUR HONOR, PLEASE GIVE US THE

25       POWER POINT.  PLEASE GIVE US ANY NOTES.  THEY WON'T.
```

1    SO YOU KNOW, SO I DON'T THINK IF THIS IS AN ISSUE ABOUT

2    WHETHER DR. AHN WAS USING THIS, I DON'T THINK IT'S AN

3    IRRATIONAL REQUEST.

4    BUT ONE THING THAT IS UNDISPUTED, YOUR HONOR, NONE OF

5    THESE PEOPLE IN THE ROOM WERE NATIVE ENGLISH SPEAKERS.  DR. AHN

6    ISN'T, IT'S NOT HIS FIRST LANGUAGE, THE OTHER INDIVIDUALS I

7    BELIEVE ARE FINS, SCANDINAVIAN PEOPLE IN MY EXPERIENCE ARE

8    PRETTY GOOD AT ENGLISH BUT NONE OF THEM WERE NATIVE ENGLISH

9    SPEAKERS.

10   I THINK THERE WAS A MISCOMMUNICATION.  DR. AHN IN HIS

11   TESTIMONY SAID HOW HE SAID, YOU KNOW, WHERE DO I GET THIS, I

12   READ REPORTS, I TALK TO LAWYERS, I TALK TO LAWYERS FOR CONTROLS

13   ET CETERA.  I GET INFORMATION FROM COUNSEL.

14   HE TOLD A STORY ABOUT HOW SAMSUNG'S INFORMATION GOT OUT.

15   I THINK MINDS JUST DIDN'T MEET.  I DON'T THINK THAT -- I DON'T

16   HAVE ANY REASON TO THINK -- I DON'T KNOW WHETHER MR. MELIN JUST

17   MISHEARD OR MIS COMMUNICATED.

18   I PREFER TO THINK THERE'S A MISCOMMUNICATION HERE RATHER

19   THAN SOMEBODY IS LYING.  I SIMPLY CANNOT BELIEVE THAT DR. AHN

20   WOULD SAY I GOT THIS IN THE LITIGATION.  I MEAN, HE JUST SIMPLY

21   WOULD KNOW BETTER.

22   THAT'S ALL.  WE STILL TO THIS POINT HAVE NO FURTHER

23   EVIDENT OF USE.

24   AND AGAIN, I'M GOING TO TALK ABOUT THE POINTS THAT

25   MR. LEE RAISED.  IN THE FORENSICS, THE IMPROPERLY REDACTED

1    TEECE REPORT DID GO ON AN FTP SITE, STROZ CHECKED THAT, WAS NOT

2    ACCESSED BY DR. AHN OR DR. KWAK OR MR. KWAK, THEY NEVER

3    ACCESSED IT.

4         THE IMPROPERLY REDACTED TEECE REPORT WAS SENT AS AN

5    ATTACHMENT TO MR. KWAK AND DR. AHN.  STROZ SAYS NEITHER OF THEM

6    OPENED IT.  ALL RIGHT.  SO THAT'S THE FORENSIC EVIDENCE ON

7    THAT.

8         WE ALSO HAVE THE TESTIMONY OF MR. KOREA.  THEY CRITICIZE

9    HIS REPORT.  IN THE INVESTIGATION THEY DID YOUR HONOR,

10   MR. KOREA COULD NOT SEE THE MATERIAL THAT WAS SUBJECT TO THE

11   PROTECTIVE ORDER.  HE COULDN'T -- HE HAD TO DO THESE INTERVIEWS

12   WITHOUT SHOWING DOCUMENTS HE HADN'T SEEN HIMSELF.

13        THEY WOULDN'T LET US DO THAT.  COULD WE REFRESH HIS

14   RECOLLECTION WITH PRIVILEGED DOCUMENTS?  YOUR HONOR KNOWS THE

15   RISK THAT WOULD BE INHERENT IN THAT.

16        THE COURT HAS MR. KOREA'S DECLARATION, THE FORMER FEDERAL

17   CLERK FORMER UNITED STATES PROSECUTOR.  HE TOOK THIS SERIOUSLY

18   HE SPENT A LOT OF TIME ON THIS.  THERE WERE 99 RECIPIENTS

19   WITHIN SAMSUNG AND THEY ALSO INVESTIGATED FIRMS OTHER LAW

20   FIRMS.  SIX OF THEM SAMSUNG EMPLOYEES HE COULDN'T REACH THEY

21   WERE NO LONGER WITH THE COMPANY HE COULDN'T REACH THEM.  30

22   RECALL THAT THEY DID RECEIVE E-MAILS TO WHICH INADVERTENTLY

23   DISCLOSED DOCUMENTS WERE ATTACHMENTS OF THOSE.  THOSE NINE,

24   RECALL THE ATTACHMENT -- REMEMBER THIS IS 295 PARAGRAPH, MANY

25   PAGES DOCUMENT.  JUST AS THEY RECALL I SAW THAT DOESN'T MEAN

THEY SAW THESE PARTICULAR LINES.

16 OF THEM RECALL REVIEWING THE ATTACHMENTS AND FOUR OF THOSE THE ATTACHMENTS WERE TEECE AS OPPOSED TO ITC DOCUMENTS. BUT NO ONE OF THEM COULD REMEMBER SEEING ANY OF THESE TERMS. ANY OF THESE LICENSE TERMS.

HE CONTACTED 17 LAW FIRMS, HE CONDUCTED 16 INTERVIEWS, WE HAD GOTTEN STATEMENTS, THE COURT HAS THOSE STATEMENTS FROM EACH OF THOSE LAW FIRMS.  THEY ARE NOT JUST SIMPLE ONE LINE STATEMENTS AS WAS SUGGESTED ONE FULL PAGE SINGLE SPACE FROM WILLIAMS & CONNOLLY, THE HISTORY, THAT'S BEEN INAPPROPRIATELY TRIVIALIZED.

WE GOT THE STATEMENTS FROM THOSE LAW FIRMS, MR. KOREA TALKED TO THEM, CONFIRMED THE INFORMATION THAT WAS IN THERE. OF THOSE 17 FIRMS TWO OF THEM HAD NO RECORDS OF EVER HAVING RECEIVED THE E-MAIL.

THE OTHER 15 SAID THEY NEVER INCLUDED ANY OF THESE FINANCIAL TERMS OF ANY BRIEF OR ANY FILING.  THEY ALL SAID THEY DIDN'T MAKE ANY USE OF IT.

THERE WERE TWO INSTANCES WHERE IT WAS INCLUDED IN EITHER A BRIEF OR A SUBMISSION, IN THE ITALIAN PROCEEDING THAT'S UNDER SEAL, IT WAS SUBMITTED AS THE ITALIAN COUNSEL SAID, NOTHING RELATED TO THE NOKIA LICENSE TERMS.

APPLE KNEW WE HAD FILED IT, THEY GOT A COPY OF THAT.  A YEAR GOES BY, NO COMPLAINT FROM APPLE THAT SOMETHING UNTOWARD HAS HAPPENED THERE.  WE OFFERED, TO SWAP THAT OUT FROM THE

1    ENTIRE COURT FILE WHICH ISN'T OPEN TO THE COURT PUBLIC,

2    REQUIRES APPLE'S CONSENT WE REQUESTED THAT.  AND PRESUMABLY

3    THEY WILL CONSENT.

4         THERE WAS A PAPER ON FRAND THAT WAS SUBMITTED TO U, IT'S

5    NOT A PUBLIC DOCUMENT IT'S A PRIVATE SUBMISSION.  THE EU IS

6    APPARENTLY IS A PROCESS, WE CAN SWAP THAT OUT AS WELL.

7         AGAIN IN BOTH INSTANCES THE PROPERLY REDACTED REPORT WAS

8    SUBMITTED BUT FOR REASONS UNRELATED TO THESE LICENSE TERMS.

9         I MEAN, IT'S A LONG DOCUMENT THAT COVERS A LOT OF THINGS.

10   I JUST HOPE THE COURT WON'T JUMP TO THE CONCLUSION THAT JUST

11   BECAUSE THERE'S A LONG DOCUMENT SUBMITTED IT MUST HAVE BEEN FOR

12   THAT FOR USE TO THAT.  IT RELATED TO COMPLETELY DIFFERENT

13   THINGS AND THE COURT HAS RELATED STATEMENTS FROM COUNSEL

14   RELATED TO THAT EFFECT.

15        WHEN WE WERE TOLD, YOU KNOW, WE ASKED TO BE ABLE TO USE

16   THIS INFORMATION TO SHOW PEOPLE, TO SHOW MR. KOREA AND FOR

17   MR. KOREA TO HAVE SHOWN TO PEOPLE HE INTERVIEWED AND APPLE

18   WOULDN'T CONSENT TO THAT.

19        SO WE WERE OPERATING UNDER A NUMBER OF DIFFERENT

20   HAMSTRINGS AS I WILL EXPAND ON THAT.  SO WHAT ARE THE THEORIES

21   THAT WAS USE INDEED HARM HERE.

22        WE HAVE HEARD SOME VERY CREATIVE THINGS HERE.  ONE IS

23   THAT WE USE THIS TO FORMULATE AN OFFER THAT WE KNEW THEY WOULD

24   REJECT TO TRY TO SET THEM UP IN TERMS OF THE ARGUMENT WITH

25   RESPECT TO THE FRAME.  WE ADDRESSED THAT POINT AND IT'S KIND OF

1    HARD TO DISCUSS IN OPEN COURT, YOUR HONOR, AT OUR BRIEF AT PAGE

2    6 OF THE BRIEF.

3         BUT IN SUMMARY THE TIMING SIMPLY DOESN'T LINE UP.  I

4    MEAN, THEIR THEORY IS MR. SHIM ASKED FOR THIS IN DECEMBER

5    BECAUSE HE WAS FORMULATING THIS OFFER.  THE TIMING IS THAT WE

6    MADE THAT OFFER BEFORE MR. SHIM EVER MADE THE REQUEST FOR A

7    COPY OF THE TEECE REPORT.

8         SECOND, THERE'S NO CORRELATION BETWEEN THE TERMS OF THE

9    OFFER WE MADE AND THE NOKIA LICENSE.  AND WE EXPLAINED THAT IN

10   DETAIL ON PAGE 6 OF OUR BRIEF.  IT JUST DOESN'T, IT DOESN'T

11   LINE UP AT ALL.

12        THEN FINALLY, THE UNDISPUTED EVIDENCE IS FAR FROM ASKING

13   FOR A COPY OF THE REPORT SO HE COULD FORM LATE AN OFFER TO

14   APPLE, THE UN DISPUTED EVIDENCE IS THAT MR. SHIM ASKED THAT

15   BECAUSE IT BECOME RELEVANT TO A CASE IN TEXAS CALLED

16   MICROENERGY -- MICROUNITY THAT HE ASKED FOR FOR THAT PURPOSE.

17        THERE'S JUST SIMPLY, IT IF YOU LOOK AT OUR BRIEF AND THE

18   DETAILS THERE YOUR HONOR PAGE SIX OF THE BRIEF, THAT AND THAT

19   THEORY ABOUT HOW WE ARE USING IT, WHY MR. SHIM WAS ASKING FOR

20   IT THEN JUST DOESN'T MAKE ANY SENSE AT ALL.

21        THEN THE OTHER ARGUMENT WE HEAR IS AND THEY ACTUALLY

22   QUOTE MR. LEE DID IT AGAIN TODAY, AT PAGE 5 OF THEIR BRIEF THEY

23   QUOTE OUR BRIEF IN THE ITC.  THEY SAY WELL, WE USED THIS TO

24   WORK WITH SAMSUNG TO CRAFT OUR POSITION THAT YOU SEE THERE IN

25   THE BRIEF.

```
 1            YOUR HONOR, THE LAWYERS HAD THE LICENSE.  IT WAS PRODUCED

 2     IN THE ITC.  THIS IS NOT, YOU KNOW, SOME SPECIAL MAGICAL

 3     DIFFICULT THING THAT YOU HAVE TO COLLABORATE A LOT AND TO TALK

 4     TO PEOPLE ABOUT IN ORDER TO SAY SINCE YOU LICENSED SOMEBODY

 5     ELSE FOR THIS HERE'S A PRECEDENT AND IT SHOWS THAT YOU ARE NOT

 6     ACTING IN GOOD FAITH HERE.

 7            WE HAD THAT AND WE WERE ENTITLED TO HAVE THAT.

 8            THE COURT:  UNDER THE TERMS OF THE ITC PROTECTIVE

 9     ORDER WAS MR. SHIM ENTITLED TO HAVE THAT?

10            MR. QUINN:  NO, NO.  HE WAS NOT ENTITLED TO HAVE

11     THAT.

12            SO THIS IS OUT OF THIN AIR.  THIS IS HOCUS POCUS.  THIS

13     IDEA THAT WE MAKE THIS ARGUMENT THAT THEY QUOTE IN THEIR BRIEFS

14     THAT SOMEHOW EVIDENCE THAT WE WERE USING THE TEECE REPORT

15     WORKING WITH PEOPLE AT SAMSUNG, COMPLETELY UNSUPPORTED.

16            WE DON'T NEED THE HELP OF PEOPLE AT SAMSUNG TO MAKE THAT

17     ARGUMENT THAT THE COURT SEES BEFORE YOU IS THERE.  IT'S PRETTY

18     BASIC.

19            AND BY THE WAY THIS APPLIES ALSO TO MANY OF THE LAW FIRMS

20     WHO WERE ENTITLED, INDEED ALREADY HAD THE NOKIA APPLE LICENSE.

21     KIRKLAND & ELLIS, FISH & RICHARDSON, WILLIAMS & CONNOLLY ALL

22     HAD IT BECAUSE THEY WERE COUNSEL FOR SAMSUNG IN LITIGATION WITH

23     ERICSSON.

24            IT WAS PRODUCED IN THOSE CASES.  WILLIAMS & CONNOLLY,

25     ROPES & GRAY ALSO HAD IT BECAUSE IT WAS PRODUCED IN A CASE
```

```
 1        CALLED INTERDIGITAL.  THEY HAD IT IN THOSE CASES.

 2               THE COURT:  SO YOU ARE SAYING THAT COUNSEL FOR

 3        SAMSUNG IN LITIGATION WITH ERICSSON ALREADY HAD A COPY OF AN

 4        AGREEMENT BETWEEN APPLE AND NOKIA?

 5               MR. QUINN:  IT WAS PRODUCED IN THAT LITIGATION, YES,

 6        YOUR HONOR.

 7          I MEAN, THIS HAPPENS WHEN PEOPLE SUBPOENA PEOPLE SEE OTHER

 8        LICENSES IN OTHER CASES.

 9               THE COURT:  I UNDERSTAND.

10               MR. QUINN:  SIMILARLY, THE ASHURST LAW FIRM, COUNSEL

11        FOR SAMSUNG IN AUSTRALIA IN THE APPLE SAMSUNG LITIGATION GOT IT

12        IN DISCOVERY IT WAS PRODUCED THERE.

13          THEN WE KNOW THE STORY OF THE SPREADSHEET, THE DUTCH

14        SPREADSHEET WHY WHERE NINE PEOPLE COULD SEE IT, IT DIDN'T

15        ACTUALLY HAVE THE NAMES BUT IT DIDN'T TAKE A SCIENTIST TO SEE

16        WHICH WAS THE OUTLIER AND WHICH WAS LIKELY APPLE.  AND PEOPLE

17        SAID THEY SAW THAT AND THEY RECOGNIZED IT WAS APPLE.

18          THE SIMMONS FIRM IN THE NETHERLANDS.  BRISTOL IN

19        AUSTRALIA AS WELL AS OUR FIRM ALL HAD ACCESS TO THAT SHEET.

20          SO MANY OF THESE FIRMS HAD THIS DOCUMENT AND WERE

21        ENTITLED TO HAVE IT.

22          THE OTHER FIRMS, THEY GOT REDACTED COPIES, THE COURT HAS

23        THEIR STATEMENTS MR. KOREA INTERVIEWED THEM THERE'S NO EVIDENCE

24        THAT THEY MADE ANY USE OF IT.

25          NOW THEY COMPLETELY IN TRYING TO ARGUE THAT, YOU KNOW,
```

1    MR. SHIM WAS -- HE'S SORT OF AT THE CENTER PIECE OF THEIR

2    ARGUMENT THAT HE WAS HELPING CONSTRUCT THIS FRAND ARGUMENT,

3    THEY QUOTE TO THE COURT HIS DEPOSITION TESTIMONY, AND I'M

4    AFRAID THEY DO IT IN A MISLEADING MANNER.

5        APPLE SAYS IN THEIR SUPPLEMENTAL BRIEF PAGE 4, LINES 14

6    TO 15, THAT MR. SHIM AGREES HE CANNOT RULE OUT, THIS IS WHAT

7    THEY QUOTE, CANNOT RULE OUT THAT SAMSUNG USED THIS INFORMATION

8    TO DEVELOP FRAND LICENSING ARGUMENTS AGAINST APPLE.

9        IT'S MISLEADING, YOUR HONOR.  WHAT MR. SHIM'S TESTIMONY

10   WAS HE WAS UNAWARE OF ANYONE AT SAMSUNG USING THE INFORMATION

11   TO DEVELOP FRAND LICENSING ARGUMENTS AGAINST APPLE AND DID NOT

12   EVER REMEMBER ASKING ANYONE AT SAMSUNG TO DO SO OR IF THEY HAD

13   DONE SO.

14       NOW IF THAT'S TRUE, HE OBVIOUSLY COULDN'T RULE OUT ANYONE

15   ELSE DOING SOMETHING THAT HE WAS UNAWARE OF.  SORT OF A

16   METAPHYSICAL POINT BUT THE SUGGESTION OR BRIEF IS LEFT HANGING

17   HE CAN'T CAN'T RULE THIS OUT.  IF YOU LOOK HIS TESTIMONY HE

18   SAID, AS FAR AS I KNOW THIS NEVER HAPPENED PERIOD.

19       APPLE ALSO ASSERTS THAT MR. SHIM REPEATEDLY RETRANSMITTED

20   THE TEECE REPORT IN THIS DRAFT ITC MEMOS TO OTHER SAMSUNG

21   EMPLOYEES AND LAWYERS LITIGATING FRAND ISSUES AGAINST APPLE

22   AROUND THE WORLD BUT CLAIMED AT HIS DEPOSITION WHY HE HAD NOT

23   DONE SO.

24       APPLE SUPPLEMENTAL BRIEF LINE PAGE 4, LINES 11 TO 13.

25       THE ANSWER HE GAVE AS TO WHY HE COULD NOT REMEMBER

1    TRANSMITTING THIS MATERIAL WAS IN RESPONSE TO ONE QUESTION

2    ABOUT ONE E-MAIL DIRECTED TO TWO LAW FIRMS.

3         KIRKLAND & ELLIS AND FISH & RICHARDSON.  THAT'S

4    DEPOSITION PAGE 195, LINE 6 AND 196, LINE 12.  RIGHT.

5         IT'S COMPLETELY A MISREPRESENTATION TO SAY HIS TESTIMONY

6    WAS HE CAN'T RECALL WHY HE EVER TRANSMITTED THIS ANY OF THE

7    OTHER FIRMS.  HE WAS ASKED ABOUT TWO, HE SAYS HE CAN'T RECALL

8    WHY HE DISTRIBUTED TO THOSE TWO.

9         MR. LEE BEGAN THIS AFTERNOON BY TALKING ABOUT HOW WE KNEW

10   IN DECEMBER THERE HAD BEEN A TRANSMISSION OF AN INAPPROPRIATELY

11   REDACTED REPORT.  THE COURT HAS THE FACTS ON THAT.  AN

12   ASSOCIATE SENT OUT THE REPORT AND IT WAS CAUGHT WITHIN

13   13 HOURS.  AND THE RECIPIENT WAS CONTACTED AND SAID DON'T LOOK

14   AT IT, DELETE IT.  THE PERSON SAID THAT THEY WILL.

15        AFTER THAT THE REPORT WAS REDACTED FURTHER, STILL SADLY,

16   LEAVING IN SOME INFORMATION ABOUT ANOTHER LICENSE, NOT THIS

17   COMPANY'S LICENSE.  AND THEN IT WAS SENT OUT A FEW TIMES AFTER

18   THAT.

19        BUT WHEN MR. LEE SAYS THAT WE KNEW THERE HAD BEEN A

20   VIOLATION BECAUSE THIS WAS SENT OUT, WHAT MR. LEE IS REFERRING

21   TO IS THE FACT THAT SOMEBODY SENT IT OUT WAS CAUGHT AND ASKED

22   TO SEND IT BACK AND THAT WE DIDN'T COMPLY WITH THE INADVERTENT

23   DISCLOSURE PROVISIONS OF THE PROTECTIVE ORDER.

24        YOU KNOW, YOU ASK SOMEBODY DON'T READ IT DELETE IT,

25   SHOULD WE HAVE GONE THROUGH THE PROVISIONS OF THE PROTECTIVE

```
1    ORDER THAT SAYS GIVE NOTICE TO EVERYBODY, YOU KNOW, I THINK

2    REASONABLE PEOPLE COULD DIFFER AS TO WHETHER YOU MAKE A BIG

3    ISSUE OUT OF THAT WE GIVE NOTICE TO EVERYBODY AND SENT IT OUT.

4    I BET IT'S HAPPENED TO THESE LAW FIRMS BEFORE.  IF IT HAPPENS.

5         I DON'T THINK THAT THAT WAS AN OCCASION FOR SAYING

6    THERE'S AN INADVERTENT DISCLOSURE BLOW THE WHISTLE, ET CETERA.

7         THEY MAKE THE POINT THAT THE RECIPIENT OF THAT FORWARDED

8    IT BACK SOME TIME LATER.  WHAT THEY DON'T TELL THE COURT IS

9    THAT THIS DECEMBER SADLY, DECEMBER 2012 WASN'T THE FIRST TIME

10   THAT REPORT HAD GONE OUT.  THERE WAS IN EXISTENCE AND HAD BEEN

11   SENT OUT PUT ON THE FTP SITE THE PREVIOUS MARCH AND THAT IN

12   TURN, PEOPLE AT PRESS SAID REDACTED TEECE REPORT AND IT WAS

13   ALREADY OUT THERE.

14       SO IT WASN'T JUST A QUESTION OF ANYBODY'S RESCINDING IT

15   AFTER WE DISCOVERED THAT ERROR, IT WAS ALREADY OUT THERE,

16   PEOPLE HAVE IT AND PEOPLE SENT IT.

17          THE COURT:  MR. QUINN IS IT AT LEAST ACCURATE THAT AS

18   OF DECEMBER, AT LEAST ONE INDIVIDUAL WITHIN THE FIRM UNDERSTOOD

19   THAT THIS INFORMATION HAD BEEN IMPROPERLY REDACTED AND DID NOT

20   TAKE ANY FURTHER STEP BEYOND INFORMING THE SAMSUNG EMPLOYEE TO

21   DELETE THE E-MAIL?

22          MR. QUINN:  YES.

23       AND THE REASON FOR THAT IS NOBODY PUT IT TOGETHER, I MEAN

24   YOU HAVE WHAT I'VE TOLD LAWYERS IN OUR LAW FIRM NOW.  WE ARE

25   650 LAWYERS WIDE AND ONE LAWYER DEEP.  AND ONE LAWYER DOESN'T
```

```
1    NECESSARILY KNOW WHAT ANOTHER LAWYER IS DOING IT.

2         THIS PERSON DISCOVERED IT, BUT THIS PERSON DIDN'T HAVE THE

3    KNOWLEDGE OR DIDN'T PUT IT TOGETHER THAT THIS WASN'T A REPORT

4    PUT OUT ON THE FTP SITE LAST MONTH OR SENT OUT IN THE INTERIM.

5    DIDN'T KNOW, DIDN'T PUT THAT TOGETHER.

6         SO, I MEAN, IF IT HAD BEEN THE SAME PERSON, I WOULD

7    CERTAINLY LIKE TO BELIEVE THAT THEY WOULD REALIZE, OH MY

8    GOODNESS, WE HAVE BEEN SENDING THIS OUT PEOPLE HAVE SEEN THIS

9    IT WAS ON THE FTP SITE LAST MARCH, WE SURE AS HECK BETTER DO

10   SOMETHING ABOUT IT.

11        THIS PERSON DIDN'T KNOW SO THAT'S WHY THAT DIDN'T HAPPEN.

12        IT WAS INADVERTENT.  IT WASN'T INTENTIONAL.  THERE ARE

13   ALREADY COPIES OF THAT OUT THERE THAT UNFORTUNATELY ONCE THAT

14   LOG IS PRODUCED GET ON PEOPLE'S COMPUTERS THAT HAVE THE ENTRY

15   ON THE DIRECTORY, REDACTED TEECE REPORT AND PEOPLE SEND IT OUT.

16        NOW THE LAW FIRMS THAT RECEIVED IT AFTER DECEMBER 2012

17   FROM US RECEIVED THAT REDACTED COPY THAT DID NOT HAVE THE NOKIA

18   INFORMATION ON IT.

19             THE COURT:  SO ON THAT POINT, MR. QUINN, ARE YOU

20   SAYING THAT AFTER DECEMBER 2012 NO LAW FIRM OTHER THAN YOURS

21   HAD A COPY OF THIS IMPROPERLY REDACTED TEECE REPORT?

22             MR. QUINN:  NO, I'M NOT SAYING THAT.

23        WHAT I'M SAYING IS THERE WERE IMPROPERLY REDACTED COPIES

24   OF THE TEECE REPORT THAT WERE ALREADY OUT THERE.  AND PEOPLE

25   HAD IT ON THEIR COMPUTERS AND THEY HAD IT ON THEIR COMPUTERS AT
```

1        SAMSUNG AND IT WAS PASSED AROUND PEOPLE AT SAMSUNG.

2              THE COURT:  I UNDERSTAND.

3              MR. QUINN:  AND I'M GOING TO TURN TO MR. BECHER IN

4        TERMS OF WAS IT PASSED TO OTHER LAW FIRMS AFTER DECEMBER 2012,

5        THE EVIDENCE ON THAT.

6              MR. BECHER:  SO AS MR. QUINN STATES, THE MORE FULLY

7        REDACTED BUT NOT YET COMPLETELY REDACTED REPORT WAS SENT TO

8        OTHER LAW FIRMS BUT PRIOR TO JANUARY 2013 THE INCOMPLETELY

9        REDACTED REPORT HAD ALSO BEEN SENT TO OTHER LAW FIRMS.

10             THE COURT:  ALL RIGHT.

11          YOU'VE SUGGESTED NOW A COUPLE TIMES THERE WAS AN ADDITIONAL

12       LICENSEE OR WHOSE INFORMATION THEY HAVE BEEN COMPROMISED.  I

13       WOULD LIKE TO UNDERSTAND, IT DOESN'T RELATE TO EITHER APPLE OR

14       NOKIA; IS THAT CORRECT?

15             MR. QUINN:  IT'S THE OTHER ONE AS TO WHICH THERE'S A

16       MEDIATION ISSUE.  BUT FOR MR. PIAZZA.  THAT'S THE OTHER ONE.

17             THE COURT:  MAY I ASK, WHEN WAS THAT REDACTION

18       COMPLETED SUCH THAT BEYOND A CERTAIN DATE NO ONE'S CONFIDENTIAL

19       INFORMATION WAS IMPROPERLY CIRCULATED BY AT LEAST A LAW FIRM.

20       DO YOU HAPPEN TO KNOW MR. BECHER WHEN THAT WAS CAUGHT AND

21       DIRECTED, IF IT WAS AT ALL.

22             MR. BECHER:  IF BY NO ONE YOU MEAN ANY THIRD PARTY

23       COMPANIES.

24             THE COURT:  I'M JUST FOCUSSING ON YOUR FIRM.

25          I WANT TO KNOW IF ANYONE AT YOUR FIRM CIRCULATED AN

1    IMPROPERLY REDACTED VERSION OF THE /TAOET REPORT.

2        SO NOW THAT I UNDERSTAND THE FACTS OF APPLE, NOKIA, BUT

3    ALSO A THIRD ENTITY.  I'M CURIOUS, DO YOU HAPPEN TO KNOW WHAT

4    THAT DATE IS?

5        IF I'M NOT CLEAR I CAN CERTAINLY ASK THE QUESTION AGAIN.

6        MR. BECHER:  NO, I THINK I JUST WANTED TO MAKE SURE

7    I'M CLEAR.

8        THE OTHER ENTITY IS OBVIOUSLY THERE'S SHARP, PHILIPS AND

9    ERICSSON.  AND THAT'S WHAT WE ARE REFERRING TO AS THE OTHER

10   ENTITIES

11        THE COURT:  I DON'T KNOW I'M TAKING YOU AT YOUR WORD

12   IN LIGHT OF THIS MEDIATION YOU CAN'T TELL ME WHETHER IT'S ONE

13   OF THOSE THREE OR SOMEBODY ELSE.

14        MR. BECHER:  I THINK MR. QUINN MIGHT BE ADDRESSING A

15   DIFFERENT POINT.  I DON'T BELIEVE MR. QUINN WAS ADDRESSING

16   WHOSE INFORMATION WAS IN THE TEECE REPORT.

17        MR. QUINN:  I WAS, ACTUALLY.

18        THE REDACTED REPORT STILL HAD ANOTHER LICENSEE'S

19   INFORMATION AND AS I UNDERSTAND THE COURT'S QUESTION IS THAT

20   REPORT, THE REPORT AS IT EXISTS NOW HAS NOW BEEN REDACTED SO

21   THAT THAT INFORMATION IS NO LONGER AVAILABLE.

22        THE COURT:  I ASSUME AS OF TODAY YOUR FIRM SENT

23   CIRCULATING A VERSION OF THE TEECE REPORT THAT INCLUDES

24   IMPROPERLY REDACTED INFORMATION YOU CAN AT LEAST HOPEFULLY

25   AGREE ON THAT.

 1          MR. BECHER:  YES, YOUR HONOR, OF COURSE.

 2          THE COURT:  WHAT I'M TRYING TO FIGURE OUT IS HOW FAR

 3    BACK IN TIME CAN I GO AND HAVE THAT SAME CONFIDENCE THAT THAT'S

 4    THE CASE.

 5          MR. BECHER:  SO GOING BACK TO JANUARY OF 2013, THAT

 6    REPORT HAD NOR FULL SOME REDACTIONS BUT STILL HAD INFORMATION

 7    ABOUT A COMPANY'S LICENSE THAT WAS NOT APPLE OR NOKIA.

 8          THE COURT:  OKAY.

 9       SO THAT WAS THE STATE OF AFFAIRS AS OF JANUARY 2013,

10    CORRECT.

11          MR. BECHER:  YES, YOUR HONOR.

12       AND I APOLOGIZE I MIS COMMUNICATED.

13          THE COURT:  NO, WE ARE JUST TRYING TO COMMUNICATE

14    HERE.

15       AT WHAT POINT AFTER JANUARY 2013 THAT WAS FIXED IF IT WAS

16    FIXED AT ALL.  I ASSUME IT WAS FIXED.

17          MR. BECHER:  TO BE HONEST, YOUR HONOR, I'M NOT AWARE

18    OF A TRANSMISSION THAT TOOK PLACE EVER THEN WHERE THE

19    INFORMATION THAT WAS STILL REMAINING, THE SLIVER OF THE

20    INFORMATION OF ANOTHER COMPANY WAS REMOVED.

21          THE COURT:  OKAY.

22       SO YOU ARE NOT AWARE OF ANYTIME SUCH TRANSMISSION AFTER

23    JANUARY 2013.

24          MR. BECHER:  CORRECT, YOUR HONOR, BY QUINN EMANUEL.

25          THE COURT:  UNDERSTOOD.  OKAY.  THANK YOU.

```
 1                    MR. BECHER:  BUT I THINK I MISSPOKE.  THERE WAS ONE

 2     TRANSMISSION FEBRUARY 1ST.

 3                    THE COURT:  OKAY.

 4          SO I CAN AT LEAST GO BACK TO FEBRUARY OF 2013 AND IN

 5     FEBRUARY 2013 THERE WAS ONE TRANSMISSION OF THAT IMPROPERLY

 6     REDACTED TEECE REPORT THAT DISCLOSED THIS ADDITIONAL PARTY'S

 7     LICENSE INFORMATION, CORRECT?

 8                    MR. BECHER:  YES, BUT NOT THE APPLE/NOKIA.

 9                    THE COURT:  AT LEAST AS FAR AS YOU'RE AWARE, AFTER

10     THAT FEBRUARY 2013 TRANSMISSION THERE HAVE BEEN NO FURTHER

11     TRANSMISSIONS BY QUINN EMANUEL.

12                    MR. BECHER:  CORRECT, YOUR HONOR.

13                    THE COURT:  THANK YOU, MR. BECHER.

14                    MR. QUINN:  AND YOUR HONOR, ON THIS ISSUE OF

15     MR. SHIM, WHETHER HE DELETED THE REPORT AS HE WAS INSTRUCTED TO

16     IN DECEMBER, SAID HE WAS DELETE IT THE IMPROPERLY REDACTED ONE,

17     HE RECEIVED ANOTHER CONY OF THE ONE THAT WAS ALREADY OUT THERE.

18                    THE COURT:  AT SOME POINT AFTER DECEMBER 2012.

19                    MR. QUINN:  YES.

20                    THE COURT:  WHO SENT HIM THAT?

21                    MR. QUINN:  BRISTOLS.

22                    THE COURT:  SO THE BRISTOLS FIRM SENT MR. SHIM --

23                    MR. QUINN:  IT WAS THIS THING THAT WAS OUT THERE,

24     SEND IT TO HIM.

25          SO THEY SAY SINCE HE SENT IT BACK TO US IN MAY HE NEVER
```

1    COMPLIED WITH THE INSTRUCTION TO DELETE.

2         WE DON'T FRANKLY KNOW IF THAT'S TRUE.  WE DO KNOW HE GOT

3    ANOTHER COPY -- I DON'T THINK WE KNOW THE ANSWER TO THAT

4              THE COURT:  DID ANYBODY ASK MR. SHIM?

5              MR. QUINN:  I WOULD DEFER TO MR. ZELLER ON THIS,

6    YOUR HONOR.

7              THE COURT:  MR. ZELLER.

8              MR. ZELLER:  YOUR HONOR, MY UNDERSTANDING IS THAT WE

9    DID ASK MR. SHIM THAT QUESTION OF COURSE.  AND THAT HE JUST

10   COULD NOT RECALL.

11        NOW WHAT WE DO RECALL HAVE IS IN OUR CUSTODY IMAGES OF THE

12   DRIVES AND EVERYONE ELSE WE HAVE SEARCHED AND WE CAN OBVIOUSLY

13   TALK ABOUT THOSE AS WELL.  BUT THERE OF COURSE ARE COPIES.  WE

14   DO NOT KNOW, OR AT LEAST A COPY I SHOULD SAY, BECAUSE WE KNOW

15   IT CAME FROM BRISTOLS WE CAN TRY AND DO AN ANALYSIS, WE HAVE

16   NOT BEEN ABLE TO DO THAT.

17             THE COURT:  CAN I ASK MR. ZELLER, WHEN APPROXIMATELY

18   DID BRISTOLS SEND A REPORT TO MR. SHIM?

19             MR. ZELLER:  WE HAVE THAT EXACT DATE, IT'S AMONG THE

20   INFORMATION ABOUT OTHER OUTSIDE COUNSEL THAT WE HAVE DISCLOSED.

21   I CAN GET THAT EXACT DATE.

22             THE COURT:  I WOULD APPRECIATE HAVING THAT.

23             MR. QUINN:  CAN WE GET THAT YOUR HONOR, AND I WILL

24   PROCEED.

25             THE COURT:  WHY DON'T YOU PROCEED, IF YOU WOULD.

1          MR. QUINN:  I'M HOLDING UP THE KOPPELMAN EXHIBIT 13.

2     IT'S A STATEMENT FROM WILLIAMS & CONNOLLY.  IT'S NOT A ONE

3     LINER, IT'S A WHOLE PAGE, SINGLE SPACED.

4          WILLIAMS & CONNOLLY WAS REPRESENTING SAMSUNG VIS A VI

5     NOKIA.  THEY WERE BEFORE THEY APPEARED IN THE ITC CASE.  THERE

6     IS A HISTORY THERE.

7          BUT THE SUGGESTION THAT WILLIAMS & CONNOLLY WOULD SOMEHOW

8     BE INVOLVED IN ALL THESE LAW FIRMS INVOLVED IN SOME TYPE OF

9     MISCONDUCT OR KNOWING MISCONDUCT OR NEFARIOUS CONSPIRACY, I

10    THINK THERE'S JUST SIMPLY NO BASIS TO MAKE THAT TYPE OF

11    INSINUATION.

12         THEY OBJECT THAT MR. KOREA COULDN'T ANSWER QUESTIONS

13    ABOUT WHAT MR. AHN SAID AT THE JUNE 4TH MEETING.  THEY CITED

14    THAT AS ONE OF THE EXAMPLES OF HOW PREPARED MR. KOREA WAS.

15         MR. KOREA IS CHARGED IN ACCORDANCE WITH THIS COURT'S

16    ORDER THE 30(B)(6) WAS FAIRLY NARROW.  USE AND DISSEMINATION OF

17    THIS INFORMATION.  THAT WASN'T TAILORED TO USE AND

18    DISSEMINATION OF THE INFORMATION.  HE INTERVIEWED MR. AHN,

19    DR. AHN, HE ASKED THE QUESTIONS THAT HE ASKED.  THE VERY NEXT

20    DAY THEY WERE GOING TO DEPOSE AND DID DEPOSE DR. AHN TO ASK HIM

21    THAT.

22         SO I JUST DON'T THINK THAT'S A WEIGHTY CRITICISM OF

23    MR. KOREA'S WORK.  THEY SAW STROZ FRIEDBERG DON'T EVEN KNOW WHO

24    DR. AHN WAS.  STROZ FRIEDBERG ISN'T LOOKING AT DOCUMENTS.  THEY

25    ARE AN E-DISCOVERY VENDOR.  THEY ARE RUNNING COMPUTER PROGRAMS

1      AND SEARCH TERMS.  THEY DON'T HAVE TO KNOW WHO DR. AHN IS.

2      THAT'S NOT THEIR ROLE.

3            MR. LEE SAID THAT YOU KNOW THE FIRST THING WE DID INSTEAD

4      OF GOING TO APPLE IS TO GO TO NOKIA AND REQUEST THAT THE

5      DOCUMENTS BE DESTROYED.

6            THE PROTECTIVE ORDER PROVIDES IF THERE'S AN INADVERTENT

7      DISCLOSURE THERE'S A PROCEDURE THAT INCLUDES YOU MUST DESTROY

8      THEM.  WE WERE ASKED -- WE WEREN'T SAYING THE SUGGESTION HERE

9      TO THE COURT LET'S DESTROYED THIS EVIDENT.  THIS IS WHAT THE

10     PROTECTIVE ORDER PROVIDES.  THEY ASKED US PRESERVE IT, THAT'S

11     WHAT WE HAVE DONE.

12           I TALKED ABOUT THE SIZEABLE LOG, THE ORDER COVERED MUCH

13     MORE THAN PARTICULAR DATA AND LICENSE TERMS.

14           RESPONDING TO THIS DISCOVERY YOUR HONOR HAS BEEN A REAL

15     CHALLENGE IN THAT BASICALLY WE HAVE LAWYERS AT QUINN EMANUEL

16     TALKING TO LAWYERS AT SAMSUNG.  MANY OF THESE LAWYERS AT

17     SAMSUNG ARE U.S. QUALIFIED LAWYERS.  THE DEFENDANTS TOOK THE

18     POSITION THAT THE PROTECTIVE ORDER IN PLACE IN THIS CASE WAS

19     NOT TRUMPED BY THIS COURT'S ORDER.

20           WE WERE NOT PERMITTED TO SHOW OUR 30(B)(6) WITNESS

21     INFORMATION UNDER THE PROTECTIVE ORDER, CONFIDENTIAL

22     INFORMATION.  IT LIMITED WHAT WE COULD SHOW TO NOKIA AS WELL.

23     HENCE, YOU HAVE DIFFERENT BRIEFS THAT THEY RECEIVED.  BECAUSE

24     WE HAVE DIFFERENT OBLIGATIONS.  THERE ARE ORDERS IN PLACE THAT

25     THEY TOOK THE POSITION WERE NOT ABROGATED.

1        NOW YOUR HONOR TO ME, THIS IS THE MOST SIGNIFICANT THING

2    IN TERMS OF THE OBSTACLES WE FACED IS THAT WE ASKED NOKIA AND

3    APPLE REPEATEDLY ENTER INTO A STIPULATION WITH US THAT CAN

4    BECOME AN ORDER OF THE COURT THAT JUST BECAUSE WE PRODUCED

5    DOCUMENT, IT'S NOT A WAIVER OF THE PRIVILEGE.

6        WE OFFERED, WE SAID WE WILL GIVE YOU EVERY SINGLE

7    DOCUMENT THAT REFERS TO THESE LICENSE TERMS.  PRIVILEGED OR

8    NOT.  IF YOU WILL AGREE IN THIS STIPULATION, WE IT MAKE AN

9    ORDER TO THE COURT THAT THAT'S NOT A WAIVER OF THE PRIVILEGE.

10        WHY IS THAT IMPORTANT?  IF WE JUST HAVE AN AGREEMENT WITH

11   THEM THAT BINDS THEM BUT IT DOESN'T HELP US WITH THIRD PARTIES

12   WHO THEN SAY WE WAIVED THE PRIVILEGE.  IF WE HAVE YOUR HONOR'S

13   SIGNATURE ON THAT THEN THERE'S A DEFENSE.  THAT'S PROTECTION TO

14   US.

15        THEY REPEATEDLY CONSISTENTLY DENIED MR. BECHER'S REQUEST

16   TO AGREE TO THAT.  THAT'S BECKER DECLARATION PARAGRAPHS 20 TO

17   33.  HE DIDN'T GIVE UP.  HE ASKED REPEATEDLY WON'T YOU PLEASE

18   DO THIS, AGREE TO THIS, WE CAN GIVE YOU MORE, THEY SIMPLY WOULD

19   NOT AGREE.

20        THERE IS IN PLACE, IN TERMS OF THE KIND OF PATH WE HAD TO

21   WEAVE HERE, THERE'S AN ITC PROTECTIVE ORDER.  WE HAVE

22   NONDISCLOSURE AGREEMENTS WITH BOTH APPLE AND NOKIA.  BOTH OF

23   THEM WE HAVE ONGOING NEGOTIATIONS WITH.  I HAVE DEFENDED

24   DR. AHN'S DEPOSITION WITH AN APPLE LAWYER IN THE ROOM.  THAT

25   NDA COVERS THE NEGOTIATIONS.

1          ON THE RECORD I REQUESTED NOKIA'S COUNSEL, WOULD YOU

2     AGREE IF DR. AHN ANSWERS THIS QUESTION ABOUT WHAT WAS SAID THAT

3     YOU WON'T CHARGE US WITH VIOLATING THE NDA, BECAUSE HE'S GIVEN

4     THE ANSWER IN FRONT OF APPLE.

5          I GOT INCONSISTENT ANSWERS.  YOU CAN GO BACK AND LOOK AT

6     THAT DEPOSITION.  I CAN SHOW THE COURT.  SOMETIMES THEY SAID

7     THEY DID, SOMETIMES THEY SAID THEY WOULDN'T.

8          AT ONE POINT I WAS COMFORTABLE, SO THEY SAID THERE WAS

9     TESTIMONY, DR. AHN TESTIFIED, THEN THE NOKIA LAWYER IN THE

10    MIDDLE, ASKED DR. AHN -- HE'S EXAMINING HIM NOW.  AND I CAN'T

11    REMEMBER THE QUESTION, SPECIFICALLY, ABOUT WHAT HE SAID, AND HE

12    SAID I WILL AGREE IF DR. AHN ANSWERS THIS QUESTION IT WON'T BE

13    A VIOLATION OF THE NDA.

14         I SAID, WHAT'S GOING ON HERE?  I THOUGHT ALL ALONG YOU

15    HAD AGREED.  IF YOU LOOK AT THE TRANSCRIPT, AND THERE'S AN

16    INCOMPREHENSIBLE KIND OF EXPLANATION ABOUT WHY HE HAD OR HE

17    HADN'T.

18         WE HAD A SIMILAR PROBLEM WITH APPLE.

19         SO IT'S BEEN A TOUGH NEEDLE TO THREAD.  IN CONTRAST

20    YOUR HONOR, DURING THE DEPOSITION OF MR. KOREA, SAMSUNG

21    WITNESS, APPLE TOOK OUT AND MARKED AS AN EXHIBIT AND HANDED TO

22    NOKIA, OUR CONFIDENTIAL OFFER TO APPLE INCLUDING THE SPECIFIC

23    LICENSE TERMS.

24         TO BE CLEAR, THIS WAS NOT A DOCUMENT THAT WE HAD PRODUCED

25    IN THIS CASE.  IT IS NOT SOMETHING THAT HAD BEEN EXCHANGED

1  SUBJECT TO THIS PROTECTIVE ORDER.  IT WAS SOMETHING THAT APPLE

2  TOOK OUT OF ITS FILES MARKED AS AN EXHIBIT AND HANDED TO NOKIA

3  OVER OUR OBJECTION.

4      I FIND IT ASTONISHING AND REALLY IRONIC IN A PROCEEDING

5  WHERE APPLE IS MAKING SUCH A FUSS ABOUT CONFIDENTIALITY THAT

6  THEY TOOK THE WHOLE LETTER WITH ALL THE TERMS AND JUST HANDED

7  IT TO NOKIA.

8      AGAIN, WE ARE IN NEGOTIATIONS RIGHT NOW WITH NOKIA.

9  THERE'S AN NDA BETWEEN US AND APPLE.

10      YOUR HONOR, I WILL END WHERE I BEGAN, DEEPLY SORRY ABOUT

11  WHAT HAPPENED HERE, IT IS SOMETHING THAT QUINN EMANUEL, WE

12  RECOGNIZE OUR REPUTATIONS, ALL THEY WORK FOR AT ISSUE HERE,

13  THESE THINGS ARE WIDELY REPORTED.  IT SHOULDN'T HAVE HAPPENED.

14      BUT THESE FOLKS ARE EXPLOITING THIS TO TRY TO MAKE THE

15  MOST THEY CAN.  THEY WILL NEVER, EVER BE SATISFIED.  THEY WILL

16  NEVER SAY THAT'S ENOUGH.  FOR THEM THIS IS A FREE SHOT.  IT'S A

17  FREE SHOT.  AND THEY CAN KEEP US OCCUPIED WITH THIS AND RUN UP

18  THE EXPENSES AND AT SOME POINT COME AND ASK YOUR HONOR MAKE

19  THEM PAY ALL OUR FEES.  THERE IS NO EVIDENCE OF USE, THERE'S NO

20  EVIDENCE THAT THIS WAS ANYTHING OTHER THAN INADVERTENT

21  DISCLOSURE.

22      I WILL BE HAPPY TO TRY TO ANSWER ANY QUESTIONS.

23          THE COURT:  I THINK YOU'VE ANSWERED MY QUESTIONS FOR

24  NOW.

25          MR. ZELLER:  AND YOUR HONOR, JUST TO FOLLOW UP ON THE

1    PARTICULAR CITATIONS.

2         SO WITH RESPECT TO THE DANIEL SHIM EVENT, YOU WILL SEE IT

3    WAS A MAY 1ST, 2012, E-MAIL FROM HELEN HOPSON, H-O-P-S-O-N, OF

4    BRISTOLS.

5         AND THAT IS EVIDENCE AS EXHIBIT U, ITEM NUMBER 7 UNDER

6    EXHIBIT U TO THE BECHER DECLARATION WHICH WE FILED ON MONDAY.

7         THEN YOUR HONOR, I WILL HAND UP THE ONE OF THE

8    PUBLICATIONS THEY WERE REFERRING TO.  RATHER THAN ACCUSED

9    SOMEONE MIGHT BE ABLE TO PIECE TOGETHER SOME OF THIS

10   INFORMATION WHAT I WOULD LIKE TO DO IS HAND IT TO THE COURT.

11        IT HAS TABS HERE AND AT THIS TIME IDENTIFIES WHICH

12   PARTICULAR ARTICLE.  THERE ARE OTHERS BUT THIS IS ONE OF THEM

13        THE COURT:  IS THERE A WAY FOR YOU TO IDENTIFY FOR

14   THE APPLE FOLKS WHAT YOU ARE HANDING TO ME MR. ZELLER.

15        MR. ZELLER:  I'M AFRAID IF I DID SOMEONE COULD GO

16   THEN AND LOOK AT THE ARTICLE AND TRY TO TRACE IT.  I JUST DON'T

17   WANT TO BE ACCUSED WHERE SOMEONE COULD SAY YOU COULD TRACE

18   TOGETHER THE STATEMENTS HERE THAT WOULD LEAD TO A PUBLICATION

19   WHERE THEY SAY WE REFLECTED SOMETHING.

20        THE COURT:  FAIR ENOUGH.

21        IF I MIGHT JUST TO AVOID AN ISSUE, IF YOU COULD GIVE ME THE

22   EXHIBIT NUMBER I THINK THAT WOULD SOLVE THE PROBLEM.  I CAN

23   PULL IT MYSELF FROM THE RECORD, I MIGHT HAVE OVERLOOKED THAT.

24        MR. ZELLER:  IT'S EXHIBIT P.

25        THE COURT:  IT'S EXHIBIT P TO MR. BECHER'S

1     DECLARATION.

2            MR. ZELLER:  IT'S A DIFFERENT DECLARATION,

3     YOUR HONOR.  IT'S THE ONE SUBMITTED IN CONNECTION WITH THE

4     INITIAL MOTION APPLE MADE.

5              THE COURT:  DO YOU HAVE THE ATTORNEY'S NAME?

6            MR. ZELLER:  THE DECLARATION OF THOMAS TEECE.

7            THE COURT:  MR. TEECE.

8            MR. ZELLER:  AND THAT IS DATED SEPTEMBER 6, 2013.

9          THEN MR. QUINN WAS GOING TO SEE TO ME THE QUESTIONS THE

10    COURT HAD ABOUT THE STIPULATION.  SO WE CAN DISCUSS THAT.

11         THE BOTTOM LINE IS, YOUR HONOR, WE HAVE NEVER SAID WE ARE

12    GOING NOT GOING TO COMPLY WITH IT.  WE'VE ACTUALLY SAID QUITE

13    THE CONTRARY.

14         WE OBVIOUSLY SAID WE ARE MOVING HEAVEN AND EARTH TO

15    COMPLY WITH THE COURT'S ORDER WHICH HAD A REALLY AMBITIOUS FROM

16    OUR PERSPECTIVE DEADLINE.  AND WE SAID THAT OF COURSE WE INTEND

17    TO COMPLY WITH IT AND WE HAVE BEEN MOVING FORWARD.

18         OBVIOUSLY SOME OF THE THINGS HAVEN'T HAPPENED AS QUICKLY

19    AS WE HAD HOPED BECAUSE OF THE COURT'S ORDER BUT TODAY WHAT WE

20    PROVIDED WAS THE DECLARATION ABOUT THE OUTSIDE LAW FIRMS AND

21    ALSO WE HAVE SOME OF THE OTHER PRODUCTS THAT ARE UNDER WAY I

22    CAN CERTAINLY DISCUSS IF THE COURT KNOWS IT'S APPROPRIATE.

23            THE COURT:  ALL RIGHT.

24        THANK YOU, MR. ZELLER.

25        MR. LEE, DO YOU WANT TO RESPOND?

1          MR. LEE:  LET ME START THIS WAY, YOUR HONOR.

2          CANDIDLY, I TRY TO BE MEASURED IN MY REMARKS AT THE OUT

3     SET YOU DIDN'T HEAR ME ACCUSING PEOPLE OF MISLEADING OR

4     MISREPRESENTING.

5          IT'S A LITTLE STUNNING TO ME THAT THE PERSON WHO CLAIMS

6     -- THE PARTIES WHO CLAIMS THAT OTHERS ARE ENGAGED IN

7     PREPOSTEROUS ACTIVITY IS SOMEONE WHO DISCLOSED THEIR

8     INFORMATION TO 200 PEOPLE.

9          MAYBE THAT'S THE BEST DEFENSE IS A GOOD OFFENSE, BUT THIS

10    IS NOT A CIRCUMSTANCE WHERE THAT SHOULD APPLY.  THEIR PARTNER

11    VICKI MAROULIS SAT SIDE-BY-SIDE WITH ME AT THE FEDERAL CIRCUIT

12    WHERE WE TOLD THEM THAT PROTECTING LICENSING TERMS AND

13    INFORMATION WAS CRITICALLY IMPORTANT TO CLIENTS IT WAS

14    IMPORTANT TO THEM AND IT WAS IMPORTANT TO US.

15         AND THE IDEA THAT WE ARE NOW TRYING TO MAKE A MOUNT AN

16    OUT OF A MOLE HILL IS SIMPLY INACCURATE.  WE CAN WIN ON THE

17    MERITS AT TRIAL.  THAT'S WHAT WE WANT TO DO.  BUT WE DON'T WANT

18    OUR CONFIDENTIAL INFORMATION DISCLOSED.

19         AND I CAN SHOW YOUR HONOR IN TEN MINUTES THAT MOST OF

20    WHAT HAS BEEN OFFERED TO YOU IS SMOKE SCREEN.  A SMOKE SCREEN

21    FOR A FUNDAMENTAL VIOLATION OF THE TRUSTS THAT CLIENT PLACES IN

22    THIS COURT.

23         LET ME GIVE YOU EXAMPLE NUMBER ONE.  THE PROTECTIVE ORDER

24    PROHIBITS THE USE OF CONFIDENTIAL INFORMATION IN ANOTHER

25    PROCEEDING.  THE ITC IS ANOTHER PROCEEDING.  PAGE FIVE THAT

1    YOUR HONOR HAS, HAS OUR CONFIDENTIAL INFORMATION USED IN

2    ANOTHER PROCEEDING.

3          AND ACTUALLY I THINK WHAT MR. BECHER SAYS IS

4    EXTRAORDINARILY HELPFUL BECAUSE WE KNOW THE CHRONOLOGY OF WHAT

5    OCCURRED.  THE UN REDACTED TEECE REPORT WAS COMMUNICATED IN

6    DIFFERENT FORMS IN MULTIPLE TIMES BEFORE MARCH OF 2013 WHEN THE

7    ITC SAID WE NOW WANT YOUR RULING.

8          THERE ARE THE 37 E-MAILS THAT I TALKED ABOUT DURING THAT

9    PERIOD OF TIME.  MR. BECHER HAS NOW TOLD US THAT THEY HAVE

10   BULLET POINTS THAT WOULD GO TO THE GRIEVE, BULLET POINTS THAT

11   INCLUDE OUR CONFIDENTIAL LICENSE TERMS.  RIGHT.

12         SO THERE'S THE TEECE DISCLOSURES, THERE IS THE IMPROPER

13   DISSEMINATION OF THEM.  THERE IS THE DECEMBER 2012 RECOGNITION

14   OF THAT FACT, THEN WE GET TO ANOTHER PROCEEDING WHERE THE

15   QUESTION OF THE LICENSING PRACTICES THE PARTIES ARE AT ISSUE

16   AND WHAT HAPPENS WE NOW KNOW THERE ARE PROBABLY, IF MR. BECHER

17   IS STATING IS ACCURATE, SOMEWHERE OVER 20 INTERNAL E-MAILS THAT

18   HAVE OUR CONFIDENTIAL INFORMATION IN THEM.

19         NOW, MR. QUINN IS RIGHT, IF ALL THOSE E-MAILS WHERE

20   MR. QUINN AND MR. BECHER AND THEY WERE CRAFTING AN ARGUMENT,

21   THAT'S WHAT OUTSIDE COUNSEL DOES.

22         BUT WHAT OUTSIDE COUNSEL CANNOT DO IS CRAFT AN ARGUMENT

23   WORKING WITH CLIENTS WHO ARE NOT SUPPOSED TO SEE THE

24   INFORMATION.

25         AND THIS YOUR HONOR IS NOT CRAFTING A NEW ARGUMENT OF THE

1    PATENTS INVALID BECAUSE OF PRIOR ART X.  THIS IS CRAFTING AN

2    ARGUMENT OF WHAT THEY WOULD BE WILLING TO PAY.  AND IF OUR

3    LICENSE WITH X HAD BEEN A BILLION DOLLARS, YOU COULD BE SURE

4    THAT THEY WOULD HAVE HAD AN OFFER THAT WAS CLOSER TO A BILLION

5    AND THEY WOULD HAVE SAID IT WAS REASONABLE.

6         SO I JUST DON'T EVEN GET THE FIRST ARGUMENT.  I MEAN, THE

7    PROTECTIVE ORDER IS ENTIRELY THERE TO PREVENT INFORMATION

8    GETTING FROM PROCEEDING A THROUGH LAWYERS TO CLIENTS FOR USE IN

9    PROCEEDING B.

10        WE NOW KNOW MORE THAN WE DID WHEN WE STARTED WITH

11   YOUR HONOR TODAY.  WE NOW KNOW THAT, IN FACT, OCCURRED.

12            THE COURT:  IF I COULD STOP YOU THERE, MR. LEE.

13        I DON'T WANT TO CHARACTERIZE MR. QUINN'S ARGUMENT, HE'S

14   CAPABLE OF DOING THAT HIMSELF.

15        BUT IF I UNDERSTOOD HIS POINT HIS POINT WAS IF THIS

16   INFORMATION WAS PRODUCED IN THE ITC PROCEEDING AND IF THERE WAS

17   SOME MISHANDLING OF THAT INFORMATION THROUGH THAT CHANNEL

18   THAT'S AN ITC ISSUE NOT A NORTHERN DISTRICT OF CALIFORNIA

19   ISSUE.  WHY IS THAT INCORRECT?

20            MR. LEE:  THAT'S INCORRECT, YOUR HONOR, BECAUSE WHAT

21   YOUR HONOR HAS IS A CHRONOLOGY WHERE THE INFORMATION WAS

22   PRODUCED IN THIS PROCEEDING FIRST.

23        IT WAS IMPROPERLY DISCLOSED IN THIS PROCEEDING FIRST.  IT

24   WAS THEN, IT THEN MIGRATED ITS WAY OVER TO THE ITC.  NOW THEY

25   MAY HAVE A PROBLEM AT THE ITC AS WELL.  BUT IF THE INFORMATION

1    IS PROTECTED HERE, RIGHT AND IT WAS CLOSED HERE, AND IT WAS

2    USED THERE, THAT'S A VIOLATION.  THAT'S JUST A BLACK AND WHITE

3    VIOLATION.

4         THE FACT THAT IT MAY BE A VIOLATION OF THE OTHER

5    PROTECTIVE ORDER AS WELL IS A PROBLEM.  BUT YOUR HONOR, THIS IS

6    THE KEY TO WHAT MR. BECHER SAID, THESE E-MAIL THAT IS HAD OUR

7    CONFIDENTIAL LICENSING INFORMATION THESE BULLET POINTS ARE

8    BEING VIEWED BY MY COUNT BY OVER 30 SAMSUNG EMPLOYEES WHO HAD

9    NO RIGHT TO SEE THEM.

10        WHERE DID YOU ALL START?  I STARTED WITH THE TEECE

11   REPORT.

12        SO LET ME GIVE YOU THE SECOND PLACE WHERE THEIR ARGUMENT

13   DOESN'T END TOGETHER.  SOME, WE ARE NOT TRYING, I'M NOT TRYING

14   TO HANG OUT TO DRY SOME UNNAMED YOUNG LAWYER WHO COMMUNICATED

15   IN DECEMBER 2012 WHO PULLED IT BACK.  BUT WHAT I AM SAYING --

16        THE COURT:  ARGUABLY, THAT YOUNG LAWYER WAS THE ONE

17   PERSON IN THIS WHOLE CAVALCADE WHO DID WHAT HE OR SHE WAS

18   SUPPOSED TO DO.

19        MR. LEE:  NOW THE TESTIMONY BY MR. SHIM IS HE DOESN'T

20   REMEMBER BEING ASKED THAT.

21        AND YOUR HONOR HAS A DECLARATION FROM HIM SUBMITTED

22   YESTERDAY THAT IF HE HAD REMEMBERED THAT HE WOULD HAVE SAID IT.

23        BUT HERE'S THE PLACE WHERE THEIR ARGUMENT FALLS APART.

24   THAT YOUNG LAWYER, AND IT WASN'T THE YOUNG LAWYER AT LEAST AS I

25   UNDERSTAND IT WHO SUBMITTED THE INFORMATION IT WAS ANOTHER

1    YOUNG LAWYER WHO SAID NO NOTICE SHOULDN'T HAVE DONE THAT.

2         SO THERE'S TWO PEOPLE WHO HAVE KNOWN.  THERE'S THE PERSON

3    WHO TRANSMITTED AND THERE WAS ANOTHER PERSON.

4         BUT IF THEY HAD STOPPED FOR A MINUTE TO SAY, WE BETTER

5    FIND OUT WHETHER THIS HAPPENED BEFORE, I DON'T KNOW WHAT THE

6    FULL MAGNITUDE OF IT IS, BUT EVEN ON THE BASIS OF MR. BECHER'S

7    LETTER, I JUST COUNTED UP 25 TRANSMISSIONS OF THE IMPROPERLY

8    REDACTED TEECE REPORT BEFORE DECEMBER 2012.

9         IF ALL THEY HAD DONE IS SAY IS THERE ANYTHING ELSE HERE,

10   HOW BIG IS THE PROBLEM?  SHOULD WE NOTIFY APPLE?  SHOULD WE

11   NOTIFY NOKIA?  WE MIGHT NOT BE HERE BEFORE YOUR HONOR.

12        BUT NO ONE ASKED THAT QUESTION.  I DON'T DISAGREE WITH

13   MR. QUINN.  CAN IT HAPPEN THAT I SEND SOMETHING TO YOUR HONOR

14   INADVERTENTLY AND SAY DELETE IT, SURE.  BUT THAT'S NOT WHAT

15   HAPPENED HERE.  THIS IS A CIRCUMSTANCE WHERE IT WENT AND NO ONE

16   ASKED THE QUESTION.  IT'S NOT JUST THE FTP SITE, THERE'S OVER

17   20 E-MAILS SENDING THIS REPORT AROUND.

18        THAT'S A MAJOR PROBLEM.  THIRD PLACE WHERE IT FALLS APART

19   IS THIS IDEA THAT MR. MELIN, AND I'M GOING TO LET MR. ALLEN

20   DEFEND HIS REPUTATION, BUT SINCE MR. QUINN ACTUALLY HAS NOW

21   DISCLOSED THAT WE OUGHT TO TALK ABOUT WHAT MR. AHN, A U.S.

22   ADMITTED LAWYER TO PRACTICE SAID, I WAS PRETENDING.

23        THAT'S HIS WORD.  I WAS PRETENDING I KNEW THE TERMS.  I

24   WAS TRYING TO COMMUNICATE THAT I KNEW THE TERMS.

25        NOW THE IDEA THAT MR. MELIN HAS FABRICATED THIS, AGAIN A

1    THIRD PARTY PROTECTIVE ORDER MOTION AND THIS IS THE BEST THEY

2    HAVE THEY WERE PRETENDING, WELL, HE WAS EITHER PRETENDING WITH

3    THEM OR HE'S PRETENDING WITH US BECAUSE THEY DON'T MATCH.

4         THAT'S SIGNIFICANT.  AND YOUR HONOR NOW HAS EVIDENCE FROM

5    THEIR OWN WITNESS THAT THEY USED THE CONFIDENTIAL INFORMATION

6    WITH ANOTHER PARTY.  I DON'T WANT TO SAY THE PARTY'S NAME.  BUT

7    IT'S RIGHT THERE THEY DID EXACTLY THE SAME THING.  THEY USED

8    THE INFORMATION TO NEGOTIATE WITH YET ANOTHER PARTY.

9         NOW MR. QUINN MAKES THE ARGUMENT THAT WE SOMEHOW

10   OBSTRUCTED THEIR ABILITY TO LET THE COURT KNOW WHAT REALLY

11   OCCURRED.

12        WHEN THIS ALL FIRST, WE FIRST GOT NOTICE ON A FRIDAY

13   AFTERNOON AT FIVE, AUGUST THE 1ST, WE WROTE BACK ALMOST

14   IMMEDIATELY AND A FEW DAYS LATER ON AUGUST 11TH I WROTE BACK TO

15   MR. BECHER AND SAID, ALTHOUGH YOU INDICATE THAT YOU MAY BE

16   WILLING TO PRODUCE AT LEAST REDACTED VERSIONS OF THE E-MAILS WE

17   HAVE REQUESTED YOUR LETTER EXPRESSES CONCERNS ABOUT OUR

18   POSITION REGARDING WAIVING THE ATTORNEY-CLIENT PRIVILEGE AND

19   WORK PRODUCT PROTECTION.

20        TO ADDRESS THOSE CONCERNS WE WILL AGREE THAT YOUR

21   PRODUCTION IN RESPONSE TO OUR REQUEST IN AND OF ITSELF WOULD

22   NOT AFFECT A WAIVER.

23        NOW WE DID THAT BEFORE WE CAME TO SEE YOUR HONOR IN AN

24   ATTEMPT TO WORK WITH THEM AND CANDIDLY THEY BLEW US OFF.  THEY

25   SAID NO.

1          AND AFTER WE CAME TO SEE YOUR HONOR, AND HAD YOU GET

2     INVOLVED AND ISSUED AN ORDER THEY CAME BACK AND SAID CAN WE

3     HAVE THAT DEAL YOU OFFERED TWO MONTHS AGO CAN WE HAVE THAT

4     DEAL.  AND WE ANSWERED THEY ARE CORRECT.  WE SAID NO THERE'S AN

5     ORDER NOW COMPLY WITH THE ORDER.

6          I DO NOT THINK THAT ANY REASONABLE LAWYER CAN THINK THAT

7     WHAT WE PROVIDED US COMPLIES WITH THE ORDER.  THE IDEA THAT IN

8     THIS ENTIRE UNIVERSE WHAT EVERY SINGLE SENTENCE WOULD BE

9     REDACTED, OR WHAT YOUR HONOR NOW KNOW THAT IS THERE'S 20 SOME

10    E-MAILS BETWEEN MARCH 13TH AND APRIL 3RD THAT INCLUDE THE APPLE

11    NOKIA LICENSE INFORMATION, THAT ARE GOING BACK AND FORTH TO

12    PEOPLE WHO HAVE NO RIGHT TO SEE IT AND THAT HASN'T BEEN

13    PRODUCED, IS AT LEAST A LITTLE BIT INCREDIBLE.

14         SO I THINK YOUR HONOR, AT THE END OF THE DAY, YOU KNOW,

15    COULD LAWYERS LIKE MR. QUINN CAN POKE HOLES HERE AND POKE HOMES

16    THERE, IT'S ALL USEFUL TO STEP BACK AND LOOK AT THE BIG

17    PICTURE.

18         AND THE BIG PICTURE IS WE HAVE AGREED WITH SAMSUNG AND

19    NOKIA FROM DAY ONE THAT AMONG THE MOST VALUABLE INFORMATION OF

20    TECHNOLOGY COMPANIES ON THE TERMS IN WHICH THEY LICENSE WITH

21    OTHERS.  WE ALL BELIEVE THAT.

22         FROM DAY ONE, WE HAVE ALWAYS TAKEN STEPS TO PROTECT IT

23    AND TO HONOR OUR COMMITMENT TO PROTECT IT.

24         THIS CASE IS A CASE IN WHICH OUR LICENSE INFORMATION,

25    NOKIA'S AND THREE OTHER PARTIES HAS BEEN USED IN NEGOTIATIONS

1    WITH OTHER PARTIES, HAS BEEN USED IN NEGOTIATIONS WITH US, HAS

2    BEEN USED TO CRAFT ARGUMENTS HERE AND WE ULTIMATELY WILL BE

3    SHOWING OTHER COUNTRIES, NONE OF WHICH THEY WERE ENTITLED TO

4    DO.  NONE AT ALL.

5         THAT IS SOMETHING THAT REQUIRES A REMEDY AND A SANCTION.

6    WE THINK WE NEED TO KNOW THE FULL EXTENT OF WHAT'S OCCURRED AND

7    THEN WE WILL PROPOSE THE APPROPRIATE REMEDIATION TO YOUR HONOR.

8         BUT THIS IS NOT SOME GROUP OF LAWYERS OFF TRYING TO TAKE

9    SOME LITTLE INADVERTENT DISCLOSURE OF THREE SENTENCES AND MAKE

10   IT INTO, AND IF NECESSARY A SATELLITE LITIGATION.

11        THIS IS CRITICALLY IMPORTANT INFORMATION AND THIS IS A

12   CRITICALLY IMPORTANT PRINCIPLE, AND WHATEVER HELP YOUR HONOR

13   CAN GIVE US IN GETTING THE CORRECT RESULT IS APPRECIATED.

14        THE COURT:  THANK YOU, MR. LEE.

15        MR. QUINN I WILL GIVE MR. ALLEN THE LAST WORD THEN I WILL

16   GIVE YOU A CHANCE.

17        MR. ALLEN, GO AHEAD.

18        MR. ALLEN:  YOUR HONOR, JUST A COUPLE OF QUICK

19   POINTS.

20        MR. QUINN HAS SUGGESTED NOKIA HAS SOME GRAND SCHEME FOR ITS

21   PARTICIPATION IN THIS PROCESS, THAT WE'VE GOT AN ULTERIOR

22   STRATEGIC MOTIVE.  I WOULD SIMPLY REMIND THE COURT THAT IN THE

23   INITIAL BRIEF THAT WE FILED, THE MOTION WE FILED IN 630, THE

24   ONLY THING WE SOUGHT WAS IT WAS -- BI FOLD.

25        ONE, SAMSUNG WAS SEEKING THE DISCLOSURE OF ADDITIONAL NOKIA

1    CONFIDENTIAL INFORMATION, MAKE IT STOP, MAKE THE HEMORRHAGING

2    STOP.

3         TWO, LET'S DO ENOUGH DISCOVERY TO GET TO THE BOTTOM OF

4    THIS AND FIGURE OUT WHAT WAS GOING ON THAT'S BEFORE WE KNEW

5    WHAT WAS GOING ON.

6         WE JOINED IN THE MOTION HERE WITH APPLE IN THIS CASE

7    SOLELY FOR THE PURPOSE AND WE STATE THIS EXPLICITLY IN OUR

8    PAPERS, SOLELY TO THE PURPOSE OF GETTING TO THE BOTTOM OF

9    WHAT'S GOING ON.  THAT'S THE ONLY REASON WE ARE HERE IS TO GET

10   AT THIS TIME BOTTOM.

11        THERE MAY COME A DAY, I SUSPECT THERE WILL, WHERE THE

12   PEOPLE WHO DID THIS HAVE GOT TO ANSWER FOR IT.  BUT BEFORE WE

13   CAN GET TO THAT POINT, WE'VE GOT TO GET TO THE BOTTOM OF WHAT'S

14   GOING ON.

15        AND LET ME SAY THIS ABOUT, I WANT TO SAY A COUPLE OF

16   THINGS ABOUT MR. QUINN'S CHARACTERIZATION OF MR. MELIN'S

17   DECLARATION.

18        ONE IS WE FILED THAT DECLARATION IN CONNECTION WITH THE

19   FIRST MOTION THAT WE FILED TO ALERT THE COURT THAT THERE WAS A

20   PROBLEM.  IT WAS SUFFICIENT FOR THAT PURPOSE.  THAT WAS THE

21   REASON THAT IT WAS FILED.

22        WE DID NOT FIND IT NECESSARY TO PUT THE EXPLICIT AND I

23   STILL DON'T FIND IT NECESSARY TO PUT THE EXPLICIT DOLLAR

24   AMOUNTS THAT WERE EXCHANGED BETWEEN THE PARTIES INTO A

25   DECLARATION.  IF AT SOME POINT WE NEED TO DO THAT WE ARE HAPPY

1   TO DO THAT.

2          MR. QUINN'S METHOD IS ABOUT AS GOOD AS MINE, AND THAT'S A

3   SMALL HURDLE TO JUMP OVER.  HE EITHER DOESN'T UNDERSTAND THE

4   DISCUSSION THAT TOOK PLACE THAT DAY, HE DOESN'T UNDERSTAND THE

5   LICENSE OR HE'S TRYING TO MISLEAD THIS COURT ABOUT THE

6   ECONOMICS OF THOSE RELATIONSHIPS.

7          IF WE NEED TO GET INTO THIS THEN WE OBVIOUSLY HAVE TO

8   FIND A BETTER VENUE TO DO IT BUT WE ARE HAPPY TOP DO IT.

9          THERE'S A SUGGESTION MADE THAT I'VE TRIED TO COLOR

10  WILLIAMS & CONNOLLY AS BEING AN OPPONENT OF A NEFARIOUS SCHEME.

11  TO THE CONTRARY I'M NOT.

12          WHAT I'M SAYING IS I DON'T KNOW WHAT THEY DID.  I DON'T

13  KNOW WHAT THEY GOT OR WHO THEY GOT IT FROM OR WHAT THEY DID

14  WITH IT WHEN THEY GOT IT WHICH IS THE SAME ON SUSPICION I WAS

15  IN WHEN THIS THING STARTED A MONTHS AND A HALF AGO.

16          MR. ZELLER HAS TOLD US THAT APPARENTLY NOW SAMSUNG IS

17  READY TO GO FORWARD WITH THE STIPULATION AND HE'S MADE TO

18  REPRESENTATION.

19          I WASN'T IN THE DEPOSITIONS LAST WEEK.  SO MR. ZELLER, MY

20  NAME IS AND I'M GLAD TO MEET YOU.  I LOOK FORWARD TO WORKING

21  WITH YOU ON GETTING THE STIPULATION FINISHED.

22          LET ME POINT TO ONE THING IN THE STIPULATION THAT I WANT

23  TO LEAVE -- AFTER WE COLLECTED THE FORENSIC ACCUMULATION OF THE

24  DATA, ONE OF THE THINGS THAT WAS SUPPOSED TO HAPPEN IS

25  REMEDIATION.

1      THEY STILL HAVE IT.  ALL OF THE PEOPLE STILL HAVE IT.  I

2   HAVE NO IDEA WHAT SAMSUNG HAS DONE OR WHAT QUINN EMANUEL HAS

3   DONE OR WHAT STROZ FRIEDBERG HAS DONE TO REMOVE THE INFORMATION

4   FROM QUINN EMANUEL'S SYSTEM FROM THE SYSTEMS OF ALL THE LAWYERS

5   OR THE SAMSUNG SYSTEM OF ALL THE LAWYERS WHO HAVE IT.

6      THAT'S NOT THE END OF THIS INQUIRY.  BUT THAT'S A PROCESS

7   THAT HAS GOT TO ADVANCE AND IT'S GOT TO ADVANCE QUICKER THAN IT

8   HAS ADVANCED.

9      AND IT'S THAT'S WHERE I WILL END, WHERE I ENDED BEFORE,

10   AND THAT IS SOMEBODY OTHER THAN QUINN EMANUEL HAS TO OVER SEE

11   THIS PROCESS.

12      THIS IS -- I'M HAPPY TO WORK WITH MR. ZELLER TO MAKE THAT

13   HAPPEN, BUT IT'S GOT TO BE SOMEBODY OTHER THAN QUINN EMANUEL

14   OVERSEEING THE STIPULATION AND GETTING THAT INFORMATION OUT OF

15   SAMSUNG'S HANDS.

16         THE COURT:  ALL RIGHT.  THANK YOU.

17      MR. QUINN, I SAID YOU WILL HAVE THE LAST WORD, SO I WILL

18   GIVE YOU THE LAST WORD.

19         MR. QUINN:  THANK YOU, YOUR HONOR.

20      MR. LEE SAID THAT MATERIAL ISN'T SUPPOSED TO GET FROM ONE

21   PROCEEDING TO ANOTHER AND AFFECT THE OTHER PROCEEDING.

22      THE APPLE/NOKIA LICENSE WAS PRODUCED IN THE ITC

23   FEBRUARY 19TH, 2012.  WE CAN GIVE THE COURT THE BATES NUMBER.

24   IT WAS PRODUCED THERE TO QUINN EMANUEL BEFORE ANY REDACTED

25   TEECE REPORT WAS PREPARED.  THE FIRST REDACTED TEECE REPORT WAS

1    PREPARED AND WASN'T PREPARED UNTIL MARCH.

2        SO THAT INFORMATION WAS IN OUR HANDS.  THERE'S ABSOLUTELY

3    NO EVIDENCE -- I MEAN, METAPHYSICALLY I HAVE A HARD TIME

4    UNDERSTANDING HOW THE FACT THAT THERE WAS AN IMPROPER REDACTION

5    HERE AFFECTS THAT PROCEEDING WHERE WE ALREADY HAD IT IN OUR

6    HANDS.

7        IF THEY HAVE AN ISSUE THEY DO HAVE AN ISSUE WITH OUR

8    HANDLING OF INFORMATION IN THE ITC AFTER WE GOT THAT PURSUANT

9    TO THE ITC PROTECTIVE ORDER, THEY HAVE INVOKED THEIR REMEDY

10   THERE.  BUT IT'S NOT APPROPRIATE FOR MR. LEE TO GET UP HERE AS

11   HE FIRST DID AND SAY THERE WAS THIS LARGE VOLUME OF E-MAIL IT

12   IS ALL RELATING TO THE TEECE REPORT DURING THAT TIME PERIOD.

13       WE ARE TELLING THE COURT THAT ISN'T WHAT THAT RELATES TO.

14   THAT'S ALL ITC THAT'S ANOTHER PROCEEDING COMPLETELY DIFFERENT

15   ISSUE.

16       SO MR. LEE IS JUST SIMPLY MISTAKEN ON THAT.

17       COUNSEL SAYS THAT MY MATH IS NO BETTER THAN HIS.  IT

18   DOESN'T TAKE MATH.  I WILL TRUST THE COURT'S MATH.  THE COURT

19   HAS THOSE NUMBERS, THE COURT CAN SEE WHAT'S IN THE TEECE

20   REPORT, WHAT DR. AHN SAID AND WHAT WAS IN THE PRESS.  THEY --

21   NEITHER OF THE NUMBERS LINE UP.

22       MR. LEE MAKES A -- SUGGEST THAT IS WHAT SHOULD HAVE

23   HAPPENED IS THE TWO ASSOCIATES SHOULD HAVE THOUGHT WELL WE

24   BETTER INVESTIGATE AND SEE IF THIS HAS KNOW HAPPENED BEFORE.

25   THE ONLY THING I CAN SAY ON THAT YOUR HONOR.  I WISH THEY HAD.

```
1     I CERTAINLY WISH THEY HAD.

2         HINDSIGHT IS 2020.  THEREFORE, THE GRACE OF GOD, ONE OF

3     US DIDN'T THINK TO DO THAT.

4         MR. LEE SAYS BEFORE THE LAST HEARING BEFORE THIS COURT

5     THEY AGREED IT WAS NOT AFFECT A WAIVER THEN AFTERWARDS THEY

6     SAID THAT NO DEAL IS NO LONGER ON THE TABLE.  WHY?  WHAT HE

7     DIDN'T TELL YOU WAS THERE POSITION THAT WAS YOUR ORDER REQUIRED

8     US TO PRODUCE PRIVILEGED INFORMATION.  THAT WAS THE POSITION

9     THEY TOOK REPEATEDLY AND IN WRITING.  UNTIL JUDGE KOH RULED ON

10    OUR APPEAL FROM THAT.

11        SO THEY GAMBLED ON THAT.  THEY SAID THAT DEAL IS OFF THE

12    TABLE, WE ARE NOT GOING TO AGREE, YOU HAVE TO PRODUCE THE

13    PRIVILEGED INFORMATION.  THEY WERE TOLD THEY WERE WRONG ON

14    THAT.  THEY LOST.

15        AND THEN WE SAID TO THEM, LET'S FACILITY THIS PROCESS.

16    WE WANT TO GIVE YOU THIS INFORMATION.  WE WILL GIVE YOU EVERY

17    DOCUMENT THAT HAS THESE LICENSE TERMS YOU ENTER INTO A

18    STIPULATION, NO DICE.

19            THE COURT:  MR. QUINN, ON THAT POINT IT'S CLEAR THE

20    PARTIES WEREN'T ABLE TO REACH AGREEMENT ON WAIVER FOR EXAMPLE,

21    COULD THE COURT CRAFT AN ORDER TO GIVE THAT YOU RELIEF

22    UNILATERALLY?

23            MR. QUINN:  I'M NOT SURE I'M FOLLOWING YOUR HONOR.

24            THE COURT:  WELL, YOU ARE SAYING YOU WERE TRYING TO

25    HACK OUT A STIPULATION WITH THE OTHER SIDE WITH BOTH OTHER
```

1    SIDES I GUESS, AND THEY WERE TAKING THE POSITION THAT THAT DEAL

2    WAS OFF THE TABLE.

3         MY QUESTION IS IF THIS COURT WERE TO ISSUE KNOW AN ORDER

4    THAT HAD EXACTLY THE LANGUAGE YOU PROPOSE THE IN THE

5    STIPULATION THEY REJECTED WOULDN'T THAT SOLVE YOUR PROBLEM.

6              MR. QUINN:  IF THEY AGREED AND WE AGREED AND --

7              THE COURT:  FORGET ABOUT THEM AGREEING.  WHAT IF I

8    TELL YOU THAT'S HOW IT'S GOING TO BE, WOULDN'T THAT GIVE YOU

9    ENOUGH PROTECTION.

10             MR. QUINN:  THIS COURT'S ORDER, I MEAN OUR ISSUE

11   ALWAYS WAS WITH THIRD PARTIES.

12             THE COURT:  UNDERSTOOD.

13        IT JUST SEEMS TO ME IF THE COURT, THIS ONE OR ANY OTHER,

14   SPECIFICALLY DIRECTS A PARTY TO PRODUCE INFORMATION AND MAKES

15   CLEAR IN THAT DIRECTIVE THAT THERE'S TO BE NO WAIVER OR ANY

16   OTHER AFFECT FROM THAT COMPLYING WITH THE ORDER, IT WOULD SOLVE

17   THE PROBLEM YOU ARE TALKING ABOUT.

18             MR. QUINN:  I MEAN, IT WOULD MAKE IT A LOT -- I

19   UNDERSTAND WHAT THE COURT IS SAYING.

20        THE BOTTOM LINE BIG PICTURE HERE IS WE, THEY SAID WE HAVE

21   TO GET TO THE BOTTOM OF THIS.  WE WILL NEVER GET TO THE BOTTOM

22   OF IT.  IF THESE FOLKS ARE PERMITTED TO TAKE THESE DEPOSITIONS

23   CONTINUE TO TAKE DEPOSITIONS, QUESTION EVERYTHING THAT WE DO,

24   MAKE THESE KINDS OF ACCUSATIONS.

25        THE COURT DOES HAVE A RECORD.  AFTER THESE PROCEEDINGS

1    THERE'S NO EVIDENCE OF ANY USE.  THESE ARGUMENTS THAT THEY HAVE

2    BEEN ABLE TO SPIN OUT ABOUT HOW WE USED IT FOR FRAND, THOSE

3    JUST FELL TO THE WAYSIDE.  WE HAD THAT INFORMATION.

4         I DIDN'T REALLY HEAR AN EXPLANATION ABOUT WHY THERE

5    WASN'T A DECLARATION FROM MR. MELIN OR THE OTHER PARTICIPANT

6    CONTROVERTS ANYTHING THAT DR. AHN SAID.

7         BUT I SUBMIT, YOUR HONOR, IF THAT'S AN ISSUE AND THIS

8    GOES FORWARD, WE SHOULD HAVE DISCOVERY.

9         THANK YOU, YOUR HONOR.

10         THE COURT:  THANK YOU, MR. QUINN.

11         BEFORE I LET YOU ALL GO FOR THE DAY I DID WANT TO SEE IF

12    EITHER OR ANY PARTY HAD AN ANSWER TO A QUESTION I RAISED

13    EARLIER WHICH IS THE NUMBER OF DOCUMENTS ON EACH OF THESE TWO

14    LOGS, DOES ANYBODY HAVE THE INFORMATION READILY AT HAND?  I

15    WILL GIVE YOU A MINUTE OR TWO IF IT WILL HELP.

16         MR. ZELLER:  I THINK THE SHORT ANSWER IS YOUR HONOR

17    AND I DO APOLOGIZE THAT THIS IS THE ANSWER IS THAT I DON'T

18    THINK WE KNOW.  BECAUSE WE WERE UNDER SUCH TIME PRESSURE AND

19    CONSTRAINTS WHEN WE PRODUCED THE LOGS IS WE DID NOT NUMBER

20    THEM.

21         WE HAVE BEEN TALKING TO THE OTHER SIDE.  THEY MADE REQUESTS

22    ABOUT OUR LOG THAT IS WE INTEND TO PROCESS ADDRESS.  ONE OF

23    THOSE ARE THE NUMBERS.  SO I APOLOGIZE I DO NOT HAVE THOSE.

24         BUT I THINK EVERYONE WOULD AGREE THERE'S A LARGE NUMBER

25    FOR THE REASONS MR. BECHER ARTICULATED WHICH IS THE COURT'S

```
 1    ORDER WAS BROADER THAN JUST THOSE EXACT OR SPECIFIC TERMS

 2    REFLECTED IN THE TEECE REPORT OR THE DRAFT TEECE REPORT.

 3              THE COURT:  I APPRECIATE THAT INFORMATION.

 4    MR. ZELLER?

 5          DOES ANYBODY HAVE A BALLPARK?

 6              MR. LEE:  YOUR HONOR, THERE ARE ABOUT 250 PAGES OF

 7    THE LOG.

 8              THE COURT:  OF THE LOG.

 9              MR. LEE:  THE LOG IS 250 PAGES.  AND THERE ARE ON

10    AVERAGE.

11              MR. ZELLER:  THERE'S A LARGER ONE.

12              MR. LEE:  THERE ARE ABOUT IN TOTAL I'M LETTING

13    MR. ZELLER SEEING WHAT I'M DOING HERE, THERE ARE ABOUT

14    440 PAGES IN TOTAL.  THERE'S SOMEWHERE BETWEEN 3 TO 6, MAYBE ON

15    AVERAGE FIVE DOCUMENTS A PAGE.  SO I THINK IF YOU TOOK FIVE

16    TIMES 450 IT'S PRETTY CLOSE TO RIGHT.

17              THE COURT:  OKAY.  SO WE ARE TALKING ABOUT 2250.

18              MR. ZELLER:  YEAH.

19              THE COURT:  ALL RIGHT.

20         WELL, I APPRECIATE THE ARGUMENTS AND PRESENTATIONS THIS

21    AFTERNOON.  HERE IS WHAT WE ARE GOING TO DO.

22          I AM NOT YET SATISFIED THAT SANCTIONS ARE WARRANTED IN

23    THIS MATTER.  I'M ALSO NOT YET SATISFIED THAT I HAVE THE

24    INFORMATION THAT I NEED TO MAKE IN ORDER TO MAKE A DECISION

25    REGARDING THE REQUEST.
```

1          THE ISSUE OF PRIVILEGE IS AN IMPORTANT ONE AS YOU ALL

2     KNOW AND IT'S NOT TO BE TAKEN LIGHTLY.  THERE HAVE BEEN SERIOUS

3     ENOUGH SUGGESTIONS THAT THE CRIME FRAUD EXCEPTION WOULD APPLY

4     TO AT LEAST A SUBSET OF THESE DOCUMENTS THAT I THINK FURTHER

5     SCRUTINY OF THE DOCUMENTS IS WARRANTED.

6          SO HERE'S WHAT I'M GOING TO ASK AND ORDER.

7          I'M GOING TO CONDUCT AN IN CAMERA REVIEW.  I USED TO BE

8     PRETTY GOOD AT DOC REVIEW, IT LOOKS LIKE I GET TO TEST AND DUST

9     OFF MY SKILLS.

10          I WOULD LIKE TO HAVE THOSE DOCUMENTS THAT ARE ON EACH OF

11     THESE TWO LOGS PROVIDED TO THE COURT IN TWO COPY SETS.

12          EACH SET SHOULD BE NUMBERED WITH TABS AND BINDERS, ANY

13     ATTACHMENTS TO ANY DOCUMENTS SHOULD BE PUT IMMEDIATELY BEHIND

14     THE NUMBERED TAB WITH A LETTERED TAB SO THAT I HAVE, FOR

15     EXAMPLE, DOC NUMBER 7 WITH AN ABC AND ANY ATTACHMENTS SO THAT

16     THEY ARE ARRANGED IN ANY WAY.

17          I'M GOING TO TAKE A LOOK AND ONCE I'VE TAKEN A LOOK I

18     WILL ISSUE A RULING ON WHAT WE ARE GOING TO DO.

19          MR. QUINN, YES.

20          MR. QUINN:  NOT TO COMPLICATE THINGS EVEN MORE, A LOT

21     OF THESE DOCUMENTS ARE IN KOREA AND I DON'T KNOW WHAT

22     YOUR HONOR'S ABILITY IS WITH --

23          THE COURT:  IT'S RATHER LIMITED, MR. QUINN.

24          ARE THERE ENGLISH TRANSLATIONS OF SOME OF THESE

25     DOCUMENTS?

1           MR. ZELLER:  NOT MANY, YOUR HONOR.

2           THE COURT:  SO WAS THE REVIEW DONE BY ATTORNEYS OR

3    REVIEWERS WITH FLUENCY IN CRIME SCENE.

4           MR. ZELLER:  CORRECT.  THAT'S RIGHT.  WE HAVE A

5    DOCUMENT REVIEW TEAM THAT DOES THAT.

6        SOME OF THEM ARE IN ENGLISH THERE'S NO QUESTION

7    YOUR HONOR.  I CAN'T REPRESENT THE NUMBER.  BUT SOME ARE IN

8    ENGLISH.

9           THE COURT:  WHAT HAS BEEN YOUR EXPERIENCE IN

10   TRANSLATION, SURELY YOU ALL HAVE PRODUCED TRANSLATIONS EITHER

11   TO EACH OTHER OR INTERNALLY, WHAT KIND OF TURN AROUND TIME CAN

12   WE LOOK AT TO GET THE DOCUMENTS TRANSLATED?

13          MR. ZELLER:  IF I COULD PERHAPS MAKE A SUGGESTION

14   WHICH IS PERHAPS WE COULD PROVIDE TO THE COURT SOMEONE WHO IS A

15   TRANSLATOR AND SIT THERE WITH THE COURT ON AN AS NEEDED BASIS,

16   I WOULD ASSUME THAT IT WOULD TAKE A SIGNIFICANT AMOUNT OF TIME

17   TO TRANSLATE WHATEVER SUBSET OF THESE, A NUMBER WE HAVE BALL

18   PARKED, OF DOCUMENTS THAT ARE KOREAN INTO SOMETHING THAT WOULD

19   BE SOME SORT OF WRITTEN TRANSLATION.

20      THEN WE COULD PERHAPS IF THE COURT BELIEVES THAT A FURTHER

21   WRITTEN TRANSLATION BASED UPON THE ASSISTANCE OF A KOREAN

22   TRANSLATOR WAS WARRANTED THEN WE COULD TAKE THAT ON AN

23   AS-NEEDED BASIS.

24          THE COURT:  WELL, I'M NOT TERRIBLY EXCITED ABOUT THAT

25   IDEA FOR ALL KINDS OF REASONS.

1          LET ME ASK THIS QUESTION, I CAN'T IMAGINE THIS IS THE

2     FIRST TIME IN THIS CASE THAT EITHER TEAM HAS BEEN REQUIRED TO

3     TRANSLATE DOCUMENTS FROM KOREAN TO ENGLISH.

4          SURELY BALD RESOURCES SPENT ON THIS CASE THERE'S NO

5     BETTER WAY THAN TO HAVE ME SIT THERE WITH A KOREAN TRANSLATOR

6     DOCK BY DOCK.

7               MR. ZELLER:  I SEE WHAT THE COURT IS SAYING,

8     YOUR HONOR.

9          WHAT I DON'T KNOW IS HOW LONG THAT PROCESS WOULD TAKE.

10    PRESUMABLY WE COULD DO IT ON A ROLLING BASIS BUT I WOULD LIKE

11    TO GET AN ESTIMATE OF THOSE DOCUMENTS IN KOREAN VERSUS THOSE IN

12    ENGLISH.

13         IT MAY BE THAT'S NOT AS LARGELY A PROBLEM I DO NOT KNOW

14    THE PERCENTAGE THAT'S IN KOREAN VERSUS ENGLISH.

15              THE COURT:  WELL, I THOUGHT THIS WAS GOING TO BE

16    EASY.

17              MR. ZELLER:  AND THERE WAS ONE OTHER ISSUE YOUR HONOR

18    I WANTED CLARIFICATION ON IF THE COURT COULD.

19              MR. LEE:  BEFORE WE LEAVE THAT ISSUE.

20         WHAT WE HAVE DONE BEFORE YOUR HONOR IS SOMETIMES WE HAD

21    COMPETING TRANSLATIONS WHICH WOULDN'T BE PLAUSIBLE HERE.  BUT

22    WHAT WE CAN DO IS REACH AGREEMENT ON A TRANSLATOR.  WE WON'T

23    SEE THE DOCUMENTS THEN.

24         AND THE TRANSLATOR COULD TRANSLATE THEM FOR YOUR HONOR AS

25    QUICKLY AS THEY COULD.

```
 1                    THE COURT:  ALL RIGHT.

 2              MR. ZELLER, DO YOU WANT TO RESPOND?

 3                    MR. ZELLER:  I THINK THAT WOULD BE AGREEABLE.   AND

 4    I DIDN'T MEAN TO SUGGEST WE WOULD NECESSARILY BE PICKING THE

 5    TRANSLATOR UNILATERALLY.  THERE ARE AGREED UPON TRANSLATORS

 6    THAT WE HAVE USED DURING THE COURSE OF THE PROCEEDINGS FOR

 7    DEPOSITIONS AND OTHER PURPOSES.

 8                    THE COURT:  OKAY.

 9              WELL, I APPRECIATE THE CLARIFICATION.  I DO WANT TO HEAR

10    YOUR SECOND POINT MR. ZELLER, WHY DON'T YOU TELL ME.

11                    MR. ZELLER:  SURE.

12              YOUR HONOR, SO WITH RESPECT TO THE DOCUMENTS, OF COURSE

13    THE COURT'S ORDER REQUIRED A BROADER SWATH THAN JUST THE

14    PARTICULAR INFORMATION AS WE TALKED ABOUT EARLIER.

15              SOME OF THESE DOCUMENTS THE COURT HAS MENTIONED

16    ATTACHMENTS.  SOME OF THOSE ATTACHMENTS RELATE TO COMPLETELY

17    DIFFERENT SUBJECTS.

18              SO ONE THING I WANTED TO INQUIRE ABOUT IS WHETHER THE

19    COURT WANTED IF SAY FOR EXAMPLE IT WAS A PARENT E-MAIL WE WILL

20    SAY AND IT HAD ONE OF THE TEECE REPORTS ATTACHED TO IT AND IT

21    HAD ANOTHER FIVE ATTACHMENTS, DOES THE COURT WANT ALL THAT

22    PAPER AS WELL?

23              WE CAN SEE, I'M NOT SURE LOGISTICALLY HOW DIFFICULT IT IS

24    BUT I WANT TO MAKE SURE WE ARE NOT SWAMPING THE COURT WITH

25    MATERIALS IT DID NOT WANT
```

```
 1              THE COURT:  NO.

 2          AGAIN, I APPRECIATE THE -- YOUR HIGHLIGHTING THIS ISSUE.  I

 3    DON'T KNOW OFF THE TOP OF MY HEAD WHETHER THERE'S ANY MORE

 4    EFFICIENT WAY THAN SIMPLY PROCEED WITH A COMPLETE PRODUCTION IN

 5    ENGLISH.

 6          I WANT TO GET AT THIS QUICKLY BECAUSE I HAVE ALREADY

 7    INDICATED I BELIEVE JUDGE KOH EXPRESSED HER VIEWS WE NEED TO

 8    GET THIS THING WRAPPED UP ONE WAY OR THE OTHER.

 9          SO I WOULD LIKE TO HAVE THE PRODUCTION MADE IMMEDIATELY.

10    I WOULD LIKE IF I COULD PRIORITIZE CERTAIN INDIVIDUALS WHO ARE

11    OF PARTICULAR INTEREST TO ME.

12          IN PARTICULAR, I WOULD LIKE TO HIGHLIGHT OR I WOULD LIKE

13    TO PRIORITIZE PRODUCTION OF ENGLISH E-MAILS EITHER TO OR FROM

14    DR. AHN, MR. KWAK, AND MR. KHAN, AS WELL AS MR. KIM.  THOSE ARE

15    THE FOUR INDIVIDUALS EITHER WHO, WELL, WHO HAVE GREATEST

16    INTEREST TO ME.

17          SO IF THEY RECEIVED OR SENT E-MAILS WITHIN THE UNIVERSE

18    OF WHAT WE ARE TALKING ABOUT I WOULD LIKE THOSE TRANSLATED

19    FIRST PRODUCED TO THE COURT IN THE MANNER I DESCRIBED.

20          FRANKLY THE SOONER WE GET THIS DONE THE BETTER I THINK IT

21    IS FOR ALL PARTIES.  SO RATHER THAN SET SOME IMPERIAL DEADLINE

22    THAT COULD NEVER BE MET, I'M NOT GOING TO DO THAT.  I WILL JUST

23    ORDER IT IMMEDIATELY.  AS THEY ARE PRODUCED TO THE COURT I WILL

24    REVIEW THEM, THEN ONCE I'VE HAD A CHANCE TO COMPLETE MY REVIEW

25    I WILL ISSUE AN ORDER.
```

```
1              DOES THAT MAKE SENSE?

2                    MR. ZELLER:  IT DOES, YOUR HONOR.

3          SO AFTER THE FIRST WAVE WE WILL PRODUCE TO THE COURT THE

4      REMAINDER.

5                    THE COURT:  CORRECT.

6                    MR. ZELLER:  THEN EVERYTHING ON BOTH LOGS.

7                    THE COURT:  CORRECT.

8          ALL RIGHT.

9          MR. LEE, ANYTHING FURTHER?

10                   MR. LEE:  NOTHING FURTHER, YOUR HONOR.

11                   THE COURT:  MR. ALLEN?

12                   MR. ALLEN:  NO, YOUR HONOR.

13         THANK YOU.

14                   THE COURT:  HAVE A GOOD AFTERNOON.

15                   MR. ZELLER:  THANK YOU, YOUR HONOR.

16         (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

17

18

19

20

21

22

23

24

25
```

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 10/23/13