1  HAROLD J. MCELHINNY (CA SBN 66781)        WILLIAM F. LEE
    hmcelhinny@mofo.com                         william.lee@wilmerhale.com
2  MICHAEL A. JACOBS (CA SBN 111664)          WILMER CUTLER PICKERING
    mjacobs@mofo.com                            HALE AND DORR LLP
3  RACHEL KREVANS (CA SBN 116421)             60 State Street
    rkrevans@mofo.com                           Boston, MA 02109
4  ERIK J. OLSON (CA SBN 175815)              Telephone: (617) 526-6000
    ejolson@mofo.com                            Facsimile: (617) 526-5000
5  MORRISON & FOERSTER LLP
    425 Market Street                           MARK D. SELWYN (SBN 244180)
6  San Francisco, California  94105-2482       mark.selwyn@wilmerhale.com
    Telephone:  (415) 268-7000                  WILMER CUTLER PICKERING
7  Facsimile:  (415) 268-7522                  HALE AND DORR LLP
                                                950 Page Mill Road
8                                               Palo Alto, California 94304
    Attorneys for Plaintiff and                 Telephone: (650) 858-6000
9  Counterclaim-Defendant APPLE INC.           Facsimile: (650) 858-6100

10

11

12                          UNITED STATES DISTRICT COURT

13                        NORTHERN DISTRICT OF CALIFORNIA

14                                SAN JOSE DIVISION

15

16  APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK (PSG)

17                    Plaintiff,                 **APPLE'S RESPONSE TO SAMSUNG'S
                                                 PROFFER OF APPLE'S PATENT
18         v.                                    LICENSE AND SETTLEMENT
                                                 AGREEMENT WITH HTC AND
19  SAMSUNG ELECTRONICS CO., LTD., a            TESTIMONY REGARDING THIS
    Korean corporation; SAMSUNG ELECTRONICS     LICENSE**
20  AMERICA, INC., a New York corporation; and
    SAMSUNG TELECOMMUNICATIONS                   Judge:    Hon. Lucy H. Koh
21  AMERICA, LLC, a Delaware limited liability   Place:    Courtroom 8, 4th Floor
    company,                                     Trial:    November 12, 2013 at 9 a.m.
22
                      Defendants.
23

24

25            **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

26

27

28

APPLE'S RESPONSE TO SAMSUNG'S PROFFER OF HTC LICENSE
CASE NO. 11-cv-01846-LHK (PSG)
sf-3346945

1     Samsung's proffer confirms the Court's ruling that the HTC settlement agreement and

2 related testimony should be excluded from the new trial.  (Oct. 17, 2013 Hr'g Tr. 135:18-136:25;

3 Dkt. No. 2552 at 3.)  The HTC agreement is not at all comparable to the hypothetical license

4 between Apple and Samsung.  It is a broad settlement of worldwide litigation; expressly excludes

5 Apple's design patents; contains other unique and specific terms, including an anti-cloning

6 provision; is a cross-license that includes numerous patents not at issue in this case; and was

7 executed long after the hypothetical negotiation here.  Any probative value of the HTC agreement

8 is far outweighed by the risk of juror confusion arising from rebuttal evidence concerning the

9 many unrelated HTC litigations that gave rise to the agreement.

10     Prior licensing agreements may be admitted as evidence of a reasonable royalty only if

11 those agreements are "sufficiently comparable to the hypothetically negotiated license."

12 *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012); *Lucent Techs.,*

13 *Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).  The license must be similar in

14 scope, contain similar terms, and be entered into under similar circumstances as the hypothetical

15 license between the parties.  *LaserDynamics*, 694 F.3d at 77-78 (explaining differences that made

16 licensing agreement not comparable); *Lucent*, 580 F.3d at 1327-1329 (same).

17     As the Court recognized, Apple's patents covered by the HTC agreement are different

18 from those that would be subject to the hypothetical license in this case.  (Oct. 17, 2013 Hr'g Tr.

19 135:20-21.)  For example, unlike the hypothetical license, which would have included a license to

20 several of Apple's design patents, the HTC agreement expressly ***excludes*** all of Apple's design

21 patents.  (*See* DX938.004; Dkt. No. 2573-4 at 910:22-911:7.)  The HTC license also includes an

22 "anti-cloning" provision that significantly limited HTC's ability to practice Apple's patents.  (*See*

23 DX938.032.)  The hypothetical license between Apple and Samsung would include no such

24 restriction, as Samsung's expert Michael Wagner conceded.  (Dkt. No. 2573-4 at 912:12-22.)

25     Additionally, the HTC agreement is a cross-license that gives Apple a license to practice

26 HTC's patents and HTC a license to practice Apple's patents.  (*See* DX938.004.)  By contrast, the

27 hypothetical license here would not have been a cross-license; Samsung would have received the

28 right to practice Apple's patents without allowing Apple to practice any of Samsung's patents.

1       Moreover, the HTC agreement is a broad portfolio license that includes dozens of other

2 utility patents in addition to the '381, '915, and '163 patents. ███████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8       In addition, the HTC agreement is dated November 2012—over two years after the July

9 2010 date of the hypothetical negotiation.  Given the rapid pace of change in the smartphone

10 market, that difference is significant and weighs against admitting the HTC agreement as relevant

11 to the hypothetical negotiation in this case.  *See LaserDynamics*, 694 F.3d at 78 (rejecting

12 reliance on license agreement that post-dated the hypothetical negotiation by three years).

13       As a broad settlement of worldwide litigation resolving 50 cases (*see* DX938.38-.39), the

14 HTC agreement is very different from the hypothetical license between Apple and Samsung.  The

15 Federal Circuit has consistently recognized that "[t]he propriety of using prior settlement

16 agreements to prove the amount of a reasonable royalty is questionable" because the coercive

17 pressures of litigation distinguish settlements from the hypothetical agreement between a willing

18 licensor and willing licensee under *Georgia-Pacific*.  *LaserDynamics*, 694 F.3d at 77.  The

19 litigation pressures motivating the HTC agreement were particularly strong, making it unsuitable

20 and inadmissible in connection with the hypothetical negotiation in this case.

21       Given the difference in scope, its terms, and the circumstances under which it was entered,

22 any attempt to discern the value of Apple's asserted utility patents from the HTC agreement

23 would be purely speculative.  *See Lucent*, 580 F.3d at 1328.  Further, Samsung's proffer contains

24 no expected testimony from Mr. Wagner that would  reconcile how a cross-license including

25 numerous patents that are not at issue in the new trial could properly "serve[] as a cap for the

26 amount that Samsung would pay to license Apple's utility patents" (Dkt. No. 2573-2 at 1).  *See*

27 *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373-74 (Fed. Cir. 2008) (rejecting argument

28 that non-comparable license provided cap on royalty amount).

1          Samsung attempts to brush aside the numerous differences between the HTC settlement

2     agreement and the hypothetical license between Apple and Samsung, arguing that they go to its

3     weight, but not its admissibility.  (*See* Dkt. No. 2573-2 at 3.)  But the Federal Circuit has made

4     clear that comparability is a gating question that determines the admissibility of purportedly

5     comparable license agreements. *See, e.g.*, *LaserDynamics*, 694 F.3d at 78.  That is particularly

6     true for licenses that are litigation settlements—like the HTC agreement—which, given "the

7     longstanding disapproval of relying on settlement agreements to establish reasonable royalty

8     damages," should be admitted only "under certain limited circumstances."  *Id.* at 77.

9          Such "limited circumstances" are absent here, and the HTC agreement is irrelevant to the

10    hypothetical license between Apple and Samsung.  In fact, Mr. Wagner relies on the HTC

11    agreement only as an "alternative measure of a royalty rate," not as the primary basis for his

12    opinions on the royalty amount (*see* Dkt. No. 2382-4 ¶ 356), and Apple's expert Julie Davis did

13    not consider the HTC license in her analysis in light of the Court's prohibition on relying on new

14    evidence (*see* Dkt. No. 2386-2, Davis Rpt. at 83 n.274).  By contrast, the risk of unfair prejudice

15    to Apple is high because the HTC agreement is not comparable to the hypothetical license

16    between the parties.  *See LaserDynamics*, 694 F.3d at 78.  Nor is Samsung correct that admitting

17    the HTC agreement will not spawn "satellite litigation" because "Mr. Wagner can opine on

18    Apple's own license without proffering additional fact testimony" (Dkt. No. 2573-2 at 3).  Apple

19    would be compelled to present evidence concerning the many unrelated worldwide disputes that

20    resulted in this complex settlement agreement, and why those circumstances produced terms that

21    are entirely different from the hypothetical license.  The Court therefore should reaffirm its ruling

22    to exclude the HTC agreement under Federal Rule of Evidence 403.

23          Finally, the HTC agreement is new evidence that was not presented to the jury in the first

24    trial.  Admitting such new evidence would complicate appellate review of the juries' verdicts

25    based on different records, as the Court recognized.  (Oct. 17, 2013 Hr'g Tr. 136:3-11.)  The

26    Court should therefore exclude it.

27

28

1

Dated: October 23, 2013                    MORRISON & FOERSTER LLP

2

3                                          By:    */s/ Harold J. McElhinny*
                                                  HAROLD J. McELHINNY
4
                                           Attorneys for Plaintiff
5                                          APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28