QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S RESPONSE TO APPLE'S STATEMENT REGARDING DESIGN AROUND DATES IN RESPONSE TO THE COURT'S OCTOBER 18, 2013 ORDER** |

Pursuant to the Court's October 18, 2013 Order (Dkt. 2552), Samsung submits this response to Apple's Statement Regarding Design-Around Start Dates.  The question before the Court is whether a "but-for" lost profits analysis must account for hypothetical noninfringing design arounds available as of first infringement, even if that date is earlier than the actual notice date at which recovery of damages is first allowed under 35 U.S.C. § 287.  The answer is "yes."

I. **The Court Previously Excluded Apple's Improper Methodology as Untimely.**

By Apple's own admission, the Court previously barred Apple's calculations using the very same methodology now in dispute.  *See* Dkt. 1690 at 1 (sustaining objection); Anderson Decl. Ex. 1, 10/17/2013 Hrg. Tr. at 160:2-5 ("The Court: …you would agree that I did exclude those actual notice of patent design around start dates with Mr. Musika last year -- Mr. Lee: Right."); 161:13 ("You did exclude them.").  For this reason the Court should strike them again.[1] *See* Dkt. 2316 at 2-3 (prior rulings on evidentiary objections remain in effect).

Apple mischaracterizes Mr. Musika's original method, alleging that he used the later of first infringement or notice dates.  Dkt. 2569 at 5.  He did *not* do that.  Mr. Musika's original calculations used the later of patent issuance or first sale date—i.e., date of first infringement—as the trigger date for a hypothetical design around.  *See* Dkt. 2407-5, Musika Rpt. ¶129. ("This period begins at the later of the *issuance* … or the date in which Samsung *first sold* the product embodying … and *assumes that Samsung had notice of the patents on that date*.") (emphasis added).  Notice dates were not used in Mr. Musika's original calculations, he simply "assumed" notice was satisfied whatever the date of first infringement.

Mr. Musika knew that some notice dates would be later than the first infringement dates.  In particular, Apple never contended that Samsung had notice of the '381 and D'677 patents as of first infringement.  Apple alleged the Vibrant infringed the '381 and D'677 as of June 2010, but did not contend Samsung had notice of the '381 until August 4, 2010 or of the D'677 before the complaint on April 15, 2011.  *Compare* Musika Rpt. ¶192 ("Samsung first began to infringe

---

[1] Apple's charge that Samsung could have raised this issue on JMOL is misplaced.  At trial, Mr. Musika's lost profits calculations—and the jury award—used dates of first infringement, not notice.  Only now is Apple seeking to revise the Court's earlier ruling and to rely on notice dates.

1  Apple's patents in June of 2010"); Exs. 17.2-17.4 (damages starting in June 2010) *with* Anderson
2  Decl. Ex. 2 at 7-9 (Apple's Interrogatory response alleged notice of the '381 patent on August 4,
3  2010 and notice of other patents-in-suit including the D'677 "as a result of the filing of this
4  lawsuit" on April 15, 2011).  Thus Mr. Musika's "assumption" that notice was satisfied as of first
5  infringement ignored even Apple's own notice date contentions.

6        Apple's choice to use dates of first infringement was deliberate.  Mr. Musika could have
7  used Apple's contentions about notice, Samsung's contentions about notice, or the filing of the
8  Complaint, any of which would have disclosed a calculation assuming notice dates after first
9  infringement .  Mr. Musika did not disclose any such calculation.  When Apple tried to introduce
10 new calculations using design around start dates as of actual notice, the Court excluded them as
11 untimely.  Dkt. 1690.  The Court reasoned that while Mr. Musika stated his calculations could be
12 adjusted for other notice assumptions, his reports did not disclose any calculations.  *Id.* at 2.

13       Apple does not deny that Ms. Davis's Exhibits PT-H and PT-I are based on the same
14 notice-based design around start dates that Mr. Musika used in his excluded calculations.  *See* Dkt.
15 2386-2, Davis Rpt. ¶120 (the later notice dates "control in this analysis").  Moreover, the numbers
16 do not lie.  *See* Dkt. 2530 at 3 (identifying Ms. Davis's use of the excluded two notice period
17 theory and excluded lost profit totals for several products, including the Exhibit 4G for which
18 Apple did not seek lost profits at the first trial).  Ms. Davis was certainly *not* required to change
19 the design around start dates by the Court's order limiting Apple's damages under 35 U.S.C.
20 § 287.  Apple made this change in order to claim over $33 million more in lost profits on these
21 products than in the first trial.  *See* Dkt. 2391-1 at 1.  These calculations should be excluded.

22 II.  **Apple's Improper Methodology Is Contrary to Law.**

23       Separately, Ms. Davis's assumption that hypothetical design around efforts would not start
24 before actual notice, even where first infringement occurred earlier, is contrary to law because it
25 disregards the availability of hypothetical noninfringing design arounds during the pre-notice
26 period of infringement.  Under Federal Circuit law, a hypothetical reconstruction must account for
27 "alternative actions the infringer foreseeably would have undertaken had he not infringed."  *Grain*
28 *Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).  Here, there

is no dispute that Samsung could have designed around Apple's patents starting at the date of first infringement, at most in a matter of months. *See* Davis Rpt. ¶109 (Mr. Musika's "lost profits calculation assumes that Samsung would have returned to the market with a designed-around, noninfringing alternative that is just as desirable to consumers").

Apple has not identified a single case to support its position that it is proper to ignore the availability of noninfringing alternatives prior to the notice date. *Grain Processing* shows Apple's position to be incorrect as a matter of law. In that case, the Federal Circuit denied lost profits where the defendant could have designed around before receiving notice of the patent. While the court stated that the "accounting period" is the "critical time period for assessing the availability of an alternative," *id.* at 1353, the holding is that a patentee cannot recover lost profits if an acceptable noninfringing alternative was available *before* the "critical" accounting period. *Id.* at 1354-55. If Apple were correct that only the "accounting period" matters, then the Federal Circuit should have reversed the district court for relying on the availability of design around before the accounting period. *Cf. id.* at 1351 (no lost profits "[w]here an infringer demonstrates that it could have chosen to market a noninfringing alternative and that it would have done so had it known it was infringing") (quoting Adelman, PATENT PERSPECTIVES § 5.2[2] (2d ed.1998)).[2]

*Grain Processing* did not address any "question of fact" regarding when the defendant would have started to design around. The factual issues in *Grain Processing* were whether the defendant could have designed around prior to the accounting period and whether the redesigned product would have been acceptable to consumers. *Id.* at 1354-55. Neither of these issues is in dispute here. *See supra*, Davis Rpt. ¶109. Indeed, Ms. Davis testified that she shifted the design around dates because she believes that the availability of noninfringing alternatives is relevant

---

[2] Apple's reliance on *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1332 (Fed. Cir. 2009) is misplaced, as that case involved a jury finding of no acceptable noninfringing alternatives. *See also Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1106 (N.D. Cal. 2009) (same). Although Apple no longer relies on *Callaway Golf Co. v. Acushnet Co.*, 691 F. Supp. 2d 566, 575 (D. Del. 2010), in *Callaway* the court merely held that an expert need not speculate–in the absence of excluded evidence of a noninfringing alternative introduced *during* the accounting period–whether that alternative could have been available *before* the accounting period. *See id.* at 575 n.14 (excluding evidence of alternative). Here, there is no dispute that Samsung could have started design arounds before the accounting period.

only after notice. *See* Anderson Decl. Ex. 3, Davis Depo. Tr. 109:20-110:12 ("the availability of acceptable substitutes is only relevant during the damages period and more specifically, only relevant during the lost profits period"). That is an incorrect assumption of law, not fact.

Apple's proposed "question of fact" cannot be reconciled with *Grain Processing*:

> [D]oes it make sense to identify noninfringing substitutes at a period of time before the accounting period has started? Or does it make more sense, both as a matter of logic and a matter of fact, to have the design around period start on the date that the accounting -- the date of notice?

Anderson Decl. Ex. 1 at 151:2-11. If that were a question for the jury—and clearly it is not—then *Grain Processing* was wrongly decided. The Federal Circuit could not have affirmed because it identified no evidence to support a jury finding that defendant would have started the two-week design around process at first infringement, rather than the notice date. Also, if it were question of fact when Samsung would have begun designing-around—and again it is not—the Court barred Mr. Musika from giving the answer that Ms. Davis intends to offer, that Samsung would not have begun designing around until notice. *See supra* Section I. Apple cannot have it both ways.[3]

Apple's claim that Ms. Davis's position "reflects the actual facts," Dkt. 2569 at 3, overlooks that a lost profits inquiry is "a hypothetical enterprise" based on "likely outcomes with infringement factored out of the economic picture." *Grain Processing*, 185 F.3d at 1350. Ms. Davis improperly assumes Samsung would have continued to infringe until receiving notice, resulting in many months of infringing sales not "factored out of the economic picture." *Cf. id.* ("Reconstructing the market, by definition a hypothetical enterprise, requires the patentee to project economic results that did not occur."). Furthermore, in her reasonable royalty opinion, Ms. Davis makes the exact same assumptions about design around starting at first infringement regardless of notice that she calls illogical in the lost profits context. *See* Davis Rpt. ¶¶190-191; Ex. 39.3-S (design around times).

---

[3] Apple's request to put its legally incorrect theory of lost profits before the jury should be dismissed. First, Apple cites no authority—nor is there any—that permits a court to abdicate its gatekeeper role to keep legally erroneous theories from the jury in the hope the error can somehow be corrected later. Second, allowing Apple to present a claim inflated by some $300M over any legally permissible recovery would be highly prejudicial. Third, Apple offers no criteria by which the Court could tell whether the jury used the impermissible theory or not, nor does Apple explain how the Court could calculate a remittitur amount to correct for the impermissible theory.

Case law from analogous contexts shows that disregarding pre-notice market conditions constitutes reversible error. In *Wang Labs, Inc. v. Toshiba Corp.,* 993 F.2d 858, 869-870 (Fed. Cir. 1993), it was an abuse of discretion to change the starting date of a hypothetical reasonable royalty negotiation based on Section 287, even though it was "not illogical to hypothesize a negotiation at the time of notice," as the accused infringer "may not know of the patents until notice is given." In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 711 F.3d 1348, 1379 (Fed. Cir. 2013), the court held that Section 287 does not change the starting date of the hypothetical "but for" market reconstruction used in lost profits price erosion: "while the marking statute precludes recovery of damages for pre-notice infringement, we must assess damages for post-notice infringement relative to market conditions *at the point in time when infringement began*." Thus, the district court's ruling that damages "be based on conditions occurring on or after the … notice date," *id.* at 1378, was "incorrect as a matter of law." *Id.* at 1380.

Apple's attempt to distinguish these cases falls flat. *Laserdynamics, Inc. v.Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) supports Samsung's position, not Apple's. The lost profits and reasonable royalty hypothetical analyses are based on the same economic question, namely what *would have been* if infringement had never occurred. And Apple offers no explanation for how to reconcile a lost profits price erosion analysis that factors out all pre-notice infringement (as a matter of law under *Power Integrations*) with a lost profits design around analysis that would, if Apple were correct, assume infringement up until the date of notice.

Section 287 is designed to encourage the patentee to give early notice. *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993); *see also* Fed. Trade Comm'n, THE EVOLVING IP MARKETPLACE: ALIGNING PATENT NOTICE AND REMEDIES WITH COMPETITION 3, 79-75, 134-135 (2011) (explaining that early notice encourages design around, promotes competition and avoids wasteful sunk costs). It negates that purpose to allow a patentee to manipulate its potential lost profits award by delaying notice until its competitor spends all of its R&D, manufacturing, and marketing budget, thereby maximizing lost sales. If Apple were right about the law, the statute intended to encourage early notice would reward *not* giving early notice. Apple's improper methodology is new and contrary to law and should be struck.

| | |
|---|---|
| DATED: October 25, 2013 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By /s/ *Victoria F. Maroulis* <br> Charles K. Verhoeven <br> Kevin P.B. Johnson <br> Victoria F. Maroulis <br> William C. Price <br> Michael T. Zeller |
| | Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC |