# EXHIBIT 4

to Declaration of Scott R. Mosko in Support of Samsung's Administrative Motion to File Documents Under Seal

# Proposed Redacted Version of "Samsung's Proffer of Apple's Patent License and Settlement Agreement with HTC and Testimony Regarding This License" containing HTC's and Apple's Proposed Redactions

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065-2139
8  Telephone:  (650) 801-5000
   Facsimile:  (650) 801-5100
9
   William C. Price (Bar No. 108542)
10 williamprice@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
11 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
12 Los Angeles, California 90017
   Telephone: (213) 443-3000
13 Facsimile: (213) 443-3100

14 Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS
   AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC
15

16                         UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 18  APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| 19       Plaintiff, | |
| 20       vs. | **SAMSUNG'S PROFFER OF APPLE'S PATENT LICENSE AND SETTLEMENT AGREEMENT WITH HTC AND TESTIMONY REGARDING THIS LICENSE** |
| 21  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | |
| 22  ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | **FILED UNDER SEAL** |
| 23  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 24       Defendants. | |

**Proffered exhibit and testimony.** Samsung proffers Apple's Patent License and Settlement Agreement with HTC ("HTC Agreement"), and testimony regarding its value for establishing a reasonable royalty for the '381, '915 and '163 patents. *See* Dkt. 2177-03 (HTC Agreement, now DX 938). Samsung's damages expert, Michael J. Wagner, expects to testify to the context and terms of the HTC Agreement and his opinion that it serves as a cap for the amount that Samsung would pay to license to Apple's utility patents. *See* Dkt. 2382-3, 8/26/2013 Wagner Rpt. at ¶¶ 309, 319, 341-57, 437-438, 442, 560, and Schedule 27-NT.

Mr. Wagner expects to testify that Apple asserted the '381 and '915 patents against HTC, as well as 30 other patents. *Id.* at ¶ 309, Schedule 27-NT. ███████████

███████████ *Id.* at ¶ 352, 356. The HTC Agreement provides a ten year, worldwide, nonexclusive, irrevocable, non-sublicensable, and nontransferable license to each parties' patents, with the exception of Apple's design portfolio and nine HTC patents. *Id.* at ¶ 346. ███████████

███████████

Mr. Wagner will testify that ███████████ serves as a cap for a royalty that Samsung would pay for the '915, '381, and '163 patents, which are covered under Apple's license to HTC. *Id.* at ¶¶ 354-56. These three are a small subset of Apple's patents asserted against HTC—and an even smaller portion of Apple's patent portfolio—███████████ *Id.*

Mr. Wagner will testify that the cloning restrictions in the HTC Agreement would have little effect on the utility patents in the new trial, because the restrictions do not cover functionality and related methods (such as "pinch to zoom") or any feature provided to HTC as part of the

---

[1] ███████████ *Id.* at ¶¶ 347-49.

1  "Android Mobile OS," and apply only where HTC had available alternatives that would provide
2  the same functional, cost and performance advantage. *Id.* at ¶ 354. The anti-cloning provision is
3  breached only if all of the following are true: Apple's patents are literally infringed by the human
4  interface that has a distinctive visual appearance of an HTC mobile device; the same patent is
5  literally practiced by a significant feature of the human interface of an Apple mobile device that
6  has a distinctive visual appearance; the non-functional visual appearance in an HTC device is
7  "substantially similar" to that in an Apple device; Apple introduced the feature prior to HTC or
8  any third party and has not granted a license to any third parties without additional payment; and
9  there are alternative appearances reasonably available that implement and realize the functional,
10 cost and performance advantages of the patented feature. *Id.* at ¶¶ 350, 354. HTC may agree to an
11 additional payment to cover a "cloned" feature. *Id.* at ¶ 351.
12     Mr. Wagner will testify that the HTC Agreement is uniquely, directly comparable to the
13 hypothetical negotiated agreement here. Apple considers certain HTC and Samsung phones to be
14 comparable. *Id.* at ¶ 239 (citing DX 712). Mr. Wagner is also prepared to explain the unique
15 competitive position of HTC and why the HTC Agreement is not comparable to other licenses
16 discussed in Ms. Davis's report. *Id.* at ¶¶ 319, 341-45. While Mr. Wagner does not believe that
17 this license establishes a royalty for Apple's patents, he expects to testify that the royalty payment
18 in the HTC Agreement shows that Ms. Davis's concluded royalty rate of $7.14 per unit for '163,
19 '915 and '381 patents is excessive and unsupported. *Id.* at ¶¶ 354-57. Mr. Wagner will also
20 testify that Ms. Davis's reasonable royalty analysis is flawed because she omitted from her
21 "income approach" any consideration of at least 28 Apple patents asserted against HTC, thereby
22 inflating her opinion of the value of the patents asserted against Samsung. *Id.* at ¶ 309-310.
23     Furthermore, the HTC Agreement is compelling evidence that Apple is willing to license
24 its utility patents, a fact contradicted by testimony of Apple witnesses at the first trial. Trial Tr.
25 2009:4-2010:17 (The '381, '915 and '163 patents "are in Apple's unique user experience and not
26 ones that we would license") (Teksler); 2090:5-18 ("Apple does not want to license [its utility
27 patents].") (Musika). Apple should not be permitted to elicit such testimony without facing cross
28 examination on the HTC Agreement showing that Apple licensed its utility patents to HTC.

**The HTC Agreement is highly probative evidence.** License agreements for the patents in suit—including litigation settlement licenses—are reliable evidence of the value of the patents. *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("settlement agreements can be pertinent to the issue of reasonable royalties"); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868-72 (Fed. Cir. 2010) (a settlement license may be uniquely probative where the "most reliable license in the record arose out of litigation"); *see also Gen-Probe Inc. v. Becton Dickinson & Co.*, 2012 WL 9335913, at *2-3 (S.D. Cal. Nov. 26, 2012) (denying motion to exclude testimony on litigation settlement licenses); *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010) (same). Challenges to the probative value of the HTC Agreement go to weight, not admissibility. *See, e.g., Gen-Probe Inc.* 2012 WL 9335913, at *3 (concerns about the effect litigation might have had "are better directed to weight, not admissibility"). Indeed, the primary concern about the use of settlement agreements—that litigation-inflated royalty rates drive up damages—is not an issue here, where defendant is proffering the comparable license. *See ResQNet.com*, 594 F.3d at 872. Mr. Wagner will testify that the HTC Agreement establishes a maximum royalty for Apple's utility patents, and that Apple has willingly licensed them. Wagner Rpt. at ¶¶ 354, 442. Apple deposed Mr. Wagner about the HTC Agreement, Anderson Decl. Ex. 1, 8/20/13 Wagner Dep. Tr. at 908:3-917:21, and can cross examine him at trial.

Use of the HTC Agreement will not invite "satellite litigation." As is common practice, Mr. Wagner can opine on Apple's own license without proffering additional fact testimony. Ms. Davis does not dispute that Apple's utility patents are covered in the HTC Agreement. Anderson Decl. Ex. 2, 8/26/13 Davis Dep. Tr. 227:8-228:3. *See Fujitsu Ltd. v. Belkin Int'l., Inc.*, 2012 WL 5835741, at *3 (N.D. Cal. Nov. 16, 2012) (license relevant because it involved a party and relevant products). At her deposition, Ms. Davis stated that she does not consider the HTC Agreement to be comparable for the utility patents because it is a cross license. Ex. 2 at 225:4-17; 227:8-228:3. Ms. Davis opined on the HTC Agreement in her report without reliance on any statements or sources outside the document itself. Dkt. 2386-2, 8/23/13 Davis Rpt. at ¶ 185, fn. 274. This simple disagreement between the experts on the probative value of a cross license will not lead to "satellite litigation."

DATED: October 21, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC