# Exhibit B
# (Submitted Under Seal)

# EXHIBIT FF

1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          NORTHERN DISTRICT OF CALIFORNIA
8          SAN JOSE DIVISION
9

| | |
|---|---|
| 10  APPLE INC., a California corporation, | Case No.11-cv-01846-LHK |
| 11              Plaintiff, | **SUPPLEMENTAL EXPERT REPORT OF TERRY L. MUSIKA, CPA** |
|        v. | |
| 12  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 16              Defendants. | |

18
19
20
21
22          **SUBJECT TO PROTECTIVE ORDER**
23          **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
24
25
26
27
28

1

## <u>TABLE OF CONTENTS</u>

2

3

A.    QUALIFICATIONS                                          1
B.    ASSIGNMENT                                              1
C.    DATA AND OTHER INFORMATION CONSIDERED                   2
D.    APPLE INTELLECTUAL PROPERTY IN SUIT                     3
E.    SAMSUNG ACCUSED PRODUCTS                                4
F.    APPLE INC.                                              4
G.    SAMSUNG                                                 4
H.    INDUSTRY AND MARKET                                     5
I.    ASSUMPTIONS                                             5
J.    SUPPLEMENTAL CONCLUSIONS AND OPINIONS                   5
K.    UPDATES FOR APPLE PRODUCTION                            19
L.    POSSIBLE REVISIONS TO THIS REPORT                       20
M.    EXHIBITS                                                20
N.    PROFESSIONAL ARRANGEMENT                                20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**APPLE INC.**

**V.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**

**AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**

**SUPPLEMENTAL EXPERT WITNESS REPORT OF**

**TERRY L. MUSIKA, CPA**

**A.    QUALIFICATIONS**

1.    I am a CPA with over 37 years of business experience. I am a former audit and consulting partner for the international accounting firm of Coopers & Lybrand which is today named PricewaterhouseCoopers, former Managing Director for Navigant Consulting, Inc. and have previously formed, owned and operated a proprietary database company, two national financial and economic consulting firms, and a merger and acquisition company.  Additionally, I have frequently served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, and Paying Agent.  My resume, attached as **Exhibit 1** lists my work experience, academic degrees, and publications.

2.    My business address is 1637 Thames Street, Baltimore, Maryland 21231.

3.    During the past 37 years I have provided expert testimony in over 200 separate proceedings before 47 different Federal District Courts throughout the U.S., nine separate state courts, numerous proceedings before the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, numerous arbitration matters and the United States International Trade Commission.  I was accepted as a designated expert in all cases.  **Exhibit 2-S** lists the cases in which I have testified as an expert witness in deposition and at trial from 2008 to the present.

**B.    ASSIGNMENT**

4.    In the matter of Apple Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, I previously issued Expert Report of Terry L. Musika,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

CPA dated March 22, 2012 ("Original Expert Report"). Counsel for Apple has now requested that I supplement my Original Expert Report to reflect the impact, if any, of the following case developments that occurred subsequent to the issuance of my Original Expert Report.

- Order (1) Granting-In-Part Apple's Motion For 37(B)(2) Sanctions Re September 28 And December 22 Discovery Orders; (2) Granting-In-Part Apple's Motion For 37(B)(2) Sanctions Re Damages Discovery and Samsung's document production pursuant to the aforementioned Order produced on April 30, 2012. Samsung produced a series of documents pursuant to this Order, some of which are identified on **Exhibit 3-S**.

- Joint Case Management Conference Statement dated April 30, 2012. Apple set forth a number of assets that it is prepared to dismiss without prejudice. This intellectual property is identified as: (1) U.S. Patent No. 7,12,812,828; (2) U.S. Design Patent No. D622,270; (3) iPhone trade dress Registration No. 3,475,327 and the unregistered trade dress for the original iPhone and iPhone 4; and (4) Registered Trademark 3,889,685 (settings icon) and registered Trademark 3,889,642 (messaging icon).

- Order Granting-In-Part Plaintiff's Motion To Compel Depositions, And Granting-In-Part Defendant's Cross-Motion For A Protective Order dated April 4, 2012. The following Samsung depositions were taken pursuant to the aforementioned Order and subsequent to my Original Expert Report: Gee Sung Choi, Won-Pyo Hong, Seungwhan Cho, Dale Sohn, and Joseph Cheong.

- Order Granting-In-Part Plaintiff's Motion to Compel Timely Production of Foreign-Language Documents dated March 8, 2012, resulting in additional depositions after March 22, 2012 of witnesses who were deposed prior to my March 22, 2012 Original Expert Report.

5. I am prepared to explain my opinions in testimony at deposition and at trial.

**C.    DATA AND OTHER INFORMATION CONSIDERED**

6. In arriving at the testimony outlined below, I have based my opinions on my expertise in accounting, auditing, financial and damage analysis, independent research of publicly-available information, and my review of various documents and pleadings produced thus far by both the Plaintiff and the Defendants.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

7. I previously issued my Original Expert Report, as discussed above, and Rebuttal Expert Report of Terry L. Musika, CPA dated April 16, 2012 ("Rebuttal Expert Report"). My opinions expressed in the Original Expert Report and Rebuttal Expert Report are unchanged. Accordingly, I base my opinions herein on the information and analysis contained in my Original Expert Report and Rebuttal Expert Report as well as the additional materials identified in **Exhibit 3-S** to his report.

8. I have considered and evaluated the reliability of the underlying data and the degree to which my assumptions are supported by the record. The techniques I used to calculate damages are generally accepted within and reliable according to the standards of my profession, and are sufficiently explained and disclosed to permit a review of my work.

**D. APPLE INTELLECTUAL PROPERTY IN SUIT**

9. As described in my Original Expert Report and identified in Apple's Amended Complaint, Apple originally asserted U.S. utility patents, U.S. design patents, U.S. trademark registrations/applications, and U.S. trade dress registrations/applications against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC (collectively, "Samsung").[1] In the joint statement identified above, Apple has stated that it is prepared to remove certain of the originally asserted intellectual property assets as discussed above from a July and August 2012 trial of this case. I have assumed for purposes of this supplemental report that these assets are not part of the damages case that will be included in a July or August 2012 trial. My description of the asserted intellectual property in my Original Expert Report and on **Exhibits 5 through 9** of my Original Expert Report remains unchanged and is referred to throughout this report as the "Apple Intellectual Property In Suit." The Apple Intellectual Property In Suit used for the calculations discussed below is identified on **Exhibit 15-S**.

10. I am aware that the parties are in discussions with each other and with the Court regarding whether claims of other intellectual property assets may be deferred, tried separately or dismissed without prejudice. I also understand that the original assets have not been dismissed. I am prepared to provide an opinion on the amount of damages if these assets remain in the case, and I am prepared to

---

[1] Apple Inc. Amended Complaint dated June 16, 2011, pp.7-9, 16-17, and 21-24.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

provide an opinion on the amount of damages if other intellectual property is removed.  As noted in my Original Expert Report, the damages model that I have prepared is flexible and intended to permit a determination of damages under any scenario regarding the claims, products and periods that are tried in the case.  See my Original Expert Report at paragraphs 88 & 89.  This remains true of my analysis as provided here and my updated damages model.  Therefore, I remain prepared to calculate and render an opinion on the amount of damages if less than the total number of Samsung Accused Products proceeds to trial, if less than all of Apple's Intellectual Property in Suit proceed to trial, if damages are limited to any particular period for any of the Intellectual Property in Suit, or if Samsung was on notice of the intellectual property at a different date, if and when requested to do so by counsel or the Court or based on the evidence presented at trial.  As I did after the initial reports, I am prepared to produce the results of any calculation and the complete Access database model used to perform my calculations if asked to do so.

**E.   SAMSUNG ACCUSED PRODUCTS**

11.   As described in my Original Expert Report, Apple has asserted that 32 Samsung products infringe the Apple Intellectual Property In Suit ("Samsung Accused Products").  These products are identified on **Exhibit 4**.

**F.   APPLE INC.**

12.   My description of Apple as set forth in my Original Expert Report and Rebuttal Expert Report remains unchanged.

**G.   SAMSUNG**

13.   My description of Samsung as set forth in my Original Expert Report remains unchanged.

14.   Since the issuance of my Original Expert Report, SEC reported revenues of approximately $40 billion for the first quarter of 2012[2] in comparison to first quarter 2011 revenues of approximately $33 billion.[3] Furthermore, 2011 year end revenues have been reported of $143 billion.[4] For the first

---

[2] Samsung Electronics Q1 2012, dated April 2012 (SAMNDCA00401014-025 at SAMNDCA00401016).
[3] Samsung Electronics Co., Ltd. and its subsidiaries Consolidated Statements of Income for the three months ended March 31, 2011. (SAMNDCA00400699)
[4] Samsung Electronics Co., Ltd. and its subsidiaries Consolidated Statements of Income for the year ended 2011. (SAMNDCA00400857).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

quarter, Samsung's consolidated profitability reached "an all-time high" of approximately $5.2 billion.[5] The company stated that, "brisk sales of flagship GALAXY Note and GALAXY S II devices contributed to the company's profitability."[6] Also, The Wall Street Journal reported on April 29, 2012, "Soaring sales of smartphones lifted Samsung Electronics Co.'s profit to a record in the first quarter and apparently pushed the South Korean company past Nokia Corp. as the world's biggest cellphone seller."[7]

**H.  INDUSTRY AND MARKET**

15.  My description of the Industry and Market as set forth in my Original Expert Report remains unchanged.

**I.  ASSUMPTIONS**

16.  My assumptions as set forth in my Original Expert Report remain unchanged.

**J.  SUPPLEMENTAL CONCLUSIONS AND OPINIONS**

17.  The additional documents and disclosures resulting from the four categories of events subsequent to my Original Expert Report discussed above result in three categories of supplemental opinions. The first category of supplemental opinions addresses the changes in the amount of damages required to compensate Apple for the infringement by Samsung. The second category of supplemental opinions addresses errors and deficiencies in the financial information provided by Samsung (and used by Samsung to calculate Samsung's financial results and damages) based on further analysis arising from materials received after my Original Expert Report. The third and final category of supplemental opinions addresses additional information and additional Samsung depositions and the exhibits thereto taken after the issuance of my Original Expert Report and how they confirm and further support the opinions already rendered.

**Category One – Effect of the Newly Disclosed Information on the Calculation of Damages**

---

[5] Samsung Press Release, "Samsung Electronics Announces First Quarter 2012 Earnings Results," April 27, 2012; Samsung Electronics Earnings Release Q1 2012, dated April 2012 (SAMNDCA00401014-025 at SAMNDCA00401016). Original data given in Won was converted to USD based on exchange rate of 1131.4 Won/USD as of March 31, 2012 from the Federal Reserve (http://www.federalreserve.gov/releases/h10/hist/dat00_ko htm).

[6] Samsung Press Release, "Samsung Electronics Announces First Quarter 2012 Earnings Results," April 27, 2012.

[7] "Samsung Takes Cellphone Lead," The Wall Street Journal, April 29, 2012 (http://online.wsj.com/article/SB10001424052702303916904577373462067834068 html).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

18. As previously discussed in my Original Expert Report, each item of Apple Intellectual Property In Suit is entitled to only one damage remedy (i.e., either lost profits, infringer's profits where appropriate or a reasonable royalty). I follow the same methods discussed in detail in my Original Expert Report to calculate damages appropriately, which is summarized in paragraphs 79 to 84 and 89 and discussed in further detail throughout my Original Expert Report.  I do not repeat that discussion here.

19. I have provided a complete set of supplemental exhibits attached to this report. The form and numbering of the exhibits are identical to the set of exhibits attached to my Original Expert Report. In the event that a previously issued exhibit is not changed by the new Samsung disclosures, the prior exhibit is included herein in its original form and with its original exhibit number. To the extent that a prior exhibit's content has changed, it is attached hereto with the necessary changes. However, the exhibit title, format and primary exhibit number have not changed. In the event that the content of an exhibit has changed, then the exhibit number will include an "S" after the exhibit number (e.g., prior **Exhibit 17** becomes **Exhibit 17-S**) to signify that the exhibit contains new amounts.

20. Using this method, I have calculated the damages that can be reasonably calculated for Samsung's sales of the individual units of various models identified as Samsung Accused Products in light of each element of the Apple Intellectual Property In Suit and summarized the results on **Exhibits 17-S and 17.1-S** and as further summarized in the tables below. I have made the calculation on a product by product basis because the limitation on damages is product specific. I determined the amount of damage on each individual product that was subject to lost profits, infringer's profits and a reasonable royalty because I wanted to make sure that I did not calculate more than the allowable damages on any given product. The tables below contain both the Original Expert Report amounts and the supplemental amounts.[8]

---

[8] Updated market share figures for the quarter ending March 31, 2012 were not available at the time of this report.  As such, when performing the lost profits calculations and corresponding Mor-Flo analysis for the first quarter of 2012, I have relied on the market share information for the prior quarter ending 12/31/11 as shown on **Exhibits 29-S, 30-S, 31-S, 31.1-S. 31.2-S, and 31.3-S**.  This information represents the most current information available.  However, I am prepared to update my calculations in the event that more current market share information becomes available.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| Original Expert Report | Revenue Basis | Gross Profit Basis |
|---|---|---|
| Lost Profits | $583,191,122 | $583,191,122 |
| Infringer's Profits – Design Patents, Trade Dress & Trademarks | 5,510,092,347 | 2,008,994,149 |
| Reasonable Royalty | 0 | 0 |
| **Total Damages** | $6,093,283,469 | $2,592,185,271 |
| **Supplemental Expert Report** | | |
| Lost Profits | $605,827,951 | $605,827,951 |
| Infringer's Profits – Design Patents, Trade Dress & Trademarks | 5,981,099,016 | 2,112,857,208 |
| Reasonable Royalty | 23,325,843 | 23,325,843 |
| **Total Damages** | $6,610,252,811 | $2,742,011,002 |

21. In the alternative, I assumed that all Apple Intellectual Property In Suit was valid and infringed by all Samsung Accused Products. However, I removed any lost profits remedy from the damage calculation. The results of this calculation are summarized on **Exhibits 18-S and 18.1-S** and in the table below**.**

| Original Expert Report | Revenue Basis | Gross Profit Basis |
|---|---|---|
| Infringer's Profits – Design Patents, Trade Dress & Trademarks | $6,424,701,038 | $2,337,518,680 |
| Reasonable Royalty | 0 | 0 |
| **Total Damages** | $6,424,701,038 | $2,337,518,680 |
| **Supplemental Expert Report** | | |
| Infringer's Profits – Design Patents, Trade Dress & Trademarks | $6,956,521,010 | $2,452,457,870 |
| Reasonable Royalty | 24,255,720 | 24,255,720 |
| **Total Damages** | $6,980,776,730 | $2,476,713,590 |

22. As a second alternative, I have assumed that all Apple Intellectual Property In Suit was valid and infringed by all Samsung Accused Products. However, I removed infringer's profits from the damage

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

calculation. The results of this calculation are displayed on **Exhibit 19-S** and summarized in the table below.

| Original Expert Report | |
|---|---|
| Lost Profits | $583,191,122 |
| Reasonable Royalty | 511,999,442 |
| **Total Damages** | $1,095,190,564 |

| Supplemental Expert Report | |
|---|---|
| Lost Profits | $605,827,951 |
| Reasonable Royalty | 542,620,072 |
| **Total Damages** | $1,148,448,023 |

23. Although **Exhibits 17-S, 18-S, and 19-S** provide a separate analysis of the amount of damages that would result under the various forms of remedy available to Apple assuming all categories and items of Apple Intellectual Property In Suit are valid and violated, the results present damages calculated for only some of the many possible outcomes that may result from a trial. As discussed in detail in my Original Expert Report and as noted above, it is not practical or even possible to submit a report reflecting the numerous damage outcomes associated with every possible liability outcome.  However, as noted above and at paragraph 89 of my Original Expert Report, my model can address these outcomes.

24. The changes in the final damage amounts reflected herein result from the following types of changes made to the damages reflected in my Original Expert Report. The quantitative impact of each type of change is summarized on **Exhibits 48-S and 48.1-S**.

- Correction of prior computation – During the process of supplementing my calculations based on the new Samsung disclosures I noted that I had previously captured two months of sales data for the Showcase in the wrong period. The relevant amounts have been revised.

- Addition of previously undisclosed Samsung Accused Products and changes to previously disclosed Samsung Accused Products – Subsequent to the issuance of my Original Expert

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Report and in response to a Court order, Samsung provided sales data for the following accused products: Galaxy Tablet 10.1 LTE, Galaxy S II (Epic 4G Touch) and Galaxy S II (Skyrocket).   In the same document production, Cost of Goods Sold data for certain previously disclosed Samsung Accused Products was updated.   I have incorporated this information into my calculations.

- Addition of first quarter of 2012 accused sales - Subsequent to the issuance of my Original Expert Report, Samsung provided sales and other financial data for all Samsung Accused Products, including the three previously undisclosed products mentioned above, for the first quarter of 2012.  I have incorporated the information into my calculations and extended my calculation of damages to March 31, 2012.

- Assumption regarding intellectual property assets – As discussed above, I have revised my calculations to eliminate from these calculations certain intellectual property assets discussed in the Joint Case Management Conference Statement dated April 30, 2012.  As noted above, my damages model remains capable of calculating damages for all the assets included in my Original Expert Report, and I can and will provide an opinion on the appropriate amount of damages if these assets remain a part of the case at trial.

25.    I anticipate that additional information concerning sales and other financial data from Samsung and Apple for periods after March 31, 2012 will be available before trial.  I would update my calculations to reflect this additional data when it becomes available.

**Category Two –Problems and Deficiencies in Samsung's Financial Data**

26.    The second category of supplemental opinions addresses problems and deficiencies with Samsung's financial data that affects the manner in which damages should be calculated and awarded by the jury.  Based on my experience and training as an accountant and an expert in the calculation of damages and after carefully reviewing the financial information produced by Samsung in this litigation, I conclude that errors, variances and omissions in the financial data that Samsung has provided, as well as the number of times the data had to be reproduced, and the changes that occurred as it was reproduced undermine the credibility of certain of the information contained in Samsung's documents and disclosures.   I previously identified concerns about Samsung's production and

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

answers in depositions in my Original Expert Report. The deficiencies have become more apparent in light of Samsung's production in response to the Court's April 23 Order, in which the Court concluded that Samsung's prior production violated the Court's prior discovery orders. I discuss those deficiencies below.

27. As noted in my Original Expert Report, Samsung bears the burden of proving all deductions and allocations beyond revenue and/or cost of goods sold with respect to the Accused Products when calculating remedies based on Samsung's profits for violations of Apple's design patents (under 35 U.S.C. section 289), trade dress and trademarks. [9] In order to meet that burden, Samsung must show that the information used to calculate the deductions is reliable and relates reliably and accurately to the Accused Products in a manner that is consistent with financial standards applied by those who routinely work in this field. It appears that Samsung will attempt to meet this burden based on a series of different spreadsheets that refer to a purported "operating profit" for the Accused Products, which were also used by Michael Wagner, one of Samsung's damages experts, to perform various calculations.[10]

28. Based on the analysis below and all the information that I have received in the case, I conclude that Samsung's various spreadsheets related to the Accused Products do not meet the relevant standards applied by financial accountants and are not an appropriate basis from which to reduce Samsung's operating profitability for purposes of calculating the forms of damages discussed above. I have calculated damages based initially on Samsung's revenues for the Accused Products. These figures are directly associated with unit sales of the Accused Products and constitutes the most reliable of the information provided by Samsung. In light of the deficiencies in Samsung's remaining data as discussed below, it would be appropriate for the jury to award damages based on this amount due to

---

[9] Weil, Frank, Huges, and Wagner, Litigation Services Handbook, Fourth Edition, 2007, pp. 22.32 to 33; *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980); *In re AI Realty Marketing of NY, Inc.*, 304 B.R. 622, 624-25 (S.D.N.Y. 2004).

[10] This report reflects a supplement to my original March 22, 2012 report, which set forth the amount of damages that Apple should receive for Samsung's conduct. It is not a rebuttal report, which was not provided for in the Court's schedule and not identified in the Court's April 23, 2012 order. Nonetheless, because this supplemental report is being issued after Mr. Wagner's April 16, 2012 rebuttal reports, I have referenced Mr. Wagner's work. I have multiple disagreements with Mr. Wagner's methods, calculations and statements from his report. It is nonetheless beyond the scope of this report to provide those opinions and the basis for them. I can and will testify regarding them in my deposition, if asked, consistent with the Court's original schedule.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Samsung's failure to carry its burden of proof and the fact that Samsung is in possession of the information necessary to produce more reliable information.  To be conservative and based on the information that I do have, I have also calculated damages based on Samsung's gross profits even though, as discussed below, there are considerable reasons to conclude that Samsung's spreadsheets do not meet the standards expected in the accounting field with respect to its cost of goods sold. Based on my experience and expertise, the errors, variances, and problems with the information Samsung has provided make the information inappropriate as a basis to reduce Samsung's profits relating to the Accused Products in this case.

**Background regarding Samsung's production of financial data.**

29.  The path by which Samsung has produced financial information in this case has been far from straight-forward.  During discovery, Apple sought and obtained an order requiring the production of Samsung's financial information related to the Accused Products by February 3, 2012.[11]  Samsung's initial production in response to this order was in error and incomplete.  Products were missing.  The relevant spreadsheets did not add together to match the total.  Products were inexplicably combined. Information on various companies was produced in a manner that did not tie together and did not permit data to be consolidated according to standard procedures in the accounting profession. Information was produced at an exceptionally high level when much more detail was plainly available.  Further, the production showed no evidence that it had undergone standard checks to ensure its accuracy before production.  Finally, it became clear in depositions and later disclosures that the materials that Samsung provided were created solely for purposes of this litigation in a format created solely for this litigation and under the direction of Samsung's attorneys.[12] Depositions further showed the minimal care that was taken to generate and check the data for accuracy prior to production.

30.  Samsung's productions reflected multiple errors.  Between February 3 and April 30, Samsung has produced at least seven different versions of its financial data in the form of various spreadsheets. Samsung has admitted that many of these versions included errors.  Various information was added

---

[11] Order re Discovery Motions (Re: Docket Nos. 598, 599, 600, 611, 603, 604, 606, 607, 613), January 27, 2012, pp. 2 and 15.
[12] Deposition of Jaehwang Sim, March 10, 2012, pp. 15-18; Deposition of Timothy Sheppard, February 29, 2012, pp. 39 and 44.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   back into certain line items and then removed from those line items in later versions.  Samsung has

2   claimed that all of the information was taken directly from a SAP database[13] but material differences

3   appear between various versions, which is itself, inconsistent with this claim.   Samsung's designated

4   witness also refused to provide sworn testimony about basic financial accounting questions, such as

5   the manner in which cost of goods sold is calculated,[14] leaving key variances unexplained.   I

6   discussed some of this history in my Original Expert Report.

7   31.   Apple returned to the Court and sought an order enforcing the original discovery order and requiring

8   a complete production.  The Court agreed that Samsung's prior productions had violated the Court's

9   order and required, among other things, a complete production of financial data.  This resulting

10   production is a primary reason for this supplemental report.  I have used the information produced,

11   where possible, to do additional analysis to judge the credibility of the information on costs and

12   expenses that Samsung has provided.  This analysis and the prior history forms the basis for my

13   opinions regarding the inadequacy of Samsung's calculations of operating profits.

14   **Samsung's recently disclosed Accused Product expense line items contain material unexplained**

15   **variances as compared to prior versions**

16   32.   As described in my Original Expert Report in paragraphs 143 to 149, Samsung has produced multiple

17   versions of files containing financial information for the Accused Products.   Subsequent to my

18   Original Expert Report, Samsung further produced additional versions, including the file marked

19   SAMNDCA00402075, which has the following discrepancies when compared to prior versions: (1)

20   ████████████████████████████████████████████████████████████████████████

21   Operating Profit which I understand to be related to a Samsung Chinese manufacturing facility for

22   certain Accused Products; (2) the addition of detailed line items within Manufacturing Cost of Goods

23   Sold; and (3) a shifting of costs between detailed line items within Manufacturing R&D.   These

24   discrepancies are shown on **Exhibit 49-S**.   One of the troubling aspects of Samsung's overall

25   document production is the extent to which previously disclosed numbers continue to change.   A

---

26

27   [13] Declaration of Timothy Sheppard, March 12, 2012, pp. 11-12; Deposition of Timothy Sheppard, March 30, 2012, pp. 31-33, 133, and 149-150; Deposition of Jaehwang Sim, March 10, 2012, pp. 35, 82, and 88.

28   [14] Deposition of Jaehwang Sim, March 10, 2012, pp. 95-96 and 131-132.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  primary principle of financial accounting is that accurate data for a historic period involving the same

2  accounts or category of accounts should not change just because multiple reports regarding that data

3  are provided.  Accurate data from historic periods in a properly functioning accounting system should

4  stay the same.  The perpetual changes in Samsung's various spreadsheets between February 3, 2012

5  and April 30, 2012, coupled with the current incomplete disclosures combine to undermine the

6  completeness, accuracy, and reliability of Samsung's reported product profitability.

7  **Samsung's recently disclosed combined Accused Product operating profit does not agree with**

8  **Samsung's previously provided calculation of combined product operating profit**

9  33.  Based on Samsung's production of data prior to the April 23 order, Samsung has claimed, based on

10  calculations repeated in Mr. Wagner's report, that its combined profits for SEC, STA and SEA for the

11  ███████████████████████████████████████████████

12  Court's April 23 order, Samsung has produced a new file entitled "SAMNDCA-D0000001-AEO-

13  native-xlsx."  This file includes sales of the Accused Products that match the source relied upon by

14  Mr. Wagner.[16]  Additionally, the file contains a calculation of the "Combined Profit" for each

15  individual device.  In total the file reports a "Combined Profit" for the Accused Samsung Products of

16  ████████████████████████████████████████████████

17  produced pursuant to the Court's order do not agree with the product by product amounts that

18  Samsung previously provided and that Mr. Wagner uses. For example, the combined profit reported

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  Some of these differences arise, at least in part, from the manner in which Samsung reported data in

22  the spreadsheets and the failure to account for monthly variation when calculating an operating profit.

23  Once again, however, these variances reflect the deficiencies in the information supplied by Samsung

24  from which they are seeking to deduct millions of dollars as a part of an alleged calculation of

25

[15] Expert Report of Michael J. Wagner, April 16, 2012, p. 140, Figure 44.

26  [16] SAMNDCA00380019.

[17] SAMNDCA-D-0000001-AEO-native-xls.

27  [18] Expert Report of Michael J. Wagner, April 16, 2012, p. 140, Figure 44.

[19] SAMNDCA-D-0000001-AEO-native-xls.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

operating profit.  The lack of close agreement between versions and calculations undermines the reliability of Samsung's cost and expense data for purposes of calculating operating profits.

**Samsung's recently disclosed Accused Product gross and operating profit do not tie to Samsung's general ledger**

34.   The Court's April 23 order required Samsung to provide documents in accordance with the original proposed order from the January 11, 2012 motion to compel.  Within the scope of the order is a requirement that "all figures should tie to Samsung's general ledger."[20] Samsung has failed to tie any of the previously disclosed or recently disclosed amounts to Samsung's general ledger. Samsung encrypted file SAMNDCA-D-0000001-AEO-native.xlsx contains a note that certain product profit margins were "checked to SAP." I understand that SAP is the name of Samsung's internal accounting and financial reporting software system.[21] However, simply noting that certain amounts appear within the SAP database system on a test basis does not signify that the disclosed product profit amounts tie to Samsung's general ledger and can be reconciled through to Samsung's audited financial statements. As a former audit partner for PricewaterhouseCoopers' predecessor, I understand that reconciling a product profit to the general ledger involves more than the identification of a test amount within the accounting system. Unless the individual cost elements are tied to the actual general ledger and reconciled through to the audited financial statement, there is no way of ensuring that the product profitability offered by Samsung has properly accounted for the numerous period ending adjustments that occur in the ordinary course. The preparation of audited period ending financial statements require that accounts be updated for events such as changes in standard costs, variances from actual costs, period ending inventory adjustments, changes in accrued estimates and other period ending adjustments. Without the production of an actual visible reconciliation to the general ledger, it is not possible to know if the disclosed product profitability is complete or accurate.

35.   Using the files previously provided to me and the files produced in response to the Court's April 23 Order, I have attempted to tie the information reported in the various financial spreadsheets provided

---

[20] [Proposed] Order Granting Apple's Motion to Compel Production of Documents and Things, filed 1/11/12, p. 8, Section V. Financial Information Relevant to Damages.
[21] Deposition of Timothy Sheppard, January 24, 2012, p. 29.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    by Samsung to Samsung's audited financial statements or to intermediate statements that could then

2    be used to tie the amounts to audited financial statements.  I have been unable to do so.  Samsung

3    offers no financial schedule by which it has done so.  Mr. Wagner offers no evidence that he was able

4    to do so or even attempted to do so.  This failure is a substantial deficiency in the data that Samsung

5    has provided.  It is a fundamental principle of financial accounting that reliable information on

6    financial results should be able to be tied to and agreed to (with the possibility of small, customary

7    variances) audited financial statements.  Unless this can be done, it is difficult to know whether a

8    financial schedule accurately portrays information on a particular set of costs or expenses, whether

9    the amounts in question are over-allocated to a particular product and whether errors have occurred

10   when a subset (and not the whole) of the data were selected for analysis.  In my experience, there are

11   numerous ways in which it would have been possible for Samsung to produce the relevant

12   information to permit this check to be run.  Samsung did not provide this data.  I am aware that

13   Samsung's witnesses claim that much of the data being provided was provided directly from SAP[22];

14   however, it is a fundamental principle of accounting that a financial accountant does not accept the

15   unsupported statement of a company representative as a substitute for a reconciliation between data

16   and an audited financial statement or schedule.

17   **Samsung's disclosed product gross profit for individual Accused Products contain material**

18   **unexplained variances**

19   36.   The importance of reconciling expenses to the actual general ledger is illustrated by material

20         unexplained changes in Samsung's reported product gross profit.  Samsung encrypted file

21         SAMNDCA-D-00000012-AEO-native.xlsx contains material unexplained variances in reported gross

22         margins when compared to other financial information provided by Samsung.  Moreover, because this

23         file is a foundation for the amounts recorded in SAMNDCA00402075, these discrepancies undermine

24         the reliability of the cost of goods sold calculations in that file.  The individual mobile device

25         products have a relatively short life cycle (i.e., 1 to 2 years).  Further, the sales price, carrier subsidies

26         and product costs are relatively constant over the product life cycle with the exception that margins

27   _____
     [22] Declaration of Timothy Sheppard, March 12, 2012, pp. 11-12; Deposition of Timothy Sheppard, March 30, 2012, pp. 31-33,
28   133, and 149-150; Deposition of Jaehwang Sim, March 10, 2012, pp. 35, 82, and 88.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  will likely decline as the products reach the end of their life cycle and are replaced by the next

2  generation of mobile products. However, there is no reason to expect significant short term spikes or

3  sharp declines in product gross profit margins during a product life cycle. I have graphed the reported

4  gross profit margins for four example products on **Exhibit 51-S** to illustrate the material unexplained

5  data anomalies. Without a reconciliation of this data to the general ledger and some plausible

6  explanation for the counterintuitive data behavior, there is substantial reason to doubt the accuracy of

7  Samsung's reported cost of goods sold figures based on my experience and expertise in accounting

8  and these doubts provide substantial reason to conclude that the information does not meet the

9  standards customarily applied to verify and validate financial data before it can be used to calculate

10  operating profitability.

11  **Samsung's reported detailed material costs per Accused Product (SAMNDCA-D-00000014-**

12  **AEO-native.xlsx) do not agree with the product material costs reported and used to calculate**

13  **product profitability (SAMNDCA00402075)**

14  37.  Samsung provided a file that reflects detailed information on its material costs for the Accused

15  Products as a part of the production in response to the Court's April 23, 2012 Order.  I added the

16  detailed material costs disclosed in the file SAMNDCA-D-00000014-AEO-native.xlsx for individual

17  products by period and compared the sum of the disclosed material costs to the material product cost

18  per unit calculated from Samsung's file SAMNDCA00402075, which was used to report Samsung's

19  Accused Product profitability, and determined that they do not agree.[23] Rational financial accounting

20  explanations exist for small differences and once again would demonstrate why it is important to

21  reconcile the disclosed costs through to the general ledger. However, as illustrated on **Exhibit 52-S**,

22  the comparison that I prepared yielded material unexplained differences between the two data

23  sources.   These variances exceed the amounts that could reasonably be explained by standard

24  explanations, such as the use of actual versus standard costs or differences in currency conversion

25  rates. Samsung's failure to produce a detailed bill of materials cost accounting that reconciles to or

26

---

[23] I note again that SAMNDCA-D-00000012-AEO-native xlsx is the foundation for SAMNDCA00402075, which is the updated statement of Samsung's alleged operating profit for the Accused Products.  Any issue with the former file undermines the reliability of relevant cost and expense items in the latter file.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

supports the reported product profitability included in its litigation spreadsheets again casts significant doubt on the reliability of the cost of goods sold information as a basis from which to calculate Samsung's operating profitability.

**Any calculation of profitability must account for variable costs versus fixed costs and product costs versus development costs, which are labeled in the documents provided in response to the Court's April 23 Order, but not accounted for in Samsung's calculations.**

38. In response to the Court's order, Samsung produced encrypted file SAMNDCA-D-00000012-AEO-native.xlsx that provided more detailed information on various accounts from which costs or expenses are reported.  This file explicitly labels many of these accounts as involving either fixed or variable costs and expenses. As noted, I also have checked and determined that this file provides the foundation for the file labeled SAMNDCA00402075, which reflects Samsung's alleged calculation of operating profit for the Accused Products.  "Fixed costs" and "variable costs" have standard meanings in financial accounting.  A fixed cost has no direct relationship to the volume of product produced or sold. In order for a fixed cost to be assigned to a product, the cost must be allocated on some systematic and rational basis. The file discussed above labels certain costs and expenses as "fixed costs."  Samsung has provided no explanation or support for the fixed costs assigned to individual products. Although certain Samsung witnesses have suggested that a portion of the fixed costs are allocated on the basis of product sales, it is not possible to replicate such allocation or determine if it represents a rational or appropriate allocation. The fixed costs do not represent a consistent ratio of sales that would confirm what the fixed costs were, how they were being allocated, whether the methods are being consistently applied, or whether they are reliable. Further, Samsung has not disclosed, tied or reconciled the allocated fixed costs to total fixed costs in the general ledger. Both because of the fixed nature of these costs and the uncertainties presented due to the inability to determine how they are being allocated, they should be excluded from any calculation of operating profitability.

39. Additionally, Samsung encrypted file SAMNDCA-D-00000012-AEO-native.xlsx provides more detailed information on accounts related to two additional non-product cost categories (general research and development and general maintenance).  Consistent with my understanding of what

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

these costs and expenses reflect, these items are not specifically labeled as either fixed or variable. Similar to fixed costs, these non-product costs have no direct relationship to the Accused Products. With respect to research and development, they reflect ongoing research and development expenses for new and different products and not amounts spent on the Accused Products.  With respect to general maintenance, they reflect costs and expenses relating to general operations of the company that do not relate specifically to the Accused Products.  Prior to inclusion on this schedule, they had to be allocated on some systematic and rational basis. Once again, Samsung has provided no explanation or support for the assignment of these costs to Accused Products. Further, Samsung has not disclosed, tied or reconciled the allocation of these costs to the general ledger.  Both because of the nature of these costs and the uncertainties presented due to the inability to determine how they are being allocated, they should be excluded from any calculation of operating profitability.

40. **Exhibit 50-S** shows the fixed and variable costs as well as product and non-product costs identified by Samsung in its most recent production.  I have calculated an incremental profit based on the ███████████████████████████████████████████████ margin identified by Samsung.

**Samsung's production lacks any reliable information on the cost of development of the Accused Devices or the actual or expected costs for any effort to redesign products in light of Apple's intellectual property.**

41. As noted in my Original Expert Report, the cost to develop the Accused Products and amounts that Samsung had spent to design products so that Samsung would avoid the use of Apple's Intellectual Property in Suit could be relevant to my damages calculations.  The Court's April 23 Order incorporated a prior document that required production of "relevant expense for research and development and to design around any patent, including: 1. Any consolidated reports on the expense that Samsung incurred to development any of the accused products; and 2. Any report or financial

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    information that reflect the actual or projected expense to design around any patent."[24]  I have

2    searched Samsung's production for this information.

3    42.    Samsung produced only combined data on all its research and development efforts and expenses.  It

4        did not produce any reports, calculations or information on the cost to develop the specific Accused

5        Products or specifically to change products or other technology in light of Apple's Intellectual

6        Property in Suit.  It is not possible to make any estimate of these costs and expenses from the

7        generalized information that Samsung has provided.  Samsung's failure to provide the information,

8        even in response to the Court's order, undermines any claims that research and development costs

9        should be deducted when arriving at operating profit and undermines any other claims by Samsung

10        regarding the financial cost that would be required to avoid infringement of Apple's Intellectual

11        Property in suit through alternative designs or technology.

12    **Category Three – Opinions based on Samsung information obtained and depositions taken**

13    **after the issuance of my Original Expert Report**

14    43.    The third and final category of supplemental opinions addresses additional information obtained

15        subsequent to my Original Expert Report, such as Samsung depositions and the exhibits thereto taken

16        after March 22, 2012.  My review included depositions of Timothy Sheppard, Jaehwang Sim, Gee

17        Sung Choi, Won-Pyo Hong, Seungwhan Cho, Dale Sohn, Joseph Cheong, and Timothy Benner, as

18        well as documents produced by Samsung on April 30 in response to the court's order.  I have

19        incorporated portions of the evidence presented in these depositions in **Exhibits 24-S and 25-S**

20        outlining demand for design patents and trade dress and utility patents.  Further, I have also

21        incorporated this evidence into **Exhibit 53-S** to support and confirm opinions expressed in my

22        Original Expert Report.

23    **K.    UPDATES FOR APPLE PRODUCTION**

24    44. In light of Samsung's production of sales data through March 31, 2012, Apple also has produced

25        subsequent to my Original Expert Report, updated Line of Business Reports and Billings Reports for

26

---

27    [24] [Proposed] Order Granting Apple's Motion to Compel Production of Documents and Things, filed January 11, 2012, p. 10 as referenced in Order (1) Granting-In-Part Apple's Motion For 37(B)(2) Sanctions Re September 28 And December 22 Discovery Orders; (2) Granting-In-Part Apple's Motion For 37(B)(2) Sanctions Re Damages Discovery, dated April 23, 2012, pp. 3, and 16.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    the iPhone and iPad for the quarter ending March 31, 2012. I have reviewed this updated financial

2    information and used it to provide updated information on Apple's financial results, as included in the

3    supplemental exhibits to this report.

4  **L.    POSSIBLE REVISIONS TO THIS REPORT**

5  45.   I intend to review and consider any other additional information provided to me after the production

6        of this report and will supplement my analysis and conclusions if asked to do so.

7  **M.    EXHIBITS**

8  46.   **Exhibits 3-S through 53-S** are attached to this report and support my analyses and opinions in this

9        matter.

10  **N.    PROFESSIONAL ARRANGEMENT**

11  47.   My work for expert services provided in this matter is charged at a standard billing rate of $550 per

12        hour and is in no way contingent on the outcome of this matter. In addition, I will be reimbursed for

13        all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this

14        case.

15

16

17    May 8, 2012                                    Terry L. Musika, CPA

18

19

20

21

22

23

24

25

26

27

28

**INVOTEX** ®
GROUP

**EXHIBIT 1**

# Terry L. Musika, CPA, MPA

Terry L. Musika
Managing Director

Invotex Group
1637 Thames Street
Baltimore, Maryland 21231
Tel  410 824-0145
Fax  410 752-7227

tmusika@invotex.com

**Education and Professional**

- BS, 1970, Indiana University
- Master of Public Affairs in Public Finance, 1974, Indiana University Graduate School of Public and Environmental Affairs
- Certified Public Accountant (CPA), licensed in MD

**Employment**

- Invotex Group
- Maryland First Financial Services Corp. and Intellectual Property Management & Finance, LLC
- Navigant Consulting, Inc.
- PENTA Advisory Services, LLC
- C.W. Amos & Company, LLC
- Maryland First Financial Services Corp.
- Coopers & Lybrand
- Peat Marwick & Mitchell

**Professional Associations**

- American Institute of Certified Public Accountants
- Maryland Association of Certified Public Accountants
- Licensing Executives Society

## Current Position

Mr. Musika is a Managing Director and co-founder of Invotex Group. Mr. Musika serves a broad range of client engagements involving matters of accounting, finance, valuation and general business planning and restructuring.

## Professional Experience

Mr. Musika has served the accounting profession in a variety of roles and responsibilities for over 35 years. His experience includes every level of the accounting and auditing profession from staff level auditor to National Audit Partner in one of the world's largest international accounting firms. Mr. Musika's experience includes 15 years as an auditor and consultant in a wide range of industries for two international accounting firms and one regional accounting firm. Mr. Musika's prior "Big 4" public accounting background includes five years with Peat, Marwick and Mitchell (predecessor of KPMG) as auditor and consultant and seven years with Coopers & Lybrand (predecessor of PricewaterhouseCoopers) as a national research consultant, audit partner and Partner-In-Charge of the Firm's Baltimore Business Investigative Services Practice. Mr. Musika's audit and consulting experience includes both private and public companies from various industries and numerous governmental entities. Mr. Musika also established and served as the Member-in-Charge of the consulting practice for C.W. Amos & Company, a regional accounting firm.

## Federal And State Court Appointments

Mr. Musika has been appointed by both Federal and State Court Judges on numerous occasions to provide the court systems with a range of trustee duties and services. Mr. Musika has served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, Liquidating and Paying Agent. Mr. Musika has served the state court system as Receiver, Special Master and Court Appointed Special Advocate. Mr. Musika also served as a member of the Panel of Chapter 7 Trustees for the U.S. Trustee in Maryland for eight years.

## Business Founder, Owner And Operator

Mr. Musika has formed, owned and operated four separate companies. Mr. Musika founded both Maryland First Financial

Services Corp. and Intellectual Property Management & Finance, LLC, which were combined and now operate as Invotex Group. Previously, Mr. Musika owned and operated Central Data Technologies, a proprietary database company that maintained a private database of financial information and regional economic data on Chapter 11 bankruptcies.  Mr. Musika also founded and served as President and CEO of PENTA Advisory Services ("PENTA"), a national financial and economic consulting firm. Mr. Musika began PENTA as the first employee and eventually built the company into 125 accounting, economic and legal professionals with offices in Washington DC, Baltimore, Richmond, Wilmington, New York and Atlanta. Mr. Musika eventually sold PENTA to Navigant Consulting, Inc.

### Expert Testimony

During the past 35 years Mr. Musika has provided expert testimony in over 200 separate proceedings before 47 different Federal District Courts throughout the U.S., nine separate state courts, the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, the American Arbitration Association, and the U.S. International Trade Commission. Mr. Musika's intellectual property experience encompasses patent, trademark, trade secret and copyright matters. He has performed numerous damage analyses including both reasonable royalty and lost profit calculations. Mr. Musika's antitrust damage opinion and expert qualifications were recently cited in a published opinion by The United States Court of Appeals for the Third Circuit.

### Papers, Publications, and Presentations

- "IP Valuation," November 16, 2004, presentation to the UMBC Technology Center (with Debora R. Stewart, CPA).
- "Strategic Valuation Issues Related to the Sale and Purchase of IP Out of Bankruptcy," September 18, 2003, presentation to the BioAlliance Network of the Tech Council of Maryland (with Charles R. Goldstein, CPA).
- "Tax Implications of Intellectual Asset Management," March 12, 2002, Kilpatrick Stockton LLP's IP Masters Teleconference Series (with John K. Lyons, CPA).
- "Valuation of Intellectual Property," May 22, 2001, presentation at the Licensing Intellectual Property Conference of the American Conference Institute.
- "Don't Shoot the Messenger!  A Response to the Bankruptcy Information on the Internet Debate," Bankruptcy Court Decisions Weekly News & Comment, September 15, 1998.
- "Creating A Company to Capitalize on Your Technology," January 14, 1998, presentation to the Washington, DC Chapter of the Licensing Executives Society.

- "How Creditors Can Use Regional Bankruptcy Data," <u>Business Credit</u>, October 1997.  (with Charles R. Goldstein, CPA).
- "Valuation of Intellectual Properties – Case Studies," 1997, Licensing Executives Society (LES) Annual Meeting.
- "Approaches to Prejudgment Interest Awards Vary by Court," <u>Legal Times Special Report on Intellectual Property</u>, April 7, 1997 (with Gregory E. Smith, CPA).
- "Valuation of Intellectual Property Assets," 1996, presentation to the Greater Richmond Intellectual Property Law Association (GRIPLA).
- "Prejudgment Interest in Patent Damage Decisions, A Quantitative Analysis," <u>ALI-ABA Trial of A Patent Case Study Materials</u>, September 1995.
- "Trial of A Patent Case," 1993-1995, faculty member and presenter for the American Law Institute — American Bar Association (ALI-ABA), sponsored with the cooperation of the Intellectual Property Law Association of Chicago.
- "Implementing SOP 90-7 for Bookkeeping and Financial Reporting of Companies in Chapter 11." <u>The Journal of Professional Bookkeeping and Management</u>, May 1992 (with Jalal Soroosh, Ph.D.).
- "Financial Reporting Under Chapter 11," <u>The CPA Journal</u>, December 1991.
- "AICPA's Statement of Position on 'Financial Reporting By Entities in Reorganization Under Bankruptcy Code'" <u>NABTALK</u> 1991, pp. 15-20.
- "Montgomery's Auditing - Tenth Edition," 1985 (contributing author).



EXHIBIT 2-S

## TERRY L. MUSIKA, CPA, MPA
## TESTIMONY, AFFIDAVITS AND EXPERT REPORTS
## 2008 – PRESENT

### Litigation Cases

- Expert Reports and Declaration in Apple Inc. v. Samsung Electronics Co., Ltd; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC, Case No. 11-cv-01846-LHK, U.S. District Court for the Northern District of California, San Jose Division (reports filed in 2012; declaration filed in 2011).

- Expert Report in Adrienne Andros Ferguson, et al. v. Donald E. Stout, et al., Case No. 08-09767CA, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida Complex Business Litigation Section (report filed in 2011).

- Trial and Deposition Testimony and Expert Report in MeadWestvaco Corporation and MeadWestvaco Calmar, Inc. v. Rexam PLC, Rexam Beauty and Closures Inc., Valois S.A.S., and Valois of America, Inc., Case No. 1:10-cv-00511, U.S. District Court for the Eastern District of Virginia, Alexandria Division (trial and deposition testimony given and report filed in 2011).

- Expert Report in VS Technologies, LLC v. Twitter, Inc., Case No. 2:11-CV-43, U.S. District Court for the Eastern District of Virginia, Norfolk Division (report filed in 2011).

- Deposition Testimony and Expert Reports and Declaration in Bed Bath & Beyond, Inc. v. Sears Brands, LLC, Civil Action No. 08 CV 5839-SDW-MCA, U.S. District Court for the District of New Jersey (deposition testimony given and reports filed in 2011; declaration filed in 2010).

- Deposition Testimony and Expert Report in Fujifilm Corporation v. HTC Corporation and HTC America, Inc., Case No. 09-cv-4109, U.S. District Court for the Northern District of Texas, Houston Division (deposition testimony given and report filed in 2011).

- Trial and Deposition Testimony and Expert Reports in Chevron U.S.A., Inc. v. United States, Case No. 1:04cv1365C, U.S. Court of Federal Claims (trial and deposition testimony given and reports filed in 2011).

- Deposition Testimony and Expert Report in re: Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation, MDL No. 1668, in re: Fannie Mae Securities Litigation, Consolidated Civil Action No. 1:04-CV-01639, U.S. District Court for the District of Columbia (deposition testimony given in 2011; report filed in 2010).

- Trial and Deposition Testimony and Damage Summary in Altavion, Inc. v. Konica-Minolta Holdings, Inc.; Konica-Minolta Business Solutions, USA, Inc.; Konica-Minolta Business

Technologies, Inc.; Konica-Minolta Technology Center, Inc.; Konica-Minolta Systems Laboratory, Inc.; Paul Cattrone; and Does 1 through 50, inclusive, Case No. CIV 467662, Superior Court of the State of California, County of San Mateo (trial and deposition testimony given and summary exchanged in 2010).

- Deposition Testimony and Expert Report in Software Tree, LLC v. Red Hat, Inc., Hewlett-Packard Company, Genuitec, L.L.C., and Dell, Inc., Case No. 6:09-cv-00097-LED, U.S. District Court for the Eastern District of Texas, Tyler Division (deposition testimony given and report filed in 2010).

- Trial and Deposition Testimony, Declaration and Expert Reports in The SCO Group, Inc. v. Novell, Inc., Case No. 2:04cv00139, U.S. District Court for the District of Utah, Central Division (trial and deposition testimony given and declaration filed in 2010; reports filed in 2007).

- Deposition Testimony and Expert Report in The Pep Boys – Manny, Moe & Jack v. GMAC Commercial Finance LLC, Civil Action No. 08-3342 (RBS), U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given and report filed in 2009).

- Deposition Testimony and Expert Report in Cordance Corporation v. Amazon.com, Inc. and Amazon Web Services, LLC, C.A. No. 06-491-MPT, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2009).

- Expert Report in Hitachi Plasma Patent Licensing Co., Ltd. v. LG Electronics, Inc. and LG Electronics U.S.A., Inc. and LG Electronics, Inc. and LG Electronics U.S.A., Inc. v. Hitachi Plasma Patent Licensing Co., Ltd., Civil Action No. 2:07-CV-155 (CE), U.S. District Court for the Eastern District of Texas (Marshall Division) (report filed in 2009).

- Trial and Deposition Testimony and Expert Reports in American Savings Bank, F.A., et al. v. United States, Civil Action No. 92-872 C, U.S. Court of Federal Claims (trial and deposition testimony given in 2009; reports filed in 2000 and 2009).

- Trial and Deposition Testimony and Expert Reports in Lockheed Martin Corporation v. L-3 Communications Corporation and L-3 Communications Integrated Systems, L.P., Case No. 1:05-cv-0902, U.S. District Court for the Northern District of Georgia (Atlanta Division) (trial testimony given in 2009; deposition testimony given and reports filed in 2007).

- Deposition Testimony and Expert Report in Bank of America, N.A., as Successor by merger to Fleet National Bank as Agent for a Syndicate of Lenders v. Deloitte & Touche LLP, Civil Action No. 06-2218-BLS1, Superior Court for the Commonwealth of Massachusetts (deposition testimony given and report filed in 2009).

- Deposition Testimony and Expert Report in Dennis J. Buckley, as Trustee of the DVI Liquidating Trust v. Deloitte & Touche USA LLP and Deloitte & Touche LLP, Case No. 1:06-cv-03291-SHS, U.S. District Court for the Southern District of New York (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Report In Re: DVI, Inc. Securities Litigation, Case No. 2:03-CV-05336-LDD, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Report in WM High Yield Fund, WM Income Fund, AT High Yield Fund, WM VT Income Fund, AT Income Fund, Evergreen Funding Ltd./Evergreen Funding Corp., and Stellar Funding Ltd. v. Michael A. O'Hanlon, Steven R. Garfinkel, Richard Miller, Anthony J. Turek, John P. Boyle, Terry W. Cady, Matthew Colasanti, Raymond Fear, Gerald Cohn, Harry T. J. Roberts, William S. Goldberg, John E. McHugh, Nathan Shapiro, Deloitte & Touche LLP, Harold Neas, Oncure Technologies Corporation, Jeffrey Goffman, Presgar Imaging LLC, and Dolphin Medical Inc., Case No. 04-CV-3423, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Reports in McKesson Information Solutions LLC v. Epic Systems Corporation, Civil Action No. 1:06-cv-2965 (JTC), U.S. District Court for the Northern District of Georgia, Atlanta Division (deposition testimony given in 2009; reports filed in 2008 and 2009).

- Trial and Deposition Testimony and Expert Report in Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company (Plaintiffs) v. Lincoln National Life Insurance Company (Defendant) and Lincoln National Life Insurance Company (Defendant/Counterclaimant) v. Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company (Plaintiffs/Counterclaim Defendants), Case No. C 06-110-MWB, U.S. District Court for the Northern District of Iowa, Cedar Rapids Division (trial testimony given in 2009; deposition testimony given and report filed in 2008).

- Supplemental Declaration, Trial and Deposition Testimony and Expert Reports in Pioneer Corporation v. Samsung SDI Co., Ltd., Samsung Electronics Co., Ltd., Samsung SDI America, Inc., and Samsung Electronics America, Inc., Civil Action No. 2:06-CV-384 (DF), U.S. District Court for the Eastern District of Texas, Marshall Division (declaration filed, trial and deposition testimony given and reports filed in 2008).

- Deposition Testimony and Expert Report in Kevin Keithley and TREN Technology Holdings, LLC v. The Homestore.com, Inc., The National Association of Realtors, and The National Association of Home Builders of the United States, Case No. C03-04447 SI (EDL), U.S. District Court for the Northern District of California, San Francisco Division (deposition testimony given and report filed in 2008).

- Expert Report in Cisco Systems, Inc. and Cisco Technology, Inc. v. Telcordia Technologies, Inc., Civil Action No. 07-113-GMS, U.S. District Court for the District of Delaware (Wilmington) (report filed in 2008).

- Deposition Testimony and Expert Report in Lincoln National Life Insurance Company v. Transamerica Financial Life Insurance Company, Cause No. 1:04-CV-396-TLS-RBC, U.S.

District Court for the Northern District of Indiana, Fort Wayne Division (deposition testimony given and report filed in 2008).

- Deposition Testimony and Expert Report in Pioneer Corporation (Plaintiff) v. Samsung SDI Co., Ltd., Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. (Defendants) and Samsung SDI Co., Ltd. (Counterclaim Plaintiff) v. Pioneer Corporation, Pioneer Electronics (USA) Inc., and Pioneer Electronics Technology, Inc. (Counterclaim Defendants), Civil Action No. 2:07-CV-170 (DF), U.S. District Court for the Eastern District of Texas, Marshall Division (deposition testimony given and report filed in 2008).

- Arbitration Proceeding Testimony in the matter of the Arbitration between Syngenta Crop Protection, Inc. and LG Life Sciences, Ltd. before the American Arbitration Association, Case No. 16 171 Y 00954 06 (arbitration proceeding testimony filed in 2008).

- Deposition Testimony and Expert Report in Oracle Corporation and Oracle U.S.A., Inc. v. EpicRealm Licensing, LP, Case No. 06-414-SLR, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2008).

- Trial and Deposition Testimony and Expert Report in Tessera, Inc. (Claimant) v. Amkor Technology, Inc. (Respondent) and Amkor Technology, Inc. (Counter-claimant) v. Tessera, Inc. (Counter-respondent), Ref. No. 14 268/EBS, International Court of Arbitration of the International Chamber of Commerce (trial testimony given in 2008; deposition testimony given and report filed in 2007).

- Expert Report in the matter of Franklin D. Raines, J. Timothy Howard and Leanne G. Spencer (Fannie Mae officers), Notice Number 2006-1, U.S. Office of Federal Housing Enterprise Oversight (report filed in 2008).

- Expert Report in Ron Nystrom v. Trex Company, Inc., The Home Depot, Inc., and Snavely Forest Products, Inc., Case No. 2:06-cv-569, U.S. District Court for the Eastern District of Virginia, Norfolk Division (report filed in 2008).

- Deposition Testimony and Expert Reports in Parker-Hannifin Corporation, et al. v. Wix Filtration Corporation, Case No. 1:06-CV-0098-LJO-WMW, U.S. District Court for the Eastern District of California, Fresno Division (deposition testimony given in 2008; reports filed in 2007 and 2008).

- Expert Reports in Eric Shaw, receiver of the Estate of Nikota USA, Inc. v. Pep Boys, Inc., Case No. 06-0550, U.S. District Court for the Eastern District of Pennsylvania (reports filed in 2007 and 2008).

- Trial and Deposition Testimony and Expert Reports in Energy Transportation Group, Inc. v. Sonic Innovations, Inc., et al., Case No. 05-422 (GMS), U.S. District Court for the District of Delaware (trial testimony given in 2008; deposition testimony given in 2007; reports filed in 2007 and 2008).

- Expert Reports in Silicon Graphics, Inc. v. ATI Technologies Inc., ATI Technologies ULC and Advanced Micro Devices, Inc., Case No. 06-C-0611-C, U.S. District Court for the Western District of Wisconsin (reports filed in 2007 and 2008).

4

- Deposition Testimony and Expert Report in Elan Pharmaceutical International Limited v. Abraxis Bioscience, Inc., Case No. 06-438-GMS, U.S. District Court for the District of Delaware (Wilmington) (deposition testimony given in 2008; report filed in 2007).

- Expert Reports in Morning Sun, Inc. d/b/a Collegiate Graphics v. Eagle Promotions, LLC et al., Case No. A505399, Superior Court of State of Nevada (reports filed in 2007 and 2008).

**Bankruptcy Cases**

- Trial and Deposition Testimony and Expert Report in re: Railworks Corporation, et al. (Debtors), Case Nos. 01-6-4463-SD through 01-6-4485-SD (Chapter 11) and Zvi Guttman (Litigation Trustee, Plaintiff) v. Steven G. Hutchinson, Douglas W. Hutchinson and C.C. Hutchinson (Defendants), Adversary No. 03-5794, U.S. Bankruptcy Court for the District of Maryland (Baltimore Division) (trial and deposition testimony given in 2010; report filed in 2009).

*Last updated 4.17.12*

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 3-S**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | |
| **Apple Production** | | |
| APLNDC0003149765 | APLNDC0003149778 | iPad US & WW Sales Data, through Q2FY12 |
| APLNDC0003149779 | APLNDC0003149794 | iPad and iPod Touch, US & WW Sales Data, through Q2FY12 |
| APLNDC0003149795 | APLNDC0003149808 | GAAP Line of Business Reports for iPhone, iPad, and iPods, through Q2FY12 |
| APLNDC0003149809 | APLNDC0003149814 | iPhone US & WW Sales Data, Q3FY07-Q2FY12 |
| APLNDC0003149815 | APLNDC0003149828 | GAAP Line of Business Reports for iPhone, iPad, and iPods, through Q2FY12 |
| | | |
| **Samsung Production** | | |
| SAMNDCA00176053 | SAMNDCA00176171 | Translation of SAMNDCA00176053-57, SAMNDCA00176067, SAMNDCA00176070-71, SAMNDCA00176073, SAMNDCA00176076 and SAMNDCA00176126 |
| SAMNDCA00191811 | SAMNDCA00191987 | Touch Portfolio: Rollout Strategy, Recommendation Based On Consumer Insight, Final Presentation, 12/17/2008 |
| SAMNDCA00202336 | SAMNDCA00202380 | Translation of SAMNDCA00202336-47, SAMNDCA00202358, SAMNDCA00202363, and SAMNDCA00202377-80 |
| SAMNDCA00274819 | SAMNDCA00274854 | PowerPoint presentation from The Boston Consulting Group - Lessons from Apple, 11/3/2010 |
| SAMNDCA00281538 | SAMNDCA00281623 | "iPhone 4S Launch Report," 10/17/2011 |
| SAMNDCA00382463 | SAMNDCA00382463 | Translation of SAMNDCA00382463 |
| SAMNDCA00385801 | SAMNDCA00385802 | Translation of SAMNDCA00385801-02 |
| SAMNDCA00396884 | SAMNDCA00396916 | Samsung sales spreadsheet |
| SAMNDCA00396917 | SAMNDCA00396948 | Samsung sales spreadsheet |
| SAMNDCA00396949 | SAMNDCA00396978 | Strategy Analytics: Value Share: Global Handset Revenue and Profit, January 2012 |
| SAMNDCA00397189 | SAMNDCA00397443 | |
| SAMNDCA00397444 | SAMNDCA00397729 | |
| SAMNDCA00397730 | SAMNDCA00398015 | |
| SAMNDCA00398016 | SAMNDCA00398257 | |
| SAMNDCA00398258 | SAMNDCA00398511 | |
| SAMNDCA00398512 | SAMNDCA00398778 | |
| SAMNDCA00398779 | SAMNDCA00399064 | |
| SAMNDCA00399065 | SAMNDCA00399333 | |
| SAMNDCA00399334 | SAMNDCA00399577 | |
| SAMNDCA00399578 | SAMNDCA00399826 | |
| SAMNDCA00399827 | SAMNDCA00400112 | |
| SAMNDCA00400113 | SAMNDCA00400114 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Balance Sheets, December 31, 2009 and 2008 |
| SAMNDCA00400115 | SAMNDCA00400116 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the years ended December 31, 2009 and 2008 |
| SAMNDCA00400117 | SAMNDCA00400189 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements, December 31, 2009 and 2008 |
| SAMNDCA00400190 | SAMNDCA00400190 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, years ended December 31, 2009 and 2008 |
| SAMNDCA00400191 | SAMNDCA00400192 | Samsung Electronics Co., Ltd. Non-Consolidated Balance Sheets, December 31, 2009 and 2008 |
| SAMNDCA00400193 | SAMNDCA00400195 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Cash Flows, for the years ended December 31, 2009 and 2008 |
| SAMNDCA00400196 | SAMNDCA00400196 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Appropriations of Retained Earnings, for the years ended December 31, 2009 and 2008, Date of appropriations: March 19, 2010 and March 13, 2009 |
| SAMNDCA00400197 | SAMNDCA00400257 | Samsung Electronics Co., Ltd. Notes to the Non-Consolidated Financial Statements, December 31, 2009 and 2008 |
| SAMNDCA00400258 | SAMNDCA00400259 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Income, for the years ended December 31, 2009 and 2008 |
| SAMNDCA00400260 | SAMNDCA00400261 | Samsung Electronics Co., Ltd. Non-Consolidated Balance Sheets, March 31, 2009 and December 31, 2008 |
| SAMNDCA00400262 | SAMNDCA00400264 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Cash Flows, for the three-month periods ended March 31, 2009 and 2008 |
| SAMNDCA00400265 | SAMNDCA00400287 | Samsung Electronics Co., Ltd. Non-Consolidated Financial Statements, March 31, 2009 and 2008, and December 31, 2008 |
| SAMNDCA00400288 | SAMNDCA00400289 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Income, for the three-month periods ended March 31, 2009 and 2008 |
| SAMNDCA00400290 | SAMNDCA00400291 | Samsung Electronics Co., Ltd. Non-Consolidated Balance Sheets, June 30, 2009 and December 31, 2008 |
| SAMNDCA00400292 | SAMNDCA00400293 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Cash Flows, for the six-month periods ended June 30, 2009 and 2008 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                        **EXHIBIT 3-S**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00400294 | SAMNDCA00400317 | Samsung Electronics Co., Ltd. Notes to the Non-Consolidated Financial Statements, June 30, 2009 and 2008, and December 31, 2008 |
| SAMNDCA00400318 | SAMNDCA00400319 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Income, for the three-month and six-month periods ended June 30, 2009 and 2008 |
| SAMNDCA00400320 | SAMNDCA00400321 | Samsung Electronics Co., Ltd. Non-Consolidated Balance Sheets, September 30, 2009 and December 31, 2008 |
| SAMNDCA00400322 | SAMNDCA00400323 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Cash Flows, for the nine-month periods ended September 30, 2009 and 2008 |
| SAMNDCA00400324 | SAMNDCA00400347 | Samsung Electronics Co., Ltd. Notes to the Non-Consolidated Financial Statements, September 30, 2009 and 2008, and December 31, 2008 |
| SAMNDCA00400348 | SAMNDCA00400349 | Samsung Electronics Co., Ltd. Non-Consolidated Statements of Income, for the three-month and nine-month periods ended September 30, 2009 and 2008 |
| SAMNDCA00400350 | SAMNDCA00400352 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, March 2010 and December 2009 |
| SAMNDCA00400353 | SAMNDCA00400354 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statement of Cash Flows, for the three months ended March 31, 2010 and 2009 |
| SAMNDCA00400355 | SAMNDCA00400394 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400395 | SAMNDCA00400398 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statement of Changes in Equity, 2010 and 2009 1Q |
| SAMNDCA00400399 | SAMNDCA00400399 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, for the three months ended March 31, 2010 and 2009 |
| SAMNDCA00400400 | SAMNDCA00400402 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, June 2010 and December 2009 |
| SAMNDCA00400403 | SAMNDCA00400404 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the six months ended June 30, 2010 and 2009 |
| SAMNDCA00400405 | SAMNDCA00400446 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400447 | SAMNDCA00400450 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes in Equity, 2010 and 2009 2Q |
| SAMNDCA00400451 | SAMNDCA00400451 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, for the three-month periods ended June 30, 2010 and 2009 |
| SAMNDCA00400453 | SAMNDCA00400455 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, September 2010 and December 2009 |
| SAMNDCA00400456 | SAMNDCA00400457 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the nine months ended September 30, 2010 and 2009 |
| SAMNDCA00400458 | SAMNDCA00400499 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400500 | SAMNDCA00400503 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes in Equity, 2010 and 2009 3Q |
| SAMNDCA00400504 | SAMNDCA00400505 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, for the three-month and nine-month periods ended September 30, 2010 and 2009 |
| SAMNDCA00400506 | SAMNDCA00400507 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the years ended December 31, 2010 and 2009 |
| SAMNDCA00400508 | SAMNDCA00400510 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, December 2010 and 2009, and January 2009 |
| SAMNDCA00400511 | SAMNDCA00400583 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400584 | SAMNDCA00400587 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes in Equity, 2010 and 2009 |
| SAMNDCA00400588 | SAMNDCA00400588 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, 2010 and 2009 |
| SAMNDCA00400589 | SAMNDCA00400590 | Samsung Electronics Co., Ltd. Separate Statements of Cash Flows, for the years ended December 31, 2010 and 2009 |
| SAMNDCA00400591 | SAMNDCA00400593 | Samsung Electronics Co., Ltd. Separate Statements of Financial Position, December 2010 and 2009, and January 2009 |
| SAMNDCA00400594 | SAMNDCA00400655 | Samsung Electronics Co., Ltd. Notes to the Separate Financial Statements |
| SAMNDCA00400656 | SAMNDCA00400659 | Samsung Electronics Co., Ltd. Separate Statements of Changes in Equity, 2010 and 2009 |
| SAMNDCA00400660 | SAMNDCA00400660 | Samsung Electronics Co., Ltd. Separate Statements of Income, 2010 and 2009 |
| SAMNDCA00400661 | SAMNDCA00400663 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, March 2011 and December 2010 |
| SAMNDCA00400664 | SAMNDCA00400665 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the three-months ended March 31, 2011 and 2010 |
| SAMNDCA00400666 | SAMNDCA00400694 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 3-S**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00400695 | SAMNDCA00400698 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes of Equity, 2011 and 2010 |
| SAMNDCA00400699 | SAMNDCA00400699 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, for the three-months ended March 31, 2011 and 2010 |
| SAMNDCA00400700 | SAMNDCA00400702 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, June 2011 and December 2010 |
| SAMNDCA00400703 | SAMNDCA00400704 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the six-months ended June 30, 2011 and 2010 |
| SAMNDCA00400705 | SAMNDCA00400734 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400735 | SAMNDCA00400738 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes of Equity, 2011 and 2010 |
| SAMNDCA00400739 | SAMNDCA00400739 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, for the three-months ended June 30, 2011 and 2010 |
| SAMNDCA00400740 | SAMNDCA00400742 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, September 2011 and December 2010 |
| SAMNDCA00400743 | SAMNDCA00400744 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the nine-months ended September 30, 2011 and 2010 |
| SAMNDCA00400745 | SAMNDCA00400773 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400774 | SAMNDCA00400777 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes of Equity, 2011 and 2010 |
| SAMNDCA00400778 | SAMNDCA00400778 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income, for the three-months ended September 30, 2011 and 2010, and the nine-months ended September 30, 2011 and 2010 |
| SAMNDCA00400779 | SAMNDCA00400780 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Financial Position, December 2011 and 2010 |
| SAMNDCA00400781 | SAMNDCA00400782 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Cash Flows, for the years ended December 31, 2011 and 2010 |
| SAMNDCA00400783 | SAMNDCA00400852 | Samsung Electronics Co., Ltd. and Subsidiaries Notes to the Consolidated Financial Statements |
| SAMNDCA00400853 | SAMNDCA00400856 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Changes of Equity, 2011 and 2010 |
| SAMNDCA00400857 | SAMNDCA00400858 | Samsung Electronics Co., Ltd. and Subsidiaries Consolidated Statements of Income and Comprehensive Income, 2011 and 2010 |
| SAMNDCA00400859 | SAMNDCA00400906 | 2010 Samsung Electronics Annual Report |
| SAMNDCA00400907 | SAMNDCA00400922 | Earnings Release Q4 2010, Samsung Electronics, January 2011 |
| SAMNDCA00400923 | SAMNDCA00400938 | Earnings Release Q2 2010, Samsung Electronics, July 2010 |
| SAMNDCA00400939 | SAMNDCA00400954 | Earnings Release Q3 2010, Samsung Electronics, October 2010 |
| SAMNDCA00400955 | SAMNDCA00400970 | Earnings Release Q1 2011, Samsung Electronics, April 2011 |
| SAMNDCA00400971 | SAMNDCA00400986 | Earnings Release Q2 2011, Samsung Electronics, July 2011 |
| SAMNDCA00400987 | SAMNDCA00401002 | Earnings Release Q3 2011, Samsung Electronics, October 2011 |
| SAMNDCA00401003 | SAMNDCA00401013 | Earnings Release Q4 2011, Samsung Electronics, January 2012 |
| SAMNDCA00401014 | SAMNDCA00401025 | Earnings Release Q1 2012, Samsung Electronics, April 2012 |
| SAMNDCA00401026 | SAMNDCA00401044 | Earnings Release Q1 2010, Samsung Electronics, April 2010 |
| SAMNDCA00401045 | SAMNDCA00401059 | Earnings Release Q4 2009, Samsung Electronics, January 2010 |
| SAMNDCA00401060 | SAMNDCA00401074 | Earnings Release Q2 2009, Samsung Electronics, July 2009 |
| SAMNDCA00401075 | SAMNDCA00401089 | Earnings Release Q3 2009, Samsung Electronics, October 2009 |
| SAMNDCA00401090 | SAMNDCA00401095 | |
| SAMNDCA00401096 | SAMNDCA00401145 | By carrier pricing points, 11/30/2009 |
| SAMNDCA00401146 | SAMNDCA00401158 | Pumi Report, 2/15/2012, translated |
| SAMNDCA00401146 | SAMNDCA00401158 | Sales Price (Pricing) Pumi (Proposal), Q2 2012, partially translated |
| SAMNDCA00401146 | SAMNDCA00401158 | |
| SAMNDCA00401147 | SAMNDCA00401147 | Translation of SAMNDCA00401147 |
| SAMNDCA00401159 | SAMNDCA00401219 | By carrier pricing points, 2/18/2012 |
| SAMNDCA00401220 | SAMNDCA00401227 | |
| SAMNDCA00401228 | SAMNDCA00401283 | By carrier pricing points, 3/15/2010 |
| SAMNDCA00401284 | SAMNDCA00401292 | |
| SAMNDCA00401293 | SAMNDCA00401350 | By carrier pricing points, 6/3/2010 |
| SAMNDCA00401351 | SAMNDCA00401361 | |
| SAMNDCA00401362 | SAMNDCA00401419 | By carrier pricing points, 9/6/2010 |
| SAMNDCA00401420 | SAMNDCA00401434 | Pumi Report, 11/19/2010 |
| SAMNDCA00401420 | SAMNDCA00401434 | |
| SAMNDCA00401435 | SAMNDCA00401490 | By carrier pricing points, 11/19/2010 |
| SAMNDCA00401491 | SAMNDCA00401505 | Pumi Report, 2/28/2011, partially translated |
| SAMNDCA00401491 | SAMNDCA00401505 | |
| SAMNDCA00401506 | SAMNDCA00401562 | By carrier pricing points, 2/25/2011 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                              **EXHIBIT 3-S**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00401563 | SAMNDCA00401577 | Pumi Report, 6/13/2011, partially translated |
| SAMNDCA00401563 | SAMNDCA00401577 | |
| SAMNDCA00401578 | SAMNDCA00401637 | By carrier pricing points, 6/13/2011 |
| SAMNDCA00401638 | SAMNDCA00401651 | Sales Pumi Report, 8/26/2011, partially translated |
| SAMNDCA00401638 | SAMNDCA00401651 | |
| SAMNDCA00401652 | SAMNDCA00401713 | By carrier pricing points, 8/26/2011 |
| SAMNDCA00401714 | SAMNDCA00401724 | Market Trend and API Trend, translated |
| SAMNDCA00401714 | SAMNDCA00401724 | Pumi Report, 1/5/2012, partially translated |
| SAMNDCA00401714 | SAMNDCA00401724 | |
| SAMNDCA00401715 | SAMNDCA00401715 | Translation of SAMNDCA00401715 |
| SAMNDCA00401725 | SAMNDCA00401785 | By carrier pricing points, 1/5/2012 |
| SAMNDCA00401786 | SAMNDCA00401852 | |
| SAMNDCA00401853 | SAMNDCA00401904 | "2011 Business Strategy," December 2010, translated and untranslated version |
| SAMNDCA00401853 | SAMNDCA00401904 | |
| SAMNDCA00401905 | SAMNDCA00401989 | Mobile Communication Division, "2012 Business Strategy," October 2011, translated and untranslated version |
| SAMNDCA00401905 | SAMNDCA00401989 | |
| SAMNDCA00401990 | SAMNDCA00402073 | STA 2012 Business Plan, 11/8/2011 |
| SAMNDCA00402074 | SAMNDCA00402074 | Samsung Sales by product |
| SAMNDCA00402075 | SAMNDCA00402075 | Samsung Sales by product |
| SAMNDCA00402076 | SAMNDCA00402076 | Samsung Sales by carrier |
| SAMNDCA00402077 | SAMNDCA00402104 | '11 Aug Management Report |
| SAMNDCA00402105 | SAMNDCA00402122 | '11 December Management Report |
| SAMNDCA00402123 | SAMNDCA00402141 | '11 November Management Report |
| SAMNDCA00402142 | SAMNDCA00402157 | '11 October Management Report |
| SAMNDCA00402158 | SAMNDCA00402177 | September Target Plan (T09) Variance Analysis |
| SAMNDCA00402178 | SAMNDCA00402179 | |
| SAMNDCA00532560 | SAMNDCA00532563 | Translation of SAMNDCA00532560-63 |
| SAMNDCA10173102 | SAMNDCA10173116 | Sales Price Pumi, Q1 2011, translated |
| SAMNDCA10198202 | SAMNDCA10198216 | Pumi Report, 2/28/2011 |
| SAMNDCA10247549 | SAMNDCA10247552 | Translation of SAMNDCA10247549-52 |
| SAMNDCA10320161 | SAMNDCA10320162 | Translation of SAMNDCA10320161-62 |
| SAMNDCA10422392 | SAMNDCA10422398 | Translation of SAMNDCA10422392-98 |
| SAMNDCA10805169 | SAMNDCA10805175 | Touch Portfolio: Key Takeaways, Final Presentation, 12/24/2008, translated and untranslated versions |
| SAMNDCA10809390 | SAMNDCA10809460 | Feasibility Review on Standalone AP Business for Smart Phone Market, September 2007, translated and untranslated versions. |
| SAMNDCA10907803 | SAMNDCA10907805 | Translation of SAMNDCA10907803-05 |
| SAMNDCA11374409 | SAMNDCA11374413 | Translation of SAMNDCA11374409-13 |
| SAMNDCA11515578 | SAMNDCA11515705 | "JK Shin Review," 1/18/2010 |
| SAMNDCA-D-0000001 | SAMNDCA-D-0000001 | Samsung native document |
| SAMNDCA-D-0000002 | SAMNDCA-D-0000002 | Samsung native document |
| SAMNDCA-D-0000003 | SAMNDCA-D-0000003 | Samsung native document |
| SAMNDCA-D-0000004 | SAMNDCA-D-0000004 | Samsung native document |
| SAMNDCA-D-0000004 | SAMNDCA-D-0000004 | Translation of Korean text from SAMNDCA-D-0000004 |
| SAMNDCA-D-0000005 | SAMNDCA-D-0000005 | Samsung native document |
| SAMNDCA-D-0000006 | SAMNDCA-D-0000006 | Samsung native document |
| SAMNDCA-D-0000007 | SAMNDCA-D-0000007 | Samsung native document |
| SAMNDCA-D-0000008 | SAMNDCA-D-0000008 | Samsung native document |
| SAMNDCA-D-0000009 | SAMNDCA-D-0000009 | Samsung native document |
| SAMNDCA-D-0000010 | SAMNDCA-D-0000010 | Samsung native document |
| SAMNDCA-D-0000011 | SAMNDCA-D-0000011 | Samsung native document |
| SAMNDCA-D-0000011 | SAMNDCA-D-0000011 | Translation of Korean text from SAMNDCA-D-0000011 |
| SAMNDCA-D-0000012 | SAMNDCA-D-0000012 | Samsung native document |
| SAMNDCA-D-0000013 | SAMNDCA-D-0000013 | Samsung native document |
| SAMNDCA-D-0000013 | SAMNDCA-D-0000013 | Translation of Korean text from SAMNDCA-D-0000013 |
| SAMNDCA-D-0000014 | SAMNDCA-D-0000014 | Samsung native document |
| S-ITC-003006124 | S-ITC-003006249 | Translation of S-ITC-003006128 |
| | | |
| **Expert Reports** | | |
| SAMNDCA00397181 (00023590) | | Native file from the Expert Report of Michael J. Wagner |
| SAMNDCA00397182 (00023591) | | Native file from the Expert Report of Michael J. Wagner |
| SAMNDCA00397183 (00023592) | | Native file from the Expert Report of Michael J. Wagner |

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 37 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 3-S**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00397184 (00023593) | | Native file from the Expert Report of Michael J. Wagner |
| SAMNDCA00397185 (00023594) | | Native file from the Expert Report of Michael J. Wagner |
| SAMNDCA00397186 (00023595) | | Native file from the Expert Report of Michael J. Wagner |
| SAMNDCA00397187 (00023596) | | Native file from the Expert Report of Michael J. Wagner |
| SAMNDCA00397188 (00023597) | | Native file from the Expert Report of Michael J. Wagner |
| | | Corrected Expert Report of Michael J. Wagner, and corrected Exh bits 1-22, 4/20/12 |
| | | Expert Report of Michael J. Wagner, Volumes 1-14 and Exh bits 1-22, 4/16/2012 |
| | | Tab 2 of Michael J. Wagner Supplemental Report, Damages Model Updated Based on SAMNDCA00402075. |
| | | Tab 6 of Michael J. Wagner Supplemental Report, Damages Model Updated Based on SAMNDCA00402074. |
| | | |
| **Legal** | | |
| | | [Proposed] Order Granting Apple's Motion to Compel Production of Documents and Things, 2012-01-11 |
| | | Declaration of Melissa Chan in Support of Samsung's Administrative Motion to File Under Seal its Opposition to Apple's Motion to Compel Documents and Things, 2012-01- |
| | | Deposition of Dae Il "Dale" Sohn, exh bits 2711-2729 (except for exhibits 2718-2719 and 2722-2723) and previously marked exhibits, 4/20/2012 |
| | | Deposition of Gee-Sung Choi, exhibits 2638-2643 and previously marked exh bits, 4/17/2012 |
| | | Deposition of Joon Kyo "Joseph" Cheong, exhibits 2645-2656 and previously marked exhibits, 4/18/2012 |
| | | Deposition of Seunghwan Cho, exhibits 2675-2683 and previously marked exhibits, 4/19/2012 |
| | | Deposition of Timothy Benner, exhibits 2575-2580, 3/30/2012 |
| | | Deposition of Tony Blevins, and exhibit 1-7, 4/3/2012 |
| | | Deposition of Won-Pyo Hong, exhibits 2705-2710 and previously marked exhibits, 4/19/2010 |
| | | Joint Case Management Conference Statement, 2012-04-30 |
| | | Joint Status Report, 2012-04-23 |
| | | Order (1) Granting in Part Apple's Motion for 37(B)(2) Sanctions re September 28 and December 22 Discovery Orders; (2) Granting-in-part Apple's Motion for 37(B)(2) Sanctions re Damages Discovery, 2012-04-23 |
| | | Order Granting Apple's Motion for 37(B)(2) Sanctions Re December 22 Discovery Order, 2012-05-04 |
| | | Order Granting in Part Plaintiff's Motion to Compel Depositions, and Granting in Part Defendant's Cross Motion for a Protective Order, 2012-04-04 |
| | | Order Granting In Part Plaintiff's Motion to Compel Timely Production of Foreign-Language Documents, 2012-03-08 |
| | | Order Re Discovery Motions, 2012-01-27 |
| | | Order referring Parties to ADR; Granting Request to Extend Time to File Conference Statement, 2012-04-17 |
| | | Samsung's Administrative Motion to File Under Seal its Opposition to Apple's Motion to Compel Documents and Things, 2012-01-17 |
| | | |
| **Public** | | |
| | | "Samsung Takes Cellphone Lead," Wall Street Journal, April 29, 2012 (http://online.wsj.com/article/SB10001424052702303916904577373462067834068.html) |
| | | *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476 (D. Minn. 1980) |
| | | *In re AI Realty Marketing of NY, Inc.*, 304 B.R. 622 (S.D.N.Y. 2004) |
| | | Samsung Press Release, "Samsung Electronics Announces First Quarter 2012 Earnings Results," April 27, 2012 |
| | | Federal Reserve Exchange Rates H.10 Daily for Won (http://www.federalreserve.gov/releases/h10/hist/dat00_ko.htm) |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 4

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # Accused Products | Utility Patents | | | | | | |
|---|---|---|---|---|---|---|---|
| | '002 | '129 | '163 | '381 | '607 | '891 | '915 |
| 1 Acclaim | x | | x | | | x | x |
| 2 Captivate | x | | x | x | | x | x |
| 3 Continuum | x | | x | x | | x | x |
| 4 Droid Charge | x | | x | x | | x | x |
| 5 Epic 4G | x | | x | x | | x | x |
| 6 Exhibit 4G | x | | x | x | | x | x |
| 7 Fascinate | x | | x | x | | x | x |
| 8 Galaxy Ace | x | | x | x | | x | x |
| 9 Galaxy Prevail | x | | x | x | | x | x |
| 10 Galaxy S (i9000) | x | | x | x | | x | x |
| 11 Galaxy S 4G | x | | x | x | | x | x |
| 12 Galaxy S II (AT&T) | x | | x | x | | x | x |
| 13 Galaxy S II (i9100) | x | | x | x | | x | x |
| 14 Galaxy S II (T-Mobile) | x | | x | | | x | x |
| 15 Galaxy S II (Epic 4G Touch) | x | | x | x | | x | x |
| 16 Galaxy S II (Skyrocket) | x | | x | | | x | x |
| 17 Galaxy S Showcase (i500) | x | | x | x | | x | x |
| 18 Galaxy Tab | x | x | x | x | x | x | x |
| 19 Galaxy Tab 10.1 (WiFi) | x | x | x | x | x | x | x |
| 20 Galaxy Tab 10.1 (4G LTE) | x | x | x | x | x | x | x |
| 21 Gem | x | | x | x | | x | x |
| 22 Gravity Smart | x | | x | x | | x | x |
| 23 Indulge | x | | x | x | | x | x |
| 24 Infuse 4G | x | | x | x | | x | x |
| 25 Intercept | x | | x | x | | x | x |
| 26 Mesmerize | x | | x | x | | x | x |
| 27 Nexus S | x | | x | x | | x | x |
| 28 Nexus S 4G | x | | x | x | | x | x |
| 29 Replenish | x | | x | x | | x | x |
| 30 Sidekick | x | | x | x | | x | x |
| 31 Transform | x | | x | | | x | x |
| 32 Vibrant | x | | x | x | | x | x |

**Sources/Notes:**

1/   Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 4**

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # | Accused Products | Design Patents | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 'D087 | 'D270 | 'D305 | 'D334 | 'D677 | 'D790 | 'D889 |
| 1 | Acclaim | | | | | | | |
| 2 | Captivate | | | x | x | | x | |
| 3 | Continuum | | | x | x | | x | |
| 4 | Droid Charge | | | x | x | | x | |
| 5 | Epic 4G | | | x | x | | x | |
| 6 | Exhibit 4G | | | | | | | |
| 7 | Fascinate | | | x | x | x | x | |
| 8 | Galaxy Ace | | | | | x | | |
| 9 | Galaxy Prevail | | | | | | | |
| 10 | Galaxy S (i9000) | x | x | x | x | x | x | |
| 11 | Galaxy S 4G | x | x | x | x | x | x | |
| 12 | Galaxy S II (AT&T) | x | | | | x | | |
| 13 | Galaxy S II (i9100) | x | | | | x | | |
| 14 | Galaxy S II (T-Mobile) | | | | | x | | |
| 15 | Galaxy S II (Epic 4G Touch) | x | | | | x | | |
| 16 | Galaxy S II (Skyrocket) | x | | | | x | | |
| 17 | Galaxy S Showcase (i500) | | | x | x | x | x | |
| 18 | Galaxy Tab | | | | | | | |
| 19 | Galaxy Tab 10.1 (WiFi) | | | | | | | x |
| 20 | Galaxy Tab 10.1 (4G LTE) | | | | | | | x |
| 21 | Gem | | | x | x | | x | |
| 22 | Gravity Smart | | | | | | | |
| 23 | Indulge | | | x | x | | x | |
| 24 | Infuse 4G | x | | x | x | x | x | |
| 25 | Intercept | | | | | | | |
| 26 | Mesmerize | | | x | x | x | x | |
| 27 | Nexus S | | | | | | | |
| 28 | Nexus S 4G | | | | | | | |
| 29 | Replenish | | | | | | | |
| 30 | Sidekick | | | | | | | |
| 31 | Transform | | | | | | | |
| 32 | Vibrant | x | x | x | x | x | x | |

**Sources/Notes:**

1/    Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                EXHIBIT 4

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # | Accused Products | Trade Dress | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | iPhone | iPhone 3G | iPhone 4 | iPhone / iPhone 3G / iPhone 4 | iPad and iPad 2 | '983 | '218 | '327 |
| 1 | Acclaim | | | | | | | | |
| 2 | Captivate | x | x | | x | | x | x | x |
| 3 | Continuum | x | x | | x | | x | x | x |
| 4 | Droid Charge | x | x | | x | | x | x | x |
| 5 | Epic 4G | x | x | | x | | x | x | x |
| 6 | Exhibit 4G | | | | | | | | |
| 7 | Fascinate | x | x | | x | | x | x | x |
| 8 | Galaxy Ace | | | x | x | | | | |
| 9 | Galaxy Prevail | x | x | | x | | x | x | x |
| 10 | Galaxy S (i9000) | x | x | | x | | x | x | x |
| 11 | Galaxy S 4G | x | x | | x | | x | x | x |
| 12 | Galaxy S II (AT&T) | x | x | | x | | x | x | x |
| 13 | Galaxy S II (i9100) | x | x | | x | | x | x | x |
| 14 | Galaxy S II (T-Mobile) | x | x | | x | | x | x | x |
| 15 | Galaxy S II (Epic 4G Touch) | x | x | | x | | x | x | x |
| 16 | Galaxy S II (Skyrocket) | x | x | | x | | x | x | x |
| 17 | Galaxy S Showcase (i500) | x | x | | x | | x | x | x |
| 18 | Galaxy Tab | | | | | x | | | |
| 19 | Galaxy Tab 10.1 (WiFi) | | | | | x | | | |
| 20 | Galaxy Tab 10.1 (4G LTE) | | | | | x | | | |
| 21 | Gem | | | | | | | | |
| 22 | Gravity Smart | | | | | | | | |
| 23 | Indulge | | | | | | | | |
| 24 | Infuse 4G | x | x | | x | | x | x | x |
| 25 | Intercept | | | | | | | | |
| 26 | Mesmerize | x | x | | x | | x | x | x |
| 27 | Nexus S | | | | | | | | |
| 28 | Nexus S 4G | | | | | | | | |
| 29 | Replenish | | | | | | | | |
| 30 | Sidekick | | | | | | | | |
| 31 | Transform | | | | | | | | |
| 32 | Vibrant | x | x | | x | | x | x | x |

**Sources/Notes:**

1/    Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 4

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # | Accused Products | Trademarks | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | '169 | '196 | '197 | '200 | '642 | '685 | '038 | '463 (Pending) |
| 1 | Acclaim | | | | | x | | | |
| 2 | Captivate | x | x | x | x | | x | x | x |
| 3 | Continuum | x | x | x | x | x | x | x | x |
| 4 | Droid Charge | | x | x | x | x | x | x | x |
| 5 | Epic 4G | x | x | x | x | | x | x | x |
| 6 | Exhibit 4G | x | x | x | x | | x | x | x |
| 7 | Fascinate | x | x | x | x | x | x | x | x |
| 8 | Galaxy Ace | x | x | x | x | | x | x | x |
| 9 | Galaxy Prevail | | | | | x | | | |
| 10 | Galaxy S (i9000) | x | x | x | x | | x | x | x |
| 11 | Galaxy S 4G | x | x | x | x | | x | x | x |
| 12 | Galaxy S II (AT&T) | x | x | x | | | x | x | x |
| 13 | Galaxy S II (i9100) | x | x | x | | | x | x | x |
| 14 | Galaxy S II (T-Mobile) | | x | x | | | x | x | x |
| 15 | Galaxy S II (Epic 4G Touch) | | x | x | | | x | x | x |
| 16 | Galaxy S II (Skyrocket) | x | x | x | | | x | x | x |
| 17 | Galaxy S Showcase (i500) | x | x | x | x | x | x | x | x |
| 18 | Galaxy Tab | x | | x | x | x | x | x | x |
| 19 | Galaxy Tab 10.1 (WiFi) | | | x | | | x | x | x |
| 20 | Galaxy Tab 10.1 (4G LTE) | | | x | | | x | x | x |
| 21 | Gem | | x | x | x | x | x | x | x |
| 22 | Gravity Smart | x | x | x | x | | x | x | x |
| 23 | Indulge | x | x | x | x | | x | x | x |
| 24 | Infuse 4G | x | x | x | x | | x | x | x |
| 25 | Intercept | | | | | x | | | |
| 26 | Mesmerize | x | x | x | x | x | x | x | x |
| 27 | Nexus S | | | | | x | | | |
| 28 | Nexus S 4G | | | | | x | | | |
| 29 | Replenish | | | | | x | | | |
| 30 | Sidekick | x | | | x | | | | |
| 31 | Transform | | | | | x | | | |
| 32 | Vibrant | x | x | x | x | | x | x | x |

**Sources/Notes:**

1/    Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Apple's Asserted Utility Patents 1/

| Patent No. | Referenced As | Title | File Date | Issue Date | Expiration Date | 2/ |
|---|---|---|---|---|---|---|
| 6,493,002 | '002 Patent | Method and Apparatus for Displaying and Accessing Control and Status Information in a Computer System | 3/20/1997 | 12/10/2002 | 9/30/2014 | |
| 7,469,381 | '381 Patent | List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display | 12/14/2007 | 12/23/2008 | 12/14/2027 | |
| 7,663,607 | '607 Patent | Multipoint Touchscreen | 5/6/2004 | 2/16/2010 | 3/29/2028 | 3/ |
| 7,844,915 | '915 Patent | Application Programming Interfaces for Scrolling Operations | 1/7/2007 | 11/30/2010 | 8/12/2028 | 4/ |
| 7,853,891 | '891 Patent | Method and Apparatus for Displaying a Window for a User Interface | 2/1/2008 | 12/14/2010 | 3/14/2023 | 5/ |
| 7,864,163 | '163 Patent | Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents | 9/4/2007 | 1/4/2011 | 7/23/2029 | 6/ |
| 7,920,129 | '129 Patent | Double-Sided Touch-Sensitive Panel with Shield and Drive Combined Layer | 1/3/2007 | 4/5/2011 | 1/23/2030 | 7/ |

**Sources/Notes:**

1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 2 to 8.

2/  In general, a (other than design) patent's term begins on  the date on which the patent is issued and ends 20 years from the date on which the application for the patent was filed in the United States.  35 U.S.C. 154 (a)(2)

3/  Certificate of Correction for US Patent No.7,663,607, dated 2/16/10, there is a Patent Term Adjustment of 1423 days.

4/  Issue Notification for US Patent No.7,844,915, dated 11/10/10, there is a Patent Term Adjustment of 583 days.

5/  Issue Notification for US Patent No.7,853,891, dated 11/23/10, there is a Patent Term Adjustment of 247 days.

6/  Issue Notification for US Patent No.7,864,163, dated 12/15/10, there is a Patent Term Adjustment of 688 days.

7/  Issue Notification for US Patent No.7,920,129, dated 3/16/11, there is a Patent Term Adjustment of 1116 days.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 43 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 6

**Apple's Asserted Design Patents** 1/

| Patent No. | Referenced As | Title | Design | File Date | Issue Date | Expiration Date 2/ |
|---|---|---|---|---|---|---|
| D627,790 | D'790 Patent | Graphical User Interface for a Display Screen or Portion Thereof |  | 8/20/2007 | 11/23/2010 | 11/23/2004 |
| D617,334 | D'334 Patent | Graphical User Interface for a Display Screen or Portion Thereof |  | 7/15/2008 | 6/8/2010 | 6/8/2024 |
| D604,305 | D'305 Patent | Graphical User Interface for a Display Screen or Portion Thereof |  | 6/23/2007 | 11/17/2009 | 11/17/2023 |
| D618,677 | D'677 Patent | Electronic Device |  | 11/18/2008 | 6/29/2010 | 6/29/2024 |
| D504,889 | D'889 Patent | Electronic Device |  | 3/17/2004 | 5/10/2005 | 5/10/2019 |
| D593,087 | D'087 Patent | Electronic Device |  | 7/30/2007 | 5/26/2009 | 5/26/2023 |
| D622,270 | D'270 Patent | Electronic Device |  | 10/1/2009 | 8/24/2010 | 8/24/2024 |

**Sources/Notes:**
1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 9 to 15.
2/  In general, a design patent's term begins on the date on which the patent is granted and ends 14 years from that date.  35 U.S.C. 173
    (http://www.uspto.gov/web/offices/pac/mpep/consolidated_laws.pdf).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 44 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 7

**Apple's Asserted Trade Dress Registrations** 1/

| U.S. Registration No. | Mark | Filing Date | Registration Date | Expiration Date 2/ |
|---|---|---|---|---|
| 3,470,983 |  | 10/12/2007 | 7/22/2008 | 7/22/2018, subject to renewal. |
| 3,457,218 |  | 10/12/2007 | 7/1/2008 | 7/1/2018, subject to renewal. |
| 3,475,327 |  | 10/12/2007 | 7/29/2008 | 7/29/2018, subject to renewal. |

**Sources/Notes:**

1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 16 to 18.

2/  Federal trademark registrations issued on or after 11/6/1989 remain in force for 10 years, and may be renewed for 10-year periods (http://www.uspto.gov/trademarks/process/maintain/prfaq.jsp).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Apple's Asserted Unregistered Trade Dress and Trademark**

| Name | Trade Dress 1/ | Release Date |
|---|---|---|
| iPhone |  | 6/29/2007 3/ |
| iPhone 3G |  | 7/11/2008 4/ |
| iPhone 4 |  | 6/24/2010 5/ |
| iPhone / iPhone 3G / iPhone 4 |  | 6/29/2007 3/ |
| iPad and iPad 2 |  | 4/3/2010 6/ |

| Name | Trademark 2/ | Filing Date |
|---|---|---|
| Purple iTunes Store Common Law Trademark ('85/041,463 App. Pending) |  | 5/18/2010 |

Sources/Notes:

1/  Apple Inc. Amended Complaint, 6/16/11, pp. 18-21.

2/  Apple Inc. Amended Complaint, 6/16/11, Exhibit 29.

3/  Apple Inc. Press Release, 6/28/07
    (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).

4/  Apple Inc. Press Release, 7/10/08
    (http://www.apple.com/pr/library/2008/07/10iPhone-3G-on-Sale-Tomorrow.html).

5/  Apple Inc. Press Release, 6/7/10
    (http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html).

6/  Apple Inc. Press Release, 3/5/10 (http://www.apple.com/pr/library/2010/03/05iPad-Available-in-US-on-April-3.html).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 9

**Apple's Asserted Trademark Registrations** 1/

| U.S. Registration No. | Mark | Filing Date | Registration Date | Expiration Date 2/ |
|---|---|---|---|---|
| 3,886,196 |  | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 3,889,642 |  | 4/21/2010 | 12/14/2010 | 12/14/2020, subject to renewal. |
| 3,886,200 |  | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 3,889,685 |  | 4/21/2010 | 12/14/2010 | 12/14/2020, subject to renewal. |
| 3,886,169 |  | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 3,886,197 |  | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 2,935,038 |  | 3/11/2004 | 3/22/2005 | 3/22/2015, subject to renewal. |

**Sources/Notes:**
1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 23 to 28 and 30.
2/  Federal trademark registrations issued on or after 11/6/1989 remain in force for 10 years, and may be renewed
     for 10-year periods (http://www.uspto.gov/trademarks/process/maintain/prfaq.jsp).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 10-S**

## Summary of Samsung Accused Products

| # | Accused Products 1/ | Model No. 1/ | Model No. per Samsung Sales Data 2/ | Carrier 3/ |
|---|---|---|---|---|
| 1 | Acclaim | SCH-R880 | Acclaim (SCH-R880) | US Cellular |
| 2 | Captivate | SGH-I897 | Captivate (SGH-I897) | AT&T |
| 3 | Continuum | SCH-I400 | Continuum (SCH-I400) | Verizon |
| 4 | Droid Charge | SCH-I510 | Droid Charge (SCH-I510) | Verizon |
| 5 | Epic 4G | SPH-D700 | Epic 4G (SPH-D700) | Sprint |
| 6 | Exhibit 4G | SGH-T759 | Exhibit 4G (SGH-T759) | T-Mobile |
| 7 | Fascinate | SCH-I500 | Fascinate (SCH-I500) | Verizon |
| 8 | Galaxy Ace | GT-S5830 | Galaxy Ace (GT-S5830, GT-S5838, SCH-I579, SCH-I589, SHW-M240S) | n/a |
| 9 | Galaxy Prevail | SPH-M820 | Galaxy Prevail (SPH-M820) | Sprint & Boost |
| 10 | Galaxy S (i9000) | GT-I9000 | Galaxy S (I9000) (GT-I9000, GT-I9001, GT-I9008, GT-I9018, SCH-I909, SGH-N013, SHW-M110S) | n/a |
| 11 | Galaxy S 4G | SGH-T959 | Galaxy S 4G (SGH-T959) | T-Mobile |
| 12 | Galaxy S II (AT&T) | SGH-I777 | Galaxy S II/2 (GT-I9100, GT-I9108, SGH-I177, SGH-N033, SHW-M250K, SHW-M250S) | AT&T |
| 13 | Galaxy S II (i9100) | GT-I9100 | 4/ | 4/ |
| 14 | Galaxy S II (T-Mobile) | SGH-T989 | Hercules (SGH-T989) | T-Mobile |
| 15 | Galaxy S II (Epic 4G Touch) | SPH-D710 | Epic 4G Touch (SPH-D710) | Sprint |
| 16 | Galaxy S II (Skyrocket) | SGH-I727 | Galaxy S2 Skyrocket (SGH-I727) | AT&T |
| 17 | Galaxy S Showcase (i500) | SCH-I500 | Showcase (SCH-I500) | Cell South & Other |
| 18 | Galaxy Tab | P1, P2 | Galaxy Tab 7.0 (3G) (P1, P2) | AT&T, Sprint, T-Mobile, Verizon, USC, Other |
| 19 | Galaxy Tab 10.1 (WiFi) | GT-P7510 | Galaxy Tab 10.1 (GT-P7510, GT-P7511, SHW-M380W) | Sprint, Verizon, Other |
| 20 | Galaxy Tab 10.1 (4G LTE) | SCH-I905 | Galaxy Tab 10.1 LTE (SCH-I905, SGH-N014) | Verizon, USC |
| 21 | Gem | SCH-I100 | Gem (SCH-I100) | Verizon, USC, Others |
| 22 | Gravity Smart | SGH-T589 | Gravity (SGH-T589) | T-Mobile |
| 23 | Indulge | SCH-R910 | Indulge (SCH-R910) | Metro PCS |
| 24 | Infuse 4G | SGH-I997 | Infuse 4G (SGH-I997) | AT&T |
| 25 | Intercept | SPH-M910 | Intercept (SPH-M910) | Sprint & Virgin Mobile |
| 26 | Mesmerize | SCH-I500 | Mesmerize (SCH-I500) | USC |
| 27 | Nexus S | GT-I9020 | Nexus S (GT-I9020, GT-I9023, SHW-M200K, SHW-M200S) | Other |
| 28 | Nexus S 4G | SPH-D720 | Nexus S 4G (SPH-D720) | Sprint |
| 29 | Replenish | SPH-M580 | Replenish (SPH-M580) | Sprint & Boost |
| 30 | Sidekick | SGH-T839 | Sidekick (SGH-T839) | T-Mobile |
| 31 | Transform | SPH-M920 | Transform (SPH-M920) | Sprint |
| 32 | Vibrant | SGH-T959 | Vibrant (SGH-T959) | T-Mobile |

**Source/Notes:**

1/ Discussion with Counsel.
2/ SAMNDCA00402075.
3/ SAMNDCA00402076.
4/ Galaxy S II (AT&T edition, 4G)'s model number is listed along with the Galaxy S II (i9100) in Samsung's financial data.  I understand that the i9100 model is not
   sold in the U.S. and all other models listed were not found on Samsung's North America Web Site.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 11

## U.S. Smartphone Market Shares



**Source:** See Exhibit 11.1.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

EXHIBIT 11.1



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 12**



**Source**:  See Exhibit 12.1.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 51 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 12.1



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 13



## U.S. Media Tablet Market Shares

Legend: Samsung Units Shipped, Apple Units Shipped, Samsung Market Share, Apple Market Share

Source: See Exhibit 13.1.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 53 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 13.1



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 14**

**Intellectual Property Damage Types By Form Of IP**

| | Patent | | | Trademark | Copyright | Trade Secret |
|---|---|---|---|---|---|---|
| | Utility Patent | Plant Patent | Design Patent | | | |
| **Lost Profits** | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| **Price Erosion** | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| **Corrective Advertising** | | | | ☑ | | |
| **Unjust Enrichment** | | | ☑ | ☑ | ☑ | ☑ |
| **Reasonable Royalty** | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| **Decrease in Value** | | | | ☑ | ☑ | ☑ |
| **Statutory** | | | | ☑ | ☑ | |

<u>**Source:**</u> AICPA Practice Aid 06-1 - Calculating Intellectual Property Infringement Damages, p.20.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Identification of Appropriate Forms of Damages  5/

| IP Type | Patent/Registration No. 5/ | Form of Damages | | | | | |
|---|---|---|---|---|---|---|---|
| | | Lost Profits | | Infringer's Profits | | Reasonable Royalty | |
| | | Smartphones | Tablets | Smartphones | Tablets | Smartphones | Tablets |
| Utility Patents | 6,493,002 | n/a | n/a | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,469,381 | Calculated | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,663,607 | Calculated | Calculated | n/a 1/ | n/a 1/ | n/a 2/ | Calculated |
| | 7,844,915 | Calculated | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,853,891 | n/a | n/a | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,864,163 | Calculated | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,920,129 | n/a 2/ | n/a | n/a 1/ | n/a 1/ | n/a 2/ | Calculated |
| Design Patents | D627,790 | n/a | n/a | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D617,334 | n/a | n/a | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D604,305 | n/a | n/a | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D618,677 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D504,889 | n/a 2/ | Calculated | n/a 2/ | Calculated | n/a 2/ | Calculated |
| | D593,087 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| Trade Dress | iPhone 3G | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | iPhone / iPhone 3G / iPhone4 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | iPad and iPad 2 | n/a 2/ | Calculated | n/a 2/ | Calculated | n/a 2/ | Calculated |
| | 3,470,983 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | 3,457,218 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| Trademarks | 3,886,196 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,886,200 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,886,169 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,886,197 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 2,935,038 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 85/041,463 (Pending) | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |

Sources/Notes:
1/ Form of intellectual property is not appropriate for the damages remedy.
2/ Intellectual property relevant to tablets only.
3/ Intellectual property relevant to smartphones only.
4/ Not a form of damages claimed by Apple regarding certain Trademarks.
5/ Remaining Apple Intellectual Property in Suit identified per Joint Case Management Conference Statement dated 5/1/12, pp. 1-3.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 56 of 149
EXHIBIT 16

## Sequential Consideration & Application of the Various Forms of IP Remedy

Apple Intellectual Property:  Patent A, Patent B, and Trade Dress C
Samsung Accused Products:  10 units of a Smartphone named Captivate



**Note**: All amounts portrayed are for demonstration purposes only.

Total Damages = $1264

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 17-S

# Samsung Per Product Damages

## (Lost Profits, Infringer's Profits [Revenue], and Reasonable Royalty)

| Product | Lost Profits 1/ | Infringer's Profits Design, Trade Dress, and Trademark 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|---|
| Acclaim | | | $486,037 | |
| Captivate | | | | |
| Continuum | | | | |
| Droid Charge | | | | |
| Epic 4G | | | | |
| Exhibit 4G | | | | |
| Fascinate | | | | |
| Galaxy Ace | | | | |
| Galaxy Prevail | | | | |
| Galaxy S (i9000) | | | | |
| Galaxy S 4G | | | | |
| Galaxy S II (AT&T) | | | | |
| Galaxy S II (Epic 4G Touch) | | | | |
| Galaxy S II (i9100) | | | | |
| Galaxy S II (Skyrocket) | | | | |
| Galaxy S II (T-Mobile) | | | | |
| Galaxy S Showcase (i500) | | | | |
| Galaxy Tab | | | | |
| Galaxy Tab 10.1 (4G LTE) | | | | |
| Galaxy Tab 10.1 (WiFi) | | | | |
| Gem | | | | |
| Gravity Smart | | | | |
| Indulge | | | | |
| Infuse 4G | | | | |
| Intercept | | | $6,615,615 | |
| Mesmerize | | | | |
| Nexus S | | | $1,053,038 | |
| Nexus S 4G | | | $4,521,486 | |
| Replenish | | | $7,845,557 | |
| Sidekick | | | | |
| Transform | | | $2,804,111 | |
| Vibrant | | | | |
| **Total** | | | **$23,325,843** | |

**Sources/Notes:**
1/ Exhibit 17.2-S
2/ Exhibit 17.3-S

Prepared by Invotex Group                                    Submitted Under Seal; Highly Confidential;
                                                             Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                              EXHIBIT 17.1-S

# Samsung Per Product Damages

## (Lost Profits, Infringer's Profits [Gross Profit], and Reasonable Royalty)

| Product | Lost Profits 1/ | Infringer's Profits Design, Trade Dress, and Trademark 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|---|
| Acclaim | $1,049,129 | | $486,037 | $1,535,166 |
| Captivate | $204,416,141 | $80,875,138 | | $285,291,279 |
| Continuum | $6,981,279 | $38,386,816 | | $45,368,095 |
| Droid Charge | $37,618,271 | $100,009,534 | | $137,627,805 |
| Epic 4G | $31,296,962 | $303,130,170 | | $334,427,133 |
| Exhibit 4G | $0 | $19,688,409 | | $19,688,409 |
| Fascinate | $47,828,264 | $239,505,666 | | $287,333,930 |
| Galaxy Ace | $0 | $0 | | $0 |
| Galaxy Prevail | $8,573,370 | $122,337,533 | | $130,910,904 |
| Galaxy S (i9000) | $0 | $0 | | $0 |
| Galaxy S 4G | $13,884,674 | $138,870,620 | | $152,755,294 |
| Galaxy S II (AT&T) | $0 | $83,392,570 | | $83,392,570 |
| Galaxy S II (Epic 4G Touch) | $0 | $166,466,006 | | $166,466,006 |
| Galaxy S II (i9100) | | | | $0 |
| Galaxy S II (Skyrocket) | $0 | $56,604,820 | | $56,604,820 |
| Galaxy S II (T-Mobile) | $0 | $157,771,965 | | $157,771,965 |
| Galaxy S Showcase (i500) | $2,780,133 | $44,168,761 | | $46,948,895 |
| Galaxy Tab | $50,313,041 | $54,127,596 | | $104,440,637 |
| Galaxy Tab 10.1 (4G LTE) | $12,180,893 | $6,647,602 | | $18,828,495 |
| Galaxy Tab 10.1 (WiFi) | $66,806,190 | $9,821,389 | | $76,627,579 |
| Gem | $4,779,357 | $9,811,924 | | $14,591,281 |
| Gravity Smart | $0 | $26,732,604 | | $26,732,604 |
| Indulge | $4,009,197 | $37,984,784 | | $41,993,981 |
| Infuse 4G | $44,404,466 | $89,726,534 | | $134,131,000 |
| Intercept | $9,602,429 | | $6,615,615 | $16,218,043 |
| Mesmerize | $9,687,923 | $99,121,790 | | $108,809,713 |
| Nexus S | $2,094,937 | | $1,053,038 | $3,147,975 |
| Nexus S 4G | $9,126,938 | | $4,521,486 | $13,648,425 |
| Replenish | $7,266,720 | | $7,845,557 | $15,112,278 |
| Sidekick | $4,088,016 | $51,204,752 | | $55,292,768 |
| Transform | $7,863,653 | | $2,804,111 | $10,667,763 |
| Vibrant | $19,175,967 | $176,470,223 | | $195,646,190 |
| **Total** | **$605,827,951** | **$2,112,857,208** | **$23,325,843** | **$2,742,011,002** |

**Sources/Notes:**
1/ Exhibit 17.2-S
2/ Exhibit 17.4-S

                  Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

# Lost Profits Summary

| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2010 | | | | | | | | | 2011 | | | | | | | | 2012 | | |
| **Total Units Sold - Smartphones 1/** | 0 | 124,940 | 742,962 | 735,760 | 1,193,060 | 1,171,774 | 705,696 | 448,298 | 621,734 | 674,366 | 702,374 | 1,318,814 | 1,742,377 | 1,636,644 | 1,211,086 | 1,027,365 | 875,526 | 1,048,383 | 1,280,523 | 729,551 | 1,030,788 | 690,722 | 876,585 | 20,589,328 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| Acclaim | 0 | 0 | 0 | 0 | 0 | 0 | 26 | 770 | 258 | 8 | 1,094 | 1,052 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,208 |
| Captivate | 0 | 0 | 133,351 | 130,335 | 74,422 | 76,530 | 19,595 | 67,548 | 56,689 | 53,389 | 28,997 | 22,885 | 14,296 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 678,037 |
| Continuum | 0 | 0 | 0 | 0 | 0 | 119 | 5,226 | 3,342 | 19 | 0 | 2,788 | 4,034 | 6,064 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 21,592 |
| Droid Charge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 75,547 | 35,697 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 111,244 |
| Epic 4G | 0 | 0 | 1 | 15,227 | 11,125 | 8,039 | 7,777 | 672 | 11,043 | 6,821 | 12,969 | 8,967 | 16,368 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 99,009 |
| Exhibit 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fascinate | 0 | 0 | 0 | 3,472 | 34,715 | 16,518 | 4,090 | 3,733 | 9,053 | 2,707 | 17,767 | 43,117 | 15,412 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 150,584 |
| Galaxy Ace | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy Prevail | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,894 | 17,459 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25,353 |
| Galaxy S (i9000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,472 | 12,199 | 10,701 | 1,192 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 41,564 |
| Galaxy S II (AT&T) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy S II (Epic 4G Touch) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy S II (i9100) | | | | | | | | | | | | | | | | | | | | | | | | |
| Galaxy S II (Skyrocket) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy S II (T-Mobile) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy S Showcase (i500) | 0 | 0 | 0 | 0 | 0 | 0 | 795 | 781 | 1,132 | 890 | 1,182 | 1,904 | 1,755 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,439 |
| Gem | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,503 | 1,362 | 5,285 | 4,207 | 1,915 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14,272 |
| Gravity Smart | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Indulge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,097 | 3,964 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12,061 |
| Infuse 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,759 | 128,553 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 131,312 |
| Intercept | 0 | 4,255 | 0 | 0 | 0 | 0 | 143 | 2,531 | 6,020 | 4,312 | 3,147 | 3,125 | 5,347 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 28,880 |
| Mesmerize | 0 | 0 | 0 | 0 | 0 | 1,633 | 3,443 | 912 | 3,958 | 3,779 | 4,797 | 6,632 | 4,328 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29,482 |
| Nexus S | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,803 | 944 | 260 | 2,542 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,549 |
| Nexus S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,044 | 20,946 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 26,990 |
| Replenish | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,171 | 15,318 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 21,489 |
| Sidekick | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,129 | 2,960 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12,089 |
| Transform | 0 | 0 | 0 | 0 | 0 | 0 | 84 | 782 | 7,719 | 5,502 | 2,664 | 3,748 | 3,115 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 23,614 |
| Vibrant | 0 | 315 | 23,427 | 7,659 | 13,688 | 10,868 | 4,865 | 919 | 2,677 | 83 | 664 | 118 | 386 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 65,669 |
| **Total Units Eligible for LP** | 0 | 4,570 | 156,779 | 156,693 | 133,950 | 113,707 | 46,044 | 84,793 | 101,015 | 104,682 | 100,059 | 218,034 | 291,111 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,511,437 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| **Beginning Capacity** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Add'l Excess Capacity 2/** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Capacity** | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| **Actual Units Eligible for LP** | 0 | 4,570 | 156,779 | 156,693 | 133,950 | 113,707 | 46,044 | 84,793 | 101,015 | 104,682 | 100,059 | 218,034 | 291,111 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,511,437 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| **Ending Capacity** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Apple Increm. Margin/Unit ($** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Lost Profits ($)** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Units Avail. for Other Remedies** | 0 | 120,370 | 586,183 | 579,067 | 1,059,110 | 1,058,067 | 659,652 | 363,505 | 520,719 | 569,684 | 602,315 | 1,100,780 | 1,451,266 | 1,636,644 | 1,211,086 | 1,027,365 | 875,526 | 1,048,383 | 1,280,523 | 729,551 | 1,030,788 | 690,722 | 876,585 | 19,077,891 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Units Sold - Tablets 1/** | 0 | 0 | 0 | 0 | 0 | 220 | 236,465 | 25,414 | 33,372 | 17,799 | 25,815 | 51,648 | 37,626 | 176,678 | 141,597 | 95,178 | 56,386 | 168,431 | 116,742 | 61,714 | 61,106 | 65,259 | 29,515 | 1,400,965 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| Galaxy Tab | 0 | 0 | 0 | 0 | 0 | 174 | 187,526 | 20,154 | 24,443 | 13,037 | 18,908 | 38,489 | 23,836 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 326,567 |
| Galaxy Tab 10.1 (4G LTE) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29,370 | 8,448 | 3,776 | 6,686 | 12,931 | 4,140 | 1,670 | 9,218 | 1,814 | 78,053 |
| Galaxy Tab 10.1 (WiFi) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,203 | 95,059 | 23,618 | 30,019 | 28,140 | 70,820 | 55,033 | 34,638 | 35,698 | 29,331 | 13,152 | 419,711 |
| **Total Units Eligible for LP** | 0 | 0 | 0 | 0 | 0 | 174 | 187,526 | 20,154 | 24,443 | 13,037 | 18,908 | 38,489 | 28,039 | 95,059 | 52,988 | 38,467 | 31,916 | 77,506 | 67,964 | 38,778 | 37,368 | 38,549 | 14,966 | 824,331 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| **Beginning Capacity** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Add'l Excess Capacity 2/** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Capacity** | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| **Actual Units Eligible for LP** | 0 | 0 | 0 | 0 | 0 | 174 | 187,526 | 20,154 | 24,443 | 13,037 | 18,908 | 38,489 | 28,039 | 95,059 | 52,988 | 38,467 | 31,916 | 77,506 | 67,964 | 38,778 | 37,368 | 38,549 | 14,966 | 824,331 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| **Ending Capacity** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Apple Increm. Margin/Unit ($) 3/** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Lost Profits ($)** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Units Avail. for Other Remedies** | 0 | 0 | 0 | 0 | 0 | 46 | 48,939 | 5,260 | 8,929 | 4,762 | 6,907 | 13,159 | 9,587 | 81,619 | 88,609 | 56,711 | 24,470 | 90,925 | 48,778 | 22,936 | 23,738 | 26,710 | 14,549 | 576,634 |

**Total Lost Profits ($)   605,827,951**

**Sources/Notes:**

1/ Smartphones - Exhibit 37.1-S, Tablets - Exhibit 38.1-S

2/ Smartphones - Exhibit 26, Tablets - Exhibit 27

3/ Smartphones - Exhibit 32-S, Tablets - Exhibit 33-S

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17.3-S

**Infringer's Profits (Revenue) and Reasonable Royalty Summary - for Units not Eligible for Lost Profits**

In USD

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17.3-S



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD, et al.

**Infringer's Profits (Gross Profit) and Reasonable Royalty Summary - for Units not Eligible for Lost Profits**



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD, et al.

EXHIBIT 17.4-S



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-S

# Samsung Per Product Damages

## (Infringer's Profits [Revenue] and Reasonable Royalty)

| Product | Infringer's Profits Design, Trade Dress, and Trademark 1/ | Reasonable Royalty 1/ | Total |
|---|---|---|---|
| Acclaim | | $507,339 | |
| Captivate | | | |
| Continuum | | | |
| Droid Charge | | | |
| Epic 4G | | | |
| Exhibit 4G | | | |
| Fascinate | | | |
| Galaxy Ace | | | |
| Galaxy Prevail | | | |
| Galaxy S (i9000) | | | |
| Galaxy S 4G | | | |
| Galaxy S II (AT&T) | | | |
| Galaxy S II (Epic 4G Touch) | | | |
| Galaxy S II (i9100) | | | |
| Galaxy S II (Skyrocket) | | | |
| Galaxy S II (T-Mobile) | | | |
| Galaxy S Showcase (i500) | | | |
| Galaxy Tab | | | |
| Galaxy Tab 10.1 (4G LTE) | | | |
| Galaxy Tab 10.1 (WiFi) | | | |
| Gem | | | |
| Gravity Smart | | | |
| Indulge | | | |
| Infuse 4G | | | |
| Intercept | | $6,850,033 | |
| Mesmerize | | | |
| Nexus S | | $1,106,947 | |
| Nexus S 4G | | $4,773,033 | |
| Replenish | | $8,045,835 | |
| Sidekick | | | |
| Transform | | $2,972,534 | |
| Vibrant | | | |
| **Total** | | **$24,255,720** | |

**Sources/Notes:**
1/ Exhibit 18.2-S

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                      EXHIBIT 18.1-S

# Samsung Per Product Damages

## (Infringer's Profits [Gross Profit] and Reasonable Royalty)

| Product | Infringer's Profits Design, Trade Dress, Trademark 1/ | Reasonable Royalty 1/ | Total |
|---|---|---|---|
| Acclaim | $0 | $507,339 | $507,339 |
| Captivate | $202,100,404 | | $202,100,404 |
| Continuum | $40,997,793 | | $40,997,793 |
| Droid Charge | $120,495,977 | | $120,495,977 |
| Epic 4G | $321,700,392 | | $321,700,392 |
| Exhibit 4G | $19,686,655 | | $19,686,655 |
| Fascinate | $267,735,061 | | $267,735,061 |
| Galaxy Ace | $0 | | $0 |
| Galaxy Prevail | $124,112,306 | | $124,112,306 |
| Galaxy S (i9000) | $0 | | $0 |
| Galaxy S 4G | $145,369,383 | | $145,369,383 |
| Galaxy S II (AT&T) | $83,392,570 | | $83,392,570 |
| Galaxy S II (Epic 4G Touch) | $166,466,006 | | $166,466,006 |
| Galaxy S II (i9100) | $0 | | $0 |
| Galaxy S II (Skyrocket) | $56,604,820 | | $56,604,820 |
| Galaxy S II (T-Mobile) | $157,771,965 | | $157,771,965 |
| Galaxy S Showcase (i500) | $45,758,446 | | $45,758,446 |
| Galaxy Tab | $110,939,128 | | $110,939,128 |
| Galaxy Tab 10.1 (4G LTE) | $20,442,851 | | $20,442,851 |
| Galaxy Tab 10.1 (WiFi) | $35,644,400 | | $35,644,400 |
| Gem | $10,188,963 | | $10,188,963 |
| Gravity Smart | $26,732,604 | | $26,732,604 |
| Indulge | $40,027,960 | | $40,027,960 |
| Infuse 4G | $110,480,480 | | $110,480,480 |
| Intercept | $0 | $6,850,033 | $6,850,033 |
| Mesmerize | $104,594,611 | | $104,594,611 |
| Nexus S | $0 | $1,106,947 | $1,106,947 |
| Nexus S 4G | $0 | $4,773,033 | $4,773,033 |
| Replenish | $0 | $8,045,835 | $8,045,835 |
| Sidekick | $52,649,781 | | $52,649,781 |
| Transform | $0 | $2,972,534 | $2,972,534 |
| Vibrant | $188,565,314 | | $188,565,314 |
| **Total** | **$2,452,457,870** | **$24,255,720** | **$2,476,713,590** |

**Sources/Notes:**
1/ Exhibit 18.3-S

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 18.2-S

**Infringer's Profits (Revenue) and Reasonable Royalty Summary**



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 18.2-S



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 18.3-S

**Infringer's Profits (Gross Profit) and Reasonable Royalty Summary**



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 18.3-S



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 19-S

# Samsung Per Product Damages
# (Lost Profits and Reasonable Royalty)

| Product | Lost Profits 1/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Acclaim | $1,049,129 | $486,037 | $1,535,166 |
| Captivate | $204,416,141 | $22,433,956 | $226,850,097 |
| Continuum | $6,981,279 | $9,171,468 | $16,152,747 |
| Droid Charge | $37,618,271 | $21,515,490 | $59,133,761 |
| Epic 4G | $31,296,962 | $54,587,948 | $85,884,910 |
| Exhibit 4G | $0 | $9,897,206 | $9,897,206 |
| Fascinate | $47,828,264 | $37,022,479 | $84,850,743 |
| Galaxy Ace | $0 | $0 | $0 |
| Galaxy Prevail | $8,573,370 | $64,253,188 | $72,826,559 |
| Galaxy S (i9000) | $0 | $0 | $0 |
| Galaxy S 4G | $13,884,674 | $42,910,029 | $56,794,703 |
| Galaxy S II (AT&T) | $0 | $15,060,807 | $15,060,807 |
| Galaxy S II (Epic 4G Touch) | $0 | $36,459,410 | $36,459,410 |
| Galaxy S II (i9100) | | | $0 |
| Galaxy S II (Skyrocket) | $0 | $14,875,169 | $14,875,169 |
| Galaxy S II (T-Mobile) | $0 | $29,622,602 | $29,622,602 |
| Galaxy S Showcase (i500) | $2,780,133 | $10,834,148 | $13,614,281 |
| Galaxy Tab | $50,313,041 | $14,318,108 | $64,631,149 |
| Galaxy Tab 10.1 (4G LTE) | $12,180,893 | $1,513,367 | $13,694,260 |
| Galaxy Tab 10.1 (WiFi) | $66,806,190 | $6,494,226 | $73,300,415 |
| Gem | $4,779,357 | $11,990,058 | $16,769,415 |
| Gravity Smart | $0 | $16,466,511 | $16,466,511 |
| Indulge | $4,009,197 | $8,613,853 | $12,623,050 |
| Infuse 4G | $44,404,466 | $29,104,120 | $73,508,586 |
| Intercept | $9,602,429 | $6,615,615 | $16,218,043 |
| Mesmerize | $9,687,923 | $20,602,666 | $30,290,588 |
| Nexus S | $2,094,937 | $1,053,038 | $3,147,975 |
| Nexus S 4G | $9,126,938 | $4,521,486 | $13,648,425 |
| Replenish | $7,266,720 | $7,845,557 | $15,112,278 |
| Sidekick | $4,088,016 | $15,305,375 | $19,393,392 |
| Transform | $7,863,653 | $2,804,111 | $10,667,763 |
| Vibrant | $19,175,967 | $26,242,044 | $45,418,011 |
| **Total** | **$605,827,951** | **$542,620,072** | **$1,148,448,023** |

**Sources/Notes:**
1/ Exhibit 17.2-S
2/ Exhibit 19.1-S

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 72 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 19.1-S

## Reasonable Royalty Summary - for Units not Eligible for Lost Profits

In USD

| | 2010 | | | | | | | | 2011 | | | | | | | | | | | | 2012 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Total |
| Acclaim | 0 | 37,790 | 78,535 | 33,461 | 32,720 | 11,811 | 19,062 | 70,511 | 20,049 | 672 | 87,206 | 94,374 | 0 | -204 | -37 | -15 | -15 | 117 | 0 | 0 | 0 | 0 | 0 | **486,037** |
| Captivate | 0 | 0 | 1,533,043 | 1,498,397 | 855,592 | 1,111,781 | 285,767 | 1,116,421 | 1,218,850 | 1,154,671 | 627,149 | 619,186 | 446,288 | 3,349,893 | 2,800,146 | 2,571,204 | 669,299 | 821,271 | 1,061,242 | 719,979 | -23,557 | -1,166 | -1,499 | **22,433,956** |
| Continuum | 0 | 0 | 0 | 0 | 0 | 61,540 | 2,698,862 | 1,956,304 | 6,989 | -700 | 145,142 | 245,635 | 408,636 | 1,004,298 | 1,709,283 | 599,993 | 338,664 | -1,699 | -3,165 | 2,066 | -300 | -100 | 0 | **9,171,468** |
| Droid Charge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,599,926 | 2,405,471 | 4,350,826 | 3,167,033 | 1,779,455 | 232,040 | 949,320 | 1,058,476 | 1,053,678 | 318,306 | 390,744 | 1,210,216 | **21,515,490** |
| Epic 4G | 0 | 0 | 569 | 5,435,365 | 3,971,208 | 4,135,658 | 4,016,089 | 393,494 | 3,993,194 | 2,480,974 | 4,717,146 | 3,668,632 | 7,195,521 | 5,634,745 | 2,237,105 | 62,975 | 0 | 1,217,513 | 2,043,182 | 1,261,395 | 1,143,542 | 705,718 | 273,924 | **54,587,948** |
| Exhibit 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,924,463 | 899,174 | 2,036,785 | 1,473,444 | 503,698 | 595,528 | -1,100 | -533 | -466 | 466,213 | | | **9,897,206** |
| Fascinate | 0 | 0 | 0 | 1,239,415 | 12,391,601 | 8,496,843 | 2,112,108 | 2,184,911 | 3,273,497 | 154,705 | 924,897 | 2,625,349 | 1,038,618 | 980,274 | 1,139,244 | 208,583 | 262,295 | -1,200 | -5,998 | 1,633 | -2,399 | -933 | -966 | **37,022,479** |
| Galaxy Ace | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | **0** |
| Galaxy Prevail | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,229,574 | 7,674,962 | 10,439,822 | 8,739,503 | 6,717,312 | 2,498,000 | 3,326,669 | 6,177,528 | 1,559,376 | 5,841,662 | 5,493,802 | 2,554,978 | **64,253,188** |
| Galaxy S (i9000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | **0** |
| Galaxy S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,354,724 | 4,437,091 | 4,377,881 | 524,057 | 3,133,746 | 3,168,299 | 4,550,179 | 2,343,629 | 1,500,833 | 2,436,292 | 3,963,147 | 3,280,554 | 1,338,264 | 1,501,333 | | **42,910,029** |
| Galaxy S II (AT&T) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,675,829 | 5,201,785 | 3,369,152 | 536,819 | -8,830 | -3,699 | 2,289,750 | **15,060,807** |
| Galaxy S II (Epic 4G Touch) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 666 | 5,487,804 | 4,630,980 | 6,807,942 | 2,352,625 | 7,534,252 | 4,220,311 | 5,424,829 | **36,459,410** |
| Galaxy S II (Skyrocket) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 426,932 | 4,665,766 | 5,166,566 | 2,030,337 | 444,554 | 2,141,014 | **14,875,169** |
| Galaxy S II (T-Mobile) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,046,448 | 1,882,413 | 3,601,691 | 5,263,533 | 4,384,285 | 6,444,232 | **29,622,602** |
| Galaxy S Showcase (i500) | 0 | 0 | 0 | 0 | 0 | 0 | 410,785 | 457,369 | 409,684 | 323,870 | 430,095 | 779,222 | 771,491 | 942,456 | 975,876 | 1,125,816 | 366,353 | 105,258 | 877,882 | 424,997 | 990,737 | 602,592 | 839,664 | **10,834,148** |
| Galaxy Tab | 0 | 0 | 0 | 0 | 0 | 1,440 | 1,536,848 | 184,273 | 333,181 | 178,623 | 259,082 | 516,631 | 322,170 | 1,941,714 | 2,180,831 | 1,282,116 | 171,046 | 2,583,444 | 1,041,853 | 400,874 | 450,998 | 553,064 | 379,923 | **14,318,108** |
| Galaxy Tab 10.1 (4G LTE) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 732,689 | 210,774 | 94,240 | 87,243 | 168,635 | 54,038 | 21,821 | 120,250 | 23,678 | **1,513,367** |
| Galaxy Tab 10.1 (WiFi) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56,805 | 1,284,685 | 589,195 | 748,896 | 702,013 | 923,579 | 717,707 | 451,749 | 465,545 | 382,532 | 171,521 | **6,494,226** |
| Gem | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 543,805 | 495,735 | 1,922,264 | 1,721,211 | 842,030 | 2,346,294 | 1,583,800 | 957,084 | 847,661 | 602,992 | 136,155 | -13,328 | 18,259 | -11,595 | -2,899 | **11,990,058** |
| Gravity Smart | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,154,204 | 2,902,672 | 1,873,850 | 3,019,992 | 918,199 | 635,679 | -2,866 | -5,764 | 692,490 | **16,466,511** |
| Indulge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,945,055 | 1,441,823 | -233 | -367 | -1,100 | 664,467 | 1,024,024 | 499,833 | 606,524 | 839,797 | 595,095 | 0 | -1,066 | **8,613,853** |
| Infuse 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 74,670 | 4,013,161 | 1,140,544 | 2,999,966 | 4,333,499 | 4,664,900 | 2,907,470 | 1,346,894 | 1,839,164 | 1,949,953 | **29,104,120** |
| Intercept | 0 | 248,131 | 463,701 | 454,184 | 531,406 | 531,903 | 275,502 | 328,726 | 599,663 | 438,767 | 320,170 | 357,655 | 657,554 | 271,212 | 23,300 | 0 | 55,920 | 255,368 | 344,840 | 276,804 | 162,168 | 18,640 | | **6,615,615** |
| Mesmerize | 0 | 0 | 0 | 0 | 0 | 840,058 | 1,778,038 | 534,137 | 1,431,377 | 1,374,817 | 1,745,068 | 2,713,214 | 1,902,605 | 1,892,343 | 12,495 | 782,054 | 1,021,991 | 1,872,551 | 2,006,297 | 358,057 | -5,231 | -4,532 | 347,328 | **20,602,666** |
| Nexus S | 0 | 0 | 0 | 0 | 0 | 0 | 364,022 | 94,083 | 26,469 | 258,695 | 28 | -9 | -28 | 152,102 | 39,880 | 56,386 | 0 | 61,493 | -140 | 84 | 0 | -28 | | **1,053,038** |
| Nexus S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 691,600 | 2,575,619 | 215,292 | 158,440 | 56,106 | 0 | 749,328 | -19 | 75,259 | -167,760 | 167,620 | **4,521,486** |
| Replenish | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 706,167 | 1,883,497 | 1,297,204 | 556,218 | 396,557 | 440,323 | 136,631 | 186 | 1,845 | 1,177,675 | 731,434 | 517,819 | **7,845,557** |
| Sidekick | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,734,872 | 1,301,579 | 2,129,581 | 3,096,994 | 2,923,863 | -4,731 | 60,742 | 83,866 | 572,704 | 681,494 | 717,213 | 7,197 | **15,305,375** |
| Transform | 0 | 0 | 0 | 0 | 46,717 | 141,428 | 60,056 | 71,562 | 598,634 | 438,423 | 212,328 | 335,961 | 300,067 | 160,965 | 235,644 | 202,356 | 0 | 0 | 0 | 0 | 0 | -29 | 0 | **2,804,111** |
| Vibrant | 0 | 160,356 | 8,362,432 | 2,733,962 | 4,886,062 | 5,590,407 | 2,512,226 | 537,931 | 968,097 | 30,554 | 241,770 | 48,714 | 169,899 | 0 | -33 | -133 | 0 | -200 | 67 | -67 | 0 | 0 | 0 | **26,242,044** |
| **Total Reasonable Royalty ($)** | **0** | **446,277** | **10,438,280** | **11,394,784** | **22,715,307** | **20,922,868** | **15,705,363** | **8,199,661** | **13,491,103** | **16,397,359** | **17,769,925** | **31,140,270** | **34,489,653** | **52,593,197** | **40,724,304** | **34,484,013** | **28,860,797** | **37,483,286** | **41,426,591** | **23,757,081** | **30,874,041** | **21,890,050** | **27,415,862** | **542,620,072** |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Summary of Damage Calculation Methodology**

| IP Type | Patent/ Registration No. | Product Type | Lost Profits | | | | | | | | | Infringer's Profits | | Reasonable Royalty | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Available Remedy | Apple Average Sales Price | Apple Incremental Profit per Unit | Apple Incremental Profit Margin | Apportionment Of Accused Base | | | | Capacity | Available Remedy | Samsung's Profit per Device | Available Remedy | Basis of Royalty Base | Reasonable Royalty per Unit Rate |
| | | | | | | | Carrier Apportionment | Carrier Switching Apportionment | Mor-Flo Apportionment For Acceptable Non-Infringing Substitutes | Design Around Apportionment (Months Out of Market) | | | | | | |
| | | | 1/ 2/ | | 3/ 4/ | 5/ | | | 6/ | | | | | | | |
| Utility Patents | '002 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 46-S |
| | | Tablet | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| | '129 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | No | N/A | N/A |
| | | Tablet | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| | '163 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 46-S |
| | | Tablet | Yes | $ 580 | | | | | Distribute Samsung's sales among other tablet manufacturers. 10/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| | '381 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 46-S |
| | | Tablet | Yes | $ 580 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| | '607 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | No | N/A | N/A |
| | | Tablet | Yes | $ 580 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | Products with screens 10 inches or larger: no design around. Products with screens 8 inches or less: design around after 12/31/10. 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| | '891 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 46-S |
| | | Tablet | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| | '915 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 6 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 46-S |
| | | Tablet | Yes | $ 580 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 6 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47-S |
| Design Patents | 'D087 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | 'D305 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | 'D334 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | 'D677 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |

Apple Inc. v. Samsung Electronics Co. LTD. et al.

**Summary of Damage Calculation Methodology**

| IP Type | Patent/ Registration No. | Product Type | Lost Profits | | | | | | | | | | Infringer's Profits | | Reasonable Royalty | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Available Remedy | Apple Average Sales Price | Apple Incremental Profit per Unit | Apple Incremental Profit Margin | Apportionment Of Accused Base | | | | | Available Remedy | Samsung's Profit per Device | Available Remedy | Basis of Royalty Base | Reasonable Royalty per Unit Rate |
| | | | | | | | Carrier Apportionment | Carrier Switching Apportionment | Mor-Flo Apportionment For Acceptable Non-Infringing Substitutes | Design Around Apportionment (Months Out of Market) | Capacity | | | | | |
| | | | | 1/ 2/ | 3/ 4/ | 5/ | | | 6/ | | | | | | | |
| **Design Patents** | '0790 | Smartphone | No | N/A | | | N/A | N/A | N/A | N/A | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '0889 | Tablet | Yes | $ 580 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| **Trade Dress** | iPhone 3G | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | iPhone / iPhone 3G / iPhone4 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | iPad and iPad 2 | Tablet | Yes | $ 580 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '983 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '218 | Smartphone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| **Trademarks** | '038 | Smartphone & Tablet | No | n/a | | | n/a | n/a | n/a | n/a | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '169 | Smartphone & Tablet | No | n/a | | | n/a | n/a | n/a | n/a | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '196 | Smartphone & Tablet | No | n/a | | | n/a | n/a | n/a | n/a | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '197 | Smartphone & Tablet | No | n/a | | | n/a | n/a | n/a | n/a | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co. LTD. et al.

## Summary of Damage Calculation Methodology

| IP Type | Patent/ Registration No. | Product Type | Lost Profits | | | | | | | | | Infringer's Profits | | Reasonable Royalty | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Available Remedy | Apple Average Sales Price | Apple Incremental Profit per Unit | Apple Incremental Profit Margin | Apportionment Of Accused Base | | | | | Available Remedy | Samsung's Profit per Device | Available Remedy | Basis of Royalty Base | Reasonable Royalty per Unit Rate |
| | | | | | | | Carrier Apportionment | Carrier Switching Apportionment | Mor-Flo Apportionment For Acceptable Non-Infringing Substitutes | Design Around Apportionment (Months Out of Market) | Capacity | | | | | |
| | | | | 1/ 2/ | 3/ 4/ | 5/ | | | 6/ | | | | | | | |
| | '200 | Smartphone & Tablet | No | n/a | ███████ | ███████ | n/a | n/a | n/a | n/a | ███████ | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |
| | '463 (Pending) | Smartphone & Tablet | No | n/a | ███████ | ███████ | n/a | n/a | n/a | n/a | ███████ | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46-S and 47-S |

**Sources/Notes:**
1/ Apple Average Sales Price for iPhone = (Total Worldwide iPhone Revenues from Q3FY10 through Q2FY12) / (Total Worldwide iPhone Units sold from Q3FY10 through Q2FY12). See Exhibit 32-S.
2/ Apple Average Sales Price for iPad = (Total Worldwide iPad Revenues from Q1FY11 through Q2FY12) / (Total Worldwide iPad Units sold from Q1FY11 through Q2FY12). See Exhibit 33-S.
3/ Apple Incremental Profit per Unit for iPhone = (Total Worldwide iPhone Gross Profit from Q3FY10 through Q2FY12) - (Total iPhone Sales and Distribution Expense from Q3FY10 through Q2FY12). See Exhibit 32-S.
4/ Apple Incremental Profit per Unit for iPad = (Total Worldwide iPad Gross Profit from Q1FY11 through Q2FY12) - (Total iPad Sales and Distribution Expense from Q1FY11 through Q2FY12). See Exhibit 33-S.
5/ Apple Incremental Profit Margin = Apple Incremental Profit per Unit / Apple Average Sales Price.
6/ Some Samsung smartphone units are not sold at a carrier selling iPhone units. Based on a ThinkTech with Google presentation I have assumed that 26% of units sold at a carrier not selling iPhone units would be subject to carrier switching and are available for lost profits. See Exhibit 28.
7/ Discussion with Tang Tan.
8/ See Exhibits 31.1-S  31.2  and 31.3-S.
9/ See Exhibit 31-S.
10/ See Exhibit 30-S.
11/ See Exhibit 26.
12/ See Exhibit 27.
13/ See Exhibit 45.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

EXHIBIT 22

**Apple Other Line of Business P&L Summary** 1/

| (Revenue in Millions USD) | | FY 2010 | | | | FY Total | FY 2011 | | | | FY Total | FY 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | | Q1 | Q2 | Q3 | Q4 | | Q1 | |
| **iTunes** 2/ | Revenue | 923 | 1,108 | 1,015 | 1,023 | 4,069 | 1,157 | 1,387 | 1,359 | 1,444 | 5,347 | 1,697 | 11,113 |
| **Mobile Advertising** 3/ | Revenue | - | 0 | 11 | 16 | 27 | 30 | 23 | 18 | 26 | 97 | 37 | 161 |

**Sources/Notes:**

1/  Fiscal year ending September 31.

2/  Apple "GAAP Line of business Reporting - iTS", APLNDC-Y0000051616 - 1617.

3/  Apple "GAAP Line of Business Reporting - Mob.Adv", APLDNC-Y0000051620. Per Deposition of Mark Buckley, 2/23/12, p.153-156, mobile advertising revenues include selling advertisements from
    third-party companies within apps from the App Store installed on iOS devices (iPhone, iPad, and iPod Touch).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple, Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 23**

# Worldwide Apple iOS Search Revenue



**Source/Notes:**
1/ Search Revenue includes revenue share paid by Google (APLNDC-Y0000232431-2433), Microsoft Bing (APLNDC-Y0000232434-2444) and Yahoo (APLNDC-Y0000232445-2446) for searches performed on iOS devices.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 1 | Deposition of Eric Jue, Product Line Manager for iPod at Apple, 2/24/12 | N/A, page in document: 100-101 | Apple | "the look and feel of iPhone, both physical, you know, dimensions and materials, and also the look and feel of the user interface, the icons that you see, are all part of what people associate with Apple and iPhone." | x | |
| 2 | Deposition of Stanley Ng, Senior Director of iPhone Product Marketing, Worldwide Product Marketing Group at Apple, 2/21/12 | N/A, page in document: 55 | Apple | "Q When you say "**design** and aesthetics," what do you mean by that? A I think customers love the look of the product. They love how beautiful the product is. Q Any particular aspect of the look of the product that you think customers like in particular? A Not specifically. I think they love the overall look and beauty of the products that we [Apple] create." | x | x |
| 3 | Deposition of Philip Schiller, VP of Product Marketing at Apple, 2/17/12 | N/A, page in document: 185 | Apple | "I think it is very possible that  consumers who have never owned any Apple product whatsoever still might recognize this icon [phone call] as associated with Apple and even the iPhone, given how distinctive it is and how much marketing there has been..." | x | |
| 4 | Deposition of Michael Tchao, VP of Product Marketing for iPad at Apple, 2/21/12 | N/A, page in document: 63 | Apple | "Q. Do you recall any feedback specifically as to the shape of the original iPad? A. I believe there was feedback on specifically comfortable to hold, which would, in my mind, include -- incorporate shape. Q. How so? A. That the contours of the device and the way the housing and screen came together made it easy to hold on to." | | x |
| 5 | Deposition of Michael Tchao, VP of Product Marketing for iPad at Apple, 2/21/12 | N/A, page in document: 67 | Apple | Q. What about the physical **design** of the product makes it [the iPad] comfortable to hold? A. The shape of the back housing, the area of the -- around the screen, the bezel around the screen, the weight of the product and the distribution of that weight, the balance of the product. | | x |
| 6 | Various iPhone Buyer Surveys, by Apple Market Research & Analysis | 1/ | Apple | Between Q4 2010 and Q4 2011, 44-50% of those surveyed noted attractive appearance and design as a very important attribute in the iPhone purchase decision. | x | |
| 7 | iPhone Owner Study, by Apple Market Research & Analysis, May 2011 | APLNDC-Y0000025024 - 5147, at 5060 and '5064 | Apple | "Strong trust in Apple and appeal of **design** swayed many who considered Android to purchase iPhone." 32% of those surveyed in the U.S. liked the physical appearance and **design** as a reason that swayed them to purchase iPhone over Android. 46% of those surveyed in the U.S. also listed physical appearance and **design** as a very important feature in deciding to buy the iPhone. | x | |
| 8 | Smartphone Market Study, Apple Market Research & Analysis, January 2011 | APLNDC0001434059 - 4154, at '4144 | Apple | The 7th top reason for buying an iPhone is for better appearance/**design** (37%); better appearance/**design** is listed 10th top reason for buying an Android-based smartphone (27%). | x | |
| 9 | iPhone Early Buyer Wave 1 Final Report, Apple Market Research & Analysis, July 2007 | APLNDC-Y0000029092 - 9135, at '9125 | Apple | The 4th top feature leading to an iPhone purchase is appearance and **design** (78%). | x | |
| 10 | iPhone 4S Early Buyer Survey, Apple Market Research & Analysis, November 2011 | APLNDC-Y0000026096 - 6137, at '6116 | Apple | 64% of iPhone 4S buyers are very satisfied with the physical appearance and **design**, and 25% are somewhat satisfied. | x | |
| 11 | Exhibit 7 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple  7/1/11 | N/A, time in video: 00:00 | Apple | Back of phone is shown with logo. | x | |
| 12 | Exhibit 20 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A, time in video: 0 01 | Apple | iPad 2 frontal **design** shown. | x | |
| 13 | Exhibit 37 to Deposition of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/27/11 | N/A, page in document: 116 | Apple | Advertisement on the **design** of the iPad 2.  "Thinner. Lighter. Faster." | | x |
| 14 | Exhibit 40 to Deposition of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/27/11 | N/A | Apple | Advertisement showing two fingers picking up the iPad 2. | | x |
| 15 | Exhibit D to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10257319 | Samsung | In a graph titled "Main reasons why customers purchased current [Samsung] smartphone (%)", "Exterior **Design**" was chosen by 28.6%-40.8% of the customers depending on age group. Above the graph is the statement "Key Analysis: Need to recognize the importance of exterior **design** and screen size, as they are customer purchase decision factors." | X | |
| 16 | Exhibit D to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10257322 | Samsung | In a slide titled Proposed Exterior **Design** Improvement Factors," there is the statement "Need to Improve by Adding Glossiness: iPhone's strengthened glass (front/back) has a glossy feel, which looks classy." | X | |
| 17 | Exhibit E to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00202379 | Samsung | In the chart, "Comparison between Samsung Mobile Phone and iPhone," "iPhone is on average 5.9 points higher compared to Samsung mobile phone." | X | |
| 18 | Exhibit F to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00229020 | Samsung | "Although released nearly a year ago, the Apple iPhone has maintained its position as the most inspired mobile handset on the market.... The iPhone is a delight to the eye as well as a highly usable device." | X | |
| 19 | Exhibit G to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247537 | Samsung | T-Mobile's comments to Samsung about their phones include: "Please explore other **design** alternatives here, including lighter backgrounds and colors throughout. For example, the iPhone has been successful at achieving a light and airy aesthetic...." | X | |
| 20 | Exhibit G to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247538 | Samsung | T-Mobile's comments to Samsung about their phones also include: "iPhone maintains a lively, vivid experience largely due to the 'pop' of their icons. We should be able to create similar magic here." | X | |
| 21 | Exhibit H to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247377 | Samsung | Samsung's Head of Mobile Division stated, "When our UX is compared to the unexpected competitor Apple's iPhone, the difference is truly that of Heaven and Earth. It's a crisis of **design**." | X | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 24-S

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 22 | Exhibit I to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247549 | Samsung | CEO Gee Sung Choi criticized Samsung UX's mindset of "clinging to the past generation," stating, "I'm not saying, let's make a UX that is exactly the same as the iPhone, I am saying, let's learn the wisdom of the iPhone and recognize that they have already set the industry standard (?) [sic]." | x | |
| 23 | Exhibit J to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10252809 | Samsung | In the chart, "Evaluation results of design quality/luxury brand recognition," iPhone scores 90% on attractiveness, while Galaxy S phone scores 79%. | x | |
| 24 | Exhibit J to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10252818 | Samsung | When compared with the GA3, iPhone 4's "icon illustrations look professional and luxurious." | x | |
| 25 | Exhibit J to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10252832 | Samsung | "The border is designed with metal silver, providing a futuristic and luxurious feeling." | x | |
| 26 | Exhibit K to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10244368 | Samsung | In a slide titled, "Apple has overtaken Samsung as the most stylish brand overall," there is a quote from London: "I think Apple is so successful because they have come out with a unique product [and] you see all other mobile phone providers are trying to copy each other. Apple came out with something different and that's why everyone likes Apple - because it's different" | x | |
| 27 | Exhibit P to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00249046 | Samsung | "The impact on the category is likely to be material because the product [iPhone] will affect consumer expectations for design, user interface and presumably cell phone music capabilities." | x | |
| 28 | Exhibit Q to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00232256 | Samsung | In a Market Intelligence Group Survey for Samsung, iPhone scores high in items such as "Sensual Design," "Stylish," "Prestigious," "Contemporary," "Young," "Passionate," and "Imaginative." Above the chart of survey results, there is the statement "iPhone generally shows a distinctive image compared to Samsung." Apple generally outperformed Samsung in almost every category. | x | |
| 29 | iPhone 4.0 Quick Report & Analysis | SAMNDCA00024872-4941, at '4908 | Samsung | In a Samsung presentation titled, "iPhone 4.0 Quick Report and Analysis, there is a side to side comparison of the back of Galaxy S phone and the iPhone with a check on the iPhone side and the comment, "Apple logo on back." | x | |
| 30 | Corrected Exhibit C to Declaration of Francis Ho, 11/7/11 (Title of document: STA Post Launch Consumer Insights) | SAMNDCA00025016 - 5079, at '5031 | Samsung | "Design on the Galaxy Tab 10.1 was and is the main sales driver for the device." | | x |
| 31 | Samsung Galaxy Tab 10.1 & 8.9 Competitive Product Experience | SAMNDCA00027944 - 8005, at '7948 | Samsung | "Apple iPad 2 was rated significantly higher in overall design than Samsung Galaxy Tab 10.1, Blackberry Playbook and HP Touchpad." | | x |
| 32 | Samsung, part 1. Endless opportunities. | SAMNDCA00176269 - 6897, at '6343-'7644 | Samsung | "The halo effect. If you can own one attribute, the prospect is inclined to give many others. The proof of the principle. Apple's focus on design has built a powerful brand." | x | x |
| 33 | Samsung Lovemark Mobile & Web Research: Lovemarks. | SAMNDCA00207695 - 7765, at '7731 | Samsung | Apple was rated "among the best" while Samsung was rated "about average" for "Physical Design." | x | |
| 34 | Business & Messaging Users Qualitative Research Results | SAMNDCA00218063 - 8130, at '8099 | Samsung | In a slide titled, "Comparison between Current and Wish Phones_Design," Samsung states "Apple iPhone users rate design satisfaction higher than the others." The chart below shows Apple ratings that are higher in terms of easy to carry, color, size of phone, form factor, material, button to input text easily, and keypad type. | x | |
| 35 | 2009 Samsung Umbrella Brand Architecture | SAMNDCA00230535 - 0645, at '0571 | Samsung | "Sony is known for quality, trust and worth; Apple for buzz, design, and innovation..." | x | x |
| 36 | BAS H1 2010 Final Report USA | SAMNDCA00236017 - 6112, at '6077 | Samsung | "Apple distinguishes itself on Expertise, Sensual Design, and Endorsement." | x | x |
| 37 | Brand Attitude Survey 2010 2H - Main Module: USA | SAMNDCA00245494 - 5611, at '5584 | Samsung | A chart titled "Performance on BE attributes - Samsung vs. Apple" rates Apple higher in "Sensual Design" compared to Samsung. | x | x |
| 38 | Brand Attitude Survey H2 2009 Country Report: USA | SAMNDCA00232190 - 2290, at '2256 | Samsung | "iPhone general shows a distinctive image compared to Samsung." | x | |
| 39 | COO Visit to STA - September, 2011 | SAMNDCA00259131 - 9239, at '9167 | Samsung | Samsung's draft presentation includes a quote from Fox News, "The hype isn't without substance. Though each carrier alters its phone a bit, all three Galaxy S II smartphones have some specs in common: a 4.3-inch, Super AMOLED 800x480 screen, a dual core 1.2-GHz processor, fast 4G network connectivity, and a sleek, simple design evocative of the iPhone." | x | |
| 40 | Samsung, European Telecommunication Operation, P5 vs. iPad2, 18th May, 2011 | S-ITC-010617659 - 7694, at '7663 | Samsung | In a slide of side to side comparison of the iPad 2 and P5, Samsung comments that on the iPad2, "icons are big and the gap between the applications are ideal!!!" "Due to the big size of Icons and the big gap between applications, it is easier to find applications." | | x |
| 41 | Samsung, European Telecommunication Operation, P5 vs. iPad2, 18th May, 2011 | S-ITC-010617659 - 7694, at '7670 | Samsung | Samsung comments that the contacts function on the iPad 2 has "very nice UI design and easy to edit contacts because Edit button is always visible!!! Very nice Book design and the editing is easy and intuitive." | | x |
| 42 | Samsung Galaxy S Launch Event (http://www.youtube.com/watch?v=Pnx fnFmOWb8) | N/A | Samsung | 9.9 mm thickness and 4 inch screen are described in a video clip about the Galaxy S. | x | |
| 43 | [GALAXY Tab 10.1] Official Demo - HD | N/A | Samsung | Describes tablet design as "revolutionary". | | x |
| 44 | [GALAXY S II] Official Live Demo - Viewing | N/A | Samsung | Design of the phone seen from every angle. | x | |
| 45 | Samsung Galaxy S II Presentation | SAMNDCA10775587 - 5624, at '5594, '5599, '5607, '5619, '5621, '9831 | Samsung | Samsung describes "Design" as a main feature of the Galaxy S II and notes the phone's "Slim and Light Design." Diagrams show "a double tap and tilt of the device will zoom in and out" and "tap and pan will move the user from widgets to menus." Samsung in its 30 second pitch described the screen as "wrapped in the sleekest design you can find anywhere." and highlights Design in its 3 minute pitch guidelines. Picture at the CTIA Unpacked event with Design on a powerpoint slide. | x | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 46 | Samsung Galaxy Tab 10.1 - Official Commercial (http://www.youtube.com/watch?v=OM1Pt0AXSaI) | N/A, time in video: 00:30 | Samsung | Apple comparison is shown between a Galaxy Tab 10.1 and iPad. | | x |
| 47 | [Blank Title], by Design Management center, 10/8/7 (Translated) | SAMNDCA00202336 - 2380, at '2358, '2363, '2379 | Samsung | From a **Design** Competitiveness Evaluation, Samsung notes that "the [iPhone] **design** has simple appearance, but becomes more and more attractive as it is used)," and "out of the evaluation items for Delight, Total **Design** Uniformity and **Design** Leadership are more than 6 points higher than our company's mobile phones." "Deliver overall consistent images over the entire process of product use in addition to the product itself. Provide reliability by implementing Identity that involves integration of brand, **design** and marketing." [Slide shows Apple marketing items] "Intuitive Interface...Advanced Technology that simplifies complicated external function keys and thus enhances usability." [Shows picture of iPod] | x | |
| 48 | Experts' Evaluation Result, Self Inspection Program - Major Status on Global Design Competitiveness Evaluation, October 2007 (Translated) | SAMNDCA00203016 - 3040, at '3033 | Samsung | "When it comes to **design**, advance market dominance is important. The **design** that lost market dominance may appear to be an imitation." "iPhone GUI appears to be alive. There is a lack of GUI that is more vivid and attractive GUI." | x | |
| 49 | Relative Evaluation Report on S1, iPhone, 3/2/10 (Translated) | SAMNDCA00203880 - 4010, at '4006 and '4010 | Samsung | After comparing iPhone and i9000 icons, directions for improvement include " change replicate icons and select and use highly intuitive icons" and "eliminate the feeling that the iPhone s menu icons were copied." | x | |
| 50 | Email from Kim Ah-young RE Octopus 3/17 Report Result, 3/17/10 (Translated) | SAMNDCA00507826 - 7827 | Samsung | "Summary of confirmed issues and comments from this morning s report by the general business manager: .... 7. Packaging: Proceed with iPhone/Droid type" | x | |
| 51 | Expert Evaluation Result [Cell Phone], October '07 (Translated) | SAMNDCA00203092 - 3179, at '3137 | Samsung | Apple's Desire, Intrigue, and Delight scores are consistently higher than Samsung's. "There are more significant differences in "intrigue" and "**design** leadership." | x | |
| 52 | Competitive Tablets Product Experience: Form Factor & Display Size / Aspect Ratio validation Research Report, 8/28/11 | SAMNDCA00237976 - 8036, at '7978 | Samsung | Survey contain user preferences of tablets: "consumers ranked Apple iPad (41%), Galaxy Tab 10.1" (26%) and 8.9 (17%) as most preferred tablet based on overall preference, taking into consideration form factor AND display size." | | x |
| 53 | Critical Findings Brief: Competitive UX Evaluation of Atlas, Victory, Supersonic and Vegas with HTC Incredible and Apple iPhone 3GS | SAMNDCA00238251 - 8277, at '8254 | Samsung | "Overall, the iPhone 3GS was rated better than other devices in overall **design**, life needs and values, touchscreen, general usability and users satisfaction across the sessions." | x | |
| 54 | Email chain from Shoneel Kolhatkar, RE "Changes of Tablet Spec", 3/7/11 (Translated) | SAMNDCA00514511 - 4520, at '4512 | Samsung | In response to requests to change tablet specs, YK Yongki Min noted it was "intending the improvement of product competitiveness against i-PAD 2, to my understanding." | | x |
| 55 | Email chain between Yong Il Lee and others, RE "About Galaxy Tab 10.1 Inch Introduction Strategy", 3/11/11 (Translated) | SANDCA00514571 - 4578, at '4576 | Samsung | Don Ju Lee:  "The bottom line is that our P3 should go head-to-head against i-Pad II [sic] this time.  First, the problem is strengthening the quality of the product. 1. We will proceed on the premise that the thickness of the P3 that is already in the process of being reviewed should be less than 8.8mm." | | x |
| 56 | North America P4(P7510 WiFi) BBY Retail Store Visit T/F Report, August 2011 (Translated) | SANDCA10154003 - 4053, at '4013 | Samsung | Samsung conducted a survey of customer returns, and 15% were attributed to design, of which 4% was attributable to appearance alone. | | x |
| 57 | P5 Usability Evaluation Results - 4/9/11 (Translated) | SAMNDCA00176053 - 6171, at '6057 | Samsung | A major problem area "Legibility [for P5] is not good [as iPad 2] as the icon label is too small in proportion to the large screen." | | x |
| 58 | Competitor Analysis Design & Layout - 2009 GUI Framework, 04/2008 | SAMNDCA00228887 - 8933, at '8900, '8905, '8915 | Samsung | A side by side comparison of secondary icons from various phones, including the iPhone, is listed. In reviewing iPhone's secondary icons, "many icon metaphors are simple vector shapes which are easy to understand.... Icons are very ownable and can easily be identified as part of the Apple family."  The reported recommended "maintaining a strong link between the visual style of main menu icons helps maintain a family feel." | x | |
| 59 | Competitor Analysis Design & Layout - 2009 GUI Framework, 04/2008 | SAMNDCA00228934 - 8980, at '8947, '8964, '8969, and '8979 | Samsung | A side by side comparison of the main menu layout and main menu icons is listed. The Apple iPhone's "iconography used is very ownable - even icons for third party applications or features seem very iPhone-like... Visual language of iconography fits into the overall Apple family identity." The report recommended "maintain consistent visual application of icon style within the brand." | x | |
| 60 | Analysis of Relative Strengths and Weaknesses P1 vs. iPad App, 4/20/10 (Translated) | SAMNDCA00203727 - 3768, at '3728 | Samsung | "P1 does have some strengths compared with iPad but also gives a stuffy feeling at the same time. The details on graphics are not enough to experience reality compared with iPad. Due to the lack of visual effects, fun factors are not enough, and usability is low. | | x |
| 61 | iPad vs. Honeycomb P5 UX Comparison of Competitiveness, 2/10/11 (Translated) | SAMNDCA00203811 - 3879, at '3878 | Samsung | "Compared with our own TouchWiz, P3 [Honeycomb] GED is in a disadvantageous position in terms of usability and intuitiveness. It requires tablet UI/UX that is optimized and comparable with iPad. The somewhat poor quality black UI causes inconvenience, degrading visibility and readability.... Menu offering method, pop-up menu location, coherence of icon  and unity are low." | | x |
| 62 | The Cambridge Group - Developing an Optimized Positioning Strategy for Samsung's U.S. Mobile Phone Business, Positioning Strategy Recommendation. Final Report. 1/30/07 | SAMNDCA00249029 - 9120, at '9046 and '9049 | Samsung | The Cambridge Group notes that the iPhone "will affect consumer expectations for **design**, user interface and presumably cell phone music capabilities." the report also notes that reviewers are "most impressed with the uniqueness of the form...." | x | |
| 63 | European Telecommunication Operation P5 vs. iPad 2, 5/18/11 | S-ITC-010617659 - 7694, at '7663 | Samsung | The P5 "Icons are too small and too close to each other," while the iPad 2 "icons are big and the gap between the applications are ideal." | | x |
| 64 | Acme, July 2008 | SAMNDCA10275576 - 5646, at '5593 | Samsung | "Overall, they were quick to compare it to the iPhone. Uniformly, people felt Acme was a copy of the iPhone." | x | |

Apple Inc. v Samsung Electronics Co., LTD., et al.

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 65 | Global Evaluation Criteria For Tier 1 **Design** | SAMNDCA00221705 - 1818, at '1708, '1709, '1713, '1718 | Samsung | "Research suggests that brands that engage people emotionally can command prices as much as 20% to 200% higher than competitors', and sell in far higher volumes." "Samsung products were considered commodities. Samsung focus was on low cost manufacturing. Samsung products provided good value at low cost. But people neither loved nor respected the Samsung brand or its products." "Now Samsung must move from a well respected brand to a brand whose products are designed to make people love them.... This also necessitates moving from **design** as an expression of only form and function to designing an emotional, multi-sensory experience for the consumer." "We must add a higher level of inspired and inspiring **design**. **Design** cannot be only  focused on the traditional role of the invention of new product architectures and the elegant expression of contemporary forms in conjunction with improved ease of use. This is not only because conventional **design** standards have been raised by all of the major competitors but because this type of **design**, no matter how good, is not longer sufficiently engaging. For design to emotionally engage the consumer and command the attention of media, one must love to **design** as theater.  This type of design is based upon the stimulation of all of the senses, the creation of mystery and the engagement of the viewer and user in a more intimate relationship." | x | |
| 66 | Agenda [table of contents in Korean] | SAMNDCA10809734 - 9875, at '9838 - '9840 | Samsung | "Start with materials.... Iconic Beauty that others cannot easily copy. Cost Innovation that makes bigger profit. Value creator that maximizes product concept." On the next slide, it shows the iPhone. | x | |
| 67 | '10 US Archetype Design Input, 10/23/08 | SAMNDCA10202899 - 2983, at '2925 | Samsung | "Touch device is being positioned as a premium phone... stylish and characteristic **design** for touch device is needed.... Stylish touch phone need to focus on the **design** itself to appeal self-esteemed people. With the design identity, large screen, easily usability, and multimedia functionality will be weighed in as a state of the art device." | x | |
| 68 | Feasibility Review on Standalone AP Business for Smart Phone Market (Untranslated document) | SAMNDCA10809390 - 9460, at '9402 | Samsung | "Our research has identified four key factors that we expect will shape handsets in the coming five years. Those factors are: 1. the iPhone...." | x | |
| 69 | Touch Portfolio, Rollout Strategy, 12/17/08 | SAMNDCA00191811 - 1987, at '1830, '1838, '1841, '1842 | Samsung | "Pundits tell us that the iPhone is a revolution.... 'Apple Inc's iPhone... widely hailed for its beauty and functionality....' -Walter Mossberg" "The iPhone has delivered on the promise of touch, permanently altering a consumer's mental model of a mobile phone across key product dimensions. [**Design** is shown as a dimension]." "The iPhone is in some ways 'undesigned' but its strong ,screen-centric **design** has come to equal what's on trend and cool for many consumers." "For State of the Art, Apple has overtaken Samsung as the most stylish brand overall." | x | |
| 70 | Final Report - i920 Usability Test & iPhone Benchmarking - UT1, 9/25/09 | S-ITC-009302888 - 2969, at '2894 | Samsung | "When [Omnia II] compared with the iPhone, it fell short in some cases, and was on par in others. The main advantage of the iPhone was its perceived simplicity." | x | |
| 71 | Email chain from Sang Hung to YK Tongki Min, et al. RE Competitive Touch UX design consumer usability report, 12/4/09 | SAMNDCA10175266 - 5267 | Samsung | Findings of the final report on competitive touch UX **design** between the iPhone 3GS and other phones include "home screen preference - iPhone 3GS has the highest ranking.... We should use iPhone 3GS (for the time being until another best-of-the-class in usability) as benchmark/goal for improvement in any of our products.  In the Android platform, we will want to make sure any of the enhanced **designs** should at least match the default UX supported by the platform through user-centered research and consumer usability testing...." | x | |
| 72 | Winning in Smartphones - It's now or never, by McKinsey&Co, 12/10/09 | SAMNDCA10807316 - 7387, at '7358 | Samsung | Strategic plays for Samsung include, "UI on par with iPhone..... Match the iPhone UI within the next 12 months." | x | |
| 73 | Support to STA's Counter-Apple Strategy, Mercator Partners, 9/18/08 | SAMNDCA10036081 - 6204, at '6089, '6094, '6103, '6106 | Samsung | "The iPhone is in direct competition with a large number of Samsung devices (Form Factor view)" "Apple (in combination with RIM) is creating a growing threat to Samsung's market share." "State-of-the-Art were driven by the Apple brand and **design**." "iPhone segments are very distinct in terms of why they bought the iPhone..." under State-of-the-art, "Key buying factors - high on **Design** & Appearance." "Recommendation #1 - Contain Apple by 'encircling the iPhone' through systematically targeting the under-served needs of different iPhone segments" an arrow points to "State-of-the-art = Style + Apple - Price." | x | |
| 74 | Results of Global Segmentation 2.0 Study, Mobile Marketing Group / Strategy & MI Part, March 2010 | SAMNDCA00196646 - 6827, at '6658 | Samsung | "Changes in high-end consumers' awareness of styles" include: "focus not only on the external design but on the UX **design** and usability." "Customized **Design**" points to "Personalized Experience" "Recognize touch screen as the best tool to ensure intuitiveness/style/visibility." "Style = In & Out + Trendy + Latest."  Same slide also depicts different pictures of the iPhone. | x | |
| 75 | Samsung Mobile Philosophy, Analysis of Survey Results, Mobile UX Group Samsung Electronics, 8/13/07 | SAMNDCA 00217372 - 7388, at '7380 | Samsung | Samsung is compared with Apple and Sony. Apple is described as "simple, innovation, new, easy, minimal" and Samsung as "techy, balance, wide & deep, reason & feeling, absence of consistency." | x | |

Apple Inc. v Samsung Electronics Co., LTD., et al.

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 76 | Final Report, Galaxy S Market Response Survey (US), October 6 | SAMNDCA 00521309 - 1396, at '1316, '1318, '1374 | Samsung | "Vibrant users value the product's features over the product's brand and **design**.... There were not many Apple users who purchased Samsung products. In contrast, many Samsung users purchased Apple products subsequently."<br>"**Brand** and **Design** were the main reasons consumers purchased the iPhone 4, which is the main competing product to Samsung Phones." **Design** is the fourth most important reason for buying the Samsung Vibrant. | x | |
| 77 | 3G iPhone Counter Plan, 6/14/08 | SAMNDCA00251457 - 1505, at '1460 | Samsung | iPhone has "Innovative UI," "touch screen," and "focusing emotional benefits." | x | |
| 78 | iPhone 3G UX Analysis, 7/12/08 | SAMNDCA00251538 – 1565, at '1561 | Samsung | iPhone strengths include "user friendly," "usability", "touch-screen", and "cool factor."<br>"While it has no immediate competition in terms of usability and style, it [iPhone] will undoubtedly create a world of copycat products and competitors. Competitors' new technologies, business model and/or creative user interface have been and will be launched to compete with iPhone." | x | |
| 79 | Design Strategy of Apple, Concept Planning Unit, 3/16/11 | SAMNDCA10808165 - 8199, at '8174 and '8175 | Samsung | Samsung outlines iPhone and iPad **design** history. | x | x |
| 80 | Touch Devices Browser User Experience Best Practices, STA UX, 2/13/09 | SAMNDCA10166661 - 6742, at '6683 | Samsung | "Apple iPhone browser url/search UX provides one of the best reference **designs** in the market." | x | |
| 81 | "Premium & Mass Design Preference Study" | SAMNDCA00176172 - 6202, at '6178, '6192 | Samsung | "iPhone [Korean text] = Premium/[Korean Text]"<br>The "Most Trendy" phone is the iPhone 3GS and 4. "It's simple, it looks like it's more skinny and it's enough space to navigate it. It's everything that you need in a phone." | x | |
| 82 | Email from Nandakumar Ramachandran, 11/16/09 RE: Competitive Intelligence on 2010 TMO Android Product Roadmap against Samsung 2H10 Android Product Roadmap Strategy for TMO | SAMNDCA10410283 - 0293, at '0283 | Samsung | "iPhone 3GS still scored best across virtually all the tasks tested (and in some cases by a wide margin), the home screen **design** and the general interaction **design**." | x | |

| Supplement | | | | | | |
|---|---|---|---|---|---|---|
| 83 | Lessons From Apple | SAMNDCA00274819 (Cheong Exhibit 2652) | Samsung | '4831: "Apple's sleek and intuitive user interface has been a key driver of its value proposition . . . Clean, beautiful interface.  Clean menu screens. Intuitive, user-friendly navigation & visual elements . . . ."<br>'4838: "Apple has a strong, clear brand promise consisting of compelling brand attributes that resonate with consumers. . . . Apple's brand promise consists of compelling brand attributes valued by consumers. . . . Brand promise: 'Cool, innovative products offering superior **design** and usability." | x | x |
| 84 | N/A | SAMNDCA10247509 (Cho Exhibit 1976) | Samsung | Per pp.63 of Deposition of Seunghwan Cho, referring to Exhibit 1976: "The president directed that we place each page of the whole UI on the wall and change the UI perfectly."<br>Per pp.70 of the Deposition of Seunghwan Cho, referring to Exhibit 1976: "It seems we ought to improve the UI so as to make it absolutely superior in comparison to the iPhone, with respect to those functionalities that are oft used in an absolute sense." | x | |
| 85 | Ecosystem Procuring Strategy to Take the Lead in the Smartphone Market | SAMNDCA00392050 (Cho Exhibit 2676) | Samsung | 2112:  In text above pictures of OMNIA v. iPhone 3Gs:  "iPhone: Except for one H/W feature, entire menu is substituted with icons of consistent size and shape and easy to understand how to use through application of intuitive menu."<br>In text above graphic on '2117":  "Design is a far superior factor playing an important role."<br>'2118:  **Design** ranked 61.8%, Important points influencing a smartphone buying decision besides the device specs by Japanese users. | x | |
| 86 | Palm Pre, Apple iPhone, HTC Magic US: UI Weakness/Strength Report - August 5, 2009 - R&D Management Group | SAMNDCA00391937 (Cho Exhibit 2679) | Samsung | 1951:  Strengths of Apple iPhone 3GS include "Screen switch & scrolling smooth & sleek" and "Intuitive UX + emotion-inducing/sensible graphic effects provided" | x | |
| 87 | Phase 2 Design Strategy | SAMNDCA00202336 (Choi Exhibit 2150) | Samsung | 2379:  Survey on **design** metrics such as Desire, Intrigue, Delight, "iPhone is on average 5.9 points higher compared to Samsung mobile phones"<br>'2342 Samsung **design** philosophy:  "Create an Emotional Journey.  **Design** an emotional experience.  Desire / Intrigue / Delight." | x | |
| 88 | Alkon Instructions from the CEO | SAMNDCA20012936 (Choi Exhibit 2641)<br><br>Translations Beg Bates: SAMNDCA20012936 | Samsung | 2936 (translation '9970):  Report entitled "Alkon - Instructions from the CEO," noting "Improve UX, referring to iPhone 3GS."<br>'2950 (translation '9974):  Side-by-side photographs of Samsung and iPhone GUI. | x | |
| 89 | Expert Evaluation Result [Mobile Phone] | SAMNDCA203092 (Hong Exhibit 2149) | Samsung | 3152:  In survey, Apple iPhone ranked higher in Desire, Intrigue, and Delight (Gestalt) attributes:  "The harmony of UI and HW makes this product shine."<br>"Unique, fresh, and an outstanding product that deserves the best score - the main issue for future products is how much buzz can be created by instilling emotions into the items." | x | |
| 90 | Email from Dong Jin Koh to Dong Hoon Chang, et al., "Conveyance of the President's views on touch method and call to meeting" | SAMNDCA11374409 (Hong Exhibit 2640) | Samsung | '4410:  Email from Dong Hoom Chang re: "President's views on touch method":  "C-type's strengths are the sleek exterior product **design**, superior feel of the touchscreen, and multi-touch, these 3 points.  It seems they thought that even among these, the sleek exterior product **design** execution that the iPhone shows, is what is thought by the above or in sales to be the greatest appeal factor." | x | |

Apple Inc. v Samsung Electronics Co., LTD., et al.

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 91 | Email from Yu Shin Kim to Lead Dae Woon Myeong. | SAMNDCA10969926 (Hong Exhibit 2708) | Samsung | 9932: Email from MH Cho to WP Hong re: "Galaxy S Review": "Overall, it does not surpass the limitations of the iPhone. I get the feeling that the **design** of UI and Look and feel was led by engineers. Therefore, they can't do anything other than copying the iPhone.... If you remain content because it was a big hit domestically, you will always be second place.  Shouldn't we make Apple copy Samsung?" | x | |
| 92 | Email from Hyun Kim, "MWC (2/15) - P1/p3 Division Head Design Report Meeting Minutes | SAMNDCA00044700 (Hong Exhibit 2709) | Samsung | 4700:  Email from H Kim:  "To pass along a few comments from Lead Designer Cho who went into the Google meeting yesterday - P1, P3: - Since it is too similar to Apple, make it noticeably different starting with the front side." | | x |
| 93 | Gravity Tank:  Touch Portfolio: Rollout Strategy - Recommendation Based on Consumer Insight | SAMNDCA00191811 (Sohn Exhibit 1654) | Samsung | 1834, 1841, 1842:  Survey/market research.  Regarding iPhone: "Consumers applaud the iPhone's ease of use and simplicity." "Screen-centric **design** has set the standard for touch." "Apple has overtaken Samsung as the most stylish brand overall. . . . 'I think Apple is so successful because they have come out with a unique product [and] you see all other mobile phone providers are trying to copy each other.  Apple came out with something different and that's why everyone likes Apple - because it's different."

'1870:  Regarding Samsung's phones:  "While liked, no phone makes a **design** statement - Consumers feel they look too plain, too extreme or too much like other Samsung phones." | x | |
| 94 | Support to STA's Counter-Apple Strategy | SAMNDCA10036081 (Sohn Exhibit 2715) | Samsung | 6145:  Survey, "Key Buying Factors (rank 1-16) - amongst iPhone owners": **Design** and appearance is ranked second. | x | |
| 95 | Feasibility Review on Standalone AP business for Smart Phone Market | SAMNDCA10809390 | Samsung | 9427:  "Factors That Could Make the iPhone a Success - Easy and intuitive UI that covers all user classes, including male, female, old and young - Beautiful **design**." | x | |
| 96 | STA Marketing: CFO Update | SAMNDCA11547471 (Cheong Exhibit 2653) | Samsung | 7475:  STA marketing report.  "2012 Objectives:  Overcome Fast Follower Status & Establish Samsung as Challenger Brand to Apple." | x | |
| 97 | (Gravity Tank) Touch Portfolio: Key Takeaways | SAMNDCA10805169 (Sohn Exhibit 2714) | Samsung | 5170:  Executive Summary - Consumer Needs:  "The main element of the reason for purchasing a touch phone appeared to be intuitive/easy use of various features and modern image."

'5171:  Executive Summary - iPhone Feedback:  "iPhone appeared to be the most popular touch phone brand in the high value segment - The consumers recognize iPhone's screen-centric **design** as touch phone's standard . . . (Our company's main target segment, 'state of the art,' considers Apple as no. 1 and our company as no. 2 in the "Most Stylish Brand" category.)"

'5172:  Executive Summary - Samsung Touch Feedback:  "The exterior **design** and PUI's **design** group statement that encompasses the consistency of individual products and the overall touch portfolio was evaluated to be weak." | x | |

**Sources/Notes:**
1/ (a) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q4, APLNDC-X0000006548 - 6647, at '6566 and '6620;
   (b) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q3, APLNDC0000036172 - 6265, at '6189 and '6238;
   (c ) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q2, APLNDC0000036266 - 6348, at '6293;
   (d) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q1, APLNDC-Y0000027341 - 7422, at '7362;
   (e) iPhone Buyer Survey, Apple Market Research & Analysis, FY10 - Q4, APLNDC-Y0000027256 - 7340, at '7277.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Demand for Utility Patents**

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Deposition of Tamara Whiteside, Worldwide Advertising Manager at Apple, 2/28/12 | N/A | P. 124 | Apple | Scroll or Gesture/Zoom and Refocus/Multi-touch | Multi-touch is focused on because "it's the way that you interact with the product...you can pinch to zoom in or out, tap to zoom." There are "various ways that you can interact with this product that are unique to it." | | x | x | x |
| 2 | Deposition of Tamara Whiteside, Worldwide Advertising Manager at Apple, 2/28/12 | N/A | P. 158 | Apple | Bounce Effect | Apple featured the bounceback functionality in ads because "nobody else had...the ability to do that in their software." | x | | | |
| 3 | Deposition of Eric Jue, Product Line Manager for iPod at Apple, 2/24/12 | N/A | P. 49 | Apple | Bounce Effect | "Q Do you think the bounceback feature was revolutionary? A Absolutely" | x | | | |
| 4 | "Apple: iOS - Powering the Mobility Revolution", BernsteinResearch | APL-ITC796-0000071960 - 2051 | APL-ITC796-0000071990 | Apple | Multi-touch | "Apple has pioneered multi-touch and focuses on ease-of-use of the phone (for example, the 3 MP camera in the iPhone 3GS wasn't cutting-edge, but featured revolutionary user functionality such as touch-to-focus)." | | | | x |
| 5 | iPad Buyer Survey: Initial US Results, August 2010 | APLNDC-Y0000023361 - 3427 | APLNDC-Y0000023387 | Apple | Multi-touch | When asked what was the most important features that prompted purchase of an iPad, multi-touch was the most important reason for 2% of those surveyed (4% choose this feature as second-most important, and 3% choose as third-most important). | | | | x |
| 6 | Exhibit 6 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0:01; 0:19 | Apple | Scroll or Gesture | Scrolling function is shown during commercial for the iPhone. | | x | | |
| 7 | Exhibit 8 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0:01; 0:11; 0:17 | Apple | Scroll or Gesture | Scrolling function is shown during commercial for the iPhone 3G. | | x | | |
| 8 | Exhibit 10 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0:06 0:14; 0:20 | Apple | Scroll or Gesture/Zoom and Refocus/Multi-touch | In the commercial for the iPhone 4, double tap feature is shown once; pinch to zoom feature is shown multiple times. | | x | x | x |
| 9 | Exhibit 19 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0:01 0:10; 0:15; 0:26 | Apple | Scroll or Gesture/Multi-touch | In the commercial for the iPad, multi-point touch feature shown; scrolling function is shown during commercial. | | x | | x |
| 10 | Exhibit 29 to Deposition of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/27/11 | N/A | p.66 | Apple | Scroll or Gesture | "Touching is Believing": advertisement depicting the ease of use of iPhone with its touchscreen feature. | | x | | |
| 11 | DJ Koh Review - 3/16/11 | SAMNDCA00236805 - 6847 | SAMNDCA00236817 | Samsung | Scroll or Gesture/Multi-touch | Mentions iPad 2 rumors "expect thinner, lighter device" with "new multi-touch gestures." | | x | | x |
| 12 | Latest Mobile Phone Usage and Satisfaction Survey - T-Mobile Vibrant MRS Questionnaire | SAMNDCA00247578 - 7604 | SAMNDCA00247594 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Survey asks if the Samsung Vibrant is "easy to use with multi-touch function (lets you enlarge/minimize everything using only your fingers)" | | x | x | x |
| 13 | VZW "SCH-i905(P4_LTE)" - Product Planning Group 3/31/2011 | SAMNDCA00522001 - 2025 | SAMNDCA00522009 | Samsung | Multi-touch | Mentions Samsung P4 LTE  is "Easy and Fast to Use" with "10 Finger Multi-touch" | | | | x |
| 14 | Samsung Equaliser - UX Forecast 2012-13 | SAMNDCA00190881 - 1029 | SAMNDCA00190971 | Samsung | Scroll or Gesture | Document mentions increase in input methods (such as scrolling on an iPhone) as a trend in mobile platforms | | x | | |
| 15 | Touch Portfolio - Rollout Strategy - Recommendation Based on Consumer Insight - 12/17/08 | SAMNDCA00178021 - 8112 | SAMNDCA00178036 SAMNDCA00178056 | Samsung | Bounce Effect/Scroll or Gesture | Survey shows consumers are concerned about "accidental touches" and "lack of pinpoint control" on their touch screens; Survey found touch gestures and the "bounce" feature as "fun" and "whimsical" features of the iPhone | x | x | | |
| 16 | Touchscreen Mobile Browsers: Best Practice Guidelines and Browser Evaluations - November 2009 | SAMNDCA00190046 - 0093 | SAMNDCA00190053 | Samsung | Scroll or Gesture/Zoom and Refocus | The iPhone "meets user needs very well for zooming." | | x | x | |
| 17 | ARIES (GT -i8700) Product Proposal Document 12/14/2009 | S-ITC-001012125 - 2139 | S-ITC-001012133 | Samsung | Zoom and Refocus/Multi-touch | Document mentions "Multi-touch" and "One Finger Zoom" as part of the "Cutting-Edge Technology" selling point. | | | x | x |
| 18 | Analysis of Galaxy tab Operation Speed and Screen Effects (Translated) | SAMNDCA00201771 - 1780 | SAMNDCA00201772-1780 | Samsung | Bounce Effect | Document compares Galaxy Tab's Bounce feature to the iPad's. Bounce effect is listed as unemotional in several areas. | x | | | |
| 19 | VZW News Release - 6/28/10 | SAMNDCA00312249 - 2251 | SAMNDCA00312250 | Samsung | Scroll or Gesture/Zoom and Refocus | Samsung Fascinate features "advanced touch screen gesture capabilities", including different zoom methods and horizontal swiping. | | x | x | |
| 20 | Verizon Wireless Weekly Report - Week 38 - 9/26/11 | S-ITC-005218927 - 8984 | S-ITC-005218936 | Samsung | Bounce Effect | Document states that VCAST apps in Model I510 (Droid Charge) have bounce effect. | x | | | |
| 21 | Samsung Epic 4G, America's First 4G-Capable Phone with Slide-out QWERTY Keyboard and Brilliant Super AMOLED Touchscreen, Coming to Sprint - 6/28/10 | SAMNDCA00312245 - 2251 | SAMNDCA00312246 | Samsung | Scroll or Gesture | Samsung Epic 4G "supports a series of advanced touch screen gestures including multi-touch pinch" and "vertical and horizontal swiping." | | x | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

Demand for Utility Patents

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 22 | Samsung Mobile and U.S. Cellular Announce Availability of the Samsung Mesmerize, a Galaxy S Smartphone, at CTIA Enterprise & Applications - 10/6/10 | SAMNDCA00312263 - 2266 | SAMNDCA00312264 | Samsung | Scroll or Gesture | Samsung Mesmerize "supports a series of advanced touch screen gestures including multi-touch pinch" and "vertical and horizontal swiping" | x | | | |
| 23 | AT&T and Samsung Mobile Announce Upcoming Availability of the Samsung Captivate, a Galaxy S Smartphone - 6/17/10 | SAMNDCA00312274 - 2279 | SAMNDCA00312275 | Samsung | Scroll or Gesture | Samsung Captivate "supports a series of advanced touch screen gestures including multi-touch pinch" and "vertical and horizontal swiping." | x | | | |
| 24 | Samsung Gem(SCH-i100) Sales Point | SAMNDCA10173553 - 3573 | SAMNDCA10173564 - 3565 | Samsung | Scroll or Gesture/Multi-touch | Document states "multi-touch enhances type accuracy" and that "pinch-zoom enabled android browser can give convenience while browsing." | x | | | x |
| 25 | Samsung 'THOR' '11 Hero Proposal - 7/12/10 | SAMNDCA10138344 - 8429 | SAMNDCA10138389 | Samsung | Scroll or Gesture | Document states "Touch is History - Gesture Input is Innovative." | x | | | |
| 26 | Competitor Benchmarking Samsung Qbowl 09/07 | SAMNDCA00219766 - 9880 | SAMNDCA00219878 | Samsung | Scroll or Gesture | Document recommends that "traditional scroll bar aesthetics is not used but the iPhones' scrolling mechanism instead." | x | | | |
| 27 | Mobile Internet User Research - 1/18/08 | SAMNDCA00220591 - 0672 | SAMNDCA00220603 | Samsung | Scroll or Gesture | Document states the iPhone's "Zoom and Scroll are simple and intuitive using finger gestures." | x | | | |
| 28 | Samsung Galaxy Tab Official Commercial (http://www.youtube.com/watch?v=GHPJdqgsJ9g) | N/A | 0:14 | Samsung | Scroll or Gesture | Scrolling function is shown in commercial for the Galaxy Tab. | x | | | |
| 29 | Time to Tab - Samsung Galaxy Tab 10.1 Global TV Commercial (http://www.youtube.com/watch?v=QL8ePbYsdc8) | N/A | 0:04 | Samsung | Scroll or Gesture/Multi-touch | Pinch to zoom and scrolling features are shown in the commercial for the Galaxy Tab 10.1. | x | | | x |
| 30 | Introducing the Samsung Galaxy Tab - It's Go Time! (http://www.youtube.com/watch?v=yGKthibnyTE) | N/A | 0:09 | Samsung | Scroll or Gesture | Scrolling function is shown in commercial for the Galaxy Tab. | x | | | |
| 31 | Samsung Continuum - A Galaxy S Phone (Verizon) (http://www.youtube.com/watch?v=KIi32R3yciY) | N/A | 0:30; 1:12 | Samsung | Scroll or Gesture | Scrolling function is shown in commercial for the Galaxy S - Continuum. | x | | | |
| 32 | Samsung Mobile USA, [Jo Videos] Samsung Galaxy S II Tips & Tricks - Email (http://www.youtube.com/watch?v=EhwW3cjsbAM&list=PLB06411CFD33597A3&feature=plcp&context=C337f15fPDOEgsToPDskIFIi7kLjB29rSJhGXwKF67) | N/A | 1:08 | Samsung | Scroll or Gesture/Multi-touch | Pinch to zoom and scrolling features are shown in the commercial for the Galaxy S II. | x | | | x |
| 33 | [GALAXY Tab 10.1] Official Demo - HD (http://www.youtube.com/watch?v=7tfX3VIz0nI&feature=related) | N/A | 0:51<br>3:49; 4:00<br>8:32 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | In the commercial for Galaxy Tab 10.1, pinch to zoom and scrolling features are shown; tap to zoom and navigate feature shown. Tablet design is described as "revolutionary." | x | x | x | |
| 34 | [GALAXY S II] Official Live Demo - Viewing (http://www.youtube.com/watch?v=LP38KF-LR0U&feature=BFa&list=PL3F63929F54D9A90A&lf=plpp_video) | N/A | 0:24<br>1:01 | Samsung | Scroll or Gesture/Multi-touch | In the commercial for the Galaxy S II, pinch to zoom and scrolling features are shown. | x | | | x |
| 35 | Samsung Galaxy S II Presentation | SAMNDCA10775587 - 5624 | SAMNDCA10775607 | Samsung | Scroll or Gesture/Zoom and Refocus | Diagrams showing "a double tap and tilt of the device will zoom in and out" and "Tap and Pan will move the user from widgets to menus." | x | x | | |
| 36 | P5 Usability Evaluation Results - 4/9/11 (Translated) | SAMNDCA00176053 - 6171 | SAMNDCA00176125 | Samsung | Bounce Effect | Samsung notes their current browser has no Bounce effect, and for the iPad, "there is an element of Fun from the natural Bounce effect following hand movements." There is a text screen noting that the GA Lab Evaluation will evaluate the Bounce effect. | x | | | |
| 37 | WOW Project - July 2007 (Translated) | SAMNDCA00202212 - 2225 | SAMNDCA00202221 | Samsung | Multi-touch | Samsung compares the Samsung Optical Joystick, with 'Multi Touch' next to an Apple logo. | | | | x |
| 38 | Relative Evaluation Report on S1, iPhone, 3/2/10 | SAMNDCA00203880 - 4010 | SAMNDCA00203909, '3928, and '3944 | Samsung | Scroll or Gesture/Zoom and Refocus | After comparing the web browser of the i9000 and iPhone, Samsung notes iPhone's drag and Double Tap feature, and recommend "add various features that a user can easily notice such as up/down transitions". | x | x | | |
| 39 | 3G iPhone US Market Impact, July 2008 | SAMNDCA00251506 - 1512 | SAMNDCA00251508 and '1513 | Samsung | Multi-touch | Two options to deal with the iPhone: "Option 1: match the iPhone on mainly one dimension (product).... Option 2: match the iPhone on multiple dimensions."<br>Under the Samsung short/medium term plan for Product, under User Interface, it lists "Multi Finger Touch." | | | | x |

Demand for Utility Patents

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | Behold3 Usability Evaluation Results, 5/10/10 (Translated) [Chung Exhibit B] | SAMNDCA00508318 - 8411 | SAMNDCA00508344, and '8383 | Samsung | Bounce Effect/Scroll or Gesture | On the Behold3, "unintentional unlocking is possible because the sliding action works on any part of the screen." The document also notes that when "a web page is dragged to the bottom edge or the sides, no effects are provided and the overall feel is plain." | x | x | | |
| 41 | Email from Jaegwan Shin to Ioi Lam et al., RE" "[P1 Browser] Request for Implementation of Additional Effects", 10/6/10 (Translated) | SAMDCA00525347 - 5349 | SANDCA00525347 | Samsung | Bounce Effect | Samsung HQ requested for the implementation of the Bounce effect: "HQ is asking us to make it for P1 project.... 3. There is no bounce effect in Browser screen." | | x | | |
| 42 | Email from Sangwook Han of Nemustech to Seungyun Lee of Samsung RE "[List Bouncing] Questions regarding bouncing", 10/28/10 (Translated) | SAMNDCA10850604 - 0607 | SAMNDCA10850604 | Samsung | Bounce Effect | "With regards to bounce, we used Mass Spring Damper model which followed the actual physical effect and obtained the bounce effect that is similar to iPad. " | | x | | |
| 43 | Email from Sangwook Han of Nemustech to Seungyun Lee of Samsung RE: "[Tiffany Effect] P1 Application Case / Additional Review Items Inquiry", 7/21/10 (Translated) | SAMNDCA10850822 - 0824 | SAMNDCA10850822 | Samsung | Bounce Effect | "There is a request to insert Bouncing in GridView." | | x | | |
| 44 | Email from Jaegwan Shin to Arum Kumar et al., RE: "P4 Browser Touch performance problems", 5/7/11 | SAMNDCA00201351 - 1356 | SAMNDCA00201351 - 1523 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | HQ reported problems regarding: "2. Scroll not respond.... 3. Touch performance fail... 1) Pinch zoom in: focus time slow than iPad 2; 2) Double Tap: zoomout time is slow than iPad 2. 4. While Scroll/DoubleTap, checkboarder is showing too much vs iPad 2." | | x | x | x |
| 45 | Email from Jaegwan Shin to Ioi Lam et al., RE: "[San Jose] Request for update of P5/P4 zoom/scroll progress", 4/19/11 (Translated) | SAMNDCA00229399 - 9409, SAMNDCA00229410 | SAMNDCA00229399, and '9410 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Performance test results after applying patch for scroll/zoom on P5 benchmarked against various models of the iPad. | | x | x | x |
| 46 | GT-P7500/P7510_Browser_Touch Performance Test (Translated) | SAMNDCA00229410 - 9415 | SAMNDCA00229410 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Browser Touch Performance Test of P7510 benchmarked against various models of the iPad. | | x | x | x |
| 47 | Email chain between Ioi Lam and Jaegwan Shin, RE: "U1 browser scrolling patch", 3/3/11 | SAMNDCA00229440 - 9448 (chart shown more clearly on SAMNDCA00229449 - 9451) | SAMNDCA00229440 - 9442 (chart shown more clearly on SAMNDCA00229449 - 9451) | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | "Here is some test result from HW regarding zoom/scroll. As we has been asked, HQ wants us to improve initial response for zoom especially." Email then lists results for Pinch Zoom, Scroll, and DoubleTap between the i9100, Optimus 2x, and iPhone4. | | x | x | x |
| 48 | Email chain between Jaegwan Shin and Ioi Lam et al., RE: "[San Jose - Urgent] [U1] zoom/scroll performance", 3/20/11 (Translated) | SAMNDCA00229396 - 9397 | SAMNDCA00229396 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | HQ requested for various performance improvements regarding the zoom in and scrolling feature. | | x | x | x |
| 49 | i900 Improvement Points | SAMNDCA10042955 - 2984 | SAMNDCA10042979 and '2981 | Samsung | Scroll or Gesture | On the SMS-manager and Contact list overview, it is noted "scrolling up/down by vertical finger dragging (just like it is realized on iPhone)." | | x | | |
| 50 | European Telecommunication Operation P5 vs. iPad 2, 5/18/11 | S-ITC-010617659 - 7694 | S-ITC-010617661 and '7691 | Samsung | Scroll or Gesture | The P5 "touch respond is slow, especially, if you scroll fast, it follows the fingers with delay." | | x | | |
| 51 | Acme, July 2008 | SAMNDCA10275576 - 5646 | SAMNDCA10275618 | Samsung | Scroll or Gesture | "...the up and down scrolling action is seen as fun...." | | x | | |
| 52 | Browser Zooming Methods UX Exploration Study, 4/17/09 | SAMNDCA11104115 - 4139 | SAMNDCA11104133, '4134, '4138 | Samsung | Zoom and Refocus | "The most preferred method is "Double-Tap" Zooming... Simplicity is the primary reason of the choice." "The least preferred methods were split between u960 Browser and TouchWiz designs." "Too many steps..."dislike of long press, perception of reliability issues and complicated interactions were reasons given...." "Suggestions - Adopt Double-Tap as a supplementary zooming method... the UX of iPhone can be used as a design benchmark. Apply double-tap method consistently in other applications supporting zoom....." | | | x | |
| 53 | Touch Devices Browser User Experience Comparison, November 2008 | SAMNDCA11082242 - 2299 | SAMNDCA11082273 | Samsung | Multi-touch | Document compares the Browser functionality across several different phones. "Rendering is among the most accurate among all browsers with dynamic magnification and reduction with multi-touch." | | | | x |
| 54 | Apple iPad (untranslated document), 1/28/10 | SAMNDCA10806707 - 6720 | SAMNDCA10806713 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Diagrams showing the iPad with Panning, Pinching and Double Tap features. | | x | x | x |
| 55 | Email from Seung Yun Lee to Meeso Kim et al., RE: "Today's Conference Call - Action Items"  10/12/10 | SAMNDCA00533366 - 3373 | SAMNDCA00533366 | Samsung | Bounce Effect | "List Bouncing effect is applied to all the applications." | x | | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

## Demand for Utility Patents

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 56 | Touch Devices Browser User Experience Best Practices, STA UX, 2/13/09 | SAMNDCA10166661 - 6742 | SAMNDCA1016698, '6708, '6721 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | "Touch screen is very responsive and accurate." "Multi-touch user interface is a competitive advantage for finger touch interaction design." "There is no widget needed to zoom in and out - users interact with screen objects directly." "Scrollbars appear when scrolling but will time out quickly after." | | x | x | x |
| 57 | 3G iPhone Counter Plan, 6/14/08 | SAMNDCA00251457 - 1505 | SAMNDCA00251472, '1473, '1503 | Samsung | Multi-touch | In a product competitive chart, "What is inferior? Less sophisticated User Interface.. No multi-touch UI." Instinct Action Item, "Touchwiz UI." Product competitive analysis for the OMNIA also includes "no multitouch UI." | | | | x |
| 58 | iPhone 3G UX Analysis, 7/12/08 | SAMNDCA00251538 - 1565 | SAMNDCA00251545 | Samsung | Scroll or Gesture | Shows screenshots of the iPhone "sweep horizontally and delete email." | | x | | |
| 59 | Email chain between Jee Won Lee and others, RE Q1] Email Body, 8/17/11 | SAMNDCA10524415 - 4420 | SAMNDCA10524416 | Samsung | Gesture | "The tablet team will check with the development team to see if the technology identical to that of the iPad (lining-up within the screen without scrolling left-to-right in test view/ fit to screen in the image web view) to email that is fit to screen." | | x | | |

| Supplement | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 60 | McKinsey Report - Winning in smartphones: It's now or never | SAMNDCA10807316 (Hong Exhibit 2152) | SAMNDCA10807332, and '7358 | Samsung | Scroll or Gesture/Zoom and Refocus | 7332:  Above chart showing consumer rating of user interface: "Samsung is weak in user interface compared to key competitors, and this is affecting the user experience of smartphone features. . . . E.g., interacting with the browser: 'The way the zoom on web pages and ability to scroll around is very bad and hard to do on this phone.' . . . E.g., the UI decisions made in the browser design: 'the resizing of web pages is poor.'" <br><br> '7358:  "Strategic plays for Samsung . . . Match the iPhone UI within the next 12 months.  Build Samsung brand credibility in smartphone around user experiences." | | x | x | |
| 61 | Gravity Tank:  Touch Portfolio: Rollout Strategy - Recommendation Based on Consumer Insight | SAMNDCA00191811 (Sohn Exhibit 1654) | SAMNDCA00191846, '1907, and '1928 | Samsung | Scroll or Gesture/Zoom and Refocus/Multitouch/Bounce Effect | 1846:  "The iPhone isn't just easy to use, 'it's sexy to use' - Fun: Gestures like the two fingered pinch and flick add a game-like quality to interactions . . . "With the multi-touch function you can zoom in and zoom out and move photos, and that's great" - Whimsical: Lists bounce, icons flitter - the iPhone has a sense of whimsy that shows a thoughtful character in the interface - "You play with it because it's simply fun to handle" - Dramatic - . . . "It's sexy to use." <br><br> '1907, '1928:  "Accuracy is the most important factor in a touch screen phone across segments." "A highly responsive, compelling UI is critical to delivering promise of touch - Addressing input deficiency is key user pain point." | x | x | x | x |
| 62 | Palm Pre, Apple iPhone, HTC Magic US:  UI Weakness/Strength Report - August 5, 2009 - R&D Management Group | SAMNDCA00391937 - 1960 | SAMNDCA00391958 | Samsung | Multi-touch/Gesture | Under Apple iPhone 3GS, Multi-touch, Multi-touch "enhances usability of Application with Multi-touch support. Allows to operate instruments, 2-person game play, etc. with use of Multi-touch. Samsung - we use one finger zoom." | | x | | x |

## iPhone Capacity Analysis

| | BOH | FYQ2'10 | FYQ3'10 | FYQ4'10 | FYQ1'11 | FYQ2'11 | FYQ3'11 | FYQ4'11 | FYQ1'12 |
|---|---|---|---|---|---|---|---|---|---|
| Units Sold | 2/ | | | | | | | | |
| **Total** | | 7,089 | 7,900 | 14,103 | 16,234 | 18,648 | 20,337 | 17,073 | 37,049 |

**Sources/Notes:**

1/ Equal to the prior quarter's Ending Potential Inventory.

2/ Based on Apple's worksheet entitled: iPhone Supply and Sales: 2010 - 2011 : K Units (APLNDC-Y0000055417), sections titled Installed Capacity Saleable Units - Cumulative and Units Sold In - Cumulative. Non-cumulative numbers were calculated by subtracting prior quarter's data from the current quarter.

3/ Based on Apple's worksheet entitled: iPhone Supply and Sales: 2010 - 2011 : K Units (APLNDC-Y0000055417), section titled Installed Capacity Units Unsold - Cumulative.

5/ Calculated by subtracting the prior quarter's Ending Potential Inventory from the current quarter.

7/ Equal to Quarterly Additional Capacity Created (Used) less Excess Inventory.  Where capacity is used in future periods, that capacity was deducted from the preceding quarter which had excess capacity.  This maintains the excess capacity which was actually sold by Apple.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## iPad Capacity Analysis



| | FYQ3'10 | FYQ4'10 | FYQ1'11 | FYQ2'11 | FYQ3'11 | FYQ4'11 | FYQ1'12 |
|---|---|---|---|---|---|---|---|
| Units Sold 2/ | | | | | | | |
| Total | 3,270 | 4,187 | 7,303 | 4,651 | 9,184 | 11,092 | 15,289 |

**Sources/Notes:**

1/ Equal to the prior quarter's Ending Potential Inventory.

2/ Based on Apple's worksheet entitled: iPad Supply and Sales: 2010 - 2011 : K Units (APLNDC-Y0000055416), sections titled Installed Capacity Saleable Units - Cumulative and Units Sold In - Cumulative. Non-cumulative numbers were calculated by subtracting prior quarter's data from the current quarter.

3/ Based on Apple's worksheet entitled: iPad Supply and Sales: 2010 - 2011 : K Units (APLNDC-Y0000055416), section titled Installed Capacity Units Unsold - Cumulative.

4/ Calculated by subtracting the prior quarter's Ending Potential Inventory from the current quarter.



6/ Equal to Quarterly Additional Capacity Created (Used) less Excess Inventory. Where capacity is used in future periods, that capacity was deducted from the preceding quarter which had excess capacity. This maintains the excess capacity which was actually sold by Apple.

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 28

# 26% of Phone Purchasers Chose a New Carrier



### Most Recently Purchased Cell Phone

Q. Which of the following statements best describes your most recently purchased cell phone? (Total Respondents=2961)
Source: Google/Compete Wireless Shopper 2.0 Study, January 2010.



Google Confidential and Proprietary

**Source**: ThinkTech with Google Presentation, "Wireless Shoppers 2.0 How Consumers Shop for Wireless Phones Google Compete Clickstream and Survey Based Study. U.S. Feb 2010," pp. 6.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Mor-Flo Analysis - Smartphones**

| (Units in Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Smartphone Market Share** 1/ | | | | | | | | |
| Apple Units Sold | 2,550 | 2,772 | 4,924 | 3,776 | 6,830 | 6,256 | 4,807 | 14,757 |
| *Apple Market Share %* | *20.2%* | *19.3%* | *23.7%* | *17.2%* | *29.5%* | *24.7%* | *20.0%* | *45.3%* |
| | | | | | | | | |
| Samsung Units Sold | 720 | 714 | 2,950 | 2,750 | 2,328 | 3,750 | 4,597 | 6,251 |
| *Samsung Market Share %* | *5.7%* | *5.0%* | *14.2%* | *12.5%* | *10.1%* | *14.8%* | *19.2%* | *19.2%* |
| | | | | | | | | |
| Other Manufacturer Units Sold | 9,383 | 10,873 | 12,933 | 15,409 | 14,001 | 15,341 | 14,595 | 11,561 |
| *Other Manufacturer Market Share %* | *74.2%* | *75.7%* | *62.2%* | *70.2%* | *60.5%* | *60.5%* | *60.8%* | *35.5%* |
| | | | | | | | | |
| Total Market Units Sold | 12,653 | 14,359 | 20,806 | 21,935 | 23,158 | 25,347 | 23,999 | 32,569 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | | |
| **Samsung Accused Smartphone Unit Sales to Be Deducted** 2/ | | | | | | | | |
| Samsung Accused Unit Sales | - | 125 | 2,672 | 2,326 | 1,998 | 4,698 | 3,114 | 3,058 |
| *% of Samsung IDC Estimates* | *0.0%* | *17.5%* | *90.6%* | *84.6%* | *85.9%* | *125.3%* | *67.7%* | *48.9%* |
| *% of Total Market* | *0.0%* | *0.9%* | *12.8%* | *10.6%* | *8.6%* | *14.8%* | *13.0%* | *9.4%* |
| | | | | | | | | |
| **Smartphone Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | 2,550 | 2,772 | 4,924 | 3,776 | 6,830 | 6,256 | 4,807 | 14,757 |
| *Apple Market Share %* | *20.2%* | *19.5%* | *27.1%* | *19.3%* | *32.3%* | *29.0%* | *23.0%* | *50.0%* |
| | | | | | | | | |
| Samsung Units Sold | 720 | 589 | 278 | 424 | 329 | - | 1,483 | 3,192 |
| *Samsung Market Share %* | *5.7%* | *4.1%* | *1.5%* | *2.2%* | *1.6%* | *0.0%* | *7.1%* | *10.8%* |
| | | | | | | | | |
| Other Manufacturer Units Sold | 9,383 | 10,873 | 12,933 | 15,409 | 14,001 | 15,341 | 14,595 | 11,561 |
| *Other Manufacturer Market Share %* | *74.2%* | *76.4%* | *71.3%* | *78.6%* | *66.2%* | *71.0%* | *69.9%* | *39.2%* |
| | | | | | | | | |
| Total Market Units Sold | 12,653 | 14,234 | 18,135 | 19,610 | 21,160 | 21,597 | 20,885 | 29,511 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/  IDC Worldwide Quarterly Mobile Phone Tracker, Q4 2011 Final Data, tab "Historical Pivot" (APLNDC-Z0000000001). Data was filtered by setting Country to "USA" and Device Type to "Smartphone."

2/  See Exhibit 37-S.

3/  Smartphone Market Share after Mor-Flo is calculated after subtracting accused Samsung smartphone units from the Samsung units in the market. For 2011 Q2, there are more Samsung accused smartphone units than IDC estimates, thus Samsung units sold after the deduction of accused units was changed to 0 (from a negative units calculation).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    **EXHIBIT 30-S**

**Mor-Flo Analysis - Tablets**

| (Units in Thousands) | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|
| **Tablet Market Share** 1/ | | | | | | | |
| Apple Units Sold | 2,217 | 1,957 | 3,606 | 1,941 | 4,308 | 3,791 | 6,173 |
| *Apple Market Share %* | *96.8%* | *79.1%* | *75.0%* | *71.2%* | *73.0%* | *60.0%* | *73.7%* |
| | | | | | | | |
| Samsung Units Sold | - | - | 560 | 235 | 121 | 135 | 166 |
| *Samsung Market Share %* | *0.0%* | *0.0%* | *11.6%* | *8.6%* | *2.1%* | *2.1%* | *2.0%* |
| | | | | | | | |
| Other Manufacturer Units Sold | 72 | 518 | 643 | 551 | 1,473 | 2,392 | 2,036 |
| *Other Manufacturer Market Share %* | *3.2%* | *20.9%* | *13.4%* | *20.2%* | *25.0%* | *37.9%* | *24.3%* |
| | | | | | | | |
| Total Market Units Sold | 2,289 | 2,476 | 4,809 | 2,728 | 5,901 | 6,318 | 8,375 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | |
| **Samsung Accused Tablet Unit Sales to Be Deducted** 2/ | | | | | | | |
| Samsung Accused Unit Sales | - | - | 262 | 77 | 266 | 293 | 347 |
| *% of Samsung IDC Estimates* | *0.0%* | *0.0%* | *46.8%* | *32.8%* | *219.3%* | *216.4%* | *209.1%* |
| *% of Total Market* | *0.0%* | *0.0%* | *5.4%* | *2.8%* | *2.1%* | *2.1%* | *2.0%* |
| | | | | | | | |
| **Tablet Market Share After Mor-Flo Adjustments** 3/ | | | | | | | |
| Apple Units Sold | 2,217 | 1,957 | 3,606 | 1,941 | 4,308 | 3,791 | 6,173 |
| *Apple Market Share %* | *96.8%* | *79.1%* | *79.3%* | *73.2%* | *74.5%* | *61.3%* | *75.2%* |
| | | | | | | | |
| Samsung Units Sold | - | - | 298 | 158 | - | - | - |
| *Samsung Market Share %* | *0.0%* | *0.0%* | *6.6%* | *6.0%* | *0.0%* | *0.0%* | *0.0%* |
| | | | | | | | |
| Other Manufacturer Units Sold | 72 | 518 | 643 | 551 | 1,473 | 2,392 | 2,036 |
| *Other Manufacturer Market Share %* | *3.2%* | *20.9%* | *14.1%* | *20.8%* | *25.5%* | *38.7%* | *24.8%* |
| | | | | | | | |
| Total Market Units Sold | 2,289 | 2,476 | 4,547 | 2,651 | 5,780 | 6,183 | 8,209 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ IDC Worldwide Quarterly Media Tablet Tracker, Q4 2011 , tab "Pivot Table'  (APLNDC-Z0000000003). Data was filtered by
   'Product Category: Media Tablet' and 'Region: USA'.

2/ See Exhibit 38-S.

3/ Tablet Market Share after Mor-Flo is calculated after subtracting accused Samsung tablet units from Samsung units in the
   market. For 2011 Q2, 2011 Q3 and 2011 Q4, there are more Samsung accused tablet units than IDC estimates, thus Samsung
   units sold after the deduction of accused units was changed to 0 (from a negative units calculation).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Smartphone Market Share by Carrier 1/ 2/

| Carrier & Manufacturer | | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|---|
| **AT&T** | Apple | 60% | 65% | 68% | 63% | 58% | 52% | 44% | 63% |
| | Samsung | 3% | 0% | 4% | 6% | 6% | 10% | 11% | 12% |
| | Others | 37% | 35% | 29% | 32% | 36% | 38% | 45% | 24% |
| | *AT&T Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Verizon Wireless** | Apple | 0% | 0% | 0% | 0% | 38% | 32% | 34% | 54% |
| | Samsung | 3% | 3% | 2% | 16% | 9% | 13% | 13% | 12% |
| | Others | 97% | 97% | 98% | 84% | 53% | 55% | 53% | 34% |
| | *Verizon Wireless Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **T-Mobile** | Apple | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| | Samsung | 6% | 4% | 13% | 15% | 15% | 28% | 33% | 45% |
| | Others | 94% | 96% | 87% | 85% | 85% | 72% | 67% | 55% |
| | *T-Mobile Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Sprint** | Apple | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 36% |
| | Samsung | 21% | 22% | 39% | 28% | 25% | 42% | 41% | 32% |
| | Others | 79% | 78% | 61% | 72% | 75% | 58% | 59% | 32% |
| | *Sprint Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Other Carriers** | Apple | 0% | 0% | 0% | 0% | 0% | 1% | 1% | 3% |
| | Samsung | 7% | 13% | 20% | 10% | 8% | 15% | 10% | 20% |
| | Others | 93% | 87% | 80% | 90% | 92% | 84% | 89% | 77% |
| | *Other Carriers Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011."

2/ According to a Strategy Analytics representative, Sprint CMDA does not include their iDEN network which has been included in Other Carriers.  Additionally, carriers such are Boost Mobile and Virgin Mobile are included within their parent company Sprint.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Smartphone Mor-Flo Analysis - AT&T**

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share** 1/ | | | | | | | | |
| Apple Units Sold | 2,800 | 3,300 | 5,400 | 4,400 | 3,700 | 3,600 | 2,750 | 6,500 |
| *Apple Market Share* | *59.9%* | *64.5%* | *67.6%* | *62.8%* | *58.4%* | *51.6%* | *44.4%* | *63.4%* |
| | | | | | | | | |
| Samsung Units Sold | 150 | - | 300 | 400 | 350 | 700 | 650 | 1,250 |
| *Samsung Market Share* | *3.2%* | *0.0%* | *3.8%* | *5.7%* | *5.5%* | *10.0%* | *10.5%* | *12.2%* |
| | | | | | | | | |
| Others Units Sold | 1,723 | 1,814 | 2,290 | 2,209 | 2,281 | 2,681 | 2,790 | 2,500 |
| *Others Market Share* | *36.9%* | *35.5%* | *28.7%* | *31.5%* | *36.0%* | *38.4%* | *45.1%* | *24.4%* |
| | | | | | | | | |
| AT&T Total Units Sold | 4,673 | 5,114 | 7,990 | 7,009 | 6,331 | 6,981 | 6,190 | 10,250 |
| *AT&T Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Samsung Accused Smartphone Unit Sales To Be Deducted** 2/ | | | | | | | | |
| Total Units | - | - | 481 | 251 | 229 | 458 | 652 | 882 |
| *% of Strategy Analytic Estimates* | *0.0%* | *0.0%* | *160.5%* | *62.8%* | *65.5%* | *65.4%* | *100.3%* | *70.5%* |
| *% of Total Market* | *0.0%* | *0.0%* | *3.8%* | *3.6%* | *3.6%* | *6.6%* | *10.5%* | *8.6%* |

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | 2,800 | 3,300 | 5,400 | 4,400 | 3,700 | 3,600 | 2,750 | 6,500 |
| *Apple Market Share* | *59.9%* | *64.5%* | *70.2%* | *65.1%* | *60.6%* | *55.2%* | *49.6%* | *69.4%* |
| | | | | | | | | |
| Samsung Units Sold | 150 | - | - | 149 | 121 | 242 | - | 368 |
| *Samsung Market Share* | *3.2%* | *0.0%* | *0.0%* | *2.2%* | *2.0%* | *3.7%* | *0.0%* | *3.9%* |
| | | | | | | | | |
| Others Units Sold | 1,723 | 1,814 | 2,290 | 2,209 | 2,281 | 2,681 | 2,790 | 2,500 |
| *Others Market Share* | *36.9%* | *35.5%* | *29.8%* | *32.7%* | *37.4%* | *41.1%* | *50.4%* | *26.7%* |
| | | | | | | | | |
| AT&T Total Units Sold | 4,673 | 5,114 | 7,690 | 6,758 | 6,102 | 6,523 | 5,540 | 9,368 |
| *AT&T Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011."

2/ Sales limited to smartphones sold at AT&T, which include Captivate, Galaxy S II (Skyrocket), Galaxy S II (AT&T Edition, 4G) and Infuse 4G (see Exhibit 10-S). See Exhibit 37.1-S.

3/ Manufacturer Market Share percentage after Mor-Flo adjustment is calculated by subtracting accused Samsung AT&T smartphone units from AT&T sales estimated by Strategy Analytics. For the second and third quarter of 2010 and 2011, Samsung sold more AT&T smartphone units than Strategy Analytics estimates, thus Samsung Units Sold after accused unit deductions was changed to 0 (from a negative units calculation) to reflect this event.

## Smartphone Mor-Flo Analysis - Verizon Wireless

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share** 1/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | 2,600 | 2,200 | 2,000 | 4,300 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *38.1%* | *31.7%* | *33.6%* | *53.8%* |
| | | | | | | | | |
| Samsung Units Sold | 100 | 100 | 100 | 800 | 600 | 900 | 800 | 950 |
| *Samsung Market Share* | *2.8%* | *2.6%* | *2.4%* | *15.7%* | *8.8%* | *13.0%* | *13.4%* | *11.9%* |
| | | | | | | | | |
| Others Units Sold | 3,447 | 3,714 | 4,040 | 4,295 | 3,630 | 3,830 | 3,150 | 2,750 |
| *Others Market Share* | *97.2%* | *97.4%* | *97.6%* | *84.3%* | *53.1%* | *55.3%* | *52.9%* | *34.4%* |
| | | | | | | | | |
| Verizon Total Units Sold | 3,547 | 3,814 | 4,140 | 5,095 | 6,830 | 6,930 | 5,950 | 8,000 |
| *Verizon Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | | |
| **Samsung Accused Smartphone Unit Sales To Be Deducted** 2/ | | | | | | | | |
| Total Units | - | - | 541 | 660 | 168 | 710 | 283 | 92 |
| *% of Strategy Analytic Estimates* | *0%* | *0%* | *541.0%* | *82.5%* | *28.0%* | *78.9%* | *35.4%* | *9.6%* |
| *% of Total Market* | *0%* | *0%* | *2.4%* | *12.9%* | *2.5%* | *10.2%* | *4.8%* | *1.1%* |
| | | | | | | | | |
| **Manufacturer Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | 2,600 | 2,200 | 2,000 | 4,300 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *39.0%* | *35.4%* | *35.3%* | *54.4%* |
| | | | | | | | | |
| Samsung Units Sold | 100 | 100 | - | 140 | 432 | 190 | 517 | 858 |
| *Samsung Market Share* | *2.8%* | *2.6%* | *0.0%* | *3.2%* | *6.5%* | *3.1%* | *9.1%* | *10.9%* |
| | | | | | | | | |
| Others Units Sold | 3,447 | 3,714 | 4,040 | 4,295 | 3,630 | 3,830 | 3,150 | 2,750 |
| *Others Market Share* | *97.2%* | *97.4%* | *100.0%* | *96.8%* | *54.5%* | *61.6%* | *55.6%* | *34.8%* |
| | | | | | | | | |
| Verizon Total Units Sold | 3,547 | 3,814 | 4,040 | 4,435 | 6,662 | 6,220 | 5,667 | 7,908 |
| *Verizon Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011".

2/ SAMNDCA00372946 - 3138. Sales limited to smartphones sold at Verizon include Continuum, Droid Charge and Fascinate (see Exhibit 10-S). See Exhibit 37.1-S.

3/ Manufacturer Market Share percentage after Mor-Flo adjustment is calculated by subtracting accused Samsung Verizon smartphone units from Verizon sales estimated by Strategy Analytics. For the third quarter of 2010, Samsung sold more Verizon smartphone units than Strategy Analytics estimates, thus Samsung Units Sold after accused unit deductions was changed to 0 (from a negative units calculation) to reflect this event.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    **EXHIBIT 31.3-S**

## Smartphone Mor-Flo Analysis - Sprint

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share** 1/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | - | - | - | 1,800 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *36.0%* |
| | | | | | | | | |
| Samsung Units Sold | 300 | 400 | 900 | 800 | 700 | 1,700 | 1,600 | 1,600 |
| *Samsung Market Share* | *21.2%* | *22.3%* | *38.7%* | *27.7%* | *25.4%* | *42.0%* | *41.0%* | *32.0%* |
| | | | | | | | | |
| Others Units Sold | 1,112 | 1,391 | 1,425 | 2,085 | 2,055 | 2,343 | 2,300 | 1,600 |
| *Others Market Share* | *78.8%* | *77.7%* | *61.3%* | *72.3%* | *74.6%* | *58.0%* | *59.0%* | *32.0%* |
| | | | | | | | | |
| Sprint Total Units Sold | 1,412 | 1,791 | 2,325 | 2,885 | 2,755 | 4,043 | 3,900 | 5,000 |
| *Sprint Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | | |
| **Samsung Accused Smartphone Unit Sales To Be Deducted** 2/ | | | | | | | | |
| Total Units | - | 84 | 882 | 833 | 717 | 2,288 | 1,008 | 1,047 |
| *% of Strategy Analytic Estimates* | *0%* | *21.0%* | *98.0%* | *104.1%* | *102.5%* | *134.6%* | *63.0%* | *65.5%* |
| *% of Total Market* | *0%* | *4.7%* | *37.9%* | *27.7%* | *25.4%* | *42.0%* | *25.8%* | *20.9%* |
| | | | | | | | | |
| **Manufacturer Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | - | - | - | 1,800 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *45.5%* |
| | | | | | | | | |
| Samsung Units Sold | 300 | 316 | 18 | - | - | - | 592 | 553 |
| *Samsung Market Share* | *21.2%* | *18.5%* | *1.2%* | *0.0%* | *0.0%* | *0.0%* | *20.5%* | *14.0%* |
| | | | | | | | | |
| Others Units Sold | 1,112 | 1,391 | 1,425 | 2,085 | 2,055 | 2,343 | 2,300 | 1,600 |
| *Others Market Share* | *78.8%* | *81.5%* | *98.8%* | *100.0%* | *100.0%* | *100.0%* | *79.5%* | *40.5%* |
| | | | | | | | | |
| Sprint Total Units Sold | 1,412 | 1,707 | 1,443 | 2,085 | 2,055 | 2,343 | 2,892 | 3,953 |
| *Sprint Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011."

2/ Sales limited to smartphones sold at Sprint, which include Epic 4G, Galaxy Prevail, Galaxy S II (Epic 4G Touch), Intercept, Nexus S 4G, Replenish, and Transform (see Exhibit 10-S). See Exhibit 37.1-S.

3/ Manufacturer Market Share percentage after Mor-Flo is calculated by subtracting accused Samsung Sprint smartphone units from Sprint sales estimated by Strategy Analytics.  For the fourth quarter of 2010 and the first and second quarter of 2011, Samsung sold more Sprint smartphone units than Strategy Analytics estimates, thus Samsung Units Sold after accused unit deductions was changed to 0 (from a negative units calculation) to reflect this event.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Prepared by Invotex Group

**Apple iPhone P&L Summary** 1/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2010 | | Q3 - Q4 | FY 2011 | | | | FY Total | FY 2012 | | Q1 - Q2 | Grand Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Q3 | Q4 | Total | Q1 | Q2 | Q3 | Q4 | | Q1 | Q2 | Total | |
| **U.S. Sales** 2/, 3/ | | | | | | | | | | | | | |
| Unit | | 2,778 | 4,912 | 7,691 | 3,767 | 6,810 | 5,670 | 4,820 | 21,066 | 15,073 | 10,687 | 25,760 | 54,516 |
| Revenue | | $ 1,562 | $ 2,841 | $ 4,402 | $ 2,102 | $ 4,256 | $ 3,438 | $ 2,850 | $ 12,647 | $ 9,393 | $ 6,678 | $ 16,071 | $ 33,120 |
| | | | | | | | | | | | | | |
| **Worldwide Sales** 4/ | | | | | | | | | | | | | |
| Unit | [a] | 8,398 | 14,102 | 22,501 | 16,235 | 18,647 | 20,338 | 17,073 | 72,294 | 37,044 | 35,064 | 72,108 | 166,903 |
| Revenue | [b] | $ 5,271 | $ 8,776 | $ 14,047 | $ 10,388 | $ 12,225 | $ 13,312 | $ 10,836 | $ 46,761 | $ 24,267 | $ 22,582 | $ 46,849 | $ 107,657 |

**Sources/Notes:**

1/  Fiscal year ending September 31.

2/  Apple iPhone Units / Revenue Report APLNDC0003149809 - 9814.  Revenue = "Total Handset Billings."

3/  Apple does not prepare GAAP Line of Business reports for product lines on a US geographic segment basis.  See Mark Buckley Deposition, 2/23/12, pp. 88-89.

4/  "GAAP Line of Business Reporting - iPhone", APLNDC0003149795 - 9808.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Apple iPad P&L Summary**

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2011 | | | | FY Total | FY 2012 | | Q1 - Q2 Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | | Q1 | Q2 | | |
| **U.S. Sales** 2/, 3/ | | | | | | | | | | |
| Unit | | 3,597 | 1,914 | 4,293 | 3,795 | 13,600 | 5,967 | 4,460 | 10,427 | 24,027 |
| Revenue | | $ 2,065 | $ 1,067 | $ 2,583 | $ 2,172 | $ 7,887 | $ 3,240 | $ 2,387 | $ 5,627 | $ 13,513 |
| | | | | | | | | | | |
| **Worldwide Sales** 4/ | | | | | | | | | | |
| Unit | [a] | 7,331 | 4,694 | 9,246 | 11,123 | 32,395 | 15,434 | 11,799 | 27,232 | 59,627 |
| Revenue | [b] | $ 4,397 | $ 2,663 | $ 5,660 | $ 6,634 | $ 19,355 | $ 8,875 | $ 6,382 | $ 15,257 | $ 34,612 |

**Sources/Notes:**

1/  Fiscal year ending September 31.

2/  Apple iPod Touch and iPad Units / Revenue Report, APLNDC0003149779 - 9794.  Revenue = "Total Handset Billings."

3/  Apple does not prepare GAAP Line of Business reports for product lines on a US geographic segment basis.  See Mark Buckley Deposition, 2/23/12, pp. 88-89.

4/  "GAAP Line of Business Reporting - iPad", APLNDC0003149795 - 9808.

Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                **EXHIBIT 34**

**Apple iPhone Accessories P&L Summary** 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2010 | | Q3 - Q4 Total | FY 2011 | | | | FY Total | FY 2012 Q1 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q3 | Q4 | | Q1 | Q2 | Q3 | Q4 | | | |
| **iPhone Units Sold** 2/ | [a] | 8,398 | 14,102 | 22,501 | 16,235 | 18,647 | 20,338 | 17,073 | 72,294 | 37,044 | 131,838 |
| **Revenue** | [b] | 63 | 46 | $    109 | 80 | 74 | (2) | 145 | $    297 | 150 | $    556 |

**Sources/Notes:**
1/  Fiscal year ending September 31.
2/  See Exhibit 32.
3/  "GAAP Line of Business Reporting - Ph.Acc", APLNDC-Y0000051606 - 1609, at '1607.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 35**

## Apple iPad Accessories P&L Summary 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2011 | | | | FY Total | FY 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | | Q1 | |
| **iPad Units Sold** 2/ | [a] | 7,331 | 4,694 | 9,246 | 11,123 | 32,395 | 15,434 | 47,829 |
| **Revenue** | [b] | 211 | 172 | 385 | 234 | 1,002 | 278 | $   1,562 |

**Sources/Notes:**

1/  Fiscal year ending September 31.

2/  See Exhibit 33.

3/  "GAAP Line of Business Reporting - iPad.Acc", APLNDC-Y0000051606 - 1609, at '1606.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 36**



Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                     **EXHIBIT 37-S**

**Samsung Accused Smartphones P&L** 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | 2010 | | | YE Total | 2011 | | | | YE Total | 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2Q | 3Q | 4Q | | 1Q | 2Q | 3Q | 4Q | | Q1 | |
| **U.S. Sales - STA and SEA** 2/ | | | | | | | | | | | | |
| Units | | 125 | 2,672 | 2,326 | 5,122 | 1,998 | 4,698 | 3,114 | 3,058 | 12,869 | 2,598 | 20,589 |
| Revenue | | $ 36 | $ 1,101 | $ 954 | $ 2,090 | $ 759 | $ 1,523 | $ 893 | $ 1,087 | $ 4,262 | $ 850 | $ 7,202 |
| | | | | | | | | | | | | |
| **Worldwide Sales - Manufacturing** | | | | | | | | | | | | |
| Units | [a] | 689 | 5,184 | 5,622 | 11,495 | 7,064 | 12,669 | 16,771 | 15,955 | 52,458 | 16,891 | 80,845 |
| Revenue | [b] | 270 | $ 2,153 | $ 2,344 | $ 4,768 | $ 2,606 | $ 4,616 | $ 5,925 | $ 4,751 | $ 17,898 | $ 4,952 | $ 27,618 |

**Sources/Notes:**

1/   STA and SEA sales included for accused smartphone sales, for June 2010 through March 2012 (SAMNDCA00402075).

2/   See Exhibit 37.1-S.

3/   The average gross profit per month calculated by dividing the total accused STA + SEA revenue of $7,202,412,863 by 22 months and multiplying the result by the Manufacturing gross margin of 40% is $131,726,847. Exhibit 39.4-S shows average gross profit per month of $132,810,395. The difference is due to the fact that $131,726,847 is based on total amounts for the stated period and $132,810,395 is based on monthly calculations using the actual monthly amounts.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 37.1-S

**STA and SEA U.S. Sales of Accused Smartphones** 1/
Units in Thousands, Revenue in Millions USD

| Accused Products | Data | 2010 | | | YE Total | 2011 | | | | YE Total | 2012 | Grand Total |
| | | 2Q | 3Q | 4Q | | 1Q | 2Q | 3Q | 4Q | | Q1 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Acclaim | Units | 35 | 133 | 42 | 210 | 16 | 14 | (0) | 0 | 30 | - | 240 |
| | Revenue | $ 13 | $ 44 | $ 12 | $ 70 | $ 4 | $ 3 | $ (0) | $ 0 | $ 7 | $ - | $ 77 |
| Captivate | Units | - | 481 | 251 | 733 | 229 | 170 | 181 | 78 | 658 | (1) | 1,391 |
| | Revenue | - | 215 | 110 | 325 | 84 | 48 | 51 | 15 | 199 | 0 | 524 |
| Continuum | Units | - | - | 174 | 174 | 7 | 60 | 79 | (0) | 147 | (0) | 320 |
| | Revenue | - | (0) | 73 | 73 | 1 | 15 | 21 | 1 | 39 | (0) | 112 |
| Droid Charge | Units | - | - | - | - | - | 452 | 155 | 92 | 699 | 58 | 757 |
| | Revenue | - | - | - | - | - | 241 | 76 | 35 | 351 | 25 | 377 |
| Epic 4G | Units | - | 373 | 329 | 703 | 367 | 521 | 69 | 136 | 1,093 | 64 | 1,859 |
| | Revenue | - | 193 | 170 | 363 | 179 | 216 | 16 | 47 | 459 | 20 | 841 |
| Exhibit 4G | Units | - | - | - | - | - | 118 | 132 | 33 | 283 | 14 | 297 |
| | Revenue | - | - | - | - | - | 32 | 34 | 7 | 73 | 2 | 75 |
| Fascinate | Units | - | 541 | 486 | 1,027 | 161 | 198 | 48 | (0) | 407 | (0) | 1,434 |
| | Revenue | - | 249 | 219 | 469 | 68 | 65 | 15 | 3 | 150 | 0 | 619 |
| Galaxy Ace | Units | - | - | - | - | - | - | - | - | - | - | - |
| | Revenue | - | - | - | - | - | - | - | - | - | - | - |
| Galaxy Prevail | Units | - | - | - | - | - | 666 | 539 | 332 | 1,537 | 417 | 1,954 |
| | Revenue | - | - | - | - | (0) | 122 | 82 | 55 | 259 | 70 | 329 |
| Galaxy S (i9000) | Units | - | - | - | - | - | - | - | - | - | - | - |
| | Revenue | - | - | - | - | - | - | - | - | - | - | - |
| Galaxy S 4G | Units | - | - | - | - | 354 | 253 | 302 | 237 | 1,146 | 184 | 1,329 |
| | Revenue | - | - | - | - | 152 | 90 | 91 | 62 | 395 | 47 | 442 |
| Galaxy S II (AT&T Edition, 4G) 2/ | Units | - | - | - | - | - | - | 110 | 273 | 384 | 68 | 452 |
| | Revenue | - | - | - | - | - | - | 53 | 126 | 180 | 16 | 196 |
| Galaxy S II (Epic 4G Touch) | Units | - | - | - | - | - | - | 165 | 414 | 579 | 516 | 1,094 |
| | Revenue | - | - | - | - | - | - | 79 | 196 | 275 | 240 | 515 |
| Galaxy S II (Skyrocket) | Units | | | | - | | | | 328 | 328 | 147 | 475 |
| | Revenue | | | | - | | | | 160 | 160 | 65 | 225 |
| Galaxy S II (T-Mobile edition) | Units | - | - | - | - | - | - | - | 432 | 432 | 514 | 946 |
| | Revenue | - | - | - | - | - | - | - | 196 | 196 | 237 | 433 |
| Galaxy S Showcase | Units | - | - | 32 | 32 | 38 | 78 | 74 | 42 | 233 | 73 | 338 |
| | Revenue | - | - | 16 | 16 | 18 | 30 | 26 | 14 | 88 | 22 | 126 |
| Gem | Units | - | - | - | - | 97 | 153 | 102 | 22 | 374 | 0 | 374 |
| | Revenue | - | - | - | - | 18 | 28 | 15 | 3 | 64 | 0 | 64 |
| Gravity Smart | Units | - | - | - | - | - | 185 | 234 | 55 | 474 | 21 | 494 |
| | Revenue | - | - | - | - | - | 36 | 44 | 10 | 90 | 4 | 94 |
| Indulge | Units | - | - | - | - | 144 | (0) | 66 | 61 | 271 | (0) | 271 |
| | Revenue | - | - | - | - | 59 | (4) | 23 | 21 | 98 | (0) | 98 |
| Infuse 4G | Units | - | - | - | - | - | 288 | 360 | 202 | 851 | 154 | 1,005 |
| | Revenue | - | - | - | - | - | 138 | 155 | 67 | 361 | 44 | 405 |
| Intercept | Units | 84 | 466 | 307 | 858 | 161 | 147 | 3 | 70 | 380 | 49 | 1,287 |
| | Revenue | 20 | 107 | 69 | 196 | 31 | 30 | (1) | 8 | 67 | 7 | 270 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

| Accused Products | Data | 2010 | | | YE Total | 2011 | | | | YE Total | 2012 Q1 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2Q | 3Q | 4Q | | 1Q | 2Q | 3Q | 4Q | | | |
| Mesmerize | Units | - | - | 120 | 120 | 149 | 206 | 55 | 127 | 537 | 10 | 667 |
| | Revenue | - | - | 57 | 57 | 67 | 81 | 19 | 38 | 205 | 3 | 264 |
| Nexus S | Units | - | - | 56 | 56 | 45 | (0) | 27 | 7 | 78 | 0 | 134 |
| | Revenue | - | - | 27 | 27 | 18 | (2) | 7 | 2 | 25 | 0 | 52 |
| Nexus S 4G | Units | - | - | - | - | - | 401 | 23 | 80 | 504 | 8 | 512 |
| | Revenue | - | - | - | - | - | 178 | (5) | 20 | 193 | 3 | 196 |
| Replenish | Units | - | - | - | - | - | 439 | 149 | 15 | 603 | 260 | 863 |
| | Revenue | - | - | - | - | - | 72 | 23 | (3) | 92 | 40 | 133 |
| Sidekick | Units | - | - | - | - | - | 227 | 181 | 22 | 429 | 42 | 471 |
| | Revenue | - | - | - | - | - | 73 | 56 | 4 | 133 | 8 | 142 |
| Transform | Units | - | 43 | 196 | 239 | 189 | 116 | 60 | - | 365 | (0) | 604 |
| | Revenue | - | 13 | 54 | 66 | 50 | 25 | 11 | (0) | 86 | (1) | 152 |
| Vibrant | Units | 6 | 634 | 333 | 973 | 41 | 7 | (0) | - | 48 | - | 1,021 |
| | Revenue | 3 | 279 | 147 | 429 | 13 | 3 | 1 | 0 | 17 | (2) | 444 |
| **Total** | **Units** | **125** | **2,672** | **2,326** | **5,122** | **1,998** | **4,698** | **3,114** | **3,058** | **12,869** | **2,598** | **20,589** |
| | **Revenue** | $ 36 | $ 1,101 | $ 954 | $ 2,090 | $ 759 | $ 1,523 | $ 893 | $ 1,087 | $ 4,262 | $ 850 | $ 7,202 |

**Sources/Notes:**

1/   STA and SEA sales of accused smartphones (SAMNDCA00402075).

2/   Galaxy S II (AT&T edition, 4G)'s model number is listed along with the Galaxy S II (i9100) in Samsung's financial data.  I have counted sales through STA and SEA as sales of the Galaxy S II (AT&T edition, 4G) because I understand
      that the i9100 model is not sold in the US and all other models listed were not found on Samsung's North America Web Site.

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 38-S**

**Samsung Accused Tablets P&L** 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | 2010 4Q | YE Total | 2011 1Q | 2Q | 3Q | 4Q | YE Total | 2012 Q1 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **U.S. Sales - STA and SEA** 2/ | | | | | | | | | | |
| Units | | 262 | 262 | 77 | 266 | 293 | 347 | 983 | 156 | 1,401 |
| Revenue | | $ 154 | $ 154 | $ 22 | 112 | 140 | 145 | 419 | 60 | $ 633 |
| | | | | | | | | | | |
| **Worldwide Sales - Manufacturing** | | | | | | | | | | |
| Units | [a] | 1,550 | 1,550 | 946 | 958 | 871 | 1,058 | 3,833 | 954 | 6,337 |
| Revenue | [b] | $ 816 | $ 816 | $ 432 | $ 418 | $ 352 | $ 433 | $ 1,634 | $ 351 | $ 2,801 |

**Sources/Notes:**

1/ STA and SEA sales included for accused tablet sales, for October 2010 through March 2012 (SAMNDCA00402075).

2/ See Exhibit 38.1-S.

3/ The average gross profit per month calculated by dividing the total accused STA + SEA revenue of $632,872,225 by 18 months and multiplying the result by the Manufacturing gross margin of 28% is $10,010,559. Exhibit 39.4-S shows average gross profit per month of $10,651,325. The difference is due to the fact that $10,010,559 is based on total amounts for the stated period and $10,651,325 is based on monthly calculations using the actual monthly amounts.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 38.1-S

## STA and SEA U.S. Sales of Accused Tablets 1/
Units in Thousands, Revenue in Millions USD

| Accused Products | Data | 2010 4Q | YE Total | 2011 1Q | 2011 2Q | 2011 3Q | 2011 4Q | YE Total | 2012 Q1 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Galaxy Tab | Units | 262 | 262 | 77 | 133 | 92 | 102 | 404 | 35 | 701 |
| | Revenue | $ 154 | $ 154 | $ 22 | $ 49 | 37 | $ 40 | $ 148 | $ 14 | $ 316 |
| Galaxy Tab 10.1 | Units | - | - | - | 133 | 133 | 213 | 480 | 104 | 584 |
| | Revenue | - | - | - | 63 | 58 | 85 | 206 | 36 | 242 |
| Galaxy Tab 10.1 LTE | Units | - | - | - | - | 68 | 32 | 99 | 17 | 116 |
| | Revenue | - | - | - | - | 45 | 20 | 66 | 10 | 75 |
| **Total** | **Units** | **262** | **262** | **77** | **266** | **293** | **347** | **983** | **156** | **1,401** |
| | **Revenue** | **$ 154** | **$ 154** | **$ 22** | **$ 112** | **$ 140** | **$ 145** | **$ 419** | **$ 60** | **$ 633** |

**Sources/Notes:**

1/ STA and SEA sales of accused tablets for October 2010 through March 2012 (SAMNDCA00402075).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 39-S**

## Cost Value Reference Points for Samsung

| IP Type | Patent/Registration No. | Cost Value per Unit | |
|---|---|---|---|
| | | Smartphones 1/ | Tablets 2/ |
| Utility Patents | 6,493,002 | $ 0.46 | $ 0.53 |
| | 7,469,381 | $ 0.85 | $ 0.98 |
| | 7,663,607 | $ 1.76 | $ 2.03 |
| | 7,844,915 | $ 1.30 | $ 1.50 |
| | 7,853,891 | $ 0.46 | $ 0.53 |
| | 7,864,163 | $ 0.85 | $ 0.98 |
| | 7,920,129 | $ 0.85 | $ 0.98 |

| IP Type | Patent/Registration No. | Smartphones | Tablets |
|---|---|---|---|
| Design Patents | D627,790 | | |
| | D617,334 | | |
| | D604,305 | | |
| | D618,677 | | |
| | D504,889 | | |
| | D593,087 | | |
| | D622,270 | | |
| Trade Dress | iPhone | $ 19.50 | $ 22.50 |
| | iPhone 3G | | |
| | iPhone 4 | | |
| | iPhone / iPhone 3G / iPhone 4 | | |
| | iPad and iPad 2 | | |
| | 3,470,983 | | |
| | 3,457,218 | | |
| | 3,475,327 | | |
| Trademarks | 3,886,196 | | |
| | 3,889,642 | | |
| | 3,886,200 | | |
| | 3,889,685 | | |
| | 3,886,169 | | |
| | 3,886,197 | | |
| | 85/041,463 (Pending) | | |
| | 2,935,038 | | |

| | **Grand Total** | **$ 26.00** | **$ 30.00** |
|---|---|---|---|

**Sources/Notes:**
1/   See Exhibit 39.1-S. The '607 and '129 Patents do not cover smartphones.
2/   See Exhibit 39.2-S.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 39.1-S**

**Accused Smartphone Cost Value Analysis for Samsung**

| IP Type | Patent/Registration No. | Patent Qualitative Ranking 1/ | % of Total Ranking 2/ | Weighted Cost Value per Unit 3/ |
|---------|------------------------|------------------------------|----------------------|--------------------------------|
| Utility Patents | 6,493,002 | 1 | 7% | $ 0.46 |
| | 7,469,381 | 2 | 13% | $ 0.85 |
| | 7,663,607 | 4 | 27% | $ 1.76 |
| | 7,844,915 | 3 | 20% | $ 1.30 |
| | 7,853,891 | 1 | 7% | $ 0.46 |
| | 7,864,163 | 2 | 13% | $ 0.85 |
| | 7,920,129 | 2 | 13% | $ 0.85 |
| | Utility Patent Total | 15 | 100% | $ 6.50 4/ |

| IP Type | Patent/Registration No. | | | |
|---------|------------------------|---|---|---|
| Design Patents | D627,790 | | | |
| | D617,334 | | | |
| | D604,305 | | | |
| | D618,677 | | | |
| | D504,889 | | | |
| | D593,087 | | | |
| | D622,270 | | | |
| Trade Dress | iPhone | n/a | n/a | $ 19.50 |
| | iPhone 3G | | | |
| | iPhone 4 | | | |
| | iPhone / iPhone 3G / iPhone 4 | | | |
| | iPad and iPad 2 | | | |
| | 3,470,983 | | | |
| | 3,457,218 | | | |
| | 3,475,327 | | | |
| Trademarks | 3,886,196 | | | |
| | 3,889,642 | | | |
| | 3,886,200 | | | |
| | 3,889,685 | | | |
| | 3,886,169 | | | |
| | 3,886,197 | | | |
| | 85/041,463 (Pending) | | | |
| | 2,935,038 | | | |

**Grand Total**          **$          26.00**  4/

**Sources/Notes:**

1/  For Qualitative Rankings for Utility Patents, see Exhibit 45.  Design Patents, Trade Dress and Trademarks are grouped together, no ranking is necessary.

2/  % Of Total Ranking is calculated by dividing Patent Qualitative Ranking for each patent/registration by the Subtotal of Patent Qualitative Ranking by IP Type.

3/  Weighted Cost Value per Unit is calculated by multiplying % of Total Ranking by the Total Weighted Cost Value per Unit by IP Type (see Exhibit 39.3-S). The '607 and '129 Patents do not cover smartphones.

4/  See Exhibit 39.3-S.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        **EXHIBIT 39.2-S**

## Accused Tablet Cost Value Analysis for Samsung

| IP Type | Patent/Registration No. | Patent Qualitative Ranking 1/ | % of Total Ranking 2/ | Weighted Cost Value per Unit 3/ |
|---|---|---|---|---|
| Utility Patents | 6,493,002 | 1 | 7% | $ 0.53 |
| | 7,469,381 | 2 | 13% | $ 0.98 |
| | 7,663,607 | 4 | 27% | $ 2.03 |
| | 7,844,915 | 3 | 20% | $ 1.50 |
| | 7,853,891 | 1 | 7% | $ 0.53 |
| | 7,864,163 | 2 | 13% | $ 0.98 |
| | 7,920,129 | 2 | 13% | $ 0.98 |
| Utility Patent Total | | 15 | 100% | $ 7.50 4/ |
| Design Patents | D627,790 | | | |
| | D617,334 | | | |
| | D604,305 | | | |
| | D618,677 | | | |
| | D504,889 | | | |
| | D593,087 | | | |
| | D622,270 | | | |
| Trade Dress | iPhone | n/a | n/a | $ 22.50 |
| | iPhone 3G | | | |
| | iPhone 4 | | | |
| | iPhone / iPhone 3G / iPhone 4 | | | |
| | iPad and iPad 2 | | | |
| | 3,470,983 | | | |
| | 3,457,218 | | | |
| | 3,475,327 | | | |
| Trademarks | 3,886,196 | | | |
| | 3,889,642 | | | |
| | 3,886,200 | | | |
| | 3,889,685 | | | |
| | 3,886,169 | | | |
| | 3,886,197 | | | |
| | 85/041,463 (Pending) | | | |
| | 2,935,038 | | | |
| | | | **Grand Total** | $ **30.00** 4/ |

**Sources/Notes:**

1/  For Qualitative Rankings for Utility Patents, see Exhibit 45.  Design Patents, Trade Dress and Trademarks are grouped together, no ranking is necessary.

2/  % Of Total Ranking is calculated by dividing Patent Qualitative Ranking for each patent/registration by the Subtotal of Patent Qualitative Ranking by IP Type.

3/  Weighted Cost Value per Unit is calculated by multiplying % of Total Ranking by the Total Weighted Cost Value per Unit by IP Type (see Exhibit 39.3-S).

4/  See Exhibit 39.3-S.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

**Weighted Cost Value per Unit Apportionment**

| Product Type | IP Type | Cost Value per Unit 1/ | Design Around Allocation 2/ | Weighted Cost Value per Unit by IP Type 3/ |
|---|---|---|---|---|
| **Smartphones** | Utility Patents | $ 26.00 | 25% | $ 6.50 |
| | Design Patents, Trade Dress, and Trademarks | | 75% | $ 19.50 |
| | **Smartphone Total** | | **100%** | **$ 26.00** 1/ |
| **Tablets** | Utility Patents | $ 30.00 | 25% | $ 7.50 |
| | Design Patents, Trade Dress, and Trademarks | | 75% | $ 22.50 |
| | **Tablet Total** | | **100%** | **$ 30.00** 1/ |

| IP Type | Patent/Registration No. | Design Around Time (Months) 5/ | Design Around Allocation 2/ |
|---|---|---|---|
| Utility Patents | 6,493,002 | 0.5 | 25% |
| | 7,469,381 | 1.0 | |
| | 7,663,607 | 12.0 | |
| | 7,844,915 | 6.0 | |
| | 7,853,891 | 0.5 | |
| | 7,864,163 | 1.0 | |
| | 7,920,129 | 0.5 | |
| Design Patents | D627,790 | 0.5 | 75% |
| | D617,334 | 0.5 | |
| | D604,305 | 0.5 | |
| | D618,677 | 8.0 | |
| | D504,889 | 8.0 | |
| | D593,087 | 8.0 | |
| | D622,270 | 8.0 | |
| Trade Dress | iPhone | 8.0 | |
| | iPhone 3G | 8.0 | |
| | iPhone 4 | 8.0 | |
| | iPhone / iPhone 3G / iPhone 4 | 8.0 | |
| | iPad and iPad 2 | 8.0 | |
| | 3,470,983 | 8.0 | |
| | 3,457,218 | 8.0 | |
| | 3,475,327 | 8.0 | |
| Trademarks | 3,886,196 | 0.5 | |
| | 3,889,642 | 0.5 | |
| | 3,886,200 | 0.5 | |
| | 3,889,685 | 0.5 | |
| | 3,886,169 | 0.5 | |
| | 3,886,197 | 0.5 | |
| | 85/041,463 (Pending) | 0.5 | |
| | 2,935,038 | 0.5 | |

| | | |
|---|---|---|
| **Average Design Around Time 4/** | **4.0** | |

**Sources/Notes:**

1/  See Exhibit 39.4-S.

2/  Design Around Allocation is assigned based on number of IP Types. Of the four IP Types, utility patents receive one quarter of the weight and the group of design patents, trade dress, and trademarks receive three quarters of the weight.

3/  Weighted Cost Value per Unit by IP Type is calculated by multiplying Design Around Allocation by Cost Value per Unit.

4/  Rounded to the nearest whole month.

5/  See Exhibit 45 for design around time for Utility Patents. All design patents and trade dress were assigned an 8 month design around time based on my discussions with Apple representative Tang Tan (with the exception of the GUI design patents). The 3 GUI design patents (D'790, D'334, and D'305) and all Trademarks had no assigned design around time. Accordingly, I have assumed a design around time of less than a month (i.e. 0.5).

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 39.4-S**

## Samsung's Cost Value per Unit Due To Redesign

| Calculation Steps | Smartphones | | Tablets | |
|---|---|---|---|---|
| Average Gross Profit per Month for Accused Products | $     132,810,395 | 1/ | $    10,651,325 | 2/ |
| x   No. of Months Out Of Market | 4 | 3/ | 4 | 3/ |
| =   Samsung's Total Loss Due to Redesign | $     531,241,580 | | $    42,605,301 | |
| ÷   Total Accused Units Sold | 20,589,328 | 4/ | 1,400,965 | 5/ |
| =   **Samsung's Cost Value per Unit Due To Redesign** | $          **26.00** | 6/ | $         **30.00** | 6/ |

**Sources/Notes:**

1/   'Average Gross Profit per Month for Accused Products' for Smartphones is calculated by averaging the monthly 'U.S. Revenue (by STA and SEA)' multiplied by the 'Manufacturing Gross Margins' for June 2010 through March 2012. See note 4 on Exhibit 37-S.

2/   'Average Gross Profit per Month for Accused Products' for Tablets is calculated by averaging the monthly 'U.S. Revenue (by STA and SEA)' multiplied by the 'Manufacturing Gross Margins' for October 2010 through March 2012. See note 4 on Exhibit 38-S.

3/   See Exhibit 39.3-S.

4/   'Total Accused Units Sold' for Smartphones by STA & SEA entities, see Exhibit 37-S.

5/   'Total Accused Units Sold' for Tablets by STA & SEA entities, see Exhibit 38-S.

6/   Amounts are rounded to the nearest dollar.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 40-S**

## Market Value Reference Points

| IP Type | Patent/Registration No. | Apple | | Samsung | |
|---------|-------------------------|-------|------|---------|------|
| | | Smartphones | Tablets | Smartphones | Tablets |
| Utility Patents | 6,493,002<br>7,469,381<br>7,663,607<br>7,844,915<br>7,853,891<br>7,864,163<br><br>7,920,129 | $30.00 1/<br><br>(Rate is for a portfolio of patents. It is not limited to the Patents-in-Suit) | $40.00<br>(Reducing to $30/unit over 2 years) 1/<br><br>(Rate is for a portfolio of patents. It is not limited to the Patents-in-Suit) | | |
| Design Patents | D627,790<br>D617,334<br>D604,305<br>D618,677<br>D504,889<br>D593,087<br>D622,270 | Not to be Licensed 2/ | Not to be Licensed 2/ | No Comparable License Rate | No Comparable License Rate |
| Trade Dress | iPhone<br>iPhone 3G<br>iPhone 4<br>iPhone / iPhone 3G / iPhone 4<br>iPad and iPad 2<br>3,470,983<br>3,457,218<br>3,475,327 | Not to be Licensed 2/ | Not to be Licensed 2/ | No Comparable License Rate | No Comparable License Rate |
| Trademarks | 3,886,196<br>3,889,642<br>3,886,200<br>3,889,685<br>3,886,169<br>3,886,197<br>85/041,463 (Pending)<br>2,935,038 | Not to be Licensed 2/ | Not to be Licensed 2/ | No Comparable License Rate | No Comparable License Rate |

**Sources/Notes:**
1/   Samsung-Apple Licensing Discussion, October 5, 2010 (APLNDC000010886-917 at APLNDC000010897).
2/   Chip Lutton Deposition, July 26, 2011, p. 52.
3/
4/



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Prepared by Invotex Group

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 41-S**

## Income Value Reference Points

| IP Type | Patent/Registration No. | Apple | | Samsung | |
|---|---|---|---|---|---|
| | | **Smartphones** | **Tablets** | **Smartphones** | **Tablets** |
| Utility Patents 1/ | 6,493,002 | $ 2.17 | $ 2.17 | $ 0.28 | $ 0.28 |
| | 7,469,381 | $ 4.03 | $ 4.03 | $ 0.52 | $ 0.52 |
| | 7,663,607 | $ 8.37 | $ 8.37 | $ 1.08 | $ 1.08 |
| | 7,844,915 | $ 6.20 | $ 6.20 | $ 0.80 | $ 0.80 |
| | 7,853,891 | $ 2.17 | $ 2.17 | $ 0.28 | $ 0.28 |
| | 7,864,163 | $ 4.03 | $ 4.03 | $ 0.52 | $ 0.52 |
| | 7,920,129 | $ 4.03 | $ 4.03 | $ 0.52 | $ 0.52 |
| Design Patents 2/ | D627,790 D617,334 D604,305 D618,677 D504,889 D593,087 D622,270 | | | | |
| Trade Dress 2/ | iPhone iPhone 3G iPhone 4 iPhone/iPhone 3G/iPhone 4 iPad and iPad 2 3,471,983 3,457,218 3,475,327 | $ 24.00 | $ 24.00 | $ 9.00 | $ 9.00 |
| Trademarks 2/ | 3,886,196 3,889,642 3,886,200 3,889,685 3,886,169 3,886,197 85/041,463 (Pending) 2,935,038 | | | | |

**Sources/Notes:**
1/   See Exhibit 41.1-S.
2/   See Exhibit 41.2-S.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 41.1-S**

**Weighted Utility Income Value Reference Point for Utility Patents**

| IP Type | Patent/Registration No. | Patent Qualitative Ranking 1/ | % of Total Ranking 2/ | Apple 3/ | Samsung 3/ |
|---|---|---|---|---|---|
| | 6,493,002 | 1 | 7% | $ 2.17 | $ 0.28 |
| | 7,469,381 | 2 | 13% | $ 4.03 | $ 0.52 |
| | 7,663,607 | 4 | 27% | $ 8.37 | $ 1.08 |
| Utility Patents | 7,844,915 | 3 | 20% | $ 6.20 | $ 0.80 |
| | 7,853,891 | 1 | 7% | $ 2.17 | $ 0.28 |
| | 7,864,163 | 2 | 13% | $ 4.03 | $ 0.52 |
| | 7,920,129 | 2 | 13% | $ 4.03 | $ 0.52 |
| Utility Patent Total | | 15 | 100% | $ 31.00 | $ 4.00 |

**Sources/Notes:**

1/   See Exhibit 45.

2/   % Of Total Ranking is calculated by dividing Patent Qualitative Ranking for each Apple Utility Patent by the Total Utility Patent Qualitative Ranking.

3/   Weighted Rate per Unit is calculated by multiplying % of Total Ranking by the Total Rate for Utility Patents. The Total Utility Rate per Unit is based on Apple's and Samsung's average selling price times the value of intangible value assigned to the utility patents listed above (see Exhibit 41.2-S).

4/   See Exhibit 41.2-S.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 41.2-S**

## Per Unit Reference Rate Calculations for Smartphones and Tablets Combined

| Calculation Steps | Apple | | Samsung | |
|---|---|---|---|---|
| Per unit rate for utility patents | | | | |
|    Average Product Selling Price | $ 625.28 | 1/ | $ 348.01 | 2/ |
| x  Value of Intangibles | 4.9% | 3/ | 1.2% | 3/ |
| =  Per Unit Rate | $ **31.00** | 4/ | $ **4.00** | 4/ |
| | | | | |
| Per unit rate for design patents, trade dress, and trademarks | | | | |
|    Average Product Selling Price | $ 625.28 | 1/ | $ 348.01 | 2/ |
| x  Value of Brand/Design Rate | 3.9% | 5/ | 2.6% | 5/ |
| =  Per Unit Rate | $ **24.00** | 6/ | $ **9.00** | 6/ |

**Sources/Notes:**

1/  Average Product Selling Price for Apple is a weighted average of Apple iPhone and iPad ASPs. The worldwide ASPs are calculated between Q3 FY2010 and Q2 FY2012 for smartphones and Q1 FY2011 and Q2 FY2012 for tablets and are weighted by the respective units sold into the U.S. during those time periods (see Exhibits 32-S and 33-S).

2/  Average Product Selling Price for Samsung is a weighted average of Samsung smartphone and tablet ASPs. The worldwide ASPs are calculated between Q2 2010 and Q1 2012 for smartphones and Q4 2010 and Q1 2012 for tablets and are weighted by the respective units sold into the U.S. during the same time period (see Exhibits 37-S and 38-S).

3/  Value of Intangibles includes the iPhone and iPad combined for Apple, and the Accused Products combined for Samsung (see Exhibit 41.3-S).

4/  The Per Unit Rate for Utility Patents is calculated by multiplying the ASP by the Value of Intangibles. Rounded to the nearest dollar.

5/  See Exhibit 41.3-S.

6/  The Per Unit Rate for Design Patents and Trade Dress is calculated by multiplying the ASP by the Value of Brand/Design rate. Rounded to the nearest dollar.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

## Value of Intangibles Calculations
2010 to 2011 Time Period

| Calculation Steps | | Apple | | Samsung |
|---|---|---|---|---|
| | | Company Wide | iPhone and iPad | Accused Products |
| | Operating Margin | 32.8% 1/ | 2/ | 21.7% 3/ |
| x | Reduction from taxes | 75.4% 4/ | 4/ | 99.5% 5/ |
| = | Net Operating Profit after tax (NOPAT) | 24.7% | | 21.5% |
| - | Industry Weighted Average Cost of Capital (WACC) | 11.9% 6/ | 6/ | 11.9% 6/ |
| = | Economic Value Added (EVA) 7/ | 12.8% | | 9.7% |
| - | Brand/Design Value | 3.9% 8/ | 8/ | 2.6% 9/ |
| = | EVA net of Brand Value | 8.9% | | 7.1% |
| - | Value of the Company's Other Intangibles | | | 5.9% 10/ |
| = | **Value of iPhone and iPad Combined/** **Accused Products Combined Intangibles** | | | **1.2%** |

**Sources/Notes:**

1/ Average operating margins for Apple Companywide in 2010 through Q2 2012 are calculated per Apple Inc. Form 10-K for fiscal year ended September 24, 2011, p. 43; and Form 10-Q for fiscal quarter ended 12/31/11 and 3/31/12, p. 2. The combined margin over the time period is weighted by net sales of each respective period.

2/ Operating margin is a weighted average of Apple iPhone and iPad operating margins. Worldwide operating margins are calculated between Q3 FY2010 and Q2 FY2012 for iPhones and Q1 FY2011 and Q2 FY2012 for iPads and are weighted by the respective units sold into the US during the same time period (see Exhibits 32-S and 33-S).

3/ Operating margin is a weighted average of Samsung accused smartphone and tablet operating margins. Worldwide operating margins are calculated between Q2 2010 and Q1 2012 for smartphones and Q4 2010 and Q1 2012 for tablets and are weighted by the respective accused units sold into the U.S. sold during the same time period (SAMNDCA00402075).

4/ Apple's effective tax rate is 24.4% in FY 2010, 24.2% in FY 2011, per Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 63; 25.3% in Q1 FY12, and 25.2% in Q2 FY 2012, per Apple Inc. Form 10-Q for the quarters ended 12/31/11 and 3/31/12, p. 2. Apple's aggregate effective tax rate is 24.6%. Accordingly, Apple's Reduction from Taxes is 75.4% (100% - 24.6%).

5/ STA applies a Berry Ratio (deposition of Timothy Sheppard, dated February 29, 2012, pp. 123-124) to its 2010 income statement (SAMNDCA00322209-238 at SAMNDCA00322214), which results in a ratio of gross margin to total revenue of 3.3% . SEC's actual gross margin for manufacturing is 39.1% from 2010 through Q2 of 2012 (see SAMNDCA00402075). This margin is used to adjust STA's gross profit to actual levels. This adjustment factor (39.1% divided by 3.3%) is applied to STA's gross profit, after which all expenses (per SAMNDCA00322209-238 at SAMNDCA00322214) are deducted to derive an actual operating profit before taxes. STA's income tax expense is then divided by actual operating profit before taxes to derive STA's effective tax rate and subtracted from 100% to derive its Reduction from Taxes above, 99.5% (100% - 0.5%).

6/ See Exhibit 41.4-S.

7/ Economic Value Added (EVA) measures return to investors (Interbrand's brand valuation methodology, http://www.interbrand.com/en/best-global-brands/best-global-brands-methodology/Overview.aspx).

8/ Apple's (the company) Brand/Design Value is calculated by multiplying its operating profit by the ratio of its brand value to market capitalization (see Exhibit 41.5). Apples iPhone and iPad Combined are assigned the same Brand/Design Value.

9/ The Brand/Design Value of Samsung is calculated by multiplying the operating margin of Samsung's Accused Products Combined by the ratio of Apple's Brand/Design Value to Apple's companywide operating margin.

10/ The EVA net of the Brand Value of the Company for Samsung is calculated by multiplying the operating margin of Samsung's Accused Products Combined by the ratio of Apple's EVA net of the Brand Value of the Company to Apple's companywide operating margin.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 118 of 149
Apple Inc. v Samsung Electronics Co., LTD., et al.

EXHIBIT 41.4

## Industry Weighted Average Cost of Capital
### 2010 to 2011 Time Period

| Interbrand Top Global Brands 1/ | Sector (Interbrand Classification) 1/ | SIC Code | SIC Description | 2010 Weighted Average Cost of Capital 2/, 4/ | 2011 Weighted Average Cost of Capital 3/, 4/ |
|---|---|---|---|---|---|
| Hewlett Packard | Electronics | 3570 | Computer and Office Equipment | 13.08% | 12.26% |
| Apple, Dell | Electronics | 3571 | Electronic Computers | 13.27% | 11.77% |
| Xerox | Electronics | 3577 | Computer Peripheral Equipment, Not Elsewhere Classified | 11.68% | 11.24% |
| Intel | Electronics | 3674 | Semiconductors and Related Devices | 13.44% | 12.77% |
| Amazon.com | Internet Services | 5961 | Catalog and Mail-Order Houses | 12.38% | 12.05% |
| Google | Internet Services | 7370 | Computer Programming, Data Processing, and Other Computer Services | 11.65% | 11.05% |
| Microsoft, Adobe | Computer Software | 7372 | Prepackaged Software | 11.51% | 11.22% |
| Yahoo | Internet Services | 7373 | Computer Integrated Systems Design | 11.54% | 10.95% |
| eBay | Internet Services | 7389 | Business Services, Not Elsewhere Classified | 10.98% | 10.89% |

| | 2010 | 2011 |
|---|---|---|
| Average WACC | 12.17% | 11.58% |

| | |
|---|---|
| Average 2010-2011 WACC | 11.87% |

**Sources/Notes:**

1/   Brands that make up "industry" were selected on the following criteria:

   a) Appear in the 2010 or 2011 Interbrand "Ranking of the Top 100 Brands" (http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2010.aspx and http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx);

   b) United States brands (as categorized by Interbrand);

   c) Limited to the following sectors (as categorized by Interbrand): computer software, electronics, and internet services.

2/   Ibbotson Cost of Capital 2010 Yearbook (data through March 2010).

3/   Ibbotson Cost of Capital 2011 Yearbook (data through March 2011).

4/   Weight average cost of capital, using median CAPM.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

EXHIBIT 41.5

**Apple Brand Value as Percentage of Market Capitalization**
2010 to 2011 Time Period

| 2010 Global Brand Rank 1/ | 2011 Global Brand Rank 2/ | Brand 1/ 2/ | 2010 | | | 2011 | | | 2010-2011 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Brand Value ($bn) 1/ | Market Cap ($bn) 3/ | Brand Value: Market Cap Ratio | Brand Value ($bn) 2/ | Market Cap ($bn) 3/ | Brand Value: Market Cap Ratio | Total Brand Value ($bn) 2/ 3/ | Total Market Cap ($bn) 3/ | Weighted Brand Value: Market Cap Ratio |
| 17 | 8 | Apple | 21.1 | 177.4 | 11.9% | 33.5 | 282.6 | 11 9% | 54 6 | 460.0 | 11.9% |

Sources/Notes:

1/   Interbrand's "2010 Ranking of the Top 100 Brands," dated September 15, 2010. Interbrand's financial analysis run from June 2009 to June 2010. Dollar amounts converted from millions to billions.
     http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2010.aspx.

2/   Interbrand's "2011 Ranking of the Top 100 Brands," dated October 4, 2011. Interbrand's financial analysis run from June 2009 to June 2010. Dollar amounts converted from millions to billions.
     http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx.

3/   Market Capitalization figures per http://www.wolframalpha.com. The 2010 market capitalization is recorded between June 1, 2009 and June 1, 2010; the 2011 market capitalization is recorded between June 1, 2010
     and June 1, 2011.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 42

**Georgia-Pacific Analysis for Apple's Intellectual Property - Tablets**

| IP Type | Patent/Registration No. | Georgia-Pacific Factor | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| Utility Patents | 6,493,002 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the ease of use and value of a smartphone or tablet computer. 13/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,469,381 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This provides a major enhancement to the quality of the user interface. 14/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,663,607 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides technology for a touchscreen used to obtain accurate information on multiple touches on a touchscreen device. 15/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,844,915 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides functionality that is central to the accused products. 16/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,853,891 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the user interface and experience in smartphones and tablets. 17/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,864,163 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | The invention significantly enhances the user interface of a touchscreen smartphone and tablet. 18/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,920,129 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides technology for a touchscreen display to address the issue of interference from the LCD display sensing multitouch inputs. 19/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| Design Patents | D504,889 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 8/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Apple's design elements included in the design patents, trade address and trademarks give Apple a distinct advantage over competitors. 20/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | I view this amount as setting a floor below which Apple would not license. 12/ | See Income Reference Range on Exhibit 41. |
| Trade Dress | iPad and iPad 2 | | | | | | | | | | | | | |
| Trademarks | 3,886,196 | | | | | | | | | | | | | |
| | 3,889,642 | | | | | | | | | | | | | |
| | 3,886,200 | | | | | | | | | | | | | |
| | 3,889,685 | | | | | | | | | | | | | |
| | 3,886,169 | | | | | | | | | | | | | |
| | 3,886,197 | | | | | | | | | | | | | |
| | 85/041,463 (Pending) | | | | | | | | | | | | | |
| | 2,935,038 | | | | | | | | | | | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 42

**Sources/Notes:**

1/ This factor demonstrates that there is no established license for any of the asserted Apple intellectual Property In Suit.

2/ This factor demonstrate that there are no rates paid by Samsung for the use of other intellectual property comparable to the Apple Intellectual Property in Suit.

3/ Accordingly, the scope of the license is limited based on the geographic restrictions resulting from the application of U.S. law. However, there are international economic benefits to Apple and to Samsung for the use of the relevant technology. Consequently, the scope of the hypothetical license for the Apple Intellectual Property In Suit is neutral.

4/ This factor does not provide support for a specific rate but does strongly indicate Apple's unwillingness to negotiate a license at essentially any price versus holding the Apple Intellectual Property In Suit for Apple's exclusive use.

5/ This factor does not provide support for a specific rate but does confirm and reinforce Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor with the number one goal of beating Apple.

6/ While it is not possible to capture all of the lost convoyed profits in a reasonable royalty damage, the very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products supports a higher reasonable royalty rate that reflects this major economic benefit.

7/ The long legal life coupled with the risk of a shortened economic life in a rapidly expanding market places upward pressure on the royalty rate to avoid missing the window of economic opportunity related to each patent.

8/ The long legal life coupled with the established commercial success and emphasis on design by Apple places upward pressure on the royalty rate to preserve the established value of these valuable design patents.

9/ This factor provides strong support in the present case for a reasonable royalty rate that weighs in favor of the income approach and calculated as a part of my reference point analysis.

10/ The commercial embodiment of all categories of Apple Intellectual Property In Suit and Apple's focus on the quality of the overall user experience has produced considerable financial rewards for Apple and provided an enhanced user experience to the consumers that use the products that embody the claimed technology. Accordingly, the rate should reflect the economic benefits to Apple and the market advantages associated with the benefits provided to the consumer.

11/ Based on the fact that Samsung is assumed to have used Apple's Intellectual Property In Suit to make significant profits through the sale of the accused devices that are virtually untaxed in the U.S. and transferred to Korea, has used Apple's Intellectual Property In Suit to build market share in the smartphone and tablet markets at Apple's expense, and has used Apple's Intellectual Property In Suit to gain additional profits through the sale of both convoyed and derivative products tied to Samsung's ecosystem, this factor would support the need for the royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss.

12/ Based on the "Made for iPod" agreements, one example of a value placed on the right by a third party to use a trademark that referenced Apple is $4 per unit in a circumstance involving a complementary use. This is not analogous to a license to a competitor such as Samsung. Nonetheless, I view this amount as setting a floor below which Apple would not license any of its trademarks. While the ultimate rate for multiple trademarks or trade dress would be higher for the reasons discussed above, it certainly would not be less than the amount that Apple charges to use a trademark in a context that results in additional benefits through expansion of the number and variety of accessories that work with its products.

13/ I understand that the patent helps to provide a cohesive experience for the user when there are many different applications running. The '002 teaches a way for different applications to give information to the user in an unobtrusive way. As a result, this feature enhances the ease of use and value of a smartphone or tablet computer.

14/ I understand that this patent provides an elegant and appealing form of visual feedback to a user that there is no more of an electronic document to be seen. For example, if a user is zoomed in on one part of a large photo, he may continue to scroll the photo as he looks at other parts of the image. Not knowing exactly where the photo ends, he may continue to scroll in a direction even when there is no more of the photo to display. When this happens, an area beyond the edge of the photo will be displayed, and once the user lifts his finger, the photo will "bounce" or "rubber band" back to fill the screen. This form of visual feedback is readily understood and makes clear to the user that he cannot continue to scroll in that direction. As a result, the inventions of the '381 patent make possible a user interface that is more visually appealing and intuitive in its handling of the display of electronic documents. This provides a major enhancement to the quality of the user interface. Apple also considers this invention to be closely associated with Apple products in the marketplace.

15/ I understand that the patent provides technology for a touchscreen used to obtain accurate information on multiple touches on a touchscreen device. This patent is being asserted by Apple only with respect to Samsung's tablet computers. I understand from my discussions with the Apple technical expert that no commercially viable, alternative, non-infringing touchscreen technologies were in existence when the Samsung Galaxy Tab devices entered the market. None of the alternative available touchscreen technologies afforded true multi-touch functionality. For these reasons, Samsung did not have a commercially viable alternative to these technologies embodied in the Apple iPad and iPhone products for a ten inch tablet. I understand that Samsung introduced a 7.7 inch tablet with an AMOLED display in early 2012, which was released in Australia in or around January 2012 that does not make use of the '607 technology, but that it was not released in the United States until this month.

16/ I understand that the patent provides functionality that is central to the accused products: the ability to distinguish automatically between a one-finger scroll call and a two-finger gesture such as a zoom or rotate gesture. This functionality is highly intuitive. Scrolling, zooming and rotating are among the most common actions users take with touchscreens and smartphones, and are used in multiple applications. I further understand that any effort to redesign would make the '915 Accused Products much less useable, render them inconvenient for users, and deprive them of intuitive functionality that smart phone and tablet users have come to expect. The alternatives would provide a much less satisfying user experience than devices that practice the '915 patent. Further, given how frequently the functions are used in the interface, I understand it would be difficult and time consuming to replace.

17/ I understand that the patent provides useful ways for providing unobtrusive visual feedback to the user input in a digital processing system, such as a desktop or laptop computer, a smartphone, or a tablet computer. It does so by conveying information on a new window for the user that automatically disappears without the need for action by the user. As a result, this feature enhances the user interface and experience in smartphones and tablets.

18/ I understand that the patent provides for an efficient means for users to navigate structured electronic documents on a touchscreen display. I further understand it is possible to implement other methods to navigate in structured electronics documents using touch gestures, but they would not have been as elegant or intuitive. I also understood that Samsung evaluated alternatives and concluded that they were inferior and instead revised the user interface to include the '163 patent's features. It is my understanding that the invention significantly enhances the user interface of a touchscreen smartphone and tablet.

19/ I understand that the patent provides technology for a touchscreen display to address the issue of interference from the LCD display sensing multitouch inputs. Through the use of the patent, the device can be thinner, and the screen requires fewer layers. I understand that this patent is being asserted by Apple only with respect to Samsung's tablet computers. I understand from my discussions with Apple's technical expert that there would be significant disadvantages to designing without using the patent's technologies when the Samsung Galaxy Tab devices entered the market. None of the alternative display technologies to LCD was mature enough for use in tablet-size devices, and using a touchscreen on top of an LCD panel was problematic because the display needed to have an extra layer of shielding to protect the sensitive touch screen electrodes from the electrical interference from the LCD. Adding this extra layer would result in a less visually desirable screen, increased manufacturing costs, and a heavier and thicker device.

20/ This factor does not provide a specific rate for any of the items of design patents, trade dress and trademarks. However, based on the acute focus by Apple on the design elements of its products, the significant degree of success as evidenced by consumer demand and acceptance for Apple's design elements, Apple's design elements included in the design patents  trade dress and trademarks give Apple a distinct advantage over competitors and strongly support a higher royalty rate. Similarly the strength of Apple's utility patents, its importance to the user interface and the degree to which Apple treats these aspects as proprietary, all strongly support a higher royalty rate.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Georgia-Pacific Analysis for Apple's Intellectual Property - Smartphones**

| IP Type | Patent/Registration No. | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | **Georgia-Pacific Factor** | | | |
| Utility Patents | 6,493,002 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the ease of use and value of a smartphone or tablet computer. 13/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,469,381 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This provides a major enhancement to the quality of the user interface. 14/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,844,915 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides functionality that is central to the accused products. 15/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,853,891 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the user interface and experience in smartphones and tablets. 16/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,864,163 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | The invention significantly enhances the user interface of a touchscreen smartphone and tablet. 17/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| Design Patents | D627,790 D617,334 D604,305 D618,677 D593,087 D622,270 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 8/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Apple's design elements included in the design patents, trade address and trademarks give Apple a distinct advantage over Samsung. 18/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | I view this amount as setting a floor below which Apple would not license. 12/ | See Income Reference Range on Exhibit 46. |
| Trade Dress | iPhone iPhone 3G iPhone 4 iPhone/iPhone 3G/iPhone 4 3,470,983 3,457,218 3,475,327 | | | | | | | | | | | | | |
| Trademarks | 3,886,196 3,889,642 3,886,200 3,889,685 3,886,169 3,886,197 85/041,463 (Pending) 2,935,038 | | | | | | | | | | | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Sources/Notes:**

1/   This factor demonstrates that there is no established license for any of the asserted Apple intellectual Property In Suit.

2/   This factor demonstrate that there are no rates paid by Samsung for the use of other intellectual property comparable to the Apple Intellectual Property in Suit.

3/   Accordingly, the scope of the license is limited based on the geographic restrictions resulting from the application of U.S. law. However, there are international economic benefits to Apple and to Samsung for the use of the relevant technology. Consequently, the scope of the hypothetical license for the Apple Intellectual Property In Suit is neutral.

4/   This factor does not provide support for a specific rate but does strongly indicate Apple's unwillingness to negotiate a license at essentially any price versus holding the Apple Intellectual Property In Suit for Apple's exclusive use.

5/   This factor does not provide support for a specific rate but does confirm and reinforce Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor with the number one goal of beating Apple.

6/   While it is not possible to capture all of the lost convoyed profits in a reasonable royalty damage, the very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products supports a higher reasonable royalty rate that reflects this major economic benefit.

7/   The long legal life coupled with the risk of a shortened economic life in a rapidly expanding market places upward pressure on the royalty rate to avoid missing the window of economic opportunity related to each patent.

8/   The long legal life coupled with the established commercial success and emphasis on design by Apple places upward pressure on the royalty rate to preserve the established value of these valuable design patents.

9/   This factor provides strong support in the present case for a reasonable royalty rate that weighs in favor of the income approach and calculated as a part of my reference point analysis.

10/  The commercial embodiment of all categories of Apple Intellectual Property In Suit and Apple's focus on the quality of the overall user experience has produced considerable financial rewards for Apple and provided an enhanced user experience to the consumers that use the products that embody the claimed technology. Accordingly, the rate should reflect the economic benefits to Apple and the market advantages associated with the benefits provided to the consumer.

11/  Based on the fact that Samsung is assumed to have used Apple's Intellectual Property In Suit to make significant profits through the sale of the accused devices that are virtually untaxed in the U.S. and transferred to Korea, has used Apple's Intellectual Property In Suit to build market share in the smartphone and tablet markets at Apple's expense, and has used Apple's Intellectual Property In Suit to gain additional profits through the sale of both convoyed and derivative products tied to Samsung's ecosystem, this factor would support the need for the royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss.

12/  Based on the "Made for iPod" agreements, one example of a value placed on the right by a third party to use a trademark that referenced Apple is $4 per unit in a circumstance involving a complementary use.  This is not analogous to a license to a competitor such as Samsung.  Nonetheless, I view this amount as setting a floor below which Apple would not license any of its trademarks.  While the ultimate rate for multiple trademarks or trade dress would be higher for the reasons discussed above, it certainly would not be less than the amount that Apple charges to use a trademark in a context that results in additional benefits through expansion of the number and variety of accessories that work with its products.

13/  I understand that the patent helps to provide a cohesive experience for the user when there are many different applications running.  The '002 teaches a way for different applications to give information to the user in an unobtrusive way.  As a result, this feature enhances the ease of use and value of a smartphone or tablet computer.

14/  I understand that this patent provides an elegant and appealing form of visual feedback to a user that there is no more of an electronic document to be seen.  For example, if a user is zoomed in on one part of a large photo, he may continue to scroll the photo as he looks at other parts of the image.  Not knowing exactly where the photo ends, he may continue to scroll in a direction even when there is no more of the photo to display.  When this happens, an area beyond the edge of the photo will be displayed, and once the user lifts his finger, the photo will "bounce" or "rubber band" back to fill the screen.  This form of visual feedback is readily understood and makes clear to the user that he cannot continue to scroll in that direction.  As a result, the inventions of the '381 patent make possible a user interface that is more visually appealing and intuitive in its handling of the display of electronic documents.  This provides a major enhancement to the quality of the user interface.  Apple also considers this invention to be closely associated with Apple products in the marketplace.

15/  I understand that the patent provides functionality that is central to the accused products: the ability to distinguish automatically between a one-finger scroll call and a two-finger gesture such as a zoom or rotate gesture.  This functionality is highly intuitive.  Scrolling, zooming and rotating are among the most common actions users take with touchscreens and smartphones, and are used in multiple applications.  I further understand that any effort to redesign would make the '915 Accused Products much less useable, render them inconvenient for users, and deprive them of intuitive functionality that smart phone and tablet users have come to expect.  The alternatives would provide a much less satisfying user experience than devices that practice the '915 patent.  Further, given how frequently the functions are used in the interface, I understand it would be difficult and time consuming to replace.

16/  I understand that the patent provides useful ways for providing unobtrusive visual feedback to the user input in a digital processing system, such as desktop or laptop computer, a smartphone, or a tablet computer.  It does so by conveying information on a new window for the user that automatically disappears without the need for action by the user.  As a result, this feature enhances the user interface and experience in smartphones and tablets.

17/  I understand that the patent provides for an efficient means for users to navigate structured electronic documents on a touchscreen display.  I further understand it is possible to implement other methods to navigate in structured electronics documents using touch gestures, but they would not have been as elegant or intuitive.  I also understood that Samsung evaluated alternatives and concluded that they were inferior and instead revised the user interface to include the '163 patent's features.  It is my understanding that the invention significantly enhances the user interface of a touchscreen smartphone and tablet.

18/  This factor does not provide a specific rate for any of the items of design patents, trade dress and trademarks. However, based on the acute focus by Apple on the design elements of its products, the significant degree of success as evidenced by consumer demand and acceptance for Apple's design elements, Apple's design elements included in the design patents trade dress and trademarks give Apple a distinct advantage over competitors and strongly support a higher royalty rate.  Similarly, the strength of Apple's utility patents, its importance to the user interface and the degree to which Apple treats these aspects as proprietary, all strongly support a higher royalty rate.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 124 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 44-S

**Apple's Asserted Intellectual Property 17/**

| IP Type | Patent/Registration No. | Issue Date | In Commerce Date | Expiration Date | Years to Expiration 1/ | Date of First Accused Samsung Sale | Hypothetical Negotiation Date |
|---|---|---|---|---|---|---|---|
| Utility Patents 2/ 3/ | 6,493,002 | 12/10/2002 | | 9/30/2014 | 2.5 | 6/1/2010 | 6/1/2010 |
| | 7,469,381 | 12/23/2008 | | 12/14/2027 | 15.7 | 6/1/2010 | 6/1/2010 |
| | 7,663,607 | 2/16/2010 | | 3/29/2028 4/ | 16.0 | 10/1/2010 | 10/1/2010 |
| | 7,844,915 | 11/30/2010 | | 8/12/2028 5/ | 16.4 | 6/1/2010 | 11/30/2010 |
| | 7,853,891 | 12/14/2010 | | 3/14/2023 6/ | 11.0 | 6/1/2010 | 12/14/2010 |
| | 7,864,163 | 1/4/2011 | | 7/23/2029 7/ | 17.3 | 6/1/2010 | 1/4/2011 |
| | 7,920,129 | 4/5/2011 | | 1/23/2030 8/ | 17.8 | 10/1/2010 | 4/5/2011 |
| Design Patents 9/ 10/ | D627,790 | 11/23/2010 | | 11/23/2024 | 12.7 | 6/1/2010 | 11/23/2010 |
| | D617,334 | 6/8/2010 | | 6/8/2024 | 12.2 | 6/1/2010 | 6/8/2010 |
| | D604,305 | 11/17/2009 | | 11/17/2023 | 11.7 | 6/1/2010 | 6/1/2010 |
| | D618,677 | 6/29/2010 | | 6/29/2024 | 12.3 | 6/1/2010 | 6/29/2010 |
| | D504,889 | 5/10/2005 | | 5/10/2019 | 7.1 | 5/1/2011 | 5/1/2011 |
| | D593,087 | 5/26/2009 | | 5/26/2023 | 11.2 | 6/1/2010 | 6/1/2010 |
| Trade Dress 11/ | iPhone 3G | | 7/11/2008 14/, 16/ | | | 6/1/2010 | 6/1/2010 |
| | iPhone / iPhone 3G / iPhone 4 | | 6/29/2007 14/, 15/ | | | 6/1/2010 | 6/1/2010 |
| | iPad and iPad 2 | | 4/3/2010 14/, 18/ | | | 10/1/2010 | 10/1/2010 |
| | 3,470,983 | 7/22/2008 | 6/29/2007 19/ | 7/22/2018 12/ | 6.3 | 6/1/2010 | 6/1/2010 |
| | 3,457,218 | 7/1/2008 | 6/29/2007 19/ | 7/1/2018 12/ | 6.3 | 6/1/2010 | 6/1/2010 |
| Trademark 13/ | 3,886,196 | 12/7/2010 | 6/29/2007 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,886,200 | 12/7/2010 | 6/29/2007 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,886,169 | 12/7/2010 | 6/29/2007 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,886,197 | 12/7/2010 | 6/19/2009 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 85/041,463 (Pending) | n/a | 6/00/2008 20/ | Pending | n/a | 6/1/2010 | 6/1/2010 |
| | 2,935,038 | 3/22/2005 | 1/9/2001 20/ | 3/22/2015 12/ | 3.0 | 6/1/2010 | 6/1/2010 |

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 125 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 44-S

**Sources/Notes:**

1/  Years to expiration as of 3/22/2012.

2/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 2 to 8.

3/  In general, a (other than design) patent's term begins on  the date on which the patent is issued and ends 20 years from the date on which the application for the patent was filed in the United States.  35 U.S.C. 154 (a)(2) (http://www.uspto.gov/web/offices/pac/mpep/consolidated_laws.pdf).

4/  Certificate of Correction for US Patent No.7,663,607, dated 2/16/10, there is a Patent Term Adjustment of 1423 days.

5/  Issue Notification for US Patent No.7,844,915, dated 11/10/10, there is a Patent Term Adjustment of 583 days.

6/  Issue Notification for US Patent No.7,853,891, dated 11/23/10, there is a Patent Term Adjustment of 247 days.

7/  Issue Notification for US Patent No.7,864,163, dated 12/15/10, there is a Patent Term Adjustment of 688 days.

8/  Issue Notification for US Patent No.7,920,129, dated 3/16/11, there is a Patent Term Adjustment of 1116 days.

9/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 9 to 15.

10/ In general, a design patent's term begins on the date on which the patent is granted and ends 14 years from that date.  35 U.S.C. 173 (http://www.uspto.gov/web/offices/pac/mpep/consolidated_laws.pdf).

11/ Apple Inc. Amended Complaint, 6/16/11, paragraphs 57-88 and Exhibits 16 to 18.

12/ Subject to renewal; federal trademark registrations issued on or after 11/6/1989 remain in force for 10 years, and may be renewed for 10-year periods (http://www.uspto.gov/trademarks/process/maintain/prfaq.jsp).

13/ Apple Inc. Amended Complaint, 6/16/11, Exhibits 23 to 30.

14/ Unregistered trade dress do not have an issue date, therefore the issue date is based on the commercial release date of the relevant product.

15/ Apple Inc. Press Release, 6/28/07 (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).

16/ Apple Inc. Press Release, 7/10/08  (http://www.apple.com/pr/library/2008/07/10iPhone-3G-on-Sale-Tomorrow.html).

17/  Joint Case Management Conference Statement, dated 5/1/12.

18/ Apple Inc. Press Release, 3/5/10 (http://www.apple.com/pr/library/2010/03/05iPad-Available-in-US-on-April-3.html).

19/ Apple Inc. Amended Complaint, 6/16/11, Exhibits 16 to 18.

20/ Apple Inc. Amended Complaint, 6/16/11, Exhibits 23 to 30.

21/ Per Joint Case Management Conference Statement, dated 5/1/12, the following Intellectual Properties are no longer asserted by Apple: Design Patent 'D270, Trade Dress Registrations for iPhone, for iPhone 4, and '327, and Trademarks '685 and '642.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                                          **EXHIBIT 45**

**Description of Apple's Asserted Utility Patents**

| Patent | Title | Apple Technical Expert | Accused Product Type 1/ | Detailed Description | Patent Qualitative Ranking 2/ | Benefits of Patent 1/ | Potential Design Around | Number of Months Out of Market 3/ |
|---|---|---|---|---|---|---|---|---|
| '002 | Method and Apparatus for Displaying and Accessing Control and Status Information in a Computer System | Alex Snoeren | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 1 | User friendly and non-intrusive basis of displaying information. | See Georgia Pacific Factor 9. | No time given; assumed less than a month. |
| '891 | Method and Apparatus for Displaying a Window for a User Interface | Karan Singh | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 1 | Non-obtrusive way to convey information to the user. | See Georgia Pacific Factor 9. | No time given; assumed less than a month. |
| '381 | List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display | Ravin Balakrishnan | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 2 | Solves two problems; (1) differentiates reaching the edge of an electronic document versus a frozen screen, and (2) preventing navigation away from data and ending up in blank space often referred to as the "dessert fog." | See Georgia Pacific Factor 9. | 1 Month 4/ |
| '915 | Application Programming Interfaces for Scrolling Operations | Karan Singh | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 3 | Interpretation of multiple touches to perform different functions. | See Georgia Pacific Factor 9. | 6 months |
| '163 | Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents | Karan Singh | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 2 | Quick and effective basis to refocus the display. | See Georgia Pacific Factor 9. | 1 month |
| '607 | Multipoint Touchscreen | Michel Maharbiz | Tablets | See report section titled Apple's Utility Patents. | 4 | Allows for the interpretation of multiple simultaneous touches. | See Georgia Pacific Factor 9. | Products with screens 10 inches or larger: no design around. Products with screens 8 inches or less: design around after 12/31/10. |
| '129 | Double-Sided Touch-Sensitive Panel with Shield and Drive Combined Layer | Michel Maharbiz | Tablets | See report section titled Apple's Utility Patents. | 2 | Shields touch sensors from noise created by LCD screen. | See Georgia Pacific Factor 9. | Products with screens 10 inches or larger: no design around. Products with screens 8 inches or less: design around after 12/31/10. |

**Sources/Notes:**

1/ Discussions with counsel as well as Apple's technical experts: Ravin Balakrishnan, Michel Maharbiz, Karan Singh, and Alex Snoeren.

2/ I have assigned a rating of 1 through 4 on each patent based on my discussions with technical experts and representatives of Apple (Henri Lamiraux on the '381, '915, and '163 patents; Steve Hotelling on the '607 and '129 patents). A rating of 4 is of greatest relative weight and 1 is the lowest relative weight. In assigning a rating, I have considered and used my discussions with experts, discussions with Apple personnel, the design around time, degree of program integration, and the results of the John Hauser's Conjoint Analysis (with respect to the '607, '915, '163, and '381 patents).

3/ Design around times were provided by Apple representatives identified in note 2. No design around is deemed to be commercially acceptable by any expert. Design around or removal of the infringing aspect is based on an option with the purpose of establishing a degree of difficulty in attempting to work around the patent and not whether it was suitable or acceptable.

4/ On August 24th, 2011, a Dutch court ruled that Samsung was guilty of infringing one of Apple's patents (EP 868) pertaining to user interface for scrolling and moving digital objects on the Galaxy S, S II and Ace. Samsung announced on October 12, 2011 that an upgraded version of the three Galaxy smartphones will be released to avoid the infringement. I have used 1 month for the purpose of the design around period to be conservative.

Judgment, District Court The Hague, The Netherlands, 24 August 2011, docket numbers: 396957 / KG ZA 11-730 and 396959 / KG ZA 11-731 of Apple Inc. v. Samsung Electronics Co. LTD et al. and

http://www.reuters.com/article/2011/10/12/us-samsung-smartphones-netherlands-idUSTRE79B1W020111012.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 46-S**

**Reasonable Royalty Rates - Smartphones**

| Patent/Registration # | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 6,493,002 | No Market Rate 3/ | $0.28-$2.17 | $    0.46 | The quantitative reference points range from $0.28-$2.17 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    1.09 |
| 7,469,381 | No Market Rate 3/ | $0.52-$4.03 | $    0.85 | The quantitative reference points range from $0.52-$4.03 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    2.02 |
| 7,663,607 | | | | | |
| 7,844,915 | No Market Rate 3/ | $0.80-$6.20 | $    1.30 | The quantitative reference points range from $0.80-$6.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    3.10 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 46-S**

**Reasonable Royalty Rates - Smartphones**

| Patent/Registration # | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 7,853,891 | No Market Rate 3/ | $0.28-$2.17 | $ 0.46 | The quantitative reference points range from $0.28-$2.17 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 1.09 |
| 7,864,163 | No Market Rate 3/ | $0.52-$4.03 | $ 0.85 | The quantitative reference points range from $0.52-$4.03 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 2.02 |
| 7,920,129 | | | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        **EXHIBIT 46-S**

**Reasonable Royalty Rates - Smartphones**

| Patent/Registration # | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| D627,790<br>D617,334<br>D604,305<br>D618,677<br>D504,889<br>D593,087<br>D622,270<br>iPhone<br>iPhone 3G<br>iPhone 4<br>iPhone / iPhone 3G /<br>iPhone 4<br>iPad and iPad 2<br>3,470,983<br>3,457,218<br>3,475,327<br>3,886,196<br>3,889,642<br>3,886,200<br>3,889,685<br>3,886,169<br>3,886,197<br>85/041,463 (Pending)<br>2,935,038 | No Market Rate. See Exhibit 40-S | $9.00-$24.00 per Unit. See Exhibit 41-S. | $   19.50 | The quantitative reference points range from $9.00-$24.00 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the design patents, trade dress, and trademarks are of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for the design patents, trade dress, and trademarks as a whole is the high end of the reference range. 5/ | $   24.00 |

**Sources/Notes:**

1/ See Exhibit 41-S.

2/ See Exhibit 39-S.

3/ No market rate provided for Apple utility patents. Licensing discussions and proposals by both Apple and Samsung involved a portfolio of unspecific patents. See Exhibit 40-S.

4/ The U.S. Treasury Department utilizes an interquartile range methodology in evaluating an accepting royalty rates that are considered comparable and acceptable for use in transfer pricing. A range of proposed data points are divided into four quartiles and the highest and lowest quartiles are removed to produce a resulting range of acceptable comparable royalty rates. The 50 percent is the mid point in the range and still leaves 50% of excess profits.

5/ Due to the extreme importance of Apple's design to its corporate success and future, I have assigned the high end of the range for the licensing of all design related assets as a whole. Further, Apple has consistently and emphatically rejected any consideration of allowing a competitor to utilize Apple's proprietary design elements. Therefore, although Apple has refused to license any of its design related assets and would consider the license of one as injurious as licensing the group, the "Made for iPod" program rate of $4.00 per unit is considered a floor royalty for the license of any individual item within this group.

                    Submitted Under Seal; Highly Confidential;<br>Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 47-S

**Reasonable Royalty Rates - Tablets**

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 6,493,002 | No Market Rate 3/ | $0.28-$2.17 | $ 0.53 | The quantitative reference points range from $0.28-$2.17 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 1.09 |
| 7,469,381 | No Market Rate 3/ | $0.52-$4.03 | $ 0.98 | The quantitative reference points range from $0.52-$4.03 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 2.02 |
| 7,663,607 | No Market Rate 3/ | $1.08-$8.37 | $ 2.03 | The quantitative reference points range from $1.08-$8.37 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 4.19 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 47-S

**Reasonable Royalty Rates - Tablets**

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 7,844,915 | No Market Rate 3/ | $0.80-$6.20 | $   1.50 | The quantitative reference points range from $0.80-$6.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $   3.10 |
| 7,853,891 | No Market Rate 3/ | $0.28-$2.17 | $   0.53 | The quantitative reference points range from $0.28-$2.17 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $   1.09 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 47-S**

**Reasonable Royalty Rates - Tablets**

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 7,864,163 | No Market Rate 3/ | $0.52-$4.03 | $  0.98 | The quantitative reference points range from $0.52-$4.03 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $  2.02 |
| 7,920,129 | No Market Rate 3/ | $0.52-$4.03 | $  0.98 | The quantitative reference points range from $0.52-$4.03 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $  2.02 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 133 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 47-S

## Reasonable Royalty Rates - Tablets

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| D627,790 | No Market Rate. See Exhibit 40-S. | $9.00-$24.00 per Unit. See Exhibit 41-S. | $  22.50 | The quantitative reference points range from $9.00-$24.00 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the design patents and trade dress are of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for the design patents and trade dress as a whole is the high end of the reference range. 5/ | $24.00 6/ |
| D617,334 | | | | | |
| D604,305 | | | | | |
| D618,677 | | | | | |
| D504,889 | | | | | |
| D593,087 | | | | | |
| D622,270 | | | | | |
| iPhone | | | | | |
| iPhone 3G | | | | | |
| iPhone 4 | | | | | |
| iPhone / iPhone 3G / iPhone 4 | | | | | |
| iPad and iPad 2 | | | | | |
| 3,470,983 | | | | | |
| 3,457,218 | | | | | |
| 3,475,327 | | | | | |
| 3,886,196 | | | | | |
| 3,889,642 | | | | | |
| 3,886,200 | | | | | |
| 3,889,685 | | | | | |
| 3,886,169 | | | | | |
| 3,886,197 | | | | | |
| 85/041,463 (Pending) | | | | | |
| 2,935,038 | | | | | |

Sources/Notes:

1/ See Exhibit 41-S.

2/ See Exhibit 39-S.

3/ No market rate provided for Apple utility patents. Licensing discussions and proposals by both Apple and Samsung involved a portfolio of unspecific patents. See Exhibit 40-S.

4/ The U.S. Treasury Department utilizes an interquartile range methodology in evaluating an accepting royalty rates that are considered comparable and acceptable for use in transfer pricing. A range of proposed data points are divided into four quartiles and the highest and lowest quartiles are removed to produce a resulting range of acceptable comparable royalty rates. The 50 percent is the mid point in the range and still leaves 50% of excess profits.

5/ Due to the extreme importance of Apple's design to its corporate success and future, I have assigned the high end of the range for the licensing of all design related assets as a whole. Further, Apple has consistently and emphatically rejected any consideration of allowing a competitor to utilize Apple's proprietary design elements. Therefore, although Apple has refused to license any of its design related assets and would consider the license of one as injurious as licensing the group, the "Made for iPod" program rate of $4.00 per unit is considered a floor royalty for the license of any individual item within this group.

6/ I assume that Apple and Samsung would agree to one rate for both smartphones and tablets.

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 48-S

## Summary of Updated Damage Calculations
### (Infringer's Profits Based on Revenues)

| Description | Lost Profits | Infringer's Profits Design, Trade Dress, and Trademark | Reasonable Royalty | Total | |
|---|---|---|---|---|---|
| **Original Expert Report Damage Opinion** | $583,191,122 | $5,510,092,347 | $0 | $6,093,283,469 | 1/ |
| **Adjustments through 12/31/11:** | | | | | |
| (1) Correction Of Prior Computation | $0 | $0 | $0 | $0 | 2/ |
| (2) Addition of Previously Undisclosed Samsung Accused Products & Changes to Previously Disclosed Samsung Accused Products | $10,482,263 | $457,799,550 | $0 | $468,281,813 | 3/ |
| **Adjustments through 3/31/12:** | | | | | |
| (3) Addition of 1Q'12 Samsung Accused Product Sales | $12,154,566 | $877,879,049 | $0 | $890,033,615 | 4/ |
| (4) Removal of IP Assets | $0 | ($864,671,930) | $23,325,843 | ($841,346,087) | 5/ |
| **TOTAL DAMAGES** | $605,827,951 | $5,981,099,016 | $23,325,843 | $6,610,252,810 | 6/ |

**Sources/Notes:**
1/ Expert Report of Terry L. Musika, CPA, March 22, 2012, Exhibit 17.
2/ Two months of sales data for the Showcase has been moved to properly reflect the periods in which Samsung recorded it.
3/ Samsung's production on 4/30/12 (SAMNDCA00402075) provided the following adjustments through 12/31/11:
(a) Sales for three previously undisclosed Samsung Accused Products (Epic 4G Touch, Galaxy S2 Skyrocket, and Galaxy Tab 10.1 LTE)
(b) COGS was updated to include profits from Samsung Chinese manufacturing facility.
4/ Sales for the Samsung Accused Products including 1Q'12 were provided in Samsung's production on 4/30/12 (SAMNDCA00402075).
5/ Joint Case Management Conference Statement, dated 5/1/12, pp. 1-3.
6/ Exhibit 17-S.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 48.1-S

**Summary of Updated Damage Calculations**
**(Infringer's Profits Based on Gross Profit)**

| Description | Lost Profits | Infringer's Profits Design, Trade Dress, and Trademark | Reasonable Royalty | Total | |
|---|---|---|---|---|---|
| **Original Expert Report Damage Opinion** | $583,191,122 | $2,008,994,149 | $0 | $2,592,185,271 | 1/ |
| **Adjustments through 12/31/11:** | | | | | |
| (1) Correction Of Prior Computation | $0 | $856,975 | $0 | $856,975 | 2/ |
| (2) Addition of Previously Undisclosed Samsung Accused Products & Changes to Previously Disclosed Samsung Accused Products | $10,482,263 | $134,631,595 | $0 | $145,113,858 | 3/ |
| **Adjustments through 3/31/12:** | | | | | |
| (3) Addition of 1Q'12 Samsung Accused Product Sales | $12,154,566 | $275,118,161 | $0 | $287,272,727 | 4/ |
| (4) Removal of IP Assets | $0 | ($306,743,672) | $23,325,843 | ($283,417,829) | 5/ |
| **TOTAL DAMAGES** | $605,827,951 | $2,112,857,208 | $23,325,843 | $2,742,011,002 | 6/ |

**Sources/Notes:**

1/ Expert Report of Terry L. Musika, CPA, March 22, 2012, Exhibit 17.1

2/ Two months of sales data for the Showcase has been moved to properly reflect the periods in which Samsung recorded it.

3/ Samsung's production on 4/30/12 (SAMNDCA00402075) provided the following adjustments through 12/31/11:

(a) Sales for three previously undisclosed Samsung Accused Products (Epic 4G Touch, Galaxy S2 Skyrocket, and Galaxy Tab 10.1 LTE)

(b) COGS was updated to include profits from Samsung Chinese manufacturing facility.

4/ Sales for the Samsung Accused Products including 1Q'12 were provided in Samsung's production on 4/30/12 (SAMNDCA00402075).

5/ Case Management Conference Statement, dated 5/1/12, pp. 1-3.

6/ Exhibit 17.1-S.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Prepared by Invotex Group

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 49-S

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Analysis of Fixed & Variable and Product & Non-Product Costs**
**Through March 2012**

EXHIBIT 50-S

| Classification 1/ | Unadjusted P&L 2/ | Adjusted P&L 3/ |
|---|---|---|
| Quantity | 87,185,275 | |
| Sales | $ 30,420,751,548 | $ 30,420,751,548 |
| COGS (Cost of Goods Sold) | $ 18,510,093,503 | |
|   COGS – Materials Cost | $ 15,710,030,714 | $ 15,710,030,714 |
|   COGS – Expenses | $ 2,800,062,790 | |
|     COGS – Direct Cost – Labor Cost (Variable) | $ 448,866,331 | $ 448,866,331 |
|     COGS – Direct Cost – Royalty (Variable) | $ 1,494,808,709 | $ 1,494,808,709 |
|     COGS – Direct Cost – Depreciation Cost (Fixed) | $ 212,627,291 | |
|     COGS – Direct Cost – Processing Cost (Variable) | $ 131,591,584 | $ 131,591,584 |
|     COGS – Direct Cost – Molds Cost (Fixed) | $ 125,166,977 | |
|     COGS – Expenses – Others | $ 387,001,899 | |
|       COGS – Direct Cost – Utility Cost (Variable) | $ 16,283,320 | $ 16,283,320 |
|       COGS – Direct Cost – Others (Variable) | $ 199,501,450 | $ 199,501,450 |
|       COGS – Indirect Cost – Expenses (Operation Division) | $ 171,217,129 | |
| *Gross Sales Profit* | *$ 11,910,658,202* | |
| *Gross Sales Profit %* | *39.2%* | |
| Distribution Cost | $ 2,734,284,770 | |
|   Direct Commercial Sales – Marketing | $ 639,067,580 | |
|     Direct Commercial Sales – Advertising Cost (Fixed) | $ 396,071,232 | |
|     Direct Commercial Sales – Sales Promotion Cost (Fixed) | $ 242,996,348 | |
|   Direct Commercial Sales – Paid Commission (Variable) | $ 573,517,247 | $ 573,517,247 |
|   Direct Commercial Sales – Insurance Cost (Variable) | $ 12,876,318 | $ 12,876,318 |
|   Direct Commercial Sales – Others | $ 1,508,823,622 | |
|     Direct Commercial Sales –Logistics Cost (Variable) | $ 96,000,000 | $ 96,000,000 |
|     Direct Commercial Sales –Paid Commission (Variable) | | |
|     Direct Commercial Sales –Debt Expenses (Fixed) | $ 16,259,416 | |
|     Direct Commercial Sales –SVC Proxy (Fixed) | $ 247,447,866 | |
|     Direct Commercial Sales –Others (Variable) | $ 2,351,527 | $ 2,351,527 |
|     Direct Commercial Sales –Others (Fixed) | $ 1,146,764,814 | |
| *Incremental Profit* | | *$ 11,734,924,349* |
| *Incremental Profit %* | | *38.6%* |
| R&D Cost | $ 2,022,927,531 | |
|   R&D Cost – Labor Cost | $ 739,107,882 | |
|   R&D Cost – Depreciation Cost | $ 51,894,020 | |
|   R&D Cost – Others | $ 1,231,925,627 | |
|     R&D Cost – Supply Expenses | $ 28,449,017 | |
|     R&D Cost – Others | $ 345,053,807 | |
|     R&D Cost – Molds Cost | $ 23,998,856 | |
|     R&D Cost – Technological Fees | $ 47,942,220 | |
|     R&D Cost – Subcontracting Fee | $ 531,510,803 | |
|     R&D Cost – Materials Cost | $ 254,970,925 | |
| General Maintenance Costs | $ 574,635,441 | |
|   General Maintenance Cost – Labor Cost (Operation Division) | $ 183,871,466 | |
|   General Maintenance Cost – Depreciation Cost | $ 46,220,993 | |
|   General Maintenance Cost – Expenses (Operation Division) | $ 344,542,980 | |
| *Operating Profit* | *$ 6,578,810,302* | |
| *Operating Profit %* | *21.6%* | |
| Non-operating Profit | $ 1,179,086,561 | |
|   Non-operating Profit – Interest Income | $ 250,725,100 | |
|   Non-operating Profit – Foreign Exchange Profit | $ 840,162,147 | |
|   Non-operating Profit – Others | $ 88,199,304 | |
| Non-operating Expenses | $ 924,384,567 | |
|   Non-operating Expenses – Interest Payment | $ (123,798,757) | |
|   Non-operating Expenses – Foreign Exchange Loss | $ 877,257,413 | |
|   Non-operating Expenses – Others | $ 170,925,904 | |
| Pre-tax Profit | $ 6,833,512,454 | |

**Sources/Notes:**

1/ SAMNDCA-D-0000013 with translation.

2/ SAMNDCA-D-0000012. The Galaxy Tab 8.9 and Galaxy Tab 7.0 Plus (GT-P6210) have been removed because they are not accused. Items in blue have been calculated.

3/ Includes only cost categories which Samsung has designated as "Variable."

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 138 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 51-S



Apple Inc. v. Samsung Electronics Co., LTD., et al.
EXHIBIT 51.1-S



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2605-5   Filed 10/29/13   Page 140 of 149
Apple Inc. v. Samsung Electronics Co., LTD., et al.
EXHIBIT 51.1-S



Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 52-S**



**Sources/Notes:**
1/ SAMNDCA-D00000014.
2/ SAMNDCA00402075.

Prepared by Invotex Group

Submitted Under Seal;
Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 52.1-S**

Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 52.1-S**

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 52.1-S**

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 52.1-S**

Apple Inc. v. Samsung Electronics Co., LTD., et al.                              **EXHIBIT 52.1-S**



Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 52.1-S



Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

**Information Obtained Subsequent to Original Expert Report** 1/

| # | Document | Document Title | Beg Bates | Document Date | Comment | Category |
|---|----------|----------------|-----------|---------------|---------|----------|
| 1 | Benner Exhibit 2579 | STA Next Big Thing Campaign Impact Measured | SAMNDCA0035 3414 | 2/14/2012 | Survey results showing positive effect of Next Big Thing advertisement campaign on Samsung brand, and corresponding negative effect on Apple brand.<br><br>'3429: "NBT Is Not Only Upgrading Samsung's Overall Mobile Brand Stature, It Is Also Helping De-Positioning Apple." | Competition |
| 2 | Cheong Exhibit 2650 | STA Presentation to COO Lee | SAMNDCA1154 9523 | 7/22/2010 | '9544: Graph from internal Samsung presentation shows predicted increase in smartphone v. mobile phone install base (CAGR of 36% for smartphones), text above graph states: "Consumer adoption of smartphones is expected to explode"<br><br>'9559: Internal Samsung presentation noting that "Galaxy S sales will drive significant ASP/API growth in 2H2010 and into 2011." | Smartphone Growth / Importance |
| 3 | Cheong Exhibit 2651 | Cover Email ("GS Choi's Direction and Request to STA") & Beat Apple Presentation | SAMNDCA1037 5640 | 6/17/2011 | '5642: Apple has "Extremely loyal customer base."<br><br>'5644:  "STA must respond with a plan to beat Apple by Q3-11 or Q4-11 with a longer-term goal of growing Super-Premium ASPs to match Apple in 2012."<br><br>'5653: Graph showing Galaxy S Captivate and stating that GM% = 48%<br><br>'5655: "Apple continues to expand it's [sic] installed based [sic] of extremely loyal consumers.  How can this be disrupted?" | Competition; Financial Results; Loyalty |
| 4 | Cheong Exhibit 2652 | BCG: Lessons from Apple | SAMNDCA0027 4819 | 11/3/2010 | '4838: "Apple has a strong, clear brand promise consisting of compelling brand attributes that resonate with consumers" - Brand promise: "Cool, innovative products offering superior design and usability." | Loyalty |
| 5 | Cheong Exhibit 2653 | STA Marketing: CFO Update | SAMNDCA1154 7471 | 2/15/2012 | '7475: One of Samsung's 2012 Objectives is to "Manage customer base to foster brand Loyalty and Retention."<br><br>'7478: "STA's Next Big Thing Campaign Has Been Well Received by the Industry and the Public, Creating Positive Buzz for Samsung's Brand in the US," and "Samsung's snarky TV ads have harshed the iPhone's vibe."<br><br>'7479: "After Only One Week, the Next Big Thing Campaign Shifted the Online Conversation Away from iPhone Toward Samsung and Introduced Galaxy as a Top Term." | Competition; Loyalty |
| 6 | Cheong Exhibit 2654 | STA Product Strategy | SAMNDCA1154 7506 | 2/16/2012 | '7507:  Internal Samsung presentation stating that "[d]ramatic shift to Smartphones challenged the traditional model of operations." | Smartphone Growth / Importance |
| 7 | Cheong Exhibit 2655 | AT&T: For HQ CFO | SAMNDCA1154 7521 | 2/16/2012 | '7523: Internal Samsung presentation noting "[n]eed to compete with Apple at free." | Competition |
| 8 | Cho Exhibit 2676 | Ecosystem Securing/Procuring Strategy to take the lead in the Smartphone Market. | SAMNDCA0039 2050 | 4/1/2009 | '2054: Projection that smartphone will take up more than 26% of the smartphone demand in the wor'd by 2012.  A chart shows that the increase rate of the importance/weight increases from 13% in 2008 to 26% in 2012.<br><br>'2056-59: Discussing importance of ecosystem (e.g., "Securing Ecosystem Is Urgent").<br><br>'2058: Table showing projected increase in smartphone (weight/ratio) from 2008 to 2012 compared to mobile phone. | Loyalty; Smartphone Growth / Importance |
| 9 | Hong Exhibit 2152 | McKinsey Report - Winning in smartphones: It's now or never | SAMNDCA1080 7316 | 12/10/2009 | '7321: "Smartphone growth will likely exceed analyst expectation."<br><br>'7322: "Premium smartphone segment ($>300) will expand to 18% of units but 40-45% of profits."<br><br>'7350: "Consumer research confirms that smartphone penetration poised to double in next "2 years." | Smartphone Growth / Importance |
| 10 | Sohn Exhibit 1654 | (Gravity Tank) Touch Portfolio: Rollout Strategy - Recommendation Based on Consumer Insight | SAMNDCA0019 1811 | 12/17/2009 | '1856: "iPhone's strong lock-in levers...drive annuity revenue...and tie consumers to product." | Loyalty |
| 11 | Sohn Exhibit 2647 | STA Competitive Situation: Paradigm Shift | SAMNDCA1154 7401 | 2/16/2012 | '7405: "STA Missed Expectations Relative to Apple But Did Reach Key Milestones," stated above a graphic showing "3Yrs of >$1B consolidated profits."<br><br>'7408: Internal Samsung presentation noting that "US [Smartphone] Market Becoming a Two Horse Race Between Apple and Samsung"<br><br>'7409: "Apple Continues to Show Sales Growth Due to Strong Loyalty, Carrier Agreements and Dominant Retail Presence"<br><br>'7418: "Apple Marketing, Portfolio Expansion and Platform Evolution Resulting in Very Sticky / Loyal Subscribers"<br><br>'7419:  "Apple Subscriber Trajectory May Result in Apple Overtaking Samsung's Entire US Install Base by YE2013"<br><br>'7424: One of the listed STA Goals in 20112 is to "Double Profit >2B consolidated profit" | Competition; Financial Results; Loyalty |
| 12 | Sohn Exhibit 2714 | (Gravity Tank) Touch Portfolio: Key Takeaways | SAMNDCA1080 5169 | 12/24/2006 | '5171: Summary of key points from Touch Portfolio study states, "Due to Apple's brand power and intentional hard lock-in equipment, the loyalty of the iPhone users is very high, and taking away the customer base is hard -> The strategy to preventing the influx of new customers seems more valid than taking away the existing iPhone users." | Loyalty |
| 13 | Sohn Exhibit 2720 | VZW iPhone Announcement | SAMNDCA1037 3422 | 1/11/2010 | '3436: Survey Results note that customers of other carriers are 22% "somewhat likely" to switch to VZW to buy an iPhone, while 5% note they are "very likely" and 4% notes extremely likely.<br><br>'3438: "Among all WSP subscribers with the exception of Verizon, knowing that Verizon will offer the iPhone in early 2011," a graph below shows that 25% (net) said yes to switching carriers, either right away or after a waiting period. | Carrier Switching |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Information Obtained Subsequent to Original Expert Report** 1/

| # | Document | Document Title | Beg Bates | Document Date | Comment | Category |
|---|----------|----------------|-----------|---------------|---------|----------|
| 14 | Sohn Exhibit 2725 | STA Factbook | S-ITC-003353288 | 8/1/2011 | '3305: "Android & Apple Ecosystems are 'Sticky' (High Repeat Purchases).  Within Android, HTC Appears to Be Building a More Loyal Following."<br><br>'3324: "Lock-In Mechanisms Part of Apple's Approach to N-Services."<br><br>'3334: "Need to Slow the Rapidly Growing Apple Install Base at VZW and Reduce the Sizable Apple Base at ATT."<br><br>'3436: "Drive Customer Loyalty: Investing in Services and Developers/Content Providers."<br><br>'3346: "In 4Q11, Premium Smartphones Represent 26% of SAM Smartphone," noting "28% YOY growth in Premium Smartphones (sell-in)."<br><br>'3385: Executive Summary states, "From 1st Half of 2011 to 1st Half of 2012, STA is completing the transition from a Majority Feature Phone provider to a Majority Smartphone Provider and becoming more aligned to the market."<br><br>'3293: Samsung document states "Smartphones To Be 90% of Mobile Phone Vol TAM by 2015 (Android at 55% of TAM)," above a graphic showing projected growth of smartphone/mobile market over time.<br><br>'3294: "Smartphone Revenue to Drive 90%+ of the US Mkt by 2012 (Android Rev at 50% of market)."<br><br>'3376:  "Results Trended from 2009 Show That Samsung Successfully Stole MPSA Share from Apple After the Galaxy S Campaign But Was Unable to Hold This Advantage." | Competition; Financial Results; Loyalty; Smartphone Growth / Importance |
| 15 | Sohn Exhibit 2727 | GS Choi Visit to STA | SAMNDCA11513944 | 9/20/2011 | '3957: "STA Must Pass and Sustain the Lead Over Apple While Building the New Businesses to Drive Future Growth."<br><br>'3961: Presentation states "Key Challenges/Lessons Learned Through First 3 Quarters," including: "1. Apple is aggressively growing share - future success is dependent on blunting Apple …"<br><br>'4000: Under "FY'12 Key Marketing Strategies," Samsung's presentation states: "Attacking Consumer Segments & Business Opportunities."  Under this heading is "Loyalty" and "Increase consumer loyalty to STA…" above a graphic showing Apple has high loyalty repurchase numbers compared to HTC and Samsung.<br><br>'4001: Heading is: "Consumer Loyalty: Samsung Brand & Products," and beneath heading is subheading: "Building Long-Term Consumer Loyalty."<br><br>'4046: "Ways to achieve our GOALS…(1) S>2H … (2) S>A," where "S" is Samsung, "H" is HTC, and "A" is Apple.<br><br>'4060: "S>A requires us to think differently." | Competition; Loyalty |
| 16 | Sohn Exhibit 2728 | Email from Dale Sohn to gschoi@samsung.com, et al., "(Report) 1Q Mobile Phone Business" | SAMNDCA00381800 | 2/8/2012 | '1800: "There is a structural problem in that A Company takes away 50~70% of smartphone shares of ATT/VZW/Sprint.  The reason is that the carriers are promoting sales in order not to pay penalties to A Company and consumers consistently are looking for Apple brand."<br><br>'1800 - 1801: "STA 2012 1Q Business Performance - 1. Performance forecast analysis compared to prior year - 1Q Sales $2.2B, Volume is forecasted at 10.7 million units." | Financial Results; Loyalty |
| 17 | Sohn Exhibit 2729 | Samsung Q4'11 Deep Dive | SAMNDCA00380801 | 2/14/2012 | '0806: Samsung presentation, with two headings: "Continue capitalizing on the strength and momentum of the Galaxy line . . . ," and "Continue putting pressure directly on Apple by clearly communicating what makes the Galaxy different (and therefore better)."  Below, it states: "This is critical right now because though Samsung is making gains, Apple continues to build as well and the competitive set within mobile is looking to be more and more of a two-horse race."<br><br>'0822, '0823, '0827, '0829, '0844, '3845: Survey results showing positive effect of Galaxy awareness on Samsung purchase intent and Samsung brand imagery. | Competition; Loyalty |
| 18 | April 30, 2012 Production | 2011 Business Strategy, Mobile Communications Division | SAMNDCA00401853 | December, 2010 | Business plan giving comprehensive overview of financial results and projections as well as strategy to compete with Apple in smartphones and tablets<br><br>'1860: "Galaxy S, Global Big Hit -> 'The only real competitor of Apple iPhone'"<br><br>'1864: Chart directly comparing the features of the iPad and Galaxy Tab | Competition; Financial Results |
| 19 | April 30, 2012 Production | 2012 Business Strategy, Mobile Communications Division | SAMNDCA00401905 | October, 2011 | Business plan giving comprehensive overview of financial results and projections as well as strategy to compete with Apple in smartphones and tablets<br><br>'1916: "Preemptively respond to iPhone 5 with continued success of 2012 flagship model"<br><br>'1916: "Keep iPad 3 in check by introducing a follow-up model" | Competition; Financial Results |

**Sources/Notes:**
1/  Information provided in this exhibit is exemplary and not intended to be comprehensive.