# EXHIBIT 2
# FILED UNDER SEAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK |
| Plaintiff,<br>v. | **EXPERT REPORT OF TERRY L. MUSIKA, CPA** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

**SUBJECT TO PROTECTIVE ORDER**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| A. | QUALIFICATIONS | 1 |
| B. | ASSIGNMENT | 1 |
| C. | DATA AND OTHER INFORMATION CONSIDERED | 2 |
| D. | APPLE'S UTILITY PATENTS | 3 |
| E. | APPLE'S DESIGN PATENTS | 5 |
| F. | APPLE'S TRADE DRESS REGISTRATIONS | 5 |
| G. | APPLE'S UNREGISTERED TRADE DRESS | 6 |
| H. | APPLE'S TRADEMARK REGISTRATIONS | 9 |
| I. | APPLE'S UNREGISTERED TRADEMARK | 11 |
| J. | APPLE INC | 11 |
| K. | SAMSUNG | 15 |
| L. | INDUSTRY AND MARKET | 16 |
| M. | ASSUMPTIONS | 21 |
| N. | SUMMARY OF CONCLUSIONS AND OPINIONS | 22 |
| O. | IRREPARABLE HARM | 27 |
| P. | MONETARY DAMAGE ANALYSIS | 36 |
| Q. | POSSIBLE REVISIONS TO THIS REPORT | 88 |
| R. | EXHIBITS | 88 |
| S. | PROFESSIONAL ARRANGEMENT | 89 |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**APPLE INC.**

**V.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**

**EXPERT WITNESS REPORT OF**

**TERRY L. MUSIKA, CPA**

### A.  QUALIFICATIONS

1.  I am a CPA with over 37 years of business experience.  I am a former audit and consulting partner for the international accounting firm of Coopers & Lybrand which is today named PricewaterhouseCoopers, former Managing Director for Navigant Consulting, Inc. and have previously formed, owned and operated a proprietary database company, two national financial and economic consulting firms, and a merger and acquisition company.  Additionally, I have frequently served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, and Paying Agent.  My resume, attached as **Exhibit 1**, lists my work experience, academic degrees, and publications.

2.  My business address is 1637 Thames Street, Baltimore, Maryland 21231.

3.  During the past 37 years I have provided expert testimony in over 200 separate proceedings before 47 different Federal District Courts throughout the U.S., nine separate state courts, numerous proceedings before the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, numerous arbitration matters and the United States International Trade Commission.  I was accepted as a designated expert in all cases.  **Exhibit 2** lists the cases in which I have testified as an expert witness in deposition and at trial from 2007 to the present.

### B.   ASSIGNMENT

4.  In the matter of Apple Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, I have been asked by counsel for Apple Inc. ("Apple")

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    to determine the amount of damages as well as address the irreparable harm that result from the

2    assumed infringement of Apple's asserted U.S. utility patents, U.S. design patents, U.S. trademark

3    registrations/applications, and U.S. trade dress registrations/applications by Samsung Electronics Co.,

4    Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC

5    (collectively, "Samsung") as identified in Apple's Amended Complaint.[1]   Apple's intellectual

6    property described above and identified in detail below is collectively referred to herein as the "Apple

7    Intellectual Property In Suit." The 32 Samsung products which Apple asserts infringe the Apple

8    Intellectual Property In Suit ("Samsung Accused Products") are identified on **Exhibit 4**.

9    5.    I am prepared to explain my opinions in testimony at deposition and at trial.

10    **C.    DATA AND OTHER INFORMATION CONSIDERED**

11    6.    In arriving at the testimony outlined below, I have based my opinions on my expertise in accounting,

12    auditing, financial and damage analysis, independent research of publicly-available information, and

13    my review of various documents and pleadings produced thus far by both the Plaintiff and the

14    Defendants.  I considered the documents identified in **Exhibit 3** to this report in forming the opinions

15    expressed in this report.

16    7.    In addition, I discussed this matter with the following Apple representatives:

17          •   Mark Buckley, Financial Analyst V [2]

18          •   Rory Sexton, Vice President of Supply Demand Management

19          •   Anuj Saigal, Director of Supply Demand Management

20          •   Elisa De Martel, Senior Manager of Worldwide FP&A

21          •   Tang Tan, Senior Director iPhone Product Design

22          •   Henri Lamiraux, Vice President of Engineering for iOS

23          •   Steve Hotelling, Senior Director Touch Sensitive Hardware

24          •   Boris Teksler, Director, Patent Licensing & Strategy

25    8.    I have considered and evaluated the reliability of the underlying data and the degree to which my

26    assumptions are supported by the record.  The techniques I used to calculate damages are generally

---

[1] Apple Inc. Amended Complaint dated June 16, 2011, pp.7-9, 16-17, and 21-24.
[2] Deposition of Mark Buckley, February 23, 2012, p. 33.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    accepted within and reliable according to the standards of my profession, and are sufficiently

2    explained and disclosed to permit a review of my work.

3    **D.   APPLE'S UTILITY PATENTS**

4    9.    It is my understanding that Samsung is accused of infringing the following U.S. utility patents:

5    10.   U.S. Patent No. 6,493,002 ("the '002 Patent") covers, for example, a system that generates and

6    displays a window region (e.g., a status bar) having multiple display areas that are associated with

7    independent programming modules.  These modules may provide status information.[3]

8    11.   U.S. Patent No. 7,469,381 ("the '381 Patent") covers, for example, a method, on a device with a

9    touch screen display, for displaying an electronic document and translating the document in response

10    to object movement detected on the display (e.g., a finger gesture).  When the document is translated

11    in a direction that causes an edge of the document to be reached, an area beyond the edge is

12    displayed.  The '381 Patent discloses that this provides a visual indicator to a user that one or more

13    edges of an electronic document are being displayed.   When the device no longer detects the

14    movement of the object, the document is translated back so that the area beyond the edge is no longer

15    displayed.[4]  This effect, sometimes referred to as a "bounce" effect, is commonly associated with

16    Apple products.

17    12.   U.S. Patent No. 7,663,607 ("the '607 Patent") covers, for example, a touch panel capable of detecting

18    multiple touches that occur at or near the same time at distinct locations on the panel.  The touch

19    panel has a transparent capacitive sensing medium that includes a first layer having multiple

20    conductive lines and a second layer, spatially separated from the first layer, having multiple

21    conductive lines arranged at right angles from the conductive lines of the first layer.  The touch panel

22    also includes capacitive monitory circuitry to detect changes in charge coupling between the

23    conductive lines of the first and second layers.[5]

24    13.   U.S. Patent No. 7,844,915 ("the '915 Patent") covers, for example, a method for scrolling on a touch-

25    sensitive display of a device and for distinguishing between scrolling and other actions.  The method

26

27    [3] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 2.
       [4] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 3.
28    [5] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 6.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                       3

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

includes creating an event object in response to receiving a user input on the display and determining whether the event object invokes a scroll (e.g., a window scroll) or a gesture operation (e.g., scaling the view) by distinguishing between a single input point (interpreted as a scroll operation) or two or more input points (interpreted as a gesture operation). [6] These actions, viewed by users as involving actions such as scrolling, pinching and zooming, are commonly associated with Apple products.

14. U.S. Patent No. 7,853,891 ("the '891 Patent") covers, for example, a method to display a user interface window for a digital processing system. The method includes displaying a window that closes after a timer expires and in some embodiments does not close in response to any inputs from a user input device of the system. In some embodiments, the window is translucent. The '891 Patent discloses that the window may be a volume window, for example.[7]

15. U.S. Patent No. 7,864,163 ("the '163 Patent") covers, for example, a method for displaying and manipulating a structured electronic document (e.g., an HTML web page) on a device with a touch screen display. The method includes enlarging and translating the document to substantially center a first box of the document based on detecting a first touch gesture at the first box's location and then translating the document so that a second box is substantially centered based on detecting a second touch gesture at the second box's location. The patent also claims various other touches and gestures for restoring a web page to its original size, matching a page width to the display width, rotating a web page in portrait and landscape modes, and translating and scaling pages using swipes and gestures.[8]

16. U.S. Patent No. 7,920,129 ("the '129 Patent") covers, for example, a capacitive touch sensor panel that includes a first set of conductive traces and a second set of conductive traces spatially separated from the first set of traces. The minimum width of the second set of traces is substantially greater than the maximum width of the first set of traces at least at an intersection of the first and second set of traces. This width difference provides shielding for the first set of traces.[9]

17. See **Exhibit 5** for a summary of Apple's utility patents asserted in this case.

---

[6] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 4.
[7] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 5.
[8] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 7.
[9] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 8.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**E.    APPLE'S DESIGN PATENTS**

18.    It is my understanding that Samsung is accused of infringing the following U.S. design patents:

- U.S. Patent No. D627,790 ("the D'790 Patent")
- U.S. Patent No. D617,334 ("the D'334 Patent"
- U.S. Patent No. D604,305 ("'the D'305 Patent")
- U.S. Patent No. D618,677 ("the D'677 Patent")
- U.S. Patent No. D504,889 ("the D'889 Patent")
- U.S. Patent No. D593,087 ("the D'087 Patent")
- U.S. Patent No. D622,270 ("the D'270 Patent")

19.    See **Exhibit 6** for a summary of Apple's seven design patents asserted in this case.

**F.    APPLE'S TRADE DRESS REGISTRATIONS**

20.    It is my understanding that Samsung is accused of infringing the following U.S. trade dress registrations:

21.    The trade dress shown in U.S. Registration No. 3,470,983 is described as follows:  "The color(s) black, blue, brown, brown-gray, gray-green, green, orange, red, silver, tan, white and yellow is/are claimed as a feature of the mark.  The mark consists of the configuration of a rectangular handheld mobile digital electronic device with rounded silver edges, a black face, and an array of 16 square icons with rounded edges.  The top 12 icons appear on a black background, and the bottom 4 appear on a silver background. The first icon depicts the letters "SMS" in green inside a white speech bubble on a green background; the second icon is white with a thin red stripe at the top; the third icon depicts a sunflower with yellow petals, a brown center, and a green stem in front of a blue sky; the fourth icon depicts a camera lens with a black barrel and blue glass on a silver background; the fifth icon depicts a tan television console with brown knobs and a gray-green screen; the sixth icon depicts a white graph line on a blue background; the seventh icon depicts a map with yellow and orange roads, a pin with a red head, and a red-and- blue road sign with the numeral "280" in white; the eighth icon depicts an orange sun on a blue background, with the temperature in white; the ninth icon depicts a white clock with black and red hands and numerals on a black background; the tenth icon depicts three brown-gray circles and one orange circle on a black background with a white border, with the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

mathematical symbols for addition, subtraction, multiplication, and the equal sign displayed in white on the circles; the eleventh icon depicts a portion of a yellow notepad with blue and red ruling, with brown binding at the top; the twelfth icon depicts three silver gears over a thatched black-and-silver background; the thirteenth icon depicts a white telephone receiver against a green background; the fourteenth icon depicts a white envelope over a blue sky with white clouds; the fifteenth icon depicts a white compass with a white- and-red needle over a blue map; the sixteenth icon depicts the distinctive configuration of applicant's media player device in white over an orange background."[10]

22.  The trade dress shown in U.S. Registration No. 3,457,218 is described as follows: "Color is not claimed as a feature of the mark.  The mark consists of the configuration of a rectangular handheld mobile digital electronic device with rounded corners."[11]

23.  The trade dress shown in U.S. Registration No. 3,475,327 is described as follows: "The color(s) gray, silver and black is/are claimed as a feature of the mark.  The mark consists of the configuration of a handheld mobile digital electronic device.  The material shown in dotted lines, namely, the buttons and openings on the device show the position of the mark in relation to the device and are not considered a part of the mark.  The color gray appears as a rectangle at the front, center of the device. The color black appears on the front of the device above and below the gray rectangle and on the curved corners of the device.  The color silver appears as the outer border and sides of the device. The color white is shown solely to identify placement of the mark and is not claimed as a part of the mark."[12]

24.  See **Exhibit 7** for a summary of the registered trade dresses asserted in this case.

G.  **APPLE'S UNREGISTERED TRADE DRESS**

25.  The following elements of Apple's product designs comprise the "Original iPhone Trade Dress" at issue in this case:

- a rectangular product with four evenly rounded corners;

- a flat clear surface covering the front of the product;

---

[10] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 16.
[11] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 17.
[12] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 18.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- the appearance of a metallic bezel around the flat clear surface;

- a display screen under the clear surface;

- under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen;

- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and

- when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.[13]

26.     The following elements of Apple's product designs comprise the "iPhone 3G Trade Dress" at issue in this case:

- a rectangular product with four evenly rounded corners;

- a flat clear surface covering the front of the product;

- the appearance of a metallic bezel around the flat clear surface;

- a display screen under the clear surface;

- under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen;

- when the device is on, a row of small dots on the display screen;

- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and

- when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.[14]

27.     The following elements of Apple's product designs comprise the "iPhone 4 Trade Dress" at issue in this case:

- a rectangular product with four evenly rounded corners;

---

[13] Apple Inc. Amended Complaint dated June 16, 2011, p. 17, ¶ 57.
[14] Apple Inc. Amended Complaint dated June 16, 2011, pp. 18-19, ¶ 59.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- a flat clear surface covering the front of the product;
- a display screen under the clear surface;
- under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower black borders on either side of the screen;
- a thin metallic band around the outside edge of the phone;
- when the device is on, a row of small dots on the display screen;
- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and
- when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.[15]

28.   The following elements of Apple's product designs comprise the "iPhone Trade Dress" at issue in this case:

- a rectangular product with four evenly rounded corners;
- a flat clear surface covering the front of the product;
- a display screen under the clear surface;
- under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen;
- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and
- when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.[16]

29.   The following elements of Apple's product designs comprise the "iPad Trade Dress" at issue in this case:

- a rectangular product with four evenly rounded corners;

---

[15] Apple Inc. Amended Complaint dated June 16, 2011, p. 19, ¶ 61.
[16] Apple Inc. Amended Complaint dated June 16, 2011, pp. 19-20, ¶ 63.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

8

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- a flat clear surface covering the front of the product;

- the appearance of a metallic rim around the flat clear surface;

- a display screen under the clear surface;

- under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and

- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.[17]

30.    The following elements of Apple's product designs comprise the "iPad 2 Trade Dress" at issue in this case:

- a rectangular product with four evenly rounded corners;

- a flat clear surface covering the front of the product;

- the appearance of a metallic rim around the flat clear surface;

- a display screen under the clear surface;

- under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and

- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.[18]

31.    See **Exhibit 8** for a summary of the common law trade dresses asserted in this case.

**H.    APPLE'S TRADEMARK REGISTRATIONS**

32.    It is my understanding that Samsung is accused of infringing the icon trademark in the following U.S. trademark registrations:

33.    The mark in U.S. Registration No. 3,886,196 is described as follows: "The color(s) green, light green, dark green and white is/are claimed as a feature of the mark.  The mark consists of a rectangle with rounded corners depicting a stylized white telephone receiver against a striped green and dark green background.  A shade of light green covers the upper half of the rectangle design."[19]

---

[17] Apple Inc. Amended Complaint dated June 16, 2011, p. 20, ¶ 65.
[18] Apple Inc. Amended Complaint dated June 16, 2011, pp. 20-21, ¶ 67.
[19] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 23.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

34. The mark in U.S. Registration No. 3,889,642 is described as follows: "The color(s) green, dark green and light green is/are claimed as a feature of the mark. The mark consists of a rectangle with rounded corners depicting a stylized speech bubble on a diagonal striped background. The color white appears in the speech bubble design; the colors green and dark green appear in the diagonal stripes in the background of the rectangle design; and the color light green appears in the upper half of the rectangle design."[20]

35. The mark in U.S. Registration No. 3,886,200 is described as follows: "The color(s) yellow, blue, green, brown, black, gray and white is/are claimed as a feature of the mark. The mark consists of a gray, white, and blue rectangle with rounded corners depicting a stylized flower in the colors green, yellow, brown, black, white and gray."[21]

36. The mark in U.S. Registration No. 3,889,685 is described as follows:  "The color(s) gray, white, silver and black is/are claimed as a feature of the mark. The mark consists of partial images of three gears shown in gray, white and silver, on a background of gray with black dots, all contained within a rectangular grey and white frame with rounded corners."[22]

37. The mark in U.S. Registration No. 3,886,169 is described as follows:  "The color(s) yellow, brown and gray is/are claimed as a feature of the mark. The mark consists of a rectangle with rounded corners depicting a stylized cross section of a page of notebook paper. The color yellow appears in the notebook paper; the color brown appears at the top above the notebook paper and in the vertical lines on the left side of the notebook paper; and the color gray appears in the horizontal lines across the notebook paper."[23]

38. The mark in U.S. Registration No. 3,886,197 is described as follows:  "The color(s) brown, white and gray is/are claimed as a feature of the mark. The mark consists of a brown rectangle with rounded corners depicting a stylized wire-bound book with the silhouette of a man in the middle. The wire

---

[20] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 24.
[21] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 25.
[22] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 26
[23] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 27.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   binding appears in white and gray.  There are brown tabs on the right of the book with the letters

2   'ABCDEF' in gray and white."[24]

3   39.   The mark in U.S. Registration No. 2,935,038 is described as follows:  "The mark consists of a design

4         of a compact disc with two musical notes."[25]

5   40.   See **Exhibit 9** for a summary of registered trademarks asserted in this case.

6   **I.   APPLE'S UNREGISTERED TRADEMARK**

7   41.   Apple also asserts an icon with a purple background color with a circle and a silhouette of two white

8         eighth notes within the white circle (the "Purple iTunes Store Trademark").  This mark is shown in

9         pending U.S. Application No. 85/041,463.[26]

10  42.   See **Exhibit 8 f**or a summary of the unregistered trademark asserted in this case

11  **J.   APPLE INC.**

12  43.   Apple Inc. is a California corporation which was established in 1977 and is headquartered in

13        Cupertino, California.[27]  The company is traded on the NASDAQ Global Select Market under the

14        symbol AAPL.[28]  From its inception, innovation has been at the core of Apple's existence. Steve

15        Jobs' uncompromising focus on innovation and the pursuit of a unique corporate design has resulted

16        in the development of Apple's entire ecosystem of products.    Apple's Form 10-K states, "The

17        Company's overall business strategy is to control the design and development of the hardware and

18        software for all of its products, including the personal computer, mobile communications and

19        consumer electronics devices.  The Company's business strategy leverages its unique ability to design

20        and develop its own operating system, hardware, application software, and services to provide its

21        customers new products and solutions with superior ease-of-use, seamless integration, and innovative

22        industrial design."[29]

23  44.   Apple "designs, manufactures and markets mobile communication and media devices, personal

24        computers, and portable digital music players, and sells a variety of related software, services,

---

[24] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 28.
[25] Apple Inc. Amended Complaint dated June 16, 2011, Exhibit 30.
[26] Apple Inc. Amended Complaint dated June 16, 2011, p.23, ¶ 77, Ex. 29.
[27] Apple Inc. Form 10-K, fiscal year ended 9/24/11, pp. 1 and 20.
[28] Apple Inc. Form 10-K, fiscal year ended 9/24/11, p. 22.
[29] Apple Inc. Amended Form 10-K, fiscal year ended 9/26/09, p. 4.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                 11

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

peripherals, networking solutions, and third-party digital content and applications."[30] Apple's direct involvement in the design and manufacture of both the hardware and the operating software distinguishes Apple from other market competitors that are only directly involved with the design and manufacture of hardware or the operating software but not both. Apple's enhanced control of the design and manufacturing process of its entire product offering allows Apple to incorporate a highly integrated and reinforcing relationship between the method of operation and appearance of the various products within the Apple ecosystem. The company's "products and services include iPhone, iPad, Mac, iPod, Apple TV, a portfolio of consumer and professional software applications, the iOS and Mac OS X operating systems, iCloud, and a variety of accessory, service and support offerings. The Company also sells and delivers digital content and applications through the iTunes Store, App Store, iBookstore, and Mac App Store. The Company sells its products worldwide through its retail stores, online stores, and direct sales force, as well as through third-party cellular network carriers, wholesalers, retailers, and value-added resellers. In addition, the Company sells a variety of third-party iPhone, iPad, Mac and iPod compatible products, including application software, printers, storage devices, speakers, headphones, and various other accessories and peripherals, through its online and retail stores."[31]

45.     Apple's worldwide sales in fiscal year 2011 were $108 billion, an increase of 66% over the prior year.  iPhone and iPad sales made up $47.1 billion and $20.4 billion, respectively, of Apple's total sales.[32]  Combined, the two products represented approximately 62.5% of Apple's 2011 fiscal year sales.  As of December 31, 2011, Apple records show that it had sold a cumulative 238 million iPhone and iPad devices; approximately 91 million units were sold in the United States.[33]

*iPhone*

46.     Apple first introduced its iPhone on January 9, 2007 and began selling it on June 29, 2007.[34]  At the

---

[30] Apple Inc. Form 10-K, fiscal year ended 9/24/11, p. 1.
[31] Apple Inc. Form 10-K, fiscal year ended 9/24/11, p. 1.
[32] Apple Inc. Form 10-K, fiscal year ended 9/24/11, p. 30.
[33] GAAP Line of Business Report, iPad (APL794-F0000008233 to APL794-F0000008236); GAAP Line of Business Report, iPhone (APL794-F0000008237 to APL794-F0000008240); Apple Billings Report (US) - iPod Touch and iPad, Q4 FY07 through Q1 FY12 (APLNDC-Y0000051605); Apple Billings Report (US) - iPhone, Q3 FY07 through Q1 FY12 (APLNDC-Y0000051362).
[34] Apple Inc. Press Release, 1/9/07 (http://www.apple.com/pr/library/2007/01/09Apple-Reinvents-the-Phone-with-iPhone.html).

(Footnote continues on next page.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

product launch, Steve Jobs described the iPhone as "a revolutionary and magical product that is literally five years ahead of any other mobile phone."[35] At the time, Apple stated the following regarding its newest product:

"iPhone introduces an entirely new user interface based on a revolutionary multi-touch display and pioneering new software that allows users to control iPhone with just a tap, flick or pinch of their fingers. iPhone combines three products into one small and lightweight handheld device—a revolutionary mobile phone, a widescreen iPod®, and the Internet in your pocket with best-ever applications on a mobile phone for email, web browsing and maps. iPhone ushers in an era of software power and sophistication never before seen in a mobile device, which completely redefines what users can do on their mobile phones."[36]

47.     As summarized below, between June 2007 and October 2011 Apple released four updated models of its iPhone:

| Product | Release Date | Carrier |
|---|---|---|
| iPhone [37] | 06/29/07 | AT&T |
| iPhone 3G [38] | 07/11/08 | AT&T |
| iPhone 3GS [39] | 06/09/09 | AT&T |
| iPhone 4 [40] | 06/24/10 02/03/11 | AT&T Verizon |
| iPhone 4S [41] | 10/14/11 | AT&T, Verizon & Sprint |

(Footnote continued from previous page.)

Apple Inc. Press Release, 6/28/07 (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).

[35] Apple Inc. Press Release, 1/9/07 (http://www.apple.com/pr/library/2007/01/09Apple-Reinvents-the-Phone-with-iPhone.html).

[36] Apple Inc. Press Release, 6/28/07 (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).

[37] Apple Inc. Press Release, 6/28/07 (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).

[38] Apple Inc. Press Release, 7/10/08 (http://www.apple.com/pr/library/2008/07/10iPhone-3G-on-Sale-Tomorrow.html).

[39] Apple Inc. Press Release, 6/8/09 (http://www.apple.com/pr/library/2009/06/08Apple-Announces-the-New-iPhone-3GS-The-Fastest-Most-Powerful-iPhone-Yet.html).

[40] Apple Inc. Press Release, 6/7/10 (http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html);   Apple Inc. Press Release, 2/2/11 http://www.apple.com/pr/library/2011/02/02iPhone-4-on-Verizon-Wireless-Available-for-Pre-Order-Tomorrow.html.

[41] Apple Inc. Press Release, 10/4/11 (http://www.apple.com/pr/library/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud.html); http://newsroom.sprint.com/article_display.cfm?article_id=2073.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

13

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

48.    By December 31, 2011, Apple had sold more than 183 million iPhone units worldwide, of which approximately 67 million units were sold in the United States.[42]

*iPad*

49.    On January 27, 2010, Apple introduced to the public the iPad and described it as "a revolutionary device for browsing the web, reading and sending email, enjoying photos, watching videos, listening to music, playing games, reading e-books and much more. iPad's responsive high-resolution Multi-Touch™ display lets users physically interact with applications and content. iPad is just 0.5 inches thick and weighs just 1.5 pounds— thinner and lighter than any laptop or netbook."[43]  Steve Jobs further described the iPad as "our most advanced technology in a magical and revolutionary device at an unbelievable price…iPad creates and defines an entirely new category of devices that will connect users with their apps and content in a much more intimate, intuitive and fun way than ever before."[44]

50.    The iPad launched on April 3, 2010 and, as summarized below, Apple has since released two updated models:

| Product | Release Date |
|---|---|
| iPad[45] | 4/3/10 |
| iPad 2[46] | 3/10/11 |
| iPad (3rd generation)[47] | 3/16/12 |

51.    Apple sold 3 million iPads in the first 80 days on the market[48] and by December 31, 2011 had sold 55 million iPads worldwide, of which approximately 24 million units were sold in the United States.[49]

---

[42] GAAP Line of Business Report, iPhone (APL794-F0000008237 to APL794-F0000008240); Apple Billings Report (US) - iPhone, Q3 FY07 through Q1 FY12 (APLNDC-Y0000051362).
[43] Apple Inc. Press Release, 1/27/10 (http://www.apple.com/pr/library/2010/01/27Apple-Launches-iPad.html).
[44] Apple Inc. Press Release, 1/27/10 (http://www.apple.com/pr/library/2010/01/27Apple-Launches-iPad.html).
[45] Apple Inc. Press Release, 3/5/10 (http://www.apple.com/pr/library/2010/03/05iPad-Available-in-US-on-April-3.html).
[46] Apple Inc. Press Release, 3/10/11 (http://www.apple.com/pr/library/2011/03/10iPad-2-Arrives-Tomorrow.html).
[47] Apple Inc. Press Release, 3/7/12 (http://www.apple.com/pr/library/2012/03/07Apple-Launches-New-iPad.html).
[48] Apple Inc. Press Release, 6/22/10 (http://www.apple.com/pr/library/2010/06/22Apple-Sells-Three-Million-iPads-in-80-Days.html).
[49] GAAP Line of Business Report, iPad (APL794-F0000008233 to APL794-F0000008236); Apple Billings Report (US) - iPod Touch and iPad, Q4 FY07 through Q1 FY12 (APLNDC-Y0000051605).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**K.   SAMSUNG**

52. As previously mentioned, throughout this report the three named defendants are collectively referred to as Samsung.  Samsung Electronics Co., Ltd. ("SEC") is "South Korea's largest company and one of Asia's largest electronics companies."[50] SEC "designs, manufactures and provides to the U.S. and world markets a wide range of products, including consumer electronics, computer components, and mobile and entertainment products."[51]  Samsung Electronics America, Inc. ("SEA") is a New York Corporation formed in 1978 and is a U.S. sales subsidiary of SEC.  SEA "offers a full range of award-winning consumer electronics and IT products including, but not limited to, televisions, Blu-ray disc players, digital cameras and camcorders, certain memory storage devices, portable audio devices, printers, and monitors."[52]  SEA distributes Samsung's tablet computer products.[53]  Samsung Telecommunications America, LLC ("STA") was formed in 1996, is an affiliate of SEA, and a U.S. sales subsidiary of SEC.  STA "researches, develops, markets, sells and offers for sale a variety of personal and business communications products throughout North America, including handheld wireless phones, wireless communications infrastructure systems, fiber optics and enterprise communication systems."[54]

53. I understand that the three named defendants all fall under the corporate parent known as the Samsung Group.  The Samsung Group is a family owned conglomerate, known as a chaebol in South Korea.[55]  The Samsung Group reported net sales of $220.1 billion in 2010.[56]  SEC reported revenues of $119.7 billion and $135.8 billion for the calendar years ended 2009 and 2010, respectively.[57]  SEA

---

[50] Samsung Entities' Answer, Affirmative Defenses, and Counterclaims to Apple Inc.'s Amended Complaint; and Demand for Jury Trial, 6/30/11, p. 2.
[51] Samsung Entities' Answer, Affirmative Defenses, and Counterclaims to Apple Inc.'s Amended Complaint; and Demand for Jury Trial, 6/30/11, p. 2.
[52] Samsung Entities' Answer, Affirmative Defenses, and Counterclaims to Apple Inc.'s Amended Complaint; and Demand for Jury Trial, 6/30/11, p. 2.
[53] Deposition of Brian Rosenberg, January 27, 2012, pp. 17-18.
[54] Samsung Entities' Answer, Affirmative Defenses, and Counterclaims to Apple Inc.'s Amended Complaint; and Demand for Jury Trial, 6/30/11, p. 2.
[55] Yahoo Finance, Samsung Group Company Profile (http://biz.yahoo.com/ic/41/41463.html).
[56] Samsung Profile 2011, p. 58.
[57] Samsung Electronics 2010 Annual Report, p. 32.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

54.     Samsung competes with Apple in both the smartphone and tablet markets.  The 32 Samsung products accused of infringing the Apple Intellectual Property In Suit are summarized on **Exhibit 10.**

## L.     INDUSTRY AND MARKET

55.     This lawsuit involves two specific wireless device categories that are referred to by Apple and Samsung as smartphones and tablets.[60] Smartphones and tablets each constitute a specific submarket within the broader wireless device industry. The U.S. Department of Justice defines the wireless device industry as follows. "Today's wireless device industry, which includes smartphones and tablets, relies on complex operating systems that allow seamless interaction with wireless communications technologies while providing audio, video and computer functionalities."[61] These categories include products that have completely reshaped the form and content of our daily communications and the way we create, store and distribute digital content.   One significant characteristic of the wireless device industry is the formation of a common ecosystem of products. Both categories are characterized by very high current growth in sales.

*Smartphones*

56.     I have reviewed and analyzed market share data from International Data Corporation ("IDC"), a "global provider of market intelligence, advisory services, and events for the information technology, telecommunications and consumer technology markets."[62]  IDC defines smartphones (also referred to by IDC as converged mobile devices) as a "subset of mobile phones" which "feature a high-level operating system that enables the device to run third-party applications in addition to voice telephony.

---

[58] Samsung Electronics America, Inc. Financial Statements, December 31, 2011 and 2010, p. 3 (SAMNDCA00322398-445 at SAMNDCA00322402); and Samsung Electronics America, Inc. Financial Statements, December 31, 2010, p. 3 (SAMNDCA00322239-83 at SAMNDCA00322243).

[59] Samsung Telecommunications America, L.L.C. Financial Statements, December 31, 2010 and 2009 and January 1, 2009, p. 5 (SAMNDCA00322209-38 at SAMNDCA00322214).

[60] "Smartphone Market Study US," January 2011, Apple Market Research & Analysis (APLNDC-Y0000028850 to APLNDC-Y0000028861 at APLNDC-Y0000028854); "Media tablet forecast comparison," January 2011, John Brown, Market research and analysis (APLNDC0001525699 to APLNDC0001525699 at APLNDC0001525710);  "STA Report to GS Choi," January 2011 (SAMNDCA00258612 to SAMNDCA00258673 at SAMNDCA00258673 at SAMNDCA00258648).

[61] The United States Department of Justice "Statement of the Department of Justice's Antitrust Division on Its Decision to Close Its Investigation of Google Inc.'s Acquisition of Motorola Mobility Holdings Inc. and the Acquisitions of Certain Patents by Apple In,. Microsoft Corp. and Research in Motion Ltd," dated 2/13/12.

[62] IDC's website: About IDC (http://www.idc.com/about/about.jsp?t=1317217596273, accessed 9/28/2011).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Examples of high-level operating systems include Android, BlackBerry, Linux, Mac OS X, Palm, Symbian, and Windows Mobile."[63]

57. In the Samsung Electronics 2010 Annual Report, the company stated, "By launching GALAXY S II, our flagship strategy smartphone, we will emphasize our category leadership and provide readily available lineup options for global customers."[64] As described in more detail below, Samsung has recently focused its efforts in this product category in recognition of the tremendous opportunities that exist in the developing smartphone market.

58. In 2007 Apple revolutionized the smartphone market with the introduction of the iPhone. An FBN Securities analyst stated, "With its 2007 launch of the iPhone, [Apple] obtained a first-mover advantage with 'game-changing' smartphones (app store, touchscreen, eventually 3G), and it has used this position along with continued innovations to further distance itself from the competition."[65]

59. Samsung has seen an increase in market share in the smartphone market since the second quarter of 2010 following the first sales of the Samsung Accused Products.  Multiple third party analysts specifically noted the design to which the Samsung products introduced in this period copied Apple's phones.[66]  Samsung's market share jumped from 5% in the second quarter of 2010 to 14% in the third quarter of 2010. This increase occurred after the release of the Galaxy S in the summer of 2010.[67] One analyst stated that in the worldwide mobile phone market, Samsung's "growth is coming entirely from smartphones with the Galaxy line (Samsung's Android OS phones) as the main driver."[68]

60. In the fourth quarter of 2011, IDC data showed the top market players in the U.S. smartphone market were Apple, Samsung, HTC, LG, Research In Motion, and Motorola.  Together these companies make up over 92% of the market (**Exhibits 11 and 11.1**). In the same period, Apple and Samsung were the top two participants having 45.3% and 19.2% market share respectively.

61. At the present time, competition for market share in the smartphone market is especially intense due to the current and projected growth of the market. As depicted in the **Exhibit 12 and 12.1**, the overall

[63] Hamblen, Matt. "Cell phone, smartphone -- what's the difference?" ComputerWorld, 3/14/09.
[64] Samsung Electronics 2010 Annual Report, p. 17.
[65] FBN Securities, Initiation of Coverage on Large-Cap IT Hardware Companies – APPL, IBM, DELL, and HPQ, 6/21/11, p. 3.
[66] Apple Inc. Amended Complaint dated June 16, 2011, Exhibits 32 to 35.
[67] http://www.cnet.com/8301-19736_1-20008968-251.html.
[68] Oppenheimer Equity Research, Mixed 2Q11 Wireless Checks, 6/7/11, p. 5.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   smartphone market in the United States is expanding rapidly. Based on IDC data, from 2004 to 2011

2   smartphones have gone from a 3% share of the mobile phone market to a 55.1% share with almost

3   105 million smartphones being sold in 2011 alone.  This growth has come at the expense of feature

4   phones, which lack sophisticated operating systems, and also occurred while the overall mobile

5   phone market has grown. In 2004 there were 143 million mobile phone devices in the U.S. market, a

6   number which grew to a high of approximately 190 million in 2011.  The substantial growth of the

7   smartphone market is projected to continue. IDC projects that smartphones will have an 83% share of

8   the U.S. mobile device market by 2015 with 154 million smartphone devices sold in the market.

9   Oppenheimer Equity Research projects that smartphones will have a similar market share of 82% in

10  North America in 2014.[69]  As a result, the period between 2010 and 2012 reflects a vitally important

11  period for Apple and Samsung.

12  62.   The first full year of Apple iPhone sales took place in 2008. As shown on **Exhibit 12.1,** from the end

13  of 2007 through 2011, approximately 44% of mobile phone users switched from feature phones to

14  smartphones.  Despite this dramatic shift in the marketplace, the mobile phone market remains in a

15  critical period of transition as manufacturers jockey for the sales of the 27% of mobile phone users

16  who are projected to switch to smartphones over the next few years.  Put another way, manufacturers

17  are pursuing the 135 million additional smartphones expected to be sold in the market between 2012

18  and 2015 as compared to a total existing smartphone market of 105 million units in 2011.[70]   Shifts in

19  market share during this period, when combined with the loyalty consumers show to Apple and its

20  operating system, will have outsized impacts on future dynamics in the market, making loss of

21  market share now very detrimental to a company's future success.

22  *Tablets*

23  63.   Apple revolutionized the tablet market in 2010 with the release of the original iPad. "The big story in

24  this year's ranking [the BrandZ Top 100 Most Valuable Global Brands survey] is the power of the

---

[69] Oppenheimer Equity Research Industry Update, "2Q11 Wireless and Tablet Snapshot", 8/2/11, pp. 15 and 17.
[70] See **Exhibit 12.1.** 135 million additional smartphones calculated by subtracting the 105 million total smartphone units for 2011 from each subsequent annual forecast for the market. The difference for each year for 2012 to 2015 sums to approximately 135 million units.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                    18

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   tablet."[71]  In May 2010, IDC defined tablets "as tablet form factor devices with 7-12in. color

2   displays. They are currently based on ARM processors and run lightweight operating systems such as

3   Apple's iPhone OS and Google's Android OS."[72]  This definition was further updated in December

4   2011 to "move LCD-based devices such as Barnes & Noble's Nook Color into the media tablet

5   category" from the e-reader category.  This change was implemented in the third quarter of 2011.[73]

6   Further, while the Barnes & Noble Nook Color and the Kindle Fire have changed the dynamics of the

7   market, these products by and large compete in a different segment of the tablet market than Samsung

8   and Apple.  Accordingly, I have removed their corresponding units from my analysis of IDC's media

9   tablet data.

10  64.  Since Apple's iPad's entrance it has been number one in tablet market share.  Beginning in the

11      second quarter of 2010, Apple had a commanding market share in the tablet market of 96.8% of a

12      market size of approximately 2.3 million units.  By the fourth quarter of 2011, the market had grown

13      substantially to approximately 8.4 million units, a 265% increase since the second quarter of 2010.

14      As new market participants entered the tablet market, Apple's market share according to IDC

15      dropped to 73.7% in the fourth quarter of 2011 as illustrated on **Exhibits 13 and 13.1**.  Meanwhile,

16      Samsung's market share dropped from a high of 11.6% in the fourth quarter of 2010 to a low of 2.0%

17      in the fourth quarter of 2011.

18  65.  The market participants within the wireless device industry have placed an emphasis in recent years

19      on establishing an ecosystem.  The development of an ecosystem has been described as signaling "the

20      general adoption of a trend pioneered by Apple and Blackberry-maker Research in Motion - the

21      packaging of hardware, software and, to a lesser extent, marketing."[74] A New York Times article

22      further described the ecosystem concept as follows, "Before the advent of coordinated systems,

23      executives at consumer technology companies babbled endlessly about connected homes and

24      convergence. They tried to make that happen, but no one had the pieces of hardware and content that

---

[71] Deposition of Michael Wagner, September 14, 2001, Exhibit 169, Lucas, Louise, and Jopson, Barney, "Global Brands: Big names fly high despite the gloom," Financial Times, 5/19/10 (WAGNER0000334 -WAGNER0000341).
[72] Business Wire, "IDC Forecasts 7.6 Million Media Tablets to be Shipped Worldwide in 2010," dated May 20, 2010.
[73] IDC - Press Release: Media Tablet Shipments Miss Third Quarter Targets, But New Entrants and Holiday Demand Will Spark Fourth Quarter Growth, According to IDC, 12/15/11 (http://www.idc.com/getdoc.jsp?containerId=prUS23228211).
[74] http://rttnews.com/Story.aspx?type=cs&Id=1714714&Category=ScienceTechnology&SimRec=1&Node=&pageNum=1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

would fit together seamlessly. The pioneer – and perhaps the inspiration – was Steven P. Jobs, the late Apple chief executive who made creating devices look easy with the iPad and iPhone. Dream them up, then make the software complement the hardware, outsource the production, sell at a premium and watch your company become the most valuable on earth."[75]

66.     Developing products that reinforce an entire ecosystem is not strictly an Apple phenomenon. Samsung agrees with the value of this strategic concept and has also copied this aspect of Apple's operation. A 2011 Samsung document stated "Capturing 1st time smartphone buyers is critical to success in the US market in the next few years."[76] Following Apple's lead Samsung lists three reasons why "building Eco-Systems Benefits Samsung."

- "Allows Samsung to set the agenda for market innovation against the competition."
- "Consumers identify widely deployed features as 'must have', not the other way around."
- "Defining an eco-system creates positive sales momentum in moving along the adoption curve."[77]

67.     Furthermore, Samsung's Don-Joo Lee agreed in his deposition that one of Samsung's strategies "is to win customers who will be loyal to Samsung and will not only buy a first product but will buy future Samsung products."[78]

68.     The wireless device industry is extremely competitive due in part to the relationship of each individual product sale to the larger ecosystem market share, the fact that the wireless device industry is currently experiencing explosive growth, and the acknowledged fact by both Apple and Samsung that consumers are more loyal to Apple once an initial Apple product is purchased.

69.     The degree of competition between Apple and Samsung is particularly acute due to Samsung's acknowledgment of Apple's competitive success and Samsung's consequential preoccupation with beating Apple. A Samsung designated representative testifying under oath stated "So the way I would characterize it – and I'm not sure it's depicted the same way here – is that once Apple gets someone

---

[75] The New York Times, "Erasing the Boundaries," by David Streitfeld, dated February 12, 2012 (http://www.nytimes.com/2012/02/13/technology/keeping-consumers-on-the-digital-plantation.html).
[76] SAMNDA00261215-291 at SAMNDA00261238.
[77] SAMNDCA00530591-672 at SAMNDCA00530609.
[78] Deposition of Don-Joo Lee, February 17, 2012, p. 69.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                    20

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    into the ecosystem, the bucket doesn't have any holes. They – they tend to keep them in the bucket.

2    With Samsung, the concern is there's a hole in the bucket, and so you add people in, but you're still

3    losing people out of the Samsung world."[79]

4  70.   Apple was indeed identified as a target of Samsung in a September 2008 Mercator Partners

5       presentation to Samsung entitled: "Support to STA's Counter-Apple Strategy." The presentation

6       identified one challenge as "Apple is a serious threat to Samsung's leadership in the U.S. The iPhone

7       by all accounts has been the most disruptive and successful new entrant in the history of the mobile

8       device market."[80]

9  71.   Accordingly, Apple and Samsung are directly and aggressively competing for the same sales of

10     smartphones and tablets. However, more significantly, Apple and Samsung are competing for sales of

11     as a means of securing consumer loyalty and the ongoing participation of these consumers in their

12     much larger ecosystem of products.  Further, given the number of consumers who are adopting

13     smartphones and abandoning feature phones, the present competition and platform loyalty means that

14     the results of competition in the next few years will have outsized impacts on the future marketplace.

15  72.   The Apple Intellectual Property In Suit is utilized in both smartphones and tablets. **Exhibit 4** sets

16     forth each accused Samsung product and the specific item of Apple Intellectual Property In Suit that

17     each accused product is accused of infringing, and, in the case of the Apple trade dress, each specific

18     item of Apple Intellectual Property In Suit that each accused product is accused of diluting. Apple's

19     trade dress and trademarks.

20  **M.**   **ASSUMPTIONS**

21  73.   Although I understand that Samsung disputes the validity of the Apple Intellectual Property In Suit

22     and infringement and dilution thereof, I have been asked to assume that each of the design and utility

23     patents as well as the trademarks and trade dress is enforceable and not invalid.

24  74.   There are 32 different Samsung products accused of violating one or more of Apple's 22 separate

25     claims as set forth in Apple's Amended Complaint.

26

---

[79] Deposition of Brian Rosenberg, January 27, 2012, pp. 101-102.
[80] Mercator Partners presentation, September 18, 2008, "Support to STA's Counter-Apple Strategy" (SAMNDCA10036081 to SAMNDCA10036204 at SAMNDCA10036087 and SAMNDCA10036095.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

75. I have been asked to assume that Samsung's Accused Products practice at least one asserted claim of each of the accused utility patents as provided on **Exhibit 5.**

76. I have also been asked to assume that Samsung's Accused Products embody the claim of each of the design patents as provided on **Exhibit 6.**

77. I have also been asked to assume that Samsung's Accused Products infringe and/or dilute at least one of the asserted Apple trade dresses as provided on **Exhibits 7 and 8.**

78. I similarly have been asked to assume that Samsung's Accused Products infringe at least one of the asserted Apple trademarks as provided on **Exhibits 8 and 9.**

**N.      SUMMARY OF CONCLUSIONS AND OPINIONS**

79. As discussed above, the Apple Intellectual Property In Suit consists of four separate categories of intellectual property (i.e., utility patents, design patents, trade dress, and trademarks) that each contain a number of individual items of intellectual property. Further, Apple has asserted twenty-two separate claims.[81] The legal remedies available to Apple as compensation for damages suffered as a consequence of Samsung's accused infringement of each item of Apple Intellectual Property In Suit and the separate claims varies depending on the specific category of intellectual property and the individual claims. **Exhibit 14** sets forth the type of remedy available under each category of intellectual property. **Exhibit 15** identifies the specific form of damage remedy calculated in this matter for each item of Apple Intellectual Property In Suit. **Exhibit 15** also makes a distinction between smartphones and tablets because not every individual item of Apple Intellectual Property In Suit covers both smartphones and tablets.

80. The guiding principle in the determination of damages resulting from patent infringement of a utility patent is that the amount of "damages [are] adequate to compensate for the assumed infringement."[82] A patent owner may seek monetary relief from infringement of a utility patent under two theories: lost profits and/or a reasonable royalty. I have considered both damage theories and concluded that damages adequate to compensate for the assumed infringement of Apple's utility patents in this matter should be based on both a reasonable royalty and a lost profits damage award. The specific

---

[81] Apple Inc. Amended Complaint dated June 16, 2011, p. 59.
[82] 35 U.S.C. § 284.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    application of one or both remedies to each utility patent as it relates to both smartphones and tablets

2    is identified on **Exhibit 15**.

3    81.    I have also considered both a lost profits and/or a reasonable royalty remedy for each design patent.

4    However, I have also considered a third remedy for the assumed infringement of Apple's design

5    patents under 35 U.S.C. §289. A damage amount based on an infringer's total profit is an acceptable

6    form of remedy for the infringement of a design patent. The specific application of each of the three

7    remedies to each design patent as it relates to both smartphones and tablets is identified on **Exhibit**

8    **15**.

9    82.    Infringer's profits and plaintiff's damages are both acceptable forms of remedies for the infringement

10    or dilution of a trade dress or trademark. Plaintiff's damages include the profits lost by the trade dress

11    holder due to infringement by the defendant and I calculate an amount reflecting that as a part of my

12    report.  Unlike 35 U.S.C. § 289, the infringer's profit remedy regarding trade dress and trademarks

13    involves an apportionment of the infringer's profit.  However, I understand that the defendant bears

14    the burden of that apportionment.  Accordingly, I have not apportioned infringer's profits but intend

15    to comment on and provide an opinion on any apportionment for which Samsung argues in its

16    opening report.  Finally, I understand that a reasonable royalty is an acceptable form of damages for

17    the infringement of design patents and is an acceptable form of damages for trade dress, and

18    trademarks in circumstances where no other form of damages is available.  Accordingly, I have

19    calculated a reasonable royalty amount for those accused products that infringe a design patent, and

20    those products which infringe or dilute a trade dress or trademark for which no other damage remedy

21    was available.  The specific application of each of the three remedies to each group of design patents,

22    trade dress, and trademarks as it relates to both smartphones and tablets is identified on **Exhibit 15**

23    83.    Each item of Apple Intellectual Property In Suit is entitled to only one damage remedy (i.e., either

24    lost profits, infringer's profits where appropriate or a reasonable royalty). Further, once lost profits or

25    infringer's profits have been awarded for the unit sale of an accused product, no further damages are

26    appropriate even though the same item may infringe multiple items of Apple Intellectual Property In

27    Suit. However, if no lost profits or infringer's profits is awarded for a unit sale of an accused product,

28    then that particular accused item may qualify for a reasonable royalty award based on each item of

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    Apple Intellectual Property In Suit that the particular accused product is accused of infringing.

2    84.    The aforementioned structural restrictions imposed by law on the calculation of damages involving

3    multiple categories of intellectual property results in the need to approach the calculation of damages

4    for each unit sold of the Samsung Accused Products in a sequential manner. Further, there is an

5    inherent hierarchy of damage remedies that I apply due to the variation in per unit damages

6    associated with each remedy. First, I consider whether an accused item qualifies for lost profits. If a

7    unit sale of an accused item qualifies for lost profits, no other form of damage remedy is awarded. If

8    a unit sale of an accused item does not qualify for lost profits, then my next consideration is whether

9    the accused item qualifies for damages under an infringer's profit calculation. Once again, if the unit

10   sale of an accused item qualifies for an infringer's profit, no other form of damage remedy is

11   possible. Finally, if neither a lost profit or an infringer's profit damage is assigned to a unit sale of an

12   accused unit, then the damage calculation would be based on a reasonable royalty for every item of

13   Apple Intellectual Property In Suit that the Samsung product is accused of infringing. **Exhibit 16** is a

14   simple hypothetical illustration of the aforementioned sequential approach to the calculation of

15   damages.

16   85.    Using this method, I have calculated the damages that can be reasonably calculated for Samsung's

17   sales of the individual units of various models identified as Samsung Accused Products in light of

18   each element of the Apple Intellectual Property In Suit and summarized the results on **Exhibits 17**

19   **and 17.1** and as further summarized in the table below. I have made the calculation on a product by

20   product basis because the limitation on damages is product specific. I determined the amount of

21   damage on each individual product that was subject to lost profits, infringer's profits and a reasonable

22   royalty because I wanted to make sure that I did not calculate more than the allowable damages on

23   any given product.

|  | Revenue Basis | Gross Profit Basis |
|---|---|---|
| Lost Profits | $583,191,122 | $583,191,122 |
| Infringer's Profits – Design Patents, Trade Dress & Trademarks | 5,510,092,347 | 2,008,994,149 |
| Reasonable Royalty | 0 | 0 |
| **Total Damages** | $6,093,283,469 | $2,592,185,271 |

Expert Report of Terry L. Musika, CPA
Case No. 11-cv-01846-LHK                                                24

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

86. In the alternative, I assumed that all Apple Intellectual Property In Suit was valid and infringed by all Samsung Accused Products. However, I removed any lost profits remedy from the damage calculation. The results of this calculation are summarized on **Exhibits 18 and 18.1** and in the table below**.**

|  | Revenue Basis | Gross Profit Basis |
|---|---|---|
| Infringer's Profits – Design Patents, Trade Dress & Trademarks | $6,424,701,038 | $2,337,518,680 |
| Reasonable Royalty | 0 | 0 |
| **Total Damages** | $6,424,701,038 | $2,337,518,680 |

87. As a second alternative, I have assumed that all Apple Intellectual Property In Suit was valid and infringed by all Samsung Accused Products. However, I removed infringer's profits from the damage calculation. The results of this calculation are displayed on **Exhibit 19** and summarized in the table below.

| Lost Profits | $583,191,122 |
|---|---|
| Reasonable Royalty | 511,999,442 |
| **Total Damages** | $1,095,190,564 |

88. I could calculate the damage amount based on other combinations of remedies, such as lost profits alone or reasonable royalty alone and as describe further below, I have prepared the damages model in such as way that it can accommodate changes in what products remain in the case or are infringed, what patents remain in the case and are infringed, when Samsung was aware that Apple was asserting claims against it and corresponding changes regarding when Samsung might begin an effort to redesign its products in light of the Apple Intellectual Property in Suit.

89. Although **Exhibits 17, 18, and 19** provide a separate analysis of the amount of damages that would result under the various forms of remedy available to Apple assuming all categories and items of Apple Intellectual Property In Suit are valid and violated, the results present a damage calculated for only some of the many possible outcomes that may result from a trial. Based on the fact there are

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

25

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  multiple logical and permissible categories of damages (e.g., as described above), 31 different

2  individual items of Apple intellectual property, 22 separate claims, 32 different accused products at

3  issue, a very large number of potential scenarios exist.  I also understand that Samsung contends that

4  they did not receive actual or constructive notice of some of the asserted patents until approximately

5  April of 2011. Although Apple disputes Samsung's claim, I am able to calculate the impact to

6  Apple's damages of changes to the date on which notice occurred and any resulting effort to design

7  around would begin.  Given these variables, there are more than tens of thousands of possible

8  outcomes.  It is not practical or even possible to submit a report reflecting the damage outcome

9  associated with every possible outcome.  However, the damage model used to calculate the damages

10  reported herein is capable of calculating a final damage amount based on different combinations of

11  these variables in connection with a Court decision or the evidence at trial. Therefore, I am prepared

12  to calculate and render an opinion on the amount of damages if less than the total number of Samsung

13  Accused Products  proceeds to trial, if less than all patents proceed to trial, if damages are limited to

14  any particular period for any of the Intellectual Property in Suit, or if Samsung was on notice of the

15  intellectual property and began an effort to design around the patents at a different date, if and when

16  requested to do so by counsel or the Court or based on the evidence presented at trial.  I am also

17  prepared to produce both the results of any calculation and the complete Access database model used

18  to perform my calculation if asked to do so.

19  90.  I have provided a description of my calculation of lost profits, infringer's profits and reasonable

20  royalty in a separate section for each form of remedy.  **Exhibit 20** is a summary of the organization

21  and calculation of each form of damage based on each item of Apple Intellectual Property In Suit.

22  91.  The foregoing calculations are necessarily limited by the information available to me at this time.

23  Two comments on this subject are noteworthy.  First, information on sales and financial performance

24  for both Apple and Samsung, as well as other relevant metrics discussed below are available only

25  through December 31, 2011.  Before trial, I would expect to receive some, if not all of the relevant

26  information through June 30, 2012 and would update accordingly.  Second, Samsung refused to

27  produce certain information relevant to my calculations in response to a Court order and other

28  discovery requests prior to the close of discovery.  Apple has sought such materials from the Court.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    If such materials become available, I would review and update my analysis accordingly.  My current

2    opinion therefore may change and my calculations will certainly rise as additional sales of Samsung

3    Accused Products occur.

4    92.   I am also prepared to calculate and render an opinion on the amount of pre-judgment interest

5    connected with the above damages if and when requested to do so by counsel or the Court.

6    **O.   IRREPARABLE HARM**

7    93.   As discussed above, I have been asked by counsel for Apple to determine the amount of damages, if

8    any, that would be adequate to compensate Apple as a result of the assumed infringement of Apple's

9    Intellectual Property In Suit. Although my opinions contained herein are consistent with this

10    objective and were developed to a reasonable degree of certainty, the damage amounts expressed

11    herein do not represent a complete measure of the total damages that Apple has and will continue to

12    experience due to Samsung's conduct. Further, absent permanent and immediate injunctive relief, the

13    ongoing damages that will be incurred by Apple in the future will cause Apple irreparable harm that

14    cannot be adequately compensated through the award of monetary damages.

15    94.   I previously issued a Reply Declaration of Terry L. Musika, CPA in Support of Apple's Motion for a

16    Preliminary Injunction dated October 13, 2011 ("Reply Declaration"). The opinions expressed in my

17    Reply Declaration were directed to Apple's Motion for a Preliminary Injunction which involved a

18    subset of the Apple Intellectual Property In Suit covered in this report. My opinions as expressed in

19    my Reply Declaration are unchanged.

20    95.   Apple has and will continue to suffer irreparable harm in spite of the damages quantified herein

21    because the monetary damages included herein and measured to a reasonable degree of certainty

22    represent only a portion of the total harm that Apple has suffered and will suffer as a consequence of

23    Samsung's acts absent a permanent injunction. The following factors reinforce Apple's ongoing

24    irreparable harm absent a permanent injunction.

25       •   Apple practices each of the items of Apple Intellectual Property In Suit as a means of

26          growing and protecting Apple's market share, reputation and goodwill.[83]

27    _____

[83] BusinessWire, "Apple Rises to the Top as Worldwide Smartphone Market Grows 65.4% in the Second Quarter of 2011, IDC Finds", 8/4/2011.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

- Samsung's conduct is injuring and diluting Apple's market share, reputation, and goodwill.

- Apple has been unwilling to license any of the individual items of Apple Intellectual Property In Suit and has used the Apple Intellectual Property In Suit as a means of creating and maintaining a unique market identity in the wireless device industry.[84]

- Apple and Samsung are direct competitors with respect to the Samsung Accused Products In Suit. Apple is not a non-practicing entity seeking only to extract a royalty from Samsung's commercial success.[85]

- Apple has previously sought a preliminary injunction in the U.S. and around the world.[86]

96.    Additional evidence of the ongoing irreparable harm incurred by Apple includes the following.

*Apple's Loss of Goodwill*

97.    The irreparable harm due to a loss of goodwill is illustrated in part in the portion of a company's value assigned to their intangible versus tangible assets. "In 2003, the market value (stock prices times number of shares outstanding) of U.S. publicly traded companies was five times larger than their balance sheet value, which reflects primarily the net worth of physical and financial (stocks, bonds) assets. Thus, about three-quarters of the value of public companies, as perceived by investors, reflects non-physical and nonfinancial assets. Much of this huge value constitutes intangible assets, which are absent from corporate balance sheets."[87] This fact is even more relevant today and is significantly illustrated in the value of Apple's balance sheet net worth versus Apple's current capitalized market value.[88]

98.    The prior facts demonstrate the equity market's recognition of the significance of intangible assets to the overall net worth of today's most innovative companies. Although goodwill is an intangible asset

---

[84] Deposition of Chip Lutton, Jr., July 26, 2011, p. 331.  ; Discussion with Boris Teksler.
[85] Deposition of Brian Rosenberg, January 27, 2012, pp. 72-73 & 77; Strategy Analytics, "Competitor Profile: Apple," July 20, 2011 (SAMNDCA00177805 of SAMNDCA00177800-07); Ipsos OTX MediaCT, "Are we going to take to the tablet?" March 2011 (SAMNDCA00237354 of SAMNDCA00237349-60).
[86] Apple Inc.'s Motion for a Preliminary Injunction, United States District Court Northern District of California San Jose Division, dated 7/1/2011; Reuters, "Samsung says alters tablet design to avoid German sales ban," 11/17/2011.
[87] Intangible Assets: Concepts and Measurements, Baruch Lev, New York University, New York, USA, *Encyclopedia of Social measurement*, Volume 2, 2005.
[88] As of 12/31/11, Apple Inc. had a net worth of $90.05 billion versus a market cap of $377.5 billion (http://www.wolframalpha.com/input/?i=appl+market+cap+as+of+12%2F31%2F11).  Net worth as of 12/31/11 equals total assets of $138.7 billion less total liabilities of $48.6 billion (Apple Inc. Form 10-Q, for the quarter ended 12/31/11, p. 3).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

within generally accepted accounting principles, it is only recognized and recorded when acquired through an acquisition. Accordingly, unless goodwill is acquired as a component of an acquisition, this asset is not reported even though the equity market identifies goodwill as one of the most valuable assets within the company. The equity market assigns a real economic value to goodwill and other intangible assets that is based on the market's expectation of future earnings.[89] Therefore, any diminution in the expected future earnings of Apple as a consequence of actual or the perceived infringement by Samsung of any of the Apple Intellectual Property In Suit reduces Apple's goodwill and overall market value. As discussed below, I have calculated a portion of the lost earnings that Apple has suffered as a consequence of Samsung's accused acts. Further, I emphasize that the lost profits calculations represents only a small portion of the lost earnings that Apple has suffered. Apple's historical and prospective lost profits therefore have a significant and identifiable negative impact on Apple's goodwill.

*Erosion and Dilution of Apple's Brand*

99.   Another measureable portion of the intangible value included in Apple's capitalized market value is the value of Apple's brand.[90] There are numerous facts in evidence that illustrate the irreparable harm to Apple's brand that has and will continue to occur absent injunctive relief. In 2011, the Apple brand was identified as the most valuable brand in the world.[91] Samsung's own damage expert stated in his declaration that "It's no secret that Apple's extensive marketing efforts have created one of the most valuable brands worldwide."[92]

100.   Apple's exponential growth in brand value comes in part from the strategic interrelationship of all Apple products. As discussed above, this is the result of Apple's focus on the Apple ecosystem and not simply Apple individual products. Therefore, winning the competition for undecided consumers is made even more important by the subsequent effects upon consumers' future purchasing decisions. A study done by a third party at Apple's request found that only 10% of iPad buyers in the U.S. did

---

[89] SFAS 142, paragraphs 21 to 23.
[90] Interbrand ranked Apple's brand as number 8 on its "2011 Ranking of Top 100 Brands." (http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx).
[91] Business News Express Business News Daily, "Apple Knocks off Google as Number One Brand," by Steve Petrovich, dated 5/10/11 (http://businessnewsexpress.com/apple-knocks-off-google-as-number-one-brand/8778546/).
[92] Declaration of Michael J. Wagner In Support of Samsung's Opposition to Apple's Motion For a Preliminary Injunction, dated 8/21/11, p. 5.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    not purchase any accessories for their iPad. The accessories purchased include smart cover, case,

2    screen protector, camera connection kit, digital AV adapter, stylus, power adapter, wireless keyboard,

3    etc.[93] Purchasers also buy various content, apps, and other services from Apple through its iTunes

4    store, App store, retail store, on-line store, and services such as iCloud.  Apple also loses sales on

5    advertising and other elements of its business.  Due to the complexity of the calculation and

6    uncertainty regarding the specific amounts tied to new purchases of Apple's products, almost none of

7    the Apple ecosystem sales are captured in the damage calculation.

8    101.  Another effect of the purchasing decision is customer loyalty, which is particularly important to

9    Apple's brand value and expected future sales. Surveys confirm Apple customers' loyalty. A study by

10   Strategy Analytics found that "Apple iPhone owners are not only most satisfied with their phones,

11   they are most likely to buy their next phone from Apple…as well."[94] These repeat purchases are not

12   limited to smartphones, but also apply across iPads, Macs, and other Apple products.[95] In addition to

13   the effects on downstream accessory purchases or additional Apple products, winning over undecided

14   consumers is important for generating interest and economic power with third parties, such as third-

15   party developers and carriers. Similarly, Apple's market share lead and reputation for innovation and

16   design provide Apple with economic power in its negotiations with wireless carriers, who want to be

17   in a position to offer one of Apple's products on their network and expand their subscriber network.

18   There is no adequate amount in monetary damages I have calculated that compensates Apple for the

19   diminution of Apple's reputation as a leading innovator and the consequential loss of brand value.

20   *Apple's Loss of Market Share*

21   102.  **Exhibits 11 and 11.1** demonstrate that since entering the smartphone market, Apple has climbed to

22   number one in market share with 45.3 percent of the market as of the fourth quarter of 2011 but has

23   been in a continuing battle with Samsung for market share. "With its 2007 launch of the iPhone,

---

[93] Apple Market Research & Analysis "iPad Tracking Study: FY11-Q3 Report," August 2011, (APLNDC-Y0000024130-333 at APLNDC-Y0000024143).
[94] Strategy Analytics, "Apple iPhone Owners Most Likely to Repeat Purchase," by Paul Brown, dated 03/09/10 (http://www.strategyanalytics.com/default.aspx?mod=pressreleaseviewer&a0=4870).
[95] CNN Money, "Piper Jaffray survey of iPad buyers: 74% owned Macs; 66% had iPhones," by Philip Elmer-DeWitt, dated 04/05/10 (http://tech.fortune.cnn.com/2010/04/05/piper-jaffray-survey-of-ipad-buyers-74-owned-macs-66-had-iphones/); "Apple iPad 2 sales: New customers buying; Analysts see big launch," by Larry Dignan, dated 03/13/11 (http://www.zdnet.com/blog/btl/apple-ipad-2-sales-new-customers-buying-analysts-see-big-launch/46030).

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                    30

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    [Apple] obtained a first-mover advantage with 'game-changing' smartphones (app store, touchscreen,

2    eventually 3G), and it has used this position along with continued innovations to further distance

3    itself from the competition."[96] In the fourth quarter of 2011, IDC data showed the top market players

4    in the smartphone market were Apple, Samsung, HTC, LG, Research In Motion, and Motorola

5    (**Exhibit 11.1**).

6    103.  Samsung saw a sudden increase in market share since the second quarter of 2010 following the first

7    sales of the Samsung Accused Products, including the Galaxy S which Apple has alleged copied

8    Apple's design's and Intellectual Property In Suit. One analyst stated that in the worldwide mobile

9    phone market, Samsung's "growth is coming entirely from smartphones with the Galaxy line

10   (Samsung's Android OS phones) as the main driver."[97]    The evidence as a whole, including matters

11   discussed later in my report, points to Samsung taking market share from Apple.

12   104.  At the present time, the competition for market share in the smartphone market is especially intense

13   due to the current and projected growth. It is a unique moment in this market that will not be

14   repeated.  As depicted on **Exhibits 12 and 12.1,** the overall smartphone market in the United States is

15   expanding rapidly. Based on IDC data, from 2004 to 2011 smartphones have gone from a 3% share

16   of the mobile phone market to a 55.1% share with approximately 105 million smartphones. This

17   growth has come at the expense of feature phones, which lack sophisticated operating systems, and

18   also occurred while the overall mobile phone market has grown. In 2004 there were 143 million

19   mobile phone devices, and that number grew to a high of nearly 191 million in 2011.  The substantial

20   growth of the smartphone market is projected to continue. IDC projects that smartphones will have an

21   83% share of the U.S. mobile device market by 2015 with 154 million smartphone devices sold in the

22   market.  In comparison Oppenheimer Equity Research projects that smartphones will have a similar

23   market share of 82% in North America in 2014.[98]

24   105.  The first full year of Apple iPhone sales took place in 2008. As shown on **Exhibit 12.1,** from the end

25   of 2007 through 2011, approximately 44% of mobile phone users switched from feature phones to

26

27   [96] FBN Securities, Initiation of Coverage on Large-Cap IT Hardware Companies – APPL, IBM, DELL, and HPQ, 6/21/11, p. 3.
     [97] Oppenheimer Equity Research, Mixed 2Q11 Wireless Checks, 6/7/11, p. 5.
28   [98] Oppenheimer Equity Research Industry Update, "2Q11 Wireless and Tablet Snapshot," 8/2/11, pp. 15 and 17.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   smartphones.  Despite this dramatic shift in the marketplace, the mobile phone market remains in a

2   critical period of transition as manufacturers jockey for the sales of the 27% of mobile phone users

3   who are projected to switch to smartphones over the next few years.  Put another way, manufacturers

4   are pursuing the 135 million additional smartphones expected to be sold in the market between 2012

5   and 2015 as compared to a total smartphone market of 105 million units in 2011.[99]  These shifts will

6   be amplified by consumer loyalty and the resulting likelihood of purchasers to stay with Apple (or the

7   Android platform) with respect to their next purchase of a smartphone or tablet.  Shifts in market

8   share during this period will have outsized impacts on future dynamics in the market, making loss of

9   market share now very detrimental to a company's future success.  These impacts are very difficult to

10  calculate and impose an irreparable harm for Apple.

11  106.  The tablet market was revolutionized by Apple. "The big story in this year's ranking (the BrandZ Top

12  100 Most Valuable Global Brands survey) is the power of the tablet."[100] IDC defines tablets "as tablet

13  form factor devices with 7-12in. color displays. They are currently based on ARM processors and run

14  lightweight operating systems such as Apple's iPhone OS and Google's Android OS." [101]

15  107.  Since Apple's iPad's entrance it has been number one in tablet market share.  Beginning in the

16  second quarter of 2010, Apple had a commanding market share in the tablet market of 96.8% of a

17  market size of approximately 2.3 million units.  By the fourth quarter of 2011, the market had grown

18  substantially to approximately 8.4 million units, a 265% increase since the second quarter of 2010.

19  As new market participants entered the tablet market, Apple's market share according to IDC

20  dropped to 73.7% in the fourth quarter of 2011 as illustrated on **Exhibits 13 and 13.1**.  Meanwhile,

21  Samsung's market share dropped from a high of 11.6% in the fourth quarter of 2010 to a low of 2.0%

22  in the fourth quarter of 2011. **Exhibit 21** is a Global Tablet OS Market Share chart referred to by

23  Samsung's damage expert that clearly shows that the share of tablets using Apple's iOS (only the

24  iPad line of products) has fallen while the share of those using Android has risen.

---

[99] See **Exhibit 12.1**.135 million additional smartphones calculated by subtracting the 105 million total smartphone units for 2011 from each subsequent annual forecast for the market. The difference for each year for 2012 to 2015 sums to approximately 135 million units.

[100] Deposition of Michael Wagner, September 14, 2011, Exhibit 169, "Global Brands: Big names fly high despite the gloom," Financial Times, 5/19/11 (WAGNER0000334 -WAGNER0000341).

[101] Business Wire, "IDC Forecasts 7.6 Million Media Tablets to be Shipped Worldwide in 2010," dated May 20, 2010.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                          32

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

108. Apple's loss of market share is not confined to its market share in the respective smartphone and tablet product markets. As discussed above, Apple and Samsung's strategy is to develop a loyal customer following that supports each company's entire ecosystem of products. The loss of a single smartphone or tablet sale has an exponential impact on Apple's overall market share in the wireless device industry. Apple Senior Director and former Chief Patent Counsel testified, "Secondly, there's another form of harm, which is harm to the iOS ecosystem generally, that the eco--- the health of the ecosystem depends on market share, maybe growing market share; and if Apple is losing market share of momentum or market share generally to Samsung, then it's losing not just the incremental sales and the revenue associated with them, but also the impact on the ecosystem generally, which could be application developer mind share and attention. It could be other forms of services that are provided into the ecosystem, either by Apple or by third parties, and those could have impacts not only on the vitality of Apple's iOS platform, but also even on revenue that Apple makes in areas like iTunes and the App store."[102]

*Difficulty in Calculating Damages*

109. As discussed elsewhere, I have concluded that the full amount of harm caused by Samsung's products cannot be adequately measured or compensated through monetary damages. One of the reasons that the full measure of economic loss cannot be fully calculated is due to the fact that the scope and nature of the economic loss incurred by Apple is more extensive than what may be reasonably calculated and awarded as a damage award.

110. The irreparable harm claimed by Apple due to Samsung's alleged infringement involves the potential loss of present sales and market share, loss of future sales and market share, present or future price erosion, increased Apple costs, and the impairment of Apple's goodwill and brand. The economic remedies associated with the recovery of damages caused by Samsung's accused sales are limited to one or more of the four damage remedies identified earlier and the need for a reasonable basis on which to quantify those amounts.

111. The damage remedies discussed below are intended to ensure that the injured party is "made whole

---

[102] Deposition of Chip J. Lutton, Jr., July 26, 2011, pp. 328-329.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

33

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

through quantifiable means." However, as illustrated on **Exhibit 14**, not all forms of damage recovery are available for patent infringement. Additionally, the various forms of damage recovery listed do not directly consider nor adequately account for the critical point of transition that both the smartphone and tablet markets are experiencing. As discussed above, both product markets are poised for explosive growth now that Apple's innovative products have gained phenomenal market acceptance to the point where they have redefined the mobile phone market and revolutionized the tablet market. A loss of market share by Apple at this critical time in the market's development rewards the market followers and denies Apple, the complete and appropriate measure of damages for their creative and intellectual property contribution.

112. As noted in **Exhibit 14**, one aspect of damages for which the patent laws offer no remedy is the decrease in the value of Apple's intangible assets.[103] Injury to intangible assets, in particular brand value and goodwill, is not fully captured in a lost profits calculation. The issue of brand value or loss of brand value is no more important for any company than Apple as the owner of the most valuable brand in the world. In spite of their recognized value, intangible assets are difficult to measure. "For many accountants, the absence of markets disqualifies intangibles from being considered as assets in corporate balance sheets. Intangibles thus differ inherently from physical and financial assets, and the management, valuation and financial reporting of intangible assets are challenging." [104] The difficulties inherent in measuring both the value and the change in value in such assets makes it very difficult to quantify and obtain as monetary damages an award that reflects the full value of the losses that Apple will experience from unfair copying due to the alleged infringement by Samsung of Apple's Intellectual Property In Suit.

113. Further, as discussed above, a lost profits calculation herein does not fully compensate Apple for the full scope of its lost sales. Based on my experience in calculating patent damages in over 100 patent cases, I understand the calculation of patent damages need not be calculated to absolute precision but should be calculated to a reasonable degree of certainty. Additionally, patent damages cannot be

---

[103] General intangible assets are comprised of numerous identifiable intangible assets such as a patent, trademark and trade secret and unidentifiable intangible assets that are generally categorized as goodwill.

[104] Intangible Assets: Concepts and Measurements, Baruch Lev, New York University, New York, USA, *Encyclopedia of Social measurement*, Volume 2, 2005.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  speculative. Accordingly, I have based my calculation of lost profits on a conservative model that

2  ensures compliance with the reasonable certainty standard, but this means Apple will not receive

3  money sufficient to compensate for the full measure of the damages and harm it is incurring.

4  114.  For example, I have divided my lost profits calculation into two initial groups of lost sales, accused

5  sales made to carriers that did not offer an Apple product and carriers that did offer an Apple product.

6  I first limit the accused sales made through carriers that did not offer an Apple product to 26% of the

7  sales based on the percent of purchasers who would switch carriers. The support for this conservative

8  deduction is discussed in the lost profits section of this report. I further reduce both accused sales

9  bases to Apple's market share percent within the carriers that offer an Apple product. Additionally,

10  my lost profits calculation does not include the numerous ecosystem products that both Samsung and

11  Apple indicate would have been sold in the past and would be sold in the future. My lost profits

12  calculation also assumes that Samsung will return to the market with an acceptable non-infringing

13  substitute at a level of sales equal to its actual sales of accused products. All of these assumptions

14  favor Samsung but were made to ensure that the damages herein are calculated conservatively and to

15  a reasonable degree of certainty. However, it also means Apple's monetary recovery of damages has

16  been materially reduced and Apple is being irreparably harmed.

17  115.  Even if the full measure lost profits for sales of iPhones, iPads, and immediate convoyed sales, as

18  described above could be measured, the full extent of Apple's harm is not limited to these lost profits.

19  Apple's lost market share would include lost sales relating to other Apple products that do not qualify

20  as convoyed sales but nevertheless are part of the established product relationship that Apple enjoys

21  based on Apple's customer loyalty and Apple's customers desire to maintain a standardized product

22  experience. These are derivative lost sales within the broader Apple ecosystem. Even Samsung's own

23  damage expert demonstrated the strength of the pull-through sales element during his deposition. Mr.

24  Wagner indicated that when he purchased his iPhone he did not buy just one – he purchased six

25  iPhones because he wanted his entire family to be able to communicate more easily.[105] Further, Apple

26  iPhone users will be more likely to purchase other Apple products such as desktops, laptops, and

27

28  [105] Deposition of Michael J. Wagner, September 14, 2011, pp. 61-62.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

iPods after the initial purchase of an iPad and iPhone. My lost profit calculation does not compensate Apple for this significant element of lost market share and future sales of related products.

116. Finally, as part of Apple's ecosystem, the Accused Products are causing losses for Apple related to the loss of sales of accessories, music and videos, mobile advertising, and revenue from search engine royalties. iTunes, iAdd, and the App store are examples of these losses.[106] For each Apple product that is not sold, Apple has lost the opportunity to sell both Apple branded and third party accessories such as cases, screen protectors, headphones and car chargers.  These items are discussed in more detail in the Lost Profits section of my report.  Next, Apple has lost sales of applications and media (e.g. music, video and Apps) sold through iTunes to iPhone and iPad users. **Exhibit 22** shows that Apple has reported iTunes revenue of $11 billion from fiscal year 2010 through first quarter 2012 ██████████████████████████████. Another source of revenue directly related to the iPhone and iPad is mobile advertising. Mobile advertising is displayed to iOS users through Apps.[107]  From fiscal year 2010 through first quarter 2012, Apple has earned $161 million in revenue and ███████ ████████████████████████████████, see **Exhibit 22**. Another category of additional revenue generated by Apple through iPhone and iPad usage is search engine royalties. When an iPad or iPhone user conducts a search on Google, Microsoft Bing, or Yahoo, Apple receives revenue for each of those searches.[108] **Exhibit 23** shows that revenue related to search engine royalties for all iOS devices has grown to over $75 million quarterly in the third and fourth quarter of 2011 and saw a dramatic increase since the second quarter of 2010, the same quarter the iPad was released. All of these forms of revenue are extremely difficult to tie to a specific iPhone or iPad sale and therefore they are not included in my calculation of monetary damages.

**P.   MONETARY DAMAGE ANALYSIS**

117. The economic remedies associated with the recovery of damages caused by Samsung's sales accused of violating one or more forms of Apple's Intellectual Property In Suit falls within one or more of the following four damage remedies identified by the American Institute of Certified Public Accountants.

---

[106] Deposition of Chip J. Lutton, Jr.,July 26, 2011, pp. 328 – 329.
[107] Deposition of Mark Buckley, February 23, 2012, pp. 153 – 156.
[108] Deposition of Mark Buckley, February 23, 2012, pp. 146 – 152.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

- Compensatory Damage Recovery – "Compensatory actual damages for intellectual property infringement or misappropriation, accordingly, are intended to compensate the plaintiff for economic loss caused by the infringement. Examples of compensatory damages include lost profits (i.e., profits lost on sales that would have been made 'but for' the infringement [or due to trade dress dilution]) and reasonable royalty (i.e., royalty income that the plaintiff would have earned had it entered into an agreement to license the intellectual property in suit to defendant), among other measures."[109]

- General Damage Recovery (Market Value Measure) – "The market value measure is what courts most often refer to when they use the term *general damages*. The market value measure determines the market value of the intellectual property 'as is' and the market value 'as if it were not injured.' The difference between these two values is the damage that the defendant's wrongful act inflicted on the owner of the intellectual property."[110]

- Special or Consequential Damages (Lost Opportunity Measure) – "The lost opportunity measure quantifies the decrease in market value or the impact on market value that the intellectual property owner is deprived of by reason of the infringement. This lost opportunity measure is often referred to by the courts as *special* or *consequential damages*."[111]

- Unjust Enrichment and Prejudgment Interest – "Unjust enrichment is an alternative damage measure to compensatory damages."[112] An "unjust enrichment award seeks to deprive the defendant of whatever gain or benefit was obtained from the wrongful act."[113]

118. The aforementioned damage remedies are intended to ensure that the injured party is "made whole through quantifiable means." The damages available under each of these remedies can be measured by one or more methods of calculating damages. However, as illustrated on **Exhibit 14**, the methods of damages available under each of the various forms of Apple intellectual property vary.

119. **Exhibit 20** provides a description of the methods of damages asserted for each item of intellectual

---

[109] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, p. 20.
[110] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, pp. 20-21.
[111] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, p. 21.
[112] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, p. 21.
[113] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, p. 21.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    property and the key variables of each method.  I have provided below a description of my approach

2    to the calculation of damages for each of the damage methods.

3    *Lost Profits*

4    120. To prove entitlement to lost profits, Apple must demonstrate that the Samsung infringement was a

5    "but-for" cause of Apple's losses. To prove causation, Apple must demonstrate to a reasonable

6    probability that, "but-for" Samsung's conduct, it would have made the sales that were originally made

7    by Samsung. **Exhibit 15** identifies each item of Apple Intellectual Property In Suit for which a lost

8    profits damage amount is claimed. As illustrated on **Exhibit 15**, lost profits is claimed for only certain

9    items. The *Panduit* test is a non-inclusive but frequently used guideline to evaluate the amount and

10   nature of sales that the patentee would have replaced the infringer's sales absent infringement.[114] I

11   have used it to help guide my evaluation.  The *Panduit* test evaluates the following four economic

12   conditions.

13   121. The first condition is whether demand existed for the patented product during the period of

14   infringement. It is fair to say that the demand for both Apple and Samsung's smartphones and tablets

15   is driven by a combination of factors and not just the benefits associated with the individual items of

16   Apple's Intellectual Property In Suit for which Apple is claiming a lost profit. However, the evidence

17   collected and the material that shows Apple and Samsung's commercial success reflects a

18   demonstrated demand for benefits associated with the Apple Intellectual Property In Suit for which

19   Apple is seeking a lost profit damage. I have identified and documented numerous examples of

20   demand for each item of Apple Intellectual Property In Suit for which Apple is seeking a lost profit on

21   **Exhibits 24 and 25**. The numerous examples of evidence involving demand include Samsung strategy

22   and product planning documents prepared in the ordinary course, survey data, third party market and

23   consumer analysis, Samsung and Apple advertising materials and other evidence that relate to the

24   claimed technology.

25   122. In addition, I have received the results of two consumer surveys prepared by Dr. John Hauser, a

26   professor at Massachusetts Institute of Technology.  His surveys are based on conjoint analysis, a

27

28   _____

[114] Panduit Corp. v Stahlin Bros. Fibre Works, 575 F.2nd 1152 (6th Cir. 1978).

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                    38

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    widely studied and applied form of quantitative consumer preference measurement.  Professor Hauser

2    used conjoint analysis to determine the price premium, if any, that Samsung consumers are willing to

3    pay for the features associated with the patents at issue.  His work demonstrates that respondents are

4    willing to pay a high price premium for the patented features covered by the utility patents that were

5    tested, the '607, the '915, the '381 and the '163 Patents.  This evidence strongly supports a conclusion

6    that there is demand for the specific patented features in suit and that their presence (or absence) will

7    affect consumer decision making.  It is therefore additional support of this element of a lost profits

8    calculation.

9   123. A second condition is what acceptable non-infringing substitutes exist in what periods. I concluded

10    that non-infringing substitutes did exist in some periods.  Further, I have conservatively prepared my

11    damage calculation as if other non-accused smartphones in the market generally represented an

12    acceptable non-infringing substitute for some consumers. I have done this even though Apple has sued

13    many of the other smartphone makers for violation of patents and has in some circumstances already

14    won with respect to certain smartphones and certain intellectual property.[115] I have made these

15    assumptions even though the conjoint analysis by Dr. Hauser shows that many of the noninfringing

16    substitutes would be valued significantly less by surveyed respondents.  It is significant to note that the

17    *Panduit* test is not a required test and merely represents one way in which to evaluate whether the

18    patentee would have made the infringing sales absent infringement. Therefore, proof that one or more

19    non-infringing substitutes might exist and might be acceptable to some degree to consumers does not

20    resolve whether Apple has lost sales as a result of Samsung's accused infringement. The actual issue is

21    whether there were sales that Apple would have made assuming no infringement accounting for any

22    non-infringing substitutes. To be conservative in my assessment, I have significantly reduced the

23    number of accused units that would have been sold by Apple based on an assumption that Samsung

24    could have returned to the market after removing and/or replacing the accused technology and that the

25    products that use the alternative form of technology would be desirable to consumers.

26

---

[115] U.S. International Trade Commission Investigation No. 337-TA-710:  Notice of the Commission's Final Determination
Finding a Violation of Section 337; Issuance of a Limited Exclusion Order; Termination of the Investigation, December 19, 2011,
pp.2-3.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                              39

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

124. This decision reflects a matter of judgment that substantially misses a significant portion of the harm that Apple is experiencing.  There is ample evidence that Samsung copied Apple's designs and its patented technology.  It is also apparent that they did so based on a belief that such actions made the resulting products significantly more desirable to consumers.  Empirically, Samsung did not begin to succeed in the smartphone marketplace until products that used Apple's Intellectual Property In Suit entered the market in 2010.  There is no support that any alternative design would be commercially acceptable.  Nonetheless, it is difficult to obtain a precise measure of that change.  My analysis can however, measure the impact that changes in the level of acceptance would have on Apple's damages.  My analysis can estimate the amount of lost profits that was available but not claimed as a damage assuming Samsung's design around model was not commercially acceptable.  There are 18,230,472 accused units.  I calculated lost profits on only 2,197,534 of the total (approximately 12%).  Assuming an infringer's profit was awarded on every accused unit in which a lost profit damage was not claimed,

125. My model is similarly conservative in that it assumes that Samsung returns to the market and can achieve similar sales immediately upon its return.  Again, this is unlikely in practice and this assumption significantly reduces the amount of lost profits that I calculate on Apple's behalf.

126. The third condition is whether Apple had the demonstrated operational capacity to replace Samsung's accused sales. To evaluate Apple's ability to handle the excess demand created by the need to supply iPhones and iPads in the "but-for" market, I have (1) evaluated a capacity analysis performed by Apple and set forth in two reports that were discussed at the deposition of Mark Buckley, and (2) had discussions with Mr. Buckley and Rory Sexton, Apple's VP of Supply and Demand Management.[116] This analysis represents Apple's actual quarterly manufacturing and sales results as well as Apple's capacity to produce units above what was actually manufactured, referred to by Apple as "Installed Capacity." To calculate the installed capacity, Apple determined the number of manufacturing lines

---

[116] APLNDC-Y0000055416 and APLNDC-Y0000055417; Deposition of Mark Buckley, February 23, 2012, Exhibits 15 and 16; Discussion with Rory Sexton and Mark Buckley.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

40

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    which were in place during the 2010 – 2011 period.  Next, by applying the maximum manufacturing

2    rates and the number of days and hours in service, the maximum number of units available was

3    calculated.  Last, Apple made adjustments to decrease that maximum to accommodate for periods

4    where there were known shortages in parts and materials, product allocated to a particular location,

5    time needed for maintenance, holidays, and other periods in which manufacturing stops, and other

6    factors that affect capacity as well as to adjust for returns, and manufacturing defects.[117]

7    127. As shown on **Exhibits 26 & 27**, I have used Apple's analysis to calculate the quarterly excess unused

8    capacity for both the iPhone and the iPad. ████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████. This

11   created a conservative estimate of Apple's excess capacity available for the sales of units in the "but-

12   for" scenario. Additionally, I made the excess capacity created during a quarter to be available at the

13   start of the following quarter because I did not have timing ████████████████████████

14   ████████████████████████████████████████████████████████████████████████

15   ████████████████████████████████. As shown on **Exhibit 17.2**, Apple demonstrated its

16   ability to have capacity to accommodate additional units as calculated in this report.

17   128. The fourth and final factor requires that the calculation be completed to a reasonable degree of

18   certainty. As described in detail below, I have completed a detailed analysis of Apple's sales "but-for"

19   Samsung's alleged infringement.  This calculation relies on the parties' document production, sworn

20   testimony and industry analysts who are relied upon by both Apple and Samsung. Additionally, this

21   model is constructed using a series of conservative approaches which are described in detail in this

22   report.

23   129. The above analysis is intended to provide evidentiary support for the position that Apple would have

24   made Samsung's sales "but-for" Samsung's improper use and reliance on one or more identified items

25   of Apple Intellectual Property In Suit. However, as indicated my methodology adopts an even more

26   conservative premise in that it assumes that Samsung would have developed some conceptual design

27

28   _____
     [117] Discussion with Rory Sexton and Mark Buckley.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                          41

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

alternative to the asserted intellectual property, returned to the market once such conceptual alternative was designed, tested, manufactured and distributed to sell an equivalent number of units with the redesigned product. All these assumptions are conservative.  Accordingly, Apple's lost sales are based on the amount of lost sales only during the number of months Samsung is removed from the market. **Exhibit 20** identifies the number of months to design, test, manufacture and distribute an alternative smartphone and tablet that does not embody the accused element of each item of Apple Intellectual Property In Suit. This period begins at the later of the issuance of the item of Apple Intellectual Property In Suit or the date in which Samsung first sold the product embodying the Apple Intellectual Property In Suit and assumes that Samsung had notice of the patents on that date.  I understand that Samsung contends that it lacked actual or constructive notice of its infringement for at least some of the patents until suit was filed.  To the extent that Samsung succeeds with respect to this claim, the calculations done to determine the amount of time that Samsung would be unable to sell products should begin at the date in which notice is proven.  As noted above, the model can be adjusted to provide the Court, counsel or the jury an alternative calculation reflecting this change.

130. I then reduced the number of remaining Samsung accused smartphone units that would have been sold by Apple "but-for" Samsung's reliance on Apple's intellectual property by removing all but 26% of the remaining accused smartphones that were sold to carriers that did not, at the time of the accused sale by Samsung, include a replacement Apple product. I include 26% of the sales made by carriers that did not include an Apple product at this stage of my lost profits calculation based on a Google survey that is displayed on **Exhibit 28.** The Google survey found that 26% of 2,961 respondents questioned in 2010 that recently purchased a cell phone indicated that they had chosen a new carrier for their purchase. The basis of this conservative reduction in removing 74% of the sales made to carriers that did not carry an Apple product is also reflected on **Exhibit 20**.

131. I next reduced the number of remaining Samsung accused units that would have been sold by Apple "but-for" Samsung's reliance on Apple's intellectual property by removing all remaining accused items that would have been sold by other Original Equipment Manufacturers ("OEMs") that offered non-accused smartphones or tablets at the time of the accused sale. The basis of the sales that would have been made by other OEMs that offered non-accused smartphones or tablets at the time of the

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   accused sales is the adjusted market share of each OEM. The adjusted market share of each OEM is

2   different for the 26% of accused sales that were made to carriers that did not offer an Apple

3   smartphone versus the accused sales that were made to carriers that did offer an Apple smartphone that

4   embodied the protected intellectual property. In each case, I calculated a *Mor-Flo* market share

5   percentage that removes Samsung's accused sales from the relevant market and distributes the accused

6   sales to the remaining market participants on the basis of their respective market share after removing

7   Samsung's accused sales.[118] The relevant market for the 26% of sales that were made to carriers that

8   did not offer an Apple product is the overall smartphone market. **Exhibits 29 and 30** outline the *Mor-*

9   *Flo* analysis I conducted for both smartphones and tablets.  The relevant market for the accused sales

10   made by carriers that offered an Apple smartphone that embodied the intellectual property is the

11   OEM's market share for the carriers that offered an Apple smartphone.  **Exhibits 31 and 31.1 to 31.3**

12   outline smartphone carrier market share and my *Mor-Flo* analysis of Apple's and Samsung's market

13   share within each carrier where iPhones are sold.

14   132. By allocating the accused sales to all other smartphone and tablet market participants, I have factored

15   into my damage calculation all other major consumer demand factors such as price, carrier preference,

16   operating system preference, brand loyalty, and other alternative features. The basis of these

17   conservative reductions in quantifying lost sale units is also identified on **Exhibit 20**.

18   133. Finally, I compared the number of remaining Samsung accused units that would have been sold by

19   Apple "but-for" Samsung's reliance on Apple's intellectual property to Apple's potential excess

20   capacity of iPhones and iPads.  In the event of insufficient capacity, I have removed all remaining

21   accused items that would not have been sold due to a limitation of capacity by Apple to make all of the

22   remaining accused sales after making all of the other adjustments previously discussed. My capacity

23   analysis is based on Apple's capacity disclosures discussed above. In his deposition, Mr. Buckley

24   testified that the capacity analysis was conservatively based on the use of only existing Apple

25   manufacturing capacity.[119] He agreed that the construction of additional capacity was an available

26

27   _____
[118] *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577, 12 U.S.P.Q.2d 1026, 1028 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990).
[119] Deposition of Mark Buckley, February 23, 2012, pp. 197-199.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  option. Further, the Apple capacity analysis was limited to six day work weeks, 19 to 20 hour work

2  days, factored in historical parts shortages, and adjusted for manufacturing defects, other factors, and

3  returns.[120] ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████

7  ███████████████████████████████████[121] However, because Apple carried forward excess

8  capacity from prior quarters, I have determined that in the "but-for" analysis, Apple had the capacity

9  to make all of the identified sales (see **Exhibit 17.2**). The basis of this conservative reduction in

10  qualifying lost sale units is also identified on **Exhibit 20**.

11  134. The final amount of lost profits is then calculated by multiplying the remaining accused Samsung sales

12  that would have been replaced by Apple "but-for" Samsung's reliance on Apple's intellectual property

13  times Apple's incremental profit margin earned on the Apple replacement product. The Apple

14  replacement product embodies the claimed Apple Intellectual Property In Suit. The Apple incremental

15  profit margin is identified on **Exhibits 33 and 34** and was determined by deducting Apple's sales

16  expense and distribution expense from the gross profit for Apple's iPhones and iPads. In order to be

17  conservative and based on Mr. Buckley's deposition testimony where he stated that distribution

18  expense could possibly be variable,[122] I have removed sales and distribution expenses from Apple's

19  gross margin to calculate an incremental margin. Additionally, I have used Apple's average

20  incremental profit for all iPhones and iPads as opposed to individual models because Apple does not

21  keep records at the level of the individual models. Mr. Buckley stated that Apple cannot track net

22  revenue to the model level because carrier subsidies and commissions are not tracked in that level of

23  detail.[123] Therefore, profits cannot be calculated on a model by model basis. Furthermore, using an

24  average incremental profit rate accounts for the mix of products sold by Apple into the smartphone

---

[120] Discussion with Rory Sexton and Mark Buckley.
[121] APLNDC-Y0000055416; Deposition of Mark Buckley, February 23, 2012, Exhibit 15.
[122] Deposition of Mark Buckley, February 23, 2012, pp. 125-126. "[…] I would say most of these are -- would be fixed, in my mind. Maybe some advertising. I would think of that as fixed, too. Distribution, possibly, could -- could be variable, but..."
[123] Deposition of Mark Buckley, February 23, 2012, pp. 82-84.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    and tablet markets.

2    135. It should be noted that Apple's sales of iPhones and iPads as described in their GAAP Line of

3    Business Reports include some revenue deferrals/amortization.  According to Mr. Buckley, Apple

4    defers a small portion of product revenue over the life of the product so that they can offer free

5    software updates.[124]  For the purposes of my calculation, I have not made any adjustments to reflect

6    those deferrals.  In doing so, Apple's product revenue has been deflated and in turn, so have its

7    margins.  This is another contributing factor to the conservative basis of my lost profit calculation.

8    136. In addition to Apple's lost profits due to the loss of iPhone and iPad sales, Apple has lost sales of other

9    convoyed and derivative products/services.  One area of losses comes in the form of iPhone and iPad

10   accessories.  Samsung directly recognizes the importance of accessory sales as they relate to

11   smartphones and tablets.  In a strategy presentation, Samsung states that "Smart Phones Drive Higher

12   Accessory Purchases" and notes that Apple had 50 million in iPhones sales through the first quarter of

13   2010 and there were "~$7.5B in aftermarket accessories sales" in three years and likewise, there were

14   450 thousand iPads sold in the first weekend with "~$54M in Accessory Sales."[125] Apple's accessory

15   sales include items such as cases, screen protectors, headphones and car chargers. **Exhibits 34 and 35**

16   show a calculation of the incremental profit for accessories per iPhone or iPad unit sold.   This

17   demonstrates that Apple could be losing approximately $4.20 in revenue and ███ in profit per

18   iPhone and $32.60 in revenue and ███ in profit per iPad in accessory sales.  These numbers are

19   estimates given the potential timing differences between the initial device purchase and an accessory

20   purchase and therefore I have not calculated Apple's total loss due to Apple's inability to sell

21   accessories to customers who purchased the accused Samsung phones. In addition, Apple earns other

22   sources of income related to the sale of iPhones and iPads, that are further described in the irreparable

23   harm section of my report.  These have not been included in my lost profits calculations.

24   137. Finally, with Samsung's removal from the market and return after the redesign of their products,

25   Samsung would experience a lower level of sales due to its late re-entry to the market.  Microsoft's

26

---

[124] Deposition of Mark Buckley, February 23, 2012, p. 93. Deferral amounts can be seen on APLNDC-Y0000066932-3 and range
from $10 - $30 for iPhones and iPads.
[125] 2011 Smartphone Portfolio Strategy, STA Product and Strategy, May 2010 (SAMNDCA00530591 – 672 at 612).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   late entry into the smartphone market illustrates this point.  An article in the New York Times which

2   details positive critical reviews of Microsoft's smartphone states, "[but] this year [2012] is crucial; it

3   will show whether a respected product is enough to help Microsoft make up for lost time. Even if it

4   feels good to be a favorite of tech critics for a change, Microsoft needs a blockbuster in the mobile

5   business, not a cult hit. 'Entering the market so late with this experience has created some special

6   challenges for us,' Mr. Myerson said. 'I think if we were there earlier it would be different.'"[126]

7   Samsung's removal of the accused products from the market for redesign would cause similar

8   problems upon their return.  However, with the difficulty in quantifying the magnitude of the delay's

9   effects on Samsung's sales, I have not quantified the amount of "but-for" sales that Apple would have

10   made and continued to keep my calculation conservative.

11   *Infringer's Profits*

12   138.  I understand that assuming infringement, a design patent owner may choose to recover the infringer's

13        profit under §289 or one of the remedies relating to utility patents that were discussed above under 35

14        U.S.C. §284. However, the design patentee's damages are limited to only one form of damage and

15        the patentee may not recover both a lost profit and infringer's profit for the same unit. The infringer's

16        total profits are equal to the total sales of infringing product less the costs directly associated with the

17        accused sales. It is the patentee's burden to establish the sales of accused products and the infringer's

18        burden to establish the costs related to the accused sales.[127]

19   139.  An owner of trade dress and trademark rights has the ability to recover the profits obtained by a

20        person who violates those rights.  It is the plaintiff's obligation to prove the revenues obtained for

21        products that use the relevant intellectual property and the defendant's obligation to prove any costs

22        and other allocations associated with the product and the relevant intellectual property.

23   140.  As previously discussed, I have approached the overall damage calculation in a sequential manner to

24        avoid an incorrect duplication of damages. I first calculated a lost profits remedy on accused products

25        that qualified for a lost profits remedy. Next, I calculated an infringer's profits remedy on all accused

26        products that qualify for an infringer's profit for which a previous lost profits amount has not been

---

[126] New York Times, "The Critics Rave … for Microsoft?" by Nick Wingfield, dated 1/8/12.
[127] Weil, Frank, Huges, and Wagner, Litigation Services Handbook, Fourth Edition, 2007, p. 22.32.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    calculated.

2    141. The first step in the calculation of infringer's profits was identifying the Samsung units accused of

3    infringing the design patents and the revenue associated with those. The individual Samsung products

4    accused of infringing the individual Apple design patents are identified on **Exhibit 4**. Next, I

5    determined the actual number of units that qualified for infringer's profits after removing those units

6    for which a lost profit damage was calculated. The determination of the units available for infringer's

7    profits after removing the units for which a lost profits remedy was calculated is displayed on **Exhibit

8    17.2.**

9    142. Next, the sales amounts from **Exhibit 17.2** are listed on **Exhibit 17.3** as Samsung's infringing profit

10   for each product. As stated above, Apple has the burden of identifying the accused revenue portion of

11   infringer's profits. It is Samsung's burden to identify any related costs.

12   143. I have reviewed Samsung's document production and testimony concerning any alleged costs

13   associated with the sale of accused items and have provided my own calculation of the costs

14   associated with the accused revenue. Although the document production in this matter by both Apple

15   and Samsung has been voluminous, I understand that Samsung's production of an Excel spreadsheet

16   on February 3, 2012, bates numbered SAMNDCA00323946, that was also marked as Exhibit 1920[128]

17   to the Timothy Sheppard's 30(b)(6) deposition on February 29, 2012, constituted Samsung's first

18   representation of the sales and profits of the accused devices. Based on my independent review of this

19   document, I determined that it was mathematically incorrect in that the reported detailed sales by

20   product did not equal the reported total sales for all products. Additionally, this document failed to

21   include sales for all of the models accused by Apple. The excluded models were Samsung's Galaxy S

22   II (AT&T edition, 4G), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II

23   Skyrocket (4G LTE), Galaxy S Showcase, Galaxy Tab 7.0, Galaxy Tab 10.1 LTE and Mesmerize.[129]

24   144. Samsung subsequently produced a second version of the same spreadsheet on or about February 28,

25   2012, Bates numbered SAMNDCA00354292, that was marked as Exhibit 1922 to the Timothy

---

[128] Counsel for Samsung stated at the Deposition of Timothy Sheppard on February 29, 2012 that Exhibit 1920 was superseded by additional production. Deposition of Timothy Sheppard, February 29, 2012, pp. 37-38.
[129] I am aware that Apple has sought documents and other materials through a motion.  As noted above, my work is limited by the material presently available and I would incorporate additional information after it is received.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Sheppard 30(b)(6) deposition on February 29, 2012. Although I determined that the reported detailed sales by product did now equal the reported total sales for all products, this document also failed to include sales for all of the models accused by Apple and included sales of other models not accused by Apple. The excluded models were Samsung's Galaxy S II (AT&T edition, 4G), Galaxy S II (T-Mobile edition), Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), and Galaxy Tab 10.1 LTE. The Galaxy Tab 8.9 was added while not being accused. Based on the deposition testimony of Timothy Sheppard from January and February, I confirmed that the reported profit for two of the accused Samsung entities, SEA and STA, did not represent actual profits on the accused items. Timothy Sheppard testified that the cost of goods sold amount for each entity was based on an internal transfer price that transferred the accused product profits to the manufacturing entity owned by SEC in Korea.[130] Timothy Sheppard was unable to speak on behalf of SEC.[131]

145. Samsung next offered Jae Huang Sim as the Samsung witness that would testify to the actual sales, costs and profits associated with the accused products including the manufacturing entity SEC in Korea. Mr. Sim's deposition was scheduled to take place in Seoul, Korea on March 10, 2012. Less than 24 hours before his deposition, Samsung produced a third version of the aforementioned spreadsheet, Bates numbered SAMNDCA00372946, that was subsequently marked as Exhibit 2440 to Mr. Sim's deposition. Prior to Mr. Sim's deposition, I determined that this spreadsheet also failed to include sales for all of the models accused by Apple and included sales of other models not accused by Apple. The excluded models were Samsung's Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket (4G LTE), and Galaxy Tab 10.1 LTE. The Galaxy Tab 8.9 was included while not being accused. Additionally, I noted that $177,059 (500 units) of Galaxy Tab 10.1 sales were added, $195,794,628 of Hercules sales were added, SECA sales but not costs were removed from the other

manufacturing cost of goods sold line item as presented in the prior spreadsheets reducing

the Continuum model, and finally certain levels of details that had previously been reported were now

---

[130] Deposition of Timothy Sheppard, February 29, 2012, pp. 123-124 and pp. 128-129.
[131] Deposition of Timothy Sheppard, February 29, 2012, pp. 15.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   removed and new levels of detail were provided that had not existed before. In summary, Samsung's

2   representations concerning the revenue, cost and profit associated with the accused devices had

3   changed radically for the third time within 24 hours of Mr. Sim's deposition.

4   146. Mr. Sim was asked about many of the aforementioned changes during his deposition and was either

5   unaware of many of the changes or provided answers that were incorrect and admittedly incomplete

6   in terms of providing a complete representation of Samsung's accounting for the actual revenue, cost

7   and profit of the accused devices.  He admitted however that the changes to the cost of goods sold

8   was a decision made by him and Samsung's lawyers to exclude profits obtained by Samsung

9   subsidiaries.  Samsung's decision to increase the cost of goods sold by the amount of the Chinese

10   manufacturing subsidiary's profit restates the profit and loss for the accused products to a transfer

11   price adjusted amount.  Based on my professional experience as a CPA, the reporting of a profit and

12   loss on a transfer price basis fails to eliminate the results of intercompany transactions, distorts the

13   actual results of operations, and is not in accordance with Generally Accepted Accounting Principles

14   (GAAP).

15   147. Finally, on March 12, 2012, after the third version was produced, Timothy Sheppard submitted a

16   declaration with the intent of explaining some of the discrepancies in the foregoing spreadsheets.  Mr.

17   Sheppard stated, "with respect to the Galaxy S II (T-Mobile edition) and the Galaxy S II (AT&T

18   edition), these models are in fact included in both the Original Spreadsheet and the Revised

19   Spreadsheet under the heading "Galaxy S II/2 (GT-I9100)."[132] According to Samsung's web site the

20   Galaxy S II (T-Mobile edition) uses the model number SGH-T989[133] and the Galaxy S II (AT&T

21   edition) uses the model number SGH-I777.[134] In the third version of Samsung's spreadsheet, the

22   Galaxy S II/2 (GT-I9100) was relisted as "Galaxy S II/2 (GT-I9100, GT-I9108, SGH-I177, SGH-

23   N033, SHW-M250K, SHW-M250S)" with STA sales of $179,853,039 matching the prior versions of

24   the spreadsheet.  According to Mr. Sheppard this data includes the AT&T edition and not the T-

25   Mobile edition.  As previously noted, the third version of the financials includes sales for the

---

[132] Declaration of Timothy Sheppard in Support of Samsung's Opposition to Apple's Motion for Rule 37(b)(2) Sanctions for Samsung's Alleged Violation of January 27, 2012 Damages Discovery Order, dated April 3, 2012, p.5.
[133] http://www.samsung.com/us/mobile/cell-phones/SGH-T989ZKBTMB?
[134] http://www.samsung.com/us/mobile/cell-phones/SGH-I777ZKAATT?

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

"Hercules (SGH-T989)" which matches the T-Mobile edition's model number. The Hercules [Galaxy S II (T-Mobile edition)] had $195,794,628 in sales through STA.  This is inconsistent with Mr. Sheppard's statement that the T-Mobile edition sales are included within the Galaxy S II/2 (GT-I9100) given that the sales of the Galaxy S II (T-Mobile edition) are approximately $16 million greater than those disclosed under the Galaxy S II/2 (GT-I9100) name.

148.  Due to the inaccurate and incomplete nature of Samsung's disclosures relative to the revenue, cost and profits of the accused devices, it was not possible to calculate a true consolidated profit using the information disclosed.  In light of these deficiencies, I have used Samsung's reported manufacturing gross profit of the accused products on a worldwide basis as the starting point for determining the most accurate representation of Samsung's incremental profits on accused devices. As shown on **Exhibit 36**, in the third version of financials, Samsung has reported that the worldwide

represents the profit earned by Samsung on the sale of the accused devices in the U.S. and transferred to a Chinese subsidiary of Samsung under a transfer pricing agreement to avoid U.S. taxation.[135] This

reduce this gross profit percentage for tablets on the basis of the difference between the tablets reported gross profit versus Samsung's smartphone reported gross profit. My calculation of the smartphone and tablet adjusted gross profit is displayed on **Exhibits 37 and 38**.

149.  Samsung's confusing and incomplete spreadsheets provides some limited information on other expenses that it allegedly allocates to the Samsung Accused Products.  Very little by way of detail or information is provided.  Ultimately it is Samsung's burden to identify which expenses are directly associated with the product.  Nonetheless, I have looked at the categories provided and based on the information that I have, I would not include them in a calculation of the incremental profit Samsung has earned because they are primarily indirect costs and appear to be fixed costs, non marginal costs that do not vary with new units.  More information would be needed to carry Samsung's burden.

---

[135] Deposition of Jaehwang Sim, March 10, 2012, pp. 35-36 and 44.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

150. My use of Samsung's worldwide manufacturing gross profit percentage is conservative and is potentially prejudicial to Apple in that it ignores any profits that may have been earned at the individual sales subsidiaries, SEA and STA. Therefore, it presumes that the higher retail sales amount reported by the U.S. sales subsidiaries is offset by both the cost of goods sold at a transfer price level and additional costs borne only at the U.S. subsidiary level. I expect to adjust my calculation and opinion regarding Samsung's profits on accused devices should additional information become available.

151. My final calculation of the resulting infringer's profit damage amount is displayed on **Exhibits 17 and 17.1** where I have calculated Samsung's accused revenue and adjusted gross profit.

*Reasonable Royalty*

152. As indicated above, assuming infringement, a utility or design patent owner is entitled to an award of "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." [136]  "Importantly, *no* single accepted method exists for how a court must determine 'reasonable royalty' *damages*." [137]  There are various methods (e.g., "established royalty," "hypothetical negotiation," "the analytical method" and "discounted cash flow analysis") [138] that are frequently used to determine a reasonable royalty amount.  Further, the final royalty amount may be expressed in various forms (e.g., through a running royalty, a one-time lump-sum payment or a combination of both).  The important and necessary aspect of a reasonable royalty damage amount is that the amount is adequate to compensate for the alleged infringement.  The adequacy of the damage compensation is measured by the value of the claimed patent benefits.

153. A benefit conveyed through a patent or other form of intellectual property may initially take various forms (e.g., early market entrance, increased market share, enhanced product visibility, a reduction in manufacturing time, etc.).  However, the alleged patent benefit(s) is ultimately measured by the profits such benefits produce. Increased profits basically result from one or more of the following: increased sales volume, increased sales price and/or reduced costs.  If the patent is unable to generate

---

[136] 35 U.S.C. § 284.
[137] John M. Skenyon, Christopher Marchese & John Land.  Intellectual Property - Patent Damages Law & Practice. §1:12.
[138] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, pp. 48-60.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   future profits to a reasonable degree of certainty, the patent's value is speculative.

2   154.   Reasonable royalties are commonly used to calculate damages for patents.  Less commonly, they can

3   be used to calculate damages for infringement of trademark and trade dress.  In this context, they

4   apply where other forms of damages are not available or cannot be proved with reasonable certainty.

5   This is another reason that I apply a reasonable royalty only after an evaluation of other forms of

6   damages.

7   *Royalty Base*

8   155.   Most reasonable royalty damage amounts are expressed as a reasonable royalty rate times an accused

9   base. The rate may be expressed as a percent of accused sales dollars, as a per-unit dollar amount or a

10   lump sum. Regardless of the form, reasonable royalty damages are often calculated on a "base" of

11   sales of a particular infringing product or uses of a particular infringing process.[139]

12   156.   The use of accused sales as a base for determining a reasonable royalty is not always a straight

13   forward determination, even assuming a specific identification of accused product sales. The accused

14   product may contain and the relevant revenue may result from multiple other features in addition to

15   the protected by the intellectual property element at issue. Therefore, the accused element of an

16   accused product may represent only a portion of the value of the total accused product. The use of the

17   total revenues obtained from sales of an accused product as the royalty base when the accused

18   element of the accused product represents only a portion of the total product is referred to an

19   application of the entire market value rule ("EMVR").

20   157.   The Federal Circuit has considered the historical and ongoing use of the EMVR.  "For the entire

21   market value rule to apply, the patentee must prove that the patented related feature is the basis for

22   customer demand" of the entire accused product.[140]   The Federal Circuit rulings "do not allow

23   consideration of the entire market value of accused products for minor improvements simply by

24   asserting a low enough royalty rate."[141] A recent case applied the following on a three-prong test.

25   "The entire market value rule in the context of royalties requires adequate proof of three conditions:

26

---

[139] *Rite-Hite*, 56 F.3d at 1554, see also Del Mar Avionics v. Quinton Instrument Co., 836 F.2nd 1320 (Fed. Cir. 1987).
[140] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).
[141] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320  (Fed. Cir. 2011).

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

52

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(1) the infringing components must be the basis for customer demand for the entire machine including the parts beyond the claimed invention; (2) the individual infringing and non-infringing components must be sold together so that they constitute a functional unit or are part of a complete machine or single assembly of parts; and (3) the individual infringing and non-infringing components must be analogous to a single functioning unit. It is not enough that the infringing and non-infringing parts are sold together for mere business advantage.[142]

158. Alternatives to the use of the entire market value rule exist. One method of establishing a royalty base that relates only to the patented components within an entire market is through an apportionment of the entire market value. An apportionment of the entire market value seeks to identify the portion of the entire market value that relates only to the protected element. There are no predefined or required methods to accomplish an apportionment. Similarly, a party may structure a royalty on a per unit basis rather than using revenues as a basis for the calculation. The guiding principle in allocating costs and revenues within the accounting profession is that such allocations should be systematic and rational.

159. The individual accused smartphone and tablet products of Samsung are comprised of a number of patented and un-patented elements. Accordingly, I have considered the effect of the entire market value of the products and elected to structure my royalty damage on an individual per unit basis and not the total revenue of the accused products. Further, as discussed below, I take steps to apportion the overall royalty rate when considering the total profit contributions of the accused products. As reflected in **Exhibit 20,** I use the number of accused units sold and not revenue as the basis on which to calculate a royalty for each asserted item of Apple Intellectual Property In Suit.

*Royalty Rate*

160. The determination of the appropriate reasonable royalty rate was completed on the basis of each individual item of Apple Intellectual Property In Suit. As previously disclosed, I have assumed that every item of Apple Intellectual Property In Suit is both valid and infringed. However, the final decision by the Court may involve a determination of validity and infringement of only a subset of

---

[142] *Cornell Univ. v. Hewlett-Packard Co.,* 609 F. Supp. 2d 279, 268-87 (N.D.N.Y. 2009) ("Cornell II") (internal citations omitted).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   the total number of asserted items of Apple's Intellectual Property In Suit. For this reason it is

2   necessary that a rate be assigned individually to every item of Apple Intellectual Property In Suit. In

3   this way, once the Court has made a final determination concerning which items of Apple Intellectual

4   Property In Suit are valid and infringed, the Court can then add up the resulting damages associated

5   with each valid and infringed item of intellectual property. The individual rates for each item of

6   Apple Intellectual Property In Suit are displayed on **Exhibit 20**. The rates were determined as

7   follows.

8   161.   I began my determination of the appropriate reasonable royalty rate for each item of the Apple

9        intellectual property by considering the value of economic benefits associated with the alleged use of

10       each item. I developed reference points for each item of Apple Intellectual Property In Suit through

11       the consideration of three standard valuation methods referred to as the cost, income and market

12       approaches.[143]

13   *The Cost Approach*

14   162.   The cost basis approach is generally based on the cost to an entity to develop or replace the specific

15       technology in question. The basis of my cost reference point for Samsung is the total cost of replacing

16       or removing the accused element from Samsung's accused smartphones and tablets when and if

17       deemed possible. I have conservatively limited my calculation of this cost to the opportunity cost

18       represented by the amount of lost operating profits incurred by Samsung during the period of time

19       Samsung would have been out of the market developing, designing, testing and implementing an

20       acceptable non-infringing substitute. There would be additional out-of-pocket costs associated with

21       the development, design, testing and implementation of an acceptable non-infringing substitute and I

22       intend to add such costs to my calculation should they become available in the future.

23   163.   I have based the period of time Samsung would have been out of the market developing, designing,

24       testing and implementing an acceptable non-infringing substitute on the opinion of Apple's technical

25       experts as identified on **Exhibit 20** and Samsung and Apple evidence regarding the amount of time

26       required in the ordinary course to design, develop, test and implement new smartphone and tablet

27

28   ---

[143] AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999), pp. 32, 38, and 41.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1       features.

2   164. As discussed throughout my report, I have performed my calculations on an item by item basis for

3       Apple Intellectual Property In Suit.  Additionally, I make an ultra conservative assumption and

4       assume that the individual time required to replace each individual item of Apple Intellectual

5       Property In Suit would occur at the same time.

6   165. Accordingly, I calculate the total number of smartphones and tablets that would not have been sold

7       by Samsung during the period of time they would have been out of the market replacing all accused

8       Apple Intellectual Property In Suit. I derive the total opportunity cost by multiplying the average

9       gross profit for a Samsung Smartphone and Tablet over the total accused time period times the

10      number of units not sold while Samsung would have been out of the market. Next, I divide that total

11      opportunity cost amount for smartphones and tablets by the total number of accused smartphones and

12      tablets to produce a per unit opportunity cost for smartphones and tablets. Finally, I allocate the

13      overall opportunity cost for smartphones and tablets between the individual items of Apple

14      Intellectual Property In Suit based on the number of categories involved. The calculation of the

15      individual per unit Samsung opportunity cost is illustrated on **Exhibits 39.1 to 39.4** and the final

16      results are summarized on **Exhibit 39.**

17  166. There are no cost basis rates available for Apple. I have interviewed various Apple representatives as

18      identified elsewhere in my report and understand that the amount of research and development costs

19      that were required to design, develop, test and implement the embodiment of the various Apple

20      Intellectual Property In Suit was significant. Over the past three years Apple has spent between two

21      and three percent of net sales on research and development with expenses of $2.4 Billion, $1.7

22      Billion, and $1.3 Billion in 2011, 2010, and 2009 respectively.[144]  The importance of research and

23      development is echoed in the following statement from Apple's 10-k, "The Company continues to

24      believe that focused investments in R&D are critical to its future growth and competitive position in

25      the marketplace and are directly related to timely development of new and enhanced products that are

26      central to the Company's core business strategy. As such, the Company expects to make further

27  _____

28  [144] Apple Inc. Form 10-K, fiscal year ended 9/24/11, pp. 35-36.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                           55

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   investments in R&D to remain competitive."[145]   However, Apple does not track the individual

2   research and development costs associated with individual patents, individual features or other forms

3   of intellectual property in the ordinary course.

4   167.   The rates discussed above allocate the total cost of replacement by the number of accused units.

5   Therefore, I do not further apportion the amount when calculating a reference amount.

6   *The Market Approach*

7   168.   The market approach to the valuation of intellectual property is based on the consideration of other

8   market comparable transactions. I have reviewed and analyzed both Apple and Samsung's licensing

9   activity and searched the public domain for market comparable rates specific to or comparable to the

10   Apple Intellectual Property in Suit. I explain the result of my analysis for each as follows and have

11   summarized my results on **Exhibit 40**.

12   169.   <u>Apple</u> – Based on my review of the evidence produced in this case I have identified the following

13   sources that relate to Apple's licensing of the Apple Intellectual Property In Suit as well as Apple's

14   general licensing policies and procedures.

15   •   Apple's policy is to not license to anyone its design elements as represented by Apple's asserted

16   design patents and trade dress. Accordingly, this sets a very high but un-quantifiable rate for Apple's

17   asserted design patents and trade dress. This policy is reinforced and confirmed by Apple's refusal to

18   offer Samsung a license to design elements and its specific directives regarding copying during the

19   parties' discussions about the Apple Intellectual Property In Suit.[146]

20   •   Apple has not licensed any of the Apple Intellectual Property In Suit outside of the inclusion of

21   some of the patents as a part of a few select global cross licenses and there is no established rate

22   associated with any Apple Intellectual Property In Suit.

23   •   Some of the Apple utility patents in suit are included on a list of patents prepared in recent periods

24   that Apple will not license to other companies.

25   •   Apple's approach  is to use its intellectual property to protect proprietary features of its products as

26   opposed to licensing as a means of generating revenue.

---

[145] Apple Inc. Form 10-K, fiscal year ended 9/24/11, pp. 35-36.
[146] Deposition of Chip Lutton, Jr., July 26, 2011, pp. 52, 117.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- There are three agreements that cover, at least in part, some of the Apple Intellectual Property in Suit.

*IBM Cross License*

170. The first agreement between Apple and IBM took place in 1991, where Apple and IBM each licensed their worldwide patents, on a non-exclusive basis, including utility models and design patents for registration of type fonts (but not including any other design patents or registrations), issued by October 1, 1991 and all patent applications with an effective filing date prior to October 1, 1991. ████████████████████████████████████████████████████████████████████████.[147] Apple and IBM further engaged in another similar cross-license agreement on December 18, 2002.  This cross-license agreement captures patents, owned by either party, issued by October 25, 2012 or all patent applications with an effective filing date prior to October 25, 2012. ████████████████████████████████████

*Microsoft Cross License*

171. Apple entered into a cross-license agreement with Microsoft Corporation on August 5, 1997. Licensed patents include all worldwide utility patents, utility models, and equivalent rights, and all of its worldwide design patents and design registration relating to user-interface components for a computing or information processing device before 2002.  The agreement also included an "anti-cloning" provision which kept the parties from copying each other's products.  Apple was to pay 52.5% of the total payment made by Microsoft to OTLC, of which Apple owns 50% of the common

---

[147] Patent Cross License Agreement between Apple Inc. and International Business Machines Corporation, dated October 1, 1991 (AppDel0158967 to AppDel0159005).
[148] Patent Cross License Agreement between Apple Inc. and International Business Machines Corporation, dated December 18, 2002 (APLNDC0001221082 to APLNDC0001221113).
[149] License Amendment between Apple Computer, Inc. and International Business Machines Corporation, dated March 31, 2006 (APLNDC00014215 to APLNDC000142224).
[150] Discussion with Boris Teksler.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   stock, for any license, settlement, judgment or other rights under any and all OTLC patents, less half

2   of any costs that OTLC incurs in conjunction with such Microsoft patent activities.  Microsoft was to

3   pay a one time lump sum payment of $93,076,924 to Apple.  The agreement term was five years from

4   the effective date.[151]  I understand this cross license covers includes only the '002 and '891 Patents In

5   Suit.[152]

6   *Nokia Cross License and Settlement*

7   172.   In June 2011, Apple also entered into a provisional license agreement with Nokia in a connection

8   with a settlement of litigation between the parties.[153]

19   173.   It is my opinion that the three licenses do not provide a relevant comparable reference rate for the

20   Apple Intellectual Property In Suit.  The IBM license which includes all of the utility patents in suit

21   also includes a host of other intellectual property that is unrelated to the utility patents in suit.

22   Furthermore, IBM does not compete in the wireless device industry, an important characteristic when

23   establishing a rate as comparable.  The Microsoft license is a broad cross license covering two of the

24   utility patents in suit as well as a host of other intellectual property that is unrelated to the utility

---

[151] Patent Cross Licenses Agreement between Apple Inc. and Microsoft Corporation, dated August 5, 1997 (APL-ITC796-0000010019 to APL-ITC796-0000010040).

[152] Discussion with Boris Teksler.

[153] Deposition of Chip Lutton, Jr., July 26, 2011, p. 66.

[154] Patent License Agreement between Nokia and Apple Inc., dated June 12, 2011 (APLNDC-X0000007220 to APLNDC-X0000007335).

[155] Deposition of Chip Lutton, Jr., July 26, 2011, p. 66.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   patents in suit. ███████████████████████████████

2   ███████████████████████████████████████████████

3   ███████████████████████████████████████████████

4   ███████████████████████████████████████████████

5   ████████████████████████████████.

6   174. Apple participated in a series of licensing negotiations with Samsung that included the utility patents

7       in the Apple Intellectual Property In Suit.  I understand that the first meeting between Apple and

8       Samsung regarding Apple's concern that Samsung was "copying Apple's products" occurred in July

9       2010 in Cupertino, CA.[156]   The meeting included Apple's then CEO Steve Jobs and COO Tim Cook

10      as well as Samsung COO J.Y. Lee.[157]  The July 2010 meeting was followed up with August and

11      September 2010 meetings between other Apple and Samsung representatives[158] in which Apple

12      provided substantial additional information about the nature and scope of Samsung's infringement of

13      Apple's intellectual property.  These discussions led to an October 2010 meeting in Washington, DC

14      between Apple Senior Vice President and General Counsel, Bruce Sewell, Apple Senior Director and

15      former Chief Patent Counsel, Chip Lutton, and Apple Director of Patent Licensing and Strategy,

16      Boris Teksler, as well as Dr. Seung Ahn and KJ Kim from Samsung.[159]  The October 2010 licensing

17      discussion yielded a proposed framework for a license by Apple that included a proposed $30 per

18      Samsung licensed smartphone and $40 per licensed touchscreen tablet that would include some but

19      not all of the utility patents in suit and none of the design patents.[160]   Chip Lutton testified that the

20      tablet rate of $40 per licensed touchscreen tablet was to be reduced over some period of time to a

21      lesser royalty, proposed initially to be a $30 per unit royalty after two years.[161]

22  175. Apple indicated on multiple occasions throughout the licensing discussion meetings described above

23      that Apple had no interest in licensing its design patents or trade dress to Samsung and also indicated

---

[156] Deposition of Chip Lutton, Jr., July 26, 2011, pp. 21 and 24.
[157] Deposition of Chip Lutton, Jr., July 26, 2011, p. 23.
[158] Deposition of Chip Lutton, Jr., July 26, 2011, pp. 17 and 118.
[159] Deposition of Chip Lutton, Jr., July 26, 2011, p. 171.
[160] Samsung-Apple Licensing Discussion, October 5, 2010 (APLNDC000010886-917 at APLNDC000010897); Discussion with Boris Teksler.
[161] Deposition of Chip Lutton, Jr., July 26, 2011, p. 192.; Samsung-Apple Licensing Discussion, October 5, 2010 (APLNDC000010886-917 at APLNDC000010897).

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                    59

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    that certain utility patents would need to be excluded.  When asked whether Samsung was offered a

2    license in the August 4, 2010 meeting, Chip Lutton stated "if Samsung wanted to continue to use

3    Apple's utility patents in its smartphones, as documented in the – in the infringement by the Android

4    – various layers of the Android system, the message to Samsung was that we were willing to work

5    with them on – on that.  We were not willing to license them the design patents or the design aspects

6    of our product."[162]  Mr. Teksler also confirmed that certain of the utility patents (including the '381,

7    '915, and '163 Patent) that have been asserted in this lawsuit would have been excluded from any

8    arrangement between Apple and Samsung.[163]

9    176.   One reference point I also considered is Apple's Made for iPhone, iPad, and iPod program.  Mark

10   Buckley described the program as originating when Apple only sold iPods.  The program made it

11   possible for third parties to manufacture an accessory and with Apple's permission place a "Made for

12   iPod" logo on the packaging in exchange for a fee.[164]  I reviewed the standard Made for iPod License

13   and Made for iPod License iPhone/iPad Supplement and found that the license grants a third party a

14   limited, non-exclusive license to manufacture Licensed Products incorporating Licensed Technology

15   as well as a non-exclusive right to use the Made for iPod, iPhone, and iPad logos on "product

16   packaging and in the user guide for each Licensed Product, and in any advertisements, web pages,

17   and other collateral materials promoting the Licensed Products."[165]  The purpose of the agreement is

18   to create a market for complimentary, not competing products.[166]  A Licensed Product is defined as

19   "a Proposed Product that (i) bears Licensee's brand, (ii) controls or interfaces, communicates or

20   otherwise interoperates with Compatible iPod Products in accordance with Documentation and this

21   Use License, and (iii) has been certified in accordance with Section 2."[167]  According to the terms of

22   the agreement, the Made for iPhone, iPad, and iPod program requires a royalty payment of $4.00 for

23   each Licensed Product unit sold.  Although this license is not a comparable license to any of the

24   Apple Intellectual Property In Suit, I do view this license rate of $4.00 per unit as a floor for the

---

[162] Deposition of Chip Lutton, Jr., July 26, 2011, p. 52.
[163] Discussion with Boris Teklser.
[164] Mark Buckley Deposition, February 23, 2012, p. 58.
[165] Made for iPod License (APLNDC-Y000148459 to APLNDC-Y000148473); Made for iPod License iPhone/iPad Supplement to Contract # (APLNDC-Y000148474 to APLNDC-Y000148478).
[166] Discussion with Boris Teklser.
[167] Made for iPod License (APLNDC-Y000148459-473 at APLNDC-Y000148470).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   license of any single item of intellectual property contained in the asserted design patents, trade dress,

2   and trademarks.

3   177.   I examined other license agreements produced by Apple in this litigation.  Given their scope, their

4   timing, the relationship between Apple and Samsung, and the specific intellectual property being

5   asserted by Apple, I concluded that none provide a comparable arrangement to the license that

6   Samsung would need to take for the specific utility patents, design patents and other design rights that

7   are being asserted by Apple in the present case.  I state no opinions regarding whether and to what

8   degree that they may be comparable or useful in evaluating any reasonable royalty that Samsung

9   seeks for the patents that it has asserted against Apple.

10  178.   Samsung- Based on my review of the evidence produced in this case I have identified the following

11  sources that relate specifically to Samsung's licensing activities.

12  179.   I have reviewed the licenses that Samsung has produced in this litigation.  Given their scope, their

13  timing, the relationship between Apple and Samsung, and the specific intellectual property being

14  asserted by Apple, I concluded that none provide a comparable arrangement to the license that

15  Samsung would need to take for the specific utility patents, design patents and other design rights that

16  are being asserted by Apple in the present case.  I state no opinions regarding whether and to what

17  degree they may be comparable or useful in evaluating any reasonable royalty that Samsung seeks for

18  the patents that it has asserted against Apple.

19  180.   I understand Samsung made an offer to Apple prior to the commencement of this litigation.

20  According to Mr. Lutton, Samsung gave a presentation to Apple on November 2, 2010 as part of the

21  on-going licensing discussion between the parties.[168]  The presentation identifies a 1 percent royalty

22  rate for both Apple and Samsung under the assumption that "the patent positions for both Apple and

23  Samsung are equal."[169]  As the presentation suggests, this offer would have resulted in Apple making

24  a balance payment of $234 million.[170]  Mr. Lutton described the circumstances as such, "Samsung

25  took a strange turn of talking about its own intellectual property, and -- and had a view that -- that

26

27  [168] Deposition of Chip Lutton, Jr., July 26, 2011, p. 332.
    [169] Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 23: Apple-Samsung Licensing Discussion, p. 5.
28  [170] Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 23: Apple-Samsung Licensing Discussion, p. 5.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                          61

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    Apple's intellectual property and Samsung's intellectual property were of similar value, but because

2    Apple was selling more products than Samsung, that Apple should owe Samsung a net balancing

3    payment." [171] To determine the per unit royalty rate that corresponds to Samsung's suggested 1

4

5

6    Samsung.

7    181.  <u>Industry</u> – Based on my review of licensing information regarding the wireless device industry, there

8    are no directly comparable licenses to the Apple Intellectual Property in Suit in the public domain.

9    *The Income Approach*

10   182.  The theory behind an income approach is that the value of the patent at issue is equal to the future

11   profitability of the products embodying the patented technology. Although projections of future

12   profits by accused defendants are sometimes used and accepted by the courts as representation of

13   what a defendant expected to make, [173] the actual profits are now known and available and represent a

14   more conservative measure of anticipated profits at the time of the hypothetical negotiation under a

15   "book of knowledge" concept. I have relied on both Apple's and Samsung's actual profits as a

16   starting point for my analysis of the value of the Apple Intellectual Property In Suit and a reasonable

17   royalty thereon based on an income approach.

18   183.  The net operating income produced through the sale of a smartphone and tablet represents a total

19   competitive return to Apple and Samsung for their deployment of all corporate resources after all

20   necessary operating expenses have been paid.  This net return is not the result of the deployment of

21   any single asset. Rather, it represents a composite return on all assets. Various income methods exist

22   as acceptable methods to value individual assets as well as a means to use the isolated value as a basis

23   to charge rent or a royalty for the use of that specific asset. For example, "the capitalization of excess

24   earnings method calculates the expected return on all other assets, and attributes any earnings above

---

25   [171] Deposition of Chip Lutton, Jr., July 26, 2011, p. 151.

26   [172] Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 23: Apple-Samsung Licensing Discussion, p. 5.

27   [173] In *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed Cir. 1986), cert. denied, 479 U.S. 852, 107 S. Ct. 183, 93 L. Ed. 2d 117 (1986), a special master computed reasonable royalty damages based on an internal memorandum written by the infringer's management just before it started to infringe. The internal memo identified a future profit that was significantly higher than the profit margin actually realized by the infringer on the accused products.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  and beyond this return to the intangible asset in question."[174] Another income method referred to as a

2  "profit split" involves the identification of "the potential stream of income associated with the asset

3  that could be hypothetically split between the prospective parties."[175] Finally, "the analytical method

4  is based on the premise that any rate of return in excess of a normal rate of return can be attributed to

5  the patent. This method takes the profits of the infringer, subtracts the infringer's normal profit, and

6  awards some portion of the remainder to the patent owner."[176]

7  184.  The following income approach employed and described herein is based on the income approaches

8       identified in the preceding paragraph. I began my analysis by reviewing the work performed by the

9       international company Interbrand. Interbrand was established in 1974 and identifies itself as the

10      "world's largest brand consultancy."[177] Additionally, Interbrand lists Samsung as one of its clients

11      and claims that it "helped Samsung raise its brand value to US 16.8 billion."[178] Interbrand is also the

12      author of an annual valuation and ranking of the top 100 brands in the world. [179] Interbrand's

13      approach to the valuation of Samsung and other top 100 brands in the world is an income based

14      approach. Interbrand starts with a company's overall financial performance and separates the portion

15      of a company's overall performance that relates to the intangible brand. Interbrand explains that

16      "Financial performance measures an organization's raw financial return to the investors. For this

17      reason, it is analyzed as economic profit, a concept akin to Economic Value Added (EVA). To

18      determine economic profit, we remove taxes from net operating profit to get to net operating profit

19      after tax (NOPAT). From NOPAT, a capital charge is subtracted to account for the capital used to

20      generate the brand's revenues; this provides the economic profit for each analyzed year.  For

21      purposes of the rankings, the capital charge rate is set by the industry weighted average cost of capital

22      (WACC)."[180] Interbrand's actual calculation is: operating profits less taxes less an industry weighted

23      average cost of capital (WACC) equals economic value added (EVA). Interbrand then applies its own

24      proprietary factor to the total EVA to determine the role of and ultimately the value of a company's

---

25  [174] AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999). p. 49.

    [175] AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999), p. 47.

26  [176] AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages, p. 59.

    [177] http://www.interbrand.com/en/about-us/Interbrand-about-us.aspx.

27  [178] http://www.interbrand.com/en/our-work/Samsung.aspx.

    [179] http://www.interbrand.com/en/best-global-brands/Best-Global-Brands-2011.aspx.

28  [180] http://www.interbrand.com/en/best-global-brands/best-global-brands-methodology/Overview.aspx.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

brand.

185. The Interbrand approach is an income based approach that seeks to isolate the residual benefit associated with the use of the brand asset. The calculated EVA is "defined as the net operating profit of a company before interest, less taxes paid, less a charge for debt and equity tied up in the business. The remaining amount then is a measure of the company's performance after satisfying the opportunity cost of all resources employed by the company."[181]

186. I have adopted the Interbrand approach as a means of identifying income based reference rates associated with Apple's design patents, trade dress and utility patents. **Exhibits 41 and 41.1 to 41.5** set forth the calculations performed to derive the rates associated with the design patents and trade dress and the utility patents. I begin with Apple's overall company profits and determine that Apple has reported a companywide operating profit for 2010 and 2011 of 30%.[182] I then deduct Apple's effective tax rate to produce a net operating profit after tax for Apple as a whole. Next, consistent with the Interbrand approach, I deduct the weighted average cost of capital for the industries in which Apple is a participant. The identification of the WACC is identified on **Exhibit 41.4**. The net result of the prior calculations is the identification of a company wide economic value added amount for Apple. Given the considerable success of Apple in recent years, it is not surprising to see that Apple has earned a considerable premium over the amount required to satisfy the opportunity cost of all resources employed by the company. Finally I deduct the amount of the premium earnings that Interbrand has calculated that are due to the value of Apple's overall brand. I explain my conversion of Interbrand's reported value of Apple's brand to an annual profit percentage on **Exhibit 41.5**. The remaining residual profit percentage represents the amount of Apple premium profit earned on all products sold after deducting all operating expenses, taxes, all amounts required to provide a return necessary to satisfy the opportunity cost of all resources employed by the Apple, and the return associated with Apple's brand.

187. After completing my analysis of Apple's overall results, I performed a similar calculation for Apple's iPhone and iPad products and Samsung's Accused Products. **Exhibit 41.3** details the same

---

[181] Wiley Finance – Financial Valuation – Applications and Models, Second Edition, James R. Hitchner, Page 1127.
[182] Apple Inc. Form 10-K, fiscal year ended 9/24/11, p. 43.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

64

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    calculations for the products at issue that were described above for Apple as a whole. However, there

2    are several additional steps involved in reaching a final per unit rate for the design patents and trade

3    dress and the utility patents. I make an additional adjustment to the residual profit for both Apple and

4    Samsung. The Apple companywide profit premium is a blended premium for all Apple products. I

5    compared Apple's premium profit on the iPhone and iPads with Apple's companywide blended

6    premium profit and determined that ██████████████████████████

7    ██████████████████████████████. To further isolate the premium residual

8    margin on just the iPhone and iPad products, I deducted the companywide premium margin from the

9    total residual premium on the iPhones and iPads. This resulted in the isolation of a residual premium

10   on just the iPhones and iPads. A similar calculation was made to Samsung's accused products using

11   Apple's ratio of brand and residual to total operating margin as a means of allocating Samsung's

12   accused product EVA or residual premium profit on accused products.

13   188.  I next converted the premium residual profit rates to per unit royalty amounts. **Exhibit 41.2** displays

14       the results of multiplying the Interbrand brand rate times the average selling price of Apple's

15       combined iPhones and iPads to produce a final per unit royalty reference amount for Apple's design

16       patents and trade dress of $22.00. The final per unit royalty reference amount for Samsung for the use

17       of Apple's design patents and trade dress is $9.00. These rates, as previously explained, are based on

18       the value assigned by Interbrand to Apple's brand. The entire rate is applicable to the design patents

19       and trade dress because Apple has not and would not agree to allow their brand to be partially eroded.

20       Apple's brand, as discussed elsewhere in this report, is considered one of the most valuable brands in

21       the world. Apple has built a distinctive brand identity through its revolutionary and distinctive design

22       applied across the entire Apple ecosystem. Further, Apple has consistently refused to consider

23       allowing anyone, let alone a direct competitor, to confuse the market and license any aspect of its

24       product design.[183] Finally, the design patent and trade dress rate is the same rate for each of the

25       individual design patents and items of trade dress as well as the total. The economic impact of an

26       infringement of one of the items is equal to the impact of the design patents and trade dress as a

---

[183] Deposition of Chip Lutton, Jr., July 26, 2011, p. 52.; Discussion with Boris Teksler.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   whole. Therefore, the reasonable royalty damage calculation for the design patents and trade dress

2   treat all design patents and trade dress as if they were licensed as a bundle at one rate. That rate is

3   applied only once for all accused products and not for every design patent and item of trade dress.

4   This avoids any duplication in the overall calculation of damages. However, the rate would be the

5   same for only one design patent or item of trade dress should the final trial outcome involve only one

6   of the individual design patents or items of trade dress.

7   189. **Exhibit 41.2** also displays the results of multiplying the residual premium profit rate associated with

8   just the iPhones and iPads to the average selling price of the combined products. The iPhone and iPad

9   products were combined to reflect the economic association of the two products. As discussed

10   throughout my report, Apple and Samsung develop, market and sell these products as part of an

11   overall ecosystem. A customer gained through a smartphone sale represents a likely future or

12   contemporaneous sale of a tablet and other related products within the ecosystem. Because of this

13   close economic association, Apple would not license the patents on a product by product basis to a

14   direct competitor.

15   190. I determined the Apple reference rate for Apple's utility patents by multiplying the residual profit

16   premium for combined iPads and iPhones times the average selling price of Apple's combined

17   iPhones and iPads to produce a final per unit royalty reference amount for Apple's utility patents of

18   $40.00. The final per unit royalty reference amount for Samsung for the use of Apple's utility patents

19   is $7.00. The reference rates for Apple and Samsung were then allocated between the various utility

20   patents based on the relative strength of each utility patent and is summarized on **Exhibit 41**.

21   *Hypothetical negotiation*

22   191. After identifying the above conceptual range of benefit values associated with the alleged use of the

23   accused utility patents, design patents, trademark registrations, and trade dress registrations by

24   Samsung, I next performed a hypothetical license analysis.

25   192. I based the hypothetical negotiation on a proper negotiation at the date that Samsung first began to

26   infringe Apple's patents in June of 2010, consistent with my understanding of the legal criteria

27   applied in the present circumstances.  I assume that the parties would negotiate over all patents at

28   that time even though some patents issued later in 2010 and 2011.  Given the scope of competition

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

between the parties, the reasonable royalty arising from a hypothetical negotiation regarding these later patents would only increase the reasonable royalty that would result from the analysis that I have performed.  I also assume that the parties would have negotiated regarding all products at the same time.

193.  I approached the hypothetical negotiation by first considering the economic expectations of the Plaintiff and the Defendants within a hypothetical setting.  The above reference range information provided a meaningful starting point in considering the hypothetical negotiation between the licensee and the licensor. The reference range is part of the negotiation framework.

194.  The reference range information calculated above should not be considered as a floor or a ceiling, but rather as a framework for the determination of the reasonable royalty damage amount under a hypothetical negotiation.  A licensor (Apple) would prefer to receive the maximum they could achieve and the licensee (Samsung) would prefer to pay nothing at all.  The resulting reference range is based on the minimum a licensor should be willing to consider and the maximum a licensee should consider paying based on the relevant valuation data.  The determination of these conceptual reference points is discussed in the American Institute of Certified Public Accountants' intellectual property consulting guide, "*Valuing Intellectual Property and Calculating Infringement Damages*."[184]   The licensee should be willing to consider paying up to a maximum amount that would still provide for "an acceptable economic return on all resources used in the production, distribution, selling, management, and financing of the product."[185] The minimum a licensor should be willing to receive would be equal to the next best alternative to the use of the patent at issue.

195.  I performed a Georgia-Pacific analysis (*Georgia-Pacific Corp. v. United States Plywood Corp.*) before determining the final amount of royalty adequate to compensate for infringement.[186]  The Georgia-Pacific case identified 15 factors that are frequently used when determining the appropriate reasonable royalty rate in the context of a hypothetical negotiation.

---

[184] AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999), p. 78.
[185] AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999), p. 78.
[186] *Georgia-Pacific Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*Georgia-Pacific Analysis*

196. The Georgia-Pacific case is an often-cited approach used in developing a reasonable royalty damage amount resulting from the hypothetical negotiation. The Georgia-Pacific factors provide a listing of criteria that a willing licensor and willing licensee would be likely to consider in negotiating a royalty.  I have used the Georgia-Pacific factors as a framework in which to consider the starting conceptual reference points and ultimately determine an amount adequate to compensate for the infringement. The 15 Georgia-Pacific factors and the consideration that I gave each are described below.

197. All four categories of intellectual property (i.e., utility patents, design patents, trade dress and trademarks) qualify for a reasonable royalty form of damage, although it is considered an alternative basis for trade dress and trademarks when other methods are not available. I have analyzed each category of damage separately and considered the relevance of each item of intellectual property within each category on smartphones and tablets. My analysis of each category of intellectual property and the individual items within each category to the extent necessary resulted in the following conclusion concerning the application of a specific rate for each item to smartphones and tablets.

- <u>Utility Patents</u> – Five of the seven utility patents relate to both smartphones and tablets and all seven relate to tablets. I have evaluated the five utility patents that apply to both smartphones and tablets on an individual patent by patent basis and determined one rate that would be applicable to both smartphones and tablets. I evaluated the two utility patents that applied only to tablets individually and determined the rate that would apply to only tablets for each of these two patents.

- <u>Design Patents, Trade Dress, and Trademarks</u> – Each of the design patents and each of the trade dress relate specifically to either smartphones or tablets but not both. The trademarks relate to both smartphones and tablets.  I have evaluated the group of design patents, trade dress, and trademarks both individually and as a group. I have determined one rate that applies to the entire group of design patents, trade dress, and trademarks for smartphones and tablets.

198. The results of each Georgia-Pacific factor and its impact on each item of Apple Intellectual Property In Suit is reflected on **Exhibits 42 and 43**.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

68

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Factor 1: The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.**

199. I have reviewed Apple's disclosed licenses and determined that there are no royalties received by Apple for any of the Apple Intellectual Property In Suit that would prove or tend to prove an established royalty for this specific intellectual property. The three disclosed licenses are settlements and/ or cross licenses of patent portfolios wherein Apple licenses a portfolio of licenses in return for the right to practice the licensee's portfolio of licenses. The licenses are based on an even exchange wherein no royalty is paid or a combination of lump sum and limited running royalty payments for the portfolio of patents or are a settlement of litigation.

200. I understand from my discussion on March 20, 2012, with Boris Teksler, Director of Patent Licensing & Strategy for Apple that it is Apple's policy not to license this specific Apple's Intellectual Property In Suit as individual patents. This point is particularly true with respect to any direct competitors of Apple as evidenced further in the license negotiations with Samsung.

201. This factor demonstrates that there is no established license for any of the asserted Apple intellectual Property In Suit.

**Factor 2: The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.**

Utility Patents applicable to both smartphones and tablets ('002, '381, '915, '891, and '163)

202. I have reviewed Samsung's disclosed license and determined that there are no royalties paid by Samsung for the use of other intellectual property comparable to the specific Apple Intellectual Property In Suit in the manner discussed above. Further I understand that Mr. Lee testified that Samsung has no licenses comparable to the license that Samsung would need for the Apple Intellectual Property in Suit.[187]

203. This factor demonstrates that there are no rates paid by Samsung for the use of other intellectual property comparable to the Apple Intellectual Property In Suit.  I state no opinions regarding whether and to what degree they may be comparable or useful in evaluating any reasonable royalty

---

[187] Deposition of Jun Won Lee, March 6, 2012, pp. 174-175.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                      69

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    that Samsung seeks for the patents that it has asserted against Apple.

2    **Factor 3: The nature and scope of the license, as exclusive or nonexclusive; or as restricted or**

3    **nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.**

4    204.  The terms of a license for all categories of intellectual property for both smartphones and tablets

5        would be non-exclusive and unrestricted in terms of sales of products developed and/or

6        sold/provided in the U.S.  The rate on a non-exclusive and unrestricted license is generally lower

7        than an exclusive license.

8    205.  This factor does not provide support for a specific rate for the Apple Intellectual Property In Suit.

9        The assertion of the Apple intellectual Property In Suit is based on U.S. law. However, there are

10        international economic benefits associated with the use of the Apple Intellectual Property In Suit in

11        smartphones and tablets in the U.S. As discussed earlier in this report, both Apple and Samsung

12        pursue a global ecosystem approach wherein the sale of one product promotes the sale of additional

13        items within the ecosystem throughout the world. Accordingly, the scope of the license is limited

14        based on the geographic restrictions resulting from the application of U.S. law. However, there are

15        international economic benefits to Apple and to Samsung for the use of the relevant technology.

16        Consequently, the scope of the hypothetical license for the Apple Intellectual Property In Suit is

17        neutral.

18    **Factor 4: The licensor's established policy and marketing program to maintain its patent monopoly**

19    **by not licensing others to use the invention or by granting licenses under special conditions designed**

20    **to preserve that monopoly.**

21    206.  I am not aware of any established or written policy concerning Apple's licensing of the Apple

22        Intellectual Property In Suit or other Apple intellectual property to others outside of the context of

23        licensing of technology declared essential to certain standards.  I further understand from my

24        discussion with Boris Teksler that Apple has never licensed any of its intellectual property as

25        individual patents. The only licenses that Apple has considered or executed were cross licenses

26        involving the exchange of a portfolio of patents and such cross licenses have never included design

27        patents, trade dress or trademarks for mobile devices such as smartphones or tablets.

28    207.  Further, I understand that Apple's policy is to use the intellectual property it generates to protect

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

proprietary features of its products and designs.  Apple therefore does not have a practice of permitting others to use its intellectual property and primarily generates revenue using its intellectual property from product sales and not from licensing activities.

208.  Further I understand that Apple currently maintains a list of patents that Apple will not license to other companies.  This list has been disclosed in negations with other competitors and includes certain of the Apple Intellectual Property In Suit including the '915, '381 and '163 utility patents, all design patents, and its trade trade dress and trademarks.

209.  This factor does not provide support for a specific rate but does strongly indicate Apple's unwillingness to negotiate a license at essentially any price versus holding the Apple Intellectual Property In Suit for Apple's exclusive use.

**Factor 5: The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.**

210.  Apple and Samsung directly and aggressively compete in both the smartphone and tablet markets. In deposition, Brian Rosenberg, Samsung Telecom Americas' Senior Vice President of Sales for Mobile, [188] stated that "every Samsung phone competes" against the iPhone 3GS.[189] When asked "What Samsung products compete against the iPad 2," Mr. Rosenberg responds, "So I would say the products we have in the market today on the tablet are [sic] the 8.9-inch tablet and the 10.1-inch tablet."[190] The opposing expert, Mr. Wagner, also acknowledges in his deposition that Samsung is currently a key competitor to Apple both with respect to the iPhone and iPad.[191] Both stock analysts and other market analysts identify these two companies as being direct competitors.[192] According to Strategy Analytics, "Apple's key competitors include Nokia, Samsung, RIM, HTC in Smartphones."[193] For the tablet market, the Samsung Galaxy Tab is listed among the "contender[s]

---

[188] Deposition of Brian Rosenberg, January 27, 2012, p. 8.
[189] Deposition of Brian Rosenberg, January 27, 2012, pp. 72-73.
[190] Deposition of Brian Rosenberg, January 27, 2012, p. 77.
[191] Deposition of Michael J. Wagner, September 14, 2011,  pp. 149-150 and pp. 182-183.
[192] Gartner Press Release. "Gartner Says Worldwide Mobile Phone Sales Grew 35 Percent in Third Quarter 2010; Smartphone Sales Increased 96 Percent" November 10, 2010. J.D. Power, "2009 Wireless Consumer Smartphone Satisfaction Study Volume 1," April 30, 2009 (SAMNDCA00190150 and 156 of SAMNDCA00190144-243).
[193] Strategy Analytics, "Competitor Profile: Apple," July 20, 2011 (SAMNDCA00177805 of SAMNDCA00177800-07).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  to the iPad" by Ipsos.[194] RBC Capital Markets Equity Research states regarding the tablet market,

2  "After Apple's expected continued leadership, we see RIM, HTC, Motorola, Samsung, and HP as

3  strong contenders."[195]

4  211.  The significant level of competition is also represented by the obsessive focus Samsung has on

5  beating Apple. Samsung's view of its competition with Apple is reflected in both its internal

6  documents and its actions. The Samsung Mobile Marketing Group stated in its presentation, "Apple

7  is the main competitor of Samsung in terms of touch phone."[196] In another internal presentation

8  titled "Beat Apple," STA proposes a "Beat Apple" strategy framed around three initiatives: "(1)

9  Divert Apple's inflow of subscribers (divert Apple net adds) (2) Increase Apple's outflow of

10  subscribers (increase Apple churn) (3) Plug STA's leak (increase STA loyalty)."[197] In fact, in a slide

11  titled "STA 2011 Goals for All Departments," the first goal listed for Wireless Terminals is "#1 in

12  Smartphones (Beat Apple)."[198] Also significant is the tone of Samsung's advertising campaign

13  launched around Thanksgiving of 2011. Mr. Rosenberg admitted that Samsung calls the campaign

14  the "Fanboys campaign" or the "Next Great Thing campaign." He describes "Fanboys" as "the

15  people who blindly buy Apple products because they're Apple products."[199] Younghee Lee, who

16  runs marketing for Samsung Mobile globally,[200] stated in an email regarding the Apple Fanboys

17  campaign, "For STA to be truly successful in beating Apple in FY' 12 we need to showcase our

18  relentless product innovation stories (GS II, Galaxy Nexus, Galaxy note, Midas) so we can continue

19  to deposition Apple as a leader and position Samsung as a brand of choice for

20  consumers/retailers."[201]

21  212.  The timing of the hypothetical negotiation is significant as well.  As discussed earlier, the adoption

22  of smartphone technology by consumers was increasing rapidly in 2010 and early 2011.  The

23

24  [194] Ipsos OTX MediaCT, "Are we going to take to the tablet?" March 2011 (SAMNDCA00237354 of SAMNDCA00237349-60).
[195] RBC Capital Markets, "Wireless Industry – Tablet Wars: Differentiate, Scale…or Die," March 3, 2011 (SAMNDCA00501719 of SAMNDCA00501719-806).

25  [196] Samsung Mobile – Mobile Marketing Group, "Global Segmentation Update – Focused on Smartphone & Tablet U&A," August 2011 (SAMNDCA10056663 of SAMNDCA10056653-710).

26  [197] Deposition of Justin Denison, January 25, 2012, Exhibit 1266 (SAMNDCA10374461 of SAMNDCA10374460-98).
[198] Samsung Electronics, "2011 Strategy Planning" (SAMNDCA00256507 of SAMNDCA00256503-51).

27  [199] Deposition of Brian Rosenberg, January 27, 2012, p. 56.
[200] Deposition of Brian Rosenberg, January 27, 2012, p. 58.
[201] Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1281 (SAMNDCA10453262 of SAMNDCA10453260-5).

28

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                     72

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

industry was undergoing a transition in which millions of consumers would purchase smartphones and these devices would become the pervasive form of mobile device.  Similarly, the tablet computer market was growing dramatically following the introduction of the iPad.  These circumstances, combined with the loyalty that consumers tend to show to the operating system platform that they choose and the efforts to build broader ecosystems, makes this an important period for both companies in the marketplace.  Under these circumstances, Apple would be even more reluctant to permit a competitor to use intellectual property that it considered proprietary and important to promoting its own brand and products.

213.  This factor does not provide support for a specific rate but does confirm and reinforce Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor with the number one goal of beating Apple.

**Factor 6: The effect of selling the patented specialty in promoting the sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.**

214.  The focus of this factor is the extent to which Samsung's use of the accused products generated sales of Samsung's other products.  An element of this economic factor is the strength of any causal relationship between the sale of non-patented items and the accused technology.  The royalty rate and the amount of damages in this case would increase based on the extent of a demonstrated causal connection between Samsung's non-patented revenue sources and the use of the accused features.  On this point, there is little to no disagreement between Apple and Samsung. Both litigants have built a comprehensive strategy around the extent to which the sale of smartphones and tablets contribute to the sale of additional products in the future and the sale of non-patented items such as convoyed and derivative sales.

215.  Samsung is well aware of the beneficial impact that sales of the accused devices have on the sale of Samsung's entire ecosystem of products. Samsung documented the strong economic relationship between the sale of accessories and smartphones in a document entitled "Smart Phones Drive Higher

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  Accessory Purchases."[202] Another Samsung document referenced the increase in Apple brand

2  loyalty due to the use of iPhone, iPhone 3G and the iPhone 3GS accessories. The document stated

3  that "Accessory Reuse Creates Brand Stickiness" and indicated that the use of iPhone accessories

4  was a "compelling reason for consumer to stay with their current brand."[203] Another Samsung

5  document indicated that "accessories enhance user experience" by facilitating the use of the device

6  and accessories in the home, in the car, as entertainment and through increasing productivity.[204]

7  216.  As discussed elsewhere in this report. Apple's pursuit of the Apple ecosystem is a central

8  component of Apple's overall business strategy. Chip Lutton testified to the following.

9  Q       What do you mean by "the ecosystem"?

10  A       I mean -- by "ecosystem," I mean generally the -- the -- the set of services and related

11  products that are sold either by Apple or by third parties that are made to work with or on iPhone

12  devices.

13  Q       What are some of the examples of those other Apple products and services –

14  A       So for Apple –

15  Q        -- as part of the ecosystem?

16  A       So for Apple, it would be iTunes, iAdd, the App store. For third parties, it would be third-

17  party apps that run on the iPhone or other iOS devices, and in competing for attention from those

18  third-party App developers, one of the key things that matters to them is the vitality and market

19  share of the platform. So sales that go to a different platform instead of to Apple's iPhone platform

20  damage Apple in -- in that way, too. [205]

21  217.  Third party analysts have also commented on the significance of apple's ecosystem. "Apple's

22  dramatic expansion of iOS with the iPad, and the continuing success of the iPod Touch, are

23  important sales achievements in their own right with both consumers and enterprises.  But more

24  importantly they contribute to the strength of Apple's ecosystem and the iPhone in a way that

25  smartphone-only manufacturers cannot compete with….While Android is increasingly available on

26

27

28

---

[202] 2011 Smartphone Portfolio Strategy, STA Product and Strategy, May 2010 (SAMNDCA00530591 – 672 at 615).
[203] 2011 Smartphone Portfolio Strategy, STA Product and Strategy, May 2010 (SAMNDCA00530591 – 672 at 615).
[204] 2011 Smartphone Portfolio Strategy, STA Product and Strategy, May 2010 (SAMNDCA00530591 – 672 at 614).
[205] Deposition of Chip J. Lutton, Jr., July 26, 2011, pp. 328-329.

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                    74

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

media tablets and media players like the Galaxy Player, it lags far behind iOS's multi-device presence.  Apple claims it is activating around 275,000 iOS devices per day on average – that's a compelling market for any developer.  And developers' applications in turn attract users."[206]

218. Another independent market research firm stated the following: "Currently Apple has the strongest potential of creating the most compelling consumer market ecosystem by evolving into a wireless multimedia "hub" for the consumer.  In addition to its efforts to expand its content offerings beyond music into the area of movies/videos and streaming content, it is also building an ecosystem for wireless distribution connected via Wi-Fi in the LAN and cellular in the WAN."[207]

219. The far reaching benefits associated with the growing success and acceptance of Apple's operating system achieved through the introduction of Apple's innovative smartphone and tablet product offerings is reflected in Apple's growing inroads into the business computing world. Apple's Mac sales were once dismissed as a cult following or educational niche market. Today, as a result of Apple's dominant role in the wireless device market, Apple is challenging Microsoft in an area once considered untouchable. USA Today recently reported that Apple is moving into the business market segment once dominated by Microsoft. USA Today reported that "Microsoft's corporate Windows business is losing ground to Apple. Apple is hiring sales executive across the U.S. to get more of its products into *Fortune* 1,000 companies."[208] The following Forrsights Hardware Survey provides further proof of Apple's growing success in the business market segment.

---

[206] Gartner Dataquest, Competitive Landscape: Mobile Devices, Worldwide, 3Q10, November 9, 2010 (SAMNDCA00235579-596 at 593-594).
[207] Nokia, RIM & Apple Thrive With value Added Services In Complex Handset Landscape, Strategy Analytics, May 2008 (SAMNDCA00189104-115 at 113).
[208] USA Today, "Apple carving into Microsoft's niche: Corporate workplace," by Scott Martin, dated 1/30/12.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



220. Earlier in my report I discussed my lost profits calculation and discussed the impact of convoyed sales to Apple. The presence and significance of convoyed sales is reinforced by the fact that Apple accounts for some, but not all, of the accessories sold as a consequence of Apple's smartphones and tablets that embody the Apple Intellectual Property In Suit in the ordinary course of business. I did not include convoyed sales in my lost profits calculation due to the complexity of the calculation and my inability to segregate convoyed sales made with and/or for current sales versus prior sales. Nonetheless, the economic relationship exists, even if the quantification to a reasonable degree of certainty is much harder. The inability to calculate and include convoyed sales in my lost profit damages is one of the reasons that Apple has been irreparably harmed and will continue to be irreparably harmed absent injunctive relief. Further, while it is not possible to capture all of the lost convoyed profits in a reasonable royalty damage, the very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products supports a higher reasonable royalty rate that reflects this major economic benefit.

**Factor 7: The duration of the patents and the term of the license.**

221. I have reviewed the duration and term of license for each item of intellectual property. The issuance dates and legal lives are reflected on **Exhibit 44**.

222. I have summarized my conclusion by each category because the remaining legal and economic lives of each item within the respective categories is generally the same.

Utility Patents applicable to both smartphones and tablets ('002, '381, '915, '891, and '163)

223. This factor does not provide a specific rate. However, the length of remaining legal life of each of

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the utility patents reinforces the other economic benefits identified in the other factors. The legal life is not the sole determining factor of the economic life. The steady pace of technological development in the wireless device industry has lead to short product life cycles (one to two years) and the consequential increased risk of technological obsolescence. On the other hand, the pace of technological development reinforces the need for each new development to be legally enforced and respected to permit the intellectual property owner the opportunity to capture the full economic benefit within the shortened time periods. The long legal life coupled with the risk of a shortened economic life in a rapidly expanding market places upward pressure on the royalty rate to avoid missing the window of economic opportunity related to each patent.

Utility Patents applicable to only tablets ('607 and '129)

224. I reach the same conclusion as the smartphone conclusion above.

Design Patents and Trade Dress applicable to smartphones (Design Patents: '790, '334, '305, '677, '087, and '270 Trade Dress: Original iPhone, iPhone 3G, iPhone 4, iPhone Combo)

225. This factor does not provide a specific rate. However, the length of remaining legal life of each of the design patents reinforces the other economic benefits identified in the other factors. The legal life is not the sole determining factor of the economic life. Design patents' economic power stems from the extent of market acceptance and demand for a particular design. Apple has built a considerable and at times a cult-like following to all things Apple. As discussed throughout this report, Apple's success is the result of a number of factors. However, one of significant factors is Apple's obsessive attention to design details.  John Maeda, President of the Rhode Island School of Design, recently addressed the importance of design to Apple when he stated that Steve Jobs' single greatest design achievement "is the Apple organization, an organization that actually cares about design more than technology."[209]

226. The long legal life coupled with the established commercial success and emphasis on design by Apple places upward pressure on the royalty rate to preserve the established value of these valuable design patents.

---

[209] How Steve Jobs Changed the World of Design, October 7, 2011 (http://www.npr.org/2011/10/07/141144758/remembering-how-steve-jobs-changed-the-design-world).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Design Patents and Trade Dress applicable to tablets (Design Patent '889 and Trade Dress iPad and iPad2)

2    227.  I reach the same conclusion as the design patent conclusion above.

3    Trademarks for smartphones and tablets

4    228.  I reach the same conclusion as the design patent conclusion above.

5    **Factor 8: The established profitability of the product made under the patent, its commercial success,**

6    **and its current popularity.**

7    229.  This factor highlights one of the most significant aspects of the products made under the Apple

8          Intellectual Property In Suit. Both Apple and Samsung have enjoyed significant commercial success

9          by any measure of the term.

10   230.  Both Apple and Samsung's smartphones and tablets have consistently produced high profit margins

11         for both companies. ████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████. **Exhibit 37** displays a Samsung gross

14   ████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████

19   231.  **Exhibit 12** dramatically demonstrates the overall growth of smartphones in the U.S. **Exhibit 11.1**

20         indicates that Apple and Samsung are number one and two, respectively, in market share for

21         smartphones. Significantly, Apple's market share for the most recent quarter available, fourth

22         quarter 2011, is approximately twice the size of Samsung's (45.3% for Apple versus 19.2% for

23         Samsung). However, the line chart on **Exhibit 11** demonstrates that Samsung has appeared to have

24         taken smartphone market share away from Apple during three quarters of 2011. **Exhibit 13.1**

25         confirms that Apple has revolutionized and dominated the tablet market since the beginning of 2010.

26         Apple's fourth quarter 2011 market share is 73.7 percent while Samsung's is only 2.0 percent. As to

27   [210] Deposition of Timothy Sheppard, February 29, 2012, p. 127-128

28   ████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    be expected, the line chart on **Exhibit 13** demonstrates that as additional parties have entered the

2    market, Apple has begun to lose market share.

3    232.  Apple's commercial success is apparent from the above statistics and confirmed by Samsung's own

4          strategy documents. In a July 2011 STA Report to Headquarters, Samsung stated "Focus on

5          preventing smartphone buyers from becoming Apple 'loyalists.' Apple loyalty is strong, which

6          provides challenges to get iPhone users to switch."[212] Further, a Samsung "iPhone 4.0 Quick Report

7          & Analysis" stated, the "Buzz for iPhone still dwarfs all other competitor products."[213]

8    233.  Finally, leading world news organizations have consistently followed and reported on each Apple

9          product launch. CNN recently reported "…the scene outside Apple's New York City flagship store

10         did have something of the air of a religious event on Thursday. An hour before the iPhone 4 was

11         slated to go on sale, more than 600 aspiring buyers filled the plaza outside the iconic Fifth Avenue

12         glass cube -- and a line of hundreds more stretched on behind them, filling an entire city block.

13         Passersby chattered with the gathered throngs while marketers circled: AOL (AOL) earned fans by

14         handing out 500 Magnolia Bakery cupcakes. Vuvuzelas blared, and the crowd cheered and

15         applauded as opening hour neared."[214]

16   234.  As demonstrated above, this factor provides strong support in the present case for a reasonable

17         royalty rate that weighs in favor of the income approach and calculated as a part of my reference

18         point analysis.

19   **Factor 9: The utility and advantages of the patent property over the old modes or devices, if any,**

20   **which had been used for working out similar results.**

21   235.  Due to the nature of this factor, I have evaluated and concluded on each utility patent separately. I

22         discuss my evaluation and conclusion regarding the design patents, trade dress and trademarks as a

23         group.

24   236.  My analysis of the utility and advantages of the patented property over the old modes or devices is

25         based on my understanding of the various technical experts' opinions regarding this factor. During

---

[212] Deposition of Justin Denison, December 16, 2011, Exhibit 8 (S-ITC-001016096-144 at 110).
[213] Samsung "iPhone 4.0 Quick Report & Analysis," dated June 2010 (SAMNDCA10390235-304 at 290).
[214] Thousands flock for iPhone 4 debut" David Goldman and Stacy Cowley, CNNMoney, dated June 24, 2010.
(http://money.cnn.com/2010/06/24/technology/apple_iphone/index.htm#)

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK                                                                                    79

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   my discussion with each technical expert, I asked each expert to provide an opinion concerning the

2   relative significance of each patent within their own field of expertise and the extent to which the

3   patent contributes to the functionality of the wireless device. I have summarized my understanding

4   of the utility and benefits on **Exhibit 45**.

5   237.  Utility Patent Conclusions

6   238.  '002 – Based on my discussion with Apple's technical expert, Alex Snoeren, I understand that the

7   patent helps to provide a cohesive experience for the user when there are many different applications

8   running.  The '002 teaches a way for different applications to give information to the user in an

9   unobtrusive way.  As a result, this feature enhances the ease of use and value of a smartphone or

10   tablet computer.

11   239.  '891 – Based on my discussion with Apple's technical expert, Karan Singh, I understand that the

12   patent provides useful ways for providing unobtrusive visual feedback to the user input in a digital

13   processing system, such as a desktop or laptop computer, a smartphone, or a tablet computer.  It

14   does so by conveying information on a new window for the user that automatically disappears

15   without the need for action by the user.  As a result, this feature enhances the user interface and

16   experience in smartphones and tablets.

17   240.  '381 – Based on my discussion with Henri Lamiraux from Apple and Apple's technical expert,

18   Ravin Balakrishnan, I understand that this patent provides an elegant and appealing form of visual

19   feedback to a user that there is no more of an electronic document to be seen.  For example, if a user

20   is zoomed in on one part of a large photo, he may continue to scroll the photo as he looks at other

21   parts of the image.  Not knowing exactly where the photo ends, he may continue to scroll in a

22   direction even when there is no more of the photo to display.  When this happens, an area beyond

23   the edge of the photo will be displayed, and once the user lifts his finger, the photo will "bounce" or

24   "rubber band" back to fill the screen.  This form of visual feedback is readily understood and makes

25   clear to the user that he cannot continue to scroll in that direction.  As a result, the inventions of the

26   '381 patent make possible a user interface that is more visually appealing and intuitive in its

27   handling of the display of electronic documents.  This provides a major enhancement to the quality

28   of the user interface.  Apple also considers this invention to be closely associated with Apple

EXPERT REPORT OF TERRY L. MUSIKA, CPA
Case No. 11-cv-01846-LHK

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    products in the marketplace.

2    241.  '915 – Based on my discussion with Henri Lamiraux from Apple and Apple's technical expert,

3        Karan Singh, I understand that the patent provides functionality that is central to the accused

4        products:  the ability to distinguish automatically between a one-finger scroll call and a two-finger

5        gesture such as a zoom or rotate gesture.   This functionality is highly intuitive.  Scrolling, zooming

6        and rotating are among the most common actions users take with touchscreens and smartphones, and

7        are used in multiple applications.  I further understand that any effort to redesign would make the

8        '915 Accused Products much less useable, render them inconvenient for users, and deprive them of

9        intuitive functionality that smart phone and tablet users have come to expect.   The alternatives

10       would provide a much less satisfying user experience than devices that practice the '915 patent.

11       Further, given how frequently the functions are used in the interface, I understand it would be

12       difficult and time consuming to replace.

13   242.  '163 – Based on my discussion with Apple's technical expert, Karan Singh I understand that the

14       patent provides for an efficient means for users to navigate structured electronic documents on a

15       touchscreen display.  I further understand it is possible to implement other methods to navigate in

16       structured electronics documents using touch gestures, but they would not have been as elegant or

17       intuitive.  I also understood that Samsung evaluated alternatives and concluded that they were

18       inferior and instead revised the user interface to include the '163 patent's features.   It is my

19       understanding that the invention significantly enhances the user interface of a touchscreen

20       smartphone and tablet.

21   243.  '607– Based on my discussion with Apple's technical expert, I understand that the patent provides

22       technology for a touchscreen used to obtain accurate information on multiple touches on a

23       touchscreen device.  This patent is being asserted by Apple only with respect to Samsung's tablet

24       computers.  I understand from my discussions with the Apple technical expert that no commercially

25       viable, alternative, non-infringing touchscreen technologies were in existence when the Samsung

26       Galaxy Tab devices entered the market.  None of the alternative available touchscreen technologies

27       afforded true multi-touch functionality.    For these reasons, Samsung did not have a commercially

28       viable alternative to these technologies embodied in the Apple iPad and iPhone products for a ten

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    inch tablet.  I understand that Samsung introduced a 7.7 inch tablet with an AMOLED display in

2    early 2012, which was released in Australia in or around January 2012 that does not make use of the

3    '607 technology, but that it was not released in the United States until this month.

4    244. '129 – Based on my discussion with Apple's technical expert, I understand that the patent provides

5    technology for a touchscreen display to address the issue of interference from the LCD display

6    sensing multitouch inputs.  Through the use of the patent, the device can be thinner, and the screen

7    requires fewer layers.  I understand that this patent is being asserted by Apple only with respect to

8    Samsung's tablet computers.  I understand from my discussions with Apple's technical expert that

9    there would be significant disadvantages to designing without using the patent's technologies when

10   the Samsung Galaxy Tab devices entered the market.  None of the alternative display technologies

11   to LCD was mature enough for use in tablet-size devices, and using a touchscreen on top of an LCD

12   panel was problematic because the display needed to have an extra layer of shielding to protect the

13   sensitive touch screen electrodes from the electrical interference from the LCD.  Adding this extra

14   layer would result in a less visually desirable screen, increased manufacturing costs, and a heavier

15   and thicker device.

16   245. <u>Design Patent, Trade Dress and Trademark Conclusion</u>

17   246. Design patents, trade dress and trademarks relate to the aesthetics of the product not to core

18   functionality. However, design elements can contribute to the quality of the consumer's experience

19   and demand for the product. Because of the nature of the design patents, trade dress and trademarks,

20   I did not rely on the opinions of technical experts. I did, however, investigate and note the extent to

21   which the design elements represented by the design patents, trade dress and trademarks were

22   demanded by the consumer and referred to in material produced by Samsung. I further investigated

23   the extent to which Apple and Samsung identified Apple's smartphone and tablet design as

24   important factors in the sale of these devices. Finally, I investigated the extent of information in the

25   public domain concerning the extent to which Apple's smartphone and tablet design as important

26   factors in the sale of these devices.

27   247. **Exhibit 24** is a list of examples from both Apple and Samsung that demonstrate the importance of

28   design in consumer demand. There are numerous public articles that discuss the importance of

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

design to Apple. For example, an internet website entitled "Smart Social Branding" described Apple's focus on design as follows. "It's a known fact around Apple that 'design is everything'. Most companies don't have a design culture, but for Apple it's a different story. Steve Jobs knows the importance of design and its impact on the business community. For him, design can make or break a company. With this kind of mentality, all the designs of Apple products have to go through its CEO for approval. Out of all the companies under Fortune 500, Apple is the only company where every design has to be approved by its leader. Experts say that this strategy worked well for the company because Steve Jobs is a systems designer and thinker. He opted to simplify intricacies."[215] John Sculley, the former CEO of Apple, described his experience with Apple and design as follows. "A friend of mine was at meetings at Apple and Microsoft on the same day and this was in the last year, so this was recently. He went into the Apple meeting (he's a vendor for Apple) and when he went into the meeting at Apple as soon as the designers walked in the room, everyone stopped talking because the designers are the most respected people in the organization. Everyone knows the designers speak for Steve because they have direct reporting to him. It is only at Apple where design reports directly to the CEO. Later in the day he was at Microsoft. When he went into the Microsoft meeting, everybody was talking and then the meeting starts and no designers ever walk into the room. All the technical people are sitting there trying to add their ideas of what ought to be in the design. That's a recipe for disaster."[216] Finally, a recent New York Times article paid tribute to Steve Jobs and his passion for design. "His design legacy may be chiefly remembered for Apple's immaculate styling, but Jobs constantly stressed the importance of more topical issues, such as usability and the relationship between tiny objects like iPods and iPhones, and a vast virtual network like iTunes."[217] Design is closely associated with Apple, with its success and with its brand.

248. This factor does not provide a specific rate for any of the items of design patents, trade dress and trademarks. However, based on the acute focus by Apple on the design elements of its products, the

---

[215] "Apple: The Secret Behind its Success", Smart Social Branding (http://smartsocialbranding.com/business-in-general/apple-the-secret-behind-its-success/)

[216] "John Sculley on Steve Jobs, The Full Interview Transcript" Leander Kahney, Cult of Mac, dated October 14, 2010. (http://www.cultofmac.com/63295/john-sculley-on-steve-jobs-the-full-interview-transcript/).

[217] "From Apple to Occupy, the Design Honors List for 2011", Alice Rawsthorn, The New York Times, dated December 25, 2011.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  significant degree of success as evidenced by consumer demand and acceptance for Apple's design

2  elements, Apple's design elements included in the design patents, trade dress and trademarks give

3  Apple a distinct advantage over competitors and strongly support a higher royalty rate.  Similarly the

4  strength of Apple's utility patents, its importance to the user interface and the degree to which Apple

5  treats these aspects as proprietary, all strongly support a higher royalty rate.

6  **Factor 10: The nature of the patented invention, the character of the commercial embodiment of it**

7  **as owned and produced by the licensor, and the benefits to those who have used the invention.**

8  249.  The character of the commercial embodiment of each category of Apple Intellectual Property In Suit

9  is either a smartphone, a tablet, or both. As discussed at length above, both products produce

10  substantial profits for both Apple and Samsung and are commercially successful.

11  250.  Apple has consistently focused on the user experience. A New York Times article explains that

12  although Apple did not display product in the latest high tech CES trade show, Apple's presence was

13  very noticeable. "But Apple's presence is more subtle as well. Take one tech buzzword — "user

14  experience" — that was particularly prominent in the product presentations this year. The expression

15  refers to a concern for how all the elements of a technology product — hardware, software and

16  services — work together so that people actually enjoy using it. Apple was among the earliest and

17  best-known practitioners of that philosophy in its product design. The company's late chief

18  executive, Steven P. Jobs, long insisted that Apple make its own computer software and hardware to

19  ensure that the two would run smoothly together. As it entered the era of iPods, iPhones and iPads,

20  Apple went a step further with online services, including iTunes and iCloud, that make it simple to

21  buy entertainment and back up data from the devices."[218]

22  251.  As discussed above, the commercial embodiment of all categories of Apple Intellectual Property In

23  Suit and Apple's focus on the quality of the overall user experience has produced considerable

24  financial rewards for Apple and provided an enhanced user experience to the consumers that use the

25  products that embody the claimed technology. Accordingly, the rate should reflect the economic

26  benefits to Apple and the market advantages associated with the benefits provided to the consumer.

27

[218] New York Times, "At C.E.S., Living Up to Apple's Standards," January 12, 2012.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Factor 11:   The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.**

252. I have discussed at some length in Factor 8 above the technological and financial benefits obtained by Samsung resulting from its sale of the accused products. Samsung has obtained an additional economic benefit not available to Apple that results from Samsung's sale of the accused products. The additional value is the fact that Samsung pays an effective tax rate of less than 1% in the U.S. on its sale of accused products. STA and SEA use an artificial transfer price to establish the cost of goods sold on the sales of the accused products in the U.S.

    Q.  Right.  This -- this doesn't reflect the actual cost to manufacture the phones?

    A. No, it does not.

    Q.  All right.  It reflects a number based on transfer pricing, correct?

    A. Correct, it does.

    Q.  And that number is used for tax purposes with the United States government, correct?

    A. Correct, yes.[219]

253. The result of Samsung's use of a transfer price is that the actual profits are transferred to Korea where they are taxed at a lower rate and the tax revenue is paid to the Korean government and not the U.S. Samsung will rightfully claim it has permission from the IRS to use this artificial transfer price. However, the pre-approval does not change the fact that it pays virtually no U.S. income taxes on the accused sales while Apple pays an effective tax rate of 24% on all U.S. sales.[220] This provides a significant price advantage to Samsung.

254. Based on the fact that Samsung is assumed to have used Apple's Intellectual Property In Suit to make significant profits through the sale of the accused devices that are virtually untaxed in the U.S. and transferred to Korea, has used Apple's Intellectual Property In Suit to build market share in the smartphone and tablet markets at Apple's expense, and has used Apple's Intellectual Property In Suit to gain additional profits through the sale of both convoyed and derivative products tied to Samsung's ecosystem, this factor would support the need for the royalty rate to reflect the full

---

[219] Deposition of Timothy Sheppard, January 24, 2012, pp 62-63.
[220] Apple Inc. Form 10-K for the fiscal year ended 9/14/11, p. 63.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    measure of Samsung's financial gain and Apple's loss.

2    **Factor 12:  The portion of the profit or of the selling price that may be customary in the particular**

3    **business or in comparable businesses to allow for the use of the invention or analogous inventions.**

4    255.  There is no evidence that relates to the portion of the profit or selling price that may be customary in

5          this business to allow for the use of the invention or analogous invention for any of the categories of

6          Apple Intellectual Property In Suit with the exception of the trademark category.

7    256.  This factor is not applicable to any of the categories of Apple Intellectual Property In Suit with the

8          limited exception of trademarks to some degree. Based on the "Made for iPad" agreements, one

9          example of a value placed on the right by a third party to use a trademark that referenced Apple is $4

10         per unit in a circumstance involving a complementary use.  This is not analogous to a license to a

11         competitor such as Samsung.  Nonetheless, I view this amount as setting a floor below which Apple

12         would not license any of its trademarks.  While the ultimate rate for multiple trademarks or trade

13         dress would be higher for the reasons discussed above, it certainly would not be less than the amount

14         that Apple charges to use a trademark in a context that results in additional benefits through

15         expansion of the number and variety of accessories that work with its products.

16   **Factor 13:    The portion of the realizable profit that should be credited to the invention as**

17   **distinguished from non-patented elements, the manufacturing process, business risks, or significant**

18   **features or improvements added by the infringer.**

19   257.  I have previously evaluated the portion of the realizable profit that should be credited to the

20         invention as distinguished from the non-patented elements in my discussion of the income reference

21         point and as illustrated on **Exhibit 41.2**.

22   258.  The portion of the realizable profit that should be credited to each utility patent represented by the

23         amount of profit identified with each category of Apple Intellectual Property In Suit as reflected in

24         the income based reference range summarized on **Exhibit 41**.  Dr. Hauser's conjoint survey and

25         results are also supportive of the conclusion that consumers are willing to pay a premium for the

26         features enabled by the '607, '915, '681, and '163 patents as discussed earlier.

27   259.  The portion of the realizable profit that relates to the design patents, trade dress, and trademarks is

28         based in part on the portion of Apple's realizable profit that is due to Apple's brand. The amount of

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the realizable profit associated with brand is the same amount for each individual item as the total group of design patents and trade dress items. The degree of dilution of Apple's brand due to an infringement of Apple's distinctive design is the same regardless if caused by one or the group of design related intellectual property. As a result, it would be incorrect to accumulate additional damages based on each additional act of infringement on each item of design related intellectual property because each related design element is tied to the same economic benefit associated with Apple's overall brand. Accordingly, the hypothetical license involving design patent, trade dress, and trademarks would be negotiated on the total portfolio and not individual items.

**Factor 14: The opinion testimony of qualified experts.**

260.  Listed below are the individual experts that I have consulted with and upon whose opinions I rely in reaching my final conclusions.

| Technical Expert Name | Specialty | Apple Patent(s) Opined On |
|---|---|---|
| Ravin Balakrishnan | Human Computer Interaction | '381 |
| John Hauser | Conjoint Analysis | '607,'915, '381 and '163 |
| Michel Maharbiz | Micro-fabrication and Miniature Circuit Design | '129, '607 |
| Karan Singh | Human Computer Interaction | '163, '891, '915 |
| Alex Snoeren | Networking and Distributed System Design | '002 |

**Factor 15: The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention-- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license**

261.  The hypothetical negotiation date is the intersection of the date of the first sale and the issuance of each Intellectual Property In Suit. I consider the market circumstances impacting or influencing

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    each hypothetical negotiation date to be relatively the same.  **Exhibit 44** outlines each of these

2    intersection points or hypothetical negotiation dates.

3  262.  I have summarized my conclusions on each of the above factors and the impact on each item of

4    Apple Intellectual Property In Suit on **Exhibits 42 and 43**. Further, I have accumulated the results of

5    my reference point analysis and the results of my Georgia Pacific analysis on **Exhibits 46** and **47**

6    and displayed my final conclusion for each item of Apple Intellectual Property In Suit.

7

8  **Q.  POSSIBLE REVISIONS TO THIS REPORT**

9  263.  I intend to review and consider any additional information provided to me after the production of

10    this report and will supplement my analysis and conclusions if asked to do so.

11

12  **R.  EXHIBITS**

13  264.  **Exhibits 4 through 47** are attached to this report and support my damage analyses and opinions in

14    this matter.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   **S.  PROFESSIONAL ARRANGEMENT**

2   265.  My work for expert services provided in this matter is charged at a standard billing rate of $550 per

3   hour and is in no way contingent on the outcome of this matter.  In addition, I will be reimbursed for

4   all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this

5   case.

6

7   March 22, 2012                                   Terry L. Musika, CPA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INVOTEX**® GROUP

EXHIBIT 1

# Terry L. Musika, CPA, MPA

Terry L. Musika
Managing Director

Invotex Group
1637 Thames Street
Baltimore, Maryland 21231
Tel  410 824-0145
Fax  410 752-7227

tmusika@invotex.com

**Education and Professional**

- BS, 1970, Indiana University

- Master of Public Affairs in Public Finance, 1974, Indiana University Graduate School of Public and Environmental Affairs

- Certified Public Accountant (CPA), licensed in MD

**Employment**

- Invotex Group

- Maryland First Financial Services Corp. and Intellectual Property Management & Finance, LLC

- Navigant Consulting, Inc.

- PENTA Advisory Services, LLC

- C.W. Amos & Company, LLC

- Maryland First Financial Services Corp.

- Coopers & Lybrand

- Peat Marwick & Mitchell

**Professional Associations**

- American Institute of Certified Public Accountants

- Maryland Association of Certified Public Accountants

- Licensing Executives Society

## Current Position

Mr. Musika is a Managing Director and co-founder of Invotex Group. Mr. Musika serves a broad range of client engagements involving matters of accounting, finance, valuation and general business planning and restructuring.

## Professional Experience

Mr. Musika has served the accounting profession in a variety of roles and responsibilities for over 35 years. His experience includes every level of the accounting and auditing profession from staff level auditor to National Audit Partner in one of the world's largest international accounting firms. Mr. Musika's experience includes 15 years as an auditor and consultant in a wide range of industries for two international accounting firms and one regional accounting firm. Mr. Musika's prior "Big 4" public accounting background includes five years with Peat, Marwick and Mitchell (predecessor of KPMG) as auditor and consultant and seven years with Coopers & Lybrand (predecessor of PricewaterhouseCoopers) as a national research consultant, audit partner and Partner-In-Charge of the Firm's Baltimore Business Investigative Services Practice. Mr. Musika's audit and consulting experience includes both private and public companies from various industries and numerous governmental entities. Mr. Musika also established and served as the Member-in-Charge of the consulting practice for C.W. Amos & Company, a regional accounting firm.

## Federal And State Court Appointments

Mr. Musika has been appointed by both Federal and State Court Judges on numerous occasions to provide the court systems with a range of trustee duties and services. Mr. Musika has served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, Liquidating and Paying Agent. Mr. Musika has served the state court system as Receiver, Special Master and Court Appointed Special Advocate. Mr. Musika also served as a member of the Panel of Chapter 7 Trustees for the U.S. Trustee in Maryland for eight years.

## Business Founder, Owner And Operator

Mr. Musika has formed, owned and operated four separate companies. Mr. Musika founded both Maryland First Financial

Services Corp. and Intellectual Property Management & Finance, LLC, which were combined and now operate as Invotex Group. Previously, Mr. Musika owned and operated Central Data Technologies, a proprietary database company that maintained a private database of financial information and regional economic data on Chapter 11 bankruptcies.  Mr. Musika also founded and served as President and CEO of PENTA Advisory Services ("PENTA"), a national financial and economic consulting firm. Mr. Musika began PENTA as the first employee and eventually built the company into 125 accounting, economic and legal professionals with offices in Washington DC, Baltimore, Richmond, Wilmington, New York and Atlanta.  Mr. Musika eventually sold PENTA to Navigant Consulting, Inc.

### Expert Testimony

During the past 35 years Mr. Musika has provided expert testimony in over 200 separate proceedings before 47 different Federal District Courts throughout the U.S., nine separate state courts, the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, the American Arbitration Association, and the U.S. International Trade Commission.  Mr. Musika's intellectual property experience encompasses patent, trademark, trade secret and copyright matters. He has performed numerous damage analyses including both reasonable royalty and lost profit calculations. Mr. Musika's antitrust damage opinion and expert qualifications were recently cited in a published opinion by The United States Court of Appeals for the Third Circuit.

### Papers, Publications, and Presentations

- "IP Valuation," November 16, 2004, presentation to the UMBC Technology Center (with Debora R. Stewart, CPA).
- "Strategic Valuation Issues Related to the Sale and Purchase of IP Out of Bankruptcy," September 18, 2003, presentation to the BioAlliance Network of the Tech Council of Maryland (with Charles R. Goldstein, CPA).
- "Tax Implications of Intellectual Asset Management," March 12, 2002, Kilpatrick Stockton LLP's IP Masters Teleconference Series (with John K. Lyons, CPA).
- "Valuation of Intellectual Property," May 22, 2001, presentation at the Licensing Intellectual Property Conference of the American Conference Institute.
- "Don't Shoot the Messenger!  A Response to the Bankruptcy Information on the Internet Debate," Bankruptcy Court Decisions Weekly News & Comment, September 15, 1998.
- "Creating A Company to Capitalize on Your Technology," January 14, 1998, presentation to the Washington, DC Chapter of the Licensing Executives Society.

**Terry L. Musika,** CPA, MPA                                                Page 3

- "How Creditors Can Use Regional Bankruptcy Data," <u>Business Credit</u>, October 1997.  (with Charles R. Goldstein, CPA).
- "Valuation of Intellectual Properties – Case Studies," 1997, Licensing Executives Society (LES) Annual Meeting.
- "Approaches to Prejudgment Interest Awards Vary by Court," <u>Legal Times Special Report on Intellectual Property</u>, April 7, 1997 (with Gregory E. Smith, CPA).
- "Valuation of Intellectual Property Assets," 1996, presentation to the Greater Richmond Intellectual Property Law Association (GRIPLA).
- "Prejudgment Interest in Patent Damage Decisions, A Quantitative Analysis," <u>ALI-ABA Trial of A Patent Case Study Materials</u>, September 1995.
- "Trial of A Patent Case," 1993-1995, faculty member and presenter for the American Law Institute — American Bar Association (ALI-ABA), sponsored with the cooperation of the Intellectual Property Law Association of Chicago.
- "Implementing SOP 90-7 for Bookkeeping and Financial Reporting of Companies in Chapter 11." <u>The Journal of Professional Bookkeeping and Management</u>, May 1992 (with Jalal Soroosh, Ph.D.).
- "Financial Reporting Under Chapter 11," <u>The CPA Journal</u>, December 1991.
- "AICPA's Statement of Position on 'Financial Reporting By Entities in Reorganization Under Bankruptcy Code'" <u>NABTALK</u> 1991, pp. 15-20.
- "Montgomery's Auditing - Tenth Edition," 1985 (contributing author).



EXHIBIT 2

# TERRY L. MUSIKA, CPA, MPA
## TESTIMONY, AFFIDAVITS AND EXPERT REPORTS
## 2008 – PRESENT

**Litigation Cases**

- Expert Report in Adrienne Andros Ferguson, et al. v. Donald E. Stout, et al., Case No. 08-09767CA, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida Complex Business Litigation Section (report filed in 2011).

- Declaration in Apple Inc. v. Samsung Electronics Co. Ltd., et al., Case No. 11-cv-01846-LHK, U.S. District Court of the Northern District of California, San Jose Division (declaration filed in 2011).

- Trial and Deposition Testimony and Expert Report in MeadWestvaco Corporation and MeadWestvaco Calmar, Inc. v. Rexam PLC, Rexam Beauty and Closures Inc., Valois S.A.S., and Valois of America, Inc., Case No. 1:10-cv-00511, U.S. District Court for the Eastern District of Virginia, Alexandria Division (trial and deposition testimony given and report filed in 2011).

- Expert Report in VS Technologies, LLC v. Twitter, Inc., Case No. 2:11-CV-43, U.S. District Court for the Eastern District of Virginia, Norfolk Division (report filed in 2011).

- Deposition Testimony and Expert Reports and Declaration in Bed Bath & Beyond, Inc. v. Sears Brands, LLC, Civil Action No. 08 CV 5839-SDW-MCA, U.S. District Court for the District of New Jersey (deposition testimony given and reports filed in 2011; declaration filed in 2010).

- Deposition Testimony and Expert Report in Fujifilm Corporation v. HTC Corporation and HTC America, Inc., Case No. 09-cv-4109, U.S. District Court for the Northern District of Texas, Houston Division (deposition testimony given and report filed in 2011).

- Trial and Deposition Testimony and Expert Reports in Chevron U.S.A., Inc. v. United States, Case No. 1:04cv1365C, U.S. Court of Federal Claims (trial and deposition testimony given and reports filed in 2011).

- Deposition Testimony and Expert Report in re: Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation, MDL No. 1668, in re: Fannie Mae Securities Litigation, Consolidated Civil Action No. 1:04-CV-01639, U.S. District Court for the District of Columbia (deposition testimony given in 2011; report filed in 2010).

- Trial and Deposition Testimony and Damage Summary in Altavion, Inc. v. Konica-Minolta Holdings, Inc.; Konica-Minolta Business Solutions, USA, Inc.; Konica-Minolta Business Technologies, Inc.; Konica-Minolta Technology Center, Inc.; Konica-Minolta Systems

Laboratory, Inc.; Paul Cattrone; and Does 1 through 50, inclusive, Case No. CIV 467662, Superior Court of the State of California, County of San Mateo (trial and deposition testimony given and summary exchanged in 2010).

- Deposition Testimony and Expert Report in Software Tree, LLC v. Red Hat, Inc., Hewlett-Packard Company, Genuitec, L.L.C., and Dell, Inc., Case No. 6:09-cv-00097-LED, U.S. District Court for the Eastern District of Texas, Tyler Division (deposition testimony given and report filed in 2010).

- Trial and Deposition Testimony, Declaration and Expert Reports in The SCO Group, Inc. v. Novell, Inc., Case No. 2:04cv00139, U.S. District Court for the District of Utah, Central Division (trial and deposition testimony given and declaration filed in 2010; reports filed in 2007).

- Deposition Testimony and Expert Report in The Pep Boys – Manny, Moe & Jack v. GMAC Commercial Finance LLC, Civil Action No. 08-3342 (RBS), U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given and report filed in 2009).

- Deposition Testimony and Expert Report in Cordance Corporation v. Amazon.com, Inc. and Amazon Web Services, LLC, C.A. No. 06-491-MPT, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2009).

- Expert Report in Hitachi Plasma Patent Licensing Co., Ltd. v. LG Electronics, Inc. and LG Electronics U.S.A., Inc. and LG Electronics, Inc. and LG Electronics U.S.A., Inc. v. Hitachi Plasma Patent Licensing Co., Ltd., Civil Action No. 2:07-CV-155 (CE), U.S. District Court for the Eastern District of Texas (Marshall Division) (report filed in 2009).

- Trial and Deposition Testimony and Expert Reports in American Savings Bank, F.A., et al. v. United States, Civil Action No. 92-872 C, U.S. Court of Federal Claims (trial and deposition testimony given in 2009; reports filed in 2000 and 2009).

- Trial and Deposition Testimony and Expert Reports in Lockheed Martin Corporation v. L-3 Communications Corporation and L-3 Communications Integrated Systems, L.P., Case No. 1:05-cv-0902, U.S. District Court for the Northern District of Georgia (Atlanta Division) (trial testimony given in 2009; deposition testimony given and reports filed in 2007).

- Deposition Testimony and Expert Report in Bank of America, N.A., as Successor by merger to Fleet National Bank as Agent for a Syndicate of Lenders v. Deloitte & Touche LLP, Civil Action No. 06-2218-BLS1, Superior Court for the Commonwealth of Massachusetts (deposition testimony given and report filed in 2009).

- Deposition Testimony and Expert Report in Dennis J. Buckley, as Trustee of the DVI Liquidating Trust v. Deloitte & Touche USA LLP and Deloitte & Touche LLP, Case No. 1:06-cv-03291-SHS, U.S. District Court for the Southern District of New York (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Report In Re: DVI, Inc. Securities Litigation, Case No. 2:03-CV-05336-LDD, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Report in WM High Yield Fund, WM Income Fund, AT High Yield Fund, WM VT Income Fund, AT Income Fund, Evergreen Funding Ltd./Evergreen Funding Corp., and Stellar Funding Ltd. v. Michael A. O'Hanlon, Steven R. Garfinkel, Richard Miller, Anthony J. Turek, John P. Boyle, Terry W. Cady, Matthew Colasanti, Raymond Fear, Gerald Cohn, Harry T. J. Roberts, William S. Goldberg, John E. McHugh, Nathan Shapiro, Deloitte & Touche LLP, Harold Neas, Oncure Technologies Corporation, Jeffrey Goffman, Presgar Imaging LLC, and Dolphin Medical Inc., Case No. 04-CV-3423, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given in 2009; report filed in 2008).

- Deposition Testimony and Expert Reports in McKesson Information Solutions LLC v. Epic Systems Corporation, Civil Action No. 1:06-cv-2965 (JTC), U.S. District Court for the Northern District of Georgia, Atlanta Division (deposition testimony given in 2009; reports filed in 2008 and 2009).

- Trial and Deposition Testimony and Expert Report in Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company (Plaintiffs) v. Lincoln National Life Insurance Company (Defendant) and Lincoln National Life Insurance Company (Defendant/Counterclaimant) v. Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company (Plaintiffs/Counterclaim Defendants), Case No. C 06-110-MWB, U.S. District Court for the Northern District of Iowa, Cedar Rapids Division (trial testimony given in 2009; deposition testimony given and report filed in 2008).

- Supplemental Declaration, Trial and Deposition Testimony and Expert Reports in Pioneer Corporation v. Samsung SDI Co., Ltd., Samsung Electronics Co., Ltd., Samsung SDI America, Inc., and Samsung Electronics America, Inc., Civil Action No. 2:06-CV-384 (DF), U.S. District Court for the Eastern District of Texas, Marshall Division (declaration filed, trial and deposition testimony given and reports filed in 2008).

- Deposition Testimony and Expert Report in Kevin Keithley and TREN Technology Holdings, LLC v. The Homestore.com, Inc., The National Association of Realtors, and The National Association of Home Builders of the United States, Case No. C03-04447 SI (EDL), U.S. District Court for the Northern District of California, San Francisco Division (deposition testimony given and report filed in 2008).

- Expert Report in Cisco Systems, Inc. and Cisco Technology, Inc. v. Telcordia Technologies, Inc., Civil Action No. 07-113-GMS, U.S. District Court for the District of Delaware (Wilmington) (report filed in 2008).

- Deposition Testimony and Expert Report in Lincoln National Life Insurance Company v. Transamerica Financial Life Insurance Company, Cause No. 1:04-CV-396-TLS-RBC, U.S. District Court for the Northern District of Indiana, Fort Wayne Division (deposition testimony given and report filed in 2008).

- Deposition Testimony and Expert Report in Pioneer Corporation (Plaintiff) v. Samsung SDI Co., Ltd., Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.

(Defendants) and Samsung SDI Co., Ltd. (Counterclaim Plaintiff) v. Pioneer Corporation, Pioneer Electronics (USA) Inc., and Pioneer Electronics Technology, Inc. (Counterclaim Defendants), Civil Action No. 2:07-CV-170 (DF), U.S. District Court for the Eastern District of Texas, Marshall Division (deposition testimony given and report filed in 2008).

- Arbitration Proceeding Testimony in the matter of the Arbitration between Syngenta Crop Protection, Inc. and LG Life Sciences, Ltd. before the American Arbitration Association, Case No. 16 171 Y 00954 06 (arbitration proceeding testimony filed in 2008).

- Deposition Testimony and Expert Report in Oracle Corporation and Oracle U.S.A., Inc. v. EpicRealm Licensing, LP, Case No. 06-414-SLR, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2008).

- Trial and Deposition Testimony and Expert Report in Tessera, Inc. (Claimant) v. Amkor Technology, Inc. (Respondent) and Amkor Technology, Inc. (Counter-claimant) v. Tessera, Inc. (Counter-respondent), Ref. No. 14 268/EBS, International Court of Arbitration of the International Chamber of Commerce (trial testimony given in 2008; deposition testimony given and report filed in 2007).

- Expert Report in the matter of Franklin D. Raines, J. Timothy Howard and Leanne G. Spencer (Fannie Mae officers), Notice Number 2006-1, U.S. Office of Federal Housing Enterprise Oversight (report filed in 2008).

- Expert Report in Ron Nystrom v. Trex Company, Inc., The Home Depot, Inc., and Snavely Forest Products, Inc., Case No. 2:06-cv-569, U.S. District Court for the Eastern District of Virginia, Norfolk Division (report filed in 2008).

- Deposition Testimony and Expert Reports in Parker-Hannifin Corporation, et al. v. Wix Filtration Corporation, Case No. 1:06-CV-0098-LJO-WMW, U.S. District Court for the Eastern District of California, Fresno Division (deposition testimony given in 2008; reports filed in 2007 and 2008).

- Expert Reports in Eric Shaw, receiver of the Estate of Nikota USA, Inc. v. Pep Boys, Inc., Case No. 06-0550, U.S. District Court for the Eastern District of Pennsylvania (reports filed in 2007 and 2008).

- Trial and Deposition Testimony and Expert Reports in Energy Transportation Group, Inc. v. Sonic Innovations, Inc., et al., Case No. 05-422 (GMS), U.S. District Court for the District of Delaware (trial testimony given in 2008; deposition testimony given in 2007; reports filed in 2007 and 2008).

- Expert Reports in Silicon Graphics, Inc. v. ATI Technologies Inc., ATI Technologies ULC and Advanced Micro Devices, Inc., Case No. 06-C-0611-C, U.S. District Court for the Western District of Wisconsin (reports filed in 2007 and 2008).

- Deposition Testimony and Expert Report in Elan Pharmaceutical International Limited v. Abraxis Bioscience, Inc., Case No. 06-438-GMS, U.S. District Court for the District of Delaware (Wilmington) (deposition testimony given in 2008; report filed in 2007).

4

- Expert Reports in Morning Sun, Inc. d/b/a Collegiate Graphics v. Eagle Promotions, LLC et al., Case No. A505399, Superior Court of State of Nevada (reports filed in 2007 and 2008).

**Bankruptcy Cases**

- Trial and Deposition Testimony and Expert Report in re: Railworks Corporation, et al. (Debtors), Case Nos. 01-6-4463-SD through 01-6-4485-SD (Chapter 11) and Zvi Guttman (Litigation Trustee, Plaintiff) v. Steven G. Hutchinson, Douglas W. Hutchinson and C.C. Hutchinson (Defendants), Adversary No. 03-5794, U.S. Bankruptcy Court for the District of Maryland (Baltimore Division) (trial and deposition testimony given in 2010; report filed in 2009).

*Last updated 1.5.12*

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| **Apple Production** | | |
| | | |
| APL7940001375918 | | |
| APL7940015781339 | | |
| APL7940015781356 | | |
| APL7940015781357 | | |
| APL7940015781364 | | |
| APL7940015781372 | | |
| APL7940015781389 | | |
| APL7940015781395 | | |
| APL7940015781402 | | |
| APL794-F0000000001 | APL794-F0000000162 | Deposition of Mark Buckley, December 22, 2011, Exhibit 12. |
| APL794-F0000000001 | APL794-F0000000162 | Deposition of Mark Buckley, February 23, 2012, Exhibit 12. |
| APL794-F0000000001 | | |
| APL794-F0000000163 | APL794-F0000000222 | Deposition of Mark Buckley, December 22, 2011, Exhibit 13. |
| APL794-F0000000163 | APL794-F0000000222 | Deposition of Mark Buckley, February 23, 2012, Exhibit 13. |
| APL794-F0000000163 | | |
| APL794-F0000000223 | APL794-F0000000244 | Deposition of Mark Buckley, December 22, 2011, Exhibit 14. |
| APL794-F0000000223 | APL794-F0000000244 | Deposition of Mark Buckley, February 23, 2012, Exhibit 14. |
| APL794-F0000000223 | | |
| APL794-F0000000245 | | |
| APL794-F0000000248 | | |
| APL794-F0000000252 | | |
| APL794-F0000000256 | | |
| APL794-F0000000270 | | |
| APL794-F0000002922 | | |
| APL794-F0000003392 | | |
| APL794-F0000003668 | | |
| APL794-F0000003920 | | |
| APL794-F0000004106 | | |
| APL794-F0000004270 | | |
| APL794-F0000004525 | | |
| APL794-F0000005428 | | |
| APL794-F0000007417 | | |
| APL794-F0000007463 | | |
| APL794-F0000007628 | | |
| APL794-F0000007757 | | |
| APL794-F0000007892 | | |
| APL794-F0000007982 | | |
| APL794-F0000008233 | APL794-F0000008246 | |
| APL794-F0000008247 | | |
| APLDNC-X0000007220 | APLDNC-X0000007355 | Patent License Agreement, between Nokia and Apple, 6/12/11 |
| APL-ITC796-0000010019 | APL-ITC796-0000010041 | Patent Cross License Agreement, between Apple and Microsoft, 8/5/97 |
| APL-ITC796-0000037278 | APL-ITC796-0000037290 | Bernstein Research - "AAPL: Surprisingly, iPhone has not driven incremental new customers to AT&T - but valuable on other dimensions", 8/14/07 |
| APL-ITC796-0000071960 | APL-ITC796-0000072051 | Bernstein Research - "Apple: iOS - powering the mobility revolution", October 2010 |
| APL-ITC796-0000332171 | APL-ITC796-0000332187 | Deposition of Mark Buckley, December 22, 2011, Exhibit 3. |
| APL-ITC796-0000332171 | APL-ITC796-0000332187 | Deposition of Mark Buckley, February 23, 2012, Exhibit 3. |
| APL-ITC796-0000332171 | | |
| APL-ITC796-0000374074 | APL-ITC796-0000374076 | Deposition of Mark Buckley, December 22, 2011, Exhibit 9. |
| APL-ITC796-0000374074 | APL-ITC796-0000374076 | Deposition of Mark Buckley, February 23, 2012, Exhibit 9. |
| APL-ITC796-0000374074 | | |
| APL-ITC796-0000374077 | APL-ITC796-0000374080 | Deposition of Mark Buckley, December 22, 2011, Exhibit 6. |
| APL-ITC796-0000374077 | APL-ITC796-0000374080 | Deposition of Mark Buckley, February 23, 2012, Exhibit 6. |
| APL-ITC796-0000374077 | | |
| APL-ITC796-0000374081 | APL-ITC796-0000374084 | Deposition of Mark Buckley, December 22, 2011, Exhibit 8. |
| APL-ITC796-0000374081 | APL-ITC796-0000374084 | Deposition of Mark Buckley, February 23, 2012, Exhibit 8. |
| APL-ITC796-0000374081 | | |
| APL-ITC796-0000374085 | APL-ITC796-0000374088 | Deposition of Mark Buckley, December 22, 2011, Exhibit 7. |
| APL-ITC796-0000374085 | APL-ITC796-0000374088 | Deposition of Mark Buckley, February 23, 2012, Exhibit 7. |
| APL-ITC796-0000374085 | | |
| APL-ITC796-0000374089 | APL-ITC796-0000374091 | Deposition of Mark Buckley, December 22, 2011, Exhibit 10. |
| APL-ITC796-0000374089 | APL-ITC796-0000374091 | Deposition of Mark Buckley, February 23, 2012, Exhibit 10. |
| APL-ITC796-0000374562 | | |
| APL-ITC796-0000374562 | | |
| APL-ITC796-0000376409 | | |
| APL-ITC796-0000376412 | | |
| APL-ITC796-0000376416 | | |
| APL-ITC796-0000376420 | | |
| APL-ITC796-0000376424 | | |
| APL-ITC796-0000376897 | | |
| APL-ITC796-0000463136 | APL-ITC796-0000463149 | Apple Billings Report (US and WW) - iPod Touch and iPad, Q4 FY07 through Q4 FY11 |
| APL-ITC796-0000463150 | APL-ITC796-0000463154 | Apple Billings Report (US and WW) - iPhone, Q3 FY07 through Q4 FY11. |
| APLNDC0000009646 | APLNDC0000009646 | Excel Spreadsheet: Gartner - Market Share: Mobile Communication Devices by Region and Country, 1Q11 |
| APLNDC0000009648 | APLNDC0000009648 | Excel Spreadsheet: Gartner - Market Share: Mobile Communication Devices by Region and Country, 4Q10 and 2010 |
| APLNDC00000205 | | |
| APLNDC00000209 | | |
| APLNDC00000211 | | |
| APLNDC00000227 | APLNDC00000227 | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 44. |
| APLNDC00000230 | | |
| APLNDC00000236 | APLNDC00000236 | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 43. |
| APLNDC00000251 | | |
| APLNDC00000253 | | |
| APLNDC00000259 | | |
| APLNDC00000292 | | |
| APLNDC00000295 | | |
| APLNDC00000296 | | |
| APLNDC00000302 | | |
| APLNDC00000304 | | |
| APLNDC0000032717 | APLNDC0000032769 | ComTech United States Report Q1 '11, Apple Market Research & Analysis, 5/6/11 |
| APLNDC0000032717 | APLNDC0000032769 | ComTech United States Report Q1 '11, Apple Market Research & Analysis, 5/6/11 |
| APLNDC0000035112 | APLNDC0000035112 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 185. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                        **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0000036110 | APLNDC0000036111 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 182. |
| APLNDC0000036115 | APLNDC0000036125 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 183. |
| APLNDC0000036126 | APLNDC0000036129 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 175. |
| APLNDC0000036130 | APLNDC0000036159 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 176. |
| APLNDC0000036160 | APLNDC0000036162 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 177. |
| APLNDC0000036163 | APLNDC0000036167 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 178. |
| APLNDC0000036168 | APLNDC0000036171 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 179. |
| APLNDC0000036172 | APLNDC0000036265 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q3 |
| APLNDC0000036266 | APLNDC0000036348 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q2 |
| APLNDC0000036349 | APLNDC0000036570 | iPad Tracking Study, Apple Market Research & Analysis, FY11 - Q2 |
| APLNDC00004618 | APLNDC00004626 | Apple Market Research & Analysis, Android Market Overview CY10-Q4. |
| APLNDC00005709 | | Gartner, "Forecast: Media Tablets by Operating System, Worldwide, 2010-2015," dated 4/8/2011. |
| APLNDC00005709 | | |
| APLNDC00005710 | APLNDC00005710 | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 45. |
| APLNDC00005711 | APLNDC00005711 | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 46. |
| APLNDC00009641 | APLNDC00009645 | Gartner, "Market Share Alert: Mobile Devices, Worldwide, 4Q10 (Preliminary View)," dated 1/13/2011. |
| APLNDC00009646 | | Gartner, "Market Share: Mobile Communication Devices by Region and Country 1Q11," dated 5/18/2011. |
| APLNDC00009647 | | Gartner, "Forecast: Mobile Devices, Worldwide, 2008-2015, 2Q11 Update." |
| APLNDC00009648 | | Gartner, "Market Share: Mobile Communication Devices by Region and Country, 4Q10 and 2010," dated 2/9/2011. |
| APLNDC00009649 | | Gartner, "Forecast: Mobile Communications Devices by Open Operating System, Worldwide, 2008-2015," dated 4/5/2011. |
| APLNDC00009650 | | Gartner, "Forecast: Mobile Devices, Worldwide, 2008-2015, 1Q11 Update." |
| APLNDC00009651 | | Gartner, "Q1 2011 Total Mobile and Smartphone Market Share," dated May 2011. |
| APLNDC00009652 | | Gartner, "Q4 2010 Total Mobile and Smartphone Market Share," dated Feb 2011. |
| APLNDC00009653 | | IDC, "Worldwide Quarterly Mobile Phone Tracker - Q4 2010 Final Data," dated 2/24/2010. |
| APLNDC00009654 | | IDC, "Worldwide Quarterly Mobile Phone Tracker - Q1 2011 Final Data," dated 5/25/2011. |
| APLNDC00009655 | | IDC, "Worldwide Quarterly Mobile Phone Tracker - Q4 2010 Forecast Data," dated 3/2/2011. |
| APLNDC00009656 | | IDC, "Worldwide Quarterly Mobile Phone Tracker - Q1 2011 Forecast Data," dated 6/1/2011. |
| APLNDC00009657 | | IDC, "Q4 2010 Total Mobile and Smartphone Market Share," dated Feb 2011. |
| APLNDC00009658 | | IDC, "WW Quarterly Mobile Phone Tracker, Preliminary Data," dated 2/2/2011. |
| APLNDC00009659 | | IDC, "WW Quarterly Mobile Phone Tracker, Preliminary Data," dated 5/4/2011. |
| APLNDC00010809 | APLNDC00010809.54 | Apple Market Research & Analysis, ComTech United States Report Q410, 2/11/2011. |
| APLNDC00010809 | APLNDC00010809.54 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 163. |
| APLNDC00010886 | APLNDC00010917 | "Samsung-Apple Licensing Discussion," 10/5/2010. |
| APLNDC0001221082 | APLNDC0001221113 | Patent Cross License Agreement, between IBM and Apple, 10/25/02 |
| APLNDC0001256738 | | |
| APLNDC0001256742 | | |
| APLNDC0001256749 | | |
| APLNDC0001319186 | | |
| APLNDC0001322875 | | |
| APLNDC0001383364 | | |
| APLNDC0001388214 | | |
| APLNDC00014215 | APLNDC00014224 | License Amendment (Reference Number L034388), between IBM and Apple, 3/31/06 |
| APLNDC0001430158 | | |
| APLNDC0001434059 | APLNDC0001434154 | Smartphone Market Study (US), Apple Market Research & Analysis, January 2011 |
| APLNDC0001510048 | | |
| APLNDC0001516856 | | |
| APLNDC0001516907 | | |
| APLNDC0001516911 | | |
| APLNDC0001516912 | | |
| APLNDC0001516913 | | |
| APLNDC0001516964 | | |
| APLNDC0001516965 | | |
| APLNDC0001516971 | | |
| APLNDC0001516993 | | |
| APLNDC0001516998 | | |
| APLNDC0001517003 | | |
| APLNDC0001517026 | | |
| APLNDC0001517077 | | |
| APLNDC0001517079 | | |
| APLNDC0001517080 | | |
| APLNDC0001517084 | | |
| APLNDC0001517086 | | |
| APLNDC0001517087 | | |
| APLNDC0001517088 | | |
| APLNDC0001517089 | | |
| APLNDC0001517090 | | |
| APLNDC0001517091 | | |
| APLNDC0001517092 | | |
| APLNDC0001517114 | | |
| APLNDC0001517119 | | |
| APLNDC0001517124 | | |
| APLNDC0001517126 | | |
| APLNDC0001517129 | | |
| APLNDC0001517130 | | |
| APLNDC0001517131 | | |
| APLNDC0001517132 | | |
| APLNDC0001517161 | | |
| APLNDC0001517164 | | |
| APLNDC0001517168 | | |
| APLNDC0001517172 | | |
| APLNDC0001517175 | | |
| APLNDC0001517187 | | |
| APLNDC0001517191 | | |
| APLNDC0001517195 | | |
| APLNDC0001517198 | | |
| APLNDC0001517203 | | |
| APLNDC0001517206 | | |
| APLNDC0001517209 | | |
| APLNDC0001517212 | | |
| APLNDC0001517217 | | |
| APLNDC0001517218 | | |
| APLNDC0001517235 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0001517237 | | |
| APLNDC0001517239 | | |
| APLNDC0001517241 | | |
| APLNDC0001517246 | | |
| APLNDC0001517252 | | |
| APLNDC0001517254 | | |
| APLNDC0001517257 | | |
| APLNDC0001517259 | | |
| APLNDC0001517262 | | |
| APLNDC0001517269 | | |
| APLNDC0001517271 | | |
| APLNDC0001517273 | | |
| APLNDC0001517276 | | |
| APLNDC0001517281 | | |
| APLNDC0001517282 | | |
| APLNDC0001517283 | | |
| APLNDC0001517285 | | |
| APLNDC0001517299 | | |
| APLNDC0001517301 | | |
| APLNDC0001517303 | | |
| APLNDC0001517310 | | |
| APLNDC0001517314 | | |
| APLNDC0001517317 | | |
| APLNDC0001517336 | | |
| APLNDC0001517338 | | |
| APLNDC0001517348 | | |
| APLNDC0001517353 | | |
| APLNDC0001517361 | | |
| APLNDC0001517366 | | |
| APLNDC0001517374 | | |
| APLNDC0001517455 | | |
| APLNDC0001517460 | | |
| APLNDC0001517541 | | |
| APLNDC0001517543 | | |
| APLNDC0001517545 | | |
| APLNDC0001517549 | | |
| APLNDC0001517551 | | |
| APLNDC0001517575 | | |
| APLNDC0001517585 | | |
| APLNDC0001517588 | | |
| APLNDC0001517603 | | |
| APLNDC0001517606 | | |
| APLNDC0001517614 | | |
| APLNDC0001517615 | | |
| APLNDC0001517617 | | |
| APLNDC0001517618 | | |
| APLNDC0001517623 | | |
| APLNDC0001517630 | | |
| APLNDC0001517645 | | |
| APLNDC0001517648 | | |
| APLNDC0001517682 | | |
| APLNDC0001517684 | | |
| APLNDC0001517687 | | |
| APLNDC0001517690 | | |
| APLNDC0001517702 | | |
| APLNDC0001517712 | | |
| APLNDC0001517714 | | |
| APLNDC0001517716 | | |
| APLNDC0001517719 | | |
| APLNDC0001517722 | | |
| APLNDC0001517724 | | |
| APLNDC0001517726 | | |
| APLNDC0001517728 | | |
| APLNDC0001517731 | | |
| APLNDC0001517749 | | |
| APLNDC0001517750 | | |
| APLNDC0001517762 | | |
| APLNDC0001517827 | | |
| APLNDC0001517829 | | |
| APLNDC0001517834 | | |
| APLNDC0001517843 | | |
| APLNDC0001517846 | | |
| APLNDC0001517857 | | |
| APLNDC0001517863 | | |
| APLNDC0001517864 | | |
| APLNDC0001517870 | | |
| APLNDC0001517874 | | |
| APLNDC0001517880 | | |
| APLNDC0001517898 | | |
| APLNDC0001517900 | | |
| APLNDC0001517902 | | |
| APLNDC0001517905 | | |
| APLNDC0001517908 | | |
| APLNDC0001517911 | | |
| APLNDC0001524857 | | |
| APLNDC0001524861 | | |
| APLNDC0001524886 | | |
| APLNDC0001524892 | | |
| APLNDC0001524901 | | |
| APLNDC0001524903 | | |
| APLNDC0001524906 | | |
| APLNDC0001524927 | | |
| APLNDC0001524931 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0001524935 | | |
| APLNDC0001524963 | | |
| APLNDC0001524984 | | |
| APLNDC0001524988 | | |
| APLNDC0001524996 | | |
| APLNDC0001524999 | | |
| APLNDC0001525017 | | |
| APLNDC0001525018 | | |
| APLNDC0001525039 | | |
| APLNDC0001525042 | | |
| APLNDC0001525046 | | |
| APLNDC0001525059 | | |
| APLNDC0001525065 | | |
| APLNDC0001525069 | | |
| APLNDC0001525075 | | |
| APLNDC0001525202 | | |
| APLNDC0001525203 | | |
| APLNDC0001525318 | | |
| APLNDC0001525322 | | |
| APLNDC0001525445 | | |
| APLNDC0001525446 | | |
| APLNDC0001525464 | | |
| APLNDC0001525482 | | |
| APLNDC0001525494 | APLNDC00015255517 | Opportunities for Apple in USA 2011 - 2012, Apple Market Research & Analysis, 10/18/11 |
| APLNDC0001525651 | | |
| APLNDC0001525675 | | |
| APLNDC0001525699 | APLNDC0001525712 | Media tablet Forecast Comparison, John Brown of Market Research and Analysis, January 2011 |
| APLNDC0001525718 | | |
| APLNDC0001525784 | | |
| APLNDC0001525808 | | |
| APLNDC0001525823 | | |
| APLNDC0001533120 | | |
| APLNDC0001533258 | APLNDC0001533305 | Impact of Verizon iPhone launch on AT&T and Verizon (based on Kantar panel data), Apple Market Research & Analysis, CY11 - Q1 |
| APLNDC0001540400 | | |
| APLNDC0001545093 | | |
| APLNDC0001545149 | | |
| APLNDC0001545151 | | |
| APLNDC0001545152 | | |
| APLNDC0001545156 | | |
| APLNDC0001545429 | | |
| APLNDC0001545597 | | |
| APLNDC0001545599 | | |
| APLNDC0001545604 | | |
| APLNDC0001545613 | | |
| APLNDC0001545622 | | |
| APLNDC0001545631 | | |
| APLNDC0001545637 | | |
| APLNDC0001545641 | | |
| APLNDC0001545652 | | |
| APLNDC0001553169 | | |
| APLNDC0001553231 | | |
| APLNDC0001554797 | | |
| APLNDC0001555133 | | |
| APLNDC0001555771 | | |
| APLNDC0001555822 | | |
| APLNDC0001555873 | | |
| APLNDC0001558054 | | |
| APLNDC0001558084 | | |
| APLNDC0001558088 | | |
| APLNDC0001560159 | | |
| APLNDC0001561033 | | |
| APLNDC0001561037 | | |
| APLNDC0001561500 | | |
| APLNDC0001561511 | | |
| APLNDC0001561522 | | |
| APLNDC0001562750 | | |
| APLNDC0001562786 | | |
| APLNDC0001567011 | | |
| APLNDC0001567084 | | |
| APLNDC0001567159 | | |
| APLNDC0001567234 | | |
| APLNDC0001567711 | | |
| APLNDC0001568168 | | |
| APLNDC0001568381 | | |
| APLNDC0001568702 | | |
| APLNDC0001568703 | | |
| APLNDC0001568714 | | |
| APLNDC0001568715 | | |
| APLNDC0001582221 | APLNDC0001582280 | ComTech Verizon iPhone Presentation, Apple Market Research & Analysis, 3/17/11 |
| APLNDC0001582221 | APLNDC0001582280 | ComTech Verizon iPhone Presentation, Apple Market Research & Analysis, 3/17/11 |
| APLNDC0001582364 | | |
| APLNDC0001582368 | | |
| APLNDC0001582426 | | |
| APLNDC0001582428 | | |
| APLNDC0001582432 | | |
| APLNDC0001582452 | | |
| APLNDC0001582458 | | |
| APLNDC0001582465 | | |
| APLNDC0001582472 | | |
| APLNDC0001582482 | | |
| APLNDC0001582496 | | |
| APLNDC0001582501 | | |
| APLNDC0001583017 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0001583019 | | |
| APLNDC0001583061 | | |
| APLNDC0001583063 | | |
| APLNDC0001583084 | | |
| APLNDC0001583088 | | |
| APLNDC0001583090 | | |
| APLNDC0001583093 | | |
| APLNDC0001583096 | | |
| APLNDC0001583125 | | |
| APLNDC0001583128 | | |
| APLNDC0001583132 | | |
| APLNDC0001583138 | | |
| APLNDC0001583144 | | |
| APLNDC0001583150 | | |
| APLNDC0001583175 | | |
| APLNDC0001583187 | | |
| APLNDC0001583189 | | |
| APLNDC0001583193 | | |
| APLNDC0001583197 | | |
| APLNDC0001583201 | | |
| APLNDC0001583205 | | |
| APLNDC0001583207 | | |
| APLNDC0001583210 | | |
| APLNDC0001583266 | | |
| APLNDC0001583271 | | |
| APLNDC0001583273 | | |
| APLNDC0001583300 | | |
| APLNDC0001583303 | | |
| APLNDC0001583306 | | |
| APLNDC0001583307 | | |
| APLNDC0001583331 | | |
| APLNDC0001583334 | | |
| APLNDC0001583338 | | |
| APLNDC0001583343 | | |
| APLNDC0001583349 | | |
| APLNDC0001583355 | | |
| APLNDC0001583360 | | |
| APLNDC0001583438 | | |
| APLNDC0001625803 | | |
| APLNDC0001635503 | | |
| APLNDC0001661495 | APLNDC0001661503 | Measuring the iPad Business, by John Brown of Market Research, February 2011 |
| APLNDC0001663462 | | |
| APLNDC0001744322 | | |
| APLNDC0001752807 | | |
| APLNDC0001754548 | | |
| APLNDC0001754674 | APLNDC0001754722 | AT&T and Verizon Deep Dive |
| APLNDC0001756603 | | |
| APLNDC0001795361 | | |
| APLNDC0001813578 | | |
| APLNDC0001814546 | | |
| APLNDC0001814633 | | |
| APLNDC0001837671 | | |
| APLNDC0001839843 | | |
| APLNDC0001840109 | | |
| APLNDC0001840584 | | |
| APLNDC0001845703 | APLNDC0001845739 | AT&T Meeting: Internal Overview |
| APLNDC0001846142 | | |
| APLNDC0001852598 | | |
| APLNDC0001852603 | | |
| APLNDC0001852608 | | |
| APLNDC0001852612 | | |
| APLNDC0001852613 | | |
| APLNDC0001852614 | | |
| APLNDC0001852615 | | |
| APLNDC0001852616 | | |
| APLNDC0001852626 | | |
| APLNDC0001852628 | | |
| APLNDC0001852629 | | |
| APLNDC0001852633 | | |
| APLNDC0001852637 | | |
| APLNDC0001852638 | | |
| APLNDC0001867093 | | |
| APLNDC0001867465 | | |
| APLNDC0001867473 | | |
| APLNDC0001867696 | | |
| APLNDC0001932905 | | |
| APLNDC0001953887 | | |
| APLNDC0001953956 | | |
| APLNDC0002114200 | | |
| APLNDC0002154209 | | |
| APLNDC0002154210 | | |
| APLNDC0002154211 | | |
| APLNDC0002187171 | | |
| APLNDC0002187175 | | |
| APLNDC0002187187 | | |
| APLNDC0002187194 | | |
| APLNDC0002187198 | | |
| APLNDC0002187200 | | |
| APLNDC0002187202 | | |
| APLNDC0002187205 | | |
| APLNDC0002187210 | | |
| APLNDC0002187214 | | |
| APLNDC0002187215 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0002187232 | | |
| APLNDC0002187233 | | |
| APLNDC0002187248 | | |
| APLNDC0002187256 | | |
| APLNDC0002187260 | | |
| APLNDC0002187274 | | |
| APLNDC0002187280 | | |
| APLNDC0002187281 | | |
| APLNDC0002187307 | | |
| APLNDC0002187318 | | |
| APLNDC0002187321 | | |
| APLNDC0002187323 | | |
| APLNDC0002187334 | | |
| APLNDC0002187335 | | |
| APLNDC0002187342 | | |
| APLNDC0002187360 | | |
| APLNDC0002187421 | | |
| APLNDC0002187423 | | |
| APLNDC0002187424 | | |
| APLNDC0002187428 | | |
| APLNDC0002187429 | | |
| APLNDC0002187487 | | |
| APLNDC0002187502 | | |
| APLNDC0002187506 | | |
| APLNDC0002187508 | | |
| APLNDC0002187511 | | |
| APLNDC0002187512 | | |
| APLNDC0002187516 | | |
| APLNDC0002187534 | | |
| APLNDC0002467571 | | |
| APLNDC0002467597 | | |
| APLNDC0002467616 | | |
| APLNDC0002467635 | | |
| APLNDC0002467654 | | |
| APLNDC0002467673 | | |
| APLNDC0002467696 | | |
| APLNDC0002467743 | | |
| APLNDC0002467768 | | |
| APLNDC0002467894 | | |
| APLNDC0002467972 | | |
| APLNDC0002468872 | | |
| APLNDC0002469382 | | |
| APLNDC0002469384 | | |
| APLNDC0002470658 | | |
| APLNDC0002470661 | | |
| APLNDC0002470681 | | |
| APLNDC0002470683 | | |
| APLNDC0002470821 | | |
| APLNDC0002471037 | | |
| APLNDC0002471254 | | |
| APLNDC0002471355 | | |
| APLNDC0002471356 | | |
| APLNDC0002471445 | | |
| APLNDC0002471446 | | |
| APLNDC0002471486 | | |
| APLNDC0002471735 | | |
| APLNDC0002471769 | | |
| APLNDC0002471770 | | |
| APLNDC0002472046 | | |
| APLNDC0002472048 | | |
| APLNDC0002472049 | | |
| APLNDC0002472259 | | |
| APLNDC0002472261 | | |
| APLNDC0002472281 | | |
| APLNDC0002472371 | | |
| APLNDC0002472421 | | |
| APLNDC0002472423 | | |
| APLNDC0002472836 | | |
| APLNDC0002472838 | | |
| APLNDC0002472843 | | |
| APLNDC0002472846 | | |
| APLNDC0002472937 | | |
| APLNDC0002472992 | | |
| APLNDC0002472994 | | |
| APLNDC0002472995 | | |
| APLNDC0002472996 | | |
| APLNDC0002472997 | | |
| APLNDC0002472998 | | |
| APLNDC0002472999 | | |
| APLNDC0002473000 | | |
| APLNDC0002473001 | | |
| APLNDC0002473002 | | |
| APLNDC0002473003 | | |
| APLNDC0002473004 | | |
| APLNDC0002473005 | | |
| APLNDC0002473006 | | |
| APLNDC0002473007 | | |
| APLNDC0002473008 | | |
| APLNDC0002473009 | | |
| APLNDC0002473010 | | |
| APLNDC0002473011 | | |
| APLNDC0002473012 | | |
| APLNDC0002473013 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0002473486 | | |
| APLNDC0002473490 | | |
| APLNDC0002473562 | | |
| APLNDC0002473568 | | |
| APLNDC0002473593 | | |
| APLNDC0002473595 | | |
| APLNDC0002473596 | | |
| APLNDC0002473647 | | |
| APLNDC0002473696 | | |
| APLNDC0002473754 | | ComTech Global Report Q3 '11, Apple Market Research & Analysis, 11/18/11 |
| APLNDC0002473804 | | |
| APLNDC0002473806 | | |
| APLNDC0002473807 | | |
| APLNDC0002473808 | | |
| APLNDC0002474096 | | |
| APLNDC0002474100 | | |
| APLNDC0002474141 | | |
| APLNDC0002519240 | | |
| APLNDC0002519242 | | |
| APLNDC0002519403 | | |
| APLNDC0002520298 | | |
| APLNDC0002521745 | | |
| APLNDC0002521747 | | |
| APLNDC0002532799 | | |
| APLNDC0002532800 | | |
| APLNDC0002532802 | | |
| APLNDC0002532803 | | |
| APLNDC0002533271 | | |
| APLNDC0002533272 | | |
| APLNDC0002533519 | | |
| APLNDC0002533544 | | |
| APLNDC0002533546 | | |
| APLNDC0002533550 | | |
| APLNDC0002533641 | | |
| APLNDC0002533706 | | |
| APLNDC0002533707 | | |
| APLNDC0002533709 | | |
| APLNDC0002533710 | | |
| APLNDC0002533715 | | |
| APLNDC0002533717 | | |
| APLNDC0002533721 | | |
| APLNDC0002533723 | | |
| APLNDC0002533726 | | |
| APLNDC0002534265 | | |
| APLNDC0002534266 | | |
| APLNDC0002534268 | | |
| APLNDC0002534275 | | |
| APLNDC0002534298 | | |
| APLNDC0002534327 | | |
| APLNDC0002534346 | | |
| APLNDC0002534347 | | |
| APLNDC0002534349 | | |
| APLNDC0002534575 | | |
| APLNDC0002534576 | | |
| APLNDC0002534750 | | |
| APLNDC0002534752 | | |
| APLNDC0002534754 | | |
| APLNDC0002534757 | | |
| APLNDC0002534760 | | |
| APLNDC0002534763 | | |
| APLNDC0002534854 | | |
| APLNDC0002534856 | | |
| APLNDC0002534975 | | |
| APLNDC0002541008 | | |
| APLNDC0002541009 | | |
| APLNDC0002541046 | | |
| APLNDC0002541047 | | |
| APLNDC0002541132 | | |
| APLNDC0002541133 | | |
| APLNDC0002541173 | | |
| APLNDC0002541174 | | |
| APLNDC0002541238 | | |
| APLNDC0002541239 | | |
| APLNDC0002541284 | | |
| APLNDC0002541337 | | |
| APLNDC0002541338 | | |
| APLNDC0002541347 | | |
| APLNDC0002541350 | | |
| APLNDC0002546347 | | |
| APLNDC0002546348 | | |
| APLNDC0002546394 | | |
| APLNDC0002546435 | | |
| APLNDC0002547144 | | |
| APLNDC0002547146 | | |
| APLNDC0002547150 | | |
| APLNDC0002547499 | | |
| APLNDC0002547583 | | |
| APLNDC0002547586 | | |
| APLNDC0002554359 | | |
| APLNDC0002554360 | | |
| APLNDC0002554397 | | |
| APLNDC0002554399 | | |
| APLNDC0002554464 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC0002554465 | | |
| APLNDC0002554467 | | |
| APLNDC0002554468 | | |
| APLNDC0002554500 | | |
| APLNDC0002554501 | | |
| APLNDC0002554509 | | |
| APLNDC0002554515 | | |
| APLNDC0002554529 | | |
| APLNDC0002554531 | | |
| APLNDC0002554535 | | |
| APLNDC0002554536 | | |
| APLNDC0002554544 | | |
| APLNDC0002554550 | | |
| APLNDC0002554564 | | |
| APLNDC0002554566 | | |
| APLNDC0002554641 | | |
| APLNDC0002554643 | | |
| APLNDC0002554789 | | |
| APLNDC0002555445 | | |
| APLNDC0002556301 | | |
| APLNDC0002556304 | | |
| APLNDC0002556383 | | |
| APLNDC0002557139 | | |
| APLNDC0002557193 | | |
| APLNDC0002557196 | | |
| APLNDC0002557232 | | |
| APLNDC0002557323 | | |
| APLNDC0002557325 | | |
| APLNDC0002557328 | | |
| APLNDC0002557388 | | |
| APLNDC0002557705 | | |
| APLNDC0002557794 | | |
| APLNDC0002557968 | | |
| APLNDC0002557971 | | |
| APLNDC0002557975 | | |
| APLNDC0002558227 | | |
| APLNDC0002558228 | | |
| APLNDC0002558407 | | |
| APLNDC0002558408 | | |
| APLNDC0002558612 | | |
| APLNDC0002558614 | | |
| APLNDC0002558689 | | |
| APLNDC0002558692 | | |
| APLNDC0002558778 | | |
| APLNDC0002558779 | | |
| APLNDC0002558950 | | |
| APLNDC0002558952 | | |
| APLNDC0002611859 | | |
| APLNDC0002613393 | | |
| APLNDC0002614299 | | |
| APLNDC0002615225 | | |
| APLNDC0002616180 | | |
| APLNDC0002616183 | | |
| APLNDC0002616444 | | |
| APLNDC0002616447 | | |
| APLNDC0002616451 | | |
| APLNDC0002616455 | | |
| APLNDC0002616458 | | |
| APLNDC0002616463 | | |
| APLNDC0002616476 | | |
| APLNDC0002616481 | | |
| APLNDC0002616487 | | |
| APLNDC0002616553 | | |
| APLNDC0002617059 | | |
| APLNDC0002617060 | | |
| APLNDC0002617406 | | |
| APLNDC0002617409 | | |
| APLNDC0002636414 | | ComTech United States Report Q3 '10, Apple Market Research & Analysis, 11/19/10 |
| APLNDC0002636452 | | |
| APLNDC0002637365 | | |
| APLNDC0002638377 | | |
| APLNDC0002640301 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2010-2015, 2Q11 Update |
| APLNDC0002640320 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2010-2015, 2Q11 Update |
| APLNDC0002640337 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2008-2015, 3Q11 Update |
| APLNDC0002640687 | | ComTech Global Report Q2 '11, Apple Market Research & Analysis, 8/12/11 |
| APLNDC0002640728 | | ComTech Global Report Q4 '10, Apple Market Research & Analysis, 2/18/11 |
| APLNDC0002640780 | | |
| APLNDC0002640906 | | ComTech Global Report Q1 '11, Apple Market Research & Analysis, 5/13/11 |
| APLNDC0002640958 | | ComTech United States Report Q2 '11, Apple Market Research & Analysis, 8/5/11 |
| APLNDC0002641005 | | Nielson: The Mobile Media Report - The State of the Media, Q3 '11 |
| APLNDC0002641020 | | ComTech United States Report Q3 '11, Apple Market Research & Analysis, 11/11/11 |
| APLNDC0002641070 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2008-2015, 3Q11 Update |
| APLNDC0002641081 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2008-2015, 3Q11 Update |
| APLNDC0002641092 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2008-2015, 3Q11 Update |
| APLNDC0002641765 | | |
| APLNDC00026541005 | | |
| APLNDC0003082089 | | Gartner, Competitive landscape: Media Tablets, 9/15/2011. |
| APLNDC0003106567 | | Excel Spreadsheet: Gartner - Forecast: Media Tablets by Operating System, Worldwide, 2008-2015, 3Q11 Update |
| APLNDC-WH0000536132 | | |
| APLNDC-WH0000536141 | | |
| APLNDC-WH0000536148 | | |
| APLNDC-WH0000536155 | | |
| APLNDC-WH0000536172 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-WH0000536185 | | |
| APLNDC-WH0000536194 | | |
| APLNDC-WH0000536214 | | |
| APLNDC-WH0000536221 | | |
| APLNDC-WH0000536237 | | |
| APLNDC-WH0000536252 | | |
| APLNDC-WH0000536260 | | |
| APLNDC-WH0000536268 | | |
| APLNDC-WH0000536290 | | |
| APLNDC-WH0000536299 | | |
| APLNDC-WH0000536307 | | |
| APLNDC-WH0000536321 | | |
| APLNDC-WH0000536332 | | |
| APLNDC-WH0000536345 | | |
| APLNDC-WH0000536368 | | |
| APLNDC-WH0000536382 | | |
| APLNDC-WH0000536400 | | |
| APLNDC-WH0000536410 | | |
| APLNDC-WH0000536429 | | |
| APLNDC-WH0000536450 | | |
| APLNDC-WH0000536465 | | |
| APLNDC-WH0000536479 | | |
| APLNDC-WH0000536493 | | |
| APLNDC-WH0000536535 | | |
| APLNDC-WH0000536564 | | |
| APLNDC-WH0000536568 | | |
| APLNDC-WH0000536579 | | |
| APLNDC-WH0000536589 | | |
| APLNDC-WH0000536603 | | |
| APLNDC-WH0000536683 | | |
| APLNDC-WH0000536693 | | |
| APLNDC-WH0000536704 | | |
| APLNDC-WH0000536715 | | |
| APLNDC-WH0000536727 | | |
| APLNDC-WH0000536741 | | |
| APLNDC-WH0000536756 | | |
| APLNDC-WH0000536765 | | |
| APLNDC-WH-A000024846 | | |
| APLNDC-X0000006506 | APLNDC-X0000006547 | iPhone 4S Early Buyer Survey, Apple Market Research & Analysis, November 2011 |
| APLNDC-X0000006548 | APLNDC-X0000006647 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q4 |
| APLNDC-X0000006548 | APLNDC-X0000006647 | iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q4 |
| APLNDC-X0000007220 | APLNDC-X0000007355 | Patent License Agreement, between Nokia and Apple, 6/12/11 |
| APLNDC-X0000007542 | | |
| APLNDC-X0000007556 | | |
| APLNDC-X0000007564 | | |
| APLNDC-X0000007596 | | |
| APLNDC-X0000007681 | | |
| APLNDC-X0000007691 | | |
| APLNDC-X0000007714 | | |
| APLNDC-X0000007743 | | |
| APLNDC-X0000051955 | | |
| APLNDC-X0000052002 | | |
| APLNDC-X0000052028 | | |
| APLNDC-X0000052028 | | |
| APLNDC-X0000052644 | | |
| APLNDC-X0000052644 | | |
| APLNDC-X0000053286 | | |
| APLNDC-X0000053286 | | |
| APLNDC-X0000053900 | | |
| APLNDC-X0000053900 | | |
| APLNDC-X0000054572 | | |
| APLNDC-X0000054572 | | |
| APLNDC-X0000055449 | | |
| APLNDC-X0000055455 | | |
| APLNDC-X0000055488 | | iPhone FY11Q3 Survey, 7/5/2011. |
| APLNDC-X0000055488 | | |
| APLNDC-X0000055501 | | iPhone FY11Q3 Survey, 7/5/2011. |
| APLNDC-X0000055501 | | |
| APLNDC-X0000055514 | | |
| APLNDC-X0000055540 | | |
| APLNDC-X0000055602 | | |
| APLNDC-X0000055640 | | |
| APLNDC-X0000055678 | | |
| APLNDC-X0000055984 | | |
| APLNDC-X0000056285 | | |
| APLNDC-X0000056588 | | |
| APLNDC-X0000056947 | | |
| APLNDC-X0000057242 | | |
| APLNDC-X0000057304 | | FY11 Q1 iPhone survey, 2/23/2011. |
| APLNDC-X0000057304 | | |
| APLNDC-X0000057317 | | FY11 Q1 iPhone survey, 2/23/2011. |
| APLNDC-X0000057317 | | |
| APLNDC-X0000057330 | | |
| APLNDC-X0000057444 | | |
| APLNDC-X0000057560 | | |
| APLNDC-X0000057660 | | |
| APLNDC-X0000057694 | | |
| APLNDC-X0000057694 | | |
| APLNDC-X0000058355 | | |
| APLNDC-X0000058355 | | |
| APLNDC-X0000059026 | | |
| APLNDC-X0000059045 | | iPod FY11 Q1 Survey, 2/23/2011. |
| APLNDC-X0000059045 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                 **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-X0000059156 | | |
| APLNDC-X0000059198 | | |
| APLNDC-X0000059869 | | |
| APLNDC-X0000060005 | | |
| APLNDC-X0000060142 | | |
| APLNDC-X0000060248 | | |
| APLNDC-X0000060392 | | |
| APLNDC-X0000060537 | | |
| APLNDC-X0000060601 | | |
| APLNDC-X0000060731 | APLNDC-X0000060754 | iPod Early Buyer Survey, dated 9/28/2010. |
| APLNDC-X0000060731 | APLNDC-X0000060754 | iPod Early Buyer Survey, dated 9/28/2010. |
| APLNDC-X0000060755 | | |
| APLNDC-X0000060766 | | |
| APLNDC-X0000060772 | | |
| APLNDC-X0000060782 | | |
| APLNDC-X0000060787 | | |
| APLNDC-X0000060796 | | |
| APLNDC-X0000060798 | | |
| APLNDC-X0000060801 | | |
| APLNDC-X0000060804 | | |
| APLNDC-X0000061001 | | |
| APLNDC-X0000061018 | | |
| APLNDC-X0000061086 | | |
| APLNDC-X0000061100 | | |
| APLNDC-X0000061110 | | |
| APLNDC-X0000061115 | | |
| APLNDC-X0000061118 | | |
| APLNDC-X0000061133 | | |
| APLNDC-X0000061137 | | |
| APLNDC-X0000061139 | | |
| APLNDC-X0000061145 | | |
| APLNDC-X0000061183 | | |
| APLNDC-X0000061248 | | |
| APLNDC-X0000061633 | | |
| APLNDC-X0000062052 | | |
| APLNDC-X0000062054 | | |
| APLNDC-X0000062060 | | |
| APLNDC-X0000062404 | | |
| APLNDC-X0000062469 | | |
| APLNDC-X0000063590 | APLNDC-X0000063624 | iPad Buyer Survey, 9/1/2011. |
| APLNDC-X0000063590 | APLNDC-X0000063624 | iPad Buyer Survey, 9/1/2011. |
| APLNDC-X0000063856 | APLNDC-X0000063890 | iPad Buyer Survey, 9/1/2011. |
| APLNDC-X0000063856 | APLNDC-X0000063890 | iPad Buyer Survey, 9/1/2011. |
| APLNDC-X0000064032 | | |
| APLNDC-X0000064040 | | |
| APLNDC-X0000064070 | APLNDC-X0000064151 | Survey, My Report, modified 11/14/2011. |
| APLNDC-X0000064070 | APLNDC-X0000064151 | Survey, My Report, modified 11/14/2011. |
| APLNDC-X0000064152 | | |
| APLNDC-X0000064768 | | |
| APLNDC-X0000064782 | | |
| APLNDC-X0000064810 | | |
| APLNDC-X0000064820 | | |
| APLNDC-X0000065492 | | |
| APLNDC-X0000065494 | | |
| APLNDC-X0000065511 | | |
| APLNDC-X0000065527 | | |
| APLNDC-X0000065542 | | |
| APLNDC-X0000065550 | | |
| APLNDC-X0000065558 | | |
| APLNDC-X0000065566 | | |
| APLNDC-X0000065574 | | |
| APLNDC-X0000065582 | | |
| APLNDC-X0000065587 | | |
| APLNDC-X0000065590 | | |
| APLNDC-X0000065619 | | |
| APLNDC-X0000065696 | | |
| APLNDC-X0000065773 | | |
| APLNDC-X0000065885 | | |
| APLNDC-X0000066279 | | |
| APLNDC-X0000066304 | | |
| APLNDC-X0000066327 | | |
| APLNDC-X0000066360 | | |
| APLNDC-X0000066366 | | |
| APLNDC-X0000066762 | | |
| APLNDC-X0000066782 | | |
| APLNDC-X0000066848 | | |
| APLNDC-X0000066856 | | |
| APLNDC-X0000066871 | | |
| APLNDC-X0000066918 | | |
| APLNDC-X0000066927 | | |
| APLNDC-X0000067570 | | |
| APLNDC-X0000068175 | | |
| APLNDC-X0000068251 | | |
| APLNDC-X0000068296 | | |
| APLNDC-X0000068578 | | |
| APLNDC-X0000068666 | | |
| APLNDC-X0000068699 | | |
| APLNDC-X0000068941 | APLNDC-X0000069080 | W1 iPhone Buyer Survey, 8/10/2007. |
| APLNDC-X0000068941 | APLNDC-X0000069080 | W1 iPhone Buyer Survey, 8/10/2007. |
| APLNDC-X0000069081 | APLNDC-X0000069091 | Apple iPhone Buyers Survey, iPhone 4B W1 GoLive, 7/2/2007. |
| APLNDC-X0000069081 | APLNDC-X0000069091 | Apple iPhone Buyers Survey, iPHone 4B W1 GoLive, 7/2/2007. |
| APLNDC-X0000069092 | APLNDC-X0000069391 | W2 iPhone Buyer Survey, October 2007. |
| APLNDC-X0000069092 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-X0000069392 | APLNDC-X0000069414 | Doxus LLC, W2 iPhone buyer: Questionnaire (online), 2007. |
| APLNDC-X0000069392 | | |
| APLNDC-X0000069428 | | |
| APLNDC-X0000069430 | | |
| APLNDC-X0000069431 | | |
| APLNDC-X0000069432 | | |
| APLNDC-X0000069433 | | |
| APLNDC-X0000069435 | | |
| APLNDC-X0000069436 | | |
| APLNDC-X0000069437 | | |
| APLNDC-X0000069438 | | |
| APLNDC-X0000069445 | | |
| APLNDC-X0000069446 | | |
| APLNDC-X0000069447 | | |
| APLNDC-X0000069448 | | |
| APLNDC-X0000069449 | | |
| APLNDC-X0000069450 | | |
| APLNDC-X0000069451 | | |
| APLNDC-X0000069452 | | |
| APLNDC-X0000069453 | | |
| APLNDC-X0000069454 | | |
| APLNDC-X0000069455 | | |
| APLNDC-X0000069456 | | |
| APLNDC-X0000069457 | | |
| APLNDC-X0000069458 | | |
| APLNDC-X0000069459 | | |
| APLNDC-X0000069460 | | |
| APLNDC-X0000069462 | | |
| APLNDC-X0000069463 | | |
| APLNDC-X0000069464 | | |
| APLNDC-X0000069465 | | |
| APLNDC-X0000069466 | | |
| APLNDC-X0000069467 | | |
| APLNDC-X0000069468 | | |
| APLNDC-X0000069469 | | |
| APLNDC-X0000069470 | | |
| APLNDC-X0000069471 | | |
| APLNDC-X0000069472 | | |
| APLNDC-X0000069473 | | |
| APLNDC-X0000069474 | | |
| APLNDC-X0000069475 | | |
| APLNDC-X0000069476 | | |
| APLNDC-X0000069477 | | |
| APLNDC-X0000069478 | | |
| APLNDC-X0000069479 | | |
| APLNDC-X0000069480 | | |
| APLNDC-X0000069481 | | |
| APLNDC-X0000069482 | | |
| APLNDC-X0000069483 | | |
| APLNDC-X0000069484 | | |
| APLNDC-X0000069485 | | |
| APLNDC-X0000069486 | | |
| APLNDC-X0000069487 | | |
| APLNDC-X0000069488 | | |
| APLNDC-X0000069489 | | |
| APLNDC-X0000069490 | | |
| APLNDC-X0000069491 | | |
| APLNDC-X0000069492 | | |
| APLNDC-X0000069493 | | |
| APLNDC-X0000069494 | | |
| APLNDC-X0000069495 | | |
| APLNDC-X0000069496 | | |
| APLNDC-X0000069499 | | |
| APLNDC-X0000069500 | | |
| APLNDC-X0000069501 | | |
| APLNDC-X0000069502 | | |
| APLNDC-X0000069503 | | |
| APLNDC-X0000069504 | | |
| APLNDC-X0000069504 | | |
| APLNDC-X0000069505 | | |
| APLNDC-X0000069506 | | |
| APLNDC-X0000069507 | | |
| APLNDC-X0000069508 | | |
| APLNDC-X0000069509 | | |
| APLNDC-X0000069510 | | |
| APLNDC-X0000069511 | | |
| APLNDC-X0000069512 | | |
| APLNDC-X0000069513 | | |
| APLNDC-X0000069514 | | |
| APLNDC-X0000069515 | | |
| APLNDC-X0000069517 | | |
| APLNDC-X0000069518 | | |
| APLNDC-X0000069519 | | |
| APLNDC-X0000069521 | | |
| APLNDC-X0000069522 | | |
| APLNDC-X0000069546 | | |
| APLNDC-X0000069547 | | |
| APLNDC-X0000069570 | | |
| APLNDC-X0000069571 | | |
| APLNDC-X0000069572 | | |
| APLNDC-X0000069573 | | |
| APLNDC-X0000069574 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                      **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-X0000069575 | | |
| APLNDC-X0000069576 | | |
| APLNDC-X0000069577 | | |
| APLNDC-X0000069578 | | |
| APLNDC-X0000069579 | | |
| APLNDC-X0000069581 | | |
| APLNDC-X0000069583 | | |
| APLNDC-X0000069584 | | |
| APLNDC-X0000069585 | | |
| APLNDC-X0000069586 | | |
| APLNDC-X0000069587 | | |
| APLNDC-X0000069588 | | |
| APLNDC-X0000069589 | | |
| APLNDC-X0000069590 | | |
| APLNDC-X0000069591 | | |
| APLNDC-X0000069591 | | |
| APLNDC-X0000069598 | | |
| APLNDC-X0000069603 | | |
| APLNDC-X0000069741 | | |
| APLNDC-X0000069754 | | |
| APLNDC-X0000069756 | | |
| APLNDC-X0000069756 | | |
| APLNDC-X0000069757 | | |
| APLNDC-X0002243590 | | |
| APLNDC-X0002244179 | | |
| APLNDC-X0002250399 | | |
| APLNDC-X0002250511 | | |
| APLNDC-X0002250859 | | |
| APLNDC-X0002252017 | | |
| APLNDC-X0002256250 | | |
| APLNDC-X0002256283 | | |
| APLNDC-X0002257089 | | |
| APLNDC-X0002258078 | | |
| APLNDC-X0002260755 | | |
| APLNDC-X0002260977 | | |
| APLNDC-X0002274281 | | IDC, Market Analysis Perspective: U.S./Worldwide Mobile Connected Devices 2010. |
| APLNDC-Y0000023361 | APLNDC-Y0000023427 | Apple Market Research & Analysis, "iPad Buyer Survey: Initial US Results," 08/2010. |
| APLNDC-Y0000023361 | APLNDC-Y0000023427 | Apple Market Research & Analysis, "iPad Buyer Survey: Initial US Results," 08/2010. |
| APLNDC-Y0000023428 | APLNDC-Y0000023578 | Apple Market Research & Analysis, "iPadTracking Study: July 2010 Report," 09/2010. |
| APLNDC-Y0000023428 | APLNDC-Y0000023578 | Apple Market Research & Analysis, "iPadTracking Study: July 2010 Report," 09/2010. |
| APLNDC-Y0000023579 | APLNDC-Y0000023729 | Apple Market Research & Analysis, "iPad Tracking Study: FY10-Q4 Report," 10/2010. |
| APLNDC-Y0000023579 | APLNDC-Y0000023729 | Apple Market Research & Analysis, "iPad Tracking Study: FY10-Q4 Report," 10/2010. |
| APLNDC-Y0000023730 | APLNDC-Y0000023907 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q1 Report," 2/2011. |
| APLNDC-Y0000023730 | APLNDC-Y0000023907 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q1 Report," 2/2011. |
| APLNDC-Y0000023908 | APLNDC-Y0000024129 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q2 Report," 5/2011. |
| APLNDC-Y0000023908 | APLNDC-Y0000024129 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q2 Report," 5/2011. |
| APLNDC-Y0000024130 | APLNDC-Y0000024333 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q3 Report," 8/2011. |
| APLNDC-Y0000024130 | APLNDC-Y0000024333 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q3 Report," 8/2011. |
| APLNDC-Y0000024334 | | |
| APLNDC-Y0000024549 | | |
| APLNDC-Y0000024799 | | |
| APLNDC-Y0000024849 | | |
| APLNDC-Y0000025024 | | |
| APLNDC-Y0000025148 | | |
| APLNDC-Y0000025189 | | |
| APLNDC-Y0000025232 | | |
| APLNDC-Y0000025232 | | |
| APLNDC-Y0000025305 | | |
| APLNDC-Y0000025376 | | |
| APLNDC-Y0000025460 | | |
| APLNDC-Y0000025575 | | |
| APLNDC-Y0000025658 | | |
| APLNDC-Y0000025685 | | |
| APLNDC-Y0000025691 | | |
| APLNDC-Y0000025823 | | |
| APLNDC-Y0000025935 | | |
| APLNDC-Y0000026040 | | |
| APLNDC-Y0000026096 | APLNDC-Y0000026137 | Apple Market Research & Analysis, "iPhone 4S Early Buyer Survey," dated November 2011. |
| APLNDC-Y0000026096 | APLNDC-Y0000026137 | Apple Market Research & Analysis, "iPhone 4S Early Buyer Survey," dated November 2011. |
| APLNDC-Y0000026138 | | |
| APLNDC-Y0000026173 | | |
| APLNDC-Y0000026257 | | |
| APLNDC-Y0000026348 | | |
| APLNDC-Y0000026461 | | |
| APLNDC-Y0000026574 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY10-Q1. |
| APLNDC-Y0000026574 | | |
| APLNDC-Y0000026687 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY10-Q2. |
| APLNDC-Y0000026687 | | |
| APLNDC-Y0000026808 | | |
| APLNDC-Y0000026847 | | |
| APLNDC-Y0000026908 | | |
| APLNDC-Y0000027003 | | |
| APLNDC-Y0000027042 | | |
| APLNDC-Y0000027136 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY10-Q3. |
| APLNDC-Y0000027136 | | |
| APLNDC-Y0000027256 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY10-Q4. |
| APLNDC-Y0000027256 | | |
| APLNDC-Y0000027341 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY11-Q1. |
| APLNDC-Y0000027341 | | |
| APLNDC-Y0000027423 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY11 Q2. |
| APLNDC-Y0000027423 | | |
| APLNDC-Y0000027506 | | Apple Market Research & Analysis, "iPhone Buyer Survey," FY11-Q3. |
| APLNDC-Y0000027506 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 3**

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-Y0000027600 | | |
| APLNDC-Y0000027676 | | |
| APLNDC-Y0000027807 | | |
| APLNDC-Y0000027942 | | |
| APLNDC-Y0000028098 | | |
| APLNDC-Y0000028252 | | |
| APLNDC-Y0000028284 | | |
| APLNDC-Y0000028310 | | |
| APLNDC-Y0000028379 | | |
| APLNDC-Y0000028403 | | |
| APLNDC-Y0000028751 | | |
| APLNDC-Y0000028850 | | |
| APLNDC-Y0000028850 | | |
| APLNDC-Y0000028946 | | |
| APLNDC-Y0000029092 | APLNDC-Y0000029135 | Apple Market Research & Analysis, "iPhone Early Buyer: Wave 1 Final Report," dated July 2007. |
| APLNDC-Y0000029092 | APLNDC-Y0000029135 | Apple Market Research & Analysis, "iPhone Early Buyer: Wave 1 Final Report," dated July 2007. |
| APLNDC-Y0000029136 | APLNDC-Y0000029204 | Apple Market Research & Analysis, "iPhone Buyer: Wave 2 Final Report," dated November 2007. |
| APLNDC-Y0000029194 | | |
| APLNDC-Y0000029228 | | |
| APLNDC-Y0000029235 | | |
| APLNDC-Y0000029247 | | |
| APLNDC-Y0000029271 | | |
| APLNDC-Y0000029442 | | |
| APLNDC-Y0000029452 | | |
| APLNDC-Y0000030572 | | |
| APLNDC-Y0000030910 | | |
| APLNDC-Y0000031248 | | |
| APLNDC-Y0000031728 | | |
| APLNDC-Y0000032199 | | |
| APLNDC-Y0000032475 | | |
| APLNDC-Y0000033032 | | |
| APLNDC-Y0000033035 | | |
| APLNDC-Y0000033319 | | |
| APLNDC-Y0000033369 | | |
| APLNDC-Y0000033414 | | |
| APLNDC-Y0000033469 | | Advanis, Apple iPad Monthly Buyer Survey - FY10 Q1 Quarterly Stat Tested, 03/30/2010. |
| APLNDC-Y0000033469 | | |
| APLNDC-Y0000033639 | | Advanis, Apple iPad Monthly Buyer Survey - FY10 Q1 Quarterly Stat Tested, 03/30/2010. |
| APLNDC-Y0000033639 | | |
| APLNDC-Y0000033798 | | Advanis, Apple iPhone Monthly Buyer Survey - FY10 Q2 Quarterly Stat Tested," 3/20/2010. |
| APLNDC-Y0000033798 | | |
| APLNDC-Y0000034215 | | Advanis, Apple iPhone Monthly Buyer Survey - FY10 Q3 Quarterly Stat Tested," 8/13/2010. |
| APLNDC-Y0000034215 | | |
| APLNDC-Y0000034371 | | |
| APLNDC-Y0000034372 | | |
| APLNDC-Y0000034373 | | Advanis, Apple iPhone Quarterly Buyer Survey FY11 Q1, 2/22/2011. |
| APLNDC-Y0000034373 | | |
| APLNDC-Y0000035138 | | Advanis, Apple iPhone Quarterly Buyer Survey FY11 Q1 3/20/2011. |
| APLNDC-Y0000035138 | | |
| APLNDC-Y0000035890 | | Advanis, Apple iPhone Quarterly Buyer Survey FY11 Q2, 8/19/2011. |
| APLNDC-Y0000035890 | | |
| APLNDC-Y0000036801 | | Apple - iPhone Survey, 8/19/2011. |
| APLNDC-Y0000036801 | | |
| APLNDC-Y0000036907 | | |
| APLNDC-Y0000037349 | | |
| APLNDC-Y0000037379 | | |
| APLNDC-Y0000037643 | | |
| APLNDC-Y0000037646 | APLNDC-Y0000037929 | iPod Early Buyer Results, 10/26/2010. |
| APLNDC-Y0000037646 | APLNDC-Y0000037929 | iPod Early Buyer Results, 10/26/2010. |
| APLNDC-Y0000037930 | | |
| APLNDC-Y0000038218 | | |
| APLNDC-Y0000038674 | | |
| APLNDC-Y0000038791 | | |
| APLNDC-Y0000039818 | APLNDC-Y0000040254 | Advanis, Apple iPad Monthly Buyer Survey - FY10 Q2 Quarterly Stat Tested, 08/09/2010. |
| APLNDC-Y0000039818 | APLNDC-Y0000040254 | Advanis, Apple iPad Monthly Buyer Survey - FY10 Q2 Quarterly Stat Tested, 08/09/2010. |
| APLNDC-Y0000040255 | | |
| APLNDC-Y0000040683 | | |
| APLNDC-Y0000041333 | APLNDC-Y0000041769 | Advanis, Apple iPad Monthly Buyer Survey - FY10 Q2 Quarterly Stat Tested, 08/09/2010. |
| APLNDC-Y0000041333 | APLNDC-Y0000041769 | Advanis, Apple iPad Monthly Buyer Survey - FY10 Q2 Quarterly Stat Tested, 08/09/2010. |
| APLNDC-Y0000041770 | | |
| APLNDC-Y0000042198 | APLNDC-Y0000044558 | Survey data. |
| APLNDC-Y0000042198 | APLNDC-Y0000044558 | Survey data. |
| APLNDC-Y0000044559 | | |
| APLNDC-Y0000044826 | | |
| APLNDC-Y0000044969 | | |
| APLNDC-Y0000045239 | | |
| APLNDC-Y0000045408 | | |
| APLNDC-Y0000045651 | | |
| APLNDC-Y0000045918 | | |
| APLNDC-Y0000046061 | | |
| APLNDC-Y0000046230 | | |
| APLNDC-Y0000046302 | | |
| APLNDC-Y0000046345 | | |
| APLNDC-Y0000046346 | | |
| APLNDC-Y0000046347 | | |
| APLNDC-Y0000046348 | | |
| APLNDC-Y0000046351 | | |
| APLNDC-Y0000046731 | | |
| APLNDC-Y0000046900 | | |
| APLNDC-Y0000047538 | | |
| APLNDC-Y0000048154 | | |
| APLNDC-Y0000048356 | | |
| APLNDC-Y0000048554 | APLNDC-Y0000048845 | Table S2, W2 iPhone Buyer Survey, Oct. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 3

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| APLNDC-Y0000048554 | | |
| APLNDC-Y0000049780 | APLNDC-Y0000049782 | Table of Port Codes |
| APLNDC-Y0000049783 | APLNDC-Y0000049830 | iPod Touch (N18) standard cost breakdown by parts, Q4 FY09 through Q1 FY11 |
| APLNDC-Y0000049831 | APLNDC-Y0000049877 | iPod Touch (N45) standard cost breakdown by parts, Q4 FY07 through Q4 FY08 |
| APLNDC-Y0000049878 | APLNDC-Y0000049924 | iPod Touch (N72) standard cost breakdown by parts, Q4 FY08 through Q4 FY09 |
| APLNDC-Y0000049925 | APLNDC-Y0000049948 | iPod Touch (N72B) standard cost breakdown by parts, Q4 FY09 through Q1 FY11 |
| APLNDC-Y0000049949 | APLNDC-Y0000050026 | iPod Touch (N81) standard cost breakdown by parts, Q4 FY10 through Q1 FY11 |
| APLNDC-Y0000050027 | APLNDC-Y0000050243 | iPad (K48 - K48M) standard cost breakdown by parts, Q3 FY10 through Q1 FY11 |
| APLNDC-Y0000050244 | APLNDC-Y0000050772 | iPad (K93, K94, K95) standard cost breakdown by parts, Q2 FY11 through Q4 FY11 |
| APLNDC-Y0000050773 | APLNDC-Y0000050895 | iPhone (M68) standard cost breakdown by parts, Q03 FY07 through Q3 FY08 |
| APLNDC-Y0000050896 | APLNDC-Y0000050958 | iPhone 3G (N82) standard cost breakdown by parts, Q4 FY08 through Q3 FY10 |
| APLNDC-Y0000051000 | APLNDC-Y0000051027 | iPhone 3GS (N88) standard cost breakdown by parts, Q3 FY09 through Q3 FY10 |
| APLNDC-Y0000051028 | APLNDC-Y0000051092 | iPhone 3GS (N88A) standard cost breakdown by parts, Q3 FY10 through Q4 FY11 |
| APLNDC-Y0000051093 | APLNDC-Y0000051276 | iPhone 4 (N90) standard cost breakdown by parts, Q4 FY10 through Q4 FY11 |
| APLNDC-Y0000051277 | APLNDC-Y0000051349 | iPhone 4 (N92) standard cost breakdown by parts, Q2 FY11 through Q4 FY11 |
| APLNDC-Y0000051357 | APLNDC-Y0000051362 | Apple Billings Report (US) - iPhone, Q3 FY07 through Q1 FY12. |
| APLNDC-Y0000051357 | APLNDC-Y0000051362 | Apple Billings Report (US) - iPhone, Q3 FY07 through Q1 FY12. |
| APLNDC-Y0000051363 | APLNDC-Y0000051591 | Apple Costed BOMs - iPod Touch, iPhone and iPad Touch, Q1 FY12 |
| APLNDC-Y0000051592 | APLNDC-Y0000051598 | iTunes Business P&L (US), Q1 FY05 through Q1 FY12 |
| APLNDC-Y0000051599 | APLNDC-Y0000051605 | Apple Billings Report (US) - iPod Touch and iPad, Q4 FY07 through Q1 FY12 |
| APLNDC-Y0000051599 | APLNDC-Y0000051605 | Apple Billings Report (US) - iPod Touch and iPad, Q4 FY07 through Q1 FY12 |
| APLNDC-Y0000051606 | APLNDC-Y0000051609 | GAAP Line of Business Report - iPad Accessories, Q3 FY10 through Q1 FY12; iPhone Accessories Q3 FY07 through Q1 FY12; Music Accessories Q1 FY06 through Q1 FY12 |
| APLNDC-Y0000051610 | APLNDC-Y0000051615 | GAAP Line of Business Report - iPad, Q2 FY10 through Q1 FY12; iPhone Q3 FY07 through Q1 FY12; iPod, Q1 FY02 through Q1 FY12 |
| APLNDC-Y0000051616 | APLNDC-F88Y0000051617 | GAAP Line of Business Report - iTS, Q1 FY06 through Q1 FY12 |
| APLNDC-Y0000051618 | APLNDC-Y0000051619 | GAAP Line of Business Report - Licensing, Q1 FY06 through Q1 FY12 |
| APLNDC-Y0000051618 | APLNDC-Y0000051619 | GAAP Line of Business Report - Licensing, Q1 FY06 through Q1 FY12 |
| APLNDC-Y0000051620 | APLNDC-Y0000051620 | GAAP Line of Business Report - Mob.Adv (mobile Advertising), Q2 FY10 through Q1 FY12 |
| APLNDC-Y0000051620 | APLNDC-Y0000051620 | GAAP Line of Business Report - Mob.Adv (mobile Advertising), Q2 FY10 through Q1 FY12 |
| APLNDC-Y0000055415 | APLNDC-Y0000055415 | Apple US Unit Sales by Customer and Channel |
| APLNDC-Y0000055416 | APLNDC-Y0000055416 | iPad Supply and Sales, 2010 - 2011 |
| APLNDC-Y0000055417 | APLNDC-Y0000055417 | iPhone Supply and Sales, 2010 - 2011 |
| APLNDC-Y0000055457 | APLNDC-Y0000055716 | Apple Market Research & Analysis, "iPad Tracking Study: FY11-Q4 Report," 11/2011. |
| APLNDC-Y0000055717 | APLNDC-Y0000055744 | Chadwick Martin Bailey, "iPad Recent Buyer Usage Survey Draft," revised 10/21/2011. |
| APLNDC-Y0000055745 | APLNDC-Y0000055765 | Apple iPad Recent Buyer 2011, Survey Results. |
| APLNDC-Y0000055766 | | iPad Buyer Survey, 12/19/2011. |
| APLNDC-Y0000055808 | | Apple iPad Recent Buyer Country Banner, Survey Results, 2/7/11. |
| APLNDC-Y0000055960 | | Apple Market Research and Analysis, "iPad Recent Buyer 2011: Quantitative Research Among Owners," 12/2011. |
| APLNDC-Y0000056142 | | Apple iPad Buyer Study, 11/10/2011. |
| APLNDC-Y0000066932 | | |
| APLNDC-Y0000066934 | | |
| APLNDC-Y0001148289 | | |
| APLNDC-Y0001148297 | | |
| APLNDC-Y0001148306 | | |
| APLNDC-Y0001148375 | | |
| APLNDC-Y0001148383 | | |
| APLNDC-Y0001148398 | | |
| APLNDC-Y0001148410 | | |
| APLNDC-Y0001148431 | | |
| APLNDC-Y0001148438 | | |
| APLNDC-Y0001148459 | APLNDC-Y000148473 | Made for iPod License. |
| APLNDC-Y0001148474 | APLNDC-Y000148478 | Made for iPod License iPhone/iPad Supplement to Contract. |
| APLNDC-Y0001148505 | | |
| APLNDC-Y0001148556 | | |
| APLNDC-Y0000232431 | | |
| APLNDC-Y0000232434 | | |
| APLNDC-Y0000232445 | | |
| APLNDC-Y0000232447 | | |
| APLNDC-Y0000232449 | | |
| APLNDC-Y0000232451 | | |
| APLNDC-Y0000232552 | | Gartner - Market Share Alert: Mobile Devices, 4Q '11 (Preliminary View), 1/17/12 |
| APLNDC-Y0000232984 | | Excel Spreadsheet: IDC WW Mobile Phone Tracker 2011Q3 Top 10 |
| APLNDC-Z0000000001 | | |
| APLNDC-Z0000000002 | | |
| APLNDC-Z0000000003 | | |
| APLNDC-Z0000000004 | | |
| APLNDC-Z0000000005 | | |
| AppDel 0000001 | AppDel 0000020 | Global Patent License Agreement, between Ericsson and Apple, 1/14/08 |
| AppDel 0000001 | AppDel 0000020 | Global Patent License Agreement, between Ericsson and Apple, 1/14/08 |
| AppDel 0000021 | AppDel 0000037 | Wireless Patent License Agreement, between InterDigital Group and Apple, 6/29/07 |
| AppDel 0000021 | AppDel 0000037 | Wireless Patent License Agreement, between InterDigital Group and Apple, 6/29/07 |
| AppDel 0000038 | AppDel 0000051 | Settlement and License Agreement, between Apple and SPH, 12/31/09 |
| AppDel 0000052 | AppDel 0000070 | Settlement and License Agreement, between Apple and SPH, 12/31/09 |
| AppDel 0000071 | AppDel 0000091 | Settlement and License Agreement, between Apple and SPH and Dr. Park, 12/31/09 |
| AppDel 0000092 | AppDel 0000106 | Settlement and License Agreement, between Apple and SPH, 12/31/09 |
| AppDel 0000107 | AppDel 0000120 | Settlement and License Agreement, between Apple and WIAV, 12/31/09 |
| AppDel 0000121 | AppDel 0000155 | Settlement and License Agreement, between Apple and WIAV, 12/29/08 |
| AppDel 0073610 | AppDel0073648 | Settlement Agreement, between Unova and Apple, 2/4/04 |
| AppDel0158839 | AppDel0158880 | Apple - ETRI Collaboration Agreement, between ETRI and Apple, 12/31/09 |
| AppDel0158881 | AppDel0158905 | Patent License - Narrowband AMR and Wideband AMR Standards, between Apple and Ericsson 6/3/03 |
| AppDel0158906 | AppDel0158943 | Patent License - Narrowband AMR and Wideband AMR Standards, between Apple, Nokia and VoiceAge Corp, 6/3/03 |
| AppDel0158944 | AppDel0158966 | Patent Cross License Agreement, between Apple and Microsoft, 8/5/97 |
| AppDel0158967 | AppDel0159005 | Patent Cross License Agreement, between IBM and Apple, 10/1/91 |
| AppDel0166188 | AppDel0166205 | Standstill and Option Agreement, between MSTG and Apple, October 2009 |
| | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 3**

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| **Samsung Production** | | |
| | | |
| S-794-ITC-000000001 | | |
| S-794-ITC-000000021 | | |
| S-794-ITC-000000026 | | |
| S-794-ITC-000000040 | | |
| S-794-ITC-000000050 | | |
| S-794-ITC-000000245 | | |
| S-794-ITC-000000274 | | |
| S-794-ITC-000001397 | | |
| S-794-ITC-000001523 | | |
| S-794-ITC-000001547 | | |
| S-794-ITC-000001583 | | |
| S-794-ITC-000003019 | | |
| S-794-ITC-000003116 | | |
| S-794-ITC-000003135 | | |
| S-794-ITC-000003162 | | |
| S-794-ITC-000003303 | | |
| S-794-ITC-000003311 | | |
| S-794-ITC-003052419 | | |
| S-794-ITC-003052438 | | |
| S-794-ITC-003052456 | | |
| S-794-ITC-003052510 | | |
| S-794-ITC-003052538 | | |
| S-794-ITC-003052584 | | |
| S-794-ITC-003052662 | | |
| S-794-ITC-005003324 | | |
| S-794-ITC-005003332 | | |
| S-794-ITC-005003340 | | |
| S-794-ITC-005003842 | | |
| S-794-ITC-005003863 | | |
| S-794-ITC-005003871 | | |
| S-794-ITC-005003878 | | |
| S-794-ITC-005005803 | | |
| S-794-ITC-005214589 | | |
| S-794-ITC-005214598 | | |
| S-794-ITC-005216331 | | |
| S-794-ITC-005216440 | | |
| S-794-ITC-005280285 | | |
| S-794-ITC-005280871 | | |
| S-794-ITC-005282525 | | |
| S-794-ITC-005282911 | | |
| S-794-ITC-005285412 | | |
| S-794-ITC-005285477 | | |
| S-794-ITC-005286924 | | |
| S-794-ITC-005287295 | | |
| S-794-ITC-005288607 | | |
| S-794-ITC-005517418 | | |
| S-794-ITC-005517433 | | |
| S-794-ITC-005517442 | | |
| S-794-ITC-005517484 | | |
| S-794-ITC-005517513 | | |
| SAMNDC00036232 | | |
| SAMNDCA00025016 | SAMNDCA00025036 | |
| SAMNDCA00027737 | SAMNDCA00027770 | |
| SAMNDCA00027737 | SAMNDCA00027770 | |
| SAMNDCA00052029 | | |
| SAMNDCA00052116 | | |
| SAMNDCA00052124 | | |
| SAMNDCA00052124 | | |
| SAMNDCA00052164 | | |
| SAMNDCA00052166 | | |
| SAMNDCA00176053 | | |
| SAMNDCA00176053 | | |
| SAMNDCA00176053 | | |
| SAMNDCA00176053 | | |
| SAMNDCA00191354 | | |
| SAMNDCA00191410 | | |
| SAMNDCA00191455 | | |
| SAMNDCA00191722 | | |
| SAMNDCA00191807 | | |
| SAMNDCA00191988 | | |
| SAMNDCA00192142 | | |
| SAMNDCA00192232 | | |
| SAMNDCA00192770 | | |
| SAMNDCA00193297 | | |
| SAMNDCA00193317 | | |
| SAMNDCA00193332 | | |
| SAMNDCA00193538 | | |
| SAMNDCA00193550 | | |
| SAMNDCA00193564 | | |
| SAMNDCA00193604 | | |
| SAMNDCA00193637 | | |
| SAMNDCA00193719 | | |
| SAMNDCA00193785 | | |
| SAMNDCA00194415 | | |
| SAMNDCA00194597 | | |
| SAMNDCA00194658 | | |
| SAMNDCA00194675 | | |
| SAMNDCA00194741 | | |
| SAMNDCA00195065 | | |
| SAMNDCA00195189 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00195249 | | |
| SAMNDCA00195523 | | |
| SAMNDCA00196337 | | |
| SAMNDCA00196419 | | |
| SAMNDCA00196449 | | |
| SAMNDCA00196646 | | |
| SAMNDCA00196646 | | |
| SAMNDCA00201284 | | |
| SAMNDCA00201336 | | |
| SAMNDCA00201351 | | |
| SAMNDCA00201351 | | |
| SAMNDCA00201771 | | |
| SAMNDCA00201771 | | |
| SAMNDCA00201771 | | |
| SAMNDCA00202212 | | |
| SAMNDCA00202336 | | |
| SAMNDCA00202869 | SAMNDCA00202933 | |
| SAMNDCA00203016 | | |
| SAMNDCA00203016 | | |
| SAMNDCA00203092 | | |
| SAMNDCA00203268 | | |
| SAMNDCA00203727 | | |
| SAMNDCA00203727 | | |
| SAMNDCA00203727 | | |
| SAMNDCA00203811 | | |
| SAMNDCA00203880 | | |
| SAMNDCA00203880 | | |
| SAMNDCA00203880 | | |
| SAMNDCA00203880 | | |
| SAMNDCA00203880 | | |
| SAMNDCA00203880 | | |
| SAMNDCA00204410 | SAMNDCA00204494 | |
| SAMNDCA00204759 | SAMNDCA00204795 | |
| SAMNDCA00204796 | SAMNDCA00204832 | |
| SAMNDCA00204833 | SAMNDCA00204869 | |
| SAMNDCA00205032 | SAMNDCA00205032 | |
| SAMNDCA00205082 | SAMNDCA00205232 | |
| SAMNDCA00205345 | SAMNDCA00205346 | |
| SAMNDCA00205418 | SAMNDCA00205575 | |
| SAMNDCA00207338 | SAMNDCA00207355 | |
| SAMNDCA00207486 | | |
| SAMNDCA00207902 | SAMNDCA00207952 | |
| SAMNDCA00208654 | | |
| SAMNDCA00214274 | | |
| SAMNDCA00214962 | SAMNDCA00214968 | |
| SAMNDCA00214969 | SAMNDCA00215201 | |
| SAMNDCA00215230 | SAMNDCA00215462 | |
| SAMNDCA00215509 | SAMNDCA00215526 | |
| SAMNDCA00217372 | | |
| SAMNDCA00217372 | | |
| SAMNDCA00220398 | SAMNDCA00220422 | |
| SAMNDCA00220455 | SAMNDCA00220503 | |
| SAMNDCA00221321 | SAMNDCA00221453 | |
| SAMNDCA00221454 | SAMNDCA00221467 | |
| SAMNDCA00221468 | SAMNDCA00221494 | |
| SAMNDCA00221495 | SAMNDCA00221550 | |
| SAMNDCA00221601 | SAMNDCA00221636 | |
| SAMNDCA00221705 | | |
| SAMNDCA00221819 | SAMNDCA00221877 | |
| SAMNDCA00222973 | SAMNDCA00223050 | |
| SAMNDCA00223051 | SAMNDCA00223128 | |
| SAMNDCA00223129 | SAMNDCA00223206 | |
| SAMNDCA00223207 | SAMNDCA00223284 | |
| SAMNDCA00223285 | SAMNDCA00223363 | |
| SAMNDCA00223364 | SAMNDCA00223440 | |
| SAMNDCA00223441 | SAMNDCA00223521 | |
| SAMNDCA00223599 | SAMNDCA00223675 | |
| SAMNDCA00223676 | SAMNDCA00223731 | |
| SAMNDCA00223732 | SAMNDCA00223770 | |
| SAMNDCA00223771 | SAMNDCA00223812 | |
| SAMNDCA00223813 | SAMNDCA00223864 | |
| SAMNDCA00223865 | SAMNDCA00223928 | |
| SAMNDCA00223929 | SAMNDCA00223970 | |
| SAMNDCA00223971 | SAMNDCA00223972 | |
| SAMNDCA00223973 | SAMNDCA00223980 | |
| SAMNDCA00223981 | SAMNDCA00223991 | |
| SAMNDCA00223992 | SAMNDCA00224011 | |
| SAMNDCA00224012 | SAMNDCA00224027 | |
| SAMNDCA00224028 | SAMNDCA00224150 | |
| SAMNDCA00224151 | SAMNDCA00224269 | |
| SAMNDCA00224270 | SAMNDCA00224389 | |
| SAMNDCA00224444 | SAMNDCA00224461 | |
| SAMNDCA00224547 | | |
| SAMNDCA00224548 | SAMNDCA00224580 | |
| SAMNDCA00224581 | SAMNDCA00224586 | |
| SAMNDCA00224818 | | |
| SAMNDCA00224819 | | |
| SAMNDCA00225612 | SAMNDCA00225632 | |
| SAMNDCA00225641 | SAMNDCA00225704 | |
| SAMNDCA00225721 | SAMNDCA00225829 | |
| SAMNDCA00225898 | | |
| SAMNDCA00225899 | | |
| SAMNDCA00225900 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00225901 | | |
| SAMNDCA00225902 | | |
| SAMNDCA00225903 | | |
| SAMNDCA00225904 | | |
| SAMNDCA00225905 | | |
| SAMNDCA00225906 | | |
| SAMNDCA00225907 | | |
| SAMNDCA00225908 | | |
| SAMNDCA00225909 | | |
| SAMNDCA00225910 | | |
| SAMNDCA00225911 | | |
| SAMNDCA00226108 | | |
| SAMNDCA00226110 | | |
| SAMNDCA00226111 | | |
| SAMNDCA00226448 | SAMNDCA00226522 | |
| SAMNDCA00226523 | SAMNDCA00226588 | |
| SAMNDCA00226589 | SAMNDCA00226816 | |
| SAMNDCA00226817 | SAMNDCA00226870 | |
| SAMNDCA00226871 | SAMNDCA00226914 | |
| SAMNDCA00226915 | SAMNDCA00226943 | |
| SAMNDCA00226944 | SAMNDCA00226985 | |
| SAMNDCA00226986 | | |
| SAMNDCA00226990 | | |
| SAMNDCA00226991 | | |
| SAMNDCA00226992 | | |
| SAMNDCA00226993 | | |
| SAMNDCA00226994 | | |
| SAMNDCA00226995 | | |
| SAMNDCA00226996 | | |
| SAMNDCA00226997 | | |
| SAMNDCA00226998 | | |
| SAMNDCA00226999 | | |
| SAMNDCA00227000 | | |
| SAMNDCA00227001 | SAMNDCA00227028 | |
| SAMNDCA00227029 | | |
| SAMNDCA00227030 | SAMNDCA00227052 | |
| SAMNDCA00227053 | SAMNDCA00227075 | |
| SAMNDCA00227076 | SAMNDCA00227092 | |
| SAMNDCA00227093 | SAMNDCA00227109 | |
| SAMNDCA00227110 | | |
| SAMNDCA00227111 | SAMNDCA00227127 | |
| SAMNDCA00227128 | SAMNDCA00227144 | |
| SAMNDCA00227145 | SAMNDCA00227161 | |
| SAMNDCA00227162 | SAMNDCA00227189 | |
| SAMNDCA00227190 | | |
| SAMNDCA00227191 | | |
| SAMNDCA00227192 | | |
| SAMNDCA00227193 | SAMNDCA00227220 | |
| SAMNDCA00227221 | | |
| SAMNDCA00227225 | | |
| SAMNDCA00227226 | | |
| SAMNDCA00227227 | | |
| SAMNDCA00227228 | | |
| SAMNDCA00227229 | | |
| SAMNDCA00227230 | | |
| SAMNDCA00227231 | SAMNDCA00227254 | |
| SAMNDCA00227255 | SAMNDCA00227292 | |
| SAMNDCA00227293 | SAMNDCA00227311 | |
| SAMNDCA00227331 | | |
| SAMNDCA00227332 | | |
| SAMNDCA00227333 | SAMNDCA00227356 | |
| SAMNDCA00227357 | | |
| SAMNDCA00227358 | | |
| SAMNDCA00227359 | SAMNDCA00227388 | |
| SAMNDCA00227389 | SAMNDCA00227418 | |
| SAMNDCA00227419 | SAMNDCA00227435 | |
| SAMNDCA00227436 | SAMNDCA00227452 | |
| SAMNDCA00227453 | SAMNDCA00227469 | |
| SAMNDCA00227470 | SAMNDCA00227486 | |
| SAMNDCA00227487 | SAMNDCA00227503 | |
| SAMNDCA00227504 | SAMNDCA00227527 | |
| SAMNDCA00227528 | | |
| SAMNDCA00227529 | | |
| SAMNDCA00227530 | | |
| SAMNDCA00227531 | SAMNDCA00227547 | |
| SAMNDCA00227548 | SAMNDCA00227564 | |
| SAMNDCA00227565 | SAMNDCA00227581 | |
| SAMNDCA00227582 | | |
| SAMNDCA00227584 | SAMNDCA00227612 | |
| SAMNDCA00227613 | | |
| SAMNDCA00227614 | | |
| SAMNDCA00227615 | | |
| SAMNDCA00227616 | | |
| SAMNDCA00227617 | | |
| SAMNDCA00227618 | | |
| SAMNDCA00227619 | SAMNDCA00227649 | |
| SAMNDCA00227650 | | |
| SAMNDCA00227651 | | |
| SAMNDCA00227652 | | |
| SAMNDCA00227653 | | |
| SAMNDCA00227685 | | |
| SAMNDCA00227686 | | |
| SAMNDCA00227687 | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                          EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00227688 | | |
| SAMNDCA00227689 | SAMNDCA00227714 | |
| SAMNDCA00227715 | | |
| SAMNDCA00227716 | | |
| SAMNDCA00228887 | | |
| SAMNDCA00228934 | | |
| SAMNDCA00228981 | | |
| SAMNDCA00229011 | | |
| SAMNDCA00229396 | | |
| SAMNDCA00229399 | | |
| SAMNDCA00229399 | | |
| SAMNDCA00229410 | | |
| SAMNDCA00229410 | | |
| SAMNDCA00229440 | | |
| SAMNDCA00229440 | | |
| SAMNDCA00229449 | | |
| SAMNDCA00229449 | | |
| SAMNDCA00230720 | | |
| SAMNDCA00230916 | | |
| SAMNDCA00230919 | | |
| SAMNDCA00230947 | | |
| SAMNDCA00230949 | | |
| SAMNDCA00232184 | | |
| SAMNDCA00232674 | | |
| SAMNDCA00232676 | | |
| SAMNDCA00232771 | | |
| SAMNDCA00232824 | | |
| SAMNDCA00232825 | | |
| SAMNDCA00232825 | | |
| SAMNDCA00232844 | | |
| SAMNDCA00232848 | | |
| SAMNDCA00232848 | | |
| SAMNDCA00232854 | | |
| SAMNDCA00233062 | | |
| SAMNDCA00233063 | | |
| SAMNDCA00233097 | | |
| SAMNDCA00233122 | | |
| SAMNDCA00233722 | | |
| SAMNDCA00235001 | | |
| SAMNDCA00235006 | | |
| SAMNDCA00235716 | | |
| SAMNDCA00237364 | | |
| SAMNDCA00237929 | | |
| SAMNDCA00238153 | | |
| SAMNDCA00238251 | | |
| SAMNDCA00238251 | | |
| SAMNDCA00238432 | | |
| SAMNDCA00241232 | SAMNDCA00224746 | |
| SAMNDCA00244232 | | |
| SAMNDCA00244835 | | |
| SAMNDCA00246768 | | |
| SAMNDCA00247139 | | |
| SAMNDCA00249346 | | |
| SAMNDCA00251457 | | |
| SAMNDCA00251457 | | |
| SAMNDCA00251457 | | |
| SAMNDCA00251506 | | |
| SAMNDCA00251506 | | |
| SAMNDCA00251538 | | |
| SAMNDCA00251538 | | |
| SAMNDCA00251538 | | |
| SAMNDCA00256338 | | |
| SAMNDCA00256552 | | |
| SAMNDCA00257052 | | |
| SAMNDCA00280201 | SAMNDCA00280211 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280201 | | |
| SAMNDCA00280212 | SAMNDCA00280221 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280212 | | |
| SAMNDCA00280222 | SAMNDCA00280231 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280222 | | |
| SAMNDCA00280232 | SAMNDCA00280241 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280232 | | |
| SAMNDCA00280242 | SAMNDCA00280251 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280242 | | |
| SAMNDCA00280252 | SAMNDCA00280260 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280252 | | |
| SAMNDCA00280261 | SAMNDCA00280269 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280261 | | |
| SAMNDCA00280270 | SAMNDCA00280278 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280270 | | |
| SAMNDCA00280279 | SAMNDCA00280287 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280279 | | |
| SAMNDCA00280288 | SAMNDCA00280296 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280288 | | |
| SAMNDCA00280297 | SAMNDCA00280305 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280297 | | |
| SAMNDCA00280306 | SAMNDCA00280314 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280306 | | |
| SAMNDCA00280315 | SAMNDCA00280323 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280315 | | |
| SAMNDCA00280324 | SAMNDCA00280332 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280324 | | |
| SAMNDCA00280333 | SAMNDCA00280341 | US Market Weekly Sales Report, STA. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00280333 | | |
| SAMNDCA00280342 | SAMNDCA00280350 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280342 | | |
| SAMNDCA00280351 | SAMNDCA00280359 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280351 | | |
| SAMNDCA00280360 | SAMNDCA00280368 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280360 | | |
| SAMNDCA00280369 | SAMNDCA00280377 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280369 | | |
| SAMNDCA00280378 | SAMNDCA00280386 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280378 | | |
| SAMNDCA00280387 | SAMNDCA00280395 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280387 | | |
| SAMNDCA00280396 | SAMNDCA00280403 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280396 | | |
| SAMNDCA00280404 | SAMNDCA00280411 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280404 | | |
| SAMNDCA00280412 | SAMNDCA00280420 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280412 | | |
| SAMNDCA00280421 | SAMNDCA00280429 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280421 | | |
| SAMNDCA00280430 | SAMNDCA00280438 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280430 | | |
| SAMNDCA00280439 | SAMNDCA00280447 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280439 | | |
| SAMNDCA00280448 | SAMNDCA00280456 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280448 | | |
| SAMNDCA00280457 | SAMNDCA00280465 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280457 | | |
| SAMNDCA00280466 | SAMNDCA00280475 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280466 | | |
| SAMNDCA00280476 | SAMNDCA00280485 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280476 | | |
| SAMNDCA00280486 | SAMNDCA00280494 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280486 | | |
| SAMNDCA00280495 | SAMNDCA00280503 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280495 | | |
| SAMNDCA00280504 | SAMNDCA00280513 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280504 | | |
| SAMNDCA00280514 | SAMNDCA00280523 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280514 | | |
| SAMNDCA00280524 | SAMNDCA00280533 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280524 | | |
| SAMNDCA00280534 | SAMNDCA00280543 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280534 | | |
| SAMNDCA00280544 | SAMNDCA00280554 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280544 | | |
| SAMNDCA00280555 | SAMNDCA00280566 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280555 | | |
| SAMNDCA00280567 | SAMNDCA00280578 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280567 | | |
| SAMNDCA00280579 | SAMNDCA00280590 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280579 | | |
| SAMNDCA00280591 | SAMNDCA00280602 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280591 | | |
| SAMNDCA00280603 | SAMNDCA00280615 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280603 | | |
| SAMNDCA00280616 | SAMNDCA00280628 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280616 | | |
| SAMNDCA00280629 | SAMNDCA00280641 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280629 | | |
| SAMNDCA00280642 | SAMNDCA00280654 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280642 | | |
| SAMNDCA00280655 | SAMNDCA00280667 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280655 | | |
| SAMNDCA00280668 | SAMNDCA00280678 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280668 | | |
| SAMNDCA00280679 | SAMNDCA00280690 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280679 | | |
| SAMNDCA00280691 | SAMNDCA00280703 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280691 | | |
| SAMNDCA00280704 | SAMNDCA00280716 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280704 | | |
| SAMNDCA00280717 | SAMNDCA00280731 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280717 | | |
| SAMNDCA00280732 | SAMNDCA00280746 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280732 | | |
| SAMNDCA00280747 | SAMNDCA00280761 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280747 | | |
| SAMNDCA00280762 | SAMNDCA00280777 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280762 | | |
| SAMNDCA00280778 | SAMNDCA00280793 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280778 | | |
| SAMNDCA00280794 | SAMNDCA00280808 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280794 | | |
| SAMNDCA00280809 | SAMNDCA00280823 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280809 | | |
| SAMNDCA00280824 | SAMNDCA00280838 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280824 | | |
| SAMNDCA00280839 | SAMNDCA00280854 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280839 | | |
| SAMNDCA00280855 | SAMNDCA00280870 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280855 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00280871 | SAMNDCA00280886 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280871 | | |
| SAMNDCA00280887 | SAMNDCA00280902 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280887 | | |
| SAMNDCA00280903 | SAMNDCA00280917 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280903 | | |
| SAMNDCA00280918 | SAMNDCA00280932 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280918 | | |
| SAMNDCA00280933 | SAMNDCA00280945 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280933 | | |
| SAMNDCA00280946 | SAMNDCA00280961 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280946 | | |
| SAMNDCA00280962 | SAMNDCA00280977 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280962 | | |
| SAMNDCA00280978 | SAMNDCA00280993 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280978 | | |
| SAMNDCA00280994 | SAMNDCA00281008 | US Market Weekly Sales Report, STA. |
| SAMNDCA00280994 | | |
| SAMNDCA00281009 | SAMNDCA00281023 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281009 | | |
| SAMNDCA00281024 | SAMNDCA00281038 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281024 | | |
| SAMNDCA00281039 | SAMNDCA00281052 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281039 | | |
| SAMNDCA00281053 | SAMNDCA00281067 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281053 | | |
| SAMNDCA00281068 | SAMNDCA00281081 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281068 | | |
| SAMNDCA00281082 | SAMNDCA00281095 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281082 | | |
| SAMNDCA00281096 | SAMNDCA00281109 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281096 | | |
| SAMNDCA00281110 | SAMNDCA00281122 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281110 | | |
| SAMNDCA00281123 | SAMNDCA00281135 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281123 | | |
| SAMNDCA00281136 | SAMNDCA00281148 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281136 | | |
| SAMNDCA00281149 | SAMNDCA00281161 | US Market Weekly Sales Report, STA. |
| SAMNDCA00281149 | | |
| SAMNDCA00281149 | | |
| SAMNDCA00281162 | | |
| SAMNDCA00281218 | | |
| SAMNDCA00281259 | | |
| SAMNDCA00281448 | | |
| SAMNDCA00281452 | | |
| SAMNDCA00281538 | | |
| SAMNDCA00281624 | | |
| SAMNDCA00281735 | | |
| SAMNDCA00281736 | | |
| SAMNDCA00281742 | | |
| SAMNDCA00281750 | | |
| SAMNDCA00281892 | | |
| SAMNDCA00281894 | | |
| SAMNDCA00281902 | | |
| SAMNDCA00281939 | | |
| SAMNDCA00281976 | | |
| SAMNDCA00281983 | | |
| SAMNDCA00282033 | | |
| SAMNDCA00282089 | | |
| SAMNDCA00282095 | | |
| SAMNDCA00282096 | | |
| SAMNDCA00282097 | | |
| SAMNDCA00282098 | | |
| SAMNDCA00282099 | | |
| SAMNDCA00282100 | | |
| SAMNDCA00282101 | | |
| SAMNDCA00282102 | | |
| SAMNDCA00282103 | | |
| SAMNDCA00282104 | | |
| SAMNDCA00282105 | | |
| SAMNDCA00282106 | | |
| SAMNDCA00282106 | | |
| SAMNDCA00282107 | | |
| SAMNDCA00282108 | | |
| SAMNDCA00282109 | | |
| SAMNDCA00282110 | | |
| SAMNDCA00282111 | | |
| SAMNDCA00282112 | | |
| SAMNDCA00322161 | | |
| SAMNDCA00322161 | | |
| SAMNDCA00322177 | | |
| SAMNDCA00322177 | | |
| SAMNDCA00322193 | | |
| SAMNDCA00322193 | | |
| SAMNDCA00322209 | | |
| SAMNDCA00322209 | | |
| SAMNDCA00322239 | | |
| SAMNDCA00322239 | | |
| SAMNDCA00322284 | | |
| SAMNDCA00322284 | | |
| SAMNDCA00322319 | | |
| SAMNDCA00322319 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

Documents Considered List

**EXHIBIT 3**

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00322349 | | |
| SAMNDCA00322349 | | |
| SAMNDCA00322374 | | |
| SAMNDCA00322374 | | |
| SAMNDCA00322398 | | |
| SAMNDCA00322398 | | |
| SAMNDCA00322446 | | |
| SAMNDCA00322446 | | |
| SAMNDCA00322475 | | |
| SAMNDCA00322475 | | |
| SAMNDCA00322518 | | |
| SAMNDCA00322523 | | |
| SAMNDCA00322532 | | |
| SAMNDCA00322557 | | |
| SAMNDCA00322558 | | |
| SAMNDCA00322561 | | |
| SAMNDCA00322562 | | |
| SAMNDCA00322563 | | |
| SAMNDCA00322570 | | |
| SAMNDCA00322571 | | |
| SAMNDCA00322578 | | |
| SAMNDCA00322579 | | |
| SAMNDCA00322586 | | |
| SAMNDCA00322587 | | |
| SAMNDCA00322654 | | |
| SAMNDCA00322667 | | |
| SAMNDCA00322671 | | |
| SAMNDCA00322675 | | |
| SAMNDCA00322679 | | |
| SAMNDCA00322683 | | |
| SAMNDCA00322698 | | |
| SAMNDCA00322701 | | |
| SAMNDCA00322704 | | |
| SAMNDCA00322707 | | |
| SAMNDCA00322711 | | |
| SAMNDCA00322715 | | |
| SAMNDCA00322724 | | |
| SAMNDCA00322726 | | |
| SAMNDCA00322728 | | |
| SAMNDCA00322730 | | |
| SAMNDCA00322732 | | |
| SAMNDCA00322734 | | |
| SAMNDCA00322736 | | |
| SAMNDCA00322740 | | |
| SAMNDCA00322742 | | |
| SAMNDCA00322745 | | |
| SAMNDCA00322747 | | |
| SAMNDCA00322750 | | |
| SAMNDCA00322752 | | |
| SAMNDCA00322755 | | |
| SAMNDCA00322756 | | |
| SAMNDCA00322759 | | |
| SAMNDCA00322760 | | |
| SAMNDCA00322762 | | |
| SAMNDCA00322763 | | |
| SAMNDCA00322766 | | |
| SAMNDCA00322767 | | |
| SAMNDCA00322770 | | |
| SAMNDCA00322772 | | |
| SAMNDCA00322773 | | |
| SAMNDCA00322775 | | |
| SAMNDCA00322778 | | |
| SAMNDCA00322784 | | |
| SAMNDCA00322789 | | |
| SAMNDCA00322794 | | |
| SAMNDCA00322801 | | |
| SAMNDCA00322806 | | |
| SAMNDCA00322811 | | |
| SAMNDCA00322815 | | |
| SAMNDCA00322820 | | |
| SAMNDCA00322824 | | |
| SAMNDCA00322843 | | |
| SAMNDCA00322851 | | |
| SAMNDCA00322858 | | |
| SAMNDCA00322940 | | |
| SAMNDCA00323037 | | |
| SAMNDCA00323040 | | |
| SAMNDCA00323044 | | |
| SAMNDCA00323046 | | |
| SAMNDCA00323048 | | |
| SAMNDCA00323050 | | |
| SAMNDCA00323052 | | |
| SAMNDCA00323053 | | |
| SAMNDCA00323054 | | |
| SAMNDCA00323055 | | |
| SAMNDCA00323057 | | |
| SAMNDCA00323059 | | |
| SAMNDCA00323060 | | |
| SAMNDCA00323064 | | |
| SAMNDCA00323066 | | |
| SAMNDCA00323068 | | |
| SAMNDCA00323083 | | |
| SAMNDCA00323085 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00323087 | | |
| SAMNDCA00323091 | | |
| SAMNDCA00323094 | | |
| SAMNDCA00323097 | | |
| SAMNDCA00323099 | | |
| SAMNDCA00323101 | | |
| SAMNDCA00323103 | | |
| SAMNDCA00323104 | | |
| SAMNDCA00323107 | | |
| SAMNDCA00323108 | | |
| SAMNDCA00323110 | | |
| SAMNDCA00323111 | | |
| SAMNDCA00323112 | | |
| SAMNDCA00323113 | | |
| SAMNDCA00323115 | | |
| SAMNDCA00323119 | | |
| SAMNDCA00323120 | | |
| SAMNDCA00323121 | | |
| SAMNDCA00323131 | | |
| SAMNDCA00323156 | | |
| SAMNDCA00323160 | | |
| SAMNDCA00323163 | | |
| SAMNDCA00323165 | | |
| SAMNDCA00323167 | | |
| SAMNDCA00323174 | | |
| SAMNDCA00323181 | | |
| SAMNDCA00323182 | | |
| SAMNDCA00323184 | | |
| SAMNDCA00323186 | | |
| SAMNDCA00323188 | | |
| SAMNDCA00323229 | | |
| SAMNDCA00323243 | | |
| SAMNDCA00323267 | | |
| SAMNDCA00323269 | | |
| SAMNDCA00323271 | | |
| SAMNDCA00323273 | | |
| SAMNDCA00323280 | | |
| SAMNDCA00323282 | | |
| SAMNDCA00323283 | | |
| SAMNDCA00323284 | | |
| SAMNDCA00323298 | | |
| SAMNDCA00323329 | | |
| SAMNDCA00323358 | | |
| SAMNDCA00323387 | | |
| SAMNDCA00323402 | | |
| SAMNDCA00323440 | | |
| SAMNDCA00323440 | | |
| SAMNDCA00323449 | | |
| SAMNDCA00323480 | | |
| SAMNDCA00323497 | | |
| SAMNDCA00323505 | | |
| SAMNDCA00323574 | | |
| SAMNDCA00323577 | | |
| SAMNDCA00323587 | | |
| SAMNDCA00323598 | | |
| SAMNDCA00323607 | | |
| SAMNDCA00323613 | | |
| SAMNDCA00323628 | | |
| SAMNDCA00323629 | | |
| SAMNDCA00323643 | | |
| SAMNDCA00323668 | | |
| SAMNDCA00323669 | | |
| SAMNDCA00323671 | | |
| SAMNDCA00323672 | | |
| SAMNDCA00323673 | | |
| SAMNDCA00323674 | | |
| SAMNDCA00323675 | | |
| SAMNDCA00323678 | | |
| SAMNDCA00323679 | | |
| SAMNDCA00323679 | | |
| SAMNDCA00323689 | | |
| SAMNDCA00323689 | | |
| SAMNDCA00323847 | | |
| SAMNDCA00323849 | | |
| SAMNDCA00323850 | | |
| SAMNDCA00323853 | | |
| SAMNDCA00323856 | | |
| SAMNDCA00323857 | | |
| SAMNDCA00323859 | | |
| SAMNDCA00323862 | | |
| SAMNDCA00323895 | | |
| SAMNDCA00323943 | | |
| SAMNDCA00325495 | | |
| SAMNDCA00325495 | | |
| SAMNDCA00325522 | | |
| SAMNDCA00325523 | | |
| SAMNDCA00325524 | | |
| SAMNDCA00325526 | | |
| SAMNDCA00325532 | | |
| SAMNDCA00325535 | | |
| SAMNDCA00325536 | | |
| SAMNDCA00325537 | | |
| SAMNDCA00325540 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00325541 | | |
| SAMNDCA00325545 | | |
| SAMNDCA00325549 | | |
| SAMNDCA00325550 | | |
| SAMNDCA00325555 | | |
| SAMNDCA00325556 | | |
| SAMNDCA00325562 | | |
| SAMNDCA00325571 | | |
| SAMNDCA00325574 | | |
| SAMNDCA00325575 | | |
| SAMNDCA00325576 | | |
| SAMNDCA00325613 | | |
| SAMNDCA00325619 | | |
| SAMNDCA00325651 | | |
| SAMNDCA00325660 | | |
| SAMNDCA00325661 | | |
| SAMNDCA00325663 | | |
| SAMNDCA00325665 | | |
| SAMNDCA00325666 | | |
| SAMNDCA00325671 | | |
| SAMNDCA00325673 | | |
| SAMNDCA00325675 | | |
| SAMNDCA00325677 | | |
| SAMNDCA00325678 | | |
| SAMNDCA00325683 | | |
| SAMNDCA00325687 | | |
| SAMNDCA00325691 | | |
| SAMNDCA00325701 | | |
| SAMNDCA00325778 | | |
| SAMNDCA00325789 | | |
| SAMNDCA00325794 | | |
| SAMNDCA00325800 | | |
| SAMNDCA00325807 | | |
| SAMNDCA00325812 | | |
| SAMNDCA00325843 | | |
| SAMNDCA00325855 | | |
| SAMNDCA00325867 | | |
| SAMNDCA00325875 | | |
| SAMNDCA00325882 | | |
| SAMNDCA00325919 | | |
| SAMNDCA00325951 | | |
| SAMNDCA00325961 | | |
| SAMNDCA00325968 | | |
| SAMNDCA00325969 | | |
| SAMNDCA00325974 | | |
| SAMNDCA00325978 | | |
| SAMNDCA00325988 | | |
| SAMNDCA00326065 | | |
| SAMNDCA00326080 | | |
| SAMNDCA00326084 | | |
| SAMNDCA00326108 | | |
| SAMNDCA00326120 | | |
| SAMNDCA00326135 | | |
| SAMNDCA00326142 | | |
| SAMNDCA00326144 | | |
| SAMNDCA00326161 | | |
| SAMNDCA00326178 | | |
| SAMNDCA00326196 | | |
| SAMNDCA00326201 | | |
| SAMNDCA00326207 | | |
| SAMNDCA00326214 | | |
| SAMNDCA00326219 | | |
| SAMNDCA00326222 | | |
| SAMNDCA00326226 | | |
| SAMNDCA00326228 | | |
| SAMNDCA00326230 | | |
| SAMNDCA00326233 | | |
| SAMNDCA00326236 | | |
| SAMNDCA00326238 | | |
| SAMNDCA00326241 | | |
| SAMNDCA00326244 | | |
| SAMNDCA00326250 | | |
| SAMNDCA00326259 | | |
| SAMNDCA00326264 | | |
| SAMNDCA00326270 | | |
| SAMNDCA00326278 | | |
| SAMNDCA00326284 | | |
| SAMNDCA00326285 | | |
| SAMNDCA00326294 | | |
| SAMNDCA00326295 | | |
| SAMNDCA00326296 | | |
| SAMNDCA00326297 | | |
| SAMNDCA00326299 | | |
| SAMNDCA00330337 | | |
| SAMNDCA00330342 | | |
| SAMNDCA00330344 | | |
| SAMNDCA00330345 | | |
| SAMNDCA00330347 | | |
| SAMNDCA00330349 | | |
| SAMNDCA00330351 | | |
| SAMNDCA00330353 | | |
| SAMNDCA00330354 | | |
| SAMNDCA00330355 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00330356 | | |
| SAMNDCA00330357 | | |
| SAMNDCA00330358 | | |
| SAMNDCA00330359 | | |
| SAMNDCA00330360 | | |
| SAMNDCA00330361 | | |
| SAMNDCA00330362 | | |
| SAMNDCA00330363 | | |
| SAMNDCA00330365 | | |
| SAMNDCA00330367 | | |
| SAMNDCA00330369 | | |
| SAMNDCA00330399 | | |
| SAMNDCA00330402 | | |
| SAMNDCA00330405 | | |
| SAMNDCA00330408 | | |
| SAMNDCA00330413 | | |
| SAMNDCA00330419 | | |
| SAMNDCA00330422 | | |
| SAMNDCA00330425 | | |
| SAMNDCA00330426 | | |
| SAMNDCA00330428 | | |
| SAMNDCA00330431 | | |
| SAMNDCA00330453 | | |
| SAMNDCA00330475 | | |
| SAMNDCA00330476 | | |
| SAMNDCA00330477 | | |
| SAMNDCA00330482 | | |
| SAMNDCA00330483 | | |
| SAMNDCA00330484 | | |
| SAMNDCA00330485 | | |
| SAMNDCA00330486 | | |
| SAMNDCA00330529 | | |
| SAMNDCA00330534 | | |
| SAMNDCA00330542 | | |
| SAMNDCA00330550 | | |
| SAMNDCA00330553 | | |
| SAMNDCA00330562 | | |
| SAMNDCA00330563 | | |
| SAMNDCA00330564 | | |
| SAMNDCA00330565 | | |
| SAMNDCA00330570 | | |
| SAMNDCA00330572 | | |
| SAMNDCA00330576 | | |
| SAMNDCA00330580 | | |
| SAMNDCA00330584 | | |
| SAMNDCA00330589 | | |
| SAMNDCA00330606 | | |
| SAMNDCA00330611 | | |
| SAMNDCA00330632 | | |
| SAMNDCA00330634 | | |
| SAMNDCA00330647 | | |
| SAMNDCA00330650 | | |
| SAMNDCA00330662 | | |
| SAMNDCA00330665 | | |
| SAMNDCA00330671 | | |
| SAMNDCA00330675 | | |
| SAMNDCA00330678 | | |
| SAMNDCA00330682 | | |
| SAMNDCA00330683 | | |
| SAMNDCA00330684 | | |
| SAMNDCA00330686 | | |
| SAMNDCA00330688 | | |
| SAMNDCA00330690 | | |
| SAMNDCA00330692 | | |
| SAMNDCA00330717 | | |
| SAMNDCA00330719 | | |
| SAMNDCA00330721 | | |
| SAMNDCA00330724 | | |
| SAMNDCA00330749 | | |
| SAMNDCA00330750 | | |
| SAMNDCA00330760 | | |
| SAMNDCA00330776 | | |
| SAMNDCA00330799 | | |
| SAMNDCA00330800 | | |
| SAMNDCA00330802 | | |
| SAMNDCA00330827 | | |
| SAMNDCA00330829 | | |
| SAMNDCA00330839 | | |
| SAMNDCA00330855 | | |
| SAMNDCA00330878 | | |
| SAMNDCA00330881 | | |
| SAMNDCA00330906 | | |
| SAMNDCA00330908 | | |
| SAMNDCA00330910 | | |
| SAMNDCA00330974 | | |
| SAMNDCA00330976 | | |
| SAMNDCA00330978 | | |
| SAMNDCA00330981 | | |
| SAMNDCA00330982 | | |
| SAMNDCA00330983 | | |
| SAMNDCA00330985 | | |
| SAMNDCA00330999 | | |
| SAMNDCA00331000 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00331028 | | |
| SAMNDCA00331056 | | |
| SAMNDCA00331059 | | |
| SAMNDCA00331060 | | |
| SAMNDCA00331068 | | |
| SAMNDCA00331069 | | |
| SAMNDCA00331078 | | |
| SAMNDCA00331079 | | |
| SAMNDCA00331082 | | |
| SAMNDCA00331083 | | |
| SAMNDCA00331088 | | |
| SAMNDCA00331089 | | |
| SAMNDCA00331093 | | |
| SAMNDCA00331097 | | |
| SAMNDCA00331100 | | |
| SAMNDCA00331104 | | |
| SAMNDCA00331105 | | |
| SAMNDCA00331108 | | |
| SAMNDCA00331111 | | |
| SAMNDCA00331115 | | |
| SAMNDCA00331120 | | |
| SAMNDCA00331126 | | |
| SAMNDCA00331132 | | |
| SAMNDCA00331139 | | |
| SAMNDCA00331147 | | |
| SAMNDCA00331155 | | |
| SAMNDCA00331156 | | |
| SAMNDCA00331157 | | |
| SAMNDCA00331158 | | |
| SAMNDCA00331187 | | |
| SAMNDCA00331189 | | |
| SAMNDCA00331194 | | |
| SAMNDCA00331197 | | |
| SAMNDCA00331200 | | |
| SAMNDCA00331203 | | |
| SAMNDCA00331233 | | |
| SAMNDCA00331237 | | |
| SAMNDCA00331242 | | |
| SAMNDCA00331247 | | |
| SAMNDCA00331251 | | |
| SAMNDCA00331253 | | |
| SAMNDCA00331259 | | |
| SAMNDCA00331261 | | |
| SAMNDCA00331291 | | |
| SAMNDCA00331292 | | |
| SAMNDCA00331294 | | |
| SAMNDCA00331325 | | |
| SAMNDCA00331327 | | |
| SAMNDCA00331330 | | |
| SAMNDCA00331361 | | |
| SAMNDCA00331365 | | |
| SAMNDCA00331366 | | |
| SAMNDCA00331368 | | |
| SAMNDCA00331370 | | |
| SAMNDCA00331372 | | |
| SAMNDCA00331379 | | |
| SAMNDCA00331442 | | |
| SAMNDCA00331449 | | |
| SAMNDCA00331457 | | |
| SAMNDCA00331458 | | |
| SAMNDCA00331460 | | |
| SAMNDCA00331461 | | |
| SAMNDCA00331469 | | |
| SAMNDCA00331477 | | |
| SAMNDCA00331485 | | |
| SAMNDCA00331496 | | |
| SAMNDCA00331498 | | |
| SAMNDCA00331507 | | |
| SAMNDCA00331509 | | |
| SAMNDCA00331529 | | |
| SAMNDCA00331533 | | |
| SAMNDCA00331564 | | |
| SAMNDCA00331565 | | |
| SAMNDCA00331568 | | |
| SAMNDCA00331573 | | |
| SAMNDCA00331604 | | |
| SAMNDCA00331610 | | |
| SAMNDCA00331616 | | |
| SAMNDCA00331648 | | |
| SAMNDCA00331649 | | |
| SAMNDCA00331651 | | |
| SAMNDCA00331652 | | |
| SAMNDCA00331656 | | |
| SAMNDCA00331658 | | |
| SAMNDCA00331660 | | |
| SAMNDCA00331663 | | |
| SAMNDCA00331667 | | |
| SAMNDCA00331675 | | |
| SAMNDCA00331684 | | |
| SAMNDCA00331694 | | |
| SAMNDCA00331698 | | |
| SAMNDCA00331702 | | |
| SAMNDCA00331713 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00331722 | | |
| SAMNDCA00331726 | | |
| SAMNDCA00331737 | | |
| SAMNDCA00331746 | | |
| SAMNDCA00331750 | | |
| SAMNDCA00331754 | | |
| SAMNDCA00331759 | | |
| SAMNDCA00331792 | | |
| SAMNDCA00331793 | | |
| SAMNDCA00331794 | | |
| SAMNDCA00331796 | | |
| SAMNDCA00331798 | | |
| SAMNDCA00331801 | | |
| SAMNDCA00331810 | | |
| SAMNDCA00331813 | | |
| SAMNDCA00331822 | | |
| SAMNDCA00331826 | | |
| SAMNDCA00331831 | | |
| SAMNDCA00331837 | | |
| SAMNDCA00331841 | | |
| SAMNDCA00331847 | | |
| SAMNDCA00331854 | | |
| SAMNDCA00331862 | | |
| SAMNDCA00331870 | | |
| SAMNDCA00331879 | | |
| SAMNDCA00331888 | | |
| SAMNDCA00331890 | | |
| SAMNDCA00331891 | | |
| SAMNDCA00331901 | | |
| SAMNDCA00331912 | | |
| SAMNDCA00331923 | | |
| SAMNDCA00331924 | | |
| SAMNDCA00331926 | | |
| SAMNDCA00331928 | | |
| SAMNDCA00331931 | | |
| SAMNDCA00331965 | | |
| SAMNDCA00331968 | | |
| SAMNDCA00331969 | | |
| SAMNDCA00331971 | | |
| SAMNDCA00331974 | | |
| SAMNDCA00331975 | | |
| SAMNDCA00331977 | | |
| SAMNDCA00331978 | | |
| SAMNDCA00331980 | | |
| SAMNDCA00331982 | | |
| SAMNDCA00331985 | | |
| SAMNDCA00331989 | | |
| SAMNDCA00331994 | | |
| SAMNDCA00331997 | | |
| SAMNDCA00331999 | | |
| SAMNDCA00332002 | | |
| SAMNDCA00332007 | | |
| SAMNDCA00332013 | | |
| SAMNDCA00332015 | | |
| SAMNDCA00332023 | | |
| SAMNDCA00332030 | | |
| SAMNDCA00332037 | | |
| SAMNDCA00332039 | | |
| SAMNDCA00332047 | | |
| SAMNDCA00332073 | | |
| SAMNDCA00332098 | | |
| SAMNDCA00332100 | | |
| SAMNDCA00332108 | | |
| SAMNDCA00332133 | | |
| SAMNDCA00332134 | | |
| SAMNDCA00332160 | | |
| SAMNDCA00332161 | | |
| SAMNDCA00332187 | | |
| SAMNDCA00332192 | | |
| SAMNDCA00332195 | | |
| SAMNDCA00332200 | | |
| SAMNDCA00332205 | | |
| SAMNDCA00332214 | | |
| SAMNDCA00332225 | | |
| SAMNDCA00332236 | | |
| SAMNDCA00332263 | | |
| SAMNDCA00332275 | | |
| SAMNDCA00332281 | | |
| SAMNDCA00332284 | | |
| SAMNDCA00332287 | | |
| SAMNDCA00332289 | | |
| SAMNDCA00332291 | | |
| SAMNDCA00332303 | | |
| SAMNDCA00332311 | | |
| SAMNDCA00332323 | | |
| SAMNDCA00332324 | | |
| SAMNDCA00332326 | | |
| SAMNDCA00332329 | | |
| SAMNDCA00332354 | | |
| SAMNDCA00332367 | | |
| SAMNDCA00332372 | | |
| SAMNDCA00332414 | | |
| SAMNDCA00332416 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00352061 | | |
| SAMNDCA00353567 | | |
| SAMNDCA00353622 | | |
| SAMNDCA00353660 | | |
| SAMNDCA00353682 | | |
| SAMNDCA00353713 | | |
| SAMNDCA00353777 | | |
| SAMNDCA00353791 | | |
| SAMNDCA00353963 | | |
| SAMNDCA00354025 | | |
| SAMNDCA00354070 | | |
| SAMNDCA00354218 | | |
| SAMNDCA00354292 | | |
| SAMNDCA00354292 | | |
| SAMNDCA00354386 | | |
| SAMNDCA00354601 | | |
| SAMNDCA00354601 | | |
| SAMNDCA00365841 | | |
| SAMNDCA00365844 | | |
| SAMNDCA00365848 | | |
| SAMNDCA00365852 | | |
| SAMNDCA00365856 | | |
| SAMNDCA00365857 | | |
| SAMNDCA00365860 | | |
| SAMNDCA00365863 | | |
| SAMNDCA00365864 | | |
| SAMNDCA00365866 | | |
| SAMNDCA00365868 | | |
| SAMNDCA00365868 | SAMNDCA00250887 | |
| SAMNDCA00365869 | | |
| SAMNDCA00365872 | | |
| SAMNDCA00365875 | | |
| SAMNDCA00365876 | | |
| SAMNDCA00365881 | | |
| SAMNDCA00365897 | | |
| SAMNDCA00365903 | | |
| SAMNDCA00365906 | | |
| SAMNDCA00365911 | | |
| SAMNDCA00365921 | | |
| SAMNDCA00365937 | | |
| SAMNDCA00365951 | | |
| SAMNDCA00365956 | | |
| SAMNDCA00365967 | | |
| SAMNDCA00365982 | | |
| SAMNDCA00365990 | | |
| SAMNDCA00365990 | | |
| SAMNDCA00366014 | | |
| SAMNDCA00366019 | | |
| SAMNDCA00366019 | | |
| SAMNDCA00366053 | | |
| SAMNDCA00366058 | | |
| SAMNDCA00366070 | | |
| SAMNDCA00366079 | | |
| SAMNDCA00366081 | | |
| SAMNDCA00366083 | | |
| SAMNDCA00366086 | | |
| SAMNDCA00366088 | | |
| SAMNDCA00366091 | | |
| SAMNDCA00366094 | | |
| SAMNDCA00366098 | | |
| SAMNDCA00366100 | | |
| SAMNDCA00366101 | | |
| SAMNDCA00366109 | | |
| SAMNDCA00372946 | | |
| SAMNDCA00373139 | | |
| SAMNDCA00500000 | | |
| SAMNDCA00502124 | SAMNDCA00502234 | |
| SAMNDCA00502251 | SAMNDCA00502291 | |
| SAMNDCA00502295 | SAMNDCA00502330 | |
| SAMNDCA00502332 | SAMNDCA00502339 | |
| SAMNDCA00502426 | SAMNDCA00502461 | |
| SAMNDCA00502463 | SAMNDCA00502497 | |
| SAMNDCA00502499 | SAMNDCA00502508 | |
| SAMNDCA00502560 | SAMNDCA00502577 | |
| SAMNDCA00502580 | SAMNDCA00502601 | |
| SAMNDCA00502602 | SAMNDCA00502617 | |
| SAMNDCA00502738 | SAMNDCA00502752 | |
| SAMNDCA00502796 | SAMNDCA00502831 | |
| SAMNDCA00502833 | SAMNDCA00502885 | |
| SAMNDCA00502905 | SAMNDCA00502935 | |
| SAMNDCA00503091 | SAMNDCA00503148 | |
| SAMNDCA00507826 | | |
| SAMNDCA00508318 | | |
| SAMNDCA00508318 | | |
| SAMNDCA00508318 | SAMNDCA00508411 | |
| SAMNDCA00509914 | SAMNDCA00509945 | |
| SAMNDCA00509992 | SAMNDCA00510026 | |
| SAMNDCA00513616 | SAMNDCA00513622 | |
| SAMNDCA00514571 | | |
| SAMNDCA00514571 | | |
| SAMNDCA00514571 | | |
| SAMNDCA00519813 | | |
| SAMNDCA00521309 | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA00521309 | | |
| SAMNDCA00523329 | SAMNDCA00523358 | |
| SAMNDCA00523408 | SAMNDCA00523424 | |
| SAMNDCA00523446 | SAMNDCA00523466 | |
| SAMNDCA00523488 | SAMNDCA00523508 | |
| SAMNDCA00523592 | SAMNDCA00523618 | |
| SAMNDCA00525347 | SAMNDCA00525349 | |
| SAMNDCA00528092 | | |
| SAMNDCA00528092 | | |
| SAMNDCA00528092 | | |
| SAMNDCA00530405 | | |
| SAMNDCA00530405 | | |
| SAMNDCA00532583 | | |
| SAMNDCA00533129 | | |
| SAMNDCA00533366 | | |
| SAMNDCA10016007 | SAMNDCA10016010 | |
| SAMNDCA10016602 | SAMNDCA10016648 | |
| SAMNDCA10019964 | SAMNDCA10020008 | |
| SAMNDCA10026664 | SAMNDCA10026762 | |
| SAMNDCA10026763 | SAMNDCA10026768 | |
| SAMNDCA10026860 | SAMNDCA10026960 | |
| SAMNDCA10026961 | SAMNDCA10027013 | |
| SAMNDCA10027274 | SAMNDCA10027301 | |
| SAMNDCA10027384 | SAMNDCA10027384 | |
| SAMNDCA10036081 | | |
| SAMNDCA10036081 | | |
| SAMNDCA10042955 | | |
| SAMNDCA10043856 | SAMNDCA10043872 | |
| SAMNDCA10043873 | SAMNDCA10043879 | |
| SAMNDCA10043880 | SAMNDCA10043933 | |
| SAMNDCA10043934 | SAMNDCA10044049 | |
| SAMNDCA10044052 | SAMNDCA10044120 | |
| SAMNDCA10044121 | SAMNDCA10044156 | |
| SAMNDCA10044157 | SAMNDCA10044237 | |
| SAMNDCA10044238 | SAMNDCA10044273 | |
| SAMNDCA10044274 | SAMNDCA10044299 | |
| SAMNDCA10044300 | SAMNDCA10044350 | |
| SAMNDCA10044351 | SAMNDCA10044406 | |
| SAMNDCA10044407 | SAMNDCA10044462 | |
| SAMNDCA10044463 | SAMNDCA10044511 | |
| SAMNDCA10044512 | SAMNDCA10044560 | |
| SAMNDCA10044561 | SAMNDCA10044585 | |
| SAMNDCA10044586 | SAMNDCA10044634 | |
| SAMNDCA10050413 | SAMNDCA10050485 | |
| SAMNDCA10055611 | SAMNDCA10055736 | |
| SAMNDCA10055737 | SAMNDCA10055997 | |
| SAMNDCA10067029 | SAMNDCA10067289 | |
| SAMNDCA10067620 | SAMNDCA10067629 | |
| SAMNDCA10068071 | SAMNDCA10068169 | |
| SAMNDCA10068170 | SAMNDCA10068268 | |
| SAMNDCA10069310 | SAMNDCA10069375 | |
| SAMNDCA10069376 | | |
| SAMNDCA10069411 | | |
| SAMNDCA10069477 | | |
| SAMNDCA10069739 | SAMNDCA10069827 | |
| SAMNDCA10069863 | | |
| SAMNDCA10069922 | SAMNDCA10069956 | |
| SAMNDCA10107300 | SAMNDCA10107333 | |
| SAMNDCA10118713 | SAMNDCA10118776 | |
| SAMNDCA10125314 | SAMNDCA10125314 | |
| SAMNDCA10125315 | SAMNDCA10125337 | |
| SAMNDCA10127492 | SAMNDCA10127495 | |
| SAMNDCA10127496 | SAMNDCA10127496 | |
| SAMNDCA10127497 | SAMNDCA10127497 | |
| SAMNDCA10127498 | SAMNDCA10127498 | |
| SAMNDCA10127499 | SAMNDCA10127499 | |
| SAMNDCA10127500 | SAMNDCA10127500 | |
| SAMNDCA10127501 | SAMNDCA10127501 | |
| SAMNDCA10127502 | SAMNDCA10127503 | |
| SAMNDCA10128649 | SAMNDCA10128659 | |
| SAMNDCA10128660 | SAMNDCA10128660 | |
| SAMNDCA10128661 | SAMNDCA10128737 | |
| SAMNDCA10129585 | SAMNDCA10129585 | |
| SAMNDCA10129586 | SAMNDCA10129586 | |
| SAMNDCA10129587 | SAMNDCA10129608 | |
| SAMNDCA10136191 | SAMNDCA10136194 | |
| SAMNDCA10136195 | SAMNDCA10136195 | |
| SAMNDCA10136196 | SAMNDCA10136198 | |
| SAMNDCA10136199 | SAMNDCA10136202 | |
| SAMNDCA10138250 | SAMNDCA10138250 | |
| SAMNDCA10138251 | SAMNDCA10138251 | |
| SAMNDCA10140421 | SAMNDCA10140448 | |
| SAMNDCA10144054 | SAMNDCA10144092 | |
| SAMNDCA10145883 | SAMNDCA10145887 | |
| SAMNDCA10145926 | SAMNDCA10145930 | |
| SAMNDCA10145939 | SAMNDCA10146076 | |
| SAMNDCA10150643 | SAMNDCA10150651 | |
| SAMNDCA10150652 | SAMNDCA10150663 | |
| SAMNDCA10150664 | SAMNDCA10150681 | |
| SAMNDCA10151759 | SAMNDCA10151827 | |
| SAMNDCA10151828 | SAMNDCA10151836 | |
| SAMNDCA10152127 | SAMNDCA10152136 | |
| SAMNDCA10153315 | SAMNDCA10153323 | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                    EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10153904 | SAMNDCA10153951 | |
| SAMNDCA10156468 | SAMNDCA10156517 | |
| SAMNDCA10156919 | SAMNDCA10156939 | |
| SAMNDCA10157882 | SAMNDCA10157891 | |
| SAMNDCA10157892 | SAMNDCA10157899 | |
| SAMNDCA10160454 | SAMNDCA10160573 | |
| SAMNDCA10160757 | SAMNDCA10160922 | |
| SAMNDCA10165058 | SAMNDCA10165059 | |
| SAMNDCA10166661 | | |
| SAMNDCA10166661 | | |
| SAMNDCA10166661 | | |
| SAMNDCA10190890 | | |
| SAMNDCA10190890 | | |
| SAMNDCA10190975 | | |
| SAMNDCA10190976 | | |
| SAMNDCA10190977 | | |
| SAMNDCA10191027 | | |
| SAMNDCA10191077 | | |
| SAMNDCA10191127 | | |
| SAMNDCA10197450 | SAMNDCA10197452 | |
| SAMNDCA10197453 | SAMNDCA10197453 | |
| SAMNDCA10198342 | | |
| SAMNDCA10202899 | | |
| SAMNDCA10203008 | SAMNDCA10203044 | |
| SAMNDCA10203045 | SAMNDCA10203073 | |
| SAMNDCA10203074 | SAMNDCA10203116 | |
| SAMNDCA10203117 | SAMNDCA10203142 | |
| SAMNDCA10203143 | SAMNDCA10203185 | |
| SAMNDCA10203186 | SAMNDCA10203224 | |
| SAMNDCA10203225 | SAMNDCA10203242 | |
| SAMNDCA10203243 | SAMNDCA10203292 | |
| SAMNDCA10203293 | SAMNDCA10203337 | |
| SAMNDCA10203338 | SAMNDCA10203385 | |
| SAMNDCA10203386 | SAMNDCA10203426 | |
| SAMNDCA10203427 | SAMNDCA10203452 | |
| SAMNDCA10203453 | SAMNDCA10203477 | |
| SAMNDCA10203478 | SAMNDCA10203503 | |
| SAMNDCA10203504 | SAMNDCA10203546 | |
| SAMNDCA10203547 | SAMNDCA10203571 | |
| SAMNDCA10203572 | SAMNDCA10203616 | |
| SAMNDCA10203617 | SAMNDCA10203660 | |
| SAMNDCA10203661 | SAMNDCA10203685 | |
| SAMNDCA10203686 | SAMNDCA10203728 | |
| SAMNDCA10203729 | SAMNDCA10203774 | |
| SAMNDCA10203775 | SAMNDCA10203800 | |
| SAMNDCA10203801 | SAMNDCA10203825 | |
| SAMNDCA10203826 | SAMNDCA10203868 | |
| SAMNDCA10203869 | SAMNDCA10203911 | |
| SAMNDCA10203912 | SAMNDCA10203956 | |
| SAMNDCA10203957 | SAMNDCA10203985 | |
| SAMNDCA10203986 | SAMNDCA10204011 | |
| SAMNDCA10204012 | SAMNDCA10204054 | |
| SAMNDCA10204055 | SAMNDCA10204083 | |
| SAMNDCA10204084 | SAMNDCA10204132 | |
| SAMNDCA10206505 | SAMNDCA10206531 | |
| SAMNDCA10212968 | | |
| SAMNDCA10215511 | SAMNDCA10215589 | |
| SAMNDCA10216828 | SAMNDCA10217106 | |
| SAMNDCA10220857 | SAMNDCA10220906 | |
| SAMNDCA10220907 | SAMNDCA10220944 | |
| SAMNDCA10220945 | SAMNDCA10221042 | |
| SAMNDCA10221297 | SAMNDCA10221397 | |
| SAMNDCA10222805 | SAMNDCA10222893 | |
| SAMNDCA10222934 | SAMNDCA10222998 | |
| SAMNDCA10223664 | SAMNDCA10223795 | |
| SAMNDCA10243608 | SAMNDCA10243608 | |
| SAMNDCA10243763 | SAMNDCA10243764 | |
| SAMNDCA10243765 | SAMNDCA10243765 | |
| SAMNDCA10244160 | SAMNDCA10244160 | |
| SAMNDCA10244161 | SAMNDCA10244162 | |
| SAMNDCA10244163 | | |
| SAMNDCA10244248 | | |
| SAMNDCA10244253 | | |
| SAMNDCA10244254 | | |
| SAMNDCA10244255 | | |
| SAMNDCA10244271 | | |
| SAMNDCA10244302 | | |
| SAMNDCA10244314 | | |
| SAMNDCA10244338 | | |
| SAMNDCA10244357 | | |
| SAMNDCA10244357 | | |
| SAMNDCA10247373 | SAMNDCA00224751 | |
| SAMNDCA10247373 | | |
| samndca10247549 | | |
| SAMNDCA10257309 | | |
| SAMNDCA10260150 | | |
| SAMNDCA10260258 | | |
| SAMNDCA10260298 | | |
| SAMNDCA10260358 | | |
| SAMNDCA10260497 | | |
| SAMNDCA10260607 | | |
| SAMNDCA10260835 | | |
| SAMNDCA10260903 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10261823 | | |
| SAMNDCA10262684 | | |
| SAMNDCA10265290 | | |
| SAMNDCA10266589 | | |
| SAMNDCA10268409 | | |
| SAMNDCA10269054 | | |
| SAMNDCA10269274 | | |
| SAMNDCA10269281 | | |
| SAMNDCA10269933 | | |
| SAMNDCA10269952 | | |
| SAMNDCA10269968 | | |
| SAMNDCA10270050 | | |
| SAMNDCA10270923 | | |
| SAMNDCA10271250 | | |
| SAMNDCA10271327 | | |
| SAMNDCA10272103 | | |
| SAMNDCA10272186 | | |
| SAMNDCA10272226 | | |
| SAMNDCA10272915 | | |
| SAMNDCA10273926 | | |
| SAMNDCA10274070 | | |
| SAMNDCA10274169 | | |
| SAMNDCA10274392 | | |
| SAMNDCA10274529 | | |
| SAMNDCA10274594 | | |
| SAMNDCA10275576 | | |
| SAMNDCA10275576 | | |
| SAMNDCA10275647 | | |
| SAMNDCA10275722 | | |
| SAMNDCA10275816 | | |
| SAMNDCA10275948 | | |
| SAMNDCA10278477 | | |
| SAMNDCA10296623 | | |
| SAMNDCA10296937 | | |
| SAMNDCA10297896 | | |
| SAMNDCA10297956 | | |
| SAMNDCA10303502 | | |
| SAMNDCA10303516 | | |
| SAMNDCA10303529 | | |
| SAMNDCA10303547 | | |
| SAMNDCA10303561 | | |
| SAMNDCA10303575 | | |
| SAMNDCA10303585 | | |
| SAMNDCA10303597 | | |
| SAMNDCA10303609 | | |
| SAMNDCA10303620 | | |
| SAMNDCA10303631 | | |
| SAMNDCA10303640 | | |
| SAMNDCA10303653 | | |
| SAMNDCA10303663 | | |
| SAMNDCA10303675 | | |
| SAMNDCA10303689 | | |
| SAMNDCA10310424 | | |
| SAMNDCA10311071 | | |
| SAMNDCA10311115 | | |
| SAMNDCA10317268 | | |
| SAMNDCA10321313 | | |
| SAMNDCA10322218 | | |
| SAMNDCA10322611 | | |
| SAMNDCA10323105 | | |
| SAMNDCA10323233 | | |
| SAMNDCA10323265 | | |
| SAMNDCA10323266 | | |
| SAMNDCA10323267 | | |
| SAMNDCA10324814 | | |
| SAMNDCA10324819 | | |
| SAMNDCA10324825 | | |
| SAMNDCA10324834 | | |
| SAMNDCA10324836 | | |
| SAMNDCA10324925 | | |
| SAMNDCA10325891 | | |
| SAMNDCA10326039 | | |
| SAMNDCA10326262 | | |
| SAMNDCA10334078 | | |
| SAMNDCA10334081 | | |
| SAMNDCA10334113 | | |
| SAMNDCA10334114 | | |
| SAMNDCA10334609 | | |
| SAMNDCA10334611 | | |
| SAMNDCA10334651 | | |
| SAMNDCA10334652 | | |
| SAMNDCA10334653 | | |
| SAMNDCA10334654 | | |
| SAMNDCA10334797 | | |
| SAMNDCA10334800 | | |
| SAMNDCA10334879 | | |
| SAMNDCA10334880 | | |
| SAMNDCA10334965 | | |
| SAMNDCA10334966 | | |
| SAMNDCA10335226 | | |
| SAMNDCA10335227 | | |
| SAMNDCA10335604 | | |
| SAMNDCA10335607 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10335608 | | |
| SAMNDCA10335609 | | |
| SAMNDCA10335610 | | |
| SAMNDCA10335653 | | |
| SAMNDCA10335703 | | |
| SAMNDCA10335706 | | |
| SAMNDCA10335708 | | |
| SAMNDCA10335749 | | |
| SAMNDCA10335921 | | |
| SAMNDCA10336214 | | |
| SAMNDCA10336218 | | |
| SAMNDCA10336385 | | |
| SAMNDCA10336386 | | |
| SAMNDCA10336387 | | |
| SAMNDCA10336607 | | |
| SAMNDCA10336616 | | |
| SAMNDCA10336770 | | |
| SAMNDCA10336771 | | |
| SAMNDCA10336772 | | |
| SAMNDCA10336773 | | |
| SAMNDCA10336775 | | |
| SAMNDCA10336995 | | |
| SAMNDCA10336996 | | |
| SAMNDCA10337201 | | |
| SAMNDCA10337286 | | |
| SAMNDCA10337290 | | |
| SAMNDCA10337709 | | |
| SAMNDCA10337711 | | |
| SAMNDCA10337722 | | |
| SAMNDCA10337735 | | |
| SAMNDCA10337852 | | |
| SAMNDCA10338567 | | |
| SAMNDCA10338571 | | |
| SAMNDCA10338572 | | |
| SAMNDCA10338573 | | |
| SAMNDCA10338574 | | |
| SAMNDCA10338575 | | |
| SAMNDCA10338588 | | |
| SAMNDCA10338589 | | |
| SAMNDCA10338624 | | |
| SAMNDCA10338627 | | |
| SAMNDCA10338628 | | |
| SAMNDCA10338629 | | |
| SAMNDCA10338675 | | |
| SAMNDCA10338725 | | |
| SAMNDCA10339150 | | |
| SAMNDCA10339154 | | |
| SAMNDCA10339240 | | |
| SAMNDCA10339241 | | |
| SAMNDCA10342019 | | |
| SAMNDCA10342021 | | |
| SAMNDCA10342022 | | |
| SAMNDCA10342140 | | |
| SAMNDCA10342147 | | |
| SAMNDCA10342291 | | |
| SAMNDCA10342292 | | |
| SAMNDCA10342293 | | |
| SAMNDCA10343591 | | |
| SAMNDCA10343592 | | |
| SAMNDCA10343598 | | |
| SAMNDCA10343602 | | |
| SAMNDCA10345075 | | |
| SAMNDCA10345080 | | |
| SAMNDCA10345081 | | |
| SAMNDCA10345082 | | |
| SAMNDCA10345462 | | |
| SAMNDCA10345464 | | |
| SAMNDCA10345510 | | |
| SAMNDCA10345511 | | |
| SAMNDCA10345541 | | |
| SAMNDCA10346197 | | |
| SAMNDCA10346198 | | |
| SAMNDCA10346355 | | |
| SAMNDCA10346356 | | |
| SAMNDCA10346467 | | |
| SAMNDCA10346468 | | |
| SAMNDCA10346469 | | |
| SAMNDCA10346493 | | |
| SAMNDCA10346494 | | |
| SAMNDCA10346754 | | |
| SAMNDCA10346766 | | |
| SAMNDCA10346768 | | |
| SAMNDCA10347632 | | |
| SAMNDCA10347633 | | |
| SAMNDCA10347775 | | |
| SAMNDCA10347777 | | |
| SAMNDCA10347785 | | |
| SAMNDCA10347995 | | |
| SAMNDCA10347996 | | |
| SAMNDCA10347997 | | |
| SAMNDCA10348060 | | |
| SAMNDCA10348067 | | |
| SAMNDCA10348068 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10348069 | | |
| SAMNDCA10348070 | | |
| SAMNDCA10348071 | | |
| SAMNDCA10348072 | | |
| SAMNDCA10348073 | | |
| SAMNDCA10348074 | | |
| SAMNDCA10348075 | | |
| SAMNDCA10348076 | | |
| SAMNDCA10348077 | | |
| SAMNDCA10348078 | | |
| SAMNDCA10348078 | | |
| SAMNDCA10348128 | | |
| SAMNDCA10348129 | | |
| SAMNDCA10348130 | | |
| SAMNDCA10348131 | | |
| SAMNDCA10348356 | | |
| SAMNDCA10348362 | | |
| SAMNDCA10348363 | | |
| SAMNDCA10348364 | | |
| SAMNDCA10348365 | | |
| SAMNDCA10348366 | | |
| SAMNDCA10348367 | | |
| SAMNDCA10348423 | | |
| SAMNDCA10348424 | | |
| SAMNDCA10348600 | | |
| SAMNDCA10348603 | | |
| SAMNDCA10348622 | | |
| SAMNDCA10348623 | | |
| SAMNDCA10348625 | | |
| SAMNDCA10348939 | | |
| SAMNDCA10349148 | | |
| SAMNDCA10349149 | | |
| SAMNDCA10349150 | | |
| SAMNDCA10349285 | | |
| SAMNDCA10349287 | | |
| SAMNDCA10349354 | | |
| SAMNDCA10349383 | | |
| SAMNDCA10349511 | | |
| SAMNDCA10349563 | | |
| SAMNDCA10349619 | | |
| SAMNDCA10349634 | | |
| SAMNDCA10349635 | | |
| SAMNDCA10349636 | | |
| SAMNDCA10349867 | | |
| SAMNDCA10349868 | | |
| SAMNDCA10349991 | | |
| SAMNDCA10349993 | | |
| SAMNDCA10349994 | | |
| SAMNDCA10349995 | | |
| SAMNDCA10350008 | | |
| SAMNDCA10350008 | | |
| SAMNDCA10350058 | | |
| SAMNDCA10350081 | | |
| SAMNDCA10350083 | | |
| SAMNDCA10350231 | | |
| SAMNDCA10350238 | | |
| SAMNDCA10350239 | | |
| SAMNDCA10350240 | | |
| SAMNDCA10350241 | | |
| SAMNDCA10350242 | | |
| SAMNDCA10350244 | | |
| SAMNDCA10350418 | | |
| SAMNDCA10350574 | | |
| SAMNDCA10350633 | | |
| SAMNDCA10350707 | | |
| SAMNDCA10350758 | | |
| SAMNDCA10350771 | | |
| SAMNDCA10350963 | | |
| SAMNDCA10351184 | | |
| SAMNDCA10351860 | | |
| SAMNDCA10351861 | | |
| SAMNDCA10351861 | | |
| SAMNDCA10352215 | | |
| SAMNDCA10352501 | | |
| SAMNDCA10352551 | | |
| SAMNDCA10352556 | | |
| SAMNDCA10352556 | | |
| SAMNDCA10352606 | | |
| SAMNDCA10352607 | | |
| SAMNDCA10352608 | | |
| SAMNDCA10352609 | | |
| SAMNDCA10352905 | | |
| SAMNDCA10352909 | | |
| SAMNDCA10352910 | | |
| SAMNDCA10352932 | | |
| SAMNDCA10352953 | | |
| SAMNDCA10352954 | | |
| SAMNDCA10352955 | | |
| SAMNDCA10352956 | | |
| SAMNDCA10353033 | | |
| SAMNDCA10354147 | | |
| SAMNDCA10354147 | | |
| SAMNDCA10354331 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

**EXHIBIT 3**

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10354358 | | |
| SAMNDCA10354359 | | |
| SAMNDCA10354363 | | |
| SAMNDCA10354364 | | |
| SAMNDCA10354365 | | |
| SAMNDCA10354366 | | |
| SAMNDCA10354367 | | |
| SAMNDCA10354368 | | |
| SAMNDCA10354369 | | |
| SAMNDCA10354370 | | |
| SAMNDCA10354371 | | |
| SAMNDCA10354372 | | |
| SAMNDCA10354373 | | |
| SAMNDCA10354374 | | |
| SAMNDCA10354549 | | |
| SAMNDCA10354643 | | |
| SAMNDCA10355165 | | |
| SAMNDCA10355215 | | |
| SAMNDCA10355365 | | |
| SAMNDCA10355415 | | |
| SAMNDCA10355494 | | |
| SAMNDCA10355498 | | |
| SAMNDCA10355785 | | |
| SAMNDCA10357331 | | |
| SAMNDCA10357381 | | |
| SAMNDCA10357431 | | |
| SAMNDCA10357920 | | |
| SAMNDCA10357970 | | |
| SAMNDCA10358210 | | |
| SAMNDCA10358212 | | |
| SAMNDCA10358213 | | |
| SAMNDCA10358393 | | |
| SAMNDCA10358444 | | |
| SAMNDCA10358494 | | |
| SAMNDCA10358743 | | |
| SAMNDCA10358922 | | |
| SAMNDCA10359016 | | |
| SAMNDCA10359158 | | |
| SAMNDCA10359208 | | |
| SAMNDCA10359259 | | |
| SAMNDCA10359309 | | |
| SAMNDCA10359999 | | |
| SAMNDCA10360002 | | |
| SAMNDCA10360403 | | |
| SAMNDCA10360403 | | |
| SAMNDCA10361448 | | |
| SAMNDCA10361451 | | |
| SAMNDCA10361499 | | |
| SAMNDCA10361504 | | |
| SAMNDCA10361812 | | |
| SAMNDCA10361818 | | |
| SAMNDCA10361819 | | |
| SAMNDCA10361820 | | |
| SAMNDCA10361821 | | |
| SAMNDCA10362140 | | |
| SAMNDCA10362144 | | |
| SAMNDCA10362145 | | |
| SAMNDCA10362167 | | |
| SAMNDCA10362168 | | |
| SAMNDCA10362169 | | |
| SAMNDCA10362170 | | |
| SAMNDCA10362541 | | |
| SAMNDCA10362548 | | |
| SAMNDCA10362552 | | |
| SAMNDCA10362553 | | |
| SAMNDCA10362590 | | |
| SAMNDCA10362653 | | |
| SAMNDCA10362763 | | |
| SAMNDCA10362977 | | |
| SAMNDCA10363043 | | |
| SAMNDCA10363122 | | |
| SAMNDCA10363208 | | |
| SAMNDCA10363836 | | |
| SAMNDCA10363965 | | |
| SAMNDCA10364041 | | |
| SAMNDCA10364041 | | |
| SAMNDCA10365727 | | |
| SAMNDCA10366108 | | |
| SAMNDCA10366161 | | |
| SAMNDCA10366220 | | |
| SAMNDCA10366546 | | |
| SAMNDCA10366547 | | |
| SAMNDCA10366558 | | |
| SAMNDCA10366569 | | |
| SAMNDCA10366581 | | |
| SAMNDCA10366581 | | |
| SAMNDCA10366631 | | |
| SAMNDCA10366632 | | |
| SAMNDCA10366651 | | |
| SAMNDCA10366652 | | |
| SAMNDCA10366859 | | |
| SAMNDCA10367240 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10367669 | | |
| SAMNDCA10367719 | | |
| SAMNDCA10367769 | | |
| SAMNDCA10367860 | | |
| SAMNDCA10372204 | | |
| SAMNDCA10372205 | | |
| SAMNDCA10372215 | | |
| SAMNDCA10372216 | | |
| SAMNDCA10372218 | | |
| SAMNDCA10372229 | | |
| SAMNDCA10372230 | | |
| SAMNDCA10372241 | | |
| SAMNDCA10372242 | | |
| SAMNDCA10372253 | | |
| SAMNDCA10372256 | | |
| SAMNDCA10372267 | | |
| SAMNDCA10372268 | | |
| SAMNDCA10374226 | | |
| SAMNDCA10374229 | | |
| SAMNDCA10374437 | | |
| SAMNDCA10374438 | | |
| SAMNDCA10374458 | | |
| SAMNDCA10374460 | SAMNDCA10374498 | Deposition of Justin Denison, January 25, 2012, Exhibit 1266. |
| SAMNDCA10374460 | | |
| SAMNDCA10374504 | | |
| SAMNDCA10374506 | | |
| SAMNDCA10374507 | | |
| SAMNDCA10374611 | | |
| SAMNDCA10374614 | | |
| SAMNDCA10381937 | | |
| SAMNDCA10387449 | | |
| SAMNDCA10388236 | | |
| SAMNDCA10391158 | | |
| SAMNDCA10393151 | | |
| SAMNDCA10393201 | | |
| SAMNDCA10395743 | | |
| SAMNDCA10395926 | | |
| SAMNDCA10396426 | | |
| SAMNDCA10396981 | | |
| SAMNDCA10396996 | | |
| SAMNDCA10403697 | | |
| SAMNDCA10403697 | | |
| SAMNDCA10406232 | | |
| SAMNDCA10406241 | | |
| SAMNDCA10406242 | | |
| SAMNDCA10406243 | | |
| SAMNDCA10406245 | | |
| SAMNDCA10406246 | | |
| SAMNDCA10406263 | | |
| SAMNDCA10406297 | | |
| SAMNDCA10406298 | | |
| SAMNDCA10406299 | | |
| SAMNDCA10406300 | | |
| SAMNDCA10406301 | | |
| SAMNDCA10406302 | | |
| SAMNDCA10406303 | | |
| SAMNDCA10406304 | | |
| SAMNDCA10406305 | | |
| SAMNDCA10406306 | | |
| SAMNDCA10406307 | | |
| SAMNDCA10406308 | | |
| SAMNDCA10406309 | | |
| SAMNDCA10406310 | | |
| SAMNDCA10406311 | | |
| SAMNDCA10406312 | | |
| SAMNDCA10406313 | | |
| SAMNDCA10406314 | | |
| SAMNDCA10406316 | | |
| SAMNDCA10407117 | | |
| SAMNDCA10407119 | | |
| SAMNDCA10407120 | | |
| SAMNDCA10407122 | | |
| SAMNDCA10407123 | | |
| SAMNDCA10407126 | | |
| SAMNDCA10407127 | | |
| SAMNDCA10407130 | | |
| SAMNDCA10407131 | | |
| SAMNDCA10407237 | | |
| SAMNDCA10407413 | | |
| SAMNDCA10407414 | | |
| SAMNDCA10407415 | | |
| SAMNDCA10407416 | | |
| SAMNDCA10407417 | | |
| SAMNDCA10407418 | | |
| SAMNDCA10407419 | | |
| SAMNDCA10407420 | | |
| SAMNDCA10407421 | | |
| SAMNDCA10407422 | | |
| SAMNDCA10407423 | | |
| SAMNDCA10407424 | | |
| SAMNDCA10407425 | | |
| SAMNDCA10407426 | | |
| SAMNDCA10407427 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

**EXHIBIT 3**

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10407428 | | |
| SAMNDCA10407433 | | |
| SAMNDCA10407434 | | |
| SAMNDCA10407435 | | |
| SAMNDCA10407436 | | |
| SAMNDCA10407437 | | |
| SAMNDCA10407438 | | |
| SAMNDCA10407439 | | |
| SAMNDCA10407440 | | |
| SAMNDCA10407441 | | |
| SAMNDCA10407442 | | |
| SAMNDCA10407443 | | |
| SAMNDCA10407444 | | |
| SAMNDCA10407445 | | |
| SAMNDCA10407446 | | |
| SAMNDCA10407447 | | |
| SAMNDCA10407448 | | |
| SAMNDCA10407449 | | |
| SAMNDCA10407450 | | |
| SAMNDCA10407451 | | |
| SAMNDCA10407452 | | |
| SAMNDCA10407453 | | |
| SAMNDCA10407454 | | |
| SAMNDCA10407455 | | |
| SAMNDCA10407456 | | |
| SAMNDCA10407457 | | |
| SAMNDCA10407458 | | |
| SAMNDCA10407459 | | |
| SAMNDCA10407460 | | |
| SAMNDCA10407461 | | |
| SAMNDCA10407462 | | |
| SAMNDCA10407463 | | |
| SAMNDCA10407464 | | |
| SAMNDCA10407465 | | |
| SAMNDCA10407466 | | |
| SAMNDCA10407467 | | |
| SAMNDCA10407468 | | |
| SAMNDCA10407470 | | |
| SAMNDCA10407471 | | |
| SAMNDCA10407472 | | |
| SAMNDCA10407473 | | |
| SAMNDCA10407476 | | |
| SAMNDCA10407477 | | |
| SAMNDCA10407478 | | |
| SAMNDCA10407479 | | |
| SAMNDCA10407480 | | |
| SAMNDCA10407481 | | |
| SAMNDCA10407482 | | |
| SAMNDCA10407483 | | |
| SAMNDCA10407484 | | |
| SAMNDCA10407485 | | |
| SAMNDCA10407486 | | |
| SAMNDCA10407487 | | |
| SAMNDCA10407488 | | |
| SAMNDCA10407489 | | |
| SAMNDCA10407490 | | |
| SAMNDCA10407491 | | |
| SAMNDCA10407492 | | |
| SAMNDCA10407493 | | |
| SAMNDCA10407494 | | |
| SAMNDCA10407495 | | |
| SAMNDCA10407496 | | |
| SAMNDCA10407497 | | |
| SAMNDCA10407498 | | |
| SAMNDCA10407499 | | |
| SAMNDCA10407500 | | |
| SAMNDCA10407501 | | |
| SAMNDCA10407502 | | |
| SAMNDCA10407503 | | |
| SAMNDCA10407504 | | |
| SAMNDCA10407505 | | |
| SAMNDCA10407506 | | |
| SAMNDCA10407507 | | |
| SAMNDCA10407508 | | |
| SAMNDCA10407509 | | |
| SAMNDCA10407510 | | |
| SAMNDCA10407511 | | |
| SAMNDCA10407512 | | |
| SAMNDCA10407513 | | |
| SAMNDCA10407514 | | |
| SAMNDCA10407515 | | |
| SAMNDCA10407516 | | |
| SAMNDCA10407517 | | |
| SAMNDCA10407518 | | |
| SAMNDCA10407519 | | |
| SAMNDCA10407520 | | |
| SAMNDCA10407521 | | |
| SAMNDCA10407522 | | |
| SAMNDCA10407523 | | |
| SAMNDCA10407524 | | |
| SAMNDCA10407525 | | |
| SAMNDCA10407526 | | |
| SAMNDCA10407527 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10407528 | | |
| SAMNDCA10407529 | | |
| SAMNDCA10407530 | | |
| SAMNDCA10407531 | | |
| SAMNDCA10407532 | | |
| SAMNDCA10407533 | | |
| SAMNDCA10407534 | | |
| SAMNDCA10407535 | | |
| SAMNDCA10407536 | | |
| SAMNDCA10407537 | | |
| SAMNDCA10407538 | | |
| SAMNDCA10407539 | | |
| SAMNDCA10407540 | | |
| SAMNDCA10407541 | | |
| SAMNDCA10407542 | | |
| SAMNDCA10407543 | | |
| SAMNDCA10407544 | | |
| SAMNDCA10407545 | | |
| SAMNDCA10407546 | | |
| SAMNDCA10407547 | | |
| SAMNDCA10407548 | | |
| SAMNDCA10407549 | | |
| SAMNDCA10407550 | | |
| SAMNDCA10407551 | | |
| SAMNDCA10407552 | | |
| SAMNDCA10407553 | | |
| SAMNDCA10407554 | | |
| SAMNDCA10407555 | | |
| SAMNDCA10407556 | | |
| SAMNDCA10407557 | | |
| SAMNDCA10407558 | | |
| SAMNDCA10407559 | | |
| SAMNDCA10407850 | | |
| SAMNDCA10407900 | | |
| SAMNDCA10410283 | | |
| SAMNDCA10410283 | | |
| SAMNDCA10410283 | | |
| SAMNDCA10411999 | | |
| SAMNDCA10412049 | | |
| SAMNDCA10412724 | | |
| SAMNDCA10412728 | | |
| SAMNDCA10412729 | | |
| SAMNDCA10412730 | | |
| SAMNDCA10412731 | | |
| SAMNDCA10412734 | | |
| SAMNDCA10412734 | | |
| SAMNDCA10412853 | | |
| SAMNDCA10413778 | | |
| SAMNDCA10413779 | | |
| SAMNDCA10413781 | | |
| SAMNDCA10413782 | | |
| SAMNDCA10413783 | | |
| SAMNDCA10414421 | | |
| SAMNDCA10414430 | | |
| SAMNDCA10414431 | | |
| SAMNDCA10414508 | | |
| SAMNDCA10414509 | | |
| SAMNDCA10414510 | | |
| SAMNDCA10414519 | | |
| SAMNDCA10414524 | | |
| SAMNDCA10414525 | | |
| SAMNDCA10414526 | | |
| SAMNDCA10414556 | | |
| SAMNDCA10414563 | | |
| SAMNDCA10414564 | | |
| SAMNDCA10414565 | | |
| SAMNDCA10414566 | | |
| SAMNDCA10414592 | | |
| SAMNDCA10414593 | | |
| SAMNDCA10415201 | | |
| SAMNDCA10415202 | | |
| SAMNDCA10415207 | | |
| SAMNDCA10415209 | | |
| SAMNDCA10415228 | | |
| SAMNDCA10415289 | | |
| SAMNDCA10415910 | | |
| SAMNDCA10415960 | | |
| SAMNDCA10416194 | | |
| SAMNDCA10416203 | | |
| SAMNDCA10416248 | | |
| SAMNDCA10416249 | | |
| SAMNDCA10416302 | | |
| SAMNDCA10416323 | | |
| SAMNDCA10416326 | | |
| SAMNDCA10416327 | | |
| SAMNDCA10416328 | | |
| SAMNDCA10416331 | | |
| SAMNDCA10416376 | | |
| SAMNDCA10416381 | | |
| SAMNDCA10416383 | | |
| SAMNDCA10416387 | | |
| SAMNDCA10416413 | | |
| SAMNDCA10416414 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA10416415 | | |
| SAMNDCA10416416 | | |
| SAMNDCA10416420 | | |
| SAMNDCA10416421 | | |
| SAMNDCA10416453 | | |
| SAMNDCA10416468 | | |
| SAMNDCA10416471 | | |
| SAMNDCA10416472 | | |
| SAMNDCA10416473 | | |
| SAMNDCA10416474 | | |
| SAMNDCA10416493 | | |
| SAMNDCA10416496 | | |
| SAMNDCA10416500 | | |
| SAMNDCA10416506 | | |
| SAMNDCA10416508 | | |
| SAMNDCA10416509 | | |
| SAMNDCA10416510 | | |
| SAMNDCA10416512 | | |
| SAMNDCA10416513 | | |
| SAMNDCA10416514 | | |
| SAMNDCA10416516 | | |
| SAMNDCA10416517 | | |
| SAMNDCA10416518 | | |
| SAMNDCA10416521 | | |
| SAMNDCA10416522 | | |
| SAMNDCA10416523 | | |
| SAMNDCA10416526 | | |
| SAMNDCA10416527 | | |
| SAMNDCA10416528 | | |
| SAMNDCA10416531 | | |
| SAMNDCA10416535 | | |
| SAMNDCA10416541 | | |
| SAMNDCA10416542 | | |
| SAMNDCA10416570 | | |
| SAMNDCA10416571 | | |
| SAMNDCA10416572 | | |
| SAMNDCA10416647 | | |
| SAMNDCA10416649 | | |
| SAMNDCA10416656 | | |
| SAMNDCA10416666 | | |
| SAMNDCA10416669 | | |
| SAMNDCA10416673 | | |
| SAMNDCA10416674 | | |
| SAMNDCA10417835 | | |
| SAMNDCA10417885 | | |
| SAMNDCA10422845 | | |
| SAMNDCA10422855 | | |
| SAMNDCA10433154 | | |
| SAMNDCA10441819 | | |
| SAMNDCA10441826 | | |
| SAMNDCA10443738 | | |
| SAMNDCA10443789 | | |
| SAMNDCA10524415 | | |
| SAMNDCA10524415 | | |
| SAMNDCA10766603 | | |
| SAMNDCA10766631 | | |
| SAMNDCA10766681 | | |
| SAMNDCA10766731 | | |
| SAMNDCA10775587 | | |
| SAMNDCA10806707 | | |
| SAMNDCA10807316 | | |
| SAMNDCA10808165 | | |
| SAMNDCA10808165 | | |
| SAMNDCA10808165 | | |
| SAMNDCA10809390 | | |
| SAMNDCA10809390 | | |
| SAMNDCA10809390 | | |
| SAMNDCA10809734 | | |
| SAMNDCA10809734 | | |
| SAMNDCA10809734 | | |
| SAMNDCA10824971 | | |
| SAMNDCA10850604 | | |
| SAMNDCA10850604 | | |
| SAMNDCA10850619 | | |
| SAMNDCA10850822 | | |
| SAMNDCA10855683 | | |
| SAMNDCA10861243 | | |
| SAMNDCA10861272 | | |
| SAMNDCA10862012 | | |
| SAMNDCA10864444 | | |
| SAMNDCA10864446 | | |
| SAMNDCA10865579 | | |
| SAMNDCA10865586 | | |
| SAMNDCA10866815 | | |
| SAMNDCA10870131 | | |
| SAMNDCA10883080 | | |
| SAMNDCA11082242 | | |
| SAMNDCA11104115 | | |
| SAMNDCA11146013 | | |
| SAMNDCA11212162 | | |
| SAMNDCA11222766 | | |
| SAMNDCA11230282 | | |
| SAMNDCA11230302 | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| SAMNDCA11230321 | | |
| SAMNDCA11230334 | | |
| SAMNDCA11230349 | | |
| SAMNDCA11230351 | | |
| SAMNDCA11230432 | | |
| SAMNDCA11230475 | | |
| SAMNDCA11230518 | | |
| SAMNDCA11230543 | | |
| SAMNDCA11230568 | | |
| SAMNDCA11230581 | | |
| SAMNDCA11230594 | | |
| SAMNDCA11230609 | | |
| SAMNDCA11230615 | | |
| SAMNDCA11230665 | | |
| SAMNDCA11230675 | | |
| SAMNDCA11230678 | | |
| SAMNDCA11230681 | | |
| SAMNDCA11230690 | | |
| SAMNDCA11230694 | | |
| SAMNDCA11230695 | | |
| SAMNDCA11230705 | | |
| SAMNDCA11230707 | | |
| SAMNDCA11230709 | | |
| SAMNDCA11230721 | | |
| SAMNDCA11230723 | | |
| SAMNDCA11230726 | | |
| SAMNDCA11230729 | | |
| SAMNDCA11230737 | | |
| SAMNDCA11230739 | | |
| SAMNDCA11230747 | | |
| SAMNDCA11230747 | | |
| SAMNDCA11230751 | | |
| SAMNDCA11230766 | | |
| SAMNDCA11230780 | | |
| SAMNDCA11230780 | | |
| SAMNDCA11230788 | | |
| SAMNDCA11230788 | | |
| SAMNDCA11230808 | | |
| SAMNDCA11230827 | | |
| SAMNDCA11230850 | | |
| SAMNDCA11230850 | | |
| SAMNDCA11230865 | | |
| SAMNDCA11230874 | | |
| SAMNDCA11230889 | | |
| SAMNDCA11289451 | | |
| S-ITC-000092147 | S-ITC-000092456 | |
| S-ITC-000092457 | S-ITC-000092462 | |
| S-ITC-000092463 | S-ITC-000092468 | |
| S-ITC-000092469 | S-ITC-000092544 | |
| S-ITC-000092545 | S-ITC-000092545 | |
| S-ITC-0001016096 | S-ITC-0001016144 | Deposition of Boris Teksler, March 16, 2012, Exhibit 13. |
| S-ITC-0001016096 | S-ITC-0001016144 | Deposition of Eric Jue, February 24, 2012, Exhibit 13. |
| S-ITC-0001016096 | S-ITC-0001016144 | Deposition of Jun Won Lee, March 5, 2012, Exhibit 13. |
| S-ITC-0001016096 | S-ITC-0001016144 | Deposition of Tim Sheppard, December 21, 2011, Exhibit 13. |
| S-ITC-000112484 | S-ITC-000112493 | |
| S-ITC-000112494 | S-ITC-000112495 | |
| S-ITC-000112496 | S-ITC-000112503 | |
| S-ITC-000112504 | S-ITC-000112637 | |
| S-ITC-000112638 | S-ITC-000112653 | |
| S-ITC-000112654 | S-ITC-000112673 | |
| S-ITC-000112674 | S-ITC-000112675 | |
| S-ITC-000112676 | S-ITC-000112677 | |
| S-ITC-000112678 | S-ITC-000112679 | |
| S-ITC-000112680 | S-ITC-000112713 | |
| S-ITC-000112714 | S-ITC-000112715 | |
| S-ITC-000112716 | S-ITC-000112717 | |
| S-ITC-000112718 | S-ITC-000112719 | |
| S-ITC-000112720 | S-ITC-000112739 | |
| S-ITC-000112740 | S-ITC-000112755 | |
| S-ITC-000112756 | S-ITC-000112779 | |
| S-ITC-000112780 | S-ITC-000112791 | |
| S-ITC-000112792 | S-ITC-000112839 | |
| S-ITC-000112840 | S-ITC-000112841 | |
| S-ITC-000112842 | S-ITC-000112855 | |
| S-ITC-000112864 | S-ITC-000112867 | |
| S-ITC-000112868 | S-ITC-000112869 | |
| S-ITC-000112870 | S-ITC-000112895 | |
| S-ITC-000112916 | S-ITC-000112975 | |
| S-ITC-000112976 | S-ITC-000112997 | |
| S-ITC-000112998 | S-ITC-000113065 | |
| S-ITC-000113382 | S-ITC-000113393 | |
| S-ITC-000113394 | S-ITC-000113422 | Deposition of Boris Teksler, March 16, 2012, Exhibit 16. |
| S-ITC-000113394 | S-ITC-000113422 | Deposition of Eric Jue, February 24, 2012, Exhibit 16. |
| S-ITC-000113394 | S-ITC-000113422 | Deposition of Jun Won Lee, March 5, 2012, Exhibit 16. |
| S-ITC-000113394 | S-ITC-000113422 | Deposition of Tim Sheppard, December 21, 2011, Exhibit 16. |
| S-ITC-000113685 | S-ITC-000113685 | |
| S-ITC-000113813 | S-ITC-000113874 | |
| S-ITC-000113885 | S-ITC-000114607 | |
| S-ITC-000114608 | S-ITC-000115128 | |
| S-ITC-000115129 | S-ITC-000115974 | |
| S-ITC-000115975 | S-ITC-000116470 | |
| S-ITC-001016096 | | |
| S-ITC-001016096 | S-ITC-001016144 | Deposition of Justin Denison, December 16, 2011, Exhibit 8. |

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| S-ITC-001016096 | S-ITC-001016144 | |
| S-ITC-003361961 | | |
| S-ITC-003453270 | | |
| S-ITC-003453270 | | |
| S-ITC-003455356 | | |
| S-ITC-003514503 | | |
| S-ITC-003514505 | | |
| S-ITC-003514518 | | |
| S-ITC-003514528 | | |
| S-ITC-003514529 | | |
| S-ITC-003514531 | | |
| S-ITC-003514533 | | |
| S-ITC-003514535 | | |
| S-ITC-003514537 | | |
| S-ITC-003514540 | | |
| S-ITC-003514541 | | |
| S-ITC-003514543 | | |
| S-ITC-003514545 | | |
| S-ITC-003514547 | | |
| S-ITC-003514563 | | |
| S-ITC-003514565 | | |
| S-ITC-005188610 | | |
| S-ITC-005188610 | | |
| S-ITC-005193296 | S-ITC-005193340 | Deposition of Boris Teksler, March 16, 2012, Exhibit 18. |
| S-ITC-005193296 | S-ITC-005193340 | Deposition of Eric Jue, February 24, 2012, Exhibit 18. |
| S-ITC-005193296 | S-ITC-005193340 | Deposition of Tim Sheppard, December 21, 2011, Exhibit 18. |
| S-ITC-005193296 | S-ITC-005193340 | |
| S-ITC-005197904 | S-ITC-005199064 | Deposition of Boris Teksler, March 16, 2012, Exhibit 15. |
| S-ITC-005197904 | S-ITC-005199064 | Deposition of Eric Jue, February 24, 2012, Exhibit 15. |
| S-ITC-005197904 | S-ITC-005199064 | Deposition of Jun Won Lee, March 5, 2012, Exhibit 15. |
| S-ITC-005197904 | S-ITC-005199064 | Deposition of Tim Sheppard, December 21, 2011, Exhibit 15. |
| S-ITC-005197904 | S-ITC-005199064 | |
| S-ITC-005203329 | S-ITC-005203446 | Deposition of Boris Teksler, March 16, 2012, Exhibit 17. |
| S-ITC-005203329 | S-ITC-005203446 | Deposition of Eric Jue, February 24, 2012, Exhibit 17. |
| S-ITC-005203329 | S-ITC-005203446 | Deposition of Tim Sheppard, December 21, 2011, Exhibit 17. |
| S-ITC-005203329 | S-ITC-005203446 | |
| S-ITC-005208769 | S-ITC-005208797 | GM Weekly Report. |
| S-ITC-005208804 | S-ITC-005208833 | GM Weekly Report. |
| S-ITC-005208840 | S-ITC-005208870 | GM Weekly Report. |
| S-ITC-005208877 | S-ITC-005208906 | GM Weekly Report. |
| S-ITC-005208909 | S-ITC-005208978 | Deposition of Justin Denison, December 16, 2011, Exhibit 4. |
| S-ITC-005208909 | S-ITC-005208978 | |
| S-ITC-005208979 | S-ITC-005209005 | GM Weekly Report. |
| S-ITC-005209012 | S-ITC-005209049 | GM Weekly Report. |
| S-ITC-005209095 | S-ITC-005209125 | GM Weekly Report. |
| S-ITC-005209126 | S-ITC-005209153 | GM Weekly Report. |
| S-ITC-005209154 | S-ITC-005209186 | GM Weekly Report. |
| S-ITC-005209187 | S-ITC-005209222 | GM Weekly Report. |
| S-ITC-005209223 | S-ITC-005209253 | GM Weekly Report. |
| S-ITC-005209254 | S-ITC-005209283 | GM Weekly Report. |
| S-ITC-005209284 | S-ITC-005209318 | GM Weekly Report. |
| S-ITC-005209319 | S-ITC-005209350 | GM Weekly Report. |
| S-ITC-005209351 | S-ITC-005209380 | GM Weekly Report. |
| S-ITC-005209381 | S-ITC-005209408 | GM Weekly Report. |
| S-ITC-005209409 | S-ITC-005209437 | GM Weekly Report. |
| S-ITC-005209438 | S-ITC-005209469 | GM Weekly Report. |
| S-ITC-005209470 | S-ITC-005209504 | GM Weekly Report. |
| S-ITC-005209505 | S-ITC-005209533 | GM Weekly Report. |
| S-ITC-005209534 | S-ITC-005209564 | GM Weekly Report. |
| S-ITC-005209565 | S-ITC-005209591 | GM Weekly Report. |
| S-ITC-005209592 | S-ITC-005209625 | GM Weekly Report. |
| S-ITC-005209626 | S-ITC-005209656 | GM Weekly Report. |
| S-ITC-005209657 | S-ITC-005209685 | GM Weekly Report. |
| S-ITC-005209686 | S-ITC-005209720 | GM Weekly Report. |
| S-ITC-005209721 | S-ITC-005209753 | GM Weekly Report. |
| S-ITC-005209754 | S-ITC-005209777 | GM Weekly Report. |
| S-ITC-005209778 | S-ITC-005209799 | GM Weekly Report. |
| S-ITC-005209800 | S-ITC-005209828 | GM Weekly Report. |
| S-ITC-005209829 | S-ITC-005209870 | GM Weekly Report. |
| S-ITC-005209871 | S-ITC-005209939 | GM Weekly Report. |
| S-ITC-005209896 | S-ITC-005209939 | GM Weekly Report. |
| S-ITC-005209940 | S-ITC-005209982 | GM Weekly Report. |
| S-ITC-005209983 | S-ITC-005210019 | GM Weekly Report. |
| S-ITC-005210020 | S-ITC-005210057 | GM Weekly Report. |
| S-ITC-005210058 | S-ITC-005210095 | GM Weekly Report. |
| S-ITC-005210096 | S-ITC-005210119 | GM Weekly Report. |
| S-ITC-005210120 | S-ITC-005210149 | GM Weekly Report. |
| S-ITC-005210150 | S-ITC-005210176 | GM Weekly Report. |
| S-ITC-005210177 | S-ITC-005210205 | GM Weekly Report. |
| S-ITC-005210206 | S-ITC-005210235 | GM Weekly Report. |
| S-ITC-005210236 | S-ITC-005210261 | GM Weekly Report. |
| S-ITC-005210262 | S-ITC-005210293 | GM Weekly Report. |
| S-ITC-005210348 | S-ITC-005210381 | GM Weekly Report. |
| S-ITC-005210345 | S-ITC-005210476 | GM Weekly Report. |
| S-ITC-005210479 | S-ITC-005210509 | GM Weekly Report. |
| S-ITC-005210512 | S-ITC-005210548 | GM Weekly Report. |
| S-ITC-005210619 | S-ITC-005210645 | GM Weekly Report. |
| S-ITC-005210741 | S-ITC-005210776 | GM Weekly Report. |
| S-ITC-005210780 | S-ITC-005210812 | GM Weekly Report. |
| S-ITC-005210825 | S-ITC-005210853 | GM Weekly Report. |
| S-ITC-005210866 | S-ITC-005210895 | GM Weekly Report. |
| S-ITC-005210992 | S-ITC-005211014 | GM Weekly Report. |
| S-ITC-005211018 | S-ITC-005211044 | GM Weekly Report. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                    **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| S-ITC-005211047 | S-ITC-005211075 | GM Weekly Report. |
| S-ITC-005211176 | S-ITC-005211204 | GM Weekly Report. |
| S-ITC-005211291 | S-ITC-005211327 | GM Weekly Report. |
| S-ITC-005212485 | S-ITC-005212536 | GM Weekly Report. |
| S-ITC-005217245 | S-ITC-005218270 | |
| S-ITC-005219558 | S-ITC-005219663 | |
| S-ITC-005220686 | S-ITC-005220906 | |
| S-ITC-005230825 | S-ITC-005230895 | Deposition of Justin Denison, December 16, 2011, Exhibit 5. |
| S-ITC-005230825 | S-ITC-005230895 | |
| S-ITC-005354073 | | |
| S-ITC-007274261 | S-ITC-007274353 | |
| S-ITC-007274461 | | |
| S-ITC-007274461 | | |
| S-ITC-007465748 | | |
| S-ITC-007503474 | | |
| S-ITC-007517131 | | |
| S-ITC-007849424 | | |
| S-ITC-008261312 | | |
| S-ITC-008261830 | | |
| S-ITC-008262360 | | |
| S-ITC-008262998 | | |
| S-ITC-008264102 | | |
| S-ITC-008287409 | | |
| S-ITC-008287874 | | |
| S-ITC-008293064 | | |
| S-ITC-008297850 | | |
| S-ITC-008298213 | | |
| S-ITC-008298863 | | |
| S-ITC-008300403 | | |
| S-ITC-008376569 | | |
| S-ITC-008377583 | | |
| S-ITC-008661253 | | |
| S-ITC-008661540 | | |
| S-ITC-008685787 | | |
| S-ITC-008735601 | | |
| S-ITC-008747591 | | |
| S-ITC-009179417 | | |
| S-ITC-009250095 | | |
| S-ITC-009284609 | | |
| S-ITC-009293999 | | |
| S-ITC-009302888 | | |
| S-ITC-009409060 | | |
| S-ITC-010617659 | | |
| S-ITC-010617659 | | |
| S-ITC-500006584 | | |
| S-ITC-500010076 | | |
| S-ITC-500010284 | | |
| S-ITC-500017280 | | |
| S-ITC-500017437 | | |
| S-ITC-500017539 | | |
| S-ITC-500018414 | | |
| S-ITC-500018467 | | |
| S-ITC-500018622 | | |
| S-ITC-500020245 | | |
| S-ITC-500021629 | | |
| S-ITC-500028870 | | |
| S-ITC-500030713 | | |
| S-ITC-500031703 | | |
| S-ITC-500031703 | | |
| S-ITC-500034975 | | |
| S-ITC-500056374 | | |
| | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                                     EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| Legal | | |
| | | |
| WAGNER0000006 | WAGNER0000006 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 162. |
| WAGNER0000001 | WAGNER0000006 | Mike Dano, FierceWireless, "Are touchscreens the most important feature of smartphones?" 6/2/2011. |
| WAGNER0000007 | WAGNER0000007 | Michael J. Miller, PCMag.com, "Samsung Unveils Galaxy S Line of Android Phones," 6/30/2010. |
| WAGNER0000008 | WAGNER0000008 | Sean Ludwig, PCMag.com, "Samsung Vibrant Launches, Will Be a Top Contender on T-Mobile," 7/15/2010. |
| WAGNER0000009 | WAGNER0000012 | "Galaxy S 4G from T-Mobile to Offer Blazing-Fast Speeds and Unparalleled Entertainment Experience Featuring Movies, TV and Video Chat," 2/2/2011. |
| WAGNER0000013 | WAGNER0000013 | Sascha Segan, PCMag.com, "Samsung Galaxy S 4G: Hands On," 2/14/2011. |
| WAGNER0000014 | WAGNER0000016 | PCMag.com, "Samsung Galaxy S 4G (T-Mobile)," 3/2/2011. |
| WAGNER0000017 | WAGNER0000020 | "Biggest Yet Thinnest, Samsung Infuse 4G Debuts May 15," 5/5/2011. |
| WAGNER0000021 | WAGNER0000021 | Sascha Segan, PCMag.com, "AT&T, Samsung Launch Infuse 4G Smartphone," 5/5/2011. |
| WAGNER0000024 | WAGNER0000024 | Washingtonpost.com, "Apple fans line up to buy first batch of iPad 2s," 3/11/2011. |
| WAGNER0000025 | WAGNER0000026 | "Samsung Infuse 4G SGH-I997 (AT&T)," 5/17/2011. |
| WAGNER0000027 | WAGNER0000028 | "Verizon Wireless Unleashes Droid Chare by Samsung." |
| WAGNER0000029 | WAGNER0000031 | PCMag.com, "Samsung Droid Charge (Verizon Wireless)," 5/6/2011. |
| WAGNER0000032 | WAGNER0000036 | Reuters, "Apple iPad 2 sales seen clearing 1 million units," 3/14/2011. |
| WAGNER0000037 | WAGNER0000041 | "Samsung Unveils Galaxy Tab10.1 and Galaxy Tab 8.9, World's Thinnest Mobile Tablets," 3/22/2011. |
| WAGNER0000042 | WAGNER0000045 | "Samsung Galaxy Tab 10.1, World's Thinnest Mobile Tablet, Makes Official Landing in U.S.," 6/2/2011. |
| WAGNER0000046 | WAGNER0000047 | Todd Haselton, MobileBurn, "Verizon iPhone 4 pre-orders begin at 3am EST on Thursday, 1/31/2011. |
| WAGNER0000048 | WAGNER0000055 | Vlad Savov, Engadget, "Verizon breaks first day sales record with iPhone 4 pre-orders - in only two hours," 2/4/2011. |
| WAGNER0000056 | WAGNER0000061 | Apple Press Info, "Apple Reports Third Quarter Results," 7/19/2011. |
| WAGNER0000062 | WAGNER0000071 | Henry Blodget and Leah Goldman, Business Insider, "The Truth about Smartphones: Our Exclusive survey on iPhone vs Android," 4/18/2011. |
| WAGNER0000072 | WAGNER0000091 | Business Insider, "The Truth About Smartphones: Our Exclusive survey on iPhone vs Android - What is the Most Important factor to you in choosing a particular smartphone?" |
| WAGNER0000092 | WAGNER0000101 | Business Insider, "The Truth About Smartphones: Our Exclusive survey on iPhone vs Android - What might make you buy an iPhone instead?" |
| WAGNER0000102 | WAGNER0000102 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 187. |
| WAGNER0000102 | WAGNER0000207 | Joshua Topolsky, Engadget, "Live from Apple's iPad 2 event (update: it's over!)," 3/2/2011. |
| WAGNER0000208 | WAGNER0000224 | John Paczkowski, All Things D, "Jobs Introduces Apple iPad 2," 3/2/2011. |
| WAGNER0000225 | WAGNER0000226 | Apple.com, iPad 2. |
| WAGNER0000227 | WAGNER0000232 | Anand Lai Shimpi, AnandTech, "Samsung's Galaxy Tab 10.1 & 8.9, Smaller than iPad 2, Competitively Priced," 3/22/2011. |
| WAGNER0000233 | WAGNER0000233 | Sandy Samra, Bright Hub, "The History of the iPhone," 5/19/2011. |
| WAGNER0000237 | WAGNER0000244 | Phil Nickinson, Android Central, "Sprint stores open at 8 a.m. Tuesday for the Epic 4G launch," 8/30/2010. |
| WAGNER0000251 | WAGNER0000262 | Todd Wasserman, Mashable, "iPhone 5 Could Double Apple's Mobile Market Share," 8/2/2011. |
| WAGNER0000263 | WAGNER0000263 | CNN.com, "Survey shows pent-up demand for next iPhone," 7/27/2011. |
| WAGNER0000264 | WAGNER0000266 | Christian Zibreg, Bright Side of News, "Money-Making iPhone Owns Half the Profits with just 4% Market Share," 2/1/2011. |
| WAGNER0000267 | WAGNER0000267 | John Paczkowski, All Things Digital, "Apple: Enjoy Your Smartphone Market Share; We'll Console Ourselves with Profit Share," 5/3/2011. |
| WAGNER0000268 | WAGNER0000290 | J.P. Morgan, Global Equity Research, Daily Download, "Nokia: Solid Q409; Apple iPad; China 3G stats and Qualcomm FQ1," 1/28/2010. |
| WAGNER0000291 | WAGNER0000294 | Kaufman Bros., Apple, Inc., "Introduces Widely Anticipated iPad; Price Points More Attractive than Expected," 1/28/2010. |
| WAGNER0000295 | WAGNER0000297 | Astaire Securities, Telecoms Daily, "Apple's iPad, and Vodafone," 1/28/2010. |
| WAGNER0000298 | WAGNER0000300 | Chantal Tode, Mobile Marketer, "Apple's tablet share drops to 61pc overall shipments soar: Strategy Analytics," 7/22/2011. |
| WAGNER0000301 | WAGNER0000303 | Enhanced Online News, "Strategy Analytics: Apple iOS Captures 61 Percent Share of Global Tablet Shipments in Q2 2011," 7/21/2011. |
| WAGNER0000304 | WAGNER0000308 | Retrevo Blog, "Could Amazon be Android's Best Hope?" 7/14/2011. |
| WAGNER0000309 | WAGNER0000313 | Market Force, "Market Force Survey Reveals Nearly Everyone Owns a Computer, Printer and Digital Camera," 3/22/2011. |
| WAGNER0000314 | WAGNER0000318 | Gregg Keizer, ComputerWorld, "iPad 2 shortages continue, relief 1-2 months away," 3/15/2011. |
| WAGNER0000319 | WAGNER0000325 | Morgan Stanley, "Hon Hai Precision - Fire at Chendu Plant Likely to Depress iPad 2 Production," 5/22/2011. |
| WAGNER0000326 | WAGNER0000329 | J.P. Morgan, "Tablets Part 4 - Extent of iPad 2 shortage and what we think will happen when it eases - Alert," 6/28/2011. |
| WAGNER0000330 | WAGNER0000333 | Lance Whitney, CNet Reviews, "Android is top OS, but Apple top smartphone maker," 7/28/2011. |
| WAGNER0000334 | WAGNER0000334 | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 169. |
| WAGNER0000334 | WAGNER0000341 | Financial Times Special Report, "Big names fly high despite the gloom," 5/19/2011. |
| WAGNER0000342 | WAGNER0000347 | Gabriel Perna, International Business Times, "Google I/O: Google Touts Androids Success, Teases Future Unity," 5/10/2011. |
| WAGNER0000391 | WAGNER0000391 | Preston Gralla, ComputerWorld, "Smartphone OS shootout: Android vs. iOS vs. Windows Phone," 3/17/2011. |
| WAGNER0000392 | WAGNER0000398 | Ian Paul, PCWorld, "Google Android vs. Apple iOS: Feature War Heats Up," 2/17/2011. |
| WAGNER0000451 | WAGNER0000455 | Reuters, "Few Smartphone Owners are Loyal to Their Brand: Survey," 11/29/2010. |
| WAGNER0000456 | WAGNER0000462 | Arbitron Mobile previously Zokem, "In the US Market, iPhone Outperforms Other Mobile Platforms in User Loyalty by a Wide Margin, Android is Second, Blackberry Fourth," 1/18/2011. |
| WAGNER0000463 | WAGNER0000486 | Aaron Smith, Pew Internet Project, "35% of American adults own a smartphone - One quarter of smartphone owners use their phone most of their online browsing," 7/11/2011. |
| WAGNER0000488 | WAGNER0000490 | PR Newswire, "Deloitte's 'Revolutions 2010' Survey: Mobile 'Apps' and e-readers Transform Consumer Behavior," 9/22/2010. |
| WAGNER0000491 | WAGNER0000494 | Jay Yarow, Business Insider, "Chart of the Day: What People Care About When Buying a Smartphone," 4/22/2011. |
| WAGNER0001956 | WAGNER0001958 | Alan F., Phone Arena, "Samsung's Acclaim launched today by U.S. Cellular," 7/9/2010. |
| WAGNER0001959 | WAGNER0001961 | Robert Holland, SMSEO, "AT&T Android Phone Samsung Captivate Released Today," 7/18/2010. |
| WAGNER0001962 | WAGNER0001967 | Taylor Wimberly, Android and Me, "Samsung announces Verizon Continuum, launches Nov. 11," 11/8/2010. |
| WAGNER0001968 | WAGNER0001968 | Sara Yin, PCMag.com, "Samsung's Droid Charge Hits Verizon Stores Tomorrow," 5/13/2011. |
| WAGNER0001977 | WAGNER0001979 | Mark Calley, Brighthand, "T-Mobile Announces Launch Date for Samsung Exhibit 4G and Gravity Smart," 6/15/2011. |
| WAGNER0001980 | WAGNER0001981 | LexisNexis, "The iPhone vs. Everyone Else," 11/13/2007. |
| WAGNER0001982 | WAGNER0001989 | Vlad Savov, Engadget, "Official: Samsung Fascinate launching September 9 for $199 (update: September 8 online)," 9/7/2010. |
| WAGNER0001990 | WAGNER0001991 | Jessica Dolcourt, LexisNexis, "Samsung announces Android-powered Galaxy Ace, Fit, Gio, Mini," 1/26/2011. |
| WAGNER0001992 | WAGNER0001993 | LexisNexis, "Galaxy S2 Launches in S. Korea: How Much Better is it Than Galaxy S?" 4/28/2011. |
| WAGNER0001994 | WAGNER0001997 | Jacob Cunningham, Android Spin, "Samsung Galaxy S 4G Drops Today," 2/23/2011. |
| WAGNER0001998 | WAGNER0002000 | LexisNexis, "Samsung Galaxy S launches in Europe, hitting US later this year," 6/3/2010. |
| WAGNER0002001 | WAGNER0002004 | Gizmodo, "T-Mobile Gets First Dibs on Galaxy Tab: November 10th for $400." |
| WAGNER0002005 | WAGNER0002013 | Vlad Savov, Engadget, "Samsung Galaxy Tab 10.1 on sale at NYC Best Buy today, pre-orders now open," 6/8/2011. |
| WAGNER0002014 | WAGNER0002018 | Craig Gillispie, Smartphone Envy, "Samsung and U.S. Cellular launch the Gem today," 4/1/2011. |
| WAGNER0002019 | WAGNER0002022 | LexisNexis, "New Offerings from T-Mobile Make it Easy to Stay Close with Family and Friends During the Holidays and Beyond; Exclusive Devices, Free Companion Flight Focus on Sharing Moments with Friends and Family," 11/6/2008. |
| WAGNER0002023 | WAGNER0002025 | George Wong, Ubergizmo, "Samsung Indulge launched on Criket Communications today," 6/17/2011. |
| WAGNER0002027 | WAGNER0002030 | Alex Smith, AndroidSpin, "Samsung Intercept Officially Announced by Sprint Launching July 11th for $99," 12/14/2011. |
| WAGNER0002031 | WAGNER0002032 | Stephen Teneroewicz, AndroidGuys, "Samsung Mesmerize Launches on U.S. Cellular," 10/27/2010. |
| WAGNER0002033 | WAGNER0002036 | Dylan Bailey, Android Community, "Best Buy Details Nexus S Launch Plans," 12/13/2010. |
| WAGNER0002037 | WAGNER0002038 | Florin, UnwiredView.com, "Google Nexus S 4G launched by Sprint for $199 on contract. Best Buy sells it for $149," 5/8/2011. |
| WAGNER0002039 | WAGNER0002042 | PhoneArena.com, "Samsung Galaxy Prevail," 4/4/2011. |
| WAGNER0002043 | WAGNER0002045 | Chris Chavez, Phandroid, "Samsung Officially Releases the Replenish Source Code," 5/3/2011. |
| WAGNER0002046 | WAGNER0002048 | Paul Paulson, Best Android Deals, "Samsung Galaxy S Showcase Now Available at Cellular South," 11/15/2010. |
| WAGNER0002049 | WAGNER0002050 | Chloe Albanesius, LexisNexis, PC Magazine, "Sidekick 4G, Cate Premier to Hit Mobile April 20," 4/7/2011. |
| WAGNER0002051 | WAGNER0002053 | Ed Hardy, Brighthand, "Sprint Launches Android OS-based Samsung Transform, Sanyo Zio," 10/10/2010. |
| WAGNER0002054 | WAGNER0002055 | Florin, UnwiredView.com, "T-Mobile Samsung Vibrant Galaxy S also available starting today," 7/15/2010. |
| | | 1.15.10 Apple v Nokia ITC Complaint 337.TA.704 |
| | | 1.17.12 Proceedings |
| | | 1.17.12 Samsung Tech Tutorial Presentation |
| | | 1.20.12 Proceedings |
| | | 1.30.12 SAMSUNG'S AMENDED FIRST 30(b)(6) DEPOSITION NOTICE TO APPLE INC. (DAMAGES TOPICS) |
| | | 1.31.12 Apple Inc.'s 7th Rule 30(b)(6) Deposition Notice |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

Documents Considered List

**EXHIBIT 3**

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | 1.6.12 SAMSUNG'S OBJECTIONS AND RESPONSE TO APPLE'S SIXTH SET OF INTERROGATORIES (NO. 14) |
| | | 10.1.10 APPLE INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO NOKIA'S FIRST AMENDED COMPLAINT (Case 249) |
| | | 10.12.11 SAMSUNG'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO APPLE'S INTERROGATORIES TO DEFENDANTS RELATING TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION - SET TWO (NOS. 10-14) |
| | | 10.29.10 Apple v Motorola case 661, COMPLAINT FOR PATENT INFRINGEMENT |
| | | 10.31.11 APPLE INC.'S ANSWER AND COUNTERCLAIMS TO HTC CORPORATION'S COMPLAINT FOR PATENT INFRINGEMENT |
| | | 10.31.11 SAMSUNG'S FIRST AMENDED OBJECTIONS AND RESPONSES TO APPLE INC.'S THIRD SET OF INTERROGATORIES (Nos. 7-9) |
| | | 11.14.11 SAMSUNG'S OBJECTIONS AND RESPONSES TO APPLE INC.'S FOURTH SET OF INTERROGATORIES (No. 10) |
| | | 11.18.10 Apple v Motorola DEFENDANT APPLE INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT |
| | | 12.1.11 Order Transferring Case (Apple v Motorola) |
| | | 12.19.11 NOTICE OF THE COMMISSION'S FINAL DETERMINATION FINDING A VIOLATION OF SECTION 337; ISSUANCE OF A LIMITED EXCLUSION ORDER; TERMINATION OF THE INVESTIGATION |
| | | 12.2.10 Apple v Motorola AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| | | 12.22.11 Order |
| | | 2.19.10 Apple Inc.'s First Amended Answer, Defenses, and Counterclaims (Nokia v Apple, case 791) |
| | | 2.24.10 Apple Inc.'s Answer, Defenses, and Counterclaims (Nokia v Apple, Case 1002) |
| | | 2.3.12 Velocity Micro Subpoena to Testify at a Deposition |
| | | 2.8.12 - Apple Inc.'s Administrative Motion to File Documents Under Seal - stamped |
| | | 2.8.12 [Proposed] Order Granting Apple Inc.'s Administrative Motion to Exceed Page Limits |
| | | 2.8.12 [Proposed] Order Granting Apple Inc.'s Administrative Motion to File Documents Under Seal |
| | | 2.8.12 [Proposed] Order Granting Apple Inc.'s Motion for a Preliminary Injunction |
| | | 2.8.12 Apple Certification of Interested Parties - stamped |
| | | 2.8.12 Apple Corporate Disclosure Statement - stamped |
| | | 2.8.12 Apple Inc.'s Administrative Motion to Exceed Page Limits - stamped |
| | | 2.8.12 Apple Inc.'s Certificate of Service - stamped |
| | | 2.8.12 Apple Notice of Pendency of Other Actions or Proceedings - stamped |
| | | 2.8.12 Apple v Samsung Order Reassigning Case to a District Judge - stamped |
| | | 2.8.12 Apple v Samsung Order Setting Initial Case Management Conference and ADR Deadlines - stamped |
| | | 2.8.12 Civil Cover Sheet for Apple Complaint - stamped |
| | | 2.8.12 Clerk Notice to Defendants - stamped |
| | | 2.8.12 Declaration and exhibits of Dr. Ravin Balakrishnan Concerning U.S. Patent No. 8,046,721 |
| | | 2.8.12 Declaration of Arthur Rangel - Document Submitted Under Seal - Exhibits 1-4 Included |
| | | 2.8.12 Declaration of Arthur Rangel - Document Submitted Under Seal - Exhibits 1-4 Included |
| | | 2.8.12 Declaration of Arthur Rangel - Document Submitted Under Seal - Exhibits 5-6 Included |
| | | 2.8.12 Declaration of Arthur Rangel - Redacted Public Version |
| | | 2.8.12 Declaration of Chistopher Vellturo, Ph.D., Redacted Public Version, Volume 1 of 3, Exhibits 1-60 |
| | | 2.8.12 Declaration of Chistopher Vellturo, Ph.D., Volume 2 of 3, Exhibits 61-76 |
| | | 2.8.12 Declaration of Chistopher Vellturo, Ph.D., Volume 3 of 3, Exhibits 77-122 |
| | | 2.8.12 Declaration of Christopher Vellturo, Ph.D. - Redacted Public Version |
| | | 2.8.12 Declaration of Christopher Vellturo, Ph.D. in Support of Apple Inc.'s Motion for a Preliminary Injunction - Filed Under Seal - Exhibits 22, 28, 29, 53, 82, 112 included - NOTE: Exhibits 22-28 on one CD |
| | | 2.8.12 Declaration of Christopher Vellturo, Ph.D. in Support of Apple Inc.'s Motion for a Preliminary Injunction - Filed Under Seal - Exhibits 22, 28, 29, 53, 82, 112 included - NOTE: Exhibits 22-28 on one CD (with exhibits) |
| | | 2.8.12 Declaration of Cyndi Wheeler in Support of Apple Inc.'s Administrative Motion to File Documents Under Seal |
| | | 2.8.12 Declaration of Dr. Karan Singh Regarding U.S. Patent No. 8,074,172 |
| | | 2.8.12 Declaration of Dr. Karan Singh Regarding U.S. Patent No. 8,074,172 and exhibits |
| | | 2.8.12 Declaration of Dr. Ravin Balakrishnan Concerning U.S. Patent No. 8,046,721 |
| | | 2.8.12 Declaration of Jennifer J. Rho in Support of Apple Inc.'s Administrative Motion to Exceed Page Limits |
| | | 2.8.12 Declaration of Jennifer J. Rho in Support of Apple Inc.'s Administrative Motion to File Documents Under Seal |
| | | 2.8.12 Declaration of Steven Sinclair |
| | | 2.8.12 Expert Declaration and exhibits of Dr. Nathaniel Polish Concerning U.S. Patent No. 8,086,604 |
| | | 2.8.12 Expert Declaration of Dr. Nathaniel Polish Concerning U.S. Patent No. 8,086,604 |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 1 of 7 |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 1 of 7, Exhibits 1-5 |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 2 of 7, Exhibits 6 (1 of 3) |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 3 of 7, Exhibits 6 (2 of 3) |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 4 of 7, Exhibits 6 (3 of 3) |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 5 of 7, Exhibits 7-11 |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 6 of 7, Exhibits 12-14 |
| | | 2.8.12 Expert Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647, Part 7 of 7, Exhibits 15-18 |
| | | 2.8.12 Filed Stamped Apple Complaint |
| | | 2.8.12 Motion and Memorandum in Support of Apple Inc.'s Motion for a Preliminary Injunction - Filed Under Seal |
| | | 2.8.12 Motion and Memorandum in Support of Apple Inc.'s Motion for a Preliminary Injunction - Redacted Public Version |
| | | 2.8.12 Notice of Filing AO 12 - stamped |
| | | 2.8.12 Summons - Samsung America - stamped |
| | | 2.8.12 Summons - Samsung Electronics Co. - Korea - stamped |
| | | 2.8.12 Summons - Samsung Telecom - stamped |
| | | 2.9.12 Apple v Motorola COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| | | 3.1.10 Apple v HTC Complaint |
| | | 3.1.12 Kolovos letter to Kassabian |
| | | 3.10.12 APPLE INC.'S OBJECTIONS AND RESPONSES TO SAMSUNG'S FOURTH SET OF INTERROGATORIES |
| | | 3.2.10 Complaint for Patent Infringement, Case 166 |
| | | 3.2.12 Kolovos letter to Kassabian |
| | | 3.27.12 APPLE INC.'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS |
| | | 3.27.12 DECLARATION OF MINN CHUNG IN SUPPORT OF APPLE'S MOTION FOR RULE 37(B)(2) SANCTIONS FOR SAMSUNG'S VIOLATION OF TWO DISCOVERY ORDERS |
| | | 3.4.12 APPLE INC.'S FIRST AMENDED AND SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1) |
| | | 3.7.12 SAMSUNG'S THIRD AMENDED AND SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. CIV. P. 26(a)(1) |
| | | 3.9.12 SAMSUNG'S FOURTH AMENDED AND SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1) |
| | | 5.18.11 Order Granting Limited Expedited Discovery |
| | | 6.21.10 Complaint for Patent Infringement, Case 544 |
| | | 6.21.10 FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| | | 7.1.11 APPLE INC.'S COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED |
| | | 7.21.11 COUNTERCLAIM DEFENDANT APPLE INC.'S ANSWER, DEFENSES, AND COUNTERCLAIMS IN REPLY TO SAMSUNG'S COUNTERCLAIMS |
| | | 7.21.11 Counterclaim Defendant Apple's Answer, Defenses, and Counterclaims in Reply to Samsung's Counterclaims |
| | | 8.16.10 Apple Inc.'s First Amended Answer, Defenses, and Counterclaims (Nokia v Apple, Case 249) |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 1 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 10 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 11 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 12 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 13 |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 3

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 14 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 15 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 16 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 17 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 18 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 19 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 2 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 20 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 21 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 3 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 4 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 5 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 6 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 7 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 8 |
| | | 8.26.11 APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS, Ex. 9 |
| | | 8.26.12 ADDENDUM TO APPLE INC.'S DISCLOSURE OF ASSERTED CLAIMS & INFRINGEMENT CONTENTIONS |
| | | 9.1.11 Confidential Exhibit A to Samsung's Response to Apple's Complaint |
| | | 9.1.11 RESPONSE OF SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC TO COMPLAINT UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED, AND NOTICE OF INVESTIGATION |
| | | 9.18.11 Supplemental Declaration of Richard L. Donaldson |
| | | 9.26.11 SAMSUNG'S RESPONSE AND OBJECTIONS TO APPLE'S INTERROGATORIES TO DEFENDANTS RELATING TO APPLE'S MOTION FOR A PRELIMINARY INJUNCTION (NO. 1) |
| | | 9.4.11 Declaration of Richard L. Donaldson |
| | | Affidavit of Antony Bryn Samuel, dated 9/19/2011. |
| | | Affidavit of Lutton, 2011-07-28. |
| | | Affidavit of Small, 2011-07-28. |
| | | Apple Inc. v. Samsung Electronics Co., Ltd., et al.., Notice of Appeal, 12/7/2011. |
| | | Apple Inc.'s Markman Tutorial Case No. 11-cv-01846-LHK |
| | | Apple Inc.'s Motion for a Preliminary Injunction, dated 7/1/2011. |
| | | Apple Motion for EU Wide Prel Inj Galaxy Tab 10.1, Document in German, 08/04/11. |
| | | Apple's 4th 30(b)(6) Notice, 01/18/2012. |
| | | Apple's 7th 30(b)(6) Depo Notice, 1/31/2012. |
| | | Apple's Amended Complaint with Exhibits, For Federal False Designation of Origin and Unfair Competition, Federal Trademark Infringement, Federal Trade Dress Dilution, State Unfair Business Practices, Common Law Trademark Infringement, Unjust Enrichment, and Patent Infringement, dated 6/16/2011. |
| | | Apple's Motion to Compel Samsung to Produce Documents and Provide Responsive Answers to Propounded Discovery, dated 9/20/2011. |
| | | Apple's Ninth 30(b)(6) Notice, 2/7/2012. |
| | | BAMA 2006 IRS Form 990 |
| | | Bartlet Exhibit 46, IDC, "Smartphone Market Grows 79.7% Year Over Year in First Quarter of 2011, According to IDC," dated 5/5/2011. |
| | | Bartlet Exhibit 47, IDC, "Nearly 18 Million Media Tablets Shipped in 2010 with Apple Capturing 83% Share; eReader Shipments Quadrupled to More than 12 Million, According to IDC," dated 5/10/2011. |
| | | Civil Docket for Case #1:11-cv-00573-LPS, as of 10.28.11 |
| | | Complaint for Patent Infringement, Federal False Designation of Origin and Unfair Competition, Federal Trademark Infringement, State Unfair Competition, Common Law Trademark Infringement, and Unjust Enrichment, 4/15/2011. |
| | | Confidential Annexures RBS-27 to RBS-30. |
| | | Confidential Exhibits RBS-3, RBS-6 and RBS-7. |
| | | Counterclaim Defendant Apple Inc.'s Amended Answer, Defenses, and Counterclaims in Reply to Samsung's Counterclaims, 10/28/2011. |
| | | Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, signed on 8/21/2011. |
| | | Declaration of Patrick J. Zhang in Support of Apple's Motion for Preliminary Injunction, signed 7/1/2011. |
| | | Declaration of Sissie Twiggs in Support of Apple Inc.'s Motion for a Preliminary Injunction, signed on 6/30/2011. |
| | | Deposition of Tony Blevins, 2011-09-30. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 10. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 2. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 4. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 5. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 6. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 7. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 8. |
| | | Deposition of Arthur Rangel, March 2, 2012, Exhibit 9. |
| | | Deposition of Arthur Rangel, March 2, 2012. |
| | | Deposition of Arthur Rangel, March 2, 2012. |
| | | Deposition of Arthur Rangel, March 2, 2012. |
| | | Deposition of Arthur Rangel, March 2, 2012. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5005. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5006. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5007. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5008. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5009. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5010. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012, Exhibit 5011. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012. |
| | | Deposition of BJ Watrous, Esq., March 8, 2012. |
| | | Deposition of Boris Teksler, February 24, 2012. |
| | | Deposition of Boris Teksler, February 24, 2012. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 1. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 10. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 19. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 20. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 21. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 22. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 23. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 24. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 25. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 26. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 27. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 4. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 5. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 6. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 7. |
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 8. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.
Documents Considered List

EXHIBIT 3

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Deposition of Boris Teksler, March 16, 2012, Exhibit 9. |
| | | Deposition of Boris Teksler, March 16, 2012. |
| | | Deposition of Boris Teksler, March 16, 2012. |
| | | Deposition of Boris Teksler, March 16, 2012. |
| | | Deposition of Boris Teksler, March 16, 2012. |
| | | Deposition of Boris Teksler, March 16, 2012. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1278. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1279. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1280. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1281. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1282. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1283. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1284. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1285. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1286. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1287. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1288. |
| | | Deposition of Brian Rosenberg, January 27, 2012, Exhibit 1289. |
| | | Deposition of Brian Rosenberg, January 27, 2012. |
| | | Deposition of Brian Rosenberg, January 27, 2012. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 1. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 10. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 11. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 12. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 13. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 14. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 15. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 16. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 17. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 18. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 19. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 2. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 22. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 23. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 24. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 25. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 3. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 4. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 5. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 6. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 7. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 8. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011, Exhibit 9. |
| | | Deposition of Chip Lutton, Jr., July 26, 2011. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1910. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1911. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1912. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1913. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1914. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1915. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1916. |
| | | Deposition of Corey Kerstetter, February 29, 2012, Exhibit 1917. |
| | | Deposition of Corey Kerstetter, February 29, 2012. |
| | | Deposition of Corey Kerstetter, February 29, 2012. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1550. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1551. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1552. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1553. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1554. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1555. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1556. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1557. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1558. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1559. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1560. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1561. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1562. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1563. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1564. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1565. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1566. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1567. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1567. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1568. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1569. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1570. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1571. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1572. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1573. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1574. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1576. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1577. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1578. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1579. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1580. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1581. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1582. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1583. |
| | | Deposition of Don-Joo Lee, February 17, 2012, Exhibit 1584. |
| | | Deposition of Don-Joo Lee, February 17, 2012. |
| | | Deposition of Don-Joo Lee, February 17, 2012. |
| | | Deposition of Don-Joo Lee, February 17, 2012. |
| | | Deposition of Emilie Kim, March 7, 2012. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 1. |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

Documents Considered List

**EXHIBIT 3**

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 10. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 2. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 4. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 5. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 6. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 7. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 8. |
| | | Deposition of Eric Jue, February 24, 2012, Exhibit 9. |
| | | Deposition of Eric Jue, February 24, 2012. |
| | | Deposition of Eric Jue, February 24, 2012. |
| | | Deposition of George Dicker, March 8, 2012. |
| | | Deposition of Greg Joswiak, February 23, 2012. |
| | | Deposition of Greg Joswiak, February 23, 2012. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 32. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 33. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 34. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 35. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 36. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 37. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 38. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 39. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 40. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 41. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 42. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 43. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 44. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 45. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 46. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 47. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 48. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 49. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 50. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 51. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 52. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 53. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 54. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 55. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 56. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 57. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 58. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 59. |
| | | Deposition of Greg Joswiak, February 24, 2012, Exhibit 60. |
| | | Deposition of Greg Joswiak, February 24, 2012. |
| | | Deposition of Greg Joswiak, February 24, 2012. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2440. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2441. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2442. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2443. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2444. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2445. |
| | | Deposition of Jaehwang Sim, March 10, 2012, Exhibit 2446. |
| | | Deposition of Jaehwang Sim, March 10, 2012. |
| | | Deposition of Jaehwang Sim, March 10, 2012. |
| | | Deposition of Jaehwang Sim, March 10, 2012. |
| | | Deposition of Jun Won Lee, March 5, 2012. |
| | | Deposition of Jun Won Lee, March 5, 2012. |
| | | Deposition of Jun Won Lee, March 5, 2012. |
| | | Deposition of Jun Won Lee, March 6, 2012. |
| | | Deposition of Jun Won Lee, March 6, 2012. |
| | | Deposition of Jun Won Lee, March 6, 2012. |
| | | Deposition of Junho Park, January 14, 2012. |
| | | Deposition of Junho Park, January 14, 2012. |
| | | Deposition of Justin Denison, December 16, 2011, Exhibit 1. |
| | | Deposition of Justin Denison, December 16, 2011, Exhibit 2. |
| | | Deposition of Justin Denison, December 16, 2011. |
| | | Deposition of Justin Denison, December 16, 2011. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1254. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1255. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1256. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1257. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1258. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1259. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1260. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1273. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1274. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1275. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1276. |
| | | Deposition of Justin Denison, January 25, 2012, Exhibit 1277. |
| | | Deposition of Justin Denison, January 25, 2012. |
| | | Deposition of Justin Denison, January 25, 2012. |
| | | Deposition of Mark Buckley, December 22, 2011, Exhibit 1. |
| | | Deposition of Mark Buckley, December 22, 2011, Exhibit 11. |
| | | Deposition of Mark Buckley, December 22, 2011, Exhibit 2. |
| | | Deposition of Mark Buckley, December 22, 2011, Exhibit 4. |
| | | Deposition of Mark Buckley, December 22, 2011, Exhibit 5. |
| | | Deposition of Mark Buckley, December 22, 2011. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 1. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 11. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 15. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 16. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 17. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 18. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 19. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 3**

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 2. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 20. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 21. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 22. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 23. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 24. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 25. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 26. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 27. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 4. |
| | | Deposition of Mark Buckley, February 23, 2012, Exhibit 5. |
| | | Deposition of Mark Buckley, February 23, 2012. |
| | | Deposition of Mark Buckley, February 23, 2012. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 164. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 165. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 166. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 167. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 168. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 170. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 171. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 172. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 173. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 174. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 180. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 181. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 184. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 186. |
| | | Deposition of Michael J. Wagner, September 14, 2011, Exhibit 188. |
| | | Deposition of Michael J. Wagner, September 14, 2011. |
| | | Deposition of Michael J. Wagner, September 14, 2011. . |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1750. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1751. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1752. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1753. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1754. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1755. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1758. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1759. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1760. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1761. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1762. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1763. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1764. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1765. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1766. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1767. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1768. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1769. |
| | | Deposition of Michael Tchao, February 21, 2012, Exhibit 1770. |
| | | Deposition of Michael Tchao, February 21, 2012. |
| | | Deposition of Michael Tchao, February 21, 2012. |
| | | Deposition of Michael Tchao, February 21, 2012. |
| | | Deposition of Nara Cho, January 14, 2012. |
| | | Deposition of Nara Cho, January 14, 2012. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1660. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1661. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1662. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1663. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1664. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1665. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1666. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1667. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1668. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1669. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1670. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1671. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1672. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1673. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1674. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1675. |
| | | Deposition of Philip Schiller, February 17, 2012, Exhibit 1676. |
| | | Deposition of Philip Schiller, February 17, 2012. |
| | | Deposition of Philip Schiller, February 17, 2012. |
| | | Deposition of Seung-Ho Ahn, March 15, 2012. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 10. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 19. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 20. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 26. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 27. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 28. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 29. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 30. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 31. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 32. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 33. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 34. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 35. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 36. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 37. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 38. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 39. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 40. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 3**

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 41. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 42. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 6. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 7. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 8. |
| | | Deposition of Sissie Twiggs, July 27, 2011, Exhibit 9. |
| | | Deposition of Sissie Twiggs, July 27, 2011. |
| | | Deposition of Stanley C. Ng, Febrary 21, 2012, Exhibit 1. |
| | | Deposition of Stanley C. Ng, Febrary 21, 2012, Exhibit 2. |
| | | Deposition of Stanley C. Ng, Febrary 21, 2012, Exhibit 4. |
| | | Deposition of Stanley C. Ng, Febrary 21, 2012. |
| | | Deposition of Stanley C. Ng, Febrary 21, 2012. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 1. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 2. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 4. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 5. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 6. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 7. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 8. |
| | | Deposition of Tamara Whiteside, February 28, 2012, Exhibit 9. |
| | | Deposition of Tamara Whiteside, February 28, 2012. |
| | | Deposition of Tamara Whiteside, February 28, 2012. |
| | | Deposition of Tamara Whiteside, February 28, 2012. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 1. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 10. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 2. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 4. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 5. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 6. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 7. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 8. |
| | | Deposition of Tim Sheppard, December 21, 2011, Exhibit 9. |
| | | Deposition of Tim Sheppard, December 21, 2011. |
| | | Deposition of Tim Sheppard, December 21, 2011. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1592. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1593. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1594. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1595. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1596. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1597. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1598. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1599. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1600. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1601. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1602. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1603. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1604. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1605. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1606. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1607. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1608. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1608A. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1609. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1610. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1611. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1612. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1613. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1614. |
| | | Deposition of Timothy Benner, February 22, 2012, Exhibit 1615. |
| | | Deposition of Timothy Benner, February 22, 2012. |
| | | Deposition of Timothy Benner, February 22, 2012. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1918. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1919. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1920. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1921. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1922. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1923. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1924. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1925. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1926. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1927. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1928. |
| | | Deposition of Timothy Sheppard, February 29, 2012, Exhibit 1929. |
| | | Deposition of Timothy Sheppard, February 29, 2012. |
| | | Deposition of Timothy Sheppard, February 29, 2012. |
| | | Deposition of Timothy Sheppard, February 29, 2012. |
| | | Deposition of Timothy Sheppard, February 29, 2012. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1244. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1245. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1246. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1247. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1248. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1249. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1250. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1251. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1252. |
| | | Deposition of Timothy Sheppard, January 24, 2012, Exhibit 1253. |
| | | Deposition of Timothy Sheppard, January 24, 2012. |
| | | Deposition of Timothy Sheppard, January 24, 2012. |
| | | Deposition of Youngsoon Lee, February 7, 2012. |
| | | District Court for California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 12/19/2011. |
| | | District Court for California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 9/19/2011. |
| | | District Court of California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 10/28/2011. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                EXHIBIT 3
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | District Court of California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 10/7/2011. |
| | | District Court of California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 11/1/2011. |
| | | District Court of California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 11/15/2011. |
| | | District Court of California Northern District (San Jose), Civil Docket for the Case 5:11-cv-01846-LHK, as of 12/05/2011. |
| | | District Court of Delaware,  Complaint for Patent Infringement. |
| | | Documents Cited in M. Wagner Declaration. |
| | | Email from Rachel Herrick Kassabian to Peter J. Kolovos, Re: Apple Inc. v. Samsung Elec. Co. et al., Case No. 11-cv-1846. |
| | | Ex D to Sheppard Decl, 2012-03-12. |
| | | Exhibit 1, U.S. Patent 7,706,348 B2. |
| | | Exhibit 2, Example Patents Infringed by All Samsung Android Phones. |
| | | Exhibit 4, Samsung-Apple Licensing Discussion, 10/5/2010. |
| | | Exhibit 5, Apple-Samsung Licensing Discussion. |
| | | Exhibit A to Samsung's Objections and Responses to Apple Inc's Fourth Set of Interrogatories |
| | | Exhibit M - Samsung's Patent L.R. 3-1(G) Disclosures |
| | | Exhibit RBS-1, 2011-09-05. |
| | | Exhibit RJL-1_part_1. |
| | | Exhibit RJL-1_part_2. |
| | | Exhibit RJL-1_part_3. |
| | | Exhibit RJL-1_part_4. |
| | | Exhibit RJL-1_part_5. |
| | | Exhibit RJL-1_part_6. |
| | | Exhibit RJL-1_part_7. |
| | | Fourth affidavit of Rob Small, 2011-11-03. |
| | | Ho Declaration with Correct Exhibit C. |
| | | Interdigital Hearing Transcript, July 8, 2008. |
| | | IPR Information Statement and Licensing Declaration, ETSi, 9/24/2009. |
| | | ITC Expert Report Exhibit 10 |
| | | ITC Expert Report Exhibit 7 |
| | | ITC Expert Report Exhibit 8 |
| | | ITC Expert Report Exhibit 9 |
| | | January 2012 STIPULATION AND [PROPOSED] ORDER REGARDING ADDING ACCUSED PRODUCTS |
| | | Joint Claim Construction and Prehearing Statement Pursuant to Patent L.R. 4-3, dated  11/14/2011. |
| | | Judgment in interlocutory proceedings dated August 24, 2011 (early judgment) in the matter with case / docket number: 396957 / KG ZA 11-730 |
| | | LexisNexis® CourtLink® Litigant Strategic Profile for Apple, Inc 1/27/2012 - 2/17/2012 |
| | | Lutton Confidential Exhibit RJL-2, 2011-09-05. |
| | | Lutton, Chip exhibit 03, 2011-7-26. |
| | | Minute Order and Case management Order, dated 8/25/2011. |
| | | October 2010 ITC Complaint |
| | | Office for Harmonization in the Internal Market, Trade Marks and Register Department, Certificate of Registration, Apple Inc, 2/12/2010. |
| | | Order Denying Motion for Preliminary Injunction |
| | | Rachel A. Ferrier, Exhibit 11, Notice 7, Topics 8 and 9. |
| | | Redacted Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, signed on 8/21/2011. |
| | | Samsung Electronics Co., Ltd., v. Interdigital Communications Corporation, et al., First Amended Complaint. |
| | | Samsung Entities' Answer, Affirmative Defenses, and Counterclaims to Apple Inc.'s Amended Complaint and Demand for Jury Trial, 6/30/2011. |
| | | Samsung's Opposition to Apple's Motion for Preliminary Injunction, 8/22/2011. |
| | | SEALED Dec of Arthur Rangel Exh. 1-4, 2012-02-08. |
| | | SEALED Dec of Arthur Rangel Exh. 5-6, 2012-02-08. |
| | | SEALED Dec of Arthur Rangel, 2012-02-08. |
| | | SEALED Dec of C Vellturo Exs, 2012-02-08. |
| | | SEALED Dec of Christopher Vellturo, 2012-02-08. |
| | | Second Affidavit of Chip Lutton, 2011-09-05. |
| | | Second affidavit of Rob Small, 2011-09-05. |
| | | Second Witness Statement of David Angus Stone, 2011-09-12. |
| | | Sixth affidavit of Rob Small, 2012-01-30. |
| | | Stannow Affidavit with Apostille. |
| | | T Sheppard Dec ISO oppo to 37(b)(2) motion, 2012-03-12. |
| | | Teksler decl for EP 678 PI in Munich, 2012-01-25. |
| | | Telefonaktiebolaget LM Ericsson v. Samsung Electronics UK Limited and Samsung Electronics Co. Limited, Re-Amended Defence and Counterclaim. |
| | | Third Affidavit of Chip Lutton, 2011-09-23. |
| | | Third affidavit of Rob Small, 2011-09-23. |
| | | U.S. District Court California Northern District (San Jose) CIVIL DOCKET FOR CASE #: 5:11-cv-01846-LHK, Docket #s 1-243, as of 9.20.11 |
| | | U.S. District Court California Northern District (San Jose) CIVIL DOCKET FOR CASE #: 5:11-cv-01846-LHK, Docket #s 452-571, as of 1.5.12 |
| | | U.S. District Court California Northern District (San Jose) CIVIL DOCKET FOR CASE #: 5:11-cv-01846-LHK, Docket #s 571-724, as of 2.13.12 |
| | | U.S. District Court California Northern District (San Jose) CIVIL DOCKET FOR CASE #: 5:11-cv-01846-LHK, Docket #s 724-761, as of 3.1.12 |
| | | U.S. District Court, District of Delaware (Wilmington), Civil Docket for Case #1:10-cv-00167-GMS, as of 1.25.12 |
| | | United States Court of Appeals for the Federal Circuit, Appeal Information Sheet. |
| | | United States International Trade Commission, Apple Inc.'s Complaint Under Section 337 of the Tariff Act of 1930, as Amended, 7/1/2011. |
| | | United States International Trade Commission, Complaint Under Section 337 of the Tariff Act of 1930, as Amended, 6/28/2011. |
| | | United States International Trade Commission, Setting Procedural Schedule, 9/12/2011. |
| | | United States International Trade Commission, Setting the Procedural Schedule, 8/30/2011. |
| | | US Patent No. 5,666,502 dated Sep. 9, 1997 |
| | | US Patent No. 5,946,647 dated Aug. 31, 1999 |
| | | US Patent No. 6,847,959 B1 dated Jan. 25, 2005 |
| | | US Patent No. 7,761,414 B2 dated Jul. 20, 2010 |
| | | US Patent No. 8,014,760 B2 dated Sep. 6, 2011 |
| | | US Patent No. 8,046,721 B2 dated Oct. 25, 2011 |
| | | US Patent No. 8,074,172 B2 dated Dec. 6, 2011 |
| | | US Patent No. 8,086,604 B2 dated Dec. 27, 2011 |
| | | Wagner Declaration Exhibit A. |
| | | Wagner Declaration Exhibit B. |
| | | Wagner Declaration Exhibit C. |
| | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                    **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| Public | | |
| | | [GALAXY S II] Official Live Demo - Viewing (http://www.youtube.com/watch?v=LP38KF-LR0U&feature=BFa&list=PL3F63929F54D9A90A&lf=plpp_video) |
| | | [GALAXY S II] Official Live Demo - Viewing (http://www.youtube.com/watch?v=LP38KF-LR0U&feature=BFa&list=PL3F63929F54D9A90A&lf=plpp_video) |
| | | [GALAXY Tab 10.1] Official Demo - HD (http://www.youtube.com/watch?v=7tfX3Vlz0nI&feature=related). |
| | | [GALAXY Tab 10.1] Official Demo - HD (http://www.youtube.com/watch?v=7tfX3Vlz0nI&feature=related). |
| | | [GALAXY Tab 10.1] Official Demo - HD (http://www.youtube.com/watch?v=7tfX3Vlz0nI&feature=related). |
| | | [GALAXY Tab 10.1] Official Demo - HD (http://www.youtube.com/watch?v=7tfX3Vlz0nI&feature=related). |
| | | "Licensing and Litigation under the RAND Umbrella," by Roger G. Brooks. The National Law Journal, dated January 23, 2012. |
| | | "Statement of the Department of Justice's Antitrust Division on Its Decision to Close Its Investigation of Google Inc.'s Acquisition of Motorola Mobility Holdings Inc. and the Acquisitions of Certain Patents by Apple In., Microsoft Corp. and Research in Motion Ltd," The United States Department of Justice. |
| | | 2009 Samsung Electronics Annual Report. |
| | | 2009 Samsung Electronics Annual Report. |
| | | 2010 Samsung Electronics Annual Report. |
| | | 35 U.S.C. § 284. |
| | | 3GPP - About 3GPP. |
| | | 3GPP Membership. |
| | | AAPL - Apple FY 08 First Quarter Results Conference Call, Final Transcript, 1/22/2008. |
| | | AAPL - Apple FY 10 Second Quarter Results Conference Call, 4/20/2010. |
| | | AAPL - Q1 2007 Apple Inc. Earnings Conference Call, Final Transcript, 1/17/2007. |
| | | AAPL - Q1 2009 Apple Inc. Earnings Conference Call, Final Transcript, 1/21/2009. |
| | | AAPL - Q1 2010 Apple Inc. Earnings Conference Call, Final Transcript, 1/25/2010. |
| | | AAPL - Q1 2011 Apple Inc. Earnings Conference Call, Final Transcript, 1/18/2011. |
| | | AAPL - Q1 2012 Apple Inc. Earnings Conference Call, Final Transcript, 1/24/2012. |
| | | AAPL - Q2 2007 Apple Inc. Earnings Conference Call, Final Transcript, 4/25/2007. |
| | | AAPL - Q2 2008 Apple Inc. Earnings Conference Call, Final Transcript, 4/23/2008. |
| | | AAPL - Q2 2009 Apple Inc. Earnings Conference Call, Final Transcript, 4/22/2009. |
| | | AAPL - Q2 2011 Apple Inc. Earnings Conference Call, Final Transcript, 4/ 20/2011. |
| | | AAPL - Q3 2007 Apple Inc. Earnings Conference Call, Final Transcript, 7/25/2007. |
| | | AAPL - Q3 2008 Apple Inc. Earnings Conference Call, Final Transcript, 7/21/2008. |
| | | AAPL - Q3 2009 Apple Inc. Earnings Conference Call, Final Transcript, 7/21/2009. |
| | | AAPL - Q3 2010 Apple Inc. Earnings Conference Call, Final Transcript, 7/20/2010. |
| | | AAPL - Q3 2011 Apple Inc. Earnings Conference Call, Final Transcript, 7/19/2011. |
| | | AAPL - Q4 2007 Apple Inc. Earnings Conference Call, Final Transcript, 10/22/2007. |
| | | AAPL - Q4 2008 Apple Inc. Earnings Conference Call, Final Transcript, 10/21/2008. |
| | | AAPL - Q4 2009 Apple Inc. Earnings Conference Call, Final Transcript, 10/19/2009. |
| | | AAPL - Q4 2010 Apple Inc. Earnings Conference Call, Final Transcript, 10/18/2010. |
| | | AAPL - Q4 2011 Apple Inc Earnings Conference Call, Final Transcript, 10/18/2011. |
| | | About Interbrand. |
| | | AICPA Practice Aid 06-1, Calculating Intellectual Property Infringement Damages. |
| | | AICPA Practice Aid 99-2, Valuing Intellectual Property & Calculating Infringement Damages, (1999). |
| | | Amazon Media Room, Press Releases, Introducing the All-New Kindle Family: Four New Kindles, Four Amazing Price Points, 9/28/11. |
| | | Apple - Press Info - Apple Reinvents Textbooks with iBooks 2 for iPad. |
| | | Apple - Press Info - Apple Reinvents the Phone with iPhone. |
| | | Apple - Press Info - iPhone 4 on Verizon Wireless Available for Pre-Order Tomorrow. |
| | | Apple - Press Info - iPhone Premieres This Friday Night at Apple Retail Stores. |
| | | Apple - Support - AppleCare. |
| | | Apple Asked Standards Body to Set Rules for Essential Patents - WSJ -2.7.12. |
| | | Apple Form 10-Q 12.31.11. |
| | | Apple Inc Form 8-K, For the Period Ending 1/25/2010. |
| | | Apple Inc, Form 10-K, For the Period Ending 9/24/2011. |
| | | Apple Inc, Form 10-K, For the Period Ending 9/25/2010. |
| | | Apple Inc, Form 10-K, For the Period Ending 9/26/2009. |
| | | Apple Inc, Form 10-K, For the Period Ending 9/27/2008. |
| | | Apple Inc, Form 10-K, For the Period Ending 9/29/2007. |
| | | Apple Inc, Form 10-K/A, For the Period Ending 9/26/2009. |
| | | Apple Inc, Form 10-Q, For Period Ending 3/26/2011. |
| | | Apple Inc, Form 10-Q, For Period Ending 3/27/2010. |
| | | Apple Inc, Form 10-Q, For Period Ending 3/28/2009. |
| | | Apple Inc, Form 10-Q, For Period Ending 6/25/2011. |
| | | Apple Inc, Form 10-Q, For Period Ending 6/26/2010. |
| | | Apple Inc, Form 10-Q, For the Period Ending 12/25/2010. |
| | | Apple Inc, Form 10-Q, For the Period Ending 12/26/2009. |
| | | Apple Inc, Form 10-Q, For the Period Ending 12/27/2008. |
| | | Apple Inc, Form 10-Q, For the Period Ending 6/27/2009. |
| | | Apple Inc, Form 10-Q, For the Period Ending 6/28/2008. |
| | | Apple Inc, Form 10-Q/A, For the Period Ending 3/28/2009. |
| | | Apple Inc. Press Release, 3/7/12 (http://www.apple.com/pr/library/2012/03/07Apple-Launches-New-iPad.html). |
| | | Apple Letter to ETSI on FRAND - 11.11.11. |
| | | Apple Press Info, Apple Announces the New iPhone 3GS - The Fastest, Most Powerful iPhone Yet, 6/8/2009. |
| | | Apple Press Info, Apple Launches iPad, 1/27/2010. |
| | | Apple Press Info, Apple Launches iPhone 4S, iOS 5 & iCloud, 10/4/2011. |
| | | Apple Press Info, Apple Presents iPhone 4, 6/7/2010. |
| | | Apple Press Info, Apple Presents iPod, 10/23/2001. |
| | | Apple Press Info, Apple Reinvents the Phone with iPhone, 1/9/2007. |
| | | Apple Press Info, Apple Sells Three million iPads in 80 Days, 6/22/2010. |
| | | Apple Press Info, Apple Unveils iPod touch, 9/5/2007. |
| | | Apple Press Info, Apple's Mac App Store Downloads Top 100 Million. 12/12/2011. |
| | | Apple Press Info, Executive Profiles. |
| | | Apple Press Info, iPad 2 Arrives in 25 More Countries This Friday, 3/22/2011. |
| | | Apple Press Info, iPad 2 Arrives Tomorrow, 3/10/2011. |
| | | Apple Press Info, iPad Available in Nine More Countries on May 28, 5/7/2010. |
| | | Apple Press Info, iPad Available in Nine More Countries This Friday, 7/19/2010. |
| | | Apple Press Info, iPad Available in US on April 3, 3/5/2010. |
| | | Apple Press Info, iPhone 3G on Sale Tomorrow, 7/10/2008. |
| | | Apple Press Info, iPhone Premieres This Friday Night at Apple Retail Stores, 6/28/2007. |
| | | Apple pressures EU regulators to set FRAND licensing rules -2.8.12. |
| | | Baruch Lev, Intangible Assets: Concepts and Measurements, 2005. |
| | | Business News Express - Apple Knocks off Google as Number One Brand, 5.10.11. |
| | | BusinessWire - IDC Forecasts 7.6 million Media Tablets to be Shipped Worldwide in 2010. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 3

Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | BusinessWire, "Apple Rises to the Top as Worldwide Smartphone Market Grows 65.4% in the Second Quarter of 2011, IDC Finds", 8/4/2011. |
| | | CNET - Quick Guide to top cell phone carriers - CNET Reviews. |
| | | CNET Samsung unveils Galaxy S models for Sprint, Verizon, U.S. Cellular 6.27.10. |
| | | CNN - Thousands line up for iPhone 4 debut. |
| | | CNN Money - Piper Jaffray survey of iPad buyers _74% owned Macs; 66% had iPhones, 4.5.2010. |
| | | Consolidated Financial Statements of Samsung Electronics Co., Ltd. and Subsidiaries. |
| | | Cornell Univ. v. Hewlett-Packard Co., 609 F. Supp. 2d 279, 268-87 (N.D.N.Y. 2009) ("Cornell II"). |
| | | Cult of Mac - John Sculley On Steve Jobs, The Full Interview Transcript. |
| | | FBN Securities, Initiation of Coverage on Large-Cap IT Hardware Companies - Appl, IBM, Dell, and HPQ, 6/21/2011. |
| | | Financial Accounting Standards Board, Statement of Financial Accounting Standards No. 142, Goodwill and Other Intangible Assets. |
| | | Fox Business - AT&T Downplays Impact, Advantage of Phone Exclusivity Agreements. |
| | | French court to rule on samsung motion_11.18.11. |
| | | French-court-denies-sam. |
| | | Gartner Press Release, Gartner Says Worldwide Mobile Phone Sales Grew 35 Percent in Third Quarter 2010; Smartphone Sales Increased 96 Percent. |
| | | Gartner, WW mobile phone sales grew 35 percent in 3Q2010_Smartphone sales increased 96 percent. |
| | | Georgia Pacific - judgment modified. |
| | | Georgia-Pacific Corp. v U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified by 446 F.2d 295 (2d Cir. 1971). |
| | | Google Form 10-K year ended December 31, 2011. |
| | | Hamblen, Matt. "Cell phone, smartphone -- what's the difference?" ComputerWorld, 3/14/09. |
| | | Ibbotson Cost of Capital 2010 Yearbook (data through March 2010). |
| | | Ibbotson Cost of Capital 2011 Yearbook (data through March 2011). |
| | | IDC - About IDC. |
| | | IDC - Press Release 12.15.2011. |
| | | Intel Form 10-K year ended December 31, 2011. |
| | | Interbrand - Best Global Brands 2010 - Top 100 brands. |
| | | Interbrand - Best Global Brands 2010 Full Report. |
| | | Interbrand - Best Global Brands 2011 - Top 100 brands. |
| | | Interbrand - Best Global Brands 2011 Full Report. |
| | | Interbrand - Best Global Brands 2011 methodology overview. |
| | | Interbrand _ Our Work _ Samsung. |
| | | Introducing the Samsung Galaxy Tab - It's Go Time Video. |
| | | Italian-court-denies-samsung motion. |
| | | Judgment in the preliminary injunction proceedings of October 14, 2011 (Samsung vs. Apple), District Court of The Hague. |
| | | Legal Information Institute, Amortization of Goodwill and Certain Other Intangibles. |
| | | Licensing and Litigation under the RAND Umbrella - 2.23.12. |
| | | Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009). |
| | | Market Cap via Wolfram - as of December 31, 2010. |
| | | Market Cap via Wolfram - as of October 4, 2011 with time lags. |
| | | Market Cap via Wolfram - June 1, 2009 to 2010 and 2010 to 2011. |
| | | Microsoft Form 10-K year ended June 30, 2011. |
| | | Microsoft Sides with Apple in FRAND Licensing Fracas - 2.10.12. |
| | | New York Times - From Apple to Occupy, the Design Honors List for 2011. |
| | | New York Times - The critics rave for Microsoft. |
| | | NPR - How Steve Jobs Changed The World Of Design. |
| | | NYTimes - Living Up to Apple's Standards. |
| | | Oppenheimer - Mixed 2Q11 Wireless Checks. |
| | | Oppenheimer, 2Q11 Wireless and Tablet Snapshot, 8/2/2011. |
| | | PAIR Filing for Patent Application 10/840862. |
| | | Panduit Corp. v Stahlin Bros. Fibre Works, 575 F.2nd 1152 (6th Cir. 1978). |
| | | Patent, Design 748280-006. |
| | | Patent, Design 888920-0018. |
| | | Patent, US7479949. |
| | | Patent, US7789697. |
| | | Patent, US7863533. |
| | | Patent, US7912501. |
| | | Patent, US8046721. |
| | | Patent, USD558757. |
| | | Patent, USD618678. |
| | | Patent, USRE41922. |
| | | Q2 2008 Earnings Release. |
| | | Report on the Filing or Determination of an Action Regarding a Patent or Trademark, 7,362,331 B2, 7,479,949 B2, 7,657,849 B2, 7,469,381 B2: |
| | | Report on the Filing or Determination of an Action Regarding a Patent or Trademark, 7,812,828, 7,663,607, 5,379,430. |
| | | Report on the Filing or Determination of an Action Regarding a Patent or Trademark, 7,812,828, 7,663,697, 5,379,430. |
| | | Report on the Filing or Determination of an Action Regarding a Patent or Trademark, 7,844,915, 7,084,859, 7,920,129, 6,956,564. |
| | | Report on the Filing or Determination of an Action Regarding a Patent or Trademark, 7,844,915, 7,084,859, 7,920,129, 6,956,564. |
| | | Reuters - Samsung says alters tablet design to avoid German sales ban. |
| | | Reuters - Samsung upgrades smartphones to avoid Dutch sales ban. |
| | | Reuters, Oct. 12, 2011, Samsung Electronics Co. said on Wednesday it will soon release |
| | | Rite-Hite Corp. V. Kelley, 56 F.3rd 1549 (Fed. Cir. 1995) |
| | | Rite-Hite, 56 F.3d 1538. |
| | | Rite-Hite, 56 F.3d at 1554, see also Del Mar Avionics v. Quinton Instrument Co., 836 F.2nd 1320 (Fed. Cir. 1987). |
| | | RTT News, "History of an Ecosystem: Charting the Smartphone Evolution," 9/15/11. |
| | | Samsung Continuum - A Galaxy S Phone (Verizon) Video. |
| | | Samsung Continuum - A Galaxy S Phone (Verizon) Video. |
| | | samsung could win german injunction_11.11.11. |
| | | Samsung Electronics Co., Ltd. And its Subsidiaries, Consolidated Statements of Financial Position. |
| | | Samsung Electronics Co., Ltd. And Subsidiaries, Notes to the Consolidated Financial Statements. |
| | | Samsung Electronics, Company Overview, About Samsung Electronics. |
| | | Samsung Galaxy Nexus - Hands-on at CES 2012 Video. |
| | | Samsung Galaxy S - NYC Launch Event Video. |
| | | Samsung Galaxy S Launch Event Video (http://www.youtube.com/watch?v=PnxfnFm0Wb8). |
| | | Samsung Galaxy Tab 10.1 - Official Commercial Video, (http://www.youtube.com/watch?v=OM1Pt0AXSaI). |
| | | Samsung Galaxy Tab Official Commercial Video (http://www.youtube.com/watch?v=GHPJdqgsJ9g). |
| | | Samsung Group - Profile 2011 English. |
| | | Samsung Mobile USA, [Jo Videos] Samsung Galaxy S II Tips & Tricks - Email (http://www.youtube.com/watch?v=EhwW3cjsbAM&list=PLB06411CFD33597A3&feature=plcp&context=C337f15fPDOEgsToPDskIFli7kLjB29rSJhGXwKF67). |
| | | Samsung Profile 2010. |
| | | samsung relaunches galaxy tab_11.16.11. |
| | | Samsung, 2008 Samsung Electronics Annual Report. |
| | | Samsung, About Samsung > Corporate profile > Affiliated companies. |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                        **EXHIBIT 3**
Documents Considered List

| Bates Beg. | Bates End | Documents Description |
|---|---|---|
| | | Samsung, About Samsung > Our businesses > Business area > U.S. divisions. |
| | | Samsung.com, Galaxy S II, available at ATT. |
| | | Samsung.com, Galaxy S II, available at T-Mobile. |
| | | Securities and Exchange Commission, Publication of Staff Accounting Bulletin. |
| | | Skenyon - IP Patent Damages Law and Practice 1.12. |
| | | Smart Social Branding - Apple The Secret behind its Success. |
| | | Sprint Newsroom _ Sprint Statement on Launch Day Sales of iPhone 4S and iPhone 4. |
| | | Standard Setting Categories List. |
| | | Standard Setting Organizations and Standards List for Wireless and Mobile Category. |
| | | State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577, 12 U.S.P.Q.2d 1026, 1028 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990). |
| | | Strategy Analytics, "Apple iPhone Owners Most Likely to Repeat Purchase," by Paul Brown, dated 03/09/10 (http://www.strategyanalytics.com/default.aspx?mod=pressreleaseviewer&a0=4870) |
| | | Strategy Analytics, USA Smartphone Vendor & OS Shipments by Operator Q4 2010. |
| | | Strategy Analytics, USA Smartphone Vendor & OS Shipments by Operator Q4 2011. |
| | | The Evolving Marketplace, Aligning Patent Notice and Remedies with Competition - FTC - March 2011. |
| | | The New York Times, "Erasing the Boundaries," by David Streitfeld, dated February 12, 2012 (http://www.nytimes.com/2012/02/13/technology/keeping-consumers-on-the-digital-plantation.html). |
| | | ThinkTech with Google - Wireless Shoppers 2.0. |
| | | Time to Tab - Samsung Galaxy Tab 10.1 Global TV Commercial Video (http://www.youtube.com/watch?v=QL8ePbYsdc8). |
| | | Trademark expiration and renewal info. |
| | | TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 899 (Fed Cir. 1986), cert. denied, 479 U.S. 852, 107 S. Ct. 183, 93 L. Ed. 2d 117 (1986). |
| | | U.S. International Trade Commission Investigation No. 337-TA-710:  Notice of the Commission's Final Determination Finding a Violation of Section 337; Issuance of a Limited Exclusion Order; Termination of the Investigation, December 19, 2011. |
| | | Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1320  (Fed. Cir. 2011). |
| | | United States Code Title 35 - Patents. |
| | | United States Design Patent, US D504,889 S, 5/10/2005. |
| | | United States Design Patent, US D593,087 S, 5/26/2009. |
| | | United States Design Patent, US D604,305 S, 11/17/2009. |
| | | United States Design Patent, US D617,334 S, 6/8/2010. |
| | | United States Design Patent, US D622,270 S, 8/24/2010. |
| | | United States Patent, US 6,493,002 B1, 12/10/2002. |
| | | United States Patent, US 6,928,604 B2, 8/9/2005. |
| | | United States Patent, US 7,050,410 B1, 5/23/2006. |
| | | United States Patent, US 7,069,055 B1, 6/27/2006. |
| | | United States Patent, US 7,079,871 B2, 7/18/2006. |
| | | United States Patent, US 7,200,792 B2, 4/3/2007. |
| | | United States Patent, US 7,362,867 B1, 4/22/2008. |
| | | United States Patent, US 7,386,001 B1, 6/10/2008. |
| | | United States Patent, US 7,447,516 B2, 11/4/2008. |
| | | United States Patent, US 7,456,893 B2, 11/25/2008. |
| | | United States Patent, US 7,469,381 B2, 12/23/2008. |
| | | United States Patent, US 7,577,460 B2, 8/18/2009. |
| | | United States Patent, US 7,663,607 B2, 2/16/2010. |
| | | United States Patent, US 7,675,941 B2, 3/9/2010. |
| | | United States Patent, US 7,698,711 B2, 4/13/2010. |
| | | United States Patent, US 7,812,828 B2, 10/12/2010. |
| | | United States Patent, US 7,844,915 B2, 11/30/2010. |
| | | United States Patent, US 7,853,891 B2, 12/14/2010. |
| | | United States Patent, US 7,864,163 B2, 1/4/2011. |
| | | United States Patent, US 7,920,129 B2, 4/5/2011. |
| | | USA TODAY - Apple carving into Microsoft's niche_ Corporate workplace - 30 Jan 2012 - with Graphic Support. |
| | | USA TODAY - Apple carving into Microsoft's niche_ Corporate workplace - 31 Jan 2012 graph only. |
| | | USA TODAY - Apple carving into Microsoft's niche_ Corporate workplace - 31 Jan 2012 graph. |
| | | USA TODAY - Apple carving into Microsoft's niche_ Corporate workplace - 31 Jan 2012 without graph. |
| | | USA Today, "More Businesses buy Apple items," By Scott Martin. |
| | | USPTO, Certificate of Correction, 1/4/2011. |
| | | USPTO, Issue Notification, Patent 7853891, Issued 12/14/2010. |
| | | Weil, Frank, Huges, and Wagner, Litigation Services Handbook, Fourth Edition, 2007. |
| | | What is FRAND_ - Business - News - ZDNet Australia. |
| | | Wiley Finance – Financial Valuation – Applications and Models, Second Edition, James R. Hitchner. |
| | | Wolfram - Apple Market Cap as of 12.31.11. |
| | | Yahoo! Finance - Samsung Group Company Profile. |
| | | ZDNet - Apple iPad 2 sales_ New customers buying; Analysts see big launch. |
| | | |

In addition to the above listed documents, counsel has provided and I have had access to a Concordance database containing Samsung documents produced in this case.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 4

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # | Accused Products | Utility Patents | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | '002 | '129 | '163 | '381 | '607 | '891 | '915 |
| 1 | Acclaim | x | | x | | | x | x |
| 2 | Captivate | x | | x | x | | x | x |
| 3 | Continuum | x | | x | x | | x | x |
| 4 | Droid Charge | x | | x | x | | x | x |
| 5 | Epic 4G | x | | x | x | | x | x |
| 6 | Exhibit 4G | x | | x | x | | x | x |
| 7 | Fascinate | x | | x | x | | x | x |
| 8 | Galaxy Ace | x | | x | x | | x | x |
| 9 | Galaxy Prevail | x | | x | x | | x | x |
| 10 | Galaxy S (i9000) | x | | x | x | | x | x |
| 11 | Galaxy S 4G | x | | x | x | | x | x |
| 12 | Galaxy S II (AT&T) | x | | x | x | | x | x |
| 13 | Galaxy S II (i9100) | x | | x | x | | x | x |
| 14 | Galaxy S II (T-Mobile) | x | | x | | | x | x |
| 15 | Galaxy S II (Epic 4G Touch) | x | | x | x | | x | x |
| 16 | Galaxy S II (Skyrocket) | x | | x | | | x | x |
| 17 | Galaxy S Showcase (i500) | x | | x | x | | x | x |
| 18 | Galaxy Tab | x | x | x | x | x | x | x |
| 19 | Galaxy Tab 10.1 (WiFi) | x | x | x | x | x | x | x |
| 20 | Galaxy Tab 10.1 (4G LTE) | x | x | x | x | x | x | x |
| 21 | Gem | x | | x | x | | x | x |
| 22 | Gravity Smart | x | | x | x | | x | x |
| 23 | Indulge | x | | x | x | | x | x |
| 24 | Infuse 4G | x | | x | x | | x | x |
| 25 | Intercept | x | | x | x | | x | x |
| 26 | Mesmerize | x | | x | x | | x | x |
| 27 | Nexus S | x | | x | x | | x | x |
| 28 | Nexus S 4G | x | | x | x | | x | x |
| 29 | Replenish | x | | x | x | | x | x |
| 30 | Sidekick | x | | x | x | | x | x |
| 31 | Transform | x | | x | | | x | x |
| 32 | Vibrant | x | | x | x | | x | x |

**Sources/Notes:**

1/    Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 4

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # | Accused Products | Design Patents | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | '**D087** | '**D270** | '**D305** | '**D334** | '**D677** | '**D790** | '**D889** |
| 1 | Acclaim | | | | | | | |
| 2 | Captivate | | | x | x | | x | |
| 3 | Continuum | | | x | x | | x | |
| 4 | Droid Charge | | | x | x | | x | |
| 5 | Epic 4G | | | x | x | | x | |
| 6 | Exhibit 4G | | | | | | | |
| 7 | Fascinate | | | x | x | x | x | |
| 8 | Galaxy Ace | | | | | x | | |
| 9 | Galaxy Prevail | | | | | | | |
| 10 | Galaxy S (i9000) | x | x | x | x | x | x | |
| 11 | Galaxy S 4G | x | x | x | x | x | x | |
| 12 | Galaxy S II (AT&T) | x | | | | x | | |
| 13 | Galaxy S II (i9100) | x | | | | x | | |
| 14 | Galaxy S II (T-Mobile) | | | | | x | | |
| 15 | Galaxy S II (Epic 4G Touch) | x | | | | x | | |
| 16 | Galaxy S II (Skyrocket) | x | | | | x | | |
| 17 | Galaxy S Showcase (i500) | | | x | x | x | x | |
| 18 | Galaxy Tab | | | | | | | |
| 19 | Galaxy Tab 10.1 (WiFi) | | | | | | | x |
| 20 | Galaxy Tab 10.1 (4G LTE) | | | | | | | x |
| 21 | Gem | | | x | x | | x | |
| 22 | Gravity Smart | | | | | | | |
| 23 | Indulge | | | x | x | | x | |
| 24 | Infuse 4G | x | | x | x | x | x | |
| 25 | Intercept | | | | | | | |
| 26 | Mesmerize | | | x | x | x | x | |
| 27 | Nexus S | | | | | | | |
| 28 | Nexus S 4G | | | | | | | |
| 29 | Replenish | | | | | | | |
| 30 | Sidekick | | | | | | | |
| 31 | Transform | | | | | | | |
| 32 | Vibrant | x | x | x | x | x | x | |

**Sources/Notes:**

1/   Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 4

## Samsung Accused Products vs. Apple's Asserted Intellectual Property 1/

| # | Accused Products | Trade Dress | | | | | '983 | '218 | '327 |
|---|---|---|---|---|---|---|---|---|---|
| | | iPhone | iPhone 3G | iPhone 4 | iPhone / iPhone 3G / iPhone 4 | iPad and iPad 2 | | | |
| 1 | Acclaim | | | | | | | | |
| 2 | Captivate | x | x | | x | | x | x | x |
| 3 | Continuum | x | x | | x | | x | x | x |
| 4 | Droid Charge | x | x | | x | | x | x | x |
| 5 | Epic 4G | x | x | | x | | x | x | x |
| 6 | Exhibit 4G | | | | | | | | |
| 7 | Fascinate | x | x | | x | | x | x | x |
| 8 | Galaxy Ace | | | x | x | | | | |
| 9 | Galaxy Prevail | x | x | | x | | x | x | x |
| 10 | Galaxy S (i9000) | x | x | | x | | x | x | x |
| 11 | Galaxy S 4G | x | x | | x | | x | x | x |
| 12 | Galaxy S II (AT&T) | x | x | | x | | x | x | x |
| 13 | Galaxy S II (i9100) | x | x | | x | | x | x | x |
| 14 | Galaxy S II (T-Mobile) | x | x | | x | | x | x | x |
| 15 | Galaxy S II (Epic 4G Touch) | x | x | | x | | x | x | x |
| 16 | Galaxy S II (Skyrocket) | x | x | | x | | x | x | x |
| 17 | Galaxy S Showcase (i500) | x | x | | x | | x | x | x |
| 18 | Galaxy Tab | | | | | x | | | |
| 19 | Galaxy Tab 10.1 (WiFi) | | | | | x | | | |
| 20 | Galaxy Tab 10.1 (4G LTE) | | | | | x | | | |
| 21 | Gem | | | | | | | | |
| 22 | Gravity Smart | | | | | | | | |
| 23 | Indulge | | | | | | | | |
| 24 | Infuse 4G | x | x | | x | | x | x | x |
| 25 | Intercept | | | | | | | | |
| 26 | Mesmerize | x | x | | x | | x | x | x |
| 27 | Nexus S | | | | | | | | |
| 28 | Nexus S 4G | | | | | | | | |
| 29 | Replenish | | | | | | | | |
| 30 | Sidekick | | | | | | | | |
| 31 | Transform | | | | | | | | |
| 32 | Vibrant | x | x | | x | | x | x | x |

**Sources/Notes:**

1/    Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Samsung Accused Products vs. Apple's Asserted Intellectual Property** 1/

| # | Accused Products | Trademarks | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | '169 | '196 | '197 | '200 | '642 | '685 | '038 | '463 (Pending) |
| 1 | Acclaim | | | | | x | | | |
| 2 | Captivate | x | x | x | x | | x | x | x |
| 3 | Continuum | x | x | x | x | x | x | x | x |
| 4 | Droid Charge | | x | x | x | x | x | x | x |
| 5 | Epic 4G | x | x | x | x | | x | x | x |
| 6 | Exhibit 4G | x | x | x | x | | x | x | x |
| 7 | Fascinate | x | x | x | x | x | x | x | x |
| 8 | Galaxy Ace | x | x | x | x | | x | x | x |
| 9 | Galaxy Prevail | | | | | x | | | |
| 10 | Galaxy S (i9000) | x | x | x | x | | x | x | x |
| 11 | Galaxy S 4G | x | x | x | x | | x | x | x |
| 12 | Galaxy S II (AT&T) | x | x | x | | | x | x | x |
| 13 | Galaxy S II (i9100) | x | x | x | | | x | x | x |
| 14 | Galaxy S II (T-Mobile) | | x | x | | | x | x | x |
| 15 | Galaxy S II (Epic 4G Touch) | | x | x | | | x | x | x |
| 16 | Galaxy S II (Skyrocket) | x | x | x | | | x | x | x |
| 17 | Galaxy S Showcase (i500) | x | x | x | x | x | x | x | x |
| 18 | Galaxy Tab | x | | x | x | x | x | x | x |
| 19 | Galaxy Tab 10.1 (WiFi) | | | x | | | x | x | x |
| 20 | Galaxy Tab 10.1 (4G LTE) | | | x | | | x | x | x |
| 21 | Gem | | x | x | x | x | x | x | x |
| 22 | Gravity Smart | x | x | x | x | | x | x | x |
| 23 | Indulge | x | x | x | x | | x | x | x |
| 24 | Infuse 4G | x | x | x | x | | x | x | x |
| 25 | Intercept | | | | | x | | | |
| 26 | Mesmerize | x | x | x | x | x | x | x | x |
| 27 | Nexus S | | | | | x | | | |
| 28 | Nexus S 4G | | | | | x | | | |
| 29 | Replenish | | | | | x | | | |
| 30 | Sidekick | x | | | x | | | | |
| 31 | Transform | | | | | x | | | |
| 32 | Vibrant | x | x | x | x | | x | x | x |

**Sources/Notes:**

1/   Per discussion with counsel.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Apple's Asserted Utility Patents 1/

| Patent No. | Referenced As | Title | File Date | Issue Date | Expiration Date 2/ | |
|---|---|---|---|---|---|---|
| 6,493,002 | '002 Patent | Method and Apparatus for Displaying and Accessing Control and Status Information in a Computer System | 3/20/1997 | 12/10/2002 | 9/30/2014 | |
| 7,469,381 | '381 Patent | List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display | 12/14/2007 | 12/23/2008 | 12/14/2027 | |
| 7,663,607 | '607 Patent | Multipoint Touchscreen | 5/6/2004 | 2/16/2010 | 3/29/2028 | 3/ |
| 7,844,915 | '915 Patent | Application Programming Interfaces for Scrolling Operations | 1/7/2007 | 11/30/2010 | 8/12/2028 | 4/ |
| 7,853,891 | '891 Patent | Method and Apparatus for Displaying a Window for a User Interface | 2/1/2008 | 12/14/2010 | 3/14/2023 | 5/ |
| 7,864,163 | '163 Patent | Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents | 9/4/2007 | 1/4/2011 | 7/23/2029 | 6/ |
| 7,920,129 | '129 Patent | Double-Sided Touch-Sensitive Panel with Shield and Drive Combined Layer | 1/3/2007 | 4/5/2011 | 1/23/2030 | 7/ |

**Sources/Notes:**

1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 2 to 8.

2/  In general, a (other than design) patent's term begins on  the date on which the patent is issued and ends 20 years from the date on which the application for the patent was filed in the United States.  35 U.S.C. 154 (a)(2)

3/  Certificate of Correction for US Patent No.7,663,607, dated 2/16/10, there is a Patent Term Adjustment of 1423 days.

4/  Issue Notification for US Patent No.7,844,915, dated 11/10/10, there is a Patent Term Adjustment of 583 days.

5/  Issue Notification for US Patent No.7,853,891, dated 11/23/10, there is a Patent Term Adjustment of 247 days.

6/  Issue Notification for US Patent No.7,864,163, dated 12/15/10, there is a Patent Term Adjustment of 688 days.

7/  Issue Notification for US Patent No.7,920,129, dated 3/16/11, there is a Patent Term Adjustment of 1116 days.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Apple's Asserted Design Patents** 1/

| Patent No. | Referenced As | Title | Design | File Date | Issue Date | Expiration Date 2/ |
|---|---|---|---|---|---|---|
| D627,790 | D'790 Patent | Graphical User Interface for a Display Screen or Portion Thereof | | 8/20/2007 | 11/23/2010 | 11/23/2004 |
| D617,334 | D'334 Patent | Graphical User Interface for a Display Screen or Portion Thereof | | 7/15/2008 | 6/8/2010 | 6/8/2024 |
| D604,305 | D'305 Patent | Graphical User Interface for a Display Screen or Portion Thereof | | 6/23/2007 | 11/17/2009 | 11/17/2023 |
| D618,677 | D'677 Patent | Electronic Device | | 11/18/2008 | 6/29/2010 | 6/29/2024 |
| D504,889 | D'889 Patent | Electronic Device | | 3/17/2004 | 5/10/2005 | 5/10/2019 |
| D593,087 | D'087 Patent | Electronic Device | | 7/30/2007 | 5/26/2009 | 5/26/2023 |
| D622,270 | D'270 Patent | Electronic Device | | 10/1/2009 | 8/24/2010 | 8/24/2024 |

**Sources/Notes:**
1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 9 to 15.
2/  In general, a design patent's term begins on the date on which the patent is granted and ends 14 years from that date.  35 U.S.C. 173
     (http://www.uspto.gov/web/offices/pac/mpep/consolidated_laws.pdf).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 7

## Apple's Asserted Trade Dress Registrations 1/

| U.S. Registration No. | Mark | Filing Date | Registration Date | Expiration Date 2/ |
|---|---|---|---|---|
| 3,470,983 | | 10/12/2007 | 7/22/2008 | 7/22/2018, subject to renewal. |
| 3,457,218 | | 10/12/2007 | 7/1/2008 | 7/1/2018, subject to renewal. |
| 3,475,327 | | 10/12/2007 | 7/29/2008 | 7/29/2018, subject to renewal. |

**Sources/Notes:**

1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 16 to 18.

2/  Federal trademark registrations issued on or after 11/6/1989 remain in force for 10 years, and may be renewed for 10-year periods (http://www.uspto.gov/trademarks/process/maintain/prfaq.jsp).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Apple's Asserted Unregistered Trade Dress and Trademark**

| Name | Trade Dress 1/ | Release Date |
|------|----------------|--------------|
| iPhone | | 6/29/2007 3/ |
| iPhone 3G | | 7/11/2008 4/ |
| iPhone 4 | | 6/24/2010 5/ |
| iPhone / iPhone 3G / iPhone 4 | | 6/29/2007 3/ |
| iPad and iPad 2 | | 4/3/2010 6/ |

| Name | Trademark 2/ | Filing Date |
|------|--------------|-------------|
| Purple iTunes Store Common Law Trademark ('85/041,463 App. Pending) | | 5/18/2010 |

Sources/Notes:
1/ Apple Inc. Amended Complaint, 6/16/11, pp. 18-21.
2/ Apple Inc. Amended Complaint, 6/16/11, Exhibit 29.
3/ Apple Inc. Press Release, 6/28/07
   (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).
4/ Apple Inc. Press Release, 7/10/08
   (http://www.apple.com/pr/library/2008/07/10iPhone-3G-on-Sale-Tomorrow.html).
5/ Apple Inc. Press Release, 6/7/10
   (http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html).
6/ Apple Inc. Press Release, 3/5/10 (http://www.apple.com/pr/library/2010/03/05iPad-Available-in-US-on-April-3.html).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 9

**Apple's Asserted Trademark Registrations** 1/

| U.S. Registration No. | Mark | Filing Date | Registration Date | Expiration Date 2/ |
|---|---|---|---|---|
| 3,886,196 | | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 3,889,642 | | 4/21/2010 | 12/14/2010 | 12/14/2020, subject to renewal. |
| 3,886,200 | | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 3,889,685 | | 4/21/2010 | 12/14/2010 | 12/14/2020, subject to renewal. |
| 3,886,169 | | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 3,886,197 | | 4/21/2010 | 12/7/2010 | 12/7/2020, subject to renewal. |
| 2,935,038 | | 3/11/2004 | 3/22/2005 | 3/22/2015, subject to renewal. |

**Sources/Notes:**
1/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 23 to 28 and 30.
2/  Federal trademark registrations issued on or after 11/6/1989 remain in force for 10 years, and may be renewed
for 10-year periods (http://www.uspto.gov/trademarks/process/maintain/prfaq.jsp).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                   **EXHIBIT 10**

## Summary of Samsung Accused Products

| # | Accused Products 1/ | Model No. 1/ | Model No. per Samsung Sales Data 2/ | Carrier 3/ |
|---|---|---|---|---|
| 1 | Acclaim | SCH-R880 | Acclaim (SCH-R880) | US Cellular |
| 2 | Captivate | SGH-I897 | Captivate (SGH-I897) | AT&T |
| 3 | Continuum | SCH-I400 | Continuum (SCH-I400) | Verizon |
| 4 | Droid Charge | SCH-I510 | Droid Charge (SCH-I510) | Verizon |
| 5 | Epic 4G | SPH-D700 | Epic 4G (SPH-D700) | Sprint |
| 6 | Exhibit 4G | SGH-T759 | Exhibit 4G (SGH-T759) | T-Mobile |
| 7 | Fascinate | SCH-I500 | Fascinate (SCH-I500) | Verizon |
| 8 | Galaxy Ace | GT-S5830 | Galaxy Ace (GT-S5830, GT-S5838, SCH-I579, SCH-I589, SHW-M240S) | n/a |
| 9 | Galaxy Prevail | SPH-M820 | Galaxy Prevail (SPH-M820) | Sprint |
| 10 | Galaxy S (i9000) | GT-I9000 | Galaxy S (I9000) (GT-I9000, GT-I9001, GT-I9008, GT-I9018, SCH-I909, SGH-N013, SHW-M110S) | n/a |
| 11 | Galaxy S 4G | SGH-T959 | Galaxy S 4G (SGH-T959) | T-Mobile |
| 12 | Galaxy S II (AT&T) | SGH-I777 | Galaxy S II/2 (GT-I9100, GT-I9108, SGH-I177, SGH-N033, SHW-M250K, SHW-M250S) | AT&T |
| 13 | Galaxy S II (i9100) | GT-I9100 | 4/ | 6/ |
| 14 | Galaxy S II (T-Mobile) | SGH-T989 | Hercules (SGH-T989) | T-Mobile |
| 15 | Galaxy S II (Epic 4G Touch) | SPH-D710 | 5/ | 5/ |
| 16 | Galaxy S II (Skyrocket) | SGH-I727 | 5/ | 5/ |
| 17 | Galaxy S Showcase (i500) | SCH-I500 | Showcase (SCH-I500) | Generic |
| 18 | Galaxy Tab | P1, P2 | Galaxy Tab 7.0 (P1, P2) | 5/ |
| 19 | Galaxy Tab 10.1 (WiFi) | GT-P7510 | Galaxy Tab 10.1 (GT-P7510, GT-P7511, SHW-M380W) | 5/ |
| 20 | Galaxy Tab 10.1 (4G LTE) | SCH-I905 | 5/ | 5/ |
| 21 | Gem | SCH-I100 | Gem (SCH-I100) | Generic |
| 22 | Gravity Smart | SGH-T589 | Gravity (SGH-T589) | T-Mobile |
| 23 | Indulge | SCH-R910 | Indulge (SCH-R910) | MetroPCS & Cricket |
| 24 | Infuse 4G | SGH-I997 | Infuse 4G (SGH-I997) | AT&T |
| 25 | Intercept | SPH-M910 | Intercept (SPH-M910) | Sprint |
| 26 | Mesmerize | SCH-I500 | Mesmerize (SCH-I500) | US Cellular |
| 27 | Nexus S | GT-I9020 | Nexus S (GT-I9020, GT-I9023, SHW-M200K, SHW-M200S) | T-Mobile |
| 28 | Nexus S 4G | SPH-D720 | Nexus S 4G (SPH-D720) | Sprint |
| 29 | Replenish | SPH-M580 | Replenish (SPH-M580) | Sprint |
| 30 | Sidekick | SGH-T839 | Sidekick (SGH-T839) | T-Mobile |
| 31 | Transform | SPH-M920 | Transform (SPH-M920) | Sprint |
| 32 | Vibrant | SGH-T959 | Vibrant (SGH-T959) | T-Mobile |

**Source/Notes:**

1/  Discussion with Counsel.

2/  SAMNDCA00372946 - 3138.

3/  Declaration of Timothy Sheppard in Support of Samsung's Opposition to Apple's Motion for Rule 37 (b)(2) Sanctions for Samsung's Alleged Violation of January 27, 2012 Damages
    Discovery Order, Exhibit D.

4/  Galaxy S II (AT&T edition, 4G)'s model number is listed within the Galaxy S II (i9100) in Samsung's financial data.  I have counted sales through STA and SEA as sales of the Galaxy S II
    (AT&T edition, 4G) because I understand that the i9100 model is not sold in the U.S. and all other models listed were not found on Samsung's North America Web Site.

5/  No data was provided.

6/  Declaration of Timothy Sheppard, Exhibit D, the Galaxy S II 2 with SKU GT-I9100 was listed as having carrier T-Mobile for model number T989 and AT&T for model number I777.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 11

# U.S. Smartphone Market Shares



**Source:** See Exhibit 11.1.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 11.1

**U.S. Smartphone Shipments and Market Share**

| | 2010 Q2 | | 2010 Q3 | | 2010 Q4 | | 2011 Q1 | | 2011 Q2 | | 2011 Q3 | | 2011 Q4 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Units | Market Share | Units | Market Share | Units | Market Share | Units | Market Share | Units | Market Share | Units | Market Share | Units | Market Share |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 12**



**Source**:  See Exhibit 12.1.

Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 12.1

**U.S. Mobile Phone Shipments and Market Share**
*(In Units)*

| Device Type | ACTUAL 1/ | | | | | | | | PROJECTIONS 2/ | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | |



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 13**



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 13.1



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 14**

## Intellectual Property Damage Types By Form Of IP

| | Patent | | | Trademark | Copyright | Trade Secret |
|---|---|---|---|---|---|---|
| | Utility Patent | Plant Patent | Design Patent | | | |
| **Lost Profits** | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| **Price Erosion** | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| **Corrective Advertising** | | | | ☑ | | |
| **Unjust Enrichment** | | | ☑ | ☑ | ☑ | ☑ |
| **Reasonable Royalty** | ☑ | ☑ | ☑ | ☑ | ☑ | ☑ |
| **Decrease in Value** | | | | ☑ | ☑ | ☑ |
| **Statutory** | | | | ☑ | ☑ | |

<u>**Source:**</u> AICPA Practice Aid 06-1 - Calculating Intellectual Property Infringement Damages, p.20.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Identification of Appropriate Forms of Damages

| IP Type | Patent/Registration No. | Form of Damages | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Lost Profits | | Infringer's Profits | | Reasonable Royalty | |
| | | Smartphones | Tablets | Smartphones | Tablets | Smartphones | Tablets |
| Utility Patents | 6,493,002 | n/a | n/a | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,469,381 | Calculated | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,663,607 | n/a 2/ | Calculated | n/a 1/ | n/a 1/ | n/a 2/ | Calculated |
| | 7,844,915 | Calculated | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,853,891 | n/a | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,864,163 | Calculated | Calculated | n/a 1/ | n/a 1/ | Calculated | Calculated |
| | 7,920,129 | n/a 2/ | n/a | n/a 1/ | n/a 1/ | n/a 2/ | Calculated |
| Design Patents | D627,790 | n/a | n/a | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D617,334 | n/a | n/a | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D604,305 | n/a | n/a | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D618,677 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D504,889 | n/a 2/ | Calculated | n/a 2/ | Calculated | n/a 2/ | Calculated |
| | D593,087 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | D622,270 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| Trade Dress | iPhone | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | iPhone 3G | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | iPhone 4 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | iPhone / iPhone 3G / iPhone4 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | iPad and iPad 2 | n/a 2/ | Calculated | n/a 2/ | Calculated | n/a 2/ | Calculated |
| | 3,470,983 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | 3,457,218 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| | 3,475,327 | Calculated | n/a 3/ | Calculated | n/a 3/ | Calculated | n/a 3/ |
| Trademarks | 3,886,196 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,889,642 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,886,200 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,889,685 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,886,169 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 3,886,197 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 2,935,038 | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |
| | 85/041,463 (Pending) | n/a 4/ | n/a 4/ | Calculated | Calculated | Calculated | Calculated |

**Sources/Notes:**
1/ Form of intellectual property is not appropriate for the damages remedy.
2/ Intellectual property relevant to tablets only.
3/ Intellectual property relevant to smartphones only.
4/ Not a form of damages claimed by Apple regarding certain Trademarks.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Sequential Consideration & Application of the Various Forms of IP Remedy

Apple Intellectual Property:  Patent A, Patent B, and Trade Dress C
Samsung Accused Products:  10 units of a Smartphone named Captivate



**Note**: All amounts portrayed are for demonstration purposes only.

Total Damages = $1264

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

# Samsung Per Product Damages

## (Lost Profits, Infringer's Profits [Gross Profit], and Reasonable Royalty)

| Product | Lost Profits 1/ | Infringer's Profits Design, Trade Dress, and Trademark 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|---|
| Acclaim | $1,049,129 | $31,372,471 | $0 | $32,421,600 |
| Captivate | $204,416,141 | $80,875,136 | $0 | $285,291,277 |
| Continuum | $6,981,279 | $38,386,818 | $0 | $45,368,096 |
| Droid Charge | $37,618,271 | $92,670,269 | $0 | $130,288,540 |
| Epic 4G | $31,296,962 | $297,752,798 | $0 | $329,049,761 |
| Exhibit 4G | $0 | $19,566,880 | $0 | $19,566,880 |
| Fascinate | $47,828,264 | $239,505,666 | $0 | $287,333,930 |
| Galaxy Ace | $0 | $0 | $0 | $0 |
| Galaxy Prevail | $8,573,370 | $96,079,988 | $0 | $104,653,359 |
| Galaxy S (i9000) | $0 | $0 | $0 | $0 |
| Galaxy S 4G | $13,884,674 | $126,076,701 | $0 | $139,961,375 |
| Galaxy S II (AT&T) | $0 | $76,846,200 | $0 | $76,846,200 |
| Galaxy S II (Epic 4G Touch) | | | $0 | $0 |
| Galaxy S II (i9100) | | | $0 | $0 |
| Galaxy S II (Skyrocket) | | | $0 | $0 |
| Galaxy S II (T-Mobile) | $0 | $68,344,562 | $0 | $68,344,562 |
| Galaxy S Showcase (i500) | $2,780,133 | $37,192,297 | $0 | $39,972,430 |
| Galaxy Tab | $50,313,041 | $51,108,617 | $0 | $101,421,658 |
| Galaxy Tab 10.1 (4G LTE) | | | $0 | $0 |
| Galaxy Tab 10.1 (WiFi) | $56,350,254 | $8,198,340 | $0 | $64,548,594 |
| Gem | $4,779,357 | $9,811,925 | $0 | $14,591,282 |
| Gravity Smart | $0 | $26,113,063 | $0 | $26,113,063 |
| Indulge | $4,009,197 | $37,984,786 | $0 | $41,993,983 |
| Infuse 4G | $44,404,466 | $84,869,200 | $0 | $129,273,666 |
| Intercept | $9,602,429 | $83,462,550 | $0 | $93,064,978 |
| Mesmerize | $9,687,923 | $98,299,253 | $0 | $107,987,176 |
| Nexus S | $2,094,937 | $17,602,613 | $0 | $19,697,550 |
| Nexus S 4G | $9,126,938 | $65,896,359 | $0 | $75,023,297 |
| Replenish | $7,266,720 | $35,197,870 | $0 | $42,464,591 |
| Sidekick | $4,088,016 | $48,929,677 | $0 | $53,017,693 |
| Transform | $7,863,653 | $60,379,886 | $0 | $68,243,539 |
| Vibrant | $19,175,967 | $176,470,222 | $0 | $195,646,189 |
| **Total** | **$583,191,122** | **$2,008,994,149** | **$0** | **$2,592,185,271** |

**Sources/Notes:**
1/ Exhibit 17.2
2/ Exhibit 17.4

EXH B T 172

# Lost Profits Summary

Apple Inc. v Samsung Electronics Co, LTD, et al

| | 2010 | | | | | | | | 2011 | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | |
| **Total Units Sold - Smartphones 1/** | 0 | 124,940 | 742,962 | 735,760 | 1,193,060 | 1,171,774 | 705,696 | 448,298 | 621,734 | 674,366 | 702,374 | 1,318,814 | 1,742,377 | 1,636,644 | 1,211,086 | 1,027,345 | 710,826 | 895,758 | 927,137 | 493,878 | 17,084,820 |
| Acc aim | 0 | 0 | 0 | 0 | 0 | 0 | 26 | 770 | 258 | 8 | 1,094 | 1,052 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,280 |
| Captivate | 0 | 0 | 133,351 | 130,335 | 74,422 | 76,530 | 19,595 | 67,548 | 56,689 | 53,389 | 28,997 | 22,885 | 14,296 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 678,012 |
| Continuum | 0 | 0 | 0 | 0 | 0 | 119 | 5,226 | 3,342 | 19 | 0 | 2,788 | 4,034 | 6,064 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 21,956 |
| Droid Charge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 75,547 | 35,697 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 111,243 |
| Epic 4G | 0 | 0 | 1 | 15,227 | 11,125 | 8,039 | 7,777 | 672 | 11,043 | 6,821 | 12,969 | 8,967 | 16,368 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 99,009 |
| Exhibit 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fascinate | 0 | 0 | 0 | 3,472 | 34,715 | 16,518 | 4,090 | 3,733 | 9,053 | 2,707 | 17,767 | 43,117 | 15,412 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 150,548 |
| Ga axy Ace | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ga axy Prevai | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,894 | 17,459 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25,353 |
| Ga axy S (i9000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ga axy S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17,472 | 12,199 | 10,701 | 1,192 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 41,563 |
| Ga axy S (AT&T) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ga axy S (Epic 4G Touch) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Ga axy S (i9100) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Ga axy S (Skyrocket) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Ga axy S (T-Mobi e) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,424 |
| Ga axy S Showcase (i500) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 781 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14,221 |
| Gem | 0 | 0 | 0 | 0 | 0 | 0 | 795 | 0 | 1,132 | 890 | 1,182 | 1,904 | 1,755 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,658 |
| Gravity Smart | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,503 | 1,362 | 5,285 | 4,207 | 1,915 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14,272 |
| ndu ge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,097 | 3,964 | 2,759 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14,820 |
| nfuse 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,147 | 0 | 128,553 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 131,312 |
| ntercept | 0 | 4,255 | 0 | 0 | 0 | 1,633 | 143 | 2,531 | 6,020 | 4,312 | 4,797 | 3,125 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 28,882 |
| Mesmerize | 0 | 0 | 0 | 0 | 0 | 0 | 3,443 | 912 | 3,958 | 3,779 | 2,542 | 6,632 | 386 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 29,487 |
| Nexus S | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,803 | 944 | 260 | 0 | 6,171 | 5,347 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,544 |
| Nexus S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,044 | 20,946 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 26,990 |
| Rep enish | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,129 | 15,318 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 21,683 |
| Sidekick | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,748 | 4,328 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12,076 |
| Transform | 0 | 0 | 0 | 0 | 0 | 0 | 84 | 782 | 7,719 | 5,502 | 2,664 | 0 | 2,960 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 23,618 |
| Vibrant | 0 | 315 | 23,427 | 7,659 | 13,688 | 10,868 | 4,865 | 919 | 2,677 | 83 | 664 | 0 | 3,115 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 65,660 |
| **Total Units Eligible for LP** | 0 | 4,570 | 156,779 | 156,693 | 133,950 | 113,707 | 46,044 | 84,793 | 101,015 | 104,682 | 100,059 | 218,034 | 291,111 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,511,437 |
| **Beginning Capacity** | | | | | | | | | | | | | | | | | | | | | |
| **Add'l Excess Capacity** | | | | | | | | | | | | | | | | | | | | | |
| **Total Capacity** | | | | | | | | | | | | | | | | | | | | | |
| **Actual Units Eligible for LP** | 0 | 4,570 | 156,779 | 156,693 | 133,950 | 113,707 | 46,044 | 84,793 | 101,015 | 104,682 | 100,059 | 218,034 | 291,111 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,511,437 |
| **Ending Capacity** | | | | | | | | | | | | | | | | | | | | | |
| **Apple Increm. Margin/Unit ($)** | | | | | | | | | | | | | | | | | | | | | |
| **Lost Profits ($)** | 0 | 120,370 | 586,183 | 579,067 | 1,059,110 | 1,058,067 | 659,652 | 363,505 | 520,719 | 569,684 | 602,315 | 1,100,780 | 1,451,266 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 15,573,341 |
| **Units Avail. for Other Remedies** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes Only

|  | 2010 | | | | | | | | 2011 | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | |
| **Total Units Sold - Tablets 1/** | 0 | 0 | 0 | 0 | 0 | 220 | 236,465 | 25,414 | 33,372 | 17,799 | 25,815 | 51,648 | 37,626 | 176,678 | 93,692 | 81,398 | 50,226 | 159,538 | 99,545 | 56,207 | 1,145,64 |
| Ga axy Tab | 0 | 0 | 0 | 0 | 0 | 0 | 187,526 | 20,154 | 24,443 | 13,037 | 18,908 | 38,489 | 23,836 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 326,5 |
| Ga axy Tab 10 1 (4G LTE) | 0 | 0 | 0 | 0 | 0 | 174 | 0 | 0 | 0 | 0 | 0 | 0 | 4,203 | 95,059 | 23,618 | 30,019 | 28,140 | 70,820 | 55,033 | 34,638 | 341,5 |
| Ga axy Tab 10 1 (WiFi) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Units Eligible for LP** | 0 | 0 | 0 | 0 | 0 | 174 | 187,526 | 20,154 | 24,443 | 13,037 | 18,908 | 38,489 | 28,039 | 95,059 | 23,618 | 30,019 | 28,140 | 70,820 | 55,033 | 34,638 | 668,0 |
| Beginning Capacity | | | | | | | | | | | | | | | | | | | | | |
| Add'l Excess Capacity 2/ | | | | | | | | | | | | | | | | | | | | | |
| Total Capacity | | | | | | | | | | | | | | | | | | | | | |
| **Actual Units Eligible for LP** | 0 | 0 | 0 | 0 | 0 | 174 | 187,526 | 20,154 | 24,443 | 13,037 | 18,908 | 38,489 | 28,039 | 95,059 | 23,618 | 30,019 | 28,140 | 70,820 | 55,033 | 34,638 | 668,0 |
| Ending Capacity | | | | | | | | | | | | | | | | | | | | | |
| Apple Increm. Margin/Unit ($) 3/ | | | | | | | | | | | | | | | | | | | | | |
| Lost Profits ($) | 0 | 0 | 0 | 0 | 0 | 46 | 48,939 | 5,260 | 8,929 | 4,762 | 6,907 | 13,159 | 9,587 | 81,619 | 70,074 | 51,379 | 22,086 | 88,718 | 44,512 | 21,569 | 477,5 |
| Units Avail. for Other Remedies | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

**Total Lost Profits ($)**   583,191,12...

**Sources/Notes:**
1/ Smartphones - Exh b t 37 1, Tab ets - Exh b t 38 1
2/ Smartphones - Exh b t 26, Tab ets - Exh b t 27
3/ Smartphones - Exh b t 32, Tab ets - Exh b t 33

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only



| Reasonable Royalty 1/ |
| --- |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| $0 |
| **$0** |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18.1

# Samsung Per Product Damages
## (Infringer's Profits [Gross Profit] and Reasonable Royalty)

| Product | Infringer's Profits Design, Trade Dress, Trademark 1/ | Reasonable Royalty 1/ | Total |
|---|---|---|---|
| Acclaim | $31,554,405 | $0 | $31,554,405 |
| Captivate | $202,100,400 | $0 | $202,100,400 |
| Continuum | $40,997,795 | $0 | $40,997,795 |
| Droid Charge | $113,156,712 | $0 | $113,156,712 |
| Epic 4G | $316,323,020 | $0 | $316,323,020 |
| Exhibit 4G | $19,565,125 | $0 | $19,565,125 |
| Fascinate | $267,735,061 | $0 | $267,735,061 |
| Galaxy Ace | $0 | $0 | $0 |
| Galaxy Prevail | $97,854,762 | $0 | $97,854,762 |
| Galaxy S (i9000) | $0 | $0 | $0 |
| Galaxy S 4G | $132,575,465 | $0 | $132,575,465 |
| Galaxy S II (AT&T) | $76,846,200 | $0 | $76,846,200 |
| Galaxy S II (Epic 4G Touch) | $0 | $0 | $0 |
| Galaxy S II (i9100) | $0 | $0 | $0 |
| Galaxy S II (Skyrocket) | $0 | $0 | $0 |
| Galaxy S II (T-Mobile) | $68,344,562 | $0 | $68,344,562 |
| Galaxy S Showcase (i500) | $38,781,982 | $0 | $38,781,982 |
| Galaxy Tab | $107,920,148 | $0 | $107,920,148 |
| Galaxy Tab 10.1 (4G LTE) | $0 | $0 | $0 |
| Galaxy Tab 10.1 (WiFi) | $29,101,730 | $0 | $29,101,730 |
| Gem | $10,188,964 | $0 | $10,188,964 |
| Gravity Smart | $26,113,063 | $0 | $26,113,063 |
| Indulge | $40,027,961 | $0 | $40,027,961 |
| Infuse 4G | $105,623,146 | $0 | $105,623,146 |
| Intercept | $85,102,356 | $0 | $85,102,356 |
| Mesmerize | $103,772,074 | $0 | $103,772,074 |
| Nexus S | $18,768,140 | $0 | $18,768,140 |
| Nexus S 4G | $68,663,024 | $0 | $68,663,024 |
| Replenish | $36,477,277 | $0 | $36,477,277 |
| Sidekick | $50,374,706 | $0 | $50,374,706 |
| Transform | $60,985,291 | $0 | $60,985,291 |
| Vibrant | $188,565,313 | $0 | $188,565,313 |
| **Total** | **$2,337,518,680** | **$0** | **$2,337,518,680** |

**Sources/Notes:**
1/ Exhibit 18.3

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                EXHIBIT 19

# Samsung Per Product Damages
# (Lost Profits and Reasonable Royalty)

| Product | Lost Profits 1/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Acclaim | $1,049,129 | $5,831,133 | $6,880,262 |
| Captivate | $204,416,141 | $22,568,898 | $226,985,039 |
| Continuum | $6,981,279 | $9,151,247 | $16,132,526 |
| Droid Charge | $37,618,271 | $19,996,148 | $57,614,419 |
| Epic 4G | $31,296,962 | $52,448,546 | $83,745,508 |
| Exhibit 4G | $0 | $9,624,482 | $9,624,482 |
| Fascinate | $47,828,264 | $36,246,033 | $84,074,297 |
| Galaxy Ace | $0 | $0 | $0 |
| Galaxy Prevail | $8,573,370 | $51,390,558 | $59,963,928 |
| Galaxy S (i9000) | $0 | $0 | $0 |
| Galaxy S 4G | $13,884,674 | $37,540,692 | $51,425,366 |
| Galaxy S II (AT&T) | $0 | $13,044,474 | $13,044,474 |
| Galaxy S II (Epic 4G Touch) | | | $0 |
| Galaxy S II (i9100) | | | $0 |
| Galaxy S II (Skyrocket) | | | $0 |
| Galaxy S II (T-Mobile) | $0 | $13,573,780 | $13,573,780 |
| Galaxy S Showcase (i500) | $2,780,133 | $8,537,497 | $11,317,631 |
| Galaxy Tab | $50,313,041 | $13,636,707 | $63,949,748 |
| Galaxy Tab 10.1 (4G LTE) | | | $0 |
| Galaxy Tab 10.1 (WiFi) | $56,350,254 | $5,816,706 | $62,166,960 |
| Gem | $4,779,357 | $12,230,055 | $17,009,412 |
| Gravity Smart | $0 | $16,104,746 | $16,104,746 |
| Indulge | $4,009,197 | $8,790,734 | $12,799,931 |
| Infuse 4G | $44,404,466 | $24,457,254 | $68,861,720 |
| Intercept | $9,602,429 | $34,516,415 | $44,118,843 |
| Mesmerize | $9,687,923 | $20,506,611 | $30,194,534 |
| Nexus S | $2,094,937 | $4,157,286 | $6,252,223 |
| Nexus S 4G | $9,126,938 | $16,220,652 | $25,347,590 |
| Replenish | $7,266,720 | $19,767,532 | $27,034,252 |
| Sidekick | $4,088,016 | $14,183,134 | $18,271,150 |
| Transform | $7,863,653 | $16,377,909 | $24,241,562 |
| Vibrant | $19,175,967 | $25,280,213 | $44,456,180 |
| **Total** | **$583,191,122** | **$511,999,442** | **$1,095,190,564** |

**Sources/Notes:**
1/ Exhibit 17.2
2/ Exhibit 19.1

# Reasonable Royalty Summary - for Units not Eligible for Lost Profits

in USD

Apple Inc. v Samsung Electronics Co., LTD, et al

| | 2010 | | | | | | | | 2011 | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | |
| Acclaim | 0 | 811,278 | 1,685,970 | 718,333 | 702,421 | 253,562 | 375,921 | 412,473 | 87,901 | 2,889 | 375,104 | 405,939 | 0 | -879 | -157 | -63 | -63 | 502 | 0 | 0 | 5,831,133 |
| Captivate | 0 | 0 | 1,470,274 | 1,437,046 | 820,560 | 1,066,260 | 274,426 | 1,115,535 | 1,241,806 | 1,178,236 | 639,948 | 631,822 | 455,396 | 3,418,258 | 2,857,292 | 2,623,678 | 682,958 | 838,032 | 1,082,900 | 734,672 | 22,568,898 |
| Continuum | 0 | 0 | 0 | 0 | 0 | 59,020 | 2,591,773 | 1,954,401 | 7,121 | -714 | 148,104 | 250,648 | 416,976 | 1,024,794 | 1,744,166 | 612,238 | 345,576 | -1,734 | -3,230 | 2,108 | 9,151,247 |
| Droid Charge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,693,802 | 2,454,562 | 4,439,618 | 3,231,666 | 1,815,770 | 236,776 | 968,694 | 1,080,078 | 1,075,182 | 19,996,148 |
| Epic 4G | 0 | 0 | 546 | 5,212,818 | 3,808,610 | 3,966,326 | 3,856,705 | 393,111 | 4,068,402 | 2,531,606 | 4,813,414 | 3,743,502 | 7,342,368 | 5,749,740 | 2,282,760 | 64,260 | 0 | 0 | 0 | 0 | 52,448,546 |
| Exhibit 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,004,554 | 917,524 | 2,078,352 | 1,503,514 | 513,978 | 607,682 | -1,122 | 0 | 9,624,482 |
| Fascinate | 0 | 0 | 0 | 1,188,668 | 11,884,236 | 8,148,946 | 2,028,946 | 2,182,786 | 3,335,151 | 157,862 | 943,772 | 943,772 | 2,678,928 | 1,059,814 | 1,000,280 | 1,162,494 | 212,840 | 267,648 | -1,224 | -6,120 | 36,246,033 |
| Galaxy Ace | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy Prevail | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,295,484 | 7,811,594 | 10,652,880 | 8,917,860 | 6,854,400 | 2,548,980 | 3,394,560 | 6,303,600 | 1,591,200 | 51,390,558 |
| Galaxy S (i9000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Galaxy S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,484,412 | 4,527,644 | 4,467,226 | 534,752 | 3,197,700 | 3,232,958 | 4,643,040 | 2,391,458 | 1,531,462 | 2,486,012 | 4,044,028 | 37,540,692 |
| Galaxy S (AT&T) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,750,846 | 5,307,944 | 3,437,910 | 547,774 | 13,044,474 |
| Galaxy S (T-Mobile) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,072,155 | 1,888,427 | 3,613,198 | 13,573,780 |
| Galaxy S Showcase (i500) | 0 | 0 | 0 | 0 | 0 | 0 | 394,483 | 456,925 | 417,400 | 330,480 | 438,872 | 795,124 | 787,236 | 961,690 | 995,792 | 1,148,792 | 373,830 | 107,406 | 895,798 | 433,670 | 8,537,497 |
| Galaxy Tab | 0 | 0 | 0 | 0 | 0 | 1,444 | 1,543,210 | 190,480 | 349,556 | 187,623 | 272,136 | 548,116 | 342,300 | 2,063,040 | 2,317,098 | 1,362,228 | 181,734 | 2,744,868 | 1,106,952 | 425,922 | 13,636,707 |
| Galaxy Tab 10.1 (WiFi) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 60,354 | 1,364,958 | 626,010 | 795,690 | 745,878 | 981,288 | 762,552 | 479,976 | 5,816,706 |
| Gem | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 554,047 | 505,852 | 1,961,494 | 1,756,338 | 859,214 | 2,394,178 | 1,616,122 | 976,616 | 864,960 | 615,298 | 139,536 | -13,600 | 12,230,055 |
| Gravity Smart | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,279,800 | 6,278,800 | 2,961,910 | 1,912,092 | 1,044,922 | 510,034 | 618,902 | 856,936 | 16,104,746 |
| Indulge | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -374 | 678,028 | 1,163,820 | 3,061,190 | 1,912,092 | 1,044,922 | 510,034 | 618,902 | 8,790,734 |
| Infuse 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 76,194 | 4,095,062 | 1,163,820 | 3,061,190 | 4,421,938 | 4,760,102 | 3,840,266 | 931,600 | 1,258,000 | 24,457,254 |
| Intercept | 0 | 0 | 2,074,410 | 3,876,600 | 4,442,620 | 4,446,780 | 2,240,594 | 1,480,221 | 2,217,944 | 1,600,652 | 1,168,002 | 1,304,750 | 2,398,802 | 2,768,586 | 1,930,962 | 798,014 | 204,680 | 205,700 | -34 | -136 | 34,516,415 |
| Mesmerize | 0 | 0 | 0 | 0 | 0 | 805,662 | 1,707,474 | 533,618 | 1,458,335 | 1,402,874 | 1,780,682 | 2,768,586 | 1,941,434 | 1,930,962 | 12,750 | 798,014 | 1,042,848 | 1,910,766 | 2,047,242 | 365,364 | 20,506,611 |
| Nexus S | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 347,980 | 96,560 | 943,738 | 554,880 | 145,486 | -102 | 205,700 | 224,332 | -510 | -68 | 0 | 0 | 0 | 4,157,286 |
| Nexus S 4G | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,523,004 | 9,396,036 | 785,400 | 578,000 | 240,680 | 205,700 | 2,733,600 | -68 | -510 | 16,220,652 |
| Replenish | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,576,146 | 6,871,128 | 4,732,290 | 2,029,120 | 1,446,666 | 1,606,330 | 498,440 | 680 | 6,732 | 19,767,532 |
| Sidekick | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,811,094 | 1,328,142 | 2,173,042 | 3,160,198 | 2,983,534 | -4,828 | 61,982 | 85,578 | 584,392 | 14,183,134 |
| Transform | 0 | 0 | 0 | 3,797,060 | 1,002,924 | 3,036,150 | 1,184,339 | 0 | 1,445,091 | 1,290,697 | 693,270 | 246,704 | 49,708 | 173,366 | 0 | 0 | 1,013,592 | 870,408 | 0 | 0 | 16,377,909 |
| Vibrant | 0 | 153,790 | 2,074,038 | 2,622,022 | 4,686,006 | 5,361,512 | 2,412,525 | 1,184,339 | 986,330 | 1,885,821 | 913,300 | 0 | 173,366 | 1,290,697 | 693,270 | 246,704 | 49,708 | 31,178 | 418,623 | 537,408 | 25,280,213 |
| **Total Reasonable Royalty ($)** | 0 | 153,790 | 8,020,038 | 14,975,927 | 27,347,377 | 27,145,663 | 18,669,735 | 11,314,533 | 17,696,567 | 19,400,489 | 20,644,163 | 37,821,366 | 49,638,825 | 59,016,637 | 44,036,117 | 37,015,581 | 25,095,701 | 33,513,491 | 33,235,795 | 17,398,568 | 511,999,442 |

**Summary of Damage Calculation Methodology**

| IP Type | Patent/ Registration No. | Available Remedy | Apple Average Sales Price /2/ | Apple Incremental Profit per Unit 3/ 4/ | Apple Incremental Profit Margin 5/ | Apportionment Of Accused Base | | | | | Infringer's Profits | | Reasonable Royalty | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Carrier Apportionment | Carrier Switching Apportionment 6/ | Mor-Flo Apportionment For Acceptable Non-Infringing Substitutes | Design Around Apportionment (Months Out of Market) | Capacity | Available Remedy | Samsung's Profit per Device | Available Remedy | Basis of Royalty Base | Reasonable Royalty per Unit Rate |
| Utility Patents | '002 | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| | '129 | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| | '163 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold Phone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | Yes | $ 590 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| | '381 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold Phone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | Yes | $ 590 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 1 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| | '607 | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | Yes | $ 590 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | Products with screens 10 inches or larger: no design around. Products with screens 8 inches or less: design around after 12/31/10. 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| | '891 | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | No | N/A | | | N/A | N/A | N/A | N/A | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| | '915 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold Phone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 6 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 46 |
| | | Yes | $ 590 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 6 13/ | | No | N/A | Yes | Accused units sold | See Exhibit 47 |
| Design Patents | 'D087 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold Phone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | 'D270 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold Phone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | 'D305 | No | N/A | | | N/A | N/A | N/A | N/A | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | 'D334 | No | N/A | | | N/A | N/A | N/A | N/A | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Summary of Damage Calculation Methodology**

| IP Type | Patent/ Registration No. | Available Remedy | Apple Average Sales Price | Apple Incremental Profit per Unit | Apple Incremental Profit Margin | Carrier Apportionment | Carrier Switching Apportionment | Mor-Flo Apportionment For Acceptable Non-Infringing Substitutes | Design Around Apportionment (Months Out of Market) | Capacity | Available Remedy | Samsung's Profit per Device | Available Remedy | Basis of Royalty Base | Reasonable Royalty per Unit Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | / 2/ | 3/ 4/ | 5/ | | | 6/ | | | | | | | |
| | '677 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | 'D790 | No | N/A | | | N/A | N/A | N/A | N/A | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | 'D889 | Yes | $ 590 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| Trade Dress | iPhone | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | iPhone 3G | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | iPhone 4 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | iPhone / iPhone 3G / iPhone4 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | iPad and iPad 2 | Yes | $ 590 | | | N/A | N/A | Distribute Samsung's sales among other tablet manufacturers. 10/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '983 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '218 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '327 | Yes | $ 645 | | | Carrier apportionment applied when the accused smartphone was sold at a carrier that also sold iPhone(s) during the same period. | 26% | Distribute Samsung's sales among other smartphone manufacturers available at a specific carrier. 8/ Alternatively, distribute carrier switchers between market participants using market share for the entire smartphone market. 9/ | 8 7/ | | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |

Summary of Damage Calculation Methodology

| IP Type | Patent/ Registration No. | Available Remedy | Apple Average Sales Price | Apple Incremental Profit per Unit | Apple Incremental Profit Margin | Carrier Apportionment | Carrier Switching Apportionment | Mor-Flo Apportionment For Acceptable Non-Infringing Substitutes | Design Around Apportionment (Months Out of Market) | Capacity | Available Remedy | Samsung's Profit per Device | Available Remedy | Basis of Royalty Base | Reasonable Royalty per Unit Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Apportionment Of Accused Base | | | | Infringer's Profits | | Reasonable Royalty | |
| | | | / 2/ | 3/ 4/ | 5/ | | 6/ | | | | | | | | |
| Trademarks | '038 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '169 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '196 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '197 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '200 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '642 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '685 | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |
| | '663 (Pending) | No | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | Yes | Samsung's revenue as a starting point or Samsung's gross profit if Samsung does not provide a reasonable explanation of incremental costs. | Yes | Accused units sold | See Exhibits 46 and 47 |

Sources/Notes:
/  Apple Average Sales Price for iPhone = (Total Worldwide iPhone Revenues from Q3FY10 through Q1FY12) / (Total Worldwide iPhone Units sold from Q3FY10 through Q1FY12).  See Exhibit 32.
2/  Apple Average Sales Price for iPad = (Total Worldwide  Pad Revenues from Q1FY11 through Q1FY12) / (Total Worldwide iPad Units sold from Q1FY11 through Q1FY12).  See Exhibit 33.
/  Apple Incremental Profit per Unit for iPhone = (Total Worldwide iPhone Gross Profit from Q3FY10 through Q  FY12) - (Total iPhone Sales and Distribution Expense from Q3FY10 through Q1FY12).  See Exh bit 32.
4/  Apple Incremental Profit per Unit for iPad = (Total Worldwide iPad Gross Profit from Q1FY11 through Q1FY12) - (Total iPad Sales and Distribution Expense from Q1FY11 through Q1FY12).  See Exhibit 33.
5/  Apple Incremental Profit Margin = Apple Incremental Profit per Unit / Apple Average Sales Price.
6/  Some Smartphone units are not sold at a carrier selling iPhone units. Based on a ThinkTech with Google presentation  I have assumed that 26% of units sold at a carrier not selling iPhone units would be subject to carrier switching and are available for lost profits.  See Exhibit 28.
7/  Discussion with Tang Tan.
8/  See Exhibits 31.1  31.2  and 31.3.
9/  See Exhibit 31.
0/  See Exhibit 30.
11/ See Exhibit 26.
12/ See Exhibit 27.
13/ See Exhibit 45.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 21

**Wagner Declaration Page 18**



Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 191 of 245
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 22

**Apple Other Line of Business P&L Summary** 1/

| (Revenue in Millions USD) | | FY 2010 | | | | FY Total | FY 2011 | | | | FY Total | FY 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | | Q1 | Q2 | Q3 | Q4 | | Q1 | |
| **iTunes** 2/ | Revenue | 923 | 1,108 | 1,015 | 1,023 | 4,069 | 1,157 | 1,387 | 1,359 | 1,444 | 5,347 | 1,697 | 11,113 |
| **Mobile Advertising** 3/ | Revenue | - | 0 | 11 | 16 | 27 | 30 | 23 | 18 | 26 | 97 | 37 | 161 |

**Sources/Notes:**

1/  Fiscal year ending September 31.

2/  Apple "GAAP Line of business Reporting - iTS", APLNDC-Y0000051616 - 1617.

3/  Apple "GAAP Line of Business Reporting - Mob.Adv", APLDNC-Y0000051620. Per Deposition of Mark Buckley, 2/23/12, p.153-156, mobile advertising revenues include selling advertisements from
    third-party companies within apps from the App Store installed on iOS devices (iPhone, iPad, and iPod Touch).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple, Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 23**

# Worldwide Apple iOS Search Revenue



**Source/Notes:**
1/ Search Revenue includes revenue share paid by Google (APLNDC-Y0000232431-2433), Microsoft Bing (APLNDC-Y0000232434-2444) and Yahoo (APLNDC-Y0000232445-2446) for searches performed on iOS devices.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

EXHIBIT 24

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 1 | Deposition of Eric Jue, Product Line Manager for iPod at Apple, 2/24/12 | N/A, page in document: 100-101 | Apple | "the look and feel of iPhone, both physical, you know, dimensions and materials, and also the look and feel of the user interface, the icons that you see, are all part of what people associate with Apple and iPhone." | x | |
| 2 | Deposition of Stanley Ng, Senior Director of iPhone Product Marketing, Worldwide Product Marketing Group at Apple, 2/21/12 | N/A, page in document: 55 | Apple | "Q When you say "**design** and aesthetics," what do you mean by that? A I think customers love the look of the product. They love how beautiful the product appears. Q Any particular aspect of the look of the product that you think customers like in particular? A Not specifically. I think they love the overall look and beauty of the products that we [Apple] create." | x | x |
| 3 | Deposition of Philip Schiller, VP of Product Marketing at Apple, 2/17/12 | N/A, page in document: 185 | Apple | "I think it is very possible that  consumers who have never owned any Apple product whatsoever still might recognize this icon [phone call] as associated with Apple and even the iPhone, given how distinctive it is and how much marketing there has been..." | x | |
| 4 | Deposition of Michael Tchao, VP of Product Marketing for iPad at Apple, 2/21/12 | N/A, page in document: 63 | Apple | "Q. Do you recall any feedback specifically as to the shape of the original iPad? A. I believe there was feedback on specifically comfortable to hold, which would, in my mind, include -- incorporate shape. Q. How so? A. That the contours of the device and the way the housing and screen came together made it easy to hold on to." | | x |
| 5 | Deposition of Michael Tchao, VP of Product Marketing for iPad at Apple, 2/21/12 | N/A, page in document: 67 | Apple | Q. What about the physical **design** of the product makes it [the iPad] comfortable to hold? A. The shape of the back housing, the area of the -- around the screen, the bezel around the screen, the weight of the product and the distribution of that weight, the balance of the product. | | x |
| 6 | Various iPhone Buyer Surveys, by Apple Market Research & Analysis | 1/ | Apple | Between Q4 2010 and Q4 2011, 44-50% of those surveyed noted attractive appearance and design as a very important attribute in the iPhone purchase decision. | x | |
| 7 | iPhone Owner Study, by Apple Market Research & Analysis, May 2011 | APLNDC-Y0000025024 - 5147, at 5060 and '5064 | Apple | "Strong trust in Apple and appeal of **design** swayed many who considered Android to purchase iPhone." 32% of those surveyed in the U.S. liked the physical appearance and **design** as a reason that swayed them to purchase iPhone over Android. 46% of those surveyed in the U.S. also listed physical appearance and **design** as a very important feature in deciding to buy the iPhone. | x | |
| 8 | Smartphone Market Study, Apple Market Research & Analysis, January 2011 | APLNDC0001434059 - 4154, at '4144 | Apple | The 7th top reason for buying an iPhone is for better appearance/**design** (37%); better appearance/**design** is listed 10th top reason for buying an Android-based smartphone (27%). | x | |
| 9 | iPhone Early Buyer Wave 1 Final Report, Apple Market Research & Analysis, July 2007 | APLNDC-Y0000029092 - 9135, at '9125 | Apple | The 4th top feature leading to an iPhone purchase is appearance and **design** (78%). | x | |
| 10 | iPhone 4S Early Buyer Survey, Apple Market Research & Analysis, November 2011 | APLNDC-Y0000026096 - 6137, at '6116 | Apple | 64% of iPhone 4S buyers are very satisfied with the physical appearance and **design**, and 25% are somewhat satisfied. | x | |
| 11 | Exhibit 7 to Deposition of Sissie Twiggs, Director of Worldwide Advertising at Apple  7/1/11 | N/A, time in video: 00:00 | Apple | Back of phone is shown with logo. | x | |
| 12 | Exhibit 20 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A, time in video: 0 01 | Apple | iPad 2 frontal **design** shown. | x | |
| 13 | Exhibit 37 to Deposition of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/27/11 | N/A, page in document: 116 | Apple | Advertisement on the **design** of the iPad 2.  "Thinner. Lighter. Faster." | | x |
| 14 | Exhibit 40 to Deposition of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/27/11 | N/A | Apple | Advertisement showing two fingers picking up the iPad 2. | | x |
| 15 | Exhibit D to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10257319 | Samsung | In a graph titled "Main reasons why customers purchased current [Samsung] smartphone (%)", "Exterior **Design**" was chosen by 28.6%-40.8% of the customers depending on age group. Above the graph is the statement "Key Analysis: Need to recognize the importance of exterior **design** and screen size, as they are customer purchase decision factors." | X | |
| 16 | Exhibit D to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10257322 | Samsung | In a slide titled Proposed Exterior **Design** Improvement Factors," there is the statement "Need to Improve by Adding Glossiness: iPhone's strengthened glass (front/back) has a glossy feel, which looks classy." | X | |
| 17 | Exhibit E to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00202379 | Samsung | In the chart, "Comparison between Samsung Mobile Phone and iPhone," "iPhone is on average 5.9 points higher compared to the Samsung mobile phone." | X | |
| 18 | Exhibit F to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00229020 | Samsung | "Although released nearly a year ago, the Apple iPhone has maintained its position as the most inspired mobile handset on the market…. The iPhone is a delight to the eye as well as a highly usable device." | X | |
| 19 | Exhibit G to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247537 | Samsung | T-Mobile's comments to Samsung about their phones include: "Please explore other **design** alternatives here, including lighter backgrounds and colors throughout. For example, the iPhone has been successful at achieving a light and airy aesthetic…" | X | |
| 20 | Exhibit G to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247538 | Samsung | T-Mobile's comments to Samsung about their phones also include: "iPhone maintains a lively, vivid experience largely due to the 'pop' of their icons. We should be able to create similar magic here." | X | |
| 21 | Exhibit H to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247377 | Samsung | Samsung's Head of Mobile Division stated, "When our UX is compared to the unexpected competitor Apple's iPhone, the difference is truly that of Heaven and Earth. It's a crisis of **design**." | X | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

EXHIBIT 24

Apple Inc. v Samsung Electronics Co., LTD., et al.

Demand for Design Patents and Trade Dress

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 22 | Exhibit I to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10247549 | Samsung | CEO Gee Sung Choi criticized Samsung UX's mindset of "clinging to the past generation," stating, "I'm not saying, let's make a UX that is exactly the same as the iPhone, I am saying, let's learn the wisdom of the iPhone and recognize that they have already set the industry standard (?) [sic]." | X | |
| 23 | Exhibit J to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10252809 | Samsung | In the chart, "Evaluation results of design quality/luxury brand recognition," iPhone scores 90% on attractiveness, while Galaxy S phone scores 79%. | X | |
| 24 | Exhibit J to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10252818 | Samsung | When compared with the GA3, iPhone 4's "icon illustrations look professional and luxurious." | X | |
| 25 | Exhibit J to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10252832 | Samsung | "The border is designed with metal silver, providing a futuristic and luxurious feeling." | X | |
| 26 | Exhibit K to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA10244368 | Samsung | In a slide titled, "Apple has overtaken Samsung as the most stylish brand overall," there is a quote from London: "I think Apple is so successful because they have come out with a unique product [and] you see all other mobile phone providers are trying to copy each other. Apple came out with something different and that's why everyone likes Apple - because it's different" | X | |
| 27 | Exhibit P to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00249046 | Samsung | "The impact on the category is likely to be material because the product [iPhone] will affect consumer expectations for design, user interface and presumably cell phone music capabilities." | X | |
| 28 | Exhibit Q to Declaration of Minn Chung, Attorney at Morrison & Foerster LLP, counsel of record for Apple, 2/8/12 | SAMNDCA00232256 | Samsung | In a Market Intelligence Group Survey for Samsung, iPhone scores high in items such as "Sensual Design," "Stylish," "Prestigious," "Contemporary," "Young," "Passionate," and "Imaginative." Above the chart of survey results, there is the statement "iPhone generally shows a distinctive image compared to Samsung." Apple generally outperformed Samsung in almost every category. | X | |
| 29 | iPhone 4.0 Quick Report & Analysis | SAMNDCA00024872-4941, at '4908 | Samsung | In a Samsung presentation titled, "iPhone 4.0 Quick Report and Analysis, there is a side to side comparison of the back of Galaxy S phone and the iPhone with a check on the iPhone side and the comment, "Apple logo on back." | X | |
| 30 | Corrected Exhibit C to Declaration of Francis Ho, 11/7/11 (Title of document: STA Post Launch Consumer Insights) | SAMNDCA00025016 - 5079, at '5031 | Samsung | "Design on the Galaxy Tab 10.1 was and is the main sales driver for the device." | | X |
| 31 | Samsung Galaxy Tab 10.1 & 8.9 Competitive Product Experience | SAMNDCA00027944 - 8005, at '7948 | Samsung | "Apple iPad 2 was rated significantly higher in overall design than Samsung Galaxy Tab 10.1, Blackberry Playbook and HP Touchpad." | | X |
| 32 | Samsung, part 1. Endless opportunities. | SAMNDCA00176269 - 6897, at '6343-'7644 | Samsung | "The halo effect. If you can own one attribute, the prospect is inclined to give many others. The proof of the principle. Apple's focus on design has built a powerful brand." | X | X |
| 33 | Samsung Lovemark Mobile & Web Research: Lovemarks. | SAMNDCA00207695 - 7765, at '7731 | Samsung | Apple was rated "among the best" while Samsung was rated "about average" for "Physical Design." | X | |
| 34 | Business & Messaging Users Qualitative Research Results | SAMNDCA00218063 - 8130, at '8099 | Samsung | In a slide titled, "Comparison between Current and Wish Phones_Design," Samsung states "Apple iPhone users rate design satisfaction higher than the others." The chart below shows Apple ratings that are higher in terms of easy to carry, color, size of phone, form factor, material, button to input text easily, and keypad type. | X | |
| 35 | 2009 Samsung Umbrella Brand Architecture | SAMNDCA00230535 - 0645, at '0571 | Samsung | "Sony is known for quality, trust and worth; Apple for buzz, design, and innovation..." | X | X |
| 36 | BAS H1 2010 Final Report USA | SAMNDCA00236017 - 6112, at '6077 | Samsung | "Apple distinguishes itself on Expertise, Sensual Design, and Endorsement." | X | X |
| 37 | Brand Attitude Survey 2010 2H - Main Module: USA | SAMNDCA00245494 - 5611, at '5584 | Samsung | A chart titled "Performance on BE attributes - Samsung vs. Apple" rates Apple higher in "Sensual Design" compared to Samsung. | X | X |
| 38 | Brand Attitude Survey H2 2009 Country Report: USA | SAMNDCA00232190 - 2290, at '2256 | Samsung | "iPhone generally shows a distinctive image compared to Samsung." | X | |
| 39 | COO Visit to STA - September, 2011 | SAMNDCA00295131 - 9239, at '9167 | Samsung | Samsung's draft presentation includes a quote from Fox News, "The hype isn't without substance. Though each carrier alters its phone a bit, all three Galaxy S II smartphones have some specs in common: a 4.3-inch, Super AMOLED 800x480 screen, a dual core 1.2-GHz processor, fast 4G network connectivity, and a sleek, simple design evocative of the iPhone." | X | |
| 40 | Samsung, European Telecommunication Operation, P5 vs. iPad2, 18th May, 2011 | S-ITC-010617659 - 7694, at '7663 | Samsung | In a slide of side to side comparison of the iPad 2 and P5, Samsung comments that on the iPad2, "icons are big and the gap between the applications are ideal!!!" "Due to the big size of Icons and the big gap between applications, it is easier to find applications." | | X |
| 41 | Samsung, European Telecommunication Operation, P5 vs. iPad2, 18th May, 2011 | S-ITC-010617659 - 7694, at '7670 | Samsung | Samsung comments that the contacts function on the iPad 2 has "very nice UI design and easy to edit contacts because Edit button is always visible!!! Very nice Book design and the editing is easy and intuitive." | | X |
| 42 | Samsung Galaxy S Launch Event (http://www.youtube.com/watch?v=Pnx fnFmOWb8) | N/A | Samsung | 9.9 mm thickness and 4 inch screen are described in a video clip about the Galaxy S. | X | |
| 43 | [GALAXY Tab 10.1] Official Demo - HD | N/A | Samsung | Describes tablet design as "revolutionary". | | X |
| 44 | [GALAXY S II] Official Live Demo - Viewing | N/A | Samsung | Design of the phone seen from every angle. | X | |
| 45 | Samsung Galaxy S II Presentation | SAMNDCA10775587 - 5624, at '5594, '5599, '5607, '5619, '5621, '9831 | Samsung | Samsung describes "Design" as a main feature of the Galaxy S II and notes the phone's "Slim and Light Design." Diagrams show "a double tap and tilt of the device will zoom in and out" and "tap and pan will move the user from widgets to menus." Samsung in its 30 second pitch described the screen as "wrapped in the sleekest design you can find anywhere." and highlights Design in its 3 minute pitch guidelines. Picture at the CTIA Unpacked event with Design on a powerpoint slide. | x | |

Apple Inc. v Samsung Electronics Co., LTD., et al.

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 46 | Samsung Galaxy Tab 10.1 - Official Commercial (http://www.youtube.com/watch?v=OM1Pt0AXSaI) | N/A, time in video: 00:30 | Samsung | Apple comparison is shown between a Galaxy Tab 10.1 and iPad. | | x |
| 47 | [Blank Title], by Design Management center, 10/8/7 (Translated) | SAMNDCA00202336 - 2380, at '2358, '2363, '2379 | Samsung | From a **Design** Competitiveness Evaluation, Samsung notes that "the [iPhone] **design** has simple appearance, but becomes more and more attractive as it is used)," and "out of the evaluation items for Delight, Total **Design** Uniformity and **Design** Leadership are more than 6 points higher than our company's mobile phones." "Deliver overall consistent images over the entire process of product use in addition to the product itself. Provide reliability by implementing Identity that involves integration of brand, **design** and marketing." [Slide shows Apple marketing items] "Intuitive Interface…Advanced Technology that simplifies complicated external function keys and thus enhances usability." [Shows picture of iPod] | x | |
| 48 | Experts' Evaluation Result, Self Inspection Program - Major Status on Global Design Competitiveness Evaluation, October 2007 (Translated) | SAMNDCA00203016 - 3040, at '3033 | Samsung | "When it comes to **design**, advance market dominance is important. The **design** that lost market dominance may appear to be an imitation." "iPhone GUI appears to be alive. There is a lack of GUI that is more vivid and attractive GUI." | x | |
| 49 | Relative Evaluation Report on S1, iPhone, 3/2/10 (Translated) | SAMNDCA00203880 - 4010, at '4006 and '4010 | Samsung | After comparing iPhone and i9000 icons, directions for improvement include " change replicate icons and select and use highly intuitive icons" and "eliminate the feeling that the iPhone s menu icons were copied." | x | |
| 50 | Email from Kim Ah-young RE Octopus 3/17 Report Result, 3/17/10 (Translated) | SAMNDCA00507826 - 7827 | Samsung | "Summary of confirmed issues and comments during this morning s report by the general business manager: …. 7. Packaging: Proceed with iPhone/Droid type" | x | |
| 51 | Expert Evaluation Result [Cell Phone], October '07 (Translated) | SAMNDCA00203092 - 3179, at '3137 | Samsung | Apple's Desire, Intrigue, and Delight scores are consistently higher than Samsung's. "There are more significant differences in "intrigue" and "**design** leadership." | x | |
| 52 | Competitive Tablets Product Experience: Form Factor & Display Size / Aspect Ratio validation Research Report, 8/28/11 | SAMNDCA00237976 - 8036, at '7978 | Samsung | Survey contain user preferences of tablets: "consumers ranked Apple iPad (41%), Galaxy Tab 10.1" (26%) and 8.9 (17%) as most preferred tablet based on overall preference, taking into consideration form factor AND display size." | | x |
| 53 | Critical Findings Brief: Competitive UX Evaluation of Atlas, Victory, Supersonic and Vegas with HTC Incredible and Apple iPhone 3GS | SAMNDCA00238251 - 8277, at '8254 | Samsung | "Overall, the iPhone 3GS was rated better than other devices in overall **design**, life needs and values, touchscreen, general usability and users satisfaction across the sessions." | x | |
| 54 | Email chain from Shoneel Kolhatkar, RE "Changes of Tablet Spec", 3/7/11 (Translated) | SAMNDCA00514511 - 4520, at '4512 | Samsung | In response to requests to change tablet specs, YK Yongki Min noted it was "intending the improvement of product competitiveness against i-PAD 2, to my understanding." | | x |
| 55 | Email chain between Yong II Lee and others, RE "About Galaxy Tab 10.1 Inch Introduction Strategy", 3/11/11 (Translated) | SANDCA00514571 - 4578, at '4576 | Samsung | Don Ju Lee:  "The bottom line is that our P3 should go head-to-head against i-Pad II [sic] this time.  First, the problem is strengthening the quality of the product. 1. We will proceed on the premise that the thickness of the P3 that is already in the process of being reviewed should be less than 8.8mm." | | x |
| 56 | North America P4(P7510 WiFi) BBY Retail Store Visit T/F Report, August 2011 | SANDCA10154003 - 4053, at '4013 | Samsung | Samsung conducted a survey of customer returns, and 15% were attributed to design, of which 4% was attributable to appearance alone. | | x |
| 57 | P5 Usability Evaluation Results - 4/9/11 (Translated) | SAMNDCA00176053 - 6171, at '6057 | Samsung | A major problem area "Legibility [for P5] is not good [as iPad 2] as the icon label is too small in proportion to the large screen." | | x |
| 58 | Competitor Analysis Design & Layout - 2009 GUI Framework, 04/2008 | SAMNDCA00228887 - 8933, at '8900, '8905, '8915 | Samsung | A side by side comparison of secondary icons from various phones, including the iPhone, is listed. In reviewing iPhone's secondary icons, "many icon metaphors are simple vector shapes which are easy to understand…. Icons are very ownable and can easily be identified as part of the Apple family." The reported recommended "maintaining a strong link between the visual style of main menu icons helps maintain a family feel." | x | |
| 59 | Competitor Analysis Design & Layout - 2009 GUI Framework, 04/2008 | SAMNDCA00228934 - 8980, at '8947, '8964, '8969, and '8979 | Samsung | A side by side comparison of the main menu layout and main menu icons is listed. The Apple iPhone's "iconography used is very ownable - even icons for third party applications or features seem very iPhone-like… Visual language of iconography fits into the overall Apple family identity." The report recommended "maintain consistent visual application of icon style within the brand." | x | |
| 60 | Analysis of Relative Strengths and Weaknesses P1 vs. iPad App, 4/20/10 (Translated) | SAMNDCA00203727 - 3768, at '3728 | Samsung | "P1 does have some strengths compared with iPad but also gives a stuffy feeling at the same time. The details on graphics are not enough to experience reality compared with iPad. Due to the lack of visual effects, fun factors are not enough, and usability is low. | | x |
| 61 | iPad vs. Honeycomb P5 UX Comparison of Competitiveness, 2/10/11 (Translated) | SAMNDCA00203811 - 3879, at '3878 | Samsung | "Compared with our own TouchWiz, P3 [Honeycomb] GED is in a disadvantageous position in terms of usability and intuitiveness. It requires tablet UI/UX that is optimized and comparable with iPad. The somewhat poor quality black UI causes inconvenience, degrading visibility and readability…. Menu offering method, pop-up menu location, coherence of icon  and unity are low." | | x |
| 62 | The Cambridge Group - Developing an Optimized Positioning Strategy for Samsung's U.S. Mobile Phone Business, Positioning Strategy Recommendation. Final Report. 1/30/07 | SAMNDCA00249029 - 9120, at '9046 and '9049 | Samsung | The Cambridge Group notes that the iPhone "will affect consumer expectations for **design**, user interface and presumably cell phone music capabilities." the report also notes that reviewers are "most impressed with the uniqueness of the form…." | x | |
| 63 | European Telecommunication Operation P5 vs. iPad 2, 5/18/11 | S-ITC-010617659 - 7694, at '7663 | Samsung | The P5 "Icons are too small and too close to each other," while the iPad 2 "icons are big and the gap between the applications are ideal." | | x |
| 64 | Acme, July 2008 | SAMNDCA10275576 - 5646, at '5593 | Samsung | "Overall, they were quick to compare it to the iPhone. Uniformly, people felt Acme was a copy of the iPhone." | x | |

Apple Inc. v Samsung Electronics Co., LTD., et al.

Demand for Design Patents and Trade Dress

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 65 | Global Evaluation Criteria For Tier 1 **Design** | SAMNDCA00221705 - 1818, at '1708, '1709, '1713, '1718 | Samsung | "Research suggests that brands that engage people emotionally can command prices as much as 20% to 200% higher than competitors', and sell in far higher volumes." "Samsung products were considered commodities. Samsung focus was on low cost manufacturing. Samsung products provided good value at low cost. But people neither loved nor respected the Samsung brand or its products." "Now Samsung must move from a well respected brand to a brand whose products are designed to make people love them…. This also necessitates moving from **design** as an expression of only form and function to designing an emotional, multi-sensory experience for the consumer." "We must add a higher level of inspired and inspiring **design**. **Design** cannot be only  focused on the traditional role of the invention of new product architectures and the elegant expression of contemporary forms in conjunction with improved ease of use. This is not only because conventional **design** standards have been raised by all of the major competitors but because this type of **design**, no matter how good, is not longer sufficiently engaging. For design to emotionally engage the consumer and command the attention of media, one must love to **design** as theater.  This type of design is based upon the stimulation of all of the senses, the creation of mystery and the engagement of the viewer and user in a more intimate relationship." | x | |
| 66 | Agenda [table of contents in Korean] | SAMNDCA10809734 - 9875, at '9838 - '9840 | Samsung | "Start with materials…. Iconic Beauty that others cannot easily copy. Cost Innovation that makes bigger profit. Value creator that maximizes product concept." On the next slide, it shows the iPhone. | x | |
| 67 | '10 US Archetype Design Input, 10/23/08 | SAMNDCA10202899 - 2983, at '2925 | Samsung | "Touch device is being positioned as a premium phone… stylish and characteristic **design** for touch device is needed…. Stylish touch phone need to focus on the **design** itself to appeal self-esteemed people. With the design identity, large screen, easily usability, and multimedia functionality will be weighed in as a state of the art device." | x | |
| 68 | Feasibility Review on Standalone AP Business for Smart Phone Market (Untranslated document) | SAMNDCA00809390 - 9460, at '9402 | Samsung | "Our research has identified four key factors that we expect will shape handsets in the coming five years. Those factors are: 1. the iPhone…." | x | |
| 69 | Touch Portfolio, Rollout Strategy, 12/17/08 | SAMNDCA00191811 - 1987, at '1830, '1838, '1841, '1842 | Samsung | "Pundits tell us that the iPhone is a revolution…. 'Apple Inc's iPhone… widely hailed for its beauty and functionality….' -Walter Mossberg" "The iPhone has delivered on the promise of touch, permanently altering a consumer's mental model of a mobile phone across key product dimensions. [**Design** is shown as a dimension]." "The iPhone is in some ways 'undesigned' but its strong ,screen-centric **design** has come to equal what's on trend and cool for many consumers." "For State of the Art, Apple has overtaken Samsung as the most stylish brand overall." | x | |
| 70 | Final Report - i920 Usability Test & iPhone Benchmarking - UT1, 9/25/09 | S-ITC-009302888 - 2969, at '2894 | Samsung | "When [Omnia II] compared with the iPhone, it fell short in some cases, and was on par in others. The main advantage of the iPhone was its perceived simplicity." | x | |
| 71 | Email chain from Sang Hung to YK Tongki Min, et al. RE Competitive Touch UX design consumer usability report, 12/4/09 | SAMNDCA10175266 - 5267 | Samsung | Findings of the final report on competitive touch UX **design** between the iPhone 3GS and other phones include "home screen preference - iPhone 3GS has the highest ranking…. We should use iPhone 3GS (for the time being until another best-of-the-class in usability) as benchmark/goal for improvement in any of our products.  In the Android platform, we will want to make sure any of the enhanced **designs** should at least match the default UX supported by the platform through user-centered research and consumer usability testing…." | x | |
| 72 | Winning in Smartphones - It's now or never, by McKinsey&Co, 12/10/09 | SAMNDCA10807316 - 7387, at '7358 | Samsung | Strategic plays for Samsung include, "UI on par with iPhone…. Match the iPhone UI within the next 12 months." | x | |
| 73 | Support to STA's Counter-Apple Strategy, Mercator Partners, 9/18/08 | SAMNDCA10036081 - 6204, at '6089, '6094, '6103, '6106 | Samsung | "The iPhone is in direct competition with a large number of Samsung devices (Form Factor view)" "Apple (in combination with RIM) is creating a growing threat to Samsung's market share." "State-of-the-Art were driven by the Apple brand and **design**." "iPhone segments are very distinct in terms of why they bought the iPhone…" under State-of-the-art, "Key buying factors - high on **Design** & Appearance." "Recommendation #1 - Contain Apple by 'encircling the iPhone' through systematically targeting the under-served needs of different iPhone segments" an arrow points to "State-of-the-art = Style + Apple - Price." | x | |
| 74 | Results of Global Segmentation 2.0 Study, Mobile Marketing Group / Strategy & MI party, March 2010 | SAMNDCA00196646 - 6827, at '6658 | Samsung | "Changes in high-end consumers' awareness of styles" include: "focus not only on the external design but on the UX **design** and usability." "Customized **Design**" points to "Personalized Experience" "Recognize touch screen as the best tool to ensure intuitiveness/style/visibility." "Style = In & Out + Trendy + Latest."  Same slide also depicts different pictures of the iPhone. | x | |
| 75 | Samsung Mobile Philosophy, Analysis of Survey Results, Mobile UX Group Samsung Electronics, 8/13/07 | SAMNDCA 00217372 - 7388, at '7380 | Samsung | Samsung is compared with Apple and Sony. Apple is described as "simple, innovation, new, easy, minimal" and Samsung as "techy, balance, wide & deep, reason & feeling, absence of consistency." | x | |

Apple Inc. v Samsung Electronics Co., LTD., et al.

EXHIBIT 24

**Demand for Design Patents and Trade Dress**

| # | Document Description | Bates Number | Party | Comment | Smartphone | Tablets |
|---|---|---|---|---|---|---|
| 76 | Final Report, Galaxy S Market Response Survey (US), October 6 | SAMNDCA 00521309 - 1396, at '1316, '1318, '1374 | Samsung | "Vibrant users value the product's features over the product's brand and **design**.... There were not many Apple users who purchased Samsung products. In contrast, many Samsung users purchased Apple products subsequently." "Brand and **Design** were the main reasons consumers purchased the iPhone 4, which is the main competing product to Samsung Phones." **Design** is the fourth most important reason for buying the Samsung Vibrant. | x | |
| 77 | 3G iPhone Counter Plan, 6/14/08 | SAMNDCA00251457 - 1505, at '1460 | Samsung | iPhone has "Innovative UI," "touch screen," and "focusing emotional benefits." | x | |
| 78 | iPhone 3G UX Analysis, 7/12/08 | SAMNDCA00251538 – 1565, at '1561 | Samsung | iPhone strengths include "user friendly", "usability", "touch-screen", and "cool factor." "While it has no immediate competition in terms of usability and style, it [iPhone] will undoubtedly create a world of copycat products and competitors. Competitors' new technologies, business model and/or creative user interface have been and will be launched to compete with iPhone." | x | |
| 79 | Design Strategy of Apple, Concept Planning Unit, 3/16/11 | SAMNDCA10808165 - 8199, at '8174 and '8175 | Samsung | Samsung outlines iPhone and iPad **design** history. | x | x |
| 80 | Touch Devices Browser User Experience Best Practices, STA UX, 2/13/09 | SAMNDCA10166661 - 6742, at '6683 | Samsung | "Apple iPhone browser url/search UX provides one of the best reference **designs** in the market." | x | |
| 81 | "Premium & Mass Design Preference Study" | SAMNDCA00176172 - 6202, at '6178, '6192 | Samsung | "iPhone [Korean text] = Premium/[Korean Text]" The "Most Trendy" phone is the iPhone 3GS and 4. "It's simple, it looks like it's more skinny and it's enough space to navigate it. It's everything that you need in a phone." | x | |
| 82 | Email from Nandakumar Ramachandran, 11/16/09 RE: Competitive Intelligence on 2010 TMO Android Product Roadmap against Samsung 2H10 Android Product Roadmap Strategy for TMO | SAMNDCA10410283 - 0293, at '0283 | Samsung | "iPhone 3GS still scored best across virtually all the tasks tested (and in some cases by a wide margin), the home screen **design** and the general interaction **design**." | x | |

**Sources/Notes:**
1/ (a) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q4, APLNDC-X0000006548 - 6647, at '6566 and '6620;
   (b) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q3, APLNDC0000036172 - 6265, at '6189 and '6238;
   (c ) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q2, APLNDC0000036266 - 6348, at '6293;
   (d) iPhone Buyer Survey, Apple Market Research & Analysis, FY11 - Q1, APLNDC-Y0000027341 - 7422, at '7362;
   (e) iPhone Buyer Survey, Apple Market Research & Analysis, FY10 - Q4, APLNDC-Y0000027256 - 7340, at '7277.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Demand for Utility Patents**

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Deposition of Tamara Whiteside, Worldwide Advertising Manager at Apple, 2/28/12 | N/A | P. 124 | Apple | Scroll or Gesture/Zoom and Refocus/Multi-touch | Multi-touch is focused on because "it's the way that you interact with the product...you can pinch to zoom in or out, tap to zoom." There are "various ways that you can interact with this product that are unique to it." | | x | x | x |
| 2 | Deposition of Tamara Whiteside, Worldwide Advertising Manager at Apple, 2/28/12 | N/A | P. 158 | Apple | Bounce Effect | Apple featured the bounceback functionality in ads because "nobody else had...the ability to do that in their software." | x | | | |
| 3 | Deposition of Eric Jue, Product Line Manager for iPod at Apple, 2/24/12 | N/A | P. 49 | Apple | Bounce Effect | "Q Do you think the bounceback feature was revolutionary? A Absolutely" | x | | | |
| 4 | "Apple iOS - Powering the Mobility Revolution", BernsteinResearch | APL-ITC796-0000071960 - 2051 | APL-ITC796-0000071990 | Apple | Multi-touch | "Apple has pioneered multi-touch and focuses on ease-of-use of the phone (for example, the 3 MP camera in the iPhone 3GS wasn't cutting-edge, but featured revolutionary user functionality such as touch-to-focus)." | | | | x |
| 5 | iPad Buyer Survey  Initial US Results, August 2010 | APLNDC-Y0000023361 - 3427 | APLNDC-Y0000023387 | Apple | Multi-touch | When asked what was the most important features that prompted purchase of an iPad, multi-touch was the most important reason for 2% of those surveyed (4% choose this feature as second-most important, and 3% choose as third-most important). | | | | x |
| 6 | Exhibit 6 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0 01; 0 19 | Apple | Scroll or Gesture | Scrolling function is shown during commercial for the iPhone. | | x | | |
| 7 | Exhibit 8 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0 01; 0 11; 0 17 | Apple | Scroll or Gesture | Scrolling function is shown during commercial for the iPhone 3G. | | x | | |
| 8 | Exhibit 10 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0 06 0 14; 0 20 | Apple | Scroll or Gesture/Zoom and Refocus/Multi-touch | In the commercial for the iPhone 4, double tap feature is shown once; pinch to zoom feature is shown multiple times. | | x | x | x |
| 9 | Exhibit 19 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/1/11 | N/A | 0 01 0 10; 0 15; 0 26 | Apple | Scroll or Gesture/Multi-touch | In the commercial for the iPad, multi-point touch feature shown; scrolling function is shown during commercial. | | x | | x |
| 10 | Exhibit 29 to Declaration of Sissie Twiggs, Director of Worldwide Advertising at Apple, 7/27/11 | N/A | p.66 | Apple | Scroll or Gesture | "Touching is Believing"  advertisement depicting the ease of use of iPhone with its touchscreen feature. | | x | | |
| 11 | DJ Koh Review - 3/16/11 | SAMNDCA00236805 - 6847 | SAMNDCA00236817 | Samsung | Scroll or Gesture/Multi-touch | Mentions iPad 2 rumors "expect thinner, lighter device" with "new multi-touch gestures." | | x | | x |
| 12 | Latest Mobile Phone Usage and Satisfaction Survey - T-Mobile Vibrant MRS Questionnaire | SAMNDCA00247578 - 7604 | SAMNDCA00247594 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Survey asks if the Samsung Vibrant is "easy to use with multi-touch function (lets you enlarge/minimize everything using only your fingers)" | | x | x | x |
| 13 | VZW "SCH-i905(P4_LTE)" - Product Planning Group 3/31/2011 | SAMNDCA00522001 - 2025 | SAMNDCA00522009 | Samsung | Multi-touch | Mentions Samsung P4 LTE  is "Easy and Fast to Use" with "10 Finger Multi-touch" | | | | x |
| 14 | Samsung Equaliser - UX Forecast 2012-13 | SAMNDCA00190881 - 1029 | SAMNDCA00190971 | Samsung | Scroll or Gesture | Document mentions increase in input methods (such as scrolling on an iPhone) as a trend in mobile platforms | | x | | |
| 15 | Touch Portfolio - Rollout Strategy - Recommendation Based on Consumer Insight - 12/17/08 | SAMNDCA00178021 - 8112 | SAMNDCA00178036 SAMNDCA00178056 | Samsung | Bounce Effect/Scroll or Gesture | Survey shows consumers are concerned about "accidental touches" and "lack of pinpoint control" on their touch screens; Survey found touch gestures and the "bounce" feature as "fun" and "whimsical" features of the iPhone | x | x | | |
| 16 | Touchscreen Mobile Browsers  Best Practice Guidelines and Browser Evaluations - November 2009 | SAMNDCA00190046 - 0093 | SAMNDCA00190053 | Samsung | Scroll or Gesture/Zoom and Refocus | The iPhone "meets user needs very well for zooming." | | x | x | |
| 17 | ARIES (GT -i8700) Product Proposal Document 12/14/2009 | S-ITC-001012125 - 2139 | S-ITC-001012133 | Samsung | Zoom and Refocus/Multi-touch | Document mentions "Multi-touch" and "One Finger Zoom" as part of the "Cutting-Edge Technology" selling point. | | | x | x |
| 18 | Analysis of Galaxy tab Operation Speed and Screen Effects (Translated) | SAMNDCA00201771 - 1780 | SAMNDCA00201772-1780 | Samsung | Bounce Effect | Document compares Galaxy Tab's Bounce feature to the iPad's. Bounce effect is listed as unemotional in several areas. | x | | | |
| 19 | VZW News Release - 6/28/10 | SAMNDCA00312249 - 2251 | SAMNDCA00312250 | Samsung | Scroll or Gesture/Zoom and Refocus | Samsung Fascinate features "advanced touch screen gesture capabilities", including different zoom methods  and horizontal swiping. | | x | x | |
| 20 | Verizon Wireless Weekly Report - Week 38 - 9/26/11 | S-ITC-005218927 - 8984 | S-ITC-005218936 | Samsung | Bounce Effect | Document states that VCAST apps in Model I510 (Droid Charge) have bounce effect. | x | | | |
| 21 | Samsung Epic 4G, America's First 4G-Capable Phone with Slide-out QWERTY Keyboard and Brilliant Super AMOLED Touchscreen, Coming to Sprint - 6/28/10 | SAMNDCA00312245 - 2251 | SAMNDCA00312246 | Samsung | Scroll or Gesture | Samsung Epic 4G "supports a series of advanced touch screen gestures including multi-touch pinch" and "vertical and horizontal swiping." | | x | | |
| 22 | Samsung Mobile and U.S. Cellular Announce Availability of the Samsung Mesmerize, a Galaxy S Smartphone, at CTIA Enterprise & Applications - 10/6/10 | SAMNDCA00312263 - 2266 | SAMNDCA00312264 | Samsung | Scroll or Gesture | Samsung Mesmerize "supports a series of advanced touch screen gestures including multi-touch pinch" and "vertical and horizontal swiping" | | x | | |
| 23 | AT&T and Samsung Mobile Announce Upcoming Availability of the Samsung Captivate, a Galaxy S Smartphone - 6/17/10 | SAMNDCA00312274 - 2279 | SAMNDCA00312275 | Samsung | Scroll or Gesture | Samsung Captivate "supports a series of advanced touch screen gestures including multi-touch pinch" and "vertical and horizontal swiping." | | x | | |
| 24 | Samsung Gem(SCH-i100) Sales Point | SAMNDCA10173553 - 3573 | SAMNDCA10173564 - 3565 | Samsung | Scroll or Gesture/Multi-touch | Document states "multi-touch enhances type accuracy" and that "pinch-zoom enabled android browser can give convenience while browsing." | | x | | x |

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                                    EXHIBIT 25

**Demand for Utility Patents**

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 25 | Samsung 'THOR' '11 Hero Proposal - 7/12/10 | SAMNDCA10138344 - 8429 | SAMNDCA10138389 | Samsung | Scroll or Gesture | Document states "Touch is History - Gesture Input is Innovative." | | x | | |
| 26 | Competitor Benchmarking Samsung Qbowl 09/07 | SAMNDCA00219766 - 9880 | SAMNDCA00219878 | Samsung | Scroll or Gesture | Document recommends that "traditional scroll bar aesthetics is not used but the iPhones' scrolling mechanism instead." | | x | | |
| 27 | Mobile Internet User Research - 1/18/08 | SAMNDCA00220591 - 0672 | SAMNDCA00220603 | Samsung | Scroll or Gesture | Document states the iPhone's "Zoom and Scroll are simple and intuitive using finger gestures." | | x | | |
| 28 | Samsung Galaxy Tab Official Commercial (http://www.youtube.com/watch?v_GHPJdqgsJ9g) | N/A | 0 14 | Samsung | Scroll or Gesture | Scrolling function is shown in commercial for the Galaxy Tab. | | x | | |
| 29 | Time to Tab - Samsung Galaxy Tab 10.1 Global TV Commercial (http://www.youtube.com/watch?v_QL8ePbYsdc8) | N/A | 0 04 | Samsung | Scroll or Gesture/Multi-touch | Pinch to zoom and scrolling features are shown in the commercial for the Galaxy Tab 10.1. | | x | | x |
| 30 | Introducing the Samsung Galaxy Tab - It's Go Time! (http://www.youtube.com/watch?v_yGKthibnyTE) | N/A | 0 09 | Samsung | Scroll or Gesture | Scrolling function is shown in commercial for the Galaxy Tab. | | x | | |
| 31 | Samsung Continuum - A Galaxy S Phone (Verizon) (http://www.youtube.com/watch?v_Kii32R3yciY) | N/A | 0 30; 1 12 | Samsung | Scroll or Gesture | Scrolling function is shown for the Galaxy S - Continuum. | | x | | |
| 32 | Samsung Mobile USA, [Jo Videos] Samsung Galaxy S II Tips & Tricks - Email (http://www.youtube.com/watch?v_EhwW3cjsbAM&list PL806411CFD33597A3&feature_plcp&context_C337f15fP DOEgsToPDskIFii7kLJB29rSJhGXwKf67) | N/A | 1 08 | Samsung | Scroll or Gesture/Multi-touch | Pinch to zoom and scrolling features are shown in the commercial for the Galaxy S II. | | x | | x |
| 33 | [GALAXY Tab 10.1] Official Demo - HD (http://www.youtube.com/watch?v_7tfX3Vlz0nI&feature_related) | N/A | 0 51<br>3 49; 4 00<br>8 32 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | In the commercial for Galaxy Tab 10.1, pinch to zoom and scrolling features are shown; tap to zoom and navigate feature shown. Tablet design is described as "revolutionary." | | x | x | x |
| 34 | [GALAXY S II] Official Live Demo - Viewing (http://www.youtube.com/watch?v_LP38KF-LR0U&feature_BFa&list_PL3F63929F54D9A90A&lf_plpp_video) | N/A | 0 24<br>1 01 | Samsung | Scroll or Gesture/Multi-touch | In the commercial for the Galaxy S II, pinch to zoom and scrolling features are shown. | | x | | x |
| 35 | Samsung Galaxy S II Presentation | SAMNDCA10775587 - 5624 | SAMNDCA10775607 | Samsung | Scroll or Gesture/Zoom and Refocus | Diagrams showing "a double tap and tilt of the device will zoom in and out" and "Tap and Pan will move the user from widgets to menus." | | x | x | |
| 36 | P5 Usability Evaluation Results - 4/9/11 (Translated) | SAMNDCA00176053 - 6171 | SAMNDCA00176125 | Samsung | Bounce Effect | Samsung notes their current browser has no Bounce effect, and for the iPad, "there is an element of Fun from the natural Bounce effect following hand movements." There is a text screen noting that the GA Lab Evaluation will evaluate the Bounce effect. | x | | | |
| 37 | WOW Project - July 2007 (Translated) | SAMNDCA00202212 - 2225 | SAMNDCA00202221 | Samsung | Multi-touch | Samsung compares the Samsung Optical Joystick, with 'Multi Touch' next to an Apple logo. | | | | x |
| 38 | Relative Evaluation Report on S1, iPhone, 3/2/10 | SAMNDCA00203880 - 4010 | SAMNDCA00203909, '3928, and '3944 | Samsung | Scroll or Gesture/Zoom and Refocus | After comparing the web browser of the i9000 and iPhone, Samsung notes iPhone's drag and Double Tap feature, and recommend "add various features that a user can easily notice such as up/down transitions." | | x | x | |
| 39 | 3G iPhone US Market Impact, July 2008 | SAMNDCA00251506 - 1512 | SAMNDCA00251508 and '1513 | Samsung | Multi-touch | Two options to deal with the iPhone "Option 1 match the iPhone on mainly one dimension (product)... Option 2 match the iPhone on multiple dimensions." Under the Samsung short/medium term plan for Product, under User Interface, it lists "Multi Finger Touch." | | | | x |
| 40 | Behold3 Usability Evaluation Results, 5/10/10 (Translated) [Chung Exhibit B] | SAMNDCA00508318 - 8411 | SAMNDCA00508344, and '8383 | Samsung | Bounce Effect/Scroll or Gesture | On the Behold3, "unintentional unlocking is possible because the sliding action works on any part of the screen." The document also notes that when "a web page is dragged to the bottom edge or the sides, no effects are provided and the overall feel is plain." | x | x | | |
| 41 | Email from Jaegwan Shin to Ioi Lam et al., RE" "[P1 Browser] Request for Implementation of Additional Effects", 10/6/10 (Translated) | SAMDCA00525347 - 5349 | SANDCA00525347 | Samsung | Bounce Effect | Samsung HQ requested for the implementation of the Bounce effect "HQ is asking us to make it for P1 project.... 3. There is no bounce effect in Browser screen." | x | | | |
| 42 | Email from Sangwook Han of Nemustech to Seungyun Lee of Samsung RE "[List Bouncing] Questions regarding bouncing", 10/28/10 (Translated) | SAMNDCA10850604 - 0607 | SAMNDCA10850604 | Samsung | Bounce Effect | "With regards to bounce, we used Mass Spring Damper model which followed the actual physical effect and obtained the bounce effect that is similar to iPad. " | x | | | |
| 43 | Email from Sangwook Han of Nemustech to Seungyun Lee of Samsung RE "[Tiffany Effect] P1 Application Case / Additional Review Items Inquiry", 7/21/10 (Translated) | SAMNDCA10850822 - 0824 | SAMNDCA10850822 | Samsung | Bounce Effect | "There is a request to insert Bouncing in GridView." | x | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 25

Demand for Utility Patents

| # | Title of Document | Bates Beg - End | Page in Document | Party | Relevant Patent or Feature | Comments on Utility | '381 | '915 | '163 | '607 |
|---|---|---|---|---|---|---|---|---|---|---|
| 44 | Email from Jaegwan Shin to Arum Kumar et al., RE "P4 Browser Touch performance problems", 5/7/11 | SAMNDCA00201351 - 1356 | SAMNDCA00201351 - 1523 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | HQ reported problems regarding "2. Scroll not respond…. 3. Touch performance fail.. 1) Pinch zoom in  focus time slow than iPad 2; 2) Double Tap  zoomout time is slow than iPad 2. 4. While Scroll/DoubleTap, checkboarder is showing too much vs iPad 2." | | x | x | x |
| 45 | Email from Jaegwan Shin to Ioi Lam et al., RE "[San Jose] Request for update of P5/P4 zoom/scroll progress", 4/19/11 (Translated) | SAMNDCA00229399 - 9409, SAMNDCA00229410 | SAMNDCA00229399, and '9410 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Performance test results after applying patch for scroll/zoom on P5 benchmarked against various models of the iPad. | | x | x | x |
| 46 | GT-P7500/P7510_Browser_Touch Performance Test (Translated) | SAMNDCA00229410 - 9415 | SAMNDCA00229410 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Browser Touch Performance Test of P7510 benchmarked against various models of the iPad. | | x | x | x |
| 47 | Email chain between Ioi Lam and Jaegwan Shin, RE "U1 browser scrolling patch", 3/3/11 | SAMNDCA00229440 - 9448 (chart shown more clearly on SAMNDCA00229449 - 9451) | SAMNDCA00229440 - 9442 (chart shown more clearly on SAMNDCA00229449 - 9451) | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | "Here is some test result from HW regarding zoom/scroll. As we has been asked, HQ wants us to improve initial response for zoom especially." Email then lists results for Pinch Zoom, Scroll, and DoubleTap between the i9100, Optimus 2x, and iPhone4. | | x | x | x |
| 48 | Email chain between Jaegwan Shin and Ioi Lam et al., RE "[San Jose - Urgent] [U1] zoom/scroll performance", 3/20/11 (Translated) | SAMNDCA00229396 - 9397 | SAMNDCA00229396 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | HQ requested for various performance improvements regarding the zoom in and scrolling feature. | | x | x | x |
| 49 | i900 Improvement Points | SAMNDCA10042955 - 2984 | SAMNDCA10042979 and '2981 | Samsung | Scroll or Gesture | On the SMS-manager and Contact list overview, it is noted "scrolling up/down by vertical finger dragging (just like it is realized on iPhone)." | | x | | |
| 50 | European Telecommunication Operation P5 vs. iPad 2, 5/18/11 | S-ITC-010617659 - 7694 | S-ITC-010617661 and '7691 | Samsung | Scroll or Gesture | The P5 "touch respond is slow, especially, if you scroll fast, it follows the fingers with delay." | | x | | |
| 51 | Acme, July 2008 | SAMNDCA10275576 - 5646 | SAMNDCA10275618 | Samsung | Scroll or Gesture | "…the up and down scrolling action is seen as fun…." | | x | | |
| 52 | Browser Zooming Methods UX Exploration Study, 4/17/09 | SAMNDCA11104115 - 4139 | SAMNDCA11104133, '4134, '4138 | Samsung | Zoom and Refocus | "The most preferred method is "Double-Tap" Zooming… Simplicity is the primary reason of the choice." "The least preferred methods were split between u960 Browser and TouchWiz designs." "Too many steps…""dislike of long press, perception of reliability issues and complicated interactions were reasons given…." "Suggestions - Adopt Double-Tap as a supplementary zooming method… the UX of iPhone can be used as a design reference… Apply double-tap method consistently in other applications supporting zoom……." | | | x | |
| 53 | Touch Devices Browser User Experience Comparison, November 2008 | SAMNDCA11082242 - 2299 | SAMNDCA11082273 | Samsung | Multi-touch | Document compares the Browser functionality across several different phones. "Rendering is among the most accurate among all browsers with dynamic magnification and reduction with multi-touch." | | | | x |
| 54 | Apple iPad (untranslated document), 1/28/10 | SAMNDCA10806707 - 6720 | SAMNDCA10806713 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | Diagrams showing the iPad with Panning, Pinching and Double Tap features. | | x | x | x |
| 55 | Email from Seung Yun Lee to Meeso Kim et al., RE "Today's Conference Call - Action Items", 10/12/10 | SAMNDCA00533366 - 3373 | SAMNDCA00533366 | Samsung | Bounce Effect | "List Bouncing effect is applied to all the applications." | x | | | |
| 56 | Touch Devices Browser User Experience Best Practices, STA UX, 2/13/09 | SAMNDCA10166661 - 6742 | SAMNDCA1016698, '6708, '6721 | Samsung | Scroll or Gesture/Zoom and Refocus/Multi-touch | "Touch screen is very responsive and accurate." "Multi-touch user interface is a competitive advantage for finger touch interaction design." "There is no widget needed to zoom in and out - users interact with screen objects directly." "Scrollbars appear when scrolling but will time out quickly after." | | x | x | x |
| 57 | 3G iPhone Counter Plan, 6/14/08 | SAMNDCA00251457 - 1505 | SAMNDCA00251472, '1473, '1503 | Samsung | Multi-touch | In a product competitive chart, "What is inferior? Less sophisticated User Interface.. No multi-touch UI." Instinct Action Item, "Touchwiz UI." Product competitive analysis for the OMNIA also includes "no multitouch UI." | | | | x |
| 58 | iPhone 3G UX Analysis, 7/12/08 | SAMNDCA00251538 – 1565 | SAMNDCA00251545 | Samsung | Scroll or Gesture | Shows screenshots of the iPhone "sweep horizontally and delete email." | | x | | |
| 59 | Email chain between Jee Won Lee and others, RE Q1] Email Body, 8/17/11 | SAMNDCA10524415 - 4420 | SAMNDCA10524416 | Samsung | Gesture | "The tablet team will check with the development team to see if the technoloy identical to that of the iPad (lining-up within the screen without scrolling left-to-right in test view/ fit to screen in the image web view) to email that is fit to screen." | | x | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 26

**iPhone Capacity Analysis**

| | BOH | FYQ2'10 | FYQ3'10 | FYQ4'10 | FYQ1'11 | FYQ2'11 | FYQ3'11 | FYQ4'11 | FYQ1'12 |
|---|---|---|---|---|---|---|---|---|---|
| Units Sold | 2/ | | | | | | | | |
| Total | | 7,089 | 7,900 | 14,103 | 16,234 | 18,648 | 20,337 | 17,073 | 37,049 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 202 of 245
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 27

## iPad Capacity Analysis

| | FYQ3'10 | FYQ4'10 | FYQ1'11 | FYQ2'11 | FYQ3'11 | FYQ4'11 | FYQ1'12 |
|---|---|---|---|---|---|---|---|
| Units Sold 2/ | | | | | | | |
| Total | 3,270 | 4,187 | 7,303 | 4,651 | 9,184 | 11,092 | 15,289 |



EXHIBIT 28

# 26% of Phone Purchasers Chose a New Carrier



Most Recently Purchased Cell Phone

Q. Which of the following statements best describes your most recently purchased cell phone? (Total Respondents=2961)
Source: Google/Compete Wireless Shopper 2.0 Study, January 2010.



Google Confidential and Proprietary

**Source**: ThinkTech with Google Presentation, "Wireless Shoppers 2.0 How Consumers Shop for Wireless Phones Google Compete Clickstream and Survey Based Study. U.S. Feb 2010," pp. 6.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                          **EXHIBIT 29**

## Mor-Flo Analysis - Smartphones

| (Units in Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Smartphone Market Share** 1/ | | | | | | | | |
| Apple Units Sold | 2,550 | 2,772 | 4,924 | 3,776 | 6,830 | 6,256 | 4,807 | 14,757 |
| *Apple Market Share %* | *20.2%* | *19.3%* | *23.7%* | *17.2%* | *29.5%* | *24.7%* | *20.0%* | *45.3%* |
| | | | | | | | | |
| Samsung Units Sold | 720 | 714 | 2,950 | 2,750 | 2,328 | 3,750 | 4,597 | 6,251 |
| *Samsung Market Share %* | *5.7%* | *5.0%* | *14.2%* | *12.5%* | *10.1%* | *14.8%* | *19.2%* | *19.2%* |
| | | | | | | | | |
| Other Manufacturer Units Sold | 9,383 | 10,873 | 12,933 | 15,409 | 14,001 | 15,341 | 14,595 | 11,561 |
| *Other Manufacturer Market Share %* | *74.2%* | *75.7%* | *62.2%* | *70.2%* | *60.5%* | *60.5%* | *60.8%* | *35.5%* |
| | | | | | | | | |
| Total Market Units Sold | 12,653 | 14,359 | 20,806 | 21,935 | 23,158 | 25,347 | 23,999 | 32,569 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | | |
| **Samsung Accused Smartphone Unit Sales to Be Deducted** 2/ | | | | | | | | |
| Samsung Accused Unit Sales | - | 125 | 2,672 | 2,326 | 1,998 | 4,698 | 2,949 | 2,317 |
| *% of Samsung IDC Estimates* | *0.0%* | *17.5%* | *90.6%* | *84.6%* | *85.9%* | *125.3%* | *64.2%* | *37.1%* |
| *% of Total Market* | *0.0%* | *0.9%* | *12.8%* | *10.6%* | *8.6%* | *14.8%* | *12.3%* | *7.1%* |
| | | | | | | | | |
| **Smartphone Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | 2,550 | 2,772 | 4,924 | 3,776 | 6,830 | 6,256 | 4,807 | 14,757 |
| *Apple Market Share %* | *20.2%* | *19.5%* | *27.1%* | *19.3%* | *32.3%* | *29.0%* | *22.8%* | *48.8%* |
| | | | | | | | | |
| Samsung Units Sold | 720 | 589 | 278 | 424 | 329 | - | 1,648 | 3,934 |
| *Samsung Market Share %* | *5.7%* | *4.1%* | *1.5%* | *2.2%* | *1.6%* | *0.0%* | *7.8%* | *13.0%* |
| | | | | | | | | |
| Other Manufacturer Units Sold | 9,383 | 10,873 | 12,933 | 15,409 | 14,001 | 15,341 | 14,595 | 11,561 |
| *Other Manufacturer Market Share %* | *74.2%* | *76.4%* | *71.3%* | *78.6%* | *66.2%* | *71.0%* | *69.3%* | *38.2%* |
| | | | | | | | | |
| Total Market Units Sold | 12,653 | 14,234 | 18,135 | 19,610 | 21,160 | 21,597 | 21,050 | 30,252 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ IDC Worldwide Quarterly Mobile Phone Tracker, Q4 2011 Final Data, tab "Historical Pivot" (APLNDC-Z0000000001). Data was filtered by setting Country to "USA" and Device Type to "Smartphone."

2/ See Exhibit 37.

3/ Smartphone Market Share after Mor-Flo is calculated after subtracting accused Samsung smartphone units from the Samsung units in the market. For 2011 Q2, there are more Samsung accused smartphone units than IDC estimates, thus Samsung units sold after the deduction of accused units was changed to 0 (from a negative units calculation).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 30**

## Mor-Flo Analysis - Tablets

| (Units in Thousands) | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|
| **Tablet Market Share** 1/ | | | | | | | |
| Apple Units Sold | 2,217 | 1,957 | 3,606 | 1,941 | 4,308 | 3,791 | 6,173 |
| *Apple Market Share %* | *96.8%* | *79.1%* | *75.0%* | *71.2%* | *73.0%* | *60.0%* | *73.7%* |
| | | | | | | | |
| Samsung Units Sold | - | - | 560 | 235 | 121 | 135 | 166 |
| *Samsung Market Share %* | *0.0%* | *0.0%* | *11.6%* | *8.6%* | *2.1%* | *2.1%* | *2.0%* |
| | | | | | | | |
| Other Manufacturer Units Sold | 72 | 518 | 643 | 551 | 1,473 | 2,392 | 2,036 |
| *Other Manufacturer Market Share %* | *3.2%* | *20.9%* | *13.4%* | *20.2%* | *25.0%* | *37.9%* | *24.3%* |
| | | | | | | | |
| Total Market Units Sold | 2,289 | 2,476 | 4,809 | 2,728 | 5,901 | 6,318 | 8,375 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

| | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|
| **Samsung Accused Tablet Unit Sales to Be Deducted** 2/ | | | | | | | |
| Samsung Accused Unit Sales | - | - | 262 | 77 | 266 | 225 | 315 |
| *% of Samsung IDC Estimates* | *0.0%* | *0.0%* | *46.8%* | *32.8%* | *219.3%* | *166.3%* | *190.1%* |
| *% of Total Market* | *0.0%* | *0.0%* | *5.4%* | *2.8%* | *2.1%* | *2.1%* | *2.0%* |

| | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|
| **Tablet Market Share After Mor-Flo Adjustments** 3/ | | | | | | | |
| Apple Units Sold | 2,217 | 1,957 | 3,606 | 1,941 | 4,308 | 3,791 | 6,173 |
| *Apple Market Share %* | *96.8%* | *79.1%* | *79.3%* | *73.2%* | *74.5%* | *61.3%* | *75.2%* |
| | | | | | | | |
| Samsung Units Sold | - | - | 298 | 158 | - | - | - |
| *Samsung Market Share %* | *0.0%* | *0.0%* | *6.6%* | *6.0%* | *0.0%* | *0.0%* | *0.0%* |
| | | | | | | | |
| Other Manufacturer Units Sold | 72 | 518 | 643 | 551 | 1,473 | 2,392 | 2,036 |
| *Other Manufacturer Market Share %* | *3.2%* | *20.9%* | *14.1%* | *20.8%* | *25.5%* | *38.7%* | *24.8%* |
| | | | | | | | |
| Total Market Units Sold | 2,289 | 2,476 | 4,547 | 2,651 | 5,780 | 6,183 | 8,209 |
| *Total Market Share %* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ IDC Worldwide Quarterly Media Tablet Tracker, Q4 2011 , tab "Pivot Table" (APLNDC-Z0000000003). Data was filtered by
   'Product Category: Media Tablet' and 'Region: USA'.

2/ See Exhibit 38.

3/ Tablet Market Share after Mor-Flo is calculated after subtracting accused Samsung tablet units from Samsung units in the
   market. For 2011 Q2, 2011 Q3 and 2011 Q4, there are more Samsung accused tablet units than IDC estimates, thus Samsung
   units sold after the deduction of accused units was changed to 0 (from a negative units calculation).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                             **EXHIBIT 31**

## Smartphone Market Share by Carrier 1/ 2/

| Carrier & Manufacturer | | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|---|
| **AT&T** | Apple | 60% | 65% | 68% | 63% | 58% | 52% | 44% | 63% |
| | Samsung | 3% | 0% | 4% | 6% | 6% | 10% | 11% | 12% |
| | Others | 37% | 35% | 29% | 32% | 36% | 38% | 45% | 24% |
| | *AT&T Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Verizon Wireless** | Apple | 0% | 0% | 0% | 0% | 38% | 32% | 34% | 54% |
| | Samsung | 3% | 3% | 2% | 16% | 9% | 13% | 13% | 12% |
| | Others | 97% | 97% | 98% | 84% | 53% | 55% | 53% | 34% |
| | *Verizon Wireless Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **T-Mobile** | Apple | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| | Samsung | 6% | 4% | 13% | 15% | 15% | 28% | 33% | 45% |
| | Others | 94% | 96% | 87% | 85% | 85% | 72% | 67% | 55% |
| | *T-Mobile Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Sprint** | Apple | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 36% |
| | Samsung | 21% | 22% | 39% | 28% | 25% | 42% | 41% | 32% |
| | Others | 79% | 78% | 61% | 72% | 75% | 58% | 59% | 32% |
| | *Sprint Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Other Carriers** | Apple | 0% | 0% | 0% | 0% | 0% | 1% | 1% | 3% |
| | Samsung | 7% | 13% | 20% | 10% | 8% | 15% | 10% | 20% |
| | Others | 93% | 87% | 80% | 90% | 92% | 84% | 89% | 77% |
| | *Other Carriers Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/  Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011."

2/  According to a Strategy Analytics representative, Sprint CMDA does not include their iDEN network which has been included in Other Carriers.  Additionally, carriers such are Boost Mobile and Virgin Mobile are included within their parent company Sprint.

Submitted Under Seal; Highly Confidential;

Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        **EXHIBIT 31.1**

## Smartphone Mor-Flo Analysis - AT&T

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share** 1/ | | | | | | | | |
| Apple Units Sold | 2,800 | 3,300 | 5,400 | 4,400 | 3,700 | 3,600 | 2,750 | 6,500 |
| *Apple Market Share* | *59.9%* | *64.5%* | *67.6%* | *62.8%* | *58.4%* | *51.6%* | *44.4%* | *63.4%* |
| | | | | | | | | |
| Samsung Units Sold | 150 | - | 300 | 400 | 350 | 700 | 650 | 1,250 |
| *Samsung Market Share* | *3.2%* | *0.0%* | *3.8%* | *5.7%* | *5.5%* | *10.0%* | *10.5%* | *12.2%* |
| | | | | | | | | |
| Others Units Sold | 1,723 | 1,814 | 2,290 | 2,209 | 2,281 | 2,681 | 2,790 | 2,500 |
| *Others Market Share* | *36.9%* | *35.5%* | *28.7%* | *31.5%* | *36.0%* | *38.4%* | *45.1%* | *24.4%* |
| | | | | | | | | |
| AT&T Total Units Sold | 4,673 | 5,114 | 7,990 | 7,009 | 6,331 | 6,981 | 6,190 | 10,250 |
| *AT&T Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

| | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Samsung Accused Smartphone Unit Sales To Be Deducted** 2/ | | | | | | | | |
| Total Units | - | - | 481 | 251 | 229 | 458 | 652 | 554 |
| *% of Strategy Analytic Estimates* | *0.0%* | *0.0%* | *160.5%* | *62.8%* | *65.5%* | *65.4%* | *100.3%* | *44.3%* |
| *% of Total Market* | *0.0%* | *0.0%* | *3.8%* | *3.6%* | *3.6%* | *6.6%* | *10.5%* | *5.4%* |

| | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | 2,800 | 3,300 | 5,400 | 4,400 | 3,700 | 3,600 | 2,750 | 6,500 |
| *Apple Market Share* | *59.9%* | *64.5%* | *70.2%* | *65.1%* | *60.6%* | *55.2%* | *49.6%* | *67.0%* |
| | | | | | | | | |
| Samsung Units Sold | 150 | - | - | 149 | 121 | 242 | - | 696 |
| *Samsung Market Share* | *3.2%* | *0.0%* | *0.0%* | *2.2%* | *2.0%* | *3.7%* | *0.0%* | *7.2%* |
| | | | | | | | | |
| Others Units Sold | 1,723 | 1,814 | 2,290 | 2,209 | 2,281 | 2,681 | 2,790 | 2,500 |
| *Others Market Share* | *36.9%* | *35.5%* | *29.8%* | *32.7%* | *37.4%* | *41.1%* | *50.4%* | *25.8%* |
| | | | | | | | | |
| AT&T Total Units Sold | 4,673 | 5,114 | 7,690 | 6,758 | 6,102 | 6,523 | 5,540 | 9,696 |
| *AT&T Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011."

2/ SAMNDCA00372946 - 3138.  Sales limited to smartphones sold at AT&T, which include Captivate, Galaxy S II (AT&T Edition, 4G) and Infuse 4G (see Exhibit 10).

3/ Manufacturer Market Share percentage after Mor-Flo adjustment is calculated by subtracting accused Samsung AT&T smartphone units from AT&T sales estimated by Strategy Analytics.  For the third quarter of 2010 and 2011, Samsung sold more AT&T smartphone units than Strategy Analytics estimates, thus Samsung Units Sold after accused unit deductions was changed to 0 (from a negative units calculation) to reflect this event.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

## Smartphone Mor-Flo Analysis - Verizon Wireless

| *(Units In Thousands)* | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share** 1/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | 2,600 | 2,200 | 2,000 | 4,300 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *38.1%* | *31.7%* | *33.6%* | *53.8%* |
| | | | | | | | | |
| Samsung Units Sold | 100 | 100 | 100 | 800 | 600 | 900 | 800 | 950 |
| *Samsung Market Share* | *2.8%* | *2.6%* | *2.4%* | *15.7%* | *8.8%* | *13.0%* | *13.4%* | *11.9%* |
| | | | | | | | | |
| Others Units Sold | 3,447 | 3,714 | 4,040 | 4,295 | 3,630 | 3,830 | 3,150 | 2,750 |
| *Others Market Share* | *97.2%* | *97.4%* | *97.6%* | *84.3%* | *53.1%* | *55.3%* | *52.9%* | *34.4%* |
| | | | | | | | | |
| Verizon Total Units Sold | 3,547 | 3,814 | 4,140 | 5,095 | 6,830 | 6,930 | 5,950 | 8,000 |
| *Verizon Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | | |
| **Samsung Accused Smartphone Unit Sales To Be Deducted** 2/ | | | | | | | | |
| Total Units | - | - | 541 | 660 | 168 | 710 | 283 | 92 |
| *% of Strategy Analytic Estimates* | *0%* | *0%* | *541.0%* | *82.5%* | *28.0%* | *78.9%* | *35.4%* | *9.6%* |
| *% of Total Market* | *0%* | *0%* | *2.4%* | *12.9%* | *2.5%* | *10.2%* | *4.8%* | *1.1%* |
| | | | | | | | | |
| **Manufacturer Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | 2,600 | 2,200 | 2,000 | 4,300 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *39.0%* | *35.4%* | *35.3%* | *54.4%* |
| | | | | | | | | |
| Samsung Units Sold | 100 | 100 | - | 140 | 432 | 190 | 517 | 858 |
| *Samsung Market Share* | *2.8%* | *2.6%* | *0.0%* | *3.2%* | *6.5%* | *3.1%* | *9.1%* | *10.9%* |
| | | | | | | | | |
| Others Units Sold | 3,447 | 3,714 | 4,040 | 4,295 | 3,630 | 3,830 | 3,150 | 2,750 |
| *Others Market Share* | *97.2%* | *97.4%* | *100.0%* | *96.8%* | *54.5%* | *61.6%* | *55.6%* | *34.8%* |
| | | | | | | | | |
| Verizon Total Units Sold | 3,547 | 3,814 | 4,040 | 4,435 | 6,662 | 6,220 | 5,667 | 7,908 |
| *Verizon Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011".

2/ SAMNDCA00372946 - 3138. Sales limited to smartphones sold at Verizon include Continuum, Droid Charge and Fascinate (see Exhibit 10).

3/ Manufacturer Market Share percentage after Mor-Flo adjustment is calculated by subtracting accused Samsung Verizon smartphone units from Verizon sales estimated by Strategy Analytics. For the third quarter of 2010, Samsung sold more Verizon smartphone units than Strategy Analytics estimates, thus Samsung Units Sold after accused unit deductions was changed to 0 (from a negative units calculation) to reflect this event.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                              **EXHIBIT 31.3**

## Smartphone Mor-Flo Analysis - Sprint

| (Units In Thousands) | 2010 Q1 | 2010 Q2 | 2010 Q3 | 2010 Q4 | 2011 Q1 | 2011 Q2 | 2011 Q3 | 2011 Q4 |
|---|---|---|---|---|---|---|---|---|
| **Manufacturer Market Share** 1/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | - | - | - | 1,800 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *36.0%* |
| | | | | | | | | |
| Samsung Units Sold | 300 | 400 | 900 | 800 | 700 | 1,700 | 1,600 | 1,600 |
| *Samsung Market Share* | *21.2%* | *22.3%* | *38.7%* | *27.7%* | *25.4%* | *42.0%* | *41.0%* | *32.0%* |
| | | | | | | | | |
| Others Units Sold | 1,112 | 1,391 | 1,425 | 2,085 | 2,055 | 2,343 | 2,300 | 1,600 |
| *Others Market Share* | *78.8%* | *77.7%* | *61.3%* | *72.3%* | *74.6%* | *58.0%* | *59.0%* | *32.0%* |
| | | | | | | | | |
| Sprint Total Units Sold | 1,412 | 1,791 | 2,325 | 2,885 | 2,755 | 4,043 | 3,900 | 5,000 |
| *Sprint Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | | | | | | | | |
| **Samsung Accused Smartphone Unit Sales To Be Deducted** 2/ | | | | | | | | |
| Total Units | - | 84 | 882 | 833 | 717 | 2,288 | 843 | 633 |
| *% of Strategy Analytic Estimates* | *0%* | *0.0%* | *98.0%* | *104.1%* | *102.5%* | *134.6%* | *52.7%* | *39.6%* |
| *% of Total Market* | *0%* | *4.7%* | *37.9%* | *27.7%* | *25.4%* | *42.0%* | *21.6%* | *12.7%* |
| | | | | | | | | |
| **Manufacturer Market Share After Mor-Flo Adjustment** 3/ | | | | | | | | |
| Apple Units Sold | - | - | - | - | - | - | - | 1,800 |
| *Apple Market Share* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *0.0%* | *41.2%* |
| | | | | | | | | |
| Samsung Units Sold | 300 | 316 | 18 | - | - | - | 757 | 967 |
| *Samsung Market Share* | *21.2%* | *18.5%* | *1.2%* | *0.0%* | *0.0%* | *0.0%* | *24.8%* | *22.1%* |
| | | | | | | | | |
| Others Units Sold | 1,112 | 1,391 | 1,425 | 2,085 | 2,055 | 2,343 | 2,300 | 1,600 |
| *Others Market Share* | *78.8%* | *81.5%* | *98.8%* | *100.0%* | *100.0%* | *100.0%* | *75.2%* | *36.6%* |
| | | | | | | | | |
| Sprint Total Units Sold | 1,412 | 1,707 | 1,443 | 2,085 | 2,055 | 2,343 | 3,057 | 4,367 |
| *Sprint Total* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |

**Sources/Notes:**

1/ Strategy Analytics, "USA Smartphone Vendor & OS Shipments by Operator: Q4 2010" and "USA Smartphone Vendor & OS Shipments by Operator: Q4 2011."

2/ SAMNDCA00372946 - 3138. Sales limited to smartphones sold at Sprint, which include Epic 4G, Galaxy Prevail, Intercept, Nexus S 4G, Replenish, and Transform (see Exhibit 10).

3/ Manufacturer Market Share percentage after Mor-Flo is calculated by subtracting accused Samsung Sprint smartphone units from Sprint sales estimated by Strategy Analytics. For the fourth quarter of 2010 and the first and second quarter of 2011, Samsung sold more Sprint smartphone units than Strategy Analytics estimates, thus Samsung Units Sold after accused unit deductions was changed to 0 (from a negative units calculation) to reflect this event.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 32**

**Apple iPhone P&L Summary** 1/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2010 | | Q3 - Q4 Total | FY 2011 | | | | FY Total | FY 2012 Q1 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q3 | Q4 | | Q1 | Q2 | Q3 | Q4 | | | |
| **U.S. Sales** 2/, 3/ | | | | | | | | | | | |
| **Unit** | | 2,778 | 4,912 | 7,691 | 3,767 | 6,810 | 5,670 | 4,820 | 21,066 | 15,073 | 43,829 |
| **Revenue** | | $ 1,562 | $ 2,841 | $ 4,402 | $ 2,102 | $ 4,256 | $ 3,438 | $ 2,850 | $ 12,647 | $ 9,358 | $ 26,407 |
| | | | | | | | | | | | |
| **Worldwide Sales** 4/ | | | | | | | | | | | |
| **Unit** | [a] | 8,398 | 14,102 | 22,501 | 16,235 | 18,647 | 20,338 | 17,073 | 72,294 | 37,044 | 131,838 |
| **Revenue** | [b] | $ 5,271 | $ 8,776 | $ 14,047 | $ 10,388 | $ 12,225 | $ 13,312 | $ 10,836 | $ 46,761 | $ 24,267 | $ 85,075 |

**Sources/Notes:**
1/  Fiscal year ending September 31.
2/  Apple iPhone Units / Revenue Report, APLNDC-Y0000051357 - 1362.  Revenue = "Total Handset Billings."
3/  Apple does not prepare GAAP Line of Business reports for product lines on a US geographic segment basis.  See Mark Buckley Deposition, 2/23/12, pp. 88-89.
4/  "GAAP Line of Business Reporting - iPhone", APLNDC-Y0000051611 - 1612.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 33

## Apple iPad P&L Summary

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2011 | | | | FY Total | FY 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | | Q1 | |
| **U.S. Sales** 2/, 3/ | | | | | | | | |
| **Unit** | | 3,597 | 1,914 | 4,293 | 3,795 | 13,600 | 5,967 | 19,567 |
| **Revenue** | | $ 2,065 | $ 1,067 | $ 2,583 | $ 2,172 | $ 7,887 | $ 3,240 | $ 11,127 |
| | | | | | | | | |
| **Worldwide Sales** 4/ | | | | | | | | |
| **Unit** | [a] | 7,331 | 4,694 | 9,246 | 11,123 | 32,395 | 15,434 | 47,829 |
| **Revenue** | [b] | $ 4,397 | $ 2,663 | $ 5,660 | $ 6,634 | $ 19,355 | $ 8,875 | $ 28,230 |
| COGS | | | | | | | | |
| Standard Cost | | | | | | | | |
| Variances | | | | | | | | |
| Royalties | | | | | | | | |
| Others | | | | | | | | |
| Total COGS | [c] | | | | | | | |
| **Gross Profit** | [d] = [b] - [c] | | | | | | | |
| *Gross Margin* | *[e] = [d] / [b]* | | | | | | | |
| | | | | | | | | |
| Operating Expenses | | | | | | | | |
| Sales Expense | [f] | | | | | | | |
| Distribution Expense | [g] | | | | | | | |
| | | | | | | | | |
| **Incremental Profit** | [h] = [d] - ([f] + [g]) | | | | | | | |
| *Incremental Margin* | *[i] = [h] / [b]* | | | | | | | |
| | | | | | | | | |
| R&D Expense | | | | | | | | |
| Marketing/Advertising | | | | | | | | |
| General & Admin | | | | | | | | |
| Total Operating Expenses | [j] | | | | | | | |
| | | | | | | | | |
| **Operating Profit** | [k] = [d] - [j] | | | | | | | |
| *Operating  Margin* | *[l] = [k] / [b]* | | | | | | | |
| | | | | | | | | |
| *ASP* | *[m] = [b] * 1000 / [a]* | | | | | | | |
| *Gross Profit per Unit* | *[n] = [d] * 1000 / [a]* | | | | | | | |
| *Incremental Profit per Unit* | *[o] = [h] * 1000 / [a]* | | | | | | | |
| *Operating Profit per Unit* | *[p] = [k] * 1000 / [a]* | | | | | | | |

**Sources/Notes:**
1/  Fiscal year ending September 31.
2/  Apple iPod Touch and iPad Units / Revenue Report, APLNDC-Y0000051599 - 1605.  Revenue = "Total Handset Billings."
3/  Apple does not prepare GAAP Line of Business reports for product lines on a US geographic segment basis.  See Mark Buckley Deposition, 2/23/12, pp. 88-
4/  "GAAP Line of Business Reporting - iPad", APLNDC-Y00000516110.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 212 of 245
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 34

## Apple iPhone Accessories P&L Summary 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2010 | | Q3 - Q4 Total | FY 2011 | | | | FY Total | FY 2012 Q1 | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q3 | Q4 | | Q1 | Q2 | Q3 | Q4 | | | |
| **iPhone Units Sold** 2/ | [a] | 8,398 | 14,102 | 22,501 | 16,235 | 18,647 | 20,338 | 17,073 | 72,294 | 37,044 | 131,838 |
| | | | | | | | | | | | |
| **Revenue** | [b] | 63 | 46 | $    109 | 80 | 74 | (2) | 145 | $    297 | 150 | $    556 |
| COGS | | | | | | | | | | | |
| Standard Cost | | | | | | | | | | | |
| Variances | | | | | | | | | | | |
| Royalties | | | | | | | | | | | |
| Others | | | | | | | | | | | |
| Total COGS | [c] | | | | | | | | | | |
| **Gross Profit** | [d] | | | | | | | | | | |
| *Gross Margin* | *[e] = [d] / [b]* | | | | | | | | | | |
| | | | | | | | | | | | |
| Operating Expenses | | | | | | | | | | | |
| Sales Expense | [f] | | | | | | | | | | |
| Distribution Expense | [g] | | | | | | | | | | |
| | | | | | | | | | | | |
| **Incremental Profit** | [h] = [d] - ([f] + [g]) | | | | | | | | | | |
| *Incremental Margin* | *[i] = [h] / [b]* | | | | | | | | | | |
| | | | | | | | | | | | |
| R&D Expense | | | | | | | | | | | |
| Marketing/Advertising | | | | | | | | | | | |
| General & Admin | | | | | | | | | | | |
| Total Operating Expenses | [j] | | | | | | | | | | |
| | | | | | | | | | | | |
| **Operating Profit** | [k] | | | | | | | | | | |
| *Operating  Margin* | *[l] = [k] / [b]* | | | | | | | | | | |
| | | | | | | | | | | | |
| *Average Sale per Unit* | *[m] = [b]* 1000 / [a]* | | | | | | | | | | |
| *Gross Profit per Unit* | *[n] = [d] * 1000 / [a]* | | | | | | | | | | |
| *Incremental Profit per Unit* | *[o] = [h] * 1000 / [a]* | | | | | | | | | | |
| *Operating Profit per Unit* | *[p] = [k] * 1000 / [a]* | | | | | | | | | | |

**Sources/Notes:**
1/  Fiscal year ending September 31.
2/  See Exhibit 32.
3/  "GAAP Line of Business Reporting - Ph.Acc", APLNDC-Y0000051606 - 1609, at '1607.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        **EXHIBIT 35**

## Apple iPad Accessories P&L Summary 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | FY 2011 | | | | FY Total | FY 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | | Q1 | |
| **iPad Units Sold** 2/ | [a] | 7,331 | 4,694 | 9,246 | 11,123 | 32,395 | 15,434 | 47,829 |
| | | | | | | | | |
| **Revenue** | [b] | 211 | 172 | 385 | 234 | 1,002 | 278 | $ 1,562 |
| COGS | | | | | | | | |
|   Standard Cost | | | | | | | | |
|   Variances | | | | | | | | |
|   Royalties | | | | | | | | |
|   Others | | | | | | | | |
| Total COGS | [c] | | | | | | | |
| **Gross Profit** | [d] | | | | | | | |
|   *Gross Margin* | *[e] = [d] / [b]* | | | | | | | |
| | | | | | | | | |
| Operating Expenses | | | | | | | | |
|   Sales Expense | [f] | | | | | | | |
|   Distribution Expense | [g] | | | | | | | |
| | | | | | | | | |
| **Incremental Profit** | [h] = [d] - ([f] + [g]) | | | | | | | |
|   *Incremental Margin* | *[i] = [h] / [b]* | | | | | | | |
| | | | | | | | | |
|   R&D Expense | | | | | | | | |
|   Marketing/Advertising | | | | | | | | |
|   General & Admin | | | | | | | | |
| Total Operating Expenses | [j] | | | | | | | |
| | | | | | | | | |
| **Operating Profit** | [k] | | | | | | | |
|   *Operating  Margin* | *[l] = [k] / [b]* | | | | | | | |
| | | | | | | | | |
| *Average Sale per Unit* | *[m] = [b]* 1000 / [a]* | | | | | | | |
| *Gross Profit per Unit* | *[n] = [d] * 1000 / [a]* | | | | | | | |
| *Incremental Profit per Unit* | *[o] = [h] * 1000 / [a]* | | | | | | | |
| *Operating Profit per Unit* | *[p] = [k] * 1000 / [a]* | | | | | | | |

**Sources/Notes:**
1/  Fiscal year ending September 31.
2/  See Exhibit 33.
3/  "GAAP Line of Business Reporting - iPad.Acc", APLNDC-Y0000051606 - 1609, at '1606.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**EXHIBIT 37**

**Samsung Accused Smartphones P&L** 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | 2010 | | | YE Total | 2011 | | | | YE Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2Q | 3Q | 4Q | | 1Q | 2Q | 3Q | 4Q | | |
| **U.S. Sales - STA and SEA** 2/ | | | | | | | | | | | |
| **Units** | | 125 | 2,672 | 2,326 | 5,122 | 1,998 | 4,698 | 2,949 | 2,317 | 11,962 | 17,085 |
| **Revenue** | | $ 36 | $ 1,101 | $ 954 | $ 2,090 | $ 759 | $ 1,523 | $ 815 | $ 731 | $ 3,827 | $ 5,917 |
| | | | | | | | | | | | |
| **Worldwide Sales - Manufacturing** | 4/ | | | | | | | | | | |

**Sources/Notes:**

1/   STA and SEA sales included for accused smartphone sales, for June 2010 through December 2011 (SAMNDCA00372946 - 3138).

2/   See Exhibit 37.1.

3/   Samsung did not provide sales data for the Galaxy S II Epic 4G Touch.

4/   The average gross profit per month is calculated by dividing the total revenue of $5,917,000,000 by 19 months and multiplying the result by the gross margin of 41%. The result is $127,282,631. Exhibit 37.4 shows average gross profit per month of $128,346,467. The difference is due to the fact that the $127,282,631 is based on total amounts for the period and the $128,346,467 is based on a monthly calculation using the actual monthly amounts.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 37.1

**STA and SEA U.S. Sales of Accused Smartphones** 1/, 2/

Units in Thousands, Revenue in Millions USD

| Accused Products | Data | 2010 | | | YE Total | 2011 | | | | YE Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2Q | 3Q | 4Q | | 1Q | 2Q | 3Q | 4Q | | |
| Acclaim | Units | 35 | 133 | 42 | 210 | 16 | 14 | (0) | 0 | 30 | 240 |
| | Revenue | $ 13 | $ 44 | $ 12 | $ 70 | $ 4 | $ 3 | $ (0) | $ 0 | $ 7 | $ 77 |
| Captivate | Units | - | 481 | 251 | 733 | 229 | 170 | 181 | 78 | 658 | 1,391 |
| | Revenue | - | 215 | 110 | 325 | 84 | 48 | 51 | 15 | 199 | 524 |
| Continuum | Units | - | - | 174 | 174 | 7 | 60 | 79 | (0) | 147 | 320 |
| | Revenue | - | (0) | 73 | 73 | 1 | 15 | 21 | 1 | 39 | 112 |
| Droid Charge | Units | - | - | - | - | - | 452 | 155 | 92 | 699 | 699 |
| | Revenue | - | - | - | - | - | 241 | 76 | 35 | 351 | 351 |
| Epic 4G | Units | - | 373 | 329 | 703 | 367 | 521 | 69 | 136 | 1,093 | 1,795 |
| | Revenue | - | 193 | 170 | 363 | 179 | 216 | 16 | 47 | 459 | 822 |
| Exhibit 4G | Units | - | - | - | - | - | 118 | 132 | 33 | 283 | 283 |
| | Revenue | - | - | - | - | - | 32 | 34 | 7 | 73 | 73 |
| Fascinate | Units | - | 541 | 486 | 1,027 | 161 | 198 | 48 | (0) | 407 | 1,434 |
| | Revenue | - | 249 | 219 | 469 | 68 | 65 | 15 | 3 | 150 | 619 |
| Galaxy Ace | Units | - | - | - | - | - | - | - | - | - | - |
| | Revenue | - | - | - | - | - | - | - | - | - | - |
| Galaxy Prevail | Units | - | - | - | - | - | 666 | 539 | 332 | 1,537 | 1,537 |
| | Revenue | - | - | - | - | (0) | 122 | 82 | 55 | 259 | 259 |
| Galaxy S (i9000) | Units | - | - | - | - | - | - | - | - | - | - |
| | Revenue | - | - | - | - | - | - | - | - | - | - |
| Galaxy S 4G | Units | - | - | - | - | 354 | 253 | 302 | 237 | 1,146 | 1,146 |
| | Revenue | - | - | - | - | 152 | 90 | 91 | 62 | 395 | 395 |
| Galaxy S II (AT&T Edition, 4G) 3/ | Units | - | - | - | - | - | - | 110 | 273 | 384 | 384 |
| | Revenue | - | - | - | - | - | - | 53 | 126 | 180 | 180 |
| Galaxy S II (T-Mobile edition) | Units | - | - | - | - | - | - | - | 432 | 432 | 432 |
| | Revenue | - | - | - | - | - | - | - | 196 | 196 | 196 |
| Galaxy S Showcase | Units | - | - | 32 | 32 | 38 | 78 | 74 | 42 | 233 | 265 |
| | Revenue | - | - | 16 | 16 | 18 | 30 | 26 | 14 | 88 | 104 |
| Gem | Units | - | - | - | - | 97 | 153 | 102 | 22 | 374 | 374 |
| | Revenue | - | - | - | - | 18 | 28 | 15 | 3 | 64 | 64 |
| Gravity Smart | Units | - | - | - | - | - | 185 | 234 | 55 | 474 | 474 |
| | Revenue | - | - | - | - | - | 36 | 44 | 10 | 90 | 90 |
| Indulge | Units | - | - | - | - | 144 | (0) | 66 | 61 | 271 | 271 |
| | Revenue | - | - | - | - | 59 | (4) | 23 | 21 | 98 | 98 |
| Infuse 4G | Units | - | - | - | - | - | 288 | 360 | 202 | 851 | 851 |
| | Revenue | - | - | - | - | - | 138 | 155 | 67 | 361 | 361 |
| Intercept | Units | 84 | 466 | 307 | 858 | 161 | 147 | 3 | 70 | 380 | 1,238 |
| | Revenue | 20 | 107 | 69 | 196 | 31 | 30 | (1) | 8 | 67 | 264 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                    EXHIBIT 37.1

| Accused Products | Data | 2010 | | | YE Total | 2011 | | | | YE Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2Q | 3Q | 4Q | | 1Q | 2Q | 3Q | 4Q | | |
| Mesmerize | Units | - | - | 120 | 120 | 149 | 206 | 55 | 127 | 537 | 657 |
| | Revenue | - | - | 57 | 57 | 67 | 81 | 19 | 38 | 205 | 261 |
| Nexus S | Units | - | - | 56 | 56 | 45 | (0) | 27 | 7 | 78 | 134 |
| | Revenue | - | - | 27 | 27 | 18 | (2) | 7 | 2 | 25 | 52 |
| Nexus S 4G | Units | - | - | - | - | - | 401 | 23 | 80 | 504 | 504 |
| | Revenue | - | - | - | - | - | 178 | (5) | 20 | 193 | 193 |
| Replenish | Units | - | - | - | - | - | 439 | 149 | 15 | 603 | 603 |
| | Revenue | - | - | - | - | - | 72 | 23 | (3) | 92 | 92 |
| Sidekick | Units | - | - | - | - | - | 227 | 181 | 22 | 429 | 429 |
| | Revenue | - | - | - | - | - | 73 | 56 | 4 | 133 | 133 |
| Transform | Units | - | 43 | 196 | 239 | 189 | 116 | 60 | | 365 | 604 |
| | Revenue | - | 13 | 54 | 66 | 50 | 25 | 11 | (0) | 86 | 153 |
| Vibrant | Units | 6 | 634 | 333 | 973 | 41 | 7 | (0) | - | 48 | 1,021 |
| | Revenue | 3 | 279 | 147 | 429 | 13 | 3 | 1 | 0 | 17 | 445 |
| **Total** | **Units** | **125** | **2,672** | **2,326** | **5,122** | **1,998** | **4,698** | **2,949** | **2,317** | **11,962** | **17,085** |
| | **Revenue** | **$    36** | **$ 1,101** | **$   954** | **$ 2,090** | **$   759** | **$ 1,523** | **$   815** | **$   731** | **$ 3,827** | **$ 5,917** |

**Sources/Notes:**

1/   STA and SEA sales of accused smartphones (SAMNDCA00372946 - 3138).

2/   Samsung did not provide sales data for the Galaxy S II Epic 4G Touch.

3/   Galaxy S II (AT&T edition, 4G)'s model number is listed within the Galaxy S II (i9100) in Samsung's financial data.  I have counted sales through STA and SEA as sales of the Galaxy S II (AT&T edition, 4G) because I
understand that the i9100 model is not sold in the US and all other models listed were not found on Samsung's North America Web Site.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 218 of 245
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 38

## Samsung Accused Tablets P&L 1/, 3/

| (Units in Thousands, Revenue in Millions USD) | Calculation Steps | 2010 | | YE Total | 2011 | | | | YE Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 4Q | | | 1Q | 2Q | 3Q | 4Q | | |
| **U.S. Sales - STA and SEA** 2/ | | | | | | | | | | |
| **Units** | | | 262 | 262 | 77 | 266 | 225 | 315 | 884 | 1,146 |
| **Revenue** | | $ | 154 | $ 154 | $ 22 | 112 | 95 | 125 | 353 | $ 507 |
| | | | | | | | | | | |
| **Worldwide Sales - Manufacturing** | | | | | | | | | | |

**Sources/Notes:**

1/  STA and SEA sales included for accused tablet sales, for October 2010 through December 2011 (SAMNDCA00372946 - 3138).

2/  See Exhibit 38.1.

3/  Samsung did not provide sales data for the Galaxy Tab 10.1 LTE.

4/  The average gross profit per month is calculated by dividing the total revenue of $507,000,000 by 15 months and multiplying the result by the gross margin of 29%. The result is $9,802,000. Exhibit 37.4 shows average gross profit per month of $10,620,510. The difference is due to the fact that the $9,802,000 is based on total amounts for the period and the $10,620,510 is based on a monthly calculation using the actual monthly amounts.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 38.1

### STA and SEA U.S. Sales of Accused Tablets 1/, 2/
Units in Thousands, Revenue in Millions USD

| Accused Products | Data | 2010 4Q | YE Total | 2011 1Q | 2011 2Q | 2011 3Q | 2011 4Q | YE Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|
| Galaxy Tab | Units | 262 | 262 | 77 | 133 | 92 | 102 | 404 | 666 |
|  | Revenue | $ 154 | $ 154 | $ 22 | $ 49 | $ 37 | $ 40 | $ 148 | $ 302 |
| Galaxy Tab 10.1 | Units | - | - | - | 133 | 133 | 213 | 480 | 480 |
|  | Revenue | - | - | - | 63 | 58 | 85 | 206 | 206 |
| **Total** | **Units** | **262** | **262** | **77** | **266** | **225** | **315** | **884** | **1,146** |
|  | **Revenue** | **$ 154** | **$ 154** | **$ 22** | **$ 112** | **$ 95** | **$ 125** | **$ 353** | **$ 507** |

**Sources/Notes:**

1/ STA and SEA sales  of accused tablets (SAMNDCA00372946 - 3138).

2/ Samsung did not provide sales data for the Galaxy Tab 10.1 LTE.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 39**

## Cost Value Reference Points for Samsung

| IP Type | Patent/Registration No. | Cost Value per Unit | |
|---|---|---|---|
| | | Smartphones 1/ | Tablets 2/ |
| Utility Patents | 6,493,002 | $ 0.53 | $ 0.65 |
| | 7,469,381 | $ 1.05 | $ 1.30 |
| | 7,663,607 | $ 1.79 | $ 2.20 |
| | 7,844,915 | $ 1.50 | $ 1.85 |
| | 7,853,891 | $ 0.53 | $ 0.65 |
| | 7,864,163 | $ 1.05 | $ 1.30 |
| | 7,920,129 | $ 1.05 | $ 1.30 |

| IP Type | Patent/Registration No. | Smartphones | Tablets |
|---|---|---|---|
| Design Patents | D627,790 | | |
| | D617,334 | | |
| | D604,305 | | |
| | D618,677 | | |
| | D504,889 | | |
| | D593,087 | | |
| | D622,270 | | |
| Trade Dress | iPhone | $ 22.50 | $ 27.75 |
| | iPhone 3G | | |
| | iPhone 4 | | |
| | iPhone / iPhone 3G / iPhone 4 | | |
| | iPad and iPad 2 | | |
| | 3,470,983 | | |
| | 3,457,218 | | |
| | 3,475,327 | | |
| Trademarks | 3,886,196 | | |
| | 3,889,642 | | |
| | 3,886,200 | | |
| | 3,889,685 | | |
| | 3,886,169 | | |
| | 3,886,197 | | |
| | 85/041,463 (Pending) | | |
| | 2,935,038 | | |
| | **Grand Total** | **$ 30.00** | **$ 37.00** |

**Sources/Notes:**

1/   See Exhibit 39.1. The '607 and '129 Patents do not cover smartphones.

2/   See Exhibit 39.2.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                        **EXHIBIT 39.1**

## Accused Smartphone Cost Value Analysis for Samsung

| IP Type | Patent/Registration No. | Patent Qualitative Ranking 1/ | % of Total Ranking 2/ | Weighted Cost Value per Unit 3/ |
|---------|--------------------------|-------------------------------|-----------------------|----------------------------------|
| Utility Patents | 6,493,002 | 1 | 7% | $ 0.53 |
| | 7,469,381 | 2 | 14% | $ 1.05 |
| | 7,663,607 | 4 | 24% | $ 1.79 |
| | 7,844,915 | 3 | 20% | $ 1.50 |
| | 7,853,891 | 1 | 7% | $ 0.53 |
| | 7,864,163 | 2 | 14% | $ 1.05 |
| | 7,920,129 | 2 | 14% | $ 1.05 |
| | Utility Patent Total | 15 | 100% | $ 7.50 4/ |
| Design Patents | D627,790 | | | |
| | D617,334 | | | |
| | D604,305 | | | |
| | D618,677 | | | |
| | D504,889 | | | |
| | D593,087 | | | |
| | D622,270 | | | |
| Trade Dress | iPhone | n/a | n/a | $ 22.50 |
| | iPhone 3G | | | |
| | iPhone 4 | | | |
| | iPhone / iPhone 3G / iPhone 4 | | | |
| | iPad and iPad 2 | | | |
| | 3,470,983 | | | |
| | 3,457,218 | | | |
| | 3,475,327 | | | |
| Trademarks | 3,886,196 | | | |
| | 3,889,642 | | | |
| | 3,886,200 | | | |
| | 3,889,685 | | | |
| | 3,886,169 | | | |
| | 3,886,197 | | | |
| | 85/041,463 (Pending) | | | |
| | 2,935,038 | | | |

                                                          **Grand Total**     $      **30.00** 4/

**Sources/Notes:**

1/  For Qualitative Rankings for Utility Patents, see Exhibit 45.  Design Patents, Trade Dress and Trademarks are
    grouped together, no ranking is necessary.

2/  % Of Total Ranking is calculated by dividing Patent Qualitative Ranking for each patent/registration by the
    Subtotal of Patent Qualitative Ranking by IP Type.

3/  Weighted Cost Value per Unit is calculated by multiplying % of Total Ranking by the Total Weighted Cost Value
    per Unit by IP Type (see Exhibit 39.3). The '607 and '129 Patents do not cover smartphones.

4/  See Exhibit 39.3.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Prepared by Invotex Group

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 39.2**

## Accused Tablet Cost Value Analysis for Samsung

| IP Type | Patent/Registration No. | Patent Qualitative Ranking 1/ | % of Total Ranking 2/ | Weighted Cost Value per Unit 3/ |
|---------|------------------------|-------------------------------|----------------------|--------------------------------|
| Utility Patents | 6,493,002 | 1 | 7% | $ 0.65 |
| | 7,469,381 | 2 | 14% | $ 1.30 |
| | 7,663,607 | 4 | 24% | $ 2.20 |
| | 7,844,915 | 3 | 20% | $ 1.85 |
| | 7,853,891 | 1 | 7% | $ 0.65 |
| | 7,864,163 | 2 | 14% | $ 1.30 |
| | 7,920,129 | 2 | 14% | $ 1.30 |
| Utility Patent Total | | 15 | 100% | $ 9.25  4/ |
| Design Patents | D627,790 | | | |
| | D617,334 | | | |
| | D604,305 | | | |
| | D618,677 | | | |
| | D504,889 | | | |
| | D593,087 | | | |
| | D622,270 | | | |
| Trade Dress | iPhone | n/a | n/a | $ 27.75 |
| | iPhone 3G | | | |
| | iPhone 4 | | | |
| | iPhone / iPhone 3G / iPhone 4 | | | |
| | iPad and iPad 2 | | | |
| | 3,470,983 | | | |
| | 3,457,218 | | | |
| | 3,475,327 | | | |
| Trademarks | 3,886,196 | | | |
| | 3,889,642 | | | |
| | 3,886,200 | | | |
| | 3,889,685 | | | |
| | 3,886,169 | | | |
| | 3,886,197 | | | |
| | 85/041,463 (Pending) | | | |
| | 2,935,038 | | | |
| | Grand Total | | | $ 37.00  4/ |

**Sources/Notes:**

1/  For Qualitative Rankings for Utility Patents, see Exhibit 45.  Design Patents, Trade Dress and Trademarks are grouped together, no ranking is necessary.

2/  % Of Total Ranking is calculated by dividing Patent Qualitative Ranking for each patent/registration by the Subtotal of Patent Qualitative Ranking by IP Type.

3/  Weighted Cost Value per Unit is calculated by multiplying % of Total Ranking by the Total Weighted Cost Value per Unit by IP Type (see Exhibit 39.3).

4/  See Exhibit 39.3.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    **EXHIBIT 39.3**

## Weighted Cost Value per Unit Apportionment

| Product Type | IP Type | Cost Value per Unit 1/ | Design Around Allocation 2/ | Weighted Cost Value per Unit by IP Type 3/ |
|---|---|---|---|---|
| **Smartphones** | Utility Patents | $ 30.00 | 25% | $ 7.50 |
| | Design Patents, Trade Dress, and Trademarks | | 75% | $ 22.50 |
| | **Smartphone Total** | | **100%** | **$ 30.00** 1/ |
| **Tablets** | Utility Patents | $ 37.00 | 25% | $ 9.25 |
| | Design Patents, Trade Dress, and Trademarks | | 75% | $ 27.75 |
| | **Tablet Total** | | **100%** | **$ 37.00** 1/ |

| IP Type | Patent/Registration No. | Design Around Time (Months) 5/ | Design Around Allocation 2/ |
|---|---|---|---|
| Utility Patents | 6,493,002 | 0.5 | 25% |
| | 7,469,381 | 1.0 | |
| | 7,663,607 | 12.0 | |
| | 7,844,915 | 6.0 | |
| | 7,853,891 | 0.5 | |
| | 7,864,163 | 1.0 | |
| | 7,920,129 | 0.5 | |
| Design Patents | D627,790 | 0.5 | 75% |
| | D617,334 | 0.5 | |
| | D604,305 | 0.5 | |
| | D618,677 | 8.0 | |
| | D504,889 | 8.0 | |
| | D593,087 | 8.0 | |
| | D622,270 | 8.0 | |
| Trade Dress | iPhone | 8.0 | |
| | iPhone 3G | 8.0 | |
| | iPhone 4 | 8.0 | |
| | iPhone / iPhone 3G / iPhone 4 | 8.0 | |
| | iPad and iPad 2 | 8.0 | |
| | 3,470,983 | 8.0 | |
| | 3,457,218 | 8.0 | |
| | 3,475,327 | 8.0 | |
| Trademarks | 3,886,196 | 0.5 | |
| | 3,889,642 | 0.5 | |
| | 3,886,200 | 0.5 | |
| | 3,889,685 | 0.5 | |
| | 3,886,169 | 0.5 | |
| | 3,886,197 | 0.5 | |
| | 85/041,463 (Pending) | 0.5 | |
| | 2,935,038 | 0.5 | |

| | Average Design Around Time 4/ | 4.0 | |

### Sources/Notes:

1/ See Exhibit 39.4.
2/ Design Around Allocation is assigned based on number of IP Types. Of the four IP Types, utility patents receive one quarter of the weight and the group of design patents, trade dress, and trademarks receive three quarters of the weight.
3/ Weighted Cost Value per Unit by IP Type is calculated by multiplying Design Around Allocation by Cost Value per Unit.
4/ Rounded to the nearest whole month.
5/ See Exhibit 45 for design around time for Utility Patents. All design patents and trade dress were assigned an 8 month design around time based on my discussions with Apple representative Tang Tan (with the exception of the GUI design patents). The 3 GUI design patents (D'790, D'334, and D'305) and all Trademarks had no assigned design around time. Accordingly, I have assumed a design around time of less than a month (i.e. 0.5).

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

EXHIBIT 39.4

## Samsung's Cost Value per Unit Due To Redesign

| Calculation Steps | Smartphones | | | Tablets | | |
|---|---|---|---|---|---|---|
| Average Gross Profit per Month for Accused Products | $ | 128,346,467 | 1/ | $ | 10,620,510 | 2/ |
| x No. of Months Out Of Market | | 4 | 3/ | | 4 | 3/ |
| = Samsung's Total Loss Due to Redesign | $ | 513,385,868 | | $ | 42,482,042 | |
| ÷ Total Accused Units Sold | | 17,084,829 | 4/ | | 1,145,643 | 5/ |
| = **Samsung's Cost Value per Unit Due To Redesign** | $ | **30.00** | 6/ | $ | **37.00** | 6/ |

**Sources/Notes:**

1/ 'Average Gross Profit per Month for Accused Products' for Smartphones is calculated by averaging the monthly 'U.S. Revenue (by STA and SEA)' multiplied by the 'Manufacturing Gross Margins' for June 2010 through December 2011. See note 4 on Exhibit 37.

2/ 'Average Gross Profit per Month for Accused Products' for Tablets is calculated by averaging the monthly 'U.S. Revenue (by STA and SEA)' multiplied by the 'Manufacturing Gross Margins' for October 2010 through December 2011. See note 4 on Exhibit 38.

3/ See Exhibit 39.3.

4/ 'Total Accused Units Sold' for Smartphones by STA & SEA entities, see Exhibit 37.

5/ 'Total Accused Units Sold' for Tablets by STA & SEA entities, see Exhibit 38.

6/ Amounts are rounded to the nearest dollar.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                   EXHIBIT 40

## Market Value Reference Points

| IP Type | Patent/Registration No. | Apple | | Samsung | |
|---------|------------------------|-------|---------|---------|--------|
| | | Smartphones | Tablets | Smartphones | Tablets |
| Utility Patents | 6,493,002<br>7,469,381<br>7,663,607<br>7,844,915<br>7,853,891<br>7,864,163<br><br>7,920,129 | $30.00 1/<br><br>(Rate is for a portfolio of patents. It is not limited to the Patents-in-Suit) | $40.00<br>(Reducing to $30/unit over 2 years) 1/<br><br>(Rate is for a portfolio of patents. It is not limited to the Patents-in-Suit) | ██████ | ██████ |
| Design Patents | D627,790<br>D617,334<br>D604,305<br>D618,677<br>D504,889<br>D593,087<br>D622,270 | Not to be Licensed 2/ | Not to be Licensed 2/ | No Comparable License Rate | No Comparable License Rate |
| Trade Dress | iPhone<br>iPhone 3G<br>iPhone 4<br>iPhone / iPhone 3G / iPhone 4<br>iPad and iPad 2<br>3,470,983<br>3,457,218<br>3,475,327 | Not to be Licensed 2/ | Not to be Licensed 2/ | No Comparable License Rate | No Comparable License Rate |
| Trademarks | 3,886,196<br>3,889,642<br>3,886,200<br>3,889,685<br>3,886,169<br>3,886,197<br>85/041,463 (Pending)<br>2,935,038 | Not to be Licensed 2/ | Not to be Licensed 2/ | No Comparable License Rate | No Comparable License Rate |

**Sources/Notes:**
1/   Samsung-Apple Licensing Discussion, October 5, 2010 (APLNDC000010886-917 at APLNDC000010897).
2/   Chip Lutton Deposition, July 26, 2011, p. 52.

████████████████████████████████████████████████████████

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 41**

## Income Value Reference Points

| IP Type | Patent/Registration No. | Apple | | Samsung | |
|---|---|---|---|---|---|
| | | **Smartphones** | **Tablets** | **Smartphones** | **Tablets** |
| Utility Patents 1/ | 6,493,002 | $ 2.80 | $ 2.80 | $ 0.49 | $ 0.49 |
| | 7,469,381 | $ 5.20 | $ 5.20 | $ 0.91 | $ 0.91 |
| | 7,663,607 | | $ 10.80 | | $ 1.89 |
| | 7,844,915 | $ 8.00 | $ 8.00 | $ 1.40 | $ 1.40 |
| | 7,853,891 | $ 2.80 | $ 2.80 | $ 0.49 | $ 0.49 |
| | 7,864,163 | $ 5.20 | $ 5.20 | $ 0.91 | $ 0.91 |
| | 7,920,129 | | $ 5.20 | | $ 0.91 |
| Design Patents 2/ | D627,790 D617,334 D604,305 D618,677 D504,889 D593,087 D622,270 | | | | |
| Trade Dress 2/ | iPhone iPhone 3G iPhone 4 iPhone/iPhone 3G/iPhone 4 iPad and iPad 2 3,471,983 3,457,218 3,475,327 | $ 22.00 | $ 22.00 | $ 9.00 | $ 9.00 |
| Trademarks 2/ | 3,886,196 3,889,642 3,886,200 3,889,685 3,886,169 3,886,197 85/041,463 (Pending) 2,935,038 | | | | |

**Sources/Notes:**

1/   See Exhibit 41.1.

2/   See Exhibit 41.2.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    **EXHIBIT 41.1**

**Weighted Utility Income Value Reference Point for Utility Patents**

| IP Type | Patent/Registration No. | Patent Qualitative Ranking 1/ | % of Total Ranking 2/ | Apple 3/ | Samsung 3/ |
|---------|------------------------|-------------------------------|------------------------|----------|------------|
|         | 6,493,002 | 1 | 7% | $ 2.80 | $ 0.49 |
|         | 7,469,381 | 2 | 13% | $ 5.20 | $ 0.91 |
|         | 7,663,607 | 4 | 27% | $ 10.80 | $ 1.89 |
| Utility Patents | 7,844,915 | 3 | 20% | $ 8.00 | $ 1.40 |
|         | 7,853,891 | 1 | 7% | $ 2.80 | $ 0.49 |
|         | 7,864,163 | 2 | 13% | $ 5.20 | $ 0.91 |
|         | 7,920,129 | 2 | 13% | $ 5.20 | $ 0.91 |
| Utility Patent Total | | 15 | 100% | $ 40.00 | $ 7.00 |
|         | | | | 4/ | 4/ |

**Sources/Notes:**

1/   See Exhibit 45.

2/   % Of Total Ranking is calculated by dividing Patent Qualitative Ranking for each Apple Utility Patent by the Total Utility Patent Qualitative Ranking.

3/   Weighted Rate per Unit is calculated by multiplying % of Total Ranking by the Total Rate for Utility Patents. The Total Utility Rate per Unit is based on Apple's and Samsung's average selling price times the value of intangible value assigned to the utility patents listed above (see Exhibit 41.2).

4/   See Exhibit 41.2.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.                    **EXHIBIT 41.2**

## Per Unit Reference Rate Calculations for Smartphones and Tablets Combined

| Calculation Steps | Apple | Samsung |
|---|---|---|
| Per unit rate for utility patents | | |
|    Average Product Selling Price | $ 628.30 1/ | $ 358.94 2/ |
| x  Value of Intangibles | 6.4% 3/ | 2.0% 3/ |
| =  Per Unit Rate | $ **40.00** 4/ | $ **7.00** 4/ |
| | | |
| Per unit rate for design patents, trade dress, and trademarks | | |
|    Average Product Selling Price | $ 628.30 1/ | $ 358.94 2/ |
| x  Value of Brand/Design Rate | 3.6% 5/ | 2.6% 5/ |
| =  Per Unit Rate | $ **22.00** 6/ | $ **9.00** 6/ |

**Sources/Notes:**

1/  Average Product Selling Price for Apple is a weighted average of Apple iPhone and iPad ASPs. The worldwide ASPs are calculated between Q3 FY2010 and Q1 FY2012 for smartphones and Q1 FY2011 and Q1 FY2012 for tablets and are weighted by the respective units sold into the US during those time periods (see Exhibits 32 and 33).

2/  Average Product Selling Price for Samsung is a weighted average of Samsung smartphone and tablet ASPs. The worldwide ASPs are calculated between Q2 2010 and Q4 2011 for smartphones and Q4 2010 and Q4 2011 for tablets and are weighted by the respective units sold into the US during the same time period (see Exhibits 37 and 38).

3/  Value of Intangibles includes the iPhone and iPad combined for Apple, and the Accused Products combined for Samsung (see Exhibit 41.3).

4/  The Per Unit Rate for Utility Patents is calculated by multiplying the ASP by the Value of Intangibles. Rounded to the nearest dollar.

5/  See Exhibit 41.3.

6/  The Per Unit Rate for Design Patents and Trade Dress is calculated by multiplying the ASP by the Value of Brand/Design rate. Rounded to the nearest dollar.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 229 of 245

Apple Inc. v Samsung Electronics Co., LTD., et al.                    EXHIBIT 41.3

## Value of Intangibles Calculations
### 2010 to 2011 Time Period

| Calculation Steps | Apple | | Samsung |
| --- | --- | --- | --- |
| | Company Wide | iPhone and iPad | Accused Products |
| Operating Margin | 30.1% 1/ | 2/ | 21.9% 3/ |
| x Reduction from taxes | 75.7% 4/ | 4/ | 99.5% 5/ |
| = Net Operating Profit after tax (NOPAT) | 22.8% | | 21.8% |
| - Industry Weighted Average Cost of Capital (WACC) | 11.9% 6/ | 6/ | 11.9% 6/ |
| = Economic Value Added (EVA) 7/ | 10.9% | | 9.9% |
| - Brand/Design Value | 3.6% 8/ | 8/ | 2.6% 9/ |
| = EVA net of Brand Value | 7.3% | | 7.3% |
| - Value of the Company's Other Intangibles | | | 5.3% 10/ |
| = Value of iPhone and iPad Combined/ Accused Products Combined Intangibles | | | < 2.0% > |

**Sources/Notes:**

1/ Average operating margins for Apple Companywide in 2010 and 2011 are calculated per Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 43. The combined margin over the time period is weighted by 2010 and 2011 net sales.

2/ Operating margin is a weighted average of Apple iPhone and iPad operating margins. Worldwide operating margins are calculated between Q3 FY2010 and Q1 FY2012 for iPhones and Q1 FY2011 and Q1 FY2012 for iPads and are weighted by the respective units sold into the US during the same time period (see Exhibits 32 and 33).

3/ Operating margin is a weighted average of Samsung smartphone and tablet operating margins. Worldwide operating margins are calculated between Q2 2010 and Q4 2011 for smartphones and Q4 2010 and Q4 2011 for tablets and are weighted by the respective units sold into the US sold during the same time period (see Exhibits 37 and 38).

4/ Apple's effective tax rate is 24.4% in 2010 and 24.2% in 2011 per Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 63. Accordingly, Apple's Reduction from Taxes is 75.7% (100% - 24.3%).

5/ STA applies a Berry Ratio (deposition of Timothy Sheppard, dated February 29, 2012, pp. 123-124) to its 2010 income statement (SAMNDCA00322209-238 at SAMNDCA00322214), which results in a ratio of gross margin to total revenue of 3.3% . SEC's actual gross margin for manufacturing is 39.6% from 2010-2011 (see Exhibit 36). This margin is used to adjust STA's gross profit to actual levels. This adjustment factor (39.6% divided by 3.3%) is applied to STA's gross profit, after which all expenses (per SAMNDCA00322209-238 at SAMNDCA00322214) are deducted to derive an actual operating profit before taxes. STA's income tax expense is then divided by actual operating profit before taxes to derive STA's effective tax rate and subtracted from 100% to derive its Reduction from Taxes above, 99.5% (100% - 0.5%).

6/ See Exhibit 41.4.

7/ Economic Value Added (EVA) measures return to investors (Interbrand's brand valuation methodology, http://www.interbrand.com/en/best-global-brands/best-global-brands-methodology/Overview.aspx).

8/ Apple's (the company) Brand/Design Value is calculated by multiplying its operating profit by the ratio of its brand value to market capitalization (see Exhibit 41.5). Apples iPhone and iPad Combined are assigned the same Brand/Design Value.

9/ The Brand/Design Value of Samsung is calculated by multiplying the operating margin of Samsung's Accused Products Combined by the ratio of Apple's Brand/Design Value to Apple's companywide operating margin.

10/ The EVA net of the Brand Value of the Company for Samsung is calculated by multiplying the operating margin of Samsung's Accused Products Combined by the ratio of Apple's EVA net of the Brand Value of the Company to Apple's companywide operating margin.

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 230 of 245
Apple Inc. v Samsung Electronics Co., LTD., et al.

EXHIBIT 41.4

## Industry Weighted Average Cost of Capital
### 2010 to 2011 Time Period

| Interbrand Top Global Brands 1/ | Sector (Interbrand Classification) 1/ | SIC Code | SIC Description | 2010 Weighted Average Cost of Capital 2/, 4/ | 2011 Weighted Average Cost of Capital 3/, 4/ |
|---|---|---|---|---|---|
| Hewlett Packard | Electronics | 3570 | Computer and Office Equipment | 13.08% | 12.26% |
| Apple, Dell | Electronics | 3571 | Electronic Computers | 13.27% | 11.77% |
| Xerox | Electronics | 3577 | Computer Peripheral Equipment, Not Elsewhere Classified | 11.68% | 11.24% |
| Intel | Electronics | 3674 | Semiconductors and Related Devices | 13.44% | 12.77% |
| Amazon.com | Internet Services | 5961 | Catalog and Mail-Order Houses | 12.38% | 12.05% |
| Google | Internet Services | 7370 | Computer Programming, Data Processing, and Other Computer Services | 11.65% | 11.05% |
| Microsoft, Adobe | Computer Software | 7372 | Prepackaged Software | 11.51% | 11.22% |
| Yahoo | Internet Services | 7373 | Computer Integrated Systems Design | 11.54% | 10.95% |
| eBay | Internet Services | 7389 | Business Services, Not Elsewhere Classified | 10.98% | 10.89% |

| | | |
|---|---|---|
| Average WACC | 12.17% | 11.58% |

| | |
|---|---|
| Average 2010-2011 WACC | 11.87% |

**Sources/Notes:**

1/   Brands that make up "industry" were selected on the following criteria:

  a) Appear in the 2010 or 2011 Interbrand "Ranking of the Top 100 Brands" (http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2010.aspx and http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx);

  b) United States brands (as categorized by Interbrand);

  c) Limited to the following sectors (as categorized by Interbrand): computer software, electronics, and internet services.

2/   Ibbotson Cost of Capital 2010 Yearbook (data through March 2010).

3/   Ibbotson Cost of Capital 2011 Yearbook (data through March 2011).

4/   Weight average cost of capital, using median CAPM.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v Samsung Electronics Co., LTD., et al.

EXHIBIT 41.5

## Apple Brand Value as Percentage of Market Capitalization
### 2010 to 2011 Time Period

| 2010 Global Brand Rank 1/ | 2011 Global Brand Rank 2/ | Brand 1/ 2/ | 2010 | | | 2011 | | | 2010-2011 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Brand Value ($bn) 1/ | Market Cap ($bn) 3/ | Brand Value: Market Cap Ratio | Brand Value ($bn) 2/ | Market Cap ($bn) 3/ | Brand Value: Market Cap Ratio | Total Brand Value ($bn) 2/ 3/ | Total Market Cap ($bn) 3/ | Weighted Brand Value: Market Cap Ratio |
| 17 | 8 | Apple | 21.1 | 177.4 | 11.9% | 33.5 | 282.6 | 11.9% | 54.6 | 460.0 | 11.9% |

**Sources/Notes:**

1/   Interbrand's "2010 Ranking of the Top 100 Brands," dated September 15, 2010. Interbrand's financial analysis run from June 2009 to June 2010. Dollar amounts converted from millions to billions.
     http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2010.aspx.

2/   Interbrand's "2011 Ranking of the Top 100 Brands," dated October 4, 2011. Interbrand's financial analysis run from June 2009 to June 2010. Dollar amounts converted from millions to billions.
     http://www.interbrand.com/en/best-global-brands/best-global-brands-2008/best-global-brands-2011.aspx.

3/   Market Capitalization figures per http://www.wolframalpha.com. The 2010 market capitalization is recorded between June 1, 2009 and June 1, 2010; the 2011 market capitalization is recorded between June 1, 2010
     and June 1, 2011.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Georgia-Pacific Analysis for Apple's Intellectual Property - Tablets**

| IP Type | Patent/Registration No. | Georgia-Pacific Factor | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| Utility Patents | 6,493,002 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the ease of use and value of a smartphone or tablet computer. 13/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,469,381 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This provides a major enhancement to the quality of the user interface. 14/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,663,607 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides technology for a touchscreen used to obtain accurate information on multiple touches on a touchscreen device. 15/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,844,915 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides functionality that is central to the accused products. 16/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,853,891 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the user interface and experience in smartphones and tablets. 17/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,864,163 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | The invention significantly enhances the user interface of a touchscreen smartphone and tablet. 18/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,920,129 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides technology for a touchscreen display to address the issue of interference from the LCD display sensing multitouch inputs. 19/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| Design Patents | D504,889 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 8/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Apple's design elements included in the design patents, trade address and trademarks give Apple a distinct advantage over competitors. 20/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | I view this amount as setting a floor below which Apple would not license. 12/ | See Income Reference Range on Exhibit 41. |
| Trade Dress | iPad and iPad 2 | | | | | | | | | | | | | |
| Trademarks | 3,886,196 | | | | | | | | | | | | | |
| | 3,889,642 | | | | | | | | | | | | | |
| | 3,886,200 | | | | | | | | | | | | | |
| | 3,889,685 | | | | | | | | | | | | | |
| | 3,886,169 | | | | | | | | | | | | | |
| | 3,886,197 | | | | | | | | | | | | | |
| | 85/041,463 (Pending) | | | | | | | | | | | | | |
| | 2,935,038 | | | | | | | | | | | | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 42

**Sources/Notes:**

1/   This factor demonstrates that there is no established license for any of the asserted Apple intellectual Property In Suit.

2/   This factor demonstrate that there are no rates paid by Samsung for the use of other intellectual property comparable to the Apple Intellectual Property in Suit.

3/   Accordingly, the scope of the license is limited based on the geographic restrictions resulting from the application of U.S. law. However, there are international economic benefits to Apple and to Samsung for the use of the relevant technology. Consequently, the scope of the hypothetical license for the Apple Intellectual Property In Suit is neutral.

4/   This factor does not provide support for a specific rate but does strongly indicate Apple's unwillingness to negotiate a license at essentially any price versus holding the Apple Intellectual Property In Suit for Apple's exclusive use.

5/   This factor does not provide support for a specific rate but does confirm and reinforce Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor with the number one goal of beating Apple.

6/   While it is not possible to capture all of the lost convoyed profits in a reasonable royalty damage, the very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products supports a higher reasonable royalty rate that reflects this major economic benefit.

7/   The long legal life coupled with the risk of a shortened economic life in a rapidly expanding market places upward pressure on the royalty rate to avoid missing the window of economic opportunity related to each patent.

8/   The long legal life coupled with the established commercial success and emphasis on design by Apple places upward pressure on the royalty rate to preserve the established value of these valuable design patents.

9/   This factor provides strong support in the present case for a reasonable royalty rate that weighs in favor of the income approach and calculated as a part of my reference point analysis.

10/  The commercial embodiment of all categories of Apple Intellectual Property In Suit and Apple's focus on the quality of the overall user experience has produced considerable financial rewards for Apple and provided an enhanced user experience to the consumers that use  the products that embody the claimed technology. Accordingly, the rate should reflect the economic benefits to Apple and the market advantages associated with the benefits provided to the consumer.

11/  Based on the fact that Samsung is assumed to have used Apple's Intellectual Property In Suit to make significant profits through the sale of the accused devices that are virtually untaxed in the U.S. and transferred to Korea, has used Apple's Intellectual Property In Suit to build market share in the smartphone and tablet markets at Apple's expense, and has used Apple's Intellectual Property In Suit to gain additional profits through the sale of both convoyed and derivative products tied to Samsung's ecosystem, this factor would support the need for the royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss.

12/  Based on the "Made for iPod" agreements, one example of a value placed on the right by a third party to use a trademark that referenced Apple is $4 per unit in a circumstance involving a complementary use.  This is not analogous to a license to a competitor such as Samsung.  Nonetheless, I view this amount as setting a floor below which Apple would not license any of its trademarks.  While the ultimate rate for multiple trademarks or trade dress would be higher for the reasons discussed above, it certainly would not be less than the amount that Apple charges to use a trademark in a context that results in additional benefits through expansion of the number and variety of accessories that work with its products.

13/  I understand that the patent helps to provide a cohesive experience for the user when there are many different applications running.  The '002 teaches a way for different applications to give information to the user in an unobtrusive way.  As a result, this feature enhances the ease of use and value of a smartphone or tablet computer.

14/  I understand that this patent provides an elegant and appealing form of visual feedback to a user that there is no more of an electronic document to be seen.  For example, if a user is zoomed in on one part of a large photo, he may continue to scroll the photo as he looks at other parts of the image.  Not knowing exactly where the photo ends, he may continue to scroll in a direction even when there is no more of the photo to display.  When this happens, an area beyond the edge of the photo will be displayed, and once the user lifts his finger, the photo will "bounce" or "rubber band" back to fill the screen.  This form of visual feedback is readily understood and makes clear to the user that he cannot continue to scroll in that direction.  As a result, the inventions of the '381 patent make possible a user interface that is more visually appealing and intuitive in its handling of the display of electronic documents.  This provides a major enhancement to the quality of the user interface.  Apple also considers this invention to be closely associated with Apple products in the marketplace.

15/  I understand that the patent provides technology for a touchscreen used to obtain accurate information on multiple touches on a touchscreen device.  This patent is being asserted by Apple only with respect to Samsung's tablet computers.  I understand from my discussions with the Apple technical expert that no commercially viable, alternative, non-infringing touchscreen technologies were in existence when the Samsung Galaxy Tab devices entered the market.  None of the alternative available touchscreen technologies afforded true multi-touch functionality.   For these reasons, Samsung did not have a commercially viable alternative to these technologies embodied in the Apple iPad and iPhone products for a ten inch tablet.  I understand that Samsung introduced a 7.7 inch tablet with an AMOLED display in early 2012, which was released in Australia in or around January 2012 that does not make use of the '607 technology, but that it was not released in the United States until this month.

16/  I understand that the patent provides functionality that is central to the accused products: the ability to distinguish automatically between a one-finger scroll call and a two-finger gesture such as a zoom or rotate gesture.   This functionality is highly intuitive.  Scrolling, zooming and rotating are among the most common actions users take with touchscreens and smartphones, and are used in multiple applications.  I further understand that any effort to redesign would make the '915 Accused Products much less useable, render them inconvenient for users, and deprive them of intuitive functionality that smart phone and tablet users have come to expect.  The alternatives would provide a much less satisfying user experience than devices that practice the '915 patent.  Further, given how frequently the functions are used in the interface, I understand it would be difficult and time consuming to replace.

17/  I understand the patent provides useful ways for providing unobtrusive visual feedback to the user input in a digital processing system, such as a desktop or laptop computer, a smartphone, or a tablet computer.  It does so by conveying information on a new window for the user that automatically disappears without the need for action by the user.  As a result, this feature enhances the user interface and experience in smartphones and tablets.

18/  I understand that the patent provides for an efficient means for users to navigate structured electronic documents on a touchscreen display.  I further understand it is possible to implement other methods to navigate in structured electronics documents using touch gestures, but they would not have been as elegant or intuitive.  I also understood that Samsung evaluated alternatives and concluded that they were inferior and instead revised the user interface to include the '163 patent's features.  It is my understanding that the invention significantly enhances the user interface of a touchscreen smartphone and tablet.

19/  I understand the patent provides technology for a touchscreen display to address the issue of interference from the LCD display sensing multitouch inputs.  Through the use of the patent, the device can be thinner, and the screen requires fewer layers.  I understand that this patent is being asserted by Apple only with respect to Samsung's tablet computers.  I understand from my discussions with Apple's technical expert that there would be significant disadvantages to designing without using the patent's technologies when the Samsung Galaxy Tab devices entered the market.  None of the alternative display technologies to LCD was mature enough for use in tablet-size devices, and using a touchscreen on top of an LCD panel was problematic because the display needed to have an extra layer of shielding to protect the sensitive touch screen electrodes from the electrical interference from the LCD.  Adding this extra layer would result in a less visually desirable screen, increased manufacturing costs, and a heavier and thicker device.

20/  This factor does not provide a specific rate for any of the items of design patents, trade dress and trademarks. However, based on the acute focus by Apple on the design elements of its products, the significant degree of success as evidenced by consumer demand and acceptance for Apple's design elements, Apple's design elements included in the design patents  trade dress and trademarks give Apple a distinct advantage over competitors and strongly support a higher royalty rate.  Similarly the strength of Apple's utility patents, its importance to the user interface and the degree to which Apple treats these aspects as proprietary, all strongly support a higher royalty rate.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

**Georgia-Pacific Analysis for Apple's Intellectual Property - Smartphones**

| IP Type | Patent/Registration No. | Georgia-Pacific Factor | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| Utility Patents | 6,493,002 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the ease of use and value of a smartphone or tablet computer. 13/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,469,381 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This provides a major enhancement to the quality of the user interface. 14/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,844,915 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Provides functionality that is central to the accused products. 15/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,853,891 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | This feature enhances the user interface and experience in smartphones and tablets. 16/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| | 7,864,163 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 7/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | The invention significantly enhances the user interface of a touchscreen smartphone and tablet. 17/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | Factor does not apply. | See Income Reference Range on Exhibit 41. |
| Design Patents | D627,790 D617,334 D604,305 D618,677 D593,087 D622,270 | No established license. 1/ | No rates paid by Samsung for the use of other intellectual property comparable. 2/ | Neutral. 3/ | The Apple Intellectual Property In Suit for Apple's exclusive use. 4/ | Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor. 5/ | Very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products. 6/ | Upward pressure on the royalty rate. 8/ | Weighs in favor of the income approach and calculated as a part of my reference point analysis. 9/ | Apple's design elements included in the design patents, trade address and trademarks give Apple a distinct advantage over Samsung. 18/ | Economic benefits to Apple and the market advantages associated with the benefits provided to the consumer. 10/ | Royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss. 11/ | I view this amount as setting a floor below which Apple would not license. 12/ | See Income Reference Range on Exhibit 46. |
| Trade Dress | iPhone iPhone 3G iPhone 4 iPhone/iPhone 3G/iPhone 4 3,470,983 3,457,218 3,475,327 | | | | | | | | | | | | | |
| Trademarks | 3,886,196 3,889,642 3,886,200 3,889,685 3,886,169 3,886,197 85/041,463 (Pending) 2,935,038 | | | | | | | | | | | | | |

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 43

**Sources/Notes:**

1/  This factor demonstrates that there is no established license for any of the asserted Apple intellectual Property In Suit.

2/  This factor demonstrate that there are no rates paid by Samsung for the use of other intellectual property comparable to the Apple Intellectual Property in Suit.

3/  Accordingly, the scope of the license is limited based on the geographic restrictions resulting from the application of U.S. law. However, there are international economic benefits to Apple and to Samsung for the use of the relevant technology. Consequently, the scope of the hypothetical license for the Apple Intellectual Property in Suit is neutral.

4/  This factor does not provide support for a specific rate but does strongly indicate Apple's unwillingness to negotiate a license at essentially any price versus holding the Apple Intellectual Property In Suit for Apple's exclusive use.

5/  This factor does not provide support for a specific rate but does confirm and reinforce Apple's unwillingness to license its proprietary assets thereby enabling a direct competitor with the number one goal of beating Apple.

6/  While it is not possible to capture all of the lost convoyed profits in a reasonable royalty damage, the very strong and acknowledged connection by both parties of the sale of smartphones and tablets with the sale of non-patented products supports a higher reasonable royalty rate that reflects this major economic benefit.

7/  The long legal life coupled with the risk of a shortened economic life in a rapidly expanding market places upward pressure on the royalty rate to avoid missing the window of economic opportunity related to each patent.

8/  The long legal life coupled with the established commercial success and emphasis on design by Apple places upward pressure on the royalty rate to preserve the established value of these valuable design patents.

9/  This factor provides strong support in the present case for a reasonable royalty rate that weighs in favor of the income approach and calculated as a part of my reference point analysis.

10/  The commercial embodiment of all categories of Apple Intellectual Property In Suit and Apple's focus on the quality of the overall user experience has produced considerable financial rewards for Apple and provided an enhanced user experience to the consumers that use  the products that embody the claimed technology. Accordingly, the rate should reflect the economic benefits to Apple and the market advantages associated with the benefits provided to the consumer.

11/  Based on the fact that Samsung is assumed to have used Apple's Intellectual Property In Suit to make significant profits through the sale of the accused devices that are virtually untaxed in the U.S. and transferred to Korea, has used Apple's Intellectual Property In Suit to build market share in the smartphone and tablet markets at Apple's expense, and has used Apple's Intellectual Property In Suit to gain additional profits through the sale of both convoyed and derivative products tied to Samsung's ecosystem, this factor would support the need for the royalty rate to reflect the full measure of Samsung's financial gain and Apple's loss.

12/  Based on the "Made for iPod" agreements, one example of a value placed on the right by a third party to use a trademark that referenced Apple is $4 per unit in a circumstance involving a complementary use.  This is not analogous to a license to a competitor such as Samsung.  Nonetheless, I view this amount as setting a floor below which Apple would not license any of its trademarks.  While the ultimate rate for multiple trademarks or trade dress would be higher for the reasons discussed above, it certainly would not be less than the amount that Apple charges to use a trademark in a context that results in additional benefits through expansion of the number and variety of accessories that work with its products.

13/  I understand that the patent helps to provide a cohesive experience for the user when there are many different applications running.  The '002 teaches a way for different applications to give information to the user in an unobtrusive way.  As a result, this feature enhances the ease of use and value of a smartphone or tablet computer.

14/  I understand that this patent provides an elegant and appealing form of visual feedback to a user that there is no more of an electronic document to be seen.  For example, if a user is zoomed in on one part of a large photo, he may continue to scroll the photo as he looks at other parts of the image.  Not knowing exactly where the photo ends, he may continue to scroll in a direction even when there is no more of the photo to display.  When this happens, an area beyond the edge of the photo will be displayed, and once the user lifts his finger, the photo will "bounce" or "rubber band" back to fill the screen.  This form of visual feedback is readily understood and makes clear to the user that he cannot continue to scroll in that direction.  As a result, the inventions of the '381 patent make possible a user interface that is more visually appealing and intuitive in its handling of the display of electronic documents.  This provides a major enhancement to the quality of the user interface.  Apple also considers this invention to be closely associated with Apple products in the marketplace.

15/  I understand that the patent provides functionality that is central to the accused products:  the ability to distinguish automatically between a one-finger scroll call and a two-finger gesture such as a zoom or rotate gesture.  This functionality is highly intuitive.  Scrolling, zooming and rotating are among the most common actions users take with touchscreens and smartphones, and are used in multiple applications.  I further understand that any effort to redesign would make the '915 Accused Products much less useable, render them inconvenient for users, and deprive them of intuitive functionality that smart phone and tablet users have come to expect.  The alternatives would provide a much less satisfying user experience than devices that practice the '915 patent.  Further, given how frequently the functions are used in the interface, I understand it would be difficult and time consuming to replace.

16/  I understand that the patent provides useful ways for providing unobtrusive visual feedback to the user input in a digital processing system, such as a desktop or laptop computer, a smartphone, or a tablet computer.  It does so by conveying information on a new window for the user that automatically disappears without the need for action by the user.  As a result, this feature enhances the user interface and experience in smartphones and tablets.

17/  I understand that the patent provides for an efficient means for users to navigate structured electronic documents on a touchscreen display.  I further understand it is possible to implement other methods to navigate in structured electronics documents using touch gestures, but they would not have been as elegant or intuitive.  I also understood that Samsung evaluated alternatives and concluded that they were inferior and instead revised the user interface to include the '163 patent's features.  It is my understanding that the invention significantly enhances the user interface of a touchscreen smartphone and tablet.

18/  This factor does not provide a specific rate for any of the items of design patents, trade dress and trademarks. However, based on the acute focus by Apple on the design elements of its products, the significant degree of success as evidenced by consumer demand and acceptance for Apple's design elements, Apple's design elements included in the design patents  trade dress and trademarks give Apple a distinct advantage over competitors and strongly support a higher royalty rate.  Similarly, the strength of Apple's utility patents, its importance to the user interface and the degree to which Apple treats these aspects as proprietary, all strongly support a higher royalty rate.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

**Apple's Asserted Intellectual Property**

| IP Type | Patent/Registration No. | Issue Date | In Commerce Date | Expiration Date | Years to Expiration 1/ | Date of First Accused Samsung Sale | Hypothetical Negotiation Date |
|---|---|---|---|---|---|---|---|
| Utility Patents 2/ 3/ | 6,493,002 | 12/10/2002 | | 9/30/2014 | 2.5 | 6/1/2010 | 6/1/2010 |
| | 7,469,381 | 12/23/2008 | | 12/14/2027 | 15.7 | 6/1/2010 | 6/1/2010 |
| | 7,663,607 | 2/16/2010 | | 3/29/2028 4/ | 16.0 | 10/1/2010 | 10/1/2010 |
| | 7,844,915 | 11/30/2010 | | 8/12/2028 5/ | 16.4 | 6/1/2010 | 11/30/2010 |
| | 7,853,891 | 12/14/2010 | | 3/14/2023 6/ | 11.0 | 6/1/2010 | 12/14/2010 |
| | 7,864,163 | 1/4/2011 | | 7/23/2029 7/ | 17.3 | 6/1/2010 | 1/4/2011 |
| | 7,920,129 | 4/5/2011 | | 1/23/2030 8/ | 17.8 | 10/1/2010 | 4/5/2011 |
| Design Patents 9/ 10/ | D627,790 | 11/23/2010 | | 11/23/2024 | 12.7 | 6/1/2010 | 11/23/2010 |
| | D617,334 | 6/8/2010 | | 6/8/2024 | 12.2 | 6/1/2010 | 6/8/2010 |
| | D604,305 | 11/17/2009 | | 11/17/2023 | 11.7 | 6/1/2010 | 6/1/2010 |
| | D618,677 | 6/29/2010 | | 6/29/2024 | 12.3 | 6/1/2010 | 6/29/2010 |
| | D504,889 | 5/10/2005 | | 5/10/2019 | 7.1 | 5/1/2011 | 5/1/2011 |
| | D593,087 | 5/26/2009 | | 5/26/2023 | 11.2 | 6/1/2010 | 6/1/2010 |
| | D622,270 | 8/24/2010 | | 8/24/2024 | 12.4 | 6/1/2010 | 8/24/2010 |
| Trade Dress 11/ | iPhone | | 6/29/2007 14/, 15/ | | | 6/1/2010 | 6/1/2010 |
| | iPhone 3G | | 7/11/2008 14/, 16/ | | | 6/1/2010 | 6/1/2010 |
| | iPhone 4 | | 6/24/2010 14/, 17/ | | | | 6/24/2010 |
| | iPhone / iPhone 3G / iPhone 4 | | 6/29/2007 14/, 15/ | | | 6/1/2010 | 6/1/2010 |
| | iPad and iPad 2 | | 4/3/2010 14/, 18/ | | | 10/1/2010 | 10/1/2010 |
| | 3,470,983 | 7/22/2008 | 6/29/2007 19/ | 7/22/2018 12/ | 6.3 | 6/1/2010 | 6/1/2010 |
| | 3,457,218 | 7/1/2008 | 6/29/2007 19/ | 7/1/2018 12/ | 6.3 | 6/1/2010 | 6/1/2010 |
| | 3,475,327 | 7/29/2008 | 6/29/2007 19/ | 7/29/2018 12/ | 6.4 | 6/1/2010 | 6/1/2010 |
| Trademark 13/ | 3,886,196 | 12/7/2010 | 6/29/2007 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,889,642 | 12/14/2010 | 6/29/2007 20/ | 12/14/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,886,200 | 12/7/2010 | 6/29/2007 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,889,685 | 12/14/2010 | 6/29/2007 20/ | 12/14/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,886,169 | 12/7/2010 | 6/29/2007 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 3,886,197 | 12/7/2010 | 6/19/2009 20/ | 12/7/2020 12/ | 8.7 | 6/1/2010 | 6/1/2010 |
| | 85/041,463 (Pending) | n/a | 6/00/2008 20/ | Pending | n/a | 6/1/2010 | 6/1/2010 |
| | 2,935,038 | 3/22/2005 | 1/9/2001 20/ | 3/22/2015 12/ | 3.0 | 6/1/2010 | 6/1/2010 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Case 5:11-cv-01846-LHK   Document 2607-4   Filed 10/29/13   Page 237 of 245
Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 44

**Sources/Notes:**

1/   Years to expiration as of 3/22/2012.

2/   Apple Inc. Amended Complaint, 6/16/11, Exhibits 2 to 8.

3/   In general, a (other than design) patent's term begins on  the date on which the patent is issued and ends 20 years from the date on which the application for the patent was filed in the United
      States.  35 U.S.C. 154 (a)(2) (http://www.uspto.gov/web/offices/pac/mpep/consolidated_laws.pdf).

4/   Certificate of Correction for US Patent No.7,663,607, dated 2/16/10, there is a Patent Term Adjustment of 1423 days.

5/   Issue Notification for US Patent No.7,844,915, dated 11/10/10, there is a Patent Term Adjustment of 583 days.

6/   Issue Notification for US Patent No.7,853,891, dated 11/23/10, there is a Patent Term Adjustment of 247 days.

7/   Issue Notification for US Patent No.7,864,163, dated 12/15/10, there is a Patent Term Adjustment of 688 days.

8/   Issue Notification for US Patent No.7,920,129, dated 3/16/11, there is a Patent Term Adjustment of 1116 days.

9/   Apple Inc. Amended Complaint, 6/16/11, Exhibits 9 to 15.

10/  In general, a design patent's term begins on the date on which the patent is granted and ends 14 years from that date.  35 U.S.C. 173
      (http://www.uspto.gov/web/offices/pac/mpep/consolidated_laws.pdf).

11/  Apple Inc. Amended Complaint, 6/16/11, paragraphs 57-88 and Exhibits 16 to 18.

12/  Subject to renewal; federal trademark registrations issued on or after 11/6/1989 remain in force for 10 years, and may be renewed for 10-year periods
      (http://www.uspto.gov/trademarks/process/maintain/prfaq.jsp).

13/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 23 to 30.

14/  Unregistered trade dress do not have an issue date, therefore the issue date is based on the commercial release date of the relevant product.

15/  Apple Inc. Press Release, 6/28/07
      (http://www.apple.com/pr/library/2007/06/28iPhone-Premieres-This-Friday-Night-at-Apple-Retail-Stores.html).

16/  Apple Inc. Press Release, 7/10/08
       (http://www.apple.com/pr/library/2008/07/10iPhone-3G-on-Sale-Tomorrow.html).

17/  Apple Inc. Press Release, 6/7/10
      (http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html); Apple Inc. Press Release, 2/2/11 http://www.apple.com/pr/library/2011/02/02iPhone-4-on-Verizon-Wireless-
      Available-for-Pre-Order-Tomorrow.html).

18/  Apple Inc. Press Release, 3/5/10 (http://www.apple.com/pr/library/2010/03/05iPad-Available-in-US-on-April-3.html).

19/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 16 to 18.

20/  Apple Inc. Amended Complaint, 6/16/11, Exhibits 23 to 30.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 45

**Description of Apple's Asserted Utility Patents**

| Patent | Title | Apple Technical Expert | Accused Product Type 1/ | Detailed Description | Patent Qualitative Ranking 2/ | Benefits of Patent 1/ | Potential Design Around | Number of Months Out of Market 3/ |
|---|---|---|---|---|---|---|---|---|
| '002 | Method and Apparatus for Displaying and Accessing Control and Status Information in a Computer System | Alex Snoeren | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 1 | User friendly and non-intrusive basis of displaying information. | See Georgia Pacific Factor 9. | No time given; assumed less than a month. |
| '891 | Method and Apparatus for Displaying a Window for a User Interface | Karan Singh | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 1 | Non-obtrusive way to convey information to the user. | See Georgia Pacific Factor 9. | No time given; assumed less than a month. |
| '381 | List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display | Ravin Balakrishnan | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 2 | Solves two problems; (1) differentiates reaching the edge of an electronic document versus a frozen screen, and (2) preventing navigation away from data and ending up in blank space often referred to as the "dessert fog." | See Georgia Pacific Factor 9. | 1 Month 4/ |
| '915 | Application Programming Interfaces for Scrolling Operations | Karan Singh | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 3 | Interpretation of multiple touches to perform different functions. | See Georgia Pacific Factor 9. | 6 months |
| '163 | Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents | Karan Singh | Smartphones and Tablets | See report section titled Apple's Utility Patents. | 2 | Quick and effective basis to refocus the display. | See Georgia Pacific Factor 9. | 1 month |
| '607 | Multipoint Touchscreen | Michel Maharbiz | Tablets | See report section titled Apple's Utility Patents. | 4 | Allows for the interpretation of multiple simultaneous touches. | See Georgia Pacific Factor 9. | Products with screens 10 inches or larger: no design around. Products with screens 8 inches or less: design around after 12/31/10. |
| '129 | Double-Sided Touch-Sensitive Panel with Shield and Drive Combined Layer | Michel Maharbiz | Tablets | See report section titled Apple's Utility Patents. | 2 | Shields touch sensors from noise created by LCD screen. | See Georgia Pacific Factor 9. | Products with screens 10 inches or larger: no design around. Products with screens 8 inches or less: design around after 12/31/10. |

**Sources/Notes:**

1/ Discussions with counsel as well as Apple's technical experts: Ravin Balakrishnan, Michel Maharbiz, Karan Singh, and Alex Snoeren.

2/ I have assigned a rating of 1 through 4 on each patent based on my discussions with technical experts and representatives of Apple (Henri Lamiraux on the '381, '915, and '163 patents; Steve Hotelling on the '607 and '129 patents). A rating of 4 is of greatest relative weight and 1 is the lowest relative weight. In assigning a rating, I have considered and used my discussions with experts, discussions with Apple personnel, the design around time, degree of program integration, and the results of the John Hauser's Conjoint Analysis (with respect to the '607, '915, '163, and '381 patents).

3/ Design around times were provided by Apple representatives identified in note 2. No design around is deemed to be commercially acceptable by any expert. Design around or removal of the infringing aspect is based on an option with the purpose of establishing a degree of difficulty in attempting to work around the patent and not whether it was suitable or acceptable.

4/ On August 24th, 2011, a Dutch court ruled that Samsung was guilty of infringing one of Apple's patents (EP 868) pertaining to user interface for scrolling and moving digital objects on the Galaxy S, S II and Ace. Samsung announced on October 12, 2011 that an upgraded version of the three Galaxy smartphones will be released to avoid the infringement. I have used 1 month for the purpose of the design around period to be conservative.

Judgment, District Court The Hague, The Netherlands, 24 August 2011, docket numbers: 396957 / KG ZA 11-730 and 396959 / KG ZA 11-731 of Apple Inc. v. Samsung Electronics Co. LTD et al. and

http://www.reuters.com/article/2011/10/12/us-samsung-smartphones-netherlands-idUSTRE79B1W020111012.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                              **EXHIBIT 46**

## Reasonable Royalty Rates - Smartphones

| Patent/Registration # | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 6,493,002 | No Market Rate 3/ | $0.49-$2.80 | $    0.53 | The quantitative reference points range from $0.49-$2.80 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    1.40 |
| 7,469,381 | No Market Rate 3/ | $0.91-$5.20 | $    1.05 | The quantitative reference points range from $0.91-$5.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    2.60 |
| 7,663,607 | | | | | |
| 7,844,915 | No Market Rate 3/ | $1.40-$8.00 | $    1.50 | The quantitative reference points range from $1.40-$8.00 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    4.00 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    **EXHIBIT 46**

## Reasonable Royalty Rates - Smartphones

| Patent/Registration # | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 7,853,891 | No Market Rate 3/ | $0.49-$2.80 | $    0.53 | The quantitative reference points range from $0.49-$2.80 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    1.40 |
| 7,864,163 | No Market Rate 3/ | $0.91-$5.20 | $    1.05 | The quantitative reference points range from $0.91-$5.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $    2.60 |
| 7,920,129 | | | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                      **EXHIBIT 46**

## Reasonable Royalty Rates - Smartphones

| Patent/Registration # | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| D627,790 | | | | The quantitative reference points range from $9 to $22.00 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the design patents, trade dress, and trademarks are of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for the design patents, trade dress, and trademarks as a whole is the high end of the reference range. 5/ | |
| D617,334 | | | | | |
| D604,305 | | | | | |
| D618,677 | | | | | |
| D504,889 | | | | | |
| D593,087 | | | | | |
| D622,270 | | | | | |
| iPhone | | | | | |
| iPhone 3G | | | | | |
| iPhone 4 | No Market Rate. See Exhibit 40. | $9.00-$22.00 per Unit. See Exhibit 41. | $    22.00 | | $    22.00 |
| iPhone / iPhone 3G / iPhone 4 | | | | | |
| iPad and iPad 2 | | | | | |
| 3,470,983 | | | | | |
| 3,457,218 | | | | | |
| 3,475,327 | | | | | |
| 3,886,196 | | | | | |
| 3,889,642 | | | | | |
| 3,886,200 | | | | | |
| 3,889,685 | | | | | |
| 3,886,169 | | | | | |
| 3,886,197 | | | | | |
| 85/041,463 (Pending) | | | | | |
| 2,935,038 | | | | | |

**Sources/Notes:**

1/ See Exhibit 41.

2/ See Exhibit 39.

3/ No market rate provided for Apple utility patents. Licensing discussions and proposals by both Apple and Samsung involved a portfolio of unspecific patents. See Exhibit 40.

4/ The U.S. Treasury Department utilizes an interquartile range methodology in evaluating an accepting royalty rates that are considered comparable and acceptable for use in transfer pricing. A range of proposed data points are divided into four quartiles and the highest and lowest quartiles are removed to produce a resulting range of acceptable comparable royalty rates. The 50 percent is the mid point in the range and still leaves 50% of excess profits.

5/ Due to the extreme importance of Apple's design to its corporate success and future, I have assigned the high end of the range for the licensing of all design related assets as a whole. Further, Apple has consistently and emphatically rejected any consideration of allowing a competitor to utilize Apple's proprietary design elements. Therefore, although Apple has refused to license any of its design related assets and would consider the license of one as injurious as licensing the group, the "Made for iPod" program rate of $4.00 per unit is considered a floor royalty for the license of any individual item within this group.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                    **EXHIBIT 47**

## Reasonable Royalty Rates - Tablets

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| 6,493,002 | No Market Rate 3/ | $0.49-$2.80 | $ 0.65 | The quantitative reference points range from $0.49-$2.80 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 1.40 |
| 7,469,381 | No Market Rate 3/ | $0.91-$5.20 | $ 1.30 | The quantitative reference points range from $0.91-$5.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 2.60 |
| 7,663,607 | No Market Rate 3/ | $1.89-$10.80 | $ 2.20 | The quantitative reference points range from $1.89-$10.80 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $ 5.40 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 47

**Reasonable Royalty Rates - Tablets**

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
| --- | --- | --- | --- | --- | --- |
| | Market | Income 1/ | Cost 2/ | | |
| 7,844,915 | No Market Rate 3/ | $1.40-$8.00 | $  1.85 | The quantitative reference points range from $1.40-$8.00 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $  4.00 |
| 7,853,891 | No Market Rate 3/ | $0.49-$2.80 | $  0.65 | The quantitative reference points range from $0.49-$2.80 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $  1.40 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                       **EXHIBIT 47**

**Reasonable Royalty Rates - Tablets**

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
| --- | --- | --- | --- | --- | --- |
| | Market | Income 1/ | Cost 2/ | | |
| 7,864,163 | No Market Rate 3/ | $0.91-$5.20 | $   1.30 | The quantitative reference points range from $0.91-$5.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $   2.60 |
| 7,920,129 | No Market Rate 3/ | $0.91-$5.20 | $   1.30 | The quantitative reference points range from $0.91-$5.20 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the patent at issue is of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for this patent on a standalone basis is at least 50 percent of the high end of the reference range. 4/ | $   2.60 |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                          **EXHIBIT 47**

## Reasonable Royalty Rates - Tablets

| Apple IP Number | Reference Range | | | Georgia-Pacific Results | Final Per Unit Royalty Rate |
|---|---|---|---|---|---|
| | Market | Income 1/ | Cost 2/ | | |
| D627,790 | No Market Rate. See Exhibit 40. | $9.00-$22.00 per Unit. See Exhibit 41. | $ 27.75 | The quantitative reference points range from $9 to $27.75 per unit. There is no additional specific rate suggested by the results of the Georgia Pacific analysis that is outside the reference range. The qualitative results of the Georgia Pacific analysis overwhelmingly emphasize the significant financial advantages lost by Apple and gained by Samsung as a result of the assumed infringement. There are no results that support or suggest that the design patents and trade dress are of low financial importance. There is only one neutral factor and I have derived the income based reference point after apportioning the profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property. As a result I have concluded that the appropriate reasonable royalty for the design patents and trade dress as a whole is the high end of the reference range. 5/ | $22.00 6/ |
| D617,334 | | | | | |
| D604,305 | | | | | |
| D618,677 | | | | | |
| D504,889 | | | | | |
| D593,087 | | | | | |
| D622,270 | | | | | |
| iPhone | | | | | |
| iPhone 3G | | | | | |
| iPhone 4 | | | | | |
| iPhone / iPhone 3G / iPhone 4 | | | | | |
| iPad and iPad 2 | | | | | |
| 3,470,983 | | | | | |
| 3,457,218 | | | | | |
| 3,475,327 | | | | | |
| 3,886,196 | | | | | |
| 3,889,642 | | | | | |
| 3,886,200 | | | | | |
| 3,889,685 | | | | | |
| 3,886,169 | | | | | |
| 3,886,197 | | | | | |
| 85/041,463 (Pending) | | | | | |
| 2,935,038 | | | | | |

**Sources/Notes:**
1/ See Exhibit 41.
2/ See Exhibit 39.
3/ No market rate provided for Apple utility patents. Licensing discussions and proposals by both Apple and Samsung involved a portfolio of unspecific patents. See Exhibit 40.
4/ The U.S. Treasury Department utilizes an interquartile range methodology in evaluating an accepting royalty rates that are considered comparable and acceptable for use in transfer pricing. A range of proposed data points are divided into four quartiles and the highest and lowest quartiles are removed to produce a resulting range of acceptable comparable royalty rates. The 50 percent is the mid point in the range and still leaves 50% of excess profits.
5/ Due to the extreme importance of Apple's design to its corporate success and future, I have assigned the high end of the range for the licensing of all design related assets as a whole. Further, Apple has consistently and emphatically rejected any consideration of allowing a competitor to utilize Apple's proprietary design elements. Therefore, although Apple has refused to license any of its design related assets and would consider the license of one as injurious as licensing the group, the "Made for iPod" program rate of $4.00 per unit is considered a floor royalty for the license of any individual item within this group.
6/ Although the resulting royalty rate for tablets as calculated above is higher than the $22.00 rate determined for smartphones on Exhibit 46, I assume that Apple and Samsung would agree to one rate for both smartphones and tablets. Accordingly, I've chosen the lower of the two rates as my final royalty rate.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only