# EXHIBIT 5

Highly Confidential - Outside Counsels' Eyes Only

Page 110

1   of acceptable substitutes is only relevant
2   during the damages period and more specifically,
3   only relevant during the lost profits period,
4   and I just gave you when those periods start.
5       Q.  When did you assume they started?  Did                10:58AM
6   you assume they started on the notice date, the
7   availability of noninfringement alternatives?
8       A.  That's the date upon which I've
9   considered the availability of such alternatives
10  and determined that the design-around period                  10:59AM
11  needs to be considered in order to address that
12  question.
13      Q.  How did you come to consider that as
14  the starting point?  Was it given to you by
15  attorneys?                                                    10:59AM
16      A.  As I've explained in my report, I don't
17  see how Samsung can design around a patent until
18  it's notified of its existence and the fact that
19  it's infringing.  Because I know what those
20  notice dates are as determined by the judge,                  10:59AM
21  that would be the first date that Samsung could
22  be assumed to start a design-around.
23      Q.  Do you believe it is appropriate to
24  calculate availability of acceptable
25  noninfringement alternatives at a different date              11:00AM

Highly Confidential - Outside Counsels' Eyes Only

Page 130

1 about design-around, would you credit the
2 testimony by Samsung's experts?
3     A. I would need to review such information
4 and talk to people who have technical background
5 about what it means.    11:24AM
6     Q. Besides speaking with Mr. Lamaru, did
7 you do anything else to ascertain the length of
8 the design-around for the '915 patent?
9     A. I think I've already described that I
10 talked to Dr. Singh and I've also reviewed the    11:24AM
11 documents in this case.
12     Q. What documents did you review?
13     A. The ones that come to mind related to
14 potential design-arounds would be the one that I
15 described to you earlier that was produced by    11:25AM
16 Samsung that shows an 18- to 24-month design
17 period.
18     Q. Did that document speak about '915
19 specifically?
20     A. No, not to my recollection.    11:25AM
21     Q. In your report you assumed that Samsung
22 would start designing around Apple's patents
23 beginning on the latest of the dates of issuance
24 of the patent, the date Samsung first sold the
25 product, then infringed the patent or the date    11:26AM

Highly Confidential - Outside Counsels' Eyes Only

Page 131

1    when Samsung received actual notice; is that
2    correct?
3        A.  That is correct.
4        Q.  Okay.  Why did you choose these dates?
5        A.  Well, we'd have to take them                     11:26AM
6    one-by-one.  I can't choose a date before the
7    date of notice because you can't start designing
8    around a patent until you know of its existence
9    and the fact that you are infringing.  I can't
10   start designing around a patent that hasn't yet   11:26AM
11   issued, and so those are the two that I think
12   drive the calculation for the most part.
13       Q.  You got the notice dates from the
14   Court's March 1, 2013, order; is that right?
15       A.  I did.                                           11:27AM
16       Q.  Okay.  The dates identified by the
17   order are not the dates that Samsung actually
18   learned of the patents, are they?
19       A.  I don't know what you're talking about.
20       Q.  Aren't these the earliest dates               11:27AM
21   supported by the trial evidence in which Apple
22   provided notice to Samsung on the patents
23   pursuant to the statute?
24       A.  Say that again, the earliest dates that
25   Samsung...                                                11:27AM

Highly Confidential - Outside Counsels' Eyes Only

Page 133

1  drives the notice dates in this case.
2      Q.  You also prepared a set of calculations
3  assuming that the design period would begin on
4  the later of when the relevant patent issued or
5  the date when Samsung first sold a product that     11:29AM
6  infringed the patents at issue; is that correct?
7          THE WITNESS:  I'm going to have to have
8  you read that one back, please.
9                  (Record read.)
10         THE WITNESS:  I'm not following your         11:29AM
11  question.  Do you have a particular calculation
12  in mind?
13  BY MS. MAROULIS:
14     Q.  So you performed calculations where
15  design-around period starts at the notice date,    11:29AM
16  correct?
17     A.  I did.
18     Q.  Okay.  You also prepared alternative
19  calculations where those design-around periods
20  start on a different date; is that right?          11:29AM
21     A.  I have an alternative calculation that
22  shows the design-around periods starting as
23  Mr. Wagner alleges prior to the notice dates.
24     Q.  Okay.  Why did you prepare this
25  alternative set of calculations?                   11:30AM

Highly Confidential - Outside Counsels' Eyes Only

Page 134

1  A. I expected Mr. Wagner to make that
2  argument and wanted to have available to the
3  judge, if she needs it, the calculation that
4  would show what the result would be if you
5  started with that assumption.                      11:30AM
6  Q. Do you believe that calculation's
7  appropriate?
8  A. I don't think so.  I don't think it's
9  logical to assume that Samsung could start
10 designing around a patent that it didn't yet       11:30AM
11 have notice about.
12 Q. Okay.  Do you agree that beginning a
13 design-around period on that date as opposed to
14 your other calculated dates decreases your lost
15 profits analysis by 300 million?                   11:31AM
16 A. I can look it up to give you the exact
17 number, but I certainly would agree with you
18 that it decreases the total damages number.
19 Q. It decreases it substantially, correct?
20 A. Yes, it does.                                   11:31AM
21 Q. Lost profits analysis requires
22 reconstructing the market as it would have been
23 without the infringing product, correct?
24 A. It does.
25 Q. Okay.  This is called a "hypothetical     11:31AM



Page 166





Page 168



Highly Confidential - Outside Counsels' Eyes Only

Page 274

1  this case, because at the time, he was looking
2  at a much broader set of product than just the
3  seven that are remaining in this case.
4      Q.  He didn't do a product-by-product
5  calculation, did he?                                  03:29PM
6      A.  That's correct.  There were too many
7  products involved at that time.
8      Q.  So it's not simply that Mr. Musika
9  didn't do the incremental profit for the seven
10 products at issue; he didn't do it for any of       03:29PM
11 the accused products, correct?
12     A.  If you're talking about on a
13 product-by-product basis, that's correct.  He
14 clearly did it on an overall basis, by looking
15 at Exhibit 50 to his report.                         03:29PM
16     Q.  So you agree he did not do it on
17 product-by-product, correct?
18     A.  He did not show the incremental profit
19 margin on any specific product.  He did it on
20 the combined set of products involved in the       03:30PM
21 case at that time.
22     Q.  Okay.  In your report you state that
23 the proper basis is to calculate gross profits.
24         If that is the case, why do you also
25 calculate the incremental profits?                  03:30PM

Highly Confidential - Outside Counsels' Eyes Only

Page 276

1  specifically to the products left in the case.
2      Q.  Is it your opinion that only the
3  expenses you've deducted to calculate Samsung's
4  incremental profits are necessary for Samsung to
5  sell an additional unit for each of the seven          03:32PM
6  devices?
7          THE WITNESS:  I'm sorry.  I need to
8  have you read that back, please.
9          (Record read.)
10         THE WITNESS:  If I understand your             03:32PM
11 question correctly, I believe that my analysis
12 of the incremental profit margin has properly
13 deducted those costs that would increase from an
14 additional sale of that product.
15 BY MS. MAROULIS:
16     Q.  And Mr. Musika could have made the
17 product-by-product calculation if he wanted to,
18 correct?
19     A.  I don't know how many products were in
20 the case at that time that would have required         03:33PM
21 such a calculation, but I suppose that would
22 have been a possibility.
23     Q.  And he did not do that, right?
24     A.  He did not do that.
25     Q.  Your calculation of Samsung's                  03:33PM