# EXHIBIT A

PTO/SB/21 (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office;  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 90/012,332 |
| Filing Date | May 30, 2012 |
| First Named Inventor | Andrew PLATZER |
| Art Unit | 3992 |
| Examiner Name | M. J. Yigdall |
| Total Number of Pages in This Submission | 62 |
| Attorney Docket Number | 106842803600 |

## ENCLOSURES  (*Check all that apply*)

☐ Fee Transmittal Form
   ☐ Fee Attached

☒ Amendment/Reply
   ☒ After Final (**16 pages**) and accompanying Attachment A (**2 pages**)
   ☒ Affidavits/declaration(s) - Declaration of Scott Klemmer, Ph.D. under 37 CFR 1.132 (**5 pages**)

☐ Extension of Time Request

☐ Express Abandonment Request

☐ Information Disclosure Statement

☐ Certified Copy of Priority Document(s)

☐ Reply to Missing Parts/Incomplete Application
   ☐ Reply to Missing Parts under 37 CFR 1.52 or 1.53

☐ Drawing(s)

☐ Licensing-related Papers

☐ Petition

☐ Petition to Convert to a Provisional Application

☐ Power of Attorney, Revocation Change of Correspondence Address

☐ Terminal Disclaimer

☐ Request for Refund

☐ CD, Number of CD(s) _____
   ☐ Landscape Table on CD

Remarks

☐ After Allowance Communication to TC

☐ Appeal Communication to Board of Appeals and Interferences

☐ Appeal Communication to TC (**Appeal Notice, Brief, Reply Brief**)

☐ Proprietary Information

☐ Status Letter

☒ Other Enclosure(s) (please identify below):
- Petition to Strike Third-Party Notice of Concurrent Proceedings (**4 pages**) and accompanying Attachment A (**32 pages**)
- Certificate of Service (**1 page**)
- Certificate of Electronic Filing (**1 page**)

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| | |
|---|---|
| Firm Name | MORRISON & FOERSTER LLP (Customer No. 20872) |
| Signature | /Brian B. Ho/ |
| Printed name | Brian B. Ho |
| Date | October 28, 2013 |
| Reg. No. | 60,199 |

I hereby certify that this paper is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: October 28, 2013      Electronic Signature for Lisa Yadao:  /Lisa Yadao/

sf-3347019

EX PARTE RE-EXAMINATION                                    Docket No. 106842803600

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Ex Parte Re-Examination of:
U.S. Patent No. 7,844,915

Control No.: 90/012,332                          Confirmation No.: 5963

Filed: May 30, 2012                              Art Unit: 3992

For:   APPLICATION PROGRAMMING              Examiner: M. J. Yigdall
       INTERFACES FOR SCROLLING
       OPERATIONS

## <u>RESPONSE TO FINAL OFFICE ACTION IN EX PARTE REEXAMINATION</u>

MS Ex Parte Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

## INTRODUCTORY COMMENTS

This is in response to the final Office Action dated July 26, 2013 (Paper No. 20130618)
(hereinafter the "Final Office Action").  A response was initially due September 26, 2013.  A one-
month extension of time was granted on September 13, 2013, extending the due date to October 26,
2013, a Saturday.  Accordingly, this response is timely filed.  Reconsideration and allowance of the
claims under reexamination, in light of the remarks presented herein, are respectfully requested.

**Remarks/Arguments** begin on page **2** of this paper.

sf-3346706

Control No.: 90/012,332                    2                    Docket No. 106842803600

# REMARKS

Claims 1-21 of U.S. Patent No. 7,844,915 (hereinafter the "'915 Patent") are subject to reexamination.  Claims 1-21 stand rejected.

## I.      SUBSTANCE OF THE INTERVIEW

Patent Owner Apple, Inc. (hereinafter "Patent Owner") thanks Examiner Yigdall (the "Examiner"), Supervisor Pathak, and Examiner Ralis (collectively the "Examiners") for the courtesy of the personal interview of October 17, 2013.  In addition to the Examiners, Jason Skinder, Peter Yim, and Brian Ho were present for the interview.

No exhibits or demonstrations were conducted.  All of the claims of the '915 Patent were discussed, with claims 1 and 8 discussed in particular.  Patent Owner's representatives and the Examiners generally discussed the broadest reasonable construction of the term "distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation" (the "distinguishing limitation"), which appears in each of the independent claims under reexamination.  The Examiners asserted that the inclusion of the term "or" in "two or more" rendered the claims anticipated by prior art that discloses distinguishing just "two" input points as a gesture operation, even if "more" input points (*e.g.*, three input points) were interpreted as a scroll, rather than gesture, operation.  Patent Owner asserted that such a construction would be unreasonable to one of ordinary skill in the relevant art, in view of the remainder of the claims and the invention as disclosed in the specification as a whole.

No final agreement on confirmation/allowance was reached.  Patent Owner believes, however, that tentative agreement was reached on the following issues.  Patent Owner agreed to provide, and the Examiners agreed to consider, a declaration under 37 C.F.R. § 1.132 providing additional perspective from one of skill in the art on the broadest reasonable claim construction.  Patent Owner also agreed to provide remarks and evidence to support why one of ordinary skill would view the distinguishing limitation as having particular significance in a machine readable storage medium claim, such as claim 8.  The Examiners also requested and agreed to consider

Patent Owner's remarks on what subject matter would be excluded by the claims, even under the broadest reasonable interpretation.  The Examiners agreed to consider the possibility of an additional interview to discuss any further required evidence, prior to issuance of any necessary advisory action.

As mentioned in-person during the interview, Patent Owner thanks the Examiners for granting the courtesy of a personal interview after final and for diligently working with Patent Owner to resolve and/or clarify the remaining issues in the present reexamination.

## II.     BROADEST REASONABLE CONSTRUCTION OF THE DISTINGUISHING LIMITATION

Each of the independent claims under reexamination (claims 1, 8, and 15) recites the distinguishing limitation.  As discussed in the interview, Patent Owner believes that the proper, broadest reasonable construction of the distinguishing limitation is dispositive to the patentability of the claims under reexamination. Patent Owner respectfully disagrees with the Examiner's broadest reasonable interpretation of the distinguishing limitation, as set forth in the Final Office Action. Patent Owner asserts that under the correct broadest reasonable interpretation of the distinguishing limitation, the claims under reexamination are novel and patentable over the cited art.

In support of Patent Owner's broadest reasonable interpretation of the distinguishing limitation, Patent Owner provides herewith the declaration of Dr. Scott Klemmer and the following remarks.  Dr. Klemmer is an Associate Professor of Cognitive Science and Computer Science & Engineering at the University of California, San Diego, and a Visiting Associate Professor of Computer Science at Stanford University.  (Klemmer Decl. ¶ 2.)  Dr. Klemmer is a person of at least ordinary skill in the art for the purposes of the '915 Patent.  (Klemmer Decl. ¶ 4.)  Dr. Klemmer's declaration corroborates, and is provided in addition to, the previous declaration of Dr. Jason Nieh.

Control No.: 90/012,332                          4                          Docket No. 106842803600

### A.    The Examiner's articulation of the broadest reasonable interpretation of the distinguishing limitation

On page 4 of the Final Office Action, the Examiner states that the broadest reasonable interpretation of the "distinguishing" limitation (*e.g.*, '915 patent at column 23, lines 24-29) is:

> [A]ny algorithm . . . that distinguishes between (a) a single input point that is interpreted as a scroll operation and (b) two input points **or** more than two input points that are interpreted as a gesture operation.

(Emphasis in the original.)  The Examiner further states (apparently based on the term "or"), that the broadest reasonable interpretation encompasses:

> [A]n algorithm . . . that distinguishes between (a) a single input point that is interpreted as a scroll operation and (b) two input[] points that are interpreted as a gesture operation.

Based on the above-interpretation, the Examiner concludes that JP 2000-163031A ("Nomura") discloses an algorithm within the scope of the "distinguishing" limitation even though Nomura clearly discloses that its algorithm would result in a scroll operation when there are three or more input points.

Patent Owner respectfully asserts that the Examiner's interpretation relies on reading the term "or" in isolation and would not be reasonable to one of ordinary skill in the art, in view of the claim as a whole and the specification.

### B.    The broadest reasonable interpretation must be determined from the viewpoint of one of ordinary skill and in view of the claim as a whole and the specification

As the Examiner states, claims are given their broadest reasonable interpretation under reexamination.  (MPEP 2158.I.G.)  That determination, however, must be made from the perspective of one of ordinary skill, in view of the specification.  (MPEP 2111 ("The broadest reasonable interpretation of the claims must also be consistent with the interpretation that those skilled in the art would reach.").)  Moreover, when evaluating a claim, one "may not dissect a

sf-3346706

Control No.: 90/012,332                          5                          Docket No. 106842803600

claimed invention into discrete elements and then evaluate the elements in isolation.  Instead, the claim as a whole must be considered."  (MPEP 2103.I.C.)

In summary, "the focus of the inquiry regarding the meaning of a claim should be what would be reasonable from the perspective of one of ordinary skill in the art."  (MPEP 2111.)

**C.      One of ordinary skill in the art would find it unreasonable to interpret the distinguishing limitation as only requiring distinguishing between one input point and two input points**

As Dr. Klemmer states in his declaration, one of ordinary skill in the art would interpret the distinguishing limitation as an algorithm (*i.e.*, a set of logical instructions) that a machine would employ to perform the step of determining whether an event object, created based on an input, invokes a scroll or a gesture operation.  (Klemmer Decl. ¶ 7.)  In the claimed machine implemented method, machine readable storage medium, or apparatus, the algorithm of the distinguishing limitation controls how the machine logically disambiguates received user input into a machine operation: input that meets a first recited condition (one input point) is interpreted as a scroll operation, and input that meets a second recited condition (two or more input points) is interpreted as a gesture operation.  (Klemmer Decl. ¶ 8.)  One of ordinary skill in the art would consider it unreasonable to read the distinguishing limitation as requiring anything less than that logical test for disambiguation.  (Klemmer Decl. ¶ 8 and 11.)

Read in the context of the claim as a whole and in view of the specification, one of ordinary skill would not consider it reasonable to dissect the complete set of logical instructions of the distinguishing limitation into isolated instructions that parse the second recited condition (two or more input points) into only alternatively required instructions.  (Klemmer Decl. ¶ 12-14, 16, 17.)  Doing so would be unreasonable because the distinguishing limitation is only met by logical instructions that set forth how the machine performs the determining step under all of the recited conditions, including the second recited condition (two or more input points) that must be interpreted as a gesture operation whenever the condition is met.  (Klemmer Decl. ¶ 18.)

sf-3346706

Control No.: 90/012,332                       6                    Docket No. 106842803600

Rather than viewing the term "or" as permitting parsing of the second recited condition (two or more input points) into interchangeable alternatives, one of ordinary skill would understand that the term "or" is used in recognition that a given multi-touch input may be two input points or more than two input points, but not both simultaneously.[1]  (*Cf.* Klemmer Decl. ¶ 18.)  That is, one of skill would recognize that the second recited condition (two or more input points) may be met by a range of interchangeable, alternative inputs, but, once met, the second recited condition (two or more input points) must be interpreted as a gesture operation.  The "or" establishes that the multi-touch input being disambiguated may be alternative, rather than establishing that the logic for disambiguation is alternative.  The term "or" as used in the claims does not make it reasonable to interpret the distinguishing limitation as only requiring logical instructions for processing two input points as a gesture operation without logical instructions for interpreting more than two input points (3 input points, 4 input points, etc.) as a gesture operation.  (Klemmer Decl. ¶ 16-18.)

Accordingly, to implement the method of claim 1, or to have the machine readable storage medium of claim 8 or the apparatus of claim 15, requires determining, or having instructions for determining, whether to invoke a scroll operation or a gesture operation according to the full logic of the distinguishing limitation.  (Klemmer Decl. ¶ 18.)

Conversely, one of ordinary skill would not reasonably conclude that the distinguishing limitation is met by an algorithm that interprets any input that is greater than one (3 input points, 4 input points, etc.) as a scroll operation, even if that algorithm interprets one input point as a scroll operation and two input points as a gesture operation.  (Klemmer Decl. ¶ 18.)  Similarly, one of ordinary skill would not consider it reasonable to conclude that a machine that performs a scroll operation on one input point and a gesture operation on two input points, without logical instructions for interpreting all inputs that are greater than two input points (3 input points, 4 input points, etc.) as scroll operations, is employing an algorithm that meets the distinguishing limitation. (Klemmer Decl. ¶ 18.)

---

[1] *See* the '915 Patent at column 12, lines 29-32.

Control No.: 90/012,332                 7                 Docket No. 106842803600

As Dr. Klemmer notes, this conclusion is particularly true for claim 8, which is directed to a machine readable storage medium.  (Klemmer Decl. ¶ 19-20.)  One of ordinary skill would understand that the instructions stored on a medium according to claim 8 would have to include the predefined set of instructions that dictate the logic by which the computer operates under all circumstances, and not just in one given instance.  (*Id.*)  A medium storing instructions for performing only a portion of the distinguishing limitation (*e.g.*, interpreting one input point as a scroll operation and two input points as a gesture operation) would not reasonably meet the requirements of claim 8, which requires, *inter alia*, executable programming instructions for interpreting more than two input points (3 input points, 4 input points, etc.) as a gesture operation. (*Id.*)

That is, one of ordinary skill would find it unreasonable to conclude that the distinguishing limitation, specifically in the context of claim 8, would be met by an algorithm that only provides one of the required procedural calculations (*e.g.*, gesture operation on two inputs in Nomura) when that algorithm clearly does not provide the remaining required procedural calculations (gesture operation on 2 input points, 3 input points, 4 input points, etc.).  (Klemmer Decl. ¶ 16-20.)

Patent Owner notes that Dr. Klemmer's declaration as to how one of ordinary skill would reasonably interpret the distinguishing limitation is consistent with statements made by others of skill in the art.  In his declaration dated March 18, 2013, Dr. Jason Nieh specifically states that "[t]he algorithm in Nomura does not distinguish between a single input point and two or more input points; rather, the algorithm only distinguishes precisely between two input points and not two input points."  Similarly, Dr. Karan Singh, a person of skill who testified on behalf of Patent Owner in a patent infringement trial involving the '915 Patent, similarly concluded that a device (DiamondTouch) that performs a gesture operation, specifically scaling, on precisely two fingers but scrolls on all other inputs does not meet the distinguishing limitation:

6   QUESTION [Mr. Jacobs, attorney for Apple].  So what about element C on PDX 29.7 [the determining step, including the distinguishing limitation]. Is that

7   present in DiamondTouch?

8   ANSWER [Dr. Karen Singh]. No, that's not, either. As we heard in

9   Mr. Forlines trial testimony, Mr. Forlines is the

10  author of the fractal zoom program that Mr. Gray

11  uses. In this case, two finger [*sic*] scale the object or

12  perform a gesture operation, and everything else

13  scrolls it. So you put three fingers down and

14  it'll strictly scrolls [*sic*] the object.

15  Claim element c says one finger scroll,

16  two or more scales it, or gestures. You put three

17  fingers down, three is greater than two, it should

18  scale. It scrolls.

(Excerpt of trial testimony of Dr. Karen Singh in *Apple Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC*, Civil Action No. C-11-01846-LHK, August 17, 2012, volume 11, page 6624, 6-18 (highlighting added); Attachment A.)  Patent Owner asserts that the viewpoints of Dr. Klemmer, Dr. Nieh, and Dr. Singh, particularly when taken together, provide a "persuasive argument" on how "persons experienced in the field" would interpret the distinguishing limitation under the broadest reasonable interpretation standard.  (MPEP 2111.)  Patent Owner requests that this evidence be considered and given weight in accordance with the guidelines set out in MPEP 716.

In summary, Patent Owner asserts that the distinguishing limitation cannot be interpreted, even under the broadest reasonable interpretation standard, to read on an algorithm that only distinguishes between one input point that is interpreted as a scroll operation and two input points that is interpreted as a gesture operation.  One of ordinary skill in the art would consider such an interpretation to be unreasonable in the context of the claims as a whole and in view of the specification.  Rather, any reasonable interpretation of the distinguishing limitation requires an

algorithm that interprets a single input point as a scroll operation and that interprets any input having greater than one input point (2 input points, 3 input points, etc.) as a gesture operation.

## III.    GROUND 4: NOMURA DOES NOT RENDER CLAIMS 1, 5-8, 12-15 and 19-21 OBVIOUS

Claims 1, 5-8, 12-15, and 19-21 stand rejected under 35 USC 103(a) as unpatentable over Nomura in view of Dean Harris Rubine, "The Automatic Recognition of Gestures," CMU-CS-91-202, December 1991 (hereinafter "Rubine").  Patent Owner respectfully traverses this rejection for the following reasons.

### A.    Nomura does not disclose "distinguishing between one input point and two or more input points"

As stated above, Patent Owner asserts that even under the broadest reasonable interpretation standard, the distinguishing limitation requires an algorithm that interprets a single input point as a scroll operation and that interprets any input having greater than one input point (2 input points, 3 input points, etc.) as a gesture operation.  Nomura does not disclose such an algorithm.

As noted in the Final Office action, Nomura discloses an algorithm that interprets two input points, and only two input points, as a gesture operation.[2]  All other numbers of input points, including three input points, are interpreted as scroll operations.  As stated above, Patent Owner asserts that one of ordinary skill would not consider it reasonable to read the distinguishing limitation, in the context of the claim as a whole and in view of the specification, as encompassing an algorithm such as Nomura's.

Moreover, one of ordinary skill would not have a rationale to modify Nomura's test for two into the distinguishing limitation, for the reasons stated in the Response dated March 19, 2013, which are incorporated herein by reference.

---

[2] *See* Final Office Action at page 6.

Control No.: 90/012,332                    10                    Docket No. 106842803600

**B.      Nomura does not disclose creating event objects or other software architecture or framework elements that provide for scrolling and scaling calls**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Nomura's failure to disclose the software architecture exemplified by the "event object," "scroll call," and "gesture call" elements of the rejected claims.

**C.      Modifying Nomura in view of Rubine does not render the '915 Patent obvious**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect to why a combination of Nomura and Rubine would not render the '915 Patent obvious, including the secondary considerations supporting a conclusion of non-obviousness.

For the reasons stated above, Patent Owner respectfully requests that the rejections of claims 1, 5-8, 12-15, and 19-21 under 35 U.S.C. § 103(a) over Nomura in view of Rubine be withdrawn.

**IV.     GROUND 1: HILLIS DOES NOT ANTICIPATE CLAIMS 1, 5-8, 12-15 and 19-21.**

Claims 1, 5-8, 12-15 and 19-21 are rejected under 35 USC 102(e) as anticipated by U.S. Patent No. 7,724,242 to Hillis et al. (hereinafter "Hillis"). Patent Owner respectfully traverses this rejection for the following reasons.

**A.      Hillis does not disclose "distinguishing between one input point and two or more input points"**

As stated above, Patent Owner asserts that even under the broadest reasonable interpretation standard, the distinguishing limitation requires an algorithm that interprets a single input point as a scroll operation and that interprets any input having greater than one input point (2 input points, 3 input points, etc.) as a gesture operation. Hillis does not disclose such an algorithm.

Control No.: 90/012,332                   11                   Docket No. 106842803600

In Hillis, the Office Action fails to identify anything that discloses the distinguishing limitation recited in the claims.  The analysis in the Final Office Action primarily relies on the disclosure at col. 7:46-65 of Hillis.[3]  Yet nothing in this cited passage, or in Figures 1A and 2A that the cited passage discusses, discloses that the number of inputs is used to distinguish between scroll and gesture operations.  In responding to Patent Owner's remarks in the Response dated March 19, 2013, the Final Office Action cites to Hillis's disclosure of "track[ing] a predetermined number of distinct contact locations (such as two)" to demonstrate that Hillis distinguishes contact points.[4]  There is not, however, any disclosure that the number of tracked contact locations is actually used as the criterion by which scroll and gesture operations are determined.

While Hillis does refer to a "predetermined pattern" at column 7, lines 46-65, the Final Office Action fails to identify any disclosure for whether that pattern corresponds to the number of input points.  Hillis states that it uses "the mapping 126c to identify the action 126b associated with the gesture that was identified in step 208."[5]  And Figure 1A further states that the operation of mapping makes use of a "gesture dictionary 126A."  But Hillis does not explain how these blocks actually operate, let alone disclose (as required for anticipation) that the number of inputs is used to distinguish between scroll and gesture operations.

Distinguishing between one input point and two or more input points, even under the broadest reasonable interpretation, is *not* inherently disclosed in Hillis.  Hillis's "gesture dictionary 126A," for example, may be implemented without using the number of input points at all.  And, even if Hillis used input points, a system could instead distinguish exactly two, and only two, input points, as disclosed in Nomura.  (Nieh Decl. ¶ 25.)  Such a test would not distinguish exactly one input point, as recited in the '915 Patent claims.  Moreover, Hillis does not disclose an algorithm that interprets more than two input points as a gesture operation, as required by even the broadest reasonable interpretation of the distinguishing limitation.

---

[3] *See* Final Office Action at 24 and 25.
[4] *See* Final Office Action at 14.
[5] *See* Hillis at 7:63-65.

sf-3346706

Control No.: 90/012,332                    12                    Docket No. 106842803600

**B.    Hillis does not disclose an "event object"**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Hillis's failure to disclose an "event object", as required by each of independent claims 1, 8, and 15.

**C.    Hillis does not disclose a "touch-sensitive display"**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Hillis's failure to disclose "a touch-sensitive display", as required by each of independent claims 1, 8, and 15.

**D.    Hillis does not disclose an "integrated device"**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Hillis's failure to disclose an "integrated device", as required by each of independent claims 1, 8, and 15.

**E.    Hillis does not disclose "determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period," as required by dependent claims 5, 12, and 19**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Hillis's failure to disclose "determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period," as required by claims 5, 12, and 19.

For the reasons stated above, Patent Owner respectfully requests that the rejections of claims 1, 5-8, 12-15, and 19-21 under 35 U.S.C. § 102(e) as anticipated by Hillis be withdrawn.

Control No.: 90/012,332                    13                    Docket No. 106842803600

## V.  GROUNDS 2 AND 5: A COMBINATION OF LIRA WITH EITHER HILLIS OR NOMURA IN VIEW OF RUBINE WOULD NOT RENDER CLAIMS 2, 9, AND 16 OBVIOUS

Dependent claims 2, 9, and 16 of the '915 Patent stand rejected as obvious over a combination of Lira with either Hillis (Ground 2) or Nomura and Rubine (Ground 5). Patent Owner respectfully traverses this rejection for the following reasons.

### A.  Lira does not disclose the distinguishing limitation

As stated above, Patent Owner respectfully asserts that neither Hillis, Nomura, nor Rubine discloses or suggests the distinguishing limitation, even under the broadest reasonable interpretation, to one of ordinary skill in the art. Lira, likewise, does not disclose the distinguishing limitation.

### B.  Lira does not teach or suggest the additional features recited in claims 2, 9, and 16

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Lira's failure to disclose the additional limitations of claims 2, 9, and 16.

### C.  Lira's recentering is incompatible with both Hillis and Nomura

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect to why Lira's recentering is incompatible with both Hillis and Nomura.

Control No.: 90/012,332                    14                    Docket No. 106842803600

     **D.**    **A person of ordinary skill also would not have been motivated to combine Lira with Nomura in view of Rubine because a map does not have a boundary that requires recentering**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect to why one of ordinary skill also would not have been motivated to combine Lira with Nomura in view of Rubine.

For the reasons stated above, Patent Owner respectfully requests that the rejections of claims 2, 9, and 16 under 35 U.S.C. § 103(a) over Hillis (Ground 2) or Nomura and Rubine (Ground 5) in view of Lira be withdrawn.

**VI.**    **GROUNDS 3 AND 6: A COMBINATION OF MAKUS WITH EITHER HILLIS OR NOMURA IN VIEW OF RUBINE WOULD NOT RENDER CLAIMS 3-4, 10-11, AND 17-18 OBVIOUS**

Dependent claims 3-4, 10-11, and 17-18 of the '915 Patent stand rejected as obvious over a combination of Makus with Hillis (Ground 3) or Nomura and Rubine (Ground 6). The Patent Owner respectfully traverses these rejections for the following reasons.

     **A.**    **Makus does not disclose or suggest "attaching scroll indicators" as recited in claims 3-4, 10-11, and 17-18**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect Makus's failure to disclose "attaching scroll indicators" as recited in claims 3-4, 10-11, and 17-18.

     **B.**    **A person of ordinary skill also would not have been motivated to combine Makus with Nomura in view of Rubine because scrolled maps do not need scroll indicators**

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect to why one of ordinary skill also would not have

Control No.: 90/012,332                    15                    Docket No. 106842803600

been motivated to combine Makus with Nomura in view of Rubine because scrolled maps do not need scroll indicators.

### C.    A person of ordinary skill also would not have been motivated to combine Makus with Hillis

Patent Owner maintains, and incorporates by reference herein, the arguments presented in the Response dated March 19, 2013, with respect to why one of ordinary skill also would not have been motivated to combine Makus with Hillis.

For the reasons stated above, Patent Owner respectfully requests that the rejections of claims 3, 4, 10, 11, 17, and 18 under 35 U.S.C. § 103(a) over Hillis (Ground 3) or Nomura and Rubine (Ground 6) in view of Makus be withdrawn.

Control No.: 90/012,332                          16                          Docket No. 106842803600

## CONCLUSION

In view of the above, each of the claims under reexamination in this application is believed to be in immediate condition for allowance.  Accordingly, the Examiner is respectfully requested to withdraw the outstanding rejections of the claims and to issue a reexamination certificate.  If it is determined that a telephone conference would expedite the prosecution of this application, the Examiner is invited to telephone the undersigned at the number given below.

In the event the U.S. Patent and Trademark office determines that an extension and/or other relief is required, applicant petitions for any required relief including extensions of time and authorizes the Commissioner to charge the cost of such petitions and/or other fees due in connection with the filing of this document to **Deposit Account No. 03-1952** referencing **Docket No. 106842803600**.  However, the Commissioner is not authorized to charge the cost of the issue fee to the Deposit Account.

Dated:  October 28, 2013                    Respectfully submitted,

                                            By _____/Peter J. Yim/_____
                                            Peter J. Yim
                                               Registration No.: 44,417
                                            MORRISON & FOERSTER LLP
                                            425 Market Street
                                            San Francisco, California  94105-2482
                                            (415) 268-6373

**Enclosure**: Attachment A

sf-3346706

Page 3387

```
           UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
                 SAN JOSE DIVISION


APPLE INC., A CALIFORNIA  ) C-11-01846 LHK
CORPORATION,              )
                          ) SAN JOSE, CALIFORNIA
   PLAINTIFF,    )
                ) AUGUST 17, 2012
   VS.          )
                ) VOLUME 11
SAMSUNG ELECTRONICS CO.,  )
LTD, A KOREAN BUSINESS    ) PAGES 3387-3711
ENTITY; SAMSUNG           )
ELECTRONICS AMERICA,      )
INC., A NEW YORK          )
CORPORATION; SAMSUNG      )
TELECOMMUNICATIONS        )
AMERICA, LLC, A DELAWARE  )
LIMITED LIABILITY         )
COMPANY,                  )
                          )
   DEFENDANTS.  )


       TRANSCRIPT OF PROCEEDINGS
    BEFORE THE HONORABLE LUCY H. KOH
      UNITED STATES DISTRICT JUDGE



       APPEARANCES ON NEXT PAGE


OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595
       IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8074
```

Page 3388

```
 1  A P P E A R A N C E S:
 2  FOR PLAINTIFF  MORRISON & FOERSTER
    APPLE:      BY: HAROLD J. MCELHINNY
 3          MICHAEL A. JACOBS
            RACHEL KREVANS
 4          425 MARKET STREET
            SAN FRANCISCO, CALIFORNIA 94105
 5
 6  FOR COUNTERCLAIMANT WILMER, CUTLER, PICKERING,
    APPLE:       HALE AND DORR
 7          BY: WILLIAM F. LEE
            60 STATE STREET
 8          BOSTON, MASSACHUSETTS 02109
 9          BY: MARK D. SELWYN
            950 PAGE MILL ROAD
10          PALO ALTO, CALIFORNIA 94304
11  FOR THE DEFENDANT: QUINN, EMANUEL, URQUHART,
            OLIVER & HEDGES
12          BY: CHARLES K. VERHOEVEN
            50 CALIFORNIA STREET, 22ND FLOOR
13          SAN FRANCISCO, CALIFORNIA 94111
14          BY: VICTORIA F. MAROULIS
            KEVIN P.B. JOHNSON
15          555 TWIN DOLPHIN DRIVE
            SUITE 560
16          REDWOOD SHORES, CALIFORNIA 94065
17          BY: MICHAEL T. ZELLER
            WILLIAM C. PRICE
18          865 SOUTH FIGUEROA STREET
            10TH FLOOR
19          LOS ANGELES, CALIFORNIA 90017
20
21
22
23
24
25
```

Page 3389

```
 1           INDEX OF WITNESSES
 2  PLAINTIFF'S REBUTTAL
 3  HYONG KIM
       DIRECT EXAM BY MR. LEE (RES.)   P. 3414
 4     CROSS-EXAM BY MR. VERHOEVEN     P. 3432
       REDIRECT EXAM BY MR. LEE      P. 3434
 5  EDWARD KNIGHTLY
       DIRECT EXAM BY MR. MUELLER      P. 3435
 6     CROSS-EXAM BY MR. VERHOEVEN     P. 3462
       REDIRECT EXAM BY MR. MUELLER    P. 3464
 7  SUSAN KARE
       DIRECT EXAM BY MS. KREVANS      P. 3465
 8     CROSS-EXAM BY MR. VERHOEVEN     P. 3474
    MICHAEL WALKER
 9     DIRECT EXAM BY MR. MUELLER      P. 3477
       CROSS-EXAM BY MR. VERHOEVEN     P. 3516
10     REDIRECT EXAM BY MR. MUELLER    P. 3526
    RICHARD DONALDSON
11     DIRECT EXAM BY MR. MUELLER      P. 3531
    SEUNG-HO AHN
12     VIDEOTAPED DEPOSITION PLAYED    P. 3547
    JUN WON LEE
13     VIDEOTAPED DEPOSITION PLAYED    P. 3548
    JANUSZ ORDOVER
14     DIRECT EXAM BY MR. MUELLER      P. 3569
    PETER BRESSLER
15     DIRECT EXAM BY MS. KREVANS      P. 3589
       CROSS-EXAM BY MR. VERHOEVEN     P. 3608
16  KARAN SINGH
       DIRECT EXAM BY MR. JACOBS       P. 3614
17  RAVIN BALAKRISHNAN
       DIRECT EXAM BY MR. JACOBS       P. 3629
18
19  DEFENDANT'S SURREBUTTAL
20  DAVID TEECE
       DIRECT EXAM BY MS. MAROULIS     P. 3643
21     CROSS-EXAM BY MR. LEE           P. 3651
    TIM WILLIAMS
22     DIRECT EXAM BY MR. VERHOEVEN    P. 3656
       CROSS-EXAM BY MR. LEE           P. 3660
23
    WOODWARD YANG
24     DIRECT EXAM BY MR. VERHOEVEN    P. 3665
       CROSS-EXAM BY MR. LEE           P. 3670
25
```

Page 3390

```
 1            INDEX OF EXHIBITS
 2              MARKED      ADMITTED
 3  PLAINTIFF'S
 4     100         3425
       104         3431
 5     1060        3450
       97          3454
 6     2277        3469
       2278        3472
 7     74          3486
       1085        3499
 8     101         3501
       72          3502
 9     84          3504
       122         3507
10     193         3510
       1084        3511
11     70          3512
       81          3541
12     1078        3603
       1048 & 1049      3628
13     1047        3636
       1066        3672
14
15
16
17  DEFENDANT'S
18     613         3519
       549         3522
19
20
21
22
23
24
25
```

Page 3623

1  CONCLUSIVELY PROVED WITH HIS TRIAL TESTIMONY THAT
2  ELEMENT B, ONE -- THE CREATING AN EVENT OBJECT WAS
3  ACTUALLY, ACTUALLY PRESENT AND MET BY THE
4  DIAMONDTOUCH, ONE, ONE OUT OF SIX ELEMENTS.
5  Q   AND WHY DO YOU BELIEVE THAT THE OTHER ELEMENTS
6  ARE NOT PRESENT?
7  A   WELL, LET'S GO THROUGH THEM.  THE DIAMONDTOUCH
8  IS CERTAINLY NOT A TOUCH SENSITIVE DISPLAY THAT IS
9  INTEGRATED WITH A DATA PROCESSING SYSTEM.  IT'S NOT
10 EVEN A TOUCH SENSITIVE DISPLAY.  IT'S A PLASTIC
11 TOUCH SURFACE ON WHICH YOU CAN PROJECT SOME IMAGES.
12        AND IT'S NOT AN INTEGRATED -- IT'S
13 CERTAINLY NOT AN INTEGRATED DEVICE, AS IS, AS IS
14 DESCRIBED BY THE '915 PATENT.  THE '915 PATENT
15 INDICATES THAT IT SHOULD BE A SINGLE DEVICE.  THERE
16 ARE FIGURES IN THE PATENT, IF WE CAN LOOK AT A
17 COUPLE, THAT MAKE IT VERY CLEAR WHAT SORT OF A
18 DEVICE IT SHOULD BE.
19        THERE ARE EXAMPLES.
20 Q   CAN WE LOOK AT 1044.6, MR. LEE.
21 A   SO THERE -- THERE ARE EXAMPLES AND -- AND
22 1044.33.
23 Q   SO WHAT ARE THE EXAMPLES IN THE PATENT OF AN
24 INTEGRATED DEVICE OF THE SORT THAT YOU'RE
25 DESCRIBING?

Page 3624

1  A   WELL, SMARTPHONES, TABLETS, THERE'S A GOOD
2  ILLUSTRATIVE LIST.  YOU'RE LOOKING AT SOMETHING
3  OVER HERE AND THAT'S CERTAINLY NOT THE
4  DIAMONDTOUCH.  WE'VE ALL SEEN IT OVER HERE.  IT'S A
5  COLLECTION OF A NUMBER OF DISTINCT DEVICES.
6  Q   SO WHAT ABOUT ELEMENT C ON PDX 29.7.  IS THAT
7  PRESENT IN DIAMONDTOUCH?
8  A   NO, THAT'S NOT, EITHER.  AS WE HEARD IN
9  MR. FORLINES TRIAL TESTIMONY, MR. FORLINES IS THE
10 AUTHOR OF THE FRACTAL ZOOM PROGRAM THAT MR. GRAY
11 USES.  IN THIS CASE, TWO FINGER SCALE THE OBJECT OR
12 PERFORM A GESTURE OPERATION, AND EVERYTHING ELSE
13 SCROLLS IT.  SO YOU PUT THREE FINGERS DOWN AND
14 IT'LL STRICTLY SCROLLS THE OBJECT.
15        CLAIM ELEMENT C SAYS ONE FINGER SCROLL,
16 TWO OR MORE SCALES IT, OR GESTURES.  YOU PUT THREE
17 FINGERS DOWN, THREE IS GREATER THAN TWO, IT SHOULD
18 SCALE.  IT SCROLLS.
19 Q   NOW, LET'S BRIEFLY TALK ABOUT E AND F AS IT
20 RELATES TO DIAMONDTOUCH.
21 A   WELL, THE OPERATIVE WORD HERE IS A VIEW
22 ASSOCIATED WITH THE EVENT OBJECT.  IN MY
23 INFRINGEMENT TESTIMONY, I CLEARLY POINTED OUT A
24 VIEW ON THAT CONTROLS A WEB BROWSER, HOW IT'S
25 ASSOCIATED WITH AN EVENT OBJECT.

Page 3625

1        MR. GRAY DID NOT DISCLOSE ANY KIND OF
2  VIEW OBJECT IN ANY WAY, OR THAT IT WAS ASSOCIATED
3  WITH THE DIAMONDTOUCH EVENT OBJECT.
4        SO I DON'T BELIEVE HE'S BORNE THE BURDEN
5  OF PROVING E OR F AT ALL.
6  Q   NOW, IF WE SUM UP, THEN, ON DIAMONDTOUCH, IS
7  DIAMONDTOUCH EVEN CLOSE TO THIS CLAIM?
8  A   NOT AT ALL.  IT MEETS ONE OF SIX CLAIM
9  ELEMENTS.
10 Q   LET'S TURN NOW TO NOMURA, WHICH WAS THE OTHER
11 REFERENCE THAT MR. GRAY SPENT A FEW MINUTES ON.
12        CAN YOU EXPLAIN WHY YOU -- WHAT YOUR VIEW
13 IS OF MR. GRAY'S TESTIMONY ABOUT THE NOMURA, THE
14 JAPANESE PATENT APPLICATION AND WHETHER IT
15 ANTICIPATES CLAIM 8 OF THE '915 PATENT?
16 A   WELL, IT WAS A PATENT APPLICATION.  THERE ARE
17 THREE VERY IMPORTANT ASPECTS OF CLAIM 8.  IF WE CAN
18 PUT CLAIM 8 UP AGAIN.
19        THERE'S EVENTS, OBJECTS AND VIEWS.  THE
20 NOMURA PATENT APPLICATION DISCLOSES ABSOLUTELY NONE
21 OF THEM.
22 Q   NOW, YOU MAY RECALL THAT MR. GRAY SAID THAT
23 THE EVENT OBJECT WAS INHERENT IN NOMURA.  DO YOU
24 AGREE WITH THAT TESTIMONY?
25 A   NO, ABSOLUTELY NOT .  ANY PERSON OF ORDINARY

Page 3626

1  SKILL THE IN ART WOULD KNOW THAT THERE ARE A NUMBER
2  OF VIABLE ALTERNATIVES TO THESE, THESE ARE
3  PROGRAMMING CONSTRUCTING THAT ARE IMPORTANT.  YOU
4  CAN EASILY REPLACE EVENTS WITH, WITH POLLING IN A
5  DEVICE.  YOU CAN -- PROCEDURAL PROGRAMMING AND
6  LANGUAGES CAN REPLACE OBJECTS, CAN BE USED INSTEAD
7  OF OBJECTS, AND YOU CAN HAVE A SINGLE BLOCK OF
8  DISPLAY LOGIC INSTEAD OF, INSTEAD OF VIEWS.
9        AND, IN FACT, THERE -- IF YOU READ
10 NOMURA, THERE IS LOTS OF EVIDENCE THAT WOULD MAKE
11 YOU BELIEVE THAT, IN FACT, THESE OTHER ALTERNATIVES
12 ARE PROBABLY THE BEST WAY TO IMPLEMENT SUCH, SUCH
13 AN INVENTION.
14 Q   SO DOES NOMURA -- IS THE DIFFERENCE, THE LACK
15 OF AN EVENT OBJECT IN NOMURA, IS THAT A SIGNIFICANT
16 DIFFERENCE OR A SMALL ONE?
17 A   ABSOLUTELY.  LOOK AT THE CLAIM ELEMENTS,
18 WHEREVER YOU SEE THE WORD EVENT, WHERE YOU SEE THE
19 WORD OBJECT, WHERE YOU SEE THE WORD VIEW, THOSE
20 ELEMENTS ARE NOT MET.  THAT'S A, B -- NO, NOT A.
21 SORRY.  B, C, E, AND F.
22 Q   SO ABSOLUTELY SIGNIFICANT OR NOT SIGNIFICANT,
23 SIR?
24 A   ABSOLUTELY SIGNIFICANT.
25 Q   VERY GOOD.  NOW LET ME JUST VERY BRIEFLY, THE