```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN JOSE DIVISION

 4

 5

    APPLE INC., A CALIFORNIA      )  C-11-01846 LHK
 6  CORPORATION,                  )
                                  )  SAN JOSE, CALIFORNIA
 7              PLAINTIFF,         )
                                  )  NOVEMBER 5, 2013
 8         VS.                    )
                                  )  PAGES 1-65
 9  SAMSUNG ELECTRONICS CO., LTD.,)
    A KOREAN BUSINESS ENTITY;     )
10  SAMSUNG ELECTRONICS AMERICA,  )
    INC., A NEW YORK CORPORATION; )
11  SAMSUNG TELECOMMUNICATIONS    )
    AMERICA, LLC, A DELAWARE      )
12  LIMITED LIABILITY COMPANY,    )
                                  )
13              DEFENDANTS.       )
    _____)

14

15

16            TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
17            UNITED STATES DISTRICT JUDGE

18

19

20            APPEARANCES ON NEXT PAGE

21

22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1
2        A P P E A R A N C E S:

3        FOR PLAINTIFF            MORRISON & FOERSTER
         APPLE:                   BY:  HAROLD J. MCELHINNY
4                                      RACHEL KREVANS
                                       NATHANIEL B. SABRI
5                                 425 MARKET STREET
                                  SAN FRANCISCO, CALIFORNIA  94105
6
                                  BY:  CHRISTOPHER L. ROBINSON
7                                 755 PAGE MILL ROAD
                                  PALO ALTO, CALIFORNIA  94303
8
9        FOR COUNTERCLAIMANT      WILMER, CUTLER, PICKERING,
         APPLE:                   HALE AND DORR
10                                BY:  WILLIAM F. LEE
                                       LAUREN B. FLETCHER
11                                     KEVIN S. PRUSSIA
                                  60 STATE STREET
12                                BOSTON, MASSACHUSETTS  02109

13                                BY:  MARK D. SELWYN
                                  950 PAGE MILL ROAD
14                                PALO ALTO, CALIFORNIA  94304

15

16       FOR THE DEFENDANT:       QUINN, EMANUEL, URQUHART,
                                  OLIVER & HEDGES
17                                BY:  WILLIAM C. PRICE
                                       JON C. CEDERBERG
18                                     ANTHONY P. ALDEN
                                  865 SOUTH FIGUEROA STREET
19                                10TH FLOOR
                                  LOS ANGELES, CALIFORNIA  90017
20
                                  BY:  VICTORIA F. MAROULIS
21                                555 TWIN DOLPHIN DRIVE
                                  SUITE 560
22                                REDWOOD SHORES, CALIFORNIA  94065

23                                BY:  CARL G. ANDERSON
                                  50 CALIFORNIA STREET, 22ND FLOOR
24                                SAN FRANCISCO, CALIFORNIA  94111

25
```

```
1      SAN JOSE, CALIFORNIA                    NOVEMBER 5, 2013

2                       P R O C E E D I N G S

3          (COURT CONVENED AT 2:05 P.M.)

4              THE COURT:  WELCOME, PLEASE TAKE A SEAT.

5              THE CLERK:  CALLING CASE NUMBER C-11-01846 LHK,

6      APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY LIMITED,

7      ET AL.

8              MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.

9      HAROLD MCELHINNY, RACHEL KREVANS, CHRISTOPHER ROBINSON, AND

10     NATE SABRI FROM MORRISON & FOERSTER FOR PLAINTIFF APPLE.

11             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE,

12     LAUREN FLETCHER, MARK SELWYN, AND KEVIN PRUSSIA FROM

13     WILMER, HALE FOR APPLE.

14             THE COURT:  GOOD AFTERNOON.

15             MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  BILL PRICE

16     WITH QUINN, EMANUEL, ALONG WITH JON CEDERBERG, CARL ANDERSON,

17     KEVIN JOHNSON, ANTHONY ALDEN, AND VICTORIA MAROULIS.

18             THE COURT:  ALL RIGHT.  GOOD AFTERNOON.

19         ALL RIGHT.  SO WE HAVE A NUMBER OF THINGS TO TALK ABOUT

20     TODAY.  LET'S START WITH THE PRELIMINARY JURY INSTRUCTIONS.  DO

21     YOU HAVE ANY OBJECTIONS TO THOSE?

22             MR. LEE:  APPLE HAS NONE, YOUR HONOR.

23             THE COURT:  OKAY.  WHAT ABOUT SAMSUNG?

24             MR. PRICE:  YOUR HONOR, THE ONLY ONE WE HAVE, AND IT

25     IS IN CONNECTION WITH ANOTHER ARGUMENT, OR ANOTHER ISSUE THAT'S
```

1    BEFORE THE COURT, AND THAT IS THE USE OF THE FINDING OF

2    NON-INFRINGEMENT ON PHONES IN THE FIRST PART OF THE TRIAL, THAT

3    USE IN THIS CASE.

4        ASSUMING THAT I CAN CONVINCE YOU THAT WE SHOULD BE ABLE

5    TO USE THOSE FINDINGS OF NON-INFRINGEMENT --

6        THE COURT:  I'M INCLINED TO GRANT THAT.  THE ORDER IS

7    NOT READY, BUT IT WOULD ALLOW YOU TO USE THE NON-INFRINGEMENT

8    VERDICTS FROM LAST YEAR.

9        MR. PRICE:  IN THAT CASE, WE NEED SOMEHOW TO INFORM

10   THE JURY THAT THEY DON'T INFRINGE CERTAIN PATENTS, EITHER BY

11   COURT INSTRUCTION OR BY JUDICIAL NOTICE OR SOMETHING.

12       MR. LEE:  BUT --

13       THE COURT:  I DON'T THINK THAT'S NECESSARY FOR THE

14   JURY INSTRUCTIONS.  YOU CAN MAKE THAT STATEMENT DURING OPENING.

15       MR. PRICE:  AS LONG AS IT'S GOING TO BE SOMETHING

16   THAT'S PART OF THE CASE.

17       MR. LEE:  YOUR HONOR, I DON'T KNOW IF YOU INTEND TO

18   HEAR US AT ALL ON THAT MOTION, BUT I THINK THAT TO THE EXTENT

19   THAT -- ONE OF THE COMPLICATIONS IS THIS:  WHILE THOSE PHONES

20   MAY NOT INFRINGE THE PATENTS THAT ARE AT ISSUE NOW, THEY

21   INFRINGE OTHER PATENTS THAT WERE AN ISSUE, SO FOR THE JURY TO

22   GET THE FULL PICTURE, THEY WOULD HAVE TO KNOW THAT THESE, WHAT

23   ARE CALLED NON-INFRINGING PHONES, WERE NON-INFRINGING OF THESE

24   PATENTS, BUT THEY INFRINGED OTHER APPLE PATENTS, BECAUSE THAT

25   WOULD GO TO THE FACTUAL ISSUE UNDER RITE-HITE.

1    SO WE CAN COME BACK TO IT AND ADDRESS IT WHEN YOUR HONOR

2    WANTS, BUT I THINK THAT IT WOULD BE -- OUR POSITION IS THEY

3    SHOULDN'T COME IN AT ALL, AS YOUR HONOR KNOWS.

4    BUT IT WOULD BE ONLY HALF THE PICTURE IF THEY WERE TOLD

5    THEY DON'T INFRINGE THESE PATENTS, WITHOUT KNOWING THAT THE

6    JURY HAS DETERMINED THAT THEY, IN FACT, INFRINGE OTHER PATENTS

7    THAT WERE DETERMINED BY THE FIRST JURY.

8    THE COURT:  WELL, FOR EXAMPLE, A NUMBER OF THESE

9    PRODUCTS THE JURY DID FIND INFRINGED THE '381 PATENT, THE '915

10   PATENT, THE D'305 PATENT, BUT THEN FOUND DID NOT INFRINGE THE

11   '163, SO THAT INFORMATION WOULD ALREADY BE COMING IN AND IS

12   ALREADY PART OF THE CHART.

13   MR. LEE:  RIGHT.  BUT I THINK WE'RE TALKING --

14   THEY'RE FOCUSSING UPON PRODUCTS NOT ON YOUR CHART, PRODUCTS

15   THAT WERE FOUND NOT TO INFRINGE THE PATENTS THAT ARE THE

16   SUBJECT OF THE RETRIAL --

17   THE COURT:  UM-HUM.

18   MR. LEE:  -- FOUND NOT TO HAVE INFRINGED THOSE

19   PATENTS BUT, IN FACT, INFRINGE OTHER APPLE PATENTS WHICH ARE

20   NOT ON YOUR CHART.

21   AND THAT'S, I THINK, THE PROBLEM OF TRYING TO DETERMINE

22   WHERE TO DRAW THE LINE.

23   THE COURT:  UM-HUM.

24   MR. LEE:  BUT IT'S IMPORTANT, UNDER RITE-HITE,

25   WHETHER WE, IN FACT -- WHETHER APPLE OWNS THE INTELLECTUAL

1      PROPERTY IN THESE OTHER PRODUCTS.

2          TO HAVE THE JURY BE TOLD THAT THEY DON'T INFRINGE

3      PATENT -- THE '381 PATENT, THE '915 PATENT WOULD BE PART OF THE

4      PICTURE, BUT THE FULL PICTURE WOULD BE, RIGHT, BUT THOSE SAME

5      PRODUCTS INFRINGE OTHER APPLE PATENTS AND THE PRIOR JURY

6      DETERMINED THAT, AND THAT WOULD BECOME IMPORTANT TO THE

7      RITE-HITE ANALYSIS, BECAUSE IT WOULD NOT BE AN AVAILABLE

8      SUBSTITUTE TO THEM UNDER RITE-HITE BECAUSE WE WOULDN'T HAVE

9      LICENSED IT OR SOLD IT TO THEM.

10          THE COURT:  I UNDERSTAND THAT IS YOUR ARGUMENT, BUT I

11      WAS NOT PERSUADED BY YOUR RITE-HITE ARGUMENT.

12          SO I WILL TAKE INTO CONSIDERATION IN -- BEFORE ISSUING

13      THAT ORDER WHAT, IF ANY, STATEMENTS WILL BE MADE AS TO PRODUCTS

14      THAT WERE FOUND NOT TO INFRINGE ONE OF THE PATENTS IN THIS

15      TRIAL REGARDING ANY OTHER PATENTS, ALTHOUGH AT THIS POINT I'M

16      NOT INCLINED TO ALLOW THAT INFORMATION IN.

17          BUT I THINK FOR PURPOSES OF THE PRELIMINARY JURY

18      INSTRUCTION OBJECTION, I AM NOT GOING TO MAKE ANY STATEMENTS

19      ABOUT WHETHER THESE PRODUCTS WERE FOUND TO -- WERE FOUND NOT TO

20      INFRINGE OR ANYTHING ELSE ALONG THOSE LINES.

21          MR. PRICE:  AND YOUR HONOR, YOU GAVE US YOUR

22      INDICATION.  I DON'T KNOW IF YOU WANT ME TO RESPOND TO

23      MR. LEE'S ARGUMENT ABOUT RITE-HITE, BUT THE RELEVANT ISSUE IS

24      WHETHER THE TECHNOLOGY, YOU KNOW, WAS AVAILABLE.

25          IF IT HAPPENED TO BE IN A PHONE THAT HAD OTHER

```
1     TECHNOLOGIES THAT INFRINGE, THAT'S IRRELEVANT TO THE QUESTION

2     THE JURY IS GOING TO BE ANSWERING IN THIS CASE, WHICH IS

3     WHETHER OR NOT, ON THE PATENTS ACCUSED IN THIS CASE, WERE THERE

4     SUBSTITUTE TECHNOLOGIES THAT WERE AVAILABLE, NOT PRODUCTS.

5     IT'S NOT LIKE RITE-HITE WHERE --

6               THE COURT:  I UNDERSTAND.

7               MR. PRICE:  OKAY.

8               THE COURT:  I MEAN, WE HAVE ACTUALLY DISCUSSED THIS

9     ISSUE ON OCTOBER 10TH AND OCTOBER 17TH.

10         I HAVE RULINGS FOR YOU ON ALL OF SAMSUNG'S MOTIONS TO

11    STRIKE AND SOME OTHER ISSUES.  SO I WOULD, IF AT ALL POSSIBLE,

12    LIKE TO KEEP GOING WITH THE REST OF TODAY'S AGENDA AND NOT -- I

13    MEAN, WE REALLY HAVE DISCUSSED THE NON-INFRINGING VERDICTS ON

14    BOTH OCTOBER 10TH AND OCTOBER 17TH.

15              MR. LEE:  AND YOUR HONOR, I'M NOT GOING TO REARGUE

16    ANYTHING HAVING BEEN HERE TWICE BEFORE.

17              THE COURT:  OKAY.

18              MR. LEE:  AS YOUR HONOR CONSIDERS THE ORDER, THE ONE

19    THING I'D ASK YOU TO CONSIDER IS THIS.

20              THE COURT:  YES.

21              MR. LEE:  TO THE EXTENT THAT WE'RE CONVEYING TO THE

22    JURY A CONSEQUENCE OF AN EVENT IN THE FIRST TRIAL, I THINK IT

23    WOULD BE INCORRECT, IT WOULD BE WRONG, TO CONVEY TO THEM PART

24    OF THE PICTURE.  SO FOR THEM TO THINK THAT A PRODUCT IS A

25    NON-INFRINGING SUBSTITUTE WHEN, IN FACT, IT HAS INFRINGED OTHER
```

1   INTELLECTUAL PROPERTY OF APPLE WOULD BE PART, AND AN INCOMPLETE

2   PART, OF THE PICTURE OF THE ENTIRE STORY.

3        THE COURT:  ALL RIGHT.  THANK YOU.

4        OKAY.  LET'S TALK ABOUT THE EVIDENTIARY OBJECTIONS.  I AM

5   GOING TO STRIKE SAMSUNG'S CHART.  I ALREADY STRUCK APPLE'S

6   CHART, SO THE SAMSUNG CHART IS -- I ACTUALLY DON'T HAVE THE

7   DOCKET NUMBER.

8        BUT I THINK YOUR POSITION WAS, "IF YOU'RE GOING TO STRIKE

9   APPLE'S CHART, THEN WE'RE FINE.  BUT IF YOU DON'T STRIKE

10  APPLE'S CHART, THEN HERE'S OUR CHART."

11       WELL, I STRUCK APPLE'S CHART, SO NOW I'M STRIKING YOUR

12  CHART AS WELL.

13       I WOULD ASK, WHEN BOTH PARTIES CITE ANY TRIAL TRANSCRIPTS,

14  IF YOU WOULD PLEASE GIVE THE ECF DOCKET NUMBER AS WELL.  SINCE

15  THERE'S SO MANY TRANSCRIPTS, IT WOULD JUST HELP US IN MORE

16  QUICKLY ACCESSING THAT PARTICULAR PAGE AND LINE NUMBER.

17       WITH REGARD TO THE EVIDENTIARY OBJECTIONS, THERE WILL BE

18  THREE PER EXHIBIT THAT YOU CAN FILE ACCORDING TO OUR SYSTEM

19  WHERE YOU'RE GOING TO FILE THEM TWO DAYS IN ADVANCE.

20       THE REST YOU'LL HAVE TO DO ON THE RECORD.  OKAY?  AND IF

21  THAT STARTS BEING ABUSED, THEN I'LL START CHARGING YOUR TRIAL

22  TIME.

23       BUT I'M HOPING THAT YOU WILL WANT TO APPEAR REASONABLE TO

24  THE JURY AND WILL NOT MAKE A WHOLE STRING OF UNNECESSARY

25  OBJECTIONS AS YOU DID IN YOUR CHARTS IN FRONT OF THE JURY.

1        BUT I'M NOT GOING TO ALLOW YOU TO FILE A SEPARATE

2    DOCUMENT.  YOU'LL HAVE TO STAND UP AND DO IT IN FRONT OF THE

3    JURY, AND IF YOU WANT TO MAKE A RELEVANCE OBJECTION TO A VERY

4    RELEVANT DOCUMENT AND LOOK UNREASONABLE, THAT'S UP TO YOU.

5            MR. MCELHINNY:  I DON'T WANT TO LOOK UNREASONABLE,

6    YOUR HONOR, BUT THE THREE PER --

7            THE COURT:  EXHIBIT.  THREE PER WITNESS.  LAST YEAR

8    IT WAS TWO, SO I'M INCREASING THE NUMBER TO THREE.

9            MR. MCELHINNY:  OKAY.  THANK YOU, YOUR HONOR.

10           THE COURT:  YEAH.  OKAY.  AND THEN ANYTHING ELSE

11    YOU'LL HAVE TO DO ON THE RECORD.  PLEASE, NO ARGUMENTS ON THE

12    RECORD.  JUST MAKE YOUR OBJECTION, "OBJECTION, RELEVANCE,"

13    "OBJECTION," YOU KNOW, JUST THE ONE WORD TERM, PLEASE.

14        ALL RIGHT.  AS FAR AS THE ROOM AND LOCATION, THIS ROOM IS

15    SIMPLY TOO SMALL.  I'M PLANNING TO CALL IN EXTRA JURORS, AND I

16    DON'T HAVE ENOUGH ROOM IN HERE WHEN I DO JURY SELECTIONS IN MY

17    REGULAR CRIMINAL CASES, BECAUSE IF YOU GET 40 JURORS, IT

18    COMPLETELY FILLS UP, SO I THINK IT'S JUST NOT POSSIBLE.  SO

19    WE'LL CONTINUE TO DO IT UP ON THE 5TH FLOOR IN THE SAME ROOM AS

20    LAST TIME.

21        LAST TIME YOU ALL HAD PROVIDED A LIST FOR THE JURORS OF

22    THE LAWYERS, THE WITNESSES, THE TRIAL DATES.  WOULD YOU BE

23    WILLING TO PREPARE THAT AGAIN?  IT WAS VERY HELPFUL DURING JURY

24    SELECTION.  JUST BECAUSE THERE'S SO MANY LAWYERS IN THIS CASE,

25    I WOULDN'T BE ABLE TO READ AND SPELL OUT ALL THE NAMES IN A WAY

```
1    THAT MADE SENSE.

2            MS. MAROULIS:  YES, YOUR HONOR, WE'LL PREPARE THAT

3    JOINTLY.

4            THE COURT:  OKAY.  I WAS ALSO GOING TO SUGGEST THAT

5    YOU CREATE TRIAL BINDERS LIKE LAST TIME.  I THOUGHT THAT WAS

6    HELPFUL TO THE JURY.  ARE YOU WILLING TO DO THAT AGAIN?

7        SO WHAT I WAS GOING TO PROPOSE IS THAT YOU INCLUDE --

8    WELL, LAST TIME YOU HAD A SEPARATE LIST OF ALL THE TRIAL DATES

9    AND TIMES, AND YOU HAD A SEPARATE TAB FOR ATTORNEYS AND

10   WITNESSES.

11       I DON'T CARE HOW YOU WANT TO ORGANIZE THAT, ALTHOUGH THE

12   JURY SELECTION LIST OF WITNESS, LAWYERS, AND TRIAL DATES, I'LL

13   NEED EXTRA COPIES OF THAT FOR OUR VENIRE, WHICH I'M GOING TO

14   ASK THAT YOU MAKE 50 COPIES OF THAT JUST IN CASE, AND --

15   ACTUALLY, WHY DON'T YOU FILE IT ON -- CAN YOU FILE THAT

16   THURSDAY AT 10:00 A.M.?

17           MS. MAROULIS:  YES, YOUR HONOR.

18           MR. MCELHINNY:  YES, YOUR HONOR.

19           THE COURT:  OKAY.  AND THEN ASSUMING THAT LOOKS FINE,

20   I'LL ASK YOU THEN JUST TO BRING 50 COPIES ON MONDAY -- I'M

21   SORRY -- ON TUESDAY.

22       BUT THEN THE TRIAL BINDERS, PLEASE HAVE IT TABBED FOR THE

23   PRELIMINARY JURY INSTRUCTIONS.  LAST TIME WE HAD A TAB FOR THE

24   CHART OF CLAIMS AT ISSUE WITH THE COURT'S CONSTRUCTIONS.  I

25   THINK THAT'S STILL HELPFUL, BUT I'D DEFER TO YOU WHETHER YOU
```

1    THINK WE NEED IT THIS TIME.  LAST TIME WE ALSO HAD A GLOSSARY

2    OF TERMS.

3              MS. MAROULIS:  YOUR HONOR, WE'VE ACTUALLY BEEN

4     STARTING A DISCUSSION BETWEEN THE PARTIES OF WHAT TO INCLUDE IN

5     THE JURY NOTEBOOKS.

6              THE COURT:  OKAY.

7              MS. MAROULIS:  BUT WE PLAN TO HAVE AN AGREED UPON

8     SET --

9              THE COURT:  OKAY, THAT'S GREAT.

10             MS. MAROULIS:  -- INCLUDING PICTURES OF THE WITNESSES

11    LIKE WE DID LAST TIME.

12             THE COURT:  YES, PLEASE.  PATENTS; A TAB FOR THE

13    FINAL JURY INSTRUCTIONS; AND THEN BLANK LINED PAPER FOR NOTES,

14    PLEASE.

15        OKAY.  SO IF YOU ALL WOULD JUST STIPULATE TO ALL THE

16    CONTENTS OF THAT TRIAL BINDER FOR THE JURORS.  WHATEVER YOU

17    DON'T AGREE TO IS OUT AND IS NOT INCLUDED.

18        AND DO YOU WANT TO JUST BRING THOSE THEN ON TUESDAY?

19             MS. MAROULIS:  YES, YOUR HONOR.

20             THE COURT:  OKAY.  AND IF YOU WOULD PLEASE BRING FOUR

21    SETS FOR THE COURT AS WELL, PLEASE.

22        OKAY.  I WOULD LIKE TO SET A SCHEDULE FOR POST-TRIAL

23    BRIEFING AND HEARING TODAY, AND I APOLOGIZE BECAUSE THIS IS

24    GOING TO REQUIRE SOME WORKING OVER THE HOLIDAYS, BUT JUST FOR

25    MY OWN CASE LOAD AND CERTAIN THINGS HAPPENING HERE, I'D LIKE TO

1     HAVE THE HEARING ON POST-TRIAL MOTIONS ON JANUARY 30TH OF 2014.

2     CAN WE DO THAT?

3              MR. MCELHINNY:  YES, YOUR HONOR.

4              THE COURT:  OKAY.  SO THE -- ANY JMOL MOTIONS, ANY

5     NEW TRIAL MOTIONS WOULD BE DUE ON DECEMBER 13TH; THE

6     OPPOSITIONS WOULD BE DUE ON JANUARY 6TH; AND THE REPLIES WOULD

7     BE DUE ON JANUARY 13TH.

8         AND UNLIKE LAST TIME WHERE WE HAD JUST A PLETHORA OF

9     MOTIONS, I'D JUST LIKE ONE MOTION OF 40 PAGES, AN OPPOSITION OF

10    40 PAGES, AND A REPLY OF 25 PAGES.

11         ANYONE WANT TO COMMENT ON THAT?

12              MR. MCELHINNY:  WE LIKE THAT.

13              MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

14              THE COURT:  ALL RIGHT.  SO THE HEARING IS GOING TO BE

15    JANUARY 30TH OF 2014 AT 1:30, AND THAT'S THE BRIEFING SCHEDULE.

16         ALL RIGHT.  ANYONE WANT TO COMMENT ON THE VERDICT FORM?

17              MS. MAROULIS:  YOUR HONOR, SAMSUNG PRESERVED ITS

18    OBJECTIONS TO THE VERDICT FORM BASED ON THE FACT THAT WE

19    BELIEVE THE THEORY OF DAMAGES SHOULD BE BROKEN OUT.

20         AND I SHOULD HAVE STATED WHEN MR. PRICE GOT UP, BOTH

21    PARTIES ARE PRESERVING THEIR OBJECTIONS AS TO PRELIMINARY JURY

22    INSTRUCTIONS FROM LAST TIME.  WE DIDN'T RESTATE OUR OBJECTIONS

23    FROM LAST YEAR, WE JUST PUT IT ON THE RECORD THAT EVERYONE

24    PRESERVES THEIR PRIOR JURY INSTRUCTION OBJECTION.

25         THIS IS FOR, PURELY FOR APPELLATE PURPOSES BECAUSE I

1   THINK OUR RESPECTIVE APPELLATE TEAMS WANT US TO MAKE AS MANY

2   PRESERVATIONS OF JURY INSTRUCTIONS AS THEY NEED TO.

3           THE COURT:  OKAY.  I WOULD HAVE HOPED THAT ANYTHING

4   THAT MATTERED TO YOU THIS TIME, YOU WOULD HAVE INCLUDED IT IN

5   YOUR DISPUTED JURY INSTRUCTIONS.

6           MS. MAROULIS:  WE INCLUDED THE LIST -- BOTH PARTIES

7   INCLUDED THE LIST OF DOCKET ENTRIES WHERE THEY STATED THEIR

8   OBJECTIONS.  SO WE UNDERSTOOD -- BOTH OF US UNDERSTOOD THAT WE

9   WERE NOT TO RESTATE OBJECTIONS THAT WERE PREVIOUSLY STATED.

10           THE COURT:  WELL, I ASSUME THAT ANYTHING THAT WAS A

11   PRIORITY TO YOU, YOU INCLUDED IT IN YOUR OBJECTIONS THIS TIME.

12   I MEAN, THEY WERE CERTAINLY CAREFULLY REVIEWED AND CONSIDERED.

13   SO --

14           MR. LEE:  I MEAN, WE HAVE NO OBJECTION TO THE

15   PRELIMINARY INSTRUCTIONS.

16           THE COURT:  OKAY.  APPLE HAS NO OBJECTION.

17           MR. LEE:  AND WE HAVE NO OBJECTION TO THE VERDICT

18   FORM.

19           THE COURT:  OKAY.  LET ME GO THROUGH, THEN, THE

20   RULINGS, OKAY, AND I HAVE A LONG LIST HERE.

21       SO WITH REGARD TO THE SAMSUNG MOTION TO EXCLUDE COPYING

22   EXHIBITS, AS WELL AS COPYING WITNESS TESTIMONY, SO THESE ARE

23   ECF NUMBERS 2418 AND 2419, THE OPPOSITIONS ARE 2437 AND 2438,

24   THE REPLIES ARE 2475 AND 2476, THESE MOTIONS WILL BE DENIED

25   WITHOUT PREJUDICE.  I'LL RULE ON EVIDENTIARY OBJECTIONS THAT

```
1       ARE SPECIFIC TO AN EXHIBIT OR TO A WITNESS.

2            I WILL SAY THAT MS. DAVIS'S DEMAND DOCUMENTS ARE LIMITED

3       TO EXHIBITS 24, 24S, 25, AND 25S OF MR. MUSIKA'S REPORTS FROM

4       LAST YEAR.

5            DO YOU HAVE ANY OBJECTION TO THAT?

6            MR. MCELHINNY:  WE THINK HE HAD ANOTHER EXHIBIT, 53S,

7       YOUR HONOR.

8            THE COURT:  THAT MR. MUSIKA HAD?

9            MR. MCELHINNY:  YES.

10           THE COURT:  WELL, IF IT WAS A DOCUMENT THAT HE

11      SPECIFICALLY RELIED UPON AS EVIDENCE OF DEMAND IN HIS REPORT,

12      THEN THAT WOULD BE ALLOWED.

13           I DON'T THINK IT'S -- DO YOU HAVE -- WHY DON'T YOU HAVE

14      SOMEONE HAND ME UP A COPY OF EXHIBIT 53?

15           DOES SAMSUNG HAVE AN OBJECTION TO THAT?

16           MS. MAROULIS:  WE NEED TO LOOK AT EXHIBIT 53, YOUR

17      HONOR.  ONE MINUTE.

18           THE COURT:  ALL RIGHT.  PLEASE TAKE A LOOK.

19           (PAUSE IN PROCEEDINGS.)

20           MS. MAROULIS:  YOUR HONOR, WHILE WE'RE LOOKING FOR

21      THE EXHIBIT, WE UNDERSTOOD THE COURT'S RULING LAST TIME WAS

22      THAT THEY WOULD BE LIMITED TO EXHIBITS 24 AND 25.  WE'LL TAKE A

23      LOOK AT 53 RIGHT AWAY, BUT WE THOUGHT THAT WAS PUT TO REST IN

24      PREVIOUS HEARINGS.

25           THE COURT:  ACTUALLY, LET ME CHECK.  I THINK THAT IS
```

```
1    CORRECT.
2              MR. MCELHINNY:  YOUR HONOR, THESE ARE THE EXHIBITS
3    THAT WERE OBTAINED SUBSEQUENT -- YOU REMEMBER HOW MUSIKA'S
4    REPORT WAS DONE AND THEN SAMSUNG PRODUCED DOCUMENTS SUBSEQUENT
5    TO THAT AND 53 WAS THE SUPPLEMENT.  IT WAS MATERIAL THAT WAS --
6    IT'S PART OF THE SUPPLEMENTAL EXPERT REPORT.
7         I HAVE IT.  I WANT TO SHOW IT TO YOU.
8         OKAY.
9              THE COURT:  WELL, I'M LOOKING AT --
10             MR. MCELHINNY:  I HAVE YOUR --
11             THE COURT:  -- MY ORDER GRANTING IN PART, DENYING IN
12   PART MOTIONS TO STRIKE PORTIONS OF UPDATED EXPERT REPORT ON
13   DAMAGES.  THAT'S ECF NUMBER 2575.  AND --
14             MR. MCELHINNY:  AT PAGE --
15             THE COURT:  -- I DID DENY SAMSUNG'S MOTION TO STRIKE
16   THEIR REFERENCES TO DOCUMENTS IN EXHIBIT 53S TO MUSIKA'S
17   SUPPLEMENTAL REPORT.
18             MR. MCELHINNY:  YES, YOUR HONOR, PAGE 10.  THANK YOU.
19             THE COURT:  OKAY.  THAT'S PAGE 10 OF ECF NUMBER 2575.
20        OKAY.  WITH REGARD TO YOUR OPUSES ON COPYING DOCUMENTS,
21   THAT'S ECF NUMBERS 2524 AND 2547, I'M ALSO DENYING THOSE
22   WITHOUT PREJUDICE, AND I'LL RULE ON THOSE AS TO SPECIFIC
23   DOCUMENTS DURING YOUR EVIDENTIARY OBJECTIONS.  OKAY?
24        LET'S GO TO THE NEXT SET OF EXHIBITS.  EXHIBIT 29A, THIS
25   MOTION TO STRIKE IS GRANTED AS TO PRODUCTS THAT ARE NOT IN THE
```

```
 1    TRIAL FOR NEXT WEEK, BUT IT'S DENIED AS TO PRODUCTS THAT ARE IN

 2    NEXT WEEK'S TRIAL.

 3         I WOULD LIKE THE PARTIES TO MEET AND CONFER TO EITHER

 4    REDACT THE STRICKEN PORTIONS OR TO CREATE A NEW DOCUMENT WITH

 5    ONLY THE PRODUCTS THAT ARE SUBJECT TO THE RETRIAL.  UNDER A 403

 6    ANALYSIS, I THINK IT WOULD BE CONFUSING FOR THE JURY AND NOT --

 7    AND THAT WOULD OUTWEIGH ANY PROBATIVE VALUE OF ADMITTING THAT

 8    INFORMATION.

 9         SO CAN YOU ALL MEET AND CONFER TO CREATE EITHER A REDACTED

10    DOCUMENT OR A NEW DOCUMENT WITH ONLY THE INFORMATION RELATED TO

11    THE PRODUCTS IN THIS RETRIAL?

12              MR. MCELHINNY:  YES, YOUR HONOR.

13              MS. MAROULIS:  YES, YOUR HONOR.

14              THE COURT:  OKAY.  ALL RIGHT.  AND I'M NOT GOING TO

15    STRIKE THE PRE-NOTICE SALES INFORMATION FOR THE PRODUCTS THAT

16    ARE SUBJECT TO THIS RETRIAL.  A REASONABLE ROYALTY ANALYSIS

17    WOULD START FROM THE DATE OF FIRST INFRINGEMENT.  I THINK IT

18    WOULD BE PROBATIVE AND IT'S NOT OUTWEIGHED BY THE OTHER 403

19    FACTORS.

20         I ASSUME YOU DON'T WANT A LIMITING INSTRUCTION ON THAT.

21    DO YOU?

22              MS. MAROULIS:  CAN WE GET BACK TO YOU, YOUR HONOR?

23         IS YOUR HONOR REFERRING TO 1500A?  BECAUSE WE SOUGHT TO

24    EXCLUDE NOT THE PRE-NOTICE SALES, BUT WE SOUGHT TO EXCLUDE

25    PRODUCTS NOT SUBJECT TO THE TRIAL.
```

```
1              THE COURT:  WELL, I THOUGHT YOU ALSO MADE THAT

2      OBJECTION AS TO 29A.

3              MS. MAROULIS:  BOTH, YOUR HONOR.

4              THE COURT:  OKAY.  WELL, I'LL GET TO 1500A.

5          BUT THAT'S MY RULING AS TO 29A.  I THINK IT'S PROBATIVE

6      AND IT'S NOT OVERLY PREJUDICIAL.  IF YOU WANTED SOME LIMITING

7      INSTRUCTION, I WOULD BE OPEN TO THAT.

8          WOULD APPLE HAVE AN OBJECTION TO A LIMITING INSTRUCTION,

9      JUST SO THERE'S NO CONFUSION FOR THE JURY TO AWARD DAMAGES IN

10     THE, YOU KNOW, PRE-NOTICE 2010 PERIOD?

11             MR. MCELHINNY:  I --

12             MS. MAROULIS:  YOUR HONOR, I THINK WE WOULD LIKE A

13     LIMITING INSTRUCTION.

14             MR. MCELHINNY:  IT DEPENDS WHAT IT IS, YOUR HONOR.

15     I --

16             THE COURT:  WELL, CAN YOU MEET AND CONFER AND SEE IF

17     YOU CAN REACH AN AGREEMENT?

18             MR. MCELHINNY:  YES, YOUR HONOR.

19             THE COURT:  AND IF YOU CAN'T, THEN MAKE COMPETING

20     PROPOSALS.

21         NOW, I COULD PROBABLY JUST HANDLE THAT RULING ON COMPETING

22     LIMITING INSTRUCTION PROPOSALS AT THE TIME THAT THAT EXHIBIT IS

23     GOING TO BE USED AND JUST MAKE IT PART OF OUR REGULAR PROCESS,

24     UNLESS YOU NEED A RULING SOONER TO HELP YOU PREPARE FOR THE

25     TRIAL.
```

```
 1          MS. MAROULIS:  WE SHOULD MEET AND CONFER AND COME UP

 2     WITH A PROPOSAL, YOUR HONOR.

 3          THE COURT:  ALL RIGHT.  WHY DON'T YOU DO THAT?  THANK

 4     YOU.

 5          OKAY.  AS FAR AS 1500A, MY RULING WOULD BE THE SAME.  I'M

 6     GOING TO GRANT THE MOTION TO STRIKE AS TO PRODUCTS THAT ARE NOT

 7     AT ISSUE IN THIS TRIAL; DENY IT AS TO THE 13 PRODUCTS THAT ARE

 8     IN THIS RETRIAL; AND ASK YOU TO MEET AND CONFER TO EITHER

 9     REDACT THE DOCUMENT OR CREATE A NEW DOCUMENT WITH ONLY THE

10     INFORMATION THAT HASN'T BEEN STRICKEN.

11          AND HERE AS WELL, I'M NOT INCLINED TO LIMIT IT TO

12     PRE-NOTICE SALES, OR TO EXCLUDE PRE-NOTICE SALES.

13          DO YOU WANT A LIMITING INSTRUCTION ON THIS AS WELL?

14          MS. MAROULIS:  YES, YOUR HONOR.

15          THE COURT:  OKAY.  IF YOU WOULD PLEASE MEET AND

16     CONFER ON THAT?  I THINK UNDER 403 BALANCING, THE WAY THAT I'M

17     RULING ON BOTH DOCUMENTS IS CONSISTENT WITH THAT ANALYSIS.

18          ALL RIGHT.  LET'S GO TO YOUR -- TO SAMSUNG'S MOTION TO

19     EXCLUDE EXHIBITS REGARDING GENERAL PRAISE FOR APPLE PRODUCTS OR

20     PRAISE FOR FEATURES NOT AT ISSUE IN THIS TRIAL.

21          UNDER PANDUIT FACTOR 1, DEMAND FOR THE PATENTED PRODUCT IS

22     WHAT APPLE WOULD HAVE TO SHOW.

23          IT'S ONLY PANDUIT FACTOR 2 THAT LIMITS THE EVIDENTIARY

24     BURDEN TO DEMAND FOR THE PATENTED FEATURES.

25          SO ALL OF THESE DOCUMENTS ARE RELEVANT TO PANDUIT 1, AND I
```

1     THINK UNDER 403, IT IS MORE PROBATIVE THAN ANY OF THE OTHER

2     FACTORS I'M TO CONSIDER UNDER THAT RULE, SO THE MOTION IS

3     DENIED AS TO BOTH 26A AND AS TO 37.

4          AND I WOULD JUST NOTE THAT 26A ARE THE CHARTS THAT

5     MS. DAVIS CREATED FROM MR. MUSIKA'S EXHIBITS 24 AND 25, SO I'VE

6     ALREADY RULED ON THOSE UNDERLYING EXHIBITS ANYWAY.

7          OKAY.  LET'S GO TO SAMSUNG'S MOTION TO EXCLUDE WITNESSES

8     WHOSE TESTIMONY COULD ONLY BE RELEVANT TO INFRINGEMENT AND

9     INVALIDITY.

10         THIS IS DENIED WITHOUT PREJUDICE.  OBVIOUSLY WE'RE IN A

11    LITTLE BIT OF A COMPLEX SITUATION IN THAT THE SAME INFORMATION

12    COULD BE CATEGORIZED FOR ANY OF THESE TOPICS, INFRINGEMENT,

13    VALIDITY, NON-INFRINGING ALTERNATIVES, DAMAGES AND WHATNOT, BUT

14    I'M DENYING IT WITHOUT PREJUDICE.

15         YOU CAN RAISE AN OBJECTION TO A SPECIFIC WITNESS OR

16    SPECIFIC TESTIMONY DURING OUR REGULAR EVIDENTIARY OBJECTION

17    PROCESS.  OKAY?

18         ALL RIGHT.  LET'S GO TO SAMSUNG'S MOTION TO EXCLUDE

19    WITNESSES RELATING TO THE DEVELOPMENT OF APPLE'S ASSERTED

20    PATENTS.

21         THAT MOTION IS DENIED.  UNDER 403, I THINK THAT IS

22    PROBATIVE AND WILL NOT BE PREJUDICIAL TO SAMSUNG TO THE EXTENT

23    THAT IT OUTWEIGHS THE OTHER 403 FACTORS.

24         BUT I AM GRANTING SAMSUNG'S MOTION TO STRIKE

25    SCOTT FORSTALL'S TESTIMONY ON ANY TOPIC OTHER THAN THE '163

1    PATENT.  I HAD ALREADY, LAST YEAR, STRICKEN MR. FORSTALL'S

2    TESTIMONY ABOUT THE OTHER PATENTS BECAUSE OF LACK OF TIMELY

3    DISCLOSURE BY APPLE, SO THAT RULING REMAINS IN EFFECT, AND

4    THAT'S ECF 1563 AT PAGE 6.

5         OKAY.  LET'S GO TO SAMSUNG'S MOTION TO EXCLUDE WITNESSES

6    ABOUT -- IT'S A NUMBER OF ISSUES, BUT LET'S TALK ABOUT THE

7    TRADE DRESS ISSUES AND BRAND ISSUES.

8         HOW DOES THE BRAND EVIDENCE RELATE TO DEMAND FOR THE TWO

9    DESIGN PATENTS?

10        MR. MCELHINNY:  WE'VE HAD THIS DISCUSSION.  THIS IS A

11    GROUND HOG DISCUSSION.

12        THE COURT:  OKAY.

13        MR. MCELHINNY:  I MEAN, THE -- THE -- YOUR HONOR IS

14    EXACTLY RIGHT ABOUT WHAT WE HAVE TO PROVE, WHICH IS THAT A

15    PERSON WHO COULD NOT OBTAIN THIS SAMSUNG PHONE BECAUSE IT WOULD

16    NOT BE ON THE MARKET, WHETHER OR NOT THEY WOULD BUY A COMPETING

17    APPLE PRODUCT.

18        AND THE ARGUMENTS THAT GO TO WHY THEY WOULD GO TO -- AND

19    WE'VE SEEN IT IN THE SAMSUNG INTERNAL DOCUMENTS -- THE

20    IMPORTANCE OF APPLE'S BRAND, THE ECOSYSTEM, THE SIGNIFICANCE OF

21    THE NAME THAT APPLE HAS MADE IN THE MARKET, ITS REPUTATION, AND

22    THE FACT THAT THERE WAS, IN FACT, HUGE DEMAND IN THE MARKET FOR

23    ITS PRODUCTS.

24        AND WE HAD CHRIS STRINGER TESTIFY LAST TIME, WE HAD

25    DOCUMENTS THAT SHOWED IT, THE PUBLIC SURVEYS THAT WERE DONE,

1    THAT THE BRAND IS CLOSELY CONNECTED TO THE DESIGN OF THE

2    PRODUCTS AT THE TIME, THE SIMPLISTIC DESIGN, THE SIMPLIFIED

3    DESIGN, THE UNIQUE DESIGN, THE FACT THAT IT WAS DIFFERENT THAN

4    ANYTHING THAT HAD BEEN IN THE MARKETPLACE BEFORE.

5         THE COURT:  BUT DOESN'T THIS UNDERMINE YOUR ARGUMENT

6    THAT SAYS CONSUMERS WILL BUY ANYTHING JUST BECAUSE IT'S APPLE?

7    IT DOESN'T MATTER WHETHER IT HAS THIS PATENTED FEATURE OR NOT.

8    THEY'RE NOT GOING TO BUY A COMPETING PRODUCT ANYWAY BECAUSE

9    THEY WANT AN APPLE, THEY WANT THE APPLE BRAND.

10        MR. MCELHINNY:  THIS IS THE DIFFERENCE BETWEEN

11   PANDUIT FACTOR 1 AND PANDUIT FACTOR 2.

12        THE COURT:  UM-HUM.

13        MR. MCELHINNY:  AND ACTUALLY, THE BIG QUESTION THAT

14   THE JURY HAS TO -- THE BIG QUESTION FOR LOST PROFITS IS IF THEY

15   COULD NOT HAVE BOUGHT THE INFRINGING SAMSUNG PRODUCT, IS IT

16   REASONABLY LIKELY THAT THEY WOULD HAVE BOUGHT AN APPLE PRODUCT?

17        AND AS WE KNOW FROM RITE-HITE AND OTHERS, IT DOESN'T EVEN

18   HAVE TO BE A PATENTED PRODUCT.  IT'S, DID WE LOSE A SALE

19   BECAUSE THEY INFRINGE?

20        THE COURT:  RIGHT.  BUT PEOPLE THAT ARE LOYAL TO THE

21   APPLE BRAND WOULD NEVER HAVE BOUGHT A SAMSUNG PRODUCT IN THE

22   FIRST PLACE.

23        MR. MCELHINNY:  THE WAY THE MARKET WORKS -- AND WE

24   HAD THE TESTIMONY OF THIS AT THE FIRST TRIAL -- THE BATTLE HERE

25   GOES FOR FIRST PURCHASERS, FOR PEOPLE WHO ARE OPTING INTO THE

```
 1    SMARTPHONE MARKET FOR THE FIRST TIME, AND THAT GOES BASED ON

 2    THE REPUTATION --

 3              THE COURT:  SO THEY HAVE NO ECOSYSTEM LOYALTY THEN.

 4              MR. MCELHINNY:  NO, NO.  BUT IT GOES ON -- THIS IS

 5    THE BRAND ISSUE.  IT GOES ON WHAT REPUTATION IS, IT GOES ON

 6    WHO'S RECOMMENDING PRODUCTS, IT'S ON WHAT THEIR FRIENDS ARE

 7    USING, IT GOES ON WHAT THEY SEE WALKING DOWN THE STREET, IT

 8    GOES ON ADVERTISING, IT GOES ON ANYTHING THAT COULD DRIVE A

 9    SALE.

10         AND APPLE'S BRAND IS, IN FACT -- I MEAN, EVERYBODY KNOWS

11    NOW, IT'S NOW THE STRONGEST BRAND IN THE WORLD AND THERE ISN'T

12    A PERSON IN MARKETING WHO WOULD TELL YOU THAT BRAND STRENGTH --

13    I'M PUTTING IT IN THE MIX NEGATIVE.  EVERY MARKETING PERSON

14    WOULD TELL YOU THAT BRAND STRENGTH DRIVES SALES.  AND THAT'S,

15    THAT'S WHAT WE HAVE TO PROVE, YOUR HONOR.

16              THE COURT:  BUT HOW DOES THE BRAND STRENGTH AT ALL

17    LINK TO THE TWO DESIGN PATENTS --

18              MR. MCELHINNY:  FIRST OF ALL --

19              THE COURT:  -- THAT ARE THE SUBJECT OF THIS TRIAL?

20              MR. MCELHINNY:  FIRST OF ALL, IT DOESN'T HAVE TO.

21              THE COURT:  OKAY.

22              MR. MCELHINNY:  OKAY?  BECAUSE IN RITE-HITE, WE HAD

23    THE TWO -- I THINK IT'S RITE-HITE WITH THE TWO TRUCK BARS AND

24    IT HAD THE ONE BAR THAT WAS PATENTED AND THE OTHER ONE THAT

25    WASN'T, BUT THEY WERE ABLE TO GET SALES FOR THE HITCH TOW TO
```

1    THE TRUCK EVEN THOUGH IT WASN'T PATENTED BECAUSE THEY WERE ABLE

2    TO PROVE THAT THAT WAS THE ONE THAT WAS IN THE MARKET AND

3    THAT'S THE ONE THAT PEOPLE WOULD HAVE BOUGHT.

4         SO IT DOESN'T.

5         THE QUESTION IS WHETHER OR NOT WE LOST A SALE.

6         BUT IN OUR UNIQUE CASE, WE HAD A TON OF TESTIMONY FROM --

7    ABOUT THE PRODUCT AS HERO.  THE WHOLE WAY THAT APPLE APPROACHES

8    THE MARKETPLACE IS BY EMPHASIZING THE DESIGN OF ITS MARKETS.

9    WE HAD CHRIS STRINGER COME IN AND TALK ABOUT THE DESIGN.

10        WE HAD -- THE WAY PEOPLE REACTED, THE WAY THE MARKET

11   REACTED TO THE DESIGN, THE PUBLICITY IT GOT, THE DRIVING FORCE

12   FOR SALES, THE WAY THAT SALES REACTED TO THAT PUBLICITY, THAT

13   WAS ALL TIED TO THE UNIQUE DESIGN OF APPLE PRODUCTS.

14        THAT'S WHAT THE REVIEWERS SAY.  THAT'S WHAT "THE NEW YORK

15   TIMES" SAID.  THAT'S WHAT "TIME" MAGAZINE SAID.  IT'S A DIRECT

16   CONNECTION BETWEEN THIS --

17             THE COURT:  BUT IT JUST SEEMS THAT YOU'RE CONFLATING

18   BRAND AND DESIGN.

19             MR. MCELHINNY:  THIS IS -- I DON'T --

20             THE COURT:  AND I DON'T --

21             MR. MCELHINNY:  I DON'T THINK I --

22             THE COURT:  I CERTAINLY FOUND IT TO BE PROBATIVE OF

23   TRADE DRESS DILUTION AND THAT'S WHY IT ALL CAME IN LAST YEAR.

24        BUT I'M JUST NOT QUITE SEEING THE CONNECTION WITH WHAT WE

25   HAVE AS CLAIMS THIS TIME.

```
 1          MR. MCELHINNY:  I'M -- I'M -- I'M NOT TRYING TO

 2     CONFLATE BRAND AND DESIGN.

 3          THE COURT:  UM-HUM.

 4          MR. MCELHINNY:  I'M TRYING TO ANSWER YOUR QUESTION

 5     ABOUT WHETHER OR NOT DESIGN CONTRIBUTES TO BRAND STRENGTH.

 6     THAT'S THE QUESTION I THINK I'M ANSWERING.

 7          AND WHAT WE SAW IN THE EVIDENCE, WHAT WE SAW IN THE

 8     MARKETPLACE IS THAT WHEN YOU ASK PEOPLE, WHY ARE THE APPLE

 9     PRODUCTS, TO USE THE EVIDENCE THAT WAS IN THIS CASE, SEXY, WHY

10     DO PEOPLE WANT THEM, WHY DO THEY SELL OUT THE DAY THAT THEY'RE

11     RELEASED, THE DESIGN OF THOSE PATENTS -- THE DESIGN OF THOSE

12     PRODUCTS WAS LISTED AS ONE OF THE TOP TWO BOXES, TO USE

13     PHIL SCHILLER'S NAME, OF THE FACTORS THAT DRIVE PEOPLE TO

14     PURCHASE APPLE PRODUCTS.

15          AND HERE I JUST WANT TO KEEP COMING BACK TO THE SAME

16     QUESTION.  IT'S A BUT FOR QUESTION.  WOULD THEY HAVE BOUGHT AN

17     APPLE PHONE?

18          AND OUR ANSWER IS ACTUALLY A PRETTY CONSERVATIVE NUMBER,

19     BUT SOME PERCENTAGE OF THOSE PEOPLE WOULD HAVE BOUGHT AN APPLE

20     PHONE, AND THE REASON THAT THEY WOULD IS BECAUSE THERE WAS HUGE

21     DEMAND FOR THE APPLE PRODUCTS IN THE MARKETPLACE AS WITNESSED

22     BY THESE ARTICLES THAT WE WANT TO GET IN, AS WITNESSED BY THE

23     REVIEWS, AS WITNESSED BY SAMSUNG'S OWN INTERNAL DOCUMENTS THAT

24     RECOGNIZED THAT THIS IS WHERE THE MAGNETISM EXISTED THAT WAS

25     DRAWING CUSTOMERS INTO THE STORES AND INTO THE CARRIERS IN
```

```
1    ORDER TO BUY THE APPLE PHONES.

2            THE COURT:  ALL RIGHT.  DOES SAMSUNG WANT TO RESPOND?

3            MS. MAROULIS:  YOUR HONOR, VERY BRIEFLY.

4        SAMSUNG AGREES THAT THERE'S NO CONNECTION THAT APPLE HAS

5    ESTABLISHED BETWEEN THE PATENTS AT ISSUE IN THIS VERY NARROW

6    DAMAGES TRIAL AND THE BRAND IN GENERAL.

7        I THINK WE'RE GOING VERY FAR AFIELD FROM WHAT THE CASE IS

8    ABOUT RIGHT NOW, WHICH IS WHAT IS THE COMPENSATION FOR THESE

9    PARTICULAR SPECIFIC PATENTS?

10       NOT ONLY ARE WE GOING TO THE BRANDS FROM DESIGNS NOW,

11   COUNSEL TALKED ABOUT MAGNETISM, AND MAGNETISM IS NOT RELEVANT

12   TO PATENT DAMAGES.

13       SO WE'RE CONFLATING THE ISSUES OF VERY SPECIFIC FIVE

14   PATENTS AND WHATEVER THESE PATENTS CAN BE SHOWN TO DRIVE AS FAR

15   AS DEMAND.

16       AND THIS -- IF APPLE IS ALLOWED TO TALK ABOUT ITS BRAND

17   INCESSANTLY, WE'RE GOING TO HAVE A WHOLE TRIAL ABOUT HOW APPLE

18   IS GREAT AND NOT REALLY RELATED AT ALL TO WHAT WE NEED TO

19   ESTABLISH HERE.

20       AS WE DISCUSSED IN THE LAST TWO HEARINGS, MR. WAGNER HAS

21   NOT DISPUTED THAT THERE'S A DEMAND FOR THE PATENTED PRODUCT AS

22   A WHOLE.

23       THE ISSUE IS WHETHER THE I.P. ASSERTED HERE DRIVES THE

24   SALES, DRIVES THE DEMAND, AND THE BRAND GENERALLY IS NOT GOING

25   TO GO TO THIS ISSUE.
```

```
1          SO HAVING SEVERAL WITNESSES FROM APPLE DESCRIBE APPLE'S

2     GREATNESS OR APPLE'S BRAND IS OUTSIDE THE SCOPE OF THIS TRIAL

3     AND IS GOING TO BE PREJUDICIAL TO SAMSUNG BECAUSE IT WILL BUILD

4     UP APPLE'S PRODUCT IN -- NOT IN THE RESPECT THAT IT NEEDS TO BE

5     DEALT WITH HERE, WHICH IS SPECIFIC PATENTS, SPECIFIC PRODUCTS,

6     AND WHAT COMPENSATION IS APPROPRIATE FOR THESE PRODUCTS.

7          THE COURT:  I'M GOING TO DENY THIS WITHOUT PREJUDICE.

8     I'LL HAVE TO WAIT AND SEE HOW EXACTLY APPLE'S CONTENTION COMES

9     IN, AND AT SOME POINT IF THE 403 ANALYSIS STARTS WEIGHING FOR

10    EXCLUSION, THEN I MAY GRANT AN OBJECTION IF IT'S BECOMING JUST

11    TOO FAR AFIELD OF DEMAND FOR THE PATENTED PRODUCT AND THE

12    PROBATIVE VALUE IS BEING OUTWEIGHED BY UNDUE CONSUMPTION OF

13    TIME AND POSSIBLE CONFUSION.

14        BUT AT THIS POINT IT'S A DENIAL.

15            MR. MCELHINNY:  I DON'T WANT TO ARGUE A DENIAL.

16            MS. MAROULIS:  IT WAS GRANTED IN YOUR FAVOR.

17            THE COURT:  YEAH.

18            MR. MCELHINNY:  I KNOW.  BUT I WANT TO JUST FOCUS THE

19    COURT ON WHERE WE DIFFER SO THAT YOU JUST HAVE THAT.

20            THE COURT:  OKAY.

21            MR. MCELHINNY:  YOU DON'T HAVE TO RULE ON THAT.

22            THE COURT:  ALL RIGHT.

23            MR. MCELHINNY:  BUT WHAT WE ARE SAYING, AND WHAT I

24    THINK THE LAW SAYS, IS THAT THE SIMPLE QUESTION ON LOST PROFITS

25    IS SIMPLY A BUT FOR QUESTION.  IF THEY COULD NOT HAVE PURCHASED
```

```
 1        THIS INFRINGING PHONE, WOULD THEY HAVE PURCHASED AN APPLE
 2     PRODUCT?  THAT'S WHAT WE THINK THE QUESTION IS.
 3            THE WAY MS. MAROULIS AND SAMSUNG HAVE JUST PHRASED IT IS,
 4     WOULD THE SPECIFIC PATENTED FEATURES HAVE DRIVEN ADDITIONAL
 5     SALES?
 6            AND THAT'S WHERE WE DIFFER.  YOU DON'T HAVE TO DECIDE THAT
 7     RIGHT NOW.
 8                THE COURT:  UM-HUM.
 9                MR. MCELHINNY:  BUT THAT'S WHY WE KEEP COMING TO YOU
10     WITH COMPLETELY DIFFERENT APPROACHES BECAUSE WE'RE ANSWERING
11     DIFFERENT QUESTIONS.
12                THE COURT:  WELL, I CAN STILL SEE, DEPENDING ON HOW
13     THE EVIDENCE COMES IN -- AND YOUR TIME IS LIMITED SO I ASSUME
14     THERE'S NOT GOING TO BE AN EXCESSIVE AMOUNT -- BUT I CAN
15     CERTAINLY SEE THAT SOME EXCESSIVE AMOUNT OF BRAND INFORMATION
16     WILL JUST NOT BE PROBATIVE ANYMORE.  IT'LL BE CUMULATIVE AND AT
17     SOME POINT WE DO NEED TO MOVE ON.  SO --
18                MR. MCELHINNY:  WE UNDERSTAND THAT.
19                MS. MAROULIS:  THANK YOU, YOUR HONOR.  WE'LL RENEW AN
20     OBJECTION AT THE APPROPRIATE TIME.
21                THE COURT:  ALL RIGHT.  LET'S GO TO THE OBJECTION
22     REGARDING THE HISTORY, MARKETING, AND STRATEGY OF THE IOS
23     DEVICES.
24            THAT'S DENIED.  I THINK THAT IS PROBATIVE AND UNDER 403 IT
25     SHOULD COME IN.
```

```
 1              NOW, THERE IS THIS QUESTION ABOUT MARKETING.  I'M INCLINED

 2      TO DENY AS TO MARKETING OF THE PATENTED FEATURES, BUT TO GRANT

 3      AS TO JUST GENERAL MARKETING.

 4              ANYONE WANT TO COMMENT ON THAT?

 5              MR. MCELHINNY:  I'D -- THE PROBLEM WITH THIS IS THAT

 6      THESE MOTIONS ARE PHRASED SO GENERALLY THAT IT'S NOT CLEAR TO

 7      ME WHAT DOCUMENT COMES IN OR OUT WITH A RULING LIKE THAT.

 8              THE COURT:  SURE.

 9              MR. MCELHINNY:  SO --

10              THE COURT:  WHAT MARKETING EVIDENCE, EFFORTS ARE YOU

11      GOING TO PRESENT TO THE JURY AS EVIDENCE OF DEMAND?  IS THERE

12      SOMETHING SPECIFIC THAT YOU HAVE IN MIND?

13              MR. MCELHINNY:  I -- NOW I WILL CONFESS TO YOU --

14              THE COURT:  YEAH.

15              MR. MCELHINNY:  -- THAT IN 35 YEARS OF PRACTICING

16      LAW, I HAVE NEVER BEEN ABLE TO FIGURE OUT WHAT "MARKETING"

17      MEANS.

18          BUT WE ARE, FOR EXAMPLE, GOING TO SHOW ADVERTISEMENTS, ONE

19      OR TWO -- WE ONLY HAVE EIGHT HOURS, SO NOTHING IS GOING TO BE

20      CUMULATIVE HERE.

21              THE COURT:  OKAY.

22              MR. MCELHINNY:  -- THAT SHOW THE SPECIFIC FEATURES

23      LIKE WE DID THE LAST TIME.  WE HAD THE DOUBLE TOUCH TO ZOOM AD.

24      WE'LL PROBABLY SHOW THAT AGAIN.

25              THE COURT:  THAT MOTION TO STRIKE IS DENIED AS TO
```

```
1      THAT.
2               MR. MCELHINNY:  THAT'S WHAT I'M SAYING.  I CAN'T
3      STAND HERE AND SAY THAT YOUR HONOR'S TENTATIVE RULING HAS HURT
4      ME IN MY CASE BECAUSE I DON'T KNOW WHAT SPECIFIC DOCUMENTS
5      THEY'RE DOING.
6               WE ARE NOT -- YOU HEARD MR. SCHILLER TESTIFY LAST TIME.
7      HIS TESTIMONY IS GOING TO BE PRETTY MUCH THE SAME, ONLY MUCH
8      SHORTER.  I MEAN, THAT'S WHAT IT'S GOING TO BE ABOUT, WHICH IS
9      WHY PEOPLE BUY OUR PRODUCTS AND WHY SAMSUNG'S INFRINGEMENT HURT
10     US.  THAT'S THE TESTIMONY.
11              AND TO TRY TO BREAK IT DOWN INTO BRAND OR MARKETING, I'M
12     NOT -- OTHER THAN IN TERMS OF PARTICULAR DOCUMENTS --
13              THE COURT:  UM-HUM.
14              MR. MCELHINNY:  -- I DON'T KNOW HOW TO RESPOND TO
15     YOUR HONOR BEYOND THAT.
16              THE COURT:  ALL RIGHT.  WELL, I MEAN, I COULD -- I'M
17     GOING TO DENY THE MOTION TO STRIKE AS TO MARKETING OF PATENTED
18     FEATURES.  THAT'S OBVIOUSLY HIGHLY PROBATIVE.
19              BUT WITH REGARD TO GENERAL MARKETING -- AND I AGREE WITH
20     YOU THAT THESE ARE VERY GENERAL MOTIONS TO STRIKE -- I COULD
21     JUST DENY THAT WITHOUT PREJUDICE AND WE CAN WAIT AND SEE IF
22     THERE'S A PARTICULAR DOCUMENT.  THAT'S FINE.
23              MR. MCELHINNY:  WHAT I -- SERIOUSLY, WHAT I DON'T
24     WANT TO DO IS PUT UP A DOCUMENT THAT I THINK IS FINE AND DEAL
25     WITH AN OBJECTION THAT YOUR HONOR SUSTAINED IN AN IN LIMINE AND
```

```
 1        I DIDN'T APPRECIATE THAT THAT HAD HAPPENED.

 2              THE COURT:  SO I'M DENYING IT WITHOUT PREJUDICE,

 3     THAT'S FINE, AS TO GENERAL MARKETING.

 4        LET'S GO TO THIS OBJECTION TO CIRA CONLEY, THE

 5     REPRESENTATIVE OF GRAVITY TANK.

 6        THAT MOTION TO STRIKE IS DENIED.  I THINK THAT IS

 7     PROBATIVE OF DEMAND FOR PATENTED FEATURES.  UNDER 403 THAT

 8     COMES IN.

 9        LET'S GO TO DR. SOOD'S TESTIMONY ABOUT CONSUMER PRODUCTS.

10     GENERALLY THE OBJECTION IS RELEVANCE.

11        THAT'S DENIED.  THE CONSUMER DEMAND FOR DESIGN IS

12     PROBATIVE AND UNDER 403 COMES IN.

13        LET'S GO TO MR. TIM BENNER.  WHAT SURVEYS IS HE GOING TO

14     RELY ON, OTHER THAN PX 89?  IS THERE ANYTHING HE'S GOING TO

15     RELY ON?

16              MR. MCELHINNY:  HE'S A SAMSUNG EMPLOYEE, YOUR HONOR.

17     THESE ARE -- THESE ARE -- WE'RE GOING TO PUT IN DEPOSITION

18     QUOTES ABOUT HIM TALKING ABOUT SAMSUNG SURVEYS.  THESE ARE

19     ADMISSIONS OF THE SAMSUNG PEOPLE THAT WE'RE INTENDING TO OFFER.

20              THE COURT:  I UNDERSTAND THAT.

21        BUT THE ONLY -- SAMSUNG SAYS THE SURVEY THAT MR. BENNER

22     WOULD RELY ON IS PX 89, AND THAT EXHIBIT WAS SUBJECT TO A

23     LIMITING INSTRUCTION LAST YEAR THAT IT WAS LIMITED TO

24     KNOWLEDGE, WILLFULNESS, AND INTENT.

25        I WOULD ASSUME THE SAME LIMITING INSTRUCTION WOULD APPLY
```

1    THIS YEAR, SO I'M A LITTLE BIT UNCLEAR ON WHAT CONSUMER SURVEYS

2    ARE BEING REFERENCED HERE.  I MEAN, ARE YOU EVEN INTENDING TO

3    RELY ON ANY CONSUMER SURVEYS WITH MR. BENNER?

4            MS. MAROULIS:  YOUR HONOR, ARE YOU ASKING ABOUT

5    SAMSUNG'S MOTION OR APPLE'S MOTION?  BECAUSE HE IS SAMSUNG'S

6    WITNESS, BUT APPLE IS USING HIS DEPOSITION TESTIMONY.  SO WE

7    JUST WANT TO MAKE SURE WE'RE ANSWERING THE RIGHT QUESTIONS

8    HERE.

9            THE COURT:  WELL, I UNDERSTOOD THAT SAMSUNG BELIEVED

10   THAT MR. BENNER SHOULD NOT TESTIFY ABOUT THE APPEARANCE OF

11   TABLET DEVICES BECAUSE THEY'RE NOT SUBJECT TO ANY OF THE DESIGN

12   PATENTS IN THIS CASE, AND THAT APPLE SAID, WELL, MR. BENNER IS

13   GOING TO TESTIFY ABOUT CONSUMER SURVEYS IN SAMSUNG'S POSESSION

14   RELATING TO THE SMARTPHONE AND TABLET MARKETS.

15      SO MY QUESTION IS, WHAT CONSUMER SURVEYS IS HE GOING TO BE

16   TESTIFYING ABOUT?

17           MS. MAROULIS:  YOUR HONOR, IF I UNDERSTAND THE

18   QUESTION CORRECTLY, SAMSUNG OBJECTED TO DEPOSITION DESIGNATIONS

19   OF MR. BENNER BECAUSE IT WENT TO THE TAB, WHICH, IN TERMS OF

20   THE DESIGN PATENTS, IS NOT AT ISSUE IN THIS CASE.

21           THE COURT:  OH, IS THAT YOUR ONLY OBJECTION, THEN, TO

22   HIM?

23      WHAT IS APPLE'S RESPONSE?

24      I'M GOING TO GRANT AS TO THE TABLETS.  I REALLY DON'T SEE

25   HOW THEIR PHYSICAL APPEARANCE IS RELEVANT IN THIS CASE.  THEY

```
1    HAVEN'T BEEN ACCUSED OR FOUND TO INFRINGE THE TWO DESIGN

2    PATENTS.  THERE'S NO TRADE DRESS ALLEGATIONS.

3         I MEAN, WHAT -- ARE YOU TRYING TO GET IN HIS TESTIMONY

4    ABOUT THE TABLET DESIGN?

5              MR. MCELHINNY:  NO, YOUR HONOR.

6              THE COURT:  OKAY.  SO CAN I JUST GRANT THAT ONE BY

7    STIPULATION?

8              MR. MCELHINNY:  TO THE TABLET?

9              THE COURT:  TO THE TABLET, THE APPEARANCE OF TABLET

10   DEVICES.

11             MR. MCELHINNY:  THAT -- WE'RE NOT GOING TO OFFER HIM

12   FOR THAT PURPOSE.

13             THE COURT:  OKAY.  THAT MOTION TO STRIKE THEN IS

14   GRANTED.

15        NOW, SO IF THAT WAS YOUR ONLY OBJECTION, CAN I MOVE ON?

16   OR IS THERE SOMETHING ELSE ON THIS ONE?

17             MS. MAROULIS:  YOUR HONOR, I BELIEVE THAT WAS OUR

18   ONLY OBJECTION.

19             THE COURT:  THAT WAS IT?  OH, GREAT.  ALL RIGHT.  YOU

20   MADE IT EASIER FOR ME.  LET ME JUST IGNORE THE REST.

21        NOW, WITH REGARD TO MS. JUNG MIN YEO, HERE AGAIN I WOULD

22   GRANT AS TO ANY TESTIMONY ABOUT THE DESIGN AND DEVELOPMENT OF

23   THE TABLETS.  I DON'T THINK THAT'S RELEVANT.  THERE'S NO DESIGN

24   PATENT CLAIMS AGAINST THE TABLETS IN THIS TRIAL AND THERE'S NO

25   TRADE DRESS CLAIMS AGAINST THE TABLETS OR IN THIS CASE AT ALL.
```

```
 1              NOW, I WOULD DENY IT, THOUGH, AS TO SMARTPHONE DEVICES.

 2              ANYONE WANT TO COMMENT ON THAT?

 3                  MR. MCELHINNY:  AGAIN, WE'RE ONLY GOING TO OFFER IT

 4        FOR THE PHONES, YOUR HONOR.

 5                  THE COURT:  OKAY.  ALL RIGHT.  THEN THE MOTION TO

 6        STRIKE IS DENIED.

 7              OKAY.  LET'S GO TO HYOUNG SHIN PARK.  NOW, LAST YEAR APPLE

 8        WAS SUCCESSFUL IN MOVING TO EXCLUDE HYOUNG SHIN PARK'S

 9        TESTIMONY.

10              I'M GOING TO GRANT SAMSUNG'S MOTION TO EXCLUDE.  OKAY?

11        LET'S MOVE ON.

12              OKAY.  LET'S GO TO THE TESTIMONY OF JON WON LEE AND

13        BRUCE WATROUS.

14                  MR. MCELHINNY:  YOUR HONOR, I'M SORRY.  ON PARK, JUST

15        BECAUSE I'M A LITTLE BIT SLOW --

16                  THE COURT:  YES.

17                  MR. MCELHINNY:  -- THE ISSUE IS, THIS IS

18        CROSS-EXAMINATION TESTIMONY IF SHE'S ALLOWED TO TESTIFY.  WE

19        DON'T THINK SHE SHOULD BE ALLOWED TO TESTIFY.

20                  THE COURT:  I THOUGHT SAMSUNG IS MOVING TO EXCLUDE

21        HER.

22                  MR. MCELHINNY:  WELL, THEY ARE.  BUT WE HAVE TO -- WE

23        HAVE TO -- IN ORDER TO PUT IN OUR WITNESS LIST AND OUR

24        DEPOSITIONS, WE HAVE TO ANTICIPATE WHAT THEIR CASE IS AND

25        INCLUDE PEOPLE THAT WERE GOING TO BE FOR CROSS, AND THIS IS THE
```

1     WOMAN, YOU'LL REMEMBER, WHO DESIGNED THE F700 PHONE, AND IF WE

2     TALK ABOUT THE F700 PHONE AND IF SHE GETS TO TESTIFY, WHICH WE

3     HAVE CROSS OBJECTIONS THAT SHE SHOULDN'T, THEN WE NEED TO BE

4     ABLE TO CROSS-EXAMINE HER.

5         THAT'S THE ONLY REASON THAT THIS IS ON.  WE'RE NOT GOING

6     TO OFFER IT INDEPENDENTLY.

7             MS. MAROULIS:  YOUR HONOR, WE'LL MOVE TO PRECLUDE

8     APPLE FROM PUTTING DEPOSITION DESIGNATIONS PRECISELY BECAUSE

9     THEY WERE OBJECTING AND MOVING TO EXCLUDE HYOUNG SHIN PARK.

10        IF WE'RE ALLOWED TO PRESENT HER, THEY CAN, OF COURSE,

11     PRESENT THE DEPOSITION DESIGNATIONS.

12        THE SITUATION THERE IS THAT LAST YEAR, THE COURT PROBABLY

13     REMEMBERS, THE COURT PRECLUDED HER FROM TESTIFYING, AND THE

14     REASON FOR THAT WAS THAT THE COURT DID NOT WANT THE JURY TO BE

15     CONFUSED AS TO THE VARIOUS DOCUMENTS THAT SAMSUNG WANTED TO USE

16     AS REBUTTAL TO COPYING CHARGES, BUT APPLE WAS CONTENDING WOULD

17     CONFUSE THE JURY INTO FINDING INVALIDITY.

18        THIS YEAR WE DON'T HAVE THAT ISSUE BECAUSE VALIDITY HAS

19     BEEN ADJUDICATED.  SO --

20             THE COURT:  ACTUALLY, LET ME INTERRUPT YOU ONE

21     SECOND.  IT SOUNDS LIKE YOU HAVE AN AGREEMENT.  NEITHER SIDE

22     WANTS TO USE HER.

23             MS. MAROULIS:  IT'S THE OPPOSITE.

24             MR. MCELHINNY:  THAT'S CERTAINLY PART OF IT.

25         THE OTHER PART OF IT IS THIS F700 PHONE.  WHAT HER -- YOU

```
1      REMEMBER THEY HAD THIS PHONE LAST TIME THAT DIDN'T COME IN AS

2      A --

3              THE COURT:  WELL, YOU MOVED TO EXCLUDE HER LAST YEAR.

4      YOU SUCCEEDED.  YOU DON'T GET TO NOW BRING HER IN THIS YEAR.

5              MR. MCELHINNY:  I ONLY WANT HER IN IF SHE COMES IN OR

6      IF HER PHONE COMES IN.  THIS IS ONLY IF THEY SUCCESSFULLY GET

7      IN --

8              THE COURT:  THE PHONE CAME IN LAST YEAR FOR

9      ALTERNATIVE DESIGNS AND FUNCTIONALITY.  IT'LL COME IN AGAIN

10     THIS YEAR FOR ALTERNATIVE DESIGNS AND FUNCTIONALITY.

11         YOU SUCCESSFULLY EXCLUDED HER LAST YEAR.  YOU DON'T GET TO

12     NOW TURN AROUND AND REVERSE YOURSELF.  SHE'S EXCLUDED.

13         THE PHONE, OR AT LEAST DX 526 COMES IN.  IT'S EVEN, EVEN

14     MORE PROBATIVE NOW BECAUSE ALTERNATIVE DESIGN IS GOING TO BE

15     THE FOCUS OF THE TRIAL.

16             MR. MCELHINNY:  THEN HER ADMISSIONS ABOUT THAT

17     PHONE -- THE REASON SHE DIDN'T COME IN WAS BECAUSE OF A

18     DISCLOSURE ISSUE.

19         BUT HER ADMISSIONS ABOUT THAT PHONE, IF THE PHONE COMES

20     IN, THEY ARE PROBATIVE AND THEY ARE RELEVANT.

21             THE COURT:  NO.  LAST YEAR YOU DIDN'T WANT HER TO

22     COME IN AT ALL.  YOU WERE AFRAID SHE WAS GOING TO TESTIFY ABOUT

23     THE DESIGN OF THE F700.

24             MR. MCELHINNY:  THAT'S CORRECT, YOUR HONOR.

25             THE COURT:  SO, YOU KNOW, YOU SUCCEEDED LAST YEAR, SO
```

```
1     YOU'RE STRUCK.  OKAY?  THE SAMSUNG MOTION TO EXCLUDE IS

2     GRANTED.

3              MS. MAROULIS:  SO, YOUR HONOR, FOR THE RECORD OF

4     APPEAL, WE INCLUDED THIS ISSUE IN OUR JOINT PRETRIAL STATEMENT

5     AND ASKED THE COURT TO RECONSIDER THE EXCLUSION OF

6     HYOUNG SHIN PARK AND CERTAIN EXHIBITS.  WE CAN RE-APPROACH THAT

7     AGAIN IN A SEPARATE CONTEXT, BUT I WANTED TO POINT THAT OUT

8     BECAUSE IT IS IN OUR JOINT PRETRIAL ORDER AND --

9              THE COURT:  OKAY.  I UNDERSTOOD THAT YOU WERE TRYING

10    TO EXCLUDE HER AND NOT ALLOW APPLE TO USE HER --

11             MS. MAROULIS:  WE WERE TRYING TO PREVENT APPLE

12    FROM --

13             THE COURT:  NOW YOU'RE SAYING YOU DO WANT TO USE HER.

14    WHY CAN'T YOU JUST REACH AN AGREEMENT THEN IF BOTH SIDES WANT

15    TO USE HER?  THAT'S WHAT MY QUESTION WAS.  CAN YOU REACH A

16    STIPULATION?

17             MS. MAROULIS:  WE WILL CERTAINLY DISCUSS THIS WITH

18    APPLE, BUT IT'S OUR UNDERSTANDING THEY DON'T WANT HER

19    TESTIFYING FOR SAMSUNG, BUT THEY DID WANT HER TO TESTIFY VIA

20    DEPOSITION.

21        WE WOULD LIKE TO BRING HER IN AND THEN HAVE THEM PLAY

22    DEPOSITION DESIGNATIONS.  BUT UNDER THE GROUND HOG RULE, WE

23    NEEDED TO SEEK YOUR HONOR'S PERMISSION TO BRING HER BACK

24    BECAUSE THERE WAS AN EXCLUSION RULING, ALBEIT FOR A DIFFERENT

25    PURPOSE.  IT WAS BECAUSE YOUR HONOR DIDN'T WANT THE CONFUSION
```

```
1        AS BETWEEN INVALIDITY AND COPYING AND THERE WERE PRIOR RULINGS

2        BY JUDGE GREWAL.

3            THERE'S NO SUCH DANGER IN THIS CASE BECAUSE THE JURY WILL

4        NOT BE CONFUSED SINCE THE JURY WILL BE INSTRUCTED ALREADY THAT

5        THE PATENTS WERE FOUND VALID.

6            SO IN OUR JOINT PRETRIAL STATEMENT, WE PUT THAT FORWARD

7        AND ASKED YOUR HONOR TO RECONSIDER THE PRIOR EXCLUSION OF

8        HYOUNG SHIN PARK.

9            BUT WE SIMULTANEOUSLY NEEDED TO OPPOSE APPLE'S PUTTING

10       DEPOSITION TESTIMONY IN BECAUSE IT WOULD BE VERY UNFAIR IF WE

11       COULD NOT BRING HER IN, BUT THEY COULD PUT UP HER DEPOSITION

12       TESTIMONY.

13               THE COURT:  I SEE.

14               MR. MCELHINNY:  AND --

15               MS. MAROULIS:  SO IF WE CAN MEET AND CONFER WITH

16       THEM, WE'D BE VERY GLAD TO DO THAT.

17               THE COURT:  IF YOU CAN MEET AND CONFER AND REACH AN

18       AGREEMENT, THEN I'LL ACCEPT YOUR STIPULATION.

19           BUT ABSENT AN AGREEMENT, MY PREVIOUS EXCLUSION ORDER

20       APPLIES.

21               MR. MCELHINNY:  AND JUST SO THE RECORD IS COMPLETE,

22       MS. PARK HAS NEVER BEEN ON A SAMSUNG WITNESS LIST, YOUR HONOR,

23       EVER, INCLUDING THE WITNESS LIST THEY FILED FOR THIS TRIAL.

24               MS. MAROULIS:  MS. PARK WAS ON THE WITNESS LIST LAST

25       YEAR.
```

```
 1              WE UNDERSTOOD YOUR HONOR DID NOT WANT US TO PUT ANYTHING

 2      ON THE EXHIBIT AND WITNESS LIST THAT WAS EXCLUDED LAST YEAR, SO

 3      WE PUT THAT IN AS A REQUEST IN THE JOINT PRETRIAL STATEMENT.

 4      WE DID NOT WISH TO VIOLATE THE COURT'S ORDER BY INCLUDING AN

 5      EXCLUDED WITNESS.

 6              AND WE WILL MEET AND CONFER WITH APPLE.  I DON'T HAVE

 7      MUCH HOPE ON REACHING A RESOLUTION.

 8              THE COURT:  I DON'T EITHER AFTER WHAT I'VE JUST

 9      HEARD, BUT YOU CAN TRY.  YOU CAN TRY.

10          (LAUGHTER.)

11              MS. MAROULIS:  BUT WE WILL BE BACK.  BUT WE

12      UNDERSTAND THAT THE CURRENT RULING IS, ABSENT A STIPULATION TO

13      BRING HER BACK, APPLE IS NOT ALLOWED TO PLAY HER TESTIMONY.

14              THE COURT:  I'M GRANTING YOUR MOTION TO EXCLUDE.

15      THAT'S WHAT I UNDERSTOOD WAS BEFORE ME.

16              THE DX 526 IS STILL ADMISSIBLE FOR ALTERNATIVE DESIGNS.

17      THAT'S THE F700.

18              BUT THE MOTION TO EXCLUDE IS GRANTED.

19              OKAY.  WITH REGARD TO BRUCE WATROUS, THE MOTION TO STRIKE

20      BY SAMSUNG IS GRANTED.  HE DOESN'T HAVE PERSONAL KNOWLEDGE OF

21      THE NEGOTIATIONS BETWEEN APPLE AND SAMSUNG, AND JUST BEING

22      FAMILIAR WITH THE LICENSING NEGOTIATIONS AND ASSOCIATED

23      DOCUMENTS IS INSUFFICIENT.  I THINK IT'S HEARSAY, LACK OF

24      PERSONAL KNOWLEDGE, SPECULATION UNDER 403.  IT'S NOT COMING IN,

25      SO THAT'S GRANTED.
```

```
 1            NOW, LET ME ASK, WITH REGARD TO JUN WON LEE, DOES SAMSUNG
 2     AGREE THAT MR. LEE'S TESTIMONY WOULD COVER THE FIRST MEETINGS
 3     BETWEEN THE PARTIES?  AND THOSE ARE THE FALL OF 2010 MEETINGS?
 4            MS. MAROULIS:  YOUR HONOR, HE WAS A LICENSING
 5     WITNESS, SO I DON'T HAVE THE TRANSCRIPT IN FRONT OF ME, BUT HE
 6     WOULD HAVE REFERRED TO THOSE MEETINGS.
 7            OUR OBJECTION WAS MOSTLY BECAUSE, DURING THE FIRST TRIAL,
 8     HE WAS USED AS A FRAND AND ANTITRUST WITNESS.
 9            THE COURT:  OKAY.
10            MS. MAROULIS:  AND HE WENT TO THOSE CLAIMS AND WE --
11     BECAUSE APPLE DIDN'T PROVIDE US WITH THE SPECIFIC CITATIONS IN
12     THEIR DISCLOSURES, WE WERE NOT SURE WHAT PURPOSE IT WAS FOR AND
13     WANTED TO MAKE SURE THAT HE IS NOT COMING IN FOR PATENTS THAT
14     ARE NOT AT ISSUE HERE.
15            MR. MCELHINNY:  HE'S NOT.  HE IS A RELEVANT -- I
16     MEAN, THIS IS THE PROBLEM WHEN WE DON'T HAVE SPECIFIC TESTIMONY
17     PROPOSED YET AND YOU'RE GETTING INTO THIS.
18            HE WAS THEIR HEAD OF LICENSING.  HE WAS KNOWLEDGEABLE
19     ABOUT THE FIRST MEETINGS.  HE'S KNOWLEDGEABLE ON THE NOTICE
20     ISSUE, IF WE HAVE TO PROVE THE NOTICE ISSUE.
21            THE COURT:  ALL RIGHT.  WELL, THE MOTION IS DENIED,
22     BUT OBVIOUSLY HE SHOULDN'T BE TESTIFYING ABOUT FRAND OR ANY OF
23     THE ANTITRUST ISSUES THAT WERE RELEVANT LAST YEAR.  OKAY?
24            MR. MCELHINNY:  YES, YOUR HONOR.
25            THE COURT:  OKAY.  LET'S GO TO SAMSUNG'S MOTION TO
```

```
 1     EXCLUDE -- WHAT WOULD SAMSUNG'S TAX RELATIONSHIP BE RELEVANT

 2     FOR AT THIS TIME?  I COULD SEE HOW PROFIT WOULD BE RELEVANT TO

 3     INFRINGER'S PROFITS FOR THE DESIGN PATENTS, BUT I DON'T REALLY

 4     SEE ANY RELEVANCE OF ANYTHING ELSE.  NO ONE IS ASKING THAT WE

 5     DISTINGUISH BETWEEN THE THREE SAMSUNG ENTITIES IN THE VERDICT

 6     FORM OR IN THE PRELIMINARY JURY INSTRUCTIONS.  I JUST -- I

 7     DON'T SEE -- I MEAN, I'M ALSO CONCERNED THAT APPLE ABUSED THIS

 8     RULING LAST TIME.

 9         IS THERE ANYTHING YOU WANT TO SAY?  OTHERWISE I'M --

10             MR. MCELHINNY:  THE ANSWER IS TAX -- DEPENDING ON HOW

11     THE DOCUMENTS COME IN, TAX MAY OR MAY NOT BE -- SAMSUNG MAY

12     ALLEGE THAT THE TAXES THEY PAID ARE COSTS THAT SHOULD BE

13     DEDUCTED FROM THE REVENUE.

14             THE COURT:  IS THAT WHAT YOU'RE GOING TO ARGUE?

15             MS. MAROULIS:  MR. ALDEN WILL RESPOND TO THAT.

16             MR. ALDEN:  YOUR HONOR, MY UNDERSTANDING WAS THAT THE

17     ISSUE -- APPLE THOUGHT THE ISSUE WAS RELEVANT LAST TRIAL

18     BECAUSE ALL THREE DEFENDANTS WERE ACCUSED, BUT IT WAS POSSIBLE

19     THAT SOME OF THEM WOULDN'T BE FOUND LIABLE AND SO THEY'RE

20     CONCERNED SAMSUNG WAS GOING TO ARGUE THAT SOME OF THE ENTITIES

21     SHOULD HAVE TO PAY INFRINGER'S PROFITS, WHEREAS OTHER ENTITIES

22     WOULD NOT HAVE TO PAY INFRINGER'S PROFITS, AND THEY WERE

23     CONCERNED THAT WE WERE GOING TO TAKE ADVANTAGE OF TRANSFER

24     PRICING BETWEEN THE ENTITIES TO SOMEHOW LOWER THE AMOUNT OF

25     PROFITS THAT SAMSUNG SHOULD HAVE TO PAY.
```

```
 1         WE DON'T DISPUTE, FOR THE PURPOSES OF THIS TRIAL, THAT ALL
 2    THREE HAVE NOW BEEN FOUND LIABLE AND THAT ALL THREE ARE LIABLE
 3    FOR INFRINGER'S PROFITS.  THE QUESTION IS THE AMOUNT OF
 4    INFRINGER'S PROFITS.
 5         SO WE DON'T INTEND TO MAKE ANY ARGUMENT AS TO
 6    DISTINGUISHING BETWEEN THE THREE ENTITIES IN ANY WAY USING
 7    TRANSFER PRICING, SO WE DON'T THINK THERE'S ANY RELEVANCE TO
 8    THE TAXATION ISSUE.
 9              MR. MCELHINNY:  THE -- THAT'S NOT THE ISSUE I'M
10    WORRIED ABOUT.
11         THE ISSUE I'M WORRIED ABOUT IS SAMSUNG HAS THE BURDEN OF
12    PROVING ITS EXPENSES THAT ARE DIRECTLY ATTRIBUTABLE TO THESE
13    PARTICULAR PHONES IF THEY WANT TO SUBTRACT THOSE EXPENSES FROM
14    THEIR REVENUES IN ORDER TO PROVE WHAT THEIR PROFITS WERE, AND
15    SO THE ANALYSIS OF, A, WHETHER OR NOT THOSE TAX PAYMENTS ARE
16    DIRECTLY ATTRIBUTABLE, AND B, WHAT THE TAX REALLY IS, IS
17    RELEVANT.
18         WHAT PEOPLE WERE CONCERNED ABOUT LAST YEAR, AND WE TRIED
19    TO STAY AWAY FROM, WAS ANY KIND OF AN ARGUMENT THAT TRANSFER
20    TAXING ITSELF IS AN ATTEMPT TO ESCAPE TAX OR ANY OF THAT.
21              THE COURT:  OH, THAT'S NOT TRUE.  YOU ALL DIRECTLY
22    ASKED A QUESTION, A TAX EVASION QUESTION --
23              MR. MCELHINNY:  YOU KNOW, I --
24              THE COURT:  -- KNOWING THAT IT WAS GOING TO BE
25    STRICKEN, WHICH IT WAS.
```

```
 1              MR. MCELHINNY:  YOUR HONOR'S RECOLLECTION TRUMPS, BUT

 2      AFTER YOU SAID THAT THE LAST TIME, I ACTUALLY WENT BACK AND

 3      READ THE TRANSCRIPT.

 4              THE COURT:  OKAY.  YOU ALSO SAID THAT I NEVER SAID

 5      WHAT THE SEQUENCE WAS OF THE TRIAL LAST YEAR AND THAT YOU HAD

 6      NO IDEA WHAT THE SEQUENCE WAS.

 7              WELL, DID YOU LOOK AT THE PRELIMINARY JURY INSTRUCTIONS

 8      WHERE IT GAVE THE OUTLINE OF THE TRIAL, WHERE WE LAID OUT WHAT

 9      TOPICS WOULD BE HANDLED IN EACH PHASE OF THE CASE?

10              MR. MCELHINNY:  NO.  I SAID I WAS UNCLEAR ABOUT WHAT

11      THE SCOPE OF REBUTTAL WOULD BE.  THERE WAS NO QUESTION ABOUT

12      THE SCOPE OR THE PHASE OF THE TRIAL.

13              THE COURT:  WELL, IN MY -- IN MY NOTES OF WHAT I SAY,

14      I LAID OUT WHAT EACH SIDE COULD TESTIFY TO.

15              MR. MCELHINNY:  YES, YOUR HONOR.  AND YOUR

16      PRELIMINARY INSTRUCTIONS THIS TIME ARE PERFECTLY CLEAR AND

17      THAT'S --

18              THE COURT:  WELL, THEY WERE COPIED FROM LAST YEAR.

19      WE GAVE AN OUTLINE OF THE TRIAL LAST YEAR THAT LAID IT ALL OUT.

20      I WAS NOT SURE WHAT YOU ARE SAYING THAT YOU HAD NO IDEA WHAT

21      WAS SUPPOSED TO BE GOING ON.

22          I MEAN, THE PRELIMINARY INSTRUCTIONS LAST YEAR VERY

23      CLEARLY, IN OUTLINE OF THE TRIAL, INSTRUCTION 23 SAID EXACTLY

24      WHAT WOULD BE THE SEQUENCE OF THE CASE, AND IN MY SCRIPT FOR

25      THAT CASE WHERE I LAY OUT, I SAID WHAT EACH SIDE WOULD BE
```

1    ALLOWED TO TESTIFY TO DURING THE CLOSING ARGUMENTS.

2         ANYWAY, GO AHEAD.

3              MR. MCELHINNY:  SO THE ISSUE HERE IS IF SAMSUNG IS

4    GOING TO ARGUE THAT THEIR TAX PAYMENTS ARE DIRECTLY

5    ATTRIBUTABLE, THEN OUR ACCOUNTANT HAS TO TALK ABOUT HOW THEY

6    PAID TAXES AND TRANSFER TAXING AND WHAT THE ACTUAL NUMBERS ARE.

7              MR. ALDEN:  YOUR HONOR, MR. WAGNER DOES NOT INTEND TO

8    ARGUE THAT.  WE DON'T -- HE HAS NEVER DEDUCTED TAXES FROM HIS

9    INFRINGER'S PROFITS CALCULATIONS, NOR, I BELIEVE, DOES

10   MS. DAVIS DEDUCT TAXES FROM INFRINGER'S PROFITS CALCULATIONS.

11        SO IT SEEMS LIKE, BASED ON WHAT COUNSEL HAS SAID, THAT

12   THIS IS A MOOT ISSUE.  WE JUST DON'T INTEND TO ARGUE IT, YOU

13   KNOW.

14             MR. MCELHINNY:  THEN THAT SHOULD RESOLVE THE ISSUE,

15   YOUR HONOR.

16             THE COURT:  ALL RIGHT.  OBVIOUSLY IF YOU CHANGE YOUR

17   MIND, THAT'S GOING TO OPEN THE DOOR.

18             MR. ALDEN:  UNDERSTOOD, YOUR HONOR.

19             THE COURT:  OKAY.  SO THEN IS THERE A -- ALL RIGHT.

20   WELL, THEN I GUESS THE MOTION TO STRIKE AS TO SAMSUNG'S TAX

21   RELATIONSHIP WITH THE U.S. AND TRANSFER ALLOCATION OF PROFITS

22   BETWEEN THE THREE MAIN DEFENDANTS IS GRANTED.

23        ALL RIGHT.  LET'S GO TO SAMSUNG'S RELATIONSHIPS WITH

24   WIRELESS NETWORK CARRIERS.

25             WOULD YOU LIKE TO EXPLAIN HOW THAT'S RELEVANT AND WHY THAT

1       SHOULD COME IN AND WHAT SPECIFICALLY YOU'RE SEEKING TO ADMIT ON

2       THAT TOPIC?

3               MR. MCELHINNY:  YOUR HONOR, THIS IS THE PROBLEM.

4       THIS IS A MOTION IN LIMINE.  I DON'T KNOW WHAT IT MEANS.  I

5       DON'T KNOW WHAT -- THEY HAVEN'T CITED AN EXHIBIT OFF OF OUR

6       EXHIBIT LIST.

7               BUT IF YOUR HONOR GRANTED IT LIKE THIS -- YOU WILL

8       REMEMBER WHEN I WAS HERE THE LAST TIME, WE TALKED ABOUT THE

9       SPECIFIC LETTER, THE CRISIS OF DESIGN LETTER, AND I POINTED YOU

10      TO THE LANGUAGE WHERE THE EXECUTIVE SAID "THE CARRIERS IN THE

11      UNITED STATES ARE TELLING US TO MAKE SOMETHING LIKE" -- IF YOUR

12      HONOR GRANTED THIS MOTION AS IT IS WORDED -- SEE, I JUST DON'T

13      KNOW WHAT THEY'RE ASKING FOR YOU TO EXCLUDE.

14              THE COURT:  WELL, WHEN YOU RESPONDED THAT IT'S

15      RELEVANT TO SHOW, QUOTE, "COMPETITION BETWEEN THE PARTIES AND

16      MARKET RECONSTRUCTION FOR THE MARKET SHARE COMPONENT OF THE

17      LOST PROFITS ANALYSIS," END QUOTE, AND IT ALSO DEMONSTRATES THE

18      UNREASONABLE NATURE OF SAMSUNG'S SHORT DESIGN AROUND ESTIMATES,

19      WHAT WERE YOU REFERRING TO?

20              MR. MCELHINNY:  ONE OF THE EXHIBITS THAT CAME IN LAST

21      TIME --

22              THE COURT:  UH-HUH.

23              MR. MCELHINNY:  -- WAS MARKETING CHANNELS.

24              THE COURT:  OKAY.

25              MR. MCELHINNY:  AND THE QUESTION ABOUT WHETHER OR NOT

1    THEY MARKET AT THE SAME CARRIERS, WHETHER THEY MARKET IN THE

2    SAME STORES, AND THAT'S RELEVANT TO THE -- THAT IS RELEVANT TO

3    THE COMPETITION.

4         I'M -- THAT'S WHY I'M -- THE WORD "CARRIER" COMES IN IN A

5    COUPLE OF DIFFERENT PLACES, AND I DON'T -- I DON'T INTEND TO

6    PUT IN WHAT THEY DESCRIBE IN THOSE WORDS, BUT WE HAVE A LOT OF

7    DOCUMENTS IN HERE THAT TALK ABOUT CARRIERS.

8              THE COURT:  DO YOU HAVE ANYTHING MORE SPECIFIC?  WHAT

9    ARE YOU TRYING TO EXCLUDE?

10             MS. MAROULIS:  YOUR HONOR, WE REVIEWED APPLE'S

11    WITNESS LIST -- THIS WAS A WITNESS MOTION, NOT AN EXHIBIT

12    ONE -- AND WE SIMPLY PULLED OUT TOPICS THAT WE THOUGHT WERE NOT

13    RELEVANT TO THIS VERY NARROW TRIAL.

14        SO FOR SEVERAL SAMSUNG WITNESSES, THEY HAD CARRIER

15    RELATIONS AS A TOPIC LISTED IN THEIR DEPOSITION DESIGNATIONS,

16    SO WE ACTUALLY DON'T KNOW WHAT THEY'RE GOING TO EXACTLY DO WITH

17    IT.  THAT'S WHY --

18             THE COURT:  RIGHT.  BUT, YOU KNOW, FRANKLY, YOUR

19    DESIGNATIONS WERE THE SAME, THEY WERE JUST AS VAGUE, WITNESS

20    MAY TESTIFY CONCERNING THE SUBJECTS OF HIS DEPOSITION.

21        SO IF THAT'S IT, THEN THE MOTION TO STRIKE IS DENIED.

22        OKAY.  WE HAVE THE SAME ISSUE WITH REGARD TO SAMSUNG'S

23    COMPETITIVE INTELLIGENCE PRACTICES, BUSINESS STRATEGIES,

24    CORPORATE STRATEGIES, AND STRUCTURE.  IT'S A VERY VAGUE

25    OBJECTION.  THERE'S NO SPECIFIC ARGUMENT HERE.

```
 1            MS. MAROULIS:  YOUR HONOR, WITH RESPECT TO

 2     COMPETITIVE INTELLIGENCE, WE MADE EXTENSIVE OBJECTIONS ON THE

 3     RECORD REGARDING WHAT APPLE CALLS COPYING DOCUMENTS.

 4            THE COURT:  OH, THAT'S THE COPYING OBJECTION?  ALL

 5     RIGHT.  THEN THIS IS DENIED.  I'M GOING TO DENY IT.  IT'S JUST

 6     TOO VAGUE.  IT'S NOT CLEAR WHAT YOU'RE OBJECTING TO.

 7            OKAY.  SAMSUNG'S RETENTION, PRESERVATION, AND PRODUCTION

 8     OF DOCUMENTS, I THINK IF IT HAS TO DO -- IF IT'S SPECIFIC ABOUT

 9     THE UNRELIABILITY OF THE COST ANALYSIS, THEN THE MOTION IS

10     DENIED.

11            IF IT'S JUST GENERAL PRESERVATION POLICIES, I'M NOT QUITE

12     SURE WHAT THAT'S RELEVANT TO.

13            ANYONE WANT TO BE HEARD ON THIS ONE?

14            MR. MCELHINNY:  AGAIN, I'M -- I DON'T KNOW WHAT ELSE

15     WE'RE TALKING ABOUT THAT THEY'RE OBJECTING TO.  WE CERTAINLY

16     HAVE THAT ISSUE THAT YOUR HONOR JUST DENIED IT AS TO.  I DON'T

17     KNOW OF ANOTHER ISSUE THAT FALLS UNDER THIS RUBRIC.

18            THE COURT:  WELL, DO YOU HAVE ANY OBJECTION THEN TO

19     ME GRANTING IT AS TO GENERAL PRESERVATION POLICIES UNDER 403

20     GROUNDS, BUT DENYING IT AS TO ANYTHING SPECIFIC ABOUT THE

21     UNRELIABILITY OF THE COST ANALYSIS?

22            MR. MCELHINNY:  WHAT I WOULD SUGGEST TO THE COURT --

23            THE COURT:  UM-HUM.

24            MR. MCELHINNY:  -- BECAUSE I DON'T WANT TO -- YES, MY

25     OBJECTION IS I DON'T WANT A BUNCH OF VERY BROAD IN LIMINE
```

ORDERS AND THEN HAVE THEM TURN INTO SPECIFIC DOCUMENTS.

I WOULD PREFER THAT YOUR HONOR DO WHAT YOU'VE BEEN DOING, WHICH IS DENY IT AS BROAD, AND IF THEY HAVE A SPECIFIC OBJECTION TO A SPECIFIC DOCUMENT, THEN WE CAN HEAR IT.

THE COURT: ALL RIGHT. THAT'S FINE.

MS. MAROULIS: YOUR HONOR, IN THIS INSTANCE, THOUGH, THERE'S A SPECIFIC INSTRUCTION FROM THE COURT, WHICH IS IF IT RELATES TO CROSS, THEY CAN USE THE TESTIMONY.

IF IT RELATES GENERALLY TO DOCUMENTS, THAT'S NOT RELEVANT AND IT'S TOO LATE AND THEY SHOULD BE PRECLUDED FROM GENERAL RELIANCE ON ISSUES OF PRESERVATION AND DOCUMENT RETENTION. IT'S NOT RELEVANT AND IT'S PREJUDICIAL.

MR. MCELHINNY: WHAT'S THE "IT"?

THE COURT: WHY DON'T WE DENY IT AND YOU CAN MAKE A SPECIFIC OBJECTION?

OKAY, LAST ONE. EXCLUDE TESTIMONY ABOUT INADEQUATELY DISCLOSED SUBJECT AREAS, THAT'S DENIED. SAMSUNG IS GUILTY OF THE SAME BROAD DON'T REALLY DISCLOSE TOPICS. I MEAN, BOTH OF YOU DO THE SAME THING, SO THAT'S DENIED.

OKAY. I'M GRANTING DEFENDANT'S MOTION TO DISMISS, PAGE 7 OF ECF NUMBER 2386, AS TO WITNESSES RELYING ON PAST TRIAL TESTIMONY. THAT MOTION IS GRANTED. YOU'LL HAVE TO HAVE WITNESSES COME LIVE SO THEY CAN BE CROSS-EXAMINED, AND THEN ANY EXPERTS THEN CAN RELY ON THE TESTIMONY OF WITNESSES WHO TESTIFIED DURING THIS TRIAL, FOR EXAMPLE, ASSUMING THEIR

```
1      CONCLUSIONS TO PROVIDE EXPERT TESTIMONY.

2           LET ME ASK, WHAT -- THE JURY INSTRUCTION THAT YOU ALL

3      PROPOSED HAD BOTH KOREAN AND JAPANESE AS LANGUAGES THAT MAY

4      COME UP OTHER THAN ENGLISH.  WHO ARE THE WITNESSES THAT WILL

5      NEED A JAPANESE INTERPRETER?

6           MS. MAROULIS:  THERE WILL BE NO WITNESSES.  THERE MAY

7      BE SOME PRIOR ART MAYBE, BUT THE WITNESSES WILL BE ONLY KOREAN

8      OR ENGLISH SPEAKING.

9           THE COURT:  I SEE, OKAY.  SO THERE MIGHT BE SOME

10     PRIOR ART DOCUMENTS.  OKAY.  I THOUGHT THAT MIGHT BE THE CASE.

11          OKAY.  I STILL INTEND TO ISSUE AN ORDER ON THE HTC

12     LICENSE, ON NON-INFRINGING ALTERNATIVES, ON DAMAGES NOTICE

13     DATES, ON THE GALAXY, ON THE DESIGN AROUND NOTICE DATES, AND

14     THE DAUBERT MOTION AS TO MS. DAVIS.  WE'LL TRY TO GET THESE TO

15     YOU AS QUICKLY AS POSSIBLE.

16          I WAS GOING TO SUGGEST THAT PERHAPS ON TUESDAY WE MEET AT

17     8:30 IN CASE THERE'S ANYTHING OUTSTANDING, OR WE COULD MEET AT

18     8:45.  IT DOESN'T -- IT DOESN'T MATTER.  WE'VE HAD THREE

19     PRETRIAL CONFERENCES, SO THERE'S BEEN --

20          MR. LEE:  TWO THINGS, YOUR HONOR.  MEETING EARLY IS

21     FINE.

22          WE WANTED TO ASK YOU IF WE COULD EVEN GET IN EARLY.  LAST

23     TIME, YOU'LL RECALL, WITH ALL OF THE JURORS ARRIVING AND THE

24     PRESS ARRIVING, SOME OF THE LAWYERS DIDN'T MAKE IT THROUGH

25     UNTIL AFTER THE START TIME, SO WE WERE ACTUALLY WONDERING IF WE
```

```
 1      COULD ARRANGE THROUGH THE COURT TO GET IN ABOUT 8:00 O'CLOCK SO

 2      WE COULD SET UP BEFORE THE JURORS START TO COME THROUGH

 3      SECURITY AND BEFORE THE PRESS STARTS TO COME THROUGH SECURITY.

 4      WE COULD BE HERE WHENEVER YOUR HONOR WANTED.

 5              THE COURT:  THE JURORS, I THINK, MAY COME AT 7:00.

 6          IS THAT RIGHT?

 7              THE CLERK:  THE BUILDING OPENS AT 7:30, SO THEY START

 8      ASSEMBLING THEN AND THEY DO THE ORIENTATION.

 9          I'M HERE AT 8:00.  I WILL COME STRAIGHT UP HERE AND OPEN

10      THE COURTROOM.

11              MR. LEE:  OKAY, THAT'S GREAT.  THAT WAY WE CAN AVOID

12      SORT OF THE FIRE DRILL WE HAD LAST TIME OF SOME OF US MAKING IT

13      AND SOME OF US NOT MAKING IT.

14              THE COURT:  YES.  THE OTHER PROBLEM LAST TIME IS

15      THERE WAS ANOTHER PATENT TRIAL GOING ON AT THE SAME TIME.

16              THE CLERK:  THERE IS ANOTHER JUDGE SELECTING A JURY.

17              THE COURT:  THERE'S A CRIMINAL TRIAL GOING ON RIGHT

18      NOW.

19              THE CLERK:  WELL, AND JUDGE DAVILA IS PICKING A JURY

20      TUESDAY MORNING AS WELL ON A CIVIL CASE.

21              THE COURT:  OH, OKAY.  ALL RIGHT.  YEAH, SO THERE MAY

22      BE OTHER CONGESTION NEXT WEEK AS WELL.

23              MR. LEE:  OKAY.

24              THE COURT:  OKAY.  SO DO YOU THINK WE NEED 8:30 ON

25      TUESDAY OR SHOULD WE SAY 8:45?  WHAT WOULD YOU PREFER?
```

```
 1              MR. LEE:  8:30 IS FINE.

 2              MR. PRICE:  8:30 JUST TO BE SAFE, YOUR HONOR.

 3              THE COURT:  OKAY.  NOW, DO YOU THINK WE NEED TO MEET

 4      AGAIN JUST IN CASE THERE ARE ANY OUTSTANDING ISSUES?  NOT THAT

 5      I WANT TO CREATE MORE.  WE'RE CERTAINLY QUITE FULL WITH HAVING

 6      TO GET YOU THE ORDERS THAT WE STILL OWE YOU.

 7              MY ONLY CONCERN IS THAT IF YOU FILE A LOT OF OBJECTIONS ON

 8      FRIDAY MORNING AT 8:00, IF THERE ARE ANY THAT WE HAVE QUESTIONS

 9      ABOUT, IT MIGHT BE GOOD TO HAVE AN OPPORTUNITY TO ASK YOU ABOUT

10      THEM.

11              IF WE DON'T HAVE ANY QUESTIONS, THEN I CAN VACATE THAT AS

12      WELL.  WHAT WOULD YOU --

13              MR. MCELHINNY:  WE'LL BE HERE, SO WE'RE AT YOUR

14      CONVENIENCE.

15              MR. PRICE:  RIGHT.

16              THE COURT:  WOULD YOU LIKE TO HAVE IT FRIDAY AT 3:00,

17      AND IF THERE ARE NO ISSUES, WE'LL JUST VACATE IT?  WOULD THAT

18      BE HELPFUL?

19              MR. PRICE:  THAT SOUNDS FINE, YOUR HONOR.

20              THE COURT:  OKAY.  SO FRIDAY AT 3:00, IF WE HAVE ANY

21      ISSUES BASED ON YOUR OBJECTIONS, THEN WE'LL ASK THEM AT THAT

22      TIME.

23              MR. PRICE:  AND, YOUR HONOR, ON ONE OF THE ISSUES YOU

24      SAID YOU WERE GOING TO ISSUE AN ORDER ON, THE DESIGN AROUND

25      START DATE, AND YOU RECALL LAST WEEK, OR AT THE LAST HEARING, I
```

```
1      SAID I DID NOT UNDERSTAND MR. LEE'S ARGUMENT AND YOU SAID

2      "MAYBE YOU WILL ONCE HE FILES SOMETHING," OR SOMETHING TO THAT

3      EFFECT.

4           SO NOW I DO, AND I DIDN'T KNOW IF YOU WANTED --

5               MR. MCELHINNY:  BEFORE YOU JUMP TO THAT, CAN I FINISH

6      A SCHEDULING THING?

7               THE COURT:  YES.

8               MR. PRICE:  SURE.

9               MR. MCELHINNY:  JUST SO YOUR HONOR UNDERSTANDS THIS,

10     WE -- IN ORDER TO GET YOU THE OBJECTIONS AT 8:00 O'CLOCK ON

11     FRIDAY MORNING, WE HAVE AGREED TO EXCHANGE OPENING SLIDES AT

12     NOON ON THURSDAY.

13              THE COURT:  OKAY.

14              MR. MCELHINNY:  IT MAY BE THAT SOME OF YOUR HONOR'S

15     RULINGS --

16              THE COURT:  WILL AFFECT THAT?

17              MR. MCELHINNY:  -- IMPACT WHAT GOES INTO THE OPENING,

18     SO WE MAY -- AND OBVIOUSLY YOUR HONOR WILL DO IT WHEN YOU CAN

19     DO IT, BUT WE MAY NEED TO CHANGE THE SLIDES.

20              THE COURT:  YEAH.

21              MR. MCELHINNY:  OR AT LEAST GET YOUR UNDERSTANDING IF

22     THAT SITUATION COMES UP.

23              THE COURT:  I COULD GIVE YOU THE TENTATIVE RULINGS.

24     WOULD THAT BE HELPFUL?  I JUST DON'T WANT TO, YOU KNOW, REOPEN

25     A PANDORA'S BOX HERE.
```

1         MR. MCELHINNY:  WELL, I JUST CUT THAT OFF.  I DON'T

2    KNOW IF YOU WANT TO HEAR THE PANDORA'S BOX FIRST.

3         (LAUGHTER.)

4         THE COURT:  WELL, OKAY.  WHY DON'T -- IF IT'S

5    HELPFUL, I CAN GIVE YOU WHAT MY TENTATIVE RULINGS ARE AND THEN

6    WE'LL ISSUE -- I THINK, YOU KNOW, THIS CASE SHOULD HAVE WRITTEN

7    RULINGS BECAUSE THESE ARE IMPORTANT ISSUES AND YOU NEED A

8    RECORD ANYWAY SINCE THIS IS ALL GOING UP, UNLESS YOU SETTLE

9    BEFORE NEXT TUESDAY.

10        OKAY.  SO THE SAMSUNG MOTION TO DISMISS I'VE ALREADY RULED

11   ON TODAY.  I'LL ISSUE AN ORDER SIMILAR TO LAST TIME, WHICH JUST

12   SAYS, YOU KNOW, CONSISTENT WITH FEDERAL RULE OF EVIDENCE 403

13   AND THE REASONS STATED ON THE RECORD, THE COURT ORDERS BLAH,

14   BLAH, BLAH, BLAH AS TO EACH ISSUE.

15        THE HTC, I'M GOING TO STAY WITH MY TENTATIVE OF EXCLUDING

16   THAT LICENSE.

17        WITH REGARD TO THE NON-INFRINGING VERDICTS, THAT WILL BE

18   PART OF THIS TRIAL.  IT WILL BE ADMITTED.

19        WITH REGARD TO THE DAMAGES NOTICE DATE, I'M GOING TO STICK

20   WITH THE MARCH 1 ORDER.

21        WITH REGARD TO WHAT'S IN THE GALAXY LINE, I THINK SAMSUNG

22   HAS WAIVED THAT ARGUMENT BY NOT PREVIOUSLY RAISING IT.

23        WITH REGARD TO THE DESIGN AROUND NOTICE DATES, I'M GOING

24   TO GO WITH SAMSUNG.

25        SO SAMSUNG IS GOING TO WIN THE NOTICE, DESIGN AROUND

1     NOTICE DATES; APPLE WILL WIN THE GALAXY ISSUE; APPLE WILL WIN

2     THE DAMAGES NOTICE DATE; SAMSUNG WILL WIN THE NON-INFRINGING

3     ALTERNATIVES; APPLE WILL WIN THE HTC LICENSE.

4          AND WITH REGARD TO THE DAUBERT, THIS IS WHAT I'M INTENDING

5     TO DO:  I DO NOT BELIEVE THAT MS. DAVIS IS QUALIFIED TO TESTIFY

6     AS TO COPYING, AND MR. MUSIKA WAS VERY CLEAR DURING HIS TRIAL

7     TESTIMONY THAT HE WAS NOT QUALIFIED TO TESTIFY ON COPYING, THAT

8     THAT WAS BEYOND THE SCOPE OF HIS ROLE AS AN EXPERT, AND THAT HE

9     HAD NO BASIS AND QUALIFICATIONS TO MAKE ANY SUCH OPINIONS.

10         I FIND THAT MS. DAVIS IS SIMILARLY UNQUALIFIED TO TALK

11    ABOUT COPYING.

12         NOW, ON THE OTHER HAND, THERE IS ONE SENTENCE IN

13    MR. MUSIKA'S DAMAGES REPORT WHERE HE SAYS THAT THERE'S AMPLE

14    EVIDENCE OF COPYING, AND HE DOES THAT, I BELIEVE, IN THE

15    CONTEXT OF NON-INFRINGING ALTERNATIVES AND SAMSUNG NEVER

16    OBJECTED TO THAT STATEMENT.

17         SO AS LONG AS OTHER EXPERTS ESTABLISH -- TESTIFY AS TO

18    COPYING AND MS. DAVIS RELIES ON THOSE OTHER TRIAL WITNESSES'

19    CONCLUSIONS ABOUT THAT, THEN SHE CAN TESTIFY AS TO THAT ISSUE

20    OF NON-INFRINGING ALTERNATIVES.

21         HOWEVER, IN MS. DAVIS'S REPORT, SHE GOES AN EXTRA STEP AND

22    SAYS, "WELL, I THINK COPYING IS EVIDENCE OF DEMAND."

23         THAT IS SOMETHING THAT MR. MUSIKA NEVER SAID IN 2012,

24    WHETHER AT TRIAL OR IN HIS EXPERT REPORT, SO THAT'S EXCLUDED.

25         SO THAT'S HOW I'M GOING TO RULE ON THE DAUBERT.

```
1         SO I HOPE THAT'S HELPFUL.  SO CAN WE HAVE THIS BE A VERY
2    QUICK PRETRIAL CONFERENCE, UNLIKE THE LAST TWO?  I MEAN, ARE WE
3    DONE?  YOU ALL CAN PREPARE FOR TRIAL AND I CAN KEEP WORKING ON
4    THESE ORDERS TO TRY TO GET THEM TO YOU AS QUICKLY AS POSSIBLE.
5         SO YOU NEED THEM -- I'M SORRY, MR. MCELHINNY.  WHEN ARE
6    YOU DOING YOUR EXCHANGE?
7              MR. MCELHINNY:  NOON THURSDAY, YOUR HONOR.
8              THE COURT:  NOON THURSDAY.
9              MR. MCELHINNY:  I THINK YOU TOLD US WHAT WE NEEDED
10   FOR THAT PURPOSE.
11             THE COURT:  IS THAT OKAY?
12             MR. MCELHINNY:  I THINK SO.
13             THE COURT:  OKAY.  I DOUBT THAT I WILL CHANGE MY MIND
14   ON ANY OF THESE BECAUSE, YOU KNOW, YOU ALL HAVE ADDRESSED THESE
15   AT LEAST TWICE, ON OCTOBER 10TH AND OCTOBER 17TH, AND THEN
16   FURTHER IN WRITING, AND WE'VE ALSO LOOKED AT IT PRETTY CLOSELY,
17   SO THAT'S PROBABLY HOW I'M GOING TO RULE.  WE'LL TRY TO GET YOU
18   WRITTEN ORDERS AS SOON AS WE CAN.
19        OKAY.  SO WHAT ELSE?  OTHER THAN -- ON FRIDAY IF I DON'T
20   HAVE ANY QUESTIONS BASED ON YOUR OBJECTIONS, I COULD JUST, YOU
21   KNOW, FILE A DOCUMENT SAYING IT'S NOT NEEDED.
22        DO YOU ALL WANT TO HAVE ALSO A DATE BY WHICH YOU TELL ME
23   IF YOU THINK YOU NEED ONE SEPARATE FROM WHETHER I NEED ONE?  DO
24   YOU WANT TO FILE MAYBE A JOINT DOCUMENT AT 10:00 O'CLOCK?  I
25   MEAN, I DON'T WANT THIS TO BE AN INVITATION TO NOW RELITIGATE
```

```
1    SOMETHING THAT'S BEEN DECIDED, BUT IF SOMETHING NEW COMES UP,

2    I'D RATHER TRY TO GET IT RESOLVED AND NOT HAVE TO DEAL WITH IT

3    ON TUESDAY MORNING WHEN WE'RE GOING TO HAVE A LOT OF PEOPLE

4    WAITING FOR JURY SELECTION.

5              MR. MCELHINNY:  WHEN DO YOU ANTICIPATE TELLING US

6    YOUR RULINGS ON THE ISSUES THAT ARE SUBMITTED TO YOUR HONOR ON

7    FRIDAY MORNING?

8              THE COURT:  WELL, IT KIND OF DEPENDS ON HOW DIFFICULT

9    YOUR OBJECTIONS ARE AND HOW LONG IT TAKES US.

10             MR. MCELHINNY:  RIGHT.

11             THE COURT:  YOU KNOW, AND THAT REALLY IS UP TO YOU

12   ALL.  I WOULD SAY AT THE LATEST MONDAY.  WOULD THAT BE ENOUGH

13   TIME FOR YOU?

14             MR. MCELHINNY:  YES, MA'AM.

15             THE COURT:  MONDAY?  SO SINCE I'M LIMITING THE

16   WRITTEN OBJECTIONS TO THREE PER EXHIBIT, IT WOULD PROBABLY BE

17   HELPFUL TO US IF YOU DO THE ONES THAT REQUIRE ANY FOLLOW-UP IN

18   TERMS OF DOCUMENTS; IF IT'S DEPOSITION TESTIMONY, FOR YOU TO

19   FOCUS ON THOSE SO WE CAN TRY TO RESOLVE THOSE; AND THEN THE

20   ONES THAT YOU MAKE ON THE RECORD WILL HOPEFULLY BE ONES THAT I

21   CAN JUST DECIDE ON THE SPOT.

22             MR. MCELHINNY:  THIS IS WHERE I WANT TO MAKE SURE

23   I'VE GOT IT.  SOMETIMES YOU SAY THREE PER EXHIBIT, BUT YOU MEAN

24   THREE PER WITNESS, RIGHT?  THREE OBJECTIONS PER WITNESS?

25             THE COURT:  WELL --
```

```
 1              MR. MCELHINNY:  LET ME TELL YOU WHAT I --

 2              THE COURT:  OH, HM.  HOW DID WE DO THAT LAST YEAR?  I

 3    THOUGHT IT WAS --

 4              MR. MCELHINNY:  IT WAS TWO PER WITNESS LAST YEAR.

 5              MS. MAROULIS:  NO.  IT WAS TWO PER EXHIBIT.

 6              MR. MCELHINNY:  AND NO LIMIT ON THE OPENING.  I'M

 7    SORRY.

 8              MS. MAROULIS:  RIGHT, THERE WAS NO LIMIT ON THE

 9    OPENING OBJECTIONS.

10              THE COURT:  I'M SADLY AWARE OF THAT.

11         (LAUGHTER.)

12              THE COURT:  BUT I THOUGHT EVEN FOR THE ACTUAL

13    EXHIBITS, YOU GOT TO MAKE TWO OBJECTIONS.  AM I WRONG ABOUT

14    THAT?  I THINK IT WAS TWO PER EXHIBIT AND TWO PER WITNESS.

15              MR. MCELHINNY:  THAT'S --

16              MS. MAROULIS:  THAT'S RIGHT.

17              THE COURT:  TWO PER DEPO DESIGNATION.

18              MR. MCELHINNY:  YES, THAT'S WHAT WE THINK.

19              THE COURT:  OKAY.  SO WHY DON'T WE -- YOU KNOW, WE'LL

20    INCREASE IT TO THREE PER EXHIBIT OR PER WITNESS.

21              MR. MCELHINNY:  AND --

22              THE COURT:  I GUESS THE WITNESS WOULD BE, WHAT?  THE

23    WITNESS'S -- I SEE.  I THINK WE MAY NEED TO PUT A LIMIT THEN ON

24    THE NUMBER OF -- YOU'RE SAYING A LIMIT ON THE NUMBER OF

25    EXHIBITS PER WITNESS?  WHAT ABOUT THREE -- OKAY.  WHAT IF WE
```

```
 1    DID THIS:  THREE PER WITNESS, AND THEN TWO FOR EACH OF THE

 2    THREE, WHETHER IT'S AN EXHIBIT -- OR DO WE JUST WANT TO SAY

 3    THREE PER WITNESS?  THAT'S FINE.  LET'S JUST SAY THREE PER

 4    WITNESS.

 5        NOW, LET'S TALK ABOUT WITH REGARD TO AN EXHIBIT FOR A

 6    WITNESS, I CERTAINLY DON'T WANT A LONG STRING OF 15 OBJECTIONS.

 7    I ASSUME IT'S JUST GOING TO BE ONE OBJECTION FOR ONE EXHIBIT

 8    TIMES THREE FOR EACH WITNESS.

 9            MR. PRICE:  THERE MAY BE, AND HEARSAY IS ALWAYS A

10    GOOD ONE, BUT THERE MAY BE TWO, I WOULD THINK.  I MEAN,

11    OBVIOUSLY IF WE GIVE YOU A LARGE NUMBER OF OBJECTIONS, THEN WE

12    DON'T -- IT'S HARD TO PAY ATTENTION TO ANY ONE.  BUT I CAN SEE

13    SOME EXHIBITS HAVING MORE THAN ONE OBJECTION.

14            THE COURT:  OKAY.  SO WHAT ABOUT OBJECTIONS TO THREE

15    EXHIBITS PER WITNESS, AND YOU CAN MAKE TWO OBJECTIONS FOR EACH

16    OF THE THREE EXHIBITS?

17            MR. PRICE:  I THINK THAT'S FINE IF WE'RE TALKING

18    AHEAD OF TIME.  BUT THEN ON THE FLY, THERE MAY BE SOMETHING

19    ELSE THAT WE COULDN'T FIT IN, WHICH OBVIOUSLY WE WOULD BE

20    CONSTRAINED BY NOT WANTING TO LOOK SILLY IN FRONT OF THE JURY.

21            THE COURT:  YES.  AND IF I FEEL LIKE IT'S STARTING TO

22    BE ABUSED, I'M GOING TO START COUNTING THAT AND DEDUCTING THAT

23    FROM YOUR TRIAL TIME.

24            MR. PRICE:  I UNDERSTAND.

25            THE COURT:  SO THERE WILL BE A DOUBLE COST.
```

```
 1          MR. MCELHINNY:  IT'S DOWN TO THIS LEVEL OF DETAIL.

 2   DOES YOUR HONOR COUNT A 403 OBJECTION AS A SEPARATE GROUNDS OF

 3   OBJECTION?  SO YOU -- YOU OBJECT THAT THE WITNESS HAS NO

 4   PERSONAL KNOWLEDGE, YOU OBJECT THAT THE DOCUMENT'S NOT

 5   RELEVANT, AND THEN YOU SAY -- AND SINCE YOUR HONOR IS DOING A

 6   403 BALANCING FOR ALL OF THESE --

 7          THE COURT:  SO YOU'RE SAYING THE OBJECTION IS GOING

 8   TO BE RELEVANCE AND YOU SAID --

 9          MR. MCELHINNY:  I TOOK AN EXAMPLE.  THE WITNESS HAS

10   NO FOUNDATION FOR THIS DOCUMENT, IT'S NOT RELEVANT, AND IT

11   WOULD BE HIGHLY PREJUDICIAL TO PUT IT IN.  IS THAT THREE

12   GROUNDS OR TWO GROUNDS?

13          THE COURT:  YOU CAN MAKE THREE.

14          MR. MCELHINNY:  THANK YOU.

15          MR. PRICE:  BUT IF WE SAY IT'S A LIMITED RELEVANCE

16   AND PREJUDICIAL, THAT'S ONE?

17       (LAUGHTER.)

18          THE COURT:  LIMITED RELEVANCE AND PREJUDICIAL?  I

19   MEAN, I -- YOU KNOW, IN MOST CASES I DON'T IMPOSE ANY LIMITS

20   AND IT'S NOT AN ISSUE.  IT'S JUST THAT IN THIS CASE, THINGS

21   TEND TO METASTASIZE VERY QUICKLY.

22          MR. PRICE:  I WAS --

23          THE COURT:  I'M JUST NOT -- I'M NOT SURE HOW MUCH WE

24   CAN HANDLE.  THAT'S MY ONLY CONCERN IS OUR HUMAN LIMITATION AND

25   HOW MUCH WE CAN HANDLE.
```

```
 1                    MR. PRICE:  I MEAN --
 2                    THE COURT:  YOU KNOW, IF IT'S RELATIVELY MANAGEABLE,
 3          THEN I MIGHT BE WILLING TO EXPAND IT, BUT I'M JUST NOT SURE HOW
 4          MUCH WE CAN DO.
 5                    MR. PRICE:  YEAH.  BECAUSE OF THE EXAMPLE THAT
 6          MR. MCELHINNY USED, I WOULD THINK A 403 OBJECTION, WHICH
 7          INVOLVES THE WEIGHING, WOULD BE ONE OBJECTION.
 8                    THE COURT:  UM-HUM.
 9                    MR. PRICE:  AND THEN SAY HEARSAY WOULD BE A SECOND,
10          AS OPPOSED TO HEARSAY BEING THE THIRD OBJECTION.  BECAUSE
11          YOU'RE GOING TO -- YOU WILL GET -- I'M SURE WE'LL BE ARGUING
12          403 A LOT, PARTICULARLY ON COPYING DOCUMENTS.
13                    THE COURT:  UM-HUM.
14                    MR. PRICE:  AND I WOULD THINK THAT BECAUSE THAT
15          INHERENTLY INVOLVES A WEIGHING, BECAUSE AS YOU KNOW, RARELY IS
16          A DOCUMENT ABSOLUTELY CATEGORICALLY IRRELEVANT TO ANYTHING,
17          THAT IT'S USUALLY A WEIGHING PROCESS.
18              AND SO I WAS JUST SAYING THAT I WOULD THINK THAT 403 WOULD
19          BE A SINGLE OBJECTION.
20                    MR. MCELHINNY:  I'M AGREEING WITH MR. PRICE.  I THINK
21          IN THIS --
22                    MR. PRICE:  MARK THAT.
23              (LAUGHTER.)
24                    MR. MCELHINNY:  IN THIS CASE, BECAUSE WE'RE ONLY
25          TALKING ABOUT DAMAGES, YOUR HONOR HAS ALREADY ANTICIPATED THAT
```

```
 1      THERE ARE GOING TO BE DOCUMENTS, AND THE QUESTION IS, WHY IS

 2   THIS RELEVANT TO THIS CASE?  AND SO I THINK YOU'RE GOING TO BE

 3   SEEING A BUNCH OF DOCUMENTS LIKE THAT.

 4          AND ONE OF THE REASONS A PERSON IS OBJECTING IS BECAUSE

 5   IT'S ALSO PREJUDICIAL.  SO TO ME, THAT'S -- THE LACK OF

 6   RELEVANCE AND 403 SHOULD BE ONE MEGA OBJECTION.

 7              THE COURT:  WELL, WHY ISN'T RELEVANCE PART OF

 8   PROBATIVENESS?

 9              MR. MCELHINNY:  IT IS.

10              THE COURT:  WELL, ISN'T THAT ALREADY PART OF 403?  SO

11   WHY DO YOU NEED TO MAKE IT SEPARATELY?

12              MR. MCELHINNY:  OKAY.  GOOD.

13              THE COURT:  I JUST INVITED MYSELF TO GET MORE

14   OBJECTIONS.

15              MR. MCELHINNY:  WE ACCEPT YOUR HONOR'S RULING.

16              THE COURT:  IT WOULD BE HELPFUL, WHEN YOU MAKE YOUR

17   OBJECTIONS, TO -- AS I SAID BEFORE, IF YOU'RE GOING TO INCLUDE

18   ANY TRIAL TESTIMONY CITATION, PLEASE INCLUDE THE ECF DOCKET

19   NUMBER.

20          BUT WHATEVER ADDITIONAL CUES LIKE THAT THAT YOU CAN GIVE

21   US -- FOR EXAMPLE, IF YOU'RE GOING TO CITE TO, YOU KNOW, PX

22   WHATEVER NUMBER AND THAT DID COME UP LAST TIME, THEN IF YOU

23   COULD CITE A SPECIFIC PART OF THE TRANSCRIPT SO WE CAN VERY

24   QUICKLY TURN TO THAT, IT WOULD BE HELPFUL.

25          ALSO, IF YOU COULD TELL US WHAT THE DOCUMENT IS BEING
```

```
 1      OFFERED FOR, THAT WOULD BE HELPFUL AS WELL, BECAUSE FOR A LOT
 2      OF THESE MOTIONS, NOT ONLY WERE THEY ALL VERY GENERAL, BUT WE
 3      DON'T HAVE THE INFORMATION THAT YOU DO ABOUT WHAT THE ISSUES
 4      ARE FOR THE TRIAL, AND SO IT'S A LITTLE BIT DIFFICULT TO DO
 5      SOME OF THE WEIGHING AND UNDERSTANDING WHY IT SHOULD OR SHOULD
 6      NOT BE COMING IN, WHY IT SHOULD OR SHOULD NOT BE RELEVANT.
 7          SO IF YOU COULD LAY IN, YOU KNOW, WHAT YOU INTEND TO USE
 8      IT FOR, IF YOU'RE WILLING TO DISCLOSE THAT TO THE OTHER SIDE,
 9      THAT WOULD BE HELPFUL FOR US.
10          OKAY.  WHAT ELSE?  ANYTHING ELSE FOR TODAY?  OTHERWISE WE
11      NEED TO GET --
12          (PAUSE IN PROCEEDINGS.)
13          THE COURT:  YES.  I THINK I PREVIOUSLY SAID EIGHT
14      JURORS; CORRECT?  I HAD SAID EIGHT JURORS AND THREE
15      PEREMPTORIES EACH.
16          OKAY.  ALL RIGHT.  I'M GOING TO PROBABLY ASK FOR A MUCH
17      GREATER NUMBER THAN OUR NORMAL VENIRE JUST BECAUSE I SUSPECT,
18      YOU KNOW, FOR ONE REASON OR ANOTHER WE WILL JUST NEED MORE
19      PEOPLE.
20          OKAY.  WHAT ELSE?  ANYTHING ELSE?
21          ARE YOU SURE YOU WANT TO DO THIS?
22          MR. MCELHINNY:  THIS TRIAL?
23          THE COURT:  YEAH.
24          MR. MCELHINNY:  YOUR HONOR, THIS IS --
25          THE COURT:  I SAID, LIKE, TWO AND A HALF YEARS AGO,
```

```
 1        "CAN'T WE ALL JUST GET ALONG?"  WHAT'S GOING ON WITH THAT?

 2               MR. MCELHINNY:  THIS IS THE SECOND TRIAL OF THE

 3      CENTURY, YOUR HONOR.

 4               THE COURT:  OKAY.

 5               MR. PRICE:  NO, THAT'S MARCH 12TH.

 6               MR. MCELHINNY:  I THINK YOU PROBABLY WANT TO SET A

 7      PAGE LIMIT.

 8               THE COURT:  ON WHICH ONE?

 9               MR. MCELHINNY:  ON THE OBJECTIONS TO THESE INTERIM

10      OBJECTIONS, THE THREE PER WITNESS.

11               THE COURT:  AH.  LAST YEAR I THINK IT WAS FIVE PAGES

12      EACH.  IS THAT RIGHT?

13               MR. MCELHINNY:  IT WAS THREE PAGES PER WITNESS LAST

14      YEAR.

15               THE COURT:  YOU KNOW, I -- THIS IS ALREADY -- THREE

16      PAGES PER WITNESS?  I DON'T THINK THAT'S TRUE BECAUSE I'M NOT

17      RECALLING THAT NOW.

18          IT'S GOING TO BE FIVE PAGES PER DAY, JUST BECAUSE I DON'T

19      THINK THAT WE CAN HANDLE MORE THAN THAT.  I'M SORRY.  I GUESS I

20      COULD INCREASE THAT TO SIX.

21          NOW, I DON'T SUSPECT THAT WE WILL ACTUALLY GET TO OPENING

22      ON TUESDAY, SO HOW MANY WITNESSES DO YOU THINK WE'LL NEED FOR

23      WEDNESDAY?

24               MR. MCELHINNY:  ARE YOU PLANNING TO GIVE PRELIMINARY

25      INSTRUCTIONS TUESDAY AFTERNOON?
```

```
1            THE COURT:  SO AS SOON AS WE GET OUR JURY I AM GOING
2    TO READ THEM THE PRELIMINARY JURY INSTRUCTIONS.
3            MR. MCELHINNY:  OKAY.  AND THEN THEORETICALLY -- I
4    THINK WE'RE ALL, AT LEAST THEORETICALLY, THINKING OPENINGS
5    WOULD BE WEDNESDAY MORNING.
6            THE COURT:  PROBABLY.  I DON'T KNOW.  THERE COULD BE
7    A SURPRISE AND MAYBE WE COULD START TUESDAY AFTERNOON.
8            MR. MCELHINNY:  WELL, WE'LL BE READY, BUT I'M
9    AGREEING WITH YOUR HONOR.  WE'LL BE READY FOR THAT, BUT WE'RE
10   ALL SORT OF, IN OUR HEADS, ANTICIPATING THAT THAT WOULD BE THAT
11   WAY.
12           THE COURT:  YEAH.
13           MR. MCELHINNY:  AND THEN I THINK WE'RE ANTICIPATING
14   CALLING TWO OR THREE WITNESSES ON WEDNESDAY.
15           THE COURT:  TWO OR THREE?  OKAY.  SO I'M TRYING TO
16   THINK OF HOW MANY OBJECTIONS WILL WE BE DEALING WITH ON FRIDAY?
17   JUST THE OPENING?  THAT MAY BE MORE THAN ENOUGH.  OR IF YOU
18   WANT TO START THE FIRST WITNESS, FIRST ONE OR TWO WITNESSES IN
19   ADDITION --
20           MS. MAROULIS:  YOUR HONOR, THE PARTIES HAVE BEEN
21   DISCUSSING THE SCHEDULE AND WE'RE DISCUSSING EXCHANGING THREE
22   DAYS BEFORE A WITNESS'S TESTIMONY.
23           THE COURT:  UM-HUM.
24           MS. MAROULIS:  SO IT PROBABLY WOULD BE, LIKE, SUNDAY
25   EXCHANGING AND THEN FILING SOMETHING ON MONDAY.  BUT WE HAVEN'T
```

1    FINALIZED THAT.

2              THE COURT:  YOU MEAN FOR WITNESSES WHO WILL TESTIFY

3    ON WEDNESDAY?

4              MS. MAROULIS:  WEDNESDAY, YES, SO THAT WE CAN FILE

5    SOMETHING TWO DAYS AHEAD FOR THE COURT.  SO WE'LL BE FILING

6    SOMETHING MONDAY FOR THE WITNESSES THAT ARE GOING TO GO ON

7    WEDNESDAY.

8              THE COURT:  OKAY.  ALL RIGHT.  WELL -- OKAY.  SO WHAT

9    ARE WE GOING TO GET FROM YOU ON FRIDAY AT 8:00 A.M., JUST THE

10   OBJECTIONS TO OPENINGS?

11             MR. MCELHINNY:  YES, YOUR HONOR.

12             MS. MAROULIS:  YES, YOUR HONOR.

13             THE COURT:  OKAY.  AND THEN ON MONDAY YOU SAID WE'LL

14   GET YOUR OBJECTIONS THEN TO THE FIRST SET OF THREE WITNESSES

15   WHO WOULD BE TESTIFYING ON WEDNESDAY?

16             MS. MAROULIS:  CORRECT.

17             MR. MCELHINNY:  MAYBE THREE OR FOUR, AND YOU'LL GET

18   THEIR OBJECTIONS AND OUR --

19             THE COURT:  OKAY.

20             MR. MCELHINNY:  AND OUR RESPONSES.

21             THE COURT:  OKAY.

22             MR. MCELHINNY:  IT'S ONLY EIGHT HOURS.  IT GOES VERY

23   FAST IN TERMS OF THE NUMBER OF WITNESSES.

24             THE COURT:  OKAY.

25             MR. MCELHINNY:  HOPEFULLY.

```
1              THE COURT:  ALL RIGHT.  OKAY.  WHAT ELSE DO WE HAVE
2        TO DO?  ANYTHING ELSE FOR TODAY?
3              MR. PRICE:  NOT THAT WE CAN THINK OF, YOUR HONOR.
4              THE COURT:  OKAY.  ALL RIGHT.  THEN FRIDAY DO YOU
5        WANT TO FILE SOMETHING LETTING ME KNOW IF YOU NEED ANYTHING?
6        OR LET'S JUST ASSUME YOU WON'T NEED ANYTHING, AND IF I NEED TO
7        ASK QUESTIONS ABOUT THE OPENINGS, THEN WE'LL MEET AT 3:00.
8            OTHERWISE I'LL LET YOU KNOW -- WHAT TIME DO YOU NEED ME TO
9        LET YOU KNOW BY?  WOULD 11:00 O'CLOCK OR NOON BE OKAY?
10             MR. PRICE:  I'M SORRY, YOUR HONOR.
11             MR. MCELHINNY:  11:00 O'CLOCK WOULD BE GREAT IF YOU
12       COULD LET US KNOW BY THEN, YOUR HONOR.
13             MR. PRICE:  YES.
14             THE COURT:  OKAY.  ALL RIGHT.  SO AT 11:00 O'CLOCK
15       I'LL FILE SOMETHING SAYING EITHER WE SHOULD OR SHOULD NOT MEET
16       AT 3:00.
17           OKAY.  ANYTHING ELSE?  NO?
18           OKAY.  ALL RIGHT.  THANK YOU.  THEN WE'LL LOOK FORWARD TO
19       GETTING YOUR THINGS ON FRIDAY AT 8:00.
20             MR. PRICE:  THANK YOU, YOUR HONOR.
21             MR. MCELHINNY:  THANK YOU, YOUR HONOR.
22           (THE PROCEEDINGS WERE CONCLUDED AT 3:31 P.M.)
23
24
25
```

1

2

3                         CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18          DATED:  NOVEMBER 6, 2013

19

20

21

22

23

24

25