QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar. No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OBJECTIONS TO APPLE'S SLIDES AND EXHIBITS FOR OPENING STATEMENT AND SAMSUNG'S RESPONSES TO APPLE'S OBJECTIONS TO SAMSUNG'S SLIDES AND EXHIBITS FOR OPENING STATEMENT** |

Samsung hereby submits the following objections to Apple's proposed slides and exhibits for use in opening statement.

| EXHIBIT NO. | SAMSUNG'S OBJECTIONS TO APPLE'S EXHIBITS FOR OPENING STATEMENT |
|---|---|
| PX34 | Apple's use of PX34 at the first trial violated the Court's order on Samsung's Motion In Limine No. 1, which excluded "evidence that Samsung shared confidential business information."   Dkt. 1267 at 3.   Yet, Apple used PX34 for that very purpose—to lob baseless and prejudicial accusations that Samsung's semiconductor division had stolen or otherwise abused Apple's confidential information.   *See, e.g.,* Dkt. 1997, Trial Tr. at 4079:2-4080:6 (PX34 was created "by the part of Samsung that got Samsung's confidential [information] and promised Apple complete confidentiality. Why was this group doing a competitive analysis of the iPhone? . . . Unfortunately, we don't know the answer."); *see also id.* at 4222:10-4223:16 ("It was Apple's confidential information, Apple's designs, [they] gave it to Samsung so they could make components for Apple . . . [PX34] shows that Samsung was evaluating how easy to would be to copy the iPhone . . . but [Samsung] also knew that all the business that Apple was giving to it was critically important, and if they said anything to Apple about intellectual property, they'd have a problem.   They wanted to fly below the radar.   ***They wanted to fly below the radar so they could ambush their business partner with a knock-off phone***, and that's what they did.").   To the extent the Court allows Apple to refer to this document in its opening statements, it should prohibit Apple from further violating the Court's order with these unfounded accusations.

Apple has argued that the phrase "HW portion: easily imitated" is evidence of copying.   Dkt. 2524-1 at 3.   Mr. Musika, however, did not discuss this portion of PX34 in his direct testimony, and when questioned about this phrase on cross-examination, he expressly disavowed any reliance on PX34 as evidence of copying.  *See* Dkt.1839,Trial Tr. 2079:7-2081:14, 2154:2-23.   Furthermore, none of Apple's technical or design experts cited PX34 in their expert reports.   Thus, there is no legitimate basis to allow Apple to argue that the phrase "HW portion: easy imitation" is evidence of copying, or evidence of demand. |
| PX38 | PX38 does not correspond to any patented feature.   PX38.13 very clearly describes "Double Tap to zoom in, Double Tap again to zoom out."   This is **not** the feature claimed by the '163 patent, which requires tap to zoom *and* tap to recenter.   *See* Dkt. 1695, Trial Tr. 1878:22-1879:13 ("Q.   …tap to zoom was, was out there in the field before this patent; right?   Dr. Singh: That is correct.")   In fact, the feature described in PX38 is a **non-infringing alternative** to the '163 patent.   PX38 can only mislead and confuse the jury by creating the false impression that the '163 patent broadly covers basic tap to zoom functionality.   FRE 403.

Apple seeks to use PX 38 to bolster its prejudicial copying allegations.   During the first trial, Apple's expert Dr. Singh focused on the statement in PX38 that "the user experience of the iPhone could be used as a design benchmark" in developing Samsung's double-tap-to-zoom functionality.   Because Apple *does not have a patent on double-tap to zoom,* however, these copying allegations are even more prejudicial and misleading.

Finally, PX 38 is not in any way related to an accused product.   PX38 studies the zooming method in the Samsung Rogue.   The Samsung Rogue is not an accused product, and was announced nearly a year prior to Samsung's first infringing |

| | |
|---|---|
| | sales—two years before the period in which Apple can claim damages for the '163 patent.   This product, and the feature described in PX38, bears no connection with the design and development of the accused products.   For these reasons, PX38 should be excluded under FRE 402 and 403. |
| **PX57** | Apple undoubtedly intends to use PX57 to accuse Samsung of copying the "bounce" feature, even though the document relates to a product that ***Apple never accused of infringing the '381 patent***.   PX 57 is a report addressing various aspects of Samsung's P5—the code name for the Galaxy Tab 8.9.   The Galaxy Tab 8.9 has never been accused of infringing any of the patents at issue in the new trial—or any other patent asserted in this case.   Any copying allegations related to this product are necessarily irrelevant to consumer demand for the patented feature.   Moreover, Samsung should not have to waste its trial time defending allegations that a ***non-infringing*** product somehow "copied" Apple's patented features.<br><br>PX 57 does not correspond to any patented feature.   Apple argues that this excerpt refers to the '381 patent.   However, the '381 patent does not cover the concept of bounce or bounce across an edge generally.   *See, e.g.,* Dkt. 1695, Trial Tr. 1783:17-20 ("You can have all kinds of things that bounce that don't -- that don't meet the elements of claim 19.")   Instead, the '381 patent covers a very specific implementation of bounce.   Such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally.   PX57 should therefore be excluded under FRE 402 and 403. |
| **PX186** | Apple failed to timely disclose any theory whereby this document would be relevant to damages.   Although Apple claims that PX 186 is relevant to consumer demand for the '381 patent, Mr. Musika did not cite this document in Ex. 24, Ex. 24-S, Ex. 25, Ex. 25-S or Ex. 53-S.   Nor was PX 186 cited in the expert report of Apple's technical expert, Dr. Balakrishnan.   Thus, no Apple witness can lay a foundation for this document.   More importantly, without any competent testimony to tie this document to consumer demand, or to the patented features, PX 186 is irrelevant.<br><br>In any event, PX 186 is not relevant to the patented features.   Apple argues that this excerpt refers to the '381 patent.   However, the '381 patent does not cover the concept of a "latex effect" or any other sort of bounce or bounce across an edge generally.   *See, e.g.,* Dkt. 1695, Trial Tr. 1783:17-20 ("You can have all kinds of things that bounce that don't -- that don't meet the elements of claim 19.")   The inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally. |
| **PX195** | PX 195 is an email between Samsung and an outside consultant studying possible changes to a bounce feature already present on Samsung's devices..   Nothing in PX 195 suggests that Samsung's engineers were implementing features to satisfy any consumer demand.   In fact, the document indicates that the bounce effect was already implemented, and further indicates that the changes being considered were <u>not</u> implemented.<br><br>In addition, PX 195 is not relevant to consumer demand.   An email exchange between a low-ranking software designer and a third-party consultant is not probative of what features are important to consumers.   Evidence that Samsung benchmarked its products against Apple products is at most evidence that Samsung's employees – not consumers – found the functions related to Apple's products to be of interest.   Apple's use of this exhibit would prejudice Samsung and risks confusing the jury.   It should be excluded under FRE 402 and 403. |

SAMSUNG'S OBJECTIONS AND RESPONSES RE: SLIDES AND EXHIBITS FOR OPENING STATEMENT

| SLIDE NO(S). | SAMSUNG'S OBJECTIONS TO APPLE'S SLIDES FOR OPENING STATEMENT |
|---|---|
| 1 | Apple failed to disclose any theory whereby JX1091 would be relevant to damages. JX1091 was not cited as evidence of demand in Exhibits 24, 24-S, 25, 25-S or 53-S to Mr. Musika's report. Thus, both this slide and JX1091 should be excluded.   *See* Dkt. 2645 at 4.

Samsung objects to the use of the video of Steve Jobs. The gratuitous video of Mr. Jobs has no evidentiary value and has been proposed by Apple in order to turn the trial into the popularity contest that the Court prohibited in its ruling on Samsung's Motion in Limine No. 1.   Dkt. 1267 at 4 ("Evidence related to Steve Jobs will generally be excluded unless it is specifically relevant to the IP rights at issue in the case").   The use of Mr. Jobs' image in this slide is not relevant to the specific intellectual property rights at issue in this case. Therefore, this slide should be excluded based on FRE 401 and 403. |
| 2 | During the first trial, Apple used PX133 "to establish public awareness of the designs of the iPhone and iPad and in further support of trade dress and design patent claims; secondary considerations."   Dkt. 1286 at 14.   Although Apple now claims that PX133 is "relevant to show consumer demand for the iPhone's patented industrial design" (Dkt. 2524-2 at 26), Mr. Musika did not cite PX133 as evidence of demand. In fact, Mr. Musika did not cite PX133 in support of *any* of his damages opinions. Accordingly, the Court struck Ms. Davis's opinion that PX 133 is evidence of demand.   *See* Dkt. 2386 at 7, n. 8 (Samsung's motion challenging Davis's reliance on PX133 (APLNDC-Y0000235973)); Dkt. 2575 at 8-9 (granting Samsung's motion).

Allowing Apple – through fact witness testimony or otherwise—to now assert that PX 133 is relevant to consumer demand would operate as an end-run around the Court's order.   Apple repeatedly objected to Samsung using fact witnesses or cross-examination as a "backdoor" to evidence that was not timely disclosed in expert reports—and the Court sustained Apple's objection each time.   *See, e.g.*, Dkt. 1519 at 1-2; Dkt. 1611, Trial Tr. at 949:20-950:17, 951:25-952:15; Dkt. 1841, Trial Tr. at 2806:22-2807:18.

Furthermore, PX133 is irrelevant to any disputed damages issues in this case. Apple's exhibit list from the first trial did not list the document as relevant to damages, but said it was "[o]ffered to establish public awareness of the designs of the iPhone and iPad and in further support of trade dress and design patent claims; secondary considerations."   Dkt. 1286 at 14.   PX 133 is also irrelevant to the patented features at issue.   The implication that the iPhone is "glamorous" and "amazing," as excerpted in slide No. 2, is not tied to any of the patented features.

Samsung objects to the heading "The iPhone Redefined the Smartphone" on the grounds that it is argumentative and prejudicial. |
| 3 | Apple's only basis for asserting that PX135 is relevant is that it purportedly shows consumer demand for the patented products.   Dkt. 2524-2 at 28.   The Court struck Ms. Davis's opinion that PX135 is evidence of consumer demand because Mr. Musika did not cite this document in his report.   *See* Dkt. 2386 at 7, n. 8 (Samsung's motion to strike challenging Davis's reliance on PX135 (APLNDC-Y0000146961)); Dkt. 2575 at 8-9 (granting Samsung's motion).   Apple cannot use fact witnesses or cross-examination as an end-run around the Court's order granting Samsung's motion to strike.   *See, e.g.*, Dkt. 1519 at 1-2; Dkt. 1611, Trial Tr. at |

| | | |
|---|---|---|
| 1 | | 949:20-950:17, 951:25-952:15; Dkt. 1841, Trial Tr. at 2806:22-2807:18. |
| 2 | | Furthermore, PX135 is irrelevant to any disputed damages issues in this case.   The fact that the editors of Time Magazine believed that "the iPhone is pretty" says nothing about the value of the specific features and designs claimed by Apple's patents—none of the patents-in-suit claim "pretty" smartphones.   Whatever limited probative value PX135 may have to consumer demand is outweighed by the danger of confusing the jury over the scope of Apple's patents, or misleading the jury into awarding damages based on the value of generic and unpatented features. |

| | | |
|---|---|---|
| 4 | | Apple failed to disclose its theory that PX142 is relevant to damages.   Apple claims that PX142 shows consumer demand for the patented products   (Dkt. 2524-2 at 29)—yet the Court struck Ms. Davis's opinion that PX142 is evidence of consumer demand, because Mr. Musika did not cite this document in his report.   *See* Dkt. 2386 at 7, n. 8 (Samsung's motion to strike challenging Davis's reliance on PX142; Dkt. 2575 at 8-9 (granting Samsung's motion).   Apple cannot use fact witnesses or cross-examination as an end-run around the Court's order granting Samsung's motion to strike.   *See, e.g.*, Dkt. 1519 at 1-2; Dkt. 1611, Trial Tr. at 949:20-950:17, 951:25-952:15; Dkt. 1841, Trial Tr. at 2806:22-2807:18.<br><br>Samsung further objects to the image of Steve Jobs appearing in slide No. 4 and the quotation "The Patents and Trademarks of Steve Jobs – Art and Technology that Changed the World."   These gratuitous images and references have no evidentiary value and have been asserted in order to turn the re-trial into the popularity contest that the Court prohibited in its ruling on Samsung's Motion in Limine No. 1.   Dkt. 1267 at 4:1-3 ("Evidence related to Steve Jobs will generally be excluded unless it is specifically relevant to the IP rights at issue in the case").   The use of Mr. Jobs' image and name in these slides is not relevant to the specific intellectual property rights at issue in this case.   At the last trial, this exhibit was admitted through Mr. Schiller, and his testimony indicates that it is much more about praise for Steve Jobs than of the patented features:   "I thought it was really great...after the passing of Steve Jobs, to create an exhibit for people to see his patents and design inventions that he was named on and set that up for people just to go read and see."   Dkt. 1610, Trial Tr. 609:10-611:20. |
| 5 | | Apple failed to disclose any theory whereby JX 1091 would be relevant to damages.   JX1091 was not cited as evidence of demand in Exhibits 24, 24-S, 25, 25-S or 53-S to Mr. Musika's report.   Thus, both this slide and JX 1091 should be excluded. *See* Dkt. 2645 at 4.<br><br>The image of Steve Jobs is prejudicial and should be excluded pursuant to the Court's Order on Samsung's Motion in Limine No. 1.   *See* Dkt. 1267 at 4 ("Evidence related to Steve Jobs will generally be excluded unless it is specifically relevant to the IP rights at issue in the case").   Mr. Jobs is a popular figure to some and has become even more so since his death.   These images of Mr. Jobs have minimal evidentiary value and are being presented to convert the damages trial into a popularity contest regarding a famous icon.   The use of Mr. Jobs' image on this slide is not relevant to any specific intellectual property rights at issue in this case and therefore should be excluded under FRE 403.<br><br>The title of the slide is argumentative and irrelevant to the patents at issue. |
| 11 | | Apple failed to disclose any theory whereby JX1091 would be relevant to damages.   JX1091 was not cited as evidence of demand in Exhibits 24, 24-S, 25, 25-S or 53-S to Mr. Musika's report.   Thus, both this slide and JX1091 should be excluded. *See* |

| | |
|---|---|
| | Dkt. 2645 at 4.<br><br>Samsung objects to the use of this video from Steve Jobs as more prejudicial than probative under FRE 403.   *See* Dkt. 1267 at 4 ("Evidence related to Steve Jobs will generally be excluded unless it is specifically relevant to the IP rights at issue in the case").   Mr. Jobs is a popular figure to some and has become even more so since his death.   These images of Mr. Jobs have minimal evidentiary value and are being presented to convert the damages trial into a popularity contest regarding a famous icon.   The only possible relevance of the video is that it briefly shows a feature labeled as "rubberbanding" behavior.   However, any probative value of this tangential reference is far outweighed by the prejudice of permitting Apple to curry favor with the jury by presenting videos celebrating its famous former CEO. |
| **17** | The images on slide 17 have been manipulated and distorted, and are therefore misleading and prejudicial.   The images have been manipulated so that the iPhone and Infuse 4G appear to be the same size, when they are not.   The purported image of the D'677 patent is distorted so that it appears translucent, making it difficult for the jury to tell what is claimed by the patent in this image.   Any probative value of this slide is outweighed by the potential prejudice to Samsung and so it should be excluded per FRE 403. |
| **19** | Slide 19 is misleading and unfairly prejudicial.   Apple has manipulated the images so that the screens of the Infuse 4G and the iPhone appear to be the same width, when they are not.   Slide 19 should be excluded under FRE 403. |
| **20, 24** | Slides 20 and 24 (identical) are misleading and unfairly prejudicial.   Samsung has designed and marketed hundreds of phones that are not represented on these slides. Apple's counsel has selectively chosen among a wide variety of different Samsung designs to present a self-serving and wholly misleading picture of Samsung's design history.   Further, these slides ignore Samsung's independent creation of its phones. These slides are irrelevant, incomplete and unfairly prejudicial, and suggest a timeline of events that never occurred based only on Apple's selective compilation of images, and should be excluded under FRE 401 and 403. |
| **21, 25** | Slides 21 and 25 (identical) are misleading and unfairly prejudicial.   Samsung has designed and marketed hundreds of phones that are not represented on these slides. Apple's counsel has selectively chosen among a wide variety of different Samsung designs to present a self-serving and wholly misleading picture of Samsung's design history.   Further, these slides ignore Samsung's independent creation of its phones. These slides are irrelevant, incomplete and unfairly prejudicial, and suggest a timeline of events that never occurred based only on Apple's selective compilation of images, and should be excluded under FRE 401 and 403.<br><br>Additionally it is misleading to show the F700 as being released after the iPhone as if it were copied, without noting the truth, that the F700 was developed before the launch of the iPhone and was announced in February 2007. *See* DX 2627.025 (Apple internal trade show report); Dkt. 1889 at 12 (noting correct year is 2007). Slide 21 should be excluded under FRE 401 and 403.<br><br>Finally, these slides are particularly misleading when used in conjunction with slide 22 and PX40.   As is clear from the face of PX40 (but not slide 22), the "crisis of design" email relates to UX, or user experience.   That email has nothing to do with Samsung's industrial design, nor has Apple ever contended otherwise. |

Case No. 11-cv-01846-LHK
SAMSUNG'S OBJECTIONS AND RESPONSES RE: SLIDES AND EXHIBITS FOR OPENING STATEMENT

| | | |
|---|---|---|
| **22** | | Slide 22 and PX 40 are irrelevant and unduly prejudicial.   PX 40 is a translated email from February 2010 that summarizes notes from a meeting of the Mobile Communications Division.   PX40 relates to an unaccused product (Omnia) that runs a completely different operating system and user interface than the accused products (the Bada platform).     It does not mention any patented feature, and comments only on Apple's "UX," or user experience, in the most generic of terms.   Apple construes certain quotes transcribed in the email — "crisis of design," "difference between Heaven and Earth" — as a directive for Samsung designers to copy Apple's iPhone design and user interface, and during trial introduced PX 40 solely for this purpose. Apple seeks to use the excerpts from PX 40 in slide 22 to bolster its irrelevant and prejudicial copying allegations against Samsung.   Dkt. 1997, Trial Tr. 4082:23-4083:25 (closing statement) ("Samsung listened to its most important customers, the telephone carriers, and they were telling Samsung to make something like the iPhone.").   This slide is unrelated to any patented features or products at issue in the new trial, and is thus irrelevant to the value of the specific designs covered by the asserted patents. |
| | | Samsung further objects to the heading "Samsung Recognized 'Crisis of Design'" on the grounds that it is argumentative and prejudicial. |
| **23, 26** | | Slides 23 and 26 (identical) are misleading as they show manipulated images of the phones at issue in this trial.   For example, the Gem is the smallest of the accused products, and yet it is scaled in a way that makes it appear to be the same size as the iPhone, as well as even larger products such as the Infuse 4G. |
| | | These slides are also misleading in that they suggest that all of the depicted phones were found to infringe the D'677 patent.   In conjunction with slides 20 and 21—the initial part of Apple's "timeline," which show the *industrial design* of Samsung's pre-iPhone products—slides 23 and 26 imply that the industrial design of these products infringe.   That is not the case—only the Infuse 4G was found to infringe the D'677 patent.   Instead, the products depicted on Slides 23 and 26 were found to infringe the D'305, yet Apple has not presented any examples of Samsung's pre-iPhone graphical user interface.   Slides 23 and 26 are therefore misleading, and should be excluded under FRE 403. |
| **33** | | Slide 33 shows the "average per unit" amount of damages that Apple seeks in this case.   Neither Mr. Musika nor Ms. Davis ever calculated the average per-unit amount that Apple claimed in damages, however.   The Court has already ruled that the parties cannot use new calculations at the new trial—even if the underlying data used in those calculations were previously disclosed.   Dkt. 2575 at 5-6; Dkt. 2316 at 3 (no new calculations).   The Court's ruling should apply with special force given that these calculations were not even disclosed in *Ms. Davis's* report. |
| **34** | | Slide 34 misleadingly quotes from Jury Instruction No. 54.   The full instruction states that Samsung's costs may be deducted if they are "directly attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense."   *See* Dkt. 1903.   Given that the jury will not receive the full and correct jury instruction until the conclusion of trial, Apple should not be permitted to mislead the jury at the outset of trial with a cherry-picked excerpt of Jury Instruction No. 54. |
| **35** | | Neither Mr. Musika nor Ms. Davis ever calculated the average per-unit amount that Apple claimed in damages.   The Court has already ruled that the parties cannot use new calculations at the new trial—even if the underlying data used in those calculations were previously disclosed.   Dkt. 2575 at 5-6; Dkt. 2316 at 3 (no new calculations).   The Court's ruling should apply with special force given that these |

| | |
|---|---|
| | calculations were not even disclosed by Ms. Davis in Apple's most recent report.<br><br>Furthermore, slide 35 misleadingly suggests that Apple seeks an average per-unit reasonable royalty, when in fact none of the reasonable royalty calculations presented by Mr. Musika or Ms. Davis used this rate. |
| **36-41** | Slides 36-41 are irrelevant to the damages retrial.   PX 36 was used in the first trial to support Mr. Winer's opinion that Samsung's products were likely to dilute the iPhone trade dress.   Dkt. 1612, Trial Tr. 1525:7-1527:21.   The iPhone trade dress is not at issue in the current trial.   Apple's discussion of PX 36 in its opening statement during the last trial demonstrates the lack of nexus between PX 36 and the narrow patent claims at issue in the new trial.   Apple described PX 36 as discussing "beautiful" and "enjoyable, engaging, and cool," Apple products, as well as the "whimsical" nature of features.   Dkt. 1574, Trial Tr. 318:8-319:15.   Apple argues that the third party praise mentioned in PX 36 is admissible to show demand, when in reality the praise referenced in slides 38-40 deals with vague concepts such as the iPhone's "beauty" and "on trend and cool" design. Apple does not have a monopoly on these broad concepts and they bear no relation to demand for the patented features.   Dkt. 2197 at 9-10 (citing *Apple, Inc. v. Samsung Elecs. Co.*, Ltd., 695 F.3d 1370, 1376 (Fed. Cir. 2012)). |
| **42** | Apple has claimed that the statements from PX36 shown in slide 42 are relevant to demand for Apple's '381 and '915 patents.   Apple, however, did not offer PX 36 as being relevant to the utility patents at the first trial, and should not be permitted to do so now.   Dr. Balakrishnan did not rely on PX 36 as part of his expert report, and therefore cannot testify about this document.   Apple therefore lacks any competent testimony linking this document to the features claimed by the '915 and '163 patents.<br><br>Moreover, the slide image merely says "lists bounce" and "two fingered pinch." PX 36.36.   The '381 patent does not cover "bounce" generally, as Dr. Balakrishnan conceded at trial.   Dkt. 1695, Trial Tr. 1783:17-20 ("You can have all kinds of things that bounce that don't -- that don't meet the elements of claim 19.") Similarly, the '915 patent does not cover "two fingered pinch," but rather the "all-important test" of distinguishing a one-finger scroll versus a two finger gesture.   *Id.* at 1857:20-24.   The inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce generally and the '915 covers pinch to zoom generally.   And Apple cannot rely on vague references to bounce and pinch to zoom in order to introduce a multi-page discussion of a document that bears no relation to the patented features. |
| **43-44** | Samsung objects to slides 43-44, which show exhibit PX44, as irrelevant to this case. PX 44 is a report identifying aspects of Samsung's S1, which became the Samsung Galaxy S (i9000).   The jury award finding zero damages for this product still stands, and therefore the Galaxy S (i9000) is not at issue in the damages retrial.   Dkt. 2271.<br><br>Evidence that Samsung employees – not consumers – found the functions in Apple's products to be of interest is not probative evidence of *consumer demand*.   Indeed, the presentation covers numerous features, as Apple points out, without giving special attention to the few specific features Apple says were copied.   Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 44. |

| | | |
|---|---|---|
| | | Furthermore, PX 44 is misleading and not relevant to the '163 patent because the '163 patent does not cover double-tap to zoom generally, but rather double-tap to zoom based on a "structured electronic document."   There is no indication that the behavior shown operates based on the underlying structure of the electronic document.   The inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '163 covers double-tap to zoom generally.   Dkt. 1695, Trial Tr. 1878:22-1879:13 ("Q.   …tap to zoom was, was out there in the field before this patent; right?   Dr. Singh: That is correct.")   Double-tap to zoom was known in the art and the '163 patent covers only a narrow instantiation of that general functionality. |
| 45-46 | | Samsung objects to slides 45-46, which show exhibit PX 46, because this document is irrelevant to this case.   PX 46 is a report identifying aspects of Samsung's Behold3, which was the project name for the phones that became the Vibrant and the Galaxy S4G.   The jury award stands for both of these products, and therefore they are not at issue in the damages retrial.

**PX 46** is not relevant to consumer demand.   This document is a competitive analysis of products, and does not indicate whether or not consumers demand any of the features described therein.   During the first trial, this document was not used to demonstrate consumer demand.   The Court's order at trial recognized that the evidence herein was relevant only to the issue of willful infringement, which is not at issue in the new trial.   (*See* Dkt. 1596 at 5.)   The only conceivable purpose for these exhibits would be to use analysis of products not at issue to characterize Samsung as having copied or of being a bad actor and inject that liability implication into the damages trial.   *See, e.g.*, Trial Tr. 1759:2-10 (Balakrishnan).   Apple's use of this document at the first trial demonstrates that Apple intends to use it to show willfulness and intentional copying.   Trial Tr. 4087:16-22 (closing) ("where even more changes were made to incorporate iPhone effects into the Galaxy product.").

Evidence that Samsung employees – not consumers – found the functions related to Apple's products to be of interest is not probative evidence of *consumer demand*.   Apple's use of this exhibit would prejudice Samsung and risks jury confusion over exhibits such as PX 46.

**PX 46** is also irrelevant to the patented features.   Apple argues that PX 46.66 refers to the '381 patent.   However, the '381 patent does not cover the concept of bounce or bounce across an edge generally.   *See, e.g.,* Trial Tr. 1783:17-20 ("You can have all kinds of things that bounce that don't -- that don't meet the elements of claim 19." The inclusion of such evidence is more prejudicial than probative, as it improperly suggests that the '381 covers bounce effects generally. |

I.   **SAMSUNG'S RESPONSES TO APPLE'S OBJECTIONS TO SAMSUNG'S SLIDES AND EXHIBITS FOR OPENING STATEMENT**

Samsung hereby submits the following responses to Apple's objections to Samsung's slides and exhibits for use in opening statement.

A.   **Independent Development Evidence excluded in first trial (Slide Nos. 34, 41, 52, 53, 61, 63, 70, 93, 100, 105, 115, 134, 160, 161, 163)**

1    Samsung's inclusion of independent development evidence in its opening slides is the

2    result of Apple's own trial strategy.    Samsung consistently objected prior to trial that Apple's

3    allegations of copying were irrelevant and prejudicial on the limited issues of this trial.    *See* Dkt.

4    2406 at 1-3 (Samsung's Motion In Limine); Dkt. 2419 at 3-7 (Samsung's Motion To Preclude

5    Testimony); Dkt. 2418 at 1-7 (Samsung's Motion To Exclude Exhibits).    Apple persisted in

6    arguing that it should be allowed to introduce allegations of copying, and that Samsung should be

7    precluded from rebutting them at all.    *See, e.g.*, Dkt 2415 at 4 (Apple's Motion to Exclude

8    Exhibits).    Apple purported to base this claim on rulings from the first trial excluding certain

9    independent creation evidence from opening slides.    *Id.*    While true that some of Samsung's

10   evidence of independent development was previously excluded, the Court consistently stated that

11   the exclusions were limited solely to the issue of invalidity.

12       For example, in ruling on prior motions in limine, the Court said that although the "internal

13   Samsung documents" could not be used as prior art references, they were "admissible for other

14   purposes, including to rebut an allegation of copying."    Dkt. 1267 at 3 (Order on Motions in

15   Limine).    In ruling on opening slides at the first trial, the Court said that "[c]onsistent with this

16   Court's ruling on the motions in limine (ECF No. 1267), the unreleased Samsung phones can be

17   admissible to rebut allegations of copying, even if they do not meet the requirements of § 102."

18   Dkt. 1456 (Order on Opening Slides) at 2 (allowing slide 10).    The slide the Court allowed was

19   identical to Samsung's later-admitted exhibit DX 684.001.    The Court only excluded those slides

20   it believed were aimed at "theories of invalidity."    *Id.* (regarding slides 11-19).    And even

21   though the Court precluded Hyoung Shin Park from testifying about certain independent creation

22   exhibits previously, the Court stated that this was because the jury might think the earlier Samsung

23   designs "anticipated, or rendered obvious the D'677 Patent," even though the evidence was

24   otherwise "probative of non-willfulness and to rebut an allegation of copying" and that those

25   "topics have not [been] prohibited."    Dkt. 1690 at 9 (Order on HS Park testimony).

26       Even though these exclusions were limited to invalidity, Samsung understood that the

27   Court did not want the parties to list excluded exhibits for this trial, and also that this trial would

28   be narrowly limited to the issue of correcting for notice dates.    Dkt 2316 at 2 (Case Management

1    Order).    To comply with the Court's directive, Samsung put the excluded independent creation

2    exhibits in its list, but indicated that it was not then intending to use them and was listing them

3    solely for appeal purposes.    Dkt 2486-5 at 22-23 (Samsung's Exhibit List).    Thereafter, it

4    became clear from Apple's exhibit lists, witness lists, and pleadings, that Apple intended that this

5    trial be about little other than the alleged copying and Samsung asked the Court in the Joint

6    Pretrial Statement (Dkt 2486 at 18-19) to clarify that Samsung could use these exhibits.    Now

7    that the Court has ruled that Apple's technical experts may testify about their theories of Samsung

8    adopting Apple features (Dkt 2654 at 7), Samsung should be allowed to offer its previously

9    excluded independent creation exhibits to rebut those allegations.

10        Apple can claim no prejudice or surprise over these slides and exhibits.    Slide 100 is

11    based on Exhibit DX 684.001 which was admitted at last trial .    *See* Dkt. 1889 at 8.    Slide 163

12    shows JX 1086, Samsung's KR'985 design registration for the F700/Q-Bowl design.    That

13    exhibit was also *not* previously excluded.    Apple even agreed in writing that the KR'985

14    reference was not subject to an exclusion order because Samsung disclosed it in the preliminary

15    injunction phase.    *See* Dkt. 2521-12 at 1 (email from Apple counsel on July 5, 2012).    The

16    Court ruled in motions in limine that it was relevant and admissible to rebut allegations of

17    copying.    Dkt. 1267 at 3 (Order on Motions in Limine).    Slide 105 similarly includes an image

18    of JX 1086, as well as images that are present in DX 684.001, and at the least, images from those

19    exhibits should not be stricken from that slide.

20        The rest of the slides Apple objects to relate only to the four exhibits that were previously

21    excluded: DX 522, 566, 596, and 625, corresponding to slides 34, 41, 52, 53, 61, 63, 70, 93, 115,

22    134, 160, 161, and some images in 105.    All these exhibits are listed on Samsung's final 2012

23    exhibit list[1]  and Samsung listed these four exhibits on its current list and in its pre-trial statement,

_____

25    [1]   Apple also objects to **"Slides referencing exhibits not on exhibit list:   (63, 53, 34, 41,**
26    **61, 160, 52)."**    As explained above, Samsung was following the Court's directive not to rely on
      excluded evidence.    Nonetheless, to preserve its appellate rights, Samsung listed the four exhibits
27    in these slides at the end of its exhibit list for appeal purposes (Dkt 2486-5 at 22-23 (listing DX
      522, 566, 596, and 625)) and provided these exhibits to Apple along with all the rest.    Apple's
28    (footnote continued)

1   seeking clarification and/or reconsideration of the Court's prior exclusion of them.    Dkt. 2486 at

2   18-19.    Since invalidity is no longer at issue, and was the sole basis these exhibits were

3   previously excluded, there is no undue prejudice to Apple in allowing their inclusion.    Indeed,

4   these exhibits were all timely produced during discovery and Apple had abundant time to depose

5   Samsung's witnesses about them.    Dkt 1463 at 6; Dkt 1465 at ¶¶ 3, 7.    Samsung also proffered

6   various witnesses on them, namely Minhyouk Lee, Dongseok Ryu, and Hyoung Shin Park.    Dkt

7   2523 (Samsung's Proffer of Independent Creation Evidence) at 40-43, 46-53.

8   **B.    Excluded 5% allocation theory (Slide Nos. 13, 39, 80, 174)**

9   PX 69, the J.D. Power and Associates Report on which these slides are based, was

10   admitted through Mr. Benner at the last trial. Dkt. 1839, Trial Tr. 2028:5-8. Apple objects to

11   Samsung Opening Slide Nos. 13, 39, and 80[2] on the basis of an "excluded 5% allocation theory."

12   Samsung assumes that Apple is referring to the Court's October 22, 2013 Order Granting in Part

13   and Denying in Part Motions to Strike Portions of Updated Expert Reports On Damages (Dkt.

14   2575 at 13:21-14:7), where the Court excluded Mr. Wagner's $3.81 per unit reasonable royalty

15   rate for the D'677 patent.    However, nothing in Slide Nos. 13, 39, and 80 refers to Mr. Wagner's

16   royalty calculation or allocation at all.    Nor does Samsung intend to present Mr. Wagner's $3.81

17   per unit royalty or a "5% allocation theory," whether using Slide Nos. 13, 39, and 80, or

18   otherwise.    Rather, the slides will be used to make the basic conceptual point that – contrary to

19   Apple's assertions – "Ease of Operation" and "Physical Design" encompass many more aspects

20   than just the utility patents and design patents at issue.

21   **C.    Prior Art / Rearguing Invalidity (Slide Nos. 23, 99, 163, 167)**

22   Apple objects to slides 23, 99, 163 and 167 as prior art exhibits that reargue invalidity.

23   But as Samsung has repeatedly stated, it has no intention of rearguing invalidity.    Rather,

24   _____

25   position is that Samsung should have violated the Court's order in order to present this issue to the

26   Court.    Samsung, instead, complied with the Court's order and presented the issue in the context
    of the "Disputed evidentiary issues" in its Joint Pretrial Statement.    Samsung should not be

27   penalized for following the Court's orders.

    [2]    Samsung has withdrawn Slide No. 174.

28

1    Samsung will present these prior art exhibits to show that the benefit of the patented features are

2    minimal compared to what existed at the time of the patents were filed.    The Court has already

3    found that evidence of prior art is probative for this purpose.    Dkt. 2552, Pretrial Conference

4    Order (denying Apple's motion in limine with respect to prior art without prejudice); Dkt. 2562,

5    10/17/2013 Hearing Transcript ("I also agree with Samsung that they should be able to look at the

6    prior art to be able to say, 'Look, the benefit of this patented feature is so minimal compared to

7    what existed at the time of the invention.'")    Moreover, each of the prior art references cited was

8    presented in detail during the first trial and admitted into evidence:

9    - Slide 23, DX655, Tablecloth.   *See* Dkt. 1841, Trial Tr. 2883:3-6.

10   - Slide 99, DX518, LaunchTile.    *See* Dkt. 1839, Trial Tr. 2235:24-2236:2.

11   - Slide 167, DX556, Jefferson Han Video.    *See* Dkt. 1998, Trial Tr. 3722:7-10.

12       As part of this category, Apple also objects to slide 163, JX1086.    JX 1086 will not be

13   used to re-argue invalidity, but to rebut allegations of copying and to show alternative designs for

14   D'677.    As explained above, JX 1086 was not excluded and shows that Samsung independently

15   created its own smartphone designs, applying for this Korean design registration the month before

16   the iPhone was announced.

17       Accordingly, Samsung should be permitted to compare the purported benefits of Apple's

18   patented features to the existing prior art.

19       **D.**    **Excluded Design Arounds (Slide Nos. 38, 69, 165)**

20       Apple objects to Slide 38 – a video of the Yellow Glow feature in the contacts application

21   of the Nexus S 4G – as showing a Samsung design-around that was excluded by the Court.

22   Apple's objection should be overruled for several reasons.

23       First, the Yellow Glow feature is not a Samsung design around.    Rather it was developed

24   by Google and is a stock feature in Google's Android code.    The feature was released with the

25   Nexus S 4G including the accused Android 2.3.4 version, and the Android source code including

26   this feature was timely produced to Apple on or before December 31, 2011, and Apple has not and

27   cannot come forward with evidence suggesting otherwise.    Because the Yellow Glow behavior is

28   not Samsung's design-around, it clearly falls outside the scope of the Court's order excluding

1   Samsung's design arounds.   *See* Dkt. 898 ("Samsung shall be precluded from offering any

2   evidence of *its design-around efforts* for the '381, '891, and '163 patents, and shall not argue that

3   the design-arounds are in any way distinct from those versions of code produced in accordance

4   with the court's order.   Samsung must instead rely solely on the versions of code that were

5   produced on or before December 31, 2011.") (emphasis added).

6       Second, the Nexus S 4G is plainly relevant to the retrial.   This product is one of the 13

7   products at issue in the retrial, and the Yellow Glow behavior in the Contacts and Browser

8   applications are non-infringing alternatives to Apple's '381 patent.   In the first trial, Apple

9   argued that the bounce back behavior in the Gallery application of the Nexus S 4G infringed and

10  the jury agreed.   Dkt. 1931; *see* Dkt. 1695, Trial Tr. 1753:3-8.   However, the Nexus S 4G was

11  not accused of infringing under Contacts or Browser.   Dkt. 1695, Trial Tr. 1754:11-18, 1754:23-

12  1755:1.   Now Samsung simply intends to show the jury that this same device includes

13  alternatives in the Contacts and Browser applications that do not infringe.

14      Finally, Apple has waived any objections based on the Yellow Glow behavior in the Nexus

15  S 4G.   Apple, not Samsung, admitted this device into evidence at the first trial without

16  qualification.   Dkt. 1695, Trial Tr. 1767:18-22 (Mr. Jacobs: "Your Honor, at this point I would

17  like to move into evidence – I've shown these to counsel – JX 1023, the Nexus S 4G…") Thus,

18  the jury in the first trial had the opportunity to observe all of the applications on the Nexus S 4G,

19  including the Yellow Glow behavior found in the Contacts and Browser applications, as well as

20  the bounce back behavior found in the Gallery application.

21      Samsung Opening Slides **69** and **165** are objected to on the basis of "excluded design

22  arounds."   The Court should overrule this objection.   Under the plain titles "Available

23  Replacement Design(s) for D'677 Patent," each contains a photo of the Galaxy Ace.[3]   The

24  Galaxy Ace was held not to infringe the D'677 by the 2012 jury.   Dkt. 1931 at 6.   The Court's

25  _____

26      [3]   In response to Samsung's request "Which phones do you object to on slide 165?" Apple
    responded: "re 165, we object to the Ace as excluded."   Declaration of Kara M. Borden ("Borden
27  Decl.") in Support of Samsung's Objections and Responses, ¶ 2.   Accordingly, Samsung
    addresses the only the Ace here.

28

1   recent Order Re: Noninfringing Alternatives Based on 2012 Jury's Noninfringement Verdict (Dkt.

2   2657), discussed Apple's objections to Samsung's use of the jury's verdicts of noninfringement,

3   which were directed to use of the Ace as a noninfringing alternative for the '915 patent, **not** the

4   D'677 patent.   *See* Dkt. 2381 at 6:19-22 (Apple's Motion to Strike addressed only the use of the

5   Ace for the '915 patent, not the D'677); Dkt. 2403 (no mention of the Ace in Apple's Motion in

6   *Limine*).   Thus, without specifically addressing the D'677 patent, or the jury's finding of

7   noninfringement by the Ace of the D'677 patent, the Court concluded under a FRE 403 analysis

8   that the Ace could not be used to show noninfringement of the '915 patent.   Dkt. 2657 at 14.

9        Samsung requests the Court permit use of the Galaxy Ace as a noninfringing alternative

10  for the D'677 patent.   The Court's general reasoning that verdict-based noninfringing alternatives

11  are highly probative applies here, this evidence is not cumulative, there is no risk of confusion or

12  satellite litigation, and Samsung would be prejudiced if it were unable to show the jury that the

13  Ace does not infringe the D'677 patent.   In contrast, Apple has never specifically argued against

14  use of the Ace as a non-infringing alternative to the D'677 patent.

15       First, the Ace was the one product held by the 2012 jury not to infringe the D'677 patent,

16  which makes it unique.   Dkt. 1931 at 6.   Because it is the unique product held not to infringe the

17  D'677, it is not cumulative.   *Cf.* Dkt. 2657 at 14.   It is therefore highly probative.   *See* Dkt.

18  2657 at 10 (finding that the 2012 jury's noninfringement verdict is relevant to the reasonable

19  royalty analysis).   The use of the Ace as an alternative for the D'677 patent would not create

20  confusion or satellite litigation because it was not accused of infringing the D'087 or any other

21  valid design IP.   *See* Dkt. 1931 (Ace only held to infringe the '163 and '381 patents).   Thus the

22  Court's concerns on confusion and waste of time with respect to the Vibrant and the D'087 patent

23  do not apply to the Ace.   *Cf.* Dkt. 2657 at 14.   Samsung would be prejudiced if it was not

24  permitted to show the jury that the Galaxy Ace is a noninfringing alternative for the D'677 patent.

25       Moreover, the Court's order did not address the use of the Ace as a noninfringing

26  alternative for the D'677 patent only because Apple did not raise the issue in briefing.   *See supra*

27  (citing Dkt. 2381 at 6:19-22; Dkt. 2403).   In contrast, Samsung's Proffer of Evidence Pursuant to

28  the October 11, 2013 Case Management Order explicitly states that Mr. Wagner expects to testify

1   that "the Galaxy Ace does not infringe the D'677 patent" and "is therefore an additional

2   commercially acceptable alternative."   Dkt. 2523 at 10.   *See also id.* at 16 ("Jinsoo Kim was

3   involved in designing Samsung's smartphones, including the Galaxy Ace, which was found not to

4   infringe the D'677 patent.")

5        Apple will suffer no prejudice from testimony that the Ace does not infringe the D'677.

6   At the first trial, Mr. Wagner testified that a finding of noninfringement, such as the finding that

7   the Ace does not infringe the D'677, would show additional "commercially acceptable

8   alternatives, designs that could have been used instead of the infringing designs."   Dkt. 1842

9   Trial Tr. at 3038:4-19.   Mr. Wagner's August 2013 Report stated "[a]s can be observed upon

10   inspection of Schedule 6.1-JV at Volume 1, Tab 6 of my Report, Samsung has several products

11   that were not found to infringe or were never accused of infringing the design patents at issue in

12   the New Trial."   Lodged at Dkt. 2401 at ¶500.   Schedule 6.1-JV indicates that the Galaxy Ace

13   was held not to infringe the D'677 patent.   *See id.; see also id.* at ¶¶517-526 (discussing jury's

14   verdict on D'677 and noninfringing alternatives).   Accordingly, Samsung requests the Court

15   permit use of the Galaxy Ace as a noninfringing alternative for the D'677 patent.

16       **E.**   **<u>Misleading Videos/Slides that are not part of patent / prior art (Slide Nos. 48,</u>**

17         **<u>86, 122, 168)</u>**

18        Apple objects to slides 48, 86, 122, and 168 as "Misleading videos/slides that are not part

19   of patent/prior art."   Far from misleading, these slides accurately demonstrate the functions

20   described by Apple's utility patents (Slides 48, 86, and 122), and the Microsoft Agnetta prior art

21   patent (slide 168).   The figures themselves come directly from the patents identified on the

22   slides.   The animation of those figures slides come directly from the description of the claimed

23   functionality and are contained within the patents.   These slides were used during Samsung's

24   opening statement in the first trial and the animations on slide 48 was used in the direct

25   examination of Mr. Gray, without objection.   *See* Dkt. 1441, Apple's Objections to Samsung's

26   Opening Statement; Dkt. 1731, Apple's Objections to Witnesses.

27        Furthermore, each of these slides depict behaviors as described in the patents.   Slide 48

28   depicts Figures 16A and 16B of the '915 patent, as the specification and claims describe this

1    figure.   *See* '915 patent, 9:10-37, 13:53-57; *see also* claim 8.   This animation will help the jury

2    to understand the "quintessential test" in claim 8 of "determining whether the event object invokes

3    a scroll or gesture operation by distinguishing between a single input point applied to the touch-

4    sensitive display that is interpreted as the scroll operation and two or more input points applied to

5    the touch sensitive display that are interpreted as the gesture operation." '915 patent, claim 8, col.

6    24:5-11; Dkt. 1695 Trial Tr., 1824:15-19 (Singh).

7            Slide 86 depicts Figure 5A of the '163 patent, as the specification and claims describe this

8    figure.   *See* '163 patent, 17:20-23, 17:48-52, 29:25-33.   This animation will help the jury to

9    understand the two distinct gestures required by the '163 patent.

10           Slide 122 depicts Figures 8A-8D of the '381 patent, as the specification and claims

11   describe this figure.   *See* '381 patent at 27:5-27:43; claim 19.   Thus, the animation accurately

12   depicts the behavior of the '381 patent.

13           Slide 168 depicts figures 5 *et seq.* of the Microsoft Agnetta patent (US 7,933,632)

14   ("the '632 patent"), assigned to Microsoft Corporation, which is prior art to the '163 patent.   DX.

15   561.   The Court has already determined that prior art is probative to demonstrate the scope of the

16   asserted patents. Dkt. 2552, Pretrial Order.   Like the asserted patents above, the animation shown

17   on slide 168 correlates with the disclosure in the '632 patent.   For example, the '632 patent

18   indicates that "a tile can be selected as the active tile and displayed in an enlarged view including

19   additional content." DX 561, '632 patent, col. 2:17-20.   Moreover, the '632 patent discloses

20   "[n]avigating through the tile space changes the tile that has focus, updating the active tile shown

21   in the summary view." *Id*. at 6:46-48.   Moreover, the animation shows the progression through

22   the different Figures in the patent.   This animation will help the jury understand the description of

23   the '632 patent, and the scope of the '163 patent.    To the extent Apple argues that this slide is

24   misleading because it was contradicted by inventor Bryan Agnetta, Apple is misrepresenting his

25   testimony as they did in the first trial.   First, Apple did not object to this slide with animation at

26   opening and it was played during opening statements. Dkt. 1441.   Second, Mr. Agnetta clarified

27   his own testimony regarding the scope of embodiments covered by the Agnetta patent during re-

28

1   direct questioning at his deposition. B. Agnetta Dep. Tr., May 6, 2012 at 44:16-56:1.   The

2   animation accordingly reflects the written disclosure in the patent.

3       **F.**     **Misleading views suggesting comparison of back of products (Slide No. 54)**

4           Samsung removed the graphic on slide 54 which Apple stated has resolved its objection.

5       **G.**     **Alleged noninfringing alternatives not timely disclosed in any expert report**

6               **(Slide Nos. 69, 73, 91, 94, 165)**

7           Samsung's Opening Slides **73**, **91**, **94,** and **165** illustrate Samsung's available non-

8   infringing alternatives to Apple's D'677 and/or D'305 patents among the smartphones at issue in

9   the new trial.   Apple never accused these phones of infringing those patents.   Apple's claim that

10  these slides depict non-infringing alternatives that were not timely disclosed is wrong.[4]

11          Mr. Wagner's April 2012 report timely disclosed his opinion that products not accused of

12  infringing Apple's Design IP "provide ample evidence that acceptable non-infringing alternatives

13  exist."   *See* Dkt. 2401, April 20, 2012 Rpt. ¶¶ 475-477, 484.   In Schedule 6.1 to the April 2012

14  Report, Mr. Wagner laid out all of the available non-infringing alternatives based on products not

15  accused of infringing Apple's design patents.[5]   In fact, the majority of the products depicted on

16  slides 73, 91 and 94 were *expressly discussed* as non-infringing alternatives to the D'677 and/or

17  D'305 patents in the body of Mr. Wagner's report.   *See id.* at ¶ 477 (Captivate, Epic 4G, and

18  Galaxy Prevail); *id.* at 480 (icon design-around based on Transform); *id.* at 484 (Exhibit 4G, Gem,

19  Indulge, Nexus S 4G, Replenish, and Transform).   The same opinion appears in Mr. Wagner's

20  August 2013 Report.   *See, e.g.,* Dkt. 2401, August 26, 2013 Rpt. at ¶¶ 500-503, 514.

21          Mr. Wagner also disclosed this opinion at trial—without objection from Apple.   Wagner

22  testified that Samsung had available non-infringing alternatives because Samsung "could have just

23  _____

24      [4]     In response to Samsung's request "Which phones do you object to on slide 165?" Apple
    responded: "re 165, we object to the Ace as excluded."   Borden Decl. ¶ 2.   To the extent Apple

25  files additional objections to slide 165, Samsung's response regarding slide 94 addresses the
    additional phones not accused of infringing the D'677.

26      [5]     Schedule 6.1 to the April 2012 Report is identical to Schedule 6.1-NT to the August 2013

27  Report, except that the latter was revised only to reflect the products and patents at issue in the
    new trial.

28

1    moved to those designs" that were never accused of infringing Apple's design patents.   Dkt. 1842,

2    Trial Tr. at 3036:17-3038:3.   He used the Nexus S as an example of a product that was not

3    accused of infringing Apple's design patents.   *See id*.   Apple did not object to this testimony, nor

4    did Apple object to the admission of the Nexus S.   *See id.* at 3037:14-15 ("The Court: No

5    objection, right? It's admitted.").

6         Moreover, Apple's objection is futile.   It would impossible for the jury not to learn that

7    these products in the new trial are not accused of infringing the D'677 and/or D'305 patents.   The

8    jury will be charged with determining damages on some phones for these patents, but not the

9    unaccused phones shown in slides 73, 91, 94, and 165.   Apple's objection to identifying them as

10   available replacements for the patents they are not accused of infringing is futile and should be

11   overruled.

12        **H.      Improper argument of law (Slide Nos. 76, 96, 119)**

13        Apple objects to Samsung Opening Slide Nos. 76, 96 and 119 on the basis of "improper

14   argument of law."   Slide 96 is a verbatim copy of the instruction given by the Court during the

15   last trial,[6] concerning expenses that may be deducted in calculating defendants' profits.   (Dkt.

16   1893 at 72, Final Jury Instructions No. 54).   There is nothing misleading about showing the jury

17   a portion of a jury instruction relevant to a central issue in the case.

18        Apple's objection to Slide Nos. 76 and 119 is equally misplaced.   Neither Slide 76 nor the

19   last column of Slide 119 purports to recite the law or be an explanation of it.   The Court will tell

20   the jury that it is the Court's role to instruct it on the law.   Samsung does not intend to, and will

21   not, purport to tell the jury what is the law.   Rather, Slides No. 76 and 119 identify three pertinent

22   questions that Samsung will ask the jury to consider as it hears the evidence.   These questions

23   will be part of Samsung's attempt to frame its case, just as Apple will undoubtedly attempt to

24   frame the case as it sees it.   Apple should not be permitted to obstruct the presentation of

25   Samsung's case just because it disagrees with it.   Apple will get the opportunity to present its

26   opposing view of how the jury should see the case.

27   ─────────────────────

28        [6]   Samsung preserves its objections to this instruction as stated in Docket No. 2513.

**I.**     <u>**Misleading videos and slides (Slide Nos. 21, 111, 123)**</u>

Apple is objecting to slides 21 and 123 on the basis that they are misleading.    But the videos and slides at issue accurately depict the behavior of the depicted devices.    Slides 21 and 123 depict a video of hard stop behavior on the Galaxy Tab.    This video, SDX3918.101, was the exact video shown to Dr. Balakrishnan during the first trial in order to demonstrate a noninfringing alternative to the '381 patent.    Dr. Balakrishnan specifically admitted this alternative did not infringe.    Dkt. 1695, Trial Tr. 1785:19-21 ("That functionality does not appear to meet the claims.")    While the Galaxy Tab 7.0 was found to infringe, there is no dispute based on Dr. Balakrishnan's testimony that the depicted behavior is a noninfringing alternative. Samsung has no intention of challenging infringement at the upcoming damages trial.    Thus there is no risk of confusion by the inclusion of this evidence.

Apple has withdrawn its objection to Slide 111.

**J.**     <u>**Image does not match report (Slide No. 108)**</u>

Samsung has provided Apple with the corrected Slide No. 108 and has replaced the erroneous images with corrected images. Apple has confirmed that this has resolved their objection.

**K.**     <u>**Slides referencing exhibits not on exhibit list:   (Slide Nos. 63, 53, 34, 41, 61, 160, 52, 71)**</u>

Samsung removed the cite to PX 66 on slide 71 which Apple stated has resolved its objection.    Please refer to footnote 1, *supra*, regarding Slide Nos. 63, 53, 34, 41, 61, 160, and 52.

**L.**     <u>**Exhibits not admitted in the first trial and those not on Samsung's exhibit list for this trial (JX1087-1090, JX 1097)**</u>

Samsung will not use JX 1087-1090 and JX 1097 in its opening statement.

1    DATED: November 8, 2013

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By  /s/ Victoria F. Maroulis
Charles K. Verhoeven
Victoria F. Maroulis
Kevin P.B. Johnson
Michael T. Zeller
Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC., and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC