HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

Defendants.

Case No. 11-cv-01846-LHK (PSG)

**APPLE'S OPPOSITION TO SAMSUNG'S EMERGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS**

## I. INTRODUCTION

In an effort to unfairly portray Apple as "sandbagg[ing]" Samsung just days before trial, Samsung seeks a judgment as a matter of law on an issue before any evidence has even been presented at trial. (Dkt. No. 2692 at 3.) Samsung complains that Apple's opening demonstratives suggest "an entirely new theory of lost profits damages." (*Id.*) That is incorrect. In fact, just yesterday, Samsung's counsel acknowledged that "the numbers disclosed in Apple's opening slide[s] nos. 33 and 35 are consistent with Ms. Davis's calculation of lost profits for only the '915 patent in her Exhibit 17.1-PT-J series." (Dkt. No. 2692-8.) As indicated in Apple's opening demonstratives (which will be revised in accordance with the Court's November 10, 2013 Order (Dkt. No. 2696)), Ms. Davis will comply fully with the Court's orders and will provide lost profits calculations for only the '915 patent and based on an assumption regarding a design-around period starting on the date of first infringement.

While the Court's November 7, 2013 Order limited the scope of ***Ms. Davis's testimony***, Samsung improperly seeks a judgment as a matter of law that would preclude ***Apple*** from seeking ***any*** lost profits for the '381, '163, and D'677 patents. As explained below, however, Apple has consistently disclosed damages theories and evidence that would support an award of lost profits for those patents regardless of the limitation applied to Ms. Davis's testimony. The jury should be permitted to hear that evidence and to award an amount of lost profits damages supported by the evidence. Samsung's motion should be denied.[1]

## II. MS. DAVIS'S TESTIMONY WILL COMPLY WITH THE COURT'S ORDERS.

Ms. Davis will provide a lost profits calculation that derives from assumptions regarding design-around efforts for the '915 patent starting with the date of first infringement—as required by the Court's November 7, 2013 Order. More specifically, Ms. Davis will testify that Apple's

---

[1] Contrary to Samsung's suggestion, Apple's counsel met and conferred with Samsung's counsel by email and explained that "Ms. Davis will testify consistent with her report and the Court's order" and "[t]he jury can award damages less than or greater tha[n] either expert's opinions, so long as the verdict is supported by the evidence." (Dkt. No. 2692-9 at 2.)

lost profits are $113,777,344, which corresponds to 316,989 lost smartphone sales and 42,825 lost tablet sales. (*See* Dkt. No. 2386-2, Davis Rpt. Exhibit 17.2-PT-J.)

Apple has disclosed this lost profits calculation for the ’915 patent to Samsung—in Exhibit PT-J to Ms. Davis’s expert report (Dkt. No. 2386-2, Davis Rpt., Appendix at i), in Apple’s opening demonstratives (slides 33 and 35 as lodged with the Court), and again in trial exhibits revised to reflect the calculations using the date of first infringement as the start of the design-around period (Plaintiff’s Exhibits 25F and 25G). At trial, Ms. Davis will explain her methodology in calculating the amount of Apple’s lost profits, as well as the facts and assumptions underlying her calculation. Samsung’s suggestion that Ms. Davis’s trial testimony will be contrary to the Court’s orders is completely unfounded.[2]

## III. THE JURY MAY AWARD LOST PROFITS DAMAGES ABOVE MS. DAVIS’S CALCULATIONS IF SUPPORTED BY THE EVIDENCE.

The Court’s November 7, 2013 Order limited only ***Ms. Davis’s*** testimony regarding lost profits calculations based on certain assumptions regarding when Samsung would have begun designing around Apple’s patents. (Dkt. No. 2660 at 12.) The Court has not precluded Apple from seeking lost profits on the ’381, ’163, and D’677 patents. Nor should it, as Apple has consistently disclosed ***additional*** evidence and theories that would support a lost profits award for the ’915, ’381, ’163, and D’677 patents. Apple should be permitted to present that evidence to the jury, and the jury is free to accept or reject that calculation or the assumptions on which it relied.[3]

### A. Apple Can Prove That It Would Have Made Additional Sales “But For” Samsung’s Infringement.

With respect to lost profits, Apple expects that—consistent with the instruction from the first trial—the Court will instruct the jury as follows:

---

[2] Given the Court’s November 7, 2013 Order regarding design-around start dates, Ms. Davis will not present lost profits calculations for the ’381, ’163, and D’677 patents at trial. Apple intends to submit an offer of proof identifying Ms. Davis’s excluded theories and testimony to preserve the record for appeal.

[3] To the extent Samsung believes that Apple has not proved any lost profits damages at trial, it may challenge Apple’s damages claim on JMOL after the evidence has been presented—not ***before*** Apple has had the opportunity to present its evidence to the jury.

> To recover lost profits for infringing sales, Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that [Samsung] made of the infringing products. Apple must show that the share of Samsung's sales that it would have made if the infringing products had not been on the market.

(Dkt. No. 1903 at 50, Final Jury Instruction No. 36.) Apple also expects the Court to instruct the jury that "[o]ne way Apple may prove the number of sales it would have made if the infringement had not happened is to prove its share of the relevant market excluding infringing products." (Dkt. No. 1903 at 53, Final Jury Instruction No. 39.)

Even setting aside Ms. Davis's excluded testimony, Apple has disclosed—and can present at trial—ample evidence that would support an award of lost profits under this legal standard. In its interrogatory responses, Apple disclosed: "Apple has lost profits on sales of its products as well as other revenues due to the presence of Samsung's infringement and the competition by Samsung using Apple's intellectual property. These lost profits shall include lost profits due to lost sales of iPhone and iPad products." (Dkt. No. 1384-27, Apple's Supplemental Interrogatory Response No. 8 at 4.) In his expert report, Mr. Musika made clear that his opinion was that Apple was entitled to lost profits damages for the sales "Apple would have made … 'but-for' Samsung's improper use and reliance on one or more identified items of Apple Intellectual Property In Suit." (Dkt. No. 2386-3, Musika Rpt. ¶ 129.) Mr. Musika's calculation, however, "adopt[ed] an even more conservative premise in that it assumes that Samsung would have developed some conceptual design alternative to the asserted intellectual property, returned to the market once such conceptual alternative was designed, tested, manufactured and distributed to sell an equivalent number of units with the redesigned product." (*Id.*) Likewise, Ms. Davis's report disclosed that she would apply the same model as Mr. Musika for calculating lost profits damages. (Dkt. No. 2386-2, Davis Rpt. ¶ 99 (explaining lost profits as "profits lost on sales that would have been made 'but for' the infringement"); *id.* ¶ 101 ("Apple must show that but for the infringement, there is a reasonable probability that it would have made sales that [Samsung] made of the infringing products. Apple must show the share of Samsung's sales that it would have made if the infringing products had not been on the market. One approach used to satisfy this

'but for' test is by meeting four criteria, commonly referred to as the *Panduit* factors.").) These statements can limit the expert's testimony, but they do not preclude all other evidence on the same topic.

Consistent with these prior disclosures, Apple intends to introduce evidence demonstrating its entitlement to lost profits for the '915, '381, '163, and D'677 patents. For example, Apple intends to introduce evidence of demand for the products, demand for the patented features, the number of Samsung's infringing sales, Apple's profits, and market share. From this, the jury can determine an appropriate amount of lost profits damages to compensate Apple for Samsung's infringement. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

**B. Apple Can Also Prove Lost Profits Under The *Panduit* Factors.**

Apart from the over-arching "but for" test, the *Panduit* factors provide a separate way of proving lost profits. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) ("*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 197 USPQ 726 (6th Cir. 1978), articulated a four-factor test that has since been accepted as a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits damages."). Apple accordingly expects the Court to instruct the jury that Apple may recover lost profits if it proves: (1) demand for the patented products; (2) that there were no non-infringing substitutes for the infringing products, or, if there were, the number of sales made by Samsung that Apple would have made despite the availability of non-infringing substitutes[4]; (3) that Apple had the manufacturing and marketing capacity to make the sales for which it claims lost profits; and (4) the amount of profit Apple would have made if Samsung had not infringed. (Dkt. No. 1903 at 51, Final Jury Instruction No.

4 As to the second *Panduit* factor, Samsung mistakenly presumes that the jury must accept Samsung's contention that Samsung would have designed around each of Apple's patents ***before*** the damages period. While Apple will not challenge the assumed design-around start dates at trial in light of the Court's ruling, it is still ***Samsung's*** burden to prove that Samsung would have designed around Apple's patents. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). If the jury rejects Samsung's contention that it would have successfully designed around Apple's patents before the start of the damages period, Apple is entitled to lost profits for the entire damages period. *See State Indus.*, 883 F.2d at 1578.

37.)

Apple has disclosed and intends to present at trial evidence demonstrating each of the *Panduit* factors. For example:

- As disclosed in her expert report and consistent with the Court's November 7, 2013 Order, Ms. Davis intends to testify regarding (among other topics) the number of infringing Samsung sales during the damages period, Apple's profits, demand, capacity, and market share. (Dkt. No. 2486-2 at 4.)
- Phil Schiller, Apple's Senior Vice President of Worldwide Product Marketing, may testify, for example, as to sales figures, demand, competition, and injury caused to Apple. (*Id.* at 5.)
- Tony Blevins, Apple's Vice President of Procurement, may testify regarding Apple's capacity to make additional sales during the damages period. (*Id.* at 4.)
- Apple's technical experts and percipient witnesses may testify regarding the value of Apple's patented inventions and the unlikelihood that Samsung would be able to successfully design around Apple's patents. (*See, e.g.*, *id.* at 6, 7, 9-10.)

From this evidence, a jury could reasonably find that Apple is entitled to lost profits for the '915, '381, '163, and D'677 patents and award an appropriate amount of damages to compensate Apple for those lost profits. Indeed, evidence on these subjects—relating to market share, capacity, and demand—is exactly what the Court already found entitled Apple to lost profits at the first trial. (*See* Dkt. No. 2271 at 14 ("Mr. Musika's opinion reconstructs the market based on market share capacity, and demand, thus demonstrating how many additional sales Apple would likely have made, but for Samsung's infringement. ***This constitutes exactly the type of economic evidence of causation that the Federal Circuit requires in sustaining an award of lost profits.*** Accordingly the Court finds that the record supported a jury award of lost profits." (emphasis added)).)

### C. The Jury May Award Any Amount Of Lost Profits Supported By The Evidence.

Samsung does not dispute that the jury may award any amount of damages supported by

the evidence. (Dkt. No. 2692 at 8 (not disputing that "the jury is free to award more than the amount calculated by Ms. Davis so long as the amount is supported by the evidence"); *see Landes Construction Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987) ("When a jury returns a general verdict for the plaintiff after hearing alternative calculations of damages," the award should be upheld if "there is substantial evidence in the record as to any one calculation to support the award.").) Instead, Samsung contends that Apple should be limited to the damages evidence in Ms. Davis's report. (*See* Dkt. No. 2692 at 8.) However, while under the Court's order ***Ms. Davis's*** testimony must be limited by what was disclosed in her report, that is not the only evidence that ***Apple*** may present to the jury. As discussed above, Apple has consistently disclosed theories and evidence that would support an award of lost profits even without Ms. Davis's excluded testimony. Certainly, Samsung's motion does not point to any disclosure or other basis that limits Apple solely to the evidence included in the report of its damages expert.

In any event, the jury is not bound to replicate Ms. Davis's lost profits calculations; the jury can determine for itself the total amount of lost profits to award based on the evidence. ***In fact, expert testimony is not even required to prove damages***. *See, e.g.*, *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) ("[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather 'may [be] receive[d] … as an aid.'"); *CPG Prods. Corp. v. Pegasus Luggage, Inc.*, 1983 WL 248, at *12, *20 (S.D. Fla. 1983) (20% royalty claim supported exclusively by testimony from a fact witness that there was a 20% difference in the price of the plaintiff's product and the competing product sold by the defendant), *affirmed by CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1010-1011 (Fed. Cir. 1985); *see also Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1357 (Fed. Cir. 2012) (holding that award of lost profits was supported by substantial evidence, including fact testimony from the owner of the plaintiff's company and one of the defendant's witnesses concerning competition between the plaintiff and defendant).

Samsung also contends that Apple cannot argue to the jury that Ms. Davis's lost profits calculations "merely represent a lower limit on damages." (Dkt. No. 2692 at 7.) But the cases cited by Samsung involved experts who actually ***changed*** their theories at trial or where the jury's

damages award was not supported by ***any*** evidence. *See, e.g.*, *IPPV Enterprises, LLC v. Echostar Communications Corp.*, 191 F. Supp. 2d 530, 569 (D. Del. 2002) (expert disclosed a reasonable royalty amount of nearly $8 million before trial, but then testified at trial that damages up to $22 million would be appropriate); *Harris Corp. v. Ericsson, Inc.*, No. 98-cv-2903, 2003 WL 21750710, at *6, *8 (N.D. Tex. July 17, 2003) (remitting the damages after the jury awarded $61 million in damages, which was significantly higher than the $17.5 million that the plaintiff's damages expert testified to, not because of the expert's testimony but because "there was ***no other evidence*** presented at trial that would support" the award (emphasis added)). By contrast, Ms. Davis will testify only to damages theories and calculations that were disclosed in her expert report, as revised by the Court's order. Moreover, the opinion that Ms. Davis's lost profits calculations are "conservative" is not new: Ms. Davis (and Mr. Musika before her) has ***always*** maintained that her calculations rest on "conservative" assumptions—such as the assumption that Samsung's sales would have immediately returned to their pre-infringement levels upon completion of a design-around—and do not represent the upper limit on damages. (*See, e.g.*, Dkt. No. 2386-2, Davis Report ¶¶ 109, 116, 127-129; Olson Decl. Ex. A at 119:22-120:4; Dkt. No. 2386-3, Musika Rpt. ¶ 129 ("All these assumptions are conservative."); Olson Decl. Ex. B at 22:2-21 ("Q. So in your report, you suppose that the same number of consumers would buy a Samsung accused product immediately after – as many consumers would buy it immediately after the design around as prior to the design around, correct? A. Just to make sure the record is clear … the time period that I use was considered to be a minimum time period, not a fixed time period that actually did occur, would occur; and further, the specific point you're mentioning about Samsung's return to the market at exactly the same percentage is a significantly conservative assumption that wouldn't happen in the real world."); *cf. IPPV Enterprises*, 191 F. Supp. 2d at 570 (expert stated at trial "***for the first time*** that []his royalty figure was 'conservative'" (emphasis added)).) Similar testimony at trial would therefore not be "new" or a "shift" in damages theory.

The jury is not bound by these conservative assumptions, and so long as other evidence exists to support a calculation, the jury could award a ***higher*** lost profits award for the '915 patent

and/or award lost profits on the other patents. *See, e.g.*, *Alaska Rent-a-Car, Inc. v. Avis Budget Grp., Inc.*, 709 F.3d 872, 883 (9th Cir. 2013) (affirming jury award of lost profits that was in excess of the amount testified to by the plaintiff's expert), *amended on other grounds by Alaska Rent-a-Car Inc. v. Avis Budget Grp., Inc.*, 2013 WL 4779709 (9th Cir. June 19, 2013); *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (under the "maximum recovery rule," a jury award may be upheld up to the "highest amount of damages that the jury could properly have awarded based on the relevant evidence"; the award "simply must be within the range encompassed by the record as a whole"); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1267 (Fed. Cir. 2013) (affirming jury award as supported by the factual evidence even though district court had precluded the patentee's damages expert from offering a reasonable royalty where the jury reached its verdict by extrapolating from the accused infringer's expert's damages model and applying it to facts elicited by the patentee through cross examination). In fact, Samsung argued to the Court last year that a jury "'is not bound to accept the bottom line provided by any particular damages expert.'" (Dkt. No. 2053 at 16 (quoting *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1002 (9th Cir. 2006)).) The Court accepted that argument and ruled that the jury "was free to evaluate the testimony of both sides' experts in arriving at its award." (Dkt. No. 2271 at 2.) Similarly here, the Court should permit the jury to determine the amount of lost profits based on ***all*** the evidence presented—without limiting the jury to awarding an amount that must be identical to the calculations presented by either side's expert.

## IV. CONCLUSION

For the foregoing reasons, Samsung's motion should be denied.

Dated: November 10, 2013

MORRISON & FOERSTER LLP

By: */s/ Harold J. McElhinny*
HAROLD J. MCELHINNY

Attorneys for Plaintiff
APPLE INC.