UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,                    )<br>                                                                          )<br>                        Plaintiff,                            )<br>         v.                                                         )<br>                                                                          )<br>SAMSUNG ELECTRONICS CO., LTD., a      )<br>Korean corporation; SAMSUNG                       )<br>ELECTRONICS AMERICA, INC., a New York )<br>corporation; SAMSUNG                                    )<br>TELECOMMUNICATIONS AMERICA, LLC, )<br>a Delaware limited liability company,               )<br>                                                                          )<br>                        Defendants.                         )<br>                                                                          ) | Case No.: 11-CV-01846-LHK<br><br>ORDER RE: SAMSUNG'S EMRGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS |

On November 7, 2013, the Court granted Samsung's Motion to Strike the lost profits calculations of Apple's damages expert, Julie Davis, to the extent Davis's calculations relied on an assumption that Samsung would not have begun its efforts to "design around" Apple's patents until Samsung received actual notice of its infringement. ("Nov. 7 Order") ECF No. 2660. The November 7 Order strikes Davis's lost profits calculations for the '381,'163, and D'677 patents. *See* ("Davis Rep.") ECF No. 2386-2 at Exs. 17-PT-H, 17-PT-I. The lost profits calculations for the '915 patent, which is based on appropriate design around period start dates, is the only surviving lost profits calculation. *See id.* Exs. 17-PT-J, 17-PT-K. The decrease in the number of patents eligible for lost profits stems from Davis's own assumptions regarding the length of time it would

1

1  have taken Samsung to design around Apple's utility patents and return to the market with
2  noninfringing products. For the '381 and '163 patents, Davis—in agreement with both Apple's
3  previous damages expert, Terry Musika, and Samsung's damages expert, Michael Wagner—
4  assumed that Samsung would require only one month to design around the patents; Davis and
5  Musika also assumed that Samsung would require eight months to design around the D'677 patent.
6  *See id.* at Ex. 39.3-S. Under Davis's lost profits damages model, shifting the start dates for these
7  design around periods from the dates Samsung received actual notice of infringement to the earlier
8  dates on which Samsung first infringed the '381, '163, and D'677 patents, as required by the
9  Court's November 7 Order, means that the design around periods for the '381, '163, and D'677
10 patents ended well before the dates on which Apple first became eligible for infringement
11 damages. *See id.* Exs. 5; 39.3-S. Because Davis's damages model thus assumes that Samsung
12 would have been back in the market selling noninfringing products before Apple became eligible
13 for lost profits for the '381, '163, and D'677 patents, Davis's damages model concludes that Apple
14 is not entitled to *any* lost profits for these patents. *Id.* Exs. 17-PT-J; 17-PT-K.

15 In spite of the fact that Apple's own damages expert concludes that Apple is not eligible for
16 lost profits for the '381, '163, and D'677 patents, Apple has for the first time declared, less than 48
17 hours before the retrial on damages is set to begin, that it intends to argue for lost profits damages
18 for the '381, '163, and D'677 patents anyway. *See* ECF No. 2697. Recognizing that it can no
19 longer rely on, and indeed must disavow, its own expert to support such an argument, Apple claims
20 that it can prove its entitlement to lost profits through a vague combination of other evidence
21 concerning the number of Samsung's infringing sales, "Apple's profits, demand, capacity [] market
22 share," "competition," "injury," and "the unlikelihood that Samsung would have been able to
23 design around Apple's patents." *Id.* at 5. From this assorted evidence, Apple asserts that the jury in
24 the retrial "could reasonably find that Apple is entitled to lost profits . . . and award an appropriate
25 amount of damages to compensate Apple for those lost profits." *Id.* On November 10, 2013,
26 Samsung moved, in an Emergency Motion to Enforce the Court's April 29, 2013 and November 7,
27 2013 Orders, to preclude Apple from arguing for lost profits for the '381, '163, and D'677 patents

2

Case No.: 11-CV-01846-LHK
ORDER RE: SAMSUNG'S EMRGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS

on the grounds that Apple's alternative lost profits damages theory is new and untimely and that, in any event, Apple cannot satisfy its evidentiary burden to show its entitlement to lost profits under this alternative theory. ECF No. 2692. On November 10, 2013, Apple filed a response, ECF No. 2697, and Samsung replied, ECF No. 2699. To assist the parties with their preparation for the retrial, which would begin on November 12, 2013, the Court, on November 11, 2013, issued an order granting Samsung's motion and informing the parties that the Court would issue a full order shortly. ECF No. 2710. The Court hereby sets forth its reasons for granting Samsung's motion to preclude Apple from arguing for lost profits for the '381, '163, and D'677 patents.

## DISCUSSION

Both Musika and Davis constructed a lost profits damages model based on the factors enumerated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). ("Musika Rep.") ECF No. 2386-3 ¶ 120; Davis Rep. ¶¶ 100-101. To establish that Apple was entitled to lost profits under *Panduit*, Musika and Davis each considered, "(1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) [Apple's] manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit [Apple] would have made." *Panduit*, 575 F.2d at 1156; Musika Rep. ¶¶ 121, 123, 126, 128; Davis Rep. ¶ 102. In relation to *Panduit* factor two, absence of acceptable noninfringing substitutes, both Musika and Davis constructed their damages models under the assumptions that Samsung would design around Apple's patents, return to the market with noninfringing products, and "would achieve similar sales [of these noninfringing products] immediately upon [Samsung's] return." Musika Rep. ¶ 125; *see also* Davis Rep. ¶ 109 ("[T]he lost profits calculation assumes that Samsung would have returned to the market with a designed-around, non-infringing alternative that is just as desirable to consumers as the infringing smartphones and tablets and could do so immediately upon the reintroduction of the product into the market."). Accordingly, both Musika and Davis calculated lost profits only for the periods of time in which Apple was eligible for damages *and* Samsung was assumed to be out of the market while designing around Apple's patents. While both Musika and Davis opined that their lost profits damages models were "conservative," Musika Rep. ¶ 125; Davis

3

Case No.: 11-CV-01846-LHK
ORDER RE: SAMSUNG'S EMRGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS

1 Rep. ¶ 109, neither expert offered any alternative, less "conservative" model or provided any

2 opinion as to how one might construct an alternative model of any sort.

3 The nature of Apple's new, non-expert lost profits theory is not wholly clear, but it appears

4 that Apple now proposes to present a variety of evidence, introduced through multiple witnesses,

5 going to either the individual *Panduit* factors or, perhaps, to a general standard of "but for"

6 causation. *See* ECF No. 2697 at 4-5. From there, Apple expects that the jury will be able to "award

7 an appropriate amount of damages to compensate Apple for [its] lost profits." *Id.* at 5. Apple does

8 not disclose how it intends for the jury to construct its lost profits award.

9 Apple does not contest that lost profits are not available for the '381, '163, and D'677

10 patents under the damages model of either of Apple's damages experts, Musika or Davis. Apple

11 also does not contest that neither Davis nor Musika ever presented Apple's new lost profits theory

12 for the '381, '163, and D'677 patents. Indeed, Apple does not even appear to contest that arguing

13 for lost profits under its new theory requires Apple to affirmatively disavow the methodology and

14 assumptions employed by both Musika and Davis. Instead, Apple argues that it can prove its

15 entitlement to lost profits without relying on its experts at all. ECF No. 2697 at 3. The Court is not

16 convinced.

17 First, although Apple contends that it previously disclosed a general theory of lost profits

18 damages that does not rely on either expert testimony or the *Panduit* factors, Apple did no such

19 thing. Apple's interrogatory responses, which Apple cites in support of its claim of previous

20 disclosure, state only that "Apple has lost profits on sales of its products . . . due to Samsung's

21 infringement and the competition by Samsung using Apple's intellectual property." ECF No. 1384-

22 27 at 4. This statement does not disclose any theory of damages. Likewise, neither Musika nor

23 Davis ever opined that lost profits were available under any methodology other than the four-factor

24 *Panduit* test. Perhaps most tellingly, Apple failed to disclose an alternative theory of lost profits

25 damages in any of its numerous submissions or oral arguments concerning the appropriate design

26 around period start dates, in spite of being well aware that the Court's ruling on that issue could

27 lead to the elimination of lost profits damages calculations for the '381, '163, and D'677 patents

28

4

Case No.: 11-CV-01846-LHK
ORDER RE: SAMSUNG'S EMRGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS

from Davis's Report. *See* ECF Nos. 2407-3; 2535 at 124:12-136:20; 2562 at 144:20-159:25; 2569. Apple's non-expert/non-*Panduit* lost profits theory is entirely new.

To admit a brand new damages theory on the literal eve of trial would be grossly prejudicial to Samsung, which has never had the opportunity to take discovery on or prepare to rebut any lost profits theory other than the one presented in Davis's Report. The Court finds that Apple's failure to timely disclose its new damages theory is reason enough to exclude this theory now.[1] The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 941-42 (9th Cir. 2001) (imposing limits on the parties' presentation of evidence is within "the broad discretion that the district court had to manage the trial"); *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1351 (Fed. Cir. 1991) ("It is improper on appeal to disturb a district court's trial management, absent a clear abuse of judicial discretion."); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) (per curiam) ("A trial court has broad discretionary authority in managing the litigation before it . . . ."); *accord* Fed. R. Evid. 403; Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Accordingly, under Federal Rule of Evidence 403, as well as under the Court's inherent authority, the Court finds that the risk of unfair prejudice to Samsung by admitting Apple's new lost profits theory at this late date is severe. Furthermore, there is a high risk that introducing this new theory, the contours of which remain murky even to the Court, will confuse the issues, mislead the jury, and waste time. These risks

---

[1] The Court further notes that Apple has been an enthusiastic proponent of exclusion based on untimely disclosure. In the 2012 trial, for instance, Apple moved to exclude or objected to exhibits or demonstratives that were not timely disclosed on multiple occasions. *See, e.g.*, ECF No. 939-1 (Apple's Motion to Strike portions of Samsung's expert report due to untimely disclosure); ECF No. 1441 (Apple's objections to Samsung's opening slides because "[n]o exhibits or expert testimony have been disclosed to support the assertions in this slide"); ECF No. 1454 (Apple's objections to exhibits because "Samsung's theories . . . were not timely disclosed in discovery"). The same timeliness obligations apply to Apple.

5
Case No.: 11-CV-01846-LHK
ORDER RE: SAMSUNG'S EMRGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS

substantially outweigh the probative value of Apple's new theory, and thus exclusion is warranted under Rule 403.

What is more, the Court's concerns are not limited to Apple's untimely disclosure and the risks of unfair prejudice, confusing the issues, and wasting time. Apple has still not explained exactly how it expects the retrial jury to calculate lost profits for the '381, '163, and D'677 patents in the absence of concrete guidance as to how to do so. Apple states that its various fact and expert witnesses can provide testimony relevant to lost profits damages. ECF No. 2697 at 4-5. But Apple does not propose to offer the retrial jury an actual lost profits damages figure; rather, Apple intends for the retrial jury to generate "an appropriate amount of damages to compensate Apple for [its] lost profits" on its own. ECF No. 2697 at 5. Apple does not state how it expects the jury to accomplish this task—a task that is particularly difficult in a case such as this, where the issues are complex, the parties are large companies, and the damages evidence is hotly contested. *See Carella v. Starlight Archery & Prod. Line Co.*, 804 F.2d 135, 141 (Fed. Cir. 1986) ("Obviously, the amount of detailed testimony and documentation regarding computations of the patentee's lost profits will vary with the size and complexity of the patentee's company and with the extent to which that information is challenged or contradicted by the infringer."). Nor does Apple offer any proposals by which to ensure that leaving the jury to its own devices to calculate a lost profits award will not result in a damages award that is wildly speculative or based on factors that have no place in a lost profits calculation.

A jury may not award lost profits in a patent case in the absence of "sound economic proof." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). This rule holds true regardless of whether the patentee seeks to prove lost profits using the *Panduit* factors or some other method. *See, e.g.*, *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) ("Without credible economic testimony, this court cannot permit a jury to base its award on speculation."); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F,3d 1538, 1545 (Fed. Cir. 1995) (en banc) ("The *Panduit* test requires that a patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to

6

Case No.: 11-CV-01846-LHK
ORDER RE: SAMSUNG'S EMRGENCY MOTION TO ENFORCE THE COURT'S APRIL 29, 2013 AND NOVEMBER 7, 2013 ORDERS

exploit the demand; and (4) the *amount of the profit it would have made*." (emphasis added)); *Panduit*, 575 F.2d at 1156 (patentee not entitled to lost profits due to failure to offer sufficient proof as to the *amount* of lost profits). In spite of the well-established rule requiring sound economic proof of lost profits, Apple does not explain how the evidence Apple proposes to present in support of its new lost profits theory amounts to sound economic proof of any particular lost profits damages amount. To the contrary, even at this late date, Apple has remained vague as to how it intends for the jury to calculate a concrete lost profits figure. The Court is concerned that Apple's new lost profits theory will invite the jury to come up with a lost profits award founded on little more than pure speculation. This provides a further reason to preclude Apple from seeking lost profits for the '381, '163, and D'677 patents based on this new damages theory.[2]

The Court finds that Apple's failure to disclose this new theory of lost profits damages that is not based on its own damages experts at any point prior to the weekend before the retrial warrants exclusion of this new lost profits theory. The Court's doubts concerning Apple's ability to provide sound economic proof of lost profits damages under its previously undisclosed alternative damages theory reinforces the Court's conclusion that this new theory must be excluded. For these reasons, the Court GRANTS Samsung's Emergency Motion to Enforce the Court's April 29, 2013 and November 7, 2013 Orders.

**IT IS SO ORDERED.**

Dated: November 12, 2013

_____
LUCY H. KOH
United States District Judge

---

[2] The cases Apple cites in support of its contention that the retrial jury need not rely on Davis's Report in awarding lost profits are inapposite. *See* ECF No. 6-8. None of these cases stands for the proposition that a jury may award lost profits in a patent infringement case in the absence of substantial evidence supporting such an award. *See, e.g.*, *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1373 (9th Cir. 1987) ("When a jury returns a general verdict for the plaintiff after hearing alternative calculations of damages, we uphold the award *if there is substantial evidence in the record* as to any one calculation to support the award." (emphasis added) (quoted at ECF No. 2697 at 6)). But inviting the jury to award lost profits in the absence of substantial evidence to support a concrete lost profits award is precisely what Apple proposes to do here. This is foreclosed by Federal Circuit case law requiring sound economic proof of lost profits damages. *See, e.g.*, *Grain Processing*, 185 F.3d at 1350.