HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S OFFER OF PROOF REGARDING EXPECTED TESTIMONY OF JULIE DAVIS REGARDING APPLE'S LOST PROFITS ABSENT THE COURT'S ORDER REGARDING DESIGN-AROUND START DATES**<br><br>Judge: Hon. Lucy H. Koh<br>Place: Courtroom 8, 4th Floor<br>Trial: November 12, 2013 at 9 a.m. |

Apple respectfully submits the following offer of proof regarding what its damages expert, Julie Davis, would have testified to at trial regarding Apple's lost profits absent the Court's Order Regarding Design Around Start Dates. (Dkt. No. 2660.)

As disclosed in her expert report, Ms. Davis's opinion is that Apple would have made additional sales of iPhones and iPads but for Samsung's infringement of Apple's patents. She would testify that Apple has lost profits as a result of Samsung's infringement of the '381, '915, '163, and D'677 patents. One of the theories that Ms. Davis employed to calculate Apple's lost profits was premised on the conservative assumption that Samsung would have started designing around each asserted patent after the last of the following: when the patent had issued, when Samsung began selling infringing products, and when Samsung received notice of the patent and its infringement—which, based on the facts in this case and the Court's March 1 order regarding the notice dates (Dkt. No. 2271 at 18-24), would have meant that Samsung would have started its designing around Apple's patents at the time when Samsung received notice of the patents. The Court has excluded this specific method of calculating lost profits by holding, as a matter of law, that any hypothetical design-around period for lost profits purposes must begin with the date of first infringement. (Dkt. No. 2660 at 12:2-11.) Under the excluded theory, Ms. Davis would have testified to the information stated below:

1. As background, Ms. Davis would have explained the differences between the lost profits "but for" world and the reasonable royalty hypothetical negotiation. In particular, Ms. Davis would have testified that a reasonable royalty analysis asks what agreement the parties would have reached if, assuming infringement of a valid patent, they had negotiated a license at the time of first infringement. The exercise is designed to identify how the infringement would have been avoided via a business solution. By comparison, a lost profits analysis asks what profits the patentee would have made "but for" the infringer's sales—it is a purely economic exercise that requires reconstructing the market during the period that the infringing sales were made.

2. Ms. Davis would have testified that, as a conservative measure of damages, Apple is entitled to lost profits during the period that Samsung would have been out of the market

APPLE'S PROFFER RE: EXPECTED TESTIMONY OF JULIE DAVIS ABSENT ORDER RE: DESIGN-AROUND
Case No. 11-cv-01846-LHK (PSG)
sf-3354925

1

1  designing, testing, manufacturing, and preparing to distribute its theoretical non-infringing
2  smartphones and tablets. (Dkt. No. 2386-2 ¶ 120.) Ms. Davis's theory was that the design-
3  around period would have begun on the latest of the following events: (i) issuance of the asserted
4  patent, (ii) Samsung's first sale of products that infringed that patent, and (iii) Apple's notice to
5  Samsung of its infringement of the specific patent. (Dkt. No. 2386-2 ¶ 120.) Based on the facts
6  of this case and the Court's March 1, 2013 Order regarding the notice dates (Dkt. No. 2271 at 18-
7  24), this method resulted in Ms. Davis determining that Samsung would have started designing
8  around the asserted Apple patents on the date that Samsung received actual notice of infringement
9  of the specific patent. (Dkt. No. 2386-2 ¶ 120.) Specifically, Ms. Davis would have testified that
10 Samsung would have started designing around the '381 patent on August 4, 2010; the '915 and
11 D'677 patents on April 15, 2011; and the '163 patent on June 16, 2011. (Olson Decl. Ex. A
12 PX25D.2; *see* Dkt. No. 2271 at 18-24.)

13     3.  Ms. Davis would have further testified that at the time Samsung had notice of
14 infringement, it was not developing a non-infringing alternative to the asserted patents and there
15 are no facts suggesting that Samsung would have started to design-around the asserted patents
16 until it actually had notice that it infringed them. Mr. Wagner agrees. (*See* Dkt. No. 2570-1 at
17 939:11-16 ("Q. [A]re you aware of any fact that suggests the design-around would have started at
18 the time that you claim it would have started in your report? A. No."); *see also id.* at 794:22-
19 795:1 ("Q. In the real world, it is not possible to design around a patent that a person doesn't
20 know about; correct? A. No, it's not impossible. It's highly unlikely.").)

21     4.  As a conservative measure, Ms. Davis further assumed that Samsung would have
22 returned to the market with a designed-around, non-infringing alternative that was just as
23 desirable to customers as its infringing smartphones and tablets upon completion of the design-
24 around; and further, that the designed-around alternative would have been immediately accepted
25 by consumers. (Dkt. No. 2386-2 ¶ 120.) Ms. Davis would have testified that she made these
26 assumptions as a conservative measure (in favor of Samsung) and that she was not aware of any
27 facts that actually established that Samsung would have started a design-around as soon as it had
28 notice or that it would have returned to the market with a non-infringing alternative that was

APPLE'S PROFFER RE: EXPECTED TESTIMONY OF JULIE DAVIS ABSENT ORDER RE: DESIGN-AROUND
Case No. 11-cv-01846-LHK (PSG)
sf-3354925

2

immediately accepted by consumers. To the contrary, Ms. Davis would have identified evidence that suggested that Samsung would not have returned to the market with such a product, including evidence supporting the high demand for the patented features, the large gains in market share that Samsung enjoyed once it started selling infringing products, and the market realities of the smartphone and tablet market. (Dkt. No. 2386-2 ¶¶ 110, 111, 129.)

5. Based on her conservative assumptions, Ms. Davis would have opined that Apple is entitled to lost profits during the period that Samsung would have been out of the market designing, testing, manufacturing, and preparing to distribute its theoretical non-infringing smartphones and tablets. (Dkt. No. 2386-2 ¶ 120.) Based on her interviews with technical experts and Apple engineers, Ms. Davis conservatively assumed a one-month design-around period for the '381 and '163 patents, a six-month design-around period for the '915 patent, and an eight-month design-around period for the D'677 patent. (Dkt. No. 2386-2 ¶ 120, Exhibit 20-PT.)

6. Ms. Davis would have explained, consistent with *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-1580 (Fed. Cir. 1989), that she adjusted her lost profits calculations to account for the possibility that smartphones and tablets not at issue in the case would be acceptable non-infringing alternatives and to account for Apple's share of the market. (Dkt. No. 2386-2 ¶¶ 121-123, Exhibit 20-PT; Olson Decl. Ex. A.)

7. Based on this analysis, Ms. Davis would have concluded that Apple's lost profits during the damages period amounted to $419,029,253 million for 1.3 million units broken out by product as shown in PX25D. In light of this figure, Ms. Davis' calculation of the remaining damages for Samsung's profits and a reasonable royalty (for the remaining units not accounted for in Apple's lost profits analysis) would have been $168,675,798 and $33,172,781, respectively.

8. In aid of her testimony, Ms. Davis would have used demonstratives and the exhibits attached to the Declaration of Erik J. Olson, filed herewith and summarized below:

- Exhibit A (PX25D) is a summary of Apple's damages calculations prepared by Ms. Davis. It includes, among other things, the total lost profits per Samsung product and for all thirteen Samsung products at issue in the new trial as calculated

APPLE'S PROFFER RE: EXPECTED TESTIMONY OF JULIE DAVIS ABSENT ORDER RE: DESIGN-AROUND
Case No. 11-cv-01846-LHK (PSG)
sf-3354925

3

by Ms. Davis, and a summary of the market share allocations that Ms. Davis would have applied in her lost profits analysis.

- Exhibit B (PX25E) is an addendum to the summary of Apple's damages calculations prepared by Ms. Davis.  It includes, among other things, a detailed summary of the data that Ms. Davis used to calculate Apple's lost profits damages.

Dated: November 14, 2013                    MORRISON & FOERSTER LLP


By: */s/ Harold J. McElhinny*
   HAROLD J. McELHINNY

Attorneys for Plaintiff
APPLE INC.

APPLE'S PROFFER RE: EXPECTED TESTIMONY OF JULIE DAVIS ABSENT ORDER RE: DESIGN-AROUND
Case No. 11-cv-01846-LHK (PSG)
sf-3354925

4