Exhibit B

Highly Confidential - Attorneys' Eyes Only

Page 1

1                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
2                       SAN JOSE DIVISION
3      ------------------------------x
4      APPLE INC., a California
       corporation,
5
                            Plaintiff,
6                                              Case No.
       vs.                                     11-CV-01846-LHK
7
       SAMSUNG ELECTRONICS CO., LTD, a
8      Korean business entity; SAMSUNG
       ELECTRONICS AMERICA, INC., a New
9      York corporation; SAMSUNG
       TELECOMMUNICATIONS AMERICA, LLC,
10     a Delaware limited liability
       company,
11
                            Defendants.
12
       ------------------------------x
13
14          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15             VIDEOTAPED DEPOSITION OF JOHN HAUSER, a
16          witness called by the Defendants, taken
17          pursuant to the applicable provisions of the
18          Federal Rules of Civil Procedure, before James
19          A. Scally, RMR, CRR, a Notary Public in and
20          for the Commonwealth of Massachusetts, at the
21          offices of WilmerHale, 60 State Street,
22          Boston, Massachusetts, on Friday, April 27,
23          2012, commencing at 9:31 a.m.
24          TSG Job # 48803
25

Highly Confidential - Attorneys' Eyes Only

Page 264

1    A.   Okay.  I -- I think it's adequately described in        17:48:58

2    98, paragraph 98 of my report, but I can describe it in      17:49:02

3    more detail.                                                 17:49:07

4        So what we do is we have each individual is              17:49:12

5    described by his or her partworths, and I believe in this    17:49:16

6    case, because I'm not taking a ratio of two normal           17:49:21

7    variants, the mean is perfectly fine.  So we take the mean   17:49:25

8    partworths, and then we have two products, and what I'm      17:49:30

9    asking -- the question is a very interesting question to     17:49:39

10   ask -- is in order for Samsung to maintain its share, if it  17:49:42

11   couldn't use the functionalities that I'm testing, how much  17:49:49

12   would it have to lower its price?  And so then using the     17:49:57

13   partworths from the estimation, I then essentially lower     17:50:02

14   price until I get equal market share.  Again, being          17:50:09

15   conservative.                                                17:50:16

16   Q.   Why do you only use two products?                       17:50:18

17   A.   Well, it's -- you know, if you read some of the --      17:50:22

18   some of the literature, the question is:  What am I trying   17:50:27

19   to do?  I am not trying to estimate a market equilibrium.    17:50:30

20   I am providing data that damages or an economist can use to  17:50:37

21   do the supply side and do other things and try and get to    17:50:43

22   that.                                                        17:50:47

23       So I'm asking a very simple question:  If Samsung        17:50:47

24   were to maintain its market share, holding all else equal,   17:50:51

25   how much would it have to lower its price so that            17:50:55

Highly Confidential - Attorneys' Eyes Only

Page 265

1    consumers, sort of as a whole, would be indifferent between          17:50:59

2    the product with -- with the feature or the product without          17:51:04

3    the feature at a lower price.                                         17:51:09

4           So I'm being very specific that I'm measuring                 17:51:12

5    something that reflects a reaction by the consumers, and             17:51:15

6    I -- it's not a market equilibrium.  It's not meant to be a          17:51:20

7    market equilibrium.                                                   17:51:26

8       Q.   Your results depend on whether the -- whether the           17:51:42

9    questions in your survey were understood by respondents;             17:51:46

10   right?                                                                17:51:48

11      A.   Well, I mean I guess so, yeah.  I've got some                17:51:51

12   evidence that they were, and if the questions were not               17:51:56

13   understood or if they totally misinterpreted them, yes,              17:52:04

14   that would -- that would be a problem.  If they -- if we             17:52:07

15   had a little random error, a little random error wouldn't            17:52:12

16   matter.  It would just make my estimates less precise.  But          17:52:16

17   I don't think there's either random error or systematic              17:52:20

18   error in there, in the surveys.                                      17:52:23

19      Q.   What do you mean, "systematic error"?                        17:52:25

20      A.   Systematic error that would move the partworths in          17:52:27

21   a predictable manner.  A random error would be error that            17:52:31

22   does not move the partworths in a predictable manner.  So            17:52:34

23   it's really a logic, either/or.  Just a definition.  And I           17:52:38

24   don't believe either one is -- is in there.  In the                  17:52:43

25   surveys.                                                             17:52:46

Highly Confidential - Attorneys' Eyes Only

Page  273

1    COMMONWEALTH OF MASSACHUSETTS                    SUFFOLK, SS.

2

3              I, JAMES A. SCALLY, RMR, CRR, a Certified
     Shorthand Reporter and Notary Public duly commissioned and
4    qualified in and for the Commonwealth of Massachusetts, do
     hereby certify that there came before me on the 27th day of
5    April, 2012, at 9:31 a.m., the person hereinbefore named,
     JOHN HAUSER, who provided satisfactory evidence of
6    identification as prescribed by Executive Order 455 (03-13)
     issued by the Governor of the Commonwealth of
7    Massachusetts, was by me duly sworn to testify to the truth
     and nothing but the truth of his knowledge concerning the
8    matters in controversy in this cause; that he was thereupon
     examined upon his oath, and his examination reduced to
9    typewriting under my direction; and that this is a true
     record of the testimony given by the witness to the best of
10   my ability.
                 I further certify that I am neither
11   attorney or counsel for, nor related to or employed by, any
     of the parties to the action in which this deposition is
12   taken, and further, that I am not a relative or employee of
     any attorney or counsel employed by the parties hereto or
13   financially interested in the action.
14   Dated: April 28th, 2012.
15        My Commission Expires:  April 23, 2015
16

17

18                       _____

                         James A. Scally, RMR, CRR
19                       CSR/Notary Public
20

21

22

23

24

25