# EXHIBIT C

Apple v. Samsung
Confidential – Attorneys' Eyes Only

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

| 12 | APPLE INC., a California corporation, | Case No.   11-cv-01846-LHK |
|---|---|---|
| 13 | Plaintiff, | **EXPERT REPORT OF RAVIN BALAKRISHNAN, PH.D. REGARDING INFRINGEMENT OF U.S. PATENT NO. 7,469,381** |
| 14 | v. | |
| 15 | SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | Defendants. | |

20

21       **\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS HIGHLY
           CONFIDENTIAL – ATTORNEYS' EYES ONLY PURSUANT
22                         TO A PROTECTIVE ORDER\*\***

23
24
25
26
27
28

therefore infringe that claim. Because each of these products has a computer readable storage medium, runs the Android software platform, and contains instructions within its source code to display electronic documents as described in Claim 20, they each infringe this claim.

259. I note that the Accused Products (Browser), Accused Products (Contacts), and Accused Products (ThinkFree Office) also infringe this claim, as they contain programs with instructions for performing the methods described above in my discussion of claims 6, 8, and 9.

260. Though my analysis is based on the plain and ordinary meaning of the term "edge of the electronic document," even under Samsung's construction ("a boundary of the electronic document that distinguishes it from another electronic document, other content, or a background area"), each and every element of claim 20 is met by the ordinary and intended use of the aforementioned devices since the edge of the document that is reached, and beyond which is a distinct region, is a "boundary of the electronic document that distinguishes it from . . . a background area."

### Y. Difficulty of Design Around

261. Based on my examination of Samsung's products, it appears that certain early models did not implement the '381 patent's "rubber-banding" feature in certain applications. For example, the Gem lacks this feature in its Browser application, and a user will encounter a "hard stop" if he attempts to continue scrolling an electronic document past its edge. In my opinion, the use of the hard stop effect is an alternative to using the features of the '381 patent, albeit an undesirable one. In many ways, the hard stop is almost indistinguishable from a situation in which the device, and consequently the screen, has frozen, and so the user may not be certain if his device has ceased to be responsive.

262. I understand that Samsung implemented a design around for the '381 patent that replaces the "rubber-banding" effect with a "blue glow" effect. Instead of permitting a user to continue scrolling in a first direction, this design around displays a shaded blue bar in the direction of desired movement to indicate that no further movement in that direction is possible. In my opinion, the use of the "blue glow" effect is an alternative to using the features of the '381 patent, but is not as natural or intuitive as the "rubber-banding" effect. The reason for the

1  appearance of a shaded blue bar while manipulating electronic documents is not likely to be self-
2  evident to a typical user of a smartphone or tablet computer.

3  263.  I understand that a Dutch court enjoined sales of certain Samsung products in
4  August 2011, and that Samsung responded by providing a software update in October 2011 that
5  implemented a blue glow effect.  (*See* APLNDC-Y0000237572-573.)  I also understand that
6  Samsung has represented that a blue glow effect was incorporated into Samsung's devices in the
7  United States on or around September 2011.  (Samsung's Supplemental Response to Apple's
8  Interrogatory No. 16.)  Accordingly, it took Samsung approximately two months to prepare a
9  design around in the Netherlands, and possibly as long as six months from the filing of this
10 lawsuit in April 2011 to prepare the blue glow design around visible in certain Samsung products
11 in the United States.

12 264.  Other design arounds similar to the blue glow effect could include having the
13 device vibrate or play a sound when the user scrolls to an edge of an electronic document, yet
14 these are, like the blue glow effect and the hard stop, less desirable alternatives to the features of
15 the '381 patent.

16 265.  Accordingly, it is my opinion that certain Samsung products implement effects
17 that are alternatives to the '381 patent's rubber-banding effect, but that they are not as natural or
18 intuitive.  Moreover, as I describe in more detail below, many users of Samsung's products
19 appear to have been dissatisfied with the blue glow design around.

20 **Z.     Non-Infringement Contentions**

21 266.  I understand that Samsung provided a response to an interrogatory from Apple
22 relating to Samsung's non-infringement positions.  There, Samsung stated: "Samsung has not
23 directly infringed, induced infringement of, or contributed to infringement of the '381 patent."
24 (Samsung's Second Supplemental Objections and Responses to Apple Inc.'s Second Set of
25 Interrogatories (No. 2).)

26 267.  I reviewed portions of the deposition transcript of one of Samsung's 30(b)(6)
27 witnesses, Ioi Lam, who identified himself as a principal engineer at Samsung
28 Telecommunications America.  Mr. Lam testified as follows:

Q. Did you -- did you implement elastic bounce as you've used that term in the Samsung mobile browser?

A. Yes, I have.

Q. All right. And how did -- how did that work?

A. So if you pull -- if you scroll a page and it goes beyond the page limit, the page will bounce back.

Q. Bounce back when you release your finger?

A. Yes.

(I. Lam 3/8/12 Dep. Tr. 50:20 - 51:6.)

Q. So in doing that optimization and bug fixing, did you use Samsung devices, either prototypes or commercial devices, and operate them using the touch screen to test the performance and to test the performance of the bug fixes or improvements that you made?

A. We use almost always the prototypes.

Q. Okay. Of both the Samsung phone and the Samsung tablet, right?

A. That's correct.

Q. And you did that with respect to tap-to-zoom features?

A. Yes.

Q. And you did that with respect to what you've described as elastic bounce?

A. Yes.

(I. Lam 3/8/12 Dep. Tr. 123:23 – 124:13.)

268.  Based on Mr. Lam's testimony, it appears that Samsung employees used Samsung devices to perform the methods claimed in the '381 patent during testing of the devices.

269.  This is also consistent with my understanding of the "ordinary and intended use" of Samsung's devices, as almost any user of the Samsung products discussed in this report will inevitably perform the methods claimed in the '381 patent while using the Gallery, Contacts, Browser, or ThinkFree Office applications on those devices. As discussed above, any user scrolling through a contacts list, a photo gallery, a web page, or a presentation document would perform the steps of the asserted method claims. As just one example, in a video review of the

1  Samsung Galaxy S 2 posted on the website Engadget, the user of the device performed the rubber
2  banding method claimed in the '381 patent on a photo. (*See* the video under the heading
3  TouchWiz 4.0 located at http://www.engadget.com/2011/04/28/samsung-galaxy-s-ii-review/ at
4  the 5:25 mark.) As another example, in a video review of the Samsung Exhibit 4G phone posted
5  on the website Android Community, the user of the device performed the rubber banding method
6  claimed in the '381 patent on a list. (*See* the video located at
7  http://androidcommunity.com/samsung-exhibit-4g-review-20110722/ at the 3:41 mark.)

8       270.    In addition, user comments on public discussion forums also indicate that users of
9  Samsung's products used the '381 patent's "bounce" feature, noticed its removal in a software
10 update, and expressed frustration with the "blue glow" design around that replaced it. (*See, e.g.*,
11 http://forums.androidcentral.com/t-galaxy-s-ii/142833-2-3-6-browser-overscroll-glow-minor-
12 issues-video.html ("some of us absolutely scroll all the way over to the edge"; "the browser glow
13 after upgrade to 2.3.6. on sg2 is nauseating, especially when I was used to using the bounce")
14 (APLNDC-Y0000233006-019).)

15      271.    Accordingly, it is my opinion that all or virtually all users of the Samsung products
16 discussed in my report would engage in direct infringement of the '381 patent.

17      272.    I also understand that Samsung may raise the same non-infringement positions that
18 it asserted through the declaration of Jeffrey Johnson during the preliminary injunction phase of
19 this litigation. I incorporate by reference my Reply Declaration in Support of Apple's Motion for
20 a Preliminary Injunction (Dkt. No. 278), as well as the accompanying exhibits. Moreover, I
21 reiterate here my opinions that the claims of the '381 patent do not require inhuman precision in
22 the movement of an object on or near a touchscreen display, and that showing a black area on a
23 screen constitutes "displaying" black, even if the color black is displayed using unlit pixels. I
24 reserve the right to respond to the theories that Samsung may present in any non-infringement
25 report.

### AA. Supplementation

267. I reserve the right to supplement this report with new information and/or documents that may be discovered or produced in this case, or to address any new claim constructions offered by Samsung or ordered by the Court.

268. In connection with my anticipated testimony in this action, I may use as exhibits various documents produced in this case that refer or relate to the matters discussed in this report. In addition, I may have demonstrative exhibits prepared to assist in the presentation of my testimony and opinions as set forth or cited in my report.

Dated: March 22, 2012

_____
RAVIN BALAKRISHNAN