**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER |

Samsung moves to strike portions of the November 13, 2013, testimony of Apple Expert Dr. John Hauser. In the alternative, Samsung moves to preclude Apple's Damages Expert Julie Davis in rebuttal and Apple's counsel in closing argument from relying on these opinions of Dr. Hauser. *See* ECF No. 2743. Specifically, Samsung moves to strike or preclude reliance on Dr. Hauser's testimony that but for the infringing features at issue in this damages retrial, many surveyed Samsung consumers would not have bought infringing Samsung phones. *See* ECF No. 2739 ("Tr.") at 548:1-2 ("What I do know is but for these features, there is many of [the survey respondents] that would not buy the Samsung phones"); *id.* at 551:17-18 ("All I know is that but for these features, a lot of these people would not buy the phones at issue in this case."). Samsung

1

moves to strike on the basis that this theory was not timely disclosed in Dr. Hauser's expert report. Apple has filed an opposition. *See* ECF No. 2751. For the reasons stated below, the Court GRANTS Samsung's motion to preclude Apple's reliance on these opinions in closing argument. Samsung's motion to strike Dr. Hauser's testimony is DENIED, and Samsung's motion to preclude Davis from relying on Dr. Hauser's testimony is DENIED as moot.

Under Rule 26 of the Federal Rules of Civil Procedure, an expert must disclose in a report "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 37 creates sanctions for failure to disclose. If a party fails to disclose opinions in an expert report, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).

Dr. Hauser's theory that but for the infringing features, survey respondents would have been less likely to purchase Samsung's infringing phones does not appear in his expert report. In fact, during cross-examination at this retrial, Dr. Hauser admitted that this theory was not in his report. He stated, "[t]here's a high willingness to pay. To my mind, that's the same as market demand. Market demand indicates they'd lose sales. *But I did not make that translation in the report*." Tr. at 554:23-555:2 (emphasis added).

Apple does not contend that Dr. Hauser's "but-for" theory was in his expert report. Rather, Apple suggests that the "but-for" opinion was disclosed because it flows naturally from what was in Dr. Hauser's report. Specifically, Apple states that Dr. Hauser calculated his "willingness to pay" amount by using a market simulation. ECF No. 2751 at 1. This market simulation weighed higher priced products with the patented feature against a lower priced product without the patented feature. *Id.* The price was then lowered on the higher priced product until survey respondents were indifferent (*i.e.*, they were willing to purchase the higher priced product with the patented feature as often as they were willing to purchase the lower priced product without the patented feature), thereby evening out the simulated market share of the infringing and non-

2

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER

infringing products. *Id.* According to Dr. Hauser, this would reveal what consumers were "willing to pay" for the patented feature. *Id.*[1] Apple does not explain in its briefing on the instant motion how this equalizing of the simulated market share between infringing and non-infringing products to determine willingness to pay demonstrates Dr. Hauser's current theory, that, but for the patented feature, Samsung consumers would not have purchased an infringing Samsung phone. More importantly, Apple does not point to where in his report Dr. Hauser made this link.

Dr. Hauser did not testify to this theory at the 2012 trial. In his brief direct examination in the 2012 trial, Dr. Hauser made the link between willingness to pay and demand for the patented feature. He stated that "[t]he results [of his study] reflect that there is substantial demand for the features associated with the patents at issue in this case." ECF No. 1695 at 1916:11-13. Dr. Hauser did not expand on this point in his cross-examination or in his re-direct, nor did he ever state that willingness to pay or demand for the patented product demonstrates that but for the infringing feature, some survey respondents would not have purchased infringing Samsung phones.

Dr. Hauser did mention this theory in a deposition taken after the 2012 trial for the purposes of Apple's motion for a permanent injunction. At that deposition, in response to a question regarding whether it was possible that survey respondents would have stayed with Samsung even if the infringing features had been removed, Dr. Hauser stated: "All I can say is that these consumers are no longer going to purchase the phones at issue in this case . . . [o]r less likely to purchase." ECF No. 2753, Ex. C, at 313. Samsung did not move to strike this testimony.

In the damages retrial, Dr. Hauser took the stand to provide his expert opinion on whether consumers would be willing to pay for the patented features at issue in the case. His direct examination focused narrowly on his expertise, methodology, and conclusion that consumers would be willing to pay for the patented features and that there was substantial demand for features

---

[1] There is no real dispute that this methodology was fully disclosed in Dr. Hauser's report and his depositions. ECF No. 1363, Ex. A, at ¶ 97; ECF No. 2753, Ex. B. Further, Dr. Hauser testified to this methodology during the retrial.

3
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER

enabled by the patents at issue in the case. He did not testify in his direct examination that but for the patented features, survey respondents would not have purchased the Samsung phones.

In an 80-minute cross-examination, Samsung's counsel pressed Dr. Hauser on the limitations of Dr. Hauser's methodology. Specifically, Samsung's counsel aimed to establish that Dr. Hauser's survey had not directly asked respondents whether they would have purchased Samsung phones if the phones did not contain the patented feature:

> Q: Okay. And so now my question is, did you ask the 870 people in front of you who bought these phones, did you ask them whether or not they bought these phones in part because the three accused features here were in the phones, either one or two or three of them? Did you ask these people, did that affect your purchasing decision?
>
> A. Well, as you've indicated, those are additional questions that I could have put in. The questions that I did put in where I had people make choices among the phones with respect to the features varying, and when these features are not there, they're willing to pay less of a price among the choices they're making. But those particular questions you asked, that's another survey. That's not a survey I did.
>
> Q. Well, certainly it would have given you additional information of having these 870 people who were there that bought phones that had the accused features in them, if you asked them, did you know the features were there, did you buy the phones because of this, that would have been a big help in directly answering the question that the jury is going to decide? You would agree with that?
>
> A. Well, I hope, and only the jury can decide whether the study is actually helpful or not. It does tell willingness to pay. It values features.
>
> Q. The question is --
>
> A. There's not additional questions in there.
>
> Q. It's not about what you told them. I'm saying, would it have helped them if you had asked that? Wouldn't it have been useful to the jury if you had 870 people answering the question, did you even know these features were in there and did you buy the phone because of it that? Wouldn't that have given you additional information that would have been very, very useful?
>
> A. You're absolutely right. There's other survey one can do. I could have asked those additional questions. But, remember, some people have -- will indicate, if they don't value the features, they'll put no importance on the features in making the choice. So maybe, you know, it's another survey that one can write. It's not the survey I did.
>
> Q. Are you aware of anyone who was ever asked to do that kind of survey in this case, to ask people directly, why did you buy the phones? Did you know these features were there? And did you buy because of these features? Have you seen anything in what you reviewed where someone has done that?
>
> A. The specific questions? Not that I recall.

> Q. Yeah. And by the way, whether or not you're aware of features could be, in part, depending upon advertising, what kind of investigation you do, et cetera; correct?
>
> A. Awareness can be influenced by a lot of things, yes.
>
> Q. And, for example, these phones have hundreds of features; right?
>
> A. Yes, they do.
>
> Q. And do you think that people are probably discovering features, you know, every day after they buy the phones? Gosh, I didn't know it did that?
>
> A. You're right. These people own these phones for up to two years and chances are they discover a lot of features.
>
> Q. Well, but you don't know what they knew when they bought the phone two years ago, do you? You didn't ask that? You didn't study that?
>
> A. No, I did not study that. I do know they valued the features and that's all I can tell you.
>
> Q. Now, how about did you ask these 870 Samsung customers who had features, these phones with accused features, did you ask them whether or not if those features weren't available, if they would have switched platforms, gone to iOS, given up unique Samsung features, and bought an iPhone? 870 people, did you ask them that?
>
> A. Well, I guess are you asking me -- as you know, as you pointed out, it's already a long survey, so I'm aware I don't want to ask too many questions in the survey. They might wear out. But everybody in my survey purchased a Samsung phone. *What I do know is but for these features, there is many of them that would not buy the Samsung phones.* But I don't know to what phones they're going to switch to. I do understand there's another expert in the case that's going to be testifying, she's going to be using my study in part to determine to what phones they were going to be switching to.
>
> Q. And you're talking about the expert of Ms. Davis who's an accountant?
>
> A. She's the, the damages expert in this case, yes.

At this point, Samsung's counsel did not move to strike the testimony that Samsung now finds objectionable. Rather, Samsung's counsel began discussing unrelated issues such as Davis' qualifications, but came back to the previous line of questioning after fourteen questions:

> Q. And you say they're holding everything else constant. Your survey intentionally didn't test the market to see, you know, whether or not consumers would pick a certain brand?
>
> A. Well, my -- everybody in my sample bought a Samsung phone. And I have nobody in my sample who bought other brands. If I wanted to do a brand switching study, which would be a different study, it would include a much broader sample, a sample of all phones. I would have brand specific constants in the survey. I would have to account for brand differences. It's a different survey.

5

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER

> Q. You haven't tested a market for smartphones or tablets in which consumers choose among various brands of smartphones or tablets, for example, Samsung versus Apple? You did not test that; correct?
>
> A. *All I know is that but for these features, a lot of these people would not buy the phones at issue in this case*.

Tr. 545:2-551:18 (emphasis added). At this point, Samsung's counsel moved to strike Dr. Hauser's testimony as non-responsive, which this Court denied. Counsel continued the line of questioning by asking Dr. Hauser to look at his report:

> Q. Paragraph 96. You wrote, third line from the bottom, "I have not tested a market for smartphones or tablets in which consumers choose among brands of smartphones or tablets (e.g. Samsung versus Apple." That's what you wrote in your report that you created for this case; is that correct?
>
> A. Well, this paragraph -- I'm sorry. This paragraph is describing the market simulations that we did do, and what it's saying is that these particular simulations are among Samsung phones. So I think you've read it a little bit out of context. But you are absolutely right that I have not tried to forecast whether or not people would buy a specific brand. *I just know that they're not going to buy the Samsung phones at issue in this case*. That's all I -- that's really tells me with respect to that question.
>
> Q. By the way, what you just said about not buying Samsung phones, not a word about that in your report. You're just adding that now, isn't it? I mean, look at your report and tell me where it says people aren't going to buy Samsung phones when you don't even know that the customers know these features are in them. Does your report say that anywhere?
>
> A. My report is primarily about willingness to pay. If consumers are willing to pay quite a bit --
>
> Q. No, no. My question is very specific. You know you're required to give your opinions in your report. You know that; right?
>
> A. Yes.
>
> Q. Correct? And an opinion that Samsung customers wouldn't buy the phones out there without these features, that would be an important opinion in this case; right?
>
> A. Willingness to pay is synonymous with market demand.
>
> Q. In fact, you say that --
>
> A. I wrote about willingness to pay.
>
> Q. Do you say that in your report, that willingness to pay is the same as market demand? That would be an important opinion. Is that in your report where you say that?
>
> A. I think that's pretty well understood in the marketing profession.
>
> Q. But you're giving this report to people who are going to talk to a jury and you're supposed to give your professional opinions; correct?

6

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER

Case 5:11-cv-01846-LHK   Document 2776   Filed 11/17/13   Page 7 of 9

> A. Well, okay. I mean, I guess I did not define every term that I use. It's -- willingness to pay really does indicate market demand.
>
> Q. But you didn't put that in your report for us to review; correct?
>
> A. No. The fact that it's a cinnamon -- synonym, not a cinnamon -- a synonym is not in my report, you're correct.
>
> Q. And there's nowhere in your report do you say Samsung would have lost sales? That's an important opinion. It's not in your report; correct?
>
> A. There's a high willingness to pay. To my mind, that's the same as market demand. Market demand indicates they'd lose sales. But I did not make that translation in the report, you're correct.
>
> Q. Well, that jump would be a professional opinion as a professional; correct?
>
> A. It's a professional opinion I hold.
>
> Q. Right. And you're supposed to put your professional opinions, particularly if they're critical to the case, in your report; right?
>
> A. I guess I assume that -- and you're perhaps right. I assume that willingness to pay would be understood as market demand, and that's, you know, kind of a technical -- not a technical term, it's just the way we talk about things. And you're correct, maybe I made that assumption.
>
> Q. Let me talk about the survey you did do.

Tr. 552:21-555:2 (emphasis added). At this point, the Court dismissed the jury for the day.

Samsung did not contemporaneously move to strike Dr. Hauser's testimony on the basis that his new theory exceeded the scope of his expert report. Rather, that objection was made the next day. At that point, Dr. Hauser was still on the stand. Apple contends that the motion was untimely because it was not contemporaneously made. The Court disagrees. The Court finds that the motion to strike was timely because Samsung moved to strike before Dr. Hauser had been excused and before his re-direct had commenced. Mueller & Kirkpatrick, Federal Evidence § 1:7 (3d ed. 2012) (citing *Pregeant v. Pan American World Airways, Inc.*, 762 F.2d 1245, 1248 (5th Cir. 1985) ("[A] motion to strike is timely if made immediately following the answer, and should be

7
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER

considered timely if made before the witness leaves the stand, or while he may still be recalled to testify.").[2]

The Court, however, finds that striking the testimony would not be an appropriate sanction for the untimely failure to disclose because Samsung failed to contemporaneously object and because Dr. Hauser gave his "but-for" opinion as a result of Samsung's deliberate, repeated questioning on the same point. Specifically, Samsung's counsel asked a similar question, whether Dr. Hauser had asked survey respondents whether they would have purchased Samsung phones if the phones did not contain the infringing features, and Dr. Hauser repeatedly answered in the negative. Samsung's counsel continued pushing the same question. Under such circumstances, it should have been unsurprising to Samsung that Dr. Hauser would give the "but-for" opinion because he gave this precise opinion at his deposition in November 2012, and Samsung did not move to strike that deposition testimony.

Moreover, Samsung's delay in objecting until the following day means that the Court would have to re-raise and thus highlight Dr. Hauser's "but-for" opinion in order to instruct the jury to disregard it. Drawing further attention to the "but-for" opinion would not aid in addressing Samsung's concerns and may have the opposite effect.

Nevertheless, the Court finds that it would confer an unfair windfall to allow Apple to use Dr. Hauser's "but-for" theory in closing argument. This theory was indisputably not in Dr. Hauser's expert report, nor did Dr. Hauser testify to it at the 2012 trial. In addition, at no point did Dr. Hauser supplement his report to disclose this theory. While the Court finds that it would be inappropriate to belatedly strike the testimony for the reasons stated above, the Court finds that the

---

[2] Samsung has also requested to strike Dr. Hauser's testimony that the patented features affected Samsung's market share. ECF No. 2743 at 2. Yet, this issue was not raised either when Dr. Hauser was on the stand or in counsel's oral motion that gave rise to the instant briefing. The Court therefore finds that Samsung has forfeited this argument. Nevertheless, the Court notes that on cross-examination Dr. Hauser principally discussed "market share" in explaining his methodology of equilibrating the prices between infringing and non-infringing products to determine willingness to pay, as discussed above. Tr. at 543:6-11. Dr. Hauser's only testimony about actual market share was his passing mention that willingness to pay is "going to affect demand and demand is part of what goes into market share." Tr. 544:19-20. The Court denies Samsung's request to strike this vague, passing reference.

"appropriate sanction[]" under Rule 37(c)(1)(C) for this failure to disclose is to preclude Apple from relying on the "but-for" theory in its closing argument. Moreover, Apple did not intend to rely on this theory in the retrial. Specifically, Apple's Damages Expert Davis did not have this theory in her report. Apple's counsel also stated on the record that Davis would not rely on this theory in her testimony. ECF No. 2753, Ex. D, at 4 (The Court: "With regard to [the "but-for" opinion], I won't strike the testimony, but Ms. Davis is not going to rely on . . . ." Apple Counsel: "She will not rely on that specific point, your honor."). This concession moots Samsung's motion to preclude Davis' reliance on Dr. Hauser's "but-for" theory and demonstrates that Apple will not be unduly prejudiced if this Court precludes the use of the "but-for" theory in its closing argument.

For the reasons stated above, the Court GRANTS Samsung's motion to preclude Apple's reliance on these opinions in closing argument. Samsung's motion to strike Dr. Hauser's testimony is DENIED, and Samsung's motion to preclude Davis from relying on Dr. Hauser's testimony is DENIED as moot.

**IT IS SO ORDERED.**

Dated: November 17, 2013

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

9
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART SAMSUNG'S MOTION TO STRIKE AND TO PRECLUDE APPLE FROM RELYING ON CERTAIN OPINIONS OF DR. HAUSER