QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean business entity; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

Defendants.

CASE NO. 11-cv-01846-LHK (PSG)

**PUBLIC REDACTED**

**SAMSUNG'S BRIEF REGARDING
ATTORNEY-CLIENT PRIVILEGE AND
WORK-PRODUCT PROTECTION IN
RESPONSE TO ORDER OF NOVEMBER
8, 2013**

**Place**:  Courtroom 5, 4th Floor
**Judge**:  Hon. Paul S. Grewal

02198.51855/5624464.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

I.   SAMSUNG'S ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE,
     MEDIATION PRIVILEGE AND WORK-PRODUCT PROTECTION SHOULD
     BE UPHELD ............................................................................................................... 3

     A.   Each Document At Issue Is Privileged Or Protected ................................. 3

          1.   Document 6 Is Privileged and Work Product .................................. 4

          2.   Documents 19 and 20 Are Privileged and Work Product ............... 5

          3.   Documents 87 and 90 Are Privileged and Work Product ............... 5

          4.   Document 215 Is Privileged and Work Product .............................. 6

          5.   Document 222 Is Privileged and Work Product .............................. 6

          6.   Document 255 Is Privileged and Work Product .............................. 7

          7.   Document 261.55 Is Privileged, Work Product and Subject To the
               Mediation Privilege .......................................................................... 7

          8.   Document 272 Is Privileged and Work Product .............................. 8

          9.   Document 274 Is Privileged and Work Product .............................. 9

     B.   Samsung's Communications Were Transmitted Because of Litigation, Not
          for a "Business" Purpose .......................................................................... 9

          1.   Attorney-Client Privilege ............................................................... 10

          2.   Work-Product Protection ................................................................ 11

II.  THE CRIME-FRAUD EXCEPTION DOES NOT APPLY TO ANY  OF
     SAMSUNG'S PRIVILEGED AND/OR PROTECTED DOCUMENTS .......................... 12

     A.   Crime-Fraud Requires Intentional, Fraudulent Conduct Not Present Here ........... 12

     B.   None of the Documents At Issue Supports the Crime-Fraud Exception ................ 13

          1.   Document 6 Shows No Intentional Use ........................................ 13

          2.   Documents 19 and 20 Show No Intentional Use .......................... 13

          3.   Documents 87 and 90 Show No Intentional Use .......................... 14

02198.51855/5624464.1

-i-

**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN
RESPONSE TO ORDER OF NOVEMBER 8, 2013**

4.    Document 215 Shows No Intentional Use ................................................. 14

5.    Document 222 Shows No Intentional Use ................................................. 14

6.    Document 255 Shows No Intentional Use ................................................. 14

7.    Document 261.55 Shows No Intentional Use ............................................ 15

8.    Document 272 Shows No Intentional Use ................................................. 15

9.    Document 274 Shows No Intentional Use ................................................. 15

CONCLUSION ......................................................................................................... 15

02198.51855/5624464.1

-ii-

**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN RESPONSE TO ORDER OF NOVEMBER 8, 2013**

1

## TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4
*AT&T Corp. v. Microsoft Corp.*,
2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) ...........................................................................7

5

*Am. Optical Corp. v. Medtronic, Inc.*,
6      56 F.R.D. 426 (D. Mass. 1972) ...................................................................................................7

7
*Burlingame v. Cty. of Calaveras*,
2007 WL 2317301 (E.D. Cal. Aug. 7, 2007) ............................................................................11
8

9
*In re CV Therapeutics, Inc. Sec. Litig.*,
2006 WL 1699536 (N.D. Cal. June 16, 2006) ...............................................................5, 6, 10

10
*Matter of Fischel*,
557 F.2d 209 (9th Cir. 1977)......................................................................................................10
11

*Folb v. Motion Picture Industry Pension & Health Plans*,
12      16 F. Supp. 2d 1164 (C.D. Cal. 1998) .....................................................................................4, 8

13
*In re Grand Jury Investigation*,
231 Fed. Appx. 692 (9th Cir. May 10, 2007)............................................................................12
14

15
*In re Grand Jury Investigation*,
974 F.2d 1068 (9th Cir. 1992) ...........................................................................................4-9, 12

16
*In re Grand Jury Subpoena*,
357 F.3d 900 (9th Cir. 2004)............................................................................................4, 6, 8-10
17

18
*Hanson v. Wells Fargo Home Mortg., Inc.*,
2013 WL 5674997 (W.D. Wash. Oct. 17, 2013) .......................................................................5

19
*McCaugherty v. Siffermann*,
132 F.R.D. 234 (N.D. Cal. 1990) ...............................................................................................9
20

21
*McCook Metals LLC v. Alcoa Inc.*,
192 F.R.D. 242 (N.D. Ill. 2000) ................................................................................................12

22
*Microsoft Corp. v. Suncrest Enter.*,
2006 WL 929257 (N.D. Cal. Jan. 6, 2006) ................................................................................4
23

24
*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ...................................................................................................................12

25
*In re Napster, Inc. Copyright Litig.*,
479 F.3d 1078 (9th Cir. 2007) ...................................................................................................12
26

27
*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
337 F. Supp. 2d 862 (N.D. Tex. 2004) .......................................................................................13

28

**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN
RESPONSE TO ORDER OF NOVEMBER 8, 2013**

*Potter v. United States,*
    2002 WL 31409613 (S.D. Cal. July 26, 2002)..................................................11

*SightSound Techs., LLC v. Apple, Inc.,*
    2013 WL 2405232 (W.D. Pa. Mar. 26, 2013)..................................................10

*U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC,*
    268 F.R.D. 614 (N.D. Cal. 2010) ........................................................................6

*United States v. Abrahams,*
    905 F.2d 1276 (9th Cir. 1990)...........................................................................10

*United States v. ChevronTexaco Corp.,*
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) .........................................................4, 5, 8

*United States v. Martin,*
    278 F.3d 988 (9th Cir. 2002)...............................................................................10

*Willnerd v. Sybase, Inc.,*
    2010 WL 5391270 (D. Idaho Dec. 22, 2010)..................................................8, 11

*Wixon v. Wyndham Resort Dev. Corp.,*
    2009 WL 3075649 (N.D. Cal. Sept. 21, 2009).....................................................5

### <u>Statutes</u>

Federal Rule of Civil Procedure 26(b)(3) ........................................................................4

**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN
RESPONSE TO ORDER OF NOVEMBER 8, 2013**

## Preliminary Statement

Samsung respectfully submits this brief in response to the Court's invitation in its November 8, 2013 Order to Show Cause, Dkt. 2689 (the "OSC"), "to demonstrate with specificity" how the documents cited by the Court in footnotes 10-15 of the OSC "fall under the protection of either the attorney-client privilege or the work-product doctrine." OSC at 4 n.16.

Each of the documents the Court has enumerated is protected by the attorney-client and/or mediation privilege and/or the work-product doctrine. Each is a confidential communication between or among Samsung's counsel and employees related to ongoing litigation between Samsung and various third parties that reflects either the transmission of legal advice or a request for or provision of legal assistance, or attorney work-product in anticipation of or in the course of litigation. While the Court expressed concern that these communications might have been motivated by "a simple business purpose," *id.*, the declarations submitted herewith make clear the context in which these communications were made, and when the Court reviews those declarations in context it will be clear that every one of the communications served legal and not business purposes. And even if the communications did serve business purposes in part (which they do not), the governing Ninth Circuit standard plainly protects as privileged documents that have dual business and legal purposes where they are prepared or obtained ***because of*** the prospect of litigation. The documents here are protected from disclosure under this standard because they were indisputably prepared because of litigation and would not have been generated otherwise.

Nor is there any basis to apply the crime-fraud exception to abrogate the privilege here. As the declarations submitted herewith make clear, Samsung transmitted the Teece report with the inadvertently unredacted licensing terms solely for purposes ***other than*** intentionally disclosing Apple's confidential information, such as to keep Samsung's attorneys in various other FRAND-related litigations around the world apprised of Samsung's positions in this case, and without knowledge that any confidential information was being disclosed. Moreover, as the declarations further show, where alleged confidential license information was referenced in Samsung's privileged communications, Samsung had obtained that information from sources other than the Teece report, including from Ericsson and Apple themselves in the course of other legal

1   proceedings.  There is thus no evidence of any intent to use the privileged communications to

2   further a willful violation of the Protective Order, as would be required to invoke crime-fraud.

3   Samsung's assertions of privilege and work-product protection should be upheld.

4   **<u>Factual Background</u>**

5       In footnote 16 of the OSC, the Court questioned Samsung's assertions of privilege or

6   work-product protection as to the following documents enumerated in footnotes 10-15:

7       1.   **Document 6** is an email dated May 1, 2012 from Samsung outside counsel Helen

8   Hopson from the Bristows firm in London to Samsung outside counsel Laetitia Benard of Allen &

9   Overy in Paris, copying a number of Samsung outside counsel and employees, concerning

10  ████████████████████████████████████ *See* Helen Hopson Decl., ¶ 5;

11  Laetitia Benard Decl., ¶ 4.

12      2.   **Document 19** is a chain of three emails dated December 21 and 22, 2012 among

13  Quinn Emanuel attorneys Tom Pease and Alex Baxter, former Quinn Emanuel attorney Guy

14  Eddon, and Samsung attorney Daniel Shim, concerning Mr. Shim's request for a copy of the

15  Teece report ███████████████████ *See* Thomas Pease Decl., ¶ 3; Alex Baxter Decl.,

16  ¶ 4; Daniel Shim Decl., ¶ 4.  In the last email in the chain, Mr. Eddon sends a copy of the

17  incompletely-redacted Teece report to Mr. Shim.  **Document 20** includes three internal Quinn

18  Emanuel emails dated December 22, 2012, and a January 4, 2013 email from Mr. Eddon to Mr.

19  Shim in which a further redacted version of the Teece report was attached.  *See id.*

20      3.   **Document 87** is an email chain dated February 25, 2013 between Samsung

21  attorney Eric Cha and Samsung VP James Kwak discussing ████████████████████

22  ████████ relating to legal disputes between Samsung and Ericsson.  *See* Eric Cha Decl., ¶¶ 13-16.

23  **Document 90** is an email exchange the same day in which Samsung's outside counsel in its

24  Ericsson litigations, David Higer of Kirkland & Ellis, provides ████████████████ to

25  Mr. Cha, which Mr. Cha then forwards to Samsung attorneys and licensing personnel along with

26  Mr. Cha's own comments on ████████████.  *See id.* ¶¶ 4-12; Jennifer Selendy Decl., ¶ 14.

27      4.   **Document 215** contains three emails from March 25 and 27, 2012 in which the

28  incompletely-redacted Teece report was transmitted first by Quinn Emanuel attorney Todd Briggs

1    to Samsung via an ftp site, second by Samsung attorney Hojin Chang to Samsung engineer Yong

2    Ku Park via the ftp site, and finally by Mr. Chang to Mr. Park and Samsung employee Heung Ju

3    Kwon as attached in a pdf document.  *See* Todd Briggs Decl., ¶ 13; Hojin Chang Decl., ¶¶ 7-9.

4         5.    **Document 222** includes a chain of emails dated between February 23 and June 29,

5    2012 between and among various Samsung outside counsel and Samsung employees concerning ▮

6    ███████████████████ in its litigation against Samsung in the Netherlands ████████

7    ████████████████████  *See* Shim Decl., ¶ 5; Seongwoo Kim Decl., ¶ 3; Bas

8    Berghuis Van Woortman Decl., ¶ 7.

9         6.    **Document 255** is an email dated July 4, 2013 from Samsung attorney Indong Kang

10   to Samsung employee Jeheon Han attaching materials about ██████████████████

11   ██████████████  *See* Indong Kang Decl., ¶ 3.

12        7.    **Document 261.55** is a ███████████████████

13   ████████████████ prepared by Samsung employee Jun Won Lee with the

14   input of Samsung's counsel.  *See* Jun Won Lee Decl., ¶¶ 2-7.

15        8.    **Document 272** is a chain of emails between May 10 and 13, 2013 sent by

16   Samsung's outside counsel from Kirkland & Ellis, Jennifer Selendy, Samsung employee

17   Hyucksun Kwon and Samsung attorney Daniel Shim ████████████████████

18   ██ in Samsung's litigations against Ericsson.  *See* Shim Decl., ¶ 6; Selendy Decl., ¶ 17;

19   Hyucksun Kwon Decl., ¶ 4.

20        9.    **Document 274** is an email exchange dated May 29, 2012 between Samsung

21   attorneys Indong Kang, Michael Kang and others attaching a draft mediation statement relating to

22   mediation between Samsung and Ericsson.  Indong Kang Decl., ¶ 9; Michael Kang Decl., ¶¶ 3-8.

<u>**Argument**</u>

I.   <u>**SAMSUNG'S ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE, MEDIATION**</u>

<u>**PRIVILEGE AND WORK-PRODUCT PROTECTION SHOULD BE UPHELD**</u>

A.   <u>**Each Document At Issue Is Privileged Or Protected**</u>

The attorney-client privilege "protects confidential disclosures made by a client to an

attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such

-3-

1  disclosures." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (quotations and

2  citation omitted).  "Communications between a client and its outside counsel are *presumed* to be

3  made for the purpose of obtaining legal advice."  *United States v. ChevronTexaco Corp.*, 241 F.

4  Supp. 2d 1065, 1073 (N.D. Cal. 2002) (emphasis added).

5      The work-product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects

6  "from discovery documents and tangible things prepared by a party or his representative in

7  anticipation of litigation."  *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004).  "As

8  stated in Rule 26, the doctrine extends not only to work by the attorney but also to litigation

9  preparation work by the party or its representatives."  *ChevronTexaco*, 241 F. Supp. 2d at 1081.

10      The mediation privilege protects "communications to the mediator and communications

11  between parties during [a] mediation."  *Folb v. Motion Picture Industry Pension & Health Plans*,

12  16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998); *see Microsoft Corp. v. Suncrest Enter.*, 2006 WL

13  929257, at *2 (N.D. Cal. Jan. 6, 2006) ("'communications in preparation for and during the course

14  of a mediation with a neutral'" are protected" (quoting *id.*)).

15      For the reasons discussed below, and as explained in more detail in the accompanying

16  declarations that provide the context and significance of each document at issue, there can be no

17  question here that Samsung is justified in asserting privilege and/or work-product protection from

18  disclosure as to each of these documents.

19          **1.      Document 6 Is Privileged and Work Product**

20      The senders and recipients of the emails in document 6 were all Samsung outside or in-

21  house counsel or employees who were involved in the conduct of Samsung's litigations against

22  Apple.  As the Hopson declaration makes clear, the purpose of the email exchange in document 6

23  was to provide the Bristows firm's legal advice regarding ██████████████████████

24  Samsung's counsel in its French litigation against Apple.  *See* Hopson Decl., ¶¶ 5-6, 9-10.  Ms.

25  Hopson's and Ms. Benard's emails concern requests for and provisions of legal advice and

26  assistance and reflect the mental impressions of litigation counsel.  *Id.*

27      The attachments to Ms. Hopson's emails are likewise subject to privilege and work-

28  product protection.  *Id.*  These attachments included a chart setting forth Ms. Hopson's firm's

-4-

1  opinions on the legal issues raised by Ms. Benard's request for legal assistance, and

2  correspondence between Ms. Hopson and Thomas Ulrich, a consulting expert for Samsung,

3  concerning Ms. Benard's request for assistance.  Hopson Decl., ¶ 6.  Because the emails and

4  attachments in document 6 reflect the confidential provision of legal advice and assistance relating

5  to the preparation of a legal document in an ongoing legal proceeding between Samsung and

6  Apple, they are subject to the attorney-client privilege and work-product protections.  *See, e.g.,*

7  *Grand Jury Investigation*, 974 F.2d at 1070; *ChevronTexaco*, 241 F. Supp. 2d at 1073

8  (communications with outside counsel presumptively privileged); *Hanson v. Wells Fargo Home*

9  *Mortg., Inc.*, 2013 WL 5674997, at *4 (W.D. Wash. Oct. 17, 2013) (work-product applies to

10  "documents . . . gathered and used by [counsel] in the course of preparing the declaration").

### 2.  Documents 19 and 20 Are Privileged and Work Product

12  The emails in documents 19 and 20 relate to Samsung in house attorney Daniel Shim's

13  request for legal assistance with respect to a pending litigation in which Samsung was a party and

14  in which the opposing party was taking affirmative positions based, in part, on opinions Dr. Teece

15  had allegedly expressed in this lawsuit.  *See* Shim Decl., ¶ 4.  The email exchanges in documents

16  19 and 20 were confidential communications prepared in the course of Quinn Emanuel's

17  representation of Samsung and reflect a request for and provision of legal assistance to Samsung

18  in responding to allegations in an ongoing litigation.  *Id.*  These emails are therefore subject to the

19  attorney-client privilege and work-product protection.  *See, e.g., In re CV Therapeutics, Inc. Sec.*

20  *Litig.*, 2006 WL 1699536, at *4-5 (N.D. Cal. June 16, 2006) (upholding privilege over documents

21  made "in connection with the giving or obtaining of legal advice" and "animated by the need for

22  such advice"); *Wixon v. Wyndham Resort Dev. Corp.*, 2009 WL 3075649, at *5 (N.D. Cal. Sept.

23  21, 2009) (documents created "specifically to address allegations in [] litigation" are, by

24  definition, "created because of the litigation," and thus entitled to work product protection even if

25  they do "not reflect counsel's mental impressions or legal theories on their face").

### 3.  Documents 87 and 90 Are Privileged and Work Product

27  In the email exchange in document 87, Samsung VP Kwak requests, and Samsung in-

28  house attorney Cha provides, legal analysis regarding ██████████████

1 ███ including Mr. Cha's impressions of ██████ and his legal advice regarding ██

2 ██████████████████████████████ *See* Cha Decl., ¶ 14.  Document 90

3 likewise contains legal analysis and Samsung's attorneys' mental impressions regarding ███

4 █████ *Id.* ¶¶ 5-9.  These attorney-client communications reflecting the provision of legal

5 advice and containing Samsung's attorney's impressions regarding legal developments in ongoing

6 litigations are both privileged and protected work product.  *See, e.g., Grand Jury Investigation,*

7 974 F.2d at 1070; *Grand Jury Subpoena,* 357 F.3d at 906.

8 **4.    Document 215 Is Privileged and Work Product**

9 The emails in the chain contained in document 215 are confidential communications

10 between or among Samsung attorneys and Samsung employees concerning one or more

11 documents generated or produced in the course of litigation between Samsung and Apple, and

12 further contain Samsung attorney Mr. Chang's mental impressions regarding a document

13 generated in the course of litigation.  *See* Chang Decl., ¶¶ 7-10; Briggs Decl., ¶¶ 2-14.  These

14 emails were generated solely in connection with litigation and were transmitted for the purpose of

15 assisting Samsung's attorneys in providing legal advice regarding the Apple litigations, including

16 █████████████████████████████████ *Id.*  These

17 emails are therefore protected by both attorney-client privilege and work-product doctrine.  *See,*

18 *e.g., U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC,* 268 F.R.D. 614, 626 (N.D. Cal.

19 2010) (a document "clearly created because of the pending litigation" is protected by work

20 product); *CV Therapeutics,* 2006 WL 1699536 at *4-5; *Grand Jury Subpoena,* 357 F.3d at 906.

21 **5.    Document 222 Is Privileged and Work Product**

22 The final three emails in document 222 are internal Samsung communications between

23 Samsung attorney Mr. Shim and Samsung Director Seongwoo "Clayton" Kim, who Mr. Shim

24 considered to be his client for purposes of this communication, concerning ████████

25 ██████████████████ in the Netherlands litigation, as well as Mr.

26 Shim's mental impressions regarding ███████████ Shim Decl., ¶ 5; Van Woortman

27 Decl., ¶ 7.  The purpose of this email exchange was the provision of legal advice and assistance in

28 connection with the Netherlands litigation following the Dutch court's June 20, 2012 issuance of a

1  favorable decision for Samsung regarding the SEPs in suit.  *Id*; Kim Decl., ¶¶ 3-6.  Because these

2  emails reflect the provision of legal advice and assistance relating to ████████████ in an

3  ongoing litigation between Apple and Samsung, and were confidential communications between

4  Samsung attorneys and their clients relating to the provision of legal advice and assistance and

5  containing attorney mental impressions, they are privileged and protected work product.  *See, e.g.*,

6  *Grand Jury Investigation*, 974 F.2d at 1070; *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614,

7  at *5 (N.D. Cal. Apr. 18, 2003) (upholding work-product protection over technical documents that

8  "contain[ed] some formal analysis reasonably connected to the litigation or imminent threat of

9  litigation").

10  ### 6.      Document 255 Is Privileged and Work Product

11      The email and attachments in document 255 contain and reflect legal advice and assistance

12  related to Samsung's negotiations with Nokia, including ██████████████████

13  ████████████████████████████████ reflecting

14  legal advice regarding ██████████████████████

15  ████████████  *See* Indong Kang Decl., ¶¶ 4-6.  The email and attachments were

16  sent in furtherance of Mr. Kang's provision of legal advice and assistance to his superiors,

17  Executive Vice President Dr. Seungho Ahn and VP Kwak.  The primary purpose of this email and

18  the work product reflected in its attachments was the provision of legal advice and assistance.  *Id.*

19  This email is therefore protected by the attorney-client privilege and work-product doctrines.  *See*,

20  *e.g.*, *Grand Jury Investigation*, 974 F.2d at 1070; *Am. Optical Corp. v. Medtronic, Inc.*, 56 F.R.D.

21  426, 430-31 (D. Mass. 1972) (applying work-product protection to "documents . . . written when

22  litigation was certainly a contingency" and the defendant had to consider "whether it should risk

23  litigation or accept a license."); *AT&T Corp.*, 2003 WL 21212614 at *5.

24  ### 7.      Document 261.55 Is Privileged, Work Product and Subject To the

25  ### Mediation Privilege

26      Document 261.55 was created at the direction of counsel for Samsung and with the input

27  of Samsung's in-house and outside counsel to apprise others at Samsung of ██████████

28  ████ and to facilitate internal discussions and strategic legal decision-making regarding ████

-7-

1   ██████████████████████████████████ *See* Lee Decl., ¶¶ 5-10.  The

2 document is therefore subject to the attorney-client privilege and is protected work product.  *See*,

3 *e.g.*, *Grand Jury Investigation*, 974 F.2d at 1070; *ChevronTexaco*, 241 F. Supp. 2d at 1081 ("As

4 stated in Rule 26, the doctrine extends not only to work by the attorney but also to litigation

5 preparation work by the party or its representatives.").  The document further reflects statements

6 made and positions taken by counsel for Samsung at the mediation, and therefore is independently

7 protected from disclosure by the mediation privilege.  *See Folb*, 16 F. Supp. 2d at 1180.

8           **8.**    **Document 272 Is Privileged and Work Product**

9       Each email in document 272 is subject to the attorney-client privilege.  In the first email,

10 Samsung's outside counsel in its litigations with Ericsson, Kirkland partner Jennifer Selendy, sent

11 an email to Samsung attorney Jay Shim to provide legal advice and request assistance for the

12 purpose of providing legal advice with respect to ████████████████████████ for

13 use in Samsung's litigations against Ericsson, and to share her mental impressions regarding those

14 litigations.  *See* Selendy Decl., ¶¶ 6, 17, 20.  In the second email, Samsung senior engineer

15 Hyucksun Kwon, who reported to Jay Shim and who worked directly with Kirkland & Ellis on the

16 Ericsson litigation, sent an email to Samsung attorney Daniel Shim to request legal advice

17 regarding ██████████████████ that was referenced in Ms. Selendy's original

18 email.  *See* Shim Decl., ¶ 6; Kwon Decl., ¶¶ 2-6.  In the third email, Mr. Shim forwards the chain

19 to Quinn Emanuel, conveying Mr. Kwon's question and requesting legal advice and assistance in

20 providing a response.  Mr. Shim attached certain documents to his email including the

21 incompletely-redacted Teece Report.

22       All communications in document 272 were confidential communications between

23 Samsung attorneys and clients made in the course of litigation and for the purpose of providing

24 and obtaining legal advice and assistance, and further reflect Samsung's attorneys' mental

25 impressions regarding legal issues.  Shim Decl., ¶ 6; Kwon Decl.,¶¶ 5-6; Selendy Decl., ¶¶ 6, 17,

26 20.  These emails are therefore privileged and protected work product.  *See, e.g.*, *Grand Jury*

27 *Investigation*, 974 F.2d at 1070; *Willnerd v. Sybase, Inc.*, 2010 WL 5391270, at *3 (D. Idaho Dec.

28 22, 2010) (email protected from disclosure by attorney-client privilege because it was "drafted for

1   the purpose of facilitating legal representation"); *Grand Jury Subpoena*, 357 F.3d at 906.

2                    **9.    Document 274 Is Privileged and Work Product**

3           In the first email in document 274, Samsung attorney Indong Kang forwards a draft

4   mediation statement relating to legal disputes between Samsung and Ericsson to Samsung in-

5   house attorney Michael Kang, who then forwards the statement to various Samsung outside

6   counsel in Europe, with copies to Samsung in-house attorneys and engineers. *See* Michael Kang

7   Decl., ¶¶ 3-8; Indong Kang Decl., ¶¶ 8-10.  Mr. Kang sent the mediation statement to the selected

8   Samsung attorneys so they would be aware of this information and could effectively represent

9   Samsung in the case of any litigation with Ericsson and provide Samsung with legal advice. *Id.*

10  Because the email contains and requests legal advice and further transmits attorney work-product

11  prepared by Kirkland & Ellis, the email is both privileged and protected work product. *See, e.g.,*

12  *Grand Jury Investigation*, 974 F.2d at 1070; *Grand Jury Subpoena*, 357 F.3d at 906.

13          **B.    Samsung's Communications Were Transmitted Because of Litigation, Not for**
14                  **a "Business" Purpose**

15          The Court expressed concern (OSC at 3 n.16) that "many if not all" the documents cited in

16  footnotes 10-15 of the OSC might not be privileged or work product because they are motivated

17  by "a simple business purpose" rather than "in furtherance of legal counsel."  That is not the case,

18  as the declarations submitted herewith make clear.  As set forth above in I.A, each and every

19  document the Court enumerated sought, gave, or furthered legal advice.

20          Moreover, the Court cited authority concerning business versus legal purpose that has been

21  superseded.  While *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990) (cited in

22  OSC at 3 n.16) held that privilege does not apply unless a communication was made "primarily for

23  the purpose of generating legal advice," and that "[n]o privilege can attach to any communication

24  as to which a business purpose would have served as a sufficient cause," the Ninth Circuit

25  subsequently rejected any "primary purpose" requirement, clarifying that work-product protection

26  applies even to documents that have a "dual" business and legal purpose where, "in light of the

27  nature of the document and the factual situation in the particular case, the document can be fairly

28  said to have been prepared or obtained ***because of*** the prospect of litigation." *Grand Jury*

1   *Subpoena*, 357 F.3d at 907 (emphasis added).  The "because of" standard has been extended to the

2   attorney-client privilege.  *CV Therapeutics*, 2006 WL 1699536 at *3.  Accordingly, the test for

3   both attorney-client privilege and work-product protection is not "whether litigation was a primary

4   or secondary motive behind the creation of a document," but rather whether, under "the totality of

5   the circumstances," it "can fairly be said that the 'document was created because of anticipated

6   litigation, and would not have been created in substantially similar form but for the prospect of

7   litigation.'"  *Grand Jury Subpoena*, 357 F.3d at 908 (quotation omitted).[1]  Under this standard,

8   Samsung's communications are amply protected from disclosure.[2]

9               1.       **Attorney-Client Privilege**

10          Each document cited in footnotes 10-15 is properly subject to privilege because it reflects a

11  request for and/or provision of legal advice or assistance that was made because of litigation—

12  even assuming *arguendo* that it also has a business purpose.  For example, in document 6,

13  Samsung's outside litigation counsel in London provides legal advice to Samsung employees and

---

[1]   Application of the "because of" standard is further supported by Apple's own assertions of broad privilege and work-product protection over documents with a dual business and legal purpose.  For example, Apple has included dozens of entries on its privilege logs that relate to licensing issues and has not challenged Samsung's privilege assertions at issue now.  *See, e.g.*, Apple's Fifth Supplemental Privilege Log in Case No. 12-630, dated April 2, 2013 (containing at least 36 entries for communications, including purely in-house communications, "reflecting or seeking legal advice . . . regarding licensing issues," "relating to licensing of Apple technology," or  similar).  In other litigation, Apple has similarly obtained rulings "that attorneys' mental impressions regarding licensing and settlement amounts are protected from disclosure under the attorney-client privilege or work product doctrine," and "legal advice, analyses and conclusions that go into these licensing decisions constitute more than just non-protected 'facts.'"  *SightSound Techs., LLC v. Apple, Inc.*, 2013 WL 2405232, at *2 (W.D. Pa. Mar. 26, 2013).

[2]   The Court cited three other cases that pre-date *Grand Jury Subpoena* for the general propositions that not all communications with a lawyer are privileged and that facts are not privileged.  OSC at 3 n.16.  These decisions have no application to Samsung's privilege or work-product assertions because, unlike here, they involved plainly deficient privilege claims.  *See United States v. Abrahams*, 905 F.2d 1276, 1282-84 (9th Cir. 1990) (attorney "failed to introduce evidence that his clients had communicated this information in confidence and in order to seek legal advice"); *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (no attorney-client relationship existed and no confidential information was communicated); *Matter of Fischel*, 557 F.2d 209, 212-13 (9th Cir. 1977) (summaries "compiled by an attorney from unprivileged facts" did not "directly or indirectly reveal communications of a confidential nature").

1  attorneys involved in Samsung's litigations in other jurisdictions ████████████████

2  ██████████████████████████████████████████████████████ *See*

3  Hopson Decl., ¶¶ 5-6, 9-10.

4       Similarly, in document 272, Samsung's litigation counsel in the Ericsson litigations sends

5  comments on a draft expert report and requests information that she needs to provide additional

6  legal advice and assistance.  Selendy Decl., ¶¶ 6, 8-12, 17, 20.  Her requests are then passed on

7  from Samsung employees to Quinn Emanuel attorneys with an additional request for legal advice

8  and assistance.  To the extent these and other documents at issue have any "business purpose" at

9  all, it is wholly ancillary to their legal purposes, such that the privilege remains in place.  *See*, *e.g.*,

10  *Potter v. United States*, 2002 WL 31409613, at *5 (S.D. Cal. July 26, 2002) ("Attorney client

11  privilege still applies, however, where business advice is incorporated into legal advice.");

12  *Willnerd*, 2010 WL 5391270 at *3 (email containing business advice protected by attorney-client

13  privilege because, in addition to business purpose, it was "drafted for the purpose of facilitating

14  legal representation").

15       **2.**    <u>**Work-Product Protection**</u>

16       Likewise, each document at issue prepared because of litigation is subject to work-product

17  protection.  As the declarations submitted herewith make clear, each document was prepared by

18  Samsung's counsel or their representatives relating directly to ongoing or anticipated litigation, or

19  the mental impressions of Samsung's counsel concerning legal matters.  Documents 6, 222, 255

20  and 274, for example, include attorney work product as reflected in draft briefs or other documents

21  relating to litigation, as well as attorney mental impressions regarding documents generated in

22  litigation.  Similarly, documents 87 and 90 contain attorney mental impressions regarding ████

23  ████████ in an ongoing litigation between Samsung and Ericsson.  Again, to the extent these

24  documents have a business purpose because they concern licensing or the resolution of disputes

25  against competitors of Samsung, they also were generated because of litigation and thus are

26  protected work product.  *See*, *e.g.*, *Burlingame v. Cty. of Calaveras*, 2007 WL 2317301, at *2

27  (E.D. Cal. Aug. 7, 2007) (upholding work-product protection over documents created "to assist a

28  business decision that also involve[d] pending or prospective litigation," because documents were

-11-

1   prepared by attorney retained to provide legal advice); *McCook Metals LLC v. Alcoa Inc.*, 192

2   F.R.D. 242, 263 (N.D. Ill. 2000) (finding protected under the attorney-client privilege and work-

3   product doctrine "documents includ[ing] letters between Alcoa's in-house counsel and

4   management regarding the litigation and licenses, drafts of the settlement agreement and licensing

5   agreements, and inter-office memos between Alcoa management discussing legal advice given").

6   **II.     THE CRIME-FRAUD EXCEPTION DOES NOT APPLY TO ANY OF**

7   **        SAMSUNG'S PRIVILEGED AND/OR PROTECTED DOCUMENTS**

8          **A.     Crime-Fraud Requires Intentional, Fraudulent Conduct Not Present Here**

9          Contrary to arguments Apple has raised, there is no basis to conclude that any document at

10  issue is subject to the crime-fraud exception to the attorney-client privilege.  In a civil case, the

11  crime-fraud exception applies where the preponderance of the evidence establishes that (i) "the

12  client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of

13  counsel to further the scheme[,]" and (ii) "the attorney-client communications for which

14  production is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended,

15  or present, continuing illegality.'"  *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th

16  Cir. 2007) (quotations omitted), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*,

17  558 U.S. 100 (2009).  To apply, the "crime or fraud" exception requires, at a minimum, proof of

18  intentional fraudulent conduct. *Id.* at 1097 (reversing crime-fraud finding because the "evidence

19  nowhere suggests" that party acted with "intent to defraud the courts").  A "reasonable

20  relationship between the communications and the illegality" is insufficient because "the crime-

21  fraud exception applies only to documents and communications that were themselves in

22  furtherance of illegal or fraudulent conduct." *In re Grand Jury Investigation*, 231 Fed. Appx. 692,

23  694-696 (9th Cir. May 10, 2007).

24         Here, the only purported "crime or fraud" Apple has identified is Samsung's alleged

25  violation of the Protective Order.  Samsung is aware of no authority in which the crime-fraud

26

27

28

-12-

**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN
RESPONSE TO ORDER OF NOVEMBER 8, 2013**

1   exception has ever been premised on an inadvertent violation of a protective order.[3]   And any

2   crime-fraud exception could be triggered only if Samsung or its counsel had intentionally

3   disclosed information deemed confidential under the Protective Order for the purpose of making

4   use of that information in violation of the Protective Order.  The record in this case decisively

5   refutes any such showing.

6         **B.**      **None of the Documents At Issue Supports the Crime-Fraud Exception**

7             **1.**      **Document 6 Shows No Intentional Use**

8         None of the emails in this document reflects any use or disclosure of Apple's alleged

9   confidential information.  Although one of the email attachments had an embedded link to the

10  incompletely-redacted Teece report, Ms. Hopson's transmission of that report was not made at the

11  request of Samsung and was not related to the alleged confidential terms of Apple's licenses.

12  Hopson Decl., ¶¶ 5-8.  Likewise, the draft French pleading attached to these emails included

13  ████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████ further negating any inference of use.  *See* Benard Decl.,

15  ¶ 5.   Nor did the French lawyers use the Teece report transmitted by Ms. Hopson to update the

16  information in the draft pleading concerning the Apple-Nokia license.  *Id.*

17            **2.**      **Documents 19 and 20 Show No Intentional Use**

18        The transmissions of alleged confidential information in the Teece report attached to Mr.

19  Eddon's and Mr. Baxter's emails were entirely inadvertent.  *See* Baxter Decl., ¶¶ 4-5; Pease Decl.,

20  ¶¶ 5-7.  Indeed, document 20 reflects Quinn Emanuel's effort to remedy any inadvertent

21  transmission of confidential information by providing a further-redacted version of the Teece

22  report to Samsung.  Likewise, Mr. Shim's request for a copy of the Teece report did not in any

23  _____

24     [3]   The only case cited by any party in this action that applied the crime-fraud exception in the

25  context of a protective order violation, and the only such case of which Samsung is aware,
    involved a classic fraud on the court that could not be more remote from the facts here:  namely,

26  serial false representations to the court to obtain favorable rulings coupled with intentional
    violations of the protective order concerning the same subject matter as the false representations.

27  *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 337 F. Supp. 2d 862, 867-
    68 (N.D. Tex. 2004), *rev'd on reh'g en banc*, 476 F.3d 278 (5th Cir. 2007) (*en banc*).

28

-13-
**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN**
**RESPONSE TO ORDER OF NOVEMBER 8, 2013**

1  way bear on the alleged confidential information contained in that report, he did not know the

2  document he received included Apple's alleged confidential information, and he did not use the

3  alleged confidential information in any manner.  Shim Decl., ¶¶ 4,8.

4           **3.     Documents 87 and 90 Show No Intentional Use**

5           While document 90 reflects that Samsung's counsel presented what it described as the

6  ███████████████████████████████████████████ that information had previously been

7  ███████████████████████████████ and did not derive from the Teece report.  *See*

8  Selendy Decl., ¶¶ 7, 9-10, 13-14, 19; Cha Decl., ¶¶ 7-9 ,17.  The difference ███████████

9  ██████████ and the Teece report shows that there was no use.  *Compare* Document 90-1 at 1-2

10 *with* Teece Report ¶¶ 89, 192-193.  Similarly, the references to the Apple/Ericsson license in

11 document 87 are based on information that was presented by Samsung's counsel ███████████

12 ██████ which further derived from information Samsung's counsel had learned ███████████

13 and not from information contained in the Teece report.  *See* Cha Decl., ¶¶ 14-15, 17.

14          **4.     Document 215 Shows No Intentional Use**

15          Document 215 simply reflects transmissions of the Teece report, not any "use" of the

16 alleged confidential licensing information at all.  The transmissions of the alleged confidential

17 contained in the attachments to document 215 were inadvertent and made without any knowledge

18 or awareness that any alleged confidential information was being transmitted.  *See* Chang Decl., ¶

19 12; Briggs Decl., ¶ 15.   These documents do not reflect willful violations of the Protective Order.

20          **5.     Document 222 Shows No Intentional Use**

21          The licensing information at issue in document 222 was disclosed to Samsung by Apple in

22 the Netherlands litigation, and did not derive from the Teece report.  Nor do any of the emails

23 reflect or evidence use of that information for any purpose other than the ongoing litigation

24 between Apple and Samsung in the Netherlands, or use of privileged communications to further

25 intentional fraudulent conduct.  *See* Van Woortman Decl., ¶¶ 7-8; Shim Decl., ¶ 5; Kim Decl., ¶ 6.

26          **6.     Document 255 Shows No Intentional Use**

27          In document 255, neither the cover email nor the attachments to the email implicate,

28 contain or reflect the Teece report, or any alleged confidential information concerning Apple's

-14-

1 licenses that was inadvertently disclosed in the Teece report.  This email therefore does not

2 evidence any intentional wrongful use or disclosure of alleged confidential information, nor any

3 use of privileged communications to further such conduct.  *See* Indong Kang Decl., ¶ 7.

### 7.  Document 261.55 Shows No Intentional Use

5 Document 261.55 does not reference the Teece report or any alleged confidential

6 information contained in that report and does not reflect any wrongful use of that information.

7 While this document does refer ▓▓▓▓▓▓▓ the information regarding ▓▓▓▓▓▓

8 ▓▓▓▓▓▓▓▓▓▓▓ *See* Selendy Decl., ¶¶ 7, 9-10, 15, 19; Lee

9 Decl., ¶¶ 7-10.  These documents therefore do not reflect a violation of the Protective Order at all.

### 8.  Document 272 Shows No Intentional Use

11 Document 272 does not reflect any willful transmission or use of alleged confidential

12 information in the Teece report.  Mr. Kwon requested information concerning ▓▓▓▓▓

13 ▓▓▓▓ solely for purposes of the litigation between Samsung and Ericsson and not for any

14 reason relating to the alleged confidential terms of Apple's licenses.  Kwon Decl., ¶ 5.  Likewise,

15 the Teece report attached to Mr. Shim's May 13, 2013 email was not transmitted for any reason

16 relating to the alleged confidential terms of Apple's licenses, and further was transmitted without

17 knowledge that any confidential information was contained in that document.  Shim Decl., ¶¶ 6, 8.

### 9.  Document 274 Shows No Intentional Use

19 Document 274, including the draft mediation statement attached to Michael Kang's email,

20 does not reference, reflect or contain any information concerning the terms of Apple's licenses or

21 otherwise disclosed in the Teece report.  The information contained in the mediation statement

22 was supplied to Samsung by its counsel at Kirkland & Ellis and was based ▓▓▓▓▓

23 ▓▓▓▓▓▓▓ *See* Michael Kang Decl., ¶¶ 7, 9; Selendy Decl., ¶¶ 7, 16, 19;

24 Indong Kang Decl., ¶¶ 8-10.

### Conclusion

26 Samsung respectfully requests that the Court uphold Samsung's assertions of privilege and

27 work-product protection over all the documents cited in footnotes 10-15 of the OSC.

1  DATED:  November 15, 2013          QUINN EMANUEL URQUHART &
2                                     SULLIVAN, LLP

3

4                                     By /s/ *Michael T. Zeller*
5                                        Michael T. Zeller

6                                     Attorneys for SAMSUNG ELECTRONICS CO.,
                                       LTD., SAMSUNG ELECTRONICS AMERICA,
7                                      INC. and SAMSUNG
                                       TELECOMMUNICATIONS AMERICA, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-
**SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN
RESPONSE TO ORDER OF NOVEMBER 8, 2013**

1

**ATTESTATION**

2          I, Victoria Maroulis, am the ECF user whose ID and password are being used to file the

3   foregoing document.   I hereby attest pursuant to Civil L.R. 5-1 that concurrence in the electronic

4   filing of this document has been obtained from Michael Zeller.

5   .

6

7                                        _____*/s/ Victoria F. Maroulis*_____
                                             Victoria F. Maroulis
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28