QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**REDACTED DECLARATION OF HELEN HOPSON IN SUPPORT OF SAMSUNG'S BRIEF REGARDING ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT PROTECTION IN RESPONSE TO ORDER OF NOVEMBER 8, 2013**<br><br>**Date**:   December 9, 2013<br>**Time**:   3:00 p.m.<br>**Place**:   Courtroom 5, 4th Floor<br>**Judge**:   Hon. Paul S. Grewal |

I, Helen Hopson, declare:

1. I am an attorney at Bristows LLP ("Bristows") in London, United Kingdom. I trained at Bristows starting in September 2005, and qualified as an attorney in September 2007. I have held this position to date (apart from between April 2010 and February 2011 when I had a short career break). I received a diploma in EC Competition Law from King's College in London. I am actively licensed to practice law in the United Kingdom and I reside and work there.

2. I am counsel for Samsung and in that role have assisted with the competition law and "FRAND" related aspects of several of Samsung's global patent disputes including litigation against Apple and Ericsson in the UK, Australia, France and other jurisdictions. In advising on "FRAND" and related issues, I have been involved with the collection and collation of expert evidence on such issues and ensuring consistency of positions across jurisdictions, including in the context of the EU Commission proceedings. This has required me and others at my firm to review and provide legal advice frequently on draft pleadings, expert reports and other court or administrative filings. All of this work was in the context of my firm's role in advising Samsung in its global patent disputes and related administrative disputes and/or more broadly relating to providing general advice to Samsung on "FRAND" and related issues. Neither I nor anyone else at my firm has been involved in any discussions with Samsung concerning its license negotiations with Nokia. Except to the extent specifically identified below, I make this declaration of personal knowledge, and if called and sworn as a witness, I could and would testify as set forth below.

3. As Samsung's outside counsel, my correspondence with third parties, including foreign counsel or experts, was in support of my role as a legal counsel in the context of the dispute. All of the materials and emails exchanged with Samsung and with those third parties were confidential and intended to remain so, other than in respect of particular expert reports or evidence finally filed with courts or tribunals--and even those might have retained some character of confidence, depending on the particular regime adopted by the relevant court. To the extent that I regarded those communications as privileged under English law, that privilege was generally

1 | explicitly claimed.

2 |     4.    I recall receiving an email in late April 2012 from Laetitia Benard of Allen & Overy in Paris, France, counsel to Samsung in its litigation against Apple in France, attaching a draft pleading that was to be submitted in the French action in the following weeks.  Ms. Benard's email, which is attached as Exhibit A and I understand was submitted to the Court as Tab 6-1 for *in camera* review pursuant to Court order, was addressed only to Samsung's outside litigation counsel and Samsung in-house attorneys and other Samsung employees who are responsible for handling aspects of the global Apple litigations. ███████████ Ms. Benard's email was prepared by her in connection with existing litigation between Samsung and Apple in France and sought advice on legal issues from the Samsung outside litigation counsel to whom the email is addressed.  Attached to and addressed in Ms. Benard's email, and attached here as Exhibit B, is a draft pleading that Ms. Benard's firm prepared in connection with the pending litigation between Apple and Samsung in France.

    5.    In response to the email and draft pleading received from Ms. Benard, on or about May 1, 2012 I sent an email to Ms. Benard and the others to whom her email was addressed with a table of comments attached.  Attached here as Exhibit C is a copy of the email I sent, which I understand was previously submitted to the Court for *in camera* review as Tab 6 pursuant to Court order.  Attached here as Exhibit D is the table of comments that was attached to my email, which I understand was submitted to the Court for in camera review pursuant to Court order as Tab 6-2. When I originally prepared the documents now submitted as Exhibits C and D, I, with the assistance of others from my firm and under the direct supervision of Pat Treacy, a partner at and head of my firm's competition practice, identified selected documents for the purpose of providing legal advice to Ms. Benard and her firm in connection with the ongoing litigation with Apple in France.

    6.    Exhibits C and D provided a substantive response that set forth our firm's thoughts and impressions on numerous legal issues raised by Ms. Benard's email and attached pleading. Included in the table of comments were embedded links to additional documents, including a redacted copy of the opening expert report of David Teece submitted in the Northern District of

1  California case (the "Teece report") that I had previously received from Quinn Emanuel in March
2  2012 ████████████████████████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████████████████████████
4  ██████████████████████████████ (also discussed in paragraph 12 below).   I understand that
5  attached as Exhibit E to this declaration is a copy of the Teece Report to which the table of
6  comments linked.   In preparing this declaration, I was shown the front page of Exhibit E, but did
7  not look at its contents.   Attached here as Exhibit F is a copy of ████████████████████████
8  ██████ which I understand was submitted to the Court for in camera review pursuant to court
9  order as Tab 6-3.   In addition, the table of contents included ████████████████████████████
10  ██████████████ attached here as Exhibit G, and which I understand was previously submitted to
11  the Court for in camera review pursuant to Court order as Tab 6-4.
12         7.     I can confirm that ████████████████████████████████████████████████████
13  ████████████████████████████████████████████████████████████████████████████████████
14  ██████████████████████████████████████████ To the contrary, ██████████████████████████
15  ██████ my reference to the Teece report concerned an unrelated issue that had been addressed by
16  Dr. Teece in his report.
17         8.     ████████████████████████████████████████ I did not reference the terms of any
18  agreements that may have been cited in the Teece report and, at the time, I was not even aware
19  that any such terms had been inadvertently disclosed in the report, which I believed had been
20  properly redacted.
21         9.     My email and attached table of comments (Exhibits C and D) included a
22  "privileged and confidential" designation because under UK law, such communications are subject
23  to what is known as "litigation privilege" and because it is generally my practice to mark emails
24  that I believe to be privileged with such a designation.   Litigation privilege is a broad privilege
25  under UK law that extends to the preparation for litigation including advice given by attorneys, as
26  well as communication with experts and third parties.   At the time of the communications
27  mentioned above and continuing to the present, my firm had been engaged by Samsung to assist
28  broadly on matters relating to "FRAND" and antitrust in litigation in the UK and other

1  jurisdictions, including the United States and France.

2        10.    Any communication with Laetitia Benard and Allen & Overy and the other
3  Samsung counsel copied on this correspondence regarding the French litigation would have been
4  covered by litigation privilege under UK law.   Through communications like my email and the
5  attached table of comments regarding draft responsive pleadings for the French case, my firm was
6  providing legal expertise relevant to the French proceedings given the general application of
7  FRAND and competition law / antitrust principles important in all jurisdictions.   Further, it was
8  also important to my firm to ensure that any statements made by Samsung in the French litigation
9  were not contrary to other proceedings.

10        11.    I can confirm that neither I nor any member of my firm voluntarily disclosed the
11  documents attached as exhibits hereto or the content of the communications reflected therein to
12  any third party other than to persons ▬▬▬▬▬▬ covered by litigation privilege.   Nor
13  did I voluntarily disclose the documents or the content of the communication to any third party
14  who is not bound to maintain its confidence, to a third party with interests adverse to Samsung, to
15  a third party that enabled or substantially increased an opportunity for an adversary to gain access
16  to the information, or otherwise make the information public.

17        12.    As regards the email exchange ▬▬▬▬▬ (Exhibit F) which was included
18  in the response I provided to Ms. Benard, I recall posing certain questions in connection with other
19  worldwide litigation between Samsung and Apple ▬▬▬▬▬▬▬▬▬
20  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and
21  receiving responses to those questions from him.   Under UK law, this correspondence with ▬
22  ▬ is protected by litigation privilege.   The privilege would not have been waived by sharing
23  this communication with co-counsel, including Quinn Emanuel, who were advising regarding
24  Samsung's worldwide FRAND positions.   I did not discuss any aspects of Apple's licenses with
25  Nokia or other companies ▬▬▬▬▬ at any time and as far as I can recall I did not discuss
26  any other aspects of the Teece report.

27        13.    With respect to Exhibit D, I was not aware of the terms of any Apple patent license
28  with Nokia or any other company as referred to in the Teece report when I attached it to the table

-4-

Case No. 11-cv-01846-LHK

**DECLARATION OF HELEN HOPSON**

of comments.   At no time did I distribute to anyone a version of a Teece report with the intention that information therein pertaining to the confidential terms of any Apple patent license with Nokia or any other company be used for any purposes including negotiation strategies.   At no time did I instruct anyone to look at a version of the Teece report to ascertain the confidential terms of any Apple patent license with Nokia or any other company nor was I ever myself instructed to do so.   I did not use, and I am not aware of anyone from Samsung using, for any reason, confidential information about the terms of any Apple license agreement with Nokia or any other company obtained from any version of the Teece report that I received or distributed.

14.   I understand the Court has cited to Tab 6 in its Order to Show Cause Why Sanctions Are Not Warranted and stated that it shows "Samsung's wrongful use of the disclosed SBI in preparing for:   its negotiations with Nokia between March 22, 2012 and June 4, 2013." None of Exhibits A, B C, D or F, however, relate in any way to Samsung's negotiations with Nokia and as far as I am aware neither does Exhibit E although I cannot recall all its contents. My firm and I have had no involvement in such negotiations, were not asked to provide information for that purpose, and have not communicated with Samsung about negotiations or negotiation strategy regarding Nokia.   My email to Ms. Benard (Exh. C) and attached table of comments (Exh. D) make no mention of such negotiations with Nokia and nothing in either document suggests that any Apple sensitive business information from the Teece report or otherwise produced in this case had been used for Samsung's negotiations with Nokia.   In fact, the [redacted] that is a completely different context having nothing to do with Samsung's negotiations with Nokia and the source for that information is identified and clearly does not come from any Teece report.

I declare under penalty of perjury that the foregoing is true and correct under the law of the United States of America.

Executed in London, UK, on November 15, 2013.

|   |   |
|---|---|
| 1 | |
| 2 | |
| 3 |                      */s/ Helen Hopson*<br>                          Helen Hopson |

-7-

## ATTESTATION

I, Victoria Maroulis, am the ECF user whose ID and password are being used to file the foregoing document.  I hereby attest pursuant to Civil L.R. 5-1 that concurrence in the electronic filing of this document has been obtained from Helen Hopson.

                                                   */s/ Victoria F. Maroulis*
                                                   Victoria F. Maroulis