RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, CA 94025
Telephone:    650-838-2000
Facsimile:     650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:    404-881-7000
Facsimile:     404-881-7777

Attorneys for NOKIA CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>          Defendants. | Case No.:  5:11-CV-01846-LHK (PSG)<br><br>**NOKIA CORPORATION'S BRIEF IN SUPPORT OF SANCTIONS AGAINST SAMSUNG ELECTRONICS CO., LTD. AND QUINN EMANUEL URQUHART & SULLIVAN**<br><br>Date:           December 9, 2013<br>Time:           3:00 p.m<br>Courtroom:   5, 4th Floor<br>Judge:          Hon. Paul S. Grewal |

**TABLE OF CONTENTS**

I.      Introduction ...................................................................................................1

II.     Statement of Facts ...........................................................................................2

        A.      Events Leading Up to Massive and Improper Circulation of
                Nokia's CBI. ..................................................................................2

        B.      Timeline of Currently Known Improper Disclosures and Use. .........................3

III.    Argument and Citation to Authority ...................................................................9

        A.      Legal Standards for Sanctions. ..........................................................9

                1.      Rule 37 ...........................................................................10

                2.      Inherent Power .................................................................11

        B.      Quinn Emanuel and Samsung Violated the Protective Order. .........................12

                1.      All Disclosures of the CBI Violated the Protective Order. ...................13

                2.      Samsung and Quinn Emanuel's Decision to Completely
                        Ignore the Protective Order's Remedial Provision Violated
                        the Protective Order in Multiple Ways. .................................15

                3.      Samsung's Misappropriation of the Nokia CBI Violated the
                        Protective Order ...............................................................16

        C.      The Court Should Impose Civil Sanctions on Samsung and Quinn
                Emanuel. .......................................................................................19

                1.      Sanction 1: Samsung Should Be Found to Have
                        Misappropriated Nokia's CBI During Licensing
                        Negotiations and the Court Should Enjoin Samsung and
                        Any Employees Who Received the CBI From Using Any
                        Information Covered by the CBI in Any Future Activities
                        Relating to Nokia Licensing. ............................................20

                2.      Sanction 2: Samsung and Quinn Emanuel Should Be
                        Coerced Through Per Diem Fines and Additional Oversight
                        Into Complying with the Stipulated Order ............................21

                3.      Sanction 3: The Court Should Order Samsung and Quinn
                        Emanuel to Produce All Documents to Nokia, Regardless
                        of Any Privilege Claim ....................................................23

                4.      Sanction 4: The Court Should Enjoin Quinn Emanuel From
                        Representing Clients in Any Matter Adverse to Nokia For
                        Ten Years ......................................................................24

                5.      Sanction 5: Samsung and Quinn Emanuel Should Be
                        Required to Pay Nokia's Expenses, Including Attorneys'
                        Fees. ............................................................................24

IV.    Conclusion ..................................................................................................................25

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ahearn v. Int'l Longshore & Warehouse Union Locals 21 & 4,*
   721 F.3d 1122 (9th Cir. 2013) ........................................................................................25

*Bradford Techs., Inc. v. NCV Software.com,*
   2013 WL 75772 (N.D. Cal. Jan. 4, 2013) ..............................................................10, 12, 20

*Chambers v. NASCO, Inc.,*
   501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)..............................................11, 12, 24

*Christensen v. Ward,*
   916 F.2d 1485 (10th Cir. 1990) ......................................................................................20

*Cole v. U.S. Dist. Court for Dist. of Idaho,*
   366 F.3d 813 (9th Cir. 2004) .........................................................................................24

*Evon v. Law Offices of Sidney Mickell,*
   688 F.3d 1015 (9th Cir. 2012) .............................................................................11, 14, 25

*Ex parte Burr,*
   22 U.S. 529, 6 L. Ed. 152, 9 Wheat. 529 (1824) ............................................................12, 24

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,*
   244 F.3d 1128 (9th Cir. 2001) ..........................................................................9, 10, 11, 12

*Falstaff Brewing Corp. v. Miller Brewing Co.,*
   702 F.2d 770 (9th Cir. 1983) ..............................................................................10, 11, 24, 25

*Fink v. Gomez,*
   239 F.3d 989 (9th Cir. 2001) .........................................................................................11

*Fjelstad v. Am. Honda Motor Co.,*
   762 F.2d 1334 (9th Cir.1985) ........................................................................................14

*Gompers v. Buck's Stove & Range Co.,*
   221 U.S. 418 (1911)....................................................................................................12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
   10 F.3d 693 (9th Cir. 1993) ..........................................................................................24

*In re Google Litig.,*
   2011 WL 6951972 (N.D. Cal. July 8, 2011).......................................................................14

*In re Papst Licensing GMBH & Co., KG Litig.,*
   250 F.R.D. 55 (D.D.C. 2008)........................................................................................23

*Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*,
  539 F.3d 1039 (9th Cir. 2008) ...................................................................................11, 12, 20

*LifeScan Scot., Ltd. v. Shasta Techs., LLC*,
  2013 WL 5949629 (N.D. Cal. Nov. 6, 2013) ........................................................................14

*Merrigan v. Affiliated Bankshares of Colo., Inc.*,
  775 F. Supp. 1408 (D. Colo. 1991)........................................................................................20

*N.Y. v. Operation Rescue Nat'l*,
  80 F.3d 64 (2d Cir. 1996).......................................................................................................25

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)..................................................10, 11

*Silva v. Potter*,
  2006 WL 3298543 (M.D. Fla. Sept. 25, 2006) .....................................................................24

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
  685 F.3d 486 (5th Cir. 2012) .................................................................................................10

*Sun v. Bd. of Trs. of Univ. of Ill.*,
  229 F.R.D. 584 (C.D. Ill. 2005) .............................................................................................12

*Systemic Formulas, Inc. v. Kim*,
  2009 WL 5205995 (D. Utah Dec. 23, 2009)..........................................................................12

*Tripati v. Beaman*,
  878 F.2d 351 (10th Cir. 1989) ...............................................................................................20

*United Mine Workers of Am. v. Bagwell*,
  512 U.S. 821, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994).......................................................9

*United States v. State of Or.*,
  1990 WL 142509 (9th Cir. Oct 2, 1990).................................................................................11

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ...............................................................................................24

**RULES**

Federal Rule of Civil Procedure 26 ................................................................................................10

Federal Rule of Civil Procedure 37 ............................................................................10, 11, 24, 25

Federal Rule of Criminal Procedure 42 .........................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Introduction**

Samsung and Quinn Emanuel accept that "all information leaks" so few to no consequences should result from their disregard for this Court's Protective Orders.    But highly confidential information subject to a protective order should not "leak", and when it does – like the financial terms of the Nokia-Apple License here – sanctions should be swift and significant.    The violations here are set apart from a simple mistake or even inadvertent disclosure by (i) the pervasive nature of the disclosures and (ii) the improper use of the improperly disclosed confidential business information in both the commercial licensing and global litigation contexts.    Without swift and severe sanctions, the attitude that "all information leaks" will become the norm, and litigants and third parties will resist cooperation, absent an order to compel, when their highly confidential information is requested to help resolve civil litigation, thereby leading to expensive and time consuming satellite litigation for all discovery requesting sensitive information.

Nokia trusted that this Court's Protective Order would keep the highly confidential financial terms of its license agreement with Apple out of the hands of its competitor Samsung.    In order to properly address Samsung's and Quinn Emanuel's egregious breach of that trust, to coerce Samsung and Quinn Emanuel to undertake appropriate steps to remedy the situation, and most importantly to strongly condemn the arrogance that "all information leaks," the Court should order the following sanctions:

(1) The Court should find that Samsung misappropriated Nokia's highly confidential business information ("CBI") by using it, at least, to negotiate a patent license with Nokia, enjoin Samsung from collaterally contesting this finding before this or any other tribunal (other than through the normal direct appeal process), and enjoin Samsung and its employees who received the CBI from any use of the information covered by the CBI in any business or proceedings relating to Nokia patents or patent-licensing;

(2) The Court should order a $25,000 per diem fine until Samsung and Quinn Emanuel have fully complied with the Stipulated Order, including remediation – which Samsung and Quinn Emanuel were to make good faith efforts to complete by *October 2, 2013*;

(3) The Court should order that Samsung and Quinn Emanuel must produce to Nokia all documents identified during their investigation into their Protective Order breaches, and order that as a sanction for their conduct any claim of attorney-client privilege or work product is waived;

(4) The Court should bar Quinn Emanuel from appearing in any litigation involving Nokia, directly or indirectly, and to carry on its business activities as if Nokia were a client of Quinn Emanuel for conflict purposes for the next ten years; and

(5) The Court should order Quinn Emanuel and Samsung to pay all expenses including, without limitation, attorneys' fees incurred by Nokia in connection with their Protective Order breaches.

## II.    Statement of Facts

### A.    Events Leading Up to Massive and Improper Circulation of Nokia's CBI.

Nokia and Apple ended global patent litigation with the June 12, 2011 Settlement Agreement and Patent License Agreement ("Nokia-Apple License"). Nokia and Apple have guarded the confidentiality of the key terms of that Nokia/Apple License for the two and half years since, despite intense industry and competitor interest (Koppelman Declaration in Support of Nokia Corporation's Brief in Support of Sanctions, Exh. 1[1] at 190:3-7; Dkt. No. 2254 at 2). Efforts to guard the confidentiality have been successful – Nokia is unaware of any cases in which the highly confidential terms were improperly disclosed to the public or a competitor, and not a single publicly available source has correctly reported the terms (Dkt. No. 1328 at 2; Kop. Exh. 1 at 53:21–54:5). That success ended with the production of the Nokia-Apple License to Samsung in this Court.

The Nokia-Apple License was appropriately designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and produced in the 1846 case by Apple after receiving Nokia's qualified consent on August 5, 2011 (5:12-cv-630 Dkt. No. 647 (Stevens Decl. at 2)). The Protective Order maintains that documents marked as "Highly Confidential – Attorneys' Eyes Only" shall be kept confidential and shown only to Samsung's outside counsel (Dkt. No. 687; 630 Dkt. No. 512). Section 18 requires that in the event of any disclosure, the party responsible and anyone else who knows about the disclosure must (1) "immediately notify counsel for the Producing Party," (2) inform counsel of "all known relevant information concerning the nature and circumstances of the disclosure," and (3)

---

[1] All exhibits to this declaration are hereinafter cited as "Kop. Exh."

"promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made" (*Id.* at 30; *see also* Dkt. No. 687 at 23-24; 630 Dkt. No. 512 at 23-24)).

**B.      Timeline of Currently Known Improper Disclosures and Use.**

**2012 Disclosures of Confidential Nokia-Apple License Terms in Teece Report.**  The key financial terms of the Nokia-Apple License were disclosed in the March 2012 report of Samsung's damages expert, Dr. David Teece ("Teece Report").  Samsung and Quinn Emanuel admit that:

**Quinn Emanuel's December 2012 Actual Knowledge of the Disclosures.**

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████ Quinn Emanuel

5 admits that the realization that they had disclosed Nokia's CBI did not trigger any internal

6 investigation into previous disclosures, and that Quinn Emanuel declined to notify Nokia or Apple of

7 the disclosure (Oct. 22, 2013 Hr'g Tr. at 59:24-60:3).  Instead, Quinn Emanuel and Samsung simply let

8 the previously unleashed confidential information continue to spread throughout Samsung and

9 Samsung's global collective of law firms, and did nothing to attempt to remediate the previous

10 disclosures of the same report that had occurred long before December 2012.

11 **January - May 2013 Disclosures of Confidential Nokia-Apple License Terms in Teece**

12 **Report.**  From January to May 2013, and despite Quinn Emanuel's December 2012 discovery of the

13 incomplete redactions, ██████████████████████████████████████████

14 ███████████████████████████████████████████████ (Dkt. No.

15 2558, Exh. 7).[3]  None of these outside entities were authorized to receive the information under the

16 Protective Order (Dkt. No. 687; 630 Dkt. No. 512).  ██████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ██████████████████████████████████████

24     On May 13, 2013, five months after receiving instructions to delete the improperly redacted

---

[3] Quinn Emanuel has claimed that the Nokia-Apple License information was properly redacted from any copy of the Teece Report that it circulated after December 2012 (Oct. 22, 2013 Hr'g Tr. at 61:12-18, 64:5-65:12).  Quinn Emanuel, however, has withheld the documents allegedly supporting that contention from Nokia, so Nokia cannot assess the accuracy of Quinn Emanuel's contention.  Moreover, this correction, even if actually made, affected only copies of the Teece Report subsequently sent by Quinn Emanuel, and not the continued transmission by Samsung and other law firms of previous versions of the Teece Report.

Teece Report, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████.[4]  Despite these

undisputed facts, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

**Disclosure of Confidential Nokia-Apple License Terms in the ITC Brief.** ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████

**The June 4, 2013 Meeting.** ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

▪ ────────────────────────────

███████████████████████████████████████████████████████████

███████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

███████████████████████████████████████████████████

███████████████████████████████████████   That fact is, of course, no longer in dispute; Nokia was correct that Samsung received the Nokia-Apple License information from their outside counsel.  That such a correlation is a coincidence carries as much weight as Samsung's argument that ███████

██████████████████████████████████████████

**The Full Extent of the Disclosure and Misappropriation of Nokia CBI.**  The full extent of the disclosure and misappropriation of Nokia's CBI by Samsung remains unknown.  First, Samsung has repeatedly missed all deadlines, both stipulated and Court-imposed, and has refused to share redacted or under seal pleadings in the case with Nokia even after Court order, hindering Nokia's ability to fully participate (Dkt. No. 2790 at 2 n.5).  Second, Samsung has obstructed Court-ordered discovery from Nokia and Apple, including accusing Nokia of tortious behavior for merely participating in that discovery (Dkt. No. 2558-3 at 8; Kop. Exh. 7).  Finally, Quinn Emanuel and Samsung have attempted to deny any impropriety by asserting that any and all disclosures of the confidential information were "inadvertent" and then refusing to disclose any of the pertinent documents they put in issue (Dkt. No. 2807).

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████.

In short, and as described more fully below, rather than admit to their wrongdoing and allow a full and open accounting of what transpired and how it can be addressed, or at least diminished at this time, Quinn Emanuel and Samsung have doggedly obstructed and frustrated the process.

**The Stipulated Order.**  Samsung has also obstructed the processes *to which it already agreed* to provide Nokia information about what transpired.  After agreeing to the Stipulated Order, subsequently entered by the Court, that required a good-faith effort to complete a detailed investigation and remediation process by October 2, 2013, Samsung has by all accounts stopped performing under

that Stipulated Order and has refused to complete its obligations under that Order (now 2 months after the deadline for good faith completion) (630 Dkt. No. 785). The process required by the Stipulated Order is not eliminated by the limited discovery provided for by the Court, and Samsung has not been relieved of its obligations under the Stipulated Order by any Court Order.  However, despite the Court's entry of the Stipulated Order (*id.*) and its denial of Samsung's motion to stay that Order (630 Dkt. No. 820), Samsung has refused to comply, even now, in at least the following ways:

- taking the position that status updates on its compliance with the Stipulated Order are not required (Kop. Exh. 8);

- taking the position that they can unilaterally suspend their obligations under the Stipulated Order until this Court has resolved this motion for sanctions (Kop. Exh. 9) ██████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████ and

- cutting off any coordination among the parties and Stroz Friedberg ("Stroz"), the "independent" auditor required by the Stipulated Order. (Kop. Exh. 8).

Samsung and Quinn Emanuel have abandoned any efforts (much less their best efforts) at compliance in favor of a strategy to delay and avoid their obligations.  Over the course of weeks of meet-and-confer calls and letters, Quinn Emanuel has taken the following positions as excuses for its failure to meet the October 2, 2013 deadline or even to continue to pursue compliance with best efforts:

- it does not need to provide Nokia with any update other than an assurance that "work is underway" (Kop. Exh. 11);

- it cannot provide Nokia with any updates about Stroz's work without Nokia entering a new stipulation with Samsung (*id.*);

- Quinn Emanuel can circumvent the Stipulated Order by simply deleting a portion of Nokia's CBI from Samsung employees' hard drives (only the Teece Report and ITC filings) and having Quinn Emanuel retain possession of the archived contents (Kop. Exh. 10); and

- Stroz was no longer required to create the log required by the Stipulated Order because the privilege log produced in the 1846 action was a sufficient substitute and because the search strings the parties agreed to "█████████████████████████████████████████████ █████████████" (Kop. Exh. 12).

Plainly, Samsung and Quinn Emanuel are not honoring the obligations in the Stipulated Order. On October 31, 2013, Nokia and Quinn Emanuel had a call to discuss progress on the Stipulated Order (Kop. Exh. 10).  Nokia asked for status updates on paragraphs 5, 6, 7, 8, and 9 of the Stipulated Order (*id.*).  Quinn Emanuel would only state that "work is underway" and took the position that specific updates would not be provided unless Nokia entered into another stipulation on waiver of privilege (*id.*).  Another month has passed, and Quinn Emanuel has still not provided Nokia any information demonstrating that Quinn Emanuel or Samsung are performing their obligations under the Stipulated Order.

In summary, even after Nokia and Apple discovered the Protective Order violations by Quinn Emanuel and Samsung, Quinn Emanuel and Samsung have done everything possible to obstruct the parties and the Court from seeing a clear picture of their misappropriation, and preventing Nokia and Apple from reaching one of the main goals, i.e. completely removing their confidential business information from their competitor's possession.

## III.   Argument and Citation to Authority

Quinn Emanuel and Samsung have engaged in sanctionable misconduct.  This Court should order civil sanctions for the reasons set forth herein.  First, Section A will address the legal standards for imposing sanctions, including the sanctions available to the Court.  Second, Section B will discuss the multiple ways in which Samsung and Quinn Emanuel blatantly violated this Court's Protective Order.  Third, Section C will discuss the appropriate sanctions that should be imposed based on Samsung's breach of the Protective Order.

### A.   Legal Standards for Sanctions.

Sanctions fall into two general categories – civil and criminal.  *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) (distinguishing civil and criminal contempt orders); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128,

1139 (9th Cir. 2001) (noting that sanctions under a Court's inherent powers the follow same civil/criminal distinction as contempt).[5]  Civil sanctions allow the Court to police the litigation process, coerce compliance with its orders, and compensate litigants for harm caused by the sanctionable conduct.  *Bagwell*, 512 U.S. at 833-34. This Court has authority to impose civil sanctions against Quinn Emanuel and Samsung under Federal Rule of Civil Procedure 37 and under its inherent power.

### 1. Rule 37

Rule 37 provides for sanctions where a party disobeys a discovery order, including violating a Court's protective order.  Fed. R. Civ. P. 37(b)(2)(A); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (imposing Rule 37 sanctions for protective order violation); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders").  Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) (internal citations omitted).  Though Rule 37 sanctions serve a punitive role, they "never have been considered criminal" because they "penalize a party's failure to comply with the rules of conduct governing the litigation process."  *Bagwell*, 512 U.S. at 833.

Rule 37 provides for a broad range of potential sanctions – among them establishing facts, striking pleadings, dismissing an action, entering a default judgment, or holding a litigant in contempt. Fed. R. Civ. P. 37(b)(2)(B).  Sanctions under Rule 37 for protective order violations may also include ordering restitution of any "commercial gain" a party received for prohibited uses of confidential information.  *Bradford Techs., Inc. v. NCV Software.com*, No. C 11-04621 EDL, 2013 WL 75772, at *8 (N.D. Cal. Jan. 4, 2013) (Laporte, Mag. J.).  At a minimum,  after finding a Rule 37 violation "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees" caused by the violation unless the conduct was "substantially

---

[5] This brief relates only to the imposition of civil sanctions.  In addition, the Court has the option to further consider imposing punitive criminal sanctions on Samsung and Quinn Emanuel, or to refer the matter to the bar.  *See Bagwell*, 512 U.S. at 826-27; *F.J. Hanshaw*, 244 F.3d at 1138; Fed. R. Crim. Pro. 42(a).

justified" or ordering fees would be "unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); *Falstaff Brewing Corp.*, 702 F.2d at 784.

### 2. Inherent Power

In addition, all federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. *F.J. Hanshaw*, 244 F.3d at 1136 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). The Court's inherent powers give it authority to impose sanctions on conduct that is either in "bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Conduct tantamount to bad faith includes "a broad range of willful improper conduct." *Id.* at 992. The Ninth Circuit has held that an intentional or willful action that violates a court's protective order is sanctionable even where it is claimed to be "inadvertent." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) ("Thus, it is clear that a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately"). The intentional circulation of a document, like in *Evon*, is therefore sanctionable under the Court's inherent authority even where a party claims that it did not intend for the document to contain confidential information. *Id.*; *see also United States v. State of Or.*, No. 89-35447, 1990 WL 142509, at *1 (9th Cir. Oct 2, 1990) (explaining that even if confidential information was already public at the time of the protective order violation, a party may still be sanctioned under a protective order).

The Court's inherent authority gives it discretion to "fashion an appropriate sanction" up to and including "outright dismissal of a lawsuit." *Chambers*, 501 U.S. at 44-45 (citing *Roadway Express*, 447 U.S. at 765). The existence of discretion to impose the "particularly severe sanction" of dismissal means "undoubtedly" that less severe sanctions like imposing attorneys' fees and costs are within the Court's discretion. *Id.* at 45. Other sanctions imposed by courts exercising their inherent authority include the following:

- Lost royalties and other similar damages, *Koninklijke Philips Elecs., N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1041 (9th Cir. 2008) (listing civil sanctions imposed by district court: "(1) $353,611.70 in attorney's fees; (2) $37,098.14 in seizure and storage costs; (3) $1,284,090.00 in lost royalties;

and (4) $10,000.00 per day until the reports were filed"); *Bradford Techs., Inc.*, 2013 WL 75772, at *8 (allowing recovery of missed "commercial gain");

- Costs resulting from delay caused by sanctionable conduct, *F.J. Hanshaw*, 244 F.3d at 1142 (upholding $200,000 compensatory sanction in part because "entire receivership process was delayed by nearly six months");

- Per diem fines to coerce compliance with an affirmative court order, *Bagwell*, 512 U.S. at 829, and requiring a litigant to post bond to ensure payment, *Koninklijke Philips*, 539 F.3d at 1041;

- Imprisonment to coerce compliance – "[t]he paradigmatic coercive, civil contempt sanction," *Bagwell*, 512 U.S. at 828 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911)); and

- Attorney disqualification and limits on attorney practice in the district, *Chambers*, 501 U.S. at 43 (court has inherent "power to control admission to its bar and to discipline attorneys who appear before it") (citing *Ex parte Burr*, 22 U.S. 529, 531, 6 L. Ed. 152, 9 Wheat. 529 (1824)); *see also Systemic Formulas, Inc. v. Kim*, Case No. 1:07-cv-159-TC, 2009 WL 5205995, at *3-4 (D. Utah Dec. 23, 2009) (disqualifying attorney and barring him from appearing *pro hac vice* because he "can no longer be trusted by the court or the parties to have access to protected information"), *rev'd in part by id.* Dkt. No. 238, at *2 (citing "due process issues" with imposing the three-year bar as a sanction); *Sun v. Bd. of Trs. of Univ. of Ill.*, 229 F.R.D. 584, 591 (C.D. Ill. 2005) (imposing sanctions for discovery abuses and prohibiting defendant's attorney from acting as lead counsel in any case in the district court for one year).

### B.    Quinn Emanuel and Samsung Violated the Protective Order.

Samsung and Quinn Emanuel engaged in massive and long-term violations of this Court's protective order resulting in Nokia's CBI being circulated throughout Samsung and its international network of law firms.  First, Quinn Emanuel disclosed Nokia's CBI to Samsung and other outside lawyers in violation of the protective order, and Samsung personnel circulated the CBI within Samsung and to other law firms in violation of the protective order.  Second, after learning about the protective order violations (at least as early as December 2012), Quinn Emanuel and Samsung made absolutely no effort to remediate the existing spread of the CBI.  It was not until Dr. Seungho Ahn from Samsung revealed to Nokia in June 2013 that he knew Nokia's CBI that Nokia promptly brought

the issue to Quinn Emanuel's attention and pressured Quinn Emanuel to address the situation.  Because of this delay of more than 6 months, the CBI continued to spread throughout Samsung.  And also, rather than cooperate in efforts to address and attempt to resolve the situation, Samsung and Quinn Emanuel have offered nothing but attempts to diminish their culpability, downplay the serious nature of their misconduct, and obstruct any effort to expose what actually transpired.  Third, Samsung misappropriated the CBI in preparing for and engaging in its negotiations with Nokia, which had a negative impact on the parties being able to resolve the negotiations without going through protracted arbitration proceedings.  Each of these actions, by themselves and in conjunction, constitutes a clear breach of the protective order.

### 1.    All Disclosures of the CBI Violated the Protective Order.

> *Protected Material shall not voluntarily be distributed, disclosed or made available to anyone except as expressly provided in this Order.*

(Dkt. No. 687 at 5; 630 Dkt. No. 512 at 4) (emphasis added).

Quinn Emanuel admits that it disclosed Nokia's CBI by widely circulating a version of Dr. Teece's report containing the CBI to Samsung and other law firms.  Given the magnitude of the violations, this fact alone is sufficient for imposition of sanctions here.  Samsung and Quinn Emanuel have argued (1) that the original disclosure was "inadvertent" and not voluntary, and (2) that the CBI – the specific, sensitive financial terms of the Nokia-Apple License – were already publicly available. These responses are unavailing.

First, the argument that Samsung's disclosure was not "voluntary" and therefore not appropriate for sanctions is squarely foreclosed by Ninth Circuit precedent.[6]  As the Ninth Circuit held in a recent protective order violation case, "it is clear that a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a

---

[6] As the Court has already recognized, Nokia cannot fully address the anticipated argument that any disclosures of Nokia CBI by Samsung or Quinn Emanuel were "inadvertent" because Samsung and Quinn Emanuel refuse to produce the relevant documents based on dubious privilege assertions (*See* Dkt. No. 2689 at 4 n.16).  Samsung offered in the middle of the night less than a week ago to produce unredacted parts of some self-selected documents, but even were it reasonable to offer to produce a limited set of the documents Samsung has itself put in issue (it is not), the offer was subject to other unreasonable conditions (for instance, that only 5 attorneys and no one else could review the documents) (*See* Dkt. No. 2833).  Thus, the primary evidence left is the self-serving and conclusory statements of those who have violated the protective order.

party acted deliberately." *Evon*, 688 F.3d at 1035.  In *Evon*, an attorney filed a brief on the court's public docket that contained confidential information in violation of the court's protective order.  *Id.*  The district court found the filing to be "inadvertent" and thus sanctions were inappropriate.  *Id.*  The Ninth Circuit rejected the argument, holding that the attempted distinction between a bad faith improper motive and simple ignorant deliberate action made no difference.  *Id.*  Indeed, this Court has previously recognized this line of reasoning, ruling that "'[d]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." *In re Google Litig.*, No. C 08–03172 RMW (PSG), 2011 WL 6951972, at \*5 (N.D. Cal. July 8, 2011) (Grewal, Mag. J.) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir.1985)); Dkt. No. 880 at 15 (granting-in-part Apple's Motion for Rule 37 sanctions) ("Yet the law of this circuit also establishes that '[d]isobedient conduct not shown to be outside the litigant's control' alone meets the standard for willfulness, suggesting that some level of sanctions is justified").  It is undisputed that Quinn Emanuel took willful action in circulating the Teece Report, and that Samsung took willful action in further circulating that report; whether either Samsung or Quinn Emanuel knew the Teece Report contained Nokia's CBI is irrelevant to whether they took willful action.

The Court should also reject any attempted argument that Quinn Emanuel and Samsung did not violate the Protective Order because Nokia's CBI was somehow public.  Initially, the Nokia-Apple License terms are not public and Nokia and Apple went to great lengths, including insisting on the very protective order Samsung and Quinn Emanuel violated, to keep the CBI confidential (Dkt. No. 2622 at 4-6).  And moreover, the CBI had been designated confidential and Samsung never challenged that designation (*Id.* at 5-6).  The protective order explicitly states that confidential material must continue to be treated as confidential until it is de-designated in writing by the producing party or the Court rules it is not entitled to confidential treatment (Dkt. No. 687 at 26; 630 Dkt. No. 512 at 20).  This Court has consistently rejected similar attempts by other litigants to avoid sanctionable protective order violations by claiming information was public, including within the last month.  *See, e.g., LifeScan Scot., Ltd. v. Shasta Techs., LLC*, No. 11-cv-4494-WHO, 2013 WL 5949629 (N.D. Cal. Nov. 6, 2013).  Therefore, the Court should find that both Samsung and Quinn Emanuel violated the protective order by circulating Nokia's CBI in the Teece Report.

### 2.     Samsung and Quinn Emanuel's Decision to Completely Ignore the Protective Order's Remedial Provision Violated the Protective Order in Multiple Ways.

*In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible Disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.*

(Dkt. No. 687 at 30; 630 Dkt. No. 512 at 23-24) (emphasis added).

Samsung and Quinn Emanuel also violated the protective order by failing to take the required remedial measures.  Section 18 of the order, quoted above, places 3 duties on a party who discloses material protected under the order to unauthorized recipients and on all parties that that *know of* the disclosure:

- *Immediately* notify counsel for the party that produced the discovery;

- Provide counsel *all known relevant information* about the nature and circumstances of the disclosure; and

- Take *all reasonable measures* to retrieve the improperly disclosed material and stanch the further spread of that material.

(*Id.*) (emphasis added).  Samsung and Quinn Emanuel breached each of these duties.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████(Dkt. No. 2807-1 at ¶ 5).  Neither Quinn Emanuel nor Samsung took any further action to remedy the situation, much less follow the precise instructions in the protective order to: (1) alert others, (2) provide *all known relevant information*, and (3) take *all reasonable measures* to prevent the confidential information from being further disclosed.

With regard to the duty to alert others, it was only after Nokia filed its motion in this case – 6 months after Quinn Emanuel claims it had actual knowledge of the improper disclosure – that Samsung and Quinn Emanuel decided to notify anyone about the disclosures.  In the June 4, 2013

negotiation between Nokia and Samsung, Dr. Seungho Ahn revealed to Nokia's personnel that he knew the terms of the Nokia-Apple License – CBI produced in this case.  This was 6 months after Quinn Emanuel and Samsung claim to have discovered the improper redaction in December 2012, yet neither company took any action to alert anyone about the improper disclosure, much less prevent Samsung's employees in competitive roles from learning the information.  And even after Dr. Ahn revealed that Samsung knew the terms of the Nokia-Apple License, it was not until Nokia shortly thereafter appeared in the Northern District of California and moved for a protective order that Quinn Emanuel or Samsung took any action (*See* 630 Dkt. No. 647).  This 6-month-plus failure to notify others about the disclosure constituted a clear and conscious breach of Section 18.

With regard to the continuing duty to provide all known relevant information, Samsung and Quinn Emanuel *continue to refuse* to provide Apple and Nokia relevant information about their improper disclosures.  Far from voluntarily providing information, Samsung and Quinn Emanuel have refused to participate in discovery unless ordered by the Court (Dkt. No. 2483 at 4-5).  When Samsung has been forced by Court order to participate in discovery, Samsung has obstructed by missing deadlines, (Dkt. No. 2790 at 2 n.5), obstructing depositions, (Dkt. No. 2558-3 at 8) and accusing Nokia of committing preposterous torts by participating (Kop. Exh. 7).

Even to the extent, through the Stipulated Order, that Samsung and Quinn Emanuel initially claimed a desire to comply (6 months later) with the duty to provide information to Apple and Nokia, they have put up roadblocks at every turn – including refusing to provide Nokia with status updates and refusing to allow Nokia to communicate with the independent auditor Stroz.  Without concrete deadlines and coercive sanctions imposed by the Court, Samsung and Quinn Emanuel will simply continue to engage in dilatory tactics designed to avoid compliance with the Stipulated Order and the obligation in the protective order to provide all relevant information.

### 3.      Samsung's Misappropriation of the Nokia CBI Violated the Protective Order

*All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function, except as expressly provided herein.*

(Dkt. No. 687 at 5; 630 Dkt. No. 512 at 4) (emphasis added).

Samsung's most egregious misappropriation of Nokia's CBI evidenced itself at the June 4, 2013 license negotiation between Nokia and Samsung.[7]  At that meeting, ████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Nokia's account of Samsung's misappropriation of Nokia confidential information at the June 4, 2013 meeting is the only credible account.  First, Nokia was right.  After that meeting, Nokia alleged based solely on the meeting that 1) the Samsung negotiators had very specific Nokia CBI, and 2) that they had received the information from outside counsel (630 Dkt. No. 647-1 at 2).  Both have since been confirmed by Samsung  (630 Dkt. No.  785).  █████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████

Second, all accounts of the June 4 meeting—Dr. Ahn's, Mr. Kwak's, Mr. Melin's and Ms. Hakoranta's—agree on the essential facts.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████  Even where there are minor differences in the accounts, Samsung cannot deny the remarkable agreement by all participants as to the most important facts.

Third, ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

─────────────────────

█ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████. Unless Dr. Ahn identified his source as he did at the meeting, it would not have been credible for him to claim he knew the terms. If he had instead merely identified the various public speculations about the terms, he would have failed to convince Nokia that he in fact knew the terms. Thus, it was essential for him identify outside counsel for him to be credible. ██████████████ ███████████████████████████████████████████, he would have risked losing all credibility in the negotiations.  Therefore, the fact that he identified outside counsel during the meeting is the most credible version of events. ████████████████████ ████████████████████████ It was an admission of Samsung's misappropriation.

Fourth, Nokia's account of the meeting and specifically that Dr. Ahn said that the information came from outside counsel is supported by a critical detail. ████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████

Fifth, Nokia's account of the June 4, 2013 meeting is more credible because the numbers do not lie. ██████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████ Thus, it was a simple cost-benefit

analysis for Samsung where Samsung saw big upside in taking control of the negotiation and feared little downside in improperly using the information.

### C. The Court Should Impose Civil Sanctions on Samsung and Quinn Emanuel.

The Court should sanction Quinn Emanuel and Samsung for the costs incurred by Nokia because of the improper conduct and coerce compliance with the Protective Order and Stipulated Order, through the following civil sanctions:[8]

- Because Quinn Emanuel and Samsung have deprived Nokia of the ability to have a good faith negotiation for the terms of a licensing agreement for its patents with Samsung, the Court should find that Samsung misappropriated the Nokia-Apple License terms in violation of the Protective Order during licensing negotiations with Nokia, enjoin Samsung from challenging that finding in this or any other tribunal, and enjoin Samsung and its employees who received the CBI from using any information covered by the CBI in any future activity relating to Nokia patent licensing;

- Samsung and Quinn Emanuel should be coerced through additional oversight and a per diem fine of $25,000 into complying with the Stipulated Order until Stroz issues a declaration certifying in detail that all the CBI has been removed from Quinn Emanuel and Samsung's possession;

- Samsung and Quinn Emanuel should be ordered to produce all documents to Nokia, regardless of privilege claims, because any privilege claims should be rejected as a sanction;

- Quinn Emanuel should be enjoined from representing clients in any matters adverse to Nokia for the next ten years; and

- Samsung and Quinn Emanuel should be required to pay all Nokia's expenses caused by their conduct, including, without limitation, all attorneys' fees.

As the Court noted in its November 8, 2013 Order, Nokia has not seen many of the documents evidencing Samsung's use of its CBI.  Nokia therefore reserves the right to pursue additional civil

---

[8] Sanctions in this case cannot compensate Nokia for the damage it has suffered as a result of Samsung's and Quinn Emanuel's misappropriation of its CBI. Thus, Nokia reserves all rights to seek additional complete relief against Samsung and Quinn Emanuel in another venue after the Court completes sanctions proceedings in this matter (630 Dkt. No. 785 ¶ 11 ("Nothing contained in this Stipulation shall constitute a waiver of any rights of Nokia with respect to the assertion of any claims relating to the disclosure and/or use of the Disclosed Information, including but not limited to remedies or selection of any forum for the resolution of disputes arising or relating thereto, and Nokia will be permitted to use the information derived from the process in this Stipulation in any proceeding involving any claims relating to the disclosure and/or use of the Disclosed Information")).

sanctions, including additional findings of fact, to the extent those documents reveal that Nokia suffered lost royalties or other missed commercial gain. *Koninklijke Philips Electronics N.V.*, 539 F.3d at 1041 (listing civil sanctions imposed by district court, including "$1,284,090.00 in lost royalties"); *Bradford Technologies, Inc.*, 2013 WL 75772, at *8 (allowing recovery of missed "commercial gain"); *see also supra* n.12 (reserving Nokia's right to pursue additional relief in another venue).

1. **Sanction 1: Samsung Should Be Found to Have Misappropriated Nokia's CBI During Licensing Negotiations and the Court Should Enjoin Samsung and Any Employees Who Received the CBI From Using Any Information Covered by the CBI in Any Future Activities Relating to Nokia Licensing.**

The most significant harm caused by Quinn Emanuel's disclosure of Nokia's CBI and Samsung's misappropriation of that CBI is that it deprived Nokia of the opportunity to have a good faith negotiation with Samsung for a license agreement to Nokia's valuable patent portfolio. "Injunctive sanctions are appropriate where monetary sanctions are not effective." *Merrigan v. Affiliated Bankshares of Colo., Inc.*, 775 F. Supp. 1408, 1413 (D. Colo. 1991) (citing *Christensen v. Ward*, 916 F.2d 1485 (10th Cir. 1990) and *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989)). The Court should impose a non-monetary sanction by finding that Samsung misappropriated the Nokia-Apple License terms in violation of the Protective Order in negotiating with Nokia, enjoining Samsung from challenging that finding before this or any other tribunal,[9] and enjoining Samsung and its employees who received Nokia's CBI from using any information covered by the CBI in any matter relating to licensing with Nokia. The injunction should apply to all Samsung personnel who accessed Nokia's CBI in the improperly redacted Teece Report (the "Affected Employees"), and should include at least the following prohibitions:

- Samsung and the Affected Employees cannot use or rely on any information covered by the CBI (whether alleged to be otherwise legally obtained or not) in any matter relating to licensing with Nokia, including but not limited to arbitration or litigation;

- The Affected Employees cannot participate in managing or directing any arbitration or litigation, including evaluating or discussing strategy, instructing counsel or providing information to others,

---

[9] To further ensure compliance with this injunction, the Court should require Samsung to present a copy of the sanctions order to any court or other tribunal resolving any patent or licensing dispute between Nokia and Samsung for the next 10 years.

where the arbitration or litigation involves Nokia, its patents or patent licenses.

In essence, because the Affected Employees have been infected by the improperly received Nokia CBI, any participation in the activities described above would necessarily constitute a further misappropriation of Nokia's CBI under the protective order.

### 2. Sanction 2: Samsung and Quinn Emanuel Should Be Coerced Through Per Diem Fines and Additional Oversight Into Complying with the Stipulated Order.

Next, this Court should impose coercive sanctions of $25,000 per day on Samsung and Quinn Emanuel until the procedures in the Stipulated Order are complete and Stroz has submitted a declaration detailing precisely what steps it took to identify all Nokia CBI on Quinn Emanuel and Samsung's systems, and certifying that all CBI has been deleted.[10]  Because the deadline for good faith efforts to complete the Stipulated Order procedures passed two months ago, the Court should order that these coercive sanctions begin *instanter*, and the Court should appoint a Special Master to oversee Stroz's efforts and ensure that the parties have a fast and efficient way to resolve any disputes that arise.  The Court should make clear that as an independent auditor, Stroz is entitled to and must freely communicate with Nokia and the Court with regard to the status and procedures undertaken.[11]

The Court should also order the following to take place after Stroz certifies that Samsung and Quinn Emanuel have completed compliance with the Stipulated Order:

- Stroz must produce a log of the CBI it found on Samsung and Quinn Emanuel systems and the steps taken to remove that CBI, with input from Nokia on the format of the log;

- Stroz must sit for at least 10 hours of deposition by Nokia to resolve any issues remaining after its

---

[10] Samsung and Quinn Emanuel claim that they require a new stipulation from Nokia and Apple regarding waiver before they can comply with the Court's Stipulated Order.  Samsung has never cited any authority for the proposition that it can refuse to comply with this Court's Stipulated Order based on a side deal it thinks it needs with another litigant.  Nor is it relevant to this baseless refusal to comply that Nokia has requested a waiver in order to voluntarily produce documents to Samsung that have never been subject to any production order by this or any other court; Nokia is not violating any court order in refusing to produce documents without a waiver.

[11] Samsung and Quinn Emanuel have taken the position that any information Nokia receives about the ongoing process cannot come through Stroz, but instead must come from Quinn Emanuel.  Allowing Quinn Emanuel and Samsung to selectively filter the information Nokia receives from Stroz creates the exact "fox-henhouse" problem this Court already identified and that the appointment of the independent auditor Stroz was meant to prevent (*See* Dkt. No. 2483 at 4). Any attempt by Samsung or Quinn Emanuel to avoid coercive sanctions on this ground should be rejected.

submissions; and

- Stroz must report fully to the Court and the parties on its investigation of Quinn Emanuel regarding the sufficiency of Quinn Emanuel's internal investigation.

In addition, Quinn Emanuel must submit a declaration that explains what the other law firms received, including which versions of the Teece Report and ITC attachments, and specifically why in each instance they received it, including whether in each instance it was an inadvertent or deliberate disclosure. Furthermore, because Nokia has still not received a copy of the relevant email attachments even though they have been provided to Apple, Samsung should be fined an additional $25,000 per day until it completes its document production to Nokia pursuant to the Court's October 2, 2013 order.

The Court should also rule that any discovery taken pursuant to the Court's October 2, 2013 Order on discovery on Apple's sanctions motion should be considered to also have been taken pursuant to the Stipulated Order.[12]

Finally, the Court should leave these proceedings open, including the possibility of further sanctions, pending the results of the Stipulated Order investigation. The parties never contemplated that the Stipulated Order would be the complete investigatory procedure; rather, it was intended to be the first step allowing Nokia to have an initial review of precisely how its CBI was disclosed to Samsung, and how it was further propagated and misappropriated once inside Samsung. After that initial review, the Stipulated Order expressly recognized additional discovery into questions raised by the initial review (*See* 630 Dkt. No. 785 at 5). By refusing to complete the initial review process in the Stipulated Order, Quinn Emanuel and Samsung are positioning the issue such that the Court may make a final resolution before the secondary investigation under the Stipulated Order ever takes place. Therefore the Court should leave these proceedings open after the completion of the Stipulated Order so that Nokia can pursue the subsequent additional discovery contemplated by that Order.

---

[12] Though Nokia believes that all the discovery thus far has taken place under both October 2, 2013 orders (the Stipulated Order and the order regarding other sanctions discovery), it seeks a clear statement from the Court that discovery has been under both orders because the Stipulated Order allows Nokia "to use the information derived from this process in this Stipulation in any proceeding involving any claims relating to the disclosure and/or use of the Disclosed Information" (630 Dkt. No. 785 at 6). It is possible that Samsung or Quinn Emanuel could attempt to split hairs in such a proceeding and claim that their discovery was only pursuant to the Court's October 2, 2013 Order and not pursuant to the Stipulated Order.

### 3. Sanction 3: The Court Should Order Samsung and Quinn Emanuel to Produce All Documents to Nokia, Regardless of Any Privilege Claim

The Court should sanction Samsung and Quinn Emanuel by ordering them to produce all documents identified either by Stroz in its audit or by Quinn Emanuel in its *in camera* submissions to the Court.  As this Court already noted, for many documents claimed to be privileged, "the court thus far is unpersuaded that the generic statements in the log meet the burden required to claim that protection" and in addition "many if not all of these documents do not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would have served as cause for the communications" (Dkt. No. 2689 at 4 n.16).  Nokia has already briefed additional reasons that the documents are not privileged, including Samsung's selective redaction of documents and Samsung's placing these documents in issue (*See generally* Dkt. No. 2824).  Even were some of the documents privileged in any way, the Court should order their production as a sanction to ensure Nokia has the best available information about how Samsung misappropriated its CBI.  *See In re Papst Licensing GMBH & Co., KG Litig.*, 250 F.R.D. 55, 57 (D.D.C. 2008) (approving sanction of waiver of attorney client privilege and attorney work product for failure to respond to discovery by due date; "waiver of privileges is not too harsh a sanction under the circumstances presented here").

This sanction is particularly appropriate here, where Samsung and Quinn Emanuel have unilaterally withheld documents the Court has ordered produced based on alleged non-disclosure agreements with third parties (*See* Dkt. No. 2483 at 5-6 (ordering production of certain documents by October 16, 2013)).  Separate NDA obligations are irrelevant where, as here, the documents have been ordered produced by the Court; the refusal to produce the documents is blatant contempt.  Samsung and Quinn Emanuel could have raised these issues with the Court, but instead decided on self-help. Most outrageously, Samsung has refused to *produce the improperly redacted Teece Report*, so Nokia cannot even determine precisely what Quinn Emanuel disclosed to Samsung.  The unilateral refusal to produce documents ordered produced by the Court is contempt, and further support for a sanction ordering production of *all* documents identified either by Stroz in its audit or by Quinn Emanuel in its *in camera* submissions to the Court without regard to dubious privilege claims.[13]

---

[13] The Court should order that any documents or other discovery produced in response to the sanctions motion is produced pursuant to the Stipulated Order as well.  *See supra* n.16 (noting that Nokia can use information produced pursuant to the Stipulated Order in other proceedings).

1

### 4.    Sanction 4: The Court Should Enjoin Quinn Emanuel From Representing Clients in Any Matter Adverse to Nokia For Ten Years

2

3        As an additional sanction, the Court should enjoin Quinn Emanuel Urquhart & Sullivan, and

4   any of its current attorneys or former attorneys implicated by the Court's sanctions order, from

5   representing clients in any matter adverse to Nokia for ten years.  *Chambers*, 501 U.S. at 43 (court has

6   inherent "power to control admission to its bar and to discipline attorneys who appear before it")

7   (citing *Ex parte Burr*, 22 U.S. at 531); *see also Cole v. U.S. Dist. Court for Dist. of Idaho*, 366 F.3d

8   813, 822 (9th Cir. 2004) (recognizing *pro hac vice* revocation as sanction); *Silva v. Potter*, No. 8:04-

9   cv-2542-T-17 EAJ 2006 WL 3298543, at *3 (M.D. Fla. Sept. 25, 2006) (issuing order to show cause

10  why plaintiff's counsel's *pro hac vice* status should not be revoked for litigation misconduct).  Nokia

11  cannot trust Quinn Emanuel with its highly confidential business information, and preventing Quinn

12  Emanuel from being adverse to Nokia for ten years is a simple solution to eliminate the risk Nokia

13  faces.  Quinn Emanuel's behavior is not a simple matter of an inadvertent disclosure of Nokia's CBI; it

14  is a willful decision by Quinn Emanuel to completely ignore that disclosure after having actual

15  knowledge of it, allowing the CBI to spread to the executive level of Nokia's competitor, Samsung, to

16  be used in multi-billion dollar negotiations.  Nokia cannot risk another disclosure – inadvertent or

17  intentional – that is cavalierly disregarded by the attorneys bound by court order and ethical canons to

18  prevent such disclosures and promptly fix them in the rare circumstance that they occur.

### 5.    Sanction 5: Samsung and Quinn Emanuel Should Be Required to Pay Nokia's Expenses, Including Attorneys' Fees.

19

20       Nokia is entitled to all expenses and attorneys' fees it has incurred to deal with this massive

21  protective order breach.  *Falstaff Brewing Corp.*, 702 F.2d at 784 (granting expenses, including

22  attorneys' fees, as Rule 37 sanctions for protective order violation).  Samsung and Quinn Emanuel may

23  attempt to argue against Nokia's entitlement to expenses by arguing that the behavior was

24  "inadvertent" so sanctions should not be imposed.[14]

---

[14] Rule 37 also allows a party to avoid attorneys' fees and expenses where the party's behavior was

25  "substantially justified," but there is no colorable argument that there was any justification for Quinn

26  Emanuel's and Samsung's Protective Order violations.  *See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695-96 (9th Cir. 1993) (holding litigant substantially complied

27  with protective order where it did not disclose any confidential information, but rather lawyers simply used material to file related lawsuit against same defendants); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (no substantial justification for failure to

28  provide an expert report until after the close of discovery because defendants could have issued a

Initially, there is not even a colorable argument that Samsung's and Quinn Emanuel's failure to comply with the remedial provisions in Section 18 of the protective order were inadvertent, or that Samsung's misappropriation of the CBI in negotiating with Nokia was inadvertent, so Nokia is entitled to all of its attorneys' fees and costs on that ground alone.  Moreover, any argument that Samsung's and Quinn Emanuel's circulation of the CBI is not sanctionable because it was inadvertent flies in the face of Ninth Circuit precedent.  As discussed below, the Ninth Circuit rejected the argument in nearly identical circumstances in *Evon* just last year.  688 F.3d at 1035.  Nor is *Evon* a new principle.  This Court has recognized the principle already *in this case*.  Dkt. No. 880 at 15 (Grewal, J. order granting-in-part Apple's Motion for Rule 37 sanctions) ("Yet the law of this circuit also establishes that '[d]isobedient conduct not shown to be outside the litigant's control' alone meets the standard for willfulness, suggesting that some level of sanctions is justified")*; see also Falstaff Brewing,* 702 F.2d at 784.[15]  Therefore, the Court should order Quinn Emanuel and Samsung to pay all expenses incurred by Nokia as a result of the Protective Order violations.

## IV.   Conclusion

For the foregoing reasons, the Court should issue civil sanctions against Quinn Emanuel and Samsung.  Nokia requests that before the Court file any sanctions order on the public docket, it provide Nokia an opportunity to request redaction of portions of that order.

Dated: December 2, 2013

Respectfully submitted,

*s/ Randall L. Allen*
RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150

---

preliminary report or asked for an extension of the discovery timeline).

[15] Nokia has appeared in the case; it has filed briefing, participated in multiple hearings, and it has been permitted by the Court to participate in discovery (Dkt. No. 2483 at 5). Therefore, Nokia has standing to seek civil sanctions on its own behalf under Rule 37 and the Court's inherent power. *Compare with N.Y. v. Operation Rescue Nat'l,* 80 F.3d 64, 71-72 (2d Cir. 1996) (state had no standing to seek sanctions on behalf of third-party non-participant), *cited in Ahearn v. Int'l Longshore & Warehouse Union Locals 21 & 4,* 721 F.3d 1122, 1131 (9th Cir. 2013).

Menlo Park, CA 94025
Telephone:650-838-2000
Facsimile: 650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:404-881-7000
Facsimile: 404-881-7777

Attorneys for NOKIA CORPORATION

1    RANDALL L. ALLEN (Ca. Bar No. 264067)
     randall.allen@alston.com
2    RYAN W. KOPPELMAN (Ca. Bar No. 290704)
     ryan.koppelman@alston.com
3    ALSTON & BIRD LLP
     275 Middlefield Road, Suite 150
4    Menlo Park, CA 94025
     Telephone:    650-838-2000
5    Facsimile:    650-838-2001

6    PATRICK J. FLINN (Ca. Bar No. 104423)
     patrick.flinn@alston.com
7    B. PARKER MILLER (*pro hac vice*)
     parker.miller@alston.com
8    ALSTON & BIRD LLP
     1201 West Peachtree Street
9    Atlanta, GA 30309
     Telephone:    404-881-7000
10   Facsimile:    404-881-7777

11   Attorneys for NOKIA CORPORATION

12                     UNITED STATES DISTRICT COURT

13                FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15

16

17   APPLE, INC., a California corporation,     Case No.:  5:11-CV-1846-LHK (PSG)

18              Plaintiff,
                                                **CERTIFICATE OF SERVICE**
19         v.

20   SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation, SAMSUNG
21   ELECTRONICS AMERICA, INC., a New York
     corporation; SAMSUNG
22   TELECOMMUNICATIONS AMERICA, LLC,
     a Delaware limited liability company,
23
                Defendants.
24

25

26

27

28

I hereby certify that on December 2, 2013, I electronically filed the foregoing **NOKIA CORPORATION'S BRIEF IN SUPPORT OF SANCTIONS AGAINST SAMSUNG ELECTRONICS CO., LTD. AND QUINN EMANUEL URQUHART & SULLIVAN** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to the parties and counsel of record.

This 2nd day of December, 2013.

_s/ Ryan W. Koppelman_
Ryan W. Koppelman
ryan.koppelman@alston.com
 (Ca. Bar No. 290704)
**ALSTON & BIRD LLP**
275 Middlefield Road, Suite 150
Menlo Park, CA 94025
Telephone:     650-838-2009
Facsimile:     650-838-2001

_Attorneys for NOKIA CORPORATION_
