HAROLD J. MCELHINNY (SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (SBN 116421)
rkrevans@mofo.com
ERIC J. OLSON (SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522


Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE (*pro hac vice*)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S BRIEF REGARDING APPROPRIATE SANCTIONS FOR SAMSUNG'S PROTECTIVE ORDER VIOLATIONS**<br><br>**Date:**  December 9, 2013<br>**Time:**  10:00 a.m.<br>**Place:**  Courtroom 5, 4th Floor<br>**Judge:**  Hon. Paul S. Grewal |

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     SUMMARY OF SAMSUNG'S AND QUINN EMANUEL'S PROTECTIVE
        ORDER VIOLATIONS........................................................................................2
        A.    The Protective Order................................................................................3
        B.    The Improperly Disclosed and Disseminated Apple Information ...........4
              1.    The Apple License Terms are Confidential ...................................4
              2.    The Apple-Nokia License Terms Have Not Been Disclosed By
                    Apple or Nokia..............................................................................5
        C.    Samsung's and Quinn Emanuel's Improper Dissemination of Apple
              License Terms and Failure to Timely Disclose Known Breaches of the
              Protective Order .......................................................................................7
              1.    Samsung and Quinn Emanuel Block Discovery of Full Extent of
                    Their Protective Order Breaches...................................................9
        D.    Improper Uses of Apple License Terms .................................................10
              1.    Samsung's Use of Apple's Confidential Information Against
                    Apple in Litigation and In Licensing Discussions.....................10
              2.    Samsung's Use of Apple's Confidential Information Against
                    Others .........................................................................................13
                    (a)    Nokia..............................................................................13
                    (b)    Ericsson..........................................................................14

III.    THE COURT SHOULD SANCTION SAMSUNG AND QUINN EMANUEL TO
        CURE THE HARM—AND CONTINUING THREAT—TO APPLE AND THE
        OTHER AFFECTED PARTIES, AND TO VINDICATE THE COURT'S
        RULES AND ORDERS. ....................................................................................15
        A.    Remedies To Begin To Cure The Harm And Continuing Threat To Apple..........16
              1.    Public Findings Of Samsung's Misconduct...............................17
              2.    Bar Against Samsung And Quinn Emanuel For A Period Of Two
                    Years From Entering New Situations Where They Could Misuse
                    Apple Confidential Information...................................................18
              3.    Bar Against Samsung Pursuing An Injunction In The -630 Case
                    Because Of Its Unclean Hands ...................................................19
              4.    Attorneys' Fees ..........................................................................19
        B.    Sanctions To Uphold The Integrity Of The Judicial Process And Deter
              Future Misconduct ..................................................................................20

IV.     CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
 960 F.2d 1020 (Fed. Cir. 1992)...................................................................................19

*Biocore Medical Techs. Inc. v. Khosrowshahi*,
 1998 WL 919126 (D. Kan. Nov. 6, 1998) ...................................................................20

*Brocade Comm. Sys., Inc. v. A10 Networks, Inc.*,
 Case No. 10-3428-PSG, 2013 WL 890126 (N.D. Cal. Jan. 23, 2013) ...................15

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991)........................................................................................................15

*Mfr.'s Fin. Co. v. McKey*,
 294 U.S. 442 (1935)......................................................................................................19

*Grace v. Center for Auto Safety*,
 155 F.R.D. 591 (E.D. Mich. 1994) .............................................................................16

*In re Deutsche Bank Trust Co. Americas*,
 605 F.3d 1373 (Fed. Cir. 2010)....................................................................................11

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
 10 F.3d 693 (9th Cir. 1993) .........................................................................................15

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
 941 F.3d 970 (9th Cir. 1991) .......................................................................................18

*Lion Raisins Inc. v. United States*,
 64 Fed. Cl. 536 (Ct. Claims 2005) ..............................................................................18

*Minnesota Mining & Mfg. Co. v. Pribyl*,
 259 F.3d 587 (7th Cir. 2001) .......................................................................................18

*Shockley v. Arcan, Inc.*,
 248 F.3d 1349 (Fed. Cir. 2001).....................................................................................19

*Trenado v. Cooper Tire & Rubber Co.*,
 274 F.R.D. 598 (S.D. Tex. 2011)..................................................................................20

STATUTES

35 U.S.C. § 285 .......................................................................................................................20

## I.   INTRODUCTION

By at least December 2012, Samsung and Quinn Emanuel were on clear notice that they had repeatedly circulated Apple's confidential license information to more than ███ individuals not entitled to receive that information under this Court's Protective Order.  Yet, Samsung and its lawyers said *nothing* at the time to Apple or the Court—even though the Protective Order expressly required them to self-report "all known relevant information" concerning these many unauthorized disclosures "immediately"—and did nothing to retrieve that information or prevent its further dissemination or use, even though the Protective Order required them to do so "promptly."  To the contrary, over the next seven months, Samsung and Quinn Emanuel simply maintained their silence while continuing to transmit Apple's confidential license information to Samsung employees and lawyers around the world, including dozens of additional persons not under the Court's Protective Order.

All that changed on July 1, 2013, when Nokia filed a sealed motion (in Case No. 12-cv-630) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  But even then, Samsung and Quinn Emanuel grossly underreported the full extent of their Protective Order violations.  They then stymied Apple's (and Nokia's) attempts to learn about the scope of the violations by conducting a flawed factual investigation, by failing to comply with the Court-approved Stipulation with Nokia, by filing an entire brief and sixteen declarations *ex parte*, and by erecting multiple roadblocks that prevented Apple from conducting its own investigation—including numerous improper

assertions of privilege that forced the Court to review thousands of withheld Samsung documents *in camera*.

Apple's own limited investigation has led it to the inescapable conclusions that Samsung and Quinn Emanuel (i) breached the Protective Order *hundreds of times* by sharing Apple's confidential license information with Samsung employees and lawyers around the world (including top Samsung licensing executives); (ii) used the improperly-shared information in connection with the parties' ITC proceedings and license negotiations as well as license negotiations with at least Nokia and Ericsson; and (iii) attempted to keep their many violations hidden from Apple and the Court, ███████████. This conduct confirms the Court's statement in its Order to Show Cause Why Sanctions Are Not Warranted, that "if anything was breached, it was this court's protective order, and that sanctions against Samsung and its attorneys are warranted." (Dkt. 2689 at 2.) Indeed, Apple is not aware of a reported decision in which any litigant violated a protective order nearly as many times as Samsung and its lawyers have in this case.

These violations jeopardize the trust that Apple and other litigants regularly place in judicial protective orders. They also have harmed—and continue to threaten—Apple (and Samsung's other competitors, including Nokia) by arming Samsung with an asymmetrical informational advantage that Samsung can—and apparently *has*—used to its advantage in crafting litigation and licensing positions. Apple requests sanctions that are tailored to these offenses, that would begin to cure the harm and threat to Apple and to others, and that would help vindicate the importance of compliance with the rules and orders governing the judicial process.

## II. SUMMARY OF SAMSUNG'S AND QUINN EMANUEL'S PROTECTIVE ORDER VIOLATIONS

Many of the facts surrounding Samsung's and Quinn Emanuel's violations of the Protective Order are set forth in Apple's prior filings. (*See* Dkts. 2374; 2410, 2557, 2772, 2825.) The full detail regarding those violations is not repeated in this submission, but some of the key facts are summarized below.

**A.     The Protective Order**

On January 30, 2012, at the joint request of the parties, the Court entered a Protective

Order.  (Dkt. 687.)  The "Basic Principle" of that Protective Order is as follows:

> All Protected Material shall be used solely for this case or any related appellate
> proceeding, and not for any other purpose whatsoever, including without
> limitation any other litigation . . . or any business or competitive purpose. . . .
> Protected Material shall not voluntarily be distributed, disclosed or made
> available to anyone except as expressly provided in this Order.

(*Id.* at 5, ¶ 6(a).)

Recognizing the extremely commercially sensitive nature of licensing information, Apple

and Samsung stipulated, and the Court's Protective Order specifies, that information regarding

the "licensing of the Producing Party's intellectual property" is "presumed" to be "sensitive

business information that is trade secret, and/or commercially sensitive, where substantial harm

from disclosure cannot . . . be avoided" without strict limitations on who is permitted to view it.

(*Id.* at 11, ¶ 9(a).)  Specifically, licensing information designated highly confidential under the

Protective Order was only permitted to be disclosed to outside litigation counsel, the Court, the

parties' litigation experts, and their staffs.  (*Id.* at 11, ¶ 9(b).)  The parties agree on the

importance of such protective orders to ensure the confidentiality of sensitive business

information produced in litigation.  (*See*                                              

                                                                                          

                                                               Ex. 22,

[Risher Dep.] at 121:11-122:8.[1])

Finally, the Protective Order requires that, in the event a party improperly discloses

material designated as protected under the Protective Order, it must

> ***immediately notify*** counsel for the Producing Party . . . and ***provide to such
> counsel all known relevant information concerning the nature and
> circumstances of the disclosure***.  The responsible disclosing Party shall also

---

[1]     Exhibits 22-27 referenced herein are attached to the Declaration of Mark Selwyn in
Support of Apple Inc.'s Brief Regarding Appropriate Sanctions.

1   promptly take all reasonable measures to retrieve the improperly disclosed
    Discovery Material and to *ensure that no further or greater unauthorized*
2   *disclosure and/or use thereof is made.*

3   (*Id.* at 30, ¶ 18(a) (emphases added).)

4       **B.      The Improperly Disclosed and Disseminated Apple Information**

5           Samsung and Quinn Emanuel repeatedly violated the protective order by disclosing the

6   financial terms of Apple's patent license agreements with several companies that are direct

7   competitors of Apple and Samsung.  These terms were contained in at least two separate

8   documents disseminated by Quinn Emanuel and Samsung.  (*See* Dkt. 2557-4 [Ahn Dep.] at 2-4

9   (detailing Samsung's disclosures).)  The first was an incompletely redacted report of Samsung's

10  licensing expert, David Teece, which was circulated at least as early as March 22, 2012.  (*Id.*)

11  The second was an incompletely redacted version of a brief Samsung filed in ████████████

12  ████████████████████████████████ circulated at least as early as March 22,

13  2013.  (*Id.*)  It is undisputed that Quinn Emanuel and Samsung broadly disseminated the

14  financial terms of Apple's licenses with (1) Nokia, (2) Ericsson, (3) Philips, and (4) Sharp

15  ("Apple License Terms") to individuals unauthorized to view them under the Court's Protective

16  Order.  (*See id.*)

17      **1.      The Apple License Terms are Confidential**

18          In addition to the Protective Order's presumption that licensing information is highly

19  confidential, the evidence confirms that the Apple License Terms are actually highly

20  confidential, commercially sensitive information.  ████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████

27

28

Further, the Court has previously confirmed the confidential nature of the Apple-Nokia license by entering a sealing order keeping its financial terms out of the public view during trial. The Court recognized that disclosure of the Apple-Nokia license terms "could result in significant competitive harm to the licensing parties as it would provide insight into the structure of their licensing deals, forcing them into an uneven bargaining position in future negotiations." (Dkt. 1649 at 16.)

Finally,

### 2.    The Apple-Nokia License Terms Have Not Been Disclosed By Apple or Nokia

Notwithstanding the Protective Order's presumption that license terms are presumed highly confidential, and the testimony of Samsung's own witnesses that

, Samsung now appears to argue that the Court should find the Apple-Nokia license terms[2] do not qualify for protection under the Protective Order.

Samsung's first anticipated argument—that Apple's disclosures in the Netherlands litigation of certain information concerning the Apple-Nokia license destroys the confidentiality of the financial terms of that license—is not supported by the factual record. Apple's

---

[2]    Notably, Samsung does not appear to make any such claim with respect to the remainder of the Apple License Terms (i.e., the financial terms of Apple's licenses with Ericsson, Philips, and Sharp).

1  anonymized disclosure of certain terms of its patent license agreements in the Netherlands was

2  made at the direction of the Dutch court under strict restrictions.  (Ex. 27 [Kleemans Decl.]).

3  Indeed,



15       Samsung's second anticipated argument—that Apple's disclosure of certain terms of the

16  Apple-Nokia license to the U.S. Securities and Exchange Commission renders that information

17  not "Highly Confidential"—is similarly unsupported.  To the contrary, when the SEC required

18  Apple to submit the financial terms of the Apple-Nokia license, Apple did so subject to a

19  standard request for confidential treatment, and the information was never made public.  (*See,*

20  *e.g.*, Dkt. 2374-2 [Jason Mick, "Apple Fights to Keep Details of Nokia Settlement From the

21  Public," Daily Tech (Oct. 3, 2011)].)  As reported by the press at the time, "Apple fulfilled that

22  [SEC] request with five pages of non-public confidential information filed on August 1[, 2011]."

23  (*Id.*)  On August 17 the SEC acknowledged receiving the document and stated that it was

24  "satisfactory."  (*Id.*)  Since that time, the SEC has not approached Apple about making any

25  further (let alone non-confidential) disclosure of the license terms.

26  _____

27  3

28

1    Samsung is also expected to argue that the Apple-Nokia license terms had been leaked to

2  and reported in the press.  This is untrue, as explained in Apple's previous submissions.  (*See*

3  Dkt. 2410-2 at 2-3; *see also* Ex. 23 [Melin Dep.] at 54:25 - 55:2 ████████████████████

4  ████████████████████████████████████████████████████

5    Accordingly, there is no real dispute that the Apple-Nokia license terms were properly

6  designated as highly confidential under the Protective Order.  Further, Samsung does not contest

7  that the remaining Apple License Terms—including the financial terms of Apple's licenses with

8  Philips and Sharp—were highly confidential information properly designated under the

9  Protective Order.

10    **C.    Samsung's and Quinn Emanuel's Improper Dissemination of Apple License**

11         **Terms and Failure to Timely Disclose Known Breaches of the Protective**
         **Order**

12    Samsung's broad dissemination of the Apple License Terms began no later than

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████. (Dkt. 2557-7.) ████████████████████,

16  Samsung and its lawyers sent Apple License Terms to at least ███ persons not covered by the

17  Protective Order—*i.e.*, to more than ████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████. (*See* Dkt. 2557-4 at 2-4 (detailing disclosures); *see also* Dkt. 2557-27

20  (list of all recipients of information).)

21    At least as early as ████████████, ***Samsung knew of the Protective Order***

22  ***violations***.  On that date, a Quinn Emanuel lawyer told Mr. Shim ████████████████████

23  ████████████████████████████████████████████████. (Dkt.

24  2557-10 [Shim Dep.] at 2.)  But Quinn Emanuel and Samsung ████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████.

27

28

1   Samsung and Quinn Emanuel also █████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ███ (Dkt. 2557-16, 2557-17.)  In addition, ████████████████████

8   ████████████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████

10  ██████ (*See* Dkt. 2825-2 [Apple's Response to Samsung's Brief Regarding Privilege] at

11  13-14.)

12      Thus, in reckless disregard for the Protective Order, and █████████████

13  ████████████████████████████████████████████████████

14  ██████, Samsung and Quinn Emanuel ████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ██████████████████████████████ Had Samsung ████████████████

17  ██████████████████████████████████, at least some of

18  the ensuing harm could have been avoided.

19      The first time Samsung conducted any investigation into the scope of its improper

20  dissemination of the Apple License Terms was in ████████████████████████

21  █████████████████. But even then, rather than comply with the Protective

22  Order's requirement to *immediately* inform Apple of its breaches, Samsung ██████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ██████ Ex. 25 ██████████████████████████████████. *Id.*  Samsung

27  also used that ████████████ to continue to urge the United States Trade Representative not

to disapprove the International Trade Commission's determination in Investigation No. 337-TA-794 to exclude certain Apple products from import into the United States.  On August 3, 2013, the USTR announced his disapproval of the ITC's determination.

### 1. Samsung and Quinn Emanuel Block Discovery of Full Extent of Their Protective Order Breaches

For nearly four months, Apple has sought to discover the full extent of Samsung's and Quinn Emanuel's Protective Order violations.  (*See, e.g.* Dkts. 2374-2 - 2374-6.)  For equally as long, Samsung and Quinn Emanuel have sought to block that inquiry.  Even when the Court ordered them to produce discovery, Samsung and Quinn Emanuel have interposed improper privilege objections and disregarded the Court's instructions.  The result is that much remains unknown regarding the scope of the Protective Order violations.

For example, in response to the Court's October 2, 2013 order to make a complete production of documents referencing the Apple License Terms, Samsung withheld as privileged the entire contents of every single document.  (*See* Dkt. 2557-4 at 9-10.)  Its privilege log contained nothing but boilerplate entries that provided no meaningful description of the subject matter of the withheld communications.  (Dkt. 2538 at 7.)  During depositions ordered by the Court on the topic of Samsung's violations, Samsung ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (*See, e.g.*, Dkt. 2557-15 [Kwak Dep.] at 155:16-60, 157:3-6.)  Thus, Apple was not permitted to obtain full discovery into additional violations that may have occurred.

Likewise, in its October 2, 2013 Order, the Court entered a Stipulation that Samsung and Nokia had jointly negotiated and filed, which imposed a series of investigatory and disclosure deadlines on Samsung.  (Dkt. 2483 at 4-5.)  One purpose of this Stipulation was to uncover additional instances in which Samsung or its counsel transmitted the Apple License Terms.  (Case No. 2012-cv-00630, Dkt. 785 at ¶¶3-5; Dkt. 2538 at 11.)  Judge Koh denied Samsung's request to withdraw the Stipulation.  (Dkt. 2538 at 12.)  Nevertheless, Samsung

still has not complied with the Stipulation, and therefore it remains unknown whether the

Stipulation's protocol will uncover additional Protective Order violations.

### D.    Improper Uses of Apple License Terms

Just as the full scope of Samsung's and Quinn Emanuel's unauthorized disclosures

remains unknown, the extent of Samsung's improper use of the Apple License Information

remains partly unknown because Samsung has asserted the attorney-client privilege to block

almost any inquiry into that topic as well.  During depositions, Samsung blocked Apple's

questions on topics such as:

But even based on the existing record, it is clear that Samsung made significant use of the

Apple License Terms in several contexts, including to develop licensing and litigation strategies

against Apple and other companies such as Nokia and Ericsson.

### 1.    Samsung's Use of Apple's Confidential Information Against Apple in Litigation and In Licensing Discussions

The Apple License Terms were disclosed to Samsung licensing and in-house legal

executives that were in the best position to use them to Apple's harm.  For example, the Apple

License Terms were provided to:



Because these employees are responsible for developing Samsung's licensing strategy with respect to Apple, and with making license offers to Apple, they stood to benefit most from the knowledge of what Apple paid Nokia for a license.

For example, Dr. Ahn—

*Cf. In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed Cir. 2010) ("'[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.'") (citation omitted).

1    Moreover, a critical issue over the course of the Apple-Samsung litigations—in

2  jurisdictions worldwide—has been whether Samsung has complied with its commitments to

3  license allegedly "standard essential" patents on "fair, reasonable, and non-discriminatory"

4  ("FRAND") terms.  In July 2011 (before the Protective Order breaches began), Samsung

5

6

7

8

9

10

11

12    That same month, Samsung told the ITC:

13

14

15

16

17

18

19    Discovery during the sanctions proceedings has revealed that Samsung circulated the

20  draft briefing containing this argument to Samsung in-house lawyers and executives, without

21  redacting it.  For example,

22

23

24

25

26

27

28



this created an informational asymmetry as compared to Apple's in-house team, and gave the Samsung team a clear advantage in deciding whether to approve this argument.

Moreover,

### 2. Samsung's Use of Apple's Confidential Information Against Others

The record also indicates that Samsung has improperly used Apple's confidential license information against other companies as well, including Nokia and Ericsson.

#### (a) Nokia

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22          **(b)       Ericsson**

23      There is no dispute that Samsung

24

25

26

27

28

1

2

3

4

5

6

7

### III. THE COURT SHOULD SANCTION SAMSUNG AND QUINN EMANUEL TO CURE THE HARM—AND CONTINUING THREAT—TO APPLE AND THE OTHER AFFECTED PARTIES, AND TO VINDICATE THE COURT'S RULES AND ORDERS.

The Court has a broad range of powers available to sanction Samsung and Quinn Emanuel for their misconduct.  These powers include the Court's explicit and inherent authority to enforce the Federal Rules of Civil Procedure and the Court's orders thereunder, *see, e.g.,* Fed. R. Civ. P. 37 (expressly authorizing courts to impose a range of sanctions for violations of discovery rules and orders); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (recognizing inherent powers of federal courts include "the ability to fashion appropriate sanction for conduct which abuses the judicial process"); the Court's authority to remedy civil contempt, *see, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir 1993) ("Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.  The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order."); and the Court's equitable power to issue injunctions to address disclosure of trade secrets, *see, e.g., Brocade Comm. Sys., Inc. v. A10 Networks, Inc.,* Case No. 10-3428-PSG, 2013 WL 890126, at *12 (N.D. Cal. Jan. 23, 2013).

The key imperative for sanctions should be to cure the harm—and continuing threat—to Apple and other companies whose confidential information was wrongly disclosed and used.  In addition, sanctions are necessary to vindicate the Court's and the public's interest in promoting rigorous compliance with the rules of the judicial system, and deterring violations of these rules.

Courts have recognized the importance of both goals.  *See, e.g., Grace v. Center for Auto Safety*, 155 F.R.D. 591, 602 (E.D. Mich. 1994) ("The imposition of sanctions in this case against Ditlow and Robinson serves the dual purpose of vindicating judicial authority and compensating GM for the expenses caused by Robinson's and Ditlow's willful violation of the protective order.  These two functions: maintaining the integrity of the court and making GM whole for the expenses caused by defense counsel and defendant's misconduct are explained below.").

The sanctions set forth below achieve these two goals.  These sanctions are significant, but commensurate with the unprecedented scope of Samsung's and Quinn Emanuel's breaches of the protective order.

### A.      Remedies To Begin To Cure The Harm And Continuing Threat To Apple

As Apple's Director of Patent Licensing, Jeffrey C. Risher, testified at his deposition, the disclosure of Apple's protected licensing information both (1) creates an information asymmetry that benefits the recipients of the improper disclosures in their license negotiations with Apple and other companies in the mobile-device industry—the recipients have information that Apple's licensing executives do not;  and (2) undermines the proper functioning of the judicial process on which Apple and other litigants depend.  (Ex. 22 [Risher Dep.] at 127-30.)  Without access to the factual details of Samsung's and Quinn Emanuel's misconduct, Mr. Risher could not speak to the specific harms flowing from this misconduct.  The Court, however, has seen the full record, which strongly suggests that Samsung licensing executives who gained access to highly confidential license information proceeded to use that information in crafting litigation positions and in license negotiations.  This is precisely the "information asymmetry" danger that Mr. Risher and the Court have identified.  (Dkt. 2689 at 3; Dkt. 1649 at 16.)  Moreover, these executives can continue to exploit this asymmetry against Apple and others.

To try to explain away this harm, Samsung has attempted to argue that the Apple License Terms were not actually confidential.  But as Apple has explained in earlier briefing and further

1  discusses below in note 4, each such allegation is groundless.[4]  Samsung has not identified any

2  instance in which Apple or others failed to protect the confidentiality of the information at

3  issue—and indeed, Samsung's proffered examples actually demonstrate the contrary: Apple and

4  its licensing partners have consistently used great care in safeguarding the confidentiality of their

5  licenses.  Moreover, Samsung has not even tried to identify any instance in which Apple, Sharp,

6  or Philips failed to treat their license agreement terms as confidential—and Samsung improperly

7  disclosed those, too.

8       The real issue is not whether Samsung's misconduct has imposed harm and threat to

9  Apple and others—it plainly has—but rather what to do about it.  Apple proposes below a series

10  of sanctions that are closely tied to the factual record and fully within the Court's powers, and

11  that would begin to cure the harm and threat to Apple.

12       **1.       Public Findings Of Samsung's Misconduct**

13       The first set of sanctions would create a record of what Samsung has done, through the

14  Court making the following findings in its sanctions order:

15   - Samsung and its counsel Quinn Emanuel recklessly violated the Court's protective order
16     by distributing Apple's confidential license information to unauthorized recipients, and
     by failing to alert Apple and the Court to the breaches in a timely manner.
17

18   - Samsung and its counsel Quinn Emanuel misused Apple's confidential business
     information obtained in breach of the protective order (*e.g.*, in license negotiations; in

19  _____

20  [4] ███████████████████████████████████████

21  ███████████████████████████████████████████

22  ███████      ***Second,*** as to disclosures regarding the Apple-Nokia agreement that Apple made to
   the Securities and Exchange Commission, these were expressly requested by the SEC and
23  submitted with a request for confidential treatment, and there is no evidence that anyone from the
   SEC ever publicly disclosed them.  (*See* Eric Slivka, "SEC Pressed Apple for Information on
24  Nokia Patent Settlement, MacRumors (October 3, 2011, available at
   http://www.macrumors.com/2011/10/03/sec-pressed-apple-for-information-on-nokia-patent-
25  settlement/).  ***Third,*** as to certain press accounts estimating some of the monetary terms of the
   Apple-Nokia agreement: (a) there is no evidence that Apple or Nokia provided information used
26  to inform these estimates; (b) other public estimates varied widely (and incorrectly); and (c)
   press reports noted how closely Apple and Nokia guarded the terms of their agreement.  (*See,*
27  *e.g.*, Dkt. 2624 at 1-3 (and citations therein).)

28

submissions to the International Trade Commission, European Commission, and in a submission to an Italian court).

- Samsung and its counsel Quinn Emanuel engaged in bad faith licensing conduct by using the improperly received information in negotiations with other parties.

- In the 12-630 case, where the issues include whether Samsung has breached its commitment to license its allegedly "standard essential" patents on "fair, reasonable, and non-discriminatory" terms, the jury should be instructed that Samsung breached the Court's protective order and engaged in bad faith licensing conduct with other parties by using improperly received informed pertaining to Apple licenses.

Each of these findings is amply supported by the evidentiary record; the sanction is simply making the public generally and the -630 jury specifically aware of these facts.

### 2. Bar Against Samsung And Quinn Emanuel For A Period Of Two Years From Entering New Situations Where They Could Misuse Apple Confidential Information

The second set of sanctions would prevent Samsung and Quinn Emanuel from entering new situations where they could misuse Apple confidential information, for a period of two years. These sanctions are analogous to injunctions imposed in trade secret cases to prevent further use of confidential information. *See Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 607 (7th Cir. 2001) ("The purpose of a permanent injunction is to protect trade secret owners from the ongoing damages caused by the future use of trade secrets."); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ("An injunction in a trade secret case seeks to protect the secrecy of misappropriated information and to eliminate any unfair head start the defendant may have gained."); *cf. Lion Raisins Inc. v. United States*, 64 Fed. Cl. 536 (Ct. Claims 2005) (court considering barring the government (the alleged protective-order violator) from using any improperly disclosed documents for any purpose in the instant or future litigations). In particular, Apple requests that the Court:

- Prohibit Dr. Ahn and other Samsung executives (including those responsible for licensing and/or managing Samsung's litigation with Apple) who improperly obtained Apple's and other companies' confidential business information from negotiating any mobile-device licenses for Samsung for the next two years; and

- Prohibit Quinn Emanuel from executing any new protective orders under which it would receive Apple confidential information for a period of two years.

The former sanction would prevent the Samsung recipients from exploiting the informational asymmetry they now hold in mobile-device negotiations for a period of two years, to allow that ill-gotten advantage to abate over that time period.  Other Samsung employees could, of course, negotiate such licenses—and even the recipients of the information could negotiate licenses in the many other industries in which Samsung develops and sells products.

The latter sanction would prevent Quinn Emanuel from executing new protective orders permitting receipt of Apple confidential information for a period of two years, to help ensure that Quinn Emanuel has no new opportunity during that time to continue the pattern of breaches that occurred here.  But recognizing that the -1846 and -630 cases are at an advanced stage, Apple does not seek Quinn Emanuel's disqualification from those cases.

### 3.    Bar Against Samsung Pursuing An Injunction In The -630 Case Because Of Its Unclean Hands

"[One] who seeks equity must do equity," *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1361 (Fed. Cir. 2001) (quoting *Mfr.'s Fin. Co. v. McKey*, 294 U.S. 442, 449 (1935)), and the Federal Circuit has held that parties cannot seek equitable remedies where they have unclean hands.  *See id.* (finding that district court did not abuse its discretion in declining to exercise its power to find equitable intervening rights because defendant did not have clean hands); *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1038 (Fed. Cir. 1992) ("[A] patentee may be able to preclude application of the laches defense with proof that the accused infringer was itself guilty of misdeeds towards the patentee.").  Accordingly, Apple requests that Court:

- Determine that Samsung is not entitled to an injunction in the -630 case based on the equitable principle of "unclean hands," or at least that Samsung's misconduct militates against entry of an injunction and will need to be considered as part of the Court's equitable analysis if the Court reaches the injunction phase.

### 4.    Attorneys' Fees

As the final sanction aimed at curing the harm to Apple from Samsung's and Quinn Emanuel's misconduct, Apple requests that the Court find that the -1846 and -630 are exceptional cases under 35 U.S.C. § 285.  At a bare minimum, Samsung should pay Apple's attorneys' fees for the full proceedings relating to the breach and sanctions issues.  *See Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 602 (S.D. Tex. 2011) (ordering payment of opposing counsel's attorneys' fees stemming from the protective order violations).

**B.      Sanctions To Uphold The Integrity Of The Judicial Process And Deter Future Misconduct**

As the Court's Order To Show Cause emphasized, "confidential information remains confidential because counsel and clients alike follow court orders. If parties breach this basic rule, the court's assurances become meaningless."  (Dkt. 2483 at 2.)  To restore the integrity of the judicial process and deter future misconduct, Apple requests that the Court:

- Reprimand Samsung and Quinn Emanuel for their protective order breaches; and

- Order Samsung and Quinn Emanuel to write letters to the other parties in all their ongoing cases (*i.e.*, all Quinn Emanuel cases, and all Samsung cases— even those in which other counsel represents Samsung) with a protective order, disclosing the fact of their protective order breaches and their reprimands by the Court.

Public reprimands will hold Samsung and Quinn Emanuel accountable for their actions. *See, e.g., Biocore Medical Techs. Inc. v. Khosrowshahi*, 1998 WL 919126 (D. Kan. Nov. 6, 1998) (publicly reprimanding and disqualifying counsel who violated protective order, stating, "This case has become a textbook example of how major litigation should not be conducted, and [counsel's] inability or unwillingness to comply with simple rules has made the entire process more time-consuming, expensive, contentious and protracted than it has needed to be. [Counsel's] violations have continued for far too long. His unwillingness to abide by the terms of the protective order, in a case which involves highly sensitive trade secret claims, has finally 'tainted' the underlying litigation.").  It is appropriate that Samsung and Quinn Emanuel inform the other parties in all their ongoing cases of the fact of their reprimands.  *See id.* (ordering the

clerk to mail a copy of the order to every court in which the offending attorney was admitted to practice).  This process will both validate the critical importance of compliance with the Court's rules and orders, and deter others from engaging in similar misconduct in the future.

## IV.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court enter the proposed sanctions against Samsung.

Dated:  December 2, 2013                    /s/ William F. Lee
                                            William F. Lee

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 2, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark D. Selwyn
Mark D. Selwyn