# EXHIBIT 22
(Redacted Version of Document Sought To Be Sealed)

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN JOSE DIVISION
 4
 5  APPLE, INC., a California   )
    corporation,                 )
 6                               )
           Plaintiff,            )
 7                               )
           vs.                   )  No. 11-CV-01846-LHK
 8                               )
    SAMSUNG ELECTRONICS CO.,     )
 9  LTD., a Korean business      )
    entity; SAMSUNG ELECTRONICS  )
10  AMERICA, INC., a New York    )
    corporation; SAMSUNG         )
11  TELECOMMUNICATIONS AMERICA,  )
    LLC, a Delaware limited      )
12  liability company,           )
                                 )
13         Defendants.           )
    ___                          )
14
15
16     CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
17         VIDEO DEPOSITION OF JEFFREY C. RISHER
18                    Palo Alto, CA
19            Wednesday, November 20, 2013
20
21  REPORTED BY:
22  SUSAN F. MAGEE, RPR, CCRR, CLR, CSR No. 11661
23
24  Job No. 68171
25
```

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
                                          Page 2
 1
 2
 3
 4
 5         November 20, 2013
 6            10:09 a.m.
 7
 8    CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
 9    VIDEO DEPOSITION OF JEFFREY C. RISHER, held
10    at the offices of WILMERHALE,
11    950 Page Mill Road, Palo Alto, CA 94304,
12    pursuant to Notice before SUSAN F. MAGEE,
13    RPR, CCRR, CLR, CSR No. 11661.
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                          Page 3
 1    APPEARANCES:
 2
 3        WILMERHALE
 4        Attorneys for Plaintiff Apple, Inc.
 5           60 State Street
 6           Boston, MA 02109
 7        BY: JOSEPH MUELLER, ESQ.
 8
 9        APPLE
10           One Infinite Loop
11           Cupertino, CA 95014
12        BY: IAIN CUNNINGHAM, In-house Counsel
13
14
15
16
17
18        QUINN EMANUEL URQUHART & SULLIVAN
19        Attorneys for Defendant Samsung
20           865 South Figueroa Street
21           Los Angeles, CA 90017
22        BY: MICHAEL ZELLER, ESQ.
23
24
25
```

```
                                          Page 4
 1    APPEARANCES (continued):
 2        QUINN EMANUEL URQUHART & SULLIVAN
 3        Attorneys for Defendant Samsung (continued)
 4           555 Twin Dolphin Drive
 5           Redwood Shores, CA 94065
 6        BY: NATHAN SUN, ESQ.
 7
 8
 9
10
11        ALSTON & BIRD
12        Attorneys for Nokia Corporation
13           275 Middlefield Road
14           Menlo Park, CA 94025
15        BY: RYAN KOPPELMAN, ESQ.
16            TIMOTHY WATSON, ESQ.
17
18
19
20
21    The Videographer:
22        SEAN McGRATH:
23            --o0o--
24
25
```

```
                                          Page 5
 1       PALO ALTO, CA, WEDNESDAY, NOVEMBER 20, 2013
 2              10:09 a.m.
 3
 4          THE VIDEOGRAPHER:  Good morning.  This is
 5    the start of Disk No. 1 of the videotaped deposition   10:08
 6    of Jeff Risher in the matter Apple Incorporated vs.
 7    Samsung Electronics Company Limited, et al., in the
 8    U.S. District Court, Northern District of
 9    California, San Jose Division, Case
10    No. 5:11-CV-01846-LHK (PSG).                           10:09
11          This deposition is being held at 950 Page
12    Mill Road in Palo Alto, California, on
13    November 20th, 2013, at approximately 10:09 a.m.
14          My name is Sean McGrath from TSG Reporting
15    Incorporated, and I am the legal video specialist.     10:09
16    The court reporter is Susan Magee in association
17    with TSG Reporting.
18          Will counsel please introduce yourselves
19    starting with the questioning attorney.
20          MR. ZELLER:  Mike Zeller of Quinn Emanuel         10:09
21    for Samsung.
22          MR. SUN:  Nathan Sun for Quinn Emanuel.
23          MR. MUELLER:  Joe Mueller, WilmerHale, on
24    behalf of Apple and Mr. Risher.  And with me is
25    Iain Cunningham, senior litigation counsel from         10:09
```

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 38

5  Q. You're generally aware as you're sitting       10:52
6  here now that there were public reports about the
7  amount of the up-front payment?
8     A. I'm aware that there were public reports
9  speculating as to the amount of the up-front
10 payment.                                            10:52

                                                      10:52
16    BY MR. ZELLER: Q. Well, back in the June
17 of 2011 time period, did you see any of the press as
18 it related to the Apple-Nokia licensing agreement?
19    A. Sure. I mean, did I see it at the time?
20    Q. Yes.                                          10:53
21    A. Yes.

                                                       10:53

Page 39

22    Q. And you're not sure whether you learned the
23 number from reading the agreement?
24    A. I'm not sure. My -- well, I'm not sure.
25    Q. And back in this June of 2011 time period,    10:54

Page 40

1  was it Apple's expectation that the -- all the
2  terms, every single term in that agreement was to be
3  kept confidential?
4     A. I believe the expectation was that -- and
5  I -- again, I wasn't involved in the negotiation or  10:54
6  execution of the agreement itself, including the
7  confidentiality provision, but I'm aware that the
8  parties themselves made statements about the fact
9  that the agreement had been executed, which -- which
10 for us typically even in of itself is treated as a   10:55
11 confidential matter.
12    And in this case, there were -- I know
13 there were statements directly by the parties that
14 the case had been settled and potentially that there
15 had been payments -- that the agreement implicated   10:55
16 some payment being made by Apple to Nokia.
17    Beyond that, the expectation would have
18 been that all of the financial terms and the
19 specifics and all of the other terms of the
20 agreement would be confidential.                     10:55

                                                       10:55

Page 41



TSG Reporting - 877-702-9580

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 118

7  Q. Well, do you know how many people at the
8  SEC --
9  A. No.
10 Q. -- either had it or were entitled to access   01:14
11 to it?
12 A. No.

Page 119

2  Q. Are you aware of any misuse of the
3  Netherlands chart or spreadsheet by anyone?
4  A. I'm not.
5  Q. And by Samsung?   01:15
6  A. I'm not.
7  Q. Directing your attention back to
8  for a moment, which is
9  A. Yes.
10 Q. Did Apple contact the            or   01:15
13 A. I don't know, but I would doubt it.
    Q. Did Apple do anything in response to
                                            01:16
16 A. Not to my knowledge.
17 Q. To your knowledge, did Nokia?
18 A. I don't know.
19 Q. Are you aware of any harm that Apple
20 suffered as a result of the information here in the   01:16
23     MR. ZELLER: That's all I have for you.
24 Thank you very much for your time.
25     MR. MUELLER: So I have a few questions.   01:16

Page 120

1  Maybe we can switch seats just so we're not --
2      MR. ZELLER: Sure, sure. You want to go
3  off the record to do that or --
4      MR. MUELLER: Sure. Why don't we go off
5  record for a minute.   01:16
6      THE VIDEOGRAPHER: The time is 1:16 p.m.,
7  and we are off the record.
8      (Discussion off the record.)
9      THE VIDEOGRAPHER: The time is 1:17 p.m.,
10 and we are on the record.   01:17
11
12     EXAMINATION BY MR. MUELLER
13
14 Q. Mr. Risher, I just have a few questions for
15 you. The first is I'd like to return to your own   01:17
16 experience at Apple, and first I want to return to
17 the period in which you were working in litigation.
18 Do you have that in mind?
19 A. Yes.
20 Q. And that was the period from when you   01:17
21 joined Apple until July of 2013; correct?
22 A. Correct.
23 Q. In that period can you give us a rough
24 ballpark estimate as to how many cases you worked
25 on? Order of magnitude?   01:17

Page 121

1  A. Hundreds.
2  Q. And you're familiar with the concept of
3  protective orders?
4  A. Very.
5  Q. Were those routine in the cases you worked   01:18
6  on?
7  A. Yes.
8  Q. Does Apple take protective orders
9  seriously?
10 A. Yes.   01:18

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 122

9  Q. I want to focus on the subject of license
10 agreements.                                    01:19
11     Did you have occasion over the years to
12 deal with the production of Apple license agreements
13 in litigation?
14  A. Sure. We routinely -- we are largely a
15 defendant and particularly in patent cases, and we    01:19
16 routinely are asked by the plaintiffs in those cases
17 to produce in many cases all of our licensing,
18 whether it's relevant to their patent or not.
19     We try to narrow that down, but where we
20 do -- where we are required to produce information,   01:20
21 we are very steadfast in only producing it under a
22 protective order for certain and wherever and
23 whenever possible on an "outside attorneys' eyes
24 only" basis so that other parties themselves can't
25 see the contents of our licenses.                01:20

Page 123

1  Q. And that's your policy across all cases?
2  A. Correct.

19     MR. ZELLER: Leading.
20     BY MR. MUELLER: Q. Now, across all the   01:21
21 cases you worked on yourself in your time in
22 litigation, are you aware of any instance in which
23 any license was produced absent the confidentiality
24 of a protective order?
25  A. I can't think of any. Well -- no, I can't   01:21

Page 124

1 think of any.
2     I was pausing on the notion that there
3 might be third-party licenses that we have that
4 don't contain any confidentiality provisions in them
5 so they're not actually confidential, and those    01:21
6 would have to be -- they would still be produced
7 under a protective order in every instance, so in
8 our view -- and we would still, to the extent that
9 they were our information, we would still attempt to
10 designate them at the highest level of           01:22
11 confidentiality that was appropriate for that
12 document.
13  Q. And that was the policy that you helped
14 supervise?
15  A. Correct.                                 01:22
16  Q. And execute?
17  A. Correct.
18  Q. And was that policy in place in the period
19 after the execution of the Apple-Nokia agreement?
20  A. It was.                                  01:22

                                                01:22

Page 125



CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 126

```
 1      Q.  And again, you held positions including
 2   director of patent litigation?
 3      A.  Correct.
 4      Q.  Director of commercial litigation?
 5      A.  Correct.                              01:24
 6      Q.  Director of litigation?
 7      A.  Yes.
 8      Q.  Up until July of 2013?
 9      A.  Yes.
10      Q.  And I'll repeat my question.          01:24
11          Any instance when you had any of those
12   roles in which the Apple-Nokia agreement was
13   produced in anything other than the highest level of
14   confidentiality?
15      A.  Not that I'm aware of.                01:24
```

Page 127

Page 128

Page 129

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY



22  Q. Now, to be clear, Mr. Risher, are you privy
23  to any of the facts concerning Samsung's compliance
24  with the protective order in this case?
25  A. I am not.                                01:30

TSG Reporting - 877-702-9580