HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:  January 30, 2014<br>Time:  1:30 p.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

   PLEASE TAKE NOTICE that on January 30, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Lucy Koh in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiff Apple will move, and hereby does move, for an award of $15,736,992 in attorneys' fees against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, Inc.

   This motion is based on this notice of motion and supporting memorandum of points and authorities; supporting declarations filed herewith and exhibits attached thereto; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.  The parties' counsel met and conferred regarding Apple's request, as set out in the accompanying Declaration of Nathan Sabri, but Samsung has not stipulated to Apple's request.

Dated: December 5, 2013    MORRISON & FOERSTER LLP


         By: */s/  Rachel Krevans*
            RACHEL KREVANS

          Attorneys for Plaintiff
          APPLE INC.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................i

TABLE OF AUTHORITIES ................................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.    INTRODUCTION .........................................................................................1

II.   THE COURT SHOULD AWARD APPLE THE FEES ATTRIBUTABLE
      TO SAMSUNG'S WILLFUL TRADE DRESS DILUTION ..........................2

      A.    Apple Is The Prevailing Party ..........................................................2

      B.    This Case Is Exceptional Under The Lanham Act .............................2

            1.    The jury verdict establishes willfulness .................................3

            2.    The record establishes that Samsung engaged in a willful,
                  deliberate, and calculated effort to gain market share by
                  copying the iPhone, including the iPhone trade dress ............3

      C.    The Court Should Award Apple's Requested Fees Of $15,736,992...................6

            1.    A fee award is warranted ........................................................6

            2.    Apple's requested fees are reasonable ...................................7

                  a.    Apple incurred over $60 million in fees for
                        prosecuting its claims through the two trials, after
                        discounts and reductions ..............................................7

                  b.    Apple seeks only one-third of the fees billed through
                        March 1, 2013, for timekeepers who billed more
                        than $100,000 for work on Apple's claims against
                        Samsung .....................................................................8

III.  CONCLUSION...........................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*,
No. CV 03-0597-PHX-MHM,
2009 U.S. Dist. LEXIS 131813 (D. Ariz. Mar. 31, 2009) ..................................................... 13

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) ............................................................................................ 6

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
915 F. Supp. 2d 1179 (D. Nev. 2013) ......................................................................... 11, 12

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) .......................................................................................... 10

*Gracie v. Gracie*,
217 F.3d 1060 (9th Cir. 2000) ................................................................................... *passim*

*Gucci Am., Inc. v. Pieta*,
No. CV 04-9626,
2006 U.S. Dist. LEXIS 96694 (C.D. Cal. July 17, 2006) ....................................................... 8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................................................ 8

*Horphag Research Ltd. v. Garcia*,
475 F.3d 1029 (9th Cir. 2007) ........................................................................................ 2, 7

*Lahoti v. Vericheck, Inc.*,
636 F.3d 501 (9th Cir. 2011) .......................................................................................... 3, 4

*Mattel, Inc. v. MGA Entm't, Inc.*,
No. CV 04-9049,
2011 U.S. Dist. LEXIS 85998 (C.D. Cal. Aug. 4, 2011)..................................................... 13

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013) ....................................................................................... 13

*Nat'l Prods. v. Gamber-Johnson LLC*,
449 Fed. Appx. 638 (9th Cir. 2011)................................................................................... 3

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
692 F.2d 1272 (9th Cir. 1982) .......................................................................................... 7

*San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*,
568 F.3d 725 (9th Cir.2009).............................................................................................. 2

*Societe Civile Succession Richard Guino v. Beseder Inc.*,
  No. CV 03-13-10,
  2007 U.S. Dist. LEXIS 83782 (D. Ariz. Oct. 30, 2007) .......................................................... 12

*Spalding Labs., Inc. v. Ariz. Biological Control, Inc.*,
  No. CV 06-1157,
  2008 U.S. Dist. LEXIS 56100 (C.D. Cal. May 29, 2008)....................................................... 12

*Takeda Chem. Indus. v. Mylan Labs.*,
  549 F.3d 1381 (Fed. Cir. 2008) ........................................................................................ 13

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011).............................................................................................. 2

**STATUTES**

15 U.S.C.
  § 1125(c) ............................................................................................................................ 2
  § 1117(a) ...................................................................................................... *passim*

35 U.S.C. § 285 ....................................................................................................................... 13

**OTHER AUTHORITIES**

Fed. R. Civ. Proc.
  Rule 50 ............................................................................................................................... 1
  Rule 52 ............................................................................................................................... 1
  Rule 54 ............................................................................................................................... 1
  Rule 59 ............................................................................................................................... 1
  Rule 60 ............................................................................................................................... 1

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2        Apple brings this motion and the accompanying bill of costs now, because the parties

3   were unable to reach agreement on an extension of time for Apple's Rule 54 filings, and thus

4   Apple must comply with Rule 54's deadlines.  Recognizing that the Court will be presented with

5   the parties' Rule 50, 52, 59, and 60 motions in this same time period, Apple will count this

6   motion as part of the 40-page limit the Court set for those motions.

7   **I.     INTRODUCTION**

8        Under any measure, this was an exceptional case.  The evidence that Samsung deliberately

9   copied every aspect of Apple's revolutionary iPhone product was overwhelming.  Apple

10  prevailed on one or more claims of trade dress dilution or patent infringement against 26 of 28

11  accused products.  A jury found that Samsung willfully diluted Apple's protected trade dresses

12  and willfully infringed five of the seven asserted patents.  The original trial and partial damages

13  retrial juries awarded Apple $930 million for Samsung's violation of Apple's IP rights.  Apple

14  also scored a complete victory in its defense of Samsung's claims.  Given the high stakes in this

15  head-to-head battle of what are now the two leading competitors in the U.S. smartphone market,

16  the case garnered international press attention.

17       Samsung's willful, deliberate, and calculated copying of Apple's iPhone makes this an

18  "exceptional case" under Section 1117(a) of the Lanham Act.  The record conclusively

19  establishes that, once the iPhone became a spectacular success and Samsung's smartphones

20  became far less desirable, Samsung made a calculated decision to capture market share by

21  copying the look and features of the iPhone.  After a thorough study of the iPhone, Samsung gave

22  126 "Directions for Improvement" to make Samsung's inferior phone in development look and

23  operate like the iPhone.  (PX44.)  Samsung carried out those directions without making any effort

24  to identify and avoid violating Apple's IP rights.  Samsung's efforts to compete against Apple by

25  misappropriating Apple's own IP had their intended effect—Samsung's sales of its infringing and

26  diluting phones has increased its market share dramatically.  Given Samsung's blatant disregard

27  of Apple's IP rights, Apple should not be forced to bear the full expense of prosecuting its claims.

28       This motion addresses Apple's request for attorneys' fees under the Lanham Act.  Apple

1    seeks $15,736,992, which is less than one-third of the fees billed through March 1, 2013—the

2    date of the last order on motions arising from the first trial.  Apportioning only one-third of the

3    fees incurred to Apple's intertwined trade dress and design patent claims is conservative, as these

4    claims were the focus of most of the parties' attention throughout the case.  In fact, *both parties*

5    spent twice as much time on design/trade dress witnesses as utility patent witnesses at trial.

6    **II.    THE COURT SHOULD AWARD APPLE THE FEES ATTRIBUTABLE TO
         SAMSUNG'S WILLFUL TRADE DRESS DILUTION**

7

8        Section 1117(a) of the Lanham Act addresses remedies for willful trade dress dilution in

9    violation of 15 U.S.C. 1125(c), as well as for other Lanham Act violations, including

10   infringement of registered and unregistered trademarks or trade dress, and false advertising.

11   15 U.S.C. § 1117(a).  The statute permits an award of reasonable attorneys' fees to the prevailing

12   party in "exceptional cases."  *Id*.  As shown below, Apple is the prevailing party, this case is

13   exceptional, and Apple should be awarded the reasonable attorneys' fees it requests.

14       **A.    Apple Is The Prevailing Party**

15       The jury's verdict and damage award clearly make Apple the prevailing party in this case

16   as a whole and in its Lanham Act claims in particular.  (Dkt. No. 1931 at 11-12 (verdict of willful

17   dilution of Apple's registered iPhone trade dress and unregistered iPhone 3G trade dress).)  A

18   party need not prevail on all of its claims to be the prevailing party.  *See, e.g.*, *San Diego Police*

19   *Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 741 (9th Cir. 2009).

20       **B.    This Case Is Exceptional Under The Lanham Act**

21       Although § 1117(a) does not define "exceptional," the Ninth Circuit has repeatedly held

22   that exceptional cases include those involving "fraudulent, deliberate or willful" conduct.

23   *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1039 (9th Cir. 2007) (affirming fee award

24   under § 1117(a) in trade dress dilution case); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir.

25   2000) ("generally a trademark case is exceptional for purposes of an award of attorneys' fees

26   when the infringement can be characterized as malicious, fraudulent, deliberate, or willful")

27   (internal quotation marks omitted); *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820,

28   832 (9th Cir. 2011) (court erred by denying exceptional case status based solely on relief awarded

1   to prevailing plaintiff; court instead must "weigh the unlawfulness of defendants' conduct").

2          Applying that standard, the Ninth Circuit has affirmed exceptional case findings under

3   § 1117(a) based on jury verdicts of willfulness.  *See, e.g.*, *Gracie*, 217 F.3d at 1068 (affirming

4   exceptional case determination based on willful infringement verdict); *Nat'l Prods. v. Gamber-*

5   *Johnson LLC*, 449 Fed. Appx. 638, 639 (9th Cir. 2011) (non-precedential) (affirming

6   "exceptional case[s]" finding based on jury's finding of deliberate infringement).

7          The Ninth Circuit also has looked more broadly to address a defendant's wrongful

8   conduct, including "deliberate and calculated" attempts to take advantage of a plaintiff's IP rights.

9   *Horphag*, 475 F.3d at 1039 (affirming exceptional case finding in trademark dilution case where

10  defendant "made deliberate and calculated attempts to confuse" its product with plaintiff's); *see*

11  *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510-11 (9th Cir. 2011) (affirming exceptionality under

12  § 1117(a) in light of pattern and practice of "disregard for . . . trademark rights," "bad faith" and

13  "abusive litigation practices").

14         Here exceptionality is established both by the jury's finding of willful dilution and

15  Samsung's deliberate and calculated strategy of copying Apple's iPhone.

16                      **1.      The jury verdict establishes willfulness**

17         The jury found that Samsung's dilution of Apple's registered iPhone trade dress and

18  unregistered iPhone 3G trade dress was willful.  (Dkt. No. 1931 at 14.)  This Court has ruled that

19  the jury's finding was supported by substantial evidence in the record, citing evidence "that

20  Samsung viewed the iPhone as revolutionary (PX36.20), and that Samsung attempted to create

21  similar products (PX44)."  (Dkt. No. 2220 at 14.)

22                      **2.      The record establishes that Samsung engaged in a willful, deliberate,
                                  and calculated effort to gain market share by copying the iPhone,
23                                including the iPhone trade dress**

24         When Apple introduced the iPhone in 2007, Samsung initially continued to make phones

25  as it always had.  (PX3A.1-2.)  But Samsung later changed its tune, after it became convinced that

26  the iPhone was phenomenally successful while Samsung's sales lagged behind.  As detailed

27  below, Samsung fought back with a deliberate strategy of copying every aspect of the iPhone—

28  including the whole look of the iPhone, which is the trade dress—without making any effort to

1    avoid Apple's protected IP.

2          Soon after Apple released the iPhone, Samsung's LSI division—which manufactured

3    components for Apple—analyzed the iPhone.  Their report ranked the iPhone first in a list of

4    "four key factors that we expect will shape handsets in the coming five years."  (PX34.13.)  It

5    also concluded that the iPhone's "[b]eautiful design" and "[e]asy and intuitive UI" were among

6    the key iPhone "[s]uccess [f]actors" and that copying them would be "easy."  (PX34.38.)  In

7    2008, Samsung hired consultants to assess the iPhone's impact.  The consultants reported that

8    "pundits" and "iPhone users" alike considered the iPhone "a revolution."  (PX36.)

9          Samsung's phone sales fell dramatically as iPhone sales soared.  (Dkt. No. 1839 at

10   2044:17-18 (Musika testimony that "Samsung was losing market share during the period prior to

11   2010").)  By February 2010, carriers were pressuring Samsung to "make something like the

12   iPhone."  (PX40.2.)  Samsung executives concluded that Samsung was suffering a "crisis of

13   design" and that the difference between the iPhone and the products Samsung had in development

14   was "the difference between heaven and earth."  (PX40.5.)

15         Samsung responded by preparing a 138-page "Relative Evaluation Report," which

16   contained 126 "Direction[s] for Improvement" to make Samsung's phone like the iPhone.

17   (PX44.)  The Relative Evaluation Report compared virtually every aspect of the iPhone with the

18   Samsung phone then in development, each time finding Samsung's phone wanting and each time

19   directing that Samsung's phone be changed to resemble the iPhone.  Samsung acted in complete

20   disregard of Apple's IP—*there is not a shred of evidence in the record to suggest that Samsung*

21   *made any effort to determine whether the various iPhone features were protected, much less to*

22   *avoid violating Apple's IP rights*.  Instead, Samsung forged ahead and followed the Report's

23   directives to make Samsung's phone like the iPhone in 126 ways.  All of those copying directives

24   should be considered—not only those directly related to the IP in suit—as exceptional case

25   findings and fee awards under § 1117(a) look to the totality of a defendant's conduct.  *See*, *e.g.*,

26   *Lahoti*, 636 F.3d at 510-11 (addressing pattern and practice of "disregard for . . . trademark

27   rights," "bad faith" and "abusive litigation practices").

28         Samsung's intensive effort produced the Galaxy S i9000, which the press called "very

iPhone 3GS-like." (PX6.)  Consistent with the Relative Evaluation Report's copying directives, the Galaxy S i9000 copied the iPhone industrial design (PX3 (comparing Samsung smartphones before iPhone to Samsung smartphones after iPhone)) and copied the iPhone home screen, down to the shading on the icons (PX44.131 (comparing iPhone icons with "[L]ight used . . . gives a luxurious feel" to GT-i9000 icons in development and concluding "[I]nsert effects of light for a softer, more luxurious icon implementation"); PX35 ("iPhones icons to are colorful and vibrant, however they are in contained square which appear more organized and consistent.").  The Galaxy S i9000 also copied numerous iPhone features, including interface features claimed in the patents-in-suit (PX36 ("Lists bounce, icons flitter – the iPhone has a sense of whimsy"); PX38 ("Adopt Double-Tap as a supplementary zooming method . . . .  The UX of iphone can be used as a design benchmark."); PX44.58 (comparing iPhone "Double Tap" to S1 in development, "Double Tap zoom in/out function needs to be supplemented"); PX46.66 (comparing iPhone "bounce" to Behold3 in development, "Provide a fun visual effect when dragging a web page"); PX57.19 (lack of "Fun, Wow Effect" is "Critical" and concluding "[B]ounce effect is scheduled to be reviewed"); PX186.1 ("there is no latex effect of having the screen follow along and then returning when you are moving past the edge. (Refer to the iPad)"); PX195.1 ("With regards to bounce, we used the Mass Spring Damper model which was modeled after the actual physical effect and obtained the bounce effect that is similar to the iPad[.]").)

In August 2010, immediately after Samsung introduced its Galaxy S i9000 and Vibrant smartphones, Apple met with Samsung and explicitly told Samsung to stop copying Apple's iPhone "patents and designs."  (PX52 (Apple August 2010 presentation); PX201 at 31:15-16; 31:18-20; 33:21-24; 37:21-38:05 (testimony of Jun Won Lee that Apple raised Samsung's infringement of "Apple phone's patents and design").)  Apple pointed out the similarities between the iPhone design (protected by the trade dress and the D'677, D'087, and D'305 patents) and the Galaxy S i9000's design.  (PX52.17-19; Dkt. No. 1695 at 1958–1962 (testimony of Boris Teksler regarding Apple's presentation to Samsung in August 2010 which included discussion of similarities of iPhone and Galaxy S i9000).)  Yet Samsung continued to introduce phones that copied the iPhone, including the Galaxy S Vibrant, the Galaxy S Fascinate, the Galaxy S

1    Mesmerize, the Galaxy S Showcase, and the Galaxy S 4G.  This last product was introduced in

2    February 2011, six months after the August 2010 meeting, and was sold until at least June 2012.

3    The jury found it diluted Apple's registered iPhone trade dress and unregistered iPhone 3G trade

4    dress and infringed every one of Apple's patents-in-suit.   This phone alone sold over 1.45 million

5    units and generated over $473 million in revenues for Samsung in the U.S.  (JX1500).

6          With these and other diluting and infringing products, Samsung flooded the market with

7    over 21 million copied smartphones during the two years prior to June 30, 2012.  Samsung's

8    strategy of copying the iPhone to boost its smartphone sales succeeded:  Between June 2010,

9    when the first Galaxy S phone was introduced, and June 30, 2012, Samsung's U.S. market share

10   jumped six-fold from 5% to above 30%.  (Dkt. No. 1982-2 ¶ 30.)  As Julie Davis testified, 90% of

11   the dramatic increase in Samsung's U.S. smartphone market share in the third quarter of 2010

12   was due to sales of infringing phones.  (Dkt. No. 2840 at 719:9-721:3 (discussing PDX100.8).)

13          Samsung's market share gain eroded Apple's position as the market leader.  Samsung's

14   successful strategy has been to "blunt" and "undercut" Apple using the Galaxy products to take

15   the leading position in the U.S. smartphone market.  (PX62.11-15.)   In February 2012, Samsung

16   concluded that as a result of its own rapid growth in market share, the U.S. smartphone market

17   was "becoming a two horse race between Apple & Samsung."  (PX60.8.)

18          **C.**     **The Court Should Award Apple's Requested Fees Of $15,736,992**

19                 **1.**     **A fees award is warranted**

20          A district court has discretion as to whether to award fees in an exceptional case.

21   *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (reviewing

22   decision to award fees under § 1117(a) for abuse of discretion).  The same factors that render a

23   case exceptional also support an award of fees.  *See, e.g., id.* at 1219 (no abuse of discretion in

24   awarding fees when court considered "willful, deliberate infringement" of a mark "similar to that

25   of its competitor").  Indeed, where a jury has returned a willfulness finding, arguments against an

26   award of fees are "difficult to advance successfully."  *Gracie*, 217 F.3d at 1068.  That is because

27   the award of fees to the prevailing party "flows quite naturally from the jury's finding of willful

28   infringement and the legal standard for 'exceptional cases' under § 1117."  *Id.*

1    The Court should award Apple fees in this exceptional case.  Awarding fees to Apple

2  "flows quite naturally" from the jury's willfulness verdict as well as Samsung's extensive record

3  of willful, deliberate, and calculated decisions to copy the iPhone, in blatant disregard for Apple's

4  IP, discussed above.  Courts routinely award fees, and the Ninth Circuit affirms fee awards under

5  § 1117(a), based on evidence that a defendant's conduct was willful, deliberate, or calculated.

6  *See*, *e.g.*, *Gracie*, 217 F.3d at 1068 (affirming district court's decision to award fees based on

7  willful infringement); *Horphag*, 475 F.3d at 1039 (affirming award of fees for trademark dilution

8  where defendant "made deliberate and calculated attempts to confuse" its product with

9  plaintiff's); *Nat'l Prods.*, 449 Fed. Appx. at 639 (affirming fees award when sufficient evidence

10  supported jury's finding of deliberate infringement); *see also Playboy Enters., Inc. v. Baccarat

11  Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982) (reversing denial of fees where defendants

12  were "not innocent infringers," but "premeditatedly sought" out infringing behavior, and noting

13  that exceptional case fees "[were] specifically directed towards eliminating such blatant

14  activity").

15              **2.        Apple's requested fees are reasonable**

16                   **a.        Apple incurred over $60 million in fees for prosecuting its
                                 claims through the two trials, after discounts and reductions**
17

18    Apple and its counsel from Morrison & Foerster LLP ("M&F"), who prosecuted its claims

19  against Samsung, have taken numerous steps to ensure that the fees addressed in this motion are

20  reasonable, as detailed in the accompanying declarations of Michael Jacobs and Rachel Krevans.[1]

21  Among other things, M&F attorneys carefully review each invoice before sending it to Apple to

22  confirm that it reflects time appropriately charged to Apple and complies with the combination of

23  M&F's and Apple's rigorous billing requirements for this case.  (Jacobs Decl. ¶ 259.)  Apple's in-

24  house attorneys managed this case to a very disciplined budget.  (*Id.* ¶ 258.)  For purposes of this

25  motion, Apple included only the fees it incurred for timekeepers who billed more than $100,000

26

27        _____

          [1] This motion discusses only fees that Apple incurred in prosecuting its claims; no fees
28  from Apple's successful defense against Samsung's claims are included.

1   in this case, thereby eliminating fees from timekeepers who provided meaningful work but did

2   not play a substantial ongoing role in the case.  (*Id.* ¶ 60.)  Apple made further reductions in the

3   amounts of fees in connection with this motion to be conservative.  (*Id.* ¶ 250.)  As a result of all

4   of these efforts and reductions, the hours underlying the fees at issue are reasonable.

5       The billing rates for the fees at issue also are reasonable, and reflect substantial discounts.

6   No M&F attorney billing to this matter charged over ███ per hour, and the rest were well below

7   that number.  (*Id.* Ex. A.)  The rates are within the ranges of the American Intellectual Property

8   Law Association Economic Survey and are generally less than the rates that Samsung has paid for

9   lawyers at Quinn Emanuel with comparable experience.  (*Id.* ¶¶ 251-55 & Ex. A.)

10      Applying these parameters, Apple has paid or expects to pay M&F approximately $60

11  million for its work on this case through the damages retrial.  (Krevans Decl. ¶ 6.)  Apple also has

12  paid or expects to pay approximately $2 million to Wilmer Hale for its fees in the damages retrial,

13  again counting only timekeepers who billed more than $100,000 to the case.  (Selwyn Decl. ¶¶ 2,

14  4.)  In total, using these parameters, Apple has incurred over $60 million in fees for prosecuting

15  its claims against Samsung.

16          **b.      Apple seeks only one-third of the fees billed through March 1,
                     2013, for timekeepers who billed more than $100,000 for work
17                   on Apple's claims against Samsung**

18      Section 1117(a) permits recovery of fees for successful Lanham Act claims or those

19  "inextricably intertwined" with such claims.  *Gracie*, 217 F.3d at 1069.  Claims that are "based on

20  similar factual bases and legal theories are related for the purposes of determining a fee award."

21  *Gucci Am., Inc. v. Pieta*, No. CV 04-9626, 2006 U.S. Dist. LEXIS 99694, at *7 (C.D. Cal. July

22  17, 2006).  Work that "involve[s] a common core of facts" "cannot be viewed as a series of

23  discrete claims."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

24      Apple's trade dress and design patent claims are inextricably intertwined and involve a

25  common core of facts.  Apple's unregistered iPhone 3G trade dress has the following elements:

26      • a rectangular product with four evenly rounded corners;

27      • a flat clear surface covering the front of the product;

28      • the appearance of a metallic bezel around the flat clear surface;

- a display screen under the clear surface;

- under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen;

- when the device is on, a row of small dots on the display screen;

- when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and

- when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

(Dkt. No. 75 ¶ 59.) Apple's registered iPhone trade dress includes a picture and a description of the icons.

These trade dresses are precisely what is captured by Apple's design patents at issue:

| Registered Trade Dress | D'305 patent | D'677 patent | D'087 patent |
|---|---|---|---|
|  |  |  |  |

Apple's design experts and percipient witnesses testified fluidly about both Apple's design patent and trade dress claims. For example, Apple's expert Peter Bressler testified at trial about the D'087 and D'677 design patents as well as the elements of the iPhone trade dress "that relate primarily to the industrial design of the device itself." (Dkt. No. 1611 at 1091:15-24 (discussing PDX26.18, elements of iPhone trade dress).) Similarly, Apple's expert Susan Kare testified about the D'305 patent as well as the elements of the iPhone trade dress that also relate to the iPhone home screen and icons. (Dkt. No. 1612 at 1389:11-18 (discussing D'305 patent and Apple's registered iPhone trade dress).) Christopher Stringer, who is named as an inventor on the

1    D'087 and D'677 patents, testified about Apple's design process and investment in design, which

2    is highly relevant to Apple's trade dress claims.  Thus, the work Apple's counsel performed

3    relating to designs was relevant to Apple's trade dress claims, although it also related to other

4    design IP.  Apple may, therefore, recover for all its fees related to iPhone trade dress and design.

5    In a case of this magnitude, with various claims with differing degrees of overlap, courts

6    may apportion fees based on a high-level consideration of the percentage of the case involving the

7    Lanham Act claims or those inextricably bound to them.  *See* McCarthy on Trademarks § 30:103

8    ("When there is an overlap in the attorneys' work expended between the 'exceptional' Lanham

9    Act claims and nonattorney's fee recoverable claims, it is appropriate for the court to reduce a

10   total attorney's fee amount by a percentage which represents work on the non-Lanham Act

11   claims.").  This is especially true when courts consider "voluminous fee application[s]."  *Gates v.*

12   *Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).  In those cases, the court need not perform an

13   "hour-by-hour analysis of the fee request."  *Id.*  Instead, "across-the-board percentage cuts" may

14   be used to reduce unrecoverable fees.  *See id.*  Determining an "*exact* percentage" of the fees

15   attributable to Lanham Act claims is unnecessary so long as there is "some attempt," even if

16   "imprecise[]," to account for the unrecoverable fees.  *Gracie*, 217 F.3d at 1069 (emphasis added).

17   Apple has conservatively allocated as recoverable under the Lanham Act only one-third of

18   fees billed through March 1, 2013, for timekeepers who billed more than $100,000 for work on

19   Apple's claims against Samsung.  Broadly, Apple's offensive case was split across three

20   substantive areas:  phone design (which included patents on the iPhone design as well as iPhone

21   trade dress rights), tablet design, and utility patents.  (Krevans Decl. ¶ 8.)  But throughout the

22   case, the parties' litigation of Apple's claims against Samsung focused a disproportionate amount

23   of time on the design issues.  (*Id.* ¶¶ 9-11.)  Apple's Amended Complaint devoted a substantial

24   amount of attention to Samsung's copying of Apple's designs, including numerous side-by-side

25   design comparisons and discussion of Samsung's copying.  (Dkt. No. 75.)  Samsung's 22-page

26   trial brief devoted over nine pages to Apple's designs; by contrast, it spent just two-and-a-half

27   pages on utility patents.  (Dkt. No. 1322 at 3-15.)  Both parties served many more expert reports

28   relating to design/trade dress issues than to utility patents—nine design/trade dress experts

1    compared to six utility patent experts for Apple; and eight design/trade dress and five utility

2    patent experts for Samsung. (Krevans Decl. ¶ 10.) Apple's trial brief devoted the vast majority

3    of its fourteen-page discussion of Samsung's violation of Apple's intellectual property rights to

4    Apple's designs/trade dress, with only two pages on utility patents. (Dkt. No. 1323 at 3-15.)

5         Consistent with this focus, at trial, Apple presented seven witnesses who were entirely or

6    predominantly relevant to design issues (including trade dress), and three specific to its utility

7    patents. (Krevans Decl. ¶ 11.) In addition to Mr. Bressler, Ms. Kare, and Mr. Stringer, who as

8    noted above, discussed both trade dress and design patent issues, some of these witnesses

9    addressed issues related solely or primarily to trade dress. Dr. Russell Winer testified "on the

10   distinctiveness and fame of the Apple trade dress elements, and . . . the infringement and dilution

11   [of] the Apple brands." (Dkt. No. 1612 at 1497:17-22.) Hal Poret testified about consumer

12   surveys he designed and conducted "to determine whether or not the iPhone and the iPad trade

13   dress have acquired secondary meaning." (*Id.* at 1577:17-20.) Kent van Liere also testified about

14   two trade dress-related surveys, one that measured "the extent to which consumers associate the

15   look and the design of Samsung Galaxy phones with iPhone" and one that measured consumer

16   confusion regarding tablets. (Dkt. No. 1695 at 1691:13-22.) And a significant portion of the

17   testimony of Phil Schiller, Apple's Senior Vice President of Worldwide Marketing, was devoted

18   to the marketing, advertising, and fame of Apple's brand and designs, as well as the harm to

19   Apple from Samsung's dilution of the Apple brand. (Dkt. No. 1610 at 597-611, 618-665.)

20        Perhaps the best evidence of the importance of the design and trade dress issues, in a trial

21   where time was the parties' most precious commodity, was how much time each side chose to

22   spend on these issues. Totaling the trial time that each side spent on the design/trade dress

23   witnesses and utility patent witnesses, *each party* spent twice as much time on design/trade dress

24   as it did on utility patents. (Krevans Decl. ¶¶ 11-12.)

25        Based on all of these facts, allocating one-third of fees to Apple's successful Lanham Act

26   claims is eminently reasonable. In *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F.

27   Supp. 2d 1179 (D. Nev. 2013), the district court awarded fees under § 1117(a) using a similar

28   methodology to that advanced here by Apple. Although that plaintiff's successful Lanham Act

1   claim was only one of five asserted claims, the court rejected defendant's proposal to simply

2   award one-fifth of the fees as not a "fair apportionment." *Id.* at 1189.  The court reasoned that

3   "[m]ost of the fees related to discovery and much of the other work" would have been incurred

4   whether there was a single, or many, claims. *Id.*  Taking into consideration the "relative time and

5   resources devoted to the various claims," the court apportioned *sixty percent* of plaintiff's hours

6   to the Lanham Act claim through summary judgment. *Id.*  After summary judgment, when only

7   the Lanham Act and a state unfair competition claim remained, the court allocated *seventy*

8   *percent* of the hours to the Lanham Act claim, noting that a "fifty-fifty split" would be unfair. *Id.*

9   at 1189-90.

10          Like *Fifty-Six Hope Road*, other courts in this circuit have apportioned a similar, or even

11  significantly higher, percentage of fees for Lanham Act claims when other claims were asserted

12  than the one-third that Apple seeks here. *See, e.g., Spalding Labs., Inc. v. Ariz. Biological*

13  *Control, Inc.*, No. CV 06-1157, 2008 U.S. Dist. LEXIS 56100, at *16-17 (C.D. Cal. May 29,

14  2008) (reducing fees by 10% when Lanham Act claim was one of nine claims); *Societe Civile*

15  *Succession Richard Guino v. Beseder Inc.*, No. CV 03-13-10, 2007 U.S. Dist. LEXIS 83782, at

16  *43-44 (D. Ariz. Oct. 30, 2007) (awarding one-third of fees when Lanham Act claim was one of

17  three claims).

18          By seeking only one-third of its fees from timekeepers who billed more than $100,000,

19  Apple ensures that it is not recovering fees for its unsuccessful claims concerning the unregistered

20  combination iPhone trade dress or for tablet design.  First, the only differences between the

21  unregistered iPhone 3G trade dress on which Apple did prevail and the combination iPhone trade

22  dress is that the latter lacks two of the iPhone 3G trade dress elements (a metallic bezel around

23  the flat clear surface and a row of small dots on the display screen) and also covers "neutral

24  (black or white) borders" rather than the black borders covered by the 3G trade dress. (*Compare*

25  Dkt. No. 75 ¶ 59 (iPhone 3G trade dress), *with id.* ¶ 63 (combination trade dress).)  Thus, the

26  same work would have been required to address the iPhone 3G trade dress even if the

27  combination trade dress had not been at issue.  The only possible additional work required by

28  having the combination trade dress in the case was whatever might have been required to address

1  "neutral (black or white) borders" in addition to "black borders."  Apple's request for only one-

2  third of fees from timekeepers who billed more than $100,000 ensures that any such minimal fees

3  are not included in its request.

4      Second, phone design by the nature of the complaint was far more the focus of the trial

5  than was tablet design:  19 of the 28 accused products in the first trial were phones accused of

6  infringing Apple's phone design rights, while only three of accused products were tablets accused

7  of infringing Apple's tablet design rights.  Moreover, almost all of Apple's damages request at the

8  first trial was for infringement by accused phones rather than tablets.  Of the $2.75 billion Apple

9  requested at the first trial, only $80.97 million—just 2.9%—was for Samsung's tablets.  (*See*

10  PX25A1.4.)  Asking for only one-third of fees from timekeepers who billed more than $100,000

11  ensures that fees related to tablet design are not included in the fees request.

12      Applying the parameters discussed in the prior section, M&F billed Apple $47,210,976

13  for timekeepers who billed more than $100,000 in this case for their time through March 1, 2013,

14  when the Court issued its last order on motions from the first trial.  (Krevans Decl. ¶ 3.)  One-

15  third of that total is $15,736,992, which Apple requests as its fee award under the Lanham Act.[2]

16  **III.   CONCLUSION**

17      For the reasons stated above, Apple respectfully requests that the Court find this case

18  exceptional and award Apple $15,736,992 in attorneys' fees pursuant to 15 U.S.C. § 1117(a).

19  _____

20  [2] Courts have awarded fees comparable to and far higher than Apple's request.  For
example, a $105.7 million award in a copyright case was upheld on appeal.  *Mattel, Inc. v. MGA
Entm't, Inc.*, No. CV 04-9049, 2011 U.S. Dist. LEXIS 85998 (C.D. Cal. Aug. 4, 2011), *aff'd*, 705

21  F.3d 1108 (9th Cir. 2013).  The Federal Circuit upheld an award of $16.8 million for attorney fees
in a patent case.  *Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *see*

22  *also Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, No. CV 03-0597, 2009 U.S. Dist.
LEXIS 131813, at *41 (D. Ariz. Mar. 31, 2009) (awarding $19 million in fees in patent case).

23      The Patent Act also permits attorneys' fees in "exceptional cases."  35 U.S.C. § 285.

24  Exceptionality may be based on "litigation misconduct; vexatious, unjustified, and otherwise bad
faith litigation; a frivolous suit; or willful infringement."  *Monolithic Power Sys. v. O2 Micro Int'l*

25  *Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013).  Considered together, Samsung's misconduct during
litigation, the jury's finding of willful infringement on five of Apple's seven asserted patent

26  claims, and other aspects of Samsung's litigation tactics render this case "exceptional" within the
meaning of § 285.  Apple separately addresses Samsung's litigation misconduct as a ground for

27  an exceptional case finding under § 285 in proceedings currently before Judge Grewal.  (*See* Dkt.
No. 2838-2.)  Apple also preserves its right to seek fees on other grounds under § 285, including

28  in the event that the Court's finding of no objective willfulness is reversed.

1    Dated: December 5, 2013                MORRISON & FOERSTER LLP

2

3                                           By:  /s/  Rachel Krevans
                                                 RACHEL KREVANS
4
                                            Attorneys for Plaintiff
5                                           APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28