1   HAROLD J. MCELHINNY (CA SBN 66781)      WILLIAM F. LEE
    hmcelhinny@mofo.com                      william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (CA SBN 111664)        WILMER CUTLER PICKERING
    mjacobs@mofo.com                         HALE AND DORR LLP
3   RACHEL KREVANS (CA SBN 116421)           60 State Street
    rkrevans@mofo.com                        Boston, MA 02109
4   ERIK J. OLSON (CA SBN 175815)            Telephone: (617) 526-6000
    ejolson@mofo.com                         Facsimile: (617) 526-5000
5   MORRISON & FOERSTER LLP
    425 Market Street                        MARK D. SELWYN (SBN 244180)
6   San Francisco, California  94105-2482    mark.selwyn@wilmerhale.com
    Telephone:  (415) 268-7000               WILMER CUTLER PICKERING
7   Facsimile:  (415) 268-7522               HALE AND DORR LLP
                                             950 Page Mill Road
8                                            Palo Alto, California 94304
    Attorneys for Plaintiff and              Telephone: (650) 858-6000
9   Counterclaim-Defendant APPLE INC.        Facsimile: (650) 858-6100

10

11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                    SAN JOSE DIVISION

15   APPLE INC., a California corporation,      Case No.    11-cv-01846-LHK (PSG)

16                Plaintiff,                    **DECLARATION OF MICHAEL A.**
                                                **JACOBS IN SUPPORT OF**
17          v.                                  **APPLE'S MOTION FOR**
                                                **ATTORNEYS' FEES**
18   SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation; SAMSUNG               Date:    January 30, 2014
19   ELECTRONICS AMERICA, INC., a New York     Time:    1:30 p.m.
     corporation; and SAMSUNG                  Place:   Courtroom 8, 4th Floor
20   TELECOMMUNICATIONS AMERICA, LLC, a        Judge:   Hon. Lucy H. Koh
     Delaware limited liability company,
21
                  Defendants.
22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Page

3    I.      INTRODUCTION ................................................................. 1

4    II.     OVERVIEW OF SUIT AND THE APPLE LITIGATION TEAM ................................ 1

5            A.     Apple's Claims ......................................................... 3

             i.     Asserted Design Patents ......................................... 3

6            ii.    Asserted Utility Patents ........................................ 4

7            iii.   Trademarks ...................................................... 4

             iv.    Trade Dress ..................................................... 5

8            B.     Written Discovery ...................................................... 6

9            C.     Depositions ............................................................ 7

10           D.     Discovery Disputes ..................................................... 8

                    i.     Samsung was sanctioned for failure to comply with
11                         discovery orders regarding copying documents ................... 9

12                  ii.    Samsung was sanctioned for withholding source code ............ 10

                    iii.   Samsung was sanctioned for withholding financial
13                         information ................................................... 10

14                  iv.    Samsung was sanctioned for untimely disclosure of its
                           theories ..................................................... 11

15                  v.     Samsung was compelled to produce witnesses ................... 11

16           E.     Experts ............................................................... 12

             F.     Motions ............................................................... 13

17           G.     Sealing ............................................................... 14

18           H.     Substantive and Procedural Sub-Teams .................................. 15

19           I.     The Jury Trial and the Jury's Verdict ................................. 18

             J.     Post-Trial Briefing ................................................... 20

20   III.    BIOGRAPHIES AND ROLES OF THE MORRISON & FOERSTER
             TEAM .......................................................................... 21
21
             A.     Lead Trial Counsel .................................................... 21
22
             B.     Partners .............................................................. 24
23
             C.     Of Counsel and Associates ............................................. 41
24
             D.     Paralegals and Other Employees ........................................ 78

25   IV.     MORRISON & FOERSTER'S RATES ARE COMPARABLE TO
             PREVAILING RATES IN THE COMMUNITY FOR LIKE-SKILLED
             PROFESSIONALS. ................................................................ 82
26
     V.      DISCOUNTS, WRITE DOWNS, AND WRITE OFFS. ....................................... 83

27

28

1        I, MICHAEL A. JACOBS, declare as follows:

2        1.     I am a partner with the law firm of Morrison & Foerster LLP, counsel for

3   Apple Inc. ("Apple").  I am licensed to practice law in the State of California.  I have personal

4   knowledge of the matters stated herein or understand them to be true from members of my

5   litigation team or other professionals within Morrison & Foerster.  I make this declaration in

6   support of Apple's Motion for Attorneys' Fees.

## I.     INTRODUCTION

8        2.     Apple submits this declaration, the declaration of Rachel Krevans, and the

9   declaration of Mark Selwyn in support of its motion for attorneys' fees.  As set forth in Apple's

10   motion, Apple is entitled to its reasonable attorneys' fees but at this time requests only a portion

11   of the fees it has incurred in prosecuting this case.  My declaration will focus on the development

12   of the case and the work of the Apple team from inception of the case through April 2013.

13   Rachel Krevans will address in a separate declaration the portion of its fees that Apple requests.

## II.     OVERVIEW OF SUIT AND THE APPLE LITIGATION TEAM

15        3.     Apple filed the Complaint instituting this action on April 15, 2011.  Apple initially

16   asserted 7 utility patents, 3 design patents, iPhone and iPod trade dress rights, iPad trade dress

17   rights, and trademark rights.  Apple filed its Amended Complaint on June 16, 2011, asserting 8

18   utility patents and 7 design patents, as well as trade dress and trademark rights.  Apple accused

19   Samsung's Galaxy mobile phones and tablet computers of infringing on Apple's intellectual

20   property rights, and named 28 specific examples of infringing phones and tablets.  On June 30,

21   2011, Samsung filed counterclaims alleging infringement of 12 utility patents, seeking

22   cancellation of Apple's trade dress and trademark registrations, and seeking declarations of

23   noninfringement and invalidity of Apple's intellectual property rights.

24        4.     The case was hotly contested and heavily briefed.  Before the beginning of the first

25   trial on July 30, 2012, there were 1,456 docket entries (and by the final post-trial ruling on

26   March 1, 2013, the number had increased to 2,270).  The litigation required many lawyers—as

27   listed on the Court's docket, 62 attorneys have appeared to represent Apple and 52 have appeared

28   to represent Samsung.

5.    The case culminated in a three-and-a-half week jury trial.  Due to several rounds of pretrial case narrowing at the Court's direction, trial proceeded, on Apple's claims, as to three utility patents, three phone design patents, one tablet design patent, iPhone trade dress rights, iPad trade dress rights, and 28 accused Samsung products.  After several days of deliberation, the jury found that 26 of the 28 accused Samsung products infringed and/or diluted at least one of Apple's asserted intellectual property rights (the two exceptions were the Intercept, which was accused only of infringing the '163 and '915, and the Galaxy Tab 10.1 (4G LTE), which was accused only of infringing the D'889).  The jury found that Samsung infringed the '381, '163, '915, D'677, ad D'305 patents willfully, and that Samsung diluted Apple's trade dress willfully.  The jury also found that none of Apple's patents was invalid and that Apple's registered iPhone trade dress and unregistered iPhone 3G trade dress were protectable.  The jury found that Apple did not infringe any of Samsung's asserted intellectual property rights.  The jury awarded Apple damages in the amount of $1,049,343,540.

6.    The breadth of work continued with the parties' post-trial motions.  Apple filed a brief regarding non-jury claims; a motion for permanent injunction and damages enhancements; and a motion for judgment as a matter of law, new trial, and amended judgment.  Samsung filed a motion regarding non-jury claims; a motion for judgment as a matter of law, new trial, and/or remittitur; as well as three motions to compel relating to the parties' post-trial motions.  The post-trial motions were so substantial that they led to seven separate orders from December 2012 through March 2013, not counting orders on motions to compel or other ancillary filings: (1) order regarding waiver, equitable estoppel, unclean hands, and unfair competition, (2) order regarding Apple's request for a permanent injunction, (3) order regarding Samsung's allegations of juror misconduct, (4) order regarding Apple's JMOL/new trial motion, (5) order regarding Samsung's JMOL/new trial motion, (6) order regarding damages enhancements, and (7) the order regarding damages that led to a November 2013 damages retrial.

7.    Two law firms represented Apple in this case throughout the time period discussed above.  Broadly speaking, Morrison & Foerster prosecuted the claims brought by Apple, and WilmerHale defended against the counterclaims brought by Samsung.  A brief summary of the

1   claims brought by Apple in this matter and the Morrison & Foerster team that litigated those

2   claims follows.

3        **A.    Apple's Claims**

4        8.      Apple asserted a range of intellectual property rights directed to aspects of

5   smartphones and tablet computers, including design patents, utility patents, trademarks, and trade

6   dress.  Apple described in detail that Samsung exhibited a pattern of copying to make Samsung's

7   products look and work like Apple's products.  Apple noted that Samsung had even copied

8   Apple's distinctive product packaging.  Apple included illustrations throughout the Complaint to

9   demonstrate Samsung's copying efforts, including side-by-side comparisons showing Samsung's

10  products compared to Apple's asserted design patents; Samsung's products compared to Apple's

11  trade dress; and Samsung's icons compared to Apple's icons.

12       **i.    Asserted Design Patents**

13       9.      Apple's amended complaint asserted patent infringement claims based on the

14  following design patents:

15       •   U.S. Patent No. D504,889:  The D'889 patent is directed to the design of a tablet

16           computer.

17       •   U.S. Patent No. D593,087:  The D'087 patent is directed to the design of the

18           iPhone's front face and bezel.

19       •   U.S. Patent No. D604,305:  The D'305 patent is directed to the design of iPhone's

20           graphical user interface.

21       •   U.S. Patent No. D617,334:  The D'334 patent is directed to the design of iPhone's

22           graphical user interface.

23       •   U.S. Patent No. D618,677:  The D'677 patent is directed to the design of iPhone's

24           black front face.

25       •   U.S. Patent No. D622,270:  The D'270 patent is directed to the design of the iPod

26           touch.

27       •   U.S. Patent No. D627,790:  The D'790 patent is directed to the design of iPhone's

28           graphical user interface.

ii.     **Asserted Utility Patents**

10.     Apple's amended complaint asserted patent infringement claims based on the following utility patents:

- U.S. Patent No. 7,469,381: The '381 patent is directed to a feature that informs the user that an edge of an electronic document has been reached.

- U.S. Patent No. 7,864,163: The '163 patent is directed to a feature that allows a user to zoom into and navigate a structured electronic document.

- U.S. Patent No. 7,844,915: The '915 patent is directed to a feature that distinguishes between single-finger scroll and multi-finger gestures.

- U.S. Patent No. 7,663,607: The '607 patent is directed to touchscreen hardware.

- U.S. Patent No. 7,920,129: The '129 patent is directed to touchscreen hardware.

- U.S. Patent No. 7,812,828: The '828 patent is directed to a feature that interprets a user's contacts on a touchscreen.

- U.S. Patent No. 6,493,002: The '002 patent is directed to features in a status bar for computing devices.

- U.S. Patent No. 7,853,891: The '891 patent is directed to timed notification windows for computing devices.

iii.     **Trademarks**

11.     Apple asserted claims for federal trademark infringement (under 15 U.S.C. § 1114), common law trademark infringement, and unfair business practices (under California Business & Professions Code § 17200) based on the following registered trademarks:

- U.S. Registration No. 3,886,196 for an icon that is green in color with a white silhouette of a phone handset arranged at a 45 degree angle and centered on the icon that represents the application for making telephone calls.

- U.S. Registration No. 3,886,200 for an icon featuring a yellow and green sunflower against a light-blue background that represents the application for photographs.

1          • U.S. Registration No. 3,889,642 for an icon that is green in color with a white
2            silhouette of a speech bubble centered on the icon that represents the application
3            for messaging.
4          • U.S. Registration No. 3,889,685 for an icon that features gears against a gray
5            background that represents the application for settings.
6          • U.S. Registration No. 3,886,169 for an icon that features a yellow notepad that
7            represents the application for notes.
8          • U.S. Registration No. 3,886,197 for an icon that features a silhouette of a man on a
9            spiral-bound address book that represents the application for contacts.
10         • U.S. Registration No. 2,935,038 (the "iTunes Eighth Note and CD Design
11           Trademark") for an icon that features a two eighth note and CD logo for iTunes
12           on-line music services.

13    12.    Apple asserted common law trademark infringement and unfair business practices

14    claims (under California Business & Professions Code § 17200) based on the following

15    unregistered trademark:

16         • Purple iTunes Store Trademark (unregistered trademark as shown in U.S.
17           Application Serial No. 85/041,463) for an icon with a purple background color
18           with a white circle and a silhouette of two white eighth notes within the white
19           circle.

20                        **iv.    Trade Dress**

21    13.    Apple asserted claims for federal trade dress infringement (15 U.S.C. § 1114),

22    federal trade dress dilution (15 U.S.C. § 1125(c)), and unfair business practices (under California

23    Business & Professions Code § 17200) based on the following registered trade dresses:

24         • U.S. Registration No. 3,470,983 for the configuration of a handheld mobile digital
25           electronic device.
26         • U.S. Registration No. 3,457,218 for the configuration of a handheld mobile digital
27           electronic device.

28

1            •   U.S. Registration No. 3,475,327 for the configuration of a handheld mobile digital

2                 electronic device.

3        14.      Apple asserted claims for federal false designation of origin and unfair competition

4 (under 15 U.S.C. § 1125(a)), federal trade dress dilution (15 U.S.C. § 1125(c)), and unfair

5 business practices (under California Business & Professions Code § 17200) based on the

6 following unregistered trade dresses:

7            •   iPhone Trade Dress

8            •   iPhone 3G Trade Dress

9            •   iPhone 4 Trade Dress

10           •   iPhone/iPhone 3G/iPhone 4 Trade Dress (aka "Combination Trade Dress")

11           •   iPad Trade Dress

12           •   iPad 2 Trade Dress

13        15.      At the direction of the Court, Apple narrowed its case several times during the

14 course of the litigation, dropping certain claims, patents, and trade dresses.  Ultimately, trial

15 proceeded on the '381, '163, and '915 utility patents; the D'677, D'087, D'305, and D'889 design

16 patents; the '983 trade dress, unregistered iPhone 3G trade dress, and unregistered iPhone

17 combination trade dress; and unregistered iPad/iPad 2 trade dress.

18        16.      In addition to this action, Morrison Foerster represented Apple in other actions in

19 the United States involving utility and/or design patents that Apple has brought against Samsung.

20 *See, e.g.*, *In re Elec. Digital Media Devices & Components*, Inv. No. 337-TA-796 (2012) and

21 *Apple v. Samsung*, Case No. 12-cv-0630-LHK (PSG) (N.D. Cal.).  Work done for each of those

22 cases was recorded using a separate matter number, and although certain depositions and

23 discovery from one or more of those actions were designated for use in this matter, Apple is only

24 seeking fees billed for this matter.

25      **B.**     **Written Discovery**

26        17.      The parties served and responded to extensive written discovery in this action.

27 Including both the offensive and defensive sides of the case, Samsung served 583 requests for

28 production, 89 interrogatories, and 2,518 requests for admission.  Also across both sides of the

1   case, Apple served 694 requests for production, 86 interrogatories, and 1,529 requests for

2   admission.  Given the complexity of the case, individual requests for documents often

3   encompassed a large number of documents, and many interrogatories contained numerous

4   subparts.

5         18.     Samsung produced many documents in Korean but did not provide translations for

6   these documents during discovery.  This required Apple to retain Korean language translators and

7   attorneys with Korean language skills to review them.

8         **C.**    **Depositions**

9         19.     The parties conducted many depositions in this matter.  Across both sides of the

10  case, the parties conducted over 200 depositions, resulting in well over 2,500 deposition exhibits.[1]

11  These included depositions of Apple, Samsung, and third-party witnesses.  Because Samsung

12  generally made its employees available for deposition in the location where they worked, many

13  depositions occurred in or around Seoul, South Korea.  The depositions of most Apple employees

14  were taken in Northern California.  The parties also conducted a substantial number of third-party

15  depositions in locations across the United States.  In all, the parties conducted depositions in

16  South Korea and England, as well as in California, New York, Utah, Texas, Illinois,

17  North Carolina, Oregon, Washington, Virginia, Missouri, Colorado, Massachusetts,

18  Pennsylvania, Georgia, Hawaii, Rhode Island, New Jersey, Florida, and Washington, D.C.

19  Throughout the fact discovery period, there were often numerous depositions across the

20  United States and in South Korea in a single week, and often multiple depositions on a single day,

21  requiring a very large team to accomplish all the necessary discovery.

22        20.     There were a substantial number of documents produced that had to be reviewed

23  and analyzed for depositions.  Selection of documents for depositions required numerous

24  attorneys and a multi-step process.  On average, about one-tenth of the documents produced by

25  _____

26      [1] Because of the scope and complexity of the case, the Court authorized the parties to conduct discovery beyond some of the usual limitations.  For example, the Federal Rules of Civil Procedure limit depositions to ten per side (Fed. R. Civ. P. 30(a)(2)(A)(i)) and those depositions

27  cannot exceed seven hours (Fed. R. Civ. P. 30(d)(1)).

28

Samsung were sourced to a given custodian and flagged by Apple's Korean-language attorneys as potentially useful for the custodian's upcoming deposition.  Before Apple's outside counsel could review the flagged documents and consider them for use in deposition, however, each document had to be translated into English.  On average, each document produced by Samsung contained about 12 pages of text.  Apple's experience was that an informal translation of 12 pages of text suitable for internal use could be prepared in about 45 minutes, but formal translation took much more time.  Translation of documents needed for depositions typically took multiple full-time Korean-language translators several days to complete.  After documents were translated, Apple's outside counsel analyzed and selected the translated Samsung documents for deposition purposes.

21.     For Samsung designers, developers, and marketing custodians, Apple had to piece together from the custodian's files what role (among the multitude of possible roles) he or she played in the design, development, and/or commercialization of products that took several months and sometimes years to plan, design, develop, and launch.  Understanding the development of the infringing features also involved reviewing e-mails and documents containing source code and other technical information.  The review of Samsung's financial information was equally complicated, as data had to be stitched together from several documents before the relevance of financial materials could be determined.  Further, Samsung produced multiple, conflicting versions of certain key financial documents and produced documents in a manner that failed to consolidate the financial information from its Korean and United States operations.  These failures were particularly important in connection with the trade dress case, in which Samsung's profits were an available remedy.

### D.     Discovery Disputes

22.     Apple's discovery costs were further multiplied by Samsung's conduct during discovery.  Samsung forced Apple to file multiple motions to compel, including motions seeking production of copying documents, source code, and financial information.  In several instances, Apple needed multiple orders before Samsung finally complied.

23.     Samsung also pursued extensive discovery on hopeless defenses that it later abandoned, including many arguments regarding the alleged "functionality" of the design patents

and asserted trade dresses.  For example, Samsung demanded depositions of individuals that worked in Apple's model shop or as paint mixers, including Amy Chuang, Chris Harris, Chris Hood, Zack Kamen, Mark Lee, Fred Simon, and Aaron Von Minden.  These depositions required Apple to review tens of thousands of documents.  Samsung insisted that Apple run special searches regarding white iPhone issues, which resulted in Apple reviewing additional thousands of documents totaling many tens of thousands of pages.  White iPhone issues were not raised at trial.  Similarly, Samsung insisted on deposing multiple individuals regarding "drop tests" for the iPhone, including Richard Dinh, Phil Hobson, Chris Prest, Fletcher Rothkopf, Tang Tan, Eric Wang, Wei Chen, and John Ternus.  As a result of these depositions, Apple reviewed over 89,000 documents and 3.6 million pages.  Samsung also insisted that special search terms pertaining to "drop tests" be applied to Apple's documents.  Apple again reviewed thousands of documents totaling nearly 200,000 pages as a result of the "drop tests" search terms, none of which was used at trial.

### i.    Samsung was sanctioned for failure to comply with discovery orders regarding copying documents

24.    On July 1, 2011, Apple moved for a preliminary injunction.  (Dkt. No. 86.)  Soon thereafter, on July 12, 2011, Apple served its first set of discovery requests, seeking documents and facts relating to Samsung's copying.  Samsung objected to the requests as "oppressive and harassing inasmuch as it implies Samsung engaged in copying and other such activity."  (Dkt. No. 249, Motion filed under seal at 3.)

25.    Samsung's production was due on September 12, 2011.  (Dkt. No. 115.)  When the deadline came, Samsung had produced only 15,000 pages of documents, few of which related to design.

26.    Apple moved to compel production of copying documents to support its preliminary injunction motion.  At the hearing on Apple's motion, Samsung told the Court that such documents did not exist:  "[I]n producing our design documents we are not obligated to manufacture documents that don't exist.  They are looking for a smoking gun document, a document that says we copied something from Apple.  We don't have those documents."  (Dkt.

1    No. 277 at 47-48.) Judge Grewal ordered Samsung to produce all documents from the custodial

2    files of Samsung designers of the Samsung products at issue "referencing the Apple products

3    alleged by Apple to embody one or more of the ornamental or utility features claimed in the

4    patents," among other things. (Dkt. No. 267 at 3.) Samsung failed to comply with that order.

5          27.    Apple moved to enforce the Court's order and won. Samsung was again ordered

6    on December 22, 2011 to produce the above documents by December 31, 2011. (Dkt. No. 537

7    at 3.) Samsung produced many additional documents after the second order, even retaining a

8    second e-discovery vendor to assist as the volume of additional production was so high. (Dkt.

9    No. 880 at 6.)

10         28.    Apple then moved for, and was granted, sanctions. Judge Grewal sanctioned

11    Samsung for violating two discovery orders requiring production of design and copying

12    documents. (Dkt. No. 880 at 9.)

13              **ii.    Samsung was sanctioned for withholding source code**

14         29.    Apple served requests for production of documents on October 26, 2011,

15    requesting the production of source code for each version of the accused products. Judge Grewal

16    ordered Samsung to produce source code for all relevant versions of the accused products,

17    including alleged design-around code. On December 22, 2011, the Court granted Apple's Motion

18    to Compel Samsung to produce its accused products' source code no later than December 31,

19    2011. (Dkt. No. 537 at 2-3.) Again, Samsung failed to comply with the Court's Order and Apple

20    moved for sanctions. Judge Grewal found that Samsung clearly violated the Court's order and

21    that sanctions were warranted. The Court ordered preclusive sanctions, noting that "Samsung

22    offer[ed] precisely zero evidence to show that its actions were in good faith, or otherwise

23    justified." (Dkt. No. 898 at 8.)

24             **iii.    Samsung was sanctioned for withholding financial information**

25         30.    Apple also had to seek multiple orders to obtain Samsung's financial information

26    relevant to Apple's showing of damages. Apple propounded Requests for Production as early as

27    August 3, 2011. (Dkt. No. 613 at 19 n.8.) Samsung's responses were inadequate.

28

1    31.    Accordingly, Apple filed a motion to compel on January 11, 2012.  (*Id.*)  The

2    Court directed Samsung to produce the sales and financial information by February 3, 2012.

3    (Dkt. No. 673 at 2.)  Samsung produced a single spreadsheet.  This conduct compelled Apple to

4    move for sanctions.  (Dkt. No. 759.)

5    32.    Acknowledging Samsung's failure to comply with the deadline to produce

6    financial documents, on April 23, 2012, Judge Grewal ordered discovery sanctions.  (Dkt.

7    No. 880.)  In total, Samsung revised its production of sales and financial information six times—

8    on February 3, 10, and 28, March 8 (the close of fact discovery), March 22 and March 29.  On

9    April 16, which was more than a month after the discovery cut-off, Samsung completely

10   overhauled its financial calculation methods immediately prior to the delivery of Mr. Wagner's

11   expert report.

### iv.    Samsung was sanctioned for untimely disclosure of its theories

13   33.    Samsung faced sanctions again as a result of its decision to withhold until after the

14   close of discovery its defenses to Apple's utility and design patent claims.  On November 14,

15   2011, Apple served contention interrogatories seeking disclosure of Samsung's non-infringement

16   and validity theories.  Samsung's response, served on December 19, 2011, was 18 pages of

17   boilerplate and Bates numbers.  On March 19, 2012, nine days after the close of fact discovery,

18   Samsung served a 145-page supplemental response.  Apple moved to strike the portions of

19   Samsung's expert reports relying on these untimely disclosed theories.  (Dkt. No. 939.)

20   Judge Grewal struck those portions of Samsung's expert reports, and the Court affirmed his

21   Order.  (Dkt. Nos. 1144, 1545.)

### v.    Samsung was compelled to produce witnesses

23   34.    Despite Apple's proper notices of deposition, Samsung initially failed to make 23

24   of its employees available for deposition because they were all purportedly "apex" employees.

25   Despite extensive discussions between the parties, Samsung refused to produce many of those

26   employees for deposition, forcing Apple to seek relief from the Court.  The Court ultimately

27   ordered Samsung to produce four of the remaining six Samsung employees at issue, holding that,

28   among other reasons, Samsung had "fail[ed] to articulate any burden or extraordinary

1  circumstance present . . . that would set provide a counter-balance to Apple's showing." (Dkt.

2  No. 850 at 12.)  Apple's original deposition notices coincided with periods of time that

3  Morrison & Foerster attorneys were present in South Korea.  By refusing to initially make these

4  witnesses available, Apple was forced to send its attorneys back to Korea at considerable

5  expense.

6    **E.**  **Experts**

7    35.  The parties exchanged a substantial number of expert reports regarding Apple's

8  affirmative claims in this case.  Specifically, Apple served the following expert reports regarding

9  its claims against Samsung:  Dr. Ravin Balakrishnan (utility patents); Peter Bressler (design

10  patents and trade dress); James T. Carmichael (design patents); Jack C. Goldstein (inequitable

11  conduct); John Hauser (conjoint analysis); Dr. Alan Hedge (design patent and trade dress

12  functionality); Susan Kare (design patents, trademarks, and trade dress); Michel Maharbiz (utility

13  patents); Terry Musika (damages);  Hal Poret (trade dress surveys); Dr. Karan Singh (utility

14  patents);  Dr. Alex Snoeren (utility patents); Dr. Sanjay Sood (trade dress); Henry Urbach (design

15  patents and trade dress); Kent Van Liere (trade dress surveys); and Dr. Russell Winer (trade

16  dress).

17    36.  Many of these reports were particularly lengthy, even for a high technology patent

18  infringement action, because of the number of asserted patents and the number of accused

19  devices.  Although Samsung failed to invalidate a single asserted patent at trial, Samsung asserted

20  vast numbers of allegedly invalidating prior art references and devices in its discovery responses

21  and expert reports, though many were later stricken as untimely.  Apple was required to

22  investigate most or all of this alleged prior art, even the prior art that was not timely disclosed.

23    37.  Samsung served reports from the following experts:  Robert John Anders (design

24  patents), Dr. Trevor Darrell (utility patents), Nicholas Godici (design patents; inequitable

25  conduct), Stephen Gray (utility patents), Dr. Jacob Jacoby (trade dress surveys), Dr. Jeffrey

26  Johnson (utility patents), Michael Kamins (trade dress surveys), Dr. Mark Lehto (design patent

27  functionality), Samuel Lucente (design patents, trademarks, and trade dress), George Mantis

28  (trade dress surveys), Dr. Michael Mazis (trade dress surveys), Christopher Mount (design

patents, trademarks, and trade dress), Itay Sherman (design patents), Dr. R. Sukumar (conjoint analysis), Dr. Andries Van Dam (utility patents), Dr. Brian Von Herzen (utility patents), and Michael Wagner (damages).

38.    The parties deposed each of the other party's experts within a very short expert discovery period (April 17, 2012 to April 27, 2012), which required double, triple, and even quadruple tracking of expert depositions.  Due to time constraints or strategy considerations by either party, certain Apple experts ultimately did not testify at trial.  For example, Samsung elected not to call one of its experts (Dr. Mark Lehto), who had opined that the design patents were invalid because they were "functional."  As a result, Apple did not call its rebuttal expert on this issue (Dr. Alan Hedge).  Similarly, other experts did not testify because certain claims and/or patents were dismissed without prejudice pursuant to the Court's case-narrowing directives.  For example, Apple expert Dr. Alex Snoeren did not testify because the '002 patent was dismissed without prejudice before trial.

### F.    Motions

39.    The parties have engaged in extensive motion practice throughout this action.  For example, including only the period through post-trial motions in connection with the first trial, the parties filed the following motions (many of Apple's motions were necessitated by Samsung's failure to comply with discovery rules and this Court's schedule):

- Apple's Motion for a Preliminary Injunction (Dkt. No. 86);
- Apple's Motions to Compel (Dkt. Nos. 247, 319, 467, 600, 611, 613, 682, 702, 723, 736, 815, 2082);
- Samsung's Motions to Compel (Dkt. Nos. 56, 195, 205, 283, 346, 483, 603, 604, 700, 781, 782, 2108, 2141, 2144);
- Apple's Motions for Sanctions (Dkt. Nos. 715, 759, 795);
- Samsung's Motion for Sanctions (Dkt. No. 968);
- Apple's [Utility Patent] Claim Construction Brief (Dkt. No. 461);
- Samsung's [Utility Patent] Claim Construction Brief (Dkt. No. 589);

1         • Samsung's Motion to Exclude Opinions of Certain of Apple's Experts (Dkt.

2           No. 927);

3         • Apple's Motion to Exclude Testimony of Samsung's Experts (Dkt. No. 940);

4         • Samsung's Motion for Summary Judgment (Dkt. No. 930);

5         • Samsung Motion to Strike Expert Testimony Based on Undisclosed Facts and

6           Theories (Dkt. No. 934);

7         • Apple's Motion to Strike Portions of Samsung's Expert Reports (Dkt. No. 939);

8         • Apple's Motion Pursuant to Rule 62(c) for Entry of Preliminary Injunction

9           Without Further Hearing (Dkt. No. 951);

10         • Apple's Design Patent Claim Construction Brief (Dkt. No. 1089);

11         • Samsung's Memorandum Regarding [Design Patent] Claim Construction (Dkt.

12           No. 1090);

13         • Apple's Motions in Limine (Dkt. No. 1184);

14         • Samsung's Motions in Limine (Dkt. No. 1185);

15         • Apple's Motion for Judgment on Non-jury Claims (Dkt. No. 1981);

16         • Apple's Motion for Permanent Injunction and Willfulness (Dkt. No. 1982);

17         • Samsung's Motion for Judgment on Non-jury Claims (Dkt. No. 1988);

18         • Apple's Motion for Judgment as a Matter of Law (Renewed), New Trial, and

19           Amended Judgment (Dkt. No. 1989); and

20         • Samsung's Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur

21           (Dkt. No. 1990).

22       40.    During each day of the trial itself, both sides also filed and argued multiple

23 motions.

24       **G.**    **Sealing**

25       41.    This case garnered an unusually high degree of public interest, and the Court

26 applied a strict sealing standard.  This case also implicated a significant amount of confidential

27 information for the parties, as well as for third parties, and accordingly Apple devoted significant

28 resources to protecting its and third parties' confidential information through motions to seal.

42.     As stated in the prior section, the parties engaged in extensive motions practice. For each motion Apple filed, it conducted a thorough review of all briefs and supporting materials for Apple and third-party confidential information and trade secrets, so that it could request that the Court seal any such information.  Apple also reviewed its motion papers for Samsung information that could potentially warrant confidential treatment, so that it could notify Samsung of its plans to disclose such information and enable Samsung to request sealing.  Apple also had to review briefs and supporting materials for motions filed by Samsung to determine whether they contained Apple or third-party confidential information and, if so, to request that the Court seal such information.  Apple typically had at least one senior associate and a partner who were both familiar and heavily involved in the case conduct an initial and secondary review of any documents to be filed to ensure that no confidential information from either party or any third-party was inadvertently filed on the public record.  Apple followed this review procedure through trial and after trial.

43.     Once Apple identified confidential information, it prepared motions to seal and coordinated preparation of supporting declarations.  Such efforts included conferring with Apple employees responsible for maintaining the confidentiality of such information, assisting in the preparation of supporting declarations from such employees, researching applicable case law, drafting and editing briefs, and preparing and coordinating filing of motions and supporting materials with the Court.

**H.      Substantive and Procedural Sub-Teams**

44.     The size and scope of this case required that the Morrison & Foerster litigation team be broken down into sub-teams with primary responsibility for certain substantive and procedural areas.  These sub-teams were supervised and coordinated by Harold J. McElhinny, Michael A. Jacobs, Alison M. Tucher, and Richard S.J. Hung.

45.     Before trial, there was a team primarily responsible for the trade dress and design patent issues ("Design Team") headed up by Jennifer Lee Taylor and assisted by, among others, Charles S. Barquist, Jason A. Crotty, Patrick Zhang, Francis Ho, Julia Kripke, Danielle Coleman, and Daniel Zlatnik.  The Design Team led the work on design issues, frequently assisted by other

1    individuals and members of the other teams. There was a team primarily responsible for the

2    utility patents ("Utility Team") headed up by Andy Monach and assisted by, among others,

3    Karl Kramer, Matthew Kreeger, Matthew Ahn, Mark Melahn, Eric Ow, Joseph Kanada, and

4    Ruchika Agrawal. There was a team primarily responsible for damages ("Damages Team")

5    headed up by Erik Olson and assisted by, among others, Ken Kuwayti, Eugene Illovsky,

6    Christopher Robinson, Brittany DePuy, Cecilia Ziniti, Dinah Ortiz, and Emily Sheffield. There

7    was also a team responsible for the review and analysis of Samsung internal documents,

8    deposition testimony, advertising, news articles, and other evidence relating to and confirming

9    Samsung's intentional copying of Apple's products, features, and asserted intellectual property

10   ("Copying Team") headed up by Brooks Beard and assisted by, among others, Grant Kim,

11   Minn Chung, Christopher Wiener, Taryn Rawson, and Annabel Chang. Given the amount of

12   briefing in the case, often on shortened time, there was a team focused on briefing across all

13   substantive areas ("Briefing Team") headed up by Ruth Borenstein and assisted by Grant Kim,

14   Raymond Hasu, and Christopher Wiener. Finally, there was a team primarily responsible for

15   discovery ("Discovery Team") headed up by Jason Bartlett and Mia Mazza, assisted by, among

16   others, Marc Pernick, Wesley Overson, Teresa Burlison, Nathan Sabri, Esther Kim, Jamie Kitano,

17   and Katie Roney. These roles were not set in stone, however—for example, given the emphasis

18   on design issues in the case, many of the individuals listed above as being part of the Damages

19   Team, Copying Team or Discovery Team worked on design issues and briefing, and as trial

20   approached, many members of the Utility Team worked on matters of more general applicability

21   across the case.

22          46.    The substantive teams were responsible for development and analysis of the legal

23   arguments within that substantive area, factual and legal analysis of Samsung's arguments within

24   that substantive area, review and analysis of documents produced by both Apple and Samsung,

25   locating and retaining experts, working with experts to develop their reports, working with the

26   Discovery Team to propound and respond to written discovery, preparing for and defending

27   depositions of Apple witnesses, taking depositions of Samsung and third-party witnesses, and

28   preparing the case for trial.

47. The Discovery Team was responsible for both affirmative and defensive discovery, including collecting, reviewing, and producing documents from Apple, reviewing documents produced by Samsung and third parties, propounding and responding to written discovery, meeting and conferring with Samsung on numerous discovery issues, drafting motions, and responding to Samsung's motions. Because of the scope of discovery issues, Apple and Samsung agreed that weekly discovery conference calls should be held. Those weekly calls occurred through much of the discovery period and were attended by several members of the Discovery Team, as the disputes were wide-ranging. For this same reason, the calls often lasted for several hours.

48. The Discovery Team also oversaw the selection, training, and document review of approximately 30 contract attorneys, as well as approximately 25 Morrison & Foerster associates. Additionally, the Discovery Team worked with each of the substantive teams to formulate search terms and date restrictions, as well as review guidelines for the document reviewers. The coordination between the substantive teams and the Discovery Team was ongoing and extensive throughout the discovery period. The Discovery Team also worked with the document database vendor to collect documents, run search terms through the database, set up the document review process, and produce documents. This involved weekly scheduled conference calls with the database vendor, Apple, and two members of the Discovery Team. The Discovery Team was responsible for coordinating inspections of CAD, source code, and physical models. Additionally, the Discovery Team was responsible for drafting Apple's transparency disclosures, which provided custodial information, search terms, and date restrictions used on each custodian, and identified documents produced (and the corresponding custodians) in response to Samsung's document requests. The team also reviewed Samsung's transparency disclosures. When Apple witnesses were noticed for depositions, the Discovery Team oversaw the scheduling of depositions, staffing of partners and associates to defend those depositions, and coordinated deposition preparation projects. The Discovery Team also created Apple's privilege log.

49. After the close of fact and expert discovery, Apple substantially reduced the number of attorneys on the case. The Trial Team that spent some or all of the duration of the

1    2012 trial at a trial site in San Jose included:  Harold J. McElhinny, Michael A. Jacobs,

2    Rachel Krevans, Jennifer Lee Taylor, Richard S.J. Hung, Alison M. Tucher, Charles S. Barquist,

3    Erik Olson, Andrew E. Monach, Jason Bartlett, Patrick Zhang, Francis Ho, Julia Kripke,

4    Ruchika Agrawal, Taryn Rawson, Jamie Kitano, Christopher Robinson, Mark Melahn,

5    Joshua Hartman, Nathan Sabri, Matthew Ahn, Marc Pernick, Eric Ow, Danielle Coleman and

6    Daniel Zlatnik.  The Trial Team was responsible for presenting Apple's case to the jury, as well

7    as disclosing and objecting to trial exhibits and designations, preparing fact and expert witnesses,

8    developing trial graphics, negotiating and filing papers regarding jury instructions, and other trial-

9    related tasks.

10        50.    After the 2012 trial, Apple turned to post-trial briefing.  Much of the Trial Team

11   assisted to some degree in post-trial briefing, but the primary Post-Trial Team consisted of

12   Michael A. Jacobs, Rachel Krevans, Richard S.J. Hung, Alison M. Tucher, Grant L. Kim,

13   Ruth N. Borenstein, Andrew E. Monach, Matthew I. Kreeger, Erik Olson, Nathan Sabri,

14   Christopher Robinson, Matthew Ahn, Patrick Zhang, Danielle Coleman, and Christopher J.

15   Wiener.

16        **I.     The Jury Trial and the Jury's Verdict**

17        51.    The jury trial in this case started on July 31, 2012.  The jury was instructed and the

18   parties presented their closing arguments on August 21, 2012.   The jury arrived at a verdict on

19   August 24, 2012.  As to the affirmative claims brought by Apple, the jury found that the '163,

20   '381, '915, D'087, D'305, D'677, and D'889 patents were not invalid; that Samsung infringed all

21   the '163, '381, '915, D'087, D'305, and D'677 patents; that Samsung infringed the '163, '381,

22   '915, D'305, and D'677 patents willfully; that Apple's registered iPhone trade dress and

23   unregistered iPhone 3G trade dress were protectable and famous; and that Samsung willfully

24   diluted Apple's registered iPhone trade dress and unregistered iPhone 3G trade dress.  The jury

25   awarded damages to Apple in the amount of $1,049,343,540.  As to the claims brought by

26   Samsung, the jury found that none of the accused Apple products infringed any of the asserted

27   Samsung patents.  This combination of findings was decisively in Apple's favor.

28

52.     The trial received virtually unprecedented coverage in the mainstream, technology, and legal media.  Major news publications such as *The New York Times*, *The Wall Street Journal*, *San Francisco Chronicle*, *San Jose Mercury News*, *Los Angeles Times*, and others ran stories about the trial and the verdict.  Several media outlets ran live blogs of the trial from the courthouse, reflecting a significant interest in the litigation.  *See, e.g.*, Howard Mintz, Live blog recap:  Apple awarded $1 billion in Samsung patent trial, http://www.siliconvalley.com/apple-vs-samsung/ci_21356424/live-blog-verdict-apple-samsung-patent-trial-billion-victory.  Indeed, the verdict in favor of Apple was reported on the front page of the national edition of *The New York Times* on Saturday, August 25, 2012.  The *Wall Street Journal* reported that the jury "delivered a sweeping victory to Apple" in this case by awarding Apple $1.05 billion in damages.  Jessica E. Vasellaro, *Apple Wins Big in Patent Case*, The Wall Street Journal, Aug. 25, 2012, http://online.wsj.com/article/SB10000872396390444358404577609810658082898.html.  Santa Clara University School of Law professor Brian Love called the jury's verdict "a huge, crushing win for Apple."  *Id.*  The *San Jose Mercury News* called the jury verdict "a home run – a grand slam – for Apple" and noted that the $1.05 billion damages award "indicates just how overwhelming the rulings came back in Apple's favor."  Chris O'Brien, *O'Brien: Jury verdict cements Apple's image as mobile innovator*, Aug. 25, 2012, http://www.siliconvalley.com/chris-obrien/ci_21395088/obrien-jury-verdict-cements-apples-image-mobile-innovator.  Many of these publications noted the potential impact of the verdict on the smartphone and tablet markets and the complexity and contentious nature of the litigation.  The Court provided the jurors a binder of the press coverage of the case.

53.     The verdict and the press coverage of the verdict reflect the significance of the litigation and the outcome of this case.  It also reflects the complex issues presented at trial and suggests that reasonable attorneys' fees in this matter would be consistent with the size, scope, complexity, and importance of the case, and that reasonable fees would be substantially above that other patent infringement cases, even other prominent cases.  For these reasons, and for the other reasons set forth herein, Apple submits that the fees it requests are more than reasonable given the extraordinary circumstances of this case.

1    **J.     Post-Trial Briefing**

2         54.     In the months following the verdict, each party filed a number of motions.  Apple

3    filed:

4         • Brief Regarding Non-Jury Claims Including Waiver, Equitable Estoppel, Unclean

5              Hands, and Unfair Competition (Dkt. No. 1981).

6         • Motion for a Permanent Injunction and for Damages Enhancements (Dkt.

7              No. 1982).

8         • Motion for Judgment as a Matter of Law (Renewed), New Trial, and Amended

9              Judgment [FRCP 50, 59] (Dkt. No. 1989).

10         55.     The briefing on Apple's permanent injunction and enhancement brief was

11    especially substantial.  Apple's motion was accompanied by six declarations, including two

12    expert declarations, a declaration from an individual who worked with Apple's damages expert,

13    and a declaration from an Apple executive, Philip Schiller.  Samsung's opposition was

14    accompanied by fourteen declarations, including seven from experts.  Apple's reply was

15    accompanied by four declarations.  Samsung filed a supplemental declaration from one expert.

16         56.     Samsung filed:

17         • Motion on Samsung's Non-Jury Claims, Including Indefiniteness (Dkt. No. 1988).

18         • Motion for Judgment as a Matter of Law, New Trial and/or Remittitur Pursuant to

19              Federal Rules of Civil Procedure 50 and 59 (Dkt. No. 1990).

20         57.     Samsung also filed three motions to compel relating to the parties' post-trial

21    motions.

22         58.     The Court issued seven separate orders from December 2012 through March 2013

23    on the above motions.  Among other things, the Court found insufficient evidence of objective

24    willfulness with respect to patent infringement, but did not reach the issue of subjective

25    willfulness and let the verdict stand as to willful trade dress dilution.  The Court denied

26    Samsung's motion for a new trial overall, but granted a new trial as to damages for 14 infringing

27    products.  The latter resulted in the Court striking $450,514,650 from the jury's award.  (Dkt.

28    No. 2271 at 26.)

59.     After additional briefing and hearing, the Court subsequently issued a case management order reconsidering-in-part the March 1, 2013 damages order and reinstating $40,494,356 of the verdict.  (Dkt. No. 2316 at 2.)

## III.    BIOGRAPHIES AND ROLES OF THE MORRISON & FOERSTER TEAM

60.     A summary of timekeepers who billed more than $100,000 in fees on this matter is below.  Apple is presently seeking only a portion of the amount that these individuals billed through March 1, 2013, which is substantially less than the total amount of fees Apple has incurred in prosecuting this matter, as set out in the concurrently filed declaration of Rachel Krevans at ¶ 5.

### A.    Lead Trial Counsel

61.     **HAROLD J. MCELHINNY.**  Mr. McElhinny started at Morrison & Foerster in 1976.  His practice includes representing clients, as both plaintiff and defendant, in significant matters involving all aspects of patent, copyright, and trade secret litigation.  Mr. McElhinny is a former Managing Partner of the firm, former Chair of the firm's Litigation Department, and former Co-Chair of the firm's Intellectual Property practice.  His trial expertise has been recognized by the most distinguished legal organizations in the United States, including The American College of Trial Lawyers, which inducted him as a fellow of the College in 2007. Mr. McElhinny is recommended as a leading lawyer by Chambers Global 2012, Chambers USA 2012, Legal 500 US 2012, PLC Which lawyer? 2012, Best Lawyers In America 2013, Euromoney's Expert Guides, and Super Lawyers 2011.  Mr. McElhinny was also named one of the Daily Journal's "Top 75 Intellectual Property Litigators in California" in 2009, 2010, and 2012, and one of their "100 Top Lawyers in California" in 2009.  In 2013, The National Law Journal named Mr. McElhinny to its list of the "100 Most Influential Lawyers in America" and Chambers & Partners named him one of the top nine patent attorneys in the United States in Chambers Global 2013.  Mr. McElhinny graduated from the University of California at Berkeley School of Law in 1975, where he was a contributing author to the law review and was elected to the Order of the Coif.  He clerked for the Honorable M. Joseph Blumenfeld of the U.S. District Court for the District of Connecticut.

62.     Mr. McElhinny's responsibilities began with the inception of this case, and have included the filing of the complaint, the preliminary injunction motion, discovery, motion practice, and trial.  He regularly met with and advised Apple.  As lead counsel, Mr. McElhinny negotiated with Samsung's counsel, supervised briefs and analyses, coordinated case strategy, and represented Apple at many hearings—e.g., discovery, Markman, and summary judgment hearings.  During discovery, he took the depositions of Samsung witnesses, including Samsung CEO Gee-Sung Choi, Justin Denison, Won-Pyo Hong, Wookyun Kho, and Brian Rosenberg.  He deposed Samsung expert Robert Anders and defended the depositions of Apple witnesses such as Daniele De Iuliis and Philip Schiller.  Mr. McElhinny was Apple's lead attorney at the 2012 trial, presenting the opening statement and closing argument, examining witnesses, and arguing motions.

63.     **MICHAEL A. JACOBS.**  I am the co-founder of Morrison & Foerster's Intellectual Property Practice Group.  I started at the firm in 1984 and have been a partner for 28 years.  I served as a Managing Partner of the firm.  My practice focuses on litigation of high-technology and intellectual property matters.  I have twice won the California Lawyer Attorneys of the Year (CLAY) award, one for my advocacy on behalf of Intel in the *Intel v. Hamidi* "trespass to chattels" case and in 2012 for my defense of Novell in *SCO v. Novell*.  I am listed in Band 1 by Chambers in its California Intellectual Property category.  I was also named to The BTI Client Service All-Stars 2012 list by corporate counsel.  I have been identified as a leading intellectual property lawyer by Chambers Global 2012, Chambers USA 2012, Legal 500 US 2012, PLC Which Lawyer? 2012, Best Lawyers in America 2013, Euromoney's Expert Guides, and Super Lawyers 2011.  The Daily Journal named me one of their Top 75 IP Litigators in California for 2010-2012.  I served as co-lead counsel in this litigation through April 2013.  I graduated from Yale Law School in 1983.

64.     As Apple's co-lead trial counsel, I was involved with the case since the outset and was responsible for the overall strategy and management of the case.  I regularly conferred with and advised Apple throughout the case.  I was heavily involved with all aspects of motion practice, including discovery motions, utility patent and design patent claim construction briefing,

1   and summary judgment motions.  I worked closely with the Design Team, including on the

2   selection of Apple's trade dress survey experts and survey formulation.  I argued at numerous

3   hearings, including discovery motions and *Markman* hearings.  I was involved in Federal Circuit

4   appeals, arguing the preliminary injunction appeal and working on many other appeal briefs.  I

5   also prepared and defended key Apple witnesses for deposition, including Greg Christie,

6   Evans Hankey, Scott Forstall, Jonathan Ive, Greg Joswiak, and Chris Stringer.  I prepared for and

7   took the depositions of key Samsung witnesses, including Samsung expert Benjamin Bederson.

8   As co-lead counsel, I played a key role at the 2012 trial, formulating trial strategy and preparing

9   and examining witnesses, including both trade dress survey experts and Russell Winer, Apple's

10  expert on strength of brand, design, distinctiveness of Apple's trade dress, and Samsung's

11  misappropriation of Apple's trade dress.  I also oversaw post-trial motions and post-trial

12  conferences through April 29, 2013.

13         65.    **RACHEL KREVANS.**  Ms. Krevans has tried patent disputes involving all

14  manner of products in the electronics and biosciences areas for over twenty years.  Her work in

15  these industries has involved an assortment of technologies-from DVRs, cable and satellite TV,

16  and computer-phone interfaces, to HIV and cancer treatments, vaccines, and blood and antibody

17  research.  *Chambers* notes Ms. Krevans as "one of the most thorough, calculating and technically

18  astute IP lawyers around" and says "the powerful scientific mind of Rachel Krevans has

19  impressed clients in the life sciences industry."  She is recommended as a leading lawyer by

20  Chambers Global 2012, Chambers USA 2012, The International Who's Who of Life Sciences

21  Lawyers 2012, Best Lawyers in America 2013, PLC Which lawyer? 2012, Legal 500 US 2010,

22  and Super Lawyers every year since 2004.  She has been recognized as a "Life Sciences Star"

23  within the inaugural edition of LMG Life Sciences 2012.  California Lawyer honored her in 2008

24  with the prestigious "California Lawyer of the Year" award in the IP category.  The Daily Journal

25  selected Ms. Krevans as one of the top 75 female litigators in California from 2008-2012, and one

26  of the top 75 IP lawyers in California from 2010-2012.  In 2013, Chambers USA Women in Law

27  honored her as "IP Lawyer of the Year."  Ms. Krevans graduated from the University of

28

1   California at Davis, School of Law in 1984, and clerked for the Honorable Robert Boochever of

2   the U.S. Court of Appeals for the Ninth Circuit.  She came to Morrison & Foerster in 1985.

3        66.     Ms. Krevans became heavily involved in this case shortly before the 2012 trial and

4   played a major role in coordinating pre-trial, trial, post-trial, and damages retrial strategy.

5   Ms. Krevans assisted with preparing 2012 trial materials, including the exhibit list, deposition

6   designations, verdict form, jury instructions, demonstratives, and other trial graphics.  She also

7   helped prepare the 2012 trial opening statement and closing argument.  Ms. Krevans prepared and

8   examined several witnesses at trial.  Ms. Krevans was also responsible for developing Apple's

9   post-trial strategy.

10  **B.     Partners**

11       67.     **ALISON M. TUCHER.**  Ms. Tucher has been a partner at Morrison & Foerster

12  for 10 years.  She has a complex commercial litigation practice with an emphasis on intellectual

13  property matters.  Ms. Tucher has handled patent cases for a variety of technology clients and a

14  wide range of other commercial disputes.  After graduating from Stanford Law School in 1992,

15  Ms. Tucher clerked for the Honorable William A. Norris of the U.S. Court of Appeals for the

16  Ninth Circuit, and then for Justice David H. Souter of the U.S. Supreme Court.  She started at

17  Morrison & Foerster in 1998.

18       68.     Ms. Tucher was active in the litigation from shortly after the complaint was filed.

19  Ms. Tucher was responsible for coordination between this litigation and related litigation around

20  the world.  She helped prepare Apple's motion for a preliminary injunction and assisted on the

21  subsequent appeal of the denial of that motion.  Ms. Tucher also helped draft Apple's mediation

22  briefs.  Ms. Tucher also helped devise expert strategy for Apple's survey experts, and helped

23  prepare the report of Dr. Russ Winer.  She deposed Samsung expert Sam Lucente and fact

24  witness Timothy Benner, and third-party Robert Brunner.

25       69.     Ms. Tucher participated in preparing and/or arguing numerous motions, including

26  Apple's motion for sanctions relating to damages documents, Apple's motion for sanctions

27  relating to source code production, Apple's spoliation sanctions motion, motions to strike, and

28  *Daubert* motions.  Ms. Tucher additionally participated in preparing and/or arguing oppositions to

1    Samsung's motion to strike, *Daubert* motion, and sanctions motions. Ms. Tucher also worked as

2    a coordinator and point of contact between the client and the internal team, and participated in

3    some of the parties' numerous meet and confer sessions. She also helped plan, and participated

4    in, Apple's 2012 mock trial. Ms. Tucher was a member of Apple's 2012 Trial Team. She

5    worked on numerous trial motions and oppositions, including motions for judgment as a matter of

6    law and an opposition to Samsung's motion for an adverse inference. She also assisted with jury

7    instructions and witness preparation.

8        70.    **JASON R. BARTLETT**. Mr. Bartlett has represented international and domestic

9    companies as both plaintiffs and defendants in matters involving information technology, wireless

10   telecommunications standards, biotechnology, medical devices, computer hardware, and heavy

11   industry. Mr. Bartlett is the former Co-Chair of Morrison & Foerster's E-Discovery Task Force.

12   Mr. Bartlett graduated from the University of California, Hastings College of the Law in 1998.

13   He started at Morrison & Foerster in 2000.

14       71.    He was responsible for day-to-day management of the early phases of the case. He

15   worked on all aspects of initial motion practice, including preliminary injunction briefing, and

16   developed supporting evidence. Mr. Bartlett also led the Discovery Team. In this capacity, he

17   had day-to-day responsibility for team management and overseeing document collection, review,

18   and production. He managed both defensive and offensive discovery, including propounding and

19   responding to Samsung's voluminous written discovery requests. He handled (and supervised the

20   handling of) numerous document collection interviews for Apple custodians. He prepared many

21   witnesses for deposition and defended a number of depositions, including Chris Blumenberg,

22   Andre Boule, Brian Huppi, Beth Kellermann, and Rico Zorkendorfer. Mr. Bartlett was

23   responsible for managing discovery disputes, including the motions to strike, motions to compel,

24   and motion to exclude expert testimony. He participated in many negotiations with co-counsel

25   and opposing counsel on pretrial issues. He handled many aspects of pretrial filings and

26   selections of exhibits. He also played a significant role in the 2012 mock trial. Mr. Bartlett was a

27   member of the 2012 Trial Team in San Jose. He was involved in trial preparation and

28

1  coordination, such as the creation of trial demonstratives, mid-trial motions, and responding to

2  high priority objections.  He continued his work on the case with post-trial briefing.

3  72.  **ERIK J. OLSON.**  Mr. Olson's practice focuses on the litigation of securities and

4  intellectual property disputes, with particular emphasis on clients in the biotechnology, medical

5  device, retail, and high-technology industries.  From 2007 to 2008, Mr. Olson served as Chair of

6  the Litigation Section of the State Bar of California.  From 2005 to 2007, he also served as the

7  Chair of the Litigation Section's Rules & Legislation Committee, which reviews and comments

8  on legislative and rule changes to laws that affect civil litigation in California.  Mr. Olson

9  graduated from Stanford Law School in 1994, where he was elected to the Order of the Coif.

10  After law school, Mr. Olson clerked for the Honorable Leonard I. Garth, United States Circuit

11  Judge for the Third Circuit.  He started at Morrison & Foerster in 1997.

12  73.  Mr. Olson headed Apple's Damages Team, which had responsibility for working

13  with Apple's experts to formulate the complex damages information for this case and address all

14  legal and factual issues regarding the calculation and proof of Apple's damages.  Mr. Olson

15  joined the case early on and helped formulate Apple's overall strategy for damages and relief.

16  Along with his team, Mr. Olson had primary responsibility for working with Apple damages

17  experts Terry Musika and John Hauser in a process that involved Mr. Musika creating a software

18  suite to analyze the incredibly complex, multi-sourced information relating to Samsung's sales,

19  profits, and costs and Dr. Hauser preparing a complex conjoint analysis of consumer preferences.

20  Mr. Olson worked with Mr. Musika's team, Dr. Hauser's team and a team of Morrison & Foerster

21  attorneys, to process the repeated productions by Samsung of this complex information.

22  Mr. Olson also assisted with Apple's defense of its invention of the '915 Patent and evaluation of

23  Samsung's infringement of that patent.  He defended the deposition of the two inventors of the

24  '915 Patent, Mr. Herz and Mr. Platzer, and assisted in the collection, production and review of

25  their materials.  Mr. Olson was also involved in discovery disputes relating to damages

26  information, and helped draft and prepare Apple's motions relating to Samsung's deficient

27  production of damages documents, and the resulting motion for sanctions, and helped draft

28  Apple's motion to compel testimony relating to apex witnesses.  Mr. Olson also prepared and

opposed motions related to damages issues in connection with expert discovery and motions *in limine*.

74.     Mr. Olson assisted regarding issues of irreparable harm and relief in connection with motions for preliminary injunctions.  Mr. Olson took the depositions of Samsung employees Tim Sheppard, Jae Hwang Sim, Joseph Cheong, Dale Sohn, and of Samsung expert Michael Wagner.  He defended the depositions of Andrew Platzer, Scott Herz, Chip Lutton, Boris Teksler, Mark Buckley, and Apple's damages expert Terry Musika.  Mr. Olson was also part of the 2012 Trial Team in San Jose.  He helped prepare Mr. Musika and Dr. Hauser for their testimony in the 2012 trial, and helped prepare Apple's demonstratives, the jury verdict form, jury instructions, and helped formulate trial strategy relating to damages.  Mr. Olson's involvement continued through post-trial proceedings.

75.     **RICHARD S.J. HUNG.**  Mr. Hung has litigated a wide variety of complex technology matters for clients in state and federal trial and appellate courts.  His patent litigation matters have spanned technologies such as internet search and advertising, digital rights management and encryption, programmable logic devices, electronic books, and anticancer therapeutics.  Mr. Hung graduated from Columbia Law School in 1998, where he was a James Kent Scholar, and clerked for the Honorable Paul Michel of the U.S. Court of Appeals for the Federal Circuit.  He started at Morrison & Foerster in 2000.

76.     Mr. Hung oversaw the day-to-day activities from the filing of the amended complaint through the 2012 trial and post-trial activities, and acted as the primary conduit for information between the team and Apple in 2011 and 2012.  His work extended across the Morrison & Foerster substantive and discovery teams.  Mr. Hung assisted with case strategy from the early preliminary injunction phase through trial.  He also reviewed Apple assets for potential assertion, investigated Samsung's products, and analyzed alleged prior art.  He participated in numerous meet and confers with opposing counsel and coordinated with WilmerHale co-counsel on a myriad of issues.  He assisted and oversaw the drafting of Apple's discovery requests and responses and discovery-related correspondence.  Mr. Hung also attended and assisted with

1    almost all of the discovery and motion hearings in this litigation, including arguing a motion to

2    compel.

3         77.   Mr. Hung was instrumental in coordinating deposition coverage and preparations

4    throughout the case.  He defended the depositions of Apple employees Greg Christie, Bas Ording,

5    and Eugene Whang, and former Apple employee Douglas Satzger.  He also defended the

6    deposition of Apple experts Kent Van Liere and Russell Winer.  He took the depositions of

7    Samsung executives Omar Khan and Justin Denison and Samsung experts Michael Kamins,

8    Andries Van Dam, and Tulin Erdem.  Mr. Hung advised on third-party subpoenas, including Best

9    Buy and HumanCentric.  Mr. Hung drafted and revised some or all of multiple motions and

10   briefs, including oppositions to Samsung's motion to compel, motion for inclusion of the iPhone

11   4S, and a mediation brief.  Mr. Hung also assisted with pre-trial and trial management, including

12   coordinating witness preparation, trial planning, and trial strategy.  He also helped with the

13   witness list, exhibit list, and objections to Samsung's exhibit list.  As part of the 2012 Trial Team

14   in San Jose, Mr. Hung was responsible for daily trial coordination and management.  Mr. Hung

15   continued to be involved with the case during post-trial coordination and briefing in late 2012.

16        78.   **MIA A. MAZZA.**  Ms. Mazza is the founder and co-Chair of Morrison &

17   Foerster's E-Discovery Task Force.  In this role she leads a team of Litigation partners that acts as

18   an internal resource for all litigators in helping solve e-discovery challenges as they arise in

19   practice.  Ms. Mazza is a member of the Association of Business Trial Lawyers, Society of

20   Corporate Secretaries and Governance Professionals, and many other national, state, and local bar

21   associations.  She graduated from the University of California at Berkeley School of Law in 1996.

22   Ms. Mazza started at Morrison & Foerster in 2000.

23        79.   Ms. Mazza was the Discovery manager and coordinated discovery-related

24   communications between the client, the internal teams, Apple's co-counsel at WilmerHale, and

25   Samsung's attorneys at Quinn Emanuel.  She coordinated both offensive and defensive discovery

26   efforts, including the identification of Apple custodians, keyword searches, document collection,

27   document review (of both Apple and Samsung productions), and production of Apple

28   documents.  She was responsible for supervising Apple's document review team of in-house

1  attorneys, contract attorneys, and Korean language reviewers, and was the primary contact for

2  Apple's discovery vendors.  Ms. Mazza corresponded extensively with attorneys at Quinn

3  Emanuel and participated in numerous meet and confer sessions.  In addition to her broad

4  discovery roles, Ms. Mazza helped draft numerous motions, including Apple's motions to compel

5  document productions, motion for sanctions relating to the violation of discovery orders, Apple's

6  motion to compel apex witness depositions, and *Daubert* motions.

7      80.    **JENNIFER LEE TAYLOR.**  Ms. Taylor is engaged in a broad intellectual

8  property practice, with an emphasis in intellectual property litigation and counseling.  She has

9  litigated a variety of intellectual property cases, including patent, trademark, and copyright

10 infringement actions, as well as unfair competition and false advertising actions.  Her cases have

11 included litigation of design patents related to consumer electronics, and trademarks and trade

12 dress relating to medical devices, apparel, motorcycles and boats, pharmaceuticals, foods,

13 computers, consumer products, and a variety of service sectors.  Ms. Taylor has trial and appellate

14 experience, as well as extensive experience litigating opposition and cancellation proceedings

15 before the Trademark Trial and Appeal Board.  She graduated from the University of Michigan

16 Law School in 1991.  Ms. Taylor started at Morrison & Foerster in 1992.

17     81.    Ms. Taylor led Apple's Design Team, and had primary responsibility for the

18 design patent, trademark, and trade dress assets asserted in the litigation.  She assisted with the

19 drafting of Apple's complaint and was involved in the analysis of Apple's potential and asserted

20 assets.  Ms. Taylor helped select and retain Apple's design-related experts, including

21 Peter Bressler, Susan Kare, Dr. Alan Hedge, Dr. Russ Winer, Hal Poret, Kent Van Liere,

22 Henry Urbach, and Dr. Sanjay Sood, and worked with each of these experts on the drafting of

23 their opening and/or rebuttal expert reports and various declarations.  She also worked with

24 experts on the types of surveys to be conducted.

25     82.    Ms. Taylor oversaw Apple's offensive discovery efforts on the design patent,

26 trademark, and trade dress issues.  She also assisted in Apple's defensive discovery efforts and

27 reviewed key documents from both Apple and Samsung, and assisted with Apple's written

28 discovery responses.  She worked with Apple's in-house counsel and employees throughout the

1    case, including helping to prepare a number of Apple employees for deposition. Ms. Taylor also

2    drafted significant portions of briefs related to design issues, including the preliminary injunction

3    briefs, the claim construction briefs, the *Daubert* motions, Apple's opposition to Samsung's

4    motion for summary judgment, Apple's trial brief, the motions *in limine*, and portions of

5    numerous discovery-related briefs. She also supervised the drafting of Apple's jury instructions

6    on design patent and trade dress-related issues, as well as objections to Samsung's jury

7    instructions on the same issues. During Apple's preliminary injunction appeal, Ms. Taylor helped

8    draft portions of the briefs and advised the team regarding the design issues.

9           83.    Ms. Taylor coordinated the depositions of all members of Apple's Industrial

10    Design, Product Design, and Marketing departments and defended the depositions of

11    Bartley Andre, Matthew Rohrbach, Sissie Twiggs, Michael Tchao, Richard Howarth,

12    Shin Nishibori, and Apple expert Susan Kare. She also took the depositions of Roger Fidler and

13    Samsung expert Itay Sherman. Ms. Taylor was a member of Apple's Trial Team, and prepared

14    witnesses for testimony, including Chris Stringer, Susan Kare, Peter Bressler, Dr. Russ Winer,

15    and Richard Howarth, prepared for cross examination of Samsung design-related witnesses,

16    including expert Itay Sherman, Jin Soo Kim, Jinyeun Wang, expert Robert Anders, and expert

17    Sam Lucente, prepared and responded to motions, briefing, and evidentiary objections, and

18    helped set Apple's 2012 trial strategy on design issues.

19           84.    **ANDREW E. MONACH.** Mr. Monach has a trial and appellate litigation and

20    arbitration practice, with special emphasis on patent litigation and other disputes involving

21    advanced technology. He has served as lead counsel in numerous patent cases. His civil jury trial

22    practice has included, in addition to patent litigation, several complex fraud cases, disputes

23    between electric utilities and independent power producers, securities and fiduciary duty

24    litigation, and other commercial disputes. Mr. Monach graduated from Yale Law School in 1979,

25    and he started at Morrison & Foerster that same year.

26           85.    Mr. Monach headed Apple's Utility Patent Team, and had primary responsibility

27    for Apple's asserted utility patents. Mr. Monach took the deposition of Samsung employees

28    Kihyung Nam and Ioi Lam and Samsung's expert Stephen Gray. Mr. Monach prepared witnesses

and defended the depositions of Apple fact witnesses Freddy Anzures, Wei Chen,

Richard Howarth, Duncan Kerr, Steve Lemay, Richard Lutton, and Tang Tan, and of Apple's

experts Dr. Ravin Balakrishnan, Dr. Karan Singh, Dr. Alex Snoeren, and Cooper Woodring.

Mr. Monach had major roles in the drafting of Apple's motion for preliminary injunction, its

*Markman* briefs, motions to strike expert reports, claim charts, *Daubert* motions, and oppositions

to motions for summary judgment.  He also helped prepare Apple's technical tutorial, and

provided analyses of Apple's asserted patent assets and Samsung's non-infringement and

invalidity arguments.

86.     Mr. Monach had a hand in helping prepare all of Apple's technical expert reports

on Apple's utility patents.  In particular, he worked with Apple experts Drs. Ravin Balakrishnan,

Alex Snoeren, and Karan Singh.  Mr. Monach was a part of Apple's 2012 Trial Team, working in

San Jose throughout the trial to prepare Apple's fact and expert witnesses for direct and cross

examination, to prepare cross examinations of Samsung's fact and expert witnesses, to craft case

strategy, and to draft and edit various trial motions and briefs.

87.     **MARC J. PERNICK.**  Mr. Pernick was a partner with a complex commercial

litigation practice, with an emphasis on intellectual property litigation.  He represented clients in

patent litigation in the computer graphic chip, semiconductor, DVR, credit card fraud, wireless

communication, ultrasound contrast agent, DNA microarray, water filtration, and consumer

products industries.  He represented clients in several trade secret cases, as well as in litigation

regarding patent licensing disputes, copyright ownership disputes, and software copyright

infringement.  Mr. Pernick graduated from the New York University School of Law in 1992.  He

started at Morrison & Foerster in 1992.

88.     Mr. Pernick was a member of the Discovery Team.  He served as one of Apple's

lead points of contact with Quinn Emanuel on discovery issues, working with the Apple team to

communicate disputes and negotiate resolutions.  Mr. Pernick also participated in the regularly

scheduled meet and confer sessions.  He helped draft several of Apple's discovery motions,

including a motion to compel and Apple's motion for sanctions for belated production of

documents.  He assisted in drafting and negotiating third-party subpoenas.  He drafted and

1    negotiated various trial issues, and led the team drafting jury instructions, also heading

2    negotiations with Samsung over those instructions both before and during trial.

3        89.    **RUTH N. BORENSTEIN.**  Ms. Borenstein is engaged in a complex litigation

4    practice at both the trial and appellate levels in courts throughout the country.  She has

5    successfully defended companies against tort, statutory, and contract claims in a variety of

6    contexts, ranging from consumer class actions alleging overcharges to franchisees' complaints

7    about profitability and franchisor support.  The *National Law Journal* named Ms. Borenstein a

8    key practitioner.  She graduated from Harvard Law School in 1986 and clerked for the Honorable

9    Robert E. Keeton of the U.S. District Court for the District of Massachusetts.  Ms. Borenstein

10   started at Morrison & Foerster in 1987.

11       90.    Ms. Borenstein primarily headed the Briefing Team and was responsible for the

12   drafting of numerous Apple motions and oppositions to many of Samsung's motions.

13   Ms. Borenstein assisted with opening, opposition, and reply briefs, including the following:

14   motion for preliminary injunction, motion for sanctions, motion to compel regarding invalidity

15   contentions, motion to compel apex witnesses, motion to compel regarding damages discovery,

16   motion for sanctions regarding spoliation, opposition to Samsung's motion for summary

17   judgment, motion to strike, *Daubert* motion, and others.  Mr. Borenstein also worked on Apple's

18   preliminary injunction appeal.  She also coordinated strategy with the Morrison & Foerster team

19   as well as co-counsel WilmerHale to draft and finalize briefs and supporting documents.

20   Ms. Borenstein helped prepare materials for oral argument on many of these motions, including

21   Apple's opposition to Samsung's motion for summary judgment and several discovery and

22   sanctions motions.

23       91.    **MATTHEW I. KREEGER.**  Matthew Kreeger is a partner in the firm's

24   Intellectual Property Group and co-chair of the firm's PTO Trial Practice Group.  Mr. Kreeger

25   specializes in helping clients find efficient, creative, business-oriented solutions to high stakes

26   intellectual property disputes.  Mr. Kreeger also helps develop patent prosecution and

27   reexamination strategies, including new *inter partes* review and post-grant review procedures

28   instituted by the America Invents Act, that protect his clients' patents and minimize risk.  He has

1   served as lead or co-lead counsel in more than 15 patent interferences.  Mr. Kreeger graduated

2   from Harvard Law School in 1990 and is admitted to practice before the U.S. Patent and

3   Trademark Office.  He started at Morrison & Foerster in 1991.

4         92.     A member of the Utility Team, Mr. Kreeger's work on the case focused on

5   Apple's asserted utility patents.  Mr. Kreeger took the deposition of Samsung experts Brian von

6   Herzen and Andries van Dam.  Mr. Kreeger helped draft the utility sections of Apple's motion for

7   a preliminary injunction.  He also helped analyze Apple's asserted assets, and source code

8   produced by both parties.  Mr. Kreeger used that knowledge to assist in drafting claim

9   construction charts, and to prepare for the *Markman* hearing and help draft the brief.  Mr. Kreeger

10  also assisted in preparing the expert reports of Drs. Karan Singh and Ravin Balakrishnan, and

11  helped prepare them for their depositions.  Mr. Kreeger was also a key member of the 2012 Post-

12  Trial Team, working extensively on Apple's post-trial briefs.

13        93.     **CHARLES S. BARQUIST.**  Mr. Barquist has represented numerous foreign and

14  domestic companies in patent litigation in U.S. courts and before the International Trade

15  Commission.  He has also conducted numerous adversarial licensing negotiations with patent

16  holders in the U.S., Asia, and Europe.  In addition, he is experienced in other complex

17  commercial and business litigation, including antitrust, products liability, and environmental

18  matters.  Mr. Barquist graduated from Harvard Law School in 1978.  After law school, he clerked

19  for the Honorable Milton Pollack of the U.S. District Court for the Southern District of

20  New York.  Mr. Barquist started at Morrison & Foerster in 1987.

21        94.     Mr. Barquist was a member of the Design Team.  He was involved in numerous

22  depositions.  Specifically, he prepared for and defended the depositions of Apple witnesses,

23  including John Elias, Josh Strickon, Richard Williamson, Marcel Van Os, and Andrew Bright.

24  He also prepared for and took depositions of Samsung experts Itay Sherman, Nicholas Godici,

25  and Samuel Lucente and he defended the depositions of Apple experts Peter Bressler and

26  James Carmichael.  Mr. Barquist also assisted with design patent issues in Apple's motions,

27  including motions *in limine*.  His role on the Design Team also encompassed developing pre-trial

28  and trial strategy.  He worked with the team to review and revise demonstratives, jury

DECL. OF MICHAEL JACOBS ISO APPLE'S MOT. FOR ATTORNEYS' FEES
CASE NO. 11-cv-01846 LHK (PSG)
sf-3189895

1   instructions, verdict form, and exhibits.  Mr. Barquist was a member of the 2012 Trial Team in

2   San Jose where he worked on fact and expert witness outlines and prepared witnesses to testify.

3   He also helped prepared the design patent supplement to the FJC video for the jury.  In addition,

4   Mr. Barquist helped brief objections and responses to objections to exhibits, assisted in preparing

5   an offer of proof, and assisted in drafting and revising briefs on various evidentiary issues.  He

6   also helped prepare the closing argument and closing demonstratives.  Mr. Barquist's work on the

7   case continued post trial and included, for example, helping draft a post-trial declaration in

8   support of Apple's injunction motion.

9          95.    **KARL J. KRAMER.**  Mr. Kramer's practice concentrates on complex

10  commercial litigation and trials, with a particular focus on intellectual property matters, including

11  patent litigation and negotiations for high-technology clients.  He has handled cases for clients in

12  a broad range of technology industries, including computers, networking, and semiconductors.

13  He graduated from the University of Wisconsin Law School.  Mr. Kramer started at Morrison &

14  Foerster in 1995.

15        96.    Mr. Kramer was a member of the Utility Team.  Mr. Kramer was heavily involved

16  in deposition discovery—he prepared for and took the depositions of Samsung employees Han-

17  Soo Jung, Dong-Sub Kim, Heon-Seok Lee, Hye-Jung Lee, Kiwon Lee, Sungsik Lee, and Min-

18  Cheol Shin.  He prepared and defended Apple witnesses Steven Christensen, Steve Hotelling, and

19  Brian Land.  As a Utility Team member, he was responsible for assisting with utility patent

20  analysis, including reviewing infringement, validity, and priority issues.  He also helped

21  coordinate the Utility Team's discovery and trial plan.  He worked extensively with Apple's

22  experts and assisted with the drafting of the expert reports of Dr. Michel Maharbiz.  Additionally,

23  he helped analyze the report, and prepare for the deposition, of Samsung expert Dr. Brian von

24  Herzen.  Mr. Kramer also assisted with motion practice related to the utility patents, including

25  drafting sections of oppositions to Samsung's motion for summary judgment and motion to strike.

26  Mr. Kramer also helped with preparation for the 2012 trial.  He drafted expert witness outlines,

27  prepared graphics, and provided input on the proposed jury instructions.

28

97.     **BROOKS M. BEARD.**  Mr. Beard has a litigation practice focusing on intellectual property matters.  His clients have come from a wide range of industries, including Internet technologies, semiconductors, consumer electronics, telecommunications, consumer products, pharmaceuticals, and financial services.  Mr. Beard received his J.D., *cum laude*, from Vermont Law School, and an LL.M., *with distinction*, from Georgetown University Law Center. He started at Morrison & Foerster in 1997.

98.     Mr. Beard led the Copying Team, which was responsible for evaluating those aspects of Samsung's document production, deposition testimony, advertising, and other evidence that showed how Samsung had copied all aspects of Apple's products.  As the Copying Team leader, he also assisted in preparing questions for deposition takers, assisted in preparing trial demonstratives supporting the copying case, drafted sections of briefs relating to copying issues, and helped prepare the copying components of both Apple's and Samsung's 2012 mock trial presentations.  Mr. Beard also took several depositions in this case, including fact witness Jeeyeun Wang, and expert witnesses Jacob Jacoby and Michael Mazis.  He also defended the depositions of Stephen Zadesky and Chris Prest, and of Apple expert Hal Poret.  Mr. Beard was involved more broadly in the development of Apple's case strategy and themes, including setting global deposition and document strategies.  He assisted with third-party subpoenas and planning, and helped craft Apple's trial evidence plan.  Mr. Beard also worked with Apple's consumer survey experts (including Hal Poret and Kent Van Liere), including assisting them in preparing expert reports and preparing them for their depositions.

99.     **JASON A. CROTTY.**  Mr. Crotty was a partner whose practice focused on patent infringement cases, particularly complex or multi-defendant cases for high technology clients. He handled cases in a variety of technologies, including television set-top boxes such as DVRs, interactive phone systems, pharmaceuticals, and engineered antibodies, representing both plaintiffs and defendants in patent cases.  Mr. Crotty received his J.D. from the University of Michigan Law School in 1997, and then clerked for the Honorable William B. Shubb of the U.S. District Court for the Eastern District of California.  He started at Morrison & Foerster in 1998.

100.    As a member of the Design Team, Mr. Crotty assisted Dr. Alan Hedge, Susan Kare, Dr. Sanjay Sood, and Dr. Russell Winer with their expert reports.  He coordinated expert deposition discovery.  He prepared for and took the deposition of Samsung expert Dr. Mark Lehto and defended the deposition of Apple expert Dr. Alan Hedge.  Mr. Crotty also prepared trade dress demonstratives for trial and helped manage the Design Team.

101.    **WESLEY OVERSON.**  Mr. Overson is head of Morrison & Foerster's San Francisco litigation department.  His practice focuses on patent litigation and other complex litigation involving technological, scientific, and medical issues.  His clients include international pharmaceutical and biotechnology organizations, for whom he has crafted winning strategies for both the courtroom and arbitration proceedings.  He is currently on the Executive Committee of the Litigation Section of the Bar Association of San Francisco, and has previously served as the Chair of the Civility Committee.  Mr. Overson graduated *cum laude* from the University of California, Hastings College of the Law in 1991.  He started at Morrison & Foerster in 1995.

102.    Mr. Overson's role primarily involved covering depositions, attending to discovery-related issues, and developing the evidence for Apple's arguments that Samsung copied Apple's products.  He helped develop the early offensive discovery strategy and plans, and coordinated those efforts with the parallel ITC action.  Mr. Overson drafted discovery correspondence and participated in meet and confer efforts on issues such as Samsung's deficient document production.  He successfully argued before Judge Grewal regarding Apple's motion to compel regarding Samsung's deficient document production.  He helped propound and respond to discovery requests.  During the preliminary injunction phase, Mr. Overson prepared for and took the deposition of Samsung experts Nicholas Godici (inequitable conduct), Jeffrey Johnson (infringement of utility patent), and Michael Wagner (damages/irreparable harm).  He also prepared for and defended the depositions of former Apple employee Bob Borchers and current Apple employees Jared Gosler, Eric Jue, and Fletcher Rothkopf.  He prepared for and took the depositions of Samsung employees Dong Hoon Chang, Joon-Il Choi, Kyu Hyuk Lee, and Tim Sheppard, and Samsung expert Ramamirtham Sukumar.  Mr. Overson also helped to develop the evidence that Samsung copied Apple's designs and features.

103.    **KENNETH A. KUWAYTI.**  Mr. Kuwayti is co-chair of the firm's Commercial Litigation Group.  His practice concentrates on complex commercial litigation and trials, with a particular focus on intellectual property and securities disputes.  His cases have involved a broad range of technology industries, including software, semiconductor, Internet, and life sciences.  He has successfully recovered damages, and defended against damages claims, in the hundreds of millions of dollars in several high profile intellectual property cases.  Mr. Kuwayti clerked for the Supreme Court of Canada from 1990 to 1991.  He also served as managing partner of the firm's Palo Alto office from 2005 to 2010.  Mr. Kuwayti graduated from Stanford Law School in 1989 and started at Morrison & Foerster in 1992.

104.    Mr. Kuwayti was a member of the Damages Team.  His work focused on the conjoint expert analysis, beginning with selection of an expert to help to oversee the survey. Mr. Kuwayti assisted in developing the framework of the survey, from the voiceover script to the questionnaire.  He helped draft the expert report of John Hauser regarding the conjoint analysis. Mr. Kuwayti also prepared witnesses and defended the depositions of Apple employees Priya Balasubramaniam, Art Rangel, BJ Watrous, and Tamara Whiteside.  Mr. Kuwayti assisted with motion practice, including helping to draft a motion to seal and supporting declaration of Greg Joswiak as well as drafting sections of Apple's opposition to a *Daubert* motion and supporting declaration of John Hauser.  He researched and drafted sections of Apple's motion for judgment as a matter of law and opposition to Samsung's motion for judgment as a matter of law. Mr. Kuwayti provided assistance at the 2012 trial, ranging from drafting witness outlines, responding to high priority objections, and preparing witnesses for trial.

105.    **SCOTT F. LLEWELLYN.**  Mr. Llewellyn's practice involves complex litigation before state and federal courts throughout the country, with an emphasis on patent disputes.  In addition to his experience with patent litigation, Mr. Llewellyn has successfully tried commercial arbitration and agency matters; successfully briefed and argued appeals in various federal appellate courts; worked on a variety of securities class actions and investigations; and tried more than fifteen cases for the Denver City Attorney's office, including eight jury trials.  Mr. Llewellyn received his J.D. from the University of Michigan Law School in 1997.  After school, he clerked

1   for the Honorable Clarence A. Brimmer, U.S. District Court for the District of Wyoming, and for

2   the Honorable Diarmuid O'Scannlain, U.S. Court of Appeals for the Ninth Circuit.

3   Mr. Llewellyn started at Morrison & Foerster in 2003.

4         106.    Mr. Llewellyn primarily worked with the Utility Team on a variety of fronts from

5   helping the team craft their infringement arguments to defending against claims of inequitable

6   conduct.  He reviewed Samsung source code for the Utility Team's infringement analysis, and

7   drafted infringement arguments for Apple's utility patents.  He assisted Drs. Karan Singh and

8   Ravin Balakrishnan with their expert reports.  He prepared for and took the depositions of third

9   parties Thinkfree, Infraware, and Gravity Tank, and depositions of Samsung witnesses Oh Chae

10  Kwon and Min Suk Kim.  Mr. Llewellyn also took the lead in responding to Samsung's

11  inequitable conduct allegations, including reviewing and analyzing materials related to those

12  allegations and analyzing Samsung's arguments.  He assisted Apple expert Jack Goldstein with

13  the drafting of his expert report addressing inequitable conduct.  Mr. Llewellyn also prepared and

14  defended the deposition of Mr. Goldstein.  In addition, Mr. Llewellyn drafted sections of Apple's

15  motion to strike expert testimony.

16        107.    **PHILIP T. BESIROF.**  Mr. Besirof has more than fifteen years of experience in

17  complex civil litigation, with an emphasis on securities class actions, intellectual property

18  disputes, and business/contract disputes.  He represents companies, officers, and directors in a

19  broad range of industries, including technology, financial services, and consumer products.

20  Mr. Besirof is currently the managing partner of Morrison & Foerster's San Francisco office.

21  Mr. Besirof graduated from the University of California, Hastings College of the Law in 1996.

22  He started at Morrison & Foerster in 2000.

23        108.    Mr. Besirof was responsible for managing third-party discovery.  This included

24  approximately 120 subpoenas, for corporations ranging from Best Buy to Gravity Tank to

25  Google.  He reviewed and drafted subpoena-related correspondence, analyzed objections to

26  subpoenas and negotiated the scope of subpoenas with opposing counsel and counsel for third

27  parties.  Mr. Besirof also managed internal resources for scheduling and staffing third-party

28  depositions.

109.   **BRIAN R. MATSUI.**  Mr. Matsui is a member of the firm's Appellate and Supreme Court practice group.  His practice primarily includes the representation of clients in appellate litigation in both federal and state appellate courts.  Mr. Matsui has argued cases in both federal and state appellate courts, and he has been involved in more than 35 cases before the Supreme Court of the United States.  Mr. Matsui has extensive experience in the federal courts of appeals, having represented clients in appeals in almost every federal appellate court.  In particular, he has represented clients in a substantial number of cases in the Federal Circuit on issues involving intellectual property.  Mr. Matsui graduated from Stanford Law School in 1999, where he was elected to the Order of the Coif.  After law school, Mr. Matsui clerked for the Honorable David F. Levi, U.S. District Court for the Eastern District of California; the Honorable Pamela A. Rymer, U.S. Court of Appeals for the Ninth Circuit; and finally for Justice Anthony M. Kennedy of the U.S. Supreme Court.  He started at Morrison & Foerster in 2006.

110.   Mr. Matsui worked on the appeal of the preliminary injunction order to the U.S. Court of Appeals for the Federal Circuit, and provided other legal analysis to the trial team on appellate-related issues during the case.  He worked on the opening and reply briefs and assisted with oral argument preparation and strategy in the Federal Circuit.  He also provided analysis and guidance related to post-appeal issues and the mandate following the Federal Circuit ruling, and contributed to motion practice before the Federal Circuit in the second preliminary injunction appeal.  Mr. Matsui reviewed and analyzed other legal issues relating to potential post-judgment appeals in the Federal Circuit.

111.   **STUART C. PLUNKETT.**  Mr. Plunkett represents a variety of clients in complex commercial disputes.  He has significant expertise in antitrust litigation and counseling.  Mr. Plunkett was the Chair of the Antitrust Section of the Bar Association of San Francisco, and serves on the Executive Committee of the Antitrust Section of the California State Bar.  He is recommended as a leading lawyer by Super Lawyers 2009, 2010, and 2011.  Mr. Plunkett graduated from Northwestern University School of Law in 1995, and clerked for the

1   Honorable Walter J. Cummings of the U.S. Court of Appeals for the Seventh Circuit.  He started

2   at Morrison & Foerster in 2000.

3           112.    Mr. Plunkett was instrumental in defending and taking depositions, including

4   design and marketing-related depositions.  He prepared for and defended depositions of Apple

5   witnesses Stanley Ng, Steve Sinclair, and Myra Haggerty.  He also took the deposition of

6   Samsung witnesses Corey Kerstetter and Todd Pendleton.  He prepared for and defended third-

7   party depositions of OMD, TBWA, and MAL.  He also prepared for and defended the deposition

8   of Apple expert Dr. Sanjay Sood and he corresponded with opposing counsel regarding document

9   production issues related to Dr. Sood.

10          113.    **EUGENE G. ILLOVSKY.**  Mr. Illovsky specializes in complex civil and

11  criminal litigation, corporate internal investigations, and corporate counseling.  He serves on the

12  Criminal Justice Act Appeals Panel for the Northern District of California and as Commissioner

13  on the Commission on Judicial Nominees Evaluation (JNE) of the State Bar of California.

14  Mr. Illovsky graduated from Yale Law School in 1983, where he was an Editor of the *Yale Law*

15  *Journal*, and clerked for the Honorable J. Clifford Wallace of the U.S. Court of Appeals for the

16  Ninth Circuit.  He started at Morrison & Foerster in 1998.

17          114.    Mr. Illovsky was a member of the Damages Team.  Mr. Illovsky's role on the

18  Damages Team primarily focused on expert-related issues, such as expert reports and depositions.

19  He prepared for and defended the deposition of expert John Hauser.  Mr. Illovsky also assisted

20  with drafting sections of Apple's *Daubert* motion to exclude expert testimony and motion to

21  strike, and he helped expert Russell Winer with this supporting declaration.  He also assisted with

22  drafting sections of Apple's opposition to Samsung's *Daubert* motion and expert John Hauser

23  with his supporting declaration.  In addition, Mr. Illovsky prepared for and attended the

24  depositions of third-party Motorola Mobility.

25          115.    **PETER J. STERN.**  Mr. Stern has a general commercial practice with an

26  emphasis on intellectual property litigation and counseling.  His experience in patent matters

27  includes adversarial licensing and all phases of litigation.  He has litigated or arbitrated numerous

28  commercial disputes in the fields of contract, licensing, and trade secret misappropriation.

1    Mr. Stern has been ranked by *Chambers Asia* as a "Leading Individual" in the field of Intellectual

2    Property and listed by "Best Lawyers" in the categories of both Intellectual Property and

3    Litigation.  He graduated from the University of California at Berkeley, School of Law in 1992,

4    and clerked for the Honorable John T. Noonan, Jr. of the U.S. Court of Appeals for the

5    Ninth Circuit.  Mr. Stern started at Morrison & Foerster in 1994.

6        116.    As a member of the Design Team, Mr. Stern was involved in design patent-related

7    tasks, including meeting with the team to discuss expert reports and case presentation.  He

8    defended the deposition of an outside patent attorney for Apple, Steve Beyer, and prepared for

9    and took the depositions of Samsung witnesses, including MinHyouk Lee, Jinsoo Kim, and

10   Hangil Song.

11       **C.    Of Counsel and Associates**

12       117.    **PATRICK ZHANG.**  Mr. Zhang was an associate in the Litigation Department of

13   Morrison & Foerster's San Francisco office.  He focused on intellectual property litigation and

14   patent litigation in particular.  He represented clients in numerous patent litigations involving

15   software, electronics, medical devices, and semiconductor technology.  Mr. Zhang was also

16   experienced in strategic patent analysis and licensing negotiations.  Prior to and during law

17   school, Mr. Zhang worked as a registered patent agent at a prominent intellectual property

18   boutique, where he gained significant experience in patent analysis and counseling.  He graduated

19   from Fordham University School of Law in 2006.  Mr. Zhang came to Morrison & Foerster in

20   2008.

21       118.    As a member of the Design Team, Mr. Zhang was involved in the case from the

22   start, preparing an analysis of design patent rights and legal standards and assisting in drafting the

23   amended complaint.  He also helped draft the preliminary injunction motion as well as supporting

24   declarations from expert Cooper Woodring and Apple employee Chris Stringer.  Mr. Zhang also

25   assisted in preparing Cooper Woodring and Chris Stringer for depositions related to the

26   preliminary injunction proceedings.  He helped prepare the appeal of the preliminary injunction

27   order.  His responsibilities have included review of Apple documents, particularly analyzing

28   Apple CAD files to determine conception dates and identify alternative designs and reviewing

1    Apple industrial design sketchbooks and documents for production.  He helped prepare Apple

2    industrial designers and product designers for deposition, including Jonathan Ive, Eugene Whang,

3    Daniel Coster, Daniele De Iuliis, Duncan Kerr, Matt Rohrbach, Evans Hankey, and

4    Stephen Zadesky.  He prepared for and took depositions of Samsung employees, including Bo-

5    Ra Kim, Nara Cho, Jungmin Yeo, Yunjung Lee, Sun Young Yi, MinKyung Kim, Gi Young Lee,

6    and Dongseok Ryu.  He also prepared for and attended the deposition of third-party Bloomberg.

7        119.    Mr. Zhang assisted Peter Bressler, James Carmichael, and Susan Kare with their

8    expert reports.  He helped prepare for the deposition of Samsung expert Itay Sherman and

9    prepared for and took the deposition of Samsung expert Christopher Mount.  Mr. Zhang's case

10   analysis work entailed analyzing and rebutting Samsung's design patent defenses—

11   indefiniteness, double patenting, actual confusion, and role of non-prior art in Apple design

12   patents.  He assisted with preparing responses to Samsung's interrogatories on design patent

13   issues.  Mr. Zhang worked on substantive motions such as an opposition to Samsung's motion for

14   summary judgment and a supporting Peter Bressler expert declaration, motion to strike

15   Samsung's expert reports, and design patent claim construction briefing.  Mr. Zhang was a

16   member of the trial team in San Jose.  During the 2012 trial, he assisted with preparing witness

17   outlines, trial exhibits, deposition designations, demonstrative graphics, and objections to various

18   disclosures.  Mr. Zhang also assisted with post-trial briefing in 2012.

19       120.    **DEOK KEUN MATTHEW AHN.**  Mr. Ahn was an associate in the litigation

20   department of Morrison & Foerster's San Francisco office.  He had extensive experience

21   representing both international and domestic clients in intellectual property matters, and focused

22   his practice on patent infringement dispute resolution.  Mr. Ahn represented both patent holders

23   and infringement defendants in a variety of technical disciplines, including consumer electronics,

24   communications networks, computer software, and semiconductor devices.  Mr. Ahn was a

25   Fulbright Scholar, and earned an LL.M. in Japanese comparative law.  He received his J.D. from

26   Harvard Law School in 2002, and clerked for the Honorable James A. Parker of the U.S. District

27   Court for the District of New Mexico.  Mr. Ahn started at Morrison & Foerster in 2007.

28

1       121.   Mr. Ahn was a member of the Utility Team.  Mr. Ahn was involved in the case

2 from the start, analyzing utility patent rights, assisting in drafting the amended complaint,

3 preparing the motion for expedited trial, preparing the preliminary injunction motion, reply and

4 supporting expert declarations from Dr. Ravin Balakrishnan.  He also helped prepare Bas Ording

5 and Ravin Balakrishnan for preliminary injunction depositions, assisted with taking preliminary

6 injunction depositions of Samsung witnesses Benjamin Bederson and Andries Van Dam, and

7 helped prepare for the preliminary injunction hearing.

8       122.   Mr. Ahn assisted with discovery by collecting documents, conducting custodian

9 interviews, and assisting with preparing written discovery and responses to Samsung's written

10 discovery, including interrogatory responses and requests for admissions.  He helped prepare

11 Apple inventors and employees for deposition, including Bas Ording, Scott Forstall, and

12 Jason Skinder.  He prepared for and took depositions of Samsung employees Seung Yun Lee,

13 Wookyun Kho, Byung Wook Kim, Jong Dae Park, Hyun Goo Woo, Seong Hee Hwang,

14 Hyejung Lee, and third-party depositions of Bluebird Software.  Mr. Ahn assisted with preparing

15 for depositions of Samsung employees, including Jaegwan Shin, Ahyoung Kim, Sun Young Yi,

16 Oh Chae Kwon, Ioi Lam, Qi Ling, and third parties Cirque, ThinkFree, and Quickoffice.

17 Mr. Ahn assisted with preparing expert reports of Ravin Balakrishnan, Karan Singh,

18 Alex Snoeren, and Jack Goldstein, and prepared for and assisted with defending the depositions

19 of Ravin Balakrishnan, Alex Snoeren, and Jack Goldstein.  Mr. Ahn prepared for and took the

20 deposition of Samsung expert Jeffrey Johnson and prepared for depositions of Samsung experts

21 Andries Van Dam and Benjamin Bederson.  Mr. Ahn also prepared discovery motions, including

22 a motion to compel production of source code and motion for sanctions.

23       123.   Mr. Ahn's case analysis work included preparing infringement contentions,

24 reviewing documents and deposition transcripts to determine conception and reduction to practice

25 dates for utility patents, rebutting Samsung's utility patent defenses, including indefiniteness and

26 invalidity, assisting with source code review, conducting inspections of prior art systems, and

27 preparing the evidentiary plan for utility patent issues for trial.  Mr. Ahn helped work on

28 substantive motions such as preparing the Federal Circuit appeal of the preliminary injunction

1    order, the utility patent claim construction briefing, opposition to Samsung's motion for summary

2    judgment and supporting declarations from Ravin Balakrishnan and Karan Singh, and motions to

3    strike Samsung's expert reports. He assisted with preparing objections to Samsung's proposed

4    jury instructions on utility patent issues, motions *in limine* and responses to Samsung's motions *in*

5    *limine*. Mr. Ahn was a member of the 2012 Trial Team in San Jose. During trial, he helped

6    prepare evidentiary objections and responses to objections to trial exhibits, direct examinations,

7    exhibits, demonstratives, and witness examination outlines. Mr. Ahn also worked on post-trial

8    briefing, particularly as it related to utility patent issues.

9         124.    **MARK E. MELAHN.** Mr. Melahn was an associate in Morrison & Foerster's

10   Litigation Department in the San Francisco office. Mr. Melahn received his J.D., with

11   distinction, from Stanford Law School in 2009, where he served as Managing Editor of the

12   *Stanford Law Review*. Mr. Melahn received his B.S.E. in computer science, *magna cum laude*,

13   from Princeton University, where he was elected to membership in Phi Beta Kappa and Tau Beta

14   Pi. Mr. Melahn clerked for the Honorable Richard R. Clifton of the U.S. Court of Appeals for the

15   Ninth Circuit. He started at Morrison & Foerster in 2011.

16        125.    Mr. Melahn was a member of the Utility Team. Mr. Melahn began working on the

17   case in its early stages, analyzing Apple patents, preparing claim charts to recommend assets for

18   assertion, and assisting with preparation of the amended complaint. He helped review documents

19   and source code to support Apple's conception and reduction to practice of its patented

20   inventions, and he reviewed documents produced by Samsung and Apple in connection with

21   utility patent issues. Mr. Melahn prepared and responded to written discovery regarding the

22   utility patents. He helped manage the Android source code expert team and analyzed Android

23   source code in connection with the utility patents. He also helped analyze technical aspects of

24   prior art, Samsung products, and source code cited by Samsung. Mr. Melahn conducted legal

25   research and summarized his findings. He helped draft motions, claims charts, and other

26   supporting materials for the preliminary injunction motion and reply brief. He also assisted with

27   preparations for the preliminary injunction hearing. He prepared attorneys to take and defend

28   depositions on design and utility patent issues, including Cooper Woodring, Benjamin Bederson,

Jeffrey Johnson, Bryan Agnetta, Shawn Day, Dooju Byun, Wookyun Kho, Ioi Lam, Qi Ling, Jaegwan Shin, and Richard Woolley.

126.     He helped select utility patent expert witnesses.  Mr. Melahn assisted Dr. Karan Singh with his expert report and assisted with the preparation and defense of his deposition.  He also helped prepare for and assisted in taking depositions of Samsung expert Stephen Gray.  He assisted with preparing correspondence, stipulations, motions, and responses related to source code production and sanctions.  He worked on a number of motions, including motion to strike expert reports, and opposition to Samsung's motion for summary judgment. Mr. Melahn was a member of the Trial Team in San Jose, helping to prepare trial plans, witness examination outlines, demonstratives, jury instructions, deposition designations, trial exhibits, and objections to Samsung's exhibits.  Mr. Melahn also assisted with post-trial briefing in 2012.

127.     **NATHANIEL B. SABRI.**  Mr. Sabri is an associate in the firm's litigation department, and is involved in a wide variety of intellectual property matters, with an emphasis on intellectual property litigation and counseling.  He has experience litigating patent, copyright, and trademark infringement actions in federal court for clients in a variety of industries, including software and biotechnology.  Mr. Sabri received his J.D., Order of the Coif and Order of Barristers, from the University of California, Davis School of Law in 2007, where he was executive editor of *The UC Davis Law Review*.  He was awarded the Law School Medal for the highest academic achievement in his graduating class.  Mr. Sabri started at Morrison & Foerster in 2007.

128.     Mr. Sabri was involved in the case from the start, working on Apple's motion in support of a preliminary injunction, supporting declarations, and early depositions.  After the preliminary injunction phase, in 2011 and leading up to the 2012 trial, Mr. Sabri assisted with discovery by preparing the plan for industrial design discovery, and preparing for and conducting pre-collection interviews with and collections from Apple custodians.  He also analyzed, prepared objections, and drafted correspondence relating to third-party depositions, prepared discovery correspondence and discovery responses, and conducted defensive discovery, including preparing for and participating in extensive meet-and-confer sessions with opposing counsel.  Mr. Sabri also

1    prepared and/or argued various discovery-related motions, including motions to compel and

2    oppositions to motions to compel. Mr. Sabri assisted in coordination between this litigation and

3    related litigation around the world. Mr. Sabri assisted with expert discovery by preparing for the

4    deposition of Samsung expert Jacob Jacoby, and helped draft the *Daubert* motion and reply for

5    Samsung expert Itay Sherman. Mr. Sabri also prepared the opposition to the motion to strike

6    portions of Apple expert Peter Bressler's report.

7           129.    Mr. Sabri's case work before the 2012 trial also entailed preparing arguments and

8    briefs regarding claim construction, indefiniteness, design patent conception and reduction to

9    practice, admission of exhibits, objections, and responses to objections. Mr. Sabri worked on

10   motions *in limine*, including a motion in limine regarding the 035 model, motion in limine

11   regarding partial views, motion in limine regarding non-prior or non-public "prior art," and

12   motion in limine regarding unasserted patents. Mr. Sabri also had primary responsibility for

13   sealing work at the district court level. Mr. Sabri was a member of the 2012 Trial Team in San

14   Jose. During trial, he assisted with preparing the trial plan for the overall Apple story and

15   introduction of key evidence, objections to jury instructions, and finalizing exhibits for

16   submission to the jury. Mr. Sabri also worked on Apple's post-trial briefing in 2012 and played a

17   significant role in mock trials. In 2013, Mr. Sabri took over responsibility as the primary conduit

18   for information between the team and Apple, as well as the main point-of-contact for discussions

19   between the Apple team and the Samsung team.

20          130.    **GRANT L. KIM.** Mr. Kim has over 25 years of experience with intellectual

21   property litigation, international arbitration, and other complex commercial disputes. He has

22   served as lead trial counsel in international arbitrations administered by the International

23   Chamber of Commerce, the American Arbitration Association, and the Korean Commercial

24   Arbitration Board and as second chair in patent trials before the Northern District of California

25   and the International Trade Commission. He has handled numerous patent, copyright, trademark,

26   and trade secret cases involving a wide range of technology, including computer software and

27   hardware, semiconductors, medical devices, biotechnology, and mechanical devices. He

28   graduated magna cum laude from the University of California, Hastings College of the Law in

1984, where he was an editor of the *Hastings Law Journal*, and served as a Ninth Circuit staff
attorney from 1984 to 1986.

131.    Mr. Kim was a core member of the team from shortly after the complaint was filed
in April 2011.  Mr. Kim was a primary drafter of Apple's motion for a preliminary injunction and
numerous related briefs, including Apple's motions for expedited discovery and for expedited
trial, Apple's opposition to Samsung's motion for expedited discovery, the parties' motions to
augment the preliminary injunction record, and Apple's successful appeal to the Federal Circuit
of the denial of an injunction against the Galaxy Tab 10.1.  He also assisted with numerous other
briefs, including Apple's motion to compel depositions of Samsung's apex witnesses, other
motions to compel discovery, Apple's spoliation motion, case management statements, and
mediation and settlement briefs, as well as related correspondence with Quinn Emanuel.  He also
assisted with preparation of lay and expert declarations related to the preliminary injunction and
other motions.

132.    Mr. Kim was also heavily involved in discovery and factual investigation,
especially evidence of Samsung's copying of Apple's products.  He took multiple depositions of
Samsung executives and employees in both Korea and the U.S., including:  Executive VP
Don Joo Lee, VP Seoggeun Kim, Principal Product Designer Yunjung Lee, Senior UX Designer
Seung Hun Yoo, and STA Director of UX Sang Hung.  He helped prepare for the depositions of
numerous other Samsung witnesses, including the apex depositions of Samsung CEO
Geesung Choi and Executive VP Won Pyo Hong, as well as the depositions of Samsung expert
Michael Wagner and Samsung Senior VP Dong Hoon Chang and VP MinHyouk Lee.  Mr. Kim's
Korean-language skills were valuable during discovery.  He also assisted the 2012 Trial Team in
preparing pre-trial filings, including Apple's trial brief and motions *in limine*, and worked
extensively on post-trial motions.

133.    **JAMIE HARUKO KITANO.**  Ms. Kitano was an associate in the Litigation
Department of Morrison & Foerster's Palo Alto office.  Her practice focused on patent litigation,
primarily in the life sciences and technology industries.  Ms. Kitano received her J.D. from the
University of California, Davis School of Law, in 2009, as well as her M.B.A. from the Graduate

1   School of Management.  While at Davis, Ms. Kitano served as Managing Editor of the *Business*

2   *Law Journal* and as President of the King Hall Intellectual Property Law Association.  She

3   received her B.S. in molecular biology from the University of California, San Diego in 2005.  She

4   is also admitted to practice before the U.S. Patent and Trademark Office.  Ms. Kitano started at

5   Morrison & Foerster in 2010.

6          134.   Ms. Kitano was a member of the Discovery Team.  She assisted with selecting the

7   English-language temporary attorney team, training temporary attorneys and Morrison & Foerster

8   associates for document review, and supervising review of Apple documents.  She also helped

9   with preparing, coordinating and maintaining large document productions, and supervising

10   deposition summaries of Apple and Samsung witnesses.  Additionally, Ms. Kitano helped prepare

11   for the deposition of Andre Boule.  She also helped coordinate the deposition summaries project.

12   Ms. Kitano worked on substantive motions such as Apple's *Daubert* motion, opposition to

13   Samsung's motion for summary judgment, and various motions in limine.  She was also involved

14   in overseeing the filings for numerous motions, including sealing documents.  She prepared mock

15   trial presentations for Apple's affirmative case, Samsung rebuttal case, opening statements, and

16   closing arguments.  She also prepared deposition testimony for use in mock trial presentations.

17   Ms. Kitano was part of the trial team in San Jose and helped prepare trial exhibits list, trial proof

18   plan, evidentiary objections and responses, and deposition clips.  Ms. Kitano also worked on post-

19   trial issues in 2012.

20          135.   **MINN CHUNG.**  Mr. Chung's practice focuses on intellectual property litigation.

21   Mr. Chung has represented a number of high-technology clients in high-stakes, multi-patent,

22   multi-district, patent litigation matters involving wide-ranging areas of technology, including

23   cellular wireless telecommunications technologies, operating systems, plasma display panels,

24   CPU architecture, parallel processing computer technology, device drivers, and semiconductor

25   memory devices.  Mr. Chung earned a bachelor's of science degree in physics from M.I.T.,

26   graduating at the top of his class with honors.  He graduated from Loyola Law School in 2004

27   and started at Morrison & Foerster in 2006.

28

136.     Mr. Chung's technical and Korean-language skills made him invaluable in supporting Apple's efforts in this litigation.  His involvement began around the time Apple filed its complaint, and included a substantive analysis of Apple's intellectual property assets.  He also analyzed Samsung's asserted assets relating, among other things, to potential invalidity. Mr. Chung was involved with the selection of Apple's testifying and non-testifying technical experts.  He was also involved in analyzing Samsung's source code and preparation of expert reports on infringement of Apple's utility patents.

137.     Mr. Chung was integrally involved in Apple's discovery efforts.  He helped identify and select Samsung's witnesses for deposition on industrial design, user interface design, and software and hardware features of the accused products.  He was also closely involved in preparing interrogatories and 30(b)(6) notices relating to utility patents.  Mr. Chung also helped manage a large team of Korean-speaking reviewers and translators, whose efforts included unofficial deposition preparation translations, translations for motions, and managing the creation of official trial translations.  He was closely involved in Apple's extensive meeting and conferring with Samsung on translation issues, both during discovery and as the 2012 trial approached. Mr. Chung also helped prepare for the depositions of various Samsung employees, including: Heon Seok Lee, Sungsik Lee, Wookyun Kho, Samsung CEO Gee Sung Choi, and Won Pyo Hong.  He took the deposition of Seung Hwan Cho.  Mr. Chung assisted in the preparation for numerous discovery motions, including Apple's motion to compel testimony of Samsung's so-called apex employees, and its motion for sanctions due to Samsung's deficient production.  His Korean-language skills also made Mr. Chung a valuable source of knowledge on Samsung's internal structure and organization based on his review of the relevant production materials.  His technical skills provided insight for the various Utility Team members working on both Apple's and Samsung's asserted assets.

138.     **JULIA D. KRIPKE.**  Ms. Kripke is an associate in the Litigation Department of Morrison & Foerster's San Francisco office.  She is involved in intellectual property litigation and counseling, with an emphasis on trademark matters.  Her practice focuses on domestic and international trademark counseling, prosecution, and enforcement, including litigation

1  proceedings in federal court as well as opposition and cancellation proceedings before the

2  Trademark Trial and Appeal Board.  Ms. Kripke received her B.A. in history from Yale College

3  in 2004, where she was elected to Phi Beta Kappa.  She received her J.D. from Stanford Law

4  School in 2009, where she was a notes editor of the *Stanford Law Review* and was elected to the

5  Order of the Coif.  Ms. Kripke started at Morrison & Foerster in 2009.

6      139.    Ms. Kripke was a member of the Design Team from the commencement of the

7  case.  She researched and analyzed trade dress and trademark legal standards and Apple's trade

8  dress and trademark rights.  She assisted with preparing the amended complaint.  She drafted

9  sections of the preliminary injunction motion and reply and supporting declarations for Apple

10  employee Sissie Twiggs and expert Dr. Sanjay Sood.  She also assisted in preparing

11  Sissie Twiggs for a preliminary injunction deposition.  Ms. Kripke helped draft Apple's discovery

12  requests and responses to Samsung's discovery requests on trade dress and trademark issues.  She

13  helped prepare the strategy for development and execution of surveys related to trade dress

14  claims.  Ms. Kripke assisted in preparing Apple employees for deposition, including Phil Schiller,

15  Greg Joswiak, Stanley Ng, Art Rangel, Tamara Whiteside, and Suzanne Lindbergh.  Ms. Kripke

16  also reviewed Apple documents for production.  Ms. Kripke prepared for and took the deposition

17  of Samsung employee Junho Park, and she prepared for and attended the deposition of third-party

18  Asus employee Gwen Hsu.  She also assisted with preparation for the depositions of Samsung

19  employees Justin Denison and Brian Rosenberg.  She helped Drs. Alan Hedge, Sanjay Sood, and

20  Russell Winer with their expert reports, and also helped with deposition preparation for these

21  experts.  Ms. Kripke assisted with deposition preparations for Samsung experts Drs. Mark Lehto

22  and Ramamirthan Sukumar.

23      140.    Ms. Kripke assisted with analyzing and rebutting Samsung's trade dress

24  defenses—functionality, lack of acquired distinctiveness, and lack of fame—and helped prepare

25  an evidentiary plan for trade dress issues for trial.  Ms. Kripke prepared inserts for the opposition

26  to Samsung's motion for summary judgment.  Ms. Kripke drafted proposed jury instructions on

27  trade dress issues and prepared objections to Samsung's proposed jury instructions on trade dress

28  issues.  As part of the Trial Team in San Jose, Ms. Kripke drafted objections to Samsung's

1   exhibits and demonstratives and responded to Samsung's objections to Apple's exhibits and

2   demonstratives.  She also assisted with preparing witness outlines for direct and cross

3   examinations, exhibits, and demonstratives, and evidentiary objections and responses, as well as

4   preparing witnesses for testimony.

5        141.   **CHRISTOPHER L. ROBINSON.**  Mr. Robinson is an associate in Morrison &

6   Foerster's Palo Alto and San Francisco offices.  He has handled a variety of complex commercial

7   litigation matters, including patent and trade secrets litigation, Hatch-Waxman litigation, and

8   contract litigation.  Mr. Robinson received his J.D. *cum laude* from Santa Clara University in

9   2008.  In law school, he served as a judicial extern in the chambers of the Honorable James Ware

10  of the U.S. District Court for the Northern District of California.  He also participated in the Giles

11  Rich Moot Court Competition, winning an award for Best Appellant Brief.  Mr. Robinson started

12  at Morrison & Foerster in 2008.

13       142.   Mr. Robinson was a member of the Damages Team.  Before the 2012 trial, he

14  reviewed and analyzed Samsung's production of financial documents.  He conducted legal

15  research on damages issues.  He supervised Korean language contract attorneys' review of

16  damages-related documents.  He helped collect and produce Apple's financial documents.  He

17  assisted with propounding and responding to written discovery requests relating to damages and

18  with drafting correspondence to opposing counsel regarding deficiencies in Samsung's financial

19  production.  He also helped draft Apple's motion for sanctions relating to damages documents,

20  apex motion relating to Joseph Cheong and Dale Il Sohn, motion to strike expert reports,

21  opposition to Samsung's *Daubert* motion, and trial brief.

22       143.   Mr. Robinson helped prepare for and take the deposition of Samsung employee

23  Timothy Benner, and he helped prepare for the deposition of Apple witness Mark Buckley.  He

24  assisted with deposition preparations for Samsung employees, including Jaehwang Sim,

25  Timothy Sheppard, Todd Pendleton, Justin Denison, Brian Rosenberg, Corey Kerstetter,

26  Joseph Cheong, and Dale Il Sohn as well as Samsung's damages expert, Michael Wagner.

27  Mr. Robinson assisted Apple's damages expert Terry Musika with his expert report.

28  Mr. Robinson was also a member of the Trial Team in San Jose where he helped prepare

1   objections to jury instructions on damages, witness examination outlines, summary trial exhibits,

2   and trial demonstratives.  He also assisted with post-trial briefing and depositions, including

3   helping with preparing expert declarations in support of Apple's post-trial requests for

4   supplemental damages, prejudgment interest, willfulness enhancements, and a permanent

5   injunction, and helping prepare for the deposition of Apple's damages expert, Marylee Robinson.

6         144.   **TARYN S. RAWSON.**  Ms. Rawson is an associate in the Litigation Department

7   of Morrison & Foerster's San Francisco office.  Ms. Rawson earned her J.D., *cum laude*, from

8   Harvard Law School, where she was articles editor of the *Harvard Civil Rights-Civil Liberties*

9   *Law Review* and was a board member of the Harvard Defenders.  During law school she interned

10   at the Massachusetts Department of Education's General Counsel's Office.  Before joining

11   Morrison & Foerster, Ms. Rawson served as a law clerk to the Honorable Christopher F. Droney

12   of the U.S. District Court for the District of Connecticut.  She started at Morrison & Foerster in

13   2011.

14         145.   Ms. Rawson helped Apple's survey experts Drs. Kent Van Liere and Hal Poret

15   with their reports, and assisted in preparing them for their depositions.  Ms. Rawson assisted in

16   coordination between this litigation and related litigation around the world.  Ms. Rawson also

17   helped prepare for the deposition of Samsung expert Michael Mazis.  She also assisted in Apple's

18   preliminary injunction appeal.  Ms. Rawson was involved in many aspects of trial.  She helped

19   draft briefs, objections, and motions, relating to, among other things, witness disclosures,

20   evidentiary issues, and Apple's motion for judgment as a matter of law.  In this role, she

21   conducted legal research and corresponded with Samsung's counsel.  She also prepared attorneys

22   and witnesses—in particular Apple's survey experts—for direct and cross examinations.

23         146.   **FRANCIS C. HO.**  Mr. Ho was an associate at Morrison & Foerster's San

24   Francisco office, where his practice focused on patent litigation.  His cases involved digital rights

25   management, web search algorithms, portable computer hardware, converter circuits, and plasma

26   televisions.  Mr. Ho received his J.D. from The University of Texas School of Law in 2006,

27   where he graduated with high honors and was elected to the Order of the Coif.  He was also an

28   associate editor of the *Texas Law Review* and a member of the Legal Research Board.  He

1   received his B.S. in Electrical Engineering and Computer Sciences from the University of

2   California, Berkeley.  Mr. Ho started at Morrison & Foerster in 2006.

3          147.   Mr. Ho was a member of the Design Team.  He performed infringement, validity,

4   and enforceability analysis for the D'677, D'087, and D'889 patents.  He reviewed the design

5   sketchbooks and CAD drawings of Apple inventors for production.  He also reviewed Samsung

6   documents related to design patent issues.  Mr. Ho prepared for and took the depositions of

7   Samsung witnesses, including Hyoung Shin Park, Sang Eun Lee, and Daewoon Myoung.  In

8   addition, Mr. Ho assisted with preparations for the depositions of Samsung witnesses, including

9   Justin Denison, Ahyoung Kim, Jeeyeun Wang, Yungjung Lee, Sun Young Yi, Itay Sherman, and

10  Robert Anders.  He assisted with the depositions of third-party witnesses, including Roger Fidler

11  and Douglas Satzger.  He also assisted with the defense of depositions of Apple witnesses,

12  including Christopher Stringer, Jonathan Ive, Daniel Coster, Quin Hoellwarth, Peter Russell-

13  Clarke, Richard Howarth, Eugene Whang, and Rico Zorkendorfer.

14         148.   Mr. Ho also helped draft interrogatories, requests for production, and responses to

15  interrogatories related to design patents.  He worked with Apple expert Peter Bressler to prepare

16  expert declarations, opening and rebuttal expert reports, and deposition and trial testimony.

17  Mr. Ho was a member of the Trial Team in San Jose and assisted with trial preparations and trial,

18  including demonstratives and graphics, evidentiary objections and responses, direct and cross

19  examination witness outlines, and Apple's opening statement and closing argument.

20         149.   **ESTHER KIM.**  Ms. Kim is a litigation associate in Morrison & Foerster's

21  San Francisco office.  Ms. Kim's practice focuses on patent litigation.  She graduated from the

22  George Washington University Law School in 2008, where she was elected to the Order of the

23  Coif.  Ms. Kim is admitted to practice before the U.S. Patent and Trademark Office.  She started

24  at Morrison & Foerster in 2008.

25         150.   Ms. Kim was a member of the Discovery Team.  She helped supervise and

26  coordinate review of Samsung's document production.  She assisted in training and supervising

27  Korean language contract attorneys to review Samsung's documents.  She attended meet and

28  confers with opposing counsel.  She drafted discovery correspondence.  She drafted and

1    coordinated discovery requests to be propounded on Samsung. She also drafted deposition

2    notices of Samsung employees. Ms. Kim also helped coordinate the scheduling and logistics for

3    depositions of Samsung witnesses, Samsung experts, Apple experts, and third parties. She

4    prepared materials for depositions of Samsung employees. She prepared for and took depositions

5    of Samsung employees, including H. Woo, H. Lee, and S. Lee. She helped prepare numerous

6    motions, including a motion to compel production of documents, motion to compel deposition of

7    Samsung witnesses, and motion and reply for adverse jury instructions based on spoliation of

8    evidence.

9         151.    **CHRISTOPHER J. WIENER.** Mr. Wiener is an associate in the Litigation

10   Department of Morrison & Foerster's San Francisco office. He has handled a variety of

11   intellectual property disputes, including work for plaintiffs and defendants in patent infringement

12   and trademark suits. Mr. Wiener earned his J.D., *summa cum laude*, from the University of

13   California, Hastings College of the Law in 2011, where he was elected to the Order of the Coif.

14   While at Hastings, he was a senior articles editor for the *Hastings Law Journal*. Mr. Wiener

15   started at Morrison & Foerster in 2011.

16        152.    A member of the Copying Team, Mr. Wiener was involved in analyzing

17   Samsung's productions and incorporating that evidence into the overall trial plan. Mr. Wiener

18   helped draft Apple's motion to compel depositions of Samsung's apex employees, a motion to

19   compel discovery responses, and Apple's motion for sanctions for violations of the Court's orders

20   relating to preliminary injunction discovery, and Apple's motion regarding Samsung's spoliation

21   of evidence. He also helped prepare for the depositions of Samsung employees, including

22   Gee Sung Choi, Won Pyo Hong, Dale Sohn, and Joon il Choi, and for third-party witnesses from

23   Gravitytank and Humancentric. More broadly, Mr. Wiener assisted in preparations and

24   coordination for many of the third-party deponents. Mr. Wiener also assisted in the preparation

25   of reports for Apple experts Peter Bressler, Russell Winer, and Terry Musika. He helped prepare

26   Apple's mediation briefs and trial briefs, and assisted the Trial Team with motion drafting and

27   evidentiary issues.

28

153. **MARCELO O. GUERRA.** Mr. Guerra was an associate in Morrison & Foerster's San Francisco office. His practice focused on complex commercial litigation, with special emphasis on patent and other intellectual property disputes. He helped win trial verdicts in favor of a major medical device manufacturer in a complex patent case. He also worked with high technology companies in breach of contract, unfair competition, indemnity, and trademark disputes. Mr. Guerra graduated from Harvard Law School in 2004. He started at Morrison & Foerster in 2004.

154. Mr. Guerra assisted in drafting the preliminary injunction motion. Mr. Guerra conducted research on legal issues, including claim construction, invalidity arguments, and discovery privilege. He also conducted fact research into the accused Samsung products. Mr. Guerra helped prepare for the deposition of Samsung expert Jeff Johnson, and helped Apple expert Dr. Ravin Balakrishnan with his expert report. Mr. Guerra was also a member of the Discovery Team. He reviewed Samsung-produced documents, assisted in drafting Apple's written discovery requests, responses, and Apple's proposed protective order. Mr. Guerra also helped draft motions for sanctions relating to untimely production and for spoliation, and helped draft the motion to compel apex witness testimony.

155. **KATIE RONEY.** Ms. Roney is an associate in the Litigation Department of Morrison & Foerster's San Francisco office. Ms. Roney received her J.D. from the University of Pennsylvania Law School in May 2009, where she served as Editor-in-Chief of the *East Asia Law Review*. She started at Morrison & Foerster in 2010.

156. Ms. Roney was a member of the Discovery Team. Her primary responsibility was to help oversee the review of documents, including Apple documents and third-party confidential documents. She regularly updated the team on the status of document collection and review and fielded questions from the team and contract attorney reviewers. She helped draft and maintain a chart on the status of the document collection and review, and assisted with coordination of discovery efforts with WilmerHale. She interfaced with the document processing and review vendors. She prepared for and attended phone interviews with Apple's inventors, including John Elias, Brian Land, Wayne Westerman, Marcel van Os, Steve Lemay, Tang Tan,

1  Daniel Coster, Rico Zorkendorfer, Matthew Rohrbach, Chris Stringer, Peter Russell-Clarke, and

2  Bart Andre.  She prepared for and attended the document collection for Apple employees,

3  including B.J. Hamel and Scott Herz.  She reviewed documents for production and helped create

4  and revise the privilege log.  She attended calls with Apple employees regarding evidence relating

5  to trade dress issues.  Ms. Roney prepared exhibits for the mock trial and assisted with the mock

6  trial.  She helped with the deposition preparation of Apple Chief Patent Counsel Richard Lutton.

7  She helped draft discovery letters to Judge Grewal and Samsung's counsel.  Ms. Roney also

8  helped prepare a chronology of Apple-Samsung negotiations.

9        157.   **BRITTANY DEPUY.**  Ms. DePuy is an associate in the Palo Alto office of

10  Morrison & Foerster, and a member of the Litigation Department.  Ms. DePuy obtained her J.D.,

11  Order of the Coif, in 2008 from the University of California, Davis School of Law, where she was

12  a member of the Moot Court Board.  While in law school, Ms. DePuy served as a judicial extern

13  for the Honorable Frank C. Damrell of the U.S. District Court for the Eastern District of

14  California.  She started at Morrison & Foerster in 2008.

15        158.   Ms. DePuy was a member of the Damages Team.  Not only was Ms. DePuy

16  responsible for damages-related tasks, including discovery work, she reviewed Apple documents

17  for responsiveness and privilege, and assisted with deposition preparations for Apple witnesses

18  Eric Jue, Boris Teksler, Art Rangel, and BJ Watrous.  She also assisted with deposition

19  preparation for Samsung witness Dae Il Sohn and Samsung expert Michael Wagner.  She

20  reviewed Apple's interrogatory responses for supplementation.  She also assisted Apple's experts

21  with their reports related to damages, including collecting underlying data, collecting license

22  agreements produced by Samsung, reviewing Apple's licenses with third parties, and reviewing

23  deposition transcripts.  Ms. DePuy conducted legal research on various topics such as lost profits

24  calculations, infringer's profits calculations, and use of conjoint analysis as expert evidence.

25  Ms. DePuy helped with motion practice related to damages issues, particularly Apple's *Daubert*

26  motion, opposition to Samsung's *Daubert* motion, and oppositions to Samsung's motions *in*

27  *limine*.  She reviewed deposition transcripts for trial, preparing designations, counterdesignations,

28  and objections to Samsung's designations.  Ms. DePuy also assisted with trial:  drafted witness

1   examinations, prepared exhibits and demonstratives, drafted objections to Samsung's exhibit

2   disclosures; and prepared a witness for trial.  Ms. DePuy also worked on post-trial issues

3   including Apple's motions for a permanent injunction and enhanced damages, Apple's opposition

4   to Samsung's post-trial motions, and preparation for post-trial depositions.

5        159.   **ERIC W. OW.**  Mr. Ow was an associate in Morrison & Foerster's San Francisco

6   office.  His practice focused on intellectual property disputes, with an emphasis on patent

7   litigation.  Mr. Ow represented clients in matters involving a wide range of technologies,

8   including wireless networking, digital rights management, digital video recording, and optical

9   communications.  Mr. Ow rejoined Morrison & Foerster in 2010 after serving as a law clerk to

10  Chief Judge Paul R. Michel of the U.S. Court of Appeals for the Federal Circuit.  Prior to his

11  clerkship, Mr. Ow worked at Morrison & Foerster for two years.  Mr. Ow earned his J.D. at the

12  University of California, Berkeley School of Law in 2007, where he served as an executive editor

13  of the *California Law Review*.

14       160.   Mr. Ow was a member of the Utility Team.  Mr. Ow analyzed '915 and '002

15  utility patent infringement issues, including reviewing portions of Samsung source code.  Mr. Ow

16  analyzed '915 and '002 validity issues including alleged prior art references.  Mr. Ow assisted

17  Drs. Karan Singh and Alex Snoeren with preparing opening and rebuttal expert reports, and he

18  assisted with the preparation of these experts for deposition.  In addition, he prepared for and

19  defended the third-party depositions of Microsoft and Dell.  Mr. Ow helped draft several motions,

20  including an opposition to Samsung's motion for summary judgment, opposition to Samsung's

21  motion to compel, opposition to Samsung's motion to amend infringement contentions, and

22  opposition to Samsung's motion to amend invalidity contentions.  Mr. Ow was also a member of

23  the Trial Team in San Jose.  During trial, he prepared direct and cross examination witness

24  outlines, exhibits, disclosures, high priority objections, and demonstratives.

25       161.   **NATHANIEL J. TORRES.**  Mr. Torres is a litigation associate in the San

26  Francisco office of Morrison & Foerster.  Mr. Torres received his B.A. from the University of

27  California, Berkeley in 1999.  He received his J.D. from the University of California, Hastings

28

College of the Law in 2007, where he was Senior Articles Editor for the *Hastings Race and Poverty Law Journal*.  Mr. Torres started at Morrison & Foerster in 2007.

162.    Mr. Torres assisted the Discovery Team and Design Team.  He reviewed documents for various Apple custodians for responsiveness and privilege.  He also reviewed Apple industrial design sketchbooks and documents for production.  He helped prepare Apple industrial designers and product designers for deposition, including Matthew Rohrbach, Chris Prest, Mark Lee, and Fletcher Rothkopf.  He prepared for and defended the deposition of third-party Radio Shack.  He helped prepare the opposition to Samsung's motion for summary judgment and supporting declaration of expert Peter Bressler.  Mr. Torres assisted with the review of deposition transcripts and prepared counter-designations for trial.  He also helped prepare summary exhibits and demonstratives for Apple experts and witnesses.

163.    **DANIELLE COLEMAN.**  Ms. Coleman is an associate in the litigation department in Morrison & Foerster's San Francisco office.  In 2006, she received her J.D. from Georgetown University Law Center, where she was the senior editor for the *Georgetown International Environmental Law Review*.  After law school, Ms. Coleman was a law clerk for the Honorable William Alsup of the U.S. District Court for the Northern District of California.  She started at Morrison & Foerster in 2010.

164.    Ms. Coleman was a member of the Design Team.  Ms. Coleman assisted James Carmichael, Dr. Sanjay Sood, and Dr. Russell Winer with their expert reports.  She assisted in deposition preparation for Apple expert James Carmichael.  She also helped with deposition preparation for Samsung experts Samuel Lucente and Nicholas Godici.  She helped with the deposition preparation for Apple witnesses Daniele De Iuliis, Evans Hankey, Jonathan Ive, Jared Gosler, and Stephen Zadesky.  She assisted in deposition preparation for third-party witnesses Bob Borchers and Stephen Beyer.  She also assisted in deposition preparation for Samsung witnesses Dong Hoon Chang, Sang Hung, Seoggeun Kim, Sang Eun Lee, Yunjung Lee, GiYoung Lee, Dongseok Ryu, Hyoung Shin Park, Yong Seok Bang, and Sun Young Yi.  Ms. Coleman helped negotiate the scope of the Gravity Tank subpoena.  She prepared for and took the deposition of third-party Palm.  Ms. Coleman drafted sections of the

1    motion to strike and motion to exclude expert testimony, and she drafted sections of the

2    opposition to Samsung's motion to strike and motion to exclude expert testimony of Apple

3    experts. Ms. Coleman prepared counter-designations for the deposition testimony of Apple's

4    industrial designers and product designers. She also prepared design patent and trade dress

5    demonstratives and exhibit summaries for trial. Ms. Coleman was a member of the Trial Team in

6    San Jose where she assisted in trial preparation, including drafting witness outlines and high

7    priority objections and responses, and demonstratives.

8          165.    **DANIEL A. ZLATNIK.** Mr. Zlatnik is an associate in the litigation department

9    of Morrison & Foerster's San Francisco office. He has handled a variety of complex commercial

10   litigation matters, including contract litigation, antitrust, trade secret, trademark, patent

11   infringement, and other intellectual property matters. Mr. Zlatnik graduated from the University

12   of California, Berkeley, School of Law in 2008. He started at Morrison & Foerster in 2008.

13         166.    As a member of the Design Team, Mr. Zlatnik performed case analysis, such as

14   analyzing Apple CAD files to determine conception dates and identify alternative designs. He

15   also analyzed design patent rights and conferred with Apple expert Susan Kare regarding these

16   rights. He reviewed Apple industrial design sketchbooks and documents for production.

17   Mr. Zlatnik worked with experts Susan Kare and Henry Urbach to prepare their expert reports,

18   and also helped prepare Susan Kare for her depositions. Mr. Zlatnik assisted consultants with the

19   preparation of replicas of the Roger Fidler models. He also provided legal research support on a

20   number of issues and assisted in drafting the motion to strike expert reports, and motion to

21   exclude expert testimony, and oppositions to Samsung's motion to exclude expert testimony, and

22   the motion for depositions of apex witnesses. Mr. Zlatnik assisted with deposition preparation for

23   Samsung expert Samuel Lucente and third-party iRiver. He prepared for and defended the

24   deposition of Fancy Models. Mr. Zlatnik helped with deposition preparation for Apple witnesses,

25   including Bart Andre, Freddy Anzures, Imran Chaudhri, Daniel Coster, Richard Howarth,

26   Duncan Kerr, Chris Stringer, and Eugene Whang. He also assisted with deposition preparation

27   for Samsung witnesses, including Jin-Soo Kim, MinHyouk Lee, and Junho Park. Mr. Zlatnik was

28   a member of the Trial Team in San Jose and his responsibilities included assisting in witness

1  preparation and preparation of proposed jury instructions, motions and briefs, exhibits, objections

2  to exhibits, and demonstratives.

3      167.  **RUCHIKA AGRAWAL**.  Ms. Agrawal was a litigation associate who focused on

4  intellectual property matters, including patent, copyright, and trade secret litigation for high-

5  stakes technology clients.  She had experience in a broad range of technical industries, including

6  software, wireless communications, and semiconductors.  Ms. Agrawal received her master's

7  degree in computer science from Stanford University in 2002, where she specialized in systems.

8  Ms. Agrawal received her J.D. from the University of Virginia School of Law in 2006, where she

9  served on the Editorial Board and Submissions Review Board for the *Virginia Journal of*

10  *International Law* and as the President of the Virginia Society of Law & Technology.

11  Ms. Agrawal joined Morrison & Foerster LLP in 2008.

12      168.  Ms. Agrawal was a member of the Utility Team.  She assisted multiple experts

13  with their opening infringement expert reports relating to the utility patents, which included

14  reviewing source code, supervising tear-downs, and working with experts.  She helped interview

15  the utility patent inventors on date of conception/reduction to practice.  She helped with

16  deposition preparation for Samsung witnesses Dong Sub Kim, Heonseok Lee, and Jong Dae Park,

17  and third-party Atmel witnesses Samuel Brunet and Martin Simmons.  Her other discovery-

18  related work included preparing interrogatory requests and requests for admission and assisting in

19  preparing discovery correspondence.  She conducted legal research on a variety of discovery

20  issues.  Ms. Agrawal also assisted with trial activities, including helping to prepare trial plans and

21  the verdict form.  In addition, she assisted in preparing jury instructions, including providing

22  supporting authorities for same, meeting-and-conferring with Samsung's counsel, and helping

23  with objections to Samsung's proposed instructions.

24      169.  **RAYMOND M. HASU.**  Mr. Hasu's practice focuses on securities litigation

25  matters, which encompass matters arising under the federal securities laws as well as matters such

26  as derivative actions and state law fraud actions that often accompany securities claims.

27  Mr. Hasu has significant experience in other areas of complex litigation, including intellectual

28  property, ERISA, Civil RICO, and antitrust law.  Mr. Hasu graduated *cum laude* from the

Georgetown University Law Center in 1998, where he was a member of the *Georgetown Law Journal*. He started at Morrison & Foerster in 2003.

170. Mr. Hasu was a member of the Briefing Team and involved in the drafting of many of Apple's discovery motions during this case. For example, he helped draft Apple's response to Samsung's motion to compel during the preliminary injunction phase, Apple's motions to compel and for a protective order (and helped prepare related declarations), Apple's motion for sanctions regarding late-produced documents, and Apple's Rule 37 motion relating to source code. Mr. Hasu also helped with pre-trial motions, including motions relating to interrogatory responses, motions *in limine*, Apple's case management statements, and the parties' motions to strike expert reports. He also helped prepare attorneys for hearings, especially those relating to sanctions motions.

171. **RICK C. LIU.** Mr. Liu is a litigation associate in Morrison & Foerster's San Diego office, where his practice focuses on securities litigation. Mr. Liu received his J.D. from the University of Pennsylvania in 2010, where he was an associate editor of the *Journal of Law and Social Change*. He started at Morrison & Foerster in 2010.

172. Mr. Liu was a member of the Discovery Team. He reviewed documents from Apple custodians for responsiveness. He also performed a privilege review of documents collected from various Apple custodians. Mr. Liu reviewed documents collected from various third parties and he performed third-party confidentiality review of documents collected from various Apple employees. He analyzed deposition transcripts for Apple and Samsung employees and third parties and prepared deposition summaries. Mr. Liu also helped track the team's deposition summaries. Mr. Liu assisted with legal research on various topics, including expert reports, expert testimony, and sanctions. He also helped research and draft sections of Apple's reply in support of its motion to strike as well as a motion *in limine*.

173. **EMILY H. SHEFFIELD.** Ms. Sheffield is an associate in the Litigation Department of Morrison & Foerster's Palo Alto office. She practices general commercial litigation with a focus on intellectual property issues and securities. Ms. Sheffield received her J.D. in 2009 from the University of Chicago. She started at Morrison & Foerster in 2010.

174.    Ms. Sheffield was a member of the Damages Team.  She worked on damages-related tasks as well as broader tasks.  She researched and drafted analyses on various topics, including, among other things, the legal requirements for damages, trade dress damages, the parameters of a hypothetical negotiation, legal requirements for noninfringing alternatives, and various evidentiary issues.  She also helped research and prepare several motions and supporting documents:  the damages and financial documents sanctions motion, reply, and supporting declarations; the apex motion and reply; a *Daubert* motion regarding Samsung expert Michael Wagner; and the opposition to Samsung's *Daubert* motion regarding Apple expert Terry Musika.  She also helped prepare for the oral arguments on the sanction motion, apex motion, and motion *in limine*.  She assisted with research for a motion to strike the expert report of Michael Wagner.  She assisted with deposition preparation for Samsung's Rule 30(b)(6) witness Jaehwang Sim, Apple expert Terry Musika, and Samsung expert Michael Wagner.  She also assisted with preparation and attended the depositions of Samsung apex witnesses Dae Il Sohn and Joon Kyo Cheong.  She helped review, summarize, and organize damages interrogatory responses.  Ms. Sheffield also provided trial assistance, including researching and drafting damages-related jury instructions, identifying damages exhibits, preparing deposition designations and counter-designations, drafting objections to Samsung's jury instructions related to damages, preparing objections and responses to objections regarding trial exhibits, and drafting witness examination outlines.  Ms. Sheffield also worked on post-trial issues in 2012.

175.    **JOSEPH K. KANADA.**  Mr. Kanada is an associate in the Litigation Department of Morrison & Foerster's Palo Alto office.  His practice focuses on intellectual property and securities, including class action lawsuits and patent infringement cases.  He graduated from Yale Law School in 2007.  Mr. Kanada started at Morrison & Foerster in 2007.

176.    Mr. Kanada was a member of the Utility Team.  Mr. Kanada researched a number of legal issues relating to discovery and expert issues.  He helped analyze discovery for evidence of conception, diligence, and reduction to practice dates for utility patents and amended corresponding discovery responses.  He also helped analyze evidence of secondary considerations of non-obviousness.  Mr. Kanada assisted with a number of tasks related to the '607 and '129

1    patents, including assisting experts with their infringement expert reports, finalizing Samsung

2    product teardown reports, and working with expert Michel Maharbiz to draft a validity report.  He

3    prepared materials for Drs. Michel Maharbiz and Brian Von Herzen's expert depositions.  He also

4    assisted with researching and drafting sections of the mediation brief, motion to strike, opposition

5    to Samsung's motion for summary judgment, opposition to Samsung's motion to strike, and

6    oppositions to Samsung's motions *in limine*.  For the 2012 trial, Mr. Kanada researched and

7    drafted objections to jury instructions, designated deposition transcripts, drafted witness outlines,

8    and prepared trial graphics.

9            177.    **DINAH XIMENA ORTIZ.**  Ms. Ortiz is an associate in the Litigation Group in

10   the Palo Alto office of Morrison & Foerster.  Ms. Ortiz received her J.D. in 2010 from the

11   University of California, Berkeley, School of Law.  While at Berkeley, Ms. Ortiz was an

12   Executive Editor of the *California Law Review* and a volunteer at the California Asylum

13   Representation Clinic.  She also served as a judicial extern in the chambers of Chief Justice

14   Ronald M. George of the Supreme Court of California.  Ms. Ortiz started at Morrison & Foerster

15   in 2011.

16           178.    Her initial role on the case was review of documents for responsiveness and

17   privilege.  She helped prepare Apple's privilege log.  Ms. Ortiz later became a member of the

18   Damages Team.  She later assisted Terry Musika with his expert report and she helped review and

19   select documents for damages trial exhibits.  She assisted with preparation for the depositions of

20   Eric Jue, Tamara Whiteside, Art Rangel, B.J. Watrous, Timothy Benner, and Dale Il Sohn.  She

21   assisted with deposition preparations for Apple expert Terry Musika and Samsung expert

22   Michael Wagner.  Ms. Ortiz also conducted legal research to assist with a motion for sanctions,

23   *Daubert* motion, and opposition to Samsung's *Daubert* motion.  She prepared deposition

24   designations for the 2012 trial.

25           179.    **TERESA N. BURLISON.**  Ms. Burlison was an associate in the Palo Alto office

26   of Morrison & Foerster, where she focused her practice on trade secret and labor and employment

27   law, including counseling, litigation, and transactional work.  She represented clients in jury

28   trials, complex class actions, mediations, and arbitrations.  Ms. Burlison received her law degree

1   from the University of Texas in 2001.  In 1999, she served as a judicial extern to Chief Justice

2   Thomas R. Phillips of the Texas Supreme Court.  From 2001-2002, Ms. Burlison served as the

3   briefing attorney for Justice Sue Walker of the Second District Court of Appeals in Texas.  She

4   started at Morrison & Foerster in 2006.

5          180.   Ms. Burlison was involved in early discovery strategy decisions, and helped

6   prepare Apple's initial disclosures and written discovery responses.  Ms. Burlison was

7   responsible for creating Apple's initial discovery plan.  She was also a client contact for

8   discovery, interviewing custodians and assisting in the collection of documents and other items.

9   She helped supervise Apple's initial production of documents, and helped coordinate productions

10  of third-party confidential documents.  She also helped coordinate inspections of Apple's source

11  code, CAD files, and physical models.  Additionally, Ms. Burlison helped prepare for the

12  depositions of Chris Stringer, Scott Forstall, and Mark Buckley.  She was also heavily involved in

13  coordinating and scheduling depositions of most Apple witnesses.  Ms. Burlison helped staff

14  partners and associates to defend depositions of Apple witnesses, coordinated deposition

15  preparation assignments and materials, and corresponded with Samsung's counsel regarding

16  deposition scheduling.

17         181.   **KEVIN M. COLES.**  Mr. Coles is an associate in the Litigation Department of

18  Morrison & Foerster's San Francisco office.  Mr. Coles received his J.D. from the University of

19  Pennsylvania Law School in 2010, where he served as Senior Editor of the *Journal of*

20  *International Law.*  He started at Morrison & Foerster in 2010.

21         182.   Mr. Coles was a member of the Discovery Team.  He reviewed Apple documents

22  for production.  He also summarized deposition transcripts of Apple employees and experts.  He

23  conducted legal research on various topics, including expert discovery and other issues for motion

24  to strike Samsung's expert reports, and other legal issues.  He helped draft and review Apple's

25  privilege log.

26         183.   **PAUL L. NAVARRO.**  Mr. Navarro is an associate in the Litigation Department

27  of Morrison & Foerster's San Francisco office.  Mr. Navarro received his J.D. from Boston

28  College Law School in 2010, where he served as Co-Chair of the school's Diversity Committee

1    and was a member of the Saul Lefkowitz Moot Court team.  While in law school, Mr. Navarro

2    was also an extern to the Honorable Carlos T. Bea of the U.S. Court of Appeals for the Ninth

3    Circuit and an extern in the Government Bureau of the Massachusetts Attorney General's Office.

4    He started at Morrison & Foerster in 2010.

5            184.    Mr. Navarro worked on both the Discovery Team and the Utility Team.  He

6    reviewed documents for relevance and privilege of numerous Apple custodians, including

7    marketing, industrial design, and product design custodians.  He also helped review documents

8    responsive to specific discovery requests regarding Apple's design.  Mr. Navarro also reviewed

9    marketing materials for relevance and privilege and helped prepare them for production.  He

10   assisted in redacting documents produced by Apple.  He helped review and summarize

11   depositions, including the depositions of Glenn Kubota, Wayne Westerman, and

12   Gregory Weaver.  Mr. Navarro helped with deposition preparations for Apple witnesses

13   Greg Joswiak, Suzanne Lindbergh, Art Rangel, and Jason Skinder.  Mr. Navarro also assisted

14   with expert discovery, and helped review and prepare documents relating to Samsung's design

15   efforts and assisted with the preparation of related sections of the utility expert reports.  He

16   assisted with preparing infringement charts for the utility patents.  He helped with research and

17   drafting of the expert reports for Drs. Michel Maharbiz, Karan Singh, and Alex Snoeren.  He

18   assisted with preparing videos of accused Samsung phones infringing various Apple patents.

19   Mr. Navarro also conducted legal research on various topics.  He also helped prepare

20   counterarguments to support Apple's opposition to Samsung's *Daubert* motion.

21           185.    **ARIEL F. RUIZ.**  Mr. Ruiz is an associate in the New York office of Morrison &

22   Foerster LLP.  Mr. Ruiz received his J.D. in 2009 from Cornell Law School where he was

23   Articles Editor of the *Cornell International Law Journal*.  He started at Morrison & Foerster in

24   2009.

25           186.    Mr. Ruiz was primarily involved in discovery, including document review and

26   deposition preparation.  He assisted with deposition preparation for current and former Apple

27   employees, including Bob Borchers, Chuck Pisula, Greg Novick, Myra Haggerty,

28

1  Patrick Coffman, and Richard Williamson.  He also reviewed documents for production,

2  including Apple industrial design sketchbooks and documents.

3      187.   **ROBERT TRAVIS PETRAGLIA.**  Mr. Petraglia is an associate in the Litigation

4  Department of Morrison & Foerster's San Francisco office.  He received his J.D. from Harvard

5  Law School in 2009, where he served as a Senior Editor of the *Harvard Journal of Law & Public*

6  *Policy* and an Editor of the *Harvard Human Rights Journal.*  Mr. Petraglia started at Morrison &

7  Foerster in 2009.

8      188.   His work on the case included review of design sketchbooks and documents for

9  production as well as inspection of Apple prototypes.  He helped prepare for depositions of Apple

10  employees and former Apple employees, including Andre Boule, Imran Chaudhri, Wei Chen,

11  Steven Hotelling, and Michael Matas.  He helped prepare for depositions of Samsung expert

12  Brian Von Herzen.  He also assisted Dr. Balakrishnan and Dr. Karan Singh with their expert

13  reports.  He helped prepare videos demonstrating patent infringement by Samsung products.  He

14  assisted with discovery-related tasks, such as preparing responses to requests for admission, and

15  motion practice, including preparing declarations in support of Apple's motion to strike.

16  Mr. Petraglia also helped analyze evidentiary issues in support of Apple's motions *in limine*.

17      189.   **JOSHUA A. HARTMAN.**  Mr. Hartman is an associate with Morrison &

18  Foerster's litigation department.  He divides his practice between intellectual property litigation

19  and antitrust law.  Mr. Hartman's intellectual property experience encompasses patent and

20  copyright litigation, as well as Section 337 disputes pending before the U.S. International Trade

21  Commission.  Mr. Hartman received his J.D. from Columbia Law School in 2009.  He received

22  his L.L.M. in Intellectual Property Law from the London School of Economics and Political

23  Science in 2008, graduating with distinction.  He started at Morrison & Foerster in 2008.

24      190.   Mr. Hartman was a member of the Trial Team in San Jose.  He assisted with pre-

25  trial and trial tasks.  He helped prepare motions to seal trial exhibits and pre-trial filings.  He

26  helped brief Apple's objections and responses to Samsung's objections regarding trial exhibits

27  and demonstratives.  He conducted research and drafted sections of the proposed jury instructions

28  and objections to Samsung's proposed jury instructions.  He also assisted with various motions,

1    including an opposition to a motion for an adverse inference jury instruction, motion for judgment

2    as a matter of law, and opposition to motion for judgment as a matter of law.  Mr. Hartman

3    researched motions to strike.  He helped prepare an offer of proof and memoranda regarding

4    evidentiary issues at the 2012 trial.  He also performed legal research regarding injunctive relief.

5         191.    **CECILIA ZINITI.**  Ms. Ziniti was a litigation associate in the Palo Alto office of

6    Morrison & Foerster.  Ms. Ziniti maintained a broad-based intellectual property and technology

7    law practice and handled matters in the software, Internet services, social media, consumer

8    products, biotechnology, and medical device industries.  Ms. Ziniti received a J.D. and a

9    certificate in Law and Technology from the University of California, Berkeley, School of Law in

10   2009, where she was elected to the Order of the Coif.  She edited the *Berkeley Technology Law*

11   *Journal* and advised as an academic fellow of the Berkeley Center for Law & Technology.  After

12   law school, Ms. Ziniti served as a law fellow in the chambers of the Honorable Carlos T. Bea of

13   the U.S. Court of Appeals for the Ninth Circuit.  She started at Morrison & Foerster in 2011.

14        192.    Ms. Ziniti was a member of the Damages Team.  She reviewed and analyzed

15   Samsung's production of financial documents and helped draft correspondence to Samsung's

16   counsel regarding deficiencies in Samsung's financial production.  She supervised Korean

17   language contract attorneys in review of Samsung documents.  She propounded and responded to

18   written discovery requests relating to damages.  She helped draft sections of motions, including

19   Apple's Rule 37 motion for sanctions relating to damages documents, and Apple's apex motion

20   relating to Joseph Cheong and Dale Sohn.  Ms. Ziniti also helped prepare for depositions of

21   Samsung employees, including Jaehwang Sim, Timothy Sheppard, Justin Dennison,

22   Timothy Benner, Joseph Cheong, Corey Kerstetter, and Dale Il Sohn.  She researched issues

23   regarding remedies to Apple stemming from Samsung's intellectual property violations.  In

24   addition, Ms. Ziniti helped Apple's damages expert Terry Musika with his expert report and

25   helped research Samsung's damages experts.  She also helped prepare a collection of Samsung

26   strategic documents as to copying.

27        193.    **SUNNI J. YUEN.**  Ms. Yuen was an associate with the Litigation Department in

28   the New York office of Morrison & Foerster LLP.  Ms. Yuen earned her J.D. in 2008 from the

1  University of Pennsylvania Law School, where she was symposium editor of the *Journal of*

2  *International Law* and an associate editor of the *Journal of International Economic Law*.  She

3  started at Morrison & Foerster in 2008.

4      194.   Ms. Yuen was involved in the review of Apple documents for responsiveness and

5  privilege.  She also helped prepare for the depositions of Erik Wang, Myra Haggerty,

6  Steve Hotelling, and Henri Lamiraux.  She also assisted in the preparation of the expert report of

7  Dr. Ravin Balakrishnan.

8      195.   **JESSICA ANNE ROBERTS.**  Ms. Roberts is an associate in the Product

9  Liability and Litigation Practice Groups.  Her practice focuses on the pharmaceutical and aviation

10  industries as well as intellectual property.  She received her J.D. (magna cum laude, Order of the

11  Coif) from the University of San Diego School of Law in 2009, where she was the recipient of an

12  academic achievement scholarship.  During law school, she was a member of the San Diego Law

13  Review.  Ms. Roberts also worked as an extern for the Honorable Marilyn L. Huff of the U.S.

14  District Court for the Southern District of California.  She started at Morrison & Foerster in 2009.

15      196.   Ms. Roberts helped prepare and follow-up on offensive discovery requests to

16  Samsung and track outstanding discovery requests to Samsung.  She assisted with motion

17  practice, including helping prepare an opposition to Samsung's request to seal, motion to strike

18  expert theories not timely disclosed in contention interrogatories, and a *Daubert* motion.  She

19  researched and prepared a legal memorandum relating to claim preclusion.  She also assisted with

20  preparing sealing requests and tracking case deadlines.

21      197.   **DAVID S. BROWN.**  Mr. Brown is Of Counsel in the Litigation Department of

22  Morrison & Foerster's New York office.  He graduated from Fordham University School of Law

23  in 2001.

24      198.   Mr. Brown primarily assisted the Discovery Team.  He regularly met with the

25  Discovery Team to discuss discovery and case strategy.  He substantively reviewed and analyzed

26  documents for numerous Apple custodians.  He reviewed documents for responsiveness,

27  privilege, and unannounced product redactions.  He also conducted second level review of

28

1   documents to identify and feed documents to multiple teams for deposition preparation.  He

2   assisted multiple teams by analyzing depositions and exhibits and providing detailed summaries.

3        199.   **ANNABEL R. CHANG.**  Ms. Chang was an associate in Morrison & Foerster's

4   Litigation Group in the San Francisco office.  In law school, Ms. Chang served as an Articles

5   Editor for the *Washington University Law Review.*  Ms. Chang interned at the U.S. Attorney's

6   office for the Northern District of California, Missouri Public Defender's office, and two leading

7   Taiwanese law firms.  She also studied law at the University of Hong Kong and Mandarin

8   Chinese at National Taiwan University.  Ms. Chang graduated from Washington University

9   School of Law in 2009.  She started at Morrison & Foerster in 2011.

10       200.   Ms. Chang was a member of the Discovery Team.  She assisted with document

11  review, including review of documents for responsiveness and privilege.  She analyzed and

12  summarized numerous Apple employee deposition transcripts.  Ms. Chang also conducted legal

13  research on a range of legal topics that arose during the case.  She also assisted with preparing

14  subpoenas.  Ms. Chang helped coordinate the preparation of the *Daubert* motion and drafted

15  sections of the motion.  She also attended to issues of confidentiality and redactions.

16       201.   **ROBERT L. CORTEZ WEBB.**  Mr. Webb is an associate in Morrison &

17  Foerster's Litigation Group in the San Francisco office.  He received his J.D., *magna cum laude*,

18  from the University of California, Hastings College of the Law in 2010.  While attending law

19  school, Mr. Webb served as a senior articles editor for the *Hastings Race and Poverty Law*

20  *Journal.*  He started at Morrison & Foerster in 2010.

21       202.   Mr. Webb is a member of the Discovery Team.  He helped review Apple

22  documents and helped review Apple industrial design sketchbooks for production.  He also

23  reviewed documents from numerous custodians, from several groups within Apple and from third

24  parties.  He assisted with privilege review and helped prepare the privilege log.  Mr. Webb also

25  analyzed and summarized depositions of Apple and Samsung witnesses.  He conducted research

26  on legal and equitable issues.  He also analyzed and prepared exhibits for the *Daubert* motion.

27       203.   **SHELLA L. SADOVNIK.**  Ms. Sadovnik was an associate in Morrison &

28  Foerster's Litigation Group in the Los Angeles office.  Her practice included unfair competition,

1  trade practices, FCPA, and securities litigation.  Ms. Sadovnik received her J.D. from Loyola Law

2  School of Los Angeles in 2009.  While attending law school, she participated in the *Loyola Law*

3  *Review* and was a member of the Loyola Student Bar Association.  Ms. Sadovnik started at

4  Morrison & Foerster in 2011.

5  204.   Ms. Sadovnik was a part of the Discovery Team.  She reviewed documents on

6  Apple custodians for responsiveness and privilege.  She also reviewed documents for third-party

7  confidentiality.  Ms. Sadovnik also reviewed deposition transcripts and prepared summaries of

8  the depositions and exhibits for the team.  She conducted legal research on issues, such as expert

9  witness qualifications and rules of evidence.

10  205.   **LYNN M. HUMPHREYS.**  Ms. Humphreys focuses her practice on intellectual

11  property counseling and litigation involving trademark, copyright, advertising, unfair

12  competition, and Internet issues.  She regularly addresses these topics in a variety of industries,

13  including hospitality, computer hardware, computer software, medical devices, education, and

14  entertainment.  Her practice includes counseling clients from start-ups to large corporations on

15  the selection, protection, registration, enforcement, and acquisition or disposition of trademarks

16  and copyrights in the U.S. and internationally.  In advising clients, she draws on more than

17  15 years of intellectual property litigation experience, including the prosecution and defense of

18  trademark and copyright infringement, false advertising, and unfair competition claims.  In

19  addition to federal court litigation, she has represented clients in Trademark Trial and Appeal

20  Board opposition and cancellation actions and ICANN domain name dispute proceedings.  She

21  graduated from the University of Virginia School of Law in 1993.  Ms. Humphreys started at

22  Morrison & Foerster in 1996.

23  206.   Ms. Humphreys assisted Apple's Design Team with its work relating to consumer

24  surveys, helping to select survey experts and the types of surveys to conduct.  Her work spanned

25  from Apple's preliminary surveys through assisting with final survey reports.  She conferred

26  regularly with both the Design Team and Apple's experts, helping to shape the trademark and

27  trade dress strategy.  She analyzed survey issues, methodologies, and results and provided

28  feedback to the internal team and the client.

207. **JEFFREY M. DAVID.** Mr. David is an associate in the Litigation Department of Morrison & Foerster's San Diego office. Mr. David received his J.D. from Duke University School of Law in 2009, where he was the executive editor of the *Alaska Law Review*, and a member of the Duke Law Moot Court Executive Board. While in law school, he served as a judicial extern to the Honorable Richard Fybel, Associate Justice on the California Court of Appeal. Mr. David started at Morrison & Foerster in 2011.

208. Mr. David was a member of the Discovery Team. He helped review Apple documents for responsiveness and privilege and assisted with the privilege log. He also reviewed and summarized depositions for the team. He conducted research on various topics including expert, discovery, and trial issues. He also helped prepare attorney declarations and exhibits.

209. **IRENE E. PERTSOVSKY.** Ms. Pertsovsky was an associate in the Litigation Department of Morrison & Foerster's San Francisco office. Ms. Pertsovsky had a broad-based litigation practice, emphasizing in securities litigation and general commercial litigation. Her experience crossed a wide range of industries, including telecommunications, semiconductor, and financial services. She received her J.D. *cum laude* from U.C. Hastings College of the Law in 2006 and was a member of the Thurston Society. While at Hastings, she was awarded the David E. Snodgrass Award for appellate advocacy. Ms. Pertsovsky started at Morrison & Foerster in 2006.

210. Ms. Pertsovsky helped support the Design Team. She reviewed Apple design sketchbooks and documents for production. She helped prepare for depositions of Apple employees, including Michael Tchao, Tamara Whiteside, and Achim Pantfoerder. She assisted with researching and selecting a rebuttal expert on the issue of ergonomics and helped Dr. Alan Hedge with his expert report.

211. **KIMBERLY R. GOSLING.** Kimberly Gosling is a litigation associate in Morrison & Foerster's San Diego office. Ms. Gosling's practice involves product liability, aviation, pharmaceutical, and general commercial litigation matters. Ms. Gosling represents clients in complex and multidistrict litigation. She received her J.D. from Harvard Law School in 2006. While attending law school, she was a teaching fellow in American constitutional law, a

1  line editor of the *Journal on Legislation*, a member of the Board of Student Advisers, and a legal

2  writing instructor.  Ms. Gosling started at Morrison & Foerster in 2006.  From 2007-2008, she

3  served as a law clerk for the Honorable Jeffrey T. Miller of the U.S. District Court for the

4  Southern District of California.  Ms. Gosling returned to Morrison & Foerster after her clerkship

5  in 2008.

6          212.    Ms. Gosling conducted research regarding numerous motions and issues.

7  Ms. Gosling helped prepare numerous motions and supporting documents, including a motion to

8  compel apex depositions and a supporting declaration and reply, a motion to file under seal, a

9  motion to compel discovery responses and a supporting declaration, a motion for attorney's fees,

10  a motion to shorten time, a declaration for a reply in support of a motion for sanctions based on

11  Samsung's violation of discovery orders, and a motion to strike Samsung's expert witness

12  opinions regarding invalidity of utility patents and a supporting declaration.  She performed legal

13  research to support several Apple briefs.  She helped with preparation for oral argument on the

14  apex motions.  Ms. Gosling also analyzed Samsung's discovery responses and prepared Apple's

15  responsive strategy.  She helped draft numerous meet-and-confer letters regarding discovery

16  issues, including deposition, document production, and discovery response issues.  Ms. Gosling

17  helped analyze grounds for post-discovery motions related to Samsung's discovery misconduct.

18  She also helped draft jury instructions and assisted with jury instruction and verdict form

19  strategies.

20          213.    **LUKE T. BAGLEY.**  Mr. Bagley was a corporate associate in Morrison &

21  Foerster's New York office.  While earning his J.D. at Fordham University School of Law,

22  Mr. Bagley was a member of the *Fordham Urban Law Journal*.  Mr. Bagley received his J.D.

23  from Fordham University School of Law in 2009, and his L.L.M. in Taxation from New York

24  University School of Law in 2010.  He started at Morrison & Foerster in 2010.

25          214.    Mr. Bagley largely assisted with discovery and deposition preparation.  He helped

26  prepare for the depositions of Apple industrial designers and product designers, including

27  Jonathan Ive, Eugene Whang, Daniel Coster, Daniele De Iuliis, Duncan Kerr, Matthew Rohrbach,

28

1 Evans Hankey, and Stephen Zadesky. He also reviewed Apple's industrial design sketchbooks

2 and documents for production.

3      215. **DEVON EDWARDS.** Mr. Edwards is an associate in the Litigation Department

4 of Morrison & Foerster's San Francisco office. He graduated *cum laude* from the University of

5 Texas School of Law, where he served as associate editor of the *Texas Law Review*. Mr. Edwards

6 started at Morrison & Foerster in 2011.

7      216. Mr. Edwards was a member of the Discovery Team. He reviewed Apple

8 documents for responsiveness and privilege. He analyzed and summarized deposition transcripts

9 and reviewed deposition testimony regarding potential prior art. He conducted legal research

10 regarding expert issues. He reviewed and analyzed models for use in the case. Mr. Edwards also

11 assisted the Design Team. He helped prepare for the deposition of Apple industrial designer

12 Shin Nishibori, including review and analysis of documents and sketchbooks. Mr. Edward also

13 assisted with Apple's opposition to Samsung's motion for summary judgment and Apple's

14 responses to Samsung's errata designations.

15      217. **TED HASSE.** Mr. Hasse was a litigation associate in Morrison & Foerster's San

16 Francisco office. His practice involved a range of intellectual property matters, including

17 trademark and copyright litigation, proceedings before the Trademark Trial and Appeal Board,

18 and trademark prosecution and enforcement. While serving in the U.S. Army, Mr. Hasse

19 graduated from the Mandarin Chinese program at the Defense Language Institute of Monterey,

20 California, with Highest Honors, and was awarded the Provost Award for highest academic

21 achievement in his class. He received his J.D. from University of Virginia School of Law in

22 2008. Mr. Hasse started at Morrison & Foerster in 2008.

23      218. Mr. Hasse was a member of the Discovery Team. In that role, he analyzed

24 discovery issues and drafted meet and confer correspondence to Samsung's counsel. Mr. Hasse

25 also assisted in drafting responses to written discovery requests. He also reviewed and analyzed

26 Samsung documents, and helped interview Apple employees. In addition, Mr. Hasse interfaced

27 with Apple's co-counsel at WilmerHale on discovery matters, and helped conduct research and

28

1   assisted with the drafting of Apple's motion for preliminary injunction and a motion to compel.

2   He also helped prepare for the deposition of Omar Sharif Khan.

3   219.   **JINYOUNG CHOI.**  Ms. Choi is an associate in the Corporate Group of

4   Morrison & Foerster's New York office.  Her practice focuses on general corporate matters.

5   Ms. Choi earned her J.D. in 2009 from New York University School of Law, where she was

6   Production Editor of the *Journal of International Law and Politics*.  She started at Morrison &

7   Foerster in 2010.

8   220.   Ms. Choi was a member of the Discovery Team.  She helped review Apple

9   documents for production.  She reviewed documents for responsiveness and privilege and her

10  review covered numerous Apple custodians, including marketing, industrial designers, graphical

11  user interface designers, and product designers.  Ms. Choi also assisted with deposition

12  preparations for Apple witnesses, including Steven Sinclair, Evans Hankey, Stephen Zadesky,

13  Erik Wang, and Patrick Coffman.

14  221.   **NATALIE R. RAM.**  Ms. Ram is an associate in the Litigation Department of

15  Morrison & Foerster's Washington, D.C. office.  Her practice focuses on Supreme Court and

16  appellate litigation, including patent infringement cases before the Federal Circuit.  She graduated

17  from Yale Law School in 2008, and clerked for the Hon. Stephen G. Breyer of the United States

18  Supreme Court and for the Hon. Guido Calabresi of the United States Court of Appeals for the

19  Second Circuit.  Ms. Ram started at Morrison & Foerster in 2011.

20  222.   Ms. Ram researched a number of issues relating to the availability of a preliminary

21  injunction.  She prepared several memoranda analyzing the affirmance, reversal, grant, or denial

22  of a preliminary injunction on appeal to the Federal Circuit.  Ms. Ram also assisted in post-trial

23  briefing.  She assembled, reviewed, and revised Apple's post-trial motion pursuant to Rules 50

24  and 59.  She drafted portions of that motion relating to a variety of patent and trade dress claims.

25  Ms. Ram also researched and drafted portions of Apple's responses to Samsung's post-trial

26  motions, including Apple's response to Samsung's assertion of juror misconduct.  Ms. Ram

27  researched a number of issues relating to this Court's resolution of the post-trial motions,

28

74

1  including issues of claim construction, damages calculations, and this Court's grant of a new trial

2  on some damages.

3      223.  **JOHN K. BLAKE, JR.**  Mr. Blake is an associate in the Litigation Department in

4  Morrison & Foerster's San Francisco office.  His practice focuses on intellectual property and

5  antitrust litigation.  He earned his J.D., *cum laude*, from Cornell Law School in 2008.  While in

6  law school, he served as an editor of the *Cornell Law Review*.  Mr. Blake started at Morrison &

7  Foerster in 2011.

8      224.  Mr. Blake primarily worked with the Discovery Team.  Mr. Blake was involved in

9  the early phases of the case, including the preliminary injunction phase.  During that phase, he

10  helped prepare a plan for document collection, performed legal research, assisted in drafting a

11  declaration, and reviewed Android source code.  Mr. Blake also assisted with discovery later in

12  the case.  He helped draft interrogatory responses, document request responses, the protective

13  order, and a stipulation regarding electronically stored information.  He helped prepare for the

14  Rule 26(f) conference and case management conference.  He helped draft the case management

15  conference statement and researched issues related to case severance and bifurcation.  Mr. Blake

16  assisted with preparing various administrative motions to seal and supporting papers and

17  declarations, including Apple's opposition to Samsung's motion to exclude Cooper Woodring

18  testimony, motion and reply for a preliminary injunction, motion to supplement preliminary

19  injunction record; motion to compel Samsung's discovery responses; objections to Samsung's

20  untimely preliminary injunction evidence; motion for protective order regarding Michael Zeller;

21  and exhibit for Samsung's preliminary injunction presentation.  Mr. Blake also assisted in 2013 in

22  opposing Samsung's motion for a new trial relating to the '381 patent.

23      225.  **DIANA B. KRUZE.**  Ms. Kruze is an associate in the Litigation Department of

24  Morrison & Foerster's San Francisco office.  Her practice focuses on patent and copyright

25  litigation.  Ms. Kruze also has extensive experience with licensing, ITC actions and

26  reexaminations.  She represents clients in a wide range of technical disciplines including

27  software, medical devices, nano-drugs, user interfaces, cellular communications, satellite systems,

28  and semiconductor processing and packaging.  Ms. Kruze clerked for Judge James Ware and

externed for Judge Saundra Armstrong, both of the U.S. District Court for the Northern District of California.  Ms. Kruze graduated from the University of California, Hastings College of the Law in 2006 and was elected Order of the Coif.  She started at Morrison & Foerster in 2005.

226.    Ms. Kruze assisted with discovery in this case.  She reviewed documents for a Samsung 30(b)(6) deposition.  She also prepared for and attended the 30(b)(6) deposition of Samsung Chief Strategy Office Justin Denison as well as various thirdparty depositions, including Barry Beith, Corina Proctor, and Daniel Mauney.  Ms. Kruze drafted discovery letters to Samsung's counsel, motions to compel discovery, and oppositions to Samsung's motions to compel discovery from Apple.  She also prepared for and attended meet and confers regarding discovery disputes.

227.    **J. RYAN GILFOIL.**  Mr. Gilfoil is an associate in the Litigation Department of Morrison & Foerster's San Francisco office.  He works primarily with technology companies in a variety of sectors, including search engines, networking and operating system software, and e-commerce fraud-screening services.  Mr. Gilfoil has represented these companies as both plaintiffs and defendants in patent infringement suits, contract disputes, and other matters. Mr. Gilfoil has also represented the former CEO of a major technology company in stock options backdating lawsuits.  Mr. Gilfoil received his J.D. from the University of California, Berkeley School of Law (Boalt Hall) in 2006, where he was a member of the California Law Review and was named to the Order of the Coif.  Prior to attending law school, Mr. Gilfoil was an investment banker and a software engineer designing and building web applications.

228.    Mr. Gilfoil was involved with the case at the outset.  He drafted discovery, in particular expedited preliminary injunction discovery.  He researched and analyzed materials regarding brand loyalty in the smartphone market, which was relevant to damages issues. Mr. Gilfoil also assisted with both Apple and third-party discovery, drafting subpoenas and reviewing documents for production.  He reviewed and analyzed source code for infringement issues.  Mr. Gilfoil analyzed case law regarding lost profits, irreparable harm, and injunctions, and drafted briefing regarding those issues.

229. **JOI L. GARNER.** Ms. Garner is an associate with the Corporate Group in Morrison & Foerster's New York office. Her practice focuses on general corporate governance, mergers and acquisitions, and securities laws. Ms. Garner earned her J.D. in 2007 from the Hastings College of the Law at the University of California, where she was Staff Editor of the *Hastings Business Law Journal*. She started at Morrison & Foerster in 2007.

230. Ms. Garner was a member of the Discovery Team. She helped review Apple documents for production. She reviewed documents for responsiveness and privilege and her review covered numerous Apple custodians, including marketing, industrial designers, and product designers.

231. **PATRICIA SVILIK.** Ms. Svilik is an associate in the Litigation Department of the San Francisco office of Morrison & Foerster. Ms. Svilik focuses her practice on intellectual property litigation, and has been a member of four trial teams at Morrison & Foerster. She has experience litigating trademark, copyright, and patent infringement actions in federal court. She earned her J.D. from Boalt Hall, U.C. Berkeley School of Law in 2005, where she served as a member of the *California Law Review* and served as executive editor and articles editor of the *Ecology Law Quarterly*. She was awarded the American Jurisprudence Award for the highest academic achievement in Property Law. After law school, Ms. Svilik clerked for the Honorable Paul C. Huck of the U.S. District Court for the Southern District of Florida. Ms. Svilik started at Morrison & Foerster in 2008.

232. Ms. Svilik was a member of the Discovery Team. She drafted responses to over 200 requests for production after consulting with multiple team members across all of the substantive teams. She researched and drafted responses to interrogatories and coordinated the team responses to nearly 1000 requests for admission. Ms. Svilik also helped draft briefs, including an opposition to Samsung's motion to compel and Apple's motion for administrative relief. She assisted in drafting discovery correspondence to Samsung's counsel.

233. **MICHAEL V. SACHDEV.** Mr. Sachdev was an associate in the Washington, D.C. office of Morrison & Foerster. His practice focused on white-collar criminal and complex commercial litigation. He received his J.D. from Columbia Law School in 2004. While in law

1    school, Mr. Sachdev was a Harlan Fiske Stone Scholar and served as Managing Editor for the

2    *Columbia Journal of Law and Social Problems*.  He started at Morrison & Foerster in 2006.

3         234.    Mr. Sachdev reviewed Apple documents and design notebooks for privilege and

4    responsiveness.  He also assisted in the scheduling of depositions, and helped prepare for the

5    deposition of J. Strickon.  In addition, Mr. Sachdev helped review deposition transcripts relating

6    to confidentiality designations and de-designations.

7         235.    **RICHARD MILLS-ROBERTSON.**  Mr. Mills-Robertson was an associate in the

8    litigation department of the New York office of Morrison & Foerster LLP.  His practice focused

9    on intellectual property litigation, with an emphasis on patent and trade secret matters.  Mr. Mills-

10   Robertson received his J.D., in 2001, from Cornell Law School with a concentration in Business

11   Law and Regulation and was named an Olin Law & Economics Scholar.  He started at

12   Morrison & Foerster in 2008.

13        236.    Mr. Mills-Robertson reviewed and analyzed documents for production from

14   numerous Apple custodians.  He analyzed marketing, advertising, design, research and

15   development documents to identify and feed documents to multiple teams for discovery and pre-

16   trial preparations, such as deposition preparation.  He analyzed depositions and exhibits and

17   provided detailed summaries to assist the substantive teams with pre-trial and trial preparations.

18   In addition, he worked with the Utility Team and helped conduct an analysis of alleged prior art

19   references cited in Samsung's invalidity contentions for Apple's asserted utility patents.

20        237.    Additional biographical information regarding most of these Morrison & Foerster

21   attorneys can be found on the firm's website (www.mofo.com).

22        **D.    Paralegals and Other Employees**

23        238.    **ROSAMARIA BARAJAS.**  Ms. Barajas is a senior litigation paralegal at

24   Morrison & Foerster.  She has been with the firm since 2006.  Ms. Barajas was involved in all

25   aspects of the litigation.  She had a substantial role as lead paralegal on the team.  She assisted

26   with the preparation of many of Apple's motions, including fact and cite checking, drafting of

27   documents, and e-filing.  She also coordinated Apple's team of paralegals and supervised the

28   collection, review, and production of documents as well as the receipt and management of

1    documents produced by Samsung and third parties, and coordinated with various discovery

2    vendors.  She also managed project requests from the Morrison & Foerster litigation team,

3    responding to and directing others to respond to inquiries from the attorneys on the team.

4    Ms. Barajas was a part of both the 2012 Trial Team and the November 2013 Retrial Team, where

5    she assisted with witness preparation, prepared documents for filing, e-filed motions and briefs,

6    managed logistics, and otherwise supported the trial effort.

7         239.   **EDWARD W. SITTLER.**  Mr. Sittler was a litigation paralegal at Morrison &

8    Foerster.  He joined the firm in 2010 with several years of experience.  Mr. Sittler assisted both

9    the Utility Team and Design Team.  Mr. Sittler coordinated Apple's extensive collection of

10   phones, tablets, and other devices, including locating, purchasing, tracking, maintaining and

11   providing support for the devices.  He also supervised device inspections and photographing of

12   devices.  Mr. Sittler helped research new Samsung products.  He also assisted with preparations

13   of witness files, deposition materials, hearing materials, pleadings, declarations, and expert

14   reports.  Mr. Sittler was also involved throughout the 2012 trial, where he provided in court

15   support for attorneys, assisted in preparation of witness files, witness disclosure and objection

16   materials, and trial exhibits.

17        240.   **THOMAS E. BEYER.**  Mr. Beyer is a senior litigation paralegal at Morrison &

18   Foerster.  He has been with the firm since 2000.  Mr. Beyer helped fact and cite check documents

19   throughout the case, and provided support to a number of Apple's substantive teams.

20   Additionally, Mr. Beyer was the lead paralegal in the courtroom throughout the 2012 trial, and he

21   assisted in the creation of witness preparation materials and prepared documents for filing.

22        241.   **MOLLIE B. GABRYS.**  Ms. Gabrys was a litigation paralegal at Morrison &

23   Foerster.  She joined the firm in 2010.  Ms. Gabrys primarily worked with the Discovery Team.

24   She helped screen Apple's non-searchable documents, assisted with redactions of documents for

25   production, and helped maintain document review decision and production logs.  She also

26   assisted with deposition preparations, expert reports, and finalizing motions and supporting

27   papers for filing.  Ms. Gabrys was part of the 2012 Trial Team in San Jose, where she assisted in

28

1    maintaining exhibits, helping with witness preparations, creating witness materials, and preparing

2    documents for filing.

3        242.    **KENNETH L. MACCARDLE.**  Mr. MacCardle is a litigation paralegal at

4    Morrison & Foerster.  He has been with the firm since 2006.  Mr. MacCardle primarily supported

5    the Design Team throughout the case, assisting with tasks such as preparation of expert reports.

6    He helped more broadly with discovery and pre-trial tasks, such as preparation of trial exhibits.

7    He was also involved throughout both the 2012 trial and the November 2013 damages retrial,

8    where he assisted in the creation of witness files, and he helped prepare daily disclosure and cross

9    disclosure materials for witnesses.

10       243.    **PRISCILLA R. OROPEZA.**  Ms. Oropeza is a litigation paralegal at Morrison &

11   Foerster and has been with the firm since 2009.  Ms. Oropeza provided support for attorneys on

12   several of the substantive teams and Discovery Team, including assisting with deposition

13   preparation.  She was also a member of both the 2012 Trial Team and the 2013 Retrial Team,

14   where she helped with various tasks, such as preparation of witnesses for trial, trial exhibits, and

15   closing materials.

16       244.    **JANELL E. GEHRKE.**  Ms. Gehrke is a litigation paralegal at Morrison &

17   Foerster and has been with the firm since 2012.  She previously worked as a paralegal at another

18   law firm for five and a half years.  Ms. Gehrke worked with various teams prior to trial by helping

19   to prepare materials for filings and depositions and assisting with the mediation brief and expert

20   reports.  She was also a member of the Trial Team in San Jose, where she assisted with day-to-

21   day trial preparations, such as creating materials for witness binders, and preparing documents for

22   filing.

23       245.    **PRISCILLA H. MOON.**  Ms. Moon was a litigation paralegal at Morrison &

24   Foerster.  She joined the firm in 2009.  Ms. Moon provided support to several of the substantive

25   teams and Discovery Team prior to trial.  She assisted with distribution of related media and blog

26   coverage, and she helped with deposition preparation.  She also provided support for handling

27   Korean-language documents.

28

246.   **JOYCE K. NG.**  Ms. Ng is a litigation paralegal at Morrison & Foerster.  She has been with the firm since 2003.  She primarily worked with the Utility Team and helped that team with opening and rebuttal expert reports.  She also assisted the Design Team in handling prototypes and CAD files.  More broadly, she helped with director files and source code updates for production by Apple, use by Apple experts, and inspections by opposing counsel.

247.   **ANNE LEPORE.**  Ms. LePore is a senior litigation paralegal at Morrison & Foerster.  She has been with the firm since 1997.  Ms. LePore was heavily involved in Apple's post-trial motions and keeping track of Apple's litigation costs.  She had a substantial role in the fact and cite checking of many of Apple's motions.  She coordinated with Apple's costs team and both reviewed and supervised others in the review of thousands of pages of vendor invoices in connection with Apple's bill of costs.

248.   **ERIC R. ROBERTS.**  Mr. Roberts is the Director of Morrison & Foerster's Forensic Accounting Services Group and specializes in cases involving the securities laws and in providing assistance with internal investigations.  He is a Certified Public Accountant, a Certified Fraud Examiner, and is certified in financial forensics by the American Institute of CPAs.  He started at Morrison & Foerster in 2000.

249.   Mr. Roberts worked with the Damages Team on a variety of tasks.  He reviewed and analyzed Apple and Samsung financial documents, deposition transcripts and exhibits, and expert reports to consult and provide guidance to the team on damages-related issues.  He also helped with motion practice, including drafting sections of a motion for sanctions and a supporting declaration.

250.   A list of the above timekeepers with the total hours that each billed through March 1, 2013; the total fees each billed through March 1, 2013; and the discounted effective rate for each timekeeper across that time period, is attached as **Exhibit A.**  To be conservative, the time Ms. Tucher and Ms. Rawson billed in that time period is discounted by 25% to account for the fact that each spent substantial time coordinating this litigation with related matters around the world, and some of that time may have related more heavily to the issues in other matters.  As

1   seen in Exhibit A, in total after accounting for that discount, these timekeepers billed

2   $47,210,976.52 through March 1, 2013.

3   **IV.   MORRISON & FOERSTER'S RATES ARE COMPARABLE TO PREVAILING
        RATES IN THE COMMUNITY FOR LIKE-SKILLED PROFESSIONALS.**

4

5   251.   Every other year, the American Intellectual Property Law Association (the

6   "AIPLA") produces an Economic Survey that reports on, among other things, billing rates for

7   intellectual property services.  I have reviewed the July 2013 edition of the AIPLA Economic

8   Survey Report and compared the rates charged by Morrison & Foerster's attorneys.  The AIPLA

9   Economic Survey indicates that the median billing rate for partners at private firms in the San

10  Francisco Consolidated Metropolitan Statistical Area (CMSA) was $680 in 2012, and the third

11  quartile (75%) was $825.  The median billing rate for associates at private firms in the San

12  Francisco CMSA was $513 in 2012, and the third quartile (75%) was $576.

13  252.   The median billing rates for partners, of counsel, and associates who billed more

14  than $100,000 in fees on this case, are consistent with the numbers reported in the AIPLA

15  Economic Survey, as seen in Exhibit A.

16  253.   Morrison & Foerster's rates are comparable to the rates charged by Samsung's

17  counsel, Quinn Emanuel Urquhart & Sullivan LLP.  A filing in this case showed that Quinn

18  Emanuel has charged Samsung hourly rates of $730-1035 for partners and of counsel and $290-

19  620 for associates.  (Dkt. No. 1951-1, Ex. 1 to the Decl. of Diane C. Hutnyan Identifying

20  Samsung's Attorneys' Fees and Costs Pursuant to the Court's August 24, 2012 Order.)  For the

21  three motions at issue in that filing, Samsung charged an average rate of $821 for partners and

22  $448 for associates.  (*Id.*)  Indeed, a comparison of the rates in Samsung's filing to the rates in

23  Exhibit A shows that Samsung paid higher rates to its counsel than Apple paid to its counsel with

24  comparable experience.  (*Compare* Dkt. No. 1951-1, *with* Exhibit A.)

25  254.   Similarly, a bankruptcy court filing shows that in 2009, "hourly rates for partners

26  and of counsel of Quinn Emanuel range from $970 to $580," and "hourly rates for U.S. associates

27  range from $390 to $820."  (Dkt. No. 906-2 at 6 (Decl. of Andrew J. Rossman ISO Debtors'

28  Appl. for Order Pursuant to 11 U.S.C. §§ 327(e) and 328(a) Approving the Emp., Retention, &

1    Subst. of Quinn Emanuel Urquhart Oliver & Hedges as Special Litig. Counsel ¶ 17, *In re G-I*

2    *Holdings Inc.*, Case Nos. 01-30135 and 01-38790 (Bankr. D. N.J. Nov. 19, 2009)).)

3          255.     Morrison & Foerster's fees for its paralegals are also comparable to those charged

4    in the community for similarly-skilled professionals. For example, the rate charged for

5    Ms. Barajas, a senior paralegal, was comparable to the rate Quinn Emanuel charged for paralegals

6    in 2009. Quinn Emanuel's hourly billing rate for paralegals was $265-295. (Dkt. No. 906-2

7    at 6.)

8          256.     Finally, the rates sought by Apple should be compared to the small number of

9    firms with the size, experience, and expertise to effectively and successfully litigate a case of this

10    scope and magnitude. In this regard, I note that Morrison & Foerster has a highly regarded

11    national intellectual properly litigation practice and has been recognized as one of the leading

12    practices in the country. In 2013, Chambers Global named Morrison & Foerster USA Law Firm

13    of the Year. Also in 2013, Chambers USA named Morrison & Foerster Intellectual Property Firm

14    of the Year. The firm was named by the *National Law Journal* on its 2012 Hot List of firms that

15    excel in providing patent, copyright, and trademark legal services and by the *U.S. News & World*

16    *Report* as the 2011-2012 "Law Firm of the Year" in the U.S. in Technology Law. As indicated

17    above, Apple's Morrison & Foerster trial team of Harold J. McElhinny, Michael A. Jacobs, and

18    Rachel Krevans have been recognized as among the finest intellectual property trial lawyers in

19    the country.

20    **V.     DISCOUNTS, WRITE DOWNS, AND WRITE OFFS.**

21          257.     Apple is a long-standing client of Morrison & Foerster and has retained the firm

22    on numerous matters both large and small in a variety of substantive areas. For this reason and

23    because this matter was a very substantial undertaking, Apple received a significant discount

24    from the firm's standard rates.

25          258.     By providing monthly and quarterly budget estimates that must be approved by

26    Apple, and conducting internal invoice quality control reviews, the invoices submitted to and paid

27    by Apple have reflected legal fees that are both appropriate and reasonable.

28

259.   Morrison & Foerster also conducts thorough reviews of each invoice before sending it to Apple to confirm that each entry reflects time appropriately charged to Apple.  In instances where an entry reflects time that should not be charged to the client—whether due to a special client arrangement, inefficiencies, or otherwise—the entry is removed from the invoice and is not billed to the client.  Some instances where entries are removed from an invoice and not billed to the client include:  (i) time spent by a new team member getting up-to-speed on case basics; (ii) training on an e-discovery review tool; (iii) internal team and case administration; and (iv) preparing case budgets.  In the end, each invoice is reviewed by a team of individuals, including attorneys, litigation support staff, and accounting support staff.  Morrison & Foerster and Apple have additional rigorous billing requirements, including:  (i) no block billing—only one task per timenote entry; (ii) the use of task codes; (iii) billing in 0.10 time increments, as opposed to traditional 0.25 time increments; (iv) a specificity requirement for each timenote entry; and (v) pre-approval by Apple of each person who bills time to a matter.  In addition, Apple requires budget estimates on a monthly and quarterly basis, and budget updates towards the end of each month.

260.   The precise amount of fees that Apple seeks from Samsung will be addressed separately in the declaration of Rachel Krevans.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 5, 2013 at San Francisco, California.


                                                       _/s/ Michael A. Jacobs_____
                                                       Michael A. Jacobs

1

**ATTESTATION OF E-FILED SIGNATURE**

2

I, Rachel Krevans, am the ECF User whose ID and password are being used to file this

3

Declaration.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michael Jacobs has

4

concurred in this filing.

5

Dated:  December 5, 2013                          */s/ Rachel Krevans*
                                                                Rachel Krevans

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28