1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065-2139
8  Telephone:  (650) 801-5000
   Facsimile:  (650) 801-5100
9
   William C. Price (Bar No. 108542)
10 williamprice@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
11 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
12 Los Angeles, California 90017
   Telephone: (213) 443-3000
13 Facsimile: (213) 443-3100

14 Attorneys for SAMSUNG ELECTRONICS
   CO., LTD., SAMSUNG ELECTRONICS
15 AMERICA, INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

                    SAN JOSE DIVISION

| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK (PSG) |
|---|---|
| Plaintiff, | **SAMSUNG'S SUPPLEMENTAL RESPONSE TO NOVEMBER 8, 2013 ORDER TO SHOW CAUSE WHY SANCTIONS ARE NOT WARRANTED** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **Date:**   December 9, 2013<br>**Time:**   3:00 p.m.<br>**Place**:   Courtroom 5, 4th Floor<br>**Judge**:   Hon. Paul S. Grewal |
| Defendants. | **PUBLIC REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

ARGUMENT .................................................................................................................................. 1

I. APPLE'S AND NOKIA'S OVERBROAD SANCTIONS REQUESTS ARE UNPRECEDENTED AND GROSSLY DISPROPORTIONATE ....................................... 1

    A. Apple's Non-Fee Sanctions Should Be Denied ......................................................... 2

    B. Nokia's Non-Fee Sanctions Should Be Denied ......................................................... 3

    C. Apple's And Nokia's Requests For Attorneys' Fees Should Be Denied .................. 5

II. ANY SANCTION SHOULD BE LIMITED TO REASONABLE FEES INCURRED BEFORE APPLE AND NOKIA SOUGHT TO INVOLVE THE COURT ........................................................................................................................... 7

    A. Samsung Disclosed The Material Facts Regarding The Inadvertent Disclosures Before Apple Filed Its Motion ............................................................... 8

    B. Apple And Nokia Should Not Recover Fees For Pursuing Groundless Theories Of Use ......................................................................................................... 9

    C. Apple And Nokia Should Not Be Reimbursed For Their Efforts To Prolong And Complicate This Dispute .................................................................................... 9

CONCLUSION ............................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adele v. Dunn*,
   2013 WL 593291 (D. Nev. Feb. 14, 2013) ...............................................................................5

*Bradford Tech. v. NCV Software.com*,
   2013 WL 75772 (N.D. Cal. Jan. 4, 2013) ...............................................................................10

*Brocade Comm'cns Sys. v. A10 Networks*,
   2011 U.S. Dist. LEXIS 99932 (N.D. Cal. Sept. 6, 2011) .......................................................10

*Cole v. U.S. Dist. Court for Dist. of Idaho*,
   366 F.3d 813 (9th Cir. 2004) ...................................................................................................5

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
   890 F.2d 165 (9th Cir. 1989) ...................................................................................................3

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) .....................................................................................................7

*Genentech, Inc. v. Insmed, Inc.*,
   236 F.R.D. 466 (N.D. Cal. 2006) .............................................................................................5

*Harmston v. City & County of San Francisco*,
   2007 WL 3306526 (N.D. Cal. Jan. 29, 2008) ..........................................................................2

*Hyde & Drath v. Baker*,
   24 F.3d 1162 (9th Cir. 1993) ...................................................................................................2

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) ...................................................................................................2

*Lambright v. Ryan*,
   2010 WL 1780878 (D. Ariz. May 4, 2010) .............................................................................2

*Lambright v. Ryan*,
   698 F.3d 808 (9th Cir. 2012) ...................................................................................................5

*LifeScan Scotland v. Shasta Techs.*,
   2013 WL 5949629 (N.D. Cal. Nov. 6, 2013) ........................................................................10

*Merrigan v. Affiliated Bankshares of Colo., Inc.*,
   775 F. Supp. 1408 (D. Col. 1991) ...........................................................................................3

*Minn. Mining & Mfg. Co. v. Pribyl*,
   259 F.3d 587 (7th Cir. 2001) ...................................................................................................2

*In re Napster, Inc. Copyright Litig.*,
    479 F.3d 1078 (9th Cir. 2007)..................................................................................................5

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*,
    854 F.2d 1538 (9th Cir. 1988).............................................................................................1, 3

*In re Papst Licensing GmbH & Co. KG Litig.*,
    250 F.R.D. 55 (D.D.C. 2008)..................................................................................................4

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) ................................................................................................................1

*In re Rubin*,
    769 F.2d 611 (9th Cir. 1985)...................................................................................................1

*Silva v. Potter*,
    2006 WL 3298543 (M.D. Fla. Sept. 25, 2006) .......................................................................5

*Textscape LLC v. Adobe Sys. Inc.*,
    2010 WL 2942026 (N.D. Cal. July 27, 2010) ........................................................................5

*Transamerica Computer Co., Inc. v. IBM Corp.*,
    573 F.2d 646 (9th Cir. 1978)...................................................................................................5

*United States v. Zolin*,
    491 U.S. 554 (1989) ................................................................................................................4

*Wilson v. Kayo Oil Co.*,
    563 F.3d 979 (9th Cir. 2009)...................................................................................................4

**<u>Statutes</u>**

28 U.S.C. § 636(b)(1).....................................................................................................................2

35 U.S.C. § 285 ..............................................................................................................................5

Fed. R. Civ. P. 37 ...................................................................................................................1, 3, 5

Fed. R. Civ. P. 37(b).......................................................................................................................1

Fed. R. Civ. P. 37(b)(2)(C).............................................................................................................5

As the recent hearing before the Court made clear, the OSC concerns Quinn Emanuel's inadvertent failures to redact a few lines in a lengthy, otherwise properly redacted expert report before that report was sent to Samsung.  Apple's and Nokia's rhetorical bombast at the hearing should not distract from that simple fact, however regrettable.  And, as the Court noted, Apple has blatantly mischaracterized Samsung's positions, including that Samsung ███████████ ████████████████████████████████████████ Samsung and Quinn Emanuel have undertaken a massive investigation at significant expense showing that Samsung did not know of the unredacted confidential information in the Teece Report and did not use it.  Quinn Emanuel has redoubled its efforts to minimize the chance for any recurrence.  And Mr. Melin has retreated from the statements in his declaration that set these proceedings in motion.

For these inadvertent mistakes, Apple and Nokia seek a host of sanctions unprecedented in their breadth and of a scope and nature never leveled by any court before.  This Court should reject their requests, which are so grossly disproportionate that they can only have been made in bad faith.  There should be no sanctions, or at most an award of fees and costs at a reasonable level that does not reward Apple's and Nokia's needless escalation of this dispute.

## ARGUMENT

### I. APPLE'S AND NOKIA'S OVERBROAD SANCTIONS REQUESTS ARE UNPRECEDENTED AND GROSSLY DISPROPORTIONATE

Given the absence of evidence that Samsung's or Quinn Emanuel's conduct "constituted or was tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980), the Court may not resort to its inherent authority but instead is limited to the sanctions available under Rule 37(b) (assuming that rule applies here).  "Rule 37 sanctions are subject to certain limitations in that they must be just ….  A sanction is 'just' if the trial court considered the relevant factors and if the severity of the sanction is warranted by the conduct involved."  *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988).  Additionally, under Rule 37(b), "[t]he degree to which a party is prejudiced … is an important factor in determining the severity of the sanction to be imposed."  *In re Rubin*, 769 F.2d 611, 617 (9th Cir. 1985) (sanction striking answer for non-cooperation during discovery held too severe).

Likewise, "good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1993).  Neither Apple nor Nokia has shown the prejudice or bad faith required to support the requested sanctions.

### A. Apple's Non-Fee Sanctions Should Be Denied

*First*, Apple overreaches in requesting (Dkt. 2838-3 at 17-18) that the Court issue findings and a jury instruction in Case No. 12-630 that Samsung and Quinn Emanuel "recklessly violated" the Protective Order, "misused" Apple's confidential information, and engaged in "bad faith licensing conduct."  Apple offers no authority or factual support for such sanctions.  And the uncontroverted evidence shows that the incomplete redaction was inadvertent and that Samsung never used the alleged confidential information.  (*E.g.*, Dkts. 2807, 2835-3 at 11-18.)  Moreover, the alleged violations have nothing to do with FRAND or any other issues in Case No. 12-630.

*Second*, Apple again overreaches in requesting (Dkt. 2838-3 at 18-19) that the Court bar the Samsung employees who allegedly "obtained" Apple's CBI from negotiating any "mobile-device licenses" for two years, and effectively bar Quinn Emanuel from being adverse to Apple for that same period.  Again, Apple offers no authority for such a sanction.  Apple relies on trade secret cases that enjoin future use of the *particular trade secrets that were stolen.  See Minn. Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 607 (7th Cir. 2001); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  An absolute two-year ban on participation in "mobile-device licenses" negotiations or representations obviously goes far beyond any such limited sanction.  Moreover, such relief would preclude settlement of this case and interfere with third parties' rights to choose Quinn Emanuel as counsel—an interference courts are loathe to impose even in the same case where the violation occurred.  *See*, *e.g.*, *Lambright v. Ryan*, 2010 WL 1780878, *4 (D. Ariz. May 4, 2010), *aff'd in relevant part* 698 F.3d 808 (denying disqualification sanction for protective order violation); *Harmston v. City & County of San Francisco*, 2007 WL 3306526, *7 (N.D. Cal. Jan. 29, 2008) (Illston, J.) (same).

*Third*, Apple seeks another unprecedented sanction (Dkt. 2838-3 at 19) in asking the Court to bar Samsung from obtaining an injunction in Case No. 12-630 based on supposed unclean hands.  This Court lacks authority to impose such a merits-based sanction, *see* 28 U.S.C.

1 § 636(b)(1), nor is there any basis to suppose that such a sanction could be imposed in a separate
2 case.  Moreover, under the unclean hands doctrine, "the alleged misconduct by the plaintiff [must]
3 *relate directly to the transaction* concerning which the complaint is made."  *Dollar Sys., Inc. v.*
4 *Avcar Leasing Sys., Inc*., 890 F.2d 165, 173 (9th Cir. 1989) (emphasis added); *see also Nilsson*,
5 854 F.2d at 1546 ("Rule 37 sanctions … must specifically be related to the particular claim that
6 was at issue in the order to provide discovery.").  Here, no such direct relationship exists between
7 Samsung's alleged protective order violations and Apple's infringement of Samsung's patents.
8 Additionally, Apple never disclosed the protective order conduct as a ground for its unclean hands
9 defense in Case No. 12-630 before the October 4 deadline to amend its interrogatory responses.
10 *See* Case No. 12-630, Apple's Suppl. Resp. to Inter. No. 16, Oct. 4, 2013.
11       *Fourth*, Apple seeks to use these proceedings as a tool for harassment and embarrassment
12 by making the unprecedented request (Dkt. 2838-3 at 20-21) that the Court issue a "public
13 reprimand" and compel Samsung and Quinn Emanuel to write letters to all parties in their current
14 cases with protective orders.  Such a sanction would do nothing to remediate any past harm or
15 guard against future harms, and would serve no other legitimate purpose.
16       **B.**      **Nokia's Non-Fee Sanctions Should Be Denied**
17       Nokia's unprecedented, overreaching requests for sanctions likewise should be rejected.
18 *First*, Nokia improperly seeks (Dkt. 2836-4 at 20-21) to enjoin Samsung and its employees who
19 received the incompletely-redacted Teece Report from using Nokia CBI in licensing negotiations,
20 arbitrations, or litigations involving Nokia, and to enjoin those Samsung employees from
21 managing or directing any arbitration or litigation against Nokia.  This unprecedented request is a
22 thinly-veiled attempt to seek an unfair advantage in FRAND licensing negotiations; indeed,
23 because Samsung personnel were properly in possession of the information in the Netherlands
24 litigation (Dkt. 2835-3 at 14), the requested relief is contrary to the Protective Order itself, which
25 in paragraph 6(f)(ii) preserves the parties' ability to use CBI that "is lawfully acquired by or
26 known to the Receiving Party independent of the Producing Party …."  (Dkt. 687 at 7.)  Moreover,
27 the only authority upon which Nokia relies—*Merrigan v. Affiliated Bankshares of Colorado, Inc.*,
28 775 F. Supp. 1408 (D. Col. 1991)—involved a pre-suit injunction for a serial vexatious litigator,

1  which is far from the circumstances here.  Nokia's injunction request is also unduly punitive and
2  disproportionate to any violation here.  Finally, such an injunction would conflict with principles
3  of comity as it would dictate participants in present and future litigation and arbitration across a
4  wide range of tribunals worldwide.[1]

5  ***Second***, Nokia's requested per diem fine to coerce compliance with the Stipulation is
6  unwarranted because Samsung and Quinn Emanuel have substantially complied with the
7  Stipulation, and have sought relief and guidance from the Court to the extent any obligations
8  remain unfilled.  Indeed, it would make no sense to impose such fines as it is Apple and Nokia
9  who have delayed and failed to respond to Samsung's and Quinn Emanuel's efforts to remediate.
10 (*See infra*, at 7.)  In any event, it would violate due process to impose this fine since the OSC did
11 not identify compliance with the Stipulation as a possible basis for sanctions.  *See*, *e.g.*, *Wilson v.*
12 *Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009).[2]

13 ***Third***, Nokia again overreaches (Dkt. 2836-4 at 23-24) in seeking to gain a tactical
14 advantage through the compelled production of Samsung's privileged materials for an inadvertent
15 protective order violation.  Such a request is unprecedented and unsupported.  The only authority
16 upon which Nokia relies is inapposite because there the party *waived all objections* to discovery
17 requests, including those based on privilege, by failing to timely respond to them.  *See In re Papst*
18 *Licensing GmbH & Co. KG Litig.*, 250 F.R.D. 55, 57 (D.D.C. 2008).  Privilege must remain intact
19 here given the absence of waiver and the inapplicability of the crime-fraud exception.[3]

---

[1] There is also no basis for Nokia's footnoted request (Dkt. 2836-4 at 20 n.9) that—*for 10 years*—Samsung be required to present a copy of any sanctions order to every tribunal resolving a patent or licensing dispute between Nokia and Samsung.  That sanction is unnecessary since Nokia could raise the issue before a tribunal if it were relevant.

[2] Nokia also impermissibly seeks (Dkt. 2836-4 at 21-22) to expand the Stipulation beyond its already broad terms and further prolong these proceedings.  These requests are outside the OSC and unnecessary in light of Samsung's and Quinn Emanuel's already unparalleled investigation and the Court's review of the *in camera* submissions.

[3] Samsung has not waived its privilege by defending itself here.  The Court's *in camera* review of Samsung's documents was the appropriate method to test privilege and results in no waiver, *United States v. Zolin*, 491 U.S. 554, 568 (1989), and Samsung's *compelled production* of redacted briefing and declarations supporting privilege—none of which attached or disclosed the
    (footnote continued)

1   *Finally*, Nokia improperly proposes (Dkt. 2836-4 at 24) that Quinn Emanuel be enjoined
2   from being adverse to it on *any matter* for *ten years*. The Court was rightly incredulous at the
3   hearing (Becher Decl., ¶ 2, Ex. 1 (12/9/13 Tr. 106:7-11)), as there is no precedent or legal support
4   for this request. The best Nokia can muster are cases involving revocation of an attorney's *pro
5   hac vice* status to practice in a particular court, *see Cole v. U.S. Dist. Court for Dist. of Idaho*, 366
6   F.3d 813, 822 (9th Cir. 2004); *Silva v. Potter*, 2006 WL 3298543, *3 (M.D. Fla. Sept. 25, 2006),
7   but that situation is a far cry from a request to preclude an *entire law firm*—including hundreds of
8   attorneys with no involvement in the matters at issue—from representing *any* client adverse to a
9   party in *every* forum worldwide. Nokia's request for this disproportionate sanction reflects its
10  intent to harass and embarrass, not to remediate or prevent recurrence.

11          **C.      Apple's And Nokia's Requests For Attorneys' Fees Should Be Denied**

12          With respect to attorneys' fees, Apple and Nokia may at most seek their "reasonable
13  expenses" that were "caused by" the violation, and only if no "circumstances make an award of
14  expenses unjust." FED. R. CIV. P. 37(b)(2)(C). In the absence of bad faith, a sanction for violating
15  a protective order need not include attorneys' fees. *See*, *e.g.*, *Lambright v. Ryan*, 698 F.3d 808,
16  826 (9th Cir. 2012) (order compelling retrieval of confidential information was sufficient
17  sanction); *Adele v. Dunn*, 2013 WL 593291, *6 (D. Nev. Feb. 14, 2013) (no sanctions for
18  unintentional protective order violation where party took appropriate remedial measures). The
19  circumstances here render an attorneys' fee award unjust.[4]

---

substance of privileged communications—does not result in waiver., *see*, *e.g.*, *Transamerica Computer Co., Inc. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978); *Genentech, Inc. v. Insmed, Inc.*, 236 F.R.D. 466, 468-69 (N.D. Cal. 2006). Nor does the crime-fraud exception apply here in the absence of evidence that Samsung intentionally sought advice to further a crime or fraud. *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007).

[4]    Apple's request (Dkt. 2838-3 at 20) that the Court find that "the -1846 and -630 [cases] are exceptional cases under 35 U.S.C. § 285" improperly seeks to circumvent Rule 37's limitation on attorneys' fees to those "caused by the failure [to obey an order]." FED. R. CIV. P. 37(b)(2)(C). Apple, moreover, cites no authority, and Samsung knows of none, for the proposition that a case may be designated as "exceptional" under Section 285 for a protective order violation; courts in fact have rejected such designations following discovery violations. *See*, *e.g.*, *Textscape LLC v. Adobe Sys. Inc.,* 2010 WL 2942026, *1-2 (N.D. Cal. July 27, 2010) (Zimmerman, M.J.).

1   *First*, this dispute began with a conclusory declaration by Nokia's Paul Melin that
2   attributed statements to Samsung's Dr. Ahn about the knowing use of confidential information at
3   the June 4, 2013 licensing meeting.  (Case No. 12-630, Dkt. 647.)  Mr. Melin's sworn statements,
4   which Apple and Nokia heavily promoted to obtain broad discovery (*e.g.*, *id.*; Dkt. 2374-2 at 6-7,
5   11-12), have now been proven to be untrue (*see* Dkt. 2835-3 at 14-17).  Indeed, at his deposition,
6   ▬
7   ▬
8   ▬   (Dkt. 2835-6 ¶ 69, Ex. 39 (Melin Tr. 235:2-236:17; 242:15-20).)  Any
9   award of fees following from his discredited statements would be unjust.

10   *Second*, there is no evidence that Samsung or Quinn Emanuel acted willfully or in bad
11   faith.  The disclosures were mistakes that should never have occurred.  Apple's own recent and
12   repeated public disclosures of confidential information—made at the very time Apple was
13   attacking Samsung's alleged lack of vigilance (Dkt. 2835-3 at 7-8)—confirm that mistakes of this
14   nature unfortunately occur in complex litigation in the digital age.  Punishing mistaken disclosures
15   with sizeable fee awards would be unjust and would set a dangerous precedent likely to be abused
16   by opportunistic litigants.  Such an economic sanction would be particularly unjust here where
17   Samsung and Quinn Emanuel have *already incurred* what are likely unprecedented costs in
18   responding to an alleged protective order violation.  (*Id.* at 5-7.)

19   *Third*, neither Apple nor Nokia has suffered any harm from the alleged violations.  Indeed,
20   Apple's 30(b)(6) witness ▬.  (Dkt. 2835-3 at 17-
21   18.)[5]  And while Nokia asserts that it was "deprived … of the opportunity to have a good faith
22   negotiation with Samsung" (Dkt. 2836 at 20), it provides no evidence to support this conclusory
23   accusation, which is belied by its own witnesses' deposition testimony (Dkt. 2835 at 18).

---

[5]   In contrast, Apple now argues (Dkt. 2838-3 at 2) that it has been harmed by an "asymmetrical information advantage."  This assertion is belied by undisputed evidence that Apple voluntarily disclosed detailed terms of its licenses to Samsung's key licensing personnel.  (Dkt. 2835-3 at 14.)  As Apple itself argues (Dkt. 2838-3 at 11), these persons cannot erase their knowledge of those terms.  It is also undisputed that forensic evidence showed that Samsung's key licensing personnel never opened the incompletely-redacted Teece Report.  (Dkt. 2556-21.)

1     *Fourth*, Samsung and Quinn Emanuel have offered full remediation to Apple and Nokia, and are simply waiting on them to agree to such.  (Dkt. 2395-3, Ex. A; Dkt. 2835-6 ¶¶ 57-64.) Rather than agreeing so as to protect its purported confidential information, Apple waited three weeks to approve a proposed redacted version of the Teece Report to replace the incompletely-redacted version on file with a court in Milan (Dkt. 2835-6 ¶¶ 61-63), and Apple and Nokia still have not agreed to the remediation proposals Samsung made on November 4, or provided any suitable alternatives (*id*. ¶¶ 57-60).  These failures and delays not only further refute any suggestion that the inadvertent disclosures caused Apple or Nokia harm or that the information is as confidential as they claim, but reveal that their real purposes are far divorced from any concern about protecting that information.  Moreover, Quinn Emanuel has implemented measures to further protect against inadvertent disclosures of this sort by requiring two attorneys to review any redacted document before transmittal.  (Becher Decl., ¶¶ 2-3, Exs. 1-2.)  There is thus no need to award fees to encourage remediation or promote compliance with the Protective Order.

## II. ANY SANCTION SHOULD BE LIMITED TO REASONABLE FEES INCURRED BEFORE APPLE AND NOKIA SOUGHT TO INVOLVE THE COURT

    Should the Court award Apple and Nokia fees—the only sanction remotely supported by precedent—it should nonetheless limit their amount.  Apple's motion for sanctions has left the parties exactly where they were before those efforts began—with mistaken disclosures of confidential information that were identified by Quinn Emanuel *before Apple and Nokia ever asked the Court to become involved*.  Because the intervening efforts have produced no evidence of any wrongdoing and have done nothing more than create substantial costs, it would be unjust to shift those costs to Samsung or Quinn Emanuel.  *See*, *e.g.*, *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993) (reversing contempt sanctions where "Defendants' only claimed injuries were self-inflicted, by their own spare-no-expense punitive expedition, not by" alleged protective order violations).[6]

---

[6] If the Court determines that a fee award is appropriate, then Samsung and Quinn Emanuel are entitled to challenge the reasonableness of the amount requested.  (*See* Dkt. 2835-3 at 24-25.)

### A. Samsung Disclosed The Material Facts Regarding The Inadvertent Disclosures Before Apple Filed Its Motion

Apple and Nokia premise their request for sanctions largely on their view that, in December 2012, Quinn Emanuel *should have realized* that it had transmitted months earlier an incompletely-redacted version of the Teece Report.  The events of December 2012, however, fail to support such a claim.  (*E.g.*, Dkt. 2807, at 2, 13-14. Dkt. 2835-3, at 11-12.)  There is *no evidence* that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had been transmitted before.  Nor does the Protective Order require an investigation into such possible, but unknown prior disclosures.  Moreover, upon learning of the inadvertent disclosure, Quinn Emanuel acted reasonably by promptly instructing Mr. Shim not to open the document, an instruction Mr. Shim acknowledged.  Quinn Emanuel's determination that the December 2012 transmission did not require notification to Apple was reasonable, and indeed is supported by Apple's own failure to notify Samsung of Apple's public filing of confidential information on November 5.

If, and only if, the Court were to conclude that the December 2012 transmission, either on its own or in combination with earlier transmissions, did amount to a violation of the Protective Order and that violation warranted a sanction, then any fees awarded to Apple or Nokia should be limited to expenses incurred before August 19, 2013 (excluding the cost of Apple's motion for sanctions).  This is because by then, Samsung had already disclosed *all material facts* regarding these disclosures, including that Quinn Emanuel transmitted the incompletely-redacted Teece Report to certain identified Samsung employees through an FTP site on March 24, 2012, and later sent the same report to Mr. Shim on December 21, 2012. (Dkt. 2395-3, ¶¶ 11-18, Exs. A-E.)  On August 16, 2013, in response to a question from Apple, Quinn Emanuel explained the following:

> On December 21, 2012, a Quinn Emanuel associate sent the incompletely redacted Teece report to a Samsung employee.  Another associate realized that it contained references to licensing terms that had not been redacted.  The lawyer notified the Samsung employee not to look at the report.  The employee confirmed that he would not look at the report and would delete the email. … Neither the lawyer nor others at Quinn Emanuel realized at the time that the incompletely redacted report had previously been disclosed to Samsung.

(*Id*. ¶ 15, Ex. E at 2.)  On August 19, Samsung gave Apple redacted copies of the emails in

1  question that identified their senders and recipients.  (Becher Decl., ¶ 5, Ex. 5.)  Apple and Nokia

2  rely on these *same facts*, along with misguided inferences drawn from those facts, to support their

3  requests for sanctions.  Because none of the intervening discovery supports their sanctions request,

4  it would be unjust to require Samsung to pay the costs of those efforts.

        **B.**        **Apple And Nokia Should Not Recover Fees For Pursuing Groundless Theories Of Use**

Nokia should not be awarded fees for its efforts to pursue theories of use that have been proven to be untrue given Mr. Melin's retractions.  Nor should Apple be awarded fees for litigating the fanciful theory that Samsung used alleged confidential terms of the Apple/Nokia license to formulate FRAND licensing positions in connection with settlement and the parties' dispute in the ITC.  (Dkt. 2838-3 at 10-13.)  Because this theory has been disproven in discovery, contrary to Apple's intimations (*see* Dkt. 2556-3 at 5-6), it would be unjust to award fees for Apple's efforts to pursue this theory.

        **C.**        **Apple And Nokia Should Not Be Reimbursed For Their Efforts To Prolong And Complicate This Dispute**

Because Apple and Nokia have made discovery unnecessarily long, burdensome, and costly, they should not be awarded fees incurred after they sought the Court's intervention.  Apple has pursued requests for discovery and sanctions based on disclosures that it has conceded are *not at issue* here because they are governed by an *ITC* protective order.  (Becher Decl., ¶ 15, Ex. 9 (10/1/13 Tr. 17:22-18:17).)[7]  Apple and Nokia also wasted substantial time at depositions, including, for example, by asking Samsung's 30(b)(6) witness, Ken Korea, questions about *everything but* the inadvertent disclosures he had investigated, requiring *Samsung* to introduce into the record the documents Mr. Korea had prepared to chronicle his investigation.  (Dkt. 2557-9

---

[7] Contrary to its earlier unqualified representation that this proceeding was limited to the Teece Report, Apple argued at the recent hearing that the inadvertent disclosures in the ITC are within this Court's purview because the Apple/Nokia license was effectively produced in the ITC pursuant to a cross-use provision in the Protective Order.  In fact, the license was separately produced in the ITC in February 2012.  (Becher Decl., ¶ 6, Ex. 6.)  As a result, the ITC protective order governs the use of the license in that investigation—as Apple itself has argued in its ITC motion.

1  (Korea Tr. 242:21-248:20); *see also* Dkts. 2556-3 at 9-10, 2556-14, ¶ 10 (addressing other
2  deposition abuse).)

3  Apple and Nokia also have unjustifiably prolonged these proceedings by challenging
4  Samsung's assertions of privilege at every stage, including by taking conflicting positions and
5  arguing that the Court's October 2 Order compelled Samsung to produce its privileged documents
6  and thus requiring Samsung to seek relief from Judge Koh to protect its privileges.  Apple and
7  Nokia have also refused to streamline these proceedings by allowing Samsung to provide them
8  privileged information—including 7 of the 11 documents identified in the OSC and information
9  subject to non-disclosure agreements or protective orders—without the threat that so doing would
10 waive privilege.  (*See* Dkt. 2835-6, ¶¶ 24-49.)[8]  Apple's and Nokia's refusals prolonged this
11 dispute and put Samsung in an impossible bind.  The Court has not accepted such attacks on
12 Samsung's privileges, and Apple and Nokia should not be reimbursed for them.

13 As Nokia's counsel admitted at the recent hearing, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See*
15 Becher Decl., ¶ 2, Ex. 1 (12/9/13 Tr. 104:6-8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮ )  Apple and Nokia should not be reimbursed for a fruitless investigation for which
17 Samsung and Quinn Emanuel have already paid significant sums.[9]

## CONCLUSION

19 No sanctions should be imposed against either Samsung or Quinn Emanuel.

---

[8] As just one example, Nokia continues to complain that Samsung has not produced the incompletely-redacted Teece Report to it, even though Samsung has requested Apple's approval to do so no fewer than five occasions, which Apple has never provided.  (*Id*. ¶ 4, Exs. 3-4).)

[9] The excessiveness of Apple's and Nokia's discovery efforts is reflected by the fact that their fees requests will surely be magnitudes beyond any award ever imposed for a protective order violation, even in the face of far more egregious conduct.  *See*, *e.g*., *LifeScan Scotland v. Shasta Techs*., 2013 WL 5949629, *4 (N.D. Cal. Nov. 6, 2013) (Orrick, J.) (awarding $42,000 for willful protective order violation); *Bradford Tech. v. NCV Software.com*, 2013 WL 75772, *8 (N.D. Cal. Jan. 4, 2013) (Laporte, M.J.) (awarding $97,000 for same); *Brocade Comm'cns Sys. v. A10 Networks*, 2011 U.S. Dist. LEXIS 99932, *11-15 (N.D. Cal. Sept. 6, 2011) (Koh, J.) (awarding $2500 where party publicly filed confidential information and refused to withdraw it).

DATED:  December 13, 2013           QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP


                                    By /s/ *Michael T. Zeller*


                                    Attorneys for SAMSUNG ELECTRONICS CO.,
                                    LTD., SAMSUNG ELECTRONICS AMERICA,
                                    INC. and SAMSUNG
                                    TELECOMMUNICATIONS AMERICA, LLC

## ATTESTATION

I, Victoria F. Maroulis, am the ECF User whose ID and password are being used to file the foregoing document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Michael T. Zeller has concurred in this filing.

Dated:  December 13, 2013                   By:  */s/ Victoria F. Maroulis*
                                                          Victoria F. Maroulis