HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S POST-TRIAL MOTION FOR JMOL, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST**<br><br>Date: January 30, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that on January 30, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Lucy Koh in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiff Apple Inc. ("Apple") will move, and hereby does move, for judgment as a matter of law, supplemental damages, and prejudgment interest against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, Inc. (collectively, "Samsung").

This motion is based on this notice of motion and supporting memorandum of points and authorities; supporting declarations filed herewith and exhibits attached thereto; and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

Dated: December 13, 2013

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: */s/ William F. Lee*
    WILLIAM F. LEE

Attorneys for Plaintiff
APPLE INC.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................. iii

I.  INTRODUCTION ........................................................................................................................ 1

II. APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON SAMSUNG'S PROFITS. .................................................................................................................................... 2

III. APPLE REQUESTS AN ORDER AWARDING SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST CONSISTENT WITH THE COURT'S PRIOR ORDER. ....................................................................................................................................... 5

    A.  Supplemental Damages ..................................................................................................... 6

    B.  Prejudgment Interest. ......................................................................................................... 8

IV. UPON REMAND FROM THE FEDERAL CIRCUIT, APPLE WILL ASK THE COURT TO ENTER A PERMANENT INJUNCTION AGAINST SAMSUNG'S INFRINGEMENT OF THE '381, '915, AND '163 PATENTS. .................................................... 8

V.  CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Inc. v. Samsung Electronics Co.*,
　735 F.3d 1352 (Fed. Cir. 2013) ................................................................................................ 8

*Budinich v. Becton Dickinson & Co.*,
　486 U.S. 196 (1988) .................................................................................................................. 2

*Dimick v. Schiedt*,
　293 U.S. 474 (1935) .................................................................................................................. 5

*E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*,
　117 F.3d 1244 (11th Cir. 1997) ................................................................................................ 5

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
　772 F.2d 505 (9th Cir. 1985) ................................................................................................ 3, 4

*LifeScan Scotland, Ltd. v. Shasta Technologies., LLC*,
　734 F.3d 1361 (Fed. Cir. 2013) ................................................................................................ 4

*Manhattan Industries, Inc. v. Sweater Bee By Banff Ltd.*,
　885 F.2d 1 (2d Cir. 1989) ......................................................................................................... 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
　545 U.S. 913 (2005) .................................................................................................................. 4

*Orenshteyn v. Citrix Systems, Inc.*,
　691 F.3d 1356 (Fed. Cir. 2012) ................................................................................................ 2

*Ostad v. Oregon Health Sciences University*,
　327 F.3d 876 (9th Cir. 2003) .................................................................................................... 2

*Roman v. Western Manufacturing, Inc.*,
　691 F.3d 686 (5th Cir. 2012) .................................................................................................... 5

*Sgaraglino v. State Farm Fire & Casualty Co.*,
　896 F.2d 420 (9th Cir. 1990) .................................................................................................... 9

*Sony Corp. of America v. Universal City Studios, Inc.*,
　464 U.S. 417 (1984) .................................................................................................................. 4

*Torres v. City of Los Angeles*,
　548 F.3d 1197 (9th Cir. 2008) .................................................................................................. 2

**RULES**

Federal Rule of Civil Procedure 50 ........................................................................................ 2

## I. INTRODUCTION

On April 15, 2011, Apple filed this lawsuit to put an end to the widespread violations of its intellectual property rights caused by Samsung's copying of Apple's enormously successful iPhone and iPad products. After a three-week trial in August 2012, a jury vindicated those rights by returning a verdict finding that Samsung's sale of twenty-six products had willfully infringed six Apple patents and diluted Apple's iPhone trade dress. Following a week-long retrial on a portion of the damages award in November 2013, a second jury confirmed the substantial damages that Apple has suffered from Samsung's infringement—bringing Apple's total damages in this case to over $900 million.

The time has come to conclude the proceedings before this Court. As the Court recently recognized in denying Samsung's motion for a stay, "it would be most efficient for this Court to move forward with post-trial motions concerning the damages retrial and finally enter a judgment in this case so that the Federal Circuit may review the *entire* case on appeal … as soon as possible." (Dkt. 2831 at 8.) In the same spirit, Apple asks the Court to tie up the few remaining loose ends as the surest way to bring the proceedings in this case to a close.

*First*, Apple seeks judgment as a matter of law on the issue of Samsung's profits. Because Samsung presented no evidence at the retrial that would permit a reasonable jury to deduct Samsung's expenses beyond the costs of goods sold, the Court should award Apple the entire amount of Samsung's profits for Samsung's infringement of the D'305 and D'677 patents.

*Second*, Apple renews its request that the Court enter an order awarding Apple supplemental damages and prejudgment interest. The Court has already determined that Apple is entitled to supplemental damages and prejudgment interest and has already decided how they are to be calculated. Now that the retrial has concluded and Samsung has stopped selling the specific products found to infringe, determining the amounts is simply a matter of arithmetic.

*Finally*, Apple plans to renew its request for a permanent injunction against Samsung's infringement of Apple's utility patents upon issuance of the Federal Circuit's mandate. The record is already fully developed, and the Court may promptly enter an injunction consistent with

the Federal Circuit's decision when the mandate issues.  Apple is prepared to submit its brief in support of its renewed request for a permanent injunction at the Court's earliest convenience.[1]

## II. APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON SAMSUNG'S PROFITS.

Although the jury awarded Apple all its requested lost profits and reasonable royalty damages at the retrial, the jury did not award Apple the full amount of Samsung's profits for Samsung's infringement of the D'305 and D'677 patents.[2]  The only reasonable conclusion that the jury could have reached, however, was that Apple is entitled to the full amount of Samsung's profits.  The Court should accordingly grant judgment as a matter of law ("JMOL") to Apple on that issue.  *See Ostad v. Oregon Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003) (Under Federal Rule of Civil Procedure 50(b), "[j]udgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury."); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (same).

As the Court correctly instructed the jury, Apple is entitled to "all profit earned by Samsung on sales of articles that infringe Apple's design patents" unless Samsung met its burden of proving "deductible expenses . . . directly attributable to the sale or manufacture of the infringing product resulting in a nexus between the infringing products and the expense."  (Dkt. 2784 at 43 (instructing that "[p]rofit is determined by deducting certain expenses from gross revenue").)  There was no dispute at trial that Samsung had gross revenue of $854 million from

---

[1] Apple's pending motion for attorneys' fees as well as the ongoing sanctions proceedings will not impede appellate review of a final judgment resolving the liability and damages issues in this case.  *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-203 (1988) ("[A] decision on the merits is a 'final decision' … whether or not there remains for adjudication a request for attorney's fees attributable to the case."); *Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012) (final judgment on the merits appealable where "district court's decision granting sanctions [wa]s a separate order which [wa]s not final and appealable until the district court has decided the amount of sanctions").

[2] The damages awarded for the six products for which Apple sought only Apple's lost profits and a reasonable royalty were identical to the damages calculated by Ms. Davis.  (Apple sought Samsung's profits were in every instance *less than* the damages calculated by Ms. Davis. (*Compare* PX25F.4, *with* Dkt. 2822.)  For those seven products, the jury did not award the full amount of Samsung's profits.*Compare* PX25F.4, *with* Dkt. 2822.)  However, the damages awarded for the seven products for which

its sale of products that infringe Apple's D'305 and D'677 patents. (*See* Dkt. 2840 at 692:5-11 (Davis); Dkt. 2841 at 1014:20-22 (Wagner acknowledging agreement with Davis); Dkt. 2843 at 1116:16-17 (same); PX180A; PDX100.17.) There further was no dispute at trial that Samsung was entitled to deduct $623 million in expenses for costs of goods sold. (*See* Dkt. 2840 at 692:25-693:8 (Davis); Dkt. 2843 at 1116:18-19 (Wagner acknowledging agreement with Davis); PX180A; PDX100.17.)

The ***only*** purported dispute at trial concerning Samsung's profits was whether Samsung was entitled to deduct approximately $179 million in additional purported operating expenses. (*See* Dkt. 2843 at 1116:20-22 (Wagner).) But with regard to this issue, the dispute was not about the total dollar amount associated with such expenses. Rather, the issue was whether Samsung's ***method*** of deducting costs satisfied the "directly attributable" test. As to that method, Samsung did not introduce any evidence at trial that it directly attributed costs at the product level as required by Court's jury instructions. Samsung's Vice-President of Finance and Operations, Mr. Sheppard, merely testified that Samsung allocated costs across products. (*See* Dkt. 2841 at 964:18-965:16.) But Samsung offered no evidence that any of those allocated costs were directly attributable to the sale or manufacture of the infringing products. Samsung's expert Mr. Wagner admitted that he was not aware of any such evidence—testifying that he had not found any evidence specifically attributing a single penny of any of Samsung's operating expenses at issue to a specific product. (Dkt. 2843 at 1124:23-1125:9, 1127:2-9, 1127:23-1128:4, 1129:20-24, 1130:20-1131:2.) Accordingly, Samsung's cost deduction method was insufficient as a matter of law. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) (rejecting cost allocation method where copyright infringer failed to provide evidence that any of the allocated costs "actually contributed to sales of the infringing work"), *rev'd after remand on other grounds*, 886 F.2d 1545 (9th Cir. 1989).

The decision in *Frank Music*, a copyright infringement case, is instructive.[3] In that case, the infringer (MGM) introduced evidence at trial that segregated overhead expenses into general

---

[3] Given the close relationship between patent and copyright law—which derive from the same clause of the Constitution—courts routinely apply principles from patent law to copyright

APPLE INC.'S POST-TRIAL MOTION FOR JMOL, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST
Case No. 11-cv-01846-LHK (PSG)

3

categories, such as general and administrative costs, sales and advertising, and engineering and maintenance. MGM then allocated a portion of those costs to the production of the infringing production, *Hallelujah Hollywood*, based on a ratio of the revenues from that production as compared to MGM's total revenues. *See id.* The district court adopted MGM's approach, but the Ninth Circuit reversed, holding that the district court's finding that MGM had established that its overhead contributed to the infringing show was clear error:

> We do not doubt that some of defendants' claimed overhead contributed to the production of *Hallelujah Hollywood*. The difficulty we have, however, is that defendants offered no evidence of what costs were included in general categories such as "general and administrative expenses," nor did they offer any evidence concerning how these costs contributed to the production of *Hallelujah Hollywood*. The defendants contend their burden was met when they introduced evidence of their total overhead costs allocated on a reasonable basis. . . . That is not the law of this circuit. [A] defendant additionally must show that the categories of overhead ***actually contributed to sales of the infringing work***. We can find no such showing in the record before us.

*Id.* (citations omitted) (emphasis added); *see also Manhattan Indus., Inc. v. Sweater Bee By Banff Ltd.*, 885 F.2d 1, 7-8 (2d Cir. 1989) (rejecting evidence of overhead pertaining to "overall selling expenses" as "grossly inadequate" because the infringer did not indicate whether and to what extent those expenses were specifically attributable to production of the products at issue).

Accordingly, because Samsung failed to meet its burden regarding deductible costs as a matter of law, the Court should award Apple the full amount of Samsung's total profit for infringing the D'305 and D'677 patents, *i.e.*, $231,373,554. (Dkt. 2840 at 702:20-703:3 ("Because I don't think there's any evidence for expense amounts that can be considered directly attributable to the sale of these seven products, other than the costs of goods sold, I think the total Samsung profit number is $231 million . . . ."); PX180A; PDX100.20A.)

---

law, and vice versa. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-937 (2005) (applying patent law inducement principles to copyright law); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984) (noting that it is appropriate to refer to patent law in copyright cases "because of the historic kinship between patent law and copyright law"); *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1375 n.9 (Fed. Cir. 2013) ("The Supreme Court has frequently explained that copyright cases inform similar cases under patent law.").

Apple recognizes that the Court previously denied its motion for additur after the first trial on the ground that the amount of damages was an issue for the jury. (*See* Dkt. 2271 at 2 (citing *Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935)).) Courts, however, "recognize an exception to *Dimick* where the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages." *E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997) (district court had authority to increase jury award for liability under the ADEA where the employer did not meet its burden of proving lack of diligence by the employee in failing to obtain work); *see also Roman v. Western Mfg., Inc.*, 691 F.3d 686, 702 (5th Cir. 2012) ("These instances of uncontested damages do not technically involve additur, because the correct figure is divined as a matter of law . . . ." (internal quotation marks omitted)). Here, there is no dispute about the measure of damages based on the factual evidence presented at trial. Rather, the only dispute was whether the cost allocation method adopted by Samsung is sufficient as a matter of law. Because the evidence permits only one reasonable conclusion regarding the amount of Samsung's profits, the Court should grant Apple's motion and award Apple its full damages requested at the retrial, *i.e.*, $379,776,091. (PX25F.2.)

### III. APPLE REQUESTS AN ORDER AWARDING SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST CONSISTENT WITH THE COURT'S PRIOR ORDER.

The Court previously determined that Apple is entitled to both supplemental damages and prejudgment interest and further explained how those amounts are to be determined. (Dkt. 2271 at 2-8.) Although the Court indicated in its March 1, 2013 Order that it would defer calculation of supplemental damages and prejudgment interest until after the completion of the appeals in this case (*id.* at 6, 8), circumstances have changed since then. Samsung has stopped selling all the products that the jury found to infringe, and supplemental damages may now be calculated from easily obtainable historical sales figures.

Accordingly, Apple renews its request for the Court to award supplemental damages and prejudgment interest—the only damages issues that remain to be resolved now that the damages retrial has concluded. There is no reason to delay those calculations, which will permit the complete and efficient review of ***all*** damages issues in this case together on appeal. Given the

ease of these calculations (as explained below), substantial efficiencies will be gained by computing the amounts and entering an order awarding supplemental damages and prejudgment interest at this time.

### A. Supplemental Damages

In March 2013, the Court resolved all issues relating to supplemental damages except the final arithmetic. "Because the Court must make an award for any sale for which the jury did not, an award of supplemental damages is required." (Dkt. 2271 at 2.) The Court has determined the period to be used for the calculation and the method by which supplemental damages should be calculated. As stated in the Court's March 1, 2013 Order: "[C]onsistent with the *Presidio Components* decision, the Court intends to calculate the supplemental damages award beginning on August 25, 2012, the day after the verdict." (*Id.* at 3.) "Because the jury returned an award for each product separately, the Court can simply divide the jury award for each product by that product's number of sales to calculate this per-product amount." (*Id.* at 5.) The Court further decided that Samsung's actual unit sales should be used for the final calculation. (*Id.*)

When the Court issued its order regarding supplemental damages in March 2013, Samsung was still selling three of the infringing products. That is no longer the case, and the Court can now readily compute a final total, which will permit complete review of all damages amounts by the Federal Circuit in a single appeal.

Under the method specified by the Court, the per-product damages for each infringing product sold after August 25, 2012 are as follows: Galaxy S Showcase ($52.70); Galaxy S II T-Mobile ($66.95); Galaxy S II Epic 4G Touch ($59.89); Galaxy S II Skyrocket ($50.72); Droid Charge ($75.31), and Galaxy Prevail ($9.81).[4] (Robinson Declaration in Support of Supplemental Damages and Prejudgment Interest ("Robinson Decl."), Ex. 2.1.)

---

[4] The supplemental damages amounts in this brief are calculated based on the August 2012 jury verdict for products not involved in the damages retrial and based on the November 2013 verdict for those that were. Apple has provided additional calculations that reflect the amount of supplemental damages and prejudgment interest in the event that the Court grants Apple's motion for JMOL. (*See* Robinson Decl. Exs. 5-8.)

| 1 | The only remaining piece of information necessary to calculate supplemental damages is |
| 2 | the unit sales of these six products after August 25, 2012.  Samsung has already provided that |

The only remaining piece of information necessary to calculate supplemental damages is the unit sales of these six products after August 25, 2012.  Samsung has already provided that information for all these products for August and September 2012.  (Dkt. 2060, Kerstetter Decl. ¶ 15 & Ex. 2.)  That data permits the calculation of supplemental damages for the Galaxy S Showcase and the Droid Charge, which Samsung stopped selling in September 2012.  Applying the methodology from the Court's March 1, 2013 Order, the supplemental damages are $191,133 for the Galaxy S Showcase and $484,674 for the Droid Charge.  (Robinson Decl., Ex. 2.)

For the remaining four products, additional unit sales information is required to calculate the entire amount of supplemental damages.  However, in April 2013, Samsung provided the unit sales for these products through February 2013 in the 630 case.  Apple has asked for Samsung's agreement to use these unit figures for this limited purpose in the present case, but Samsung has refused to permit any cross-use of that information.  (Selwyn Declaration in Support of Supplemental Damages and Prejudgment Interest ("Selwyn Decl."), Ex. 1.)  The sales data that Samsung has already produced in the 630 case will permit the calculation of supplemental damages for the Galaxy Prevail, which Samsung stopped selling in October 2012.  Apple requests that Samsung be ordered to produce to Apple the data necessary to resolve the issue of supplemental damages now.

The only additional information that Samsung must provide to complete the calculation of supplemental damages is unit sales for three products (Galaxy S II T-Mobile, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket) from March 2013 through summer 2013, when Samsung stopped selling those products.  That information should be readily obtainable from Samsung's sales database.  Apple has requested that information from Samsung, but, again, Samsung refused to provide it.  (Selwyn Decl., Ex. 1.)  Apple therefore requests that the Court order Samsung to provide any unit sales information not already provided for these three products so that the Court may resolve the issue of supplemental damages.

The following table summarizes the calculation of supplemental damages based upon the information that Samsung has produced in this case:

| Infringing Product | Units | Per Unit Damages | Supplemental Damages (Units x Per Unit Damages) |
|---|---|---|---|
| Galaxy S II (Epic 4G Touch) | 195,413 + Additional Sales | $59.90 | $11,704,578 + Additional Damages |
| Galaxy S II (Skyrocket) | 33,661 + Additional Sales | $50.74 | $1,708,102 + Additional Damages |
| Galaxy S II (T-Mobile) | 150,572 + Additional Sales | $66.93 | $10,077,212 + Additional Damages |
| Galaxy S Showcase (i500) | 3,660 | $52.76 | $193,133 |
| Droid Charge | 6,435 | $75.32 | $484,674 |
| Galaxy Prevail | 17,257 + Additional Sales | $9.82 | $169,456 + Additional Damages |
| Total | 406,998 + Additional Sales | | $24,337,154 + Additional Damages |

### B. Prejudgment Interest.

The calculation of prejudgment interest is even simpler. The Court has found "that Apple is entitled to prejudgment interest." (Dkt. 2271 at 7.) "[T]he Court will award prejudgment interest at the 52-week Treasury Bill Rate, compounded annually." (*Id.* at 8.) Using that formula, Apple has provided a calculation of prejudgment interest to date based on the two existing verdicts and the supplemental damages through September 2012. (Robinson Decl., Exs. 3, 4.) Once Samsung provides the unit sales data necessary to complete the calculation of supplemental damages, Apple will also provide an updated prejudgment interest calculation and a calculation of the daily amount of interest accrued so that the Court does not need to perform any additional calculations to determine the amount of prejudgment interest.

### IV. UPON REMAND FROM THE FEDERAL CIRCUIT, APPLE WILL ASK THE COURT TO ENTER A PERMANENT INJUNCTION AGAINST SAMSUNG'S INFRINGEMENT OF THE '381, '915, AND '163 PATENTS.

On November 18, 2013, the Federal Circuit vacated the denial of a permanent injunction against Samsung's infringement of Apple's utility patents and remanded for further proceedings. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352 (Fed. Cir. 2013). Upon issuance of the Federal Circuit's mandate—which could occur as soon as December 26, 2013—the case will

return to the district court's jurisdiction. *See Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir. 1990). At that time, Apple will ask the Court to enter a permanent injunction against Samsung's infringement of the '381, '915, and '163 patents. The record is already fully developed from the prior proceedings in this case, such that Apple expects that only minimal additional briefing will be required. Apple is prepared to submit its brief in support of its renewed request for a permanent injunction at the Court's earliest convenience and will count the pages in that brief against its total allotment of pages for post-trial briefing.

## V. CONCLUSION

For the reasons stated above, Apple respectfully requests that the Court grant JMOL in favor of Apple on the issue of Samsung's profits, bringing Apple's total damages for the retrial to $379,776,091, and enter an order awarding Apple supplemental damages and prejudgment interest. A proposed order is attached.

Dated: December 13, 2013

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: */s/ William F. Lee*
WILLIAM F. LEE

Attorneys for Plaintiff
APPLE INC.

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 13, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

                               */s/ William F. Lee*
                               William F. Lee