# EXHIBIT 6

for; which was referred to the Committee of the Whole House on the state of the Union, and, with the accompanying report, ordered to be printed.

### ORDER OF BUSINESS.

The SPEAKER. This completes the call for the introduction of bills and resolutions. The hour for the consideration of bills begins at eight minutes before 1 o'clock. The call rests with the Committee on Patents.

Mr. MARTIN. Mr. Speaker, I am instructed by the Committee on Patents to call up the bill (S. 1813) to amend the law relating to patents, trade-marks, and copyright, and ask the present consideration of the same.

The bill was read, as follows:

> Be it enacted, &c., That hereafter, during the term of letters patent for a design, it shall be unlawful for any person other than the owner of said letters patent, without the license of such owner, to apply the design secured by such letters patent, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or to sell or expose for sale any article of manufacture to which such design or colorable imitation shall, without the license of the owner, have been applied, knowing that the same has been so applied. Any person violating the provisions, or either of them, of this section, shall be liable in the amount of $250; and in case the total profit made by him from the manufacture or sale, as aforesaid, of the article or articles to which the design, or colorable imitation thereof, has been applied, exceeds the sum of $250, he shall be further liable for the excess of such profit over and above the sum of $250; and the full amount of such liability may be recovered by the owner of the letters patent, to his own use, in any circuit court of the United States having jurisdiction of the parties, either by action at law or upon a bill in equity for an injunction to restrain such infringement.
>
> SEC. 2. That nothing in this act contained shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any owner of letters patent for a design, aggrieved by the infringement of the same, might have had if this act had not been passed; but such owner shall not twice recover the profit made from the infringement.

Mr. MARTIN. This bill is a Senate bill which has been unanimously reported by the Committee on Patents, and unless there be some objection to it, or some gentleman desires to discuss it, I will ask the previous question on the bill.

Mr. ADAMS, of Illinois. I think the report ought to be read.

Mr. ANDERSON, of Kansas. I hope the gentleman will not press the demand for the previous question. Let us hear the report and hear what change the bill proposes to make in existing law and what necessity there is for it.

Mr. MARTIN. Very well. The Senate bill is the exact counterpart of a House bill which was reported by the gentleman from Connecticut [Mr. MITCHELL]. The number of the report on that bill is 1966, and if the Clerk will read that report it will answer every purpose. There is no special report upon this bill beyond the fact that it is reported favorably.

Mr. BUCK. It might be well for the gentleman from Alabama to explain the bill.

Mr. MARTIN. I will explain it, if that is desired.

The report on the bill (H. R. 8323) (by Mr. MITCHELL) was read, as follows:

> The Committee on Patents, to whom was referred House bill 5570, have considered the same and report it to the House with the recommendation that it lie upon the table, and that the substitute for said bill herewith reported do pass.
>
> It now appears that the design patent laws provide no effectual money recovery for infringement. This is the result of the statute, as applied to the peculiar character of property involved, in a test case decided in April last by the Supreme Court of the United States. Since that decision the receipts of the Patent Office in the design department have fallen off upwards of 50 per cent. and the average weekly issue of design patents has also fallen off just one-half.
>
> The bill provides a rule of recovery for infringement of design patents, merely supplying what the case referred to shows to be lacking in the existing law. To fail to pass this or a similar bill is a virtual repeal of the design patent laws.
>
> Property in original designs (which are defined as works of art applied to articles of manufacture intended for sale and use) is a property of great and increasing value, intimately related to material progress in the industrial arts. This property was recognized in the statute books half a century after the adoption of patent laws for mechanical inventions, and after a body of case law and precedent had grown up around those patent laws and the sanctions and remedies they provided, and was recognized by the enactment of laws authorizing the issue of letters patent of the United States for designs, such laws providing that—
>
> "All the regulations and provisions which apply to obtaining or protecting patents for inventions or discoveries, not inconsistent with the provisions of this title, shall apply to patents for designs." (Rev. Stat., secs. 4929–4933.)
>
> The provisions which apply to protecting patents for mechanical inventions were first applied by the Supreme Court of the United States to the case of design patents in April of last year, to wit, in the case of Dobson against the Bigelow Carpet Company and the same against the Hartford Carpet Company, reported in the last volume of the United States Reports, and with the result of showing those provisions and remedies to be wholly and essentially inapplicable to the case of a consummated infringement of a design patent, the patentee being turned out of court with an admitted right, but without a remedy. The Supreme Court held in substance that the complainant must clearly prove what part of his own damage, or what part of defendant's whole profit on the articles made and sold was directly due to the appearance of those articles as distinguished from their material, their fabric, their utility, &c.; the design, to wit, the appearance, being the only thing patented.
>
> It has been abundantly shown, even if any such showing were necessary, that the proof thus called for can never be furnished.
>
> The court suggest that the difference in price between articles of equal quality, having, one the patented design and the other any other design free to be used, could be recovered under the existing statute; but it has been proved to your committee that designs do not increase the selling price, but only the quantity sold of the articles on which they appear. Again, license fees are unknown under design patents, the value of the property being as short-lived as the caprice of purchasers, and residing in the exclusive character of the use, the property somewhat partaking of the character and effect of trade-mark property.
>
> Property in designs exists and is of value. The Revised Statutes provide for the issue of letters patent for such designs. Courts of equity will, by injunction, restrain present or future infringement of such patents. But for a past infringement, the profits of which have been realized, the existing law is found to provide no remedy, merely because the rule of damages prescribed by the statute is inapplicable to designs on account of their peculiar character.
>
> The bill meets this emergency and provides a new rule of recovery for design patents.
>
> That the emergency should be met is only to say that the design patent laws should be continued in force. To fail to meet the emergency will be a virtual repeal of those laws, for infringement is not discovered until the goods are in the hands of the dealers, and a design patentee cannot practically get out injunctions against all the dealers even if he were willing so to sue those who are also his own customers. The law is practically a right without a remedy if no way is provided of reaching the infringing manufacturer, and is a nullity.
>
> The design patent laws, unlike other patent laws, do not increase the price of the articles affected. This was satisfactorily proved before your committee. Designs are fast sellers or slow sellers, and are valuable accordingly. The sole remuneration to the manufacturer for his large outlay in originating designs is in the increased sales he makes thereby. The design is merely the principle of selection in the purchasing of articles of manufacture.
>
> So far as the designers are concerned they create a property for which they have a right to demand protection. Design patent laws preserve to them that property for a short term of years after publication, which is the time when that property first becomes of any money value. Women are entering this profession. Design schools have been started within the last decade in several of our large cities. The protection intended to be granted, and until April of last year supposed to be granted by our design patent laws, had fostered a rapid growth in this profession—a profession the products of whose labor lose by the common law the character of property when utilized, that is, when published, and which is therefore wholly the creature of statute.
>
> So far as the manufacturers are concerned, who embody these original designs in articles of manufacture, it was shown before your committee that the four or five leading carpet manufacturers in the country expend each from $50,000 to $60,000 a year in salaries to designers and in the incidents of designing before a yard of carpeting is begun to be made for sale. It was also shown that the advance in the last few years in the application of art to the industrial pursuits had been rapid and great, and was largely due to the existence of design patent laws, and that this growth had been coincident with a steady decline in prices. It was also shown that the effect of design patent laws was to cheapen production and so ultimately to reduce prices, because it enabled the manufacturer to run longer on a given design than he otherwise could, and thus avoid changing machinery.
>
> So far as the consumers are concerned, the effect of design patent laws that are respected is to give them more beautiful carpets and wall-papers and oilcloths for the same money, and even for less money, with a tendency to encourage the purchase of articles of standard qualities as opposed to shoddy imitations, which is a true economy in individuals and so in masses.
>
> The rule of recovery prescribed by the bill prevents the infringer from actually profiting by his infringement. The patentee recovers the profit actually made on the infringing article if he can prove that profit, that is, what the infringer realized from the infringing articles minus what they cost him; but the patentee recovers nothing beyond that profit, the capital and labor invested being left with the infringer just as it was before the infringement. The copyright law goes far beyond this, for there the capital and labor are forfeited to the owner of the copyright, and there is a heavy penalty in addition, and also a right to recover any other damages that can be proved. It is expedient that the infringer's entire profit on the article should be recoverable, as otherwise none of his profit can be recovered, for it is not apportionable; and it is just that the entire profit on the article should be recoverable and by the patentee, for it is the design that sells the article, and so that makes it possible to realize any profit at all, and the patentee is entitled to all the good will the design has in the market, and so, after the analogy of trade-mark law, is entitled to all the profit the infringer made on the goods marked.
>
> But to meet the case of an infringement actually committed without profit (which would in the majority of cases be the infringement most damaging and disastrous to the patentee as a manufacturer), and to meet the case when the exact profit in dollars and cents can not be proved under the severe and technical rules of the law (and this would not infrequently occur with defendant the only witness, and his books the only evidence), the bill prescribes a minimum recovery of $250. This is necessary to any effectual protection of so intangible a property. It is a recovery certain and simple, and will command for the design patent laws a respect which is the patentee's greatest protection. It is the method of the English statute which prescribes a recovery of £50 on proof of violation of a design registration, a law that has been in successful operation for upwards of forty years. The amount prescribed seems to be the average amount that will work substantial justice in the long run, taking into account all trades and industries that are likely to avail themselves of the design patent laws. The violation spoken of in the bill, for which the sum certain is made recoverable, would be all that the infringer had made or sold of the infringing articles between the day the patent issued and the day the suit against him was begun; and if the article made was in itself small and cheap, the quantity made would be likely to balance this and make the minimum recovery specified not too large.
>
> The bill provides only for recovery from the manufacturer who manufactures for purposes of sale, and from the dealers who can be proved to have been in actual conspiracy with such manufacturer in the infringement, and therefore an innocent dealer or user is not affected.
>
> The bill has reference to an infringement by the use of the design patented or of any colorable imitation thereof. The last phrase does not extend the present rule as to what constitutes infringement of a design patent, but merely expresses and adopts it. (See Gorman Manufacturing Company vs. White, 14 Wallace Reports.)
>
> The bill leaves the present design patent law just as it is, and in its second section saves all the rights of defendants against any possible double recovery for the same infringement.
>
> Your committee therefore recommend that the bill pass.

Mr. MARTIN. That report, as the House perceives, is a very elaborate one, covering all the points, and it seems to me that it leaves very little to be said. Therefore, if there be no objection to the bill, and if no member wishes to discuss it, I will now renew my demand for the previous question, in order to put the bill upon its passage.

Mr. ANDERSON, of Kansas. To what particular kind of designs does this bill apply?

Mr. MARTIN. It applies to designs for carpets, oil-cloth, wallpaper, &c. The object of the bill is nothing more nor less than to enable a party to enjoy the benefit of his patent. Under a recent decision of the Supreme Court, it is quite impossible for him to recover anything by an action for damages in the case, or to protect himself by means of an injunction. The recent interpretations given to the two statutes referred to are of such a character as virtually to annul the

patent law with reference to designs, and this bill is intended to remedy that. We have found no one who wishes to have the patent law in respect to designs changed or set aside, but we have found a great body of persons who are engaged in the manufacture of goods in which designs are the principal feature and who are clamorous for this legislation. I will state further, for the information of the House, that I presume no subject has been more elaborately or more ably discussed during the present session of Congress than this bill which we are now discussing.

This measure was brought up for consideration in the Senate; and parties interested in the question appeared before the Senate committee. The whole matter in all its length and breadth was taken up and most thoroughly discussed. Every objection raised was answered and entirely overcome to the satisfaction of the Senate committee, who, I am informed, made a unanimous report in favor of the bill.

The bill was then considered by the Committee on Patents of this House, and the same elaborate discussion of the subject was had, every solitary objection which was raised being answered; and the House committee unanimously directed a favorable report of the bill.

Mr. ANDERSON, of Kansas. Will my friend from Alabama kindly say whether any estimate has been formed as to the amount of property which will be covered annually by this bill?

Mr. MARTIN. I do not know that I can make any statement on that point.

Mr. ANDERSON, of Kansas. How much is the bill worth to these manufacturers?

Mr. MARTIN. Well, it is worth a great deal to them, because it is believed the bill will operate very effectually in preventing these infringements. It is not expected that any great amount of damages will be recovered. The object is simply that, after manufacturers have expended their money in getting artists to furnish these designs which add value to carpeting, oil-cloths, wall-paper, and things of that sort, the advantages to which the manufacturers are entitled by reason of securing these designs, shall not be taken from them by infringements.

Mr. BUCK. The gentleman will allow me to say that the passage of a bill of this kind has been made necessary by reason of a decision of the Supreme Court of the United States.

Mr. MARTIN. Practically, under the existing law, no damages can be recovered in a case of this kind.

Mr. DINGLEY. Will the gentleman from Alabama be kind enough to explain what is intended by the phrase "nor any colorable intimation thereof?" Is not that language a little too strong?

Mr. MARTIN. I am really not prepared to answer the gentleman in the way I would like to do, because I do not pretend to be as familiar with the language employed about patents as, perhaps, I ought to be, in order to answer him.

Mr. BUCK. The gentleman from Alabama will allow me to suggest to the gentleman from Maine that the language referred to applies to a case where the imitation is substantially like the original, although not practically the same.

Mr. DINGLEY. Why not, then, use the word "substantial" instead of "colorable?"

Mr. BUCK. Possibly that language might be sufficient; but I can see no objection to the language used in the bill.

Mr. BUTTERWORTH. It has been held over and over again that the imitation must be practically the same thing; must be so close an imitation as to mislead anybody.

Mr. BUCK. The difficulty at present is that after these manufacturers have obtained from artists valuable designs and have applied for patents, some other person, interested in the same branch of manufacture, comes in and copies the design; and within a few days after the issue of the new patent other manufacturers will be found making carpets or wall-papers the design of which is colorably or substantially an imitation, though not exactly the same; and in this way the sales of those who honestly secure designs and have them patented are seriously affected.

Mr. MARTIN. I will say to my friend from Maine that I do not see that any mischief can result from retaining in the bill the word "colorable," because the expression is one which is well understood in connection with patent law, besides having, as a general legal term, a peculiar technical meaning, which is well recognized.

Mr. HAMMOND. Will the gentleman from Alabama allow me a question?

Mr. MARTIN. Certainly.

Mr. HAMMOND. In cases of violations of patents under the existing law the plaintiff recovers simply the damages which accrue to him by reason of the unauthorized use of his patent. Does not this bill undertake to give to the man whose patent is infringed all the profits made on the article embodying the infringement, whether those profits arise from the use of the design alone or from various other circumstances which may enter into the manufacture?

Mr. MARTIN. I will answer the gentleman by saying that when this bill was before the Committee on Patents that question was asked, and it was stated explicitly that no such purpose was had in view by any one who favored or urged the passage of the bill.

Mr. BUCK. The language of the bill will not allow that.

Mr. HAMMOND. I have asked the question for this reason: In the decision which has been referred to, the Supreme Court held that in cases of this kind there can be no recovery except for actual damages sustained by the unauthorized use of a patented design; and it is because of this decision that the Committee on Patents has reported this bill for the amendment of the existing law. Now the Supreme Court, in this case of Dobson vs. the Hartford Carpet Company, United States Report, page 444, says:

> This court has, in a series of decisions, laid down rules as to what are to be regarded as "profits to be accounted for by the defendant," and what as "actual damages," in suits for the infringement of patents; and no rule has been sanctioned which will allow, in the case of a patent for a design for ornamental figures created in the weaving of a carpet, or imprinted on it, the entire profit from the manufacture and sale of the carpet, as profits or damages, including all the profits from the carding, spinning, dyeing, and weaving, thus regarding the entire profits as due to the figure or pattern, unless it is shown, by reliable evidence, that the entire profit is due to the figure or pattern.

In that case, therefore, the court held that only such damages could be recovered as were shown to have accrued by the improper use of another man's patent. The concluding sentence of the paragraph is this:

> There is but one safe rule—the actual damages or profits, to be established by trustworthy legal proof.

This being the decision, the Committee on Patents now comes in here with a bill declaring not only that the infringer of a patented design shall be liable to a fine of $250 and the costs in the Federal court where he may be convicted, but if the whole amount of the profits on the goods sold to which the patent is fraudulently or without authority applied shall exceed $250, the plaintiff may recover the entire profit upon the article of product, without any proof that this arises from the use of the design in question.

Mr. MARTIN. I will say in reply to the gentleman, I can not put any such construction on this law.

Mr. HAMMOND. Permit me further. If that is not the right construction, then why undertake to change the law at all, for the Supreme Court have already declared in this case of Bigelow, in the one hundred and fourteenth volume, you can recover all actual damages you can prove; but you do not say in the act the damages here arising from the use of such patented design shall be recovered, but all the profits that the defendant has made on the article covered by the design.

Mr. MARTIN. Mr. Speaker, I see it will be necessary for me to consume a little more time than I had intended in order that this subject may be brought fully to the attention of the House. The patent is obtained for a certain figure, or figures, which will be employed in making carpet, or oil-cloth, or wall-paper, or anything of that kind. Here is a piece of carpet with a certain design on it; we will take it for illustration. Suppose there is no design on that article at all, there would be the cost of spinning the thread and of weaving it by the manufacturer of the goods. It would be practically as good as with the design printed on it; but if it had not a design which attracted the eye and made it desirable, then no one would think of buying the carpet.

A man making carpet, or oil-cloth, or wall-paper, or anything of that kind, goes to an artist and gets him to furnish a design which he thinks will captivate the eye and fancy of the purchaser. The moment he gets a patent for that design there must be left in the Patent Office a lithograph of it; and that lithograph can be obtained by any one who wants it for a few cents. Those who infringe the patent purchase these lithographs of designs. They have a full description of the design and make an exact counterfeit, or imitation; so exact hardly any man can see the difference between them. What we want in the law is this— in the case referred to of Dobson against the Hartford Carpet Company the trouble was this:

The Supreme Court said to him, you are entitled to your action on the case to recover such damages as you say you sustained. Now what are those damages? Damages which exist by reason of the carpet being made more desirable by reason of the design placed upon it? Who can say? How far can we arrive at the measure of damages in reference to this carpet, which has been selected because of its design? I say it is practically impossible to fix anything but nominal damages in an action of that kind. No one can tell whether this carpet was bought purely for the design or not. No one can tell whether another piece having a different design would not have been selected. Men will disagree, in my judgment, as my friend observed in reference to it.

There is a law allowing a man a patent for his design. He has now two remedies: action on the case for damage for use of it, and relief by injunction to prevent the manufacture of the goods. Both of them, I will say, are practically useless and futile as means to be employed for preventing infringement. A design only lives for a year; and how can you prevent a man making a carpet of a certain design without knowing he is engaged in making it? How do you know he is making it? It can not be known until the carpet is made and put upon the market. The remedy, when the carpet has been manufactured and put on the market, is by the action on the case. The patentee had another remedy by injunction. Every lawyer knows the remedy by injunction is a preventive remedy, and that in order to avail yourself of the benefit of it you must know of the contemplated injury in time to prevent the commission of it. So I say the remedy by injunction for a man who

has a patent design amounts to nothing. What this bill seeks to correct is sufficient, of itself, to commend it to all men.

We can not protect the man on his patent and in the possession of his patented rights unless we attach a penalty for the infringement of the same; and that is simply what the bill does.

Mr. BUTTERWORTH. In this case, as I understand it, no man will suffer either penalty or damage unless he willfully appropriates the property of another.

Mr. MARTIN. None whatever.

Mr. BUCK. And makes a profit on doing so.

Mr. MARTIN. That is the provision of the bill.

Mr. Speaker, I now ask the previous question——

Mr. HAMMOND. Before doing that, I trust my friend from Alabama will permit me a moment.

Mr. MARTIN. Certainly.

Mr. HAMMOND. I have no disposition to interfere with the statute proposed to be enacted, if it is correct; but we should certainly understand what we are doing. I see much force in what the gentleman says, but there seems an objection to this bill which I would like to have either corrected by an amendment or satisfactorily explained by the gentleman from Alabama. I appreciate the difficulties which he suggests, but is it not enough that in this statute you make the infringement of the patent a crime subject to a penalty of $250 fine by the courts, without giving additional damages to the infringed party and all of the profits growing out of the whole business of the man who infringes, although not one cent may have been received by him on account of the misappropriation?

Mr. BUCK. But many manufacturers would be willing and glad to pay $250 for the privilege of infringing.

Mr. HAMMOND. But if he infringes, as you suggest, he is liable to the penalty of $250 if he sells one yard of material; then he would be liable further to a penalty of $250 on the next bolt, and $250 on the next bolt, and so on indefinitely as long as he continued to infringe.

Mr. BUCK. You would have to bring so many different suits, and it would be rather an expensive proceeding.

Mr. HAMMOND. No; there would be no suit at all. You would go to the foreman of the United States grand jury and make your complaint. But you propose to do here what I do not believe exists in reference to any other law of patents, that is, to give to a man whose patent is violated or infringed the profits of the whole factory or establishment of the other man who is the infringing party, whereas he may have done it innocently.

Mr. BUCK. Allow me to suggest that it is not a criminal proceeding at all, but only a measure of damages against him.

Mr. HAMMOND. It says he shall be indicted and fined.

Mr. BUCK. No; but that he shall be liable, either by action at law or by a bill in equity, for an injunction.

Mr. HOLMAN. There is no provision for an indictment, and it is not a criminal proceeding, as I read the law. It provides that the party shall be liable to a penalty of $250, and if the profit made by him on the infringement shall exceed $250 he shall be further liable for the excess of such profit.

Mr. BUCK. And he has got to be sued for it.

Mr. HAMMOND. I beg pardon, I was regarding it on a casual reading as providing for an indictment.

Mr. HOLMAN. No, sir; it makes no such provision. I would like to ask my friend from Alabama one single question.

Mr. MARTIN. Certainly.

Mr. HOLMAN. Is there any other instance where the party whose right has been infringed upon is entitled to recover a specific sum in the event of infringement, and, in addition, whatever damages may be sustained? This statute gives the party as liquidated damages the sum of $250 for such infringement, as well as whatever may be recovered for the infringement; and then the additional bounty which may be the amount made by the infringed party from the sale of the article which is in part the result of the patent. I ask, then, is there any other statute in the interest of patents that contains both of these provisions—one for the recovery of a specific sum in liquidated damages, not by way of penalty or a fine in criminal proceedings, but by liquidated damage in a civil suit, and also the additional damage which the party may have sustained?

Mr. MARTIN. I know of no other instance in the patent law or any need of any provision of a similar character. The necessity for fixing a certain amount as the amount in liquidated damages arises from the peculiar character of the subject patented; and parties have been enabled heretofore to recover nothing whatever on account of such damages by reason of the species of property which the patent represents. The object in putting in the further clause that the party may recover any additional damages is this: It is believed that this will be preventive in its character, and no man would be likely to infringe when a recovery against him for such infringement will involve the sum of $250, as well as the total earnings of the business from that source; because there are many cases where parties would be willing to pay $250 for the privilege of infringing, because the manufacture which he would undertake would enable him to make many hundreds of dollars on such a small outlay; and this provision is put in for the purpose of meeting the cases of those who are willing to pay for the privilege of violating the law.

Mr. CROXTON. It must be a willful violation?

Mr. MARTIN. Yes, sir.

Mr. HOLMAN. But does my friend think, in view of the large rights now possessed by the owners of patents that there should be so material an enlargement and extension of the benefits intended to be conferred?

Mr. MARTIN. In this case I think such an extension is imperatively demanded.

Mr. MARTIN. I now renew my motion for the previous question.

The previous question was ordered.

The bill was ordered to a third reading, and was accordingly read the third time, and passed; there being, on a division—ayes 70, noes 10.

Mr. MARTIN moved to reconsider the vote by which the bill was passed; and also moved that the motion to reconsider be laid on the table.

The latter motion was agreed to.

Mr. MARTIN. I ask leave to extend my remarks upon this bill in the RECORD.

The SPEAKER. If there be no objection, the House bill on the same subject will be laid on the table.

There was no objection.

ORDER OF BUSINESS.

The SPEAKER. If the Committee on Patents has no further business to submit, the call now rests with the Committee on Invalid Pensions.

MESSAGE FROM THE SENATE.

A message from the Senate, by Mr. McCOOK, its Secretary, informed the House that the Senate had agreed to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the House of Representatives to the bill (S. 9) to fix the day for the meeting of the electors of President and Vice-President, and to provide for and regulate the counting of the votes for President and Vice-President, and the decision of questions arising thereon.

PENSION FOR DEAFNESS.

Mr. CONGER. I am instructed by the Committee on Invalid Pensions to call up for present consideration the bill (H. R. 5871) granting an increase of the rate of pension now provided for deafness. I ask unanimous consent that the Committee of the Whole House be discharged from the further consideration of the bill, and that it be considered in the House as in Committee of the Whole.

The SPEAKER. The bill will be read, after which the Chair will ask for objections to the request of the gentleman from Iowa.

The bill was read, as follows:

> Be it enacted, &c., That on and after the passage of this act, all soldiers and sailors who are now pensioned, or who may hereafter be pensioned, on account of total deafness of both ears, shall be entitled to receive the sum of $20 a month for such disability; and all soldiers and sailors who are now on the pension-rolls, or shall hereafter be placed on the pension-rolls, on account of disability from loss of hearing in a degree less than total deafness, shall be entitled to receive a pension proportionate to the rate provided herein for total deafness of both ears.

The SPEAKER. Is there objection to the request of the gentleman from Iowa?

Mr. COWLES. I object.

Mr. CONGER. I move that the House resolve itself into Committee of the Whole House on the state of the Union for the purpose of considering this bill.

The motion was agreed to.

The House accordingly resolved itself into Committee of the Whole on the state of the Union, Mr. SPRINGER in the chair.

The CHAIRMAN. The House is now in Committee of the Whole for the purpose of considering the bill (H. R. 5871) which the Clerk will read.

The bill was again read.

Mr. CONGER. Mr. Chairman, it seems to me that it is only necessary to call the attention of the House to the rate of pension which is now prescribed for total deafness and compare that with the rates for other specific disabilities to convince every member of this House that these unfortunate pensioners have been very greatly neglected. The rate of pension fixed by statute now for total deafness is only $13 a month. If it was not fixed by statute the Commissioner of Pensions would be permitted to increase it under his judgment as he is for other disabilities, the rate of which is not specified by law.

The rate of pension for the loss of a hand or foot is now $30; and it seems to me that no gentleman will disagree with the statement that for a person to be totally deaf is a greater affliction than to have lost a hand or a foot. In fact, I can conceive of no greater disability except perhaps it be the loss of both eyes or the loss of both arms than for one to be totally deaf.

The present rate fixed by law for the loss of a thumb and one finger is $12; for the loss of a thumb and two fingers, $14; for the loss of three fingers, $12. So you may go through the whole long list and you will find there are none of these pensions for other disabilities with which the rate for deafness will at all compare.