1  HAROLD J. MCELHINNY (CA SBN 66781)       WILLIAM F. LEE
   hmcelhinny@mofo.com                      william.lee@wilmerhale.com
2  MICHAEL A. JACOBS (CA SBN 111664)        WILMER CUTLER PICKERING
   mjacobs@mofo.com                         HALE AND DORR LLP
3  RACHEL KREVANS (CA SBN 116421)           60 State Street
   rkrevans@mofo.com                        Boston, MA 02109
4  ERIK J. OLSON (CA SBN 175815)            Telephone: (617) 526-6000
   ejolson@mofo.com                         Facsimile: (617) 526-5000
5  MORRISON & FOERSTER LLP
   425 Market Street                        MARK D. SELWYN (SBN 244180)
6  San Francisco, California  94105-2482    mark.selwyn@wilmerhale.com
   Telephone:  (415) 268-7000               WILMER CUTLER PICKERING
7  Facsimile:  (415) 268-7522               HALE AND DORR LLP
                                            950 Page Mill Road
8                                           Palo Alto, California 94304
                                            Telephone: (650) 858-6000
9  Attorneys for Plaintiff APPLE INC.       Facsimile: (650) 858-6100

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

14

| | |
|---|---|
| 15  APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK (PSG) |
| 16             Plaintiff, | **APPLE INC.'S RENEWED MOTION FOR A PERMANENT INJUNCTION** |
| 17     v. | |
| 18  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | |
| 19  ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | Date:     January 30, 2014<br>Time:     1:30 p.m. |
| 20  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | Place:    Courtroom 8, 4th Floor<br>Judge:    Hon. Lucy H. Koh |
| 21 | |
| 22             Defendants. | |

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 30, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Lucy Koh in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiff Apple Inc. ("Apple") will move, and hereby does move, for a permanent injunction against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, Inc. (collectively, "Samsung").

Pursuant to the Court's procedures, Apple emailed Ms. Parker-Brown on December 20, 2013 to request a hearing date for this motion.  Due to the holidays, however, Apple could not obtain a response to its request before filing this motion.  Apple did not include (and could not have included) its renewed motion for a permanent injunction in its December 13, 2013 post-trial brief because the Federal Circuit's mandate in the injunction appeal (Fed. Cir. No. 13-1129) had not yet issued.  Apple is filing this motion promptly upon issuance of the Federal Circuit's mandate on December 26, 2013, and has counted the number of pages in this motion against the 40-page limit set by the Court for post-trial briefs.  Under the local rules, briefing for this motion should be complete by January 16, 2014.  Apple respectfully requests that the Court hear Apple's renewed motion for a permanent injunction along with the other post-trial motions in this case at the hearing scheduled for January 30, 2014.

This motion is based on this notice of motion and supporting memorandum of points and authorities and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

Dated: December 26, 2013

WILMER CUTLER PICKERING
HALE AND DORR LLP

By:  */s/ William F. Lee*
WILLIAM F. LEE

Attorneys for Plaintiff
APPLE INC.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................... i

TABLE OF AUTHORITIES .................................................................................... iii

I.      INTRODUCTION ........................................................................... 1

II.     THE COURT SHOULD ENTER A PERMANENT INJUNCTION AGAINST
        SAMSUNG'S INFRINGEMENT OF THE '381, '915, AND '163 PATENTS................ 1

        A.      Samsung's Infringement Has Irreparably Harmed Apple....................................... 2

        B.      Money Damages Are Not An Adequate Remedy. ................................................. 6

        C.      The Balance Of Hardships Favors Entry Of A Permanent Injunction. ................... 8

        D.      The Public Interest Favors A Permanent Injunction. ............................................. 9

III.    CONCLUSION ........................................................................... 10

1

# TABLE OF AUTHORITIES

2

Page(s)

Cᴀsᴇs

3

4

*Abbott Laboratories v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008) ....................................................................... 9

5

*Acumed LLC v. Stryker Corp.*,
   551 F.3d 1323 (Fed. Cir. 2008) ..................................................................... 6, 7

6

7

*Apple Inc. v. Samsung Electronics Co.*,
   678 F.3d 1314 (Fed. Cir. 2012) ....................................................................... 5

8

*Apple Inc. v. Samsung Electronics Co.*,
   735 F.3d 1352 (Fed. Cir. 2013) ................................................................ *passim*

9

10

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) ...................................................................... 6, 7

11

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ....................................................................................... 2

12

13

*i4i Limited Partnership v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) ......................................................................... 6

14

*International Rectifier Corp. v. IXYS Corp.*,
   383 F.3d 1312 (Fed. Cir. 2004) ....................................................................... 8

15

16

*Kewanee Oil Co. v. Bicron Corp.*,
   415 U.S. 470 (1974) ..................................................................................... 10

17

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ........................................................................... 7

18

19

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
   449 F. App'x 923 (Fed. Cir. 2011) ................................................................... 7

20

21

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012) ....................................................................... 2

22

23

*Robert Bosch LLC v. Pylon Manufacturing Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ....................................................................... 2

24

*Sanofi-Synthelabo v. Apotex, Inc.*,
   470 F.3d 1368 (Fed. Cir. 2006) ....................................................................... 9

25

26

*Sgaraglino v. State Farm Fire & Casualty Co.*,
   896 F.2d 420 (9th Cir. 1990) ........................................................................... 1

27

28

*Verizon Services Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ................................................................................... 2

**STATUTES AND RULES**

35 U.S.C. § 283 ................................................................................................................. 1

Fed. R. Civ. P. 65(d) ........................................................................................................ 1

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION**

3            On November 18, 2013, the Federal Circuit vacated the denial of a permanent injunction

4    against Samsung's infringement of Apple's utility patents and remanded for further proceedings.

5    *See Apple Inc. v. Samsung Elecs. Co.* (*Apple III*), 735 F.3d 1352, 1375 (Fed. Cir. 2013).  On

6    December 26, 2013, the Federal Circuit issued its mandate (*see* No. 13-1129, Dkt. 90 (Fed. Cir.)),

7    which returned jurisdiction to this Court.  *See Sgaraglino v. State Farm Fire & Cas. Co.*, 896

8    F.2d 420, 421 (9th Cir. 1990) ("Upon issuance of the mandate, the case [i]s returned to the district

9    court's jurisdiction.").  Pursuant to Federal Rule of Civil Procedure 65(d) and 35 U.S.C. § 283,

10   Apple now renews its motion for a permanent injunction against Samsung's infringement of the

11   '381, '915, and '163 patents.

12           The record is already fully developed from the prior proceedings in this case, and the

13   equities overwhelmingly favor entry of an injunction.  The Court previously concluded that

14   Samsung's sale of infringing products has irreparably harmed Apple, and the Federal Circuit's

15   recent guidance makes clear that the record evidence—including Dr. Hauser's conjoint survey,

16   consumer praise for the patented features, and Samsung's deliberate copying—collectively

17   demonstrates a sufficient "causal nexus" between Samsung's infringement and the irreparable

18   harm to Apple.  Apple's careful and limited past licensing practices demonstrate that money

19   damages are not an adequate remedy for Samsung's infringement of these patents.  The balance

20   of hardships favors Apple—especially now that Samsung has stopped selling the particular

21   smartphone and tablet models that the jury found to infringe.  And the public interest favors

22   protecting the substantial investment that Apple made to develop the innovative technologies

23   claimed by the '381, '915, and '163 patents.  Accordingly, Apple respectfully requests that the

24   Court enter a permanent injunction.

25   **II.     THE COURT SHOULD ENTER A PERMANENT INJUNCTION AGAINST
             SAMSUNG'S INFRINGEMENT OF THE '381, '915, AND '163 PATENTS.**
26
             To obtain a permanent injunction, a patentee must demonstrate:
27
                 (1) that it has suffered an irreparable injury; (2) that remedies available at
28               law, such as monetary damages, are inadequate to compensate for that

1
2

> injury; (3) that, considering the balance of hardships between the plaintiff
> and defendant, a remedy in equity is warranted; and (4) that the public
> interest would not be disserved by a permanent injunction.

3

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Applying the Federal Circuit's

4

recent decision in this case, the equities overwhelmingly favor entry of a permanent injunction

5

against Samsung's infringement of Apple's three utility patents.

6

### A.    Samsung's Infringement Has Irreparably Harmed Apple.

7

The Court's prior findings and record evidence demonstrate that Apple has suffered—and

8

will continue to suffer—irreparable harm unless Samsung's infringement is enjoined.  The Court

9

previously found that (i) "Apple and Samsung continue to compete directly in the same market,"

10

which "increases the likelihood of harm from continued infringement" (Dkt. 2197 at 5); (ii)

11

"Samsung had an explicit strategy to increase its market share at Apple's expense," "Apple has

12

continued to lose market share to Samsung," and "loss of market share or the permanent loss of

13

customers as a result of infringing conduct can support a finding of irreparable harm" (*id.*); and

14

(iii) "Apple has suffered some irreparable harm in the form of loss of downstream sales" (*id.* at

15

6).  Those are precisely the type of irreparable injuries that the Federal Circuit has held support

16

the entry of a permanent injunction.  *See, e.g.*, *Presidio Components, Inc. v. Am. Tech. Ceramics*

17

*Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (holding that evidence of lost sales "squarely

18

supports a finding of irreparable harm"); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142,

19

1151 (Fed. Cir. 2011) (reversing the district court's finding of no irreparable harm in light of the

20

undisputed evidence of direct competition and lost market share); *Verizon Servs. Corp. v. Vonage*

21

*Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) (recognizing "lost opportunities to sell

22

other services to the lost customers" as a form of irreparable harm).

23

Although Samsung has stopped selling the precise models found to infringe Apple's

24

patents, the Court correctly concluded that Samsung's voluntary cessation of its infringement

25

through those products does not diminish the irreparable harm to Apple.  (Dkt. 2197 at 6-7 ("The

26

fact that Samsung may have stopped selling infringing products for now says nothing about what

27

Samsung may choose to do in the future.  Absent an injunction, Samsung could begin again to

28

1    sell infringing products, further exposing Apple to the harms identified above.  Thus, Samsung's

2    decision to cease selling its infringing phones does not alter the Court's irreparable harm

3    analysis.").)  Indeed, in the declarations Samsung filed previously, Samsung was careful to avoid

4    making any representations concerning its infringement of Apple's patents by its current and

5    future products.  (*E.g.*, Dkt. 2055, Choi Decl. ¶¶ 3-4 (limiting representations to the specific

6    models that the jury found to infringe).)  And Apple believes that Samsung continues to infringe

7    at least the '915 patent with its current products because Samsung has not disclosed a design-

8    around that avoids infringement of that patent.

9         Apple's irreparable injuries are the result of the infringing features in Samsung's products.

10   As the Federal Circuit recently explained, proof of a "causal nexus" between the patentee's

11   irreparable harm and the defendant's infringement may be "shown with evidence that the

12   inclusion of a patented feature makes a product significantly more desirable."  *Apple III*, 735 F.3d

13   at 1364.  Where a defendant infringes multiple patents, "it may make sense to view patents in the

14   aggregate where they all relate to the same technology or where they combine to make a product

15   significantly more valuable."  *Id.* at 1365.  Here, Apple's asserted utility patents claim related

16   touchscreen technologies that combine to make Samsung's infringing products easier and more

17   enjoyable for consumers to use.  There is significant demand for Apple's patented touchscreen

18   technologies individually, and the related touchscreen technologies claimed by Apple's '381,

19   '915, and '163 patents are properly aggregated when evaluating the proof of a causal nexus.

20   There is abundant evidence that those features make Samsung's infringing products more

21   desirable to consumers.

22        *First*, MIT professor John Hauser conducted a conjoint survey showing that Samsung

23   consumers would pay a substantial price premium for products containing the specific features

24   claimed by Apple's utility patents.  (*See* Dkt. 2739 at 528:13-22.)  As the Federal Circuit

25   explained, "evidence that a patented feature significantly increases the price of a product" may

26   show that the feature drives demand for the product.  *Apple III*, 735 F.3d at 1368.  Here, the price

27   premiums that Dr. Hauser's conjoint analysis showed are particularly strong evidence of a causal

28   nexus.  Dr. Hauser's survey showed that Samsung consumers would be willing to pay $39 more

1  for a smartphone with a $199 base price if it contained the specific features claimed by the '915

2  patent, or $100 more if it contained the features claimed by all three of Apple's asserted utility

3  patents.  (PX30; Dkt. 2739 at 529:17-25.)  For a tablet with a base price of $499, consumers

4  would be willing to pay an additional $45 if it contained the features claimed by the '915 patent,

5  or $90 more if it contained the features claimed by all three of Apple's utility patents.  (PX30;

6  Dkt. 2739 at 530:1-8.)  Those large price premiums show "substantial demand for the features

7  enabled by the patents in this case."  (Dkt. 2739 at 530:11-12.)  Based on those survey results, Dr.

8  Hauser testified that "but for these features, a lot of [Samsung consumers] would not buy the

9  phones at issue in this case."  (*Id.* at 551:13-18.)  Dr. Hauser's survey results—and the

10  conclusions drawn from them—are based upon reliable methods.  In fact, thousands of companies

11  rely on precisely those type of survey results to guide their business and marketing decisions.  (*Id.*

12  at 514:8-21.)  Samsung offered no survey expert who testified that there was any flaw in Dr.

13  Hauser's methodology, nor any alternative survey evidence to diminish the results that Dr. Hauser

14  obtained.

15       *Second*, additional consumer research conducted by Apple, Samsung, and third parties

16  shows that the features claimed by Apple's utility patents are important to consumers.  For

17  example, GravityTank—a consulting firm retained by Samsung—prepared a presentation that

18  highlighted the consumer praise for the features claimed by Apple's utility patents.  (*See, e.g.*,

19  PX36.36 ("Gestures like the two fingered pinch and flick add a game-like quality to interactions.

20  The flip adds a level of cool."); *id.* ("Lists bounce, icons flitter – the iPhone has a sense of

21  whimsy that shows a thoughtful character in the interface.").)  Likewise, McKinsey & Co. told

22  Samsung that the "[p]inch to zoom" feature, which is enabled by the '915 patent, "allows more

23  intuitive and easier browsing."  (Dkt. 2127-15 at 45.)  And consumer reviewers similarly praised

24  the features claimed by Apple's utility patents.  (*E.g.*, PX133.3 (*New York Times* describing web

25  browsing enabled by the "double-tap" feature as "real magic" and the multi-touch pinch-to-zoom

26  feature as "wicked cool"); PX135.2 (*Time Magazine* praising the "whole new kind of interface"

27  created by the iPhone's multitouch features, which enable "stretching and shrinking photographs

28  with their fingers").)  Moreover, the touchscreen features claimed by Apple's utility patents

together greatly enhance the "ease of use" of devices using those features, which contributes to their success in the marketplace. (*E.g.*, PX34.38 ("Easy and intuitive user interface" is an iPhone "success factor[]"); PX36.13 ("Ease of use is the major driver of [consumer] interest in touch."); PX143.6, PX144.6, PX145.5, PX146.6 (consumer research showing that ease of use is very important or somewhat important to 94-96% of iPhone buyers); Dkt. 1610 at 625:4-626:19 (describing the reasons for the success of the iPhone and iPad, including Apple's software inventions that make those devices "intuitive and simple").) Along with the praise for the particular features claimed by Apple's utility patents, this evidence that consumers value ease of use supports a causal nexus between Samsung's infringement and Apple's irreparable harm.

   *Third*, Samsung studied Apple's products and chose to copy the specific features claimed by Apple's utility patents. (*E.g.*, PX38.19, .24 (iPhone's "Double Tap" zooming is the "most preferred method" and should be adopted by Samsung); PX44.58 (Samsung's "Double Tap zoom in/out function needs to be supplemented" based on a side-by-side comparison with the iPhone); PX46.66 (Samsung concluding based on consumer research that the iPhone "[g]enerates fun for the user with a visual element that seems to bounce," which Samsung intended to incorporate in its own product); PX57.19 (identifying the lack of a "bounce effect" as a "critical" problem with Samsung's tablet under development); PX57.73 (adding a "springing Bounce effect" like the iPad 2 was a "Proposed Improvement" to Samsung's tablet under development).) The Federal Circuit has held that such copying evidence is probative of demand for the patented features. *Apple III*, 735 F.3d at 1367 (explaining that "evidence that Samsung's employees believed it to be important to incorporate the patented feature into Samsung's products is certainly relevant to the issue of nexus between the patent and market harm" (quoting *Apple Inc. v. Samsung Elecs. Co.* (*Apple I*), 678 F.3d 1314, 1327-1328 (Fed. Cir. 2012))). Indeed, Samsung's damages expert conceded at trial that "what Samsung executives are telling their own employees about what should go in their product is relevant" evidence of "demand for the patented feature." (Dkt. 2841 at 1040:15-23.) This evidence, viewed together with the substantial price premium for the patented features from Dr. Hauser's study and the consumer research and reviews showing the importance of those

1    features, clearly establishes a causal nexus between Samsung's infringement and the irreparable

2    harm to Apple that the Court has already found.

3         **B.    Money Damages Are Not An Adequate Remedy.**

4         Apple's incalculable lost market share and lost downstream sales demonstrate that money

5    damages are not an adequate remedy for Samsung's infringement.  Indeed, the Court has already

6    found that "the difficulty in calculating the cost of lost downstream sales does suggest that money

7    damages may not provide a full compensation for every element of Apple's loss."  (Dkt. 2197 at

8    18.)  And the Federal Circuit has consistently recognized that money damages are not adequate

9    under precisely these circumstances.  *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831,

10   862 (Fed. Cir. 2010) (concluding that money damages would not remedy "loss of market share"

11   because "[s]uch losses may frequently defy attempts at valuation"); *Broadcom Corp. v.*

12   *Qualcomm Inc.*, 543 F.3d 683, 703-704 (Fed. Cir. 2008) ("[D]ifficulty in estimating monetary

13   damages reinforces the inadequacy of a remedy at law.").

14        Apple's careful and limited past licensing practices with respect to the asserted utility

15   patents confirm that money damages are not an adequate remedy here.  As the Federal Circuit has

16   made clear, the relevant question is "whether damages would adequately compensate Apple for

17   *Samsung's* infringement of *these patents*."  *Apple III*, 735 F.3d at 1371.  In making that

18   determination, the Court must take into account the relevant differences between Apple's past

19   licensing practices and a compulsory license to Samsung.  *Id.* at 1370; *see also Acumed LLC v.*

20   *Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (explaining that "the identity of the past

21   licensees, the experience in the market since the licenses were granted, and the identity of the new

22   infringer" are all relevant to determining adequacy of money damages).  Apple has licensed its

23   asserted utility patents only three times—to IBM, Nokia, and HTC—each time under very

24   different circumstances and with significant restrictions that distinguish those licenses from the

25   situation here.

26        For example, the IBM license—which was signed five years before Apple launched the

27   iPhone—was part of a broad cross-license with a company that did not sell smartphones or

28   tablets.  (Dkt. 2061, Pierce Decl. Ex. 12-2 at APLNDC0001221082 ("Patent Cross License

1   Agreement" dated October 25, 2002); *see also* Dkt. 418, Lutton Decl. ¶ 5 (describing IBM license

2   as a "general cross-license" and noting that "IBM does not compete with Apple in the smartphone

3   and tablet computer markets").)  The IBM license is therefore irrelevant to the question of

4   whether Apple would now license its asserted patents to a direct competitor like Samsung.  *See*

5   *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 933 (Fed. Cir. 2011)

6   (concluding that the patentee's prior license agreement was irrelevant where the licensee, unlike

7   the accused infringer, was not a direct competitor); *Acumed*, 551 F.3d at 1328 (similar);

8   *Broadcom*, 543 F.3d at 703 (explaining that the patentee's prior license to a non-competitor "has

9   little bearing on the effect of a compulsory license to a direct competitor").

10          Likewise, the Nokia and HTC agreements were litigation settlements and cross-license

11  agreements that involved numerous other patents not at issue here.  (Dkt. 2061, Pierce Decl. Ex.

12  12-1 (¶¶ 1.10, 1.11, 2.1, 3.1; Appendices 1, 2); Dkt. 2194-1 (¶¶ 1.11, 2.1, 3.1, 4.1-4.3; Ex. F).)

13  They do not suggest that money damages would be adequate compensation for Samsung's

14  infringement of Apple's '381, '915, and '163 patents.  *See, e.g.*, *Acumed*, 551 F.3d at 1328-1329

15  (holding that the district court properly found money damages inadequate and distinguishing a

16  prior license to the patent-in-suit as a litigation settlement); *cf. LaserDynamics, Inc. v. Quanta*

17  *Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012) (recognizing the unique litigation pressures

18  that distort the terms of a licensing agreement made for settlement purposes).  Moreover, the

19  Nokia and HTC licenses contain significant restrictions, which distinguish them from the

20  unfettered use of Apple's patents that Samsung would enjoy absent an injunction.  The Nokia

21  agreement was merely a "provisional license" for a limited "standstill" period (Dkt. 418, Lutton

22  Decl. ¶ 6), and the HTC agreement precludes HTC from making "clones" of Apple's products

23  (Dkt. 2194-1 (¶¶ 5.1, 12.1, 12.3, 12.4; Ex. A)).  Indeed, recognizing the substantial differences

24  between the HTC agreement and any license with Samsung, the Court excluded evidence of the

25  HTC agreement from the damages retrial.  (Dkt. 2667 at 6-10.)  The limited terms of Apple's

26  licenses with Nokia and HTC are consistent with Apple's desire to prevent others from using its

27  unique user experience patents—like the asserted utility patents—without restriction.  (*See* Dkt.

28  1695 at 1956:21-1957:2.)  They certainly do not demonstrate that money damages are adequate

1   compensation for an unrestricted compulsory license to Apple's closest and most fierce

2   competitor.

3       **C.    The Balance Of Hardships Favors Entry Of A Permanent Injunction.**

4       Samsung will not incur any significant hardship from an injunction because it has stopped

5   selling the particular models found to infringe and claims to have developed design-arounds to

6   Apple's patents.  (*See* Dkt. 2054 at 13-14 & n.10.)  Samsung's own expert testified that Samsung

7   would be able to develop design-arounds to Apple's patents with minimal burden and expense.

8   (DX702.002 (estimating total design-around costs for all three utility patents to be $27,300).)  As

9   the Court previously recognized, having argued that it has stopped selling its infringing products,

10  Samsung "cannot now turn around and claim that [it] will be burdened by an injunction that

11  prevents sale of these same products."  (Dkt. 2197 at 19.)

12      At the same time, Samsung's claim that it has discontinued selling the particular models

13  found to infringe or designed around Apple's patents in no way diminishes Apple's need for

14  injunctive relief.  Because Samsung frequently brings new products to market (Dkt. 1610 at

15  880:13-881:7; Dkt. 1842 at 3037:2-4; Dkt. 2840 at 715:12-15), an injunction is important to

16  providing Apple the relief it needs to combat any future infringement by Samsung through

17  products not more than colorably different from those already found to infringe.  *Apple III*, 735

18  F.3d at 1372 (stating that Apple's request for an injunction against "infringing products and

19  products not more than colorably different" is consistent with the Federal Circuit's injunction

20  precedent); *see also Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1317 (Fed. Cir. 2004)

21  (endorsing a permanent injunction against infringement by devices adjudged to infringe and

22  "devices no more than colorably different therefrom").  Apple should not have to bear the risk

23  that Samsung's supposed design-arounds are insufficient or that Samsung will not continue its

24  infringement with new products.

25      Moreover, the absence of an injunction is far more burdensome to Apple than entry of an

26  injunction would be for Samsung.  The parties have product lines of vastly different scope.

27  Unlike Apple, which launches only a small number of new products each year and sells only a

28  few smartphone products at any given time, Samsung launches approximately 50 new

APPLE INC.'S RENEWED MOTION FOR A PERMANENT INJUNCTION
Case No. 11-cv-01846-LHK (PSG)                                                              8

1    smartphones each year and has over 100 products available in the United States at any given time.

2    (Dkt. 1610 at 880:13-881:7; Dkt. 1842 at 3037:2-4.)  Even if the infringing products at issue here

3    were enjoined, Samsung would still have numerous products on the market.  By contrast, Apple's

4    much narrower product line must compete with any ongoing infringement by Samsung, which—

5    as the Court previously found (Dkt. 2197 at 5)—has already cost Apple significant market share.

6           When all relevant information is considered—including the relative size of the parties'

7    product offerings—it is clear that the balance of hardships favors entry of an injunction.  Whether

8    Samsung continues its infringement is entirely within Samsung's control, and Apple should not

9    have to bear the risk that Samsung will continue its infringement absent an injunction.[1]

10          **D.     The Public Interest Favors A Permanent Injunction.**

11          The Federal Circuit invited the Court to reevaluate its conclusions on the public interest

12    factor to reflect its analysis of irreparable harm under the correct legal standard.  *Apple III*, 735

13    F.3d at 1373 n.8.  The public interest would be served by protecting the valuable innovations

14    claimed by Apple's utility patents, particularly in light of the evidence that those patents together

15    make Samsung's infringing products more desirable to consumers.  As Apple's Senior Vice

16    President of Marketing Phil Schiller explained, Apple undertook "huge risks" in developing the

17    iPhone and its related technologies—including the asserted utility patents.  (Dkt. 2840 at 802:25-

18    803:12 ("We had a saying inside the company that [the iPhone] was a you-bet-your-company

19    product …. [W]e were risking both our reputation and the business of the company in doing

20    this.").)  The public interest favors the enforcement of patent rights to reward precisely that type

21    of investment-based risk, as the Court previously recognized.  (Dkt. 2197 at 20 ("[T]he public

22    interest … favor[s] the enforcement of patent rights to promote the 'encouragement of

23    investment-based-risk.'"  (quoting *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed.

24    Cir. 2006))); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008) ("The

25    patent laws promote … progress by offering a right of exclusion for a limited period as an

26

27    —————————————
      [1]      The Court previously concluded that the balance of hardships was a "neutral" factor.
28    (Dkt. 2197 at 19.)  Since that time, Samsung has stopped selling all models adjudicated to
      infringe—tipping the balance of hardships further in Apple's favor.

1    incentive to inventors to risk the often enormous costs in terms of time, research, and

2    development."  (quoting *Kewanee Oil Co. v. Bicron Corp.*, 415 U.S. 470, 480 (1974))).)

3         The public interest in patent enforcement is particularly strong where, as here, an

4    injunction will not implicate public safety issues, but will only prevent Samsung from competing

5    unfairly with Apple by selling products that use the features claimed by Apple's asserted utility

6    patents.  Moreover, because Samsung has discontinued selling the particular models found to

7    infringe, an injunction would present minimal, if any, disruption to the public.  As the Court

8    recognized, numerous other smartphones are available that will satisfy the public's need for

9    smartphone technology.  (Dkt. 2197 at 20 ("Consumers will have substantial choice of products,

10   even if an injunction were to issue.").)  Even Samsung, if enjoined, will be able to sell numerous

11   other products, assuming they are more than colorably different from those already found to

12   infringe.  If anything, the public would benefit from the diversity of product offerings that would

13   result from enjoining further infringement by a direct competitor.

14   **III.    CONCLUSION**

15        Taken together, the equities strongly favor entry of a permanent injunction to prevent

16   Apple from suffering further irreparable harm through Samsung's unlawful competition with

17   products embodying Apple's valuable patented features.  Accordingly, Apple respectfully

18   requests that the Court enter an order permanently enjoining Samsung from infringing Apple's

19   '381, '915, and '163 patents as stated in the attached proposed order.

20

21

22   Dated: December 26, 2013              WILMER CUTLER PICKERING
                                           HALE AND DORR LLP

23

24                                         By:  */s/ William F. Lee*
                                                WILLIAM F. LEE
25
                                                Attorneys for Plaintiff
26                                              APPLE INC.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 26, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ William F. Lee
William F. Lee