QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S POST-TRIAL MOTION FOR JMOL, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST**<br><br>Date:  January 30, 2014<br>Time:  1:30 p.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I. APPLE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CLAIM FOR SAMSUNG'S TOTAL PROFITS. ................................................... 1

    A. The Jury's Decision to Deduct a Portion of Samsung's Operating Expenses Is Supported by the Record. ................................................................... 2

    B. The Jury's Decision to Deduct a Portion of Samsung's Operating Expenses Is Consistent with Governing Precedent. ............................................. 3

    C. The Seventh Amendment Independently Bars Apple's Request for Additur. .......... 7

II. THE COURT SHOULD NOT RECONSIDER APPLE'S PREMATURE REQUEST FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST. ........................................................................................................... 8

III. APPLE'S DISCUSSION OF PERMANENT INJUNCTIVE RELIEF IS IMPROPER AND INCORRECT. ................................................................... 11

CONCLUSION ..................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Amstar Corp. v. Envirotech Corp.*,
　823 F.2d 1538 (Fed. Cir. 1987)...................................................................................................10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
　735 F.3d 1352 (Fed. Cir. 2013)...................................................................................................11

*Bergstrom v. Sears, Roebuck & Co.*,
　496 F. Supp. 476 (D. Minn. 1980) ...........................................................................................3, 4

*Clay v. Gordon*,
　2000 WL 191936 (6th Cir. 2000) .................................................................................................7

*ClearOne Comm'ns, Inc. v. Biamp Sys.*,
　653 F.3d 1163 (10th Cir. 2011) ....................................................................................................8

*Dimick v. Scheidt*,
　293 U.S. 474 (1935) .....................................................................................................................7

*E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*,
　117 F.3d 1244 (11th Cir. 1997) ....................................................................................................7

*Eolas Techs., Inc. v. Microsoft Corp.*,
　2004 WL 170334 (N.D. Ill. Jan. 15, 2004) ..............................................................................9, 10

*Flat Slab Patents Co. v. Turner*,
　285 F. 257 (8th Cir. 1922)............................................................................................................4

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
　772 F.2d 505 (9th Cir. 1985)....................................................................................................4, 5

*Hamil Am. Inc. v. GFI*,
　193 F.3d 92 (2d Cir. 1999)...........................................................................................................8

*Itron, Inc. v. Benghiat*,
　2003 WL 22037710 (D. Minn. Aug. 29, 2003).......................................................................9, 10

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
　752 F.2d 1333 (9th Cir. 1984)......................................................................................................5

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
　885 F.2d 1 (2d Cir. 1989).............................................................................................................6

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
　2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) ...............................................................................9

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
　2013 WL 4068833 (S.D. Cal. Aug. 12, 2013) .............................................................................9

*Roman v. Western Mfg., Inc.*,
    691 F.3d 686 (5th Cir. 2012) ................................................................................................ 7

*Schnadig Corp. v. Gaines Mfg. Co., Inc.*,
    620 F.2d 1166 (6th Cir. 1980) ........................................................................................ 3, 4, 8

*Sheldon v. Metro-Goldwin Pictures Corp.*,
    106 F.2d 45 (2d Cir. 1939) ................................................................................................... 5

*Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*,
    311 B.R. 378 (S.D.N.Y. 2004) .......................................................................................... 4, 8

*Syndia Corp. v. Gillette Co.*,
    2002 WL 2012473 (N.D. Ill. 2002) ....................................................................................... 9

*Tremaine v. Hitchcock & Co.*,
    90 U.S. 518 (1874) ................................................................................................................ 4

*Winchester Repeating Arms Co. v. Am. Buckle & Cartridge Co.*,
    62 F. 278 (C.C.D. Conn. 1894) ............................................................................................. 4

**Statutes and Rules**

35 U.S.C. § 289 ................................................................................................................................ 3

Civ. L.R. 7-9(a) ............................................................................................................................... 8

**INTRODUCTION**

Apple's request for additur – which asks the Court to increase the jury's damages award to the maximum amount advocated by Apple's expert – is without merit. The Court should reject Apple's request for two independent reasons. On the merits, Apple's argument that Samsung failed to carry its burden of proving deductible operating expenses is wrong. Samsung provided evidence of its deductible operating costs, and it is in fact Samsung, not Apple, that is entitled to relief under governing law and the undisputed record (*see* Dkt. 2882 at 27-31). Moreover, Apple's request for additur is prohibited by the Seventh Amendment, as the Court already held on prior post-trial motions.

The Court should also deny Apple's motion for reconsideration of the Court's earlier rulings on supplemental damages and prejudgment interest. For good reasons, the Court previously postponed the calculation of any such awards until after the resolution of appeals in this case. Apple's motion improperly seeks reconsideration of that decision without meeting the requirements set forth by the Local Rules. Nor can Apple meet those requirements. Notwithstanding its assertion that supplemental damages and prejudgment interest are "simply a matter of arithmetic," Apple has not identified any legitimate reason for the Court to overturn its earlier rulings. Consistent with conventional practice, the evidence, testimony, and argument necessary to determine the proper amount, if any, of supplemental damages and prejudgment interest should be considered only after the resolution of appeals.

Finally, Apple's brief discussion of its separate request for injunctive relief is irrelevant to its present motion, and, moreover, understates the extent of the proceedings required in connection with that request.

**ARGUMENT**

**I. APPLE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CLAIM FOR SAMSUNG'S TOTAL PROFITS.**

Apple does not dispute Samsung's mathematical explanation of the jury's verdict as set forth in Samsung's Motion for Judgment as a Matter of Law, New Trial or Remittitur. *See* Dkt. 2882 at 3-4. That is, the jury awarded Apple all of its requested lost profits and requested

reasonable royalty amounts, and the majority of Apple's claimed infringer's profits (61.3960645% to be precise).  *Id.*   Apple now seeks to do via post-trial motion what the jury decided not to do – award Apple every penny it was asking for.   Specifically, Apple asks the Court to increase the jury's monetary award, which Apple concedes deducts some of Samsung's operating expenses, to the maximum amount Apple sought.   Apple's motion fails on the merits in light of the record and finds no support in the law on infringer's profits.   Furthermore, Apple's request for additur is contrary to the Seventh Amendment.

> **A.    The Jury's Decision to Deduct a Portion of Samsung's Operating Expenses Is Supported by the Record.**

Apple's contention that Samsung did not introduce evidence satisfying the "directly attributable" standard or "at the product level" (Dkt. 2876 at 3) is refuted by the record. Samsung introduced detailed operating cost data for each accused product, drawn from the product-by-product data in Samsung's audited S.A.P. database.  *See* DX676; 11/15/13 Trial Tr. 968:3-17.   Samsung's fact and expert witnesses testified that the specific operating expenses identified in trial exhibit DX676 were necessary to manufacture and sell the accused products. *See*, *e.g.*, *id.* at 962:21-24, 1015:5-1016:21.    Samsung's damages expert, Mr. Wagner, opined that certain of the costs "*directly attributable*" to specific accused products "have to be allocated because that particular cost is shared by a number of products."   11/18/13 Trial Tr. 1136:14-20 (emphasis added). Samsung also introduced evidence that its common costs were allocated to specific products on a fair and reasonable basis, according to a three-step methodology that Samsung uses in the ordinary course of business.   *See*, *e.g.*, 11/15/13 Trial Tr. 964:18-965:22, 967:15-17 (describing Samsung's "process of closing the books to then allocate [Samsung's] costs to products so you can understand the profitability of the product," using an allocation methodology is "very common," "taught in most accounting schools," and tested on the CPA exam).   And Apple's own damages expert, Ms. Davis, admitted that operating expenses are necessary to manufacture and sell products. *See* 11/18/13 Trial Tr. at 1191:14-19 (Ms. Davis admits that "operating expenses are necessary, generally, in order to sell a product"), 1192:3-9

(Ms. Davis admits that "[i]n general, the people that are operating the company are needed to operate the company, which includes the exercise of making and selling products").

In light of this evidence and testimony, the jury had more than sufficient basis to reasonably conclude that at least certain of Samsung's operating expenses were "directly attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense."  *See* Dkt. 2784 at 39 (Final Jury Instr. No. 31).[1]

### B. The Jury's Decision to Deduct a Portion of Samsung's Operating Expenses Is Consistent with Governing Precedent.

Apple offers no authority for its novel argument (Dkt. 2876 at 3) that no reasonable jury could find that allocated operating costs are deductible under 35 U.S.C. § 289.[2]  Indeed, for the purpose of calculating total profits under Section 289, numerous design patent cases approve deducting operating costs beyond merely costs of goods sold, where those costs are necessary to make and sell the accused products.

For example, in *Schnadig Corp. v. Gaines Manufacturing Company, Inc.*, 620 F.2d 1166 (6th Cir. 1980), a design patent case, the Sixth Circuit upheld the trial court's deduction of a portion of the defendant's fixed overhead costs, recognizing that the infringing product "could not have been produced without expenses for utilities, administrative salaries, building space and the like," and that these costs "are as necessary to the infringing production as the variable expenses, and should be similarly treated."  Likewise, in *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476 (D. Minn. 1980) – a case frequently relied on by Apple (*see*, *e.g.*, Dkt. 759-2 at 14; Dkt. 940-1 at 21) – the court held that a calculation of infringer's profits under Section 289 cannot "ignore the costs of salaries, overhead and the like, as these expenditures 'are necessary for each component

---

[1]  Samsung expressly preserves its objection to this instruction for the purposes of appeal.
[2]  Apple did not make this argument in the last round of post-trial motions, despite the fact that – pursuant to the Court's "Groundhog Day" rule – Samsung relied on substantially the same evidence of its costs in the second trial as it did in the first.  There was nothing unique about the second trial that should allow Apple to raise this new argument now.  *See* Dkt. 2316 at 3 ("The sole purpose of the trial is to correct the erroneous notice dates. The Court will not permit the parties to expand the scope of the damages trial by relying upon: (1) new sales data, including any sales after June 30, 2013; (2) new products; and (3) new methodologies or theories."); *cf.* Dkt. 2635 at 2 ("Samsung's failure to raise the Gem issue in post-trial motions provides yet another reason for concluding Samsung forfeited this argument.").

of production,'" and thus deducted a portion of the defendant's costs on that basis. *Id.* at 497-98 (citation omitted); *see also Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 400-401 (S.D.N.Y. 2004), *aff'd*, 153 F. Appx. 703 (Fed. Cir. 2005) (deducting costs that were "directly related" to the infringing product because the product "could not have been brought to market without them"). As these cases recognize, the defendant's operating expenses, such as administrative and overhead expenses, may be directly attributable to the manufacture and sale of the accused products, and are therefore deductible when calculating infringer's total profits.

Nor is there any basis to Apple's claim (Dkt. 2876 at 3) that, because Samsung "allocated costs across products," no reasonable jury could have found any of these costs to be deductible. In design patent cases, courts have deducted costs attributed to specific products using an allocation methodology. *See*, *e.g.*, *Bergstrom*, 496 F. Supp. at 497-98 (deducting 60% of the fixed costs that defendant allocated to the infringing product by applying the net profit percentage of its entire merchandising operation); *Schnadig Corp.*, 620 F.2d at 1172 (upholding deduction of two-thirds of the fixed costs allocated to the infringing product). Similarly, prior to 1946, when infringer's profits were an available remedy for utility patent infringement, courts routinely deducted common costs by allocating a percentage to the accused products.[3]  *See Tremaine v. Hitchcock & Co.*, 90 U.S. 518, 528-29 (1874) (allowing defendant to "prove the general expenses of their business" and "deduct a ratable proportion from the sale of [the infringing product]"); *Flat Slab Patents Co. v. Turner*, 285 F. 257, 277-280 (8th Cir. 1922) (affirming deduction of costs that were "intermingled" between defendant's infringing and noninfringing business according to the "comparative ratios of the gross infringing and of the gross noninfringing business to the entire gross business"); *Winchester Repeating Arms Co. v. Am. Buckle & Cartridge Co.*, 62 F. 278, 280 (C.C.D. Conn. 1894) ("general expenses which the conduct of the business necessarily requires are to be estimated in the ascertainment of profits" and "apportioned according to the amount of sales"). Indeed, Apple's own authority recognizes that allocating overhead costs "based on a

---

[3] Courts have held that "pre-1946 case law on the subject of the recovery of profits by utility patentees should be given substantial weight in the design patent context." *Bergstrom*, 496 F. Supp. at 496-97.

1  ratio of the revenues from [the infringing product] as compared to . . . total revenues" is a
2  "reasonably acceptable" method of allocation.  *Frank Music Corp. v. Metro-Goldwyn-Mayer,*
3  *Inc.*, 772 F.2d 505, 516 (9th Cir. 1985).

4  Apple's motion also relies on the untenable position that Samsung was required to
5  introduce literally millions of pages of individual invoices and receipts to show how millions of
6  individual expenses related to each of the seven products found liable for design patent
7  infringement.  *See* Dkt. 2876 at 3-4.  Apple fails to cite a single patent case to support this
8  absurd argument, and neither of the cases Apple cites imposes such an onerous and impractical
9  requirement.  To the contrary, Apple's cases expressly state that a defendant is ***not*** required to
10 "prove his overhead expenses and their relationship to the infringing production in minute detail."
11 *Frank Music*, 772 F.2d at 516 (citing *Sheldon v. Metro-Goldwin Pictures Corp.*, 106 F.2d 45, 52
12 (2d Cir. 1939)).  Rather, the defendant need only "explain[ ], at least in general terms, how [the]
13 claimed overhead actually contributed to the production of the infringing work."  *Id.* (citing
14 *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1333 (9th Cir. 1984)).

15 Here, the evidence and testimony of record easily satisfies the standard set forth in Apple's
16 authorities.  Samsung offered evidence of product-by-product operating expenses for each
17 accused product.  *See* DX676.  Mr. Sheppard and Mr. Wagner explained "what costs were
18 included in general categories such as 'general and administrative expenses,'" and how each
19 "categor[y] . . . actually contributed to sales of the infringing [products]."  *Frank Music*, 772 F.2d
20 at 516.  Mr. Sheppard, for example, testified that Samsung's sales expenses for the accused
21 products included the cost of shipping products to domestic warehouses and ultimately to
22 customers; the cost of advertising and marketing the products to consumers; the cost of added
23 sales personnel during busy periods; and the cost of insuring product shipments and warehouses.
24 *See* SDX3965; 11/15/13 Trial Tr. 961:4-962:7.  He further testified that Samsung's G&A
25 expenses for the accused products include the salaries and benefits for the "staff involved in
26 supporting the operation," as well as the depreciation costs associated with providing staff with the
27 facilities and equipment they need to do their jobs.  11/15/13 Trial Tr. 962:8-20.  Finally, Mr.
28 Sheppard testified that Samsung's R&D expenses for the accused products included the cost of

testing the products to ensure compatibility with carrier networks and implementing software updates over the life of the product.  *Id.* at 963:2-18.  Mr. Wagner likewise described the types of costs included in each expense category and how those costs contributed to the accused products.  *Id.* at 1015:17-1016:21.

Apple's reliance on *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989) is misplaced.  There, the court noted that "a party may approximate overhead in the absence of reliable data pertaining to actual overhead."  *Id.* at 8.  To the extent *Manhattan Industries* requires that defendants in a design patent case establish the absence of actual overhead data in order to rely on reasonable allocation methods, Samsung made that showing at trial.  As Mr. Wagner testified, it is simply not feasible for an organization of Samsung's size and complexity to track all operating costs on a product-by-product basis without relying on some method of allocation.  11/15/13 Trial Tr. 1022:25-1023:11; *see also* 11/18/13 Trial Tr. 1126:12-19 (expecting Samsung to identify the specific individual amounts spent to develop each product would be "an unfair burden" because "[n]o company can give you that level of detail on an accurate basis"); *id.* at 1129:20-1130:1, 1131:12-17 ("it would be impossible" to maintain individual documents that specifically attribute sales and administrative expenses to each accused product because Samsung's personnel are not organized by product); *id.* at 1138:16-1139:2 (maintaining documentation on individual costs for each product "would be an incredible expense").

Finally, Apple's argument that no jury could reasonably find any allocated costs to be deductible, if accepted, would yield absurd results.  As Mr. Wagner's unrebutted testimony explained, 11/15/13 Trial Tr. 1016:22-1017:8, in any situation where the accused infringer sells products other than those accused of infringement, it is necessary to consider the portion of shared costs allocated to the accused products in order to accurately calculate their total profits.  *See id.* at 1017:6-8 ("But if you sell multiple products and some of them don't infringe, you have to allocate these common costs that are necessary in order to come out with your total profits.").  Apple's argument, if adopted, would lead to the absurd result that by selling noninfringing products, the accused infringer would lose the right to deduct all allocated expenses necessary to

1  manufacture and sell the accused products. Nothing in the law or logic supports such an extreme, unjust result.[4]

Apple's argument that the jury's award should be increased to the amount of Samsung's gross profits has no support in the record or the law, and should be rejected.

**C.  The Seventh Amendment Independently Bars Apple's Request for Additur.**

The Court has already recognized that the Seventh Amendment "prohibits a judicial increase in a damages award made by a jury." Dkt. 2271 at 2 (citing *Dimick v. Scheidt*, 293 U.S. 474, 486-87 (1935)). Apple attempts to avoid this constitutional bar to additur by invoking a narrow exception that applies only in "instances of uncontested damages." *See Roman v. Western Mfg., Inc.*, 691 F.3d 686, 702 (5th Cir. 2012); *Clay v. Gordon*, No. 98-6408, 2000 WL 191936, at *3 (6th Cir. Feb. 10, 2000) ("The narrow *Dimick* exception for undisputed damages has been recognized only when damages claims are definite and incontrovertible."). Apple invoked the same exception—and cited the same authorities—in seeking additur after the first trial. *See* Dkt. 2132 at 12. The Court rejected Apple's argument then, *see* Dkt. 2271 at 2, and should do so again now.

Apple's cases are easily distinguished because this is not a case of uncontested damages. The parties disputed the amount of Samsung's profits attributable to the accused products, the relationship between Samsung's expenses and the accused products, and the extent to which Samsung's expenses were necessary to manufacture and sell the accused products. In contrast, both of the cases cited by Apple involved no dispute over the amount of proper compensation in light of the disposition of the parties' claims and defenses. *See Roman*, 691 F.3d at 701-702 (defendant "at no time disputed" the amount of medical expenses incurred by plaintiff, the relationship between the expenses and the plaintiff's injury, or the necessity of the treatment); *E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997) (no dispute over the amount of wages plaintiff would have earned between her resignation and the

---

[4] Apple's argument is also inconsistent with its own expert's calculations. Ms. Davis admitted that costs of goods sold, which she conceded are deductible expenses, include costs that have been allocated. *See* 11/14/13 Trial Tr. 765:15-766:3 (Ms. Davis admits that, as testified by Apple's 30(b)(6) witness Mr. Buckley, cost of goods sold includes allocated costs).

-7-  Case No. 11-cv-01846-LHK
SAMSUNG'S OPP'N TO APPLE'S POST-TRIAL MOT. FOR JMOL, SUPP. DAMAGES, AND PREJUDGMENT INTEREST

date defendant offered to reinstate her).  The exception to *Dimick* simply does not apply where, as here, the amount of damages is disputed.  *See ClearOne Comm'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1181 (10th Cir. 2011) (rejecting plaintiff's reliance on *Massey Yardley Chrysler Plymouth* where "[t]he amount of lost profits in this case was not liquidated or established as a matter of law").

In an attempt to sidestep the Seventh Amendment, Apple characterizes the parties' dispute as limited to a legal question regarding Samsung's "cost allocation method."  *See* Dkt. 2876 at 5.  Apple's argument misses the mark.  *First*, while the difference between Mr. Wagner's calculation of gross profits and Ms. Davis's was "small," 11/15/13 Trial Tr. at 1014:23-1015:4, Samsung has never conceded that its gross profits represented an undisputed minimum award if the jury or the Court rejected its method of allocating shared costs.  *Second*, the "reasonableness of the [defendant's] overhead allocation formula is a question of fact" in design patent cases.  *See*, *e.g.*, *Sunbeam Prods.*, 311 B.R. at 401 (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 105 (2d Cir. 1999)); *see also Schnadig Corp.*, 620 F.2d at 1172 ("the relationship between the [infringer's] fixed costs and the infringing product[ ] has been treated as a question of fact").  Regardless of how Apple frames the dispute or the relief it seeks, Apple asks the Court to do precisely what the Seventh Amendment forbids:  "second-guess the jury's factual determination as to the proper amount of compensation."  Dkt. 2271 at 2.

Apple's motion should be denied and, for the reasons stated in its Motion for Judgment as a Matter of Law, New Trial or Remittitur (Dkt. 2882 at 27-29), Samsung is entitled to relief reflecting the proper deduction of all its operating expenses for the products found to infringe Apple's design patents.

## II. THE COURT SHOULD NOT RECONSIDER APPLE'S PREMATURE REQUEST FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST.

Apple's motion "renews its request" for supplemental damages and prejudgment interest (Dkt. 2876 at 5-8), even though the Court already ruled following extensive briefing that it will address these issues "after the completion of the appeals in this case."  Dkt. 2271 at 5-6.  The Court should reject Apple's request and abide by its prior order.

*First*, Apple's motion improperly seeks reconsideration of the Court's prior ruling. The Civil Local Rules required Apple to seek leave to file a motion for reconsideration, not simply "renew" a request on which the Court has already spent considerable time preparing a prior ruling. *See* Civ. L.R. 7-9(a). Furthermore, Apple does nothing to explain how its "renewed request" satisfies the criteria governing motions for reconsideration. *See* Civ. L.R. 7-9(b) (party seeking reconsideration of prior order must show (1) "a material difference in fact or law" that the party did not know previously "in the exercise of reasonable diligence"; (2) "new material facts or a change of law occurring after the time of such order"; or (3) "a manifest failure by the Court to consider material facts or dispositive legal arguments"). Apple's motion should be denied for this failure to meet the Court's requirements for reconsideration motions.

*Second*, Apple fails to identify any good reason to revisit the Court's prior order. Apple asserts that "circumstances have changed" now that Samsung has stopped selling the products found to infringe. Dkt. 2876 at 5. However, this change has no impact on the Court's reasons for postponing dealing with supplemental damages and prejudgment interest—*i.e.*, that "proceeding without the Federal Circuit's guidance may cause unnecessary expenditures of time and resources." Dkt. 2271 at 6. The outcome on appeal will affect a number of issues that control the proper award of supplemental damages and prejudgment interest, including whether such an award is permissible at all.[5] Notably, courts that have awarded supplemental damages and prejudgment interest prior to appeal have had to repeat that process after the Federal Circuit resolved the parties' appeals. *See*, *e.g.*, *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, No. 08-cv-335, 2010 WL 3070370, at *2 (S.D. Cal. Aug. 5, 2010), *vacated in part*, 702 F.3d 1351 (Fed. Cir. 2012) (awarding supplemental damages); *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, No. 08-cv-335, 2013 WL 4068833, at *9-16 (S.D. Cal. Aug. 12, 2013) (awarding supplemental damages again after Federal Circuit remand). As this Court recognized,

---

[5] The Court has already recognized that delaying an award of supplemental damages has no effect on the entry of a final judgment. *See* Dkt. 2271 at 6 (citing *Itron, Inc. v. Benghiat*, No. Civ. 99-501, 2003 WL 22037710 (D. Minn. Aug. 29, 2003); *Eolas Techs., Inc. v. Microsoft Corp.*, No. 99-c-626, 2004 WL 170334 (N.D. Ill. Jan 15, 2004), *vacated in part on other grounds,* 339 F.3d 1325 (Fed. Cir. 2005)).

obtaining Federal Circuit guidance before awarding supplemental damages and prejudgment interest is both the standard practice and the most efficient course.  *See*, *e.g.*, *Itron,* 2003 WL 22037710 at *16 (postponing supplemental damages until after appeal to "avoid potentially unnecessary expenditures of time and money in preparing such an accounting"); *Eolas Techs.*, 2004 WL 170334 at *8 (granting motion for supplemental damages but delaying an accounting until "after any appeal in this case is terminated").

*Finally*, the supplemental damages calculation is not nearly as simple as Apple would have the Court believe.  As an initial matter, Apple admits that additional discovery is necessary.  Dkt. 2876 at 7.  More important, any calculation of supplemental damages must be limited to *infringing* sales.  *See Syndia Corp. v. Gillette Co.*, No. 01-c-2485, 2002 WL 2012473, at *2-4 (N.D. Ill. Aug. 30, 2002) (patentee not entitled to discovery or supplemental damages for sales of redesigned products); *cf. Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1544-45 (Fed. Cir. 1987) (in an accounting following infringement verdict, patentee was required to prove by a preponderance of the evidence that defendant's redesigned product was infringing).  The calculations presented by Apple ignore the fact that Samsung redesigned the accused products following the August 2012 verdict.[6]  Dkt. 2055, Choi Decl. ¶¶ 11-20; Dkt. 2060, Kerstetter Decl. ¶¶ 8, 14-17; Dkt. 2075, Rowden Decl. ¶¶ 4-7.  In order to award supplemental damages, the Court would have to resolve the parties' disputes regarding whether Samsung's redesigned products infringe – including whether, for example, products with gray front faces infringe Apple's D'677 patent.  *See* Dkt. 2057, Lucente Decl. ¶¶ 12-21.  Contrary to Apple's purported goal of quickly bringing "the proceedings to a close" (Dkt. 2876 at 1), dealing with supplemental damages now would only delay entry of final judgment and impede the Court's objective of enabling prompt appellate review.

---

[6] While Samsung was precluded from introducing evidence of actual design-arounds for the '381 and '163 patents at trial, the Court expressly reserved Samsung's right to rely on such evidence in post-trial proceedings.  *See* Dkt. 1106 at 4.

**III.   APPLE'S DISCUSSION OF PERMANENT INJUNCTIVE RELIEF IS IMPROPER AND INCORRECT.**

At the very end of its memorandum (Dkt. 2876 at 9), Apple references its then-forthcoming renewed motion for a permanent injunction in light of the Federal Circuit's decision in *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352 (Fed. Cir. 2013).  That renewed motion, which has since been separately noticed (Dkt. 2897), does not seek either judgment as a matter of law or a new trial and thus is not properly addressed here.  Samsung will oppose that motion in due course.  In the meantime, it suffices to note that Apple is not correct in asserting that the permanent injunction record is "already fully developed" and that "only minimal additional briefing will be required on remand."  Dkt. 2876 at 9.  Rather, as Samsung has explained elsewhere (*see* Dkt. 2901), the Federal Circuit's decision requires substantially more process.

## CONCLUSION

For the foregoing reasons, Apple's motion should be denied in its entirety.

DATED: January 6, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Victoria F. Maroulis*
   Charles K. Verhoeven
   Kathleen M. Sullivan
   Kevin P.B. Johnson
   Victoria F. Maroulis
   Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC