QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | **DECLARATION OF TÜLIN ERDEM IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S RENEWED MOTION FOR A PERMANENT INJUNCTION** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

I, TÜLIN ERDEM, declare as follows:

**I.      QUALIFICATIONS AND STATEMENT OF ASSIGNMENT**

**A.      Qualifications**

1.      I am the Leonard N. Stern Professor of Business Administration and Professor of Marketing at the Stern School of Business, New York University.  I previously served as the Co-Director of the Center for Digital Economy Research and the Director of the Stern Center for Measurable Marketing.

2.      Before joining the Stern School of Business in 2006, I was the E.T. Grether Professor of Business Administration and Marketing at the Haas School of Business, University of California at Berkeley.  I joined the Haas School of Business in 1993 and served as the Associate Dean for Academic Affairs and the Marketing Group Chair, the Ph.D. Director at the Haas School of Business and the Chair of the campus-wide Committee on Research (COR) at the University of California, Berkeley.  I was also the Berkeley representative at the University of California system-wide Committee on Research.

3.      I hold a BA from Boğazici University and an MA in Economics and a Ph.D. in Business Administration, with a major in marketing and minors in economics and statistics, from the University of Alberta.  My research interests include advertising, brand management and equity, consumer behavior and choice, decision-making under uncertainty, econometric modeling, marketing mix effectiveness, marketing research and pricing.  I have published several papers in top field journals and have received best paper awards, as well as major research grants, including two major National Science Foundation (NSF) grants.

4.      I served as the editor-in-chief of the *Journal of Marketing Research*, the preeminent academic journal of the American Marketing Association, which publishes work on consumer behavior, marketing science models, marketing strategy and marketing research methodologies.  I also served as an Area Editor at *Marketing Science* and Associate Editor at *Quantitative Marketing and Economics* and the *Journal of Consumer Research*.  I serve as an editorial board member of many scholarly journals, including *Journal of Consumer Research, Journal of the Academy of*

*Marketing Science*, *Marketing Letters* and *International Journal of Research in Marketing*.  I also was the President of the INFORMS Marketing Society (ISMS).

5.      As a professor, I have taught branding, brand and product management, marketing management and international marketing in undergraduate, MBA and executive education programs.  I also have taught doctoral seminars on consumer choice modeling and empirical modeling.

6.      From 2008 to 2012, I was an Academic Partner at Prophet, a branding and marketing consultancy firm.

7.      A complete list of my publications, honors, awards and professional activities is provided in my CV, attached in Exhibit 1.

### B.      Assignment

8.      I have been retained by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") in this matter to provide this declaration and, if needed, testimony relating to Apple, Inc.'s ("Apple") renewed request for a permanent injunction that would exclude a number of Samsung smartphones and tablets from the U.S. market due, in part, to the alleged infringement of three utility patents owned by Apple.  The three utility patents at issue in this proceeding are: (1) United States Patent No. 7,844,915 ("the '915 patent"); (2) United States Patent No. 7,864,163 ("the '163 patent"); and (3) United States Patent No. 7,469,381 ("the '381 patent").

9.      My assignment is to explain, based on my expertise and the materials that I have reviewed, consumer decision-making in connection with the purchase of complex devices containing numerous, multi-level features/attributes (*e.g.*, a smartphone or tablet).  I will explain, based on my expertise and the materials I have reviewed, the kinds of features/attributes that drive consumer demand in the smartphone and tablet markets.  Specifically, I have been asked to focus on whether the Apple utility patents at issue in its renewed permanent injunction motion (the '915, the '163 and the '381 patents) drive consumer demand for Samsung smartphones and tablets when compared to non-infringing alternatives to those patents.

-3-      Case No. 11-cv-01846-LHK
**DECLARATION OF TULIN ERDEM**

10.     Counsel has provided me with the descriptions/animations of Apple's three utility patents used by Professor John R. Hauser in his conjoint analysis.[1]  Counsel also has provided me with a Galaxy SII Epic 4G Touch device so that I can examine the design-arounds on the '381 and '163 patents.

11.     In connection with the assignment, I will assume that Prof. Hauser's representation of the Apple patents in his survey is accurate (although I understand that Samsung disputes this). Additionally, I will rely on the information and descriptions contained in the declarations of Mr. Stephen Gray and Dr. Andries van Dam as accurate reflections of Samsung's preferred non-infringing alternatives.

12.     In preparing this report, I have reviewed documents produced by both Samsung and Apple, as well as the testimony of certain Apple witnesses.  A list of materials that I relied upon in reaching my conclusions is provided in Exhibit 2.

13.     At any hearing on this motion, I expect to use exhibits in support of my testimony consisting of documents produced during discovery of this case, or excerpts or enlargements of them.  I also expect to prepare and use demonstrative exhibits to help me to explain opinions that are contained in this declaration.  In the event I am provided with additional relevant materials, I reserve the right to supplement this declaration with additional conclusions, bases, and/or supporting material.

14.     I am compensated at my standard rate of $900 per hour, plus expenses, for my work in this case.  The opinions I express in no way are contingent on the compensation I will receive.

II.     OVERVIEW OF OPINION

15.     In forming my opinions,

---

[1]     Expert Report of John R. Hauser, March 22, 2012 ("Hauser Report").

a. I have applied well-accepted and published theories and conceptual frameworks in marketing (such as conceptual frameworks of consumer decision-making).

b. I have relied upon Apple and Samsung internal marketing research documents, other marketing materials produced in this case, as well as my own background research about the industry and industry reports, to apply these frameworks to the facts at issue in the case.

16. Based on my expertise in consumer decision-making and choice, as well as the materials I reviewed, my opinions can be outlined as follows:

i. Smartphones and tablets incorporate numerous features/attributes, each of which consists of many sub-features and/or contributing elements.

ii. In making purchase decisions concerning smartphones and tablets, consumers base their decisions on only a subset of all of the available features/attributes (rather than the set of all features/attributes and sub-features). The relevant set of determinative features/attributes and the manner in which they are weighed vary across consumers.  In considering the purchase of a smartphone or tablet, consumers do not separately evaluate each sub-feature.

iii. Apple's utility patents at issue in its motion (the '915, the '163 and the '381 patents) relate to three functionalities that are properly considered a subset (or "sub-feature") of a main feature/attribute of a smartphone or tablet.

iv. The functionalities embodied in these three patents are not independently or separately considered in consumer purchase decisions and do not drive consumer demand for Samsung smartphones and tablets.

iv. From the consumer's perspective, the functionalities provided by design-arounds that are available to Samsung for the functionalities embodied by the patents at issue perform the relevant functions in ways that are indiscernible or minimally discernible to the end consumer compared to the use of the patents at

issue.  Given that these three functionalities do not drive consumer demand, different (and minor) variations of how these functionalities are offered (*i.e.*, as implemented through available design-arounds) cannot be expected drive consumer demand either.

## III.    PATENTS-AT-ISSUE

### A.    '915 Patent

17.    Issued on November 30, 2010, the '915 patent is entitled "Application Programming Interfaces for Scrolling Operations."[2]  Based on my review of the Declaration of Stephen Gray dated October 18, 2012, I understand that the '915 patent covers a specific technique for distinguishing between scrolling and zooming operations on a touchscreen device, and the technique requires a specific test to be performed in the Android software.  For example, scrolling moves the content on the touchscreen the same direction the user moves her finger, and zooming makes the content smaller or larger depending on whether a user moves her fingers closer together or farther apart.  It is my understanding that Apple has accused the Web Browser application in Samsung's smartphones/tablets of infringement.

18.    It is my understanding that Samsung's software has been modified to remove the specific test required by the '915 patent.  The design-around software uses a different technique to allow for scrolling and zooming operations.  Although the software has been changed, I understand from the Gray Declaration that the user experience remains essentially the same.  That is, a user will still be able to scroll with a single finger and zoom with two fingers using the design-around software.

### B.    '163 Patent

19.    Issued on January 4, 2011, the '163 patent is entitled, "Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents."[3]

---

[2]    U.S. Patent 7,844,915.
[3]    U.S. Patent 7,864,163.

20.     Based on my review of the Gray Declaration, I understand that the '163 patent covers the following two steps.  First, a user taps (or double taps) on a first box of content on a touchscreen (*e.g.*, an article on the New York Times webpage).  In response, the first box of content is enlarged and substantially centered on the touchscreen.  Second, after the first box of content has been enlarged and centered, the user taps (or double taps) on a second box of content (*e.g.*, a second article that appears below the first article on the New York Times webpage).  In response, the second box of content is substantially centered on the touchscreen.  It is my understanding that Apple has accused the Web Browser application in Samsung's smartphones/tablets of infringement.

21.     I understand from the Gray Declaration that Samsung has implemented a design-around to avoid the practice of the '163 patent.  Under the design-around, when a user single taps on the second box, nothing happens.  If the user double taps on the second box, the entire webpage zooms out.  In both cases, the second box is not substantially centered on the touchscreen as a result of the second tap/double tap.  In preparing this declaration, I used a smartphone that included this design-around functionality.

**C.     '381 Patent**

22.     Issued on December 23, 2008, the '381 patent is entitled, "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display."[4]

23.     Based on my review of the Declaration of Andries van Dam dated October 18, 2012, I understand that '381 patent claims a snap-back functionality where, if the user translates an electronic document beyond the edge of that document, an area beyond that edge will be displayed.  When the user lifts her finger from the touch screen, the document will snap back, such that no area beyond the edge of the document remains in view.  It is my understanding that Apple has accused the Gallery, Web Browser and Contacts applications in Samsung's smartphones/tablets of infringement.

---

[4]     U.S. Patent 7,469,381.

24.     I understand from the van Dam Declaration that the "blue glow" feature designs around the '381 patent.  Under this design-around, when the user scrolls to the edge of a document, the document comes to a stop and a blue glow animation appears near the edge of the document.  An area beyond the edge of the document never appears.  When the user lifts her finger, the blue glow disappears.  In preparing this declaration, I used a smartphone that included this design-around functionality.

## IV.   CONCEPTUAL FRAMEWORK

### A.   Product Features, Attributes and Benefits

25.     Products can be conceptualized as bundles of attributes (alternately called features) that provide benefits or costs (such as price) to consumers.[5]  Benefits associated with those attributes sought by consumers could be functional (*e.g.*, acceleration in a car), emotional/experiential (*e.g.*, how driving a certain brand of car can make the driver feel excited and exhilarated) and/or self-expressive/symbolic (*e.g.*, one consumer may express her frugality or patriotism by owning a Saturn; another consumer may express her being hip and well-to-do by owning a BMW).[6]

26.     Some attributes (such as quality) are vertically differentiated rather than being horizontally differentiated.  Vertical attributes of products are ones that consumers would prefer more of, ceteris paribus (that is, keeping everything else constant).  For example, keeping everything else including price constant, people would prefer higher quality over lower quality.  This is not true for horizontally differentiated product attributes.  Some people may prefer butter with popcorn, some may not; some may prefer one color over another.[7]

27.     A "brand" is defined as "a name, term, sign, symbol, or design, or combination of them, which is intended to identify the goods or services of one seller or group of sellers and to

[5]   Lancaster, Kelvin (1966), "A New Approach to Consumer Theory," *Journal of Political Economy*, 74, 132-157.

[6]   Aaker, David A. (1991). *Managing Brand Equity*. New York: The Free Press.

[7]   Tirole, J. (1990). *The Theory of Industrial Organization*. Cambridge, MA: MIT Press.

**DECLARATION OF TULIN ERDEM**

differentiate them from those of competitors."[8]  Brand franchise[9] refers to consumer loyalty

toward a brand.  All the products sold under the same brand name, that is, products that share the

same "umbrella brand,"[10] are part of a brand's franchise since consumer loyalty is geared towards

all the products under the same brand name.

### B.    Consumer Decision Processes & Purchase Behavior

28.    Consumer decision processes in regard to consumer purchases or choices are

typically conceptualized to have five steps: need arousal, information search, evaluation, purchase

and post-purchase.[11]  Factors such as the degree of involvement, the type of product, and past

experience affect whether certain steps are skipped or how important each step is in the

decision-making process.  To give an extreme example, in impulse purchases, a consumer may

jump from need arousal to purchase.

29.    Consumers may use multiple information sources: individual marketing mix

elements of a firm (*e.g.*, advertising), brands, their own past experiences, word of mouth,

salespeople, third-party information providers, etc.

30.    Consumers evaluate products to form perceptions about product attributes and

benefits, as well as to formulate their preferences.  Consumers develop perceptions about the

levels of attributes, which are weighted according to their preferences (that is, importance weights

attached to perceived attribute levels).  For example, a consumer may attach a higher importance

weight to the cavity-fighting attribute of a toothpaste than to the teeth whitening attribute.

Likewise, some consumers may attach a high importance weight to (*i.e.*, have a preference for) the

---

[8]    Kotler, Philip (1997). *Marketing Management*. New Jersey: Prentice Hall, p.443.
[9]    Franchise also has a specific meaning in channels and distribution.  It refers to the arrangement between a brand name manufacturer and a wholesaler or retailer that gives the wholesaler or retailer the exclusive right to sell the brand manufacturer's product in a specific territory. This arrangement is usually established by contractual agreement over a period of time.
[10]    For example, Gucci (*e.g.*, hand bags, fashion eye glasses, watches), Dove (soap, moisturizer, liquid dishwashing detergent), and Oral-B (toothpaste, toothbrush, mouthwash, dental floss) are umbrella brands. *See* Erdem, Tülin (1998), "An Empirical Analysis of Umbrella Branding," *Journal of Marketing Research*, 35 (3), 339-351.
[11]    Lilien, Gary L. Philip Kotler and K. Sridhar Moorthy (1992), *Marketing Model*s, New Jersey: Prentice Hall.

"organic" attribute of food products, while other consumers may not.  The evaluation of the choice alternative, or the utility consumers derive from that choice alternative, is the sum of these perceptions weighted by their relative importance (importance weights).

31.     Consumers face multiple decisions in the purchase process.  Besides the general decisions of whether to buy, when to buy, and where to buy, there are also decisions such as how much to buy (in frequently purchased product categories), which platform to buy (Windows vs. Apple in PCs, or Apple IOS vs. Android in smartphones), and which features/attributes to consider in forming overall evaluations about options.  As a practical matter, some of these decisions can be made simultaneously and others sequentially.

32.     Not all consumers approach purchase decisions in the same manner, and different consumers may follow different sequences in making purchase decisions.  For example, a Samsung marketing research document indicates that 55 percent of Samsung consumers and 35 percent of Apple consumers select the wireless service provider first and the mobile phone model second, while 32 percent of Samsung consumers and 24 percent of Apple consumers select the provider and phone simultaneously, and the remaining select the phone first and the provider second.[12]

33.     In practice, consumers facing complex decision tasks often use heuristics to save on costs of thinking (information processing costs).[13]  For example, if there are many choices to consider, they may first eliminate options using disjunctive rules (*e.g.,* to exclude from consideration any tablet that costs more than $300).  Furthermore, if a product has multiple features/attributes, consumers may focus only on a subset of features/attributes to evaluate and compare options, and research has shown that consumers may consider a smaller subset of options when the number of choices increases.  For example, in one leading article, Payne (1976) asked

---

[12]  "Attitudes and Usage of Smartphone owners," Hall & Partners (SAMNDCA00252685-775, at 760).

[13]  Shugan, Steven (1980), "The Cost of Thinking," *The Journal of Consumer Research*, Vol. 7(2), 99-111.

his subjects to choose among two, six or twelve hypothetical apartments.[14]  Information was

available about each apartment with respect to either four, eight or twelve features/attributes of the

apartments such as rent, cleanliness, landlord attitude, noise level, etc.  As the number of

alternatives and/or the number of features/attributes increased, the subjects were progressively less

thorough in their inspections.  Payne's results illustrate a commonly observed characteristic of

representation and evaluation of alternatives.  They appear to include remarkably few of the

alternatives' aspects and features/attributes.  One explanation of this phenomenon is that people

have limited cognitive capacity, and the use of heuristics and selective consideration of

features/attributes simplifies decision-making processes.[15]

## V.    ANALYSIS OF SMARTPHONE AND TABLET PURCHASE DECISION-MAKING

34.    Both smartphones and tablets are used in different contexts such as text messaging,

e-mailing, viewing/editing documents, and listening to music.  For example, the Yankee Group

Samsung Strategy Session document[16] identified "key" usage contexts for smartphones to be:

performing banking transactions, transferring money to friends or family, receiving or redeeming

coupons, mobile internet shopping, downloading graphics/logos/wallpapers, downloading ring

backs, downloading ring tones, receiving text alerts, posting/uploading photos to web, accessing

online community or social networking, locating points of interest, obtaining driving directions

(Location-based/GPS services), accessing and browsing of the internet, watching live TV,

watching video clips, listening to downloaded or sideloaded music, listening to streaming music,

downloading music, playing games, downloading games, taking pictures, participating/voting in

contests or polls, using "push to talk" (walkie talkie), instant messaging, accessing e-mail, video

messaging, picture messaging/MMS and text messaging/SMS.

---

[14]    Payne, J.W. (1976), "Task Complexity and Contingent Processing in Decision-Making: An Information Search and Protocol Analysis," *Organizational Behavior and Human Performance*, 16, 366-387.
[15]    Yates, Frank, J. (1990). *Judgment and Decision-Making*. New Jersey: Prentice Hall.
[16]    Yankee Group Samsung Strategy Session (SAMNDCA00250503-557, at 519).

**DECLARATION OF TULIN ERDEM**

35.     Similarly, there are many activities corresponding to different usage contexts in tablets, including: checking personal e-mail, browsing the web, reading e-books, using apps, playing games, viewing photos, reading digital magazines and newspapers, watching videos, watching streaming video, listening to music, checking social networking sites, maintaining a calendar, uploading photos, taking notes, reading PDFs, maintaining an address book, improving productivity, being organized, navigating and making presentations.[17]

36.     Given the wide variety of uses, smartphones and tablets incorporate a very large set of features/attributes to deliver the benefits and functionalities consumers seek.

### A.     Main Features/Attributes of Smartphones and Tablets

37.     Both Apple and Samsung internal documents identify many main features/attributes that may play a role in consumer decision-making concerning smartphones and tablets.

38.     With regard to smartphones, a 2011 iPhone Buyer Survey identified the following features/attributes that are considered by consumers when choosing an iPhone: web capabilities, ease of use, ability to download and use applications, value for price paid, multi-tasking, appearance and design, battery life, camera, retina display, FaceTime video calling, HD video recording and ability to edit video.[18] A Hall & Partners Study conducted for Samsung likewise lists many features/attributes, each with multiple levels or sub-features such as voice features (including speakerphone, voice dialing, memo), digital photography capabilities (including digital camcorder, live TV, video call, video share...), MP3 player functionality (including direct download, sideload), text messaging options (including multimedia, IM, Voice, T9 function), and many others.[19]

39.     Similarly, many features/attributes contribute to consumer purchase decisions for tablets.  According to Apple's iPad Tracking Study, the list of top features/attributes prompting

---

[17]   "Q1 FY11 iPad Tracking Study" (APLNDC-Y0000023730-907 at 839-40).
[18]    "Q1 FY11 iPhone Buyer Survey" (APLNDC-Y0000027341-422, at 357-369).
[19]   "Attitudes and Usage of Smartphone owners," Hall & Partners (SAMNDCA00252685-775, at 719-746).

Case No. 11-cv-01846-LHK
**DECLARATION OF TULIN ERDEM**

acquisition of tablets in the US include portability, Wi-Fi capabilities, entertainment options, ease of use, battery life, screen size, quality, weight, apps, and 3G capabilities.[20]  This document also noted that the benefits of tablets include a cool/fun experience and a reduction in the need to use a computer.[21]   Another Apple document reported that "Ads triggered the desire to own an iPad, while the product features such as being portable/lightweight, Wi-Fi capable, and easy to use were the hooks."[22]

### 1.   Defining and Identifying Main Features/Attributes

40.   The identification and definition of the full set of features/attributes for smartphones and tablets are subject to some degree of ambiguity and subjectivity, because there is no objective or universal set of features/attributes against which all smartphones and tablets are evaluated.  Given the ambiguities inherent in delineating relevant features/attributes, it can be difficult to even provide a comprehensive list of features/attributes considered by consumers in making purchase decisions.

41.   Thus, even if one could compile a comprehensive list of features/attributes, it is likely that the various features/attribute descriptions would be ambiguous and have different meanings to different individuals or in different contexts.  For example, the term "ease of use" refers to the ease of use associated with keyboard and buttons in some documents,[23] and the ease of use associated with Internet features in others.[24]  As a result, even a comprehensive list will likely have ambiguities.

42.   A further complication in evaluating the importance of specific features/attributes to consumer decision-making concerning smartphones and tablets is the fact that the complexity and sheer number of features/attributes incorporated into smartphones and tablets mean it is not uncommon for consumers to not even know whether they have a certain feature/attribute.  For

---

[20]   "Q1 FY11 iPad Tracking Study" (APLNDC-Y0000023730-907, at 816).
[21]   "Q1 FY11 iPad Tracking Study" (APLNDC-Y0000023730-907, at 816).
[22]   "August 2010 iPad Buyer Survey" (APLNDC-Y0000023361-427, at 384).
[23]   "Attitudes and Usage of Smartphone owners," Hall & Partners (SAMNDCA00252685-775, at 750).
[24]   "2009 Wireless Consumer Smartphone Satisfaction Study Volume 1," J.D. Power and Associates (SAMNDCA00190144-243, at 195).

1  example, the same smartphone survey conducted for Samsung referenced above notes that 30

2  percent of consumers surveyed did not know if their smartphone had a T9 function (a type of

3  predictive texting).[25]

4       **2.       Main Features/Attributes Consist of Many Sub-Features and
                    Functionalities**

5       43.     One of the main reasons that defining and characterizing the main

6  features/attributes of smartphones and tablets are difficult stems from the fact that each main

7  feature/attribute is really a combination of multiple sub-features and capabilities.

8       44.     For example, Apple's iPhone Product Marketing Manager Steven Sinclair testified

9  at his deposition that "[t]here are a lot of features that contribute to ease of use, and if not done

10  correctly, those features can detract from ease of use;"[26] "I don't believe we've broken down

11  features in a way that tie directly to ease of use;"[27] and "All of the features contribute to ease of

12  use."[28]

13      45.     Due to these circumstances, companies selling complex devices such as

14  smartphones and tablets use general descriptions to refer to groups of features/attributes, and the

15  combination of sub-features therein, in most of their consumer research.  Apple, for example, uses

16  the following as descriptions of groups of attributes in its surveys and research of consumer

17  preferences for iPhone attributes: easy to use, service and support, (Trust) Apple brand, quality of

18  apps, battery life, value for price paid, quantity of apps, attractive appearance and design, ability to

19  sync iPhone content, camera with LED flash, retina display, HD video recording and FaceTime

20  video calling.[29]

21      46.     Consequently, the consumer research available from Apple and Samsung has been

22  conducted in such a manner that it will rarely (if ever) be possible to link a specific patent of the

23  types at issue here to a feature/attribute contained in their consumer research, especially in a

24  ─────────────
    [25]  "Attitudes and Usage of Smartphone owners," Hall & Partners (SAMNDCA00252685-
25  775, at 729).
    [26]  Deposition of Steven Sinclair, April 4, 2012 ("Sinclair Deposition"), at p. 59.
26  [27]  Sinclair Deposition, at p. 47.
    [28]  Sinclair Deposition, at p. 52.
27  [29]  "iPhone Buyer Survey Q3 FY11" (APLNDC-Y0000027506-599, at 523).

28

manner that would reasonably permit one to conclude that the patent was having an impact on consumer demand.

### B. Consumers Do Not Consider All Main Features/Attributes in Making Purchase Decisions

47.     Academic literature recognizes that in complex decision environments consumers focus on a limited set of attributes for comparative purposes when making purchase decisions. For example, consumers cannot take into consideration all features/attributes when they are so numerous, as they are in smartphones and tablets (as described above).

48.     Given the many features/attributes of smartphones and tablets, main purchase drivers are often centered on main benefit groups.  For example, Apple internal consumer research suggests that the reasons for purchasing an iPhone are focused on "the main benefits of owning a smartphone, including apps and Internet access."[30]  That research shows that "Web Capabilities," "Ease of Use" and "One device that combines mobile phone, iPod, Internet" receive high feature importance scores and are noted as main drivers of demand.[31]

49.     Apple's documents reflect Apple's recognition that consumers ignore the majority of features/attributes.  Indeed, Apple's surveys do not even test a majority of them.  For example, when comparing consumer preferences for different attributes of the iPhone 4, Apple's iPhone Buyer Survey pre-selected a set of features/attributes (as listed in paragraph 38 of this report) to test.  The survey results then reflected that iPhone 4 buyers rate improved battery life, 5MP camera with flash and Retina Display among the highest in importance.[32]  But the vast majority of the iPhone 4's features/attributes are never mentioned in the survey questions (*i.e.*, there is no option for a consumer to even rank them).  Nor should they be mentioned because, as discussed above (and as implicitly recognized by Apple's market research), they will have no impact on consumer decision-making.

---

[30]   "Q2 FY11 iPhone Buyer Survey" (APLNDC0000036266-348, at 273).
[31]   "Q2 FY10 iPhone Buyer Survey" (APLNDC-Y0000026687-807, at 696-97).
[32]   "Q2 FY11 iPhone Buyer Survey" (APLNDC0000036266-348, at 295).

**DECLARATION OF TULIN ERDEM**

50.     Surveys also reflect that there are differences in importance weights (preferences for) attached to features/attributes among different phone users.  For example, one Samsung survey notes that iPhone owners put more importance on the brand of the smartphone than owners of other brands of smartphones.[33]

### C.     Consumers Do Not Base Purchase Decisions on Functionalities Associated with the Patents at Issue

51.     The utility functions covered by the '915, the '163 and the '381 patents are very specific and do not belong to the main set of features/attributes that I describe above as driving consumer decision-making.  They may be a part of a main feature/attribute such as "ease of use," along with numerous other sub-features, but there are simply too many sub-features in these complex devices for consumers to evaluate each one separately and consider them as a factor in their decision-making.

52.     The Apple and Samsung internal materials I have reviewed do not attempt to directly study the effect of such narrowly defined utility functions on consumer choice (and, hence, demand).  I have reviewed the conjoint study conducted by Apple's expert witness Dr. Hauser, which purports to be directed at the functions at issue here.  I understand that Samsung retained Dr. Yoram ("Jerry") Wind to comment specifically on the conjoint study conducted by Dr. Hauser.  I have reviewed Dr. Wind's declaration.[34]  I do not believe that Dr. Hauser's reported results accurately reflect consumer decision-making in the selection of smartphones or tablets.

53.     I understand that Apple's expert witness Terry Musika cited the "Browser Zooming Methods UX Exploration Study"[35] as evidence of the importance of the features embodied by the '915, '163 and '381 user interface patents (which are only a few of the many sub-features of features or attributes like ease of use or touchscreen).[36]  However, Mr. Musika's reliance on this

---

[33]   "Attitudes and Usage of Smartphone owners," Hall & Partners (SAMNDCA00252685-775, at 760).

[34]   Declaration of Yoram (Jerry) Wind, October 19, 2012.

[35]   PX38 ("Browser Zooming Methods UX Exploration Study", April 17, 2009, SAMNDCA11104115-139 at 133).

[36]   Declaration of Terry Musika in Support of Apple's Motion for Permanent Injunction, August 29, 2012.

evidence is misplaced for a number of reasons.  First, this document is only even arguably relevant to the '163 patent—it does not relate to the other two patents.  Second, these were very small sample size studies (*e.g.*, 8 out of 9 respondents preferred the double-tap zooming).  Third, the Browser Zooming Methods UX Exploration Study explicitly noted that the data and interpretations were qualitative and no statistical analysis was done.[37]  "Impromptu" samples were used, and these samples were drawn from messaging device usability studies that did not correspond to mobile internet users.[38]  Fourth, there were no working prototypes ("[p]aper prototyping has limitation on expression of dynamic interaction of zooming concepts"[39]).  Finally, it is my understanding, based on the Gray Declaration, that the '163 patent is *narrower* than "double tap to zoom."

54.      Mr. Musika also cited the 2010 "Behold3 Usability Evaluation Results Report" that found "iPhone: Generates fun for the user with a visual element that seems to bounce… Direction for improvement: Provide a fun visual effect when dragging a web page."[40]  This report identified 75 issues associated with different features/sub-features.  This particular "visual fun element" was one of the 75+ issues noted.[41]

55.      In his declaration, Mr. Musika refers to third-party reports that note a better browsing experience on the iPhone compared to Samsung.  Mr. Musika, for example, quotes a Gravity Tank report saying that the iPhone is "sexy to use….[Consumers']  experience is almost cinematic.  Fun.  Gestures like two fingered pinch and flick add a game-like quality to interaction… Whimsical. Lists bounce, icons flitter…."[42]

---

[37]  PX38 ("Browser Zooming Methods UX Exploration Study," April 17, 2009 (SAMNDCA11104115-139, at 120).

[38]  PX38 ("Browser Zooming Methods UX Exploration Study," April 17, 2009 (SAMNDCA11104115-139, at 120).

[39]  PX38 ("Browser Zooming Methods UX Exploration Study," April 17, 2009 (SAMNDCA11104115-139, at 120).

[40]  PX46 ("Behold3 Usability Evaluation Results," at SAMNDCA00508336-441, at 383).

[41]  PX46 ("Behold3 Usability Evaluation Results," at SAMNDCA00508336-441).

[42]  Musika Declaration, at Exhibit 51.

Case No. 11-cv-01846-LHK
**DECLARATION OF TULIN ERDEM**

56.     "Having fun" while using a device could be one of the experiential attributes of a product (although none of the consumer studies looked at a "fun" attribute in smartphones). However, any such attribute, especially in categories that involve complex devices, is, for practical purposes, composed of so many dimensions that it is impossible to talk about the individual sub-dimensions of "Apple iPhone is fun" or "Apple is fun" or to meaningfully link any of the functionalities covered by the patents at issue to this experience.  Apple may have a "fun" association with consumers due to many different influences, including advertising campaigns.

57.     In light of the foregoing, none of the evidence cited by Mr. Musika provides a meaningful link between the practice of the specific patents at issue and consumer purchase decisions.

58.     Based on all the materials I reviewed, I do not find any credible evidence that the Apple utility patents at issue here drive consumer demand for Samsung smartphones and tablets. Indeed, these patents do not even qualify to be a "feature/attribute" (such as "size/weight," "connectivity," etc.) upon which consumers evaluate these products in purchase decisions.  These are only three of the innumerable sub-features that are associated with the broader attributes, such as ease of use or ease of navigation using a touchscreen, that market research tests.  I conclude that consumers base their decisions on a subset of main features/attributes (rather than the set of all features and sub-features) in smartphone and tablet markets, and that the utility patents at issue in Apple's permanent injunction motion (the '915, the '163 and the '381 patents) do not drive consumer demand for Samsung smartphones or tablets.

### D.     Samsung Design-Around for the Patented Inventions Would Effectively Neutralize Any Demand Effects Relating to the Patents-at-Issue

59.     As explained above, smartphones and tablets have too many sub-features such as the ones embodied by the '915, '163 and '381 user interface patents for the functionality covered by these specific patents to be drivers of consumer demand.  However, for purposes of discussion, let us assume that consumers are aware of and distinctly form perceptions of these three sub-features.  If these sub-features did significantly contribute to, for example, overall ease of use perceptions, we would expect to observe higher ratings of features/attributes such as ease of

**DECLARATION OF TULIN ERDEM**

navigating the phone using touchscreen associated with Samsung phones accused of infringing versus those that are not accused of infringing.  Third-party research[43] shows that the ease of touchscreen navigation, as well as overall ease of use, was rated by consumers slightly better for Samsung Behold II, Moment and Instinct models, which were not accused of infringing, than for Epic 4G, which was accused of infringing the '163, '381 and '915 patents.[44]  This is inconsistent with the idea that these patents drive demand for the accused products.

60.     As described above, I have reviewed information regarding the design-arounds for the products accused of infringing the '163, '381 and '915 patents.  As part of my assignment, I was provided a Samsung Galaxy II Epic 4G Touch (Sprint) that allowed me to "experience" any potential differences between a Samsung smartphone with '163 and '381 design-around functionalities and the patented functionalities purportedly depicted in the videos used by Dr. Hauser.  I also own an iPhone 4S.

61.     Based on my review of the Gray and van Dam Declarations, I understand that the design-arounds are aimed to fulfill the functions performed by the utility patents at issue.  In the case of the '915 patent, I understand a user will still be able to scroll using a single finger and zoom using two fingers using the design-around software.  In the case of the '163 and '381 patents, the differences in user experience between the design-arounds (as described in paragraphs 21 and 24, respectively) and the patented attributes are minor.  With the exception of the study by Dr. Hauser, which does not include the design-arounds for the '915 and '381 patents described in paragraphs 18 and 24, respectively, and which I do not believe accurately reflects consumer decision-making in the selection of smartphones or tablets, I am unaware of any consumer studies aiming to measure consumer sentiments in regard to different ways of providing the same type of these functionalities.  However, as described above these three functionalities do not drive

---

[43]   "2011 Wireless Smartphone Satisfaction Study," J.D. Powers and Associates (SAMNDCA10246338-445 at 445).

[44]   The model that faired best among the eight listed in the study was the Vibrant.  The Vibrant  was accused of infringing all three patents at issue, but I understand that it was found not to infringe the '163 patent at trial. It is worth noting that this model rated better on many non-touchscreen related features, too.

1   consumer demand; different variations of how these functionalities are offered cannot drive

2   consumer demand either.

3         62.    As I have previously described in paragraph 25 of this report, features/attributes

4   offer benefits (or costs as in the case of price) to consumers.  The patented functionalities and the

5   Samsung design-arounds are geared towards providing consumers essentially the same benefits

6   and similarly contribute to the overall user experience.  Because the patents at issue (and their

7   associated design-arounds) are a tiny set of all features/attributes that contribute to the benefit of a

8   desirable user experience, whatever minor differences exist between them are highly unlikely to

9   affect any consumer's decision-making.

10

11         I declare under penalty of perjury under the laws of the United States of America that the

12   foregoing is true and correct.

13

14         Executed on January 9, 2014 at Istanbul, Turkey.

15

16         By _____

17         Tülin Erdem

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTESTATION</u>**

I, Victoria F. Maroulis, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Tülin Erdem has concurred in this filing.

Dated:  January 9, 2014                    By:  */s/ Victoria F. Maroulis*
                                                                Victoria F. Maroulis

# EXHIBIT 1

**CURRICULUM VITAE**

# Tülin Erdem

Leonard N. Stern Professor of Business and Professor of Marketing

Leonard N. Stern School of Business
New York University
913 Tisch Hall, 40 West Fourth Street
New York, New York 10012-1126
Tel: 212 998 0404, Fax: 212 995 4006
E-mail: terdem@stern.nyu.edu

## EDUCATION

| | |
|---|---|
| 1993 | Ph.D. Business Administration (major: Marketing), University of Alberta |
| 1989 | ABD Economics, University of Alberta |
| 1987 | M.A. Economics, University of Alberta |
| 1986 | B.A. Economics (Honors), Boğaziçi University |

## ACADEMIC POSITIONS

| | |
|---|---|
| 2006-present | Leonard N. Stern Professor of Business and Professor of Marketing Stern School of Business, New York University |
| Spring 2013 | Visiting Professor at Columbia Business School, Columbia University |
| 2003-2006 | E.T. Grether Professor of Business Administration and Marketing Haas School of Business, University of California at Berkeley |
| 1998-2003 | Associate Professor (with tenure) Haas School of Business, University of California at Berkeley |
| 1993-1998 | Assistant Professor Haas School of Business, University of California at Berkeley |
| 1989-1993 | Graduate Assistant Faculty of Business, University of Alberta |
| 1986-1989 | Research/ Teaching Assistant Department of Economics, University of Alberta |

## AWARDS, HONORS, GRANTS

| | |
|---|---|
| 2013 | AMA Doctoral Consortium Faculty Fellow (also in 1998, 2000, 2007-12) |
| 2008 | Finalist, John D.C. Little Best Paper Award |
| 2007-8 | Outstanding Reviewer Award, Journal of Marketing |
| 2003 | Finalist, William O'Dell Best Paper Award |
| 1998-2002 | National Science Foundation (NSF) grant, SBR-9812067, $ 178,000.00 |
| 1998 | Finalist, Paul Green Best Paper Award |
| 1996 | Winner of John D.C. Little Best Paper Award |
| 1996 | Winner of Frank M. Bass Best Dissertation Paper Award |
| 1995-7 | National Science Foundation (NSF) grant SBR-9511280, $ 100,000.00 |

| 1994-5 | Junior Faculty Research Grant, University of California, Berkeley |
| 1994 | Regents' Junior Faculty Fellowship, University of California, Berkeley |
| 1993 | Co-winner of the AMA John A. Howard Doctoral Dissertation Award |
| 1993 | Recipient of the Gold Medal of the Governor General of Canada, awarded for academic excellence at the graduate level at Canadian Universities |
| 1992 | AMA Doctoral Consortium Fellow |
| 1990-2 | Domtar Ph.D. Fellowship, Faculty of Business, University of Alberta |

## PROFESSIONAL ACTIVITIES

Affiliations: American Economic Association, American Marketing Association, Association for Consumer Research, Econometric Society, Institute for Operations Research and the Management Sciences, Minnesota Supercomputer Institute

Advisory Council: Journal of Marketing Research (2012-present)

Editor-in-Chief: Journal of Marketing Research (2009-2012)

Area Editor: Marketing Science (2002-2009)

Associate Editor: Quantitative Marketing and Economics (2003-present)

Associate Editor: Journal of Consumer Research (2005-2009)

Editorial Board Member: Academy of Marketing Science (2006-present), International Journal of Research in Marketing (1996-present), Journal of Consumer Research (2011-present), Journal of Marketing (2003-present), Journal of Marketing Research (1998-2009), Marketing Letters (1996-present), Marketing Science (1997-2009)

Ad-hoc Reviewer: ACR, AMA John A. Howard Doctoral Dissertation, American Economic Review, Association for Consumer Research, California Management Review, International Economic Review, Journal of Applied Econometrics, Journal of Business and Economic Statistics, Journal of Econometrics, Journal of Agricultural and Resource Economics, Journal of Economic Psychology, Journal of Retailing and Consumer Services, OMEGA, Management Science, Marketing Science Institute, NSF, Psychometrica, Review of Economics and Statistics

President-Elect: ISMS, INFORMS Society of Marketing Science (2004, 2005)

President: ISMS, INFORMS Society of Marketing Science (2006, 2007)

Past-President: ISMS, INFORMS Society of Marketing Science (2008, 2009)

Conference Organizations:

Co-Chair, 2013 ISMS Marketing Science Conference
Co-Chair, 2010 Marketing Dynamics Conference
Co-Chair of Program Committee, Cheung Kong GSB Marketing Research
    Forum, Beijing China, June 2009
Co-Chair, 2003 and 2008 QME (Quantitative Marketing and Economics)
    Conference
Chair, Marketing Track, 2003 INFORMS International Meetings
Co-Chair, 2001 Tri-Annual Invitational Choice Symposium
Co-Chair, 1997 ISMS Marketing Science Conference

Member of the Steering Committee, 2004, 2007, 2010, 2013 Tri-Annual
    Invitational Choice Symposium
Member of Advisory Committee, 2011 Marketing Dynamics
    Conference
Member of Program Committee, 2006 Marketing Dynamics
    Conference
Member of Program Committee, 2004, 2005, 2009 QME (Quantitative
    Marketing and Economics) Conference
Member of Program Committee, 2005 ACR (Association for Consumer
    Research) Conference

Workshop Co-Chair, Tri-Annual Invitational Choice Symposium, 1998, 2004 and
2013

## RESEARCH

Interests

Advertising and Pricing, Brand Equity, Branding Strategies, Econometric Modeling, Individual Decision-Making and Choice, Marketing Science Models of Consumer Behavior and Marketing Mix Strategy, Product Management and Strategy.

Refereed Publications

Ching, Andrew, Tülin Erdem and Michael Keane (2013), "Learning Models: An Assessment of Progress, Challenges and New Developments," forthcoming in *Marketing Science.*

Erdem, Tülin and Sue Ryung Chang (2012), "A Cross-Category and Cross-Country Analysis of Umbrella Branding for National and Store Brands," Special 40th Anniversary issue of *Journal of the Academy of Marketing Science* 40 (1), 86-101.

Shachar, Ron, Tülin Erdem, Gavan Fitzsimons, Keisha Wells (2011), "Brands: The Opiate of the Non-Religious Masses?" *Marketing Science* 30, 92-110.

Erdem, Tülin, Michael Katz and Baohong Sun (2010) "A Simple Test for Distinguishing between Internal Reference Price Theories," *Quantitative Marketing and Economics* 8, 303-332.

Yang, Sha, Yi Zhao, Tülin Erdem, Ying Zhao (2010), "Modeling the Intra-Household Behavioral Interaction," *Journal of Marketing Research,* 47 (3), 470-484.

Ching, Andrew, Tülin Erdem and Michael Keane (2009), "The Price Consideration Model of Brand Choice," *Journal of Applied Econometrics* 24, 3 (March-April), 393-420.

Erdem, Tülin, Michael Keane and Baohong Sun (2008), "A Dynamic Model of Brand Choice When Price and Advertising Signal Product Quality," *Marketing Science*, 27 (6), 1111-1125. (Finalist for the Little Best Paper award).

Erdem, Tülin, Michael Keane and Baohong Sun (2008), "Advertising and Consumer Price Sensitivity in Experience Goods Markets," *Quantitative Marketing and Economics*, 6 (2), 139-176.

Bronnenberg**,** Bart, Jean Pierre Dubé, Carl Mela, Paulo Albuquerque, Tülin Erdem, Brett Gordon, Dominique Hanssens, Guenter Hitsch, Han Hong, Baohong Sun (2008), "Measuring Long Run Marketing Effects and their Implications for Long Run Marketing Decisions," *Marketing Letters, 19*(3), 367-82.

Swait, Joffre and Tülin Erdem (2007) "Characterizing Brand Effects on Choice Set Formation and Preference Discrimination under Uncertainty," *Marketing Science* 26 (5), 679-697.

Chintagunta, Pradeep, Tülin Erdem, Peter Rossi and Michel Wedel (2006), "Structural Modeling In Marketing:  Review and Assessment," *Marketing Science*, 25 (6) 604-616.

Erdem, Tülin, Joffre Swait and Ana Valenzuela (2006), "Brands as Signals: A Cross-Country Validation Study," *Journal of Marketing*, 70 (1), 34-49.

Erdem, Tülin, Kannan Srinivasan, Wilfred Amaldoss, Patrick Bajari, Hai Che, Teck Ho, Wes  Hutchinson,  Michael Katz, Michael Keane, Bob Meyer and Peter Reiss (2005), "Theory Driven Choice Models," *Marketing Letters*, 16 (3), 225-237.

Erdem, Tülin, Michael P. Keane, T. Sabri Öncü and Judi Strebel (2005), "Learning About Computers: An Analysis of Information Search and Technology Choice," *Quantitative Marketing and Economics* 3 (3), 207-246.

Strebel, Judi, Tülin Erdem and Joffre Swait (2004), "Consumer Search in High
    Technology Markets: Exploring the Use of Traditional Information Channels,"
    *Journal of Consumer Psychology* 14, 96-103.

Erdem, Tülin and Joffre Swait (2004), "Brand Credibility and its Role in Brand
    Choice and Consideration," *Journal of Consumer Research* 31 (1), 191-199.

Erdem, Tülin, Ying Zhao and Ana Valenzuela (2004), "Performance of Store Brands:
    A Cross-Country Analysis of Consumer Store Brand Preferences, Perceptions and
    Risk," *Journal of Marketing Research*, 41 (1), 86-100.

Erdem, Tülin, Susumu Imai and Michael Keane (2003), "A Model of Consumer
    Brand and Quantity Choice Dynamics under Price Uncertainty," *Quantitative
    Marketing and Economics*, 1 (1), 5-64. (Lead article.)

Erdem, Tülin and Baohong Sun (2002), "An Empirical Investigation of Spillover
    Effects of Marketing Mix Strategy in Umbrella Branding," *Journal of Marketing
    Research,* 39 (4), 408-420.

Swait, Joffre and Tülin Erdem (2002), "The Effects of Temporal Consistency of Sales
    Promotions and Availability on Consumer Choice Behavior," *Journal of
    Marketing Research,* 34 (3), 304-320.

Erdem, Tülin, Joffre Swait and Jordan Louviere (2002), "The Impact of Brand Credibility
    on Consumer Price Sensitivities across Multiple Product Categories,"
    *International Journal of Research in Marketing*, 19 (1), 1-19 (lead article).

Erdem, Tülin, Glenn Mayhew and Baohong Sun (2001), "Understanding the
    Reference Price Sensitive Shopper: A Within and Cross-Category Analysis,"
    *Journal of Marketing Research*, 38 (4), 445-457.

Erdem, Tülin and Baohong Sun (2001), "Testing for Choice Dynamics in Panel
    Data," *Journal of Business and Economic Statistics*, 19 (2), 142-152.

Erdem, Tülin, Joffre Swait, Susan Broniarczyk, Dipankar Chakravarti, Jean-Noel
    Kapferer, Michael Keane, John Roberts, Jan-Benedict Steenkamp and Florian
    Zettelmeyer (1999), "Brand Equity, Consumer Learning and Choice," *Marketing
    Letters,* 10 (3) 301-318.

Erdem, Tülin and Russell Winer (1999), "Econometric Modeling of Competition: A
    Multi-Category Choice-Based Mapping Approach," *Journal of Econometrics*,
    89, 159-175.

Erdem, Tülin, Michael P. Keane and Baohong Sun (1999), "Missing Price and
    Coupon Availability Data in Scanner Panels: Correcting for the Self-Selection
    Bias in he Choice Model Parameters," *Journal of Econometrics,* 89, 177-196.

Erdem, Tülin (1998), "An Empirical Analysis of Umbrella Branding," *Journal of Marketing Research*, 35 (3), 339-351 (finalist for Paul Green best paper award).

Erdem, Tülin and Joffre Swait (1998), "Brand Equity as a Signaling Phenomenon," *Journal of Consumer Psychology,* 7 (2), 131-157.

Meyer, Bob, Tülin Erdem, Fred Feinberg, Itzhak Gilboa, Wes Hutchinson, Aradhna Krishna, Steve Lippman, Carl Mela, Amit Pazgal, Drazen Prelec and Joel Steckel (1997), "Dynamic Influences on Individual Choice Behavior," *Marketing Letters,* 8 (3), 349-360.

Erdem, Tülin (1996), "A Dynamic Analysis of Market Structure based on Panel Data," *Marketing Science,* 15 (4), 359-378.

Erdem, Tülin and Michael P. Keane (1996), "Decision-Making under Uncertainty: Capturing Dynamic Choice Processes in Turbulent Consumer Goods Markets," *Marketing Science,* 15 (1), 1-20 (lead article).

Finn, Adam and Tülin Erdem (1995), "Economic Impact of Tourists Visiting a Mega-Multi Mall," *Tourism Management*, 16 (5), 367-373.

Winer, Russell, Randolph E. Bucklin, John Deighton, Tülin Erdem, Peter Fader, J. Jeffrey Inman, Hotaka Katahira, Katherine N. Lemon and Andrew Mitchell (1994), "When Worlds Collide: The Implications of Panel Data-based Choice Models for Consumer Behavior," *Marketing Letters*, 5 (4), 383-394.

Swait, Joffre, Tülin Erdem, Jordan J. Louviere and Chris Dubelaar (1993), "The Equalization Price: A Measure of Consumer-perceived Brand Equity," *International Journal of Research in Marketing,* 10 (special issue on Brand Equity), 23-45.

Other Publications

Erdem, Tülin and Joffre Swait*,* "Branding and Brand Equity Models," in *The History of Marketing Science,* eds. Scott Neslin and Russell Winer. Now Publishers Inc., forthcoming.

Erdem, Tülin (2010), "State of the Journal", *Editorial* in *Journal of Marketing Research,* 47 (6), 997.

Erdem, Tülin (2010), "Spanning the Boundaries", *Editorial* in *Journal of Marketing Research,* 47 (1), 1-2.

Erdem, Tülin and Joffre Swait (2010), "Utility-Based Models of Brand Equity," in *Brands and Brand Management: Contemporary Research*, 207-229, eds. Rohini Ahluwalia, Mike Houston and Barbara Loken.  Routledge, New York.

Rangaswamy, Arvind, James J. Cochran, Tülin Erdem, John R. Hauser, Robert J. Meyer (2008), "Editor-in-Chief Search Committee Report: The Digital Future is Now," *Marketing Science*, Editorial, 27,1, 1-3.

Erdem, Tülin and Russell Winer (2002), "A Brief History of Choice Modeling in Marketing," *Marketing Letters*, 13 (3), 157-162 (special issue based on the 5th Invitational Choice Symposium, guest editors T. Erdem and R. Winer).

## Working Papers

Cutright, Keisha, Tülin Erdem, Gavan Fitzsimmons and Ron Shachar (2012), "Finding Brands and Losing your Religion?"

Che, Hai, Tülin Erdem and Sabri Öncü (2012), "Consumer Learning and Evolution of Consumer Brand Preferences."

Yang, Sha, Yi Zhao, Tülin Erdem and Daeyoung Koh (2012), "Modeling Consumer Choice with Dyadic Learning and Information Sharing: An Intra-household Analysis."

Swait, Joffre, Tülin Erdem and Tom Peters (2011), "Shocks to Brand Equity: An Information Economics Perspective on the US Auto Industry 2006-2010."

Shacham, Rachel, Peter Golder and Tülin Erdem (2011), "A Cigarette, a Six Pack or Porn? The Complementarity of Vices."

Ching, Andrew, Tülin Erdem and Michael Keane (2010), "How Much Do Consumers Know About the Quality of Products? Evidence from the Diaper Market."

Erdem, Tülin , Joffre Swait and Ana Valenzuela (2010) "Economic Development and Brand Credibility."

Guo, Liang and Tülin Erdem (2005) "Measuring Usage Flexibility in Wireless Tariff Choice."

## Invited Presentations

*ISMS Doctoral Consortium, Özyeğin University,  Istanbul, Turkey, July 2013.*
*Measuring & Managing Brands in a Digital World,* NYU Stern Center for Measurable Marketing, May 2013.
*Marketing Research Camp,* Jones School of Management, Rice University, May 2013.
*Marketing Workshop,* Columbia Business School, Columbia University, April 2013.
*Research Seminar,* CUNY Graduate Center, April 2013.
*Marketing Workshop,* The Wharton School, University of Pennsylvania, April 2013.
*Research Seminar,* Graduate School of Management, UC Davis, March 2013

*Research Seminar,* City College of New York, March 2013.
*Research Seminar,* Oxford University, Saïd School of Business, February 2013.
*Özyeğin University Public Lecture Series,* Istanbul, Turkey, July 2012.
*ISMS Doctoral Consortium and Marketing Science Conference*, Boston, MA,
      June 2012.
*Research Seminar,* School of Business, Rutgers, Newark, April 2012.
*Distinguished Speaker Series,* Isenberg School of Management, UMASS, Amherst,
      March 2012.
*Distinguished Speaker Series,* School of Business*,* George Washington University,
      March 2012.
*Marketing Workshop,* Foster School of Business, University of Washington,
      November 2011.
*Marketing Workshop,* Marshall School of Business, USC, August 2011.
*Keynote Speaker, Marketing Dynamics Conference,* Jaipur, India, July 2011.
*ISMS Doctoral Consortium and Marketing Science Conference,* Houston, TX,
      June 2011.
*Research Seminar,* Department of Economics, McGill University, Montreal, Canada,
      May, 2011.
*Marketing Workshop,* Koç University, Istanbul, Turkey, March 2011.
*Speaker Series,* Carey School of Business, John Hopkins University, Baltimore, January
      2011.
*Marketing Workshop,* School of Business, University of Alberta, Edmonton, AB,
      November 2010.
*Marketing Workshop,* School of Management, Yale University, November 2010.
*Marketing Speaker Series,* Georgia Institute of Technology, Atlanta, GA, October 2010.
*London Business School Marketing Research Camp,* London, England, July 2010.
*ISMS Doctoral Consortium and Marketing Science Conference,* Cologne, Germany,
      June 2010.
*AMA Doctoral Consortium,* Texas Christian University, TX, June 2010
*Invitational Choice Symposium*, hosted by University of Miami and University of
      Technology Sydney, May 2010.
*Marketing Workshop,* Fordham University, NY, May 2010.
*Marketing Workshop,* HBS, Boston, MA, March 2010.
*Marketing Workshop,* Baruch College, NY, December 2009.
Keynote Speaker*, Marketing Dynamics Conference*, NY, NY, August 2009.
*AMA Summer Educators' Conference,* Chicago, IL, August 2009.
*Marketing Workshop,* Universidad Autónoma de Madrid, Madrid, Spain, July 2009.
*Cheung Kong GSB Marketing Research Forum,* Beijing, China, June 2009.
*Marketing Science Conference,* University of Michigan, Ann Arbor, MI, June 2009.
*AMA Doctoral Consortium,* Georgia State University, Atlanta, GA, June 2009.
*ISMS Doctoral Consortium and Marketing Science Conference,* University of Michigan,
      Ann Arbor, MI, June 2009.
*Marketing Workshop,* University of Rochester, April 2009.
*Marketing Research Camp*, Pennsylvania State University, April 2009.

Advertising Research Foundation, Marketing Modelers' Seminar Series, NY, NY,

March 2009.
*AMA Winter Educators Conference,* Tampa, Florida, February 2009.
*Özyeğin University Public Lecture Series,* Istanbul, Turkey, December 2008.
*Bilkent Research Camp,* Bilkent University, Ankara, Turkey, June 2008.
*ISMS Doctoral Consortium,* University British Columbia, June 2008.
*AMA Doctoral Consortium,* University of Missouri, June 2008.
*Marketing Research Camp,* Texas A&M University, April 2008.
*Marketing Workshop,* Duke University, December 2007.
*Marketing Workshop,* Columbia University, November 2007.
*5th QME Conference,* discussant, Chicago, IL, October 2007.
*ISMS Doctoral Consortium*, Singapore Management University, Singapore, June 2007.
*Invitational Choice Symposium*, hosted by Wharton School, May 2007/.
*AMA Doctoral Consortium*, Arizona State University, Tempe, AZ, May 2007.
Advertising Research Foundation, Marketing Modelers' Seminar Series, NY, NY, May
        2007.
*4-School Colloquium,* Columbia, NYU, Wharton, Yale hosted by Wharton, April 2007.
*Marketing Research Camp,* University of Pittsburgh, February 2007.
*Marketing Science Doctoral Consortium,* University of Pittsburgh, June 2006.
*Marketing Workshop,* University of California, Riverside, June 2006.
*Marketing Workshop,* Yale University, New haven, December 2005.
*Distinguished Lectureship Series,* University of Michigan, October 2005.
*Marketing Workshop,* New York University, September 2005.
*Graduate School of Management Seminar,* Sabancı University, Istanbul, Turkey, July
        2005.
*Faculty of Business Administration Seminar,* Bilkent University, Ankara, Turkey, July
        2005.
*Marketing Science Doctoral Consortium,* Emory University, June 2005.
*Hightower Distinguished Lectureship Series,* Emory University, December 2004.
*IO Workshop*, Duke University, October 2004.
*ACR Doctoral Consortium*, Portland, Oregon, October 2004.
*Marketing Science Doctoral Consortium,* Erasmus University, Netherlands, June 2004.
*Invitational Choice Symposium*, hosted by University of Colorado, June
        2004.
*Marketing Workshop,* Stanford University, February 2004.
*Business School Seminar Series*, San Francisco State University, October 2003.
*Marketing Science Doctoral Consortium,* University of Maryland, June 2003.
*Marketing Workshop,* Northwestern University, April 2003.
*Marketing Research Camp,* Washington University, March 2003.
*Cowles Conference on Estimation of Dynamic Demand Models*, Economics
        Department, Yale University, November 2002.
*ACR Doctoral Consortium*, Atlanta, Georgia, October 2002.
*Marketing Workshop,* Yale University, May 2002.
*Marketing Workshop*, University of Colorado, April 2002.
*Marketing Workshop,* Washington University, St. Louis, May 2001.
*Marketing Workshop*, MIT, April 2001.
*Marketing Workshop,* Harvard Business School, April 2001.

*Marketing Workshop,* University of Houston, March 2001.
*AMA Summer Educators Conference Special Session on Brand Equity honoring David Aaker*, Chicago, August 2000.
*AMA Doctoral Consortium,* University of Western Ontario, August 2000.
*Marketing Workshop,* University of Toronto, March 2000.
*Marketing Workshop,* University of California, Davis, December 1999.
*Econometrics in Tel Aviv,* Dept. of Economics, Tel Aviv University, Israel, June 1999.
*Marketing Seminar Series,* UC Irvine, March 1999.
*Marketing Seminar Series*, Cornell University, February 1999.
*Marketing Research Camp*, UCLA, January 1999.
*Marketing Seminar Series,* University of Pennsylvania, December 1998.
*Marketing Seminar Series,* New York University, December 1998.
*AMA Doctoral Consortium,* University of Georgia, August 1998.
*Marketing Seminar Series,* GSIA, Carnegie Mellon University, May 1998.
*CEDA (Committee on Economic Development of Australia) Conference* on Building Brands in the Knowledge Economy, Sydney and Melbourne, Australia, September 1998.
*Invitational Symposium on Choice Modeling and Behavior*, hosted by HEC, Jouy- en-Josas, France, July 1998.
*Marketing Workshop,* Koc University, Istanbul, Turkey, June 1998.
*Applied Econometrics and Quantitative Methods Summer Workshop*, Koc University, Istanbul, Turkey, August 1997.
*Marketing Workshop*, University of Texas at Dallas, May 1997.
*Marketing Workshop*, MIT, April 1997.
*5th Annual Winter Research Retreat,* University of Florida, March 1997.
Invitational Symposium on Choice Modeling and Behavior, hosted by Columbia University, June 1996.
*Marketing Workshop*, MIT, November 1995.
*Marketing Workshop*, Ohio State University, May 1995.
*AMA Advanced Research Techniques Forum*, Beaver Creek, Colorado, June 1994.
*Marketing Workshop*, Stanford University, November 1993.
*Invitational Symposium on Choice Modeling and Behavior*, hosted by Duke University, July 1993.

Conference Presentations

*Marketing Science Conference,* Marketing Science Conference, Özyeğin University, Istanbul, Turkey, July 2013.
*EIRASS Conference,* Zagreb, Croatia, July 2008.
*Marketing Science Conference,* UBC, Vancouver, Canada, June 2008.
*Marketing Science Conference*, SMU, Singapore, June 2007.
*EIRASS Conference,* Budapest, Hungry, July 2006.
*Marketing Science Conference,* Pittsburgh, PA, June 2006.
*Marketing Dynamics Conference,* Sacramento, CA, September 2005
*Marketing Science Conference*, Atlanta, GA, June 2005.
*EIRASS Conference,* Prague, Czech Republic, July 2004.

*Marketing Science Conference,* Rotterdam, Netherlands, June 2004.
*Quantitative Marketing and Economics Conference,* Chicago, IL, October 2003.
*EURO/INFORMS Joint International Meeting,* Istanbul, Turkey, July 2003.
*Marketing Science Conference,* Washington D.C., June 2003.
*AMA Advanced Research Techniques (ART) Forum,* Monterey, CA, June 2003.
*Bayes Conference,* Columbus, Ohio, November 2002.
*Marketing Science Conference,* Edmonton, AB, Canada, June 2002.
*Marketing Science Conference,* Wiesbaden, Germany, July 2001.
*EIRASS Conference,* Sintra, Portugal, July 2000.
*Marketing Science Conference,* LA, CA, June 2000.
*Marketing Science Conference,* Syracuse, NY, May 1999.
*Marketing Science Conference,*  Fontainebleau, France, July 1998.
*INFORMS Fall Meetings,* Dallas, Texas, October 1997.
*Association for Consumer Research Conference,* Denver, CO, October 1997.
*Marketing Science Conference,* Berkeley, CA, March 1997.
*Marketing Science Conference,* Gainesville, FL, March 1996.
*INFORMS Spring Meetings,* Los Angeles, CA, April 1995.
*Marketing Science Conference,* Tucson, AZ, March 1994.
*Marketing Science Conference,* St. Louis, MI, March 1993.
*Marketing Science Conference,* London, England, July 1992.
*Marketing Science Conference,* Delaware, March 1991.
*MSI Conference on Managing Brand Equity,* Austin, TX, November 1990.
*Marketing Science Conference,* Urbana, IL, March 1990.

## TEACHING

<u>Interests</u>

Brand Management and Strategy, Marketing Management, Marketing Planning,
Marketing Strategy, Marketing Models

<u>Experience</u>

*Teaching:*
*Undergraduate*: Marketing Management, Branding, Brand Management and Strategy,
Marketing Strategy and Planning, Economic Development and International
Trade
*MBA*:  Marketing Concepts, Marketing Management, Branding/ Brand Management and
Strategy
*Ph.D.*: Empirical Modeling, Marketing Models, Choice Models, Individual Topics in
Marketing
*Executive Education*: Brand Equity, Brand Strategy, International Marketing,
Marketing Management and Strategy

*Graduate and Post-Graduate Mentorship*:

    *Post-Doctoral Mentorship:*

        Baohong Sun (1995-1997). Carnegie Mellon University.

    *Chair of Ph.D. thesis committee:*

        Sue Chang (2012) "Learning Dynamics in Product Relaunch," University of Georgia.

        Rachel Shacham (2011) "Econometric Methods for Modeling the Difficult-to-Observe Phenomena," University of Minnesota.

        Johanna Sussman Ilfeld (2004) "Investigating Social Learning Effects in the Consumer Choice of Health Care Plan Adoption." Go-Strolling Inc.

        Judi Strebel (1997) "Modeling consumer choice processes for high-tech durable goods: An investigation of consumer learning under uncertainty." University of Arizona, SFSU.

    *Member of Ph.D. thesis committee:*

        <u>Marketing</u>

        Wenbo Wang (2012), HKUST

        Mantian Hu (2012), Chinese University of Hong Kong

        Sherif Naser (2008), Washington University, St. Louis.

        Yeşim Orhun (2006), University of Chicago, University of Michigan.

        Liang Guo (2003), HKUST.

        Ying Zhao (2001), HKUST.

        Mark Stiving (1996), OSU.

        <u>Other</u>

        Mürüvvet Çelikbas (2002, Industrial Eng. and OR)

        Timothy Beatty (2001, Agricultural Economics)

        Craig Mohn (1999, Agricultural Economics)

        Panupol Lerssrisuriya (1998, Industrial Eng. and OR)

        Alan Cooke (1997, Psychology)

    *Member of several Oral Examination Committees*

<u>Effectiveness</u>

At Haas: Member of Club 6.0 (median 6.0 and above on a 7-point scale in regard to teaching effectiveness) in the majority of the courses taught during 1993-2006.

## ADMINISTRATIVE SERVICE

Stern School of Business

2012-present    Member of Promotion and Tenure Committee

| | |
|---|---|
| 2008-2009 | Director, Stern Center for Measurable Marketing |
| 2007-2008 | Co-Director, Center for Digital Economy Research (CeDER) |
| 2007-2009 | Member of MBA Core Curriculum Committee |
| 2007-2009 | Member of Senior Faculty  Review Committee |
| 2007-2008 | Member of *Ad Hoc* Search Committee in Environmental Studies |
| 2006-2007 | Research Director, Center for Digital Economy Research (CeDER) |
| 2006-2007 | Member of Global Task Force |

Haas School of Business

| | |
|---|---|
| 2005-2006 | Ph.D. Program Director, Haas School of Business |
| 2005-2006 | Chair, Committee on Research (Academic Senate Committee) |
| 2005-2006 | Member of DIVCO (UC Berkeley Divisional Council) |
| 2004-2005 | Member of UCORP (University Committee on Research Policy). UC system-wide committee, UC  Berkeley Representative |
| 2004-2005 | Vice-Chair, Committee on Research (Academic Senate Committee) |
| 2004-2005 | Chair, Policy and Planning ($P^2$) Committee |
| 2003-2004 | Member of Policy and Planning ($P^2$) Committee |
| 2003-2004 | Member of Academic Affairs Advisory Council |
| 2003-2004 | Chair, Marketing Group |
| 2002-2003 | Associate Dean for Academic Affairs and Faculty Chair |
| 2001-2004 | Member of Haas School Hiring Committee |
| 2001-2004 | Member of Committee on Research (Academic Senate Committee) |
| 2001-2002 | Co-Associate Dean for Academic Affairs and Chair of Haas School Hiring Committee |
| 2001-2002 | Acting Chair, Marketing Group |
| 1999-2001 | Member of Policy and Planning ($P^2$) Committee |
| 1999-2000 | Member of Faculty and Ph.D. Computer Committee (FPCC) |
| 1999-2000 | Member of Space Allocation Committee |
| 1996 | Member of *ad hoc* Marketing Ph.D. Program Evaluation Committee |

## SELECTED CONSULTING AND LITIGATION EXPERIENCE

- *Apple Inc. vs. Samsung Electronics Co, Ltd: Samsung Electronics America; Samsung Telecommunications America, LLC.* Case No: 11-cv-00630-LHK (2013, 2014). Retained by Quinn Emanuel Urquhart & Sullivan, LLP. Testified by deposition on consumer demand in smartphone and tablet markets.

- *Apple Inc. vs. Samsung Electronics Co, Ltd: Samsung Electronics America; Samsung Telecommunications America, LLC.* Case No: 11-cv-01846-LHK (2012, 2013). Retained by Quinn Emanuel Urquhart & Sullivan, LLP. Testified by deposition on consumer demand in smartphone and tablet markets.

- Academic Partner of Prophet (2008-2012). Prophet is a Strategic Brand and Marketing Consultancy.

- *Viacom International Inc., MTV Networks and Harmonix Music Systems Inc. v. Activision Inc., Activision Publishing Inc. and RedOctane Inc.*, before JAMS Arbitration Panel, JAMS Reference No.: 1220038389 (2008-9). Retained by Kirkland & Ellis, LLP. Testified by deposition on brand equity, brand positioning, communication strategies and likelihood of consumer confusion.

- Co-authored White Paper on economic theory and empirical & econometric research on national cable ownership limits (2007). Filed in FCC cable ownership proceeding. Retained by Comcast.

- *VISA U.S.A. v. First Data Corporation, First Data Resources Inc., First Data Merchants Services Corporation*, Case No. C02-1786 (PJH) (2005-6), Northern District of California. Retained by Bingham McCutchen, LLP. Testified by deposition on brand promise, brand equity, branding strategy, trademark infringement, consumer behavior and decision-making in credit-card industry.

- *Barbara's Sales Inc. v. Intel Corporation, et. al.,* Case No. 02-L-788 (2004), Third Judicial Circuit, Madison County, Illinois. Retained by Korein Tillery. Testified by deposition on misleading positioning and advertising claims, branding strategy, consumer behavior and decision-making in high-tech product categories.

# EXHIBIT 2

## MATERIALS RELIED UPON

| Bates Range | | |
|---|---|---|
| APL7940000082356 | – | APL7940000082378 |
| APL7940000102312 | – | APL7940000102332 |
| | | |
| APL-ITC796-0000508285 | – | APL-ITC796-0000508544 |
| | | |
| APLNDC00004618 | – | APLNDC00004736 |
| APLNDC0000036172 | – | APLNDC0000036570 |
| APLNDC0001324274 | – | APLNDC0001324278 |
| APLNDC0001867475 | – | APLNDC0001867477 |
| APLNDC0002007608 | – | APLNDC0002007704 |
| APLNDC0002420480 | – | APLNDC0002420484 |
| APLNDC0002831037 | – | APLNDC0002831088 |
| | | |
| APLNDC-X0000006548 | – | APLNDC-X0000006647 |
| APLNDC-Y0000023361 | – | APLNDC-Y0000023907 |
| APLNDC-Y0000024130 | – | APLNDC-Y0000024333 |
| APLNDC-Y0000025024 | – | APLNDC-Y0000025147 |
| APLNDC-Y0000025460 | – | APLNDC-Y0000025574 |
| APLNDC-Y0000026687 | – | APLNDC-Y0000026807 |
| APLNDC-Y0000027136 | – | APLNDC-Y0000027422 |
| APLNDC-Y0000027506 | – | APLNDC-Y0000027599 |
| APLNDC-Y0000028850 | – | APLNDC-Y0000028945 |
| APLNDC-Y0000408237 | | |
| | | |
| | | |
| SAMNDCA00176053 | – | SAMNDCA00176171 |
| SAMNDCA00190144 | – | SAMNDCA00190243 |
| SAMNDCA00201771 | | |
| SAMNDCA00201773 | | |
| SAMNDCA00203016 | | |
| SAMNDCA00203033 | | |
| SAMNDCA00203880 | – | SAMNDCA00204010 |
| SAMNDCA00231459 | – | SAMNDCA00231502 |
| SAMNDCA00237743 | – | SAMNDCA00237772 |
| SAMNDCA00237973 | | |
| SAMNDCA00249929 | – | SAMNDCA00250017 |
| SAMNDCA00250503 | – | SAMNDCA00250557 |
| SAMNDCA00250682 | – | SAMNDCA00250709 |
| SAMNDCA00252685 | – | SAMNDCA00252775 |
| SAMNDCA00258674 | – | SAMNDCA00258827 |
| SAMNDCA00261725 | – | SAMNDCA00261839 |
| SAMNDCA00268352 | – | SAMNDCA00268384 |
| SAMNDCA00268763 | – | SAMNDCA00268831 |
| SAMNDCA00276935 | – | SAMNDCA00277043 |
| SAMNDCA00380801 | – | SAMNDCA00380896 |

| **Bates Range (cont.)** | | |
|---|---|---|
| SAMNDCA00508313 | – | SAMNDCA00508411 |
| SAMNDCA10029586 | – | SAMNDCA10029680 |
| SAMNDCA10036081 | – | SAMNDCA10036204 |
| SAMNDCA10175266 | – | SAMNDCA10175267 |
| SAMNDCA10246338 | – | SAMNDCA10246445 |
| SAMNDCA10257309 | – | SAMNDCA10257380 |
| SAMNDCA10389445 | – | SAMNDCA10389483 |
| SAMNDCA10441301 | – | SAMNDCA10441303 |
| SAMNDCA10807316 | – | SAMNDCA10807387 |
| SAMNDCA10853181 | – | SAMNDCA10853233 |
| SAMNDCA11039743 | – | SAMNDCA11039807 |
| SAMNDCA11053867 | – | SAMNDCA11053901 |
| SAMNDCA11066185 | – | SAMNDCA11066252 |
| SAMNDCA11104115 | – | SAMNDCA11104139 |
| SAMNDCA11374409 | – | SAMNDCA11374410 |
| SAMNDCA11545927 | – | SAMNDCA11546000 |
| SAMNDCA20018416 | – | SAMNDCA20018417 |
| | | |
| S-ITC-003353288 | – | S-ITC-003353507 |
| S-ITC-010632298 | – | S-ITC-010632332 |
| S-ITC-500047393 | – | S-ITC-500047452 |
| S-ITC-500049452 | | |
| S-ITC-500054991 | – | S-ITC-500054998 |
| S-ITC-500056374 | – | S-ITC-500056457 |
| S-ITC-500057690 | – | S-ITC-500057758 |

<u>Legal Documents:</u>

Addendum to Apple Inc.'s Disclosure of Asserted Claims & Infringement Contentions, August 26, 2011.

Amended Verdict Form, August 24, 2012.

Apple Inc.'s Disclosure of Asserted Claims & Infringement Contentions, August 26, 2011, with Exhibits 4–6 and 10–15.

Apple's Motion for a Permanent Injunction and for Damages Enhancements, September 21, 2012.

Apple Inc.'s Renewed Motion for a Permanent Injunction, January 30, 2014.

Declaration of Andries van Dam, Ph.D., October 18, 2012.

Declaration of Marylee Robinson in Support of Apple's Motions for a Permanent Injunction, for Damages Enhancement, for Supplemental Damages, and for Prejudgment Interest, September 21, 2012, with Exhibits 9, 25–29, and 31.

Declaration of Stephen Gray, October 18, 2012.

Declaration of Terry Musika in Support of Apple's Motion for Permanent Injunction, August 29, 2012, with Exhibits 30, 31, 50, 51, 53–61, and 64–68.

Declaration of Yoram (Jerry) Wind, October 19, 2012, with Appendices and Exhibits.

Joint Pretrial Statement and Proposed Order, July 5, 2012.

Manual Filing Notification of Exhibit 32 to the Declaration of Marylee Robinson in Support of Apple's Motions for a Permanent Injunction, for Damages Enhancement, for Supplemental Damages, and for Prejudgment Interest, September 21, 2012.

Plaintiff's Exhibits 30, 38, 46, 57, 69, 145, 146, and 185.

Transcript of Proceedings, Apple v. Samsung C-11-01846-LHK, August 10, 2012, Vol. 6.

Depositions:
Deposition of Philip Schiller, February 17, 2012.
Deposition of Steven Sinclair, April 4, 2012.

Expert Reports:
Expert Report of John R. Hauser, March 22, 2012, with Exhibits A–K and supporting documents.
Expert Report of Russel S. Winer, March 22, 2012.

Articles and Books:
"iPhone vs. Android," NielsenWire, available at http://blog.nielsen.com/nielsenwire/online_mobile/iphone-vs-android (viewed October 9, 2012).
Aaker, David A. (1991). *Managing Brand Equity*. New York: The Free Press.
Erdem, Tülin (1998), "An Empirical Analysis of Umbrella Branding," *Journal of Marketing Research*, 35 (3), 339-351.
Jessica E. Vascellaro, "Apple Wins Big in Patent Case," *The Wall Street Journal* (August 25, 2012).
Kotler, Philip (1997). *Marketing Management*. New Jersey: Prentice Hall.
Lancaster, Kelvin (1966), "A New Approach to Consumer Theory," *Journal of Political Economy*, 74, 132-157.
Lilien, Gary L. Philip Kotler and K. Sridhar Moorthy (1992), *Marketing Models*, New Jersey: Prentice Hall.
Payne, J.W. (1976), "Task Complexity and Contingent Processing in Decision-Making: An Information Search and Protocol Analysis," *Organizational Behavior and Human Performance*, 16, 366-387.
Shugan, Steven (1980), "The Cost of Thinking," *The Journal of Consumer Research*, Vol. 7(2), 99-111.
Tirole, J. (1990). *The Theory of Industrial Organization*. Cambridge, MA: MIT Press.
Yates, Frank, J. (1990). *Judgment and Decision-Making*. New Jersey: Prentice Hall.

Other:
U.S. Patent 7,469,381.
U.S. Patent 7,844,915.
U.S. Patent 7,864,163.