QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**DECLARATION OF NICHOLAS P. GODICI IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S RENEWED MOTION FOR A PERMANENT INJUNCTION** |

## <u>DECLARATION OF NICHOLAS P. GODICI</u>

I, Nicholas P. Godici, declare:

1.      I have personal knowledge of the facts set forth herein, and am competent to testify to the same.

2.      I submit this declaration in support of Samsung's Opposition to Apple's Renewed Motion for a Permanent Injunction relating to U.S. Patent 7,844,915 (the '915 patent). Specifically, I submit this declaration in support of Samsung's arguments regarding the pending reexamination of the '915 patent.

3.      I reserve the right to supplement or amend this declaration based on any new information that is relevant to my opinions.

## I.      BACKGROUND AND QUALIFICATIONS

4.      I am currently owner of Godici Patent Consulting, located in Carlsbad, California.

5.      I have over 41 years of experience in the patent field.  I spent my entire career, until my retirement in March 2005, at the United States Patent and Trademark Office ("USPTO").[1]  I served as the Commissioner for Patents at the USPTO from March 2000 to March 2005.  I also served as the Acting Under Secretary of Commerce for Intellectual Property and Director of the USPTO from January to December 2001.  Additionally, in 2009, at the request of the Secretary of Commerce, I accepted a temporary assignment at the USPTO to act as an expert advisor to the Secretary and Acting Under Secretary, prior to Senate confirmation of the new Under Secretary nominated by the President.

6.      I began my career at the USPTO in 1972 as a patent examiner, and held the positions of Supervisory Patent Examiner ("SPE"), Group Director, Deputy Assistant Commissioner for Patents, and Acting Assistant Commissioner for Patents before being named Commissioner for Patents by the Secretary of Commerce on March 29, 2000.  As Commissioner for Patents, I was responsible for all aspects of patent related operations at the USPTO, including a

---

[1]   I may refer to the USPTO as simply the PTO.

budget of over $750 million and a staff of over 5,000 employees that included the entire patent examining corps. I have testified before Congress, both the House and Senate, on various intellectual property matters. During my time at the USPTO, I examined several thousand patent applications.  My name appears as the assistant or primary examiner on over 3700 issued U.S. patents.

7.      As Acting Under Secretary of Commerce for Intellectual Property and Director of the USPTO, I reported to and advised the Secretary of Commerce on all intellectual property matters and was responsible for all managerial aspects of the USPTO. I retired from the USPTO in March 2005.

8.      I have been asked to provide an expert declaration on rules, practices, and procedures before the USPTO, including those related to reexamination proceedings.

**II.      FILE HISTORY OF THE '915 PATENT REEXAMINATION**

9.      I have reviewed the reexamination file history of U.S. Patent No. 7,844,915 (the "'915 Patent") that was assigned control No. 90/012,332.

10.      On May 30, 2012, a request for *ex parte* reexamination of the '915 patent was filed. The Examiner granted the *ex parte* reexamination request on August 17, 2012, and issued a Non-Final Office Action on December 19, 2012 rejecting all claims of the '915 patent.  Dkt. 2202-1. In particular, claim 8, the sole claim at issue in this litigation, was rejected as anticipated by U.S. Patent No. 7,724,242 to Hillis ("Hillis"), and rejected as obvious over Japanese Pub. No. 2000-163031A to Nomura ("Nomura") in view of Dean Harris Rubine, "The Automatic Recognition of Gestures," CMU-CS-91-202 December 1991 ("Rubine").

11.      On March 14, 2013, Apple conducted an interview with the Examiner regarding the '915 patent reexamination.  During that interview, Apple distinguished claim 8 of the '915 patent from Nomura on the basis that Nomura only discloses two input points as a gesture operation, and more than two input points as a scroll operation.  In contrast, Apple construed the '915 patent to require a gesture operation whenever there was more than one input point.  As stated in the Examiner's Interview Summary Record of March 22, 2013:

"The patent owner's representatives asserted that the claimed method tests for a single input point, and then interprets the single input point as the scrolling operation, and interprets all other cases (i.e., 'two or more input points') as the gesture operation. The patent owner's characterization of the Nomura algorithm is that it tests for two input points, interprets the two input points as the gesture operation, and interprets all other cases (including a single input point, but also including three or more input points) as the scrolling operation. The patent owner's representatives asserted, in other words, that the '915 patent distinguishes between a single input point and two or more input points while the Nomura reference distinguishes between two input points and "not two" input points."

12.    On March 19, 2013, Apple filed a Response to Non Final Office Action. In that filing, Apple again distinguished the Nomura reference on the basis that it failed to distinguish more than two input points as a gesture operation:

The algorithm for Nomura's scroll and gesture operations involve(s) a gesture recognition process that distinguishes <u>exactly</u> two, and <u>only</u> two, input points. The method described in Nomura, however, does not, and cannot, involve distinguishing exactly one input point. Rather, the algorithm of Nomura implements a scroll as the default operation when there are *not* two input points, assuming all other conditions are met. In contrast, the claimed subject matter involves performing a test that distinguishes one input point versus two or more input points. If there is one input point, the input is interpreted as a scroll operation. Otherwise, if there is *not* one input point (*i.e.*, two or more input points), the input is interpreted as a gesture operation.

March 19, 2013 Response to Non Final Office Action at 8 (emphasis original).

13.    On July 26, 2013, the Examiner issued a Final Office Action, maintaining its rejection of all claims of the '915 patent, including his rejections of claim 8 as anticipated by Hillis and obvious over Nomura in light of Rubine. Dkt. 2349-1. In maintaining his rejection of the '915 patent, the Examiner indicated his understanding of Apple's position regarding the construction of the patent:

Each of independent claims 1, 8 and 15 of the '915 patent recites, in pertinent part:

... distinguishing between a single input point applied to the touch-

sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation; ...

The patent owner's arguments with respect to the independent claims are based on a particular interpretation of the language cited above. Specifically, the patent owner distills the "distinguishing" element into "distinguishing between a single input point ... and two or more input points," and argues that the claims recite "a test that distinguishes (i.e., recognizes a difference) between (a) a single input point and (b) two or more input points" (remarks, page 2). The patent owner contends that the claims "require particularly identifying a single input point" (remarks, page 6), further arguing that "if there is **one** input point, the input is interpreted as a scroll operation" and "if there is **not one** input point ... the input is interpreted as a gesture operation" (remarks, page 8; emphasis added). **In other words, the patent owner interprets the claimed "distinguishing" element as a "one/not one" test.**

Dkt. 2349-1, Final Office Action at 3-4 (emphasis original).  However, the Examiner maintained his rejections of the claims of the '915 patent based on his view that the '915 patent could not properly be construed in the manner presented by Apple.  *See id.*

14.     On October 3, 2013, Apple filed a Request for Personal Interview, in which Apple again argued that a system treating any number of input points up to infinity as a scroll operation would not infringe the '915 patent.  As Apple explained:

"One of skill would understand the phrase "two or more inputs" to essentially mean "2 – infinite", which defines a set of input types, **all** of which would be interpreted as a gesture operation."

Dkt. 2507-1, Apple's Request for Personal Interview at 3 (emphasis original).

15.     On October 28, 2013, Apple submitted its Response to the Examiner's Final Office Action.  In that Response, Apple continued to reiterate in multiple paragraphs its position that the '915 patent cannot be met by a system that interprets any number of input points greater than one as a scroll operation.

Conversely, one of ordinary skill would not reasonably conclude that the distinguishing limitation is met by an algorithm that interprets any input that is greater than one (3 input points, 4 input points, etc.) as a scroll operation, even if that algorithm interprets one input point as a scroll operation and two input points as a

gesture operation.  (Klemmer Decl. ¶ 18.)  Similarly, one of ordinary skill would not consider it reasonable to conclude that a machine that performs a scroll operation on one input point and a gesture operation on two input points, without logical instructions for interpreting all input points that are greater than two input points (3 input points, 4 input points, etc.) as scroll operations, is employing an algorithm that meets the distinguishing limitation.  (Klemmer Decl. ¶ 18.)

As Dr. Klemmer notes, this conclusion is particularly true for claim 8, which is directed to a machine readable storage medium. (Klemmer Decl. ¶ 19-20.) One of ordinary skill would understand that the instructions stored on a medium according to claim 8 would have to include the predefined set of instructions that dictate the logic by which the computer operates under all circumstances, and not just in one given instance. *(Id.)* A medium storing instructions for performing only a portion of the distinguishing limitation *(e.g.,* interpreting one input point as a scroll operation and two input points as a gesture operation) would not reasonably meet the requirements of claim 8, which requires, *inter alia,* executable programming instructions for interpreting more than two input points (3 input points, 4 input points, etc.) as a gesture operation. *(Id.)*

That is, one of ordinary skill would find it unreasonable to conclude that the distinguishing limitation, specifically in the context of claim 8, would be met by an algorithm that only provides one of the required procedural calculations *(e.g.,* gesture operation on two inputs in Nomura) when that algorithm clearly does not provide the remaining required procedural calculations (gesture operation on 2 input points, 3 input points, 4 input points, etc.). (Klemmer Decl. ¶ 16-20.)

Dkt. 2614-1, October 28, 2013 Response to Final Office Action at 6-7.

16.     On November 20, 2013, the Examiner issued an Advisory Action, maintaining his rejection of all claims of the '915 patent.  Dkt. 2810-1.

17.     On December 26, 2013, Apple filed a Notice of Appeal to the Patent Trial and Appeal Board ("PTAB").  Dkt. 2899-1.

## III.     CONDUCT OF REEXAMINATION PROCEEDINGS AND APPEALS

18.     Apple has filed a Notice of Appeal to the Examiner's decision.  Apple's Appeal Brief is automatically due on February 26, 2014, two months from when Apple filed its Notice of Appeal.  MPEP 1205, 2274.  Following such a filing, the Examiner has the option to either reopen

prosecution or maintain the appeal.  MPEP 1207, 2275.  In my opinion, it is highly likely that the Examiner will maintain the appeal.  This is because, as explained above, Apple's position regarding the '915 patent has been rejected several times by the Examiner.

19.    Assuming the Examiner maintains the appeal, the following steps will be taken to in order to resolve the appeal.  The Examiner will file an Examiner's Answer, typically two months from the Appeal Brief.  MPEP 2275, 1207.  Apple then would have the option to file a Reply Brief within two months of the Examiner's Answer (MPEP 1208), and has the option to request an oral hearing within that same time frame (MPEP 1209, 2276)  If Apple requests an oral hearing, such a hearing will be scheduled and then heard, after which the PTAB will issue a decision  MPEP 1213.

20.    Based on my knowledge and experience, it is my opinion that a decision by the PTAB is typically issued within 10 to 20 months from the time when a party files a Notice of Appeal.  Because Apple filed its Notice of Appeal in December 2013, a decision by the PTAB should be expected between October 2014 and August 2015.

21.    The 12 to 20 month period includes the time allotted to file the Appeal Brief (2 months), the time allotted to write the examiner's answer and forward it to the PTAB (typically 2 to 4 months), the time needed for the appeal to be docketed (2 to 6 months), and the time for the appeal to be heard and decided (4 to 8 months).  This is significantly shorter than the time needed for the PTAB to issue decisions on appeals generally, because reexamination proceedings are conducted with special dispatch.  MPEP 2209.

22.    The USPTO publishes statistics related to reexamination proceedings that support my opinion on its website.  These statistics are reliable sources of information regarding the USPTO.   Attached as Exhibit 1 is statistical data for the PTAB, obtained from http://www.uspto.gov/dashboards/patenttrialandappealboard/main.dashxml relating to the duration of reexamination proceedings.  The portion of this webpage that addresses the duration of Ex Parte appeals is titled "Ex Parte Reexamination" and has been reproduced below:



The category "Forwarded to the PTAB" shows how long an appeal has been at the PTAB before being placed on a docket. As indicated by the ex parte reexamination appeal statistics on the website, all appeals forwarded to the PTAB are docketed within 6 months of being submitted. In my experience, appeals are typically docketed much sooner, in only 2 months, as supported by the fact that no cases are currently awaiting docketing over 6 months.

23.     The ex parte reexamination appeal statistics also indicate that most appeals are quickly decided after being docketed by the PTAB. The category "Appeals Docketed" reflects appeals which have been docketed but not yet decided. Of the 50 cases which are currently docketed, 42 cases, or 84 percent of cases, have spent fewer than 6 months as docketed appeals. No cases which have been docketed have remained in that status for 14 months or more. In my experience, cases are typically decided from 4 to 8 months after being docketed.

24.     I understand that in opposing Samsung's motion for a stay pending reexamination, Apple argued that a decision by the Appeal Board "likely would not issue until late 2016 at the earliest." Dkt. 2816. I have also been informed and understand that Apple has previously cited to statistics regarding the duration of PTAB appeals to support this date. However, I note that the vast majority of appeals heard by the PTAB are appeals from patent applications, not reexamination proceedings. These appeals can take years to be processed. But, as explained above, reexamination proceedings are processed much more rapidly than ordinary appeals.

## IV.    LIKELIHOOD THAT THE EXAMINER'S FINDINGS WILL BE SUSTAINED

25.    Based on my knowledge and experience, it is my opinion that there is a high probability the PTAB will affirm the examiner's opinion rejecting the claims of the '915 patent. My opinion is supported by statistical data provided by the USPTO. Attached as Exhibit 2 is a presentation of statistical data from the USPTO's Central Reexamination Unit (CRU), obtained from http://www.uspto.gov/patents/stats/crudatareport.pptx. According to this presentation, in Fiscal Years 2012 and 2013, of the 200 *ex parte* reexamination appeals heard by the Patent Trial and Appeals Board ("PTAB"), 65.5% of examiner's decisions are affirmed, and an additional 15% of examiner's decisions are affirmed in part. Exhibit 2 at 16. Thus, the USPTO's statistics confirm that most decisions by the examiner are upheld. Exhibit 2 also shows that approximately 87% of claims are canceled or amended in *ex parte* reexamination. Exhibit 2 at 19. Thus, the USPTO statistics confirm that it is highly unlikely in general for claims to undergo reexamination without amendment.

26.    Based on my knowledge and experience, it is also my opinion that the examiner's decision in the '915 patent reexamination is particularly likely to be affirmed on appeal, based on the conduct of such proceedings thus far. In most reexamination proceedings, the patentee will make amendments to its claims to account for the examiner's arguments and to place the patent in condition for allowance. However, Apple has not made any amendments to its claims. Apple is thus attempting to convince the PTAB to reject the examiner's arguments in full, an unusual occurrence.

_Nicholas P. Godici_

Nicholas P. Godici

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, Victoria F. Maroulis, am the ECF User whose ID and password are being used to file this Declaration. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Nicholas P. Godici has concurred in this filing.


Dated:  January 9, 2014

*/s/ Victoria Maroulis*
Victoria Maroulis

# EXHIBIT 1



**August 2013 Patent Trial and Appeal Board (PTAB) Data**



Case 5:11-cv-01846-LHK   Document 2915-11   Filed 01/09/14   Page 14 of 35

# EXHIBIT 2



# UNITED STATES PATENT AND TRADEMARK OFFICE

## Statistical Data

# Central Reexamination Unit (CRU)

*Ex Parte* (*EP*) and *Inter Partes* (*IP*) Proceedings

**Fiscal Years 2012–2013**



**U.S. Department of Commerce**

# Frequently Used Acronyms

**3PR** = Third Party Requester

**41.77 Rejection** = A new ground of rejection issues by the Patent Trial Appeals Board in an *Inter-Partes* Reexamination proceeding issued pursuant to 37 CFR 41.77(a)


**ACP** = Action Closing Prosecution

**AIA** = America Invents Act

**Appeal** = An Appeal by the one of the parties of the Examiner's decision

**CAFC** = Court of Appeals for the Federal Circuit

**CRU** = Central Reexamination Unit

***EP*** = *Ex Parte* Reexamination Proceeding

**FR** = Final Rejection

***IP*** = *Inter Partes* Reexamination Proceeding

**NF** = Non Final Office Action

**NIRC** = Notice of Intent to Issue a Reexamination Certificate (*Inter Partes* or *Ex Parte*)

**NIRCed** = Proceeding terminated by the issuance of a Notice of Intent to Issue a Reexamination Certificate

**PO** = Patent Owner

**PTAB** = Patent Trial Appeals Board, data includes decisions by its predecessor the Board of Patent Appeals and Interferences (BPAI)

**RAN** = Right of Appeal Notice

**RLP** = Reasonable Likelihood of Prevailing of rejection in a IP reexamination proceeding filed after September 16, 2011

**SNQ** = Substantial New Question of patentability



**U.S. Department of Commerce**

# Reexamination Filings
# Fiscal Years 2012 – 2013



**As of September 16, 2012, Inter Partes Reexaminations were no longer available**

Data as of 9/30/2013

3



# Prosecution status of Reexams Filed
# Aug 12, 2012 to Sept 15, 2012

**Ex Parte Reexaminations Filed**



**Inter Partes Reexaminations Filed**





### Central Reexamination Unit (CRU) Processing Time
### Ex Parte Reexaminations – Total Time from Filing to NIRC
### For Cases without Appeals

**U.S. Department of Commerce**



25% of *EP* that are not appealed are NIRCed within 7  months
50% of *EP* that are not appealed are NIRCed within 10 months
75% of *EP* that are not appealed are NIRCed within 15 months
95% of *EP* that are not appealed are NIRCed within 25 months
The Average time to *EP* NIRC from filing w/o a PTAB decision is 12 months

Proceedings with Notice of Intent to Issue Reexamination Certificate mailed
Fiscal Years 2012-2013



# *Ex Parte* Total Time from Filing to NIRC with PTAB Decision

**U.S. Department of Commerce**



25% of *EP* w/ PTAB decision are NIRCed within 29 months
50% of *EP* w/ PTAB decision are NIRCed within 35 months
75% of *EP* w/ PTAB decision are NIRCed within 47 months
95% of *EP* w/ PTAB decision are NIRCed within 68 months

Average time to *EP* NIRC from filing with PTAB Decision is 39 months

Proceedings with Notice of Intent to Issue Reexamination Certificate mailed
Fiscal Years 2012-2013



# *Ex Parte* Total Time from Filing to NIRC With Subsequent Appeal to Federal Circuit

U.S. Department of Commerce



25% of *EP* w/ Subsequent Appeal are NIRCed within 56 months
50% of *EP* w/ Subsequent Appeal are NIRCed within 71 months
75% of *EP* w/ Subsequent Appeal are NIRCed within 89 months
95% of *EP* w. Subsequent Appeal are NIRCed within 115 months
The Average time to *EP* NIRC from filing w/ Subsequent Appeal is 75 months

- Proceedings with Subsequent Appeal normally are heard at the CAFC
- These are not a subset of Slide 10
- Note the significantly smaller sample size relative to slides 9 and 10
- Proceedings with Notice of Intent to Issue Reexamination Certificate mailed Fiscal Years 2012-2013



# *Inter Partes* Total Time from Filing to NIRC with no Notice of Appeal Filed

**U.S. Department of Commerce**



25% of *IP* w/o Notice of Appeal are NIRCed within 12 months
50% of *IP* w/o Notice of Appeal are NIRCed within 18 months
75% of *IP* w/o Notice of Appeal are NIRCed within 27 months
95% of *IP* w/o Notice of Appeal are NIRCed within 44 months
Average *IP* time to NIRC from filing w/o Notice of Appeal is 21 months

Proceedings with Notice of Intent to Issue Reexamination Certificate mailed
Fiscal Years 2012-2013



**U.S. Department of Commerce**

# *Inter Partes* Total Time to NIRC
## with PTAB Decision



25% of *IP* w/ PTAB decision are NIRCed within 33 months
50% of *IP* w/ PTAB decision are NIRCed within 45 months
75% of *IP* w/ PTAB decision are NIRCed within 56 months
95% of *IP* w/ PTAB decision are NIRCed within 80 months
Average *IP* time to NIRC from filing w/ PTAB decision is 48 months

**Months from Filing**

Proceedings with Notice of Intent to Issue Reexamination Certificate mailed
Fiscal Years 2012-2013

Data as of 9/30/2013

9



# *Inter Partes* Total Time from Filing to NIRC with Subsequent Appeal to Federal Circuit

**U.S. Department of Commerce**



25% of *IP* w/ Subsequent Appeal are NIRCed within 51 months
50% of *IP* w/ Subsequent Appeal are NIRCed within 59 months
75% of *IP* w/ Subsequent Appeal are NIRCed within 70 months
95% of *IP* w/ Subsequent Appeal are NIRCed within 99 months
The Average time to *IP* NIRC from filing w/ Subsequent Appeal is 67 months

- Proceedings with Subsequent Appeal normally are heard at the CAFC
- These are not a subset of Slide 12
- Note the significantly smaller sample size relative to slides 12 and 13
- Proceedings with Notice of Intent to Issue Reexamination Certificate mailed Fiscal Years 2012-2013



# Roll up Tables for Time from Filing to NIRC
## *Ex Parte and Inter Partes* Proceedings NIRC mailed
## Fiscal Years 2012-2013

**U.S. Department of Commerce**

# *Ex Parte* Proceedings

|  | Months to *EP* NIRC without Notice of Appeal | Months to *EP* NIRC after PTAB decision | Months to *EP* NIRC with Subsequent Appeal to the Federal Circuit | All *EP* NIRC |
|---|---|---|---|---|
| 25% NIRCed within X Months | 7 | 29 | 56 | 8 |
| 50% NIRCed within X Months | 10 | 35 | 71 | 12 |
| 75% NIRCed within X Months | 15 | 47 | 89 | 23 |
| 95% NIRCed within X Months | 25 | 68 | 115 | 66 |
| Average | 12 | 39 | 75 | 20 |
| Total number of proceedings | 853 | 174 | 69 | 1096 |

# *Inter Partes* Proceedings

|  | Months to *IP* NIRC without Notice of Appeal | Months to *IP* NIRC after PTAB decision | Months to *IP* NIRC with Subsequent Appeal to the Federal Circuit | All *IP* NIRC |
|---|---|---|---|---|
| 25% NIRCed within X Months | 12 | 33 | 51 | 18 |
| 50% NIRCed within X Months | 18 | 45 | 59 | 33 |
| 75%NIRCed within X Months | 27 | 56 | 70 | 52 |
| 95%NIRCed within X Months | 44 | 80 | 99 | 80 |
| Average | 21 | 48 | 67 | 38 |
| Total number of proceedings | 149 | 127 | 38 | 314 |

Data as of 9/30/2013



**U.S. Department of Commerce**

# Reexamination Certificates
## Published Fiscal Years 2012-2013

|  | *EP* | *IP* |
|---|---|---|
| **Number of Certificates (all proceedings including proceedings that are appealed and merged)** | **1368** | **407** |
| **Average Months to NIRC from filing (includes all proceedings)** | **21.2** | **35.7** |
| • **Average Months to NIRC without Notice of Appeal (includes merged proceedings)** | **12.6** | **21.1** |
| **Average Months from NIRC to Certificate both *EP* and *IP*** | **1.23** | |

- A revamped publication process went into effect on October 1, 2012 and led to shorter publication processing times
- Since Jan 2013:
  - 546 certificates have published
  - 77.5% of all certificates were published in less than 21 days
  - The shortest time to certificate from forwarding to publications is 4 days
  - The average time to certificate is 19 days in the fourth quarter of FY 2013 which is down from an average of 89 days in FY 2011and 53 days in FY 2012



**U.S. Department of Commerce**

# Time from NIRC to Certificate
# Fiscal Years 2012-2013



**Average days to certificate from NIRC mailing**



**U.S. Department of Commerce**

# All Reexam Appeals
# Fiscal Years 2012-2013

| | *EP* | *IP* |
|---|---|---|
| Notice of appeals filed | 307 | 508 (includes both PO and 3PR Notice of Appeals) |
| Examiner's Answers | 232 | 389 |
| Decided by the PTAB | 230 | 298 |
| Pending at PTAB as of 9/30/2013 | 75 | 237 |
| Decided by CAFC | 83 | 39 |
| Pending at CAFC as of 9/30/2013 | 33 | 58 |

- Note that all Notice of Appeals do not result in forwarding to the PTAB

- The PTAB and CAFC decisions are during the time period and did not necessarily result from the Notice of Appeals in row 1

- The count of *IP* Notice of Appeals includes proceedings where either the Patent Owner or Third Party filed a Notice of Appeal, however, if both parties appeal it is only counted once

Data as of 9/30/2013

14



# Current Inventory of Appeals
# at PTAB & CAFC
# Oct 2011 through Sept 2013

## EP Pending Appeals



Appealed to the CAFC, not yet decided, 36 — 32%

Awaiting decision at PTAB, 68 — 57%

Awaiting rehearing at PTAB, 12 — 11%

## IP Pending Appeals



Awaiting decision at CAFC, 58 — 25%

Awaiting decision at PTAB, 138 — 58%

Awaiting 41.77 rejection, 33 — 14%

Awaiting rehearing, 8 — 3%

|  | EP Appeals | IP Appeals |
| --- | --- | --- |
| Awaiting decision at PTAB | 63 | 138 |
| Awaiting rehearing | 12 | 8 |
| Awaiting 41.77 rejection | NA | 33 |
| Appealed to the CAFC, not yet decided | 32 | 58 |
| Total | 107 | 237 |

- These proceedings are awaiting decision and are a subset from slide 21 rows 3 and 5 to indicate the next action by PTAB or CAFC

**Slide 15**

---

**U1**        this is the slide that refers to slide 21
             USPTO, 11/15/2013



# Affirmance Rate at PTAB
## Proceedings decided Fiscal Years 2012-2013

**U.S. Department of Commerce**

| PTAB decision in *EP* proceedings | Number | Percentage |
|---|---|---|
| Decision - Examiner Affirmed | 131 | 65.5% |
| Decision - Examiner Affirmed in Part | 30 | 15.0% |
| Decision - Examiner Reversed | 39 | 19.5% |
| Total | 200 | |

| PTAB decision in *IP* proceedings | Number | Percentage |
|---|---|---|
| Decision - Examiner Affirmed | 164 | 57.7% |
| Decision - Examiner Affirmed in Part | 68 | 23.9% |
| Decision - Examiner Reversed | 38 | 13.4% |
| Decision:  New Ground of Rejection | 14 | 4.9% |
| Total | 284 | |

Of the *EP* Affirmance in Part, a total of 1153 rejected claims were appealed
- Of the 1153 appealed rejected claims 912 remained rejected
- In all affirmances-in-part, 79% of the claims remained rejected

Of the *IP* affirmances-in-part, a total of 1682 rejected claims were appealed
- Of the 1682 appealed rejected claims 882 remained rejected
- In all affirmances-in-part, 52.7% of the claims remained rejected
- Note: the rejections in *IP* appeals are generally those set forth by Third Party Requester

Data as of 9/30/2013



**U.S. Department of Commerce**

# CRU Petitions
# FY 2013



| | 2012EOY | 2013Q1 | 2013Q2 | 2013Q3 | 2013Q4 |
|---|---|---|---|---|---|
| Petitions Received | 176 | 323 | 220 | 171 | 125 |
| Petitions Mailed | 244 | 231 | 237 | 253 | 183 |
| End Inventory | 113 | 205 | 188 | 106 | 48 |

Data as of 9/30/2013

17



**U.S. Department of Commerce**

# Total CRU Petitions Inventory as of 9/30/2013





# Percentage of Patents with Claims Modified or Canceled in Reexam Certificates Apr 2012 through Sept 2013



**Normalization of Certificates with all claims canceled or changes to the claims**

- Chart shows the 95% confidence interval of the percentage of reexaminations where claims are changed or all claims are canceled

- Amendments to claims in Reexamination Proceedings are relinquishing of scope