| | |
|---|---|
| 1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|   | Charles K. Verhoeven (Cal. Bar No. 170151) |
| 2 | charlesverhoeven@quinnemanuel.com |
|   | 50 California Street, 22nd Floor |
| 3 | San Francisco, California 94111 |
|   | Telephone: (415) 875-6600 |
| 4 | Facsimile: (415) 875-6700 |
| 5 | Kathleen M. Sullivan (Cal. Bar No. 242261) |
|   | kathleensullivan@quinnemanuel.com |
| 6 | Kevin P.B. Johnson (Cal. Bar No. 177129) |
|   | kevinjohnson@quinnemanuel.com |
| 7 | Victoria F. Maroulis (Cal. Bar No. 202603) |
|   | victoriamaroulis@quinnemanuel.com |
| 8 | 555 Twin Dolphin Drive 5th Floor |
|   | Redwood Shores, California 94065 |
| 9 | Telephone: (650) 801-5000 |
|   | Facsimile: (650) 801-5100 |
| 10 | |
|    | Susan R. Estrich (Cal. Bar No. 124009) |
| 11 | susanestrich@quinnemanuel.com |
|    | Michael T. Zeller (Cal. Bar No. 196417) |
| 12 | michaelzeller@quinnemanuel.com |
|    | 865 S. Figueroa St., 10th Floor |
| 13 | Los Angeles, California 90017 |
|    | Telephone: (213) 443-3000 |
| 14 | Facsimile: (213) 443-3100 |
| 15 | Attorneys for SAMSUNG ELECTRONICS |
|    | CO., LTD., SAMSUNG ELECTRONICS |
| 16 | AMERICA, INC. and SAMSUNG |
|    | TELECOMMUNICATIONS AMERICA, LLC |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE INC., a California corporation, | | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | | **DECLARATION OF MICHAEL J. WAGNER IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S RENEWED MOTION FOR A PERMANENT INJUNCTION** |
| vs. | | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | | Date: January 30, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |
| Defendants. | | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

Case No. 11-cv-01846-LHK
**DECLARATION OF MICHAEL J. WAGNER IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S RENEWED MOTION FOR A PERMANENT INJUNCTION**

I, Michael J. Wagner, hereby declare as follows:

BACKGROUND

1.   I am currently a Managing Director at LitiNomics, Inc., a financial and economic consulting firm specializing in the analysis of economic issues that arise in commercial disputes.

2.   I am a Certified Public Accountant and attorney licensed in the State of California. I have been a Partner at Price Waterhouse; a Managing Director at Putnam, Hayes & Bartlett; and a Senior Advisor at CRA International, a publicly traded management consulting firm.   I have a Bachelor of Science in Engineering, which I received from the University of Santa Clara in 1969. I have a Masters in Business Administration, which I received from U.C.L.A. in 1971.   I have a Juris Doctor degree, which I received from Loyola University School of Law at Los Angeles in 1975.   Exhibit A is a true and correct copy of my *curriculum vitae*.

3.   I have specialized in the computation of commercial damages over the last 37 years of my professional career.   I have been qualified and testified at trial as an expert on financial matters, principally commercial damages, 130 times, including Lanham Act cases and patent cases (33 times in patent cases).   I have testified on financial issues in 35 arbitrations.   I also have been deposed 330 times (113 times in patent cases; more than 10 times in trademark or Lanham Act cases) on financial issues over my career.

4.   I have 29 professional publications, the majority of which deal with the computation of commercial damages (nine deal directly with patent damages).   My most significant publication is the *Litigation Services Handbook*, which I co-edited through its fourth edition.   The book is a collaborative effort of many of the leading experts in the financial area.   I am the founding editor and continued as an editor for over 20 years.   The Handbook has been recognized as authoritative by the Federal Judicial Center in its *Treatise on Scientific Evidence*. The Treatise's chapter on Economic Damages in the first two editions cited only five additional reference sources for further guidance to federal judges.   The *Litigation Services Handbook* was one of the five reference sources.

5.   In the above-captioned case, *Apple Inc. v. Samsung Electronics Co., Ltd., et al.*, I previously submitted several declarations, including my August 21, 2011 Declaration of Michael

J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, my September 21, 2012 Declaration of Michael J. Wagner in Support of Samsung's Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59, my October 19, 2012 Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for Judgment as a Matter of Law (Renewed), New Trial, and Amended Judgment, my October 19, 2012 Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Permanent Injunction, and my December 13, 2013 Declaration of Michael J. Wagner in Support of Samsung's Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59.  I have also submitted expert reports, including my April 20, 2012 Corrected Expert Report of Michael J. Wagner; my May 11, 2012 Supplemental Expert Report of Michael J. Wagner, and my August 26, 2013 Updated Rebuttal Expert Report of Michael J. Wagner for New Trial on Damages.   I also testified at the August 2012 trial and at the November 2013 retrial on damages.

6. I submit this declaration in support of Samsung's Opposition to Apple's Renewed Motion for a Permanent Injunction.  If asked at a hearing or trial, I am prepared to testify regarding the matters I discuss in this declaration.

7. I am being compensated at $795 per hour for my work on this case.  My compensation is in no way contingent upon the opinions I arrive at or the result of the litigation.

8. In performing my analysis, I have reviewed the November 2012 Patent License and Settlement Agreement between Apple and HTC ("Apple/HTC Agreement").  I have also reviewed, among other documents, the February 12, 2013 Brief for Plaintiff-Appellant Apple Inc., No. 13-1129, filed with the Federal Circuit in connection with its appeal from Judge Koh's denial of Apple's request for a permanent injunction.  I also attended most of the original trial and the retrial on damages, and I have reviewed trial transcripts, trial demonstratives and exhibits, as well as publicly available documents discussed in this declaration.

9. In addition to the review of documents listed above, I have relied on my training as a Certified Public Accountant and my knowledge and expertise regarding intellectual property

1  litigation damages, including review of patent licenses as part of the *Georgia-Pacific* reasonable
2  royalty analysis.
3      10.   I may supplement this declaration in the event that additional relevant materials are
4  provided to me, including court filings and declarants' testimony.

## APPLE/HTC LICENSE ANALYSIS

6      11.   HTC and Apple entered into a ten year Patent License and Settlement Agreement,
7  effective November 2012, which provided a worldwide, nonexclusive, irrevocable, non-
8  sublicensable, and nontransferable license to the other party's patents.   Dkt 2182-5 at 2-3, 5, 9-12,
9  17.

10     12.   Under the Apple/HTC Agreement, Apple received a "fully paid up, royalty-free"
11 license to the HTC patents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   Dkt 2182-5 at 10-11, 15.

13     13.   In the litigation preceding the Apple/HTC Agreement, Apple had asserted two of
14 the utility patents at issue in this case (the '381 and '915 Patents) against HTC.   Dkt 2382-3, Exh.
15 A (8/26/2013 Wagner Report, Schedule 27-NT); *Apple, Inc. v. HTC Corp., et al.*, I.T.C. Inv. No.
16 337-TA-797, First Amended Complaint of Apple. Inc. Under Section 337 of the Tariff Act of
17 1930, As Amended, December 8, 2011, pp. 2, 8-9; *Apple, Inc. v. High Tech Computer Corp., et al.*,
18 Case No. 10-00167-RK, First Amended Complaint For Patent Infringement, June 21, 2010, pp. 4,
19 6-7.

20     14.   Attached as Exhibit B is a true and correct copy of the First Amended Complaint of
21 Apple. Inc. Under Section 337 of the Tariff Act of 1930, As Amended, dated December 8, 2011,
22 in *Apple, Inc. v. HTC Corp., et al.*, I.T.C. Inv. No. 337-TA-797.

23     15.   Attached as Exhibit C is a true and correct copy of the First Amended Complaint
24 For Patent Infringement, dated June 21, 2010, in *Apple, Inc. v. High Tech Computer Corp., et al.*,
25 Case No. 10-00167-RK.

26     16.   Although the license grant in the Apple/HTC Agreement includes a carve-out for
27 Apple's design patents, which were specifically not included in the Agreement, Dkt. 2182-5 at 5,
28 14, the Agreement states that "any and all utility Patents and utility models" are not to be

-3-                                Case No. 11-cv-01846-LHK
**DECLARATION OF MICHAEL J. WAGNER IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S
RENEWED MOTION FOR A PERMANENT INJUNCTION**

1 considered Design Patents under the terms of the license.  Dkt. 2182-5 at 7.  As a result, the Apple/HTC Agreement covers U.S. Patent Nos. 7,469,381 ("'381 patent"), 7,844,915 ("'915 patent"), and 7,864,163 ("'163 patent").

17. Under section 5 of the Apple/HTC Agreement, special circumstances arise for HTC mobile products found to meet the definitions of "Cloning," "Cloned Features," and "Cloned Products"                                                                                Dkt. 2182-5 at 14, 33.  But these "Cloning" provisions do not apply to the utility patents at issue in this case.

18. Under Exhibit A to the Apple/HTC Agreement, a feature is considered a "Cloned Feature" when, among other things:  1) an Apple patent is literally infringed by a significant feature of the human interface that has a distinctive visual appearance of an HTC mobile device; 2) the same patent is literally practiced by a significant feature of the human interface of an Apple mobile device that has a distinctive visual appearance; and 3) the non-functional visual appearance in the HTC device is "substantially similar" to that in an Apple device.  The non-functional visual appearance, along with functional aspects, is referred to in the Agreement as "Distinctive Apple User Experience."   Dkt. 2182-5 at 33.

19. Exhibit A to the Apple/HTC Agreement explicitly provides that certain features cannot qualify as "Distinctive Apple User Experience."  It states:  "Functionality and related methods (for example, 'pinch to zoom' functionality) will not be considered a Distinctive Apple User Experience."  Dkt. 2182-5 at 33.  Therefore, a functionality that infringes the '915 patent—which I understand covers a technique for distinguishing between scroll and gesture operations such as "pinch to zoom"—cannot support deeming a product to be a "Cloned Product" under the Apple/HTC Agreement.

20. The '163 patent claims a specific type of functionality, similar to the '915 patent, and does not claim a "non-functional distinctive visual appearance."  This is confirmed by Apple's own description of the patent.  Apple has stated:  "The '163 patent claims the 'double-tap-to-zoom' capability of the iPhone and iPad, which allows a touchscreen device to enlarge and center the text of an electronic document when a user taps twice on a portion of that document and, in response to a second user gesture on another portion of the document, recenters the screen over

1  that portion of the document."   Brief for Plaintiff-Appellant Apple Inc., dated February 12, 2013, Case No. 2013-1129, at 22.   *See also* Dkt. 1695 (8/10/2012 Trial Transcript) at 1831:13-1833:19 (testimony of Dr. Singh).   Accordingly, a feature that infringes the '163 patent cannot form the basis for finding a product to be a "Cloned Product" under the Apple/HTC Agreement.

21.   Attached as Exhibit D is a true and correct copy of an excerpt from the Brief for Plaintiff-Appellant Apple Inc. filed in the Federal Circuit in *Apple Inc. v. Samsung Electronics Co., LTD., et al.*, Case No. 13-1129.

22.   The '381 patent also claims a specific type of functionality, similar to the '915 and '163 patents, and does not claim a "non-functional distinctive visual appearance."   This is confirmed by Apple's own technical expert—Dr. Balakrishnan—who testified repeatedly at trial that the '381 patent simply covers "bounceback functionality."   *See, e.g.,* Dkt. 1695 (8/10/2012 Trial Transcript) at 1740:13-1741:6, 1742:15-22, 1752:11-15, 1753:4-12.   Accordingly, a feature that infringes the '381 patent cannot form the basis for finding a product to be a "Cloned Product" under the Apple/HTC Agreement.

23.   Furthermore, Exhibit A to the Apple/HTC Agreement further requires that a Cloned Feature must not result from "any features or design elements included in any HTC Android Mobile Communication Devices or Android Mobile OS that have been released prior to the Effective Date."   Dkt. 2182-5 at 33.   Prior to the Effective Date of the license, Apple asserted in the United States District Court for the District of Delaware and before the ITC that HTC offered features in its Android smartphones and tablets that infringed the '381 patent.   Dkt 2382-3, Exh. A (8/26/2013 Wagner Report, Schedule 27-NT); *Apple, Inc. v. HTC Corp., et al.*, I.T.C. Inv. No. 337-TA-797, First Amended Complaint of Apple. Inc. Under Section 337 of the Tariff Act of 1930, As Amended, December 8, 2011, pp. 6, 14; *Apple, Inc. v. High Tech Computer Corp., et al.*, CA No. 10-00167-RK, First Amended Complaint For Patent Infringement, June 21, 2010, pp. 4, 6-7.   Thus, the license prohibits Apple from relying on these allegedly infringing features to contend that a product is a clone under the Apple/HTC Agreement.

1  I declare under penalty of perjury of the laws of the United States of America that the
2  foregoing is true and correct.   Executed in Santa Clara County, California on January 09, 2014.

By: _____
　　Michael J. Wagner

**ATTESTATION**

I, Victoria F. Maroulis, am the ECF User whose ID and password are being used to file this Declaration.   In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Michael J. Wagner has concurred in this filing.

Dated:   January 9, 2014                                            By:      */s/ Victoria F. Maroulis*

                                                                                             Victoria F. Maroulis