1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kathleen M. Sullivan (Cal. Bar No. 242261)
   kathleensullivan@quinnemanuel.com
6  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
7  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
8  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065-2139
9  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
10
   Susan R. Estrich (Cal. Bar No. 124009)
11 susanestrich@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
12 michaelzeller@quinnemanuel.com
   865 S. Figueroa Street, 10th Floor
13 Los Angeles, California 90017
   Telephone: (213) 443-3000
14 Facsimile: (213) 443-3100

15 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
16 INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC
17
                   UNITED STATES DISTRICT COURT
18
        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
19

20 APPLE INC., a California corporation,        CASE NO. 11-cv-01846-LHK

21              Plaintiff,                      **DECLARATION OF STEPHEN GRAY IN**
                                               **SUPPORT OF SAMSUNG'S OPPOSITION**
22        vs.                                   **TO APPLE'S RENEWED MOTION FOR**
                                               **A PERMANENT INJUNCTION**
23 SAMSUNG ELECTRONICS CO., LTD., a            **REGARDING U.S. PATENT NOS.**
   Korean business entity; SAMSUNG            **7,844,915 AND 7,864,163**
24 ELECTRONICS AMERICA, INC., a New
   York corporation; SAMSUNG                   **REDACTED VERSION OF DOCUMENT**
25 TELECOMMUNICATIONS AMERICA,                 **SOUGHT TO BE SEALED**
   LLC, a Delaware limited liability company,
26
27              Defendants.

28

02198.51855/5695888.4
                                               Case No. 11-cv-01846-LHK
                                               DECLARATION OF STEPHEN GRAY

## DECLARATION OF STEPHEN GRAY

I, Stephen Gray, declare:

1.      I have personal knowledge of the facts set forth herein, and am competent to testify to the same.

2.      I submit this declaration in support of Samsung's Opposition to Apple's Renewed Motion for a Permanent Injunction relating to U.S. Patents 7,844,915 and 7,864,163. If asked at hearings or trial, I am prepared to testify regarding the matters I discuss in this declaration.

3.      I reserve the right to supplement or amend this declaration based on any new information that is relevant to my opinions.

## I.      PROFESSIONAL BACKGROUND

4.      I am an independent consultant. All of my opinions stated in this Declaration are based on my personal knowledge and professional judgment. In forming my opinions, I have relied on my knowledge and experience in graphical user interfaces and operating systems; software development practices; programming, including C and graphical programming; and on the documents and information referenced in this Declaration. I have attached as Exhibit 1 a true and correct copy of my current curriculum vitae (CV), which details my education and experience. The following thus provides only a brief overview of some of my experience that is relevant to the matters set forth in this Declaration.

5.      Since the mid-1970s, I have designed, developed, and deployed computing systems and products that operate in server, desktop, and graphical environments. As such, I have acquired expertise and am an expert in the areas of server computing architecture and design, graphical user interfaces, operating systems, local area and wide area networks, and various programming languages used in the development of those systems and products. I have been employed by or retained as a consultant, including acting as a litigation consultant, for numerous companies such as Burroughs, Filenet, Fujitsu, Marriott Corporation, MCI, Northern Telecom, Olivetti, TRW, and Xerox, as well as other companies.

6.      I have several relevant professional experiences that further demonstrate my expertise in the field of graphical user interfaces. In late-2001 to mid-2002, as Chief Technology

1   Officer for Networld Exchange Inc., I was        responsible for the design, developm    ent, and

2   deployment of a suite of products that delivere    d eComm erce functions.  These functions were

3   provided over the Internet and included produc     t catalog infor mation display, purchase and/or

4   purchase or der c reation, order  delivery to  f ulfillment syste ms, and order s  tatus re porting.  Th e

5   products for which I had responsib ility prov ided an electronic shopping gr aphical user interface

6   for business-to-business and busines s-to-consumer transactions.  Th e graphical user interface was

7   designed to support both vendors of pr oducts as well as custom ers.  Each of these user interfaces

8   were an optimization based on the specific user class.

9        7.       In the m id-1990s I was a consultant for  Xerox.  One of m y assignments there was

10  to develop a graph ical in terface for network attached office   products.  For exam ple, one of th e

11  graphical user interfaces I desi  gned provided end-user visibility   into printer queues supporting

12  distributed network printers.    Ano  ther graph ical us er interface I des   igned prov ided network

13  operations distributed job management control.

14       8.       As a software developm ent professional, I have had num erous occasions to review

15  bodies of source code.  I have an     alyzed source code written in     several variants of C, SQL,

16  COBOL, RPG, variants of Basic, Java, Perl,        several Assem bler languages, and others. For

17  example, as an individual contributor at     Xerox during the m id-1980s to 1990, I evaluated the

18  quality of source code from   thir d-party software providers for   possible inclusion in the Xerox

19  product line.  Also, I evaluated the source code        of several application software packages for

20  completeness and m aintainability, and for possibl e inclusion into the  NTN product line in 2000-

21  2001.  During m y early career, I spen t time maintaining source code written by others.  In each of

22  these assign ments, I analyzed the source cod        e to iden tify the data s   tructures, logical flow,

23  algorithms, and other aspects.

24       9.       During m y career as a software developm ent professional, I have several relevant

25  professional experiences that demonstrate my         expertise in the field of operating system

26  technologies.  I have perform   ed operating sy  stem programming assignm ents, I have publicly

27  lectured regarding various operating system     s, and I have provided       litigation support where

28  operating system technology was central to the matter.

-2-

10.     Finally, I have been retained by attorney s for plaintiffs and defendants in several matters where the concepts and practice of graphical user interface technology was a central issue. The matters include contract d isputes: *GTE v. Videotron*; *Eyefinity, Inc. v. Entigo*; *HealthFirst v. HealthTrio*; *Waltrip Associates v. K evin Kimperlin & Spencer Trask Ventures*, as well as patent infringement: *WebSide Story v. NetRatings; ICR v. Harpo*; *Leader v. Facebook*; *Fotomedia v. Yahoo!*; *Cisco v. Telcordia*; *Ampex v. Kodak, et al.*; and *ICI v. Red Hat and Novell*.

## II.     <u>LEGAL STANDARDS</u>

11.     In this section I describe m y understanding of certain legal standa rds.  I have been informed of these legal standards by Sa msung's attorneys.  I a m not an a ttorney and I am relying only on instructions from Sa msung's attorneys for these legal standards.  In conducting m y analysis of the '915 and '163 patent claims, I have applied the legal understandings set out in this declaration.

12.     I understand that assessm ent of infringem ent is a two step pr ocess.  First, the language of the patent claims must be construed by the Court.  Second, the claims as construed are applied to the accused product or process to d etermine whether the accused produ ct or process meets each and every limitation of the claim as construed by the Court.  To establish infringement of a patent, I understand that it is the patentee 's burden to show th at each accused product practices every limitation of at least one asserted claim in that patent.

13.     I understand that the patentee has the burden of proving infringem ent by the preponderance of the evidence.  I understand that this standard re quires that the patentee present evidence that as a whole shows that the fact sought to be proved is more probable than not.

14.     I understand that there are two types of infringem ent: literal infringem ent and infringement under the doctrine of equivalents.  I understand that to literally infringe a claim , an accused product or process must literally meet every limitation of the claim.

15.     I understand that even if all limitations of a claim are not literally m et, an accused product or process m ay still infringe under the doc trine of equivalents.  I understand that to establish infringement under the doctrin e of equivalents, the accused p roduct or process must, for each elem ent of the claim not literally presen t, contain a stru cture o r perform a step that is

-3-

1   substantially equivalent to the element in the claim . I a m informed by c ounsel that one common

2   way of determ ining substantial equ ivalence is to exam ine whether the accused structure or s tep

3   performs substantially the sam e function, in substa ntially the sam e way, to achieve substantially

4   the same result as the corresponding limitation of the claim.

5         16.     I also understand that there are several restrictions on the application of the doctrine

6   of equivalents. First, if an accused product or pr ocess wholly lacks even a single lim itation of a

7   claim, it cannot infringe the claim     under the doc trine of equivalents.  Second, the range of

8   equivalents cannot be so broad as to encom   pass that which was already known in the prior art.

9   Third, the doctrine of prosecuti on history estoppel precludes a  patentee from reclaim ing through

10  equivalents subject m atter that   was relinquished based on statem   ents or am endments during

11  prosecution.

12        17.     I understand that every claim   lim itation is essential in proving infringem ent, and

13  that the absence of even one limitation in an accused product or process avoids infringement.

14  **III.**   **MATERIALS CONSIDERED**

15        18.     In form ing my opinions in this Declar   ation, I reviewed a num ber of m aterials,

16  including U.S. Patent Nos. 7,844,915 (the "'915 Patent") and 7,864,163 (the "'163 Patent") as well

17  as their respective file histories, and relevant portions of the record in this case to date.  I have also

18  reviewed the Expert Infringem ent and Rebutta l Reports of Dr. Karan Singh as well as the

19  deposition transcript and trial testimony of Dr. Singh.

20        19.     In addition, I have reviewed the new s   ource code relating  to the W eb Browser

21  functionalities accused of infringing the '    915 and ' 163 patents and a Galaxy SII (T-Mobile)

22  product running this new source code.

23  **IV.**   **THE '915 PATENT**

24        **A.**   **OVERVIEW OF THE '915 PATENT**

25        20.     The ' 915 Patent, en titled "Applicati on Programm ing Interfaces for Scrollin  g

26  Operations," issued on Nov. 30, 2010 from an application filed Jan. 7, 2007.  The named inventors

27  of the '915 Patent are Andrew Platzer and Scott Herz.

28

21.    The '915 Patent generally relates to the field of application programming interfaces that provide user interface operations, such as scrolling and scaling. The asserted claims of the '915 Patent are directed to a technique for distinguishing between a single-input point that is interpreted as a scroll operation and two or more input points that are interpreted as a gesture operation. This technique is set forth in element [c] of claim 8, which is reproduced below:

8.   A machine readable storage medium storing executable program instructions which when executed cause a data processing system to perform a method comprising:

[a]  receiving a user input, the user input is one or more input points applied to a touch-sensitive display that is integrated with the data processing system;

[b]  creating an event object in response to the user input;

[c]  **determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;**

[d]  issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;

[e]  responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and

[f]  responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

### B.   PROSECUTION HISTORY

22.     Claim 8 as originally filed read as follows:

> 8.     A machine readable medium storing executable program instructions which when executed cause a data processing system to perform a method comprising:
>
>> receiving a user input;
>>
>> creating an event object in response to the user input;
>>
>> determining whether the event object invokes a scroll or gesture operation;
>>
>> issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;
>>
>> responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input; and
>>
>> responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving a plurality of input points in the form of the user input.

JX 1048.6.

23.     During prosecution, the Examiner rejected many of the pending claims, including claim 8, under 35 U.S.C. 103(a) as being unpatentable over Li (U.S. Patent No. 7,576,732 B2) and Hollemans (2007/0252821).   *See* 12/29/09 Office Action.  In response, Apple argued that Li and Hollemans did not render the claims obvious.  *See* 3/29/10 Response to Office Action.  On June 9, 2010, Apple and the Examiner conducted a telephonic interview where Li and Hollemans were discussed.   *See* 6/21/10 Interview Summary.  An agreement with respect to the claims was not reached as a result of that interview.   *Id*.  On July 16, 2010, Apple submitted a new prior art reference, Sato (GB 2319591 A).   *See* 7/16/10 IDS.  On July 20, 2010, the Examiner issued a Notice of Allowance along with an Examiner's Amendment to the claims and an Examiner's Amendment and Statement of Reasons for Allowance.  *See* 7/20/10 Notice of Allowability.

02198.51855/5695888.4

24.     The Examiner's Amendment amended claim 8 as follows:

> 8. (Currently amended)  A machine readable storage medium storing executable program instructions which when executed cause a data processing system to perform a method comprising:
>
>    receiving a user input, the user input is one or more input point applied to a touch-sensitive display that is integrated with the data processing system;
>
>    creating an event object in response to the user input;
>
>    determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;
>
>    issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;
>
>    responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and
>
>    responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving a plurality of the two or more input points in the form of the user input.

25.     As shown above, this amendment added the limitation "by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation" to claim element [c].  Apple's counsel authorized to this amendment during a telephone interview on July 7, 2010.  *Id.* at 2.

26.     In the Reasons for Allowance, the Examiner stated that the "[p]rior art of record fails to teach the combination of claimed elements including creating an event object in response to a user input; *determining whether the event object invokes a scroll operation or a gesture operation; distinguishing between a single input point and a two or more input points applied to a touch-sensitive display, wherein a single input point is interpreted as a scroll operation and two or more input points are interpreted as a gesture operation.*"  *Id.* (emphasis added).

27.     Thus, in allowing the independent claims, including claim 8, the Examiner found that the amendment to the claims that added the language "by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two

1   or m ore input points applied to the touch-sensi    tive display that are interpreted as the gesture

2   operation" distinguished the claims of the '915 patent from the prior art.

3   **C.   THE '915 PATENT REQUIRES PERFORMANCE OF A "QUINTESSENTIAL" TEST**

4

5   28.    During the August 2012 trial, Apple's expert for the '915 patent, Dr. Singh,

testified that 24 Samsung products infringed the '915 patent.  More specifically, Dr. Singh testified

6   that the W eb Browser application in  these accused  products infringed claim 8 of the ' 915 patent.

7   Dr. Singh testified th    at the W   eb Browser app   lication infringed  because it perfor    med a

8   "quintessential" and "very important" test required by claim elements [c] and [d].  Wi th respect to

9   these claim elements, Dr. Singh testified as follows:

10

11       A.      Okay. So these elem ents, again, are – sort of describ   e in
         some sense what's happening below in the, in the Samsung code.

12
         And the operative words in the big one are determ    ining whether
13       the event object invokes a scrolling operation, which I've described
         before, which is m  oving content, or the sm   all com plex gesture
14       operation, such as scaling, by di   stinguishing between whether a
         single input point is applied to the  screen or two or m ore inputs, in
15       which case a gesture operation is made.

16       So to understand this – to understand this elem    ent, what you see
         below is a   schem atic. It' s, it' s just a sch    ematic showing the
17       Samsung smartphone and tab phone.

18
         Again, what you see over there       are excerpts taken from     the
19       Samsung source code and laid out just to make things very clear.

20       And upon receiving input, there is a – there's a function in th e web
         view. The web view is the browse  r program , the internet browser
21       program on the Samsung device.

22
         Web view has a function called on touch event, so whenever
23       there's a touch, you go into that co de. When you go into that code,
         that code is called and caused by this m   otion event object that is
24       being passed into this piece of code and it's – it's sent into this code
         as a param eter. I' ve kind of illustrated it on to   p just so you can
25       clearly see the flow that is taki  ng place in the code. And there' s a
         very important line in this code where a s  imple test is m ade. The
26       motion event object has a pointer     count. The pointer count tells
         you whether one input is one input    touch, two input touches, or
27       more.

28

So all you're doing over here is making this quintessential test, and then based on the test, when a single input touch is on the screen, you go down a one finger part, that results in a scroll operation. So that takes you to this claim element c where you're distinguishing and you're going down this scroll bar, and I'll go one step further into claim element d, which says issues at least a scroll call or a gesture call, depending on which part you go down, and a scroll call, an example of a scroll call in this case is a method that says do drag, which says I'm dragging now, and what do I do? That's if you go down the scroll call. Very similarly, if you go down the gesture part, which is two or more fingers, you go down in the code and you perform a gesture operation which results in a gesture call being made. In this example, the gesture call is a the touch event of a scale gesture, something that results in the scale operation.

So what we've just seen over here is a run through the Samsung source code to give you a sense of two important things. One, that the motion event object causes a very important test to be made, one finger or two or more fingers; and then based on that test, there's a fork in the code and you either go down a scroll box where a scroll call is made and a scroll operation results, or down the gesture part and a gesture call is made and a gesture results.

So that's these two elements.

Trial Tr. at 1823:3-1825:22 (Singh testimony).

29.    During this testimony, Dr. Singh referred to demonstratives numbered PDX 29.12 and PDX 29.13, which have been reproduced below.

-10-

30.      As Dr. Singh testified and as is s          hown in his demonstratives above, the "quintessential" and "very important" te          st occ    urs in th      e    line of source code "ev.getPointerCount() > 1" found in Android' s WebView code.  Dr. Singh testif ied that this code receives a motion event and distinguishes between     a single input point and two or m      ore input points.  If a single input point is    detected, the "ev.getPointerCount()  > 1" test causes the code to proceed to    a scroll operatio       n.  If two          or m    ore input points are detected, th          e "ev.getPointerCount() > 1" test causes the code to  proceed to a gesture operation.  This fork in the code is illus      trated in Dr.           Singh's    dem    onstratives in     the bo       x that includes "ev.getPointerCount() > 1".  The portion of the accused W   ebView source code that includes th  e "quintessential" test performed by "ev.getPointerCount() > 1" is shown below.



Exhibit 2, Android source code [SAMNDCA-C000002857].

**D.      SAMSUNG'S NEW CODE DOES NOT INFRINGE THE '915 PATENT**

31.      I have examined a new version of the source code for the Web Browser application. I understand that this so  urce code w as used to create the following software:  Android version 4.0.4, Baseband version T989UVLI1, Kernel vers ion 3.0.8, and Build number IMM76D.UVLI1. [1] It is my opinion that this new source code does not infringe the '915 patent because it removes the "quintessential test" for disti nguishing between scroll and gest ure operations required by the ' 915

---

[1]  Declaration of YunBae Cho In Support Of Samsung's Opposition To Apple's Renewed Motion For A Permanent Injunction.

1   patent and instead employs a fundamentally different technique for processing scroll and scaling

2   operations.[2]

3        32.   ████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████

6        33.   ████████████████████████████████████

7   ███████████████████████████████████████████████████████

8   █████████████████████████████████████████

9        34.   ████████████████████████████████████████

10  ████████████████████████████████████████████

11  ████████████████████████████████████████████

12       35.   Importantly, there is no code that determines whether the scrolling code or scaling

13  code should be executed "by distinguishing between a single input point applied to the touch-

14  sensitive display that is interpreted as the scroll operation and two or more input points applied to

15  the touch-sensitive display that are interpreted as the gesture operation" as required by claim 8.

16

17

18

19

20

21

22

23

24

25  _____

26       [2]   I understand that the new version of code for the Web Browser that does not include the
    "quintessential test" was released in the Jelly Bean version of Android in July 2012.  *See*
27  http://grepcode.com/file_/repository.grepcode.com/java/ext/com.google.android/android/4.1.1_r1/
    android/webkit/WebViewClassic.java/?v=source.

28

-12-                                                  Case No. 11-cv-01846-LHK
                                                     DECLARATION OF STEPHEN GRAY

36.     The following flowchart illustrates how the new code operates:



37.     As illustrated above, the new code does not include the "quintessential" test performed by the "ev.getPointerCount() > 1" source code. That source code has been removed and a fundamentally different technique that does not distinguish the number of input points has been implemented.

38.     ████████████████████████████████████████████ Thus, the motion events do not "cause[] a very important test to be made, one finger or two or more fingers; and then based on that test, there's a fork in the code and you either go down a scroll box where a scroll call is made and a scroll operation results, or down the gesture part and a gestured call is made and a gesture operation results." Singh Trial Tr. at 1825:15-21. In other words, the new code does not "determine[] whether the event object invokes a scroll or gesture operation by distinguishing between a single input point . . . that is interpreted as the scroll operation and two or more input points . . . that are interpreted as the gesture operation" as required by all claims of the '915 patent, including claim 8. Consequently, the new code does not literally infringe any claims of the '915 patent.

39.     I also understand that the doctrine of prosecution hist ory estoppel prevents Apple from arguing the new code infringes under the doctrine of equivalents. As noted above, the claims of the '915 patent were am ended to add the na rrowing limitation "distinguishing between a single input point . . . and two or m ore input points . . ." to avoid prio r art. Consequently, it is m y understanding that prosecution history estoppel a pplies and precludes a fi nding of infringem ent under the doctrine of equivalents.

40.     Even if Apple were allowed to argue that the new code infringes under the doctrine of equivalents, it is my opinion that the new code does not infringe for several reasons.

41.     First, there are substantial differences between the claimed technique for processing scroll and gesture operations and the techniqu e used by the new code. The claim ed technique examines the number of input points and based on the results of that examination, invokes either a scroll or gesture operation. Th e technique utilized in the ne w code is fundamentally and substantially different. ███████████████████████████████████████

42.     Second, the new code does not perform        substantially the same function, in substantially the sam e way, to obtain substantia lly the sam e result. The technique found to infringe performs the function of determ ining whether the event object invokes a scroll or scale. The way it perform s this is by distinguishing be tween a single input poin t applied to the touch-sensitive display and two or more input points applied to the touch-sensitive display. The result of this is tha t either a sc roll call or a g esture call is issued. ███████████████████████

Even assum ing the function perform ed by the new code were the sa me as the f unction r ecited in the c laim, the wa y in which the function perform ed i s substantially different. The code found to infri nge determines whether an event object invokes a scroll or scale operation by distinguishing between the number of input points applied to the touch

1    screen display.  Dr.  Singh identified this as  the "quintessential" test.   The new code does not

2    ████████████████████████████████████████████████████████████████████████████

3    ██████████████████████████████    Finally, the new code produces results that are substantially

4    different than the claimed function.  For example, the claimed function results in either a scroll or

5    gesture operation based on a motion event.  ████████████████████████████████████████

6    ████████████████████████████████████

7        43.    I have also examined the scrolling code in WebView that processes scrolling

8    operations and the scaling code in W        ebviewScaleGestureDetector that processes s      caling

9    operations and confirmed that both do not include any code that meet the limitations of claim 8.

10   Specifically, none of the scrolling code or scaling code "disti  nguish[es] between a single input

11   point applied to the touch-sensitive display that is interpreted as the scroll operation and two or

12   more input points applied to th      e touch-sensitive display that     are interpreted as the gesture

13   operation" or "issu[es] at least   one scroll or gesture call based on invoking the scroll or gesture

14   operation."

15       44.    I have also examined the Web Browser application in a  Galaxy S II (T-Mobile)

16   product that includes this new code.  I understand that this source   code was used to create the

17   following software:  Android version 4.0.4, Base band version T989UVLI1,  Kernel version 3.0.8,

18   and Build number IMM76D.UVLI1.[3]  The Galaxy S II (T   -Mobile) was running the following

19   software:  Android version 4.0.4,  Baseband version T989UVLI1, Kernel version 3.0.8, and Build

20   number IMM76D.UVLI1.  Using this device, I was able to  scroll web pages using one finger and

21   zoom in and out of web pages using two fingers.

22       **E.    PRODUCTS USING THE NEW CODE DO NOT INFRINGE THE '915**
             **PATENT**
23

24       45.    For the reasons stated above, it is my   opinion that products running the new code

25   described above does not infringe   claim 8 of the '915 patent literally or under the doctrine of

26   _____

27     [3]   Declaration of YunBae Cho In Support Of Samsung's Opposition To Apple's Motion For A

28   Permanent Injunction And Damages Enhancement.

1  equivalents.  I understand that, as of the filin    g of this declaration,   the only product accused of

2  infringing the '915 patent that has not been discon tinued is the Galaxy S II (T -Mobile).  It is m y

3  opinion that Galaxy S II (T-Mobile) products running the new code do not infringe the '915 patent.

4  **V.       DR. SINGH'S NEW INFRINGEMENT THEORY**

5         46.      In Dr. Singh's November 9, 2012 Declaration in Support of Apple's first Motion for

6  Permanent Injunction, he advances a new theory of infringement for Samsung's new algorithm for

7  scrolling and scaling.  Dr. Singh now claims ████████████████████████████████████████

8  infringes the '915 patent.  I disagree with Dr. Singh.

9         47.      As an initial m atter, Dr. Singh concedes th at his new theory of  infringement is no

10  longer based on the "ev.getPointerC ount" test, which he referred to at  trial as the "quintessential"

11  test for infringement of the '915 patent:

12         Q.  You know what I'm talking about, Dr. Singh.

13
14         A.  The particular lines, ev.getPointerCount, even ev.getPointerCount greater
               than 1, show up in a number of different places in both the old code as well
15             as in the new Samsung modified source code. So I think, I think if your
               question is in its current form, I would say yes, there are multiple places
16             where I see ev.getPointerCount greater than 1.

17         Q.  And do you rely on any of those for your new opinion of infringement?

18         A.  Those particular lines?  No.

19  (Singh Dep. at 399:23-400:12 (objection omitted).)[4]

20         48.      Dr. Singh's new infringem ent theory is  focused on ██████████████████  Dr.

21  Singh explained during his deposition   that ████████████████████████████████████████

22  ███████████████████████████████  (Singh Dep. at 403:20-21.)  Dr. Singh claims that ████

23  ████████████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████ (*Id.* at 424:16-17.)  Dr. S ingh also claims

25

26  _____

27     [4]   Excerpts from the December 3, 2012 Singh Deposition are attached as Exhibit 4 to this
    declaration.

28

1  that █████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████ ( *Id.* at 401:16-18 and 419:8-9.) ██████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████

6  **VI.    SAMSUNG'S** ███████**CODE DOES NOT INFRINGE THE '915 PATENT**

7  49.    It is my opinion that Samsung's new code does not infringe the '915 patent literally

8  or under the doctrine of equivalents.

9  50. First,     the "quintessential test" identified by Dr. Singh ("ev.getPointerCount(_) > 1")

10  was removed from the code.  There are no lines of   code similar to this o ne anywhere in the new

11  code that relate to scrolling or scaling.

12  51.    Every time there is a touch  event (someone or som ething touches the screen), the

13  code runs the m  odified " *WebviewScaleGestureDetector*" code to determ  ine whet her or not it

14  should scale.  However, nothing in  *WebviewScaleGestureDetector* looks to the num ber of inputs

15  on the touch screen to determ     ine whether to   perform a s  cale operation.  Instead,  ████████

16  ████████████████████████████████████████████████████

17  █████████████████████████

18  52.  ████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ██████████████

24  53.    The new code does not consider the number of input points to determine whether to

25  perform a scale operatio n.  Instead, it does two things , entirely separa tely from each other.  ████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

1

2

54.     The code for scrolling is called " *handleTouchEventCommon*", and is independent

from the *WebviewScaleGestureDetector* code.  *handleTouchEventCommon* is executed every time

there is a touch event, and is not dependent on th e number of touches involved in the touch event.

As Dr. Singh adm its, the *handleTouchEventCommon* code executes, possibly invoking a scroll

operation, regardless of whether a scale gesture is detected in          *WebviewScaleGestureDetector*.

(Singh Dep. at 430:2-13.)

55.     Below I explain in detail several reasons why Samsung's code does not infringe the

'915 patent.

**A.     The ▮▮▮ Code Does Not Distinguish Between "One Input Point . . . And Two Or More Input Points"**

56.     The new code does not infringe because it  does not "distinguish between one input

point . . . and two m ore input points" to determine whether to invoke a scroll or scale operation

as the ' 915 Patent requires.  Sam sung's new code  does not look to the num ber of i nput points to

determine whether to scroll or   scale.  Sam sung's new code ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ There is no decision whether to scroll or scale based on the number of input points.

57.  I understand that for a product to literall      y infringe, the device m ust practice each

limitation o f the claim exactly.  I     t is m y opinion that claim  elem ent 8[ c] – the determ ining

limitation – is not liter ally m et, be cause th e d etermination is based o   n the ▮▮▮ and not th  e

number of input points.  Dr. Si ngh confirmed this during his deposit ion when he was not able t  o

identify any source code that m ade a determination based on input points.  (Singh Dep. at 421:13-

422:13.)  Although Dr. Singh claims th  at the new code still m  akes the sam e decision as the old

code, that is not correct.  In fact, if there are two input points close together, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ which would not  resu lt in a scaling ope  ration despite two input

points on the touchscreen.  Dr. S   ingh conceded  that tw o input points very close together could

result in ▮▮▮▮▮▮ (Singh Dep. at 408:19-409:8.)

**B.**    **The ███ Test Does Not "Invoke A Scroll . . . Operation" Or "Issu[e] At Least One Scroll . . . Call Based On Invoking The Scroll . . . Operation"**

58.    The '915 patent requires "determining wh ether the event obj ect invokes a scroll" operation by "distingu ishing between a single input  point applied to the touch-sensitiv e display that is interpreted as the scroll operation."  The  ███ code does not do this.  The ' 915 patent also requires "issuing at least one scro ll . . . call based on invoking the scroll . . . operation."  The  ███ code does not do this either.

59.    Dr. Singh claim s that when  ████████  the scroll code is invoked.  This is misleading.  ████████████████████████████████████ ████████████████████████████████████ (Singh Dep. at 427:22-430:9.)  After that, the next code in  line executes, which happens to be the scroll code ( *handleTouchEventCommon*). ( *Id.*) As Dr. Singh adm   itted during his d   eposition, th e scrolling code executes regardless   of the number of input points   applied to the touch sensitive display.  (*Id.* at 430:10-13.)  The scroll code is completely independent of any other code, and will execute upon any touch event.  It is not invoked or caused by any "determining" step.

60.    If Dr. Singh's opinion is base             d sim   ply on the fact that the *handleTouchEventCommon* code happens to be executed after the *WebviewScaleGestureDectector* code, I disagree. The order of the steps is irrelevant because the two sets of code are unrelated.  As I explained during m y deposition, before learning  of Dr. Si ngh's new infringem ent theory, "The ████████  s not related to the execution or to the invocation of the m ethod handle touch event common."  (Gray Dep. 78:11-20.)

61.    For these reasons, the n ew code does not infrin ge because the  ███ code does not determine whether the event object invokes a scro ll operation nor does it invoke or cause a scroll operation to occur.

**C.**    **Two Finger Input Can Result In A Pure Scroll Operation**

62.    When two fingers applied to the touchscr een are close together ████████ ████  and a sca le operation will not o  ccur.  Therefore, claim 8 of  the '915 patent is n  ot

infringed because it requires two input points "applied to the touch-sensitive display" to invoke a scale operation.

63. Dr.    Singh  confirmed  during  his deposition that two      fingers applied to the touchscreen can result in a scroll instead of a scale.  During his deposition, he testified as follows:

> Q. So in other words, if two fingers are very close together, touching the touchscreen, then the device may interpret that as a single input point, which ███████████████████████    is that correct?

> A. Same answer, really.  In this hypothetical scenario, were somebody able to have their two fingers down and were the device to interpret it as a single input touch, if it were indeed interpreted as a single input touch if it were indeed interpreted as a single input touch, getPointerCount in this ████████████████████████████████

(Singh Dep. at 408:19-409:8 (objections omitted).)

64.    Based on this admission, it is clear to me that Dr. Singh's new infringement theory is based on an incorrect interpretation of the claims.  Although he admitted that ███████████ ████████████████████████████████████  he testified that ████████████ ████████████████████████████  However, this interpretation disregards the claim language which states: "determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point *applied to the touch-sensitive display* that is interpreted as the scroll operation and two or more input points *applied to the touch-sensitive display* that are interpreted as the gesture operation."  Claim 8 therefore requires making a determination based on the number of touches actually "applied to the touch-sensitive display", as opposed to how the touches may be interpreted by electronics in the device.  Indeed, the claims refer to "input points applied to the touch-sensitive display," not input points "interpreted by electronics or software within the device."  Therefore, Dr. Singh's interpretation is incorrect and contrary to the plain claim language.

**D.    The New Code Performs Pure Two Finger Scrolling, Which Dr. Singh Admits Does Not Infringe**

65.     During his deposition, Dr.   Singh testified that a devi   ce that performs pure two finger scrolling does not infringe the '915 patent:

> Q.  Dr. Singh, in your opinion, is the determining limitation of the '915 patent satisfied by a device that performs pure two finger scrolling?
>
> A.  So the scenario that you're presenting is a device where you have two input, distinct input touches and you're performing pure scrolling, a pure translation?  I would say barring things such as filtering for noise and inadvertency in touches and so on, if that was specifically what was being performed all the time rather than not just coincidentally where a scale value just happened to be 1 at a particular incident in time, that would not meet the claim in this hypothetical scenario of yours.

(Singh Dep. at 457:7-458:12.)

66.     Samsung's new algorithm performs pure multi-finger scrolling operations – that is, the use of two or m ore fingers to scroll without s caling at the sam e time. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████  Therefore, the device is not m  aking a de termination between one touch and two or more touches to scroll or scale respec tively.  The code perf orms pure multi-finger scrolling in precisely the way Dr. Singh says does not infringe.  T     he c ode is not filtering fo  r noise or inadvertent touches.  The code is instead verifying the user wants to scale ████████████████████

████████████████     Despite Dr. Singh's admission that confirms this code does not infringe, Dr. Singh did not address this portion of code in his declaration.

**E.     Samsung's New Algorithm Does Not Infringe Under The Doctrine of Equivalents**

67.     It is also my opinion that Sam   sung's new algorithm  does not infringe under the doctrine of equivalents.  I have  reviewed the prosecution history in  this case, and it is m y opinion that the Apple disclaimed all equivalents for the "determining" element in claim 8.

68.     The "determ ining" elem ent of claim  8 orig inally read as follows: "determ  ining whether the event object invokes a scroll or gesture operation."

69.     During prosecution, the Exam iner rejected the '915 claim s over a combination of prior art references, Lii (US 7,576,732) and Hollemans (2007/025821).

70.     On June 9, 2010, the Apple' s representative had an interview with the Exam iner. The only re cord of this Inte rview stated tha t Apple's repres entative arg ued that the "prio r art o f record . . . fail to teach or suggest creating an     event object that determ ines whether a user input applied to a touchscreen invokes a scroll operation or a gesture operation by simply distinguishing between the scroll operation and the gesture operation without having to select an object or icon to define the operation." (Joint Trial Ex. No. 1048.462.)

71.     I understand that Dr. Singh contends that this argument is the reason why the claim limitation was am ended. (S ingh D ecl. ¶ 36.) I disagree. Th     e Exam iner rejected App le's arguments made at the June 9, 2010 interview, whic h is evidenced by the fact that a check box on the inte rview summ ary indicates that no agre     ement was reached. In addition,     there is n o indication in the prosecution hist ory that any am endments to th e claim s had been proposed or discussed during the June 9, 2010 interview.

72.     The following month, on July 20, 2010, the Ex aminer issued a notice of allowance. In this no tice of allowa nce, the Ex aminer also m ade an Exam iner's am endment that added the following language to the determ ining step: "d etermining whether the event object invokes a scroll or gesture operation by di   stinguishing between a single i nput point applied to the touch- sensitive display that is interpreted as the scroll operation and two or m ore input points applied to the touch -sensitive disp lay that a re inte rpreted as the ges ture opera tion." (Joint T rial Ex. No. 1048.521.)  This is the first time this amendment appears in the record.

73.     The Examiner also indicated that author ization for this am endment was given in a telephone interview with Mr. Jeremy Schweigert (Apple's representative) on July 7, 2010.  (*Id.*)

74.     The July 7, 2010 interview was different fr om the June 9, 2010 interview cited by Dr. Singh in paragraph 36 of his repor t.  There is no record of wh at was discussed at the July 7, 2010 interview.  There is also no record regardin g why the Examiner rejected the arguments made by the Applicant in the Ju ly 7, 2010 interview.  Therefore, the   record contains no evidence as to why the amendment was made.

75.     I understand that when a narrowing am  endment is m ade for a substantial reason related to patentability, there is a presumption that the patentee surrendered all equivalents.

76.     I also understand that the patentee bears    the burden to explai n the reason for the amendment, and when the Court cannot determ ine the reason for an am endment, the Court should presume the patentee surrendered all subject matter between the broader and narrower language.

77.     It is m y opinion based on the prosecutio n history that the narrowing am  endment was m ade to overcom e prio r a rt.  This is  f urther ev idenced by th e f act that in  the Notic e o f Allowance, the Exam iner indicated that th e claim s were patentable because the prior art fails to teach the com bination of "creating  an event o bject in response to a user inpu      t; determ ining whether the event object invokes a scro ll operation or a gesture operation; ***distinguishing between a single input point and a two or more input po ints applied to a touch-sensitive display, wherein a single input point is    interpr eted as a sc  roll operation and two or more inpu     t points are interpreted as a gesture operation.*** " (emphasis added.)  It is also m y opinion that the reason for the am endment cannot be determ    ined and th   erefore Apple cannot ap    ply the doctrine of equivalents.

78.     I also understand Apple can rebut th       e presum ption that it surrendered the equivalent in question by showing that the rationale underlying the amendment bore no more than a tangential relation to the equivalent in questi   on.  As explained above, Apple cannot show the rationale be hind the a mendment at a ll, le t a lone  show that it bore no     more than a tangen tial relation to the equivalent  in question. All that is   clear from  the record is  that the claim s we re rejected based on prior art, the Examiner was authorized to add the amendment for some unknown reason, and the claims were patentable over the prior art in part because of the amendment.

79.     Even if Apple could apply the doctrine of   equivalents, it is my opinion that there are subs tantial differences between the claim    limitation in question and Sa   msung's new code. Samsung's new code does not perf orm the sam e function in the same way to produce the sam   e result as the claim s.  First,  it does not perform   the sa me func tion. For exam ple, the claim ed function is to distinguis h between the num ber of input points    to either scroll or scale. T    he Samsung code does not function this  way. ████████████████████████████████████

1 ███████████████████████████████████████████

2 ████████████████████████

3       80.     Next, Samsung's new algorithm does not perform the same way. For example,

4 claim 8 requires a determination of whether to scroll or scale based on the number of input points.

5 But, as explained above, Samsung's code does not do this. ████████████████████

6 ███████████████████████████████████████

7       81.     Finally, the results are different. For example, the claim requires a scroll for one

8 touch, and a scale for two or more touches. ████████████████████████

9 █████████████████████████████ two touches close together can result in a

10 scroll operation.

11 **VII.**    **THE '163 PATENT**

12     **A.**    **OVERVIEW OF THE '163 PATENT**

13       82.     The '163 patent, entitled "Portable Electronic Device, Method and Graphical User

14 Interface for Displaying Structured Electronic Documents," issued on January 4, 2011 from an

15 application filed on September 4, 2007. The named inventors of the '163 Patent are Bas Ording,

16 Scott Forstall, Greg Christie, Stephen O. Lemay, Imran Chaudhri, Richard Williamson, Chris

17 Blumenberg, and Marcel Van Os. A review of the file history shows that Apple filed a certificate

18 of correction on January 14, 2011 to remove Bas Ording as an inventor and add Andre M.J. Boule

19 as an inventor.

20       83.     The '163 patent relates to methods and systems for navigating an information space

21 on portable electronic devices with limited display screens. The independent claims of the '163

22 patent generally cover a two-step process for enlarging and substantially centering a first box of

23 content and substantially centering a second box of content within a structured electronic

24 document. This technique is set forth in claim 50 of the '163 patent, which is reproduced below:

25     **50.** A portable electronic device, comprising:

26      **[a]**     a touch screen display; one or more processors; memory; and one or

27     more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors,

28

**[b]**         the one or more programs including: instructions for displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;

**[c]**         instructions for detecting a first gesture at a location on the displayed portion of the structured electronic document; instructions for determining a first box in the plurality of boxes at the location of the first gesture; instructions for enlarging and translating the structured electronic document so that the first box is substantially centered on the touch screen display;

**[d]**         instruction[s] for, while the first box is enlarged, detecting a second gesture on a second box other than the first box; and instructions for, in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display.

## B.   **PROSECUTION HISTORY**

84.     As initially drafted, claim 50 of the ' 163 patent (then numbered claim 51) did not include claim element [d], which requires "instruction[s] for, while the first box is enlarged, detecting a second gesture on a second box other than the first box;    and instructions for, in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display." JX-1049.49-50.

85.     On October 20, 2011, the patent Examiner issued a Notice of Allowability for the '163 patent.  (JX-1049.1696-1712)  According to this notice, the Examiner conducted a telephone interview with Apple on October 12, 2010, who authorized the following Examiner's Amendment to claim 50 (then claim 51).  (JX-1049.1698)  This amendment added claim element [d].

**[50].** A portable electronic device, comprising:

**[a]**         a touch screen display; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors,

**[b]**         the one or more programs including: instructions for displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;

**[c]**         instructions for detecting a first gesture at a location on the displayed portion of the structured electronic document; instructions for determining a first box in the plurality of boxes at the location of the first gesture; ~~and~~ instructions for enlarging and translating the structured electronic document so that the first box is substantially centered on the touch screen display**;**

DECLARATION OF STEPHEN GRAY

**[d]      instruction[s] for, while the first box is enlarged, detecting a second gesture on a second box other than the first box; and instructions for, in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display.**

## C.     SAMSUNG'S NEW CODE DOES NOT INFRINGE THE '163 PATENT

86.    In Exhibit 5 of his infringem ent re port, Dr. Singh cites m otionUp() as the WebView.cpp function in the accused Sam sung c ode that is ultim ately responsible for "in response to detecting the second gesture, translati ng the structured electronic docum ent so that the second box is substantially centered on the touch screen display."

87.    I have reviewed the new source code      for the W eb Browse r application.  I understand that this source code was used to create the following software:  Android version 4.0.4, Baseband version T989UVLI1, Kernel version 3.0.8, and Build number IMM76D.UVLI1.[5]  Based on m y review, I have confirm ed that the relevant source c ode in the m otionUp() function, identified by Dr. Singh as infringi ng, has been commented out and is therefore inoper ative.  As a result, it is my opinion that the Sam sung accused  code no longer contains "instru ctions for, in response to detecting the second gesture, translati ng the structured electronic docum ent so that the second box is substantially centered on the touch sc reen display" as required by claim 50.  The new code does not literally infringe the '163 patent.

88.    I have also exam ined the W eb Browse r application in a  Galaxy S II (T-Mobile) product that includes this new     code.  The Galaxy S II (T-Mobile) was running the following software:  Android version 4.0.4,  Baseband version T989UVLI1, Ke rnel version 3.0.8, and Build number IMM76D.UVLI1.  Using the W eb Br owser application on this device, I loaded a web page from the New York Tim es website.  After "en larging and translating" a first box of content on the web page using a double tap, I was unable     to then cause the device to "translate" to "substantially center" a second box in response to  a "second gesture" on a "second box other than the first box."  Any attem pt to single-tap on a s econd region outside the fi rst, enlarged region

---

[5]  Declaration of YunBae Cho In Support Of Samsung's Opposition To Apple's Renewed Motion For A Permanent Injunction.

resulted in no response from the device. Any attempt to double-tap anywhere on the webpage, including a second region outside the first, enlarged region, resulted in the structured electronic document returning to its original size (i.e., a "zoom out"). This non-infringing behavior is illustrated in the video attached as Exhibit 3. As a result, Web Browser application does not literally infringe claim 50 of the '163 patent.

89. I also understand that the doctrine of prosecution history estoppel prevents Apple from arguing the new code infringes under the doctrine of equivalents. Claim 50 was amended to add the limitation "instruction[s] for, while the first box is enlarged, detecting a second gesture on a second box other than the first box; and instructions for, in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display" to avoid prior art. As a result, my understanding is that prosecution history estoppel applies and precludes a finding of infringement under the doctrine of equivalents.

90. Even if Apple were allowed to argue that the new code infringes under the doctrine of equivalents, it is my opinion that the new code does not infringe the '163 patent under the doctrine of equivalents. In my opinion, without the functionality associated with the second gesture, the Galaxy S II (T-Mobile) does not perform substantially the same function, in substantially the same way, to achieve the substantially same result. The claimed function of centering a second box is no longer performed. Instead, the Galaxy S II (T-Mobil) performs a substantially different function of doing nothing (single tap) or zooming out to the web pages' original size (double tap). For the same reasons, the result of the claimed function and the result of the function performed by the Galaxy S II (T-Mobile) are substantially different.

91. I also note that while the structured electronic document is in an enlarged state, a user makes a second gesture on a second box other than the first box and the structured electronic document reduces to its original size, there could be a case where the second box is by chance substantially centered on the display. It is my opinion that this does not infringe claim 50 because the centering of the second box in this example did not occur as a result of "instructions for" "substantially centering" the "second box." In this example, the centering of the second box is not

1  caused by any instructions designed     specifically to bring about that result.  It is m      erely an

2  incidental effect of the zoom    out operation.  Indeed, the lines of    code specifically cited by D  r.

3  Singh as responsible for "transla ting the structured electronic doc ument so that the second box is

4  substantially centered on the touch screen disp    lay" are no longer operative and are unable to

5  perform any functionality on the Sam sung accused  devices.  In m y opinion, absent "instru ctions

6  for, in response to detecting the second gesture,   translating the structur ed electronic docum ent so

7  that the second box is substantially centered on the touch screen display," there is no infringement.

8          92.      Finally, I note that Dr. S ingh did not pr ovide a declaration challenging S amsung's

9  design around for the ' 163 patent in support of A pple's first Motion for Perm anent Injunction.  I

10  also understand that Apple did not challenge     Samsung's design around for the '163 patent in

11  Apple's first Motion for Permanent Injunction.

12          I declare under penalty of perjury under the law s of the United States that the foregoing is

13  true and correct.  Executed on January 9 2014, in Solana Beach, California.

14

15

16                                                     Stephen Gray

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ATTESTATION**

2   I, Victoria F. Maroulis, am the ECF User whose ID and password are being used to file

3 this Declaration. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that

4 Stephen Gray has concurred in this filing.

5

6 Dated:  January 9, 2014      */s/ Victoria Maroulis*

7                 Victoria Maroulis

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28