# SMITH EXHIBIT 6

# Exhibit 6

2013-1129

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

APPLE INC.,

*Plaintiff-Appellant*,

v.

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC., and
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of California in case no. 11-CV-1846, Judge Lucy H. Koh.

**BRIEF FOR PLAINTIFF-APPELLANT APPLE INC.**

| | |
|---|---|
| MICHAEL A. JACOBS | WILLIAM F. LEE |
| RACHEL KREVANS | MARK C. FLEMING |
| ERIK J. OLSON | JOSEPH J. MUELLER |
| RICHARD S.J. HUNG | LAUREN B. FLETCHER |
| GRANT L. KIM | WILMER CUTLER PICKERING |
| MORRISON & FOERSTER LLP |   HALE AND DORR LLP |
| 425 Market Street | 60 State Street |
| San Francisco, CA 94105 | Boston, MA 02109 |
| (415) 268-7000 | (617) 526-6000 |
| | |
| | JONATHAN G. CEDARBAUM |
| | WILMER CUTLER PICKERING |
| |   HALE AND DORR LLP |
| | 1875 Pennsylvania Avenue NW |
| | Washington, DC 20006 |
| | (202) 663-6000 |
| February 12, 2013 | *Counsel for Plaintiff-Appellant Apple Inc.* |

*Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012) (recognizing the unique litigation pressures that distort the terms of licensing agreements made for settlement purposes). And in any event, the Nokia and HTC licenses are quite limited. The Nokia agreement was merely a "provisional license" for a limited "standstill" period (A4076(¶6)), and the HTC license barred HTC from making "clones" of Apple's products (A4792(¶ 5.1); A4803-4804 (¶¶12.1, 12.3, 12.4); A4811). These limited terms are consistent with Apple's desire to prevent others from using its unique user experience patents without restriction. A21956-21957(1956:21-1957:2) ("Q  And to be clear, what is Apple's position on licensing this portion of its portfolio?  A  We strongly desire not to license it. It's not an area that we license, and our goal in licensing is to enable people to design their own products, not the ability to just copy our products."); *see also* A22010-22012(2010:9-2012:16) (describing Apple's use of "anti-cloning" provisions in licenses to Apple's unique user experience IP). Apple therefore faces no serious threat of erosion of its unique property right from any of the few entities it has licensed, and the district court clearly erred in finding any willingness on Apple's part to license the patents-in-suit to its direct competitors.

### C. The Balance Of Hardships Strongly Favors Enjoining Further Infringement From Apple's Direct Competitor

Although the district court considered the balance of hardships a "neutral" factor (A19), Samsung's own arguments below confirm that the balance of

hardships favors granting a permanent injunction. Samsung claimed that it had discontinued marketing its infringing products and had developed design-arounds to Apple's patents (A4044-4045 & n.10), and if Samsung's own expert is to be believed, Samsung was able to implement those design-arounds with minimal burden and expense (A23036-23038(3036:5-23038:19)). As the district court correctly recognized, Samsung "cannot now turn around and claim that [it] will be burdened by an injunction that prevents sale of these same products." A19.

At the same time, Samsung's claim that it has discontinued sales of its infringing products or designed around Apple's patents in no way diminishes Apple's need for injunctive relief. Because Samsung frequently brings new products to market (A20880-20881(880:13-881:7); A23037(3037:2-4)), an injunction is essential to providing Apple the swift relief needed to combat any future infringement by Samsung through products not more than colorably different from those already found to infringe. Apple should not have to bear the risk that Samsung's supposed design-arounds are insufficient or that Samsung will not again resume its infringement.

Absent a permanent injunction, Apple would be significantly harmed by the risk of Samsung's continued infringement. *First*, the parties have product lines of vastly different scope. Unlike Apple, which launches only a small number of new products each year and sells only two or three smartphone products at any given

time, Samsung launches 50 new smartphones each year and has over 100 products available in the United States at any given time.  A20880-20881(880:13-881:7); A23037(3037:2-4) ("Samsung currently has 103 models in the United States. They come out with more than one a week.").  Even if the infringing products at issue here were enjoined, Samsung would still have numerous products on the market.  By contrast, Apple's much narrower product line must compete with any ongoing infringement by Samsung, which as explained above (pp. 17-19) has already cost Apple significant market share.

*Second*, Samsung argued (A4036-4037)—and the district court found (A7-12)—that the infringing features in Samsung's products do not drive market demand.  Although Apple disagrees—and it was error for the district court to deny Apple's request for an injunction based on such a consideration (*see* A21; *infra* Part II)—that argument concedes that Samsung faces a minimal burden in removing those features from its products.  If Samsung and the district court are correct, Samsung will suffer no meaningful loss in market share through an injunction against future infringement.  Apple, however, has already suffered significant loss in market share due to Samsung's sale of infringing and diluting products.  Apple should not have to bear the risk of any further loss in market share by leaving the door open for Samsung to continue to compete unfairly with Apple using products that infringe Apple's patents.

## D. An Injunction Would Promote The Public Interest In Patent Enforcement Against A Direct Competitor

A permanent injunction is the only way to vindicate the property rights that Congress and the Patent Office conferred on Apple against the adjudicated trespass by its direct competitor. The public has a strong interest in preserving and promoting those property rights, as the district court recognized. A20 ("[T]he public interest ... favor[s] the enforcement of patent rights to promote the 'encouragement of investment-based risk.'" (quoting *Sanofi-Synthelabo*, 470 F.3d at 1383)); *see also i4i*, 598 F.3d at 863 (concluding that public interest was served by grant of permanent injunction because the "public's general interest in upholding patent rights favor[s] injunctive relief"); *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008) ("The patent laws promote ... progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development." (quoting *Kewanee Oil Co. v. Bicron Corp.*, 415 U.S. 470, 480 (1974)).

The public interest in patent enforcement is particularly strong where, as here, an injunction will not implicate public safety issues, but will only prevent Samsung from unfairly competing with Apple by selling products that use Apple's patented designs and features. As the district court correctly recognized, an injunction will have a minimal effect on the public, because Samsung claims to have already ceased manufacturing infringing products and only a small stock of