HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.    11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S REPLY IN SUPPORT OF POST-TRIAL MOTION FOR JMOL, SUPPLEMENTAL DAMAGES, AND PREJUDGMENT INTEREST**<br><br>Date:    January 30, 2014<br>Time:    1:30 p.m.<br>Judge:   Hon. Lucy H. Koh<br>Place:   Courtroom 8, 4th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. III

I.      INTRODUCTION .......................................................................................................... 1

II.     APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
        SAMSUNG'S PROFITS.................................................................................................. 1

        A.      Samsung Failed To Prove That Any Of Its Alleged Allocated Costs Were
                Actually Incurred And Directly Attributable To The Infringing Products. ............ 1

        B.      Granting Apple's Motion For JMOL Would Not Violate The Seventh
                Amendment. .......................................................................................................... 5

III.    THERE IS NO REASON TO DELAY AWARDING SUPPLEMENTAL
        DAMAGES AND PREJUDGMENT INTEREST. ............................................................ 6

IV.     CONCLUSION .............................................................................................................. 9

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Amstar Corp. v. Envirotech Corp.*,
    823 F.2d 1538 (Fed. Cir. 1987) ................................................................. 9

*Bergstrom v. Sears, Roebuck & Co.*,
    496 F. Supp. 476 (D. Minn. 1980) ......................................................... 2, 4

*Decato v. Travelers Insurance Co.*,
    379 F.2d 796 (1st Cir. 1967) ................................................................... 5

*E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*,
    117 F.3d 1244 (11th Cir. 1997) ............................................................... 5

*Eolas Technologies Inc. v. Microsoft Corp.*,
    No. 99 C 0626, 2004 WL 170334 (N.D. Ill. Jan. 15, 2004) ..................... 7

*Flat Slab Patents Co. v. Turner*,
    285 F. 257 (8th Cir. 1922) ...................................................................... 3

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ............................................................... 2, 4

*Itron v. Benghiat*,
    No. Civ. 99-501, 2003 WL 22037710 (D. Minn. Aug. 29, 2003) ............ 7

*Manhattan Industries, Inc. v. Sweater Bee by Banff Ltd.*,
    885 F.2d 1 (2d Cir. 1989) ..................................................................... 2, 4

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
    No. 08-cv-335, 2013 WL 4068833 (S.D. Cal. Aug. 12, 2013) ................. 7

*Schnadig Corp. v. Gaines Manufacturing Co.*,
    620 F.2d 1166 (6th Cir. 1980) ............................................................. 2, 4

*Smith v. Massachusetts*,
    543 U.S. 462, 475 (2005) ........................................................................ 9

*Syndia Corp. v. Gillette Co.*,
    No. 01-c-2485, 2002 WL 2012473 (N.D. Ill. Aug. 30, 2002) .................. 9

**Statutes**

35 U.S.C. § 289 ........................................................................................... 2, 6

**Rules**

Federal Rule of Civil Procedure 50 ................................................................. 5

1  **I.      INTRODUCTION**

2          Unable to dispute the merits of Apple's argument regarding Samsung's profits, Samsung

3  erects straw men to knock down.  But Samsung presented no evidence at the retrial linking its

4  allocated operating costs directly to the infringing products.  Without such evidence, no

5  reasonable jury could have found that Samsung met its burden of proving that those costs were

6  deductible for the purpose of calculating infringer's profits.  Since Samsung failed to carry its

7  burden on this issue, the Court should grant judgment as a matter of law in Apple's favor with

8  respect to infringer's profits.

9          Furthermore, the Court should award Apple the supplemental damages and prejudgment

10 interest to which it is entitled.  Doing so now is the most efficient course of action and the only

11 way to ensure that the *entire* case can be reviewed on appeal.  Samsung's claims to the contrary

12 are nothing more than requests to revisit previously-resolved issues in an attempt to delay

13 calculating the total sum Apple is due.

14 **II.     APPLE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
           SAMSUNG'S PROFITS.**
15

16          **A.      Samsung Failed To Prove That Any Of Its Alleged Allocated Costs Were
                    Actually Incurred And Directly Attributable To The Infringing Products.**

17          The only dispute concerning the jury's award of infringer's profits was whether Samsung

18 met its burden of proving its "deductible expenses . . . directly attributable to the sale or

19 manufacture of the infringing product . . . ."  (Dkt. 2784 at 43.)  No reasonable jury could have

20 found that Samsung met its burden because Samsung did not introduce any evidence that a single

21 dollar of its alleged allocated costs (DX676) was *actually spent* on the infringing products.

22 Samsung's opposition does not dispute this, nor does it identify any actual product-level costs in

23 the record.  Instead, Samsung relies on testimony from Mr. Sheppard describing the type of

24 operating expenses identified in DX676 and his view that those costs were "necessary" for

25 Samsung's general operations.  (Opp. at 9:20-10:2 (citing testimony from Mr. Sheppard).)  But

26 Mr. Sheppard did not refer *to any specific infringing product*; he gave only general testimony

27 describing the categories identified in DX676.  Such generic testimony merely describing the

28

1  allocated costs, without more, is insufficient.  Even the cases Samsung cites make clear that, at

2  the very least, "a defendant additionally must show that the categories of overhead *actually*

3  *contributed* to sales of the infringing work."  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,

4  772 F.2d 505, 516 (9th Cir. 1985); *see also Manhattan Indus., Inc. v. Sweater Bee by Banff Ltd.*,

5  885 F.2d 1, 7-8 (2d Cir. 1989) (rejecting fixed costs where the infringer did not indicate whether

6  and to what extent those costs were specifically attributable to producing the products at issue).

7  Samsung has provided no evidence that any of its alleged allocated costs actually contributed to,

8  or were directly attributable to, the manufacture or sale of the infringing products.

9  Having no evidence directly attributing any of its alleged allocated costs to any specific

10  infringing product, Samsung resorts to arguing against straw men.  First, Samsung

11  mischaracterizes Apple's motion as arguing for a rule against cost allocation methods.  (Opp. at

12  3:9-5:3.)  Apple makes no such argument.  There is no *per se* bar against allocating costs in the

13  infringer's profits context.  *See Frank Music*, 772 F.2d at 516 (explaining that a "reasonably

14  acceptable" allocation formula could be permissible in certain circumstances).  As explained

15  above, however, merely allocating costs is not enough to establish that the costs are deductible

16  under § 289; the infringer must prove that the allocated costs "actually contributed to the sales of

17  the infringing work."  *Id*.

18  The two principal cases on which Samsung relies do not suggest otherwise.  Rather, they

19  confirm that, when allocating costs, Samsung was required to establish the "nature and amount of

20  these costs, as well as their relationship to the infringing product."  *Bergstrom v. Sears, Roebuck*

21  *& Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) ("The relationship between the particular fixed

22  expenses which are sought to be deducted and the production or sale of the infringing product is a

23  central factor in determining the propriety of this deduction and the amount thereof."); *see also*

24  *Schnadig Corp. v. Gaines Mfg. Co.*, 620 F.2d 1166, 1173 (6th Cir. 1980) (explaining that

25  including as a cost "an overhead expense, in nowise caused [by producing the infringing product],

26  would be an improper inclusion").  The burden is usually met only with "extensive

27  documentation concerning the nature of the various expenses."  *Schnadig*, 620 F.2d at 1175.

28

Here, Samsung failed to present evidence that any allocated dollar in the categories generally described by Mr. Sheppard was attributable to the infringing products as opposed to the other dozens of products that Samsung sells.  Samsung's expert, Mr. Wagner, admitted as much when he testified that he was unaware of any evidence that any of the allocated expenses had in fact been incurred for the infringing products.  (*See, e.g.*, Dkt. 2843 at 1124:17-19 (admitting that he had not seen a single document that attributed any research and development costs for any of the infringing products); *id.* at 1125:2-5 (admitting that he had not seen a single document that attributed any advertising expense to any of the infringing products); *id.* at 1125:6-9 (admitting that he had not seen a single document that attributed any general administrative overhead to any of the infringing products).)

Samsung contends that it need not come forward with any such evidence because its allocated costs are "necessary" expenses.  (Opp. at 7.)  But the standard is not "all necessary expenses."  The standard is much more narrow and precise, and requires evidence that the expenses are "directly attributable" to the manufacture or sale of the infringing products.  Samsung's methodology would enable Samsung to deduct costs for products *without any evidence that those costs were actually incurred* in relation to the manufacture or sale of the infringing products.  Indeed, Mr. Wagner admitted that Samsung's cost document—DX676—identifies allocated costs without any support from any underlying documents.  For example, the document identifies tens of millions of dollars in marketing expenses that Samsung alleges are deductible, even though Mr. Wagner conceded that he had "not seen any actual ads run or print media related to the products at issue."  (Dkt. 2843 at 1128:1-2; *see also* Dkt. 2840 at 769:15-21 (Ms. Davis testifying that the advertising and marketing costs identified in Samsung's spreadsheets were "fixed" and that if "you took out the sales of . . . the infringing products, there's no reason to think, according to [DX676], that the advertising costs would change.").)[1]

---

[1] *Flat Slab Patents Co. v. Turner*, 285 F. 257 (8th Cir. 1922), is therefore easily distinguished.  In that case, the court concluded that an apportionment of advertising expenses was appropriately deducted from infringer's profits based on an "examin[ation] of the evidence, including examples of the advertising matter" which "show[ed] that the advertising dealt principally with the infringing [product]."  *Id.* at 278.

1    Similarly, Samsung sought to allocate tens of millions of dollars in research and development

2    expenses to the infringing products (DX676), again without any documentation showing that a

3    single dollar of that amount was spent on the infringing products.  (Dkt. 2843 at 1125:10-

4    1126:11; *see also* Dkt. 2840 at 700:3-13 (Ms. Davis testifying that the research and development

5    costs identified in Samsung's spreadsheets reflect costs for "future products" and not the

6    infringing products).)[2]

7            Samsung tries to justify its absence of evidence by raising another straw man—that Apple

8    is arguing for a line-by-line, penny-for-penny accounting of expenses.  (Opp. at 5:4-7.)  Apple

9    never suggested any such thing.  The cases are clear that, at the very least, Samsung was required

10   to come forward with evidence that its alleged allocated costs "actually contributed to the sales of

11   the infringing work." *Frank Music*, 772 F.2d at 516; *see also Manhattan Indus.*, 885 F.2d at 7-8

12   (defendant "must carry its burden of demonstrating a sufficient nexus between each expense

13   claimed and the sales of the unlawful goods").  Courts have avoided implementing broad rules

14   regarding the treatment of allocated costs because the principal "task is to see that the patentee

15   recover every dollar of advantage realized by the infringer . . . ." *Schnadig*, 620 F.2d at 1173.

16   Therefore, "[t]he burden of establishing the nature and amount of these costs, *as well as their*

17   *relationship to the infringing product*, is on the defendants." *Bergstrom*, 496 F. Supp. at 497

18   (emphasis added).  That standard does not impose an unfair burden on an adjudicated infringer; it

19   simply ensures that the infringer does not profit from its unlawful conduct. [3]

20

21

22

23

---

24   [2] The testimony on which Samsung relies regarding research and development costs is no
     different than the rest of Mr. Sheppard's testimony generically describing the types of costs
     incurred by Samsung.  Mr. Sheppard failed to specifically tie any research and development costs

25   to any of the infringing products.  (Dkt. 2841 at 963:2-25.)

26   [3] Accordingly, Samsung's attempt to justify its lack of evidence by comparing its
     accounting practices to Apple's (Opp. at 7 n.4) is misguided.  As Mr. Wagner put it, the law
     places a special burden on Samsung—an adjudicated design patent infringer—to prevent "unjust

27   enrichment." (Dkt. 2841 at 1019:1-14.)  Therefore, whether Samsung uses the same accounting
     practices as Apple is irrelevant to whether Samsung has met its burden of proving that its

28   allocated costs are directly attributable to the infringing products.

**B.   Granting Apple's Motion For JMOL Would Not Violate The Seventh Amendment.**

Samsung admits that the rule against additur does not apply when there is no dispute about the amount of damages at issue.  (Opp. at 11:16-21.)  This is such a case.  The only disagreement between the parties was whether Samsung was entitled to deduct its alleged operating expenses.  The amount of those expenses is not in dispute.  Indeed, in its own motion for JMOL, Samsung acknowledges that the amounts were not disputed and that the only debate was whether Samsung's allocated operating expenses were deductible.  (Dkt. 2882 at 37-38.)  Once the debate is resolved in Apple's favor, the only thing left to do is the arithmetic, *i.e.*, add the undisputed amount to the jury's award.  Yet in opposition to Apple's motion, Samsung contends that there is a dispute (although without describing what the dispute actually is).  Samsung cannot have it both ways.  As in *E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997), Samsung had the burden of proving an element that would reduce the total amount of damages—that the allocated expenses were directly attributable to the infringing products—and failed to do so.  *See Decato v. Travelers Ins. Co.*, 379 F.2d 796, 798 (1st Cir. 1967) ("[T]he constitutional rule against additur . . . is not violated in a case where the jury has properly determined liability and there is no valid dispute as to the amount of damages.  In such a case the court is in effect simply granting summary judgment on the question of damages." (citations omitted)).  Thus, the Court has the authority to increase the jury's award without running afoul of the Seventh Amendment.  *Id.*

Samsung further contradicts itself by claiming that whether its allocated costs were deductible was an issue of fact for the jury that the Court may not now second-guess.  (Opp. at 12.)  In its own motion for JMOL, however, Samsung takes the opposite position by asserting that the jury failed to properly make that determination *as a matter of law*.  (*E.g.*, Dkt. 2882 at 37 ("By refusing to answer the question of what operating expenses are deductible, the jury returned an improper compromise verdict."); *id.* at 38 ("the jury did not answer the question of what 'costs may be included as deductible expenses'" (citation omitted)).)  In any case, JMOL in Apple's favor is appropriate because the evidence introduced at trial permits only one reasonable

1   conclusion—that Samsung failed to meet its burden of proving that its allocated expenses were

2   directly attributable to the manufacture or sale of the infringing products.  *See* Fed. R. Civ. P.

3   50(b).

4          Finally, it is immaterial that Samsung has not "*conceded* that its gross profits represent[]

5   an undisputed minimum award if the jury or the Court rejected its method of allocating shared

6   costs."  (Opp. at 12 (emphasis added).)  Such an award is automatic by operation of law.  *See* 35

7   U.S.C. § 289 (infringer is liable "to the extent of [its] total profit"); *see also* Dkt. 2784 at 43

8   ("Apple is entitled to all profit earned by Samsung on sales of articles that infringe Apple's

9   design patents.  Profit is determined by deducting certain expenses from gross revenue . . .

10  Samsung has the burden of proving the deductible expenses.").  Because the record contains no

11  evidence that would have allowed a reasonable jury to deduct Samsung's alleged allocated costs,

12  the Court should grant JMOL and award Apple the full amount of infringer's profits requested at

13  trial.[4]

## III.   THERE IS NO REASON TO DELAY AWARDING SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST.

14

15         Despite the Court's admonition that it is time to "finally enter a judgment in this case so

16  that the Federal Circuit may review the *entire* case on appeal . . . as soon as possible" (Dkt. 2831

17  at 8), Samsung continually seeks delay and piecemeal resolution of the remaining issues,

18  inventing complications and procedural roadblocks where none exist.  (*See, e.g.*, Dkt. 2900 &

19  2901 (Samsung's motions for discovery and extensions regarding Apple's renewed motion for

20  permanent injunction); Dkt. 2913 (denying Dkt. 2900 & 2901).)  As Apple's motion showed, the

21  Court has ruled that Apple is entitled to supplemental damages and prejudgment interest and

22  determined the method for calculating the amounts due to Apple.  Samsung does not contest that

23  the formula set forth in the Declaration of Marylee Robinson (Dkt. 2876-3) accurately reflects the

24

25         [4] Samsung contends that Apple should not be permitted to argue that no reasonable jury
   could have found that Samsung proved its allocated costs were deductible under § 289 because it
26  did not make this argument following the first trial.  (Opp. at 7 n.2.)  However, Apple contended
   before (and still contends) that it is impossible to know what portion of infringer's profits the first
27  jury awarded given the nature of the verdict.  (Dkt. 2050 at 26-27.)  It is only because the second
   jury awarded the full amounts requested for certain products that it is possible to determine the
28  amount of infringer's profits that the second jury awarded.  (*See* Dkt. 2885-1 at 2 n.2.)

1   Court's method for calculating both supplemental damages and prejudgment interest.  Nor does

2   Samsung contend that it cannot promptly supply the additional unit sales for four products found

3   to infringe not previously produced.  Because Samsung no longer sells any of the product models

4   that the jury found to infringe, all that remains is for Samsung to supply the missing unit sales so

5   that straightforward calculations can be performed and the resulting amounts awarded.  (Mot. at

6   11-13.)  Samsung provides no valid reason for delay.

7         Samsung asserts that delaying the award until after an appeal will conserve resources

8   (Opp. at 13-14), but the efficient course is to calculate the award now, given that the Court has

9   determined the applicable formulas and there are no ongoing sales of the products found to

10  infringe.[5]  Samsung's argument assumes that it will prevail on appeal and that any award will be

11  invalidated.  But Samsung ignores that, if the judgment is affirmed without the Court's having

12  made the awards, the Court will have to conduct further proceedings sometime in the future when

13  the case would otherwise have been fully resolved and the further proceedings could give rise to

14  yet another appeal.  The minimal effort to complete the proceedings now will undoubtedly be far

15  less than what may be required if these issues are revived in the future and will allow all issues on

16  damages and relief to be resolved in a single appeal.

17        Samsung also contends that the Court cannot now award supplemental damages for

18  Samsung's post-verdict sales because Samsung "redesigned the accused products following the

19  August 2012 verdict," and the Court must determine whether the redesigned products infringe.

20  (Opp. at 14:14-20.)  Yet notwithstanding Samsung's similar arguments (Dkt. 2053 at 28), the

21  Court previously ruled that the open question is "the actual number of post-verdict sales."  (Dkt.

22

23        [5] In contrast, two of Samsung's cited cases had significant unresolved issues.  *See Eolas
    Techs. Inc. v. Microsoft Corp.*, No. 99 C 0626, 2004 WL 170334, at *8 (N.D. Ill. Jan. 15, 2004)
24  (court had not decided defendant's defenses and objections to damages period); *Itron v. Benghiat*,
    No. Civ. 99-501, 2003 WL 22037710, at *15-16, *18 (D. Minn. Aug. 29, 2003) (court was
25  prepared to award prejudgment interest but stayed order for an accounting "running through the
    duration of infringement" to avoid "potentially unnecessary expenditures of time and money in
26  preparing such an accounting").  In *Presidio Components, Inc. v. American Technical Ceramics
    Corp.*, No. 08-cv-335, 2013 WL 4068833, at *1, *9-16 (S.D. Cal. Aug. 12, 2013), the court
27  would have had to revisit supplemental damages after remand regardless of the outcome of the
    appeal because the defendant continued to make sales of the products found to infringe after the
28  initial award.

1   2271 at 5:27-28; *see id.* at 6:1 ("the parties can present evidence of the actual number of sales").)

2   Consistent with that ruling, all that remains to be determined is the actual number of sales.

3          Samsung's argument about redesigned products fails for the independent reason that, with

4   one relevant exception,[6] the declarations on which it relies do not state that it redesigned products

5   "following" the verdict.  (*See* Opp. 10 (citing Dkt. 2055, Choi Decl. ¶¶ 11-20; Dkt. 2060,

6   Kerstetter Decl. ¶¶ 8, 14-17; Dkt. 2075, Rowden Decl. ¶¶ 4-7).)  The Court should reject

7   Samsung's efforts to show that existing redesigns that were not presented to the jury do not

8   infringe and do not provide a basis for supplemental damages.[7]  First, to the extent that Samsung

9   chose not to bring existing redesigns to the jury's attention, Samsung waived any claim that they

10  are non-infringing.  (*Cf.* Dkt. 2635 at 2 ("Samsung was obligated to raise all of its

11  noninfringement contentions in advance of the 2012 trial.  Thus, Samsung's failure to raise its

12  Gem noninfringement contentions prior to the 2012 trial is itself sufficient to find that Samsung

13  forfeited the right to raise the issue now.").)

14         Second, to the extent that Samsung was barred from introducing evidence of design-

15  arounds regarding the '381 and '163 patents as a sanction for its discovery violations (Dkt. 898;

16  Dkt. 1106), Samsung should not now be permitted to rely on those redesigns to avoid

17  supplemental damages.  Although the Court left "[t]he issue of Samsung's right to offer design-

18  around evidence in any post-trial proceeding . . . for another day" (Dkt. 1106 at 4), the rationale

19   

20        [6] The sole relevant exception is a declarant's 2012 assertion that Samsung "*expects*" to begin producing ████████████████████ (Dkt. 2055 ¶ 20 (emphasis added).)  Samsung has offered no evidence of whether it actually followed through on that expectation, how any ████████████ compared with the "black" versions that it has always

21  marketed, or whether and how many ████████████ were ever sold.  Samsung is not entitled to delay an award of supplemental damages based on an unsubstantiated claim that it *expected* to

22  introduce an undefined ████████████ an infringing product, when it could have produced evidence sufficient to evaluate its claim when it filed its opposition.  Another declarant alleged a

23  post-verdict design-around for the '915 patent in the Galaxy S II (T-Mobile).  (Dkt. 2075 ¶ 6.) That alleged utility patent design-around is not relevant to supplemental damages because the

24  Court determined that the jury awarded only infringer's profits (*i.e.*, design patent damages) for that product, and that supplemental damages would be determined by carrying that award forward

25  to post-verdict sales.  (Dkt. 2271 at 5, 10, 22.)

26        [7] Evidence shows that redesigns were available or on the market before the August 24, 2012 infringement verdicts, including:  (1) white versions of the Galaxy S II (Dkt. 2388, Ex. B at

27  814:2-815:6); (2) alleged redesigns of the '381 patent and '163 patent based on source code withheld before the first trial (*see* Dkt. 898; Dkt. 1106); and (3) an alleged redesign of the '915

28  patent that Mr. Gray stated was available no later than July 2012 (Dkt. 2054-2 ¶ 31 & n.2).

1    of the sanctions orders applies equally to trial damages and supplemental damages.  As the Court

2    ruled, Samsung's unjustified failure to produce source code to Apple until long after Court-

3    ordered deadlines and the close of fact discovery left Apple unable to perform the "massive

4    undertaking" needed to counter Samsung's alleged design-arounds at trial and required preclusive

5    sanctions.  (Dkt. 898 at 8-9.)  Samsung should not be able to force Apple now to perform the

6    "massive undertaking" of reviewing and assessing source code that should have been produced

7    long before trial, or force the Court to make the findings of fact that would have been the

8    province of the jury had Samsung complied with its discovery obligations.[8]

9        Finally, Samsung's contention that Apple improperly seeks reconsideration of the Court's

10   March 1, 2013 Order (Opp. at 8-9) is incorrect.  Samsung cites no case holding that the Court's

11   statement "that it would be appropriate to delay the consideration of evidence of actual post-

12   verdict sales until after the completion of the appeals in this case" (Dkt. 2271 at 6:12-14) is an

13   order subject to Local Rule 7-9.  Even if the statement is properly characterized as an order, the

14   Court "has the inherent power to reconsider and modify its interlocutory orders prior to the entry

15   of judgment," *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005), and should do so here.  Ten

16   months have passed since the Court made that statement, and Apple has shown that it would be

17   prudent and efficient to include supplemental damages and prejudgment interest in the remaining

18   items to resolve so that this entire matter may be addressed on appeal.  The Court should order

19   Samsung to produce the remaining sales data necessary to complete the calculation of

20   supplemental damages.

21   **IV.    CONCLUSION**

22       For the reasons stated above and in Apple's initial post-retrial motion, Apple respectfully

23   requests that the Court grant JMOL in favor of Apple on the issue of Samsung's profits and enter

24   an order awarding Apple supplemental damages and prejudgment interest.

25   _____

26       [8] Samsung's cited cases are inapposite.  *See Syndia Corp. v. Gillette Co.*, No. 01-c-2485, 2002 WL 2012473, at *3 (N.D. Ill. Aug. 30, 2002) (patent holder sought discovery about products

27   defendant was "making or contemplating," which was "more than just an accounting as traditionally understood"); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1544-1545 (Fed.

28   Cir. 1987) (patent holder asserted infringement by modified devices under doctrine of equivalents).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

2   Dated: January 13, 2014                    WILMER CUTLER PICKERING
                                               HALE AND DORR LLP
3

4                                         By:  */s/ William F. Lee*
                                               WILLIAM F. LEE
5

6                                              Attorneys for Plaintiff
                                               APPLE INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28