# EXHIBIT A

Highly Confidential - Attorneys' Eyes Only

Page 1

1      UNITED STATES DISTRICT COURT
       STATE OF CALIFORNIA SAN JOSE DIVISION
2                    - - -
3

   APPLE INC., A CALIFORNIA
4  CORPORATION,
               Plaintiff,
5
     vs.                    NO. 11-CV-01846-LHK
6

   SAMSUNG ELECTRONICS CO.,
7  LTD., A KOREAN BUSINESS
   ENTITY; SAMSUNG ELECTRONICS
8  AMERICA, INC., A NEW YORK
   CORPORATION; SAMSUNG
9  TELECOMMUNICATIONS AMERICA,
   LLC, A DELAWARE LIMITED
10 LIABILITY COMPANY,
11             Defendants.
12
13
14

       VIDEOTAPED DEPOSITION OF YORAM (JERRY) WIND
15       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
               Philadelphia, Pennsylvania
16            Wednesday, November 7, 2012
17
18
19
20
21
22
23  Reported by:
24  Maureen Broderick, RPR
25  JOB NO. 55261

Highly Confidential - Attorneys' Eyes Only

Page 54

| | | |
|---|---|---|
| 1 | number will be five, five different measures. | 11:11 |
| 2 | Q    Now, in any of the real-life studies that | 11:11 |
| 3 | you've done with conjoint analysis, did the people | 11:11 |
| 4 | taking the survey use actual dollars as part of the | 11:11 |
| 5 | survey? | 11:11 |
| 6 | A    I don't recall actual dollars, but the way | 11:11 |
| 7 | that the majority of my studies are designed, it's | 11:11 |
| 8 | typically focused on indicating the likelihood of | 11:11 |
| 9 | buying a product or service or whatever we're | 11:11 |
| 10 | looking at as opposed to just selecting kind of | 11:12 |
| 11 | basically a choice-base conjoint. | 11:12 |
| 12 |         So we're looking at the likelihood of | 11:12 |
| 13 | buying.  And we are setting the, the setting in term | 11:12 |
| 14 | of the framing of the questions in a way that try to | 11:12 |
| 15 | make it as realistic as possible within the, kind of | 11:12 |
| 16 | the budget constraint of the individuals involved. | 11:12 |
| 17 | Q    But these are hypothetical transactions | 11:12 |
| 18 | that the consumer is making; they're not actually | 11:12 |
| 19 | paying with actual dollars for the choices, right? | 11:12 |
| 20 | A    Correct.  In most of these cases, that's | 11:12 |
| 21 | correct.  But you're working -- | 11:12 |
| 22 | Q    In fact, in every case that you've been | 11:12 |
| 23 | involved in, it's been a hypothetical transaction. | 11:12 |
| 24 | You've never done a conjoint survey involving actual | 11:12 |
| 25 | dollars where consumers had to spend from money that | 11:12 |

Case 5:11-cv-01846-LHK   Document 2925-2   Filed 01/16/14   Page 4 of 6

Highly Confidential - Attorneys' Eyes Only

Page 55

```
1    they had in making these choices, right?                   11:12
2        A    I'm trying to kind of recall the different        11:13
3    studies we've done over the years.  I definitely           11:13
4    would agree that the vast majority of the studies          11:13
5    are not asking for real dollars.                            11:13
6        Q    You can't remember even one that you've           11:13
7    ever done -- out of all the conjoint analyses that         11:13
8    you've done, you can't remember even one, sitting          11:13
9    here today, where the consumers used actual dollars?       11:13
10       A    Actually I can remember one.                      11:13
11       Q    One.  In how many years you've been doing         11:13
12   this, 35, 40?                                              11:13
13       A    Since 1970.                                       11:13
14       Q    So in over 40 years of doing these                11:13
15   studies, there's one that you can remember where           11:13
16   consumers used actual dollars; otherwise, it was           11:13
17   hypothetical transactions?                                 11:13
18       A    Well, the way we addressed the realism is         11:13
19   through the framing of the question, not by giving         11:13
20   them real dollars.                                         11:13
21       Q    And my question, Dr. Wind, is in over 40          11:13
22   years of doing these conjoint analyses, you can only       11:14
23   remember one that you've done where consumers used         11:14
24   actual dollars?                                            11:14
25       A    But actual dollar is not the only way to          11:14
```

Highly Confidential - Attorneys' Eyes Only

Page 56

1  assure the reality and the realism of the task as    11:14
2  opposed to play money.    11:14
3       Q    Great.  So you don't need to use actual    11:14
4  dollars in a conjoint survey to ensure the reality    11:14
5  and accuracy of the task and results, right?    11:14
6       A    Correct.  I did not say that you have to    11:14
7  use real dollars.    11:14
8       Q    And, in fact, you're not alone in this.    11:14
9  It's not as though you're the only person out there    11:14
10 who is not using actual dollars.  In fact, it's    11:14
11 extremely rare for anybody to use actual dollars in    11:14
12 a conjoint analysis, right?    11:14
13      A    Correct.    11:14
14      Q    And despite that, conjoint analyses are    11:14
15 used, as you said, all the time and are a fixture in    11:14
16 the commercial world and real-life decisions are    11:14
17 based on them?    11:14
18      A    Because the real dollar is not the measure    11:14
19 of the realism.  The measure of does it represent    11:14
20 market reality and allow consumers to make    11:15
21 meaningful decisions depends on the framing of the    11:15
22 question and the context you're providing them.    11:15
23      Q    Right.  And the fact that real dollars are    11:15
24 not used is not something that impacts the accuracy    11:15
25 or reliability of the study?    11:15

Highly Confidential - Attorneys' Eyes Only

Page 57

| | | |
|---|---|---|
| 1 | A    Correct.  Real dollars is not the factor. | 11:15 |
| 2 | The real factor is the realism of the framing of the | 11:15 |
| 3 | questions. | 11:15 |
| 4 | MR. KUWAYTI:  We've been going about an | 11:15 |
| 5 | hour.  Do you want to take a break? | 11:15 |
| 6 | THE WITNESS:  Real quick. | 11:15 |
| 7 | VIDEO OPERATOR:  This ends Videocassette | 11:15 |
| 8 | Tape No. 1 of the November 7, 2012 videotaped | 11:15 |
| 9 | deposition of Dr. Jerry Wind. | 11:15 |
| 10 | We're off the video record at 11:16 a.m. | 11:15 |
| 11 | (Brief recess.) | 11:15 |
| 12 | VIDEO OPERATOR:  This begins Videocassette | 11:29 |
| 13 | No. 2 of the November 7, 2012 videotaped | 11:29 |
| 14 | deposition of Dr. Jerry Wind. | 11:29 |
| 15 | We return to the video record at | 11:29 |
| 16 | 11:29 a.m. | 11:29 |
| 17 | BY MR. KUWAYTI: | 11:59 |
| 18 | Q    If you turn to paragraph 12 of your expert | 11:29 |
| 19 | report in this case, Dr. Wind. | 11:29 |
| 20 | A    (Witness complies.) | 11:29 |
| 21 | Q    It is entitled Materials Reviewed and | 11:29 |
| 22 | Research Team. | 11:29 |
| 23 | A    Yes. | 11:29 |
| 24 | Q    And it describes, it says that in | 11:29 |
| 25 | appendix B to your report you list materials that | 11:30 |