1                   UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                         SAN JOSE DIVISION

4

5

6      APPLE INC., A CALIFORNIA        )  C-11-01846 LHK
       CORPORATION,                    )
                                       )  SAN JOSE, CALIFORNIA
7                   PLAINTIFF,         )
                                       )  JANUARY 30, 2014
8              VS.                     )
                                       )  PAGES 1-95
9      SAMSUNG ELECTRONICS CO., LTD.,  )
       A KOREAN BUSINESS ENTITY;       )
10     SAMSUNG ELECTRONICS AMERICA,    )
       INC., A NEW YORK CORPORATION;   )
11     SAMSUNG TELECOMMUNICATIONS      )
       AMERICA, LLC, A DELAWARE        )
12     LIMITED LIABILITY COMPANY,      )
                                       )
13                  DEFENDANTS.        )
       _____)

14

15

16                   TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE LUCY H. KOH
17                 UNITED STATES DISTRICT JUDGE

18

19

20                  APPEARANCES ON NEXT PAGE

21

22     OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                   CERTIFICATE NUMBER 9595
23

24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

```
1

2        A P P E A R A N C E S:

3     FOR PLAINTIFF          MORRISON & FOERSTER
      APPLE:                 BY:  HAROLD J. MCELHINNY
4                                 RACHEL KREVANS
                             425 MARKET STREET
5                            SAN FRANCISCO, CALIFORNIA  94105

6
                             WILMER, CUTLER, PICKERING,
7                            HALE AND DORR
                             BY:  WILLIAM F. LEE
8                                 LAUREN B. FLETCHER
                             60 STATE STREET
9                            BOSTON, MASSACHUSETTS  02109

10                           BY:  MARK D. SELWYN
                             950 PAGE MILL ROAD
11                           PALO ALTO, CALIFORNIA  94304

12

13    FOR DEFENDANT          QUINN, EMANUEL, URQUHART,
      SAMSUNG:               OLIVER & HEDGES
14                           BY:  WILLIAM C. PRICE
                             865 SOUTH FIGUEROA STREET
15                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
16
                             BY:  KATHLEEN M. SULLIVAN
17                                WILLIAM B. ADAMA
                             51 MADISON AVENUE, 22ND FLOOR
18                           NEW YORK, NEW YORK  10022

19                           BY:  VICTORIA F. MAROULIS
                                  KEVIN B. JOHNSON
20                           555 TWIN DOLPHIN DRIVE
                             SUITE 560
21                           REDWOOD SHORES, CALIFORNIA  94065

22

23

24

25
```

```
1       SAN JOSE, CALIFORNIA                    JANUARY 30, 2014

2                     P R O C E E D I N G S

3          (COURT CONVENED AT 1:52 P.M.)

4              THE CLERK:  CALLING CASE NUMBER C-11-01846 LHK,

5    APPLE, INCORPORATED VERSUS SAMSUNG ELECTRONICS COMPANY,

6    LIMITED, ET AL.

7              MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.

8    HAROLD MCELHINNY AND RACHEL KREVANS OF MORRISON & FOERSTER FOR

9    APPLE, INC.

10             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE,

11   LAUREN FLETCHER, AND MARK SELWYN FROM WILMER, HALE FOR APPLE.

12             MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  BILL PRICE,

13   KATHLEEN SULLIVAN, WILLIAM ADAMS, AND VICTORIA MAROULIS FOR

14   SAMSUNG.

15             THE COURT:  OKAY.  GOOD AFTERNOON.

16             MS. SULLIVAN:  GOOD AFTERNOON, YOUR HONOR.

17             THE COURT:  LET'S HANDLE THE INJUNCTION FIRST AND

18   THEN I'LL ASK QUESTIONS ABOUT THE JMOL MOTIONS.

19             WHY DON'T WE -- LET ME START WITH SAMSUNG, A QUESTION, AND

20   THAT IS THE AVAILABILITY OF NON-INFRINGING ALTERNATIVES SORT OF

21   UNDERMINES APPLE'S CASE FOR THE IRREPARABLE HARM PRONG.

22             MS. SULLIVAN:  YES, YOUR HONOR.

23             THE COURT:  BUT THEN IT ALSO MAY UNDERMINE SAMSUNG'S

24   POSITION ON THE BALANCE OF HARMS PRONG BECAUSE THERE'S NO

25   INFRINGING SALES THAT WOULD BE STOPPED.  SO HOW DO WE DEAL WITH
```

```
 1      THAT SORT OF TENSION?

 2              MS. SULLIVAN:  YES, YOUR HONOR.  THE KEY ARGUMENT WE

 3      MAKE ON THE BALANCE OF HARMS IS NOT THAT WE'LL BE STOPPED FROM

 4      SELLING INFRINGING PRODUCTS.

 5          WE HAVE -- AS YOU KNOW, SAMSUNG IS NOT SELLING ANY

 6      ADJUDICATED PRODUCT.  ALL OF THE PRODUCTS THAT WOULD BE SUBJECT

 7      TO AN INJUNCTION, AS A PRACTICAL MATTER, WOULD BE NEW PRODUCTS.

 8      SO THERE HAVE BEEN NO SALES OF ANY INFRINGING OR ACCUSED

 9      PRODUCTS FOR OVER A YEAR.

10          AND YOU'RE RIGHT, THERE'S NO QUESTION THAT THERE'S --

11      WE'RE NOT STOPPING SAMSUNG FROM THE SALE OF PRODUCTS.

12          WHAT WE THINK IS THE HARM TO SAMSUNG IS THAT AN INJUNCTION

13      WOULD CREATE FEAR AND UNCERTAINTY FOR THE CARRIERS AND

14      RETAILERS WITH WHOM SAMSUNG HAS VERY IMPORTANT CUSTOMER

15      RELATIONSHIPS, BECAUSE AS YOU WILL RECALL, YOUR HONOR, FOR THE

16      BRIEF TENURE OF THE TAB 10.1 INJUNCTION, APPLE WENT OUT AND, IN

17      OUR VIEW, MISCHARACTERIZED THE INJUNCTION AND SOWED FEAR AND

18      UNCERTAINTY AND DOUBT IN THE CARRIERS AND RETAILERS AND CAUSED

19      THEM TO WONDER WHAT OTHER PRODUCTS THEY WOULD BE ABLE TO SELL

20      THAT MIGHT BE NOT COLORABLY DIFFERENT.

21          SO IN A NUTSHELL, THE BALANCE OF HARDSHIPS FACTOR TIPS IN

22      FAVOR OF SAMSUNG BECAUSE APPLE ISN'T BEING HARMED BY THE SALE

23      OF ANY ACCUSED PRODUCTS, BUT SAMSUNG WILL BE HARMED IF THERE'S

24      AN INJUNCTION THAT LEADS RETAILERS AND CARRIERS TO BE IN FEAR

25      THAT THEY MIGHT BE SUBJECT TO CESSATION ORDERS FOR THE PRODUCTS
```

1    NOT COLORABLY DIFFERENT.

2         TO PUT IT IN A NUTSHELL, YOUR HONOR, WHAT APPLE IS ASKING

3    YOU TO DO -- SINCE APPLE HAS CONCEDED, FOR THEIR BALANCE OF

4    HARDSHIPS ARGUMENT, THAT SAMSUNG IS NOT SELLING ANY ACCUSED

5    PRODUCTS, ALL THE PRODUCTS THAT THEY WOULD EVER RUN TO COURT TO

6    TELL YOU ABOUT IN A CONTEMPT PROCEEDING WOULD BE NEW PRODUCTS.

7         SO WHAT THEY'RE REALLY ASKING YOU TO DO IS TO USE THE

8    INJUNCTION AND THE CONTEMPT POWER OF THIS COURT AS A SHORTCUT

9    OR AN END RUN AROUND ACCUSING OUR NEW PRODUCTS AND PROVING A

10   CAUSAL NEXUS TO ANY HARM TO THEM OR DAMAGES TO THEM FOR A NEW

11   PRODUCT.

12        AND SO WE THINK THE BALANCE OF HARDSHIPS IS PLAINLY TIPPED

13   FURTHER IN SAMSUNG'S FAVOR SINCE YOUR HONOR FOUND IT NEUTRAL

14   BEFORE, AND WERE AFFIRMED BY THE FEDERAL CIRCUIT ON THAT,

15   BECAUSE THE ONLY PURPOSE OF AN INJUNCTION AT THIS POINT, THE

16   ONLY PURPOSE WHATSOEVER FROM APPLE'S POINT OF VIEW WOULD BE TO

17   TRY TO STOP OUR NEW, NON-ACCUSED PRODUCTS AS TO WHICH NO

18   INFRINGEMENT HAS EVER BEEN SHOWN.

19        AND YOUR COURT SHOULD NOT BE USED FOR THAT BECAUSE THAT'S

20   NOT THE PURPOSE OF YOUR COURT.

21            THE COURT:  SO THE QUESTION I HAD IS, I HAD RELIED ON

22   JUSTICE KENNEDY'S STATEMENT IN EBAY THAT YOU SHOULDN'T ENJOIN A

23   COMPLEX PRODUCT FOR A NON-CORE FEATURE IN THE FIRST ORDER, AND

24   IF THERE ARE NO LONGER ANY INFRINGING PRODUCTS, HOW DO I RELY

25   ON THAT?  I'M JUST SUPPOSED TO SPECULATE THAT APPLE WILL THEN

```
 1        TRY TO ENJOIN NEW PHONES?  AND THEN WE'LL BE IN THIS WHOLE

 2        DISPUTE ABOUT WHETHER IT'S COLORABLY DIFFERENT OR NOT?

 3                 MS. SULLIVAN:  THAT'S EXACTLY RIGHT, YOUR HONOR.

 4                 THE COURT:  IS THAT TOO SPECULATIVE?  WHAT IS THE

 5        CARRIER'S BELIEF?  SAMSUNG IS REPRESENTING THAT IT HAS ROCK

 6        SOLID DESIGN AROUNDS, SO WHY SHOULD THERE BE THIS FEAR --

 7                 MS. SULLIVAN:  WHY SHOULD THERE BE --

 8                 THE COURT:  -- IF THE CARRIERS BELIEVE SAMSUNG, THAT

 9        THE DESIGN AROUNDS ARE COMPLETELY SOLID?

10                 MS. SULLIVAN:  WELL, YOUR HONOR, WE DO BELIEVE THE

11        DESIGN AROUNDS ARE COMPLETELY SOLID.  BUT CARRIERS AND

12        RETAILERS ARE NOT IN A POSITION TO ASSESS THE RISK THAT THEY'LL

13        BE HAULED INTO COURT.

14             YOU HAVE BEFORE YOU, IT'S IN -- WE'VE ATTACHED IN THE

15        SMITH DECLARATION THE -- ALL THE MATERIALS YOU NEED TO SEE

16        ABOUT WHAT HAPPENED ON THE GROUND IN THE TAB 10.1 INJUNCTION.

17                 APPLE DID USE THAT INJUNCTION -- OF COURSE THAT INJUNCTION

18        DISAPPEARS BECAUSE THE JURY FINDS NO INFRINGEMENT ON THE

19        TAB 10.1, BUT WE HAVE EVIDENCE BEFORE THE COURT THAT APPLE

20        MISUSED THAT INJUNCTION TO TRY TO INTIMIDATE OUR CARRIERS AND

21        RETAILERS.

22             BUT ON THE EBAY POINT, YOUR HONOR, YOU WERE AFFIRMED ON

23        THAT QUITE CLEARLY BY THE FEDERAL CIRCUIT.  THE FEDERAL

24        CIRCUIT, CITING THE SAME PASSAGE FROM JUSTICE KENNEDY'S EBAY

25        CONCURRENCE AS YOU CITED, AFFIRMED YOU ON PUBLIC INTEREST.
```

1       THEY DID IT UNDER THE PUBLIC INTEREST FACTOR.

2               AND I THINK IT'S VERY IMPORTANT, YOUR HONOR, TO REMEMBER

3       THAT THE PUBLIC INTEREST IS GOING TO APPLY TO CONTEMPT

4       PROCEEDINGS AGAINST OUR NEW PRODUCTS, JUST AS MUCH AS THE

5       PUBLIC INTEREST WOULD FAVOR FREE COMPETITION AS TO PRIOR

6       PRODUCTS.

7               IN OTHER WORDS, IF ANYTHING, THE PUBLIC INTEREST IS

8       STRONGER IN AVOIDING AN INJUNCTION THAT WOULD BE USED NOT

9       AGAINST ANY ACCUSED PRODUCTS, BECAUSE NONE ARE BEING SOLD, BUT

10      ONLY AGAINST NEW PRODUCTS, NEW PRODUCTS.

11              BY THE WAY, THESE ARE NOT DESIGN AROUNDS THAT WERE PUSHED

12      ONTO OLD PRODUCTS.  ALL THAT WE ARE SELLING ARE NEW PRODUCTS.

13      THERE IS NO ACCUSED PRODUCT BEING SOLD.

14              THE PUBLIC INTEREST IS STRONGER UNDER THE EBAY LOGIC FOR

15      THOSE.  THEY'RE COMPLEX PRODUCTS AS TO WHICH -- WE WOULDN'T BE

16      TALKING ABOUT AN INFRINGING FEATURE BECAUSE NONE HAVE BEEN

17      PROVEN TO BE INFRINGING.  WE WOULD BE TALKING ABOUT SOMETHING

18      THAT IS SUPPOSEDLY NOT COLORABLY DIFFERENT FROM AN OLD

19      INFRINGING FEATURE.

20              THAT -- THE PUBLIC INTEREST IS STRONGER NOW THAN BEFORE.

21      THE BALANCE OF HARDSHIPS IS STRONGER NOW THAN BEFORE IN

22      SAMSUNG'S FAVOR.

23              IF ANYTHING, YOUR HONOR, THE SUPREME COURT, JUST LAST --

24      JUST THIS MONTH, IN FACT JUST LAST WEEK, IN THE MEDTRONICS

25      VERSUS MIKLOWSKI FAMILY CASE JUST SAID AGAIN THE PUBLIC HAS A

1    STRONG INTEREST IN MAKING SURE THAT THE PATENT DOES NOT GO

2    BEYOND THE SCOPE OF ITS LEGITIMATE MONOPOLY.

3         NOTHING COULD BE MORE AGAINST THAT PUBLIC INTEREST IN

4    MAKING SURE THAT A PATENT DOESN'T GO BEYOND THE SCOPE OF ITS

5    LEGITIMATE MONOPOLY.

6         JUSTICE KENNEDY, IN EBAY, THAT'S HIS POINT, TOO.

7         NOTHING WOULD DO THAT MORE THAN IF YOU WERE TO ENJOIN NEW

8    UNACCUSED PRODUCTS, NOT BECAUSE THEY ARE INFRINGING, BUT

9    BECAUSE APPLE ASSERTS THAT SOMETHING THAT'S NOT COLORABLY

10   DIFFERENT FROM SOMETHING THAT WAS INFRINGING MIGHT BE AT STAKE.

11        SO DOES THAT ANSWER YOUR HONOR'S QUESTION?  WE THINK

12   PUBLIC INTEREST AND BALANCE OF HARDSHIPS GET STRONGER IN

13   SAMSUNG'S FAVOR --

14        THE COURT:  UM-HUM.

15        MS. SULLIVAN:  -- BY THE FACT THAT YOU WOULD BE

16   HOLDING MINI TRIALS ON NEW PRODUCTS THAT HAVE NOT BEEN HELD TO

17   INFRINGE.

18        IN FACT, WE THINK IT WOULD CREATE A NEW LEGAL ISSUE FOR

19   YOU BECAUSE THE CAUSAL NEXUS STANDARD -- AND LET'S BE CLEAR.

20   THE FEDERAL CIRCUIT AFFIRMED YOU ON YOUR PERMANENT INJUNCTION

21   DENIAL WITH RESPECT TO VIRTUALLY EVERY SINGLE THING YOU WROTE

22   IN THAT OPINION.

23        THEY JUST SENT IT BACK ON THESE TWO VERY NARROW QUESTIONS

24   WHERE THEY WERE CLEANING UP THEIR OWN LANGUAGE IN APPLE II AND

25   APPLE I.  THEY SAID "CAUSAL NEXUS IS ABSOLUTELY REQUIRED FOR

```
 1    IRREPARABLE HARM.  IT IS PART OF IRREPARABLE HARM.  WE JUST

 2    THINK MAYBE PRICE PREMIUM COULD SHOW CAUSAL NEXUS IN SOME

 3    CASE" -- WE DON'T THINK IT DOES HERE -- "AND MAYBE

 4    LICENSING DISCUSSIONS HAVE TO BE VIEWED WITH MORE DETAIL."

 5         OTHERWISE THEY AFFIRMED YOU ON EVERYTHING.  AND THE

 6    POINT I --

 7              THE COURT:  MAY I ASK YOU ON THE LICENSING POINT, THE

 8    CIRCUIT SEEMED TO, YOU KNOW, DISTINGUISH IBM, HTC, NOKIA.

 9         SHOULDN'T I JUST SORT OF FOLLOW THE CIRCUIT AND SAY

10    THEY'RE NOT RELEVANT HERE BECAUSE THEY SORT OF WENT THROUGH

11    EACH ONE AND METICULOUSLY TRIED TO DISTINGUISH THEM?

12              MS. SULLIVAN:  THAT'S NOT CORRECT, YOUR HONOR.  WE

13    ACTUALLY THINK IF YOU FOCUS ON FOOTNOTE 7, WHICH IS THE MOST

14    IMPORTANT PART OF THE CIRCUIT'S OPINION, THEY SENT BACK TO YOU,

15    WITH FULL AND TOTAL DISCRETION ON YOUR PART, THE NEED TO

16    EVALUATE THE LICENSING DISCUSSIONS IN CONTEXT.

17         AND WE'VE PUT BEFORE YOU OVERWHELMING EVIDENCE THAT APPLE

18    HAS NOT CONTESTED.  THE BEST THAT APPLE HAS COME FORWARD WITH

19    IS A ONE PAGE -- A ONE PARAGRAPH CONCLUSORY DECLARATION FROM

20    MR. WATROS TO COUNTER THE OVERWHELMING EVIDENCE THAT WE'VE PUT

21    BEFORE YOU THAT THE LICENSING DISCUSSIONS BETWEEN APPLE AND

22    SAMSUNG, INCLUDING AFTER THE PERMANENT INJUNCTION DECISION,

23    HAVE INCLUDED DISCUSSIONS OF ALL OF THE UTILITY PATENTS AT

24    ISSUE IN THIS CASE.

25         AND, YOUR HONOR, WE'VE ALSO PUT IN OVERWHELMING EVIDENCE
```

1    BEFORE YOU -- AND I REFER YOU ESPECIALLY TO THE KEN KOREA

2    DECLARATION, I WON'T, OF COURSE, GO INTO ANY CONFIDENTIAL

3    DETAILS, BUT YOUR HONOR CAN READ OUR BRIEFING -- WE'VE PUT IN

4    OVERWHELMING EVIDENCE THAT THE ALLEGED DISTINCTIONS, THE

5    ALLEGED CARVE OUTS, THAT THERE WERE NO ALLEGED CARVE OUTS IN

6    THESE RECENT DISCUSSIONS.  THE DISCUSSIONS WERE ABOUT

7    MONETIZING ALL THREE OF THE PATENTS AT CASE.

8         SO IF YOU JUST LOOK AT -- ALL THREE OF THE PATENTS IN THIS

9    CASE.  I'M SORRY.

10        IF YOU JUST LOOK AT THE APPLE/SAMSUNG DISCUSSIONS ALONE,

11   YOU COULD DECIDE THE ADEQUACY OF MONETARY DAMAGES IN SAMSUNG'S

12   FAVOR BECAUSE YOU HAVE AN OVERWHELMINGLY SPECIFIC AND DETAILED

13   DECLARATION FROM MR. KOREA FROM SAMSUNG SAYING APPLE OFFERED TO

14   LICENSE ALL OF THE PATENTS AT ISSUE IN THE CASE AT THE

15   INJUNCTION STAGE, AND YOU HAVE ONE PARAGRAPH OF CONCLUSORY

16   STATEMENTS FROM MR. WATROS.

17        BUT, YOUR HONOR, IF YOU THINK THAT YOU HAVE TO RESOLVE A

18   DISPUTE ABOUT WHO'S RIGHT ABOUT WHAT WENT ON IN THOSE LICENSING

19   DISCUSSIONS, THEN WE WOULD RESPECTFULLY SUBMIT YOU MUST HAVE AN

20   EVIDENTIARY HEARING.  YOU WOULD HAVE TO HAVE AN EVIDENTIARY

21   HEARING WHERE YOU ASSESSED THE CONTENT OF THE APPLE/SAMSUNG

22   LICENSING DISCUSSIONS.

23        IN OTHER WORDS, YOUR HONOR, WE BELIEVE YOU CAN'T RULE

24   AGAINST US --

25             THE COURT:  UM-HUM.

1          MS. SULLIVAN:  -- AT THIS STAGE WITHOUT AN

2     EVIDENTIARY HEARING.

3          BUT WE DO BELIEVE YOU COULD RULE FOR US IN DENYING THE

4     INJUNCTION WITH RESPECT TO THE LICENSING FACTOR, THE MONETARY

5     DAMAGES ADEQUACY FACTOR, BASED ON THE RECORD YOU HAVE, BECAUSE

6     THE KOREA DECLARATION IS OVERWHELMINGLY SPECIFIC.

7          AND YOUR HONOR, LET ME REFER YOU TO JUST TWO MORE THINGS

8     IN THE RECORD ON LICENSING.

9          THE COURT:  LET ME ASK YOU ONE OTHER QUESTION.  I

10    DON'T THINK THAT I WOULD DO THIS, BUT THERE IS SOME CASE LAW,

11    AT LEAST IN THE NINTH CIRCUIT, THAT THERE'S A SORT OF SLIDING

12    SCALE IN INJUNCTIONS, THAT YOU DON'T HAVE TO NECESSARILY FIND

13    ALL FOUR FACTORS.  IF IT'S WEAK ON SOME, IF SOME OF THE OTHER

14    FACTORS ARE STRONGER --

15          MS. SULLIVAN:  RIGHT.

16          THE COURT:  -- THAT COULD COMPENSATE --

17          MS. SULLIVAN:  RIGHT.

18          THE COURT:  -- CITING JUSTICE GINSBURG'S CONCURRENCE.

19          MS. SULLIVAN:  RIGHT.

20          THE COURT:  SO WHAT'S YOUR VIEW ON THAT?  DO YOU

21    THINK ALL FOUR FACTORS HAVE -- WELL, LET ME ASK YOU, DO YOU

22    THINK THERE'S A SLIDING SCALE FOR INJUNCTIONS OR NOT?

23          MS. SULLIVAN:  NO, YOUR HONOR.  WE THINK EBAY, IN THE

24    PATENT INJUNCTION CONTEXT, IS QUITE CLEAR.  IT IS A CONJUNCTIVE

25    TEST.

1        APPLE HAS A VERY HIGH BURDEN TO SHOW ALL FOUR FACTORS,

2    IRREPARABLE HARM AND INADEQUACY OF MONETARY DAMAGES AND BALANCE

3    OF HARDSHIPS AND PUBLIC INTEREST, AND IF WE SHOW ANY ONE OF

4    THOSE FACTORS IN OUR FAVOR, YOU CAN'T ISSUE THE INJUNCTION.

5        THAT'S WHAT WE BELIEVE IS THE PROPER READING OF EBAY AND

6    THE FEDERAL CIRCUIT DECISIONS INTERPRETING THE MEANING OF EBAY,

7    THAT IT'S A CONJUNCTIVE TEST.

8        BUT WE THINK THAT IN THIS CASE, YOU HAVE NO NEED TO

9    REVISIT TWO OF THE FACTORS.  BALANCE OF HARDSHIPS, YOU COULD

10   BELIEVE IT NEUTRAL OR MOVE THE DIAL TOWARD US.  YOU SHOULD

11   LEAVE PUBLIC INTEREST IN OUR FAVOR.

12        AND WE THINK THAT YOU REALLY HAVE A VERY NARROW -- YOU CAN

13   DECIDE THIS VERY NARROWLY.  YOU CAN SAY, "I NOW HAVE THE

14   EVIDENCE THAT FOOTNOTE 7 TELLS ME TO LOOK AT ABOUT LICENSING

15   DISCUSSIONS.  APPLE AND SAMSUNG HAVE HAD NEGOTIATIONS.  I'M

16   ALLOWED TO LOOK AT THEM BECAUSE RULE 408 DOESN'T EXCLUDE THEM.

17   THEY'RE NOT BEING INTRODUCED TO SHOW LIABILITY.  THEY'RE BEING

18   INTRODUCED TO SHOW ANOTHER FACTOR, WHICH IS WILLINGNESS TO

19   LICENSE," AND YOU'RE ALLOWED TO LOOK AT THEM.

20        AND THE LOCAL RULE DOESN'T FORECLOSE YOU LOOKING AT THEM

21   BECAUSE IT'S ABOUT COURT ORDERED MEDIATION.  SO YOU HAVE CARTE

22   BLANCHE TO LOOK AT THOSE APPLE/SAMSUNG LICENSING NEGOTIATIONS

23   THAT, AS RECENTLY AS JANUARY AND JULY OF 2013, INVOLVED APPLE

24   PUTTING ALL OF ITS THREE UTILITY PATENTS ON THE TABLE FOR

25   LICENSING.

```
 1              WHETHER --
 2                  THE COURT:  IS THERE SOME NUMBER THAT'S HIGH ENOUGH
 3      THAT MEANS LEGAL REMEDIES ARE SUFFICIENT IF WE GET INTO THE
 4      BILLIONS?
 5                  MS. SULLIVAN:  ANY NUMBER AS HIGH AS WHAT WE'RE
 6      TALKING ABOUT IN THIS CASE IS PER SE SUFFICIENT, YOUR HONOR.
 7              (LAUGHTER.)
 8                  THE COURT:  OKAY.
 9                  MS. SULLIVAN:  BUT IF YOU DON'T AGREE WITH THAT --
10      YOUR HONOR, THE REAL POINT HERE IS THAT, YOU KNOW, YOU -- I
11      DON'T THINK THERE'S AN ALGORITHM OR A SIMPLE NUMBER.
12          WHAT WE THINK IS IMPORTANT HERE IS THAT APPLE HAS SHOWN
13      WILLINGNESS TO MONETIZE, AND IT'S SHOWN THOSE IN NEGOTIATIONS
14      WITH US.
15              AND YOUR HONOR, THERE'S TWO DATA POINTS I WANT TO REFER
16      YOU TO AS WELL, AND AGAIN TO AVOID ANY CONFIDENTIALITY CONCERN,
17      LET ME SUGGEST YOU LOOK AT OUR BRIEFS WITH RESPECT TO THE
18      OCTOBER 2010 DISCUSSIONS BETWEEN APPLE AND SAMSUNG, AND AT
19      THOSE WE HAVE TWO SOURCES TO SHOW THAT APPLE WAS WILLING TO
20      MONETIZE ITS PATENTS IN RELATION TO US, SAMSUNG -- NOT TO
21      SOMEBODY ELSE, BUT TO US -- AND THAT IS THE ADMISSION BY
22      MR. LUTTON AND THE POWERPOINT PRESENTATION.
23          I WON'T GO INTO DETAILS, IT'S JUST THAT THOSE ARE TWO
24      PIECES OF EVIDENCE THAT CONTRADICT WHAT MR. TEKSLER SAID HERE
25      AT TRIAL AND THAT MAKE -- AND DOCUMENTARY EVIDENCE AND
```

```
 1       ADMISSIONS THAT MAKE CLEAR THAT APPLE IS WILLING TO MONETIZE.

 2            BUT I DON'T THINK I ANSWERED YOUR HONOR'S QUESTIONS ON HTC

 3       AND NOKIA.  AND AGAIN, I DON'T WANT TO DISCUSS ANY CONFIDENTIAL

 4       INFORMATION.  I WOULD JUST REFER YOUR HONOR TO THE BRIEFS TO

 5       SHOW THAT WE HAVE SHOWN METICULOUSLY HOW THE HTC AND NOKIA

 6       LICENSES, WHICH APPLE ADMITS INCLUDED ALL THE PATENTS AND, IN

 7       ONE CASE, ONE OF THE PATENTS, WE'VE SHOWN IN DETAIL HOW WHAT

 8       APPLE SAYS WERE CARVE OUTS OF THESE PATENTS -- FROM THOSE

 9       LICENSES, IN FACT, WERE NOT CARVED OUT.  AND I DON'T WANT TO GO

10       INTO THAT IN OPEN COURT.  WE JUST REFER YOU TO THE BRIEFS.

11            SO, YOUR HONOR, WE THINK WE'VE GIVEN YOU FOUR DISTINCT

12       BASES TO FIND THAT MONETARY DAMAGES ARE ADEQUATE HERE MEASURED

13       BY APPLE'S WILLINGNESS TO LICENSE:  OCTOBER 2010, APPLE'S

14       ADMISSIONS AND DOCUMENTARY EVIDENCE; JANUARY AND JULY OF 2013,

15       THE APPLE/SAMSUNG NEGOTIATIONS WHERE YOU HAVE MR. KOREA'S

16       DECLARATION WHICH, IN DETAIL, SHOWS THAT APPLE IS PUTTING ITS

17       PATENTS ON THE TABLE, MIGHT CHART DIFFERENTIAL PRICES, BUT THAT

18       DOESN'T MATTER, WHAT MATTERS IS THAT PRICES WERE AT STAKE; AND

19       THEN THE HTC AND NOKIA LICENSES, PROPERLY UNDERSTOOD, ARE NOT

20       MATERIALLY DIFFERENT FROM THIS CASE.

21            SO YOU COULD DECIDE FOR US -- WE THINK YOU COULD BE DONE

22       WITH -- ONCE YOU FIND ANY OF THE FACTORS AGAINST APPLE.  BUT

23       RIGHT NOW WE THINK THAT YOU CAN FIND ON THIS RECORD THAT PUBLIC

24       INTEREST IS IN SAMSUNG'S FAVOR, THE BALANCE OF HARDSHIPS IS IN

25       SAMSUNG'S FAVOR, AND WE THINK YOU CAN FIND ON THIS RECORD THAT
```

1    THE LICENSING DISCUSSIONS, THAT FACTOR, MONETARY DAMAGES

2    ADEQUACY, COMES OUT IN SAMSUNG'S FAVOR.

3         WE THINK THE ONE THING YOU CAN'T DO IS RULE AGAINST

4    SAMSUNG BASED ON THE LICENSING DISCUSSIONS WITHOUT AN

5    EVIDENTIARY HEARING BECAUSE YOU WOULD NEED TO HEAR, WELL, WHICH

6    IS IT?  DID YOU PUT YOUR PATENTS ON THE TABLE FOR MONEY OR NOT?

7         NOW, YOU'VE HEARD FROM APPLE IN THE BRIEFS, AND YOU MAY

8    HEAR AGAIN TODAY, OH, YOU CAN'T INTRODUCE LICENSE AGREEMENTS IF

9    THEY WERE THE PRODUCT OF SETTLEMENT.

10        BUT THAT'S INCORRECT.  WE'VE GIVEN YOU PLENTY OF CASES IN

11   THE BRIEFS THAT SHOW THAT MERELY BECAUSE A LICENSE IS ISSUED TO

12   SETTLE A LITIGATION, AS OFTEN HAPPENS IN PATENT MATTERS, AND I

13   KNOW THAT YOUR HONOR WOULD PREFER TO ENCOURAGE THAT IN PATENT

14   MATTERS, BUT THE MERE FACT THAT A LICENSE IS GIVEN IN A

15   SETTLEMENT OF LITIGATION DOESN'T MEAN THAT IT DOESN'T SHOW A

16   WILLINGNESS TO LICENSE FOR MONEY.  SO THAT -- THAT DOESN'T TAKE

17   IT OUT OF THE PICTURE.

18        IT'S ADMISSIBLE.

19        AND SO FAR WE'VE JUST TALKED ABOUT ALL THE FACTORS OTHER

20   THAN CAUSAL NEXUS, BUT WE THINK THAT WE HAVE AN OVERWHELMING

21   AND DECISIVE CASE, EVEN UNDER APPLE III, AGAINST IRREPARABLE

22   HARM.

23        SO I CAN CONTINUE IF YOUR HONOR IS SATISFIED ON THE OTHER

24   THREE FACTORS, BUT LET'S SEE IF YOU HAVE QUESTIONS ON THE OTHER

25   THREE FACTORS FIRST.

```
 1              THE COURT:  NO.  BUT IF I MAY ASK APPLE SOME
 2      QUESTIONS ON THE FACTORS THAT WE HAVE COVERED.
 3              LET ME ASK WITH REGARD TO -- LET'S TALK ABOUT THE
 4      OCTOBER 2010 PRESENTATION.
 5              DOESN'T IT SEEM LOGICAL THAT THE PRESENTATION THAT APPLE
 6      MADE IN AUGUST OF 2010 TRYING TO ENCOURAGE SAMSUNG TO TAKE A
 7      LICENSE LISTING CERTAIN PATENTS, WOULDN'T IT BE LOGICAL THAT
 8      THOSE WOULD HAVE BEEN INCLUDED IN THE OCTOBER 2010 OFFER?
 9              MR. LEE:  YOUR HONOR, CAN I ANSWER IN TWO WAYS, ONE
10      WITH THE LEGAL FRAMEWORK, AND SECOND, THE INFERENCES YOU CAN
11      DRAW?
12              THE COURT:  OKAY.
13              MR. LEE:  BECAUSE MS. SULLIVAN DREW YOUR ATTENTION TO
14      FOOTNOTE 7 OF THE FEDERAL CIRCUIT'S DECISION, AND I THINK THERE
15      ARE TWO IMPORTANT ASPECTS OF IT.
16              THE FIRST THING IS THAT FOOTNOTE HAS NOTHING TO DO WITH
17      IBM OR HTC OR NOKIA.  SO IN ANSWER TO YOUR HONOR'S QUESTION OF
18      DID THE FEDERAL CIRCUIT PAINSTAKINGLY GO THROUGH THESE OTHER
19      LICENSES, THEY NOT ONLY DID, YOUR HONOR, THEY WERE THE SUBJECT
20      OF THE ORAL ARGUMENT WHERE THEY SPECIFICALLY WANTED TO KNOW,
21      WERE THEY LITIGATION SETTLEMENT?  OR WERE THEY COMPETITORS?
22              SO FOOTNOTE 7 CONCERNS ONLY THE DISCUSSIONS BETWEEN APPLE
23      AND SAMSUNG.  AND THE KEY SENTENCE IS THE LAST SENTENCE, YOUR
24      HONOR, WHICH DOESN'T SAY THAT YOU HAVE TO DECIDE -- THAT IN
25      ORDER TO FIND IRREPARABLE HARM TO BALANCE THE HARDSHIPS, TO
```

1    DECIDE WHETHER MONETARY DAMAGES ARE ADEQUATE, THAT YOU HAVE TO

2    DECIDE WHETHER THERE WAS A LICENSING OFFER OR DISCUSSION.

3         IT SAYS, TO THE EXTENT THAT YOU WANT TO RELY UPON THE

4    LICENSING OFFER AS DEMONSTRATING THE INADEQUACY OF MONETARY

5    DAMAGES, THEN YOU WOULD HAVE TO RESOLVE THE FACTUAL ISSUE.

6         SO GO TO THE FACTUAL ISSUE, YOUR HONOR.  THAT PRESENTATION

7    DOESN'T MENTION THE PATENTS BY NAME.  MR. LUTTON'S TESTIMONY --

8    AND I THINK THIS IS KEY -- THE SENTENCE THAT THEY RELY UPON

9    WHICH REFERS TO IT BEING ON THE TABLE, IF YOU JUST READ THE

10   PRECEDING PARAGRAPH, IT SAYS, "WE DIDN'T TALK ABOUT IT.  WE HAD

11   IN MIND THAT IT COULD ENCOMPASS A FAIR AMOUNT, BUT WE NEVER PUT

12   ANYTHING -- THERE WAS NO OFFER ON THESE PATENTS."

13        SO THE RECORD YOU HAVE BEFORE YOUR HONOR, TO TAKE WHAT

14   MS. SULLIVAN HAS TALKED ABOUT, HAS A SERIES OF DISCUSSIONS

15   PRE-LITIGATION WHERE THE VERY POWERPOINT THAT SHE SAYS IS SO

16   DISPOSITIVE DOESN'T MENTION THE PATENTS BY NAME.

17        NOW, WERE THEY TALKING BROADLY?  FOR SURE.  THAT'S WHAT

18   THE WITNESSES -- MR. TEKSLER SAID SO.  BUT THEN MR. TEKSLER GOT

19   ON THE STAND DURING THE TRIAL AND HE TOLD THE JURY AND THE

20   COURT PRECISELY WHAT WE WERE DOING, THAT THERE WERE CERTAIN

21   PATENTS THAT WERE OFF LIMITS, AND THERE WERE CERTAIN ONES THAT

22   THEY WERE WILLING TO LICENSE, AND THE DISCUSSION WAS TRYING TO

23   DETERMINE WHETHER THERE WAS A BASIS TO REACH AN AGREEMENT.

24        THAT'S THE SAME REASON AND THE ARGUMENT WE HAD WITH YOUR

25   HONOR ON THE HTC.  THERE WERE CERTAIN -- ON THE HTC LICENSE.

1       THERE ARE CERTAIN PATENTS THAT ARE OFF LIMITS.

2           SO YOU HAVE AN OCTOBER 2010 PRESENTATION THAT DOESN'T HAVE

3       THE PATENTS IDENTIFIED.  YOU HAVE MR. LUTTON'S TESTIMONY WHICH,

4       IF ALL YOU'RE DOING IS READING THE PRECEDING PARAGRAPH, SAYS WE

5       DIDN'T TALK ABOUT IT.

6           THEN, YOUR HONOR, YOU DO HAVE A SERIES OF DISCUSSIONS THAT

7       FOLLOW WHERE THERE IS SOME DISAGREEMENT BETWEEN MR. KOREA ON

8       THE ONE HAND AND MR. WATROUS ON THE OTHER HAND OF WHAT

9       HAPPENED.

10          THOSE DISCUSSIONS OCCURRED AFTER THE LITIGATION COMMENCED.

11      THEY OCCURRED IN AN EFFORT TO RESOLVE LITIGATION.  SOMETIMES,

12      YOUR HONOR, THEY OCCURRED BECAUSE YOUR HONOR ENCOURAGED THEM TO

13      OCCUR.

14          AND THEY'VE CONTINUED RIGHT UP UNTIL, AS YOUR HONOR KNOWS.

15          THERE ARE THREE IMPORTANT THINGS --

16          THE COURT:  THEY'RE GOING ON NOW, OR THEY'RE NOT

17      GOING ON UNTIL FEBRUARY 19TH?

18          MR. LEE:  THEY'RE GOING ON IN THE PERIOD OF TIME THAT

19      WE REPRESENTED, YOUR HONOR.

20          THE COURT:  THAT'S NOT AN ANSWER, BUT THAT'S OKAY.

21      GO AHEAD.

22          MR. LEE:  THE ANSWER IS ACTUALLY THERE ARE MEETINGS

23      GOING ON TO PREPARE FOR THE MEETINGS.

24          THE COURT:  ALL RIGHT.

25          MR. LEE:  IS THAT AN ANSWER?

```
 1              THE COURT:  ONLY LAWYERS CAN DO THAT.

 2          (LAUGHTER.)

 3              MR. LEE:  IN ANY EVENT, THERE ARE THREE IMPORTANT

 4      ASPECTS.  THESE ARE JUST DISCUSSIONS, MOST OF THEM, TO RESOLVE

 5      LITIGATION BROADLY.

 6              THE SECOND IS, AS YOUR HONOR HAS SAID IN YOUR OWN RULINGS,

 7      THE IDEA THAT YOU COULD USE DISCUSSIONS TO RESOLVE THE

 8      LITIGATION ON AN AMICABLE AND REASONABLE BASIS, TO PRECLUDE

 9      SOMEONE WHO HAS PREVAILED AFTER TWO JURY TRIALS FROM GETTING

10      INJUNCTIVE RELIEF WOULD LEAD TO THE REALLY PERVERSE RESULT THAT

11      NO PLAINTIFF WHO WAS REALLY INTERESTED IN GETTING INJUNCTIVE

12      RELIEF WOULD EVER ENGAGE IN MEANINGFUL SETTLEMENT DISCUSSION

13      BECAUSE THE BITE BACK WOULD BE YOU COULD NOT GET AN INJUNCTION.

14              SO THE POLICY WOULD BE EXACTLY THE OPPOSITE OF WHAT YOU

15      WANT TO ENCOURAGE.

16              AND THE LAST THING IS THIS:  THIS IS ALL IN THE CONTEXT --

17      THIS IS ALL IN THE CONTEXT OF THE INADEQUACY OF MONETARY

18      DAMAGES, THAT ELEMENT OF EBAY.

19              THE ONLY ISSUE THAT THE COURT OF APPEALS DECISION FOCUSES

20      THE COURTS ON IS, IS THE LICENSING ACTIVITY THAT YOUR HONOR

21      ADDRESSED IN YOUR FIRST OPINION SUFFICIENT TO DEMONSTRATE THAT

22      MONETARY DAMAGES ARE INADEQUATE?

23              SO IF WE TAKE THE BACKDROP OF YOUR HONOR'S OPINION, WE

24      TAKE THE FACT THAT I THINK THAT THE FEDERAL CIRCUIT HAS TOLD US

25      THAT IBM, NOKIA, HTC ARE NOT SUFFICIENTLY COMPARABLE TO
```

1      DEMONSTRATE A WILLINGNESS TO LICENSE, AND ALL ELSE WE HAVE IS

2      ONE OCTOBER 2010 MEETING AND SOME POST-LITIGATION DISCUSSIONS.

3          THAT'S NOT -- THE IDEA THAT THAT'S A DEFINITIVE

4      DEMONSTRATION THAT WE'RE WILLING TO LICENSE IS ACTUALLY THE

5      OPPOSITE OF THE CONCLUSION THAT WE THINK YOU SHOULD DRAW.

6          WHAT YOUR HONOR KNOWS IS WE BROUGHT THE SUIT IN APRIL OF

7      2011.  THE PURPOSE WAS TO VINDICATE THE INTELLECTUAL PROPERTY

8      RIGHTS.  IT WASN'T TO GET A LICENSE.

9          AND WE'VE CONSISTENTLY SOUGHT TO DO THAT, AND THAT'S WHY,

10     THAT'S WHY THE FEDERAL CIRCUIT SAYS, IN FOOTNOTE 7, IF YOU'RE

11     GOING TO RELY UPON IT, YOU HAVE TO RESOLVE IT.  THERE'S NO

12     DIRECTIVE THAT YOU HAVE TO RESOLVE IT BECAUSE YOU CAN LOOK AT

13     THIS LICENSING ACTIVITY.  YOUR HONOR KNOWS ALL THE DIFFERENT

14     COMPETITORS.  WE HEARD ABOUT THEM IN THE FIRST TRIAL.  WE HEARD

15     ABOUT THEM IN THE SECOND TRIAL.

16         IN THAT CONTEXT, THE FACTS YOU HAVE BEFORE YOU ARE JUST

17     TWO SETS:  A SET OF LICENSES THAT THE FEDERAL CIRCUIT HAS TOLD

18     US ARE NOT SUFFICIENT TO DEMONSTRATE THE INADEQUACY OF MONETARY

19     DAMAGES, AND THESE LICENSING DISCUSSIONS.

20             THE COURT:  CAN I ASK YOU TO ADDRESS MS. SULLIVAN'S

21      POINT ON PUBLIC INTEREST, THAT I HAD RELIED LAST TIME ON THE

22      FACT THAT THERE WERE STILL SOME PRODUCTS THAT HAD BEEN FOUND

23      INFRINGING BY THE FIRST JURY ON SALE --

24             MR. LEE:  RIGHT.

25             THE COURT:  -- AND RELIED ON JUSTICE KENNEDY'S

1    CONCURRENCE.  IN A WAY IT'S SORT OF SHIFTED BECAUSE THOSE

2    PRODUCTS ARE NO LONGER ON SALE.  THAT INTEREST MAY OR MAY NOT

3    BE THERE.

4         BUT WHAT ABOUT MS. SULLIVAN'S POINT THAT NOW WE'RE

5    COMPLETELY DEALING WITH NEW PRODUCTS THAT NO JURY HAS

6    CONSIDERED, THAT THERE HAS BEEN NO DISCOVERY ON?  WOULD IT BE,

7    IN FACT, WORSE NOW TO IMPOSE AN INJUNCTION ON THOSE PRODUCTS?

8              MR. LEE:  NO.  AND, YOUR HONOR, YOU ANSWERED THE

9    QUESTION AND THE FEDERAL CIRCUIT ANSWERED THE QUESTION.  YOUR

10   HONOR ANSWERED THE QUESTION AT PAGE 6 OF YOUR ORIGINAL ORDER

11   WHERE YOU SAID, CITING THE SUPREME COURT DECISION IN ALLEN,

12   "BUT THE LAW ON THIS POINT IS CLEAR.  A DEFENDANT'S VOLUNTARY

13   CESSATION OF ILLEGAL BEHAVIOR DOES NOT MOOT A REQUEST FOR AN

14   INJUNCTION."

15        THAT'S THE FIRST PART OF THE ANALYSIS.

16        THE SECOND PART OF THE ANALYSIS IS AT PAGE 1370 OF THE

17   FEDERAL CIRCUIT'S OPINION.

18        THE INJUNCTION THAT WE'RE SEEKING IS AN INJUNCTION THAT

19   ENJOINS INFRINGING ACTIVITY.  THE JURY HAS DETERMINED NOW --

20   THE JURY HAS DETERMINED ONCE THAT THERE HAS BEEN ACTIVITY THAT

21   INFRINGES THREE UTILITY PATENTS.  THE INJUNCTION WOULD ENJOIN

22   THAT ACTIVITY.

23        AND AS YOUR HONOR HAS CORRECTLY SAID, IT'S BEEN THE LAW

24   FOR DECADES THAT SEEKING INFRINGING ACTIVITY IS NOT SUFFICIENT

25   TO AVOID AN INJUNCTION.

1      THE QUESTION OF WHETHER YOU REACH NEW PRODUCTS IS WHETHER

2   THEY ARE COLORABLY DIFFERENT OR NOT.  YOUR HONOR IS NOT ASKED

3   TO ADJUDICATE THAT NOW.

4      BUT IF YOU LOOK AT 1370 OF THE FEDERAL CIRCUIT'S OPINION,

5   YOUR HONOR, THEY SPECIFICALLY ADDRESS THE QUESTION OF WHETHER

6   AN INJUNCTION, ENTERED AFTER INFRINGING ACTIVITY, FAIRLY

7   EXTENDS TO THAT WHICH IS NOT COLORABLY DIFFERENT, AND THEY SAY

8   IT DOES.

9      NOW, THIS IS AT A POINT WHERE THEY'RE ACTUALLY COMPARING

10  COMPETING READINGS OF A PORTION OF YOUR HONOR'S OPINION, BUT

11  WHAT THEY SAY IS, "WE AGREE WITH APPLE THAT THESE FACTORS ARE

12  RELEVANT TO WHETHER MONETARY DAMAGES WILL COMPENSATE APPLE FOR

13  SAMSUNG'S INFRINGEMENT, AND THE DISTRICT COURT ERRED BY FAILING

14  TO CONSIDER THEM."

15     THAT'S ON THE LICENSE PORTION.

16     AND THEN THEY WENT ON TO TALK ABOUT WHETHER NOT COLORABLY

17  DIFFERENT WAS THE APPROPRIATE WAY TO GET THERE AND THEY SAID IT

18  IS.

19     SO THE INJUNCTION WOULD EXTEND TO INFRINGING ACTIVITY.

20     TO THE EXTENT THEY DON'T INFRINGE, THERE'S NO PROBLEM, AND

21  THEY'RE REPRESENTING -- THEY'VE REPRESENTED TO YOU AND TO US

22  THAT THEY NO LONGER INFRINGE.

23     TO THE EXTENT THAT THE INJUNCTION EXTENDS TO INFRINGING

24  ACTIVITY AND THAT WHICH IS NOT COLORABLY DIFFERENT, THAT'S JUST

25  CONSISTENT WITH WHAT THE FEDERAL CIRCUIT LAW HAS BEEN.  IT IS

```
 1    TO AVOID AN INFRINGER FROM MAKING MINOR QUIPS TO A PRODUCT THAT
 2    STILL INCORPORATES THE FEATURE, OR SOMETHING THAT'S NOT
 3    COLORABLY DIFFERENT FOR INFRINGEMENT PURPOSES.  IT'S --
 4         THE COURT:  SO HOW WOULD IT WORK?  THERE WOULD BE A
 5    MINI TRIAL ON EVERY NEW PRODUCT WHERE YOU WOULD NEED TO
 6    EXCHANGE DISCOVERY AND EXPERT DISCOVERY AND POSSIBLY CLAIM
 7    CONSTRUCTION?
 8         MR. LEE:  NO.  I ACTUALLY CAN GIVE YOU AN EXAMPLE,
 9    YOUR HONOR, A REAL WORLD EXAMPLE.
10         THE COURT:  UM-HUM.
11         MR. LEE:  ONE OF THE CASES WE'VE CITED TO YOU AT
12    DIFFERENT POINTS IN TIME IS THE BROADCOM/QUALCOMM CASE OUT OF
13    THE CENTRAL DISTRICT AND JUDGE SELNA.  THERE WAS A JURY VERDICT
14    FOR BROADCOM ON THE THREE PATENTS; THERE WAS AN INJUNCTION
15    ENTERED ON TWO OF THE PATENTS; AND THERE WERE THREE CONTEMPT
16    PROCEEDINGS THAT AROSE FROM WHETHER PRODUCTS WERE ON THE MARKET
17    THAT WERE NOT COLORABLY DIFFERENT OR FELL WITHIN THE SCOPE OF
18    THE INJUNCTION.
19         NOW, I'M DOING THIS FROM MEMORY, I HAVEN'T LOOKED AT IT
20    FOR A WHILE, BUT THE ORDER IN WHICH JUDGE SELNA ADDRESSED
21    THINGS IS HE REQUIRED THE PLAINTIFF, US HERE, BROADCOM THERE,
22    TO MAKE A SHOWING SUFFICIENT FOR HIM TO ISSUE AN ORDER TO SHOW
23    CAUSE.
24         IF THERE WAS A SUFFICIENT SHOWING THAT THERE HAD BEEN A
25    VIOLATION OF THE INJUNCTION, THEN HE WOULD ISSUE THE ORDER TO
```

1    SHOW CAUSE, AND HE HAD A VERY BRIEF PERIOD OF, LIKE, TWO WEEKS

2    OF DISCOVERY, AND THEN A HEARING, AND THEN HE MADE A DECISION.

3         AND THE CONTEMPT PROCEEDING UNDER AN INJUNCTION HAS

4    DIFFERENT BURDENS OF PROOF.  THE PLAINTIFF'S BURDENS ARE AT

5    LEAST AS CHALLENGING AS THEY ARE FOR THE DISTRICT COURT, AND HE

6    MADE A DECISION, AND HE THREE TIMES FOUND THE DEFENDANT TO BE

7    IN CONTEMPT, THERE WAS A FOURTH HEARING, AND THE CASE SETTLED.

8         BUT THAT WAS THE TRUNCATED PROCEEDING, AND I THINK THAT'S

9    VERY TYPICAL.  IT'S -- THE PERSON WHO HAS THE INJUNCTION, OR

10   THE PROTECTION OF THE INJUNCTION, HAS TO GIVE YOUR HONOR A

11   SUFFICIENT SHOWING THAT YOU SHOULD ISSUE AN ORDER TO SHOW CAUSE

12   OR HAVE ANY KIND OF A HEARING.

13        THEN THERE IS A PERIOD OF VERY, VERY BRIEF DISCOVERY.

14   THERE SHOULDN'T BE CLAIM CONSTRUCTION BECAUSE IT'S THE SAME

15   CLAIM, THE SAME PATENT, AND IT'S JUST A QUESTION OF WHETHER IT

16   IS THE SAME OR NOT COLORABLY DIFFERENT, AND THAT'S VERY

17   CONSISTENTLY HOW INJUNCTIONS HAVE BEEN ADDRESSED.

18        THE COURT:  CAN I JUMP TO THE IRREPARABLE HARM,

19   CAUSAL NEXUS QUESTION?

20        MR. LEE:  SURE.

21        THE COURT:  SAMSUNG CONTENDS THAT DR. HAUSER DIDN'T

22   TAKE INTO CONSIDERATION ANY NON-INFRINGING ALTERNATIVES AND

23   THAT HIS WILLINGNESS TO PAY FACTORS ARE REALLY OVERINFLATED

24   BECAUSE THEY JUST TAKE A LOOK AT ONE FACTOR, BOUNCE BACK, AND

25   COMPARE IT TO THE ABSENCE OF BOUNCE BACK, VERSUS SOME OTHER

```
1        REALLY DESIRABLE AND PERHAPS MUCH MORE VALUABLE FEATURE.

2            HOW DO YOU WANT TO RESPOND TO THAT?  IF I ASSUME THAT HE

3    DIDN'T, WHICH I DON'T THINK HE DID --

4            MR. LEE:  YEAH.

5            THE COURT:  -- HOW AM I SUPPOSED TO TAKE THAT INTO

6    ACCOUNT?

7            MR. LEE:  YEAH.  WELL, YOUR HONOR, I THINK THE RECORD

8    BEFORE YOU SHOWS THAT HE DID MUCH MORE.

9            AND I KNOW THAT YOUR HONOR RECEIVED THE HAUSER SURVEY FOR

10   THE '630 CASE.

11           THE COURT:  UM-HUM.

12           MR. LEE:  IT'S BASICALLY THE SAME.

13           BUT REMEMBER, YOUR HONOR, THAT DR. HAUSER SAID, FIRST,

14   WORKING THROUGH A SURVEY GROUP, HE DID A SERIES OF INTERVIEWS

15   WHICH WAS TO IDENTIFY A SET OR A GROUP OF FEATURES OR

16   ATTRIBUTES THAT MIGHT BE IMPORTANT TO THE PURCHASER OF A PHONE,

17   AND THEN USING THEM, HE SET UP THE CONJOINT SURVEY.

18           NOW, THIS IS A SURVEY THAT'S VERY WELL RECOGNIZED, USED

19   ALL THE TIME IN THE REAL WORLD.  HE'S USED IT FOR GENERAL

20   MOTORS, PROCTER AND GAMBLE, A SERIES OF FOLKS THAT YOUR HONOR

21   SAW ON THE SLIDE, AND HE DID IT THE SAME WAY HERE.

22           NOW, HAVING IDENTIFIED IN THE FIRST PART OF THE SURVEY THE

23   SERIES OF FEATURES THAT HE COULD USE AS THE FEATURES THAT WERE

24   THE ONES HE WANTED TO TEST, HE DESIGNED THE SECOND PART OF THE

25   SURVEY, WHICH IS, I THINK, WHAT YOUR HONOR HAS SEEN.
```

1    AND BECAUSE OF THE MANNER IN WHICH THE SURVEY IS DONE, THE

2   DIFFERENT PERMUTATIONS AND COMBINATIONS OF THE FEATURES HE WAS

3   TESTING AND THE OTHER FEATURES HE WAS USING ACTUALLY GAVE, AS

4   HE TESTIFIED DURING THE TRIAL, 24,000 DIFFERENT POSSIBILITIES,

5   DIFFERENT COMBINATIONS, AND THAT'S WHAT HE TESTED.

6    AND THE BEST PROOF, YOUR HONOR, THAT THIS IS WELL

7   RECOGNIZED, THE VERY BEST PROOF THAT -- APART FROM THE FACT

8   THAT IT'S USED EVERY DAY IN THE REAL WORLD -- THAT IT MEASURES

9   MARKET VALUE IS -- LET ME READ YOU THIS, YOUR HONOR.

10    YOU MAY RECALL THAT IN THE FIRST TRIAL, WITH THE CLAIMS

11   GOING BOTH WAYS, YOUR HONOR, NEAR THE END OF THE TRIAL, SAMSUNG

12   CALLED A SURVEY EXPERT, DR. SUKUMAR, TO TESTIFY ABOUT THIS

13   CONJOINT SURVEY THAT HE HAD DONE TO IDENTIFY THE FEATURES IN

14   SAMSUNG PATENTS AND WHETHER THEY DEMONSTRATED A WILLINGNESS TO

15   PAY OR A CAUSAL CONNECTION.

16    AND HERE'S WHAT HE SAID AT THE TRIAL TRANSCRIPT 3093.

17    "QUESTION:  SIR, WHAT ASSIGNMENT DID YOU RECEIVE IN THIS

18   CASE?

19    "ANSWER:  I WAS ASKED BY COUNSEL AND BY DR. VINCE O'BRIEN

20   TO CONDUCT A USAGE STUDY," SO HE'S REFERRING TO THE CONJOINT

21   STUDY, "ON THREE SAMSUNG PATENTS AND ALSO TO UNDERSTAND THE

22   WILLINGNESS TO PAY OR WHAT WE CALL MARKET VALUE OF THESE

23   ATTRIBUTES IN THE PATENT."

24    HE'S RIGHT.  HE SAID TO THE JURY THE SAME THING THAT

25   DR. HAUSER SAID.

```
 1          AND THIS FOCUS -- WHAT SAMSUNG HAS TRIED TO DO IS CONVINCE

 2    YOUR HONOR THAT THERE WERE JUST THREE FEATURES TESTED WITH

 3    THREE OTHER FEATURES.  IF YOUR HONOR HAS NOW SEEN THE SURVEY,

 4    IT'S MUCH MORE COMPLICATED THAN THAT.

 5          AND, IN FACT, THIS QUESTION OF HOW MANY FEATURES YOU CAN

 6    TEST WAS ADDRESSED BY DR. HAUSER, WHO SAID YOU CAN'T TEST TOO

 7    MANY.

 8              THE COURT:  BUT HOW ARE WE SUPPOSED TO ACCOUNT FOR

 9     ALL OF THOSE UNTESTED FEATURES?

10              MR. LEE:  YOUR HONOR, I THINK IF THE COURT CONSIDERS

11     HIS TESTIMONY, HE TELLS YOU BY SELECTING THE INTERFERING

12     FEATURES THE WAY HE DID IT IN THE FIRST PART OF THE STUDY, THAT

13     THEN GIVES HIM SOME CONFIDENCE HE'S GOT THE RIGHT BALANCE.

14          AND IN FACT, IF YOU HAVE TOO MANY, IT WON'T WORK.

15          AND I THINK ONE OF THE BEST SOURCES I CAN REFER YOU TO,

16     OTHER THAN THE TRIAL TESTIMONY, IS MAGISTRATE JUDGE SPERO'S

17     OPINION IN THE TV INTERACTIVE CASE.  IT'S AT 929 F.SUPP.2D

18     1006, AND AT PAGE 1027, MAGISTRATE JUDGE SPERO TAKES ON

19     PRECISELY THE ISSUE SAMSUNG IS RAISING AND SAID, "NO, EVERYBODY

20     IN THE FIELD RECOGNIZES YOU CAN ONLY DEAL WITH A DISCRETE

21     NUMBER PRACTICALLY, AND SIX OR FEWER," WHICH IS WHAT DR. HAUSER

22     SAID, "IS WHAT'S RECOGNIZED AS THE RIGHT WAY TO DO IT."

23          MAYBE THE BEST INDICATION THAT HE DID IT THE RIGHT WAY AND

24     THE MORE COMPLETE WAY IS DR. SUKUMAR WHO, AGAIN, TESTIFIED TO

25     THE JURY, USED NO CONFOUNDING FEATURES.  HE JUST USED THE
```

```
1    THREE.
2         BUT I THINK THE KEY ON DR. HAUSER IS THIS, YOUR HONOR --
3    AND BOTH MS. SULLIVAN AND I WERE ASKED BY THE FEDERAL CIRCUIT
4    ABOUT DR. HAUSER.  WE WERE BOTH ASKED ABOUT HIS SURVEY.  THIS
5    IS A WELL RECOGNIZED METHODOLOGY USED ON A DAILY BASIS IN THE
6    REAL WORLD TO IDENTIFY, TO QUOTE DR. SUKUMAR, "THE MARKET VALUE
7    OF AN ATTRIBUTE."
8         THAT'S WHAT DR. HAUSER DID.  HE DID IT IN TWO PARTS, ONE
9    TO IDENTIFY THE FEATURES HE WOULD TEST, ONE TO DO WITH HIS
10   3,000 PERSON TEST.
11         THE COURT:  BUT HOW CAN THAT BE THE MARKET VALUE WHEN
12    IT GENERALLY EXCEEDS THE ACTUAL PRICE OF THE DEVICE?  IF YOU
13    HAD A --
14         MR. LEE:  YOUR HONOR, THERE ARE TWO ANSWERS TO THAT,
15    BOTH OF WHICH WERE IN THE EVIDENCE.
16         THE COURT:  OKAY.
17         MR. LEE:  WHAT DR. HAUSER SAID IN THE TRIAL A YEAR
18    AND A HALF AGO WAS THESE AMOUNTS DEMONSTRATE A WILLINGNESS TO
19    PAY, AND THAT WAS THE ISSUE THAT WE DISCUSSED WITH THE FEDERAL
20    CIRCUIT IS, DO THESE CONJOINT ANALYSES DEMONSTRATE A
21    WILLINGNESS TO PAY?  DO THEY DEMONSTRATE THINGS IN AN ABSOLUTE
22    NUMBER?  HE SAID HE WASN'T USING THEM FOR THAT PURPOSE THERE.
23         BUT YOUR HONOR WILL ALSO RECALL, AND IF YOU'VE TAKEN THE
24    SURVEY --
25         THE COURT:  BUT HOW ARE YOU SUPPOSED TO THEN CONCLUDE
```

1      FROM THERE THAT THAT SHOWS WHAT IS DRIVING CONSUMER DEMAND?

2      HOW DO YOU MAKE THAT LEAP?

3                  MR. LEE:  WELL, YOUR HONOR, LET ME SAY TWO THINGS.

4                  THE COURT:  UM-HUM.

5                  MR. LEE:  FIRST IS THE QUESTION IS WHETHER THERE

6      IS -- THE WAY THE FEDERAL CIRCUIT HAS ARTICULATED THE QUESTION

7      IS, IS THERE A CONNECTION BETWEEN THE PATENTED FEATURES AND

8      IRREPARABLE HARM?  THAT'S WHAT WE'RE FOCUSSING ON RIGHT NOW.

9          AND THE PHRASE "A CONNECTION" WAS INTENTIONAL.  IT WAS

10     SOMETHING THAT WAS BRIEFED TO THE FEDERAL CIRCUIT.  AND, IN

11     FACT, WE WERE ASKED DIRECTLY THE QUESTION, I WAS, "DO YOU

12     CONCEDE THAT THERE HAS TO BE A CONNECTION?"

13         AND WE SAID YES, THERE HAS TO BE A CONNECTION, BUT IT

14     DOESN'T HAVE TO BE THE DRIVER.

15         AND WHAT THE FEDERAL CIRCUIT SAYS IS IF YOU DEMONSTRATE A

16     WILLINGNESS TO PAY, YOU HAVE DEMONSTRATED -- THAT IS EVIDENCE

17     OF A CONNECTION.

18         AND THE FEDERAL CIRCUIT ACTUALLY SAID TWO THINGS ON THIS

19     THAT ARE SORT OF IMPORTANT I THINK.  THE FIRST IS THEY

20     ENCOURAGED ALL OF US TO LOOK AT THE COMPLETE BODY OF EVIDENCE.

21     THEY SAID COPY EVIDENCE ALONE IS NOT SUFFICIENT.  THEY SAID

22     EASE OF USE SURVEYS ALONE ARE NOT SUFFICIENT.

23                 THE COURT:  UM-HUM.

24                 MR. LEE:  THEY SAID THAT HAUSER, LOOKING AT THE VERY

25      SAME SURVEY YOUR HONOR IS CONCERNED WITH NOW, IS IMPORTANT.

```
 1        AND THEN THE LAST THING THEY SAID IS, WE'LL SEND IT BACK
 2   TO THE DISTRICT COURT SO YOU COULD CONSIDER ALL OF THE
 3   EVIDENCE, USE OF USE, SURVEYS, COPYING, COPYING OF THE SPECIFIC
 4   FEATURES, DR. HAUSER'S SURVEY, AND DETERMINE WHETHER THERE WAS
 5   A CONNECTION.
 6        THE COURT:  SO ARE WE SUPPOSED TO IGNORE THEN THAT
 7   THE MARKET VALUE OF A SMALL SET OF FEATURES EXCEEDS THE BASE
 8   PRICE OF THE PHONE?  ARE WE SUPPOSED TO IGNORE THAT?  OR HOW
 9   ARE WE SUPPOSED TO ACCOUNT FOR OTHER FEATURES OF THE PHONE THAT
10   WOULD ADD VALUE AND --
11        MR. LEE:  YOUR HONOR, I DON'T HAVE THE PRECISE PAGE
12   CITATION.
13        THE COURT:  UM-HUM.
14        MR. LEE:  BUT IF YOU RECALL, DR. HAUSER -- FIRST, THE
15   SURVEY, IF YOU LOOK AT THE SURVEY, SAYS YOU'RE BUYING A PHONE.
16        THE COURT:  UM-HUM.
17        MR. LEE:  AND THEN YOU'RE GOING TO BUY A TWO YEAR
18   PLAN.  SO THE TOTAL COST OF THE PHONE IS THE COST OF THE PHONE
19   PLUS THE TWO YEAR PLAN.
20        SO WE'RE NOT COMPARING $39 TO $190 PHONE.  WE'RE COMPARING
21   $39 TO A $139 PHONE, PLUS THE COST OF YOUR TWO YEAR PLAN.
22        AND THE '630 SURVEY, WHICH I LOOKED AT LAST EVENING,
23   SPECIFICALLY TELLS YOU YOU'RE DOING THAT.
24        AND DR. HAUSER, I THINK ON CROSS-EXAMINATION, SAID --
25        THE COURT:  WELL, WHAT LAW SAYS YOU'RE SUPPOSED TO
```

```
 1      COMPARE THE MARKET VALUE OF THE FEATURE TO THE PRICE OF THE

 2      PHONE PLUS THE CARRIER PHONE SERVICE FOR TWO YEARS?

 3              MR. LEE:  THE ANSWER IS NONE, AND NONE SAYS THAT YOU

 4      HAVE TO USE DR. HAUSER TO DETERMINE ACTUAL PRICE.

 5          AND IN FACT --

 6              THE COURT:  OKAY.  SO THERE'S NOTHING THAT SAYS

 7      THAT'S THE RIGHT DENOMINATOR TO CONSIDER, THE MARKET VALUE

 8      FEATURE?

 9              MR. LEE:  YEAH.  I THINK, YOUR HONOR, THE WAY I WOULD

10      SAY IT IS WHAT THE FEDERAL CIRCUIT HAS SAID IS THE RIGHT FACTOR

11      TO CONSIDER IS WILLINGNESS TO PAY.

12              THE COURT:  UM-HUM.

13              MR. LEE:  AND DOES THE HAUSER SURVEY DEMONSTRATE

14      WILLINGNESS TO PAY?

15          AND THE FEDERAL CIRCUIT WENT THROUGH THAT WITH THE SAME

16      METICULOUS -- IN THE SAME METICULOUS DETAIL IT DID THE

17      LICENSES.

18          AND IF YOUR HONOR CONSIDERS THE OPINION AT 1367 TO '68,

19      IT'S ABOUT WILLINGNESS TO PAY.  IT'S NOT ABOUT ACTUAL PRICE.

20          AND DR. HAUSER EXPLAINED IN HIS TESTIMONY BACK IN AUGUST

21      OF 2012 THAT THESE NUMBERS HELP DEMONSTRATE WILLINGNESS TO PAY.

22          AND AGAIN, YOUR HONOR, YOU DON'T HAVE TO TAKE MY WORD FOR

23      IT.  YOU DON'T HAVE TO TAKE DR. HAUSER'S WORD FOR IT.

24              DR. SUKUMAR DID THE SAME THING.  HE DID THE SAME THING.

25              EVERY EXPERT WHO THEY HAVE OFFERED TO YOU HAS PERFORMED
```

1    CONJOINT ANALYSIS, ANALYSES MEASURING THE WILLINGNESS TO PAY.

2    NONE OF THEM, EXCEPT FOR ONE THAT DR. NGUYEN DID, HAS EVER USED

3    ACTUAL DOLLARS, WHICH IS ONE OF THEIR ARGUMENTS.  I MEAN, EVERY

4    ARGUMENT THEY MAKE TO YOU TO CRITICIZE DR. HAUSER IS, AS HE

5    SAYS IN HIS REBUTTAL DECLARATION, SOMETHING THAT THEY'VE DONE

6    THEMSELVES.  AND DR. SUKUMAR DID IT SITTING ON THE STAND IN THE

7    SAME TRIAL.

8         SO WHAT SAMSUNG IS ASKING YOU TO DO IS TO TAKE SURVEY

9    RESULTS THAT NOW HAVE BEEN HEARD BY TWO JURIES, GONE THROUGH

10   CROSS-EXAMINATION BY TWO JURIES, IN OUR VIEW CREDITED BY TWO

11   JURIES GIVEN THE DAMAGES AMOUNT, AND TO SAY THAT'S NOT

12   CREDIBLE, OR THAT'S NOT SUFFICIENT, TOGETHER WITH THE COPYING

13   EVIDENCE, TOGETHER WITH SAMSUNG'S OWN DOCUMENTS SHOWING THEY

14   COPIED THESE FEATURES, TOGETHER WITH THE SURVEY EVIDENCE,

15   SURVEY COMPANIES THAT SAMSUNG HIRED ITSELF, AND SAY THAT THAT'S

16   NOT SUFFICIENT TO MAKE A CONNECTION, EVEN THOUGH, IN THE SAME

17   TRIAL, WHEN THEY WERE TRYING TO MAKE A CONNECTION, THEY USED

18   EXACTLY THE SAME SURVEY.

19        WHAT WE WOULD SUGGEST -- I THINK THAT THE HEADLINE OF WHAT

20   THE FEDERAL CIRCUIT WAS SAYING ON IRREPARABLE HARM IS YOU HAD

21   FOUND IRREPARABLE HARM.  THEY WERE COMPETITORS.  THERE WAS LOSS

22   DAMAGE FROM THE SALES.  THERE WAS DAMAGE IN THE ECOSYSTEM.

23        THEY ACCEPTED THAT.  WE THINK THAT WAS CORRECT.

24        THE QUESTION WAS, IS THERE A CONNECTION?  AND THEIR

25   GUIDANCE WAS, CONSIDER THIS COLLECTION OF EVIDENCE TOGETHER,

1        AND CONSIDER THE PATENTS TOGETHER.

2             AND I -- I THINK THAT THERE ARE REALLY TWO ISSUES THAT

3        THEY IDENTIFIED THAT LEAD INEXTRICABLY TO THE ENTRY OF A

4        PERMANENT INJUNCTION.  ONE IS, IS THERE A CONNECTION?  AND THEY

5        CREDIT HAUSER AND THEY SAY YOU CAN CONSIDER THAT TOGETHER WITH

6        THE COPYING EVIDENCE AND THE SURVEY EVIDENCE.

7             THE SECOND IS, DOES THE LICENSING ACTIVITY SOMEHOW

8        DEMONSTRATE THAT MONETARY DAMAGES ARE ADEQUATE?  AND IT DOES

9        NOT.

10            AND THE LAST POINT I WOULD MAKE IS THIS AND THEN I'LL MOVE

11       THE FLOOR BACK:  WHEN THERE'S BEEN A JURY VERDICT THAT 23

12       PRODUCTS INFRINGE THREE PATENTS, WHEN THERE'S BEEN A

13       DETERMINATION THAT THE COMPETING PARTIES ARE COMPETITORS, WHEN

14       THERE'S BEEN A DETERMINATION BY YOUR HONOR THAT THERE ARE LOST

15       DOWNSTREAM SALES AND DAMAGE TO THE ECOSYSTEM, WHEN THERE'S BEEN

16       A DETERMINATION BY YOUR HONOR THAT THOSE DAMAGES CANNOT BE

17       COMPENSATED BY MONEY DAMAGES, THE NATURAL AND INEXORABLE RESULT

18       IS AN INJUNCTION AS THE FEDERAL CIRCUIT HAS SAID.

19            AND JUSTICE KENNEDY WASN'T SAYING ANYTHING DIFFERENT.

20       JUSTICE KENNEDY'S CONCURRENCE NEEDS TO BE READ IN THE CONTEXT

21       OF THE IMMEDIATELY PRECEDING CONCURRING OPINION, AND IT WAS BY

22       CHIEF JUSTICE ROBERTS.

23            AND IF YOU PUT THE TWO TOGETHER, HERE'S WHAT THEY SAID.

24       CHIEF JUSTICE ROBERTS SAID, "IN THE NORMAL CASE, THE WINNER OF

25       AN INFRINGEMENT CASE GETS TO RECLAIM EXCLUSIVITY AND GETS THE

```
 1        INJUNCTION."

 2              JUSTICE KENNEDY SAID, "YES, BUT THERE'S THIS CATEGORY OF

 3        CASES WITH NON-PRACTICING ENTITIES, AND PRODUCTS WITH MULTIPLE

 4        DIFFERENT FEATURES AND THE ANALYSIS MIGHT NOT BE THE SAME."

 5              WE ARE NOT A NON-PRACTICING ENTITY, AND THE COLLECTION OF

 6        FEATURES THAT HAVE BEEN FOUND TO INFRINGE ARE FAR DIFFERENT

 7        THAN WHAT JUSTICE KENNEDY WAS DISCUSSING.

 8              THE COURT:  LET ME JUST ASK YOU A CLARIFYING QUESTION

 9        REAL QUICK.  SO APPLE'S POSITION IS THAT THE HAUSER CONJOINT

10        SURVEY SHOWED DEMAND FOR THE PATENTED FEATURE, BUT DO NOT IN

11        AND OF THEMSELVES SHOW THAT THE FEATURE DRIVES CONSUMER DEMAND,

12        THAT YOU HAVE TO LOOK AT THE CONJOINT SURVEY, PLUS THE OTHER

13        EVIDENCE, WHETHER IT'S WHAT YOU DESCRIBED, COPYING EVIDENCE OR

14        ANYTHING ELSE, TO SHOW THAT THE FEATURE IS DRIVING CONSUMER

15        DEMAND?  IS THAT RIGHT?

16              MR. LEE:  I DON'T THINK I -- AND I'M NOT TRYING TO BE

17        A LAWYER OR BE DIFFICULT, YOUR HONOR.  I THINK THE WAY I WOULD

18        SAY IT IS THAT --

19              THE COURT:  UM-HUM.  WELL, LET ME JUST ASK YOU.  DOES

20        THE CONJOINT SURVEY SHOW THAT THE FEATURE DRIVES CONSUMER

21        DEMAND --

22              MR. LEE:  YOUR HONOR --

23              THE COURT:  -- BY ITSELF?

24              MR. LEE:  I THINK, YOUR HONOR, WHAT I'LL SAY IS WHAT

25        DR. HAUSER SAID, WHICH IS IN THE RECORD.  IT DEMONSTRATES A
```

1    WILLINGNESS TO BUY, AND THAT IS A REFLECTION OF DEMAND, AND

2    THAT'S CONFIRMED BY DR. SUKUMAR WHO SAYS IT'S A DEMONSTRATION

3    OF MARKET VALUE.

4         THE COURT:  OKAY.  I HEAR THAT, AND I THINK THE

5    ANSWER IS NO THEN.

6         MR. LEE:  NO, NO.

7         THE COURT:  IT SHOWS DEMAND FOR THE PATENTED FEATURE.

8    I -- I'M WITH YOU THERE.

9         MR. LEE:  RIGHT.  OKAY.

10        THE COURT:  BUT I DON'T THINK IT NECESSARILY SHOWS

11   THE EXTRA STEP, THAT THAT PARTICULAR PATENTED FEATURE IS

12   DRIVING CONSUMER DEMAND FOR THE PRODUCT.

13        MR. LEE:  AND YOUR HONOR, THAT'S WHERE THE FEDERAL

14   CIRCUIT I THINK EXCEPTED THEIR ARGUMENT.  IF YOUR HONOR GOES

15   BACK AND CONSIDERS THEIR EXAMPLE OF A LAPTOP BATTERY, THEY

16   SPECIFICALLY CHOSE A FEATURE THAT, BY ITSELF, DIDN'T DRIVE

17   DEMAND FOR THE PRODUCT, COULDN'T DRIVE DEMAND FOR THE PRODUCT.

18        AND IN FACT, ONE OF THE EXAMPLES THEY SPECIFICALLY GAVE IN

19   THEIR OPINION WAS THERE ARE BATTERIES AROUND, BUT DID YOU COME

20   UP WITH A BATTERY WITH A LONGER LIFE?  AND THERE'S ALL OF THESE

21   OTHER FEATURES ON THE COMPUTER.

22        THAT'S EXACTLY WHAT JUDGE PROST USED AS AN EXAMPLE AND SHE

23   SAID, "LOOK, YOU'RE NOT GOING TO BE ABLE TO PROVE THAT THAT

24   DRIVES CONSUMER DEMAND FOR THE LAPTOP.  BUT IT'S GOING TO

25   AFFECT THE CONSUMER'S WILLINGNESS TO PAY, AND IT'S GOING TO

```
1      AFFECT THE INTEREST IN THE PRODUCT, AND THAT'S ENOUGH."  AND
2      THAT'S THE EXPLICIT EXAMPLE SHE GAVE IN ORDER TO GIVE US SOME
3      GUIDANCE ABOUT WHAT SHE WAS TALKING ABOUT.
4           AND THAT'S WHY I'M NOT TRYING TO BE DIFFICULT OR TO
5      WORDSMITH WHEN I FOCUS ON THE WORDS "A CONNECTION," BECAUSE
6      THAT'S VERY MUCH WHAT THEY SAID.
7                THE COURT:  UM-HUM.
8                MR. LEE:  AND THEN SHE ADOPTS THAT LAPTOP EXAMPLE --
9                THE COURT:  UM-HUM.
10               MR. LEE:  -- PRECISELY TO DEMONSTRATE THAT IT'S
11     NOT -- THIS IS NOT THE ENTIRE MARKET VALUE RULE.  AND SHE'S
12     BEEN THE AUTHOR OF A SERIES OF THE ENTIRE MARKET VALUE RULE
13     OPINIONS.  IT'S NOT AN ENTIRE MARKET VALUE RULE ANALYSIS.  IT'S
14     NOT THAT YOU HAVE TO DEMONSTRATE THAT IT'S THE DRIVER OF DEMAND
15     FOR THE PRODUCT IN ORDER TO INVOKE THE RULE.
16          IF IT WERE, YOUR HONOR, THAT EXAMPLE OF THE LAPTOP
17     WOULDN'T WORK.
18               THE COURT:  LET ME ASK -- I'D LIKE TO MOVE ON TO SOME
19     OTHER TOPICS.  IF I RULE ON ALL OF THESE JMOL MOTIONS AND THE
20     PERMANENT INJUNCTION MOTION, ASSUMING I DON'T GRANT A NEW
21     TRIAL, CAN I THEN ENTER FINAL JUDGMENT SO THIS CAN GO UP FOR
22     APPELLATE REVIEW?  DO YOU AGREE WITH THAT?
23               MR. LEE:  YES.
24               THE COURT:  OKAY.  DOES SAMSUNG AGREE WITH THAT?
25               MS. SULLIVAN:  YES, YOUR HONOR.
```

```
1              THE COURT:  OKAY.  THANK YOU.

2          OKAY.  I'D LIKE TO GO TO LOST PROFITS, PLEASE, AND I HAVE

3      QUESTIONS FOR BOTH SIDES ON THIS ISSUE.  I'LL START WITH APPLE.

4              MS. SULLIVAN:  YOUR HONOR, I'M SORRY.  DO I GET TO

5      RESPOND ON HAUSER?

6              THE COURT:  ALL RIGHT.  JUST VERY BRIEFLY BECAUSE

7      UNFORTUNATELY THERE'S SO MANY ISSUES THAT WE HAVE TO COVER

8      TODAY.

9              MS. SULLIVAN:  I KNOW, YOUR HONOR, BUT IT'S SUCH AN

10     IMPORTANT PIECE.  I JUST HAVE TO CORRECT A FEW THINGS MR. LEE

11     SAID AND TO AGREE STRENUOUSLY WITH YOUR HONOR.

12         MR. HAUSER DOES NOT SHOW WHAT APPLE III REQUIRES FOR

13     CAUSAL NEXUS, WHICH IS THAT THE PATENTED FEATURE IS A DRIVER OF

14     CONSUMER DEMAND.

15         APPLE III CORRECTED THE CAUSAL NEXUS STANDARD.  IT

16     OTHERWISE SAID YOU GOT CAUSAL NEXUS EXACTLY RIGHT.  THEY

17     AFFIRMED YOU ON CAUSAL NEXUS.  THEY SAID CAUSAL NEXUS IS AN

18     INTEGRAL PART OF IRREPARABLE HARM.

19         MR. LEE KEEPS SAYING, "OH, WE SHOWED IRREPARABLE HARM."

20     NO.  CAUSAL NEXUS IS A PREREQUISITE TO A SHOWING OF IRREPARABLE

21     HARM, AND YOU STILL HAVE TO SHOW THAT IT IS A -- THAT THE

22     PATENTED FEATURE IS A DRIVER OF CONSUMER DEMAND.  THEY JUST

23     SAID IT DOESN'T HAVE TO BE THE SOLE DRIVER.  THERE COULD BE AN

24     AGGREGATE.  THAT'S ALL THEY SAID.

25             SO THE TEST IS, AS YOUR HONOR SAID, DOES THE PATENTED
```

```
 1        FEATURE DRIVE CONSUMER DEMAND?  AND HAUSER DID NOT SHOW THAT

 2        AND YOU SHOULD DISCOUNT HIS STUDY AS UNABLE TO PROVE THAT THE

 3        PATENTED FEATURES WERE A DRIVER OF CONSUMER DEMAND.

 4             MR. LEE SAID IT SHOWS WILLINGNESS TO BUY.  IT DIDN'T.

 5        HAUSER SAID, "I'M SHOWING WILLINGNESS TO PAY."

 6             AND YOUR HONOR HIT THE NAIL ON THE HEAD WHEN YOU SAID

 7        WILLINGNESS TO PAY COMPARED TO WHAT?  HE DIDN'T EVEN TEST THE

 8        '163 AND THE '381 SEPARATELY.  HE HAD AN AGGREGATE FIGURE FOR

 9        THE THREE PATENTS.  100.  100.  THEY PAID 100 FOR THAT.

10             AND THEN HE SAID 39 FOR THE '915.

11             BUT YOUR HONOR, $39 COMPARED TO WHAT?  AS YOUR HONOR SAID,

12        IT WOULD BE LUDICROUS TO SUPPOSE THAT WHEN SAMSUNG CONSUMERS

13        BUY A PHONE FOR AN AVERAGE OF $152, THEY WOULD BE WILLING TO

14        PAY 100 TOWARD THAT $152 FOR THESE THREE FEATURES.

15             AND HAUSER ADMITTED -- IF YOU LOOK AT NOTHING ELSE, YOUR

16        HONOR, LOOK AT HAUSER'S OWN ADMISSIONS.  THEY'RE CITED IN OUR

17        OPPOSITION BRIEF AT PAGE 5, LINES 4 THROUGH 11.  YOU'VE GOT ALL

18        THE CITATIONS THERE TO HAUSER'S ADMISSIONS THAT HE IS NOT USING

19        THOSE NUMBERS, 100, 39, THEY ARE NOT WHAT CONSUMERS WOULD

20        ACTUALLY PAY IN THE MARKETPLACE.  THOSE NUMBERS, HE SAYS, ARE A

21        DEMAND SLIDE.  IT'S WHAT PEOPLE WOULD BE WILLING TO PAY.

22             IT'S NOT WHAT THEY ACTUALLY PAY IN THE MARKETPLACE.

23             SO, YOUR HONOR, I THINK WHAT THE CIRCUIT WAS SAYING --

24        REMEMBER, LET'S FOCUS ON THE CUP HOLDER, OUR FAVORITE EXAMPLE

25        OF THE CUP HOLDER.  THE CIRCUIT SAYS, "WELL, IF A CONSUMER" --
```

```
1      I'M IN THE FEDERAL CIRCUIT PARAGRAPH RIGHT BEFORE THE ONE

2      MR. LEE REFERRED TO -- "IF A CONSUMER IS WILLING TO PAY AN

3      ADDITIONAL $10 FOR AN INFRINGING CUP HOLDER IN A $20,000 CAR,

4      THAT DOES NOT DEMONSTRATE THAT THE CUP HOLDER DRIVES DEMAND."

5           AND THE IMPLICATION IS, IF YOU WERE WILLING TO PAY $10,000

6      FOR SOMETHING IN A $20,000 CAR, MAYBE THAT WOULD BE PROBATIVE

7      OR RELEVANT TO DRIVER OF CONSUMER DEMAND.

8           BUT THE POINT HERE IS MR. HAUSER DOESN'T USE ANYTHING

9      THAT'S EQUIVALENT TO THE $20,000 STICKER PRICE.  WE DON'T

10     KNOW -- $100 FOR THESE THREE PATENTS COMPARED TO WHAT?  WE

11     DON'T KNOW $39 FOR THE '915 COMPARED TO WHAT?

12          AND IT WOULD BE LUDICROUS TO SUPPOSE THAT THOSE ARE THE

13     PRICES PEOPLE WOULD BE WILLING TO PAY RELEVANT TO A $152 PHONE.

14          AND HAUSER DENIES THAT THAT'S WHAT HE'S SAYING.  HE KEEPS

15     SAYING OVER AND OVER AGAIN, "I'M NOT SAYING THAT THIS IS THE

16     AMOUNT THAT CONSUMERS ARE WILLING TO PAY FOR A FEATURE."

17          AND YOUR HONOR, SO TO SUMMARIZE, HAUSER IS NOT SHOWING YOU

18     WHAT THE CIRCUIT SAID MIGHT BE A DATA POINT, ONE PIECE OF

19     EVIDENCE THAT MIGHT TEND TO SHOW THE ULTIMATE PROPOSITION.

20          BUT YOU STILL NEED TO FIND THE ULTIMATE PROPOSITION THAT

21     THE PATENTED FEATURE IS A DRIVER OF CONSUMER DEMAND.

22          NOW, HE ISN'T SHOWING A REAL MARKET PRICE, BY ADMISSION.

23     AND AS YOUR HONOR POINTED OUT, HE'S NOT SHOWING THESE PATENTED

24     FEATURES, SUPPOSED WILLINGNESS TO PAY VALUE IN RELATION TO

25     OTHER FEATURES, AND HE'S SELECTED THESE FEATURES THAT HE'S
```

1    TESTING AGAINST WITHOUT INCLUDING A LOT OF FEATURES THAT REAL

2    CONSUMERS THINK ARE IMPORTANT.

3         AND I JUST HAVE TO DISTINGUISH MR. LEE'S CITATION TO THE

4    ITV VERSUS SONY CASE.  IN ITV VERSUS SONY, MAGISTRATE

5    JUDGE SPERO LET IN A CONJOINT STUDY WHERE THERE HAD BEEN A

6    PRELIMINARY SURVEY THAT ASKED CONSUMERS, WHAT FEATURES DO YOU

7    THINK ARE IMPORTANT?

8         HAUSER ADMITTED THAT, IN HIS SCREENING SURVEY THAT MR. LEE

9    PUTS SO MUCH WEIGHT ON, HE DIDN'T ASK CONSUMERS WHAT THEY

10   THOUGHT WERE IMPORTANT.  HE JUST ASKED, WHAT DO YOU LIKE?  AND

11   HE ADMITTED THAT HUNDREDS OF FEATURES CAME UP.

12        SO THIS -- WE'RE NOT SAYING THAT -- WE'RE SAYING HAUSER'S

13   SURVEY HERE IS INCAPABLE OF SHOWING YOU, TO THE EXTENT YOU NEED

14   TO FIND FOR AN INJUNCTION, THAT THESE PATENTED FEATURES WERE A

15   DRIVER OF CONSUMER DEMAND.

16        AND I JUST WANT TO POINT OUT ONE MORE THING FROM THE

17   CIRCUIT OPINION.  YOUR HONOR, REMEMBER, THE CIRCUIT REMANDS TO

18   YOU, AND IT GAVE YOU COMPLETE AND TOTAL FREEDOM, THEY --

19   CONTRARY TO WHAT MR. LEE SUGGESTED, THE CIRCUIT DIDN'T DECIDE

20   ANY OF THESE APPLICATIONS OF THE NEW STANDARD BEFORE YOU.  THEY

21   JUST SAID, "OOPS, WE WERE A LITTLE UNCLEAR IN OUR STANDARD.

22   WE'LL SEND IT BACK TO JUDGE KOH SO THAT SHE, IN THE FIRST

23   INSTANCE, CAN DECIDE THE EVIDENCE UNDER THE NEWLY TWEAKED

24   STANDARD."

25        BUT THEY LEFT THE DECISION TO YOU.  THEY DIDN'T DECIDE

1    THAT HAUSER WAS GOOD OR CONJOINT STUDIES WERE GOOD.

2        TO THE CONTRARY.  THEY MADE VERY CLEAR THAT WHAT YOU NEED

3    TO FIND IS DRIVER OF CONSUMER DEMAND, AND IT'S UP TO YOU TO

4    FIND WHETHER HAUSER DOES IT.

5        YOU'VE ALREADY MENTIONED THE REASONS WHY FUNDAMENTALLY IT

6    CAN'T.  DOESN'T SHOW REAL PRICE.  HOW COULD IT?  100 ON A $152

7    PHONE?  HE ADMITS IT'S NOT.

8        AND IT DOESN'T SHOW RELATIVE.  I KEEP THINKING OF THE OLD

9    SONG "COMPARED TO WHAT?"  RIGHT?  THE QUESTION HERE IS ABOUT

10   RELATIVE.  YOU CAN'T SHOW SOMETHING IS A DRIVER OF CONSUMER

11   DEMAND UNLESS YOU COMPARE IT TO OTHER POSSIBLE CANDIDATES.

12       BUT HE DOESN'T TELL US THEY'D RATHER HAVE THESE THREE

13   FEATURES OR ANY ONE OF THESE FEATURES THAN THE BRAND NAME, TEXT

14   MESSAGES, BATTERY LIFE, OR ANY OF THE OTHER FEATURES THAT

15   APPLE'S OWN SURVEYS SHOW CONSUMERS REALLY CARE ABOUT.  HE

16   DIDN'T TEST THEM RELATIVELY OR COMPARATIVELY.

17       BUT IF YOU HAVE ANY DOUBT, YOUR HONOR, THE CIRCUIT ALSO

18   SENT IT BACK FOR ANOTHER KIND OF INQUIRY, METHODOLOGICAL FLAWS.

19   THE CIRCUIT LEFT IT TO YOU TO DECIDE THAT OTHER METHODOLOGICAL

20   FLAWS MAKE THIS SURVEY A VERY UNHELPFUL SHOWING OF CONSUMER

21   DEMANDS, AND I'LL JUST REMIND YOUR HONOR OF FOUR.

22       IT OMITS APPROPRIATE NON-INFRINGING ALTERNATIVES.  HE

23   TESTED FOR SOME, BUT THEY WEREN'T ONES THAT WERE REALLY

24   FUNCTIONAL.

25       IT DIDN'T EVEN TEST AGAINST THE NON-INFRINGING

1      ALTERNATIVES THAT THE JURY HERE FOUND, THE PRODUCTS THAT THE

2      JURY HERE FOUND NON-INFRINGING.

3            AND HE DIDN'T TEST AGAINST APPLE'S OWN PRIOR ART.

4            WE'RE NOT SAYING THAT HE HAS TO TEST AGAINST ALL

5      NON-INFRINGING ALTERNATIVES, BUT HE SHOULD HAVE TESTED AGAINST

6      THE MOST RELEVANT ONES.

7            THE SECOND THING -- AND THIS IS VERY IMPORTANT, YOUR

8      HONOR -- HE CREATED A SELECTION BIAS.  THE SECOND

9      METHODOLOGICAL FLAW IS A SELECTION BIAS OF PICKING SIX OUT OF

10     HUNDREDS OF FEATURES AND DRIVING PEOPLE TO FOCUS ON THOSE SIX,

11     EXACERBATING IT WITH THE ANIMATION BIAS, BUT DRIVING PEOPLE TO

12     FOCUS ON THOSE SIX.

13           AND YOUR HONOR IS WELL FAMILIAR WITH THE GOOGLE VERSUS

14     ORACLE CASE, THAT SORT OF FORCING CONSUMERS TO PICK AMONG

15     SAMSUNG PRODUCTS WHEN YOU'RE LEADING THEM TO THOSE PRODUCTS

16     RATHER THAN ASKING THEM OPEN-ENDED QUESTIONS IS GOING TO LEAD

17     CONSUMERS, AS YOUR HONOR JUST SAID, TO INFLATE THE SUPPOSED

18     PRICE PREMIUM ON THOSE PRODUCTS, WHICH IS REALLY A MISNOMER.

19           THESE ARE NOT PRICE PREMIUMS, YOUR HONOR.  THEY'RE MADE UP

20     NUMBERS THAT AREN'T COMPARED TO ANYTHING.  THEY'RE CERTAINLY

21     NOT COMPARED TO WHAT THE CIRCUIT WAS TALKING ABOUT, THE

22     ULTIMATE STICKER PRICE OF THE CAR.

23           IF YOU APPLY THE CIRCUIT SENTENCE, IF YOU'RE LOOKING FOR

24     WHETHER THEY'D PAY $10 ON A $20,000 CAR, YOU SHOULD BE LOOKING

25     AT HOW ABSURD IT WOULD BE TO SAY ANYONE WOULD PAY $100 FOR

```
 1        THESE THREE FEATURES IN A $152 PHONE.  THIS IS NOT PROBATIVE OF

 2        CONSUMER DEMAND.

 3            THIRD METHODOLOGICAL PROBLEM.  HE DIDN'T SIMULATE THE

 4        MARKETPLACE.  YOUR HONOR, WE'RE NOT SAYING HE HAD TO GIVE OUT

 5        REAL MONEY, BUT THERE HAD TO BE SOME CONSTRAINTS.  THERE WERE

 6        NO BOUNDARIES HERE.  THERE WERE NO CONTROLS.

 7                THE COURT:  I KNOW.  BUT IN THE FIRST TRIAL, SAMSUNG

 8        DIDN'T EVEN REALLY SAY THAT IF THE JURY FOUND ANY PRODUCTS

 9        NON-INFRINGING, THOSE WOULD BE NON-INFRINGING ALTERNATIVES.

10            ARE YOU SUGGESTING DR. HAUSER SHOULD HAVE DONE A

11        SUBSEQUENT STUDY AFTER THE VERDICT, THE FIRST JURY'S VERDICT?

12        I'M UNCLEAR AS TO WHAT THAT WOULD BE.

13                MS. SULLIVAN:  THAT'S A FAIR QUESTION, YOUR HONOR,

14        BECAUSE HE COULDN'T PREDICT THE FUTURE.

15            BUT I THINK THAT ONCE THERE'S BEEN A FINDING OF

16        NON-INFRINGING ALTERNATIVES, HE COULD HAVE COME UP WITH

17        NON-INFRINGING ALTERNATIVES TO TEST THAT WERE CLOSER TO THE

18        FUNCTIONALITY THAT THE ACCUSED PRODUCTS HAD.

19            IN OTHER WORDS, THE -- WHY DIDN'T HE TEST -- YES, A

20        SUBSEQUENT STUDY WOULD HAVE BEEN HELPFUL, NOT DISPOSITIVE, BUT

21        AT LEAST WOULD HAVE BEEN HELPFUL.

22            BUT, YOUR HONOR, YOU'VE GOT ALL THESE IN OUR BRIEFS AND

23        YOU'VE GOT A LOT OF OTHER ISSUES TO GET TO.

24            I JUST WANTED TO CORRECT ONE MORE POINT THAT MR. LEE MADE

25        THAT ISN'T CORRECT.  HE KEPT SAYING THAT SAMSUNG RELIED ON
```

```
 1        SUKUMAR WHO RELIED ON A CONJOINT STUDY TO SHOW DEMAND.

 2              THAT'S NOT CORRECT, YOUR HONOR, AND I'D REFER YOU TO

 3        DOCKET 2915-7, PARAGRAPH 4, WHICH MAKES CLEAR THAT WE WERE NOT

 4        USING A CONJOINT STUDY TO SHOW DEMAND.  SO THAT'S SIMPLY

 5        INCORRECT.

 6              AND YOUR HONOR, I DON'T WANT TO BELABOR HAUSER BECAUSE I

 7        THINK YOU'VE HIT THE MAIN FLAWS.

 8              THERE MAY SOME DAY BE A CONJOINT STUDY THAT SHOWS CAUSAL

 9        NEXUS.  THIS IS SO FAR FROM BEING ONE THAT THIS SHOULD NOT BE

10        THE CASE IN WHICH YOU PRONOUNCE THIS SORT OF STUDY, WITH ALL OF

11        ITS PROFOUND FLAWS -- HE DIDN'T EVEN START BY ASKING CONSUMERS,

12        "ARE YOU AWARE OF THESE FEATURES" THAT HE'S ABOUT TO TEST.  HE

13        DIDN'T EVEN START BY ASKING WHETHER THOSE FEATURES MATTERED TO

14        THEM.

15              IF YOU'RE GOING TO TEST WHAT CONSUMERS DO IN THE

16        MARKETPLACE, THIS PARTICULAR SURVEY WITH ALL HIS PARTICULAR

17        FLAWS FALLS FAR SHORT OF A SUFFICIENT SHOWING OF CAUSAL NEXUS.

18              AND I JUST, I HAVE TO -- YOUR HONOR, MR. LEE KEPT SAYING,

19        "ALL WE HAVE TO DO IS SHOW SOME CONNECTION."

20              WE DON'T THINK THIS EVEN SHOWS SOME CONNECTION.

21              BUT THAT IS NOT THE TEST.  WHAT THE CIRCUIT TOLD YOU TO

22        DO -- AND I WANT TO FOCUS ON THIS LANGUAGE BECAUSE IT'S THE

23        IMPORTANT LANGUAGE -- IS ASK WHETHER THE FEATURE SIGNIFICANTLY

24        INCREASES THE PRICE OF A PRODUCT OR SIGNIFICANTLY INCREASES THE

25        DESIRABILITY OF A PRODUCT.  THOSE ARE THE TWO EXAMPLES THEY
```

1    GAVE YOU.

2         HAUSER SHOWS NEITHER.  CAN'T SHOW PRICE BECAUSE IT DOESN'T

3    USE A REAL MARKET PRICE; AND CAN'T SHOW DESIRABILITY BECAUSE IT

4    DOESN'T COMPARE THESE THREE FEATURES' DESIRABILITY TO THE

5    DESIRABILITY OF OTHER FEATURES.  HE DOESN'T ASK YOU IF YOU WANT

6    BOUNCE BACK MORE THAN YOU WANT TO BE ABLE TO USE IT AS A PHONE

7    OR ANY NUMBER OF OTHER COMPARISONS.

8         JUST LAST POINT, YOUR HONOR, JUST TO GO BACK TO LICENSING

9    FOR A SECOND.

10        MR. LEE IS INCORRECT THAT THE CIRCUIT DECIDED ON HTC AND

11   NOKIA.  THE CIRCUIT SENT THE LICENSING QUESTION BACK TO YOU TO

12   RESOLVE IN ITS ENTIRETY, INCLUDING THE FOOTNOTE 7 APPLE/SAMSUNG

13   NEGOTIATION POINT.  IT DECIDED NOTHING.

14        AND EVERY FACT THE CIRCUIT CITED THERE WE HAVE CONTRARY

15   EVIDENCE TO.  WE'VE SHOWN THAT THE SUPPOSED ANTI-CLONING

16   PROVISION --

17            THE COURT:  OKAY.  I THINK I'VE HEARD ENOUGH ON THE

18   LICENSING.  THANK YOU.

19            MS. SULLIVAN:  THANK YOU, YOUR HONOR.

20            THE COURT:  ALL RIGHT.  MR. LEE, THIS IS YOUR MOTION.

21   I'LL GIVE YOU ONE MINUTE AND THEN I REALLY NEED TO MOVE ON TO

22   THE JMOLS.

23            MR. LEE:  RIGHT.  YOUR HONOR, THREE POINTS IN LESS

24   THAN A MINUTE.

25            IF THE COURT CONSIDERS THE FEDERAL CIRCUIT'S OPINION AT

1    1364, THEY HAD -- THESE ARGUMENTS THAT ARE BEING MADE ABOUT

2    DR. HAUSER WERE ALL MADE AT THE FEDERAL CIRCUIT, AND IF YOU

3    LOOK AT WHAT THEY SAY, IT IS A SHOWING OF SOME CONNECTION, AND

4    THAT'S THE STANDARD.  THAT'S POINT NUMBER ONE.

5          POINT NUMBER TWO.  DR. HAUSER -- IF YOUR HONOR IS GOING TO

6    CONSIDER THE SUPPLEMENTAL MATERIALS THAT WERE FILED BY SAMSUNG,

7    DR. HAUSER, AT PAGE 16, SPECIFICALLY SAYS HE INCLUDES

8    NON-INFRINGING ALTERNATIVES.

9          AND THE LAST POINT IS THIS, YOUR HONOR:  THIS IS A

10   COMPETITOR AGAINST COMPETITOR CASE.  23 PRODUCTS INFRINGED BY

11   SIX PATENTS WITH A FINDING BY YOUR HONOR, MORE THAN A YEAR AGO,

12   OF IRREPARABLE HARM.

13         IT WOULD BE AN EXTRAORDINARY RESULT FOR THERE NOT TO BE AN

14   INJUNCTION ENJOINING THEM FROM CONTINUING WITH THE INFRINGING

15   CONDUCT.

16         IF THEY WANT TO SELL PHONES THAT DON'T INCLUDE THOSE

17   FEATURES, GREAT.

18         BUT IF THEY'RE GOING TO SELL PHONES THAT HAVE THE FEATURES

19   THAT ARE NOT COLORABLY DIFFERENT, AS THE FEDERAL CIRCUIT SAID,

20   THEY SHOULD BE ENJOINED FROM DOING SO.

21             THE COURT:  ALL RIGHT.  THANK YOU.

22         LET ME GO TO THE LOST PROFITS.  ACTUALLY, WHY DON'T WE DO

23    INFRINGER'S PROFITS FIRST?  LET ME -- I HAVE A QUESTION FOR

24    APPLE.  WHO'S DOING INFRINGER'S PROFITS?

25             MR. MCELHINNY:  I AM UNTIL I HEAR THE QUESTION, YOUR

1    HONOR, AND THEN I MAY CHANGE.

2         (LAUGHTER.)

3              THE COURT:  OKAY.  FIRST OF ALL, DO YOU THINK THE

4    PROHIBITION AGAINST COMPROMISE VERDICTS ONLY APPLIES TO THE

5    LIABILITY DECISION?

6              MR. MCELHINNY:  I -- YES, YOUR HONOR.

7              THE COURT:  AND WHY IS THAT?  WHY WOULD THAT --

8              MR. MCELHINNY:  BECAUSE OF THE CASES THAT WE CITED IN

9    OUR BRIEF.  THE DIFFERENCE BETWEEN DAMAGES -- THE WRONG THAT

10   THE LAW TRIES TO COME BACK WITH A COMPROMISE VERDICT IS WHEN

11   THE JURORS HAVE NOT REACHED A UNANIMOUS VERDICT ON LIABILITY,

12   AND IF YOU CAN DEMONSTRATE THAT THERE WAS A TRADE OFF IN THE

13   JURY ROOM BETWEEN PEOPLE WHO SAID, YOU KNOW, "IF YOU'LL GO WITH

14   US ON LIABILITY, THEN WE'LL FIX THAT IN THE DAMAGES RESULT,"

15   AND THE WRONG THAT YOU GET TO THERE IS YOU END UP WITH A

16   VERDICT OF LIABILITY THAT WAS NOT UNANIMOUS.

17        BUT IF YOU THINK ABOUT IT, JURORS COME TO A POINT ON

18   DAMAGES ALL THE TIME THAT'S DIFFERENT THAN ONE PARTY HAS ASKED

19   FOR AND THE OTHER PARTY.

20        I MEAN, THERE IS NO RULE THAT THEY HAVE TO ADOPT EITHER

21   PARTY'S DAMAGES THEORY.

22              THE COURT:  BUT --

23              MR. MCELHINNY:  AND SAYING THAT BECAUSE --

24              THE COURT:  IN FEDERAL CIRCUITS, THOUGH, THE VERDICT

25   HAS TO BE UNANIMOUS.  IT'S NOT UNANIMOUS, IS IT, IF THEY'RE IN

1    DISAGREEMENT AS TO WHAT THE VERDICT SHOULD BE?

2         MR. MCELHINNY:  NO.  THE JURY WAS UNANIMOUS.  THEY

3    CAME OUT AND BROUGHT IN A UNANIMOUS VERDICT SIGNED BY ALL OF

4    THE JURORS.

5         BUT THE CONCEPT THAT -- I MEAN, THEY ALSO -- THEY

6    DISCUSSED THIS.  THEY DON'T STICK -- YOUR HONOR'S INSTRUCTIONS

7    TO THEM ARE TO LISTEN TO THE OTHER JURORS, CONSIDER THEIR

8    POINTS OF VIEW, AND COME TO A UNANIMOUS DECISION.

9         BUT THAT DOESN'T MEAN THEY START OFF UNANIMOUS.

10         AND THE IDEA THAT THEY COME TO AN AGREEMENT ON A DAMAGES

11    NUMBER THAT WAS NOT ONE OF THE ONES THAT WAS SUBMITTED BY ONE

12    OF THE PARTIES, THAT'S -- THAT'S ALMOST, I THINK, THE CASE IN

13    MOST TRIALS.

14         BUT I NEED -- I NEED TO GET AT THE UNDERLYING IMPLICATION

15    IN YOUR HONOR'S QUESTION, WHICH IS -- AGAIN, OUR POSITION IS

16    THAT YOU CANNOT UNPACK THIS VERDICT.  I MEAN, WE HAVE A

17    UNANIMOUS VERDICT FOR $290-SOME MILLION.  WE DON'T KNOW HOW THE

18    JURY GOT TO THAT NUMBER.  WE DON'T KNOW WHETHER THERE WAS A

19    COMPROMISE.  WE DON'T KNOW WHETHER THEY ALL WALKED IN AND HAD

20    THAT NUMBER IN MIND.  WE DON'T KNOW ANYTHING ABOUT HOW THEY GOT

21    THERE.

22         AND UNDER THE NINTH CIRCUIT OPINIONS THAT WE DISCUSSED THE

23    LAST TIME, YETI BY MOLLY AND WHATEVER, IT'S NOT APPROPRIATE TO

24    TRY TO FIGURE OUT HOW THEY GOT TO THIS NUMBER.

25         YOUR HONOR DID IT THE LAST TIME BECAUSE YOU WENT THROUGH

```
 1        THE -- AGAIN, WE DISAGREED WITH IT -- BUT YOUR HONOR WENT DOWN

 2   THE FIRST ALLIANCE AND CAME TO AN INAPPROPRIATE LEGAL THEORY.

 3             THE COURT:  UM-HUM.

 4             MR. MCELHINNY:  BUT THAT'S --

 5             THE COURT:  JUDGE CLIFTON DOESN'T THINK SO.  HE WROTE

 6   THAT OPINION.

 7             MR. MCELHINNY:  I'M SORRY?

 8             THE COURT:  HE DIDN'T THINK IT WAS AN ILLEGAL THEORY.

 9   BUT ANYWAY, GO AHEAD.

10             MR. MCELHINNY:  BUT THAT'S DIFFERENT THAN WHAT WE'RE

11   TALKING ABOUT HERE.  TO EVEN BUY INTO SAMSUNG'S ARGUMENT THAT

12   THE JURORS CAN'T COME TO SOME --

13             THE COURT:  WELL, WHAT IF THERE WAS NO AGREEMENT AND

14   A MAJORITY OR HALF OR SOME PORTION AGREED WITH APPLE AND SOME

15   GROUP, HOLDOUTS, WHATEVER, AGREED WITH SAMSUNG, WHY WOULDN'T

16   THIS HAVE BEEN A COMPROMISE VERDICT?

17             MR. MCELHINNY:  BECAUSE -- WELL, THAT'S -- THAT I

18   THINK IS -- I THINK THAT'S CONFUSING THE POPULAR WORD

19   "COMPROMISE," WHICH EVERY VERDICT -- BY DEFINITION, WHEN YOU

20   PUT EIGHT OR TEN PEOPLE IN THERE THAT START OFF WITH DIFFERENT

21   VIEWS AND THEY REASON TOGETHER AND COME TO A UNANIMOUS VERDICT,

22   YOU COULD USE THE WORD "COMPROMISE" FOR THAT.

23        BUT THAT'S NOT WHAT THE LAW CALLS A COMPROMISE VERDICT.

24   WHAT THE LAW CALLS A COMPROMISE VERDICT IS WHEN SOMEONE WHO

25   DOESN'T BELIEVE IN LIABILITY VOTES FOR LIABILITY IN ORDER TO
```

```
1        GET TO A SUBJECT.

2            AND, I MEAN -- I'M SORRY, I'M NOT EXPRESSING MYSELF

3        CLEARLY, BECAUSE IT SEEMS SO DIFFERENT TO ME THAN THE CONCEPT

4        OF PEOPLE WHO COME IN AND SAY "I THINK IT'S $500,000" AND "I

5        THINK IT'S $600,000" AND "NO, DIDN'T YOU SEE THIS" AND THEY

6        COME TO A UNANIMOUS VERDICT.

7            WHAT THEY RETURNED TO YOU WAS A VERDICT WITH A SINGLE

8        NUMBER ON IT.  NOT THE NUMBER WE WANTED.  NOT THE NUMBER

9        SAMSUNG WANTED.  IT WAS A DIFFERENT NUMBER.

10           BUT IT WAS UNANIMOUS.  THEY HAD THE OPPORTUNITY TO POLL

11       THE JURY TO FIND OUT IF ANYBODY DIDN'T AGREE WITH THAT NUMBER.

12           BUT THAT WAS THE RESULT OF THEIR DELIBERATIONS, AND SIMPLY

13       THE FACT THAT IT IS THE RESULT OF A DELIBERATION DOESN'T MAKE

14       IT A COMPROMISE VERDICT BECAUSE THAT WOULD MAKE EVERY VERDICT A

15       COMPROMISE VERDICT.

16           THE COURT:  ALL RIGHT.  LET ME ASK, I HAVE TWO

17       QUESTIONS FOR SAMSUNG ON THIS POINT AND THEN I WANT TO MOVE ON

18       TO ANOTHER ONE.

19           AND THE QUESTION FOR SAMSUNG, IS THERE A SINGLE CASE

20       THAT'S AN IMPERMISSIBLE COMPROMISE VERDICT CASE THAT DOESN'T

21       INVOLVE LIABILITY?  THAT WOULD BE OUR SITUATION WHERE WE

22       ALREADY HAVE A LIABILITY DETERMINATION FROM THE 2012 JURY AND

23       THE SOLE QUESTION BEFORE THE 2013 JURY IS DAMAGES.  IS THERE

24       ANY CASE THAT WOULD FIND A PROHIBITED COMPROMISE VERDICT BASED

25       ON DAMAGES ALONE?
```

1           MS. MAROULIS:  YOUR HONOR, THERE'S NO CASE THAT IS IN

2      THE EXACT POSTURE WHERE IT'S A DAMAGES TRIAL AND LIABILITY HAS

3      BEEN DETERMINED, BUT THE LOGIC OF THE CASES LIKE JAMES AND

4      OTHERS APPLIES EQUALLY HERE, BECAUSE TO START WITH, THIS IS A

5      CASE WHERE NOT ONLY REVERSE ENGINEERING OF VERDICT IS

6      APPROPRIATE, BUT IT'S ALSO VERY SIMPLE.

7           AND DESPITE WHAT APPLE JUST TOLD YOU, APPLE ACTUALLY

8      AGREES WITH HOW THIS VERDICT SHOULD BE DETERMINED AND WHAT JURY

9      DID EXACTLY, BECAUSE IN APPLE'S JMOL, THEY SAID THE JURY

10     AWARDED 100 PERCENT OF APPLE'S LOST PROFITS, 100 PERCENT OF

11     APPLE'S REASONABLE ROYALTY, AND A PORTION OF THE INFRINGER'S

12     PROFITS.

13          SO NOT ONLY DO THEY AGREE WITH SAMSUNG HOW IT'S DONE, THEY

14     DON'T DISPUTE THAT ONLY ONE EXPLANATION IS POSSIBLE.

15          SO THE FIRST ISSUE IS, CAN WE REVERSE ENGINEER THIS

16     VERDICT?  AND THE ANSWER IS YES.

17          SHOULD WE?  YES, TO GET BEHIND THE LEGAL ERROR.

18          BUT TO ANSWER THE COURT'S QUESTION, THERE'S NOT A CASE

19     THAT IS EXACTLY IN THIS PROCEDURAL POSTURE, BUT THAT SHOULDN'T

20     CHANGE THE FACT THAT IT IS AN IMPERMISSIBLE COMPROMISE VERDICT

21     BECAUSE IT IS NOT SIMPLY A CASE WHERE, FOR EXAMPLE, THERE ARE

22     DIFFERENT COMPETING ROYALTY RATES AND THE JURY SELECTS A RATE

23     THAT IS SOMEWHERE BETWEEN WHAT THE EXPERTS PROPOSED.

24          HERE THERE'S A CLEAR EXAMPLE OF THE EQUIVALENT OF FLIPPING

25     A COIN.  THE JURORS LOOKED AT THE INFRINGER'S PROFITS NUMBER OF

```
 1        MS. DAVIS, THEY LOOKED AT THE INFRINGING PROFITS NUMBER OF

 2    MR. WAGNER, AND THEY FLIPPED A COIN.  THEY SELECTED THE EXACT

 3    MID-POINT BETWEEN THE TWO.  AND THAT IS THE TYPE OF --

 4             THE COURT:  BUT COULDN'T THEY ALSO HAVE ADOPTED

 5    MS. DAVIS'S NUMBER AND TAKEN A PERCENTAGE OF SAMSUNG'S

 6    OPERATING EXPENSES AND YOU GET TO THE SAME RESOLUTION AND THERE

 7    WOULDN'T BE THE DOUBLE COUNTING PROBLEM AND THERE WOULDN'T BE

 8    THE JUST AVERAGING AND MEETING IN THE MIDDLE BETWEEN THE TWO

 9    EXPERT NUMBERS?

10             MS. MAROULIS:  THERE'S NO QUESTION THAT THEY

11    CONSIDERED MR. WAGNER'S NUMBER AND THAT WAS PART OF THEIR

12    CALCULATION.

13         MS. DAVIS NEVER PROVIDED THEM WITH ANY TOOLS TO DEDUCT

14    SOME SUBSET OF THE DIFFERENT EXPENSES.  THERE'S NO SUPPORT IN

15    THE RECORD OF HOW THEY WOULD DO IT WITH ONLY HALF OF THE

16    PARTICULAR EXPENSES.

17         WHAT THEY DID IS THEY TOOK THE TWO NUMBERS AND THEY CHOSE

18    THE MID-POINT.  THAT IS WHAT THE LAW SAYS TO AVOID BECAUSE YOU

19    WANT A RATIONAL, CONSIDERED, AGREED UPON DECISION BY THE JURY.

20    YOU CANNOT HAVE A, WHAT THE COURT CALLED SOLOMONIC DECISION

21    WHERE THEY SPLIT THE BABY, ESSENTIALLY.  YOU WANT IT TO BE

22    SUPPORTED BY THE RECORD AND --

23             THE COURT:  BUT WHAT -- LET'S SAY I HAVE THIS

24    SCENARIO:  LIABILITY HAS ALREADY BEEN DETERMINED BY A PREVIOUS

25    JURY, SO THERE'S NO LIABILITY QUESTION.  THERE'S A DAMAGES
```

```
1       QUESTION, AND THERE'S TWO POSSIBLE WAYS THAT THE JURY COULD

2       HAVE REACHED THEIR DECISION, ONE WHICH WOULD JUST BE ADOPTING

3       MS. DAVIS'S NUMBER AND THEN SUBTRACTING SOME PERCENTAGE OF

4       SAMSUNG'S OPERATING EXPENSES, OR THE SECOND -- WHICH WOULD BE

5       PERMISSIBLE AND I DON'T THINK WOULD BE A PROBLEMATIC COMPROMISE

6       VERDICT, OR YOUR THEORY THAT THEY TOOK THE COMPETING EXPERTS'

7       NUMBERS AND JUST AVERAGED THEM AND CAME OUT IN THE MIDDLE.

8            SHOULDN'T I, BASED ON ALL OF THE LAW, LEAVE THE JURY

9       VERDICT ALONE IF THERE WAS A LEGITIMATE BASIS FOR THEM TO COME

10      TO THEIR NUMBER?

11           MS. MAROULIS:  YOUR HONOR, IF YOU LOOK AT THE NUMBER,

12      THE NUMBER -- THE MID-POINT THAT WE JUST DISCUSSED IS TO A FIVE

13      POINT DECIMAL.  IT'S EXACTLY 61 PERCENT OF MS. DAVIS'S NUMBER.

14           SO IT IS -- IN THIS CASE, IT'S MATHEMATICALLY CERTAIN THAT

15      THAT'S WHAT THE JURY DID.

16           IN SOME OTHER CASE, IT'S POSSIBLE THAT THE JURY FOUND A

17      DIFFERENT NUMBER, NOT WHAT BOTH PARTIES' DAMAGES EXPERTS

18      PROFFERED.

19           BUT HERE THE ONLY MATHEMATICAL WAY THEY COULD HAVE

20      ACCOMPLISHED THAT IS TO SPLIT THE DIFFERENCE BETWEEN MR. WAGNER

21      AND MS. DAVIS.

22           THE COURT:  WHY COULDN'T THEY HAVE JUST SUBTRACTED

23      THE SAME PERCENTAGE OF SAMSUNG'S PROFITS FOR EACH OF THE

24      DIFFERENT PRODUCTS AND SO THAT'S HOW THEY CAME UP WITH THE

25      INFRINGER'S PROFITS OF BEING 61.4 PERCENT OF WHAT MS. DAVIS HAD
```

```
 1     REQUESTED?

 2              MS. MAROULIS:  THERE IS --

 3              THE COURT:  IT JUST SEEMS LIKE THERE'S A LEGITIMATE

 4     WAY THAT THE JURY COULD HAVE GOTTEN TO THIS 61.4 PERCENT

 5     NUMBER.

 6              MS. MAROULIS:  IT WOULD BE AN INCREDIBLE COINCIDENCE,

 7     YOUR HONOR, IF THEY FOUND A WAY THAT WOULD LEAD TO EXACTLY

 8     61.396 PERCENT OF THE VERDICT.

 9          A MUCH MORE LOGICAL EXPLANATION, GIVEN WHAT THE JURY WAS

10     PRESENTED, WHICH IS MR. WAGNER'S FIGURE, MS. DAVIS'S FIGURE, IS

11     THE SPLITTING OF THE VERDICT.  THERE'S NO OTHER EXPLANATION IN

12     THIS CASE BECAUSE THE NUMBERS ARE SO SIMPLE AND THEY LINE UP SO

13     WELL TOGETHER BECAUSE IN THIS CASE THEY HEARD THE EVIDENCE,

14     THEY TOOK WHAT THE TWO EXPERTS DID, AND THEY SPLIT IT.

15          THAT IS WHAT MAKES IT A COMPROMISE VERDICT RATHER THAN,

16     FOR EXAMPLE, IN THE PRIOR CASE HERE WHERE WE DID NOT MAKE SUCH

17     A MOTION BECAUSE IT WAS NOT AN INSTANCE OF THAT.

18              THE COURT:  ALL RIGHT.  THANK YOU.

19          I'D LIKE TO ASK A FEW QUESTIONS ABOUT LOST PROFITS AND

20     THEN WE SHOULD TAKE OUR BREAK.  LET'S TAKE A BREAK AT 3:30.

21          LET'S MOVE ON TO LOST PROFITS.  I HAVE QUESTIONS FOR

22     SAMSUNG ON THIS QUESTION.

23          SO THE FIRST QUESTION IS, SAMSUNG HAD ALSO CHALLENGED

24     APPLE'S LOST PROFITS CASE AFTER THE 2012 TRIAL AND I HAD DENIED

25     SAMSUNG'S JMOL MOTION.
```

1      SO IF I PREVIOUSLY RULED THAT THIS LOST PROFITS CASE WAS

2      SUFFICIENT, AND IT WAS LARGELY THE SAME WHETHER IT WAS

3      MR. MUSIKA OR MS. DAVIS ACTING AS APPLE'S EXPERT, WHY SHOULD I

4      CHANGE THAT RULING NOW?

5            MS. MAROULIS:  YOUR HONOR, THERE ARE TWO RESPONSES TO

6      THAT.  FIRST OF ALL, WE NEED TO ASSESS POST-TRIAL MOTIONS BASED

7      ON THE EVIDENCE OF THE TRIAL THAT PRECEDED, SO WE STILL NEED TO

8      ADDRESS IT.

9      BUT THERE'S ONE VERY IMPORTANT DISTINCTION BETWEEN THE

10     PRIOR TRIAL AND THE CURRENT TRIAL WITH RESPECT TO LOST PROFITS,

11     AND THAT IS THE -- APPLE'S FAILURE TO SHOW THE ABSENCE OF

12     NON-INFRINGING ALTERNATIVES.

13     AS YOUR HONOR RECALLS, IN THIS TRIAL SAMSUNG DEMONSTRATED

14     THAT THERE WERE AT LEAST TWO INCREDIBLY VIABLE NON-INFRINGING

15     ALTERNATIVES, WHICH IS THE SAMSUNG PRODUCTS INTERCEPT AND

16     GALAXY ACE.

17     SAMSUNG SHOWED VARIOUS OTHER NON-INFRINGING ALTERNATIVES

18     IN THE FORM OF PRIOR ART, SUCH AS NOMURA, JEFF HAN, AND OTHER

19     TECHNOLOGIES.

20     BUT TO FOCUS TODAY, WE SHOULD LOOK AT THE TWO ACTUAL

21     PRODUCTS, TWO DEVICES THAT WERE IN EVIDENCE AS EVIDENCE OF

22     NON-INFRINGING ALTERNATIVES.

23     AS YOUR HONOR KNOWS, TO SHOW AVAILABILITY OF LOST PROFITS,

24     APPLE WOULD HAVE TO SATISFY PANDUIT FACTORS, ALL FOUR PANDUIT

25     FACTORS, IN PARTICULAR PANDUIT FACTOR 2 THAT CALLS ON A

```
 1     PATENTEE WHOSE BURDEN IT IS TO SHOW THE ABSENCE OF

 2     ALTERNATIVES.

 3            HERE APPLE FAILED TO DO THAT.

 4            WITH RESPECT TO INTERCEPT --

 5               THE COURT:  BUT WHAT IS THE -- I'M SORRY TO INTERRUPT

 6     YOU, BUT WHAT IF THE JURY JUST FOUND FOR THE INTERCEPT THAT

 7     THEY DIDN'T FIND THAT A PHONE THAT HAD A SLIDING KEYBOARD WOULD

 8     BE AN ACCEPTABLE ALTERNATIVE?

 9               MS. MAROULIS:  YOUR HONOR, WHEN ONE ASSESSES WHERE AN

10     ALTERNATIVE IS ACCEPTABLE, YOU LOOK SOLELY TO THE FEATURES THAT

11     ARE ACCUSED OF PATENT INFRINGEMENT.

12            IN OTHER WORDS, YOU CANNOT COMPARE THE NON-PATENTED

13     FEATURES OF THE PHONES.  YOU CANNOT LOOK AT THE OTHER PORTIONS

14     OF IT.

15            THE COURT LOOKS SPECIFICALLY TO HOW DOES THIS PHONE

16     COMPARE TO THE NON-INFRINGING ALTERNATIVE WITH RESPECT TO THE

17     ACCUSED FEATURE?

18            AND HERE WE HAD ADMISSIONS BY DR. SINGH THAT THE INTERCEPT

19     PHONE BEHAVED EXACTLY THE SAME WITH RESPECT TO THE ACCUSED

20     FUNCTIONALITY AS THE DEVICES SUBJECT TO THE '915 PATENT.

21            SO EVEN IF THERE WERE SOME DIFFERENCES BETWEEN THE

22     DEVICES, SUCH AS SLIDER KEYBOARD OR SIZE OF THE SCREEN, THAT

23     WOULD NOT DETRACT FROM THE PHONE'S AVAILABILITY AS A

24     NON-INFRINGING ALTERNATIVE.

25            FURTHERMORE, APPLE ITSELF HAS ACCUSED VARIOUS SAMSUNG
```

1    SLIDER PHONES OF INFRINGEMENT AND SOUGHT LOST PROFITS ON IT, SO

2    THE EXISTENCE OF A PHYSICAL KEYBOARD ITSELF CANNOT BE A

3    DISTINGUISHING FEATURE.

4         BUT MOST IMPORTANTLY, WHEN THE COURTS LOOK AT WHAT MAKES

5    IT AN ACCEPTABLE ALTERNATIVE, THE QUESTION IS, WHAT ARE THE

6    ADVANTAGES OF THE PATENTED FEATURES?  AND THE CASES THAT WE

7    CITED IN OUR BRIEFS, AND I'D LIKE TO TURN THE COURT'S ATTENTION

8    TO, ARE STANDARD HAVENS, PRESIDIO, AND KALMAN VERSUS BERLYN

9    CORPORATION.

10        SO BOTH WITH RESPECT TO THE INTERCEPT AND GALAXY ACE,

11   WHICH WERE NEW NEWS IN THIS TRIAL, SAMSUNG ESTABLISHED, EVEN

12   THOUGH IT WAS APPLE'S BURDEN, THAT THESE PHONES WERE, ONE,

13   NON-INFRINGING ALTERNATIVES, WE HAD ADMISSIONS FROM DR. SINGH

14   ON BOTH OF THEM; TWO, THEY WERE COMMERCIALLY SUCCESSFUL, WE

15   SHOWED SALES OF MORE THAN $270 MILLION WITH RESPECT TO

16   INTERCEPT THROUGH TESTIMONY OF MR. WAGNER.

17        WITH RESPECT TO GALAXY ACE, IT WAS ADMITTED BY MS. DAVIS

18   AND ALSO TESTIFIED TO BY MR. WAGNER THAT IT WAS AN AVAILABLE

19   COMMERCIALLY SUCCESSFUL PHONE.

20        AND FINALLY, BOTH OF THOSE PHONES WERE ON THE MARKET.

21        SO NON-INFRINGING, AVAILABLE, ACCEPTABLE.

22        SIMPLY PUT, THE EXISTENCE OF THESE NON-INFRINGING

23   ALTERNATIVES BARS LOST PROFITS.

24        AND ONE THING THAT IS PARTICULARLY IMPORTANT HERE IS THAT

25   IT'S NOT JUST ANY NON-INFRINGING ALTERNATIVES.  IT'S

1          NON-INFRINGING ALTERNATIVES OFFERED BY A DEFENDANT.

2              IN THE CASE WHERE NON-INFRINGING ALTERNATIVES ARE OFFERED

3     BY DEFENDANT AS OPPOSED TO, FOR EXAMPLE, A THIRD PARTY, THAT

4     SIMPLY CUTS OFF LOST PROFITS AS A MATTER OF LAW, AND THE CASE

5     LAW THAT WE'D LIKE YOUR HONOR TO CONSIDER ARE, AMONG OTHERS,

6     THE SLIMFORD CASE, CALICO BRANDS, AND FUJI PHOTO VERSUS JAZZ

7     PHOTO OUT OF DISTRICT OF NEW JERSEY.

8              THE COURT:  SO I WANT TO ASK A QUESTION ON THE GALAXY

9     ACE.  WHILE THE COURT DIDN'T HOLD THAT, AS A MATTER OF LAW, IF

10    A PRODUCT INFRINGED ANOTHER PATENT THAT IT COULD NOT SERVE AS A

11    NON-INFRINGING ALTERNATIVE, THE JURY STILL COULD HAVE FOUND

12    THAT THE GALAXY ACE WAS NOT AN ACCEPTABLE NON-INFRINGING

13    ALTERNATIVE BECAUSE IT DID INFRINGE OTHER PATENTS.

14             MS. MAROULIS:  SO GALAXY ACE -- LET ME BACKTRACK.

15    MS. DAVIS TESTIFIED THAT HER DESIGN AROUND PERIOD AS TO THOSE

16    TWO -- AS TO GALAXY ACE FOR THE OTHER TWO PATENTS, THE '381 AND

17    '163, WAS SUFFICIENTLY SHORT THAT EVEN IF ONE WERE TO CONSIDER

18    APPLE'S ARGUMENT THAT BEING -- INFRINGING OF SOME OTHER PATENT,

19    NOT '915, IS AN IMPEDIMENT TO NON-INFRINGING ALTERNATIVE, THESE

20    DEVICES WOULD HAVE BEEN DESIGNED AROUND.  YOU COULD DESIGN

21    AROUND BEFORE THE ACCOUNTING DAMAGES PERIOD STARTED.

22             SO EVEN IF ONE TAKES THAT INTO ACCOUNT, WHICH WE DON'T

23    THINK IT'S APPROPRIATE UNDER THE COURT'S PRIOR ORDERS SAYING

24    THAT APPLE'S RITE-HITE ARGUMENT IS NOT CORRECT, EVEN SO, UNDER

25    EVEN THE LONGEST DESIGN AROUND PERIOD THAT MS. DAVIS HAS, THESE

1    PHONES WOULD STILL BE CAPABLE OF BEING DESIGNED AROUND THE '163

2    AND '381 PATENTS.

3              THE COURT:  BUT WHAT SPECIFIC EVIDENCE WAS THERE THAT

4    THE NON-INFRINGING FEATURES IN THE GALAXY ACE AND THE INTERCEPT

5    COULD HAVE EASILY BEEN INCORPORATED INTO ANOTHER PRODUCT?

6              MS. MAROULIS:  YOUR HONOR, THE EVIDENCE WAS AS TO HOW

7    LONG IT WOULD TAKE TO DESIGN AROUND FOR THEM, AND THAT IS --

8    THAT WAS MS. DAVIS'S TESTIMONY.  I'M GOING TO FIND YOU A CITE

9    VERY SHORTLY, OR SHORTLY AFTER THE BREAK.

10        BUT IT WAS, FIRST OF ALL, APPLE'S BURDEN BECAUSE THIS WAS

11   REAL DESIGN AROUND -- I'M SORRY -- NON-INFRINGING ALTERNATIVES

12   AS OPPOSED TO HYPOTHETICAL ONES, SO THE BURDEN WAS ON APPLE.

13        BUT THE TESTIMONY OF MS. DAVIS THAT IT WOULD TAKE ONLY

14   FOUR WEEKS TO DESIGN AROUND THESE TWO PATENTS DEMONSTRATES THAT

15   THE PHONES WOULD BE READY TO SERVE AS NON-INFRINGING

16   ALTERNATIVES BEFORE THE ACCOUNTING PERIOD.

17             THE COURT:  BUT THAT'S A DIFFERENT QUESTION, ISN'T

18   IT, THAN TRYING TO INCORPORATE THE FEATURES FROM THE GALAXY ACE

19   AND THE INTERCEPT INTO ANOTHER PHONE?  THAT'S DIFFERENT THAN

20   THE SORT OF HYPOTHETICAL DESIGN AROUND.

21        WHAT EVIDENCE WAS THERE THAT THE NON-INFRINGING FEATURE OF

22   THE GALAXY ACE AND THE INTERCEPT COULD HAVE SOMEHOW BEEN

23   INCORPORATED INTO A DIFFERENT PRODUCT?

24             MS. MAROULIS:  YOUR HONOR, THE GRAIN PROCESSING LINE

25   OF CASES SUGGESTS THAT AS LONG AS THERE'S EVIDENCE THAT

```
 1          DEFENDANT HAS THE KNOW-HOW AND THE ABILITY TO CREATE A
 2     NON-INFRINGING ALTERNATIVE, THAT IS SUFFICIENT.
 3          SO IT WOULD BE INCONGRUENT IF, IN THE CASE OF
 4     GRAIN PROCESSING, YOU CAN CREATE FROM SCRATCH SOME HYPOTHETICAL
 5     NON-INFRINGING ALTERNATIVE AND THAT WOULD BE PERMISSIBLE.
 6          BUT HERE SAMSUNG ACTUALLY HAS A REAL PHONE AND IT COULD
 7     CHANGE IT IN A MATTER OF WEEKS IF IT NEEDED TO.
 8          AND THE TESTIMONY OF MS. DAVIS THAT I WAS LOOKING FOR IS
 9     AT TRANSCRIPT PAGES 12 --
10          THE COURT:  BUT SHE DIDN'T -- SHE DIDN'T TESTIFY
11     THAT -- YOU KNOW, SHE SAID THIS IS A CHANGE IN SOFTWARE AND YOU
12     WOULD HAVE TO CHANGE THE WHOLE SOFTWARE TO INCORPORATE THIS NEW
13     NON-INFRINGING FEATURE.
14          I DON'T THINK SHE PRESENTED ANY EVIDENCE THAT YOU COULD
15     TAKE WHAT WAS IN THE GALAXY ACE AND THE INTERCEPT THAT WAS
16     NON-INFRINGING AND SOMEHOW INCORPORATE THAT INTO A NEW AND
17     DIFFERENT PRODUCT.
18          MS. MAROULIS:  SHE DID NOT TESTIFY TO THAT, BUT SHE
19     DID TESTIFY THAT THE DESIGN AROUND WOULD BE COMPLETED BY
20     JULY 2010 IN THE INSTANCE OF '381 PATENT, THAT'S PAGES 1200,
21     LINES 23, THROUGH 1201, LINE 7.
22          AND IN THE CASE OF '163 PATENT, THAT IT WOULD BE DESIGNED
23     AROUND BY FEBRUARY 4, 2011, WHICH IS AT PAGES 1201, LINE 9 TO
24     LINE 17.
25          AGAIN, THIS WAS APPLE'S BURDEN TO SHOW THE ABSENCE OF
```

```
1     ALTERNATIVES.  SAMSUNG DIDN'T EVEN HAVE A BURDEN, BUT WE
2     SHOWED, THROUGH A COMBINATION OF CROSS-EXAMINATION OF DAVIS,
3     CROSS-EXAMINATION OF SINGH, THE ACTUAL DEVICES, AND THE
4     TESTIMONY OF MR. WAGNER AS TO THE SUCCESS OF THESE DEVICES,
5     THAT THEY WERE IN THE MARKET, THEY WERE AVAILABLE, AND, EVEN
6     THOUGH WE DISAGREE THAT THE OTHER TWO PATENTS ARE EVEN RELEVANT
7     TO THE CONSIDERATION, TO THE EXTENT YOUR HONOR WANTS TO
8     CONSIDER THE '381 AND '163 PATENT WITH RESPECT TO
9     NON-INFRINGING ALTERNATIVES, THEY COULD HAVE BEEN DESIGNED
10    AROUND BY ADMISSION OF THEIR OWN EXPERT IN TIME.
11              THE COURT:  ALL RIGHT.  THANK YOU.
12         LET ME ASK APPLE TWO QUESTIONS AND THEN WE'RE GOING TO
13     TAKE OUR BREAK.
14         LET ME ASK WHAT YOUR RESPONSE IS TO SAMSUNG'S ARGUMENT
15    THAT YOU DON'T LOOK AT THE PRODUCT TO DETERMINE WHETHER IT'S A
16    NON-INFRINGING ALTERNATIVE, YOU LOOK AT SOLELY THE ACCUSED
17    FEATURE.  SO YOU DON'T LOOK AT THE SLIDE OUT KEYBOARD FOR THE
18    INTERCEPT, YOU JUST LOOK AT WHAT IT DOES, THAT IT DOESN'T
19    INFRINGE THE PATENTS THAT HAVE BEEN ASSERTED.
20              MR. MCELHINNY:  THAT'S NOT THE LAW.  YOU HAVE TO LOOK
21     AT WHETHER OR NOT -- WHAT -- YOU HAVE TO GO BACK -- SAMSUNG
22     STARTS IN THE WEEDS HERE.  YOU HAVE TO GO BACK TO THE HIGH
23     LEVEL.
24         THE QUESTION IS, BUT FOR THE INFRINGEMENT, WOULD SOMEONE
25     HAVE BOUGHT THE APPLE PRODUCT?
```

```
 1            AND THE QUESTION IS, IS THERE A NON-INFRINGING ALTERNATIVE

 2     TO THE APPLE PRODUCT?  THAT'S WHAT WE'RE TRYING TO ACCOUNT FOR,

 3     BECAUSE PEOPLE DON'T BUY FEATURES, THEY BUY PRODUCTS.

 4            AND SO IF YOU LOOK AT AMERICAN SEATING, IF YOU LOOK AT ALL

 5     OF THE DECISIONS THAT HAVE BEEN -- THE IRON -- THE TOBAR CASE

 6     THAT WE CITED TO YOUR HONOR BEFORE, ALL OF THOSE LOOK AT

 7     WHETHER OR NOT EITHER THE ACTUAL PRODUCT THAT'S ON THE MARKET,

 8     OR THE HYPOTHETICAL PRODUCT THAT COULD HAVE BEEN DESIGNED,

 9     WHETHER OR NOT THEY WOULD HAVE BEEN AN ACCEPTABLE ALTERNATIVE

10     THAT SOMEONE ACTUALLY WOULD HAVE BOUGHT.

11            IF YOU THINK ABOUT IT, MOST NON-INFRINGING ALTERNATIVES

12     DON'T EVEN HAVE THE FEATURE.  THAT'S WHY THEY'RE

13     NON-INFRINGING.

14            THE ARGUMENT -- EVEN IN THIS CASE THE ARGUMENT WAS, WELL,

15     IF THEY DIDN'T BUY THE SAMSUNG PHONE, THEY WOULD HAVE BOUGHT

16     SOME OTHER ANDROID PHONE OR THEY WOULD HAVE BOUGHT SOME OTHER

17     NON-INFRINGING PHONE.

18            THAT'S THE NON-INFRINGING ALTERNATIVES THAT WE WERE

19     LOOKING AT, WHAT -- IF THEY COULDN'T HAVE GOTTEN THIS

20     INFRINGING SAMSUNG PHONE, WHAT PHONE WOULD THEY HAVE PURCHASED?

21            AND TO BE A NON-INFRINGING ALTERNATIVE, IT DOESN'T MATTER

22     WHETHER IT'S THE PHONE, WHETHER IT HAS THE FEATURE OR IT

23     DOESN'T HAVE THE FEATURE OR IT HAS SOME SUBSTITUTE FOR IT.

24            THE QUESTION IS, IF THE SAMSUNG PHONE WOULDN'T HAVE BEEN

25     AVAILABLE, WOULD THE CONSUMER HAVE PURCHASED IT?
```

```
 1              THE COURT:  LET ME ASK YOU ANOTHER QUESTION.  THE
 2     INTERCEPT AND THE CAPTIVATE SEEM TO OPERATE THE SAME, AND
 3     DR. SINGH ALSO TESTIFIED THAT THEY WERE THE SAME, BUT THE JURY
 4     DIDN'T COME TO THAT CONCLUSION.
 5          IS THERE A PROBLEM WITH OUR INFRINGEMENT VERDICT HERE IN
 6     THAT THE JURY FOUND THAT VERY SIMILAR PRODUCTS, SOME INFRINGED
 7     AND SOME DIDN'T?
 8              MR. MCELHINNY:  AS THEY SAY, LET ME ANSWER THAT
 9     QUESTION THIRD AND MAKE THREE POINTS BEFORE I GET TO IT.
10              THE COURT:  OKAY.
11              MR. MCELHINNY:  ONE, YOUR HONOR STARTED OFF WITH THE
12     CORRECT POINT, OF COURSE, WHICH IS YOUR HONOR HAS ALREADY
13     LOOKED AT THIS LOST PROFITS CASE THROUGH A JMOL AND UPHELD THE
14     LOST PROFITS CASE.
15          AND IN THE SECOND TRIAL, UNDER THE GROUND RULES, WE WERE
16     REQUIRED TO PRESENT THE SAME METHODOLOGY, THE SAME CASE WITH A
17     DIFFERENT EXPERT, AND WE DID, AND IF IT MET YOUR HONOR'S TEST
18     THE FIRST TIME, YOU WOULD EXPECT THAT IT WOULD MEET YOUR
19     HONOR'S TEST THE SECOND TIME.
20          SECONDLY, WHAT ALL OF THIS IS ABOUT -- I MEAN, IT'S AS IF
21     THE PERSON WHO WROTE SAMSUNG'S BRIEF PUT THEIR FINGERS IN THEIR
22     EARS AND REFUSED TO LISTEN TO OUR EVIDENCE, BECAUSE WHAT WE'RE
23     FIGHTING WITH YOU ABOUT IS QUESTIONS OF FACT THAT WERE
24     SUBMITTED TO THE JURY.
25          WE ARGUED TO YOUR HONOR TO EXCLUDE THOSE NON-INFRINGING
```

1    ALTERNATIVES, THE PHONES THAT WERE FOUND NON-INFRINGING IN THE

2    FIRST CASE, BECAUSE THEY WOULD LEAD TO CONFUSION.

3         AND YOUR HONOR ALLOWED THEM IN, BUT YOU SPECIFICALLY, IN

4    THAT RULING, SAID SAMSUNG CANNOT SIMPLY RELY ON THE VERDICT.

5    THEY HAVE TO CONVINCE THE JURY THAT THESE PHONES WOULD HAVE

6    BEEN AN ACCEPTABLE NON-INFRINGING ALTERNATIVE.

7         AND SO THAT WAS THEIR BURDEN.  THEY ARGUED IT LIKE CRAZY.

8    MS. MAROULIS CLEARLY CAN'T UNDERSTAND HOW ANY REASONABLE JURY

9    COULD HAVE DISAGREED.

10        DR. SINGH DID NOT SAY, AND NO ONE ON OUR SIDE SAID IT WAS

11   A NON-INFRINGING -- AN ACCEPTABLE NON-INFRINGING ALTERNATIVE.

12   THEY TALKED ABOUT THE SLIDE, THEY TALKED ABOUT THE SIZE OF THE

13   SCREEN, THEY TALKED ABOUT THE FACT THAT THE ACE WAS NOT ON SALE

14   IN THE UNITED STATES THROUGH ANY CARRIER.

15        SO THE JURY WAS PRESENTED WITH THE FACTUAL QUESTION OF

16   WHETHER OR NOT THESE WERE ACCEPTABLE NON-INFRINGING

17   ALTERNATIVES, AND AS ON EVERY OTHER ISSUE, THEY RULED AGAINST

18   SAMSUNG.

19        AND WHETHER OR NOT THEY WERE CORRECT GIVEN THE MIXED

20   EVIDENCE IN FRONT OF THEM OBVIOUSLY IS NOT FOR -- YOU KNOW,

21   IT'S SOMETHING THAT YOUR HONOR IS GOING TO RE-JUDGE ON A JMOL.

22        BUT THE OTHER POINT THAT'S MISSING HERE IS THAT MS. DAVIS

23   DOUBLY ACCOUNTED FOR THESE THINGS, BECAUSE WE PUT IN THE

24   EVIDENCE THAT SAID THEY WERE NON-INFRINGING ALTERNATIVES, BUT

25   MS. DAVIS TREATED THEM AS THOUGH THEY WERE AND GAVE THEM THE

1    MARKET SHARE THAT THEY WERE ENTITLED TO UNDER THE MOR-FLO

2    ANALYSIS.

3         SO MAYBE -- IF, IN FACT -- AND WE DON'T KNOW FOR SURE --

4    IF, IN FACT, WE CONVINCED THE JURY THAT THEY WERE NOT

5    ACCEPTABLE, ARGUABLY WE COULD HAVE GOTTEN MORE MONEY.

6         BUT THE DAMAGES THEORY THAT WE PUT IN UNDER THE MOR-FLO

7    ANALYSIS GAVE THEM FULL CREDIT AS IF THEY WERE NON-INFRINGING

8    ALTERNATIVES AND ACCOUNTED FOR THEM AS A PERCENTAGE OF THE

9    MARKETPLACE.  IT'S EXACTLY THE SAME WAY MR. MUSIKA DID IT IN

10   THE FIRST TRIAL.

11        THE COURT:  WHAT'S GOING TO HAPPEN ON APPEAL WHEN IT

12   TURNS OUT --

13        MR. MCELHINNY:  WE'RE GOING TO WIN.

14      (LAUGHTER.)

15        MR. MCELHINNY:  SORRY.

16        THE COURT:  -- THAT SAMSUNG'S EXPERT TESTIFIED THAT

17   THESE PRODUCTS ALL OPERATED THE SAME WAY, AT LEAST AS FAR AS

18   THE '915 PATENT, THE VIDEOS LOOK LIKE THEY DID, AND THE JURORS

19   SAID, WELL, SOME OF THEM INFRINGE AND SOME OF THEM DON'T?

20        MR. MCELHINNY:  WHAT'S -- I MEAN, SERIOUSLY, WHAT'S

21   GOING TO HAPPEN ON APPEAL --

22        THE COURT:  UM-HUM.

23        MR. MCELHINNY:  -- IS THE FEDERAL CIRCUIT IS GOING TO

24   SAY THE SAME THING THAT I HOPE YOU WILL SAY, WHICH IS EVERYBODY

25   GOT TO TRY THIS ISSUE, EVERYBODY GOT TO PUT THE EVIDENCE IN

```
 1        FRONT OF THE JURY, SAMSUNG MADE THESE SUPER COMPELLING

 2        ARGUMENTS, AND THE JURY DIDN'T FIND THEM TRUE, OR THEY

 3        ACCOUNTED FOR THEM IN THE MOR-FLO ANALYSIS, ONE WAY OR THE

 4        OTHER.

 5             BUT WE DID NOT RECOVER MONEY BECAUSE WE TOOK THE

 6        CONSERVATIVE VIEW BY GIVING THEM AN APPROPRIATE MARKET SHARE.

 7                  THE COURT:  ALL RIGHT.  JUST --

 8                  MS. MAROULIS:  YOUR HONOR, MAY I CORRECT JUST A

 9        COUPLE POINTS?

10                  THE COURT:  VERY SHORT, PLEASE.

11                  MS. MAROULIS:  YES.  FIRST OF ALL, APPLE ARGUES THEY

12        COULD HAVE GOTTEN MORE MONEY, BUT THEY DIDN'T.

13             WITH RESPECT TO LOST PROFITS, THEY GOT 100 PERCENT OF WHAT

14        THEY SOUGHT, SO THERE'S NO QUESTION THERE.

15             SECOND, WITH RESPECT TO MARKET SHARE, MARKET SHARE IS NOT

16        A SUBSTITUTION FOR PROVING BUT FOR CAUSATION.  THERE'S A NUMBER

17        OF FEDERAL CIRCUIT CASES THAT SAY MARKET SHARE ALONE IS NOT --

18        YOU CANNOT RELY ON THAT FOR BUT FOR CAUSATION.  IT'S THE BIC

19        LEISURE CASE, IT'S THE CALICO BRANDS CASE AND THEY'RE ALL IN

20        OUR BRIEFS.

21             AND THERE ARE CASES THAT SAY WHERE THERE ARE

22        NON-INFRINGING ALTERNATIVES OFFERED BY DEFENDANTS, YOU CANNOT

23        RELY ON MARKET SHARE.  MARKET SHARE IS MERELY A WAY TO ALLOCATE

24        THAT IN A MULTI-COMPETITOR MARKETPLACE.

25             BUT IT DOES NOT ABSOLVE APPLE FROM PROVING CAUSATION AND
```

```
 1        FROM PROVING ABSENCE OF NON-INFRINGING ALTERNATIVES, WHICH THEY

 2        FAILED TO DO HERE.

 3              AND I DON'T BELIEVE MR. MCELHINNY ADDRESSED THE FACT THAT

 4        INTERCEPT WAS ON THE MARKET ALL ALONG, WAS NOT ENCUMBERED BY

 5        ANY PATENT INFRINGEMENT OF ANY KIND, AND WAS AVAILABLE TO

 6        SAMSUNG TO SELL.

 7              AND IN THE BUT FOR WORLD, SAMSUNG WOULD NOT JUST SIT BACK

 8        AND DO NOTHING, BUT WOULD SELL THE OTHER PHONES THAT IT COULD.

 9              THE COURT:  OKAY.  THANK YOU.

10        LET'S -- OH, OKAY.

11              MR. MCELHINNY:  JUST TO REMIND YOUR HONOR, THE JURY

12        INSTRUCTION NUMBER 23 SAID APPLE COULD PROVE THAT THERE WERE NO

13        ACCEPTABLE NON-INFRINGING SUBSTITUTES FOR EACH OF THE

14        INFRINGING PRODUCTS OR, IF THERE WERE, THE NUMBER OF THE SALES

15        OF EACH PRODUCT MADE BY SAMSUNG THAT APPLE WOULD HAVE SOLD.

16              THE COURT:  ALL RIGHT.  THANK YOU.

17        LET'S GO AHEAD AND TAKE A TEN MINUTE BREAK NOW.  I ONLY

18        HAVE ABOUT SIX QUESTIONS ON REASONABLE ROYALTY, AND ONLY A

19        COUPLE MORE ON SAMSUNG'S NEW TRIAL MOTION, SO I THINK WE'LL END

20        HOPEFULLY MUCH EARLIER THAN WE NORMALLY DO TODAY.

21        ALL RIGHT.  THANK YOU.

22        (RECESS FROM 3:39 P.M. UNTIL 3:52 P.M.)

23              THE COURT:  ALL RIGHT.  PLEASE TAKE A SEAT.  WELCOME

24        BACK.

25              I WANT TO SPEND JUST ABOUT ONE AND A HALF MINUTES ON THE
```

1    SAMSUNG REVENUE ISSUE, AND THEN I WOULD LIKE TO SPEND THE

2    REMAINING TIME ON REASONABLE ROYALTY.  I HAVE MORE QUESTIONS

3    FOR THAT ONE AND I THINK THAT ONE IS A LITTLE, MAYBE A CLOSER

4    ISSUE.

5         OKAY.  SO LET'S GO TO SAMSUNG'S REVENUES, THE 3.5 BILLION

6    NUMBER.

7         WHO IS -- WHOSE ISSUE IS THAT?

8              MS. MAROULIS:  IS THIS THE NEW TRIAL MOTION, YOUR

9    HONOR?

10             THE COURT:  YES, PLEASE.

11             MR. PRICE:  THAT'S MINE, YOUR HONOR.

12             THE COURT:  OKAY.  AND THE QUESTION I HAD IS, WHAT IS

13   THE MISCARRIAGE OF JUSTICE HERE?

14             MR. PRICE:  IS THERE A MISCARRIAGE OF JUSTICE?

15             THE COURT:  YES.  AND WHAT IS IT?  WHAT IS IT THAT

16   AMOUNTS TO A MISCARRIAGE OF JUSTICE?

17             MR. PRICE:  WELL, THE MISCARRIAGE OF JUSTICE IS THAT

18   THE JURY CAME BACK WITH AN AWARD OF HUNDREDS OF MILLIONS OF

19   DOLLARS.

20             THE COURT:  OKAY.

21             MR. PRICE:  AND THAT THEY WERE TOLD THAT A CHECK

22   AGAINST AN AWARD FOR HUNDREDS OF MILLIONS OF DOLLARS WAS THAT

23   THE AMOUNT THAT APPLE WAS ASKING FOR WAS A SMALL PERCENTAGE OF

24   $3.5 BILLION IN REVENUES WHEN, IN FACT, THAT WAS AN

25   INAPPROPRIATE COMPARISON, AND THAT THE AMOUNT THAT SAMSUNG'S

```
 1        EXPERT, MR. WAGNER, SAID WOULD BE APPROPRIATE DAMAGES WAS

 2        MINUSCULE, AGAIN, COMPARED TO A NUMBER WHICH SHOULD NOT HAVE

 3        BEEN USED AS A COMPARISON, WHICH IS THE $3.5 BILLION.

 4             SO IT'S SET -- DAMAGES ARISE FROM THE JURY, AS ONE OF THE

 5        CASES SAID, WHICH MADE THEM COMFORTABLE WITH AWARDING DAMAGES

 6        IN THE HUNDREDS OF MILLIONS OF DOLLARS BECAUSE IT WAS NOTHING

 7        COMPARED TO THE $3.5 BILLION IN REVENUE.

 8             THE COURT:  WHAT ABOUT APPLE'S ARGUMENT THAT THERE

 9        WEREN'T CONTEMPORANEOUS OBJECTIONS?  CAN YOU POINT ME TO OTHERS

10        OTHER THAN THE OBJECTION TO MS. DAVIS'S SLIDES AND TO SAMSUNG'S

11        JMOL MOTION AFTER THE CLOSE OF APPLE'S CASE?  WERE THERE ANY

12        OTHERS?

13             MR. PRICE:  THOSE ARE THE ONLY TWO THAT I'M AWARE OF,

14        YOUR HONOR.

15             THE COURT:  OKAY.

16             MR. PRICE:  AND WE BELIEVE, AGAIN, UNDER THE FEDERAL

17        RULES OF EVIDENCE, YOU DON'T NEED TO KEEP REPEATING THOSE

18        OBJECTIONS.

19             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

20        CAN WE GO TO THE REASONABLE ROYALTY?

21             MR. MCELHINNY:  MAY I --

22             THE COURT:  I'LL START WITH APPLE FIRST.

23        I'M SORRY, WHAT WAS THAT?

24             MR. MCELHINNY:  I JUST WANT TO MAKE ONE POINT FOR THE

25        RECORD.
```

```
1              THE COURT:  OKAY.  GO AHEAD.  ON THE LAST ISSUE?

2              MR. MCELHINNY:  YES, YOUR HONOR.

3              THE COURT:  OKAY.

4              MR. MCELHINNY:  I JUST WANT TO CALL YOUR ATTENTION TO

5      DEFENDANT'S EXHIBIT 753, WHICH SAMSUNG PUT INTO EVIDENCE, AND

6      PAGE 4, WHICH SHOWS THE ALLEGEDLY OUTRAGEOUS NUMBER OF

7      $134 BILLION AS THEIR PROFIT, WHICH THEY PUT INTO EVIDENCE TO

8      SUPPORT THEIR ARGUMENT ABOUT HOW LOW THEIR OPERATING MARGIN WAS

9      IN ORDER TO CONVINCE THE JURY THAT THEY SHOULD AWARD THE NUMBER

10     THAT THEY CHOSE.

11             MR. PRICE:  YOUR HONOR, THE -- MAY I RESPOND QUICKLY

12     TO THAT?

13             THE COURT:  PLEASE, GO AHEAD.  GO AHEAD.

14             MR. PRICE:  YOUR HONOR, THAT WASN'T A NUMBER THAT WAS

15     PUT INTO EVIDENCE TO TALK ABOUT PROFIT MARGINS.

16          WHAT YOU CAN'T DO IS USE THAT NUMBER, EVEN IF IT IS IN

17     EVIDENCE, TO CALCULATE PERCENTAGES TO ARGUE THAT THE AMOUNT OF

18     DAMAGES THAT YOU ARE REQUESTING IS MINUSCULE COMPARED TO A HUGE

19     AMOUNT OF REVENUE WHICH IS UNRELATED TO THE PRODUCTS AT ISSUE.

20          SO THAT'S THE HARM HERE.  IT'S THE USE OF THAT PERCENTAGE

21     CALCULATION WHICH APPLE DID AS A CHECK, AND THAT'S WHAT'S

22     CONDEMNED IN THE CASES.

23             THE COURT:  ALL RIGHT.  LET ME GO TO REASONABLE

24     ROYALTY, AND LET ME START WITH APPLE.

25             MR. MCELHINNY:  YES, YOUR HONOR.
```

```
 1              THE COURT:  OKAY.  SO MS. DAVIS'S REPORT, I THINK,
 2    SUFFICIENTLY EXPLAINED HOW SHE GOT TO THE NUMBERS THAT SHE DID,
 3    BUT HER TESTIMONY AT TRIAL WAS MUCH, MUCH TRUNCATED.
 4         SO IF THE COURT WERE TO FIND THAT MS. DAVIS'S TRIAL
 5    TESTIMONY WAS NOT SUFFICIENT IN ESTABLISHING HOW SHE ARRIVED AT
 6    HER NUMBERS, IS IT SUFFICIENT THAT SHE ACTUALLY DID HAVE A GOOD
 7    BASIS IN HER REPORT, BUT SHE JUST DIDN'T PUT IT ON THE RECORD
 8    DURING TRIAL?  OR HOW AM I SUPPOSED TO DEAL WITH THAT QUESTION?
 9              MR. MCELHINNY:  FOR THE PURPOSES OF ANSWERING YOUR
10    ARGUMENT, I'M GOING TO TAKE YOUR, YOUR ASSUMPTIONS THAT YOU'VE
11    GIVEN ME.  I'M NOT GOING TO WASTE YOUR TIME -- I COULD WASTE
12    YOUR TIME ABOUT WHETHER OR NOT WHAT SHE ACTUALLY SAID WAS
13    SUFFICIENT, AND I MAY HAVE TO COME BACK TO THAT.
14         BUT JUST USING YOUR FACT PATTERN, FIRST, WE HAVE TO LOOK
15    AT THE, THE VERSATA CASE, THE RECENT FEDERAL CIRCUIT CASE FROM
16    2013 THAT DISTINGUISHES BETWEEN OBJECTIONS THAT SHOULD BE MADE
17    AT A DAUBERT AND THOSE THAT ARE PROPERLY BROUGHT UP ON A JMOL.
18    OKAY?
19              AND CHALLENGES TO THE METHODOLOGY, CHALLENGES TO THE
20    REPORT, CHALLENGES ABOUT HOW YOU GOT TO THE NUMBER, CHIEF
21    JUDGE RADER SAID THAT'S DAUBERT MATERIAL.  YOU CAN'T LOSE THAT
22    IN DAUBERT, FIGHT IT OUT IN FRONT OF THE JURY, AND THEN COME
23    BACK AND REARGUE IT AS A JMOL.  OKAY?
24              THE COURT:  UM-HUM.
25              MR. MCELHINNY:  ALL -- AND, AGAIN, I'M TAKING YOUR --
```

```
1      I'M TAKING THE FACTS AS YOU STATED THEM.

2              THE COURT:  AND LET ME JUST CLARIFY.  THE FACTS THAT

3      I'M STATING ARE NOT DAUBERT TYPE CHALLENGES.  IT'S JUST MORE

4      SUFFICIENCY OF THE EVIDENCE, THAT NOT ENOUGH OF IT GOT OUT ON

5      THE RECORD THROUGH TESTIMONY AND THAT'S WHAT MAKES IT

6      INSUFFICIENT, NOT THAT THE METHODOLOGY WAS WRONG OR SOMETHING

7      LIKE THAT.

8              MR. MCELHINNY:  ALL THE FEDERAL RULES REQUIRE --

9              THE COURT:  OKAY.

10             MR. MCELHINNY:  -- TO PROVE A POINT --

11             THE COURT:  UM-HUM.

12             MR. MCELHINNY:  -- IS TO HAVE AN EXPERT GIVE AN

13     OPINION.  IF THE JURY ACCEPTS THE OPINION, THAT IS SUFFICIENT

14     EVIDENCE TO UPHOLD A VERDICT.

15         WE HAD THIS PROBLEM, YOU'LL REMEMBER, AT THE FIRST TRIAL

16     WITH MR. HAUSER BECAUSE -- AGAIN, THAT IS SUFFICIENT.  AS AN

17     ADVOCATE, NORMALLY YOU DON'T DO THAT BECAUSE YOU DON'T WANT TO

18     RISK THE FACT THAT THE JURY WILL JUST COME UP AND ACCEPT THAT

19     AND SO YOU EXPLAIN -- YOU GIVE THE BACKGROUND AND SORT OF GET

20     TO THE CREDIBILITY SO THAT THE JURY WILL BELIEVE YOUR EXPERT

21     VERSUS ANOTHER EXPERT.

22             THE COURT:  SO YOU'RE SAYING IF AN EXPERT JUST GIVES

23     THE OPINION WITHOUT GIVING THE BASIS FOR THE OPINION, THAT JUST

24     GOES TO WEIGHT AND NOT ADMISSIBILITY?

25             MR. MCELHINNY:  I THINK THAT'S --
```

```
1              THE COURT:  IS THAT WHAT YOU'RE SAYING?

2              MR. MCELHINNY:  I THINK THAT'S BLACK LETTER FEDERAL

3    LAW, YOUR HONOR.

4          I DON'T THINK THAT'S WHAT HAPPENED HERE.

5              THE COURT:  UM-HUM.

6              MR. MCELHINNY:  BUT I THINK THAT -- I THINK THAT'S

7    THE SIMPLE LEGAL ANSWER TO YOUR QUESTION.

8          THEY HAD AN OPPORTUNITY TO CROSS-EXAMINE.  THEY HAD AN

9    OPPORTUNITY TO SHOW -- SHE HAD TO WIN THE BATTLE OF EXPERTS

10   BETWEEN HER AND MR. WAGNER AND THE JURY HAD TO ACCEPT HER

11   OPINION BECAUSE THAT'S HOW THESE -- PARTICULARLY IN

12   GEORGIA PACIFIC ANALYSES AND IN ROYALTY, WHEN YOU'RE IN A

13   HYPOTHETICAL WORLD, YOU'RE NOT PROVING WHAT ACTUALLY HAPPENED,

14   YOU'RE GETTING AN EXPERT TO GIVE AN OPINION ABOUT WHAT WOULD

15   HAVE HAPPENED AT A NEGOTIATION THAT NEVER TOOK PLACE, AND IT IS

16   THAT OPINION THAT THE JURY ULTIMATELY WEIGHS AGAINST THE

17   COMPETING OPINION.

18              THE COURT:  BUT DON'T I STILL HAVE TO DO THE ANALYSIS

19   OF WHETHER THERE'S SUFFICIENT EVIDENCE TO SUPPORT A REASONABLE

20   JURY'S FINDING IN YOUR FAVOR?  AND WHAT IF I JUST FIND THAT SHE

21   SIMPLY GAVE A CONCLUSION AND NOTHING ELSE?

22              MR. MCELHINNY:  THAT'S --

23              THE COURT:  THERE WOULD NOT BE A BASIS FOR A JURY TO

24   FIND IN YOUR FAVOR.

25              MR. MCELHINNY:  I DON'T WANT TO BE DEFENDING THIS AS
```

```
1          MY POSITION, BUT THE ANSWER TO YOUR QUESTION IS, THAT'S ENOUGH.

2               THE COURT:  UM-HUM.

3               MR. MCELHINNY:  IT'S ENOUGH IF SHE COMES AND SAYS,

4     "LADIES AND GENTLEMEN OF THE JURY, I DID ALL THE WORK.  MY WORK

5      IS IN MY REPORT.  I DON'T HAVE ENOUGH TIME TO SHOW YOU MY

6      REPORT, BUT IT'S SITTING RIGHT HERE.  AND AS A RESULT OF ALL

7      THIS TIME, I GOT TO $1.43."

8           AND IF YOUR HONOR HAS ALLOWED THAT TESTIMONY TO COME IN,

9      AND IF THEY HAVE AN OPPORTUNITY TO CROSS-EXAMINE AND THEY

10     CHOOSE NOT TO, AND IF THE JURY BELIEVES IT, THAT'S WHAT THE

11     JURY -- IN ALL OF THESE CASES, ULTIMATELY THE JURY IS ACCEPTING

12     ONE EXPERT'S OPINION OVER THE OTHER EXPERT'S OPINION.

13          NOW, THAT'S THE DIFFERENCE BETWEEN THIS DAUBERT AND --

14     IT -- YOU'RE THE GATEKEEPER.  IT'S YOUR JOB TO MAKE SURE THAT

15     THE OPINION IS, IN FACT, CREDIBLE, ACCEPTED, AND ALL THE REST

16     OF THAT KIND OF STUFF, AND THAT'S THE DAUBERT SIDE OF IT.

17          BUT ONCE WE GET TO THE ABILITY TO GIVE HER OPINION, HOW

18     MUCH BACKGROUND WE GIVE AND HOW MUCH EXPLANATION AND ALL THE

19     LOGIC TO IT, THAT'S -- THAT'S A MATTER OF HOW IT COMES OUT IN

20     THE TRIAL AND HOW MUCH TIME YOU HAVE AND WHERE YOU PUT YOUR

21     TIME IN YOUR DESIRE TO CONVINCE THE JURY THAT YOUR EXPERT KNOWS

22     WHAT SHE'S TALKING ABOUT.

23          I DO WANT COME BACK AND FIGHT THE HYPOTHETICAL BECAUSE --

24               THE COURT:  ALL RIGHT.  GO AHEAD.

25               MR. MCELHINNY:  -- BECAUSE SHE DID PUT IN, AND WE
```

1    USED A SLIDE, BUT SHE PUT IN HER EXHIBIT 26 AND IT HAD THE LAST

2    PAGE, WHICH WAS A SUMMARY OF THE WORK THAT SHE DID THAT SHOWED

3    THE THREE METHODS THAT SHE HAD USED, THE INCOME METHOD AND THE

4    OTHER TWO, AND SHE GAVE THE RANGES THAT SHE FOUND.

5         SHE GAVE THE SUMMARY OF THE WORK THAT SHE HAD DONE.  AND

6    AS YOU'LL RECALL, A LARGE PART OF THE WORK THAT SHE HAD DONE

7    WAS BASED ON EVIDENCE GIVEN BY OTHERS.  SO HER, HER OPINIONS

8    WERE FORMED ON THE TESTIMONY -- BY THE TESTIMONY OF

9    DR. BALAKRISHNAN, BY DR. SINGH IN TERMS OF THE VALUE OF THESE

10   PARTICULAR FEATURES.  THEY WERE BASED ON -- I KNOW YOUR HONOR

11   WANTS TO TALK ABOUT THIS AT LENGTH -- THE HAUSER REPORT.

12        SHE TOOK ALL OF THAT INTO CONSIDERATION IN TERMS OF COMING

13   UP WITH A RANGE, AND THAT WAS LAID OUT FOR THE JURY IN EXHIBIT

14   26.

15        AND THEN SHE TALKED ABOUT HOW SHE APPLIED THE

16   GEORGIA PACIFIC FACTORS AND WHETHER OR NOT -- HOW SHE PICKED

17   WITHIN THAT RANGE IN ORDER TO COME TO HER NUMBER.

18        I DON'T THINK THAT -- I MEAN, I DON'T GET TO CHOOSE HERE,

19   YOU GET TO RULE ON THE MOTION .  BUT THAT'S A LONG WAY FROM

20   SIMPLY COMING IN AND SAYING "IT'S $1.22, TRUST ME."

21             THE COURT:  LET ME ASK YOU ABOUT HER INCOME APPROACH.

22   HOW DID SHE GET TO HER FINAL PER UNIT NUMBER?  DID SHE USE

23   SAMSUNG'S OVERALL PROFITS AND THEN JUST DIVIDE IT BY ALL THE

24   INFRINGING SALES?  OR DID SHE LOOK AT ONLY THE PATENTED

25   FEATURES?

1       MR. MCELHINNY:  SHE -- SHE LOOKED AT THE INCOME, NOT

2   JUST FOR SAMSUNG, BUT FOR APPLE, THAT THEY MADE PER PHONE, AND

3   THEN SHE ALLOCATED THAT INCOME AS TO VARIOUS FEATURES OF THE

4   PHONE.  SHE TALKED ABOUT SCREEN SIZE, SHE TALKED ABOUT FEATURES

5   THAT SHE HAD TO TAKE INTO ACCOUNT; THEN SHE TALKED ABOUT THE

6   EVIDENCE THAT OTHER WITNESSES HAD GIVEN ABOUT THE VALUE OF THE

7   PHONES; AND THEN SHE USED HER PROFESSIONAL JUDGMENT TO FIGURE

8   OUT WHAT PERCENTAGE OF THAT INCOME WAS APPROPRIATELY

9   ATTRIBUTABLE TO THE SPECIFIC PATENTED FEATURES AT ISSUE HERE IN

10  THIS CASE.

11      THIS IS ALL LAID OUT IN HER REPORT.  THIS DID, IN FACT,

12  SURVIVE THE DAUBERT CHALLENGE AND IT DID SURVIVE IN THE FIRST

13  TRIAL WHEN MR. MUSIKA DID EXACTLY THE SAME THING.

14      BUT THAT'S WHERE HER PROFESSIONAL JUDGMENT CAME IN.

15      WHAT SHE DIDN'T DO IS SHE DIDN'T TAKE THE ENTIRE VALUE OF

16  THE PHONE AND EMPLOY -- AND APPLY A REDUCED PERCENTAGE.  IN

17  OTHER WORDS, SHE DISASSEMBLED THE BASE IN ORDER TO GET TO THE

18  VALUE OF THE PATENTED FEATURES.

19      THE COURT:  AND HOW DID SHE DO THAT?  HOW DID SHE GET

20  TO THE PROFITS DUE SOLELY TO THE PATENTED FEATURES?

21      MR. MCELHINNY:  BY APPLYING HER EXPERT OPINION TO ALL

22  OF THE DATA THAT WAS AVAILABLE TO HER ON THAT ISSUE.

23      AGAIN, IT'S FOR THE PURPOSES OF WHAT WOULD HAVE HAPPENED

24  IN A HYPOTHETICAL NEGOTIATION AND WHAT THE PARTIES WOULD HAVE

25  BEEN THINKING HAD THEY EVER HAD A NEGOTIATION THAT NEVER

1    HAPPENED.

2            THE COURT:  UM-HUM.  AND SO YOU'RE SAYING SHE DID AN

3    ALLOCATION FOR PROFITS SOLELY FOR THE FEATURES BY -- SAY THAT

4    AGAIN HOW SHE DID THAT.

5            MR. MCELHINNY:  I WOULDN'T SAY PROFITS.

6            THE COURT:  OKAY.

7            MR. MCELHINNY:  I WOULD SAY SHE CAME TO A VALUE, AN

8    INCOME NUMBER FOR THE INDIVIDUAL FEATURES BY APPLYING HER

9    JUDGMENT AND THE EVIDENCE THAT SHE HAD IN FRONT OF HER TO THE

10   RANGE OF INCOME THAT WAS AVAILABLE AS EITHER SAMSUNG OR APPLE

11   WOULD HAVE DONE, HYPOTHETICALLY, HAD THEY HAD THIS HYPOTHETICAL

12   NEGOTIATION.  SHE'S RECREATING A NEGOTIATION THAT NEVER

13   HAPPENED.

14           THE COURT:  I'M STILL NOT CLEAR ON HOW SHE DID THAT.

15   I KNOW YOU'RE REASSURING ME THAT SHE DIDN'T JUST TAKE THE

16   OVERALL INCOME AND JUST DIVIDE IT BY SALES.

17           MR. MCELHINNY:  I DON'T HAVE HER REPORT SPECIFICALLY

18   IN FRONT OF ME, BUT WHAT SHE DID IS SHE TOOK THE REVENUE

19   NUMBERS --

20           THE COURT:  UM-HUM.

21           MR. MCELHINNY:  -- AND THEN SHE TOOK -- IN SPECIFIC

22   EXAMPLES, SHE SAID "DR. BALAKRISHNAN TELLS ME THIS IS AN

23   IMPORTANT FEATURE BECAUSE IT DOES THIS AND THIS."

24           THE COURT:  UM-HUM.

25           MR. MCELHINNY:  SHE TOOK HAUSER'S SURVEY, WHICH I

```
 1        WILL REVISIT I GUESS JUST BRIEFLY.  WE'RE NOT USING THE ACTUAL

 2        NUMBERS THAT HAUSER CAME UP WITH, BUT WE'RE USING HAUSER'S

 3        EXPERT OPINION ABOUT THE, THE VALUE THAT CONSUMERS APPLY TO

 4        THIS FEATURE BASED ON A TESTING METHOD THAT HAS BEEN AUDITED,

 5        CHECKED, CONFIRMED, CONFIRMED IN THE LITERATURE THAT IT WORKS,

 6        AND THAT GIVES HER -- I MEAN, THAT GAVE HER A --

 7                THE COURT:  BUT WE ALREADY TALKED ABOUT THE FACT THAT

 8        THERE'S NO DENOMINATOR FOR HIS NUMBER.

 9                MR. MCELHINNY:  THAT'S --

10                THE COURT:  HIS NUMBER WILL EXCEED THE BASE PRICE OF

11        THE PHONE.  SO HOW DID SHE USE THAT?

12                MR. MCELHINNY:  ALL RIGHT.  LET ME STEP BACK.  I WILL

13        GET INTO THIS JUST FOR A MINUTE, WHICH IS REALLY DANGEROUS

14        BECAUSE I KNOW THE LEAST ABOUT IT OF ALL THE PEOPLE HERE.

15            BUT THE TESTING PROCESS ITSELF --

16                THE COURT:  UM-HUM.

17                MR. MCELHINNY:  -- USING NOT REAL DOLLARS --

18                THE COURT:  UM-HUM.

19                MR. MCELHINNY:  -- USING NUMBERS THAT ARE PUT IN

20        BASED ON THE DESIGN OF THE TEST HAS BEEN VALIDATED, DESPITE THE

21        QUESTIONS THAT YOUR HONOR ASKED, DESPITE THE NUMBER OF

22        DISTRACTION FACTORS, DESPITE THE FACT THAT OTHER

23        NON-INFRINGING -- THERE ARE YEARS AND YEARS OF USING THIS TEST

24        AND SCIENTIFIC STUDIES AND THE FACT THAT IT IS USED IN THE

25        MARKETPLACE THAT SHOW, DESPITE YOUR INITIAL SKEPTICISM AND MY
```

```
 1        INITIAL SKEPTICISM, JUDGE ALSUP'S INITIAL SKEPTICISM, BUT NOT

 2     THE FEDERAL CIRCUIT'S AND NOT JUDGE SPERO'S, THE TEST WORKS.

 3     THAT'S WHAT WE KNOW FROM THE VALIDATION.

 4             THE COURT:  WELL, THE TEST WORKS IF YOU JUST WANT TO

 5     SAY THERE'S DEMAND FOR THE PATENTED FEATURE.

 6             MR. MCELHINNY:  AH.  AH-HA.

 7             THE COURT:  BUT THIS IS SOMETHING DIFFERENT.

 8             MR. MCELHINNY:  NO.

 9             THE COURT:  YOU'RE SAYING SHE SOMEHOW USED HIS, WHAT,

10     WILLING TO PAY NUMBER TO DETERMINE WHAT THE ALLOCATION SHOULD

11     BE FOR PATENTED FEATURES THAT SHE'S TRYING TO MONETIZE?

12             MR. MCELHINNY:  IT DOESN'T TELL US JUST THAT THERE'S

13     DEMAND, BECAUSE IN THE PLAY OF THESE POTENTIAL NUMBERS, IT

14     TELLS US WHETHER OR NOT THE DEMAND IS SIGNIFICANT AND HOW MUCH

15     IT IS.

16        YOUR HONOR WILL REMEMBER, THIS WAS SORT OF A TENSE MOMENT

17     IN THE TRIAL, BUT IN THE CROSS-EXAMINATION OF DR. HAUSER,

18     MR. PRICE SAID, YOU KNOW, "YOU'RE NOT TELLING US THAT PEOPLE

19     BUY THESE PHONES BECAUSE OF THESE FEATURES?"

20        AND DR. HAUSER SAID, "YES, I AM.  I'M TELLING YOU THAT BUT

21     FOR THESE FEATURES, PEOPLE WOULD NOT HAVE PURCHASED THE SAMSUNG

22     PHONES."

23        AND MR. PRICE STARTED OBJECTING THAT IT WAS OUTSIDE THE

24     SCOPE OF HIS REPORT, HE HADN'T HEARD THAT, AND YOUR HONOR

25     OVERRULED THAT OBJECTION BECAUSE HE ELICITED THAT TESTIMONY ON
```

1    CROSS.

2         BUT SPECIFICALLY, IT MAKES A DIFFERENCE WHETHER, WITHIN

3    THIS TEST, SOMEBODY WOULD PAY $1 OR PAY $150.

4         IT DOESN'T TELL US, IN THE REAL WORLD, HOW MUCH THE PRICE

5    WILL CHANGE, BUT IT TELLS US THE AMOUNT OF DEMAND AND THE

6    IMPORTANCE OF THE FEATURES AND HOW IT IS RANKED VIS-A-VIS THE

7    OTHER FEATURES AND DISTRACTING IMAGES.

8         AND THAT WAS ONE OF THE FACTORS, AGAIN, SPECIFICALLY

9    UPHELD BY YOUR HONOR IN THE FIRST JMOL ORDER WHERE YOU UPHELD

10   MR. MUSIKA'S STUDY AND YOU BASED -- AND YOU CITED THE EXPERT

11   REPORTS THAT HE HAD RELIED UPON, THE SURVEYS THAT HE HAD RELIED

12   UPON BY DR. HAUSER, AND CORRECTLY SO.

13         THE COURT:  ALL RIGHT.  THANK YOU.

14   LET ME ASK SAMSUNG A FEW QUESTIONS.

15         MS. MAROULIS:  YOUR HONOR, MAY I FIRST CORRECT A FEW

16   MISTAKES THAT WERE PRESENTED TO YOU JUST NOW?

17         FIRST OF ALL, THE MAJORITY OF WHAT MR. MCELHINNY DESCRIBED

18   WAS CONTAINED IN THE REPORT OF MS. DAVIS, BUT NOT IN HER

19   TESTIMONY.

20         HER TESTIMONY ON REASONABLE ROYALTY WAS EXTREMELY BRIEF.

21   IT SPANS ABOUT SIX PAGES AND STARTS AT PAGES 703 THROUGH ABOUT

22   707 OR 708 OF THE TRIAL TRANSCRIPT WHERE SHE VERY BRIEFLY NAMED

23   THE THREE DIFFERENT REASONABLE ROYALTY METHODS THAT SHE USED IN

24   HER REPORT.

25         AND THEN, PARENTHETICALLY, SHE MENTIONED THE

1    GEORGIA PACIFIC TEST, BUT DID NOT ELUCIDATE ANY TESTIMONY ON

2    ALL THE DIFFERENT FACTORS.

3        SO FIRST OF ALL, THE TESTIMONY ITSELF, NOT WHAT SHE DID

4    PRIOR TO COMING TO TRIAL, NOT WHAT SHE DID IN HER REPORT OR HER

5    DEPOSITION, BUT WHAT SHE GAVE TO THE JURY WAS EXTREMELY SCANT

6    AND THERE'S VIRTUALLY NO DETAIL ON ANY OF HER METHODS AT ALL.

7        SO FIRST OF ALL, YOUR HONOR IS ABSOLUTELY CORRECT THAT THE

8    TESTIMONY ITSELF WAS VERY, VERY BRIEF AND INSUFFICIENT.

9        BUT SECOND OF ALL, APPLE MISAPPREHENDS THE STANDARD BY

10   WHICH THE FEDERAL CIRCUIT MEASURES THE EXPERT'S PERFORMANCE.

11   SPECIFICALLY THE WHITSERVE CASE, WHICH IS WHITSERVE VERSUS

12   COMPUTER PACKAGES, THE FEDERAL CIRCUIT SPECIFICALLY EXPLAINED

13   THAT AN EXPERT CANNOT MERELY MENTION THE EXISTENCE OF

14   GEORGIA PACIFIC OR SOME OTHER TEST, CANNOT SIMPLY TICK OFF THE

15   FACTORS WHICH, IN THIS CASE, WASN'T EVEN DONE, WE DID NOT HAVE

16   RECITATION OF EVEN THE 15 FACTORS, AND WHAT THE COURT SAID, THE

17   FEDERAL CIRCUIT SAID, THEY SAID, "WE DO NOT REQUIRE THAT

18   WITNESSES USE ANY OR ALL OF THE GEORGIA PACIFIC FACTORS WHEN

19   TESTIFYING ABOUT DAMAGES IN A PATENT CASE.  IF THEY CHOOSE TO

20   USE THEM, HOWEVER, RECITING EACH FACTOR AND MAKING A CONCLUSORY

21   REMARK ABOUT ITS IMPACT ON THE DAMAGES CALCULATIONS BEFORE

22   MOVING ON DOES NO MORE THAN TELL THE JURY WHAT FACTORS A

23   DAMAGES ANALYSIS COULD TAKE INTO CONSIDERATION."

24       THIS IS WHAT HAPPENED HERE.  THERE WERE A COUPLE OF

25   FACTORS RECITED.  THEY WERE NOT ANALYZED IN ANY DEPTH.

1          THE JURY WAS NOT GIVEN ANY TOOLS IN HOW TO CALCULATE THE

2     ROYALTY.

3          MS. DAVIS THREW OUT THE ROYALTY RATES, SHE NAMED HER

4     METHODS, SHE DID NOT EXPLAIN THEM, AND APPLE CANNOT GO OVER THE

5     RECORD NOW AND SAY, "WELL, MR. SINGH TESTIFIED ABOUT THIS AND

6     MR. SCHILLER TESTIFIED ABOUT THAT," BECAUSE WHAT MS. DAVIS WAS

7     REQUIRED TO DO BY THE FEDERAL CIRCUIT LAW IS TO SHOW UP HERE,

8     FULLY EXPLAIN HER REASONABLE ROYALTY ANALYSIS, INCLUDING THE

9     GEORGIA PACIFIC TEST, AND GIVE THE JURY THE TOOLS TO CHECK

10    WHETHER HER ROYALTY IS CORRECT.

11         SHE THREW OUT THE NUMBERS.  SHE DID NOT SUPPORT THEM IN

12    ANY WAY.  IT'S A VERY, VERY SHORT SECTION OF THE TRANSCRIPT.

13              THE COURT:  LET ME ASK, AFTER THE 2012 TRIAL IN THE

14    JMOL MOTIONS, AT THAT POINT SAMSUNG DID NOT CHALLENGE APPLE'S

15    REASONABLE ROYALTY CASE.  ISN'T THAT RIGHT?

16              MS. MAROULIS:  YOUR HONOR, WE HAD CHALLENGES TO

17    REASONABLE ROYALTY, BUT THE COURT DIDN'T REACH THEM BECAUSE THE

18    COURT THREW OUT THE NUMBERS THAT CORRESPONDED TO REASONABLE

19    ROYALTY BECAUSE OF THE NOTICE DATES, SO IT DID NOT BECOME PART

20    OF THE MARCH 1 DAMAGES ORDER.

21              THE COURT:  I DON'T RECALL, WERE THEY BASED ON THE

22    SAME CONTENTIONS THAT YOU ARE ASSERTING NOW?  OR WAS THAT ON A

23    DIFFERENT BASIS THAT YOU WERE SEEKING TO HAVE THEM OVERTURNED?

24              MS. MAROULIS:  YOUR HONOR, MAY I CONFER WITH

25    MR. ANDERSON FOR A MINUTE?

```
 1              THE COURT:  SURE.

 2              MS. MAROULIS:  BUT I DO HAVE TO SAY THAT EVEN

 3    MR. MUSIKA'S TESTIMONY ON REASONABLE ROYALTY WAS LONGER AND IN

 4    MORE DETAIL THAN MS. DAVIS'S, AND IN PARTICULAR HE DID ACTUALLY

 5    WALK THROUGH THE GEORGIA PACIFIC FACTORS, WHICH MAY NOT BE

 6    ENOUGH, BUT CERTAINLY IS MORE THAN MS. DAVIS DID.

 7              THE COURT:  UM-HUM.

 8         (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

 9              MS. MAROULIS:  YOUR HONOR, I'M REMINDED THAT WE DID

10    CHALLENGE THE INCONSISTENCY OF THE ROYALTY NUMBERS AND ARGUED

11    THAT THERE WAS NOT ENOUGH TESTIMONY TO SUPPORT THEM.

12         BUT THE CHALLENGE HERE IS A LITTLE BIT BROADER BECAUSE

13    MS. DAVIS'S TESTIMONY WAS SIMPLY NOT SUFFICIENT UNDER THE

14    LEADING FEDERAL CIRCUIT PRECEDENT, WHICH IS THE WHITSERVE CASE,

15    AND ALSO SIMILARLY IN LASER DYNAMICS AND UNILOC CASES.

16              THE COURT:  OKAY, AND WE'LL GET TO THOSE IN A MINUTE.

17    OR ACTUALLY, WHY DON'T WE DO THAT?  WHITSERVE IS A LITTLE

18    DIFFERENT BECAUSE THAT INVOLVED THE 25 PERCENT RULE OF THUMB.

19         IN THIS CASE, DIDN'T MS. DAVIS, IN ADDITION TO BRIEFLY

20    ADDRESSING GEORGIA PACIFIC FACTORS, ALSO USE AN INCOME APPROACH

21    AND A COST APPROACH?

22              MS. MAROULIS:  SHE NAMED THEM, YOUR HONOR, BUT SHE

23    DIDN'T EXPLAIN THEM IN ANY WAY.  AS I SAID, THE ACTUAL PASSAGE

24    OF THE SECTION OF THE TRANSCRIPT THAT REFERS TO REASONABLE

25    ROYALTY IS EXTREMELY SHORT.
```

```
1        AND THE SAME LOGIC WOULD APPLY HERE, WHICH IS YOU CANNOT

2   SIMPLY SAY WHAT AN INCOME METHOD IS.  YOU HAVE TO EXPLAIN TO

3   THE JURY HOW YOU ARRIVED AT A ROYALTY CALCULATION USING THIS

4   METHOD, WHICH MS. DAVIS CERTAINLY DID NOT DO HERE.

5        THE COURT:  OKAY.  WELL, LET'S TALK ABOUT UNILOC

6   SINCE YOU'VE MENTIONED UNILOC.  IS IT SAMSUNG'S CONTENTION THAT

7   MS. DAVIS IN ANY WAY USED THE ENTIRE MARKET VALUE RULE?

8        MS. MAROULIS:  YOUR HONOR, OUR CONTENTION IS THAT

9   MS. DAVIS DID NOT APPORTION BETWEEN PATENTED AND NON-PATENTED

10  FEATURES, AND CERTAINLY SHE DID NOT PROVIDE ANY TESTIMONY TO

11  THAT EFFECT.

12       APPLE, AS I UNDERSTAND IT, ALTHOUGH THEIR ARGUMENT TODAY

13  IS DIFFERENT FROM THEIR BRIEFS BECAUSE, FOR EXAMPLE, THE

14  VERSATA CASE WAS NEVER IN THEIR BRIEFS AND A LOT OF WHAT

15  MR. MCELHINNY SAID WAS NOT EITHER, BUT I UNDERSTAND THEM TO SAY

16  THAT SHE TOOK IT INTO ACCOUNT ALREADY, BUT IT WAS NOT IN ANY

17  WAY CONVEYED TO THE JURY.

18       THE COURT:  WHAT ABOUT HER COST APPROACH?  WHEN SHE

19  WAS TRYING TO FIGURE OUT HOW MUCH DESIGNING AROUND THE PATENTED

20  FEATURES WOULD COST SAMSUNG, WHY ISN'T THAT APPORTIONMENT OF

21  THE ROYALTY BETWEEN PATENTED AND UNPATENTED FEATURES?

22       MS. MAROULIS:  YOUR HONOR, THE COST APPROACH IS

23  MERELY THE COST TO THE ACCUSED INFRINGER OF BEING OFF THE

24  MARKET.  SO SOME EXPERTS DO USE THAT AS A REASONABLE ROYALTY

25  VALUE FOR LUMP SUM AND OTHERWISE, BUT THAT DOES NOT GIVE CREDIT
```

1    TO THE NON-PATENTED FEATURES OF THE PRODUCT.

2              THE COURT:  BUT ISN'T THE COST OF DESIGNING AROUND TO

3    SAMSUNG, ISN'T THAT SOME VALUE OF THE PATENTED FEATURE TO

4    SAMSUNG, SOME MEASURE OF THAT?

5              MS. MAROULIS:  IT IS NOT SUFFICIENTLY EXPLICIT IN THE

6    WAY THAT IT RECOGNIZES THE NON-PATENTED FEATURES AND THE

7    CONTRIBUTIONS THEY MAKE TO THE PRODUCT.

8         I MEAN, ONE OF THE CHALLENGES IN THE DAMAGES CASE IS YOU

9    DON'T WANT THE ROYALTY FOR ANY PARTICULAR FEATURE IN A

10   PARTICULAR PATENT TO TAKE ADVANTAGE OF ALL THE BENEFITS OF THE

11   PRODUCT, AND THAT APPROACH DOES NOT ADDRESS THAT, THAT IS, IF

12   SHE EVEN EXPLAINED THAT TO THE JURY IN ANY MEANINGFUL WAY.

13         (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

14             MS. MAROULIS:  AND YOUR HONOR, ADDITIONALLY,

15   MS. DAVIS'S FINAL NUMBERS THAT SHE PRESENTED TO THE JURY DID

16   NOT USE COST APPROACH, BUT RATHER APPORTION, OR ONE HALF OF THE

17   INCOME APPROACH BASED ON WHAT I UNDERSTAND ABOUT HER REPORT.

18             THE CLERK:  OKAY.  I HAVE -- I HAVE ONE LAST QUESTION

19   JUST ON A WAIVER ARGUMENT.  THIS IS SAMSUNG'S NEW TRIAL MOTION

20   AND THIS HAS TO DO WITH THE NEW TRIAL REQUEST BASED ON NATIONAL

21   ORIGIN OR APPEALS TO NATIONAL ORIGIN OR RACIAL PREJUDICE.

22             MS. MAROULIS:  MR. PRICE IS GOING TO ADDRESS THAT,

23   YOUR HONOR.

24             THE COURT:  OKAY.  I HAVE JUST ONE QUICK QUESTION,

25   SAME ONE I ASKED FOR SAMSUNG'S REVENUE.

```
 1          THERE'S AN ARGUMENT OF WAIVER, AND OTHER THAN THE

 2     OBJECTIONS THAT YOU SET FORTH IN YOUR REPLY BRIEF, ARE THERE

 3     ANY OTHER EITHER OBJECTIONS THAT WERE MADE DURING THE TRIAL, IS

 4     THERE ANYTHING ELSE THAT THE COURT SHOULD LOOK TO, OTHER THAN

 5     WHAT YOU'VE ALREADY CITED?  BECAUSE WE'RE DEFINITELY LOOKING AT

 6     EVERYTHING YOU CITED IN YOUR REPLY BRIEF.

 7          MR. PRICE:  YOUR HONOR, NO.  THE OBJECTION WAS AT THE

 8     CLOSING ARGUMENT, AND I CAN EXPLAIN WHY.

 9       YOU KNOW, THIS --

10          THE COURT:  WELL, I GUESS I MEAN FOR THE PERVASIVE,

11     WAS THERE ANYTHING ELSE?  I KNOW YOU'VE RAISED A DIFFERENT -- A

12     NUMBER OF PLACES ABOUT REFERENCES TO SAMSUNG BEING A KOREAN

13     COMPANY, REFERENCES TO MR. WAGNER'S TESTIMONY ABOUT HAVING TO

14     TRANSLATE THE COMMUNICATION WITH THE ENGINEERS.

15        IS THERE ANYTHING ELSE THAT THE COURT SHOULD LOOK AT, OR

16     IS YOUR REPLY BRIEF -- ANYTHING ELSE YOU WANT THE COURT TO LOOK

17     AT IN TERMS OF EITHER AN OBJECTION THAT WAS MADE BY SAMSUNG

18     DURING THE TRIAL OR ANYTHING ELSE?

19          MR. PRICE:  NO, YOUR HONOR.

20          THE COURT:  NO.  OKAY.

21          MR. PRICE:  AND WE WOULDN'T HAVE KNOWN TO MAKE AN

22     OBJECTION AT THAT TIME, AND THAT'S BECAUSE -- YOUR HONOR, I

23     MEAN, THIS CASE WAS A POWDER KEG.  IT WAS A LOCAL, YOU KNOW,

24     AMERICAN COMPANY AGAINST A KOREAN COMPANY, SO WE ALL KNEW

25     THERE'S THIS POSSIBLE ISSUE.
```

1    AND I THINK APPLE CAN SAY THAT, YOU KNOW, THERE WERE

2    ARGUMENTS THROUGHOUT THE TRIAL THAT JUSTIFIED THEM SAYING, YOU

3    KNOW, SAMSUNG KOREA RATHER THAN SAMSUNG ELECTRONICS

4    CORPORATION, OR TALKING ABOUT KOREAN BOSSES INSTEAD OF SAMSUNG

5    ELECTRONIC COMPANY EMPLOYEES.

6        BUT I THINK WHAT WAS DEMONSTRATED IN THE CLOSING WAS THAT

7    THEY WERE BUILDING THIS POWDER KEG AND THEN THEY IGNITED IT,

8    AND IT IS THE CLOSING AND THE STATEMENT OF A FACT, BASED ON A

9    STEREOTYPE, AND ASKING THE JURY TO TAKE AN ACTION BASED UPON

10   THAT FACT WHICH, YOU KNOW, KIND OF BROUGHT THINGS IN FOCUS AND

11   SO YOU COULD SEE WHAT SAMSUNG -- I MEAN WHAT APPLE WAS ACTUALLY

12   DOING.

13       THE COURT:  OKAY.  SO PRIOR TO THE CLOSING, THE

14   EARLIER STATEMENTS YOU DON'T THINK ALONE JUSTIFIED AN

15   OBJECTION.  IT WAS MORE WHEN IT WAS PLACED INTO CONTEXT IN THE

16   CLOSING, THAT'S SAMSUNG'S POSITION?

17       MR. PRICE:  THAT'S CORRECT.

18       THE COURT:  OKAY.  ALL RIGHT.

19   WELL, THANK YOU.

20   I DON'T HAVE ANY MORE --

21       MR. MCELHINNY:  MAY I JUST MAKE POINTS, YOUR HONOR,

22   NOT ARGUMENTS?

23       THE COURT:  VERY BRIEFLY.

24       MR. MCELHINNY:  WELL, THAT'S NOT TRUE.  ONE OF THEM

25   IS A LITTLE ARGUMENT.

```
 1              THE COURT:  VERY BRIEFLY.

 2              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

 3          WHITSERVE OR WHITSERVE WAS NOT REVERSED FOR THE FAILURE TO

 4     DISCUSS THE GEORGIA PACIFIC FACTORS.  IT WAS REVERSED BECAUSE

 5     THE EXPERT CHANGED FROM A PERCENTAGE OF REVENUE TO A PERCENTAGE

 6     OF PROFIT.

 7              I SAID IT WAS IN EXHIBIT 26.  IT WAS ACTUALLY THE LAST

 8     PAGE OF EXHIBIT 25.

 9              I HAVE BEEN REMINDED THAT IN FIGHTING YOUR HONOR'S

10     HYPOTHETICAL, A LARGE PART OF MS. DAVIS'S TESTIMONY ABOUT

11     ROYALTY --

12              THE COURT:  WHAT WAS EXHIBIT 20 --

13              MR. MCELHINNY:  EXHIBIT 25 WAS THE LAST PAGE THAT

14     EXPLAINED -- THAT WAS ADMITTED TO THE JURY, THE LAST PAGE THAT

15     SETS OUT THE --

16              THE COURT:  OH, HER CALCULATIONS?

17              MR. MCELHINNY:  YES.

18              THE COURT:  OKAY.

19              MR. MCELHINNY:  THE -- I WAS REMINDED THAT A LARGE

20     PART OF WHAT SHE TESTIFIED IN TERMS OF ROYALTY WAS BASED ON

21     DEMAND, AND DEMAND AND -- WHAT SAMSUNG IS DOING IS ARTIFICIALLY

22     TRYING TO DIVIDE HER TESTIMONY INTO A SECTION ON LOST PROFITS

23     AND A SECTION ON ROYALTY, AND THAT IS NOT THE WAY THE

24     BACKGROUND TESTIMONY CAME IN.

25              ALL OF HER PRELIMINARY TESTIMONY ABOUT DEMAND IS RELEVANT
```

```
1    TO BOTH, AND SO TO SAY THE LAST COUPLE OF PAGES WHERE SHE GAVE

2    HER OPINION ABOUT ROYALTY WAS THE ONLY TESTIMONY ABOUT ROYALTY

3    IS MISLEADING.

4         I -- JUST SO THAT I DIDN'T MISSTATE -- I DON'T THINK I

5    DID, BUT MY TEAM THINKS I DID -- SHE DID NOT REFER TO HAUSER --

6    THE SPECIFIC NUMBERS THAT HAUSER USED, BUT SHE REFERRED TO THE

7    EVIDENCE OF DEMAND THAT THOSE NUMBERS REFLECTED.

8         AND FINALLY --

9             THE COURT:  SO SHE DIDN'T SAY HOW MUCH THE DEMAND

10   WAS.

11            MR. MCELHINNY:  RIGHT.  SHE JUST --

12            THE COURT:  SHE JUST SAID IT WAS SIGNIFICANT AND THAT

13   SHE QUANTIFIED HOW MUCH IT WAS SIGNIFICANT.

14            MR. MCELHINNY:  THAT'S WHAT SHE DID WHEN SHE LOOKED

15    AT THE OTHER ELEMENT.

16        AND LASTLY, IN THE JMOL WE HEARD FOR THE FIRST TIME,

17   FRANKLY, THIS ISSUE ABOUT KOREAN, AND I WANT TO REMIND -- THERE

18   WAS NOT ONLY NO OBJECTION, BUT I -- YOUR HONOR, THE CAPTION IN

19   THIS CASE IDENTIFIES SAMSUNG AS A KOREAN COMPANY.  THE VERDICT

20   FORM IDENTIFIES SAMSUNG AS A KOREAN COMPANY.

21        AND THE SAME LAWYERS, WHO YOU WILL RECALL OBJECTED TO THE

22   SIGN IN THE LOBBY ABOUT WHETHER IT WAS APPLE VERSUS SAMSUNG OR

23   SAMSUNG VERSUS APPLE, NEVER OBJECTED TO THAT AND REFERRED

24   THROUGHOUT THE ENTIRE TIME AS TO THE VARIOUS COMPANIES THAT

25   THEY USED.
```

```
1          THOSE ARE THE POINTS I WANTED TO MAKE.  THANK YOU.

2               THE COURT:  ALL RIGHT.  MR. PRICE, YOU CAN GET THE

3     LAST WORD ON THAT.

4               MR. PRICE:  YEAH, LET ME RESPOND ON THE, ON THE

5     PREJUDICE ISSUE.

6          YOUR HONOR, IT'S NOT THAT SAMSUNG WAS A KOREAN COMPANY

7     ALONE.  THAT FACT WAS GOING TO COME IN.

8          WHAT HAPPENED, THOUGH, IS THAT WHEN MR. MCELHINNY TALKED

9     ABOUT THE ELIMINATION OF THE AMERICAN TELEVISION MANUFACTURING

10    INDUSTRY AND SAID IT WAS BECAUSE THEY COULDN'T PROTECT THEIR

11    INTELLECTUAL PROPERTY AND SAID, "YOU ALL KNOW THE RESULT," AND

12    THEN SAID "THERE ARE NO AMERICAN TELEVISION MANUFACTURERS

13    TODAY," THE COMMON KNOWLEDGE HE WAS INVOKING WAS THE GRIM

14    FALSEHOOD AND STEREOTYPE THAT THE ASIAN CONSUMER ELECTRONICS

15    INDUSTRY IS JUST A CHEAP ASIAN KNOCKOFF OF AMERICAN TECHNOLOGY,

16    THAT ASIAN TELEVISION MANUFACTURERS EXIST BECAUSE THEY STOLE

17    TECHNOLOGY AND NOT BECAUSE OF THE FACT, FOR EXAMPLE, THAT THEIR

18    PRODUCTS MIGHT HAVE BEEN BETTER.

19         THAT WAS WHAT HE WAS INVOKING.  THERE'S NO OTHER THING TO

20    BE INVOKED.

21          AND IN FACT, IT'S SUCH A FUNDAMENTAL PREJUDICE THAT APPLE

22    THINKS IT'S A FACT THAT NEEDS NO PROOF, AND WHAT IT IS IS A

23    FALSEHOOD THAT HAS NO PROOF.

24          AND UNFORTUNATELY, THAT FALSEHOOD IS BELIEVED BY MANY TO

25    BE FAIR AND TRUE, AND THAT'S WHY IT IS SO DAMAGING, BECAUSE IF
```

 1    YOU -- IF YOU MAKE A PREJUDICIAL STATEMENT AS A FACT, YOU CAN

 2    THEN TELL PEOPLE, YOU CAN LOGICALLY ACT ON THAT FACT AND NOT BE

 3    PREJUDICED.

 4         AN EXAMPLE IS -- REMEMBER MR. CAMPANIS, AL CAMPANIS, THE

 5    DODGER EXECUTIVE WHO, IN AN INTERVIEW, HE WAS ASKED, "WHY

 6    AREN'T THERE ANY BLACK MANAGERS OR OWNERS IN MAJOR LEAGUE

 7    BASEBALL?"

 8         AND MR. CAMPBELL IS A MAN WHO IS A CLOSE FRIEND OF

 9    JACKIE ROBINSON.  HE WAS BEING ASKED THIS ON THE 40TH

10    ANNIVERSARY OF ROBINSON, JACKIE ROBINSON JOINING THE MAJOR

11    LEAGUES.

12         AND HIS RESPONSE WAS, "WELL, YOU KNOW, BLACKS JUST DON'T

13    HAVE THE NECESSITIES TO BE OWNERS OR MANAGERS," AND HE WENT ON

14    TO SAY "YOU DON'T HAVE GOOD BLACK SWIMMERS BECAUSE THEY LACK

15    BUOYANCY."

16         AND MR. CAMPANIS WILL TELL YOU HE'S NOT A PREJUDICED

17    PERSON.

18         BUT IF YOU BELIEVE THOSE FACTS, WHICH ARE BASED ON

19    PREJUDICE, THEN YOU WON'T HIRE BLACK MANAGERS, AND YOU MIGHT

20    NOT PUT AN AFRICAN-AMERICAN ON YOUR SWIM TEAM.

21         AND THAT'S WHAT HAPPENED HERE IS MR. MCELHINNY TOLD THIS

22    JURY THAT IT WAS A FACT THAT AMERICAN TELEVISION MANUFACTURERS

23    DON'T EXIST TODAY BECAUSE THEY COULDN'T PROTECT THEIR

24    INTELLECTUAL PROPERTY, AND HE BASICALLY ISSUED A CALL TO ACTION

25    BASED UPON THAT REPREHENSIBLE AND FALSE FACT, AND THAT IS A

```
 1        REPELLANT DECEPTION THAT REALLY NO COURT OF JUSTICE SHOULD
 2        BROOK BEFORE A WATCHFUL WORLD.
 3             SO WHEN THE JURY WENT IN TO DELIBERATE, YOUR HONOR TOLD
 4        THEM NOT TO ACT BASED UPON PREJUDICE.
 5             BUT THEY COULD THINK THEY WEREN'T PREJUDICED BECAUSE THEY
 6        COULD THINK IT WAS ABSOLUTELY TRUE THAT WHAT HAPPENED TO THE
 7        AMERICAN TELEVISION MANUFACTURERS WAS THAT FOREIGN COMPANIES --
 8        AND WE ALL KNOW THAT TELEVISION MANUFACTURERS ARE ASIAN AND
 9        THAT SAMSUNG IS THE PREEMINENT ASIAN TV MANUFACTURER -- THAT
10        FOREIGN COMPANIES USED AMERICAN INTELLECTUAL PROPERTY AND,
11        THEREFORE, THAT PART OF OUR ECONOMY WAS DESTROYED.
12             THAT'S WHAT WE'RE COMPLAINING ABOUT, THAT HE -- THAT APPLE
13        CREATED THE POWDER KEG DURING THE TRIAL BY REFERRING TO SAMSUNG
14        AS BEING KOREAN AND KOREAN BOSSES, AND IT LIT THAT POWDER KEG
15        IN ITS CLOSING ARGUMENT AND ITS FINAL CALL TO ACTION TO THE
16        JURY.
17             SO THAT'S WHAT WE'RE COMPLAINING ABOUT.
18             THE COURT:  ALL RIGHT.  LET ME ASK ONE QUESTION OF
19         THE PARTIES.
20             WE ARE CURRENTLY ON FOR A CASE MANAGEMENT CONFERENCE IN
21        THE SECOND CASE ON THE 20TH OF FEBRUARY.  DO WE NEED THAT?  OR
22        SHOULD THAT JUST BE SOLELY A MOTION -- THAT'S SAMSUNG'S MOTION
23        TO STRIKE AND I'M WONDERING IF WE ACTUALLY NEED ANYTHING ON
24        THAT DATE OR --
25             MR. LEE:  I ACTUALLY -- NOT WITH MS. MAROULIS, BUT
```

1    WITH MR. JOHNSON -- RAISED THAT RIGHT BEFORE COURT BECAUSE YOUR

2    HONOR'S CASE MANAGEMENT CONFERENCE ORDER DOESN'T HAVE THE DATE,

3    BUT YOUR CALENDAR DOES.

4        I THINK WE THINK WE DON'T NEED IT BECAUSE WE'RE GOING TO

5    SEE YOU ON MARCH THE 5TH FOR THE PRETRIAL.  AND THERE ARE A

6    WHOLE BUNCH OF THINGS DUE RIGHT ABOUT THEN AND MARCH 5TH MAKES

7    MORE SENSE TO US.

8        BUT I RAISED IT WITH MR. JOHNSON JUST BEFORE WE STARTED

9    COURT THIS AFTERNOON.

10            THE COURT:  OKAY.  WHAT IS SAMSUNG'S POSITION?

11            MS. MAROULIS:  YOUR HONOR, WE'RE FINE WITH JUST

12    SEEING THE COURT ON MARCH 5 FOR PRETRIAL PURPOSES.

13        WE DO WANT A HEARING ON OUR MOTION REGARDING IMPROPER

14    CLAIM CONSTRUCTION, SO IF THE COURT IS WILLING TO HEAR THAT ON

15    MARCH 5, WE'RE FINE WITH NOT HAVING THE CONFERENCE ON THE 20TH.

16        IF THE COURT WOULD RATHER HAVE THE MOTION HEARING ON THE

17    20TH, BUT EVERYTHING ELSE ON THE 5TH, WE CAN DO THAT, TOO.

18            THE COURT:  WELL, I DON'T EVEN THINK YOU'VE FILED YET

19    WHAT WILL BE HEARD ON THE 5TH, BUT I'M ASSUMING IT'S GOING TO

20    BE QUITE VOLUMINOUS, SO FOR US IT WOULD BE EASIER TO KEEP THE

21    20TH DATE FOR THE MOTION TO STRIKE.

22        IT'S POSSIBLE THAT I MAY NOT NEED A HEARING, IN WHICH CASE

23    IF THERE'S NO CMC, I'M JUST GOING TO VACATE THAT DATE, BUT I

24    WOULD ONLY BE ABLE TO DO THAT ONCE THERE'S BEEN FULL FOCUS ON

25    THAT MOTION, WHICH THERE HASN'T BEEN YET, SO I CAN'T TELL YOU

```
1        RIGHT NOW WHETHER I'LL NEED A HEARING OR NOT.

2               MS. MAROULIS:  YOUR HONOR, WE'RE HAPPY TO STAND BY.

3               MR. LEE:  YEAH, THAT'S FINE.

4               THE COURT:  OKAY.  ALL RIGHT.  WELL, WHY DON'T --

5        UNLESS I VACATE THAT DATE, ASSUME YOU WILL HAVE A HEARING ON

6        THAT DATE.  BUT I PROBABLY WON'T GIVE YOU WORD ON THAT UNTIL

7        CLOSER TO THE TIME BECAUSE THAT'S MOST LIKELY WHEN ALL THE

8        OTHER ORDERS THAT WE HAVE TO ISSUE, AND THAT'S WHEN WE'LL FOCUS

9        ON IT.

10            AND PLUS YOU MIGHT SETTLE, RIGHT, THE DAY BEFORE?  SO I

11       WANT AN IMMEDIATE CALL TO CHAMBERS IF THAT HAPPENS.

12           (LAUGHTER.)

13              THE COURT:  OKAY?

14              MS. MAROULIS:  UNDERSTOOD, YOUR HONOR.

15              MR. LEE:  YOU WILL --

16              THE COURT:  AND WE WILL STOP WORK ON EVERYTHING.

17              MR. LEE:  YOU'LL BE THE FIRST TO KNOW.

18              THE COURT:  OKAY.  ALL RIGHT.

19           OKAY.  ANYTHING ELSE FOR TODAY?  I REALLY APPRECIATE ALL

20       OF THE ARGUMENTS.  WE'LL GO BACK AND TRY TO DIGEST EVERYTHING.

21           AND I ASSUME EVERYONE THINKS EVERYTHING IS PRIORITY FOR

22       YOUR ADR PROCESS.  CORRECT?

23              MS. MAROULIS:  YOUR HONOR, WE ADDRESSED THAT LAST

24       HEARING, SO --

25              THE COURT:  OKAY.
```

1              MS. MAROULIS:  THE PARTIES MADE THEIR POSITIONS

2      KNOWN.

3              MR. LEE:  YEAH.

4              THE COURT:  ALL RIGHT.  THANK YOU ALL.

5              MS. MAROULIS:  THANK YOU, YOUR HONOR.

6              MR. LEE:  THANK YOU, YOUR HONOR.

7              MS. SULLIVAN:  THANK YOU, YOUR HONOR.

8              MR. LEE:  THANK YOU, YOUR HONOR.

9          (THE PROCEEDINGS WERE CONCLUDED AT 4:30 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                     CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  FEBRUARY 7, 2014

19

20

21

22

23

24

25