QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Susan R. Estrich (Cal. Bar No. 124009)
susanestrich@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**<br><br>**Date:** May 1, 2014<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 8, 4th Floor<br>**Judge:** Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

INTRODUCTION...........................................................................................................1

ARGUMENT ...............................................................................................................1

I.    THE COURT SHOULD DEFER CONSIDERATION OF ATTORNEYS' FEES
      UNTIL AFTER THE MERITS APPEALS ARE RESOLVED..............................1

II.   APPLE'S LANHAM ACT CLAIM WAS NOT "EXCEPTIONAL" ..................................2

      A.    Exceptionality Requires Bad Faith Or Other Malicious Conduct.............................2

      B.    The Jury's Finding Of Willfulness Cannot Support A Finding of
            Exceptional Circumstances Here. ...................................................5

      C.    Apple's Allegations of Copying Cannot Support A Finding Of Exceptional
            Circumstances. ......................................................................6

            1.    The closeness of Apple's dilution claims prevents a finding of
                  exceptional circumstances................................................................7

            2.    The reasonableness of Samsung's defenses to Apple's dilution claim
                  prevents a finding of exceptional circumstances............................................9

            3.    The novelty of Apple's dilution claim prevents a finding of
                  exceptional circumstances.................................................................9

            4.    Apple cites no evidence or authority supporting a finding of
                  exceptional circumstances here. ...................................................11

III.  THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY APPLE'S
      FEE REQUEST ...........................................................................15

IV.   APPLE FAILED TO SATISFY ITS BURDEN OF PROOF AS TO THE
      CORRECT AMOUNT OF FEES ...........................................................16

      A.    Apple Failure To Provide Billing Records, Or Even Summaries of Attorney
            Hours, Requires Denial of Its Motion. ...................................................16

      B.    Apple's One-Third Allocation of Fees For One Out of 22 Legal Claims,
            Representing Success on 14 Out of 2,512 Disputed Liability Issues Is Not
            Reasonable. ..........................................................................19

CONCLUSION ...........................................................................25

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

1

## TABLE OF AUTHORITIES

2

**Page**

3

4 ## CASES

5 *Apple Inc. v. Samsung Elecs. Co.*,
　　735 F.3d 1352 (Fed. Cir. 2013) ........................................................................... 24

6

7 *Applied Info. Sciences Corp. v. eBay, Inc.*,
　　511 F.3d 966 (9th Cir. 2007)................................................................................ 15

8 *Blockbuster Videos, Inc. v. City of Tempe*,
　　141 F.3d 1295 (9th Cir. 1998).......................................................................... 6, 9

9

10 *Board of Trustees of the Leland Stanford Junior Univ. v. Stanford Rehab Med. Group*,
　　No. 08-2177, 2008 WL 4239761 (N.D. Cal. 2008) ........................................... 22

11 *Bobrick Washroom Equip., Inc. v. American Specialties, Inc.*,
　　No. Civ. 10–6938, 2012 WL 3217858 (C.D. Cal. Aug. 8, 2012) ...................... 14

12

13 *Cairns v. Franklin Mint Co.*,
　　292 F.3d 1139 (9th Cir. 2002)....................................................................... 20, 22

14 *CJC Holdings, Inc. v. Wright & Lato, Inc.*,
　　979 F.2d 60 (5th Cir. 1992) ............................................................................ 3, 14

15

16 *Classic Media, Inc. v. Mewborn*,
　　532 F.3d 978 (9th Cir. 2008)........................................................................... 2, 9

17 *Comm. for Idaho's High Desert, Inc. v. Yost*,
　　92 F.3d 814 (9th Cir. 1996)................................................................................... 5

18

19 *Continental Lab. Prod., Inc. v. Medax Int'l, Inc.*,
　　114 F. Supp. 2d 992 (S.D. Cal. 2000) ........................................................... 10, 14

20 *Contractual Obligation Prods. v. AMC Networks*,
　　546 F. Supp. 2d 120 (S.D.N.Y. 2008) ............................................................... 24

21

22 *Derringer v. Sewell*,
　　No. 08-8156, 2009 WL 2424662 (D. Ariz. Aug. 7, 2009) .................................. 2

23 *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*,
　　40 F.3d 1431 (3d Cir. 1994) ............................................................................... 10

24

25 *Earthquake Sound Corp. v. Bumper Indus.*,
　　352 F.3d 1210 (9th Cir. 2003).................................................................... 4, 7, 14

26 *Experience Hendrix v. Hendrixlicensing.com*,
　　No. 11–35858, 2014 WL 306600 (9th Cir. Jan. 29, 2014)....................... 2, 7, 15

27

28 *Fifty-Six Hope Road Music v. A.V.E.L.A.*,
　　915 F. Supp. 2d 1179 (D. Nev. 2013) ..................................................... 9, 15, 23

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) ................................................................................ 22

*Gracie v. Gracie*,
    217 F.3d 1060 (9th Cir. 2000) ........................................................................ passim

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l Inc.*,
    730 F.3d 494 (6th Cir. 2013) ........................................................................... 13, 14

*Gucci Am., Inc. v. Pieta*,
    No. 04-9626, 2006 U.S. Dist. LEXIS 96694 (C.D. Cal. July 17, 2006) ...................... 24, 25

*Healthport Corp. v. Tanita Corp. of America*,
    563 F. Supp. 2d 1169 (D. Or. 2008) ........................................................................... 3

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................ 16

*Horphag Research Ltd. v. Garcia*
    475 F.3d 1029 (9th Cir. 2007) ................................................................................... 3

*Icebreaker Ltd. v. Gilmar S.p.A.*,
    No. 11-309, 2013 WL 638926 (D. Or. Feb 20, 2013) ................................................... 7

*In re Farmers Ins. Exch. Claims Representatives Overtime Pay Litig.*,
    No. 33-1439, 2009 WL 3834034 (D. Or. Nov. 13, 2009) .............................................. 2

*Int'l Olympic Comm. v. San Francisco Arts & Athletics*,
    781 F.2d 733 (9th Cir. 1986) ................................................................................. 6, 9

*Intel Corp. v. Taerabyte Int'l, Inc.*,
    6 F.3d 614 (9th 1993) ............................................................................................. 19

*Kelley Blu Book v. Car-Smarts, Inc.*,
    802 F. Supp. 278 (C.D. Cal 1992) .............................................................................. 9

*Lahoti v. Vericheck, Inc.*
    636 F.3d 501 (9th Cir. 2011) ......................................................................... 3, 4, 13

*Lahoti v. Vericheck, Inc.*,
    708 F. Supp. 2d 1150 (D. Wash. 2010) ................................................................. 4, 13

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
    199 F.3d 1009 (9th Cir. 1999) ................................................................................. 10

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ................................................................................... 2

*Madrid v. Concho Elementary School Dist. No. 6 of Apache County*,
    No. 07-8103, 2010 WL 2991562 (D. Ariz. July 26, 2010) ............................................ 2

*Playboy Enterprises v. Baccarat Clothing Co., Inc.*,
    692 F. 2d 1272 (9th Cir. 1982) ................................................................................. 4

Case No. 11-cv-01846-LHK
**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

*Rosenfeld v. United States   Dep't of Justice,*
    903 F. Supp. 2d 859 (N.D. Cal. 2012) ........................................................................ 16

*Sealy, Inc. v. Easy Living, Inc.,*
    743 F.2d 1378 (9th Cir. 1984) ............................................................................. 16, 17

*Societe Civile Succession Richard Guino v. Beseder Inc.*
    No. 03-13-10, 2007 U.S. Dist. LEXIS 83782 (D. Ariz. Oct. 30, 2007) ...................... 21, 22

*Spalding Labs., Inc. v. Arizona Biological Control, Inc.,*
    No. CV 06-1157, 2008 U.S. Dist. LEXIS 56100 (C.D. Cal. May 29, 2008) ......... 18, 22, 24

*Stephen W. Boney, Inc. v. Boney Services, Inc.,*
    127 F. 3d 821 (9th Cir. 1997) ..................................................................................... 2

*TrafficSchool.com, Inc. v. Edriver Inc.,*
    653 F.3d 820 (9th Cir. 2011) ................................................................................. 3, 25

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
    532 U.S. 23 (2003) ...................................................................................... 10, 13, 14

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
    768 F.2d 1001 (9th Cir. 1985) ...................................................................................... 5

*U-Haul Int'l. v. Jartran, Inc.,*
    793 F.2d 1034 (9th Cir. 1986) ...................................................................................... 7

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
    529 U.S. 205 (2000) .................................................................................................. 10

*Watec Co., Ltd. v. Liu,*
    403 F.3d 645 (9th Cir. 2005) ................................................................................... 3, 6

*YKK Corp. v. Jungwoo Zipper Co., Ltd.,*
    213 F. Supp. 2d 1195 (C.D. Cal. 2002) .............................................................. 10, 11

*Zynga Game Network Inc. v. Erkan,*
    No. 09-3264, 2010 WL 3463630 (N.D. Cal. Aug. 31, 2010) ....................................... 16

## STATUTES

Fed. R. Civ. P. 54(d) ......................................................................................................... 2

## OTHER AUTHORITIES

1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:19 (4th ed.
    2013).......................................................................................................................... 14

Case No. 11-cv-01846-LHK
**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:72
   (Author's Comment) (4th ed. 2001) .................................................................................. 11

Lanham Act, 217 F.3d 1060, 1069 (9th Cir. 2000) ........................................................... 5

## INTRODUCTION

The Court should defer consideration of Apple's request for attorneys' fees until after the parties' appeals of the merits of Apple's claims are resolved.   But if the Court analyzes fees now, Apple's motion should be denied in its entirety.   Apple is not entitled to any attorneys' fees based on its partial win on its dilution claim, much less the $15,736,992 it seeks—approximately one-third of its total fees.[1]   Attorneys' fees in Lanham Act cases are an extraordinary result, limited to "exceptional" claims under the Act, and then only awarded in the Court's discretion.   Apple's motion should be denied under both prongs.   If not, it should be denied because Apple failed to satisfy its burden of proving that essentially a third of its total fees were incurred for work reasonably performed on the successful portion of its dilution claim, the only grounds for which it is seeking fees.   Apple's one-third allocation is unreasonable in light of Apple's minimal success on dilution, which represents *less than one percent* of the total disputed liability issues raised in the parties' pleadings and discovery responses, and its failure to prevail on any of its other Lanham Act claims.   In addition, Apple failed to submit any billing records.   That alone requires denying Apple's motion.

## ARGUMENT

### I.   THE COURT SHOULD DEFER CONSIDERATION OF ATTORNEYS' FEES UNTIL AFTER THE MERITS APPEALS ARE RESOLVED

Both parties' post-trial briefing for judgment as a matter of law and a new trial challenged issues related to the jury's findings on the Lanham Act claims.   (*See* Dkt. 2013, at 8-12 (Samsung challenging verdict that Apple's trade dress is protectable, famous, or likely diluted by Samsung's phones, and that Samsung's alleged dilution was willful); Dkt 1989, at 1-7, 14-16, 17-18 (Apple challenging verdict in Samsung's favor that Apple's iPad trade dress and various iPhone trade dresses are not protectable, famous, and/or infringed or diluted by Samsung products).   Although the parties have yet to appeal the merits, it is highly probable that the appeals will raise "a

---

[1]   Apple claims to seek only fees it incurred in connection with its claims against Samsung concerning Apple's intellectual property, not in connection with Samsung's infringement claims against Apple.   (Mot. at 7, n.1.)   Therefore, references in this motion to "Apple's case" refer to the portion of this action relating to Apple's asserted intellectual property rights.

significant potential" that the Federal Circuit's ruling could modify the liability findings on which Apple's motion is premised.  *Madrid v. Concho Elementary School Dist. No. 6 of Apache County*, No. 07-8103**,** 2010 WL 2991562, at * 1 (D. Ariz. July 26, 2010) (deferring consideration of fee motion until after resolution of appeal); *In re Farmers Ins. Exch. Claims Representatives Overtime Pay Litig.*, No. 33-1439, 2009 WL 3834034, at * 3 (D. Or. Nov. 13, 2009) (same); *see also Experience Hendrix v. Hendrixlicensing.com*, No. 11–35858, 2014 WL 306600, at * 6 (9th Cir. Jan. 29, 2014) (vacating fee award and remanding for reconsideration "because many of the factors on which the district court based its attorney fee decision have now changed").   As a result, "the interests of judicial efficiency weigh strongly in favor of waiting for a mandate from the [appellate court] before awarding or denying attorney fees or costs."   *In re Farmers Ins.*, 2009 WL 3834034, at * 3; *accord Derringer v. Sewell*, No. 08-8156, 2009 WL 2424662, at *1 (D. Ariz. Aug. 7, 2009); *Timmons v. United Parcel Serv., Inc*., No. 05-2175, 2007 WL 3026618, at * 1 (E.D. Cal. Oct 16, 2007).   The Court accordingly should "defer its ruling on the motion, or may deny the motion without prejudice" until after the appeal has been resolved.   Fed. R. Civ. P. 54(d) advisory committee's note (1993).

## II.   APPLE'S LANHAM ACT CLAIM WAS NOT "EXCEPTIONAL"

This action may be exceptional by many measures, but the Lanham Act's stringent standards for "exceptional" claims is not one of them.

### A.   Exceptionality Requires Bad Faith Or Other Malicious Conduct.

For purposes of awarding fees under the Lanham Act, "exceptionality" is narrowly construed and requires that the actions of the party against whom fees are sought evidenced "bad faith or other malicious conduct."   *Stephen W. Boney, Inc. v. Boney Services, Inc.,* 127 F. 3d 821, 826 (9th Cir. 1997); *see also Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) ("We construe the 'exceptional circumstances' requirement narrowly.") (citing *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000)).   This standard has also been expressed as requiring that the Lanham Act violation was "malicious, fraudulent, deliberate or willful."   *E.g., Gracie*, 217 F.3d at 1068 (citing *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) (affirming refusal to award fees because case was not exceptional)).   The Ninth Circuit is clear,

1   however, that the intentionality of the act itself is not sufficient to qualify as "exceptional."   *E.g.,*

2   *Watec Co., Ltd. v. Liu,* 403 F.3d 645, 656 (9th Cir. 2005) ("[The] finding that [defendant]

3   'intentionally infringed' does not necessarily equate with the malicious, fraudulent, deliberate or

4   willful conduct that we usually require before deeming a case exceptional.") (citation omitted).

5   "Rather, sufficient undisputed evidence must demonstrate that the defendant deliberately intended

6   to deceive consumers."   *Healthport Corp. v. Tanita Corp. of America,* 563 F. Supp. 2d 1169,

7   1183 (D. Or. 2008) (denying attorneys' fees even though defendant intentionally made a false

8   statement because it did not "engage[] in a concerted effort to deceive consumers sufficient to

9   justify an award of attorneys fees"); *see also CJC Holdings, Inc. v. Wright & Lato, Inc.,* 979 F.2d

10   60, 66 (5th Cir. 1992) (remanding fee award because "the district court legitimately could find the

11   case unexceptional, despite deliberate copying" of asserted product configuration trade dress if

12   there was no intent to deceive).   In addition, "[e]xceptional circumstances can be found when the

13   non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith."

14   *Gracie,* 215 F.3d at 1071.

15        Apple cites no contrary authority.   Indeed, the cases it relies on reinforce the exceptional

16   nature of circumstances sufficient to award fees.   For example, *Horphag Research Ltd. v. Garcia*

17   affirmed an award of fees in a dilution case where the defendant used an identical mark to the

18   plaintiff's, "consumers *believed* they were purchasing [the plaintiff's product]," and the defendant

19   "made deliberate and calculated attempts to confuse [its] product with [plaintiff's] by altering

20   quotations from research publications that refer exclusively to [plaintiff's] product."   475 F.3d

21   1029, 1039 (9th Cir. 2007) (cited in Mot. at 2-3).   Similarly, *TrafficSchool.com, Inc. v. Edriver*

22   *Inc.,* affirmed the finding of exceptionality where there was "overwhelming proof that defendants

23   knew their statements confused consumers and did little or nothing to remedy it," "planned to

24   mislead [consumers]," and "associated their website with URLs and search terms that falsely

25   implied DMV.org was a government site."   653 F.3d 820, 833 (9th Cir. 2011) (cited in Mot. at

26   2).

27        The defendant's behavior in *Lahoti v. Vericheck, Inc.* was even more egregious. 636 F.3d

28   501 (9th Cir. 2011) (cited in Mot. at 3-4) ("*Lahoti II*").   The court affirmed the exceptionality

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

finding, relying on "Lahoti's willful registration and use of the www.vericheck.com domain name, his attempt to extort thousands of dollars from Vericheck, his disregard for Vericheck's trademark rights, his pattern and practice of cybersquatting, including a pattern and practice of abusive litigation practices, and his disregard for the submission of inaccurate answers to interrogatories." *Id.* at 510-11; *see also Lahoti v. Vericheck, Inc.* 708 F. Supp. 2d 1150, 1171 (D. Wash. 2010) (identifying as part of exceptional factors "a pattern and practice of abusive litigation practices as a means to convince trademark owners to drop their domain name claims or to pay for domain names").   In addition, the court relied on its previous affirmation of the trial court's summary adjudication of the defendant's bad faith, which was based on ample additional evidence:

> Lahoti never used the Domain Name in connection with a bona fide offering of goods and services.   Instead, Lahoti earned income when customers clicked on links when visiting the Domain Name website, some of which directed them to Vericheck's competitors.   Lahoti then asked for as much as $72,500 to sell the Domain Name to Vericheck even though Lahoti had no interests associated with the "Vericheck" name.   Finally, it is undisputed that Lahoti is a repeat cybersquatter who has registered hundreds of domain names resembling distinctive or famous trademarks and has been admonished by judicial bodies for doing so.

*Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202-03 (9th Cir. 2009) ("*Lahoti I*"); *Lahoti II*, 636 F. 3d at 511.

The defendants in *Playboy Enterprises v. Baccarat Clothing Co., Inc.,* "premeditatedly sought the services of [a third party] to produce counterfeit PLAYBOY and RABBIT HEAD insignias and upon receiving such goods sold them as legitimate PEI products."   692 F. 2d 1272, 1276 (9th Cir. 1982) (cited in Mot. at 7).   Their actions could not "be justified as either a reasonable attempt to develop their own trademark or as the result of innocent confusion concerning the existence of the well recognized PEI trademarks."   *Id.*[2]

---

[2]   The other opinions Apple cites that discuss the exceptionality standard further confirm that unequivocal bad faith type motives must underlie a non-prevailing party's actions to have the Lanham Act claim deemed exceptional.   For example, the plaintiff in *Earthquake Sound Corp. v. Bumper Indus.* had informed the defendant of instances of actual confusion, the defendant had "agreed to cease using the [infringing] mark and then reneged on that agreement," "the trademark infringement issue was not close," summary judgment was granted against the defendant, and "[m]ost importantly, there was ample evidence of actual confusion."   352 F.3d 1210, 1217–18 (9th Cir. 2003).   *See also, e.g., Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825
(footnote continued)

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

Apple did not even allege facts comparable to these authorities here. To the contrary, Apple repeatedly admitted that smartphone and tablet consumers were **not** confused or deceived by Samsung. As Apple's hardware design expert testified, "by the end of the smartphone purchasing process, the ordinary consumer would have to know which phone they were buying," and both he and Apple's user interface design expert testified they had no evidence of any consumer confusion. (Dkt. 1611 at 1103:13-1104:18; Dkt. 1611 at 1101:11-1102:8; 1103:2-1104:18; Dkt. 1612 at 1424:1-1425:22.) Nor does Apple show that Samsung pursued groundless defenses.

Under controlling precedent, Apple's dilution claim, on which it prevailed on less than one-quarter of the factually disputed issues it actually tried and lost or abandoned the remainder (Barach Decl. ¶ 26-31, 40, Ex. 1), does not qualify this case as an "exceptional" one under the Lanham Act.

Unable to point to any evidence that Samsung's conduct was intentionally deceptive, in bad faith, fraudulent, extortionate, or actually confused consumers, Apple rests its entire argument on (a) the jury's finding of willful dilution and (b) Samsung's purported "copying" of the iPhone. Neither is sufficient.

**B.**      **The Jury's Finding Of Willfulness Cannot Support A Finding of Exceptional Circumstances Here.**

Apple's reliance on the jury's finding of willfulness is misplaced. (Mot. at 3.) Unlike the jury in *Gracie v. Gracie*, which had been "instructed as to the bad faith component of willfulness" under the Lanham Act, 217 F.3d 1060, 1069 (9th Cir. 2000), the jury here received no instruction tying willfulness to bad faith. (Dkt. 1903.) Instead, the only instruction concerning willfulness related to patent infringement, which permits a finding of willfulness if the defendant acted with "reckless disregard of the patent it infringed." (*Id.* at 78:5-6.) However, "reckless

---

(9th Cir. 1996) (fees awarded on appeal where defendant knowingly and intentionally infringed to cause confusion and interfere with plaintiff's environmental agenda); *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1013, 1026 (9th Cir. 1985) (affirming fees for contempt proceedings where record contained substantial evidence of deliberate infringement, including continued infringement in violation of injunction, and "conspiracy to pass off an imitation product" that "constituted extraordinary, malicious, wanton, and oppressive conduct").

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

disregard" is not the standard for willfulness under the Lanham Act, and cannot satisfy the Act's standards for imposing attorneys' fees.  *See* Section I.A.  Accordingly, the jury's willfulness determination here, made under a different standard, is inapposite and not entitled to the deference accorded the *Gracie* jury's determination.

In any event, "a determination that a trademark case is exceptional is a question of law for the district court, not the jury."  *Watec,* 403 F.3d at 656 (internal quotation marks and citation omitted).  A jury's finding of willfulness does not compel a finding of an exceptional Lanham Act claim.  In *Watec*, the Ninth Circuit vacated a fee award, which was based on the trial court's "problematic" decision to award fees simply "because '[t]he jury expressly found that defendant … intentionally infringed on plaintiff's trademarks, and recommended an award of fees.'"  *Id.* (quoting trial court).  Reflexive reliance on the determination of the jury, which was not instructed as to any bad faith elements regarding dilution, would therefore be error.

For the purpose of awarding attorneys' fees, an act "is not willful if the defendant 'might have reasonably thought that its proposed usage was not barred by the statute.'"  *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998) (denying fees) (quoting *Int'l Olympic Comm. v. San Francisco Arts & Athletics,* 781 F.2d 733, 738-39 (9th Cir. 1986), *amended by* 789 F.2d 1319 (9th Cir. 1986), *aff'd,* 483 U.S. 522 (1987)).  As discussed below in Section II.C.2, Samsung reasonably thought its use was not barred by the Lanham Act. Therefore, the jury's verdict is not sufficient to support a finding of exceptionality.

### C.  Apple's Allegations of Copying Cannot Support A Finding Of Exceptional Circumstances.

Apple cites no authority supporting its contention that copying a competitors' trade dress warrants a finding of exceptional circumstances.  Even if a defendant's copying of trade dress were theoretically sufficient to justify a finding of exceptional circumstances in the absence of bad faith or other malicious conduct, on the facts here, it cannot given the closeness and novelty of Apple's dilution claim and the reasonableness of Samsung's defenses.

1.   *The closeness of Apple's dilution claims prevents a finding of exceptional circumstances.*

"There is nothing 'exceptional' about" a claim that raises "difficult issues."   *U-Haul Int'l. v. Jartran, Inc.*, 793 F.2d 1034, 1044 (9th Cir. 1986) (declining to award fees for appeal); *see also Icebreaker Ltd. v. Gilmar S.p.A.,* No. 11-309, 2013 WL 638926, at *3-4 (D. Or. Feb 20, 2013) (declining to award fees where suit raised "complicated, close issues"); *cf. Earthquake Sound Corp.,* 352 F.3d at 1218 (affirming exceptionality where "the trademark infringement issue was not close").   This is particularly the case when the prevailing party loses the majority of its claim. *See Experience Hendrix v. Hendrixlicensing.com*, No. 09-285, 2011 WL 4402775, * 7 (W.D. Wash. Sept. 21, 2011) ("In light of defendants' overall success in this action, the Court sees no basis for attributing to defendants the sort of bad faith necessary under the Lanham Act to sustain an award of attorney fees in favor of plaintiffs.").

The verdict shows that the dilution claims against Samsung's phones that Apple presented to the jury were close claims.   The jury agreed with Samsung that two of Apple's asserted trade dresses were neither protectable nor famous.   (Dkt. 1931 at 10.)   As Apple concedes, the unregistered trade dress it partially prevailed on was similar to one it lost on entirely.   The only differences were that the trade dress found to be unprotectable did not include a metallic bezel, a row of small dots on the display screen, and "neutral (black or white)"—as opposed to just black—borders.   (Mot. at 12-13.)   And, for the two trade dresses the jury did find in Apple's favor, the jury found that 11 of the 17 phones Apple accused of diluting its trade dress rights did not dilute them.   And even for the 6 phones the jury found were diluting, there were many similarities to the 11 phones that the jury found did not dilute:

| Phones found to dilute Apple's unregistered iPhone 3G and registered '983 Trade Dresses |  |
| Phones found not to dilute Apple's unregistered iPhone 3G and registered '983 Trade Dresses |  |

(Dkt. 1931 at 11-12.)    Given how narrowly the jury made its decisions between protectable and famous and unprotectable and not famous trade dress and diluting and not diluting phones, Apple cannot reasonably dispute that the claims were close.    And it does not try.

Moreover, whether Apple's asserted trade dresses—which do not include the Apple logo, the Apple name, or the home button—qualify as famous is a close question, given the evidence presented at trial.    The level of recognition required to prove fame is exceptionally high: the trade dress must be so famous that it is a household name.    *E.g., Thane Int., Inc., v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002).    The consumer survey evidence presented by Apple at trial showed that less than 60% of respondents were aware of the limited iPad or iPhone trade dresses, far less than the minimum generally accepted levels for establishing fame.    *E.g., Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1014 (9th Cir. 2004); 4 MCCARTHY ON TRADEMARK at § 24:106, 24-310 (2008 ed.) ("[M]inimum threshold survey response should be in the range of 75% of the general consuming public of the United States.").

2.     *The reasonableness of Samsung's defenses to Apple's dilution claim prevents a finding of exceptional circumstances.*

A Lanham Act violation is not "exceptional" if "the defendant might have reasonably thought that its proposed usage was not barred by the statute."   *Blockbuster,* 141 F.3d at 1301 (declining to award fees to prevailing plaintiff) (quoting *International Olympic Comm.,* 781 F.2d at 738-39); *see also Kelley Blu Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 293 (C.D. Cal 1992) (declining to award fees where defendants "introduced some evidence at trial supporting their reasonable belief" of non-infringement).

The jury's split decision is not the only evidence of the reasonableness of Samsung's defenses.   Samsung presented similar evidence of utilitarian and aesthetic functionality for the iPhone trade dresses as it did for the iPad trade dress, which the jury found unprotectable and the Court affirmed.   (Dkt. 2219 at 4-5.)    Further, the Court upheld as reasonable the jury's rejection of Apple's "brief and conclusory testimony" that the iPhone combination trade dresses was not functional and had acquired secondary meaning.   (*Id.* at 12.)   This is essentially the same testimony Apple relied upon for the two phone trade dresses it partially prevailed on.   As the Court observed:   "Indeed, the cited testimony regarding secondary meaning was not even specifically about the Combination iPhone Trade Dress, but rather concerned general attributes of "Apple trade dresses."   (*See id.*)   In addition, based on the reasonableness of Samsung's defenses, the Court granted Samsung judgment as a matter of law concerning its non-willfulness regarding design patents that Apple described as being "precisely what is captured by" its trade dresses.   (Dkt. 2220 at 30-32; Mot. at 9.)   The Court's prior rulings thus confirm the reasonableness of Samsung's position.

3.     *The novelty of Apple's dilution claim prevents a finding of exceptional circumstances.*

The novelty of Apple's partially successful dilution claim—for dilution of a product configuration trade dress by a direct competitor—further weighs against a finding of exceptional circumstances.   *E.g., Classic Media,*, 532 F.3d at 990 (affirming denial of fees where claim involved "an unsettled area of the law"); *see also Fifty-Six Hope Road Music v. A.V.E.L.A.*, 915 F. Supp. 2d 1179, 1186-187 (D. Nev. 2013), (declining to award fees against certain defendants

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

notwithstanding jury finding of willfulness in part because the case presented "novel legal questions"), *appeal docketed*, No. 13-15473 (9th Cir. Mar. 15, 2013).

As a preliminary matter, product configuration trade dress claims are subject to higher scrutiny because of the danger they pose to legitimate competition.   *See, e.g., TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2003) (emphasizing "caution against misuse or overextension of trade dress," because "product design almost invariably serves purposes other than source identification.").   As the Supreme Court explained:

> In the case of product design, … we think consumer predisposition to equate the feature with the source does not exist.   Consumers are aware of the reality that, almost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing.

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000).   Thus, the Ninth Circuit has warned courts to "exercise restraint so as not to undermine Congress's repeated determinations not to afford virtually perpetual protection to product configurations with an expansive construction of section 43(a).   What Congress has, for the great span of this century, been unwilling to do, ... should not be effected by the judiciary."   *Leatherman Tool Group, Inc. v. Cooper Indus., Inc*., 199 F.3d 1009, 1012 (9th Cir. 1999) (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd*., 40 F.3d 1431, 1446-47 (3d Cir. 1994).   For that reason, assessments of product configuration trade dress must necessarily be more specific and concrete than for trademarks.   *E.g, Continental Lab. Prod., Inc. v. Medax Int'l, Inc*., 114 F. Supp. 2d 992, 1002-03 (S.D. Cal. 2000) (contrasting satisfactory proof in a trademark action with a product configuration trade dress action) (quoting *Duraco*, 40 F.3d at 1452-53).

In addition, "recovery on a theory of trademark dilution is inappropriate when the plaintiff and defendant are competitors offering similar goods."   *YKK Corp. v. Jungwoo Zipper Co., Ltd.,* 213 F. Supp. 2d 1195, 1207 (C.D. Cal. 2002) (denying summary judgment to plaintiff).   Finding the reasoning of trademark commentator J. Thomas McCarthy "persuasive" on this point, *YKK* quoted from his treatise:

> It is difficult to understand why an antidilution law is invoked when the parties operate in competitive or closely related product or service lines.   The

legal theory of anti-dilution was conceived to protect strong marks against a diluting use by a junior user in a product or service line far removed from that in which the famous mark appears.   Thus, using the anti-dilution law when the parties are competitors in the same market sounds a dissonant and false note. Why the need to invoke the "super weapon" of the anti-dilution law to resolve what appears to be a garden variety infringement case?...

The anti-dilution laws should only be rarely and sparingly applied to cases involving parties selling in the same market.   The anti-dilution theory was not designed or conceived to apply to such cases and it makes a poor fit.   It is the wrong tool for the job.   *Its mis-use in competitive situations is bound to upset the balance of free and fair competition and deform the anti-dilution doctrine.*

*Id.* at 1207-08 (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:72 (Author's Comment) (4th ed. 2001)) (emphasis added); *accord McCarthy on Trademarks and Unfair Competition* § 24:74 (Author's Comment) (4th ed. 2013).   It is unsurprising, therefore, that Apple has cited no cases awarding fees to plaintiff who prevailed on a product configuration trade dress dilution claim against a legitimate (i.e., non-counterfeiter) competitor.

> 4. *Apple cites no evidence or authority supporting a finding of exceptional circumstances here.*

None of the evidence Apple relies on reflects the type of deliberate, intentional deception, bad faith, or malicious conduct necessary to support a finding of exceptional circumstances.   Nor is the evidence even persuasive for the limited, inapposite arguments that Apple tries to make.

In addition to pointing to evidence that over the course of several years, Samsung, like the rest of the mobile industry, began to expand its touchscreen phone offerings, Apple points to PX 34.   (Mot. at 4.).   That document was created by not by Defendants, but by Samsung LSI, which manufactures computer chips and processors (Dkt. 1611, 8/6/12 Tr. 969:10-22, Dkt. 2842, 11/15/13 Tr. 1041:24-1042:1.)   Although Apple emphasizes a small snippet of that document, which was translated as "h/w portion: easy imitation," the document in its entirety reflects that this observation relates to the internal hardware components—not the exterior hardware design, nor the software design of the user interface.   (PX 34.4, .15–.19, .21, .24–.26, .28-.29, .31-.32, .34.) The comments in PX 34 describing the iPhone's success simply put in context the author's perception that the demand for the internal components would be high.   (Dkt. 2842, 11/15/13 Tr. 1044:10-14.)

Apple also relies on PX 40, in which a Samsung executive is reported to have said that third-party carriers have said to him "why don't you make something like the iPhone?"   (PX 40.2 (partially quoted in Mot. at 4).)   Apple has tried to portray this as a direction to copy the iPhone. (*E.g.,* Dkt. 1997, 8/21/12 Tr. 4082:23-4083:24; Dkt. 2844, 11/19/13 Tr. 1298: 3-17.)   But it plainly is not.   According to PX 40, the executive exhorted Samsung's user interface designers to "make designs with faces that are creative and diverse"—an instruction that is incompatible with copying—and confirmed that his frustration was with the user interface ("UX"), not their exterior hardware of Samsung's phones: "I have confidence in our products' H/W, in their exterior design, and in their quality."   (PX 40.4-.5.)   Thus, if anything, the document refutes Apple's claim that Samsung sought to copy the external appearance of the iPhone, which is the backbone what Apple claims as its trade dresses.   Apple's reliance on PX 36 (Mot. at 4) is similarly misplaced.   That document reflects a third party's assessment that "Pundits tell us the iPhone is a revolution."   (PX 36.20.)   Not only does this generic phrase fail to prove copying, but the "Recommendations Key takeaways" portion of that document recommends that Samsung seize the "[o]pportunity to assert style leadership in touch through distinctive offerings."   (PX 36.119.)   Again, this is incompatible with copying.

Finally, Apple relies on PX 44, titled "Relative Evaluation Report." There is no evidence that any Samsung designer ever reviewed this document, the document contains no reference to the exterior hardware of Samsung's phone, and there is undisputed testimony that Samsung did not follow the recommendations of the report on any issue relating to Apple's asserted trade dress. (Dkt. 1610, 8/3/12 Tr. 849:8-21.)   The blatant falsity of Apple's representation that the Report contained "directives to make Samsung's phone like the iPhone in 126 ways" (Mot. at 4) is further shown by examining the 126 numbered pages of issues, most of which address such non-controversial points as "increasing the size of the daily schedule display area in order to make it le[]gible," preventing duplicate menu icons from being placed on the home screen, and not having overlapping windows.   (PX44.6, .9, .10; *see also* PX.44.5, .11–.13, .14, .16, .19, .21, .29–.31, .34, .36, .38, .46, .50, .53, .66, .83, .88–.90, .95, .97, .99, .124, .129).   And, of course, none of these has any bearing on the trade dresses that Apple prevailed on.   Indeed, the sole page of PX 44 that

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

1    Apple cites that references anything remotely pertinent to its asserted trade dress is PX44.131,

2    which references "a feeling that iPhone's menu icons are copied."   (Mot. 4-5.)   But as this Court

3    has already expressly held, that reference "does not provide convincing evidence that Samsung's

4    infringement defense of D'305 patent was unreasonable."   (Dkt. 2220 at 31.)   Given that the

5    D'305 patent consisted entirely of the user interface menu screen—which makes up only a portion

6    of Apple's iPhone trade dresses that also include exterior hardware design (Dkt. 1904-09 at 35-41,

7    1904-11 at 106-115)—and that PX44.131 makes no references to exterior hardware design, Apple

8    cannot rely on PX44.131 as evidence that Samsung's defenses to Apple's trade dress claims were

9    unreasonable.

10       Even if Apple were correct that Samsung intentionally copied its trade dress, which

11   Samsung did not, Apple cites no authority that intentional copying alone—without an intent to

12   deceive or knowledge of actual confusion—could ever be enough to support a finding of

13   exceptional circumstances.   Instead, Apple relies on a single, highly distinguishable decision.

14   (Mot. at 4.)   That opinion affirmed a finding of exception circumstances justifying a fee award

15   against a habitual cybersquatter who intentionally and in bad faith acquired domain names

16   containing registered trademarks for the purpose of systematically extorting money from

17   trademark owners, including through threats of litigation.   *Lahoti II,* 636 F.3d at 501 (affirming

18   708 F. Supp. 2d 1150 (D. Wa. 2012)); *see also Lahoti I,* 586 F.3d at 1202-03 (affirming finding of

19   bad faith).

20       Apple's unsupported assertion that copying a trade dress is sufficient to support a finding

21   of exceptional circumstances is contrary to well-established law.   As the Supreme Court has

22   recognized, "trade dress protection must subsist with the recognition that in many instances there

23   is no prohibition against copying goods and products."   *TrafFix,* 532 U.S. at 29.   "No harm is

24   done to the [Lanham Act's] incentive structure … by the copying of a product design that does *not*

25   confuse consumers as to the product's source."   *Groeneveld Transp. Efficiency, Inc. v. Lubecore*

26   *Int'l Inc.,* 730 F.3d 494, 513 (6th Cir. 2013).   Rather, "in the absence of consumer confusion, and

27   in the absence of any copyright or patent protection, copying is perfectly legal.   Indeed, such

28   copying is more than just legal; it is often beneficial."   *Id.* (citing *TrafFix,* 532 U.S. at 29.)   It

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

1   "preserves competition, which keeps downward pressure on prices and encourages innovation."

2   *Id.* at 514; *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §

3   8:19 (4th ed. 2013) ("[C]opying in order to imitate an unpatented functional aspect of a

4   competitor's product is what free competition is all about...."). Accordingly, when assessing

5   willful intent, the key question is not whether there was "intent to *copy* but rather the intent to

6   *deceive* or *confuse.*" *Groeneveld*, 730 F.3d at 514 (analyzing intent factor of likelihood of

7   confusion test); *see also Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, No. Civ. 10–

8   6938, 2012 WL 3217858, at * 15, 21 (C.D. Cal. Aug. 8, 2012) (holding intentional copying of

9   competitor's product design did not evidence an intent to deceive consumers and did not favor

10  finding likely confusion); *Continental Lab.,* 114 F. Supp. 2d at 1010 n.14 ("[A] court should not

11  infer" from deliberate copying of a product design "that the defendant intended to deceive

12  consumers where it made deliberate efforts to prevent source confusion," such as using "a

13  different packaging design or conspicuously display[ing] its own trademarks.").

14         If Apple were correct that intentionally copying a trade dress were sufficient to impose

15  attorneys' fees, defendants who challenge asserted Lanham Act rights "may be punished by

16  attorney's fees awards for exercising their right to challenge weak" rights. *Earthquake Sound,*

17  352 F.3d at 1221-22 (Ferguson, J., concurring). Indeed, the Fifth Circuit expressly rejected the

18  invitation to adopt "a rule that deliberate copying by the defendant of the plaintiff's trade dress

19  makes a case *per se* exceptional." *CJC Holdings,* 979 F.2d at 66. Instead, it held that "the

20  district court legitimately could find the case unexceptional, despite deliberate copying" of the

21  asserted product configuration trade dress, explaining that a "court normally should not find a case

22  exceptional where the party presents what it in good faith believes may be a legitimate defense,"

23  such as functionality. *Id.* at 65-6.

24         In any event, Apple's so-called copying evidence does not diminish the reasonableness of

25  Samsung's defenses or the closeness and novelty of Apple's dilution claims, particularly given

26  that the jury rejected Apple's dilution theory for almost two-thirds of the phones (11 of 17) for the

27  two trade dresses it found protectable, and it rejected the protectability and fame of the asserted

28  iPhone "combination" trade dress that Apple characterized as having only minor differences from

**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ATTORNEYS' FEES**

the protected unregistered iPhone 3G trade dress.   (Dkt. 1931 at 10; Mot. at 12; Sections II.B.1-3.)   Under these circumstances, it would be error for the Court to find Apple's dilution claim "exceptional."

## III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY APPLE'S FEE REQUEST

Even if Apple's Lanham Act claim were "exceptional," the Court should exercise its discretion to deny Apple's fee motion.  Factors such as "whether the relevant area of law is unclear, whether infringement or willfulness was a close question, [and] whether each defendant intended to deceive or confuse the public" may weigh against an award of fees even in exceptional case.  *Fifty-Six Hope Road Music,* 915 F. Supp. 2d at 1186 (declining to award attorneys' fees against certain defendants notwithstanding jury finding of willfulness); *see also Applied Info. Sciences Corp. v. eBay, Inc.,* 511 F.3d 966, 973 (9th Cir. 2007) (affirming denial of fees where non-prevailing party "raised debatable issues").   For the reasons discussed above, these factors favor of finding that this case is not exceptional.

Apple's low rate of success on its Lanham Act claims overall further weighs against an award of fees here.  *See Experience Hendrix,* 2011 WL 4402775, at * 7 (declining to find the requisite bad faith "in light of defendants' overall success in this action").   Recognizing that discovery had exposed the weakness of its trademark and trade dress infringement and unfair competition claims over phones, Apple dropped *all* of them before trial.   (Barach Decl. ¶ 22, Ex. 1.)   The only trade dress infringement claim Apple actually tried, which it asserted against Samsung's tablet computers, it lost.  (Dkt. 1931 at 10, 14-15.)   Apple also lost its dilution claims against the tablet computers, and the jury found invalid one of Apple's asserted phone trade dresses, which it had asserted against 18 of Samsung's phones.  (Dkt. 1931 at 10, 13.)   Of the remaining two trade dresses, which were asserted against 17 phones, Apple lost on both as to 11 phones and prevailed on only 6.   (Barach Decl. ¶ 31, Ex. 1; Dkt. 1931 at 11-12.)     All told, Apple's Lanham Act case yielded a partial victory on only 14 of the 573 disputed liability issues relating to the trademark and trade dress rights it asserted through its pleadings and discovery responses (for six phones on two trade dresses each, plus prevailing on Samsung's invalidity

1   affirmative defenses and counterclaims for these two trade dresses). (Barach Decl. ¶ 39, Ex. 1.)

2   Mathematically expressed, Apple prevailed on only 2.44% of the disputed liability issues raised by

3   its Lanham Act claims.   (*Id.*)   This is not the type of pervasively one-sided Lanham Act case

4   that justifies the imposition of fees.

5   **IV.    APPLE FAILED TO SATISFY ITS BURDEN OF PROOF AS TO THE CORRECT AMOUNT OF FEES**

6          If fees are awarded, they must be based on "specific findings as to the rate and hours [the

7   Court] has determined to be reasonable."   *Gracie*, 217 F.3d at 1070 (citation omitted, vacating

8   fee award and remanding).   Apple does not give the Court sufficient information to make the

9   required specific findings.

10         **A.    Apple Failure To Provide Billing Records, Or Even Summaries of Attorney Hours, Requires Denial of Its Motion.**

11

12         Apple's motion for attorneys' fees also should be denied based on its failure of proof.

13   "[T]he fee applicant bears the burden of … documenting the appropriate hours expended and

14   hourly rates … and should maintain billing time records in a manner that will enable a reviewing

15   court to identify distinct claims."   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (vacating fee

16   award).   The Court may not "accept[] uncritically plaintiff's representations concerning the time

17   expended" or award fees based on "conclusory" determinations of what is "reasonable and

18   necessary" that are "unsupported by any analysis of time records."   *Gracie*, 217 F.3d at 1070

19   (quoting *Sealy, Inc. v. Easy Living, Inc*., 743 F.2d 1378, 1385 (9th Cir. 1984)).   "[S]ummaries of

20   hours worked," like those submitted by Apple, "rather than the underlying materials" are

21   necessarily "inadequate" and prevent "meaningful appellate review."   *Id*.   This is particularly

22   true where allocation of claims is involved and the submitted declarations contain factual

23   misstatements.   *See, e.g*., *Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859 (N.D. Cal.

24   2012) (declarations containing erroneous information concerning billing records required

25   deduction of fees sought).   Courts routinely deny fee motions in these circumstances, and

26   Apple's motion should be denied on this ground alone.   *E.g, Zynga Game Network Inc. v. Erkan*,

27   No. 09-3264, 2010 WL 3463630, *1-2 (N.D. Cal. Aug. 31, 2010) (denying motion for fees for

28   failure to submit "actual billing records," which are "particularly important in a case where both

Lanham Act and non-Lanham Act claims are brought, because attorneys' fees are only available for the fees incurred in bringing the Lanham Act claims").

Apple offers no legitimate excuse for its failure to submit more detailed records, particularly in view of its representation that it has specific invoices with task codes, as well as monthly and quarterly budgets.   (Dkt. 2851-4, ¶¶ 258-59.)   Having failed to provide underlying billing materials, Apple invites this Court to erroneously accept "uncritically [its] representations" and "award[] the entire amount requested without question."   *Gracie*, 217 F.3d at 1070 (quoting *Sealy*, 743 F.2d at 1385).   Doing so is impermissible under controlling precedent.

Apple's supporting declarations demonstrate why courts are not allowed to award hundreds, much less millions, of dollars in attorneys' fees just based on the moving party's say so. Mr. Jacobs' declaration explicitly states that Apple is only seeking fees billed for this matter, not for related matters such as ITC Inv. No. 33-TA-796 (Dkt. 2851-4, ¶ 16), yet his declaration contains misleading statements about which attorneys performed which tasks in which matter.   For example, Mr. Jacobs declares that Mr. McElhinny defended the deposition of Daniele De Iuliis.   (Dkt. 2851-4, ¶ 62.)   But Mr. McElhinny did not defend, or even attend that N.D. Cal. deposition; Andrew Monach did.   (Barach Decl. Ex. 4.)   Mr. McElhinny defended one of Mr. De Iuliis' 796 depositions (Barach Decl. Ex. 5.), which Apple claims it is not seeking fees for, but it is not clear whether the time associated with that ITC deposition was in fact excluded from the hours in Ex. A.   Likewise, Mr. Jacobs declares that Erik Olsen defended Boris Teksler's deposition, but the transcript shows Mark Selwyn, not Erik Olsen, appearing for Apple in this action.   (Dkt. 2851-4, ¶ 74; Barach Decl. Ex. 6-7.)   And Mr. Jacobs declares that Brooks Beard defended the deposition of Christopher Prest, but the deposition transcript shows Mark Danis defended the deposition in this action.   (Dkt. 2851-4, ¶ 98; Barach Decl. Ex. 8-9.)   Samsung is able to identify these factual discrepancies only because its counsel attended those depositions and has copies of the transcripts.   But Apple's failure accurately to represent even independently verifiable facts raises significant doubts about other representations in Mr. Jacobs' declaration, as well as Apple's calculation of hours in Exhibit A, which neither Samsung nor the Court are able to evaluate given Apple's refusal to produce supporting records.

Apple's supporting declarations raise other red flags.   For example, the parties both had partially successful cross-motions for attorneys' fees against each other in connection with discovery issues.   (*See* Dkt. 2123; Jacobs Decl. ¶ 24-34.)   In the one instance Judge Grewal granted fees to Apple, he reduced the amount awarded by 20% due to Apple's block billing. (Dkt. 880 at 9; Dkt. 2123 at 20.)   Apple does not represent that it carved out the fees it previously sought that were rejected or those that were awarded.   In fact, several attorney biographies and roles include descriptions of work on general "motion for sanctions" without specifying whether these motions had already been awarded fees or had even been already ruled on and precluded by Judge Grewal.   (Dkt. 880; *see, e.g.,* Jacobs Decl. ¶ 79, 90, 137).

In addition, the chart attached to Mr. Jacobs' declaration as Exhibit A identifies the "effective discounted rate through 3/1/2013" of the attorneys whose fees Apple seeks. (Dkt. 2851-4, Ex. A.)   While some variation among attorney rates is excepted, it is highly unusual that attorneys from the same firm would have hourly rates that differed by less than a dollar, or so many attorneys whose rates would differ by five cents from other attorneys.   (*See id., e.g.,* entries for Kreeger and Kramer; Olson and Kuwayti; Taylor and Tucher; Matsui and Besirof; Burlinson and Humphries; Ahn and Chung.)   Apple's summaries also reveal 12 timekeepers for whom it is counting more than 2,300 hours of time each, including four for whom it is counting more than 3,000 hours.   (Dkt. 2851-4, Ex. A.)   But it provides no details that would allow Samsung or the Court to scrutinize any of the hours billed.   This failure is fatal because Apple's billing practices may include activity that may require reductions in the amount of fees awarded under the law. Such practices include billing more hours for a given task than is reasonable, duplicative billing among multiple attorneys, block billing, billing for travel time without submitting evidence demonstrating a local customary practice of billing for travel time, or "act[ing] with a degree of zeal and thoroughness beyond that which would have been exercised by a reasonable attorney," and may require substantial deductions.   *Spalding Labs., Inc. v. Arizona Biological Control, Inc.,* No. CV 06-1157, 2008 U.S. Dist. LEXIS 56100 (C.D. Cal. May 29, 2008), *vacated on other grounds*, Nos. 07-56876, 08-56006, 345 Fed. Appx. 270, 271 (9th Cir 2009) (deducting for block billing (15%), excessive and duplicative time (30%), travel time (5%), and specific deductions for

1   unreasonable fees).   Here, it is impossible to tell whether Apple's counsel billed for travel time,

2   and if so, how much, or whether the amount of time any given attorney spent preparing witnesses,

3   drafting briefs, preparing memoranda for other lawyers or Apple, or reviewing documents was

4   reasonable.

5           Considered in connection with Apple's cost submission, Apple's failure to submit actual

6   billing records is even more disturbing.   In connection with its Bill of Costs (Dkt. 2852), Apple

7   originally sought to recover entire categories of non-taxable costs, such as realtime and expedited

8   transcript costs, expedited shipping, and costs associated with its document production in the ITC,

9   which it had expressly agreed and been ordered not to seek.   (*See* Dkt. 2930 at 20-21; Dkt. 687,

10  at 33-34.)   Samsung discovered these problems only after extensive review of the thousands of

11  supporting pages of invoices Apple produced.   But even though Samsung met and conferred with

12  Apple before filing its objections, it was not until after Samsung filed its objections that Apple

13  withdrew several of its patently improperly cost submissions.   (Dkt. 2932 at ¶ 2; Dkt. 2942).

14          The overreaching Apple demonstrated in its Bill of Costs submission confirms

15  Samsung's "need and right to peruse and parse [Apple's] fee demand."   *Intel Corp. v. Taerabyte*

16  *Int'l, Inc.,* 6 F.3d 614, 623 (9th Cir. 1993) ("Terabyte was not required to take Intel's word that

17  every hour was needed and all overlap had been eliminated.").   Apple's own apparent confusion

18  about who defended which witness in this action versus the ITC action is but one example of why

19  it is necessary for Apple to produce its underlying billing records—particularly because 398

20  witnesses were deposed in both actions, often on consecutive days, or back to back on the same

21  day.   (*See* Barach Decl. Ex. 3.)   "Under our adversary system" Samsung is "entitled to see just

22  what was charged and why."   *Intel Corp.,* 6 F.3d at 623 (vacating and remanding fee award).

23  Apple's refusal to allow Samsung or this Court sufficient information to evaluate its fee demand

24  alone warrants denial of its motion.

25          **B.      Apple's One-Third Allocation of Fees For One Out of 22 Legal Claims,**
            **Representing Success on 14 Out of 2,512 Disputed Liability Issues Is Not**
26          **Reasonable.**

27          Apple's motion should also be denied because of its failure to allocate its fees properly.

28  Apple's allocation, by which it seeks to recover *all* of its fees for litigating every claim relating to

1   phone design (trademark infringement, trade dress infringement, trade dress dilution, and design

2   patents)—not just the successful sliver of its dilution claim—contravenes controlling precedent.

3        The Ninth Circuit requires attorneys' fees to be apportioned between time spent on

4   successful Lanham Act claims and all other issues in the cases, including unsuccessful Lanham

5   Act claims.   *Gracie,* 217 F.3d at 1069. ("[A]s a general matter, a prevailing party in a case

6   involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work

7   related to the Lanham Act claims."); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir.

8   2002) ("[T]he same rule should apply in cases such as this one, which involves non-recoverable

9   *Lanham Act claims* ….").   Even if "an *exact* apportionment" is impossible, the district court still

10  has "a duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment."

11  *Id.*

12       Thus, the correct approach for Apple would be to separate out non-recoverable fees

13  incurred for claims wholly unrelated to phone trade dress dilution—such as time spent on utility

14  patent depositions for fact and expert witnesses, preparing patent disclosures, preparing expert

15  reports concerning the utility patents, and briefing and preparing for the *Markman* hearing, as well

16  as the tablet design related portions of its design patent and trade dress infringement and dilution

17  claims—and *then* apportion the fees related to phone design to reflect Apple's actual Lanham Act

18  success.   *See, e.g., Cairns,* 292 F.3d at 1156-58.   The Ninth Circuit approved such an approach

19  in *Cairns*, where fees incurred purely for the state law right of publicity claim were separated out,

20  fees incurred for lobbying efforts were separated out, fees attributable to both non-Lanham Act

21  and Lanham Act claims were apportioned to take into account the time actually spent on them, and

22  *then* all fees categorized as Lanham Act fees were apportioned to reflect that the prevailing party

23  was entitled to fees on only two of the three Lanham Act claims.    *Id.*

24       In contrast to *Cairns*, Apple's blanket one-third allocation is based on the entire litigation

25  and makes no attempt to separate out time for tasks completely unrelated to its Lanham Act

26  claims, even though some of its highest billers worked on the utility patent team.   (*Compare, e.g.,*

27  Dkt. 2851, Ex. A *with* descriptions of work performed by Deok Keun Matthew Ahn (Jacobs Decl.

28  ¶ 120-123); Mark E. Melahn (Jacobs Decl. ¶ 124-126); and Minn Chung (Jacobs Decl. ¶ 135-

137)).   Nor does it attempt to separate out discovery, briefing, oral argument, or preparation time associated with its ultimately futile preliminary injunction motion, which consumed months of time and was not even based on any Lanham Act claim—much less trade dress dilution.   And, while Apple represents that it had teams of lawyers devoted to utility versus design issues and that its lawyers prepared detailed records of their time, it made no attempt to separate out the time spent on summary judgment, motions in limine, *Daubert*, or other briefing related solely to utility patents.   (*See* Dkt. 2851-4 ¶¶ 44-50 (description of the Apple substantive and procedural sub-team), Dkt. 2851-4, Ex. A (summary of Apple's time and fees with no differentiation for substantive sub-team work), Dkt. 2851-4 § III (biographies and roles of the Morrison & Foerster Team, which include attorneys who worked exclusively on utility or non-dilution claims).) Apple's failure to do, compounded by its failure to provide the billing records that would enable the Court or Samsung to do, further compels denial of Apple's fee motion.

Apple's one-third division of its entire case is arbitrary and unwarranted.   For example, Apple inexplicably does not separate out its utility patents from one another.   At least as much as the tablet and phone design issues, each of the utility patents had its own prior art and infringement analysis, and the parties each hired four non-overlapping utility experts to address the eight asserted utility patents.   (Barach Decl. ¶ 52-55.)   The one-third division also reflects no attempt to account for the numerous claims Apple asserted, resulting in hundreds of disputed issues of liability, that it dropped before trial.   (Barach Decl. ¶ 16, Ex. 1.)

As an alternative to the *Cairns* approach, Apple could have sought a blanket apportionment according to the Lanham Act issues it *actually prevailed upon*, like the prevailing party in *Societe Civile Succession Richard Guino v. Beseder Inc.* No. 03-13-10, 2007 U.S. Dist. LEXIS 83782, * 43-44 (D. Ariz. Oct. 30, 2007) (cited in Mot. at 12).   There, the prevailing party's "itemized statements" evidenced that "significant work was performed on defending Plaintiff's Lanham Act claim," and given that the other two claims, copyright and conversion, "undoubtedly [had] some overlap making an exact estimation difficult," the court found "no flaw in the one-third allocation estimated by the Rima Defendants in defending Plaintiff's Lanham Act claim."   *Id.*   Either approved apportionment approach, however, still requires scrutinizing the

tasks and time reflected in the moving party's actual billing records.[3]  *E.g., Societe Civile,* 2007 U.S. Dist. LEXIS 83782, * 44 (relying on "itemized statements"); *Cairns*, 292 F.3d at 1157 (affirming award where trial court had made specific allocations and reductions).

Here, of the 2,512 disputed issues of liability relating to Apple's asserted intellectual property in this action, as asserted by the parties in their pleadings and discovery responses, 14 of those are Lanham Act issues on which Apple prevailed—which is 0.56%, or less than one percent. (Barach Decl. ¶ 38, Ex. 1.)  Accordingly, using an equal apportionment method, Apple can recover, at most, $264,381.47—0.56% of its claimed total of $47,210,976.  (Mot. at 13.)  That maximum amount assumes no further deductions are warranted for duplicative, excessive, or otherwise unreasonable fees.  *See, e.g., Spalding,* 2008 U.S. Dist. LEXIS 56100 ** 11-15 (imposing significant deductions for block billing (15%), excessive and duplicative time (30%), and travel time (5%)).  And it assumes no further deduction is warranted for equitable reasons discussed in Section II.  *See Board of Trustees of the Leland Stanford Junior Univ. v. Stanford Rehab Med. Group,* No. 08-2177, 2008 WL 4239761, at *5 (N.D. Cal. 2008) (reducing fee award *sua sponte* by one-third in default judgment case against willfully infringing defendant who used STANFORD mark due to "counterbalancing equitable considerations").

Apple's reliance on the more generous allocation percentages in a district court case, *Fifty-Six Hope Road,* 915 F. Supp. 2d at 1189, *appeal docketed*, No. 13-15473 (9th Cir. Mar. 15, 2013), is misplaced.  It is unclear *Fifty-Six Hope Road's* fee award will be affirmed on appeal given

---

[3]     Apple cites no authority supporting its position that the Court should not look at actual billing records to allocate between recoverable and non-recoverable work.  Instead, Apple relies on the portion of a Section 1988 decision upholding the district court's decision to reduce the fees sought by ten percent "as a practical means of trimming the fat from a fee application."  *Gates v. Deukmejian,* 987 F.2d 1392, 1399, 1403-04 (9th Cir. 1992) (citation omitted) (cited in Mot. at 10).  Here the issue is not just "fat" in Apple's fee request (which Apple has made impossible to evaluate because of its refusal to provide actual records), but Apple's improper attempt to make a blanket, arbitrary apportionment that bears no resemblance to the claims in the case as a whole and certainly not on the limited dilution claims it prevailed on.  *Gates* also was decided eight years before *Gracie* confirmed that actual billing records must be examined, particularly in order to apportion fees properly.  *Gracie*, 271 F.3d at 1070.  Further, *Cairns, Societe Civile, and Spalding*, discussed above, all were founded on more detailed billing evidence.  *E.g., Spalding,* 2008 U.S. Dist. LEXIS 56100, *9 ("Upon receipt of ARBICO's un-redacted invoices, Spalding was given an opportunity to file an amended opposition in order to contest the reasonableness of the claimed fees.").

1    *Gracie*'s requirement for underlying billing records and excluding work on non-recoverable

2    claims.   *Compare Gracie*, 271 F.3d at 1070-71 (vacating fee award where moving party had

3    submitted "mere summaries of the hours worked") *with Fifty-Six Hope Road,* 915 F. Supp. 2d at

4    1189 ("Plaintiffs' billing records are block billed and redacted making it impossible for the Court

5    to apportion based on any particular billing entries.").    Regardless, however, even *Fifty-Six Hope*

6    *Road* excluded identifiable fees that were "incurred solely in relation to the unsuccessful, non-

7    Lanham Act claim."    *Id*.    The facts also there were far different from here.    In *Fifty-Six Hope*

8    *Road,* the plaintiffs' claims *all* "share[d] a common core of facts" relating to the use of Bob

9    Marley's image and name.   915 F. Supp.2d at 1189.[4]   In contrast, Apple's claims included

10   legally and factually diverse issues such as multiple utility patent infringement claims, and its

11   remaining legal theories asserted multiple IP rights (i.e., multiple trade dresses, multiple

12   trademarks, and multiple design patents) concerning two different types of devices (phones and

13   tablets) against multiple different Samsung products.   (Barach Decl. ¶ 37, Ex. 1.)   Of the *two*

14   claims tried in *Fifty-Six Hope Road*, "the unfair competition claim predominated both in terms of

15   evidence presented and arguments made regarding jury instructions and related issues."   915 F.

16   Supp. 2d at 1189-90.   In contrast, dilution was one of *nine* Apple claims tried, Apple's attorneys

17   and witnesses mentioned the word "dilution" (or a variation of it) a mere 18 times in the course of

18   the evidence submitted to the jury over ten days of testimony, and only eight of the 84 jury

19   instructions specifically related to dilution.   (Dkt. 1903, Barach Decl. ¶ 49-52.)   As a result of

20   their Lanham Act success, the *Fifty-Six Hope Road Music* plaintiffs "obtained a permanent

21   injunction and vindicated their rights in the Marley intellectual property."   915 F. Supp. 2d at

22   1189.   Apple cannot say the same.   The jury here rejected the protectability and fame of *half* of

23   Apple's asserted trade dresses and found dilution by essentially one-third of the phones Apple

24   accused of diluting the other two trade dresses.   (Dkt. 1931; Barach Decl. ¶ 31, Ex. 1.)   This

25

26   ─────────────
    [4]   *See also Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.,* 688 F. Supp. 2d 1148, 1155-
    56 (D. Nev. 2010) (identifying claims at issue: "trademark infringement under the Lanham Act
27   (count one); unfair competition under the Lanham Act (count two); common law trademark
    infringement (count three); unauthorized commercial use of right of publicity under Nevada law
    (count four); and intentional interference with prospective economic advantage (count five)").
28

1    Court rejected in its entirety Apple's request for a trade dress injunction, and the Federal Circuit

2    has affirmed that decision.   *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1373-1375 (Fed.

3    Cir. 2013).

4            Likewise, the circumstances in *Spalding*, 2008 U.S. Dist. LEXIS 56100 (cited in Mot. at

5    12), differ starkly from those here.   There, the non-prevailing party "did not object" to the

6    moving party's assertion that all of the claims were "intertwined," and the court simply accepted

7    the 10% reduction proposed by the party seeking fees as an appropriate allocation.   *Id.*   But the

8    *Spalding* court also undertook a rigorous review of the prevailing party's bills and imposed

9    substantial across the board cuts for fees it determined were not reasonable.   *Id.* at * 4-5.

10           Apple's overreaching position that its "phone design" fees—covering trade dress

11   infringement, trademark infringement, trade dress dilution, and design patents—do not need to be

12   apportioned because they are "inextricably intertwined" (Mot. at 8) is ill-founded.   While *Gracie*

13   recognized that claims which cannot be apportioned are theoretically possible, it held that "the

14   impossibility of making an *exact* apportionment does not relieve the district court of its duty to

15   make *some* attempt to adjust the fee award in an effort to reflect an apportionment."   217 F.3d at

16   1070.   This may be the case, for example, if a party prevails on factually and legally duplicative

17   claims, such as federal and state law unfair competition claims.   *See Contractual Obligation*

18   *Prods. v. AMC Networks*, 546 F. Supp. 2d 120, 131-32 (S.D.N.Y. 2008) (awarding fees for claim

19   under the California Business and Professions Code and Lanham Act where claims were

20   "substantially congruent").   But Apple cites no precedent for not separating out, or even

21   attempting to apportion, design patent, trademark infringement, trade dress infringement, and trade

22   dress dilution claims.

23           Tellingly, the only Lanham Act decision Apple cites in which no allocation is made to

24   account for non-recoverable claims, *Gucci Am., Inc. v. Pieta,* is an unpublished district court

25   decision that does not even reference the Ninth Circuit's key precedent, *Gracie* and *Cairns*.

26   (Mot. at 8 (citing No. 04-9626, 2006 U.S. Dist. LEXIS 96694 (C.D. Cal. July 17, 2006)).

27   *Gucci*'s analysis relies on cases interpreting other statutes that have neither the exceptionality

28   requirement nor discretionary element of the Lanham Act.   *Id.* at * 6-9.   Given *Gucci*'s failure

1    even to reference the Ninth Circuit's applicable, controlling law, its outlier analysis should not be

2    followed here.    In any event, *Gucci* was primarily a counterfeiting case; it did not involve such

3    diverse claims as are at issue here.   *Id.* at * 1.   Further, although *Gucci* determined that the

4    plaintiff prevailed only as to the hats portion of its claim, not the handbag portion, Gucci actually

5    obtained a permanent injunction "as to both the handbags and the hats."   *Id.* at * 9.   Most courts

6    would have found that outcome sufficient to deem it the prevailing party on both parts of its claim.

7    *E.g., TrafficSchool.com,* 653 F.3d at 834 (holding injunctive relief alone was sufficient to justify

8    prevailing party status).

9        On its face, Apple's allocation methodology claims to seek all of its attorneys' fees

10   incurred in litigating 2,019 disputed "phone design" liability issues raised and litigated by the

11   parties through discovery—of which it prevailed on only 14 Lanham Act issues.    (Barach Decl. ¶

12   32-36, Ex. 3.)   An award this disproportionate to a party's actual degree of Lanham Act success

13   is unsupported by any reasoned precedent and should not be granted here.

14                                    **<u>CONCLUSION</u>**

15       For the reasons set forth above, and based on the Declaration of Katharine Barach

16   submitted herewith, Apple's motion for fees should be denied.

17   DATED: February 13, 2014

18                            QUINN EMANUEL URQUHART &
                             SULLIVAN, LLP
19
                             By   */s/ Victoria F. Maroulis*
20                              Charles K. Verhoeven
                                Kathleen M. Sullivan
21                              Kevin P.B. Johnson
                                Victoria F. Maroulis
22                              Michael T. Zeller
                                Attorneys for SAMSUNG ELECTRONICS CO.,
23                              LTD., SAMSUNG ELECTRONICS AMERICA,
                                INC., and SAMSUNG
24                              TELECOMMUNICATIONS AMERICA, LLC

25

26

27

28