# United States Court of Appeals for the Federal Circuit

———————————

**APPLE INC.,**
*Plaintiff-Appellant,*

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,**
*Defendants-Cross Appellants.*

———————————

2012-1600, -1606, 2013-1146

———————————

Appeals from the United States District Court for the Northern District of California in No. 11-CV-1846, Judge Lucy H. Koh.

———————————

## JUDGMENT

———————————

THIS CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**REVERSED AND REMANDED**.

ENTERED BY ORDER OF THE COURT

| | |
|---|---|
| <u>August 23, 2013</u> | <u>/s/ Daniel E. O'Toole</u> |
| Date | Daniel E. O'Toole |
| | Clerk |

# United States Court of Appeals for the Federal Circuit

———————————————

**APPLE INC.,**
*Plaintiff-Appellant,*

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,**
*Defendants-Cross Appellants.*

———————————————

2012-1600, -1606, 2013-1146

———————————————

Appeals from the United States District Court for the Northern District of California in No. 11-CV-1846, Judge Lucy H. Koh.

———————————————

Decided: August 23, 2013

———————————————

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were MARK C. FLEMING, LOUIS W. TOMPROS and ANDREW J. DANFORD; RACHEL L. WEINER, of Washington, DC; and MARK D. SELWYN, of Palo Alto, California. Of counsel on the brief were HAROLD J. MCELHINNY and MICHAEL A. JACOBS, Morrison & Foerster LLP, of San Francisco, California.

2        APPLE INC. v. SAMSUNG ELECTRONICS CO., LTD.

VICTORIA F. MAROULIS, Quinn Emanuel Urquhart & Sullivan, LLP, of Redwood Shores, California, argued for defendants-cross appellants. With her on the brief were WILLIAM B. ADAMS and KATHLEEN M. SULLIVAN, of New York, New York.

GREGG P. LESLIE, The Reporters Committee for Freedom of the Press, of Arlington, Virginia, for amicus curiae The Reporter Committee for Freedom of the Press, et al. With him on the brief was BRUCE D. BROWN.

WILLIAM R. STEIN, Hughes Hubbard & Reed LLP, of Washington, DC, for amicus curiae The First Amendment Coalition, of Washington, DC. With him on the brief was ERIC S. PARNES.

_____

Before PROST, BRYSON, and O'MALLEY, *Circuit Judges*.

PROST, *Circuit Judge*.

In these consolidated appeals, Apple Inc. and Samsung Electronics Company, Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") challenge orders of the U.S. District Court for the Northern District of California denying requests to seal various confidential exhibits attached to pre-trial and post-trial motions. *See Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846, 2012 WL 3283478 (N.D. Cal. Aug. 9, 2012) ("August Order"); *Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846, 2012 WL 5988570 (N.D. Cal. Nov. 29, 2012) ("November Order") (collectively "Unsealing Orders"). Because the district court abused its discretion in refusing to seal the confidential information at issue in the appeals, we reverse and remand.

BACKGROUND

Apple sued Samsung on April 15, 2011, asserting among other claims that Samsung's smartphones and tablets infringed several of Apple's patents and infringed Apple's trade dress embodied in its iPhone and iPad products. Samsung filed counterclaims, alleging that the iPhone and iPad infringed several of Samsung's patents. The case was tried to a jury beginning on July 30, 2012. On August 24, 2012, the jury returned a verdict substantially in Apple's favor, awarding Apple more than $1 billion in damages.

The trial drew an extraordinary amount of attention from the public and the media, leading some to dub it "The Patent Trial of the Century."[1] Consistent with the extraordinary level of interest in the case, the press was given extraordinary access to the judicial proceedings. Unlike many patent trials, which often contain mountains of sealed exhibits and occasionally have closed courtroom proceedings, the district court explained to the parties before the trial that "the whole trial is going to be open." J.A. 3. Consequently, the district court agreed to seal only a small number of trial exhibits. And shortly after the close of business each day, the parties, by order of the court, provided the press with electronic copies of every exhibit used at trial that day. Similarly, most exhibits attached to pre-trial and post-trial motions were ordered unsealed.

On appeal, the parties do not challenge many of the district court's unsealing orders. Rather, the parties limit their appeals to a small subset of exhibits attached to pre-

---

[1]   *See, e.g.*, Ashby Jones & Jessica E. Vascellaro, *Apple v. Samsung: The Patent Trial of the Century*, WALL ST. J., July 24, 2012, http://online.wsj.com/article/SB1000 08723963904432954045775432218146485 92.html; August Order at *4 ("[T]his trial is especially unusual in the extraordinary public interest it has generated.").

trial and post-trial motions filed by Apple and Samsung. The district court's August Order contains its rulings with respect to pre-trial motions, and the November Order contains its ruling with respect to post-trial motions. Below, we recount some of the procedural background relating to the August and November Orders, respectively.

I

In the months leading up to trial, Apple and Samsung filed numerous pre-trial motions and exhibits containing information designated as confidential. Each time they filed confidential information, the parties also filed administrative motions seeking to have the confidential information sealed. Neither party opposed the other's motions to seal, but nonparty Reuters America LLC intervened and filed an opposition. On July 17, 2012, the district court denied the motions to seal without prejudice. The court granted the parties leave to file renewed motions to seal, but ordered the parties to carefully scrutinize the documents they sought to seal, explaining that only "exceptionally sensitive information" would be sealed. J.A. 3.

On July 24, 2012, Apple and Samsung filed renewed motions to seal. At a hearing on July 27, 2012, the district court provided additional guidance on the types of information it viewed as sealable, and invited the parties to submit revised versions of their renewed motions.

On July 30, 2012, Apple and Samsung filed another set of renewed motions, limiting their requests to a fraction of the hundreds of documents that had been the subject of the parties' initial requests. In particular, Apple moved to seal forty-six proposed trial exhibits, thirty-one exhibits to prior motions filed in the case, one brief, and one declaration. The information Apple sought to seal fell within four categories: (1) confidential financial information; (2) confidential source code and schematics;

(3) proprietary market research reports; and (4) confidential licensing information. In most instances, rather than asking to seal documents in their entirety, Apple sought only to redact certain information. In support of its motions to seal, Apple submitted declarations from several Apple employees. The declarations individually addressed each document Apple sought to seal, explaining the measures Apple takes to maintain each document's confidentiality and describing the competitive harm Apple would suffer from disclosure.

Samsung moved to seal twelve proposed trial exhibits, thirteen exhibits to prior motions filed in the case, and two briefs. Samsung sought to seal information falling within the categories of: (1) confidential financial information; (2) confidential source code; (3) future business plans; and (4) information disclosing its tax accounting procedures. Like Apple, in most instances, Samsung sought only to redact certain information from the documents. And also like Apple, Samsung submitted declarations that explained the measures Samsung takes to maintain each document's confidentiality and that described the competitive harm Samsung would suffer from disclosure.

On August 6, 2012, the parties filed a joint stipulation in which they agreed, among other things, to make publicly available certain financial data underlying their damages calculations. Each party agreed not to challenge the sufficiency of the evidence to support the other party's damages calculations on the ground that the calculations were not based on more detailed financial information. They also agreed not to offer into evidence certain documents containing more detailed financial information that were the subject of the parties' motions to seal.

On August 9, 2012, the district court granted-in-part and denied-in-part the parties' motions to seal. In general, the court sealed information about the parties'

6                  APPLE INC. v. SAMSUNG ELECTRONICS CO., LTD.

production and supply capacities, confidential source code, third-party market research reports, and the pricing terms of licensing agreements.   However, the court ordered unsealed documents disclosing the parties' product-specific profits, profit margins, unit sales, revenues, and costs, as well as Apple's own proprietary market research reports and customer surveys and the non-price terms of licensing agreements.

The district court ordered the parties to take an immediate appeal.   Thus, on August 13, 2012, Apple and Samsung appealed the August Order and moved the district court to stay its order pending appeal.   This court consolidated the two appeals and designated Apple as the appellant and Samsung as the cross-appellant.

On August 15, 2012, the district court granted a stay pending the filing and resolution of motions to stay in this court.   The parties filed such motions, which this court granted on September 18, 2012.   Accordingly, the August Order has been stayed pending appeal.

II

After trial, on September 21, 2012, Apple moved for a permanent injunction and enhanced damages for Samsung's adjudicated willful infringement.   In opposing Apple's motion, Samsung submitted various exhibits containing information designated by Apple as confidential.   Samsung filed an administrative motion to seal the material that Apple had designated as confidential, and Apple filed a brief and two declarations in support of Samsung's motion.   The various documents the parties sought to seal contain confidential capacity information, license agreements, confidential financial information, and Apple and third-party consumer research reports.

On November 29, 2012, the district court largely denied Samsung's motion to seal.   *See* November Order at

*5.  The district court, however, stayed its order pending appeal.  *See id.* at *6.

Apple timely appealed the district court's November Order.  This court consolidated the appeal (No. 2013-1146) with the parties' appeals from the August Order (Nos. 2012-1600, -1606).

## III

These appeals are unique in that neither the appellant, Apple, nor the cross-appellant, Samsung, opposes the other party's requested relief.  In addition, Reuters, which intervened in the proceedings below, chose not to participate in the appeals.

The First Amendment Coalition ("Coalition"), whose members include print and broadcast media organizations such as the Los Angeles Times, Associated Press, and Wired.com, moved to intervene in the appeals so that it could represent its members' interests and provide viewpoints in favor of the Unsealing Orders.  This court denied the Coalition's motion to intervene but granted leave to file a brief amicus curiae.  We also granted leave to the Reporters Committee for Freedom of the Press, American Society of News Editors, Bloomberg L.P., Dow Jones & Company, Inc., Gannett Co., Inc., The New York Times Company, Society of Professional Journalists, and The Washington Post (collectively "Reporters Committee") to file a brief amicus curiae.  The Coalition and the Reporters Committee (collectively "Amici Curiae") later moved for leave to participate in oral argument, which we also granted.

## DISCUSSION

## I

We first consider whether we have jurisdiction to entertain these appeals.  Courts of appeals have jurisdiction

of appeals from "final decisions of the district courts." 28 U.S.C. § 1291. Here, the Unsealing Orders are interlocutory orders, which ordinarily would not be immediately appealable. Apple and Samsung assert, however, that we have jurisdiction under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).

The collateral order doctrine is a "narrow exception" to the final judgment rule that permits the appeal of "trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31 (1985). "To fall within the exception, an order must at a minimum satisfy three conditions: It must [1] 'conclusively determine the disputed question,' [2] 'resolve an important issue completely separate from the merits of the action,' and [3] 'be effectively unreviewable on appeal from a final judgment.'" *Id.* at 431 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

We agree with Apple and Samsung that these three conditions are satisfied. First, the Unsealing Orders conclusively determined that Apple's and Samsung's confidential information will be made public. Second, the Unsealing Orders present an important issue because they address the important balance between the public's interest in understanding judicial proceedings and the parties' right to access the courts without being unduly required to disclose confidential information. And all argue that the propriety of sealing court documents is an issue which is wholly separate from the merits of the action. Third, the Unsealing Orders would be effectively unreviewable on appeal from a final judgment because once the parties' confidential information is made publicly available, it cannot be made secret again. *See, e.g., Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010); *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008).

## II

Where, as here, an appeal does not involve substantive issues of patent law, we apply the law of the regional circuit in which the district court sits. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). In this case, that is the Ninth Circuit. When reviewing a district court's order sealing or unsealing judicial records, the Ninth Circuit reviews de novo whether the district court used the correct legal standard. *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). The district court's decision to seal or unseal judicial records is reviewed for abuse of discretion. *Id.* A district court abuses its discretion if it "bases its decision on an erroneous legal standard or clearly erroneous findings of fact," *Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010), or if the reviewing court "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996).

## III

The broad issue before us is whether the district court abused its discretion in ordering the unsealing of the documents Apple and Samsung seek to seal. We begin by reviewing "the common law right of access to judicial records." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). After that, we address the legal standard applied by the district court. We then consider whether the documents at issue in Apple's and Samsung's appeals of the August Order are subject to the common law right of access, followed by a similar analysis for the documents at issue in Apple's appeal of the November Order.

## A

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "This right extends to pretrial documents filed in civil cases." *Id.*

Although the common law right of access is not absolute, the Ninth Circuit "start[s] with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure." *In re Midland*, 686 F.3d at 1119 (quoting *Foltz*, 331 F.3d at 1135). "That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (alterations omitted) (internal quotation marks omitted). When ruling on a motion to seal court records, a "court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179.

One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business. For example, the Supreme Court explained in *Nixon* that "the common-law right of inspection has bowed before the power of a court to insure that its records" do not "serve as . . . sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. Relying on *Nixon*, the Ninth Circuit has stated that "[i]n general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,'

such as the use of records to . . . *release trade secrets*."
*Kamakana*, 447 F.3d at 1179 (emphasis added) (quoting
*Nixon*, 435 U.S. at 598); *see also Apple Inc. v. Psystar
Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("The publica-
tion of materials that could result in infringement upon
trade secrets has long been considered a factor that would
overcome this strong presumption.").  The Ninth Circuit
has adopted the Restatement's definition of "trade secret."
*Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972); *see
also In re Elec. Arts, Inc.*, 298 F. App'x 568, 569-70 (9th
Cir. 2008) (nonprecedential).  According to the Restate-
ment, "[a] trade secret may consist of any formula, pat-
tern, device or compilation of information which is used in
one's business, and which gives him an opportunity to
obtain an advantage over competitors who do not know or
use it."  Restatement (First) of Torts § 757, cmt. b.  Con-
sequently, in *In re Electronic Arts*, for example, the Ninth
Circuit held that a district court had abused its discretion
in refusing to seal "pricing terms, royalty rates, and
guaranteed minimum payment terms" found in a license
agreement because such information "plainly falls within
the definition of 'trade secrets.'"  298 F. App'x at 569.

In addition, the Ninth Circuit has "carved out an ex-
ception to the presumption of access to judicial records"
for "judicial records filed under seal when attached to a
*non-dispositive* motion."  *In re Midland*, 686 F.3d at 1119
(internal quotation marks omitted).  "Under the excep-
tion, the usual presumption of the public's right of access
is rebutted.  Thus, a particularized showing of '*good cause*'
under Federal Rule of Civil Procedure 26(c) *is sufficient to
preserve the secrecy of sealed discovery documents at-
tached to non-dispositive motions*."  *Id.*  The reason for the
Ninth Circuit's distinction between dispositive and non-
dispositive motions is that "the public has less of a need
for access to court records attached only to non-dispositive
motions because those documents are often unrelated, or
only tangentially related, to the underlying cause of

action." *Kamakana*, 447 F.3d at 1179 (internal quotation marks omitted).

B

With these principles in mind, we turn first to the question of whether the district court used the correct legal standard in ruling on the parties' motions to seal. The district court recognized the Ninth Circuit's general rule that a party seeking to seal documents attached to a non-dispositive motion need only demonstrate "good cause." Nevertheless, the court applied the "compelling reasons" standard to documents attached to non-dispositive motions regarding the admissibility of evidence at trial "[b]ecause the admissibility of evidence is such a closely contested issue in this trial, which has become crucial to the public's understanding of the proceedings." August Order at *7.

This was legal error. There may be exceptions to the Ninth Circuit's general rule that the "good cause" standard applies to documents attached to motions that are nominally non-dispositive. Indeed, in *In re Midland*, the Ninth Circuit applied the "compelling reasons" standard to a *Daubert* motion because it "may be effectively dispositive of a motion for summary judgment." 686 F.3d at 1119 (internal quotation marks omitted). However, we are not aware of any Ninth Circuit precedent applying the "compelling reasons" standard to non-dispositive motions regarding the admissibility of evidence at trial. The district court's reasoning—that the admissibility of evidence was a closely contested issue—does not justify departure from the Ninth Circuit's general rule. Indeed, evidence which a trial court rules inadmissible—either as irrelevant or inappropriate—seems particularly unnecessary to the public's understanding of the court's judgment.

Despite this error, for the sake of simplicity, we have reviewed all of the district court's orders under the more restrictive "compelling reasons" standard. As discussed in

APPLE INC. v. SAMSUNG ELECTRONICS CO., LTD.          13

the following sections, we conclude that even under that standard the district court erred in refusing to seal the documents at issue on appeal.

## C

Next, we turn to the parties' appeals (Nos. 2012-1600 and -1606) from the district court's August Order.  In these appeals, Apple and Samsung challenge the district court's ruling with respect to a total of twenty-six documents—fourteen Apple documents and twelve Samsung documents—filed as exhibits in connection with pre-trial motions.  The parties do not seek to seal these documents in their entirety.  Instead, they seek to redact limited portions of the documents containing detailed product-specific financial information, including costs, sales, profits, and profit margins.  *See* Appellant's Br. 14-17 (tables listing fourteen documents at issue in Apple's appeal); Cross-Appellants' Br. 8-10 (table listing twelve documents at issue in Samsung's appeal); *see also* ECF No. 99 (letter from Apple "clarify[ing] which materials from the district court record Apple seeks to seal"); ECF No. 103 (similar letter from Samsung).

A majority of the twenty-six documents at issue in these appeals—eleven of Apple's and six of Samsung's—were filed as exhibits in support of or in opposition to Samsung's *Daubert* motions to exclude the opinions of certain of Apple's experts, in large measure by the non-producing party.  In addition, Apple and Samsung both appeal the district court's ruling on a report from Samsung's damages expert, which Samsung filed in support of its own motion to strike Apple's expert opinions.  Samsung also challenges the district court's ruling on an exhibit filed by Apple in opposition to Samsung's motions in limine.  The remaining documents—two Apple documents and four Samsung documents—were submitted by Apple in opposition to Samsung's motion for summary judgment.

We provide some additional background regarding the district court's ruling on these particular documents, followed by our analysis.

1

Before the district court, Apple and Samsung filed declarations from employees in support of their requests to seal these documents.  The declarations explained the measures the two companies take to keep their product-specific financial information confidential.  For example, Apple filed a declaration from its Vice President of Financial Planning & Analysis, who explained:

> The material is stamped confidential, and only certain individuals at Apple are authorized to view Apple's nonpublic financial information on a need to know basis.  Apple restricts system access to its nonpublic financial information to a small list of individuals who have been approved by myself or one of the other Vice-Presidents of Finance.  The list is reviewed at least every quarter and revised as appropriate to ensure that Apple employees who no longer require access do not receive the information.  Apple further protects against the disclosure of nonpublic financial information to third parties, such as vendors.  On the rare occasions Apple is required to share nonpublic financial data with third parties, Apple will only allow them to view this information under very restrictive nondisclosure agreements or protective orders.

J.A. 3628 ¶ 3.  Likewise, Samsung filed a declaration from a Senior Manager in its Mobile Communications Division, who explained that "[e]ven within Samsung's financial and accounting groups, this information can only be accessed by certain financial personnel on a very restricted need-to-know basis."  J.A. 4617 ¶ 4.

The parties' declarations also described the harm they would suffer if their product-specific financial information were made public and therefore available to their competitors and suppliers.  For example, Apple's representative explained that "[d]isclosure of this information would allow competitors to tailor their product offerings and pricing to undercut Apple.  Competitors would be able to determine exactly what price level would make a given product unprofitable to Apple, and target their product offerings at exactly that price."  J.A. 3630 ¶ 8.  As for Apple's suppliers, he explained that they could use Apple's profit and cost information to obtain higher prices during negotiations.  *See id.*  Similarly, Samsung's representative explained that "[d]isclosure of per product revenues, pricing, and costs will permit competitors to undercut Samsung's pricing, and allow business partners to gain leverage against Samsung in business and supply agreement negotiations," and that "[d]isclosure of specific cost information and bills of materials will allow competitors and business partners to use this information to gain leverage against Samsung in business and supply agreement negotiations."  J.A. 4618 ¶¶ 6-7.

Despite the parties' declarations, the district court concluded that the parties had failed to articulate "compelling reasons" to seal their financial information.[2]  The district court rejected the parties' arguments that providing their competitors with access to profit and cost information would allow them to undercut the parties on pricing.  The district court concluded that this argument relied on "two critical assumptions" for which the parties had not provided support: (1) it assumes that their products are "perfectly interchangeable" with those of their competitors, such that they would be forced to match their

---

[2]  The district court first analyzed Apple's documents and then applied the same analysis to Samsung's documents.  *See* August Order at *3-4, *9.

competitors' prices; and (2) it assumes that their "competitors could profitably maintain this critical price point, since it is well known that 'predatory pricing schemes are rarely tried, and even more rarely successful.'" August Order at *3 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589 (1986)). In addition, the district court did not see "how *past* profit and unit sales data can be used to meaningfully predict . . . *future* business plans." August Order at *3-4. As for the public interest, the district court found that the public had a "substantial interest in full disclosure" of the information the parties sought to seal because it was "essential to each party's damages calculations." *Id.* at *4.

2

Apple and Samsung argue that the district court abused its discretion in refusing to seal their confidential financial information. The parties assert that their detailed product-specific information concerning such things as costs, sales, profits, and profit margins qualifies as trade secrets. They reiterate the extensive measures they take to keep this information confidential, as well as the harms they will suffer if their competitors gain access to this information. The parties also argue that because of the way they tried this case, the public has only a minimal interest in these documents. In particular, because they agreed not to present this detailed financial information at trial, and instead to rely on less-detailed financial data to prove their damages, the public does not need access to this information to understand the outcome of the trial.

The First Amendment Coalition responds that Apple and Samsung have failed to establish that these documents contain trade secrets because, for the reasons stated by the district court, the parties have not shown that they will suffer competitive harm from public disclosure. On the other side of the scale, the Coalition asserts

that the public has a strong interest in the financial information in question.  In addition to the reasons relied on by the district court, the Coalition cites declarations submitted to the district court by Reuters and the Electronic Frontier Foundation ("EFF").  For example, a Reuters representative explained that major media outlets were closely following "the case's strategic impact on the companies, including financial risks for shareholders." Coalition Br. 22.  And an EFF representative explained that the financial data surrounding the "development, sale, and production" of smartphones and tablets "provide powerful tools to many groups, including EFF, who work diligently to ensure those consumer's interests are taken into account in manufacturing and pricing decisions." *Id.*

We begin our analysis by considering whether Apple and Samsung have an interest in keeping their detailed product-specific financial information secret.  *See Nixon*, 435 U.S. at 598; *Kamakana*, 447 F.3d at 1178-79.  We conclude that Apple and Samsung have such an interest because they could suffer competitive harm if this information is made public, and the district court erred by concluding otherwise.  In particular, it seems clear that if Apple's and Samsung's suppliers have access to their profit, cost, and margin data, it could give the suppliers an advantage in contract negotiations, which they could use to extract price increases for components.  *See* J.A. 3630 ¶ 8.  This would put Apple and Samsung at a competitive disadvantage compared to their current position. Significantly, although the district court recognized this part of the parties' argument, it failed to discuss the argument in its analysis.  *See* August Order at *3-4. Thus, we conclude that Apple and Samsung have a significant interest in preventing the release of their detailed financial information.[3]

---

[3]   We think it likely that the detailed financial information Apple and Samsung seek to seal would meet

18          APPLE INC. v. SAMSUNG ELECTRONICS CO., LTD.

We now consider the public's interest in the parties' detailed financial information.[4]  There is no doubt that this case generated an extraordinary amount of public interest.  But it does not necessarily follow that the public has a legally cognizable interest in every document filed.

In these appeals, Apple and Samsung have limited the documents they challenge to a small subset of the documents they originally sought to seal.  Even within that small subset, they seek only to redact limited portions that contain what they consider their most confidential financial information.  Moreover, because the parties agreed to rely on less-detailed financial information to

---

the Restatement's relatively broad definition of "trade secret"—"any . . . compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  However, the district court did not make a formal determination of whether these are trade secrets, and we do not believe we need to either.  That is because documents may be sealed merely if they are "sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598.

[4]   Even if we were to conclude definitively that Apple's and Samsung's confidential financial information qualified as trade secrets, it would not necessarily end the analysis.  We do not read Ninth Circuit precedent as creating a blanket rule that the "compelling reasons" standard is necessarily met whenever a document contains a trade secret.  Rather, the court still must weigh the interests of the party who wishes to seal the trade secret against the interests of the public.  *See Kamakana*, 447 F.3d at 1179 (explaining that "*[i]n general*," the release of trade secrets provides "'compelling reasons' sufficient to *outweigh* the public interest in disclosure and justify sealing court records" (emphases added)).

APPLE INC. v. SAMSUNG ELECTRONICS CO., LTD.                    19

prove their damages at trial, none of the documents were introduced into evidence. Thus, the financial information at issue was not considered by the jury and is not essential to the public's understanding of the jury's damages award. Nor is there any indication that this information was essential to the district court's rulings on any of the parties' pre-trial motions. In light of all of these considerations, we conclude that the particular financial information at issue in these appeals is not necessary to the public's understanding of the case, and that the public therefore has minimal interest in this information.

The First Amendment Coalition's reliance on statements by Reuters and EFF representatives to demonstrate public interest is misplaced. The presumption in favor of public access to court documents is based on "promoting the public's understanding of the judicial process and of significant public events." *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986). Shareholders' interests in determining financial risks and consumers' interests in manufacturing and pricing decisions simply are not relevant to the balancing test. In fact, if anything, by highlighting, for example, consumers' interests in such things as pricing decisions, it further underscores the potential harm that Apple and Samsung could face if their detailed financial information becomes public.

Considering the parties' strong interest in keeping their detailed financial information sealed and the public's relatively minimal interest in this particular information, we conclude that the district court abused its discretion in ordering the information unsealed. We recognize that, unlike the district court, we have the benefit of hindsight—we now know that these exhibits were not introduced at trial and thus did not form the basis for the jury's damages award. We also have the benefit of the parties' decision to narrow the number of documents they seek to seal on appeal. Nevertheless, for

the small number of documents at issue, we conclude that the district court abused its discretion in ordering that they be unsealed.

## D

We now turn to Apple's appeal (No. 2013-1146) from the district court's November Order.  In this appeal, Apple challenges the district court's ruling with respect to nine Apple market research reports.[5]  Samsung attached these reports to its opposition to Apple's post-trial motion for a permanent injunction and enhanced damages.   The reports total approximately five hundred pages (Supplemental App. 55-553), only twelve of which were cited by Samsung in its briefing.  As Apple explained in a letter filed with this court before oral argument, it "does not seek to seal any material actually cited and discussed by the parties before the district court."  ECF No. 99.  Thus, it has agreed to make public seven pages (Supplemental App. 73, 322, 357, 368, 397, 402, and 548) in their entirety.  As for the remaining five pages cited by Samsung (Supplemental App. 79, 168, 242, 291, and 447), they contain customer information from both the United States and from other countries.  Samsung relied only on the U.S. customer information in its briefing, and Apple has agreed to make that information public, but it seeks to redact the customer information for other countries.  Beyond these twelve pages, Apple seeks to seal the remainder of the market research reports, which were not relied on by either party or by the district court.  We again provide some additional background regarding the district court's ruling on these particular documents, followed by our analysis.

### 1

---

[5]    Neither Samsung nor Amici Curiae filed a brief in this appeal.

Before the district court, Apple filed a declaration from Greg Joswiak, a Vice President in its Product Marketing department, in support of the motion to seal its market research documents.  *See* Supplemental App. 14-19.  Mr. Joswiak explained that Apple conducts regular surveys of its customers concerning how its customers value certain product features, whether they considered products sold by competitors like Samsung, and how satisfied they are with different product features.  *Id.* at 15 ¶¶ 3-4.  He further explained that Apple compiles the results into monthly and quarterly market research reports, which show what product features most influenced customers' purchasing decisions on a country-by-country basis.  *Id.*  The market research reports contain the specific questions Apple asks its customers, the data collected from its customers, as well as the conclusions Apple draws from the data.  *Id.* at 16 ¶ 6.

Mr. Joswiak's declaration explained the measures Apple takes to keep its market research reports confidential.  For example, "[t]he documents are stamped as confidential on a 'need to know' basis," and the survey results cannot be distributed to anyone "outside a small, select group of Apple executives" without his express permission.  *Id.* at 16 ¶ 7.  Even when he does approve further distribution, "it is almost always on a survey question-by-survey question basis."  *Id.*

Mr. Joswiak's declaration also described the benefit its competitors would obtain if its market research reports were unsealed.  For example, he explained that "[n]o competitor has access to [Apple's] customer base to conduct the type of in-depth analysis contained in [its] buyer surveys and tracking studies," so "a competitor who is trying to take away Apple market share can only speculate as to the importance that Apple's customers place" on various features.  *Id.* at 15 ¶ 5.  In addition, he asserted that "[e]ven if Apple's competitors could reliably survey Apple's current customers (they cannot) to determine

their preferences today, they certainly cannot reliably reconstruct what Apple customer's [sic] preferences were in the past.  Accordingly only Apple has access to the extremely valuable time series of information that shows how customer preferences have evolved." *Id.* at 18 ¶ 11.

The district court denied the request to seal Apple's market research reports, quoting its ruling on similar documents in its August Order:

> Apple's desire to protect its own market surveys reporting on its consumers' usage habits, buying preferences, and demographics is not sufficient to meet the "compelling reason" standard required for sealing at this stage. *See Kamakana*, 447 F.3d at 1179.  While Apple is presumably correct that its consumer base is different than Samsung's, Apple's claim that Samsung could not replicate the analysis contained in these exhibits is not convincing.  Surveys about consumer preferences are commonplace, and Apple has not argued convincingly that similar data is not already available to its competitors.  Moreover, because Apple claims that these surveys inform its future product and marketing plans, it stands to reason that its competitors may infer the most significant results by simply observing Apple's product releases and marketing campaigns.

November Order at *5 (quoting August Order at *5).

2

Apple argues that the district court abused its discretion in refusing to seal the nine market research documents.  We agree.

These market research reports contain information that Apple's competitors could not obtain anywhere else. It may be true, as the district court indicated, that Apple's competitors could perform their own surveys of Apple customers and replicate much of the data. However, they would never know the exact questions Apple chooses to ask or the conclusions that Apple has drawn from the responses. Perhaps more importantly, there is a critical distinction between Apple's competitors being able to "infer the most significant results by simply observing Apple's product releases and marketing campaigns" and being able to predict Apple's future product releases and marketing strategies. *Id.* Apple obtains a competitive advantage by being the first company to introduce products with new features. Giving Apple's competitors a head-start could provide them with an enormous benefit—to Apple's detriment. Thus, Apple has a strong interest in keeping its market research reports confidential.

Of course, we must weigh Apple's interest in sealing these documents against the public's interest. However, Apple has agreed to make public all of the information contained in these documents that was actually cited by the parties or the district court. The other information in these reports is irrelevant to the public's understanding of the judicial proceedings. For example, data concerning Apple's customers outside of the United States would not assist the public's understanding of Apple's damages in the United States—the only damages at issue in this case. Nor would materials that were neither cited nor discussed before the district court assist the public in understanding the proceedings in this case.

Apple has clearly demonstrated that it could suffer competitive harm if the pages it seeks to seal are made available to the public. In addition, these pages will not aid the public's understanding of the process. We therefore conclude that the district court abused its discretion

24        APPLE INC. v. SAMSUNG ELECTRONICS CO., LTD.

in ordering that Apple's nine market research reports be
unsealed.

## CONCLUSION

We recognize the importance of protecting the public's
interest in judicial proceedings and of facilitating its
understanding of those proceedings.  That interest, how-
ever, does not extend to mere curiosity about the parties'
confidential information where that information is not
central to a decision on the merits.  While protecting the
public's interest in access to the courts, we must remain
mindful of the parties' right to access those same courts
upon terms which will not unduly harm their competitive
interest.  For the reasons set forth above, we hold that the
district court abused its discretion in refusing to seal the
particular documents that Apple and Samsung challenge
in these appeals.

**REVERSED AND REMANDED**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

12-1600, 12-1606, 13-1146

## APPLE INC.,

*Plaintiff - Appellant,*

**v.**

## SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,

*Defendants - Cross-Appellants.*

Appeal from the United States District Court for the Northern District of California in No. 11-CV-1846, Judge Lucy H. Koh.

## <u>MANDATE</u>

In accordance with the judgment of this Court, entered August 23, 2013, and pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

FOR THE COURT

<u>/s/ Daniel E. O'Toole</u>
    Daniel E. O'Toole
    Clerk

cc: William Adams
Bruce D. Brown
Clerk of Court, Northern District of California (San Jose)
Andrew J. Danford
Mark Christopher Fleming
Michael Allen Jacobs
William F. Lee
Gregg Paul Leslie
Victoria Fishman Maroulis
Harold J. McElhinny
Eric S. Parnes
Mark D. Selwyn
William Stein
Kathleen M. Sullivan
Louis W. Tompros
Rachel Weiner