1   HAROLD J. MCELHINNY (CA SBN 66781)           WILLIAM F. LEE
    hmcelhinny@mofo.com                          william.lee@wilmerhale.com
2   RACHEL KREVANS (CA SBN 116421)               WILMER CUTLER PICKERING
    rkrevans@mofo.com                            HALE AND DORR LLP
3   RUTH N. BORENSTEIN (CA SBN 133797)           60 State Street
    rborenstein@mofo.com                         Boston, MA 02109
4   ERIK J. OLSON (CA SBN 175815)                Telephone: (617) 526-6000
    ejolson@mofo.com                             Facsimile: (617) 526-5000
5   MORRISON & FOERSTER LLP
    425 Market Street                            MARK D. SELWYN (SBN 244180)
6   San Francisco, California  94105-2482        mark.selwyn@wilmerhale.com
    Telephone:  (415) 268-7000                   WILMER CUTLER PICKERING
7   Facsimile:  (415) 268-7522                   HALE AND DORR LLP
                                                 950 Page Mill Road
8                                                Palo Alto, California 94304
    Attorneys for Plaintiff and                  Telephone: (650) 858-6000
9   Counterclaim-Defendant APPLE INC.            Facsimile: (650) 858-6100

10

11

12                        UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14                             SAN JOSE DIVISION

15

16  APPLE INC., a California corporation,        Case No. 11-cv-01846-LHK (PSG)

17              Plaintiff,                       **APPLE'S REPLY IN SUPPORT OF ITS
                                                 MOTION FOR ATTORNEYS' FEES**
18         v.

19  SAMSUNG ELECTRONICS CO., LTD., a
    Korean corporation; SAMSUNG ELECTRONICS      Date:     May 1, 2014
20  AMERICA, INC., a New York corporation; and   Time:     1:30 p.m.
    SAMSUNG TELECOMMUNICATIONS                   Place:    Courtroom 8, 4th Floor
21  AMERICA, LLC, a Delaware limited liability   Judge:    Hon. Lucy H. Koh
    company,
22
                Defendants.
23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3  TABLE OF AUTHORITIES ..................................................................................................ii

4  I.    INTRODUCTION ....................................................................................................1

5  II.   THE COURT SHOULD AWARD APPLE THE FEES ATTRIBUTABLE
       TO SAMSUNG'S WILLFUL TRADE DRESS DILUTION ..........................................1

6
7      A.    Samsung Relies On An Erroneous Standard for "Exceptional"
             Cases ................................................................................................................1

8      B.    Samsung's Willful And Deliberate Conduct Satisfies The Ninth
9            Circuit's Standard For Exceptional Cases..........................................................3

10           1.    Samsung fails to refute that the jury verdict establishes
                   willfulness ...............................................................................................4

11           2.    Samsung's willful and deliberate conduct makes this case
12                 exceptional ..............................................................................................6

13           3.    Samsung's arguments about the "novelty" and "closeness"
                   of Apple's claims and the "reasonableness" of Samsung's
                   defenses do not render this case unexceptional......................................7

14
15     C.    The Court Should Award Apple's Requested Fees .............................................8

16           1.    A fees award is warranted ........................................................................8

17           2.    Apple's fee request is reasonable..............................................................9

18           3.    Apple's motion and supporting declarations provide a
                   sufficient basis to award the requested fees ...........................................11

19  III.  THE COURT SHOULD NOT DEFER DECISION "UNTIL AFTER THE
       MERITS APPEALS ARE RESOLVED." ...................................................................12

20
21  IV.   CONCLUSION .........................................................................................................13
22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002).............................................................................................. 9, 10

*Cairns v. Franklin Mint Co.*,
   115 F. Supp. 2d 1185 (C.D. Cal. 2000), *aff'd*, 292 F.3d 1139 (9th Cir. 2002)......................... 9

*CJC Holdings, Inc. v. Wright & Lato, Inc.*,
   979 F.2d 60 (5th Cir. 1992)......................................................................................................... 3

*Classic Media, Inc. v. Mewborn*,
   532 F.3d 978 (9th Cir. 2008)....................................................................................................... 3

*Comm. for Idaho's High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996)........................................................................................................ 2

*Earthquake Sound Corp. v. Bumper Indus.*,
   352 F.3d 1210 (9th Cir. 2003)................................................................................................. 1, 3

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
   915 F. Supp. 2d 1179 (D. Nev. 2013) ..................................................................................... 10

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992)................................................................................................. 11

*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000)........................................................................................ *passim*

*Healthport Corp. v. Tanita Corp. of Am.*,
   563 F. Supp. 2d 1169 (D. Or. 2008) ..................................................................................... 2, 3

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................................. 9, 10

*Horphag Research Ltd. v. Garcia*,
   475 F.3d 1029 (9th Cir. 2007)................................................................................................... 2

*Kalenowsky v. Canyon Capital Funding Corp.*,
   No. 3:11-cv-0079-RCJ-VPC,
   2013 U.S. Dist. LEXIS 151629 (D. Nev. Oct. 22, 2013)...................................................... 12

*Lahoti v. Vericheck, Inc.*,
   708 F. Supp. 2d 1150 (W.D. Wash. 2010), *aff'd*, 636 F.3d 501 (9th Cir. 2011) ..................... 7

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Lindy Pen Co. v. Bic Pen Corp.*,
     92 F.2d 1400 (9th Cir. 1993) ............................................................................. 1, 3, 4

*Masalosalo v. Stonewall Ins. Co.*,
     718 F.2d 955 (9th Cir. 1983) ................................................................................... 12

*Rosenfeld v. U.S. Dep't of Justice*,
     903 F. Supp. 2d 859 (N.D. Cal. 2012) .................................................................. 11

*Smith v. Payne*,
     No. C 12-01732 DMR, 2013 U.S. Dist. LEXIS 53641 (N.D. Cal. Apr. 15, 2013) ............... 12

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
     127 F.3d 821 (9th Cir. 1997) ..................................................................................... 2

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*,
     951 F.2d 684 (5th Cir.1992) ....................................................................................... 4

*TrafficSchool.com, Inc. v. Edriver Inc.*,
     653 F.3d 820 (9th Cir. 2011) ...................................................................................... 1

*Watec Co., Ltd. v. Liu*,
     403 F.3d 645 (9th Cir. 2005) ...................................................................................... 5

*Zynga Games Network Inc. v. Erkan*,
     No. 09-3264 SC, 2010 WL 3463630 (N.D. Cal. Aug. 31, 2010) ........................... 11

STATUTES AND RULES

15 U.S.C. § 1117(a) ............................................................................................... 1, 13

15 U.S.C. § 1125(c)(2)(B) ......................................................................................... 3

Fed. R. Civ. P. 54(d) ................................................................................................. 13

OTHER AUTHORITIES

S. Rep. No. 93-1400 (1974) ....................................................................................... 2

Sharad K. Bijanki, *Redefining Attorney-Fee Shifting Under the Lanham Act: Protecting
     Small Businesses & Deterring Trademark Infringement*,
     98 Iowa L. Rev. 809 (2013) ...................................................................................... 5

## I.   INTRODUCTION

Samsung views this case through rose-colored blinders.  While Samsung's opposition reads as if Apple won virtually nothing, in reality, two different juries handed Apple decisive victories in all phases of the case, including its Lanham Act claims.  Samsung continues the approach it has used throughout this case—argue that Apple should get only a small fraction of what it seeks, in hopes that the jury, and now the Court, will give Apple less.  Indeed, Samsung's claim that Apple succeeded on "*less than one percent* of the total liability issues raised in the parties' pleadings and discovery" (Opp'n at 1), echoes its request that the retrial jury award Apple less than one percent of its requested reasonable royalty damages.  Samsung asked that jury to award Apple only $28,452 in reasonable royalties, which amounted to 0.086% of the $34,625,193 in royalties that Apple sought and that—according to Samsung's own calculations—the retrial jury awarded.  (*See* Dkt. 2877 at 2, 4 (citing DX702.008 & PX25.4).)  In light of Apple's phenomenal success in all phases of this case, Samsung's attempts to portray the case as unexceptional ring hollow.

## II.   THE COURT SHOULD AWARD APPLE THE FEES ATTRIBUTABLE TO SAMSUNG'S WILLFUL TRADE DRESS DILUTION

Samsung does not dispute that Section 1117(a) of the Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).  Nor does Samsung contest that Apple is the prevailing party.  Instead, Samsung attempts—but fails—to refute that this is an "exceptional case."  (Opp'n at 2-16.)

### A.   Samsung Relies On An Erroneous Standard for "Exceptional" Cases

The Ninth Circuit has repeatedly stated that a Lanham Act case is exceptional "for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful."  *Lindy Pen Co. v. Bic Pen Corp.*, 92 F.2d 1400, 1409 (9th Cir. 1993); *see also, e.g.*, *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) ("Lanham Act cases generally consider whether *defendants'* conduct was 'fraudulent, deliberate, or willful.'" (citation omitted)); *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (exceptional case where "defendant acted maliciously, fraudulently, deliberately, or willfully");

1    *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825-26 (9th Cir. 1997) ("'[G]enerally

2    a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement

3    is malicious, fraudulent, deliberate or willful.'" (quoting *Lindy Pen*, 92 F.2d at 1409)); *Comm. for*

4    *Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir. 1996) (citing *Lindy Pen*).  The Ninth

5    Circuit has expressed the standard in disjunctive terms, stating that malicious, fraudulent,

6    deliberate, *or* willful conduct is sufficient.  *See also* S. Rep. No. 93-1400 at 2 (1974) (elaborating

7    that a case is exceptional "where the acts of infringement can be characterized as 'malicious,'

8    'fraudulent,' 'deliberate,' or 'willful'").  As further discussed in Apple's Motion, the Ninth

9    Circuit also has looked more broadly to a defendant's wrongful conduct, such as "deliberate and

10    calculated" attempts to take advantage of protected IP.  *Horphag Research Ltd. v. Garcia*,

11    475 F.3d 1029, 1039 (9th Cir. 2007); (Mot. at 3-6.)

12        Despite the Ninth Circuit's clear adherence to the *Lindy Pen* standard, Samsung contends

13    that exceptionality requires evidence that its conduct "was intentionally deceptive, in bad faith,

14    fraudulent, extortionate, or actually confused customers."  (Opp'n at 5.)  Samsung's cited cases

15    fail to support its invented standard.  For example, Samsung cites *Boney*, 127 F.3d at 826, to

16    support its claim that exceptionality "requires that the actions of the party against whom fees are

17    sought evidenced 'bad faith or other malicious conduct.'"  (Opp'n at 2.)  But *Boney* does not hold

18    that the exceptionality standard *requires* "bad faith or other malicious conduct."  To the contrary,

19    *Boney* clearly states that bad faith is *sufficient* but not mandatory for exceptionality:  "While a

20    finding that the losing party has acted in bad faith *may* provide evidence that the case is

21    exceptional, other exceptional circumstances may warrant a fee award."  127 F.3d at 827

22    (emphasis added) (citation omitted).  As noted above, *Boney* applies the Ninth Circuit standard of

23    "'malicious, fraudulent, deliberate or willful'" conduct.  *Id*. at 825-26 (quoting *Lindy Pen*,

24    92 F.2d at 1409).

25        Samsung also cites *Healthport Corp. v. Tanita Corp. of America*, 563 F. Supp. 2d 1169,

26    1183 (D. Or. 2008) for the proposition that an exceptional case requires "'that the defendant

27    deliberately intended to deceive consumers.'"  (Opp'n at 3.)  However, *Healthport* is neither

28    controlling nor persuasive authority.  It addressed the standard for a Lanham Act claim for false

1    advertising, which the court described as requiring that "a false statement of fact in a commercial

2    advertisement . . . *deceived* or has the *tendency to deceive* a substantial segment of its audience."

3    563 F. Supp. 2d at 1178 (emphasis added).  In contrast, a dilution claim under Section 43(c) of

4    the Lanham Act does not require the plaintiff establish the defendant's intent to deceive or a

5    tendency to deceive.  *See* 15 U.S.C. § 1125(c)(2)(B).  As a result, the court's statement that

6    "sufficient undisputed evidence must demonstrate that the defendant deliberately intended to

7    deceive consumers" does not apply here.  *Healthport*, 563 F. Supp. 2d at 1183.

8         Samsung relies on *Classic Media, Inc. v. Mewborn*, 532 F. 3d 978, 990 (9th Cir. 2008)

9    and *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 66 (5th Cir. 1992) to support its

10   claim that bad faith or other malicious conduct is required to meet the exceptional case standard,

11   but neither case stands for that proposition.  In *Classic Media*, the Ninth Circuit explained that

12   "'[e]xceptional circumstances *can* be found when the non-prevailing party's case is groundless,

13   unreasonable, vexatious, or pursued in bad faith.'"  *Classic Media*, 532 F. Supp. 3d at 990

14   (emphasis added); *see also Gracie v. Gracie*, 215 F.3d 1060, 1071 (9th Cir. 2000) (same).  The

15   court did not hold that such conduct was *required*.  Similarly, in *CJC Holdings*, the Fifth Circuit

16   rejected a rule that "deliberate copying by the defendant of the plaintiff's trade dress makes a case

17   per se exceptional," but it did not adopt a requirement of bad faith or malicious conduct to

18   support a finding of exceptionality.  *CJC Holdings*, 532 F.3d at 65.

19        Finally, Samsung attempts to convert the facts of particular cases into requirements for

20   finding a case exceptional.  (Opp'n at 3-5.)  Yet Samsung's cited cases simply demonstrate that

21   there are a wide range of acts that can result in an exceptional case finding—so long as the

22   defendant has acted "maliciously, fraudulently, deliberately or willfully."  *Earthquake Sound*

23   *Corp.*, 352 F.3d at 1216.

24        **B.    Samsung's Willful And Deliberate Conduct Satisfies The Ninth Circuit's**
         **Standard For Exceptional Cases**
25

26        Apple's motion demonstrated that Samsung engaged in conduct that was both "deliberate"

27   and "willful"—each of which is independently sufficient to meet the Ninth Circuit's standard of

28   "malicious, fraudulent, deliberate or willful" conduct that qualifies a case as exceptional.  *Lindy*

*Pen*, 92 F.2d at 1409.  Apple relied on the jury's finding that Samsung acted willfully in diluting Apple's trade dress, as well as the extensive record evidence that Samsung deliberately and willfully intended to trade off of Apple's famous iPhone trade dress.  (Mot. at 3-6.)

### 1.     Samsung fails to refute that the jury verdict establishes willfulness

Samsung does not—and cannot—deny that the jury found that Samsung's dilution of Apple's registered iPhone trade dress and unregistered iPhone 3G trade dress was willful  (Dkt. 1931 at 14) and that the Court concluded that the willfulness finding was supported by substantial evidence in the record (Dkt. 2220 at 14).  Samsung nevertheless contends that the jury's willfulness finding cannot support exceptionality, because the jury "received no instruction tying willfulness to bad faith."  (Opp'n at 5.)  This argument rests on the erroneous premise that the Ninth Circuit requires bad faith to satisfy the exceptional case standard.  As shown above, however, the Ninth Circuit standard for exceptionality in Lanham Act cases is that the conduct be "malicious, fraudulent, deliberate *or* willful."  *Lindy Pen*, 92 F.2d at 1409 (emphasis added); *see* Argument II.A, *supra*.

Contrary to Samsung's argument, *Gracie v. Gracie*, 217 F.3d at 1069, does not stand for the proposition that a jury *must* have been instructed about bad faith in order for a court to consider the jury's willfulness finding in evaluating exceptionality.  In *Gracie*, the Ninth Circuit reiterated the *Lindy Pen* standard, and explained that the defendant's argument against exceptionality was "difficult to advance successfully" because "the jury explicitly found that [the defendant] engaged in 'willful' infringement," and the "district court's decision to make a fee award . . . thus flows quite naturally from the jury's finding of willful infringement and the legal standard for 'exceptional cases' under § 1117."  217 F.3d at 1068.

The court then addressed the defendant's attempt "to escape the jury's finding of willful infringement" by arguing "that the jury was not properly instructed regarding willfulness."  *Id.* As explained by the court, the defendant relied on a Fifth Circuit case, *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684 (5th Cir.1992), which "reversed a fee award despite a jury finding of 'willful' infringement" because the jury had not been instructed that willfulness included "an element of culpability or bad faith."  *See Gracie*, 217 F.3d at 1068 (citing *Texas Pig*

*Stands*, 951 F.2d at 697).  The Ninth Circuit found no merit to that argument because the jury in *Gracie* had been instructed that "you may find that [plaintiffs] intentionally infringed the [] service marks, if you find that they acted 'willfully,' or deliberately *and in bad faith*."  *Gracie*, 217 F.3d at 1068-69 (emphasis added) (alterations in original).[1]  Thus, the Ninth Circuit rejected the defendant's argument because the jury instructions in that case included the language that the defendant argued was required by the Fifth Circuit.  Nothing in *Gracie* suggests that the court intended to rewrite the *Lindy Pen* standard and adopt the Fifth Circuit's "bad faith" standard instead.[2]  To the contrary, as shown above, the Ninth Circuit has repeatedly reiterated the *Lindy Pen* standard without imposing a bad faith requirement.  *See* Argument II.A, *supra*.  Samsung has cited no case that holds that "willful or deliberate and in bad faith" is now the standard in the Ninth Circuit for an exceptional case finding.

Finally, Samsung warns the Court against "[r]eflexive reliance" on the jury's willfulness finding (Opp'n at 6), citing *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).  In *Watec*, the court vacated a fee award because "the jury's finding that Watec America 'intentionally infringed' does not necessarily equate with the malicious, fraudulent, deliberate or willful conduct that we usually require before deeming a case exceptional."  403 F.3d at 656.  The court remanded so that the district court could address "the proper legal standard" in the first instance.  *Id*. at 656-57.  Ironically here, Apple advances the proper legal standard endorsed in *Watec*, while Samsung seeks to avoid it.  And Apple does not seek "reflexive reliance" on the jury's finding of willfulness.  Samsung ignores that, as the Court already ruled, the jury's willfulness finding is amply supported by the record.

---

[1] In contrast to the *Texas Pig Stand* defendant, Samsung does not now, and did not previously, challenge the absence of any reference to "bad faith" in the jury instructions in this case.

[2] As shown by *Texas Pig Stand*, the Fifth Circuit adheres to a different standard than the Ninth Circuit.  *See* Sharad K. Bijanki, *Redefining Attorney-Fee Shifting Under the Lanham Act: Protecting Small Businesses & Deterring Trademark Infringement*, 98 Iowa L. Rev. 809, 817 & 820 (2013) ("The Second, Fourth, Fifth, Tenth, Eleventh, and District of Columbia Circuits rely on the bad-faith standard when determining whether to award a prevailing plaintiff attorney fees. . . .  In the First, Third, Sixth, Seventh, Eighth, and Ninth Circuits, there is no prerequisite of bad faith or fraud, although both can be factors."  (citations omitted)).

### 2.   Samsung's willful and deliberate conduct makes this case exceptional

Samsung cannot avoid the evidence that supports the jury's finding of willful trade dress dilution.  For example, Apple's expert Dr. Susan Kare testified about the confusing similarities between the iPhone's applications screens and those in Samsung's phones, and gave her opinion that Samsung had used the iPhone screen graphics as a guide to developing its own screen graphics.  (Dkt. 1612 at 1387-88, 1394, 1405-06.)  Dr. Kare also testified about numerous pages of Samsung's 138-page "Relative Evaluation Report" (PX44) that compared aspects of the iPhone's icon designs to Samsung's phone, with directions for improvement that ultimately led to Samsung's designs looking like Apple's.  (*Id*. at 1406-12 (discussing PX44.122, .131).)  For example, Samsung identified weaknesses in its icon home screen (an element of Apple's trade dress), noting that Samsung's "[m]enu icons lack[] three dimensional effect using light" and the icons lacked "softness in the curvature of icon corners." (PX44.131.)  In contrast, Apple's home screen "g[ave] a luxurious feel." (*Id.*)  Samsung recognized that it should differentiate its design to "[r]emove a feeling that iPhone's menu icons are copied," yet failed to actually implement any differentiating changes. (*Id.*)  Other portions of PX44 likewise compare iPhone icons with Samsung icons and find them wanting.  (PX44.43, .51, .127.)  Samsung makes no attempt to dispute that it used Apple's icons—which it felt were "more organized and consistent"—as a guideline "when proposing/designing icons" for its smartphones. (PX35.)  Samsung examined the iPhone (PX55.8), and used the iPhone's home screen and icons as a "reference," and cited Apple's "icon guideline[s] (PX55.15).  The result of that effort is shown by the evolution of Samsung's icons to look like the iPhone's.  (PX55.5.)

Moreover, as Apple has shown, Samsung's copying of Apple's trade dress was part of an overarching multi-year effort to copy the iPhone.  (Mot. at 3-6.)  Samsung's attempts to minimize the importance and effects of its copying recycles arguments that the first jury already rejected.  For example, although Samsung characterizes PX34 as referring only to iPhone's component hardware, the *first item listed* as an example of what Samsung could easily imitate was the iPhone's "[t]ouch screen UI [user interface]." (PX34.37.)  And in fact, this imitation was borne out by numerous later documents—all considered by the jury when reaching its verdict of willful

1  trade dress dilution.

2      As the Court has recognized, PX44 (along with PX36 (GravityTank report), and other trial

3  testimony) "constitute[d] substantial evidence in the record to support the jury's finding that

4  Samsung willfully intended to trade on the recognition of Apple's trade dresses."  (Dkt. 2220 at

5  14 (denying Samsung's motion for JMOL of no willful dilution).)  While not every directive

6  directly corresponds to Apple's trade dress dilution claims, they all should be considered in

7  evaluating the totality of Samsung's "pattern and practice" of bad faith.  *See Lahoti v. Vericheck,*

8  *Inc.*, 708 F. Supp. 2d 1150, 1170 (W.D. Wash. 2010), *aff'd*, 636 F.3d 501 (9th Cir. 2011).

9      The Court also recognized that the jury "made implied findings of fact accepting" Apple's

10  "substantial evidence in the record of . . . alleged copying by Samsung" when evaluating non-

11  obviousness of Apple's D'677 and D'087 patents.  (Dkt. 2220 at 7.)  As Apple argued in its

12  Motion, the trade dresses implicated by Apple's fees request "are precisely what is captured by

13  Apple's design patents at issue."  (Mot. at 9.)

14              **3.     Samsung's arguments about the "novelty" and "closeness" of Apple's
                        claims and the "reasonableness" of Samsung's defenses do not render
15                      this case unexceptional**

16      The jury unequivocally found for Apple on its dilution claims for two of its trade

17  dresses—the registered iPhone trade dress and the unregistered iPhone 3G trade dress.  The jury

18  found that both were protectable, both were famous, and both had been diluted.  (Dkt. 1931.)

19  Though the jury found that only some of Samsung's accused devices had diluted these dresses,

20  that conclusion does not indicate that the successful claims were close calls.  It only illustrates

21  that the jury carefully considered all of the accused devices before determining which devices

22  diluted Apple's trade dresses and which did not.  Samsung's "closeness" arguments simply

23  rehash the arguments that failed to persuade either the jury or the Court when it denied

24  Samsung's JMOL motion.  Samsung's characterization of the verdict as split and close is a

25  misleading overgeneralization.

26      Moreover, the trade dress claims on which Apple did not prevail all involved unregistered

27  trade dresses—namely, the combination iPhone trade dress and the iPad/iPad 2 trade dress.  This

28  suggests only that the jury concluded that Apple had not met its burden of proof in establishing

APPLE'S REPLY ISO MOTION FOR ATTORNEYS' FEES
Case No. 11-cv-01846-LHK (PSG)                                                          7
sf-3390526

that these two unregistered trade dresses were valid and famous; it does not suggest that Apple's *successful* trade dress claims were close calls.  The jury may have felt that it was not its place to grant trade dress protection where the United States Patent & Trademark Office had not yet done so.  In any event, the jury's decision that Apple did not establish the validity and fame of these unregistered trade dresses has no bearing on whether Apple's successful trade dress claims were close.

Samsung further obfuscates matters by touting the reasonableness of its defenses as further evidence that this case is not exceptional.  Samsung essentially seeks to relitigate the jury's willfulness finding that the Court has confirmed.  Samsung suggests that its functionality and lack of secondary meaning defenses were reasonable because the jury was persuaded by those same defenses with respect to the unregistered iPhone combination trade dress.  (Opp'n at 9.)  This argument is a red herring.  Samsung did not prevail on its defenses of functionality and lack of secondary meaning with respect to the unregistered iPhone combination trade dress.  Rather, the jury found that Apple had not met *its* burden in establishing that this trade dress was protectable, without any indication as to which element of protectability—nonfunctionality or acquired distinctiveness—had not been proven.  No conclusion can be drawn from the jury verdict as to the reasonableness of Samsung's defenses.

Samsung's arguments about the purported novelty of Apple's claims improperly attempt to relitigate liability.  While product design trade dress dilution claims may not be common, they are actionable.  And although such claims may most frequently be brought against counterfeiters, that does not give Samsung a license to willfully dilute Apple's protected trade dress.  In each instance in which the jury found that Apple had met its burden in establishing that it had a valid trade dress—namely, for the registered iPhone trade dress and the unregistered iPhone 3G trade dress—it also found that those trade dresses were famous and had been diluted.  This is not "novel," it is precisely what the Lanham Act addresses.

### C.    The Court Should Award Apple's Requested Fees

#### 1.    A fees award is warranted

While Samsung advances its view that Apple's claims barely survived, the jury's verdict

1    and award tell a different story.  Samsung offers no response to Apple's arguments that the same

2    factors that render a case exceptional also support an award of fees.  (Mot. at 6-7.)  Nor does

3    Samsung respond to the Ninth Circuit's statement that award of fees to the prevailing party

4    "flows quite naturally from the jury's finding of willful infringement and the legal standard for

5    'exceptional cases' under § 1117."  *Gracie*, 217 F.3d at 1068.

6         Because, as Apple has shown, it meets the requirements for an exceptional case, Apple

7    respectfully requests that the Court exercise its discretion to award Apple its requested fees.

8                    **2.       Apple's fee request is reasonable.**

9         Apple's Motion demonstrated that Apple conservatively reduced the total fees it used as a

10   base for its fees request and then allocated but one-third of those reduced fees to its Lanham Act

11   claims.  (Mot. at 8-13.)  Samsung does not contest that Section 1117(a) permits recovery of fees

12   for successful Lanham Act claims or those "inextricably intertwined" with such claims, *Gracie*,

13   217 F.3d at 1070, and that work that "involve[s] a common core of facts" "cannot be viewed as a

14   series of discrete claims."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  (*See* Mot. at 8.)  Nor

15   does Samsung contest Apple's extensive showing of how Apple's trade dress and design patent

16   claims are inextricably intertwined and involve a common core of facts.  (Mot. at 8-13.)

17        As a result, Samsung cannot refute Apple's showing that its one-third allocation is both

18   reasonable and conservative.  In *Cairns*, the Ninth Circuit approved of just such a percentage-

19   based approach when the "District Court found that the unusually large number of hours and

20   timekeepers made application of the traditional lodestar method unworkable . . . [and] concluded

21   that [the] fee request was an appropriate starting point because [defendant] had made a good faith

22   effort to exclude from the fee request hours that were excessive, redundant, or otherwise

23   unnecessary."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002).[3]  Samsung

---

[3] Samsung's claim that Apple was required to submit detailed billing records to justify its
claim for fees is incompatible with Ninth Circuit's post-*Gracie* decision in *Cairns*.  Far from
requiring denial of Apple's motion, the Ninth Circuit's *Cairns* decision confirms the propriety of
using detailed summaries and percentage reductions to avoid burdening the Court with a detailed
review of thousands of pages of billing records.  *See Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d
1185, 1187-88 (C.D. Cal. 2000), *aff'd*, 292 F.3d 1139 (9th Cir. 2002).  Nonetheless, if the Court
would find it helpful, Apple is prepared to submit its billing records for *in camera* inspection.

1   purports to fine a "rule"—that reductions to account for non-Lanham Act claims and then for

2   unsuccessful Lanham Act claims must be made sequentially—amongst the Ninth Circuit's

3   approvals of the *Cairns* trial court's specific methods.  (Opp'n at 20 (citing *Cairns*).)  But *Cairns*

4   stands for the broader proposition that in particularly complicated cases, the hallmark of an

5   appropriate fees award is a critical review culminating in "*some* attempt" to adjust the fees by a

6   percentage to reflect the recoverable Lanham Act fees.  *See Cairns*, 292 F.3d at 1157-58

7   (emphasis added).

8        The Supreme Court has recognized that a "claim-by-claim" analysis is often difficult (if

9   not impossible).  *Hensley*, 461 U.S. at 435 ("Such a lawsuit cannot be viewed as a series of

10  discrete claims."); *see also Cairns*, 292 F.3d at 1157.  Yet Samsung asks the Court to divide

11  Apple's fees into some portion of "2,512 disputed issues of liability."  (Opp'n at 22).  That

12  request strains credulity, and ignores the indisputably intertwined nature of the design and trade

13  dress issues in the case.  As detailed in Apple's Motion, phone design issues—encompassing

14  patent and trade dress—predominated the case.  (Mot. at 9-10.)  *See also Fifty-Six Hope Road*

15  *Music Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1189-90 (D. Nev. 2013) (allocation to

16  Lanham Act claim higher because it "predominated . . . in terms of evidence presented").  For

17  example, Samsung's trial brief devoted nine of its 22 pages to Apple's designs (Dkt. 1322 at 3-

18  15); both parties served substantially more design-expert reports than any others; and both parties

19  spent *twice* as much trial time on design and trade dress issues as on utility patents (with roughly

20  half the case spent on design, and a quarter spent on damages, much of which was indivisibly

21  relevant to Apple's trade dress claims).  In short, Apple's design patent and trade dress claims

22  were the exact type of "inextricably intertwined" claims (*see* Mot. at 8-9) that the Ninth Circuit

23  warned could make "meaningless" any attempt to apportion.  *Gracie*, 217 F.3d at 1070.

24       Apple's conservative allocation of only one-third of its fees, in the face of clear evidence

25  that design accounted for a larger percentage of the case, fits squarely within the Ninth Circuit's

26  requirement that "*some* attempt" be made.  Samsung can point to no case law requiring Apple to

27  sequentially exclude non-Lanham Act fees first, and then apportion between successful and

28  unsuccessful Lanham Act claims, rather than make a global adjustment accounting for both

reductions.  If Apple made any error in apportionment, it was in Samsung's favor.

### 3. Apple's motion and supporting declarations provide a sufficient basis to award the requested fees

Apple's Motion and supporting declarations provided sufficiently detailed information for the Court to make a critical and reasoned assessment of the amount and reasonableness of Apple's claimed hours.  That extensive analysis, including descriptions of attorney biographies, major areas of work on the case, work on specific depositions and motions (where appropriate), and other explanations of the roles of various team members is far from the "uncritical[] . . . representations" found insufficient in *Gracie*, 217 F.3d at 1070-71.  Notably, Samsung does not dispute the reasonableness of Apple's billing rates.[4]

In large fee requests, "percentages indeed are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards."  *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992).  Nothing in *Gracie* requires otherwise.  In *Gracie*, the Ninth Circuit was confronted with a district court that had awarded the entire amount of the fees requested by the prevailing party, including fees for non-Lanham Act claims.  *Gracie*, 217 F.3d at 1069.  On remand, the trial court was instructed to make a "more detailed and thorough inquiry" rather than simply accepting the moving party's representation that every hour expended was reasonable.  *Id.* at 1070.

Indeed, in each of the cases cited by Samsung, the moving party requested the entirety of its fees.  *See Gracie*, 217 F.3d at 1069; *Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 873 (N.D. Cal. 2012); *Zynga Games Network Inc. v. Erkan*, No. 09-3264 SC, 2010 WL 3463630, at *2 (N.D. Cal. Aug. 31, 2010).  In contrast, and despite its overwhelming success at trial, Apple seeks only the recovery of its design-related fees allocated from a reduced-fees basis.  These fees, attributable to its successful Lanham Act claims, are set forth in detail in Apple's supporting

---

[4] Samsung finds it "highly unusual" that a handful of attorneys would have "hourly rates that differed by less than a dollar" (Opp'n at 18) but ignores that Apple calculated the "*effective discounted rate*" for each timekeeper based on the amount billed and hours worked.  (Dkt. 2851-4 ¶ 250 & Ex. A (emphasis added).)  Samsung offers no basis to challenge either the "effective discounted rates" or their reasonableness.

1   declarations (Dkt. 2851-4, 2851-5) and in its Motion.[5]

2   **III.     THE COURT SHOULD NOT DEFER DECISION "UNTIL AFTER THE MERITS**
3   **APPEALS ARE RESOLVED."**

4          Samsung has never missed an opportunity to ask the Court to delay proceedings in this

5   case, and does so again how, seeking to defer consideration of Apple's motion until after "the

6   merits appeals are resolved." (Opp'n. at 1:17-18.) Trial courts "retain[] the power to award

7   attorneys' fees after the notice of appeal from the decision on the merits had been filed."

8   *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983). Timely consideration of an

9   attorneys' fees motion "best serves the policy against piecemeal appeals" and "prevent[s]

10  postponement of fee consideration until after the circuit court mandate, when the relevant

11  circumstances will no longer be fresh in the mind of the district judge." *Id.* (affirming fee award

12  made while merits appeal was pending). Accordingly, courts routinely decide motions for fees

13  while an appeal is pending. *See, e.g.*, *Kalenowsky v. Canyon Capital Funding Corp.*, No. 3:11-

14  cv-00797-RCJ-VPC, 2013 U.S. Dist. LEXIS 151629, at *12-14 (D. Nev. Oct. 22, 2013 (deciding

15  attorneys' fees motion while appeal was pending); *Smith v. Payne*, No. C 12-01732 DMR, 2013

16  U.S. Dist. LEXIS 53641, at *4-5 (N.D. Cal. Apr. 15, 2013) ("clear authority" supports deciding

17
---

18         [5] Samsung purports to identify a handful of "misleading statements" in Apple's
    descriptions of its attorneys' work, but none holds up. For example, Samsung criticizes Apple for
19  referring to Harold McElhinny's, Erik Olson's, and Brooks Beard's having defended depositions
    of witnesses (Daniele De Iuliis, Boris Teksler, and Christopher Prest, respectively), when those
20  attorneys did not appear at the depositions for those witnesses in this action. (Opp'n at 17.) In
    fact, those lawyers defended the same witnesses' depositions in the ITC action (Declaration of
21  Ruth N. Borenstein ("Borenstein Decl.") ¶¶ 2-3 & Exs. A-B; Dkt. 2951-1 Ex. 5.) Samsung is
    correct that the time for the defense of those depositions should not be included in this fee
22  request, and in fact it was not. The time spent by Mr. McElhinny, Mr. Olson, or Mr. Beard
    defending those ITC depositions was billed to the ITC case, and not to this matter. (*Id.* ¶ 4.) The
23  only error was including those depositions in the descriptions of their work in this matter.

24         Samsung also criticizes Apple for withdrawing certain cost submissions only after
    Samsung filed objections. (Opp'n at 19.) Samsung ignores that the parties met and conferred
25  about Samsung's objections by telephone the afternoon before Samsung's objections were due,
    and Apple did not have the opportunity to review Samsung's full set of objections until after they
26  were filed. (Borenstein Decl. ¶¶ 5-7.) After reviewing Samsung's extensive filings and
    determining that Samsung had indeed found a tiny number of inadvertently included items, Apple
27  promptly withdrew them, and also waived certain other costs that Apple believed to be
    recoverable, in an effort to minimize the disputes between the parties. (*See* Dkt. 2942, 2943-3
28  ¶ 2.)

1   fees motion while appeal is pending to "promote[] judicial economy by allowing any appeal of

2   the fee award to be consolidated with [the] merits appeal" (citations and quotation marks

3   omitted)).

4         The advisory committee note to Rule 54(d) that Samsung cites is fully consistent with the

5   decisions cited above.  It recognizes that the short deadline provided by Rule 54(d)(2) "affords an

6   opportunity for the court to resolve fees disputes shortly after trial, while the services performed

7   are freshly in mind."  Fed. R. Civ. P. 54(d) advisory committee's note ¶ (2) (1993).  And while

8   Samsung cites the note for the proposition that the Court "should" defer ruling (Opp'n at 2:13-

9   15), the committee note actually states:  "If an appeal on the merits of the case is taken, the court

10  may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion

11  without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal

12  has been resolved."  Fed. R. Civ. P. 54(d) advisory committee's note ¶ (2) (1993).

13        The Court has recognized in other circumstances that delay prejudices Apple, which

14  prevailed on its infringement claims in August 2012, prevailed in the partial damages retrial in

15  November 2013, and filed its fees motion on December 5, 2013.  (*See, e.g.*, Dkt. 2831 at 9

16  (denying Samsung's motion to stay pending reexamination of '915 patent).)  Apple respectfully

17  requests that that Court hold the hearing on Apple's motion on May 1, 2014, and issue an order

18  thereafter at the Court's convenience, rather than delay consideration of the motion for months or

19  years until the merits appeals are resolved.

20  **IV.     CONCLUSION**

21        For the reasons stated above and in Apple's Motion, Apple respectfully requests that the

22  Court find this case exceptional and award Apple $15,736,992 in attorneys' fees pursuant to 15

23  U.S.C. § 1117(a).

24  Dated: March 6, 2014                      MORRISON & FOERSTER LLP

25

26                                            By:  */s/  Rachel Krevans*
                                                  RACHEL KREVANS

27                                                Attorneys for Plaintiff
                                                  APPLE INC.
28