1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3            SAN JOSE DIVISION

4

5

6    APPLE INC., A CALIFORNIA          )  C-11-01846 LHK
     CORPORATION,                      )
                                       )  SAN JOSE, CALIFORNIA
7                 PLAINTIFF,           )
                                       )  FEBRUARY 27, 2014
8            VS.                       )
                                       )  PAGES 1-52
9    SAMSUNG ELECTRONICS CO., LTD.,    )
     A KOREAN BUSINESS ENTITY;         )
10   SAMSUNG ELECTRONICS AMERICA,      )
     INC., A NEW YORK CORPORATION;     )
11   SAMSUNG TELECOMMUNICATIONS        )
     AMERICA, LLC, A DELAWARE          )
12   LIMITED LIABILITY COMPANY,        )
                                       )
13              DEFENDANTS.            )
     _____   )

14

15

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE PAUL S. GREWAL
17         UNITED STATES MAGISTRATE JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                    CERTIFICATE NUMBER 9595

24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
           TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2        A P P E A R A N C E S:

 3        FOR PLAINTIFF:          WILMER, CUTLER, PICKERING,
          APPLE:                  HALE AND DORR
 4                                BY:  WILLIAM F. LEE
                                  60 STATE STREET
 5                                BOSTON, MASSACHUSETTS  02109

 6                                BY:  MARK D. SELWYN
                                  950 PAGE MILL ROAD
 7                                PALO ALTO, CALIFORNIA  94304

 8                                GIBSON, DUNN & CRUTCHER
                                  BY:  BRIAN BUROKER
 9                                1050 CONNECTICUT AVENUE, N.W.
                                  WASHINGTON, D.C.  20036
10

11        FOR DEFENDANT:          QUINN, EMANUEL, URQUHART & SULLIVAN
          SAMSUNG:                BY:  JOHN B. QUINN
12                                     MICHAEL T. ZELLER
                                       SUSAN ESTRICH
13                                865 S,  FIGUEROA STREET, 10TH FLOOR
                                  LOS ANGELES, CALIFORNIA  90017
14

15        FOR NOKIA:              ALSTON & BIRD
                                  BY:  RANDALL L. ALLEN
16                                     RYAN W. KOPPELMAN
                                  275 MIDDLEFIELD ROAD, SUITE 150
17                                MENLO PARK, CALIFORNIA  94025

18

19

20

21

22

23

24

25
```

1    SAN JOSE, CALIFORNIA                FEBRUARY 27, 2014

2                     P R O C E E D I N G S

3        (COURT CONVENED AT 2:58 P.M.)

4            THE COURT:  MR. RIVERA, WOULD YOU PLEASE CALL THE

5    MATTER THAT HAS BEEN SPECIALLY SET?

6            THE CLERK:  YES, YOUR HONOR.

7        CALLING APPLE VERSUS SAMSUNG ELECTRONICS, ET AL, CASE

8    NUMBER CV-11-1846 LHK, MATTER ON FOR HEARING RE: FEES.

9        COUNSEL, PLEASE STATE YOUR APPEARANCES.

10           MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE AND

11   MARK SELWYN FOR APPLE.

12           THE COURT:  GOOD AFTERNOON.

13           MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.  JOHN -- I'M

14   SORRY.

15           MR. BUROKER:  BRIAN BUROKER FROM GIBSON DUNN, ALSO

16   FOR APPLE.

17           MR. ALLEN:  RANDALL ALLEN AND RYAN KOPPELMAN FOR

18   NOKIA.

19           THE COURT:  GOOD AFTERNOON.

20       MR. QUINN.

21           MR. QUINN:  JOHN QUINN, MIKE ZELLER, AND

22   SUSAN ESTRICH FOR SAMSUNG.

23           THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO EACH OF YOU

24   AS WELL.

25           ALL RIGHT.  WE ARE HERE BECAUSE, WELL, I ASKED YOU TO BE

1    HERE.  AFTER VIEWING THE LETTERS THAT HAD BEEN SUBMITTED UNDER

2    SEAL IN CONNECTION WITH THE FEE AWARD AND COST AWARD, IT WAS

3    CLEAR TO ME WE HAD SOME IMPORTANT MATTERS TO DISCUSS AND THAT A

4    LIVE DISCUSSION WAS GOING TO BE MORE EFFICIENT, FOR ME IF

5    NOTHING ELSE, THAN FURTHER DISCUSSION IN THE PAPERS.

6         I WANT TO BEGIN WITH THE ISSUE OF THE FORMAT IN WHICH

7    THESE LETTERS WERE SUBMITTED, WHICH IS UNDER SEAL.

8         I AM AT A LOSS AS TO WHETHER AND HOW ANY OF THIS

9    INFORMATION COULD BE PROTECTED AND EXCLUDED FROM THE PUBLIC

10   RECORD HERE, SO I'D LIKE TO BEGIN BY ASKING EACH SIDE, WHY DID

11   YOU FILE THESE UNDER SEAL?

12        I'LL START WITH APPLE.  MR. LEE?

13            MR. LEE:  YOUR HONOR, ONE OF THE REASONS WE DID IS --

14   IS IT THE INFORMATION, THE FIVE-PAGER, YOUR HONOR, PLUS THE

15   EXHIBITS AS OPPOSED TO THE INFORMATION THAT WAS FILED

16   CONCERNING THE DISCLOSURE ON THE 630?

17            THE COURT:  I'M SPEAKING SPECIFICALLY OF, YES, THE

18   LETTER AND THE EXHIBITS WHICH IS, FOR THE RECORD, AT 2958.

19            MR. LEE:  MAY I JUST HAVE ONE MINUTE?

20            THE COURT:  YOU MAY.

21            MR. ALLEN:  YOUR HONOR, NOKIA DID NOT FILE ITS LETTER

22   UNDER SEAL.

23            THE COURT:  THAT'S WHY I STARTED WITH MR. LEE,

24   MR. ALLEN.

25            (PAUSE IN PROCEEDINGS.)

1        MR. LEE:  OKAY.  YOUR HONOR, WE HAD INTENDED TO FILE

2    UNDER SEAL ONLY AS TO TWO ISSUES:  ONE, OR THE LATTER ISSUE,

3    THE DOCKET NUMBER ON THE, IN THE 630 ISSUE, WE WILL COME TO

4    THAT LATER; AND THE OTHER WAS ON THE HOURLY RATES.  THAT WAS

5    THE ONLY THING, BECAUSE THAT GETS CLOSER TO SOMETHING THAT'S

6    PRIVILEGED BETWEEN THE CLIENT AND US.

7        THE COURT:  SO YOU'RE CLAIMING PRIVILEGE OVER THE

8    RATE YOU'RE CHARGING APPLE?

9        MR. LEE:  WELL, YOUR HONOR, IT IS -- IT'S A

10    NEGOTIATED RATE BETWEEN US.  I THINK -- YOUR HONOR, IF IT

11    TROUBLES THE COURT, THEN WE'LL WITHDRAW IT.

12        THE COURT:  IT DOES, SO I APPRECIATE YOU WITHDRAWING

13    IT.

14        MR. LEE:  OKAY.

15        THE COURT:  THANK YOU.  THAT MATTER IS UNSEALED.  SO

16    THE MOTION FOR SEALING IS DENIED.

17        MR. ZELLER, MR. QUINN, WHO WANTS TO SPEAK TO THAT?

18        MR. ZELLER:  I'LL ADDRESS IT, YOUR HONOR.

19        YOUR HONOR, I THINK THE COURT HAS SEEN FROM OUR PAPERS

20    THAT WE'VE OPPOSED SEALING ON A NUMBER OF THESE FRONTS, AND IN

21    PARTICULAR AS IT RELATES TO THE TWO LETTERS THAT APPLE HAD SENT

22    SEPARATELY.  SO WE OPPOSE THAT.

23        AND BEYOND THAT, WE HAVE -- WE HAVE NOT OURSELVES SOUGHT

24    TO SEAL OUR INFORMATION.

25        THE COURT:  WELL, I'M NOT SURE THAT'S TRUE,

1     MR. ZELLER, MR. QUINN, WHO WANTS TO SPEAK TO THAT?  MR. ZELLER.

2     MAYBE I'M MISREADING THE DOCKET, BUT IN TERMS OF DOCKET 2964-3,

3     ISN'T THAT MATTER THE SUBJECT OF A SEALING REQUEST?

4              MR. ZELLER:  2964-3?

5              THE COURT:  THIS IS MR. QUINN'S LETTER OF

6     FEBRUARY 17, 2014.

7              MR. ZELLER:  IT MAY -- THAT'S OUR LETTER?

8              MR. QUINN:  THAT'S OUR LETTER BRIEF.

9              MR. ZELLER:  THAT IS OUR LETTER, YOUR HONOR.  WE ONLY

10    SEALED THAT, OR FILED THE APPLICATION TO SEAL BECAUSE APPLE WAS

11    ASSERTING CONFIDENTIALITY OVER THAT INFORMATION.  MR. ZELLER,

12    MR. QUINN, WHO WANTS TO SPEAK TO THAT?

13       WE'VE -- WE FILED OTHER DOCUMENTS OPPOSING THAT.  WE DO

14    NOT BELIEVE THAT THAT SHOULD BE SEALED.

15             MR. LEE:  AND -- I'M SORRY.

16             THE COURT:  GO AHEAD, MR. LEE.

17             MR. LEE:  YOUR HONOR, I THINK ACTUALLY THE TWO ISSUES

18    THAT I THOUGHT YOU WERE SEPARATELY ASKING ARE COLLAPSED IN ONE

19    SENSE.  THE FIVE-PAGE LETTER THAT WAS SUBMITTED ADDRESSES BOTH

20    THE FEES AND THE APPENDICES.

21       TO THE EXTENT THE COURT BELIEVES THAT OUR HOURLY RATES AND

22    THE APPENDICES SHOULDN'T BE SEALED, WE UNDERSTAND AND WE HAVE

23    NO PROBLEM WITH THAT.

24       THERE'S A PORTION OF THE LETTER THAT DEALS WITH THE OTHER

25    DISCLOSURE ISSUE.  WE DID MOVE TO SEAL THAT FOR THIS REASON,

1    AND I'D LIKE FOR YOUR HONOR TO GIVE ME ONE MINUTE TO EXPLAIN

2    WHY.

3            THE COURT:  GO AHEAD.

4            MR. LEE:  WE SEALED IT BECAUSE IT INCLUDES THE DOCKET

5    NUMBER OF THE DOCUMENT AT ISSUE, AND UNTIL WE'RE CERTAIN THAT

6    IDENTIFYING THAT DOCKET NUMBER WON'T LEAD SOMEONE TO THE

7    INFORMATION, WE WANTED TO TAKE THAT PRECAUTION.

8            AS YOUR HONOR KNOWS, WHILE NOKIA HAS BEEN SITTING WITH US

9    ON THIS SIDE OF THE TABLE FOR THESE ISSUES, NOKIA IS CONCERNED

10   ABOUT THAT DISCLOSURE AND HAS LET US KNOW THERE IS THAT

11   DISCLOSURE.

12           SO WE NEEDED TO TAKE EVERY POSSIBLE STEP WE COULD TO

13   ENSURE THAT THERE HAS BEEN NO PUBLIC DISCLOSURE, THERE HAS BEEN

14   NO ONE WHO HAS ACCESS TO THE INFORMATION, AND AS FAR AS WE

15   KNOW, NO ONE HAS ACCESSED THE INFORMATION.

16           BUT BY IDENTIFYING THE DOCKET NUMBER, THAT'S THE CONCERN,

17   YOU COULD LEAD SOMEONE TO THE INFORMATION.

18           AND WHILE -- YOUR HONOR KNOWS THE BACKDROP OF ALL THAT'S

19   OCCURRED, SO I THINK YOU UNDERSTAND WHY WE THOUGHT WE NEEDED,

20   OUT OF AN ABUNDANCE OF CAUTION, TO BE SURE THAT THAT

21   INFORMATION WAS SEALED.  SO THE PORTION OF THE LETTER THAT

22   DEALS WITH THAT WE WOULD STILL ASK TO BE SEALED.

23           THE OTHER INFORMATION WHICH YOUR HONOR WAS RAISING WITH ME

24   DIRECTLY, THE HOURLY RATES, THE BACKUP, WE UNDERSTAND, WE

25   WITHDRAW THE MOTION AS TO THAT.

1      WE STILL HAVE THE CONCERN ABOUT THE PORTION THAT

2   REFERENCES THE DOCKET NUMBER.

3           THE COURT:  MR. QUINN OR MR. ZELLER, OR MS. ESTRICH

4   FOR THAT MATTER, WHO WANTS TO SPEAK TO THAT?

5           MS. ESTRICH:  I'LL LET MR. QUINN.

6           MR. QUINN:  YOUR HONOR, THERE HAVE NOW BEEN SOME 20

7   DOCUMENTS FILED UNDER SEAL, HIDING FROM THE WORLD THE FACT THAT

8   IN THE MIDDLE OF THIS PROCEEDING CONCERNING A DISCLOSURE OF A

9   PORTION OF THIS INFORMATION TO ONE PARTY, SAMSUNG, BY SAMSUNG

10  AND QUINN, EMANUEL, IN THE MIDDLE OF THAT, APPLE DISCLOSED TO

11  THE WORLD ALL OF THAT INFORMATION AND THAT WAS IN THE PUBLIC

12  DOCKET FOR FOUR MONTHS, FOR FOUR MONTHS, YOUR HONOR.

13      THIS IS NOT -- THEY SAY THEY DON'T WANT PEOPLE TO KNOW THE

14  DOCKET NUMBER.  IT'S LOCKED DOWN NOW.

15      WHAT THEY DON'T WANT TO KNOW IS THAT DURING THIS

16  PROCEEDING WHEN WE WERE BEING EXCORIATED BY THEM AND BY THE

17  PRESS, EVERY WEEK THE HEADLINES BEGINNING WITH THE WORD

18  "QUINN," APPLE HAD PUT IN THE PUBLIC RECORD NOT JUST THE

19  INFORMATION WE DISCLOSED TO SAMSUNG, BUT ALL OF THE LICENSE

20  TERMS, THE TERMS OF THE LICENSE BETWEEN NOKIA AND APPLE, AND

21  THE TERMS OF ANOTHER LICENSE AS WELL.

22      AND THEN THEY FILED A DOCUMENT WITH THE COURT, YOUR HONOR,

23  SAYING THAT IT WAS NO LONGER PUBLICLY AVAILABLE.

24      IT WAS STILL ON LEXIS NEXIS.  WE TOLD THEM THAT.  WE

25  CALLED THEM AND WE TOLD THEM, "THAT'S NOT CORRECT.  YOU'VE GOT

1    TO GET IT TO LEXIS NEXIS."

2         SO SO FAR AS WE KNOW, IT'S LOCKED DOWN.  IT CAN'T BE

3    ACCESSED.

4         BUT SOME WOULD CALL IT HYPOCRISY, YOUR HONOR, THAT APPLE

5    AND NOKIA WOULD BE HERE NOW WANTING TO HIDE FROM THE WORLD THE

6    FACT THAT THIS VERY SAME INFORMATION THAT HAS BEEN THE SUBJECT

7    OF LENGTHY AND EXPENSIVE PROCEEDINGS BEFORE THIS COURT, THAT IN

8    THE MIDDLE OF IT, THEY INJECTED IT INTO THE PUBLIC DOMAIN.

9         AND THEY MAKE STATEMENTS SUCH AS, "WE HAVE NO INFORMATION

10   THAT ANYBODY HAS SEEN THIS."

11        YOUR HONOR, THAT'S A MEANINGLESS STATEMENT.  THEY WOULD

12   HAVE NO WAY OF KNOWING -- AS THEY'VE ACKNOWLEDGED PREVIOUSLY

13   WHEN THEY PREVIOUSLY FILED CONFIDENTIAL BUSINESS INFORMATION

14   UNDER SEAL IN THE MIDDLE OF THIS PROCEEDING, THEY WOULD HAVE NO

15   WAY OF KNOWING WHETHER ANYBODY'S ACCESSED THAT PUT FORWARD.

16        I DO KNOW THAT THIS IS A VERY, VERY CLOSELY WATCHED CASE.

17   I DO KNOW THAT REPORTERS AND OTHERS IN THE BUSINESS AND LEGAL

18   COMMUNITY LOOK AT THE DOCKET IN THIS MATTER.

19        IT WOULD BE OUR VIEW THAT THAT INFORMATION IS NO LONGER

20   PUBLIC.  I DON'T THINK THE COURT HAS TO REACH THAT QUESTION.

21        BUT IT'S CERTAINLY A MATTER OF PUBLIC INTEREST, GIVEN THE

22   HISTORY OF THIS MATTER, FOR THE WORLD TO KNOW THAT APPLE FILED

23   ALL THIS INFORMATION THAT'S BEEN THE SUBJECT OF THIS

24   PROCEEDING, AND MORE, PUBLICLY AND THAT THEY'VE BENT OVER

25   BACKWARDS TO KEEP IT, TO KEEP IT FROM THE PUBLIC, YOUR HONOR.

1    20 DOCUMENTS NOW HAVE BEEN FILED UNDER SEAL HIDING THIS

2    INFORMATION, INCLUDING AFTER THE FACT THAT THE DOCKET'S BEEN

3    LOCKED DOWN AND IT CAN'T BE SEEN BY ANYONE.

4         THAT'S NOT FAIR.  THAT'S NOT JUST.

5              THE COURT:  MR. LEE, YOU WANT TO RESPOND?

6              MR. LEE:  YES, YOUR HONOR.

7         I'VE BEEN BEFORE YOU A NUMBER OF TIMES.  IT'S THE FIRST

8    TIME I'VE BEEN ACCUSED OF BEING A HYPOCRITE, AND I'LL LET YOUR

9    HONOR JUDGE YOURSELF.  WE'VE BEEN BEFORE YOU.

10        I THINK WHAT YOUR HONOR KNOWS IS THIS:  WHAT YOUR HONOR

11   SAID IN YOUR ORDER WAS, MISTAKES HAPPEN.  IT'S WHAT YOU DO

12   AFTER A MISTAKE HAS OCCURRED.

13        HERE'S THE DIFFERENCE BETWEEN WHAT HAPPENED:  THIS

14   DOCUMENT THAT WAS ON THE PUBLIC RECORD, NOT DISCOVERED BY

15   ANYONE, YOU'LL RECALL HOW MUCH SAMSUNG TRIED TO FIND SOME

16   PUBLIC DISCLOSURE, THE OTHER DISCLOSURES THAT WERE BROUGHT TO

17   YOUR HONOR'S ATTENTION.

18        WHEN IT WAS DISCOVERED, WE BROUGHT IT TO YOUR HONOR'S

19   ATTENTION IN LESS THAN 24 HOURS.

20        WE BROUGHT IT TO SAMSUNG'S ATTENTION IN LESS THAN 24

21   HOURS.

22        WE NOTIFIED NOKIA AND NEC WITHIN 24 HOURS.

23        THIS IS OUR -- IT WAS A MISTAKE.  IT'S OUR INFORMATION, SO

24   IT'S NOT ACTUALLY A VIOLATION OF THE PROTECTIVE ORDER.  THERE

25   MAY BE ISSUES BETWEEN NOKIA AND US UNDER THE NONDISCLOSURE

1    PROVISION.

2          CONTRAST THAT WITH WHAT HAPPENED, JUST THE FINDINGS YOUR

3    HONOR MADE.  THREE LAWYERS, A PARTNER, A SENIOR ASSOCIATE, AND

4    AN ASSOCIATE SITTING IN DECEMBER 2012 KNOWING THERE'S A

5    VIOLATION, BUT NO NOTICE TO US FOR EIGHT MONTHS.  NOTICE TO US

6    ONLY TWO WEEKS AFTER THERE HAD BEEN A SUGGESTION BY SAMSUNG TO

7    NOKIA THAT THE DOCUMENTS WOULD BE DESTROYED.

8          IT IS WHAT HAPPENS AFTER.

9          NOW, YOUR HONOR, IF WE KNEW IN OCTOBER THAT THAT WAS

10   THERE, WE WOULD HAVE DONE THE SAME THING WE DID IN FEBRUARY

11   WHEN WE REALIZED IT WAS THERE.  IF WE REALIZED IT WAS THERE, WE

12   WOULD HAVE TOLD YOUR HONOR THAT IT WAS THERE.

13         I THINK IF YOU TAKE THE GIST OF YOUR ORDER, AS WE READ IT,

14   WHICH IS IN A BIG CASE, THESE THINGS CAN HAPPEN -- AND I

15   ACTUALLY WENT BACK TODAY, YOUR HONOR, AND COUNTED UP THE NUMBER

16   OF TIMES IN 1846 AND 630 THAT ONE OF US ACTUALLY FILED

17   CONFIDENTIAL INFORMATION AND THE OTHER ONE CAUGHT IT, AND WE

18   DID WHAT PROFESSIONALS SHOULD DO.  WE PICK UP THE TELEPHONE AND

19   WE CALL THEM, OR IN SOME CASES THEY CALLED US, AND SAID, "WE

20   DON'T THINK THIS SHOULD HAVE BEEN FILED.  IT SHOULD BE

21   CONFIDENTIAL."

22         AND WE COLLECTIVELY TOOK THE ACT, THE STEPS WITH THE COURT

23   TO CURE THAT ISSUE.  THAT'S WHAT'S SUPPOSED TO HAPPEN WHEN A

24   MISTAKE HAS OCCURRED.

25         IN THIS CASE WHEN THE ERROR WAS DISCOVERED, WE TOOK THOSE

1    STEPS WITHIN 24 HOURS.

2         AND I WOULD JUST CONTRAST THAT WITH THE FINDINGS YOUR

3    HONOR MADE.

4         THIS ACTUALLY -- IF THEY THINK THAT THERE IS A VIOLATION

5    OF THE PROTECTIVE ORDER, IT'S A SEPARATE MOTION.

6         IF THEY THINK THAT IT'S SANCTIONABLE, IT WOULD BE A

7    SEPARATE MOTION.

8         IT IS A SEPARATE ISSUE.  AS I SAID TO YOUR HONOR, IT

9    REALLY IS NOT A PROTECTIVE ORDER ISSUE.  IT MAY BE AN ISSUE

10   BETWEEN NOKIA AND US.

11        BUT I THINK THE HYPOCRISY, THE SUGGESTION THAT WE KNEW OF

12   THIS AND WE MADE REPRESENTATIONS TO YOUR HONOR, APPLE'S GOING

13   TO BE BEFORE YOU TOO FREQUENTLY TO EVER DO THAT.  AS LAWYERS

14   FROM GIBSON, DUNN AND MOFO AND OUR FIRM, WE WOULD NEVER DO

15   THAT.

16        THIS WAS, IN THIS PARTICULAR CASE, JUST WHAT IT WAS SAID

17   TO BE, AND NO ONE IS TRYING TO HIDE ANYTHING FROM ANYBODY.

18             THE COURT:  I -- BEFORE I -- MR. ALLEN, GO AHEAD.

19             MR. ALLEN:  I JUST WANT TO ADDRESS THIS FOR A SECOND.

20             THE COURT:  SURE.

21             MR. ALLEN:  NOT MUCH TIME HAS PASSED SINCE WE LEARNED

22    OF THIS EVENT.  THE FIRST TIME WE HEARD ABOUT IT WAS

23    FEBRUARY 11TH.

24        WE ARE -- WE HAVE BEEN IN VIRTUALLY CONSTANT CONTACT WITH

25   COUNSEL FOR APPLE ABOUT THIS ISSUE SINCE IT'S HAPPENED.

1          I DON'T NEED TO STAND HERE TODAY AND DRAW DISTINCTIONS

2     BETWEEN WHAT SAMSUNG OR QUINN EMANUEL DID OR WHAT APPLE AND

3     APPLE'S COUNSEL DID.

4          THE TRUTH OF THE MATTER IS, WE DON'T KNOW THE FULL EXTENT

5     OF THIS YET, AND PURSUING THE COURSE THAT SAMSUNG IS SUGGESTING

6     HERE, WHICH IS LET'S SPREAD IT ALL OUT ON THE PUBLIC RECORD

7     BEFORE WE CAN GET TO AS CLOSE TO THE BOTTOM OF IT AS WE CAN GET

8     AND FIND OUT IF THERE IS ANYTHING ELSE WE CAN DO TO REMEDY OR

9     REPAIR THIS ISSUE BEFORE FURTHER DISSEMINATION OF INFORMATION,

10    I STRONGLY URGE THE COURT THAT THERE IS NO EXIGENT NEED, RIGHT

11    NOW, TO DIVULGE THIS INFORMATION UNTIL WE CAN GET CLOSER TO THE

12    BOTTOM OF IT AND HOPEFULLY REPAIR WHAT HAS BEEN DONE AND AVOID

13    FURTHER PROBLEMS IN THE FUTURE.

14         I JUST THINK IT'S -- THERE'S A BIG RUSH HERE THAT,

15    FRANKLY, IS INEXPLICABLE TO ME AT THIS STAGE.

16         THANK YOU.

17            THE COURT:  ALL RIGHT.  WELL, LET ME, IF I COULD,

18     OFFER MY VIEWS ON THIS SUBJECT.

19         I AM INTERESTED THIS AFTERNOON IN ADDRESSING THE RATHER

20    FAR MORE MUNDANE SUBJECT OF FEES AND COSTS UNDER THE EARLIER

21    ORDER I ISSUED.

22         I UNDERSTAND THAT BOTH NOKIA AND SAMSUNG HAVE FILED

23    FURTHER MOTIONS THAT ARE CALENDARED FOR FURTHER DATES, SO WE'LL

24    COME TO THOSE ISSUES IN DUE COURSE.

25         BUT WHAT IS BEFORE ME IN CONNECTION WITH THIS DISPUTE THIS

1    AFTERNOON IS WHETHER THESE LETTERS OUGHT TO BE ON THE PUBLIC

2    DOCKET OR NOT, AND I CERTAINLY CANNOT SEE HOW BILLING RATES

3    OUGHT TO BE WITHHELD FROM THE PUBLIC IN CONNECTION WITH THIS

4    DISPUTE.

5         I ALSO CAN'T UNDERSTAND HOW DISCLOSING THE FACT OF APPLE'S

6    POSTING OF AT LEAST SOME INFORMATION ON THE PUBLIC DOCKET MEETS

7    THE KAMAKANA STANDARD.

8         I MEAN, WHAT AM I MISSING HERE?  IF THERE WAS AN ERROR,

9    WE'VE NOW DISCUSSED THIS IN OPEN COURT, WHY SHOULDN'T THESE

10   LETTERS ALL BE REVEALED SO THAT PEOPLE WHO ARE INTERESTED CAN

11   TAKE A LOOK AT THEM?  THEY'RE PAYING FOR THIS WHOLE EXERCISE.

12         MR. LEE:  YOUR HONOR, OUR ONLY CONCERN IS THE DOCKET

13   NUMBER, WHICH IS -- I AGREE WITH WHAT MR. ALLEN SAID.  WHAT

14   WE'RE TRYING TO DO IS MAKE SURE THAT THERE HASN'T BEEN ANY

15   DISCLOSURE.

16         MR. QUINN FAULTS ME FOR SAYING WE DON'T KNOW OF ANY.  I'M

17   JUST TRYING TO BE PRECISE.  WHEN THEY RAISED THE ISSUE OF

18   LEXIS NEXIS WITH US, WE TRACKED IT DOWN IMMEDIATELY.

19         THEY DID EVERYTHING -- MR. RUBIC'S FIRM DID EVERYTHING

20   THEY COULD OVER THE PRESIDENT'S DAY WEEKEND AND DID THAT ACTION

21   ON TUESDAY.

22         IT'S THE DOCKET NUMBER THAT IS THE CONCERN UNTIL WE ARE

23   SURE -- I MEAN, MR. QUINN HAS MADE HIS CHARACTERIZATION OF IT.

24   I'VE MADE MY CHARACTERIZATION OF IT.

25         IT'S ONLY THE DOCKET NUMBER PORTION OF THE LETTER THAT WE

1    HAVE A CONCERN ABOUT, BECAUSE IF SOMEONE HAD ACCESSED IT,

2    RIGHT, THIS WOULD LEAD THEM INEXTRICABLY TO IT BEFORE WE'VE HAD

3    A CHANCE TO BE SURE THAT WE'VE TAKEN ALL THE STEPS THAT WE CAN.

4         SO WE PROBABLY COULD HAVE BEEN MORE PRECISE ABOUT WHAT OUR

5    CONCERN IS.  THAT'S THE CONCERN.

6              THE COURT:  ALL RIGHT.  WELL, IF --

7         MR. ALLEN?

8              MR. ALLEN:  YOUR HONOR, I THINK WE DISCLOSED THIS

9    EVENT IN OUR LETTER WHICH, AS YOU POINTED OUT, WE FILED.  WE

10   DISCLOSED THE EVENT.  I DON'T DISAGREE WITH YOU ABOUT THAT.

11        I THINK IT'S MORE THAN JUST THE DOCKET NUMBER.  I THINK

12   IT'S THE DETAILS AROUND THE FILING, WHICH INCLUDES THINGS LIKE

13   DOCKET NUMBERS AND DATES WHICH, AS MR. LEE POINTS OUT, MIGHT

14   LEAD PEOPLE TO THE ISSUE THAT'S UNNECESSARY TO BE DISCLOSED AT

15   THIS STAGE FOR YOUR HONOR TO DEAL WITH THAT ISSUE.

16             THE COURT:  YEAH, BUT THAT'S NOT THE COURT'S PROBLEM,

17   IS IT?  RIGHT?  THE COURT DIDN'T SCREW UP AND POST THIS ON THE

18   PUBLIC DOCKET.  APPLE'S ADMITTED THAT, SO I DON'T THINK THAT'S

19   IN DISPUTE.

20        AND THE PUBLIC HAS THE RIGHT TO UNDERSTAND WHAT WE'RE

21   DOING HERE AT 3:00 O'CLOCK IN THE AFTERNOON IN THE SAN JOSE

22   FEDERAL COURTHOUSE, SO IF THERE IS FURTHER FALLOUT OR PREJUDICE

23   TO APPLE FROM THAT MISTAKE, THAT'S APPLE'S PROBLEM.  IT'S NOT

24   THE COURT'S PROBLEM, IS IT?

25             I MEAN, MR. LEE, WHAT AM I MISSING HERE?

1     MR. LEE:  YOUR HONOR --

2         THE COURT:  AND THIS IS A HYPOTHETICAL CONCERN

3     BECAUSE, OF COURSE, I WAS -- I BELIEVE I WAS TOLD THAT

4     LEXIS NEXIS HAS LOCKED THIS THING DOWN, SO THAT'S NO LONGER A

5     SOURCE, IS IT?

6         MR. LEE:  I THINK -- YOU'RE ASKED TWO THINGS.  THE

7     COURT HAS LOCKED IT DOWN.  LEXIS NEXIS HAS NOT LOCKED IT DOWN.

8         I CAN'T SIT HERE AND REPRESENT TO YOU THAT THIS ISN'T A

9     HYPOTHETICAL CONCERN IN THE SENSE THAT THERE'S NO REAL CONCERN.

10        BUT AS I SAID, YOUR HONOR, AT THE OUTSET, GIVEN EVERYTHING

11    THAT YOU NOW KNOW ABOUT THE IMPORTANCE OF THIS INFORMATION AND

12    THE CONCERN WHEN PEOPLE THINK THAT SOMETHING HAS GONE OUT, I

13    WILL TELL YOU, IT IS TRUE THAT MR. ALLEN AND HIS FIRM HAVE BEEN

14    IN DAILY CONTACT WITH US, NOT TALKING ABOUT HOW WE SHOULD DEAL

15    COLLECTIVELY WITH SAMSUNG, BUT ON THIS ISSUE, AND I THINK AS

16    LAWYERS WHAT WE TRY TO DO IS BE ABUNDANTLY CAUTIOUS TO ENSURE

17    THAT WE'VE TAKEN ALL STEPS WE COULD SO IT'S NOT A BIGGER ISSUE

18    THAN IT NEEDS TO BE.

19        THE COURT:  ALL RIGHT.  WELL, SO THAT I'M CLEAR, EACH

20    OF THE LETTERS SUBMITTED ON FEBRUARY 17TH, 2014, BY APPLE,

21    NOKIA, AND SAMSUNG SHALL BE PLACED ON THE PUBLIC DOCKET.  ANY

22    MOTION TO SEAL CONCERNING THOSE LETTERS IS DENIED IN FULL.

23        LET'S TURN TO THE SUBSTANCE OR MERIT OF THE ISSUE, WHICH

24    IS THE REQUEST FOR FEES AND COSTS.

25        MR. QUINN, I'LL BEGIN WITH YOU, AND I'LL BEGIN BY ASKING

1    THIS:  ONE MIGHT WONDER AT THE FORTITUDE OF QUIBBLING OVER

2    BUSINESS CLASS TICKETS VERSUS ECONOMY CLASS TICKETS, OR LABELS

3    ON PARTICULAR BILLING RECORDS GIVEN THE FULL RANGE OF SANCTIONS

4    THAT WERE UNDER CONSIDERATION DURING THIS WHOLE ESCAPADE.

5         SO WHY ARE WE HERE?  WHY AM I BEING ASKED TO GO THROUGH

6    EVERY BILLING RECORD AND EVERY LINE ITEM GIVEN THAT BACKDROP?

7              MR. QUINN:  YOUR HONOR, THERE ARE -- I MEAN, WE

8    ACKNOWLEDGE, AND I BELIEVE THAT WE'VE ACKNOWLEDGED IN PREVIOUS

9    FILINGS EVEN BEFORE THE BRIEFING THAT LED UP TO THIS HEARING,

10   THAT THERE'S A BASIS FOR AN AWARD OF ATTORNEYS' FEES HERE.  WE

11   VIOLATED THE PROTECTIVE ORDER.

12        BUT STILL, THERE REMAINS THE QUESTION OF -- WHICH I DON'T

13   THINK ANY OF US WOULD APPROPRIATELY JUST PUNT ON -- AS TO

14   WHAT'S REASONABLE BECAUSE, AFTER ALL, THAT'S WHAT THE LAW SAYS,

15   AND WHAT'S JUST, AS THE LAW SAYS THAT AS WELL.

16        SO I'M GOING TO AVOID TALKING ABOUT BUSINESS CLASS AIR

17   FARES AND PARTICULAR ITEMS AND TRY TO FOCUS MORE ON BIG PICTURE

18   ITEMS.

19        PART OF THE REASON THAT IT IS DIFFICULT TO SORT OF PARSE

20   THE BILLS AND TALK ABOUT PARTICULAR ITEMS IS BECAUSE, AS IT

21   TURNS OUT -- AND, YOU KNOW, I'LL MENTION THIS A LITTLE BIT

22   LATER -- THE BILLS ARE NOT VERY SPECIFIC.  THERE IS LAW ABOUT

23   BLOCK BILLING.  THERE IS LAW ABOUT THE ADEQUACY OF

24   DESCRIPTIONS.  I'D LIKE TO SET THAT ASIDE, YOUR HONOR.

25        BIG PICTURE, SUCCESS IS A RELEVANT CONSIDERATION.  WHAT

1    WAS ACCOMPLISHED IS A RELEVANT CONSIDERATION UNDER ANY STANDARD

2    FOR WHAT'S A REASONABLE ATTORNEYS' FEE AS FAR AS -- AS FAR AS

3    I'M AWARE, WHAT HAS BEEN, WHAT HAS BEEN PUBLISHED.

4            THE COURT:  PERHAPS, MR. QUINN, I MIGHT ASK A BIGGER

5    QUESTION BEFORE WE GET TO THE ONES YOU WERE FOCUSSING ON.

6            IN MY ORDER, I DID NOT INCLUDE A REASONABLE LIMITATION ON

7    THE FEES AND COSTS AWARD.  I SAID ALL.

8            IS IT YOUR POSITION THAT UNDER RULE 37, THE COURT IS

9    PRECLUDED FROM GOING ABOVE AND BEYOND THE FLOOR THAT IS SET IN

10   RULE 37 WHICH SPEAKS OF REASONABLE FEES, AND SPEAKING MORE

11   BROADLY, OF ALL FEES AND COSTS?

12           MR. QUINN:  I THINK THE COURT HAS THE POWER TO AWARD

13   ATTORNEYS' FEES THAT ARE REASONABLE AND JUST AND SHOULD NOT

14   AWARD, AS ATTORNEYS' FEES, ATTORNEYS' FEES THAT ARE NOT

15   REASONABLE OR NOT JUST.

16           THE COURT:  SO YOU WOULD SUGGEST THAT ANY AWARD OF

17   FEES AND COSTS ABOVE THOSE THAT ARE REASONABLE AND JUST LIE

18   OUTSIDE OF THE COURT'S POWER OR AUTHORITY UNDER RULE 37?

19           MR. QUINN:  TO AWARD ATTORNEYS AS ATTORNEYS' FEES,

20   YES, I WOULD, YOUR HONOR.

21        SO IF I --

22           THE COURT:  ALL RIGHT.

23           MR. QUINN:  WITH THE COURT'S PERMISSION?

24           THE COURT:  YES.

25           MR. QUINN:  IF WE TAKE A STEP BACK AND LOOK AND FOCUS

1    ON WHAT WERE THE ALLEGATIONS, WHAT WAS ACHIEVED AND WHAT WAS

2    THE SUCCESS, I'D LIKE TO -- THERE'S A FEW THINGS I'D LIKE TO

3    ADDRESS UNDER THAT GENERAL SUBJECT MATTER, IF I MAY.

4        THE COURT SAID THAT WHAT BEGAN AS A COURSE OF LOUD AND

5    CERTAIN ACCUSATIONS HAD, BY THE END, DIED DOWN TO AGGRESSIVE

6    SUPPOSITIONS AND INFERENCES.

7        WE SAW A NUMBER OF DIFFERENT THEORIES ADVANCED.  WE HEARD

8    THE THEORY ABOUT HOW WE FRAMED OUR FRAND LICENSE OFFER BACK IN

9    DECEMBER; WE HEARD THE THEORY ABOUT DOCUMENTS IN THE ITC; WE

10   HEARD THE THEORY ABOUT HOW WE FRAMED OUR RESPONSE TO THE ORDER

11   FROM THE ITC WHEN THE APPEAL TO PRESIDENT OBAMA WAS UNDER

12   CONSIDERATION.

13       AT THE END OF THE DAY, A LOT OF TIME AND MONEY WAS SPENT

14   PURSUING THAT.  NONE OF THAT PANNED OUT.

15       THE COURT FOUND, EXCEPT FOR THE FACT THAT DANIEL SHIM WAS

16   ABLE TO IDENTIFY THE NOKIA LICENSE FEE FROM THE DUTCH

17   SPREADSHEET THAT THE COURT FOUND, THE COURT OTHERWISE FOUND

18   THAT CONTRARY TO THE INSISTENCE OF APPLE AND NOKIA, THERE WAS

19   NO USE, THERE WAS NO EVIDENCE OF USE IN THIS CASE.

20       THERE WAS NO USE, THE COURT FOUND, THAT IT COULD SEE

21   EVIDENCE OF IN THE NEGOTIATIONS WITH NOKIA OR WITH ERICSSON.

22       AND I SUBMIT THIS IS RELEVANT.  THE ALLEGATIONS THAT WERE

23   MADE, WHAT WAS PURSUED, WHAT WE WERE TOLD, WHY THIS MERITED

24   INVESTIGATION IS RELEVANT IN ASSESSING THE REASONABLENESS OF

25   THE FEE REQUEST.

1       THERE WERE A NUMBER OF FORMS OF RELIEF THAT WERE

2   REQUESTED:  AN INJUNCTION AGAINST OUR PRACTICING LAW

3   REPRESENTING CERTAIN CLIENTS; AN INJUNCTION AGAINST SAMSUNG

4   ENGAGING IN CERTAIN BUSINESS ACTIVITIES.

5       YOU KNOW, THESE THE COURT TERMED AS LUDICROUS, LUDICROUSLY

6   OVERBROAD REQUESTS FOR RELIEF.

7       YOUR HONOR, THEY SHOULDN'T -- I SUBMIT IT'S NOT REASONABLE

8   TO AWARD ATTORNEYS' FEES FOR PURSUING FORMS OF RELIEF LIKE

9   THAT.

10      AGAIN, I ACCEPT, YOUR HONOR, WE'RE GOING TO PAY.  I KNOW

11  THAT.

12      BUT IF -- TO THE EXTENT THAT SUCCESS IN PUBLISHING

13  OBJECTIVES AND HOW TIME WAS SPENT IS WORTHY OF CONSIDERATION,

14  AND I THINK IT IS UNDER THE LAW, THESE THINGS JUST SIMPLY

15  DIDN'T PAN OUT AND IT SHOULD BE TAKEN INTO ACCOUNT IN DECIDING

16  WHAT'S REASONABLE.

17      AND, YOUR HONOR, I'M GOING TO -- AS OF AUGUST 19TH, WE HAD

18  IDENTIFIED TO THEM IN LETTERS -- I MEAN, WE WENT AFTER THIS

19  ONCE IT WAS CALLED TO OUR ATTENTION.

20      WE'VE BEEN FAULTED FOR NOT TELLING APPLE SOON ENOUGH.  I

21  UNDERSTAND THAT.

22      BUT WE IDENTIFIED TO THEM THE KNOWN RECIPIENTS.  WE

23  ENTERED INTO A STIPULATION THAT WE WOULD BRING IN STROZ, WHICH

24  ULTIMATELY WAS DONE, AND THAT STROZ WOULD, YOU KNOW, RUN DOWN

25  EVERY ELECTRONIC TRAIL AND FIND OUT WHERE THIS WENT.

 1          AND THAT PROCESS WAS ALREADY UNDERWAY, YOUR HONOR, WHEN WE

 2   FIRST APPEARED BEFORE THE COURT.  WE HAD AGREED TO THAT.

 3          AND, YOU KNOW, I KNOW APPLE SAYS, "WELL, AS A RESULT OF

 4   THIS PROCEEDING, WE IDENTIFIED, YOU KNOW, RECIPIENTS AROUND THE

 5   WORLD, ANOTHER HUNDRED PEOPLE, WE PUBLISHED THAT, THAT'S

 6   NOTEWORTHY IN ASSESSING THE REASONABLENESS OF THE ATTORNEYS'

 7   FEES."

 8          I WOULD JUST SAY, YOUR HONOR, THAT WAS ALL FOUND BY STROZ.

 9   IT WAS ALREADY FOUND PURSUANT TO THE PROCESS THAT WE AGREED TO.

10          AND, YOU KNOW, I'LL MAKE THE -- TO MAKE THE STRONG CASE,

11   YOUR HONOR, WHICH I'LL MAKE, THERE WASN'T -- AND WE TOOK ALL

12   THESE DEPOSITIONS, A LOT OF TRAVEL AROUND THE WORLD, A LOT OF

13   FOLKS SPENT TIME IN FOREIGN COUNTRIES, I'M NOT SURE ANYTHING

14   WAS TURNED UP THAT WOULD NOT HAVE BEEN INEVITABLY TURNED UP BY

15   STROZ AS A RESULT OF THAT PROCESS THAT WAS ALREADY PUT IN

16   PLACE.

17          IN TERMS OF, YOU KNOW, IF THEY WERE TO GET THEIR ENTIRE

18   FEES, YOUR HONOR, THAT THEY'VE REQUESTED, THEY WOULD GET FEES

19   FOR -- ON MOTIONS AND APPEALS TO JUDGE KOH WHICH THEY LOST.

20          YOU KNOW, WE SAID -- YOU KNOW, WE CAME TO THE COURT, WE

21   SAID WE'D LIKE TO DEPOSE THE FINNISH NEGOTIATOR -- HIS NAME

22   ESCAPES ME RIGHT NOW -- AND HIS COLLEAGUE.

23          WE WERE TOLD NO, WE HAD TO BRING A MOTION.  WE PREVAILED

24   ON THAT MOTION.

25          WE WERE TOLD -- WE WANTED ALSO TO HAVE A WITNESS ON THE

1    CONFIDENTIALITY OF THIS INFORMATION AND MEASURES TAKEN TO

2    ASSURE THAT THE CONFIDENTIALITY -- THAT THE INFORMATION THAT

3    WAS OBTAINED WAS CONFIDENTIAL.  THEY RESISTED THAT.  LIKE THE

4    FINNISH WITNESSES, THEY WOULDN'T AGREE TO THAT.  WE HAD TO

5    BRING A MOTION.  WE PREVAILED ON THAT.  THEY'RE ASKING FOR

6    ATTORNEYS' FEES ON THAT.

7          OVER AND OVER AGAIN, THEY CHALLENGED OUR CLAIMS OF

8    PRIVILEGE.  THE COURT MAY REMEMBER, RIGHT AT THE VERY

9    BEGINNING, AFTER THE COURT'S FIRST ORDER, THEY TOOK THE

10   POSITION -- SORRY, I WAS TALKING ALL MORNING -- THEY TOOK THE

11   POSITION THAT THIS COURT'S ORDER, IN EFFECT, MEANT THAT WE HAD

12   WAIVED ALL CLAIMS OF PRIVILEGE.

13         WE SAID THAT'S NOT WHAT IT MEANS.  THEY DISAGREED.  WE END

14   UP APPEALING THAT TO JUDGE KOH.  JUDGE KOH SAID THAT'S NOT WHAT

15   IT MEANS.  WE WERE RIGHT.  THEY'RE SEEKING ATTORNEYS' FEES FOR

16   THAT AS WELL.

17         I'LL GO FURTHER AND SAY, YOUR HONOR, AN AWFUL LOT OF THIS

18   PROCEEDING, AS THE COURT KNOWS, CONCERNED CLAIMS OF PRIVILEGE

19   AND WHETHER THEY WERE APPROPRIATE OR NOT.

20         EVERY STEP OF THE WAY APPLE AND NOKIA CHALLENGED OUR

21   CLAIMS OF PRIVILEGE, NOTWITHSTANDING THE FACT THAT WE

22   REPEATEDLY SAID, "IF YOU'LL AGREE IT'S NOT A WAIVER, WE'LL

23   SHARE DOCUMENTS WITH YOU."  THEY DID NOT ONCE ACCEPT ANY OF

24   THOSE.

25         AND I'LL SAY, DURING THIS ENTIRE PROCEEDING,

1    NOTWITHSTANDING THE VOLUMINOUS, THE VERY LARGE CLAIMS OF

2    PRIVILEGE WHICH THEY WERE VERY UNHAPPY ABOUT, THIS COURT DID

3    NOT OVERRULE A SINGLE CLAIM OF PRIVILEGE.

4         I'M FULLY AWARE OF THE FOOTNOTE IN THE COURT'S OPINION

5    WHERE THE COURT SAID THAT IT WAS THIS COURT'S VIEW THAT BY

6    OFFERING EVEN TO SHARE INFORMATION UNDER CONDITIONS THAT WE

7    HAD, THAT WE, BY THAT ACT, HAD WAIVED CLAIMS OF PRIVILEGE, AND

8    IN DUE COURSE WE'RE PREPARED TO ADDRESS THAT BECAUSE WE THINK

9    THERE'S A CASE CALLED TANNENBAUM IN THE NINTH CIRCUIT WHICH

10   SUGGESTS OTHERWISE.

11        BUT MY POINT IS, YOUR HONOR, THERE WASN'T A SINGLE CLAIM

12   OF PRIVILEGE THAT WAS EVER OVERRULED.

13        AND PRIVILEGE WAS A HOTLY CONTESTED ISSUE.  IT TOOK A LOT

14   OF TIME AND MONEY.

15        I THINK IT'S A FAIR QUESTION TO ASK IN TERMS OF ASSESSING

16   THE REASONABLENESS OF THE ATTORNEYS' FEES AND THE JUSTNESS OF

17   THE ATTORNEYS' FEES TO TAKE THAT EFFORT INTO ACCOUNT, THE FACT

18   THAT NO CLAIM WAS EVER OVERRULED.

19        THERE WERE PARTICULAR THINGS ABOUT RULE -- AND I DON'T --

20   I'M COGNIZANT OF THE COURT'S CONCERNS ABOUT GETTING INDIVIDUAL

21   TIME ENTRIES, BUT, YOU KNOW, THE --

22             THE COURT:  GO AHEAD, BECAUSE I'M GOING TO HAVE TO DO

23    THAT.  THANKS TO YOUR OBJECTIONS, I'M GOING TO HAVE TO GO

24    THROUGH THESE LINE BY LINE, AREN'T I?

25             MR. QUINN:  WELL, YOUR HONOR, I THINK IT'S GOING TO

```
 1        BE HARD TO DO GIVEN THE NATURE OF THE ENTRIES.

 2             AND JUST TO JUMP FORWARD AS TO WHAT I WOULD SUGGEST SINCE,

 3        IN OUR VIEW, THE DESCRIPTIONS ARE AWFULLY BROAD, WE HAVE A HARD

 4        TIME PARSING IT AND ALLOCATING BASED ON THE DESCRIPTIONS TO

 5        PARTICULAR ACTIVITIES, THAT WE THINK MORE SPECIFIC RECORDS

 6        SHOULD BE GENERATED WHICH WOULD MAKE IT EASIER FOR THE COURT

 7        AND MAKE IT EASIER FOR US.

 8             BUT ONE OF MY MOST TROUBLING, MOST TROUBLING EPISODES IN

 9        THIS, YOUR HONOR -- AND MAYBE AS I DESCRIBE THIS, IT'LL COME

10        BACK TO THE COURT -- WE WERE ASKED TO PROVIDE A RULE 30(B)(6)

11        WITNESS ON ALL THE DISCLOSURES AND WE APPOINTED KEN KOREA,

12        FORMER A.U.S.A., YOU KNOW, SAMSUNG EMPLOYEE, WHO WENT OUT AND

13        INTERVIEWED 90-PLUS EMPLOYEES, TOOK NOTES, CAME TO THE

14        DEPOSITION, HE WAS READY TO TESTIFY, HAD NOTEBOOKS OF

15        INFORMATION.

16             THEY WEREN'T INTERESTED.  WE HAD TO MARK THE NOTEBOOKS AT

17        THE END JUST TO MAKE SURE THERE WAS A RECORD.

18             THERE WAS, LIKE, SIX QUESTIONS, SIX, EIGHT QUESTIONS AT

19        THE END ABOUT HIS EXAMINATION, OR ABOUT HIS RESEARCH.

20             IT WAS -- YOU KNOW, THE TIME WASN'T WELL SPENT.

21             IT -- YOU KNOW, AND THEN I DEFENDED DR. AHN'S DEPOSITION,

22        YOUR HONOR.  DR. AHN -- THIS IS IN THE RECORD -- THEY'RE ASKING

23        DR. AHN, WHERE DID YOU GO TO HIGH SCHOOL?  WHERE DID YOU GO TO

24        COLLEGE?  WHAT WERE YOUR PRIOR JOBS?

25             I SAID, ON THE RECORD, "HE'S ALREADY BEEN DEPOSED IN THIS
```

```
 1        CASE BY AN APPLE LAWYER.  THAT'S ALL IN THE RECORD."

 2              THE NOKIA LAWYER THERE SAID, "WELL, NO.  I HAVE TO DO THIS

 3        MY OWN WAY" AND PROCEEDED TO CONTINUE WITH THAT EXAM, WHICH WAS

 4        COMPLETELY UNNECESSARY.

 5              THEY -- WE WERE -- THEY WERE REQUIRED TO PRODUCE TO US A

 6        30(B)(6) WITNESS ON MEASURES TAKEN TO PRESERVE CONFIDENTIALITY

 7        AND THE LIKE, AND THAT WITNESS WAS PRODUCED DAYS AFTER APPLE

 8        HAD PUT IN THE PUBLIC RECORD -- I DON'T KNOW IF THE COURT

 9        RECALLS THIS -- CONFIDENTIAL BUSINESS INFORMATION BACK IN

10        NOVEMBER, YOU KNOW, ONE OF WHICH THEY TOLD US ABOUT, ONE OF

11        WHICH THEY DIDN'T TELL US ABOUT.

12              SO WHEN MR. LEE SAYS, YOU KNOW, "THIS IS COMPLETELY

13        DIFFERENT, SAMSUNG KEPT IT FROM US," ET CETERA, THERE WAS ONE

14        INSTANCE WHERE WE FOUND IT IN THE PUBLIC RECORD, HAD TO CALL

15        THEM, AND THEY SAID, "OOPS, THAT'S RIGHT."  THAT'S ANOTHER

16        INSTANCE.

17              THEY PRODUCED A WITNESS WHO WAS TO TESTIFY ON MEASURES

18        THEY'D TAKEN TO PRESERVE THE CONFIDENTIALITY OF THE

19        INFORMATION.  WE WERE STONEWALLED.  HE COULDN'T TELL US ANY --

20        WE NOW HEAR, AFTER APPLE HAS PUT IN THE PUBLIC RECORD ALL THE

21        INFORMATION THAT'S THE SUBJECT OF THIS PROCEEDING, AND MORE,

22        WE'RE NOW TOLD THAT THEY HAVE A LEVEL -- THEY HAVE A -- THE

23        PHRASE WE HEAR REPEATEDLY IS MULTILEVEL REVIEW SYSTEM.  I THINK

24        IT'S NO ACCIDENT WE HEAR THAT BECAUSE WE WERE FAULTED FOR

25        HAVING A SYSTEM THAT WAS DEEMED TO BE INADEQUATE.
```

1          BUT WHEN THIS 30(B)(6) WITNESS WAS EXAMINED JUST DAYS

2     AFTER THEY HAD BEEN CAUGHT PUTTING OUR CONFIDENTIAL BUSINESS

3     INFORMATION IN THE PUBLIC RECORD, HE HAD NO INFORMATION THAT HE

4     COULD SHARE WITH US ABOUT ANY MULTILEVEL REVIEW PROCESS, OR ANY

5     REVIEW PROCESS AT ALL.

6          NOW, WHY IS THAT RELEVANT?  THAT'S RELEVANT, YOUR HONOR,

7     BECAUSE WE'RE FAULTED, YOU KNOW, AFTER WE DISCOVERED THERE WAS

8     A MISTAKE, FOR NOT GOING BACK AND FINDING OUT IF THERE HAD BEEN

9     A MISTAKE IN THE PAST.

10         AFTER THEY DISCOVERED THOSE MISTAKES IN NOVEMBER, THEY

11    DIDN'T GO BACK AND DISCOVER THEY HAD PUT EVERYTHING IN THE

12    PUBLIC RECORD ALREADY IN OCTOBER.  I MEAN, IT MAPS RIGHT ON

13    WHAT WE'VE BEEN FAULTED FOR DOING, HAVING AN INADEQUATE SYSTEM.

14         WE DON'T KNOW, TO THIS DAY, THEIR WITNESS WOULDN'T ANSWER

15    QUESTIONS ABOUT WHAT THIS MULTILEVEL REVIEW SYSTEM CONSISTS OF.

16         SO IN TERMS OF THE JUSTICE OF THE FEES, THE REASONABLENESS

17    OF THE FEES, I SUBMIT THE FACT THAT THEIR 30(B)(6) WITNESS WAS

18    NOT PREPARED, THAT THEY WASTED TIME WITH OUR 30(B)(6) WITNESS

19    WHO WE SPENT DAYS AND DAYS PREPARING, YOU KNOW, 90 --

20    INTERVIEWING 90 EMPLOYEES, IT'S A RELEVANT CONSIDERATION.

21         NOKIA'S RECORDS INCLUDE TIME SPENT ON MOTIONS NOT FILED.

22    IT'S -- IT'S DESCRIBED AS SUCH.  IT'S UNDISPUTED.  THEY

23    PREPARED MOTIONS THAT THEY DID NOT FILE.  THEY WANT FEES FOR

24    THAT.

25         THEY WANT FEES FOR SENDING AN ALSTON & BIRD LAWYER TO

1    KOREA WHEN WE TOLD THEM, "DON'T SEND HIM OVER, WE'RE NOT GOING

2    TO PUT HIM ON -- HE CAN'T COME ON THE SAMSUNG PREMISES."

3         HE FLEW OVER.  HE SAYS, "WELL, I SPOKE TO STROZ EVERY DAY

4    AT THE END OF THE DAY."  HE COULD HAVE DONE THAT BY PHONE.

5         MAYBE I'M GETTING TO THE MICRO LEVEL NOW, YOUR HONOR, BUT

6    THIS IS THE SORT OF THING THAT WE HAVE TO DEAL WITH.

7         THIS CASE, THIS WAS -- YOU KNOW, WHEN YOU'VE GOT THE OTHER

8    SIDE MAKING A MISTAKE, THIS WAS LITIGATED TO A FARE-THEE-WELL.

9    I USED THE PHRASE, THEY THINK THEY'RE PLAYING TENNIS WITHOUT A

10   NET BEFORE, AND IT STILL IS.

11        JUST YESTERDAY, NOKIA HAS FILED ANOTHER MOTION.  THEY

12   STILL WANT A LOG FROM STROZ.  THIS IS THE SUBJECT THAT WE

13   DISCUSSED A COUPLE OF MONTHS AGO.  WE HAVE A PENDING MOTION ON

14   IT.

15        STROZ HAS SAID, "WE DON'T HAVE PEOPLE THAT DO THIS.  WE'RE

16   AN E-DISCOVERY FIRM.  WE CAN DO IT, BUT WE'LL HIRE CONTRACT

17   LAWYERS.  WE NEED TO HIRE KOREAN SPEAKING LAWYERS TO NOW GO

18   READ ALL THESE DOCUMENTS," WHICH WE'VE READ AND WE'VE PROVIDED

19   A PRIVILEGE LOG THAT THE COURT, SADLY, HAS ALSO HAD TO READ.

20        THERE IS -- AS WE SAID BEFORE, AND AS WE SAID IN OUR

21   MOTION, THERE'S BEEN SUBSTANTIAL -- THERE'S BEEN COMPLIANCE

22   WITH THAT.  THAT INFORMATION, THE LOG CAME FROM STROZ.  THE

23   COURT HAS IT.  THERE'S NO POINT TO IT.

24        BUT YET, WE HAVE ANOTHER MOTION.

25        WHAT WE'VE ASKED FOR, YOUR HONOR, IN TERMS OF THE BLOCK

1    BILLING AND THE UNSPECIFIC ENTRIES IS THAT FOR EVERY ENTRY

2    THAT'S OVER THREE HOURS, THERE BE A 20 PERCENT REDUCTION.   THAT

3    IS OUR PROPOSAL.

4         THEY SAY, "WELL, QUINN, EMANUEL HAS SAID WE SPENT MUCH,

5    MUCH MORE" AND THAT THEIR FEES SHOULD BE ASSESSED IN LIGHT OF

6    THE FEES THAT QUINN, EMANUEL SPENT.

7         YOUR HONOR, WE HAD TO PREPARE 90 -- YOU KNOW, INTERVIEW 90

8    WITNESSES, WE HAD TO OVERSEE FORENSICS AROUND THE WORLD AT

9    DOZENS OF LOCATIONS.   WE HAD TO REVIEW A MILLION DOCUMENTS.

10        THE COURT WILL REMEMBER, IT WASN'T JUST -- INITIALLY THE

11   WAY THIS STARTED OUT, IT WASN'T JUST NOKIA, BUT WE WERE ALSO

12   REQUIRED TO REVIEW ERICKSON DOCUMENTS, SHARP DOCUMENTS, AND

13   PHILIPS DOCUMENTS.

14        WE PREPARED A 737-PAGE PRIVILEGE LOG AND SIX WITNESSES FOR

15   DEPOSITIONS.   OUR REPUTATION WAS ON THE LINE.   WE TOOK IT

16   REALLY SERIOUSLY.   WE HAD, BY MULTIPLES, MUCH MORE WORK TO DO

17   THAN THEY HAD TO DO.

18        I DON'T THINK THE QUINN, EMANUEL FEES ARE IN ANY SENSE A

19   PROPER BENCHMARK FOR WHAT IS APPROPRIATE FOR THEM TO CHARGE.

20        I'LL -- I'M PREPARED TO ANSWER ANY QUESTIONS THE COURT

21   HAS.

22             THE COURT:   HOW WOULD YOU HAVE THIS COURT GO ABOUT

23   EVALUATING EACH OF THEIR REQUESTS IN LIGHT OF ALL OF THE

24   ARGUMENTS YOU'VE JUST MADE?   DO YOU HAVE ANY SUGGESTION OR

25   FRAMEWORK TO OFFER SHORT OF LITERALLY A LINE-BY-LINE ANALYSIS?

```
1              MR. QUINN:  I HAVE TWO APPROACHES I'D SUBMIT, YOUR

2      HONOR.

3              THE COURT:  I'M ALL EARS, MR. QUINN.  WHAT DO YOU

4      HAVE IN MIND?

5              MR. QUINN:  ONE -- ONE WOULD BE TO SUGGEST THAT THEY

6      GO BACK AND BE MORE SPECIFIC -- THAT THE COURT GIVE US SOME

7      GUIDELINES AS TO WHAT THE COURT THINKS IS APPROPRIATE BASED ON

8      THE ISSUES THAT ARE RAISED, THEY GO BACK, GIVE US SOME DETAILED

9      ENTRIES SO WE CAN ACTUALLY PARSE THE ENTRIES, WE CONFER, AGREE

10     ON WHAT WE CAN AGREE ON, AND TO THE EXTENT THERE'S ANY DISPUTE

11     STILL REMAINING, WE SUBMIT THOSE TO THE COURT.  I MEAN, THAT'S

12     ONE WAY TO DO IT.

13          A MORE ROUGH AND READY WAY TO DO IT IS -- FRANKLY, I DON'T

14     THINK IT'S JUST THAT WE PAY FEES WHEN, IN THE MIDDLE OF THIS

15     PROCEEDING, ON OCTOBER 17TH, THEY INJECTED ALL THE INFORMATION

16     WE PROVIDED TO SAMSUNG --

17             THE COURT:  ALL RIGHT.  SO NOW WE'RE GETTING TO WHAT

18     YOU REALLY CAME HERE TO TELL ME.

19             MR. QUINN:  NO.  I THINK I WAS --

20             THE COURT:  I WANT TO MAKE SURE I -- IF THAT'S YOUR

21     POSITION, THAT'S FAIR.  I DON'T HAVE TO ACCEPT IT, BUT I

22     RESPECT YOUR RIGHT TO PRESENT IT.

23          ARE YOU HERE TO RELITIGATE THE ISSUE OF WHETHER YOU OUGHT

24     TO BE SANCTIONED IN THE FORM OF FEES AND COSTS?  BECAUSE IF SO,

25     I'D LIKE TO JUST HEAR IT STRAIGHT OUT SO I CAN DEAL WITH IT.
```

```
 1                    MR. QUINN:  ABSOLUTELY NOT, YOUR HONOR.

 2                    THE COURT:  OKAY.  THEN WHAT IS THIS YOU'RE

 3       PROPOSING?

 4                    MR. QUINN:  WELL, I DON'T -- FROM THE DATE THEY PUT

 5       THIS IN THE PUBLIC RECORD, OCTOBER 17TH, I THINK THERE SHOULD

 6       BE A CUT OFF.  WE'LL PAY FEES BEFORE THAT, BUT NOT AFTER THEY

 7       PUT IT IN THE PUBLIC RECORD.

 8                    THE COURT:  AND HAVE YOU DONE THE ROUGH MATH ON WHAT

 9       THAT WOULD DO TO NOKIA AND APPLE'S NUMBERS?

10                    MR. QUINN:  YEAH, I BELIEVE WE HAVE.

11              CAN I --

12                    THE COURT:  YOU MAY.

13         (DISCUSSION OFF THE RECORD BETWEEN SAMSUNG COUNSEL.)

14                    MR. QUINN:  I'M TOLD EXHIBIT 23 AND 24 TO OUR

15       SUBMISSION BREAKS OUT THE FEES BEFORE AND AFTER THAT DATE.

16       CORRECT?

17                    MR. SHELTON:  YES.

18                    THE COURT:  ALL RIGHT.  DO YOU HAVE ANYTHING ELSE YOU

19       WISH TO PRESENT, MR. QUINN?  I MAY HAVE SOME QUESTIONS FOR YOU

20       IN REBUTTAL.

21                    MR. QUINN:  I DON'T, YOUR HONOR.

22                    THE COURT:  THANK YOU.

23              MR. LEE, I'LL LET YOU GO FIRST AND THEN I'LL HEAR FROM

24       MR. ALLEN.

25                    MR. LEE:  YOUR HONOR, LET ME START FROM THE GRANULAR
```

1    AND THEN GO BACK UP TO THE GLOBAL.

2         WE SENT THE RECORDS THAT ARE BEFORE YOUR HONOR, BOTH THE

3    SUMMARY RECORDS AND THE TIME ENTRIES, OVER TO QUINN IN ADVANCE

4    OF THE SUBMISSION OF THE FIVE-PAGE LETTER, AND WE SAID, "HERE

5    ARE OUR ACTUAL TIME ENTRIES.  WE REDACTED A FEW THINGS, BUT

6    HERE THEY ARE, AND HERE ARE THE BILLING RATES AND HERE ARE THE

7    LAWYERS THAT WORKED ON THEM.  IF YOU HAVE CONCERNS AND NEED

8    MORE INFORMATION, LET US KNOW."

9         AND WE NEVER HEARD BACK.

10        SO I DON'T WANT YOUR HONOR TO THINK THAT WE JUST DROPPED

11   THIS ON YOU THINKING THAT WE WERE GOING TO ASK YOU TO WADE

12   THROUGH OUR TIME RECORDS, BECAUSE WE'RE NOT, AND WE ACTUALLY

13   PROPOSED TO THEM JUST WHAT MR. QUINN, I THINK, PROPOSED, AND WE

14   DIDN'T HEAR BACK BEFORE THE FILING OF THE LETTERS AND WE

15   HAVEN'T HEARD SINCE.

16        THE SECOND THING, YOUR HONOR, TO MOVE UP TO THE MORE

17   GLOBAL, I DON'T THINK MR. QUINN WOULD APPROACH THIS WITH THE

18   SAME DEGREE OF EMOTION IF YOU HADN'T FOUND THAT THERE WAS

19   SANCTIONABLE CONDUCT THAT WAS STRATEGIC AND WILLFUL.

20        I MEAN, HE'S QUOTED SOME PORTIONS OF YOUR HONOR'S ORDER,

21   BUT IF WE STAND BACK AND LOOK AT YOUR ORDER IN ITS ENTIRETY,

22   YOUR HONOR RECOUNTED THE CHRONOLOGY WHICH, AS FAR AS WE KNOW,

23   IS UNDISPUTED.  WE STILL HAVEN'T SEEN THE DOCUMENTS.

24        BUT THE END RESULT IS EXPLICIT FINDINGS BY YOUR HONOR

25   ABOUT STRATEGIC, WILLFUL, AND CONSCIOUS DECISIONS.

1        NOW, YOUR HONOR, TO BE SURE, FOUND THAT THE EVIDENCE OF

2   USE WAS, TO USE YOUR HONOR'S WORDS, SHAKY AND NOT SUFFICIENT TO

3   JUSTIFY SANCTIONABLE -- SANCTIONS FOR THAT.

4        BUT THERE WERE 220 VIOLATIONS OF THE PROTECTIVE ORDER AND

5   THERE WAS A FAILURE TO PROVIDE NOTICE OVER GENERALLY A YEAR

6   LONG PERIOD.

7        SO I THINK TO SUGGEST THAT THERE WASN'T SUCCESS BECAUSE A

8   MOTION HERE WAS LOST AND A MOTION THERE WAS LOST -- YOU KNOW,

9   YOUR HONOR, WHEN WE GOT THE PRIVILEGE LOGS, I LOOKED AT THEM

10  MYSELF.  NOW, IT'S NOT THE BEST USE OF MY TIME, BUT I'M ONE OF

11  THE FEW LAWYERS WHO'S BEEN INVOLVED IN THIS DISPUTE SINCE THE

12  DAY IT STARTED AND I THOUGHT -- AND I TRIED THE ITC CASE.  SO I

13  THOUGHT, MAYBE I CAN FIGURE OUT WHAT'S IN HERE BECAUSE I'VE

14  JUST BEEN HERE, AND I COULDN'T FIGURE OUT A THING.

15       AS YOUR HONOR WILL REMEMBER, WE GOT ITERATIVE PRIVILEGE

16  LOGS AND I DID THE SAME THING, AND I HAD THE PEOPLE WHO WORKED

17  ON THE ITC CASE DO THE SAME THING.

18       I WOULD SUGGEST, YOUR HONOR, TWO THINGS ON THIS QUESTION

19  OF SUCCESS.  WHEN THERE'S BEEN A FINDING OF A CONSCIOUS

20  VIOLATION THAT'S THE RESULT OF STRATEGIC, WILLFUL DECISIONS,

21  THAT RESULTS IN SANCTIONABLE CONDUCT, ONE FOR THE

22  DISSEMINATION, JUST FOR THE PROLIFERATION, AND THE SECOND FOR

23  THE FAILURE TO COMPLY WITH THE PROTECTIVE ORDER, THAT IS

24  SUCCESS.

25       NOW, YOUR HONOR FOUND SOME THINGS NO EVIDENCE OF USE, AND

1    THEN WHAT YOUR HONOR SAID IS, HERE IS A SET OF POSSIBLE

2    SANCTIONS.  SOME OF THEM I THINK ARE ASKING FOR THE SUN AND THE

3    MOON AND ARE NOT APPROPRIATE.  BUT SOME ARE.

4         AND BALANCING WHERE YOUR HONOR STARTED AT THE BEGINNING

5    AND YOUR HONOR MOVING THROUGH THIS VERY QUICKLY IN MY VIEW, YOU

6    CAME UP WITH A BALANCED SANCTION, WHICH WAS YOUR OPINION, PLUS

7    THE FEES.

8         YOUR HONOR COULD AWARD MORE THAN REASONABLE FEES.  YOU

9    COULD AWARD A PENALTY FOR SANCTIONABLE DISCOVERY CONDUCT.  IT

10   COULD BE FEES.  IT COULD BE AN AMOUNT.

11        IT DOESN'T HAVE TO BE WHAT SAMSUNG TODAY DESCRIBED AS

12   REASONABLE.

13        I THINK IF YOU STEP BACK FROM THE OPINION AND ASK YOURSELF

14   WHICH PARTIES WERE ULTIMATELY SUCCESSFUL, I THINK THE ANSWER IS

15   CLEAR.

16        AND JUST TO TAKE YOU BACK TO THE BEGINNING OF THIS HEARING

17   WHEN MR. QUINN WAS SAYING -- AT THE TIME WHEN WE WERE BEING

18   ACCUSED OF KEEPING THINGS FROM THE PUBLIC RECORD, HE WAS SAYING

19   THE NEWS REPORTS ARE QUINN THIS, QUINN THAT, QUINN THIS.

20        I TOLD MR. QUINN THIS A LONG TIME AGO.  I'VE BEEN CAREFUL

21   TO FOCUS ON THE PARTIES HERE, AND SAMSUNG IS THE PARTY.

22        I THINK, JUDGED BY THIS STANDARD, SEEKING RELIEF FROM YOUR

23   HONOR WAS WHAT WE NEEDED TO DO FOR OUR CLIENT.  WE DEMONSTRATED

24   220 VIOLATIONS, AND THE BALANCED SANCTION THAT YOUR HONOR --

25   WHILE WE ASKED FOR MORE, TO BE SURE, THE BALANCED SANCTION IS

```
 1    REASONABLE.

 2          ON THE FEES, YOUR HONOR, I DON'T THINK IT'S FAIR FOR

 3    EITHER OF US TO WANT YOU TO GO THROUGH THOSE TIME ENTRIES.

 4          WHAT WE DID IS THIS, AND WE TOLD QUINN THIS IN ADVANCE:

 5    WE TOOK OFF ALL TIME KEEPERS WHO WORKED LESS THAN 5,000 HOURS.

 6    WE JUST ELIMINATED THEM.

 7          WE IDENTIFIED ANOTHER $100,000 IN FEES THAT ARGUABLY WERE

 8    RELEVANT BOTH TO THE ITC AND HERE.

 9          AND, YOU KNOW, ULTIMATELY I WAS UNSUCCESSFUL IN URGING

10    YOUR HONOR TO LOOK AT WHAT HAD HAPPENED AT THE ITC TO SEE IF

11    THERE HAD BEEN USE THERE.  WE UNDERSTAND THAT'S AN ISSUE FOR

12    ANOTHER FORUM.

13          BUT, YOU KNOW, AT THE END OF THE DAY, THAT'S WHAT WE

14    PURSUED AND HOW WE PURSUED IT.

15          BUT WE TOOK ALL THAT TIME AND WE SET IT ASIDE.

16          MR. MCELHINNY WAS HERE FOR THE LAST HEARING WITH YOUR

17    HONOR.  WE HAVE NOT ASKED FOR ANY OF MORRISON & FOERSTER'S

18    TIME.  WE HAVEN'T ASKED FOR THE LEXIS NEXIS TIME BECAUSE, AS

19    YOUR HONOR WILL RECALL, IT WAS UNDIFFERENTIATED.  IT'S PRETTY

20    HARD TO ASSIGN BY TASK.  AND THERE ARE A NUMBER OF OTHER

21    EXPENSES WE HAVEN'T ASKED FOR.

22          SO WE ACTUALLY, WE TOOK YOUR HONOR'S ADMONITION ABOUT FIVE

23    PAGES AND THOUGHT IF WE COULD PUT SOMETHING OUT THAT WAS

24    REASONABLE AND FAIR, THAT ELIMINATED ALL OF THESE LITTLE THINGS

25    THAT YOU DEFINITELY SHOULDN'T GET INTO, WHICH GAVE THEM OUR
```

1    ACTUAL TIME ENTRIES, WHICH IS WHAT APPLE HAS USED TO PAY US,

2    THAT THAT SHOULD BE SUFFICIENT.

3         YOU KNOW, YOUR HONOR, I DON'T THINK EITHER OF US SHOULD

4    ASK YOU TO BE READING DEPOSITION TRANSCRIPTS OR WATCHING THE

5    VIDEOS.

6         BUT I WILL TELL YOU THIS:  I THINK THAT IF YOU DID WATCH

7    THE DEPOSITIONS, THE NINE THAT WERE TAKEN, YOU MIGHT COME AWAY

8    WITH A VERY DIFFERENT VIEW ABOUT WHO WAS COOPERATING IN

9    DISCOVERY AND WHO WASN'T.

10        NOW, I'M SURE THEY BELIEVE JUST WHAT THEY SAY.

11        BUT I CAN PROMISE YOU, WE BELIEVE THE CONTRARY.  AND WE

12   RAISED THE ISSUE WITH YOUR HONOR ABOUT PRIVILEGE ASSERTIONS,

13   ABOUT INSTRUCTIONS NOT TO ANSWER.  IT WAS LITIGATED FIERCELY.

14        NOW, THERE WERE NINE DEPOSITIONS THAT WERE TAKEN IN THAT

15   MONTH LONG PERIOD YOUR HONOR ORDERED.  WE HAD ONE LAWYER AT

16   SEVEN OF THE NINE.  IN ONE CASE WE HAD A YOUNGER LAWYER WITH AN

17   OLDER LAWYER.

18        ALMOST ALL OF THE DEPOSITIONS TOOK PLACE IN LOS ANGELES AT

19   THEIR REQUEST.  THE ONLY ONES THAT DIDN'T, ONE WAS TAKEN IN

20   PALO ALTO, APPLE'S WITNESS, AND THE OTHER IN FINLAND BECAUSE

21   THEY WERE NOKIA'S WITNESSES.  IT'S NOT LIKE ANYBODY WAS USING

22   THIS TO TRAVEL AROUND THE WORLD ON ANYBODY'S EXPENSE ACCOUNT.

23        ON THIS ISSUE OF PRIVILEGE, WE DID RAISE IT AT THE OUTSET,

24   YOUR HONOR.  BUT YOUR HONOR SAID, BECAUSE THEY OFFERED TO TURN

25   OVER THE DOCUMENTS, YOU FOUND THAT THE PRIVILEGE HAD BEEN

1    WAIVED.

2         BUT YOUR HONOR ALSO SAID, "BY THE WAY, THE DOCUMENTS I

3    RELY UPON THAT I'VE LOOKED AT AREN'T PRIVILEGED IN ANY EVENT."

4         SO I THINK, YOUR HONOR, THAT JUDGED BY ANY REASONABLE

5    STANDARD, WE WERE SUCCESSFUL.  WE WEREN'T SUCCESSFUL IN GETTING

6    EVERYTHING WE ASKED FOR.

7         YOUR HONOR ENTERED A BALANCED SANCTION THAT RECOGNIZED

8    THAT THERE WERE SOME THINGS THAT WE SAID WERE SANCTIONABLE THAT

9    YOU DIDN'T FIND, LACK OF USE, BUT THERE WERE OTHERS THAT WERE;

10   AND THEN WE TRIED TO GIVE YOU A REASONABLE PRESENTATION THAT

11   DID NOT REQUIRE YOU TO SORT THROUGH ANY ANYBODY'S TIME RECORDS

12   ON AN ITEM-BY-ITEM BASIS.

13        AND, YOUR HONOR, AT THE END OF THE DAY, I WOULD JUST SAY

14   THIS AS YOUR HONOR CONSIDERS WHAT THE APPROPRIATE WAY TO WALK

15   THROUGH THIS IS, AND THIS IS EVER SO SLIGHTLY REDUNDANT, BUT

16   I'D JUST ASK FOR TWO MINUTES.

17        THIS IS A CIRCUMSTANCE WHERE THE VIOLATIONS OF THE

18   PROTECTIVE ORDER WERE KNOWN TO THE OTHER SIDE, CLIENT AND

19   LAWYER, IN 2012; A CIRCUMSTANCE WHERE A MOTION WAS FILED BEFORE

20   YOUR HONOR ON JULY 1ST, 2013; A CIRCUMSTANCE WHERE THERE WAS A

21   PROPOSAL TO DESTROY THE DOCUMENTS THE SECOND WEEK OF JULY 2013,

22   AND THEN NOTICE TO US ABOUT TWO WEEKS LATER; AND IT'S A

23   CIRCUMSTANCE IN WHICH WE WERE TOLD CONSISTENTLY, "NO, TRUST US,

24   WE'LL GIVE YOU WHAT YOU'RE ENTITLED TO."  THAT WAS THE FIRST

25   SET OF LETTERS.

```
1         AND AS YOUR HONOR FOUND, THEY WERE INCOMPLETE.  THAT'S WHY

2    YOU ORDERED THE DISCOVERY.

3         AS A RESULT OF THAT DISCOVERY, THERE WERE 150 ADDITIONAL

4    VIOLATIONS OF THE PROTECTIVE ORDER IDENTIFIED.  THAT'S WHAT

5    OCCURRED.

6         NONE OF THIS, YOUR HONOR, HAS ANYTHING TO DO WITH WHAT

7    MR. QUINN SAID ABOUT OUR PUTTING SOMETHING OUT IN OCTOBER 2013.

8    THERE WAS ONE PAGE OF A 79-PAGE DOCUMENT THAT WAS IMPROPERLY

9    REDACTED.  AS FAR AS WE KNOW -- AND AGAIN, I'M SAYING AS FAR AS

10   WE KNOW BECAUSE THAT'S AS FAR AS I KNOW -- NO ONE EVER SAW IT.

11   AND, YOUR HONOR, WE NEVER SAW IT.

12        IF WE HAD AND WE THOUGHT THEY HAD POSTED IT ON THE

13   INTERNET OR TAKEN OUT A BILLBOARD, WE WOULD HAVE BEEN BACK IN

14   HERE TELLING YOUR HONOR, "WE'VE DISCOVERED A SET OF FACTS, WE

15   SHOULDN'T PROCEED."

16        THE IDEA THAT AN EVENT OCCURRED THAT NO ONE DISCOVERED

17   UNTIL THIS FEBRUARY, THAT WE ACTED ON WITHIN 24 HOURS WITH THE

18   COURT, WITH OPPOSING COUNSEL, WITH THE AFFECTED PARTIES, THAT'S

19   NOT A VIOLATION OF THE PROTECTIVE ORDER, THAT THAT SOMEHOW

20   SHOULD DIMINISH THE FEES SEEMS MORE UNREASONABLE THAN

21   REASONABLE TO ME.

22        AND THE LAST THING, YOUR HONOR, I WOULD SAY IS THIS:

23   SOMETIMES WHEN YOU GET IN THESE SITUATIONS, THERE IS A TENDENCY

24   TO MAKE THE VICTIM THE ACCUSED.  WE DIDN'T VIOLATE THE

25   PROTECTIVE ORDER.  WE DID HAVE TO CALL UPON YOUR HONOR FOR YOUR
```

1    ASSISTANCE.

2        BUT IT'S NOKIA AND APPLE -- AND I TAKE YOUR HONOR'S

3    DETERMINATION ON USE ON ITS FACE AND WE ACCEPT IT.

4        AT THE END OF THE DAY, WE WERE THE VICTIMS OF THE

5    VIOLATION OF THE PROTECTIVE ORDER.  WE WERE THE VICTIMS OF THE

6    DISSEMINATION.

7        MAKING THE VICTIM OF THE ACCUSED IN THIS CIRCUMSTANCE

8    MAKES LITTLE SENSE TO ME.

9        THE COURT:  THANK YOU, MR. LEE.

10       MR. ALLEN, I'D LIKE TO HEAR FROM YOU AS WELL, SIR.

11       MR. ALLEN:  YOUR HONOR, ONE OF THE THINGS THAT I'M

12   GOING TO TALK ABOUT IS THE FEES.  IF YOU WANT TO TALK ABOUT THE

13   HISTORY OF THE SANCTIONS PROCESS, I'M HAPPY TO TALK ABOUT THAT.

14       THE COURT:  NO, I THINK I'M WELL AWARE OF THAT,

15   MR. ALLEN.

16       (LAUGHTER.)

17       MR. ALLEN:  I THINK YOU ARE.

18       BUT I DID TAKE TO HEART YOUR POINT THAT THE ORDER, AS WE

19   READ IT, SAID THAT ALL FEES AND COSTS RELATED TO THIS ACTION

20   WERE TO BE PAID, AND WE TENDERED ALL FEES AND COSTS RELATED TO

21   THIS ACTION.

22       ONE OF THE OPTIONS THAT MR. QUINN DESCRIBED WHEN HE WAS UP

23   WAS THAT, THAT HE THOUGHT IT WAS ADVISABLE, ONE OF THE TWO

24   OPTIONS, WAS FOR US TO GO BACK AND PRODUCE MORE DETAILED

25   RECORDS AND THEN THE PARTIES COULD MEET AND CONFER AND FIGURE

1    OUT WHAT THEY COULD AGREE ON AND WHAT THEY COULDN'T AGREE ON.

2         WE TRIED THAT, AND I THINK IT'S DETAILED IN MY AFFIDAVIT

3    SUPPORTING OUR REQUEST FOR FEES.

4         WE SENT -- AND JUST SO THAT YOU KNOW, THE SPREADSHEET THAT

5    WE TENDERED IS THE SPREADSHEET OFF OF OUR ACTUAL INVOICES TO

6    OUR CLIENT, IT'S NOT IN THE EXACT SAME FORM, BUT THE ENTRIES

7    HAVE BEEN EDITED ONLY TO TAKE OUT WORK PRODUCT AND PRIVILEGE.

8         WE SENT THOSE TO QUINN, EMANUEL.  WE SCHEDULED A CALL TO

9    MEET WITH THEM.  THE RESULT OF THAT CALL WAS NOTHING, THAT

10   THERE WAS NO --

11         THE COURT:  CAN I ASK YOU ABOUT THAT, MR. ALLEN?

12   BECAUSE I WAS STRUCK BY THAT DISCUSSION IN THE PAPERS.

13         WHO WAS ON THIS CALL AND WHAT HAPPENED?  HOW COULD NOTHING

14   HAPPEN DURING THE CALL?

15         MR. ALLEN:  WELL, THERE WAS LOTS OF TALKING.  IT WAS

16   MR. BECHER AND -- I APOLOGIZE, YOUR HONOR.  I DON'T RECALL IF

17   THERE WAS ANOTHER PERSON FROM QUINN, EMANUEL WHO WAS ON THE

18   PHONE.

19         THERE -- WHEN I SAY "NOTHING," WHAT I MEAN IS THERE WAS NO

20   GIVE AND TAKE, LIKE "WE THINK THIS IS REASONABLE, WE DON'T

21   THINK THAT IS REASONABLE."  THERE WAS NOTHING THAT THEY THOUGHT

22   WAS REASONABLE.

23         THE COURT:  SO THEY WERE NOT WILLING TO PAY EVEN A

24   PENNY?

25         MR. ALLEN:  CORRECT, YOUR HONOR.  WE ASKED THAT VERY

1    QUESTION.  "IS THERE ANY OFFER THAT YOU WOULD MAKE THAT WE

2    OUGHT TO CONSIDER?  IS THERE ANYTHING WE OUGHT TO TALK ABOUT?"

3        AND QUITE HONESTLY, VERY MUCH OF THE CONVERSATION DEALT

4    WITH THE DISCLOSURE THAT WE'VE BEEN TALKING ABOUT HERE ALL DAY

5    LONG TODAY.

6        IT'S GOING TO COME AS NO SHOCK TO YOUR HONOR, I DON'T

7    THINK ANYBODY IS SUGGESTING OTHERWISE -- ALTHOUGH MR. QUINN

8    SUGGESTED, HE KEEPS TALKING ABOUT THEY DID THIS, THEY DID

9    THAT -- I DON'T THINK ANYBODY IS SUGGESTING THAT NOKIA HAS DONE

10   ANYTHING TO PUT ANY INFORMATION IN ANY FORM ON THE PUBLIC

11   RECORD.

12       BUT MUCH OF THE CALL WAS SPENT TALKING ABOUT THAT.

13       AND IN FAIRNESS, OTHER PARTS OF THE CALL WERE SPENT

14   TALKING ABOUT THINGS LIKE WHETHER OR NOT IT WAS APPROPRIATE TO

15   HAVE A LAWYER IN KOREA AT THE KICK OFF OF THE REVIEW OVER THERE

16   WITH STROZ AND WHETHER OR NOT THERE WERE CHARGES EMBEDDED IN

17   THE BILLINGS FOR MOTIONS THAT WEREN'T FILED.  SO THOSE WERE TWO

18   OF THE ISSUES THAT WE TALKED ABOUT.

19       BUT AT THE END OF THE DEBATE, THE QUESTION WAS PUT, "IS

20   THERE -- IS THERE SOME PLACE YOU'RE SUGGESTING WE SHOULD GO

21   THAT WE'RE NOT AT YET?"

22       AND THE ANSWER WAS, "LET ME TALK TO MY FOLKS, I'LL GET

23   BACK TO YOU."

24       THAT WAS -- I APOLOGIZE AGAIN, YOUR HONOR, I DON'T RECALL

25   THE EXACT DATE, BUT IT WAS EITHER THE THURSDAY OR FRIDAY BEFORE

```
 1    THE MONDAY FILING THAT WAS SCHEDULED AND THAT WAS THE LAST

 2    CONVERSATION WE HAD ON THIS ISSUE.

 3              THE COURT:  SO SOMETHING LIKE THE 13TH OR 14TH OF

 4    FEBRUARY?

 5              MR. ALLEN:  I BELIEVE -- THAT'S CORRECT, BECAUSE THE

 6    FRIDAY BEFORE WAS VALENTINE'S DAY.  SO IT WOULD HAVE BEEN ON

 7    THE 13TH OR 14TH ROUGHLY, AND IT MIGHT HAVE BEEN EVEN EARLIER

 8    IN THE WEEK THAN THAT, BUT IT WAS THE WEEK BEFORE THE

 9    SUBMISSION WAS MADE ON THE 17TH OF FEBRUARY.

10         THE -- AND LET ME JUST TAKE THOSE TWO ISSUES AND THEN I

11    WANT TO TALK ABOUT THE RECORDS AND THE FORMAT THEY'RE IN AND

12    THEN I'LL SIT DOWN.

13         MR. QUINN -- AND I WILL SAY AT THE OUTSET THAT MR. QUINN

14    WASN'T INVOLVED IN ANY OF THE DISCUSSIONS THAT WE HAD ABOUT WHO

15    SHOULD GO TO FINLAND OR WHO SHOULD GO TO KOREA AND WHO SHOULD

16    DO WHAT.  I WAS INVOLVED IN THOSE DISCUSSIONS WITH MR. BECHER

17    AND MR. KOPPELMAN, WHO IS THE LAWYER WHO'S HERE TODAY WHO WENT

18    TO KOREA.

19         THERE WAS A LOT OF DISCUSSION ABOUT -- YOU KNOW, WHEN I

20    SAY "A LOT," I DON'T MEAN MANY DAYS BECAUSE IT WAS A FAIRLY

21    COMPRESSED SCHEDULE, BUT THERE WAS A FAIR AMOUNT OF DISCUSSION

22    ABOUT WHETHER OR NOT IT MADE SENSE TO HAVE SOMEONE FROM OUR

23    FIRM BE THERE AT THE KICK OFF OF THAT REVIEW, WHICH I THINK

24    LASTED FOR THE BETTER PART OF A MONTH AND A HALF, AND I THINK

25    WE WERE THERE FOR ABOUT FOUR DAYS.
```

```
 1          MR. QUINN SUGGESTED THAT -- I THINK WHAT HE SAID WAS "WE
 2    TOLD THEM NOT TO SEND HIM."  THAT'S INACCURATE.  IT WAS A
 3    CONSENSUS THAT WAS REACHED WITH QUINN, EMANUEL BEFORE THE
 4    LAWYER GOT ON THE PLANE AND FLEW TO KOREA.
 5          SO, I MEAN, THAT'S JUST -- I THINK THAT'S DETAILED IN
 6    MR. KOPPELMAN'S DECLARATION, WHICH WAS ALSO FILED IN CONNECTION
 7    WITH OUR PAPERS.
 8          THE ADDITIONAL ARGUMENT THAT MR. QUINN OFFERED WAS THAT
 9    THERE WERE -- THAT THERE WAS WORK COMMITTED TO MOTIONS THAT
10    WERE NOT FILED.
11          THERE WAS WORK COMMITTED TO ADDITIONAL MOTIONS THAT WERE
12    NOT FILED, BUT THE WORK THAT WAS COMMITTED TO THOSE MOTIONS WAS
13    INCORPORATED IN THE FINAL PLEADINGS THAT WERE FILED ON THE
14    SCHEDULE THAT YOUR HONOR OFFERED.
15          LET ME TALK FOR JUST A SECOND ABOUT BLOCK BILLING.
16    WHATEVER YOU WANT TO SAY ABOUT OUR ENTRIES AS REFLECTED ON THE
17    SPREADSHEET THAT WE'VE SUBMITTED TO THE COURT, NONE OF THEM ARE
18    BLOCK BILLING AND NONE OF THEM COME CLOSE TO BLOCK BILLING.  I
19    THINK QUINN SAID 11 TIMES IN THEIR LETTER THAT THE SUBMISSION
20    WAS BLOCK BILLING AND THAT ANYTHING OVER THREE HOURS OUGHT TO
21    BE CONSIDERED BLOCK BILLING.
22          IT'S NOT BLOCK BILLING.  WE HAVE 1341 UNIQUE TIME ENTRIES.
23    MORE THAN HALF OF THOSE ARE FOR ONE HOUR OR LESS.  THE AVERAGE
24    ENTRY IS TWO HOURS.
25          THERE ARE NO SEMICOLONS ON ANY OF THESE TIME ENTRIES.
```

1    THERE'S NO LITANY OF FUNCTIONS FOLLOWED BY A TIME AMOUNT.  THEY

2    ARE IN THE FORMAT THAT'S REQUIRED BY OUR CLIENT BECAUSE WE,

3    OTHER THAN EDITING THEM, WE'VE SIMPLY SUBMITTED THEM.  THEY

4    ARE -- THEY'RE THE ANTITHESIS OF BLOCK BILLING.  IT WAS TASK

5    DRIVEN BILLING THAT IS REQUIRED BY OUR CLIENT.

6         SO IT'S -- YOU CAN SAY IT AS MANY TIMES AS YOU WANT, BUT

7    IT IS NOT EVEN CLOSE TO WHAT THE COURT DEFINES AS BLOCK

8    BILLING.

9         FIFTY-FOUR ENTRIES THAT WE'VE ENTERED ARE FOR EIGHT HOURS

10   OR MORE.  LET ME OFFER YOU AN EXAMPLE.  I SPENT THE BETTER PART

11   OF 12 HOURS IN A CONFERENCE ROOM IN FINLAND WITH MR. ZELLER.  I

12   DON'T THINK THAT'S BROKEN OUT.  I THINK THAT'S A SINGLE ENTRY.

13   AND I MAY BE OFF.  IT MAY NOT -- IT MAY BE 11.5 OR WHATEVER IT

14   IS, BUT WE SPENT ALL DAY TOGETHER.  THAT'S A SINGLE ENTRY.

15        THERE WERE DAYS OF DEPOSITIONS IN LOS ANGELES THAT YOU'VE

16   HEARD DESCRIBED.  THOSE ARE SINGLE ENTRIES.

17        THERE'S NO REASON TO BREAK OUT SOMETHING JUST BECAUSE IT'S

18   MORE THAN THREE HOURS, AND I THINK THE SUGGESTION THAT YOU

19   BREAK OUT SOMETHING JUST BECAUSE IT'S MORE THAN THREE HOURS IS

20   UNFOUNDED AND IT'S NOT HOW WE PRACTICE LAW.

21        WE PRACTICE LAW BASED UPON TASKS, AND THE SUBMISSION THAT

22   WE MADE DESCRIBED THOSE TASKS.

23        YOUR HONOR, I HAD ONE OTHER THING THAT -- I APOLOGIZE.

24   I'M LOOKING AT MY NOTES.

25        AT THE BEGINNING OF HIS DISCUSSION, MR. QUINN SAID, "WE

1    UNDERSTAND WE'RE GOING TO PAY SOMETHING.  WE'RE TRYING TO

2    FIGURE OUT WHAT THE RIGHT AMOUNT IS."

3         WE TRIED TO WORK WITH THEM TO FIGURE OUT WHAT THE RIGHT

4    AMOUNT WAS AT THE BEGINNING OF THIS PROCESS.  AS I'VE

5    PREVIOUSLY DESCRIBED, THAT PROCESS WENT NOWHERE FOR US.  I

6    MEAN, IT LITERALLY WENT NOWHERE.

7         WE SUBMITTED DETAILED TASK DRIVEN TIME RECORDS FOR YOUR

8    HONOR.  NOT A SINGLE ONE OF THEM IS A BLOCK BILLING RECORD.

9         I'M HAPPY TO TALK ABOUT ANY OF THOSE TIME ENTRIES IN

10   DETAIL IF YOUR HONOR WOULD LIKE.  I SUSPECT YOU DON'T.

11        BUT I THINK WE'VE DONE EVERYTHING THAT WE'RE SUPPOSED TO

12   DO IN THE FORMAT THAT WE'RE SUPPOSED TO DO IT, AND I'M -- I

13   RECOGNIZE THAT THIS IS A PAINFUL PROCESS, BUT WE HAVE COMPLIED

14   WITH THE COURT'S ORDER.

15        I THINK THAT THE THEME HERE, AT LEAST FROM MY CLIENT'S

16   PERSPECTIVE, IS THE DISCLOSURE HURT US.  IT CAUSED US A

17   PROBLEM.

18        THIS PROCESS SHOULDN'T LEAVE US IN A WORSE PLACE THAN WE

19   WERE BEFORE IT STARTED, AND THAT'S THE ONLY RELIEF WE'RE ASKING

20   FROM THE COURT AT THIS STAGE.

21             THE COURT:  I'M CURIOUS, MR. ALLEN, AND I DON'T KNOW

22    IF THIS IS A FAIR QUESTION, BUT I'LL ASK IT ANYWAY.  YOU KNOW,

23    I WENT THROUGH A LOT OF TROUBLE TO WRITE AN OPINION IN THIS

24    VERY SAME DISPUTE ARTICULATING MY VIEWS ON WHAT QUALIFIED AS

25    GOOD BILLING PRACTICES FOR PURPOSES OF FEE AWARDS AND WHAT

```
1      AMOUNTS WERE LEGITIMATE.

2           DID ANYBODY ACTUALLY BOTHER TO READ IT OR DISCUSS IT WITH

3      THE OTHER SIDE OR APPLY IT TO THIS?  I MEAN, IT SEEMED TO ME

4      THERE'S SOME FAIRLY USEFUL PRECEDENT ON THIS VERY DOCKET THAT

5      MIGHT HAVE BEEN HELPFUL HERE, AND MY IMPRESSION IS IT DIDN'T

6      MATTER A LICK TO ANYBODY.

7           MR. ALLEN:  YOUR HONOR, THAT'S NOT AN UNFAIR

8      QUESTION, AND I JUST HAVE TO TAKE EXCEPTION TO IT.  WE DID

9      READ -- WE READ YOUR HONOR'S ORDERS AS, AS -- IN ADDITION TO

10     OTHER ORDERS, AND THAT'S WHY WE TRIED TO GIVE LINE-BY-LINE,

11     TASK DRIVEN ENTRIES, WHICH, AS I UNDERSTAND, WERE THE SORT OF

12     HALLMARK OF WHAT YOU WERE LOOKING FOR IN YOUR EARLIER ORDERS.

13          THIS IS NOT, YOU KNOW, LAWYER X WORKED ON THE SANCTION

14     MOTION AND SPENT 40 HOURS.  THIS IS, I SPENT .6 HOURS WORKING

15     ON THIS ELEMENT OF IT, OR DRAFTING OR WHATEVER THE TASK WAS.

16          THE COURT:  AND MR. ALLEN, WHEN YOU HEAR MR. QUINN

17     TALK ABOUT MOTIONS THAT WERE DRAFTED BUT NOT FILED, I'D LIKE TO

18     BETTER UNDERSTAND YOUR JUSTIFICATION FOR CLAIMING FEES FOR

19     THOSE EFFORTS.

20          MR. ALLEN:  YOUR HONOR, THE ONE THAT I THINK THAT HE

21     IS REFERRING TO IS A MOTION THAT WAS DRAFTED TO ENFORCE THE

22     STIPULATED ORDER THAT WAS ENTERED BY THIS COURT ON OCTOBER 2

23     THAT IS THE PROCESS THAT, THAT MR. QUINN TOUTED AS THE SORT OF

24     REASONABLE APPROACH TO THIS.

25          AS YOU KNOW FROM OUR RECENT FILING, IT STILL HAS NOT BEEN
```

1    COMPLIED WITH.  THAT'S A PROBLEM FOR US.  BUT THAT'S, AS YOU

2    POINT OUT, FOR ANOTHER DAY.

3         THE WORK THAT WAS PUT INTO THAT MOTION, BECAUSE WHILE WE

4    WERE WORKING ON THAT MOTION, YOU ENTERED AN ORDER SETTING OUT

5    THE BRIEFING SCHEDULE ON SANCTIONS, SO WE SIMPLY FOLDED THE

6    WORK INTO THE BRIEFING MOTION ON SANCTIONS.  I'M UNAWARE THAT

7    ANY OF THAT WORK WAS SITTING ON THE SHELF OR TOSSED ASIDE.

8         THAT'S THE UNFILED -- THAT'S THE SINGLE UNFILED MOTION

9    THAT I BELIEVE HE'S REFERRING TO.

10        THE COURT:  AND ONE FURTHER QUESTION FOR YOU,

11   MR. ALLEN.  I UNDERSTOOD FROM YOUR EARLIER COMMENT THAT YOU

12   AGREE WITH MR. LEE THAT THIS COURT'S AUTHORITY TO AWARD FEES

13   AND COSTS IS NOT LIMITED TO REASONABLE FEES AND COSTS UNDER

14   RULE 37.  CORRECT?

15        MR. ALLEN:  I DO AGREE WITH THAT, YOUR HONOR.  I WILL

16   JUST -- AND MAYBE I OUGHT TO JUST ALWAYS AGREE WITH THE COURT

17   AND SHUT UP AND SIT DOWN.  I BELIEVE WE ATTEMPTED TO SUBMIT --

18   WE DIDN'T ATTEMPT TO SUBMIT, WE SUBMITTED FEES AND COSTS THAT

19   WE BELIEVED WERE REASONABLE AND JUSTIFIED UNDER THE

20   CIRCUMSTANCES OF THIS ISSUE.

21        THE COURT:  ALL RIGHT.  THANK YOU, MR. ALLEN.

22        MR. ALLEN:  THANK YOU, YOUR HONOR.

23        THE COURT:  MR. QUINN, DO YOU WANT TO RESPOND?

24        MR. QUINN:  YOUR HONOR, THERE IS A CASE ADDRESSING

25   THE ISSUE ABOUT WHETHER -- A NINTH CIRCUIT CASE ABOUT WHETHER

1  THE COURT CAN AWARD FEES UNDER RULE 37(B)(2) THAT EXCEED

2  REASONABLE EXPENSES IN ATTORNEYS' FEES, IT'S TOTH VERSUS TRANS

3  WORLD AIRLINES, 862 F.2D 1381, WHERE THE COURT SAYS THAT

4  EXPENSES INCURRED THAT ARE NOT IN THE CONTEXT OF REASONABLE

5  FEES AND EXPENSES ARE OUTSIDE THE SCOPE OF THE COURT'S POWER

6  UNDER THAT RULE.

7  YOU KNOW, I JUST HAVE TO RESPOND AGAIN, YOUR HONOR -- AND

8  I'M SURPRISED MR. LEE BROUGHT IT UP -- THAT WE PROPOSED TO

9  DESTROY THE DOCUMENTS.

10  YOU KNOW, THE PROTECTIVE ORDER SAYS IF THERE'S AN

11  INADVERTENT DISCLOSURE, YOU KNOW, YOU DESTROY ANY -- YOU

12  DESTROY THE INFORMATION THAT SHOULDN'T HAVE GONE OUT.

13  WHAT HE'S REFERRING TO, I HOPE THE COURT RECALLS, WAS WE

14  APPROACHED NOKIA AND SAID "DO YOU WANT US TO DO WHAT THE

15  PROTECTIVE ORDER SAYS HERE?"  THEY SAID NO, SO WE DIDN'T.

16  SO IT'S NOT FAIR TO SAY, IN OPEN COURT, IN FRONT OF THE

17  PRESS, THAT QUINN, EMANUEL AND SAMSUNG PROPOSED TO DESTROY THE

18  DOCUMENTS.

19  I DIDN'T REALLY -- I LISTENED TO MR. LEE ABOUT THE SUCCESS

20  THAT WAS ACHIEVED HERE.  YOU KNOW, WE -- BY MR. BECHER'S LETTER

21  IN AUGUST, WE HAD LAID OUT THAT THIS DISCLOSURE HAD BEEN MADE

22  AND THAT WE WERE AGREEING, WE STIPULATED, STROZ IS GOING TO GO

23  DO WHAT THEY ULTIMATELY DID AND TURNED UP ALL THOSE OTHER

24  NAMES.

25  SO THAT'S WHERE MATTERS STOOD, YOU KNOW, WITHOUT THESE

```
1        EFFORTS WHICH THEY'RE TOUTING NOW AS SUCCESS.

2            YOU KNOW, WE -- AGAIN, YOUR HONOR, WE WERE FAULTED FOR

3        HAVING AN INADEQUATE SYSTEM, AND WHEN WE STUMBLED ACROSS THE

4        FACT THAT, WAIT A SECOND, THERE WAS A DISCLOSURE, THAT

5        SHOULDN'T HAVE HAPPENED, AND THAT WE SHOULD HAVE LOOKED BACK

6        AND SEEN IF IT HAPPENED BEFORE.

7            AND I'LL JUST REPEAT, I DIDN'T HEAR AN ANSWER TO THIS FROM

8        MR. LEE, THEY KNEW IN NOVEMBER, THEY HAD TWICE PUT CBI ON THE

9        RECORD.  SHOULD THEY BE HELD TO THE SAME STANDARD AS SAMSUNG TO

10       GO BACK AND LOOK AND FIND OUT IF IT HAPPENED BEFORE IN THE

11       RECENT PAST, INCLUDING SPECIFICALLY THESE LICENSE TERMS?

12           IF THEY HAD, IT HAD JUST COME BACK THE MONTH BEFORE, WE

13       ALL NOW KNOW WHAT THEY WOULD HAVE FOUND.

14           I -- MR. ALLEN IS CORRECT, I WASN'T ON THAT PHONE CALL,

15       SEEMINGLY A FRUITLESS CALL WHERE THERE WAS A DISCUSSION ABOUT

16       FEES.  MR. SHELTON WAS, MR. BECHER WAS, HE E-MAILED WITH

17       MR. BECHER, WHO'S IN KOREA RIGHT NOW DOING THE MEDIATION, AND

18       HE CONFIRMS WHAT MR. SHELTON HAS TOLD ME.  THERE WAS NO

19       STATEMENT THAT WE WON'T PAY A PENNY.

20           SO THERE'S A DIFFERENCE IN RECOLLECTION ABOUT WHAT WAS

21       SAID.  OUR FOLKS SAY, "NOKIA SAID 'WE'RE NOT PREPARED TO ANY

22       SUBSTANTIAL -- TO MAKE ANY SUBSTANTIAL DISCOUNT.'"  SO IT'S

23       VERY MUCH A HE SAID, HE SAID SITUATION THERE.

24           THE MOTION DESCRIBED THAT THEY DIDN'T FILE THAT'S

25       DESCRIBED IN THEIR PAPERS IS A MOTION FOR CONTEMPT.  I GUESS
```

1    THEY'RE TELLING US NOW THAT THEY MADE USE, GOOD USE OF THAT

2    WORK PRODUCT.

3         I THINK THE COURT CAN, YOU KNOW, TAKE SOME CONSIDERATION

4    OF THE FACT THAT THERE WAS WORK PRODUCT THERE FOR A MOTION THAT

5    WAS NEVER FILED.

6         THE COURT SAID THAT IT MIGHT HAVE SOME QUESTIONS FOR ME.

7    I'D BE HAPPY TO TRY TO ADDRESS THEM, YOUR HONOR.

8              THE COURT:  WELL, THE ONE QUESTION I HAVE FOR YOU,

9    MR. QUINN, IS SINCE WE SEEM TO BE STUMBLING BACK INTO THE

10   MERITS OF THE SANCTION ITSELF, RATHER THAN WHAT I HOPED THIS

11   WOULD BE FOCUSSED ON, WHICH IS HOW MUCH AND WHEN, IT SEEMS TO

12   ME THAT AN ALTERNATIVE APPROACH I COULD HAVE CONSIDERED, BUT

13   THAT THE PARTIES CERTAINLY DIDN'T SPEND MUCH TIME ON, WAS

14   RATHER THAN SIMPLY MAKING AN AWARD OF FEES AND COSTS, SIMPLY

15   FIND SAMSUNG AND/OR YOUR FIRM IN CIVIL CONTEMPT AND MAKE AN

16   AWARD IN THAT REGARD SINCE NOW WE'RE THROWING, OR AT LEAST

17   WE'RE CRACKING OPEN THE DOOR TO EXACTLY WHAT SANCTIONS MAKE

18   SENSE.  DO YOU HAVE ANY REACTION TO WHETHER THAT'S APPROPRIATE

19   UNDER THE CIRCUMSTANCES?

20             MR. QUINN:  YOUR HONOR, I'M NOT CRACKING OPEN THAT

21   DOOR.  I'M NOT SAYING THE COURT SHOULD NOT IMPOSE FEES,

22   REASONABLE FEES.  I'VE NEVER SAID THAT.

23             THE COURT:  OKAY.  SO WE'RE ON THE SAME PAGE THEN

24   THAT YOU'RE NOT CHALLENGING OR DISPUTING THAT SOME FEE AND COST

25   AWARD IS APPROPRIATE HERE?

```
 1              MR. QUINN:  I AM NOT, YOUR HONOR, AND I -- IF I EVER
 2       SAID ANYTHING THAT SUGGESTED OTHERWISE, I APOLOGIZE TO THE
 3       COURT.
 4           IN TERMS OF CONTEMPT, YOU KNOW, I THINK WE HAVE BRIEFED
 5       THAT ISSUE.  THERE ARE SOME ISSUES ABOUT JURISDICTION AND THE
 6       LIKE AND -- BUT I AM NOT CHALLENGING THAT THE FEES ARE OWING.
 7       I THOUGHT THAT WAS THE FIRST THING THAT I SAID, AND I HAVE
 8       NOT -- I HAVE NEVER -- I DON'T THINK I'VE EVER DISPUTED THAT A
 9       FEE AWARD IS APPROPRIATE IN THIS CASE.
10              THE COURT:  ALL RIGHT.  I THINK I HAVE YOUR POSITION.
11           MR. LEE, DO YOU WANT TO HAVE A FURTHER WORD, OR MR. ALLEN?
12              MR. LEE:  VERY QUICKLY, YOUR HONOR.  WE DID TRY -- AT
13       PAGE 2 OF OUR LETTER, WE TRIED TO CONFORM OUR SUBMISSION TO
14       YOUR HONOR TO DOCKET ENTRY 1935 WHERE YOUR HONOR ADDRESSED
15       BILLING RATES AND THE DESCRIPTIONS OR BREAKDOWNS OF HOURS.
16       IT'S AT THE BOTTOM OF THE FIRST PARAGRAPH ON THE SECOND PAGE.
17       WE TRIED TO CONFORM OUR SPECIFIC ENTRIES.
18           SECOND POINT -- JUST TWO LAST POINTS.  THE -- MR. QUINN'S
19       POINT ABOUT THE DOCUMENTS AND COMPLYING WITH THE PROTECTIVE
20       ORDER, THAT MAY BE TRUE, BUT THEY SHOULD HAVE GIVEN US NOTICE
21       FIRST.  THE PROTECTIVE ORDER ALSO SAID GIVE NOTICE TO THE OTHER
22       PARTY FIRST, AND IF HE THEN WANTED TO HAVE THAT CONVERSATION
23       WITH BOTH PARTIES WHO WERE AFFECTED, THAT WOULD BE THE
24       COMMONSENSICAL THING TO DO, AND THAT'S WHAT MY COMPLAINT IS.
25              AND THE LAST THING IS THIS, YOUR HONOR:  I DON'T THINK --
```

1    AND I WANT TO GO BACK AND AGREE WITH SOMETHING MR. ALLEN SAID.

2    I DON'T THINK EITHER OF US THINKS YOU NEED TO REACH THE

3    QUESTION OF DO YOU HAVE TO DO MORE THAN IS REASONABLE.  I THINK

4    BOTH OF US HAVE TRIED TO SUBMIT TO YOU SOMETHING THAT'S

5    REASONABLE.

6        I DON'T KNOW NOKIA OR ALSTON'S BILLING RECORDS, BUT I CAN

7    REPRESENT TO YOUR HONOR THAT WE TOOK OFF ABOUT $200,000, OR

8    ABOUT 20 PERCENT OF WHAT APPLE EITHER HAS PAID OR WILL PAY.

9        SO I THINK THAT WHAT YOUR HONOR HAS BEFORE YOU IS

10   SOMETHING THAT IS REASONABLE JUDGED BY WHAT ACTUALLY OCCURRED

11   AND WHAT ACTUALLY HAPPENED DURING A VERY COMPRESSED PERIOD OF

12   TIME.

13       THANK YOU.

14           THE COURT:  ALL RIGHT.  THANK YOU.

15       MR. ALLEN, ANY LAST WORDS, SIR?

16           MR. ALLEN:  YOUR HONOR, I'LL JUST POINT OUT THAT THE

17   DISCUSSION THAT I HAD WITH QUINN IS DESCRIBED AT PARAGRAPH 5 IN

18   MY AFFIDAVIT AND I STAND BY IT.

19           THE COURT:  ALL RIGHT.  MR. QUINN, HAVE I MANAGED TO

20   EXHAUST YOU ALL?

21           MR. QUINN:  I'M EXHAUSTED, YOUR HONOR.

22           THE COURT:  ALL RIGHT.  I'LL TAKE THIS MATTER UNDER

23   SUBMISSION.

24       HAVE A GOOD AFTERNOON.

25           MR. QUINN:  THANK YOU, YOUR HONOR.

1          MR. LEE:  THANK YOU, YOUR HONOR.

2          MR. ALLEN:  THANK YOU, YOUR HONOR.

3       (THE PROCEEDINGS WERE CONCLUDED AT 4:04 P.M.)

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18        DATED:  MARCH 11, 2014

19

20

21

22

23

24

25