# EXHIBIT 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3182**

WRITER'S INTERNET ADDRESS
**robertbecher@quinnemanuel.com**

January 8, 2014

**VIA EMAIL**
**HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY**

| | |
|---|---|
| Mark D. Selwyn, Esq. | Joseph J. Mueller, Esq. |
| WilmerHale | WilmerHale |
| 950 Page Mill Road | 60 State Street |
| Palo Alto, CA 94304 | Boston, MA 02109 |

Re:     Remediation of Inadvertent Disclosures

Dear Counsel:

I write in response to your December 24, 2013 letter in which you pose questions regarding Samsung's proposed remediation plan. I note that your questions could have been posed as early as November 4, when Samsung sent its initial letter proposing its remediation plan and asking for Apple's views. Instead, Apple chose to wait for almost two months to respond in any way, despite Samsung's repeated requests for a response.

You first state that Apple cannot know if there are other documents that contain Apple's confidential information because many of the documents submitted to Judge Grewal are privileged. You also state that, under Samsung's proposal, Samsung would continue to keep "other documents that contain, reflect or make derivative use of Apple's confidential information." Those claims are mistaken.

First, Samsung submitted privileged and work product documents that reference the terms of Apple's licenses with Ericsson, Nokia, Sharp and Philips for *in camera* review, and the Court reviewed them. The Court cited certain of those documents in its Order to Show Cause, and Samsung submitted extensive declarations and evidence establishing that those documents are privileged or otherwise protected and that they do not show any use of information subject to the Protective Order in this litigation. As a result, Apple has in fact received detailed information

quinn emanuel urquhart & sullivan, llp

NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

regarding whether the documents reference any claimed confidential information regarding Apple's licenses in a manner consistent with Samsung's rights to protect its privileged communications and work product materials.  While Samsung has proposed on several occasions agreements that would have allowed Apple and Nokia access to these materials so long as the attorney-client privilege and other protections were respected, both refused those offers.  Apple's suggestion that it has been denied information sufficient to allow it to discuss remediation is hollow for this additional reason.

Second, as you know, from our perspective, the only documents containing inadvertent disclosures of the terms of Apple's licenses that Apple claims are confidential are the Teece Report and the ITC draft, outline and brief.  Any other documents that refer to the claimed confidential terms of Apple's licenses are legitimately in Samsung's possession; for example, the chart Apple provided Samsung in the Netherlands proceedings that contains the terms of many of its licenses and an email discussing that chart.  Indeed, Apple's 30(b)(6) witness admitted the chart from the Netherlands litigation is legitimately in Samsung's possession.  Accordingly, Samsung does not intend to delete the chart or emails concerning the chart or other information legitimately in Samsung's possession.  Please confirm that you agree that these documents need not be deleted.

Third, in any event, Apple's belated response avoids answering – even after almost two months – the simple question of whether Samsung's proposal to delete copies of the Teece Report and the ITC draft, outline and brief as part of a remediation effort is acceptable.  We ask that you confirm that you agree that at least these documents should be deleted from Samsung's hard drives and email archives, regardless of any dispute as to whether other, additional materials should be deleted as well.

You next state that remediation must cover all recipients of "Apple's confidential information." Again, we ask that you confirm that you agree with the proposal to delete information from the computers and email archive at Samsung.  Even if you believe remediation should cover other people or entities, that is not a reason to delay engaging in remediation as to employees of Samsung.  We also note that some of the outside law firms or individuals in possession of the Teece Report were entitled to receive it because they received it pursuant to court order or are authorized recipients under the relevant protective orders.

With respect to the law firms and individuals who received an inadvertent disclosure of the Teece Report, we will need to contact them to obtain their approval for a proposed plan once we reach agreement on a proposal.  But, for the purposes of arriving at a proposal we can pass along to them, we propose to have them delete any email containing the Teece Report or ITC inadvertent disclosures from individuals' email mailboxes, erase any version of these documents saved to a workstation or file server using a file remediation utility and erase any version of these documents on document management systems.

You ask for detail on the forensic steps Stroz Friedberg intends to take to identify the inadvertent disclosures and to delete them from Samsung computers and email archives.  Stroz Friedberg has already assisted Samsung in identifying all emails containing the inadvertent disclosures and those emails have been identified to Apple and Nokia.  Moreover, as discussed in prior correspondence, Stroz Friedberg has used its proprietary LIMA technique to determine if the

2

inadvertent disclosures are located in other network locations.  The attachment to this letter contains the steps that Stroz would take to delete the inadvertent disclosures.  Of course, some changes in the technical details may be necessary based on facts learned during the implementation of this plan, but we would inform you if that occurs.

You argue that Apple's forensic consultants must be involved in the process of planning and carrying out the remediation. Apple is of course welcome to use its forensic consultants to evaluate our proposal or to fashion any counterproposal that it wishes to make.  There are, however, many reasons why Apple's consultant may not be directly involved in carrying out the remediation.  First, as a matter of security, we cannot give Apple's vendor access to Samsung's computer systems.  Second, many of the documents at issue are covered by the attorney-client privilege and work product protection.  Given that Apple has repeatedly attempted to persuade the Court that Samsung has waived any claim of attorney-client privilege or work product over the documents submitted to the Court and has repeatedly rejected our efforts to reach an agreement that would allow Apple access to additional information without waiver of appropriate privileges, Samsung is in no position to provide Apple's vendor with access to Samsung's computers or archives containing those privileged and work product documents.  Third, there is no need for Apple's vendor to be involved in remediation if the parties have agreed on a process and Stroz Friedberg agrees to follow it.

You also ask for more detail regarding where the imaged drives and copies of the email archives will be maintained.  Again, your letter fails to explain why Apple delayed for many weeks before posing such questions if they were in fact material to Apple's consideration of the proposal.  In any event, the imaged drives from Korean custodians and copies of the email archives from Korean custodians will be kept at UBIC in Korea.  The imaged drives and copies of email archives from U.S. custodians will be kept at Quinn Emanuel's offices in a secured room.  In response to your question about who can access the imaged drives and copies of email archives, persons from Quinn Emanuel who are authorized under the ITC and Case No. 11-1846 protective orders will have access to these materials and, of course, UBIC will securely store the data located in Korea.  It is premature at this time to address whether the materials will be destroyed at the conclusion of the case, but regardless of any such issue, there is no reason why Apple cannot confirm (and has not confirmed)  that it agrees to move the imaged drives and copies of the email archives from Samsung's premises to secure facilities subject to Quinn Emanuel's control.

Please let us know if Samsung's proposed remediation plan is acceptable to Apple.  We are available to meet and confer regarding our proposal and proposed motion on Friday, January 10.  Are you available at 1 p.m.?  We invite Nokia's counsel, who has not responded to our letter, to participate in the meet and confer too.

3

Sincerely,

Robert J. Becher

RJB
Attachment
cc:  Randall Allen; Ryan Koppelman

I. Files on Workstations and Servers

   A. Workstations
1. Obtain each of the original workstations on which files containing the incompletely redacted Teece report or incompletely redacted ITC outline, draft brief or brief ("Disclosed Information") were located.
2. Using results of prior LIMA scans, securely erase all files that contain the Disclosed Information using a file remediation utility that not only deletes the file from the user's view but also renders it forensically unrecoverable by overwriting its contents with zeroes or random data (e.g. Eraser).

   B. File Servers
1. Connect to each of the file server areas in which files containing Disclosed Information were located.
2. Using results of prior LIMA scans, securely erase all files that contain the Disclosed Information using a file remediation utility.

II. Email Messages on Workstations and Servers

   A. Workstations – Outlook .pst files:
1. Search for messages in question in Microsoft Outlook using the appropriate search criteria, such as sent/received date, email subject, etc.
2. "Double-delete" each located message by deleting it while holding the Shift key, so that it no longer resides in either the active email folder or in the Deleted Items folder.
3. Compact the Outlook .pst files in which the messages were located.

   B. Workstations - MySingle:
1. Search for the MySingle messages in question by indexing the MySingle files and searching using the appropriate search criteria.
2. Securely erase the .mysingle files containing the Disclosed Information by using a file remediation utility, which overwrites the files' contents.

   C. Email Archive
1. Search the central email archive for the identified email messages in conjunction with a Samsung technical representative.
2. Use the delete option to remove the messages in question from the email archive.

   D. Server Email
1. Search for messages containing the Disclosed Information using the appropriate search criteria in conjunction with Samsung administrators.
2. Delete the messages from the server and verify that they are not retained in any system folders, e.g. Recoverable Items.