# EXHIBIT EE

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**United States District Court**
**Northern District of California**

**Apple Inc.**

v.

**Samsung Electronics Co., Ltd. et al.**

**Expert Report of Michael J. Wagner**
**April 16, 2012**
**Volume I**

**LitiNomics**

## Apple Inc. v. Samsung Electronics Co., Ltd. et al.

**Table of Contents**

**Expert Report of Michael J. Wagner**

**Volume I**

| Tab # | Description |
|---|---|
| 1 | Expert Report of Michael J. Wagner |
| 2 | Damages Analysis |
| 3 | License Agreement Matrix |
| 4 | List of Documents Considered |
| 5 | Curriculum Vitae of Michael J. Wagner |
| 6 | Damages Analysis Based on U.S. Manufacturing Costs |

# Tab 1

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**United States District Court**

**Northern District of California**

**San Jose Division**

**Case No. 11-cv-01846 LHK**

**APPLE INC.**

v.

**SAMSUNG ELECTRONICS CO., LTD, SAMSUNG ELECTRONICS**

**AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC**

---

**Expert Report of**

**Michael J. Wagner**

**April 16, 2012**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

I.    INTRODUCTION ................................................................................................... 1

II.   SUMMARY OF OPINIONS ................................................................................... 2

III.  BACKGROUND AND DESCRIPTION OF THE INVENTIONS ........................... 7

      A. PARTIES TO THE LITIGATION ........................................................................ 7

          1.   Apple Inc. .......................................................................................... 7

          2.   Samsung Electronics Co., Ltd. ......................................................... 8

          3.   Samsung Electronics America, Inc. .................................................. 9

          4.   Samsung Telecommunications America, LLC ................................. 10

      B. APPLE'S ASSERTED INTELLECTUAL PROPERTY .............................................. 11

          1.   Apple's Utility Patents ..................................................................... 11

               a)   User Interface Utility Patents ................................................. 11

               b)   Touchscreen-Related Utility Patents ...................................... 13

          2.   Apple's Design Patents ................................................................... 15

               a)   UI Design Patents .................................................................. 15

               b)   Electronic Device Design Patents .......................................... 19

          3.   Apple's Trade Dress at Issue .......................................................... 32

               a)   Original iPhone Trade Dress .................................................. 32

               b)   iPhone 3G Trade Dress .......................................................... 33

               c)   iPhone 4 Trade Dress ............................................................ 33

               d)   iPhone Trade Dress ............................................................... 34

               e)   Trade Dress Registrations ..................................................... 34

               f)   85/299,118 Trade Dress Application ...................................... 36

               g)   iPad and iPad 2 Trade Dress ................................................. 37

               h)   77/921,838, 77/921,829, and 77/921,869 Trade Dress Applications ..... 37

          4.   Apple's Trademarks at Issue ........................................................... 39

               a)   Registered Icon Trademarks .................................................. 39

               b)   iTunes Store Trademark ......................................................... 40

               c)   iTunes Eighth Note and CD Design Trademark ..................... 41

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

C. SAMSUNG'S ALLEGEDLY INFRINGING PRODUCTS ...................................................................... 41

   1.   Samsung Galaxy Smartphones ................................................................................. 43

   2.   Other Samsung Smartphones ................................................................................... 45

   3.   Tablet Computers ..................................................................................................... 46

**IV.**   **BASES FOR OPINIONS** ....................................................................................................... 46

A. DISAGREEMENTS WITH THE OPINIONS EXPRESSED BY TERRY L. MUSIKA ............................................ 47

   1.   Mr. Musika's analysis is a high-level analysis and is largely divorced from the specific intellectual property that is at issue in this lawsuit. .................................................... 47

      a)   Mr. Musika fails to provide evidence of demand for the specific design IP at issue. .................... 47

      b)   Mr. Musika fails to provide evidence of demand for the specific utility patents at issue. .............. 53

   2.   Although Mr. Musika claims not to use the entire market value rule, in effect he does. ........ 56

   3.   Mr. Musika does not establish Apple's entitlement to lost profits related to Samsung's infringement of the intellectual property at issue. .................................................... 57

      a)   Mr. Musika has not provided sufficient evidence of demand for the intellectual property at issue. 59

      b)   Samsung has acceptable, non-infringing alternatives available for the asserted intellectual property. .................................................................................................... 75

      c)   Mr. Musika has not proven that Apple has sufficient capacity for all time periods. ........................ 77

   4.   Even if Mr. Musika were to prove entitlement to lost profits, his lost profits calculations significantly overstate the amount of lost profits. .................................................... 86

      a)   Mr. Musika does not take price elasticity of demand into consideration in his lost profits calculation. ..................................................................................................... 86

      b)   Mr. Musika includes lost profits for the Galaxy Tab 7.0 (3G), which is not appropriate based on Mr. Musika's own analysis. .................................................................................... 93

      c)   Mr. Musika incorrectly uses an assumption that 26% of users select a new carrier when purchasing a cell phone in calculating his lost profits damages. ................................................ 94

      d)   Mr. Musika's analysis does not properly take into account platform competition and the fact that Samsung customers chose to not purchase an iPhone. .......................................................... 96

      e)   Mr. Musika's incremental profitability is overstated, resulting in significantly overstated lost profits.100

   5.   Mr. Musika's calculation of Samsung's profits related to the infringement is overstated. ... 100

   6.   Mr. Musika's reasonable royalty analysis relies on unreasonable benchmarks and results in an overstated concluded reasonable royalty rate. ................................................. 101

      a)   Mr. Musika's cost approach does not provide a reasonable value for the intellectual property at issue. ....................................................................................................... 102

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

b) Mr. Musika's income approach does not provide a reasonable value for the intellectual property at issue. ...................................................................................................................107

c) The other benchmarks mentioned by Mr. Musika are not relevant to the reasonable royalty analysis. ................................................................................................................113

d) Mr. Musika's analysis does not take into account several data points that would result in a much lower reasonable royalty rate. ..........................................................................114

e) Mr. Musika takes into account inappropriate considerations in his *Georgia-Pacific* analysis that result in an artificially high royalty rate ...........................................................123

f) Mr. Musika's concluded royalty rate is unreasonably high. .........................................124

7. Mr. Musika's discussion of the irreparable harm done to Apple is divorced from actual market conditions. .............................................................................................................124

B. APPLE IS NOT ENTITLED TO LOST PROFITS ..........................................................................130

1. Utility Patents .............................................................................................................130

2. Design-Related IP ......................................................................................................130

C. OPINIONS REGARDING SAMSUNG'S PROFITS RELATED TO THE DESIGN IP .............................131

1. Samsung's Sales Data ...............................................................................................131

2. Samsung's Deductible Expenses ...............................................................................132

a) SEC's Deductible Expenses ......................................................................................133

b) STA's and SEA's Deductible Expenses ....................................................................136

3. Calculation of Samsung's Profits on the Accused Products .......................................138

4. Apportionment of Profit to the Design-Related IP at Issue .........................................140

a) Apportionment to "Design" ........................................................................................142

b) Apportionment of Design to Specific Design-Related IP at Issue ..............................150

c) Apportionment based on design arounds ..................................................................152

d) Conclusion on Apportionment ...................................................................................153

5. Samsung's Unjust Enrichment ...................................................................................153

D. OPINIONS REGARDING REASONABLE ROYALTY RATE .............................................................154

a) Basic Framework for Calculating Reasonable Royalty Damages for Patent Infringement ..........154

b) *Georgia-Pacific* Factor Analysis .............................................................................160

c) Major Facts Known or Knowable to Both Parties at the Hypothetical Negotiation ......................204

d) Conclusions Regarding Reasonable Royalty ............................................................205

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

2.  Calculation of Royalties Due ............................................................................. 206

E. ALTERNATIVE REASONABLE ROYALTY FOR ELECTRONIC DEVICE DESIGN PATENTS AND TRADE DRESS 207

**V.     DOCUMENTS, DATA AND OTHER INFORMATION CONSIDERED ....................................... 208**

**VI.    POTENTIAL ADDITIONAL ANALYSES TO PERFORM ............................................................ 209**

**VII.   QUALIFICATIONS ................................................................................................................... 209**

**VIII.  COMPENSATION ..................................................................................................................... 209**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

## I.    Introduction

1.    I have been retained on behalf of Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC (collectively "Samsung") to provide an opinion regarding damages resulting from Samsung's alleged infringement of Apple Inc.'s ("Apple")'s U.S. Patent No. 6,493,002 ("the '002 Patent") titled "Method and Apparatus for Displaying and Accessing Control and Status Information in a Computer System;" U.S. Patent No. 7,469,381 ("the '381 Patent") titled "List Scrolling and Document Translation, Scaling and Rotation on a Touch-Screen Display;" U.S. Patent No. 7,844,915 ("the '915 Patent") titled "Application Programming Interfaces for Scrolling Operations;" U.S. Patent No. 7,853,891 ("the '891 Patent") titled "Method and Apparatus for Displaying a Window for a User Interface;" U.S. Patent No. 7,663,607 ("the '607 Patent") titled "Multipoint Touchscreen;" U.S. Patent No. 7,864,163 ("the '163 Patent") titled "Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents;" U.S. Patent No. 7,920,129 ("the '129 Patent") titled "Double-Sided Touch-Sensitive Panel With Shield And Drive Combined Layer;"[1] U.S. Patent No. D627,790 ("the 'D790 Patent" titled "Graphical User Interface For a Display Screen or Portion Thereof;" U.S. Patent No. D617,334 ("the D334 Patent") titled "Graphical User Interface For a Display Screen or Portion Thereof;" U.S. Patent No. D604,305 ("the 'D305 Patent") titled "Graphical User Interface For a Display Screen or Portion Thereof;" U.S. Patent No. D593,087 ("the 'D087 Patent") titled "Electronic Device;" U.S. Patent No. D618,677 ("the 'D677 Patent") titled "Electronic Device;" U.S. Patent No. D622,270 ("the 'D270 Patent") titled "Electronic Device;" U.S. Patent No. D504,889 ("the 'D889 Patent") titled "Electronic Device;"[2] Apple's Registered Trade Dress including U.S. Registrations 3,470,983, 3,457,218, and 3,475,327;[3] Apple's  Trademarks;[4] alleged Lanham Act violations; and alleged unfair business practices related to Apple's iPad / iPhone trade dress.[5, 6]

---

[1]  Apple Inc.'s Amended Complaint, June 16, 2011, pp. 50-55. [2.1] References in report are to [Volume and Tab].

[2]  Apple Inc.'s Amended Complaint, June 16, 2011, pp. 55-60. [2.1]

[3]  Apple Inc.'s Amended Complaint, June 16, 2011, pp. 41-43. [2.1]

[4]  Apple Inc.'s Amended Complaint, June 16, 2011, pp. 43-44, 46-48. [2.1]

[5]  Apple Inc.'s Amended Complaint, June 16, 2011, pp. 39-41, 44-46, 48-50. [2.1]

[6]  In its Amended Complaint, Apple also asserts U.S. Patent No. 7,812,828 ("the '828 Patent") titled "Ellipse Fitting for Multi-Touch Surfaces." (Apple Inc.'s Amended Complaint, June 16, 2011, pp. 52-53. [2.1]) In his expert report, Apple's damages expert, Terry L. Musika, did not calculate damages for the '828 Patent. (Expert Report of Terry L. Musika, CPA, March 22, 2012 (hereafter "Musika Report"). [2.2]) Apple's survey expert, John R. Hauser, indicates that he was "informed by counsel that the '828 Patent is no longer relevant for the purposes of [his] report." (Expert Report of John R. Hauser, March

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

2.    In forming the opinions I express in this report, I have assumed that Apple's Patents are valid and enforceable, and that Samsung's accused products infringe these patents.  I have assumed that Apple's Trademarks are valid and that Samsung's accused products infringe these trademarks.  Finally, I have assumed that Apple's allegations relating to its trade dress will be proven at trial.  I have no opinion as to whether any of these assumptions dealing with liability issues are appropriate.

3.    My opinions address the following matters:

- My disagreements with the opinions expressed by Terry L. Musika in the Expert Report of Terry L. Musika, CPA.

- Apple's entitlement to lost profits from lost sales and lost convoyed sales due to Samsung's alleged infringement of Apple's intellectual property.

- Samsung's profits related to its alleged infringement of Apple's design patents, trademarks, and trade dress and the appropriate apportionment of profits to the intellectual property at issue.

- The reasonable royalty that is adequate to compensate Apple for Samsung's alleged infringement of Apple's intellectual property.

## II.    Summary of Opinions

### A.    Disagreements With the Opinions Expressed By Terry Musika

**1.    Mr. Musika's analysis is a high-level analysis and is largely divorced from the specific intellectual property that is at issue in this lawsuit.**

**a)    Mr. Musika fails to provide evidence of demand for the specific design IP at issue.**

**b)    Mr. Musika fails to provide evidence of demand for the specific utility patents at issue.**

**2.    Although Mr. Musika claims not to use the entire market value rule, in effect he does.**

**3.    Mr. Musika does not establish Apple's entitlement to lost profits related to Samsung's infringement of the intellectual property at issue.**

---

22, 2012 (hereafter, "Hauser Report"), p. 7. [2.33]) Therefore, I do not address the '828 Patent in my report.  However if Messrs. Musika and Hauser subsequently attempt to express an opinion as to damages on the '828 Patent, I expect that I will be allowed to respond to those opinions.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

      a)   **Mr. Musika has not provided sufficient evidence of demand for the intellectual property at issue.**

      b)   **Samsung has acceptable, non-infringing alternatives available for the asserted intellectual property.**

      c)   **Mr. Musika has not proven that Apple has sufficient capacity for all time periods.**

4.   **Even if Mr. Musika were to prove entitlement to lost profits, his lost profits calculations significantly overstate the amount of lost profits.**

      a)   **Mr. Musika does not take price elasticity of demand into consideration in his lost profits calculation.**

      b)   **Mr. Musika includes lost profits for the Galaxy Tab 7.0 (3G), which is not appropriate based on Mr. Musika's own analysis.**

      c)   **Mr. Musika incorrectly uses an assumption that 26% of users select a new carrier when purchasing a cell phone in calculating his lost profits damages.**

      d)   **Mr. Musika's analysis does not properly take into account platform competition and the fact that Samsung customers chose to not purchase an iPhone.**

      e)   **Mr. Musika's incremental profitability is overstated, resulting in significantly overstated lost profits.**

5.   **Mr. Musika's calculation of Samsung's profits related to the infringement is overstated.**

6.   **Mr. Musika's reasonable royalty analysis relies on unreasonable benchmarks and results in an overstated concluded reasonable royalty rate .Lost Profits Capacity Analysis**

      a)   **Mr. Musika's cost approach does not provide a reasonable value for the intellectual property at issue.**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

  **b) Mr. Musika's income approach does not provide a reasonable value for the intellectual property at issue.**

  **c) The other benchmarks mentioned by Mr. Musika are not relevant to the reasonable royalty analysis.**

  **d) Mr. Musika's analysis does not take into account several data points that would result in a much lower reasonable royalty rate.**

  **e) Mr. Musika takes into account inappropriate considerations in his Georgia-Pacific analysis that result in an artificially high royalty rate.**

  **f) Mr. Musika's concluded royalty rate is unreasonably high.**

**B. Lost Profits related to Patent Infringement:**

 **1. Lost Profits is not an appropriate measure of damages in this case.**

**C. Samsung's Profit Related to the Asserted Design-Related Intellectual Property[7]**

 **1. All of Samsung's operating expenses qualify as deductible expenses with the exception of the legal expenses related to this lawsuit.**

 **2. A reasonable apportionment of Samsung's profits to Apple's design-related intellectual property at issue is one percent.**

 **3. Applying the apportionment percentage results in a calculation of Samsung's profits related to its infringement of Apple's design-related intellectual property as follows:**

---

[7] The calculations presented in this summary and presented in the figures in this report are based on worldwide data for manufacturing expenses.  On the date of my report, Samsung provided additional data to me that included manufacturing expenses limited to accused products sold in the U.S.  I have performed additional calculations with these data that are included as a separate damages model in Tab 6 at Volume 1 of my report.  I do not include the summary of those calculations here.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



|  | STA and SEA Profit After Deductible Expenses | | |
| --- | --- | --- | --- |
|  | **STA, SEA and SEC Profit After Deductible Expenses** | **Apportionment** | **Apportioned STA, SEA and SEC Profit After Deductible Expenses** |
|  | [a] | [b] | [c] |
| 2010 | | | |
| 2011 | | | |
| Total | | | |
| April 15 - December 31, 2011 | | | |
| June 16 - December 31, 2011 | | | |

|  | STA, SEA and SEC Profit After Deductible Expenses | | |
| --- | --- | --- | --- |
|  | **STA, SEA and SEC Profit After Deductible Expenses** | **Apportionment** | **Apportioned STA, SEA and SEC Profit After Deductible Expenses** |
|  | [a] | [b] | [c] |
| 2010 | | | |
| 2011 | | | |
| Total | | | |
| April 15 - December 31, 2011 | | | |
| June 16 - December 31, 2011 | | | |

**D.   Reasonable Royalty:**

      1.   **The reasonable royalty that is adequate to compensate Apple for Samsung's alleged infringement of Apple's asserted intellectual property is summarized as follows:**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

|  | Design Around Costs |
|---|---|
| Utility Patents | |
| '002 | $9,240 |
| '163 | $5,880 |
| '381 | $11,340 |
| '891 | $8,820 |
| '915 | $10,080 |
| '607 | $1,600,000 |
| '129 | $1,600,000 |
| | |
| Cost to Design a New Icon (per Icon) | $420 |
| | |
| Cost to Design and Implement a New GUI | $1,152 |
| | |
| Trade Dress (Based on New GUI) | $1,152 |
| Trade Dress (Device Related) | $0 |
| | |
| Electronic Device Design Patents | $0 |

In addition, a royalty amount would be due for the '607 Patent calculated as follows:

| | Units | Royalty Rate | Royalties Due |
|---|---|---|---|
| *5/1/10 - 12/31/11* Galaxy Tab 7.0 (3G) | 665,620 | $2.10 | $1,397,802 |
| *6/16/11 - 12/31/11* Galaxy Tab 7.0 (3G) | 218,341 | $2.10 | $458,516 |

2. **Alternatively, for the Electronic Device Design Patents and Apples Trade Dress, a reasonable royalty based on Samsung's apportioned profit related to Apple's design-related IP is $0.60 per unit for smartphones and $0.30 per unit for tablets. Applying these royalty rates to the relevant royalty bases results in royalties calculated as follows:**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

|  | Units | Royalty Rate | Royalties Due |
|---|---|---|---|
| *5/1/10 - 12/31/11* | | | |
| Smartphones | 17,084,829 | $0.60 | $10,250,897 |
| Tablets | 1,145,643 | $0.30 | $343,693 |
| **Total** | **18,230,472** | | **$10,594,590** |
| | | | |
| *4/15/11 - 12/31/11* | | | |
| Smartphones | 9,304,458 | $0.60 | $5,582,675 |
| Tablets | 780,734 | $0.30 | $234,220 |
| **Total** | **10,085,192** | | **$5,816,895** |
| | | | |
| *6/16/11 - 12/31/11* | | | |
| Smartphones | 6,084,352 | $0.60 | $3,650,611 |
| Tablets | 628,945 | $0.30 | $188,684 |
| **Total** | **6,713,297** | | **$3,839,295** |

## III.   Background and Description of the Inventions

### A.   Parties to the Litigation

#### 1.   Apple Inc.

4.      Apple Inc. is a California corporation having its principal place of business at 1 Infinite Loop, Cupertino, California 95014.[8]  Apple is a technology company that "designs, manufactures and markets mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications."[9]  Included in its product portfolio are consumer electronics devices like iPhone®, iPad®, and iPod®, as well as the Mac® computer product line, Apple TV®, the iOS and Mac OS® X operating systems, and various other software applications and services.[10]  Apple "also sells and delivers digital content and applications through the iTunes Store®, App Store[SM], iBookstore[SM], and Mac App Store."[11]

---

[8]   Apple Inc.'s Amended Complaint, June 16, 2011, ¶ 6, p. 2. [2.1]
[9]   Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, cover and p. 1. [2.34]
[10]   Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 1. [2.34]
[11]   Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 1. [2.34]

5.      Apple, incorporated in 1977 as Apple Computer Inc., began selling computers in 1976 with the Apple I.[12]  A few years later, on December 12, 1980, Apple made its initial public offering at $22.00 per share.[13]  On January 9, 2007, then CEO Steve Jobs announced that Apple had changed its name from Apple Computer, Inc. to Apple Inc.[14]

6.      According to Apple's 10-K for its fiscal year ended September 24, 2011, "[t]he Company manages its business primarily on a geographic basis."[15]  As such, Apple's reportable operating segments are the Americas (North and South America), Europe (Europe, the Middle East, and Africa), Japan, Asia-Pacific (Australia and Asia, excluding Japan) and retail (Apple's retail stores).[16]  Each segment provides similar hardware, software, and services.[17]

7.      During its fiscal year ended in September, 2011, Apple earned $25.9B in net income from $108.2B in net sales.[18]  This represents growth in net sales of 44.9 percent CAGR[19] (Compound Annual Growth Rate) and growth in net income of 55 percent CAGR[20] over the fiscal period from 2007 through 2011.[21]

### 2.  Samsung Electronics Co., Ltd.

8.      Samsung Electronics Co., Ltd. (referred to individually as "SEC") is a Korean corporation with its principal place of business at 416 Maetan-3dong, Yeongtong-gu, Suwon-City, Gyeonggi-do, Korea 443-742.[22]  SEC designs, manufactures, and provides to the U.S. and world markets a wide range of products, including consumer electronics, computer components, and myriad mobile and entertainment products.[23]  Today, SEC manufactures and sells

---

[12] Steve Jobs at Apple: A Timeline, PCWorld, August 24, 2011,
<http://www.pcworld.com/article/238745/steve_jobs_at_apple_a_timeline.html>. [2.35]

[13] Frequently Asked Questions, Apple Inc., <http://investor.apple.com/faq.cfm>. [3.1]

[14] Apple drops 'Computer' from name, Macworld, January 9, 2007,
<http://www.macworld.com/article/54770/2007/01/applename.html>. [3.2]

[15] Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 2. [2.34]

[16] Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 2. [2.34]

[17] Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 2. [2.34]

[18] Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 24. [2.34]

[19] $CAGR = \left(\frac{\$108.23}{\$24.69}\right)^{\frac{1}{4\,yrs}} - 1 \approx .449$

[20] $CAGR = \left(\frac{\$25.92}{\$3.50}\right)^{\frac{1}{5\,yrs}} - 1 \approx .650$

[21] Apple Inc. Form 10-K for the fiscal year ended September 24, 2011, p. 24. [2.34]

[22] Samsung Entities' Answer to Apple Inc.'s Amended Complaint, June 30, 2011, p. 35. [10.3]

[23] Apple Inc.'s Amended Complaint, June 16, 2011, ¶ 7, p. 2. [2.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

semiconductors, LCDs, telecommunication products, and digital media products.[24]  Recently, 13 of Samsung's products, including semiconductors, TFT-LCDs, monitors, and CDMA mobile phones, have earned the top global market share.[25]

9.      Over the 2011 fiscal year, SEC's Consolidated Statements of Income show $11.9B in profit on $143.1B in revenue.[26]  This represents a 6.7 percent growth in revenue and a 15.0 percent decline in profit over the 2010 fiscal year.[27]

10.     SEC's consolidated subsidiaries include companies spanning Korea, the Americas (including both Samsung Electronics America and Samsung Telecommunications America), Europe, Africa, China, and other parts of Asia.[28]

### 3.    Samsung Electronics America, Inc.

11.     Samsung Electronics America, Inc. (referred to individually as "SEA") is a New York corporation with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.  SEA was formed in 1978[29] as a subsidiary of SEC and markets, sells, or offers for sale a variety of consumer electronics, including TVs, VCRs, DVD and MP3 players, and video cameras, as well as memory chips and computer accessories, such as printers, monitors, hard disk drives, and DVD/CD-ROM drives.[30]  SEA "is focused on continually expanding its position in the U.S. market while upholding Samsung's mission to provide consumers with innovative products that converge digital technologies and offer exceptional quality, features, performance and value."[31]

---

[24]  Consolidated Financial Statements of Samsung Electronics Co., Ltd. and Subsidiaries, Q3 2011, <http://www.samsung.com/us/aboutsamsung/ir/financialinformation/auditedfinancialstatements/downloads/consolidated/2011_Consolidated_quarter03_all.pdf>, p. 14. [3.3]

[25]  About Samsung, History, 2000 - Present, <http://www.samsung.com/us/aboutsamsung/corporateprofile/history.html>. [3.4]

[26]  2011 Samsung Electronics Annual Report, Income Statement, <http://www.samsung.com/us/aboutsamsung/ir/financialinformation/auditedfinancialstatements/downloads/consolidated/2011_con_quarter04_soi.pdf>, p. 4. [3.3]

[27]  Revenue Grown Rate = $143.1B / $134.1 B – 1 = .067.  Profit Growth Rate = $11.9B / $14.0B – 1 =0.15.  (2011 Samsung Electronics Annual Report, Income Statement, <http://www.samsung.com/us/aboutsamsung/ir/financialinformation/auditedfinancialstatements/downloads/consolidated/2011_con_quarter04_soi.pdf>, p. 4. [3.3])

[28]  2011 Samsung Electronics Annual Report, <http://www.samsung.com/us/aboutsamsung/ir/financialinformation/annualreport/downloads/2010/SECAR2010_Eng_Final.pdf>, pp. 12-15. [3.5]

[29]  Samsung Entities' Answer to Apple Inc.'s Amended Complaint, June 30, 2011, p. 2. [10.3]

[30]  Apple Inc.'s Amended Complaint, June 16, 2011, ¶ 8, pp. 2-3. [2.1]

[31]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

12.     SEA comprises the Consumer Business Division and the Enterprise Business Division, both of which are headquartered in Ridgefield Park, New Jersey.[32]   The North American Headquarters, which are in Ridgefield Park, as well, "oversee[] the North American Subsidiaries of Samsung Telecommunications America; Samsung Semiconductor, Inc.; Samsung Information Systems America; and Samsung Austin Semiconductor."[33]   The North American Headquarters also oversee Samsung Electronics Canada and Samsung Electronics Mexico.[34]

13.     The Consumer Business Division ("CBD") "offers a full range of award-winning digital products for the home and individual use, including LED, LCD and Plasma televisions, Blu-ray Disc players, Home Theater Systems, Digital Cameras, Digital Camcorders, Solid State Hard Drives, External Hard Drives and Portable Audio Devices."[35]   CBD also sells home appliances through its Home Appliance group.[36]

14.     The Enterprise Business Division ("EBD") is an IT company "committed to serving the needs of consumers ranging from the home user to the Fortune 500 elite and supporting the valued channel partners who serve [its] customers."[37]   EBD offers printers, monitors, laptops, digital signage, and projectors, as well.[38]

### 4.   Samsung Telecommunications America, LLC

15.     Samsung Telecommunications America, LLC (referred to individually as "STA") is a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75081.   STA was founded in 1996 as a subsidiary of SEC and markets, sells, or offers for sale a variety of personal and business communications devices in the United States, including cell phones.[39]   STA "researches, develops and markets a variety of

---

[32]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[33]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[34]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[35]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[36]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[37]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[38]  About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/businessarea/usdivisions.html>. [3.6]

[39]  Apple Inc.'s Amended Complaint, June 16, 2011, ¶ 9, p. 3. [2.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

personal and business communications products throughout North America, including handheld wireless phones, wireless communications infrastructure systems, fiber optics and enterprise communication systems."[40]

## B. Apple's Asserted Intellectual Property

16.    Apple has asserted a large number of intellectual property elements against Samsung.  I have analyzed each of these IP elements individually, but I frequently address groups of the asserted IP collectively in this report due to the large number of IP elements at issue.  I describe below the logical groups of IP elements that are discussed in this report.

### 1.    Apple's Utility Patents

17.    I address seven utility patents that Apple has asserted against Samsung.[41]  I group these utility patents as user interface patents and touchscreen-related patents.

#### a)    User Interface Utility Patents

##### (1)    6,493,002 (" '002 Patent"): Method and Apparatus for Displaying and Accessing Control and Status Information in a Computer System

18.    U.S. Patent number 6,493,002 was filed on March 20, 1997 and issued on December 10, 2002.[42]  Steven Christensen, the named inventor of the '002 Patent, assigned the patent to Apple Computer, Inc.[43]

19.    The abstract of the '002 Patent is reproduced below:[44]

> An interactive computer-controlled display system having a processor, a data display screen, a cursor control device for interactively positioning a cursor on the data display screen, and a window generator that generates and displays a window on a data display screen. The window region provides status and control information in one or more data display areas.

---

[40] About Samsung, US divisions, no date, <http://www.samsung.com/us/aboutsamsung/ourbusinesses/ businessarea/usdivisions.html>. [3.6]

[41] As I discuss above, the Musika Report and the Hauser Report do not address the '828 Patent. Therefore, I do not address the '828 Patent in my report.  However, if Messrs. Musika and Hauser subsequently attempt to express an opinion as to damages on the '828 Patent, I expect that I will be allowed to respond to those opinions.

[42] U.S. Patent No. 6,493,002 B1. [2.3]

[43] U.S. Patent No. 6,493,002 B1. [2.3]

[44] U.S. Patent No. 6,493,002 B1. [2.3]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

The individual data display areas may be controlled through the use of controls and indicators on the control strip itself using cursor control keys.

### (2)  7,469,381 (" '381 Patent"): List Scrolling and Document Translation, Scaling and Rotation on a Touch-Screen Display

20.     U.S. Patent number 7,469,381 was filed on December 14, 2007 and issued on December 23, 2008.[45]  Bas Ording, the named inventor of the '381 Patent, assigned the patent to Apple Inc.[46]

21.   The abstract of the '381 Patent is reproduced below:[47]

In accordance with some embodiments, a computer-implemented method for use in conjunction with a device with a touch screen display is disclosed. In the method, a movement of an object on or near the touch screen display is detected. In response to detecting the movement, an electronic document displayed on the touch screen display is translated in a first direction. If an edge of the electronic document is reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display, an area beyond the edge of the document is displayed. After the object is no longer detected on or near the touch screen display, the document is translated in a second direction until the area beyond the edge of the document is no longer displayed.

### (3)  7,853,891 (" '891 Patent"): Method and Apparatus for Displaying a Window for a User Interface

22.     U.S. Patent number 7,853,891 was filed on February 1, 2008 and issued on December 14, 2010.[48]  Imran Chaudhri and Bas Ording, the named inventors of the '891 Patent, assigned the patent to Apple Inc.[49]

23.   The abstract of the '891 Patent is reproduced below:[50]

Methods and apparatuses to display windows. In more than one embodiments [sic] of the invention, a window is closed automatically (e.g., after a timer expires, or when a condition or criterion is met, or a system input is received) without user input. In some examples, the window is translucent so that the portion of another window, when present, is visible under the window. In some examples, the image of the window is faded

---

[45]  U.S. Patent No. 7,469,381 B2. [2.4]
[46]  U.S. Patent No. 7,469,381 B2. [2.4]
[47]  U.S. Patent No. 7,469,381 B2. [2.4]
[48]  U.S. Patent No. 7,853,891 B2. [2.6]
[49]  U.S. Patent No. 7,853,891 B2. [2.6]
[50]  U.S. Patent No. 7,853,891 B2. [2.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

out before the window is closed and destroyed. In some examples, the window does not close in response to any input from a user input device. In some examples, the window is repositioned (or hidden) automatically when another translucent window is displayed. The degree of translucency, the speed for fading out, the discrete levels of translucency for fading out, the time to expire, and/or other parameters for controlling the display of the window may be set by the user or adjusted by the system (or application software programs) automatically according to system conditions or other criteria.

### (4)   7,864,163 (" '163 Patent"): Portable Electronic Device, Method, and Graphical User Interface for Displaying Structured Electronic Documents

24.   U.S. Patent number 7,864,163 was filed on September 4, 2007 and issued on January 4, 2011.[51]  Bas Ording, Scott Forstall, Greg Christie, Stephen Lemay, Imran Chaudhri, Richard Williamson, Chris Blumenberg, and Marcel Van Os, the named inventors of the '163 Patent, assigned the patent to Apple Inc.[52]

25.   The abstract of the '163 Patent is reproduced below:[53]

A computer-implemented method, for use in conjunction with a portable electronic device with a touch screen display, comprises displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content, and detecting a first gesture at a location on the displayed portion of the structured electronic document. A first box in the plurality of boxes at the location of the first gesture is determined. The first box on the touch screen display is enlarged and substantially centered.

### b)   Touchscreen-Related Utility Patents

### (1)   7,844,915 (" '915 Patent"): Application Programming Interfaces for Scrolling Operations

26.   U.S. Patent number 7,844,915 was filed on January 7, 2007 and issued on November 30, 2010.[54]  Andrew Platzer and Scott Herz, the named inventors of the '915 Patent, assigned the patent to Apple Inc.[55]

---

[51]  U.S. Patent No. 7,864,163. [2.8]

[52]  U.S. Patent No. 7,864,163. [2.8]

[53]  U.S. Patent No. 7,864,163. [2.8]

[54]  U.S. Patent No. 7,844,915 B2. [2.5]

[55]  U.S. Patent No. 7,844,915 B2. [2.5]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

27.    The abstract of the '915 Patent is reproduced below:[56]

At least certain embodiments of the present disclosure include an environment with user interface software interacting with a software application. A method for operating through an application programming interface (API) in this environment includes transferring a set bounce call. The method further includes setting at least one of maximum and minimum bounce values. The set bounce call causes a bounce of a scrolled region in an opposite direction of a scroll based on a region past an edge of the scrolled region being visible in a display region at the end of the scroll.

### (2)  7,663,607 (" '607 Patent"): Multipoint Touchscreen

28.    U.S. Patent number 7,663,607 B2 was filed on May 6, 2004 and issued on February 16, 2010.[57]  Steven Hotelling, Joshua Strickon, and Brian Huppi, the named inventors of the '607 Patent, assigned the patent to Apple Inc.[58]

29.    The abstract of the '607 Patent is reproduced below:[59]

A touch panel having a transparent capacitive sensing medium configured to detect multiple touches or near touches that occur at the same time and at distinct locations in the plane of the touch panel and to produce distinct signals representative of the location of the touches on the plane of the touch panel for each of the multiple touches is disclosed.

### (3)  7,920,129 (" '129 Patent"): Double-Sided Touch-Sensitive Panel with Shield and Drive Combined Layer

30.    U.S. Patent number 7,920,129 was filed on January 3, 2007 and issued on April 5, 2011.[60]  Steve Hotelling and Brian Land, the named inventors of the '129 Patent, assigned the patent to Apple Inc.[61]

31.    The abstract of the '129 Patent is reproduced below:[62]

A multi-touch capacitive touch sensor panel can be created using a substrate with column and row traces formed on either side of the substrate. To shield the column (sense) traces from the effects of capacitive coupling from a modulated Vcom layer in an adjacent liquid

---

[56]  U.S. Patent No. 7,844,915 B2. [2.5]
[57]  U.S. Patent No. 7,663,607 B2. [2.7]
[58]  U.S. Patent No. 7,663,607 B2. [2.7]
[59]  U.S. Patent No. 7,663,607 B2. [2.7]
[60]  U.S. Patent No. 7,920,129 B2. [2.9]
[61]  U.S. Patent No. 7,920,129 B2. [2.9]
[62]  U.S. Patent No. 7,920,129 B2. [2.9]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

crystal display (LCD) or any source of capacitive coupling, the row traces can be widened to shield the column traces, and the row traces can be placed closer to the LCD. In particular, the rows can be widened so that there is spacing of about 30 microns between adjacent row traces. In this manner, the row traces can serve the dual functions of driving the touch sensor panel, and also the function of shielding the more sensitive column (sense) traces from the effects of capacitive coupling.

## 2.   Apple's Design Patents

32.     Apple has asserted seven design patents against Samsung.  For the purposes of my discussion in this report, I have grouped together the design patents addressing the graphical user interface ("UI Design Patents") and the design patents addressing elements of the appearance of electronic devices ("Electronic Device Design Patents").

### a)   UI Design Patents

#### (1)   D627,790 (" 'D790 Patent"): Graphical User Interface For a Display Screen or Portion Thereof

33.     U.S. Design Patent number D627,790 was filed on August 20, 2007 and issued on November 23, 2010.[63]  Imran Chaudhri, the named inventor of the 'D790 Patent, assigned the patent to Apple Inc.[64]

34.     The 'D790 Patent claims "[t]he ornamental design for a graphical user interface for a display screen or portion thereof, as shown and described."[65]  The patent includes one drawing sheet, the figure of which is reproduced below.

---

[63]  U.S. Design Patent No. D627,790 S. [2.10]
[64]  U.S. Design Patent No. D627,790 S. [2.10]
[65]  U.S. Design Patent No. D627,790 S. [2.10]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 1:   'D790 Patent Drawing Sheet**[66]



35.     The 'D790 Patent explains that "[t]he FIGURE is a front view of a graphical user interface for a display screen or portion thereof showing [a] new design.  The broken lines of the display screen or portion thereof and other elements form no part of the claimed design."[67]

### (2)   D617,334 (" 'D334 Patent"): Graphical User Interface For a Display Screen or Portion Thereof

36.     U.S. Design Patent number D617,334 was filed on July 15, 2008 and issued on June 8, 2010.[68]  Imran Chaudhri, the named inventor of the 'D334 Patent, assigned the patent to Apple Inc.[69]

37.     The 'D334 Patent claims "[t]he ornamental design for a graphical user interface for a display screen or portion thereof, as shown and described."[70]  The patent includes eight drawing sheets, which are substantially similar to the first drawing sheet, the figure of which is reproduced below.

---

[66]  U.S. Design Patent No. D627,790 S. [2.10]
[67]  U.S. Design Patent No. D627,790 S. [2.10]
[68]  U.S. Design Patent No. D617,334 S. [2.11]
[69]  U.S. Design Patent No. D617,334 S. [2.11]
[70]  U.S. Design Patent No. D617,334 S. [2.11]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 2:** 'D334 Drawing Sheet 1[71] ("a front view of a graphical user interface for a display screen or portion thereof …"[72])



38.     The other figures included in the 'D334 Patent show front views of different embodiments of the design.[73]  In these figures, "[t]he broken line showing of the display screen or portion thereof … is not part of the claimed design."[74]

39.     The patent also notes that[75]

> The AT&T trademark in the upper left corner of the Figure[s] is the property of AT&T Intellectual Property II, L.P. The YouTube trademark on the left hand side of the Figures is the property of Google Inc.  The iTunes trademark on the left hand side of the Figures is the property of Apple Inc.  The App Store trademark on the bottom of the Figures is the property of Apple Inc.  The Safari trademark on the bottom of the Figures is the property of Apple Inc.  The iPod trademark on the bottom right corner of the Figures is the property of Apple Inc.  Trademarks are the property of their respective owners.

---

[71]  U.S. Design Patent No. D617,334 S. [2.11]
[72]  U.S. Design Patent No. D617,334 S. [2.11]
[73]  U.S. Design Patent No. D617,334 S. [2.11]
[74]  U.S. Design Patent No. D617,334 S. [2.11]
[75]  U.S. Design Patent No. D617,334 S. [2.11]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### (3) D604,305 (" 'D305 Patent"): Graphical User Interface For a Display Screen or Portion Thereof

40.     U.S. Design Patent number D604,305 was filed on July 23, 2007 and issued on November 17, 2009.[76]  Freddy Anzures and Imran Chaudhri, the named inventors of the 'D305 Patent, assigned the patent to Apple Inc.[77]

41.     The 'D305 Patent claims "[t]he ornamental design for a graphical user interface for a display screen or portion thereof, as shown and described."[78]  The patent includes two drawing sheets, which are substantially similar to the first drawing sheet, the figure of which is reproduced below.  Note that one of these drawing sheets was filed in color.[79]

Figure 3:     'D305 Patent Drawing Sheet 1[80] ("a front view of a graphical user interface for a display screen or portion thereof ..."[81])



---

[76]  U.S. Design Patent No. D604,305 S. [2.12]
[77]  U.S. Design Patent No. D604,305 S. [2.12]
[78]  U.S. Design Patent No. D604,305 S. [2.12]
[79]  U.S. Design Patent No. D604,305 S. [2.12]
[80]  U.S. Design Patent No. D604,305 S. [2.12]
[81]  U.S. Design Patent No. D604,305 S. [2.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

42.     The other drawing sheet shows the front view of a second embodiment of the design.[82]  Furthermore, "[t]he broken line showing of a display screen in both views forms no part of the claimed design."[83]

### b) Electronic Device Design Patents

### (1) D593,087 (" 'D087 Patent"): Electronic Device

43.     U.S. Design Patent number D593,087 was filed on July 30, 2007 and issued on May 26, 2009.[84]  The inventors of the 'D087 Patent, Bartley Andre et al., assigned the patent to Apple Inc.[85]

44.     The 'D087 Patent claims "[t]he ornamental design of an electronic device, substantially as shown and described."[86]  The patent includes twelve drawing sheets and 48 figures, which are similar to figures one through eight reproduced below.

---

[82] U.S. Design Patent No. D604,305 S. [2.12]
[83] U.S. Design Patent No. D604,305 S. [2.12]
[84] U.S. Design Patent No. D593,087 S. [2.13]
[85] U.S. Design Patent No. D593,087 S. [2.13]
[86] U.S. Design Patent No. D593,087 S. [2.13]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 4:   'D087 Patent Figures 1 and 2[87] ("a front perspective view of an electronic device …" and "a rear perspective view of the electronic device …"[88])



**FIG. 1**



**FIG. 2**

---

[87]  U.S. Design Patent No. D593,087 S, Sheet 1. [2.13]
[88]  U.S. Design Patent No. D593,087 S, p. 2. [2.13]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 5:**   'D087 Patent Figures 3 through 8[89] ("a front view thereof," "a rear view thereof," "a top view thereof," "a bottom view thereof," "a left side view thereof," "a right side view thereof"[90])



45.     The 'D087 Patent explains that "[n]one of the broken lines form a part of the claimed design."[91]  The patent explains further that[92]

> The broken lines showing the remainder of the electronic device are directed to environment.  The broken lines, within the claimed design, in embodiments **1**, **2**, and **4** that depict an elongated oval shape and the

---

[89]  U.S. Design Patent No. D593,087 S, Sheet 2. [2.13]

[90]  U.S. Design Patent No. D593,087 S, p. 2. [2.13]

[91]  U.S. Design Patent No. D593,087 S, p. 3. [2.13]

[92]  U.S. Design Patent No. D593,087 S, p. 3. [2.13]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

broken lines, within the claimed design, in embodiments 2, 3, and 6 that depict a circle shape are superimposed on a continuous surface and are for illustrative purposes only.  The broken lines, within the claimed design, in embodiments 1, 3, and 5 that depict a large rectangular shape, indicate a non claimed shape below the continuous front surface and are for illustrative purposes only.

### (2)  D618,677 (" 'D677 Patent"): Electronic Device

46.    U.S. Design Patent number D618,677 was filed on November 18, 2008 and issued on June 29, 2010.[93]  The inventors of the 'D677 Patent, Bartley Andre et al., assigned the patent to Apple Inc.[94]

47.    The 'D677 Patent claims "[t]he ornamental design of an electronic device, as shown and described."[95]  The patent includes two drawing sheets and eight figures, all of which are reproduced below.

---

[93]  U.S. Design Patent No. D618,677 S. [2.14]
[94]  U.S. Design Patent No. D618,677 S. [2.14]
[95]  U.S. Design Patent No. D618,677 S. [2.14]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 6:   'D677 Patent Figures 1 and 2[96] ("a front perspective view of an electronic device ..."
and "a rear perspective view thereof"[97])



*FIG. 1*



*FIG. 2*

---

[96]  U.S. Design Patent No. D618,677 S, Sheet 1. [2.14]
[97]  U.S. Design Patent No. D618,677 S. [2.14]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 7:** 'D677 Patent Figures 3 through 8[98] ("a front view thereof," "a rear view thereof," "a top view thereof," "a bottom view thereof," "a left side view thereof," and "a right side view thereof"[99])



FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7    FIG. 8

48.    The 'D677 Patent notes that "[t]he claimed surface of the electronic device is illustrated with the color designation for the color black."[100]  For clarification, the 'D677 Patent states that "the article of manufacture to which the ornamental design has been applied is an electronic device, media player (e.g., music, video and/or game player), media storage device, a

[98] U.S. Design Patent No. D618,677 S, Sheet 2. [2.14]
[99] U.S. Design Patent No. D618,677 S. [2.14]
[100] U.S. Design Patent No. D618,677 S. [2.14]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

personal digital assistant, a communication device (e.g., cellular phone), a novelty item or toy."[101]  Furthermore, "[t]he electronic device is not limited to the scale shown …"[102]

### (3)  D622,270 (" 'D270 Patent"): Electronic Device

49.    U.S. Design Patent number D622,270 was filed on October 1, 2009 and issued on August 24, 2010.[103]  The inventors of the 'D270 Patent, Bartley Andre et al., assigned the patent to Apple Inc.[104]

50.    The 'D270 Patent claims "[t]he ornamental design for an electronic device, as shown and described."[105]  The patent includes five drawing sheets and nine figures, all of which are reproduced below.

---

[101] U.S. Design Patent No. D618,677 S. [2.14]
[102] U.S. Design Patent No. D618,677 S. [2.14]
[103] U.S. Design Patent No. D622,270 S. [2.15]
[104] U.S. Design Patent No. D622,270 S. [2.15]
[105] U.S. Design Patent No. D622,270 S. [2.15]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 8:   'D270 Patent Figures 1 and 2[106] ("a front perspective view of an electronic device ..." and "a rear perspective thereof"[107])



**FIG. 1**



**FIG. 2**

---

[106] U.S. Design Patent No. D622,270 S, Sheet 1. [2.15]
[107] U.S. Design Patent No. D622,270 S, p. 2. [2.15]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 9:   'D270 Patent Figures 3 and 4[108] ("a front view thereof" and "a rear view thereof"[109])



FIG. 3               FIG. 4

Figure 10:  'D270 Patent Figures 5 and 6[110] ("a left side view thereof" and "a right side view thereof"[111])



FIG. 5               FIG. 6

---

[108] U.S. Design Patent No. D622,270 S, Sheet 2. [2.15]
[109] U.S. Design Patent No. D622,270 S, p. 2. [2.15]
[110] U.S. Design Patent No. D622,270 S, Sheet 3. [2.15]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 11: 'D270 Patent Figures 7 and 8[112] ("a top plan view thereof" and "a bottom plan view thereof"[113])



**FIG. 7**

**FIG. 8**

Figure 12: 'D270 Patent Figure 9[114] ("an enlarged elevational view of a representative corner of the electronic device"[115])



**FIG. 9**

51.     The 'D270 Patent explains that "[t]he broken lines show portions of the electronic device which form no part of the claimed design."[116]

---

[111] U.S. Design Patent No. D622,270 S, p. 2. [2.15]
[112] U.S. Design Patent No. D622,270 S, Sheet 4. [2.15]
[113] U.S. Design Patent No. D622,270 S, p. 2. [2.15]
[114] U.S. Design Patent No. D622,270 S, Sheet 5. [2.15]
[115] U.S. Design Patent No. D622,270 S, p. 2. [2.15]
[116] U.S. Design Patent No. D622,270 S, p. 2. [2.15]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### (4) D504,889 (" 'D889 Patent"): Electronic Device

52.     U.S. Design Patent number D504,889 was filed on March 17, 2004 and issued on May 10, 2005.[117]   The inventors of the 'D889 Patent, Bartley Andre et al., assigned the patent to Apple Computer, Inc.[118]

53.     The 'D889 Patent claims "[t]he ornamental design of an electronic device, substantially as shown and described."[119]   The patent includes four drawing sheets and nine figures, all of which are reproduced below.

**Figure 13: 'D889 Patent Figures 1 and 2[120] ("a top perspective view of an electronic device …"** and "a bottom perspective view thereof"[121])



FIG. 1

FIG. 2

---

[117] U.S. Design Patent No. D504,889 S. [2.16]
[118] U.S. Design Patent No. D504,889 S. [2.16]
[119] U.S. Design Patent No. D504,889 S. [2.16]
[120] U.S. Design Patent No. D504,889 S, Sheet 1. [2.16]
[121] U.S. Design Patent No. D504,889 S. [2.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 14:** 'D889 Patent Figures 3 and 4[122] ("a top view thereof" and "a bottom view thereof"[123])



**FIG. 3**

**FIG. 4**

---

[122] U.S. Design Patent No. D504,889 S, Sheet 2. [2.16]
[123] U.S. Design Patent No. D504,889 S. [2.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 15:** 'D889 Patent Figures 5 through 8[124] ("a left side view thereof," "a right side view thereof," "an upper side view thereof," and "a lower side view thereof"[125])



FIG. 5

FIG. 6

FIG. 7

FIG. 8

---

[124] U.S. Design Patent No. D504,889 S, Sheet 3. [2.16]
[125] U.S. Design Patent No. D504,889 S. [2.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 16:** 'D889 Patent Figure 9[126] ("an exemplary diagram of the use of the electronic device thereof the broken lines being shown for illustrative puposes [sic] only and form no part of the claimed design"[127])



**FIG. 9**

### 3.   Apple's Trade Dress at Issue

54.     Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc. define eight sets of Apple trade dress.[128]   Apple alleges that certain of Samsung's products use this trade dress.[129]   Descriptions of the Apple trade dress claims at issue in this matter are provided below.

### a)   Original iPhone Trade Dress

---

[126] U.S. Design Patent No. D504,889 S, Sheet 4. [2.16]

[127] U.S. Design Patent No. D504,889 S. [2.16]

[128] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, pp. 1-3. [2.17]

[129] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 20. [2.17]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

55.     According to Apple, the phrase "Original iPhone Trade Dress" refers to specific elements of Apple's product design.  Those elements are:[130]

> a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic bezel around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

### b)  iPhone 3G Trade Dress

56.     Apple's "iPhone 3G Trade Dress" is described in substantially the same manner as its "Original iPhone Trade Dress."[131]   However, this trade dress claim also includes the following: "when the device is on, a row of small dots on the display screen …"[132]

### c)  iPhone 4 Trade Dress

57.     Apple's "iPhone 4 Trade Dress" has many of the same elements as the Original iPhone and iPhone 3G trade dress.  However, the claimed trade dress does differ in certain elements.  Apple's definition of its "iPhone 4 Trade Dress" is reproduced below.[133]

> a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower black borders on either side of the screen; a thin metallic band around the outside edge of the phone; when the device is on, a row of small dots on the display screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

---

[130] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, pp. 1-2. [2.17]

[131] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 2. [2.17]

[132] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 2. [2.17]

[133] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 2. [2.17]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### d)   iPhone Trade Dress

58.    Apple's "iPhone Trade Dress" incorporates certain elements of each of the other three iPhone trade dress claims.  Apple's description follows.[134]

> a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower neutral borders on either side of the screen; when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and when the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display, which does not change as other pages of the user interface are viewed.

### e)   Trade Dress Registrations

59.    In this matter, Apple has accused certain Samsung products of using three Apple U.S. trade dress registrations: 3,470,983; 3,457,218; 3,475,327.[135]

60.    Apple's Amended Complaint notes that "U.S. Registration 3,470,983 is for the overall design of the product, including the rectangular shape, the evenly rounded corners, the silver edges, the black face, and the display of sixteen colorful icons."[136]  The description of this trade dress claim, maintained on the U.S. Patent and Trademark Office website, states that "[t]he mark consists of the configuration of a rectangular handheld mobile digital electronic device with rounded silver edges, a black face, and an array of 16 square icons with rounded edges."[137]  The description goes further to describe the orientation of the icons ("[t]he top 12 icons appear on a black background, and the bottom 4 appear on a silver background") as well as what each icon depicts.[138]  "The color(s) black, blue, brown, brown-gray, gray-green, green, orange, red, silver, tan, white and yellow is/are claimed as a feature of the mark."[139]  This registration was filed October 12, 2007, published for opposition May 6, 2008, and registered July 22, 2008.[140]

---

[134] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, pp. 2-3. [2.17]

[135] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, pp. 3, 20. [2.17]

[136] Apple Inc.'s Amended Complaint, June 16, 2011, p. 41. [2.1]

[137] U.S. Registration Number 3,470,983, July 22, 2008, <http://tess2.uspto.gov>. [2.18]

[138] U.S. Registration Number 3,470,983, July 22, 2008, <http://tess2.uspto.gov>. [2.18]

[139] U.S. Registration Number 3,470,983, July 22, 2008, <http://tess2.uspto.gov>. [2.18]

[140] U.S. Registration Number 3,470,983, July 22, 2008, <http://tess2.uspto.gov>. [2.18]

61.    U.S. Registration 3,470,983 also includes the following image, which appears to be a photo of the front view of the original iPhone.[141]



62.    Apple's Amended Complaint explains that "U.S. Registration 3,457,218 is for the configuration of a rectangular handheld mobile digital electronic device with rounded corners."[142] The description of this registration available on the USPTO's website notes simply that "[t]he mark consists of the configuration of a rectangular handheld mobile digital electronic device with rounded corners."[143]   Color is not claimed as part of the registration.[144]   U.S. Registration 3,457,218 was filed October 12, 2007, published for opposition April 15, 2008, and registered July 1, 2008.[145]

63.    The following image was provided as part of U.S. Registration Number 3,457,218.[146]



64.    Finally, Apple describes that "U.S Registration 3,475,327 is for a rectangular handheld mobile digital electronic device with a gray rectangular portion in the center, a black band above and below the gray rectangle and on the curved corners, and a silver outer border

---

[141] U.S. Registration Number 3,470,983, July 22, 2008, <http://tess2.uspto.gov>. [2.18]
[142] Apple Inc.'s Amended Complaint, June 16, 2011, p. 41. [2.1]
[143] U.S. Registration Number 3,457,218, July 1, 2008, <http://tess2.uspto.gov>. [2.19]
[144] U.S. Registration Number 3,457,218, July 1, 2008, <http://tess2.uspto.gov>. [2.19]
[145] U.S. Registration Number 3,457,218, July 1, 2008, <http://tess2.uspto.gov>. [2.19]
[146] U.S. Registration Number 3,457,218, July 1, 2008, <http://tess2.uspto.gov>. [2.19]

and side."[147]  The USPTO's description states that "[t]he mark consists of the configuration of a handheld mobile digital electronic device."[148]  Specifically, this registration describes the placement of the colors on the outer surface of the device: "[t]he color gray appears as a rectangle at the front, center of the device.  The color black appears on the front of the device above and below the gray rectangle and on the curved corners of the device.  The color silver appears as the outer border and sides of the device."[149]  As the description suggests, "[t]he color(s) gray, silver and black is/are claimed as a feature of the mark."[150]  This trade dress was filed October 12, 2007, published for opposition May 13, 2008, and registered July 29, 2008.[151]

65.  The following image was included with the registration.[152]



### f)   85/299,118 Trade Dress Application

66.  Apple's Amended Complaint explains that "U.S. Application Serial No. 85/299,118 is for the configuration of a rectangular handheld mobile digital electronic device with evenly rounded corners — the iPhone 4."[153]  The USPTO's description of the mark, which was filed April 19, 2011, explains that color is not a claimed feature.[154]  "The mark consists of the configuration of a rectangular handheld mobile digital electronic device with rounded corners and a circular convex indentation containing the outline of a square with round corners."[155]

67.  The application includes the following image.[156]

---

[147] Apple Inc.'s Amended Complaint, June 16, 2011, p. 41. [2.1]

[148] U.S. Registration Number 3,475,327, July 29, 2008, <http://tess2.uspto.gov>. [2.20]

[149] U.S. Registration Number 3,475,327, July 29, 2008, <http://tess2.uspto.gov>. [2.20]

[150] U.S. Registration Number 3,475,327, July 29, 2008, <http://tess2.uspto.gov>. [2.20]

[151] U.S. Registration Number 3,475,327, July 29, 2008, <http://tess2.uspto.gov>. [2.20]

[152] U.S. Registration Number 3,475,327, July 29, 2008, <http://tess2.uspto.gov>. [2.20]

[153] Apple Inc.'s Amended Complaint, June 16, 2011, p. 17. [2.1]

[154] U.S. Application Serial Number 85/299,118, April 19, 2011, <http://tess2.uspto.gov>. [2.21]

[155] U.S. Application Serial Number 85/299,118, April 19, 2011, <http://tess2.uspto.gov>. [2.21]

[156] U.S. Application Serial Number 85/299,118, April 19, 2011, <http://tess2.uspto.gov>. [2.21]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



### g)   iPad and iPad 2 Trade Dress

68.    Though defined separately in Apple's Objections and Responses to Samsung's First Set of Interrogatories, the iPad and iPad 2 trade dress contains the same elements.  Those elements are as follows.[157]

> a rectangular product with four evenly rounded corners; a flat clear surface covering the front of the product; the appearance of a metallic rim around the flat clear surface; a display screen under the clear surface; under the clear surface, substantial neutral (black or white) borders on all sides of the display screen; and when the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen.

### h)   77/921,838, 77/921,829, and 77/921,869 Trade Dress Applications

69.    Apple's Amended Complaint describes that "U.S. Application Serial No. 77/921,838 is for the configuration of a digital electronic device with a screen on the front of the device, and a circle at the bottom center of the front — the iPad."[158]   Like Application 85/299,118, this application's description does not claim color.[159]   "The mark consists of a configuration of a digital electronic device with a screen on the front of the device, and a circle at the bottom center of the front."[160]  This application was filed January 27, 2010.[161]

70.    The following image is included.[162]

---

[157] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 3. [2.17]
[158] Apple Inc.'s Amended Complaint, June 16, 2011, p. 17. [2.1]
[159] U.S. Application Serial Number 77/921,838, January 27, 2010, <http://tess2.uspto.gov>. [2.22]
[160] U.S. Application Serial Number 77/921,838, January 27, 2010, <http://tess2.uspto.gov>. [2.22]
[161] U.S. Application Serial Number 77/921,838, January 27, 2010, <http://tess2.uspto.gov>. [2.22]
[162] U.S. Application Serial Number 77/921,838, January 27, 2010, <http://tess2.uspto.gov>. [2.22]



71.     Apple's "U.S. Application Serial Number 77/921,829 is for a configuration of a digital electronic device, with a gray screen, a black border around the screen, a black concave circle at the bottom of the border, and silver sides — also the iPad."[163] The description of the application, which was filed on January 27, 2010, notes that "[t]he color(s) black, silver, gray and white is/are claimed as a feature of the mark."[164] "The mark consists of a configuration of a digital electronic device, with a gray screen, a black border around the screen, and a black concave circle at the bottom of the border. The sides of the device are silver."[165]

72.     The image below is included.[166]



73.     Finally, Apple's "U.S. Application Serial No. 77/921,869 is for the overall design of the product, including a black screen and silver casing, with thirteen colorful square icons arranged in four rows on the face of the screen, and a concave black circle with the outline of a gray square in the center below the bottom row of icons — again, the iPad."[167] This application, filed January 27, 2010, describes that "[t]he mark consists of a configuration of a digital electronic device with a black screen and silver casing. There are thirteen icons consisting of squares with rounded edges arranged in four rows on the face of the screen."[168] The application goes on to describe each icon as well as noting that "[b]elow the bottom row of icons

---

[163] Apple Inc.'s Amended Complaint, June 16, 2011, p. 17. [2.1]

[164] U.S. Application Serial Number 77/921,829, January 27, 2010, <http://tess2.uspto.gov>. [2.23]

[165] U.S. Application Serial Number 77/921,829, January 27, 2010, <http://tess2.uspto.gov>. [2.23]

[166] U.S. Application Serial Number 77/921,829, January 27, 2010, <http://tess2.uspto.gov>. [2.23]

[167] Apple Inc.'s Amended Complaint, June 16, 2011, p. 17. [2.1]

is a concave black and gray circle with the outline of a gray square in the center."[169]  Further, the colors black, silver, white, red, orange, brown, yellow, blue, gray, dark gray, purple, and green are claimed.[170]

74.    The application displays the image below.[171]



### 4.    Apple's Trademarks at Issue

75.    Apple asserts three sets of trademarks against Samsung's accused products: the Registered Icon Trademarks, the iTunes Store Trademark, and the iTunes Eighth Note and CD Design Trademark.[172]  Each of these sets is described below.

#### a)    Registered Icon Trademarks

76.    Apple's Registered Icon Trademarks include "the marks shown in U.S. Registration Nos. 3,886,196; 3,889,642; 3,886,200; 3,889,685; 3,886,169; and 3,886,197."[173]  These Registered Icon Trademarks are displayed below.  Underneath each icon is the icon's filing date ("Filed"), date on which the application was published for opposition ("Pub."), and the registration date ("Reg.").

---

[169] U.S. Application Serial Number 77/921,869, January 27, 2010, <http://tess2.uspto.gov>. [2.24]

[169] U.S. Application Serial Number 77/921,869, January 27, 2010, <http://tess2.uspto.gov>. [2.24]

[170] U.S. Application Serial Number 77/921,869, January 27, 2010, <http://tess2.uspto.gov>. [2.24]

[171] U.S. Application Serial Number 77/921,869, January 27, 2010, <http://tess2.uspto.gov>. [2.24]

[172] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 20. [2.17]

[173] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 3. [2.17]

39

No. 3,886,196[174]



Filed: April 21, 2010
Pub.: September 21, 2010
Reg.: December 7, 2010

No. 3,889,685[177]



Filed: April 21, 2010
Pub.: September 28, 2010
Reg.: December 14, 2010

No. 3,889,642[175]



Filed: April 21, 2010
Pub.: September 28, 2010
Reg.: December 14, 2010

No. 3,886,169[178]



Filed: April 21, 2010
Pub.: September 21, 2010
Reg.: December 7, 2010

No. 3,886,200[176]



Filed: April 21, 2010
Pub.: September 21, 2010
Reg.: December 7, 2010

No. 3,886,197[179]



Filed: April 21, 2010
Pub.: September 21, 2010
Reg.: December 7, 2010

### b) iTunes Store Trademark

77. The Purple iTunes Store Trademark refers to "the mark shown in U.S. Application Serial No. 85/041,463."[180] This application was filed on May 18, 2010 and published for opposition on April 19, 2011.[181] This icon is pictured below.[182]

[174] U.S. Registration Number 3,886,196, December 7, 2010, <http://tess2.uspto.gov>. [2.26]

[175] U.S. Registration Number 3,889,642, December 14, 2010, <http://tess2.uspto.gov>. [2.26]

[176] U.S. Registration Number 3,886,200, December 7, 2010, <http://tess2.uspto.gov>. [2.27]

[177] U.S. Registration Number 3,889,685, December 14, 2010, <http://tess2.uspto.gov>. [2.28]

[178] U.S. Registration Number 3,886,169, December 7, 2010, <http://tess2.uspto.gov>. [2.29]

[179] U.S. Registration Number 3,886,197, December 7, 2010, <http://tess2.uspto.gov>. [2.30]

[180] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 4. [2.17]

[181] U.S. Application Serial Number 85/041,463, May 18, 2010, <http://tess2.uspto.gov>. [2.31]

[182] U.S. Application Serial Number 85/041,463, May 18, 2010, <http://tess2.uspto.gov>. [2.31]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



### c)   iTunes Eighth Note and CD Design Trademark

78.     The iTunes Eighth Note and CD Design Trademark refers to "the mark shown in U.S. Registration No. 2,935,038."[183]  This application was filed on March 11, 2004, published for opposition on December 28, 2004, and registered on March 22, 2005.[184]   The mark is reproduced below.[185]



### C.  Samsung's Allegedly Infringing Products

79.     Apple has accused several Samsung smartphones and tablets of infringing its asserted intellectual property.  I reproduce below a summary of Apple's infringement assertions as reported in the Musika Report:[186]

---

[183] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, p. 4. [2.17]

[184] U.S. Registration Number 2,935,038, March 22, 2005, <http://tess2.uspto.gov>. [2.32]

[185] U.S. Registration Number 2,935,038, March 22, 2005, <http://tess2.uspto.gov>. [2.32]

[186] I understand that there is some dispute between the parties as to which Samsung products are accused in this lawsuit.  The inclusion of a product in my analysis should not be taken as an admission that Samsung agrees that the product is properly accused in this case.  Additionally, I understand that there is a dispute between the parties as to whether Samsung is required to produce financial information relating to the Galaxy S II (Skyrocket), Galaxy S II (Epic 4G Touch), and the Galaxy Tab 10.1 (4G LTE). (Samsung's Opposition to Apple's Motion for Rule 37(b)(2) Sanctions for Samsung's Alleged Violation of January 27, 2012 Damages Discovery Order, March 12, 2012, pp. 15-16. [13.5].) For that reason, I have not included those three products in my analysis.  In the event the Court determines that Samsung must produce financial information relating to the Galaxy S II (Skyrocket), Galaxy S II (Epic 4G Touch), and the Galaxy Tab 10.1 (4G LTE), I will supplement my analysis.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 17:  Samsung Devices that Allegedly Infringe Apple Utility and Design Patents[187]**

| Patent | Utility Patents — User Interface | | | | Utility Patents — Touchscreen | | | Design Patents — GUI | | | Design Patents — Electronic Device | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | '002 | '163 | '381 | '891 | '915 | '607 | '129 | D305 | D334 | D790 | D087 | D270 | D677 | D889 |
| Acclaim | ✓ | ✓ | | ✓ | ✓ | | | | | | | | | |
| Captivate | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | | |
| Continuum | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | | |
| Droid Charge | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | | |
| Epic 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | | |
| Exhibit 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Fascinate | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | ✓ | |
| Galaxy Ace | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | ✓ | |
| Galaxy Prevail | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Galaxy S (i9000) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Galaxy S 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Galaxy S II (AT&T) | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | ✓ | | ✓ | |
| Galaxy S II (i9100) | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | ✓ | ✓ | |
| Galaxy S II (T-Mobile) | ✓ | ✓ | | ✓ | ✓ | | | | | | | | ✓ | |
| Galaxy S Showcase (i500) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | ✓ | |
| Galaxy Tab | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | |
| Galaxy Tab 10.1 (WiFi) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | ✓ |
| Gem | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | | |
| Gravity Smart | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Indulge | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | | |
| Infuse 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Intercept | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Mesmerize | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | | | ✓ | |
| Nexus S | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Nexus S 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Replenish | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Sidekick | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | |
| Transform | ✓ | ✓ | | ✓ | ✓ | | | | | | | | | |
| Vibrant | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |

---

[187] Schedule 6.1. [1.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 18:  Samsung Devices that Allegedly Infringe Apple Trade Dress and Trademarks[188]**

| Patent | Trade Dress | | | | | | | Trademarks | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | '218 | '327 | '983 | iPhone | iPhone 3G | iPhone 4 | iPad / iPad 2 | '038 | '169 | '196 | '197 | '200 | '642 | '685 | '463 (Pending) |
| Acclaim | | | | | | | | | | | | | ✓ | | |
| Captivate | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Continuum | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Droid Charge | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Epic 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Exhibit 4G | | | | | | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Fascinate | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Galaxy Ace | | | | | | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Galaxy Prevail | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | | | | ✓ | |
| Galaxy S (i9000) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Galaxy S 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Galaxy S II (AT&T) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ |
| Galaxy S II (i9100) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ |
| Galaxy S II (T-Mobile) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | | ✓ | ✓ | | | ✓ | ✓ |
| Galaxy S Showcase (i500) | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Galaxy Tab | | | | | | | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ |
| Galaxy Tab 10.1 (WiFi) | | | | | | | ✓ | ✓ | | | ✓ | | | ✓ | ✓ |
| Gem | | | | | | | | ✓ | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Gravity Smart | | | | | | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Indulge | | | | | | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Infuse 4G | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Intercept | | | | | | | | | | | | | | ✓ | |
| Mesmerize | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Nexus S | | | | | | | | | | | | | | ✓ | |
| Nexus S 4G | | | | | | | | | | | | | | ✓ | |
| Replenish | | | | | | | | | | | | | | ✓ | |
| Sidekick | | | | | | | | | ✓ | | | | ✓ | | |
| Transform | | | | | | | | | | | | | | ✓ | |
| Vibrant | ✓ | ✓ | ✓ | ✓ | ✓ | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |

## 1.  Samsung Galaxy Smartphones

80.    Upon the brand's launch in June of 2010, one article stated that Samsung's Galaxy S line of smartphones marked the arrival of "a new class of smartphone that [would]

---

[188] Schedule 6.1. [1.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

deliver a wealth of intelligent, immersive and integrated experiences for users."[189]  The same article observed that "over 100 mobile operators across the globe [had] selected the Galaxy S as their key smartphone market driver."[190]  The Galaxy S brand was to "be the flagship model of the smartphone range Samsung" began introducing in 2010.[191]

81.    As the table below shows, since Samsung released the Galaxy S i9000 overseas in June of 2010, the company had launched at least nine other phones bearing the Galaxy S name as of September, 2011.  Apple has alleged that all of these devices infringe Apple's intellectual property asserted in this matter.[192]

Figure 19:  Samsung Galaxy S Smartphone U.S. Launch Dates[193]

| Product | Launch Date | U.S. Carrier |
|---|---|---|
| Galaxy S i9000 | 6/2/2010 | Non-U.S. Launch |
| Galaxy S Vibrant | 7/15/2010 | T-Mobile |
| Galaxy S Captivate | 7/18/2010 | AT&T |
| Galaxy S Epic 4G | 8/31/2010 | Sprint |
| Galaxy S Fascinate | 9/8/2010 | Verizon |
| Galaxy S Mesmerize | 10/27/2010 | U.S. Cellular |
| Galaxy S Continuum | 11/11/2010 | Verizon |
| Galaxy S Showcase i500[194] | 11/15/2010 | Cellular South |
| Galaxy S 4G | 2/23/2011 | T-Mobile |
| Galaxy S II | 9/16/2011 | Sprint |

---

[189] "Samsung Galaxy S launches in Europe, hitting US 'later this year'," engadget, June 3, 2010. [3.7]

[190] "Samsung Galaxy S launches in Europe, hitting US 'later this year'," engadget, June 3, 2010. [3.7]

[191] "Samsung Galaxy S launches in Europe, hitting US 'later this year'," engadget, June 3, 2010. [3.7]

[192] Musika Report, Exhibit 4. [2.2]

[193] Non-U.S. launches where noted.  Note that several of these products omit the phrase "Galaxy S" from the names of the phones.  I have come to the understanding that the phones listed in the figures above are Galaxy S phones.

[194] Note that Apple's Objections and Responses to Samsung's First Set of Interrogatories list separately a "Showcase i500," "Showcase Galaxy S," and "Showcase (Cellular South)."  However, a comparison of the article announcing the release of the Galaxy S Showcase and Samsung's product page suggests that these are all the same device.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### 2.    Other Samsung Smartphones

82.    In addition to the Galaxy S line of smartphones, Samsung also released myriad other smartphones in 2010 and 2011.  All of the smartphones listed in the table below are subject to Apple's allegations of infringement in this matter.[195]

83.    Certain of these devices occupy the market for mid-range smartphones; the Exhibit 4G, Gravity Smart,[196] and the Transform[197] for example.  Most of them appear to run a variant of the Android operating system.

**Figure 20:  Non-Galaxy S Samsung Smartphone U.S. Launch Dates[198]**

| Product | Launch Date | U.S. Carrier |
|---|---|---|
| Acclaim | 7/9/2010 | U.S. Cellular |
| Intercept | 7/11/2010 | Sprint |
| Transform | 10/10/2010 | Sprint |
| Nexus S | 12/16/2010 | T-Mobile |
| Gem | 4/1/2011 | U.S. Cellular |
| Sidekick 4G[199] | 4/20/2011 | T-Mobile |
| Galaxy Prevail | 4/29/2011 | Boost Mobile |
| Nexus S 4G | 5/8/2011 | Sprint |
| Replenish | 5/8/2011 | Sprint |
| Droid Charge | 5/14/2011 | Verizon |
| Infuse 4G | 5/15/2011 | AT&T |
| Indulge | 6/7/2011 | Cricket Communications |
| Exhibit 4G | 6/22/2011 | T-Mobile |
| Gravity Smart | 6/22/2011 | T-Mobile |
| Galaxy Ace | 2011 | Non-U.S. Launch |

---

[195] Apple Inc.'s Objections and Responses to Samsung Electronics Co., Ltd.'s First Set of Interrogatories to Apple Inc., September 12, 2011, pp. 19-20. [2.17]

[196] "T-Mobile Announces Launch Date for Samsung Exhibit 4G and Gravity SMART," Brighthand, June 15, 2011, <http://www.brighthand.com/default.asp?newsID=17907&news=t-mobile+samsung+exhibit+4g+gravity+smart+android+2.2+2.3+froyo+gingerbread>. [3.9]

[197] "Sprint Launches Android OS-based Samsung Transform, Sanyo Zio," Brighthand, October 10, 2010, <http://www.brighthand.com/default.asp?newsID=17103&news=Google+Android+OS+Sprint+Samsung+Transform+Sanyo+Zio+ID>. [3.10]

[198] Non-U.S. launches where noted.

[199] Apple's Objections and Responses list the "Sidekick."  The only Sidekick phone that appears to be manufactured by Samsung is the Sidekick 4G.  Earlier versions of the Sidekick sold by T-Mobile were primarily manufactured by Sharp.  *See, e.g.,* "T-Mobile's Sidekick 4G by Samsung coming this spring," VentureBeat, March 15, 2011, <http://venturebeat.com/2011/03/15/sidekick-4g-announced/>. [3.8]