# CORRECTED EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No.    11-cv-01846-LHK |
| Plaintiff, | **EXPERT REPORT OF JULIE L. DAVIS, CPA** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL    ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND AND EXPERIENCE ................................................................ 1

II.    ASSIGNMENT .............................................................................................. 2

    A.    Case Background and Procedural History ................................................ 2
    B.    Products, Patents, Infringement Findings, and Notice Periods .................. 5
    C.    Limitations from Case Management Order ................................................ 5
    D.    Scope of Assignment and Issues to Be Addressed ................................... 6

III.   MATERIALS CONSIDERED ........................................................................ 7

IV.   BACKGROUND ........................................................................................... 8

    A.    Summary of Apple's Patents that Are the Subject of the New Trial ............ 8
    B.    Summary of the Parties and the Relevant Market ................................... 10

         1.    Apple ................................................................................... 10

             a.    iPhone ..................................................................... 11

             b.    iPad ........................................................................ 12

             c.    Apple Sales of iPhone and iPad ................................. 13

         2.    Samsung ............................................................................. 13

             a.    SEC ........................................................................ 13

             b.    SEA ........................................................................ 14

             c.    STA ........................................................................ 14

             d.    Samsung's Infringing Products ................................... 15

         3.    The Wireless Device Industry ............................................... 15

             a.    Smartphones ........................................................... 16

             b.    Tablets .................................................................... 18

             c.    The Ecosystem ........................................................ 19

V.    ASSUMPTIONS ......................................................................................... 21

VI.   SUMMARY OF CONCLUSIONS AND OPINIONS ....................................... 22

    A.    Summary of Damages Calculations and Results ..................................... 22
    B.    Summary of Alternative Damages Calculations and Results ..................... 25

VII.  IRREPARABLE HARM ............................................................................... 27

    A.    Background ........................................................................................... 27
    B.    Apple's Loss of Goodwill ...................................................................... 28
    C.    Erosion and Dilution of Apple's Brand ................................................... 29
    D.    Apple's Loss of Market Share ................................................................ 31
    E.    Difficulty of Calculating Damages ......................................................... 33

VIII. MONETARY DAMAGES ............................................................................ 34

    A.    Use of Mr. Musika's Methodology ......................................................... 35
    B.    Legal Overview of Monetary Damages Remedies .................................... 38
    C.    Apple's Lost Profits .............................................................................. 39

         1.    Panduit Factors .................................................................... 40

|   |   |   | a. | Demand for the Patented Product.................................. 40 |
|---|---|---|---|---|
|   |   |   | b. | Absence of Acceptable Non-Infringing Substitutes.................. 44 |
|   |   |   | c. | Marketing and Manufacturing Capability to Exploit Demand ................................................................... 46 |
|   |   |   | d. | Amount of Profit Apple Would Have Made Absent Infringement ................................................................ 48 |
|   |   | 2. | | Evidence Introduced at Trial Confirms These Opinions.......................... 54 |
|   | D. | | | Samsung's Profits ............................................................. 62 |
|   |   | 1. | | Samsung's Revenues from Infringing Sales............................ 63 |
|   |   | 2. | | Deduction of Costs to Calculate Total Profit.......................... 64 |
|   |   | 3. | | The Reliability of Samsung's Financial Data.......................... 65 |
|   |   | 4. | | Calculation of Samsung's Profits Using Samsung's Classification of Costs as Fixed and Variable ...................... 72 |
|   |   | 5. | | Evidence Introduced at Trial Confirms These Opinions......................... 74 |
|   | E. | | | Reasonable Royalty ........................................................... 76 |
|   |   | 1. | | Royalty Structure .......................................................... 78 |
|   |   | 2. | | Royalty Base ................................................................ 78 |
|   |   | 3. | | Royalty Rates ............................................................... 79 |
|   |   | 4. | | Market Reference Points .................................................. 80 |
|   |   |   | a. | International Business Machines Corporation ("IBM")/Apple Cross License.................................. 81 |
|   |   |   | b. | Nokia Corporation/Apple Cross License ........................ 82 |
|   |   | 5. | | Cost and Income Reference Points .................................... 85 |
|   |   | 6. | | The Hypothetical Negotiation............................................ 87 |
|   |   |   | a. | Factor #1: The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty ........................ 89 |
|   |   |   | b. | Factor #2: The rates paid by the licensee for the use of other patents comparable to the patent-in-suit ...................... 89 |
|   |   |   | c. | Factor #3: The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold...................... 90 |
|   |   |   | d. | Factor #4: The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly .............. 90 |
|   |   |   | e. | Factor #5: The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter ........................ 91 |

|  |  | f. | Factor #6: The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales ........................................................ 94 |
|  |  | g. | Factor #7: The duration of the patent and the term of the license ................................................................................. 97 |
|  |  | h. | Factor #8: The established profitability of the product made under the patent; its commercial success; and its current popularity ........................................................................... 99 |
|  |  | i. | Factor #9: The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results ......................................... 100 |
|  |  | j. | Factor #10: The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.............................................................. 104 |
|  |  | k. | Factor #11: The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use ................................................................................. 105 |
|  |  | l. | Factor #12: The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions ......................................................... 105 |
|  |  | m. | Factor #13: The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer ................................................................................. 105 |
|  |  | n. | Factor #14: The opinion testimony of qualified experts............. 106 |
|  |  | o. | Factor #15: The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention   would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.............................. 107 |
|  | 7. | | Evidence Introduced at Trial Confirms These Opinions........................ 108 |
| IX. | POSSIBLE REVISION ............................................................................. 111 |

1  utility patent and each design patent, and that the accused products infringed or diluted at least

2  one of the asserted Apple trade dresses and infringed at least one of Apple's trademarks.

3      59.    Generally, those assumptions will not be necessary because of the jury's verdict.

4  The intervening trial, jury verdict, and the Court's post-trial rulings confirm the validity of the

5  Apple New Trial Patents in the new trial and lay out which Accused Products infringe which

6  patent claims and dilute Apple's trade dresses.  Except where discussed below in the context of

7  the hypothetical negotiations resulting in a reasonable royalty, I have not had a need to resort to

8  assumptions regarding infringement or validity, and my opinions arise from the jury's

9  infringement and validity determinations.

10  **VI.    SUMMARY OF CONCLUSIONS AND OPINIONS**

11      **A.    Summary of Damages Calculations and Results**

12      60.    As explained above, I have evaluated Apple's damages for the 13 products and 5

13  patents for which the Court ordered a new trial on damages.  The New Trial Patents include

14  utility patents and design patents.  The legal remedies available to Apple as compensation for

15  Samsung's infringement of the New Trial Patents are set forth in **Exhibit 14**.  **Exhibit 15-PT**

16  identifies the specific types of remedy used to calculate Apple's damages.  As shown in **Exhibit**

17  **15-PT**, Samsung's infringement of the utility patents at issue in the new trial gives rise to

18  damages on sales of both smartphone and tablet products, whereas Samsung's infringement of the

19  design patents at issue in the new trial gives rise to damages only on sales of smartphones.  This

20  is because the D'305 and D'677 Patents are specific to smartphones.

21      61.    For infringement of a utility patent, the patent holder may seek damages under two

22  theories:  lost profits and/or a reasonable royalty.  The guiding rule in each case is that the amount

23  of damages must be adequate to compensate for the infringement.[81]  I have considered each

24  theory in connection with Samsung's infringement of Apple's utility patents at issue in the new

25  trial, and concluded that an award of damages adequate to compensate Apple for that

26  infringement should be based on both a lost profits and a reasonable royalty damages award.

27  _____

28      [81] See **Exhibit 14**.  See also 35 U.S.C. § 284.

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

62.     For infringement of a design patent, the patent holder may seek damages under three theories:  lost profits, infringer's profits, and/or a reasonable royalty.[82]  I understand that in calculating damages under an infringer's profits theory, it is acceptable to calculate damages based on the infringer's "total profits."[83]  I have considered each of these three theories in connection with Samsung's infringement of Apple's design patents at issue in the new trial, and concluded that an award of damages for that infringement should be based on Apple's lost profits and Samsung's profits.  To address a dispute regarding the size of Samsung's profits for these products after Apple gave notice of Samsung's infringement, I have also identified a per unit reasonable royalty for Apple's design patents.

63.     While Apple is entitled to compensation in accordance with the multiple different theories of recovery available to Apple under the law, Apple is not entitled to recover under more than one theory with respect to the same infringing unit sale.[84]  In other words, if a particular infringing unit sale is awarded one form of monetary recovery (e.g., Apple's lost profits), that same infringing unit sale cannot be awarded another form of monetary recovery (e.g., Samsung's profits or a reasonable royalty).

64.     I have carefully reviewed the damages model prepared by Mr. Musika in connection with the first trial in this matter.  In accordance with the legal principles discussed in paragraph 83 of the Original Expert Report, Mr. Musika's model eliminated the possibility that any particular unit sale could be assigned to more than one theory of recovery.  Mr. Musika accomplished this by approaching the calculation of damages for each infringing unit sale in a sequential manner.  First, Mr. Musika considered whether an infringing sale qualified for lost profits damages.  If so, that unit was counted as a lost sale, and no other form of remedy was awarded to that unit.  If that unit did not qualify for a lost profits award, Mr. Musika next considered whether that unit qualified for an award of infringer's profits.  If so, that form of

---

[82] See **Exhibit 14**.  See also 35 U.S.C. §§ 289 and 284.

[83] See **Exhibit 14**.  See also 35 U.S.C. § 289.

[84] Dkt. 1903 at 96: Final Jury Instruction No. 74, Monetary Remedies     Only One Recovery Per Accused Sale.

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

23

remedy and no other was applied.  If, on the other hand, that unit did not qualify for an award of either lost profits or infringer's profits, it was assigned a reasonable royalty.  **Exhibit 16-PT** illustrates the sequential approach that Mr. Musika adopted to avoid impermissibly assigning the same infringing unit sale to more than one form of damages recovery.  I have adopted and applied this same methodology.

65.     Using the same methodology and damages model that Mr. Musika used, as adjusted to address the jury's verdict and the Court's post-trial orders as discussed in paragraphs 89 96, I have calculated an award of damages adequate to compensate Apple for Samsung's infringement with respect to the 13 products at issue and the 5 New Trial Patents.  The results of that damages calculation on a product-by-product basis are set forth in detail in **Exhibits 17-PT** and **17.1-PT.**  A summary of these damages follows:

|  | Revenue Basis | Gross Profit Basis |
|---|---|---|
| Apple's Lost Profits | $    397,545,610 | $    397,545,610 |
| Samsung's Profits | $    598,975,032 | $    160,399,157 |
| Reasonable Royalty | $      33,169,454 | $      33,169,454 |
| Total Damages | $ 1,029,690,097 | $    591,114,222 |

66.     Mr. Musika also calculated a separate measure of damages after having removed Apple's lost profits from the damages calculation.  I have prepared the same damages calculation based on Mr. Musika's methodology and damages model, as adjusted to address the jury's verdict and the Court's post-trial orders as discussed in paragraphs 89 96.  The results of that damages calculation on a product-by-product basis are set forth in detail in **Exhibits 18-PT** and **18.1-PT**.  A summary of these damages follows:

|  | Revenue Basis | Gross Profit Basis |
|---|---|---|
| Samsung's Profits | $    855,231,612 | $    233,579,389 |

| | | |
|---|---|---|
| Reasonable Royalty | $    35,655,500 | $    35,655,600 |
| Total Damages | $  890,887,112 | $  269,234,889 |

67.     Mr. Musika also calculated a second separate measure of damages after having removed Samsung's profits from the damages calculation.  I have prepared the same calculation based on Mr. Musika's methodology and damages model, as adjusted to address the jury's verdict and the Court's post-trial orders as discussed in paragraphs 89 96.  The results of that damages calculation on a product-by-product basis are set forth in detail in **Exhibits 19-PT** and **19.1-PT**. A summary of these damages follows:

| | |
|---|---|
| Apple's Lost Profits | $   397,545,610 |
| Reasonable Royalty | $     86,255,157 |
| Total Damages | $   483,800,767 |

68.     **Exhibit 20-PT** provides a description of how damages were calculated for each form of remedy discussed above   i.e., Apple's lost profits, Samsung's profits, and a reasonable royalty.

**B.     Summary of Alternative Damages Calculations and Results**

69.     I have also prepared alternative calculations of damages using the same methodologies and inputs used by Mr. Musika to address certain disputes that I have been informed may arise between the parties relating to dates relevant to the damages calculations. Specifically, I have prepared alternative calculations that vary the timing of certain events that impact the amount of Apple's damages.  The first is the date on which damages begin to accumulate.  The second is the date on which Samsung would begin to design around Apple's patents.  These issues are described below.

70.     I understand that Apple intends to seek relief from a portion of the Court's April 29, 2013 Case Management Order that states Apple may not introduce evidence of Samsung's

1    infringing sales of the Infuse 4G before May 15, 2011.  I have prepared alternative calculations,

2    again using the methodologies and data used by Mr. Musika, based on Samsung's post-notice

3    sales of the infringing Infuse 4G that occurred prior to May 15, 2011 (i.e., between April 15,

4    2011, and May 15, 2011), in the event the Court grants Apple the relief it seeks.  I have also

5    prepared alternative calculations based on the dates on which carriers first sold the remaining 12

6    infringing products to the public as recited in the July 2012 pretrial statement.

7         71.     Samsung's damages expert, Michael Wagner, has suggested that Samsung's

8    efforts to design around a particular patent would begin on the date of first infringement whether

9    or not Samsung had actual notice of the patent at that time.  I have prepared alternative lost profits

10   calculations that reflect this hypothetical assumption.  This assumption is contrary to how Mr.

11   Musika reconstructed the "but for" marketplace and does not reflect the analysis he used in his

12   Original Expert Report and Supplemental Expert Report.  Given that this approach requires

13   Samsung to begin designing around the New Trial Patents before Samsung actually became

14   aware of Apple's patents, I believe this approach to be illogical.  I have nonetheless prepared

15   these calculations so that they will be available in the event the Court adopts Mr. Wagner's

16   suggestion.  With the exception of this change, these alternative calculations otherwise use the

17   same methodology and inputs used by Mr. Musika and by me as described further below.

18        72.     Finally, I have prepared alternative calculations using Samsung's incremental

19   profitability to measure Samsung's total profits under 35 U.S.C. § 289.  These calculations use

20   the same methodology that Mr. Musika disclosed and used to determine Samsung's incremental

21   profits in his Supplemental Expert Report at paragraphs 38 to 40 and **Exhibit 50-S** (admitted at

22   trial as PX28), and are limited to the seven products in the new trial that infringe a design patent,

23   with damages calculated from and after the notice dates provided in the March 1 Order.

24        73.     A complete set of each of these alternative calculations with supporting schedules

25   can be found in the Appendix to this report in the exhibits labeled **Exhibits 17-PT-A** to **19-PT-A**

26   through **17-PT-K** to **19-PT-K**.

27

28

## VII.   IRREPARABLE HARM

### A.   Background

74.     I understand that, after the first trial in this matter, Apple moved to enjoin Samsung from engaging in the following activities:

> Infringing the '381, '915, '163, D'305, D'087, and D'677 patents by making, using, offering to sell, selling within the United States, or importing into the United States, any of the following products: Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S, Galaxy S 4G, Galaxy S II (AT&T), Galaxy S II (i9000), Galaxy Tab, Galaxy Tab 10.1 (Wi-Fi), Gem, Indulge, Infuse 4G, Mesmerize, Nexus S 4G, Replenish, Vibrant, Galaxy S II (T-Mobile), Transform, Galaxy S Showcase, Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), or any other product not more colorably different from any of these products as to a feature or design found to infringe; and

> Diluting Apple's registered iPhone trade dress (U.S. Trademark Registration No. 3,470,983) and Apple's unregistered iPhone 3G trade dress by selling or offering to sell in the United States any of the following products:  Galaxy S 4G, Galaxy S Showcase, Fascinate, Mesmerize, Vibrant, Galaxy S (i9000).[85]

75.     I further understand that the Court denied Apple's motion for a permanent injunction, and that Apple subsequently appealed that decision and is currently waiting for the Federal Circuit to issue a decision on that appeal.

76.     I have been asked by counsel to provide an opinion as to whether Apple will suffer irreparable harm if Apple does not obtain permanent injunctive relief similar to the relief Apple requested from the Court on September 21, 2012.  I understand that I would only be asked to offer my opinion on this issue to the extent that additional evidence is needed following a remand from the Federal Circuit.  Mr. Musika addressed the irreparable harm Apple would suffer from Samsung's infringement at paragraphs 93 to 116 of the Original Expert Report.  I have reviewed Mr. Musika's analysis and agree with his opinions that the monetary damages, calculated in the methods discussed below, will not fully compensate Apple for the harm that Apple has suffered

---

[85] Dkt. 2133 at 1-2: [Proposed] Order Granting Apple's Motion for a Permanent Injunction and Damages Enhancement, dated Nov. 10, 2012.

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

1    and will suffer from Samsung's infringement.  I incorporate the foregoing paragraphs by

2    reference and discuss these opinions further below.

3          **B.    Apple's Loss of Goodwill**

4          77.    Business goodwill is considered an intangible asset within Generally Accepted

5    Accounting Principles.  I understand that harm to business goodwill has traditionally been viewed

6    by courts as irreparable because of the difficulty in quantifying a company's goodwill and the

7    precise monetary value of any diminution of that goodwill.  The irreparable harm due to loss of

8    goodwill may be illustrated at least in part by reference to the value assigned to a company's

9    intangible versus tangible assets:  "In 2003, the market value (stock prices times number of shares

10   outstanding) of U.S. publicly traded companies was five times larger than their balance sheet

11   value, which reflects primarily the net worth of physical and financial (stocks, bonds) assets.

12   Thus, about three-quarters of the value of public companies, as perceived by investors, reflects

13   non-physical and nonfinancial assets.  Much of this huge value constitutes intangible assets,

14   which are absent from corporate balance sheets."[86]  The difference in value between Apple's

15   reported net worth and its market capitalization illustrates this very point:  As of December 31,

16   2011, Apple had an estimated net worth of $90.05 billion versus an estimated market

17   capitalization of $377.5 billion.[87]

18         78.    As these facts illustrate, the equity market may assign a real economic value to a

19   company's goodwill and other intangible assets, as reflected in that company's substantially

20   higher market capitalization value versus its balance sheet value.  In an efficient market, the

21   market capitalization of a publicly traded company will generally reflect the market's prediction

22   of the company's future cash flows and profitability.  Thus, a decrease in a company's expected

23   future earnings will have a negative effect on the company's overall market value, and hence the

---

24

25   [86] Intangible Assets:  Concepts and Measurements, Baruch Lev, New York University, New York, USA, Encyclopedia of Social Measurement, Volume 2, 2005.

26   [87] For Apple's market capitalization, see http://www.wolframalpha.com/input/?i_appl+
27   market+cap+as+of+12%2F31%2F11.  Apple's net worth as of Dec. 31, 2011 equals total assets of $138.7 billion less total liabilities of $48.6 billion (see Apple Inc. Form 10-Q for the quarter ended Dec. 31, 2011, p. 3).

28

1  value of its goodwill and other intangible assets.  Therefore, any diminution of Apple's expected

2  future earnings due to actual or perceived infringement by Samsung of the '381, '915, '163,

3  D'305, D'087, and D'677 patents, Apple's registered iPhone trade dress (U.S. Trademark

4  Registration No. 3,470,983), and Apple's unregistered iPhone 3G trade dress by the products for

5  which Apple is seeking an injunction will reduce the value of Apple's market capitalization, and

6  hence the value of Apple's goodwill and other intangible assets.  Since the present damages

7  model only captures a portion of the lost earnings that Apple has suffered as a consequence of

8  Samsung's infringement, even if the jury were to award Apple all its claimed lost profits, such an

9  award would still not fully compensate Apple for the diminution of its overall market value, and

10 hence the value of its goodwill and other intangible assets.

11         **C.    Erosion and Dilution of Apple's Brand**

12         79.    The value attributed to a company's brand also constitutes a measurable portion of

13 the overall value of the company's goodwill and other intangible assets.  In recent years, the

14 Apple brand has been recognized as one of the most valuable brands in the world.  For example, a

15 company named Interbrand Corp., which specializes in brand value analysis, ranked Apple's

16 brand as number 8 on its list of the Top 100 brands in 2011.[88]

17         80.    Samsung's continued infringement of Apple's patents, absent an injunction, would

18 cause irreparable harm to Apple's brand.  Apple's brand value derives in part from the Apple

19 ecosystem, which is a source of substantial revenue generation as customers who buy Apple

20 products will tend also to purchase additional interrelated Apple products.  For example, a study

21 performed by a third party at Apple's request found that only 10% of iPad buyers in the United

22 States did not purchase any accessories for their iPad.  Those accessories included smart covers,

23 cases, screen protectors, camera connection kits, digital AV adapters, styluses, power adapters,

24

25 ───────────────

26 [88] Interbrand 2011 Ranking of the Top 100 Brands, http://www.interbrand.com/en/best-global-brands/previous-years/best-global-brands-2011.aspx.  *See also* Declaration of Michael J.

27 Wagner In Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, dated Aug. 21, 2011, p. 5 ("It's no secret that Apple's extensive marketing efforts have created one of the most valuable brands worldwide.").

28

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

1  wireless keyboards, and other products.[89]  Consumers who purchase Apple products also tend to

2  purchase interrelated content and services from Apple through its online stores, including music,

3  applications, and services such as iCloud.  Apple customers also generate additional revenue for

4  Apple through other elements of Apple's business, such as advertising sales.  Any lost sale due to

5  Samsung's infringement will therefore lead to downstream revenue losses beyond the lost sale

6  itself.  Almost none of the Apple downstream revenue losses associated with its ecosystem is

7  captured in the damages model prepared by Mr. Musika and used by me below, which measures

8  primarily the loss of profits on the lost smartphone or tablet product itself.  These additional

9  downstream revenue losses would be very difficult to quantify to a reasonable certainty given the

10  complexity involved in attributing specific amounts of these revenue losses to the initial lost sale.

11     81.     Apple's brand value also derives in part from Apple customers' high sense of

12  loyalty to Apple, which is an additional source of revenue generation for Apple.  A study by

13  Strategy Analytics found that "Apple iPhone owners are not only most satisfied with their phones,

14  they are most likely to buy their next phone from Apple, as well."[90]  Apple's iPhone customers

15  are also more likely to purchase additional products from Apple, such as iPads and Macs.[91]  For

16  the same reason that losses of ecosystem revenue are difficult to quantify to a reasonable

17  certainty, so too are the revenue losses associated with the diversion of loyal customers from

18  Apple to Samsung due to Samsung's ongoing infringement.

19     82.     A portion of Apple's brand value also derives from Apple's position as a market

20  leader and its reputation for innovation and design.  Many consumers purchase Apple's products

---

[89] Apple Market Research & Analysis "iPad Tracking Study: FY11-Q3 Report," dated Aug. 2011 (APLNDC-Y0000024130  APLNDC-Y00000241333 at APLNDC-Y0000024143).

[90] Strategy Analytics, "Apple iPhone Owners Most Likely to Repeat Purchase," by Paul Brown, dated Mar. 9, 2010 (http://www.strategyanalytics.com/default.aspx?mod_pressreleaseviewer&a0_4870).

[91] CNN Money, "Piper Jaffray survey of iPad buyers:  74% owned Macs; 66% had iPhones," by Philip Elmer-DeWitt, dated Apr. 5, 2010 (http://tech.fortune.cnn.com/2010/04/05/piper-jaffray-survey-of-ipad-buyers-74-owned-macs-66-had-iphones/); "Apple iPad 2 sales: New customers buying; Analysts see big launch," by Larry Dignan, dated Mar. 13, 2011 (http://www.zdnet.com/blog/btl/apple-ipad-2-sales-new-customers-buying-analysts-see-big-launch/46030).

1  in the first instance, and anticipate and purchase new Apple products when they are launched

2  because of Apple's position as a market leader and its reputation for innovation and design.  The

3  sale of competing products that copy Apple's product designs and features diminishes Apple's

4  ability to position itself as a market leader and its reputation for innovation and design, and

5  threatens to turn Apple's unique products into something commonplace.  This type of harm

6  cannot be compensated by damages.  Another advantage of Apple's market leadership position

7  and reputation for innovation and design is to confer on Apple increased leverage during its

8  negotiations with wireless carriers, since those carriers benefit from the increased consumption of

9  their network services driven by the use of Apple products on their networks.  Samsung's

10  ongoing infringement will continue to impair Apple's market leadership position and reputation

11  for innovation, which in turn will have economic consequences for Apple that are difficult if not

12  impossible to quantify with reasonable certainty.  The present damages model does not and

13  cannot adequately compensate Apple for those types of harms either.

14       **D.**    **Apple's Loss of Market Share**

15       83.    Samsung's ongoing infringement will also continue to take market share away

16  from Apple at a critical time in the growth of the smartphone and tablet markets.  **Exhibits 12** and

17  **12.1** illustrate the rapid past and projected expansion of the smartphone market in the United

18  States from 2004 to 2015. ███████████████████

19  ████████████████████████████████████████████

20  ███████████████████████ Oppenheimer Equity Research

21  similarly projected that smartphones would have a market share of 82% in North America in

22  2014.[92]  To put this in perspective, an estimated 135 million new smartphones are expected to

23  enter the market between 2012 and 2015, as compared to a total smartphone market of 105

24  million in 2011.

25

26

27       [92] *See also* Oppenheimer Equity Research Industry Update, "2Q11 Wireless and Tablet

28  Snapshot," dated Aug. 2, 2011, pp. 15 and 17.

84.     Loss of market share during this critical window of opportunity in the smartphone market will have long-term consequences beyond the lost revenue associated with the initial sale. First-time smartphone purchasers who choose an infringing Samsung smartphone over an Apple smartphone, for example, represent not just a lost sale to Apple, but the loss of a loyal customer who would support Apple's entire ecosystem of products.  As Apple's former Senior Director and Chief Patent Counsel testified at deposition:

> Secondly, there's another form of harm, which is harm to the iOS ecosystem generally, that the eco    the health of the ecosystem depends on market share, maybe growing market share; and if Apple is losing market share of momentum or market share generally to Samsung, then it's losing not just the incremental sales and the revenue associated with them, but also the impact on the ecosystem generally, which could be application developer mind share and attention.  It could be other forms of services that are provided into the ecosystem, either by Apple or by third parties, and those could have impacts not only on the vitality of Apple's iOS platform, but also even on revenue that Apple makes in areas like iTunes and the App store.[93]

These downstream losses and negative effects on the Apple ecosystem are very difficult to calculate and constitute an irreparable harm to Apple.

85.     The tablet market is experiencing a similar period of intense competition for new market participants.  As shown in **Exhibits 13** and **13.1**, after Apple revolutionized the tablet market with the launch of the iPad in 2010, purchases of tablet devices ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ **Exhibit 21** is a Global Tablet OS Market Share chart used by Samsung's damages expert that shows that the share of tablets operating on Apple's iOS platform fell between 2010 and 2011, while the share of tablets running on the Android operating platform has risen.  Loss of tablet market share to Samsung in the future will lead to similar downstream losses and negative effects on the Apple ecosystem as will losses in the smartphone market, causing harm that is similarly difficult to quantify with reasonable certainty.

---

[93] Deposition of Chip J. Lutton, Jr., dated July 26, 2011, pp. 328-329.

86.     Samsung has already demonstrated its ability to capture market share at Apple's expense through the sale of smartphones that infringe Apple's patents and dilute Apple's trade dress.  As shown in **Exhibits 11** and **11.1**, Samsung's smartphone market share in the second quarter of 2010    before the launch of the first Samsung phone that Apple accused of violating its intellectual property    was about 5%.  After Samsung launched its infringing Galaxy S line of products, Samsung's market share jumped to 14.2% by the third quarter of 2010.  By the third and fourth quarters of 2011, Samsung's smartphone market share had risen even further to 19.2%.  That represents a 284% increase in Samsung's market share following Samsung's launch of its infringing smartphones.  As one analyst stated, in the worldwide mobile phone market, Samsung's "growth is coming entirely from smartphones with the Galaxy line (Samsung's Android OS phones) as the main driver."[94]

### E.     Difficulty of Calculating Damages

87.     As discussed above, Apple will suffer irreparable harm due to Samsung's ongoing infringement, in the form of harm to Apple's goodwill, erosion and dilution of Apple's brand, and potential loss of present and future sales and market share.  These harms cannot be adequately measured or compensated through monetary damages.  As illustrated in **Exhibit 14**, not all forms of damage recovery are available for patent infringement.  For example, patent law offers no remedy for the decrease in value of Apple's intangible assets, including harm to Apple's goodwill and brand value, even though the impairment in value may be substantial.  In spite of the recognized value of intangible assets, such assets are difficult to measure.  In the words of one analyst:  "For many accountants, the absence of markets disqualifies intangibles from being considered as assets in corporate balance sheets.  Intangibles thus differ inherently from physical and financial assets, and the management, valuation and financial reporting of intangible assets are challenging."[95]

---

[94] Oppenheimer Equity Research, "Mixed 2Q11 Wireless Checks," dated June 7, 2011, p. 5.

[95] Intangible Assets: Concepts and Measurements, Baruch Lev, New York University, New York, USA, *Encyclopedia of Social Measurement*, Volume 2, 2005.

88.     Further, for at least the reasons discussed above, the present damages calculation will not fully compensate Apple for its loss of market share at this critical juncture in the growth of the smartphone and tablet markets.  The present damages model also does not account for lost revenue that Apple could reasonably expect from ecosystem purchases, accessory sales, music and video sales, mobile advertising revenue, search engine revenue, and downstream sales of future Apple products.  **Exhibit 22** shows that Apple has reported iTunes revenue of $11 billion from fiscal year 2010 through first quarter 2012, ███████████████████████████ and that Apple has earned $161 million in revenue and ██████████████████████ on mobile advertising.  **Exhibit 23** shows that Apple earned over $75 million in each of the third and fourth quarters of 2011 from search engine royalties, and saw a dramatic increase in search engine royalties since the second quarter of 2010, when the iPad was released.  All these revenue sources are extremely difficult to measure in relation to a specific iPhone or iPad lost sale.

## VIII.   MONETARY DAMAGES

### A.     Use of Mr. Musika's Methodology

89.     In preparing this report, I have been mindful of the Court's ruling in the April 29 Case Management Order that the new trial on damages will be limited to "correct[ing] the erroneous notice dates," and that the parties must not "expand the scope of the damages trial by relying upon: (1) new sales data, including any sales after June 30, 201[2]; (2) new products; and (3) new methodologies or theories."[96]  I have therefore prepared a calculation of the money damages to which Apple is entitled for Samsung's infringement of the New Trial Patents for the products-at-issue using the same damages model and methodologies described in the expert reports and supplements prepared by Mr. Musika.  I have used the same models and software tools, including certain Access databases and Excel spreadsheets prepared previously by Invotex in connection with the preparation of Mr. Musika's reports, supplements, and trial testimony.  I have worked with the same staff at Invotex that Mr. Musika used to support him in his analysis of

---

[96] Dkt. 2316 at 3: Case Management Order, dated Apr. 29, 2013.

1       • Adjusted the calculation of Apple's reasonable royalty damages so that any

2           reasonable royalty for any infringed utility patent did not accrue before the date on

3           which the Court found Samsung had actual notice of that patent.[106]

4       • Adjusted the calculation of Apple's lost profits so that lost profits damages did not

5           accrue, and the period during which Samsung would attempt to design around a

6           patent did not start, before the date on which the Court found that Samsung had

7           actual notice of the patents.[107]

8       94.     The Court's April 29, 2013 Case Management Order required an adjustment to

9   damages for the Infuse 4G in light of the May 15, 2011 date on which carriers first began to sell

10  the Infuse 4G as reflected in the Joint Pretrial Statement.[108]  At my direction, Invotex modified

11  the calculation of damages as follows:

12      • Adjusted the calculation of damages for the Infuse 4G to begin on the date

13          included in the Joint Pretrial Statement.

14      • Prepared a separate calculation of damages if the damages sought for all products

15          began on the dates that carriers first began selling products to the public, which are

16          listed in the pretrial statement.

17      • Prepared an alternative calculation that reflects damages for the Infuse 4G that

18          includes sales that occurred between the date on which Samsung received actual

19          notice of the D'677 Patent and May 15, 2011.[109]

---

20  [106] Dkt. 2271 at 19-20: Order re: Damages, dated Mar. 1, 2013.

21  [107] Dkt. 2271 at 19-20: Order re: Damages, dated Mar. 1, 2013.  As discussed further in
    connection with the calculation of Apple's lost profits and in anticipation of a possible argument
22  by Samsung that was suggested in Mr. Wagner's report, I have also prepared alternative
    calculations of Apple's lost profits damages based on a different assumption of when Samsung's
23  efforts to design around Apple's patents would begin.  Using the same tools and overall methods
    disclosed by Mr. Musika, I changed one assumption to hypothesize that Samsung would attempt
24  to design around a patent from the first date that Samsung infringed a patent, even though
    Samsung did not have actual notice of Apple's patents from which to start making modifications.
25  In my opinion, this approach is illogical and does not reflect the methods that Mr. Musika used in
    his reports.

26  [108] Dkt. 2316 at 2: Case Management Order, dated Apr. 29, 2013.

27  [109] As discussed above, I understand that Apple intends to seek relief from this portion of
    the Court's Case Management Order (Dkt. 2316) so that it can present this calculation.

28

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

1  transcript of the proceedings, and I have that record available to me and have considered it in

2  forming my opinions.  The trial testimony confirms the opinions regarding Apple's lost profits

3  already stated above.

4       132.  For example, evidence was introduced at trial regarding public acclaim for and

5  consumer demand for the iPhone and iPad and the patented features of the New Trial Patents,

6  confirming my opinion that Samsung's infringement caused Apple to lose sales.  Phil Schiller,

7  Apple's Senior Vice President of Worldwide Marketing, testified to the success of the iPhone and

8  iPad in the United States market.  Mr. Schiller discussed the 2007 iPhone launch at MacWorld

9  and a video of the same.  (JX1091.)[162]  Mr. Schiller testified that the sales numbers for the

10  original iPhone when it launched "were extremely good" and "exceeded our expectation,"[163]

11  while public perception of the iPad when it launched was "fantastic."[164]  Indeed, a summary

12  exhibit of Apple's iPhone and iPad sales (PX15) introduced at trial through Mr. Schiller shows

13  cumulative iPhone sales from 2007 through fiscal Q2 2012 of over 77 million, and cumulative

14  iPad sales from 2010 through fiscal Q2 2012 of over 28 million.[165]

15      133.  Mr. Schiller also testified to numerous press articles reflecting industry praise for

16  the iPhone and iPad,[166] including a Time Magazine cover story naming the iPhone as the number

17  one invention of the year in 2007 (PX135),[167] a *New York Times* article written by David Pogue

18  that had commented on the beautiful appearance of the iPhone (including its shiny black face) as

19

20

---

21     [162] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 709:23-710:19.

   [163] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 611:21-612:2.

22     [164] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 621:11-621:12.

23     [165] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 612:6-612:18; PX15:
Cumulative Unit Sales (U.S.)   iPhone & iPad.

24     [166] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 604:23-606:4, 606:8-607:22,

25  609:10-612:2, 621:13-622:16; PX17: Summary of iPhone news coverage; PX134: Wall Street
Journal, "Testing Out the iPhone" (APLNDC-Y0000234932  APLNDC-Y0000234936); PX141:

26  Wall Street Journal, "Laptop Killer? Pretty Close" (APLNDC-Y0000233381  APLNDC-
Y0000233385); PX142:  *New York Times Bits*, "Patent Office Highlights Jobs's Innovations."

27     [167] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 607:23-609:9; PX135: Time,

28  "Best Inventions of 2007" (APLNDC-Y0000146961  APLNDC-Y0000146962).

1  a relevant demand factor (PX133),[168] and a summary exhibit featuring extensive unsolicited news

2  coverage praising the iPhone (PX17).[169]  In addition, Mr. Schiller testified about the iPhone's and

3  iPad's print and television advertisements (PX11, PX12, PX13), some of which included

4  references to the patented features at issue, which further corroborates my conclusion that the

5  patented features have a substantial effect on consumer demand for Apple's and Samsung's

6  products.[170]  For example, Mr. Schiller testified about an early television advertisement for the

7  iPhone (PX127) showing the distinctive design of the phone and demonstrating multitouch

8  gestures such as flicking, scrolling, and tapping.[171]  Mr. Schiller also testified about an iPad

9  television advertisement that gave "a taste of the rich depth of the software" on the device.[172]  In

10  addition, Mr. Schiller introduced a summary exhibit with several iPad and iPhone print

11  advertisements, which supported his testimony (PX11).[173]  All this evidence corroborates my

12  opinion that consumers want and demand Apple's products and Apple's patented technology.

13  Mr. Schiller's testimony was reinforced by evidence from Samsung's files.  A September 2007

14  study of the smartphone market by Samsung showed contemporaneously the influence of the

15  iPhone on the smartphone market.[174]  The study identified the "Apple iPhone" as one of "the

16

17

---

18  [168] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 601:5-602:19; PX133: *New York*
19  *Times*, "Apple Waves Its Wand at the Phone," APLNDC-Y0000235973  APLNDC-
Y0000235976 at APLNDC-Y0000235973.

20  [169] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 604:23-606:4; PX17: Summary
exhibit of iPhone and iPad news coverage.

21  [170] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 641:3-643:11, 643:12-645:13,
646:23-648:16; PX12: Table of iPhone television advertisements; PX13: Table of iPad television
22  advertisements; PX127: Video   "How To" television advertisement for the iPhone.

23  [171] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 641:3-643:11; PX127: Video
"How To" television advertisement for the iPhone.

24  [172] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 645:14-646:20; PX128: "iPad Is
25  Iconic" television advertisement for the iPad.

[173] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 649:15-650:2; PX11: Summary
26  exhibit of iPad and iPhone print advertisements.

27  [174] PX34: Feasibility Review on Standalone AP Business for Smart Phone Market, dated
Sept. 2007 (SAMNDCA10809390  SAMNDCA10809460 at SAMNDCA10809402 and
SAMNDCA10809427).

28

1    factors that have the greatest influence on customer demand."[175]  Among "the factors that could

2    make the iPhone a success" were "beautiful design" and "easy and intuitive UI that covers all

3    user classes."[176]

4           134.    Consumer survey evidence introduced at trial also corroborates my conclusion that

5    the patented features are important to consumer demand.  For example, Mr. Schiller testified to

6    the results of Apple's own market research showing demand for the patented features of the New

7    Trial Patents.  Mr. Schiller testified to reasons that the iPhone has been a success, which included

8    the iPhone's beautiful design and Apple's software inventions that made it easy to use.[177]  Mr.

9    Schiller likewise testified that the iPad's easy to use software contributed to the iPad's success.[178]

10   Apple survey results introduced by Mr. Schiller at trial showed that the physical appearance and

11   ease of use of the iPhone were rated by consumers as important features driving their decision to

12   purchase the iPhone.[179]  Timothy Benner, STA's 30(b)(6) witness on the topic of consumer

13   surveys, likewise testified via deposition at trial that the physical appearance of a smartphone is

14   "an aspect of choice in almost every [customer] decision."[180]  One survey admitted through Mr.

15   Benner's deposition testimony at trial showed that 45% of respondents stated "Liked overall

16   design/style" as a reason for choosing a handset brand, which was the highest-ranked factor

17

18   _____

19          [175] PX34.13.

20          [176] PX34.38; Samsung also concluded, with respect to the hardware, "HW: easy
     imitation."  PX34.37.

21          [177] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 624:24-626:4.

22          [178] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 626:5-626:19.

23          [179] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 629:10-638:8; PX143 (iPhone
     Buyer Survey FY10-Q4, APLNDC-Y0000027256  APLNDC-Y0000027259 at APLNDC-
     Y0000027266, APLNDC-Y0000027269, APLNDC-Y0000027277); PX144 (iPhone Buyer
24   Survey FY11-Q1, APLNDC-Y0000027341  APLNDC-Y0000027344 at APLNDC-
     Y0000027356, APLNDC-Y0000027358, APLNDC-Y0000027362); PX145 (iPhone Buyer
25   Survey FY11-Q2, APLNDC-Y0000027423  APLNDC-Y0000027426 at APLNDC-
     Y0000027442, APLNDC-Y0000027450); PX146 (iPhone Buyer Survey FY11-Q3, APLNDC-
26   Y0000027506  APLNDC-Y0000027509 at APLNDC-Y0000027523, APLNDC-Y0000027565,
     APLNDC-Y0000027572).

27          [180] Timothy Benner Trial Testimony, dated Aug. 13, 2012, pp. 2028:9-11 (*see* Dkt. 1887-2
     at 2, deposition excerpts played at trial).

28

among those tested.[181]  Similarly, Dr. Hauser, Apple's conjoint expert, provided testimony and evidence at trial showing that Samsung consumers were willing to pay a substantial price premium for the features associated with the utility patents at issue in the new trial (PX30).[182]

135.    Apple also introduced evidence at trial showing the economic and corporate investment in time and effort devoted to creating the patented features at issue and the benefits associated with those features, all of which support the conclusion that Apple believes these factors affect consumers' choices.  For example, Christopher Stringer, an industrial designer at Apple for at least 17 years and a named inventor on the D'677 patent, testified at trial that it took him "years" to develop the design of the iPhone, which has since been awarded many professional awards for design, including the DNAD and Gold Pencil, and has been displayed in the San Francisco Museum of Modern Art and the Smithsonian Institution in Washington, D.C.[183] Likewise, Scott Forstall, Apple's then-Senior Vice President of iOS, and one of the named inventors on the '163 patent, testified to the problem he was trying to solve, the difficulty in solving that problem, and the dramatic improvement the invention made for his web browsing experience on touch products like the iPhone and iPad.[184]  Apple's technical experts, Dr. Ravin Balakrishnan ('381 Patent) and Dr. Karan Singh ('163 and '915 Patents), also testified to the benefits associated with the invention and the problems that would occur in the absence of the patented features.[185]

136.    In addition, evidence was introduced at trial that Samsung referred to and used the features of the iPhone and the New Trial Patents in the process of creating the designs and the

---

[181] PX69: J.D. Power March 2011 Wireless Smartphone Satisfaction Study (SAMNDCA10246338  SAMNDCA10246445 at SAMNDCA10246395).

[182] Dr. John Hauser Trial Testimony, dated Aug. 10, 2012, pp. 1915:4-1916:13; PX30: Summary of results from Dr. Hauser's conjoint survey.

[183] Christopher Stringer Trial Testimony, dated July 31, 2012, pp. 469:15-469:25, 474:1-474:24, 484:1-485:4, 493:6-495:17, and 508:4-510:21.

[184] Scott Forstall Trial Testimony, dated Aug. 3, 2012, pp. 724:8-724:11, 751:15-752:21, and 758:16-759:15.

[185] Dr. Ravin Balakrishnan Trial Testimony, dated Aug. 10, 2012, pp. 1724:5-1724:21, 1736:16-1740:15; Dr. Karan Singh Trial Testimony, dated Aug. 10, 2012, pp. 1815:12-1816:24, 1817:22-1818:22, 1831:13-1833:3.

user interface that are included in Samsung's products.  This further corroborates my conclusion that the patented features are important to consumer demand and are perceived by designers, engineers, and consumers as being an improvement over other non-infringing options.  Testimony by STA's Chief Strategy Officer, Justin Denison, included references to multiple internal Samsung documents which showed that Samsung referred to the iPhone and Apple's patented features when Samsung was creating its smartphones, including, among other features, the inventions described in Apple's '163 Patent and the icon layout design claimed in Apple's D'305 Patent.[186]  Jinyeun Wang, a Samsung UX Creative Director and former Senior Designer, discussed an internal Samsung document that showed the evolution of Samsung's icons over a number of years and that included Apple icons as a "reference."[187]  Mr. Wagner discussed an internal Samsung email in which Samsung engineers discussed "obtain[ing] the bounce effect that is similar to the iPad," and another in which individuals at Samsung note that the Samsung product lacks "latex effect" in browser scroll and instructs readers to "(Refer to the iPad)."[188]  Dong Hoon Chang, SEC's head of the Mobile Design Group, likewise testified via deposition that Samsung developers considered Apple utility patents, such as the bounce patent (*i.e.*, the '381 Patent), when designing the Samsung Galaxy phone.[189]  Dr. Balakrishnan testified extensively

---

[186] Justin Denison Trial Testimony, dated Aug. 3, 2012, pp. 790:5-791:4, 816:10-832:9; PX40 ("I hear things like this:  Let's make something like the iPhone . . . . It's a crisis of design."); PX44:  Relative Evaluation Report on S1, iPhone (comparing S1 to iPhone side-by-side, with directions for improvement, e.g., "Double Tap zoom in/out function needs to be supplemented"), 44.127 (comparing S1 icons to iPhone icons); PX54:  Lessons from Apple ("Apple is universally regarded as being a master of innovation . . . Innovative hardware design & intuitive user experience"); PX58:  Beat Apple Response ("Thoroughly understand who Apple is?  Operational, Design, … Invite Apple 'experts'"); PX60:  STA Competitive Situation Paradigm Shift ("US Market Becoming a Two Horse Race Between Apple and Samsung"); PX62:  iPhone Counter Strategy.

[187] Jinyeun Wang Trial Testimony, dated Aug. 14, 2012, pp. 2542:22-2547:3; PX55: Samsung mobile icon design for 2011; PX2261 (same, in black and white).

[188] Michael Wagner Trial Testimony, dated Aug. 16, 2012, pp. 3066:24-3068:6, 3070:10-3071:6; PX186 ("in browser scroll, there is no latex effect of having the screen follow along and then returning when you are moving paste the edge.  (Refer to the Ipad)"); PX195 ("With regards to bounce, we use the Mass Spring Damper model . . . and obtained the bounce effect that is similar to the iPad . . . .").

[189] Dong Hoon Chang Trial Testimony, dated Aug. 13, 2012, p. 2026:3-5 (*see* Dkt. 1887-2 at 2).

about internal Samsung documents (PX46, PX57) showing that Samsung studied and adopted

Apple's bounce feature when developing certain Galaxy smartphone and tablet products.[190]  Dr.

Balakrishnan also noted that Samsung's documents described Samsung's lack of a bounce feature

as a "critical" issue, resulting in "dull" behavior in Samsung's products in comparison with the

"fun" visual effect in Apple's products.[191]  Dr. Singh testified regarding internal Samsung

documents (PX38, PX44) showing that Samsung had deliberately adopted the double tap to zoom

feature used in Apple's products as a part of Samsung's user interface design.[192]  Dr. Susan Kare,

Apple's design expert with respect to graphical user interfaces ("GUI"), testified to documents

showing that Samsung directly compared and then adopted Apple's patented GUI design, and

also presented an exhibit with screenshots of Samsung's infringing GUI interface compared to the

D'305 Patent, which showed the substantial similarity between the designs (PX21A).[193]  Dr. Peter

Bressler, Apple's industrial design expert, testified to the substantial, strong similarity between

the Samsung products and the overall appearance of the D'677 Patent, which is embodied in

Apple's products, introduced exhibits showing Apple's products and Samsung's products that

reflected this comparison (PX7, PX8), and introduced an exhibit comparing Apple and Samsung

smartphones over time, which also reflected the greater visual similarity of Samsung's products

---

[190] Dr. Ravin Balakrishnan Trial Testimony, dated Aug. 10, 2012, pp. 1724:5-1724:21, 1757:22-1769:10; PX46: Behold3 Usability Evaluation Results (SAMNDCA00508318 SAMNDCA00508411 at SAMNDCA00508383); PX57: P5 Usability Evaluation Results (SAMNDCA00176053  SAMNDCA00176171 at SAMNDCA00176071 and SAMNDCA00176125).

[191] Dr. Ravin Balakrishnan Trial Testimony, dated Aug. 10, 2012, pp. 1724:5-1724:21 and 1757:22-1769:10; PX46: Behold3 Usability Evaluation Results (SAMNDCA00508318 SAMNDCA00508411 at SAMNDCA00508383); PX57: P5 Usability Evaluation Results (SAMNDCA00176053  SAMNDCA00176171 at SAMNDCA00176071 and SAMNDCA00176125).

[192] Dr. Karan Singh, Trial Testimony, dated Aug. 10, 2012, pp. 1845:21-1848:13; PX38: Browser Zooming Methods UX Exploration Study (SAMNDCA11104115 SAMNDCA11104139); PX44: Relative Evaluation Report on S1, iPhone (SAMNDCA00203880  SAMNDCA00204010).

[193] Dr. Susan Kare Trial Testimony, dated Aug. 7, 2012, pp. 1410:22-1412:18, 1479:12-1481:25, 1485:8-1488:4, and 1492:3-1493:10; PX44: Relative Evaluation Report on S1, iPhone (SAMNDCA00203880  SAMNDCA00204010).

1  and Apple's products after Apple introduced the iPhone (PX3).[194]  Dr. Russell Winer testified that

2  disinterested third parties, including the business press, also perceived the similarity of

3  Samsung's products to Apple's products, and he introduced summary documents with quotations

4  reflecting this perception (PX6).[195]  The scope of the similarity between the patented technology

5  and Samsung's products and the decision by Samsung to adopt user interface technology and

6  designs used by Apple after direct comparisons to Apple's products support the conclusion that

7  there is substantial demand for Apple's patented designs and technology and that the non-

8  infringing alternatives are not as desirable in the mobile device market.  This evidence confirms

9  my opinions about the nature and scope of Apple's lost profits discussed above.

10        137.    Other evidence presented at trial corroborates my opinions that Apple and

11  Samsung compete directly in the smartphone and tablet markets, and that Samsung's

12  infringement caused Apple to lose sales it otherwise would have made "but for" the infringement.

13  For example, Mr. Schiller testified that Samsung and Apple compete in the smartphone and tablet

14  markets, and that Samsung sells products in the majority of sales channels through which Apple

15  sells its products.[196]  Mr. Schiller also testified to his belief that some customers were choosing to

16  buy a Samsung product because it looked like Apple's products.[197]  Mr. Denison's testimony also

17  included multiple documents related to competition between Apple and Samsung and the

18  importance of Apple's technology and design in connection with that competition.  These

19  included testimony and internal documents that showed how Samsung focused on Apple and the

20  iPhone as a competitor, the "crisis of design" that Samsung experienced because of the iPhone,

21  Samsung's focus on directly competing with the iPhone, and its view that the smartphone market

22  —————————————————

23  [194] Dr. Peter Bressler Trial Testimony, dated Aug. 7, 2012, pp. 1002:22-1003:5, 1020:8-
     1022:8, 1048:10-1056:5, 1072:1-1073:15, and 1074:8-1075:4; PX3: Summary exhibit depicting

24  Apple and Samsung phones; PX7: Summary exhibit depicting Samsung devices; PX8: Summary
     exhibit depicting Apple devices; PX174: Gadget Lab, "First Look: Samsung Vibrant Rips Off

25  iPhone 3G Design" (APLNDC-Y0000236157  APLNDC-Y0000236159).

26  [195] Dr. Russell Winer Trial Testimony, dated August 7, 2012, pp. 1521:14-1525:6; PX6:
     Summary of press reports regarding Samsung phones.

27  [196] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 656:18-659:1.

28  [197] Phil Schiller Trial Testimony, dated Aug. 3, 2012, pp. 663:20-665:24.

1   was a "three player race becoming a two player race" between Apple and Samsung.[198]  This

2   evidence confirms my opinions that Apple would obtain sales in the "but for" world in which

3   Samsung did not infringe Apple's patents and had to implement a non-infringing alternative.

4        138.   Further, as reflected in his testimony at trial, Mr. Wagner indicated that he did not

5   disagree in significant measure with the proposed amount of time needed to design around the

6   '381 Patent and the '163 Patent used by Mr. Musika.[199]  Further, while Mr. Wagner and Mr.

7   Musika disagreed regarding the amount of time it would take to design around the '915 Patent,

8   Samsung did not introduce any evidence that it had identified and successfully implemented any

9   design-around for that patent or any technical evidence to suggest that Mr. Musika's

10  understanding, which is discussed further above, was wrong.[200]  This confirms the methodology

11  described above that was used by Mr. Musika and by me.

12       139.   The foregoing evidence confirms the accuracy of Mr. Musika's opinions and

13  further supports the opinions regarding lost profits that I have stated in this report.

14       **D.   Samsung's Profits**

15       140.   As discussed above, I am aware that, as an alternative to lost profits or reasonable

16  royalty, a design patent owner may choose to recover the infringer's total profits under 35 U.S.C.

17  § 289.  Each unit of sale, though, is subject to only one form of recovery.  I understand that the

18  infringer's profits are defined as the total sales of infringing product less the costs "directly

19  attributable to the sale or manufacture of the infringing items."[201]  I further understand that

---

20  [198] Justin Denison Trial Testimony, dated Aug. 3, 2012, pp. 790:5-791:4, 809:24-819:8,
21  and 831:9-834:6; Justin Denison Trial Testimony, dated Aug. 6, 2012, pp. 987:1-997:12;
    PX40 ("I hear things like this:  Let's make something like the iPhone . . . . It's a crisis of
22  design."); PX44:  Relative Evaluation Report on S1, iPhone (comparing S1 to iPhone side-by-
    side, with directions for improvement, e.g., "Double Tap zoom in/out function needs to be
23  supplemented"); PX54:  Lessons from Apple ("Apple is universally regarded as being a master of
    innovation . . . Innovative hardware design & intuitive user experience"); PX58:  Beat Apple
24  Response ("Thoroughly understand who Apple is?  Operational, Design, ... Invite Apple
    'experts'"); PX60:  STA Competitive Situation    Paradigm Shift ("US Market Becoming a Two
25  Horse Race Between Apple and Samsung"); PX62:  iPhone Counter Strategy.

26  [199] Michael Wagner Trial Testimony, dates Aug. 16, 2013, pp. 3055:9-3056:15.

    [200] Michael Wagner Trial Testimony, dates Aug. 16, 2013, pp. 3055:9-3056:15.

27  [201] Dkt. 1903 at 72: Final Jury Instruction No. 54, Design Patent Infringement Damages
    Defendant's Profits.
28

1    products.  Second, Mr. Musika concluded that a calculation of Samsung's incremental profits,

2    that is, profits that included costs and expenses labeled by Samsung to reflect variable or direct

3    costs and excluded expenses categorized by Samsung to be fixed or indirect costs, resulted in a

4    calculation of Samsung's profits that agreed closely with the calculation of Samsung's profits

5    based on Samsung's gross margin, as reflected in **Exhibit 50-S**.  I agree with Mr. Musika's

6    conclusions.  Accordingly, I have calculated Samsung's profits based on Samsung's gross profits

7    and, using the same materials used by Mr. Musika to prepare **Exhibit 50-S**, I have calculated

8    Samsung's profits for the products at issue in the new trial to show Samsung's incremental profits

9    (**Exhibits 50.1-PT** to **50.9-PT**).

10                   **3.       The Reliability of Samsung's Financial Data**

11           146.    Mr. Musika examined the evidence regarding Samsung's production of financial

12   data and comparisons of that data to other documents produced by Samsung and to external

13   reports on Samsung's profitability to evaluate the reliability of the data.  This analysis was

14   prepared by Invotex and is reflected in Mr. Musika's Original Expert Report at paragraphs 143 to

15   149 and his Supplemental Expert Report at paragraphs 29 to 37 and 40 to 41.  I have reviewed the

16   report and information supporting the analysis and agree with it.

17           147.    The chronology of Samsung's production is long but important to understand

18   when evaluating the reliability of the expense information that Samsung provided.  It begins in

19   January 2012.  On January 27, 2012, the Court ordered Samsung to produce consolidated

20   financial data from which Apple could calculate Samsung's profits, including information on

21   Samsung's revenues, materials costs, costs of manufacture, and expenses, by February 3, 2012.[204]

22   Despite this order, Samsung's first production pursuant to this order was unreliable by standard

23   accounting measures.[205]  It contained mathematical errors.[206]  It combined results for various

24

25           [204] Dkt. 673 at 15: Order re Discovery Motions, dated Jan. 27, 2012.

26           [205] *See* Samsung-produced financial spreadsheet, dated Feb. 3, 2012
     (SAMNDCA00323946); *see also* Declaration of Eric R. Roberts in Support of Motion to Enforce
27   January 27, 2012 Order as to Financial Documents, dated Feb. 28, 2012 (Dkt. 759-5) ("Roberts
     Decl.").
28

1  infringing products without explanation or reason.  One spreadsheet was identified as reflecting a

2  total, but it did not match the sum of the remaining spreadsheets.[207]  Products were excluded

3  without explanation.  Standard financial information regarding expenses was omitted.  The

4  financial information also was not presented on a consolidated basis.[208]  Despite the obvious

5  nature of the errors, Samsung refused to replace the file; Apple then filed a motion to enforce the

6  Court's order and for sanctions on February 28, 2012.[209]

7        148.  On February 29, a U.S. financial executive for Samsung was scheduled to be

8  deposed.  The day before the deposition, on February 28, Samsung produced a new Excel

9  spreadsheet.[210]  This version continued to leave out sales for products that were the subject of

10  Apple's claims of infringement.[211]  It also removed information about the companies that were

11  the sources of the financial data.[212]  It reduced the information available regarding Samsung's

12  cost of goods sold.[213]  Moreover, the testimony of Timothy Sheppard confirmed that the

13  information on the profit of SEA and STA that was included in the spreadsheet did not reflect the

14  consolidated profits of the company but a tax-based profit prepared using a transfer pricing

15  model, which does not accurately reflect the total profits that Samsung earned on the sale of the

16

17  _____

(Footnote continued from previous page.)

18
19  [206] Declaration of Timothy Sheppard, dated Mar. 12, 2012, p. 6, ¶¶ 17, 19; Declaration of Eric R. Roberts in Support of Motion to Enforce January 27, 2012 Order as to Financial Documents, dated Feb. 28, 2012 (Dkt. 759-5), pp. 2-3, ¶ 5.

20
21  [207] Declaration of Eric R. Roberts in Support of Motion to Enforce January 27, 2012 Order as to Financial Documents, dated Feb. 28, 2012 (Dkt. 759-5), pp. 2-3, ¶ 5.

22  [208] Deposition of Jae Hwang Sim, dated Mar. 10, 2012, pp. 151-152; Declaration of Eric R. Roberts in Support of Motion to Enforce January 27, 2012 Order as to Financial Documents, dated Feb. 28, 2012 (Dkt. 759-5), pp. 2-3, ¶ 5.

23  [209] Dkt. 759: Apple's Rule 37(b)(2) Motion, dated Feb. 28, 2012.

24  [210] *See* Deposition of Timothy Sheppard, dated Feb. 29, 2012, pp. 37-38; Samsung produced financial spreadsheet, dated Feb. 28, 2012 (SAMNDCA00354292
25  SAMNDCA00354385).

26  [211] Deposition of Timothy Sheppard, dated Mar. 30, 2012, pp. 21-22.

[212] *See* Samsung-produced financial spreadsheet, dated Feb. 28, 2012
27  (SAMNDCA00354292  SAMNDCA00354385).

28  [213] Deposition of Jae Hwang Sim, dated Mar. 10, 2012, pp. 92-93.

EXPERT REPORT OF JULIE L. DAVIS, CPA
Case No. 11-cv-01846-LHK

66

not be tied to or reconciled to other external or routinely used internal financial reporting or directly to any routinely kept internal accounting records, and Samsung provided no documents that would support any claim that the numbers could be reconciled.

- The spreadsheets contained multiple errors created by human actions and mistakes. This is not consistent with the claim that the material is a direct and unmodified extract from Samsung's financial systems.[238]

- Samsung's financial personnel and lawyers modified the third set of spreadsheets to remove $1.3 billion in profit for the products based on a reclassification of profits as cost of goods sold.[239]

- Samsung witnesses refused to give testimony, and at times gave conflicting testimony, on key information, such as the manner in which cost of goods sold is calculated, leaving key discrepancies unexplained.[240]

- Information was repeatedly produced at the very last minute in violation of Court deadlines and in a manner that prevented review by Apple or Samsung prior to the date set for expert reports. Both Apple and Mr. Wagner had substantial difficulty obtaining the necessary data to prepare a calculation of Samsung's profits.[241]

- As described in **Exhibit 49-S** and in Mr. Musika's Supplemental Expert Report, the reporting repeatedly changed between various versions and between later versions and Mr. Wagner's calculations of profit in his April expert report, which is not consistent with a claim that the material came directly from Samsung's financial system.

- The cost-of-goods-sold calculations included in the material produced by Samsung reflected significant and sharp upward and downward changes that undermine their reliability, as shown in **Exhibit 51-S**.

- The material cost calculations for the products varied substantially from the material costs indicated by an analysis of Samsung's bills of materials as reflected in **Exhibit 52-S**.

---

[238] Deposition of Jae Hwang Sim, dated Mar. 31, 2012, pp. 209-211; Declaration of Eric R. Roberts in Support of Motion to Enforce January 27, 2012 Order as to Financial Documents, dated Feb. 28, 2012 (Dkt. 759-5), pp. 2-3, ¶ 5.

[239] Deposition of Jae Hwang Sim, dated Mar. 10, 2012, p. 36:16-24; **Exhibit 49-S**.

[240] Deposition of Jae Hwang Sim, dated Mar. 10, 2012, pp. 95-96 and 131-132.

[241] Deposition of Michael Wagner, dated May 12, 2012, pp. 262:17-262:23, 279:3-280:1, 283:4-283:21.

D-00000013) that provided more detailed information, including names of and the amounts for various accounts used to track costs and expenses. These files were produced as a result of the April 23 order that imposed sanctions on Samsung for its deficient production discussed above.

160. Mr. Musika reported in paragraph 38 of his Supplemental Expert Report that SAMNDCA-D-00000012 "explicitly labels many of these accounts as involving either fixed or variable costs and expenses."[243] I have received a certified copy of the translations that contain these classifications. Fixed costs and variable costs have standard meanings in financial accounting. Mr. Musika also determined that the file "provides the foundation for the file labeled SAMNDCA00402075, which reflects Samsung's alleged calculation of operating profit" for the infringing products as of the end of March 2012.[244] I have confirmed the relationship between the files through discussions with Invotex and examination by my staff of the underlying files.

161. I agree with Mr. Musika that a "fixed cost has no direct relationship to the volume of product produced or sold. In order for a fixed cost to be assigned to a product, the cost must be allocated on some systematic and rational basis."[245] Samsung, though, has provided no means by which Mr. Musika or I could validate, or even replicate, its fixed cost allocations. Because of the fixed nature of these costs and the inability to identify or explain the allocation of these costs, I have concluded that the fixed costs reported by Samsung are not directly associated with the sale of the infringing products and should not be deducted in the calculation of Samsung's profits.

162. Mr. Musika also reported in paragraph 39 of his Supplemental Expert Report that SAMNDCA-D-00000012 "provides more detailed information on accounts related to two additional non-product cost categories (general research and development and general maintenance)."[246] I understand that those costs and expenses were not specifically labeled as either fixed or variable. However, judging by the expense category name and the lack of evidence or support for the assignment of such costs to the infringing products, Samsung has not

[243] Supplemental Expert Report of Terry L. Musika, dated May 8, 2012, p. 17.
[244] Supplemental Expert Report of Terry L. Musika, dated May 8, 2012, p. 17.
[245] Supplemental Expert Report of Terry L. Musika, dated May 8, 2012, p. 17.
[246] Supplemental Expert Report of Terry L. Musika, dated May 8, 2012, p. 17.

1    met its burden of proving that they are properly deductible in this case, and I do not incorporate

2    them into a calculation of Samsung's profits.

3        163.    The data contained in the encrypted file, SAMNDCA-D-00000012, for all accused

4    products is summarized in **Exhibit 50-S**, which includes a calculation of Samsung's incremental

5    profits applying the criteria discussed above.  Because the present trial involves fewer products

6    and shorter periods, I asked Invotex to use the same data file and same methods disclosed at

7    paragraphs 39 to 41 of Mr. Musika's Supplemental Expert Report and in **Exhibit 50-S** to prepare

8    new versions of **Exhibit 50-S** that reflect the seven design-patent infringing products at issue in

9    the new trial and to prepare calculations of Samsung's profits using the previously disclosed

10   methods for calculating incremental profits while limiting the damages to periods that came after

11   the notice dates established in the Court's March 1 Order.  The results are reflected in **Exhibits**

12   **50.1-PT** to **50.9-PT** and **Exhibit 17.1-PT-A**.  The incremental profit margin for the seven

13   products that infringe design patents subject to the new trial is ██████ which is very close to the

14   gross profit margin of ██████ or the same products.

15                    **5.      Evidence Introduced at Trial Confirms These Opinions.**

16       164.    At the time he prepared his report, Mr. Musika did not have the benefit of the trial

17   testimony.  However, before he testified, Mr. Musika was present for or was able to review the

18   transcript of the proceedings, and I have that record available to me and have considered it in

19   forming my opinions.  The trial testimony confirms the opinions regarding Samsung's profits

20   already stated above.

21       165.    At trial, Mr. Sheppard provided evidence related to Samsung's financial

22   information.[247]  For example, Mr. Sheppard pointed to Samsung's operating profits for its overall

23   business and its global telecommunications and networking business as reflected in Samsung's

24

25

26       [247] Tim Sheppard Trial Testimony, dated Aug. 16, 2012, pp. 3001:25-3017:7; DX676:
     Samsung-produced financial spreadsheet, dated Jul. 25, 2012; DX753: Samsung consolidated
27   financial statement, dated Feb. 22, 2012; PX180: Samsung-produced financial spreadsheet, dated
     Jul. 25, 2012 (SAMNDCA4875335  SAMNDCA4875335).
28

overall public financial statements as evidence in support of a lower damages calculation.[248] These sources and measures are not an appropriate basis for comparing or calculating Samsung's total profits or the costs and expenses that are directly attributable to sale and manufacture of the products that infringe Apple's patents. They include multiple different types of products (including products that are not mobile devices). Moreover, the calculation of operating profit reflected at the pages to which Mr. Sheppard referred includes all expenses incurred by Samsung of every type. This is not consistent with an effort to isolate directly attributable expenses. Mr. Sheppard's testimony that he sought to verify STA's expenses is also an insufficient basis to overcome the concerns raised above regarding Samsung's financial production.[249] The expenses that drive the calculation of gross profits, incremental profits, and operating profits are predominately found in the sections of the spreadsheets that relate to SEC, not STA. Mr. Sheppard's testimony provides no reason to alter the opinions stated above.

166.    Mr. Sheppard introduced two financial spreadsheets relating to the products that are the subject of the new trial, PX180 and DX676.[250] These spreadsheets agree regarding the units and revenues attributed to sales in the United States. Further, for the products that are the subject of the new trial, the data in PX180 was used to prepare the analysis regarding Samsung's total profits described above. Similarly, the information that I have used to calculate the units and revenues for the products that are the subject of the new trial was the source for JX1500, which both parties submitted as an accurate record of Samsung's sales in the United States. This information from trial confirms the opinions stated above.

167.    Mr. Denison testified at trial that SEC makes all the phones in Korea and ships product directly to the United States, using STA as a sales entity here.[251] This testimony confirms

---

[248] Tim Sheppard Trial Testimony, dated Aug. 16, 2012, pp. 3008:3-3011:11; DX753: Samsung consolidated financial statement, dated Feb. 22, 2012.

[249] *See* Tim Sheppard Trial Testimony, Aug. 16, 2012, pp. 3005:3-3007:7.

[250] Tim Sheppard Trial Testimony, Aug. 16, 2012, pp. 3004:16-3005:1 and 3016:5-3017:3; PX180: Samsung-produced financial spreadsheet, dated July 25, 2012 (SAMNDCA4875335 SAMNDCA4875335), DX676: Samsung-produced financial spreadsheet, dated Jul. 25, 2012.

[251] Justin Denison Trial Testimony, dated Aug. 3, 2012, pp. 794:3-795:12.

brand.[336] He further testified regarding how other third-party studies recognized the importance of these elements to the iPhone's success and consumer appeal.[337] His testimony confirms my opinions regarding the per unit design patent royalty rate, the hypothetical negotiation between the parties, and the factors that would be considered in it, including at least the discussion regarding factors 4, 5, 10, and 13.

257.   The foregoing evidence confirms the accuracy of Mr. Musika's opinions and further supports the opinions regarding reasonable royalties that I have stated in this report.

## IX.   POSSIBLE REVISION

258.   I intend to review any new information provided after the production of this report and would supplement this report if asked to do so.

259.   I intend to read or attend the deposition of Mr. Wagner and intend to respond to any criticisms that he raises regarding my analysis.

Dated:  June 24, 2013

_____
JULIE L. DAVIS

---

[336] Russell Winer Trial Testimony, dated Aug. 7, 2012, pp. 1498:19-1508:16.

[337] Russell Winer Trial Testimony, dated Aug. 7, 2012, pp. 1525:7-1528:21; PX36: Gravity Tank, Touch Portfolio (SAMNDCA00191811–SAMNDCA00191987).

## Exhibit Table of Contents

| Exhibit | Title |
|---|---|
| 1 PT | Curriculum Vitae for Julie L. Davis, CPA |
| 2 PT | Julie L. Davis Testimony Experience |
| 3 PT | Documents Considered List |
| 4 PT | Samsung Infringing Products vs. Apple's Infringed Intellectual Property |
| 5 | Apple's Asserted Utility Patents |
| 6 | Apple's Asserted Design Patents |
| 7 | Apple's Asserted Trade Dress Registrations |
| 8 | Apple's Asserted Unregistered Trade Dress and Trademark |
| 9 | Apple's Asserted Trademark Registrations |
| 10 PT | Summary of Samsung Infringing Products |
| 11 | U.S. Smartphone Market Shares |
| 11.1 | U.S. Smartphone Shipments and Market Share |
| 11.2 PT | Samsung U.S. Smartphone Market Share |
| 12 | U.S. Mobile Phone Market |
| 12.1 | U.S. Mobile Phone Shipments and Market Share |
| 13 | U.S. Media Tablet Market Shares |
| 13.1 | U.S. Media Tablet Shipments and Market Share |
| 14 | Intellectual Property Damage Types By Form Of IP |
| 15 PT | Identification of Appropriate Forms of Damages |
| 16 PT | Sequential Consideration & Application of the Various Forms of IP Remedy |
| 17 PT | Apple's Damages Per Samsung Product (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty) |
| 17.1 PT | Apple's Damages Per Samsung Product (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty) |
| 17.2 PT | Apple's Lost Profits Summary |
| 17.3 PT | Samsung's Profits [Revenue] and Reasonable Royalty Summary   for Units not Eligible for Lost Profits |
| 17.4 PT | Samsung's Profits [Gross Profit] and Reasonable Royalty Summary   for Units not Eligible for Lost Profits |
| 18 PT | Apple's Damages Per Samsung Product (Samsung's Profits [Revenue] and Reasonable Royalty) |
| 18.1 PT | Apple's Damages Per Samsung Product (Samsung's Profits [Gross Profit] and Reasonable Royalty) |
| 18.2 PT | Samsung's Profits [Revenue] and Reasonable Royalty Summary |
| 18.3 PT | Samsung's Profits [Gross Profit] and Reasonable Royalty Summary |
| 19 PT | Apple's Damages Per Samsung Product (Apple's Lost Profits and Reasonable Royalty) |
| 19.1 PT | Reasonable Royalty Summary   for Units not Eligible for Lost Profits |
| 20 PT | Summary of Damage Calculation Methodology |
| 21 | Wagner Declaration Page 18   Global Tablet OS Market Share |
| 22 | Apple Other Line of Business P&L Summary |
| 23 | Worldwide Apple iOS Search Revenue |
| 24 PT | Demand for Design Patents and Trade Dress |
| 25 PT | Demand for Utility Patents |
| 26 S | iPhone Capacity Analysis |
| 27 S | iPad Capacity Analysis |
| 28 | 26% of New Purchasers Chose a New Carrier |
| 29 PT | Mor Flo Analysis   Smartphones |
| 30 PT | Mor Flo Analysis   Tablets |
| 31 S | Smartphone Market Share by Carrier |
| 31.1 PT | Smartphone Mor Flo Analysis   AT&T |
| 31.2 PT | Smartphone Mor Flo Analysis   Verizon Wireless |
| 31.3 PT | Smartphone Mor Flo Analysis   Sprint |
| 32 S2 | Apple iPhone P&L Summary |
| 33 S2 | Apple iPad P&L Summary |
| 34 | Apple iPhone Accessories P&L Summary |
| 35 | Apple iPad Accessories P&L Summary |
| 37 PT | P&L for Samsung Infringing Smartphones (12 Products) |
| 37.1 PT | STA and SEA U.S. Sales of Infringing Smartphones |
| 38 PT | P&L for Samsung Infringing Tablet (Galaxy Tab) |
| 38.1 PT | STA and SEA U.S. Sales of Infringing Tablets |
| 39 S | Cost Value Reference Points for Samsung |
| 39.1 S | Accused Smartphone Cost Value Analysis for Samsung |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

| Exhibit | Title |
|---|---|
| 39.2 S | Accused Tablet Cost Value Analysis for Samsung |
| 39.3 S | Weighted Cost Value per Unit Apportionment |
| 39.4 S | Samsung's Cost Value per Unit Due To Redesign |
| 40 S | Market Value Reference Points |
| 41 S | Income Value Reference Points |
| 41.1 S | Weighted Utility Income Value Reference Point for Utility Patents |
| 41.2 S | Per Unit Reference Rate Calculations for Smartphones and Tablets Combined |
| 41.3 S | Value of Intangibles Calculations |
| 41.4 | Industry Weighted Average Cost of Capital |
| 41.5 | Apple Brand Value as Percentage of Market Capitalization |
| 42 | Georgia Pacific Analysis for Apple's Intellectual Property   Tablets |
| 43 | Georgia Pacific Analysis for Apple's Intellectual Property   Smartphones |
| 44 S | Apple's Asserted Intellectual Property |
| 45 | Description of Apple's Asserted Utility Patents |
| 46 S | Reasonable Royalty Rates   Smartphones |
| 47 S | Reasonable Royalty Rates   Tablets |
| 49 S | Comparison of Samsung Sales Data |
| 50 S | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 |
| 50.1 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (7 Products) |
| 50.2 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Captivate) |
| 50.3 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Continuum) |
| 50.4 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Droid Charge) |
| 50.5 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Epic 4G) |
| 50.6 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Gem) |
| 50.7 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Indulge) |
| 50.8 PT | Analysis of Fixed & Variable and Product & Non Product Costs Through March 2012 (Infuse 4G) |
| 50.9 PT | Summary of Analysis of Fixed & Variable and Product & Non Product Costs on a Product by Product Basis Through March 2012 |
| 51 S | Samsung's Gross Margin for Sample Accused Products |
| 51.1 S | Analysis of Samsung's Manufacturing Gross Margins |
| 52 S | Material Cost Source Comparison |
| 52.1 S | Comparison of BOM to Manufacturing Material Cost |
| 53 PT | Information Obtained Subsequent to Original Expert Report |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

APPENDIX

Apple Inc. v. Samsung Electronics Co., LTD., et al.

## Table of Contents for Damages Appendices
### (In all cases damages start no earlier than notice dates per March 1 Order)

| Damages Model | Damages Starting Point 1/ | Design Around Start Date | Samsung's Profit |
|---|---|---|---|
| PT | **Infuse 4G:** as of May 15, 2011 per Joint Pretrial Statement; **Remaining Infringing Products:** as of First Sale per Financial Spreadsheet | Actual Notice | Gross Profit |
| PT-A | | Actual Notice | Incremental Profit |
| PT-B | | First Infringement | Gross Profit |
| PT-C | | First Infringement | Incremental Profit |

| Damages Model | Damages Starting Point 1/ | Design Around Start Date | Samsung's Profit |
|---|---|---|---|
| PT-D | **Infuse 4G:** as of May 15, 2011 per Joint Pretrial Statement; **Remaining Infringing Products:** as of First Sale per Joint Pretrial Statement | Actual Notice | Gross Profit |
| PT-E | | Actual Notice | Incremental Profit |
| PT-F | | First Infringement | Gross Profit |
| PT-G | | First Infringement | Incremental Profit |

| Damages Model | Damages Starting Point 1/ | Design Around Start Date | Samsung's Profit |
|---|---|---|---|
| PT-H | **Infuse 4G:** as of First Sale per Financial Spreadsheet; **Remaining Infringing Products:** as of First Sale per Financial Spreadsheet | Actual Notice | Gross Profit |
| PT-I | | Actual Notice | Incremental Profit |
| PT-J | | First Infringement | Gross Profit |
| PT-K | | First Infringement | Incremental Profit |

<u>Note</u>: 1/ See Appendix p. ii.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Prepared by Invotex Group

i

**APPENDIX**

Apple Inc. v. Samsung Electronics Co., LTD., et al.

## Sale Dates of Infringing Products  1/

| # | Infringing Products | First Sale per Financial Spreadsheet 2/ | First Sale per Joint Pretrial Statement 3/ | First Sale per Interrogatory Response 4/ |
|---|---|---|---|---|
| 1 | Captivate | July 2010 | 7/18/2010 | 7/9/2010 |
| 2 | Continuum | October 2010 | 11/11/2010 | 10/29/2010 |
| 3 | Droid Charge | April 2011 | 5/14/2011 | 2/17/2011 |
| 4 | Epic 4G | July 2010 | 8/31/2010 | 7/28/2010 |
| 5 | Exhibit 4G | June 2011 | 6/22/2011 | 6/1/2011 |
| 6 | Galaxy Prevail | April 2011 | 4/29/2011 | 4/15/2011 |
| 7 | Galaxy Tab | October 2010 | 11/10/2010 | 5/3/2011 |
| 8 | Gem | January 2011 | 4/1/2011 | 1/18/2011 |
| 9 | Indulge | February 2011 | 6/7/2011 | 2/8/2011 |
| 10 | Infuse 4G | April 2011 | 5/15/2011 | 4/30/2011 |
| 11 | Nexus S 4G | April 2011 | 5/8/2011 | 12/11/2010 |
| 12 | Replenish | April 2011 | 5/8/2011 | 4/14/2011 |
| 13 | Transform | September 2010 | 10/10/2010 | Not Given |

**Sources/Notes:**

1/ Per Amended Verdict Form, 8/24/12; Order re: Damages, 3/1/13; and Case Management Order, 4/29/13.

2/ STA and SEA sales of infringing smartphones (SAMNDCA00402075 and '4875335_1_Highly Confidential Attorneys Eyes Only Worldwide Accused Modell 2012 2Q update.xls').

3/ Joint Pretrial Statement and Proposed Order, July 6, 2012, pp. 11-12.

4/ Samsung's Amended Objections and Response to Apple's Sixth Set of Interrogatories (No. 14), March 7, 2012, pp. 6-8.

Prepared by Invotex Group

ii

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17-PT

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$397,545,610** | | **$33,169,454** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT.
3/ EXHIBIT 17.3-PT.
4/ Infuse 4G starting on May 15, 2011.

Prepared by Invotex Group

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | ████ | $1,580,337 | ████ |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$397,545,610** | ████ | **$33,169,454** | ████ |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT.
3/ EXHIBIT 17.4-PT.
4/ Infuse 4G starting on May 15, 2011.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17.2-PT

# Apple's Lost Profits Summary

See Damages Period Below 1/, 5/

| | 2010 | | | | | | | | 2011 | | | | | | | | | | | | 2012 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | Total |
| **Total Units Sold - Smartphones 2/** | [redacted] | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Captivate | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Continuum | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Droid Charge | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Epic 4G | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Exhibit 4G | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Galaxy Prevail | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Gem | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Indulge | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Infuse 4G | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Nexus S 4G | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Replenish | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Transform | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Units Eligible for LP** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Beginning Capacity** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Add'l Excess Capacity 3/** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Total Capacity** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Actual Units Eligible for LP** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Ending Capacity** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Apple Increm. Margin/Unit ($) 4/** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Apple's Lost Profits ($)** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Units Avail. for Other Remedies** | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17.2-PT

## Apple's Lost Profits Summary
See Damages Period Below 1/, 5/



|  | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  | **2010** |  |  |  |  |  |  |  |  | **2011** |  |  |  |  |  |  |  |  | **2012** |  |  |  |  |  |  |

**Total Units Sold - Tablets 2/**

Galaxy Tab

**Total Units Eligible for LP**

**Beginning Capacity**

**Add'l Excess Capacity 3/**

**Total Capacity**

**Actual Units Eligible for LP**

**Ending Capacity**

**Apple Increm. Margin/Unit ($) 4/**

**Apple's Lost Profits ($)**

**Units Avail. for Other Remedies**

**Apple's Total Lost Profits ($)** 397,545,610

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ Smartphones - Exhibit 37.1-PT, Tablets - Exhibit 38.1-PT.
3/ Smartphones - Exhibit 26-S, Tablets - Exhibit 27-S.
4/ Smartphones - Exhibit 32-S2, Tablets - Exhibit 33-S2.
5/ Infuse 4G starting on May 15, 2011.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-PT

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | ▮ | $2,075,269 | ▮ |
| Continuum | ▮ | $578,343 | ▮ |
| Droid Charge | ▮ | $1,671,298 | ▮ |
| Epic 4G | ▮ | $4,179,254 | ▮ |
| Exhibit 4G | ▮ | $2,044,683 | ▮ |
| Galaxy Prevail | ▮ | $14,920,600 | ▮ |
| Galaxy Tab | ▮ | $3,149,250 | ▮ |
| Gem | ▮ | $720,882 | ▮ |
| Indulge | ▮ | $290,148 | ▮ |
| Infuse 4G | ▮ | $0 | ▮ |
| Nexus S 4G | ▮ | $2,506,000 | ▮ |
| Replenish | ▮ | $3,046,062 | ▮ |
| Transform | ▮ | $473,711 | ▮ |
| **Total** | ▮ | **$35,655,500** | ▮ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.2-PT.

3/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                          EXHIBIT 18.1-PT

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Gross Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | ███ | $2,075,269 | ███ |
| Continuum | ███ | $578,343 | ███ |
| Droid Charge | ███ | $1,671,298 | ███ |
| Epic 4G | ███ | $4,179,254 | ███ |
| Exhibit 4G | ███ | $2,044,683 | ███ |
| Galaxy Prevail | ███ | $14,920,600 | ███ |
| Galaxy Tab | ███ | $3,149,250 | ███ |
| Gem | ███ | $720,882 | ███ |
| Indulge | ███ | $290,148 | ███ |
| Infuse 4G | ███ | $0 | ███ |
| Nexus S 4G | ███ | $2,506,000 | ███ |
| Replenish | ███ | $3,046,062 | ███ |
| Transform | ███ | $473,711 | ███ |
| **Total** | ███ | **$35,655,500** | ███ |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT.
3/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 19-PT

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Lost Profits 2/ | Reasonable Royalty 3/ | Total |
|---------|-----------------|-----------------------|-------|
| Captivate | $95,135,464 | $6,919,809 | |
| Continuum | $15,520,436 | $2,288,104 | |
| Droid Charge | $62,164,253 | $11,616,802 | |
| Epic 4G | $18,092,726 | $15,785,076 | |
| Exhibit 4G | $5,792,327 | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | $14,390,528 | |
| Galaxy Tab | $12,448,830 | $2,727,419 | |
| Gem | $5,521,317 | $5,035,882 | |
| Indulge | $1,602,282 | $3,842,337 | |
| Infuse 4G | $137,561,712 | $15,889,452 | |
| Nexus S 4G | $9,682,088 | $2,363,714 | |
| Replenish | $2,315,039 | $3,023,346 | |
| Transform | $3,490,907 | $444,040 | |
| **Total** | **$397,545,610** | **$86,255,157** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT.

3/ EXHIBIT 19.1-PT.

4/ Infuse 4G starting on May 15, 2011.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 17-PT-A

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | ███ | $1,580,337 | ███ |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$397,545,610** | ███ | **$33,169,454** | ███ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-A.

3/ EXHIBIT 17.3-PT-A.

4/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        EXHIBIT 17.1-PT-A

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$397,545,610** | | **$33,169,454** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-A.

3/ EXHIBIT 17.4-PT-A.

4/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18-PT-A

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | ██████ | $2,075,269 | ██████ |
| Continuum | ██████ | $578,343 | ██████ |
| Droid Charge | ██████ | $1,671,298 | ██████ |
| Epic 4G | ██████ | $4,179,254 | ██████ |
| Exhibit 4G | ██████ | $2,044,683 | ██████ |
| Galaxy Prevail | ██████ | $14,920,600 | ██████ |
| Galaxy Tab | ██████ | $3,149,250 | ██████ |
| Gem | ██████ | $720,882 | ██████ |
| Indulge | ██████ | $290,148 | ██████ |
| Infuse 4G | ██████ | $0 | ██████ |
| Nexus S 4G | ██████ | $2,506,000 | ██████ |
| Replenish | ██████ | $3,046,062 | ██████ |
| Transform | ██████ | $473,711 | ██████ |
| **Total** | ██████ | **$35,655,500** | ██████ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.2-PT-A.
3/ Infuse 4G starting on May 15, 2011.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        EXHIBIT 18.1-PT-A

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Incremental Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,655,500** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-A.
3/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 19-PT-A

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Lost Profits 2/ | Reasonable Royalty 3/ | Total |
|---------|-----------------|------------------------|-------|
| Captivate | $95,135,464 | $6,919,809 | |
| Continuum | $15,520,436 | $2,288,104 | |
| Droid Charge | $62,164,253 | $11,616,802 | |
| Epic 4G | $18,092,726 | $15,785,076 | |
| Exhibit 4G | $5,792,327 | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | $14,390,528 | |
| Galaxy Tab | $12,448,830 | $2,727,419 | |
| Gem | $5,521,317 | $5,035,882 | |
| Indulge | $1,602,282 | $3,842,337 | |
| Infuse 4G | $137,561,712 | $15,889,452 | |
| Nexus S 4G | $9,682,088 | $2,363,714 | |
| Replenish | $2,315,039 | $3,023,346 | |
| Transform | $3,490,907 | $444,040 | |
| **Total** | **$397,545,610** | **$86,255,157** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-A.

3/ EXHIBIT 19.1-PT-A.

4/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 17-PT-B

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---------|-----------------------------|----------------------|-----------------------|-------|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$92,293,701** | | **$34,621,866** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-B.
3/ EXHIBIT 17.3-PT-B.
4/ Infuse 4G starting on May 15, 2011.
5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                      EXHIBIT 17.1-PT-B

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$92,293,701** | | **$34,621,866** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-B.
3/ EXHIBIT 17.4-PT-B.
4/ Infuse 4G starting on May 15, 2011.
5/ Design around period starting before actual notice.

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17.2-PT-B

## Apple's Lost Profits Summary
### See Damages Period Below 1/, 5/, 6/



| | | 2010 | | | | | | | | 2011 | | | | | | | | | | | 2012 | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | |

**Total Units Sold - Smartphones 2/**

- Captivate
- Continuum
- Droid Charge
- Epic 4G
- Exhibit 4G
- Galaxy Prevail
- Gem
- Indulge
- Infuse 4G
- Nexus S 4G
- Replenish
- Transform

**Total Units Eligible for LP**

**Beginning Capacity**
**Add'l Excess Capacity 3/**
**Total Capacity**

**Actual Units Eligible for LP**

**Ending Capacity**

**Apple Increm. Margin/Unit**
**Apple's Lost Profits ($)**
**Units Avail. for Other Remedies**

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                                    EXHIBIT 17.2-PT-B

## Apple's Lost Profits Summary
See Damages Period Below 1/, 5/, 6/



|  | 2010 | | | | | | | | 2011 | | | | | | | | | | | | 2012 | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June | Total |

**Total Units Sold - Tablets 2/**

Galaxy Tab

**Total Units Eligible for LP**

Beginning Capacity

**Add'l Excess Capacity 3/**

Total Capacity

**Actual Units Eligible for LP**

Ending Capacity

**Apple Increm. Margin/Unit ($) 4/**

**Apple's Lost Profits ($)**

**Units Avail. for Other Remedies**

**Apple's Total Lost Profits ($)  92,293,701**

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ Smartphones - Exhibit 37.1-PT, Tablets - Exhibit 38.1-PT.
3/ Smartphones - Exhibit 26-S, Tablets - Exhibit 27-S.
4/ Smartphones - Exhibit 32-S2, Tablets - Exhibit 33-S2.
5/ Infuse 4G starting on May 15, 2011.
6/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 18-PT-B

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | ███ | $2,075,269 | ███ |
| Continuum | ███ | $578,343 | ███ |
| Droid Charge | ███ | $1,671,298 | ███ |
| Epic 4G | ███ | $4,179,254 | ███ |
| Exhibit 4G | ███ | $2,044,683 | ███ |
| Galaxy Prevail | ███ | $14,920,600 | ███ |
| Galaxy Tab | ███ | $3,149,250 | ███ |
| Gem | ███ | $720,882 | ███ |
| Indulge | ███ | $290,148 | ███ |
| Infuse 4G | ███ | $0 | ███ |
| Nexus S 4G | ███ | $2,506,000 | ███ |
| Replenish | ███ | $3,046,062 | ███ |
| Transform | ███ | $473,711 | ███ |
| **Total** | ███ | **$35,655,500** | ███ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.2-PT-B.

3/ Infuse 4G starting on May 15, 2011.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                              EXHIBIT 18.1-PT-B

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Gross Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,655,500** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-B.
3/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                          EXHIBIT 19-PT-B

# Apple's Damages Per Samsung Product
## (Apple's Lost Profits and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Lost Profits 2/, 5/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|
| Captivate | $8,961,578 | $10,949,947 | |
| Continuum | $2,777,984 | $3,289,443 | |
| Droid Charge | $25,696,440 | $14,392,590 | |
| Epic 4G | $7,152,084 | $16,252,285 | |
| Exhibit 4G | $0 | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | $14,815,746 | |
| Galaxy Tab | $6,584,344 | $2,959,682 | |
| Gem | $1,406,069 | $5,331,622 | |
| Indulge | $0 | $3,985,316 | |
| Infuse 4G | $22,485,273 | $26,629,114 | |
| Nexus S 4G | $8,172,989 | $2,386,918 | |
| Replenish | $0 | $3,046,062 | |
| Transform | $1,729,350 | $460,749 | |
| **Total** | **$92,293,701** | **$106,544,156** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-B.

3/ EXHIBIT 19.1-PT-B.

4/ Infuse 4G starting on May 15, 2011.

5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 17-PT-C

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$92,293,701** | | **$34,621,866** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-C.
3/ EXHIBIT 17.3-PT-C.
4/ Infuse 4G starting on May 15, 2011.
5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                      EXHIBIT 17.1-PT-C

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$92,293,701** | | **$34,621,866** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-C.
3/ EXHIBIT 17.4-PT-C.
4/ Infuse 4G starting on May 15, 2011.
5/ Design around period starting before actual notice.

Prepared by Invotex Group                                Submitted Under Seal; Highly Confidential;
                                                         Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-PT-C

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,655,500** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.2-PT-C.

3/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18.1-PT-C

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Incremental Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,655,500** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-C.
3/ Infuse 4G starting on May 15, 2011.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                   EXHIBIT 19-PT-C

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)

### See Damages Period Below 1/, 4/

| Product | Lost Profits 2/, 5/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|
| Captivate | $8,961,578 | $10,949,947 | |
| Continuum | $2,777,984 | $3,289,443 | |
| Droid Charge | $25,696,440 | $14,392,590 | |
| Epic 4G | $7,152,084 | $16,252,285 | |
| Exhibit 4G | $0 | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | $14,815,746 | |
| Galaxy Tab | $6,584,344 | $2,959,682 | |
| Gem | $1,406,069 | $5,331,622 | |
| Indulge | $0 | $3,985,316 | |
| Infuse 4G | $22,485,273 | $26,629,114 | |
| Nexus S 4G | $8,172,989 | $2,386,918 | |
| Replenish | $0 | $3,046,062 | |
| Transform | $1,729,350 | $460,749 | |
| **Total** | **$92,293,701** | **$106,544,156** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-C.
3/ EXHIBIT 19.1-PT-C.
4/ Infuse 4G starting on May 15, 2011.
5/ Design around period starting before actual notice.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        EXHIBIT 17-PT-D

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $434,841 | |
| Droid Charge | $43,127,874 | | $423,351 | |
| Epic 4G | $14,447,477 | | $3,656,839 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,583,677 | |
| Gem | $5,521,317 | | $492,371 | |
| Indulge | $1,602,282 | | ($51) | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $6,882,462 | | $1,762,938 | |
| Replenish | $2,315,039 | | $2,758,660 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$372,064,356** | | **$30,456,180** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-D.

3/ EXHIBIT 17.3-PT-D.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 17.1-PT-D

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $434,841 | |
| Droid Charge | $43,127,874 | | $423,351 | |
| Epic 4G | $14,447,477 | | $3,656,839 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,583,677 | |
| Gem | $5,521,317 | | $492,371 | |
| Indulge | $1,602,282 | | ($51) | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $6,882,462 | | $1,762,938 | |
| Replenish | $2,315,039 | | $2,758,660 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$372,064,356** | | **$30,456,180** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-D.

3/ EXHIBIT 17.4-PT-D.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18-PT-D

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---------|---------|---------|-------|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/EXHIBIT 18.2-PT-D.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18.1-PT-D

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Gross Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.3-PT-D.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 19-PT-D

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Lost Profits 2/ | Reasonable Royalty 3/ | Total |
|---------|-----------------|-----------------------|-------|
| Captivate | $95,135,464 | $6,919,809 | ███ |
| Continuum | $15,520,436 | $2,212,981 | ███ |
| Droid Charge | $43,127,874 | $10,830,464 | ███ |
| Epic 4G | $14,447,477 | $15,428,880 | ███ |
| Exhibit 4G | $5,792,327 | $1,928,648 | ███ |
| Galaxy Prevail | $28,218,228 | $14,390,528 | ███ |
| Galaxy Tab | $12,448,830 | $2,583,677 | ███ |
| Gem | $5,521,317 | $4,839,667 | ███ |
| Indulge | $1,602,282 | $3,552,138 | ███ |
| Infuse 4G | $137,561,712 | $15,889,452 | ███ |
| Nexus S 4G | $6,882,462 | $1,762,938 | ███ |
| Replenish | $2,315,039 | $2,758,660 | ███ |
| Transform | $3,490,907 | $444,040 | ███ |
| **Total** | **$372,064,356** | **$83,541,882** | ███ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-D.

3/ EXHIBIT 19.1-PT-D.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al. EXHIBIT 17-PT-E

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | ■ | $1,580,337 | ■ |
| Continuum | $15,520,436 | | $434,841 | |
| Droid Charge | $43,127,874 | | $423,351 | |
| Epic 4G | $14,447,477 | | $3,656,839 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,583,677 | |
| Gem | $5,521,317 | | $492,371 | |
| Indulge | $1,602,282 | | ($51) | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $6,882,462 | | $1,762,938 | |
| Replenish | $2,315,039 | | $2,758,660 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$372,064,356** | ■ | **$30,456,180** | ■ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-E.

3/ EXHIBIT 17.3-PT-E.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                          EXHIBIT 17.1-PT-E

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $434,841 | |
| Droid Charge | $43,127,874 | | $423,351 | |
| Epic 4G | $14,447,477 | | $3,656,839 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,583,677 | |
| Gem | $5,521,317 | | $492,371 | |
| Indulge | $1,602,282 | | ($51) | |
| Infuse 4G | $137,561,712 | | $0 | |
| Nexus S 4G | $6,882,462 | | $1,762,938 | |
| Replenish | $2,315,039 | | $2,758,660 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$372,064,356** | | **$30,456,180** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-E.

3/ EXHIBIT 17.4-PT-E.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                           EXHIBIT 18-PT-E

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

### See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/EXHIBIT 18.2-PT-E.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18.1-PT-E

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Incremental Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---------|---------------------|----------------------|-------|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.3-PT-E.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 19-PT-E

# Apple's Damages Per Samsung Product
## (Apple's Lost Profits and Reasonable Royalty)
See Damages Period Below 1/, 4/

| Product | Lost Profits 2/ | Reasonable Royalty 3/ | Total |
|---------|-----------------|------------------------|-------|
| Captivate | $95,135,464 | $6,919,809 | |
| Continuum | $15,520,436 | $2,212,981 | |
| Droid Charge | $43,127,874 | $10,830,464 | |
| Epic 4G | $14,447,477 | $15,428,880 | |
| Exhibit 4G | $5,792,327 | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | $14,390,528 | |
| Galaxy Tab | $12,448,830 | $2,583,677 | |
| Gem | $5,521,317 | $4,839,667 | |
| Indulge | $1,602,282 | $3,552,138 | |
| Infuse 4G | $137,561,712 | $15,889,452 | |
| Nexus S 4G | $6,882,462 | $1,762,938 | |
| Replenish | $2,315,039 | $2,758,660 | |
| Transform | $3,490,907 | $444,040 | |
| **Total** | **$372,064,356** | **$83,541,882** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-E.

3/ EXHIBIT 19.1-PT-E.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 17-PT-F

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $464,271 | |
| Droid Charge | $6,660,061 | | $554,185 | |
| Epic 4G | $7,152,084 | | $3,698,356 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,815,940 | |
| Gem | $1,406,069 | | $506,623 | |
| Indulge | $0 | | ($51) | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $5,373,362 | | $1,786,141 | |
| Replenish | $0 | | $2,781,376 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$70,457,695** | | **$31,885,260** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-F.

3/ EXHIBIT 17.3-PT-F.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

5/ Design around period starting before actual notice.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 17.1-PT-F

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $464,271 | |
| Droid Charge | $6,660,061 | | $554,185 | |
| Epic 4G | $7,152,084 | | $3,698,356 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,815,940 | |
| Gem | $1,406,069 | | $506,623 | |
| Indulge | $0 | | ($51) | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $5,373,362 | | $1,786,141 | |
| Replenish | $0 | | $2,781,376 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$70,457,695** | | **$31,885,260** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-F.
3/ EXHIBIT 17.4-PT-F.
4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.
5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-PT-F

# Apple's Damages Per Samsung Product
## (Samsung's Profits [Revenue] and Reasonable Royalty)
See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.2-PT-F.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18.1-PT-F

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Gross Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---------|----------------------|-----------------------|-------|
| Captivate | ███████ | $2,075,269 | ███████ |
| Continuum | ███████ | $503,220 | ███████ |
| Droid Charge | ███████ | $655,024 | ███████ |
| Epic 4G | ███████ | $3,799,726 | ███████ |
| Exhibit 4G | ███████ | $2,044,683 | ███████ |
| Galaxy Prevail | ███████ | $14,920,600 | ███████ |
| Galaxy Tab | ███████ | $3,005,508 | ███████ |
| Gem | ███████ | $524,667 | ███████ |
| Indulge | ███████ | ($51) | ███████ |
| Infuse 4G | ███████ | $0 | ███████ |
| Nexus S 4G | ███████ | $1,867,498 | ███████ |
| Replenish | ███████ | $2,781,376 | ███████ |
| Transform | ███████ | $473,711 | ███████ |
| **Total** | ███████ | **$32,651,231** | ███████ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.3-PT-F.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    EXHIBIT 19-PT-F

# Apple's Damages Per Samsung Product
## (Apple's Lost Profits and Reasonable Royalty)
See Damages Period Below 1/, 4/

| Product | Lost Profits 2/, 5/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|
| Captivate | $8,961,578 | $10,949,947 | |
| Continuum | $2,777,984 | $3,214,320 | |
| Droid Charge | $6,660,061 | $13,606,252 | |
| Epic 4G | $7,152,084 | $15,872,757 | |
| Exhibit 4G | $0 | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | $14,815,746 | |
| Galaxy Tab | $6,584,344 | $2,815,940 | |
| Gem | $1,406,069 | $5,135,407 | |
| Indulge | $0 | $3,695,117 | |
| Infuse 4G | $22,485,273 | $26,629,114 | |
| Nexus S 4G | $5,373,362 | $1,786,141 | |
| Replenish | $0 | $2,781,376 | |
| Transform | $1,729,350 | $460,749 | |
| **Total** | **$70,457,695** | **$103,807,550** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-F.

3/ EXHIBIT 19.1-PT-F.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    EXHIBIT 17.1-PT-G

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $464,271 | |
| Droid Charge | $6,660,061 | | $554,185 | |
| Epic 4G | $7,152,084 | | $3,698,356 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,815,940 | |
| Gem | $1,406,069 | | $506,623 | |
| Indulge | $0 | | ($51) | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $5,373,362 | | $1,786,141 | |
| Replenish | $0 | | $2,781,376 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$70,457,695** | | **$31,885,260** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-G.

3/ EXHIBIT 17.4-PT-G.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        EXHIBIT 17.1-PT-G

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/, 4/

| Product | Apple's Lost Profits 2/, 5/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | ███ | $1,957,240 | ███ |
| Continuum | $2,777,984 | | $464,271 | |
| Droid Charge | $6,660,061 | | $554,185 | |
| Epic 4G | $7,152,084 | | $3,698,356 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,815,940 | |
| Gem | $1,406,069 | | $506,623 | |
| Indulge | $0 | | ($51) | |
| Infuse 4G | $22,485,273 | | $0 | |
| Nexus S 4G | $5,373,362 | | $1,786,141 | |
| Replenish | $0 | | $2,781,376 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$70,457,695** | | **$31,885,260** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-G.

3/ EXHIBIT 17.4-PT-G.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-PT-G

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

### See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/EXHIBIT 18.2-PT-G.

3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                              EXHIBIT 18.1-PT-G

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Incremental Profit] and Reasonable Royalty)

See Damages Period Below 1/, 3/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $503,220 | |
| Droid Charge | | $655,024 | |
| Epic 4G | | $3,799,726 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,005,508 | |
| Gem | | $524,667 | |
| Indulge | | ($51) | |
| Infuse 4G | | $0 | |
| Nexus S 4G | | $1,867,498 | |
| Replenish | | $2,781,376 | |
| Transform | | $473,711 | |
| **Total** | | **$32,651,231** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-G.
3/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                                EXHIBIT 19-PT-G

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)

### See Damages Period Below 1/, 4/

| Product | Lost Profits 2/, 5/ | Reasonable Royalty 3/ | Total |
|---------|--------------------:|----------------------:|-------|
| Captivate | $8,961,578 | $10,949,947 | |
| Continuum | $2,777,984 | $3,214,320 | |
| Droid Charge | $6,660,061 | $13,606,252 | |
| Epic 4G | $7,152,084 | $15,872,757 | |
| Exhibit 4G | $0 | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | $14,815,746 | |
| Galaxy Tab | $6,584,344 | $2,815,940 | |
| Gem | $1,406,069 | $5,135,407 | |
| Indulge | $0 | $3,695,117 | |
| Infuse 4G | $22,485,273 | $26,629,114 | |
| Nexus S 4G | $5,373,362 | $1,786,141 | |
| Replenish | $0 | $2,781,376 | |
| Transform | $1,729,350 | $460,749 | |
| **Total** | **$70,457,695** | **$103,807,550** | |

### Sources/Notes:

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-G.

3/ EXHIBIT 19.1-PT-G.

4/ Sales assumed to start on the following dates: Captivate 7/18/10, Continuum 11/11/10, Droid Charge 5/14/11, Epic 4G 8/31/10, Exhibit 4G 6/22/11, Galaxy Prevail 4/29/11, Gem 4/1/11, Indulge 6/7/11, Infuse 4G 5/15/11, Nexus S 4G and Replenish 5/8/11, Transform 10/10/10, and Galaxy Tab 11/10/10.

5/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 17-PT-H

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---------|------------------------|----------------------|----------------------|-------|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $159,045,355 | | $3,327 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$419,029,253** | | **$33,172,781** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-H.
3/ EXHIBIT 17.3-PT-H.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                            EXHIBIT 17.1-PT-H

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | ■ | $1,580,337 | ■ |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $159,045,355 | | $3,327 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$419,029,253** | ■ | **$33,172,781** | ■ |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-H.

3/ EXHIBIT 17.4-PT-H.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18-PT-H

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/EXHIBIT 18.2-PT-H.

Prepared by Invotex Group                    Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18.1-PT-H

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Gross Profit] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | ███████ | $2,075,269 | ███████ |
| Continuum | ███████ | $578,343 | ███████ |
| Droid Charge | ███████ | $1,671,298 | ███████ |
| Epic 4G | ███████ | $4,179,254 | ███████ |
| Exhibit 4G | ███████ | $2,044,683 | ███████ |
| Galaxy Prevail | ███████ | $14,920,600 | ███████ |
| Galaxy Tab | ███████ | $3,149,250 | ███████ |
| Gem | ███████ | $720,882 | ███████ |
| Indulge | ███████ | $290,148 | ███████ |
| Infuse 4G | ███████ | $4,713 | ███████ |
| Nexus S 4G | ███████ | $2,506,000 | ███████ |
| Replenish | ███████ | $3,046,062 | ███████ |
| Transform | ███████ | $473,711 | ███████ |
| **Total** | ███████ | **$35,660,213** | ███████ |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-H.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        EXHIBIT 19-PT-H

# Apple's Damages Per Samsung Product
## (Apple's Lost Profits and Reasonable Royalty)
### See Damages Period Below 1/

| Product | Lost Profits 2/ | Reasonable Royalty 3/ | Total |
|---------|-----------------|------------------------|-------|
| Captivate | $95,135,464 | $6,919,809 | |
| Continuum | $15,520,436 | $2,288,104 | |
| Droid Charge | $62,164,253 | $11,616,802 | |
| Epic 4G | $18,092,726 | $15,785,076 | |
| Exhibit 4G | $5,792,327 | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | $14,390,528 | |
| Galaxy Tab | $12,448,830 | $2,727,419 | |
| Gem | $5,521,317 | $5,035,882 | |
| Indulge | $1,602,282 | $3,842,337 | |
| Infuse 4G | $159,045,355 | $17,414,938 | |
| Nexus S 4G | $9,682,088 | $2,363,714 | |
| Replenish | $2,315,039 | $3,023,346 | |
| Transform | $3,490,907 | $444,040 | |
| **Total** | **$419,029,253** | **$87,780,642** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-H.
3/ EXHIBIT 19.1-PT-H.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    EXHIBIT 17-PT-I

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | ███ | $1,580,337 | ███ |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $159,045,355 | | $3,327 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$419,029,253** | ███ | **$33,172,781** | ███ |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-I.
3/ EXHIBIT 17.3-PT-I.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                        EXHIBIT 17.1-PT-I

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $95,135,464 | | $1,580,337 | |
| Continuum | $15,520,436 | | $509,964 | |
| Droid Charge | $62,164,253 | | $1,209,689 | |
| Epic 4G | $18,092,726 | | $4,013,035 | |
| Exhibit 4G | $5,792,327 | | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | | $14,390,528 | |
| Galaxy Tab | $12,448,830 | | $2,727,419 | |
| Gem | $5,521,317 | | $688,586 | |
| Indulge | $1,602,282 | | $290,148 | |
| Infuse 4G | $159,045,355 | | $3,327 | |
| Nexus S 4G | $9,682,088 | | $2,363,714 | |
| Replenish | $2,315,039 | | $3,023,346 | |
| Transform | $3,490,907 | | $444,040 | |
| **Total** | **$419,029,253** | | **$33,172,781** | |

Sources/Notes:

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-I.

3/ EXHIBIT 17.4-PT-I.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-PT-I

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/EXHIBIT 18.2-PT-I.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18.1-PT-I

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Incremental Profit] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---------|---------------------|----------------------|-------|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-I.

Prepared by Invotex Group                    Submitted Under Seal; Highly Confidential;
                                             Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 19-PT-I

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)

### See Damages Period Below 1/

| Product | Lost Profits 2/ | Reasonable Royalty 3/ | Total |
|---------|----------------|----------------------|-------|
| Captivate | $95,135,464 | $6,919,809 | |
| Continuum | $15,520,436 | $2,288,104 | |
| Droid Charge | $62,164,253 | $11,616,802 | |
| Epic 4G | $18,092,726 | $15,785,076 | |
| Exhibit 4G | $5,792,327 | $1,928,648 | |
| Galaxy Prevail | $28,218,228 | $14,390,528 | |
| Galaxy Tab | $12,448,830 | $2,727,419 | |
| Gem | $5,521,317 | $5,035,882 | |
| Indulge | $1,602,282 | $3,842,337 | |
| Infuse 4G | $159,045,355 | $17,414,938 | |
| Nexus S 4G | $9,682,088 | $2,363,714 | |
| Replenish | $2,315,039 | $3,023,346 | |
| Transform | $3,490,907 | $444,040 | |
| **Total** | **$419,029,253** | **$87,780,642** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-I.

3/ EXHIBIT 19.1-PT-I.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al. EXHIBIT 17-PT-J

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/, 4/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $43,968,916 | | $3,327 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$113,777,344** | | **$34,625,193** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-J.
3/ EXHIBIT 17.3-PT-J.
4/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                                    EXHIBIT 17.1-PT-J

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Gross Profit], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/, 4/ | Samsung's Profits | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $43,968,916 | | $3,327 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$113,777,344** | | **$34,625,193** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-J.

3/ EXHIBIT 17.4-PT-J.

4/ Design around period starting before actual notice.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18-PT-J

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

### See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---------|---------------------|----------------------|-------|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 18.2-PT-J.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                    EXHIBIT 18.1-PT-J

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Gross Profit] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-J.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                        EXHIBIT 19-PT-J

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)
### See Damages Period Below 1/

| Product | Lost Profits 2/, 4/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|
| Captivate | $8,961,578 | $10,949,947 | |
| Continuum | $2,777,984 | $3,289,443 | |
| Droid Charge | $25,696,440 | $14,392,590 | |
| Epic 4G | $7,152,084 | $16,252,285 | |
| Exhibit 4G | $0 | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | $14,815,746 | |
| Galaxy Tab | $6,584,344 | $2,959,682 | |
| Gem | $1,406,069 | $5,331,622 | |
| Indulge | $0 | $3,985,316 | |
| Infuse 4G | $43,968,916 | $28,154,599 | |
| Nexus S 4G | $8,172,989 | $2,386,918 | |
| Replenish | $0 | $3,046,062 | |
| Transform | $1,729,350 | $460,749 | |
| **Total** | **$113,777,344** | **$108,069,641** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 17.2-PT-J.
3/ EXHIBIT 19.1-PT-J.
4/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.

EXHIBIT 17-PT-K

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Revenue], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/, 4/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $43,968,916 | | $3,327 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$113,777,344** | | **$34,625,193** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-K.

3/ EXHIBIT 17.3-PT-K.

4/ Design around period starting before actual notice.

Submitted Under Seal; Highly Confidential; Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 17.1-PT-K

# Apple's Damages Per Samsung Product

## (Apple's Lost Profits, Samsung's Profits [Incremental Profit], and Reasonable Royalty)

See Damages Period Below 1/

| Product | Apple's Lost Profits 2/, 4/ | Samsung's Profits 3/ | Reasonable Royalty 3/ | Total |
|---|---|---|---|---|
| Captivate | $8,961,578 | | $1,957,240 | |
| Continuum | $2,777,984 | | $539,394 | |
| Droid Charge | $25,696,440 | | $1,340,523 | |
| Epic 4G | $7,152,084 | | $4,077,884 | |
| Exhibit 4G | $0 | | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | | $14,815,746 | |
| Galaxy Tab | $6,584,344 | | $2,959,682 | |
| Gem | $1,406,069 | | $702,838 | |
| Indulge | $0 | | $290,148 | |
| Infuse 4G | $43,968,916 | | $3,327 | |
| Nexus S 4G | $8,172,989 | | $2,386,918 | |
| Replenish | $0 | | $3,046,062 | |
| Transform | $1,729,350 | | $460,749 | |
| **Total** | **$113,777,344** | | **$34,625,193** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-K.

3/ EXHIBIT 17.4-PT-K.

4/ Design around period starting before actual notice.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18-PT-K

# Apple's Damages Per Samsung Product

## (Samsung's Profits [Revenue] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---------|----------------------|-----------------------|-------|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.2-PT-K.

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                    EXHIBIT 18.1-PT-K

# Apple's Damages Per Samsung Product
## (Samsung's Profits [Incremental Profit] and Reasonable Royalty)

See Damages Period Below 1/

| Product | Samsung's Profits 2/ | Reasonable Royalty 2/ | Total |
|---|---|---|---|
| Captivate | | $2,075,269 | |
| Continuum | | $578,343 | |
| Droid Charge | | $1,671,298 | |
| Epic 4G | | $4,179,254 | |
| Exhibit 4G | | $2,044,683 | |
| Galaxy Prevail | | $14,920,600 | |
| Galaxy Tab | | $3,149,250 | |
| Gem | | $720,882 | |
| Indulge | | $290,148 | |
| Infuse 4G | | $4,713 | |
| Nexus S 4G | | $2,506,000 | |
| Replenish | | $3,046,062 | |
| Transform | | $473,711 | |
| **Total** | | **$35,660,213** | |

**Sources/Notes:**
1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.
2/ EXHIBIT 18.3-PT-K

Submitted Under Seal; Highly Confidential;
Outside Counsel Eyes' Only

Apple Inc. v. Samsung Electronics Co., LTD., et al.                                          EXHIBIT 19-PT-K

# Apple's Damages Per Samsung Product
# (Apple's Lost Profits and Reasonable Royalty)
### See Damages Period Below 1/

| Product | Lost Profits 2/, 4/ | Reasonable Royalty 3/ | Total |
|---------|--------------------:|----------------------:|-------|
| Captivate | $8,961,578 | $10,949,947 | |
| Continuum | $2,777,984 | $3,289,443 | |
| Droid Charge | $25,696,440 | $14,392,590 | |
| Epic 4G | $7,152,084 | $16,252,285 | |
| Exhibit 4G | $0 | $2,044,683 | |
| Galaxy Prevail | $7,327,589 | $14,815,746 | |
| Galaxy Tab | $6,584,344 | $2,959,682 | |
| Gem | $1,406,069 | $5,331,622 | |
| Indulge | $0 | $3,985,316 | |
| Infuse 4G | $43,968,916 | $28,154,599 | |
| Nexus S 4G | $8,172,989 | $2,386,918 | |
| Replenish | $0 | $3,046,062 | |
| Transform | $1,729,350 | $460,749 | |
| **Total** | **$113,777,344** | **$108,069,641** | |

**Sources/Notes:**

1/ Damages calculated from August 4, 2010 for the '381 patent; April 15, 2011 for '915 patent and 'D677 design patent; and June 16, 2011 for the '163 patent and 'D305 design patent.

2/ EXHIBIT 17.2-PT-K.

3/ EXHIBIT 19.1-PT-K.

4/ Design around period starting before actual notice.