RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
XAVIER M. BRANDWAJN (Ca. Bar No. 246218)
Xavier.brandwajn@alston.com
ALSTON & BIRD LLP
1950 University Circle, Fifth Floor
East Palo Alto, CA 94303-2282
Telephone:     650-838-2000
Facsimile:     650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (pro hac vice)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:     404-881-7000
Facsimile:     404-881-7777

Attorneys for Non-Party
NOKIA CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | Case No.: 11-CV-01846-LHK (PSG)<br><br>**NON-PARTY NOKIA CORPORATION'S MOTION FOR PARTIAL RECONSIDERATION OF LIMITED PORTIONS OF THE COURT'S ORDER RE: MOTIONS TO SEAL (DKT. 3113)** |

# NOTICE OF MOTION AND MOTION

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD, AND TO THE CLERK AND HONORABLE JUDGE OF THE COURT, PLEASE TAKE NOTICE THAT pursuant to Civil Local Rules 7-9, 7-11 and 79-5, non-party Nokia Corporation ("Nokia") moves the Court for reconsideration of limited portions of the June 11, 2014 Order Re: Motions to Seal (Dkt. No. 3113) ("Sealing Order") granting-in-part and denying-in-part various administrative motions to file under seal. Nokia bases the Motion on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declaration of Ryan W. Koppelman filed concurrently herewith; the previously filed Declaration of Paul Melin in this action (Dkt. No. 2254) and such further briefing, evidence or argument that the Court may order.

# RELIEF REQUESTED

Nokia requests an order permitting Nokia to file under seal redacted versions of 32 documents that are more narrowly tailored, consistent with the Sealing Order, to protect Nokia's confidential information. These documents are identified in Exhibit 1 of the Declaration of Ryan W. Koppelman.

DATED: July 2, 2014                Respectfully submitted,

ALSTON & BIRD LLP

*/s/ Ryan W. Koppelman*
RANDALL L. ALLEN
RYAN W. KOPPELMAN
XAVIER M. BRANDWAJN

Attorneys for Non-Party Nokia Corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND FACTUAL STATEMENT

The parties in the litigation, as well as Nokia, filed administrative motions to file under seal confidential information contained in or attached to various motions, responses, and replies. (*See generally* Dkt. No. 3113 at 4-18). On June 11, 2014, the Court granted-in-part and denied-in-part portions of several of those motions to seal. (*See* Dkt. No. 3113).

Nokia seeks reconsideration of the Sealing Order with respect to 32 exhibits[1] (of the 134 exhibits and filings affected by the Sealing Order), portions of which contain sensitive non-public information that should remain under seal. Importantly, the information Nokia seeks to seal in these exhibits is narrowly tailored to comport to its contractual obligations and this Court's Protective Order and consists of the following: (i) nonpublic, competitively sensitive patent license terms, which the Court has previously ruled are properly sealable, (ii) confidential licensing negotiations covered by non-disclosure agreements ("NDA") which Nokia is obligated to keep secret and which if made public would create competitive harm to Nokia, (iii) certain revealing analysis of Nokia's confidential licensing terms in comparison to various public information, (iv) the content of Nokia's internal confidential discussions about licensing issues and strategy, and (v) nonpublic details about confidential arbitrations that are also subject to NDAs.

The Court, in denying sealing of these exhibits, ruled that the proposed sealing was "not narrowly tailored to confidential business information." (*See generally id.*). Nokia has addressed this issue by conducting a careful review of these exhibits and redacting only those narrow portions of each exhibit that contain the categories of confidential information set forth above. Accordingly, for these reasons and those discussed below, Nokia respectfully requests that the Court grant Nokia's motion for partial reconsideration.

## ARGUMENT

### I. THE COURT MAY PROPERLY RECONSIDER ITS PRIOR RULING

The Court has discretion to reconsider its prior orders. *See United States v. Quintanilla*, No.

---

[1] The filings for which Nokia seeks partial reconsideration are listed in a table provided as Exhibit 1 to the Declaration of Ryan W. Koppelman.

CR 09-01188 SBA, 2011 WL 4502668, at *5 (N.D. Cal. Sep. 28, 2011).  Local Civil Rule 7-9(a) provides that any party can request "leave to file a motion for reconsideration of any interlocutory order made by that Judge on any ground set forth in Civil L.R. 7-9(b)."  Local Civil Rule 7-9(b), in turn, provides that reconsideration is appropriate if the court committed clear error or the initial decision was manifestly unjust.  *See Quintanilla*, 2011 WL 4502668, at *5 (citing *Sch. Dist. No. 1 J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).  In addition, the Court has inherent authority to reconsider interlocutory orders to prevent manifest injustice.  *Id.* at *5 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

Here, Nokia respectfully submits that the Court should reconsider its prior ruling because Nokia's confidential patent license terms, negotiation strategy, and arbitration details will be released into the public domain, to Nokia's detriment, if this information is not protected.  Nokia is a non-party to this action, and it would be unjust for its confidential business information to become a further casualty of Apple's and Samsung's ongoing dispute. Nokia's patent licensing strategy is an important part of its revenue and reflects the negotiated value of Nokia's intellectual property (as well as that of others, in the case of cross-license agreements) as licensed to each particular licensee.  Neither Nokia's competitors—nor the public at large—should receive a competitive advantage by knowing, and then being able to use, Nokia's confidential patent license terms with one entity as leverage for extracting similar or more favorable terms in separate patent license negotiations.  Details about Nokia's negotiations and arbitrations could likewise provide Nokia's competitors with a competitive advantage. In accordance with the Court's Order, Nokia has re-examined the exhibits identified in the Sealing Order and significantly narrowed the amount of information that should be sealed.  The Court should also reconsider its ruling in light of well-settled authority establishing that confidential patent license terms is the type of information that is well suited for sealing.  In light of that precedent, the Sealing Order satisfies the standard for reconsideration.[2]

---

[2] As discussed below, sealing the documents at issue would be consistent with the Court's prior rulings with respect to patent license terms and other confidential information. (Dkt. No. 1649 at 7, 10-11 (sealing terms of Apple-Nokia patent license agreement); Dkt. No. 2397 (terms of Interdigital-Apple patent license agreement were properly sealed)).

## II. THE COURT SHOULD SEAL NOKIA PATENT LICENSE TERM AND NEGOTIATION INFORMATION

### A. The Confidential Information May Be Sealed Under The "Good Cause" Standard

The Ninth Circuit has held that a "particularized showing" under the "'good cause' standard of Rule 26(c) will 'suffice[] to warrant preserving the secrecy of sealed discovery material attached to nondispositive [sic] motions.'" *Kamakana v. City and Cnty. Of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135, 1138 (9th Cir. 2003)). Unlike the public interest in inspecting documents attached to dispositive pleadings, which creates a "strong presumption in favor of access," the public need to access documents "unrelated or only tangentially related to the underlying cause of action" attached to non-dispositive motions is far weaker. *Kamakana*, 447 F.3d at 1178-79 (internal quotations omitted). In this situation, the "usual presumption of the public's right to access is rebutted." *Id.* at 1179.

The information at issue here was submitted in connection with non-dispositive motions—for example, a motion to compel further discovery and sanctions (Dkt. No. 2395) and a motion for sanctions for protective order violations (Dkt. No. 2838). As a result, the public's interest is weak and the presumption of the public's right to access is rebutted. The public's interest is also greatly outweighed by the near-certain harm to Nokia from having its confidential patent licensing terms cast into the public domain. "Secrecy is a one-way street;" once confidential information has been released to the public, it "cannot be made secret again." *In re Copley Press, Inc. v. Ismael Highera-Guerrero*, 518 F.3d 1022, 1025 (9th Cir. 2008).

### B. Confidential Licensing Terms Are Properly Sealed, As The Court Has Ruled, As Is The Related Information Here Sought To Be Sealed.

The Ninth Circuit has adopted the Restatements' definition of "trade secret" for purposes of sealing, holding that "[a] 'trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Electronic Arts*, 298 F. App'x 568, 569-70 (9th Cir. 2008) (quoting Restatement of Torts § 757, cmt. b). Confidential terms of a patent license, including pricing terms, royalty rates, and minimum payment terms, are protectable trade secrets that are properly sealed. *Id.* at 569. Indeed, the Court in this case has previously found that non-public licensing terms

are sealable. (Dkt. No. 1649 at 7, 10-11 (sealing terms of Apple-Nokia patent license agreement); Dkt. No. 2397 (terms of Interdigital-Apple patent license agreement were properly sealed)).

The disclosure of such information would be harmful for the reasons discussed in the Declaration of Paul Melin. (Dkt. No. 2254 at ¶ 4). Public disclosure of or regarding Nokia's confidential license terms, including the negotiation or arbitration of those terms or the internal confidential discussions regarding the strategy for those terms, would cause Nokia competitive harm as other companies in the communications industry could use the information to demand the same or more favorable terms in future license negotiations. (*See id.*). Likewise, disclosure of terms exchanged and statements made during negotiations could lead to similar competitive harm, as those negotiations and arbitrations were covered by nondisclosure agreements or other confidentiality obligations pursuant to which Nokia is obligated to keep secret nonpublic details. (*See, e.g.*, Koppelman Decl., ¶¶ 9, 10, 29); *Guzik Tech. Ent., Inc. v. Western Digital Corp.*, 2013 WL 6576266, *3 (N.D. Cal. Dec. 13, 2013) (granting motion to seal information subject to a NDA). For the same reasons, revealing analyses of Nokia's confidential licensing terms in comparison to limited information that is publicly available should also be sealed to protect the secrecy of Nokia's confidential licensing terms so that no one is able to potentially verify the accuracy of publicly available speculations about Nokia confidential licensing terms or reconstruct confidential licensing terms on the basis of those publicly available musings. (*See* Koppelman Decl., ¶¶ 9, 10, 29).

Notably, the filings at issue in this motion arose because Nokia sought to protect and maintain the confidentiality of its licensing agreements. While seeking to learn the extent of the disclosure and misuse of its confidential information, Nokia was forced to prove that its licensing agreements are in fact confidential. (*See, e.g.*, Order Show Cause, Dkt. No. 2689). Samsung made, and Nokia and Apple were forced to respond to, baseless arguments regarding its confidential information. (*See, e.g.*, Dkt. No. 2689 at 4). Ultimately, the Court found that the information Nokia sought to protect—and seeks to seal here—was "non-public." (Dkt. No. 2935). Although Samsung based these rejected arguments on non-confidential or public information, the arguments and responses do not exist in a vacuum. Thus, Nokia proposes narrowly tailored redactions to prevent the possibility of others reverse engineering or otherwise inferring confidential information through creative manipulation and references to non-

confidential information. Allowing the information at issue to become public risks forcing third parties whose protected information is misused under a protective order to choose between letting the misuse go unnoticed or risking the information becoming public while attempting to enforce that order.

To the extent Samsung opposes this motion on the basis that the license term information here sought to be sealed was accidentally disclosed by Apple in the public record, such a contention would lack merit. In its order sanctioning Samsung and Quinn Emanuel for violating the protective order, the Court found that the terms of the Nokia-Apple license were "non-public." (Dkt. No. 2935). Moreover, Apple and Nokia made every effort to withdraw that information from the public record. (*See, e.g.*, 630 Dkt. Nos. 1258, 1276; 1846 Dkt. No. 1338-1, 3038, 3038-1). There is no evidence that any member of the public learned Nokia's confidential license terms, or its strategy in negotiating those terms, as a consequence of the accidental disclosure by Apple. (*See* Dkt. No. 3038 at 3 (noting that even Samsung did not claim to have learned of the disclosure until notified by Apple)). Further, the Court has previously acknowledged that confidentiality is not a binary determination and that third parties have an interest in limiting further disclosure of confidential information in cases of inadvertent disclosures. (Dkt. No. 1649 at 25-26 (sealing previously disclosed confidential information under the "compelling reasons" standard) (citing *Electronic Arts*, 298 F. App'x at 569-70)).

Accordingly, the narrow scope of information sought to be sealed by Nokia in this Motion is confidential, competitive, and would irreparably harm Nokia if the Sealing Order is enforced in its entirety with respect to the filings at issue.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, Nokia respectfully requests that the Court order sealed the highlighted portions of the filings at issue in the present motion.  Nokia will file public redacted versions of the exhibits within seven days of the Court's order on the instant motion (*see* Dkt. No. 3116).  In compliance with Civil local Rule 79-5, Nokia's filing will be served on all parties.

DATED: July 2, 2014                     Respectfully submitted,

                                        ALSTON & BIRD LLP

                                      */s/ Ryan W. Koppelman*
                                      RANDALL L. ALLEN
                                      RYAN W. KOPPELMAN
                                      XAVIER M. BRANDWAJN

                                      Attorneys for Non-Party Nokia Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 2nd day of July 2014.

                                              */s/ Ryan W. Koppelman*
                                              Ryan W. Koppelman