# EXHIBIT C
# FILED UNDER SEAL

WILMERHALE

October 4, 2013

Joseph J. Mueller

+1 617 526 6396 (t)
+1 617 526 5000 (f)
joseph.mueller@wilmerhale.com

**Contains Confidential Business Information**
**Subject to Protective Orders**

**BY EMAIL**

Robert Becher, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

**Re:**     ***Apple Inc. v. Samsung Elecs. Co. Ltd.***, No. 11-cv-1846 LHK (PSG)

Dear Rob:

I write regarding the Court's October 2, 2013 Order Re: Apple's Motion for Sanctions.  In that
Order, the Court required (among other things) the production of two categories of documents by
October 16, 2013.

The second category—i.e., "[a]ll e-mails and other communications sent or received since March
24, 2012 by the Samsung employees who received the confidential information (more
specifically, the Samsung employees listed in the attachments to Mr. Becher's August 1 letter) to
the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips"—are
documents that Samsung has delayed in identifying and collecting.  We look forward to their
prompt production and will follow up with you to coordinate the timing of their production vis-à-
vis the depositions ordered by the Court.

But the first category—i.e., "[t]he e-mails listed on Attachment A to Mr. Becher's August 1,
2013 letter to Mr. Selwyn"—are documents that have already been identified and collected.
Indeed, you previously sent us redacted versions of these documents.

Because the documents identified in your August 1, 2013 letter are already collected, we ask you
to produce the unredacted versions today.  Please confirm that you will do so.

Sincerely,

/s/ Joe Mueller

Joe Mueller

# EXHIBIT F
# FILED UNDER SEAL

WILMERHALE

October 11, 2013

Joseph J. Mueller

+1 617 526 6396 (t)
+1 617 526 5000 (f)
joseph.mueller@wilmerhale.com

**Contains Confidential Business Information**
**Subject to Protective Orders**

**BY EMAIL**

Robert Becher, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-cv-1846 LHK (PSG)

Dear Rob:

I write regarding the discovery ordered by the Court in its October 2, 2013 Order Re: Apple's
Motion for Sanctions, and related issues.

1.       As noted in my letter of October 4, 2013, we expect Samsung to produce the categories
of documents identified by the Court, and not to redact these documents on privilege grounds.  If
Samsung does not produce these documents in advance of next week's depositions, then we will
hold the depositions open and resume them after the productions are made.

2.       As an interim step, please produce, at a minimum, redacted versions of the following
documents immediately.  You previously have produced redacted versions of the cover emails
identified in your August 1, 2013 letters to Mark Selwyn, but not the attachments, nor the cover
emails or attachments identified in your September 25, 2013 letters to Mark Selwyn.  Please
immediately produce redacted versions of the cover emails identified in your September 25,
2013 letters, as well as the attachments to the emails identified in the August 1 and September 25
letters as they were originally sent to Samsung.

With regard to the attachments, we have the incompletely redacted Teece Report, which was
attached to Ms. Estrich's recent declaration.  We ask for the incompletely redacted April 3, 2013
Initial Submission made by Samsung in response to the Commission's questions, as it was
circulated to Samsung on April 3, 2013—as a final, served document, there can be no claim of
privilege, and we want to see precisely the version that was sent to Samsung on April 3, 2013.
(Again, we dispute that Samsung can properly claim privilege as to any of these documents.)

Please produce these documents **today** (by FTP site production).

3.       In the interests of reaching logistical accommodations with you, if you provide us with
the materials described in item (2) today (by FTP site production), and stipulate to moving the

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
October 11, 2013
Page 2

WILMERHALE

next hearing before Judge Grewal from October 22 to October 23 (as Bill Lee has discussed with Vicki Maroulis and Susan Estrich), then we will agree to take the depositions at our offices (or those of our co-counsel) in Los Angeles and wait until next Thursday to depose Dr. Ahn.  Please let us know today if you agree.

4.      Who will be your 30(b)(6) designee?

5.      We had hoped to receive your 30(b)(6) designation and your document production before noticing our fifth fact witness, but you have not yet made any 30(b)(6) designation or document production pursuant to the Court's October 2 Order.  In the absence of such designation or documents, attached please find a deposition notice for Jin Hwan ("James") Kwak, for October 16 at our Los Angeles office.  Please confirm that he will be available then.

6.      In response to your October 10, 2013 letter regarding privilege issues, we agree that the act of producing documents required by the Court's order will not, itself, waive any privilege.  We do not agree, however, that you can use privileged documents to prepare a witness and necessarily maintain the privilege thereafter.  We do not see the need to enter into any stipulation on this issue.

7.      In response to your other October 10, 2013 letter, regarding Paul Melin's declaration, we do not consent to your using this declaration for witness preparation.  You also request confirmation that Apple will not contend that Samsung's "production of any responsive documents from ITC Investigation 337-TA-794 violates the ITC protective order or any other protective order."  As Bill Lee stated in his October 8 letter, Judge Grewal's October 2, 2013 Order does not authorize additional breaches of any protective order.  To the extent that Samsung produces documents from the 794 Investigation, it should do so in accordance with the Protective Order governing that investigation.  We are willing to work with you and Nokia to ensure that Nokia's counsel has access to these documents to the extent that they contain Nokia confidential information.

8.      In your letter of September 25, 2013, you responded to the questions that I had raised in earlier correspondence.  But, your answers did not substantively address many issues, e.g.:

        a.      You provide no information regarding what Samsung's foreign counsel have done with the improperly-disclosed information.  You promised to provide it, and Ms. Estrich repeated that promise at the hearing, but we now understand that Samsung is refusing to provide that information.  Can you confirm that foreign counsel are preserving all documents responsive to the Court's October 2 Order?

        b.      Regarding the "auto-delete" function, your letter seems to indicate that the function was active at the time the improper disclosures were made, and remains active today.  You state that Samsung has instituted an archive system.  When precisely was that

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
October 11, 2013
Page 3

**WilmerHale**

archived system instituted?  Is Samsung representing that **all** emails containing, referring to, or otherwise using the improperly-disclosed information were archived?

c.      You note that Samsung proposed deleting the disclosures, and that Nokia asked Samsung not to delete them.  Why did Samsung make a deletion proposal to Nokia, without asking Apple if deletion was permissible?

d.      Relatedly, we still do not understand why Samsung notified Nokia of specific disclosures on July 16, but waited until August 1 to notify Apple.  Will you represent that the pendency of the U.S. Trade Representative's review of the 794 exclusion order played **no** role in Samsung's and Quinn Emanuel's decision to wait to notify Apple, and that the USTR review was not mentioned at all during the discussions of whether to notify Apple?

9.      As for your questions to us regarding the Dutch disclosures, we simply note that these disclosures were made at the request of the Dutch court, in an anonymized, restricted form—and that Samsung also made its own disclosures to the Dutch court at the same time, in response to the same request.  Beyond that, we will not entertain Samsung's attempt to change the subject from its own conduct.

Sincerely,

*/s/ Joe Mueller*

Joe Mueller

# EXHIBIT N
# FILED UNDER SEAL

1

1        UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

3    - - - - - - - - - - - - - - - X

4    APPLE INC., a California        :

5    Corporation,                    :

6              Plaintiffs,           :

7    v.                              :

8    SAMSUNG ELECTRONICS CO., LTD., a :

9    Korean corporation; SAMSUNG     : Civil Action No.

10   ELECTRONICS AMERICA, INC., a New : 11-cv-01846-LHK

11   York corporation; and SAMSUNG   :

12   TELECOMMUNICATIONS AMERICA, LLC, :  FULL VERSION

13   a Delaware limited liability    :  Apple-Samsung

14   Company,                        :  Attorneys' Eyes

15         Defendants.               :  Only

16   - - - - - - - - - - - - - - - X

17   (Caption continued on next page)

18   CONTAINS HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY PORTIONS

19        UNDER NORTHERN CALIFORNIA PROTECTIVE ORDER

20       Videotaped Deposition of KENNETH S. KOREA

21             Los Angeles, California

22         Wednesday, October 16, 2013, 10:06 a.m.

23   Job No.:  46317

24   Pages 1 - 293

25   Reported by:  Lisa Michaels

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF KENNETH S. KOREA - FULL VERSION
CONDUCTED ON WEDNESDAY, OCTOBER 16, 2013

143

| | | |
|---|---|---|
| 1 | THE WITNESS:  Yeah, I do not know whether | 02:46:24 |
| 2 | there was any supervision of such efforts.  I just | 02:46:26 |
| 3 | don't know the answer to your question. | 02:46:30 |
| 4 | MS. KASSABIAN:  Mr. Selwyn, can we take a | 02:46:46 |
| 5 | restroom break within the next five minutes? | 02:46:49 |
| 6 | MR. SELWYN:  Yes. | 02:46:50 |
| 7 | THE WITNESS:  I would suggest bio break. | 02:46:54 |
| 8 | MR. SELWYN:  You said within the next five | 02:46:58 |
| 9 | minutes? | 02:47:05 |
| 10 | THE WITNESS:  I think he is in the middle of a | 02:47:05 |
| 11 | line of questioning.  So let him finish, and then we'll | 02:47:08 |
| 12 | take a break. | 02:47:08 |
| 13 | MR. SELWYN:  Well said.  Thank you. | 02:47:10 |
| 14 | BY MR. SELWYN: | 02:47:10 |
| 15 | Q.  What communication has Samsung had with its | 02:47:10 |
| 16 | counsel outside the US regarding the terms of Apple's | 02:47:14 |
| 17 | licenses with Nokia, Ericsson, Philips and Sharp? | 02:47:17 |
| 18 | MS. KASSABIAN:  I'm going to object to that | 02:47:22 |
| 19 | question as lacking in foundation and calling for | 02:47:23 |
| 20 | attorney-client communications and work product. | 02:47:28 |
| 21 | But to the extent you can answer the question | 02:47:32 |
| 22 | without divulging that information, you may. | 02:47:35 |
| 23 | And I would ask the reporter to read it back. | 02:47:38 |
| 24 | THE WITNESS:  Could you repeat back the | 02:47:41 |
| 25 | question, his question. | 02:47:44 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF KENNETH S. KOREA - FULL VERSION
## CONDUCTED ON WEDNESDAY, OCTOBER 16, 2013

144

| | | |
|---|---|---|
| 1 | (The record was read as follows: | 02:47:44 |
| 2 | "What communication has Samsung had with | 02:47:10 |
| 3 | its counsel outside the US regarding the | 02:47:13 |
| 4 | terms of Apple's licenses with Nokia, | 02:47:15 |
| 5 | Ericsson, Philips and Sharp?") | 02:47:19 |
| 6 | THE WITNESS:  Yeah.  I mean, with respect to | 02:47:58 |
| 7 | the 30(b)(6) topic, I certainly spoke with Modiano & | 02:48:00 |
| 8 | Partners, and they confirmed to me that they never | 02:48:04 |
| 9 | received the e-mails from Quinn Emanuel containing | 02:48:12 |
| 10 | partially redacted Teece report. | 02:48:16 |
| 11 | BY MR. SELWYN: | 02:48:16 |
| 12 | Q.  My question, sir, is different than that.  I'm | 02:48:17 |
| 13 | not confining my question to the Teece report.  My | 02:48:19 |
| 14 | question is broader. | 02:48:26 |
| 15 | My question is:  What communication has | 02:48:27 |
| 16 | Samsung had with its counsel outside the US regarding | 02:48:29 |
| 17 | the terms of Apple's licenses with Nokia, Ericsson, | 02:48:33 |
| 18 | Sharp and Philips? | 02:48:33 |
| 19 | A.  I'm not sure discussion took place. | 02:48:38 |
| 20 | MS. KASSABIAN:  I would caution the witness | 02:48:40 |
| 21 | not to disclose any clearly attorney-client | 02:48:41 |
| 22 | communications between Samsung and its counsel.  But if | 02:48:45 |
| 23 | you can answer the question without doing that, you | 02:48:47 |
| 24 | may. | 02:48:50 |
| 25 | THE WITNESS:  He knows I need to take bio | 02:48:51 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF KENNETH S. KOREA - FULL VERSION
CONDUCTED ON WEDNESDAY, OCTOBER 16, 2013

145

| | | |
|---|---|---|
| 1 | break. | 02:48:53 |
| 2 | Okay. So, you know, going back to your | 02:48:54 |
| 3 | question, you know, I've been designated to testify | 02:48:55 |
| 4 | with -- with respect to, you know, dissemination of and | 02:48:58 |
| 5 | use by Samsung or lack thereof of the subject of | 02:49:02 |
| 6 | confidential information, and I can -- I'd be happy to | 02:49:06 |
| 7 | answer questions based on my -- my communications or | 02:49:10 |
| 8 | interviews of the outside law firms who received | 02:49:14 |
| 9 | e-mails from Quinn Emanuel about partially redacted | 02:49:19 |
| 10 | Teece report, as well as the Samsung public interest | 02:49:22 |
| 11 | brief, and see whether -- what steps they have taken | 02:49:27 |
| 12 | and whether there was any use of such information. I'd | 02:49:33 |
| 13 | be happy to do that, and I was actually doing that. | 02:49:37 |
| 14 | But if your question goes beyond that, I'm not so sure | 02:49:40 |
| 15 | I can answer those questions beyond that 30(b)(6) | 02:49:44 |
| 16 | topics. | 02:49:49 |
| 17 | MR. SELWYN: Okay. Why don't we take our bio | 02:49:51 |
| 18 | break. | 02:49:53 |
| 19 | THE WITNESS: Okay. Thank you. | 02:49:53 |
| 20 | THE VIDEOGRAPHER: Going off the record. The | 02:49:56 |
| 21 | time is 2:50. | 02:49:59 |
| 22 | (A brief recess was taken.) | 03:02:37 |
| 23 | THE VIDEOGRAPHER: Coming back on the record. | 03:03:13 |
| 24 | The time is 3:03. | 03:03:16 |
| 25 | THE WITNESS: Mark, before we start, I want to | 03:03:20 |

# EXHIBIT O
# FILED UNDER SEAL

1

1                  UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

3       - - - - - - - - - - - - - - - X

4    APPLE INC., a California            :

5    Corporation,                        :

6                  Plaintiff,            :

7    v.                                   :

8    SAMSUNG ELECTRONICS CO., LTD., a :

9    Korean corporation; SAMSUNG        : Civil Action No.

10   ELECTRONICS AMERICA, INC., a New : 11-cv-01846-LHK

11   York corporation; and SAMSUNG      :

12   TELECOMMUNICATIONS AMERICA, LLC, :

13   a Delaware limited liability       :

14   Company,                            :

15          Defendants.                  :

16   - - - - - - - - - - - - - - - X

17   (Caption continued on next page)

18      HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

19                  SUBJECT TO PROTECTIVE ORDER

20           VIDEOTAPED DEPOSITION OF DANIEL SHIM

21                  Los Angeles, California

22           Tuesday, October 15, 2013, 9:10 a.m.

23   Job No.: 46316

24   Pages: 1 – 266

25   Reported by: Kristi Johnson, SCR

HIGHLY CONFIDENTIAL DEPOSITION OF DANIEL SHIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

102

| | | |
|---|---|---|
| 1 | Samsung negotiators before they met with Nokia? | 12:01:24 |
| 2 | MR. GORDON:  Vague and ambiguous. | 12:01:31 |
| 3 | THE WITNESS:  No. | 12:01:35 |
| 4 | BY MR. MUELLER: | 12:01:36 |
| 5 | Q.    Have you had any communications at all with | 12:01:36 |
| 6 | anyone at Samsung relating to the Samsung, Nokia | 12:01:38 |
| 7 | discussions? | 12:01:42 |
| 8 | MR. GORDON:  Objection.  Hold on.  You're | 12:01:46 |
| 9 | talking about the most -- you're talking about these | 12:01:46 |
| 10 | most recent ones, I assume? | 12:01:48 |
| 11 | MR. MUELLER:  Yes. | 12:01:50 |
| 12 | THE WITNESS:  You mean just generically, any -- | 12:01:52 |
| 13 | any sort of discussion relating to the Nokia -- | 12:01:55 |
| 14 | BY MR. MUELLER: | 12:01:59 |
| 15 | Q.    Right. | 12:01:59 |
| 16 | A.    Even -- | 12:01:59 |
| 17 | Q.    I want to know if you've had any discussions | 12:02:00 |
| 18 | with anyone at Samsung about the recent Samsung, Nokia | 12:02:02 |
| 19 | discussions? | 12:02:05 |
| 20 | A.    The fact that we talk -- yes. | 12:02:06 |
| 21 | Q.    Who have you spoken to? | 12:02:13 |
| 22 | A.    VP Brian Kim, my supervisor. | 12:02:16 |
| 23 | Q.    Who else? | 12:02:21 |
| 24 | A.    I can't recall, off the top of my head, sitting | 12:02:29 |
| 25 | here right now. | 12:02:33 |

HIGHLY CONFIDENTIAL DEPOSITION OF DANIEL SHIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

103

| | | |
|---|---|---|
| 1 | Q.     And can you identify for me the general subject | 12:02:34 |
| 2 | matter of those discussions?  I'm not asking for the | 12:02:37 |
| 3 | particulars but the general subject matter. | 12:02:39 |
| 4 | A.     I'd be happy to.  We talked about the fact that | 12:02:41 |
| 5 | there is a negotiation taking place between Samsung and | 12:02:44 |
| 6 | Nokia. | 12:02:48 |
| 7 | Q.     That's it? | 12:02:49 |
| 8 | A.     That's it. | 12:02:52 |
| 9 | Q.     Did you provide any information that could be | 12:02:57 |
| 10 | used to help develop Samsung's positions in that | 12:02:59 |
| 11 | negotiation? | 12:03:04 |
| 12 | MR. GORDON:  Objection.  Lack of foundation. | 12:03:05 |
| 13 | Calls for speculation. | 12:03:06 |
| 14 | THE WITNESS:  No. | 12:03:11 |
| 15 | BY MR. MUELLER: | 12:03:11 |
| 16 | Q.     Did you offer any thoughts as to the position | 12:03:12 |
| 17 | Samsung might take in those negotiations? | 12:03:17 |
| 18 | A.     Again, that's a very broadly worded question. | 12:03:19 |
| 19 | Offering any thought, that could be anything.  Yes, I | 12:03:30 |
| 20 | have. | 12:03:39 |
| 21 | Q.     And did you offer thoughts on royalty rates, | 12:03:39 |
| 22 | for example? | 12:03:50 |
| 23 | A.     No. | 12:03:52 |
| 24 | Q.     Did you offer your thoughts on any other terms | 12:03:53 |
| 25 | in a potential agreement between Samsung and Nokia? | 12:04:00 |

HIGHLY CONFIDENTIAL DEPOSITION OF DANIEL SHIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

104

| | | |
|---|---|---|
| 1 | A.    No. | 12:04:03 |
| 2 | Q.    So what thoughts did you offer? | 12:04:06 |
| 3 | MR. GORDON:  Objection.  Attorney/client | 12:04:10 |
| 4 | privilege.  Work product. | 12:04:11 |
| 5 | Instruct you not to answer unless there was a | 12:04:12 |
| 6 | third party present and it was otherwise unprivileged. | 12:04:22 |
| 7 | THE WITNESS:  I will follow my counsel's | 12:04:27 |
| 8 | instruction and decline to answer on privilege grounds. | 12:04:29 |
| 9 | BY MR. MUELLER: | 12:04:33 |
| 10 | Q.    Have you reviewed any draft presentations | 12:04:34 |
| 11 | before such presentations were made by Samsung to Nokia? | 12:04:38 |
| 12 | A.    For purposes of use in the negotiation -- | 12:04:42 |
| 13 | current negotiations between Samsung and Nokia? | 12:04:48 |
| 14 | Q.    Yes. | 12:04:51 |
| 15 | A.    No. | 12:04:52 |
| 16 | Q.    Have you ever reviewed any draft presentations | 12:04:53 |
| 17 | for use by Samsung with Nokia? | 12:04:58 |
| 18 | A.    No. | 12:05:00 |
| 19 | Q.    Have you ever reviewed any draft correspondence | 12:05:06 |
| 20 | that was later sent from Samsung to Nokia? | 12:05:11 |
| 21 | MR. GORDON:  Objection.  Lack of foundation. | 12:05:14 |
| 22 | Calls for speculation. | 12:05:15 |
| 23 | THE WITNESS:  No. | 12:05:18 |
| 24 | BY MR. MUELLER: | 12:05:20 |
| 25 | Q.    Are you familiar with the details of the | 12:05:37 |

HIGHLY CONFIDENTIAL DEPOSITION OF DANIEL SHIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

105

| | | |
|---|---|---|
| 1 | Samsung, Nokia negotiations, the recent negotiations? | 12:05:41 |
| 2 | MR. GORDON:  Objection.  Vague and ambiguous. | 12:05:46 |
| 3 | THE WITNESS:  Again, Counsel, I'm not trying to | 12:05:48 |
| 4 | be difficult, but that's a very broadly worded question. | 12:05:51 |
| 5 | BY MR. MUELLER: | 12:05:55 |
| 6 | Q.    I'm just trying to get a sense of how closely | 12:05:55 |
| 7 | you're following them. | 12:05:59 |
| 8 | A.    I think I have answered.  I don't know the | 12:06:01 |
| 9 | terms, the royalty rates as such.  I know that we are in | 12:06:04 |
| 10 | negotiation in good faith with Nokia to discuss a | 12:06:13 |
| 11 | license. | 12:06:18 |
| 12 | Q.    Why do you say "good faith"? | 12:06:18 |
| 13 | MR. GORDON:  Objection.  Attorney/client | 12:06:24 |
| 14 | privilege.  Work product. | 12:06:25 |
| 15 | THE WITNESS:  It's -- to elaborate, I think | 12:06:27 |
| 16 | that would implicate the work product doctrine and | 12:06:33 |
| 17 | attorney/client privilege. | 12:06:37 |
| 18 | BY MR. MUELLER: | 12:06:38 |
| 19 | Q.    Could you turn back to Judge Grewal's order, | 12:06:38 |
| 20 | which I believe is Exhibit 2. | 12:06:42 |
| 21 | A.    Sure.  I'm there. | 12:06:48 |
| 22 | Q.    And do you see on page 3, the judge offers an | 12:06:50 |
| 23 | account of what a Nokia licensing executive -- his name | 12:06:57 |
| 24 | is Paul Melin -- said in a declaration to the Court? | 12:07:01 |
| 25 | I'm referring in particular to the section that begins, | 12:07:17 |

# EXHIBIT P
# FILED UNDER SEAL

1

```
 1              UNITED STATES DISTRICT COURT

 2       NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

 3     - - - - - - - - - - - - - - - - X

 4    APPLE INC., a California              :

 5    Corporation,                         :

 6                  Plaintiff,             :

 7    v.                                    :

 8    SAMSUNG ELECTRONICS CO., LTD., a :

 9    Korean corporation; SAMSUNG       : Civil Action No.

10    ELECTRONICS AMERICA, INC., a New : 11-cv-01846-LHK

11    York corporation; and SAMSUNG     :

12    TELECOMMUNICATIONS AMERICA, LLC, :

13    a Delaware limited liability      :

14    Company,                           :

15            Defendants.                :

16    - - - - - - - - - - - - - - - - X

17    (Caption continued on next page)

18      HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

19               SUBJECT TO PROTECTIVE ORDER

20      Videotaped Deposition of SEONGWOO (CLAYTON) KIM

21                  Los Angeles, CA

22           Tuesday, October 15, 2013, 9:01 a.m.

23    Job No.:  46314

24    Pages 1 - 201

25    Reported by:  Lisa Michaels
```

HIGHLY CONFIDENTIAL DEPOSITION OF SEONGWOO (CLAYTON) KIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

55

| | | |
|---|---|---|
| 1 | Q.  Just to make sure I understand that answer, | 11:10:01 |
| 2 | you received an e-mail from Mr. Shim, and you were one | 11:10:05 |
| 3 | of many recipients; is that right? | 11:10:09 |
| 4 | A.  No. | 11:10:26 |
| 5 | Q.  At the end of last year or the beginning of | 11:10:37 |
| 6 | this year, Mr. Shim sent you an e-mail regarding | 11:10:39 |
| 7 | Apple's license with Ericsson; correct? | 11:10:44 |
| 8 | A.  I received it from a person -- from a group of | 11:11:07 |
| 9 | people that include Mr. Shim. | 11:11:10 |
| 10 | Q.  So Mr. Shim was one of several senders of the | 11:11:22 |
| 11 | e-mail? | 11:11:27 |
| 12 | A.  What I mean is that Mr. Shim is the most | 11:11:45 |
| 13 | likely person who sent that e-mail to me. | 11:11:47 |
| 14 | Q.  Why do you say "most likely"? | 11:11:51 |
| 15 | A.  Because my recollection is that it's a group | 11:12:08 |
| 16 | of people that worked on that matter, matters that are | 11:12:10 |
| 17 | relating to that, that's why. | 11:12:15 |
| 18 | Q.  Did Mr. Shim send you the e-mail or not? | 11:12:24 |
| 19 | A.  I recall that he sent it to me, but I'm not | 11:12:38 |
| 20 | certain.  That's why I say that. | 11:12:41 |
| 21 | Q.  Do you recall if anyone else was listed as a | 11:12:44 |
| 22 | recipient on the e-mail? | 11:12:47 |
| 23 | A.  No. | 11:12:55 |
| 24 | Q.  Did you review the e-mail to prepare for your | 11:12:55 |
| 25 | deposition today? | 11:12:57 |

HIGHLY CONFIDENTIAL DEPOSITION OF SEONGWOO (CLAYTON) KIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

56

| | | |
|---|---|---|
| 1 | A.  No. | 11:13:04 |
| 2 | Q.  Did you respond to Mr. Shim? | 11:13:05 |
| 3 | A.  I don't think I did that. | 11:13:17 |
| 4 | Q.  You didn't respond orally or in writing to Mr. | 11:13:18 |
| 5 | Shim? | 11:13:21 |
| 6 | A.  Right.  I don't think I replied. | 11:13:35 |
| 7 | Q.  What did Mr. Shim say in his e-mail about the | 11:13:37 |
| 8 | Apple-Ericsson license? | 11:13:40 |
| 9 | MR. STONE:  I'm going to instruct the witness | 11:13:48 |
| 10 | not to answer on the grounds that it seeks to invade | 11:13:51 |
| 11 | the attorney-client communications and attorney work | 11:13:52 |
| 12 | product. | 11:13:55 |
| 13 | THE WITNESS:  I will not answer that question | 11:14:06 |
| 14 | because it might divulge conversation with counsel. | 11:14:07 |
| 15 | MR. O'NEILL:  Obviously, that's another | 11:14:16 |
| 16 | instruction we disagree with. | 11:14:17 |
| 17 | BY MR. O'NEILL: | 11:14:17 |
| 18 | Q.  You mentioned that you received the e-mail | 11:14:27 |
| 19 | from a person -- of a group of people that include Mr. | 11:14:42 |
| 20 | Shim; correct? | 11:14:45 |
| 21 | A.  Yes, that's correct. | 11:14:58 |
| 22 | Q.  Which group was that? | 11:14:58 |
| 23 | A.  That group doesn't have a name associated with | 11:15:07 |
| 24 | that group.  It's a group of people that work on a | 11:15:10 |
| 25 | certain topic. | 11:15:18 |

HIGHLY CONFIDENTIAL DEPOSITION OF SEONGWOO (CLAYTON) KIM
CONDUCTED ON TUESDAY, OCTOBER 15, 2013

57

| | | |
|---|---|---|
| 1 | Q.  What topic? | 11:15:19 |
| 2 | MR. STONE:  You can answer that question if it | 11:15:22 |
| 3 | doesn't divulge the contents of any attorney-client | 11:15:24 |
| 4 | communications or work product. | 11:15:27 |
| 5 | MR. O'NEILL:  I don't think that's proper. | 11:15:29 |
| 6 | THE WITNESS:  With respect to Ericsson. | 11:15:40 |
| 7 | BY MR. O'NEILL: | 11:15:44 |
| 8 | Q.  And what does that group work on with respect | 11:15:44 |
| 9 | to Ericsson? | 11:15:46 |
| 10 | A.  They work on the litigation between Ericsson | 11:16:00 |
| 11 | and my company.  They work on the dispute between | 11:16:03 |
| 12 | Ericsson and my company. | 11:16:12 |
| 13 | Q.  That's the licensing dispute between Samsung | 11:16:17 |
| 14 | and Ericsson that you're referring to; correct? | 11:16:20 |
| 15 | MR. STONE:  Objection.  Vague and ambiguous. | 11:16:27 |
| 16 | THE WITNESS:  It's with respect to the patent | 11:16:36 |
| 17 | disputes between Samsung and Ericsson. | 11:16:38 |
| 18 | BY MR. O'NEILL: | 11:16:46 |
| 19 | Q.  Do you know any of the terms of the | 11:16:46 |
| 20 | Apple-Ericsson license? | 11:16:48 |
| 21 | MR. STONE:  In answering this question, I | 11:17:07 |
| 22 | caution the witness, you can answer it if in doing so | 11:17:08 |
| 23 | you wouldn't divulge the contents of any | 11:17:12 |
| 24 | attorney-client communications or attorney work | 11:17:14 |
| 25 | product. | 11:17:16 |

# EXHIBIT Q
# FILED UNDER SEAL

1

1        UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

3     - - - - - - - - - - - - - - - - X

4     APPLE INC., a California            :

5     Corporation,                        :

6                 Plaintiff,              :

7     v.                                  :

8     SAMSUNG ELECTRONICS CO., LTD., a :

9     Korean corporation; SAMSUNG       :Civil Action No.

10    ELECTRONICS AMERICA, INC., a New :11-cv-01846-LHK

11    York corporation; and SAMSUNG      :

12    TELECOMMUNICATIONS AMERICA, LLC, :

13    a Delaware limited liability       :

14    Company,                            :

15        Defendants.                    :

16    - - - - - - - - - - - - - - - - X

17    (Caption continued on next page)

18        HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

19            SUBJECT TO PROTECTIVE ORDER

20        Videotaped Deposition of SEUNGHO AHN

21            Los Angeles, California

22        Thursday, October 17, 2013, 9:29 a.m.

23    Job No.: 46380

24    Pages 1 – 183

25    Reported by:  Candice Andino

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

120

| | | |
|---|---|---|
| 1 | BY MR. FLINN: | 03:24:16 |
| 2 | Q    Am I correct that before that June meeting you | 03:24:17 |
| 3 | personally had not been directly involved in face-to-face | 03:24:19 |
| 4 | negotiations with Samsung -- with Nokia? | 03:24:22 |
| 5 | A    That also is my recollection. | 03:24:40 |
| 6 | Q    Were you made aware of the progress of the | 03:24:43 |
| 7 | negotiations prior to your personal involvement? | 03:24:49 |
| 8 | A    Yes. | 03:25:08 |
| 9 | Q    Who was your source of information about the | 03:25:10 |
| 10 | progress of the negotiations prior to your personal | 03:25:15 |
| 11 | involvement? | 03:25:20 |
| 12 | A    It was vice president, Jin Hwan Kwak. | 03:25:33 |
| 13 | Q    Did Mr. Kwak report to you about the negotiations | 03:25:38 |
| 14 | in any writings? | 03:25:46 |
| 15 | THE REPORTER:  In any what? | 03:25:46 |
| 16 | MR. FLINN:  Writings. | 03:26:03 |
| 17 | THE WITNESS:  Probably, yes. | 03:26:03 |
| 18 | BY MR. FLINN: | 03:26:06 |
| 19 | Q    Did you communicate with Mr. Kwak prior to your | 03:26:06 |
| 20 | personal involvement on the subject of what offer or | 03:26:10 |
| 21 | offers should be made to Nokia? | 03:26:15 |
| 22 | A    Prior to this June meeting in which we were | 03:26:42 |
| 23 | seeking to determine what the amounts shall be, prior to | 03:26:45 |
| 24 | that, I, for the most part, did not involve myself at all. | 03:26:50 |
| 25 | Q    Did you know what offer or offers Mr. Kwak was | 03:26:55 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

121

| | | |
|---|---|---|
| 1 | making prior to your personal involvement? | 03:26:59 |
| 2 | MR. QUINN:  Objection.  Assumes facts not in | 03:27:16 |
| 3 | evidence. | 03:27:19 |
| 4 | THE WITNESS:  If you'll just understand it as | 03:27:25 |
| 5 | being the case that I was just being told about things. | 03:27:28 |
| 6 | THE REPORTER:  About this? | 03:27:28 |
| 7 | THE INTERPRETER:  "About things." | 03:27:37 |
| 8 | BY MR. FLINN: | 03:27:37 |
| 9 | Q    What -- your thought, before your personal | 03:27:38 |
| 10 | involvement -- what, if any, understanding did you have | 03:27:41 |
| 11 | about the state of the negotiations between Samsung and | 03:27:45 |
| 12 | Nokia? | 03:27:47 |
| 13 | MR. QUINN:  And I have an objection that if -- if | 03:28:04 |
| 14 | the question is intended to elicit specific negotiation | 03:28:08 |
| 15 | terms that were passed back and forth it would be | 03:28:12 |
| 16 | inappropriate for that to be disclosed in the presence of | 03:28:17 |
| 17 | Apple. | 03:28:20 |
| 18 | BY MR. FLINN: | 03:28:38 |
| 19 | Q    Please answer my question without disclosing the | 03:28:39 |
| 20 | specifics. | 03:28:42 |
| 21 | MR. QUINN:  Do we have an agreement that if he | 03:28:47 |
| 22 | answers it, it's is not a waiver, with respect to any NDA? | 03:28:49 |
| 23 | Because they're not going to argue that this is a | 03:28:58 |
| 24 | waiver that, "Whoops, he said this."  So just because he's | 03:29:02 |
| 25 | answered your question, that other information is fair | 03:29:05 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

122

| | | |
|---|---|---|
| 1 | game, just because he answered your question. | 03:29:09 |
| 2 | MR. FLINN:  In light of the position, Mr. Quinn, | 03:29:19 |
| 3 | you've already taken, I guess you're going to have to | 03:29:21 |
| 4 | decide what you're going to let your witness do. | 03:29:24 |
| 5 | MR. QUINN:  If both counsel here agree that it's | 03:29:32 |
| 6 | not a violation of the NDA for him to answer the question, | 03:29:37 |
| 7 | then we don't have any problem with it. | 03:29:40 |
| 8 | Frankly, I don't see the relevance of this, and I | 03:29:50 |
| 9 | have a sneaking suspicion the questions are being asked | 03:29:53 |
| 10 | just to draw instructions, and that's been part of the | 03:29:57 |
| 11 | strategy today.  So it's real easy.  The magic words are, | 03:29:59 |
| 12 | you guys, "If he answers this question, we're not going to | 03:30:24 |
| 13 | argue that answering this question is a violation of the | 03:30:27 |
| 14 | NDA." | 03:30:31 |
| 15 | MR. SELWYN:  I'm not sure if you're asking me to | 03:30:40 |
| 16 | agree to something.  Apple's not a party to the NDA.  So I | 03:30:42 |
| 17 | don't know. | 03:30:46 |
| 18 | MR. QUINN:  That part is directed to Nokia. | 03:30:46 |
| 19 | MR. SELWYN:  And to your comment that I was | 03:30:50 |
| 20 | asking -- or questions to elicit instructions, I can | 03:30:51 |
| 21 | assure you that's not correct. | 03:30:55 |
| 22 | MR. QUINN:  Thank you. | 03:30:58 |
| 23 | MR. FLINN:  From this point, all I'm going to do | 03:30:59 |
| 24 | is ask my question, and, Mr. Quinn, you'll have to decide | 03:31:00 |
| 25 | whether you'll let the witness answer it or not.  I'm | 03:31:04 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

123

| | | |
|---|---|---|
| 1 | making no promises or qualifications. | 03:31:07 |
| 2 | MR. ZELLER:  So you're saying you might assert | 03:31:09 |
| 3 | that his answering a question here is a violation of the | 03:31:11 |
| 4 | NDA? | 03:31:15 |
| 5 | MR. FLINN:  I just want to get my questions | 03:31:16 |
| 6 | answered. | 03:31:18 |
| 7 | MR. QUINN:  You're declining to answer the | 03:31:18 |
| 8 | question that Mr. Zeller asked you? | 03:31:20 |
| 9 | MR. FLINN:  There have been a lot of speeches | 03:31:24 |
| 10 | back and forth.  I don't want to make any more.  Do what | 03:31:26 |
| 11 | you have to do, Mr. Quinn.  I'm going to ask the reporter | 03:31:28 |
| 12 | one more time to read the pending question, and do what | 03:31:30 |
| 13 | you need to do. | 03:31:33 |
| 14 | And I qualify that if you can find that as well, | 03:31:33 |
| 15 | I'd ask him not to give specifics. | 03:32:09 |
| 16 | (The record was read as follows: | 03:32:09 |
| 17 | "Q   What, if any, personal | 03:32:09 |
| 18 | understanding did you have about the | 03:32:09 |
| 19 | state of the negotiations between | 03:32:09 |
| 20 | Samsung and Nokia?") | 03:32:09 |
| 21 | (A discussion was held off the record.) | 03:32:10 |
| 22 | BY MR. FLINN: | 03:32:10 |
| 23 | Q   I'll re-ask the same question in substance. | 03:32:12 |
| 24 | Dr. Ahn, I'm trying to understand what you knew | 03:32:15 |
| 25 | about the state of negotiations prior to your personal | 03:32:17 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

124

| | | |
|---|---|---|
| 1 | involvement.  I'm not interested in hearing from you the | 03:32:20 |
| 2 | specific financial terms that were offered or rejected | 03:32:23 |
| 3 | back and forth, but I'm trying to understand the level of | 03:32:26 |
| 4 | your knowledge. | 03:32:30 |
| 5 | So can you tell me the level of your knowledge, | 03:32:30 |
| 6 | but without disclosing the specific terms.  And wait for | 03:32:32 |
| 7 | your counsel to decide and make whatever objections or | 03:32:35 |
| 8 | instructions he wants to. | 03:32:39 |
| 9 | MR. QUINN:  Well, you know, the NDA is not | 03:33:22 |
| 10 | limited to specific financial terms, but, Dr. Ahn, if you | 03:33:24 |
| 11 | can describe in general terms what you knew about the | 03:33:28 |
| 12 | status of negotiations, go ahead and do that. | 03:33:31 |
| 13 | THE WITNESS:  To put it quite simply, in spite of | 03:34:11 |
| 14 | the protracted negotiations, my recollection is that the | 03:34:15 |
| 15 | gap between the parties in terms of what they were | 03:34:19 |
| 16 | respectively offering was rather huge. | 03:34:24 |
| 17 | BY MR. FLINN: | 03:34:29 |
| 18 | Q    At the time you became personally involved with | 03:34:30 |
| 19 | negotiations, had you had any discussions with anyone at | 03:34:32 |
| 20 | Samsung on what Samsung's bottom line was? | 03:34:36 |
| 21 | A    I don't know that there was any discussion as to | 03:35:12 |
| 22 | what the bottom line was. | 03:35:15 |
| 23 | Q    Are there in existence any written communications | 03:35:21 |
| 24 | discussing specific financial terms of a Samsung-Nokia | 03:35:25 |
| 25 | license prior to March of 2013? | 03:35:44 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

136

| | | |
|---|---|---|
| 1 | Samsung is paying that much money, and upon that, I said, | 04:08:16 |
| 2 | "Might that possibly be Apple." | 04:08:20 |
| 3 | CHECK INTERPRETER:  "Or isn't that Apple." | 04:08:25 |
| 4 | THE INTERPRETER:  Let me just put it this way. | 04:08:30 |
| 5 | "Might that not be possibly Apple." | 04:08:32 |
| 6 | That's what I think I said. | 04:08:35 |
| 7 | CHECK INTERPRETER:  I think the way I heard it | 04:08:36 |
| 8 | is:  "Isn't that Apple." | 04:08:38 |
| 9 | BY MR. FLINN: | 04:08:45 |
| 10 | Q    Is it your recollection, then, that you | 04:08:46 |
| 11 | brought -- you mentioned what you believed to be the | 04:08:51 |
| 12 | financial terms of the Apple-Nokia license only after | 04:08:56 |
| 13 | Mr. Melin made a specific financial proposal to you? | 04:09:01 |
| 14 | MR. QUINN:  Objection.  Mischaracterizes the | 04:09:26 |
| 15 | witness's testimony.  He's testified several times. | 04:09:29 |
| 16 | THE WITNESS:  What I've already related to you, | 04:09:47 |
| 17 | that is what I presently recall. | 04:09:50 |
| 18 | BY MR. FLINN: | 04:09:56 |
| 19 | Q    I want to make sure I understand the sequence of | 04:09:57 |
| 20 | events.  Is it your testimony that you brought up your | 04:09:59 |
| 21 | knowledge or belief as to the financial terms of the | 04:10:06 |
| 22 | Apple-Nokia license agreement only after Nokia made its | 04:10:11 |
| 23 | financial proposal to you? | 04:10:15 |
| 24 | MR. QUINN:  It's the exact same question, I | 04:10:50 |
| 25 | believe.  Mischaracterizes the witness's testimony.  It's | 04:10:53 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

137

| | | |
|---|---|---|
| 1 | also vague. | 04:11:04 |
| 2 | THE WITNESS:  That is the way I recall things. | 04:11:10 |
| 3 | BY MR. FLINN: | 04:11:17 |
| 4 | Q    Do you recall the PowerPoint that Mr. Melin | 04:11:18 |
| 5 | presented at the meeting? | 04:11:22 |
| 6 | A    No, not exactly.  Not exactly in terms of the | 04:11:37 |
| 7 | contents.  I remember him putting on some PowerPoint, and | 04:11:40 |
| 8 | that it involved large amounts. | 04:11:46 |
| 9 | Q    Do you recall whether the PowerPoint made any | 04:11:49 |
| 10 | reference to any other licenses that Nokia had? | 04:11:53 |
| 11 | MR. QUINN:  For clarification, by name? | 04:12:14 |
| 12 | MR. FLINN:  No, not necessarily by name. | 04:12:20 |
| 13 | MR. QUINN:  Vague and ambiguous. | 04:12:26 |
| 14 | Go ahead and answer. | 04:12:28 |
| 15 | THE WITNESS:  Nokia did not name any company | 04:12:36 |
| 16 | expressly -- explicitly, rather.  It was just something to | 04:12:54 |
| 17 | the effect that some company was, indeed, paying such an | 04:12:59 |
| 18 | amount.  And I don't even know if that was actually stated | 04:13:02 |
| 19 | orally or whether I gathered as much from the PowerPoint. | 04:13:05 |
| 20 | Nonetheless, they did manage to convey that message to me. | 04:13:10 |
| 21 | BY MR. FLINN: | 04:13:15 |
| 22 | Q    Please answer this "yes" or "no."  And I'll agree | 04:13:17 |
| 23 | that a "yes" or "no" answer doesn't waive -- doesn't | 04:13:20 |
| 24 | breach the NDA. | 04:13:23 |
| 25 | Do you remember the specific financial proposal | 04:13:25 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

138

| | | |
|---|---|---|
| 1 | that you made at the meeting? | 04:13:29 |
| 2 | MR. QUINN: I mean, I have been operating under | 04:13:53 |
| 3 | the assumption that any of this testimony about this | 04:13:56 |
| 4 | meeting was not going to be the subject of a claim that | 04:13:58 |
| 5 | was a breach of the NDA. | 04:14:02 |
| 6 | MR. FLINN: I think we've debated that issue too | 04:14:20 |
| 7 | much. I'd like an answer to my question. | 04:14:22 |
| 8 | MR. QUINN: Well, no. Wait a second. At the top | 04:14:26 |
| 9 | of this discussion about this meeting, I asked you, when | 04:14:29 |
| 10 | answering questions about what was said in this meeting | 04:14:35 |
| 11 | that -- you know, elicited by you as Nokia's counsel, | 04:14:37 |
| 12 | whether Nokia would claim answering your questions would | 04:14:40 |
| 13 | be a breach of the NDA. And you said you would not make | 04:14:44 |
| 14 | that claim. Now, you know, you qualified only one | 04:14:46 |
| 15 | question, saying you can answer this one "yes" or "no," | 04:14:51 |
| 16 | and I won't claim a breach. So I'm wondering where I am | 04:14:54 |
| 17 | now. | 04:14:57 |
| 18 | MR. FLINN: All I know is I'm in a deposition. | 04:15:03 |
| 19 | I'm trying to get some answers to my questions. | 04:15:05 |
| 20 | MR. QUINN: All right. You are not going to | 04:15:06 |
| 21 | get -- I instruct him not to answer unless you tell us | 04:15:06 |
| 22 | that -- you confirm to us that Nokia's counsel eliciting | 04:15:08 |
| 23 | answers from this witness about what was said in a meeting | 04:15:16 |
| 24 | with your client -- that Nokia is not going to later claim | 04:15:19 |
| 25 | that's a breach of the NDA. | 04:15:23 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

139

| | | |
|---|---|---|
| 1 | It's real simple.  Just tell us that.  I'll let | 04:15:26 |
| 2 | him answer.  Otherwise, I think you've given conflicting | 04:15:27 |
| 3 | advice here today, and I'm feeling kind of insecure. | 04:15:30 |
| 4 | I will instruct him not to answer.  So it's up to | 04:15:35 |
| 5 | you. | 04:15:39 |
| 6 | MR. FLINN:  Well, since I've specifically said | 04:15:39 |
| 7 | that question -- answering that question "yes" or "no" | 04:15:43 |
| 8 | would not constitute a breach -- | 04:15:45 |
| 9 | MR. QUINN:  We're not going to do it that way. | 04:15:48 |
| 10 | How are we supposed to guess where we are?  I mean, | 04:15:52 |
| 11 | sometimes you qualify the question by saying, "I won't | 04:15:55 |
| 12 | claim in answering this one's a breach."  Other times you | 04:15:57 |
| 13 | don't say that.  I don't know whether you're reserving the | 04:16:00 |
| 14 | right to claim that's a breach.  It's nonsense. | 04:16:03 |
| 15 | So you need to be real clear now or I'm not | 04:16:06 |
| 16 | letting him answer any more questions from you on this | 04:16:09 |
| 17 | subject.  It's up to you.  I can point in the record how, | 04:16:10 |
| 18 | you know, you've kind of waffled on this now.  We need | 04:16:17 |
| 19 | some real clear agreement on the record. | 04:16:21 |
| 20 | MR. FLINN:  My concern is that Samsung, as | 04:16:35 |
| 21 | represented by you, has not taken consistent positions | 04:16:46 |
| 22 | regarding the NDA.  I do not want to find myself, as I was | 04:16:50 |
| 23 | earlier today, accused of being -- accomplished full | 04:16:54 |
| 24 | breach and at the same time being forced to discharge your | 04:16:58 |
| 25 | client from similar behavior.  Please don't interrupt me. | 04:17:03 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

140

| | | |
|---|---|---|
| 1 | MR. ZELLER:  Our position is on -- | 04:17:03 |
| 2 | MR. FLINN:  Please don't interrupt me. | 04:17:12 |
| 3 | MR. QUINN:  Just let him say what he wants to | 04:17:12 |
| 4 | say. | 04:17:16 |
| 5 | MR. FLINN:  Could you read back what I started to | 04:17:16 |
| 6 | say. | 04:17:20 |
| 7 | (The record was read as follows: | |
| 8 | "Q   My concern is that Samsung, as | |
| 9 | represented by you, has not taken | |
| 10 | consistent positions regarding the NDA. | |
| 11 | I do not want to find myself, as I was | |
| 12 | earlier today, accused of...breach...") | 04:17:45 |
| 13 | MR. FLINN:  Accused of being an accomplice to | 04:17:45 |
| 14 | some breach while at the same time having to discharge | 04:17:48 |
| 15 | Samsung from such accusations when it has been ordered to | 04:17:54 |
| 16 | appear to answer the questions I'm trying to get asked. | 04:18:08 |
| 17 | I, personally, don't believe that if | 04:18:19 |
| 18 | Mr. -- Dr. Ahn answers these questions in this deposition | 04:18:27 |
| 19 | with Mr. Selwyn that there is any more of a breach than | 04:18:31 |
| 20 | there was when Mr. Koppelman was in the room and the | 04:18:35 |
| 21 | Samsung witness was answering questions about the | 04:18:40 |
| 22 | Apple-Samsung licensing because of the Court order, but | 04:18:44 |
| 23 | what I do want is some reciprocity that you have not | 04:18:56 |
| 24 | afforded me. | 04:19:01 |
| 25 | So you've got a decision now, Mr. Quinn, I guess, | 04:19:02 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

141

| | | |
|---|---|---|
| 1 | which is to disobey Judge Grewal's order because I have | 04:19:10 |
| 2 | more questions about what happened at that witness -- at | 04:19:16 |
| 3 | that meeting and terminate this deposition, or you can | 04:19:19 |
| 4 | accept what I've just said and we can proceed. | 04:19:33 |
| 5 | But if you continue to take the position that | 04:19:39 |
| 6 | Nokia did something wrong by having Mr. Koppelman in the | 04:19:43 |
| 7 | room in depositions the judge ordered and yet insist that | 04:19:47 |
| 8 | I exonerate your client from similar accusations, then we | 04:19:52 |
| 9 | do have a problem, and you have to explain to Judge Grewal | 04:19:56 |
| 10 | why we're back up there. | 04:20:00 |
| 11 | MR. QUINN:  I've made my decision, and my | 04:20:02 |
| 12 | decision is, unless you commit unqualifiedly that his | 04:20:06 |
| 13 | answering questions about this June meeting will not be | 04:20:10 |
| 14 | asserted by Nokia to be a breach of the NDA, he's not | 04:20:15 |
| 15 | answering any more questions.  So you can either make that | 04:20:18 |
| 16 | agreement right now or you can move to another subject. | 04:20:21 |
| 17 | MR. ZELLER:  If I can also just add that there is | 04:20:26 |
| 18 | no inconsistency in our position.  One needs to look at | 04:20:29 |
| 19 | two items.  One is, is who is the owner of the | 04:20:32 |
| 20 | information, and second who is eliciting the information. | 04:20:35 |
| 21 | What occurred previously is that Apple gave a | 04:20:40 |
| 22 | copy of a letter that was subject to an NDA between | 04:20:43 |
| 23 | Samsung and Apple and gave it to Nokia without Samsung's | 04:20:47 |
| 24 | permission.  That -- and included Samsung's confidential | 04:20:52 |
| 25 | terms that were being offered in it.  That was the breach. | 04:20:56 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

142

| | | |
|---|---|---|
| 1 | There was no resemblance to what's going on here. | 04:21:02 |
| 2 | MR. QUINN:  So what would you like to do?  Would | 04:21:05 |
| 3 | you like to agree that you have to withdraw what you said | 04:21:06 |
| 4 | and agree you won't maintain it's a breach, or do you want | 04:21:10 |
| 5 | to move on to another subject?  It's up to you, sir. | 04:21:13 |
| 6 | MR. FLINN:  What I'm going to do is I'm going to | 04:21:16 |
| 7 | ask questions.  And, Mr. Quinn, you will have to decide | 04:21:18 |
| 8 | what you want to do.  What I'm going to do now is ask the | 04:21:27 |
| 9 | reporter to mark as -- | 04:21:32 |
| 10 | MR. ZELLER:  Apple's attorney can also leave. | 04:21:34 |
| 11 | That's the other option.  If you want to do that, Apple's | 04:21:36 |
| 12 | attorney can leave. | 04:21:40 |
| 13 | We're certainly not going to agree that a prior | 04:21:40 |
| 14 | breach between -- by Apple of an NDA under those | 04:21:44 |
| 15 | circumstances somehow be barring the way under these | 04:21:49 |
| 16 | conditions.  It makes no sense. | 04:21:52 |
| 17 | MR. SELWYN:  I decline to leave.  And in | 04:21:55 |
| 18 | addition, there has been no -- nothing that Apple did in | 04:21:59 |
| 19 | the prior deposition that you reference was inappropriate. | 04:22:03 |
| 20 | MR. ZELLER:  We'll see. | 04:22:08 |
| 21 | MR. QUINN:  If I were you, I'd rather get the | 04:22:18 |
| 22 | testimony, just lawyer to lawyer.  Especially since on the | 04:22:20 |
| 23 | record you said a couple of different things today.  You | 04:22:24 |
| 24 | look a little tricky. | 04:22:26 |
| 25 | MR. FLINN:  I'll assume you weren't trying to | 04:22:33 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

143

| | | |
|---|---|---|
| 1 | insult me. | 04:22:36 |
| 2 | MR. QUINN:  I'm just telling you what... | 04:22:37 |
| 3 | MR. FLINN:  What I'm going to do to make maximum | 04:22:40 |
| 4 | use of this witness's valuable time, I'm going to turn to | 04:22:43 |
| 5 | subjects for now that I believe are not controversial.  I | 04:22:49 |
| 6 | expect I'll return to that, and we will -- unfortunately, | 04:22:53 |
| 7 | what seems to be going on with our government this day -- | 04:22:57 |
| 8 | have to confront the issue in a little bit, but for now, | 04:23:01 |
| 9 | let me change the subject. | 04:23:02 |
| 10 | BY MR. FLINN: | 04:23:02 |
| 11 | Q    Dr. Ahn, I just want to know a little bit more | 04:23:05 |
| 12 | about you as a person, if I can.  You testified in answer | 04:23:07 |
| 13 | to Mr. Selwyn's questions about when you started at | 04:23:11 |
| 14 | Samsung and what you did after you were at Samsung.  I'm | 04:23:14 |
| 15 | going to ask you about the time before. | 04:23:21 |
| 16 | First, can you describe for us your formal | 04:23:48 |
| 17 | education from a university and any graduate degrees you | 04:23:54 |
| 18 | have. | 04:23:58 |
| 19 | A    I obtained my bachelor's degree in Korea, came | 04:23:58 |
| 20 | over to the U.S., obtained my master's and doctorate. | 04:24:23 |
| 21 | Q    From what university did you obtain your | 04:24:29 |
| 22 | bachelor's degree? | 04:24:31 |
| 23 | A    I received it from Seoul National University in | 04:24:35 |
| 24 | Korea. | 04:24:40 |
| 25 | Q    And what was the subject matter of your degree? | 04:24:41 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER
PLANET DEPOS - ASIA   888.433.3767 | WWW.PLANETDEPOS.COM/ASIA

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

144

| | | |
|---|---|---|
| 1 | A    Actually, I'm sorry.  I did both my | 04:24:45 |
| 2 | undergraduate, as well as master's degree, both in Korea. | 04:24:50 |
| 3 | I'm suffering from jet lag.  So... | 04:24:54 |
| 4 | Q    I understand. | 04:24:56 |
| 5 | Can you tell us the subject matter of your | 04:24:58 |
| 6 | master's and bachelor's degrees. | 04:25:01 |
| 7 | A    I obtained my bachelor's degree in polymer | 04:25:16 |
| 8 | engineering, and in certain circles they also refer to it | 04:25:20 |
| 9 | as being textile engineering.  But anyhow.  And my | 04:25:23 |
| 10 | master's degree was in metallurgical engineering. | 04:25:27 |
| 11 | Q    And what institution did you attend for your | 04:25:32 |
| 12 | doctorate? | 04:25:35 |
| 13 | A    From the University of Illinois, | 04:25:40 |
| 14 | Urbana-Champaign. | 04:25:42 |
| 15 | Q    And what was the subject matter of your doctoral | 04:25:45 |
| 16 | studies? | 04:25:51 |
| 17 | A    That also was in the area of metallurgical | 04:25:56 |
| 18 | engineering, aka, materials engineering. | 04:26:02 |
| 19 | Q    And did you provide a thesis for part of your | 04:26:06 |
| 20 | doctoral studies? | 04:26:12 |
| 21 | A    Yes. | 04:26:16 |
| 22 | Q    Can you tell us the subject matter of your | 04:26:18 |
| 23 | thesis. | 04:26:20 |
| 24 | A    Even that I almost -- I don't recall.  I only | 04:26:31 |
| 25 | recall that I wrote on the subject of corrosion fatigue. | 04:26:37 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

159

| | | |
|---|---|---|
| 1 | You're being mealy-mouthed.  I don't know why you're | 05:11:50 |
| 2 | playing this game. | 05:11:53 |
| 3 | What -- the preface that you made a moment ago, | 05:11:55 |
| 4 | frankly, I find unintelligible, and English is my mother | 05:11:59 |
| 5 | tongue. | 05:12:04 |
| 6 | You know, it's simple to say "yes" or "no."  If | 05:12:05 |
| 7 | you want this testimony, just say, "Nokia will never claim | 05:12:07 |
| 8 | that your answering my questions was a breach of the NDA, | 05:12:11 |
| 9 | and it's fine if Apple's here, and we won't make that | 05:12:14 |
| 10 | contention."  If you can't say yes to that, then he's not | 05:12:19 |
| 11 | going to answer your questions.  Simple as that. | 05:12:22 |
| 12 | MR. FLINN:  Since you claim not to understand my | 05:12:24 |
| 13 | position, I will try to restate it.  Hopefully, you will, | 05:12:27 |
| 14 | in good faith, try to understand it. | 05:12:30 |
| 15 | It is not a breach of the NDA between Nokia and | 05:12:32 |
| 16 | Samsung and it is not a breach of the NDA, in my view, | 05:12:39 |
| 17 | between Apple and Samsung for this witness to answer | 05:12:45 |
| 18 | questions in a deposition compelled by the Court where the | 05:12:49 |
| 19 | participants in the deposition are permitted by that order | 05:12:54 |
| 20 | to be present. | 05:12:57 |
| 21 | I believe that is so clear that you have | 05:13:00 |
| 22 | absolutely no basis for complaining that somehow Nokia's | 05:13:02 |
| 23 | hedging on this issue.  The reason I am not buying into | 05:13:06 |
| 24 | your cross-examination of me is because I believe Samsung | 05:13:10 |
| 25 | is trying to have it both ways, trying to insist on | 05:13:14 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

160

1   protection for its witnesses when it, on the one hand,            05:13:18

2   wants to, but wants to reserve the right to prosecute             05:13:24

3   parties or lawyers for doing what the Court has ordered to        05:13:28

4   be done.                                                          05:13:33

5            I am not going to sit still for that, and I'm not        05:13:35

6   going to buy into it.  So you've got a very difficult             05:13:37

7   decision to make, Mr. Quinn.                                      05:13:41

8            MR. QUINN:  It's not difficult at all.                   05:13:42

9            MR. FLINN:  Let me finish.  Let me finish.               05:13:43

10           MR. QUINN:  It's not difficult at all.                   05:13:50

11           MR. FLINN:  All right.  You have no doubt --             05:13:50

12           THE REPORTER:  I can't take both of you down at          05:13:50

13   the same time.                                                   05:13:50

14           MR. QUINN:  You don't want to say "yes" or "no."         05:13:50

15   You don't want to say "yes" or "no."  It's comical.              05:13:52

16   BY MR. FLINN:                                                    05:13:59

17       Q    Dr. Ahn, in your answer to Mr. Selwyn's                 05:13:59

18   questions, you talked about making an estimate of what you       05:14:05

19   thought were the financial terms of the Apple                    05:14:13

20   license -- Apple-Nokia agreements.                               05:14:19

21           Do you recall that testimony?                            05:14:21

22           MR. QUINN:  Are you referring to an estimate             05:14:41

23   that's -- that's said in the June meeting?  I'm asking for       05:14:43

24   that clarification.                                              05:14:50

25           MR. FLINN:  My question is what it is, and I'd           05:14:59

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

161

1   like an answer.                                              05:15:03

2         MR. QUINN:  My problem is if you're asking him        05:15:05

3   about what he referred to earlier as an estimate that he    05:15:08

4   voiced in the June meeting and you've declined to say that  05:15:11

5   his answering the question will not be deemed a breach of   05:15:17

6   the NDA, if that's what you're referring to, I instruct     05:15:20

7   him not to answer.                                          05:15:23

8         If you're asking him about something else outside     05:15:24

9   that meeting, which you're not reserving the right to       05:15:27

10  accuse him of violating the NDA, then that's something      05:15:31

11  else.  So I'll ask for that clarification.  If you don't    05:15:35

12  want to clarify, I'll instruct him not to answer.           05:15:37

13        MR. FLINN:  I stand on my question.                   05:15:40

14        MR. QUINN:  I stand on my instruction.                05:15:42

15  BY MR. FLINN:                                               05:15:46

16    Q    Prior to the June meeting, did you come up with      05:15:47

17  what you believed to be an estimate of the financial terms  05:15:54

18  of the Apple-Nokia license?                                 05:16:02

19    A    Yes.                                                 05:16:29

20    Q    Do any writings exist that would document your       05:16:29

21  analysis or methodology?                                    05:16:35

22    A    Probably not.                                        05:16:48

23    Q    Can you explain to us today the analysis or          05:16:50

24  methodology that you used to derive that number?            05:16:53

25        MR. QUINN:  Other than what he's already said?        05:17:09

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

162

| | | |
|---|---|---|
| 1 | MR. FLINN:  I stand by my question. | 05:17:14 |
| 2 | MR. QUINN:  The question has been asked and | 05:17:18 |
| 3 | answered.  We're wasting time now. | 05:17:22 |
| 4 | THE WITNESS:  Simply understand it as having been | 05:17:46 |
| 5 | the case that I, based on the many media sources that I | 05:17:51 |
| 6 | read, the many individuals whom I would meet and hear | 05:17:56 |
| 7 | things from -- you know, I basically gathered all that up | 05:18:00 |
| 8 | and came up with my estimation.  It's not like I relied on | 05:18:04 |
| 9 | any particular formula, or what. | 05:18:08 |
| 10 | BY MR. FLINN: | 05:18:16 |
| 11 | Q    Is it fair to say, sir, that, as you sit here | 05:18:21 |
| 12 | today, you can't recall all of the sources of information | 05:18:26 |
| 13 | that you used to derive that number? | 05:18:28 |
| 14 | A    Well, I'm unable to recall things in terms of | 05:18:47 |
| 15 | what it exactly was that I saw exactly where. | 05:18:51 |
| 16 | Q    My question now is directed to your state of mind | 05:18:56 |
| 17 | when you made the decision to tell Nokia what you believed | 05:19:03 |
| 18 | to be the terms of the Apple-Nokia license agreement. | 05:19:09 |
| 19 | Did you intend or desire for Nokia to believe | 05:19:34 |
| 20 | that your information was accurate? | 05:19:42 |
| 21 | A    Sir, I think the way we can look at this is, in | 05:20:21 |
| 22 | view of how Nokia was at least indirectly insinuating that | 05:20:25 |
| 23 | Apple was paying lots and lots of money, I was, basically, | 05:20:31 |
| 24 | saying, on the contrary, that probably is not so.  I | 05:20:35 |
| 25 | was -- I made an effort to push them to make that -- drive | 05:20:42 |

# EXHIBIT R
# FILED UNDER SEAL

1

1              UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

3       - - - - - - - - - - - - - - - - X

4    APPLE INC., a California              :

5    Corporation,                          :

6                    Plaintiff,            :

7    v.                                     :

8    SAMSUNG ELECTRONICS CO., LTD., a :

9    Korean corporation; SAMSUNG       :Civil Action No.

10   ELECTRONICS AMERICA, INC., a New :11-cv-01846-LHK

11   York corporation; and SAMSUNG     :

12   TELECOMMUNICATIONS AMERICA, LLC, :

13   a Delaware limited liability      :

14   Company,                           :

15          Defendants.                  :

16   - - - - - - - - - - - - - - - - X

17   (Caption continued on next page)

18        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

19            SUBJECT TO PROTECTIVE ORDER

20         Videotaped Deposition of SEUNGHO AHN

21             Los Angeles, California

22         Thursday, October 17, 2013, 9:29 a.m.

23   Job No.: 46380

24   Pages 1 - 183

25   Reported by:  Candice Andino

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

101

| | | |
|---|---|---|
| 1 | Sharp or Philips? | 02:37:36 |
| 2 | A    I have not. | 02:37:48 |
| 3 | Q    Have you ever seen any documents describing the | 02:37:49 |
| 4 | terms of Apple's licenses with Sharp or Philips? | 02:37:52 |
| 5 | A    I have no recollection of seeing anything like | 02:38:05 |
| 6 | that. | 02:38:07 |
| 7 | Q    Isn't it true that Samsung views its patent | 02:38:07 |
| 8 | portfolio as comparable to Nokia's patent portfolio? | 02:38:12 |
| 9 | MR. QUINN:  I object in that answering that | 02:38:27 |
| 10 | question would invade this lawyer's mental processes and | 02:38:30 |
| 11 | be work product, one.  Improper opinion and vague and | 02:38:35 |
| 12 | ambiguous. | 02:38:38 |
| 13 | THE WITNESS:  So depending on the occasion, | 02:39:16 |
| 14 | sometimes we insist that it is that and sometimes we | 02:39:18 |
| 15 | insist that it is otherwise.  It all depends on the | 02:39:24 |
| 16 | circumstances. | 02:39:28 |
| 17 | BY MR. SELWYN: | 02:39:28 |
| 18 | Q    Under what circumstances has Samsung viewed its | 02:39:28 |
| 19 | patent portfolio as comparable to Nokia's? | 02:39:31 |
| 20 | MR. QUINN:  I object that this is outside the | 02:39:45 |
| 21 | scope of this proceeding, and it's work product.  I | 02:39:47 |
| 22 | instruct him not to answer. | 02:39:50 |
| 23 | So don't answer. | 02:40:04 |
| 24 | THE WITNESS:  Don't answer -- yeah?  I | 02:40:06 |
| 25 | will -- yes, to his instructions. | 02:40:12 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

102

| | | |
|---|---|---|
| 1 | BY MR. SELWYN: | 02:40:49 |
| 2 | Q    Did Samsung make a license proposal to Apple in | 02:40:49 |
| 3 | March of 2013? | 02:40:54 |
| 4 | A    You see, we have made an offer as to a license | 02:41:18 |
| 5 | vis-à-vis Apple on more than ten occasions as far as I'm | 02:41:23 |
| 6 | concerned.  So I don't know if on that -- during that | 02:41:27 |
| 7 | specific time frame we did or didn't. | 02:41:30 |
| 8 | Q    I'm going to hand you a document that we've | 02:41:33 |
| 9 | marked Ahn Exhibit 9 for identification. | 02:42:27 |
| 10 | (Ahn Exhibit 9 was marked for | 02:42:27 |
| 11 | identification.) | 02:42:32 |
| 12 | MR. QUINN:  So is this something that Nokia | 02:42:32 |
| 13 | should be seeing?  Is there an issue here?  Before you | 02:42:36 |
| 14 | hand it to him -- I don't know what -- | 02:42:39 |
| 15 | MR. SELWYN:  Apple understands the judge's order | 02:42:41 |
| 16 | to require Nokia to have access -- | 02:42:44 |
| 17 | MR. QUINN:  Well, we object to this, and we're | 02:42:46 |
| 18 | not -- we're not going to permit this to go forward with | 02:42:49 |
| 19 | Nokia in the room here.  If you're going to start talking | 02:42:52 |
| 20 | about confidential negotiations between Samsung and Apple, | 02:42:55 |
| 21 | the only way we will agree that that can go forward is if | 02:43:01 |
| 22 | Nokia leaves the room.  I understand your position, but we | 02:43:05 |
| 23 | don't agree, with respect. | 02:43:09 |
| 24 | MR. SELWYN:  I mean, our understanding of the | 02:43:12 |
| 25 | Court's order is that Nokia is entitled to have access. | 02:43:14 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

103

| | | |
|---|---|---|
| 1 | If Nokia wants to voluntarily leave, we obviously have no | 02:43:17 |
| 2 | objection to that. | 02:43:21 |
| 3 | MR. QUINN:  I understand that is your view, and I | 02:43:22 |
| 4 | think you understand our view. | 02:43:24 |
| 5 | MR. SELWYN:  Okay. | 02:43:26 |
| 6 | MR. QUINN:  I will be -- I will regard it as a | 02:43:27 |
| 7 | very serious breach, if you hand that document, this | 02:43:30 |
| 8 | exhibit that is marked for this record and it's made | 02:43:33 |
| 9 | available to Nokia. | 02:43:36 |
| 10 | I mean, I haven't had a chance had to read it | 02:43:42 |
| 11 | yet.  It says at the top, "Samsung Confidential Pursuant | 02:43:43 |
| 12 | to NDA."  I find it pretty ironic that in a proceeding | 02:43:46 |
| 13 | where Apple is -- and Nokia are making an issue about | 02:43:49 |
| 14 | alleged breach of a protective order that you all are so | 02:43:54 |
| 15 | cavalier about Samsung's confidential information in your | 02:43:58 |
| 16 | own agreements about confidentiality, but -- I think I'm | 02:44:04 |
| 17 | clear.  We're not going to permit examination on this | 02:44:07 |
| 18 | subject with Nokia's lawyers in the room. | 02:44:11 |
| 19 | MR. SELWYN:  And that's fine if that's your | 02:44:13 |
| 20 | position.  I would just ask you to make clear that you | 02:44:15 |
| 21 | would instruct the witness not to answer any questions | 02:44:18 |
| 22 | regarding this document, and I'll move on. | 02:44:21 |
| 23 | MR. QUINN:  Well, I have never seen this | 02:44:24 |
| 24 | document.  So -- you start to pass it out, and I saw | 02:44:26 |
| 25 | "Samsung Confidential" at the top. | 02:44:29 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

104

| | | |
|---|---|---|
| 1 | MR. SELWYN:  Take your time.  I'm not rushing | 02:44:31 |
| 2 | you. | 02:44:32 |
| 3 | MR. FLINN:  While Mr. Quinn is looking at that I | 02:44:32 |
| 4 | would appreciate -- | 02:44:35 |
| 5 | MR. QUINN:  I can't read and listen.  Which would | 02:44:35 |
| 6 | you like me to do? | 02:44:37 |
| 7 | MR. FLINN:  Then hold off on your reading for a | 02:44:38 |
| 8 | second. | 02:44:41 |
| 9 | I would like to know whether or not -- and no one | 02:44:41 |
| 10 | in the room knows right now -- I'd like it to be tracked | 02:44:44 |
| 11 | down -- whether or not this document was used in any of | 02:44:46 |
| 12 | the prior depositions that occurred here in the last two | 02:44:49 |
| 13 | days. | 02:44:51 |
| 14 | MR. ZELLER:  We know that there was a breach of | 02:44:53 |
| 15 | the NDA by Apple, participated in by Nokia.  We know that. | 02:44:55 |
| 16 | You were provided with a letter or someone at your firm | 02:44:59 |
| 17 | was provided by at least one of these letters, which we | 02:45:04 |
| 18 | said that was a breach of the NDA. | 02:45:07 |
| 19 | MR. FLINN:  This is the first I'm hearing about | 02:45:09 |
| 20 | it.  What was the letter, and when it was provided? | 02:45:11 |
| 21 | MR. ZELLER:  My recollection is it was the | 02:45:15 |
| 22 | March 22nd, 2013, letter. | 02:45:17 |
| 23 | MR. QUINN:  I've looked at this now, and I really | 02:45:21 |
| 24 | don't want to waste your time, Mr. Selwyn.  Just on the | 02:45:23 |
| 25 | face of it, it seems to have confidential and proposed | 02:45:28 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

105

| | | |
|---|---|---|
| 1 | licensing terms with specific dollar amounts.  We simply | 02:45:31 |
| 2 | cannot permit Nokia's counsel to see this or him to be | 02:45:36 |
| 3 | questioned about that type of thing. | 02:45:38 |
| 4 | I'd hate to give a -- | 02:45:40 |
| 5 | THE REPORTER:  You'd hate to give a what type? | 02:45:40 |
| 6 | MR. QUINN:  I'd hate to give a blanket | 02:45:45 |
| 7 | instruction.  Under no circumstances would we let him | 02:45:45 |
| 8 | answer any question about this.  We really strenuously | 02:45:48 |
| 9 | would object to Nokia's counsel being provided a copy of | 02:45:51 |
| 10 | it. | 02:45:54 |
| 11 | If you want to ask him what kind of paper is this | 02:45:54 |
| 12 | or what's -- or something like that, I'm not going to | 02:45:56 |
| 13 | instruct him, but in terms of the substance of the | 02:46:00 |
| 14 | negotiations that are reflected here, that's regarded as | 02:46:03 |
| 15 | highly confidential and business information to Samsung. | 02:46:05 |
| 16 | MR. SELWYN:  Well, when I got to this position of | 02:46:08 |
| 17 | the deposition yesterday with Mr. Korea, counsel for Nokia | 02:46:10 |
| 18 | did leave the room, and I proceeded to ask the questions | 02:46:12 |
| 19 | of the witness without Nokia present, and that portion of | 02:46:15 |
| 20 | the deposition transcript was separated from the rest of | 02:46:17 |
| 21 | the transcript. | 02:46:21 |
| 22 | MR. ZELLER:  Exactly.  It appeared it was | 02:46:21 |
| 23 | separated.  I, at least, saw that from a court reporter | 02:46:23 |
| 24 | e-mail. | 02:46:27 |
| 25 | MR. SELWYN:  And as I say, I have no objections | 02:46:28 |

106

| | | |
|---|---|---|
| 1 | to proceed in the same manner. | 02:46:29 |
| 2 | MR. QUINN:  We have no objections either, and | 02:46:31 |
| 3 | these seem like delightful guys.  So I don't mind having | 02:46:33 |
| 4 | them here at all under ordinary circumstances, but given | 02:46:34 |
| 5 | who -- they represent a competitor.  We just can't agree | 02:46:38 |
| 6 | that this go forward in their presence. | 02:46:41 |
| 7 | MR. FLINN:  I mean, first is that I would like to | 02:46:48 |
| 8 | follow up on my question if you can tell me the | 02:46:50 |
| 9 | circumstances under which you believe Nokia has already | 02:46:53 |
| 10 | improperly gotten -- | 02:46:56 |
| 11 | MR. ZELLER:  We'll send a letter and be very | 02:46:56 |
| 12 | specific. | 02:46:58 |
| 13 | MR. FLINN:  Can you be at all more specific -- | 02:46:58 |
| 14 | MR. ZELLER:  It was during the course of the | 02:47:02 |
| 15 | depositions.  I believe it was on the first day of these | 02:47:04 |
| 16 | depositions, in which Apple's counsel provided a copy of | 02:47:07 |
| 17 | the Nokia -- excuse me -- of the March 22nd, 2013, letter. | 02:47:11 |
| 18 | And we said that that was improper at the time, and, | 02:47:16 |
| 19 | basically -- and Nokia's counsel retained possession of | 02:47:20 |
| 20 | it, as far as we know. | 02:47:24 |
| 21 | MR. SELWYN:  Are you requesting it back? | 02:47:25 |
| 22 | MR. ZELLER:  We will be sending you a letter.  We | 02:47:27 |
| 23 | already told you it was a breach by Apple, or at least | 02:47:29 |
| 24 | participated in by -- | 02:47:33 |
| 25 | MR. QUINN:  We want it back.  We'd like it back. | 02:47:34 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

107

| | | |
|---|---|---|
| 1 | MR. ZELLER:  Of course. | 02:47:36 |
| 2 | MR. QUINN:  If you still have a copy, we'd like | 02:47:37 |
| 3 | it back.  I mean, I hate using Mr. Selwyn's time this way. | 02:47:39 |
| 4 | THE WITNESS:  I'm thinking that this is a very | 02:47:49 |
| 5 | critical issue because -- | 02:47:51 |
| 6 | MR. QUINN:  If you want to talk, we can go | 02:48:00 |
| 7 | outside. | 02:48:00 |
| 8 | All right.  Can we go off the record, please.  So | 02:48:01 |
| 9 | we'll go off the record for a second.  I have no idea -- | 02:48:03 |
| 10 | MR. SELWYN:  Unless Mr. Flinn has something to | 02:48:06 |
| 11 | say that might short-circuit this. | 02:48:08 |
| 12 | MR. FLINN:  I never short-circuit anything, it | 02:48:10 |
| 13 | turns out, so let's take a break. | 02:48:12 |
| 14 | MR. SELWYN:  I meant no disrespect. | 02:48:14 |
| 15 | THE VIDEOGRAPHER:  The time now is 2:47.  We're | 02:48:17 |
| 16 | off the record. | 02:48:20 |
| 17 | (A break was held in the proceedings.) | 02:53:58 |
| 18 | THE VIDEOGRAPHER:  We're back on the record, and | 02:53:59 |
| 19 | the time now is 2:53. | 02:54:00 |
| 20 | Counsel. | 02:54:02 |
| 21 | MR. FLINN:  Let me state my position with respect | 02:54:04 |
| 22 | to this issue.  The first is, earlier in this deposition | 02:54:12 |
| 23 | Mr. Selwyn made clear his position that he believes, on | 02:54:19 |
| 24 | behalf of his client, he is entitled to access to | 02:54:25 |
| 25 | information about the details of Nokia's negotiations with | 02:54:28 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

108

1    Samsung, notwithstanding the NDA.                         02:54:33

2          He's got a very principled basis for that           02:54:39

3    position, given that his client is entitled to understand 02:54:42

4    whether, among other things, there is a pattern or        02:54:47

5    practice of such use within Samsung, and my client would  02:54:50

6    have a similar interest.                                   02:54:56

7          My second point is that Samsung did not object to    02:54:58

8    Mr. Selwyn staying in the room and learning about the      02:55:03

9    details of Apple's -- of Samsung's negotiations with       02:55:09

10   Nokia.  So the position it is taking now is inconsistent   02:55:12

11   with the position that it took with respect to the         02:55:18

12   Nokia-Samsung agreement.                                   02:55:21

13         Thirdly, I am informed that, on the first day of     02:55:24

14   the deposition, the document that has just been marked and 02:55:27

15   copies started to be handed out was, in fact, marked and   02:55:34

16   used in one of the depositions the first day.  At that     02:55:39

17   time, I understand that Samsung's counsel registered an    02:55:43

18   objection, but did not insist that the Nokia lawyer leave  02:55:47

19   the room, took no steps to restrict the use or access to   02:55:55

20   the document, other than it being subject to the           02:56:00

21   protective order, of course.  And the transcript, the      02:56:03

22   testimony, and the document have all been supplied by the  02:56:08

23   court reporter to all parties.                             02:56:12

24         And, finally, I think the Court's order is pretty    02:56:15

25   clear with respect to the -- Nokia's right to access to    02:56:18

109

1    this discovery.                                          02:56:24

2         So for those reasons, I am declining to leave the  02:56:26

3    room and will represent my client at the deposition, even 02:56:31

4    if the witness is asked questions about the details of   02:56:38

5    Apple's negotiations with Samsung.                       02:56:42

6         I will, of course, commit on behalf of myself and  02:56:45

7    my firm that we will comply with the terms of the        02:56:51

8    protective order, treating it as the highest level of    02:56:54

9    confidentiality applicable.                              02:56:57

10        MR. QUINN:  No, don't say anything.  Don't say      02:57:02

11   anything.                                                02:57:05

12        Do you have some other subjects we'd like to turn   02:57:05

13   to?  I think we've made our views pretty clear.  I'm not 02:57:09

14   into giving speeches or responding to speeches.          02:57:09

15        MR. SELWYN:  I just want to make sure I             02:57:12

16   understand your position and I'll state mine as briefly as 02:57:14

17   I can.                                                   02:57:18

18        The Court's order says, on the bottom of page 5,    02:57:18

19   "Nokia shall be allowed access to and full participation 02:57:23

20   in all of the above discoveries, which includes the      02:57:28

21   deposition of Dr. Ahn, subject to the terms of the       02:57:31

22   protective order."                                       02:57:34

23        That language seems to Apple to be unambiguous,     02:57:35

24   that Nokia is permitted to remain in the deposition      02:57:38

25   regardless of whether Apple or Samsung wish it were      02:57:42

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF SEUNGHO AHN
CONDUCTED ON THURSDAY, OCTOBER 17, 2013

110

| | | |
|---|---|---|
| 1 | otherwise. | 02:57:46 |
| 2 | The questions that I want to ask of | 02:57:47 |
| 3 | Mr. Ahn -- Dr. Ahn related to the March 22nd, 2013, letter | 02:57:53 |
| 4 | we believe to be highly relevant to the issues that the | 02:57:59 |
| 5 | Court will need to consider.  And, therefore, I believe | 02:58:03 |
| 6 | that I'm entitled to ask them and need to ask those | 02:58:07 |
| 7 | questions. | 02:58:11 |
| 8 | Obviously, if you tell me that you're not going | 02:58:12 |
| 9 | to allow the witness to respond to those questions because | 02:58:14 |
| 10 | of the presence of Nokia's counsel, I will move on, and we | 02:58:18 |
| 11 | will not have any shouting.  That's our position. | 02:58:23 |
| 12 | MR. QUINN:  Let's just move on to another | 02:58:28 |
| 13 | subject. | 02:58:30 |
| 14 | MR. SELWYN:  And can I take from that that you | 02:58:32 |
| 15 | will not allow this line of questions to proceed? | 02:58:34 |
| 16 | MR. QUINN:  You can take from that that my | 02:58:36 |
| 17 | position -- as I stated before, I have not changed, and I | 02:58:39 |
| 18 | will decline to waste your time and everybody's time here | 02:58:45 |
| 19 | by making another speech.  I think I've been pretty clear. | 02:58:49 |
| 20 | MR. SELWYN:  I apologize, then, because I'm not | 02:58:53 |
| 21 | sure, then, what the position is.  Would you allow the | 02:58:54 |
| 22 | answer to questions on the subject matter of the March | 02:58:57 |
| 23 | letter? | 02:59:00 |
| 24 | MR. QUINN:  I think -- I'm not going to respond | 02:59:01 |
| 25 | beyond what I've already said on that subject. | 02:59:03 |

# EXHIBIT S
# FILED UNDER SEAL

WILMERHALE

October 11, 2013

Joseph J. Mueller

+1 617 526 6396 (t)
+1 617 526 5000 (f)
joseph.mueller@wilmerhale.com

**Contains Confidential Business Information
Subject to Protective Orders**

**BY EMAIL**

Robert Becher, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

**Re:**   *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-cv-1846 LHK (PSG)

Dear Rob:

I write regarding the discovery ordered by the Court in its October 2, 2013 Order Re: Apple's Motion for Sanctions, and related issues.

1.      As noted in my letter of October 4, 2013, we expect Samsung to produce the categories of documents identified by the Court, and not to redact these documents on privilege grounds.  If Samsung does not produce these documents in advance of next week's depositions, then we will hold the depositions open and resume them after the productions are made.

2.      As an interim step, please produce, at a minimum, redacted versions of the following documents immediately.  You previously have produced redacted versions of the cover emails identified in your August 1, 2013 letters to Mark Selwyn, but not the attachments, nor the cover emails or attachments identified in your September 25, 2013 letters to Mark Selwyn.  Please immediately produce redacted versions of the cover emails identified in your September 25, 2013 letters, as well as the attachments to the emails identified in the August 1 and September 25 letters as they were originally sent to Samsung.

With regard to the attachments, we have the incompletely redacted Teece Report, which was attached to Ms. Estrich's recent declaration.  We ask for the incompletely redacted April 3, 2013 Initial Submission made by Samsung in response to the Commission's questions, as it was circulated to Samsung on April 3, 2013—as a final, served document, there can be no claim of privilege, and we want to see precisely the version that was sent to Samsung on April 3, 2013. (Again, we dispute that Samsung can properly claim privilege as to any of these documents.)

Please produce these documents **today** (by FTP site production).

3.      In the interests of reaching logistical accommodations with you, if you provide us with the materials described in item (2) today (by FTP site production), and stipulate to moving the

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
October 11, 2013
Page 2

**WilmerHale**

next hearing before Judge Grewal from October 22 to October 23 (as Bill Lee has discussed with Vicki Maroulis and Susan Estrich), then we will agree to take the depositions at our offices (or those of our co-counsel) in Los Angeles and wait until next Thursday to depose Dr. Ahn.  Please let us know today if you agree.

4.      Who will be your 30(b)(6) designee?

5.      We had hoped to receive your 30(b)(6) designation and your document production before noticing our fifth fact witness, but you have not yet made any 30(b)(6) designation or document production pursuant to the Court's October 2 Order.  In the absence of such designation or documents, attached please find a deposition notice for Jin Hwan ("James") Kwak, for October 16 at our Los Angeles office.  Please confirm that he will be available then.

6.      In response to your October 10, 2013 letter regarding privilege issues, we agree that the act of producing documents required by the Court's order will not, itself, waive any privilege.  We do not agree, however, that you can use privileged documents to prepare a witness and necessarily maintain the privilege thereafter.  We do not see the need to enter into any stipulation on this issue.

7.      In response to your other October 10, 2013 letter, regarding Paul Melin's declaration, we do not consent to your using this declaration for witness preparation.  You also request confirmation that Apple will not contend that Samsung's "production of any responsive documents from ITC Investigation 337-TA-794 violates the ITC protective order or any other protective order."  As Bill Lee stated in his October 8 letter, Judge Grewal's October 2, 2013 Order does not authorize additional breaches of any protective order.  To the extent that Samsung produces documents from the 794 Investigation, it should do so in accordance with the Protective Order governing that investigation.  We are willing to work with you and Nokia to ensure that Nokia's counsel has access to these documents to the extent that they contain Nokia confidential information.

8.      In your letter of September 25, 2013, you responded to the questions that I had raised in earlier correspondence.  But, your answers did not substantively address many issues, e.g.:

        a.      You provide no information regarding what Samsung's foreign counsel have done with the improperly-disclosed information.  You promised to provide it, and Ms. Estrich repeated that promise at the hearing, but we now understand that Samsung is refusing to provide that information.  Can you confirm that foreign counsel are preserving all documents responsive to the Court's October 2 Order?

        b.      Regarding the "auto-delete" function, your letter seems to indicate that the function was active at the time the improper disclosures were made, and remains active today.  You state that Samsung has instituted an archive system.  When precisely was that

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
October 11, 2013
Page 3

**WILMERHALE**

archived system instituted?  Is Samsung representing that **all** emails containing, referring to, or otherwise using the improperly-disclosed information were archived?

c.       You note that Samsung proposed deleting the disclosures, and that Nokia asked Samsung not to delete them.  Why did Samsung make a deletion proposal to Nokia, without asking Apple if deletion was permissible?

d.       Relatedly, we still do not understand why Samsung notified Nokia of specific disclosures on July 16, but waited until August 1 to notify Apple.  Will you represent that the pendency of the U.S. Trade Representative's review of the 794 exclusion order played **no** role in Samsung's and Quinn Emanuel's decision to wait to notify Apple, and that the USTR review was not mentioned at all during the discussions of whether to notify Apple?

9.       As for your questions to us regarding the Dutch disclosures, we simply note that these disclosures were made at the request of the Dutch court, in an anonymized, restricted form—and that Samsung also made its own disclosures to the Dutch court at the same time, in response to the same request.  Beyond that, we will not entertain Samsung's attempt to change the subject from its own conduct.

Sincerely,

*/s/ Joe Mueller*

Joe Mueller

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3182**

WRITER'S INTERNET ADDRESS
**robertbecher@quinnemanuel.com**

## VIA EMAIL

October 16, 2013

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
CONTAINS INFORMATION DESIGNATED HIGHLY-CONFIDENTIAL – ATTORNEYS'
EYES ONLY

Joseph Mueller, Esq.                     Randall Allen, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP  Alston & Bird LLP
60 State Street                          275 Middlefield Road, Suite 150
Boston, Massachusetts 02109              Menlo Park, CA 94025
*Attorneys for Apple, Inc.*              *Attorneys for Nokia Corporation*

Re:    Apple Inc. v. Samsung Elecs. Co. Ltd., No. 11-cv-1846 LHK (PSG)

Dear Joe and Randall:

We write to provide Nokia and Apple with information regarding any dissemination or use of the inadvertently disclosed information by outside counsel.  The attachment to this letter pertains to Kirkland & Ellis LLP.

Very truly yours,

Robert J. Becher

**quinn emanuel urquhart & sullivan, llp**
NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

**Attachment A** provides information regarding the subsequent history of certain emails identified as being received by Kirkland & Ellis LLP and identified below in bold print.  These emails were received by Kirkland in connection with its representation of Samsung against Ericsson.  The subsequent history described below was identified by Kirkland after a reasonable inquiry of its email in response to Samsung's request.

Based on Kirkland's reasonable inquiry and review, it believes that no information from the attachments to the emails from Hojin Chang (dated March 26 and 28, 2013) and Daniel Shim (March 27, 2013) regarding any terms, including financial terms, of the Apple-Nokia license was included in, or filed with, any motion or filing prepared by Kirkland.  Likewise, based on Kirkland's reasonable inquiry and review it believes that no term of this license was otherwise used by Kirkland.

Also based on Kirkland's reasonable inquiry and review, it believes that no information from the Teece Report regarding any terms, including financial terms, of the Apple-Nokia, Apple-Sharp, Apple-Philips or Apple-Ericsson licenses was included in, or filed with, any motion or filing prepared by Kirkland and Kirkland further believes that no term of those licenses taken from this Teece Report was otherwise used by Kirkland.

Kirkland did subsequently receive access to a copy of the Teece Report subject to the attorneys-eyes-only provisions of the 337-ITC-866 and 377-ITC-862 protective orders after Ericsson won a motion to compel its production.  To the extent any use was made of this document, it was done consistent with the protective orders, and did not involve the Apple-Nokia, Apple-Sharp, or Apple-Phillips licenses.  Kirkland also had access to the Ericsson-Apple license agreement subject to the attorneys-eyes-only provisions of the 866 and 862 protective orders after Ericsson produced that license.  To the extent any use was made of this document, it was done consistent with the protective orders.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

### Attachment A (Kirkland)

### Relevant Emails Sent From or To Samsung Personnel

On **March 26, 2013**, from Hojin Chang of Samsung, attaching a draft outline of Samsung's response to the International Trade Commission's Request for Additional Submissions on Remedy and the Public Interest, sent to TaeHyoung Kim, Hojin Chang, Anthony Kahng, Injung Lee, Brian Kim, Michael Kang, Daniel Ko, Daniel Shim, Eric Cha, Heungju Kwon, James Kwak, JaeHyoung Kim, Jae-il Park, James Shin, Kenneth Korea, Richard An, Rosa Kim, Seongwoo (Clayton) Kim, Soojin Lee, Wonsuk Park, Wonsun Kim, Youngjo Lim, Yunhee Kang, Karin Norton, Jay Shim, InDong Kang, Jun Won Lee, Hyuckson Kwon of Samsung ("Samsung List B"); as well as to Michael McKeon and Ruffin Cordell of Fish & Richardson P.C.; the following individuals from Kirkland & Ellis, LLP:  Ed Donovan, Jennifer Selendy, and Greg Arovas; and the following distribution address at Quinn Emanuel:  "Samsung ITC."

#### Selendy Mailbox

On March 26, 2013:
Selendy received email from Hojin Chang; Donovan forwarded email to Linda Kordziel, Michael Tyler (cc:  McKeon, Selendy, Simmons, Arovas); Donovan emailed attachment to Joshua Simmons (cc:  Selendy, Arovas);Simmons emailed attachment to Selendy (cc:  Flugman); Tyler emailed attachment to Donovan, Linda Kordziel (cc: McKeon, Selendy, Simmons, Arovas); Simmons emailed attachment to Donovan (cc: Selendy, Arovas); Simmons emailed attachment to Donovan (cc:  Arovas, Selendy, Flugman); Donovan emailed attachment to McKeon, Tyler, Kordziel (cc: Arovas, Selendy, Simmons)

#### Donovan Mailbox

On March 26, 2013:
Donovan received email from Hojin Chang; Donovan forwarded email to Linda Kordziel, Michael Tyler (cc:  McKeon, Selendy, Simmons, Arovas); Donovan emailed attachment to Joshua Simmons (cc:  Selendy, Arovas); Tyler emailed attachment to Donovan, Linda Kordziel (cc: McKeon, Selendy, Simmons, Arovas); Simmons emailed attachment to Donovan (cc: Selendy, Arovas); Simmons emailed attachment to Donovan (cc:  Arovas, Selendy, Flugman); Donovan emailed attachment to McKeon, Tyler, Kordziel (cc: Arovas, Selendy, Simmons)

#### Arovas Mailbox

There is no record in the Greg Arovas mailbox of the March 26, 2013 Hojin Chang email.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

**A March 26, 2013 email** from Ed Donovan of Kirkland & Ellis, LLP, attaching comments on the previously identified outline, sent to Samsung List B, as well as to Michael McKeon and Ruffin Cordell of Fish & Richardson P.C.; the following individuals from Kirkland & Ellis, LLP: Jennifer Selendy, and Greg Arovas; and the following distribution address at Quinn Emanuel: "Samsung ITC."

## Donovan Mailbox

On March 26, 2013:
Donovan sent the email identified above.


## Selendy Mailbox

On March 26, 2013, Selendy received the email from Donovan described above.

## Arovas Mailbox

There is no record in the Greg Arovas mailbox of the March 26, 2013 Ed Donovan email.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

**A March 28, 2013 email** from Hojin Chang of Samsung, that attaches comments on the previously identified outline, sent to Samsung List B, as well as to Michael McKeon and Ruffin Cordell of Fish & Richardson P.C.; and the following individuals from Kirkland & Ellis, LLP:  Ed Donovan, Jennifer Selendy, and Greg Arovas.

**<u>Selendy Mailbox</u>**

> On March 28, 2013,
> Selendy received email from Hojin Chang.

**<u>Donovan Mailbox</u>**

> On March 28, 2013,
> Donovan received email from Hojin Chang.

**<u>Arovas Mailbox</u>**

There is no record in the Greg Arovas mailbox of the March 28, 2013 Ed Donovan email.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

**An April 3, 2013 email** from Alex Lasher of Quinn Emanuel, attaching Samsung's Initial Submission in Response to the Commission's March 13, 2013 Notice on Remedy and the Public Interest, sent to Samsung List B and KiJoong Kang of Samsung, as well as to Ed Donovan of Kirkland; and the following individuals and distribution list at Quinn Emanuel:  Thomas Pease, Alan Whitehurst, Marissa Ducca, and "Samsung FRAND."

**<u>Donovan Mailbox</u>**

On April 3, 2013:  this email was only sent to Donovan and there were no additional forwards of the attachment.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

On **March 27, 2013** Greg Arovas received an email from Daniel Shim forwarding a copy of an email from Thomas Pease from Quinn Emanuel attaching an outline.

### Arovas Mailbox

There is no record in the Greg Arovas mailbox of the March 27, 2013 Daniel Shim email.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

On **January 24, 2013**, Thomas Pease emailed the redacted Teece Report to Jennifer Selendy, Michael Becker, and Edward Donovan of Kirkland and Ellis, Gary Halling, David Garcia and Mona Solouki of Sheppard Mullin, copying David Hecht of Quinn Emanuel.

## Selendy Mailbox

On January 24, 2013, Selendy received email from Thomas Pease; forwarded email to Jasmine Diaz on January 28; forwarded email to Jasmine Diaz; Jasmine then forwarded to NY Document Services and to Michael McKeon and Linda Kordziel on February 11, 2013; Jasmine Diaz forwarded attachments to Robert Mason and attachments forwarded to David Flugman and Joshua Simmons on February 12, 2013; forwarded to Randall Heeb (Bates White) on February 18; forwarded to self on February 19; forwarded to Ed Donovan on March 5; forwarded to Jasmine Diaz on March 5.

## Edward Donovan

On January 24, 2013, Donovan received email from Thomas Pease; received email from Jennifer Selendy and forwarded email to Carla Hurley on March 5.

## Michael Becker

On January 24, 2013, Becker received email from Thomas Pease and forwarded email to Kim Conte on January 25.

# EXHIBIT X
# FILED UNDER SEAL

                                                              1

1                 UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

3      - - - - - - - - - - - - - - - X

4    APPLE INC., a California        :

5    Corporation,                    :

6                  Plaintiffs,       :

7    v.                              :

8    SAMSUNG ELECTRONICS CO., LTD., a :

9    Korean corporation; SAMSUNG     : Civil Action No.

10   ELECTRONICS AMERICA, INC., a New : 11-cv-01846-LHK

11   York corporation; and SAMSUNG   :

12   TELECOMMUNICATIONS AMERICA, LLC, :  FULL VERSION

13   a Delaware limited liability    :  Apple-Samsung

14   Company,                        :  Attorneys' Eyes

15          Defendants.              :  Only

16   - - - - - - - - - - - - - - - X

17   (Caption continued on next page)

18   CONTAINS HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY PORTIONS

19          UNDER NORTHERN CALIFORNIA PROTECTIVE ORDER

20          Videotaped Deposition of JIN HWAN KWAK

21                   Los Angeles, California

22          Friday, October 18, 2013, 9:15 a.m.

23   Job No.:  46617

24   Pages 1 - 196

25   Reported by:  Clay J. Frazier, CSR, RMR, CRR

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF JIN HWAN KWAK - FULL VERSION
## CONDUCTED ON FRIDAY, OCTOBER 18, 2013

147

| | | |
|---|---|---|
| 1 | MR. ZELLER:  The question's vague. | 16:28:26 |
| 2 | THE WITNESS:  No.  I do not have any | 16:28:28 |
| 3 | recollection to that effect. | 16:28:30 |
| 4 | BY MR. LANTIER: | 16:28:45 |
| 5 | Q    Prior to the June 4th, 2013 meeting, did | 16:28:46 |
| 6 | you have any communications with anyone concerning | 16:28:51 |
| 7 | the production of the Apple-Nokia license in the | 16:28:55 |
| 8 | litigation? | 16:29:02 |
| 9 | A    I have no recollection to that effect. | 16:29:26 |
| 10 | MR. LANTIER:  If we could mark as | 16:29:32 |
| 11 | Exhibit 7 a document with the Bates number | 16:29:35 |
| 12 | SAMNDCA-Z0012355. | 16:29:40 |
| 13 | MR. ZELLER:  I'm sorry.  What exhibit | 16:30:01 |
| 14 | number again? | 16:30:03 |
| 15 | MR. LANTIER:  7. | 16:30:05 |
| 16 | (Exhibit 7 was marked for | 16:30:10 |
| 17 | identification by the reporter.) | 16:30:10 |
| 18 | BY MR. LANTIER: | 16:30:31 |
| 19 | Q    Are you identified in Exhibit 7 as a | 16:30:31 |
| 20 | recipient of this e-mail? | 16:30:34 |
| 21 | A    Yes.  I am there. | 16:30:47 |
| 22 | Q    And does this e-mail concern the project | 16:30:48 |
| 23 | you were working on with Williams & Connolly in the | 16:30:51 |
| 24 | first half of 2013? | 16:30:56 |
| 25 | MR. ZELLER:  You can answer that yes or no | 16:31:12 |

148

| | | |
|---|---|---|
| 1 | to the extent you know. | 16:31:13 |
| 2 | THE WITNESS:  That is correct. | 16:31:15 |
| 3 | BY MR. LANTIER: | 16:31:21 |
| 4 | Q    And this project you said is unrelated to | 16:31:22 |
| 5 | your preparations for the meeting with Nokia in | 16:31:24 |
| 6 | June; correct? | 16:31:28 |
| 7 | MR. ZELLER:  I think that mischaracterizes | 16:31:49 |
| 8 | the witness' statement.  Assumes facts. | 16:31:50 |
| 9 | THE WITNESS:  May I just have the | 16:31:56 |
| 10 | interpretation again, please, as to the question. | 16:31:57 |
| 11 | MR. LANTIER:  I'll rephrase in light of | 16:32:01 |
| 12 | the form objection. | 16:32:03 |
| 13 | BY MR. LANTIER: | 16:32:07 |
| 14 | Q    Is the communication reflected in | 16:32:18 |
| 15 | Exhibit 7 related to Samsung's preparation for its | 16:32:19 |
| 16 | license negotiations with Nokia? | 16:32:30 |
| 17 | MR. ZELLER:  You can answer that "yes," | 16:32:55 |
| 18 | "no," or, "I don't know." | 16:33:00 |
| 19 | THE WITNESS:  My view is that this matter | 16:33:11 |
| 20 | was unrelated to the June meeting, the negotiation | 16:33:13 |
| 21 | matter. | 16:33:18 |
| 22 | BY MR. LANTIER: | 16:33:22 |
| 23 | Q    Was it unrelated to the June meeting | 16:33:22 |
| 24 | specifically, or was it unrelated to Samsung's | 16:33:24 |
| 25 | negotiations with Nokia overall? | 16:33:27 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF JIN HWAN KWAK - FULL VERSION
## CONDUCTED ON FRIDAY, OCTOBER 18, 2013

149

| | | |
|---|---|---|
| 1 | MR. ZELLER:  I'm going to instruct you not | 16:33:53 |
| 2 | to reveal in your answer the substance of any | 16:33:54 |
| 3 | attorney-client communication in connection with | 16:34:00 |
| 4 | advice or work product. | 16:34:02 |
| 5 | THE WITNESS:  What I'm able to tell you | 16:34:52 |
| 6 | about the contents concerning this particular matter | 16:34:53 |
| 7 | are as follows: | 16:34:55 |
| 8 | What this entails happens not to be | 16:34:59 |
| 9 | anything that we are able to utilize in terms of the | 16:35:04 |
| 10 | data thereof in any direct fashion for any | 16:35:09 |
| 11 | negotiation purposes, whether such be for the June | 16:35:13 |
| 12 | meeting purposes or otherwise. | 16:35:15 |
| 13 | You see, when you are in the business of | 16:35:26 |
| 14 | handling licenses, you come across many claims, many | 16:35:28 |
| 15 | litigation -- many pieces of litigation.  And as I | 16:35:34 |
| 16 | think I alluded to earlier, in view of such matters | 16:35:49 |
| 17 | to -- routinely to go about collecting information | 16:35:54 |
| 18 | on companies, that is a rather routine sort of | 16:35:59 |
| 19 | thing. | 16:36:07 |
| 20 | And as it were at that time -- and I am, | 16:36:12 |
| 21 | of course, not able to disclose any amounts, but | 16:36:17 |
| 22 | Nokia was asking a rather high amount of money from | 16:36:19 |
| 23 | our company. | 16:36:23 |
| 24 | And so what we were going about doing was | 16:36:44 |
| 25 | to prepare not only in view of the negotiation but | 16:36:46 |

150

| | | |
|---|---|---|
| 1 | also to prepare for any possible action, litigation, | 16:36:54 |
| 2 | as may possibly ensue.  It's something that we just | 16:37:01 |
| 3 | do as a company, as with any other company out | 16:37:05 |
| 4 | there, in terms of conducting any basic routine | 16:37:09 |
| 5 | types of information gathering. | 16:37:18 |
| 6 | That is how I recall things to be with | 16:37:31 |
| 7 | respect to this e-mail. | 16:37:32 |
| 8 | BY MR. LANTIER: | 16:37:41 |
| 9 | Q     How did you ultimately use the information | 16:37:41 |
| 10 | in the Exhibit 7? | 16:37:45 |
| 11 | MR. ZELLER:  I instruct you not to reveal | 16:37:55 |
| 12 | in your answer the substance of attorney-client | 16:37:56 |
| 13 | communications in connection with legal advice or | 16:38:00 |
| 14 | work product. | 16:38:03 |
| 15 | THE WITNESS:  When it comes to information | 16:38:26 |
| 16 | such as we have here, it is not necessarily the case | 16:38:27 |
| 17 | that the way this gets utilized, whether it be for | 16:38:31 |
| 18 | negotiation purposes or elsewhere -- well, things | 16:38:36 |
| 19 | differ depending on the circumstances. | 16:38:39 |
| 20 | And as such, I think -- at least as of | 16:38:52 |
| 21 | this moment, I think it's a little difficult for me | 16:38:54 |
| 22 | to give you any clear-cut answer in that regard. | 16:38:57 |
| 23 | But, sir, if you will simply regard it as | 16:39:17 |
| 24 | being a routine course as far as our company is | 16:39:20 |
| 25 | concerned for us in going back to conducting | 16:39:23 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF JIN HWAN KWAK - FULL VERSION
## CONDUCTED ON FRIDAY, OCTOBER 18, 2013

151

| | | |
|---|---|---|
| 1 | licensing affairs to gather up basic publicly | 16:39:26 |
| 2 | available information on the other party with whom | 16:39:30 |
| 3 | we are dealing. | 16:39:33 |
| 4 | Just to further elaborate, this sort of | 16:39:35 |
| 5 | going about gathering basic information on the other | 16:39:49 |
| 6 | party, this is not just something that is routine | 16:39:51 |
| 7 | with us; I would believe that all other companies | 16:39:56 |
| 8 | out there do the very same thing. | 16:39:59 |
| 9 | BY MR. LANTIER: | 16:40:03 |
| 10 | Q    If I understand you, this information was | 16:40:03 |
| 11 | being gathered in case the negotiations with Nokia | 16:40:06 |
| 12 | are ultimately unsuccessful; is that correct? | 16:40:11 |
| 13 | MR. ZELLER:  I'm instructing the witness | 16:40:32 |
| 14 | not to answer the question. | 16:40:33 |
| 15 | BY MR. LANTIER: | 16:40:49 |
| 16 | Q    You've been instructed not to answer the | 16:40:49 |
| 17 | question.  Are you going to follow your attorney's | 16:40:50 |
| 18 | instruction? | 16:40:53 |
| 19 | A    No.  I think I could actually talk about | 16:40:58 |
| 20 | this. | 16:40:59 |
| 21 | MR. ZELLER:  Hold on.  No, you're not. | 16:41:00 |
| 22 | I'm instructing you not to answer the question as | 16:41:01 |
| 23 | he's asked it.  He could ask a proper question.  He | 16:41:04 |
| 24 | has not.  I'm instructing you not to answer it.  So | 16:41:07 |
| 25 | there's no need -- and it's quite extraordinary that | 16:41:09 |

152

| | | |
|---|---|---|
| 1 | you would continue to ask some witness whether he's | 16:41:12 |
| 2 | going to follow the instruction.  It's another | 16:41:15 |
| 3 | improper tactic on your part.  Please ask a | 16:41:18 |
| 4 | question. | 16:41:23 |
| 5 | BY MR. LANTIER: | 16:41:39 |
| 6 | Q    For what purpose was the information in | 16:41:39 |
| 7 | Exhibit 7 being provided to you? | 16:41:41 |
| 8 | MR. ZELLER:  Objection.  The question is | 16:41:54 |
| 9 | vague as to the referent.  Without proper question, | 16:41:55 |
| 10 | I instruct not to answer that question.  Again, | 16:41:58 |
| 11 | calculated to reveal work product and | 16:42:01 |
| 12 | attorney-client privilege.  And it's vague.  Form. | 16:42:03 |
| 13 | BY MR. LANTIER: | 16:42:37 |
| 14 | Q    Was the information in Exhibit 7 being | 16:42:38 |
| 15 | provided to you in anticipation of potential | 16:42:39 |
| 16 | litigation with Nokia? | 16:42:43 |
| 17 | MR. ZELLER:  I instruct the witness not to | 16:43:01 |
| 18 | answer the question. | 16:43:03 |
| 19 | MR. LANTIER:  That information would be on | 16:43:08 |
| 20 | a privilege log. | 16:43:09 |
| 21 | MR. ZELLER:  Next question, please, | 16:43:15 |
| 22 | Counsel. | 16:43:16 |
| 23 | BY MR. LANTIER: | 16:43:35 |
| 24 | Q    Have you used the information in Exhibit 7 | 16:43:35 |
| 25 | for any purpose? | 16:43:37 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF JIN HWAN KWAK - FULL VERSION
## CONDUCTED ON FRIDAY, OCTOBER 18, 2013

153

| | | |
|---|---|---|
| 1 | MR. ZELLER:  You can answer that question | 16:43:48 |
| 2 | "yes," "no," or, "I don't know." | 16:43:49 |
| 3 | THE WITNESS:  Negative, as far as my | 16:43:59 |
| 4 | understanding goes -- insofar as my recollection | 16:44:00 |
| 5 | goes. | 16:44:02 |
| 6 | BY MR. LANTIER: | 16:44:08 |
| 7 | Q    Do you have any plan to use the | 16:44:09 |
| 8 | information contained in Exhibit 7 in the future? | 16:44:10 |
| 9 | MR. ZELLER:  Calls for speculation.  Vague | 16:44:26 |
| 10 | and ambiguous. | 16:44:26 |
| 11 | And I instruct you not to reveal in your | 16:44:29 |
| 12 | answer the substance of attorney-client | 16:44:32 |
| 13 | communications in connection with legal advice or | 16:44:33 |
| 14 | work product. | 16:44:35 |
| 15 | THE WITNESS:  To answer that would require | 16:45:00 |
| 16 | me to reveal privileged information.  Therefore, I | 16:45:01 |
| 17 | am unable to answer your question. | 16:45:04 |
| 18 | MR. LANTIER:  Let's mark as Exhibit 8 a | 16:45:16 |
| 19 | document bearing the Bates stamp numbers | 16:45:24 |
| 20 | SAMNDCA-Z0010621 to 622. | 16:45:26 |
| 21 | (Exhibit 8 was marked for | 16:46:05 |
| 22 | identification by the reporter.) | 16:46:05 |
| 23 | BY MR. LANTIER: | 16:46:06 |
| 24 | Q    Mr. Kwak, have you seen Exhibit No. 8 | 16:46:06 |
| 25 | before today? | 16:46:08 |

HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF JIN HWAN KWAK - FULL VERSION
## CONDUCTED ON FRIDAY, OCTOBER 18, 2013

154

| | | |
|---|---|---|
| 1 | A     This one I do not recall seeing. | 16:46:16 |
| 2 | Q     Do you see that it's an e-mail from | 16:46:18 |
| 3 | James Shin forwarding an e-mail from Ari Zymelman of | 16:46:20 |
| 4 | Williams & Connolly? | 16:46:28 |
| 5 | A     Yes.  That is what is indicated here. | 16:46:45 |
| 6 | Q     There's a set of attachments to that | 16:46:49 |
| 7 | e-mail. | 16:46:53 |
| 8 | Do you see that? | 16:46:54 |
| 9 | A     Yes.  That is what is indicated here. | 16:47:02 |
| 10 | Q     And one of the attachments is called | 16:47:03 |
| 11 | Nokia-Apple license memo. | 16:47:05 |
| 12 | Do you see that? | 16:47:07 |
| 13 | A     Yes. | 16:47:13 |
| 14 | Q     What is the -- strike that. | 16:47:17 |
| 15 | For what purpose was the Nokia-Apple | 16:47:21 |
| 16 | license memo prepared? | 16:47:23 |
| 17 | MR. ZELLER:  I'm instructing you when you | 16:47:34 |
| 18 | answer the question again not to reveal the | 16:47:37 |
| 19 | substance of attorney-client communication in | 16:47:39 |
| 20 | connection with legal advice or work product. | 16:47:43 |
| 21 | THE WITNESS:  I don't think I'm going to | 16:48:13 |
| 22 | be able to quite answer that question on this aspect | 16:48:14 |
| 23 | without revealing privileged information. | 16:48:17 |
| 24 | BY MR. LANTIER: | 16:48:22 |
| 25 | Q     Have you reviewed the Nokia-Apple license | 16:48:22 |

CONTAINS HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY PORTIONS - SUBJECT TO PROTECTIVE ORDER