# EXHIBIT 1
# Unredacted Version of Document Sought to be Sealed

UNDER SEAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Paul S. Grewal, Magistrate Judge

APPLE, INC.,                        )
                                    )
          Plaintiff,                )
                                    )
  VS.                               )        No. C 11-1846 LHK (PSG)
                                    )
SAMSUNG ELECTRONICS CO., LTD.,  )
a Korean corporation; SAMSUNG   )
ELECTRONICS AMERICA, INC., a    )
New York corporation; SAMSUNG   )
TELECOMMUNICATIONS AMERICA,     )
LLC, a Delaware limited         )
liability company,              )
                                    )
          Defendants.               )
_____)

                         San Jose, California
                         Monday, December 9, 2013

   **<u>TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                         RECORDING</u>**

**<u>APPEARANCES</u>**:

For Plaintiff Apple, Inc.:
                         Morrison & Foerster
                         425 Market Street
                         San Francisco, California  94105
                    BY:  **HAROLD J. MCELHINNY**, Esq.

          (Appearances continued on next page)

Transcribed By:          Candace Yount, CSR# 2737, RMR, CCRR
                         Contracted Court Reporter/Transcriber
                         candace.yount@gmail.com


              Computerized Transcription By Eclipse

1    And that was a critical point, because we knew we were

2    going to be operating off of a -- a flat log, a sort of a

3    one-dimensional description of the documents.  And we knew we

4    were going to have to engage with Quinn Emanuel and having a

5    debate about what should we get, what could we get.  And we

6    knew that it was likely we were going to be coming to Your

7    Honor to explain our basis for obtaining that information.

8    So the -- I said to you that the -- the -- the stipulated

9    order process was the beginning and not the end.

10   There's two ways to go forward from this.  Way one is for

11   them to complete the stipulated order as it's described in

12   the -- in -- to complete the log as it's described in the

13   stipulated order.  Then we'll go through the negotiation

14   process.

15   I think we've leaped over that.  And way two, I think,

16   is -- is the way to go, and that is to make a finding that they

17   have -- either don't have a privilege, that they waived the

18   privilege, or that as a sanction they lose the privilege and

19   that those documents be produced.  If the documents are

20   produced, I don't need a log to have a debate with Quinn

21   Emanuel about whether or not we get those documents or not.

22   I want to pause here because I'm -- I'm mindful from

23   having had the pleasure to be here with Your Honor that you

24   are -- you are keen to find a resolution, an end to this.  And

25   I'm -- I'm . . .  I accept that.  I'm tired of writing briefs

1   over holidays and doing all that sort of stuff.

2       But we set this process in motion to have some

3   understanding of what had occurred so that we could make an

4   assessment about what the proper thing to do was to do for

5   Nokia.

6       And as I stand here today, whatever it is, four months

7   after we started with the stipulated order process, I don't

8   know anything.  I know the same things I knew before.  I'm --

9   Well, I'll take one exception to that.  I did not know that it

10  was Quinn Emanuel, and I did not know that the disclosure was

11  as pervasive as it was.

12      But we all now know that.  We all now know that they used

13  the information in their negotiations with Nokia.  I mean,

14  I . . . I don't see a legitimate debate on the credible of the

15  two stories at issue that -- that challenges that.

16      But I don't know the extent of the -- the internal

17  communications within Samsung about this information.  I don't

18  know how pervasive it was transmitted.

19      I mean, if you look at the -- the representations that

20  have been made so far by Samsung, I'm led to believe that --

21  that what they're looking for and what they did with Stroz

22  Friedberg under their sort of second retention letter, was they

23  were looking for instances of specific communications of the

24  Teece report, and they were looking for specific communications

25  of the ITC brief.

1          And one of the things that the -- that the stipulated

2     order makes clear is, those can be foundational and -- and

3     information derived from them may simply be repeated in an

4     e-mail.  May not have the report attached to it.  It could be

5     in notes of a meeting.  It could be any number of places.

6          And what we were trying to understand from the stipulated

7     order process is, where did -- where did that go?  Where --

8     What's the -- What's the thicket where you're going to find all

9     of the different permutations of that information?  And that's

10    what we're still trying to get to today.

11         And so I -- I take it that -- that we've been at this for

12    a bit, but I would also suggest to the Court that it's -- we're

13    not done.  You said in your November 8th order that we don't

14    know entirely what happened.  We may never know entirely what

15    happened.

16         But there's a lot that -- that we can learn from those

17    documents and we ought to have the right to learn them.

18         And I'm not here making some litigation play.  I'm trying

19    to get to the bottom of this as best I can.  That's what I've

20    been instructed to do by my client.  And I think we're entitled

21    at this stage to have some understanding of -- of what

22    happened.

23         And so I -- I simply suggest that -- that this process

24    today, and wherever we go from here, that it not foreclose one

25    way or the other the completion of that stipulated order

1   process because we have set in -- in motion a process to get as

2   close to the bottom of it as we can, and I ask the Court's

3   indulgence to allow us to finish it and have a better

4   understanding of -- of what happened.

5       So if you . . .  To quickly touch on them -- and I'm happy

6   to answer any questions the Court has -- the -- the --

7       THE COURT:  Are you really suggesting I enjoin Quinn

8   Emanuel from suing your client for 10 years.

9       MR. ALLEN:  Yes, sir, I absolutely am.

10      THE COURT:  That doesn't strike you as a bit of an

11  overreach?

12      MR. ALLEN:  Here I am and --

13      THE COURT:  In some ways you've given Mr. Quinn the

14  ultimate compliment; haven't you?

15      MR. ALLEN:  I had that thought and that's an

16  unfortunate side effect of the result.

17      I'm sure Mr. Quinn is entitled to many compliments.

18  That's not one of the ones that I intended to give him.

19      There's a lot of litigation going on in this industry.

20  And -- And -- And one of the things that we ought to be able to

21  do is engage in the litigation in good faith and not have to

22  worry about this stuff.

23      And I'm not suggesting that there's a world in which

24  lawyers aren't going to worry about things.  But there can be

25  no litigation with Nokia and Quinn Emanuel that this issue

1  isn't going to be on the forefront of everybody's mind.

2      And -- And we ought not be subjected to that process any

3  longer.  There's no reason for us to be subjected to that

4  process.  I wouldn't be surprised if Mr. Quinn said he'd

5  consent to that.  I think that's -- that's a -- I mean, if you

6  look at the forms of relief that we've asked for, I don't think

7  any of them or Draconian.  I take it, Your Honor, that that's

8  an unusual one.

9      If the Court thinks that 10 years is not the right length

10  of time, I take the Court's instruction.

11      But we ought not be subjected to that kind of -- that kind

12  of worry, that kind of trouble, and the -- and the additional

13  cost that this history is going to bring to that future

14  litigation.

15      I think there's even now in the record sufficient

16  information for the Court to make a finding that Samsung has

17  misappropriated Nokia's confidential business information.  I

18  think there's sufficient in the -- information in the record

19  now for the Court to order that Samsung be required to divulge

20  the allegedly privileged documents that they have relating to

21  this disclosure issue.

22      I think there's sufficient evidence in the record now for

23  the Court to award Nokia its attorneys' fees to this point, and

24  I'm not suggesting that this process is over.  I think we're at

25  that point now and I think we've made the record for it, and we

1          **THE COURT:**  -- is why shouldn't the Court look to the

2     way this entire operation was set up in the first place in --

3     in asking whether or not there was negligence or some other

4     level of culpability in the way things played out?

5          **MR. QUINN:**  Well, I mean, this is -- I mean, what

6     happens here, Your Honor, is -- you know, I hate to say it.

7     I -- You know, so many documents redacted, so many documents

8     transmitted.  I'm glad we found out about this.  I genuinely

9     am, because it gave us an chance to institute some procedures

10    in our firm.

11         But I doubt that there's any firm in this country that

12    hasn't had something like this happened to them.  You know, we

13    had Melin's -- you know, Nokia's motion and Melin's declaration

14    that causes us to get to the bottom of this.

15         But is there anybody here in this courtroom who thinks

16    they don't live in a glass house?

17         Apple lives in a glass house.  I mean, Apple has twice now

18    in the last month published, you know, confidential

19    information.  We didn't hear any response to that.  They didn't

20    think it was necessary to give us notice, at the very same time

21    they're making arguments to this court.

22         Look, I agree, people have to rely -- When something says

23    redacted, and it's sent, no lawyer on the other side of the

24    world or even in the same law firm is going to think, "Well,

25    I've got to double-check this.  I better read it again to make

1  sure it was properly redacted."  That doesn't happen.  As a

2  practical matter --

3          THE COURT:  My question is shouldn't it happen,

4  especially in cases like this that are such high stakes that

5  consume so many resources in markets an in the Court.

6          MR. QUINN:  Well --

7          THE COURT:  Shouldn't there be a standard that says

8  you should be doing that.

9          MR. QUINN:  Well, the "that" is, and certainly in our

10 case, two eyes on every redaction.  I mean, that's our policy

11 here.

12       They developed between the time of the opening -- I'm

13 informed 0before the opening Teece reports and the rebuttal

14 reports a procedure was agreed to which apparently they had

15 been following the ITC to exchange redacted versions of the

16 reports.  That wasn't in place.  Obviously that's a -- that

17 would be a very useful measure and that would be what --

18 prevented what happened here.

19       But to create a rule that says in hindsight we're going to

20 make a judgment about, you know, what a young person did and

21 the fact that, you know, the hard-working person who didn't

22 think to go back and look, I think is pretty harsh.

23          THE COURT:  Yeah.  I -- I might agree with you that

24 that would be harsh.  I guess I'm -- I'm more focused on

25 what . . . more senior people did or didn't do in response to

 1  that young person's inquiry, what the seniormost people did or

 2  didn't do in setting up this whole operation so that if the

 3  entire sanctity of the Protective Order stands or falls on one

 4  junion associate's good judgment late at night on a given

 5  document, that strikes me that perhaps we ought to be aspiring

 6  to a higher standard, at least in cases like where the stakes

 7  are so high.

 8          MR. QUINN:  I'm sure people wish they -- they had that

 9  one back.

10      I mean, what Mr. Pease was -- I mean, he's filed

11  declarations what he was told, you know, and to compound this,

12  you know, he's out of the office that day moving his home, his

13  family, and he gets a phonecall or an e-mail, I don't know

14  which it was, and was told an document improperly went out.

15      You know, we can all sit in judgment on that after the

16  fact, and it's very easy to make these kinds of charges.

17      But we see how simple this -- this is -- I mean, how easy

18  it is for confidential -- this type of thing to happened.

19          THE COURT:  Apple and Nokia may ultimately regret what

20  they asking for here, is what you're really saying.

21          MR. QUINN:  Look, you know, I don't wish this on

22  anybody, to tell you the truth, even them.

23          THE COURT:  Fair enough.

24                  (Pause in proceedings.)

25          MR. QUINN:  We did -- We did send a letter to the ITC