# Exhibit 1

RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, CA 94025
Telephone:     650-838-2000
Facsimile:     650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:     404-881-7000
Facsimile:     404-881-7777

Attorneys for Non-Party
NOKIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>               Plaintiff,<br>      v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>               Defendants. | Case No.:   5:11-CV-01846-LHK (PSG)<br>                  5:12-CV-00630-LHK (PSG)<br><br>**NOKIA'S MEMORANDUM ON SAMSUNG'S PROTECTIVE ORDER VIOLATIONS**<br><br>**FILED UNDER SEAL** |

Case No. 11-cv-01846/12-cv-00630
NOKIA'S MEMORANDUM ON SAMSUNG'S PROTECTIVE ORDER VIOLATIONS

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF FACTS.................................................................................................... 1

III.  ARGUMENT ........................................................................................................................ 9

    A.  The Improper Dissemination of Nokia's Confidential Information was More Extensive than Samsung Previously Represented....................................................... 9

    B.  The Documents Ordered by the Court to be Produced Should be Delivered Without Delay, and the Depositions Completed Immediately Thereafter. ............... 9

    C.  Samsung Has Failed to Comply with the Stipulated Order. .................................... 10

    D.  As Immediate Next Steps, Samsung and Quinn Emanuel Should be Ordered to Comply *Immediately and Fully* with the Existing Court Orders. ....................... 11

    E.  Other Immediate Relief is also Appropriate............................................................ 12

IV.   CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Cases

*Primetime 24 Joint Venture v. Echostar Comm'ns Corp.*, No. 98-cv-6738, 2000 WL 97680 (S.D.N.Y. Jan. 28, 2000) .................................................................................................... 13

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 2013 WL 5227079 (9th Cir. 2013) .... 12

I.   INTRODUCTION

Nokia's confidential business information was more broadly disseminated and used, both within Samsung and Samsung's worldwide external counsel network, than previously represented to the Court.   Samsung's response has been to block the parties and the Court from understanding the scope of the misuse.

While Samsung does not deny the material facts that formed the basis for Nokia's initial Motion, Samsung and its counsel have ignored the obligations imposed by this Court's Order of October 2.   Samsung still has failed to produce documents.   Samsung has proffered a willfully ill-prepared Court Ordered Rule 30(b)(6) witness to offer scant testimony as to the "dissemination of and use by Samsung of the confidential information."   Samsung's counsel has actively managed and coached other witnesses to avoid describing what happened.   Finally, Samsung has simply decided that the Court's stipulated Order does not actually compel Samsung to do anything and they have thus decided to do nothing in furtherance of the Stipulated Order.

Immediate steps need to be taken to ensure compliance with the Court's October 2 Order and the Stipulated Order, including completion of the discovery that Samsung and its lawyers have obstructed.   In addition, the Court must confront the abuse of the attorney-client privilege asserted by Samsung.

II.   STATEMENT OF FACTS

**Disclosure of Confidential Nokia – Apple License Terms in Teece Report.**   In March 2012, a discussion of the specific financial terms of the Nokia license was contained in the report of a Samsung's damages expert, Dr. David Teece (Exh. 2).[1]   According to Quinn Emanuel, an associate at the firm failed to properly to redact the report for in-house Samsung counsel and other

---

[1] Documents cited as "Exh." are attached to the Declaration of Ryan Koppelman, filed herewith.

Samsung employees under the Protective Order (Exh. 2).  Quinn Emanuel acknowledges that the specific financial terms of the Nokia license, along with those of licenses between Apple and four other companies, were disclosed to legions of Samsung employees and other law firms (*id*.).

**Improperly Redacted Teece Report Disclosed to Samsung and Others.**  Quinn Emanuel has represented that a copy of the Teece report, apparently in draft form, was sent by Quinn Emanuel attorney Eric Wall to internal Samsung employees and to two individuals at the British law firm Bristows on March 21, 2012 (Exh. 3).  Neither the Samsung employees nor the Bristows attorneys were authorized to receive "outside counsel only" information under the Protective Order.  On March 22, 2012, Attorney Wall also sent an attachment entitled "SAMSA RAND and Reasonable Royalties" to Samsung employee and attorney Daniel Shim, as well as to Bristows (Exh. 4).  It appears that this attachment and its transmission email disclosed confidential information (Exh. 5).  Samsung's 30(b)(6) witness, Ken Korea, claimed he lacked the knowledge to testify about the document and whether it contained any Nokia confidential information   (Korea Dep. 155:17-25).[2]

On March 24, 2012, Quinn Emanuel attorney Todd Briggs provided over fifty Samsung employees with the instructions and authorization to access the improperly redacted Teece report (Exh. 6).  One of those employees was Samsung attorney Daniel Shim (*id*.).  Two days later, Mr. Shim emailed the FTP link to Bristows, which placed the Teece Report on its extranet for the next 16 months, where it was accessed by at least 13 individuals on 12 occasions (Exh. 3).  Between then and October 2012, it appears that there were more than 30 transmissions of the partially redacted Teece report among Samsung employees and other law firms including three British firms and an Italian firm (Exh. 7).

---

[2] Nokia understands that counsel for Apple will submit the deposition transcripts of the Samsung witnesses in their entirety.  Nokia respectfully refers the Court to those transcripts.

**The December 2012 and May 2013 Teece Report Disclosures.**  The partially redacted Teece report was sent on December 21, 2012 (December 22 in Korea) by Quinn Emanuel attorney Guy Eddon to Daniel Shim, the same Samsung employee who had forwarded the report to Bristows nine months earlier (Exh. 3).   According to Quinn Emanuel, an unnamed attorney (but not Mr. Eddon) realized the report was improperly redacted and contacted Mr. Shim to inform him of the error and to ask him to delete the tainted attachment, and Mr. Shim complied (Exh. 8).[3]

When asked when he became aware that Nokia's confidential information had been disseminated to Samsung, Mr. Shim answered: "I'm not going to be absolutely accurate, but I feel comfortable enough saying summer of this year, one of the summer months, 2013" (Shim Dep. 223:23-224:3.)   He recalls learning this fact only in connection with a litigation hold notice (*id*. at 224:4-15).   He does not recall instructions from Quinn Emanuel in December 2012 to delete any email attachment (*see id*. at 225:23-226:4).

Five months later, after the instruction to delete the Teece report, he forwarded yet another copy to 3 additional Samsung employees (Exh. 9; *see also* Exh. 2).   Mr. Shim transmitted a copy of the Teece report back to Quinn Emanuel (Exh. 10).   Mr. Korea, Samsung's 30(b)(6) witness, could not explain the inconsistency between Mr. Shim's testimony and the Quinn Emanuel representations (Korea Dep. 239:20-242-9).    Even now, Mr. Shim denies knowing that the Teece report disclosed the financial terms of the Nokia license (Shim Dep. 223:13-22).   Mr. Shim also denied there was any breach whatsoever in any transmission or use of the financial terms of the Nokia license (*see id*. at 30:18-31:12; 32:3-13).

---

   [3]   In reporting this event, the Quinn Emanuel letter failed to identify either Mr. Eddon or Mr. Shim, but those identities appear to have been confirmed by Samsung's 30(b)(6) witness (*see* Korea Dep. 217:2-17).

Exhibit 3 to Mr. Korea's deposition, prepared by Quinn Emanuel for the 30(b)(6) deposition, shows that at least 70 Samsung employees had access to the Teece report, and that it was transmitted or re-transmitted many times over (Exh. 5).   In addition, over the course of the last week Samsung disclosed that the Teece report was transmitted to at least 5 new law firms or consultants (none authorized under this Court's protective order), for a total of 17 external legal counsel or consulting firms (Exh. 7).   At least two of the outside firms placed the documents on intranets or in data rooms (Exhs. 11, 12).

The improperly redacted Teece report also appears to have been sent to and by the Williams & Connolly firm on multiple occasions, starting in February 2013 (Exh. 13).   Williams & Connolly filed an appearance in the 630 Action, but did not do so until May 2013.   Williams & Connolly also represents Samsung in Samsung's current license negotiations with Nokia (Kwak Dep. 47:18-48:1).   Furthermore, it appears that Williams & Connolly, after receiving the partially redacted Teece Report from Quinn Emanuel on February 1, 2013, subsequently produced a memo for Samsung titled "Nokia-Apple License Memo.DOCX" on March 31, 2013, which was circulated to the Samsung employees in charge of negotiating with Nokia, including specifically Mr. Kwak (Exh. 14).

**The ITC Brief.**   In March 2013, Apple and Samsung were parties to Investigation No. 794 in the ITC.   Quinn Emanuel prepared briefing addressing whether a remedy of excluding Apple products was appropriate.   The draft brief they prepared disclosed the financial terms of the Nokia license (Exh. 15) and it too was sent improperly redacted by Quinn Emanuel to Samsung employees on March 23, 2013 (*id*.).   The ITC brief, like the Teece report, rapidly flowed among Samsung employees and outside counsel in March and April of 2013 (Exh. 7).   Seventy-one individuals within Samsung received the document, and it was transmitted or re-transmitted internally numerous times.

**The Samsung Negotiating Team and the ITC Brief.**   On March 25, 2013, a Samsung engineer-lawyer named InDong Kang, who worked for Dr. Ahn in the IP Center in licensing, sent the ITC Brief to both Dr. Ahn and James Kwak (Exh. 16; Ahn Dep. 34:24-35:1).   The text of the email has been redacted by Samsung, but it appears to be very short (*id*.).   Neither Dr. Ahn nor Mr. Kwak could explain why these three individuals received the email or its attachment (Ahn Dep. 33:15-35:15; Kwak Dep. 172:11-13).   Mr. Kang has not been deposed yet.[4]   Apple and Nokia both noticed Mr. Kang's deposition, but Samsung declined to make him available for deposition.

Samsung has steadfastly refused to disclose any details about this email exchange.   But these three persons – Dr. Ahn and Messrs. Kang and Kwak – do have one thing in common: these were the same three who met with Nokia representatives in Seoul on June 4, 2013 when Nokia was first alerted to the improper disclosure of Nokia's confidential licensing information.

**The June 4, 2013 Nokia-Samsung Negotiations.**   According to Dr. Ahn, in the first part of 2013, negotiations for a license between Samsung and Nokia were not progressing (Ahn Dep. 124:13-16).   Dr. Ahn decided to get personally involved and, together with Mr. Kang and Mr. Kwak, formed the team that would try to make a breakthrough in the Nokia negotiations (*id*. at 67:4-13).

The Court recounted Mr. Melin's clear testimony regarding the June 4 meeting in its October 2 order (Case No. 5:11-cv-01846, Dkt. No. 2483 at 5).   Mr. Melin explained that Dr. Ahn announced that he knew the financial terms of the Nokia license; that he recited specific terms;

---

[4]   As discussed below, the 30(b)(6) witness (and the Quinn Emanuel lawyer who represented him), claimed that the question of what use might have been made by these three individuals in the Nokia license negotiations was not within the scope of the 30(b)(6) topics the Court ordered on October 2 as well as privileged under the theory that Mr. Kang is a lawyer. (*see* Korea Dep. 254:6-260:24).

that the license had been produced in litigation to Samsung's outside lawyers; that "all information leaks"; and that the terms of the Nokia-Apple license should dictate the terms of the Nokia-Samsung license (*id.*).

When he finally testified, Dr. Ahn did not deny these facts except in one area.   First, Dr. Ahn admitted that he said he knew the terms of the Apple-Nokia license:

> Q.  Dr. Ahn, is it true that in the June 4th, 2013, meeting you informed Nokia that the terms of the Apple-Nokia license were known to you?
>
> A.  I don't know if I said that they were known to me, but what I did say to them was what my estimate -- about -- was about my estimation.
>
> Q.  Do you deny having informed Nokia that the terms of the Apple-Nokia license were known to you?
>
> A.  I don't know as to exactly what I said or didn't say, but I do grant you that I did act as though I was in the know. I was pretending, yes.

(Ahn Dep. 93:22-94:7.)   Second, Dr. Ahn admitted to quoting specific figures:

> [Q.]  Is it true that in the June 4th, 2013, meeting you recited terms from the Apple-Nokia license?
>
> MR. QUINN: Objection. Calls for speculation. Lacks foundation.
>
> THE WITNESS: As I mentioned earlier, I referenced numbers.

(*Id*. at 95:13-18.)   Third, Dr. Ahn did not deny saying, in substance, "all information leaks:"

> Q.  Is it true that in the June 4th, 2013, meeting you told Nokia that, quote, "all information leaks"?
>
> A.  I do not recall ever uttering those very same words, but, on the other hand, I do think I said something that suggests -- is suggestive of a leak.

(*Id.* at 95:20-24.)

Fourth, Dr. Ahn did not deny that he connected the terms of the Nokia-Apple license to the Samsung-Nokia negotiations (Ahn Dep. 96:5-9 ("Q.  Is it true that in the June 4th, 2013, meeting you stated that the Apple-Nokia license terms would be relevant to the terms of a Samsung-Nokia license? A.  It doesn't seem to me that I ever said anything with *exactly* that in mind." (emphasis

added))).   The only portion of Judge Grewal's order containing Mr. Melin's statements that Dr. Ahn disputed expressly is a fact that is now undisputed: that the Nokia license was produced in discovery in litigation with Apple and its terms were disclosed to Samsung (*id*. at 95:2-5). Rather, Mr. Ahn claimed he had knowledge of the license from "multiple sources" (*id*. at 84:3-6).

**Samsung's Document Production.**   On Sunday, October 13, roughly 36 hours before the depositions, Samsung made a limited production of documents to Apple's counsel only. Samsung asserted that it would not obey the Court's order to produce the documents to Nokia without Apple's blessing (Exh. 17).   Samsung then conceded that not all the documents required Apple's approval, but refused to say why they would not produce those documents (Exh. 18). Finally, at 9 p.m. PDT, Samsung provided Nokia with FTP access to download only 62 documents (Exh. 19).   Just minutes before midnight on the first day of depositions (in which three witnesses had already been examined), Samsung produced additional documents, but acknowledged that it was still withholding documents that had been produced to Apple (Exh. 20).

As it turns out, production of the limited documents was virtually worthless because the content of every email and, in many instances, even the subject line was redacted (*e.g.*, Exh. 21). Even where the redacted information could not plausibly be privileged, such as communication from Samsung's lawyers to Dutch judges (Exh. 22), Samsung has refused to remove any of the redactions.

**The Unprepared 30(b)(6) Witness.**   On October 16, 2003, Samsung presented Kenneth Korea as its Rule 30(b)(6) designee on Samsung's use and dissemination of confidential information.   The preparation of the witness was intentionally limited in at least two key respects. First, the witness and his Quinn Emanuel attorney both claimed that any testimony about Dr. Ahn's knowledge or use of confidential information during the June negotiations was outside the scope of what was ordered (Korea Dep. 268:2-17; 269:79 (Quinn Emanuel attorney Kassabian:

1  "This [what Dr. Ahn said in the June meeting] absolutely is not within the scope of the 30(b)(6)

2  designation topic by its plain terms")).

3        Second, while the witness and his counsel touted the fact that he "interviewed" more than

4  80 persons and had Quinn Emanuel create binders (Korea Dep. 245:22-25; Exhs. 5, 23), the

5  interview questions were not designed to learn whether Samsung employees had been informed of

6  terms of the Nokia-Apple license.   For example, the very question – did you ever learn the terms

7  of the Nokia-Apple license – was never asked.   Rather, a series of 8 scripted questions were

8  carefully and consistently followed so that if the person being "interviewed" did not remember

9  seeing a specific email (which was not shown to the "interviewee"), all subsequent answers would

10  be "no" (Exhs. 5, 23).

11        **The Other Depositions Proceeded with Consistently Obstructive Behavior by**

12  **Samsung's Counsel.**   Apple and Nokia were able to depose five individuals: Mr. Shim, Dr. Ahn,

13  Mr. Kwak, Mr. Kim, and Mr. Chi, together with Mr. Korea, the 30(b)(6) witness.   The

14  depositions, however, were fraught with speaking objections with witness coaching and

15  instructions not to answer.   Indeed, Samsung's counsel spoke almost as much as the witness at

16  Korea deposition and took up almost as many lines of the transcript.   Many of the speeches were

17  intended to suggest to the witness how to answer the question.   For example, when asked if he

18  could explain the redactions on the documents, Quinn attorney Kassabian, in the course of a

19  speech lasting more than a minute, said "you know that Mr. Korea had absolutely nothing to do

20  with that because he is in-house counsel," and when the witness finally answered, he said (not

21  surprisingly), "I'm not the one who does redactions, so I cannot tell you why or how the

22  redactions were done" (Korea Dep. 116:16-118:13).

23        **Samsung Fails to Comply with Stipulated Order.**   At the October 2, 2013 hearing

24  before this Court, Samsung promised to substantially if not completely comply with the Stipulated

1  Order in three weeks (Exh. 24, Oct. 1, 2013 Hearing Tr. at 49).   When Nokia requested a

2  conference with Stroz Friedberg to assess the status of the work under the Stipulated Order in

3  order to provide a report to the Court, Quinn Emanuel refused to arrange such a conference and

4  warned Nokia counsel that it would be "inappropriate' for them to contact to contact Stroz

5  Friedberg (Exh. 25).   Samsung announced at the same time that it is unilaterally suspending its

6  performance under the Stipulated Order (*id.*).

## III. ARGUMENT

### A. The Improper Dissemination of Nokia's Confidential Information was More Extensive than Samsung Previously Represented.

Notwithstanding the obstructions of the discovery ordered by the Court, we have now learned that the confidential terms of the Nokia-Apple license, as well as other confidential terms of other Apple licenses, were more broadly disseminated both within Samsung and Samsung's worldwide external counsel network than previously represented to the Court.   The number of people who have had access to the protected information in violation of the protective order now seems to exceed 200 persons, more than 80 of them Samsung employees.   These Samsung employees, moreover, are in the greatest position to misuse the information, as they comprise the attorneys and engineers who manage the intellectual property weaponry of this technology giant.

The Court may ultimately be asked to fix a remedy to cure the harm from the Protective Order breach.   But before the Court can even consider doing so, we must complete the process of fact-finding.   To that end, there are specific tasks Samsung and Quinn Emanuel should complete immediately.

### B. The Documents Ordered by the Court to be Produced Should be Delivered Without Delay, and the Depositions Completed Immediately Thereafter.

First, the documents the Court ordered to be produced to Nokia should be produced without delay, and the depositions ordered should be completed immediately.   As documented above, Samsung and Quinn Emanuel violated this Court's October 2, 2013 Order by failing to

1  produce to Nokia's counsel all of the documents specified by the Order.   As of the filing of this

2  brief, for example, Samsung has *still* not produced to Nokia the Teece Report that was attached to

3  so many of the emails sent to Samsung and circulated around the globe.   Moreover, to the extent

4  *any* of the attachments to the emails have been produced, they are not in a form that allows one to

5  determine the emails to which they were attached, and none of the Samsung witnesses could

6

7  connect the attachments to the emails.   In short, we still do not know who sent what to whom.

8          Second, at least the depositions of Kwak, Ahn, Shim and Samsung's 30(b)(6) witness

9  should be reconvened.   Because none of the documents were produced in time for review before

10  the depositions, because many of the documents called for by the Order have still not been

11  produced to Nokia, and because the attachments that were produced are no connected to their

12  emails, it was impossible to obtain testimony from these key witnesses.   As recounted in detail

13  above, the 30(b)(6) deposition preparation was essentially a sham; the "interviews" were carefully

14  constructed so to allow Samsung to deny that 80-plus Samsung employees even opened the email

15  attachments (containing information of "keen interest" to the entire industry), much less

16

17  remembered using the information.   The 30(b)(6) witness must appear prepared to answer

18  meaningful questions about how the Nokia license information was disclosed and used.   In

19  addition, Indong Kang, the sender of the ITC report to Dr. Ahn and Mr. Kwak, and the third

20  member of the June 2013 Samsung negotiating team, should be ordered to appear for deposition.

21          **C.     Samsung Has Failed to Comply with the Stipulated Order.**

22          During the October 1, 2013, hearing, Samsung's lawyers earnestly promised their full

23  cooperation with the tasks set forth in the Nokia stipulation that this Court has now ordered (*e.g.*,

24  Tr. At 34:23-24 (Quinn attorney Estrich: ("We should have those declarations [called for by the

25  stipulation] within a matter of days"); *id*. 43:18-21 ("and there's been a tremendous effort going

26

27

28

on in Korea and in the United States to gather this information and to maintain an undated [sic] list of who's in possession or was a recipient of the e-mails or the FTP instructions")).

Samsung agreed, and the order now compels it, to use its best efforts to complete their initial obligations in the Stipulated Order within forty-five days.   Now, sixty four days later, Samsung has not completed a single task in the Stipulated Order.   Indeed, after its employees testified to the scope and extent of the Protective Order violations in depositions, Samsung has flatly repudiated the Stipulation, including destroying Nokia's confidential information in its possession after a preservation copy is made by Stroz Friedberg.   In response to a request to arrange a conference with Stroz Friedberg on the status of its collection efforts, Quinn Emanuel announced last night that it would not arrange a conference on the status of Stroz Friedberg's work and that Nokia's counsel was prohibited from contacting Stroz for such a conference (Exh. 25).

The repudiation of the Stipulation would be offensive enough if it were a mere agreement; but it was entered as an order of this Court.   As such, there simply is no excuse for violating it.

**D.     As Immediate Next Steps, Samsung and Quinn Emanuel Should be Ordered to Comply *Immediate and Fully* with the Existing Court Orders.**

With respect to the document production failures, Samsung should be ordered as follows: (1) to complete production of all documents responsive to the Court's October 2, 2013 Order to Nokia's counsel in the same form as they were produced to Apple, within 24 hours; (2) to produce within 48 hours all non-privileged email attachments, together with sufficient information to identify the emails to which they were attached, to counsel for Apple and Nokia.

With respect to failure to comply with the provisions of the October 2 Order, Samsung and Quinn Emanuel should be ordered as follows: (1) to produce within 5 business days a prepared 30(b)(6) witness to testify on all disclosures, transmissions, and uses *of any confidential information of Apple or Nokia, regardless of how is disclosed, transmitted or used*; (2) to produce within 5 business days Dr. Ahn, Mr. Shim, and Mr. Kwak for further deposition testimony, and

Indong Kang for a deposition, at location in the Northern District designated by counsel for Nokia and Apple.

With respect to the Stipulation and Order, Samsung and Quinn Emanuel should be ordered as follows: (1) pursuant to Paragraph 4, provide Nokia within 24 hours the declaration from one of the partners of the Quinn Emanuel firm reporting on its investigation of the dissemination and use of Nokia or Apple's information to other law firms; (2) pursuant to Paragraph 8, complete the review of Quinn Emanuel files within 48 hours and provide the appropriate report from Stroz by the same deadline; (3) pursuant to paragraphs 5, 6 and 7, produce within 5 business days the Stroz Friedberg document log including specifications of (i) word searching and (ii) analyses of all hard drives to track file locations and transfers; and (4) pursuant to paragraphs 5, 6 and 7, certify the completion of the document review and collection of preservation copies by Stroz within 15 business days.

While there is significant work yet to be done, as a result of Samsung's violation of multiple Court Order's as well at the provisions of the Stipulated Order entitling Nokia to fees, Samsung should be required to pay Nokia's fees and cost incurred as a result of these proceedings.

**E.     Other Immediate Relief is also Appropriate.**

Because of the redactions and spurious assertions of privilege, moreover, a process to promptly address the redactions in the emails that transmitted the Nokia license information needs to be implemented.   Samsung should not be permitted to assert that its conduct was not willful or harmful, while using privilege to block scrutiny of that conduct.   The privilege cannot be used in this way.   *E.g.*, *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 2013 WL 5227079, *8 (9th Cir. 2013) ("A party who affirmatively places its attorney-client communications at issue in a litigation implicitly waives the privilege.").   Furthermore, their privilege assertions are just wrong. *E.g.*, *Primetime 24 Joint Venture v. Echostar Comm'ns Corp.*, No. 98-cv-6738, 2000 WL

97680, *1 (S.D.N.Y. Jan. 28, 2000) ("As a general matter, communications by an attorney to a client conveying facts learned from public sources or otherwise are not protected.") Accordingly, the content of the emails and all attachments must be reviewed and produced to the extent they disclose confidential information of Nokia or Apple, or if they show use or knowledge of such. Nokia supports any procedure to resolve the privilege concerns, including in camera review of selected documents, the appointment of a Special Master, or both.

## IV.     CONCLUSION

It is abundantly clear that Samsung and Quinn Emanuel have flagrantly and extensively violated the Protective Order in this case, and they have caused the competitive harm the Order seeks to avoid.   It is equally clear that neither Samsung nor Quinn Emanuel can be relied upon to cooperate so that the Court can learn the full extent of the violations.   The orders Nokia asks this Court to enter here are the minimum necessary steps to bring a prompt and appropriate conclusion to these unprecedented and disturbing events.

DATED: October 21, 2013

*s/ Ryan W. Koppelman*
RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, CA 94025
Telephone:     650-838-2000
Facsimile:      650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:     404-881-7000
Facsimile:      404-881-7777

| | |
|---|---|
| 1 | Attorneys for Non-Party |
| 2 | NOKIA CORPORATION |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

- 14 -  Case No. 11-cv-01846/12-cv-00630
NOKIA'S MEMORANDUM ON SAMSUNG'S PROTECTIVE ORDER VIOLATIONS