1  HAROLD J. MCELHINNY (CA SBN 66781)
   hmcelhinny@mofo.com
2  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
3  RACHEL KREVANS (CA SBN 116421)
   rkrevans@mofo.com
4  ERIK J. OLSON (CA SBN 175815)
   ejolson@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
7  Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO ENFORCE PRELIMINARY INJUNCTION BOND**<br><br>Judge:   Hon. Lucy H. Koh<br>Place:   Courtroom 8, 4th Floor<br>Hearing: July 17, 2014, 1:30 p.m.<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

## I. INTRODUCTION

Samsung fails to satisfy its burden of establishing entitlement to any damages arising from the Court's preliminary injunction order as to the Galaxy Tab 10.1 ("Tab 10.1").

As a threshold matter, Samsung cannot establish that the Court's decision to enjoin the Tab 10.1 was wrongful, given the jury's finding that Samsung's sales of the Tab 10.1 were infringing (albeit under three patents other than the D'889). The jury awarded Apple $833,076 in damages for Samsung's infringement through sales of the Tab 10.1. (Dkt. 1931 at 16.) It would be inequitable and illogical to require Apple to pay damages to Samsung for a product that the jury determined Samsung had no lawful right to sell.

Nor can Samsung establish that it would have made and sold new Tab 10.1 devices during the injunction period. Months before the injunction went into effect, Samsung introduced a new model—the Galaxy Tab 2—to replace the Tab 10.1 and stopped selling new units of certain versions of the Tab 10.1. Despite announcing publicly that it was phasing out the Tab 10.1 in the months leading up to the injunction (Dkt. 1171 at 11), Samsung now contends that it is entitled to recover damages against Apple because it had a stockpile of parts that were allegedly "unique" to the Tab 10.1. But any scrapping of parts for the Tab 10.1 was not the result of the injunction. Samsung was already planning to stop selling the Tab 10.1 in the wake of the introduction of the Galaxy Tab 2, and inevitably would have been left with the same stockpile for which it now seeks recovery from Apple. Samsung has failed to present any evidence that it had no alternative but to scrap those parts *because* of the injunction. Rather, as Samsung concedes in its motion, the reason it could not use the parts was because the carriers preferred to sell the new Galaxy Tab 2, which had already been on the market for months before the injunction issued. Further, even if Samsung would have otherwise been making and selling new Tab 10.1 products during the injunction period, Samsung has not shown that it took steps to mitigate any potential losses by, for example, seeking to sell the parts back to its supplier or selling them to a wholesaler. Accordingly, Samsung has not proven that any losses it incurred for the unused parts were actually, necessarily, and proximately caused by the injunction.

Apple requests that the Court deny Samsung's motion and return the full amount of the

preliminary injunction bond to Apple.

## II. PROCEDURAL BACKGROUND

On June 26, 2012, the Court preliminarily enjoined Samsung from "making, using, offering to sell, or selling within the United States, or importing into the United States, Samsung's Galaxy Tab 10.1 tablet computer, and any product that is no more than colorably different from this specified product and embodies any design contained in U.S. Design Patent No. D504,889." (Dkt. 1135 at 7:21-25.) As a condition of the injunction, the Court required Apple to post a bond in the amount of $2.6 million. (Dkt. 1135 at 7:12-13.) Apple posted the bond on June 27, 2012, and the preliminary injunction went into effect. (Dkt. 1145.)

On August 24, 2012, a jury returned a verdict finding that Samsung's sales of the Tab 10.1 (WiFi) infringed Apple's '381, '915, and '163 patents, but did not infringe Apple's D'889 patent. (Dkt. 1931.) The Court dissolved the preliminary injunction on October 1, 2012. (Dkt. 2011.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) requires the posting of security by an applicant for an injunction. *See* Fed. R. Civ. P. 65(c). Generally, when an injunction has been dissolved, the bond should be released and returned in full to the posting party. Where a party has been "wrongfully enjoined," the party may be able to recover damages. Fed. R. Civ. P. 65(c). Regional circuit law governs the standards and procedures for executing on a preliminary injunction bond. *See AstraZeneca LP v. Breath Ltd.*, 542 Fed. Appx. 971, 975 (Fed. Cir. 2013) (nonprecedential) ("A bond amount is a procedural issue that is not unique to patent law, and so the law of the regional circuit applies.").

In the Ninth Circuit, the enjoined party has the burden to seek recovery against the bond. *See Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988), *abrogated on other grounds by Koch v. Hankins*, 928 F.2d 1471 (9th Cir. 1991). To meet its burden, the enjoined party must first establish that it was "wrongfully enjoined" and that it suffered damages as a result of the injunction. *Id*. A party is "wrongfully enjoined" when it ultimately "prevail[s] in the underlying litigation," *i.e.*, when it turns out the party enjoined "had the right all along to do what it was enjoined from doing." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th

1  Cir. 1994).

2  An enjoined party "may not demand damages on the bond simply because the injunction
3  was improperly granted." *Matek*, 862 F.2d at 733. Rather, the enjoined party must demonstrate
4  actual damages as a consequence of the injunction. *See id.*; *Buddy Sys., Inc. v. Exer-Genie, Inc.*,
5  545 F.2d 1164, 1169 n.10 (9th Cir. 1976) ("[W]rongful issuance is merely one element of a cause
6  of action on an injunction bond . . . . There also must be damages shown." (citations omitted)).
7  "If the enjoined party suffer[ed] no monetary damage, [it] may not recover on [the] bond . . . ."
8  *Id.*

9  The enjoined party must prove any damages to a reasonable certainty and is limited to
10 damages actually, necessarily, and proximately resulting from the effect of the injunction itself.
11 *See Matek*, 862 F.2d at 733; *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011)
12 ("Good reasons to deny recovery of all or a portion of the alleged damages would be that the
13 damages sought were unreasonable in amount or that a party failed to mitigate them."). The
14 Court has discretion in determining whether any damages should be awarded on the injunction
15 bond and the amount of those damages. *See Lawrence v. St. Louis-San Francisco Ry. Co.*, 278
16 U.S. 228, 233 (1929) (district court can "refuse to allow recovery of any damages, even if the
17 permanent injunction should be denied"); *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082,
18 1086 (S.D. Cal. 2003) ("Courts have discretion to deny recovery on the injunction bond even
19 though the injunction is wrongful.").

20 **IV.   ARGUMENT**

21 The Court should fully exonerate Apple's preliminary injunction bond because Samsung
22 has not established that it was wrongfully enjoined or suffered damages as a result of the
23 injunction period.

24     **A.   Samsung Was Not Wrongfully Enjoined.**

25 A party is "wrongfully enjoined" when it ultimately prevails in the "underlying litigation."
26 *Nintendo*, 16 F.3d at 1036. Here, Samsung did not ultimately prevail in the litigation as to the
27 Tab 10.1 because, while the injunction was based on Samsung's likely infringement of the D'889
28 patent, the jury ultimately found that the Tab 10.1 (WiFi) infringed ***three other*** Apple patents:

the '381, '915, and '163 patents. Because the jury found that the Tab 10.1 was an ***infringing product***, Samsung never had "the right all along to do what it was enjoined from doing," *i.e.*, sell the Tab 10.1 without permission from Apple. *Nintendo*, 16 F.3d at 1036.

Moreover, the jury awarded damages to Apple for Samsung's infringing Tab 10.1 sales. Apple is not aware of any case where an adjudged infringer was able to recover damages on a bond after being preliminary enjoined from selling the same product that was later found to be infringing. Awarding damages to Samsung, as the adjudged infringer, would be inequitable and illogical. *See Monroe Div., Litton Bus. Sys., Inc. v. De Bari*, 562 F.2d 30, 33 (10th Cir. 1977) ("Equity comes into play in determining whether there may be recovery [on a preliminary injunction bond] and the amount thereof.").

### B. Samsung Has Not Established That It Suffered Damages During The Injunction Period.

Even assuming that it was wrongfully enjoined, Samsung is not automatically entitled to damages. Rather, Samsung has the burden to prove that its alleged losses actually, necessarily, and proximately resulted from the effect of the injunction itself—and not something else. *See Matek*, 862 F.2d at 733; *Nokia*, 645 F.3d at 559. Samsung has not done so.

***First***, Samsung's request for damages rests on the assumption that, but for the injunction, it would have used component parts that it had stockpiled to make and sell new Tab 10.1 devices. But there is no evidence of that. Indeed, months before the injunction issued, Samsung had already introduced a successor product to the Tab 10.1—the Galaxy Tab 2—and had projected that the release of the new tablet product would cause all sales of the Tab 10.1 to "soon fall to zero." (Dkt. 1171 at 11.) Samsung has not provided any evidence that it actually intended to use the stockpiled[1] parts to make and sell new Tab 10.1 devices and that it discarded the parts because of the injunction. To the contrary, Samsung states that it scrapped the parts "because it knew [Verizon and U.S. Cellular] would be focusing their efforts on selling other, more recently

---

[1] Notably, Samsung has not identified when it purchased any of the components. Samsung does not even state that it intended to use the parts to make new Tab 10.1 products (as opposed to making repairs to existing products or something else).

APPLE'S OPPOSITION TO MOTION TO ENFORCE PRELIMINARY INJUNCTION BOND
Case No. 11-cv-01846-LHK (PSG)

4

released tablet products by the time the injunction was lifted." (Br. at 5:20-23.) But another, more recently released tablet was *already on the market* by the time the injunction was issued— the Galaxy Tab 2. (Dkt. 1964-2, 1964-3.) As the Galaxy Tab 2 was already being sold, Verizon and U.S. Cellular would not have been interested in selling new units of the out-of-date Tab 10.1. Samsung concedes as much. (Br. at 5:20-23.) Accordingly, Samsung's alleged costs had nothing to do with the injunction; rather, those costs arose from Samsung's business decision to phase out the Tab 10.1 and replace it with a newer product.

*Second*, Samsung has not proven the losses allegedly associated with its stockpiled parts with any certainty. *See Nintendo*, 16 F.3d at 1038 (damages must be established with "reasonable certainty"). The only evidence Samsung offers in support of its claim is a conclusory declaration that sets forth a list of component parts and the amount of the loss allegedly associated with each. (Dkt. 3112-4.) Samsung has not produced any invoices or other business records to substantiate these calculations. Nor has Samsung even provided unit information for the stockpiled components. It is therefore impossible to know the size of the stockpile, whether it is consistent across components, or whether Samsung has amassed a larger surplus of some parts as compared to others as the result of its own poor planning and is now trying to stick Apple with the costs.

*Third*, Samsung has not established that it "had no choice but to scrap" the unused parts. (Br. at 1:15.) To recover damages on the bond, Samsung must establish that it could not mitigate its losses. *See Nokia*, 645 F.3d at 559 (a "[g]ood reason[] to deny recovery of all or a portion of the alleged damages would be . . . that a party failed to mitigate them"). Although Samsung states that the parts "could not be used in any other product" (Br. at 1:14-15), it does not submit any actual evidence to support that broad assertion. The parts identified by Samsung are common parts in smartphone and tablet devices. For example, Samsung uses NAND flash memory drives in its Galaxy smartphones. (C.A. 12-630, Trial Exhibit DX489.072.) Samsung provides no evidence that it actually sought to mitigate any of its alleged damages by, for example, selling the unused parts to a wholesaler or back to the original supplier. Likewise, while Samsung states that it "believe[d]" that the carriers would not be interested in purchasing the Tab 10.1 (Br. at 5:20), Samsung provides no evidence that it actually sought to sell to the carriers and was rebuffed.

*Fourth*, Samsung's claim for $2.049 million based on unused components is unreasonable. Of the total bond ($2.6 million), Samsung had previously represented that the portion reflecting total damages for enjoining the 4G LTE-version of the Tab 10.1, *i.e.*, the entire device, was approximately ▓▓▓▓. (Br. at 2:21-23.) It is implausible that Samsung could incur ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court deny Samsung's motion, fully exonerate the $2.6 million preliminary injunction bond, and return it to Apple.

Dated: June 30, 2014

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: */s/ Mark D. Selwyn*
    MARK D. SELWYN

Attorneys for Plaintiff
APPLE INC.