# EXHIBIT A

I hereby certify that this paper is being transmitted via the Office electronic filing system in accordance with § 1.6(a)(4).

Dated: February 26, 2014                     Electronic Signature for Lisa Yadao: /Lisa Yadao/

Docket No.:  106842803600
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Ex Parte Reexamination of:
U.S. Patent No. 7,844,915

Control No.:  90/012,332                     Confirmation No.:  5963

Reexamination Filing Date:  May 30, 2012     Art Unit:  3992

Issue Date:  Nov. 30, 2010                   Examiner:  Michael J. Yigdall

For:  Application Programming Interfaces for Scrolling Operations

## APPEAL BRIEF

MS Ex Parte Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir/Madam:

    This is an appeal from the final Office Action dated July 26, 2013, and the Advisory Action dated November 20, 2013, rejecting claims 1-21 of U.S. Patent No. 7,844,915 (the "'915 patent"). A Notice of Appeal was filed on December 26, 2013.  As required under 37 C.F.R. § 41.37, this Brief is filed within two months of the filing of the Notice of Appeal.  The fees required under 37 C.F.R. § 41.20(b)(2) are submitted concurrently herewith.  This Brief contains items under the following headings according to § 41.37 and MPEP §§ 1205 and 2274:

I.      Real Party in Interest
II.     Related Appeals and Interferences
III.    Status of Claims
IV.     Status of Amendments
V.      Summary of Claimed Subject Matter
VI.     Grounds of Rejection to Be Reviewed on Appeal
VII.    Argument

sf-3384833

Control No.:  90/012,332                    2                    Docket No.:  106842803600

VIII.    Claims Appendix
IX.      Evidence Appendix
X.       Related Proceedings Appendix

Control No.:  90/012,332                     3                     Docket No.:  106842803600

# TABLE OF CONTENTS

I.      REAL PARTY IN INTEREST ...................................................................5

II.     RELATED APPEALS, INTERFERENCES AND JUDICIAL PROCEEDINGS .....5

III.    STATUS OF CLAIMS ............................................................................6

IV.     STATUS OF AMENDMENTS ...................................................................6

V.      SUMMARY OF CLAIMED SUBJECT MATTER ..........................................6

VI.     GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL ..........................8

VII.    ARGUMENT ......................................................................................10

    A.      Introductory Comments .................................................................10

    B.      Broadest Reasonable Construction of the "Distinguishing" Limitation .......10

        1.      Legal framework for claim construction...........................................10

        2.      The Examiner's construction of the "distinguishing" limitation is
                unreasonable. ......................................................................11

        3.      A person of ordinary skill in the art would interpret the
                "distinguishing" limitation as a test between one and more than one
                input. ..............................................................................16

        4.      Patent Owner's reexamination statements reinforce its interpretation
                of the "distinguishing" limitation...................................................18

    C.      Ground 4:  The Examiner Erred in Concluding that Claims 1, 5-8, 12-15, and
            19-21 Are Unpatentable over Nomura in View of Rubine. ..........................19

        1.      Claims 1, 5-8, 12-15, and 19-21, together .......................................19

        2.      Claims 8 and 12-14, separately:  Nomura does not disclose a machine
                readable storage medium with programming instructions that operate
                as required under all circumstances. .................................................23

        3.      Claims 5, 12, and 19, separately:  Nomura does not disclose
                "determining whether [an] event object invokes a gesture or scroll
                operation . . . based on receiving a drag user input for a certain time
                period." ..............................................................................24

    D.      Ground 1:  The Examiner Erred in Concluding that Claims 1, 5-8, 12-15, and
            19-21 Are Anticipated by Hillis.....................................................25

        1.      Claims 1, 5-8, 12-15, and 19-21, together .......................................25

2.      Claims 8 and 12-14, separately:  Hillis does not disclose a machine readable storage medium with programming instructions that operate as required under all circumstances. ................................................. 28

3.      Claims 5, 12, and 19, separately:  Hillis does not disclose "determining whether [an] event object invokes a gesture or scroll operation . . . based on receiving a drag user input for a certain time period." ........................................................................................... 29

E.      Grounds 2 and 5:  The Examiner Erred in Concluding that Claims 2, 9, and 16 Are Unpatentable over Hillis in View of Lira or Nomura in View of Rubine and Lira. .......................................................................................... 30

1.      Lira does not disclose the "distinguishing" limitation. ..................... 30

2.      Lira does not disclose "rubberbanding." ........................................... 30

3.      A person of ordinary skill in the art would not have been motivated to combine Lira with Nomura or Hillis. ................................................ 31

4.      Nomura in view of Rubine and further in view of Lira does not establish a *prima facie* case of obviousness. ..................................... 32

5.      Hillis in view of Lira does not establish a prima facie case of obviousness. ...................................................................................... 32

6.      Secondary considerations support a conclusion of non-obviousness. 32

F.      Grounds 3 and 6:  The Examiner Erred in Concluding that Claims 3, 4, 10, 11, 17, and 18 Are Unpatentable over Hillis in View of Makus or Nomura in View of Rubine and Makus. ...................................................................... 33

1.      Makus does not disclose the "distinguishing" limitation. ................. 33

2.      Makus does not disclose "attaching" scroll indicators. ................... 33

3.      A person of ordinary skill in the art would not have been motivated to combine Makus with Nomura or Hillis. ............................................ 34

4.      Nomura in view of Rubine and further in view of Makus does not establish a *prima facie* case of obviousness. ..................................... 34

5.      Hillis in view of Makus does not establish a *prima facie* case of obviousness. ...................................................................................... 35

6.      Secondary considerations support a conclusion of non-obviousness. 35

G.      Conclusion ................................................................................................ 35

VIII.   CLAIMS APPENDIX .......................................................................................... 1

IX.     EVIDENCE APPENDIX ...................................................................................... 1

X.      RELATED PROCEEDINGS APPENDIX ............................................................ 1

Control No.:  90/012,332                              5                              Docket No.:  106842803600

## I.      REAL PARTY IN INTEREST

The real party in interest for this appeal is Apple Inc. ("Patent Owner" or "Appellant"), with a principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## II.     RELATED APPEALS, INTERFERENCES AND JUDICIAL PROCEEDINGS

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, **Case No. 11-cv-1846 (N.D. Cal.).**  The '915 patent was one of three utility patents asserted at trial in *Apple Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.*, Case No. 11-cv-1846, in the Northern District of California.  On August 24, 2012, a jury found, *inter alia*, claim 8 of the '915 patent to be infringed by twenty-one different Samsung products and not invalid and awarded substantial damages.  On January 29, 2013, the district court denied Samsung's motion for judgment as a matter of law that claim 8 was not infringed or was invalid.  On November 18, 2013, the Federal Circuit vacated the district court's denial of Apple's request for a preliminary injunction based, in part, on Samsung's infringement of the '915 patent.  On November 12, 2013, a damages re-trial was held as to certain Samsung products that were found to infringe, *inter alia*, claim 8 of the '915 patent.  The jury again awarded damages on November 24, 2013.  The district court denied Samsung's motion for judgment as a matter of law as to the damages retrial on February 7, 2014.

*In the Matter of Certain Portable Electronic Devices & Related Software*, **Investigation No. 337-TA-797 (Int'l Trade Comm'n).**  On July 8, 2011, Apple filed a complaint against HTC Corp. (HTC) in the International Trade Commission (ITC) for infringement of the '915 patent, among other patents.  The ITC subsequently initiated an investigation on August 12, 2011.  On January 14, 2013, the full Commission determined not to review the Initial Determination dated December 13, 2012, and terminated the investigation pursuant to settlement.

*Apple Inc. v. HTC Corp.*, **Case No. 11-cv-611 (D. Del.).**  On July 11, 2011, Apple filed suit against HTC in the District of Delaware for infringement of the '915 patent, among other patents.

Control No.: 90/012,332                6                Docket No.: 106842803600

On November 13, 2012, the parties filed a joint stipulation of dismissal without prejudice, and the case was closed on November 16, 2012.

### III.    STATUS OF CLAIMS

Claims 1-21 were finally rejected and are pending on appeal.

### IV.    STATUS OF AMENDMENTS

No amendments have been filed in the course of this reexamination.

### V.    SUMMARY OF CLAIMED SUBJECT MATTER

The '915 patent includes three independent claims (1, 8, and 15), all three of which are on appeal.  The subject matter for each of the appealed independent claims, with supporting reference to the specification, is discussed below.  The supporting references to the specification are by way of example only and not an exhaustive listing for each independent claim.

Independent claim 1 (*see* Claims Appendix) is directed to a machine-implemented method for scrolling on a touch-sensitive display of a device.  ('915 patent at 8:4-6; FIG. 4.)  The method includes receiving a user input applied to the touch-sensitive display of the device.  (*Id.* at 12:29-30; FIGs. 1 and 4.)  The method further includes creating an event object in response to the user input. (*Id.* at 12:30-32; FIG. 1 (102).)  After creating the event object, the method includes determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation.  (*Id.* at 6:37-43, 12:29-34; FIG. 1 (106).)  Depending on the result of the determination, the method includes issuing a scroll or gesture call.  (*Id.* at 6:46-48; FIG. 1 (108).)  If a scroll call is issued, the method includes scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input.  (*Id.* at 6:48-53, 10:54-60; FIG. 1 (110).)  If a gesture call is issued, the method includes scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.  (*Id.* at 7:4-10, 13:36-40; FIG. 1 (112).)

Independent claim 8 (*see* Claims Appendix) is directed to a machine readable storage medium storing executable program instructions that, when executed, cause a data processing system to perform a method. ('915 patent at 4:61-5:2; FIG. 31 (3104) and FIG. 32 (3204).) The program instructions cause the system to receive a user input applied to the touch-sensitive display of the device. (*Id.* at 12:29-30; FIGs. 1 and 4.) The program instructions also cause the system to create an event object in response to the user input. (*Id.* at 12:30-32; FIG. 1 (102).) After the event object is created, the program instructions also cause the system to determine whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation. (*Id.* at 6:37-43, 12:29-34; FIG. 1 (106).) Depending on the result of the determination, program instructions also cause the system to issue a scroll or gesture call. (*Id.* at 6:46-48; FIG. 1 (108).) If a scroll call is issued, program instructions also cause the system to scroll a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input. (*Id.* at 6:48-53, 10:54-60; FIG. 1 (110).) If a gesture call is issued, program instructions also cause the system to scale the view associated with the event object based on receiving the two or more input points in the form of the user input. (*Id.* at 7:4-10, 13:36-40; FIG. 1 (112).)

Independent claim 15 (*see* Claims Appendix) is directed to an apparatus that includes means for receiving, through a hardware device, a user input on a touch-sensitive display of the apparatus. ('915 patent at 6:20-31; FIG. 4 (408), FIG. 31 (3105), and FIG. 32 (3212, 3216).) The apparatus includes means for creating an event object in response to the user input. (*Id.* at 4:56-5:2, 12:30-32, 20:20-49, 21:10-38, 22:5-16; FIG. 1 (102), FIG. 4 (408), FIG. 31 (3103-5), and FIG. 32 (3202, 3204, 3212, 3216).) The apparatus further includes means for determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation. (*Id.* at 6:37-43, 12:29-34, 20:20-49, 21:10-38, 22:5-16; FIG. 1 (106), FIG. 31 (3103-5), and FIG. 32 (3202, 3204,

3212, 3216).)  The apparatus also includes means for issuing at least one scroll or gesture call based on invoking the scroll or gesture operation.  (*Id.* at 6:46-48, 12:29-34, 20:20-49, 21:10-38, 22:5-16; FIG. 1 (108), FIG. 31 (3103-5), and FIG. 32 (3202, 3204, 3212, 3216).)  The apparatus further includes means for responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object.  (*Id.* at 6:48-53, 10:54-60, 12:29-34, 20:20-49, 21:10-38, 22:5-16; FIG. 1 (110), FIG. 31 (3103-5), and FIG. 32 (3202, 3204, 3212, 3216).)  The apparatus also includes means for responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.  (*Id.* at 7:4-10, 12:29-34, 13:36-40, 20:20-49, 21:10-38, 22:5-16; FIG. 1 (112), FIG. 31 (3103-5), and FIG. 32 (3202, 3204, 3212, 3216).)

Dependent claims 5, 12, and 19 (*see* Claims Appendix) are further directed to determining whether the event object invokes a scroll or gesture operation based on receiving a drag user input for a certain time period.  ('915 patent at 6:40-41, 10:54-60.)

Dependent claims 2, 9, and 16 (*see* Claims Appendix) are further directed to rubberbanding a scrolling region by a predetermined maximum displacement.  ('915 patent at 5:33-40.)

Dependent claims 3-4, 10-11, and 17-18 (*see* Claims Appendix) are further directed to attaching scroll indicators to the display in response to user input.  ('915 patent at 6:64-7:3; FIGs. 6A-6D.)

## VI.    GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL

The grounds of rejection on appeal are:

1. Ground 1:  Claims 1, 5-8, 12-15, and 19-21 are rejected under 35 U.S.C. § 102(e) as anticipated by U.S. Patent No. 7,724,242 ("Hillis").

Control No.:  90/012,332                           9                    Docket No.:  106842803600

2.  Ground 2:  Claims 2, 9, and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over Hillis in view of International Publication No. WO 03/081458 ("Lira").

3.  Ground 3:  Claims 3, 4, 10, 11, 17, and 18 are rejected under 35 U.S.C. § 103(a) as unpatentable over Hillis in view of U.S. Patent No. 6,757,673 ("Makus").

4.  Ground 4:  Claims 1, 5-8, 12-15, and 19-21 are rejected under 35 U.S.C. § 103(a) as unpatentable over Japanese Publication No. 2000-163031A (English Translation) ("Nomura") in view of Dean Harris Rubine, "The Automatic Recognition of Gestures," CMU-CS-91-202, December 1991 ("Rubine").

5.  Ground 5:  Claims 2, 9, and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over Nomura in view of Rubine and further in view of Lira.

6.  Ground 6:  Claims 3, 4, 10, 11, 17, and 18 are rejected under 35 U.S.C. § 103(a) as unpatentable over Nomura in view of Rubine and further in view of Makus.

Control No.: 90/012,332                    10                    Docket No.: 106842803600

## VII.   ARGUMENT

### A.   Introductory Comments

This appeal involves the construction of the phrase "distinguishing between a single input point . . . and two or more input points" (the "distinguishing" limitation), which appears in claims 1, 8, and 15 of the '915 patent.

The "broadest reasonable interpretation" standard applicable during reexamination requires that this limitation be interpreted from the perspective of one of ordinary skill in the art consistent with the specification. The Examiner's construction does not do this, instead focusing on the word "or" in isolation and ignoring its surrounding context. By ignoring the complete phrase's meaning to those of ordinary skill and the full intrinsic evidence, the Examiner's construction is unreasonable.

Properly construed, the "distinguishing" limitation refers to a test that distinguishes between one input and more than one input. This construction is consistent with the understanding of one of ordinary skill in the art, as Professor Scott Klemmer has explained after reviewing the plain claim language and the specification.

Each pending rejection of the claims of the '915 patent, at least in part, depends on the Examiner's faulty construction of the "distinguishing" limitation. Because that construction is incorrect, Patent Owner respectfully asks that the pending rejections be reversed.

### B.   Broadest Reasonable Construction of the "Distinguishing" Limitation

#### 1.   Legal framework for claim construction

During reexamination, claims are evaluated under the "broadest reasonable interpretation" standard. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984). This standard requires that the "words of the claim must be "given their plain meaning, unless [that] meaning is inconsistent with the specification." MPEP § 2111.01. The MPEP explains that the "plain meaning" of a term means "the ordinary and customary meaning given to the term by ***those of ordinary skill in the art*** at the

Control No.: 90/012,332 11 Docket No.: 106842803600

time of the invention." (emphasis added); *see also In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010) (vacating rejection based on "unreasonably broad" construction).

In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), the Federal Circuit enunciated the basic principles of claim construction. The inquiry begins by considering "how a person of ordinary skill in the art understands a claim term," as "patents are addressed to and intended to be read by others of skill in the pertinent art." *Id.* at 1313. The person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* The court in *Phillips* added that expert declarations "can be useful . . . to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art." *Id.* at 1318.

The *Phillips* court emphasized, however, that claim construction must not follow a "rigid algorithm." *Id.* at 1324. This is because "there is **no magic formula** or catechism for conducting claim construction." *Id.* (emphasis added); *cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007) (rejecting "rigid and mandatory formulas" in determining obviousness). Consistent with this admonition, the Patent Office cannot "dissect a claimed invention into discrete elements and then evaluate the elements in isolation." MPEP § 2103(I)(C). "Instead, the claim as a whole must be considered." *Id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981)). Applying the correct and flexible approach to claim construction under *Phillips* allows the focus to remain on the critical question, *i.e.*, "how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

> **2.** **The Examiner's construction of the "distinguishing" limitation is unreasonable.**

All independent claims of the '915 patent recite:

> determining whether the event object invokes a scroll or gesture operation by <u>distinguishing between a single input point</u> applied to the touch sensitive display that is interpreted as the scroll operation and

Control No.:  90/012,332                    12                    Docket No.:  106842803600

> two or more input points applied to the touch sensitive display that are
> interpreted as the gesture operation . . . .

('915 claims 1, 8, 15 (emphasis added).)  The Examiner interprets this limitation as disclosing two
"alternative" tests that are joined by the word "or."  (*See* Advisory Action at 5.)  According to the
Examiner, a device that distinguishes one input point from two input points, *or* that distinguishes
one input point from more than two input points, satisfies the limitation.  (*Id.* at 3.)  The Examiner
also interprets this limitation as satisfied by a device that *only* distinguishes two input points from
any other number of input points, whether one, three, four, or five.  (*Id.* at 6.)

The Examiner's interpretation is flawed for multiple reasons.  First, it applies a rigid formula
to interpret the word "or" without regard to its context within the entire claim.  Second, the plain
language of the claim requires "distinguishing between a single input point . . . and two or more
input points"— and not merely identifying two input points.  Third, the Examiner's construction
ignores the evidence demonstrating how one of ordinary skill in the art would read the claim.  Each
of these errors renders the Examiner's interpretation unreasonable.

> a.        *The Examiner applies a rigid formula to the meaning of "or."*

The Examiner's rejections are based on his mechanical interpretation of the isolated word
"or" in the "distinguishing" limitation, ignoring its context in the larger phrase.  Specifically, the
Examiner construes the word "or" as providing for alternative structures, relying heavily on *Brown
v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001) and *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d
1304 (Fed. Cir. 2002) for support.

In *Brown*, the Federal Circuit explained that, "[w]hen a claim covers several structures or
compositions, either generically or as alternatives, the claim is deemed anticipated if any of the
structures or compositions within the scope of the claim is known in the prior art."  *Id.* at 1351
(citations omitted).   From *Brown*, the Examiner deduces that the "distinguishing" limitation
provides two alternatives because it uses the word "or."  These alternatives are "two input points
and more than two input points."  (*See* Advisory Action at 5.)

sf-3384833

Control No.: 90/012,332                13                Docket No.: 106842803600

The Examiner misapplies *Brown*, which concerned claims to generic or alternative structures like Markush claims. The specific claims at issue in *Brown* were directed to a database containing "at least one of two-digit, three-digit, or four-digit year-date representations." *Id.* at 1352. Unlike the claims in *Brown*, the claims of the '915 patent do not involve a series of alternative structures. Instead, the phrase "two or more" is embedded within a larger phrase, *i.e.*, "distinguishing between a single input point . . . and two or more input points." As the plain language makes clear, the claim relates to the ***act of distinguishing*** between a single input point and two or more input points—not "two or more input points" by themselves.

*Schumer* also is readily distinguishable. Among other things, *Schumer* construes the term "or" in the context of a claim reciting "***one of the following elements*** is different . . ." and listing several alternatives separated by "or." *Schumer*, 308 F.3d at 1311. In *Schumer*, the context of the claim clearly indicates that only one of the listed alternatives must be present.

The principles of formal logic confirm the importance of considering the word "or" in its surrounding context, and not in isolation as the Examiner has done. De Morgan's law, for example, holds that the logical statement [*not (p or q)*] can be rewritten as [*(not p) and (not q)*]. In the limitations at issue, the word "or" is similarly embedded within a contrasting phrase, "distinguishing between a single input point . . . and two or more input points."

Applying De Morgan's law, the "distinguishing" limitation could be re-written as "distinguishing between a single input point and two input points *and* distinguishing between a single input point and more than two input points," without changing its meaning. *Cf. Vasudevan Software, Inc. v. MicroStrategy Inc.*, No. 11-cv-6637, 2013 WL 5288267, at *4 (N.D. Cal. Sept. 19, 2013) (applying De Morgan's law to a claim containing a negated "or" phrase). Because the entire "or" phrase (*i.e.*, "two or more input points") is used in logical contrast to another phrase (*i.e.*, "a single input point"), it does not set out alternative structures. Instead, a device performing this step would need to determine whether there was a single input point and not two or more, and vice versa.

sf-3384833

Control No.:  90/012,332                    14                    Docket No.:  106842803600

The Examiner's approach, which focuses on the word "or" in isolation, contradicts the MPEP's directive that Patent Office "personnel may not dissect a claimed invention into discrete elements and then evaluate the elements in isolation."  MPEP § 2103(I)(C).  Neither *Brown* nor the MPEP allow the Examiner to read the word "or" rigidly as always giving rise to alternative structures.  Instead, under *Phillips*, the meaning of the word "or" must be understood in light of the claim as a whole and cannot be deduced from a rigid formula.  The Examiner's construction, which formulaically interprets "or" as reciting alternative structures rather than considering its context in the claim as a whole, runs counter to the MPEP and *Phillips* and therefore is unreasonable.

> *b.*      *The Examiner's interpretation contradicts the plain language.*

The Examiner has also suggested that the "distinguishing" limitation can be satisfied by a device that distinguishes two input points from an arbitrary number of input points.  (*See* Final Office Action at 6.)  This interpretation contradicts the plain language of the claims, which require "distinguishing between a ***single input point*** . . . and ***two or more input points***"—and not distinguishing between "two input points" and "any other number."  The Examiner's construction, if accepted, would read "single input point" out of the claim entirely.

> *c.*      *The Examiner disregards the understanding of those of ordinary skill in the art.*

The Examiner's interpretation of the "distinguishing" limitation further ignores the evidence of how one of ordinary skill in the art would understand the claims.  As a result, the Examiner's interpretation fails to reflect the perspective of one of ordinary skill in the art.

During reexamination, Patent Owner provided a declaration from Dr. Scott Klemmer, formerly an Associate Professor of Computer Science at Stanford University and now with the University of California, San Diego.  Dr. Klemmer explained that one of ordinary skill in the art would understand the "distinguishing" limitation to describe an "algorithm  . . . [that] disambiguate[s] user input" into either a scroll or a gesture operation.  (*See* Klemmer Decl. ¶¶ 7-8.)  The algorithm works by distinguishing a user input of "one input point" from a user input of "more than one input point."  (*Id.* ¶¶ 8-9.)  Because the algorithm contemplates inputs greater than two, Dr.

Klemmer noted that "one of ordinary skill in the art **would not consider it reasonable**" to simply implement a test between one input point and two input points.  (*Id.* ¶ 14 (emphasis added).)

Dr. Klemmer also explained how the person of ordinary skill would interpret the word "or" in the "distinguishing" limitation.  According to Dr. Klemmer, the term "or" in "two or more" does not create "a palette of alternative options to implement."  (*Id.* ¶ 16.)  Instead, the term "is a component of an atomic test condition, namely, that any plurality of input points be interpreted as a gesture operation."  (*Id.*)  A person of ordinary skill intending to implement the "distinguishing" limitation would use this atomic test to distinguish a single input from more than one input.  (*Id.* ¶ 13.)  Such a person would *not* consider it reasonable to implement the "distinguishing" limitation using an "algorithm that interprets only a subset of the interval" as a gesture operation.[1]  (*Id.* ¶ 17.)

Professor Klemmer's understanding is not unique, as other academics have offered consistent interpretations of how a person having ordinary skill in the art would view the "distinguishing" limitation.  For example, Dr. Jason Nieh, a Professor of Computer Science at Columbia University, has explained that the "distinguishing" limitation cannot be satisfied by an algorithm that "distinguish[es] precisely between two input points and not two input points."  (Nieh Decl. ¶¶ 15-17.)  Dr. Karan Singh, a Professor of Computer Science at the University of Toronto, has also offered trial testimony that a device that performs a gesture operation (specifically, scaling) in response to precisely two input points, but scrolls on all other inputs, does not satisfy the "distinguishing" limitation.  (Response to Final Office Action at 7-8 (quoting excerpt of trial testimony of Dr. Karan Singh in *Apple Inc. v. Samsung Elecs. Co.*, No. C-11-01846 LHK, Aug. 17, 2012, vol. 11, p. 6624, 6-18).)

The Examiner completely ignored these understandings of those of ordinary skill in the art.  As for Dr. Klemmer specifically, the Examiner did not attempt to address accuracy of his statements regarding a skilled artisan's interpretation of the "distinguishing" limitation.  Nor did the Examiner attempt to offer his own independent evidence of how one of ordinary skill would read the claims,

---

[1] As Dr. Klemmer explained, a stored program (as in claim 8) must include instructions that can yield the required behavior in all instances.  A partial implementation of an algorithm that cannot respond to the full range of inputs would not meet the requirements of claim 8.  (*See* Klemmer Decl. ¶¶ 18-20.)

whether technical documentation or contrary expert testimony.  Instead, the Examiner simply disregarded Dr. Klemmer's declaration because it did not include specific cites to the specification—overlooking the fact that Dr. Klemmer's understanding was informed by his reading of the claims and specification.  (*See* Klemmer Decl. ¶ 3.)

It is black letter law that the perspective of the skilled artisan is central to the proper construction of the claims.  *See In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir. 1999) ("Although the PTO must give claims their broadest reasonable interpretation, this interpretation must be consistent with the one that those skilled in the art would reach.").  By ignoring how one of ordinary skill would read and implement the "distinguishing" limitation, the Examiner erred.

### 3.    A person of ordinary skill in the art would interpret the "distinguishing" limitation as a test between one and more than one input.

In contrast to the Examiner, a person of ordinary skill reading the claims, specification, and prosecution history would understand the "distinguishing" limitation to describe a test that distinguishes *one* input point from *more than one* input point for the purpose of invoking a scroll operation or gesture operation, respectively.  As Dr. Klemmer has explained:

> If one of ordinary skill in the art were asked to express the distinguishing limitation as pseudo-code, it would be reasonable to express the limitation as:
>
> if (1 input point) {interpret as a scroll operation}
>
> if (>1 input point) {interpret as a gesture operation}

(Klemmer Decl. ¶ 13.)  This pseudo-code distinguishes one input point from all numbers greater than one.  In other words, the limitation describes an "atomic test condition, namely, that any plurality of input points be interpreted as a gesture operation."  (*Id.* ¶ 16.)

This interpretation is fully consistent with the specification of the '915 patent.  The specification uses the phrase "two or more" interchangeably with the term "plurality."  (*Compare* '915 patent at 5:45-48 ("The gesture operations also include performing a rotation transform to

rotate an image or view in response to a user input having two or more input points."), *with id.* at 7:4-8 ("[G]esture operations include responding to at least one gesture call, if issued, by rotating a view associated with the event object based on receiving a plurality of input points in the form of the user input.").)  Because the inventors considered "two or more" and "plurality" to be equivalent in the context of the invention, the phrase "two or more" in the "distinguishing" limitation does not set out two distinct alternatives.

When describing the distinguishing step, the specification also describes a single test for differentiating one from two or more:

> The method 100 further includes determining whether the event object invokes a scroll or gesture operation at block 106.  For example, a single touch that drags a distance across a display of the device may be interpreted as a scroll operation.  In one embodiment, a two or more finger touch of the display may be interpreted as a gesture operation.

(*Id.* at 6:38-43.)  This test contrasts "a single touch" with "a two or more finger touch" to determine which operation to invoke.  The term "a two or more finger touch" describes a type of input, *i.e.*, more than one finger, rather than two different categories of input to be evaluated separately. Contrary to the Examiner's characterization, the specification thus ***does*** describe a gesture employing three or more inputs, as it falls within the category of "two or more finger touch."

The original prosecution history also confirms this one/more than one or "atomic test" construction.  The original Examiner of the '915 patent added the "distinguishing" limitation via an examiner's amendment.  In the Notice of Allowance that followed, the Examiner explained:

> [The cited references] fail to teach or suggest . . . distinguishing between __*a*__ single input point and __*a*__ two or more input points applied to a touch-sensitive display, wherein a single input point is interpreted as a scroll operation and two or more input points are interpreted as a gesture operation.

(U.S. Pat. App. No. 11/620,717, Notice of Allowance, July 16, 2010, ¶ 4 (emphasis added).)  The Examiner's paraphrasing of the claim language confirms that the "distinguishing" limitation makes a single distinction between a single input, on the one hand, and more than one input, on the other.

Dr. Klemmer's interpretation of "two or more" as describing an "atomic test condition" requiring "any plurality of input points be interpreted as a gesture operation" also is consistent with case precedent.  The Federal Circuit has repeatedly explained that the phrase "two or more" is equivalent to the single term "plurality."  *See, e.g.*, *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1328 (Fed. Cir. 2001) ("[W]e find no reason to give 'plurality . . . of projections' any definition other than its ordinary definition of 'two or more.'"); *cf. Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech. (USA) Inc.*, 542 F.3d 1363, 1384-85 (Fed. Cir. 2008) (using the terms "two or more," "plurality of," "multiple," and "at least two" interchangeably).  This confirms that the "distinguishing" limitation contrasts "two or more," *i.e.*, a "plurality," with a single input point.

### 4.     Patent Owner's reexamination statements reinforce its interpretation of the "distinguishing" limitation.

During these reexamination proceedings, Patent Owner has made multiple statements construing the "distinguishing" limitation and clearly disavowing any scope not covered by that construction.  (*See, e.g.*, Response to Non-Final Office Action at 6 ("[T]he claims require particularly identifying a single input point, when present."); Response to Final Office Action at 8-9 ("[A]ny reasonable interpretation of the distinguishing limitation requires an algorithm that interprets a single input point as a scroll operation and that interprets any input having greater than one input point . . . as a gesture operation.").)

These statements, which are part of the public record, inform the public's understanding regarding the broadest reasonable construction of the claims of the '915 patent.  *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (citing *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We have stated on numerous occasions that a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to

claim interpretation.")).  That these statements arose during reexamination does not detract from their persuasiveness as to the correct interpretation of the claims and the public's ability to rely upon them.  *See, e.g.*, *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1078 (Fed. Cir. 2003) (holding that statements during reexamination limited scope of unamended claims).  For this reason, as well, the Patent Owner's interpretation of the "distinguishing" limitation should be adopted instead of the Examiner's.

### C.      Ground 4:  The Examiner Erred in Concluding that Claims 1, 5-8, 12-15, and 19-21 Are Unpatentable over Nomura in View of Rubine.

Claims 1, 5-8, 12-15, and 19-21 were rejected under 35 U.S.C. § 103(a) as unpatentable over Nomura in view of Rubine.  Appellant respectfully requests reversal of the rejections for the following reasons, based on three groupings of the rejected claims:  (1) claims 1, 5-8, 12-15, and 19-21, together, (2) claims 8 and 12-14, separately, and (3) claims 5, 12, and 19, separately.

#### 1.      Claims 1, 5-8, 12-15, and 19-21, together

##### a.      *Nomura does not disclose the "distinguishing" limitation.*

Nomura does not disclose the "distinguishing" limitation, as it uses a different algorithm to distinguish the categories of inputs.  As Figures 33, 34, and 37 of Nomura illustrate, the device of Nomura only distinguishes between two input points and not-two input points.  In particular, it performs map operations such as zooming if and only if it detects ***exactly two*** input points.  For any other number of inputs (whether one or three or five), Nomura performs a scroll operation.

Restated, the device of Nomura treats one input point ***identically*** to three or more inputs.  (*See* Nieh Decl. ¶¶ 15-17.)  Notably, the device of Nomura is capable of identifying only two input points and cannot distinguish or identify other numbers.

Nomura's two/not two test differs from the '915 patent's one/more than one test.  One of ordinary skill implementing the device of Nomura would use a different algorithm to perform a scroll operation when one input is applied and a gesture operation when two input points are applied.  (Klemmer Decl. ¶ 14.)  The Examiner does not dispute that Nomura describes a two/not

Control No.:  90/012,332                      20                      Docket No.:  106842803600

two test, and not a one/more than one test.  (Final Office Action at 6.)  Because Nomura does not teach distinguishing between "a single input point" and "two or more input points," it does not disclose the "distinguishing" limitation required by all claims of the '915 patent.

> b.      *Nomura does not disclose an "event object."*

Each independent claim in the '915 patent requires "creating an event object in response to user input."  Other portions of the claim require further elements of an object-oriented software architecture, such as a "scroll call," a "gesture call," and a "view associated with the event object." (Claims 1, 8, and 15.)

Nomura does not disclose an event object or any of the other object-oriented elements of the claims.  Nomura nowhere discusses objects and calls, the hallmarks of an object-oriented architecture.  One of ordinary skill could implement the Nomura algorithms using any number of other approaches, such as procedural programming, functional programming, or raw assembly without any higher-level abstractions.  (*See* Nieh Decl. ¶ 19.)

Although acknowledging that Nomura does not disclose an event object (Final Office Action at 8), the Examiner argues that Nomura teaches scroll and gesture calls "in terms of calling at least one of a zoom-in processor 42, a zoom-out processor 44, a rotation processor 46 and a scroll processor 48 based on user input."  (*Id.*)  The Examiner does not explain, however, how Nomura's references to "processors" describe a scroll call or a gesture call.

As the plain language of claim 1 makes clear, a call is an object that can be issued and responded to.  A call therefore differs from Nomura's "processor," which performs actions. (Nomura ¶ 0055.)

> c.      *Rubine does not address the deficiencies of Nomura.*

Combining Nomura with Rubine does not remedy Nomura's deficiencies.  First, Rubine does not disclose the "distinguishing" limitation, and the Examiner does not argue otherwise.  (Final

Office Action at 42.)  Because Nomura does not teach the "distinguishing" limitation, the combination cannot render the claims obvious.

Second, the claims require an event object that responds to more than one user input, but neither Rubine nor Nomura discloses this.  Rubine describes three distinct systems:  MDP, GSCORE, and GDP.  The latter two employ an object-oriented framework, but respond only to "single-path gestures drawn with a mouse."  (Rubine at 163.)  Conversely, MDP can "respond to multiple-finger gestures input," but does not use an object-oriented framework.  (*Id.*)

Rubine therefore does not describe a system that is ***both*** object-oriented and responsive to multiple user inputs.  Recognizing that Rubine does not teach an event object that responds to multiple inputs, the Examiner turns to Nomura.  (*See* Final Office Action at 10.)  As discussed above, however, Nomura also does not disclose this.

Finally, Rubine does not disclose the claimed "gesture calls."  Rubine's object-oriented systems work only with "single-path" inputs.  In arguing that Rubine teaches "an object-oriented programming system for gestures," the Examiner cites only portions of Rubine relating to single-path gestural inputs.  (*See* Final Office Action at 9.)  In the claims of the '915 patent, however, "gesture calls" result only from multiple user inputs, while a single input results in a "scroll call." (*See* Claims 1, 8, and 15.)  Because the Examiner can point to no portion of Rubine that discloses the creation of a gesture call object in response to ***multiple*** inputs, the combination of Nomura and Rubine also is deficient.

> ### d.  *A person of ordinary skill in the art would not have been motivated to combine Nomura with Rubine.*

One of ordinary skill would not have been motivated to combine Nomura with Rubine, as the two references attempt to solve different problems using different trade-offs.  Nomura describes a closed, specialized hardware system.  A user of this system would be most focused on efficiency and performance.  Rubine, by contrast, describes a general purpose system that is capable of working with a variety of hardware input sources.  Unlike a user of Nomura, a user of Rubine's

Control No.: 90/012,332                      22                      Docket No.: 106842803600

system would prefer the flexibility that its object-oriented nature affords and accept the performance costs arising from the extra layers of abstraction.  (*See* Nieh Decl. ¶ 21).

The Examiner posits that Nomura's device might benefit from the use of Rubine's object-oriented programming to store and manage data in a structured way.  (*See* Final Office Action at 11.)  But computer systems can store and manage data in a wide variety of ways (*e.g.*, using structures) that avoid the costs of object-oriented programming.  Moreover, nothing in Nomura suggests any concerns regarding data management.

> e.      *Nomura in view of Rubine does not establish a prima facie case of obviousness.*

For the reasons stated above, Nomura and Rubine fail to disclose or suggest every limitation of independent claims 1, 8, and 15.  Moreover, the Examiner has not articulated a valid rationale for supporting a conclusion of obviousness, since a person of ordinary skill in the art would not have been motivated to combine Nomura with Rubine.  For at least these reasons, there is no *prima facie* case of obviousness with respect to independent claims 1, 8, and 15 and the claims that depend therefrom.

Appellant therefore requests that the Board overturn the rejection of the claims 1, 5-8, 12-15, and 19-21 for being unpatentable over Nomura in view of Rubine.

> f.      *Secondary considerations support a conclusion of non-obviousness.*

Secondary considerations, such as commercial success, the existence of a long-felt need for the invention, and copying of the invention, further support a finding of non-obviousness for claims 1, 5-8, 12-15, and 19-21.  *See Graham v. John Deere Co.*, 383 U.S. 1 (1966).

In the related *Apple v. Samsung* litigation, Patent Owner presented evidence at trial of the iPhone's commercial success and Samsung's efforts to copy it.  The jury's verdict and its large damages award in Patent Owner's favor were based, at least in part, on this substantial evidence.

Control No.:  90/012,332                23                Docket No.:  106842803600

The iPhone's commercial success and Samsung's copying both weigh strongly in favor of a finding of non-obviousness, as to warrant reversing the Examiner's rejections under Section 103.

> **2.    Claims 8 and 12-14, separately:  Nomura does not disclose a machine readable storage medium with programming instructions that operate as required under all circumstances.**

Independent claim 8 is directed to a machine readable storage medium storing executable program instructions that, when executed, cause a data processing system to perform a method. Claims 12-14 depend from claim 8.

As Dr. Klemmer notes, the proper, reasonable construction of the "distinguishing" limitation as a test between one and more than one input is particularly true for claims directed to a machine readable storage medium.  (Klemmer Decl. ¶¶ 19-20.)  One of ordinary skill would understand that the instructions stored on a medium according to claim 8 would have to include the predefined set of instructions that dictate the logic by which the computer operates under *all circumstances*, and not just in one given instance.  (*Id.*)  A medium storing instructions for performing *only a portion* of the "distinguishing" limitation (*e.g.*, interpreting one input point as a scroll operation and two input points as a gesture operation) would not reasonably meet the requirements of claim 8, which requires, *inter alia*, executable programming instructions for interpreting more than two input points (3 input points, 4 input points, etc.) as a gesture operation.  (*Id.*)

Accordingly, one of ordinary skill would find it unreasonable that an algorithm that provides only one of the required procedural calculations (*i.e.*, a gesture operation on two inputs, as in Nomura), but not the others (*i.e.*, a gesture operation on three inputs, four inputs, etc.) can satisfy claim 8's "distinguishing" limitation.  (Klemmer Decl. ¶¶ 16-20.)

As a consequence, Nomura and Rubine fail to disclose or suggest the "distinguishing" limitation of independent claim 8, from which claims 12-14 depend, in particular.  For this reason and the reasons discussed in Section VII.C.1, there is no *prima facie* case of obviousness with respect to claims 8 and 12-14.

Control No.: 90/012,332                    24                    Docket No.: 106842803600

Appellant therefore requests that the Board overturn the rejection of claims 8 and 12-14 for being unpatentable over Nomura in view of Rubine.

> **3.      Claims 5, 12, and 19, separately:  Nomura does not disclose "determining whether [an] event object invokes a gesture or scroll operation . . . based on receiving a drag user input for a certain time period."**

Dependent claims 5, 12, and 19 recite an additional limitation:  "determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period."

The Examiner contends that Figure 34 of Nomura discloses this limitation (Final Office Action at 13), but it does not.  The device of Nomura does not consider whether the contact point is moving until it has first determined whether there is "contact with two items."  Although Figure 34 refers to the consideration of the "passage of time," this consideration occurs only *after* the device has determined that there has been contact with two items and invoked the appropriate gesture.  Accordingly, Figure 34 of Nomura does not disclose the requirement that the determination as to a scroll or gesture operation be based on "receiving a drag user input *for a certain time period*."

The Examiner's attempt to rely on paragraph 193 of Nomura fares no better.  Paragraph 193 concerns whether to view discrete contacts as simultaneous (or not).  The paragraph does not describe using the duration of a particular contact, such as a drag input, to determine which gesture to invoke.

As a consequence, Nomura and Rubine fail to disclose or suggest "determining whether [an] event object invokes a gesture or scroll operation . . . based on receiving a drag user input for a certain time period," as recited in claims 5, 12, and 19.  For this reason and the reasons discussed in Section VII.C.1, there is no *prima facie* case of obviousness with respect to claims 5, 12, and 19.

Appellant therefore requests that the Board overturn the rejection of claims 5, 12, and 19 for being unpatentable over Nomura in view of Rubine.

sf-3384833

Control No.:  90/012,332                     25                     Docket No.:  106842803600

### D.    Ground 1:  The Examiner Erred in Concluding that Claims 1, 5-8, 12-15, and 19-21 Are Anticipated by Hillis.

Claims 1, 5-8, 12-15, and 19-21 were rejected under 35 U.S.C. § 102(e) as anticipated by Hillis.  Appellant respectfully requests reversal of the rejections for the following reasons, based on three groupings of the rejected claims: (1) claims 1, 5-8, 12-15, and 19-21, together, (2) claims 8 and 12-14, separately, and (3) claims 5, 12, and 19, separately.

### 1.    Claims 1, 5-8, 12-15, and 19-21, together

#### a.    *Hillis does not disclose the "distinguishing" limitation.*

Hillis cannot disclose the "distinguishing" limitation, as it does not distinguish one input point from more than one input point.  Hillis teaches a system for projecting images on a large, touch-sensitive surface and controlling the presentation of the images through gestures.  (Hillis at 1:29-31, 2:60-3:3).  The system interprets user gestures by "determin[ing] whether activity of the current [user] contact [with the table] matches a predetermined pattern."  (*Id.* at 7:46-47.)  The pattern may use any of a variety of factors, including position, movement, velocity, or force, to choose the operation from a dictionary of gestures.  (*Id.* at 7:51-54; *see also* Nieh Decl. ¶ 25.)

Hillis's high-level disclosure of a general gesture identification scheme does not teach the one/more than one algorithm of the '915 patent.  The Examiner alleges, however, that "a person of ordinary skill in the art would **infer** from these teachings that the number of input points, along with the movement, velocity and force of the input points, are the criteria by which scroll and gesture operations are determined."  (Final Office Action at 7 (emphasis added).)  Even assuming that such an inference was warranted (which it is not), the "distinguishing" limitation requires more than just using the number of input points as a criterion.  The inputs must be used in a specific way, *i.e.*, to distinguish one input from two or more.

Although the Examiner points to Hillis's examples of gestures (*e.g.*, panning by "drawing a finger across a display surface" (Hillis at 8:45-46) or zooming by "placing his fingertips on the display surface and moving them in an outwardly separating manner" (*id.* at 3:43-45)), Hillis nowhere discloses how to distinguish these or other gestures from each other.  The mere disclosure

Control No.: 90/012,332                    26                    Docket No.: 106842803600

of a scroll with one input, or a gesture with two inputs, is not a disclosure of an algorithm for "distinguishing a single input point . . . from two or more." Various algorithms might be used to achieve these results. For example, gestures could be associated with two inputs, and scrolls with any other number, just as in Nomura. Because Hillis offers no guidance as to how any inputs would be distinguished, it cannot anticipate the claims expressly or inherently.

b.    *Hillis does not disclose an "event object."*

Hillis does not disclose an event object or any of the other object-oriented limitations of the '915 patent. Hillis does not employ an object-oriented architecture or indicate an alternative preferred style. One of ordinary skill in the art therefore might implement the teachings of Hillis using any one of multiple alternative styles, such as procedural programming, message passing, or assembly code, without any higher-level abstractions. (*See* Nieh Decl. ¶¶ 26-27.)

Straining to locate object-oriented teachings in Hillis, the Examiner defines an "event object" as a "'package' of data representing the user input event." (Final Office Action at 15.) The Examiner then argues that Hillis's discussion of "machine-readable outputs" demonstrates an "event object."

Even accepting the Examiner's very broad construction of "event object" for the sake of argument, Hillis still does not disclose event objects for at least two reasons. First, Hillis suggests that the table sends information such as the "position history" or the "detected force" separately— and not together in a "package." (Hillis at 7:16-20, 7:42-45.) Second, Hillis does not explain how the transmitted information is organized, whether in a "package" or otherwise.

Hillis also does not disclose the other hallmarks of an object-oriented framework, such as a "view associated with the event object." While the Examiner posits that the "imagery" displayed in Hillis constitutes the view, (Final Office Action at 16), he does not explain how that imagery is capable of being associated with other objects. Accordingly, Hillis does not disclose the "event object" limitation.

sf-3384833

Control No.: 90/012,332                    27                    Docket No.: 106842803600

### c.     *Hillis does not disclose a touch-sensitive display.*

Independent claims 1 and 8 of the '915 patent recite "receiving a user input, the user input is one or more input points applied to the <u>touch-sensitive display</u> that is integrated with the device" (emphasis added).  Claim 15 similarly recites "receiving, through a hardware device, a user input on a <u>touch-sensitive display</u>" (emphasis added).

Hillis does not disclose this limitation.  Hillis describes a system that projects an image ***onto*** a touch-sensitive surface.  (*See* Hillis at 2:60-3:3, FIG. 1A, FIG. 1C).  The projector, not the surface, displays the image.  The touch-sensitive surface therefore is not a display.  (*See* Nieh Decl. ¶ 28.) Although the Examiner emphasizes that Hillis's abstract uses the phrase "touch-sensitive display," the specification makes clear that Hillis's display is ***not*** responsive to touch.  (*See* Hillis at 3:55-58 ("The displayed imagery is generated by a projector 23 locating above and projecting 24 downward onto the projection surface.").)

### d.     *Hillis does not disclose a device with an "integrated" display.*

Each independent claim of the '915 patent recites a "touch-sensitive display that is integrated" with the device, data processing system, or apparatus.  A person of ordinary skill in the art would consider a touch-sensitive display to be "integrated" with a device only if the two were combined in a single physical unit.  As the specification explains, "[i]n some embodiments, the display device and input device are *integrated* while in other embodiments the display device and input device are separate devices."  ('915 patent at 6:13-15.)  Consistent with this construction, the specification provides multiple examples of integrated touch-sensitive displays.  (*Id.* at FIGs. 4, 5A, 6A, 28, 29, 30A, and 30B.)

Hillis does not disclose an integrated system.  Instead, the described system involves multiple standalone components including a projector, a touch-sensitive surface, and a general-purpose computer.  (*See* Hillis at 2:63-65, FIG. 1A.)  Although these components are interconnected, they are not integrated into a single physical unit.

Control No.:  90/012,332                28                Docket No.:  106842803600

The Examiner argues, however, that the surface and computer are "integrated" with the display system merely because they are "***necessary*** components of the interactive display system 120." (Final Office Action at 17 (emphasis added).)  Implicit in the Examiner's argument is his construction of "integrated" as "necessary."  The Examiner's construction cannot be correct, as it finds no support in the claim language, specification, or prosecution history, and is inconsistent with the ordinary meaning of the term.  Under any reasonable definition of "integrated," Hillis does not disclose an "integrated" display.

> *e.       Hillis does not anticipate claims 1, 5-8, 12-15, and 19-21.*

For the reasons stated above, Hillis fails to disclose every limitation of independent claims 1, 8, and 15 and cannot anticipate those claims and the claims that depend therefrom.

Appellant therefore requests that the Board overturn the rejection of the claims 1, 5-8, 12-15, and 19-21 as being anticipated by Hillis.

> **2.       Claims 8 and 12-14, separately:  Hillis does not disclose a machine readable storage medium with programming instructions that operate as required under all circumstances.**

Independent claim 8 is directed to a machine readable storage medium storing executable program instructions that, when executed, cause a data processing system to perform a method. Claims 12-14 depend from claim 8.

As discussed above in Section VII.D.1.a, Hillis offers no guidance as to how any inputs would be distinguished.  Accordingly, Hillis does not disclose any programming instructions that dictate the logic by which the computer operates under ***all circumstances***, and not just in one given instance, for the same reasons discussed above with respect to Nomura in Section VII.C.2.

As a consequence, Hillis fails to disclose the "distinguishing" limitation of independent claim 8, from which claims 12-14 depend, in particular.  For this reason and the reasons discussed in Section VII.D.1, Hillis does not anticipate claims 8 and 12-14.

Control No.: 90/012,332                  29                  Docket No.: 106842803600

Appellant therefore requests that the Board overturn the rejection of claims 8 and 12-14 as being anticipated by Hillis.

> **3.**     **Claims 5, 12, and 19, separately:  Hillis does not disclose "determining whether [an] event object invokes a gesture or scroll operation . . . based on receiving a drag user input for a certain time period."**

Dependent claims 5, 12, and 19 each recite "determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period."

Hillis does not disclose this limitation.  Hillis's gesture matching dictionary uses a variety of information to determine which gesture to invoke, including "position, position history (movement), velocity, and force information."  (Hillis at 7:49-50.)  But Hillis nowhere discloses using a "drag user input" that lasts "for a certain period of time" to determine the type of gesture to invoke.

Although the Examiner points to Hillis's references to "movement" and "velocity" as allegedly disclosing this limitation, the Examiner never explains how this information describes a "drag user input for a certain period of time."  Instead, the Examiner implies that the duration of the drag above a certain time period does not constitute a limitation.  (*See* Final Office Action at 17.)  This cannot be correct, as it would read the phrase "for a certain time period" out of the claims.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim." (citations omitted)).

As a consequence, Hillis fails to disclose "determining whether [an] event object invokes a gesture or scroll operation . . . based on receiving a drag user input for a certain time period," as recited in claims 5, 12, and 19.  For this reason and the reasons discussed in Section VII.D.1, Hillis does not anticipate claims 5, 12, and 19.

Appellant therefore requests that the Board overturn the rejection of claims 5, 12, and 19 as being anticipated by Hillis.

sf-3384833

E.      **Grounds 2 and 5:  The Examiner Erred in Concluding that Claims 2, 9, and 16 Are Unpatentable over Hillis in View of Lira or Nomura in View of Rubine and Lira.**

Claims 2, 9, and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over Hillis in view of Lira, and as unpatentable over Nomura in view of Rubine and further in view of Lira.  Appellant respectfully requests reversal of the rejections for the following reasons, in addition to the reasons provided in Sections VII.C and VII.D, made with respect to the independent claims from which claims 2, 9, and 16 depend.

### 1.      Lira does not disclose the "distinguishing" limitation.

As stated above, none of Hillis, Nomura, or Rubine discloses the "distinguishing" limitation required by all claims.  Lira, which does not describe gesture recognition, also does not disclose this limitation.  The combination of these references therefore cannot render claims 2, 9, and 16 unpatentable.

### 2.      Lira does not disclose "rubberbanding."

Dependent claims 2, 9, and 16 of the '915 patent each recite "rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll."  The specification describes rubberbanding as setting a "predetermined maximum displacement when the scrolled region exceeds a display edge," which prevents a user from scrolling the content further.  ('915 patent at 5:36-39.)  Other aspects of scrolling include "bouncing a scrolled region in an opposite direction of a scroll when a scroll completes" and locking a scroll at a particular angle.  (*Id.* at 5:33-40.)

Lira generally teaches a method of reformatting content into columns for improved viewing on a small-sized display.  (*See* Lira at Abstract.)  As a user navigates the columns on the display, the method takes into account whether the user has exceeded a specified threshold.  If the user scrolls past that threshold, "the display is snapped to the adjacent or repositioned column."  (Lira at 15:27-28.)  Otherwise, the display "centers [on] the logical column."  (Lira at 15:24-25.)

Control No.: 90/012,332         31         Docket No.: 106842803600

Lira's recentering or "snapping" method does not disclose "rubberbanding," as it works in a fundamentally different way.  In the '915 patent, when a user exceeds a scrolling threshold, rubberbanding prevents scrolling further by setting a maximum displacement value for the scrolled content.  In the same scenario, however, Lira teaches that the screen should "snap" to the ***next*** region of content, *i.e.*, the adjacent column.  Lira's method therefore achieves the opposite effect from rubberbanding.

Lira also does not disclose what happens if the user tries to scroll past the end of the page. In the '915 patent, rubberbanding occurs when "a user scrolls content of the display[,] making a ***region past the edge of the content*** visible in the display." ('915 patent at 7:62-63.)  Although the Examiner argues that "'the region outside the content' is not a limitation of the claim" (Final Office Action at 18), the Examiner overlooks that rubberbanding is directed to and solves the specific problem of a user's scrolling to a region outside the content.  "Rubberbanding" therefore involves the edge of the content, and not internal edges such as Lira's column boundaries.

### 3. A person of ordinary skill in the art would not have been motivated to combine Lira with Nomura or Hillis.

A person of ordinary skill in the art would not have been motivated to combine Lira with Nomura or Hillis.  First, the method of scrolling disclosed in Lira is incompatible with that of either Nomura or Hillis. A downward motion in Lira results in the display of new content from below (*see* Lira FIG. 14B), while the same motion in both Nomura and Hillis results in the display of new content from above.  (*See* Nomura ¶ 0067; Hillis at 8:44-53.)

Second, Lira's recentering and snapping teachings relate to internal boundaries within the content.  But neither Hillis nor Nomura disclose internal features that would require recentering. Although the Examiner posits that "a logical boundary within the map" might serve this function (*see* Final Office Action at 20), neither Hillis nor Nomura disclose such a boundary.

Control No.: 90/012,332                    32                    Docket No.: 106842803600

4.    **Nomura in view of Rubine and further in view of Lira does not establish a *prima facie* case of obviousness.**

For the reasons stated above, Nomura, Rubine, and Lira fail to disclose or suggest every limitation of each of claims 2, 9, and 16.  Moreover, the Examiner has not articulated a valid rationale for supporting a conclusion of obviousness, since a person of ordinary skill in the art would not have been motivated to combine Nomura with Lira or Rubine.  For at least these reasons, and the reasons provided in Section VII.C, there is no *prima facie* case of obviousness with respect to claims 2, 9, and 16.

Appellant therefore requests that the Board overturn the rejection of the claims 2, 9, and 16 for being unpatentable over Nomura in view of Rubine and further in view of Lira.

5.    **Hillis in view of Lira does not establish a prima facie case of obviousness.**

For the reasons stated above, Hillis and Lira fail to disclose or suggest every limitation of each of claims 2, 9, and 16.  Moreover, the Examiner has not articulated a valid rationale for supporting a conclusion of obviousness, since a person of ordinary skill in the art would not have been motivated to combine Hillis with Lira.  For at least these reasons, and the reasons provided in Section VII.D, there is no *prima facie* case of obviousness with respect to claims 2, 9, and 16.

Appellant therefore requests that the Board overturn the rejection of the claims 2, 9, and 16 for being unpatentable over Hillis in view of Lira.

6.    **Secondary considerations support a conclusion of non-obviousness.**

Secondary considerations, such as commercial success, the existence of a long-felt need for the invention, and copying of the invention, support a finding of non-obviousness for claims 2, 9, and 16.  *See Graham v. John Deere Co.*, 383 U.S. 1 (1966).

In the related *Apple v. Samsung* litigation, Patent Owner presented evidence at trial of the iPhone's commercial success and Samsung's efforts to copy it.  The jury's verdict and its large

Control No.:  90/012,332  33  Docket No.:  106842803600

damages award in Patent Owner's favor were based, at least in part, on this substantial evidence. The iPhone's commercial success and Samsung's copying both weigh strongly in favor of a finding of non-obviousness, as to warrant reversing the Examiner's rejections under Section 103.

> **F.  Grounds 3 and 6:  The Examiner Erred in Concluding that Claims 3, 4, 10, 11, 17, and 18 Are Unpatentable over Hillis in View of Makus or Nomura in View of Rubine and Makus.**

Claims 3, 4, 10, 11, 17, and 18 are rejected under 35 U.S.C. § 103(a) as unpatentable over Hillis in view of Makus, and as unpatentable over Nomura in view of Rubine and further in view of Makus.  Appellant respectfully requests reversal of the rejections for the following reasons, in addition to the reasons provided in Sections VII.C and VII.D, made with respect to the independent claims from which claims 3, 4, 10, 11, 17, and 18 depend.

> **1.  Makus does not disclose the "distinguishing" limitation.**

Makus relates to the use of hierarchical data and does not discuss gesture recognition at all. Accordingly, it cannot disclose the "distinguishing" limitation.  The combination of Makus with Hillis or Nomura and Rubine therefore cannot render claims 3, 4, 10, 11, 17, and 18 unpatentable.

> **2.  Makus does not disclose "attaching" scroll indicators.**

Dependent claims 3, 4, 10, 11, 17, and 18 of the '915 patent each recite "attaching scroll indicators to" a content or window edge.  The specification indicates that scroll indicators are attached to the display in response to "user input in the form of a mouse/finger down," and fade out when "a mouse/finger up is then detected."  ('915 patent at 6:64-7:3.)

Makus, by contrast, discloses scroll bars that appear when there is more data included in a list "than can be displayed in the available space on display screen 28 at one time."  (Makus at 8:64-66.)  Unlike the '915 patent, Makus's bars do not appear dynamically when a user begins to scroll the content and therefore are not "attached."  For this reason, the combination of Makus with Hillis or Nomura and Rubine therefore cannot render claims 3, 4, 10, 11, 17, and 18 unpatentable.

Control No.: 90/012,332                    34                    Docket No.: 106842803600

### 3.     A person of ordinary skill in the art would not have been motivated to combine Makus with Nomura or Hillis.

A person of ordinary skill in the art would not be motivated to combine Makus with Nomura or Hillis. This is because neither Nomura nor Hillis require scroll indicators for navigation, as Makus teaches. (*See* Makus at 8:64-69.) Instead, Nomura contemplates a user navigating a map by scrolling with a gesture. (*See* Nomura at FIG. 8.) Likewise, Hillis teaches panning to navigate a map. (*See* Hillis at 8:45-46.)

Scroll indicators are often used on mobile devices to indicate a relative position to a user in a long document. This function is not as useful for maps, which do not have a fixed starting position and are not generally accessed sequentially. A person of ordinary skill therefore would not need to combine Makus with Nomura or Hillis in order to provide this functionality.

Contrary to the Examiner's contention, Hillis's "slider tool" does not justify combining it with Makus. (*See* Final Office Action at 23.) Hillis's slider tool does not relate to scrolling. Instead, it allows users to move between different *layers* of content, and not to scroll through a single layer. (*See* Hillis at 8:32-39.) As Hillis's slider bar does not indicate a scroll position, it cannot satisfy the "scroll indicator" claims.

### 4.     Nomura in view of Rubine and further in view of Makus does not establish a *prima facie* case of obviousness.

For the reasons stated above, Nomura, Rubine, and Makus fail to disclose or suggest every limitation of each of claims 3, 4, 10, 11, 17, and 18. Moreover, the Examiner has not articulated a valid rationale for supporting a conclusion of obviousness, since a person of ordinary skill in the art would not have been motivated to combine Nomura with Makus or Rubine. For at least these reasons, and the reasons provided in Section VII.C, there is no *prima facie* case of obviousness with respect to claims 3, 4, 10, 11, 17, and 18.

Appellant therefore requests that the Board overturn the rejection of the claims 3, 4, 10, 11, 17, and 18 for being unpatentable over Nomura in view of Rubine and further in view of Makus.

Control No.:  90/012,332                35                Docket No.:  106842803600

5.      **Hillis in view of Makus does not establish a *prima facie* case of obviousness.**

For the reasons stated above, Hillis and Makus fail to disclose or suggest every limitation of each of claims 3, 4, 10, 11, 17, and 18.  Moreover, the Examiner has not articulated a valid rationale for supporting a conclusion of obviousness, since a person of ordinary skill in the art would not have been motivated to combine Hillis with Makus.  For at least these reasons, and the reasons provided in Section VII.D, there is no *prima facie* case of obviousness with respect to claims 3, 4, 10, 11, 17, and 18.

Appellant therefore requests that the Board overturn the rejection of the claims 3, 4, 10, 11, 17, and 18 for being unpatentable over Hillis in view of Makus.

6.      **Secondary considerations support a conclusion of non-obviousness.**

Secondary considerations, such as commercial success, the existence of a long-felt need for the invention, and copying of the invention, support a finding of non-obviousness for claims 3, 4, 10, 11, 17, and 18.  *See Graham v. John Deere Co.*, 383 U.S. 1 (1966).

In the related *Apple v. Samsung* litigation, Patent Owner presented evidence at trial of the iPhone's commercial success and Samsung's efforts to copy it.  The jury's verdict and its large damages award in Patent Owner's favor were based, at least in part, on this substantial evidence.  The iPhone's commercial success and Samsung's copying both weigh strongly in favor of a finding of non-obviousness, as to warrant reversing the Examiner's rejections under Section 103.

G.      **Conclusion**

For the foregoing reasons, Appellant respectfully requests reversal of the rejections of claims 1-21 of the '915 patent.

Control No.:  90/012,332                         36                         Docket No.:  106842803600

Appellant authorizes the Commissioner to charge the cost of any petitions or fees due in connection with this filing to **Deposit Account No. 03-1952** referencing **Docket No. 106842803600**.

Dated:  February 26, 2014                              Respectfully submitted,

                                                        ___/Peter J. Yim/_____
                                                        Peter J. Yim
                                                          Registration No.:  44,417
                                                        MORRISON & FOERSTER LLP
                                                        425 Market Street
                                                        San Francisco, California  94015-2482
                                                        (415) 268-6373

sf-3384833