HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
MICHAEL A. JACOBS (CA SBN 111664)
mjacobs@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   11-cv-01846-LHK (PSG)<br><br>**APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (RE DOCKET NO. 3117), ORDER SETTING REASONABLE ATTORNEY'S FEES AND COSTS**<br><br>Judge:   Hon. Lucy H. Koh<br>Date:    August 28, 2014<br>Courtroom: |

## I. INTRODUCTION

Throughout the sanctions proceedings, Samsung and Quinn Emanuel attempted to conceal the full scope of their numerous Protective Order violations at every turn. They refused to provide even the most basic details regarding their treatment of Apple's confidential licenses—until the Court compelled them to do so through formal and costly discovery. They sought to hide their improper conduct behind a massive and grossly insufficient privilege log—resulting in multiple rounds of briefing and forcing Judge Grewal to review thousands of withheld pages *in camera*, many of which he concluded were not privileged. And they sought to shift focus away from their own wrongful behavior through demands for discovery from Apple and Nokia—much of which Judge Grewal denied as irrelevant, and the remainder of which only reinforced the conclusion that serious violations of the Protective Order had occurred.

Despite these efforts to obfuscate, Judge Grewal ultimately concluded that Samsung and Quinn Emanuel had violated the Protective Order **hundreds of times** between March 2012 and August 2013, by repeatedly disclosing Apple's confidential license terms to hundreds of Samsung employees and outside lawyers not under the Protective Order, and by failing to report known violations despite an obligation to do so "immediately." After finding that misconduct was a "conscious," "strategic," "blameworthy," and "willful failure," Judge Grewal sanctioned Samsung and Quinn Emanuel under Rule 37(b) of the Federal Rules of Civil Procedure by awarding Apple and Nokia the reasonable costs and fees that they had incurred during the protracted and laborious sanction proceedings.

In its present motion, Samsung and Quinn Emanuel do not contest Judge Grewal's well-supported conclusion that they violated the Protective Order on an enormous scale, or that sanctions are warranted as a result. Instead, they contend that the Court should reduce the sanctions award "by at least 50%" to "reflect Apple's and Nokia's lack of success and unnecessary work." That argument fails as a matter of law given that Rule 37(b)—which governs sanctions for protective order breaches—does not require apportionment of a sanctions award based on relative "success." It also fails as a matter of fact because, as Judge Grewal found, Apple *prevailed* on its motion for sanctions, and the large size of the award merely reflects the colossal amount of work

1  made necessary by the vast magnitude of Protective Order violations and Samsung's and Quinn
2  Emanuel's steadfast efforts to shield the full scope of their misconduct.  Therefore, because Judge
3  Grewal's sanctions award was not clearly erroneous or contrary to law, the Court should deny
4  Samsung's motion.

## II. BACKGROUND

### A. Nokia's Motion for a Protective Order

In June 2011, Apple and Nokia resolved their global patent litigation disputes by executing a Settlement Agreement and Patent License Agreement, the specific terms of which both parties treated and protected as confidential.  (Dkt. 2935 at 11-12.)  Apple produced that license during the course of discovery in this litigation with the designation "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," which, under the Protective Order, meant that the license and its contents could only be used in this litigation, and could only be shared with Samsung's outside litigation lawyers and experts who had agreed to be bound by the Protective Order.  (Dkt. 687 at 5, 11-12.)  Nevertheless, according to Nokia's Chief IP Officer, Paul Melin, during a June 2013 negotiation session, Samsung's most senior licensing executive, Dr. Seungho Ahn—who is not authorized to receive information designed as Highly Confidential under the Protective Order— stated that he knew the terms of the Apple/Nokia license through its production in this case.  (Dkt. 2935 at 2, 6; Dkt. 2374-2 at 6-7; Dkt. 2836-4 at 5-7; -630 Dkt. 647.)

Given these revelations, on July 1, 2013, Nokia filed a sealed motion for a protective order in the 12-cv-630 litigation, alleging that Samsung had improperly used Apple's and Nokia's confidential license information in an effort to secure more favorable terms from Nokia.  Less than two weeks later, Samsung and Quinn Emanuel admitted in a letter to Nokia that they had disclosed the terms of the Apple/Nokia license (in an improperly redacted expert report of Dr. Teece) to dozens of Samsung employees not under the Protective Order.  Despite an obligation under Section 16 of the Protective Order to report all known breaches "immediately," Samsung said nothing at the time to Apple.  In fact, Samsung and Quinn Emanuel attempted to prevent Apple (and the Court) from *ever* learning about the full scope of their misconduct by asking Nokia for permission to destroy all evidence relevant to their improper disclosures; but Nokia did not agree.

(Dkt. 2558-4.)

**B.     Apple's Motion for Sanctions**

After its disclosures to Nokia, Samsung continued to wait several additional weeks—i.e., until after expiration of the Presidential review period in the parties' ITC investigation (No. 337-TA-794), during which the U.S. Trade Representative was evaluating whether to grant Samsung an exclusion order against Apple's products—before informing Apple for the first time of the improper disclosures. (Dkt. 2374-5.) In response, Apple repeatedly asked Samsung to provide additional details concerning the improper disclosures, including information concerning the scope of Samsung's investigation and when Samsung first learned of its breaches, documents relevant to Samsung's disclosure of Apple's confidential information, and declarations confirming the use, if any, that Samsung had made of Apple's license terms. Apple also asked Samsung to describe the steps that it had taken to preserve documents relevant to its unauthorized disclosures. (Dkt. 2374-3 ¶ 8; Dkt. 2374-6 to 2374-9.)

After Samsung failed to provide meaningful responses to those questions, and represented that it had yet to take *any* steps to identify relevant documents or remediate its breaches, Apple filed a motion on August 23, 2013, in which it asked the Court to: (1) find that Samsung and Quinn Emanuel had violated the Protective Order governing this litigation; (2) order discovery directed to those violations; and (3) impose appropriate sanctions once the full extent of violations was known. (Dkt. 2374.) Samsung opposed that motion by arguing that no breach of the Protective Order had occurred, and that no discovery or sanctions were warranted. (Dkt. 2395; Dkt. 2485 at 28-32 (Samsung's counsel refusing to concede at the hearing "that there's even one violation" of the Protective Order).)

Judge Grewal disagreed with Samsung and Quinn Emanuel. In an Order dated October 2, 2013, he concluded that violations of the Protective Order had likely occurred, and that Samsung's and Quinn Emanuel's investigation was insufficient. As a result, he ordered Samsung to produce document and deposition discovery relevant to the unauthorized disclosures, authorized Nokia to participate fully in the proceedings, and set a further briefing and hearing schedule. (Dkt. 2483; Dkt. 2935 at 2 ("In light of the scant explanation and evidence proffered by Samsung, the court

APPLE'S OPPOSITION TO SAMSUNG'S MOTION FOR RELIEF FROM ORDER SETTING ATTORNEYS' FEES/COSTS
Case No. 11-CV-01846-LHK (PSG)

3

obliged, authorizing substantial document production and depositions.").) Samsung sought review of that ruling, but this Court affirmed it, noting that Judge Grewal's framework was a "highly appropriate and necessary mechanism for determining answers to basic questions that Samsung has been unable to provide," and that the "lack of information after three months [was] inexcusable, and necessitate[d] Court-supervised discovery." (Dkt. 2538 at 8-9.) That Court-ordered discovery ultimately revealed Protective Order violations on a far larger scale than Samsung had originally disclosed to Nokia, Apple, and the Court. (Dkt. 2935 at 4-6 (summarizing disclosure evidence).

### C. The Parties' Privilege Disputes

In response to the Court's October 2, 2013 Order, Samsung withheld a vast number of documents on attorney-client privilege and work product grounds, and ultimately produced a 739-page privilege log that failed to provide even the most basic information about the nature of the withheld materials (including, for example, the names of all recipients and the general subject matter of documents). That lack of disclosure resulted in multiple rounds of additional briefing and multiple additional hearings—during which Judge Grewal agreed that Samsung's "generic" privilege log was woefully insufficient, and that Samsung's lack of proper disclosure had "significantly" impaired Apple's and Nokia's ability to explore the Protective Order violations. (*E.g.*, Dkt. 2689 at 4 n.16 ("[T]he court thus far is unpersuaded that the generic statements in the log meet the burden required to claim [privilege and work product protection]. Specifically, many if not all of these documents do not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would have served as cause for the communication. … By maintaining these seemingly unwarranted claims, Samsung significantly burdens not only Apple and Nokia's ability to address the sanctions issue, but also the undersigned's ability to tell the full tale of what he has seen.").)

In fact, Samsung's disclosure was so lacking that Judge Grewal decided to conduct an *in camera* review of the more than 20,000 pages of withheld documents listed on Samsung's lengthy privilege log. (Dkt. 2935 at 3 n.12.) After completing that review, he warned Samsung to cease its overbroad claims of privilege: "The court will not tolerate further efforts to deny outside

counsel access to discovery not truly subject to privilege or work product protections." (Dkt. 2689 at 5.) Judge Grewal did not address Apple's and Nokia's arguments that Samsung had waived privilege and work product protection over all of its withheld materials, including under the crime-fraud exception, by selectively disclosing aspects of its withheld communications in declarations and other related statements, and by failing to comply with the disclosure requirements for its privilege log. (Dkt. 2557-04.)

### D.  Samsung's Demands for Discovery from Apple and Nokia

On October 29, 2013, Samsung filed a motion seeking to compel Apple and Nokia to produce documents and deposition discovery that, according to Samsung, would help it establish that it complied fully with the Protective Order. (Dkt. 2610.) Apple and Nokia opposed that request, but Judge Grewal allowed Samsung to take deposition testimony from them on a limited set of issues, and Apple and Nokia subsequently produced witnesses in response to that Order. (Dkt. 2689 at 4.) On March 5, 2014, Samsung filed a motion seeking to compel additional discovery and declarations from Apple and Nokia (Dkt. 2996; Dkt. 3009), but Judge Grewal denied those requests (Dkt. 3068; Dkt. 3111).

### E.  Judge Grewal's November 8, 2013 Order to Show Cause

After extensive discovery, multiple rounds of briefing, and several hearings, Judge Grewal issued an Order to Show Cause on November 8, 2013, in which he explained that "[h]aving finally crawled out from under the boxes [of Samsung's withheld documents], it appears to the undersigned that if anything was breached, it was this court's protective order, and that sanctions against Samsung and its attorneys are warranted." (Dkt. 2689 at 2.) Judge Grewal asked the parties to further brief whether Samsung and Quinn Emanuel should be sanctioned for "the pervasive distribution of [Apple's confidential license information] to Samsung employees who were not authorized to have access to it," for any "wrongful use" of that information, and for failure to follow the reporting provisions of the Protective Order. (*Id.* at 3-4.)

### F.  Judge Grewal's January 29, 2014 Sanctions Order

On January 29, 2014, Judge Grewal issued a nineteen-page Order finding that Samsung and Quinn Emanuel had violated the Protective Order on a massive scale—by providing Apple's

APPLE'S OPPOSITION TO SAMSUNG'S MOTION FOR RELIEF FROM ORDER SETTING ATTORNEYS' FEES/COSTS
Case No. 11-CV-01846-LHK (PSG)

5

1  confidential license information to **hundreds** of Samsung employees and lawyers not entitled to
2  receive that information under the Protective Order, and by repeatedly failing to provide Apple
3  with notice of breaches (that Quinn Emanuel first discovered as early as December 2012) based on
4  a "misplaced" hope that the problem would just "go away." (Dkt. 2935 at 13-18.)  Judge Grewal
5  concluded that a "1 lawyer deep" structure at Quinn Emanuel and "share-and-share-alike" system
6  within Samsung made these "significant" Protective Order violations a "predictable," "conscious,"
7  "strategic," and "blameworthy" result of a "willful failure to institute sufficient safeguards." (*Id.*
8  at 1, 11-16; *id.* at 13 (ruling "sanctions are warranted here due to the breadth/volume of violations
9  and the fact that Samsung and its outside counsel made a conscious decision to set up a system that
10 would allow violations of that scope to ensue").)

11       Judge Grewal further found that Daniel Shim, the Samsung in-house lawyer responsible for
12 the Apple/Samsung litigations, improperly received and "made use of" Apple's confidential
13 license terms, and that Samsung's conflicting denial of misuse during its license negotiations with
14 Nokia were "shaky" and "tenuous at best." (Dkt. 2935 at 4-6, 18 (summarizing unauthorized
15 disclosures to Mr. Shim and finding "the evidence has shown … that Shim made use of the
16 information"); *id.* at 14 ("[T]he court does not find Shim's explanation that he never used the
17 insufficiently redacted Teece Report credible."); *see id.* at 3 (expressing "doubt" Mr. Shim deleted
18 Apple's confidential information when instructed to do so); *id.* at 4 n.17 (discussing Mr. Shim's
19 conflicting deposition testimony regarding his knowledge of Apple's confidential license terms).)
20 However, Judge Grewal did not finding any additional violations of the Protective Order based on
21 this misuse. (Dkt. 2935 at 11.)

22       Nevertheless, Judge Grewal concluded that the many Protective Order violations that did
23 occur had caused "substantial harm to Apple and Nokia," regardless of whether any actual misuse
24 had also occurred. (*Id.* at 14 ("Even if others somehow missed the actual, unredacted information,
25 the fact of the matter remains that they had no right to have the information in the first place.  This
26 in and of itself was a substantial harm to Apple and Nokia.  Samsung's suggestion to the contrary
27 ignores its own stipulation to a protective order that prohibits 'disclosure' even without use."); *id.*
28 at 2, 19 (explaining "the harm suffered [by Apple and Nokia]" and "Apple and Nokia's harm").)

1  Therefore, "[t]o address such flaws [in Samsung's and Quinn Emanuel's treatment of
2  Apple's confidential information], abrogate the harm suffered, and discourage recurrence," Judge
3  Grewal granted Apple's motion for sanctions and awarded Apple and Nokia the reasonable
4  attorney's fees and costs that they had incurred in connection with the sanctions proceedings under
5  Fed. R. Civ. P. 37(b)(2).  (Dkt. 2935 at 2, 18.)  However, he declined to impose any of the
6  additional sanctions that Apple and Nokia had proposed, concluding that the sanctions award "in
7  addition to the public findings of wrongdoing, is, in the court's opinion, sufficient to both remedy
8  Apple's and Nokia's harm and to discourage similar conduct in the future."  (*Id.* at 19.)

9  **G.  Judge Grewal's June 20, 2014 Sanctions Award**

10  On June 20, 2014, Judge Grewal entered an Order setting the amount of the sanctions
11  award. (Dkt. 3117.)  In so doing, he rejected Samsung's argument "that the requested fees should
12  be reduced to reflect Apple's and Nokia's 'unnecessary work' and 'limited success'"—concluding
13  that the motion for sanctions was made necessary by Samsung's and Quinn Emanuel's Protective
14  Order violations and "insufficient" investigation and disclosures, that "Apple and Nokia had
15  concrete evidence indicating wrongdoing at the time that the motion was brought," and that Apple
16  prevailed on its motion and "Apple and Nokia succeeded on most of their claims" raised in the
17  sanctions proceedings. (*Id.* at 5-7.)  After reviewing all of the fee and cost entries that Apple and
18  Nokia proposed for reasonableness (which Apple had already reduced to eliminate certain fees and
19  costs), and after imposing a slight reduction for a small number of time entries (just two for
20  Apple), Judge Grewal ordered Samsung and Quinn Emanuel to pay Apple $893,825.77, and to pay
21  Nokia $1,145,27.95.  (*Id.* at 10.)

22  **III.  ARGUMENT**

23  In its motion, Samsung does not dispute that it and its lawyers violated the Protective Order
24  on an enormous scale, or that sanctions are warranted as a result.  Instead, Samsung only seeks
25  review of the amount of the sanctions award—which it contends should be reduced "by at least
26  50%" "to reflect Apple's and Nokia's lack of success and unnecessary work."  (Dkt. 3134
27  ("Mot.") at 5.)  The Court should reject that request for the five reasons set forth below,
28  particularly under the stringent "clearly erroneous"/"contrary to law" standard of review that

1  applies to this Court's review of Judge Grewal's sanctions rulings.  *See* Fed. R. Civ. P. 72.

2  ***First***, Samsung's motion rests on the premise that the Court must declare a winner and loser for *every issue* raised in *every brief* filed during the sanctions proceedings, and then limit the sanctions award solely to fees and costs that Apple and Nokia incurred while litigating the specific issues on which they achieved "success."  (Mot. at 5.)  That is not the law.  Federal Rule of Civil Procedure 37(b), which governs sanctions awards arising from violations of court orders, including protective orders,[1] expressly ***requires*** the Court to award Apple and Nokia "***the*** reasonable expenses, including attorney's fees" that they incurred while litigating Samsung's and Quinn Emanuel's violations of the Protective Order:

> *Payment of Expenses.*  Instead of or in addition to the orders above, the court ***must order*** the disobedient party, the attorney advising that party, or both ***to pay the reasonable expenses, including attorney's fees, caused by the failure***, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (emphases added).  Indeed, unlike otherسanctions provisions, Rule 37(b) does not provide for limiting sanctions awards to the specific issues on which the moving party had "success."  *See*, *e.g.*, Fed. R. Civ. P. 37(a)(5)(C) (providing that, when calculating a sanctions award arising from a motion to compel, courts "may … apportion the reasonable expenses for the motion" to account for any "denied in part" portions of the motion).

Ignoring the plain language of Rule 37(b), Samsung cites three cases in an attempt to argue that a sanctions award "is not 'reasonable' if it fails to account for a party's lack of success." (Mot. at 4.)  But ***none*** of those cases requires apportioning a sanctions award ***arising under Rule 37(b)*** based on "success" (or lack thereof).  *See Hensley v. Eckerhart*, 461 U.S. 424 (1983)

---

[1] *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (holding a "failure to obey the protective discovery order exposed counsel and *Falstaff* to liability under Rule 37(b)(2) for the resulting costs and attorney's fees"); *Life Technologies Corp. v. Biosearch Technologies, Inc.*, C–12–00852 WHA JCS, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012) ("Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f)."); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders.").  Judge Grewal cited Rule 37(b)(2) in his Order (Dkt. 2935 at 8-9), and Samsung's motion acknowledges that Rule 37(b)(2) governs the sanctions at issue here (Mot. at 4).

1  (awarding fees under the Civil Rights Attorney's Fees Awards Act of 1976, which provides that courts can apportion fee awards based on amount of success); *Keithley v. Homestore.com, Inc.*, No. 03-CV-4447, 2009 WL 55953, at *1, *3 (N.D. Cal. Jan. 7, 2009) (discussing apportionment under Rule 37(a)(5)(C), which as noted above, states that courts "may … apportion" a fee award if a motion to compel is "denied in part").[2] Samsung also cites *LifeScan Scotland, Ltd. v. Shasta Techs., LLC,* No. 11-CV-4494, 2013 WL 5949629 (N.D. Cal. Nov. 6, 2013), but the court in that case actually ordered the plaintiff to pay ***all*** of "the defendants' attorneys' fees incurred in connection with [plaintiff]'s violation of the Protective Order." *Id.* at *1. Samsung's own cases therefore confirm that it was not clearly erroneous or contrary to law for Judge Grewal to do the same thing here, particularly given the massive scale of Protective Order violations and significant additional work made necessary by Samsung's and Quinn Emanuel's obstructionist tactics.

***Second***, even if Samsung could import a new apportionment requirement into Rule 37(b), the record confirms that Apple ***prevailed*** on its motion for sanctions, in which it asked the Court to do three things: (1) find that Samsung and its lawyers violated the Protective Order; (2) order "further discovery to permit Apple to learn the full scope of the Protective Order violations"; and (3) issue sanctions "once the full scope of the Protective Order violations is known." (Dkt. 2374 at 1-2.) Apple unquestionably obtained "success" on all three issues: (1) Judge Grewal found that Samsung and Quinn Emanuel violated the Protective Order hundreds of times through unauthorized disclosures and multiple failures to report known violations, and found that Mr. Shim had misused Apple's confidential license information; (2) Judge Grewal and this Court ordered Samsung to produce the requested document and deposition discovery over Samsung's objections; and (3) Judge Grewal sanctioned Samsung and Quinn Emanuel with a fee/cost award

---

[2] Although the court apportioned a sanctions fee award in *Thai-Lao Lignite (Thailand) Co., v. Gov't of Lao People's Democratic Republic*, No. 10-CV-5256, 2012 WL 5816878, at *1-*2, *9 (S.D.N.Y. Nov. 14, 2012), it is unclear what sanctions rule the court was invoking in that case with respect to the apportionment aspect of its ruling (which involved multiple types of sanctions arising under different parts of Rule 37). To the extent Samsung is attempting to read that district court decision as stating a requirement for courts to apportion sanctions awards arising under Rule 37(b), that is not the law for the reasons discussed above.

1  for their many Protective Order violations. Therefore, just as Judge Grewal found, there is no
2  legitimate basis for Samsung's claim that Apple's and Nokia's "pursuit of sanctions was
3  unsuccessful." (Mot. at 5; Dkt. 3117 at 5-7 ("Apple and Nokia succeeded on most of their claims,
4  and the court declines to reduce its fee award to indicate anything less.").)[3]

5  Samsung cannot avoid that result simply because, at the end of the sanctions proceedings,
6  Apple and Nokia asked for ***additional remedies*** that Judge Grewal did not impose. (Mot. at 2.)
7  Samsung has failed to identify a single aspect of the sanctions proceedings that would have been
8  unnecessary absent that requested relief. Samsung also ignores that multiple courts have awarded
9  *full* reasonable fees and costs under Rule 37(b), even where the court did not impose other types
10 of sanctions that the moving party had requested. *See*, *e.g.*, *McElroy v. Cox*, No. 08-CV-1221,
11 2012 WL 537139, at *1, *3 (E.D. Cal. Feb. 17, 2012) (ordering plaintiff to pay all fees and costs
12 as a sanction for violation of a court order, despite rejecting request for termination sanctions);
13 *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, No. 13-CV-1806, 2014 WL 1338480, at *8-*10
14 (N.D. Cal. Apr. 1, 2014) (granting all fees and costs as sanctions under Rule 37(b)(2)(C), despite
15 rejecting requested preclusion sanctions); *PepsiCo, Inc. v. Central Investment Corp.*, 216 F.R.D.
16 418, 421 (S.D. Ohio 2002) (finding "no merit in the contention that [defendant's] fees related to
17 the motion for sanctions should be reduced because it did not get the relief it sought").

18 Nor can Samsung attempt to paint itself as at least partially victorious based on incorrect
19 representations that "Apple and Nokia came up empty in their massive fishing expedition for
20 evidence that Samsung misused their confidential information." (Mot. at 1 (Samsung claiming

---

[3] Samsung criticizes Apple for filing its sanctions motion even though Samsung and Nokia had separately negotiated a stipulation requiring Samsung to make certain disclosures and perform certain searches. (Mot. at 3.) But even Judge Grewal observed that Samsung and Quinn Emanuel could not be trusted to self-police their own accused conduct, and that progress under the stipulation at the time "had been essentially non-existent." (Dkt. 2483 at 4 (finding the Samsung/Nokia stipulation "insufficient" and noting that "letting Samsung and its counsel investigate without supervision is unlikely to produce satisfactory results" because "[r]arely is the fox [] permitted to investigate without supervision the disappearance of chickens at the henhouse"); Dkt. 3117 at 2, 5 ("[T]he court, not Apple or Nokia, concluded that 'letting Samsung and its counsel investigate this situation without any court supervision [was] unlikely to produce satisfactory results,' and on that basis, the court ordered the discovery that QE now argues was 'not needed.' Apple and Nokia can hardly be faulted for complying with a court order".) Indeed, soon thereafter, Samsung asked Judge Grewal to ***void*** the stipulation. (-630 Dkt. 1038 at 2.)

1  that it had "affirmatively debunked" Apple's "overwrought" claims of misuse).)  As noted above,
2  Judge Grewal explicitly found that Mr. Shim improperly received and "*made use of*" Apple's
3  confidential license terms, and that Samsung's denial of misuse concerning its negotiations with
4  Nokia were "shaky" and "tenuous at best."  (Dkt. 2935 at 4-6, 18 ("[T]he evidence has shown …
5  that Shim made use of the information"); *id.* at 14 ("[T]he court does not find Shim's explanation
6  that he never used the insufficiently redacted Teece Report credible."); *see id.* at 3 (expressing
7  "doubt" Mr. Shim deleted Apple's confidential information when instructed to do so); *id.* at 4
8  n.17 (discussing Mr. Shim's conflicting deposition testimony regarding his knowledge of Apple's
9  confidential license terms).)

10  Samsung also claims "success" in connection with briefing in which the parties disputed
11  privilege issues arising from Samsung's 737-page privilege log, and in which Samsung requested
12  discovery from Apple and Nokia—according to Samsung, "all of which Apple and Nokia lost."
13  (Mot. at 3.)  But in their privilege briefing, Apple and Nokia asked the Court to review
14  Samsung's withheld documents *in camera*, and Judge Grewal agreed.  (Dkt. 2587 at 90:2-7
15  (conducting *in camera* review because of "serious" concerns "that the crime fraud exception
16  would apply to at least a subset of these documents").)  Judge Grewal also agreed that Samsung's
17  privilege log was grossly insufficient, he required Samsung to produce portions of documents
18  previously withheld in their entirety, and he found that Samsung had improperly tried to litigate
19  privilege issues through *ex parte* communications.  (Dkt. 2689 at 4 n.16 ("[T]he court thus far is
20  unpersuaded that the generic statements in the log meet the burden required to claim that
21  protection … [which] significantly burdens … Apple and Nokia's ability to address the sanctions
22  issue."); Dkt. 2790 (ordering production).)  Under these circumstances, Samsung cannot claim
23  prevailing party status on the parties' privilege disputes, simply because Judge Grewal did not
24  address whether Samsung should be required to produce additional withheld documents as well
25  (as Apple and Nokia had argued in their privilege briefing).

26  Similarly, although Samsung successfully compelled limited discovery from Apple and
27  Nokia, it did so based on representations that the discovery would help show that Samsung did
28  not violate the Protective Order or harm Apple and Nokia.  (Dkt. 2610-3 at 1-2.)  But even with

the benefit of that discovery, the Court still found that Samsung *did* violate the Protective Order and that Apple and Nokia *did* suffer "substantial harm" as a result. (Dkt. 2935 at 13-19.) Apple and Nokia should not be forced to absorb the fees and costs that they incurred in connection with motion practice that Samsung initiated, and discovery that Samsung demanded and obtained, in connection with a *failed* defense. Nor should Samsung be able to subtract the costs and fees arising from its later motion seeking to compel discovery from Apple and Nokia, which Judge Grewal denied outright. (Dkt. 3068; Dkt. 3111.)

*Third*, Samsung suggests that a reduction in the sanctions award is appropriate because Judge Grewal merely found "inadvertent disclosures by [Quinn Emanuel] that caused [Apple and Nokia] no harm." (Mot. at 1; *id.* at 2 (representing there was a "complete absence of evidence of harm" and that "Apple and Nokia should not be reimbursed for their failed efforts to show they were harmed by QE's admitted inadvertent disclosures")).) But Rule 37(b) makes no distinction between intentional and "inadvertent" violations of court orders, and Judge Grewal hardly held that Samsung and Quinn Emanuel were unaware of the potentially-severe consequences resulting from their conduct. To the contrary, he expressly found that the "1 lawyer deep" structure at Quinn Emanuel and "share-and-share-alike" system within Samsung made the "significant" Protective Order violations that ultimately occurred a "predictable," "conscious," "strategic," and "blameworthy" result of a "willful failure to institute sufficient safeguards." (Dkt. 2935 at 1, 11-16.)

Critically, as noted above, Judge Grewal also found that the many Protective Order violations did, in fact, cause "*substantial harm* to Apple and Nokia." (*Id.* at 14 ("This in and of itself *was a substantial harm to Apple and Nokia*.") (emphasis added); *id.* at 2, 18 (explaining sanctions against Samsung and Quinn Emanuel are necessary to "abrogate the harm suffered [by Apple and Nokia]" and "to remedy Apple and Nokia's harm").) Therefore, despite Samsung's representations to the contrary, Apple and Nokia "succeeded" in proving their allegations of harm.[4]

---

[4] Samsung points to Apple's mistaken public filing (in November 2013) of a document containing unredacted details of the Apple/Nokia license as supposed "confirmation" that Apple

***Fourth***, Samsung attacks the size of the sanctions award as "virtually unprecedented" and "magnitudes beyond any award ever imposed for a protective order violation." (Mot. at 1, 5.) But the size of the award stems directly from the "virtually unprecedented" scope of Protective Order violations that occurred in this case—which spanned more than sixteen months, and involved hundreds of Samsung employees and lawyers across the world, more than 60 briefs, thousands of pages of document discovery, a 737-page privilege log, and more than 50 hours of depositions—i.e., work "magnitudes beyond" any other case involving protective order violations of which Apple is aware. Within that context, the sanctions award is entirely reasonable, as confirmed, in part, by Samsung's admission that it incurred more than $10 million in fees and costs to address the same issues. *See PepsiCo*, 216 F.R.D. at 421 ("[A]lthough in the abstract $101,000 is a large sum of money, in the context of the amounts at stake in this case as well as the millions of dollars the parties must have already spent litigating this case, the fee sought is relatively small."); *see also Wm. T. Thompson Co. v. General Nutrition Corp.,* 104 F.R.D. 119, 122-23 (C.D. Cal. 1985) (affirming sanctions award totaling $457,068.56).

***Finally***, Samsung contends that a flat reduction of "at least 50%" is warranted due to "unnecessary" work that Apple and Nokia supposedly performed. (Mot. at 1, 5.) As an initial matter, however, Judge Grewal carefully reviewed ***every*** time and cost entry that Apple and Nokia submitted, and found that all were "reasonable" with a handful of exceptions (just two of Apple's entries). (Dkt. 3117 at 7-10.) Samsung has not presented any basis for the Court to conclude that those factual determinations—made by the Judge who sat at the center of the parties' lengthy sanctions proceeding—were clearly erroneous. *See* Fed. R. Civ. P. 72.

In addition, Samsung also has failed to provide any explanation as to how it reached its "50%" figure, and has failed to identify the specific time entries and costs that it believes were "unnecessary"—rendering it impossible for Apple and Nokia to respond with any particularity.

---

and Nokia did not suffer harm. (Mot. at 1-2.) That argument ignores the findings of actual harm detailed above. It also ignores Judge Grewal's determination that Apple's subsequent filing error did not retroactively excuse the hundreds of Protective Order violations that had occurred before that date—a finding that was not clearly erroneous or contrary to law, and that Samsung has not asked this Court to review in any event. (Dkt. 3111 at 1.)

Samsung's flawed request should be rejected for this reason as well. *See Moreno v City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) (holding that fee awards should not be reduced if a party "cannot come up with specific reasons for reducing the fee request").

## IV. CONCLUSION

Judge Grewal already considered and rejected the same arguments that Samsung repeats here—finding that "Apple's and Nokia's work was neither unnecessary nor unsuccessful" and that Samsung was "incorrect" to argue that "Apple and Nokia did not succeed on many claims." (Dkt. 3117 at 5-6.) Because those findings were not clearly erroneous or contrary to law, the Court should affirm the sanctions award in its entirety.

Dated: July 22, 2014　　　　　　　　　　WILMER CUTLER PICKERING HALE AND DORR LLP

By: */s/ William F. Lee*
　　William F. Lee
　　Attorneys for Plaintiff
　　APPLE INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on July 22, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

*/s/ William F. Lee*
William F. Lee