RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone:    650-838-2000
Facsimile:    650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:    404-881-7000
Facsimile:    404-881-7777

Attorneys for NOKIA CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 5:11-CV-01846-LHK (PSG)<br><br>**NOKIA'S RESPONSE TO SAMSUNG'S MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (RE: DOCKET NO. 2935), ORDER GRANTING MOTION FOR SANCTIONS (DOCKET NO. 3135)** |

**TABLE OF CONTENTS**

**Page(s)**

I. Introduction ..................................................................................................................1

II. Procedural Background ................................................................................................1

III. Samsung's Disclosures of the Documents at Issue .......................................................4

IV. Argument and Citation to Authority .............................................................................6

    A. Legal Standards for Waiver of Privilege ..........................................................6

    B. Samsung's Offer Both Succeeded and Preceded Instances of Waiver ..............7

        1. Samsung Waived Privilege Through Selective, Partial Disclosures .......7

        2. Samsung Waived Privilege Under the At Issue Doctrine .....................10

            (a) Samsung raised the defense that its Protective Order violations were "inadvertent" ......................................................10

            (b) Samsung raised the defense that the recipients of the improperly redacted Teece Report did not actually use the document in violation of the Protective Order ..............................................................................................11

    C. Judge Grewal Did Not Affirm Any Privilege Assertion by Samsung ............12

V. Conclusion ..................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bittaker v. Woodford*,
 311 F.3d 715 (9th Cir. 2003) ...........................................................................................................10

*Chevron Corp. v. Pennzoil Co.*,
 974 F.2d 1156 (9th Cir. 1992) .........................................................................................................10

*Clarke v. American Commerce Nat. Bank*,
 974 F.2d 127 (9th Cir. 1992) .......................................................................................................6, 13

*E.E.O.C. v. Outback Steakhouse of Fl, Inc.*,
 251 F.R.D. 603 (D. Colo. 2008) .......................................................................................................8

*Genentech, Inc. v. Insmed Inc.*,
 236 F.R.D. 446 (N.D. Cal. 2006) ...................................................................................................12

*Henry v. Quicken Loans, Inc.*,
 263 F.R.D. 458 (E.D. Mich. 2008) .................................................................................................12

*Hernandez v. Tanninen*,
 604 F.3d 1095 (9th Cir. 2010) ..........................................................................................................6

*In re Gibco Inc.*,
 185 F.R.D. 296 (D. Colorado 1997) ...............................................................................................12

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
 --- F.Supp.2d ----, 2014 WL 1800820 (S.D.N.Y. May 7, 2014) .................................................9, 11

*Oracle America, Inc. v. Innovative Technology Distributors, LLC*,
 No. 11-cv-01043-LHK, 2011 WL 2559825 (N.D. Cal. June 28, 2011) ..........................................10

*QBE Ins. Co.v Jorda Enterprises Inc.*,
 No. 10-21107-CIV, 2012 WL 4089890 (S.D. Fla. Sept. 17, 2012) ...................................................7

*Shared Medical Resources LLC v. Histologies LLC*,
 No. SACV 12-0612 DOC, 2012 WL 5570213 (C.D. Cal. Nov. 14, 2012) ...........................6, 7, 10

*Tennenbaum v. Deloitte & Touche*,
 77 F.3d 337 (9th Cir. 1996) ..............................................................................................................6

*U.S. v. St. Pierre*,
 132 F.2d 837 (2d Cir. 1942) .............................................................................................................9

*United States v. Blizerian*,
 926 F.2d 1285 (2d Cir. 1991) .........................................................................................................10

*Walker v. Contra Costa*,
   227 F.R.D. 529, 537 (N.D. Cal. 2005) ................................................................................................ 8

**RULES**

Federal Rule of Evidence 502(a) ............................................................................................................ 9

## I. Introduction

On January 29, Judge Grewal sanctioned Samsung and Quinn Emanuel for numerous violations of the Protective Order. In Samsung's motion for relief from that order, it objects to a finding that Samsung waived privilege as to seven documents by offering to produce the documents. The Court should deny Samsung's Motion for two reasons. First, sufficient grounds exist to find waiver of privilege for the seven documents at issue independent of Samsung's offer to produce. Second, Samsung has failed to prove that the documents it offered to produce are privileged, and thus a finding of waiver was unnecessary. On these grounds, Judge Grewal's order is properly supported by the facts and the law, and the result should be affirmed.

## II. Procedural Background

On June 4, 2013, Nokia learned during a licensing negotiation session that Samsung in-house representatives had improperly obtained and used Nokia's confidential licensing information. (630 Dkt. No. 647). During this same time period, Samsung was seeking additional Nokia confidential information from Apple for use in the 630 case. (*Id.* (Stevens Decl., ¶¶ 12-17)). Apple informed Nokia that unless Nokia filed for a protective order by July 1, 2013, Apple would be forced to produce the information to Samsung. (*Id.*, ¶ 17). Given the sensitivity of the confidential information in question and recent incident in the negotiations, Nokia filed a motion for protective order on July 1, 2013, seeking to prevent production of any additional Nokia confidential information while also informing the Court of Samsung's previous receipt and use of Nokia's confidential information. (630 Dkt. No. 647). Nokia did not yet know how Samsung obtained the information; it simply sought to prevent any further disclosures. (*Id.*).

On July 16, Samsung's counsel at Quinn Emanuel sent Nokia letters disclosing that in fact there had been improper disclosures of Nokia's confidential information to Samsung employees through at least incompletely redacted documents. (Dkt. No. 2558-4). Nokia and Samsung then worked together on a stipulation setting forth a cooperative process to address these disclosure issues. On August 18, 2013, Samsung and Nokia filed a proposed stipulation. (630 Dkt. No. 742). Prior to Nokia's July 2013 filing for a Protective Order, neither Samsung nor Quinn Emanuel informed Nokia

of the improper disclosures, even though the record is now clear that the disclosures dated back to March 2012 and Quinn Emanuel and Samsung had notice of violations by at least December 2012. (Dkt. No. 2935).

On August 23, 2013, Apple filed a Motion to Compel Further Discovery and for Sanctions for Violations of Protective Order. (1846 Dkt. No. 2374). On September 21, 2013, Nokia joined Apple's motion to compel discovery because Nokia had already encountered issues with Samsung's compliance with the stipulation. (1846 Dkt. No. 2434). On October 1, 2013, Judge Grewal held a hearing on Apple's motion and to consider the proposed stipulation. On October 2, 2013, Judge Grewal ordered Samsung to produce to Apple and Nokia "[a]ll e-mails and other communciations sent or received since March 24, 2012 by the Samsung employees who received the confidential information (more specifically, the Samsung employees listed in the attachments to Mr. Becher's August 1 letter) to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips," as well as deposition testimony. (1846 Dkt. No. 2483). At the same time, Judge Grewal also ordered the relief set forth in Samsung and Nokia's stipulation. (630 Dkt. No. 785).

Samsung sought a reversal of both orders on numerous grounds, including that the order would "improperly abrogate privilege and work-product protection," "require Samsung to violate other protective orders," and that the order "is grossly overbroad." (1846 Dkt. No. 2495). The Court rejected all three arguments, while noting that Judge Grewal had not yet ruled on privilege and therefore "the Court need not reach the question of whether there is any basis for waiver of privilege at this time." (1846 Dkt. No. 2538).

On October 14-15, 2013, Samsung provided Nokia a document production that was almost completely redacted for privilege. (Koppelman Decl.,[1] ¶ 2). On October 15-18, 2013, Nokia and Apple deposed seven Samsung witnesses. (*Id.*,¶ 3). The testimony was severely limited by privilege and work product objections. (*Id.*). By 9am Monday, October 21, 2013, Nokia and Apple were to submit supplemental briefs to the Court on any discovery issues, of which there were many. (1846 Dkt. No. 2483, 2557, 2558). On October 22, 2013, Judge Grewal held a second hearing. (1846 Dkt.

---

[1] Declaration Ryan W. Koppelman in Support of Nokia's Response to Samsung's Motion for Relief From Nondispositive Order of Magistrate Judge ("Koppelman Decl.").

No. 2483). At the hearing, he expressed skepticism that Samsung could maintain privilege over its documents, and he ordered Samsung to produce unredacted copies for in-camera review. (1846 Dkt. No. 2581 at 90-91; 1846 Dkt. Nos. 2587, 2588, 2591).

On November 8, 2013, following a review of the documents *in camera*, Judge Grewal ordered Samsung to show cause why sanctions are not warranted, and in giving Samsung another chance to establish privilege, he noted that "many if not all of these documents do not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would have served as cause for the communication." (1846 Dkt. No. 2689 ("Order to Show Cause") at n.16). In response to this order, Samsung submitted its brief on privilege *in camera*. (1846 Dkt. No. 2757). The Court struck this *in camera* submission as improper and gave Nokia and Apple two days to file responsive briefs after Samsung's re-submission of its privilege brief. (1846 Dkt. No. 2790). In Nokia and Apple's responsive briefs, they both argued why the documents were not privileged or the privilege was waived. (1846 Dkt. Nos. 2824, 2825).

On November 26, 2013, Samsung subsequently offered to produce to Nokia and Apple seven documents identified by Judge Grewal in his Order to Show Cause: Tabs 6, 19, 20, 215.15, 222, 255, and 272 of its privilege log. (Dkt. No. 2833; Koppelman Decl., Exh. 1). Nokia declined to accept the terms of Samsung's offer. (Dkt. No. 2834). The parties and Nokia submitted further rounds of briefing on December 2, 2013, (Dkt. Nos. 2835, 2836, 2837), participated in a hearing on December 9, 2013, and filed supplemental briefs on December 13, 2013 (Dkt. Nos. 2871, 2872, 2873).

On January 29, 2014, Judge Grewal issued his sanctions order but did not completely rule on the issues raised in the parties' privilege briefing. His sanctions order found that Samsung waived any privilege as to certain documents and that portions of other documents "are not privileged." (Dkt. No. 2935 at n.13). Specifically Judge Grewal stated:

> The tab numbers in this footnote and those that follow refer to the tabs of the documents submitted by Samsung for in camera review. Because Samsung offered to turn over the vast majority of the documents cited in this order, the court finds that privilege has been waived as to those documents. As to all other documents cited, the court finds that the portions discussed in this order are not privileged. (Dkt. No. 2935 at n.13).

Nokia sought production of these non-privileged documents in its Motion to Compel Information for Remediation; however, Judge Grewal held that a sworn declaration from John Quinn would satisfy

1  Nokia's remediation concerns. (Dkt. No. 3061). Judge Grewal noted that if Mr. Quinn was unwilling
2  or unable to provide the ordered declaration, then Nokia could renew its motion. (Dkt. No. 3061).

### III.  Samsung's Disclosures of the Documents at Issue

As described above, Samsung's appeal concerns Tabs 6, 19, 20, 215.15, 222, 255, and 272 of its privilege log. The allegedly privileged contents of these documents have been disclosed at least in part during the sanctions proceedings.

Judge Grewal cited Tabs 19, 20, and 272 in his Show Cause Order as evidence of "QE's failure to follow the procedures set forth in Section 16 of the Protective Order after repeated notice of the disclosure of SBI." (Dkt. No. 2833 at 2). While Samsung produced all three emails to Nokia in heavily redacted form (Koppelman Decl., Exhs. 3, 4, and 6), Samsung repeatedly and voluntarily disclosed details concerning these documents through statements in letters, briefs, hearings, and declarations. Tabs 19 and 20 concern emails between Daniel Shim of Samsung and Guy Eddon, Alex Baxter, and Thomas Pease of Quinn Emanuel. (Koppelman Decl., Exhs. 3, 4). Similarly, Tab 272 concerns an email from Mr. Shim to attorneys at Quinn Emanuel. (Koppelman Decl., Exh. 6). Tabs 19 and 20 relate to the wrongful disclosure of the improperly redacted Teece Report to Mr. Shim and the corrective action taken by Quinn Emanuel in December 2012. (Dkt. No. 2935 at 5). Tab 272 then shows Mr. Shim retransmitted the improperly redacted Teece Report in May 2013 despite this corrective action. (Dkt. No. 2935 at 6). The extent of Samsung's voluntary disclosure is substantial. (*See, e.g.*, Dkt. Nos. 2395-03c at 2 (letter from Quinn Emanuel noting that disclosures occurred in December 2012 and May 13); 2395-03g at 2 (letter from Quinn Emanuel discussing corrective action taken following disclosure in December 2012, the Samsung employee's alleged response, and the alleged lack of realization of previous disclosures); 2485 at 45:7-11, 46:9-14 (statements from Quinn Emanuel at October 1 hearing regarding the December 2012 disclosure and the Samsung employee's purpose in requesting the Teece Report); Dkt. No. 2556-16 at ¶ 8 (Declaration from Mr. Shim regarding his purpose in requesting the Teece Report in December 2012); 2807-1 (declaration from Mr. Baxter regarding the communications with Mr. Shim in December 2012 and May 2013); 2807-12 at ¶ 3-11 (declaration from Mr. Pease regarding the same); 2807-14 at ¶ 4 (declaration from Mr. Shim regarding the same); and 2581 at 55:12-20, 59:9-14, 59:24-60:3, 61:2-5, and 65:14-66:3 (statements

1  from Quinn Emanuel at Oct. 22 hearing regarding the transmission of the improperly redacted Teece
2  Report to Mr. Shim, the alleged remedial action, the retransmission of the Teece Report by Mr. Shim
3  in May 2013, and Quinn Emanuel's reasoning for not investigating further disclosures based on this
4  incident)).

5  Judge Grewal's Show Cause Order also cited Tabs 215 and 255 as evidence of "QE's failure to
6  fully redact sensitive business information ("SBI") from the Initial Expert Report of David Teece,
7  resulting in the pervasive distribution of the SBI to Samsung employees who were not authorized to
8  have access to it." (Dkt. No. 2833 at 2). Tab 215 was produced to Nokia in heavily redacted form
9  (Koppelman Decl., Exh. 5), and Tab 255 was withheld in its entirety (Koppelman Decl., ¶ 9).
10 Nonetheless, Samsung has disclosed the contents of Tab 215 such that the record shows it is an email
11 among internal Samsung employees providing instructions to access an FTP site, download the Teece
12 Report, and circulate it. (Dkt. No. 2935 at 4). Similarly, Samsung has disclosed that Tab 255 is an
13 email where Samsung employees circulated the Teece Report among themselves and argued that it
14 does not contain information derived from materials produced pursuant to the protective order. (Dkt.
15 No. 2835 at n.8).

16 Finally, the Show Cause Order cited Tabs 6 and 222 as evidence of "Samsung's wrongful use
17 of the disclosed SBI in preparing for … its negotiations with Nokia between March 22, 2012 and June
18 4, 2013." (Dkt. No. 2833 at 2). Samsung produced Tab 6 to Nokia in heavily redacted form
19 (Koppelman Decl., Exh. 2) and withheld Tab 222 in its entirety (Koppelman Decl., ¶ 9). Tab 6 is an
20 email from Helen Hopson at Bristows LLP to Laetita Benard at Allen Overy, with numerous copied
21 recipients. (Koppelman Decl., Exh. 2). Samsung disclosed details concerning Tab 6 through
22 statements in letters, briefs, hearings, and declarations. (*See e.g.*, Dkt. Nos. 2807-16 at 1-4, 2807-6 at
23 2-5, 2835-5 at 14). Tab 222 contains correspondence between Mr. Shim and Seongwoo "Clayton"
24 Kim at Samsung, as well as correspondence from various outside counsel. (Koppelman Decl., Exh. 1).
25 Samsung disclosed details concerning Tab 222 through statements in letters, briefs, hearings,
26 declarations, and depositions. (*See e.g.*, Dkt. Nos. 2557-10 at 124; 2557-14 at 73-75; 2807-9 at 1-3;
27 2807-14 at 2-3; 2835-5 at 14).
28

1  IV.     **Argument and Citation to Authority**

2      A.     **Legal Standards for Waiver of Privilege**

3      "Whether a holder has waived the right to claim the attorney-client privilege is a mixed question of law and fact which we review *de novo*." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996).  Under *de novo* review, a reviewing court may affirm a finding of no privilege on different grounds than the lower court.  *See Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129-130 (9th Cir. 1992) (affirming judgment of district court on different grounds by finding documents are not protected by the attorney-client privilege and therefore not needing to address whether the crime/fraud exception applied).  The principle purpose of the doctrine of waiver of attorney-client privilege is "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."  *Tennenbaum,* 77 F.3d at 340-41.  The focus of the privilege waiver analysis "should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship…." *Id.* at 341.  However, even where there is no disclosure, fairness requires a waiver when the privilege holder raises a claim or defense that puts in issue privileged communications. *Id.* at 341 n.4.  Similarly, the work product doctrine "is a qualified privilege that protects certain materials prepared by an attorney acting for his client in anticipation of litigation" and may be waived.  *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (internal citations and quotation marks omitted).  A party may stop the waiver-by affirmative-reliance doctrine from applying by not voluntarily disclosing privileged information.  *Shared Medical Resources LLC v. Histologies LLC*, No. SACV 12-0612 DOC, 2012 WL 5570213 at *3 (C.D. Cal. Nov. 14, 2012).

    Under *de novo* review, the Court may affirm the finding of waiver on any grounds supported by the record; it is not limited to the grounds explicitly mentioned in the Sanctions Order.  *Clarke*, 974 F.2d at 130.  In *Clarke*, the district court found that attorney billing statements fell within the scope of attorney-client privilege, yet it ordered the documents produced to the opposing side under the crime-fraud exception.  *Id.* at 129-30.  In reviewing *de novo*, the Ninth Circuit found that the district court erred by finding that privilege applied; therefore, it affirmed the order below on different grounds. *Id.*

**B.     Samsung's Offer Both Succeeded and Preceded Instances of Waiver**

While Samsung's objections center on Judge Grewal's finding of waiver through its offer to produce documents to Apple and Nokia, the record supports the fact that Samsung waived any alleged privilege over these documents both before and after the offer to produce was ever made.

Pursuant to the *de novo* review standard, the Court may properly consider two additional grounds in the record for finding that Samsung waived privilege.  First, for several of the documents at issue, Samsung made selective, partial disclosures that created a subject matter waiver of the allegedly privileged material.  Second, Samsung affirmatively raised defenses in opposing Apple's Motion for Sanctions, which fairness demanded Apple and Nokia have an opportunity to rebut.

**1.     Samsung Waived Privilege Through Selective, Partial Disclosures**

Samsung correctly cites law for the proposition that an offer or intent to produce privileged documents, without disclosure of the privileged information, is "insufficient as a matter of law to effect a waiver." (Dkt. No. 3135 at 4-5).  However, Samsung attempts to confuse the facts by arguing that there was no waiver because Samsung did not *produce* the allegedly privileged documents.  (*Id.* at 5). While Samsung has not produced unredacted complete copies of documents to Nokia or Apple, it did selectively disclose portions of these documents through testimony of its witnesses and through Quinn Emanuel's arguments.  "Once a litigant decides to affirmatively rely on privileged information thereby placing said information into issue, however, any privilege that may attach is impliedly waived." *Shared Medical Resources*, 2012 WL 5570213 at *4 (citing *QBE Ins. Co.v Jorda Enterprises Inc.*, No. 10-21107-CIV, 2012 WL 4089890 at *2 (S.D. Fla. Sept. 17, 2012)).

On numerous instances, Samsung disclosed details relating to Tabs 19, 20, and 272.  Prior to Apple filing its Motion for Sanctions, Quinn Emanuel sent Apple a letter stating:

> On December 21, 2012, a Quinn Emanuel associate sent the incompletely redacted Teece Report to a Samsung employee.  Another associate realized that it contained references to licensing terms that had not been redacted.  The lawyer who sent the email notified the Samsung employee not to look at the report.  The employee confirmed that he would not look at the report and would delete the email.  The attorney subsequently sent another email with a report that contained complete redactions.  Neither the lawyer nor others at Quinn Emanuel realized at the time that the incompletely redacted report had previously been disclosed to Samsung.

(Dkt. No. 2395-03g at 2).  In a declaration filed in support of Samsung's October Supplemental Brief,

1  Mr. Shim provided that the December 21-22 email chain involved his request for a copy of the Teece
2  Report in connection with a case brought by Microunity against Samsung in the Eastern District of
3  Texas, the request having nothing to do with any Apple licensing information that might have been
4  contained in the report. (Dkt. No. 2556-16 at ¶ 8). There are numerous other disclosures relating to
5  these three documents. (*See, e.g.*, Dkt. Nos. 2395-03c at 2; 2485 at 45:7-11, 46:9-14; 2807-1; 2807-12
6  at ¶ 6; 2807-14 at ¶ 4; and 2581 at 55:12-20, 59:9-14, 59:24-60:3, 61:2-5, and 65:14-66:3). Samsung's
7  affirmative representations that it took corrective action with respect to the disclosure of confidential
8  information to Mr. Shim is a selective disclosure presented by Samsung as a defense to its protective
9  order violation, and it waived the privilege as to those communications and their subject matter. *See,*
10 *e.g.*, *E.E.O.C. v. Outback Steakhouse of Fl, Inc.*, 251 F.R.D. 603, 610-12 (D. Colo. 2008) (holding
11 defendants waived privilege regarding investigations and remedial efforts in response to a claim by
12 raising these as affirmative defenses); *Walker v. Contra Costa*, 227 F.R.D. 529, 537 (N.D. Cal. 2005)
13 (holding defendants waived attorney client privilege and work product protection by asserting internal
14 pre-litigation investigation as an affirmative defense and ordering production of all documents
15 pertaining to that defense).

16      Further, Samsung misrepresented the information within these Tabs. In Samsung's August 16
17 letter to Apple, it stated that following Quinn Emanuel's instruction to Mr. Shim that he not look at the
18 improperly redacted Teece Report, a Quinn Emanuel attorney "subsequently sent another email with a
19 report that contained complete redactions." (Dkt. No. 2395-03g at 2). However, Judge Grewal found
20 that the subsequent version sent to Mr. Shim was *not* fully redacted. (Dkt. No. 2395 at n.28 ("This
21 version of the Teece Report still contained unredacted information regarding Ericsson's license with
22 Apple, but in a different section of the report.")). At the second hearing on Apple's Motion, Samsung
23 attempted to defend its failure to follow the Protective Order's notification provisions by arguing that,
24 even though at least one Quinn Emanuel attorney knew that at least one Samsung employee received
25 the unredacted confidential information in the Teece Report, neither Samsung nor Quinn Emanuel
26 knew other disclosures had occurred:

27         This person discovered it, but this person didn't have the knowledge or didn't put it
           together that this wasn't a report put on the FTP site last month or sent out in the interim.
28         Didn't know, didn't put that together. So, I mean, ***if it had been the same person***, I

would certainly like to believe that they would realize, oh my goodness, we have been sending this out people have seen this it was on the FTP site last March, we sure as heck better do something about it. ***This person didn't know so that's why that didn't happen***."

(Dkt. No. 2581 at 61:2-11 (emphasis added); *see also* Dkt. No. 2871-4 at 8 ("There is *no evidence* that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had been transmitted before.") (emphasis in original)). These statements by Samsung are directly contrary to Judge Grewal's finding that the same Quinn Emanuel associate who prepared the initial redactions of the Teece Report in March 2012 identified the incomplete redactions and the lack of approval from Apple of the redactions and brought these issues to the attention of a senior associate and a partner. (Dkt. No. 2935 at 5). Thus, not only has Samsung partially disclosed the contents of Tabs 19, 20, and 272, it has misrepresented those documents on at least two occasions. As Judge Learned Hand once said regarding the Fifth Amendment privilege, "the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition. The time for a witness to protect himself is when the decision is first presented to him; he needs nothing more, and anything more puts a mischievous instrument at his disposal." *U.S. v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942) (finding that where a witness confessed all the elements of a crime, he may not use the Fifth Amendment privilege to withhold the details) (writ of certiorari granted, then dismissed as moot by 319 U.S. 41 (1943)).

Samsung's disclosures directly implicate Fed. R. Evid. 502(a), which governs waiver of privilege through disclosures in a federal proceeding. Samsung affirmatively made statements regarding the scope and nature of the communications between Mr. Shim and Quinn Emanuel, thus, its disclosure was intentional. *See, e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, --- F.Supp.2d ----, 2014 WL 1800820 at *5 (S.D.N.Y. May 7, 2014) (finding "intentional" requirement of Rule 502(a) waiver satisfied where a party testifies about communications at deposition). These three Tabs relate directly to the subjects raised by Samsung, thus, the "same subject matter" requirement of Rule 502(a) is satisfied. *See Id.* Finally, given the record shows Samsung misrepresented the allegedly privileged information within these documents, the documents "ought in fairness to be considered" with Samsung's statements. Fed. R. Evid. 502(a)(3). Accordingly, the Court should find any alleged

1  privilege waived.

### 2. Samsung Waived Privilege Under the At Issue Doctrine

"Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). "The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword…. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.  The party asserting the claim is said to have implicitly waived the privilege." *Oracle America, Inc. v. Innovative Technology Distributors, LLC*, No. 11-cv-01043-LHK, 2011 WL 2559825, at *1 (N.D. Cal. June 28, 2011) (denying motion for permission to lodge attorney-client privileged documents for *in camera review* and providing party option of either waiving privilege or abandoning request for the Court to consider the documents) (citing *Bittaker v. Woodford*, 311 F.3d 715, 719 (9th Cir. 2003)).  Under this doctrine, courts have found that even in a Rule 11 proceeding, parties are not *obligated* to disclose privileged information; they have the opportunity to decide whether to make such a disclosure, and once privileged information is affirmatively relied on, any privilege that may attach is impliedly waived. *Shared Medical Resources*, 2012 WL 5570213 at *4.

Here, Samsung raised two defenses to Apple's Motion for Sanctions that implicitly waived any alleged privilege.  First, Samsung argued it could not violate the Protective Order because its violations were "inadvertent," not intentional.  Second, Samsung argued that, despite the testimony of the Nokia witnesses regarding their June 4 licensing meeting with Samsung, there was no evidence that it used improperly disclosed confidential information.

### (a) Samsung raised the defense that its Protective Order violations were "inadvertent"

After Apple brought its Motion for Sanctions, Samsung affirmatively argued that it should not be subject to sanctions because its protective order violations were inadvertent.  (*See, e.g.*, Dkt. No. 2835 at 11-12 (arguing that "[n]o piece of evidence adduced in the massive discovery conducted either voluntarily or pursuant to the Court's October 2 Order has revealed even the slighted indication that

any disclosure was intentional rather than inadvertent," and "[t]he inadvertence of the disclosure and the technical nature of any violation counsel strongly against sanctions.")).  At the first of three hearings on Apple's Motion, Samsung argued the following:

> MS. ESTRICH: There's an intent of willfulness requirement for a violation of a protective order. Now if you are going to ask me can there be a violation without sanctions, that's a different issue. But the way the courts have addressed violations and protective orders is they ask a key question, and I can give you plenty of cites, yes, there was a disclosure. Was it willful, in this case, no. Did you follow the procedures under the protective order to remediate the situation? And where the answer is yes, courts as a rule have said we are not going to sanction you.

(Dkt. No. 2485 at 47:18–48:4).  In its response to the Show Cause Order, Samsung stated that "[t]here is no longer any dispute that Quinn Emanuel's disclosure of confidential licensing information was inadvertent.  No piece of evidence adduced in the massive discovery conducted either voluntarily or pursuant to the Court's October 2 Order has revealed even the slightest indication that any disclosure was intentional rather than inadvertent, nor does Apple, Nokia, or even the OSC allege as much." (Dkt. No. 2835-5 at 11; *see also* Dkt. No. 2871-4 at 6 ("there is no evidence that Samsung or Quinn Emanuel acted willfully or in bad faith") and 8 ("There is *no evidence* that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had been transmitted before.")).  As Judge Grewal confirmed, and Samsung does not now challenge, the Protective Order "does not establish a willfulness requirement."  (Dkt. No. 2935).  This was an affirmative defense that Samsung chose to raise and eventually lost on.  By raising a *mens rea* defense and arguing that the documents in its privilege log did not show anything more than an inadvertent violation, Samsung put the contents of those documents at issue and waived any alleged privilege. *See, e.g.*, *John Wiley & Sons*, 2014 WL 1800820 at *5 (granting motion to compel attorney testimony of allegedly privileged communications where client testified about subject at deposition and the testimony sought from the attorney related to "the determining factor for assessing willfulness" of copyright infringement).

    **(b) Samsung raised the defense that the recipients of the improperly redacted Teece Report did not actually use the document in violation of the Protective Order**

  Samsung also affirmatively argued that it should not be subject to sanctions because the transmissions of the Teece Report do not show actual use of the unredacted confidential information. (*See e.g.*, Dkt. No. 2835 at 12 ("In any event, there is no evidence that the report was distributed

1  *because* it had been incompletely redacted or that any individual who received the report used the
2  confidential information contained therein."). Specifically, Samsung argued that for each email cited
3  in the Order to Show Cause either the Teece Report was transmitted for a purpose unrelated to the
4  unredacted information or the confidential information was obtained through a source other than the
5  Teece Report (*See, e.g.*, Dkt. No. 2581 at 55:14-16 ("[T]he undisputed evidence is that Mr. Shim asked
6  that because it become [sic] relevant to a case in Texas called Microenergy – *Microunity* that he asked
7  for for that purpose."); 2835 at 14 (arguing no use of the Nokia-Apple license terms from the Teece
8  Report in Tab 6 and that analysis in Tab 222 originated from materials outside the Protective Order)
9  and n.8 (arguing Tab 255 does not contain any information taken from the Teece Report)). Because
10 Samsung chose to raise and fully rely on defenses that put its allegedly privileged communications at
11 issue, fairness demanded that Apple and Nokia have an opportunity to view the actual documents to
12 assess and rebut these claims. *See, e.g.*, *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 469-70 (E.D.
13 Mich. 2008) (holding that inclusion of consultation with counsel as evidence supporting a defense of
14 good faith or reasonableness waived attorney client privilege on the narrow subject of those
15 communications); *In re Gibco Inc.*, 185 F.R.D. 296, 301 (D. Colorado 1997) ("If the Trustee is not
16 permitted to review any of these [privileged] documents, Ingham will be free to state his version of the
17 facts surrounding the transfer of lot 12, while the Trustee will be left without any means to examine
18 other evidence which would corroborate or contradict Ingham's statements on this issue."); *Genentech,*
19 *Inc. v. Insmed Inc.*, 236 F.R.D. 446, 469 (N.D. Cal. 2006) (finding no waiver of privilege but noting
20 that "[i]f at trial Plaintiff offers testimony that puts attorney-client communications into issue, it will
21 have to disclose any confidential communications that may verify or disprove the truth of such
22 testimony"). Accordingly, Samsung waived any privilege that may have existed in these documents.

23 **C.  Judge Grewal Did Not Affirm Any Privilege Assertion by Samsung**

24 The waiver finding that Samsung seeks to challenge in its Motion for Relief only matters if the
25 documents at issue are in fact privileged or protected by the work product doctrine. Here, the record
26 does not support Samsung's privilege assertions, and Judge Grewal made no finding that *any*
27 documents produced by Samsung were in fact privileged. Instead, the record is filled with various
28 indications that either the documents are not privileged or Samsung did not substantiate its privilege

assertions. (*See, e.g.*, Dkt. No. 2689 at n.16). If the documents are not actually privileged, the Court may properly affirm Judge Grewal's ruling on other grounds. *See Clarke*, 974 F.2d at 130 (affirming on other grounds and not reaching issue of crime-fraud exception following *de novo* determination that documents were not protected by attorney-client privilege).

## V.  Conclusion

Through partial disclosures and affirmatively raising issues, Samsung has waived any alleged privilege of the documents mentioned in footnote 13 of Judge Grewal's Sanctions Order. Further, there is insufficient evidence on the record for Samsung to maintain any alleged privilege, nor did Judge Grewal make a finding that any of the documents are in fact privileged. Under *de novo* review, any one of these reasons is proper grounds for affirming Judge Grewal's Order. The Court should deny Samsung's Motion for Relief.

This 22nd day of July, 2014.

                Respectfully submitted,

*/s/Ryan W Koppelman*
RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone: 650-838-2000
Facsimile: 650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777

Attorneys for NOKIA CORPORATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2014, I electronically filed the foregoing **NOKIA'S OPPOSITION TO SAMSUNG'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (RE: DOCKET NO. 3117), ORDER GRANTING MOTION FOR SANCTIONS (DOCKET NO. 3135)** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to the parties and counsel of record.

This 22 day of July, 2014.

>  */s/Ryan W Koppelman*
> RANDALL L. ALLEN (Ca. Bar No. 264067)
> randall.allen@alston.com
> RYAN W. KOPPELMAN (Ca. Bar No. 290704)
> ryan.koppelman@alston.com
> ALSTON & BIRD LLP
> 1950 University Avenue, 5th Floor
> East Palo Alto, CA 94303-2282
> Telephone:   650-838-2000
> Facsimile:   650-838-2001
>
> *Attorneys for NOKIA CORPORATION*

CERTIFICATE OF SERVICE                                1                                CASE NO.:  5:11-CV-01846-LHK (PSG)