QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO NOKIA'S MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (RE: DOCKET NO. 2935)**<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

ARGUMENT .................................................................................................................................. 7

I.    THE COURT SHOULD DENY NOKIA'S UNPRECEDENTED EFFORTS TO GAIN ACCESS TO SAMSUNG'S PRIVILEGED MATERIALS AND TO PROLONG THESE PROTRACTED PROCEEDINGS THROUGH STILL MORE DISCOVERY .................................................................................................................... 7

    A.    Judge Grewal Properly Reviewed Samsung's Privileged Materials *In Camera* ............................................................................................................... 7

    B.    Nokia May Not Obtain The Privileged Materials That Samsung Submitted For *In Camera* Review .................................................................................... 10

II.    NOKIA'S OTHER REQUESTS FOR RELIEF ARE EQUALLY BASELESS ................ 13

    A.    Judge Grewal Rightly Focused On The Teece Report ............................................. 13

    B.    Judge Grewal's Finding That Dr. Ahn Did Not Violate The Protective Order Is Correct And Certainly Not Clearly Erroneous ........................................... 13

CONCLUSION ............................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bittaker v. Woodford*,
  331 F.3d 715 (9th Cir. 2003) ................................................................................................ 11

*Fed. Sav. & Loan Ins. Corp. v. Ferm*,
  909 F.2d 372 (9th Cir. 1990) ................................................................................................ 10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ................................................................................................ 8

*Fox v. Cal. Sierra Fin. Servs.*,
  120 F.R.D. 520 (N.D. Cal. 1988)) .......................................................................................... 9

*Genentech, Inc. v. Insmed Inc.*,
  236 F.R.D. 466 (N.D. Cal. 2006) ......................................................................................... 10

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ................................................................................................ 8

*Hawker v. BancInsurance, Inc.*,
  2013 WL 6843088 (E.D. Cal. Dec. 27, 2013) ........................................................................ 9

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) .............................................................................................. 11

*Holland v. Island Creek Corp.*,
  885 F. Supp. 4 (D.D.C. 1995) .............................................................................................. 11

*Laser Indus., Ltd. v. Reliant Techs., Inc.*,
  167 F.R.D. 417 (N.D. Cal. 1996) ......................................................................................... 11

*SLPR, LLC v. San Diego Unified Port Dist.*,
  2010 WL 3420748 (S.D. Cal. Aug. 30, 2010) ........................................................................ 8

*Simpson v. Lear Astronics Corp.*,
  77 F.3d 1170 (9th Cir. 1996) ................................................................................................ 12

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Trans. Act (FACTA) Litig.*,
  2010 WL 4942645 (C.D. Cal. July 29, 2010) ...................................................................... 13

*Transamerica Comp. Co. v. IBM Corp.*,
  573 F.2d 646 (9th Cir. 1978) ................................................................................................ 10

*United States v. Amlani*,
  169 F.3d 1189 (9th Cir. 1999) .............................................................................................. 10

**Statutes and Rules**

28 U.S.C. § 636(b)(1)(A) ........................................................................................................ 8, 13

Fed. R. Civ. P. 72(a) ........................................................................................................... 8, 12, 13

N.D. Cal. Civ. R. 72-2 ................................................................................................................ 13

Rule 30(b)(6) ................................................................................................................................. 9

**Other Authorities**

14 *Moore's Federal Practice* § 72.11[1][a], at 72-53 (3d ed. 2014 Supp.) ................................. 8, 15

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC ("Samsung") respectfully submit this opposition to the motion for relief from Magistrate Judge Grewal's nondispositive January 29, 2014 Order Granting Motions for Sanctions ("Sanctions Order") (Dkt. 2935), filed by non-party Nokia Corporation ("Nokia"). Plaintiff Apple Inc. ("Apple") has not sought relief from that Order.

**Preliminary Statement**

After more than a year of satellite litigation over inadvertent protective order violations that has included exhaustive discovery, the filing of over sixty briefs, six court hearings, and more than $10 million in expenses and attorney time for Samsung and Quinn Emanuel, Nokia still demands more. More access to Samsung's privileged materials. More discovery of undefined scope and duration. More time-consuming and resource-consuming collateral proceedings in this Court. More expense. And Nokia makes these demands without any legal or factual basis. Its arguments at this stage are not merely tenuous, but are made out of whole cloth.

Nokia offers no support for its blanket request for access to thousands of pages of Samsung's attorney-client privileged communications. That is because well-established precedent is contrary to Nokia's arguments that Samsung waived its privileges by complying with Judge Grewal's order to submit materials *in camera* or by defending itself against Nokia's allegations of improper use that were false and rejected by Judge Grewal. Nokia also cites no authority for imposing the burdensome requirement that a magistrate judge must specifically rule on the privileged nature of each and every document reviewed *in camera* before resolving an underlying motion. Magistrate judges have discretion in assessing whether and to what extent to conduct *in camera* review, and Judge Grewal acted well within his discretion in conducting that review here. There is simply no obligation for Judge Grewal to have issued particularized findings on privilege for each of the thousands of pages that he reviewed.

Indeed, much of Nokia's present motion raises arguments not presented to Judge Grewal or involves an order that Nokia was required to appeal months ago but did not. For example, Nokia has never before argued that Judge Grewal had to rule on privilege, let alone on a particularized document-by-document basis, before issuing the Sanctions Order. To the contrary,

Nokia argued that its overreaching laundry list of sanctions was supported by the existing record. Nokia's argument that the Court should *presume* a Samsung executive used its confidential information despite the extensive factual record proving otherwise is likewise entirely new, not to mention unfounded and unsupported by law. And Nokia's effort to get Samsung's privileged materials that were referenced in the Sanctions Order is merely an untimely attempt to challenge Judge Grewal's April 1 order denying Nokia's motion to compel (Dkt. 3061).

Compounding the lack of merit in its motion and its untimeliness, Nokia appears to be abusing this Court's processes. Nokia and Samsung are presently engaged in arbitration over the amount to be paid for a patent license and of course have other disputes with no bearing on this case. The breadth of Nokia's requested relief and Nokia's continued pursuit of Samsung's privileged communications after the inadvertent disclosures were remediated — a quest that even Apple has abandoned — strongly suggests that Nokia is seeking discovery in this litigation for ulterior and improper purposes.

The Court should reject Nokia's invitation to further prolong these already protracted satellite proceedings and deny Nokia's motion in its entirety.

**Factual Background**

***Nokia's Motion for a Protective Order.*** On July 1, 2013, Nokia filed a motion for a protective order in Case No. 12-cv-00630 regarding terms in its license with Apple that Nokia and Apple had asserted were confidential. (Decl. of Thomas Pease, Sept. 6, 2013 ("Pease Decl.") ¶¶ 3-4 (Dkt. 2395-3).) In support of that motion, Nokia submitted a declaration — since discredited — from its employee Paul Melin claiming that, during a June 4, 2013 Samsung/Nokia licensing negotiation, Samsung's Seungho Ahn had recited the precise terms of that license agreement, had admitted getting that information from his attorneys and had declared that "all information leaks." (Case No. 12-cv-00630, Dkt. 647.)[1] Samsung and Quinn Emanuel promptly investigated Nokia's

---

[1] Specifically, in his June 28, 2013 declaration, Mr. Melin stated that: "Mr. Ahn of Samsung informed us that he had been told of the financial terms of Nokia's license with Apple. Mr. Ahn stated that the agreement had been received by Samsung's attorneys in the course of litigation, and
(footnote continued)

claim and determined that an expert report of David J. Teece (the "Teece Report") had been incompletely redacted prior to being made available to certain Samsung personnel via an FTP site on March 24, 2012. (Pease Decl. ¶¶ 5-8; Decl. of Todd Briggs, Nov. 15, 2013 ¶¶ 2-5, 15 (Dkt. 2807-3).)

On July 16, 2013, after having conducted an initial investigation into Nokia's assertions, Quinn Emanuel notified Nokia of the inadvertent disclosures it had discovered, including by identifying the authors and recipients of the relevant emails as well as the contents of the attachments that related to the Apple-Nokia license agreement, and also confirmed its offer to discuss appropriate remediation. (Pease Decl. ¶ 11, Ex. A.) On August 1, 2013, Quinn Emanuel provided further information to Nokia and notified Apple of the results of its initial investigation. (*Id.* ¶¶ 12-13, Exs. B, C.)

After extensive discussions, Quinn Emanuel and Nokia's counsel negotiated and entered into a stipulation, which was filed on August 18, 2013 (the "Stipulation") (Case No. 12-cv-00630, Dkt. 742). The Stipulation described, among other things, search procedures to be conducted to identify documents in the possession of Samsung employees containing information about the Apple-Nokia license. (Decl. of Robert Becher, Dec. 2, 2013 ¶ 2 ("Becher Decl.") (Dkt. 2835-6).) Nokia *withdrew* its Motion for Protective Order in light of the Stipulation. (*Id.*)

***Apple's Motion for Sanctions.*** Before the Stipulation could be ordered, however, on August 23, 2013, Apple opportunistically filed a Motion to Compel Further Discovery and For Sanctions for Violations of Protective Order. (Dkt. 2374.) Apple sought broad discovery well beyond the already expansive investigation contemplated by the Stipulation. On October 1, 2013, Judge Grewal held a hearing on Apple's motion, and the following day he entered the Stipulation as an Order, but further ordered Samsung to provide several broad categories of discovery by no later than October 16, 2013. (Dkt. 2483, at 5 (the "October 2 Order").) Samsung moved for relief in this Court because Apple and Nokia were asserting, baselessly in Samsung's view, that the

---

that they had provided Samsung's in house team with the terms." (Case No. 12-cv-00630, Dkt. 647, Decl. of Paul Melin, June 28, 2013 ¶ 8 ("Melin Decl.").)

1   October 2 Order compelled Samsung to produce attorney-client privileged and work product materials. (Dkt. 2495.) On review, this Court confirmed that Samsung could "assert privilege objections during the course of the compelled discovery ..." (Dkt. 2538, at 7.)

In compliance with the October 2 Order, a Quinn Emanuel team of more than twenty attorneys reviewed a total of 69,862 documents — many in Korean — consisting of over 1,215,336 unique pages. (Becher Decl. ¶ 16.) Samsung produced 470 documents, totaling 12,988 pages, and further compiled a privilege log, served on October 16, 2013, reflecting more than 800 entries. (*Id*. ¶¶ 16, 36) In addition, as required by the October 2 Order, Samsung prepared and produced six of its senior employees for deposition in the United States, including a thoroughly prepared 30(b)(6) witness. (*Id.* ¶ 18). The depositions lasted more than 40 hours in total. (*Id.*)

On October 22, 2013, at a hearing following completion of the voluminous discovery directed in the October 2 Order and the parties' submission of supplemental briefs, Judge Grewal stated that he was "not yet satisfied that sanctions are warranted in this matter" and *sua sponte* ordered Samsung to submit the following documents for *in camera* review: (1) all documents responsive to the October 2 Order that were produced to Apple and Nokia with all redactions removed; (2) all documents Samsung had withheld based on privilege or work product; and (3) all attachments to responsive parent documents that were produced or logged. (Becher Decl. ¶ 67, Ex. 37 at 89:20-25, 94:2-25; *see also* Dkts. 2587-88.) Pursuant to that Order, Samsung submitted *in camera* 23 large volumes containing 275 parent documents and hundreds of additional attachments and translations and also produced a 737-page privilege log containing over 1300 individual entries. (Becher Decl. ¶ 65.)

On November 8, 2013, after completing his *in camera* review, Judge Grewal entered an Order to Show Cause ("OSC") in which he identified eleven documents out of the many "boxes" of documents submitted *in camera* as potentially supporting violations of the Protective Order. (Dkt. 2689 at 1, 3.) Judge Grewal directed Samsung "to demonstrate with specificity how each and every one of [those] documents fall under the protection of either the attorney-client privilege or the work-product doctrine …" (*Id.* at 4 n.16.)

Judge Grewal also permitted Samsung to take limited offensive depositions, including of

Nokia's Paul Melin, whose declaration started this whole process . (*Id.* at 4.) At his deposition, Mr. Melin admitted that his allegations against Samsung's Dr. Ahn were *all* based on conjecture and *not* what Dr. Ahn actually said. Specifically, Mr. Melin conceded that (i) Dr. Ahn never said he had been "told" the terms of the Apple-Nokia license (Becher Decl. ¶ 69, Ex. 39 at 236:5-17); (ii) Dr. Ahn never said that the Apple-Nokia license had been "received by Samsung's attorneys in the course of litigation" (*id.* at 235:2-6; Melin Decl. ¶ 8); and (iii) Dr. Ahn never said that Samsung's attorneys "had provided Samsung's in-house team with the terms" (Becher Decl. ¶ 69, Ex. 39 at 235:17-236:17; Melin Decl. ¶ 8). Instead, Mr. Melin *inferred* these allegations from Dr. Ahn's generic statements: "During the first session Dr. Ahn said that he has an idea of what Apple pays to Nokia under our license agreement, *which implied that he had been told of the financial terms of Nokia's license with Apple* …." (Becher Decl. ¶ 69, Ex. 39 at 242:15-20 (emphasis added).) Dr. Ahn "*did not specifically state whether this information was told to him personally or to his team* …." (*Id.* at 236:14-16 (emphasis added).)

Samsung also responded to the OSC by raising several points. This included that the expansive discovery had confirmed (1) the only disclosures of protected material were inadvertent errors by outside counsel, who had overlooked a few lines of protected material in the otherwise appropriately-redacted 295-paragraph Teece Report; and (2) contrary to the original allegations of Nokia's Melin, Samsung's Dr. Ahn had not used Nokia's confidential information at the June 4, 2013 negotiating session. (Dkt. 2835; *see also* Dkt. 2871 (Samsung's supplemental response to OSC).) Through sixteen detailed supporting declarations, Samsung also proved that each of the eleven documents cited in the OSC is protected by the attorney-client privilege, work-product doctrine, and/or the mediation privilege because "[e]ach is a confidential communication between or among Samsung's counsel and employees related to the ongoing litigation between Samsung and various third parties that reflects either the transmission of legal advice or a request for or provision of legal assistance, or attorney work-product in anticipation of or in the course of litigation." (Dkt. 2807, at 6).

***The Sanctions Order.*** On January 29, 2014, Judge Grewal issued the Sanctions Order. As relevant here, Judge Grewal concluded that while Quinn Emanuel had violated the Protective

Order by inadvertently circulating the insufficiently redacted Teece report to Samsung and by not having sufficient safeguards for protected information (Dkt. 2935, at 13-15), Samsung, and specifically Dr. Ahn, had not violated the Protective Order in connection with the June 4 negotiating session (*id.* at 10-11).  As to the latter ruling, Judge Grewal found that the record evidence left "the court unpersuaded that Samsung used the Teece Report in … [the] Nokia negotiations." (*Id.* at 11.)  Judge Grewal thus remarked that "what began as a chorus of loud and certain accusations"  led by "Nokia's Paul Melin [who] filed a declaration that launched a thousand accusations" (*id.* at 2)   "had died down to aggressive suppositions and inferences" (*id.* at 18).  Judge Grewal ordered Quinn Emanuel to reimburse Nokia and Apple for their expenses in litigating Apple's sanctions motion and the discovery associated with it, and to ensure that "all copies of the Teece report containing confidential information [be] deleted, erased, wiped, or otherwise permanently removed from Samsung's control within fourteen days …" (*Id.* at 18-19.)

The Sanctions Order also addressed Samsung's privilege claims.  Judge Grewal first explained the basis for his *in camera* review:  "[I]n the interest of getting to the bottom of things, *while respecting any valid assertions of privilege* that Samsung may have had, the court undertook an in camera review of all of the documents identified as relevant but privileged." (*Id.* at 3 (emphasis added).)  He then ruled that "[b]ecause Samsung offered to turn over the vast majority of the documents cited in this order, the court finds that privilege has been waived as to those documents.  As to all other documents cited, the court finds that the portions discussed in this order are not privileged." (*Id.* at 4 n.13.)[2]  Judge Grewal did not expressly rule on the other materials he had reviewed *in camera*, and Nokia had not asked him to do so.

The Court thereafter entered an order permitting the parties to seek relief from the Sanctions Order within 14 days after Judge Grewal quantified the amount of fees and expenses Quinn Emanuel owed.  (Dkt. 2950.)  The Court did not extend the time to appeal any other order.

***Nokia's Motion to Compel.***  Following the Sanctions Order, Nokia moved to compel Samsung's production of "at least the documents which the Court cited in its Sanctions Order and

---

[2]  Samsung has sought relief from the waiver ruling.  (Dkt. 3135).

which the Court found were not privileged or for which privilege was waived" (Dkt. 2988, at 3), on the grounds that those documents would purportedly assist with remediation (*id.* at 8-9) and were "referenced and form the basis for [the Sanctions Order]" (*id.* at 10 n.5; *see also* Dkt. 3075, at 15-16 (Nokia's counsel reiterating request during hearing)). On April 1, Judge Grewal denied the motion, expressing concern that Nokia sought to engage perpetual motion practice and questioning the "end game here." (Dkt. 3075, at 16:15). Judge Grewal instead required a declaration from Quinn Emanuel certifying that remediation was complete (Dkt. 3061, at 2 (the "April 1 Order")), which it subsequently provided (Dkt. 3106). Nokia did not file a motion for relief from the April 1 Order by the April 15 deadline. *See* Fed. R. Civ. P. 72(a).

After Judge Grewal issued the fee award (*see* Dkt. 3117), Nokia filed in this Court the present motion for relief ostensibly from the Sanctions Order as well as other Orders that Nokia had not previously challenged.

## Argument

### I. THE COURT SHOULD DENY NOKIA'S UNPRECEDENTED EFFORTS TO GAIN ACCESS TO SAMSUNG'S PRIVILEGED MATERIALS AND TO PROLONG THESE PROTRACTED PROCEEDINGS THROUGH STILL MORE DISCOVERY

#### A. Judge Grewal Properly Reviewed Samsung's Privileged Materials *In Camera*

Nokia first appears to argue (Mot. 3-4) that Judge Grewal erred by issuing the Sanctions Order without providing a document-by-document ruling on whether Samsung properly redacted or withheld materials as privileged in response to the October 2 Order. But Nokia has waived any argument that the sanctions motion should not have been resolved until Judge Grewal ruled on privilege or until Nokia obtained the documents submitted *in camera*. Nokia did not make this argument to Judge Grewal. In fact, when Judge Grewal provided the parties a final post-hearing opportunity "to tell me anything more you want to tell me about anything" (Dkt. 2883, at 134:11-12), Nokia reiterated its requests for sanctions that Judge Grewal ultimately ruled were "ludicrously overbroad" (Dkt. 2935, at 18), never suggesting those sanctions could be awarded only after Judge Grewal addressed Samsung's privilege claims or Nokia gained access to the documents submitted for *in camera* review. (Dkt. 2872-5.) Nokia may not raise this argument for

the first time now.  *See*, *e.g.*, 14 *Moore's Federal Practice* § 72.11[1][a], at 72-53 (3d ed. 2014 Supp.) ("A party's failure to present timely arguments … to a magistrate judge prior to the magistrate's ruling … waives that party's right to present those arguments … to the district court on appeal from the magistrate's nondispositive order.") (citing cases).

In addition to being waived, Nokia's position is baseless.  Nokia identifies no authority for its sweeping position that *in camera* review necessitates particularized privilege findings, and Nokia is unable to do so for good reason.  Imposing such a burdensome, unyielding requirement would easily overwhelm magistrate judges facing assertions of privilege and district judges asked to review their privilege rulings.  Magistrate judges, just like district judges, have broad discretion in determining whether and how to conduct *in camera* review.  *See*, *e.g.*, *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992) (decision whether to conduct *in camera* review "rests within the discretion of the district court"); *cf. SLPR, LLC v. San Diego Unified Port Dist.*, 2010 WL 3420748, at *1 (S.D. Cal. Aug. 30, 2010) (magistrate judge has "broad discretion … over discovery and general case management").[3]  Here, since Judge Grewal was not obligated to undertake *in camera* review in the first instance and had discretion in conducting it once he decided to do so, there is simply no basis for Nokia's argument that he acted "contrary to law" (28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)) by not providing written privilege rulings as to *each* of the thousands of pages he reviewed *in camera*.[4]  This is especially true with respect to

---

[3]   Nokia decries the purportedly "extensive ex parte communication" in the sanctions proceedings, but it mischaracterizes what occurred.  The process was one of *in camera* review not ex parte communications    and even Nokia concedes that *in camera* review of privilege claims is permissible.  (Mot. 3 (emphasis omitted)); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 n.6 (9th Cir. 2003) ("*in camera* inspection is a commonly-used procedural method for determining whether information should be protected or revealed to other parties").

[4]   Following his review, Judge Grewal questioned whether the eleven documents he had reviewed *in camera* were privileged, and he required additional submissions as to those documents.  (Dkt. 2689, at 3-4 & n.16.)  Judge Grewal later made privilege rulings as to the documents discussed in the Sanctions Order, thus implicitly upholding Samsung's privilege claims for the remaining documents submitted *in camera*.  (Dkt. 2935, at 4 n.13.)  Nokia offers no particularized objections regarding the documents *not cited* in the Sanctions Order, and, as discussed below, it has waived any argument it might have had to obtain access to documents *cited* in that order (*see infra*, at 12).

1  Samsung's privileged and work product documents because they reflect on their face that they
2  are *attorney* communications, and Nokia and Apple provided no showing or particularized
3  argument that Samsung's privilege claims were suspect.

4  Nokia also provides no support for its argument (Mot. 3) that it is entitled to review any
5  privileged documents Judge Grewal relied upon in issuing the OSC or the Sanctions Order.  Nokia
6  has waived this argument by not making it to Judge Grewal and never objecting to the process set
7  forth in the OSC, which itself was based on and included materials from Judge Grewal's *in*
8  *camera* review.  In any event, Nokia had no right to access or respond to Samsung's privileged
9  discovery materials *ab initio*, and Judge Grewal's *sua sponte* decision to review them *in camera*
10 did not somehow create a right to do so (*see* Part I.B, *infra*; *cf. Hawker v. BancInsurance, Inc.*,
11 2013 WL 6843088, at *3 (E.D. Cal. Dec. 27, 2013) ("The attorney client privilege is absolute and
12 disclosure cannot be ordered regardless of necessity, relevance, or any other circumstance
13 particular in the case.")).  Nokia may not now seek to exploit the process for *in camera* review that
14 Judge Grewal adopted and in which Nokia at minimum acquiesced to gain access to
15 Samsung's privileged materials.

16 Finally, Nokia's argument is based on the mistaken premise that Judge Grewal predicated
17 the Sanctions Order on privileged information.  In reality, the majority of the privileged
18 documents cited in the Order are cited for non-privileged facts, such as the fact of a
19 communication and not its privileged or work product substance. (*See* Dkt. 2935, at 5-6; *see*
20 *also Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988)).  Nokia does not and
21 cannot dispute this point, which alone disposes of Nokia's argument as to these documents, since
22 it has made no challenge to Judge Grewal's express findings that such information was not
23 privileged at all. (Dkt. 2935, at 4 n. 13).  Nor is there any merit in Nokia's suggestion that it was
24 denied access to such non-privileged information.  It was supplied to Nokia by, and readily
25 available from, Samsung's privilege log, redacted document production, and Rule 30(b)(6)
26 witness.  Similarly, information upon which Judge Grewal relied is also contained in non-
27 privileged declarations, depositions and correspondence in the record. (*See, e.g.*, Dkt. 2835-06,
28 Exhs. 1, 2, 32 and Dkt. 2395-3, Exhs. A-C (exhibits disclosing dates and content of inadvertent

disclosures); Dkt. 2835-09 (declaration discussing transmission of incompletely redacted Teece report to Daniel Shim and request to delete); Dkt. 2395-3, Exh. E (letter disclosing disclosure of incompletely redacted Teece Report to Daniel Shim on December 22, 2012 and instruction to delete report).) Other citations in the Order are to non-integral background information that is irrelevant to the merits of the decision and has nothing to do with the substance of any privileged communication. (*See*, *e.g.*, Dkt. 2935, at 6 & nn.29-30). Nokia has no legitimate basis for demanding such immaterial documents, particularly when weighed against the additional burden and expense that perpetuating Nokia's satellite litigation would impose on the Court and the parties. And to the extent that Judge Grewal cited or relied on privileged information on the ground that Samsung had waived privilege (Dkt. 2935, at 4 n.13), Samsung has sought relief from that ruling (*see* Dkt. 3135). Nokia thus has no right, let alone the need, to review any of the cited privileged documents in connection with this case.

### B. Nokia May Not Obtain The Privileged Materials That Samsung Submitted For *In Camera* Review

Nokia's motion for relief is, at its core, a last-ditch effort to obtain "all the documents [Samsung] submitted in camera." (Mot. 5.) But Nokia offers no legal basis for invading Samsung's privileges, let alone on such a massive, indiscriminate scale.

*First*, contrary to Nokia's intimations (Mot. 3-4 n.6, 5), Samsung's compliance with Judge Grewal's order to submit materials *in camera* did not waive privilege. Rather, it is well established that such *compelled* production *preserves* and does not waive privilege. *See*, *e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 274 (9th Cir. 1990) (explaining that *in camera* review is used "to *preserve* privileged information") (emphasis added); *Transamerica Comp. Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (noting the "general acceptance of the principle that waiver cannot result from compelled production"). To permit such a broad invasion of privilege based on a court-ordered *in camera* review would be unprecedented, to say the least, and turn the entire purpose of the *in camera* review process on its head.

*Second*, Samsung has not waived privilege by defending itself here. (*Contra* Mot. 4-5.) To effect an at-issue waiver, a party must assert the "privilege as the result of some affirmative

act, such as filing suit" and "through this affirmative act … puts the privileged information at issue." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal quotation marks and citations omitted). Mere denials of wrongdoing do not affirmatively put a party's privileged communications at issue. *See*, *e.g.*, *id.* ("[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation.") (citation omitted); *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (overruling decision finding implied waiver: "mere denial of intent is insufficient to establish waiver of the privilege"); *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996) ("mere denials … have not placed the contents of any privileged communication in issue") (citation omitted). Here, Samsung undertook no affirmative act such as filing suit, but instead denied allegations that it misused Nokia's confidential information or otherwise intentionally violated the protective order. Nokia may not rely on its now-discredited allegations of misuse as a springboard to obtain Samsung's privileged materials, particularly as to documents that Samsung merely produced as it was ordered to do so and upon which Samsung never relied.

*Third*, Nokia's footnoted assertion (Mot. 4-5 n.7) that Samsung effected a subject-matter waiver by partially disclosing attorney-client communications in defending itself is equally wrong. Nokia points to a single, partially-redacted attorney affidavit (Dkt. 2807-1), but the affiant's descriptions of the emails at issue address non-privileged portions of those emails and are otherwise sufficiently general so as to preserve privilege. *See*, *e.g.*, *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 7 (D.D.C. 1995) ("It is permissible for a party to disclose the nonprivileged portions of a document while redacting the privileged material, without waiving the privilege for the entire document."); Dkt. 2772, at 3 (Apple conceding that Samsung would not waive privilege by presenting arguments "at a level of generality that would not reveal the details of the documents at issue").

*Fourth*, even if (contrary to fact and law) Nokia's position had any validity and there was somehow a waiver of privilege, Nokia grossly overreaches in seeking *all* of the materials Samsung submitted *in camera*. The law rejects such blanket, indiscriminate approaches to waiver. A court may "impose a waiver no broader than needed to ensure the fairness of the proceedings before it."

*Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc); *see also id.* at 720-21 (upon finding implied waiver, a court should "not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them."); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (rejecting "blanket waiver of the attorney-client and work product privileges as to the entire case"). Here, before Nokia could gain access to materials over which Samsung claims privilege, Nokia was obliged to identify the particular documents over which it contended the privilege had been waived, present those specific arguments to Judge Grewal, and seek a ruling as to whether each of those documents was not privileged or why privilege has been waived as to those documents—rulings that could then be appealed to this Court. Because Nokia failed to do so, there is no basis now for Nokia's demand for the wholesale disclosure of all documents Samsung submitted *in camera*.

*Finally*, Nokia has waived its ability to seek disclosure of the documents subject to Judge Grewal's privilege rulings in the Sanctions Order. (Dkt. 2935, at 4 n.13). Following that Order, Nokia filed a motion before Judge Grewal seeking to "compel Samsung to at least produce documents that the Court has already held are not privileged or for which privilege has been waived." (Dkt. 2988, at 3; *see also id.* at 8-10 & n.5; Dkt. 3075, at 15-16.) On April 1, Judge Grewal denied Nokia's motion. (Dkt. 3061; Dkt. 3075, at 41-42). Nokia did not file a motion for relief from that order within 14 days, and it is therefore may not now request that the Court compel Samsung to turn over those documents. *See* Fed. R. Civ. P. 72(a) (14-day deadline to seek relief from magistrate judge's nondispositive order); *cf. Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir. 1996) ("[A] party who fails to file timely objections to a magistrate judge's nondispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order.").[5] Nokia's motion should be denied for this reason as well.

---

[5] Nor can Nokia rely on the so-ordered stipulation extending the parties' deadline to seek relief from "the Court's Order Granting Motion for Sanctions (Dkt. 2934)" to argue that its current challenge to the April 1 Order is timely. That so-ordered stipulation by its terms does not and
     (footnote continued)

## II. NOKIA'S OTHER REQUESTS FOR RELIEF ARE EQUALLY BASELESS

At the tail end of its motion, Nokia raises two additional quibbles with the Sanctions Order. Neither is well-developed, and neither has merit.

### A. Judge Grewal Rightly Focused On The Teece Report

In a single sentence, Nokia contends — without explanation — that Judge Grewal should have "focused on … additional improperly redacted documents" beyond the Teece Report. (Mot. 5.) This vague statement provides no notice of Nokia's objection and thus does not properly preserve the issue for review.[6] In any event, Nokia identifies no error of law, and there was none. To the extent that Nokia is referring to inadvertent disclosures of the Apple/Nokia license terms in an International Trade Commission proceeding (an issue that Apple raised before Judge Grewal), those disclosures are governed by the *ITC* protective order, are beyond the scope of the Protective Order in this case, and thus provide no basis for challenging the Sanctions Order. Judge Grewal properly "focused on" the inadvertent disclosures of confidential information *in this proceeding*.[7]

### B. Judge Grewal's Finding That Dr. Ahn Did Not Violate The Protective Order Is Correct And Certainly Not Clearly Erroneous

Nokia takes issue (Mot. 5) with Judge Grewal's finding that Dr. Ahn did not use the Teece Report during the June 4, 2013 Samsung/Nokia licensing negotiation (Dkt. 2935, at 11). But Nokia never explains why that finding — made after review of the voluminous record — is clearly

---

indeed could not apply to Judge Grewal's subsequent April 1 Order on Nokia's motion to compel. (Dkt. 2950.)

[6] *See, e.g.*, N.D. Cal. Civ. R. 72-2 ("Any objection filed pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) … must *specifically identify* the portion of the magistrate judge's order to which objection is made and the reasons and authority therefor.") (emphasis added); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Trans. Act (FACTA) Litig.*, 2010 WL 4942645, *3 n.1 (C.D. Cal. July 29, 2010) ("defendant's objections are too general to merit consideration and are therefore overruled")).

[7] After initially conceding that any ITC disclosures were not at issue here (12/13/13 Becher Decl. ¶ 5, Ex. 9, Dkt. 2871-15 (10/1/13 Tr. 17:22-18:17)), Apple — but not Nokia — argued to Judge Grewal that the inadvertent disclosures in the ITC are within this Court's purview because the Apple/Nokia license was effectively produced in the ITC pursuant to a cross-use provision in the Protective Order. In fact, the license was *separately* produced in the ITC in February 2012. (12/13/13 Becher Decl., ¶ 6, Ex. 6 (Dkt. 2871-12).). As a result, the ITC protective order governs the use of the license in that investigation.

1  erroneous, as would be necessary to overturn it. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P.
2  72(a). The record in fact offers ample support for this finding. This includes Dr. Ahn's sworn
3  testimony that he *did not* know the terms of the Apple-Nokia license but instead recited numbers
4  at the negotiation based on his discussions with industry sources ███████████
5  ████████████████████████████████████████████████████████████████
6  ██████████████████████████████████) Decl. of Seungho Ahn, Oct. 21, 2013 ¶¶ 14,
7  18, 19 (Dkt. 2556-8) ("Ahn Decl."); *see also* Dkt. 2935, at 11 (citing sources).)[8] For example,
8  ████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████
10 ████████| (Dkt. 2395-03, Exh. G). And, as Judge Grewal correctly found, when Nokia's
11 Melin was deposed, he largely backtracked from his earlier declaration regarding Dr. Ahn's
12 statements during the negotiations. (*See* Dkt. 2883 at 87:2-5 ("So it seems to me as I read that
13 deposition transcript, Mr. Melin paints a very different picture of the precision with which … Dr.
14 Ahn uses certain terms in that conversation."); *see also* Becher Decl. ¶ 69, Ex. 39 at 235:2-236:17,
15 242:15-20 (Melin testimony)); *see also supra*, at 5.
16     Indeed, objective evidence conclusively refuted Nokia's discredited allegations of use.
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████ (*See* Becher
19 Decl. ¶ 69, Ex. 39 at 174:23-175:1; Dkt. 2395 at 5-6; Pease Decl. ¶ 20 & Ex. G-K.) In particular,
20 ████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████
22 ████████████████████████████████) (Becher Decl. ¶ 69, Ex. 39 at 174:23-175:1;
23 Pease Decl. ¶ 20 & Ex. G-K (articles from 2011 reporting on the financial terms of Apple-Nokia

---

[8] This testimony regarding the public source of Dr. Ahn's testimony was corroborated by the other two Samsung employees who attended the meeting, James Kwak and Indong Kang. (Ahn Decl. ¶¶ 14, 16, 18-24; Dkt. 2557-8 [Ahn. Dep. Tr.] at 82:15-85:16; Decl. of Indong Kang, Oct. 21, 2013 ¶¶ 11, 15-19 (Dkt. 2556-10); Decl. of Jin Hwan Kwak, Oct. 21, 2013 ¶¶ 10, 12-14 (Dkt. 2556-12); Dkt. 2557-15 [Kwak Dep. Tr.] at 142:17-144:11.).

1  license).)   Furthermore, ███████████████████████████████████████████
2  ████████████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████████
4  ██████████]  Nokia's theory that Dr. Ahn misused its confidential information is thus
5  inconsistent with the actual terms of the documents involved.

6   Because it cannot overcome the actual record evidence, Nokia asks the Court (Mot. 5) to
7  create and apply a rebuttable presumption that Dr. Ahn improperly used Nokia's confidential
8  licensing information.  Such a presumption would be unprecedented   the single case that Nokia
9  cites is from the nonanalogous copyright context.  In any event, any such presumption was amply
10 rebutted here given the evidence discussed above that disproved Nokia's allegations (*see, e.g.*,
11 Dkt. 2935, at 11).  Finally, Nokia did not propose this extraordinary presumption to Judge Grewal,
12 and it is thus too late to raise it now.  *See* 14 *Moore's Federal Practice* § 72.11[1][a], at 72-51 (3d
13 ed. 2014 Supp.), *supra*.  This challenge too comes up short.

14                                **Conclusion**

15   Nokia's motion for relief should be denied.

16 DATED: July 22, 2014                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
17

18
                                        By /s/ *Michael T. Zeller*
19                                         Charles K. Verhoeven
                                           Kevin P.B. Johnson
20                                         Victoria F. Maroulis
                                           William C. Price
21                                         Michael T. Zeller

22
                                        Attorneys for SAMSUNG ELECTRONICS CO.,
23                                      LTD., SAMSUNG ELECTRONICS AMERICA,
                                        INC. and SAMSUNG
24                                      TELECOMMUNICATIONS AMERICA, LLC

## ATTESTATION

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michael T. Zeller has concurred in this filing.

Dated: July 22, 2014

*/s/ Victoria F. Maroulis*
Victoria F. Maroulis