UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 11-CV-01846-LHK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES |

Plaintiff Apple, Inc. ("Apple") brings this motion to recover attorneys' fees from Defendants Samsung Electronics, Co., Ltd., Samsung Electronics America, and Samsung Telecommunications America, LLC (collectively, "Samsung"). This case involves numerous intellectual property and antitrust claims, including claims of trade dress infringement and dilution. However, Apple's instant attorneys' fees motion, brought pursuant to the Lanham Act, seeks to recover only those attorneys' fees arising out of Apple's trade dress claims. *See* 15 U.S.C. § 1117(a). Having reviewed the parties' submissions, arguments at the July 17, 2014 hearing, the record in this case, and the relevant law, the Court DENIES Apple's motion for attorneys' fees.

## I. INTRODUCTION

Throughout this litigation, Apple asserted four trade dresses against Samsung: three relating to the iPhone, and one relating to the iPad. More specifically, Apple asserted that three Apple trade dresses—Apple's registered iPhone trade dress, based on Registration No. 3,470,983; Apple's unregistered iPhone 3G trade dress; and Apple's unregistered combination iPhone trade dress—were protectable, famous, and diluted by seventeen Samsung smartphones. *See* ECF No. 1931 at 10-12. Apple also contended that Apple's unregistered iPad/iPad 2 trade dress was infringed by two Samsung tablets. The jury ultimately found that two of Apple's asserted trade dresses associated with the iPhone—Apple's registered iPhone trade dress and Apple's unregistered iPhone 3G trade dress—were diluted by six of Samsung's smartphones. *Id*. Apple did not prevail as to the remaining eleven Samsung smartphones, or as to Apple's unregistered combination iPhone trade dress or Apple's unregistered iPad/iPad 2 trade dress. *Id*. Apple's motion for attorneys' fees, which Apple brings pursuant to the Lanham Act only, seeks fees related to Apple's win at trial with respect to the dilution of Apple's registered iPhone trade dress and Apple's unregistered iPhone 3G trade dress by six Samsung smartphones.

## II. BACKGROUND

### A. Procedural Background

Apple and Samsung sell competing smartphones and tablets. Apple filed its Complaint on April 15, 2011, alleging that the Samsung Galaxy line of products misappropriated the Apple Product Trade Dress by mimicking a combination of several elements of that trade dress. ECF No. 1 at 25-28.

Samsung moved for summary judgment on all of Apple's trade dress claims, arguing that Apple's trade dresses were functional and were not sufficiently famous. While the Court denied Samsung's motion in full, the Court found Samsung's "fame" argument to be persuasive such that "[i]t is a close question as to whether a reasonable juror could find on the record before the Court that the designs of Apple's products (exclusive of the Apple name, logo, or home button) were famous at the time Samsung released its products." ECF No. 1158 at 11.

1    At trial, Apple alleged dilution of the registered iPhone trade dress (based on Registration

2    No. 3,470,983), the unregistered combination iPhone trade dress, and the unregistered iPhone 3G

3    trade dress by seventeen Samsung smartphones. ECF No. 1189 at 3. Apple also alleged

4    infringement of Apple's iPad trade dress based on the unregistered iPad/iPad 2 trade dress by

5    Samsung's Galaxy Tab 10.1 (WiFi) and Tab 10.1 (4G LTE). *Id*. Samsung denied that Samsung

6    diluted either Apple's asserted iPhone or iPad trade dresses and contended that the asserted trade

7    dresses are unprotectable. ECF No. 1903 at 80.

8    At the close of trial, the Court instructed the jury to find that an asserted Apple trade dress

9    is protectable if the trade dress: (1) has acquired distinctiveness through secondary meaning and (2)

10   is non-functional. *Id.* at 82. The jury was then instructed to find that Samsung diluted Apple's

11   protectable trade dress only if: (1) the asserted Apple trade dress is famous; (2) Samsung began

12   selling its accused products in commerce after Apple's asserted trade dress became famous; and (3)

13   Samsung's accused products were likely to cause dilution of Apple's asserted trade dress. *Id.* at 86.

14   The jury was also instructed to "not award Apple monetary relief for any of its dilution claims

15   unless Apple proves by a preponderance of the evidence that Samsung's acts of dilution were

16   willful." *Id.* at 93.

17   As mentioned above, the jury found that Samsung willfully diluted Apple's registered

18   iPhone trade dress and the unregistered iPhone 3G trade dress by selling six products: the

19   Fascinate, Galaxy S (i9000), Galaxy S 4G, Galaxy S II Showcase (i500), Mesmerize, and Vibrant.

20   ECF No. 1931 at 10-12. The jury determined that Apple's other two asserted trade dresses—the

21   unregistered combination iPhone trade dress and unregistered iPad/iPad 2 trade dress—were not

22   protectable, and that the eleven other accused Samsung products did not dilute any asserted trade

23   dress.

24   Following the trial, Samsung moved for judgment as a matter of law on Apple's trade dress

25   claims. ECF No. 2013 at 19. Specifically, Samsung argued that no reasonable jury could find

26   Apple's trade dresses protectable and that no reasonable jury could find actionable and willful

27   dilution of Apple's asserted trade dresses by Samsung's accused products. *Id*. at 19-21. Apple also

28   moved for judgment as a matter of law that the unregistered iPad/iPad 2 Trade Dress is (1)

3

Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

protectable; and (2) famous and diluted. ECF No. 2002 at 14-19. The Court denied both parties' motions. *See* ECF No. 2219 (denying Apple's motion); ECF No. 2220 (denying Samsung's motion).

Apple now moves for an award of its attorneys' fees in connection with its trade dress claims. ECF No. 2851-8 ("Mot."). Samsung filed an opposition, ECF No. 2951 ("Opp."), and Apple filed a reply, ECF No. 3019 ("Reply"). Following the Supreme Court's recent decisions in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), and *Highmark Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 1744 (2014), the Court asked the parties to each submit a supplemental brief addressing the effect of the Supreme Court's decisions on Apple's motion for attorneys' fees. ECF No. 3092. Apple filed a supplemental brief. ECF No. 3099 ("Apple Supp. Brief"). Samsung filed a supplemental brief. ECF No. 3103 ("Samsung Supp. Opp."). Apple filed a reply. ECF No. 3108 ("Supp. Reply"). The Court held a hearing on July 17, 2014.

**B.      Apple's Asserted Trade Dresses**

Apple alleges that, via trade dress protection, Apple owns several distinctive features of Apple's iPhone and iPad products. Generally, Apple's asserted trade dresses cover the iPhone and iPad's overall look, along with the appearance of screen icons. In the complaint, Apple described these distinctive features as a device having "a flat rectangular shape with rounded corners, a metallic edge, a large display screen bordered at the top and bottom with substantial black segments, and a selection of colorful square icons with rounded corners . . . ." ECF No. 1 at 8.

Apple's trademark registration and trial brief provide further description of Apple's asserted trade dresses. According to Apple's registration, Apple's registered iPhone trade dress "consists of the configuration of a rectangular handheld mobile digital electronic device with rounded silver edges, a black face, and an array of 16 square icons with rounded edges. The top 12 icons appear on a black background, and the bottom 4 appear on a silver background." iPhone Trade Dress, Registration No. 3,470,983. The remainder of the description explains the distinctive appearance of the icons. *Id*.

Apple's unregistered trade dresses all share common elements. For example, in its trial brief, Apple describes the combination iPhone trade dress as comprising:

- A rectangular product with four evenly rounded corners;
- A flat, clear surface covering the front of the product;
- A display screen under the clear surface;
- Under the clear surface, substantial neutral (black or white) borders above and below the display screen and narrower neutral borders on either side of the screen;
- When the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen; and
- When the device is on, a bottom dock of colorful square icons with evenly rounded corners set off from the other icons in the display, which does not change as other pages of the user interface are viewed.

ECF No. 1299-2, Ex. A. Apple's unregistered iPhone 3G trade dress includes all elements of the combination iPhone trade dress, but adds "[t]he appearance of a metallic bezel around the flat, clear surface" and "[w]hen the device is on, a row of small dots on the display screen." *Id*. The iPad/iPad2 trade dress comprises the "rectangular product," "flat clear surface," "display screen," and "matrix of colorful square icons" elements, but also includes "[t]he appearance of a metallic rim around the flat clear surface" and "[u]nder the clear surface, substantial neutral (black or white) borders on all sides of the display screen." *Id*.

To illustrate its trade dress allegations, Apple included the following images in the Complaint:

Apple's iPhone 3GS          Samsung's Galaxy S i9000

 

Apple's iPad               Samsung's Computer Tablet

 

### C. The Parties' Arguments

Because the Supreme Court has instructed that fee award determinations require a review of the substantive strength of the parties' litigation positions, the Court now outlines the parties' trade dress arguments at trial and in their motions for judgment as a matter of law. *See Octane Fitness*, 134 S. Ct. at 1756 ("an 'exceptional' case is simply one that stands out from others with respect to

1  the substantive strength of a party's litigating position"). In general, Samsung argued that Apple's

2  trade dresses are invalid and that Samsung did not dilute Apple's trade dresses. First, Samsung

3  challenged the validity of Apple's trade dresses on three grounds: (1) Apple's registered iPhone

4  trade dress and unregistered iPhone 3G trade dress are unprotectable because the trade dresses have

5  utilitarian functionality; (2) Apple's registered iPhone trade dress and unregistered iPhone 3G trade

6  dress are unprotectable because the trade dresses have aesthetic functionality; and (3) Apple's

7  unregistered iPhone 3G trade dress did not acquire secondary meaning. ECF No. 2013 at 8-10. The

8  Court will summarize each argument in turn.

9        First, Samsung contended that Apple's trade dresses have utilitarian functionality because

10  Apple's own evidence confirmed that Apple's trade dresses are "essential to the use or purpose of

11  the article" and "affects [its] cost or quality." *Id*. at 9 (citing *Au-Tomotive Gold, Inc. v. Volkswagen

12  of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006)). For example, the asserted trade dresses include

13  a clear face covering the front of the iPhone, Retrial Transcript ("RT") 1199:25-1200:16

14  ("absolutely functional"); rounded corners, RT 680:9-15 ("help you move things in and out of your

15  pocket"); a large display screen, RT 674:20-675:24 ("a benefit to users"); a black color, RT

16  679:15-20 ("hide internal wiring and components"); familiar icon images, RT 2533:25-2534:15;

17  and a useful size and shape, DX5622.001 ("size and shape/comfort benefits"). ECF No. 2013 at 9.

18        Apple responded that the evidence supports non-functionality for four reasons. ECF No.

19  2131 at 8. First, the advertising evidence did not tout the utilitarian advantages of the design. RT

20  654:24-655:1 ("product as hero" ads show "visual impact" and do not tout utility). Second, the

21  design did not result from a comparatively simple or inexpensive method of manufacture. RT

22  494:15-495:21 (detailing "many" "[p]roduction problems" in manufacturing iPhone). Third, the

23  design does not yield a utilitarian advantage. RT 493:14-15 (Apple chose design because "[i]t was

24  the most beautiful"). Finally, alternative designs were available. PX10 (alternative designs); RT

25  1400:6-1401:1 (Dr. Kare and Mr. Bressler testified that there were alternative designs).

26        Second, Samsung asserted that Apple's trade dresses are unprotectable because of their

27  aesthetic functionality. ECF No. 2013 at 9. Samsung claimed that Apple's trade dresses are

28  aesthetically functional because Apple's own testimony indicated that Apple sought to make a

7

Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

"beautiful object," RT 484:1-11; that the iPhone was "beautiful and that that alone would be enough to excite people and make people want to buy it," RT 602:8-19; that "reasons for the iPhone success" are "people find the iPhone designs beautiful," RT 625:4-626:4; that the iPhone's "attractive appearance and design" motivates purchases, RT 635:23-636:5; and that customers "lust after [the iPhone] because it's so gorgeous," RT 721:3-7. ECF No. 2013 at 9-10. In response, Apple contended that beauty alone does not support a finding of aesthetic functionality. ECF 2050 at 8 (citing *Au-Tomotive Gold*, 457 F.3d at 1072). Apple also argued that Samsung failed to prove that protections for the iPhone trade dresses would put competitors at a "significant non-reputation-related disadvantage," meaning that Samsung did not show that Apple's products "are bought largely for their aesthetic value," which is a requirement for aesthetic functionality. *Id.* at 8 (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001)); *Au-Tomotive Gold*, 457 F.3d at 1068 (citing Restatement of Torts § 742).

Third, Samsung argued that Apple's trade dresses did not acquire secondary meaning. ECF No. 2013 at 10. Specifically, Samsung alleged that the evidence failed to show that consumers believed the *primary significance* of the asserted trade dress was to identify the product with Apple. *Id*. Apple's survey established that a majority of respondents shown blurred images of iPhones said they associated the "overall appearance" of the phone with "Apple" *or* "iPhone." RT 1583:10-1584:24. Samsung argued that this evidence was insufficient because a plaintiff "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." ECF No. 2013 at 10; *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118-19 (1938). Samsung also contended that Apple's evidence that Apple advertised the iPhone as a whole was insufficient to establish secondary meaning for Apple's trade dresses. ECF No. 2013 at 10; *see* PX11-14.

Apple took a broader approach to secondary meaning, arguing that courts consider various factors in assessing secondary meaning, including: (1) whether purchasers associate the configuration with plaintiff; (2) the degree and manner of plaintiff's advertising; (3) the length and manner of plaintiff's use of the configuration; and (4) whether plaintiff's use has been exclusive. ECF No. 2131 at 9 (citing *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989)).

8

Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  Apple contended that Apple's sales numbers, advertising expenditures, and advertisements
2  prominently displaying the iPhone design demonstrate that Apple's trade dresses had acquired
3  secondary meaning. *Id.*; *see* PX11 (print and outdoor ads); PX12 (TV ads); PX14 (media clips);
4  PX15 (sales numbers).

5  In addition, Samsung asserted that even if Apple's unregistered iPhone trade dress was
6  protectable, Apple's evidence did not meet the requirements for dilution on two grounds: (1) Apple
7  did not show that the trade dress was "famous" and (2) Apple did not show that the accused
8  Samsung phones "impair the distinctiveness" of Apple's trade dress. ECF No. 2013 at 10-11 (citing
9  15 U.S.C. § 1125(c)(2)(B)). The Court now summarizes each of these arguments.

10  First, Samsung claimed that Apple did not establish fame both because Apple did not offer
11  evidence from surveys restricted to the time before Samsung entered the market, and because
12  Apple's evidence did not show sufficient recognition by the general population. Apple's only
13  survey evidence supporting fame was a June 2011 survey, but Samsung entered the market in July
14  2010. As trade dress dilution is limited to uses "after the owner's mark has become famous,"
15  Samsung contended that Apple's survey evidence was irrelevant. 15 U.S.C. § 1125(c)(1); *see*
16  *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004) ("Accordingly,
17  we hold that any commercial use of a famous mark in commerce is arguably a diluting use that
18  fixes the time by which famousness is to be measured"); ECF No. 2013 at 10-11 (Samsung's
19  arguments). In addition, Samsung asserted that, even if it were relevant, Apple's June 2011 survey
20  evidence was insufficient to establish fame because it shows recognition by less than sixty-four
21  percent of likely cell phone purchasers—a subset of the general population. In support of its
22  argument, Samsung cited authority indicating that recognition by greater than sixty-five percent of
23  the general population is necessary to establish fame. ECF No. 2013 at 11 (citing *Nissan*, 378 F.3d
24  at 1014 (material disputed issue of fact regarding whether "fame" existed where Nissan Motor
25  introduced evidence of 898 million dollars in sales over a five year period and 65% consumer
26  recognition at the point when another company introduced a Nissan mark)); 4 *McCarthy on*
27  *Trademarks and Unfair Competition* § 24:106 (2008 ed.) (proposing that "75% of the general
28  consuming public of the United States" should be required)). Apple replied that surveys are not

9

required to demonstrate fame, and that most of Apple's other fame evidence—which is made up of advertisements, media clips, and press coverage—was from before July 2010, when Samsung entered the market. *Id*. at 9 (citing PX11 (print/outdoor ads); PX12 (TV ads); PX14 (media clips); PX133 (press coverage)).

Second, Samsung argued that the record did not support a finding of likely dilution because Apple did not demonstrate that the accused Samsung phones "impair the distinctiveness" of Apple's trade dresses. ECF No. 2013 at 11 (citing 15 U.S.C. § 1125(c)(2)(B); RT 1534:14-21 ("no empirical evidence" and "no hard data to show that Samsung's actions have diluted Apple's brand")). Apple responded that the correct test is likelihood of dilution, not actual dilution, so no such evidence is required. ECF No. 1189 at 9 (citing 15 U.S.C. § 1125(c)(1)).

## III.  LEGAL STANDARD

"Under the Lanham Act, an award of attorney's fees is within the district court's discretion . . . [and] should be reviewed for an abuse of discretion." *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir. 1997); *see also Highmark*, 134 S. Ct. at 1749 (holding that an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's determinations made under the Patent Act's identical fee-shifting provision, 35 U.S.C. § 285). In addition, "a determination that a trademark case is exceptional is a question of law for the district court, not the jury." *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).

The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). In *Octane Fitness*, the Supreme Court recently reviewed Section 285 of the Patent Act, which similarly provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In *Octane Fitness*, the Supreme Court held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. at 1756. In making this determination, the Supreme Court noted that the Patent Act and Lanham Act have "identical fee-shifting provision[s]" and cited to a Lanham Act case that interpreted "exceptional"

10

Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

to mean "uncommon" or "not run-of-the-mill." *Id.* (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)).

Ninth Circuit law surrounding the meaning of "exceptional" in the Lanham Act also provides further authority.[1] "Under 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to the prevailing party in exceptional circumstances, which includes cases in which the act is fraudulent, deliberate, or willful." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1039 (9th Cir. 2007); *see also Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510 (9th Cir. 2011) ("Exceptional cases include cases in which the infringing party acted maliciously, fraudulently, deliberately or willfully."); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) ("[A] trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful."). For the purposes of awarding attorneys' fees, an act "is not willful if the defendant might have reasonably thought that its proposed usage was not barred by the statute." *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998) (denying fees) (internal quotation marks and citation omitted). In addition, the Ninth Circuit has noted that the "'exceptional circumstances' requirement [is construed] narrowly." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008).

## IV. DISCUSSION

As an initial matter, Samsung argues that the Court should defer ruling on the attorneys' fees motion until after the appeals have concluded. Opp. at 1-2. Because the Court finds that Apple is not entitled to attorneys' fees, the Court sees no reason for delay and considers Apple's motion.

---

[1] The Supreme Court's decision in *Octane Fitness* is best interpreted as overturning the Federal Circuit's "overly rigid formulation" of a test for awarding attorneys' fees in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1391 (Fed. Cir. 2005). *Brooks Furniture* held that an "exceptional case" is one which involves "litigation-related misconduct of an independently sanctionable magnitude" or is both "objectively baseless" and "brought in subjective bad faith." *Octane Fitness,* 134 S. Ct. at 1756. As discussed above, the Supreme Court in *Octane Fitness* referred to the Lanham Act's and Patent Act's attorneys' fees provisions as "identical." The Supreme Court also cited a Lanham Act case to support its holding "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* (citing *Noxell*, 771 F.2d at 526). Accordingly, the Ninth Circuit's more flexible formulation of determining what constitutes an "exceptional case" in Lanham Act cases still applies after *Octane Fitness*.

11
Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Apple argues that this case is exceptional under § 1117(a) of the Lanham Act on two bases. First, Apple asserts that the jury verdict established willfulness, which renders the case exceptional. Second, Apple contends that Samsung could not have reasonably thought that Samsung's trade dress usage was legal because, according to Apple, Samsung deliberately copied Apple's iPhone. The Court will address each of Apple's contentions in detail below.

### A.     The Jury Verdict

In Apple's motion for attorneys' fees, Apple contends that the jury verdict established that Samsung's conduct was sufficiently willful to compel a finding that this case is exceptional. ECF No. 2851-8 at 3. Apple cites *Gracie v. Gracie* as the primary support for its argument. 217 F.3d 1060, 1068-69 (9th Cir. 2000). In *Gracie*, the Ninth Circuit affirmed the district court's exceptional case determination based on the *Gracie* jury's willful infringement verdict. *Id.* However, the specific jury instruction given in *Gracie* formed the basis of the court's reasoning. *Id.* The jury in *Gracie* was instructed that the jury "may find that [plaintiffs] intentionally infringed the [ ] service marks, if you find that they acted 'willfully,' or deliberately *and in bad faith*." *Id*. at 1068-69 (alterations and emphasis in original). The Ninth Circuit distinguished a Fifth Circuit case in which "the jury was instructed that 'willfully' only meant 'done voluntarily and intentionally.'" *Id*. at 1068 (citing *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684 (5th Cir. 1992)). Because the *Gracie* jury had explicitly found bad faith, the "finding of willful infringement is entitled to greater deference than that of the *Texas Pig Stands* jury." *Id*. at 1069.

Here, the jury found that Samsung's dilution of Apple's registered iPhone trade dress and unregistered iPhone 3G trade dress was willful. ECF No. 1931 at 14. However, the jury was not instructed as to the bad faith component of willfulness under the Lanham Act, but rather was only instructed to "not award Apple monetary relief for any of its dilution claims unless Apple proves by a preponderance of the evidence that Samsung's acts of dilution were willful." ECF No. 1903 at 93. "Willful" was not further defined in the instructions. *Id*. Therefore, *Gracie* is not controlling in the instant case.

In addition, the Ninth Circuit's general rule is that "[w]hile a jury finding of willful infringement is relevant to the question of whether a case is exceptional, it is insufficient on its own

12
Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

to support an award of fees in the absence of some aggravating circumstance or heightened level of culpability." *Invision Media Servs., Inc. v. Glen J. Lerner*, 175 Fed. App'x 904, 906 (9th Cir. 2006) ("Here, the reliance on the special jury verdict that the [trademark] infringement was willful is made more problematic by the fact that the term 'willful' was not defined for the jury.") (citing *Watec*, 403 F.3d at 656 ("[T]he jury's finding that [defendant] 'intentionally infringed' does not necessarily equate with the malicious, fraudulent, deliberate or willful conduct that we usually require before deeming a case exceptional.")). The jury's bad faith finding in *Gracie* is consistent with the "heightened level of culpability" required by the Ninth Circuit in *Invision* and *Watec* to find a case exceptional. In contrast, the district court in *Invision*, as the Court in the instant case, did not define willfulness for the jury. Notably, the 9th Circuit in *Invision* vacated the district court's award of fees because the district court relied too heavily on the jury's finding of willful infringement. In sum, and consistent with *Invision*, *Gracie*, and *Watec*, the jury's willfulness finding in the instant case weighs in favor of exceptionality, but, contrary to Apple's assertion, it is not dispositive. Therefore, to appropriately consider the totality of the circumstances as contemplated by *Octane Fitness* and the Ninth Circuit's Lanham Act case law, the Court must also consider Apple's copying evidence and Samsung's evidence supporting its defenses. The Court now turns to these issues.

**B.  Whether Samsung Reasonably Thought That Its Proposed Usage Was Not Barred By The Lanham Act**

Exceptional cases under 15 U.S.C. § 1117(a) are "cases in which the act is fraudulent, deliberate, or willful." *Horphag*, 475 F.3d at 1039. As discussed above, a jury finding of willfulness is insufficient to establish willfulness under 15 U.S.C. § 1117(a). Rather, for the purpose of awarding attorneys' fees, an act "is not willful if the defendant might have reasonably thought that its proposed usage was not barred by the statute." *Blockbuster Videos*, 141 F.3d at 1300 (internal quotation marks and citation omitted) (denying fees to prevailing plaintiff in trademark case); *see also Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986), *aff'd sub nom San Francisco Arts & Athletics v. Inter-National Olympic Comm.*, 483 U.S. 522 (1987) (holding by analogy to patent law that a party that reasonably believes

13
Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

that its usage is not barred by the Lanham Act has not committed willful infringement entitling the plaintiff to attorneys' fees); *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 293 (C.D. Cal. 1992) (declining to award fees where defendants "introduced some evidence at trial supporting their reasonable belief" of non-infringement). Apple contends that Samsung could not have reasonably thought that its trade dress usage was legal because, according to Apple, Samsung deliberately copied Apple's iPhone.

At trial, Apple argued that Samsung engaged in a "deliberate strategy of copying every aspect of the iPhone—including the whole look of the iPhone, which is the trade dress—without making any effort to avoid Apple's protected IP." ECF No. 2851-8 at 3-4. In making this allegation, Apple relied on a Samsung report that concluded that the iPhone's "[b]eautiful design" and "[e]asy and intuitive UI" were among the key iPhone "[s]uccess [f]actors" and that copying them would be "easy." PX34.38. Apple also pointed to the similarities between the iPhone and the Galaxy S i9000, including the similarity of industrial design, the home screen, and the icons. ECF No. 2851-8 at 5. As outlined above, the jury subsequently found that six of Samsung's seventeen accused smartphones (Fascinate, Galaxy S (i9000), Galaxy S 4G, Galaxy S II Showcase (i500), Mesmerize, and Vibrant) diluted Apple's registered iPhone trade dress and diluted Apple's unregistered iPhone 3G trade dress. ECF No. 1931 at 11-12.

However, the question remains as to whether Samsung, despite Apple's evidence of copying, might have reasonably thought that Samsung's usage of similar trade dresses was not barred by the Lanham Act. *See Blockbuster Videos*, 141 F.3d at 1300. A discussion of Samsung's defenses sheds light on the reasonableness of Samsung's position. The Court now reviews Samsung's defenses to Apple's trade dress claims.

The Lanham Act only prohibits dilution of famous and non-functional trade dresses. 15 U.S.C. § 1117(c)(4)(a). At trial, Samsung challenged both the famousness and the non-functionality of Apple's trade dresses. The Court concludes that Samsung's defenses to Apple's dilution claims for Apple's registered iPhone trade dress and unregistered iPhone 3 trade dress demonstrate that Samsung might have reasonably thought that Samsung's actions were not barred

by statute and that, therefore, Apple is not entitled to attorneys' fees. The Court will first review Samsung's famousness defense, and then turn to Samsung's functionality defenses.

### 1.   Famousness

Samsung argues that it presented a reasonable famousness defense to Apple's trade dress claims. Throughout this litigation, Samsung claimed that Apple did not establish fame because Apple failed to offer evidence from surveys restricted to the time before Samsung entered the market, *see Nissan*, 378 F.3d at 1013, and Apple's June 2011 survey showed recognition by less than sixty-four percent of likely cell phone purchasers, a subset of the general population, RT 1578:24-1579:4; 1584:17-1585:5, which was insufficient to establish fame. ECF No. 2013 at 11 (citing *Nissan*, 378 F.3d at 1014 (material disputed issue of fact regarding whether "fame" existed where Nissan Motor introduced evidence of 898 million dollars in sales over a five year period and 65% consumer recognition at the point when another company introduced a Nissan mark)); 4 *McCarthy on Trademarks and Unfair Competition* § 24:106, 24:310 (2008 ed.) (proposing that "75% of the general consuming public of the United States" should be required)). Samsung also contended that Apple did not establish fame because much of Apple's advertisement and press coverage evidence was dated after Samsung's alleged first use, rendering the evidence irrelevant. ECF No. 2013 at 11; *see* PX12-14.

As to the famousness of Apple's trade dresses, this Court denied Samsung's motion for summary judgment, but acknowledged that the famousness of Apple's trade dresses was "a close question." Specifically, this Court found as follows:

> It is a close question as to whether a reasonable juror could find on the record before the Court that the designs of Apple's products (exclusive of the Apple name, logo, or home button) were famous at the time Samsung released its products. Nonetheless, viewing the evidence in the light most favorable to Apple, there appears to be enough evidence from which a reasonable jury could conclude that the iPhone, iPhone 3G, and iPad trade dresses were "famous" for establishing the dilution claim.

ECF 1158 at 11. The fact that the Court found the famousness of Apple's trade dresses to be "a close question" is, by itself, sufficient for the Court to deny Apple's motion for attorneys' fees. "[T]he substantive strength of [Samsung's] litigating position" does not "stand[] out from others"

15
Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1   given that the Court previously called the issue "a close question." *Octane Fitness*, 134 S. Ct. at

2   1756. In the pre-*Octane Fitness* patent law jurisprudence, "a lawsuit which survives a motion for

3   summary judgment is not objectively baseless." *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. 09-

4   cv-01201 RMW, 2012 WL 4483158, at *13 (N.D. Cal. Sept. 27, 2012) *aff'd*, 734 F.3d 1332, 1345

5   (Fed. Cir. 2013) (citing *Medtronic Navigation, Inc. v. BrainLAB Medizinische ComputerSysteme*

6   *GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (reversing exceptional case finding where the "district

7   court's characterization of Medtronic's claims as frivolous is undermined by the fact that the court

8   denied BrainLAB's motions for summary judgment and denied each of its motions for JMOL filed

9   during the trial")). While the standard for awarding attorneys' fees is no longer objective

10  baselessness, Apple narrowly avoided summary judgment against its trade dress claims based on

11  Samsung's famousness defense. This fact strongly suggests that this is not an "exceptional" case as

12  contemplated by 15 U.S.C. § 1117(a). Therefore, if a jury might have reasonably thought that

13  Apple's trade dresses had not achieved the requisite fame, Samsung might also have reasonably

14  thought that Apple's trade dresses had not achieved the fame required for Apple's trade dresses to

15  be protectable. Lack of fame thus constitutes a reasonable defense to Apple's trade dress dilution

16  claims. Accordingly, Samsung's litigation position was not so weak as to render this case

17  "exceptional." *See* 15 U.S.C. § 1117(a).

### 2. Non-functionality

19  On non-functionality, Samsung argued that Apple's trade dresses have both utilitarian and

20  aesthetic functionality. ECF No. 2013 at 8-10. The Court considers each in turn.

21  First, Samsung alleged that Apple's trade dresses demonstrate utilitarian functionality

22  because the claimed trade dresses have a clear face covering the front of the iPhone, RT 1199:25-

23  1200:16 ("absolutely functional"); rounded corners, RT 680:9-15 ("help you move things in and

24  out of your pocket"); a large display screen, RT 674:20-675:24 ("a benefit to users"); a black color,

25  RT 679:15-20 ("hide internal wiring and components"); familiar icon images, RT 2533:25-

26  2534:15; and a useful size and shape, DX5622.001 ("size and shape/comfort benefits"). ECF No.

27  2013 at 9.

28

16

Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1	The Supreme Court has instructed that a feature has utilitarian functionality if it is
2	"essential to the use or purpose of the article or . . . affects [its] cost or quality." *Inwood Labs., Inc.*
3	*v. Ives Labs., Inc.*, 456 U.S. 844, 850 n. 10 (1982); *see also Disc Golf Ass'n, Inc. v. Champion*
4	*Discs, Inc.*, 158 F.3d 1002, 1007 (9th Cir. 1998) ("A product feature need only
5	have *some* utilitarian advantage to be considered functional.") (emphasis in original). Samsung
6	contended that the iPhone's rounded corners, large display screen, and useful size and shape are all
7	features that may serve a utilitarian function. As detailed above, Samsung presented several
8	documents indicating that Apple may have considered these features as having a utilitarian
9	purpose. *See, e.g.*, RT 680:9-15 (rounded corners "help you move things in and out of your
10	pocket"); RT 674:20-675:24 (a large display screen is "a benefit to users"); RT 679:15-20 (black
11	color used to "hide internal wiring and components"); RT 1199:25-1200:16 (clear face covering
12	the front of the iPhone is "absolutely functional"); RT 2533:25-2534:15 (familiar icon images);
13	DX5622.001 ("size and shape/comfort benefits"). Samsung also presented testimony from its
14	experts, Mr. Itay Sherman and Mr. Sam Lucente, that Apple's trade dresses serve functional
15	purposes. Based on the documentary and expert evidence presented by Samsung, Samsung may
16	have reasonably thought that Apple's trade dresses serve utilitarian functions, which would render
17	Apple's trade dresses unprotectable. *Au-Tomotive Gold*, 457 F.3d at 1067 ("A functional product
18	feature does not . . . enjoy protection under trademark law.").
19	Second, Samsung alleged that Apple's trade dresses possess aesthetic functionality because
20	testimony from Apple's witnesses indicates that Apple designed the iPhone to be aesthetically
21	functional. Samsung cited testimony from Apple's industrial designer Christopher Stringer and
22	Apple's Senior Vice President of Worldwide Product Marketing Philip Schiller stating that in
23	designing the iPhone, Apple sought to make a "beautiful object," RT 484:1-11 (Christopher
24	Stringer); that the iPhone is "beautiful and that that alone would be enough to excite people and
25	make people want to buy it," RT 602:8-19 (Philip Schiller); that "reasons for the iPhone [sic]
26	success" are "people find the iPhone designs beautiful," RT 625:4-626:4 (Schiller); that the
27	iPhone's "attractive appearance and design" motivates purchases, RT 635:23-636:5 (Schiller); and
28	

17
Case No.: 11-CV-01846-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1     that customers "lust after [the iPhone] because it's so gorgeous," RT 721:3-7 (Schiller). ECF No.

2     2013 at 9-10.

3           In *Au-Tomotive Gold*, the Ninth Circuit held that "where an aesthetic product feature serves

4     a 'significant non trademark function,' the doctrine may preclude [Lanham Act] protection . . .

5     where doing so would stifle legitimate competition." *Au-Tomotive Gold*, 457 F.3d at 1064 (citing

6     *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 170 (1995)). At trial, the jury was presented

7     with the above evidence of the iPhone's aesthetic functionality. The jury was also confronted with

8     some evidence indicating that consumers are not significantly motivated by the iPhone's design.

9     Both parties advanced substantial opposing evidence on this issue. In deliberations, the jury had to

10    weigh this conflicting evidence to reach a verdict. While the jury was ultimately unpersuaded by

11    Samsung's position, Samsung presented evidence of the iPhone's aesthetic functionality, much of

12    it as trial testimony from Apple's own witnesses. Therefore, Samsung might have reasonably

13    thought that the iPhone trade dresses were aesthetically functional, and thus that the Lanham Act

14    would not prohibit Samsung's use of similar phone designs. Consequently, Samsung presented

15    sufficient evidence to support reasonable defenses of both utilitarian and aesthetic functionality.

16          **3.**    **Summary**

17          The Court must now balance the jury's willfulness finding and Apple's copying evidence

18    against the validity of Samsung's defenses to determine whether this case is exceptional under 15

19    U.S.C. § 1117(a). The Supreme Court has counseled that "[t]rade dress protection must subsist

20    with the recognition that in many instances there is no prohibition against copying goods and

21    products." *TrafFix*, 532 U.S. at 29. In navigating the line between legitimate competition and trade

22    dress dilution, Samsung ventured into trade dress dilution, and the jury awarded Apple substantial

23    damages for Apple's losses. As analyzed above, the jury's willfulness finding indicates, at a

24    minimum, that the jury found that Samsung acted voluntarily in diluting Apple's trade dresses. In

25    addition, Apple's evidence of copying implies that Samsung intentionally appropriated elements of

26    the iPhone.

27          However, Samsung presented several reasonable defenses that cause the Court to conclude

28    that this is not an exceptional case warranting an award of attorneys' fees. The Court already held

at summary judgment that it was a "close question" whether Apple had presented sufficient evidence for a reasonable jury to find that Apple's trade dresses had achieved the requisite fame for trade dress protection. On this basis alone, Samsung could have reasonably thought that the elements of the iPhone Samsung copied were not owned by Apple. Samsung also presented evidence demonstrating that Apple's trade dresses may have utilitarian and aesthetic functionality, two additional reasons why Samsung could have reasonably thought that its actions were not prohibited by the Lanham Act. Finally, the jury concluded that two of Apple's asserted trade dresses were not protectable and that eleven of the seventeen accused Samsung smartphones did not dilute Apple's protectable trade dresses. The jury verdict thus casts some doubt on Apple's assertion that the jury found that Samsung engaged in a "deliberate strategy of copying every aspect of the iPhone—including the whole look of the iPhone, which is the trade dress—without making any effort to avoid Apple's protected IP." ECF No. 2851-8 at 3-4.

In sum, "[u]nder the Lanham Act, an award of attorney's fees is within the district court's discretion." *Boney*, 127 F.3d at 825; *see also Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999) ("[A]wards are never automatic and may be limited by equitable considerations") (internal quotation marks and citation omitted); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1134 (9th Cir. 1986) (pointing out that under the Lanham Act, while courts "may" award fees in exceptional cases, the Act does not require them). In its discretion, based on the Court's evaluation of the totality of the circumstances, the Court concludes that this is not an exceptional case that "stands out from others with respect to the substantive strength of a party's litigating position." *Octane Fitness*, 134 S. Ct. at 1756. Rather, Samsung raised several reasonable defenses to Apple's trade dress dilution claims, establishing that Samsung "might have reasonably thought that its proposed usage was not barred by the statute." *Blockbuster Videos*, 141 F.3d at 1300. Therefore, Apple is not entitled to its attorneys' fees under 15 U.S.C. § 1117(a).

## V. CONCLUSION

For the reasons discussed above, Apple's Motion for Attorneys' Fees is DENIED.

**IT IS SO ORDERED.**

Dated: August 20, 2014

*Lucy H. Koh*
LUCY H. KOH
United States District Judge