QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (RE: DOCKET NO. 3117), ORDER SETTING REASONABLE ATTORNEY'S FEES AND COSTS**<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.     APPLE AND NOKIA FAILED IN THEIR PURSUIT OF "LUDICROUS"
       SANCTIONS AGAINST SAMSUNG AND QE ................................................................ 2

       A.     Apple and Nokia Failed To Prove Any Transmissions Of Confidential
              Information Beyond Those That Samsung and QE Disclosed Voluntarily ............. 3

       B.     Apple and Nokia Failed To Prove Misuse Of Their Confidential
              Information Or Any Resulting Harm ..................................................................... 4

       C.     Apple And Nokia Failed To Obtain The Relief They Sought................................. 6

       D.     Apple And Nokia Lost Repeated Motions And Arguments ................................... 7

II.    THE WORK APPLE AND NOKIA PERFORMED WAS UNNECESSARY AND
       DID NOT CONTRIBUTE TO THE LIMITED RELIEF THEY OBTAINED ................... 9

III.   THE AWARD OF EXPENSES IS CONTRARY TO LAW ............................................. 11

       A.     An Award Of Full Expenses To Apple And Nokia Is Not "Reasonable" As
              A Matter Of Law ................................................................................................. 11

       B.     The Expenses Awarded To Apple and Nokia Were Not "Caused By" QE's
              Inadvertent Disclosures ...................................................................................... 13

       C.     The Fee Award Should Be Reduced By At Least 50%.......................................... 15

CONCLUSION ...................................................................................................................... 15

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET
NO. 3117

# TABLE OF AUTHORITIES

**Page**

### Cases

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ...........................................................................14

*HM Electronics, Inc. v. R.F. Technologies, Inc.*,
   2014 WL 3014372 (S.D. Cal. July 3, 2014) .............................................12, 15

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...........................................................................12, 13, 14

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
   2014 WL 1338480 (N.D. Cal. Apr. 1, 2014) ................................................13

*Lira v. Cate*,
   2010 WL 727979 (N.D. Ca. Feb. 26, 2010) ..................................................12

*Mares v. Credit Bureau of Raton*,
   801 F.2d 1197 (10th Cir. 1986) ....................................................................15

*McElroy v. Cox*,
   2012 WL 537139 (E.D. Cal. Feb. 17, 2012) ................................................13

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ......................................................................15

*PepsiCo v. Cent. Inv. Corp., Inc.*,
   216 F.R.D. 418 (S.D. Ohio 2002) .................................................................13

*Serv. Employees Int'l Union v. Rosselli*,
   2010 WL 4286287 (N.D. Cal. Oct. 22, 2010) ..............................................14

*Sorenson v. Mink*,
   239 F.3d 1140 (9th Cir. 2001) ......................................................................12

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*,
   2012 WL 5816878 (S.D.N.Y. Nov. 14, 2012) .........................................12, 13

*Toth v. Trans World Airlines, Inc.*,
   862 F.2d 1381 (9th Cir. 1988) ......................................................................13

**TABLE OF AUTHORITIES** (Cont.)

**Page**

**Statutes**

42 U.S.C. § 1988 ................................................................................................................12

Fed. R. Civ. P. 37 ..............................................................................................................15

Fed. R. Civ. P. 37(b) ..........................................................................................................13

Fed. R. Civ. P. 37(b)(2) .........................................................................................12, 13, 14

Fed. R. Civ. P. 37(b)(2)(C) .......................................................................2, 11, 12, 13, 14

**Preliminary Statement**

In this case, a Quinn Emanuel ("QE") associate incompletely redacted an expert report before forwarding it to Samsung, following which the same document was forwarded scores of times. The incomplete redaction and subsequent transmissions were inadvertent; there is no claim otherwise. For this conduct, QE has been sanctioned a record amount (as far as we have been able to determine) of more than $2 million. This award is contrary to law and should not stand.

To attempt to defend Judge Grewal's unprecedented sanctions award, Apple and Nokia raise highly misleading and indeed untruthful arguments. They argue that it took all the discovery they obtained to "uncover" the protective order violations, which they claim were on a "far larger scale" than what Samsung and QE had disclosed. Not true. At the time Apple filed its motion for discovery and for sanctions, QE had *already disclosed* the inadvertent transmissions it knew of— including details about the dates, senders and recipients of the Teece report—and had agreed to a comprehensive stipulation that would result in the identification of all additional disclosures. Apple and Nokia do not identify a single disclosure of their alleged confidential information other than those that Samsung and QE identified voluntarily and pursuant to the stipulated process. No discovery was needed to "unearth" these disclosures and it is flat wrong for them to assert otherwise. Moreover, Apple and Nokia ignore that the bulk of the discovery they obtained was completely irrelevant—yet tremendously burdensome for Samsung to produce—because it related to Apple's licenses with non-parties Ericsson, Sharp, and Philips. This discovery was a dead end.

Apple and Nokia also argue, falsely, that they "'succeeded' in proving their allegations of harm." But *every one* of their "allegations of harm" was *discredited entirely*—including by their own witnesses (including Apple's 30(b)(6) witness on this very topic) who testified that they were not harmed at all. Judge Grewal was ultimately "unpersuaded that Samsung used the Teece Report" in any licensing negotiation—even though that accusation "launched" this proceeding.

Apple and Nokia are similarly wrong that they "prevailed" on their multiple motions to compel Samsung's privileged documents. They *lost* these motions because they never obtained any of the relief they sought—as evidenced by the fact that they are still seeking production of Samsung's privileged documents. (*See* Dkts. 3136, 3159.)

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET NO. 3117

1    Finally, Apple's and Nokia's argument that they "unquestionably obtained 'success'" on

2   their requests for sanctions is completely belied by the record.  They ignore that they aggressively

3   pursued extraordinary—and unprecedented—forms of monetary, injunctive and other relief

4   against Samsung and QE that Judge Grewal *rejected* as "ludicrously overbroad."  Judge Grewal

5   awarded them only what *they* termed the "*bare minimum*" of what they sought—their fees and

6   costs.  The relief they obtained was so unsatisfying that Nokia has moved for relief from the

7   sanctions order arguing it was "*clearly erroneous and contrary to law*" (Dkt. 3136 at 1), and

8   Apple and Nokia are both trying to prolong these proceedings by seeking additional documents.

9    Samsung does not dispute that an award of some fees and expenses is appropriate.  But

10  given Apple's and Nokia's near complete lack of success on their requests for relief, even the

11  "bare minimum" they sought is too much.  While Apple and Nokia quibble that "apportionment"

12  is not "required" under Rule 37(b)(2)(C), "*reasonableness*" is.  As a matter of law, it was not

13  "reasonable" to award Apple and Nokia their full expenses without accounting for the limited

14  extent of success they obtained and for the considerable unnecessary work they performed that

15  was not "caused by" any protective order violations.  Because Judge Grewal failed to reduce the

16  expense awards on those grounds, the award is contrary to law and an abuse of discretion.

17                                          <u>Argument</u>

18  **I.    APPLE AND NOKIA FAILED IN THEIR PURSUIT OF "LUDICROUS"
        SANCTIONS AGAINST SAMSUNG AND QE**

19

20   To attempt to show that they "prevailed" in their quest for broad sanctions against

21  Samsung and QE, Apple and Nokia resort to quoting snippets—isolated words like "conscious"

22  and "strategic"—from Judge Grewal's lengthy and detailed sanctions order completely out of

23  context.  (*See* Apple Br. at 1, 6, 12.)  They likewise rely on Judge Grewal's commentary in his

24  various discovery rulings that were made while Apple and Nokia were still raising their "chorus of

25  loud and certain accusations" about the grave harm they allegedly suffered from Samsung's

26  alleged misuse of their information—comments made before, as Judge Grewal later found, that

27  chorus "died down to aggressive suppositions and inferences," when it turned out their accusations

28  were completely unsupported by evidence.  (Dkt. 2935 at 18.)  The extent to which Apple and

Nokia "prevailed" should be assessed not by the misleading use of isolated words, but by the findings that were actually made and the *results they actually obtained*. By that measure, as shown below, they were almost entirely unsuccessful.

> **A.** **Apple and Nokia Failed To Prove Any Transmissions Of Confidential Information Beyond Those That Samsung and QE Disclosed Voluntarily**

Apple and Nokia argue, wrongly, that Judge Grewal was "ultimately" able to identify "hundreds" of protective order violations only with the benefit of the discovery that was produced and "despite [Samsung's] efforts to obfuscate." (Apple Br. 1; *see* Nokia Br.1, 6-7.) This is not true. The purported "hundreds" of violations emanated from a single mistake by a QE associate in failing to completely redact a few paragraphs of the 295-paragraph Teece report before forwarding it to Samsung employees on March 24, 2012. (Dkt. 2935 at 4-5.) It is undisputed that no one at Samsung or QE knew of the mistake during 2012 when the same version of the report was forwarded three more times by QE, periodically within Samsung and to other Samsung counsel. That the same report was forwarded to, in total, "hundreds" of people before the error was noticed is extremely unfortunate. But Apple's and Nokia's attempt to support the reasonableness of the fee award by beating the drum of "hundreds of protective order violations" is grossly misleading.[1]

Moreover, it is undisputed that Samsung had disclosed *all* the transmissions of the Teece report it had been able to identify up to that point *before* Apple filed its motion for sanctions, including by providing details about the dates, senders and recipients of the information, and that it disclosed the remainder of them voluntarily pursuant to a stipulated process. (*See* Dkt. 2871-3 at 8-9.) Tellingly, Apple and Nokia do not identify a single communication of the information that they uncovered that Samsung did not otherwise disclose. That is because they cannot. Apple's and Nokia's argument that they were able to "uncover" protective order "violations" only

---

[1]   Apple's reliance on the number of recipients of the Teece report (instead of the handful of times the report was forwarded by QE or within Samsung) to assert "hundreds of protective order violations" is also ironic given that Apple itself mistakenly filed *publicly* all the confidential terms of the Apple/Nokia license and allowed that information to remain public for weeks before it was withdrawn (*see* Dkt. 2964-4 at 3)—meaning that an *indeterminate* number of unauthorized individuals might have accessed that information leading to, in Apple's view, an indeterminate and even larger number of "protective order violations" by Apple.

through discovery and "despite" Samsung's "obfuscation" is simply false.[2]

**B.    Apple and Nokia Failed To Prove Misuse Of Their Confidential Information Or Any Resulting Harm**

Apple's argument (Br. 12) that "Apple and Nokia 'succeeded' in proving their allegations of harm" is untrue.  In fact, their "allegations of harm" were discredited entirely.

In the proceedings before Judge Grewal, Apple extensively pursued various theories that Samsung misused Apple's confidential information in licensing negotiations not only with Nokia, but also with Ericsson, Sharp and Philips, as well as in the Apple/Samsung ITC proceeding.  (*E.g.*, Dkt. 2838-3 at 10-15.)  Apple went so far as to argue that QE's conduct amounted to "criminal" obstruction of justice.  (12/9/13 Tr. 58:25-59:3.)  Apple does not dispute that these claims were not supported by evidence.  Indeed, not only did Apple fail to prove any harm, but its own 30(b)(6) witness who was compelled to testify on that issue could not identify any.  (Dkt. 2835-3 at 17-18.)

For its part, Nokia argued below—including in the Melin declaration that "launched a thousand accusations" (Dkt. 2935 at 2)—that Samsung's Dr. Ahn misused its confidential information at the June 2013 licensing meeting with Mr. Melin.  While Nokia (Br. 12) continues to defend Mr. Melin's assertions, not only were they never proven, they in fact were *disproven* (as Judge Grewal found) by discovery Samsung was authorized to take over Nokia's objection.

Specifically, Mr. Melin claimed in his declaration that "Mr. Ahn of Samsung informed us that he had been told of the financial terms of Nokia's license with Apple [and] stated that the agreement had been received by Samsung's attorneys in the course of litigation, and that they had provided Samsung's in-house team with the terms."  (Case No. 12-630 Dkt. 647-1 at ¶ 8.)  At his deposition, Mr. Melin disclaimed key portions of his declaration and admitted that (i) Dr. Ahn

---

[2]    As a further example of its overheated rhetoric, Apple argues (Br.  2), falsely, that Samsung sought to "prevent Apple (and the Court) from ever learning about the full scope of their misconduct" by offering to "destroy all the evidence relevant to their disclosures."  What Apple is referring to is Samsung's early query to Nokia whether it wanted Samsung to delete any designated confidential information from its systems "to ensure," as the protective order provides, "that no further or greater unauthorized disclosure and/or use" occurs.  (*See* Dkt. 687 at 30.)  When Nokia's counsel asked that the documents be retained instead, QE sent a document preservation notice to recipients of the inadvertent disclosures at Samsung.  (*See* Dkt. 2395-3b at 3.)  Apple's argument that Samsung sought to "destroy evidence" lacks any support and only highlights the nature of the inflammatory and baseless arguments it has made throughout.

never said he had been "told" the terms of the Apple-Nokia license; (ii) Dr. Ahn never said that the Apple-Nokia license had been "received by Samsung's attorneys in the course of litigation"; and (iii) Dr. Ahn never said that Samsung's attorneys "had provided Samsung's in house team with the terms." (*See* Dkt. 2835-3 at 15-17.) Instead, as Mr. Melin conceded, he had *inferred* supposed use from Dr. Ahn's generic statements: "During the first session Dr. Ahn said that he has an idea of what Apple pays to Nokia under our license agreement *which implied that he had been told of the financial terms of Nokia's license with Apple* …. Dr. Ahn "*did not specifically state whether this information was told to him personally or to his team* …." (*Id.*)

Judge Grewal recognized the glaring inconsistencies between Mr. Melin's declaration and his testimony. At the hearing on the OSC, Judge Grewal expressed concerns about Mr. Melin's veracity and even queried whether he had perjured himself. (12/9/13 Tr. 27:12-13, 87:2-7.) Not only was there no support for Apple's and Nokia's charges, but the objective evidence affirmatively refuted any notion that Dr. Ahn had even reviewed, let alone used, the incompletely redacted Teece report. Whereas the Teece report revealed ███████████ Dr. Ahn stated at the June 2013 meeting his belief that Apple had paid ███████████ ███████████████████████████████████████ (*See* Dkt. 2835-3 at 16-17.) Although one could determine from the incompletely-redacted Teece report that Apple had agreed to make ███████████████ the unredacted portions of that report nowhere disclose ███████████████.

Ultimately, Judge Grewal was "unpersuaded that Samsung used the Teece Report in either the Ericsson or Nokia negotiations." (Dkt. 2935 at 11.) Having failed to prove the theories of use and harm they actually (and aggressively) pursued, Apple now argues (Br. 6) that it prevailed on showing harm nonetheless because Judge Grewal found that Samsung employee Daniel Shim "made use of" Apple's confidential information. Apple omits to note, however, that it neither claimed nor proved "harm" from this and that Judge Grewal in fact affirmatively found "insufficient evidence that this . . . misuse ultimately implicated *any issue in this or any other litigation or negotiation*." (Dkt. 2935 at 18 (emphasis added).) Far from demonstrating harm to Apple, Judge Grewal found that any "use" by Mr. Shim caused *no* harm.

1    In the end, as Apple concedes (Br. 6), the only "harm" to Apple and Nokia that Judge

2  Grewal found was *presumed* harm from the mere fact of QE's inadvertent disclosures, "regardless

3  of whether any actual misuse had also occurred."  This is not what Apple and Nokia set out to

4  prove and, in any case, it is wrong to "presume" harm simply from the inadvertent disclosures

5  when the record confirms there was *no* harm at all.  By any measure, Apple and Nokia failed to

6  prove misuse of their confidential information or any resulting harm.

7    **C.    Apple And Nokia Failed To Obtain The Relief They Sought**

8    Apple's and Nokia's arguments (Apple Br. 9; *see* Nokia Br. 13) that they "unquestionably

9  obtained 'success'" on their requests for sanctions are similarly refuted by the record.  Apple and

10  Nokia had sought a litany of sanctions that served only to underscore that they had pursued this

11  satellite litigation for punitive, anti-competitive reasons,[3] including the following:

12  •  Findings that Samsung and QE "recklessly violated" the protective order,  "misused
       Apple's confidential business information obtained in breach of the protective order (*e.g.*,

13     in license negotiations; in submissions to the International Trade Commission, European
       Commission, and in a submission to an Italian court)," and "engaged in bad faith licensing

14     conduct by using the improperly received information in negotiations with other parties";

15  •  An order prohibiting "Dr. Ahn and other Samsung executives . . . from negotiating any

16     mobile-device licenses for Samsung for the next two years";

17  •  An order prohibiting QE "from executing any new protective orders under which it would
       receive Apple confidential information for a period of two years";

18

19  •  A determination that "Samsung is not entitled to an injunction in the -630 case based on
       the equitable principle of 'unclean hands,'";

20

21  •  Orders "reprimanding" Samsung and QE "for their protective order breaches" and
       requiring them to "write letters to the other parties in all their ongoing cases . . . disclosing

22     the fact of their protective order breaches and their reprimands by the Court";

23  •  A "finding that Samsung misappropriated the Nokia-Apple License terms in violation of
       the Protective Order in negotiating with Nokia, enjoining Samsung from challenging that

24     finding before this or any other tribunal, and enjoining Samsung and its employees who
       received Nokia's CBI from using any information covered by the CBI in any matter

25     relating to licensing with Nokia";

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [3]  That Nokia has sought no relief as a result of Apple's public filing of the Apple-Nokia

27  license financial terms—even though that disclosure remained available to all those with access to
     PACER for some four months—further demonstrates that Nokia's selective pursuit here against

28  Samsung has nothing to do with any interest in protecting supposedly confidential information.

- • "[C]oercive sanctions of $25,000 per day on Samsung and Quinn Emanuel until the procedures in the [Stipulation] are complete and Stroz has submitted a declaration detailing precisely what steps it took to identify all Nokia CBI on Quinn Emanuel and Samsung's systems, and certifying that all CBI has been deleted"; and

- • An order enjoining QE "from representing clients in any matter adverse to Nokia for ten years."

(Dkt. 2838-3 at 17-20, Dkt. 2836-4 at 20-21, 24.)  Apple and Nokia did not merely lose on *all* these requests and more; Judge Grewal deemed them "ludicrously overbroad."  (Dkt. 2935 at 18.) Notably, neither Apple nor Nokia attempts to defend the requests for relief they actually sought.

Ultimately, Judge Grewal awarded Apple and Nokia only what *Apple* described as the "***bare minimum***" of what they sought (Dkt. 2838-3 at 20)—their fees and costs, and only against QE for its role in the inadvertent disclosures.[4]  Notwithstanding their rhetoric to the contrary, their own briefing below shows that they failed outright on the vast bulk of their sanctions requests.

### D.    Apple And Nokia Lost Repeated Motions And Arguments

In addition to being unsuccessful on their requests for sanctions, Apple and Nokia lost a number of other motions and arguments along the way, including in which they took extreme positions that were never supported by the record and never credited.  While Apple (Br. 10-12) and Nokia (Br. 11-12) dispute that they "lost" these motions, they *did* lose them because they did not obtain the relief they sought or failed to prevent Samsung from obtaining the relief it sought.

***Samsung Prevailed On Its Request For Discovery***.  Apple admits (Br. 11) that "Samsung successfully compelled limited discovery from Apple and Nokia."  It argues, however, that this was not a "loss" for Apple and Nokia because Samsung "did so based on representations that the discovery would help show that Samsung did not violate the Protective Order or harm Apple and Nokia."  Nokia (Br. 12) similarly downplays this "undertaking" by Samsung by arguing that it "may or may not have been necessary had Samsung not long withheld proof of its violations from Nokia and Judge Grewal."  Apple and Nokia are both wrong.  This discovery was, in fact, critical because it enabled Samsung to discredit Mr. Melin's declaration—as Judge Grewal expressly

---

[4]    Nokia says (Br. 13) that Samsung was sanctioned too—but it was not.  Judge Grewal's sanction order (Dkt. 2935 at 18) expressly states that only QE was required to pay the expenses, which were the only sanctions he awarded.

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET NO. 3117

recognized at the hearing (12/9/13 Tr. 87:2-7)—and prove that Apple suffered no harm, as its 30(b)(6) witness admitted.  Nokia also fails to identify what "proof of its violations" Samsung supposedly "withheld"—and there was none—or explain how Samsung's provision of that alleged proof would have obviated the need for *Samsung* to defend itself against the discredited Melin declaration and against Apple's and Nokia's other baseless theories of misuse.

***Samsung Prevailed On Apple's and Nokia's Privilege Challenges***.  Apple and Nokia do not (and cannot) dispute that they repeatedly sought production of documents over which Samsung asserted privilege or work-product, but those documents were never ordered produced. Indeed, Apple admits (Br. 5) that "Judge Grewal did not address Apple's and Nokia's arguments that Samsung had waived privilege and work product protection over all of its withheld materials." That both Apple and Nokia are *still seeking* Samsung's documents and challenging Samsung's assertions of privilege (Dkts. 3136, 3159) further shows that their efforts to date have failed.

Nor did Apple "succeed" (Br. 11) by encouraging Judge Grewal to conduct an *in camera* review of Samsung's privileged documents.  An *in camera* review was not the endgame—Apple and Nokia sought that review only so that Judge Grewal would overrule Samsung's privilege assertions and order the documents produced.  But Judge Grewal never did so.

Apple also claims (*id.*) it succeeded in challenging the insufficiency of Samsung's privilege log.  Again, it did not, as Judge Grewal never ordered Samsung to supplement or revise its privilege log in any manner.

***Samsung Prevailed On Nokia's Motions To Compel***.  Nokia claims (Br. 12) to have prevailed on its motions to compel because Judge Grewal ordered QE to provide a declaration confirming that Samsung no longer possessed Nokia's confidential information.  But this is not the relief Nokia sought (*see* Dkt. 2988), and QE would have done this without forcing Nokia to raise a motion.  Clearly this declaration was unsatisfactory to Nokia in any case given that it continues to pursue its motion to compel now.  (Dkt. 3136.)[5]  Nokia also does not dispute that its repeated

---

[5]  Nokia's argument that it did not "lose" its own motion to compel because it obtained *some* purported relief (even if it was nothing that it asked for) is further undermined by its argument (Br. 12) that it likewise did not "lose" Samsung's motion to compel because Samsung was awarded (footnote continued)

requests for Samsung to comply with the stipulation—even after Judge Grewal ordered broad discovery and conducted an *in camera* review which more than supplanted the purpose of the stipulation—were never granted.

## II.   THE WORK APPLE AND NOKIA PERFORMED WAS UNNECESSARY AND DID NOT CONTRIBUTE TO THE LIMITED RELIEF THEY OBTAINED

Nokia argues (Br. 5) that it "took all the briefing and discovery . . . to discover even the basic facts." This is untrue. After the Samsung/Nokia stipulation was filed on August 18, 2013 (Case No. 630 Dkt. 742 ("Stipulation")), *no discovery* was needed because Samsung had by then disclosed detailed information about the transmissions of the Teece report and, as Nokia admits (Br. 1), "agreed to a process to uncover the extent of the improper disclosures." This "process," set forth in the Stipulation, was heavily negotiated and robust. Pursuant to the Stipulation, Samsung and QE agreed to use their best efforts to complete the following steps, among others, within 45 days, "with the objective of identifying and reporting on the totality of all disseminations to, references about and uses of" the alleged confidential information:

- Identify any further dissemination of the alleged confidential information and prepare a "sworn statement reporting on its performance of this task, its findings, and identifying any further dissemination of the" information (Stipulation ¶ 4);

- Retain Stroz Friedberg "to conduct an independent audit of the files of the Samsung employees identified in the Letters as recipients of the Disclosed Information. The purpose of the audit will be to collect and preserve any Documents within Samsung evidencing: "(i) receipt or dissemination of the Disclosed Information and/or (ii) any use of, or reference to, the Disclosed Information by Samsung" (*id*. ¶ 5); and

- Request Stroz Friedberg to "prepare a log of all instances in which the Disclosed Information was disseminated or in which the Disclosed Information was referenced or used in any Documents by Samsung employees," including by identifying "the author or sender and all recipients of any identified Documents; the date and time; the subject line and a description of the subject matter of the Document . . . ." (*id*. ¶ 7).

It is undisputed that even if *no discovery* had been taken, the Stipulation would have resulted in the full disclosure of all transmissions of the Teece report. But rather than allow the stipulated process to run its course—and potentially lose the opportunity to publicly exploit

---

less than all the discovery it sought. Substance, not semantics, should control. Nokia was denied discovery by its own motion, and Samsung granted discovery by its motion.

Case No. 11-cv-01846-LHK

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET NO. 3117

Samsung's and QE's mistake—Apple chose to pursue broad discovery instead.  Indeed, Apple filed its motion to compel just days after the Stipulation was filed, and Nokia joined shortly afterwards, even though the Stipulation expressly provided for a minimum of 45 days for Samsung and QE to complete the very extensive tasks it contemplated, which were already well underway, including comprehensive forensic examinations of Samsung's computers that had to be (and were) done in Korea.  Apple and Nokia have failed to show that any discovery was "necessary" in light of Samsung's and QE's voluntary disclosures and the agreements they made in the Stipulation.

Nokia argues (Br. 8) that the discovery process "unearthed some of the facts behind Samsung's violations."  But neither it nor Apple identifies any such "facts"—because *there were none*.  To the contrary, other than with respect to the discovery that *Samsung* obtained against Apple and Nokia (over their blanket objections to providing *any* discovery) that allowed Samsung to exonerate itself, none of the discovery and motion practice "unearthed" anything that Samsung did not already disclose or that would not have been uncovered by the Stipulation.

The discovery Apple and Nokia took also was unnecessary because it went far beyond QE's disclosures of the Teece report.  On Apple's urging (*see* Dkt. 2374-2 at 13-14), Judge Grewal compelled information that was not even limited to Apple and Nokia, but extended into Samsung's confidential communications regarding non-parties Ericsson, Sharp and Philips—all of which are business competitors of Samsung, Apple and Nokia—including the following:

- "All e-mails and other communications sent or received since March 24, 2012 by the Samsung employees who received the confidential information . . . to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips";

- A 30(b)(6) witness "to speak to the dissemination of and use by Samsung of the confidential information, including the use of the confidential information in any proceeding before the United States International Trade Commission and in any court or jurisdiction outside the United States"; and

- Five additional witnesses to testify regarding "any and all communications they have had since March 24, 2012 regarding Apple's licenses with Nokia, Ericsson, Sharp, and Philips . . . ." (Dkt. 2483 at 5.)

The discovery—including *all* discovery of Ericsson, Sharp and Philips—was a dry hole.  The vast majority of it was shown to be wholly irrelevant to the protective order violations.  After Judge

1   Grewal conducted his *in camera* review of the more than 20,000 pages of responsive documents

2   that Samsung identified on its 737-page privilege log, he identified only 11 documents in his

3   initial OSC as even potentially supporting sanctions.  (Dkt. 2689 at 3.)  Samsung then incurred

4   tremendous additional costs explaining the meaning of those documents and substantiating its

5   claims of privilege over them.  Judge Grewal's ultimate award of sanctions was premised on QE's

6   inadvertent disclosures and its response to them, and not on any information contained in any

7   document or testimony that Samsung produced.  (*See* Dkt. 2935 at 13-17.)[6]

8       Finally, Nokia fails to show (Br. 3) that discovery and briefing would have been

9   unnecessary "[i]f Samsung had admitted their [sic] culpability in August rather than in April."

10  Nokia did not spend more than a million dollars on discovery to "bring Samsung to its knees" with

11  an admission of guilt, but rather to extract information from Samsung and QE, prove its claims of

12  misuse and harm, and recover broad and invasive sanctions.  None of those efforts would have

13  been avoided had Samsung simply stated that it "violated" the protective order.  Indeed, even

14  though QE has admitted since last summer that it disclosed information that should not have

15  been—and, according to Nokia, admitted in April that this conduct "violated" the protective

16  order—Nokia is still demanding more information and prolonging these proceedings.

17  **III.    THE AWARD OF EXPENSES IS CONTRARY TO LAW**

18      Under Fed. R. Civ. P. 37(b)(2)(C), an award of expenses is authorized only if it is

19  "reasonable" and if the expenses were "caused by" the violations of a court order.  Apple and

20  Nokia fail to show that the expense award is consistent with either of these express limitations.

21      **A.    An Award Of Full Expenses To Apple And Nokia Is Not "Reasonable" As A
          Matter Of Law**

22

23      Rather than show that Judge Grewal's expense award is reasonable, Apple and Nokia try to

24  read the "reasonableness" requirement out of Rule 37(b)(2)(C) altogether.  They argue that

25  *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which set forth considerations for determining

26  whether an expense award is "reasonable," is "inapplicable" to sanctions awards under Rule

27      [6]  Further demonstrating the ultimate spuriousness of Apple's and Nokia's demands for broad
    discovery into Samsung's dealings with Ericsson, Sharp and Philips, to this day not one of them
28  has filed any motion even alleging misuse or disclosure of their information.

37(b)(2) because it arose under 42 U.S.C. § 1988, pursuant to which fees may be awarded only to a "prevailing" party. But Samsung does not rely on *Hensley* to argue that Apple and Nokia are not entitled to *some* measure of fees, but rather to show that the amount of fees they were awarded is not "reasonable"—which is a required consideration under both § 1988 and Rule 37(b)(2)(C). *See Hensley*, 461 U.S. at 433 (holding that after determining if the plaintiff is a prevailing party, "[i]t remains for the district court to determine what fee is 'reasonable'").

Thus, contrary to Apple's and Nokia's argument, *Hensley*'s "reasonableness" analysis applies to fee awards under Rule 37(b)(2)(C). (Dkt. 3117 at 3 (Judge Grewal citing *Hensley* and stating that the "touchstone of the attorney's fee award is its reasonableness")); *see, e.g., HM Elecs., Inc. v. R.F. Techs., Inc.*, 2014 WL 3014372, at *11-12 (S.D. Cal. July 3, 2014) (quoting *Hensley* and reducing plaintiff's request for fees under Rule 37(b)(2) because of the plaintiff's limited success); *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 2012 WL 5816878, at *9 (S.D.N.Y. Nov. 14, 2012) (same).

Apple does not address *Hensley*'s "reasonableness" analysis at all. Nokia does so misleadingly by citing (Br. 9) to a portion of that opinion that applies *only* where "a plaintiff has obtained excellent results" or achieved "exceptional success," such that a "fully compensatory fee," if not an "enhanced award may be justified." 461 U.S. at 435. Under no measure of Apple's and Nokia's level of "success"—where they obtained the "*bare minimum*" of what they sought and failed to prove every accusation they made—is that analysis applicable here.[7]

*Hensley* recognizes (but Apple and Nokia ignore) that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. In those

---

[7] Nokia's authorities are distinguishable for the same reason. In *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001), the court awarded a full fee only because the plaintiffs had achieved an "excellent result" after "'eight years of sustained legal effort . . . to bring about a common good,' namely the improvement of the disability determination system in Oregon." In *Lira v. Cate*, 2010 WL 727979, at *5-6 (N.D. Ca. Feb. 26, 2010), the plaintiff "fully prevailed on his claims at trial, and in so doing vindicated his constitutional rights," and also submitted "numerous declarations attesting to the significance of the declaratory and injunctive relief [he] obtained."

Case No. 11-cv-01846-LHK

1    circumstances, "the most critical factor is the *degree of success* obtained," *id*. (emphasis added),

2    and "the district court should award *only that amount of fees that is reasonable in relation to the*

3    *results obtained*," *id*. at 440 (emphasis added).[8]

4        Here, Judge Grewal did not reduce Apple's and Nokia's requests for expenses *at all* based

5    on their "degree of success."   As shown above, Apple's and Nokia's "degree of success" was

6    extremely low.   Because the fee award is not limited to "only that amount of fees that is

7    reasonable in relation to the results obtained," it is contrary to law.   *See*, *e.g*., *Hensley*, 461 U.S. at

8    439-40 (reversing fee award where district "court's finding that 'the [significant] extent of the

9    relief clearly justifies the award of a reasonable attorney's fee' does not answer the question of

10   what is 'reasonable' in light of that level of success"); *Thai-Lao Lignite*, 2012 WL 5816878 at *9

11   (reducing requested fees by 30% where court "rejected most of Petitioners' arguments and

12   declined to make the sweeping findings regarding Respondent's conduct, or the indictments of

13   Respondent's motives, that Petitioners sought," and "granted sanctions under Rule 37(b) only,

14   and, even there, awarded only the 'minimum' sanction required by that section of the Rule").

15       **B.     The Expenses Awarded To Apple and Nokia Were Not "Caused By" QE's**
             **Inadvertent Disclosures**
16

17       Independently, Apple and Nokia also fail to show that expense award comports with the

18   limitation in Rule 37(b)(2)(C) that an award of expenses must be "caused by the failure" to obey

19   an order.   *See Toth v. Trans World Airlines, Inc*., 862 F.2d 1381, 1386 (9th Cir. 1988) (district

20   court abuses discretion by awarding expenses under Rule 37(b)(2) that were not caused by

21   violation of court order); *see also Hensley*, 461 U.S. at 434 (expenses that are "excessive,

22   redundant, or otherwise unnecessary" should be excluded from fee award).

---

23       [8]   Apple's authorities (Br. 10) either did not address "reasonableness" of fees at all or do not
     approximate the facts here.   *See McElroy v. Cox*, 2012 WL 537139, at *3 (E.D. Cal. Feb. 17,
24   2012) (granting attorneys' fees as a sanction, *but not addressing the amount of the award or its
     reasonableness*); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 2014 WL 1338480, at *8-9 (N.D.
25   Cal. Apr. 1, 2014) (awarding all but one requested sanction, including $20,443.55 in monetary
     sanctions for attorneys' fees and costs, but denying issue preclusion sanctions without prejudice
26   because the violations did not "threaten to interfere with the rightful decision of the case");
     *PepsiCo, Inc. v. Cent. Inv. Corp., Inc*., 216 F.R.D. 418, 421 (S.D. Ohio 2002) (awarding $103,000
27   in expenses because "the fee sought is relatively small," the defendant already substantially "self-
     limit[ed]" the sanctions it sought, and the violation "might have adversely affected not only the
28   merits of the case, but also . . . the merits of [defendant's] motion for sanctions").

---

Case No. 11-cv-01846-LHK

Samsung's Reply In Support Of Motion for Relief from Nondispositive Order re: Docket
No. 3117

1    The closest Apple comes to addressing the "caused by" limitation is its argument (Br. 13)

2    that "the size of the award"—which Apple concedes is "virtually unprecedented"—"stems directly

3    from the 'virtually unprecedented' scope of Protective Order violations that occurred in this case."

4    But Apple misses the point.  To support its argument, it cites not to the "scope of the protective

5    order *violations*," but rather to the scope of the protective order *proceedings*—*e.g.*, "60 briefs,

6    thousands of pages of document discovery, a 737-page privilege log, and more than 50 hours of

7    depositions."  Neither Apple nor Nokia can show that anything about *QE's inadvertent disclosures*

8    "caused them" to incur the expenses associated with those tasks.  Not a single one is related to any

9    claimed harm or damage Apple or Nokia suffered or to work they needed to do to ensure

10   remediation.  Rather, those tasks reflect overzealous discovery and briefing that Apple and Nokia

11   pursued despite Samsung's voluntary provision of information and its stipulated agreement to

12   fully investigate and remediate.  Apple and Nokia are not entitled to recover for "self-inflicted,"

13   unnecessary expenses resulting from their own "spare-no-expense punitive expedition" that were

14   not "caused by" any protective order violations.  *In re Dual-Deck Video Cassette Recorder*

15   *Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993); *see also*, *e.g.*, *Serv. Employees Int'l Union v.*

16   *Rosselli*, 2010 WL 4286287, at *5 (N.D. Cal. Oct. 22, 2010) (awarding $2500 pursuant to Rule

17   37(b)(2)(C) for defendant's violation, and noting that, "this award is limited to plaintiffs'

18   reasonable expenses incurred by reason of [defendant's] disobeying the court order.  No doubt,

19   plaintiffs spent much more than $2500.00 on the overall discovery effort.  But it did not bear fruit .

20   . . $2500.00 will compensate plaintiffs for their lost expenses attributable to the" violation).

21   Nokia argues (Br. 11) that all the expenses it incurred were necessarily "caused by" the

22   protective order violations because it—a third party—has no other role in the "litigation

23   generally."  Nokia offers no support for this bright-line distinction between "litigation" and

24   "other" work, which in any case makes no sense, as it would read the "caused by" limitation out of

25   existence any time a non-party claims a discovery violation, thus allowing it to rack up whatever

26   fees it wants, no matter how unrelated, and later seek to recover them on the grounds they were

27   necessarily "caused by" the violation.  Apple and Nokia have therefore failed to show that the

28   expenses they incurred were "caused by" the protective order violations.

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET
NO. 3117

### C.     The Fee Award Should Be Reduced By At Least 50%

Apple objects (Br. 13) that Samsung's request for a reduction of at least 50% is not tied to the "specific time entries and costs that [Samsung] believes were 'unnecessary.'"  But Apple's authority, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008), does not limit reductions in fee awards to items that can be scratched off a billing statement, but simply requires an opposing party to provide "specific reasons" for the reduction, as Samsung has done here.  *See, e.g.*, *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986) ("A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.").

In any case, the specifics that Apple demands are solely in Apple's and Nokia's possession because the only billing statements they submitted themselves lacked those specifics.  (*See* Dkts. 3000-25, 3000-26.)  Moreover, Samsung is not merely challenging specific tasks Apple and Nokia performed, but rather is challenging most or all the work they performed after August 18, 2013, when the Stipulation was filed, at a time when they had collectively incurred only approximately $135,000 in fees.  (*See* Dkts. 3000-25; 3000-26.)  The reduction of at least 50% that Samsung seeks is supported by the "specific reasons" Samsung has provided, and is indeed generous given Apple's and Nokia's lack of success on their sanctions motion and the substantial amount of unnecessary work they performed.  *See, e.g.*, *HM Electronics*, 2014 WL 3014372 at *12 ("Having reviewed and considered the time records, the content of papers filed in support of Plaintiff's motion, the breadth of the discovery deficiencies raised and limited success of Plaintiff's motion, the Court concludes that a 50% reduction of the time spent fairly and fully compensates Plaintiff for fees incurred as a result of Defendant's Rule 37 violations.").

### Conclusion

For the foregoing reasons, Samsung respectfully requests that the Court reduce the sanctions awards of $893,825.77 to Apple and $1,145,027.95 to Nokia by at least 50% each.

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET NO. 3117

1   DATED:  July 29, 2014                QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
2

3

4                                        By /s/ *Michael T. Zeller*
                                             Charles K. Verhoeven
5                                            Kevin P.B. Johnson
                                             Victoria F. Maroulis
6                                            William C. Price
                                             Michael T. Zeller
7

8                                        Attorneys for SAMSUNG ELECTRONICS CO.,
                                         LTD., SAMSUNG ELECTRONICS AMERICA,
9                                        INC. and SAMSUNG
                                         TELECOMMUNICATIONS AMERICA, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file this document.   In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michael T. Zeller has concurred in this filing.

Dated:  July 29, 2014

/s/ Victoria F. Maroulis
Victoria F. Maroulis

SAMSUNG'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER RE: DOCKET NO. 3117