RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone:     650-838-2000
Facsimile:     650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:     404-881-7000
Facsimile:     404-881-7777

Attorneys for NOKIA CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No.:  5:11-CV-01846-LHK (PSG)<br><br><br>**NOKIA'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE (RE: DOCKET NO. 2935)**<br><br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

Page(s)

I.      Introduction ................................................................................................................1

II.     Factual Background .....................................................................................................2

III.    Argument ....................................................................................................................3

        A.      Nokia Seeks Only Appropriate Procedures Necessitated By
                Samsung and Quinn Emanuel's Unprecedented Protective Order
                Violations ........................................................................................................3

                1.      The Law Strongly Disfavors Determining the Merits of a
                        Case Based on Evidence Reviewed *In Camera* .....................................3

                2.      The Court Explicitly Considered the *Ex Parte* Submissions
                        in Reaching its Conclusion ....................................................................6

                3.      Nokia Did Not Waive Any Rights to Argue for the Relief
                        Sought .....................................................................................................7

                4.      The Court May Properly Find the Documents Non-
                        Privileged or that Samsung Waived Privilege .......................................9

        B.      The Record Shows Samsung Used Confidential Information in
                Violation of the Protective Order ..................................................................10

                1.      Samsung Mischaracterizes the Evidence of Its Misuse of
                        Nokia's CBI ..........................................................................................11

                2.      The Record Shows Dr. Ahn Used Nokia's Confidential
                        Information, Including That From the Teece Report ............................12

IV.     Conclusion ................................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abourezk v. Reagan*,
   785 F.2d 1043 (D.C. Cir. 1986) ........................................................................................4

*Fox v. Cal. Sierra Fin. Servs.*
   120 F.R.D. 520 (N.D. Cal. 1988) ..................................................................................5, 6, 9

*Ibrahim v. Dep't. of Homeland Sec.*,
   2012 WL 6652362 (N.D. Cal. Dec. 20, 2012) ...............................................................4

*In re Sealed Case*,
   676 F.2d 793 (D.C. Cir. 1982) ........................................................................................6

*Tennenbaum v. Deloitte & Touche*,
   77 F.3d 337 (9th Cir. 1996) .............................................................................................9

*United States v. Amlani*,
   169 F.3d 1189 (9th Cir. 1999) .........................................................................................9

*Vining v. Runyon*,
   99 F.3d 1056 (11th Cir. 1996) .....................................................................................4, 5

**RULES**

Federal Rule of Civil Procedure 26(b)(5) ...............................................................................8

1

## I.    Introduction

Several critical factual determinations in the Order Granting Sanctions were based on material that Nokia and Apple have never seen.  Specifically, the determination that the Court was unpersuaded that Samsung used Nokia's confidential information was based, at least in part, on evidence provided only to the court, with no adversarial review. For example, the court found:

- "Though the court was ultimately 'unpersuaded' that Samsung had misused the inadvertently disclosed information, it took the full scope of the discovery tendered to reach that conclusion." (Order Setting Reasonable Attorney's Fees and Costs, Dkt. No. 3117 at 6);
- "That [in camera] review gave the court an outline that filled in many of the whos, whats, and whens of the information's transmission, but few whys or hows." (Order Granting Motion for Sanctions, Dkt. No. 2935 at 3-4);
- "With that outline in mind, on November 8, 2013, the court issued an Order to Show Cause Why Sanctions Are Not Warranted" (*Id.* at 7); and
- "Although the evidence has shown Quinn Emmanuel failed to notify the relevant parties at the relevant times, and that Shim made use of the information, there has been insufficient evidence that this failure to notify or misuse ultimately implicated any issue in this or any other litigation or negotiation." (*Id.* at 18).

This *ex parte* process was fundamentally unfair to Nokia.  One of Judge Grewal's ultimate findings was that he was unpersuaded that there was sufficient evidence of Samsung's use of Nokia's information in other litigation or negotiations.  He found an *absence* of sufficient evidence on this point based on his review of voluminous documents Nokia has never seen.  Nokia was never given the chance to assess these documents and persuade the court, for example, that Samsung was ignoring or mischaracterizing documents that showed use of the Teece Report.  The law is clear that *in camera* review, no matter how substantial, is no substitute for the adversary approach our system provides.  An *ex parte* process like the one here should not be allowed to stand.

Judge Grewal was correct in finding that sanctions should be awarded for the misconduct and Protective Order violations that he did identify.  Neither Nokia nor Samsung has objected to those findings, and those sanctions should be left undisturbed.  But, Nokia should be allowed to assess the record upon which Judge Grewal relied to say he was unpersuaded that Quinn Emmanuel or Samsung's sanctionable conduct prejudiced Nokia in the significant business discussions between the parties.  Thus far, Nokia has been denied the opportunity even to begin that deliberative process.  That cannot and should not be the result here.  Therefore, the Order on Sanctions should be reversed in-part.

## II.     Factual Background

In October 2013, Judge Grewal found that Samsung and Quinn Emanuel's investigation between July 2013 and October 2013 was insufficient and that Samsung was "unable to provide evidence on even the most basic questions…." (Dkt. No. 2483).  He ordered Samsung to produce discovery to Nokia and Apple, including documents and deposition testimony.  (*Id.*).  At the October 22 hearing, Judge Grewal ordered Samsung to immediately produce documents for *in camera* review, preferring not to impose a schedule.  (Dkt. No. 2483 at 90-92).  Two days later, Judge Grewal set a schedule, noting that Samsung "ha[d] yet to lodge any documents in response to the order."  (Dkt. No. 2589 at 2).

On November 8, 2013, Judge Grewal ordered Samsung to show cause why sanctions were not warranted, noting that "many if not all of these documents do not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would have served as cause for the communication."  (Dkt. No. 2689 ("Order to Show Cause") at n.16).  Judge Grewal struck Samsung's improperly filed *in camera* response to this Order and provided Nokia and Apple two days to file responsive briefs.  (Dkt. No. 2790).  Nokia argued in its brief, as best it could without seeing the documents in question, that the documents were not privileged or that Samsung had waived privilege. (Dkt. Nos. 2824).

On December 2, Nokia filed its brief supporting sanctions against Samsung and Quinn Emanuel.  (Dkt. No. 2836-3).  On December 9, the parties appeared before Judge Grewal for hearing on the Show Cause Order.  (Dkt. No. 2883).  Following the hearing, Nokia submitted a supplemental ten-page brief regarding sanctions.  (Dkt. No. 2872-5).  In both of its December briefs and at the December 9 hearing, Nokia repeatedly noted that it needed full access to the record.  (Dkt. Nos. 2836-3 at n.13, 19-20, 23; 2872-5 at n.1, 9-10; 2883 at 90:22–92:17).

On January 29, 2014, Judge Grewal issued an order sanctioning Samsung and Quinn Emanuel for their repeated protective order violations.  (Dkt. No. 2935 ("Sanctions Order")).  The Sanctions Order cited as evidence documents from Samsung's *in camera* submission that were not cited in the Order to Show Cause.  (*See, e.g.*, *id.* at 6 (citing Tab 56), 11 (citing Tab 246)).  Per the parties' stipulation delaying objections to the Sanctions Order until after Judge Grewal issued his order setting

1   reasonable attorneys' fees, Nokia filed a motion for relief on July 7.  (Dkt. No. 3136).  Nokia

2   previously filed a Motion to Compel Information for Remediation, and in response, Judge Grewal

3   ordered John Quinn to provide a sworn declaration to satisfy Nokia's remediation concerns.  (Dkt. No.

4   3061).  Judge Grewal provided that Nokia could refile its motion if Mr. Quinn was unwilling or unable

5   to provide the declaration.  (*Id.*).  Mr. Quinn filed this declaration (Dkt. No. 3106), and Nokia has

6   separately been in contact with Quinn Emanuel regarding its sufficiency.

7   **III.    Argument**

8        **A.    Nokia Seeks Only Appropriate Procedures Necessitated By Samsung and Quinn
             Emanuel's Unprecedented Protective Order Violations**

9

10       Nokia's participation in this litigation has been for a single purpose—to learn the full scope of

11  Samsung and Quinn Emanuel's dissemination and use of Nokia's confidential information and put an

12  end to it.  While Nokia appreciates that the Sanctions Order makes clear that Samsung and Quinn

13  Emanuel improperly distributed Nokia's confidential information hundreds of times, the Order on its

14  face does not answer Nokia's questions about use.  (*See* Dkt. No. 2935 at 11 ("Although the court finds

15  each one of Samsung's explanations shaky on its own, together they leave the court unpersuaded that

16  Samsung used the Teece Report in either the Ericsson or Nokia negotiations.")).  Nokia has

17  consistently argued that it needs a full understanding of the record,[1] and there are no grounds to argue

18  this position is somehow waived.  Remarkably, Samsung now admits it withheld non-privileged

19  information, which only emphasizes Nokia's point that the Court should reverse in-part and remand to

20  allow Nokia full access to the record, while leaving the unobjectionable sanctions undisturbed.

21       **1.    The Law Strongly Disfavors Determining the Merits of a Case Based on
             Evidence Reviewed *In Camera***

22

23       Nokia recognizes and appreciates the Court's significant *in camera* review of thousands of

24  ───────────────

25  [1] *See, e.g.*, Dkt. Nos. 2836-3 at n.13, 19-20 (explicitly reserving the right to pursue additional
    sanctions and findings of fact to the extent documents reveal specific harm to Nokia), 23 (noting

26  "Nokia cannot even determine precisely what Quinn Emanuel disclosed to Samsung"); 2872-5 at n.1
    ("Nokia has been denied access to the relevant documents to make a determination and, if appropriate,

27  argue that the failure was willful.") and 9-10 (asking the Court to compel production of documents as a
    sanction in the event it does not rule on privilege); 2883 at 90:22–92:17 (arguing Nokia needs full

28  disclosure of the record, not Samsung's representations of what documents say), 96:15–97:11 (arguing
    Nokia is entitled to see the documents Samsung put at issue), 105:11-22.

pages of Samsung's documents, including those allegedly privileged, to the extent that its limited time and resources could allow.  However, the Court's *in camera* review of the Samsung documents it relied upon in finding that it was "unpersuaded" that Samsung used Nokia's confidential information during negotiations simply cannot substitute for Nokia's equitable and legal right to see and respond to those documents itself.  Nokia has been completely deprived of the ability to properly consider, analyze, and present legal arguments on the very evidence used to determine one of the ultimate issues at stake (e.g., whether Samsung improperly used Nokia's confidential business information in violation of the protective order).  As a result, Nokia has suffered and will continue to suffer prejudice in arguing this crucial issue unless it is granted access to unredacted versions of these documents and access the full witness testimony based on those documents, which was also shrouded by unfounded blanket privilege assertions.

The Ninth Circuit "strongly favor[s] maintenance of our traditional system of fair play in which both sides have notice of the arguments and evidence being used against them." *Ibrahim v. Dep't. of Homeland Sec.*, 2012 WL 6652362, at *3 (N.D. Cal. Dec. 20, 2012).  While judges "may receive *ex parte* secret communications for deciding ancillary matters. . . only in the rarest of circumstances should the judge do so to resolve or to end a case." *Id.*  The Eleventh Circuit has similarly recognized that "our adversarial legal system generally does not tolerate *ex parte* determinations on the merits of a civil case" and that "the right to due process 'encompasses the individual's right to be aware of and refute the evidence against the merits of his case.'" *Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996).  Indeed, while judges are free to use *in camera*, *ex parte* examinations to prevent the discovery or use of evidence, "consideration of *in camera* submissions to determine the merits of litigation is allowable only when the submissions involve compelling national security concerns or the statute granting the cause of action specifically provides for *in camera* resolution of the dispute." *Id.* (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986)).

In *Vining,* the plaintiff brought Title VII claims alleging that he was terminated on the basis of race and disciplined more severely than similarly situated white employees. *Id.* at 1057.  After his employer moved for summary judgment, plaintiff moved to compel production of his coworkers' personnel files, but the district court ordered instead that all the personal files be produced for an *in*

*camera* review by the court.  *Id.*  After reviewing the evidence contained in these files, the Court granted summary judgment for the employer.  *Id.*  On appeal, the Eleventh Circuit held that the district court erred in using information contained in its *ex parte*, *in camera* examination of the personnel files to judge the merits of plaintiff's Title VII claim and remanded the summary judgment ruling, stating that it was error for the district court to decide a summary judgment motion before ruling on an outstanding motion to compel.  *Id.* at 1058.  The appeals court noted that such a premature decision on summary judgment impermissibly "deprive[s] the plaintiffs[] of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion."  *Id.*

    The same determinative legal principles and factual circumstances from *Vining* apply in this case.  As in *Vining*, Nokia submitted briefing on the scope of Samsung's privilege claims over documents it relied on to rebut allegations that it violated the protective order, arguing that the documents must be produced in unredacted form so that Nokia could appropriately assess and respond to them.  (*See* Dkt. No. 2824).  Without ever ruling on this privilege briefing, the Court ultimately found that it was unpersuaded that Samsung had improperly used Nokia's confidential license information in negotiations, relying on the Samsung documents it reviewed *in camera* and which Nokia was unable to review itself.  (Dkt. No. 2935 at 10-11, *see also* footnotes 13, 16-19, 21-25, 20-32).  Thus, in violation of the legal principles on *ex parte* communication, the court improperly determined the merits of that issue based on *in camera* submissions that Nokia had no opportunity to review, let alone refute or address.  *See Vining*, 99 F.3d at 1057.  None of the extraordinary circumstances justifying such consideration of *in camera* submissions, such as "compelling national security concerns" or a "statute. . . specifically provid[ing] for *in camera* resolution of the dispute," are present in this case.  *Id.*  Rather, the Court's reliance on documents that Nokia was prevented from reviewing and refuting runs directly contrary to the fundamental principle that cases be decided following adversarial litigation rather than *ex parte*, *in camera* review.

    Moreover, the cases Samsung cites that allegedly support Judge Grewal's reliance on Samsung's privileged documents in fact support Nokia's position.  Samsung cites *Fox v. Cal. Sierra Fin. Servs.* in support of its proposition that "the majority of the privileged documents cited in the Order are cited for non-privileged facts, such as the fact of a communication and not its privileged or

work product substance."  (Dkt. No. 3165 at 9:17-20 (citing 120 F.R.D. 520, 524 (N.D. Cal. 1988))).

However, the court in *Fox* actually held that privilege was waived for the documents and deposition

testimony, noting that "selective disclosure of confidential communications for the sake of obtaining a

tactical advantage in litigation constitutes a waiver of the attorney-client privilege." *Fox*, 120 F.R.D. at

527 (citing *In re Sealed Case*, 676 F.2d 793, 808–09 (D.C. Cir. 1982)).  Further, in rejecting the

defendant's privilege objections to interrogatories seeking the basis for defendants' affirmative

defenses, the court also stated: "[b]y asserting affirmative defenses, defendants have placed the

information supporting those affirmative defenses at issue in this lawsuit. The general rule is that

placing privileged communications at issue in a lawsuit waives the privilege for such

communications."  *Id.* at 530.

### 2.      The Court Explicitly Considered the *Ex Parte* Submissions in Reaching its Conclusion

The Court repeatedly referred to the *in camera* review to support its position.  Whether in the

Order Granting Sanctions or the Order Setting Fees, the Court is clear that, as to the ultimate issue of

the scope of the use of Nokia's confidential information, the absence of evidence in his review was a

crucial fact.  "Though the court was ultimately 'unpersuaded' that Samsung had misused the

inadvertently disclosed information, it took the full scope of the discovery tendered to reach that

conclusion." (Dkt. No. 3117 at 6).  Samsung and Quinn Emanuel assisted the court *ex parte* in that

determination.  Samsung encouraged the Court to review evidence that was not available to Nokia and

Apple:[2]

> The e-mail – It is an e-mail from Mr. Shim.  It's contemporaneous.  This is long before
> lawyers were involved in these proceedings involved, where he says what he says.  Now,
> his deposition is taken a year later and he can't remember, but ***we don't need to rely on
> his – his memory.  We have this contemporary e-mail*** where he calls out in this
> document what it is.

(Dkt. No. 2883 at 23:19–24:1) (oral argument by Quinn Emanuel, emphasis added).

Nokia (and likely Apple) has never seen this email.  It bears repeating.  Quinn Emanuel and

Samsung are arguing in open court with evidence that the other parties have never seen, and if they

---

[2] Note that Samsung and Quinn Emanuel's arguments about the availability of similar evidence in
non-privileged documents also falls flat.  First, when attempting to convince the Court of a crucial
point, Samsung directed the Court to the privileged material.  Second, is the other evidence is merely
another example of representations that Nokia is asked to believe with no opportunity to test.

have their way, will never see.  And, it was not evidence on a minor point.  The role of Daniel Shim, a Samsung employee, is crucial, at least in the eyes of Judge Grewal:

> Although the evidence has shown Quinn Emmanuel failed to notify the relevant parties at the relevant times, and that Shim made use of the information, there has been insufficient evidence that this failure to notify or misuse ultimately implicated any issue in this or any other litigation or negotiation.

(Dkt. No. 2935 at 18).  Nokia does not envy the burden that Judge Grewal shouldered and appreciates the efforts that he undertook.  Nokia, however, possesses unique knowledge about its discussions with Samsung during the period that these disclosures occurred and substantial resources that may allow Nokia to understand the evidence differently.  Regardless of the outcome of Nokia's review, the law is clear that Nokia is entitled to see the record.

This asymmetry of information resulted in clear mistakes and inhibited the full discovery of the critical questions of who, what, when and why.  For example, Quinn Emanuel argued at the October 22 hearing that even though Quinn Emanuel had notice in December 2012 that there was an improper disclosure to Samsung, it had no reason to know of the disclosures dating back to March 2012 because different people were involved.  (Dkt. No. 2581 at 61:2-11).  Then, at the December 9 hearing, Quinn Emanuel revealed that the associate who discovered the improper redactions in December 2012 made the initial redactions in March 2012.  (*Id.* at 34:9-16).  Without access to the documents, Nokia simply has to rely on Quinn Emanuel's word that it has not similarly misrepresented other facts at issue.  To the extent this information was not privileged, Nokia was placed in an unfair position by Samsung not providing it to Nokia and by the Court not issuing predicate rulings on privilege before ruling on the merits of this issue.

### 3.    Nokia Did Not Waive Any Rights to Argue for the Relief Sought

Following the Sanctions Order, Nokia filed a Motion to Compel Information for Remediation. (Dkt. No. 2988).  Nokia asked the Court to "order Samsung to produce information *sufficient to allow Nokia to agree to proper remediation*…."  (Dkt. No. 2988 at 2).  Nokia told the Court that it was "unable to determine whether there are any emails or documents [within Samsung's possession] that contain Nokia's CBI but do not attach the Teece Report or ITC brief" and that Samsung refused to make a representation on such documents.  (*Id.* at 3-4).  Nokia suggested that the Court order Samsung

to produce the documents for which privilege was waived and the independent log negotiated for and ordered in the Stipulated Order, but that Samsung refused to produce.  (*Id.* at 2).  In his order on Nokia's Motion, Judge Grewal found that a declaration signed by John Quinn would be sufficient for remediation.  (Dkt. No. 3061).  In that order, the Court noted that if Mr. Quinn was unable to provide the declaration Nokia would be free to reopen its request.  In fact, the declaration was insufficient, and Nokia may need to renew its motion given the insufficiency and the subsequent refusal to date by Quinn Emanuel to remedy that fact.  In any event, Nokia's motion and Judge Grewal's subsequent order on remediation is a separate and distinct issue that does not operate any waiver to the relief requested in the instant motion.

Samsung dubiously argues that "before Nokia could gain access to materials over which Samsung claims privilege, Nokia was obliged to identify the particular documents over which it contended the privilege had been waived, present those specific arguments to Judge Grewal, and seek a ruling as to whether each of those documents was not privileged or why privilege has been waived as to those documents…."  (Dkt. No. 3165-3 at 12).  Tellingly, Samsung cites no authority for the incredible position that a receiving party must present particularized challenges where a producing party asserts a blanket—and as Judge Grewal found and Samsung admits, at times unwarranted—privilege.  This is because Samsung's position is in direct conflict with the Federal Rules of Civil Procedure, which provide that a party claiming privilege must describe the nature of the privilege "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).

Likewise, Nokia's lack of objection to the Order to Show Cause could not have waived its right to object to the Sanctions Order.  First, the Order to Show Cause directly led to the parties filing their briefing on privilege.  Nokia argued in its privilege briefing that Judge Grewal should order Samsung to produce the documents, and ultimately Judge Grewal never directly ruled on that briefing.  (*See generally* Dkt. No. 2824).  Second, the Sanctions Order cited documents beyond those cited in the Order to Show Cause.  To the extent Judge Grewal was persuaded by information Nokia does not have access to, Nokia should have a full opportunity to assess and address that evidence.  Nokia should have had an opportunity to review these documents before Judge Grewal relied on them in his findings, as

1    Nokia had requested at the time.

2         Finally, the issue of Judge Grewal's reliance on an absence of sufficient evidence of use of

3    Nokia's confidential  information in the *ex parte* documents did not arise until he issued the Order

4    Granting Sanctions.  Nokia's objections did not arise until Judge Grewal used the protected material

5    and relied on the *ex parte* submission.  Nokia's objection is timely.

         ### 4.    The Court May Properly Find the Documents Non-Privileged or that Samsung Waived Privilege

7         Samsung argues that the Court should not grant Nokia's requested relief because Samsung did

8    not waive privilege.  As to seven documents at issue in Samsung's Motion for Relief (Dkt. No. 3135),

9    Samsung has put these documents before the Court for *de novo* review.  *Tennenbaum v. Deloitte &*

10   *Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("Whether a holder has waived the right to claim the

11   attorney-client privilege is a mixed question of law and fact which we review *de novo*.").  Nokia filed

12   an opposition to Samsung's Motion for Relief, noting that the Court may properly find either that the

13   documents are non-privileged or that Samsung waived privilege.  (Dkt. No. 3163).  Samsung waived

14   privilege through its partial disclosures of information and by putting documents at issue, and its

15   arguments to the contrary are unfounded.

16        Samsung cites *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) for the proposition

17   that an at-issue waiver of the attorney-client privilege requires a party to assert the privilege "as the

18   result of some affirmative act, such as filing suit" and "through this affirmative act. . . puts the

19   privileged information at issue."  (Dkt. No. 3165-3 at 10:27-11:3).  However, Samsung omitted an

20   additional factor that the *Amlani* court strongly considered in determining whether privilege had been

21   waived, *i.e.*, whether "allowing the privilege would deny the opposing party access to information vital

22   to its defense."  *Amlani*, 169 F.3d at 1195.  Indeed, the Court in *Amlani* found that *privilege had been*

23   *waived* because the party asserting privilege (Amlani) improperly used the privileged as both a sword

24   and a shield, stating "Amlani 'cannot invoke the attorney-client privilege to deny [the government]. . .

25   access to the very information that [the government]. . . must refute" in order to discredit Amlani's

26   claims.  *Id.* at 1196; *see also Fox*, 120 F.R.D. at 530 ("By asserting affirmative defenses, defendants

27   have placed the information supporting those affirmative defenses at issue in this lawsuit. The general

28

1  rule is that placing privileged communications at issue in a lawsuit waives the privilege for such

2  communications.").

3      Here, Samsung did not merely deny allegations raised by Apple and Nokia.  As further detailed

4  in Nokia's Opposition to Samsung's Motion for Relief, Samsung affirmatively argued that its

5  disclosures did not violate the Protective Order because they were inadvertent and that sanctions were

6  not warranted because there was no evidence of use.  (*See* Dkt. No. 3163 at 10-12).  By arguing that

7  the disclosures were inadvertent and therefore should not be sanctioned, Samsung affirmatively put at

8  issue a *mens rea* argument not raised by Apple or Nokia.  Likewise, Samsung affirmatively argued that

9  its allegedly privileged documents demonstrated a lack of use and thereby Samsung put those

10  documents at issue; it did not merely deny use.  As noted above, Samsung argued that the Court could

11  rely properly on the documents themselves rather than the discovery actually provided to Nokia.  (Dkt.

12  No. 2883 at 23:19–24:1 (arguing that the Court need not consider inconsistencies in Daniel Shim's

13  deposition testimony because the Court has access to contemporaneous documents)).  Accordingly, the

14  Court should resolve the pending privilege issues, including findings of waiver and non-privilege, to

15  allow for a full record.

**B.    The Record Shows Samsung Used Confidential Information in Violation of the Protective Order**

16  Nokia filed its Motion for Relief seeking to obtain the information necessary to understand the

17  full scope of the record supporting the Sanctions Order.  Nokia clearly stated that Judge Grewal erred

18  and acted contrary to law by ruling, on a record unavailable to Nokia, that he was unpersuaded that

19  Samsung had used Nokia's confidential information obtained through the protective order violations in

20  this action. (Dkt. No. 3136 at 1).  Nokia did not fully detail why Judge Grewal's finding was clearly

21  erroneous because it does not have the full record that Judge Grewal relied on.  Samsung, however,

22  took this as an opportunity to again argue that it did not use Nokia's confidential information.  Even on

23  the limited record available to Nokia, Samsung's assertions fail—further supporting Nokia's need for

24  full access to the record.   Improper use calls for sufficient sanctions to ensure no further use, which, if

25  established, are more than mere attorneys' fees.

1

### 1.     Samsung Mischaracterizes the Evidence of Its Misuse of Nokia's CBI

There is clear evidence that Samsung used Nokia's confidential information in the form of the declaration and deposition testimony of Mr. Paul Melin and the deposition testimony of Ms. Eeva Hakoranta.  Mr. Melin's declaration, filed in July 2012, was later substantiated by his and Ms. Hakoranta's testimony.[3]  The facts are clear.  During the June 4th licensing meeting between Nokia and Samsung, Dr. Seungho Ahn told the Nokia representatives that he knew certain financial terms of the Nokia-Apple license.  (Dkt. No. 2838-7 at 172:24–173:7).  According to Mr. Melin, "Dr. Ahn did not specifically tell who had told him personally of these financial terms.  He said that he was aware of them.  He had been told, but he did not say who specifically told him personally." (Dkt. No. 231:25-232:5).  However, Dr. Ahn noted that the licenses were produced in litigation, and he specifically stated "all information leaks."  (*Id.* at 174:23-175:6; 2838-10 at 19:11-20).  Dr. Ahn proved this knowledge by reciting certain financial terms and royalty structures of the Nokia-Apple license. (Dkt. Nos. 2838-7 at 174:23-175:1; 2838-10 at 58:5-8).

Samsung, in an attempt to argue that Mr. Melin's declaration was "discredited"—and despite the consistency with his deposition testimony and the corroborating testimony of Ms. Hakoranta— selectively quotes Mr. Melin's testimony, including asserting mid-sentence quotes that change the meaning of what Mr. Melin said and citing passages unrelated to the exact events addressed in Mr. Melin's declarations.  As one example, Samsung states that Mr. Melin provided that "Dr. Ahn 'did not specifically state whether this information was told to him personally or to his team….' (*Id.* at 236:14-16 (emphasis added))."  However, the full quote provides "[Dr. Ahn] did not specifically state whether this information was told to him personally or to his team *and to him by his team.  But it was clear that the entire team was aware of the terms.*"  (*Id.* at 236:14-17; *see also* 231:25–232:5).  Mr. Melin's testimony does not contradict the statement in his declaration that "Mr. Ahn stated that the agreement had been received by Samsung's attorneys in the course of litigation, and that they had provided Samsung's in-house team with the terms."  (630 Dkt. No. 647 (Melin Decl., ¶ 8)).  Further, it is undisputed that the June 4th meeting consisted of several sessions, separated by breaks.  (*See* Dkt. No.

---

[3] Nokia has laid out these arguments twice previously (Dkt. No. 2872-5 at 2-4; Dkt. No. 3062-4 at 4-7).

2836-3 at 6:20-28 (noting that the Nokia and Samsung depositions all describe multiple sessions)). During his deposition, Mr. Melin made clear that in writing paragraph 8 of his declaration, he was referring to events taking place during the second session of that meeting. (Dkt. No. 2838-7 at 241:13-14).  However, Samsung attempts to argue that Mr. Melin's deposition testimony contradicted his declaration by citing to testimony *only from the first* session of the negotiation (Dkt. No. 3165-3 at 5); Samsung does not cite to testimony regarding the second session, the session actually at issue in Mr. Melin's declaration.  Thus, Samsung has resorted to misquoting testimony from the wrong portion of the meeting and taking statements out of context in an attempt to create inconsistencies where none exist and then boldly proclaiming that the declaration has been discredited.  The record and testimony are clear as to what happened on June 4th.

Egregiously, Samsung goes as far as to represent that "Judge Grewal correctly found" that Mr. Melin backtracked from his declaration.  (Dkt. No. 3165-3 at 14:1-15).  Samsung's citation refers to a preceding statement by Judge Grewal in the context of a question, not a finding.  Nokia subsequently clarified in substantial detail during that same hearing that Mr. Melin's testimony is consistent with and confirms his declaration.  (Dkt. No. 2883 at 87:2-89:14; Dkt. No. 1872-5 at 2-4).  The Sanctions Order contains no finding related to a contradiction, and, to be sure, Nokia would have appealed any such finding as clearly erroneous.  The lack of any finding related to Nokia's witnesses is in stark contrast to the testimony of Samsung's witnesses.  Indeed, Judge Grewal found that portions of Dr. Ahn's testimony were "tenuous at best." (Dkt. No. 2935 at 11).  Furthermore, Judge Grewal explicitly criticized the testimony of Daniel Shim, stating that "the court does not find Shim's explanation that he never used the insufficiently redacted Teece Report credible."  (*Id.* at 14).  Had such inconsistencies existed in the Nokia witnesses' testimony, Judge Grewal could have cited them.  He did not, and the record is clear as to Samsung's misuse of Nokia's confidential information during the June 4th negotiations.

### 2. The Record Shows Dr. Ahn Used Nokia's Confidential Information, Including That From the Teece Report

The Sanctions Order on its face does not support a finding that Samsung did not use Nokia's confidential information during licensing negotiations.  Judge Grewal correctly found that each one of

1  the several Samsung explanations that it did not use Nokia's confidential information was "tenuous at

2  best." (Dkt. No. 2935 at 11).  Nonetheless, Judge Grewal was "unpersuaded that Samsung used the

3  [improperly redacted] Teece Report in … Nokia negotiations." (*Id.*).  This finding is clearly erroneous

4  on its face, and given the erroneous process that underpins this conclusion, Judge Grewal erred by

5  making it.  According to representations made by Quinn Emanuel in correspondence to Nokia, the

6  improperly redacted Teece Report provided that ████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████  (Dkt. No. 2558-4).  Dr.

9  Ahn used this confidential information against Nokia.  At the June 4 meeting, Dr. Ahn stated "that

10  ████████████████████████████████████████████████████████████████████

11  ████████████████  (Dkt. No. 2838-7 at 174:23-175:1; *see also* Dkt. No. 2556-10, ¶ 11).  Nokia has

12  repeatedly pointed out, as one shining example, that ████████████████████████████████

13  ████████████████████  (Dkt. No. 2836-3 at 18:11-19; 2872-5 at 5-6), and Samsung

14  has never rebutted this fact despite its continued claim that Dr. Ahn obtained the information he stated

15  to Nokia from "public sources."  Dr. Ahn's express recitation of the ████████████████████

16  ██████████████████████████████████████████████████████████  Nokia is

17  clear evidence that Samsung used Nokia's confidential information.

18        The limited record to which Nokia has access contains no credible explanations for how Dr.

19  Ahn could have obtained this confidential information, other than through the Teece Report.  Samsung

20  makes an unsupported representation to the Court that a *Business Insider* article matched what Dr. Ahn

21  said at the meeting.  (Dkt. No. 3165-3 at 14).  This is contrary to a direct finding by Judge Grewal that

22  the information used in the Teece Report was non-public and that the terms in the specific *Business*

23  *Insider* article cited "do not match those described in the Teece Report." (Dkt. No. 2935 at 12).

24  Samsung did not appeal these findings and cannot challenge them now.  Similarly, any argument that

25  Samsung relied on a memo prepared by Williams and Connolly is likewise discredited on the face of

26

27      [4] Informative of the burden Nokia has faced in litigating this issue without complete information is
the fact that Nokia has never been provided with even a redacted version of the Teece Report that was

28  at the source of these protective order violations, instead having to rely solely on the representation of
Samsung as to what information was stated.

the Sanctions Order.  Given that Judge Grewal found that this memo apparently "drew its conclusions from an exhaustive review of ***public*** financial filings from both companies, as well as selected news reports and predictions" (*Id.* at 6) (emphasis added) and that the Teece Report information was "***non-public***" (*Id.* at 12) (emphasis added), it does not follow that Dr. Ahn could have learned certain precise financial terms and royalty structures of the Nokia-Apple license from this memo.  The only remaining argument cited by Judge Grewal is that Dr. Ahn "just guessed," an argument that Judge Grewal also found "shaky on its own."  (Dkt. No. 2935 at 11).  Thus, it was clear error to not find that Samsung used Nokia's confidential information during licensing negotiations.

## IV.    Conclusion

The Court should grant Nokia's Motion for Relief leaving the unobjectionable sanctions undisturbed and remanding to Judge Grewal to consider and rule on the following issues:

1)    Whether Samsung sufficiently established that the documents and portions of documents responsive to the Court's October 2, 2013 discovery order and withheld from Nokia are privileged;

2)    To the extent that Samsung has established that the documents are privileged, whether Samsung waived the privilege;

3)    After the privilege decisions and a subsequent production of documents not protected, whether Samsung used the protected information in licensing negotiations or other litigations; and

4)    If Number 3 is answered in the affirmative, what additional sanctions for Samsung and Quinn Emanuel, if any, are appropriate.

Ruling accordingly protects the integrity of the adversarial process, allows Nokia to fully and correctly participate in the adjudication of its interests, and prevents unilateral and asymmetric *ex* parte communication.  Nokia requests that the Court grant the motion.

1    This 29th day of July, 2014.

2                                            Respectfully submitted,

3

4                                            */s/Ryan W Koppelman*
                                             RANDALL L. ALLEN (Ca. Bar No. 264067)
5                                            randall.allen@alston.com
                                             RYAN W. KOPPELMAN (Ca. Bar No. 290704)
6                                            ryan.koppelman@alston.com
                                             ALSTON & BIRD LLP
7                                            1950 University Avenue, 5th Floor
                                             East Palo Alto, CA 94303-2282
8                                            Telephone:650-838-2000
                                             Facsimile: 650-838-2001
9
                                             PATRICK J. FLINN (Ca. Bar No. 104423)
10                                           patrick.flinn@alston.com
                                             B. PARKER MILLER (*pro hac vice*)
11                                           parker.miller@alston.com
                                             ALSTON & BIRD LLP
12                                           1201 West Peachtree Street
                                             Atlanta, GA 30309
13                                           Telephone:404-881-7000
                                             Facsimile: 404-881-7777
14
                                             Attorneys for NOKIA CORPORATION
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 <u>**CERTIFICATE OF SERVICE**</u>

3   I hereby certify that on July 29, 2014, I electronically filed the foregoing **NOKIA'S REPLY**

4 **IN SUPPORT OF ITS MOTION FOR RELIEF FROM NONDISPOSTIIVE ORDER OF**

5 **MAGISTRATE JUDGE (RE: DOCKET NO. 2935)** with the Clerk of Court using the CM/ECF

6 system, which will automatically send email notification to the parties and counsel of record.

7

8   This 29th day of July, 2014.

9

10

11           <u>/s/Ryan W Koppelman</u>
          RANDALL L. ALLEN (Ca. Bar No. 264067)

12           randall.allen@alston.com
          RYAN W. KOPPELMAN (Ca. Bar No. 290704)

13           ryan.koppelman@alston.com
          ALSTON & BIRD LLP

14           1950 University Avenue, 5th Floor
          East Palo Alto, CA 94303-2282

15           Telephone: 650-838-2000
          Facsimile: 650-838-2001

16

17           *Attorneys for NOKIA CORPORATION*

18

19

20

21

22

23

24

25

26

27

28