1   RANDALL L. ALLEN (Ca. Bar No. 264067)
    randall.allen@alston.com
2   RYAN W. KOPPELMAN (Ca. Bar No. 290704)
    ryan.koppelman@alston.com
3   ALSTON & BIRD LLP
    1950 University Avenue, 5th Floor
4   East Palo Alto, CA 94303-2282
    Telephone:    650-838-2000
5   Facsimile:    650-838-2001

6   PATRICK J. FLINN (Ca. Bar No. 104423)
    patrick.flinn@alston.com
7   B. PARKER MILLER (pro hac vice)
    parker.miller@alston.com
8   ALSTON & BIRD LLP
    1201 West Peachtree Street
9   Atlanta, GA 30309
    Telephone:    404-881-7000
10  Facsimile:    404-881-7777

11  Attorneys for NOKIA CORPORATION

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15

16  APPLE, INC., a California corporation,        | Case No.:  5:11-CV-01846-LHK (PSG)

17               Plaintiff,                        | **NOTICE OF MOTION AND**
                                                   | **MEMORANDUM OF POINTS AND**
18        v.                                       | **AUTHORITIES IN SUPPORT OF NOKIA**
                                                   | **CORPORATION'S MOTION TO**
19  SAMSUNG ELECTRONICS CO., LTD., a             | **COMPEL PRODUCTION PURSUANT TO**
    Korean corporation, SAMSUNG ELECTRONICS      | **MANDATE OF PRESIDING JUDGE**
20  AMERICA, INC., a New York corporation;
    SAMSUNG TELECOMMUNICATIONS                   |
21  AMERICA, LLC, a Delaware limited liability    | Date:        December 10, 2014
    company,                                     | Time:        10:00 a.m.
22                                                | Judge:       Hon. Paul S. Grewal
               Defendants.                        | Ctrm:        5, 4th Floor
23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 10, 2014, at 10:00 a.m., or as soon thereafter as this matter may be heard in the above entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Non-Party Nokia Corporation ("Nokia") will and hereby does move the Court to compel the production of non-privileged documents from Defendant Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung").

On July 7, 2014, Nokia filed a limited appeal from the Court's Sanctions Order to the extent it decided the issue of whether Samsung used Nokia's confidential information on documents to which Nokia had no access.  Judge Koh granted in part Nokia's motion for relief on September 19, 2014, ordering that "Nokia may seek determination from Judge Grewal on the questions of privilege as to the Samsung documents reviewed *in camera* and whether Nokia should receive access to any of those materials."  (Dkt. No. 3194 at 13).  Pursuant to this mandate, Nokia hereby moves the Court for a determination on privilege as to the documents reviewed in camera and for an order that Samsung produce all documents lacking an applicable privilege or for which Samsung waived privilege.

This motion is based on this notice of motion, the below memorandum of points and authorities, and such written and oral argument as may be presented at or before the time this motion is taken under submission by the Court.  Counsel for Nokia and Samsung met and conferred various times via telephone and email and appeared before the Court on October 8, 2014.  The parties have thus far been unable to work out a resolution to Nokia's Motion.

### RELIEF REQUESTED

Nokia seeks an order from the Court ruling on whether Samsung can properly assert privilege over the documents produced for *in camera* review, and if so, whether such privilege was waived through Samsung's actions in litigation.

NOTICE OF MOTION AND MEMO OF POINTS AND AUTHORITIES
ISO NOKIA'S MOTION TO COMPEL PRODUCTION PURSUANT TO
MANDATE OF PRESIDING JUDGE

1

CASE NO.:  5:11-CV-01846-LHK (PSG)

1

2  DATED: October 17, 2014          Respectfully submitted,

3                                   ALSTON & BIRD, LLP

4                                   */s/ Ryan W. Koppelman*
                                    RANDALL L. ALLEN
5                                   RYAN W. KOPPELMAN

6                                   Attorneys for Non-Party Nokia Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................1

III.   ARGUMENT .........................................................................................................3

    A.     Legal Standards...........................................................................................3

        1.     Legal Standard for the Substantiation of Privilege ............................3

        2.     Legal Standards for Waiver of Privilege ...........................................3

    B.     Samsung Failed to Adequately Substantiate Its Privilege Assertions .........................4

    C.     The Record Shows Samsung Waived Privilege Over At Least Some Documents ...................................................................................................6

        1.     Samsung Categorically Waived Privilege Under the At Issue Doctrine ..........6

            (a)     Samsung affirmatively raised the defense that its Protective Order violations were "inadvertent" ..................................8

            (b)     Samsung raised the defense that the recipients of the improperly redacted Teece Report did not actually use the document in violation of the Protective Order....................................10

        2.     Samsung Waived Privilege Through Selective, Partial Disclosures ...............12

    D.     Fairness Requires Providing Nokia Access to Those Documents Cited in the Sanctions Order...........................................................................................15

IV.    CONCLUSION ....................................................................................................17

NOTICE OF MOTION AND MEMO OF POINTS AND AUTHORITIES
ISO NOKIA'S MOTION TO COMPEL PRODUCTION PURSUANT TO
MANDATE OF PRESIDING JUDGE

i

CASE NO.:  5:11-CV-01846-LHK (PSG)

1

2

## TABLE OF AUTHORITIES

**Page(s)**

3

FEDERAL CASES

4

5
*Bittaker v. Woodford*,
     311 F.3d 715 (9th Cir. 2003) ....................................................................................... 7

6

7
*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*,
     408 F.3d 1142 (9th Cir. 2005) .................................................................................... 3

8
*Chevron Corp. v. Pennzoil Co.*,
     974 F.2d 1156 (9th Cir. 1992) .................................................................................... 6

9

10
*Datel Holdings Ltd. v. Microsoft Corporation*,
     No. 09-cv-05535-EDL, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ....................... 5

11
*Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*,
     100 F.3d 919 (Fed. Cir. 1996) .................................................................................... 3

12

13
*E.E.O.C. v. Outback Steakhouse of Fl, Inc.*,
     251 F.R.D. 603 (D. Colo. 2008) ................................................................................ 13

14

15
*Fox v. California Sierra Financial Services*,
     120 F.R.D. 520 (N.D. Cal. 1988) ............................................................................... 9

16
*Genentech, Inc. v. Insmed Inc.*,
     236 F.R.D. 446 (N.D. Cal. 2006) ............................................................................... 8

17

18
*Henry v. Quicken Loans, Inc.*,
     263 F.R.D. 458 (E.D. Mich. 2008) ............................................................................. 7

19

20
*Hernandez v. Tanninen*,
     604 F.3d 1095 (9th Cir. 2010) .................................................................................... 4

21
*Hynix Semiconductor Inc. v. Rambus Inc.*,
     No. cv-00-20905-RMW, 2008 WL 350641 (N.D. Cal. Feb. 2, 2008) ..................... 4, 5

22

23
*In re Chase Bank USA, N.A. Check Loan Contract Litigation*,
     No. 3:09-md-2032-MMC (JSC), 2011 WL 3268091 (N.D. Cal. July 28, 2011) .......... 5

24

25
*In re Gibco Inc.*,
     185 F.R.D. 296 (D. Colorado 1997) .......................................................................... 7

26
*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
     --- F.Supp.2d ----, 2014 WL 1800820 (S.D.N.Y. May 7, 2014) .......................... 9, 15

27

28

*Oracle America, Inc. v. Innovative Technology Distributors, LLC*,
    No. 11-cv-01043-LHK, 2011 WL 2559825 (N.D. Cal. June 28, 2011) ........................................ 6

*QBE Ins. Co. v Jorda Enterprises Inc.*,
    No. 10-21107-CIV, 2012 WL 4089890 (S.D. Fla. Sept. 17, 2012)............................................ 12

*Shared Medical Resources LLC v. Histologies LLC*,
    No. SACV 12-0612 DOC, 2012 WL 5570213 (C.D. Cal. Nov. 14, 2012) ........................ 4, 7, 12

*Tennenbaum v. Deloitte & Touche*,
    77 F.3d 337 (9th Cir. 1996) ................................................................................................ 3, 4

*U.S. v. Martin*,
    278 F.3d 988 (9th Cir. 2002) .............................................................................................. 3, 4

*U.S. v. Richey*,
    632 F.3d 559 (9th Cir. 2011) ..................................................................................................... 3

*U.S. v. Ruehle*,
    583 F.3d 600 (9th Cir. 2009) .............................................................................................. 3, 4

*U.S. v. St. Pierre*,
    132 F.2d 837 (2d Cir. 1942) (writ of certiorari dismissed as moot by 319 U.S. 41 (1943)) ....... 14

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) ................................................................................................ 10

*United States v. Blizerian*,
    926 F.2d 1285 (2d Cir. 1991)..................................................................................................... 6

*Walker v. Contra Costa*
    227 F.R.D. 529 (N.D. Cal. 2005)............................................................................................. 13

**RULES**

Federal Rule of Civil Procedure 26 ...................................................................................................... 3

Federal Rule of Evidence 502........................................................................................................ 15, 16

Civil L.R. 79-5 ................................................................................................................................. 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Nokia has consistently asserted that Samsung's widespread and potentially dubious privilege claims improperly obstructed Nokia's ability to learn the extent of the dissemination and use of its confidential information.  Samsung's privilege claims amounted to the redaction of the entire body of documents that the Court ordered it produce to Nokia and Apple.  Because of these claims, Nokia has yet to see an unredacted version of any one of the hundreds of transmissions of its confidential information that were found to violate the Protective Order in this case.  Although Nokia lacked access to this crucial information, the Court issued a Sanctions Order with three main findings: 1) Samsung and Quinn Emanuel violated the protective order by failing to implement institutional safeguards to prevent hundreds of disseminations of confidential business information, 2) Samsung and Quinn Emanuel violated the protective order by failing to follow its notice requirements, and 3) the Court was "unpersuaded that Samsung used the Teece Report in either the Ericsson or Nokia negotiations." (Dkt. No. 2935).  The public record fully establishes that sanctions were warranted by the first two findings, and no one has disputed the legitimacy of those findings.  However, in order to fully evaluate the third finding, Nokia hereby moves the Court for a determination on privilege as to the documents reviewed *in camera* and for an order that Samsung produce all documents to which privilege does not attach.  Depending on Nokia's review of any such production, Nokia may request further discovery and proceedings as appropriate.

## II.   BACKGROUND

On July 1, 2013, Nokia filed a motion for protective order after learning that Samsung had improperly used Nokia's confidential licensing information.  (630 Dkt. No. 647).  On August 23, 2013, Apple filed a Motion to Compel Further Discovery and for Sanctions for Violations of Protective, (Dkt. No. 2374), which Nokia later joined due to Samsung's lack of compliance with a stipulated process it negotiated with Nokia. (Dkt. No. 2434).

After concluding the initial hearing on this matter, the Court ordered Samsung to produce to Apple and Nokia "[a]ll e-mails and other communications sent or received since March 24, 2012

by the Samsung employees who received the confidential information (more specifically, the Samsung employees listed in the attachments to Mr. Becher's August 1 letter) to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips," as well as deposition testimony.  (Dkt. No. 2483).  Samsung unsuccessfully appealed this order, arguing there was no basis for such discovery because the disclosures were inadvertent and because Samsung had the confidential information from other sources.  (Dkt. No. 2495 at 1).

On October 14-15, 2013, Samsung provided Nokia a document production that was almost completely redacted for privilege. (Dkt No. 3163-1, ¶ 2).  Other documents were withheld in their entirety. (*See, e.g.*, Dkt. No. 3163-2 at Tabs 222, 255).  On October 15-18, 2013, Nokia and Apple deposed seven Samsung witnesses. (Dkt. No. 3163-1, ¶ 3).  The testimony was heavily constrained by privilege and work product objections. (*Id.*; Dkt. No. 3194 at 6).  Nokia and Apple briefed these discovery issues to the Court. (Dkt. No. 2483, 2557, 2558).

At the conclusion of the October 22 hearing, the Court ordered Samsung to immediately produce unredacted copies for *in camera* review. (Dkt. No. 2581 at 90-91; Dkt. Nos. 2587, 2588, 2591).  Following the *in camera* review, the Court ordered Samsung to show cause why sanctions were not warranted, noting skepticism regarding Samsung's privilege claims. (Dkt. No. 2689 ("Order to Show Cause") at n.16).  The Court struck Samsung's improperly filed *in camera* response to this Order and provided Nokia and Apple two days to file responsive briefs.  (Dkt. No. 2790).  In briefing, Nokia argued that the documents were not privileged or that Samsung had waived privilege. (Dkt. No. 2824).

Following further briefing and proceedings, on January 29, 2014, the Court issued an order sanctioning Samsung and Quinn Emanuel for their repeated protective order violations.  (Dkt. No. 2935 ("Sanctions Order")).  Per the parties' stipulation delaying objections to the Sanctions Order until after the Court issued its Order Setting Reasonable Attorneys' Fees (Dkt. No. 2950), Nokia filed a Motion for Relief from the Sanctions Order on July 7.  (Dkt. No. 3136).  The District Court Judge agreed and remanded for further proceedings.

III.     ARGUMENT

    A.     Legal Standards

        1.     Legal Standard for the Substantiation of Privilege

      "The attorney-client privilege protects confidential communications between attorneys and clients, which are made *for the purpose of giving legal advice.*" *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (emphasis added).  "The fact that a person is a lawyer does not make all communications with that person privileged."  *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The burden is on the party asserting the privilege to establish all the elements of the privilege.  *Id.* at 608.

      Rule 26 requires a party asserting privilege to "describe the nature of the documents ... in a manner that, without revealing information itself privileged or protected, enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  A party claiming privilege must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection."  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005) (citing Rule 26(b)(5) advisory committee's note (1993 Amendments)).  Some courts have found that the failure to substantiate privilege waives the potential privilege protection.  *See Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (affirming a waiver of privilege where party "fail[ed] to provide a complete privilege log demonstrating sufficient grounds for taking the privilege").

        2.     Legal Standards for Waiver of Privilege

      The principle purpose of the doctrine of waiver of attorney-client privilege is "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996).  The focus of the privilege waiver analysis "should be the holder's disclosure of privileged communications to someone outside the attorney-client

1    relationship…." *Id.* at 341.  However, even where there is no disclosure, fairness requires a waiver

2    when the privilege holder raises a claim or defense that puts in issue privileged communications.  *Id.*

3    at 341 n.4.  Similarly, the work product doctrine "is a qualified privilege that protects certain

4    materials prepared *by an attorney* acting for his client in anticipation of litigation" and may be

5    waived.  *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (emphasis added) (internal

6    citations and quotation marks omitted).  A party may stop the waiver-by affirmative-reliance

7    doctrine from applying by not voluntarily disclosing privileged information.  *Shared Medical*

8    *Resources LLC v. Histologies LLC*, No. SACV 12-0612 DOC, 2012 WL 5570213 at *3 (C.D. Cal.

9    Nov. 14, 2012).

10         **B.      Samsung Failed to Adequately Substantiate Its Privilege Assertions**

11         As the party asserting privilege, Samsung has the burden of proving each essential element.

12   *Ruehle*, 583 F.3d at 607; *Martin*, 278 F.3d at 999.  To date, Nokia lacks sufficient information to

13   assess the majority of Samsung's privilege claims.[1]  The statements in Samsung's privilege log

14   provide generic statements of privilege such as "Email reflecting legal advice regarding licensing,

15   prepared at the direction of counsel in anticipation of litigation" (Dkt. No. 3163-2 at Tab 24).  *Hynix*

16   *Semiconductor Inc. v. Rambus Inc.*, No. cv-00-20905-RMW, 2008 WL 350641 at *3 (N.D. Cal. Feb.

17   2, 2008) ("A vague declaration that states only that the document 'reflects' an attorney's advice is

18   insufficient to demonstrate that the document should be found privileged.").  Samsung had notice as

19   of at least October 21 that the parties considered its privilege log insufficient to support privilege

20   (Dkt. No. 2557-3 at 9-10; Dkt. No. 2558-3 at 7, 12-13); however, it did not supplement the log to

21   address these concerns.  As recognized by the Court, "many if not all of [the withheld documents] do

22   not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would

23   have served as cause for the communication."  (Dkt. No. 2689 at n.16).

24   

---

25   [1] Samsung has claimed both attorney-client privilege and attorney work product protection over
26   every single withheld or redacted document.  (*See* Declaration of Ryan W. Koppelman In Support of
     Nokia's Motion ("Koppelman Decl."), Exh. 1 (Samsung's privilege log)).  Because Samsung
27   provides no basis for Nokia to assess these protections separately, Nokia refers to both as "privilege"
     for the purposes of this motion.  Nokia reserves its right to make further arguments as to the specific
28   protection claimed to the extent Samsung offers information or arguments not previously presented.

1   Thus, the Court's Show Cause Order provided Samsung "with one further opportunity to

2   demonstrate with specificity how each and every one of the [cited] documents fall under the

3   protection of either the attorney-client privilege or the work-product doctrine by *submitting a*

4   brief…" (Dkt. No. 2689 at n.16). Without access to the documents, Nokia cannot challenge

5   Samsung's privilege claims beyond the fact that "the generic statements in the log [do not] meet the

6   burden required to claim [privilege and work product] protection." (*Id.*; *see also* Dkt No. 2824 at n.2

7   (Nokia arguing that it was unable to meaningfully comment on Samsung's factual assertions

8   concerning its privilege claims or realistically challenge Samsung's content-less and conclusory

9   privilege claims)). While Samsung has previously argued that privilege is "facially obvious" for

10  some of the documents, the privilege log provided to Nokia does not describe every single document

11  as a communication involving an attorney. (*See, e.g.*, Koppelman Decl., Exh. 1 at Tabs 24, 57, 225,

12  235, 236, 239, 245, 255, 261, 261.4, 261.7, 261.9, 261.12, 261.13, 261.14, 261.15, 261.16, 261.18,

13  261.22, 261.25, 261.28, 261.29, 261.30, 261.31, 261.36, 261.39, 261.40, 261.41, 270, 273, 275).

14  As an example, Tab 236 lists "FOSS Patents" in the "From/Author" column, with no

15  explanation as to how or why this entity could send Samsung employees an "email seeking legal

16  advice regarding licensing issues, prepared in anticipation of litigation."[2] (Koppelman Decl., Exh. 1

17  at Tab 236). "[A] single email of a 'legal nature' does not privilege the entire email thread." *In re*

18  *Chase Bank USA, N.A. Check Loan Contract Litigation*, No. 3:09-md-2032-MMC (JSC), 2011 WL

19  3268091 at *6 (N.D. Cal. July 28, 2011) (conducting *in camera* review of privilege as to 20

20  documents and ordering defendants to reevaluate the remaining 2,870 disputed documents pursuant

21  to the provided analysis); *Datel Holdings Ltd. v. Microsoft Corporation*, No. 09-cv-05535-EDL,

22  2011 WL 866993 at *6 (N.D. Cal. Mar. 11, 2011) (finding attorney-client privilege only applied to

23  the original email in an email chain).

24  Indeed, Samsung did not even provide Nokia an explanation as to why some documents were

25  produced to Nokia in entirely redacted form while others were withheld in their entirety. (*Compare,*

26  *e.g.*, Koppelman Decl., Exh. 1 at withheld Tab 222 ("Email with counsel, prepared in anticipation of

27

28  _____

[2] *See generally* http://en.wikipedia.org/wiki/Florian_M%C3%BCller.

litigation, reflecting legal advice regarding third party's intellectual property rights and licensing issues.") *with* redacted Tab 225 ("Email reflecting legal advice regarding licensing, prepared at the direction of counsel in anticipation of litigation")).  Nor does Samsung explain why some documents were on the privilege log yet nonetheless withheld as "NR."

Accordingly, the Court should either hold all the documents in Samsung's privilege log are not privileged or order Samsung to provide sufficient information in its log to allow Nokia to assess Samsung's privilege claims.

### C.    The Record Shows Samsung Waived Privilege Over At Least Some Documents

While Nokia lacks sufficient information to individually challenge each document in Samsung's privilege log, the record is clear that Samsung waived privilege over some, if not all, of the documents.  First, Samsung categorically waived privilege over many of the documents by affirmatively putting the content of those documents at issue in the sanctions proceedings.  Second, Samsung made selective partial disclosures of several documents, thereby waiving privilege as to those topics.

### 1.    Samsung Categorically Waived Privilege Under the At Issue Doctrine

By placing the contents and categorization of its documents directly at issue in the sanctions proceedings, Samsung waived any potentially applicable privilege as to those documents.  "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).  "The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword…. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.  The party asserting the claim is said to have implicitly waived the privilege."  *Oracle America, Inc. v. Innovative Technology Distributors, LLC*, No. 11-cv-01043-LHK, 2011 WL 2559825, at *1 (N.D. Cal. June 28, 2011) (denying motion for permission to lodge attorney-client privileged documents for *in camera review* and providing party option of either waiving privilege

or abandoning request for the Court to consider the documents) (citing *Bittaker v. Woodford*, 311 F.3d 715, 719 (9th Cir. 2003)).  Under this doctrine, courts have found that even in a Rule 11 proceeding, parties are not *obligated* to disclose privileged information; they have the opportunity to decide whether to make such a disclosure, and once privileged information is affirmatively relied on, any privilege that may attach is impliedly waived.  *Shared Medical Resources*, 2012 WL 5570213 at *4.

During these proceedings, Samsung raised two issues that expressly waived any alleged privilege by putting the content of the documents directly at issue.  First, Samsung characterized the nature and intent of its communication with outside counsel, going so far as to say what was factually communicated and opine about what the author was thinking when hitting the send button.  (*See, e.g.*, Dkt. No. 2883 at 6:4-7 ("There is no evidence that anyone deliberately, with a purpose of sharing information that should not be shared at any time disclosed that information. We are talking about inadvertent disclosures.")).  Second, Samsung used its privilege communications to justify its argument that neither Samsung nor Quinn Emanuel (nor any of the other law firms worldwide) used Nokia's confidential business information.  (*See, e.g.*, Dkt. No. 2871 at 2 ("And the uncontroverted evidence shows that the incomplete redaction was inadvertent and that Samsung never used the alleged confidential information.")).  Such waiver should extend here to all of the documents identified by Samsung as responsive to the Court's October 2, 2013 order.

Because Samsung chose to raise and fully rely on defenses that put its allegedly privileged communications at issue, fairness demands that Nokia have an opportunity to view the actual documents to assess and rebut these claims.  *See, e.g.*, *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 469-70 (E.D. Mich. 2008) (holding that inclusion of consultation with counsel as evidence supporting a defense of good faith or reasonableness waived attorney client privilege on the narrow subject of those communications); *In re Gibco Inc.*, 185 F.R.D. 296, 301 (D. Colorado 1997) ("If the Trustee is not permitted to review any of these [privileged] documents, Ingham will be free to state his version of the facts surrounding the transfer of lot 12, while the Trustee will be left

1   without any means to examine other evidence which would corroborate or contradict Ingham's

2   statements on this issue."); *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 446, 469 (N.D. Cal. 2006)

3   (finding no waiver of privilege but noting that "[i]f at trial Plaintiff offers testimony that puts

4   attorney-client communications into issue, it will have to disclose any confidential communications

5   that may verify or disprove the truth of such testimony").  Accordingly, Samsung waived any

6   privilege that may have applied to the *in camera* documents.

(a)      **Samsung affirmatively raised the defense that its Protective<br>Order violations were "inadvertent"**

7
8           Samsung's first privilege waiver occurred by affirmatively injecting the issue of whether its

9   disclosures were "inadvertent" into the litigation.  Nokia filed a motion for protective order in the

10  630 case seeking protection from further disseminations of its confidential information and answers

11  as to how its confidential information was previously distributed.  (630 Dkt. No. 647).  Several

12  weeks later, Quinn Emanuel sent counsel for Nokia a letter disclosing various emails distributing

13  an improperly redacted Teece Report containing Nokia's confidential information.  (Dkt. No.

14  2395-03c).  Quinn Emanuel characterized this as "the inadvertent disclosure to Samsung of

15  confidential information belonging to Nokia."  (*Id.*).  Apple then filed a Motion for Sanctions,

16  which Nokia joined.  Neither Nokia nor Apple's motions accused Samsung or Quinn Emanuel of

17  willfully violating the protective order; both were clear that they lacked sufficient information to

18  judge the potential violations.

19          Nonetheless, Samsung affirmatively argued that it should not be subject to sanctions

20  because its protective order violations were merely inadvertent.  (*See, e.g.*, Dkt. No. 2835 at 11-

21  12).  At the first of three hearings on Apple's Motion, Samsung argued the following:

22
23          MS. ESTRICH: There's an intent of willfulness requirement for a violation of a
            protective order. Now if you are going to ask me can there be a violation without
24          sanctions, that's a different issue. But the way the courts have addressed violations
            and protective orders is they ask a key question, and I can give you plenty of cites,
25          yes, there was a disclosure. Was it willful, in this case, no. Did you follow the
            procedures under the protective order to remediate the situation? And where the
26          answer is yes, courts as a rule have said we are not going to sanction you.

27  (Dkt. No. 2485 at 47:18–48:4).  Samsung argued inadvertence in seeking relief from this Court's

28  October 2 Order.  (Dkt. No. 1495 at 1 ("[T]here is no basis for finding the type of protective order

violation that could possibly justify any such [discovery] order.  The disclosure arose from an inadvertent failure to redact a few lines of a 295-paragraph report that was otherwise properly redacted.")).  After the Court issued its Show Cause Order, Samsung argued that sanctions were inappropriate because:

> "[t]here is no longer any dispute that Quinn Emanuel's disclosure of confidential licensing information was inadvertent.  No piece of evidence adduced in the massive discovery conducted either voluntarily or pursuant to the Court's October 2 Order has revealed even the slightest indication that any disclosure was intentional rather than inadvertent, nor does Apple, Nokia, or even the OSC allege as much."

(Dkt. No. 2835-5 at 11; *see also* Dkt. No. 2871-4 at 6 ("there is no evidence that Samsung or Quinn Emanuel acted willfully or in bad faith") and 8 ("There is *no evidence* that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had been transmitted before.")).

As the Court confirmed, and Samsung did not appeal in its motion for relief to Judge Koh, the Protective Order "does not establish a willfulness requirement."  (Dkt. No. 2935).  Although Samsung lost on this issue, by affirmatively raising a *mens rea* defense and arguing that the documents in its privilege log did not show anything more than an inadvertent violation, Samsung put the contents of those documents at issue and waived any alleged privilege.  *See, e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC,* --- F.Supp.2d ---, 2014 WL 1800820 at *5 (S.D.N.Y. May 7, 2014) (granting motion to compel attorney testimony of allegedly privileged communications where client testified about subject at deposition and the testimony sought from the attorney related to "the determining factor for assessing willfulness" of copyright infringement); *Fox v. California Sierra Financial Services*, 120 F.R.D. 520, 530 (N.D. Cal. 1988) ("By asserting affirmative defenses, defendants have placed the information supporting those affirmative defenses at issue in this lawsuit. The general rule is that placing privileged communications at issue in a lawsuit waives the privilege for such communications.").

1

2

        **(b)**     **Samsung raised the defense that the recipients of the improperly redacted Teece Report did not actually use the document in violation of the Protective Order**

3              Samsung's second waiver occurred by affirmatively arguing that it should not be subject to

4  sanctions because the transmissions of the Teece Report do not show actual use of Nokia's

5  confidential information.  (*See e.g.*, Dkt. No. 2835 at 12 ("In any event, there is no evidence that

6  the report was distributed *because* it had been incompletely redacted or that any individual who

7  received the report used the confidential information contained therein.").  Specifically, Samsung

8  argued that for each email cited in the Order to Show Cause either: (i) the Teece Report was

9  transmitted for a purpose unrelated to the unredacted information or (ii) the confidential

10  information was obtained through a source other than the Teece Report.  (*See, e.g.*, Dkt. No. 2581

11  at 55:14-16 ("[T]he undisputed evidence is that Mr. Shim asked that because it become [sic]

12  relevant to a case in Texas called Microenergy – *Microunity* that he asked for for that purpose.");

13  2835 at 14 (arguing no use of the Nokia-Apple license terms from the Teece Report in Tab 6 and

14  that analysis in Tab 222 originated from materials outside the Protective Order) and n.8 (arguing

15  Tab 255 does not contain any information taken from the Teece Report)).  Samsung's privilege

16  claims improperly limited Nokia's ability to assess or challenge these assertions.  *United States v.*

17  *Amlani*, 169 F.3d 1189, 1195-96 (9th Cir. 1999) ("Amlani 'cannot invoke the attorney-client

18  privilege to deny [the government]. . . access to the very information that [the government]. . . must

19  refute" in order to discredit Amlani's claims).

20              Samsung's positions in this matter went far beyond mere denials of allegations raised by

21  Apple and Nokia.  Instead, Samsung affirmatively argued that the Court could rely properly on the

22  *ex parte* documents themselves rather than the discovery actually provided to Nokia.  (Dkt. No. 2883

23  at 23:19–24:1 (arguing that the Court need not consider inconsistencies in Daniel Shim's deposition

24  testimony because the Court has access to contemporaneous documents); 2556-5 at 2 ("the record

25  provides no support whatsoever for Apple's and Nokia's inflammatory allegations that Samsung

26  misused the inadvertently-disclosed confidential licensing information")).

27              As previously noted, the Court's Show Cause Order provided Samsung "with one further

28

10

opportunity to demonstrate with specificity how each and every one of the [cited] documents fall

under the protection of either the attorney-client privilege or the work-product doctrine by

*submitting a* brief…" (Dkt. No. 2689 at n.16). Samsung went beyond the Court's invitation. Rather

than merely submitting a brief substantiating its "seemingly unwarranted" privilege claims, Samsung

took this opportunity to submit sixteen factual declarations, attesting to both privilege and the

separate issue of whether the documents reflected use of the improperly redacted Teece Report. (*See

generally* Dkt. No. 2807). Nokia received no opportunity to depose these declarants to test the

veracity of their statements that Nokia's confidential information was not used, and even if it had

received such opportunity, the declarations themselves were heavily redacted for privilege.

Indeed, Samsung relied heavily on these declarations in its arguing why sanctions were not

warranted.[3] (*See, e.g.*, Dkt. No. 2835 at 13 (citing a partially redacted paragraph of the Decl. of

Jennifer Selendy (Dkt. No. 2807-13, ¶ 7) as an "undisputed record" that the improperly disclosed

confidential information was not used in negotiations with Ericsson), 14 (citing (i) partially redacted

paragraphs of the Decl. of Helen Hopson (Dkt. No. 2807-06, ¶¶ 5-8) as evidence that Samsung's

foreign counsel did not use the improperly redacted Teece Report, (ii) a partially redacted paragraph

of the Decl. of Laetitia Benard (Dkt. No. 2807-16, ¶ 5) as evidence that circulated information came

from public sources, and (iii) a partially redacted paragraph of the Decl. of Daniel Shim (Dkt. No.

2807-14, ¶ 5) as evidence that licensing information in emails was "necessarily *not*" derived from

the Teece Report), 17 (citing partially redacted paragraphs of the Decl. of Indong Kang (Dkt. No.

2807-07, ¶¶ 2-4, 7) as evidence that analysis of "a potential extension of an Apple-Nokia license"

did not contain information derived from materials produced pursuant to the Protective Order)). The

information asymmetry was stark—Samsung requested and received an opportunity to depose Nokia

and Apple witnesses (Dkt. No. 2610-3); nonetheless, it was more than happy to rely on untested

---

[3] Pursuant to the Court's Order (Dkt. No. 2790), Samsung publicly filed a redacted version of its privilege response. (Dkt. No. 2807). While requiring Samsung to file its privilege response publicly, the Court noted that it "never granted Samsung the authority to keep any argument to the court beyond the reach of the other parties." (Dkt. No. 2790 at 2). Samsung's citations to the redacted portions of this filing for issues unrelated to substantiating privilege were not properly before the Court to the extent the redactions do not meet the Ninth Circuit's standard for sealing. L.R. 79-5.

information that it hid behind the alleged shield of privilege.  (*See, e.g.*, Dkt. No. 2835 at 13-14, 17).

This is particularly problematic here where, in at least one instance, the Court found that Samsung's

explanation of documents was not credible, yet Nokia was unable to see the underlying document to

challenge Samsung's explanation or evaluate the Court's rulings.  (Dkt. No. 2935 at 14 ("the court

does not find Shim's explanation that he never used the insufficiently redacted Teece Report

credible"), n.17 (noting that the reasoning provided in a declaration as to why an email highlighted

"the detailed terms of the Apple-Nokia license" did not appear anywhere on the face of the

document)).  Without access to the documents Samsung put directly at issue, Nokia cannot evaluate

whether any of Samsung's other explanations lacked credibility in ways the Court may have missed.

Accordingly, Samsung's arguments that there was no evidence of use and its *ex parte*

characterizations of the documents to the Court improperly invoked privilege as a shield and sword,

thereby waiving any potentially applicable privilege.

### 2.    Samsung Waived Privilege Through Selective, Partial Disclosures

In addition to Samsung's categorical at-issue waiver, Samsung waived any applicable

privilege as to specific documents by selectively disclosures through the testimony of its witnesses

and through Quinn Emanuel's arguments.  "Once a litigant decides to affirmatively rely on

privileged information thereby placing said information into issue, however, any privilege that may

attach is impliedly waived."  *Shared Medical Resources*, 2012 WL 5570213 at *4 (citing *QBE Ins.

Co. v Jorda Enterprises Inc.*, No. 10-21107-CIV, 2012 WL 4089890 at *2 (S.D. Fla. Sept. 17,

2012)).

On numerous instances, Samsung disclosed details relating to Tabs 19, 20, and 272.  Prior

to Apple filing its Motion for Sanctions, Quinn Emanuel sent Apple a letter stating:

> On December 21, 2012, a Quinn Emanuel associate sent the incompletely redacted
> Teece Report to a Samsung employee.  Another associate realized that it contained
> references to licensing terms that had not been redacted.  The lawyer who sent the
> email notified the Samsung employee not to look at the report.  The employee
> confirmed that he would not look at the report and would delete the email.  The
> attorney subsequently sent another email with a report that contained complete
> redactions.  Neither the lawyer nor others at Quinn Emanuel realized at the time that
> the incompletely redacted report had previously been disclosed to Samsung.

(Dkt. No. 2395-03g at 2).  In a declaration filed in support of Samsung's October Supplemental

1    Brief, Mr. Shim explained that the December 21-22 email chain involved his request for a copy of

2    the Teece Report in connection with a case brought by Microunity against Samsung in the Eastern

3    District of Texas, the request having nothing to do with any Apple licensing information that might

4    have been contained in the report.  (Dkt. No. 2556-16 at ¶ 8).  There are numerous other

5    disclosures relating to these three documents.  (*See, e.g.*, Dkt. Nos. 2395-03c at 2; 2485 at 45:7-11,

6    46:9-14; 2807-1; 2807-12 at ¶ 6; 2807-14 at ¶ 4; and 2581 at 55:12-20, 59:9-14, 59:24-60:3, 61:2-

7    5, and 65:14-66:3).  Samsung's affirmative representations that it took corrective action with

8    respect to the disclosure of confidential information to Mr. Shim is a selective disclosure presented

9    by Samsung as a defense to its protective order violation, and it waived the privilege as to those

10   communications and their subject matter.  *See, e.g.*, *E.E.O.C. v. Outback Steakhouse of Fl, Inc.*,

11   251 F.R.D. 603, 610-12 (D. Colo. 2008) (holding defendants waived privilege regarding

12   investigations and remedial efforts in response to a claim by raising these as affirmative defenses);

13   *Walker v. Contra Costa*, 227 F.R.D. 529, 537 (N.D. Cal. 2005) (holding defendants waived

14   attorney client privilege and work product protection by asserting internal pre-litigation

15   investigation as an affirmative defense and ordering production of all documents pertaining to that

16   defense).

17         Further, Samsung misrepresented the information within these Tabs.  In Samsung's August

18   16 letter to Apple, it stated that following Quinn Emanuel's instruction to Mr. Shim that he not

19   look at the improperly redacted Teece Report, a Quinn Emanuel attorney "subsequently sent

20   another email with a report that contained complete redactions."  (Dkt. No. 2395-03g at 2).

21   However, the Court found that the subsequent version sent to Mr. Shim was *not* fully redacted.

22   (Dkt. No. 2395 at n.28 ("This version of the Teece Report still contained unredacted information

23   regarding Ericsson's license with Apple, but in a different section of the report.")).  At the second

24   hearing on Apple's Motion, Samsung attempted to defend its failure to follow the Protective

25   Order's notification provisions by arguing that, even though at least one Quinn Emanuel attorney

26   knew that at least one Samsung employee received the unredacted confidential information in the

27   Teece Report, neither Samsung nor Quinn Emanuel knew other disclosures had occurred:

28

1
2
3
4

> This person discovered it, but this person didn't have the knowledge or didn't put it together that this wasn't a report put on the FTP site last month or sent out in the interim.  Didn't know, didn't put that together.  So, I mean, *if it had been the same person*, I would certainly like to believe that they would realize, oh my goodness, we have been sending this out people have seen this it was on the FTP site last March, we sure as heck better do something about it.  *This person didn't know so that's why that didn't happen*."

5     (Dkt. No. 2581 at 61:2-11 (emphasis added); *see also* Dkt. No. 2871-4 at  8 ("There is *no evidence*

6     that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had

7     been transmitted before.") (emphasis in original)).  These statements by Samsung are directly

8     contrary to Samsung's *eventual admission*[4] and the Court's finding that the same Quinn Emanuel

9     associate who prepared the initial redactions of the Teece Report in March 2012 identified the

10    incomplete redactions and the lack of approval from Apple of the redactions and brought these

11    issues to the attention of a senior associate and a partner.  (Dkt. No. 2935 at 5).  Thus, not only did

12    Samsung partially disclose the contents of Tabs 19, 20, and 272, it misrepresented those documents

13    on at least two occasions.  As Judge Learned Hand once said regarding the Fifth Amendment

14    privilege, "the privilege is to suppress the truth, but that does not mean that it is a privilege to

15    garble it; although its exercise deprives the parties of evidence, it should not furnish one side with

16    what may be false evidence and deprive the other of any means of detecting the imposition.  The

17    time for a witness to protect himself is when the decision is first presented to him; he needs nothing

18    more, and anything more puts a mischievous instrument at his disposal."  *U.S. v. St. Pierre*, 132

19    F.2d 837, 840 (2d Cir. 1942) (finding that where a witness confessed all the elements of a crime, he

20    may not use the Fifth Amendment privilege to withhold the details) (writ of certiorari granted, then

21    dismissed as moot by 319 U.S. 41 (1943)).  Here, Samsung openly admitted to sufficient

22    information to support sanctions for violating the Protective Order.  (Dkt. No. 2935 at 13-17).

23    Samsung should not be able to unfairly restrict Nokia's ability to evaluate the Court's order by

24    claiming privilege over the details of these violations.

25

26    [4] In December 2013, Samsung changed positions and admitted that the associate who redacted the report in March was the same associate who discovered the incomplete redactions.  (Dkt. Nos. 2883

27    at 34:9-16, 94:17-19).  Despite Samsung's repeated assertions that it voluntarily disclosed all information giving rise to sanctions before the proceedings began (Dkt. Nos. 2964 at 3; 3134 at 5),

28    Nokia had no knowledge of this fact until the December 9 hearing.  (Dkt. No. 2883 at 94:9-25).

Further, Samsung's disclosures directly implicate Fed. R. Evid. 502(a), which governs waiver of privilege through disclosures in a federal proceeding.  Samsung affirmatively made statements regarding the scope and nature of the communications between Mr. Shim and Quinn Emanuel, thus, its disclosure was intentional.  *See, e.g.*, *John Wiley & Sons,* 2014 WL 1800820 at *5 (finding "intentional" requirement of Rule 502(a) waiver satisfied where a party testifies about communications at deposition).  These three Tabs relate directly to the subjects raised by Samsung, thus, the "same subject matter" requirement of Rule 502(a) is satisfied.  *See Id.*  Finally, given the record shows Samsung misrepresented the allegedly privileged information within these documents, the documents "ought in fairness to be considered" with Samsung's statements.  Fed. R. Evid. 502(a)(3).  Accordingly, the Court should find Samsung waived any alleged privilege as to these documents.

### D.  Fairness Requires Providing Nokia Access to Those Documents Cited in the Sanctions Order

Samsung should be compelled to immediately produce all of the *in camera* documents to which privilege does not attach, including all non-privileged documents and all documents where Samsung either categorically or specifically waived a potentially applicable privilege, as described above.  However, in addition to remanding to resolve the privilege issue, the remand here also called for a determination of whether due process requires that Nokia receive access to, or information regarding, documents that the Court finds *are in fact privileged*.  (Dkt. No. 3194 at 13).  The order explained that "*in camera* review of Samsung's documents in this situation could have unfairly restricted Nokia's evaluation of Judge Grewal's rulings regarding protective order violations and sanctions."  (*Id.* at 11).  As the Court recognized in the Sanctions Order, "because of Samsung's sweeping privilege assertions, neither Apple nor Nokia had access to enough information to tell a clear and coherent story."  (Dkt. No. 2935 at 3).

While the specific grounds for the privilege waiver finding in footnote 13 of the Sanctions Order were overruled, the Sanctions Order also stated that "As to all other documents cited, the court finds that the portions discussed in this order are not privileged" (Dkt. No. 2934 at 4 n. 13).  Samsung did not challenge the Court's finding that portions of the documents were non-privileged.

1   Indeed, Samsung *agreed* that these documents contain non-privileged portions (Dkt. No. 3174),

2   implicitly admitting that its over-redactions and withholdings of documents were improper.

3   Accordingly, the following Tabs contain at least some non-privileged portions: Tabs 2, 3, 4, 4.1, 5,

4   5.1, 6.1, 6.2, 6.3, 6.4, 8, 8.1, 8.2, 17, 18, 19, 56, 87, 90, 90.1, 90.2, 93, 121, 144, 144.1, 215, 216,

5   216.1, 216.2, 221, 225, 225.1, 239, 239.1, 239.2, 239.3, 239.4, 239.5, 239.6, 239.7, 239.8, 239.9,

6   239.10, 239.11, 239.12, 239.13, 239.14, 246, 246.1, 255.1, 255.2, 255.3, 255.4, 255.5, 255.6, 255.7,

7   258, 258.1, 258.2, 258.3, 258.4, 258.5, 260, 260.1, 260.2, 260.3, 260.4, 260.5, 260.6, 260.7, 260.8,

8   260.9, 260.10, 260.11, 272.1, 272.2, 272.3, and 272.4.  (Dkt. No. 2934).  These documents should be

9   produced to Nokia, with at least the portions cited in the Sanctions Order unredacted.  Samsung did

10   not appeal as to the Court's finding that at least these portions are non-privileged.  Further, Samsung

11   itself admits that there are non-privileged portions of these documents, despite the fact they were all

12   either completely redacted or withheld.  (Dkt. No. 3174 at 14 ("Samsung does not claim privilege

13   over the first email in the chain, Tab 222."), 15 (noting that Samsung does not challenge the Court's

14   finding that "[a]s to all other documents cited, the court finds that the portions discussed in this order

15   are not privileged")).  Thus, by not turning these documents over, Samsung is in contempt of the

16   Court's October 2, 2013 order.  (Dkt. No. 2483 (ordering Samsung to produce "[a]ll e-mails and

17   other communications sent or received since March 24, 2012 by the Samsung employees who

18   received the confidential information (more specifically, the Samsung employees listed in the

19   attachments to Mr. Becher's August 1 letter) to the extent that they relate to Apple's licenses with

20   Nokia, Ericsson, Sharp, and Philips."); 2538 (affirming the ordered discovery)).  Even if the Court

21   finds that these documents are privileged in part, fairness demands that Nokia see the portions that

22   the Court and Samsung have agreed are not privileged in order to evaluate the Court's order without

23   unfair restriction.  The Court should order Samsung to immediately produce these documents to

24   Nokia.

25          In the alternative, if Samsung should be compelled to produce all of the *in camera*

26   documents, Nokia respectfully requests an opportunity for its outside counsel to inspect these

27   documents (or at least some meaningful subset) subject to a Fed. R. Evid. 502(d) order of non-

28

waiver.  Such an order would allow Nokia to evaluate the Court's rulings without unfair restrictions, while also protecting for the future any legitimate privilege claims Samsung has over the documents.

## IV.  CONCLUSION

For the foregoing reasons, the Court should order Samsung to produce all of the *in camera* documents to which privilege does not attach.

DATED: October 17, 2014                    Respectfully submitted,

                                           ALSTON & BIRD, LLP

                                           */s/ Ryan W. Koppelman*
                                           RANDALL L. ALLEN (Ca. Bar No. 264067)
                                           randall.allen@alston.com
                                           RYAN W. KOPPELMAN (Ca. Bar No. 290704)
                                           ryan.koppelman@alston.com
                                           ALSTON & BIRD LLP
                                           1950 University Avenue, 5th Floor
                                           East Palo Alto, CA 94303-2282
                                           Telephone:     650-838-2000
                                           Facsimile:     650-838-2001

                                           *Attorneys for NOKIA CORPORATION*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2014, I electronically filed the foregoing **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOKIA CORPORATION'S MOTION TO PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to the parties and counsel of record.

This 17th day of October, 2014.

/s/Ryan W Koppelman
RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone:650-838-2000
Facsimile: 650-838-2001

*Attorneys for NOKIA CORPORATION*