RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone: 650-838-2000
Facsimile: 650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (pro hac vice)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777

Attorneys for NOKIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 5:11-CV-01846-LHK (PSG)<br><br>**NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE**<br><br>Date: December 10, 2014<br>Time: 10:00 a.m.<br>Judge: Hon. Paul S. Grewal<br>Ctrm: 5, 4th Floor |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ....... 1

II. THE COURT SHOULD DETERMINE WHETHER THE *IN CAMERA* DOCUMENTS ARE PRIVILEGED ....... 1

III. SAMSUNG WAIVED PRIVILEGE OVER MANY, IF NOT ALL, OF THE *IN CAMERA* DOCUMENTS ....... 4

A. Samsung Categorically Waived Privilege Under the "At-Issue" Doctrine ....... 4

1. Samsung Alone Made "Inadvertence" an Issue ....... 5

2. Samsung Raised the Defense that the Recipients of the Teece Report Did Not Use the Unredacted Confidential Information ....... 6

3. A Categorical Waiver of the *in Camera* Documents Is Appropriate ....... 7

B. Samsung Waived Privilege to Certain Documents Through Selective Partial Disclosures ....... 8

IV. NOKIA HAS AN INTEREST IN SEEING DOCUMENTS THAT THE COURT RELIED UPON ....... 9

V. SAMSUNG'S NEW REPRESENTATIONS REGARDING THE *IN CAMERA* DOCUMENTS DO NOT PRECLUDE NOKIA'S MOTION ....... 10

VI. NOKIA HAS NOT WAIVED ANY ARGUMENTS IN ITS MOTION ....... 11

A. Nokia Did Not Waive Its Arguments for a Ruling on Privilege ....... 11

B. Nokia Consistently Raised Its Waiver Arguments ....... 12

C. Nokia's Remediation Motion Did Not Waive Its Right to Seek Relief from the Sanctions Order ....... 13

VII. THE SANCTIONS LEVIED ON SAMSUNG AND QUINN EMANUEL STAND ON THE PUBLIC RECORD ....... 13

VIII. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ....................8

*Brittain v. Sheriff of Riverside County*,
2011 WL 6149287 (C.D. Cal. Dec. 9, 2011) ....................11

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ....................4, 7

*Datel Holdings Ltd. v. Microsoft Corporation*,
No. 09-cv-05535-EDL, 2011 WL 866993 (N.D. Cal. Mar. 11, 2011) ....................2

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) ....................11

*Genetech, Inc. v. Insmed Inc.*,
236 F.R.D. 466 (N.D. Cal. 2006)....................6

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) ....................7

*Holland v. Island Creek Corp.*,
885 F. Supp. 4 (D.D.C. 1995)....................9

*In re Chase Bank USA, N.A. Check Loan Contract Litigation*,
No. 3:09-md-2032-MMC (JSC), 2011 WL 3268091 (N.D. Cal. July 28, 2011)....................2

*Oracle America, Inc. v. Innovative Technology Distributors, LLC*,
No. 11-cv-01043-LHK, 2011 WL 2559825 (N.D. Cal. June 28, 2011) ....................5, 7

*Shared Medical Resources LLC v. Histologies LLC*,
No. 12-cv-0612-DOC, 2012 WL 5570213 (C.D. Cal. Nov. 14, 2012)....................8

*Simpson v. Lear Astronics Corp.*
77 F.3d 1170 (9th Cir. 1996) ....................12

*Tennenbaum v. Deloitte & Touche*,
77 F.3d 337 (9th Cir. 1996) ....................8

*U.S. v. ChevronTexaco Corp.*,
241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002) ....................3

*U.S. v. Martin*,
278 F.3d 988 (9th Cir. 2002) ....................................................................................2, 3

*U.S. v. Ruehle*,
583 F.3d 600 (9th Cir. 2009) ....................................................................................2, 3

*Wilcox v. Arpaio*,
753 F.3d 872 (9th Cir. 2014) ......................................................................................11

**RULES**

Federal Rule of Civil Procedure 26(b)(5)(A)...........................................................................2, 3

## I. INTRODUCTION

Contrary to the unfounded attacks by Samsung and Quinn Emanuel, Nokia filed its latest motion to compel for the same reason it filed every motion in this case—to learn how, why, and to what extent Nokia's most sensitive confidential business information was distributed to and disseminated by Samsung. To this end, Nokia seeks production of the *in camera* documents that are either not privileged or for which Samsung has waived privilege. Samsung's Opposition fails to properly support privilege over these documents, fails to avoid a proper finding of waiver, and tacitly concedes that it made improper privilege claims over many of the *in camera* documents.

As more fully explained below, Samsung's arguments fail for the following reasons. *First*, many of Samsung's privilege assertions are improper, and Samsung Opposition fails to provide adequate explanation or support in light of these glaring deficiencies. *Second*, Samsung waived privilege to many of the documents, either by putting them at issue or through selective disclosures. Samsung's mischaracterizations of the proceedings and of its privilege assertions do not cure these waivers. *Third*, Nokia has a legitimate interest in seeing the documents in order to evaluate certain portions of the Sanctions Order and, if warranted, seek reconsideration of certain specific findings as to the use of Nokia's confidential information. *Fourth*, Samsung's claim that Nokia waived its arguments and that Nokia is not entitled to view the documents fail both on the facts and under applicable law. Finally, despite Samsung's arguments to the contrary, the sanctions levied against Samsung and Quinn Emanuel are supported by their own admissions and the public record and remain proper regardless of the outcome of this specific motion, which follows directly from the specific remand from the presiding judge. Accordingly, Nokia respectfully requests the Court grant its motion to Compel.

## II. THE COURT SHOULD DETERMINE WHETHER THE *IN CAMERA* DOCUMENTS ARE PRIVILEGED

Nokia's Motion specifically moves the Court "for a determination on privilege as to the documents reviewed in camera" and requests "an order from the Court ruling on whether Samsung can properly assert privilege over the documents produced for *in camera* review…." (Dkt. No.

3213, Notice of Motion and Motion at 1). In opposition, Samsung essentially argues that because it submitted a privilege log, Nokia is not entitled to a ruling on the underlying documents. This argument impermissibly shifts Samsung's burden to Nokia. As the party asserting privilege, Samsung has the burden of establishing the privilege. *See U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009); *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); Fed. R. Civ. P. 26(b)(5)(A). There is strong reason to believe, even based on the minimal information available to Nokia, that Samsung vastly over-asserted privilege here. Indeed, none of Samsung's arguments demonstrate that it can maintain privilege over all of the *in camera* documents.

Samsung states that "Nokia does not argue that the documents at issue here primarily contain business analysis." (3215-3 at n.1). To the contrary, Nokia's Motion makes clear that Nokia lacks sufficient information to assess the majority of Samsung's privilege claims, which Samsung has the burden of substantiating. To date, Nokia has received two characterizations of the documents—Samsung's claim that the documents are privileged, and the Court's determination that "many if not all of [the withheld documents] do not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would have served as cause for communication." (Dkt. No. 2689 at n.16). Further, the Court stated that its review of the documents provided "few whys or hows" the information was transmitted, implying many of the allegedly privileged documents may be no more than transmission emails. (Dkt. No. 2935 at 3-4). However, without access to the documents, Nokia cannot substantively argue this point.

Samsung also does not challenge the rule that "a single email of a 'legal nature' does not automatically privilege the entire email thread." (Dkt. No. 3213 at 5 (citing *In re Chase Bank USA, N.A. Check Loan Contract Litigation*, No. 3:09-md-2032-MMC (JSC), 2011 WL 3268091 at *6 (N.D. Cal. July 28, 2011); *Datel Holdings Ltd. v. Microsoft Corporation*, No. 09-cv-05535-EDL, 2011 WL 866993 at *6 (N.D. Cal. Mar. 11, 2011))). Thus, Samsung could not possibly claim privilege over an email sent by a blogger to a Samsung employee (Tab 236), regardless of whether the email was in a thread containing actually privileged emails. Samsung claims its "privilege log makes clear that a Samsung licensing executive authored an email to a Samsung attorney … and this

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE

2

CASE NO.: 5:11-CV-01846-LHK (PSG)

privileged email contains a FOSS Patents blog post." (Dkt. No. 3215-3 at 9). This explanation is hardly "clear" from the log and is seemingly in contradiction with Tab 236 which lists two *withheld* emails—February 13, 2013 from James Jinhwan Kwak to Indong Kang and James Jinhwan Kwak and February 14, 2013 from FOSS Patents to James Jinhwan Kwak—and contains no reference to a "blog post." (Dkt. No. 3213-2 at Tab 236).

Samsung argues it is "telling" that Nokia pointed out Tab 236 as "the lone example of an alleged deficient entry on Samsung's log." (Dkt. No. 3215-3 at 9). To the contrary, this was not a lone example, and the fact that this indisputably improper privilege assertion can be seen on the face of Samsung's log calls into question the propriety of Samsung's other privilege assertions. In addition, Nokia also cited numerous tabs of Samsung's log that do not identify an attorney as a sender or recipient. (Dkt. No. 3213 at 5). In response, Samsung now claims that of the thirty-one tabs identified by Nokia, five of those tabs actually involved an attorney, despite not identifying one on the log, and argues that "Nokia offers no basis for disputing Samsung's description" that the emails pertain to legal advice. (3215-3 at 9). In so arguing, Samsung attempts to dodge the fact that it has the burden of substantiating its privilege claims. *Ruehle*, 583 F.3d at 607; *Martin*, 278 F.3d at 999; Fed. R. Civ. P. 26(b)(5)(A). While Samsung cites *ChevronTexaco* for the proposition that privilege may attach where "employees discuss or transmit legal advice given by counsel" (Dkt. No. 3215-3 at 9), that case also stated that "[b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel." *U.S. v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002). Accordingly, many of these entries are highly suspect and Samsung cites no authority to find it has sufficiently demonstrated privilege.

As further noted in Nokia's Motion, Samsung failed to provide any explanation for why some documents were produced in entirely redacted form while others were withheld completely. (Dkt. No. 3213 at 5). Samsung's Opposition argues for the first time that the "obvious" explanation is that "some documents contain non-privileged material that could be separated using redactions;

other documents do not." (Dkt. No. 3215-3 at 9). However, even this argument is contradicted by the face of the documents actually produced by Samsung. For virtually all of the documents produced, Samsung only left information unredacted on the documents that was already present on the log, specifically the sender, recipient, date, and attachment names. (*See, e.g.*, Dkt. Nos. 3142-4, 3142-6, 3142-7, 3142-8, 3142-9, 3142-10, 3142-11). Samsung redacted the entire body and even the subject of these produced emails and did not even attempt to provide all separable, non-privileged information that it was ordered to produce. (*See, e.g.*, Dkt. No. 3174 at 14 (stating that "Samsung did not claim privilege over the first email in the chain, Tab 222"—a tab that Samsung *withheld* in its entirety). The combination of Samsung's broad over-redacting of the produced documents and inexplicable withholding of others in their entirety leaves Nokia with an unfairly confused and incomplete picture of the documentary record.

Accordingly, Nokia respectfully requests that the Court evaluate the merits of Samsung's specious privilege claims and order production of those documents for which privilege has not been properly asserted.

## III. SAMSUNG WAIVED PRIVILEGE OVER MANY, IF NOT ALL, OF THE *IN CAMERA* DOCUMENTS

Nokia has argued that Samsung waived privilege either by putting the contents of the *in camera* documents at issue in the proceedings or by partially disclosing the contents of the documents. (Dkt. No. 3213 at 6-15). Samsung's response to the at-issue argument mischaracterizes its conduct in these proceedings and overstates its cited law. Its response, in fact, demonstrates that Samsung either waived privilege or improperly withheld information. Accordingly, the Court may properly find a waiver of privilege under either doctrine.

### A. Samsung Categorically Waived Privilege Under the "At-Issue" Doctrine

Contrary to Samsung's characterizations in its Opposition, Samsung affirmatively raised issues that Nokia could not rebut without access to the allegedly privileged documents, thereby waiving any applicable privilege. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected

communication, the privilege may be implicitly waived."); *Oracle America, Inc. v. Innovative Technology Distributors, LLC*, No. 11-cv-01043-LHK, 2011 WL 2559825, at *1 (N.D. Cal. June 28, 2011) ("[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.").

**1. Samsung Alone Made "Inadvertence" an Issue**

Samsung waived privilege over the *in camera* documents by putting at issue whether its violations were inadvertent as opposed to intentional. As detailed in Nokia's Motion, Samsung alone put inadvertence at issue in these proceedings in order to color its conduct in the best possible light. (Dkt. No. 3213 at 8-9). Despite now claiming that it was merely "denying intentionality and use" (Dkt. No. 3215-4 at 12), Samsung has acknowledged multiple times that neither Nokia nor Apple alleged the disclosures were intentional. (Dkt. Nos. 2556-5 at 3 ("Not a single piece of evidence adduced in discovery, either voluntary or compelled, exists to suggest that any disclosure was intentional rather than inadvertent, *nor has Apple or Nokia alleged as much*."); 2835 at 11 ("nor does Apple, Nokia or even the OSC allege as much.")). Thus, the argument that Samsung's arguments were mere denials necessarily fails. Samsung specifically argued the content of the documents while simultaneously withholding them from Nokia, all to comfort the Court that Samsung's self-serving description of every "single piece of evidence" should be accepted. (*Id.*). To the extent Samsung may have misrepresented that the disclosures were inadvertent, Nokia's inability to see these documents "could have unfairly restricted [its] evaluation of [the Sanctions Order]." (Dkt. No. 3194 at 11).

Without access to the underlying documents, Nokia had no meaningful way to assess or refute Samsung's representations regarding the content of the evidence. While Samsung argues that it "was entitled to advance its legitimate, good-faith position that willfulness was an element of a Protective Order violation and that its conduct here was not willful," it cites no authority that a "good-faith" affirmative defense is outside the scope of a privilege waiver. Further, while the Court correctly found that there is no intentionality requirement for protective order violations (Dkt. No. 2935 at 8), the Court appears to have considered Samsung's state of mind as a mitigating

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE

5

CASE NO.: 5:11-CV-01846-LHK (PSG)

factor. (*See, e.g.*, *id.* at 13 ("[A]lthough each individual violation here may have been as inadvertent as the initial missed redaction above…"). Fairness requires providing Nokia with the documents to assess, and if necessary, challenge Samsung's representations that the transmissions were inadvertent.

Samsung cites cases for the proposition that "denials of wrongdoing do not affirmatively put a party's privileged communications at issue." (Dkt. No. 3215-3 at 11-12). It is not the case that Nokia accused Samsung of intentionally violating the Court's Protective Order and Samsung simply denied the accusation. As described above, Samsung first *raised* the claim of inadvertence; thus, its actions were not a mere denial. One of Samsung's cited authorities expressly found that a mere denial did not waive privilege, but that if the party put the communications at issue, it would have to disclose "any confidential communications that may verify or disprove the truth of such testimony." *Genetech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (stating that if the attorney-client communications were put into issue, the party would have to disclose "any confidential communications that may verify or disprove the truth of such testimony"). Here, Samsung both raised and continuously litigated the issue of inadvertence, while asserting privilege claims that prevented Nokia from meaningfully assessing or rebutting its representations. Such use of the privilege as a shield and sword waived any privilege that may have applied to the *in camera* documents.

**2. Samsung Raised the Defense that the Recipients of the Teece Report Did Not Use the Unredacted Confidential Information**

Samsung's positions on use of the confidential information went far beyond mere denials of allegations raised by Nokia (and Apple as well). As previously noted by Nokia, Samsung affirmatively argued that the Court could rely properly on the *ex parte* documents themselves rather than the discovery actually provided to Nokia. (Dkt. No. 2883 at 23:19–24:1 (arguing that the Court need not consider inconsistencies in Daniel Shim's deposition testimony because the Court has access to contemporaneous documents)). Samsung now claims this urging to the Court was not an affirmative act because "it was in response to a question from the Court seeking an explanation of

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE 6 CASE NO.: 5:11-CV-01846-LHK (PSG)

witness testimony." (Dkt. No. 3215 at n.2). However, this is precisely the type of conduct the at-issue doctrine is designed to prevent. *See, e.g.*, *Oracle America, Inc. v. Innovative Technology Distributors, LLC*, No. 11-cv-01043-LHK, 2011 WL 2559825, at *1 (N.D. Cal. June 28, 2011) ("In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege."); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992). Here, the Court had a question about inconsistencies in a Samsung employee's deposition testimony, and Samsung answered it by citing to allegedly privileged communications that Nokia (or Apple) had not seen and could not adequately dispute.

Samsung also heavily relied on information it claimed privilege over in order to argue why no sanctions were warranted. (*See* Dkt. No. 3213 at 10-12). Samsung argues that even though it cited redacted declarations to rebut arguments that it used Nokia's confidential information, it only cited to "non-privileged, unredacted portions." (Dkt. No. 3215-5 at 12). This is incredibly misleading because Samsung in fact cited directly to redacted paragraphs in these declarations. (Dkt. No. 3213 at 10-12). In one instance, Samsung even quoted a redacted sentence. (Dkt. No. 2835 at 13 (using ellipsis to paraphrase redactions in quoting Dkt. No. 2807-13, ¶ 7)). Such arguments directly put the content of the discussed documents at issue even though they were redacted for privilege. Accordingly, by relying on the *in camera* documents to argue that there is no evidence that it used Nokia's confidential information, Samsung improperly invoked privilege as a shield and sword and thereby waived any potentially applicable privilege.

### 3. A Categorical Waiver of the *in Camera* Documents Is Appropriate

Samsung cites *Hernandez v. Tanninen* to argue that Nokia's at-issue argument is overbroad for failing to identify specific documents. (Dkt. No. 3215-3 at 15). But, the Court in *Hernandez* rejected a blanket waiver under the disclosure doctrine, not the at-issue doctrine. *See Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). The at-issue doctrine may properly apply to an entire claim or defense. *See Chevron*, 974 F.2d at 1162. Here, all of the *in camera* documents are relevant to whether the transmissions of Nokia's confidential information were inadvertent and to

whether Samsung used Nokia's confidential information. Samsung provides no authority to find Nokia's request "grossly overbroad" when it relates to the defined universe of the *in camera* documents that Samsung placed at issue.

Samsung's reliance on *Bittaker* for the proposition that it never had an opportunity to withdraw its defenses is similarly unfounded. The general description of the at-issue waiver provided in *Bittaker* does not require that a party have prior notice from a *court* of a potential waiver. *Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003) (describing "implications" flowing from the at-issue doctrine cases). Samsung had numerous opportunities to withdraw its assertions that put its privileged documents at issue but has continued perilously to maintain these positions without retreat. Nokia (and Apple) made their waiver positions known to Samsung back in October 2013. (*See* Dkt. Nos. 2557-4 at 2, 13; 2558-3 at 12-13). Nonetheless, Samsung chose to continue relying on the same arguments throughout the proceedings.

**B. Samsung Waived Privilege to Certain Documents Through Selective Partial Disclosures**

Samsung also waived privilege through selective partial disclosures. Specifically, Samsung has disclosed details relating to Tabs 19, 20, and 272 on multiple occasions. (Dkt. No. 3213 at 12-15). By disclosing details of these documents, Samsung waived any applicable privilege. *Shared Medical Resources LLC v. Histologies LLC*, No. 12-cv-0612-DOC, 2012 WL 5570213 at *4 (C.D. Cal. Nov. 14, 2012).[1] Samsung correctly acknowledges that this rule is designed "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable. (Dkt. No. 3215-3 at 16 (citing *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996)). Nonetheless, Samsung argues that the partial disclosure doctrine does not apply because its disclosures did not reveal any

[1] Samsung attempts to distinguish Nokia's other citations as relating to the at-issue doctrine. (Dkt. No. 3215-5 at n.10). However, these documents would also be subject to an at-issue waiver because they relate to whether Mr. Shim intentionally transmitted the Teece Report and whether Samsung used the Teece Report.

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE
8
CASE NO.: 5:11-CV-01846-LHK (PSG)

privileged information. (Dkt. No. 3215-3 at 16-17). This is incorrect because Samsung cannot have it both ways. The documents produced to Nokia were redacted based on privilege for all information except for the identity of the senders and recipients—information already on Samsung's privilege log. (*See* Dkt. No. 3163-3, 3164-4, 3164-5). Samsung itself cites authority for the proposition that "[i]t is permissible for a party to disclose the nonprivileged portions of a *document* while *redacting the privileged material*, without waiving the privilege for the entire document." (Dkt. No. 3215-3 at 16-17 (citing *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 7 (D.D.C. 1995) (emphasis added)). Here, Samsung's disclosures in declarations and depositions discuss information redacted from the produced documents. (*Compare* filings cited in Dkt. No. 3213 at 12-15 with 3163-3, 3154-4, 3164-5). In short, Samsung cannot assert privilege through blanket redactions and then allege the same material is non-privileged in order to make selective, partial disclosures as it suits Samsung. There is no authority which supports such gamesmanship and weight of authority holds that this behavior properly results in waiver. Accordingly, Samsung's partial disclosures waived privilege as to these documents.

## IV. NOKIA HAS AN INTEREST IN SEEING DOCUMENTS THAT THE COURT RELIED UPON

Despite the arguments raised in Samsung's Opposition, Nokia's interest in seeing the *in camera* documents is clear. While the Sanctions Order found sanctionable conduct based on the public and non-privileged record, it also found that the Court was unpersuaded that Samsung had used Nokia's confidential information based at least in part on information Nokia has never seen. (Dkt. No. 2935 at 11) (citing Tab 246 as one of three explanations that were shaky on their own, but together left the Court "unpersuaded that Samsung used the Teece Report in … Nokia negotiations")). In the Sanctions Order, however, the Court found that Samsung did not offer a credible explanation with regard to a specific document. (Dkt. No. 2935 at 14 ("the court does not find Shim's explanation that he never used the insufficiently redacted Teece Report credible"), n.17 (noting that the reasoning provided in a declaration as to why an email highlighted "the detailed terms of the Apple-Nokia license" did not appear anywhere on the face of the document)). As

Samsung acknowledged, the Court reviewed the documents to at least some degree "cold, without context." (Dkt. No. at 21:2-6). Nokia's ability to rebut or appeal this specific finding is severely limited without knowing what information the Court actually considered.

Nokia should not be prevented from obtaining the very information it sought in joining these proceedings. Accordingly, Samsung's argument that production of documents will prolong these proceedings is not well-founded. Samsung has improperly withheld production for over a year and now claims that requiring it to produce will further delay this matter. Samsung is to blame for any such delay. Moroever, Samsung cites no authority for the proposition that the length of proceedings is a bar to preventing discovery—particularly discovery that was ordered produced over one year ago. Furthermore, Nokia's rejection of Samsung's limited offer for production is irrelevant. Nokia rejected this offer because Samsung only offered a select subset of documents of its own choosing under unnecessarily restrictive provisions that went beyond the strictest protective order provisions in this case. (Dkt. No. 2834). Nokia's position was that unless Samsung offered to produce all the documents at issue, "the matter should remain with the Court for resolution." (*Id.*). As the presiding judge acknowledged, the matter of privilege remains before the Court, and Nokia is properly seeking a ruling on that issue.

## V. SAMSUNG'S NEW REPRESENTATIONS REGARDING THE *IN CAMERA* DOCUMENTS DO NOT PRECLUDE NOKIA'S MOTION

For the first time in these proceedings, Samsung argues in its Opposition that "[o]f the approximately 279 tabs on Samsung's privilege log, only 92 even refer to the Apple-Nokia license," with the remaining documents allegedly referring only to Apple's licenses with Sharp, Philips, and/or Ericsson. (Dkt. No. 3215 at 20). Samsung needed to file a declaration attesting to this fact, as it has never previously provided Nokia with this information, nor has it identified which of the 92 tabs refer to Nokia. (Dkt. No. 3215-4). However, these arguments are irrelevant to Nokia's Motion.

To the extent any produced documents contain third-party information, Nokia has previously agreed to be bound by the Protective Order in this case (Dkt. No. 2434 at 2); thus, any produced information would only be used under the applicable confidentiality designation. Samsung also

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE

10

CASE NO.: 5:11-CV-01846-LHK (PSG)

alleges that certain documents are protected by a "mediation privilege," and are therefore outside the scope of documents Nokia may be entitled to see. (Dkt. No. 3215-5 at 20). However, Nokia's motion requested the Court to rule on Samsung's privilege claims; it was not limited to a specific type of privilege. Further, Samsung's own privilege log did not assert a mediation privilege over these documents. (*See* Dkt. No. 3213-2). Finally, the Ninth Circuit has not determined that a Federal mediation privilege even exists, *see Wilcox v. Arpaio*, 753 F.3d 872, 877 (9th Cir. 2014) ("We thus need not determine whether a mediation privilege should be recognized under federal common law and, if so, the scope of such a privilege."), nor has Samsung cited any authority supporting such privilege here. Accordingly, if a waiver is found, or if the Court finds the documents are not privileged, there is no proper basis to withhold any of the *in camera* documents from Nokia, all of which Samsung has already been ordered to produce.

## VI.  NOKIA HAS NOT WAIVED ANY ARGUMENTS IN ITS MOTION

In a continued effort to avoid a ruling on privilege, Samsung advances a kitchen sink of waiver arguments. None of these arguments have a proper basis in fact or law. Throughout these proceedings, Nokia consistently raised and argued that there must be a ruling on Samsung's privilege claims and that Samsung waived privilege over these documents. These arguments were properly preserved and appealed. Further, Nokia's unrelated motion seeking information for remediation purposes did not waive any right to seek documents underlying portions of the Court's Sanctions Order.

### A.  Nokia Did Not Waive Its Arguments for a Ruling on Privilege

Samsung's cited authorities do not support a finding that Nokia waived its ability to seek a ruling on privilege. In *Earthquake Sound Corp.*, the Ninth Circuit found a waiver of the right to challenge the reasonableness of a fee award where the remand was for the limited purpose of the District Court articulating the method it used to determine the fee award. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1212 (9th Cir. 2003). Here, the presiding judge remanded for the specific purpose of resolving the privilege issues. In *Brittain*, the court found that issues not properly raised on appeal were not included within the scope of the remand. *Brittain v. Sheriff of*

*Riverside County*, 2011 WL 6149287, at *1 (C.D. Cal. Dec. 9, 2011). Here, Nokia repeatedly sought a ruling as to the *in camera* documents' privileged status, and the presiding judge remanded for resolution of this very issue. Further, *Simpson v. Lear Astronics Corp.* related to an order that was not objected to. 77 F.3d 1170, 1173-74 (9th Cir. 1996). Here, there was no order on privilege, with the exception of footnote 13 in the Sanctions Order, and Nokia filed a timely appeal of this issue following the issuance of that order.

Similarly, there is no factual basis to support a finding that Nokia waived its ability to seek a ruling on privilege. Samsung argues that Nokia failed to argue for a ruling on privilege, including in the December supplemental briefing, when the Court provided the parties an opportunity to "tell [it] anything more..." (3215-3 at 7). Samsung's argument ignores the prior briefing and ignores that, in its December Supplemental brief, Nokia explicitly argued that the documents are not privileged or Samsung failed to adequately lay the foundation for privilege and that Samsung waived any applicable privilege. (Dkt. No. 2872-5 at 9). Throughout the briefing and hearings in these proceedings, Nokia consistently asked for a ruling on privilege. (*See, e.g.*, Dkt. Nos. 2558-3, 2824). Nokia's arguments were properly preserved, and it appealed at the proper time in light of the parties' stipulation governing appeals of the Sanctions Order. (Dkt. No. 2950).

**B. Nokia Consistently Raised Its Waiver Arguments**

Samsung mischaracterizes Nokia's prior briefing in an attempt to argue Nokia waived its waiver arguments. Samsung claims that Nokia's earlier at-issue arguments "were limited at most to the eleven documents cited in footnotes 10-15 of the Court's November 8 Order to Show Cause" and that its selective disclosure arguments are limited to "Tabs 19, 20, and 272." (Dkt. No. 3215 at 11, 16). However, in Nokia's November 2013 Response to Brief Regarding Attorney-Client Privilege and Work-Product Protection, Nokia explicitly noted that "[t]he scope of waiver is not limited to the particular documents reference in the court's November 8 Order, but Nokia focuses its arguments on these documents as directed by the Court's November 18 Order." (Dkt. No. 2824 at n.3). Providing examples of waiver through the specific documents cited in the Order to Show Cause could not waive Nokia's consistent argument—raised before and after that brief—that Samsung waived

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE
12
CASE NO.: 5:11-CV-01846-LHK (PSG)

privilege. (*See* Dkt. Nos. 2558 at 12-13 ("Samsung should not be permitted to assert that its conduct was not willful or harmful, while using privilege to block scrutiny of that conduct…Nokia supports any procedure to resolve the privilege concerns, including in camera review of selected documents, the appointment of a Special Master, or both."), 2581 at 29:3-6 ("After the document issue is resolved and the documents that need to be produced are in fact produced…"), 2872-5 at 9 ("Samsung has waived any privilege protection for each of the relevant documents, not merely the ones discussed in the November 8 Order, by putting the substance of these communications at issue in these proceedings.")).

### C. Nokia's Remediation Motion Did Not Waive Its Right to Seek Relief from the Sanctions Order

Nokia's February Motion to Compel Information Needed For Remediation ("Remediation Motion") did not waive Nokia's ability to seek relief in the present motion. First, Nokia's Remediation Motion was brought pursuant to the Stipulated Order between Nokia and Samsung. Second, Nokia's Remediation Motion sought documents solely to address its *remediation* concerns. The Court found that Nokia's remediation concerns were legitimate, but that a sworn declaration by John Quinn, filed no later than 30 days after the end of trial in the 12-630 case, would be sufficient to satisfy those concerns. (Dkt. No. 3061). The Court noted that "[i]f Mr. Quinn is unwilling or unable to do so, the court will entertain a renewed Nokia motion." (*Id.*). Samsung argues that Nokia waived its ability to file a motion to compel by not filing a Rule 72(a) motion to that order; however, Nokia did not receive and could not assess the court-ordered relief within the 14-day window. Upon receipt of the ordered declaration, Nokia raised its additional remediation concerns to Samsung, and the two parties were able to agree on a revised declaration that negated Nokia's needs to renew its Remediation Motion. (*See* Dkt. No. 3190). This final step occurred after Nokia had already appealed and preserved the privilege issues being addressed here.

## VII. THE SANCTIONS LEVIED ON SAMSUNG AND QUINN EMANUEL STAND ON THE PUBLIC RECORD

Samsung's Opposition for the first time briefly raises the argument that the Court must vitiate the Sanctions Order if it finds that Samsung's documents are privileged. Notably, Samsung raises

this argument for the first time in an opposition. In appealing the Court's waiver finding to the presiding judge, Samsung did not ask for the order to be rescinded in the event its motion succeeded. (Dkt. No. 3194 at 15 ("Judge Grewal found extensive violations of the protective order—findings Samsung does not challenge…Again, Samsung does not contest these conclusions [that it violated the protective order]."). To the contrary, Samsung admitted that the sanctions stand on non-privileged information. (*See* Dkt. No. 3174 at 7 ("Samsung's disclosure of the fact it sent the incompletely redacted Teece Report and who sent and received the report does not waive the attorney-client privilege or attorney work-product protection because such general information is not itself privileged."), 11 ("The five privileged and work product documents that Apple claims are subject to the waiver ruling and that are cited in the Sanctions Order are cited for non-privileged facts."), 11 ("[I]nformation upon which Judge Grewal relied with respect to these documents is also contained [in the record]"), 15 ("Judge Grewal … confirmed that he was not disclosing or relying upon privileged portions of [the documents] in his Sanctions Order.")). Samsung did not object to the Sanctions Order on this ground, and it has therefore waived its right to do so. Further, the presiding judge remanded for a specific purpose. (Dkt. No. 3194 at 10 ("Whether Samsung waived or is otherwise entitled to assert privilege over those documents for any other reason remains to be decided by Judge Grewal upon demand."), 13 ("Nokia may seek determination from Judge Grewal on the questions of privilege as to the Samsung documents reviewed *in camera* and whether Nokia should receive access to any of those materials.")). It is not proper for Samsung to seek substantive relief on remand—in an opposition brief nonetheless—that is outside the scope of that remand and that it did not properly preserve on appeal.

In any event, the Court's ordered sanctions were fully supported by the *public* and non-privileged record. The Sanctions Order discusses Samsung and Quinn Emanuel's sanctionable conduct for nearly six pages. (*See* Dkt. No. 2935 at 11-17). Notably, in these six pages, only one citation is to a document Samsung claimed privilege over. (*See id.* at 15 (citing Tab No. 20 for the proposition that "Quinn Emanuel became aware that a document containing Apple and Nokia's confidential business information had been uploaded to a server accessible by many Samsung

NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE

14

CASE NO.: 5:11-CV-01846-LHK (PSG)

employees" in December 2012)). However, even if the Court was unable to rely on this fact due to Samsung's privilege claims, the Court also found that "[i]f no one on the Quinn Emanuel team was responsible for knowing what document had gone out to the client, such that that person would have been aware that the Teece report had gone out before, that is a flaw for which the firm must be held accountable." (*Id.* at 16). The other eight instances Samsung identifies as citing to allegedly privileged communications are within the section labeled "Timeline: What Happened to the Teece Report?," a section that does not discuss why Samsung and Quinn Emanuel were sanctioned and indeed discusses conduct that the Court does not explicitly address in issuing sanctions. (Dkt. No. 2935 at 2-6). Accordingly, there is no factual basis for rescinding the Sanctions Order on the theory that the Court improperly based it on privileged communications.

Quinn Emanuel itself has acknowledged that the issued sanctions were appropriate for it and Samsung's protective order violations. (Dkt. No. 3027 at 17:16-19 ("[W]e acknowledge, and I believe that we've acknowledged in previous filings even before the briefing that led up to this [hearing on fees], that there's a basis for an award of attorneys' fees here. We violated the Protective Order.").

## VIII. CONCLUSION

For the foregoing reasons, the Court should rule on whether Samsung can maintain its privilege claims of the *in camera* documents and order Samsung to produce all documents to which privilege does not attach.

DATED: November 19, 2014

Respectfully submitted,

ALSTON & BIRD, LLP

*/s/ Ryan W. Koppelman*

RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone: 650-838-2000 / Facsimile: 650-838-2001
*Attorneys for NOKIA CORPORATION*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2014, I electronically filed the foregoing **NOKIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO PRODUCTION PURSUANT TO MANDATE OF PRESIDING JUDGE** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to the parties and counsel of record.

This 19th day of November, 2014.

*/s/Ryan W Koppelman*
RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone:650-838-2000
Facsimile: 650-838-2001

*Attorneys for NOKIA CORPORATION*