QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO COMPEL SEVEN PRIVILEGED DOCUMENTS CITED IN THIS COURT'S JANUARY 29, 2014 ORDER**<br><br>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    A.    The Court Orders Production Of The Documents *In Camera* ................................. 2

    B.    The Court Orders Additional Submissions Regarding Eleven *In Camera* Documents ................................................................................................................ 2

    C.    The Court Orders Samsung To File A Redacted Submission And Warns Excessive Redaction Will Trigger Waiver ............................................................... 3

    D.    The Court's Sanctions Order ..................................................................................... 4

    E.    Samsung's Motions For Relief ................................................................................. 4

ARGUMENT .................................................................................................................................. 5

I.    ABSENT A WAIVER, THE SANCTIONS ORDER MUST BE VACATED BECAUSE IT RELIES ON PRIVILEGED COMMUNICATIONS ..................................... 5

II.    APPLE WAIVED ITS PRIVILEGE CHALLENGES ........................................................... 6

III.    SAMSUNG HAS SUBSTANTIATED ITS PRIVILEGE ASSERTIONS .......................... 7

IV.    SAMSUNG DID NOT WAIVE PRIVILEGE OVER THE DOCUMENTS SUBMITTED FOR *IN CAMERA* REVIEW ..................................................................... 10

V.    THIS COURT'S PRIOR RULINGS FORECLOSE THE CRIME-FRAUD EXCEPTION ............................................................................................................... 12

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

### Cases

*AT&T Corp. v. Microsoft Corp.*,
   2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) .................................................................9

*Andritz Sprout/Bauer, Inc. v. Beazer East, Inc.*,
   174 F.R.D. 609 (M.D. Pa. 1997) ....................................................................................10

*Barton v. Zimmer Inc.*,
   2008 WL 80647 (N.D. Ind. Jan. 7, 2008)........................................................................10

*Brittain v. Sheriff of Riverside County*,
   2011 WL 6149287 (C.D. Cal. Dec. 9, 2011) ....................................................................6

*Dole v. Milonas*,
   889 F.2d 885 (9th Cir. 1989)............................................................................................7

*Earthquake Sound Corp. v. Bumper Indus.*,
   352 F.3d 1210 (9th Cir. 2003)..........................................................................................6

*Games2U, Inc. v. Game Truck Licensing, LLC*,
   2013 WL 4046655 (D. Ariz. Aug. 9, 2013) .....................................................................8

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992).......................................................................................7, 8

*Hawkins v. Stables*,
   148 F.3d 379 (4th Cir. 1998)..........................................................................................11

*In re Kidder Peabody Securities Litigation*,
   168 F.R.D. 459 (S.D.N.Y. 1996) (Mot. at 4) ..................................................................11

*Laser Indus., Ltd. v. Reliant Techs., Inc.*,
   167 F.R.D. 417 (N.D. Cal. 1996) ...................................................................................11

*Magnesystems, Inc. v. Nikken, Inc.*,
   933 F. Supp. 944 (C.D. Cal. 1996)...................................................................................6

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) *abrogated on other grounds by*
   *Mohawk Indus, Inc. v. Carpenter*, 558 U.S. 100 (2009) ..............................................5, 7

*In re Napster, Inc. Copyright Litig.*,
   479 F.3d 1078 (9th Cir. 2007).....................................................................................7, 13

*Phillips v. C.R. Bard*,
   290 F.R.D. 615 (D. Nev. 2013).........................................................................................8

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
   337 F. Supp. 2d 862 (N.D. Tex. 2004),
   *rev'd on reh'g en banc*, 476 F.3d 278 (5th Cir. 2007) (*en banc*)..............................13

*Roe v. White*,
    2014 WL 842790 (N.D. Cal. Feb. 28, 2014) ............................................................................. 12

*Simpson v. Lear Astronics Corp.*,
    77 F.3d 1170 (9th Cir. 1996) ..................................................................................................... 6

*Tennenbaum v. Deloitte & Touche*,
    77 F.3d 337 (9th Cir. 1996) ..................................................................................................... 10

*Tigard Sportsurfaces, LLC v. Syntennico, Inc.*,
    2000 WL 284189 (D. Or. Mar. 10, 2000) ............................................................................... 12

*Transamerica Computer Co. v. IBM Corp.*,
    573 F.2d 646 (9th Cir. 1978) ................................................................................................... 12

*Trejo v. Macy's, Inc.*,
    2014 WL 1091000 (N.D. Cal. Mar. 17, 2014) .......................................................................... 8

*United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) ................................................................................................................ 13

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) ................................................................................................. 11

*United States v. ChevronTexaco Corp.*,
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) .................................................................................... 9

*United States v. Pinho*,
    2003 WL 25772423 (E.D. Pa. July 8, 2003) ........................................................................... 11

**Statutes**

18 U.S.C. § 1509 .............................................................................................................................. 13

**Miscellaneous**

14 *Moore's Federal Practice* § 72.11[1][a], at 72-53 (3d ed. 2014 Supp.) ....................................... 6

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC ("Samsung") respectfully submit this opposition to the motion to compel filed by Apple, Inc. ("Apple") (Dkt. 3212).

## INTRODUCTION

This motion represents the fourth time that Apple or Nokia has asked this Court to order production of seven privileged documents cited in the Court's January 29 Sanctions Order. (*See* Dkts. 2374-2, 2825-2, 2988.)  Yet, Apple failed to appeal when this Court's Sanctions Order did not credit any of the arguments Apple re-asserts here, and Apple's failure to contest the Sanctions Order precludes its effort to re-assert those same arguments now, on remand.  In any event, Apple's arguments lack merit.  Samsung met its threshold burden of establishing the privileged and/or work-product nature of its documents by producing a privilege log that fully complies with Ninth Circuit requirements.  That law, ignored by Apple, controls.  Samsung also submitted declarations as ordered by the Court that amply demonstrated the seven documents at issue are protected by privilege and the work-product doctrine.  Samsung did not waive privilege by complying with this Court's order to make limited redactions or by defending against Apple's and Nokia's accusations of intentional violations of the Protective Order.  This Court's findings in the Sanctions Order that Samsung did not engage in any fraudulent or willful misconduct—findings Apple did not appeal and thus cannot dispute now—foreclose Apple's crime-fraud argument.

Samsung previously offered, twice, to produce the seven documents that Apple seeks pursuant to a non-waiver agreement in order to avoid disputes and help bring the protective order proceedings to an efficient conclusion.  Because Apple's goal is *not* to access supposedly critical documents, but instead to multiply and prolong these proceedings, Apple rejected those offers by Samsung.  Its claim now that it needs those documents cannot be genuine.  Apple's crusade has gone on long enough.  Its motion should be denied, and the Sanctions Order should be vacated because it impermissibly relies on privileged communications.  (*See* Dkt. 3210, at 6 ("THE COURT:  Is there not the possibility that the outcome of all of your efforts might be that I have to lift the very sanctions that I've issued against Samsung in this case?").

# BACKGROUND

As this Court noted in the Sanctions Order, this dispute has already stretched over "61 briefs," with "more than 20,000 pages of documentary evidence, . . . over 5500 pages of declarations" and "over 50 hours of testimony." (Dkt. 2935 at 3 n.12.) Accordingly, Samsung sets forth below only the facts most relevant to the production and logging of the seven documents at issue in this motion.

## A. The Court Orders Production Of The Documents *In Camera*

On October 2, 2013, in response to Apple's motion to compel, the Court ordered Samsung to produce several broad categories of documents by no later than October 16, 2013. (Dkt. 2483 at 5.) In compliance with this Order, a Quinn Emanuel team of more than twenty attorneys reviewed a total of 69,862 documents—many in Korean—consisting of over 1,215,336 unique pages, in two weeks' time. (Dkt. 2835-6 ¶16.) Samsung produced 470 documents, totaling 12,988 pages, and further compiled privilege logs, also served on October 16, 2013, reflecting more than 800 entries. (*Id.* at ¶65.)

On October 22, 2013, at a hearing following the voluminous discovery directed in the October 2 Order and the parties' submission of supplemental briefs, the Court stated that it was "not yet satisfied that sanctions are warranted in this matter" and ordered Samsung to submit the following documents for *in camera* review: (1) all documents responsive to the October 2 Order that were produced to Apple and Nokia with all redactions removed; (2) all documents Samsung had withheld based on privilege or work product; and (3) all attachments to responsive parent documents that were produced or logged. (Dkt. 2835-6 ¶67, Ex. 37 at 89:20-25, 94:2-25; *see also* Dkts. 2587, 2588.) Pursuant to that Order, Samsung submitted *in camera* 23 large volumes containing 279 parent documents and hundreds of additional attachments and translations and also produced a 737-page privilege log with over 1,300 individual entries. (Dkts. 2835-6 ¶65; 2870.)

## B. The Court Orders Additional Submissions Regarding Eleven *In Camera* Documents

After completing its *in camera* review, the Court entered an Order to Show Cause ("OSC") in which it identified eleven documents, out of the hundreds it reviewed, as potentially supporting

1   violations of the Protective Order.  (Dkt. 2689 at 1, 3.)  The Court directed Samsung "to
2   demonstrate with specificity how each and every one of [those eleven] documents fall under the
3   protection of either the attorney-client privilege or the work-product doctrine …"  (*Id.* at 4 n.16.)

4         In response to the OSC, Samsung submitted a brief substantiating its assertions of privilege
5   as to these documents, supported by 16 declarations.  (*See* Dkt. 2805.)  These submissions showed
6   that each of the eleven documents cited in the OSC is protected by the attorney-client privilege,
7   work-product doctrine, and/or the mediation privilege because "[e]ach is a confidential
8   communication between or among Samsung's counsel and employees related to the ongoing
9   litigation between Samsung and various third parties that reflects either the transmission of legal
10  advice or a request for or provision of legal assistance, or attorney work-product in anticipation of
11  or in the course of litigation."  (Dkt. 2807 at 6.)

12      **C.**    **The Court Orders Samsung To File A Redacted Submission And Warns**
13            **Excessive Redaction Will Trigger Waiver**

14        Apple and Nokia asked the Court to strike Samsung's submission because it was made *in*
15  *camera* (*see* Dkt. 2805), and the Court ordered Samsung to publicly file redacted versions of its
16  brief and declarations (Dkt. 2790).  The Court stated it had "reviewed Samsung's brief and
17  declarations" and "note[d] that very little in the submission merits redaction."  (*Id.* at 2.)  The
18  Court cautioned that "broad assertions of plainly unprotected information will not be tolerated"
19  and that if Samsung excessively redacted the documents, "the court will have no qualms about
20  requiring the filing of completely unredacted copies quickly thereafter." (*Id.* at 2-3.)  Samsung
21  promptly filed redacted versions in compliance with the Court's order.  (Dkt. 2807.)

22        Apple, in response, did *not* argue, as it does now, that Samsung waived privilege by
23  *insufficiently* redacting its submission.  Far from it, Apple argued that Samsung had *excessively*
24  redacted, in violation of the Court's admonition.  Contrary to its arguments here, Apple claimed
25  the redactions obscured "essentially all details regarding the purpose or content of each withheld
26  communication, and instead leave only conclusory statements . . . which, in themselves, are
27  insufficient to support a claim of privilege."  (Dkt. 2825-2 at 6 n.4.)  The inconsistency in Apple's
28  arguments could not be clearer.  (*Compare* Dkt. 2825-2 at 3 (Apple arguing that "Samsung's

description of [Tab] 6 does not contain any information regarding the subject matter of the communication") *with* Dkt. 3212 at 4 (Apple arguing that Samsung waived privilege over Tab 6 by "disclos[ing] certain content" of it).)  Apple sought outright production of the documents, unredacted versions of the sixteen declarations, and depositions of all sixteen declarants.  (Dkt. 2825-2 at 8-10.)

### D. The Court's Sanctions Order

On January 29, 2014, the Court issued the Sanctions Order.  As relevant here, this Court found that Quinn Emanuel's disclosures were inadvertent and that Samsung did not wrongfully use the Apple-Nokia licensing information.  (*See* Dkt. 2935, at 11 (the court is "unpersuaded that Samsung used the Teece Report in either the Ericsson or Nokia negotiations"), at 12 (the "mistake" of failing to redact the Teece Report "was inadvertent.").)  The Sanctions Order also addressed Samsung's privilege claim, ruling that "[b]ecause Samsung offered to turn over the vast majority of the documents cited in this order, the court finds that privilege has been waived as to those documents.  As to all other documents cited, the court finds that the portions discussed in this order are not privileged."  (*Id.* at 4 n.13.)  Thus, the court concluded that Samsung had waived privilege over Tabs 6, 19, 20, 215, 222, 255, and 272.  The Court did *not*, however, order production of Samsung's unredacted declarations or any of the documents they discuss, as Apple had requested.  And the Court again did *not* order production of these documents when Nokia moved to compel them (Dkt. 2988)—a motion which Apple did not join.

### E. Samsung's Motions For Relief

Following the Court's June 19, 2014 fee order, Samsung filed two motions for relief.  First, Samsung moved for relief from the amount of attorneys' fees awarded.  (Dkt. 3134.)  Second, Samsung moved for relief from the Sanctions Order to the limited extent it found a waiver of privilege in footnote 13.  (Dkt. 3135.)  Apple did not file any motions for relief, and thus waived any objections it had to the Sanctions Order.

Judge Koh granted Samsung's motion for relief from the waiver finding in footnote 13, concluding "there was no waiver of privilege based on the stated rationale for the waiver finding in the Sanctions Order."  (Dkt. 3194 at 9.)  Judge Koh further noted that in opposition to

1  Samsung's motion, Apple and Nokia had raised various arguments regarding Samsung's privilege
2  claims that were not addressed in the Sanctions Order. Judge Koh therefore remanded the matter
3  to this Court "so that [it] may rule on any remaining privilege issues in the first instance." (*Id*. at
4  10.)

## ARGUMENT

Apple's challenges to Samsung's privilege assertions have been waived. Moreover, these challenges fail as a matter of law because Samsung's privilege log amply shows the privileged nature of each listed document, Samsung did not make affirmative use of the privileged communications, and, as made clear in this Court's prior rulings, the crime-fraud exception does not apply. Since Samsung has not waived privilege over any documents submitted *in camera* and the Sanctions Order relied on some of those very documents, the Sanctions Order should be vacated.

## I.   ABSENT A WAIVER, THE SANCTIONS ORDER MUST BE VACATED BECAUSE IT RELIES ON PRIVILEGED COMMUNICATIONS

The proper relief at this stage of these extended proceedings is not production of the *in camera* documents; it is vacatur of the Sanctions Order because it impermissibly relied on privileged communications. As the Court recently noted (Dkt. 3210, at 5-7), it is axiomatic that a judicial decision may not rest on privileged material. *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009) (where attorney-client privilege applies, "the protected material and its fruits are excluded from evidence"). The presiding judge rejected the sole basis for the Court's citation to privileged communications in the Sanctions Order (Dkt. 3194, at 8-10), and, as shown above and in Samsung's contemporaneously-filed opposition to Nokia's motion to compel, no other ground exists for invading Samsung's privilege over documents at Tabs 6, 19, 20, 215, 222, 255, and 272. The Sanctions Order, however, cites those documents *nine* separate times. (*See* Dkt. 2935, at 4 nn.13, 17; *id.* at 5 nn.22-25, 28; *id.* at 6 n.32; *id.* at 15 n.70.) Since the Sanctions Order cannot rest on those privileged communications, it must be withdrawn.

## II. APPLE WAIVED ITS PRIVILEGE CHALLENGES

Apple waived its arguments that seven documents discussed in the Court's Sanctions Order either are not privileged or that privilege was waived because it failed to appeal the Sanctions Order and, instead, raised these arguments to the presiding judge *only* in opposition to Samsung's motion for relief from the Sanctions Order. Merely opposing Samsung's motion for relief, which had only challenged the Court's privilege rulings in footnote 13 of the Sanctions Order, was insufficient to preserve Apple's challenges; Apple was itself obligated to appeal the Sanctions Order, and its failure to do so constituted waiver of any argument by Apple that the Sanctions Order (or any of its factual findings) may be vacated or altered. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996) ("[A] party who fails to file timely objections to a magistrate judge's non-dispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order."); *see also* 14 *Moore's Federal Practice* § 72.11[1][a], at 72-53 (3d ed. 2014 Supp.) ("A party's failure to present timely arguments … to a magistrate judge prior to the magistrate's ruling … waives that party's right to present those arguments … to the district court on appeal from the magistrate's nondispositive order.") (citing cases). In the Sanctions Order, the Court concluded the sanctions proceedings without crediting Apple's crime-fraud or waiver arguments (*see* Dkts. 2374-2, 2825-2), or its request for a finding of waiver as a sanction (*see* Dkt. 2557-4 at 12). Under the above authorities, Apple's failure to timely seek any relief from that Order prevents it from challenging the bases of that Order now.

Apple further waived its crime-fraud argument by failing to properly present the argument to this Court in the first instance. The law prohibits Apple from raising new arguments on remand following an appeal. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir. 2003) (holding that party waived right to challenge reasonableness of attorney fee award where it first raised the challenge on remand); *Brittain v. Sheriff of Riverside County*, 2011 WL 6149287, *1 (C.D. Cal. Dec. 9, 2011) ("When a party fails to raise issues in the opening brief, those issues are waived, and a remand on issues which were raised does not include the waived issues."); *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949-50 (C.D. Cal. 1996) ("[A]n issue or factual argument waived at the trial level before a particular order is appealed, or

subsequently waived on appeal, cannot be revived on remand."). For the crime-fraud exception to apply, Apple must prove both "a criminal or fraudulent scheme" and that the communications at issue are "sufficiently related to *and* were made *in furtherance of*" that scheme. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) (emphasis added, internal quotation omitted), *abrogated on other grounds by Mohawk Indus, Inc. v. Carpenter*, 558 U.S. 100 (2009). But during the prior proceedings before this Court, Apple never even *attempted* to prove that the communications at issue furthered a criminal or fraudulent scheme. (Dkt. 2557-4 at 12-13, Dkt. 2825-2 at 10-15.)  This Court gave Apple every opportunity to do so, including a final opportunity "to tell me anything more you want to tell me about anything"; Apple simply failed to do so. (Dkt. 2883, at 134:11-12.) Apple also failed to appeal from this Court's factual findings in the Sanctions Order, which forecloses any crime-fraud finding now. (*See* Dkt. 2935, at 11-12 (ruling that the documents instead showed that the "mistake" of failing to redact the Teece Report "was inadvertent" and that the Court was "unpersuaded that Samsung used the Teece Report in either the Ericsson or Nokia negotiations.").) Apple is precluded from attempting to argue crime-fraud on remand.[1]

### III.   SAMSUNG HAS SUBSTANTIATED ITS PRIVILEGE ASSERTIONS

Ignoring the hundreds of pages comprising Samsung's privilege log, briefs, and supporting declarations devoted to substantiating its privilege claims, Apple blandly argues that "Samsung made no attempt to justify a claim of privilege" over the seven documents at issue. (Mot. at 3.) This assertion is factually and legally groundless.

The law is clear that a privilege log is adequate if it identifies "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or

---

[1] Apple does not argue (nor could it) that the presiding judge ruled in its favor on whether Apple's arguments are properly preserved. On the contrary, this Court is to rule on that question in the first instance. (Dkt. 3194 at 9-10.)

dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989)). In fact, "[a]lthough sufficient, this list of identifiers are neither exhaustive nor necessary to carry the burden to describe the nature of the withheld documents and enable the parties to assess the claim of privilege." *Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655, at *5 (D. Ariz. Aug. 9, 2013); *see also Phillips v. C.R. Bard*, 290 F.R.D. 615, 637 (D. Nev. 2013) ("[N]ot every case requires strict adherence to the list of items that should be part of a privilege log as identified in *In re Grand Jury Investigation*"); *Trejo v. Macy's, Inc.*, 2014 WL 1091000, at *2 (N.D. Cal. Mar. 17, 2014) (listing similar factors as *In re Grand Jury Investigation*).

Samsung's privilege log more than meets these standards, including as to the specific documents Apple seeks to compel (Tabs 6, 19, 20, 215, 222, 255, and 272).[2] As to each of these documents, the privilege log identified the date, sender, recipient, and all cc's, and provided a description of the general subject matter of the communication. Each of the documents is described as withheld on the basis of both attorney-client privilege and attorney work product. All seven Tabs list one or more Samsung attorneys as a sender or recipient, and none includes any person other than (1) Samsung attorneys, or (2) Samsung employees.[3] Five of the documents (Tabs 6, 19, 20, 222, and 272) include Samsung's outside litigation counsel as senders or recipients. The remaining two (Tabs 215 and 255) involve Samsung in-house attorneys as senders and/or recipients. The privilege log itself thus establishes that the documents are protected by privilege and the work-product doctrine.[4] While this alone amply suffices to establish protection,

---

[2] Apple's Motion lists Tab "215.15", but there is no such document. (Mot. at 3.) Samsung assumes Apple intended to refer to Tab 215.

[3] As the record shows, Samsung previously provided a detailed declaration describing Indong Kang's role as a Samsung attorney. (*See* Dkt. 2807-7.)

[4] Apple's *own* privilege log contains *less* substantiating information than Samsung provided here. (*Compare, e.g.*, Tab 19 of Samsung's Nov. 7, 2013 Log ("Email with outside counsel reflecting and seeking legal advice regarding licensing, in anticipation of litigation") *with* Apple Log at APL630-P0000001047 ("Document provided to Apple attorney R. Lutton for purposes of rendering legal advice regarding potential litigation.") (Declaration of Robert Becher, filed concurrently, ("Becher Decl."), Ex. A; *see also* APL630-P0000001058 ("Attorney-client
   (footnote continued)

1  Samsung *also* submitted sixteen declarations which "demonstrate with specificity" that each of the
2  documents at issue is privileged, as ordered by the Court. (*See* Dkt. 2807 *et seq.*) Although Apple
3  relies on these declarations to argue waiver (Mot. at 4), it tellingly ignores these declarations in its
4  bald claims that Samsung did not substantiate its privilege claims (Mot. at 3) and makes no
5  argument that the declarations are insufficient to establish privilege.

6      Apple cites Tab 6 as its best example, arguing that the privilege was not substantiated
7  because this document was disclosed to "numerous Samsung employees." (Mot. at 3.) Apple
8  omits, however, that (as the face of the privilege log shows) Tab 6 was authored by Samsung's
9  *outside litigation counsel*, and 27 of the "33 recipients" of the document are attorneys, including
10 outside litigation counsel. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1073
11 (N.D. Cal. 2002) ("Communications between a client and its outside counsel are *presumed* to be
12 made for the purpose of obtaining legal advice.") (emphasis added); *see also AT&T Corp. v.*
13 *Microsoft Corp.*, 2003 WL 21212614, at *4 (N.D. Cal. Apr. 18, 2003) (same). The remaining six
14 recipients were Samsung employees who participate in Samsung's litigations against Apple, as
15 shown in the declarations that Apple ignores. (Dkt. 2807-06, Hopson Decl., ¶¶ 4, 6.) Indeed,
16 Apple ignores that Samsung submitted a declaration *from the author of Tab 6*, who explained that
17 this email "set[s] forth our firm's thoughts and impressions on numerous legal issues" and was
18 sent "only to Samsung's outside litigation counsel and Samsung in-house attorneys *and other*
19 *Samsung employees who are responsible for handing aspects of the global Apple litigations*." (*Id.*
20 (emphasis added).) In stark contrast to its arguments here, Apple's own privilege log contains
21 emails disclosed to more than *50* Apple employees, *none* of whom are identified as attorneys.[5]

---

23 communication conveying legal advice regarding patent prosecution issues."); APL630-
P0000001114 ("Correspondence discussing potential patent infringement litigation").)
24    [5] *See* Apple Log at APLNDC630-0000195014 (Becher Decl., Ex. A) (email among over 50
25 employees, described as "Redacted portion of email providing information requested by counsel in
connection with providing legal advice relating to Apple's iPhone technology."). Apple's log also
26 contains communications involving email aliases with unidentified -- and untold -- numbers of
non-attorney recipients. *Id.* at APL630-P0000001059 (email among non-attorneys including
27 unidentified members of the email alias "humaninterface@group.apple.com"); *id.* at APL630-
0000378231 (email among non-attorneys including unidentified members of the email alias
28    (footnote continued)

1  Apple's arguments here are completely baseless.

2  Apple's two out-of-circuit cases finding waiver by disclosure to corporate employees "who
3  do not need the information" are thus inapplicable (Mot. at 4-5)—neither involved
4  communications authored by litigation counsel (as here), and neither supports finding waiver
5  where the employees at issue were responsible for handling the litigation being discussed (as
6  here). (Mot. at 3, citing *Barton v. Zimmer Inc.*, 2008 WL 80647, at *9 (N.D. Ind. Jan. 7, 2008)
7  (upholding assertion of privilege where legal advice from outside counsel "was forwarded to
8  [corporate] employees who needed access to the information") and *Andritz Sprout/Bauer, Inc. v.
9  Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Communications between corporate
10 counsel and company personnel are privileged so long as the information is relayed for the
11 purpose of obtaining legal counsel.").) Samsung's privilege log and declarations more than
12 substantiate its privilege claims as to these documents.

13 **IV.  SAMSUNG DID NOT WAIVE PRIVILEGE OVER THE DOCUMENTS
14      SUBMITTED FOR *IN CAMERA* REVIEW**

15 When Apple previously challenged Samsung's privilege claims, Apple argued that
16 Samsung *over-redacted* its privilege declarations and inadequately substantiated the privilege for
17 that reason. (Dkt. 2825-2 at 5-8.) Apple now abandons that position and argues just the
18 opposite—that Samsung *under-redacted* its privilege declarations and waived the privilege by
19 doing so. (Mot. 4-5.)[6] Apple's cynical, heads-I-win tails-you-lose approach is waived, unfair and
20 wrong under the law.

21 The selective-disclosure doctrine is designed "to protect against the unfairness that would
22 result from a privilege holder *selectively disclosing privileged communications* to an adversary,
23 revealing those that support the cause while claiming the shelter of the privilege to avoid
24 disclosing those that are less favorable." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41

---

"henri-managers@group.apple.com").

[6] Apple's waiver argument appears to be limited to Tabs 6, 20, 222, and 255, as Apple does not contend that Samsung selectively disclosed privileged information in Tabs 19, 215, 272 or that any selective disclosure of Tabs 6, 20, 222, and 255 entitles Apple to access other documents.

(9th Cir. 1996) (emphasis added), *cited in* Mot. 5. The doctrine thus applies only when *some* privileged communications are disclosed, while others are concealed. *Id.*

Despite this basic requirement, nowhere does Apple argue that Samsung actually disclosed any privileged communications in Tabs 6, 20, 222, or 255. Instead, Apple's waiver argument turns exclusively on Samsung's statements *denying* use of confidential information. (*See* Mot. at 4 (citing Dkt. 2807-9 ¶6; Dkt. 2835-03 at 14 & 17 n.8; Dkt. 2807-1 ¶6; Dkt. 2807-16 ¶8).) Such *denials* of misconduct do not amount to a *disclosure* of privileged communications, and thus do not support a finding of waiver by selective disclosure as a matter of law. *See, e.g.*, *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996) ("denials of knowledge of the undisclosed prior art did not purport to disclose the contents of a specific communication … and do not appear to go beyond 'mere denial[s].'").

Apple's reliance on two out-of-circuit criminal cases, *Hawkins v. Stables*, 148 F.3d 379 (4th Cir. 1998), and *United States v. Pinho*, 2003 WL 25772423 (E.D. Pa. July 8, 2003), shows the emptiness of its position. These cases merely hold that there is no privilege where the client *denies having discussed a subject with an attorney* at all. *See Hawkins*, 148 F.3d at 384 (no privilege where defendant testified that "she never had a discussion of the matter with her attorney"); *Pinho*, 2003 WL 25772423, at *4-5 (similar). Here, of course, Samsung never denied the existence of privileged communications as in these authorities. No authority supports Apple's position that Samsung's general denials of wrongdoing—denials that do not disclose the substance of any privileged communications—effected a waiver. And for good reason. The law is to the contrary.

*In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459 (S.D.N.Y. 1996) (Mot. at 4) does not support waiver either. That decision recognized that a "governing principle" of privilege waiver is whether "the party asserting privilege placed information protected by it in issue through some affirmative act for his own benefit" and, if so, whether application of the privilege would be "manifestly unfair to the opposing party." *Id.* at 470 (internal quotation omitted). Here, Apple identifies no affirmative act—such as filing suit or raising an affirmative defense—that injected privileged communications into this dispute; rather, Samsung simply denied Apple's allegations of

1  use.  That cannot effectuate a waiver.  *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir.
2  1999) ("[P]rivileged communications do not become discoverable simply because they are related
3  to issues raised in the litigation.") (citation omitted).[7]

4        Further, the Court *compelled* Samsung to file the declarations upon which Apple now
5  relies, which precludes any basis for waiver.  *See*, *e.g.*, *Transamerica Computer Co. v. IBM Corp.*,
6  573 F.2d 646, 651 (9th Cir. 1978) (noting the "general acceptance of the principle that waiver
7  cannot result from compelled production").  While Apple contends that Samsung "chose" to
8  submit declarations supporting its privilege argument (Mot. 5), Apple overlooks that Samsung was
9  ordered to further substantiate its privilege claim, sought to submit those declarations *in camera*
10 (Dkt. 2757), and publicly filed the declarations only after the Court ordered it to do so (Dkt. 2790).
11 When Samsung made that filing, it also redacted all information from the declarations that it
12 understood to be privileged.  (Dkt. 2807-1 to -16.)  Samsung thus never intentionally disclosed or
13 relied on the substance of any privileged communication, and the disclosure of non-privileged
14 information was compelled.  This cannot support a finding of waiver.

15 **V.  THIS COURT'S PRIOR RULINGS FORECLOSE THE CRIME-FRAUD**
16     **EXCEPTION**

17       This Court originally ordered Samsung to produce the privileged documents at issue here
18 for *in camera* review because it found that "there have been serious enough suggestions that the
19 crime fraud exception would apply to at least a subset of these documents that I think further
20 scrutiny of the documents is warranted."  (Dkt. 2581, 10/22/13 Tr. at 90:1-5.)  Samsung then
21 briefed the issue and demonstrated that the crime-fraud exception could not apply (*see* Dkts. 2835,
22 2871, 3174), and the Court did *not* order the documents produced following its *in camera* review.

23       Now, as before, Apple has not met its burden of proving the application of the crime-fraud
24 exception; it does not even make a serious effort to do so.  The party asserting the crime-fraud
25 exception bears the burden of proof.  *See id.* at 1094-95; *Roe v. White*, 2014 WL 842790, at *2

---

[7] Samsung incorporates by reference Part II of its contemporaneously-filed opposition to Nokia's motion to compel, which also addresses the issue of waiver.

(N.D. Cal. Feb. 28, 2014); *Tigard Sportsurfaces, LLC v. Syntennico, Inc.*, 2000 WL 284189, at *4 (D. Or. Mar. 10, 2000) ("Defendants carry the burden of establishing that the crime-fraud exception applies to plaintiff's assertion of attorney-client privilege."). "A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must satisfy a two-part test. First, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. Second, it must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made *in furtherance of* [the] intended, or present, continuing illegality." *In re Napster, Inc. Copyright Litig.*, 479 F.3d at 1090 (internal quotation marks and citations omitted). Apple has not proven either prong.

Apple strings together out-of-context words from the Sanctions Order and misleadingly cites this Court's finding that there was a "willful failure to institute safeguards" (Mot. at 6) in order to insinuate that a crime of some sort has been committed. But Apple ignores this Court's clear—and unchallenged—finding that Quinn Emanuel's disclosures were *inadvertent* and that Samsung did *not* wrongfully use the Apple-Nokia licensing information. (*See* Dkt. 2935, at 7-8 (holding there is no "intent requirement to find a violation of the order"), at 11 (Court is "unpersuaded that Samsung used the Teece Report in either the Ericsson or Nokia negotiations"), at 12 (the "mistake" of failing to redact the Teece Report "was inadvertent.").) Potential crimes related to a violation of a court order require proof of a *willful* violation, *see* 18 U.S.C. § 1509; *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833-34 (1994), and the fraud required for application of crime-fraud exception requires an *intention* to defraud. *Napster*, 479 F.3d at 1096. The findings in the Court's Sanctions Order—never appealed by Apple and therefore binding upon it now—are incompatible with these requirements.[8] In addition, Apple has made no attempt

---

[8] Apple's sole crime-fraud case dealing with a protective order violation is inapposite. In *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 337 F. Supp. 2d 862 (N.D. Tex. 2004), *rev'd on reh'g en banc*, 476 F.3d 278 (5th Cir. 2007) (*en banc*), the court applied the crime-fraud exception not because of a protective order violation, but because the defendant made false representations directly to the court "with the intent that the Court rely on them and fashion a
(footnote continued)

1  (either before or in its current motion) to prove that any of the communications at issue was "*in*

2  *furtherance of*" any crime or fraud, the second prong Apple was required to prove.  Apple's crime-

3  fraud exception arguments thus lack merit.

## CONCLUSION

Apple's motion to compel should be denied in its entirety.

DATED:  November 7, 2014                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By /s/ *Michael T. Zeller*
                                            Charles K. Verhoeven
                                            Kevin P.B. Johnson
                                            Victoria F. Maroulis
                                            William C. Price
                                            Michael T. Zeller

                                            Attorneys for SAMSUNG ELECTRONICS CO.,
                                            LTD., SAMSUNG ELECTRONICS AMERICA,
                                            INC. and SAMSUNG
                                            TELECOMMUNICATIONS AMERICA, LLC

---

remedy less robust than the preliminary injunction relief" the plaintiff had sought.  *Positive Software v. New Century Mortgage*, 03-cv-00326, Dkt. 163 at 23-25 (N.D. Tex. March 3, 2004) (available only on PACER).  Thus, *Positive Software* involved a classic fraud on the court that bears no resemblance to the situation here.

# ATTESTATION

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michael T. Zeller has concurred in this filing.

Dated: November 7, 2014

*/s/ Victoria F. Maroulis*
Victoria F. Maroulis