QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**SAMSUNG'S OPPOSITION TO NOKIA'S MOTION TO COMPEL PRODUCTION (DKT. 3213)**<br><br>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

    A.    Nokia's Motion For A Protective Order ................................................................ 1

    B.    Apple's Motion For Sanctions ............................................................................. 2

    C.    Samsung's Additional Submission Supporting Its Privilege Assertions ................ 3

    D.    The Sanctions Order ............................................................................................ 4

    E.    Nokia's First Motion To Compel ......................................................................... 5

    F.    Nokia's Motion For Relief From The Sanctions Order ......................................... 5

ARGUMENT .............................................................................................................................. 5

I.       ABSENT A WAIVER OF PRIVILEGE, THE SANCTIONS ORDER MUST BE
        VACATED BECAUSE IT RELIES ON PRIVILEGED COMMUNICATIONS ................ 6

II.      SAMSUNG HAS SUBSTANTIATED ITS ASSERTIONS OF PRIVILEGE ..................... 6

    A.    Nokia Waived Objection To The Sufficiency Of Samsung's Privilege Log ........... 6

    B.    Nokia's Argument Fails On The Merits .................................................................. 7

III.    SAMSUNG DID NOT WAIVE PRIVILEGE OVER THE *IN CAMERA*
        DOCUMENTS ................................................................................................................ 10

    A.    Samsung Did Not Impliedly Waive Privilege ..................................................... 10

            1.    Nokia Has Waived Its At-Issue Waiver Argument ...................................... 11

            2.    Samsung Did Not Put Any Privileged Communications At Issue ............... 11

            3.    Disclosure Of Samsung's Privileged Communications Is Not Vital
                To Any Nokia Argument ............................................................................. 13

            4.    The At-Issue Doctrine Does Not Support A Categorical Waiver ............... 15

    B.    Samsung Did Not Selectively Disclose Privileged Information ............................ 16

            1.    Nokia Has Waived Its Selective-Disclosure Argument ............................. 16

            2.    Samsung Did Not Disclose Any Privileged Information ............................. 16

            3.    Samsung Did Not Misrepresent The Content Of Any Privileged
                Documents ................................................................................................ 18

        4.      A Subject-Matter Waiver Would Be Improper Under Fed. R. Evid. 502(a) ........................................................................................ 19

IV.     NOKIA'S REQUEST FOR DOCUMENTS IS OVERBROAD ....................................... 20

     A.     Nokia Is Not Entitled To Documents Regarding Apple's Licenses With Other Parties ........................................................................................ 20

     B.     Nokia Is Not Entitled To The Documents Cited In The Sanctions Order............... 21

CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bittaker v. Woodford,*
  331 F.3d 715 (9th Cir. 2003)...................................................................................15

*Brittain v. Sheriff of Riverside County,*
  2011 WL 6149287 (C.D. Cal. Dec. 9, 2011) ...........................................6, 11, 16, 17

*Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for Dist. of Mont.,*
  408 F.3d 1142 (9th Cir. 2005)..................................................................................10

*Chevron Corp. v. Pennzoil Co.,*
  974 F.2d 1156 (9th Cir. 1992)..................................................................................11

*Claffey v. River Oaks Hyundai,*
  486 F. Supp. 2d 776 (N.D. Ill. 2007) .......................................................................13

*Clarke v. Am. Commerce Nat'l Bank,*
  974 F.2d 127 (9th Cir. 1992)....................................................................................16

*Confederated Tribes of the Chehalis Reservation v. Thurston County Bd. of Equalization,*
  2009 WL 3835304 (W.D. Wash. Nov. 12, 2009) .....................................................19

*Dole v. Milonas,*
  889 F.2d 885 (9th Cir. 1989)......................................................................................8

*Dorf & Stanton Communications, Inc. v. Molson Breweries,*
  100 F.3d 919 (Fed. Cir. 1996).....................................................................................9

*EEOC v. Outback Steakhouse of Florida, Inc.,*
  251 F.R.D. 603 (D. Colo. 2008)................................................................................17

*Earthquake Sound Corp. v. Bumper Indus.,*
  352 F.3d 1210 (9th Cir. 2003)............................................................6, 11, 16, 17

*Fed. Sav. & Loan Ins. Corp. v. Ferm,*
  909 F.2d 372 (9th Cir. 1990)....................................................................................10

*Fox v. California Sierra Financial Services,*
  120 F.R.D. 520 (N.D. Cal. 1988).........................................................................13, 16

*Games2U, Inc. v. Game Truck Licensing, LLC,*
  2013 WL 4046655 (D. Ariz. Aug. 9, 2013) ...............................................................8

*Genentech, Inc. v. Insmed Inc.,*
  236 F.R.D. 466 (N.D. Cal. 2006)..............................................................................11

*In re Gibco, Inc.,*
  185 F.R.D. 296 (D. Colo. 1997)................................................................................13

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ................................................................................8, 17

*Henry v. Quicken Loans, Inc.*,
  263 F.R.D. 458 (E.D. Mich. 2008) ...............................................................................13

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) ......................................................................................15

*Holland v. Island Creek Corp.*,
  885 F. Supp. 4 (D.D.C. 1995) .......................................................................................16

*Home Indem. Co. v. Lane Powell Moss & Miller*,
  43 F.3d 1322 (9th Cir. 1995) ........................................................................................13

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  2008 WL 350641 (N.D. Cal. Feb. 2, 2008) ....................................................................8

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  2014 WL 1800820 (S.D.N.Y. May 7, 2014) .................................................................13

*Laser Indus., Ltd. v. Reliant Techs., Inc.*,
  167 F.R.D. 417 (N.D. Cal. 1996) ..................................................................................11

*MGA Entm't, Inc. v. Nat'l Prods. Ltd.*,
  2012 WL 3150532 (C.D. Cal. Aug. 2, 2012) ..................................................................9

*Magnesystems, Inc. v. Nikken, Inc.*,
  933 F. Supp. 944 (C.D. Cal. 1996)....................................................................7, 11, 16, 17

*Miller v. Pancucci*,
  141 F.R.D. 292 (C.D. Cal. 1992) ..................................................................................16

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) .........................................................................................................6

*Progressive Cas. Ins. Co. v. Fed. Deposit Ins. Corp.*,
  2013 WL 5947783 (D. Nev. Nov. 1, 2013) ..................................................................17

*In re Search Warrant Executed at Law Offices of Stephen Garea*,
  173 F.3d 429 (6th Cir. 1999) ..........................................................................................8

*Simpson v. Lear Astronics Corp.*,
  77 F.3d 1170 (9th Cir. 1996)......................................................................................7, 21

*Tennenbaum v. Deloite & Touche*,
  77 F.3d 337 (9th Cir. 1996) ..........................................................................................16

*Transamerica Comp. Co. v. IBM Corp.*,
  573 F.2d 646 (9th Cir. 1978) ........................................................................................12

*Trejo v. Macy's, Inc.*,
  2014 WL 1091000 (N.D. Cal. Mar. 17, 2014) ...............................................................8

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999)..........................................................................11, 13, 14

*United States v. ChevronTexaco Corp.*,
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) ...................................................................9

*United States v. St. Pierre*,
    132 F.2d 837 (2d Cir. 1942).....................................................................................18

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
    510 F.3d 474 (4th Cir. 2007)....................................................................................21

*Walker v. Cnty. of Contra Costa*,
    227 F.R.D. 529 (N.D. Cal. 2005) .............................................................................17

**Statutes**

Fed. R. Civ. P. 72(a)...........................................................................................................5, 21

Fed. R. Evid. 502(a) ...............................................................................................................19

Fed. R. Evid. 502(d) ...............................................................................................................22

**Miscellaneous**

1 Paul R. Rice, *Attorney-Client Privilege in the U.S.* (2013)...................................................9

14 *Moore's Federal Practice* § 72.11[1][a], at 72-53 (3d ed. 2014 Supp.).............................7

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC ("Samsung") respectfully submit this opposition to the motion to compel filed by non-party Nokia Corporation ("Nokia") (Dkt. 3213).

**INTRODUCTION**

Nokia continues to take the term "satellite litigation" to new levels with its latest motion to compel, which seeks access to *all* of the hundreds of documents that Samsung submitted *in camera* in response to the Court's October 22, 2013 Order.   Nokia proclaims an interest in "evaluat[ing]" this Court's ruling that Samsung did not "'use[] the Teece Report in either the Ericsson or Nokia negotiations'" (Mot. 1 (quoting Dkt. 2935, at 11)), but its request for Samsung's privileged communications sweeps far beyond that, including for documents that have nothing to do with those negotiations or even Nokia.   In effect, Nokia argues that each and every effort by Samsung to defend itself against sanctions effectuated a waiver of privilege, but the law supports no such result.

Nokia's endless, irrelevant demands strongly suggest that Nokia is motivated by events outside this litigation, such as other ongoing disputes between the two companies.   Indeed, as this diversion has stretched well past the one-year mark, Nokia acts as if its quest to invade Samsung's privilege is just beginning.   Most, if not all, of Nokia's arguments are completely new and ignore the limited nature of the presiding judge's remand.   Not only has Nokia thus waived these arguments, but they fail on the merits because Samsung's privilege logs and previously-submitted declarations more than substantiate its assertions of privileges, Nokia's various waiver theories are contrary to law, and Nokia's request for access to all documents Samsung submitted *in camera* is in any event grossly overbroad.   The motion should be denied, and the Sanctions Order should be vacated because it impermissibly relies on privileged communications.   (*See* Dkt. 3210, at 6:3-5 ("THE COURT:  Is there not the possibility that the outcome of all of your efforts might be that I have to lift the very sanctions that I've issued against Samsung in this case?").

**BACKGROUND**

**A.    Nokia's Motion For A Protective Order**

On July 1, 2013, Nokia filed a motion for a protective order in Case No. 12-cv-00630

1   regarding terms in its license with Apple that Nokia had asserted were confidential.  (Dkt. 2395-3

2   ¶¶3-4.)  In the course of investigating Nokia's claim that Samsung had used Nokia's confidential

3   information during a licensing negotiation, Quinn Emanuel determined that an expert report of

4   David J. Teece (the "Teece Report") had been incompletely redacted before being made available

5   to certain Samsung personnel via an FTP site on March 24, 2012.  (Dkt. 2807-3 ¶¶2-5, 15.)

6         On July 16, 2013, after having conducted an initial investigation into Nokia's assertions,

7   Quinn Emanuel notified Nokia of the inadvertent disclosures it had discovered.  (Dkt. 2395-3 ¶11,

8   Ex. A.)  After extensive discussions, Quinn Emanuel and Nokia's counsel negotiated and entered

9   into a stipulation to identify and remediate any confidential information in Samsung's possession,

10   which was filed on August 18, 2013 (the "Stipulation") (Case No. 12-cv-00630, Dkt. 742).  Nokia

11   withdrew its Motion for Protective Order in light of the Stipulation.  (*Id.*)

12   **B.     Apple's Motion For Sanctions**

13         Before the Stipulation could be ordered, however, on August 23, 2013, Apple filed a

14   Motion to Compel Further Discovery and for Sanctions for Violations of Protective Order.  (Dkt.

15   2374.)   Apple sought broad discovery well beyond the already expansive investigation

16   contemplated by the Stipulation.  On October 2, 2013, the Court entered the Stipulation as an

17   Order, and further ordered Samsung to provide several broad categories of discovery by no later

18   than October 16, 2013.  (Dkt. 2483, at 5 (the "October 2 Order").)

19         In compliance with the October 2 Order, a Quinn Emanuel team of more than twenty

20   attorneys reviewed a total of 69,862 documents—many in Korean—consisting of more than

21   1,215,336 unique pages.  (Dkt. 2835-6 ¶16.)  Samsung produced 470 documents, totaling 12,988

22   pages, and further compiled a privilege log, served on October 16, 2013, reflecting more than 800

23   entries.  (*Id.* ¶¶16, 36.)  In addition, as required by the October 2 Order, Samsung prepared and

24   produced six of its senior employees for deposition in the United States, including a thoroughly

25   prepared 30(b)(6) witness.  (*Id.* ¶18.)  The depositions lasted more than 40 hours in total.  (*Id.*)

26         On October 22, 2013, at a hearing following completion of the voluminous discovery

27   directed in the October 2 Order and the parties' submission of supplemental briefs, the Court

28   stated that it was "not yet satisfied that sanctions are warranted in this matter" and ordered

Samsung to submit the following documents for *in camera* review:  (1) all documents responsive to the October 2 Order that were produced to Apple and Nokia with all redactions removed; (2) all documents Samsung had withheld based on privilege or work product; and (3) all attachments to responsive parent documents that were produced or logged.  (Dkt. 2835-6 ¶67, Ex. 37 at 89:20-25, 94:2-25; *see also* Dkts. 2587-88.)  Pursuant to that Order, Samsung submitted *in camera* 23 large volumes containing 275 parent documents and hundreds of additional attachments and translations and also produced a 737-page privilege log with over 1300 individual entries.  (Dkt. 2835-6 ¶65.)

## C.    Samsung's Additional Submission Supporting Its Privilege Assertions

On November 8, 2013, after completing the *in camera* review, the Court entered an Order to Show Cause ("OSC") in which it identified eleven documents out of the many "boxes" of documents submitted *in camera* as potentially supporting violations of the Protective Order.  (Dkt. 2689 at 1, 3.)  The Court directed Samsung "to demonstrate with specificity how each and every one of [those] documents fall under the protection of either the attorney-client privilege or the work-product doctrine …" (*Id.* at 4 n.16.)

In addition to responding to the substantive issues underlying the OSC (Dkts. 2835, 2871), Samsung showed through sixteen supporting declarations that each of the eleven documents cited in the OSC is protected by the attorney-client privilege, work-product doctrine, and/or the mediation privilege because "[e]ach is a confidential communication between or among Samsung's counsel and employees related to the ongoing litigation between Samsung and various third parties that reflects either the transmission of legal advice or a request for or provision of legal assistance, or attorney work-product in anticipation of or in the course of litigation."  (Dkt. 2807, at 1.)

Apple and Nokia asked the Court to strike Samsung's Court-ordered submission because it was made *in camera* (*see* Dkt. 2805), and the Court ordered Samsung to file redacted versions of its brief and declarations (Dkt. 2790).  The Court stated it had "reviewed Samsung's brief and declarations" and "note[d] that very little in the submission merits redaction."  (*Id.* at 2.)  The Court cautioned that "broad assertions of plainly unprotected information will not be tolerated" and that if Samsung excessively redacted the documents, "the court will have no qualms about

requiring the filing of completely unredacted copies quickly thereafter."  (*Id.* at 2-3.)  Samsung promptly submitted redacted versions in compliance with the Court's order.  (Dkt. 2807.)

Apple and Nokia responded to these redacted submissions by taking completely inconsistent positions:  Apple argued that Samsung had *excessively* redacted in violation of the Court's admonition, while Nokia argued Samsung had *insufficiently* redacted.  (*Compare* Dkt. 2825-2 at 6 n.4 (Apple arguing that Samsung improperly redacted "essentially all details regarding the purpose or content of each withheld communication"), *with* Dkt. 2824 at 13-15 (Nokia arguing that Samsung "publicly disclosed the contents of several of the documents at issue").)  Both Apple and Nokia sought the same result—compelled production of the privileged documents.    After considering Apple's and Nokia's arguments, the Court did not order production of the unredacted declarations or any of the documents they discuss.

### D.    The Sanctions Order

On January 29, 2014, the Court issued the Sanctions Order.  As relevant here, the Court concluded that while Quinn Emanuel had violated the Protective Order by inadvertently circulating the incompletely redacted Teece Report to Samsung and by not having sufficient safeguards for protected information (Dkt. 2935, at 13-15), Samsung had not violated the Protective Order in connection with the June 4, 2013 negotiating session with Nokia (*id.* at 10-11).  As to the latter ruling, the Court stated that it was "unpersuaded that Samsung used the Teece Report in … [the] Nokia negotiations."  (*Id.* at 11.)  The Court stated that "what began as a chorus of loud and certain accusations"—led by "Nokia's Paul Melin [who] filed a declaration that launched a thousand accusations" (*id.* at 2)—"had died down to aggressive suppositions and inferences" (*id.* at 18).  The Court ordered Quinn Emanuel to reimburse Nokia and Apple for their expenses in litigating the sanctions motion and the associated discovery, and to ensure that "all copies of the Teece report containing confidential information [be] deleted, erased, wiped, or otherwise permanently removed from Samsung's control within fourteen days …."  (*Id.* at 18-19.)

The Sanctions Order also contained a ruling that "[b]ecause Samsung offered to turn over the vast majority of the documents cited in this order, the court finds that privilege has been waived as to those documents.  As to all other documents cited, the court finds that the portions

1   discussed in this order are not privileged." (*Id.* at 4 n.13.)  The presiding judge subsequently

2   vacated the waiver ruling.  (*See* Dkt. 3194, at 8-10.)

3   **E.  Nokia's First Motion To Compel**

4   Following the Sanctions Order, Nokia moved to compel Samsung's production of "*at least*

5   the documents which the Court cited in its Sanctions Order and which the Court found were not

6   privileged or for which privilege was waived" (Dkt. 2988, at 1), arguing that those documents

7   would purportedly assist with remediation (*id.* at 5-6) and were "referenced and form the basis for

8   [the Sanctions Order]" (*id.* at 7 n.5; *see also* Dkt. 3075, at 15-16).  The Court denied the motion,

9   expressing concern that Nokia sought to engage in perpetual motion practice and questioning the

10  "end game here." (Dkt. 3075, at 16:15.)  The Court instead required a declaration from Quinn

11  Emanuel certifying that remediation was complete (Dkt. 3061, at 2 (the "April 1 Order")), which

12  Quinn Emanuel subsequently provided (Dkts. 3106, 3190).  Nokia did not file a motion for relief

13  from the April 1 Order by the April 15 deadline.  *See* Fed. R. Civ. P. 72(a).

14  **F.  Nokia's Motion For Relief From The Sanctions Order**

15  After the Court issued the fee award (*see* Dkt. 3117), Nokia sought limited relief from the

16  Sanctions Order (Dkt. 3136).  As relevant here, Nokia argued that the Court should have

17  "address[ed] Samsung's and Nokia's privilege briefing" before entering the Sanctions Order.

18  (Dkt. 3136, at 4.)  The presiding judge agreed, and remanded so that "Nokia may seek

19  determination from Judge Grewal on the questions of privilege as to the Samsung documents

20  reviewed *in camera* and whether Nokia should receive access to any of those materials." (Dkt.

21  3194, at 13.)

22  **ARGUMENT**

23  Continuing its groundless pursuit of Samsung's privileged communications, Nokia argues

24  that the documents Samsung submitted for *in camera* review either are not privileged or that any

25  privilege has been waived.  Nokia did not raise most of its present arguments in the extensive

26  proceedings that led to the Sanctions Order, however, and it is thus foreclosed from raising them

27  now.  Moreover, Nokia's arguments fail as a matter of law because Samsung's privilege log

28  demonstrates the privileged nature of each listed document (and are further substantiated by

declarations submitted pursuant to Court order), and Samsung took no affirmative steps to inject privileged communications into this dispute.  Since Samsung has not waived privilege over any documents submitted *in camera* and the Sanctions Order relied on some of those very documents, the Sanctions Order should be vacated.

## I.   ABSENT A WAIVER OF PRIVILEGE, THE SANCTIONS ORDER MUST BE VACATED BECAUSE IT RELIES ON PRIVILEGED COMMUNICATIONS

The proper relief at this stage of these extended proceedings is not production of the *in camera* documents; it is vacatur of the Sanctions Order because it impermissibly relied on privileged communications.  As the Court has noted (Dkt. 3210, at 5-7), it is axiomatic that a judicial decision may not rest on privileged material.  *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009) (where attorney-client privilege applies, "the protected material and its fruits are excluded from evidence").  The presiding judge rejected the sole basis for the Court's citation to privileged communications in the Sanctions Order (Dkt. 3194, at 8-10), and, as shown below and in Samsung's contemporaneously filed opposition to Apple's motion to compel, no other ground exists for invading Samsung's privilege over documents at Tabs 6, 19, 20, 215, 222, 255, and 272.  The Sanctions Order, however, cites those documents *nine* separate times.  (*See* Dkt. 2935, at 4 nn.13, 17; *id.* at 5 nn.22-25, 28; *id.* at 6 n.32; *id.* at 15 n.70.)  Since the Sanctions Order cannot rest on those privileged communications, it should be rescinded.

## II.   SAMSUNG HAS SUBSTANTIATED ITS ASSERTIONS OF PRIVILEGE

### A.   Nokia Waived Objection To The Sufficiency Of Samsung's Privilege Log

As a threshold matter, Nokia has waived its argument—raised for the first time nearly a year and a half into this satellite litigation—that Samsung has failed to substantiate its assertions of privilege over the documents listed on its privilege log.  It is well established that, to avoid an endless cycle of litigation, a party may not raise new arguments on remand following an appeal. *See, e.g.*, *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir. 2003) (holding that party waived right to challenge reasonableness of attorney fee award where it first raised the challenge on remand); *Brittain v. Sheriff of Riverside County*, 2011 WL 6149287, *1 (C.D. Cal. Dec. 9, 2011) ("When a party fails to raise issues in the opening brief, those issues are waived, and

a remand on issues which were raised does not include the waived issues."); *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949-50 (C.D. Cal. 1996) ("[A]n issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand."); *cf. Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir. 1996) ("[A] party who fails to file timely objections to a magistrate judge's non-dispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order."); 14 *Moore's Federal Practice* § 72.11[1][a], at 72-53 (3d ed. 2014 Supp.) ("A party's failure to present timely arguments … to a magistrate judge prior to the magistrate's ruling … waives that party's right to present those arguments … to the district court on appeal from the magistrate's nondispositive order.") (citing cases).  Thus, Nokia's failure to raise this issue with the Court before the appeal to the presiding judge forecloses Nokia from arguing it now.

Nokia asserts (Mot. 4) that Samsung has somehow been "on notice" that Nokia considered Samsung's privilege log insufficient, but that is irrelevant under these authorities.  It is also factually incorrect.  Nokia never before challenged the sufficiency or specificity of Samsung's log, never requested that Samsung supplement the log, and in fact previously argued that Samsung had disclosed *too much* information regarding some of the documents on its log (*see* Dkt. 2824 at 13-15).  Nokia's sole basis for Samsung's supposed "notice" is a naked, generic assertion in a single Nokia brief that Samsung's "privilege assertions are just wrong," (Dkt. 2558-3, at 12), but that obviously is different from Nokia's present argument (Mot. 6) that it is entitled to receive *all* documents on Samsung's privilege log due to purported deficiencies in it.  Nokia had every opportunity to raise this argument previously, including the final opportunity this Court offered "to tell me anything more you want to tell me about anything"; Nokia simply failed to do so. (Dkt. 2883, at 134:11-12.)  Nothing in the presiding judge's remand order authorized Nokia to enlarge its objections to Samsung's assertions of privilege, and it is far too late for Nokia to do so now.  (*See* Dkt. 3194, at 10-13.)

## B.    Nokia's Argument Fails On The Merits

Nokia's argument is also meritless.  Samsung's privilege log amply suffices to substantiate its assertions of privilege, and Nokia provides no authority even remotely supporting its request

for production of the logged documents.  Nokia vaguely contends that it "lacks sufficient information to assess the majority of Samsung's privilege claims" (Mot. 4) but ignores the Ninth Circuit's standard for a privilege log, which *at most* requires a party to identify "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989)).  In fact, "[a]lthough sufficient, this list of identifiers [is] neither exhaustive nor necessary to carry the burden to describe the nature of the withheld documents and enable the parties to assess the claim of privilege." *Games2U, Inc. v. Game Truck Licensing, LLC*, 2013 WL 4046655, *5 (D. Ariz. Aug. 9, 2013); *see Trejo v. Macy's, Inc.*, 2014 WL 1091000, *2 (N.D. Cal. Mar. 17, 2014) (listing similar categories).  Nokia does not dispute that Samsung's log contains information corresponding to each of these categories, showing it is sufficient under controlling law.  (Dkt. 3213-2 (Samsung's privilege log).)[1]

Nokia cites (Mot. 5) Tab 236 as a deficient privilege log entry, claiming it lists "FOSS Patents" as an author.  But Nokia disregards that Tab 236 *also* lists a Samsung licensing executive as author, and lists Indong Kang, *a Samsung attorney*, as the recipient.  (*See* Tab 236; *see also* Decl. of Indong Kang, Dkt. 2556-10 ¶¶1-2.)  No additional "explanation" is required—the privilege log makes clear that a Samsung licensing executive authored an email to a Samsung attorney seeking legal advice related to licensing issues, and this privileged email contains a FOSS Patents blog post.  *See, e.g.*, *In re Search Warrant Executed at Law Offices of Stephen Garea*, 173 F.3d 429 (6th Cir. 1999) ("[A]lthough a newspaper article itself may not be a privileged document, when a client sends it to his attorney with a request for legal guidance concerning its

_____

[1] Nokia's reliance (Mot. 4) upon *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641 (N.D. Cal. Feb. 2, 2008), is misplaced, for that court ruled two presentations were not privileged because they contained primarily "business analysis" and were "more akin to a press release … informing [employees] of the company's business plans," not because of any alleged privilege log deficiencies.  *Id.* at *3-4.  Nokia does not argue that the documents at issue here primarily contain business analysis.

1   contents, that act of communication confers privileged status upon the exchange.").   Out of the

2   hundreds of documents Nokia seeks to compel, Nokia's selection of Tab 236 as the lone example

3   of an alleged deficient entry on Samsung's log is telling.

4        Nokia's remaining arguments belatedly challenging the sufficiency of Samsung's privilege

5   log are equally meritless.   Nokia notes that Samsung's privilege log "does not describe every

6   single document as a communication with an attorney" (Mot. 5), but many of the entries Nokia

7   cites do involve Samsung attorneys.   (*See* Tab 235, 236, 239, 245, 255.)   In any event,

8   communications may be privileged even if an attorney does not participate, including where, for

9   example, "employees discuss or transmit legal advice given by counsel …."   *United States v.*

10  *ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *see also MGA Entm't, Inc. v.*

11  *Nat'l Prods. Ltd.*, 2012 WL 3150532, *2-3 (C.D. Cal. Aug. 2, 2012) (noting that "[s]everal courts

12  have held that communications between non-attorneys within a corporation for the purpose of

13  obtaining or relaying legal advice are protected by the attorney client privilege") (citing cases); 1

14  Paul R. Rice, *Attorney-Client Privilege in the U.S.* § 5.7 (2013) ("To the extent attorney

15  communications are derivatively protected, the relaying of those communications between agents

16  of the client who must act upon that advice is similarly protected.").   Nokia offers no basis for

17  disputing Samsung's description that these emails consist of Samsung employees discussing legal

18  advice on the subject matters disclosed in the log.

19       Nokia also complains (Mot. 5) that it does not know why some documents on the log were

20  redacted while others were withheld entirely, and thus seeks to use Samsung's effort to produce

21  non-privileged portions of documents containing privileged information as support for a broad

22  waiver of privilege.   The "explanation" that Nokia seeks is obvious—some documents contain

23  non-privileged material that could be separated using redactions; other documents do not.   *See*

24  Rice, *supra*, § 11:21 (production of documents in redacted form is appropriate where "the

25  nonprivileged portions of a communication are distinct and severable, and their disclosure would

26  not effectively reveal the substance of the privilege legal portions").   In any event, Nokia cites no

27  authority for its nonsensical argument, which would have the perverse effect of deterring parties

28  from producing non-privileged information where possible to do so.

Finally, even if Samsung's log was somehow deficient (it is not), there would be no basis to find a wholesale waiver of privilege here.   Nokia relies solely on *Dorf & Stanton Communications, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (Mot. 3), but there the Federal Circuit found waiver "where a party failed to meet the requirements of a valid local rule, failed to treat related documents consistently, and then failed to use its best efforts to cure the problems created by its first two failures."   That decision has no application here, where Nokia has never before challenged the adequacy of Samsung's privilege log, Samsung has had no opportunity to cure any alleged deficiency, and Samsung undertook diligent (indeed gargantuan) efforts to prepare a privilege log under significant time pressure.   Nokia's argument is flatly inconsistent with controlling law, for even a complete failure to provide *any* privilege log does not automatically yield waiver of privilege.   *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).   Nokia thus vastly overreaches in seeking to invade Samsung's privilege based on its belated objections to Samsung's privilege log.

## III.   SAMSUNG DID NOT WAIVE PRIVILEGE OVER THE *IN CAMERA* DOCUMENTS

Nokia likewise fails to demonstrate that Samsung waived privilege over any of the documents that Samsung submitted for *in camera* review as required by the Court's October 22, 2013 Order.   Nokia rightly does not suggest that the compelled production itself waived privilege, *see, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990), and instead seeks access under the at-issue and selective-disclosure doctrines.   But Nokia has waived such arguments.   Moreover, Samsung has never put privileged communications at issue or disclosed privileged information, and Nokia's arguments therefore fail on the merits as well.

### A.   Samsung Did Not Impliedly Waive Privilege

Nokia's at-issue waiver argument has been waived and fails on the merits because Samsung never affirmatively relied on any privileged information, Nokia has no vital need for Samsung's privileged communications given the advanced stage of these proceedings, and Nokia's requested categorical waiver is grossly overbroad.

**1.     Nokia Has Waived Its At-Issue Waiver Argument**

Nokia has never before argued, as it does now, that Samsung put at issue the contents of "all of the documents identified by Samsung as responsive to the Court's October 2, 2013 order" (Mot. 7)—rather, its earlier at-issue waiver arguments were limited at most to the eleven documents cited in footnotes 10-15 of the Court's November 8 Order to Show Cause (*see* Dkt. 2824, at 10-16).  Nokia's unprecedented argument is thus not only incorrect as a matter of law (*see infra*), but it comes far too late in these proceedings to be considered.  *See, e.g.*, *Earthquake Sound*, 352 F.3d at 1219; *Brittain*, 2011 WL 6149287, at *1; *Magnesystems*, 933 F. Supp. at 949-50.  Nothing in the presiding judge's remand order suggests that Nokia is entitled now, following an appeal and remand, to completely revamp its privilege arguments in order to perpetuate these proceedings.  (*See* Dkt. 3194, at 10-13.)

**2.     Samsung Did Not Put Any Privileged Communications At Issue**

Nor is there any merit to Nokia's argument.  An implied waiver under the at-issue doctrine occurs only where the party asserting the privilege puts privileged information at issue "as the result of some affirmative act, such as filing suit," *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999), or affirmative reliance on privileged communications or work product in support of claims or defenses, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992), cited in (Mot. 6).  Samsung took no affirmative act that put privileged communications at issue here.

Nokia contends (Mot. 8-12) that Samsung's arguments that it did not intentionally violate the Protective Order and did not use any confidential information put privileged information at issue.  These were mere *denials*, however, and it is well established that such denials of wrongdoing do not affirmatively put a party's privileged communications at issue.  *See, e.g.*, *Amlani*, 169 F.3d at 1195 ("[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation.") (citation omitted); *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (overruling decision finding implied waiver: "mere denial of intent is insufficient to establish waiver of the privilege"); *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996) ("denials of knowledge of the

undisclosed prior art did not purport to disclose the contents of a specific communication … and do not appear to go beyond 'mere denial[s].'… More important, their denials have not placed the contents of any privileged communication 'in issue'") (citations omitted)).   By denying intentionality and use, Samsung simply sought to refute what it understood to be elements of a sanctionable Protective Order violation.  (*See, e.g.*, Dkt. No. 2485 at 47:18-48:4 ("There's an intent of willfulness requirement for a violation of a protective order. …"); Dkt. 2495, at 1 ("There is no basis for finding the type of protective order violation that could possibly justify [the proposed sanctions].").   Although the Court ultimately ruled that non-willful Protective Order violations were sanctionable, Samsung was entitled to advance its legitimate, good-faith position that willfulness was an element of a Protective Order violation and that its conduct here was not willful.  No authority supports finding waiver based on such denials.

Nokia further contends (Mot. 10) that "Samsung affirmatively argued that the Court could rely properly on the *ex parte* documents themselves," but that is false.   Samsung consistently explained that the *non-privileged* information produced in response to Nokia's (and Apple's) document requests refutes the argument that Samsung had misused confidential information.  (*See, e.g.*, Dkt. 2835-3, at 13-14, 17).[2]  Nokia is also incorrect (Mot. 11-12) that Samsung affirmatively put privileged information at issue by submitting declarations to support its privilege contentions. To the extent that Samsung relied on these declarations to argue that sanctions were not warranted, Samsung was careful to ensure that the *non-privileged,* unredacted portions provided support for the proposition at issue (*see* Dkt. 2835-3, at 13-14, 17)—Samsung did not rely on *any* privileged, redacted portions of the documents.   And in any event, the public filing of the declarations was compelled by Court Order (*see* Dkt. 2790), and thus could not possibly result in waiver.  *See, e.g., Transamerica Comp. Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (noting the "general

---

[2]   To the extent that Samsung directed the Court to a privileged document during a hearing, it was in response to a question from the Court seeking an explanation of witness testimony— Samsung did not affirmatively put that document at issue.  (*See* Dkt. 2883, at 23:2-24:1 (discussing Tab 222).)

1    acceptance of the principle that waiver cannot result from compelled production").[3]

2          Nokia's authorities (Mot. 7-9) are inapposite.  The court in *In re Gibco, Inc.*, 185 F.R.D.

3    296, 301 (D. Colo. 1997), ruled that a debtor waived privilege as to communications with counsel

4    by raising an *affirmative defense* of good faith to a fraudulent conveyance claim, explaining that

5    "[b]y asserting the affirmative defense of good faith, [the debtor] has put both the objective

6    circumstances, and his subjective knowledge and intent at issue."  *Id.* at 301.  Likewise, in *Henry*

7    *v. Quicken Loans, Inc.*, 263 F.R.D. 458 (E.D. Mich. 2008), the court ruled that a party waived

8    privilege as to certain communications with counsel only because it had injected a good-faith

9    affirmative defense into the proceeding.  *Id.* at 469-70.  Indeed, the court recognized that a "mere

10   denial of [a] claim of willfulness" would *not* constitute a waiver.  *Id.* at 470 (citing *Claffey v. River*

11   *Oaks Hyundai*, 486 F. Supp. 2d 776 (N.D. Ill. 2007)).  And in *Fox v. California Sierra Financial*

12   *Services*, 120 F.R.D. 520 (N.D. Cal. 1988), the court similarly distinguished between denials of

13   allegations, which would not waive privilege, and use of an affirmative defense, which could.  *Id.*

14   at 530.  Here, as shown, Samsung has not asserted any affirmative defense, and it has not relied on

15   privileged communications beyond mere denials.  No authority supports finding waiver under

16   these circumstances, and controlling Ninth Circuit authority prohibits it.[4]

17          **3.      Disclosure Of Samsung's Privileged Communications Is Not Vital To**
            **Any Nokia Argument**

18

19          Nokia's waiver arguments fail for the independent reason that Nokia has not shown that

20   the information it seeks is "vital" to its prosecution of the underlying sanctions motion.  *Home*

21       [3]  After being compelled to substantiate its privilege claims, Samsung took additional steps to
     protect its privileges by submitting its declarations *in camera*. (Dkt. 2757.)  It was only after
22   Apple and Nokia moved to strike the *in camera* filing (Dkts. 2772, 2780) and the Court *ordered*
     Samsung to submit public redacted versions of the declarations (Dkt. 2790) that Samsung publicly
23   filed any portion of the declarations.  And when it did so, it redacted all privileged information
     from the declarations. (Dkt. 2807-1 to -16.)  Samsung therefore never disclosed any privileged
24   information, and the only disclosures of any information that occurred were compelled, which too
     defeats any waiver argument here.
25
         [4]  Nokia's reliance on *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2014 WL 1800820
26   (S.D.N.Y. May 7, 2014), is likewise unavailing, as there the court found a selective disclosure—
     not an at-issue waiver—and it did so only in dicta after ruling that the communications were *not*
27   privileged.  *See id.* at *4-5.

28

1   *Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (implied waiver

2   occurs only where "allowing the privilege would deny the opposing party access to information

3   vital to its defense"); *accord Amlani*, 169 F.3d at 1195.  Many of the privileged documents at issue

4   do not even relate to Nokia, but instead involve Apple's licenses with Sharp, Philips, and/or

5   Ericsson (*see infra*, Part IV.A).  Those documents could not possibly reflect use or dissemination

6   of Nokia's license with Apple, and thus Nokia has no need at all—let alone a vital need—to

7   invade Samsung's privilege.  Indeed, Nokia waived any right to argue otherwise now.[5]

8          Further, even if Nokia could show that other *in camera* documents might be relevant to its

9   arguments, such relevance would not make that information discoverable.  *See, e.g.*, *Amlani*, 169

10  F.3d at 1195.  To the extent Nokia seeks access to the *in camera* documents to show intentionality

11  (*see* Mot. 9), the Court has ruled that the Protective Order "does not establish a willfulness

12  requirement" (Dkt. 2935, at 8), and Samsung did not seek relief from that ruling.  That issue has

13  thus already been resolved in Nokia's favor, and Nokia has no need, vital or otherwise, to invade

14  Samsung's privileged information to respond to Samsung's argument.  With respect to use, the

15  vast quantities of *non-privileged* information in the record more than enabled Nokia to fairly

16  litigate the issue, including:  (1) Dr. Ahn's sworn testimony that he did not know the terms of the

17  Apple-Nokia license but instead recited numbers at the negotiation based on his discussions with

18  industry sources and his review of public information concerning the terms of the license,

19  including widely available media reports that revealed financial terms of the Apple-Nokia license;[6]

20  (2) corroborating testimony regarding the public source of Dr. Ahn's testimony by the other two

21  Samsung employees who attended the meeting, James Kwak and Indong Kang;[7] and (3) the

22  ───────────────────

23     [5]  Indeed, Nokia is not entitled to such documents because other protective orders and
     agreements prohibit it.  As the Court will recall, Samsung declined to produce documents relating
24   to these other licenses because they implicated the potential confidentiality interests of third
     parties and Apple, for its part, never agreed that Nokia could have access to such information,
25   despite Samsung's requests.  Nokia never sought to overrule those objections and also did not seek
     to compel the production of such documents prior to the Sanctions Order and the limited appeal
26   from that Order.  As a result, it has waived any right to pursue them.

27     [6]  Dkt. 2556-8 ¶¶ 14, 18, 19; *see also* Dkt. 2935, at 11 (citing sources).
       [7]  Dkt. 2556-8 ¶¶ 14, 16, 18-24; Dkt. 2557-8, at 82:15-85:16; Dkt. 2556-10 ¶¶ 11, 15-19; Dkt.
28   (footnote continued)

1  undisputed fact that the terms Dr. Ahn stated during the licensing negotiation *differ* from the terms

2  revealed in the incompletely-redacted Teece Report, but track information already made public.[8]

3      In all events, the Court *has already sanctioned* Quinn Emanuel—to the tune of more than

4  $2 million.  Nokia certainly does not have a "vital" need to pierce through Samsung's privilege in

5  order to "evaluate" the Sanctions Order in its favor.

### 4.      The At-Issue Doctrine Does Not Support A Categorical Waiver

7      Finally, Nokia contravenes controlling law in arguing that Samsung "*categorically* waived

8  privilege [of its] documents at issue in the sanctions proceedings."  (Mot. 6 (emphasis added).)

9  Where a court finds an implied waiver, it "does not order disclosure of the materials *categorically*;

10  rather, the court directs the party holding the privilege to produce the privileged materials *if* it

11  wishes to go forward with its claims implicating them."  *Bittaker v. Woodford,* 331 F.3d 715, 720-

12  21 (9th Cir. 2003) (en banc) (first emphasis added).   And if a party elects to pursue the claims or

13  defenses that put privileged communications at issue, the court "must impose a waiver no broader

14  than needed to ensure the fairness of the proceedings before it."  *Id.* at 720; *see also id.* (under

15  implied-waiver doctrine, court must "closely tailor[] the scope of the waiver to the needs of the

16  opposing party").  Samsung has never been informed that pursuing its defenses would lead to a

17  waiver and thus has never had any opportunity to consider whether to alter those defenses.[9]

18      In any event, Nokia's request for access to *all* of the *in camera* documents is grossly

19  overbroad.  *See Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (rejecting "blanket

20  waiver of the attorney-client and work product privileges as to the entire case"); *Bittaker*, 331 F.3d

21  at 720-21.  Nokia's failure to identify any particular documents or even categories of documents as

22  to which it believes the privilege has been waived further requires rejection of its arguments.

---

24  2556-12 ¶¶ 10, 12-14; Dkt. 2557-15, at 142:17-144:11.

25      [8]   *See* Dkt. 2835-6 ¶ 69, Ex. 39 at 174:23-175:1; Dkt. 2395 at 5-6; Dkt. 2395-3 ¶ 20 & Ex. G-K.

26      [9]   *Bittaker*'s requirement that a party have an opportunity to withdraw its reliance on claims
and affirmative defenses that would trigger an implied waiver further shows that Samsung
27  undertook no affirmative act that could lead to waiver here, for there *are no* Samsung claims or
affirmative defenses that put privileged information at issue.

**B.      Samsung Did Not Selectively Disclose Privileged Information**

**1.      Nokia Has Waived Its Selective-Disclosure Argument**

Nokia has waived any argument that Samsung's purportedly selective disclosure of privileged information in Tabs 19, 20, and 272 entitles it to documents beyond those cited in the November 15, 2013 Declaration of Alex Baxter.  When Nokia previously raised its misguided selective-disclosure arguments, it sought access only to "the documents discussed by Mr. Baxter's declaration," or, alternatively, Tabs 19 and 20.  (Dkt. 2824, at 13-14).  Nokia now argues that Samsung's same alleged selective disclosure yielded a waiver as to *all* documents pertaining to the subject matter of Samsung's "corrective action with respect to the disclosure of confidential information to Mr. Shim."  (Mot. 13; *see also id.* at 6 (arguing that Samsung "made selective partial disclosures of several documents, thereby waiving privilege as to those topics").)  This new, amorphous request goes far beyond Nokia's earlier arguments, and thus is a new argument that cannot be raised for the first time on remand.  *See, e.g.*, *Earthquake Sound*, 352 F.3d at 1219; *Brittain*, 2011 WL 6149287, at *1; *Magnesystems*, 933 F. Supp. at 949-50.

**2.      Samsung Did Not Disclose Any Privileged Information**

Nokia's selective-disclosure arguments also lack merit.  As Nokia's own authority explains, the selective-disclosure doctrine is designed "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."  *Tennenbaum v. Deloite & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996), cited in Mot. 3.  Nokia has not shown that Samsung disclosed any privileged information in Tabs 19, 20, or 272.

*First*, contrary to Nokia's intimations (Mot. 12), the identities of the senders and recipients of the incompletely-redacted Teece Report is such general information that it is not privileged.  *See*, *e.g.*, *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129-30 (9th Cir. 1992) (holding that billing records describing "general nature of the services performed" are not privileged); *Fox*, 120 F.R.D. at 524 n.1 (fact of communication is not privileged); *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 7 (D.D.C. 1995) ("It is permissible for a party to disclose the nonprivileged portions of a

document while redacting the privileged material, without waiving the privilege for the entire document."); Dkt. 2772, at 2 (Apple conceding that Samsung would not waive privilege by presenting arguments "at a level of generality that would not reveal the details of the documents at issue").   Indeed, this is information that privilege logs themselves often contain, showing it is not privileged.  *See, e.g.*, *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (recognizing that a privilege log will disclose date of document, author, recipients, subject matter or purpose of document or privileged communication).

*Second*, Nokia is incorrect (Mot. 13) that Mr. Shim's explanation for why he requested the Teece Report—that it was relevant to matters *outside* this litigation—reveals the substance of a privileged communication.  That explanation is neither a disclosure made to obtain legal advice nor an attorney's communication in response to a request for legal advice; it is thus not privileged and cannot cause a waiver.  *See In re Grand Jury Investigation*, 974 F.2d at 1070 (attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, … as well as an attorney's advice in response to such disclosures") (quotations and citation omitted).

*Third*, Quinn Emanuel's discussion of Mr. Shim's corrective action (Dkts. 2807-1, 2807-12 ¶6, 2581 at 59:9-14, 65:14-66:3 ) did not waive any privilege either, as that discussion did not reveal the substance of any communications about corrective action.  The fact that an act was taken is not itself privileged.  *See, e.g.*, *Progressive Cas. Ins. Co. v. Fed. Deposit Ins. Corp.*, 2013 WL 5947783, *10 (D. Nev. Nov. 1, 2013) ("The confidential advice [a client] receive[s] from their lawyers is generally privileged.  The decisions and actions taken as a result of that advice are generally not.").[10]

_____

[10]     The authorities cited by Nokia (Mot. 13) are inapposite.  Both *EEOC v. Outback Steakhouse of Florida, Inc*., 251 F.R.D. 603, 610-12 (D. Colo. 2008), and *Walker v. Cnty. of Contra Costa*, 227 F.R.D. 529, 537 (N.D. Cal. 2005), involved at-issue waiver, not a selective disclosure, and these courts found an at-issue waiver only because the defendants had asserted "the *Faragher / Ellerth* affirmative defense," which goes beyond mere denials and explicitly relies on privileged communications to establish the scope and substance of internal privileged investigations and remedial efforts.  *Outback*, 241 F.R.D. at 610-12 (citing *Walker*).

### 3.    Samsung Did Not Misrepresent The Content Of Any Privileged Documents

Nokia is wrong in arguing (Mot. 13-14) that it is entitled to Samsung's privileged communications because Samsung purportedly misrepresented certain *non-privileged* facts. Again, Nokia never raised this argument during the sanctions proceedings before this Court, and it is thus waived.  *See, e.g.*, *Earthquake Sound*, 352 F.3d at 1219; *Brittain*, 2011 WL 6149287, at *1; *Magnesystems*, 933 F. Supp. at 949-50.

Nor was there any misrepresentation here.  Nokia contends (Mot. 13) that Samsung misrepresented the facts in a letter that Quinn Emanuel sent Apple on August 16, 2013, which stated that Quinn Emanuel discovered that the Teece Report had been incompletely redacted and then sent a new version "that contained complete redactions."  (Dkt. 2395-03g, at 2.)  This letter was accurate.  As of August 16, 2013, Samsung had identified and disclosed the inadvertent disclosures in paragraphs 190-193 of the Teece Report (Dkt. 2395-03d, at 2), and paragraphs 190-193 were redacted from the new version of the Teece Report (Dkt. 2395-03g, at 2).  When Samsung subsequently discovered that other paragraphs containing information about Apple's license with *Ericsson* were also unredacted, it promptly disclosed this fact to Apple and Nokia.  (Dkt. 2460-3 (disclosing additional unredacted paragraphs); Dkt. 2581 at 63:21-64:11 (same).)  This Court did not award any sanctions based on the Ericsson information and, to the contrary, found no use or harm.

Nokia wrongly asserts (Mot. 13-14) that this Court's finding that the Quinn Emanuel associate who created the incompletely-redacted Teece Report in March 2012 identified the incomplete redactions in December 2012 contradicts Samsung's statement that the associate did not realize in December 2012 that an incompletely-redacted Teece Report had been placed on an FTP site in March 2012.  There is no contradiction:  Nokia cites no evidence that the associate realized the redacted report he saw in December was the same as the version he prepared nine months earlier.  In any event, Samsung did not misrepresent the facts—Samsung disclosed that the associate who redacted the report in March was the same associate who discovered the incomplete redactions in December.  (Dkt. 2935, at 4-5; Dkt. 2883 at 34:9-16, 94:17-19.)

In addition to being waived and factually false, Nokia's argument is absurd.  There is no authority that a party's alleged misrepresentation of non-privileged facts can yield a waiver of privilege.  The lone, old case upon which Nokia relies did not hold that a party can waive the attorney-client privilege by misrepresenting facts; rather, it held that a criminal defendant waived the Fifth Amendment privilege by voluntarily testifying regarding "all the elements of the crime." *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942).  This ruling has no applicability to the circumstances presented here.[11]

Nokia's unsupported, incorrect waiver by misrepresentation theory lacks merit.

### 4.    A Subject-Matter Waiver Would Be Improper Under Fed. R. Evid. 502(a)

Finally, even if Samsung had selectively disclosed privileged information (which it did not), any waiver would be limited to the specific documents at issue (Tabs 19, 20, and 272). *Contra* Mot. 15.  Federal Rule of Evidence 502(a) provides:

> When the disclosure is made in a federal proceeding … and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together.

FED. R. EVID. 502(a).  Here, Samsung did *not* intentionally disclose privileged communications but instead sought to disclose non-privileged facts and other general information (*see supra*, at III.B.2), and there is nothing unfair about upholding privilege over the undisclosed documents where—contrary to Nokia's assertions—Samsung did *not* seek to "misrepresen[t] the allegedly privileged information within these documents" (Mot. 15; *see also supra*, at III.B.3).  Thus, the documents at Tab 19, 20, and 272 are the most Nokia could possibly obtain based on a selective-disclosure theory.  *See, e.g.*, *Confederated Tribes of the Chehalis Reservation v. Thurston County*

---

[11]    Contrary to Nokia's bare contention (Mot. 14), Samsung's counsel's acknowledgment that it inadvertently transmitted an incompletely-redacted report could not possibly justify the broad invasion of Samsung's privilege that Nokia seeks.  Nor does any principle of policy or logic support it.

*Bd. of Equalization*, 2009 WL 3835304, *6 (W.D. Wash. Nov. 12, 2009) (declining to find subject-matter waiver under Rule 502(a) where "[t]he record does not reflect that Defendants have intentionally put this information into the litigation in either a misleading or unfair manner.").

## IV.   NOKIA'S REQUEST FOR DOCUMENTS IS OVERBROAD

### A.   Nokia Is Not Entitled To Documents Regarding Apple's Licenses With Other Parties

Even if Nokia were successful in its challenge to Samsung's assertions of privilege, Nokia still would not be entitled to the documents it seeks.  Indeed, Nokia inexplicably seeks the production of documents that make *no* mention of *its* license.  Of the approximately 279 tabs on Samsung's privilege log, only 92 even refer to the Apple-Nokia license.  (Declaration of Robert Becher, filed concurrently, ("Becher Decl.")  ¶2.)  The remaining 187 tabs—the majority of the documents—refer to Apple's licenses with Sharp, Philips, and/or Ericsson.  (*Id.*)  The documents in these 187 tabs have no relevance to Nokia and could not possibly reflect use or dissemination of its license with Apple.  Moreover, Apple has asserted that documents containing the terms of its licenses with Sharp, Philips and Ericsson, such as the Teece Report, contain confidential information and that it would be a violation of the Protective Order to provide these documents to Nokia.  (Dkt. 2558-46, Exh. 18, Nov. 12, 2013 email from Dan Posner to Ryan Koppelman and Mark Selwyn.)  As explained above, Nokia waived any right to seek such documents, which constitutes an additional reason that Nokia's request for documents regarding other parties' licenses should be denied.[12]

In addition, Nokia is not entitled to documents covered by the mediation privilege, including Tabs 87, 90, 261.55, and 274.  Samsung objected to the production of these tabs on the basis of the mediation privilege and other confidentiality claims both before this Court (Dkt. 2835-3) and in response to Nokia's motion for relief before Judge Koh (Dkt. 3165-3 at 5, Dkt. 3135-15, Ex. 14 at 1 n.1).  Nokia has never challenged Samsung's assertion of the mediation privilege, and

---

[12]   Many of the tabs referencing Nokia's license also reference Apple's other licenses. Providing unredacted copies of these documents to Nokia would also disclose claimed third-party confidential information and do so for no legitimate reason.

does not address this privilege in its present motion.   Accordingly, Nokia has waived any argument seeking production of these documents.

**B.        Nokia Is Not Entitled To The Documents Cited In The Sanctions Order**

Nokia overreaches with its final argument (Mot. 15-17) that it is entitled to receive all documents cited in the Sanctions Order or the non-privileged portions thereof.   That argument merely rehashes the same arguments the Court rejected in its April 1 Order (Dkt. 3075) denying Nokia's motion to compel "Samsung to at least produce documents that the Court has already held are not privileged or for which privilege has been waived" (Dkt. 2988, at 3; *see also id.* at 8-10 & n.5).   Nokia did not file a timely motion for reconsideration of that Order or seek relief from the presiding judge within 14 days of the order.   *See* Fed. R. Civ. P. 72(a) (14-day deadline to seek relief from magistrate judge's nondispositive order).   Nokia may not seek a do-over now.   *Cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived …"); *Simpson*, 77 F.3d at 1174 ("[A] party who fails to file timely objections to a magistrate judge's nondispositive order with the district judge to whom the case is assigned forfeits its right to appellate review of that order.").[13]

But even if Nokia had not waived this argument, it provides no basis for any additional "production" of documents, or portions thereof, since any non-privileged information was already revealed and addressed in the Sanctions Order.   Additional production would be pointless and would serve only to further prolong and complicate these already expansive satellite proceedings.   At the very least, Nokia's request is overbroad because its lengthy list of documents includes numerous documents not even cited in the Sanctions Order.   (*Compare* Mot. 16 *with* Dkt. 2935, at 4-6, 11, 15 (citing Tabs 2-5, 8, 17-20, 56, 87, 90, 93, 121, 144, 215-16, 221-22, 225, 239, 246,

---

[13]   Nokia's passing suggestion (Mot. 16) that Samsung is in contempt of the October 2 Order is utterly frivolous in light of the Court's April 1 Order *denying* Nokia's motion to compel production of the very documents Nokia seeks here.   *See* Dkt. 3061 (denying motion to compel (Dkt. 2988)).

1    258, 260, 272).)[14]   Under no circumstances may Nokia rely on the Sanctions Order to obtain

2    access to these non-cited documents.

3           Finally, at the very end of its brief (Mot. 16-17), Nokia cites Fed. R. Evid. 502(d) to

4    suggest that its counsel should be permitted to review Samsung's privileged information even

5    absent any applicable theory of waiver.  Rule 502(d) does not support such relief.  That Rule

6    permits a court to enter an order that one party's voluntary disclosure of privileged information

7    will not constitute a waiver of privilege.  As the Court is aware, Samsung had previously offered

8    voluntary disclosure of certain documents subject to this Court's approval of a stipulation in order

9    to help streamline the protective order disputes, but Apple and Nokia refused those offers.  At this

10   stage, given that an offer of voluntary disclosure would do nothing but unnecessarily prolong these

11   proceedings, Samsung is not willing to disclose its privileged information to Nokia or its counsel,

12   and thus the rule is inapplicable here.

13                                          **CONCLUSION**

14          Nokia's motion to compel should be denied in its entirety, and the Sanctions Order should

15   be rescinded.

16

17

18

19

20

21

22   _____

23      [14]   Nokia seeks access to the following subparts of tabs submitted to the Court where the
     Sanctions Order did not cite either the subpart or the main tab:  Tabs 6.1, 6.2, 6.3, 6.4, 255.1,
24   255.2, 255.3, 255.4, 255.5, 255.6, 255.7.  Nokia also seeks access to the following subparts of tabs
     submitted to the Court where the Sanctions Order cited only to the main tab:  Tabs 8.1, 8.2, 90.1,
25   90.2, 144.1, 216.1, 216.2, 225.1, 239.1, 239.2, 239.3, 239.4, 239.5, 239.6, 239.7, 239.8, 239.9,
     239.10, 239.11, 239.12, 239.13, 239.14, 246.1, 258.1, 258.2, 258.3, 258.4, 258.5, 260.1, 260.2,
26   260.3, 260.4, 260.5, 260.6, 260.7, 260.8, 260.9, 260.10, 260.11, 272.1, 272.2, 272.3, 272.4.  The
     Court did not make an assessment of privilege in the Sanctions Order for documents in either
27   category.

28

1    DATED:  November 7, 2014          QUINN EMANUEL URQUHART &
2                                       SULLIVAN, LLP

3                                        By /s/ *Michael T. Zeller*
4                                           Charles K. Verhoeven
                                            Kevin P.B. Johnson
5                                           Victoria F. Maroulis
                                            William C. Price
6                                           Michael T. Zeller

7                                           Attorneys for SAMSUNG ELECTRONICS CO.,
8                                           LTD., SAMSUNG ELECTRONICS AMERICA,
                                            INC. and SAMSUNG
9                                           TELECOMMUNICATIONS AMERICA, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file this document.   In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michael T. Zeller has concurred in this filing.

Dated:  November 7, 2014

*/s/ Victoria F. Maroulis*
Victoria F. Maroulis