# EXHIBIT 5

WILMERHALE

**William F. Lee**

+1 617 526 6556 (t)
+1 617 526 5000 (f)
william.lee@wilmerhale.com

**Contains Confidential Business Information**
**Subject to Protective Orders**

**BY EMAIL**

August 11, 2013
Robert Becher, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017

Re:     *Certain Electronic Devices, Including Wireless Communication Devices, Portable*
        *Music and Data Processing Devices, and Tablet Computers*, **Inv. No. 337-TA-794;**
        *Apple Inc. v. Samsung Elecs. Co. Ltd.*, **No. 11-cv-1846 LHK (PSG)**

Dear Rob:

I have reviewed your August 9 responses to my August 5 letters to you.

As you have acknowledged, Quinn Emanuel attorneys have disclosed highly confidential Apple
and third-party licensing information to scores of Samsung employees on multiple occasions
over the last 18 months, in violation of the Protective Orders in both the 794 Investigation and
the 11-1846 case in the Northern District of California.  I wrote to you seeking more information
about these serious breaches to assist Apple in understanding the extent of Samsung's improper
use of Apple's confidential information. Your response provided absolutely no additional
information.  Instead, the thrust of your response was to attack Apple and its lawyers, suggesting,
for example, that we were being "misleading."  That tactic is both unwarranted and
unproductive.  It is Samsung's Protective Order violations that have created the problem.  Let's
try to focus on them.

Apple needs to know how many people actually received Apple's (and third
parties') confidential information (whether directly or indirectly); how this information was
used; and what were the consequences for Apple.  Accordingly, we need clear answers to our
immediate questions, and we need a comprehensive process to ensure that Apple receives all the
relevant facts.  I will take these in turn below.

### Immediate Factual Questions

Your letters—both what they say, and what they do not say—raise a series of questions to which
Quinn Emanuel should already have the answers.  To ensure clarity as to the information we
need, below I have bolded the questions that we would like you to answer.

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
Page 2

**WILMERHALE**

1.      Although my letters squarely raised the issue of when Quinn Emanuel first learned of the breaches of the Protective Order, your letters are silent on this issue.  In Tom Pease's August 1, 2013 letter to Secretary Barton, he stated:

> On July 2, 2013, Nokia Corporation filed a motion in a co-pending action between Apple and Samsung in the Northern District of California, No. 12-cv-00630 (LHK), alleging that personnel at Samsung had learned confidential terms of the Nokia-Apple license, and requesting a protective order and investigation. In response, Quinn Emanuel immediately began investigating whether any unauthorized disclosures had occurred and the circumstances of any potential disclosure. Based on our investigation, *we learned of certain inadvertent disclosures by Quinn Emanuel to Samsung of information relating to the Nokia-Apple license.*

(Emphasis added.)  Let me ask you directly: **When did Quinn Emanuel learn this?**

2.      In your letters to me, you state that:

> Apple also voluntarily permitted the terms of ten of its licenses, including all of the information regarding its license with Nokia that was inadvertently disclosed, to be viewed by Samsung employees. On February 23, 2012, Apple filed a pleading in the litigation between Apple and Samsung in the Netherlands that attached a spreadsheet listing the terms of many of Apple's licenses with third parties, including its license with Nokia.

In fact, that disclosure was limited—per order of the Dutch court—to ten Samsung employees. **Did Samsung show the Dutch materials to more than ten Samsung employees?**

3.      As you acknowledge, the Dutch disclosure anonymized the license information, such that none of the parties to the licenses was identified.  Your letters suggest that Samsung could have connected the license disclosure to certain public accounts of the terms of the Nokia-Apple license.  But the public accounts of those terms varied.  **Do you concede that Samsung did not have definitive confirmation of the terms of the Nokia-Apple agreement until Quinn Emanuel's disclosure to Samsung?**  If you do not concede this, please explain how Samsung was able to conclusively confirm the Nokia license terms prior to the Quinn Emanuel disclosure to Samsung.

4.      A critical issue is how Samsung used the information once it was disclosed by Quinn Emanuel.  As one example, we need to understand whether Samsung relied on the Nokia-Apple license terms as Samsung framed its own license proposals to Apple and in preparing its submissions to the ITC.  As initial questions on this issue:  **Are there any written communications, either between Quinn Emanuel and Samsung,  within Samsung, or with any third party that discuss the ▮▮▮▮▮▮▮▮▮▮ to Apple and also discuss the Apple-Nokia agreement?  Are there any written communications, again either between Quinn**

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
Page 3

**WILMERHALE**

**Emanuel and Samsung, within Samsung, or with any third party discussing the Apple Nokia agreement and Samsung's** ▮▮▮▮▮▮▮▮▮▮▮▮ **in connection with submissions to the ITC?**  As a starting point, please provide yes-or-no answers to these questions.

5.      You have yet to tell us anything about how the recipients at Samsung used the information.  For example:  **Did any of the Samsung recipients forward the information, either to others at Samsung or third parties?**  If so, please identify these persons.

*Evidentiary Process*

The questions above, while important, will only begin to reveal the full scope of these breaches, and we need to resolve the evidentiary process by which all the facts will be revealed.  Given that the breaches occurred long ago and Quinn Emanuel and Samsung have had ample notice of the breaches, this process must take place on an expedited basis.  We have the following requests:

<u>Log of Communications</u>:  Given that you have had five weeks to investigate the breaches, we presume that you have already created a log of all communications between Quinn Emanuel and Samsung, and within Samsung, that related to the information at issue.  Such log should contain an identification of each and every participant in the e-mail chains identified by Samsung (and any subsequent communications that refer, use, or otherwise relate to the improperly disclosed information).  This would include, without limitation, identification of those participants in the "Samsung ITC" and "Samsung FRAND" distribution lists.  We also expect that you have already determined which recipients had subscribed to the Protective Order in this Investigation as of the dates of such communications.   We request that any log reflect the Protective Order status of each individual identified on the log.

In your letter, you state that you are willing to "prepare a log listing the authors and recipients of any emails sent within Samsung that forwarded or replied to the emails from Quinn Emanuel to Samsung that are listed in Attachment A to Samsung's letter."  This is insufficient.  We are entitled to any documents discussing the confidential information first inappropriately disclosed by those e-mails identified in your August 1 letters, whether those additional documents are replying to those emails, forwarding those emails, or simply discussing that information.

As noted above, we expect that you already have logged such information—and the additional information described above.  If you have, there is no reason for further delay in producing that information.  If you have not, we have greater cause for concern.  Please produce that log **by Wednesday, August 14.**

<u>Privilege Issues</u>:  Although you indicate that you may be willing to produce at least redacted versions of the e-mails that we have requested, your letter expresses concerns about our position regarding waiver of the attorney-client privilege and work product protection.  To address those concerns, we will agree that your production of documents in response to our requests, in and of

<u>**Contains Confidential Business Information Subject to Protective Orders**</u>

Robert Becher, Esq.
Page 4

WilmerHale

itself, will not effect a waiver—although we reserve all rights to argue on other grounds against your assertion of attorney-client privilege and work product protection (and any other privileges).

**<u>Production Requests</u>**:  Given our agreement that production in response to our requests will not itself effect a waiver, please provide the following **by Friday, August 16**:

1.  Production of all e-mails and other communications sent or received since March 24, 2012 by the Samsung recipients of the e-mails listed in Attachment A to your August 1, 2013 letters and any other Samsung employees, to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips.  For example, if the original Samsung recipients forwarded the information to others at Samsung (or third parties), we request copies of such forwarding emails (and any subsequent emails in such email chains).

2.  Production of all e-mails and other communications sent or received by the "Samsung List A and B" employees (as set forth in your August 1, 2013 letters) and any other Samsung employees since March 22, 2013 that relate to the Apple-Nokia license agreement, on the same terms.

3.  Copies of each of the e-mails listed on Attachment A to your August 1, 2013 letters.

4.  Declarations from Seungho Ahn, Seongwoo Kim, Kenneth Korea, Jae Wan Chi, Clayton Kim, and all other Samsung employees who have participated, directly or indirectly, in license negotiations with Apple that describe (a) all communications they have had since March 24, 2012 regarding Apple's licenses with Nokia, Ericsson, Sharp, and Philips—including any statement made by any Samsung employee or representative during negotiations with any third party—including the dates of such discussions and the names of all participants in such discussions; and (b) all communications they have had since March 22, 2013 regarding the Apple-Nokia license agreement—including any statement made by any Samsung employee or representative during negotiations with any third party—including the dates of such discussions and the names of all participants in such discussions.

**<u>Document Preservation:</u>**  Please describe what steps have been taken—and the timing of such steps—to preserve and quarantine (1) the e-mails or other documents containing the confidential information improperly disclosed to Samsung employees, and (2) all Samsung e-mails or other documents that make use of that information, **by Wednesday, August 14**.  To be clear, we expect that Quinn Emanuel and Samsung have taken steps to preserve in a forensically appropriate way (e.g., no loss of metadata) a copy of every communication (between Quinn Emanuel and Samsung, within Samsung, or between Samsung and any third party) that refers, uses, or otherwise relates to the improperly disclosed information.  After ensuring that such

**Contains Confidential Business Information Subject to Protective Orders**

Robert Becher, Esq.
Page 5

**WILMERHALE**

communications have been preserved, we expect that Quinn Emanuel and Samsung have taken steps to quarantine these communications by asking the Samsung employees that received or sent such communications to delete them.  Such destruction should only have occurred after copies of each such communication had been identified and properly preserved.

**Depositions**:  Please produce witnesses for a 30(b)(6) deposition of Quinn Emanuel and a 30(b)(6) deposition of Samsung regarding the disclosures and any subsequent use of the disclosed information, **by Friday, August 23.**  Your letter states that such a deposition would be overly "intrusive," but depositions are necessary to obtain all the relevant facts regarding, for example, whether and how the improperly disclosed information was subsequently used in oral communications that are not reflected in the written record.

**Notification of Affected Parties**:  We ask that Quinn Emanuel and Samsung notify all affected parties of the admitted unauthorized disclosures.  Such parties would include Nokia, Ericsson, Philips, and Siemens.   Please confirm that you will make such notification **by Wednesday, August 14.**

* * *

We are ready to meet and confer tomorrow, August 12. We are also prepared to promptly move for relief and other sanctions at the Commission and in the Northern District of California.  Can you please let us know when you are available to discuss?

Sincerely yours,

/s/ William F. Lee

William F. Lee