# EXHIBIT E
# FILED UNDER SEAL

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3182**

WRITER'S INTERNET ADDRESS
**robertbecher@quinnemanuel.com**

August 16, 2013

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**CONTAINS INFORMATION DESIGNATED**
**HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY**

<u>**VIA EMAIL**</u>

William F. Lee, Esq.
Wilmer Cutler Pickering Hale & Dorr
60 State Street
Boston, Massachusetts 02109

Re:    Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers, Investigation No. 337-TA-794; *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-cv-1846 LHK (PSG)

Dear Bill:

I write in response to your letter of August 11, 2013. I had a productive conversation with Joe Mueller and Jim Quarles. As I mentioned to them, we are willing to work with you to try to address your concerns and find a path forward that is acceptable to both of us. I am also addressing some of the points raised in Joe Mueller's email of yesterday but I have not had adequate time to respond to all of them and will need to address the remainder in a separate letter.

I will first respond to the specific questions posed in your letter. Please note that my answers are based on the results of our investigation so far and it is ongoing. You asked when Quinn Emanuel became aware of the inadvertent disclosure of licensing information. The earliest date Quinn Emanuel became aware of any of the inadvertent disclosures related to the public interest briefing in Investigation No. 337-TA-794 that are mentioned in my August 1, 2013 letter to you and Tom Pease's August 1, 2013 letter to Secretary Barton was July 13, 2013.

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**

With respect to my August 1 letter regarding the inadvertent disclosure of a partially redacted expert report in the NDCAL I action, except for the December 21, 2012 disclosure mentioned below, Quinn Emanuel first became aware of one of the inadvertent disclosures listed in the letter on July 2, 2013.  After July 2, 2013, Quinn Emanuel investigated and subsequently discovered some other instances when the incompletely redacted Teece report was inadvertently disclosed.

On December 21, 2012, a Quinn Emanuel associate sent the incompletely redacted Teece report to a Samsung employee.  Another associate realized that it contained references to licensing terms that had not been redacted.  The lawyer who sent the email notified the Samsung employee not to look at the report.  The employee confirmed that he would not look at the report and would delete the email.  The attorney subsequently sent another email with a report that contained complete redactions.  Neither the lawyer nor others at Quinn Emanuel realized at the time that the incompletely redacted report had previously been disclosed to Samsung.

You next inquire whether the spreadsheet from the action in the Netherlands was shared with more than ten individuals at Samsung, citing to my statement that the spreadsheet was shared with Samsung employees.  But my letter only stated it was shared with 9 individuals at Samsung.  I wrote: "Apple authorized Samsung's outside counsel to view this spreadsheet and also permitted nine Samsung employees to view the spreadsheet.  The nine employees expressly permitted to see the spreadsheet included Jae Wan Chi, Executive Vice President, Licensing, who Apple identifies in its chronology as someone directly involved in licensing discussions with Apple (August 8 Letter, at 6), and former Licensing Director, Clayton Kim, who was also directly involved in negotiations with Apple."  As to your question regarding whether Samsung had definitive confirmation of the terms of the Nokia-Apple agreement based on the disclosure in the Netherlands, we are in the process of investigating and will provide an answer.

You next ask whether we are aware of communications that refer to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  As we have explained in detail in prior correspondence, we fail to see the relevance of whether emails contain both of these figures.  Nonetheless, the outlines and draft of Samsung's Initial Submission in Response to the Commission's March 13, 2013 Notice on Remedy and the Public Interest reference both of these figures, as does the final pleading Samsung submitted to the Commission.  As is apparent from the final response filed with the Commission, the Nokia license is referred to as a point of comparison for Samsung's offer, rather than serving as a basis for calculating the Samsung offer to Apple.

You also ask whether the inadvertently disclosed information was forwarded by Samsung recipients.  We have already disclosed some emails sent by Samsung to persons at law firms others than Quinn Emanuel in an attachment to our August 1 letter regarding the 794 investigation, but we have not yet reviewed all Samsung emails on this subject.  As previously offered, we will "prepare a log listing the authors and recipients of any emails sent within Samsung that forwarded or replied to the emails from Quinn Emanuel to Samsung that are listed in Attachment A to Samsung's letter."  We do not believe the emails themselves are discoverable because they are protected by the attorney-client privilege and attorney work product doctrine. But this log should allow you to gain substantially more insight into the dissemination and any use of the inadvertently disclosed information.  We are also willing to agree to conduct

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**

reasonable searches to locate any emails discussing the inadvertently disclosed information regarding the license between Apple and Nokia and to log emails that fit within these parameters. We are willing to agree to work in good faith to complete this process within 45 days.  While we are willing to search for Samsung emails relating to the inadvertently disclosed information, your request for all emails regarding the license agreements referenced in the inadvertent disclosures is overreaching.  As we discussed on our call, we also believe that depositions are not warranted. We are willing to discuss ways you can be assured that the information we are providing to you is accurate and verified and are considering your proposal of yesterday.

As to the emails regarding the inadvertent disclosures that we have identified so far, we will transmit redacted copies in a separate email based on your confirmation that you will not claim that our provision of redacted copies waives the attorney-client privilege or attorney work product protection with respect to the emails.  However, we cannot provide the complete content of these emails because the redacted portions contain information protected by the attorney-client privilege and attorney-client work product doctrine.  I can confirm that the body of the redacted emails we are providing does not contain any discussion of Apple's licenses with Nokia, Ericsson, Sharp or Sharp-Philips.

Finally, turning to your request regarding the Melin declaration, given the declaration concerns negotiations between Samsung and Nokia and contains information that is covered by an NDA between Samsung and Nokia, the request is intrusive and unwarranted.  Moreover, your request has the potential to interfere with negotiations between the two companies.

Very truly yours,

Robert J. Becher

RJB:wp

02198.51855/5472847.1