1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone: (415) 875-6600
4  Facsimile: (415) 875-6700

5  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
6  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
7  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065-2139
8  Telephone:     (650) 801-5000
   Facsimile:     (650) 801-5100
9
   William C. Price (Bar No. 108542)
10 williamprice@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
11 michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
12 Los Angeles, California 90017
   Telephone: (213) 443-3000
13 Facsimile: (213) 443-3100

14 Attorneys for SAMSUNG ELECTRONICS CO.,
   LTD., SAMSUNG ELECTRONICS AMERICA,
15 INC. and SAMSUNG
   TELECOMMUNICATIONS AMERICA, LLC

16

17                    UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| 19  APPLE INC., a California corporation, | CASE NOS. 5:11-cv-01846-LHK (PSG) |
| 20         Plaintiff, | |
| 21         vs. | **SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO TAKE DISCOVERY** |
| 22  SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG | |
| 23  ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG | **UNREDACTED VERSION OF THE DOCUMENT SOUGHT TO BE SEALED** |
| 24  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 25         Defendant. | |

26

27

28

**PRELIMINARY STATEMENT**

The thrust of Nokia and Apple's oppositions is that the discovery Samsung requests is unnecessary because it will not answer *their* questions about the inadvertent disclosures. But of course, that is not the point of the discovery Samsung seeks. Apple and Nokia already have been granted extensive discovery to investigate their questions. Samsung only requests that, if the Court is inclined to further consider Apple's and Nokia's sanctions demands, then Samsung should be given the opportunity to demonstrate that the inadvertent disclosures at issue concerned information which was no longer confidential (and which Apple and Nokia did not treat it as confidential) and caused no harm to Apple or Nokia. It seeks no more than limited discovery necessary to defend itself.

Samsung recognizes that the new damages trial is scheduled to begin in little more than a week, and that satellite litigation is a distraction for the parties and the Court. Samsung believes that in light of the depositions and disclosures to date, it is appropriate for the Court to conclude these proceedings without any imposition of sanctions. There has been no showing of any willful wrongdoing or misuse of confidential information, or any prejudice to Apple or Nokia. Quite the contrary, the record evidence suggests that, for Nokia, the goal of this investigation has been more closely related to future litigation and/or arbitration than past misconduct.[1] Certainly, that would explain why Nokia did not voice any complaint about this issue for nearly a month after the meeting between Dr. Ahn and Mr. Melin, despite repeated communications and interactions with Samsung during this period. It might also explain why, in many of the depositions of Samsung personnel last month, the focus was not even on the subject of these motions, but on the negotiations and potential future disputes between Nokia and Samsung.

Apple, for its part, has furnished no evidence of actual harm, and, after an extensive fishing expedition, has seen each of its evolving theories as to how it *might* have been harmed completely

---

[1] On November 4, 2013, after this motion was filed, Nokia and Samsung agreed to submit their licensing dispute to arbitration. Nevertheless, Nokia has not withdrawn its prior suggestions that it intends to proceed further in this Court on the Protective Order issues that it and Apple have raised.

1  undercut by the evidence.  Apple has entirely dropped its prior theory that this inadvertent
2  disclosure had affected Samsung's licensing proposals to it—after the undisputed evidence of the
3  timing and content of those negotiations objectively showed Apple's claim was
4  implausible.  Similarly, it is clear that the Teece Report had absolutely no impact on the
5  proceedings in the ITC, contrary to Apple's urgings at least twice during the October 22 hearing,
6  (10/22/13 Hearing Tr. at 8-9 & 74-77), because the Apple-Nokia license was separately produced
7  in that litigation and because, even to this day, Apple identifies no ruling of the ITC that relied on
8  that license.  Whatever claims Apple has regarding the ITC proceedings should be (and are
9  being) made there.

## ARGUMENT

Neither Apple nor Nokia dispute that Samsung must only demonstrate good cause for the discovery it seeks.  That standard is easily satisfied here because:  (1) the discovery Samsung seeks is relevant to the allegations and extent of any violation of the Protective Order and what the appropriate sanction should be, if any; (2) the limited requested discovery would place only a minimal burden on Apple and Nokia, especially in comparison to the extensive discovery they both sought and received from Samsung; (3) Samsung could not have foreseen the need for this discovery before the close of discovery, which neither Apple nor Nokia dispute; and (4) while further discovery may be a distraction, it will not otherwise impact the upcoming damages retrial, which is also not disputed.  Good cause having been show, and in the event that these Protective Order proceedings continue, the Court should grant Samsung's Motion.

### I.   THE REQUESTED DISCOVERY IS RELEVANT TO RESOLUTION OF THE SANCTIONS DEMAND.

Apple and Nokia argue that discovery from them is not warranted because they, incredibly, have no relevant information.  Both claim that it makes no difference whether or how widely they had previously publicly disseminated the license terms, and go so far as to claim the issue of whether they have been harmed is simply irrelevant.  (Apple Brief at 1-3 & 6; Nokia Brief at 4-7 & 13.)  The law is to the contrary.  The limited discovery Samsung seeks is highly relevant to the accusations that Apple and Nokia have levied.

**A.     The Requested Discovery Is Relevant to Nokia's and Apple's Allegations that the Protective Order Has Been Violated.**

Nokia and Apple argue that the discovery Samsung requests is not relevant to the scope of any violations.    According to Apple and Nokia, whether the Apple-Nokia license is actually confidential is irrelevant.    But, at best, the Protective Order is ambiguous as to whether the information at issue should be considered "confidential."    While Apple argues that Discovery Material shall be "treated as designated" until a challenge to its confidentiality has been resolved, the Protective Order by its terms does not "restrict in any way the use or disclosure of Discovery Material by a Receiving Party . . . that is or has become publicly known through no fault of the Receiving Party [or] previously produced, disclosed and/or provided by the Producing Party . . . without an obligation of confidentiality and not by inadvertence or mistake."    (Dkt. 687 at 7.) Such ambiguity should be resolved in Samsung's favor if sanctions are to be imposed.    *See Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) (contempt must be based on a clear and unambiguous order); *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995) (ambiguities in court order are resolved in favor of the alleged contemnor).

Nor, contrary to Apple's argument (Apple Brief at 1), must Samsung prove conclusively that every term of the Apple-Nokia license has been publicly disclosed to demonstrate good cause for discovery.    Several news sources reported the terms of the Apple-Nokia license.    Indeed, it was from such public sources that Dr. Ahn testified he learned of the terms of the Apple-Nokia license that he discussed with Mr. Melin at the June 4 meeting.    (Mot. at 4 n.4.)    Apple notes that none of these news sources reported that they gained this information from Apple or Nokia as a result of a leak and that some news sources estimated the terms incorrectly.    But that is exactly Samsung's point and precisely why Samsung needs the requested discovery.    To determine what role Apple and Nokia played in disseminating the information, what steps they took to address the

"leaks," and what harm they suffered as a result.[2]  Notably, neither Nokia nor Apple have presented evidence that no public disclosure or leaks from them have occurred.

Samsung has also shown that Apple disclosed the terms of the Apple-Nokia license to numerous Samsung employees in connection with litigation in the Netherlands.  (Mot. at 3.) Apple argues that this disclosure was pursuant to court order, limited to nine Samsung employees (some of whom did not recall it), and for use only in that litigation.  (Apple Brief at 4-5.)  The Netherlands disclosure, however, shows that this information has been previously shared with persons in the industry outside Apple and Nokia—including several of the recipients of the inadvertent disclosure at issue here—with no claim of injury to Apple.  (*See, e.g*., Dkt. 2557, Selwyn Decl., Ex. 4 (Daniel Shim Dep. Tr. 222:21-24).)  Samsung is entitled to know to whom else that information has been disclosed and under what conditions.

Contrary to Nokia's argument (Nokia Brief at 3-4), discovery related to the June 4 licensing meeting between Samsung and Nokia's Mr. Melin and Ms. Hakoranta is relevant to Nokia's and Apple's allegations.  Dr. Ahn testified that, at that meeting, Mr. Melin disclosed what he claimed a company "comparable" to Samsung was paying for a license to Nokia's patents, which Dr. Ahn suggested and Mr. Melin did not deny, was Apple.  (Mot. at 4.)  This exchange demonstrates that Nokia willingly disclosed to Samsung what it claimed were the terms of the Apple-Nokia license when it served its purposes in licensing negotiations.  There is therefore good cause to depose Mr. Melin (as well as Ms. Hakoranta, who was also present at the meeting, but has never submitted any declaration or otherwise given her account of the meeting) and to order Nokia to produce its licensing PowerPoint presentation to Samsung to confirm these events, which too go directly to the confidentiality of the information as well as any claim of prejudice.

Apple and Nokia further argue that Samsung's failure to seek discovery regarding the Sharp, Ericsson and Phillips licenses demonstrates that the requested discovery would have no

---

[2]  Nor, contrary to Apple's position, must Samsung prove that Apple or Nokia disclosed the terms of the settlement to *every* news source.  (Apple Brief at 2.)  A single such disclosure precludes treating the license as confidential under the Protective Order.  (Dkt. 687 at 7.)

impact on Apple's motion for sanctions based on those inadvertent disclosures.  But, in fact, Samsung's discovery requests to Apple cover those three licenses as well.  (*See* Becher Decl., Ex. 2 (Request for Production No. 4 seeking documents reflecting or related to Apple's disclosure of Apple-Ericsson, Apple-Philips, or Apple-Sharp license agreements to any third party).)  And, notably, there has been no suggestion, much less any showing, of improper use of the terms of those licenses.

Apple attempts to distinguish *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-2066, 2012 WL 1144290, at *4 (N.D. Cal. Apr. 4, 2012), on the ground that there was "no direct disclosure of designated information from counsel to the client" in that case.  (Apple Brief at 5 n.2.)  However, that mischaracterizes what transpired.  In *Kilopass*, counsel issued subpoenas to individuals listed on the purportedly confidential customer list, and then provided their client with the subpoena list, thus giving the client the names from the customer list even though counsel did not provide the customer list itself.  *Id.* at *1-2.  Similarly here, Quinn Emanuel inadvertently provided Samsung with an expert damages report that contained information from the Apple-Nokia license, but it did not provide the license itself.  *Kilopass*'s central holding—that a plaintiff can be found in substantial compliance with a protective order where the movant's own activity contradicted its contention that its information is confidential—remains true, and squarely applicable here.  Precedent thus further supports Samsung's request for discovery here.

**B.     Discovery Is Relevant to the Appropriate Sanction, if Any.**

Discovery is additionally relevant to the particular sanction, if any, that is warranted.  Apple and Nokia argue that only evidence from *Samsung* is relevant to the harm Apple or Nokia may have suffered, and even that any harm the complaining parties may (or may not) have suffered is wholly irrelevant.  (Apple Brief at 5-6; Nokia Brief at 13.)  That argument makes little sense.  Black letter law from the civil contempt context is directly contrary, and there is no reason a different standard should apply here.  Sanctions are awarded either to compel or coerce obedience with a court order and/or to "compensate the contemnor's adversary for the injuries resulting from the contemnor's noncompliance."  *Ahearn ex rel. N.L.R.B. Int'l Longshore and*

*Warehouse Union*, 721 F.3d 1122, 1131 (9th Cir. 2013). Samsung is not resisting any court order and, therefore, any sanction must be designed to compensate Apple or Nokia.

Neither Apple nor Nokia have presented any evidence of harm from the alleged violation. Because Samsung is not resisting any court order, this should put an end to any possible suggestion of sanctions for contempt by Apple. Nevertheless, given that both Nokia and Apple have expressed intentions to pursue such sanctions, Samsung should be permitted to take this limited discovery so that it can address the issue of Apple's and Nokia's lack of harm. The discovery Samsung seeks is relevant to that issue.

### C. Samsung Is Not Judicially Estopped From Contesting the Confidentiality of the Apple-Nokia License

Nokia argues that Samsung is judicially estopped from claiming that the Apple-Nokia license is not confidential. (Nokia Brief at 7.) The very case Nokia cites, *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000), reverses the application of judicial estoppel and demonstrates why it is not appropriate here. *Wyler Summit* states that judicial estoppel requires "a knowing antecedent misrepresentation" that the party intends to contradict. *Id*. at 1190. The doctrine requires that the party's position be "clearly inconsistent" with its prior representation, that the party previously "succeeded in persuading a court to accept that party's earlier position," and that the party would otherwise obtain an "unfair advantage or impose an unfair detriment." *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 783 (9th Cir. 2001)(*citing New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1815 (2001)). Nokia has not come close to satisfying any of these elements.

Nokia's entire judicial estoppel position is based on a two sentence filing stating, in its entirety, "On July 25, 2012, Nokia Corporation filed an administrative motion to file under seal Trial Exhibits 77 and 630. Samsung does not oppose this motion." (Dkt. 1338; Nokia Brief at 2.) To argue that a statement that Samsung takes no position on the prior sealing of this license was a "misrepresentation" or "a clearly inconsistent" position with seeking discovery on whether that agreement has been publicly disclosed and whether such disclosure has harmed Nokia borders on the absurd. A statement of no-opposition is not a representation or position of any kind, much

1  less one that the Court relied upon.   It is a statement of *no* position.   It is not and was not within
2  Samsung's ability or obligation to investigate and police each of Nokia's attempts to seal
3  information it contended was confidential.   It is therefore unsurprising that Nokia fails to cite any
4  relevant authority supporting such a far-flung argument.   Furthermore, as the Court will recall,
5  Mr. Melin's declaration is silent on the terms that he claims Dr. Ahn recited at the June 4 meeting
6  and that he claims are supposedly confidential.   Without any connection between the terms at
7  issue and any representation by Samsung as to those terms, Nokia's judicial estoppels argument
8  necessarily fails for this reason as well.

9  **II.   THE LIMITED DISCOVERY SAMSUNG SEEKS IS NOT UNDULY BURDENSOME**

11         Nokia claims that the discovery Samsung has requested is unduly burdensome.   In its
12  stead, Nokia suggests that it fly its officers to San Jose to testify live at a public court hearing.
13  (Nokia Brief at 12.)   To be clear, Samsung has requested only limited document production,
14  including production of the licensing PowerPoint presentation to Samsung, a deposition of the two
15  Nokia employees at the licensing meeting with Samsung, and a Rule 30(b)(6) deposition.   This
16  discovery is far less than what Nokia has itself requested and received from Samsung and is in
17  proportion to the seriousness of Nokia's allegations.   Despite Samsung's repeated requests and
18  now in opposition, Nokia has failed to even produce or file the PowerPoint in question.

19         Nokia argues that the Court does not have the power to order the depositions of Mr. Melin
20  and Ms. Hakoranta without some form of process such as a subpoena.   Nokia overlooks that
21  Samsung submitted draft subpoenas with its motion, which can issue the moment the Court grants
22  Samsung's motion, if deemed necessary.   Likewise, Samsung will complete the necessary forms
23  and comply with all requirements to serve the subpoenas, if deemed necessary by the Court,
24  though in light of Nokia's acquiescence in the Court's authority to order attendance of its
25  employees at a hearing, this should not be required.

26         Nokia argues that it is unduly burdensome for it to transport witnesses to this district for
27  deposition.   (Nokia Brief at 12.)   Yet, Samsung is more than willing to travel to any reasonable
28  location of Nokia's choosing for these depositions.   Further, Nokia's objection is belied by its

stated willingness to voluntarily bring the necessary individuals to California to testify at an evidentiary hearing. (*See id*. at 4.) Nokia cannot credibly claim that a deposition in any reasonable location of Nokia's choosing is unduly burdensome, but traveling to San Jose to testify at a hearing is not. Such an inconsistent argument and Nokia's refusal to produce the PowerPoint or provide Mr. Melin for a deposition should be considered in weighing the credibility of its claims. To the extent Nokia is serious about its suggestion of an evidentiary hearing, it should have made that request long ago, rather than seeking multiple depositions of Samsung's employees. Nokia should be obliged to provide the same kind of discovery—albeit far more limited in scope—as it has sought and received from Samsung, whether or not this Court ultimately decides to have an evidentiary hearing.

### III. THE STIPULATION BETWEEN NOKIA AND SAMSUNG DOES NOT PRECLUDE DISCOVERY FROM NOKIA

Nokia claims that Samsung's request for limited discovery is inappropriate in light of the Stipulated Order in the NDCA II case, and that there was a deal that Samsung would not seek further discovery from Nokia as part of the Stipulated Order. There were no such deal.

The actual agreement with Nokia is expressly set forth in the Stipulation and the provision is self-explanatory. Paragraph 2 of Stipulated Order states:

> Samsung hereby withdraws its request for additional Nokia confidential data in this case. Samsung also agrees not to use in any legal or business matter any Nokia Confidential Business Information ("CBI") designated as Confidential or higher under the protective orders of the following cases: (i) Apple Inc. v. Samsung Elecs. Co. Ltd., No. 11-cv- 1846 LHK (PSG) (the "NDCA I case"), (ii) Apple Inc. v. Samsung Elecs. Co. Ltd., No. 12-cv-00630 LHK (PSG) (the "NDCA II case"), and (iii) Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers, Investigation No. 337-TA-794 ("The 794 ITC case"), with the only exception being that Samsung may continue to rely on the Apple/Nokia agreement in Samsung's defense against the permanent injunction on the '381 patent sought by Apple in the NDCA I case, including any appeals on that issue.

(*See* Dkt. 785 at ¶ 2 in case no. 12-cv-630.)

This provision in the Stipulated Order addressed the two specific issues raised by Nokia at the time it was negotiated. First, at the time of Nokia's motion, Samsung was seeking additional discovery from Nokia in NDCA II pursuant to a Samsung subpoena. (Smith Dec. Ex. A.)

1  Apple had itself stated that it intended to produce documents related to the license, including
2  negotiation correspondence unless Nokia moved for a protective order.   (Smith Dec. Ex. B.)
3  The first sentence of Paragraph 2 addresses this issue.   As part of the Stipulation, Samsung
4  withdrew its request for additional confidential information in NDCA II.   Nokia argues that
5  Samsung cannot now make a renewed request for the same type of discovery that it explicitly
6  withdrew.   But Samsung's current discovery requests are completely unrelated to the requests that
7  it withdrew in NDCA II pursuant to the Stipulated Order.   The discovery requests that Samsung
8  withdrew pursuant to the Stipulated Order related to two items:   (1) Subpoena for deposition to
9  Nokia for Nokia 5140 User Guide and the earliest date upon which the Nokia 5140 User Guide
10 was published; and (2) documents relating to the licensing negotiation between Apple and Nokia,
11 which may have been considered by Samsung's damages expert in NDCA II in his expert
12 report.   The current discovery sought by Samsung from Nokia is completely unrelated.   For
13 example, Samsung's current discovery requests primarily relate to disclosure of any term of the
14 Apple-Nokia license agreement to Samsung, media outlets, courts, tribunals, government agencies,
15 or third parties, negotiation between Samsung and Nokia relating to the Samsung-Nokia license,
16 and materials supporting Nokia's allegations of harm it suffered as a result of the inadvertent
17 disclosure of Nokia CBI to Samsung.   Nokia makes no attempt to show that Samsung's current
18 discovery requests are the same as or even similar to the discovery requests that were withdrawn
19 pursuant to the Stipulated Order because it cannot.
20        Second, Nokia asked that Samsung agree not to use the previously produced Nokia CBI in
21 the pending matters, and Samsung agreed not use the previously produced Nokia CBI in NDCA I,
22 NDCA II and the '794 ITC cases, with the exception of Samsung's defense against the permanent
23 injunction on the '381 patent sought by Apple in the NDCA I case, including any appeals on that
24 issue.   At no point did Samsung agree to waive its right to defend itself against sanctions, and
25 Nokia points to no language or other support for its claim otherwise.
26        Finally, in negotiating the Stipulation, Nokia never once suggested that it would bar the
27 discovery at issue here.   If that issue had been raised, Nokia would be able to point to
28 correspondence or communication with Samsung's counsel to that effect, which it has not

1  done.   Samsung's agreement not to rely on Nokia's produced CBI in Samsung's cases with Apple
2  is irrelevant to its pending discovery requests in these proceedings concerning the Protective Order.
3  Samsung is not attempting to renege on the Stipulation, and the authority Nokia cites is therefore
4  inapposite.   Indeed, many of Samsung's discovery requests do not even arguably seek Nokia
5  CBI; so even if Nokia's argument that the Stipulated Order precludes Samsung's discovery of
6  Nokia CBI were accepted, it would not bar the discovery sought here.   Samsung seeks limited
7  discovery to defend itself—but only if this Court is inclined to consider the sanctions Apple and
8  Nokia have announced they intend to seek.

## CONCLUSION

For the foregoing reasons, Samsung respectfully requests that Samsung's motion for leave to propound limited discovery upon Apple and Nokia be granted in the event that this Court does not deny sanctions and conclude these Protective Order proceedings.

DATED:   November 4, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Victoria F. Maroulis*
   Charles K. Verhoeven
   Kevin P.B. Johnson
   Victoria F. Maroulis
   William C. Price
   Michael T. Zeller

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC