1
RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
2
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
3
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
4
Menlo Park, CA 94025
Telephone:     650-838-2000
5
Facsimile:      650-838-2001

6
PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
7
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
8
ALSTON & BIRD LLP
1201 West Peachtree Street
9
Atlanta, GA 30309
Telephone:     404-881-7000
10
Facsimile:      404-881-7777

11
Attorneys for NOKIA CORPORATION

12

13
UNITED STATES DISTRICT COURT

14
FOR THE NORTHERN DISTRICT OF CALIFORNIA

15
SAN JOSE DIVISION

16
**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

17

18
APPLE, INC., a California corporation,

19
            Plaintiff,

20
      v.

21
SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation, SAMSUNG
22
ELECTRONICS AMERICA, INC., a New York
corporation; SAMSUNG
23
TELECOMMUNICATIONS AMERICA, LLC,
a Delaware limited liability company,
24
            Defendants.

25

26

27

28

Case No.:  5:11-CV-01846-LHK (PSG)

**NOKIA'S SUPPLEMENTAL BRIEF IN SUPPORT OF SANCTIONS AGAINST SAMSUNG AND QUINN EMANUEL**

Samsung and Quinn Emanuel have tried desperately to litigate their way out of their wrongdoing. The most-recent attempts include inaccurate and misleading arguments as to testimony and a flat denial of this Court's authority to police protective-order violations.  The partial record Nokia has seen demonstrates that even if each dissemination of the improperly redacted Teece Report was just grossly negligent, the protective order violations after the December 2012 dissemination were willful.  In December 2012, Quinn Emanuel and Samsung admit they actually knew that the redacted Teece Report, which had been circulated for months, improperly revealed Nokia's confidential business information ("CBI"). Yet Quinn Emanuel willfully ignored this knowledge, failed to investigate, failed to inform, and failed to remediate, all while continuing violations mounted. Samsung – also with full knowledge after being informed by Quinn Emanuel – took no steps to investigate and continued to willfully transmit the improperly redacted Teece Report internally *and eventually back to Quinn Emanuel*.   The willful violations culminated when Samsung intentionally used Nokia's CBI to achieve a commercial advantage in their license negotiation.

As explained below, the evidence of Samsung's wrongful use of Nokia's CBI, including both the declaration and testimony of Paul Melin, is clear and consistent.  Even if the conduct were only the grossly negligent failure to redact, this Court has the authority under established Ninth Circuit law to issue the requested sanctions using both Federal Rule of Civil Procedure 37 and its inherent powers.[1] The proceedings have shown that Quinn Emanuel and Samsung's conduct went far beyond gross negligence, however, and the sanctions of the Court should reflect that.

I.       **Paul Melin's Testimony Both Supports his Previous Declaration and Supports the Award of Sanctions for Samsung's June 4 Use of Nokia CBI**

Mr. Melin's testimony about the June 4 meeting forced Samsung and Quinn Emanuel to report their extensive and long-standing protective-order violations. It revealed that Samsung had access to Nokia's CBI, which prompted Nokia to enter this case to secure a protective order.  Had Mr. Melin not learned about the improper disclosures, it is highly likely that Samsung would still have the ability to misuse Nokia's CBI in secret and with impunity to this day.  Samsung does not deny that Mr. Melin

---

[1]  Nokia reiterates that although Samsung and Quinn Emanuel continue to refer to the grossly negligent failure to redact as "inadvertent," Nokia has been denied access to the relevant documents to make a determination and, if appropriate, argue that the failure was willful.

1   was correct that outside counsel disclosed Nokia's CBI to Samsung during litigation; Samsung instead
2   distracts the Court from this simple truth by attacking Mr. Melin.

### A.   Samsung Misconstrues and Selectively Quotes Mr. Melin's Deposition Testimony to Attempt to Show Inconsistency Where None Exists

In the December 2, 2013 hearing, Samsung argued that Mr. Melin's deposition testimony did not match his declaration.  Samsung argued in briefing that Mr. Melin's declaration is "factually inaccurate and based only on erroneous conjectures" (Dkt. No. 2835-3 at 15).  As an example, Samsung argued that while Mr. Melin's declaration said that Dr. Ahn told him that he knew the terms of the Nokia-Apple license, Mr. Melin's deposition testimony was that Dr. Ahn said he only had an "idea" of the terms of the license (Dec. 9, 2013 Hr'g Tr. at 26:15-28:1).  But Samsung created this misleading appearance of inconsistency purely by selective quotation.  Mr. Melin's deposition testimony completely supports his declaration.  Further, his testimony under extensive questioning from Samsung provided additional support and context for his testimony about Dr. Ahn's statements.[2]

First, Mr. Melin's declaration states that Dr. Ahn said that he had been told of the financial terms of the Nokia-Apple license.  Mr. Melin's deposition testimony expands on this point, reporting two different sets of statements that Dr. Ahn made about the license.  Before the first break in the negotiation session, Dr. Ahn told Mr. Melin and Ms. Hakoranta that he had an idea of the Nokia-Apple license terms (Melin Tr. at 143:16 ("Yes, we had introductions and Dr. Ahn made his offer.  He explained the financial terms that he was offering and said that – that he has done an extensive analysis of – of all the issues pertaining to the situation – and that he has an idea of what – what Apple pays to Nokia. . .")).  Samsung would have the Court believe that this is the extent of the testimony.  It is not. Mr. Melin also testified about the *second time* that Dr. Ahn raised the topic of the Nokia-Apple license, explaining that Dr. Ahn said "that he knows what Apple is paying to Nokia, that – that Samsung is in – in many litigations and that – that these license agreements are produced in connection of those litigations.. . ." (Melin Tr. at 172:24-173:4).  When asked why Mr. Melin had written his declaration in the passive voice, Mr. Melin explained, "[the declaration] is written in the passive voice because Dr.

---

[2]   Mr. Melin's complete deposition is cited herein as "Melin Tr." (Dkt. No. 2838-7), and Ms. Hakoranta's complete deposition is cited herein as "Hakoranta Tr." (Dkt. No. 2838-10).

1    Ahn did not specifically tell who had told him personally of these financial terms.  He said that he was

2    aware of them.  He had been told, but he did not say who specifically told him personally."  ( *Id.* at

3    231:25-232:5).  Mr. Melin made it abundantly clear that "what [he wrote] in paragraph 8 refer[red] to

4    what happened in the second session in the meeting," not the first (*Id.* at 241:13-14).   Tellingly,

5    counsel for Samsung referenced *only* the testimony about the first session.

6    Second, Mr. Melin's declaration recounted Dr. Ahn's statement that the license terms had been

7    "received by Samsung's attorneys in the course of litigation" (630 Dkt. No. 647, Decl. of Paul Melin ¶

8    8).  Once again, Mr. Melin's answers were wholly consistent when he testified that Dr. Ahn said that

9    the terms "had been produced in connection of Samsung's litigations to outside counsel" (Melin Tr. at

10   60:1-3).  Ms. Hakoranta's deposition also confirms that Dr. Ahn referenced litigation when explaining

11   his source of the license terms (Hakoranta Tr. at 19:16-19 ("[he] stated that there's a lot of litigation

12   going and all information leaks"); *id.* at 23:15-16 ("He definitely talked about a lot of litigation")).

13   Third, Mr. Melin's declaration said that Dr. Ahn communicated that Samsung attorneys "had

14   provided Samsung's in-house team with the terms" (630 Dkt. No. 647, Decl. of Paul Melin ¶ 8).

15   Samsung attempts to contrast that statement with Mr. Melin's testimony that "Dr. Ahn did not

16   specifically state whether this information was told to him personally or to his team.'"  (Melin Tr. at

17   236:14-16).  As a starting point, Samsung again selectively quotes the testimony, which actually states

18   that Dr. Ahn "did not specifically state whether this information was told to him personally *or to his*

19   *team and to him by his team*" (Melin. Tr. at 236:14-17 (emphasis added)).  The additional language

20   makes clear that Mr. Melin said that Dr. Ahn did not represent that his outside counsel communicated

21   the information directly to him.  But it is clear, just as Mr. Melin's declaration states, that Dr. Ahn said

22   that Samsung attorneys had provided Samsung's in-house team with the terms.[3]

23   Samsung also claims that Mr. Melin's testimony is consistent with the idea that Dr. Ahn "never

24   said at the June 4 meeting that Apple had produced the Apple-Nokia license in its litigation with

25

26   [3]  "My recollection is that Dr. Ahn used the words of – of explaining first what was referred to by their
     first part of the sentence, that the – the agreement had been produced to Samsung's attorneys in the
27   course of litigation.   Then he explained that . . . of course that information is supposed to be
     confidential, but all information leaks. And – and that was all in the context of an explanation where he
28   – he stated that he has been made aware of the terms and – and clearly the Samsung team was aware of
     the terms." (Melin Tr. at 236:9-13).

1   Samsung" (Dkt. No. 2835-3 at 15).  That is accurate insofar as Nokia did not know exactly which

2   outside counsel disclosed Nokia's CBI to Dr. Ahn – because Samsung and Quinn Emanuel had yet to

3   notify Nokia about the disclosures – but it also ignores Mr. Melin's testimony that Dr. Ahn

4   communicated that the terms "had been produced in connection of Samsung's litigations to outside

5   counsel" (Melin Tr. at 60:1-3).  Samsung and Quinn Emanuel's tactics echo those of Cardinal

6   Richelieu: "If you give me six lines written by the hand of the most honest of men, I will find

7   something in them which will hang him."[4]

**B.   Mr. Melin's Testimony Proves Samsung's Use of Nokia-Apple License Information**

9   It is crucial to note that Samsung does not even attempt to raise issue with the majority of Mr.

10  Melin's testimony.  Mr. Melin wrote in his declaration and testified unequivocally to Dr. Ahn's crucial

11  statement that "all information leaks." (630 Dkt. No. 647, Decl. of Paul Melin ¶ 8).  Mr. Melin testified

12  that Dr. Ahn said "such information is supposed to be confidential, but all information leaks" and

13  "while they are supposed to remain confidential, all information leaks; those were the specific words I

14  very vividly remember him using.  'All information leaks.'" (Melin Tr. at 173:4-7, 60:3-4).  Further,

15  Mr. Melin testified that Dr. Ahn did in fact know the crucial financial terms of the Nokia-Apple

16  license.  "He just said, unprompted, that – that – that ██████████████████████

17  ████████████████████████████████  So he clearly indicated

18  that not only did he know the effect or the – the general amounts of the Nokia license agreement. He

19  even knew the structure ████████████████████. . ." (Melin Tr. at 174:23-

20  175:6) (emphasis added).  Samsung's mischaracterization and incomplete citations distract the court

21  from the unassailable truth – Nokia walked out of the June 4, 2013 meeting convinced that Samsung

22  had gotten its hands on the terms of the Nokia-Apple license agreement.  And Nokia was right.

**C.   The License Terms Are Not Publicly Available**

24  At the December 9, 2013 hearing, Quinn Emanuel argued that Dr. Ahn simply repeated the

25  terms of a *Business Insider* article during the June 4, 2013 meeting (Dec. 9, 2013 Hr'g Tr. at 30:17-

---

[4] Quinn Emanuel notably employed a far different standard in discussing the clear and palpable inconsistency between the deposition testimony and declaration of Samsung's Daniel Shim (*See* Dec. 9, 2013 Hr'g Tr. at 23:2-23 (Court questioning whether Shim deposition and declaration can be reconciled); *id.* at 28:9-12 (counsel arguing that Shim's memory could be flawed because he was testifying about events over a year later)).

20).   This is not true.   The *Business Insider* article stated that "Bernstein analyst Pierre Ferragu estimates Apple is paying Nokia €500 (~$715) million as an upfront payment this quarter to settle its patent dispute.   He estimates Apple will pay Nokia an additional €100 (~$143) million *the rest of the year*" (Dkt. No. 2395 at Exh. G) (emphasis added).   Thus, according to the estimate reported in *Business Insider*, Apple would have paid Nokia €600 million during the first year of the license.   Mr. Ferragu was not estimating that ███████████████████████████████████████████████ ████████████████████

The *Business Insider* article then stated that "Apple will be making *quarterly* payments to Nokia, which could be as much as €55 (~$79) million *per quarter* by Q4 2012" (*Id.*) (emphasis added).   These estimated quarterly payments would add up to an *annual* royalty of €220 million.[5]   Thus, if Dr. Ahn had based his proposal off the *Business Insider* article, as Quinn Emanuel argues, he would have stated a €600 million first year payment with an annual royalty of €220 million.   Because Dr. Ahn correctly stated the Nokia-Apple license terms, while the *Business Insider* article incorrectly estimated the terms, there is no plausible way to link the two.

Further, Quinn Emanuel cannot argue that they simply misspoke by citing solely to *Business Insider* during the hearing.   No other article cited by Samsung – indeed, no article Nokia is aware of – accurately recites the terms of the Nokia-Apple license.   One cited "article" is simply a news aggregator that provided a direct link to the *Business Insider* article (Dkt. No. 2395 at Exhs. H, P).   Another directly quotes the *Business Insider* report of Mr. Ferragu's estimate (Dkt. No. 2395 at Exhs. I, Q).   The remaining two articles, the *Wall Street Journal* and *AppleInsider*, estimate that the up-front payment "could be around €500 million" and "did not exceed $600 million" respectively (Dkt. No. 2395 at Exhs. J, K).   ██████████████████████████████████████ (*See id.*).

Finally, as noted in previous briefing, ███████████████████████████████████ ████████████████████████████████ – a fact not mentioned in *Business Insider* or any other press report

---

[5]   Mr. Ferragu has recently been cited on the current value of Nokia's IP portfolio.   He estimates that Apple pays €200 million in licensing revenue, consistent with his 2011 estimate and inconsistent with Quinn Emanuel's argument and Dr. Ahn's proposal.   *See* http://www.valuewalk.com/2013/12/nokia-ip-comparison/ (Declaration of Ryan W. Koppelman In Support of Nokia's Supplemental Brief In Support of Sanctions Against Samsung and Quinn Emanuel, Ex. 1).

1   (*See* Dkt. No. 2836-3 at 18:11-19).   Therefore, there is no merit to the argument that Dr. Ahn simply

2   repeated terms of the *Business Insider* article – or any other article – during the June 4 meeting.

3   **II.    This Court Can Sanction Samsung and Quinn Emanuel's Protective Order Violations**

4        Quinn Emanuel and Samsung argue that the Court has no authority to sanction negligent

5   protective order violations, and that their violations were mere negligence.   They make two specious

6   arguments in support.   First, they incorrectly argue that the Ninth Circuit merely assumed and did not

7   decide that the Court can impose Rule 37 sanctions for protective order violations in *Falstaff Brewing*

8   *Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (affirming Rule 37 sanctions for

9   protective order violations).   Second, they incorrectly argue that under its inherent power the Court

10  cannot sanction "inadvertent" protective order violations.   *But see Evon v. Law Offices of Sidney*

11  *Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (flatly rejecting the argument that an "inadvertent"

12  protective order violation does not trigger the Court's inherent power).   As a result, Samsung urges the

13  Court to hold that it has no authority to impose sanctions for grossly negligent protective order

14  violations.[6]   Samsung is incorrect, and the Court should issue serious sanctions.

15       **A.    The Ninth Circuit Has Decided That the Court Has the Power To Issue Rule 37**
16              **Sanctions For Protective Order Violations**

17       In *Falstaff*, the Ninth Circuit affirmed Rule 37 sanctions for a protective order violation.   702

18  F.2d at 784.   Samsung is incorrect that the Court in *Falstaff* merely assumed without deciding that it

19  had the power to award sanctions for a protective order violation under Rule 37.    To the contrary, the

20  Court recognized precisely what it was deciding when it stated:

21       Falstaff challenges both *the entitlement to*, and the reasonableness of, the attorney's
         fees award.  Each contention lacks merit.  Fed. R. Civ. P. 37(b) *empowers the courts to*
22       *impose sanctions* for failures to obey discovery orders. . . . This *failure to obey the*
         *protective discovery order* exposed counsel and Falstaff to liability under Rule 37(b)
23       (2) for the resulting costs and attorney's fees.

24  *Falstaff*, 702 F.2d at 784 (emphasis added).   Since then, other circuits have followed *Falstaff*.   *See*

25  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus

26

27      [6] As previously noted, and discussed further below, these issues are academic because Samsung and
        Quinn Emanuel clearly and willfully violated the protective order after finding out in December 2012
28      that the Teece Report was improperly redacted.  Rather than follow the required procedures in the
        protective order and investigate the past disclosures of the same report, they did nothing.

1   significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c)

2   protective orders." (citing *Falstaff*, 702 F.2d at 784)).

3       Samsung urges the Court to ignore this binding precedent and instead follow *Lipscher v. LRP*

4   *Publications, Inc.*, 266 F.3d 1305 (11th Cir. 2001).  Even if the Court could ignore binding precedent,

5   *Lipscher* has been questioned by several courts, and was explicitly rejected by the Fifth Circuit last

6   year.  *Smith & Fuller, P.A.*, 685 F.3d at 489 & n.3 (collecting cases).  *Lipscher* held that Rule 37 states

7   that it applies to violations of orders "to provide or permit discovery" and a protective order is neither

8   an order to "provide" nor "permit" such discovery.   But this is an improperly cramped reading of Rule

9   37 because a protective order "prescrib[es] the method and terms of the discovery of confidential

10  material."  *Smith & Fuller, P.A.*, 685 F.3d at 490.  Indeed, the Advisory Committee Notes to Rule 37

11  explicitly mention Rule 26(c) as being one source of orders "to provide or permit discovery."  *See* Fed.

12  R. Civ. P. 37, 1970 advisory committee's note (stating that the "scope of Rule 37(b)(2) is broadened by

13  extending it to include any order 'to provide or permit discovery,'" and that Rule 26(c) was one source

14  of such orders), *cited in Smith & Fuller, P.A.*, 685 F.3d at 489 & n.4.  Therefore, the Court should

15  decline Samsung's request that it ignore binding Ninth Circuit precedent.

16      **B.    Rule 37 Mandates That Nokia Be Awarded Attorneys' Fees and Permits the Court To Issue Sanctions To Partially Redress Lost Commercial Gain**

17      Rule 37 provides for a broad range of potential sanctions – among them establishing facts,

18  striking pleadings, dismissing an action, or entering a default judgment.  Fed. R. Civ. P. 37(b)(2)(B).

19  Most of these sanctions, however, are of little comfort to third parties, and more creative sanctions may

20  be necessary when the confidential information of third parties is repeatedly abused.   One such

21  sanction is restitution of any "commercial gain" a party received for prohibited uses of confidential

22  information.  *Bradford Techs., Inc. v. NCV Software.com*, No. C 11-04621 EDL, 2013 WL 75772, at

23  *8 (N.D. Cal. Jan. 4, 2013) (Laporte, Mag. J.).  Rule 37 also allows the Court to treat a continuing

24  failure to obey an order as contempt.  Fed. R. Civ. P. 37(b)(2)(A)(iv).  Finally, after finding a Rule 37

25  violation "the court *must* order the disobedient party, the attorney advising that party, or both to pay

26  the reasonable expenses, including attorney's fees" caused by the violation unless the conduct was

27  "substantially justified" or ordering fees would be "unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis

28  added); *see Falstaff Brewing Corp.*, 702 F.2d at 784.

Therefore, Rule 37 requires that Nokia be reimbursed its attorneys' fees and costs, and gives the Court the authority to impose other sanctions requested by Nokia.[7]  The contempt provision (Rule 37(b)(2)(A)(iv)) allows the Court to issue the $25,000 per diem sanction against Samsung and Quinn Emanuel to coerce compliance with the Stipulated Order.  The authority to attempt to redress lost "commercial gain" discussed in *Bradford Technologies* gives the Court the authority to issue the partially compensatory injunctions requested by Nokia: a finding that Samsung misappropriated Nokia's CBI by using it, at least, to negotiate a patent license with Nokia, an injunction barring Samsung from collaterally contesting this finding before this or any other tribunal, and an injunction barring Samsung and its employees who received the CBI from any use of the information covered by the CBI in any business or proceedings relating to Nokia patents or patent-licensing. In addition to these sanctions under Rule 37, the Court should impose the additional sanctions requested by Nokia based on its inherent authority.

C.    **The Court's Inherent Authority Allows It To Craft Additional Appropriate Sanctions For Samsung and Quinn Emanuel's Protective Order Violations**

Despite Samsung and Quinn Emanuel's arguments to the contrary, the Court's inherent authority gives it a second and independent source of power to impose the above Rule 37 sanctions, and also gives it the power to order Samsung and Quinn Emanuel to produce all documents identified during their investigation into their Protective Order breaches, and to bar Quinn Emanuel from appearing in any litigation involving Nokia, directly or indirectly, for 10 years (or such time as the Court sees fit).[8]  Samsung and Quinn Emanuel argue that negligent protective order violations are not sanctionable under a Court's inherent power because negligence is not bad faith or tantamount to bad faith.  The Supreme Court has never defined the precise metes and bounds of the "bad faith" required to trigger the Court's inherent power.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 58-59 (1991) (Scalia, J., dissenting) ("I think some explanation might be useful regarding the 'bad-faith' limitation

---

[7] Consistent with past practice (*see* Dkt. Nos. 880, 924, 2123), Nokia stands ready to provide documentation detailing the time spent on each task by its attorneys in conformity with Civil Local Rule 37-4(b).  See also *Hernandez v. Polanco Enters., Inc.*, No. 11-cv-02247, 2013 WL 4520253, at *10 n.10 (N.D. Cal. Aug. 23, 2013); *Cal. Inst. of Computer Assisted Surgery, Inc. v. Med-Surgical Servs., Inc.*, No. 4:10-cv-05067, 2011 WL 4505239 (N.D. Cal. Sept. 27, 2011).

[8] Alternatively, Nokia requests the Court enjoin Quinn Emanuel from representing Samsung in matters against Nokia for a period of 10 years (or such period as the Court deems just) and a lesser period prohibiting representation of other parties adverse to Nokia.

that the Court alludes to today," because "[f]or example, a court has the power to dismiss when counsel fails to appear for trial, even if this is a consequence of negligence rather than bad faith."). But whatever the precise boundaries, the Ninth Circuit has flatly rejected the argument that an "inadvertent" protective order violation does not trigger that power. *Evon*, 688 F.3d at 1035. In *Evon* the court held that willfully filing a paper that contains protected information can be sanctioned under the court's inherent power, even if it is claimed that inclusion of the protected information was inadvertent. *Id.* ("The language in *Fink* [*v. Gomez*, 239 F.3d 989 (9th Cir. 2001)] makes clear that a district court has the inherent power to sanction for: (1) willful violation of a court order; or (2) bad faith."). Therefore in addition to Rule 37 sanctions, the Court should exercise its inherent power to impose the document production and practice limitation sanctions requested by Nokia.

**D.      The Court Has the Power to Compel Production of the *In Camera* Documents Under Rule 37 or the Inherent Powers of the Court**

This Court has the authority to require Samsung to produce all documents submitted *in camera* by Quinn Emanuel to the Court for three separate and independent reasons. First, as briefed extensively by Apple (and referenced by Nokia), many if not all of the documents are either not privileged or Samsung has failed to adequately lay the foundation for privilege. Second, Samsung has waived any privilege protection for each of the relevant documents, not merely the ones discussed in the November 8 Order, by putting the substance of these communications at issue in these proceedings. As discussed at the December 9, 2013 hearing, the Court has an additional authority to compel production of the documents – as a sanction for Samsung and Quinn Emanuel's egregious conduct.

In a case such as this one involving the flagrant misappropriation of a company's highly confidential information, it is appropriate to issue a sanction requiring the production of documents showing the extent of the misappropriation regardless of any privilege claim that may apply. *See In re Papst Licensing GMBH & Co., KG Litig.*, 250 F.R.D. 55, 57 (D.D.C. 2008) (approving sanction of waiver of attorney client privilege and attorney work product for failure to respond to discovery by due date); *see also Gov't Guarantee Fund of the Republic of Finland v. Hyatt Corp.*, 177 F.R.D. 336, 343 (D.V.I. 1997) (approving waiver as a sanction; "pervasiveness of Hyatt's overall strategy to erect a stone wall to block the Skopbank Parties' entitlement to discover the facts of this dispute"); *Ritacca v.*

*Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver").   In addition to the documents which would allow Nokia to test Samsung and Quinn Emanuel's arguments that its disclosures were merely grossly negligent and that no evidence exists which shows the improper use of Nokia's CBI, Samsung has refused to produce even the improperly redacted Expert Report of David Teece.  This deprives Nokia of the knowledge of the extent of the use or further disclosure of the CBI that was improperly disclosed to Samsung in the first place.  Understanding the scope of the improper disclosure of Nokia's information would give Nokia the best opportunity to mitigate the resulting damage going forward, and this Court should give Nokia that opportunity by ordering the production of the relevant documents as a sanction.

>    **E.    It is tantamount to bad faith that the same lawyer who performed the original redactions caught the problem months later, but Quinn Emanuel took no action to notify the victims or remedy the past redaction problems**

Quinn Emanuel revealed for the first time during the December 9 hearing that the attorney who discovered the incomplete redactions in the Teece Report attached to Guy Eddon's December 2012 email to Daniel Shim, *was actually the same attorney* who made those improper redactions back in March 2012 (Dec. 9, 2013 Hr'g Tr. at 34:9-16, 38:23-39:5).   Despite the December discovery of the redaction error that had been in the Report since March, Quinn Emanuel declined to initiate any internal investigation to determine whether the improperly redacted document had been further transmitted during the intervening *nine month period* (Oct. 22, 2013 Hr'g Tr. at 60:17-22).   Nor did Quinn Emanuel notify Nokia or Apple that their confidential licensing information had been disclosed in the improperly redacted report for nine months.  In light of the same attorney's own discovery of erroneous redactions to a document he himself had redacted nine months prior, Quinn Emanuel *actually* knew (and in any event should have known) that the improperly redacted document had likely been transmitted multiple times between March 2012 and December 2012 and should have taken appropriate corrective actions pursuant to the protective order.   Quinn Emanuel's complete failure to investigate after discovering the improper redactions in December 2012, despite being armed with the knowledge that the improper redaction was made nine months earlier in March 2012, is further evidence that Quinn Emanuel willfully violated the protective order.

1    This 13th day of December, 2013.

2
3                                              *s/ Ryan W. Koppelman*
                                               RANDALL L. ALLEN (Ca. Bar No. 264067)
4                                              randall.allen@alston.com
                                               RYAN W. KOPPELMAN (Ca. Bar No. 290704)
5                                              ryan.koppelman@alston.com
                                               ALSTON & BIRD LLP
6                                              275 Middlefield Road, Suite 150
                                               Menlo Park, CA 94025
7                                              Telephone:    650-838-2000
                                               Facsimile:    650-838-2001
8
9                                              PATRICK J. FLINN (Ca. Bar No. 104423)
                                               patrick.flinn@alston.com
10                                             B. PARKER MILLER (*pro hac vice*)
                                               parker.miller@alston.com
11                                             ALSTON & BIRD LLP
                                               1201 West Peachtree Street
12                                             Atlanta, GA 30309
                                               Telephone:    404-881-7000
13                                             Facsimile:    404-881-7777

14
15                                             *Attorneys for NOKIA CORPORATION*

16
17
18
19
20
21
22
23
24
25
26
27
28

RANDALL L. ALLEN (Ca. Bar No. 264067)
randall.allen@alston.com
RYAN W. KOPPELMAN (Ca. Bar No. 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
275 Middlefield Road, Suite 150
Menlo Park, CA 94025
Telephone:     650-838-2000
Facsimile:     650-838-2001

PATRICK J. FLINN (Ca. Bar No. 104423)
patrick.flinn@alston.com
B. PARKER MILLER (*pro hac vice*)
parker.miller@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:     404-881-7000
Facsimile:     404-881-7777

Attorneys for NOKIA CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | Case No.:  5:11-CV-01846-LHK (PSG)<br><br>**CERTIFICATE OF SERVICE** |

1        I hereby certify that on December 13th, 2013, I electronically filed the foregoing **NOKIA'S**

2  **SUPPLEMENTAL BRIEF IN SUPPORT OF SANCTIONS AGAINST SAMSUNG AND QUINN**

3  **EMANUEL**, along with any and all exhibits attached thereto, with the Clerk of Court using the

4  CM/ECF system which will automatically send email notification to the parties and counsel of record.  I

5  also served by email unredacted copies of these documents on all counsel.

7        This 13th day of December, 2013.

9                   By:    */s/ Ryan W. Koppelman*

10                      Ryan W. Koppelman
ryan.koppelman@alston.com
(Ca. Bar No. 290704)

11                      **ALSTON & BIRD LLP**
275 Middlefield Road, Suite 150

12                      Menlo Park, CA 94025
Telephone:    650-838-2000

13                      Facsimile:    650-838-2001

15                      *Attorneys for NOKIA CORPORATION*