# Exhibit 1

# Filed Under Seal

# In The Matter Of:

*APPLE INC.*
*v.*
*SAMSUNG ELECTRONICS CO., LTD., et al*

_____

*PAUL HENRY KRISTIAN MELIN - Vol. 1*
*November 25, 2013*

_____

# *HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY*

**MERRILL CORPORATION**
**LegaLink, Inc.**

225 Varick Street
10th Floor
New York, NY 10017
Phone: 212.557.7400
Fax: 212.692.9171

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

_____

APPLE INC., a California corporation,

Plaintiff,


v.                                    Case No:
                                      11-cv-01846-LHK


SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; and SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

Defendants.

_____


***THIS ENTIRE TRANSCRIPT IS DESIGNATED
HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY***


Monday, November 25, 2013


VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION OF
MR. PAUL HENRY KRISTIAN MELIN


AT:  12.34 PM


Reported by:  Trish Brady, Accredited Realtime Reporter

```
 1                    A P P E A R A N C E S

 2

 3      Appearing on behalf of SAMSUNG, et al:

 4              QUINN EMANUEL URQUHART & SULLIVAN LLP
                865 South Figueroa Street
 5              10th Floor
                Los Angeles, California 90017
 6              Telephone:  213-443-3180
                Email: michaelzeller@quinnemanuel.com
 7
                BY:  MR. MICHAEL T. ZELLER, ESQ.
 8              and MS. RACHEL HERRICK KASSABIAN, ESQ.

 9
        Appearing on behalf of NOKIA and THE WITNESS:
10
                ALSTON & BIRD LLP
11              One Atlantic Center
                1201 West Peachtree Street
12              Atlanta, Georgia, 30309-3424
                Telephone:  404-881-7196
13              Email: randall.allen@alston.com

14              BY:  MR. RANDALL L. ALLEN, ESQ.
                and  MR. BRIAN PARKER MILLER, ESQ.
15

16      Appearing on behalf of APPLE INC.,:

17              WILMER CUTLER PICKERING HALE AND DORR LLP
                1875 Pennsylvania Avenue
18              NW, Washington D.C., 20006
                Telephone: +1 202 663 6327
19              Email: gregory.lantier@wilmerhale.com

20              BY: MR. GREGORY H. LANTIER, ESQ.

21

22      Also Present:

23              MR. RON ANTUSH (In-house Counsel, NOKIA)

24      Legal Videographer:

25              MR. PHILLIP HILL
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

Page 3

1

2                          I N D E X

3

4   Witness (sworn)                              Page No:

5

6   MR. PAUL HENRY KRISTIAN MELIN            6

7

8   DIRECT EXAMINATION BY MR. ZELLER:                 6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

```
 1                   E X H I B I T S

 2

 3    Exhibit No:         Description:            Page No:

 4

 5
        MELIN 1          Document titled "Patent ... ... 165
 6                       License Agreement Meeting,
                         Meeting between Nokia and
 7                       Samsung, Seoul, 4 June 2013,
                         Subject to NDA", Bates
 8                       labelled NOK000001-000005

 9    MELIN 2           Document entitled "Declaration  229
                        of Paul Melin", dated June 28,
10                      2013

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   whether or not information about the Nokia/Apple

 2   license leaked?

 3           A.   I am not aware of any efforts to

 4   analyze whether or not the information had leaked.

 5   There was no reason to suspect it would have

 6   leaked.

 7           Q.   I take it that when you read the

 8   press reports that concerned the $500 million

 9   upfront payment that didn't -- that didn't cause

10   you any -- any concern, is that right?

11           A.   There was no $500 million upfront

12   payment.   ████████████████████████████████

     ██   ████████

14           Q.   I apologize.  I did misstate.

15           Let me rephrase the question.

16           When you read any of the press reports

17   that said that Apple was making an upfront payment

18   ████████████████████ did that cause you any concern?

19           MR. LANTIER:  Objection to form.

20           MR. ALLEN:  Joined.

21           A.   First of all, I don't recall seeing

22   any press reports at or about the time of the

23   agreement that would have included any references

24   to ███████████████████████████████████ and

25   nothing that I saw in the press caused me any
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

Page 54

```
1    concern because none -- none of the information in

2    the press was accurately representing the

3    financial terms of the Nokia/Apple agreement and

4    there was no reason to suspect that anything would

5    have leaked.

6                 BY MR. ZELLER:

7    ██████    ████    ████████████████████████████

     ██  ████████████████████████████████████████

     ██  ████████████████████████████████████████

10               MR. LANTIER:  Objection to form.

11               A.   I don't recall anybody expressing

12   any such concern to me.

13               BY MR. ZELLER:

14               Q.   Did anyone ever express to you that

15   they wondered where the information came from?

16               MR. ALLEN:  Objection to the form of the

17   question.  You can answer.

18               A.   I don't recall any such discussion.

19               BY MR. ZELLER:

20               Q.   Did you ever express interest with

21   anyone or to anyone as to where that information

22   came from?

23               MR. ALLEN:  Objection to the form.  You

24   may answer.

25               A.   I never saw any press reports that
```

```
 1              A.   No.

 2              Q.   During the course of the June 4

 3    meeting, Dr. Ahn told you terms that you claim to

 4    be highly sensitive and proprietary information

 5    right?

 6              A.   Yes.

 7              Q.   And -- and what is it he said

 8    exactly on that score; the terms that you consider

 9    to be highly sensitive and proprietary?

10         ██      ██████████████████████████████

      ████    ████████████████████████████████████████

      ████    ████████████████████████████████

      ████    ████████████████████████████████

      ████    ████████████████

15              MR. ALLEN:  Mike, this seem like as good

16    a time as any to designate the transcript of the

17    deposition as Confidential/Attorneys' Eyes Only.

18    Do you have any objection?

19              MR. ZELLER:  Well, I -- it's your right

20    to designate it.  We can talk about what should or

21    shouldn't be designated at some other point.  We

22    won't use the witness's time.

23              MR. ALLEN:  Thank you.

24              BY MR. ZELLER:

25              Q.   Were there any other terms that
```

1   Dr. Ahn stated, at the June 4 meeting, that you

2   consider to be highly sensitive and proprietary,

3   other than the ones you just recited to me now?

4           A.   My recollection is that Dr. Ahn

5   only recited the financial terms of the

6   Nokia/Apple agreement and not any other terms.

7           Q.   And so if I understand it, the

8   terms that you described in your earlier answer

9   are the terms that Dr. Ahn recited that -- that

10  you believe are the confidential and proprietary

11  terms, right?

12          A.   There are other confidential and

13  proprietary terms in the license agreement, but

14  Dr. Ahn recited the financial terms.

15          Q.   Right, and I'm just trying to make

16  sure you have given me all the terms that Dr. Ahn

17  mentioned that you consider to be proprietary and

18  confidential and those were the terms that you

19  mentioned; ████████████████████████████████

    ██   ████████████████████████████████████

    ██                ██   ████████████████████████

    ██   ████████████████████████████████████████

    ██   ██████████████████████████████████████

    ██   ██████████

25          Q.   Were there any other terms that

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

Page 95

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

Page 96



```
 1

 3
```

```
 9        Q.    Any other basis?
10        A.    I think I just described the basis.
11        Q.    And is there any other basis you
12   have for your statement, or do I have your
13   complete testimony on that?
14        A.    Well, I don't correctly recall any
15   other basis.
16
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN - 11/25/2013

Page 97

1 ███████████████████████████████

█ ████████████████████████████████

█ █████████████████████████████████

█ ███████████

5         Q.   Did the structure of what Samsung

6 offered correspond to the structure of the

7 Apple/Nokia license?

8         MR. ALLEN:  Objection to the form, you

9 may answer it.

10            █   ████████████████████████

█ ████████████████████████████████

█ █████████████████████████████████

█ ████████████████████████████████

█ ██████████

15         BY MR. ZELLER:

16            █   ████████████████████████

█ ██████████████████████████

█ ███████████████████████████████

█ ████████████████████████████████

█ █████████████████████████████████

█ ████

█            █   ██████████████████

█ ██████████████████████████████████

█ █████████████████████████████████

█ █████████████████████████████████

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN - 11/25/2013

Page 103

```
 1              Q.   A vacation, yes?
 2              A.   I certainly was on vacation for
 3    the -- for the midsummer.  I don't recall whether
 4    I took a longer vacation already in June or in
 5    July.
 6              Q.   What was the location of the June 4
 7    meeting?
 8              A.   Westin Chosun Hotel in Seoul,
 9    C-h-o-s-u-n.
10              Q.   Any other location?
11              A.   No, that was the location of the
12    meeting.
13              Q.   Who was there?
14              A.   Myself, Eeva Hakoranta from Nokia
15    and Dr. Ahn from Samsung, James Kwak from Samsung,
16    and I believe Indong Kang is the name of the third
17    Samsung person, if I recall correctly.
18              MR. ALLEN:  I-n-d-o-n-g, one word.
19    Kang, K-a-n-g.
20              MR. ZELLER:  Actually, I think he spells
21    it K-o-n-g, but we can -- we can look it up.
22              MR. ALLEN:  Yeah, I think it's K-a-n-g.
23    He's your client, but...
24              BY MR. ZELLER:
25              Q.   Had you met Mr. Kang before the
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN - 11/25/2013

Page 142

```
 1    main speaker.

 2              Q.   Do your notes reflect whether or

 3    not the other Samsung representatives said

 4    anything during the course of the meeting?

 5              A.   Not specifically.

 6              Q.   Do you have his notes?

 7              A.   I don't recall.

 8              Q.   How long did this first session

 9    last?

10              A.   I don't recall specifically.

11    I would estimate 10 or 15 minutes.

12              Q.   What was said, other than Dr. Ahn

13    presenting this offer during that first session?

14              MR. ALLEN:  Objection, asked and

15    answered.  You may answer again.

16              A.   Yes, we had introductions and

17    Dr. Ahn made his offer.  He explained the

18    financial terms that he was offering and said

19    that -- that he has done an extensive analysis

20    of -- of all the issues pertaining to the

21    situation and -- and that he has an idea of

22    what -- what Apple pays to Nokia, and that he has

23    considered everything in making his offer.  And he

24    said that this offer is only available for that

25    day, apart from a situation where Nokia needs
```

```
 1    to -- needs to take it back home for management

 2    approvals or the like.  And -- and he made that

 3    offer.

 4              BY MR. ZELLER:

 5              Q.   Prior to the time that Dr. Ahn made

 6    this offer and apart from the introductions, did

 7    you say anything at this meeting during this

 8    session?

 9              A.   This first session?

10              Q.   Yes.

11              A.   I may have asked some clarifying

12    questions so -- to ensure that I understood

13    Samsung's offer.  But apart from that, I don't

14    recall stating anything.

15              Q.   Did you ask those questions during

16    the course of Dr. Ahn making his offer in giving

17    the explanation or was it after?

18              A.   It would have been after.

19              Q.   What questions did you ask?

20              A.   I don't recall.

21              Q.   Do you recall any of them?

22              A.   No.

23              Q.   How many were there?

24              A.   I don't recall.

25              Q.   More than one?
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN – 11/25/2013

Page 160

```
 1              A.   Surprise -- or not necessarily

 2     surprise to my comment.  I -- I believe she may

 3     have drawn the same conclusion as I did already

 4     earlier.  So we were commonly -- what -- we both

 5     were surprised at the very beginning of that

 6     break.

 7              Q.   Did she say anything in response to

 8     your -- your statement during the break?

 9              A.   I don't recall her specific

10     response.

11              Q.   Did she have a response?

12              A.   I don't recall her specific

13     response, whether it --

14              Q.   I'm not even asking about what it

15     was.  Do you recall whether she had a response?

16              A.   We had a discussion, so she said

17     things, I said things.

18              Q.   What did she say?

19              MR. ALLEN:  Objection, asked and

20     answered.

21              A.   I don't recall what she

22     specifically said.

23              BY MR. ZELLER:

24              Q.   What did she generally say?

25              A.   She expressed surprise, like I did,
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN - 11/25/2013

```
 1    both at the -- at the -- the peculiar comment that

 2    Dr. Ahn made as well as the negotiation approach

 3    of Samsung.

 4             Q.   Do you recall any of the words that

 5    she used to convey that?

 6             A.   I don't recall the specific words.

 7             Q.   Do you recall even a single word?

 8             MR. ALLEN:  Objection to the form of the

 9    question.  You may answer.

10             A.   Yeah, I -- again if you want a

11    literal answer to a literal question, I'm sure

12    she used the words "Apple" and "Samsung" and --

13    and other like common words associated with the

14    topic.

15             BY MR. ZELLER:

16             Q.   Any other words?

17             A.   I don't recall.

18             Q.   Is there anything specific that you

19    can testify to as to what she said in her

20    response?

21             MR. ALLEN:  Other than what he has

22    already testified to?

23             BY MR. ZELLER:

24             Q.   He said he didn't know anything

25    specific, so now I am trying to find out, is there
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN - 11/25/2013

Page 164

1    recall, exactly what you said when you -- you

2    provided Nokia's response to Samsung's offer

3    during that meeting?

4              A.   I rejected that offer and I told

5    Samsung that -- ███████████████████████████████

     ████████████████████████████████████████████

     ████████████████████████████████████████████

     ██████████████████████████████████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████████████

     ██████████████████████████████████████████████████

     ███████████████████████████████████████████

     ████████████████████████████████████████████

     ██████████████████████████████████████████  So

15   we could not accept it -- that offer.

16             Q.   Did you use the PowerPoint as part

17   of this response?

18             A.   During this second session of the

19   meeting, we did use two pages from a

20   PowerPoint presentation -- or actually three pages

21   if you count in the cover page, but two pages of

22   substance.  And I don't recall whether we managed

23   to show those pages or the first of those pages

24   while I provided our initial response or whether

25   I provided the response and then we showed the

```
 1    Whereas now, at the time of these negotiations,
 2    Samsung's handset revenues were many times bigger
 3    than Nokia's revenues.
 4            And we also made this -- this comparison
 5    where we showed that the amounts that -- that
 6    ████████████████████████████████████████████
 ▐█   ██████████████████████████████████████████████████
 ▐█   ██████████████████████████████████████████████████
 ▐█   ████████████████████████████████████ or even further
10    if we applied Samsung's purported rate of
11    2.4 per cent, the amounts would be even further.
12            We made the indication that the offer
13    that Nokia had previously extended was already
14    representing a significant compromise and that the
15    Samsung proposal that we, at that time, rejected
16    was but a small fraction of the amounts that would
17    be -- would be due.
18            And when we made these -- these
19    comparisons and -- and -- and statements Dr. Ahn
20    said that Samsung considers Apple to be the only
21    comparable company in the -- in the industry and
22    he laughed at the -- the -- the slide number 3,
23    showing these -- ████████████████████████
24            And -- and at this time, he said that --
25    that he knows what Apple is paying to Nokia,
```

HIGHLY CONFIDENTIAL / ATTORNEYS' EYES ONLY
PAUL HENRY KRISTIAN MELIN - 11/25/2013

```
 1    that -- that Samsung is in -- in many litigations

 2    and that -- that these license agreements are

 3    produced in connection of those litigations and

 4    while they are supposed to remain confidential,

 5    all information leaks; those were the specific

 6    words I very vividly remember him using.  "All

 7    information leaks."

 8               And -- and he said that -- that they

 9    were not willing to discuss around -- around any

10    other proposal than the one that they had made at

11    the beginning of the meeting and at that time it

12    was very difficult for us to respond because he

13    was making references to the Nokia/Apple license

14    agreement which was highly confidential and we

15    were not able to discuss the terms of that

16    agreement and, therefore, were not able to argue

17    and explain to him how and why the actual terms

18    and scope of that agreement were very different

19    from the license that Samsung was requesting with

20    its offer.

21               And -- and -- and as -- as -- as we were

22    in such a difficult situation we -- we -- based on

23    my recollection we -- we made the point that --

24    that the situation was very different just

25    generally based on public information at the time
```

```
 1              MR. ALLEN:  Objection to the form of the
 2    question, compound.  You may answer it.
 3              A.   It's a -- it's a very clear custom
 4    in the industry that license royalty terms are
 5    highly confidential information and -- and
 6    generally not shared, especially license
 7    agreements relating to particular companies.
 8              So I -- I don't recall actually any
 9    meeting where -- where any details of any
10    particular third-party license would have been
11    specifically discussed in connection with license
12    negotiations.  So I don't find it peculiar at all
13    that -- that there was no further discussion about
14    which -- which companies would be paying what
15    specific royalty term.
16              BY MR. ZELLER:
17              Q.   You know what "FRAND" stands for,
18    right?
19              A.   Yes.
20              Q.   What's the "N" stand for?
21              A.   Sorry?
22              Q.   The "ND", what's the last part of
23    it, the "ND" stand for?
24              A.   Non-discriminatory.
25              Q.   What's that mean to you?
```