| | |
|---|---|
| HAROLD J. MCELHINNY (SBN 66781) | WILLIAM F. LEE (*pro hac vice*) |
| hmcelhinny@mofo.com | william.lee@wilmerhale.com |
| MICHAEL A. JACOBS (SBN 111664) | WILMER CUTLER PICKERING |
| mjacobs@mofo.com |   HALE AND DORR LLP |
| RACHEL KREVANS (SBN 116421) | 60 State Street |
| rkrevans@mofo.com | Boston, Massachusetts 02109 |
| ERIC J. OLSON (SBN 175815) | Telephone: (617) 526-6000 |
| ejolson@mofo.com | Facsimile: (617) 526-5000 |
| MORRISON & FOERSTER LLP | |
| 425 Market Street | MARK D. SELWYN (SBN 244180) |
| San Francisco, California 94105-2482 | mark.selwyn@wilmerhale.com |
| Telephone: (415) 268-7000 | WILMER CUTLER PICKERING |
| Facsimile: (415) 268-7522 |   HALE AND DORR LLP |
| | 950 Page Mill Road |
| Attorneys for Plaintiff and | Palo Alto, California 94304 |
| Counterclaim-Defendant APPLE INC. | Telephone: (650) 858-6000 |
| | Facsimile: (650) 858-6100 |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 11-cv-01846-LHK (PSG) |
|     Plaintiff, | |
|     v. | **APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS** |
| SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **HEARING: October 22, 2013, 10 a.m.** <br><br> <u>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**</u> |
|     Defendants. | |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................................1

II. SUMMARY OF SANCTIONS DISCOVERY OBTAINED FROM SAMSUNG .............2

    A. Samsung's Improper Disclosures .........................................................................3

    B. Samsung's Improper Use.......................................................................................3

        1. Samsung's Use of Apple's Confidential Information Against Apple .............3

        2. Samsung's Use of Apple's Confidential Information Against Others.............5

        3. Evidence Undercutting Samsung's Purported Defenses..................................7

III. SAMSUNG'S VIOLATIONS OF THE COURT'S OCTOBER 2, 2013 ORDER ............8

    A. Samsung's Failure To Produce Responsive Documents ......................................9

    B. Samsung's Improper Refusals to Answer on Privilege Grounds........................10

    C. Samsung's Failure to Produce a Properly-Educated 30(b)(6) Witness .............11

    D. Samsung's Failure to Comply with the Samsung-Nokia Stipulation ................12

IV. PROPOSED REMEDIES FOR SAMSUNG'S CONDUCT............................................12

    A. The Court Should Bar Samsung from Asserting the Attorney-Client Privilege and Work Product Doctrine. .............................................................................12

    B. Alternatively, the Court Should Order Samsung to Comply With Its Court-Ordered Discovery Obligations and Conduct *In Camera* Review......................14

    C. Samsung Should Provide Additional Discovery and Declarations from Its Employees and Lawyers Who Received Apple's Confidential Information......15

V. CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Elan Microelectronics Corp. v. Apple, Inc.*,
  C 09-01531, 2011 WL 3443923 (N.D. Cal. Aug. 8, 2011) ........................................................10

*In re A.H. Robins Co.*,
  107 F.R.D. 2 (D. Kan. 1985) ....................................................................................................13

*In re Andrews*,
  186 B.R. 219 (Bankr. E.D. Va. 1995) .......................................................................................13

*In re Grand Jury Investigation*,
  445 F.3d 266 (3d Cir. 2006) .....................................................................................................13

*In re Grand Jury Subpoena Subpoenas Dated March 19, 2002 and August 2, 2002*,
  318 F.3d 379 (2d Cir. 2003) .....................................................................................................14

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) .............................................................................................14

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*,
  337 F. Supp. 2d 862 (N.D. Tex. 2004) ...............................................................................12, 13

*Stratienko v. Cordis Corp.*,
  429 F.3d 592 (6th Cir. 2005) ......................................................................................................4

*United States v. Zolin*,
  491 U.S. 554 (1989) .................................................................................................................14

**RULES**

Local Rule 5-1 .................................................................................................................................16

Rule 30(b)(6) ...................................................................................................................................11

## I. INTRODUCTION

In its motion for sanctions, Apple explained how Samsung had repeatedly violated this Court's Protective Order by: ***disclosing*** highly confidential terms of several Apple licenses to numerous unauthorized persons, including both high-ranking Samsung licensing executives and outside lawyers representing Samsung against Apple around the world; apparently ***using*** that information against Apple and others in litigations and licensing negotiations; and ***delaying reporting*** these many breaches to Apple and the Court.  In its October 2, 2013 Order, the Court found that "[t]here is reason to believe the [Protective Order] has been breached in the present case," and required Samsung to produce discovery relating to Apple's allegations.

As detailed below, Samsung should be held in contempt for failing to comply with that Order in numerous respects—including for redacting ***every*** sentence of ***every*** communication that it produced, withholding hundreds of additional responsive documents in their entirety, instructing witnesses not to answer basic foundational questions (including because Nokia's counsel was present, even though the Court specifically allowed their attendance), and failing to satisfy any deadlines in the Samsung-Nokia Stipulation.  But even this grossly incomplete record confirms massive Protective Order violations between March 2012 and June 2013, when Samsung sent Apple's confidential license terms again-and-again to ***more than 220 persons*** not under the Protective Order—including numerous times ***after*** December 2012, when Samsung and Quinn Emanuel admit they knew the version of the Teece Report they had been sharing for months included Apple's confidential license information.  Contrary to Samsung's claim, these many disclosures ***were*** breaches, ***were not*** reported "promptly," and warrant sanctions.

Nor were the breaches harmless.  Even the heavily-redacted discovery that Samsung has produced to date indicates that unauthorized recipients of Apple's highly-sensitive license terms misused that information—the equivalent of "inside information"—to develop bad faith FRAND licensing positions ***against Apple*** in cases worldwide.  It is likely no coincidence that Samsung repeatedly disclosed Apple's confidential license terms to the same Samsung employees directly negotiating with Apple, as well as to more than 120 outside lawyers (at 19 law firms) helping Samsung litigate against Apple and other competitor).  Consistent with Mr. Melin's declaration,

discovery also strongly suggests that Samsung employees and lawyers used their improperly-obtained knowledge of Apple's confidential licenses to gain unfair leverage in disputes with Nokia and Ericsson. This evidence of misuse also justifies severe sanctions.

Nonetheless, Apple still believes that the Court should have all relevant facts before deciding an appropriate sanction. To that end, the Court first should find that Samsung cannot assert privilege or the attorney work product doctrine—under the crime-fraud exception (due to Samsung's attempt to hide its unlawful behavior behind these doctrines) and on waiver grounds (due to Samsung's use of the doctrines as both a sword and a shield)—and then should order full production of previously redacted and withheld documents. Alternatively, the Court should review Samsung's documents *in camera* to assess whether Samsung is hiding Protective Order violations with its many redactions and withholdings, and order additional discovery consistent with its determination. Samsung also should be ordered to (i) comply with the Samsung-Nokia Stipulation, (ii) have each improper recipient of Apple's confidential license information submit a sworn declaration identifying in detail how they received and used that information, and (iii) have its outside law firm recipients produce their internal communications involving the Apple licenses so the Court may test the veracity of the declarations. Finally, Apple should be awarded its fees and costs for these extensive sanctions proceedings.

Below, Apple summarizes the recent sanctions discovery, reviews the many ways that Quinn Emanuel and Samsung have violated the Court's October 2, 2013 Order, and proposes a procedure to complete the record of Samsung's and its lawyers' misconduct. As the Court noted in its October 2, 2013 Order, this severe misconduct has cast doubt over the ability of protective orders to safeguard confidential information. Respectfully, the Court should order the additional requested discovery—and ultimately, order severe sanctions—to convey to Apple and the many others watching this proceeding with heightened interest that they can trust protective orders to secure even their most sensitive information when produced in discovery.

## II. SUMMARY OF SANCTIONS DISCOVERY OBTAINED FROM SAMSUNG

As noted below, Samsung and its lawyers should be held in contempt for their knowing failure to comply with the Court's October 2, 2013 Order. Nevertheless, even the small amount

of discovery obtained to date under that Order confirms that Samsung systematically violated the Protective Order by distributing Apple's confidential license terms to a broad range of Samsung employees and outside lawyers not entitled to receive that information.  It also strongly suggests that Samsung and its lawyers misused this information to take bad faith FRAND licensing positions against Apple, and to gain unfair competitive positions against other companies too.

### A. Samsung's Improper Disclosures

Discovery shows that Samsung first disclosed Apple's confidential license information on March 22, 2012 (not on March 24, 2012, as Samsung previously represented) when a Quinn Emanuel lawyer disclosed terms from those licenses to ten Samsung employees, and to outside lawyers litigating against Apple in England.  (Ex. 1.)  Over the next 15 months, Samsung and its lawyers repeatedly sent Apple's confidential license terms to at least **220 persons** not covered by the Protective Order—i.e., to more than **90 Samsung employees**, more than **120 lawyers** at **19 law firms**, several outside consultants, and an unknown number of individuals at the European Commission.  Yet, even today, Samsung and its lawyers insist that this huge set of unauthorized disclosures does not amount to a single Protective Order violation.  (Ex. 2 [Ahn Dep.] at 15 ("I believe our company has abided by said protective order."); Ex. 3 [Korea Dep.] at 31-32 ("I absolutely do not believe that Samsung has violated a protective order.").)

They are wrong.  Each of these unauthorized disclosures violated the Protective Order, and put the highly confidential information of Apple and its licensees at serious risk of misuse—which, as discussed below, appears to have occurred.

### B. Samsung's Improper Use

Discovery strongly suggests that these many unauthorized disclosures resulted in multiple instances when Samsung and its lawyers used Apple's confidential license terms in violation of the Protective Order—including to develop FRAND licensing positions against Apple (a core issue at stake in the parties' cases worldwide), and to develop licensing and litigation strategies against other companies, such as Nokia and Ericsson.

#### 1. Samsung's Use of Apple's Confidential Information Against Apple

Samsung's own documents lead to the inescapable conclusion that Samsung employees

and lawyers used their unauthorized access to Apple's confidential licenses to develop FRAND licensing arguments against Apple.  For example, Daniel Shim, a senior in-house Samsung lawyer, conceded that he reviewed multiple copies of the Teece Report and multiple versions of a Samsung ITC brief that contained Apple's confidential license information—and that he read these documents **"with care"** because his "primary responsibility" was to develop FRAND licensing positions against Apple in cases worldwide:  "Q. And you reviewed those reports with care, right?  A. Again, to ensure that Samsung's positions, FRAND positions are accurately reflected in the report that we're going to be submitting, yes."  (Ex. 4 [Shim Dep] at 135, 185; *id.* at 26, 58-59, 83-85, 165-68, 171-74, 196 (admitting his role was "to coordinate FRAND licensing issues as among Samsung outside counsel in-house employees").)

Mr. Shim then repeatedly re-transmitted these materials to other Samsung employees and lawyers litigating FRAND issues against Apple around the world—but claimed at his deposition not to remember why he had done so.  (*Id.* at 196 ("I do not recall as far as -- I do not recall.").)  But even Mr. Shim agrees that he cannot "rule out that Samsung used this information to develop FRAND licensing arguments against Apple."  (*Id.* at 211.)  He cannot because the only plausible reason that Mr. Shim provided Apple's confidential license information to persons tasked with developing FRAND positions against Apple is that he expected those individuals to use the information in precisely that manner.  Apple expects that redacted and withheld documents from Mr. Shim and others include instructions to that effect, and responses to these directions.  In any event, the Court may infer improper use from this strong circumstantial evidence alone.  *See Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005) (noting majority rule, including in the Ninth Circuit, that "[c]ourts may properly consider circumstantial evidence" showing access to unauthorized information when assessing if improper use occurred).[1]

---

[1]  Samsung recently acknowledged to the Court in Australia that its Australian lawyers violated the confidentiality regime in the Australian court by disclosing an improperly redacted version of a draft Teece Report to four Samsung executives, including Daniel Shim, and to unauthorized Samsung outside counsel.  On October 11, 2013, the Australian Court ordered Samsung to disclose whether Mr. Kim, Mr. Korea, and other Samsung employees who have served affidavits in the Australian proceeding, or who are identified in such affidavits as persons participating on behalf of Samsung in license negotiations with Apple, received the confidential information under a breach of this Court's Protective Order.  (Ex. 5 at 1.)

Indeed, in an ITC submission—also circulated to Mr. Shim—Samsung explicitly linked the Apple license terms that it had shared with Mr. Shim and many others to the very FRAND arguments that Samsung was making against Apple in the ITC, in this case, and worldwide:



(Ex. 6 at 29.) Simply put, Samsung's ITC attorneys at Quinn Emanuel were *not* permitted to develop this FRAND argument against Apple in collaboration with Samsung employees and law firms not under the Protective Order in this case. But it is now undisputed that these Samsung licensing employees and outside lawyers saw this passage, leaving only the question of how involved they were in developing it. The one way to know for sure would be a complete production of the relevant documents and full testimony unimpeded by improper instructions.

    **2.    Samsung's Use of Apple's Confidential Information Against Others**

The record also indicates that Samsung has improperly used Apple's confidential license information against other companies as well, including Nokia and Ericsson.

***Nokia:*** According to the declaration of Nokia's Chief IP Officer, Paul Melin, at a June 2013 negotiation meeting, Samsung's most senior licensing executive, Dr. Seungho Ahn, stated that he had learned the terms of the Apple-Nokia license *from his trial lawyers*, and then used that knowledge to obtain an unfair competitive advantage with Nokia. At the October 1, 2013 hearing, Samsung's counsel did not contest the veracity of that declaration. (Ex. 7 at 33-34.) And Samsung's 30(b)(6) witness did not even bother to "ask Dr. Ahn anything about what he said or did in the license negotiation with Nokia." (Ex. 3 [Korea Dep.] at 251.)

At his deposition, Dr. Ahn admitted that he may have told Mr. Melin that the terms of the Apple-Nokia license had become known to him as the result of a "leak." (Ex. 2 [Ahn Dep.] at 95 ("I do think I said something that suggests – is suggestive of a leak.").) But Dr. Ahn claims that he was merely "pretending" to know those terms as a negotiating bluff. (*Id.* at 83-84 ("I'm hoping to convince him that my numbers are persuasive. You know, I'm pretending here."); *id.*

at 94 ("I don't know as to exactly what I said or didn't say, but I do grant you that I did act as though I was in the know. I was pretending, yes.").) In other words, Dr. Ahn either lied to Mr. Melin then, or is lying to Apple and the Court now.

The latter explanation is far more likely given the mountains of evidence showing that Samsung widely disseminated the confidential terms of the Apple-Nokia license to Dr. Ahn and numerous other Samsung licensing employees, along with Dr. Ahn's own admission that he and others at Samsung had a "keen interest" in knowing the terms of that license. (Ex. 2 [Ahn Dep.] at 84-85 ("When Nokia and Apple settled, that was a matter over which virtually everybody within the industry had a keen interest in."); Ex. 8 [Kim Dep.] at 37-38 (Samsung's head of licensing and manager of the litigations against Apple admitting he considered the terms of the Apple-Nokia license "related" to his work "[b]ecause we were in a dispute with Apple at that time").) Dr. Ahn also had no credible explanation for how his supposed "guesstimation" of the Apple-Nokia license terms ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓—particularly in view of his admissions that Apple and Nokia never publicly disclosed the terms of their license and that media reports varied when speculating about the actual license terms. (Ex. 2 [Ahn Dep.] at 84-85, 91.)[2] Neither Dr. Ahn nor Samsung has identified any media report that matches his "guesstimation."

Apple also tried to explore with Dr. Ahn whether he or others at Samsung had used their knowledge of the Apple-Nokia license terms to formulate Samsung's license offer to Apple in March 2013—an offer that Samsung touted in the ITC and tribunals worldwide as supposed evidence that Samsung had complied with its FRAND obligations and that Apple is a so-called "unwilling licensee." But Samsung's counsel instructed Dr. Ahn not to answer any substantive questions from Apple's counsel about the Apple-Samsung negotiations merely because Nokia's counsel was present at the deposition—even though the October 2, 2013 Order expressly stated

---

[2] James Kwak, a Samsung employee who also attended the June 2013 meeting with Nokia (and who also received Apple's confidential license information), testified that Dr. Ahn told Nokia his information about the Apple-Nokia license came from public industry sources (Ex. 9 [Kwak Dep.] at 1154); but even Dr. Ahn did not take that position. This inconsistency further undermines their collective credibility.

that "Nokia shall be allowed access to and full participation in all of the above discovery [which included Dr. Ahn's deposition] . . . subject to the terms of the protective order." (Ex. 2 [Ahn. Dep.] at 109-11; Dkt. 2483 at 5.) This instruction improperly prevented Apple from exploring the role of Dr. Ahn and others who wrongly received the terms of the Apple-Nokia license.

*Ericsson:*  Clayton Kim testified that—when he was leading Samsung's patent licensing group and managing Samsung's worldwide litigations against Apple—he received the Apple-Ericsson license terms in an email sent in late 2012 or early 2013 from the Samsung team that was negotiating a license with Ericsson. (Ex. 8 [Kim Dep.] at 53-55.) Mr. Kim admitted that Samsung used that same information to develop its licensing strategy: "Q. Are you aware of anyone at Samsung who has used the terms of the Apple-Ericsson license to develop a licensing strategy for any Samsung competitor? MR. STONE: [Objection]. A. Yes." (Ex. 8 [Kim Dep.] at 96-100.) But Samsung's counsel instructed Mr. Kim not to reveal the email's contents, not to discuss how the sender learned about the confidential Apple-Ericsson license terms (which Mr. Kim admitted he knew), and not to disclose Samsung's use of those license terms, including when Samsung used them to develop its licensing strategy. (*Id.* at 56, 61, 62.) But the answers that Mr. Kim was permitted to give strongly suggest that Samsung made improper use of Apple's confidential license terms in dealing with Ericsson (and likely others).

### 3. Evidence Undercutting Samsung's Purported Defenses

When opposing Apple's sanction motion, Samsung argued that its employees properly learned about the terms of the Apple-Nokia license through either Apple's disclosures to a Dutch court or public accounts. Its witnesses' testimony undercuts both accounts.

*First*, the Dutch disclosure consisted of a chart that Apple submitted in response to an order from a Dutch court (Samsung was also required to submit a chart for its licenses). But Samsung was only permitted to share the chart with nine specific Samsung employees—a list that *omitted* Dr. Ahn and hundreds of the other Samsung employees and lawyers who received Apple's confidential license terms. (Ex. 4 [Shim Dep.] at 119-21.) As such, Samsung cannot use the chart to justify its disclosure of the confidential Apple-Nokia license terms to the vast majority of recipients, including Dr. Ahn.

Nor can Samsung use the Dutch chart to justify knowledge and use of the Apple-Nokia license terms by the nine employees authorized to see the submission. Use of the chart was limited to the Dutch case alone—making any use of it in this case, the ITC, or any other case impermissible. (*Id.*) Also, the license information in the chart was anonymized, preventing confirmation of the license terms, including the Apple-Nokia license, as even Mr. Shim admits. (Ex. 4 [Shim Dep.] at 134.) Perhaps for that reason, Mr. Kim and Mr. Kwak, both authorized recipients of the Dutch chart, admitted they still do not know the terms of the Apple-Nokia license. (Ex. 8 [Kim Dep.] at 196-97; Ex. 9 [Kwak Dep.] at 117.)

### C. Improper Delay in Notifying Apple and the Court

By their own admission, Quinn Emanuel and Samsung knew that they had been sending Apple's confidential license terms in violation of the Protective Order since at least December 21, 2012—when a Quinn Emanuel lawyer told Mr. Shim to delete a recently-sent copy of the Teece Report because it included terms from Apple's confidential licenses. (Ex. 10 at 2.) Yet, Quinn Emanuel and Samsung said nothing to the approximately 170 individuals who, over the prior 8 months, had received the same version of the Teece Report and the same confidential Apple licensing information in other documents as well.

They also did nothing to stem future circulation of those same materials—as evidenced by the fact that, *after* December 21, 2012, Samsung and its lawyers sent Apple's confidential license information to approximately 50 additional persons not under the Protective Order. In fact, it appears that even Mr. Shim ignored the instruction he received on December 21, 2012. After that date, he sent and received dozens of emails containing Apple's confidential license information; and in May 2013, he even sent *Quinn Emanuel* the same version of the Teece Report that he was instructed to delete months earlier. (Exs. 11-12.) Again, Quinn Emanuel and Samsung did nothing until Nokia filed its motion in July 2012, and even then Quinn Emanuel responded by asking for Nokia's agreement that Samsung and Quinn Emanuel could delete all communications on the subject. Thankfully, Nokia did not agree.

### III. SAMSUNG'S VIOLATIONS OF THE COURT'S OCTOBER 2, 2013 ORDER

Samsung and its lawyers should be held in contempt for their repeated violations of the

Court's October 2, 2013 Order—which have prevented Apple from fully exploring the details involving Samsung many breaches of the Protective Order.

### A. Samsung's Failure To Produce Responsive Documents

The Court's October 2, 2013 Order required Samsung to produce all emails that it had identified in its August 1, 2013 letter to Apple, as well as "[a]ll emails and other communications sent or received since March 24, 2012 by the Samsung employees who received the confidential information (more specifically, the Samsung employees listed in the attachments to Mr. Becher's August 1 letter) to the extent that they relate to Apple's licenses with Nokia, Ericsson, Sharp, and Philips."  In response, Samsung has produced nearly 500 documents, a 29-page "Redacted Log" for those produced documents, and a 96-page "Privilege Log" for more than 500 completely withheld documents.  That production fails to comply with the Order in several key respects.

*First*, every email that Samsung has produced contains redactions so extensive that *not a single word of text* is visible in the body of the document (examples are attached at Exhibit 15). In fact, Samsung's redactions are so extensive that they even include the subject lines of emails and names of certain attachments, as shown in the example below:

```
From:         Zymelman, Ari [AZymelman@wc.com]
Sent:         Sunday, March 31, 2013 10:36 PM
To:           강인동 E6(수석) 라이센싱1그룹(IP) 삼성전자
Cc:           이인정 전무 IP법무1그룹(IP) 삼성전자; 김성윤 상무 IP법무2그룹(IP) 삼성전자; 신민재 책임
              변호사 IP법무1그룹(IP) 삼성전자; 김우선 수석변호사 IP법무1그룹(IP) 삼성전자; 김경만
              E6(수석) IP법무2그룹(IP) 삼성전자; 곽진환 상무 라이센싱1그룹(IP) 삼성전자; 한제헌 E5(책
              임) 라이센싱1그룹(IP) 삼성전자; Genderson, Bruce; Hardy, Kevin; Fisher, Stanley
Subject:      [REDACTED]
Attachments:  Nokia_20F_20120308.pdf; Nokia_20F_20130307.pdf; 2011.06.14 Nokia likely netted $600
              million plus in Apple patent settlem....pdf; [REDACTED]
```

(Ex. 14.)  As addressed below, Samsung should not be permitted to assert privilege over these documents due to the crime-fraud exception and waiver.  But regardless, it is unfathomable that *every* word in *every* one of these hundreds of emails involves privileged communications that are exempt from discovery.  Indeed, even Samsung's 30(b)(6) witness could not explain the basis for these heavy redactions.  (Ex. 3 [Korea Dep.] at 118.)

Equally untenable is Samsung's redaction of numerous email subject lines and file names as privileged.  For example, the excerpt below shows that in the email above, Samsung appears to have redacted the file name "*Nokia - Apple License Memo.DOCX*":

```
From:         James Shin [james1.shin@samsung.com]
Sent:         Monday, May 06, 2013 9:41 AM
To:           김재환 책임변호사 IP법무2그룹(IP) 삼성전자
Subject:      FW: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
Attachments:  Nokia_20F_20120308.pdf; Nokia_20F_20130307.pdf; 2011.06.14 Nokia likely netted $600
              million plus in Apple patent settlem....pdf; Nokia - Apple License Memo.DOCX
```

(Ex. 16.) Samsung may not like the name of that file, which shows that its employees were circulating a memo about the Apple-Nokia license just a few weeks before Dr. Ahn met with Nokia in June 2013—and may inform the source of Dr. Ahn's information about that license. But Samsung's desire to keep that information from Apple and the Court does not transform the computer file name into a privileged communication.

This example shows that Samsung is using redactions to hide its knowledge and use of Apple's confidential information—i.e., the very reason the Court ordered the parties to conduct discovery. Thus, even if the Court permits Samsung to assert privilege, Samsung should be ordered to reproduce more complete versions of its documents with a certification from a Quinn Emanuel partner that any redactions only cover truly privileged communications.

***Second***, Samsung provided a "Redacted Log" for the documents that it produced. But the entries are so generic that they fail to provide even the most basic notice about the nature of the redactions, including, for example, the specific Apple license at issue. (Ex. 17.) This is insufficient. *See*, *e.g., Elan Microelectronics Corp. v. Apple, Inc.*, C 09-01531, 2011 WL 3443923, *2 (N.D. Cal. Aug. 8, 2011) ("Under ordinary circumstances, a privilege log should be provided that identifies and describes the documents in sufficient detail to 'enable other parties to assess the claim.'") (citing Fed. R. Civ. P. 26(b)(5)(A)(ii)).

***Third***, Samsung's separate 96-page "Privilege Log" covers hundreds of additional documents that Samsung refused to produce at all, even in redacted form. (Ex. 18.) It is unclear why Samsung refused to produce these documents in any form—particularly given how extensively it redacted the documents it did produce. And even if Samsung could justify its withholding of these hundreds of documents in full, its log for them is equally insufficient.

### B. Samsung's Improper Refusals to Answer on Privilege Grounds

The October 2, 2013 Order required Samsung to produce Dr. Ahn, five employees, and a 30(b)(6) witness for deposition. But at these depositions, Samsung and the witness obstructed

Apple's ability to inquire into important topics critical to this Court's sanctions inquiry based on unfounded privilege objections, including on topics such as:

- whether Samsung viewed the Apple-Nokia license as relevant to the amount Samsung believes Apple should pay Samsung for a license (Ex. 2 [Ahn Dep.] at 112-13);

- the reasons underlying Samsung's 30(b)(6) testimony that "Samsung had not violated the protective order entered by Judge Grewal" (Ex. 3 [Korea Dep.] at 32-33);

- internal discussions Samsung licensing employees had about potential licensing offers to Apple (Ex. 4 [Shim Dep.] at 75-76);

- how Samsung's licensing executives determined which *financial* terms they would offer Nokia, and whether Quinn Emanuel attorneys discussed the terms of the Nokia-Apple license with Samsung's VP of Licensing, who negotiated licenses with both Nokia and Apple (Ex. 9 [Kwak Dep.] at 134-37, 155, 157); and

- the source of Samsung's knowledge of the Apple-Ericsson license, and when Samsung made use of that information (Ex. 8 [Kim Dep.] at 56, 61, 62, 71).

This too violated the Court's October 2, 2013 Order.

### C. Samsung's Failure to Produce a Properly-Educated 30(b)(6) Witness

In its October 2, 2013 Order, the Court required Samsung to produce "[a] Rule 30(b)(6) witness to speak to the dissemination of and use by Samsung of the confidential information, including the use of the confidential information in any proceeding before the United States International Trade Commission and in any court or jurisdiction outside the United States." (Dkt. 2483 at 5.) Samsung violated that Order by designating Mr. Korea, who would not (or could not) testify about these topics in multiple respects, including the following:

- He refused to confirm the accuracy of the list of Samsung employees that Quinn Emanuel identified to the Court as receiving the Teece Report (Ex. 3 [Korea Dep.] at 93), and testified that he was "not clear" and could not answer when Samsung learned that employees had received Apple confidential information (*id.* at 51-52);

- He stated he was "not authorized to speak" as to whether the improperly redacted Teece Report contained confidential Apple information (*id.* at 51), could not answer whether or why different versions of the improperly redacted Teece Report were circulated to Samsung employees (*id.* at 85), and could not testify about any investigation conducted by anyone other than himself regarding the dissemination and use of the improperly redacted Teece Report (*id.* at 87); and

- He expressed confusion about simple words such as the meaning of "use" of

confidential information (*id.* at 58 ("I don't know what you mean exactly by 'use'")), and a "violation" of the Protective Order (*id.* at 42, 44).

### D. Samsung's Failure to Comply with the Samsung-Nokia Stipulation

In its October 2, 2013 Order, the Court entered the Stipulation that Samsung and Nokia had jointly negotiated and filed—which imposed a series of investigatory and disclosure deadlines on Samsung. (Dkt. 2483 at 4-5.) Judge Koh denied Samsung's request to withdraw the Stipulation, noting that it imposed requirements on Samsung ***in addition to*** those set forth in the October 2, 2013 Order. (Dkt. 2538 at 12.) Yet, Samsung has yet to comply with any of the deadlines set forth in the Stipulation. This also violates the Order and constitutes contempt.

## IV. PROPOSED REMEDIES FOR SAMSUNG'S CONDUCT

Given these sweeping violations—with respect to the Protective Order and the October 2, 2013 Order—the Court should bar Samsung from asserting the attorney-client privilege or work product doctrine. Or at the very least, it should review Samsung's redacted and withheld documents *in camera* to assess whether Samsung is using these doctrines to shield misconduct. The Court should also require Samsung to produce the required sanctions discovery, to comply with the Samsung-Nokia Stipulation, and have its employees and outside lawyers who received Apple confidential information in violation of the Protective Order to submit sworn declarations detailing their receipt and use (as Samsung promised it would do at the last hearing). Finally, Samsung should pay the significant fees and costs that Apple has incurred in these proceedings.

### A. The Court Should Bar Samsung from Asserting the Attorney-Client Privilege and Work Product Doctrine.

The crime-fraud exception bars application of the attorney-client privilege where an attorney and client engage in communications that become part of a subsequent unlawful course of action—including violations of a Protective Order, which are a form of law breaking. *See*, *e.g.*, *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 337 F. Supp. 2d 862, 868 (N.D. Tex. 2004), *rev'd on other grounds*, 476 F.3d 278 (5th Cir. 2007) (granting under crime-fraud exception access to privileged communications reflecting violations of a protective order). This outcome reflects that the legal system has a greater interest in detecting and preventing ongoing and future wrongdoing than it does in protecting the confidentiality of attorney-client

communications regarding that improper activity.  *See In re Grand Jury Investigation*, 445 F.3d 266, 275-80 (3d Cir. 2006) (affirming order compelling production of communications between lawyer and client regarding compliance with subpoena under crime-fraud exception given evidence that, at time of the communications, the client may have been destroying responsive documents); *In re A.H. Robins Co.*, 107 F.R.D. 2, 30 (D. Kan. 1985) (applying crime-fraud exception due to "repeated delays and instances of nonproduction"); *In re Andrews*, 186 B.R. 219, 220 (Bankr. E.D. Va. 1995) (declining to find privilege applicable to communications concerning possibly continuing fraud).

As noted in Apple's motion for sanctions, the crime-fraud exception is implicated here given Samsung's improper use of privilege claims to prevent Apple and the Court from learning how Samsung and its lawyers used (and may yet use) Apple's highly confidential information in violation of this Court's Protective Order.  Indeed, otherwise, parties and their lawyers would be able to breach protective orders in their communications without fear—assured that, with the privilege as a shield, they would never be held accountable for their misconduct.  The crime-fraud exception is precisely intended to defeat such abuse of the privilege.  *See Positive Software Solutions,* 337 F. Supp. 2d at 868.

In addition, Samsung has waived privilege by using it as both a sword and a shield.  For example, at his 30(b)(6) deposition, Mr. Korea offered a chart purporting to summarize dozens of employee "interviews" that he claimed to have conducted (with Quinn Emanuel present at most). (Ex. 3 [Korea Dep.] at 60-70, Exs. 3 and 4.)  Mr. Korea, who is a California-admitted attorney, testified at length about his "investigation," which apparently included asking each employee whether he or she recalled reviewing documents containing Apple confidential information and the specific license terms disclosed therein, and using that information for any purpose. (*Id.*)  But Mr. Korea either could not or would not reveal whether anyone other than himself had investigated the dissemination and use of Apple confidential information, much less the results of such an investigation.  (*Id.* at 86-87, 90-91.)  In any event, by having its lawyer provide the results of his attorney-client "investigation," Samsung has waived any privilege over that subject matter.  Samsung cannot choose to disclose only some aspects of its "investigation"

that it believes are helpful, while asserting privilege over other aspects that it does not.  *See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) ("When either privilege is waived, its scope extends to 'all communications on the same subject matter . . . so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not'") (citing *Stanford v. Roche,* 237 F.R.D. 618, 625 (N.D. Cal. 2006)).

> **B.   Alternatively, the Court Should Order Samsung to Comply With Its Court-Ordered Discovery Obligations and Conduct *In Camera* Review.**

To the extent the Court decides that it needs further confirmation before deciding whether to apply the crime-fraud exception or waiver principles, Apple suggests the following two-step process (which Apple believes will provide additional corroboration of wrongdoing):

*Step One:*  To ensure Apple has the entire universe of evidence that the Court ordered, within 3 days, Samsung should be required to:  (i) re-produce its redacted set of documents with proper redactions and provide a revised log (verified by a Quinn Emanuel partner) that identifies the nature of those redactions, including the specific license(s) to which the document relates; and (ii) produce at least redacted versions of the withheld set of documents listed on its 96-page Privilege Log, and update that log (verified by a Quinn Emanuel partner) for withheld portions.

*Step Two:*  After receiving this updated discovery, within 3 days, Apple will identify up to 50 documents for this Court to review *in camera* to assess whether Samsung is improperly using privilege and work product claims to shield Protective Order violations.  *See In re Grand Jury Subpoena Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 386-87 (2d Cir. 2003) (noting that *in camera* review is a "long-standing and routine" procedure "in cases involving claims of privilege," and that the standard for granting *in camera* review is lower than the standard for finding the communications not privileged); *United States v. Zolin*, 491 U.S. 554, 572 (1989) ("[Because] "*in camera* inspection is a smaller intrusion upon the confidentiality of the attorney-client relationship . . . a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege.").  If the documents show sufficient evidence of violations, the Court can order Samsung to submit all of its redacted and withheld

documents for Court review.  If the Court decides after the review that Samsung has relinquished any privilege or work product claims, Samsung should be compelled to produce all documents to Apple in full, and have its employees deposed again without claims of privilege.

### C. Samsung Should Provide Additional Discovery and Declarations from Its Employees and Lawyers Who Received Apple's Confidential Information.

Samsung's improper disclosure of Apple's confidential license terms has been so massive that Apple could not possibly cover each of these instances in a reasonable number of additional depositions.  Samsung promised declarations from these persons at the last hearing, but has not delivered on that promise.  Therefore, to ensure the Court has all the relevant details, Samsung should be ordered to obtain declarations from each employee and outside lawyer who received Apple's confidential information stating in detail how they received and used the information.

In addition, although the October 2, 2013 Order required Samsung to account for its emails and other communications from "Samsung employees," Samsung's improper disclosures involved more than 120 outside lawyers (working at 19 law firms) who are not Samsung "employees."  Without communications from these individuals, the Court will have difficulty determining how they used Apple's confidential information, including in matters outside the United States.  Therefore, the Court should order Samsung to have its outside lawyers (listed in Exhibit 21) and law firms (listed in Exhibit 19) produce the same emails and communications required of Samsung employees.  Each law firm also should be required to provide sworn declarations from partners detailing the search that they performed to locate the responsive documents.  Finally, Apple should be awarded its fees and costs for these sanctions proceedings.

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court sanction Samsung for its many violations of the Court's Protective Order, find Samsung in contempt of the October 2, 2013 Order, and order the additional discovery and relief set forth above and in Apple's motion for sanctions.

Dated:  October 21, 2013                                /s Mark D. Selwyn_____
                                                                           Mark D. Selwyn

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on October 21, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark D. Selwyn
Mark D. Selwyn