1   HAROLD J. MCELHINNY (SBN 66781)        WILLIAM F. LEE (*pro hac vice*)
    hmcelhinny@mofo.com                    william.lee@wilmerhale.com
2   MICHAEL A. JACOBS (SBN 111664)         WILMER CUTLER PICKERING
    mjacobs@mofo.com                         HALE AND DORR LLP
3   RACHEL KREVANS (SBN 116421)            60 State Street
    rkrevans@mofo.com                      Boston, Massachusetts 02109
4   ERIC J. OLSON (SBN 175815)             Telephone: (617) 526-6000
    ejolson@mofo.com                       Facsimile: (617) 526-5000
5   MORRISON & FOERSTER LLP
    425 Market Street                      MARK D. SELWYN (SBN 244180)
6   San Francisco, California  94105-2482  mark.selwyn@wilmerhale.com
7   Telephone:  (415) 268-7000             WILMER CUTLER PICKERING
    Facsimile:  (415) 268-7522               HALE AND DORR LLP
8                                          950 Page Mill Road
                                           Palo Alto, California 94304
9                                          Telephone: (650) 858-6000
    Attorneys for Plaintiff and            Facsimile: (650) 858-6100
10  Counterclaim-Defendant APPLE INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | |
| Plaintiff, | Case No. 11-cv-01846-LHK (PSG) |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., A Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **APPLE INC.'S POST-HEARING BRIEF IN SUPPORT OF SANCTIONS AGAINST SAMSUNG AND QUINN EMANUEL** |
| Defendants. | |

# TABLE OF CONTENTS

I.      SAMSUNG VIOLATED THE COURT'S PROTECTIVE ORDER ON AN UNPRECEDENTED
        SCALE—WHICH, AT A MINIMUM, REFLECTS RECKLESS INDIFFERENCE..............................1

II.     SAMSUNG HAS USED APPLE'S CONFIDENTIAL INFORMATION ................................4

III.    THE COURT HAS AUTHORITY TO IMPOSE SANCTIONS AGAINST SAMSUNG AND
        QUINN EMANUEL ........................................................................................5

IV.     THE SANCTIONS SHOULD BE SIGNIFICANT TO ADDRESS THESE VIOLATIONS AND
        DETER SIMILAR MISCONDUCT ......................................................................7

        A.      Samsung Should Not Be Permitted to Benefit from its Misconduct ......................7

                1.      Dr. Ahn and Other Samsung Licensing Executives Should be
                        Barred from Negotiating SEP Licenses for Wireless
                        Communications Technologies For Two Years ...........................................7

                2.      The Court Should Find that Samsung Engaged in Improper
                        Licensing Conduct .........................................................................8

        B.      Apple Should be Made Whole To The Extent Possible .........................................8

                1.      Apple Should be Awarded its Fees and Costs at Least for Pursuing
                        this Motion ...................................................................................8

                2.      Quinn Emanuel Should be Enjoined from Receiving Any Apple
                        Materials Produced Under a Protective Order for Two Years....................9

V.      CONCLUSION...........................................................................................9

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Beam Sys., Inc. v. Checkpoint Sys., Inc.*,
   1997 WL 423113 (C.D. Cal)....................................................................................................2

5

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012).............................................................................................6, 7

6

7

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir.1983) ...................................................................................................6

8

*Heavyhitters v. Nike Inc.*,
   251 Fed. App'x 378 (9th Cir. 2007) ........................................................................................6

9

10

*In re Deutsche Bank Trust Co. Americas*,
   605 F.3d 1373 (Fed Cir. 2010)................................................................................................7

11

*In re Seagate Technology, LLC*,
   497 F.3d 1360 (Fed. Cir. 2007)...............................................................................................3

12

13

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) ..................................................................................................8

14

*Lambright v. Ryan*,
   698 F.3d 808 (9th Cir. 2012) ..................................................................................................2

15

16

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988).................................................................................................................3

17

*Minnesota Mining & Mfg. Co. v. Pribyl*,
   259 F.3d 587 (7th Cir. 2001) ..................................................................................................8

18

19

*O'M & Associates, LLC v. Ozanne*,
   2011 WL 2160938 (S.D. Cal. June 1, 2011)...........................................................................2

20

*Pennar Software Corp. v. Fortune 500 Sys. Ltd.*,
   51 Fed. R. Serv. 3d 279 (N.D. Cal. 2001) ..............................................................................5

21

22

*Safeco Inc. Co. v. Burr*,
   551 U.S. 47 (2007)...................................................................................................................3

23

*Salmeron v. Enter. Recovery Sys., Inc.*,
   579 F.3d 787 (7th Cir. 2009) ..................................................................................................7

24

25

*SEC v. Razmilovic*,
   2013 WL 6172543 (2d Cir. July 22, 2013).............................................................................2

26

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007).....................................................................................................2

27

28

*Shepherd v. American Broadcasting Cos., Inc.*
    62 F.3d 1469 (D.C. Cir. 1995) .......................................................................4

*Tama Plastic Industry v. Pritchett Twine & Net Wrap, LLC,*
    2012 WL 1912578 (S.D. Ind. May 25, 2012) ..........................................4

*Trans World Airlines, Inc. v. Thurston*,
    469 U.S. 111 (1985) ..............................................................................3

*Trenado v. Cooper Tire & Rubber Co.*,
    274 F.R.D. 598 (S.D. Tex. 2011) ....................................................6, 9

*United States v. Illinois Central R. Co.*,
    303 U.S. 239 (1938) ..............................................................................2

*United States v. Nat'l Med. Enters., Inc.*,
    792 F.2d 906 (9th Cir.1986) ..................................................................6

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*,
    992 F.2d 932 (9th Cir.1993) ..................................................................6

*Whitehead v. Gateway Chevrolet, Oldsmobile*,
    2004 WL 1459478 (N.D. Ill. Jun. 29, 2004) ..........................................6

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir. 1989) ..............................................................2

STATUTES

35 U.S.C. § 285 .......................................................................................9

OTHER AUTHORITIES

Fed. R. Civ. P. 26 ....................................................................................6

Fed. R. Civ. P. 37 ....................................................................1, 2, 4, 5, 6

1    In prior submissions, Apple set forth extensive evidence demonstrating that Samsung

2    repeatedly violated the Court's Protective Order, by disclosing highly confidential Apple

3    information to Samsung employees and unauthorized outside counsel, failing to timely report

4    those violations to Apple, and misusing the information.  (*See* Dkts. 2374; 2410; 2557; 2772;

5    2825; 2838.)  The extent of Samsung's violations was exacerbated by its reckless conduct in

6    failing to investigate—after breaches had become known—whether other unauthorized

7    disclosures had been made.  Samsung's systematic inattention to its obligations allowed

8    unauthorized disclosures to be continued to be made over a period of seven months to more than

9    50 additional individuals.  (Dkts 2557-27; 2556-7, Exhs. T-U.)  Indeed, the full scope of the

10   violations still remains unknown.  Just yesterday, Samsung identified three more individuals who

11   received unauthorized access to Apple's licensing information.  (Dkt. 2870, citing Tab 279.)

12   Samsung argues (1) the admitted Protective Order violations were all "inadvertent," (2)

13   there was no misuse of that information, and (3) in light of those facts, the Court lacks legal

14   authority to impose sanctions.  But even if the Court were to credit the assertion that the scores

15   of Protective Order violations were pure accident, the sanctions Apple seeks are fully warranted

16   under Federal Rule of Civil Procedure 37 and the Court's inherent authority.  At a minimum,

17   Samsung's misconduct demonstrates a reckless disregard for its obligations under the Protective

18   Order, which the law treats as tantamount to willfulness.  Further, the Court is not required to

19   find actual misuse of the information to impose sanctions, although the overwhelming evidence

20   indicates that such misuse occurred and could continue.

21   This case will demonstrate whether protective orders must be respected, and whether

22   willful indifference toward them will be tolerated.  Appropriate sanctions are both necessary to

23   remediate Samsung's misconduct and to deter future repetition, and properly authorized under

24   Rule 37 and the Court's inherent authority.  Apple requests they be imposed.

25   **I.    SAMSUNG VIOLATED THE COURT'S PROTECTIVE ORDER ON AN UNPRECEDENTED
         SCALE—WHICH, AT A MINIMUM, REFLECTS RECKLESS INDIFFERENCE**

26

27   Since their initial improper transmission in March of 2012, the terms of Apple's licenses

28   with third parties have been disseminated to over 220 persons not authorized to view them under

1  this Court's Protective Order, 95 of whom are Samsung employees.  (Dkt. 2557-27 (list of

2  recipients).)  Of those unauthorized recipients, at least 55 received that information *after*

3  December 2012, when Quinn Emanuel became aware that it had provided its client with

4  extremely sensitive Apple licensing information.  (*Id.*)

5        In terms of the number of communications making improper disclosures (at least 36), the

6  number of individuals who disseminated the protected information in violation of the Protective

7  Order (at least 18), and the duration of the violations (over fifteen months), Apple is aware of no

8  protective order breach as pervasive as the one now before this Court.  Certainly none has been

9  identified in these proceedings.  *See, e.g.*, *Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012)

10  (single transmission of documents); *O'M & Associates, LLC v. Ozanne*, 2011 WL 2160938 (S.D.

11  Cal. June 1, 2011) (same); *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 423113 (C.D. Cal)

12  (same).[1]

13        Unable to dispute the overwhelming scope of their violations, Samsung argues that the

14  Court may not impose sanctions unless the protective order violations were willful, and asserts

15  that all Samsung's violations were "inadvertent."  (*E.g.*, Dkt. 2835-3 at 11-12.)  As detailed in

16  Apple's prior submissions, the two premises of this argument are both wrong: (1) willfulness is

17  not required to impose sanctions (*See* Dkt. 2838-3 at 15),[2] and (2) all of Samsung's Protective

18  Order violations were not "inadvertent."  (*See Id.* at 7-9,)

19        But even if a finding of willfulness were needed, Samsung's conduct warrants sanctions.

20  At a minimum, Samsung acted with careless disregard to its obligations under the Protective

21  Order, which the law widely recognizes as tantamount to a willful violation.  *See, e.g.*, *United*

22  *States v. Illinois Central R. Co.*, 303 U.S. 239, 242-43 (1938) ("willfully," as used in a civil

23  penalty provision, includes "'conduct marked by careless disregard whether or not one has the

24

25  [1]     Most of the other cases cited by Samsung do not involve Protective Order violations at
    all.  *See e.g. Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007) (failure to
26  produce compelled documents); *Zambrano v. City of Tustin*, 885 F.2d 1473 (9th Cir. 1989)
    (attorney failed to apply for admission to district bar); *SEC v. Razmilovic*, 2013 WL 6172543 (2d
27  Cir. July 22, 2013) (failure to appear for noticed deposition).
    [2]     As explained in prior briefing, courts have consistently held that willfulness is not a
28  requirement for sanctions under Rule 37.  (*See* Dkt. 2838-3 at 15.)

1  right so to act.'") (citation omitted); *Safeco Inc. Co. v. Burr*, 551 U.S. 47, 57 (2007) ("[C]ommon

2  law usage . . . treated actions in 'reckless disregard' of the law as 'willful' violations") (*citing* W.

3  Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 34, p. 212 (5th ed. 1985)); *see also*

4  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988) ("willful," includes reckless

5  violation); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-26 (1985) (same); *In re*

6  *Seagate Technology, LLC*, 497 F.3d 1360, 1370-71 (Fed. Cir. 2007) (willfulness includes

7  reckless behavior).  This reflects common sense policy considerations: if a finding of deliberate

8  intent to violate a protective order were required to enforce it, parties would have no incentive to

9  proactively adopt meaningful compliance procedures.  They could proceed with slack (or

10 nonexistent) compliance procedures, without fear of sanction for their indifference.

11       This case vividly illustrates that danger.  The scope and number of breaches evidences a

12 systematic indifference to the protective order.  As just one example, when Samsung admittedly

13 recognized that the Teece Report had been improperly redacted in December 2012, its attorneys

14 did nothing to investigate to whom Apple's confidential information had been sent previously.

15 (Dkts 2374-9 [8/16/13 Becher Letter to Lee]; 2557-27.)  Had they investigated, Samsung's

16 attorneys would have found that the document had been sent to at least 165 individuals in

17 violation of Section 6(a) of the Protective Order.  (*Id.*)  Samsung cannot justify this failure on the

18 ground that it caught its mistake in December and asked the recipient to delete—and thus had no

19 further reason to investigate.  The document was, on its face, a ***previously generated redacted***

20 ***report***, and the document itself should have precipitated an inquiry into its past history.  (12/9/13

21 Hrg. Tr. 116:20-117:3; 2395-3 [9/6/13 Pease Decl. ¶6] (standard practice was to prepare redacted

22 versions for circulation to client).)  But Samsung did nothing.  Moreover, after December 2012,

23 Samsung failed to prevent repetition of the ***same violation*** several additional times.  (Dkts 2556-

24 7, Exh. T; 2835-6 [12/2/13 Becher Decl. Exh 31 at ¶¶ 5, 12, 32, 105 (summary of law firm

25 disseminations)].)  Finally, even knowing that it had already violated the Protective Order by

26 circulating an improperly redacted Teece Report, Samsung took so little care when circulating a

27 new redacted version of the Teece Report that it too contained Apple's highly confidential

28 license information. (Dkts 2556-7, Exh. T; 12/9/13 Hrg Tr. 11:5-22.)

## II.   SAMSUNG HAS USED APPLE'S CONFIDENTIAL INFORMATION

Samsung's other primary factual defense has been that it did not use the highly confidential Apple license information.  (*See* Dkt. 2835-3 at 13-17.)  That, however, does not mean that sanctions are unwarranted—proof of actual misuse is not necessary for awarding sanctions as it is frequently difficult to detect.  *See, e.g.*, *Tama Plastic Industry v. Pritchett Twine & Net Wrap, LLC*, 2012 WL 1912578, at *4 (S.D. Ind. May 25, 2012).

Further, the evidence before the Court renders it highly likely that Apple's confidential licensing information has been misused by Samsung executives and that it will continue to be misused in the absence of sanctions.[3]  ***First***, the evidence shows that it is more likely than not that Samsung improperly used Apple's confidential information against Apple in the ITC litigation.  Daniel Shim, a senior in-house lawyer at Samsung responsible for managing Samsung's FRAND-related arguments in that litigation, testified that he received multiple copies of the improperly redacted Teece Report and multiple versions of an outline for a brief that contained and attempted to exploit Apple's confidential licensing information.  (*See, e.g.,* Dkt. 2557-10 [Shim Dep.] at 184-85.) ████████████████████████████████
███████████████████████████████████████████████████████████████████
█████████████████████████████. (Dkt. 2838-3 at 12-13.)  Samsung may claim that its outside lawyers could make that argument, but Samsung's own employees could not review and approve it—and thereby understand and endorse an argument with real-world monetary consequences for Samsung's licensing program.

***Second***, there is strong circumstantial evidence that Samsung misused Apple's confidential information in formulating Samsung's license proposals to Apple.  Before the Protective Order was breached, Samsung offered Apple a license to its standards essential patents ("SEPs") for ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[3] The burden of proof for awarding non-dispositive civil sanctions under Rule 37 or the court's inherent authority is preponderance of the evidence.  *Shepherd v. American Broadcasting Cos., Inc.* 62 F.3d 1469, 1478 (D.C. Cir. 1995).

1

2

3

4

5

6 ██████████████████████████████████████████████.  *See, e.g., Pennar*

7 *Software Corp. v. Fortune 500 Sys. Ltd.*, 51 Fed. R. Serv. 3d 279 (N.D. Cal. 2001)

8 (circumstantial evidence sufficient to award sanctions pursuant to Rule 37 or the court's inherent

9 authority).

10        ***Third***, the record demonstrates that Samsung misused the improperly disclosed Apple

11 information against Nokia.  Dr. Ahn's testimony, and Samsung's argument, that he was merely

12 "pretending" to have been improperly "leak[ed]" the terms of the Apple-Nokia license at the

13 June 4, 2013 meeting (*e.g.*, Dkt. 2557-8 [Ahn Dep.] at 95), strains credulity.  It is undisputed that

14 Dr. Ahn ████████████████████████████████████████████████████████████.

15 (*Id.*)  There was no reason for Dr. Ahn to do this—effectively calling his own "bluff"—unless he

16 knew the Apple-Nokia license terms with certainty.

17        ***Fourth***, Samsung admits that its licensing executives received the financial terms of the

18 Apple-Ericsson license in an email sent in late 2012 or early 2013 from the Samsung team trying

19 to negotiate a license with Ericsson, and that Samsung used that same information to develop its

20 licensing strategy against competitors.  (Dkt. 2557-14 [Kim Dep.] at 53-55, 96-100.)   At the

21 hearing, Samsung argued that it obtained that information from Ericsson through "means other

22 than discovery in this action."  (Dec. 9 Hrg. Tr. at 21.)  But Samsung has provided ***no***

23 corroborating evidence that Apple has seen.

24 **III.    THE COURT HAS AUTHORITY TO IMPOSE SANCTIONS AGAINST SAMSUNG AND QUINN
         EMANUEL**

25

26        Samsung's final argument is that the Court lacks authority to impose sanctions under

27 Rule 37 or its inherent authority. (*See, e.g.*, Dkt. 2835-3 at 8-11.)  That argument lacks any merit.

28

The Ninth Circuit has explicitly—and repeatedly—held that Civil Rule 37 authorizes sanctions for violations of Rule 26(c) protective orders. *See Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,* 992 F.2d 932, 934–35 (9th Cir.1993) ("Advisory Committee Note, 1970 Amendment, subdivision (b) 'Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders,' including Rule 26(c) protective orders.)."); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 911 (9th Cir.1986) (upholding sanctions under Rule 37(b) for violation of a protective order); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir.1983) (same); *Heavyhitters v. Nike Inc.*, 251 Fed. App'x 378, 380 (9th Cir. 2007) (same).

Samsung's arguments to the contrary in its December 2 submission are unavailing. Samsung does not even acknowledge the binding Ninth Circuit authority (*Westinghouse*) holding that Rule 37 authorizes sanctions for protective order violations. (*See* Dkt. 2835-3 at 8-9 & nn. 2-3.) The only case Samsung is able to cite for the proposition that Rule 37 does *not* authorize sanctions for protective order violations—*Lipscher*, an Eleventh Circuit case—has been repeatedly criticized and rejected. *See, e.g.*, *Smith & Fuller, P.A.*, 685 F.3d 486, 488-89 (5th Cir. 2012); *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011); *Whitehead v. Gateway Chevrolet, Oldsmobile*, 2004 WL 1459478, at *3 (N.D. Ill. Jun. 29, 2004).

Samsung also fails to give any reason why the Court cannot sanction Samsung under its inherent authority. The only limitation on inherent-authority sanctions offered by Samsung is that the court must find that a party acted in "bad faith." (Dkt. 2835-3 at 23.) But, as discussed above, Samsung at least recklessly disregarded its obligations under the Protective Order, which is tantamount to violating that order in bad faith.[4]

Moreover, "bad faith" is not required for inherent authority sanctions. The Ninth Circuit has explained that "a district court may levy sanctions pursuant to its inherent power for "'willful disobedience of a court order . . . *or* when the losing party has acted in bad faith.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Fink v. Gomez*, 239 F.3d

---

[4] Samsung concedes that "bad faith" encompasses "recklessness when combined with an additional factor." (Dkt. 2835-3 at 23.)

989, 991-993 (9th Cir. 2001)).  This "does not require proof of mental intent such as bad faith or an improper motive." *Id.*  Indeed, the Ninth Circuit recently upheld an award of sanctions issued under the district court's inherent authority where the "district judge never made a finding of bad faith or conduct tantamount to bad faith and. . . [the sanctioned party's] conduct was 'inadvertent.'" *Evon*, 688 F.3d at 1035.

## IV.   THE SANCTIONS SHOULD BE SIGNIFICANT TO ADDRESS THESE VIOLATIONS AND DETER SIMILAR MISCONDUCT

As detailed in Apple's pre-hearing submissions, sanctions are warranted and necessary to redress past harm and prevent future harm to Apple and its licensing partners, to vindicate the Court's and the public's interest in promoting rigorous compliance with the rules of the judicial system, and to deter future violations. (Dkt. 2838-3 at 15);  *see also Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 796-97 (7th Cir. 2009).  Even now, Samsung argues that Apple and Nokia are over-inflating the importance of merely technical breaches.  Not so: Samsung's systematic indifference to its obligations must be remediated and prevented from recurring.  Apple previously set forth the sanctions it believes will address these interests (Dkt. 2838-3 at 15-21), and highlights below the sanctions that are particularly important.

### A.   Samsung Should Not Be Permitted to Benefit from its Misconduct

Samsung's Protective Order violations should not place it in a ***better*** position than it would have been in the absence of its breaches.  Accordingly, certain sanctions are necessary to ensure that Samsung does not obtain a windfall from its misconduct.

#### 1.   Dr. Ahn and Other Samsung Licensing Executives Should be Barred from Negotiating SEP Licenses for Wireless Communications Technologies For Two Years

Samsung licensing executives Dr. Ahn, James Kwak, Indong Kang, Clayton Kim, and others now know the highly confidential financial terms of the Apple-Nokia and other Apple licenses, in violation of the Court's Protective Order.  (*See, e.g.*, Dkt. 2557-8 [Ahn Dep.] at 152.)  This knowledge gives them a clear advantage in their license negotiations against Apple and others, and they cannot realistically be expected to "forget" those terms.  *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed Cir. 2010) ("'[I]t is very difficult for the

1   human mind to compartmentalize and selectively suppress information once learned, no matter

2   how well-intentioned the effort may be to do so.'") (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336,

3   1350 (D.C. Cir.1980)).  Yet, in the absence of a Court order, these same executives will continue

4   to lead Samsung's licensing strategy and negotiations with Apple and other potential Samsung

5   licensees for alleged standard-essential patents.  As courts have recognized in analogous

6   contexts, an injunction is warranted to prevent future harm that would be caused by the use of

7   confidential information improperly obtained.  *See Minnesota Mining & Mfg. Co. v. Pribyl*, 259

8   F.3d 587, 607 (7th Cir. 2001) ("The purpose of a permanent injunction is to protect trade secret

9   owners from the ongoing damages caused by the future use of trade secrets."); *Lamb-Weston,*

10  *Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).  Accordingly, Apple urges the

11  Court to enjoin Samsung from employing Dr. Ahn, Mr. Kwak, and other Samsung licensing

12  executives who improperly had access to Apple's SEP licensing information to negotiate SEP

13  licenses relating to wireless communications technology for a period of two years.

14           **2.      The Court Should Find that Samsung Engaged in Improper Licensing
                        Conduct**

15

16          Samsung engaged in negotiations of SEP licenses with Apple, Nokia, Ericsson, and

17  perhaps others while in possession of Apple confidential licensing information in violation of the

18  Protective Order.  This was unquestionably improper.  Samsung's negotiators held—and still

19  hold—an ill-gotten information asymmetry over their counterparts.

20          That bell cannot be unrung, but what can be done is to set the public record straight, and

21  to make clear—through a public finding by the Court—that Samsung has engaged in bad-faith

22  licensing conduct.  With that public finding, Samsung will not be able to wrongly argue to courts

23  and regulatory agencies that it has negotiated FRAND licenses in an entirely above-board and

24  good-faith fashion.  Samsung's actual conduct deserves to be transparently exposed to the public.

25      **B.      Apple Should be Made Whole To The Extent Possible**

26           **1.      Apple Should be Awarded its Fees and Costs at Least for Pursuing
                        this Motion**

27

28

APPLE INC.'S POST-HEARING BRIEF IN SUPPORT OF SANCTIONS
Case No. 11-cv-01846-LHK (PSG)

Without a doubt, these sanctions proceedings have involved a significant expenditure of resources by all parties involved, as well as the Court. Unfortunately, Samsung's actions—both before and during the proceedings—made them necessary. Apple's motion, with the aid of this Court's interim orders, resulted in the discovery of numerous protective order violations that otherwise never would have been discovered. *Compare* Dkt. 2374-5 (8/1/2013 Becher Letter identifying approximately 64 recipients of confidential information) *with* Dkt. 2557-27 (showing over 220 recipients identified as of Oct. 21, 2013). Without these discoveries, Apple's highly confidential licensing information undoubtedly would have remained in the hands of persons barred from receiving it under the Protective Order. Samsung's assertion that these proceedings were "self-inflicted" by Apple thus cannot be squared with the facts. Apple clearly should at least be made whole for the expenditures incurred in pursuing this motion. *See, e.g.*, *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 602 (S.D. Tex. 2011). These facts also justify finding the -630 and -1846 cases to be "exceptional cases" under 35 U.S.C. § 285.

## 2. Quinn Emanuel Should be Enjoined from Receiving Any Apple Materials Produced Under a Protective Order for Two Years

As another step to begin to restore Apple to the position it would have been in absent the wide-ranging Protective Order violations, the Court should enjoin Quinn Emanuel from receiving any Apple materials produced under a new Protective Order in any other matter for a period of two years. Recognizing the advanced state of the -1846 and -630 cases, Apple does not seek Quinn Emanuel's disqualification from those cases.

## V. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court enter the proposed sanctions against Samsung.

Dated: December 13, 2013          /s/ Mark D. Selwyn
                                   Mark D. Selwyn

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 13, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-1.

/s/ Mark D. Selwyn
Mark D. Selwyn