| | |
|---|---|
| 1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|  | Charles K. Verhoeven (Bar No. 170151) |
| 2 | charlesverhoeven@quinnemanuel.com |
|  | 50 California Street, 22nd Floor |
| 3 | San Francisco, California 94111 |
|  | Telephone: (415) 875-6600 |
| 4 | Facsimile: (415) 875-6700 |

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**DECLARATION OF JIN HWAN KWAK IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**<br><br>**Date**:   October 22, 2013<br>**Time**:    10:00 a.m.<br>**Place**:    Courtroom 5, 4th Floor<br>**Judge**:   Hon. Paul S. Grewal |

I, Jin Hwan Kwak, declare:

1. I am a Vice President of in charge of licensing at Samsung Electronics Co., Ltd. ("Samsung") and have held this position since December 2011. My main responsibilities are to develop licensing strategies and engage in licensing-related negotiations, including negotiations with Nokia Corporation ("Nokia"). I have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, I could and would testify to such facts under oath.

2. I hold an undergraduate degree in mathematics from Sogang University in South Korea.

3. I have been involved directly or indirectly in the negotiation of many licenses during my employment at Samsung. To assist with my work, I try to monitor information about prevailing license terms in the marketplace, particularly in the context of smartphones. Among other things, I regularly review such public sources as press and Internet reports regarding the smartphone industry, and I am regularly in contact with industry professionals.

4. I sometimes receive hundreds of emails in a day, including many from outside counsel such as Quinn Emanuel. I cannot read or review all the emails I receive. I do not remember receiving or reviewing any emails or attachments from Quinn Emanuel attaching the report of an expert named David Teece. I also do not remember receiving or reviewing any emails or attachments from fellow Samsung employees or other outside counsel attaching the Teece report.

5. I do not know the specific financial terms of the Apple Nokia license are, nor do I recall ever knowing them, or being informed of them in any written document or conversation. I do recall reading news articles about Apple's license with Nokia around the time of that license agreement in 2011, although I do not know for sure whether those news reports were accurate.

6. I received emails from Quinn Emanuel regarding Samsung's International Trade Commission ("ITC") public interest brief, and emails from fellow Samsung employees and other outside counsel also attaching the ITC public interest brief. I recall reviewing these emails, but I do not recall reviewing the ITC public interest brief itself or any Apple license information in it.

1    7.   I understand that Nokia has claimed that Dr. Seungho Ahn made certain statements during a June 4, 2013 meeting with Paul Melin, Nokia's Chief Intellectual Property Officer, to the effect that the terms of the Apple-Nokia license were known to Dr. Ahn.   I have not reviewed Mr. Melin's declaration since I have not been allowed to see it, and I do not know precisely what he has accused Dr. Ahn of saying.   But I did attend the June 4 meeting that included a discussion of Apple's license with Nokia.

8.   At the June 4 meeting, Dr. Ahn, Indong Kang, and I met with Mr. Melin and Eeva Hakoranta of Nokia for ongoing license negotiations between Samsung and Nokia.   The discussions took place in Seoul, Korea and were conducted in English.

9.   [REDACTED].   After receiving this offer, Nokia's representatives took a break from the meeting to consider it.

10.   After the break, Mr. Melin showed us a PowerPoint presentation that included a chart with proposed royalty terms that Nokia believed Samsung should pay.   Dr. Ahn asked why those terms were so high or what company would pay such high terms.   Mr. Melin then stated [REDACTED] Dr. Ahn said that Mr. Melin must be talking about Apple, and Mr. Melin did not disagree.   Dr. Ahn said, in effect, that it was his understanding that Apple was not paying Nokia that much, and that based on the industry information out there [REDACTED] Again, Mr. Melin did not tell Dr. Ahn that he was wrong.   We then took another break in the meeting.

11.   The meeting ended shortly after this break, and the Samsung and Nokia participants had a friendly dinner together that lasted for over two hours.   At no point during the meeting, or the subsequent dinner, did Mr. Melin tell us that Dr. Ahn should not have known those Apple/Nokia license terms or claim that anything improper had been said or done.

1   12.   While I have never seen the Apple/Nokia license agreement, the terms that Dr. Ahn stated at the June 4 meeting were consistent with my general recollection of public information that has been reported about Apple's license with Nokia back in 2011.

13.   At no point during the June 4 meeting did I hear Dr. Ahn tell Mr. Melin that he had received Apple/Nokia licensing terms from his outside counsel in the Apple/Samsung case.

14.   I do not recall reviewing any document from Quinn Emanuel that included the financial terms of Apple's licenses with Ericsson, Sharp, or Philips.   I do not know what those financial terms are, nor do I recall ever knowing them.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.   Executed in Suwon, South Korea, on October 21, 2013.

                                              */s/ Jin Hwan Kwak*
                                              Jin Hwan Kwak

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION**

I, Victoria Maroulis, am the ECF user whose ID and password are being used to file the foregoing document.   I hereby attest pursuant to Civil L.R. 5-1 that concurrence in the electronic filing of this document has been obtained from Jin Hwan Kwak.

  /s/ Victoria F. Maroulis
Victoria F. Maroulis