QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK (PSG)<br><br>**FILED UNDER SEAL**<br><br>**SAMSUNG'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER**<br><br>**Date**:  October 1, 2013<br>**Time**:  10:00 a.m.<br>**Place**:  Courtroom 5, 4th Floor<br>**Judge**:  Hon. Paul S. Grewal |

02198.51855/5501430.1

Case No. 11-cv-01846-LHK
SAMSUNG'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER

**Preliminary Statement**

Apple's motion to compel and for sanctions attempts to piggy-back off of an earlier motion filed by non-party Nokia in Case No. 12-630 also pending before this Court (the "NDCA II" case). The Nokia motion resulted in an agreement that Apple is fully aware of, but barely mentions. Under its terms, set forth in a formal stipulation filed in the NDCA II case, Samsung and its counsel set forth a protocol to fully investigate the scope of the inadvertent disclosures that are the subject of this motion, and to determine whether any use was made of that information. As part of that detailed stipulation, Samsung agreed to retain an independent computer forensics firm to audit Samsung's files, at Samsung's expense, and to provide the results of the investigation to Nokia. As Samsung has informed Apple, Samsung is willing to provide the results of this investigation to Apple, provided that Apple, like Nokia, agrees that doing so will not constitute a waiver of the attorney-client privilege or attorney work-product protection.

Samsung's agreement to a procedure for investigating the inadvertent disclosures was sufficient for Nokia to withdraw its own request for relief. This was even though Nokia, quite unlike Apple, had specifically alleged that it had been prejudiced by Samsung's use of Nokia's confidential information. Apple has not even alleged comparable prejudice here and instead merely speculates that it *may have* been harmed. Indeed, over a year before the inadvertent disclosures at issue, the press had already publicly reported the relevant financial terms of the Nokia-Apple license without any apparent objection by Apple. And Apple agreed in other litigation that certain Samsung employees could review the information that it now claims was so sensitive. Yet, Apple demands here an investigation and discovery that is both onerous and unjustifiable. The ongoing investigation pursuant to stipulation will answer the very questions Apple raises here as to the extent of disclosure and possibility of use. Once that investigation is completed, and its results shared with Apple, Apple can assess whether it does in fact have any need for further investigation, and the Court will be in a position to fairly address any motion filed. Samsung has, notwithstanding Apple's decision to file this motion, continued to consult with Apple as to its ongoing investigation in the hopes that transparency will bring a swift end to any doubts. Samsung will continue to do so.

**Statement of Facts**

***Quinn Emanuel's Inadvertent Disclosure of Certain Nokia-Apple Licensing Terms.*** Nokia first notified Samsung of the possibility that Samsung employees had obtained information regarding the financial terms of Apple's license with Nokia that was designated as confidential on July 1, 2013, when it filed its Motion for Protective Order in the NDCA II case.[1] Nokia's motion and the supporting declarations were also served on Apple at the time, without redaction. Samsung and Quinn Emanuel promptly initiated an investigation into Nokia's claim and subsequently identified a redacted expert report which contained some information concerning the financial terms of a Nokia-Apple license and had not been sufficiently redacted.[2]

The inadvertently-disclosed expert report was prepared by Samsung's damages expert, Dr. David Teece, in the course of this lawsuit.[3] Quinn Emanuel's practice has been to redact Apple and third party-confidential information from copies of its experts' reports for before sending them to Samsung.[4] This report was no exception—Quinn Emanuel redacted the report to remove confidential information. However, the redactions were incomplete and inadvertently left in a statement regarding aspects of the royalties due under the Nokia-Apple license, which are discussed below.[5] A fuller account about these inadvertent disclosures, including the dates and circumstances of the disclosures, is set forth in the accompanying declaration of Quinn Emanuel partner Thomas Pease and the exhibits thereto.

***Samsung's Voluntary Steps To Further Investigate the Inadvertent Disclosures.*** On July 16, 2013, Quinn Emanuel notified Nokia of the inadvertent disclosures it had identified, including by identifying the authors and recipients of each of the emails as well as the contents of the attachments that related to the license agreement between Nokia and Apple; Quinn Emanuel

---

[1] Declaration of Thomas Pease ("Pease Decl."), ¶ 3.
[2] Pease Decl., ¶ 4.
[3] Pease Decl., ¶ 5.
[4] Pease Decl., ¶ 6.
[5] Pease Decl., ¶ 6.

followed up with additional information on August 1.[6] Although Quinn Emanuel raised the possibility of deleting the identified emails containing the inadvertent disclosures as the protective order contemplated,[7] counsel for Nokia from Alston & Bird requested that the emails be retained for the time being and not deleted.[8] As a consequence, Quinn Emanuel sent a document preservation notice to the recipients of the inadvertent disclosures at Samsung and continued working with Nokia to agree on procedures to investigate the disclosures.[9]

On August 18, 2013, after the Court granted the parties' extensions on briefing to allow for further negotiation, Samsung and Nokia filed a stipulation that set forth their agreements regarding Samsung's continued investigation of the inadvertent disclosures at issue and Nokia's withdrawal of its motion for a protective order (Dkt. 742, the "Stipulation").[10] Samsung agreed to take the following additional steps, and use its best efforts to complete them within 45 days, "with the objective of identifying and reporting on the totality of all disseminations to, references about and uses of" the confidential information "to or by parties not subject to the Protective Orders of this Court":

1) Determine whether any disclosed information has been further disseminated or used by any outside lawyers who received such information, and "provide Nokia with a sworn statement reporting on its performance of this task, its findings, and identifying any further dissemination of the Disclosed Information by the Firms, and, if so, including when, to whom, a description of the circumstances of disclosure, and an identification of any Documents that reflect or contain such further dissemination" and an explanation of "the reasons why the Disclosed Information was forwarded to the Firms" (Stipulation ¶ 4);

2) Retain computer forensics firm Stroz Friedberg, at its own expense, "to conduct an independent audit of the files of the Samsung employees identified [by Samsung] as recipients of the Disclosed Information," for the purpose of collecting and preserving any documents within Samsung evidencing "(i) receipt or dissemination of the Disclosed Information and/or (ii) any use of, or reference to, the Disclosed Information by Samsung," and expanding the audit to include any additional Samsung employees who are identified as having received or used the information (*id*. ¶ 5);

---

[6] Pease Decl., ¶¶ 10-11 and Exhs. A, B, (letter from Robert Becher to Randall Allen dated July 16, 2013 and letter from Robert Becher to Randall Allen, dated August 1, 2013).
[7] Dkt. 687 at 30.
[8] *Id.*
[9] Pease Decl., ¶ 12.
[10] Dkt. 742.

02198.51855/5501430.1

-3-   Case No. 11-cv-01846-LHK
SAMSUNG'S OPPOSITION TO APPLE INC.'S MOTION TO COMPEL FURTHER DISCOVERY AND FOR SANCTIONS FOR VIOLATIONS OF PROTECTIVE ORDER

3) Request Stroz Friedberg to "prepare a log of all instances in which the Disclosed Information was disseminated or in which the Disclosed Information was referenced or used in any Documents by Samsung employees," including by identifying "the author or sender and all recipients of any identified Documents; the date and time; the subject line and a description of the subject matter of the Document sufficient to understand the nature of the use of or reference to the Disclosed Information" (*id*. ¶ 7); and

4) Permit Nokia to "request and receive copies of all Documents further disseminating, referencing or using the Disclosed Information provided the copies of the Documents are redacted, at least in the first instance, to eliminate any claimed attorney-client privileged information, attorney work product or third party confidential information," with Nokia reserving its rights to "seek complete, unredacted copies of Documents obtained from Samsung evidencing further dissemination, reference to or use of the Disclosed Information, as well as the right to seek unredacted versions of certain log entries," and to "challenge all claims of privilege, work product or third party confidentiality" (*id*.).

In addition, Quinn Emanuel agreed to a procedure whereby it would review its own documents "to determine whether there were additional instances in which the Disclosed Information was disclosed or disseminated to Samsung or others outside the Protective Orders of this Court," and further would permit Stroz Friedberg to "conduct an independent review of Quinn Emanuel's investigation and collection process as is necessary to ensure that Quinn Emanuel's search of its own firm Documents is complete and accurate." *Id*. ¶ 8. Quinn Emanuel further agreed that upon completion of its investigation and if Nokia so requests, it will "take all necessary steps within its power to secure the return or verified destruction of the Disclosed Information or any Documents containing the Disclosed Information in the possession of the Firms, Samsung, Quinn Emanuel, and any persons to whom the Disclosed Information was further disseminated." *Id.*

Nokia and Samsung agreed that following the completion of the process outlined in the Stipulation, they "will work together to determine whether any additional steps, including depositions or the production of unredacted Documents, will be necessary to obtain a complete understanding of the disclosure and/or use of the Disclosed Information," and that in "the event the parties are unable to agree on what additional steps are necessary they will present any disputed issues to the Court for resolution." *Id*. ¶ 9.

### **_Samsung's Efforts to Keep Apple Apprised of Its Disclosures and Subsequent Investigation_**. In addition to working closely with Nokia to address the issues raised in its motion

for protective order, Samsung has been in communication with Apple concerning its inadvertent disclosures and the status of its investigation. On August 1, 2013, once it had completed its initial investigation, Samsung notified Apple of the confidential information that was inadvertently disclosed to Samsung in Dr. Teece's report.[11] Samsung provided the dates and recipients of each email to which the confidential information was attached. Samsung's letter to Apple contained a detailed factual description of how and why the inadvertent disclosures took place, which is information that was not contained in its earlier letter.

On August 9, 2013, Samsung also told Apple that it was "certainly willing to entertain reasonable requests that are consistent with the requirements of the Protective Order," including by "prepar[ing] a log listing the authors and recipients of any emails sent within Samsung that forwarded or replied to the emails from Quinn Emanuel to Samsung that" Samsung identified in its letter.[12] Samsung further offered to consider Apple's "request for copies of the emails" identified in the letter, in redacted form due to their privileged nature.

On August 13, 2013, counsel for Samsung spoke with Apple's counsel to continue to discuss these matters.[13] On August 16, Quinn Emanuel wrote to Apple again to provide additional information in response to specific questions Apple had raised concerning the inadvertent disclosures.[14] On August 18, as noted, Samsung and Nokia filed the Stipulation and Nokia's motion for protective order was withdrawn.[15] On August 19, Quinn Emanuel provided Apple with redacted copies of the emails Apple had identified in its prior letters.[16] On August 23, Apple filed its instant motion. Since that time, Apple has continued to pose questions to Samsung, and Samsung has continued to respond to those questions as appropriate and, as noted, has offered to

---

[11] Pease Decl., ¶ 12, Exh. C (letter from Robert Becher to Mark Selwyn, dated August 1, 2013).
[12] Pease Decl., ¶ 13, Exh. D (letter from Robert Becher to William Lee, dated August 9, 2013).
[13] Pease Decl., ¶ 14.
[14] Pease Decl., ¶ 14, Exh. E (letter from Robert Becher to William Lee, dated August 16, 2013).
[15] Dkt. No. 742.
[16] Pease Decl., ¶ 16.

1 provide Apple with the results of the full investigation.[17]

2      ***The Protective Order Provision Regarding Inadvertent Disclosure of Confidential***

3 ***Information***.  The protective order pending in this action contains a section titled "Inadvertent

4 Disclosure Not Authorized by Order." That provision provides:

> In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

10 Dkt. 687 at 30.

11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

12 The information that is the subject of Apple's motion concerns a license agreement between Apple

13 and Nokia. Pursuant to that license, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

14 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬

15 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

- A June 15, 2011 article in *Business Insider* titled "Apple Paying Nokia $715 Million Upfront to Settle Patent Dispute, Estimates Analyst" states: "Bernstein analyst Pierre Ferragu estimates **Apple is paying Nokia €500 (~$715) million** as an upfront payment this quarter to settle its patent dispute. He estimates **Apple will pay Nokia an additional €100 (~$143) million** the rest of the year."[18]  Other publications subsequently reported on the contents of the *Business Insider* article.[19]

- June 15, 2011 article in the *Wall Street Journal* titled "Nokia, Apple Make Up" states that "Swedbank AB analyst Jari Honko estimated **Apple's one-time payment to Nokia could be around €500 million**, or about $720 million." It also states that "Apple will make a one-time

---

[17] Pease Decl., ¶ 17, Exh. F (letter from Robert Becher to Joseph Mueller, dated August 30, 2013).
[18] Pease Decl., ¶ 19, Exh. G (http://www.businessinsider.com/nokia-apple-settlement-2011-6) (emphasis added).
[19] Pease Decl., ¶ 19, Exhs. H, I. (http://regator.com/p/251943988/apple_paying_nokia_715_million_upfront_to_settle/ and http://seekingalpha.com/article/275265-apple-patent-settlement-with-nokia-may-spur-more-claims).

payment to Nokia and pay continuing royalties as part of a patent-license agreement, Nokia said Tuesday."[20]

- An October 3, 2011 article from *AppleInsider* titled "SEC sought more details on Apple-Nokia patent settlement" reported the following on the receipt of payments as part of the settlement: "In July, Nokia revealed it had received a $600 million one-time royalty payment. Though the public filing did not disclose the sum it was paid by Apple in their patent deal, the information would suggest **Apple's payment did not exceed $600 million**. Nokia and Apple resolved their patent dispute in June, with Apple agreeing to pay Nokia for licenses. The deal included a one-time payment to Nokia, in addition to ongoing royalties."[21]

█████████████████████████████ but Apple also voluntarily permitted the terms of ten of its licenses—including all of the information regarding its license with Nokia at issue here—to be viewed by Samsung employees. On February 23, 2013, Apple filed a pleading in the litigation between Apple and Samsung in the Netherlands that attached a spreadsheet listing the terms of many of Apple's licenses. Although the spreadsheet did not name the parties to the license agreements with Apple, the spreadsheet █████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████ Apple authorized Samsung's outside counsel to view this spreadsheet and also permitted nine Samsung employees to view the spreadsheet, including senior executives responsible for licensing with both Apple and Nokia.[22] Apple provided further information about the licenses identified in its spreadsheet in a supplemental disclosure that Samsung's authorized in-house personnel were permitted to see.[23]

## Argument

Apple's motion for orders permitting it to take discovery and for sanctions should be denied because Samsung already has provided, or will provide following the completion of the

---

[20] Pease Decl., ¶ 19, Exh. J. (http://online.wsj.com/article/SB10001424052702303714704576384783542753682.html) (emphasis added).
[21] Pease Decl., ¶ 19, Exh. K. (http://appleinsider.com/articles/11/10/03/sec_sought_more_details_on_apple_nokia_patent_settlement) (emphasis added).
[22] Pease Decl., ¶ 18.
[23] *Id.*

1  ongoing investigation pursuant to stipulation, Apple with all the information it is entitled to in the
2  circumstances, and no facts support Apple's request for sanctions.

3  **I.    SAMSUNG HAS COMPLIED FULLY WITH THE APPLICABLE PROCEDURES**
4  **FOR REPORTING INADVERTENT DISCLOSURES OF CONFIDENTIAL**
5  **INFORMATION**

6  Apple's requests for relief are without merit because Samsung has complied fully with the
7  provision of the protective order that sets forth procedures for reporting inadvertent disclosures of
8  confidential business information. In this situation, the protective order required Samsung to
9  (i) "immediately notify counsel for" Apple of the inadvertent disclosure and provide it with "all
10 known relevant information concerning the nature and circumstances of the disclosure," and
11 (ii) "promptly take all reasonable measures to retrieve the improperly disclosed Discovery
12 Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is
13 made." Dkt. 687 at 30.

14 As set forth above and explained in detail in the accompanying declaration of Thomas
15 Pease, upon learning of Nokia's claim that Samsung's employees may have received information
16 about the terms of the Nokia-Apple license from outside counsel, Quinn Emanuel investigated
17 whether this had occurred through the actions of its own personnel and, if so, how it had
18 happened.[24] After Quinn Emanuel learned that certain terms of the Nokia-Apple license had
19 inadvertently been included in attachments to emails sent to Samsung, Quinn Emanuel notified
20 Apple of these disclosures and provided all known relevant information, including the dates of the
21 disclosures, the senders and recipients of the emails and an explanation of why and how the
22 disclosures took place.[25]

23 Samsung and Quinn Emanuel have also agreed to undertake steps far in excess of what is
24 required by the protective order. Pursuant to the stipulated protocol, an independent forensic
25 computer company, Stroz Friedberg, has been retained to audit Samsung's emails and to collect

---

[24] Pease Decl., ¶ 4.
[25] Pease Decl., ¶ 12, Exh. C (August 1, 2013 letter from Robert Becher to Mark Selwyn).

1  and preserve any records evidencing the receipt, dissemination or use of the inadvertently-
2  disclosed information and to audit Quinn Emanuel's investigation of its own emails. Quinn
3  Emanuel also has agreed to provide Nokia's counsel with a log reflecting any further
4  dissemination or use of the information provided by Quinn Emanuel regarding the terms of the
5  Nokia-Apple license (subject of course to limitations based on the attorney-client privilege and
6  work-product protections).[26]  Once the investigation is complete, steps will be taken to retrieve
7  and dispose of the inadvertently disclosed information.  Quinn Emanuel will make the results of
8  its investigation available to Apple, provided only that Apple, like Nokia, agrees that Samsung's
9  provision of this information will not result in a waiver of the attorney-client privilege.  In short,
10 Samsung has not only complied with, but exceeded, what is required under the protective order in
11 these circumstances.

## II.  APPLE IS NOT ENTITLED TO DISCOVERY FROM SAMSUNG

13  Apple's request for broad and invasive discovery, including the production of emails
14 relating to the inadvertent disclosures and depositions and declarations form Samsung and its
15 lawyers (*see* Mot. at 15), should be denied.  The protective order provision governing this
16 situation does not contemplate such discovery (or any discovery), and Apple has cited no other
17 authority that would authorize it.  Nor has Apple provided any factual justification for why it
18 needs this discovery given the comprehensive efforts Samsung already is taking to investigate and
19 provide information about the disclosures that are and will be subject to independent, third-party
20 verification pursuant to the stipulation.

21  In particular, Apple's requests for the production of Samsung's emails in which the
22 confidential information was inadvertently transmitted is unnecessary and indeed moot because, as
23 Apple neglects to mention, Samsung already has voluntarily provided Apple with redacted copies
24 of those emails without their privileged and work-product content.[27]  Nor should Apple be
25 permitted to take depositions.  In support of its request for depositions, Apple references

---

[26] Pease Decl., ¶ 13.
[27] Pease Decl., ¶ 16.

1  statements allegedly made by a Samsung negotiator to his Nokia counterpart referencing the terms
2  of the Nokia-Apple license.  Mot. at 6-7.  Those statements are what triggered the investigation
3  that is now on-going into precisely the issues raised by Apple here; the whole purpose of the
4  investigation is to provide answers to the very same "questions" Apple lists (Mot. at 13), by
5  determining the full extent of the disclosure and use (if any) of Apple's confidential information.

6  Apple does not explain why it needs a duplicate investigation, much less why it has any
7  right to one now.  While Apple argues in a footnote that it "believes that further process" beyond
8  what Samsung has agreed to do in the Stipulation "is required to understand the full factual
9  record" (Mot. at 3 n.1), Apple does not substantiate this conclusory claim.  At most, it asserts that
10 the investigation set forth in the Stipulation "would result only in a log of relevant documents—
11 and Apple seeks the production of those documents, or, at a minimum, an appropriate process for
12 *in camera* review." Mot. at 14.  But Apple is incorrect that the most the Stipulation provides for is
13 the production of a log identifying relevant documents, as it also permits Nokia to request and
14 receive copies of redacted versions of those documents.  Stipulation ¶ 7.  In any case, Apple does
15 not explain why a log of documents—akin to how any privileged document would be identified in
16 discovery—is insufficient in the current circumstances.  Nor does Apple provide any authority that
17 would entitle it to the production (or even an *in camera* review) of the privileged portions of
18 Samsung's documents, and its request is contrary to law.[28]

19 Apple also fails to address the equally significant obstacle to the overbroad discovery that
20 it seeks posed by considerations of relevance.  There is absolutely no evidence that the information
21 that was inadvertently disclosed has any bearing on any issue relevant to this case, let alone when

---

[28]  There are only limited exceptions to the attorney-client privilege or work-product protections, and the inadvertent disclosure of confidential information, or even of privileged information itself, is not among them.  *See*, *e.g.*, *Pearce v. Coulee City*, 2012 WL 3643676, *2-3 (E.D. Wash. Aug. 24, 2012) (holding no waiver of the attorney-client privilege in the case of inadvertent disclosure, including public filing of privileged documents, where "the [privilege] holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error"); *Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1429 (D. Ariz. 1993) (holding that unauthorized disclosure of internal memo subject to strict confidentiality restrictions did not waive attorney-client privilege).

1  the information was transmitted in December 2012, at a time when, Apple admits, "there was no
2  pending litigation activity to which that expert report would have been relevant." Mot. at 6.  In
3  any case, as shown above, by December 2012 the relevant Nokia-Apple license terms had already
4  been publicly reported in the press for well over a year.

5        Although Apple's motion should be denied outright, it should at the very least be deferred
6  until Samsung's internal investigation is complete.  This is precisely the procedure to which Nokia
7  agreed in its stipulation with Samsung.  *See* Stipulation ¶ 9 (providing that follow the completion
8  of the investigation process outlined in the Stipulation, the parties "will work together to
9  determine whether any additional steps, including depositions or the production of unredacted
10 Documents, will be necessary to obtain a complete understanding of the disclosure and/or use of
11 the Disclosed Information").  This procedure makes sense, and should be followed here as well.  It
12 enables the parties and the Court to determine whether and to what extent information Apple
13 designated confidential was disseminated or used by Samsung before any further investigation or
14 discovery is conducted.  Without this information—which Samsung is already collecting—
15 Apple's request for depositions and other discovery is premised entirely on speculation and
16 conjecture.

17 **III.**      **APPLE'S REQUEST FOR SANCTIONS SHOULD BE DENIED**

18       Despite arguing that "sanctions are warranted" (Mot. at 10), Apple concedes that its
19 request for sanctions is premature until additional "facts are known." Mot. at 3.  Apple does not
20 even hint at what sort of "sanction" would be appropriate here, nor can it because sanctions could
21 not properly be imposed.  It is undisputed that the disclosures of Apple's confidential information
22 were entirely unintentional, a product of human error.  It is undisputed that Samsung has agreed
23 to a full investigation to identify the full scope of the disclosures and assure that there will be no
24 misuse of the data.  And Apple concedes that it has *no evidence* that Samsung made any improper
25 use of Apple's confidential information.

26       Samsung regrets that mistakes were made.  But those mistakes must, fairly, be viewed in
27 their proper context.  The monetary terms of the Nokia-Apple license have been reported publicly
28 in media sources and Apple itself voluntarily permitted the terms of ten of its licenses, including

all of the information regarding the license with Nokia that is at issue here, to be viewed by Samsung employees, including senior licensing executives.[29]  At most, Apple speculates that "*it appears* that Samsung employees *may have used* the improperly disclosed information to their advantage in licensing negotiations*,*" Mot. at 1 (emphasis added)—an apparent reference to negotiations involving Nokia, *not* Apple.

The very reason that protective orders include remedial provisions is because even the most attentive lawyers and staff members make mistakes, and confidential information is inadvertently disclosed often enough to require rules such as those being followed here.  The potential for inadvertent disclosure is heightened in the context of Apple's disputes with Samsung, given the volume of documents involved.  Apple has produced more than four million pages of documents in this case, and many millions more in other proceedings between the parties.  With so many documents, and so many attorneys working on different aspects of the case, the inadvertent disclosure of confidential information should not be sanctionable provided that appropriate remedial measures are taken, as they have been here.  *See*, *e.g*., *Lambright v. Ryan*, 698 F.3d 808, 816 (9th Cir. 2012) (affirming district court's refusal to order sanctions for inadvertent violation of protective order, other than requiring that the confidential materials be retrieved); *Adele v. Dunn*, 2013 WL 593291, *5-6 (D. Nev. Feb. 14, 2013) (declining to order sanctions for defendants' improper public disclosure of plaintiff's unredacted medical records where disclosure was unintentional and defendants "has taken appropriate steps to insure this does not occur in the future").[30]

---

[29] Pease Decl., ¶ 18.

[30] Apple's authorities in support of its sanctions request are easily distinguished and actually show why sanctions are *not* appropriate here. In *Brocade Communications Systems, Inc. v. A10 Networks, Inc*., 2011 U.S. Dist. LEXIS 99932 (N.D. Cal. Sept. 6, 2011) (Koh, J.), the court ordered sanctions based on the defendant's repeated violations of discovery orders requiring the production of source code, and after the defendant failed to show cause as to why sanctions should not issue. *Id*. at *6-10.  While the court also ordered limited monetary sanctions because the defendant had separately violated the protective order by publicly filing the plaintiff's confidential information, the defendant there had refused to take any remedial measures after the plaintiff notified it of the public filing and instead claimed that the plaintiff's information was not
    (footnote continued)

**Conclusion**

For the foregoing reasons, Apple's motion to compel and for sanctions should be denied.

DATED:  September 6, 2013            QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP


                                     By /s/ *Victoria F. Maroulis*
                                        Charles K. Verhoeven
                                        Kevin P.B. Johnson
                                        Victoria F. Maroulis
                                        William C. Price
                                        Michael T. Zeller

                                        Attorneys for SAMSUNG ELECTRONICS CO.,
                                        LTD., SAMSUNG ELECTRONICS AMERICA,
                                        INC. and SAMSUNG
                                        TELECOMMUNICATIONS AMERICA, LLC

---

confidential. *Id*. at *11-15 (noting the defendant's "decision to disregard the procedures in place for parties to resolve disputes over confidentiality designations").  In *Life Technologies Corporation v. Biosearch Technologies, Inc*., 2012 WL 1600393 (N.D. Cal. May 7, 2012), the court ordered certain sanctions requested by the plaintiffs, but rejected others, after the defendants' lawyers had disclosed to their client almost ***3,000 pages*** of the plaintiffs' confidential "laboratory notebooks," and then, upon discovering the disclosure, failed to notify the plaintiffs of the disclosure until more than a year later, and only after the plaintiffs discovered that the defendants had produced in discovery a portion of the plaintiffs' own confidential notebook along with emails among certain employees of the defendants discussing the notebook. *Id*. at *2-3.  In light of the inadvertent disclosure here, Samsung's disclosure of the relevant facts and its voluntary steps to investigate them further, these authorities plainly do not support Apple's request for sanctions.