UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., | Case No.: 5:11-cv-01846-LHK-PSG |
| Plaintiff, | **ORDER RE: MOTIONS TO COMPEL** |
| v. | **(Re: Docket Nos. 3212, 3213)** |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | |

Day 1,449 in this case.

Following remand by the district judge on two issues arising out of the undersigned's January 29, 2014 sanctions order, Plaintiff Apple Inc., Defendants Samsung Electronics Co., Ltd. et al. and non-party Nokia Corporation dispute whether Samsung may withhold as privileged 279 tabbed documents submitted for in camera review. Through a combination of its privilege log, briefs, declarations and this court's in camera review, Samsung succeeds in showing the documents it submitted were, as a whole, privileged. But by placing the contents of the documents at issue, distributing them and disclosing what they say and do not say in the sanctions proceedings,

1

Samsung waived that privilege. The result is that the court GRANTS Apple's and GRANTS-IN-PART Nokia's motions to compel, as explained below.

# I.

The Ninth Circuit describes elements of the attorney-client privilege this way: "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived."[1] "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[2] Claims of privilege must be particularized.[3]

The party asserting the privilege bears the burden of establishing all necessary elements.[4] In particular, a party asserting privilege must "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[5] The most common way to do this is with a privilege log. In the Ninth Circuit, a privilege log must identify "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all

---

[1] *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (citing 8 WIGMORE, EVIDENCE § 2292, at 554 (McNaughton rev. 1961)).

[2] *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

[3] *See* Fed. R. Civ. P. 26(b)(5); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008).

[4] *Id.* at 608; *Martin*, 278 F.3d at 999; Fed. R. Civ. P. 26(b)(5)(A).

[5] Fed. R. Civ. P. 26(b)(5)(A); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005) (explaining that a party claiming privilege must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.") (citing Rule 26(b)(5) Advisory committee's Note (1993 Amendments)).

2
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated."[6] The failure to substantiate privilege in a log also may waive the privilege.[7] But claims of privilege may pass muster despite an inadequate privilege log.[8] Briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient.[9] In camera review, often a court's last resort, also may enlighten the court's assessment of the privilege of the documents.[10]

This court previously held that Samsung and its attorneys violated the protective order by repeatedly distributing unredacted copies of an expert report from Dr. David Teece.[11] As part of its evaluation, the court conducted an exhaustive in camera review of voluminous documents claimed by Samsung as privileged. The result was an order to Samsung to show cause why sanctions were not warranted, and why privilege was claimed as to 11 particular documents.[12] Not satisfied with

---

[6] *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (citing *Dole v. Milonas*, 889 F.2d 885 (9th Cir. 1989)); *see also Trejo v. Macy's, Inc.*, Case No. 5:13-cv-02064-LHK, 2014 WL 1091000, at *2 (N.D. Cal. Mar. 17, 2014) (listing similar factors); PAUL W. GRIMM, CHARLES S. FOX & PAUL MONK SANDLER, DISCOVERY PROBLEMS AND THEIR SOLUTIONS, 62-65 (same).

[7] *See Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (affirming a waiver of privilege where party "fail[ed] to provide a complete privilege log demonstrating sufficient grounds for taking the privilege").

[8] *See, e.g.*, *Sann v. Mastrian*, Case No. 1:08-cv-1182-JMS, 2010 U.S. Dist. LEXIS 126168, at *4 (S.D. Ind. Nov. 29, 2010); *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007).

[9] *See Victor Stanley, Inc.*, 250 F.R.D. at 267 ("If . . . the requesting party challenges the sufficiency of the assertion of privilege protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege protection claimed for each document or category of document.").

[10] *See, e.g.*, *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, Case No. 09-cv-0100-DKC, 2013 WL 6844359, at *6-12 (D. Md. Dec. 24, 2013).

[11] *See* Docket No. 2935.

[12] *See* Docket No. 2689.

3
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

Samsung's response on sanctions, and because the Teece report plainly disclosed information confidential to both Apple and Nokia, the court awarded both Apple and Nokia their fees and costs.[13]

After the sanctions order issued, both Samsung and Nokia moved for relief. Samsung's motion made a narrow request: that the court reconsider whether Samsung had waived the attorney-client privilege as to seven particular documents addressed in the order.[14] In granting Samsung's motion, the district judge agreed with Samsung that its prior offer to produce the documents did not waive privilege.[15] But rather than simply decide whether Samsung had waived privilege on alternative grounds or whether Samsung is not entitled to assert privilege over the documents for other reasons, the district judge remanded the matter for further consideration.[16] The district judge denied Samsung's additional motion for relief from the award of fees and costs.[17] In granting-in-part Nokia's motion for relief for access to documents submitted by Samsung in camera,[18] the district judge again remanded the matter, so that the undersigned could consider further whether the privilege shielded the in camera documents. If the documents are indeed

---

[13] *See* Docket No. 2935.

[14] *See id.* at 8.

[15] *See* Docket No. 3194.

[16] *See id.* at 9-10.

[17] *See id.* at 2.

[18] The undersigned denied Nokia's previous motion for access to these documents, expressing concern that Nokia sought to engage in perpetual motion practice. *See* Docket No. 3075 at 16. The court instead required a declaration certifying that remediation was complete. *See* Docket Nos. 3061, 3106, 3190.

4
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

privileged, then the undersigned must consider whether due process requires that Nokia receive access.[19]

Back on this end of the fourth floor, Apple and Nokia filed new motions to compel.[20] Apple's motion seeks only the seven offered documents,[21] while Nokia seeks all documents reviewed in camera to which privilege does not attach. Apple and Nokia raise three principle arguments. First, Samsung failed adequately to substantiate its assertions of privilege. In particular, Samsung did not meet its burden to show privilege because Samsung's claims are too sweeping and generic. Second, Samsung waived any privilege by putting at issue what the documents do or do not disclose and by making selective and partial disclosures including to numerous people with no apparent connection to this litigation. Third, Nokia should receive access to the documents, even if they are privileged, to fairly evaluate the court's conclusions regarding protective order violations and sanctions.[22]

---

[19] *See* Docket No. 3194 at 12. Although Samsung suggests that the sanctions order could not stand if the court found that the documents remain privileged, this issue is moot in light of the court's ruling that Samsung waived any privilege it might have claimed.

[20] *See* Docket Nos. 3212, 3213. Because the parties raised their arguments during the original sanctions proceedings, and the district judge expressly ordered the court to consider and address those same arguments again, the court does not agree with Samsung's characterizations that Apple and Nokia have waived their privilege challenges. *See* Docket No. 3194 at 9-10, n.6 (finding Apple's arguments "have all been previously presented"; instructing the court to consider "Apple's and Nokia's alternative arguments" on remand and to "rule on any remaining privilege issues in the first instance"); *see also* Docket Nos. 2505-1, 2557-4, 2825-2. Nokia also previously argued that the documents are not privileged or Samsung failed to adequately lay the foundation for privilege and that Samsung waived any applicable privilege. *See* Docket No. 2872-5 at 9.

[21] *See* Tabs 6, 19, 20, 215.15, 222, 255 and 272. The court continues its convention of referring to documents by the tabbed number of the document in the binders Samsung presented to the court.

[22] Apple also argues the crime-fraud exception applies to the seven offered documents it seeks to compel. The crime-fraud exception bars a party from maintaining privilege over attorney-client communications that are "sufficiently related to" or "in furtherance" of an unlawful act. *In re Icenhower*, 755 F.3d 1130, 1141 (9th Cir. 2014). There is precedent, at least in other circuits, holding that violations of a protective order are akin to law breaking such that communications giving rise to protective order violations fall within the crime-fraud exception. *See, e.g.*, *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 337 F. Supp. 2d 862, 868 (N.D. Tex. 2004),

5
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

**II.**

The district court has jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. The matter was referred to the undersigned pursuant to Fed. R. Civ. P. 72(a).

**III.**

The Ninth Circuit is clear: a party cannot withhold documents as privileged if it fails to substantiate its privilege assertions.[23] A privilege log might serve to substantiate privilege assertions; so too might briefs, declarations and other proof or in camera review.[24] A party further cannot withhold privileged documents when the party raises a claim or defense that put the privileged communication at issue, discloses the documents to unrelated parties or discloses portions of privileged documents.[25] Though Samsung shows that privilege attaches, its waiver of that privilege warrants production of a subset of those documents.

*First*, before turning to the fundamental issues in dispute, the court must make one observation. While Apple's request for seven documents is narrow, Nokia's request for all of the in camera documents is overly broad, especially for a non-party.[26] Nokia's previous requests for documents were limited to those that related to the scope of Samsung's use of Nokia's confidential business information.[27] Only in its motion for reconsideration did Nokia demand production of all

---

*rev'd on other grounds*, 476 F.3d 278 (5th Cir. 2007). This court need not resolve that question here because, even if the exception does not apply, Samsung cannot maintain privilege over the seven documents in dispute. For the same reasons, the court does not reach Nokia's additional argument that Samsung's disclosures were intentional under Fed. R. Evid. 502(a).

[23] *See Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1148.

[24] *See Victor Stanley, Inc.*, 250 F.R.D. at 267.

[25] *Tennenbaum*, 77 F.3d at 340-41; *United States v. ChevronTexaco Corp.,* 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).

[26] *See* Docket No. 3215-3 at 13-15, 20 (citing *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)); *accord United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).

[27] *See, e.g.*, Docket No. 2988 at 2; Docket No. 2824 at 6.

6
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

of the documents.[28] But many of the privileged documents at issue do not even relate to Nokia,[29] and instead involve Apple's licenses with Sharp, Philips and Ericsson.[30] Nokia barely endeavors to explain why it is entitled to any of these.

*Second*, there is no doubt that Samsung's privilege log and declarations have problems. But on balance, the court's review of Samsung's privilege log, briefs, declarations and the in camera documents reveals that Samsung managed to meet its initial burden to show that privilege attaches to the documents.

Samsung's privilege log provides only generic statements such as "email reflecting legal advice regarding licensing, prepared at the direction of counsel in anticipation of litigation."[31] "A vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged."[32] Also unclear in the log is why Samsung produced some documents listed on the privilege log in redacted form—albeit with little more revealed than what was provided by the log—while entirely withholding others that include information that need not be redacted.[33] For some documents, the privilege log does not make clear an attorney was involved.[34] Even as to communications involving individuals who may be

---

[28] *See* Docket No. 3136.

[29] Docket No. 3215-3 at 1.

[30] *See* Docket No. 3215-3 at 14. Samsung says production of these documents would violate the protective order, *see* Docket No. 3215-3 at 20, but Nokia, too, is bound. *See* Docket No. 687.

[31] *See, e.g.*, Docket No. 3213-2 at Tab 24.

[32] *Hynix Semiconductor Inc. v. Rambus Inc.*, Case No. 00-cv-20905-RMW, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008).

[33] *Cf.* Tab 222; Tab 225.

[34] *See, e.g.*, Tabs 24, 57, 225, 261, 261.4, 261.7, 261.9, 261.12, 261.13, 261.14, 261.15, 261.16, 261.18, 261.22, 261.25, 261.28, 261.29, 261.30, 261.31, 261.36, 261.39, 261.40, 261.41, 270, 273, 275.

7
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

lawyers, "[t]he fact that a person is a lawyer does not make all communications with that person privileged."[35] "[A] single email of a 'legal nature' does not privilege the entire email thread."[36] It was in light of complaints from both Apple and Nokia about the sufficiency of these statements and Samsung's urging that the legal purpose of the documents was "facially obvious"[37] that the court granted in camera review.

A look at the documents shows privilege attaches. As to 11 of the documents, in its show cause order, the court noted that "many if not all of [the 11 documents cited in footnotes 10-15] do not appear aimed at or in furtherance of legal counsel, but rather a simple business purpose would have served as cause for the communication."[38] "No privilege can attach to any communication as

---

[35] *Martin*, 278 F.3d at 999.

[36] *In re Chase Bank USA, N.A. Check Loan Contract Litigation*, Case No. 3:09-md-2032-MMC, 2011 WL 3268091 at *6 (N.D. Cal. July 28, 2011) (conducting in camera review of privilege as to 20 documents and ordering defendants to reevaluate the remaining 2,870 disputed documents pursuant to the provided analysis); *Datel Holdings Ltd. v. Microsoft Corporation*, Case No. 09-cv-05535-EDL, 2011 WL 866993 at *6 (N.D. Cal. Mar. 11, 2011) (finding attorney-client privilege only applied to the original email in an email chain).

[37] *See, e.g.*, Docket No. 3213-2 at Tab 236 (arguing "the privilege log makes clear" a Samsung attorney later sent an email containing a FOSS Patents blog post though it lists "FOSS Patents" in the "From/Author" column, with no explanation as to how or why a blogger could send Samsung employees an "[e]mail seeking legal advice regarding licensing issues, prepared in anticipation of litigation.").

[38] *See* Docket No. 2689 at n.16. In support of this finding, the court cited to *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), which held that privilege does not attach to communications to which a business purpose would have served as a sufficient cause. In response, Samsung argues that "the test for both attorney-client privilege and work-product protection is not 'whether litigation was a primary or secondary motive behind the creation of a document,' but rather whether, under 'the totality of the circumstances,' it 'can fairly be said that the 'document was created because of anticipated litigation.'" Docket No. 2807 at 10. In fact, the Ninth Circuit has not ruled on the application of this test with respect to claims of attorney-client privilege. In support of its contention that the "because of" standard has been applied to the attorney-client privilege, Samsung cites to *In re CV Therapeutics, Inc. Securities Litig.*, Case No. 03-cv-3709, 2006 WL 1699536 (N.D. Cal. June 16, 2006), an unpublished case applying the test. This case in no way "extends" the "because of" test to bind this court. Other courts within the circuit have expressly rejected application of the "because of" test with respect to the attorney-client privilege. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 629 (D. Nev. 2013) (finding that "given that the Ninth Circuit has not expressly ruled that the 'because of' test has supplanted the 'primary purpose' test in the attorney-client privilege context, the court will continue to adhere to the 'primary purpose' test"). Judges within the Northern District of California have likewise recognized the fact that this test has not been extended to documents for which claims of attorney-

8

Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice."[39] The court gave Samsung one more chance to show privilege as to these documents, and Samsung responded with further briefs and declarations.[40] As the court indicated in a footnote in its sanctions order noting that only cited portions were not privileged, Samsung succeeded in showing privilege attached to each document as a whole.[41] The in camera review served its purpose.

*Third*, although Samsung has met its initial burden to show privilege, Samsung ultimately waived it as to a subset of the documents. This is not an offer-based waiver of the type previously addressed both by the undersigned and the district judge.[42] Rather, Samsung placed the documents at issue,[43] partially disclosed privileged documents[44] and distributed privileged documents to unrelated parties.

---

client privilege are made. *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, Case No. 4:11-cv-05341-YGR, 2013 U.S. Dist. LEXIS 147032 (N.D. Cal. Oct. 10, 2013) (noting that different courts have applied differing tests and declining to choose which to apply). Thus, this court is free to apply the "primary purpose" test set forth in *McCaugherty* to Samsung's claims of attorney-client privilege.

[39] *McCaugherty*, 132 F.R.D. at 238.

[40] *See* Docket No. 3807.

[41] *See* Docket No. 2935 at 4 n.13.

[42] *See* Docket No. 3194 at 8-10.

[43] *See* Docket No. 3212 at 4.

[44] While Samsung argues the court compelled its disclosures in response to Nokia's challenges, *see, e.g.*, *Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (noting the "general acceptance of the principle that waiver cannot result from compelled production"), the court only invited Samsung to support its privilege claims—*see* Docket No. 2689 at 4, n.16; Docket No. 2807 at 1—Samsung chose to discuss the content of withheld documents in urging that no sanctions issue.

9
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

The principle purpose of the doctrine of waiver is "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."[45] Even where there is no disclosure, fairness requires a waiver when the privilege holder raises a claim or defense that puts privileged communications at issue.[46] "The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. . . . In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege."[47] Even in a Rule 11 proceeding, parties are not obligated to disclose privileged information; they have the opportunity to decide whether to make such a disclosure, and once privileged information is affirmatively relied on, any privilege that may attach is impliedly waived.[48]

While "privileged communications do not become discoverable simply because they are related to issues raised in the litigation,"[49] "[w]here a party raises a claim which in fairness requires

---

[45] *Tennenbaum*, 77 F.3d at 340-41.

[46] *Id.* at 341 n.4.

[47] *Oracle America, Inc. v. Innovative Technology Distributors, LLC*, Case No. 5:11-cv-01043-LHK, 2011 WL 2559825, at *1 (N.D. Cal. June 28, 2011) (denying motion for permission to lodge attorney-client privileged documents for in camera review and providing party option of either waiving privilege or abandoning request to consider the documents) (citing *Bittaker v. Woodford*, 311 F.3d 715, 719 (9th Cir. 2003)).

[48] *See Shared Medical Resources LLC v. Histologies LLC*, Case No. 12-cv-0612-DOC, 2012 WL 5570213 at *4 (C.D. Cal. Nov. 14, 2012).

[49] *Amlani*, 169 F.3d at 1195.

10

Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

disclosure of the protected communication, the privilege may be implicitly waived."[50] A party may avoid waiver by not voluntarily disclosing privileged information.[51]

Samsung put the disputed documents at issue by raising affirmative defenses about inadvertence and whether Nokia's confidential information actually was used.[52] Samsung's affirmative defenses extended beyond mere denial, because neither Apple nor Nokia alleged the disclosures were intentional, and proof of violation of the protective order did not rely on use. For example, Samsung referenced privileged communications to argue there is "no evidence that anyone deliberately, with a purpose of sharing information that should not be shared at any time disclosed that information. We are talking about inadvertent disclosures."[53] Samsung also used privileged communications to justify its argument that although there was disclosure, no recipient used Nokia's confidential business information: "And the uncontroverted evidence shows that the

---

[50] *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

[51] *See Shared Medical Resources LLC*, 2012 WL 5570213 at *3.

[52] *See Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (stating that if the attorney-client communications were put into issue, the party would have to disclose "any confidential communications that may verify or disprove the truth of such testimony").

[53] Docket No. 2883 at 6:4-7; *see also* Docket. No. 2485 at 47:18–48:4 ("[Counsel]: There's an intent of willfulness requirement for a violation of a protective order. Now if you are going to ask me can there be a violation without sanctions, that's a different issue. But the way the courts have addressed violations and protective orders is they ask a key question, and I can give you plenty of cites, yes, there was a disclosure. Was it willful, in this case, no. Did you follow the procedures under the protective order to remediate the situation? And where the answer is yes, courts as a rule have said we are not going to sanction you."); Docket No. 1495 at 1 ("[T]here is no basis for finding the type of protective order violation that could possibly justify any such [discovery] order. The disclosure arose from an inadvertent failure to redact a few lines of a 295-paragraph report that was otherwise properly redacted."); Docket No. 2835-5 at 11 ("There is no longer any dispute that Quinn Emanuel's disclosure of confidential licensing information was inadvertent. No piece of evidence adduced in the massive discovery conducted either voluntarily or pursuant to the Court's October 2 Order has revealed even the slightest indication that any disclosure was intentional rather than inadvertent, nor does Apple, Nokia, or even the OSC allege as much."); Docket No. 2871-4 at 6 ("[T]here is no evidence that Samsung or Quinn Emanuel acted willfully or in bad faith."); *id.* at 8 ("There is *no evidence* that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had been transmitted before.") (emphasis in original).

incomplete redaction was inadvertent and that Samsung never used the alleged confidential information."[54]

Samsung protests that it relied on only non-privileged information,[55] but the record proves otherwise.[56] Improperly invoking privilege as a shield and a sword, Samsung's use placed the privileged information at issue while improperly limiting Apple and Nokia's ability to assess or challenge these assertions.[57] This waived privilege.[58]

---

[54] Docket No. 2871 at 2; *see also, e.g.*, Docket No. 2835 at 12 ("In any event, there is no evidence that the report was distributed *because* it had been incompletely redacted or that any individual who received the report used the confidential information contained therein.") (emphasis in original); Docket No. 2581 at 55:14-16 ("[T]he undisputed evidence is that Mr. Shim asked that because it [became] relevant to a case in Texas called Microenergy—*Microunity* that he asked for that purpose."); 2835 at 14 (arguing no use of the Nokia-Apple license terms from the Teece Report in Tab 6 and that analysis in Tab 222 originated from materials outside the Protective Order); *id.* at n.8 (arguing Tab 255 does not contain any information taken from the Teece Report); Docket No. 2835 at 13 (citing a partially redacted paragraph of the declaration of Jennifer Selendy (Docket No. 2807-13, ¶ 7) as an "undisputed record" that the improperly disclosed confidential information was not used in negotiations with Ericsson); *id.* at 14 (citing (i) partially redacted paragraphs of the declaration of Helen Hopson (Docket No. 2807-06, ¶¶ 5-8) as evidence that Samsung's foreign counsel did not use the improperly redacted Teece Report, (ii) a partially redacted paragraph of the declaration of Laetitia Benard (Docket No. 2807-16, ¶ 5) as evidence that circulated information came from public sources, and (iii) a partially redacted paragraph of the declaration of Daniel Shim (Docket No. 2807-14, ¶ 5) as evidence that licensing information in emails was "necessarily *not*" derived from the Teece Report); *id.* at 17 (citing partially redacted paragraphs of the declaration of Indong Kang (Docket No. 2807-07, ¶¶ 2-4, 7) as evidence that analysis of "a potential extension of an Apple-Nokia license" did not contain information derived from materials produced pursuant to the Protective Order); Docket No. 2835 at 13-14, 17; Docket No. 2935 at 14 ("[T]he court does not find Shim's explanation that he never used the insufficiently redacted Teece Report credible"); *id.* at n.17 (noting that the reasoning provided in a declaration as to why an email highlighted "the detailed terms of the Apple-Nokia license" did not appear anywhere on the face of the document). *See, e.g.*, *Oracle America, Inc.*, 2011 WL 2559825, at *1 ("In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege."); *Chevron Corp.*, 974 F.2d at 1156.

[55] *See* Docket No. 3215-3 at 12.

[56] *See, e.g.*, Docket No. 3213 at 10-12 (citing directly to redacted paragraphs); Docket No. 2835 at 13 (quoting a redacted sentence and paraphrasing Docket No. 2807-13, ¶ 7).

[57] *Amlani*, 169 F.3d at 1195-96 ("Amlani 'cannot invoke the attorney-client privilege to deny [the government]. . . access to the very information that [the government]. . . must refute" in order to

12
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

While the at-issue doctrine applies to all documents related to an entire claim or defense,[59] Samsung argues that where a court finds an implied waiver, this finding does not require "disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them."[60] Samsung maintains it has never been informed by the court that pursuing its defenses would lead to a waiver and thus has never had any opportunity to consider whether to alter those defenses. But the Ninth Circuit has never required prior notice from a court of a potential waiver, and Samsung has been on notice from Apple and Nokia that it risked waiver of its claims of privilege for nearly a year and a half.[61]

As to selective, partial disclosures, "[o]nce a litigant decides to affirmatively rely on privileged information thereby placing said information into issue . . . any privilege that may attach is impliedly waived."[62] This rule aims "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."[63]

---

discredit Amlani's claims.); *see also* Docket No. 2883 at 23:19–24:1 (arguing that the court need not consider inconsistencies in Shim's deposition testimony because the court has access to contemporaneous documents); Docket No. 2556-5 at 2 ("[T]he record provides no support whatsoever for Apple's and Nokia's inflammatory allegations that Samsung misused the inadvertently-disclosed confidential licensing information.").

[58] *Oracle America, Inc.*, 2011 WL 2559825, at *1.

[59] *See Chevron*, 974 F.2d at 1162.

[60] *Bittaker*, 331 F.3d at 720-21.

[61] *See* Docket No. 2557-4 at 2, 13; Docket No. 2558-3 at 12-13.

[62] *Shared Medical Resources*, 2012 WL 5570213 at *4 (citing *QBE Ins. Co. v Jorda Enterprises Inc.*, Case No. 10-cv-21107-CIV, 2012 WL 4089890 at *2 (S.D. Fla. Sept. 17, 2012)).

[63] *Tennenbaum*, 77 F.3d at 340-41.

13
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

Samsung may have acted reasonably in disclosing certain information about the withheld or redacted documents, such as the identities of senders and recipients. But Samsung went further by also disclosing information contained in withheld or redacted documents. For example, Samsung disclosed details about Tabs 19, 20 and 272 when explaining that a request for the Teece report had to do with another case unrelated to Apple licensing information.[64] Further, in pursuit of Samsung's affirmative defense that it took corrective action following the protective order violation, Samsung selectively disclosed information it had deemed privileged. The so-called "corrective action" still was not fully redacted according to the protective order's constraints.[65]

Samsung's statements to the effect of "does not contain confidential license information"; "does not discuss Dr. Teece's report"; "contains no information derived from materials produced pursuant to the protective order" and "I did not instruct others to use, and I am not aware of anyone from Samsung using, for any reason, information about the terms of any Apple license agreement with Nokia or any other company obtained from any version of the Teece report that I received or

---

[64] *See, e.g.*, Docket No. 2556-16 at ¶ 8; Docket No. 2395-03 at 2; Docket No. 2485 at 45:7-11, 46:9-14; Docket No. 2807-1; Docket No. 2807-12 at ¶ 6; Docket No. 2807-14 at ¶ 4; Docket No. 2581 at 55:12-20, 59:9-14, 59:24-60:3, 61:2- 5, and 65:14-66:3; *compare* filings cited in Docket No. 3213 at 12-15 *with* Docket Nos. 3163-3, 3154-4, 3164-5.

[65] *See* Docket No. 2395 at n.28 ("This version of the Teece Report still contained unredacted information regarding Ericsson's license with Apple, but in a different section of the report."); Docket No. 2581 at 61:2-11 ("At the second hearing on Apple's Motion, Samsung attempted to defend its failure to follow the Protective Order's notification provisions by arguing that, even though at least one Quinn Emanuel attorney knew that at least one Samsung employee received the unredacted confidential information in the Teece Report, neither Samsung nor Quinn Emanuel knew other disclosures had occurred: This person discovered it, but this person didn't have the knowledge or didn't put it together that this wasn't a report put on the FTP site last month or sent out in the interim. . . . So, I mean, if it had been the same person, I would certainly like to believe that they would realize, oh my goodness, we have been sending this out people have seen this it was on the FTP site last March, we sure as heck better do something about it. This person didn't know so that's why that didn't happen."); Docket No. 2871-4 at 8 ("There is *no evidence* that Quinn Emanuel or Samsung ever realized that the report transmitted in December 2012 had been transmitted before.") (emphasis in original); Docket No. 2883 at 34, 94 (admitting the associate who redacted the report in March was the same associate who discovered the incomplete redactions).

14

Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

distributed" may not facially appear to reveal confidential information. In the context of defenses aimed to mitigate Samsung's admitted disclosure of confidential information contrary to the protective order, however, these arguments go beyond "mere denials"[66] and are more than just "related to issues raised in the litigation."[67] They go the merits. A party may neither disclose nor dispute contents of documents while simultaneously concealing other portions under a claim of privilege, when the truth of the party's statements "can only be assessed by examination of the privileged communication."[68]

Samsung further fails to explain why it disclosed documents associated with the Teece report to many individuals with no apparent connection to this litigation.[69] To be sure, the privilege may attach where "employees discuss or transmit legal advice given by counsel."[70] But as an example, Tab 215 shows "pervasive distribution of . . . [sensitive business information] to Samsung employees who were not authorized to have access to it."[71] "Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate

---

[66] *See, e.g.*, *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996) ("[D]enials of knowledge of the undisclosed prior art did not purport to disclose the contents of a specific communication . . . and do not appear to go beyond 'mere denial[s].'").

[67] *See Amlani*, 169 F.3d at 1195 ("[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation.") (citation omitted).

[68] *See* Docket No. 3212 at 4; *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (finding waiver where holder "makes factual assertions the truth of which can only be assessed by examination of the privileged communication"); Fed. R. Civ. P. 26(b)(5)(A) (providing that parties must justify privilege claims "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"); *see also Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998).

[69] *See* Docket No. 2557-23 at 2-3 (listing 33 recipients for the document at Tab 6); *see also* Docket No. 2935 at 14 (finding the Teece Report "went to hundreds of people who were in no way involved in the Apple litigation"); *see also* Docket No. 3212 at 3.

[70] *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076.

[71] Docket No. 2689 at 3.

15
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel."[72] Samsung offers nothing to establish that the in-house counsel identified were not acting in a purely or primarily business capacity. Samsung's declarations address only Tab 6, and they claim only that the Teece declaration was relevant to "aspects of the global Apple litigations" rather than this specific case, contrary to the requirements of the protective order.[73] Nor do the declarations show that each recipient was "directly concerned with" or had "primary responsibility for the subject matter of the communication."[74] And while Samsung complains that Apple and Nokia offer "no basis" for disputing Samsung's description of the emails as having sent to each recipient for providing Samsung with legal advice, what Samsung ignores is that the burden lies of proof here lies with Samsung, and Samsun has failed even the most generous read of its threshold burden.[75]

**IV.**

The court is satisfied that Samsung has waived privilege as to the 92 documents relevant to Nokia's confidential business information,[76] which comprise the tabs cited by the court in its sanctions order as well as Apple's requested seven documents. In the case of implied waiver, the court "must impose a waiver no broader than needed to ensure the fairness of the proceedings

---

[72] *ChevronTexaco Corp.,* 241 F. Supp. 2d at 1076.

[73] *See* Docket No. 3213-2; Docket No. 3214 at 1, 8; Docket No. 687 at 5 ("All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation.").

[74] *Barton v. Zimmer Inc.*, Case No. 1:06-cv-208-RBC, 2008 WL 80647, at *4 (N.D. Ind. Jan. 7, 2008).

[75] *See Ruehle*, 583 F.3d at 607; *Martin*, 278 F.3d at 999; Fed. R. Civ. P. 26(b)(5).

[76] *See* Docket No. 3215-3 at 20; Docket No. 3215-4 at ¶ 2.

16
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

before it."[77] Access only to those documents is fair because Samsung's deficiencies do not warrant the harsh sanction of an order of complete production[78] when Nokia's broad requests for waiver and access are not sufficiently substantiated. While Samsung bears the burden of showing privilege, Nokia does not describe how each of the 279 documents are relevant to Nokia as a non-party, and Nokia does not specifically explain why it should have access to each document.[79] While the court is—to put it mildly—skeptical about the benefit in prolonging this dispute any longer, on balance, Nokia and Apple are entitled to relief. No later than April 10, 2015, Samsung shall produce unredacted copies of those documents—the 92 documents referencing Nokia to Nokia, the seven offered documents to Apple.

---

[77] *Bittaker*, 331 F.3d at 720 (under implied-waiver doctrine, court must "closely tailor[] the scope of the waiver to the needs of the opposing party"); *See Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (rejecting "blanket waiver of the attorney-client and work product privileges as to the entire case").

[78] Fed. R. Civ. P. 26(b)(5) advisory committee's note (1993); *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("Acknowledging the harshness of a waiver sanction . . . [m]inor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver. . . . In the end, the determination of waiver must be made on a case-by-case basis.") (citing *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361-63 (D.Kan.1995)).

[79] *See, e.g.*, *Webb v. CBS Broad., Inc.*, Case No. 08-cv-6241-GSB, 2011 WL 111615, at *9 (N.D. Ill. Jan. 13, 2011) ("Privileges must be addressed on a document-by-document and question-by-question basis. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). The Webbs do not identify in their submissions any particular entries on CBS's privilege log or any particular deposition questions as to which they challenge CBS's assertion of privilege. Therefore, it is impossible for the court to address whether any assertion of privilege was justified or not."); *Ellis v. Cambra*, Case No. 1:02-cv-05646-AWI, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008) ("If Defendant objects to one of Plaintiff's discovery requests, it is Plaintiff's burden on his motion to compel to demonstrate why the objection is not justified. Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the Court why the information sought is relevant and why Defendant's objections are not justified."); *see also Hupp v. San Diego Cnty.*, Case No. 12-cv-0492-GPC, 2014 WL 1404510, at *6 (S.D. Cal. Apr. 10, 2014) (same).

17
Case No.: 5:11-cv-01846-LHK-PSG
ORDER RE: MOTIONS TO COMPEL

**SO ORDERED.**

Dated: April 3, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge