# EXHIBIT C

# <u>Transcription of December 10, 2014 Hearing</u>

| | |
|---|---|
| Judge: | Yes, Your Honor, calling *Apple v Samsung* Case No. cv-11-1846, Apple's Motion to Compel and non-party Nokia Corporation's Motion to Compel.  Please state your appearances. |
| Selwyn: | Good morning your honor, Mark Selwyn for Apple. |
| Judge: | Good morning. |
| Koppelman: | Ryan Koppelman for Nokia. |
| Judge: | Good morning, Mr. Koppelman. |
| Zeller: | Good morning your honor, Mike Zeller for Samsung and also with me Dan Posner and Rob Becher. |
| Judge: | Good morning to each of you.  Welcome back.  All right, well the crowd thins but we keep going.  I believe we all understand that we are back and here to address the motions to compel filed by Apple and Nokia.  I think what makes the most sense is to take these issues up in the order in which I think the parties presented them in all of their briefs which is to first talk about whether I've even got privileged documents at all and then to |

turn to the issues of waiver and the crime-fraud exception and so.  Let's begin with the motion from Nokia since well, let's begin with the motion of Nokia and then I'll turn to Mr. Selwyn for Apple's perspective before hearing from Samsung.  Mr. Koppelman, go ahead, sir.

Koppelman:  Thank you, your Honor.  Good morning.  I'll start off the purpose of Nokia's Motion to Compel is to have equal access to the evidence that Samsung used to defend itself and the court considered.  And there's 3 main arguments - you just referenced them. First, that whether Samsung sufficiently substantiated privilege and then whether the at issue doctrine applies and whether there was selective disclosure.  As to the substantiation, Samsung has the burden to establish it and there's numerous facial problems with its claim.  After the Court initially reviewed the documents *in camera* it noted that many of the documents appear to have a business purpose as opposed to a legal purpose.  Many of the log entries don't involve an attorney and at least one log entry was with a third party blogger. Samsung in its Opposition now claims that

much of what it redacted and withheld based upon privilege is not actually privileged and it makes those claims in opposition.

Judge:          Can I ask you about that, Mr. Koppelman?

Koppelman:      Sure.

Judge:          What are - first of all, before we turn to all these other issues.  The universe of documents at issue seems to be a bit of a moving target here.  As I had understood it originally, the issue before Judge Koh on review was whether the documents I had referenced in my footnotes were indeed privileged and entitled to maintain that protection going forward in light of certain actions taken by Samsung.  On remand it seems you are talking about a broader universe of materials than just what I referenced in the Order so could you perhaps set that table for me.

Koppelman:      Well, if you go back to look at the original briefing the issues we raised leading up to the motion for sanctions, multiple times we raised the waiver issues and the concerns with their substantiation.  And in particular I would point the Court to our supplemental brief that was filed after the hearing before

the sanctions Order in which we made our arguments very broadly that the waiver went beyond just the ones at least cited in the order to show cause and that we thought there was a broader waiver as to how we characterize the record and we made those arguments and we're remaking them now.

Judge:   Your view is that on this remand I am to consider not only the documents that I specifically referenced in my opinion, but indeed all of the documents for which Samsung has claimed and continues to claim privilege.

Koppelman:   Yes.

Judge:   Okay.  All right, why don't you continue?

Koppelman:   And as to the substantiation point, they've withdrawn privilege on some of those and we think those documents should be produced now and in your Order for sanctions you identified certain documents that and at least portions of them were not privileged and we don't see a reason why there should be any further delay in production of that information.  The remainder of the documents that Nokia

cannot evaluate with equal access and that was what we understood the *in camera* process to be for is to resolve privilege claims where there's not equal access and that process took place and we would ask the Court to rule on the privilege assertions that Samsung has made, you know, it was Ordered to produce all the documents and then an October 2 Order, withheld them and we would like a ruling on that.

Judge:        So again, this is really what I'm getting at with my earlier question:  you believe that you're entitled to essentially a ruling on each and every one of the documents for which Samsung maintains its privilege such that I am to go through document by document and make a call on what I think would amount to several hundred documents?

Koppelman:    I think it's about 275.

Judge:        Okay.

Koppelman:    The size of that is in proportion of the size of the violation, the extent of the disclosure. If it was a smaller disclosure we'd have a smaller issue to deal with.  It went to 75 recipients and this was a wide-spread disclosure over a lengthy period of time and

that's not Nokia's fault that there's that much paper as a result of the extent of the disclosures.  Samsung has raised the issue of relevancy.  We can't evaluate those claims of relevancy because we don't have equal access.  It's possible that *in camera* review the Court may determine that some of the documents are completely irrelevant and I think that is an appropriate analysis to be done *in camera* separate and apart from privilege --

Judge:    Right.  I don't want to make your next argument for you but it would seem that by submitting those documents to review Samsung itself has conceded that those documents are relevant to those issues in dispute, right?

Koppelman:    I would agree with you, it's certainly in the scope of what the Court ordered as relevant and they submitted them and you know this goes right into the waiver arguments to where I was going to next.  They relied on them.  They pointed to this evidence, they pointed the Court to the evidence *ex parte* to say this stuff you know this set of documents the *in camera* submission shows inadvertence and non-use and those two

particular assertions and defenses give rise to the at issue doctrine. The principle is that parties in litigation may not abuse the privilege by asserting claims or defenses the opposing party cannot adequately dispute unless it has access to the privileged materials. This requires equal access for fundamental fairness - the case law refers to fundamental fairness, that's ultimately what we're arguing here what we're seeking, you know, so as to the first issue that Samsung injected the inadvertent -- Samsung repeatedly put at issue the intent of Samsung and its lawyers using the evidence and documentary record and the *in camera* submission to show that there was inadvertence.

Judge:      Now they're saying that they didn't put those documents at issue but effectively I did by ordering them to submit it. What's your view on that?

Koppelman:  I think that puts them in a tough position. And this is the horns of the dilemma where litigants are faced and do you defend yourself with privileged materials or do you not and if you do then equal access principles should apply and if you don't then

you take your lumps and it's a tough position to be in -

Judge:       But their submission was *in camera*, right, so it's not as if they made them available to the world or even to you.  I think - what I read in Samsung's papers is a recognition of that same dilemma but a different solution to it.  Right?  What they're saying is - I'm sure I'm going to hear from Mr. Zeller and others in just a moment - what they're saying is that they have always maintained a privilege over these materials and so to the extent that the privilege is properly claimed and they believe it is, they should be entitled like every party in every case to maintain that privilege and to the extent that the Court has issued sanctions predicated on those materials the solution is to withdraw the sanctions - the solution is not to make them available for review.  So what's your thought about that?

Koppelman:   I mean to withdraw sanctions to us is not appropriate.  If you look at your Order it is independently supported not by - in fact I think you addressed inadvertence, you addressed use but you didn't find those things and in your sanctions Orders there's a

finding of sanctions was based on independently public and non-privileged information and specifically as to the failure to enact safeguards and protocols to ensure this sort of thing didn't happen and this privilege fight goes more to their exculpatory claims that this evidence you know shows inadvertence and shows non-use.  If they want to withdraw those and their opposition seems to suggest that they could withdraw those defenses, I don't - I mean it seems odd to me at this point that 1) that they could and I think that horse is out of the barn but also the impact of them saying we no longer are claiming it is inadvertent and we no longer claim that we didn't use it.  I don't think - I think we're past that point.  Particularly you brought up the Order to show cause, they responded by saying that no piece of evidence and this is a quote "no piece of evidence deduced the massive discovery conducted either voluntarily or pursuant to the Court's October 2 Order" has revealed even the slightest indication that any disclosure was intentional rather than inadvertent.  And this is them putting those documents at issue and saying those documents show our

innocence, it's not just a mere denial, they're proving it without our equal access and this goes right into the fundamental fairness rule and the purpose of it to not allow those types of *ex parte* arguments -

Judge:   But can't I vindicate the purpose of that rule in a slightly different way?  I want to come back to what we were talking about just a minute ago.  It would seem that if you have never seen and you believe you have a right to see these documents.  One solution is the one proposed but I'm still struggling with this idea that why not simply say okay the privilege that has been claimed needs to be established, but let's assume they can do that, let's pull that set of documents out from the record that the Court considered in imposing the sanctions and ask are sanctions still justified on the record which remains and in that situation you believe there's adequate information in the record to maintain the existing sanctions.  Why isn't that an equally or perhaps even better solution than the one you're proposing?

Koppelman:   Because we don't know what the documents show and they may show something other than inadvertence from Nokia's perspective.

I've never seen them we know – it could be

Judge:          Right.  But if they're privileged -

Koppelman:   - worse -

Judge:          Right, but if they're privileged you're not entitled to see them, right?

Koppelman:   Unless they waived.

Judge:          Right, but the waiver you're claiming is a waiver that is an *in camera* submission at the direction of the Court and my question is is that really waiver at all?

Koppelman:   No - the *in camera* submission is not waiver, it's the arguments from those documents.  They submit them.  It doesn't mean they have to argue from them, it doesn't mean they have to say that those things *ex parte* argue those documents show x and show y.  That's where they stepped too far.  That's the misstep from Nokia's perspective.

Judge:          But don't they cure that problem by taking those documents out from the record and out from the analysis and ask are the sanctions justified in what remains.  That's the piece I am not quite understanding.

Koppelman:   I guess from Nokia's perspective we're past that already.  There's been an Order and we - out of fairness we should understand the full record that was considered and we don't see a reason to undo what's already been done because the Order is independently supportable on other bases separate and apart from inadvertence and use it could only get worse for them not better.  That's not a reason to vacate the Order.

Judge:   Well, but - it would seem that if your interests were in maintaining the sanctions as they currently exist one way to solve that problem would have been to let this one go.  But you have exercised your right and I appreciate you believe that you are entitled to see these documents.  I'm still stuck on this notion that I have to take the sanctions as issued and assume that they will remain in place based on what record exists independently of privileged materials it seems that there's a real question here whether the non-privileged materials can support the sanctions that were previously issued and if that's true and if the only waiver that could arguably be urged here is the submission to the Court of documents *in*

*camera* that's a very different posture than the ones in all the cases that you all cite. So help me out with that.

Koppelman:    Well, I don't know if I know exactly how to respond. I think the main points are the Order the Sanctions Order as it currently stands at least in our reading does not where finding sanctions does not rely explicitly on the privileged materials to make those findings. In fact it basically says that you weren't convinced by it and to some extent it doesn't give much credit to what's in those materials in terms of the actual findings of sanctions.

Judge:    So let's assume that I agree with you there. That there are materials independent of those which were subject to the privilege which justified the sanctions. If that's true, how can you argue that their arguments about the privileged documents independent of the documents submitted *in camera* themselves give rise to a waiver such that the only solution is to keep the sanctions in place, order the production and allow you to inspect. How does the argument independent of the documents give rise to

that kind of waiver?

Koppelman:    Because the positions they took still matter and they're-

Judge:    But on the one hand you're saying they don't matter because there are other documents that justify the sanctions now you're saying that they do matter because they were considered by the Court before the sanctions were issued in the first place. So what am I missing?

Koppelman:    You're putting you finger right on it in both are true. They-

Judge:    They do matter and they don't matter.

Koppelman:    Yes, they don't matter in what you already found to support the existing sanctions, those are independently supported. They do matter in terms of what you didn't find and your review of these to agree with their defenses - I don't know if you agree with them but a reading of the Order is arguably you agree that it was inadvertent that you agreed that there was no use or at least not convinced there was use and those findings and at least that consideration and analysis, goes to the defenses and goes to the

documents, but what you actually found in terms of the sanctions is not implicated.

Judge:            OK.  Go ahead.

Koppelman:    I think that the one thing that I haven't touched on is selective disclosure.  Samsung has waived privilege in addition by making selective partial disclosures of certain documents.  And in particular, Quinn Emanuel sent Apple a letter about the December 2012 exchange.  Quoting from this letter, "On December 21, 2011, a Quinn Emanuel associate sent the incompletely redacted Teece report to a Samsung employee.  Another associate realized that it contained references to licensing terms that had not been redacted.  The lawyer who sent the email notified the Samsung employee not to look at the report.  That goes to the content of the communication between Samsung and its counsel.  Content of communication has been redacted and withheld from us but disclosed in this letter to Apple.  It goes on, the email, the employee confirmed that he would not look at the report and would delete the email. Again, that's content of communication between attorney and client that's been

withheld from us but disclosed here.  The attorney subsequently sent another email with the report that contained redacted complete redactions and the completeness of those redactions go to the content of that communication as well.  And again, we haven't seen those things.  And these statements reveal substantial portions of the communications in this email exchange and transaction which Samsung has redacted entirely for privilege.

Judge:       And do you believe that that gives rise to a waiver as to the entire set of materials issue, or just those communications mentioned in that letter?

Koppelman:   Those communications and the subject matter.  The subject matter, though, would be narrowly defined as to those communications and anything that closely relates to them.  Without equal access to the record, I don't know what else that might entail.  It may be just this single set.  It may be somewhat broader.  But Samsung went further and revealed that Mr. Shim originally requested the Teece report in the same email exchange for use in the Microunity case.  Again, that's another

|           | detail of this exchange, the content of the communication, the purpose that's been withheld.  They're selectively disclosing parts and not other parts, which is the whole point of the doctrine.  And so, out of fairness, Nokia should be able to see the entire communications, which Samsung has characterized and used as a defense here, and Nokia respectfully requests the Court to grant its motion to compel.  If you have any other questions, I'm happy to answer them now. |
|-----------|---|
| Judge:    | I'll give you a chance for rebuttal, I appreciate your arguments.  Let me hear from Apple before I turn to Samsung.  Mr. Selwyn, good morning. |
| Selwyn:   | Good morning.  If I could begin by just setting the stage a little bit, because Nokia's arguments are a bit different here than Apple's arguments are.  If you recall, Apple was actually the only party, not to appeal either order to Judge Koh. |
| Judge:    | I did notice that. |
| Selwyn:   | Apple believed that you reached a correct result and, as Your Honor has suggested in the past, was happy to move forward from |

it.  Samsung actually didn't appeal your order either, insofar as your sanctions ruling, they appealed the amount of fees and they also appealed the issue of waiver.  But as to the underlying correctness of the sanctions order, Samsung didn't appeal either.  So to this argument that Samsung has now raised about your Honor's reported use of privileged material, and that being improper, and that you should now go back and vacate it, that's all a new argument.  If that is something that they truly believe, they should have either raised it with you, or brought it to Judge Koh.  That has now been waived having not been raised and in fact again in the briefing to Judge Koh Samsung said they were okay with your Honor's sanctions ruling, they said it was appropriately narrow, it was the amount they were objecting too.  So, consistent with Apple's prior briefing to this Court and to Judge Koh, Apple has limited its briefing to the seven documents that Samsung had offered to produce to Apple and to Nokia and for which this Court had previously found that Samsung could not assert privilege.  We believe that the Court's prior conclusion on that point was correct and our

brief essentially raises the same arguments that we raised before this Court and again raised before Judge Koh.  Judge Koh simply found that your Honor had not addressed those arguments and directed your Honor to reconsider them in this proceeding, we just brought them forward once again.  We truly have no desire to prolong this but felt given Judge Koh's mandate that this Court consider it, that it was not appropriate for us to walk away but rather to present these arguments to your Honor.

Judge:           I don't want to speak for Judge Koh.  I suspect she would not have taken offense if you had elected to walk away.  You have an interest here, and you're entitled to pursue it.  Can I ask, it seems then that you've highlighted a few differences in Apple's posture here from Nokia's.  Among them, you're seeking review only of the seven documents, correct?

Selwyn:          Yes just as to the seven documents that were the subject of Your Honor's footnote.

Judge:           OK.  And in terms of the posture on remand, it's interesting the cases you all discuss in your briefs really focus on the classic

scenario of an appeal to the Circuit Court and a return to the District Court.  The relationship between Magistrate Judge and District Judge is I think slightly different than that.  One of the things Samsung seems to really focus on in their papers is that, while you raise these issues with Judge Koh, there was no independent request for review, as you yourself I think have just described.  Does that matter?  Does that matter that you've raised these issues in the context of an opposition to a Samsung request for relief, as opposed to independently seeking review?

Selwyn:    I don't think it does, I'm not sure what we could have appealed given your Honor agreed with us and found waiver.

Judge:    It would have made for a strange appeal, for sure.

Selwyn:    It would have been a strange appeal to appeal something where we had won.  Now Your Honor found on different grounds than we had brought to Your Honor and that was the reason for the remand but I don't think it makes a difference.  We presented the same arguments before to Your Honor as we

presented to Judge Koh as we do now and Judge Koh asked that those arguments be considered so we give them to you for your consideration.

Judge:          Can I ask you, Mr. Selwyn, since you raise these issues in your brief, I just wanted to touch upon them in some detail.  In terms of the quality of the privilege claim that Samsung makes, I read your brief as suggesting that, at a minimum, the log itself doesn't pass muster under the standards of the Ninth Circuit and perhaps other cases. Is that Apple's position?

Selwyn:         Yes.  I mean the log has not changed since Your Honor commented on it in the Order to Show Cause where Your Honor found that the log, Your Honor's words were unpersuaded by the generic statements in the log to meet the burden required to claim the protection  So nothing has changed between the time you made that statement and now, it's the same log, so when Samsung says the log may be sufficient I think that is ground we already covered and Your Honor has said you were not persuaded by the sufficiency of the log.

Judge:  What's interesting, right, is that even though I made that finding in the Order to Show Cause, that was a finding of this particular Court, and what I've never quite understood, candidly, is why that finding in the OSC wasn't presented to the District Judge as an alternative grounds that was made by this Court, even though it was in the OSC rather than the sanctions order.  Do you follow what I'm saying?

Selwyn:  I think so but Apple did, one of the arguments we presented to Judge Koh was, as your Honor had found in the Order to Show Cause, the log was insufficient so therefore Samsung had not met its burden of presenting a *prima facie* case of privilege as to each of those documents.

Judge:  Would you agree that Apple apparently wasn't persuasive in moving the District Judge to see that those findings were made?

Selwyn:  I don't, I wouldn't put it that way.  I think as I read Judge Koh's order she felt it appropriate for there to be consideration by this Court before she reviewed that argument.  So I don't think she was weighing one way or the other for Samsung

or Apple on that issue.  That issue as with the other issues that had been presented by Apple but not specifically ruled on by this Court.  As I read her order she felt it was appropriate for this Court to consider.

Judge:  Right, and it would seem that among the positions Apple is urging this Court to take is to simply affirm my earlier finding in the OSC order, that in fact the sufficiency of the privilege log was not there, that on that basis alone the privilege had not yet been claimed.  If that's true, then is there really much more for me to do for the benefit of the presiding judge, other than to confirm that I meant what I said before, and I'm reaffirming that in this context?

Selwyn:  I think that would be sufficient.  In our brief we have presented three arguments which each would independently provide a basis for your Honor to find either that the privilege has been waived or there is no privilege at all in the first place.   That is one of the arguments that as an initial matter Samsung has not substantiated its claim of privilege.  In its opposition it again points to that log.  We say that issue has been resolved by Your Honor and if Samsung

disagrees with it they should have taken it up with Judge Koh, but Your Honor ruled on that and with respect to the declaration in support, he only used that to support one of the seven documents Tab 6, they say their declarations are sufficient to substantiate privilege, they offer no argument their declarations are sufficient to substantiate privilege as to the remaining six documents and as to tab 6 if you look at the declarations it's really just offering a general statement that the recipients had some responsibility which they don't describe in any detail for handling aspects of the global litigations which they don't describe in any detail.  They don't explain what connection each recipient had to the litigation or anything else that would meet the test that's identified in the cases in our brief.  So that is the first issue, whether the log is sufficient or the log is not sufficient.  Whether in response to the order to show cause Samsung offered anything else that might overcome the deficiency that Your Honor found in the log.

The second issue that is presented in the briefs is the waiver argument.  And as to

three of the documents three of the seven so-called waiver documents, Tab 6, 20 and 222, Samsung in its declarations and in its brief in response to the order to show cause made arguments about what those documents do not show and based upon the *Hawkins* and *Pinho* cases among others, we believe that the denial of the existence of a communication with counsel gave rise to a waiver as to those documents.  Both of those cases, *Hawkins* and *Pinho*, are very similar on their facts.  For example, in *Pinho* it involved the situation where the defendant had testified that she had never discussed the subpoena with her attorney and was not told that the documents were going to the grand jury and in those facts relying in part on the *Hawkins* case the Court found that when the defendant testified that none of her conversations with her attorney included a conversation about that specific subject she was in fact testifying to the content of all conversations that she had with her attorney regarding that subject and found a waiver. And for the same reason here, when Samsung submitted declarations denying that certain withheld communications covered certain subjects that acted as a

waiver of the right to reserve privilege over those communications.

You mentioned the issue of Samsung's argument that well they there were forced to submit these declarations. I don't think that's what happened. They were forced to submit the documents *in camera*. Your Honor did order that and Your Honor said you could you can provide me a brief with any other arguments supporting your claim.

Judge:          I thought that was more of an invitation than an order, right. It wasn't a command to present a brief, was it?

Selwyn:         I read it as an invitation. It was not an order, it was not a command to do so and in response, Samsung submitted a brief. They also submitted a boatload of declarations as well. Nothing required them to do that and they did. It was purely voluntary.

Third is the issue of crime-fraud exception which, again, this Court did not rule on and Judge Koh did not rule on. The documents that are already at issue here are among those that the Court relied on in finding that Samsung and its attorneys embarked upon, and I'll just use the words from the Court's

order, a conscious and strategic and willful path that caused hundreds of blame-worthy violations of the court's protective order. Samsung argues that its violations were inadvertent and it did not wrongfully use Apple's confidential information. In response to that, first, the Court did in fact find that Samsung's violations were conscious, strategic and a "willful failure to institute safeguards." And the Court also found at least with respect to one in-house lawyer that Samsung did make use of the confidential information.

Second and this is an observation that the Court made in its January 29th order. There is no intent requirement to prove a violation of the protective order and a showing of intent is not required to invoke the crime fraud exception where as here it's clear that the communications were in furtherance of wrongdoing. Now, Samsung also disputes that issue, whether the communications were in furtherance of wrongdoing, but I think the January 29th order already found that they were -- that the communications were themselves evidence of breach. So, for all of those reasons, and each of them is

independent, we think that that your initial conclusion about waiver was the correct one.  Again, Samsung's arguments that Your Honor properly relied on privilege, and therefore, everything should be set aside -- new argument, waived argument.  In any event, the sanctions ordered does not rely exclusively or even predominantly on these seven documents.  There are at least 18 other documents that we counted that are the basis of the Court's order for which Your Honor found that there was no privilege -- that was the finding that Samsung never challenged -- I think it's now the law of this case.  So there's no basis to go back and redo any of Your Honor's prior findings in that regard.

Judge:      Alright.  Thank you very much, Mr. Selwyn.  I'll give you a chance for rebuttal as well.

Selwyn:     Thank you.

Judge:      Mr. Zeller, good morning again, sir.

Zeller:     Good morning, Your Honor.  There's obviously a number of things that have been raised.  I'm happy to start wherever the Court thinks is appropriate.  Perhaps one point that the Court was making is worth

emphasizing -- which is, from our perspective, *Mohawk* requires that essentially the order be redone to eliminate reliance upon the substance of privileged communications.  And I think that the next step is for the Court to see where it is.  There's an argument that somehow we haven't preserved that.  The reality is, as the Court knows, we have said all along, we thought that the amount of sanctions was, was excessive and unreasonable.  That is, we think still something the Court could revisit in determining, you know, once it looks at its findings, what's left, and then making that determination as to whether or not the, you know, approximately $2 million that was awarded is still appropriate, in light of those findings.  I think it's a very straightforward thing, and I think it's what the Supreme Court mandates in *Mohawk*, where it says, basically that, you know, where there's a inappropriate reliance upon privileged information, the judgment has to be vacated, and then basically it needs to be remanded, in which the protected material and its roots are excluded from evidence.  So I think it's a very straightforward kind of

approach.

Judge:      May I ask Mr. Zeller on that issue -- this wasn't one that was really addressed to any length in the papers -- if I were to go back and excise from my analysis and consideration those documents which are properly protected by privilege, and redo the analysis as you suggest, is it your feeling that no sanctions are justified with those seven documents out of the picture?

Zeller:     Your Honor, we would still agree that some level of sanctions, monetary sanctions -- not the other ones that the courts already found were ludicrously overbroad and the like -- but, but, we, we have said that we do think that you know, a monetary award that is, you know, looks for some reasonable reimbursement of fees is an appropriate sanction for, for the violations, the transgressions that we acknowledge.  The Court's order obviously does go further.  And, and there is an inherent contradiction, as the Court has pointed out, in, in Apple and Nokia's positions here.  On the one hand, they're trying to tell you -- it doesn't affect the Court's order.  On the other hand, they're trying to say that they need these

documents.  And those are completely irreconcilable.  Also, as the court is aware, for at-issue waiver to apply, the information, the communications have to be vital.  We didn't, set aside about the other five requirements that we don't think are met here.  But at the end of the day, the Court still would have to say -- well, it's vital for Apple and Nokia to have these communications in order to properly litigate these issues.  So they can't have it both ways.  They can't tell the Court that these communications don't matter for purposes of the sanctions, and therefore you don't need to disturb anything -- but on the other hand, order us to produce them.  Those are absolutely, completely irreconcilable, and they make no effort to reconcile those here today.

And also, I think there's a, there's a very similar point, too, Your Honor, which is -- you've used the word "moving target," and that definitely applies here.  Apple and Nokia are tripping over one another and themselves between positions they used to take and positions they take now.  You know, where basically they argue out of

literally the opposite sides of their mouths. Our privilege logs are insufficient, therefore it's a waiver.  On the other hand, they disclose too much, and there's been a waiver.  And Tab 6 is sort of a paradigm of this -- I mean there's a -- this is what Apple used to say.  This is docket 2825-2, at page 3.  They claim that our description of Tab 6 does not contain any information regarding the subject matter of the communication. Then in docket 3212 at 4, they claim that we disclosed the content of it.  This literally is just this kind of nose of wax you have constantly going on here, where they just make these characterizations to fit what they think is the appropriate legal doctrine.  And there's, there's no consistency here.  There's none whatsoever.

There's also a fair amount of revisionist history, really, which is the idea that somehow we were not denying, and it was completely gratuitous that we were denying that, that our violations were intentional. They repeatedly put that at issue.  The Court will recall Mr. McElhinny got up here and called us criminals.  So the idea that we weren't responding and we were doing this

voluntarily is just completely belied by the record.

One thing I would also point Your Honor to is -- I know the court was asking questions about the logs. And, and what the Court was describing as its findings previously. What the Court actually said, Your Honor, and you can look at it, it said the Court is not yet persuaded. It didn't make a finding that our log was deficient. But even more importantly, what it then went on to do was say -- but I'm going to give you an opportunity to substantiate privilege by putting in this submission. And I can quote the language, but it is pretty mandatory. I mean, one can argue I guess, metaphysics about what's voluntary or not, but clearly the Court was saying -- we need to further substantiate our privilege or it will be waived, at least as to those documents. So, one thing that the Court has been hitting upon, I think, that Apple and Nokia has completely lost sight of, and this is replete throughout the cases -- this is not a strict liability kind of test. Instances where courts have found waiver because of a -- inadequacies in the privilege log go through

a series of steps, and in fact, the Ninth
Circuit rule is, is that waiver isn't automatic,
even if you don't do a privilege log at all.
So it certainly cannot be the case that
somehow we can just simply say, you know,
that, that Apple and Nokia can say -- well,
we don't like your privilege log, no further
steps are necessary until you get to a waiver.
The cases, we think, quite clearly show that
the Court appropriately would need to give
us additional guidance as to what do we
have to have in the privilege log.  We think
we've made the *prima facie* case, as the
Court has seen from the papers.  And from,
the, you know, when you look at the criteria
that the Ninth Circuit has applied, we think
we meet those.  We have provided that
information.  Now, if the Court disagrees,
the next step would be to order us to
substantiate it further, and provide us
additional guidance.  The remedy there is
not waiver.  It just isn't.  There is no
authority.  Apple and Nokia can't point to a
single case where the Court has just simply
said -- "I looked at your log, too generic,
privilege waived."  Not a single authority.
And nor would it be fair.  There wouldn't be

any reason to have that kind of a rule.

The other thing is, is that there was the assertion was made that we're not relying on the declarations.  That's completely incorrect.  Of course we're relying on the declarations.  And Apple cannot argue, at least I think persuasively, that those declarations don't make the *prima facie* case of privilege.

Judge:          I, I assume you submitted the declarations for a reason.

Zeller:         We did.  Sixteen of them Your Honor.  And they, they went into -- they, they, of course, have to describe at the appropriate level of generality, why they are protected without then going further and disclosing the content.  But again, you know, the whole approach that Apple and Nokia take to all of this is, kind of *gotcha*.  You went too far, not far enough.  All means waiver.  And that's just not the law.  It's not even remotely the law.

Also, I add just briefly, Your Honor -- there have been statements made that somehow we were relying upon these privileged communications, and that results in the

waiver.  But, but those again, that's just kind of rhetoric from Apple and Nokia.  The cases make it very clear that you have to rely on the content of a specific communication in defending yourself -- basically, interjecting it yourself.  We didn't interject this.  These were denials, we were denying that we had done anything wrongful, as we are entitled to do.  But, more specifically, kind of these general statements of -- and Mr. -- Nokia's counsel quoted this -- where it said, you know, we were relying upon the discovery as showing nothing was intentional.  But we weren't relying on the documents we gave to the Court or privileged communications.  We were relying upon the discovery that Apple and Nokia took.  And that none of it showed intentionality.  So that's, that's -- there's no specific statement that they can point to where we said -- Judge, take a look at this document, it proves it exonerates us.  We never did that.  And that's the kind of specificity that's required for this kind of a waiver.

Judge:          A general denial is not good enough.

Zeller:        Correct.

               There were a number of other arguments
               and statements that were made here, but I
               think these probably cover the, the crux of
               it.  I don't know if the Court had questions
               or anything further on this, but -- I, I think
               really the key in many respects, Your
               Honor, is, is that there's a complete
               disconnect between the arguments they
               make here and the remedy they are asking
               for.  There is nothing to bridge that gap.
               Everywhere they turn, the, the penalty or the
               remedy for that is not that we have to
               disgorge privileged information.  It's that
               either we're given a further chance to
               substantiate privilege or the, the Court's
               sanctions order needs to be revised to excise
               the privileged communications.

Judge:         I, I, I did have one last question on where
               this all leaves us in your view, and I want to
               hear from the other side on this as well, in
               rebuttal.  I take it, Mr. Zeller, in your view,
               the, the, the right outcome here is to affirm
               the privilege of the materials at issue, to
               redo the order awarding sanctions, in light
               of the materials which remain, and to leave
               it at that for the parties to take up, as they

see fit.

Zeller:        Exactly, Your Honor.  And I believe that the
               Court could and should revisit whether or
               not the full amount of attorneys' fees that
               were awarded was the appropriate sanction
               here.  I mean, we, we certainly agree that,
               again, as I was mentioning, as a baseline,
               excising everything out of the sanctions
               order -- and even things that we
               acknowledged to the Court -- clearly would
               be a sufficient basis to award monetary
               relief as a sanction.  Nothing further, but
               nevertheless, we, we at least agree on that
               point, and, and as Apple's counsel pointed
               out, and is certainly the case, we have only
               been challenging the amount.  When we
               took it up to Judge Koh we just said, we
               didn't think that the amount was
               proportionate, really, to the offense.  And,
               and so I do think that the Court would, in
               that instance, once you know, the findings
               are redone, should revisit that conclusion
               and make the determination as to what,
               what's left.  Whether that still appropriately
               supports the entire $1.92 million award.

Judge:         On that latter point, Mr. Zeller, do you read
               anything in Judge Koh's order which

suggests that the amount of fees which were awarded as a sanction is tied to the record which was properly reviewed, or put another way -- I thought I read in her order pretty clearly her saying that the amount was just fine. Even as she was saying, hey Judge Grewal, we'll go back and look at the privilege issue on these seven documents. So do I really have that authority on remand to revisit that issue when she's already made findings on that question?

Zeller: I do think you do, your Honor, because the circumstances are different. I, I read Judge Koh's order perhaps in a slightly different way, which is that, she, she was affirming your discretion on the range. We, we of course, made arguments about -- we thought there were particular standards that ought to be applied, and Judge Koh, I think at the end of the day, said you know, well it's up to Judge Grewal and he has discretion on that amount. I, I don't think that's inconsistent at all with the Court revisiting and using its discretion, in light of the adjusted findings, as to whether a different number is appropriate. I mean I think that's entirely consistent. In fact, I would suggest that,

Your Honor, that that is left to you because there, there are new circumstances, it's new, it's new evidence -- and it's not even the same order that Judge Koh would have reviewed.  She clearly did send it back to you for reconsideration of whether or not there were any remaining privileged objections -- she actually uses the word any remaining, so I disagree with Apple's assertion that she somehow blew past all the waiver arguments.  But so the Court needs to make that determination in the first instance, and then, if in fact, there is no basis, you know, what, what does that mean?  What are the implications of that?

Judge:          Alright.  I think I have your position, sir. Thank you.

Zeller:          Thank you.

Judge:          Mr. Koppelman, do you want to offer a brief rebuttal?

Koppelman:   Thank you, Your Honor.  Judge Koh did not blow past the waiver arguments.  There's a footnote that specifically finds that the arguments were properly preserved.  That wasn't blown past, that's already been decided.  They feel inclined to still raise all

these same waiver arguments.  The inconsistency is in Samsung saying, in their brief, they're emphatic -- the order, the sanctions order is done and final, therefore not vital.  And then, in the same breath, they say, but we need to revisit it and completely redo it and lower the number and do all these things that we never assigned error to. That is completely inconsistent.  They never --

Judge:           So what you're saying then is the outcome here is perhaps a more modest one.  Simply an order ruling on the sufficiency of the privilege claims of the -- with respect to the documents at issue.  The order awarding sanctions would remain in place.

Koppelman:    Yes.

Judge:           Where -- where does this go though in your world?  In the world that you want me to go to.  In other words, let's assume I -- I order these documents produced and that issue gets resolved and eventually the documents are turned over to you, where does that leave us?

Koppelman:    Well, at least one outcome is Nokia's satisfied with Your Honor's review of them

|            | and agrees with the conclusions you've made on them. |
|------------|------|
| Judge:     | That's certainly one outcome I would -- |
| Koppelman: | That's one -- that's one outcome. |
| Judge:     | What -- But I take it that you be -- you would believe that in that scenario if you were not satisfied that the documents were properly considered in determining the type of sanctions, you would what?  Seek renewed -- |
| Koppelman: | We would come back to you -- |
| Judge:     | -- consideration? |
| Koppelman: | -- and seek leave for some additional relief that would be tailored to what we find in the documents, if anything.  If we find something in the documents that needs to be addressed, we'd raise it with Your Honor and propose a way to address it which may require a deposition to clarify certain things.  It may require us at that time requesting revisiting of the sanctions order but it's not proper for Samsung to ask for revisiting of it now because they didn't -- they didn't assign error to it at the appropriate time which is ironic because their brief is replete |

with waiver arguments how we didn't properly preserve – didn't properly preserve and they clearly didn't preserve the fact saying objecting to the amount and in their appeal clearly limiting it to only the amount and then saying that that somehow opens the door to say the entire basis needs to be revisited and reworked.  That is not what *Mohawk* is about.  They didn't properly preserve it and they can't revisit it and their inviting error by the court to request that now.

Judge:   All right.  Thank you very much, Mr. Koppelman.  Mr. Selwyn.

Selwyn:   Thank you, Your Honor.  Three points. First, the court is free to rely on information learned during *in camera* inspection, whether that information is privileged or not.  In the *Fresh v. Green Transportation* and the *Facebook v. Power Ventures* cases, which we've cited in our brief, the court awarded fees based, at least in part, on an *in camera* inspection of privileged documents and Samsung cites no case in its brief to the contrary.  The *Mohawk* case that Mr. Zeller just referenced is not on point at all.  That case does not suggest that the Court cannot

rely on privileged communications for any purpose. What that case dealt with was the appealability of disclosure orders that were adverse to the attorney-client privilege under the collateral order doctrine --

Judge:          Right.

Selwyn:         -- and how courts can remedy the improper disclosure of privileged -- of communications at trial. It dealt with the timing of how you appeal a finding later with respect to privilege. It didn't deal at all with the issue of whether a court may or may not rely on privileged communications for a purpose. So that's point one. Point two, Mr. Zeller says that Apple is talking out of both sides of its mouth. Before it was complaining that the declarations didn't say enough to substantiate privilege and now we're saying -- well, actually they waived privilege. There's nothing legally or analytically inconsistent between those two points. Although the declarations don't disclose sufficient information to substantiate Samsung's privilege claim or to allow Apple to assess that privilege claim, Samsung's denials of what the communications -- what the

communications say do entail a waiver of privilege.  That's what the *Hawkins* and *Pinho* cases say.  There's -- there's -- there's just nothing inconsistent between those two positions.  Third point on the declarations.  Samsung's brief does not say that the declarations substantiate the claim of privilege for anything other than Tab 6.  And you know when you look -- when you go back and look at some of the documents while they're completely blacked out.  You know here's one what they've blacked out is an email from Apple's counsel to Samsung.  It's really hard for me to figure out what the basis of privilege claim would be there.  You look back at their privilege log, it has the names of Apple's counsel as sender and the recipient and it claims privilege.  Your Honor found that to be insufficient before, nothing has changed and it's insufficient now.  Thank you.

Judge:      Thank you very much, Mr. Selwyn.  Mr. Zeller, any last words?

Zeller:     Yes, Your Honor.  There are a couple of new points --

Judge:      Sure.

Zeller:      -- I'd like to make just very briefly.  They're conflating different log entries.  The communications that involve Apple and Samsung, the reason why those were redacted was because they contained third party licensing information Nokia was not allowed to have and I won't recite the lengthy history.  The Court may recall that there were certain licensing terms with third parties that Nokia was not entitled to see.  We asked Apple for permission --

Judge:       I -- I remember it well.

Zeller:      -- Apple never gave permission for us to share that information.  You know, and of course the Court is aware that a lot of these documents too that Nokia is asking for relate to Ericsson and Sharp and Phillips and a bunch of third parties that they have no right to see that information.  Even in the first instance.  Even apart from the privilege objections and everything else, they have no right to see that.  It would violate other protective orders, we raise that issue repeatedly and they never came to the Court to ask for those objections to be overruled.  So from our perspective, that's way too late now for them to come in and say blow past

all those other objections and give us those documents.  Just then -- one other point briefly.  Our -- first of all it's not correct that we had denials of what the communications -- the privileged communications say.  What we were talking and the Court can see in every instance the context is that we're denying that we did anything wrong.  To the extent that we're talking about particularized documents at all, the reason why is that, the court will recall and these are in the declarations, Apple claimed crime fraud exception.  We are responding to the crime fraud allegations that were being made by Apple.  So a denial in that context is again just a denial.  And it in fact it's kind of a again a weird metaphysical thing where they're basically saying because you denied that this occurred, we're entitled to see any documents that relate to it.  But there's no -- if it's privileged, you can't do that.  That would -- just because a document is relevant to assertions that we have made, whether it's lack of intent or lack of intentionality, that does not answer the question of whether or not --

Judge:          Right.  That would put you essentially in the

position of choosing between either admitting or waiving your privilege.

Zeller:        Right and that clearly is not the law either. And then you can see that that's -- that's kind of rhetorically how they tried to set this up and in fact Nokia even said that explicitly which is basically well you had a choice at that point.  Either substantiate the privilege or not, or basically just don't deny our allegations and the Court can see that that's not the -- that's not the choice that court's put litigants to.  Never has been and it doesn't make any sense to say that.  In fact, *Bittaker* the en banc 9th Circuit decision makes it perfectly clear that that kind of choice is no choice at all.  Because they had actually kind of raised the same point about that habeas petitioner saying well if you're going to put inadequacy of counsel at issue, there must be a waiver and then Judge Kozinski writing for the *en banc* panel said no of course not.  I mean obviously he has a constitutional right to raise that and so that can't be the Hobson's choice that litigants are put to and that's not -- it's not the Hobson's choice that exists here either for Samsung.

Judge:.         All right.  Thank you very much.

Zeller:         Thank you.

Judge:          I'll take this matter under submission.
                You'll get my latest chapter on this as soon
                as I can get one out.  Wish you all a good
                day.  Thank you.