Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PAUL S. GREWAL, MAGISTRATE JUDGE


| | |
|---|---|
| APPLE, INC.,               ) | |
|              ) | |
|        Plaintiff,   ) | |
|              ) | |
|    v.             ) | NO. 5:11-cv-01846-LHK |
|              ) | |
| SAMSUNG ELECTRONICS CO. LTD.  ) | |
| et al.,          ) | |
|              ) | |
|       Defendants.  ) | San Jose, California |
| _____) | Wednesday, December 10, 2014 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 10:04 a.m. - 10:56 a.m. = 52 minutes


**APPEARANCES:**

For Plaintiff:          Wilmer Cutler Pickering Hale
                           and Dorr LLP
                        950 Page Mill Road
                        Palo Alto, California  94304
                BY: **MARK DANIEL SELWYN, ESQ.**

For Defendants:         Quinn, Emanuel, Urquhart,
                           Oliver & Hedges
                        865 South Figueroa Street, 10th floor
                        Los Angeles, California  90017
                BY: **MICHAEL THOMAS ZELLER, ESQ.**
                    **ROBERT JASON BECHER, ESQ.**


(Appearances continued on following page.)


Transcribed by:         Leo T. Mankiewicz, Transcriber
                        leomank@gmail.com
                        (415) 722-7045

APPEARANCES:  (cont.)


For Movant Nokia Corporation:

                        Alston & Bird, LLP
                        1950 University Avenue, 5th floor
                        East Palo Alto, California  94303
                BY:  **RYAN W. KOPPELMAN, ESQ.**

1   <u>Wednesday, December 10, 2014</u>

2                                                    10:04 a.m.

3                    P R O C E E D I N G S

4          **THE CLERK:**  Yes, your Honor, calling Apple versus

5   Samsung, case number CV11-1846 LHK, on for Apple's motion to

6   compel and nonparty Nokia Corporation's motion to compel.

7          Please state your appearances.

8          **MR. SELWYN:**  Good morning, your Honor.  Mark Selwyn

9   for Apple.

10         **THE COURT:**  Good morning.

11         **MR. KOPPELMAN:**  Ron Koppelman for Nokia.

12         **THE COURT:**  Good morning, Mr. Koppelman.

13         **MR. ZELLER:**  Good morning, your Honor.  Mike Zeller

14  for Samsung, and also with me is Dan Posner and Rob Becher.

15         **THE COURT:**  Good morning to each of you.  Welcome

16  back.  All right, well, the crowd thins, but we keep going.

17         I believe we all understand that we are back and here

18  to address the motions to compel filed by Apple and Nokia.

19  I think what makes the most sense is to take these issues up in

20  the order in which I think the parties presented them in all of

21  their briefs, which is to first talk about whether I've even

22  got privileged documents at all, and then to turn to the issues

23  of waiver and the crime fraud exception.

24         And so let's begin with the motion from Nokia,

25  since -- well, let's begin with the motion from Nokia, and then

1   I'll turn to Mr. Selwyn for Apple's perspective before hearing

2   from Samsung.

3         Mr. Koppelman, go ahead, sir.

4         **MR. KOPPELMAN:**  Thank, your Honor.  Good morning.

5         I'll start off, the purpose of Nokia's motion to

6   compel is to have equal access to the evidence that Samsung

7   used to defend itself and the Court considered, and there's

8   three main arguments, I think -- just to reference them, first

9   that, you know, whether Samsung sufficiently substantiated

10  privilege, and then whether the at-issue doctrine applies and

11  whether there was selective disclosure.

12        As to the substantiation, Samsung has the burden to

13  establish it, and there's numerous facial problems with its

14  claim.  After the Court initially reviewed the documents *in*

15  *camera*, it noted that many of the documents appear to have a

16  business purpose as well as a legal purpose.  Many of the log

17  entries don't involve an attorney, and at least one log entry

18  was with a third party blogger.

19        Samsung in its opposition now claims that much of what

20  it redacted and withheld on the basis of privilege is not

21  actually privileged, and makes those claims in opposition.

22        **THE COURT:**  Can I ask you about that, Mr. Koppelman?

23        **MR. KOPPELMAN:**  Sure.

24        **THE COURT:**  First of all, before we turn to all these

25  other issues, the universe of documents at issue seems to be a

bit of a moving target here.  As I had understood it

originally, the issue before Judge Koh on review was whether

the documents I had referenced in my footnotes were indeed

privileged and entitled to maintain that protection going

forward, in light of certain actions taken by Samsung.

On remand, it seems that you're talking about a

broader universe of materials than just what I referenced in

the order.  So could you perhaps set that table for me?

**MR. KOPPELMAN:**  Well, if you go back and look at the

original briefing, the issues we raised leading up to the

motion for sanctions, multiple times we've raised the waiver

issues and the concerns with their substantiation; and in

particular, I would point the Court to our supplemental brief

that was filed after the hearing before the sanctions order, in

which we made our arguments very broadly that the waiver went

beyond just the ones at least cited in the show cause, and that

we thought there was broader waiver as to the docket -- the

record --

**THE COURT:**  So you --

**MR. KOPPELMAN:**  -- that they had characterized the

record, and we had made those arguments, and we're re-making

them now.

**THE COURT:**  Your view is that on this remand, I am to

consider not only the documents that I specifically referenced

in my opinion, but indeed, all of the documents for which

1   Samsung has claimed and continues to claim privilege.

2            **MR. KOPPELMAN:**  Yes.

3            **THE COURT:**  Okay.  All right, why don't you continue.

4            **MR. KOPPELMAN:**  And as to the substantiation point,

5   you know, they've withdrawn privilege on some of those and we

6   think those documents should be produced now, and in your order

7   for sanctions, you identified certain documents that at least

8   portions of them were not privileged, and we don't see a reason

9   why there should be any further delay in the production of that

10  information.

11           The remainder of the documents, though, Nokia cannot

12  evaluate with equal access, and that's what we understood the

13  *in camera* process to be for, is to resolve privilege claims

14  where there's not equal access, and that process took place,

15  and we would ask the Court to rule on the privilege assertions

16  that Samsung has made, you know, that it was ordered to produce

17  all the documents in the October 2nd order, withheld them, and

18  we would like a ruling.

19           **THE COURT:**  So again, and this is really what I'm

20  getting at with my earlier question:  You believe that you're

21  entitled to essentially a ruling on each and every one of the

22  documents for which Samsung maintains its privilege, such that

23  I am to go through document by document and make a call on what

24  I think would amount to, what, several hundred documents?

25           **MR. KOPPELMAN:**  I think it was about 275.

1          THE COURT:  Okay.

2          MR. KOPPELMAN:  But the size of that is in proportion

3    to the size of the violation, the extent of the disclosure.  If

4    it was a smaller disclosure, we'd have a smaller issue to deal

5    with.  It went to 75 recipients and this was a widespread

6    disclosure over a lengthy period of time, and that's not

7    Nokia's fault that there's that much paper as a result of the

8    extent of the disclosures.

9          Samsung has raised the issue of relevancy.  We can't

10   evaluate those claims of relevancy because we don't have equal

11   access.  It's possible, in an *in camera* review, the Court may

12   determine that some of the documents are completely irrelevant,

13   and I think that is an appropriate analysis to be done *in*

14   *camera*, separate and apart from the privilege.

15         THE COURT:  Right.  I don't want to make your next

16   argument for you --

17         MR. KOPPELMAN:  Okay.

18         THE COURT:  -- but it would seem that by submitting

19   those documents for review, Samsung itself has conceded that

20   those documents are relevant to the issues in dispute, right?

21         MR. KOPPELMAN:  I would agree with you.  It's

22   certainly within the scope of what the Court ordered as

23   relevant and they submitted them and, you know, this goes right

24   into the waiver arguments, which is where I was going to next.

25         They relied on them.  They pointed to this evidence

1    and they pointed the Court to that evidence *ex parte* to say,

2    this stuff -- you know, this set of documents, the *in camera*

3    submission, shows inadvertence and non-use, and those two

4    particular assertions and defenses give rise to the at-issue

5    doctrine.

6              You know, the principle is that parties in litigation

7    may not abuse the privilege by asserting claims or defenses

8    that the opposing party cannot adequately dispute unless it has

9    access to the privileged materials.  This requires equal access

10   for fundamental fairness.  The case law refers to fundamental

11   fairness, and that's ultimately what we're arguing here, what

12   we're seeking.

13             You know, and so, as to the first issue that Samsung

14   injected, the inadvertence, Samsung repeatedly put at issue the

15   intent of Samsung and its lawyers using the evidence and

16   documentary record in the *in camera* submission to show that

17   there was inadvertence.

18        **THE COURT:**  Now, they're saying that they didn't put

19   those documents at issue, that effectively I did, by ordering

20   them submitted.  What's your view on that?

21        **MR. KOPPELMAN:**  I think that that puts them in a tough

22   position, and this is the horns of the dilemma with which

23   litigants are faced:  Do you defend yourself with privileged

24   materials or do you not?  And if you do, then equal access

25   principles should apply, and if you don't, then you take your

1  lumps, and it's a tough position for people to be in --

2       **THE COURT:**  But their submission was *in camera*, right?

3  So it's not as if they made them available to the world, or

4  even to you.

5       I think what I read in Samsung's papers is a

6  recognition of that same dilemma but a different solution to

7  it, right?  What they're saying is -- I'm sure I'm going to

8  hear from Mr. Zeller and others in just a moment, but what

9  they're saying is that they have always maintained a privilege

10  over these materials, and so to the extent that the privilege

11  is properly claimed, and they believe it is, they should be

12  entitled, like every party in every case, to maintain that

13  privilege, and to the extent the Court has issued sanctions

14  predicated on those materials, the solution is to withdraw the

15  sanctions.  The solution is not to make them available for

16  review.

17       So what's your thought about that?

18       **MR. KOPPELMAN:**  Well, I mean, the withdrawal of

19  sanctions to us is not appropriate.  If you look at your order,

20  it's independently supported not by -- in fact, I think you

21  addressed inadvertence, you addressed use.  You didn't find

22  those things.  In your sanctions order, there's a finding that

23  sanction was based on independently public and non-privileged

24  information, and specifically as to the failure to enact

25  safeguards and protocols to ensure this sort of thing didn't

1   happen, and that this privilege fight goes more to their

2   exculpatory claims that this evidence, you know, shows

3   inadvertence and shows non-use.

4        If they want to withdraw those, and their opposition

5   seems to suggest that they could, withdraw those defenses,

6   I mean, it seems odd to me at this point, one, that they

7   could -- I think that horse is out of the barn -- but also

8   that, I mean, the impact of them saying we no longer are

9   claiming it's inadvertent and we no longer claim that we didn't

10  use it, I think we're past that point.

11       And particularly, you brought up the order to show

12  cause.  They responded by saying that, "No piece of evidence,"

13  and this is a quote,

14            "No piece of evidence adduced in the massive

15            discovery conducted either voluntarily or pursuant to

16            the Court's October 2nd order has revealed even the

17            slightest indication that any disclosure was

18            intentional rather than inadvertent."

19       And this is them putting those documents in issue and

20  saying, those documents show our innocence.  It's not just a

21  mere denial.  They're proving it, without our equal access.

22  And this goes right into the fundamental fairness rule and the

23  purpose of it, to not allow those types of *ex parte* arguments.

24       **THE COURT:**  But can't I vindicate the purpose of that

25  rule in a slightly different way?  I want to come back to what

1    we were talking about a minute ago.  It would seem that if you

2    have never seen and believe you have a right to see these

3    documents, one solution is the one you proposed, but I'm still

4    struggling with this idea that, why not simply say, okay, the

5    privilege that's been claimed is -- needs to be established,

6    but let's assume they can do that.

7          **MR. KOPPELMAN:**  Okay.

8          **THE COURT:**  Let's pull that set of documents out from

9    the record that the Court considered in imposing the sanctions

10    and ask:  Are sanctions still justified on the record which

11    remains?  And in that situation, you believe there's adequate

12    information in the record to maintain the existing sanctions.

13          Why isn't that an equally or perhaps even better

14    solution than the one you're proposing?

15          **MR. KOPPELMAN:**  Because we don't know what the

16    documents show, and they may show something other than

17    inadvertence, from Nokia's perspective, having never seen them.

18    We know your Honor's been --

19          **THE COURT:**  Right, but if they're privileged --

20          **MR. KOPPELMAN:**  It could be worse.

21          **THE COURT:**  Right, but if they're privileged, you're

22    not entitled to see them, right?

23          **MR. KOPPELMAN:**  Unless they've waived.

24          **THE COURT:**  Right, but the waiver you're claiming is

25    waiver that is an *in camera* submission at the direction of

1    Court, and my question is, is that really waiver at all?

2        **MR. KOPPELMAN:**  No, the *in camera* submission is not

3    waiver, it's the arguments from those documents.  They submit

4    them.  It doesn't mean they have to argue from them, doesn't

5    mean they have to say that those things -- *ex parte* argue,

6    those documents show X and show Y.  That's where they step too

7    far.  That's the misstep, from Nokia's perspective.

8        **THE COURT:**  Yeah, but don't I cure that problem by

9    taking those documents out from the record and out from the

10   analysis and ask, are the sanctions justified in light of what

11   remains?  That's the piece I'm not quite understanding.

12       **MR. KOPPELMAN:**  And as from Nokia's perspective, we're

13   past that already, and there's been an order, and out of

14   fairness, we should understand the full record that was

15   considered, and we don't see a reason to undo what's already

16   been done, because the order is independently supportable on

17   other bases, separate and apart from the inadvertence and use.

18   It can only get worse for them, not better, and that's not a

19   reason to vacate the order.

20       **THE COURT:**  Well, but -- it would seem that if your

21   interests were in maintaining the sanctions as they currently

22   exist, one way to solve that problem would have been to let

23   this one go, but you have exercised your right, and

24   I appreciate that you believe that you're entitled to see the

25   these documents.  I'm still stuck on this notion that I have to

1   take the sanctions as issued and assume that they will remain

2   in place based on what record exists independent of the

3   privileged materials.

4        It seems that there's a real question here whether the

5   non-privileged materials can support the sanctions that were

6   previously issued, and if that's true and if the only waiver

7   that could arguably be urged here is the submission to the

8   Court of documents *in camera*, that's a very different posture

9   than the ones in all the cases that you all cite.

10        So help me out with that.

11        **MR. KOPPELMAN:**  Well, I don't know -- I don't know if

12   I know exactly how to respond.  I mean, I think the main points

13   are the order does not -- the sanctions order as it currently

14   stands, at least in our reading, does not -- for finding

15   sanctions does not rely explicitly on the privileged materials

16   to make those findings, and in fact, it basically says you

17   weren't convinced by it, and sort of, to some extent, doesn't

18   give much credit to what's in those materials in terms of the

19   actual finding of sanctions.

20        **THE COURT:**  So let's assume I agree with you there,

21   that there are materials independent of those which were

22   subject to the privilege, which justify the sanctions.

23        If that's true, how can you argue that their arguments

24   about the privileged documents independent of the documents

25   submitted *in camera* themselves give rise to a waiver such that

1   the only solution is to keep the sanctions in place or the

2   production and allow you to inspect?

3            How does the argument independent of the documents

4   give rise to that kind of waiver?

5            MR. KOPPELMAN:  Because the positions they took still

6   matter, and they're --

7            THE COURT:  But on the one hand you're saying they

8   don't matter because there are other documents that justify the

9   sanctions.  Now you're saying that they do matter because they

10  were considered bay the Court before the sanctions were issued

11  in the first place.  So what am I missing?

12           MR. KOPPELMAN:  You're putting your finger right on

13  it, and both are true.  They don't --

14           THE COURT:  They do matter and they don't matter.

15           MR. KOPPELMAN:  Yeah.  They do -- they don't matter in

16  what you already found to support the existing sanctions.

17  Those are independently supportable.  They do matter in terms

18  of what you didn't find in your review of these to agree with

19  their defenses.

20           I don't know if you agree with them, but reading of

21  the order is, arguably, you agreed that it was inadvertent,

22  that you agreed there was no use, and -- or at least not

23  convinced there was use, and those -- those findings -- and,

24  you know, at least that consideration and analysis goes to the

25  defenses and goes to the documents, but what you actually found

1    in terms of sanctions is not implicated.

2            **THE COURT:**  Okay.  Go ahead.

3            **MR. KOPPELMAN:**  I think the one thing we haven't

4    touched on is selective disclosure.  Samsung has waived

5    privilege in addition by making selective partial disclosures

6    of certain documents, and in particular, Quinn Emmanuel sent

7    Apple a letter about the December 2012 exchange, and I'm

8    quoting from this letter.

9            "On December 21st, 2001, Quinn Emanuel associates

10           sent the incompletely redacted Teese report to a

11           Samsung employee.  Another associate realized that it

12           contained references to licensing terms that not been

13           redacted.  The lawyer who sent the e-mail notified the

14           Samsung employee not to look at the report."

15       That goes to the content of the communication between

16   Samsung and its counsel, content of communication that's been

17   redacted and withheld from us but disclosed in this letter to

18   Apple.  It goes on, the e-mail,

19           "The employee confirmed that he would not look at

20           the report and would delete the e-mail."

21       Again, that's content of communication between

22   attorney and client that's been withheld from us, but disclosed

23   here.

24           "The attorney subsequently sent another e-mail with

25           the report that contained redacted -- complete

1          redactions,"

2   and the completeness of those redactions is where it goes to

3   the content of that communication as well, and again, we

4   haven't seen those things, and these statements reveal

5   substantial portions of the communications in this e-mail

6   exchange and transaction, which Samsung has redacted entirely

7   for privilege.

8          **THE COURT:**  And do you believe that that gives rise to

9   a waiver as to the entire set of materials at issue or just

10  those communications that are the subject of that letter?

11         **MR. KOPPELMAN:**  Those communications and the subject

12  matter.  The subject matter, though, would be narrowly defined

13  as to those communications, anything that -- that closely

14  relate to that.  Without equal access to the record, I don't

15  know what else that might entail.  It may just be the single

16  set.  It may be somewhat broader.

17         But Samsung went further and revealed that Mr. Shim

18  originally requested the Teese report in the same e-mail

19  exchange for use in the *MicroUnity* case, which again is another

20  detail of this exchange, the content of the communication, the

21  purpose that it's been withheld, and they're sort of -- they're

22  selectively disclosing parts and not other parts, which is the

23  whole point of the doctrine.

24         And so out of fairness, Nokia should be able to see

25  the entire communications which Samsung has characterized and

used as a defense here, and Nokia respectfully requests the
Court to grant this motion to compel.

If you have any other questions, I'm happy to answer
them now, or --

**THE COURT:**  No, I'll give you a chance for rebuttal.
I appreciate your arguments.

Let me hear from Apple before I turn to Samsung.
Mr. Selwyn, good morning.

**MR. SELWYN:**  Good morning.  If I could begin by just
setting the stage a little bit, because Nokia's arguments are a
bit different here than Apple's arguments are.

If you recall, Apple was actually the only party not
to appeal your order to Judge Koh.

**THE COURT:**  I did notice that.

**MR. SELWYN:**  Apple believed that you reached a correct
result, and as your Honor has suggested in the past, was happy
to move forward from it.

Samsung actually didn't appeal your order either
insofar as your sanctions ruling.  They appealed the amount of
fees and they also appealed the issue of waiver, but as to the
underlying correctness of the sanctions order, Samsung didn't
appeal either.

So to this argument that Samsung has now raised about
your Honor's purported use of privileged material and that
being improper and that you should now go back and vacate it,

1   that's all a new argument.  If that is something that they

2   truly believed, they should have either raised it with you or

3   brought it to Judge Koh.

4           That has now been waived, having not been raised, and

5   in fact, again, in the briefing to Judge Koh, Samsung said they

6   were okay with your Honor's sanctions ruling.  They said it was

7   appropriately narrow.  It is the fee amount that they were

8   objecting to.

9           So consistent with Apple's prior briefing to this

10  Court and to Judge Koh, Apple has limited its briefing to the

11  seven documents that Samsung had offered to produce to Apple

12  and to Nokia, and for which this Court had previously found

13  that Samsung could not assert privilege.

14          We believe that the Court's prior conclusion on that

15  point was correct, and our brief essentially raises the same

16  arguments that we raised before this Court, again raised to

17  Judge Koh.  Judge Koh simply found that your Honor hadn't

18  addressed those arguments, directed your Honor to reconsider

19  them in this proceeding, and we've just brought them forward

20  once again.

21          We truly have no desire to prolong this but felt,

22  given Judge Koh's mandate that this Court consider it, that it

23  was not appropriate for us to walk away, but rather to present

24  those arguments once again to your Honor.

25          **THE COURT:**  Well, I don't want to speak for Judge Koh.

1   I suspect she would not have taken offense if you had elected

2   to walk away.  You have an interest here and you're entitled to

3   pursue it.

4          Can I ask, it seems then that you've highlighted a few

5   differences in Apple's posture here from Nokia's.  Among them

6   is, you're seeking review only of the seven documents, correct?

7          **MR. SELWYN:**  Yes, just as to the seven documents that

8   were the subject of your Honor's footnote.

9          **THE COURT:**  Okay, and in terms of the posture on

10  remand, it's interesting, the cases that you all discuss in

11  your briefs really focus on the classic scenario of an appeal

12  to the Circuit Court and a return to the District Court.

13         The relationship between magistrate judge and district

14  judge is I think slightly different than that.  One of the

15  things Samsung seems to really focus on in their papers is that

16  while you raised these issues with Judge Koh, there was no

17  independent request for review, as you yourself I think have

18  just described.

19         **MR. SELWYN:**  Correct.

20         **THE COURT:**  Does that matter?  Does that matter that

21  you've raised these issues in the context of an opposition --

22  in the context of an opposition to a Samsung request for relief

23  as opposed to independently seeking review?

24         **MR. SELWYN:**  I don't think it does.  I'm not sure what

25  we could have appealed, because your Honor agreed with us and

1    found waiver.

2         **THE COURT:**  It would make for a strange appeal, for

3    sure.

4         **MR. SELWYN:**  It would have been a strange appeal to

5    appeal something where we had won.  Now, your Honor found on

6    different grounds than we had brought to your Honor, and that

7    was the reason for the remand, but I don't think it makes a

8    difference.  We're presenting the same arguments before to your

9    Honor as we did to Judge Koh as we do now, and Judge Koh asked

10   that those arguments be considered, so we give them to you for

11   your consideration.

12        **THE COURT:**  Okay.  Can I ask you, Mr. Selwyn, since

13   you raised these issues in your brief, I just wanted to touch

14   upon them in some detail.

15        In terms of the quality of the privilege claim that

16   Samsung makes, I read your brief as suggesting that at a

17   minimum, the log itself doesn't pass muster under the standards

18   of the Ninth Circuit, and not perhaps other cases.  Is that

19   Apple's position?

20        **MR. SELWYN:**  Yes.  I mean, the log has not changed

21   since your Honor commented on it in the order to show cause,

22   where your Honor found that the log, your Honor's words were,

23   unpersuaded by the generic statements in the log to meet the

24   burden required to claim the protection.

25        So nothing has changed between the time that you made

1   that statement and now.  It's the same log.  So when Samsung

2   says the log is sufficient, I think that's ground that we've

3   already covered, and your Honor has said no, you're not

4   persuaded by the sufficiency of the log.

5          THE COURT:  Well, what's interesting, right, is that

6   even though I made that finding in the order to show cause that

7   was a finding of this particular Court, and what I'm -- what

8   I've never quite understood, candidly, is why that finding in

9   the OSC wasn't presented to the district judge as an

10  alternative grounds that was made by this Court, even though it

11  was in the OSC rather than the sanctions order.

12         Do you follow what I'm saying?

13         MR. SELWYN:  I think so, but Apple did -- I mean, one

14  of the arguments that we presented to Judge Koh was, as your

15  Honor had found in the order to show cause, that the log was

16  insufficient, so therefore, Samsung had not met its burden of

17  presenting a *prima facie* case of privilege as to each of those

18  documents.

19         THE COURT:  Well, would you agree that Apple

20  apparently wasn't persuasive in moving the district judge to

21  see that those findings were made?

22         MR. SELWYN:  I don't -- I wouldn't put it that way.

23  I think, as I read Judge Koh's order, she felt it appropriate

24  for there to be consideration by this Court before she reviewed

25  that argument.  So I don't think she was weighing as one way or

1    the other, for Samsung or for Apple, on that issue.  That

2    issue, as with the other issues that had been presented by

3    Apple but not explicitly ruled on by this Court, as I read her

4    order, she thought it was appropriate for this Court to

5    reconsider.

6         **THE COURT:**  Right, and it would seem that among the

7    positions Apple is urging this Court to take is to simply

8    affirm my earlier finding in the OSC order that, in fact, the

9    sufficiency of the privilege log was not there, that on that

10   basis alone, the privilege had not yet been claimed; and if

11   that's true, then is there really much more for me to do for

12   the benefit of the presiding judge other than to confirm

13   that I meant what I said before, and I'm reaffirming that in

14   this context?

15        **MR. SELWYN:**  I think that would be sufficient.  In our

16   brief, we have presented three arguments which each would

17   independently provide a basis for your Honor to find either

18   that the privilege has been waived or that there's no

19   privilege --

20        **THE COURT:**  At all.

21        **MR. SELWYN:**  -- in the first place.  That is one of

22   the arguments that, as an initial matter, Samsung has not

23   substantiated its claim of privilege.  In its opposition it

24   again points to that log.  We say that issue has been resolved

25   by your Honor.  If Samsung disagrees with it, they should have

1    taken it up with Judge Koh, but your Honor ruled on that.

2           And with respect to the declaration support, they only

3    use that to support one of the seven documents, at tab 6.

4           **THE COURT:**  Right.

5           **MR. SELWYN:**  They say that their declarations are

6    sufficient to substantiate privilege.  They offer no argument

7    that the declarations are sufficient to substantiate privilege

8    as to the remaining six documents and, you know, as to tab 6,

9    if you look at the declarations, it's really just offering a

10   general statement that the recipients had some responsibility,

11   which they don't describe in any detail, for handling aspects

12   of the global litigations, which they don't describe in any

13   detail.  They don't explain what connection each recipient had

14   to the litigation or anything else that would meet the test

15   that's identified in the cases in our brief.

16          So that is the first issue, whether the log is

17   sufficient, and if the log is not sufficient, whether in

18   response to the order to show cause Samsung offered anything

19   else that might overcome the deficiency that your Honor found

20   in the log.

21          The second issue that is presented in the briefs is

22   the waiver argument, and as to three of the documents, three of

23   the seven documents that Samsung -- of the so-called waiver

24   documents, tab 6, 20 and 222, Samsung in its declarations and

25   in its brief, in response to the order to show cause, made

1   arguments about what those documents do not show, and based

2   upon the *Hawkins* and *Pinho* cases, among others, we believe that

3   the denial of the existence of a communication with counsel

4   within this instance gave rise to a waiver as to those

5   documents.

6         Both of those cases, *Hawkins* and *Pinho*, are very

7   similar on their facts.  For example, in *Pinho*, it involved a

8   situation where the defendant had testified that she had never

9   discussed the subpoena with her attorney and was not told that

10  the documents were going to the grand jury, and under those

11  facts, relying on, in part, on the *Hawkins* case, the court

12  found that when a defendant testified that none of her

13  conversations with her attorney included a conversation about

14  that specific subject, she was, in fact, testifying to the

15  contents of all conversations that she had with her attorney

16  regarding that subject, and found a waiver.

17        And for the same reason here, when Samsung submitted

18  declarations denying that certain withheld communications

19  covered certain subjects, that effected a waiver of the right

20  to reassert privilege over those communications.

21        You mentioned the issue of Samsung's argument that,

22  well, they were forced to submit these declarations.  I don't

23  think that's what happened.  They were forced to submit the

24  documents *in camera*.  Your Honor did order that, and your Honor

25  said, you can provide me a brief with any other arguments

1    supporting your claim of privilege.

2         **THE COURT:**  I thought that was more of an invitation

3    than an order, right?  I mean, that wasn't a command to present

4    a brief, was it?

5         **MR. SELWYN:**  I read it as an invitation.  It was not

6    an order, it was not a command to do so, and in response,

7    Samsung submitted a brief and also submitted a whole boatload

8    of declarations, as well.  Nothing required them to do that.

9    They did.  It was purely voluntary.

10        And then third is the issue of crime fraud exception,

11   which again, this Court did not rule on and Judge Koh did not

12   rule on.  The documents that are at issue here are among those

13   that the Court relied on in finding that Samsung and its

14   attorneys embarked on -- and I'll just use the words from the

15   Court's order -- a conscious, strategic and willful path that

16   caused hundreds of, quote, "blameworthy violations" of the

17   Court's protective order.

18        Samsung argues that its violations were inadvertent

19   and it did not wrongfully use Apple's confidential information.

20   In response to that, first, the Court did, in fact, find that

21   Samsung's violations were conscious, strategic, and a, quote,

22   "willful failure to institute safeguards," and the Court also

23   found, at least with respect to one in-house lawyer, that

24   Samsung did make use of the confidential information.

25        Second, and this is an observation the Court made in

1    its January 29th order, there's no intent requirement to prove

2    a violation of the protective order, and a showing of intent is

3    not required to invoke the crime fraud exception where, as

4    here, it's clear that the communications were in furtherance of

5    wrongdoing.

6           Now, Samsung also disputes that issue as to whether

7    their communications were in furtherance of wrongdoing, but

8    I think the January 29th order already found that they were,

9    that the communications were themselves evidence of breach.

10          So for all of those reasons, and each of them is

11   independent, we think that your initial conclusion about waiver

12   was the correct one.  Again, Samsung's argument that your Honor

13   improperly relied on privilege and therefore, everything should

14   be set aside, new argument, waived argument.

15          In any event, the sanctions order does not rely

16   exclusively, or even predominantly, on these seven documents.

17   There are at least 18 other documents that we counted that are

18   the basis of the Court's order for which your Honor found that

19   there was no privilege.  That was a finding that Samsung never

20   challenged.  I think it's now the law of this case.

21          So there's no basis to go back and redo any of your

22   Honor's prior findings in that regard.

23          **THE COURT:**  All right.  Thank you very much,

24   Mr. Selwyn.  I'll give you a chance for rebuttal, as well.

25          Mr. Zeller, good morning again, sir.

1          **MR. ZELLER:**  Good morning, your Honor.  There's

2     obviously a number of things that have been raised, and I'm

3     happy to start wherever the Court thinks it's appropriate.

4          Perhaps one point that the Court was making is worth

5     emphasizing, which is, from our perspective, *Mohawk* requires

6     that essentially the order be redone to eliminate reliance upon

7     the substance of privileged communications, and I think the

8     next step is for the Court to see where it is.

9          There's an argument that somehow we haven't preserved

10    that.  The reality is, as the Court knows, we have said all

11    along we thought that the amount of sanctions was excessive and

12    unreasonable.  That is, we think, still something the Court

13    could revisit in determining, you know, once it looks at its

14    findings, what's left, and then making that determination as to

15    whether or not the approximately $2 million that was awarded is

16    still appropriate, in light of those findings.

17         I think it's a very straightforward thing, and I think

18    what the Supreme Court mandates in *Mohawk*, where it says

19    basically that, you know, where there's an inappropriate

20    reliance on privileged information, the judgment has to be

21    vacated and then basically needs to be remanded, in which the

22    protected material and its fruits are excluded from evidence.

23         So I think it's a very straightforward kind of

24    approach.

25         **THE COURT:**  Can I ask you, Mr. Zeller, on that issue,

1   and this wasn't one that was really addressed to any length in

2   the papers, if I were to go back and excise from my analysis

3   and consideration those documents which are properly protected

4   by privilege and redo the analysis as you suggest, is it your

5   feeling that no sanctions are justified, with those seven

6   documents out of the picture?

7            **MR. ZELLER:**  Your Honor, we would still agree that

8   some level of sanctions, monetary sanctions -- not the other

9   ones that the Court's already found were ludicrously over-broad

10  and the like, but we have said that we do think that, you know,

11  a monetary award that is -- you know, looks for some reasonable

12  reimbursement of fees is an appropriate sanction for the

13  violations, the transgressions that we acknowledge.

14           The Court's order obviously does go further, and there

15  is an inherent contradiction, as the Court has pointed out, in

16  Apple and Nokia's positions here.  On the one hand, they're

17  trying to tell you it doesn't affect the Court's order.  On the

18  other hand, they're trying to say that they need these

19  documents.  And those are completely irreconcilable.

20           Also, as the Court is aware, for at-issue waiver to

21  apply, the information, the communications, have to be vital.

22  I mean, even setting aside the other five requirements that we

23  don't think are met here, but at the end of the day, the Court

24  would still have to say, well, it's vital for Apple and Nokia

25  to have these communications in order to properly litigate

1    these issues.

2          So they can't have it both ways.  They can't tell the

3    Court that these communications don't matter for purposes of

4    the sanctions, and therefore, you don't need to disturb

5    anything, but on the other hand, order us to produce them.

6    Those are absolutely completely irreconcilable, and they make

7    no effort to reconcile those here today.

8          **THE COURT:**  All right.

9          **MR. ZELLER:**  And also, I think there's a very similar

10   point too, your Honor, which is, you've used the word "moving

11   target," and that definitely applies here.

12         Apple and Nokia are tripping over one another and

13   themselves between positions they used to take and positions

14   they take now, where basically they argue out of literally the

15   opposite sides of their mouths, our privilege logs are

16   insufficient, therefore it's a waiver, and on the other hand,

17   they disclose too much, and there's been a waiver.

18         And tab 6 is sort of a paradigm of this.  I mean,

19   there's a -- this is what Apple used to say.  This is docket

20   2825-2, at page 3.  They claim that our description of tab 6

21   does not contain any information regarding the subject matter

22   of the communication.  Then in docket 3212, at 4, they claim

23   that we disclosed the content of it.

24         This literally is just this kind of nose of wax you

25   have constantly going on here where they just make these

1    characterizations to fit what they think is the appropriate

2    legal document, and there's no consistency here.  There's none

3    whatsoever.

4           There's also a fair amount of revisionist history,

5    really, which is the idea that somehow we were not denying, and

6    it was completely gratuitous that we were denying that our

7    violations were intentional.  They repeatedly put that at

8    issue.  The Court will recall Mr. McLaney got up here and

9    called us criminals.

10          So the idea that we weren't responding or we were

11   doing this voluntarily is just completely belied by the record.

12          One thing I would also point your Honor to is, I know

13   the Court was asking questions about the logs and what the

14   Court was describing as its findings previously.  What the

15   Court actually said, your Honor, and you can look at it, it

16   said the Court is not yet persuaded; didn't make a finding that

17   our log was deficient.

18          But even more importantly, what it then went on to do

19   was say, but I'm going to give you an opportunity to

20   substantiate privilege, by putting in this submission.  And

21   I can quote the language, but it is pretty mandatory.  I mean,

22   one can argue, I guess, metaphysics about what's voluntary or

23   not, but clearly the Court was saying, we need to further

24   substantiate our privilege or it will be deemed waived, at

25   least as to those documents.

1    One thing that the Court has been hitting upon,

2    I think, that Apple and Nokia has completely lost sight of, and

3    this is replete throughout the cases, this is not a strict

4    liability kind of test.  Instances where courts have found

5    waiver because of inadequacies in the privilege log go through

6    a series of steps, and in fact, the Ninth Circuit rule is that

7    waiver isn't automatic even if you don't do a privilege log at

8    all.

9    So it certainly cannot be the case that somehow we can

10   just simply say -- you know, that Apple and Nokia can say,

11   well, we don't like your privilege log, no further steps are

12   necessary until you get to a waiver.  The cases we think quite

13   clearly show that the Court appropriately would need to give us

14   additional guidance as to what do we have to have in the

15   privilege log.

16   We think we made the *prima facie* case, as the Court

17   has seen from the papers, and when you look at the criteria

18   that the Ninth Circuit has applied, we think we meet those.  We

19   have provided that information.

20   Now, if the Court disagrees, the next step would be to

21   order us to substantiate it further and provide us additional

22   guidance.  The remedy there is not waiver.  It just isn't.

23   There is no authority.  Apple and Nokia can't point to a single

24   case where the court has just simply said, I looked at your

25   log, too generic, privilege waived, not a single authority; and

1    nor would it be fair.  There wouldn't be any reason to have

2    that kind of rule.

3          The other thing is that there was -- the assertion was

4    made that, we're not relying on the declarations?  That's

5    completely incorrect.  Of course we're relying on the

6    declarations.  And Apple cannot argue, at least I think

7    persuasively, that those declarations don't make the *prima*

8    *facie* case of privilege.

9          **THE COURT:**  I assume you submitted the declarations

10   for a reason.

11         **MR. ZELLER:**  We did, sixteen of them, your Honor.

12   They went into -- they, of course, have to describe, at the

13   appropriate level of generality, why they're protected without

14   then going further and disclosing the content.

15         But again, you know, the whole approach that Apple and

16   Nokia take to this all of this is kind of "gotcha."  You went

17   too far, not far enough, all means waiver.  And that's just not

18   the law.  That's not even remotely the law.

19         Also, I add just briefly, your Honor, there have been

20   statements made that somehow we were relying upon these

21   privileged communications and that resulted in the waiver, but

22   those are -- again, that's just kind of rhetoric from Apple and

23   Nokia.  The cases make it very clear that you have to rely on

24   the content of a specific communication in defending yourself,

25   as -- basically interjecting it yourself.

1        We didn't interject this.  These were denials.  We

2   were denying that we had done anything wrongful, as we're

3   entitled to do.  But more specifically, kind of these general

4   statements of -- and Mr. -- Nokia's counsel quoted us, where he

5   said, you know, we were relying upon the discovery as showing

6   nothing was intentional, well, we weren't relying on the

7   documents we gave to the Court that were in privileged

8   communications.  We were relying upon the discovery that Apple

9   and Nokia took, and that none of it showed intentionality.

10        So that's -- there's no specific statement that they

11   can point to where we said, Judge, take a look at this

12   document, it proves, it exonerates us.  We never did that.  And

13   that's the kind of specificity that's required for this kind of

14   a waiver.

15           **THE COURT:**  General denials not being enough.

16           **MR. ZELLER:**  Correct.

17           **THE COURT:**  All right.

18           **MR. ZELLER:**  There are a number of other arguments and

19   statements that were made here, but I think these probably

20   cover the crux of it.  I don't know if the Court had questions

21   or anything further on this, but I think really the key in many

22   respects, your Honor, is that there's a complete disconnect

23   between the arguments they make here and the remedy they're

24   asking for.  There's nothing to bridge that gap.

25           Everywhere they turn, the penalty or the remedy for

1    that is not that we have to disgorge privileged information.

2    It's that either we give them a further chance to substantiate

3    privilege or the Court's sanctions order needs to be revised to

4    excise the privileged communications.

5         **THE COURT:**  I did have one last question on where this

6    all leaves us, in your view, and then I want to hear from the

7    other side, on this, as well, in rebuttal.

8         I take it, Mr. Zeller, in your view, the right outcome

9    here is to affirm the privilege of the materials at issue, to

10   redo the order awarding sanctions in light of the materials

11   which remain, and to leave it at that for that parties to take

12   up as they see fit.

13        **MR. ZELLER:**  Exactly, your Honor, and I believe that

14   the Court could, and should, revisit whether or not the full

15   amount of attorneys' fees that were awarded was the appropriate

16   sanction here.

17        I mean, we certainly agree that, again, as I was

18   mentioning, as a baseline, excising everything out of the

19   sanctions order, and even things that we acknowledged to the

20   Court, clearly would be a sufficient basis to award monetary

21   relief as a sanction.  We don't get nothing further, but

22   nevertheless, we at least agree on that point.

23        And as Apple's counsel pointed out, it is certainly

24   the case we have only been challenging the amount.  When we

25   took it up to Judge Koh, we just said that we didn't think the

1   amount was proportionate, really, to the offense.

2           And so I do think that the Court would in that

3   instance, once, you know, the findings are redone, should

4   revisit that conclusion and make the determination as to what's

5   left, whether still appropriately supports the entire

6   $1.92 million award.

7           **THE COURT:**  On that latter point, Mr. Zeller, do you

8   read anything in Judge Koh's order which suggests that the

9   amount of fees which were awarded as sanction is tied to the

10  record which was properly reviewed?  Or put another way,

11  I thought I read in her order pretty clearly her saying that

12  the amount was just fine, even as she was saying, hey, Judge

13  Grewal, go back and look at the privilege issue on these seven

14  documents.

15          So do I really have that authority on remand to

16  revisit that issue when she's already made findings on that

17  question?

18          **MR. ZELLER:**  I do think you do, your Honor, because

19  the circumstances are different.  I read Judge Koh's order

20  perhaps in a slightly different way, which is that she was

21  affirming your discretion on the range.  We, of course, made

22  arguments about, we thought there were particular standards

23  that ought to be applied, and Judge Koh, I think at the end of

24  the day said, well, you know, it's up to Judge Grewal, and he

25  has discretion on that amount.

1          I don't think that's inconsistent at all with the

2     Court revisiting and using its discretion in light of the

3     adjusted findings as to whether a different number is

4     appropriate.  I mean, I think that's entirely consistent.  In

5     fact, I would suggest that, you know, that that is left to you,

6     because there are new circumstances, it's new evidence, and

7     it's not even the same order that Judge Koh would have

8     reviewed.

9          So you -- clearly did send it back to you for

10    reconsideration of whether or not there were any remaining

11    privilege objections.  She actually uses word, "any remaining."

12    So I disagree with Apple's assertion that she somehow blew past

13    all the waiver arguments, but -- so the Court needs to make

14    that determination in the first instance, and then if, in fact,

15    there is no basis, you know, what does that mean?  What are the

16    implications of that?

17         **THE COURT:**  All right, I think I have your position,

18    Mr. Zeller.  Thank you.

19         **MR. ZELLER:**  Thank you.

20         **THE COURT:**  Mr. Koppelman, you want to offer a brief

21    rebuttal?

22         **MR. KOPPELMAN:**  Sure.  Thank you, your Honor.

23         Judge Koh did not blow past the waiver arguments.

24    There's a footnote that specifically finds that the arguments

25    were properly preserved.  That wasn't blown past.  That's

1    already been decided.  They feel inclined to still raise all

2    these same waiver arguments.

3            The inconsistency is in Samsung saying, in their

4    brief, they're emphatic, the order -- the sanctions order is

5    done and final, therefore not vital, and then in the same

6    breath they say, but we need to revisit it and completely redo

7    and lower the number, and do all these things that we never

8    assigned error to.  That is completely inconsistent.  They

9    never --

10           **THE COURT:**  So what you're saying, then, is the

11   outcome here is perhaps a more modest one, simply an order

12   ruling on the sufficiency of the privilege claims with respect

13   to the documents at issue; the order awarding sanctions would

14   remain in place.

15           Where does this go, though, in your world, in the

16   world that you want me to go to?  In other words, let's assume

17   I order these documents produced and that issue gets resolved

18   and eventually the documents are turned over to you.  Where

19   does that leave us?

20           **MR. KOPPELMAN:**  Well, at least one outcome is Nokia is

21   satisfied with your Honor's review of them and agrees with the

22   conclusions you made on that.

23           **THE COURT:**  That's certainly one outcome I would --

24           **MR. KOPPELMAN:**  That's one outcome.

25           **THE COURT:**  Well, but I take it that you would believe

1   that in that scenario, if you were not satisfied that the

2   documents were properly considered in determining the type of

3   sanctions, you would what, seek renewed consideration?

4          **MR. KOPPELMAN:**  We would come back to you and seek

5   leave for some additional relief that would be tailored to what

6   we find in the documents, if anything.  If we find something in

7   those documents that needs to be addressed, we'd raise it with

8   your Honor and propose a way to address it, which may require a

9   deposition to clarify certain things.  It may require us at

10   that time requesting revisiting of the sanctions order, but

11   it's not proper for Samsung to ask for revisiting of it now

12   because they didn't assign error to it at the appropriate time,

13   which is ironic, because their brief is replete with waiver

14   arguments how we didn't properly preserve, didn't properly

15   preserve, and they clearly didn't preserve that.

16          Saying -- objecting to the amount and in their appeal

17   clearly limiting it to only the amount, and then saying that

18   that somehow opens the door to say the entire basis needs to be

19   revisited and reworked, that is not what *Mohawk* is about.  They

20   didn't properly preserve it and they can't revisit it, and

21   they're inviting error by the Court to request that now.

22          **THE COURT:**  All right.  Thank you very much,

23   Mr. Koppelman.

24          **MR. KOPPELMAN:**  Thank you.

25          **THE COURT:**  Mr. Selwyn?

1          **MR. SELWYN:**  Thank you, your Honor.  Three points.

2          First, the Court is free to rely on information

3     learned during *in camera* inspection, whether that information

4     is privileged or not.  In the *Fresh v. Green Transportation* and

5     the *Facebook v. Power Ventures* cases, which we've cited in our

6     brief, the Court awarded fees based at least in part on an *in*

7     *camera* inspection of privileged documents, and Samsung cites no

8     case in its brief to the contrary.

9          The *Mohawk* case that Mr. Zeller just referenced is not

10    on point at all.  That case does not suggest that the Court

11    cannot rely on privileged communications for any purpose.  What

12    that case dealt with was the appealability of disclosure orders

13    that were adverse to the attorney-client privilege under the

14    collateral order doctrine --

15          **THE COURT:**  Right.

16          **MR. SELWYN:**  -- and how courts can remedy the improper

17    disclosure of privileged communications at trial.  It dealt

18    with the timing of how you appeal a finding that you're unhappy

19    with, with respect to privilege.  It didn't deal at all with

20    the issue of whether a court may or may not rely on privileged

21    communications for any purpose.  That's point one.

22          Point two, Mr. Zeller says that Apple is talking out

23    of both sides of its mouth; before it was complaining that the

24    declarations didn't say enough to substantiate privilege and

25    now we're saying -- well, actually, they waived privilege.

1      There's nothing legally or analytically inconsistent
2  between those two points.  Although the declarations don't
3  disclose sufficient information to substantiate Samsung's
4  privilege claim or to allow Apple to assess that privilege
5  claim, Samsung's denials of what the communications -- what the
6  communications say do entail a waiver of privilege.  That's
7  what the *Hawkins* and *Pinho* cases say.  There's just nothing
8  inconsistent between those two positions.
9      Third point, on the declarations.  Samsung's brief
10 does not say that the declarations substantiate the claim of
11 privilege for anything other than tab 6 and, you know, when you
12 look -- when you go back and look at some of the documents,
13 while they're completely blacked out, you know, here's one that
14 they've blacked out, is an e-mail from Apple's counsel to
15 Samsung, it's really hard for me to figure out what the basis
16 of a privilege claim would be there.  If you look back at their
17 privilege log, it has the names of Apple's counsel, sender and
18 the recipient, and it claims privilege.
19     Your Honor found that to be insufficient before.
20 Nothing has changed.  It's insufficient now.  Thank you.
21     **THE COURT:**  Thank you very much, Mr. Selwyn.
22     Mr. Zeller, any last word?
23     **MR. ZELLER:**  Yes, your Honor, since there were a
24 couple of new points --
25     **THE COURT:**  Sure.

1          **MR. ZELLER:** -- that they made, just very briefly.

2     They're conflating different log entries.  The communications

3     that involved Apple and Samsung, the reason why those were

4     redacted was because they contained third party licensing

5     information Nokia was not allowed to have, and I won't recite

6     the lengthy history.  The Court may recall that there were

7     certain licensing terms with third parties that Nokia was not

8     entitled to see.  We asked Apple for information, --

9          **THE COURT:** I remember it well.

10         **MR. ZELLER:** -- Apple never gave it, for us to share

11    that information.  You know, and of course, the Court is aware

12    that a lot of these documents, too, that Nokia is asking for

13    relate to Ericsson and Sharp and Phillips and a bunch of third

14    parties that they have no right to see that information.

15         And I mean, just even in the first instance, even

16    apart from the privilege objections and everything else, they

17    have no right to see that.  It would violate other protective

18    orders.  We raised that issue repeatedly, and they never came

19    to the Court to ask for those objections to be overruled.

20         So from our perspective, that's way too late now for

21    them to come in and say, blow past all those other objections

22    and give us those documents.

23         Then one other point, briefly.  First of all, it's not

24    correct that we had denials of what the communications, the

25    privileged communications say.  What we were talking -- and the

1    Court can see, in every instance the context is, we're denying

2    that we did anything wrong.  To the extent that we're talking

3    about particularized documents at all, the reason why is that

4    the Court will recall, and these are in the declarations, Apple

5    accused -- claimed crime fraud exception.  We were responding

6    to the crime fraud allegations that were being made by Apple.

7         So a denial in that context is, again, just a denial,

8    and in fact, it's kind of a weird metaphysical thing where

9    they're basically saying, because you denied that this

10   occurred, we're entitled to see any documents that relate to

11   it.  But there's no -- if it's privileged, you can't do that.

12        That would -- just because a document is relevant to

13   assertions that we have made, whether it's lack of intent or

14   lack of intentionality, that does not answer the question of --

15        **THE COURT:**  All right, that would put you essentially

16   in the position of choosing between either admitting or waving

17   your privilege.

18        **MR. ZELLER:**  Right, and that clearly is not the law,

19   either.  And then you can see that that's kind of rhetorically

20   how they tried to set this up, and in fact, Nokia even said

21   that explicitly, which is basically, well, you had a choice at

22   that point:  Either, you know, substantiate the privilege or,

23   you know, or basically just don't deny our allegations.

24        And the Court can see that that's not the -- that's

25   not the case that courts put litigants to.  Never has been, and

1 | it doesn't make any sense to say that.

2 |      And in fact, *Bidaker*, the *en banc* Ninth Circuit

3 | decision, makes it perfectly clear that that kind of choice is

4 | no choice at all, because they have actually kind of raised the

5 | same point about that *habeas* petitioner saying, well, if you're

6 | going to put inadequacy of counsel at issue, there must be a

7 | waiver, and then Judge Kozinski writing for the *en banc* panel

8 | said no, of course not.

9 |      **THE COURT:**  Right.

10 |      **MR. ZELLER:**  I mean, obviously, he has a

11 | constitutional right to raise that.  And so that can't be the

12 | Hobson's choice that litigants are put to and it's not the

13 | Hobson's choice that exists here either for Samsung.

14 |      **THE COURT:**  All right, thank you very much.

15 |      **MR. ZELLER:**  Thank you.

16 |      **THE COURT:**  I'll take this matter under submission.

17 | You'll get my latest chapter on this as soon as I can get one

18 | out.  I wish you all a good day.  Thank you.

19 |      **MR. KOPPELMAN:**  Thank you, your Honor.

20 |      **MR. SELWYN:**  Thank you, your Honor.

21 |      **MR. ZELLER:**  Thank you, your Honor.

22 |      <u>10:56 a.m.</u>

23 |      ---o0o---

24 |

25 |

1

2

3            **CERTIFICATE OF TRANSCRIBER**

4

5            I, Leo Mankiewicz, certify that the foregoing is a

6    true and correct transcript, to the best of my ability, of the

7    above pages of the official electronic sound recording provided

8    to me by the U.S. District Court, Northern District of

9    California, of the proceedings taken on the date and time

10   previously stated in the above matter.

11           I further certify that I am neither counsel for,

12   related to, nor employed by any of the parties to the action in

13   which this hearing was taken; and, further, that I am not

14   financially nor otherwise interested in the outcome of the

15   action.

16

17   _____ 08/11/2015

18           Signature of Transcriber        Date

19

20

21

22

23

24

25