1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Cal. Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
3   San Francisco, California 94111
    Telephone: (415) 875-6600
4   Facsimile: (415) 875-6700

5   Kathleen M. Sullivan (Cal. Bar No. 242261)
    kathleensullivan@quinnemanuel.com
6   Kevin P.B. Johnson (Cal. Bar No. 177129)
    kevinjohnson@quinnemanuel.com
7   Victoria F. Maroulis (Cal. Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
8   555 Twin Dolphin Drive 5th Floor
    Redwood Shores, California 94065
9   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100
10

    William C. Price (Cal. Bar No. 108542)
11  williamprice@quinnemanuel.com
    Michael T. Zeller (Cal. Bar No. 196417)
12  michaelzeller@quinnemanuel.com
    865 S. Figueroa St., 10th Floor
13  Los Angeles, California 90017
    Telephone: (213) 443-3000
14  Facsimile: (213) 443-3100

15  Attorneys for SAMSUNG ELECTRONICS
    CO., LTD., SAMSUNG ELECTRONICS
16  AMERICA, INC. and SAMSUNG
    TELECOMMUNICATIONS AMERICA, LLC
17

18  UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19

20  APPLE INC., a California corporation,           CASE NO. 11-cv-01846-LHK

21              Plaintiff,                          **SAMSUNG'S NOTICE OF MOTION
                                                    AND MOTION FOR ENTRY OF**
22          vs.                                     **JUDGMENT OF INVALIDITY ON THE
                                                    '915 PATENT AND TO STAY**
23  SAMSUNG ELECTRONICS CO., LTD., a              **FURTHER PROCEEDINGS IN LIGHT
    Korean business entity; SAMSUNG                OF THE PTAB'S FINAL DECISION**
24  ELECTRONICS AMERICA, INC., a New             **INVALIDATING THE '915 PATENT**
    York corporation; SAMSUNG
25  TELECOMMUNICATIONS AMERICA,                    Date:    To be set by Court
    LLC, a Delaware limited liability company,     Time:    1:30 p.m.
26                                                 Place:   Courtroom 8, 4th Floor
                Defendants.                         Judge:   Hon. Lucy H. Koh
27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ......................................................................................................... 2

    A.    The District Court And Federal Circuit Proceedings ................................. 2

    B.    The United States Patent And Trademark Office Proceedings ................... 3

III.  THE COURT SHOULD ENTER JUDGMENT OF INVALIDITY OF THE '915 PATENT AND VACATE LIABILITY AND DAMAGES ON PRODUCTS FOR WHICH '915 INFRINGEMENT DAMAGES WERE AWARDED ................... 5

    A.    Judgment Of Invalidity Is Required Based On Collateral Estoppel......................... 5

        1.    Final PTO/PTAB Invalidity Decisions Are Entitled To Collateral Estoppel Effect ..................................................................... 5

        2.    The PTAB's Invalidity Ruling Satisfies Each Element Of Collateral Estoppel .............................................................................. 7

        3.    Collateral Estoppel May Be Raised At Any Stage Of The Proceedings ....................................................................................... 11

    B.    The Court Should Vacate The Judgment Of Infringement Of The '915 Patent And The Damages Awards For All Products On Which '915 Infringement Damages Were Awarded ..................................................... 12

IV.   ALTERNATIVELY, THE COURT SHOULD STAY FURTHER PROCEEDINGS PENDING ANY APPEAL OF THE PTAB'S FINAL DECISION INVALIDATING THE '915 PATENT ..................................................................... 13

    A.    The Orderly Administration Of Justice Warrants A Stay ........................ 14

        1.    A Stay Will Avoid Inconsistent Judgments Across Fora ........................... 14

        2.    A Stay Will Avoid Inconsistent Judgments Within This Case ................... 15

        3.    A Stay Will Avoid A Waste Of Resources ................................................. 15

    B.    A Stay Is Warranted Based On The Stage Of Both Proceedings............................ 16

    C.    A Stay Will Prevent Hardship And Inequity To Samsung...................................... 18

    D.    A Stay Will Not Harm Apple .................................................................... 18

V.    CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

## Cases

*AbbVie Deutschland GmbH &Co. v. Janssen Biotech, Inc.*,
759 F.3d 1285 (Fed. Cir. 2014)............................................................................................5, 9

*ASCII Corp. v. STD Entm't USA*,
844 F.Supp. 1378 (N.D. Cal. 1994) ..........................................................................................13

*B&B Hardware, Inc. v. Hargis Industries, Inc.*,
135 S. Ct. 1293 (2015) .......................................................................................................6, 7, 10

*Bausch & Lomb Inc. v. Alcon Labs., Inc.*,
914 F. Supp. 951 (W.D.N.Y. 1996) ..........................................................................................17

*Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*,
402 U.S. 313 (1971) .....................................................................................................................5

*Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*,
No. CIV A03-CV2223ABJBNB, 2006 WL 1897165 (D. Colo. July 11, 2006).......................18

*Brown v. Shimano Am. Corp.*,
No. CV 88-6565 WJR (BX), 1991 WL 133586 (C.D. Cal. Jan. 29, 1991)...............................18

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)...............................................................................................13, 18

*Cardenas v. AmeriCredit Fin. Servs.*,
No. C 09-04978 SBA, 2011 U.S. Dist. LEXIS 29105 (N.D. Cal. Mar. 7, 2011) ....................15

*Coho Licensing LLC v. Glam Media*,
No. C 14-01576 JSW, 2014 WL 4681699 (N.D. Cal. Sept. 17, 2014) .....................................14

*CollegeNET, Inc. v. Applyyourself, Inc.*,
2008 WL 4793683 (D. Or. Oct. 28, 2008) ................................................................................8

*Dana Corp. v. NOK, Inc.*,
882 F.2d 505 (Fed. Cir. 1989) ..................................................................................................10

*Delphix Corp. v. Actifio, Inc.*,
No. 13-CV-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014) ...........................13, 14

*Deposit Bank v. Board of Councilmen of City of Frankfort*,
191 U.S. 499 (1903) ....................................................................................................................7

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
70 F. Supp. 3d 808 (E.D. Tex. 2014) ..........................................................................................7

*e.Digital Corp. v. Futurewei Techs., Inc.*,
772 F.3d 723 (Fed. Cir. 2014).....................................................................................................7

*ePlus, Inc. v. Lawson Software, Inc.,*
  760 F.3d 1350 (Fed. Cir. 2014) ..................................................................................15

*ePlus, Inc. v. Lawson Software, Inc.,*
  790 F.3d 1307, 1309 (Fed. Cir. 2015) ........................................................................18

*Ethicon, Inc. v. Quigg,*
  849 F.2d 1422 (Fed. Cir. 1988) ..................................................................................13

*Everything For Love.com, Inc. v. Tender Loving Things, Inc.,*
  No. CIV 02-2605-PHX-EHC, 2006 WL 2091706 (D. Ariz. Jul. 21, 2006)...............17

*Evolutionary Intelligence, LLC v. Apple, Inc.,*
  No. C 13-04201 WHA, 2014 WL 93954 (N.D. Cal. Jan. 9, 2014)............................14

*Flexiteek Americas, Inc. v. PlasTEAK, Inc.,*
  No. 08-60996-CIV, 2010 WL 2976859 (S.D. Fla. July 20, 2010)........................17, 18

*Fresenius USA, Inc. v. Baxter International, Inc.,*
  721 F.3d 1330 (Fed. Cir. 2013) .............................................................................11, 15

*Galderma Labs Inc. v. Amneal Pharms., LLC,*
  921 F. Supp. 2d 278 (D. Del. 2012) ..............................................................................8

*Hydranautics v. FilmTec Corp.,*
  204 F.3d 880 (9th Cir. 2000).........................................................................................7

*JuxtaComm-Texas Software LLC v. Lanier Parking Sys. of Va., Inc.,*
  944 F. Supp. 2d 469 (E.D. Va. 2013) ............................................................................7

*Juxtacomm-Texas Software, LLC v. Lanier Parking Sys. of Va., Inc.,*
  2011 WL 3322554 (E.D. Va. Aug. 2, 2011) ...........................................................14, 16

*In re Katz Interactive Call Processing Patent Litig.,*
  2013 WL 3223382 (C.D. Cal. June 12, 2013)..............................................................6, 9

*Kremer v. Chem. Const. Corp.,*
  456 U.S. 461 (1982) ....................................................................................................10

*Landis v. North American Co.,*
  299 U.S. 248 (1936) ................................................................................................13, 16

*Leyva v. Certified Grocers of Cal., Ltd.,*
  593 F.2d 857 (9th Cir. 1979).......................................................................................13

*Mendenhall v. Barber-Greene Co.,*
  26 F.3d 1573 (Fed. Cir. 1994) ..................................................................................5, 11

*Montana v. United States,*
  440 U.S. 147 (1979) ....................................................................................................10

*N. River Ins. Co. v. Leffingwell Ag Sales Co.,*
  2011 U.S. Dist. LEXIS 8208 (E.D. Cal. Jan. 27, 2011) ...............................................18

*Nanometrics Inc. v. Nova Measuring Instruments, Ltd.*,
  No. C 06-2252 SBA, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) ..........................................18

*Network Appliance, Inc. v. Sun Microsystems Inc.*,
  No. C-07-06053 EDL, 2010 WL 545855 (N.D. Cal. Feb. 11, 2010)......................................14

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
  170 F.3d 1373 (Fed. Cir. 1999) ..............................................................................5, 7, 8

*Ruyle v. Continental Oil Co.*,
  44 F.3d 837 (10th Cir. 1994)..............................................................................................9

*SSIH Equipment S.A. v. U.S. Intern. Trade Com'n*,
  718 F.2d 365 (Fed. Cir. 1983) .............................................................................................7

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
  996 F.2d 1236 (Fed. Cir. 1993) .................................................................................16, 17

*Tan v. Integrated Silicon Solutions, Inc.*,
  2008 WL 2340217 (N.D. Cal. June 5, 2008) ................................................................6, 9

*Thompson-Hayward Chemical Co. v. Rohm and Haas Co.*,
  745 F.2d 27 (Fed. Cir. 1984) .....................................................................................5, 10

*Tripati v. Henman*,
  857 F.2d 1366 (9th Cir. 1988) ...........................................................................................8

*Ultratec, Inc. v. CaptionCall, LLC*,
  No. 2015-1694, 2015 WL 4528272 (Fed. Cir. June 30, 2015) .....................................17

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
  No. 13-CV-346-BBC, 2015 WL 2248437 (W.D. Wis. May 13, 2015) ......................17

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ..................................................................................12, 16

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
  No. CV-01-544-HU, 2001 WL 34046241 (D. Or. Sept. 14, 2001).............................13

*Versata Software Inc. v. Callidus Software, Inc.*,
  771 F.3d 1368 (Fed. Cir. 2014) .........................................................................................16

## **Statutes**

35 U.S.C. § 102(e)....................................................................................................................3

35 U.S.C. § 103(a)...................................................................................................................3

35 U.S.C. § 141 ........................................................................................................................4

35 U.S.C. § 141(b) ..................................................................................................................9

35 U.S.C. § 146 ........................................................................................................................9

35 U.S.C. §§ 301-307.............................................................................................................6

## <u>Other Authorities</u>

18 James Wm. Moore, *Moore's Federal Practice* § 131.30[2] ...........................................8

Restatement (Second) of Judgments § 13 (1982).........................................................8, 9

Restatement (Second) of Judgments § 83(1)....................................................................6

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2015, or a date to be set by the Court, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung") shall and hereby do move the Court for an order entering judgment of invalidity of claim 8 of U.S. Patent No. 7,844,915 ("'915 patent") based on the Patent Trial and Appeal Board's ("PTAB") final decision that such claim is invalid as anticipated by the Hillis reference and obvious in view of the Nomura and Rubine references, and vacating all liability and damages judgments related thereto in light of such invalidation.

Alternatively, Samsung moves the Court for an order staying all proceedings, including any entry of judgment, based on the PTAB's finding of invalidity of the '915 patent.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

In December 2014, the PTAB issued a final decision finding that all claims of Apple's '915 patent are invalid, including claim 8—the claim tried in this case.    This final invalidity decision has collateral estoppel effect in this action now, and requires this Court to vacate all liability findings and damages awards relating to the '915 patent.    Apple can appeal the PTAB's invalidity determination to the Federal Circuit, and its petition for rehearing before the PTAB is pending, but the possibility (or pendency) of such appellate or post-decision proceedings does not undermine the application of collateral estoppel.    To the contrary, recent Supreme Court authority holds that final agency decisions like those of the PTAB are entitled to the same collateral estoppel effect as a final judgment of a district court, which undoubtedly would be accorded preclusive effect while post-judgment proceedings are ongoing.    Thus, collateral estoppel requires the entry of judgment for Samsung on the '915 patent, and vacatur of all damages judgments relating thereto.

Alternatively, in light of the PTAB's invalidation of the '915 patent, the Court at a minimum should stay further proceedings pending Federal Circuit resolution of any appeal by

Apple of the PTAB decision or expiration of time for such an appeal.    Absent a stay, the Court's time and resources would be wasted by undertaking extensive further damages proceedings in light of the Federal Circuit's partial reversal while Apple seeks to overturn the PTAB's final invalidation of the '915 patent.    The Federal Circuit has recognized that it is "manifestly *unjust*" to allow a plaintiff to recover on a patent that has been invalidated in separate proceedings. *Mendenhall v. Barber-Greene Co.,* 26 F.3d 1573, 1583 (Fed. Cir. 1994) (italics in original), *as corrected on reh'g* (Sept. 14, 1994).   To avoid such an injustice, the Court should at a minimum issue a stay.

Apple thus errs in its letter demand (Dkt. 3264) that the Court enter partial final judgment now, for that proposed judgment would include damages on products for which '915 infringement damages have been awarded after the agency that issued that patent has finally invalidated it. Any entry of partial final judgment now would also risk inconsistent judgments by this Court, with '915 infringement damages awarded on some products now but rejected on other similarly-situated products in later proceedings after ultimate cancellation of the '915 patent.[1]   The Court should stay all proceedings, including as to any entry of any partial final judgment.

For these reasons, Samsung respectfully requests that the Court grant judgment of invalidity to Samsung on claim 8 of the '915 patent and vacate all damages judgments relating thereto, or at a minimum stay further proceedings.

## II.    BACKGROUND

### A.    The District Court And Federal Circuit Proceedings

Apple filed its complaint against Samsung in April 2011, and the case went to trial in August 2012.    The jury found that multiple Samsung products diluted Apple's registered and unregistered trade dress, infringed three Apple design patents, and infringed three Apple utility patents, including claim 8 of the '915 patent.    During trial, Samsung argued that the Nomura reference anticipated claim 8 of the '915 patent.    The jury disagreed.    Following trial, Samsung

---

[1]    Apple's request for entry of partial final judgment is misguided for other reasons as well, including because the requested judgment would violate Rule 54(b) of the Federal Rules of Civil Procedure, as Samsung will demonstrate in a separate filing setting forth its objections to Apple's proposed form of judgment.

moved for judgment as a matter of law of invalidity of the '915 patent based on the Nomura reference.   The Court denied Samsung's motion on January 29, 2013.   Dkt. 2220.

On March 1, 2013, the Court issued an order granting a partial retrial on damages issues, including damages issues relating to the '915 patent.   This trial focused on a subset of products and patents based on corrected dates on which Samsung first had notice of those patents.   The second trial took place in November 2013, and the jury awarded new damages amounts based on corrected notice dates.   In March 2014, the Court entered a final judgment in favor of Apple.

Samsung appealed several findings to the Federal Circuit, including the finding that Nomura did not anticipate claim 8 of the '915 patent.   On May 18, 2015, the Federal Circuit affirmed the jury's finding that claim 8 of the '915 patent was not anticipated by Nomura.

**B.     The United States Patent And Trademark Office Proceedings**

On May 30, 2012, an anonymous third party requested *ex parte* reexamination of the '915 patent.   (RJN Ex. 1.)[2]   The PTO found that a substantial question of patentability existed and reexamination proceedings commenced.   (RJN Ex. 2.)   On December 19, 2012, the PTO examiner issued a first office action rejecting all 21 claims of the '915 patent for multiple reasons. (RJN Ex. 3.)   The examiner rejected claim 8 under 35 U.S.C. § 102(e) as anticipated by Hillis, and also under 35 U.S.C. § 103(a) as unpatentable over Nomura in view of Rubine.   (*Id.* at 3, 6-9, 21-24.)   Samsung did not previously raise these arguments in this action.

On March 14, 2013, six representatives from Apple including one of the inventors, an expert witness, prosecution counsel, and trial counsel attended an in-person interview with the examiner.   (RJN Ex. 4.)   All claims of the '915 patent, as well as the Nomura and Hillis reference, were discussed during the interview.   (*Id.*; RJN Ex. 5 at 2.)   Apple then filed its response to the first office action, arguing that all claims were patentable.   (RJN Ex. 5.)   Apple submitted a declaration from its technical expert Dr. Jason Nieh, an Associate Professor of Computer Science at Columbia University, in support of its arguments.   (RJN Ex. 6.)

---

[2]   "RJN Ex. __" refers to the exhibits attached to Samsung's Request for Judicial Notice of PTO and PTAB Documents Relating to Reexaminations of '915 and D'677 Patents, filed concurrently herewith.

On July 26, 2013, the PTO examiner issued a final rejection of all claims of the '915 patent as anticipated or obvious, again finding claim 8 to be anticipated by Hillis and obvious over Nomura in view of Rubine.   (RJN Ex. 7 at 23-24.)   On October 28, 2013, Apple filed its response to the examiner's final rejection.   (RJN Ex. 8.)   On November 20, 2013, the examiner issued an advisory action, maintaining his position that claim 8 of the '915 patent is anticipated by Hillis and rendered obvious by the combination of Nomura and Rubine.   (RJN Ex. 9.)

On December 26, 2013, Apple filed a notice of appeal with the PTAB.   (RJN Ex. 10.)   On February 26, 2014, Apple filed its opening appeal brief (RJN Ex. 11); the examiner filed its answering brief on May 2, 2014 (RJN Ex. 12); and Apple filed a reply on July 2, 2014 (RJN Ex. 13).   Apple requested an oral hearing the same day, and the PTAB granted that request.   (RJN Ex. 14; RJN Ex. 15.)   The hearing took place in Washington, D.C. on November 19, 2014. (RJN Ex. 15.)   Apple sent five representatives to the hearing.   (RJN Ex. 16.)   Two of the Administrative Law Judges assigned to the appeal (ALJ Whitehead and ALJ Chung) attended the hearing in person.   (RJN Ex. 17 (Hearing Transcript) at 1.)   The third (ALJ Saadat) attended via videoconference.   (*Id.*)   On December 9, 2014, the PTAB issued its final decision on the appeal, affirming the rejection of all claims of the '915 patent.   (RJN Ex. 18 at 12.)

On February 9, 2015, Apple filed a request for rehearing.   (RJN Ex. 19.)   That request is pending, and will likely be decided soon.[3]   If the PTAB denies Apple's rehearing request, Apple's only recourse will be to appeal to the Federal Circuit.   35 U.S.C. § 141 ("A patent owner who is dissatisfied with the final decision in an appeal of a reexamination to the Patent Trial and Appeal Board under section 134(a) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.").

Separately, an *ex parte* reexamination request for the D618,677 patent ("D'677") was filed on May 31, 2013.   (RJN Ex. 20.)   On August 19, 2013, the PTO granted the request, finding a

_____

[3]   As of May 2015, there were five requests for rehearing for *ex parte* reexaminations pending before the PTAB.   (RJN Ex. 23.)   Of those five, four have been pending for less than six months and one has been pending between seven and thirteen months.   (*Id.*)   In addition, the number of rehearing requests has been rapidly declining over the past 9 months, which indicates that the PTAB is addressing rehearing requests expeditiously.   (*Id.*)

1  substantial new question of patentability affecting the D'677 patent.   (RJN Ex. 21.)   On August

2  5, 2015, the PTO examiner issued an Office Action stating four separate categories of rejection for

3  the claim of D'677.   (RJN Ex. 22 at 4-12.)   The first three of those rejections utilized multiple

4  configurations of primary and secondary references to create eight independent, alternative

5  obviousness combinations, none of which were previously resolved by this Court.   (*Id.*)   The

6  examiner also found that the D'677 patent was not entitled to a priority filing date of January 5,

7  2007 based on parent applications and instead could only claim its own filing date of November

8  18, 2008.   (*Id.* at 2.)   Apple was given two months to respond to the examiner's office action.

9  **III.    THE COURT SHOULD ENTER JUDGMENT OF INVALIDITY OF THE '915**
**PATENT AND VACATE LIABILITY AND DAMAGES ON PRODUCTS FOR**
10  **WHICH '915 INFRINGEMENT DAMAGES WERE AWARDED**

11        **A.      Judgment Of Invalidity Is Required Based On Collateral Estoppel**

12             **1.      Final PTO/PTAB Invalidity Decisions Are Entitled To Collateral**
**Estoppel Effect**

13        The law has long been clear that final decisions of federal courts invalidating a patent are

14  entitled to collateral estoppel effect in separate pending litigations.   The rule should be no

15  different for final invalidity decisions issued by the PTAB.   While the Federal Circuit has not

16  resolved this question one way or the other—it expressly left it open last year, *see AbbVie*

17  *Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1296-97 (Fed. Cir. 2014)

18  (suggesting, but declining to decide, "[w]hether a Board's interference decision that is on appeal

19  under § 141 can have collateral estoppel effect on issues raised in a co-pending litigation")—

20  recent Supreme Court authority holds that agency decisions are entitled to collateral estoppel

21  effect no less than decisions of federal courts.

22        The Supreme Court long ago established that once the claims of a patent are held invalid in

23  one lawsuit, defendants are entitled to the benefit of that invalidity decision in unrelated

24  infringement cases under principles of collateral estoppel.   *See Blonder–Tongue Labs., Inc. v.*

25  *Univ. of Ill. Found.*, 402 U.S. 313 (1971).   The Federal Circuit has applied this rule consistently

26  and without exception ever since, ruling that final judgments of patent invalidity are entitled to

27  preclusive effect in ongoing infringement litigations.   *See, e.g.*, *Pharmacia & Upjohn Co. v.*

28

1   *Mylan Pharms., Inc.*, 170 F.3d 1373, 1379-82 (Fed. Cir. 1999) (patent owner collaterally estopped

2   from asserting infringement claim in light of prior district court judgment of invalidity);

3   *Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1584 (Fed. Cir. 1994) (requiring vacatur of

4   judgment of patent infringement on same basis).    Indeed, the Federal Circuit has so ruled even

5   when invalidity had not previously been asserted as a defense.    *Thompson-Hayward Chem. Co. v.*

6   *Rohm and Haas Co.*, 745 F.2d 27, 34 (Fed. Cir. 1984) (applying collateral estoppel to invalidate

7   patent even where defendant previously "chose not to litigate validity").

8         There is no reason that the rule should be different for final PTAB invalidity decisions

9   issued following *ex parte* reexamination proceedings.    In fact, earlier this year the Supreme Court

10  held that a final decision by an administrative agency—in that case, the Trademark Trial and

11  Appeal Board (TTAB), which is the trademark analog to the PTAB—has collateral estoppel effect

12  in a district court action no less than a final decision of another federal court, "[s]o long as the

13  other ordinary elements of issue preclusion are met."    *B&B Hardware, Inc. v. Hargis Indus., Inc.*,

14  135 S.Ct. 1293, 1310 (2015).    In that case, the TTAB had ruled that a party's proposed trademark

15  could not be registered.    In holding that this ruling was preclusive in subsequent district court

16  litigation, the Supreme Court explained:

17        Both this Court's cases and the Restatement make clear that issue preclusion
          is not limited to those situations in which the same issue is before two *courts*.
18        Rather, where a single issue is before a court and an administrative agency,
          preclusion also often applies.    Indeed, this Court has explained that because
19        the principle of issue preclusion was so "well established" at common law, in
          those situations in which Congress has authorized agencies to resolve
20        disputes, "courts may take it as given that Congress has legislated with the
          expectation that the principle [of issue preclusion] will apply except when a
21        statutory purpose to the contrary is evident." … This reflects the Court's
          longstanding view that "'[w]hen an administrative agency is acting in a
22        judicial capacity and resolves disputed issues of fact properly before it which
          the parties have had an adequate opportunity to litigate, the courts have not
23        hesitated to apply res judicata to enforce repose.'"

24  *Id*. at 1303 (citations omitted) (emphasis in original).    The Court then held:    "So long as the

25  other ordinary elements of issue preclusion are met, when the usages adjudicated by the TTAB are

26  materially the same as those before the district court, issue preclusion should apply."    *Id.* at 1310.

27  The Restatement, cited with approval in *B&B Hardware*, similarly provides that "a valid and final

28  adjudicative determination by an administrative tribunal has the same effects under the rules of res

1    judicata, subject to the same exceptions and qualifications, as a judgment of a court."

2    Restatement (Second) of Judgments § 83(1) (1982).

3         Even before the Supreme Court's *B&B Hardware* decision, several district courts had

4    concluded that PTAB invalidity decisions following *ex parte* reexaminations were entitled to

5    collateral estoppel effect in district court actions.   *See, e.g.*, *In re Katz Interactive Call Processing*

6    *Patent Litig.*, 2013 WL 3223382, at *1-2 (C.D. Cal. June 12, 2013) (applying collateral estoppel to

7    PTAB's invalidity decision); *Tan v. Integrated Silicon Solutions, Inc.*, 2008 WL 2340217, at *3-4

8    (N.D. Cal. June 5, 2008) (same as to decision of Board of Patent Appeals and Interferences

9    (BPAI), which is the former name of the PTAB).   These decisions were decided correctly,

10   particularly in light of the procedural protections afforded to the patent-holder in *ex parte*

11   reexaminations.   Indeed, a final decision of patent invalidity on reexamination by the PTO—the

12   agency that grants patent rights in the first place, and that is authorized by statute to revoke them,

13   *see* 35 U.S.C §§ 301-307—should be afforded at least as much deference as an invalidity ruling of

14   a district court.

15              **2.      The PTAB's Invalidity Ruling Satisfies Each Element Of Collateral
                         Estoppel**

16

17        Under applicable Ninth Circuit law, collateral estoppel applies if: (1) the party against

     whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding;
18
     (2) an issue necessarily decided in the prior proceeding is identical to the one at issue in the later
19
     proceeding; and (3) the first proceeding ended with a final judgment on the merits.   *e.Digital*
20
     *Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723 (Fed. Cir. 2014) (citing *Hydranautics v. FilmTec*
21
     *Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)).   In addition, *B&B Hardware* explains that the
22
     procedural fairness and adequacy of the administrative proceedings should be considered.   135
23
     S.Ct. at 1309.   Each of these requirements is satisfied here.
24
          (1)      Apple was a party to the reexamination proceedings.   It thus cannot dispute that
25
     the privity requirement is met.
26
          (2)      The issue decided in the reexamination proceedings—that the '915 patent is invalid
27
     —is identical to the issue of whether that patent is invalid in this case.
28

1    (3)    The reexamination proceeding ended with a final judgment on the merits.

2   Although Apple may appeal the invalidity decision to the Federal Circuit, the Supreme Court long

3   ago recognized the well-established federal rule "that the pendency of an appeal has no effect on

4   the finality or binding effect of a trial court's holding."   *Pharmacia & Upjohn,* 170 F.3d at 1381

5   (citing *Deposit Bank v. Board of Councilmen of City of Frankfort,* 191 U.S. 499 (1903)).    And

6   applying this rule, the Federal Circuit and district courts have likewise repeatedly held that district

7   court invalidity decisions have collateral estoppel effect despite the pendency of appeals.   *See,*

8   *e.g.*, *Pharmacia & Upjohn,* 170 F.3d at 1379 (collateral estoppel applied to district court invalidity

9   determination notwithstanding potential for appeal to the Federal Circuit); *SSIH Equip. S.A. v.*

10  *U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983) (same, despite pendency of appeal);

11  *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex.

12  2014) (Bryson, J.) (same); *JuxtaComm-Texas Software, LLC v. Lanier Parking Sys. of Va., Inc.*,

13  944 F. Supp. 2d 469, 478 (E.D. Va. 2013) ("[D]espite JuxtaComm's argument that there is a

14  substantial risk that the *JuxtaComm II* judgment will be reversed, the pendency of the appeal does

15  not undermine the finality of the *JuxtaComm II* judgment."); *Galderma Labs Inc. v. Amneal*

16  *Pharm., LLC*, 921 F. Supp. 2d 278, 281 (D. Del. 2012) (same).

17    Nor does the pendency of Apple's petition for rehearing undermine collateral estoppel, for

18  it is equally well-established that such post-decision motions are no obstacle to the application of

19  estoppel.   *See, e.g., Pharmacia & Upjohn*, 170 F.3d at 1382 ("[T]he district court did not err in

20  applying collateral estoppel based on the judgment of invalidity and unenforceability …, despite

21  the fact that the motion for JMOL/new trial had not been resolved …, and despite the possibility

22  of a subsequent appeal of the [] judgment."); *Tripati v. Henman,* 857 F.2d 1366, 1367 (9th Cir.

23  1988) ("A pending Rule 59(e) motion similarly does not deprive a judgment of finality for res

24  judicata purposes."); *CollegeNET, Inc. v. Applyyourself, Inc.*, 2008 WL 4793683, at *3 (D. Or.

25  Oct. 28, 2008) ("Final judgment in the XAP case was filed on October 17, 2008.   This Judgment

26  is final for purposes of applying collateral estoppel, notwithstanding that plaintiff may file a

27  motion for judgment as a matter of law (JMOL) or an appeal."); Restatement (Second) of

28  Judgments § 13 cmt. f (1982) ("A judgment otherwise final for purposes of the law of res judicata

1   is not deprived of such finality by the fact that time still permits commencement of proceedings in

2   the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a

3   party has made such a motion render the judgment nonfinal.").   As a leading treatise explains,

4   "[t]here seems to be no compelling argument for treating such [post-trial] motions or possible

5   [post-trial] motions any differently than appeals.   Finality should attach for claim preclusion

6   purposes at the time of entry of judgment."   18 James Wm. Moore, *Moore's Federal Practice*

7   § 131.30[2] [c] [iv] (3d ed. 1998).

8          Nor is the rule any different when it comes to determinations by an administrative agency.

9   As the Restatement explains, "[a]n administrative adjudication becomes preclusive when it has

10   become final in accordance with the rules stated in §§ 13 and 14 [setting forth the ordinary rules of

11   finality of federal court decisions].   It is not necessary that the administrative adjudication have

12   been reviewed and affirmed by a court."   Restatement (Second) of Judgments § 83 cmt. A

13   (1982).   Several district courts have held that PTAB decisions are final for purposes of collateral

14   estoppel despite the possibility or pendency of an appeal.   *See In re Katz Interactive Call*

15   *Processing Patent Litig.*, 2013 WL 3223382, at *2 (C.D. Cal. June 12, 2013) (applying collateral

16   estoppel to PTAB decision notwithstanding possibility of appeal to Federal Circuit); *Tan v.*

17   *Integrated Silicon Solutions, Inc.*, 2008 WL 2340217, at *3-4 (N.D. Cal. June 5, 2008) (same,

18   while Federal Circuit appeal was pending).   And other courts apply collateral estoppel similarly

19   based on decisions made by other administrative agencies.   *See, e.g.*, *Ruyle v. Continental Oil*

20   *Co.*, 44 F.3d 837, 845-46 (10th Cir. 1994) (holding that agency decision was preclusive despite

21   pendency of appeal).

22          There is one exception to the rule that the pendency or possibility of an appeal does not

23   defeat collateral estoppel:   if the appeal would involve a full trial *de novo*, collateral estoppel may

24   not apply.   *See* Restatement (Second) of Judgments 13 cmt. f (1980) ("a judgment otherwise final

25   remains so despite the taking of an appeal unless what is called an appeal actually consists of a

26   trial de novo.").   Relying on this exception, the Federal Circuit previously rejected applying

27   collateral estoppel to PTAB *patent interference* decisions which are subject to a district court's *de*

28   *novo* review under 35 U.S.C. § *146*, explaining that a "Board decision that is reviewed under

§ 146 is not a 'binding final judgment'" because, with appeals under § 146, "a district court can make a *de novo* determination of facts upon the submission of new evidence."   *AbbVie*, 759 F.3d at 1296-97.   But the court made clear that its ruling did *not* apply to an appeal to the Federal Circuit under 35 U.S.C. § *141*:   "Unlike a § 146 action, a direct appeal under § 141 is based solely on the agency record and reviewed under the standard established by the Administrative Procedure Act and is therefore more akin to a traditional appeal from a district court decision." *Id.* at 1296.   In this case, Apple can appeal the PTAB's invalidity decision only under § 141 to the Federal Circuit, and not under § 146 to a district court.   *See* 35 U.S.C § 141(b) ("A patent owner who is dissatisfied with the final decision in an appeal of a reexamination to the Patent Trial and Appeal Board under section 134(b) may appeal the Board's decision only to the United States Court of Appeals for the Federal Circuit.").   Collateral estoppel therefore fully applies to the PTAB's final decision.

(4)   Apple also had a full and fair opportunity to litigate the validity issue in the PTO proceedings, and this factor identified in the *B&B Hardware* decision is thus satisfied as well.   In the context of administrative proceedings, the Supreme Court explained that "what a full and fair opportunity to litigate entails is the procedural requirements of due process."   *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 483 n. 24 (1982).   "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Id.* at 481 (quoting *Montana v. United States,* 440 U.S. 147, 164 n. 11 (1979)); *see also B&B Hardware*, 135 S.Ct. at 1309 ("Rather than focusing on whether procedural differences exist— they often will—the correct inquiry is whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair.") (citing *Montana*, 440 U.S. at 164 n. 11).   In *Kremer*, the Supreme Court found that the plaintiff had received adequate due process from the state agency that reviewed his charge of employment discrimination since he was entitled to an attorney, could submit exhibits and present testimony from witnesses, and had the opportunity for administrative and judicial review.   456 U.S. at 483-84.   The Supreme Court had "no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause."   *Id.* at 484.   In the reexamination proceedings, Apple

1  was represented by patent prosecution and trial counsel, was able to extensively brief the validity

2  issues and present evidence and expert declarations, had the opportunity for interviews with the

3  examiner, and had the opportunity for administrative review of the examiner's decision by the

4  PTAB.    There is no reason whatsoever to doubt the quality, extensiveness or fairness of the

5  PTO's reexamination procedures.

6  **3.    Collateral Estoppel May Be Raised At Any Stage Of The Proceedings**

7  Finally, there is no doubt that collateral estoppel properly may be raised at this time.    The

8  Federal Circuit has ruled repeatedly that a collateral determination of patent invalidity can "be

9  timely made at any stage of the affected proceedings," including for the first time on appeal.

10  *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507 (Fed. Cir. 1989) (reversing finding of infringement);

11  *Thompson-Hayward Chem. Co. v. Rohm & Haas Co.*, 745 F.2d 27, 32-33 (Fed. Cir. 1984)

12  (similar).    Similarly, collateral estoppel can be raised following a remand from a prior appeal.

13  In *Mendenhall*, for example, the patent owner asserted its patents in concurrent suits against two

14  alleged infringers, Cedarapids and Astec.    26 F.3d at 1576–77.    On appeal, the Federal Circuit

15  affirmed a verdict from the *Astec* court finding that the patents were not invalid, but remanded "for

16  determination of damages and other issues."    *Id.* at 1576.    While that case was on remand, the

17  district court in the *Cedarapids* suit invalidated the same patents, and the Federal Circuit

18  subsequently affirmed.    *Id.* at 1577.    The Federal Circuit then found in the *Astec* case that the

19  *Cedarapids* decision barred the patent owner from recovering for infringement and damages, even

20  though the judgment of validity in that case had been affirmed, because the patents were

21  invalidated before the judgment became completely final.    *Id.* at 1577-78.    *See also Fresenius*

22  *USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1333 (Fed. Cir. 2013) (requiring defense judgment

23  in light of PTO cancellation of patent despite having previously affirmed district court's finding

24  that patent was not invalid).

25  Final judgment has not been entered in this case, and further damages proceedings are

26  required for the '915 patent.    The Federal Circuit's mandate instructs the Court to undertake

27  "further proceedings necessitated by [its] decision to vacate the jury's verdicts on the unregistered

28  and registered trade dress claims," Slip. Op. at 33, and this will require further damages

1  proceedings on the '915 patent (absent the entry of judgment for Samsung) because four of those

2  products were found to infringe that patent.   *See* Dkt. 2271 at 9-10, 22 (finding damages awards

3  for Fascinate, Galaxy S 4G, Mesmerize, and Vibrant based on trade dress liability); *id*. at 19-20

4  (same products held to infringe '915 patent).   Moreover, supplemental damages and prejudgment

5  interest remains undetermined as to all products found to infringe the '915 patent.   Dkt. 2947 at

6  3.   Collateral estoppel thus may be raised at this time.

7       **B.     The Court Should Vacate The Judgment Of Infringement Of The '915 Patent
           And The Damages Awards For All Products On Which '915 Infringement**
8       **Damages Were Awarded**

9       Because the PTAB's final invalidation of the '915 patent has collateral estoppel effect, the

10  judgment of infringement by 21 Samsung products found to infringe the '915 patent should be

11  vacated.[4]   In addition, the award of damages should be vacated as to the 13 products found to

12  infringe the '915 patent for which '915 patent infringement damages were awarded.[5]   Apple

13  explicitly sought (and received) damages based on infringement of the '915 patent as to 12 of

14  these products.   *See* Dkt. 2947 at 4 (based on Apple's representations that "the jury adopted

15  Apple's proposed lost profits and reasonable royalty calculations").   And the Court previously

16  ruled that the damages award for the thirteenth, the Galaxy Tab 10.1 (WiFi), was based in part on

17  '915 patent infringement.   *See* Dkt. 2271 at 19-20 (listing the Galaxy Tab 10.1 (WiFi) among

18  products eligible for '915 patent damages) and 26 (upholding damages award on Galaxy Tab 10.1

19  (WiFi).)[6]   Apple did not appeal these rulings and, to the contrary, expressly stated on appeal that

20  it was not challenging this Court's adoption of Samsung's reverse-engineering of specific

21  damages amounts.   *See* July 28, 2014 Appellee's Brief at 21 n. 1.

22  _____

23  [4]    Those products are:   Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G,
     Fascinate, Galaxy Prevail, Galaxy S (i9000), Galaxy S 4G, Galaxy S II 2 (AT&T), Galaxy S II
24  (i9100), Galaxy S II (T-Mobile), Galaxy Tab, Galaxy Tab 10.1 (WiFi), Gem, Indulge, Infuse 4G,
     Mesmerize, Nexus S 4G, Transform, Vibrant.
25  [5]    They are:   Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail,
     Galaxy Tab, Galaxy Tab 10.1 (WiFi), Gem, Indulge, Infuse 4G, Nexus S 4G, Transform.
26  [6]    In the same order, the Court held that the damages for six other products found to infringe
     the '915 patent (Fascinate, Galaxy S 4G, Galaxy S II 2 (AT&T), Galaxy S II (T-Mobile),
27  Mesmerize, and Vibrant) were not based on '915 patent infringement.   *See* Dkt. 2271 at 18-26.
     No damages were awarded for two of the 21 products held to infringe the '915 patent (Galaxy S
28  (i9000) and Galaxy S II (i9100).   *Id*. at 9-10.

1       Moreover, the awards for each of these 13 products must be vacated in their entirety

2  because those awards were lump-sums, undifferentiated by patent.   *Verizon Servs. Corp. v.*

3  *Vonage Holdings Corp.,* 503 F.3d 1295, 1309-10 (Fed. Cir. 2007) (vacating damages in a multi-

4  patent case because "the jury rendered a single verdict on damages, without breaking down the

5  damages attributable to each patent").

6  **IV.    ALTERNATIVELY, THE COURT SHOULD STAY FURTHER PROCEEDINGS
         PENDING ANY APPEAL OF THE PTAB'S FINAL DECISION INVALIDATING
7         THE '915 PATENT**

8       This Court has broad, inherent power to stay proceedings pending the outcome of other

9  related actions.   In the event that the Court does not grant Samsung judgment of invalidity of the

10 '915 patent, the Court should exercise its power to stay further proceedings in this case pending

11 completion of the time period for any appeal of the PTAB invalidation of the '915 patent.   A stay

12 would simplify the issues that remain to be determined, prevent the waste of judicial and party

13 resources, avoid inconsistent results both within this case and across fora, and avoid substantial

14 prejudice to Samsung with no corresponding harm to Apple.[7]

15      "[T]he power to stay proceedings is incidental to the power inherent in every court to

16 control disposition of the causes on its docket with economy of time and effort for itself, for

17 counsel, and for litigants."   *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).   Inherent in that

18 discretion is the power to stay proceedings pending the outcome of a related action.   *See CMAX,*

19 *Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).   "This rule applies whether the separate

20 proceedings are judicial, administrative, or arbitral in character . . . ."   *Leyva v. Certified Grocers*

21 *of Cal., Ltd*., 593 F.2d 857, 863 (9th Cir. 1979).   The Federal Circuit recognizes the power of

22 district courts to stay proceedings "pending conclusion of a PTO reexamination."   *Ethicon, Inc.*

23 *v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis*).

24 _____

25      [7]   The appropriateness of a stay for all the below-detailed reasons is further underscored by
   the pendency of the D'677 reexamination, which has resulted in a First Office Action rejecting the
26 claim as invalid in light of numerous obviousness combinations.   Although the D'677 proceeding
   is not as advanced as the '915 proceeding, that proceeding also may well require vacatur of
27 damages awarded in this case prior to final judgment.   If a stay issues pending resolution of the
   final appeal of the '915 patent, that stay can be reassessed as to the D'677 patent based on the
28 then-current stage of PTO proceedings.

1    In the Ninth Circuit, "the competing interests which will be affected by the granting or

2  refusal to grant a stay must be weighed" in deciding whether to issue a stay.   *CMAX*, 300 F.2d

3  at 268.   "Among these competing interests are [1] the possible damage which may result from the

4  granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go

5  forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating

6  of issues, proof, and questions of law which could be expected to result from a stay."   *Id.* (citing

7  *Landis*, 299 U.S. at 254-55); *see also Versa Corp. v. Ag-Bag Int'l Ltd.*, No. CV-01-544-HU, 2001

8  WL 34046241, at *1 (D. Or. Sept. 14, 2001) (relying on *CMAX* factors in considering stay

9  pending PTO interference proceeding).   Courts considering stays pending PTO reexaminations

10  typically consider the stage of the respective proceedings as well.   *E.g.*, *Network Appliance, Inc.*

11  *v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 545855, at *2-3 (N.D. Cal. Feb. 11,

12  2010); *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL 6068407, at *2 (N.D. Cal.

13  Nov. 13, 2014).   "[T]here is a liberal policy in favor of granting motions to stay proceedings

14  pending the outcome of reexamination or reissuance proceedings."   *ASCII Corp. v. STD Entm't*

15  *USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994).

16    **A.    The Orderly Administration Of Justice Warrants A Stay**

17        **1.    A Stay Will Avoid Inconsistent Judgments Across Fora**

18    A stay is needed, first, to avoid a severe risk of inconsistent judgments.   Apple is seeking

19  entry of partial final judgment with respect to products found to infringe the '915 patent and on

20  which '915 infringement damages have been awarded.    If entered now, after the PTO has issued

21  a final decision invalidating that patent, such a judgment (which is not proper under Rule 54(b) in

22  any event) would create a stark disparity between the judgments of this Court and the PTO.

23    Even if the PTAB's final decision of invalidity were not entitled to immediate preclusive

24  effect (which it is), entry of a partial final judgment of liability and damages would display a lack

25  of respect for the agency tasked by Congress with creating and dissolving patent rights.   The

26  "cloud of invalidity" that covers the '915 patent precludes a final judgment of liability and

27  damages, *Juxtacomm-Texas Software, LLC v. Lanier Parking Sys. of Va., Inc.*, No. 3:11–CV–299,

28  2011 WL 3322554, at *2 (E.D. Va. Aug. 2, 2011) (granting stay following Final Office Action of

1  invalidity), and the need to avoid "inconsistent results" thus fully supports a stay.   *See, e.g.*,

2  *Delphix*, 2014 WL 6068407, at *2; *Coho Licensing LLC v. Glam Media*, No. C 14-01576 JSW,

3  2014 WL 4681699, at *2 (N.D. Cal. Sept. 17, 2014); *Evolutionary Intelligence, LLC v. Apple,*

4  *Inc.*, No. C 13-04201 WHA, 2014 WL 93954, at *2-3 (N.D. Cal. Jan. 9, 2014) (granting Apple's

5  own motion to stay proceedings pending reexamination in part to "minimize the risk of

6  inconsistent results" across fora).

7              **2.    A Stay Will Avoid Inconsistent Judgments Within This Case**

8              Absent a stay, there is a substantial risk of *internally* inconsistent judgments as well.

9  Four of the five products found to dilute Apple's trade dresses, as to which the prior damages

10  awards were vacated on appeal, were also found to infringe the '915 patent:    the Fascinate,

11  Galaxy S 4G, Mesmerize, and Vibrant.   *See* Dkt. 2271 at 19-20.   Unless judgment for Samsung

12  is entered, further proceedings will be needed to determine damages for these products, including

13  for supposed '915 patent infringement.    And even if the PTAB's final decision were not

14  sufficiently final to be preclusive now (which it is), it will become completely final and preclusive

15  in short order, entitling Samsung to judgment in this case.   *See supra*; *see also Fresenius*, 721

16  F.3d at 1344-46 (holding that PTO cancellation renders patent void *ab initio*, requiring a defense

17  judgment in ongoing infringement proceedings); *ePlus, Inc. v. Lawson Software, Inc.*, 760 F.3d

18  1350, 1355-1360 (Fed. Cir. 2014) (similar).

19              But if the Court has, by that point, granted Apple's demand that it enter a partial final

20  judgment as to some products found to infringe the '915 patent, the Court's varying judgments

21  will be internally inconsistent.   One judgment will find the '915 patent valid and infringed (as to

22  some accused products), and the next will find the same patent invalid and not infringed (as to

23  other similarly-situated products).    A stay will avoid these inconsistent results.

24              **3.    A Stay Will Avoid A Waste Of Resources**

25              A stay will also avoid wasting judicial and party resources by confirming whether the

26  Court should remove the '915 patent from the damages equation in re-determining damages for

27  the products erroneously found to dilute trade dress.    The prior jury verdicts did not state what

28

1  portions of damages were attributable to the '915 patent, and new damages proceedings will

2  therefore be needed for products for which trade-dress dilution damages were wrongly awarded.

3      But the contours of these new damages proceedings will vary depending on the status of

4  the '915 patent.   It would be wasteful to proceed with damages proceedings, including potentially

5  even a third trial, when those proceedings may well be rendered moot by further proceedings

6  relating to the PTAB's invalidation decision.   A stay of further damages proceedings is warranted

7  to avoid such waste.   *See, e.g.*, *Cardenas v. AmeriCredit Fin. Servs*., No. C 09-04978 SBA, 2011

8  U.S. Dist. LEXIS 29105, at *12 (N.D. Cal. Mar. 7, 2011) (granting stay to avoid waste in

9  "conducting further proceedings, up to and including preparing for and conducting a trial[,] *that*

10 *may ultimately be unnecessary*") (emphasis in original).   Considerations of the "economy of time

11 and effort for [the Court], for counsel, and for litigants" warrant a stay.   *Landis*, 299 U.S. at 254.

12     **B.    A Stay Is Warranted Based On The Stage Of Both Proceedings**

13     A stay is also warranted in light of the advanced stage of the '915 patent proceedings at the

14 PTO relative to the stage of the proceedings here.   The stage of this case must be viewed "'in

15 comparison to the stage of the PTO reexaminations.'"   *Juxtacomm-Texas Software*, 2011 WL

16 3322554, at *2 (quoting *MercExchange, LLC v. eBay Inc.*, 500 F. Supp. 2d 556, 565 (E.D. Va.

17 2007)).   The Federal Circuit has also instructed that courts should "focus[] *prospectively* on the

18 impact of the stay on the litigation, not on the past actions of the parties" or through a "backward-

19 looking lens."   *Versata Software Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1375 (Fed. Cir.

20 2014) (subsequently vacated for mootness).

21     The '915 patent reexamination proceeding is in its final stage.   In this case, by contrast,

22 extensive further proceedings as to '915 patent infringement damages will be required, including

23 as to the four products for which both trade-dress dilution and '915 patent infringement liability

24 was found.   This Court previously ruled that a new damages trial was needed in similar

25 circumstances, when the Court "identified an impermissible legal theory on which the jury based

26 its award," Dkt. 2271 at 26, and Apple may well seek such a new damages trial again here.   *See*

27 *also Verizon Servs. Corp.*, 503 F.3d at 1310 (where jury did not "break[] down the damages

28

1    attributable to each patent, the normal rule would require a new trial as to damages").    But while

2    costly damages proceedings remain in this case, only rehearing and appeal remain in the PTAB.

3            It makes no difference that only damages remain to be determined in this case.    In fact, in

4    *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 996 F.2d 1236 (Fed. Cir. 1993)

5    (unpublished table decision), a decision previously addressed by this Court, *see* Dkt. 2831 at 6, the

6    Federal Circuit *reversed* an order denying a stay of a damages-only trial because the patent had

7    been held invalid by the BPAI after reexamination.    Although the appeal process was ongoing, it

8    was "legal error" to deny the stay on the basis that the reexamination could no longer have an

9    effect on the lawsuit because, "if a final decision of unpatentability means the patent was void *ab*

10   *initio*, then damages would also be precluded."    *Id.*

11           Similarly, in *Ultratec, Inc. v. Sorenson Communications, Inc.*, No. 13-CV-346-BBC, 2015

12   WL 2248437 (W.D. Wis. May 13, 2015), the district court granted a stay pending reexamination

13   after the jury had already rendered its verdict and only post-trial motions were pending.    *Id.* at *4.

14   The court had denied two previous motions to stay when the PTO proceedings were at an earlier

15   stage.    *Id.* at *2.    But after trial, the PTO issued a final decision invalidating some of the claims

16   at issue, *id.,* and this mandated a stay.    *Id.* at *5 (citing *Standard Havens* and *Flexiteek Americas,*

17   *Inc. v. PlasTEAK, Inc.*, No. 08-60996-CIV, 2010 WL 2976859, at *5–6 (S.D. Fla. July 20, 2010)

18   (staying execution of final judgment pending appeal of final decision in *ex parte* reexamination)).

19           The Federal Circuit affirmed this stay ruling, holding that because the PTAB had already

20   ruled the relevant claims invalid, "the district court could reasonably have concluded a stay would

21   simplify the rest of this litigation, conserve resources, and eliminate inconsistent results."

22   *Ultratec, Inc. v. CaptionCall, LLC*, No. 2015-1694, 2015 WL 4528272, at *2 (Fed. Cir. June 30,

23   2015) (unpublished).    The Federal Circuit also rejected the argument that "the advanced stage of

24   th[e] litigation demands a more compelling reason for a stay," finding instead that "[Petitioners]

25   cite no authority that precludes a district court from staying proceedings once a jury has rendered a

26   verdict, while the district court and Respondents cite contrary cases [such as] *Standard Havens*."

27   *Id.*

28

**C.      A Stay Will Prevent Hardship And Inequity To Samsung**

A stay will prevent significant inequity to Samsung.    The need to engage in further damages proceedings that may be mooted by subsequent events constitutes hardship.    And if Samsung were ordered by judgment to pay over $120 million on a claim that should never have been brought, the harm could be irreparable.    *See Everything For Love.com, Inc. v. Tender Loving Things, Inc.*, No. CIV 02-2605-PHX-EHC, 2006 WL 2091706, at *4 (D. Ariz. Jul. 21, 2006) ("If Plaintiff acquires a judgment against Defendant for infringement, and the '980 patent is subsequently held invalid by the PTO, there exists the possibility of irreparable harm to Defendant…"); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996) ("[O]ne possible scenario could result in irreparable harm to Alcon: if this Court finds that the '607 is not invalid and that Alcon has infringed it, and orders Alcon to pay damages to B & L for such infringement, then Alcon would have no ability to recover those damages if at a later date the PTO determined that the '607 patent is invalid.").    Indeed, the Federal Circuit has recognized the unfairness that would result from enforcement of patents in one proceeding "when the rest of the industry is not impeded by the patents" because they have been invalidated in another. *Mendenhall*, 26 F.3d at 1583; *see also ePlus, Inc. v. Lawson Software, Inc.*, 790 F.3d 1307, 1309 (Fed. Cir. 2015) (Dyk, J., concurring) (similar).

**D.      A Stay Will Not Harm Apple**

By contrast, Apple will not suffer undue harm from a temporary stay.    Apple's 2014 judgment is fully secured by the bond Samsung posted in the amount of $1 billion—well more than the ultimate judgment will be in this case.    The interest accruing on the judgment is also secured by the bond, which compensates Apple for any economic harm from a delay in payment. Thus, if the Federal Circuit reinstates the patent on appeal, a stay will have merely delayed Apple's recovery of monetary damages with interest.    "Mere delay, without more though, does not demonstrate undue prejudice," *Nanometrics Inc. v. Nova Measuring Instruments, Ltd.*, No. C 06-2252 SBA, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007), and "a delay in recovering potential monetary damages is not sufficient harm."    *N. River Ins. Co. v. Leffingwell Ag Sales Co.*, No. CV-F-10-2007 LJO MJS, 2011 U.S. Dist. LEXIS 8208, at *18 (E.D. Cal. Jan. 27, 2011).

1  Because the only relief at issue in this case is monetary, this factor "weighs heavily in favor of

2  staying the case."   *Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. CIV 03-CV-2223-

3  ABJ-BNB, 2006 WL 1897165, at \*10-11 (D. Colo. July 11, 2006); *see CMAX*, 300 F.2d at 268-69

4  (plaintiff failed to show prejudice from delayed judgment where the only relief sought was

5  "money damages"); *Brown v. Shimano Am. Corp.*, No. CV 88-6565 WJR (BX), 1991 WL 133586,

6  at \*1 (C.D. Cal. Jan. 29, 1991) (similar).

7      If, by contrast, the Federal Circuit affirms the invalidation of the '915 patent (or Apple

8  fails to appeal), then Apple will have no right to any damages based on that patent.    Apple's

9  inability to collect a money judgment on an invalid patent that never should have issued is not a

10  cognizable harm.   *See Flexiteek Americas*, 2012 WL 5364263, at \*9 ("[I]t would be inequitable

11  and unjust to let stand, let alone enforce, an injunction and an unexecuted money judgment

12  predicated on a patent claim found to be invalid and cancelled.").

13  **V.      CONCLUSION**

14      For the foregoing reasons, the Court should grant this motion.

15

16  DATED:    August 26, 2015              QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP

17

18                                 By    */s/ Victoria F. Maroulis*
                                          Charles K. Verhoeven
19                                        Kathleen M. Sullivan
                                          Kevin P.B. Johnson
20                                        Victoria F. Maroulis
                                          Michael T. Zeller
21
                                          Attorneys for SAMSUNG ELECTRONICS CO.,
22                                        LTD., SAMSUNG ELECTRONICS AMERICA,
                                          INC., and SAMSUNG
23                                        TELECOMMUNICATIONS AMERICA, LLC

24

25

26

27

28

SAMSUNG'S MOTION FOR ENTRY OF JUDGMENT OF INVALIDITY ON '915 PATENT