# EXHIBIT 3



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,332 | 05/30/2012 | 7844915 | P4895USREX1/120730-003US | 5963 |

108491          7590          12/19/2012

Goldberg, Lowenstein & Weatherwax LLP
1925 Century Park East
Suite 2120
Los Angeles, CA 90067

| EXAMINER |
|---|
| YIGDALL, MICHAEL J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/19/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

BRYAN CAVE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,332*.

PATENT NO. *7,844,915*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | Control No. 90/012,332 | Patent Under Reexamination 7844915 |
|---|---|---|
| | Examiner Michael J. Yigdall | Art Unit 3992 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a ☐ Responsive to the communication(s) filed on _____ .     b ☐ This action is made FINAL.

c ☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire *2* month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.       3. ☐ Interview Summary, PTO-474.

2. ☒ Information Disclosure Statement, PTO/SB/08.       4. ☐ _____ .

Part II    SUMMARY OF ACTION

1a. ☒ Claims *1-21* are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims *1-21* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. _____ .

   4☐ been filed in reexamination Control No. _____ .

   5☐ been received by the International Bureau in PCT application No. _____ .

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/012,332                                    Page 2
Art Unit: 3992

## DETAILED ACTION

1.      An order granting the request for *ex parte* reexamination of claims 1-21 of U.S. Patent

No. 7,844,915 ("the '915 patent") was mailed on August 17, 2012.

No statement under 37 CFR § 1.530 was filed by the patent owner.


### *Prior Art Cited in the Request*

2.      The following patents and printed publications were cited in the order granting the

request for *ex parte* reexamination:

U.S. Patent No. 7,724,242 to Hillis et al. ("Hillis").

U.S. Pub. No. 2005/0057524 to Hill et al. ("Hill").

Dean Harris Rubine, "The Automatic Recognition of Gestures," CMU-CS-91-202,

December 1991 ("Rubine").

Japanese Pub. No. 2000-163031A to Nomura et al. (English translation) ("Nomura").

International Pub. No. WO 03/081458 to Lira ("Lira").

U.S. Patent No. 6,677,965 to Ullmann et al. ("Ullmann").

U.S. Patent No. 6,757,673 to Makus et al. ("Makus").


### *Information Disclosure Statement*

3.      The examiner notes that the references cited in the information disclosure statement filed

by the patent owner on October 18, 2012 have been considered to the extent that the content and

relevance of the information was explained.  See MPEP § 2256.

Application/Control Number: 90/012,332                                    Page 3
Art Unit: 3992

## *Summary of Rejections*

4.      The following rejections of the claims are set forth below in this Office action:

Ground 1:  Claims 1, 5-8, 12-15 and 19-21 are rejected under 35 U.S.C. § 102(e) as

anticipated by Hillis.

Ground 2:  Claims 2, 9 and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over

Hillis in view of Lira.

Ground 3:  Claims 3, 4, 10, 11, 17 and 18 are rejected under 35 U.S.C. § 103(a) as

unpatentable over Hillis in view of Makus.

Ground 4:  Claims 1, 5-8, 12-15 and 19-21 are rejected under 35 U.S.C. § 103(a) as

unpatentable over Nomura in view of Rubine.

Ground 5:  Claims 2, 9 and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over

Nomura in view of Rubine and further in view of Lira.

Ground 6:  Claims 3, 4, 10, 11, 17 and 18 are rejected under 35 U.S.C. § 103(a) as

unpatentable over Nomura in view of Rubine and further in view of Makus.


5.      The examiner notes that the rejections set forth below are based on the Hillis, Lira,

Makus, Nomura and Rubine references.  No rejections of the claims, as presently written, are

made in this Office action based on the Hill and Ullmann references because the teachings of

those references are essentially cumulative to the teachings cited in the rejections below.

However, in order for claims to be found patentable and/or confirmed in this *ex parte*

reexamination proceeding, the claims must be patentable over every prior art patent and printed

publication cited in the order granting the request.

Application/Control Number: 90/012,332                                  Page 4
Art Unit: 3992

### *Claim Rejections under 35 U.S.C. § 102*

6.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. § 102 that form

the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published
> under section 122(b), by another filed in the United States before the
> invention by the applicant for patent or (2) a patent granted on an application
> for patent by another filed in the United States before the invention by the
> applicant for patent, except that an international application filed under the
> treaty defined in section 351(a) shall have the effects for purposes of this
> subsection of an application filed in the United States only if the international
> application designated the United States and was published under Article
> 21(2) of such treaty in the English language.

7.      <u>Ground 1</u>:  Claims 1, 5-8, 12-15 and 19-21 are rejected under 35 U.S.C. § 102(e) as

anticipated by Hillis.

<u>Claim 1</u>

| | |
|---|---|
| A machine implemented method for scrolling on a touch-sensitive display of a device comprising: | Hillis teaches a machine-implemented method for panning (i.e., scrolling) on a touch-sensitive display of a device (see, e.g., column 1, lines 29-36 and column 3, lines 21-24). |
| receiving a user input, the user input is one or more input points applied to the touch-sensitive display that is integrated with the device; | Hillis teaches receiving user input comprising one or more contact points applied to the touch-sensitive display (see, e.g., column 6, lines 59-63, "Broadly, the steps 202, 204, 206 run continuously to process user contact with the display surface 124 as it occurs.  Steps 202, 204, 206 therefore serve to analyze contact occurring when the user contacts the surface 124 at one or more contact regions utilizing one or more fingers, hands, arms, etc."). |
| creating an event object in response to the user input; | Hillis teaches creating an event object in response to the user input (see, e.g., column 7, lines 15-20, "In |

Application/Control Number: 90/012,332                               Page 5
Art Unit: 3992

step 202, the table 122 detects and monitors the position, size, shape, and timing of the current contact region.  Namely, the table 122 provides a machine readable output to the computer 126, which is representative of the position, size, shape, and timing of each contact region, or contains information from which this information can be calculated or derived.").

| | |
|---|---|
| determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation; | Hillis teaches determining whether the event object matches a pattern to invoke an action (see, e.g., column 7, lines 46-65, "In step 208, the computer 126 determines whether activity of the current contact matches a predetermined pattern, and therefore constitutes a 'gesture.'  Step 208 repeats continually, utilizing some or all of the position, position history (movement), velocity, and force information from steps 202, 204, 206. … if step 208 detects that the user has initiated a gesture (208c), the computer in step 214 utilizes the mapping 126c to identify the action 126b associated with the gesture that was identified in step 208.").  Hillis further teaches that the actions include a panning (i.e., scrolling) operation and other gesture operations such as zooming (see, e.g., column 8, lines 5-7, "As described in greater detail below, some examples of actions 126b include panning, zooming, rotating, and the like.").  Hillis describes a single contact point interpreted as the scrolling operation (see, e.g., FIG. 4B and column 8, lines 44-48) and two or more contact points interpreted as the zooming operation (see, e.g., FIG. 1B and column 3, lines 42-46). |
| issuing at least one scroll or gesture call based on invoking the scroll or gesture operation; | Hillis teaches issuing a call to perform the scrolling or other gesture operation (see, e.g., column 7, line 65 to column 8, line 3, "As mentioned above, the predefined actions include various machine implemented operations for updating the presentation of imagery by the display.  In one embodiment, gestures are both identified (208) and associated (214) with display control commands via a single procedure," and see, e.g., column 8, lines 4-8, "After step 214, the computer 126 initiates |

Application/Control Number: 90/012,332                                       Page 6
Art Unit: 3992

performance of the identified action (step 216).  As described in greater detail below, some examples of actions 126b include panning, zooming, rotating, and the like.  Thus, step 216 starts the requested pan, zoom, rotate, or other operation.").

responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input; and

Hillis teaches responding to the call by panning (i.e., scrolling) the view associated with the event object based on the amount of scroll (see, e.g., column 8, lines 44-52, "Another example is where the computer 126 detects (FIG. 2, step 208) that the user has initiated a pan gesture by drawing a finger across the display surface at a particular velocity, and lifted his/her finger from the surface while still moving (FIG. 2, step 218b).  With the optional inertia feature enabled, the computer 126 continues (FIG. 2, step 222) to pan the imagery in the initiated direction at the velocity implied by the gesture at the time the finger was lifted until a stopping or slowing naturally occurs (step 224).").  Hillis further teaches that the scrolling is stopped at a predetermined position based on the user input (see, e.g., column 8, line 63 to column 9, line 6).

responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

Hillis teaches responding to the call by zooming (i.e., scaling) the view associated with the event object based on the two or more contact points (see, e.g., column 3, lines 42-49, "In the example of FIG. 1B, a user 16 has gestured by placing his fingertips on the display surface and moving them in an outwardly separating manner.  As discussed in greater detail below, this particular gesture 17 is associated with a zoom-in command.  When the computer 126 performs a zoom-in command, it directs the projector to provide 128 a closer, more detailed view of the displayed imagery.").

Claim 8

A machine readable storage medium storing executable program instructions which when executed cause a data processing system to perform a method

Hillis teaches a machine-readable storage medium storing instructions for causing a data processing system to perform a method (see, e.g., column 1, lines 29-36 and column 3, lines 21-24, and see, e.g.,

Application/Control Number: 90/012,332                                    Page 7

Art Unit: 3992

| | |
|---|---|
| comprising: | column 5, lines 48-59). |
| receiving a user input, the user input is one or more input points applied to a touch-sensitive display that is integrated with the data processing system; | Hillis teaches receiving user input comprising one or more contact points applied to a touch-sensitive display (see, e.g., column 6, lines 59-63, "Broadly, the steps 202, 204, 206 run continuously to process user contact with the display surface 124 as it occurs. Steps 202, 204, 206 therefore serve to analyze contact occurring when the user contacts the surface 124 at one or more contact regions utilizing one or more fingers, hands, arms, etc."). |
| creating an event object in response to the user input; | Hillis teaches creating an event object in response to the user input (see, e.g., column 7, lines 15-20, "In step 202, the table 122 detects and monitors the position, size, shape, and timing of the current contact region. Namely, the table 122 provides a machine readable output to the computer 126, which is representative of the position, size, shape, and timing of each contact region, or contains information from which this information can be calculated or derived."). |
| determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation; | Hillis teaches determining whether the event object matches a pattern to invoke an action (see, e.g., column 7, lines 46-65, "In step 208, the computer 126 determines whether activity of the current contact matches a predetermined pattern, and therefore constitutes a 'gesture.' Step 208 repeats continually, utilizing some or all of the position, position history (movement), velocity, and force information from steps 202, 204, 206. … if step 208 detects that the user has initiated a gesture (208c), the computer in step 214 utilizes the mapping 126c to identify the action 126b associated with the gesture that was identified in step 208."). Hillis further teaches that the actions include a panning (i.e., scrolling) operation and other gesture operations such as zooming (see, e.g., column 8, lines 5-7, "As described in greater detail below, some examples of actions 126b include panning, zooming, rotating, and the like."). Hillis describes a single contact point interpreted as the scrolling operation (see, e.g., FIG. 4B and column 8, lines 44- |

Application/Control Number: 90/012,332                                    Page 8
Art Unit: 3992

|  |  |
|---|---|
|  | 48) and two or more contact points interpreted as the zooming operation (see, e.g., FIG. 1B and column 3, lines 42-46). |
| issuing at least one scroll or gesture call based on invoking the scroll or gesture operation; | Hillis teaches issuing a call to perform the scrolling or other gesture operation (see, e.g., column 7, line 65 to column 8, line 3, "As mentioned above, the predefined actions include various machine implemented operations for updating the presentation of imagery by the display.  In one embodiment, gestures are both identified (208) and associated (214) with display control commands via a single procedure," and see, e.g., column 8, lines 4-8, "After step 214, the computer 126 initiates performance of the identified action (step 216).  As described in greater detail below, some examples of actions 126b include panning, zooming, rotating, and the like.  Thus, step 216 starts the requested pan, zoom, rotate, or other operation."). |
| responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and | Hillis teaches responding to the call by panning (i.e., scrolling) the view associated with the event object (see, e.g., column 8, lines 44-52, "Another example is where the computer 126 detects (FIG. 2, step 208) that the user has initiated a pan gesture by drawing a finger across the display surface at a particular velocity, and lifted his/her finger from the surface while still moving (FIG. 2, step 218b).  With the optional inertia feature enabled, the computer 126 continues (FIG. 2, step 222) to pan the imagery in the initiated direction at the velocity implied by the gesture at the time the finger was lifted until a stopping or slowing naturally occurs (step 224)."). |
| responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input. | Hillis teaches responding to the call by zooming (i.e., scaling) the view associated with the event object based on the two or more contact points (see, e.g., column 3, lines 42-49, "In the example of FIG. 1B, a user 16 has gestured by placing his fingertips on the display surface and moving them in an outwardly separating manner.  As discussed in greater detail below, this particular gesture 17 is associated with a zoom-in command.  When the computer 126 performs a zoom-in command, it |

Application/Control Number: 90/012,332                                    Page 9
Art Unit: 3992

directs the projector to provide 128 a closer, more detailed view of the displayed imagery.").

Claim 15

| An apparatus, comprising: | Hillis teaches an apparatus (see, e.g., column 1, lines 29-36 and column 3, lines 21-24, and see, e.g., column 5, lines 17-21). |

means for receiving *[under § 112, ¶ 6, the "multi-touch driver" described at column 12, lines 30-32]*, through a hardware device, a user input on a touch-sensitive display of the apparatus, the user input is one or more input points applied to the touch-sensitive display that is integrated with the apparatus;

Hillis teaches equivalent software (see, e.g., column 5, lines 52-55) for receiving user input comprising one or more contact points applied to a touch-sensitive display (see, e.g., column 6, lines 59-63, "Broadly, the steps 202, 204, 206 run continuously to process user contact with the display surface 124 as it occurs.  Steps 202, 204, 206 therefore serve to analyze contact occurring when the user contacts the surface 124 at one or more contact regions utilizing one or more fingers, hands, arms, etc.").

means for creating *[under § 112, ¶ 6, the "multi-touch driver" described at column 12, lines 30-32]* an event object in response to the user input;

Hillis teaches equivalent software (see, e.g., column 5, lines 52-55) for creating an event object in response to the user input (see, e.g., column 7, lines 15-20, "In step 202, the table 122 detects and monitors the position, size, shape, and timing of the current contact region.  Namely, the table 122 provides a machine readable output to the computer 126, which is representative of the position, size, shape, and timing of each contact region, or contains information from which this information can be calculated or derived.").

means for determining *[under § 112, ¶ 6, the "window server" described at column 12, lines 32-34]* whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;

Hillis teaches equivalent software (see, e.g., column 5, lines 52-55) for determining whether the event object matches a pattern to invoke an action (see, e.g., column 7, lines 46-65, "In step 208, the computer 126 determines whether activity of the current contact matches a predetermined pattern, and therefore constitutes a 'gesture.'  Step 208 repeats continually, utilizing some or all of the position, position history (movement), velocity, and force information from steps 202, 204, 206. … if step 208 detects that the user has initiated a gesture (208c),

Application/Control Number: 90/012,332                    Page 10
Art Unit: 3992

the computer in step 214 utilizes the mapping 126c to identify the action 126b associated with the gesture that was identified in step 208."). Hillis further teaches that the actions include a panning (i.e., scrolling) operation and other gesture operations such as zooming (see, e.g., column 8, lines 5-7, "As described in greater detail below, some examples of actions 126b include panning, zooming, rotating, and the like."). Hillis describes a single contact point interpreted as the scrolling operation (see, e.g., FIG. 4B and column 8, lines 44-48) and two or more contact points interpreted as the zooming operation (see, e.g., FIG. 1B and column 3, lines 42-46).

| | |
|---|---|
| means for issuing *[under § 112, ¶ 6, the "user interface software" described at column 12, lines 34-37]* at least one scroll or gesture call based on invoking the scroll or gesture operation; | Hillis teaches equivalent software (see, e.g., column 5, lines 52-55) for issuing a call to perform the scrolling or other gesture operation (see, e.g., column 7, line 65 to column 8, line 3, "As mentioned above, the predefined actions include various machine implemented operations for updating the presentation of imagery by the display. In one embodiment, gestures are both identified (208) and associated (214) with display control commands via a single procedure," and see, e.g., column 8, lines 4-8, "After step 214, the computer 126 initiates performance of the identified action (step 216). As described in greater detail below, some examples of actions 126b include panning, zooming, rotating, and the like. Thus, step 216 starts the requested pan, zoom, rotate, or other operation."). |
| means for responding *[under § 112, ¶ 6, the "window or view" described at column 12, lines 44-46]* to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and | Hillis teaches equivalent software (see, e.g., column 5, lines 52-55) for responding to the call by panning (i.e., scrolling) the view associated with the event object (see, e.g., column 8, lines 44-52, "Another example is where the computer 126 detects (FIG. 2, step 208) that the user has initiated a pan gesture by drawing a finger across the display surface at a particular velocity, and lifted his/her finger from the surface while still moving (FIG. 2, step 218b). With the optional inertia feature enabled, the computer 126 continues (FIG. 2, step 222) to pan the imagery |

Application/Control Number: 90/012,332                                    Page 11

Art Unit: 3992

in the initiated direction at the velocity implied by the gesture at the time the finger was lifted until a stopping or slowing naturally occurs (step 224).").

means for responding *[under § 112, ¶ 6, the "window or view" described at column 12, lines 44-46]* to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

Hillis teaches equivalent software (see, e.g., column 5, lines 52-55) for responding to the call by zooming (i.e., scaling) the view associated with the event object based on the two or more contact points (see, e.g., column 3, lines 42-49, "In the example of FIG. 1B, a user 16 has gestured by placing his fingertips on the display surface and moving them in an outwardly separating manner. As discussed in greater detail below, this particular gesture 17 is associated with a zoom-in command. When the computer 126 performs a zoom-in command, it directs the projector to provide 128 a closer, more detailed view of the displayed imagery.").

Claim 5

The method as in claim 1, wherein determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period.

Claim 12

The medium as in claim 8, wherein determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period.

Claim 19

The apparatus as in claim 15, wherein determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period.

Claims 5, 12 and 19

Hillis further teaches that determining whether the event object matches a pattern to invoke a scrolling or other gesture operation is based on receiving a drag input for a period of time (see, e.g., column 7, lines 15-25, "In step 202, the table 122 detects and monitors the position, size, shape, and timing of the current contact region. Namely, the table 122 provides a machine readable output to the computer 126, which is representative of the position, size, shape, and timing of each contact region, or contains information from which this information can be calculated or derived. The timing output may be satisfied, for example, by the table 122 providing its output in real time. Also in step 202, the computer 126 stores a position history for each contact region. The position history provides a record of how each contact region moves or and/or changes shape over time," and see, e.g., column 7, lines 46-55, "In step 208, the computer 126 determines whether activity of the current contact matches a predetermined pattern, and therefore constitutes a 'gesture.' Step 208 repeats continually, utilizing some or all of the position, position history (movement), velocity, and

Application/Control Number: 90/012,332                                                     Page 12
Art Unit: 3992

force information from steps 202, 204, 206. More
particularly, in step 208 the computer 126 compares
the history of contact position, size, movement,
velocity, and/or force to the dictionary 126a of
predetermined gestures to determine if the user has
performed any of these gestures.").

Claim 6

The method as in claim 1, further
comprising:

responding to at least one gesture call, if
issued, by rotating a view associated with
the event object based on receiving a
plurality of input points in the form of the
user input.

Claim 13

The medium as in claim 8, further
comprising:

responding to at least one gesture call, if
issued, by rotating a view associated with
the event object based on receiving a
plurality of input points in the form of the
user input.

Claim 20

The apparatus as in claim 15, further
comprising:

means for responding *[under § 112, ¶ 6,
the "window or view" described at
column 12, lines 44-46]* to at least one
gesture call, if issued, by rotating a view
associated with the event object based on
receiving a plurality of input points in the
form of the user input.

Claims 6, 13 and 20

Hillis describes that the gesture operations include
rotating, and further teaches responding to a call to
perform the rotating operation by rotating the view
associated with the event object based on the user
input (see, e.g., column 7, line 65 to column 8, line
3, "As mentioned above, the predefined actions
include various machine implemented operations for
updating the presentation of imagery by the display.
In one embodiment, gestures are both identified
(208) and associated (214) with display control
commands via a single procedure," and see, e.g.,
column 8, lines 4-8 and 36-39, "After step 214, the
computer 126 initiates performance of the identified
action (step 216. As described in greater detail
below, some examples of actions 126b include
panning, zooming, rotating, and the like. Thus, step
216 starts the requested pan, zoom, rotate, or other
operation. … For example, if the action identified in
step 214 was 'rotate,' then the computer 126 in step
222 directs the projector 128 to additionally continue
the requested rotation after the gesture terminates.").
Hillis further teaches software equivalent to the
claimed means (see, e.g., column 5, lines 52-55).

Application/Control Number: 90/012,332                                      Page 13
Art Unit: 3992

Claim 7

The method as in claim 1, wherein the
device is one of: a data processing
device, a portable device, a portable data
processing device, a multi touch device, a
multi touch portable device, a wireless
device, and a cell phone.

Claim 14

The medium as in claim 8, wherein the
data processing system is one of: a data
processing device, a portable device, a
portable data processing device, a multi
touch device, a multi touch portable
device, a wireless device, and a cell
phone.

Claim 21

The apparatus as in claim 15, wherein the
apparatus is one of: a data processing
device, a portable device, a portable data
processing device, a multi touch device, a
multi touch portable device, a wireless
device, and a cell phone.

Claims 7, 14 and 21

Hillis further teaches that the device, data processing
system or apparatus is a data processing device and a
multi-touch device (see, e.g., column 5, lines 17-21,
"Data processing entities such as the computer 126
may be implemented in various forms.  One example
is a digital data processing apparatus, as exemplified
by the hardware components and interconnections of
the digital data processing apparatus 100 of FIG.
1D," and see, e.g., column 6, lines 59-63, "Broadly,
the steps 202, 204, 206 run continuously to process
user contact with the display surface 124 as it
occurs.  Steps 202, 204, 206 therefore serve to
analyze contact occurring when the user contacts the
surface 124 at one or more contact regions utilizing
one or more fingers, hands, arms, etc.").

## *Claim Rejections under 35 U.S.C. § 103*

8.      The following is a quotation of 35 U.S.C. § 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically
> disclosed or described as set forth in section 102 of this title, if the differences
> between the subject matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said
> subject matter pertains.  Patentability shall not be negated by the manner in
> which the invention was made.

Application/Control Number: 90/012,332                                    Page 14
Art Unit: 3992

9.      Ground 2:  Claims 2, 9 and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over

Hillis in view of Lira.

<u>Claim 2</u>

The method as in claim 1, further comprising:

rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

<u>Claim 9</u>

The medium as in claim 8, further comprising:

rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolled region exceeds a window edge based on the scroll.

<u>Claim 16</u>

The apparatus as in claim 15, further comprising:

means for rubberbanding *[under § 112, ¶ 6, the "application programming interface" described at column 7, lines 48-51]* a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

<u>Claims 2, 9 and 16</u>

Hillis does not explicitly describe rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

However, in an analogous art, Lira teaches receiving user input on a touch-sensitive display (see, e.g., page 16, lines 4-11).  The display includes a window displaying a page or document that is separated into columns (see, e.g., page 11, lines 1-17).  Lira further describes scrolling a column within the window based on the user input, and snapping (i.e., rubberbanding) the column according to a predetermined maximum threshold when the scrolling exceeds a boundary (see, e.g., FIG. 14B and page 15, lines 18-31, "Referring to Fig. 14B, in another implementation, the vertical alignment control is enabled when the user lifts the pen 1200 from the display 1205.  This causes the logical column 1220 to snap into alignment with the display window 1205 as the user stops scrolling.  The user can adjust the snap sensitivity by, for example, setting the alignment control to snap to the nearest logical column based on a user-defined snap threshold.  If the user's scrolling does not exceed the threshold, which indicates an intention to continue to view the text column 1220, the display 1205 centers the logical column 1210 as the pen 1200 is lifted from the screen.  If the user's scrolling exceeds the threshold, which indicates an intention to move beyond the boundary of the logical column 1220, the display is snapped to the adjacent or repositioned column.  In other implementations, no snapping occurs when the user's scrolling exceeds the threshold.  The snap-on-column feature can also be animated to provide an appearance of movement as

Application/Control Number: 90/012,332                                      Page 15
Art Unit: 3992

the display scrolls to the correct column-viewing position.").  Lira further teaches software equivalent to the claimed means (see, e.g., page 7, lines 9-10).

A person of ordinary skill in the art could have combined the teachings of Hillis and Lira with predictable results, and would have been prompted to implement the teachings of Hillis such that a scrolling region is automatically and visually "snapped" back into alignment within the window if the scrolling exceeds a threshold, as Lira suggests (see, e.g., page 15, "The snap-on-column feature can also be animated to provide an appearance of movement as the display scrolls to the correct … position.").  Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to rubberband a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

10.   <u>Ground 3</u>:  Claims 3, 4, 10, 11, 17 and 18 are rejected under 35 U.S.C. § 103(a) as

unpatentable over Hillis in view of Makus.

<u>Claim 3</u>                                          <u>Claims 3, 10 and 17</u>

The method as in claim 1, further comprising:

attaching scroll indicators to a content edge of the window.

<u>Claim 10</u>

The medium as in claim 8, further comprising:

attaching scroll indicators to a content edge of the view.

To the extent that Hillis does not explicitly describe attaching scroll indicators to a content edge of the window or view, Hillis does teach attaching a slider tool such as a slider bar (i.e., a scroll bar or scroll indicator) to the display (see, e.g., FIG. 5B and column 16, lines 29-39, "When slider mode is activated (step 537), the display 124 presents a slider tool in step 538.  Broadly, the slider tool includes a bar, knob, button, dial, or other suitable GUI component.  The presently described embodiment utilizes a linearly movable slider bar 560 illustrated in FIG. 5B.  In this example, each designated linear position of the slider bar corresponds to a different image layer of step 532.  In other words, the slider bar is set up so that different positions of the slider

Application/Control Number: 90/012,332                                      Page 16

Art Unit: 3992

Claim 17

The apparatus as in claim 15, further comprising:

means for attaching *[under § 112, ¶ 6, the "application programming interface" described at column 11, lines 16-20]* scroll indicators to a content edge of the window.

bar correspond to different positions in the prescribed sequence of images.  The slider bar observes an appropriately convenient scale.").

In an analogous art, Makus teaches attaching a scroll bar 76 (i.e., a scroll indicator) to a content edge of a window or view (see, e.g., FIG. 5 and column 8, line 59 to column 9, line 1, "Any of the third-level categories can be selected by touching the subcategory on display 28 with a finger or stylus.  For example, as shown in FIG. 5, the user has selected a third-level subcategory 72 entitled 'Airlines – International,' causing a list 74 of international airlines to be displayed.  Since more international airlines are included within list 74 than can be displayed in the available space on display screen 28 at one time, a scroll bar 76 is included for selectively accessing other international airlines in list 74 that are not currently shown.").  Makus further teaches software equivalent to the claimed means (see, e.g., column 6, lines 24-25).

A person of ordinary skill in the art would have been prompted to attach scroll indicators to a content edge of the window or view in Hillis in order to illustrate, for example, the relative position of the view using "an appropriately convenient scale," as Hillis suggests, or to provide access to more content than what fits on the screen at one time, as Makus suggests.  Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to attach scroll indicators to a content edge of the window or view.

Claim 4

The method as in claim 1, further comprising:

attaching scroll indicators to the window edge.

Claims 4, 11 and 18

To the extent that Hillis does not explicitly describe attaching scroll indicators to the window edge or a window edge of the view, Hillis does teach attaching a slider tool such as a slider bar (i.e., a scroll bar or scroll indicator) to the display (see, e.g., FIG. 5B and column 16, lines 29-39, "When slider mode is activated (step 537), the display 124 presents a slider

Application/Control Number: 90/012,332                                   Page 17
Art Unit: 3992

Claim 11

The medium as in claim 8, further comprising:

attaching scroll indicators to a window edge of the view.

Claim 18

The apparatus as in claim 15, further comprising:

means for attaching *[under § 112, ¶ 6, the "application programming interface" described at column 11, lines 16-20]* scroll indicators to the window edge.

tool in step 538.  Broadly, the slider tool includes a bar, knob, button, dial, or other suitable GUI component.  The presently described embodiment utilizes a linearly movable slider bar 560 illustrated in FIG. 5B.  In this example, each designated linear position of the slider bar corresponds to a different image layer of step 532.  In other words, the slider bar is set up so that different positions of the slider bar correspond to different positions in the prescribed sequence of images.  The slider bar observes an appropriately convenient scale.").

In an analogous art, Makus teaches attaching a scroll bar 76 (i.e., a scroll indicator) to a window edge (see, e.g., FIG. 5 and column 8, line 59 to column 9, line 1, "Any of the third-level categories can be selected by touching the subcategory on display 28 with a finger or stylus.  For example, as shown in FIG. 5, the user has selected a third-level subcategory 72 entitled 'Airlines – International,' causing a list 74 of international airlines to be displayed.  Since more international airlines are included within list 74 than can be displayed in the available space on display screen 28 at one time, a scroll bar 76 is included for selectively accessing other international airlines in list 74 that are not currently shown.").  Makus further teaches software equivalent to the claimed means (see, e.g., column 6, lines 24-25).

A person of ordinary skill in the art would have been prompted to attach scroll indicators to the window edge or a window edge of the view in Hillis in order to illustrate, for example, the relative position of the view using "an appropriately convenient scale," as Hillis suggests, or to provide access to more content than what fits on the screen at one time, as Makus suggests.  Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to attach scroll indicators to a content edge of the window or view.

Application/Control Number: 90/012,332                                    Page 18
Art Unit: 3992

11.    <u>Ground 4</u>:  Claims 1, 5-8, 12-15 and 19-21 are rejected under 35 U.S.C. § 103(a) as

unpatentable over Nomura in view of Rubine.


<u>Claim 1</u>

| | |
|---|---|
| A machine implemented method for scrolling on a touch-sensitive display of a device comprising: | Nomura teaches a machine-implemented method for scrolling on a touch-sensitive display of a device (see, e.g., paragraphs [0008] and [0049]). |
| receiving a user input, the user input is one or more input points applied to the touch-sensitive display that is integrated with the device; | Nomura teaches receiving user input comprising one or more contact points applied to the touch-sensitive display (see, e.g., paragraph [0130], "When the display screen is contacted by the tip of a user's finger or pen 1120 or the like, the touch panel 1060 detects contact position information, contact pressure, and contact area of the finger …," and see, e.g., paragraph [0139], "The finger movement detector 1110 is for detecting the movement history, contact pressure, and contact area of the finger performed on the display area by the user."). |
| creating an event object in response to the user input; | Nomura teaches providing data based on the user input (see, e.g., paragraph [0139], "Detection data obtained by the finger movement detector 1110 is input to the processor 1100."), but does not explicitly describe creating an event object in response to the user input.<br><br>However, in an analogous art, Rubine teaches receiving user input in the form of gestures (see, e.g., page 192, "Each finger then drags its respective point; the object can thus be rotated by rotating the fingers, scaled by moving the fingers apart or together, or translated by moving the fingers in parallel.").  Rubine further teaches creating an event object in response to the user input (see, e.g., page 105, "When input occurs, it is represented as an event which is raised.  Raising an event results in a search for an active event handler that will handle the event," and pages 120-121, "Input events are full-blown objects.  The Event hierarchy imposes structure on events without imposing device |

Application/Control Number: 90/012,332                                    Page 19
Art Unit: 3992

dependencies. … Much flexibility is possible; for example, a Sensor Frame device might raise a single SensorFrameEvent describing the current set of fingers in the plane of the frame, or separate DragEvents for each finger …," and see, e.g., page 133, "Raising the GestureEvent initiates the search for the possible gesture classes given the initial event. … The GestureEvent, handled by the same passive event handler mechanism, will thus be propagated to other GestureEventHandlers in the correct order.  Each passive gesture handler that would have handled the initial event sends a message to the gesture handler which raised the GestureEvent indicating the set of gesture classes it recognizes and the view with which it is associated.").

A person of ordinary skill in the art could have combined the teachings of Nomura and Rubine with predictable results, and would have been prompted to provide Nomura with an object-oriented system for handling user interface gestures such as described in Rubine (see, e.g., pages 4-5 and 8-9).  As Rubine suggests, such an implementation would provide structure and flexibility while eliminating device dependencies (see, e.g., pages 120-121, "Input events are full-blown objects.  The Event hierarchy imposes structure on events without imposing device dependencies. … Much flexibility is possible ….").  Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to implement the teachings of Nomura such that the data representing the user input is encapsulated in an event object, and to create an event object in response to the user input.

| | |
|---|---|
| determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation; | Nomura teaches determining whether the user input comprises a single contact point invoking a scroll operation or two or more contact points invoking a gesture operation such as zoom in, zoom out or rotate (see, e.g., paragraph [0053], "The operations details determination part 30 judges the operation details input by the user based on the finger movement history detected by the finger movement |

Application/Control Number: 90/012,332                                    Page 20
Art Unit: 3992

|  | detector 10.  Specifically, the operations details determination part 30 judges … two fingers moving apart as input of a map image zoom-in operation … two fingers moving toward each other as input of a map image zoom-out operation … one finger rotating with another finger as an axis as input of a map image rotate operation … [and] action of moving one finger as input of a map scroll operation."). |
|---|---|
| issuing at least one scroll or gesture call based on invoking the scroll or gesture operation; | Nomura teaches issuing a call to perform the scroll, zoom in, zoom out or rotate operation (see, e.g., paragraph [0054], "The map operation processor 40 performs processing to generate a map image with the operation judged by the operation details determination part 30 implemented and includes a zoom-in processor 42, a zoom-out processor 44, a rotation processor 46, and a scroll processor 48," and see, e.g., paragraph [0137], "When the user performs various types of finger operation[s] on the display … the CPU 1010 executes the operation indicated by the user based on the input details."). |
| responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input; and | Nomura teaches responding to the call by scrolling the view associated with the user input based on the amount of scroll (see, e.g., FIG. 8 and paragraph [0067], "As shown in Fig. 8, when a finger is placed on the screen and moved in the desired direction while pressing a finger on the screen (map scroll gesture), a map moved in the direction of movement of the finger and the same distance as the moved finger is displayed.").  Nomura further teaches that the scrolling is stopped at a predetermined position based on the user input (see, e.g., paragraph [0016], "With the present invention, the operation amount can be inputted for each type of operation based on the movement history of fingers; therefore, a user can input the desired quantity of operation by adjusting finger motion according to his needs."). |
| responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form | Nomura teaches responding to the call by scaling the view associated with the user input based on the two or more contact points (see, e.g., FIG. 5 and paragraph [0063], "In the case that the obtaining of |

Application/Control Number: 90/012,332                                    Page 21
Art Unit: 3992

of the user input.

information near 'Bombay' is desired, as shown in
Fig. 6 (B), the placement of a thumb and forefinger
near 'Bombay' on the screen with the thumb and
forefinger close together and the action of moving
the thumb and forefinger away from each other (map
zoom-in gesture) are performed (see Fig. 5).  When
performed in this manner, a zoomed-in map image
corresponding to the movement history of the thumb
and forefinger is displayed.  In other words, an
increased level of separation of the thumb and
forefinger leads to a smaller scale and a more
detailed map," and see, e.g., FIG. 9 and paragraph
[0068], "When desiring a zoomed-out map for a case
such as to see a map image with larger scale, or to
display information for a wide range or the like, first
place a thumb and forefinger apart on the map
displayed on the screen as shown in Fig. 6 (A), then
move the thumb and forefinger toward each other as
shown in Fig. 9 (map zoom-out gesture).  When
performed in this manner, a zoomed-out map image
corresponding to the movement history of the thumb
and forefinger is displayed.  In other words, an
increased level of separation of the thumb and
forefinger leads to a smaller scale and a more
detailed map.").

Claim 8

A machine readable storage medium
storing executable program instructions
which when executed cause a data
processing system to perform a method
comprising:

Nomura teaches a machine-readable storage medium
storing instructions for causing a data processing
system to perform a method (see, e.g., paragraphs
[0008] and [0049], and see, e.g., paragraphs [0132]
and [0134]).

receiving a user input, the user input is
one or more input points applied to a
touch-sensitive display that is integrated
with the data processing system;

Nomura teaches receiving user input comprising one
or more contact points applied to a touch-sensitive
display (see, e.g., paragraph [0130], "When the
display screen is contacted by the tip of a user's
finger or pen 1120 or the like, the touch panel 1060
detects contact position information, contact
pressure, and contact area of the finger …," and see,
e.g., paragraph [0139], "The finger movement
detector 1110 is for detecting the movement history,

Application/Control Number: 90/012,332                                    Page 22
Art Unit: 3992

contact pressure, and contact area of the finger performed on the display area by the user.").

creating an event object in response to the user input;

Nomura teaches providing data based on the user input (see, e.g., paragraph [0139], "Detection data obtained by the finger movement detector 1110 is input to the processor 1100."), but does not explicitly describe creating an event object in response to the user input.

However, in an analogous art, Rubine teaches receiving user input in the form of gestures (see, e.g., page 192, "Each finger then drags its respective point; the object can thus be rotated by rotating the fingers, scaled by moving the fingers apart or together, or translated by moving the fingers in parallel."). Rubine further teaches creating an event object in response to the user input (see, e.g., page 105, "When input occurs, it is represented as an event which is raised. Raising an event results in a search for an active event handler that will handle the event," and pages 120-121, "Input events are full-blown objects. The Event hierarchy imposes structure on events without imposing device dependencies. … Much flexibility is possible; for example, a Sensor Frame device might raise a single SensorFrameEvent describing the current set of fingers in the plane of the frame, or separate DragEvents for each finger …," and see, e.g., page 133, "Raising the GestureEvent initiates the search for the possible gesture classes given the initial event. … The GestureEvent, handled by the same passive event handler mechanism, will thus be propagated to other GestureEventHandlers in the correct order. Each passive gesture handler that would have handled the initial event sends a message to the gesture handler which raised the GestureEvent indicating the set of gesture classes it recognizes and the view with which it is associated.").

A person of ordinary skill in the art could have combined the teachings of Nomura and Rubine with predictable results, and would have been prompted

Application/Control Number: 90/012,332                                    Page 23
Art Unit: 3992

to provide Nomura with an object-oriented system for handling user interface gestures such as described in Rubine (see, e.g., pages 4-5 and 8-9). As Rubine suggests, such an implementation would provide structure and flexibility while eliminating device dependencies (see, e.g., pages 120-121, "Input events are full-blown objects. The Event hierarchy imposes structure on events without imposing device dependencies. … Much flexibility is possible …."). Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to implement the teachings of Nomura such that the data representing the user input is encapsulated in an event object, and to create an event object in response to the user input.

determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to touch-sensitive display that are interpreted as the gesture operation;

Nomura teaches determining whether the user input comprises a single contact point invoking a scroll operation or two or more contact points invoking a gesture operation such as zoom in, zoom out or rotate (see, e.g., paragraph [0053], "The operations details determination part 30 judges the operation details input by the user based on the finger movement history detected by the finger movement detector 10. Specifically, the operations details determination part 30 judges … two fingers moving apart as input of a map image zoom-in operation … two fingers moving toward each other as input of a map image zoom-out operation … one finger rotating with another finger as an axis as input of a map image rotate operation … [and] action of moving one finger as input of a map scroll operation.").

issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;

Nomura teaches issuing a call to perform the scroll, zoom in, zoom out or rotate operation (see, e.g., paragraph [0054], "The map operation processor 40 performs processing to generate a map image with the operation judged by the operation details determination part 30 implemented and includes a zoom-in processor 42, a zoom-out processor 44, a rotation processor 46, and a scroll processor 48," and see, e.g., paragraph [0137], "When the user performs various types of finger operation[s] on the display …

Application/Control Number: 90/012,332                                    Page 24
Art Unit: 3992

the CPU 1010 executes the operation indicated by the user based on the input details.").

responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and

Nomura teaches responding to the call by scrolling the view associated with the user input (see, e.g., FIG. 8 and paragraph [0067], "As shown in Fig. 8, when a finger is placed on the screen and moved in the desired direction while pressing a finger on the screen (map scroll gesture), a map moved in the direction of movement of the finger and the same distance as the moved finger is displayed.").

responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

Nomura teaches responding to the call by scaling the view associated with the user input based on the two or more contact points (see, e.g., FIG. 5 and paragraph [0063], "In the case that the obtaining of information near 'Bombay' is desired, as shown in Fig. 6 (B), the placement of a thumb and forefinger near 'Bombay' on the screen with the thumb and forefinger close together and the action of moving the thumb and forefinger away from each other (map zoom-in gesture) are performed (see Fig. 5). When performed in this manner, a zoomed-in map image corresponding to the movement history of the thumb and forefinger is displayed. In other words, an increased level of separation of the thumb and forefinger leads to a smaller scale and a more detailed map," and see, e.g., FIG. 9 and paragraph [0068], "When desiring a zoomed-out map for a case such as to see a map image with larger scale, or to display information for a wide range or the like, first place a thumb and forefinger apart on the map displayed on the screen as shown in Fig. 6 (A), then move the thumb and forefinger toward each other as shown in Fig. 9 (map zoom-out gesture). When performed in this manner, a zoomed-out map image corresponding to the movement history of the thumb and forefinger is displayed. In other words, an increased level of separation of the thumb and forefinger leads to a smaller scale and a more detailed map.").

Application/Control Number: 90/012,332                                    Page 25

Art Unit: 3992

Claim 15

| | |
|---|---|
| An apparatus, comprising: | Nomura teaches an apparatus (see, e.g., paragraphs [0008] and [0049], and see, e.g., paragraphs [0132] and [0134]). |
| means for receiving *[under § 112, ¶ 6, the "multi-touch driver" described at column 12, lines 30-32]*, through a hardware device, a user input on a touch-sensitive display of the apparatus, the user input is one or more input points applied to the touch-sensitive display that is integrated with the apparatus; | Nomura teaches equivalent software (see, e.g., paragraph [0134]) for receiving user input comprising one or more contact points applied to a touch-sensitive display (see, e.g., paragraph [0130], "When the display screen is contacted by the tip of a user's finger or pen 1120 or the like, the touch panel 1060 detects contact position information, contact pressure, and contact area of the finger …," and see, e.g., paragraph [0139], "The finger movement detector 1110 is for detecting the movement history, contact pressure, and contact area of the finger performed on the display area by the user."). |
| means for creating *[under § 112, ¶ 6, the "multi-touch driver" described at column 12, lines 30-32]* an event object in response to the user input; | Nomura teaches equivalent software (see, e.g., paragraph [0134]) for providing data based on the user input (see, e.g., paragraph [0139], "Detection data obtained by the finger movement detector 1110 is input to the processor 1100."), but does not explicitly describe creating an event object in response to the user input.

However, in an analogous art, Rubine teaches receiving user input in the form of gestures (see, e.g., page 192, "Each finger then drags its respective point; the object can thus be rotated by rotating the fingers, scaled by moving the fingers apart or together, or translated by moving the fingers in parallel."). Rubine further teaches creating an event object in response to the user input (see, e.g., page 105, "When input occurs, it is represented as an event which is raised. Raising an event results in a search for an active event handler that will handle the event," and pages 120-121, "Input events are full-blown objects. The Event hierarchy imposes structure on events without imposing device dependencies. … Much flexibility is possible; for example, a Sensor Frame device might raise a single SensorFrameEvent describing the current set of |

Application/Control Number: 90/012,332                                      Page 26
Art Unit: 3992

fingers in the plane of the frame, or separate DragEvents for each finger …," and see, e.g., page 133, "Raising the GestureEvent initiates the search for the possible gesture classes given the initial event. … The GestureEvent, handled by the same passive event handler mechanism, will thus be propagated to other GestureEventHandlers in the correct order.  Each passive gesture handler that would have handled the initial event sends a message to the gesture handler which raised the GestureEvent indicating the set of gesture classes it recognizes and the view with which it is associated.").

A person of ordinary skill in the art could have combined the teachings of Nomura and Rubine with predictable results, and would have been prompted to provide Nomura with an object-oriented system for handling user interface gestures such as described in Rubine (see, e.g., pages 4-5 and 8-9). As Rubine suggests, such an implementation would provide structure and flexibility while eliminating device dependencies (see, e.g., pages 120-121, "Input events are full-blown objects.  The Event hierarchy imposes structure on events without imposing device dependencies. … Much flexibility is possible ….").  Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to implement the teachings of Nomura such that the data representing the user input is encapsulated in an event object, and to create an event object in response to the user input.

means for determining *[under § 112, ¶ 6, the "window server" described at column 12, lines 32-34]* whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;

Nomura teaches equivalent software (see, e.g., paragraph [0134]) for determining whether the user input comprises a single contact point invoking a scroll operation or two or more contact points invoking a gesture operation such as zoom in, zoom out or rotate (see, e.g., paragraph [0053], "The operations details determination part 30 judges the operation details input by the user based on the finger movement history detected by the finger movement detector 10.  Specifically, the operations details determination part 30 judges … two fingers

Application/Control Number: 90/012,332                                              Page 27
Art Unit: 3992

|  | moving apart as input of a map image zoom-in operation … two fingers moving toward each other as input of a map image zoom-out operation … one finger rotating with another finger as an axis as input of a map image rotate operation … [and] action of moving one finger as input of a map scroll operation."). |
|---|---|
| means for issuing *[under § 112, ¶ 6, the "user interface software" described at column 12, lines 34-37]* at least one scroll or gesture call based on invoking the scroll or gesture operation; | Nomura teaches equivalent software (see, e.g., paragraph [0134]) for issuing a call to perform the scroll, zoom in, zoom out or rotate operation (see, e.g., paragraph [0054], "The map operation processor 40 performs processing to generate a map image with the operation judged by the operation details determination part 30 implemented and includes a zoom-in processor 42, a zoom-out processor 44, a rotation processor 46, and a scroll processor 48," and see, e.g., paragraph [0137], "When the user performs various types of finger operation[s] on the display … the CPU 1010 executes the operation indicated by the user based on the input details."). |
| means for responding *[under § 112, ¶ 6, the "window or view" described at column 12, lines 44-46]* to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and | Nomura teaches equivalent software (see, e.g., paragraph [0134]) for responding to the call by scrolling the view associated with the user input (see, e.g., FIG. 8 and paragraph [0067], "As shown in Fig. 8, when a finger is placed on the screen and moved in the desired direction while pressing a finger on the screen (map scroll gesture), a map moved in the direction of movement of the finger and the same distance as the moved finger is displayed."). |
| means for responding *[under § 112, ¶ 6, the "window or view" described at column 12, lines 44-46]* to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input. | Nomura teaches equivalent software (see, e.g., paragraph [0134]) for responding to the call by scaling the view associated with the user input based on the two or more contact points (see, e.g., FIG. 5 and paragraph [0063], "In the case that the obtaining of information near 'Bombay' is desired, as shown in Fig. 6 (B), the placement of a thumb and forefinger near 'Bombay' on the screen with the thumb and forefinger close together and the action of moving the thumb and forefinger away from each |

Application/Control Number: 90/012,332                                   Page 28
Art Unit: 3992

other (map zoom-in gesture) are performed (see Fig. 5).  When performed in this manner, a zoomed-in map image corresponding to the movement history of the thumb and forefinger is displayed.  In other words, an increased level of separation of the thumb and forefinger leads to a smaller scale and a more detailed map," and see, e.g., FIG. 9 and paragraph [0068], "When desiring a zoomed-out map for a case such as to see a map image with larger scale, or to display information for a wide range or the like, first place a thumb and forefinger apart on the map displayed on the screen as shown in Fig. 6 (A), then move the thumb and forefinger toward each other as shown in Fig. 9 (map zoom-out gesture).  When performed in this manner, a zoomed-out map image corresponding to the movement history of the thumb and forefinger is displayed.  In other words, an increased level of separation of the thumb and forefinger leads to a smaller scale and a more detailed map.").

Claim 5

The method as in claim 1, wherein determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period.

Claim 12

The medium as in claim 8, wherein determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period.

Claim 19

The apparatus as in claim 15, wherein determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a

Claims 5, 12 and 19

Nomura further teaches that the determining is based on receiving a drag input for a period of time (see, e.g., paragraph [0010], "The movement history of fingers contacting the display area is a concept including a passage of time element and is distinguished from an operation of simply touching an input mark or the like with a finger that does not include a passage of time element," and see, for example, paragraph [0193], "Furthermore, this is not limited to simultaneous contact of fingers, but output of search information that is a logical product for contact by fingers within a specified amount of time would also be acceptable.").

Application/Control Number: 90/012,332                                    Page 29

Art Unit: 3992

certain time period.

## Claim 6

The method as in claim 1, further comprising:

responding to at least one gesture call, if issued, by rotating a view associated with the event object based on receiving a plurality of input points in the form of the user input.

## Claim 13

The medium as in claim 8, further comprising:

responding to at least one gesture call, if issued, by rotating a view associated with the event object based on receiving a plurality of input points in the form of the user input.

## Claim 20

The apparatus as in claim 15, further comprising:

means for responding *[under § 112, ¶ 6, the "window or view" described at column 12, lines 44-46]* to at least one gesture call, if issued, by rotating a view associated with the event object based on receiving a plurality of input points in the form of the user input.

## Claim 7

The method as in claim 1, wherein the device is one of: a data processing device, a portable device, a portable data

## Claims 6, 13 and 20

Nomura further teaches responding to the call by rotating the view associated with the user input based on the two or more contact points (see, e.g., FIG. 10 and paragraph [0072], "If change of orientation of a map without changing scale is desired, first place a thumb and forefinger apart on the map displayed on the screen as shown in Fig. 6 (A), then hold either the thumb or forefinger in one place and rotate the other finger with the other finger as an axis (map rotation gesture) (see Fig. 10). When performed in this manner, a map image with rotation corresponding to the movement history of the thumb and forefinger is displayed.").  Nomura further teaches software equivalent to the claimed means (see, e.g., paragraph [0134]).

## Claims 7, 14 and 21

Nomura further teaches that the device, data processing system or apparatus is a portable data processing device and a multi-touch device (see,

Application/Control Number: 90/012,332                                      Page 30

Art Unit: 3992

processing device, a multi touch device, a           e.g., paragraph [0047], "A characteristic of the
multi touch portable device, a wireless             present invention is performing rotate, zoom-in,
device, and a cell phone.                            zoom-out, or scrolling of a map image through
                                                     finger movement on a map image displayed on a
Claim 14                                             mobile information device or electronic book that
                                                     can display a map image.").
The medium as in claim 8, wherein the
data processing system is one of: a data
processing device, a portable device, a
portable data processing device, a multi
touch device, a multi touch portable
device, a wireless device, and a cell
phone.

Claim 21

The apparatus as in claim 15, wherein the
apparatus is one of: a data processing
device, a portable device, a portable data
processing device, a multi touch device, a
multi touch portable device, a wireless
device, and a cell phone.


12.   Ground 5:  Claims 2, 9 and 16 are rejected under 35 U.S.C. § 103(a) as unpatentable over

Nomura in view of Rubine and further in view of Lira.


Claim 2                                              Claims 2, 9 and 16

The method as in claim 1, further                   Nomura does not explicitly describe rubberbanding a
comprising:                                          scrolling region displayed within the window by a
                                                     predetermined maximum displacement when the
rubberbanding a scrolling region                    scrolling region exceeds a window edge based on the
displayed within the window by a                    scroll.
predetermined maximum displacement
when the scrolling region exceeds a                 However, in an analogous art, Lira teaches receiving
window edge based on the scroll.                    user input on a touch-sensitive display (see, e.g.,
                                                     page 16, lines 4-11).  The display includes a window
Claim 9                                              displaying a page or document that is separated into
                                                     columns (see, e.g., page 11, lines 1-17).  Lira further
The medium as in claim 8, further                   describes scrolling a column within the window
comprising:                                          based on the user input, and snapping (i.e.,

Application/Control Number: 90/012,332                         Page 31
Art Unit: 3992

rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolled region exceeds a window edge based on the scroll.

## Claim 16

The apparatus as in claim 15, further comprising:

means for rubberbanding *[under § 112, ¶ 6, the "application programming interface" described at column 7, lines 48-51]* a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

rubberbanding) the column according to a predetermined maximum threshold when the scrolling exceeds a boundary (see, e.g., FIG. 14B and page 15, lines 18-31, "Referring to Fig. 14B, in another implementation, the vertical alignment control is enabled when the user lifts the pen 1200 from the display 1205. This causes the logical column 1220 to snap into alignment with the display window 1205 as the user stops scrolling. The user can adjust the snap sensitivity by, for example, setting the alignment control to snap to the nearest logical column based on a user-defined snap threshold. If the user's scrolling does not exceed the threshold, which indicates an intention to continue to view the text column 1220, the display 1205 centers the logical column 1210 as the pen 1200 is lifted from the screen. If the user's scrolling exceeds the threshold, which indicates an intention to move beyond the boundary of the logical column 1220, the display is snapped to the adjacent or repositioned column. In other implementations, no snapping occurs when the user's scrolling exceeds the threshold. The snap-on-column feature can also be animated to provide an appearance of movement as the display scrolls to the correct column-viewing position."). Lira further teaches software equivalent to the claimed means (see, e.g., page 7, lines 9-10).

A person of ordinary skill in the art could have combined the teachings of Nomura and Lira with predictable results, and would have been prompted to implement the teachings of Nomura such that a scrolling region is automatically and visually "snapped" back into alignment within the window if the scrolling exceeds a threshold, as Lira suggests (see, e.g., page 15, "The snap-on-column feature can also be animated to provide an appearance of movement as the display scrolls to the correct … position."). Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to rubberband a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

Application/Control Number: 90/012,332                                    Page 32
Art Unit: 3992

13.    <u>Ground 6</u>:  Claims 3, 4, 10, 11, 17 and 18 are rejected under 35 U.S.C. § 103(a) as

unpatentable over Nomura in view of Rubine and further in view of Makus.

<u>Claim 3</u>

The method as in claim 1, further comprising:

attaching scroll indicators to a content edge of the window.

<u>Claim 10</u>

The medium as in claim 8, further comprising:

attaching scroll indicators to a content edge of the view.

<u>Claim 17</u>

The apparatus as in claim 15, further comprising:

means for attaching *[under § 112, ¶ 6, the "application programming interface" described at column 11, lines 16-20]* scroll indicators to a content edge of the window.

<u>Claims 3, 10 and 17</u>

To the extent that Nomura does not explicitly describe attaching scroll indicators to a content edge of the window, Nomura does teach attaching controls to edge of the display for scrolling or "turning" pages of the content (see, e.g., Figure 3 and paragraph [0062], "The center of the screen is primarily used as an information display area and the edges of the screen are primarily used for search tag and toolbar display areas. ... Furthermore, images 240 and 242 that simulate the 'thickness of a book' are displayed on the right and left edges of the display area," and see, e.g., paragraph [0089], "Here, the page-turning speed can be adjusted by adjustment of the user's touch pressure. ... When the user finds the page he wants to read and removes his hand from the aforementioned 'thickness of book,' page-turning is stopped and the display screen displays this screen.").

In an analogous art, Makus teaches attaching a scroll bar 76 (i.e., a scroll indicator) to a content edge of a window or view (see, e.g., FIG. 5 and column 8, line 59 to column 9, line 1, "Any of the third-level categories can be selected by touching the subcategory on display 28 with a finger or stylus. For example, as shown in FIG. 5, the user has selected a third-level subcategory 72 entitled 'Airlines – International,' causing a list 74 of international airlines to be displayed.  Since more international airlines are included within list 74 than can be displayed in the available space on display screen 28 at one time, a scroll bar 76 is included for selectively accessing other international airlines in list 74 that are not currently shown.").  Makus further teaches software equivalent to the claimed

Application/Control Number: 90/012,332                                 Page 33
Art Unit: 3992

means (see, e.g., column 6, lines 24-25).

A person of ordinary skill in the art would have been prompted to attach scroll indicators to a content edge of the window or view in Nomura in order to illustrate, for example, the relative position of the view or to provide access to more content than what fits on the screen at one time, as Makus suggests. Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to attach scroll indicators to a content edge of the window or view.

Claim 4

The method as in claim 1, further comprising:

attaching scroll indicators to the window edge.

Claim 11

The medium as in claim 8, further comprising:

attaching scroll indicators to a window edge of the view.

Claim 18

The apparatus as in claim 15, further comprising:

means for attaching *[under § 112, ¶ 6, the "application programming interface" described at column 11, lines 16-20]* scroll indicators to the window edge.

Claims 4, 11 and 18

To the extent that Nomura does not explicitly describe attaching scroll indicators to the window edge or a window edge of the view, Nomura does teach attaching controls to edge of the display for scrolling or "turning" pages of the content (see, e.g., Figure 3 and paragraph [0062], "The center of the screen is primarily used as an information display area and the edges of the screen are primarily used for search tag and toolbar display areas. … Furthermore, images 240 and 242 that simulate the 'thickness of a book' are displayed on the right and left edges of the display area," and see, e.g., paragraph [0089], "Here, the page-turning speed can be adjusted by adjustment of the user's touch pressure. … When the user finds the page he wants to read and removes his hand from the aforementioned 'thickness of book,' page-turning is stopped and the display screen displays this screen.").

In an analogous art, Makus teaches attaching a scroll bar 76 (i.e., a scroll indicator) to a window edge (see, e.g., FIG. 5 and column 8, line 59 to column 9, line 1, "Any of the third-level categories can be selected by touching the subcategory on display 28 with a finger or stylus.  For example, as shown in FIG. 5, the user has selected a third-level subcategory 72 entitled 'Airlines – International,'

causing a list 74 of international airlines to be displayed. Since more international airlines are included within list 74 than can be displayed in the available space on display screen 28 at one time, a scroll bar 76 is included for selectively accessing other international airlines in list 74 that are not currently shown."). Makus further teaches software equivalent to the claimed means (see, e.g., column 6, lines 24-25).

A person of ordinary skill in the art would have been prompted to attach scroll indicators to the window edge or a window edge of the view in Nomura in order to illustrate, for example, the relative position of the view or to provide access to more content than what fits on the screen at one time, as Makus suggests. Therefore, it would have been obvious to those of ordinary skill in the art at the time of the invention to attach scroll indicators to a content edge of the window or view.

### Conclusion

14.     In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR § 1.116 after final rejection and 37 CFR § 41.33 after appeal, which will be strictly enforced.

15.     Extensions of time under 37 CFR § 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR § 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. § 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR § 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR § 1.550(c).

Application/Control Number: 90/012,332                                   Page 35
Art Unit: 3992

     The patent owner is reminded of the continuing responsibility under 37 CFR § 1.565(a)

to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

the '915 patent throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.

16.    All correspondence relating to this *ex parte* reexamination proceeding should be directed:

| | |
|---|---|
| By mail to: | Mail Stop *Ex Parte* Reexam |
| | Attn: Central Reexamination Unit |
| | Commissioner for Patents |
| | United States Patent & Trademark Office |
| | P.O. Box 1450 |
| | Alexandria, VA 22313-1450 |
| | |
| By fax to: | (571) 273-9900 |
| | Central Reexamination Unit |
| | |
| By hand: | Customer Service Window |
| | Randolph Building |
| | 401 Dulany Street |
| | Alexandria, VA 22314 |
| | |
| By EFS: | Registered users may submit correspondence via the EFS-Web electronic |
| | filing system at https://efs.uspto.gov/efile/myportal/efs-registered. |

Application/Control Number: 90/012,332                                    Page 36
Art Unit: 3992

     Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.


/Michael J. Yigdall/                              Conferees:
Primary Examiner, Art Unit 3992
                                                  /Stephen J Ralis/
                                                  Primary Examiner, Art Unit 3992

                                                  /Sudhanshu C Pathak/
                                                  Supervisory Patent Examiner, Art Unit 3992