# EXHIBIT 6

EX PARTE RE-EXAMINATION                                    Docket No. 106842803600

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Ex Parte Re-Examination of:
U.S. Patent No. 7,844,915

| | |
|---|---|
| Control No.: 90/012,332 | Confirmation No.: 5963 |
| Filed: May 30, 2012 | Art Unit: 3992 |
| For:  APPLICATION PROGRAMMING INTERFACES FOR SCROLLING OPERATIONS | Examiner: M. J. Yigdall |

### DECLARATION OF JASON NIEH, PH.D., UNDER 37 C.F.R. § 1.132

MS Ex Parte Reexam
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### DECLARATION OF JASON NIEH, PH.D.

I, Jason Nieh, hereby declare as follows:

1. I am an Associate Professor of Computer Science at Columbia University and Co-Director of the Software Systems Laboratory at Columbia University.

2. In 1999, I received a Ph.D. in Electrical Engineering from Stanford University.  I received an M.S. in Electrical Engineering from Stanford University in 1990 and a B.S. in Electrical Engineering from the Massachusetts Institute of Technology in 1989.

3. As a consultant to Apple Inc., the owner of U.S. Patent No. 7,844,915 ("the '915 Patent"), I am being compensated at my customary consulting rate for my work in connection with this reexamination.  My compensation is not based in any way on the outcome of this reexamination.

4. I have read and understand the technical content of the '915 Patent, the Office Action dated December 19, 2012 in Reexamination Control No. 90/012,332; and each of the prior-art

Control No.: 90/012,332                                2                                Docket No. 106842803600

references cited in the Office Action, including Hillis, Nomura, Rubine, Lira, and Makus. I have been informed that the '915 Patent was filed on January 7, 2007. I also have been informed that this date is the presumptive invention date for the claimed subject matter in the '915 Patent.

5.      I believe that I am a person of ordinary skill in the art for purposes of the '915 Patent. I therefore believe that I am qualified to offer this declaration as to how such a person would have interpreted the '915 Patent and the prior art on or about the invention date of the '915 Patent. Unless otherwise indicated, the statements contained in this declaration are based on my personal knowledge, including knowledge of the state of the art and the perspective of a person of ordinary skill in the art at the time of filing of the subject matter of the '915 Patent.

<u>The state of the art on or about the date of invention</u>

6.      In 2006 and early 2007, my research at Columbia was focused in software systems across a broad range of areas, including mobile computing and operating systems. My teaching and research interests at Columbia University included research on mobile computing platforms such as touch-screen mobile devices.

7.      As of January 7, 2007, industry and academic researchers were working on gesture interaction in mobile devices. But there was no consensus on how to disambiguate touch input data to distinguish between scroll and gesture operations.

8.      Mobile devices had limitations, such as display size, user interface, and processing capability that limited the use of these devices. Devices generally lacked a primarily touch-driven interface that provided rich functionality without consuming hardware space with buttons or software space with icons. It was a challenge to distinguish a variety of user inputs, such as scrolling versus zooming.

9.      Due to this challenge, touch-based mobile devices employing both scrolling and multi-touch gestures were not commercially successful.

sf-3256868

Control No.: 90/012,332 3 Docket No. 106842803600

The claimed subject matter of the '915 Patent and the Apple iPhone

10. The '915 Patent relates to an electronic device that provides a software framework that implements scrolling and multi-touch gestures using a touch-sensitive display integrated into the device itself. In particular, the '915 Patent employs event objects based on user input onto a touch-sensitive display integrated with a device.

11. The claims of the '915 Patent recite the inventive method. The device receives a user input on a touch-sensitive display, which creates an event object in response to that input. The input is disambiguated by distinguishing between a single input point and two or more input points. If the touch input is determined to be a single input point, the event object invokes a scroll operation. If the touch input is determined to be two or more input points, the event object invokes a gesture operation.

12. The device then issues a scroll or gesture call based on the determination. If a scroll call is issued, the device responds by scrolling a window having a view associated with the event object. If a gesture call is issued, the device responds by changing a view associated with the event object based on a plurality of input points. Changing the view may involve scaling the view associated with the event object by zooming in or zooming out based on user input.

13. I recall the announcement of the first-generation iPhone in 2007 and its public release in the summer of 2007. I also have firsthand experience using the device. It is my understanding that the iPhone practices the claimed subject matter of the '915 Patent. Moreover, I believe that the patented feature contributed to the widely acclaimed usability and intuitiveness of the iPhone's touch-driven interface.

The Nomura Reference & Rubine

14. Nomura is a Japanese patent application that was translated into English. Nomura discloses a unit that can scroll and zoom on a map display. Nomura describes, in detail, a specific algorithm used to distinguish between scrolling and zooming.

sf-3256868

Control No.: 90/012,332 4 Docket No. 106842803600

15.     Based on my review of Nomura's algorithm, Nomura does not disclose "distinguishing between a single input point . . . and two or more input points." The algorithm disclosed in Nomura <u>does not</u> distinguish between a single input point and two or more input points; rather, the algorithm only distinguishes precisely between two input points and <u>not</u> two input points.

16.     I analyzed Nomura's flow charts to see how the disclosed unit determines whether there is a scroll or gesture. To a skilled artisan, step S110 of Figure 34 is the only step in Nomura that uses the number of input points to determine whether there is a scroll or gesture. In Step S110, there is a determination of whether precisely *two* input points are detected. *See id.* at ¶¶ 0159-0160, Fig. 34. If two input points are detected (and other criteria are met), a gesture operation (*e.g.*, zoom-in) may occur. If exactly two input points are <u>not</u> detected, the number of inputs is *not* tested again, but a scroll operation instead may occur as the default condition.

17.     In Nomura, the processing of a single input point is handled the same way as the processing of three or more input points, assuming other conditions (*e.g.*, movement and pressure) are the same. In other words, the device described in Nomura tests for precisely a two input point contact, but not a one input point contact. Gestures involving three or more input points (assuming all other conditions are met) would result in the same scroll operations as gestures involving a single input point. Put another way, the method described in Nomura can determine if an input is "not two," but <u>cannot</u> distinguish if the input is a single point of contact.

18.     Nomura's disclosure of distinguishing may be motivated by a practical difference in the preferred default condition. As Nomura focuses on map processing applications, a skilled artisan may want the unit to default to the more common situation (scrolling) for efficiency. A skilled artisan would thus specifically test for and identify the more unusual action (zoom-in). Thus, the skilled artisan may test for the two finger zoom-in rather than the default scroll. In addition, accidentally zooming-in and zooming-out a map unexpectedly is more disruptive to the user, and thus it would be more important for Nomura to specifically identify this two-finger gesture. The default action (not two input points) would be scrolling, which is far less disruptive to a user.

sf-3256868

Control No.: 90/012,332                                5                              Docket No. 106842803600

19.     Nomura does not disclose the use of event objects.  In fact, Nomura does not disclose substantial details on any software architecture or framework.  The algorithm of Nomura Fig. 34 need not be implemented using event objects.  For example, the algorithm could be implemented using assembly code without any higher-level programming abstractions.  Similarly, Nomura could be implemented with procedural programming and/or a message-passing mechanism without the use of event objects.

20.     In analyzing Rubine, the Examiner appears to conflate objects and gestures, which appear in separate and distinct embodiments of Rubine.  Rubine mentions three distinct applications: GDP, GSCORE, and MDP.  The MDP application does not encompass creating an event object. GDP and GSCORE, on the other hand, are built with the GRANDMA system, but only include single-path gestures.  Thus, GDP and GSCORE do not include multi-path gestures.  Accordingly, Rubine does not disclose how to create an event object in response to multiple inputs.

21.     After reviewing Nomura and Rubine, I do not believe a skilled artisan would have been motivated to combine Nomura and Rubine.  Nomura was directed to a specialized device that consists of a closed hardware and software system.  In contrast, Rubine's GRANDMA system was intended to be general purpose.  Such a system may be more flexible, as suggested by the Examiner in support of motivation to combine, but that flexibility comes with a cost, including a performance cost.  Adding Rubine's GRANDMA abstractions and event hierarchy to Nomura would likely reduce the device's speed.  As Rubine itself acknowledges, the GRANDMA system "requires a great deal of mechanism" and thus cannot be implemented as "cheaply and quickly" as Rubine's own non-object oriented MDP system.

22.     The Examiner's cited "flexibility" in Rubine refers to the theoretical possibility that the GRANDMA system might be able to "support many different input devices simultaneously." *See* Rubine at 121, lines 13-16.  Similarly, the statement that GRANDMA's "Event hierarchy imposes structure on events without imposing device dependencies," further quoted by the Examiner in support of motivation to combine, *see* OA at 19, 23 & 26, also refers to GRANDMA's alleged potential to simultaneously utilize different types of peripheral hardware

sf-3256868

Control No.: 90/012,332                             6                        Docket No. 106842803600

input. But Nomura explicitly discloses that its device does not need a variety of input hardware, enabling a more compact and specialized device. The value of simultaneous input peripherals in the flexible computer system of Rubine would not benefit the device of Nomura, which is intended to be a specialized electronic book. Thus, a person of ordinary skill would not have been motivated to combine Nomura with Rubine.

23. Nomura does not disclose using a "drag user input for a certain time period" in determining whether to scroll or gesture. While Nomura may analyze motion, contact surface area, and contact pressure to determine whether to scroll, analyzing these criteria, including motion, is not an analysis of a drag input. For example, Nomura does *not* use *time* or *duration* in its determination of whether to scroll or gesture.

Hillis

24. Hillis is a United States patent. Hillis discloses a system that employs a "gesture dictionary," that includes both panning and zooming-in.

25. Hillis discloses implementing panning and zooming in a device through gesture matching. Specifically, Hillis discloses matching input to a dictionary of gestures. Hillis does not disclose that its gesture matching involves distinguishing one input point from two or more input points. The gesture matching-based panning and zooming of Hillis need not involve distinguishing the number of input points. Even if the number of inputs were used, Hillis could be implemented by distinguishing precisely two input points, as seen in Nomura.

26. Hillis does not disclose the use of event objects. In fact, Hillis does not disclose substantial detail on any software architecture or framework. Hillis describes generating a "machine readable output," but that is not equivalent to an event object. "Machine readable output" is a non-specific term that does not require any higher-level programming abstractions, and certainly not event objects in particular. As with Nomura, Hillis could be implemented using assembly code without any higher-level programming abstractions. Similarly, Hillis could be

implemented with procedural programming and/or a message-passing mechanism without the use of event objects.

27.     Hillis also fails to disclose other features of the software that involve event objects recited in the '915 Patent, such as a "view associated with an event object." For example, Hillis describes "pan[ning] the imagery," but that is not equivalent to scrolling a view associated with an event object. At most, it discloses scrolling; it does not disclose a "view associated with an event object."

28.     The system depicted in Hillis FIG. 1A does not disclose a touch-sensitive display. That system projects images from a projector onto a "table." The table surface is *not* a touch-sensitive display because, even if the table surface is considered touch-sensitive, it is not a display. For example, projecting an image onto a wall does not somehow make that wall a display.

29.     The system depicted in Hillis FIG. 1A also does not disclose a touch-sensitive display integrated with the device. At least the projector and table are separate from each other, as illustrated in FIG. 1A.

30.     The system depicted in Hillis FIG. 1A is shown as having three components: a touch-sensitive table, a projector, and a computer. Of the three, the computer is the most common component. Modifying the system depicted in Hillis FIG. 1A by integrating all three components into a single unit would remove the flexibility of using any suitable, available computer (*e.g.*, a general purpose computer).

31.     Hillis does not disclose using a "drag user input for a certain time period" in determining whether to scroll or gesture. Hillis discloses recording in "position history" the variation over time of how each contact region moves or changes shape. But Hillis fails to disclose how the position history is used in carrying out matching using a gesture dictionary. Hillis does not disclose using input *duration* in determining whether to scroll or gesture.

        I, Jason Nieh, do hereby state and declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true,

Control No.: 90/012,332 8 Docket No. 106842803600

and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under §1001 of Title 18 of the United States Code.

Dated: March 18, 2013

Jason Nieh

sf-3256868