# EXHIBIT 19

Docket No.: 106842803600 (P4895USREX1)

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patentee:  **Apple Inc.**

Control No.: **90/012,332**

Filing Date: **May 30, 2012**

Patent No. : **7,844,915**

Art Unit:  **3992**

Confirmation No.: **5963**

Examiner:  **Michael J. Yigdall**

Appeal No.:  **2014-007899**

Title: **Application Programming Interfaces For Scrolling Operations**

<u>**Mail Stop *Ex Parte* Reexam**</u>
Central Reexamination Unit
Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA  22313-1450

## <u>Request for Rehearing</u>

Further to the Board of Patent Appeals and Interferences Decision of December 9, 2014, Appellant submits this Request for Rehearing.  Pursuant to 37 C.F.R. § 41.52(a)(1), appellants have two months from the filing date of the original decision of the Board to timely file a Request for Rehearing.  The Commissioner is hereby authorized to charge the fee under 37 CFR 41.20(b)(2) to Deposit Account 03-1952.  The Commissioner is hereby authorized to charge any fee deficiency or credit any overpayments to Deposit Account 03-1952.

Respectfully submitted,

Dated:  February 9, 2015

*/Peter J. Yim/*
Peter J. Yim
Registration No. 44,417
Attorney for Appellant

Docket No.: 106842803600 (P4895USREX1)

## I.    INTRODUCTION

In affirming the Examiner's rejections of claims 1-21 of U.S. Patent No. 7,844,915 in *ex parte* reexamination Control No. 90/012,332, the Patent Trial and Appeal Board misapprehended key claim limitations.  Upon rehearing, the claim rejections affirmed by the Board should be reversed for several reasons.

***First***, in adopting the Examiner's construction of the "distinguishing" limitation of independent claims 1, 8, and 15, the Board adopted a construction that is inconsistent with both the ordinary meaning of the claims and the specification. The "distinguishing" limitation, when read in the context of the entire claims and in light of the specification, requires a dichotomous test distinguishing between one input point and all input points greater than one.  The Board did not dispute that the Nomura and Hillis references, alone or in combination, fail to disclose the "distinguishing" limitation under Appellant's proposed construction.

***Second***, in adopting the Examiner's conclusion that the "rubberbanding" limitation of dependent claims 2, 9, and 16 was taught by the Lira reference, the Board misapprehended both the prior art and the Examiner's findings regarding that prior art.  The "rubberbanding" limitation constrains a user's ability to scroll beyond the boundaries of a content region by a preset distance.  When the user reaches that threshold, the content snaps back into alignment with the display.  The Board's sole reason for finding that Lira discloses a similar method was the

Board's erroneous belief—contradicted by the Examiner himself—that Lira limited the user's ability to scroll beyond a predetermined threshold.

**Third**, in adopting the Examiner's conclusion that the "drag user input" limitation of dependent claims 5, 12, and 19 was taught by both the Nomura and Hillis references, the Board overlooked key claim limitations. The "drag user input" limitation determines whether to invoke a scroll or a gesture operation based on a drag user input that lasts for "a certain period of time." However, as the Examiner's own findings reveal, Nomura's determination of whether to invoke a scroll or gesture operation is based solely on the number of user inputs, and Hillis does not disclose using any defined time periods.

Rehearing is necessary to correct these errors or, at a minimum, to remand for further development of the record and reconsideration by the Examiner.

## II. THE BOARD MISAPPREHENDED THE "DISTINGUISHING" CLAIM LIMITATION

### A. The Board's Construction Is Inconsistent With The Ordinary Meaning And Structure Of The Claim

The Board erroneously adopted the Examiner's conclusion that "the claimed gesture operation requiring either two or more input points is met by the two finger input disclosed by Nomura and Hillis." (Board's December 9, 2014, Decision ("Decision") 7.) In doing so, the Board adopted the Examiner's flawed focus on the phrase "two or more" and ignored the structure and context of the actual claim

language.  The phrase "two or more" is embedded within a much more extensive

claim limitation and cannot be viewed in isolation.  All independent claims require:

> **<u>determining</u>** whether the event object invokes a scroll or gesture
> operation by **<u>distinguishing between</u>** *a single input point* applied to
> the touch-sensitive display that is interpreted as the scroll operation
> **<u>and</u>** *two or more input points* applied to the touch-sensitive display
> that are interpreted as the gesture operation

 ('915 patent, claims 1, 8, and 15 (emphases added).)

Contrary to the Board's holding, the actual claim language does not recite a

"gesture operation requiring **<u>either</u>** two or more input points."  (Decision 7

(emphasis added).)  In reaching this erroneous conclusion, the Board

misapprehended Federal Circuit precedent teaching that "the context in which a

term is used in the asserted claim can be highly instructive."  *Phillips v. AWH*

*Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  The Board also ignored

the MPEP's dictate that the Examiner "may not dissect a claimed invention into

discrete elements and then evaluate the elements in isolation."  MPEP

§ 2103(I)(C).  (*See also* Appeal Br. 11.)

In particular, the Board erred when it dissected the invention into discrete

elements of "two" and "more [than two]," and further erred when it rearranged

those elements and added an "either-or" construct to the claim where none exists.

The Board improperly altered the meaning of the claim language by ignoring the

context of the claim, which focuses on the step of "determining" whether event

objects are one of two types ("scroll" and "gesture") by the further step of

"distinguishing" between two types of input ("a single input point" and "two or

more input points").  The Board's reconstructed claim incorrectly allows for an

unfounded "either-or" choice between gestures of two points and gestures of more

than two points.  (*See* Appeal Br. 12; Reply Br. 11-12.)  But the actual claim

language does not provide a choice between gestures of two points and gestures of

more than two points.  Rather, the claim language establishes a dichotomy between

"scroll operations" and "gesture operations" in which every "event object" must be

determined to be either a scroll or a gesture.  (*See* Appeal Br. 14.)  This

determination is performed by a dichotomous (or "atomic") test which

distinguishes between a single input point on the one hand, and more than one

input point on the other hand.  (*See id*. 14-15; Reply Br. 12.)  For the

"determining" step to be met, every event object must be identified as a scroll

operation or a gesture operation depending upon the outcome of the

"distinguishing" step.

The Board's affirmance of the Examiner's conclusion that prior art which

distinguishes between a single input point and two input points—but indisputably

***does not*** distinguish between a single input point and more than two input points—

misapprehends the dichotomous nature of the claim language and is contrary to

Federal Circuit precedent.  The claims cannot be met by prior art that practices

only a portion of the "determining" step, but never performs the entire step.

Although in certain circumstances "an accused product that sometimes, but not

always, embodies a claimed method nonetheless infringes," *Bell Communications*

*Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622-623 (Fed. Cir.

1995), where a claim step must be performed to accomplish an entire method, a

device that does not ***always*** perform that step ***never*** accomplishes the entire

method and ***cannot*** meet the claim. *See Ferguson Beauregard/Logic Controls Div.*

*of Dover Res. Inc. v. Mega Sys. LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) ("In

order to accomplish the entire method of claims 6 and 35 of the '048 patent, an

adjustment must always be made. Thus, if Ferguson's device does not always

make a correction, as the district court found it did not … then it never

accomplishes the entire method of the claimed invention."); *see also Apple Inc. v.*

*Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 7036077, at *36-37 (N.D.

Cal. Dec. 2, 2011), *aff'd in part, vacated in part*, 678 F.3d 1314 (Fed. Cir. 2012)

(discussing *Bell* and *Ferguson* and holding that a method claim requiring

"snapping back" in response to scrolling past the edge of an electronic document is

not anticipated by a prior art reference that "snaps back" in response to scrolling

past ***some*** edges, but ***not all*** edges, of the electronic document).

Because each "event object" must be determined to be a scroll operation or a

gesture operation to practice the claims, the distinguishing step must differentiate

between all event objects that are interpreted as a "scroll" (a single input point) and all event objects that are interpreted as a "gesture" (more than one input point). The Board misapprehended the law in finding anticipation on the basis that "any number of input points equal to two or more is interpreted as a gesture." (Decision 7.) As in *Ferguson*, anticipation requires not just that some number of input points equal to two or more is interpreted as a gesture, but that ***all*** input points equal to two or more are interpreted as a gesture. Just as the prior art device that did not "snap-back" after scrolling off of every edge did not anticipate in *Apple*, the prior art references applied by the Examiner, which do not distinguish between one input point and three input points, do not anticipate the claims of the '915 patent.

The ordinary meaning of the claim term "between" further confirms the dichotomous nature of the "distinguishing" limitation—it requires a distinction between all event objects associated with "a single input point" and all event objects associated with "two or more input points." The use of the word "between" indicates that the "distinguishing" step differentiates ***two types*** of event objects (a "single input point" scroll and a "two or more input points" gesture) in a one-to-one relationship. The claim does not use the word "among" to indicate a collective relationship, or multiple one-to-one relationships, among ***three types*** of event objects (a single input point, two input points, and more than two input points). *See The Chicago Manual of Style* 269 (16th ed. 2010) ("Between indicates

7

one-to-one relationships {between you and me}.  Among indicates undefined or

collective relationships {honor among thieves}.  Between has long been

recognized as being perfectly appropriate for more than two objects if multiple

one-to-one relationships are understood from the context {trade between members

of the European Union}.").  (*See also* Reply Br. 11 (citing *In re Hyatt*, 708 F.2d

712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts

of English grammar.")).)

## B.    The Board's Construction Is Inconsistent With The Specification

Although the Patent and Trademark Office must give claims "their broadest

reasonable construction," that construction must still be "consistent with the

specification."  *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir.

2007).  The specification describes a single, dichotomous test for distinguishing

between "one input point" and "two or more input points."  It ***does not*** disclose

multiple tests for distinguishing among one input point, two input points, and more

than two input points:

> The method 100 further includes determining whether the event object
> invokes a scroll or gesture operation at block 106.  For example, a single
> touch that drags a distance across a display of the device may be interpreted
> as a scroll operation.  In one embodiment, a two or more finger touch of the
> display may be interpreted as a gesture operation.

('915 patent, 6:38-43; *see also* Appeal Br. 17; Reply Br. 7.)  Throughout the

specification, every instance of an event with two input points or more than two

8

Docket No.: 106842803600 (P4895USREX1)

input points is identified as a "gesture" rather than a "scroll."  (*See* '915 patent, 1:45-46 ("Gesturing is a type of user input with two or more input points"); *id.* 5:45-48 ("The gesture operations also include performing a rotation transform to rotate an image or view in response to a user input having two or more input points."); *id.* 7:4-8 ("[G]esture operations include responding to at least one gesture call, if issued, by rotating a view associated with the event object based on receiving a plurality of input points in the form of the user input.").)  The Board's construction of the "distinguishing" limitation, which would allow for three input points to be identified as a "scroll" rather than a "gesture," is inconsistent with the claim language and the specification, and should be rejected.  *See In re Imes*, ___ F.3d ___, No. 2014-1206, 2015 WL 374880 (Fed. Cir. Jan 29, 2015) (rejecting an overly broad construction applied by the Board under the broadest reasonable interpretation standard where the Board's construction was inconsistent with the specification).

The Board's adoption of the Examiner's conclusion that "the claimed gesture operation requiring either two or more input points is met by the two finger input disclosed by Nomura and Hillis" (Decision 7) is therefore inconsistent with the specification.  The claimed invention requires all event objects with two or more inputs points to be determined to be gestures.

Because the claim language and specification confirm the dichotomous nature of the "distinguishing" limitation, requiring distinguishing between one input point and more than one input point, the Board should order rehearing and reverse the Examiner's claim rejections.

## III. THE BOARD MISAPPREHENDED THE "RUBBERBANDING" LIMITATION OF DEPENDENT CLAIMS 2, 9, AND 16

Dependent claims 2, 9, and 16 of the '915 patent all require "rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll." When webpages and other content are viewed on mobile devices, users often only see a portion of the content at a time and may lose track of where the content starts and stops as they navigate around. As explained in the specification of the '915 patent, the "rubberbanding" limitation is a method for solving this problem whereby when the user scrolls beyond the edge of the content by a predetermined distance, the content—like a rubberband—snaps *back* until the edge of the content is realigned with the display area:

> Rubberbanding a scrolled region according to the method 300 occurs *by a predetermined maximum displacement value* when the scrolled region exceeds a display edge of a display of a device based on the scroll. If a user scrolls content of the display making a region past the edge of the content visible in the display, then *the displacement value limits the maximum amount for the region outside the content*. At the end of the scroll, the content *slides back* making the region outside of the

10

Docket No.: 106842803600 (P4895USREX1)

content no longer visible on the display.

('915 patent, 7:59-67 (emphases added).)

For example, as shown in Figures 6A-6D of the '915 patent, if a user scrolling down through a list of emails scrolls beyond the top edge of the content (*i.e.*, the email list), the scrolling will stop after the user exceeds the edge of the content by a predefined distance.  The content will then rebound, in the opposite direction of the scroll, until the area outside the content disappears and the edge of the content is aligned with the display:

11



('915 patent, Figs. 6A-6C (annotations added); *id.* 8:65-9:46.)

The Examiner's conclusion that Lira discloses this "rubberbanding"

limitation overlooks several key differences between the limitation and the prior

art, and the Board's affirmance of that conclusion misapprehends the Examiner's

position.

12

*First*, Lira does not disclose "limit[ing] the maximum amount for the region outside the content." ('915 patent, 7:64-65.)  In fact, Lira does not discuss "the region outside the content" at all.  Unlike the "rubberbanding" limitation, Lira does not address issues that arise when a user navigates beyond content, but rather issues that arise when a user navigates *within* content.  Specifically, Lira describes reconfiguring content (*i.e.*, webpages) into columns for easier viewing on small screens.  (Lira, 13:14-17, 14:29-15:5, 15:18-21.)  Lira recognizes that when navigating within a reconfigured webpage a "user may inadvertently navigate to a position where only a portion of a column or image is visible in the PDA window." (*Id.* 11:29-12:2.)  Lira's solution to this problem is "to snap [a column] into alignment with the display window" when the user stops scrolling, regardless of whether the user is near the edge of the content or not.  (*Id.* 15:18-21, Fig. 14B.)

*Second*, there is no "predetermined maximum displacement" in Lira that prevents additional scrolling once a threshold is met.  ('915 patent, 7:60.)  The Board reaffirmed the Examiner's conclusion that Lira discloses the "rubberbanding" limitation solely based on the Examiner's alleged finding that "Lira describes a similar function [to the 'rubberbanding' disclosed in the '915 patent] *by limiting the user's scrolling to a predetermined threshold*." (Decision 10-11 (emphasis added).)  But the Examiner did *not* conclude that Lira *limits* the user's scrolling.  To the contrary, the Examiner was explicit that the user's input in

Docket No.: 106842803600 (P4895USREX1)

Lira is **unrestricted**; the user has the option of either "exceed[ing] the threshold" or "not exceed[ing] the threshold." (Answer 30.) Moreover, the content will "snap" in Lira regardless of whether the threshold is met. (*Id*.; Lira, 15:23-28.) The user's position in relation to the threshold only determines in which direction the content "snaps." (Lira, 15:23-28.)

**Finally**, when the threshold *is* met—as is required by the "rubberbanding" limitation—the result achieved by Lira is the **opposite** of the result disclosed by the '915 patent. In the '915 patent, when the user tries to scroll beyond the predetermined maximum placement, the content slides **back** (*i.e.*, in the opposite direction as the scrolling) to reveal the previously viewed content. In Lira, when the user scrolls beyond the threshold the content snaps **in the same direction as the scrolling** and **reveals a new content area** (*i.e.*, an adjacent column). (Lira, 15:18-29, Fig. 14B; *see also* Answer 30 ("When the user's scrolling exceeds the threshold and '[moves] beyond the boundary' of the column, the display window 1205 is snapped to the next nearest column.").)

## IV.  THE BOARD MISAPPREHENDED THE "DRAG USER INPUT" LIMITATION OF DEPENDENT CLAIMS 5, 12, AND 19

Dependent claims 5, 12, and 19 of the '915 patent recite an additional limitation whereby "determining whether the event object invokes a scroll or gesture operation is based on receiving a drag user input for a certain time period."

### A.    Nomura Does Not Use Drag User Input To Determine Whether To Invoke A Scroll Or A Gesture

The Board adopted the Examiner's conclusion that Nomura teaches the "drag user input" limitation.  (Decision 9.)  However, this conclusion overlooked the fact that—as the Examiner conceded—Nomura determines whether to invoke a scroll or gesture operation *before* it ever assesses input movement; that determination therefore cannot be *based on* a drag user input.

The Examiner expressly "accepted Dr. Nieh's explanation of the algorithm shown in Figures 33, 34 and 37 of the Nomura reference."  (Answer 7.)  According to that explanation, S110 is the "step in Nomura that … determine[s] whether there is a scroll or a gesture."  (Declaration of Jason Nieh, March 18, 2013, ¶ 16.)  At step S110, the system determines whether "there [is] contact with two items." (Nomura, Fig. 34.)  If contact with two items is detected, the system determines that it should proceed down the "Y" branch towards a gesture operation.  (*Id*.)  If contact with two items is not detected, the system determines it should proceed down the "N" branch towards a scroll operation.  (*Id*.)  It is not until *after* this determination is made that the system checks to see whether the input is moving. For example, if the system does not detect contact with two input points, it proceeds towards a scroll gesture and reaches step S140, where it determines whether "the contact point [is] moving."  (*Id*.)  Thus, the system does not even attempt to decide whether there is in fact a drag user input until *after* it has

15

determined whether to invoke a scroll or gesture operation:

Fig. 34



[Second column]
(A)
S70.  Is there contact on an icon on the toolbar?
S90.  Is there contact on the input mark?
S110.  Is there contact with two items?
S140.  Is the contact point moving?
S150.  Is contact pressure and/or contact surface area above specified values?
S160.  Is the display a map image?
S170.  Scroll processing
End

(*Id.* (annotations added).)

Docket No.: 106842803600 (P4895USREX1)

The Board also misapprehended what it described as the "scroll and zoom-out processing shown in Figure 37" as disclosing the "drag user input" limitation. (Decision 9.)  But Figure 37 does not disclose utilizing a drag user input to select between scrolling or gesturing.  In fact, Figure 37 does not involve scrolling at all; the Nomura system only reaches Figure 37 *after* it determines that it will invoke a gesture operation based on the presence of two inputs (step S110) and determines that "the display [is] a map image" (step S120).  (Nomura, Fig. 34.)  If both those conditions are met the system proceeds to "[m]ap operation processing" (S130) which is shown in Figure 37.  (*Id.*, Fig. 34; *id.* ¶ 170 ("Fig. 37 is a flow chart for describing detailed processing content of map operation processing (step S130 of Fig. 34).").)

17

sf-3502849

Docket No.: 106842803600 (P4895USREX1)

Fig. 34



[Second column]
(A)
S70.  Is there contact on an icon on the toolbar?
S90.  Is there contact on the input mark?
S110.  Is there contact with two items?
S140.  Is the contact point moving?
S150.  Is contact pressure and/or contact surface area above specified values?
S160.  Is the display a map image?
S170.  Scroll processing
End

[Third column]
S80.   Various icon processing
S100.  Input mark operation processing
S120.  Is the display a map image?
S130.  Map operation processing
End
(B)

(*Id.*, Fig. 34 (annotations added).)

Thus, by the time the system reaches the steps shown in Figure 37, it has already decided to invoke a gesture operation.  At Figure 37, the system then distinguishes ***among gestures***—zoom-in, zoom-out, and rotate—based on the

18

movement of the two inputs.  (*Id*. Fig. 37, ¶¶ 170-173.)  Thus, Figure 37 does not teach "determining whether to invoke a scroll or gesture operation … based on a drag user input."[1]

### B.   Hillis Does Not Disclose Using Drag User Input That Lasts For A Certain Period Of Time

The Board also adopted the Examiner's conclusion that Hillis teaches the "drag user input" limitation.  (Decision 10.)  However, in reaching that conclusion the Examiner misapprehended the claim limitation.  The Examiner found that "none of the claims recites that 'it is the duration of a drag above a certain time period that distinguishes a scroll from a gesture'" (July 26, 2013, Final Office Action 17), but that is precisely what each of dependent claims 5, 12, and 19 requires:  "determining whether to invoke a scroll or a gesture based on a drag user input *for a certain time period*."  The Examiner's interpretation completely, and erroneously, reads the term "for a certain time period" out of the claims.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").

---

[1] Even if Nomura disclosed determining whether to invoke a scroll or gesture operation based on a drag user input (which it does not), the Board also misapprehended Nomura when it concluded that Figure 37 "teach[es] the 'certain time period' limitations."  (Decision 9.)  Figure 37 only evaluates the *distance* between two input points, not the duration of contact.  (*See* Nomura, Fig. 37 ("S310. Calculate change in distance between two points[.]  S320.  Did the distance between the two points become larger?  S340.  Did the distance between the two points get reduced?").)

Docket No.: 106842803600 (P4895USREX1)

When all claim terms are given full effect, it is apparent that Hillis does not teach the "drag user input" limitation disclosed by the '915 patent because Hillis does not use drag user input that lasts "for a certain period of time."  Hillis discloses comparing user input to a dictionary of predefined gestures.  (Hillis, 7:46-55.)  If the user input "matches a predetermined pattern," the system executes the gesture associated with that pattern.  (*Id*.)  To determine whether there is a match, Hillis evaluates the "position, size, movement, velocity, and/or force" of the user's input.  (*Id*.)  While some of these factors have a time component (*e.g.*, velocity is the change in position over time), Hillis does not disclose invoking an operation based on receiving input for ***a certain period*** of time.

## V.    CONCLUSION

On at least the grounds identified here, Appellant respectfully requests a rehearing of these issues before the Board for an appropriate analysis of the record evidence, applying the correct Federal Circuit precedent.  Under the applicable law, the claim rejections should be reversed or, at a minimum, remanded for further consideration.

Respectfully submitted,

Dated:  February 9, 2015

/Peter J. Yim/
Peter J. Yim
Registration No. 44,417
Attorney for Appellant

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000 (telephone)
(415) 268-7522 (facsimile)

21