# EXHIBIT 20

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| U.S. Patent No. D618,677 | § Attorney Docket No.:  416629US |
| | § |
| Issued:  June 29, 2010 | § |
| | § |
| | § |
| Filed:  November 18, 2008 | § |
| | § |
| For: Electronic Device | § |

### REQUEST FOR *EX PARTE* REEXAMINATION OF
### U.S. DESIGN PATENT NO. D618,677

Mail Stop *Ex Parte* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Commissioner:

Pursuant to the provisions of 35 U.S.C. § 302 and 37 C.F.R. § 1.510 et seq., the undersigned, on behalf of an anonymous Requester, requests *ex parte* patent reexamination of the claim of U.S. Design Patent No. D618,677 ("'677 patent," Exhibit A).

The '677 patent identifies Apple, Inc. ("Apple" or "Patent Owner") as the assignee of the '677 patent.  An assignment search does not list any recorded assignment for the '677 patent. However, the original priority application (now, U.S. Patent No. D558,758) was assigned to the patent owner by assignments recorded at Reel 019000, Frame 0383 and Reel 019095, Frame 0193.  No later assignments have been found.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

## Ex Parte Patent Reexamination Filing Requirements

Pursuant to 37 C.F.R. § 1.510(b)(1), statements pointing out at least one substantial new question of patentability based on non-cumulative prior art patents and printed publications for the claim of the '677 patent are provided in Section IV of this Request. These prior art references were not discussed on the record, or in any way applied to reject the claim of the '677 patent during prosecution.

Pursuant to 37 C.F.R. § 1.510(b)(2), reexamination of the '677 patent is requested, and a detailed explanation of the pertinency and manner of applying the cited prior art to the claim for which reexamination is requested is provided in Section V of this Request.

Pursuant to 37 C.F.R. § 1.510(b)(3), copies of every patent or printed publication relied upon or referred to in the statement pointing out each substantial new question of patentability or in the detailed explanation of the pertinency and manner of applying the cited prior art are provided as Exhibits C-E of this Request.

Pursuant to 37 C.F.R. §1.510(b)(4), a copy of the '677 patent is provided as Exhibit A of this Request along with a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent.

Pursuant to 37 C.F.R. § 1.510(b)(5), the attached Certificate of Service indicates that a copy of this Request, in its entirety, has been served in its entirety on Patent Owner at the following address of the attorney of record for Patent Owner, in accordance with 37 C.F.R. § 1.33(c):

> STERNE KESSLER GOLDSTEIN & FOX P.L.L.C.
>
> 1100 New York Avenue, N.W.
>
> Washington, D.C. 20005

Also submitted herewith is the fee set forth in 37 C.F.R. § 1.20(c)(1).

Pursuant to 37 C.F.R. § 1.510(b)(6), Requester hereby certifies that neither the statutory estoppel provisions of 35 U.S.C. § 315(e)(1) nor 35 U.S.C. § 325(e)(1) prohibit Requester from filing this *ex parte* patent reexamination request.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

## TABLE OF CONTENTS

Ex Parte Reexamination Filing Requirements........................................................................ii

Table of Exhibits ....................................................................................................................v

I.    CITATION OF PRIOR ART PATENTS AND PRINTED PUBLICATIONS
      RELIED UPON IN REQUEST FOR REEXAMINATION..........................................1

II.   CLAIM CONSTRUCTION ........................................................................................1

III.  DISCLOSURE OF RELATED PROCEEDINGS........................................................2

IV.   OVERVIEW OF THE '677 PATENT ........................................................................2

      A.    Background of the '677 Patent .......................................................................2

      B.    Prosecution History of the '677 Patent...........................................................3

V.    STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF
      PATENTABILITY FOR THE CHALLENGED CLAIM.............................................5

      A.    Subject Matter, Which if Taught by Prior Art Patents or Printed
            Publications, Raises a Significant New Question of Patentability for
            the Challenged Claim .....................................................................................5

      B.    Law of Obviousness for Design Patents...........................................................6

      C.    Japan Patent Number JP D1241638 Raises a Substantial New Question
            of Patentability for the Claim of the '677 Patent................................................6

      D.    Japan Patent Number JP D1009317 Raises a Substantial New Question
            of Patentability for the Claim of the '677 Patent................................................9

      E.    Japan Patent Number JP D1204221 Raises a Substantial New Question
            of Patentability for the Claim of the '677 Patent..............................................11

VI.   DETAILED EXPLANATION OF THE PERTINENCE AND MANNER OF
      APPLYING THE PRIOR ART REFERENCES TO THE CLAIM FOR
      WHICH REEXAMINATION IS REQUESTED .......................................................13

      A.    Japan Patent Number JP D1241638 In View of Japan Patent Number
            JP D1204221 Renders the Claim of the '677 Patent Unpatentable
            Under 35 U.S.C. § 103(a) ..............................................................................13

      B.    Japan Patent Number JP D1009317 In View of Japan Patent Number

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

JP D1204221 Renders the Claim of the '677 Patent Unpatentable
Under 35 U.S.C. § 103(a) ...............................................................................16

C.      Japan Patent Number JP D1204221 In View of Japan Patent Number
JP D1241638 Renders the Claim of the '677 Patent Unpatentable
Under 35 U.S.C. § 103(a) ...............................................................................20

VII.    CONCLUSION ...............................................................................................23

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

## TABLE OF EXHIBITS

Exhibit A      U.S. Patent No. D618,677  (for reexamination)

Exhibit B      Prosecution history of U.S. Patent No. D618,677

Exhibit C      Japan Patent Number JP D1241638

Exhibit D      Japan Patent Number JP D1204221

Exhibit E      Japan Patent Number JP D1009317

Exhibit F      Terminal Disclaimer over U.S. Patent Application No. 29/332,683, now U.S. Patent No. D618,678

Exhibit G      Certificate of Correction for U.S. Patent No. D618,677

## I.    CITATION OF PRIOR ART PATENTS AND PRINTED PUBLICATIONS RELIED UPON IN REQUEST FOR REEXAMINATION

Reexamination of the claim of the '677 patent is requested in view of the following prior art patents and printed publications:

Japan Patent Number JP D1241638 ("'638 patent") is attached hereto as Exhibit D.  The '638 patent was filed on October 18, 2004, registered on April 15, 2005, and published on June 6, 2005.  The '638 patent is available as prior art under 35 U.S.C. § 102(b).  The '638 patent is not cited or discussed during the prosecution of the '677 patent.

Japan Patent Number JP D1204221 ("'221 patent") is attached hereto as Exhibit E.  The '221 patent was filed on October 6, 2003, registered on March 19, 2004, and published on May 10, 2004.  The '221 patent is available as prior art under 35 U.S.C. § 102(b).  The '221 patent was not cited or discussed during the prosecution of the '677 patent.

Japan Patent Number JP D1009317 ("'317 patent") is attached hereto as Exhibit F.  The '317 patent was filed on March 26, 1996, registered on February 20, 1998, and published on May 11, 1998.  The '317 patent is available as prior art under 35 U.S.C. § 102(b).  The '317 patent was not cited or discussed during the prosecution of the '677 patent.

## II.   CLAIM CONSTRUCTION

Claim terms are generally given their ordinary and customary meaning as would be understood by one of ordinary skill in the art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*).  In an *ex parte* reexamination, a claim in an unexpired patent is "given the broadest reasonable interpretation consistent with the specification." MPEP § 2258 I. G.

Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting.  *Crocs v. ITC*, 598. F.3d 1294 (Fed. Cir. 2010).  Thus, an illustration depicts a design better "than it could be by any description and a description would probably not be intelligible without the illustration."  *Id.*, *citing Dobson v. Dornan*, 118 U.S. 10, 14 (1886).  "[A]s a rule, the illustration in the drawing views is its own best description."  MPEP § 1503.01 II.

Full lines in the drawing show the claimed design.  MPEP § 1503.01 III.  Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines.  This includes any

1

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

portion of an article in which the design is embodied or applied to that is not considered part of the claimed design. *In re Zahn*, 617 F.2d 261, 204 USPQ 988 (CCPA 1980).

## III.   DISCLOSURE OF RELATED PROCEEDINGS

The '677 patent is currently the subject of the following litigation: *Apple Inc. v. Samsung Electronics Co. Ltd.*, Case No.: 11-CV-01846-LHK (N.D. Cal.).  The jury concluded that the '678 patent is not invalid.  The case is currently pending.

## IV.   OVERVIEW OF THE '677 PATENT

### A.   The '677 Patent

The '677 patent claims "[t]he ornamental design of an electronic device, as shown and described."  The '677 patent includes the following eight figures:



The description in the '677 patent includes the following statements:

2

> The claimed surface of the electronic device is illustrated with the color designation for the color black.
>
> The electronic device is not limited to the scale shown herein. As indicated in the title, the article of manufacture to which the ornamental design has been applied is an electronic device, media player (e.g., music, video and/or game player), media storage device, a personal digital assistant, a communication device (e.g., cellular phone), a novelty item or toy.

The dashed lines form no part of the claimed design. Thus, as shown in the annotations above, the only claimed features are a rectangular screen, a border surrounding the screen that includes an oblong speaker opening at an end, and a transparent surface layer. As noted above, the claimed surface is colored black. Patent Owner may argue that the transparent surface layer is a separate cover having a rectangular shape with rounded edges that covers the screen and border. Two substantial new questions of patentability for the '677 patent are presented in sections VI. C and D based on this interpretation of the claimed design.

However, as discussed below, this interpretation is not consistent with the drawings. For the purposes of completeness, a substantial new question of patentability for the '677 patent is presented in section VI. E. that corresponds to a proper interpretation of the drawings.

Despite Patent Owner potential's arguments to the contrary, the drawings do not show a separate transparent cover surface that covers the screen and border. According to the Guide to Filing a Design Patent provided by the USPTO, "elements visible behind transparent surfaces should be shown in light, full lines, not broken lines." As the screen, border, and speaker are drawn in lines that appear to have the same line weight as the broken line portions, these items are properly interpreted as ***not*** being behind a transparent surface. Instead, the oblique lines indicate that the screen and border themselves are "transparent, translucent and highly polished or reflective surfaces, such as a mirror." MPEP 1503.02 II.

### B.    Prosecution History of the '677 Patent

U.S. Patent Application No. 29/328,018 ("'018 application"), which ultimately issued as the '677 patent, was filed on November 18, 2008. The '018 application claimed priority to U.S. Patent Application No. 29/282,834, which was filed on July 30, 2007, and claimed priority to U.S. Patent Application No. 29/270,888, filed on January 5, 2007.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

The '018 application originally included 32 figures. The U.S. Patent and Trademark Office ("Office") issued a restriction requirement taking the position that the original 32 figures were directed to four patentably distinct inventions. Applicant elected Figures 1 through 8 and canceled the non-elected figures.

The Office issued a non-final rejection on October 2, 2009. The rejection included an objection to the claims, a double patenting rejection over U.S. Patent Application No. 29/332,683, and a rejection under 35 U.S.C. § 103(a) based on U.S. Patent No. 7,409,059 ("'059 patent") in view of U.S. Patent Application Publication No. 2008/0004083 ("'083 publication").

An interview was conducted on November 10, 2009. According to the Interview Summary provided by Examiner Angela Lee, "[t]he 103 rejection and the application of the art was discussed." Applicant's representative also "presented the Korean reference [KR30-0394921] for discussion in its potential application in a 103 rejection and possible responses to the 103 rejection were discussed."

Applicant filed a response to the Office Action on January 28, 2010. Applicant traversed the obviousness rejection by arguing that the '083 publication is not prior art.[1] Applicant further asserted that "there is at least one major difference [between the claimed design and the '059 patent] which creates an overall ornamental appearance that is quite different." Specifically, with regard to the '059 patent, Applicant stated the following:

> As best seen in Figure 2 of the patent, screen 12 is inset in display area 11 of housing 32 such that the front face of housing 32 creates a stepped or framed appearance. There is nothing in the '059 patent to suggest that there is anything on top of display 12 which would make it *flush with the front face of housing 32 as in the claimed design*. In fact, Figure 3 suggests that there is a bevel edge or frame around display 12 creating an uneven transition on the front face of housing 32 between the housing and the display screen 12 *in contrast to the substantially smooth or flush transition of the display screen and the rest of the front face of the claimed design*.

(emphasis added).

Applicant also stated that "[t]he '083 publication does not disclose a front face that is substantially continuous, as claimed." Applicant further noted that "the claimed design calls for

---

[1] While the '083 publication is not prior art, the international application (WO 2006/038499) was published on April 13, 2006, and thus is prior art under 35 U.S.C. § 102(a).

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

the surface to be substantially completely transparent, while neither of the cited designs discloses a surface that is substantially completely transparent."

Applicant filed a Terminal Disclaimer over U.S. Patent Application No. 29/332,683 with the response to obviate the obviousness-type double patenting rejection. The Terminal Disclaimer was disapproved by the Office on February 17, 2010, due to an incorrect filing date listed for U.S. Patent Application No. 29/332,683. In response, Applicant filed a corrected Terminal Disclaimer over U.S. Patent Application No. 29/332,683 with a corrected filing date. A copy of this Terminal Disclaimer is attached as Exhibit F. The Terminal Disclaimer was approved by the Office on March 6, 2010.

The Office issued a Notice of Allowance on March 15, 2010. The Notice of Allowance included an Examiner's Comment that the statement that the "electronic device is not limited to the scale shown herein" in the specification "is understood to mean that the drawings are not necessarily life-size representations of the invention, but the claimed design would include the same shape and proportions as shown in the drawings." No reasons for allowance were provided by the Office.

The '677 patent issued on June 29, 2010.

Applicant filed a Terminal Disclaimer over U.S. Patent No. D593,087 on November 27, 2012. A Certificate of Correction to add the disclaimer over U.S. Patent No. D593,087 to the '677 patent was issued on January 1, 2013. A copy of this Certificate of Correction is attached as Exhibit G.

## V.   STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY FOR THE CHALLENGED CLAIM

### A.   Subject Matter, Which if Taught by Prior Art Patents or Printed Publications, Raises a Significant New Question of Patentability for the Challenged Claim

The references relied upon below were not discussed on the record during prosecution of the '677 patent. Additionally, as outlined below, these references are not cumulative to ornamental teachings discussed on the record. Accordingly, the references applied herein, as discussed next, present new, non-cumulative teachings that demonstrate the unpatentability of the claim of the '677 patent.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

### B.     The Law of Obviousness For Design Patents

The fact finder employs a two step process in making the determination of obviousness for a design patent.[2] *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329-30 (Fed. Cir. 2012); *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996), *distinguished on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). First, "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Durling*, 101 F.3d at 103 (quoting *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982). Second, "other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design." *Durling*, 101 F.3d at 103. Without a primary reference having the same overall visual impression as the claimed design, there can be no finding of obviousness under 35 U.S.C. § 103(a). *See Apple*, 678 F.3d at 1331-32.

If a single reference is identified (or a hypothetical piece of art is created through combination by an ordinary designer), it must then be analyzed from the point of view of the ordinary *observer*. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240-41 (Fed. Cir. 2009) (emphasis in original). The ordinary observer test looks at whether the primary or hypothetical piece of combined prior art and the claimed design are "substantially the same" such that an ordinary observer, giving such attention as an ordinary observer usually gives, would be deceived into purchasing one supposing it to be the other. *See Titan Tire Corp. v. Case NewHolland, Inc.,* 566 F.3d 1372, 1384 (Fed. Cir. 2009).

### C.     The '638 Patent Raises a Substantial New Question of Patentability for the Claim of the '677 Patent

The '638 patent was published on June 6, 2005, and is available as prior art under 35 U.S.C. § 102(b). The '638 patent was not cited or discussed during the prosecution of the '677 patent. The '638 patent raises a substantial new question of patentability for the claim of the '677 patent.

---

[2] These steps are required in order to follow the Supreme Court's guidance in *Graham*. 383 U.S. at 17-18 ("the scope and content of the prior art are…determined; differences between the prior art and the claims at issue are…ascertained").

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677



The '638 patent discloses a portable telephone that includes a front face having a rectangular screen, a border surrounding the screen that is thicker in the top and bottom portions than the side portions and includes an oblong speaker opening at an end, and a transparent surface layer having a rectangular shape with rounded edges that covers the screen and border. That the transparent surface layer, which can be seen in the cross-sectional view of the '638 patent, covers the entire screen and border is also evidenced by the fact that the full screen and border can be seen in the front view. The cross-sectional view is taken along a center line of the front view.

Thus, the overall appearance of the design disclosed in the '638 patent is of an electronic device that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening, and both the screen and border are covered by a transparent surface. This is basically the same as the overall

7

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

appearance of the design claimed in the '677 patent.  The only difference is the slightly angled end portions of the border area (best shown in the side profile).

However, modifying the front face of the '638 patent device to be flat, instead of slightly angled at the top and bottom, would have been obvious to a designer of ordinary skill in the art as a flat front face was a well-known design characteristic of electronic devices at the time of the invention since most electronic devices, including telephones, had such a flat face, as evidenced by the figures from the '221 patent shown below.



Further, the front face of the '638 patent is not shown in any particular color. Accordingly, it would have been obvious to a designer of ordinary skill in the art to select black as the color of the screen and surrounding border as black electronic devices were well known at the time of the invention, as evidenced by the '221 patent.  As noted in the Office Action dated October 2, 2009, "[p]atentability of a design may not rest on color alone and 'it would be obvious to employ a chromatic color.'"

A reasonable examiner would consider the '638 patent important in deciding whether the claim of the '677 patent is patentable.  As such, the '638 patent raises a substantial new question of patentability for the claim of the '677 patent.  MPEP § 2242.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

**D.      The '317 Patent Raises a Substantial New Question of Patentability for the Claim of the '677 Patent**

The '317 patent was published on May 11, 1998, and is available as prior art under 35 U.S.C. § 102(b).  The '317 patent was not cited or discussed during the prosecution of the '677 patent.  The '317 patent raises a substantial new question of patentability for the claim of the '677 patent.



| Front view of the '317 Patent | Cross-sectional view of the '317 Patent |
| Fig. 3 of the '677 Patent | Fig. 8 of the '677 Patent |

The '317 patent discloses a portable telephone that includes a front face having a rectangular screen, a border surrounding the screen that is thicker in the top and bottom portions than the side portions and includes an oblong speaker opening at an end, and a transparent

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

surface layer having a rectangular shape with rounded edges that covers the screen and border.
That the transparent surface layer, which can be seen in the cross-sectional view of the '317
patent, covers the entire screen and border is also evidenced by the fact that the full screen and
border can be seen in the front view. The cross-sectional view is taken along a center line of the
front view.

Thus, the overall appearance of the design disclosed in the '317 patent is of an electronic
device that includes a rectangular screen surrounded by a border that is thicker in the top and
bottom portions than the side portions and includes an oblong-shaped opening, and both the
screen and border are covered by a transparent surface. This is basically the same as the overall
appearance of the design claimed in the '677 patent. Although the border of the design disclosed
in the '317 patent includes a second oblong-shaped opening in the bottom of the border, this area
is disclaimed in the '677 patent by a circular section in broken lines. Thus, the second oblong-
shaped opening of the '317 patent does not contribute to an overall appearance that is different to
the design features claimed in the '677 patent.

Additionally, modifying the border on the front face of the telephone of the '317 patent to
be rectangular, instead of having slightly curved top and bottom edges, would have been obvious
to a designer of ordinary skill in the art as electronic devices having such a rectangular border
were well known at the time of the invention since almost all electronic devices, including
telephones, had rectangular shapes instead of having slightly curved top and bottom edges, as
evidenced by the '221 patent.

The front face of the '317 patent is not shown in any particular color. Accordingly, it
would have been obvious to a designer of ordinary skill in the art to select black as the color of
the screen and surrounding border as black electronic devices were well known at the time of the
invention, as evidenced by the '221 patent. Further, as noted in the Office Action dated October
2, 2009, "[p]atentability of a design may not rest on color alone and 'it would be obvious to
employ a chromatic color.'"

A reasonable examiner would consider the '317 patent important in deciding whether the
claim of the '677 patent is patentable. As such, the '317 patent raises a substantial new question
of patentability for the claim of the '677 patent. MPEP § 2242.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

### E. The '221 Patent Raises a Substantial New Question of Patentability for the Claim of the '677 Patent

As discussed above, Requester respectfully submits that a proper interpretation of the claim of the '677 patent dictates that there is no separate transparent surface on top of the screen and the border. On the contrary, an electronic device including a screen and a border that are transparent or reflective surfaces would be drawn exactly the same, and thus have the same overall appearance, as the electronic device of the '677 patent. Accordingly, the present substantial new question of patentability is based on this correct interpretation.

The '221 patent was published on May 10, 2004, and is available as prior art under 35 U.S.C. § 102(b). The '221 patent was not cited or discussed during the prosecution of the '677 patent. The '221 patent raises a substantial new question of patentability for the claim of the '677 patent.



| | |
|---|---|
| *Front view of the '221 Patent* | *Side view of the '221 Patent* |

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677



Fig. 3 of the '677 Patent    Fig. 8 of the '677 Patent

The '221 patent discloses a portable telephone that includes a front face having a rectangular screen and a border surrounding the screen that is thicker in the top and bottom portions than the side portions and includes an oblong speaker opening at an end.  The screen and boarder are reflective or transparent surfaces.

The '221 patent does not explicitly disclose a separate transparent surface covering the screen and border.  As discussed above, under a proper interpretation of the claim of the '677 patent, the '677 patent also does not explicitly disclose that a separate transparent surface covers the screen and the border.  Accordingly, to the extent that the claimed design of the '677 patent is construed to have the screen and border as the outermost surface, the '221 patent also shows that the screen and border are the outermost surface.

Thus, the overall appearance of the design disclosed in the '221 patent is of an electronic device that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening.  The screen and border are transparent or reflective surfaces.  This is basically the same as the overall appearance of the design claimed in the '677 patent, as discussed above under a claim construction that does not include a separate transparent cover surface.

Although the border of the design disclosed in the '221 patent includes a second oblong-shaped opening in the bottom of the border, this area is disclaimed in the '677 patent by a circular section in broken lines.  Thus, the second oblong-shaped opening of the '221 patent does not contribute to an overall appearance that is different than that claimed in the '677 patent.

The border of the design disclosed in the '221 patent also includes a small circular element on the left side of the top of the border.[3]  Modifying the front face of the telephone to remove the camera sensor would have been obvious to a designer of ordinary skill in the art as electronic devices without a camera sensor in their border were well known at the time of the invention, as evidenced by the '638 patent.

A reasonable examiner would consider the '221 patent important in deciding whether the claim of the '677 patent is patentable.  As such, the '221 patent raises a substantial new question of patentability for the claim of the '677 patent.  MPEP § 2242.

## VI.   DETAILED EXPLANATION OF THE PERTINENCE AND MANNER OF APPLYING THE PRIOR ART REFERENCES TO THE CLAIM FOR WHICH REEXAMINATION IS REQUESTED

In accordance with 37 C.F.R. § 1.510(b)(2), Requester provides the following detailed explanation of the pertinency and manner of applying the prior art to the claim of the '677 patent, for which reexamination is requested.

### A.   The '638 In View of the '221 Patent Renders the Claim of the '677 Patent Unpatentable Under 35 U.S.C. § 103(a)

The '638 patent and the '221 patent are prior art against the '677 patent under 35 U.S.C. § 102(b).  As shown by the detailed analysis below, the '638 patent is a suitable primary reference that has an appearance basically the same as the claimed design.  Further, any differences between the claimed design and the '638 patent can be found in the secondary reference (the '221 patent), which is so related that the appearance of certain ornamental features in the '221 patent would suggest the application of those features to the '638 patent.  The modified reference is substantially the same as the claimed design under the ordinary observer test.  Therefore, the claim of the '677 patent is unpatentable under 35 U.S.C. § 103(a) over the '638 patent in view of the '221 patent.

---

[3] If the small circular element or the oblong-shaped openings of the '221 patent are difficult to view in the present request, Requester respectfully asks that the Examiner view the copy of the '221 patent filed herewith.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677



The '638 patent discloses a portable telephone that includes a front face having a rectangular screen, a border surrounding the screen that is thicker in the top and bottom portions than the side portions and includes an oblong speaker opening at an end, and a transparent surface layer having a rectangular shape with rounded edges that covers the screen and border.

Thus, the overall appearance of the design disclosed in the '638 patent is of an electronic device that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening, and both the screen and border are covered by a transparent surface. This is basically the same as the overall appearance of the design claimed in the '677 patent.

Applicant argued during prosecution of the '677 patent that the design claims a "substantially smooth or flush transition of the display screen and the rest of the front face." As the '677 patent contains no written description regarding this "substantially smooth or flush transition," this limitation must find written description support in the original drawings. Accordingly, to the extent that the drawings of the '677 patent show a "substantially smooth or flush transition" between the display screen and the rest of the front face, it is respectfully submitted that the '638 patent also shows such a transition, as evidenced by the perspective views below (the '677 patent on the left and the '638 patent on the right). Specifically, this "transition" is shown the same way in both figures.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677



Transition between border and screen

Applicant may point to the cross-sectional view of the '638 patent and argue that the screen of the '638 patent is "inset" in the border, and thus does not show a substantially smooth or flush transition. However, the '677 patent does not include a cross-sectional view that shows the screen and the surrounding border as perfectly flush. Thus, to the extent that Applicant can argue that the original disclosure of the '677 patent supports a "substantially smooth or flush transition" between the display screen and the rest of the front face, the '638 patent also teaches such a transition.

As the '638 patent is a reference in existence with basically the same visual appearance as the claimed design of the '677 patent, the '638 patent is a proper primary reference to show *prima facie* obviousness. Additionally, the '221 patent can be relied on to cure any deficiencies of the '638 patent. Modifying the front face of the telephone of the '638 patent to be flat, instead of slightly angled at the top and bottom, would have been obvious to a designer of ordinary skill in the art as a flat front face was a well-known design characteristic of electronic devices at the time of the invention since most electronic devices, including telephones, had such a flat face, as evidenced by the '221 patent. Both references are directed to electronic devices, such as a portable telephone, and thus are so related that this feature of the '221 patent would suggest its application in the '638 patent to a designer of ordinary skill in the art.

Further, the front face of the '638 patent is not shown in any particular color. Accordingly, it would have been obvious to a designer of ordinary skill in the art to select black as the color of the screen and surrounding border as black electronic devices were well known at the time of the invention, as evidenced by the '221 patent. As noted in the Office Action dated

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

October 2, 2009, "[p]atentability of a design may not rest on color alone and 'it would be obvious to employ a chromatic color.'"

To the extent that Patent Owner may argue the side borders in the '638 patent are wider than those of the claimed design of the '677 patent, it is respectfully submitted that such a feature is a functional accommodation to maximize screen width to account for the increased demand for handheld devices to reproduce video of a given aspect ratio. This functional dimensioning provides no aesthetic ornamentation and thus does not properly limit the claimed design. *Richardson v. Stanley Works Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

As explained above, the '638 patent has basically the same overall visual appearance as the claimed design. The minor differences in their appearance are remedied by the '221 patent. These changes would have been obvious to a designer of ordinary skill in the art. Accordingly, the properly modified combination of the '638 patent in view of the '221 patent has substantially the same overall visual appearance as the claimed design of the '677 patent. Both the modified combination of references and the claimed design have an overall visual appearance of an electronic device, such as a portable telephone, that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening in its top portion. The border is rectangular with curved edges. Additionally, the border and screen are covered by a transparent cover surface.

Accordingly, an ordinary observer, giving such attention as an ordinary observer usually gives, would be deceived into purchasing one supposing it to be the other as both the modified combination and the claimed design have substantially the same overall visual appearance.

\* \* \*

Accordingly, the '638 patent in view of the '221 patent discloses every limitation of the claimed design in the '677 patent. Therefore, the claim of the '677 patent is unpatentable over the '638 patent in view of the '221 patent under 35 U.S.C. § 103(a).

### B.   The '317 Patent In View of the '221 Patent Renders the Claim of the '677 Patent Unpatentable Under 35 U.S.C. § 103(a)

The '317 patent and the '221 patent are prior art against the '677 patent under 35 U.S.C. § 102(b). As shown by the detailed analysis below, the '317 patent is a suitable primary reference that has an appearance basically the same as the claimed design. Further, any differences between the claimed design and the '317 patent can be found in the secondary

16

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

reference (the '221 patent), which is so related that the appearance of certain ornamental features in the '221 patent would suggest the application of those features to the '317 patent. The modified reference is substantially the same as the claimed design under the ordinary observer test. Therefore, the claim of the '677 patent is unpatentable under 35 U.S.C. § 103(a) over the '317 patent in view of the '221 patent.



The '317 patent discloses a portable telephone that includes a front face having a rectangular screen, a border surrounding the screen that is thicker in the top and bottom portions than the side portions and includes an oblong speaker opening at an end, and a transparent surface layer having a rectangular shape with rounded edges that covers the screen and border.

Thus, the overall appearance of the design disclosed in the '317 patent is of an electronic device that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening, and both the screen and border are covered by a transparent surface. This is basically the same as the overall appearance of the design claimed in the '677 patent. Although the border of the design disclosed in the '317 patent includes a second oblong-shaped opening in the bottom of the border, this area is disclaimed in the '677 patent by a circular section in broken lines. Thus, the second oblong-shaped opening of the '317 patent does not contribute to an overall appearance that is different to the design feature claimed in the '677 patent.

Applicant argued during prosecution of the '677 patent that the design claims a "substantially smooth or flush transition of the display screen and the rest of the front face." As

17

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

the '677 patent contains no written description regarding this "substantially smooth or flush transition," this limitation must find written description support in the original drawings. Accordingly, to the extent that the drawings of the '677 patent show a "substantially smooth or flush transition" between the display screen and the rest of the front face, it is respectfully submitted that the '317 patent also shows such a transition, as evidenced by the views below (the '677 patent on the left and the '317 patent on the right). Specifically, this "transition" is shown the same way in both figures.



Transition between border and screen

Applicant may point to the cross-sectional view of the '317 patent and argue that the screen of the '317 patent is "inset" in the border, and thus does not show a substantially smooth or flush transition. As can be seen in the cross-sectional view of the '317 patent, any "inset" is about as thick as the transparent cover surface and does not result in an appearance of the screen being recessed from the surrounding border. Further, the '677 patent does not include a cross-sectional view that shows the screen and the surrounding border as perfectly flush. Thus, to the extent that Applicant can argue that the original disclosure of the '677 patent supports a "substantially smooth or flush transition" between the display screen and the rest of the front face, the '317 patent also teaches such a transition.

18

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

As the '317 patent is a reference in existence with basically the same visual appearance as the claimed design of the '677 patent, the '317 patent is a proper primary reference to show *prima facie* obviousness. Additionally, the '221 patent can be relied on to cure any deficiencies of the '317 patent. Modifying the border on the front face of the telephone of the '317 to be rectangular, instead of having slightly curved at the top and bottom edges, would have been obvious to a designer of ordinary skill in the art as electronic devices having such a rectangular border were well known at the time of the invention since almost all electronic devices, including telephones, had rectangular shapes instead of having slightly curved top and bottom edges, as evidenced by the '221 patent.

Additionally, showing the front face of the telephone of the '317 patent in a black color would have been obvious to a designer of ordinary skill in the art as black electronic devices were well known at the time of the invention, as evidenced by the '221 patent. Further, as noted in the Office Action dated October 2, 2009, "[p]atentability of a design may not rest on color alone and 'it would be obvious to employ a chromatic color.'"

To the extent that Patent Owner may argue the side borders in the '317 patent are wider than those of the claimed design of the '677 patent, it is respectfully submitted that such a feature is a functional accommodation to maximize screen width to account for the increased demand for handheld devices to reproduce video of a given aspect ratio. This functional dimensioning provides no aesthetic ornamentation and thus does not properly limit the claimed design. *Richardson v. Stanley Works Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

As explained above, the '317 patent has basically the same overall visual appearance as the claimed design. The minor differences in their appearance are remedied by the '221 patent. These changes would have been obvious to a designer of ordinary skill in the art. Accordingly, the properly modified combination of the '317 patent in view of the '221 patent has substantially the same overall visual appearance as the claimed design of the '677 patent. Both the modified combination of references and the claimed design have an overall visual appearance of an electronic device, such as a portable telephone, that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening in its top portion. The border is rectangular with curved edges. Additionally, the border and screen are covered by a transparent cover surface.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

Accordingly, an ordinary observer, giving such attention as an ordinary observer usually gives, would be deceived into purchasing one supposing it to be the other as both the modified combination and the claimed design have substantially the same overall visual appearance.

        * * *

Accordingly, the '317 patent in view of the '221 patent discloses every limitation of the claimed design in the '677 patent. Therefore, the claim of the '677 patent is unpatentable over the '317 patent in view of the '221 patent under 35 U.S.C. § 103(a).

### C.   The '221 Patent In View of the '638 Patent Renders the Claim of the '677 Patent Unpatentable Under 35 U.S.C. § 103(a)

The '221 patent and the '638 patent are prior art against the '677 patent under 35 U.S.C. § 102(b). As shown by the detailed analysis below, the '221 patent is a suitable primary reference that has an appearance basically the same as the claimed design. Further, any differences between the claimed design and the '221 patent can be found in the secondary reference (the '638 patent), which is so related that the appearance of certain ornamental features in the '638 patent would suggest the application of those features to the '221 patent. The modified reference is substantially the same as the claimed design under the ordinary observer test. Therefore, the claim of the '677 patent is unpatentable under 35 U.S.C. § 103(a) over the '221 patent in view of the '638 patent.



The '221 patent discloses a portable telephone that includes a front face having a rectangular screen and a border surrounding the screen that is thicker in the top and bottom

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

portions than the side portions and includes an oblong speaker opening at an end.  The screen and boarder are reflective or transparent surfaces.

The '221 patent does not explicitly disclose a separate transparent surface covering the screen and border.  As discussed above, under a proper interpretation of the claim of the '677 patent, the '677 patent also does not explicitly disclose that a separate transparent surface covers the screen and the border since the screen and border are not shown in thin lines.  Accordingly, to the extent that the claimed design of the '677 patent is construed to have the screen and border as the outermost surface, the '221 patent also shows that the screen and border are the outermost surface.

Thus, the overall appearance of the design disclosed in the '221 patent is of an electronic device that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening.  The screen and border are transparent or reflective surfaces.  This is basically the same as the overall appearance of the design claimed in the '677 patent, as discussed above under a claim construction that does not include a separate transparent cover surface.  Although the border of the design disclosed in the '221 patent includes a second oblong-shaped opening in the bottom of the border, this area is disclaimed in the '677 patent by a circular section in broken lines.  Thus, the second oblong-shaped opening of the '221 patent does not contribute to an overall appearance that is different than that claimed in the '677 patent.

Applicant argued during prosecution of the '677 patent that the design claims a "substantially smooth or flush transition of the display screen and the rest of the front face."  As the '677 patent contains no written description regarding this "substantially smooth or flush transition," this limitation must find written description support in the original drawings.  Accordingly, to the extent that the drawings of the '677 patent show a "substantially smooth or flush transition" between the display screen and the rest of the front face, it is respectfully submitted that the '221 patent also shows such a transition, as evidenced by the views below (the '677 patent on the left and the '221 patent on the right).  Specifically, this "transition" is shown the same way in both figures.

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677



Transition between border and screen

Applicant may attempt to argue that the screen of the '221 patent is "inset" in the border, and thus does not show a substantially smooth or flush transition. However, the '677 patent does not include a cross-sectional view that shows the screen and the surrounding border as perfectly flush. Thus, to the extent that Applicant can argue that the original disclosure of the '677 patent supports a "substantially smooth or flush transition" between the display screen and the rest of the front face, the '221 patent also teaches such a transition.

As the '221 patent is a reference in existence with basically the same visual appearance as the claimed design of the '677 patent, the '221 patent is a proper primary reference to show *prima facie* obviousness. Additionally, the '638 patent can be relied on to cure any deficiencies of the '221 patent. The border of the design disclosed in the '221 patent includes a small circular element (presumably a camera sensor) on the left side of the top of the border. Modifying the front face of the telephone to remove the circular element, would have been obvious to a designer of ordinary skill in the art as electronic devices without such a camera sensor in their border were well known at the time of the invention, as evidenced by the '638 patent.

To the extent that Patent Owner may argue the side borders in the '221 patent are wider than those of the claimed design of the '677 patent, it is respectfully submitted that such a feature is a functional accommodation to maximize screen width to account for the increased demand for handheld devices to reproduce video of a given aspect ratio. This functional dimensioning provides no aesthetic ornamentation and thus does not properly limit the claimed design. *Richardson v. Stanley Works Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

Request for *Ex Parte* Reexamination
Reexamination of U.S. Patent No. D618,677

As explained above, the '221 patent has basically the same overall visual appearance as the claimed design. The minor differences in their appearance are remedied by the '638 patent. These changes would have been obvious to a designer of ordinary skill in the art. Accordingly, the properly modified combination of the '221 patent in view of the '638 patent has substantially the same overall visual appearance as the claimed design of the '677 patent. Both the modified combination of references and the claimed design have an overall visual appearance of an electronic device, such as a portable telephone, that includes a rectangular screen surrounded by a border that is thicker in the top and bottom portions than the side portions and includes an oblong-shaped opening in its top portion. The border is rectangular with curved edges. Additionally, the border and screen are transparent or reflective surfaces.

Accordingly, an ordinary observer, giving such attention as an ordinary observer usually gives, would be deceived into purchasing one supposing it to be the other as both the modified combination and the claimed design have substantially the same overall visual appearance.

* * *

Accordingly, the '221 patent in view of the '638 patent discloses every limitation of the claimed design in the '677 patent. Therefore, the claim of the '677 patent is unpatentable over the '221 patent in view of the '638 patent under 35 U.S.C. § 103(a).

## VII.   CONCLUSION

Based on the above, the accompanying references show that there exists at least one substantial new question of patentability as to the claim of the '677 patent. For the reasons set forth in this Request, it is respectfully requested that the *ex parte* reexamination of the '677 patent be ordered.

Respectfully submitted,

By   /Scott A. McKeown/
Scott A. McKeown
Registration No. 42,866

Customer Number
**22850**

Tel: (703) 413-3000
Fax: (703) 413 -2220
(OSMMN 08/07)

OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, L.L.P.

23