QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Cal. Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>       Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S SUPPLEMENTAL DAMAGES STATEMENT** |

## I.   PRELIMINARY STATEMENT

Samsung respectfully submits its Supplemental Damages Statement pursuant to the Court's September 18, 2015 Case Management Order.   (Dkt. 3289.)   This statement includes the information requested by the Court for the design arounds incorporated in the five Samsung products subject to supplemental damages.[1]   In Section II below Samsung identifies all design arounds for the five products subject to supplemental damages, and provides the first day any design around product was available for sale in the U.S. and the first day any design around software was available for downloading in the U.S.   In Section III below, Samsung identifies on a patent-by-patent basis:   the basis upon which Samsung believes the design around avoids infringement of the relevant patent claim; whether the design around was raised at trial, and if so, the corresponding exhibit number(s) and trial transcript citation(s); and if the design around was not raised at trial, an explanation for why it was not raised, e.g. an identification of orders supporting Samsung's claim that Samsung was precluded from raising a design around at trial, but not in post-trial motions.   Samsung provides the sales unit numbers for each product in Exhibit A.   Additionally, Samsung delivered to Apple physical samples incorporating each design around identified in this Supplemental Damages Statement.

---

[1]   These disclosures are made without prejudice to Samsung's right to object to the admissibility and/or use of specific portions of this information in any determination of supplemental damages.   In particular, Samsung maintains that the following categories of information requested by Apple at the September 18, 2015 case management conference are irrelevant and potentially prejudicial:   (1) the first day any design around product was available for sale in the U.S., where that first sale was made before the jury verdict of August 24, 2012; (2) the first day any design around software was available for downloading in the U.S., where that download was made available before the jury verdict of August 24, 2012; (3) whether the design arounds were raised at trial; and (4) if not raised at trial, why not.   Whether Samsung first offered a designed around product before or after the verdict is irrelevant to supplemental damages, which can only be awarded on infringing post-verdict sales.   There can be no credible argument that by introducing a design around earlier (*i.e.* before the verdict) a defendant thereby incurs damages for sales of the design around after the verdict.   Furthermore, it is not defendants' burden to raise design arounds at trial as a condition of using those design arounds to avoid infringement, and therefore damages, for post-verdict sales.   Rather, it is Apple's burden to show that post-verdict sales of products incorporating design arounds nevertheless infringe.   Apple has never identified any authority to the contrary.   Moreover, Samsung previously introduced evidence of each of these design arounds in its post-trial opposition to Apple's request for a permanent injunction (Dkt. 2054 at 13-14), and also in post-trial opposition to Apple's renewed request for a permanent injunction (Dkt. 2915-03 at 20-22).

## II.    DESIGN AROUNDS IMPLEMENTED ON THE FIVE PRODUCTS SUBJECT TO SUPPLEMENTAL DAMAGES

The five products at issue for supplemental damages and the jury findings on infringement are summarized in the following chart.

| Product | '381 | '915 | '163 | D'305 | D'677 |
|---|---|---|---|---|---|
| Galaxy Prevail (JX1022) | Y | Y | Y | not accused | not accused |
| Droid Charge (JX1025) | Y | Y | Y | Y | not accused |
| Galaxy S II (Skyrocket) (JX1031) | not accused | not accused | not accused | not accused | Y |
| Galaxy S II (T-Mobile) (JX1033) | not accused | Y | Y | not accused | Y |
| Galaxy S II (Epic 4G Touch) (JX1034) | not accused | not accused | not accused | not accused | Y |

(Dkt. 1931.)

### A.    Galaxy Prevail

The Galaxy Prevail was found to infringe the '381, '915, and '163 patents.    The Galaxy Prevail products sold in the United States after trial included design arounds to the '381 and '163 patents.

The first day Galaxy Prevail products that included the '381 design around were available for sale in the United States was November 21, 2011.    The first day that design around software that included the '381 design around was available for downloading onto Galaxy Prevail products in the United States was November 7, 2011.    The first day Galaxy Prevail products that included the '163 design around were available for sale in the United States was August 23, 2012.    The first day that design around software that included the '163 design around was available for downloading onto Galaxy Prevail products in the United States was July 11, 2012.    All sales of the Galaxy Prevail in the United States after August 24, 2012 included design arounds to the '381 and '163 patents.    Samsung provides monthly unit sales for the Galaxy Prevail for the period after the August 24, 2012 verdict in Exhibit A.

**B.     Droid Charge**

The Droid Charge was found to infringe the '381, '915, '163, and D'305 patents.    The Droid Charge products sold in the United States after trial included design arounds to the '381, '163, and D'305 patents.

The first day Droid Charge products that included the '381 design around were available for sale in the United States was December 14, 2011.    The first day that design around software that included the '381 design around was available for downloading onto Droid Charge products in the United States was November 29, 2011.    The first day Droid Charge products that included the '163 design around were available for sale in the United States was April 26, 2012.    The first day that design around software that included the '163 design around was available for downloading onto Droid Charge products in the United States was March 21, 2012.    The first day Droid Charge products that included the D'305 design around were available for sale in the United States was April 26, 2012.    The first day that design around software that included the D'305 design around was available for downloading onto Droid Charge products in the United States was March 21, 2012.    All sales of the Droid Charge in the United States after August 24, 2012 included design arounds to the '381, '163, and D'305 patents.    Samsung provides monthly unit sales for the Droid Charge for the period after the August 24, 2012 verdict in Exhibit A.

**C.     Galaxy S II (T-Mobile)**

The Galaxy S II (T-Mobile) was found to infringe the '915, '163, and D'677 patents. Certain Galaxy S II (T-Mobile) products sold in the United States after trial included design arounds to the '915, '163, and D'677 patents.

The first day Galaxy S II (T-Mobile) products that included the '915 design around were available for sale in the United States was October 26, 2012.    The first day that design around software that included the '915 design around was made available to T-Mobile for downloading onto Galaxy S II (T-Mobile) products in the United States was October 18, 2012.    The first day Galaxy S II (T-Mobile) products that included the '163 design around were available for sale in the United States was July 13, 2012.    The first day that design around software that included the '163 design around was made available to T-Mobile for downloading onto Galaxy S II (T-Mobile)

products in the United States was June 9, 2012.    The first day Galaxy S II (T-Mobile) products that included the D'677 patent design arounds were available for sale in the United States was December 13, 2011 (white version) and November 12, 2012 (steel gray version).    All sales of the Galaxy S II (T-Mobile) after August 24, 2012 included the '163 design around.    All sales of the Galaxy S II (T-Mobile) in white after November 2, 2012 included the '915 design around.    All sales of the Galaxy S II (T-Mobile) in steel gray included the '915 design around.    Samsung provides monthly unit sales for the Galaxy S II (T-Mobile) for the period after the August 24, 2012 verdict in Exhibit A.

**D.      Galaxy S II (Skyrocket)**

The Galaxy S II (Skyrocket) was found to infringe the D'677 patent.    Certain Galaxy S II (Skyrocket) products sold in the United States after trial designed around the D'677 patent.

The first day Galaxy S II (Skyrocket) products that included the D'677 patent design around (white version) were available for sale in the United States was November 23, 2011. Samsung provides monthly unit sales for the Galaxy S II (Skyrocket) for the period after the August 24, 2012 verdict in Exhibit A.

**E.      Galaxy S II (Epic 4G Touch)**

The Galaxy S II (Epic 4G Touch) was found to infringe the D'677 patent.    Certain Galaxy S II (Epic 4G Touch) products sold in the United States after trial designed around the D'677 patent.

A white version of the Galaxy S II Epic 4G Touch was first sold to Sprint on December 14, 2011; a white version of the Galaxy S II Epic 4G Touch was first sold to Boost Mobile on August 20, 2012; a white version of the Galaxy S II Epic 4G Touch was first sold to Virgin Mobile on October 30, 2012.    A steel gray version of the Galaxy S II Epic 4G Touch was first sold to Sprint on November 5, 2012; a steel gray version of the Galaxy S II Epic 4G Touch was first sold to Boost Mobile on October 30, 2012; a steel gray version of the Galaxy S II Epic 4G Touch was first sold to Virgin Mobile on November 2, 2012. Samsung provides monthly unit sales for the Galaxy S II (Epic 4G Touch) for the period after the August 24, 2012 verdict in Exhibit A.

**III.    THE REASONS WHY EACH DESIGN AROUND DESIGN AROUND DOES NOT INFRINGE, WHETHER IT WAS RAISED AT TRIAL, AND IF NOT WHY NOT**

Samsung sets forth its bases for non-infringement of each design around on a patent-by-patent basis below.

**A.    '381 Design Around**

**1.    The '381 Patent**

The '381 covers a snap-back or bounce-back feature.    The accused software is the Gallery, Contacts and Web Browser applications.    In more recent code for each of these applications, this feature is changed to a "blue glow" or "orange glow" feature.    The glow feature does not continue scrolling in order to display an area beyond the edge of the electronic document. It also does not display a third portion of the electronic document that is smaller than the first portion.    Instead, upon reaching the edge of the electronic document, the document comes to a stop and a blue or orange glow appears.    The new code does not infringe.

**(a)    The Basis for Non-Infringement**

Apple never accused products using blue or orange glow of infringing the '381 patent. Apple accused the "snap back" or "bounce back" feature in the Web Browser, Contacts and Gallery applications on certain Samsung products of infringing the '381 patent.    Claim 19 of the '381 patent requires "instructions for displaying an area beyond and edge of the electronic document and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion, in response to the edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display."    Claim 19 of the '381 patent also requires "instructions for translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display." ('381 patent, Claim 19.)

Samsung developed new software for the Web Browser, Contacts and Gallery applications that removes the "snap back" feature and replaces it with an "orange glow" or "blue glow" feature.

In an application that utilizes the glow feature, an electronic document performs a "hard stop" – *i.e.*, prevents overscrolling – when the user attempts to scroll beyond the edge of the document. Thus an area beyond the edge of the document is not shown.   To indicate that the edge of the electronic document has been reached, an orange or blue glow animation appears near the edge of the electronic document.

Apple's expert, Dr. Ravin Balakrishnan, agreed that blue glow does not infringe the claims of the '381 patent.   In his expert report, he stated, "In my opinion, the use of the 'blue glow' effect is an alternative to using the features of the '381 patent."   (Mar. 22, 2012 Expert Report of Dr. Ravin Balakrishnan at ¶262.)   In addition, when asked whether the blue glow feature infringes the '381 patent during his deposition, Dr. Balakrishnan stated, "If it is only the blue glow and not the blue glow in additional [sic] to the snapback that's in '381, then a device or an application, having just the blue glow and not doing the '381 snapback functionality, would not infringe."   (Apr. 20, 2012 Dep. of Dr. Ravin Balakrishnan at 62:7-11.)

Moreover, Samsung's expert, Andries van Dam, analyzed the '381 patent and Samsung's "blue glow" feature, and submitted declarations in support of Samsung's opposition to Apple's initial motion for a permanent injunction (Dkt. 2054-5) and Apple's renewed motion for a permanent injunction (Dkt. 2915-23).   He concluded that the blue glow feature did not literally infringe the '381 patent "because it does not permit a user to continue scrolling in order to display an area beyond the edge of the electronic document.   It also does not display a third portion of the electronic document that is smaller than the first portion.   Instead, upon reaching the edge of the electronic document, the document comes to a stop and a blue glow appears."   (Dkt. 2054-5 ¶27; Dkt. 2915-23 ¶27.)   And further "it does not translate the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed.   No translation of the electronic document occurs, and furthermore, no area beyond the edge of the document was displayed in the first instance, rendering the claim language inapplicable to applications utilizing the blue glow feature."   (Dkt. 2054-5 ¶29; Dkt. 2915-23 ¶29.)

"Furthermore, the blue glow feature does not infringe this claim limitation under the doctrine of equivalents, as blue glow is substantially different from the claimed behavior.   The

1  blue glow feature is substantially different from the claimed behavior because it utilizes the 'hard

2  stop' behavior alleged by Apple to be different from the method of the '381 patent and part of the

3  prior art."   (Dkt. 2054-5 ¶28; Dkt. 2915-23 ¶28.)

4        In addition, Dr. van Dam reviewed source code relating to scrolling in the Gallery,

5  Contacts and Web Browser applications.   In particular he reviewed Android version 4.0.4,

6  Baseband version T989UVLI1, Kernel version 3.0.8, and Build number IMM76D.UVLI1, and

7  "confirmed that the source code does not include instructions for performing claim 19 of the '381

8  patent.   Instead, the source code includes instructions that relate to the blue glow feature."   (Dkt.

9  2054-5 ¶31; Dkt. 2915-23 ¶31.)   As such, products utilizing the blue glow do not infringe

10 the '381 patent.   (Dkt. 2054-5 ¶32; Dkt. 2915-23 ¶32.)

11       Dr. van Dam previously examined the Gallery, Contacts and Web Browser applications

12 that utilize the blue glow feature on two Samsung Galaxy S II (T-Mobile) products – including

13 one running the following software: Android version 4.0.4, Baseband version T989UVLI1, Kernel

14 version 3.0.8, and Build number IMM76D.UVLI1 – and concluded that they do not infringe

15 the '381 patent.   (Dkt. 2054-5 ¶32; Dkt. 2915-23 ¶32.)

16       Dr. van Dam also examined the Web Browser, Contacts and Gallery applications operating

17 on a Samsung Droid Charge and a Galaxy Prevail.   The Samsung Droid Charge was running the

18 following software: Firmware version 2.3.6, Baseband version I510.06 V.FP1, SCH-I510.FP1,

19 and Kernel version 2.6.35.7-FP1, and Build number SCH-I510.FP1.   The Galaxy Prevail was

20 running the following software:   Android version 2.3.6, Baseband version S:M820.07 X.FA19,

21 Kernel version 2.6.35.7; and Build number GINGERBREAD.FA19.   Dr. van Dam concluded

22 that the Samsung Droid Charge and Galaxy Prevail do not literally infringe the '381 patent or

23 infringe the '381 patent under the doctrine of equivalents.   (Sep. 30, 2015 van Dam Declaration

24 filed herewith at ¶¶5-6.)

25       In briefing on Apple's motions for a permanent injunction, Apple did not dispute that by

26 updating accused products to use Samsung's blue glow feature in place of the feature held to

27 infringe the '381 patent Samsung avoided any further infringement of the '381 patent.   (Dkt.

28 2127-2 at 14 n.5; Dkt. 2925 at 16.)

**(b)** Whether the Design Around Was Raised at Trial

The '381 design around was not raised at trial because Samsung was precluded from doing so. (Dkt. 898 at 9, Dkt. 1106 at 3-4 ("[F]or each of the '381, '891 and '163 patents, Samsung may not offer any evidence of its design-arounds. This means no source code evidence, no non-source code evidence, no evidence of any kind, whether for liability purposes or any other purpose.").)[2] The parties admitted into evidence at trial the Galaxy S II (T-Mobile) (JX1033) product that incorporated the blue glow feature rather than the feature held to infringe the '381 patent, and Apple did not accuse this product of infringing the '381 patent.

**(c)** If Not Raised at Trial, Why Not

Samsung was precluded from offering evidence regarding the '381 design around at trial. (Dkt. 898 at 9, Dkt. 1106 at 3.) These orders, however, do not preclude Samsung from relying on design arounds in any post-trial proceedings. (Dkt. 1106 at 4 ("Because Apple only requested this sanction as to the upcoming jury trial, this restriction does not extend beyond trial to any post-trial proceeding such as those relating to the permanent injunction sought by Apple or contempt proceedings..").) Following trial, Samsung introduced evidence of the '381 design around in its post-trial opposition to Apple's initial motion for a permanent injunction without any objections from Apple (Dkt. 2054), and again in its post-trial opposition to Apple's renewed motion for a permanent injunction without any objections from Apple (Dkt. 2915-03).

**B.     '163 Design Around**

**1.     The '163 Patent**

The '163 covers a two-step process for enlarging and substantially centering a first box of content and then substantially centering a second box of content within a structured electronic document. The accused software is a Web Browser application. In more recent code for the Web Browser application, the claimed function of centering a second box is no longer performed, and therefore there is no infringement.

---

[2]     The Court denied Samsung's motion for relief from Judge Grewal's orders. (Dkt. 1545.) These orders also prevented Samsung from offering design around evidence relating to Samsung's '891 patent, but that patent was not at issue during trial.

**(a)**   The Basis for Non-Infringement

Apple never accused products with software disabling the centering of a second box of content in the feature held to infringe the '163 patent.   In his expert report, Apple's expert, Dr. Singh, cites motionUp() as the WebView.cpp function in the accused Samsung code that is ultimately responsible for infringement, in particular, being responsible for "in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display."   (Dkt. 2054-2 ¶50; Dkt. 2915-17 ¶86.)

Samsung's expert, Stephen Gray, submitted declarations in support of Samsung's opposition to Apple's initial motion for a permanent injunction (Dkt. 2054-2) and Samsung's opposition to Apple's renewed motion for a permanent injunction (Dkt. 2915-17) in which he analyzed the '163 patent and Samsung's design around code.   He concluded that Android version 4.0.4, Baseband version T989UVLI1, Kernel version 3.0.8, and Build number IMM76D.UVLI1 do not infringe because "the relevant source code in the motionUp() function, identified by Dr. Singh as infringing, has been commented out and is therefore inoperative."   (Dkt. 2054-2 ¶51; Dkt. 2915-17 ¶87.)   As a result, the Samsung accused code no longer contains "instructions for, in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display" as required by claim 50. The new code does not literally infringe the '163 patent.   (Dkt. 2054-2 ¶51; Dkt. 2915-17 ¶87.) As such, products running Android version 4.0.4, Baseband version T989UVLI1, Kernel version 3.0.8, and Build number IMM76D.UVLI1 do not infringe the '163 patent.   (Dkt. 2054-2 ¶52; Dkt. 2915-17 ¶87.)

Moreover, the doctrine of prosecution history estoppel prevents Apple from arguing the new code infringes under the doctrine of equivalents. Claim 50 was amended to add the limitation "instruction[s] for, while the first box is enlarged, detecting a second gesture on a second box other than the first box; and instructions for, in response to detecting the second gesture, translating the structured electronic document so that the second box is substantially centered on the touch screen display" to avoid prior art.   As a result, prosecution history estoppel applies and

1   precludes a finding of infringement under the doctrine of equivalents.   (Dkt. 2054-2 ¶53; Dkt.

2   2915-17 ¶89.)

3          Even if Apple were allowed to argue that the new code infringes under the doctrine of

4   equivalents, the new code does not infringe the '163 patent under the doctrine of equivalents.

5   Without the functionality associated with the second gesture, the updated products do not perform

6   substantially the same function, in substantially the same way, to achieve the substantially same

7   result.   The claimed function of centering a second box is no longer performed.   Instead, the

8   updated products perform a substantially different function of doing nothing (single tap) or

9   zooming out to the web pages' original size (double tap).   For the same reasons, the result of the

10  claimed function and the result of the function performed by the updated products are substantially

11  different.   (Dkt. 2054-2 ¶52-55; Dkt. 2915-17 ¶88-91.)

12         Mr. Gray also examined the Web Browser application operating on a Samsung Droid

13  Charge and a Galaxy Prevail.   The Samsung Droid Charge was running the following software:

14  Firmware version 2.3.6, Baseband version I510.06 V.FP1, SCH-I510.FP1, and Kernel version

15  2.6.35.7-FP1, and Build number SCH-I510.FP1.   The Galaxy Prevail was running the following

16  software:   Android version 2.3.6, Baseband version S:M820.07 X.FA19, Kernel version 2.6.35.7;

17  and Build number GINGERBREAD.FA19.   Mr. Gray concluded that the Samsung Droid Charge

18  and Galaxy Prevail do not literally infringe the '163 patent or infringe the '163 patent under the

19  doctrine of equivalents.   (Sep. 30, 2015 Gray Declaration filed herewith at ¶¶5-6.)

20         In briefing on Apple's motions for a permanent injunction, Apple did not dispute that, by

21  updating accused products with software disabling the centering of a second box of content in the

22  feature held to infringe the '163 patent, Samsung avoided any further infringement of the '163

23  patent.   (Dkt. 2127-2 at 14 n.5; Dkt. 2925 at 16.)

24                 **(b)**      Whether the Design Arounds were Raised at Trial

25         The '163 design around was not raised at trial because Samsung was precluded from doing

26  so.   (Dkt. 898 at 9, Dkt. 1106 at 3-4 ("[F]or each of the '381, '891 and '163 patents, Samsung

27  may not offer any evidence of its design-arounds.   This means no source code evidence, no non-

28

1   source code evidence, no evidence of any kind, whether for liability purposes or any other

2   purpose.").)

3                      **(c)**      If Not Raised at Trial, Why Not

4           Samsung was precluded from offering evidence regarding the '163 design around at trial.

5   (Dkt. 898 at 9, Dkt. 1106 at 3.)   These orders, however, do not preclude Samsung from relying

6   on design arounds in any post-trial proceedings.   (Dkt. 1106 at 4 ("Because Apple only requested

7   this sanction as to the upcoming jury trial, this restriction does not extend beyond trial to any post-

8   trial proceeding such as those relating to the permanent injunction sought by Apple or contempt

9   proceedings.").)   Following trial, Samsung introduced evidence of the '163 design around in its

10  post-trial opposition to Apple's initial motion for a permanent injunction without any objections

11  from Apple (Dkt. 2054), and again in its post-trial opposition to Apple's renewed motion for a

12  permanent injunction without any objections from Apple (Dkt. 2915-03).

13          **C.      '915 Design Around**

14                  **1.      The '915 Patent**

15          The '915 patent covers only software that executes either scrolling code or scaling code by

16  distinguishing between a single touch scroll and a two or more touch gesture.   The accused

17  software is a Web Browser application.   In more recent code for the Web Browser application,

18  motion events are sent to both the scroll code and scaling code where they are processed

19  independently by both the scroll and scaling code and therefore does not distinguish between a

20  single touch scroll and two or more touch gesture.   The new code does not infringe.

21                      **(a)**      The Basis for Non-Infringement

22          During the August 2012 trial, Apple's expert for the '915 patent, Dr. Singh, testified that

23  24 Samsung products infringed the '915 patent. More specifically, Dr. Singh testified that the Web

24  Browser application in these accused products infringed claim 8 of the '915 patent. Dr. Singh

25  testified that the Web Browser application infringed because it performed a "quintessential" and

26  "very important" test required by claim elements [c] and [d].   (Dkt. 1695 at 1823:3-1825:22.)

27  As Dr. Singh testified and as was shown in his demonstratives above, the "quintessential" and

28  "very important" test occurs in the line of source code "ev.getPointerCount() > 1" found in

1   Android's WebView code. Dr. Singh testified that this code receives a motion event and

2   distinguishes between a single input point and two or more input points.    If a single input point is

3   detected, the "ev.getPointerCount() > 1" test causes the code to proceed to a scroll operation. If

4   two or more input points are detected, the "ev.getPointerCount() > 1" test causes the code to

5   proceed to a gesture operation.

6   Samsung's expert, Stephen Gray, submitted declarations in support of Samsung's

7   opposition to Apple's initial request for a permanent injunction and renewed motion for a

8   permanent injunction in which he analyzed the '915 patent and Samsung's design around code.

9   (Dkt. 2054-2 ¶¶20-45; Dkt. 2915-17 ¶¶20-81.)    He concluded that Android version 4.0.4,

10   Baseband version T989UVLI1, Kernel version 3.0.8, and Build number IMM76D.UVLI1 "does

11   not infringe the '915 patent because it removes the "quintessential test" for distinguishing between

12   scroll and gesture operations required by '915 patent and instead employs a fundamentally

13   different technique for processing scroll and scaling operations."    (Dkt. 2054-2 ¶31; Dkt. 2915-

14   17 ¶31.)    As such, products running the new code, including the Galaxy S II (T-Mobile) running

15   Android version 4.0.4, Baseband version T989UVLI1, Kernel version 3.0.8, and Build number

16   IMM76D.UVLI1 do not infringe the '915 patent.    (Dkt. 2054-2 ¶¶44-45; Dkt. 2915-17 ¶¶44-45.)

17   "In the new code, the motion events are sent to both: (a) scrolling code in Webview that

18   processes scrolling operations, and (b) scaling code in WebviewScaleGestureDetector that

19   processes scaling operations.    Both (a) and (b) process the motion events independently."    (Dkt.

20   2054-2 ¶32; Dkt. 2915-17 ¶32.)    "Importantly, there is no code that determines whether the

21   scrolling code or scaling code should be executed 'by distinguishing between a single input point

22   applied to the touchsensitive display that is interpreted as the scroll operation and two or more

23   input points applied to the touch-sensitive display that are interpreted as the gesture operation' as

24   required by claim 8."    (Dkt. 2054-2 ¶35; Dkt. 2915-17 ¶35.)

25   Furthermore, the doctrine of prosecution history estoppel prevents Apple from arguing the

26   new code infringes under the doctrine of equivalents.    The claims of the '915 patent were

27   amended to add the narrowing limitation "distinguishing between a single input point . . . and two

28   or more input points . . ." to avoid prior art.    Consequently, prosecution history estoppel applies

-12-

1   and precludes a finding of infringement under the doctrine of equivalents.   (Dkt. 2054-2 ¶39; Dkt.

2   2915-17 ¶39.)

3          Even if Apple were allowed to argue that the new code infringes under the doctrine of

4   equivalents, the new code does not infringe for several reasons.   First, there are substantial

5   differences between the claimed technique for processing scroll and gesture operations and the

6   technique used by the new code.   The claimed technique examines the number of input points

7   and based on the results of that examination, invokes either a scroll or gesture operation.   The

8   technique utilized in the new code is fundamentally and substantially different. The new code does

9   not make any decision as to whether a scroll or gesture operation is invoked by examining the

10  number of input points or any other information.   Rather, the motion events are processed

11  independently by both the scroll and scaling code.   Second, the new code does not perform

12  substantially the same function, in substantially the same way, to obtain substantially the same

13  result.   The technique found to infringe performs the function of determining whether the event

14  object invokes a scroll or scale.   The way it performs this is by distinguishing between a single

15  input point applied to the touchsensitive display and two or more input points applied to the touch-

16  sensitive display. The result of this is that either a scroll call or a gesture call is issued.   The new

17  code performs a substantially different function from the old code because it does not determine

18  whether the event object invokes a scroll or scale operation.   Instead, the event objects are

19  independently processed by scrolling code and scale code.   Therefore, there is no determination

20  of whether an event object invokes a scroll *or* a gesture operation.   Even assuming the function

21  performed by the new code were the same as the function recited in the claim, the way in which

22  the function performed is substantially different.   The code found to infringe determines whether

23  an event object invokes a scroll or scale operation by distinguishing between the number of input

24  points applied to the touch screen display.   Dr. Singh identified this as the "quintessential" test.

25  The new code does not distinguish between the number of input points and therefore processes

26  scroll and scale operations in a substantially different way.   Finally, the new code produces

27  results that are substantially different than the claimed function.   For example, the claimed

28  function results in either a scroll or gesture operation based on a motion event.   The new code

1  however can result in both a scroll and scale operation occurring based on the same motion event.

2  (Dkt. 2054-2 ¶¶40-42; Dkt. 2915-17 ¶¶40-42.)

3      Mr. Gray also concluded that a new infringement theory advanced by Apple's expert, Dr.

4  Singh, after the filing of Apple's initial permanent injunction motions does not infringe the '915

5  patent literally or under the doctrine of equivalents.    (Dkt. 2915-17 ¶¶46-81.)

6              **(b)**    Whether the Design Arounds were Raised at Trial

7      Samsung did not present this design around to the '915 patent at trial.

8              **(c)**    If Not Raised at Trial, Why Not

9      This design around was not presented at trial because Samsung did not have this design

10  around until after trial.

11      **D.    D'305 Design Around**

12          **1.    The D'305 Patent**

13      The D'305 patent is limited to an interface with colorful square icons with rounded

14  corners.    The accused feature is the applications screen with icons placed on squares with

15  rounded corners, called "containers".    Firmware Version 2.3.6 updated the accused applications

16  screens to remove the containers from behind the icons, such that the icons are displayed with

17  various different shapes.    The Droid Charge products sold after the verdict incorporated the

18  changes made in Firmware Version 2.3.6 and do not infringe.

19              **(a)**    The Basis for Non-Infringement

20      Apple never accused products using the applications screens provided in Firmware Version

21  2.3.6 of infringing the D'305 patent.    According to Apple's expert, Dr. Susan Kare, having

22  uniform square icons with rounded corners was an integral part of the overall impression of the

23  D'305 design, and why she believed the D'305 Accused Products infringed it.    In describing the

24  D'305 patent at trial, Dr. Kare's first comment about the overall impression of the design was that

25  it was a "regular grid of icons that are square with rounded corners."    (Dkt. 1612 at 1367:12-13.)

26  Dr. Kare claimed that the home screen of the iPhone, iPhone 3G, 3GS, and 4G all embodied the

27  D'305 patent, despite having different colored backgrounds, in part because of the "shape of the

28  icons, the square with rounded corners."    (Dkt. 1612 at 1369-70.)    In describing the D'305

1   Accused Phones, Dr. Kare based her infringement opinion in part on the applications screen

2   having a grid of a "colorful mix of icons that are square with rounded corners."   (Dkt. 1612 at

3   1375:5-6.)   Dr. Kare also testified that the D'305 patent was not functional because non-

4   infringing alternatives existed.   For example, she testified that the user interface design of the

5   BlackBerry Torch 9850 was a non-infringing alternative to the D'305 patent because it "doesn't

6   look confusingly similar" to the patent.  (Dkt. 1612 at 1404:16-1405:7.)   In particular, Kare

7   testified that the lack of rounded square containers was significant for non-infringement: "just by

8   having the batch of icons not on a consistent shape, it just – it looks different. You see more

9   background."   (Dkt. 1612 at 1404:16-1405:7; Dkt. 1843 at 3473-74.)   Dr. Kare also testified

10  that the Pantech Hotshot (PX2277) and BlackBerry Storm (PX2278) were not substantially the

11  same as the D'305 design or the iPhone designs, in large part because those phones' icons did not

12  have consistent container shapes.   (Dkt. 1843 at 3468-69, 3472-73.)

13      Apple accused only the applications screens on the D'305 Accused Phones.   And Apple

14  accused only applications screens on Accused Phones running Firmware Version 2.3.5 or earlier,

15  which displayed applications screens with icons having square containers.   Firmware Version

16  2.3.6 updated those applications screens to remove the containers from behind the icons.

17      Samsung's expert, Sam Lucente, examined phones running the updated Firmware Version

18  2.3.6 and submitted a declaration in support of Samsung's opposition to Apple's request for a

19  permanent injunction.   (Dkt. 2057 ¶¶22-30; *see also* Ex. 1 to the Supplemental Declaration of

20  Sam Lucente filed herewith ¶¶22-30.)   He concluded that "Firmware Version 2.3.6 and the

21  updated applications screens create a substantially different overall appearance than the design

22  shown in the D'305 patent."   (*Id.* ¶29.)   And thus that an ordinary observer "would not find the

23  designs to be substantially the same, and would not be deceived into purchasing" the phones

24  thinking them to be the D'305 design.   (*Id.* ¶29.)

25      Mr. Lucente has since re-examined the icons displayed in Firmware Version 2.3.6,

26  including as displayed in the applications screen of the Droid Charge, and has confirmed that "the

27  updated applications screens displayed in Firmware Version 2.3.6 create a substantially different

28  overall appearance than the design shown in the D'305 patent" and that "an ordinary observer,

1  giving such attention as a purchaser of such devices usually gives, would not find the designs to be

2  substantially the same, and would not be deceived into purchasing the designed around Droid

3  Charge thinking it to display the D'305 design."    (Supplemental Declaration of Sam Lucente,

4  filed herewith, ("Supp. Lucente Decl.") ¶¶ 6-7.)

5      In briefing on Apple's motion for a permanent injunction, Apple did not dispute that by

6  updating accused products with Firmware Version 2.3.6 in place of the applications screens held

7  to infringe the D'305 patent, Samsung avoided any further infringement of the D'305 patent.

8  (Dkt. 2127-2 at 14 n.5.)

9                    **(b)**    Whether the Design Arounds were Raised at Trial

10      This design around was shown to the jury.    Several Samsung products in evidence at trial

11  incorporate the non-infringing applications screens rather than the feature held to infringe the

12  D'305 patent, and Apple did not accuse these products of infringing the D'305 patent.    For

13  example, the Galaxy S II (AT&T) (JX1031), Galaxy S II (T-Mobile) (JX1033), Galaxy S II (Epic

14  4G Touch) (JX1034), and Galaxy S II (Skyrocket) (JX1035) incorporate the non-infringing

15  applications screens in place of the feature held to infringe the D'305 patent.    Apple presented

16  images of these non-infringing alternatives to the jury.    (PX7.24, 7.28, 7.30, 7.32 (showing

17  images of the non-accused applications screens of the Galaxy S II (AT&T), Galaxy S II (T-

18  Mobile), Galaxy S II (Epic 4G Touch), and Galaxy S II (Skyrocket); Dkt. 1611 at 1048:22-25.)

19  Also, an image of the non-infringing applications screen in the Galaxy S II (T-Mobile) is included

20  in defendants' exhibit on "Samsung's Alternatives to the D'305 Patent."    (DX952.002; Dkt. 2843

21  at 1139:11-1140:14.)

22                    **(c)**    If Not Raised at Trial, Why Not

23      As explained above, this design around was raised at trial.

24  **E.    D'677 Design Around**

25          **1.    The D'677 Patent**

26      The D'677 patent is limited to a device with a black front face.    The accused devices all

27  had black front faces.    Samsung sold devices with white front faces (the Galaxy S II (Skyrocket),

28

1    Galaxy S II (T-Mobile), and Galaxy S II (Epic 4G Touch)) and with gray front faces (the Galaxy S

2    II (T-Mobile) and Galaxy S II (Epic 4G Touch)).    Phones with a non-black face do not infringe.

3                              **(a)**    The Basis for Non-Infringement

4           The D'677 patent states that "The claimed surface of the electronic device is illustrated

5    with the color designation for the color black."   (JX1043.02.)    Apple has repeatedly conceded

6    that the D'677 patent is limited to covering black devices.

7           First, in support of Apple's Preliminary Injunction Reply, Apple's expert, Mr. Peter

8    Bressler, attached an image of a white Galaxy S II i9100 as an alternative to the black color of the

9    D'677 patent.    (Dkt. 279 ¶ 87, Dkt. 281-10.)    Mr. Bressler also noted that many alternative

10   phones were on the market in 2006 that "were not black" including "many other smartphones in

11   2006 [that] were silver or chrome."    (Dkt. 279 ¶¶ 64, 92.)    Apple's Preliminary Injunction reply

12   brief, as well as Mr. Bressler's supporting declaration, also distinguished Samsung's prior art from

13   D'677 on the basis that they were not black.    (Dkt. 282 at 6-7; Dkt. 279 ¶¶ 62, 67-70.)    The

14   Court also agreed that the D'677 is limited to black front faces.    (Dkt. 452 at 21-24 & n.14.)

15          Second, in a declaration filed in response to Samsung's design patent claim construction

16   brief, Mr. Bressler argued that the black color in the D'677 patent was not functional because there

17   were alternatives to the D'677 design that did not use a black face.    Specifically, in a section of

18   his declaration titled "A Smartphone Need Not Have a Black Surface Like the D'677 Patent," he

19   showed an image of a white Galaxy S II Epic 4G Touch (SPH-D710) and said "Samsung's Galaxy

20   S II line of phones comes in white versions."    (Dkt. 1140-31 ¶ 94.)    He also said that "a gray or

21   silver colored surface, as in Samsung's Sunburst or i700 phones and the LG Thrive (below), are

22   also frequently used."    (*Id.* at ¶ 95.)    During the design patent claim construction hearing,

23   Apple's counsel made the following statement:    "In the first patent [D'677] where the front face

24   is shown in black, you are narrowing that claim to an electronic device by saying whatever else is

25   true of the front face, it must be black.    That's a limitation of this claim. . . . .    It wouldn't meet

26   the first claim unless the front face was black."    (July 24, 2012 Hearing Tr. 14:14-15:8.)

27          Third, Apple never accused any white or gray phone of infringement of the D'677

28   patent.   Samsung Interrogatory No. 72 required Apple to "Separately for each SAMSUNG

product that YOU contend infringes any APPLE DESIGN PATENT, state fully and in detail on a

patent-by-patent basis all facts supporting YOUR contention of infringement, describe fully and in

detail on a patent-by-patent basis where each claimed element or feature of the patent is found on

the accused SAMSUNG product and provide a chart identifying fully and in detail on a patent-by-

patent basis specifically where each claimed element or feature is found on the accused

SAMSUNG product."   Apple's final response to this interrogatory for the D'677 patent identified

14 different Samsung phones as infringing and provided pictures of the accused phones.   (Apple

Inc.'s Objections and Responses to Samsung's Fourth Set of Interrogatories at 94, 111-132 (dated

March 10, 2012).)   All of the accused phones were black, including the Galaxy S II (Epic 4G

Touch), Galaxy S II (T-Mobile), and Galaxy S II (Skyrocket).   (*Id.* at 118, 119, 121.)

Fourth, at summary judgment, Apple again distinguished Samsung's prior art because it

lacked, among other things, a black front surface.   (Dkt. 997-02 at 13-14.)

Fifth, during trial, Mr. Bressler also stated that the D'677 patent was limited to the color

black: "[Y]ou can see from the shading that what's being claimed in this design is the front face of

an electronic device that is black in color."   (Dkt. 1611 at 1014:2-8; *see also id.* at 1050, 1053;

Dkt. 1843 at 3592, 3598-99 (Mr. Bressler testifying that the accused products infringed in part

because of their black front surfaces, and distinguishing prior art because they lacked black front

faces).)

Moreover, the Court instructed the jury that the surface shading on D'677 represents the

color black.   (Dkt. 1903, Inst. No. 43.)

Samsung's expert, Sam Lucente, examined white and gray versions of the Galaxy S II Epic

4G Touch and Galaxy S II (T-Mobile) and submitted a declaration in support of Samsung's

opposition to Apple's request for a permanent injunction.   (Dkt. 2057 ¶¶ 12-21 (submitted

herewith as Ex. 1 to Supp. Lucente Decl.).)   Mr. Lucente concluded that neither the white

versions nor the grey versions (which he referred to as "Gray Metallic Versions") of these phone

infringe the D'677 patent.   "Because the D'677 patent claims the color black, it has a claim scope

that is limited to that color.   Each of the white versions and the Gray Metallic Versions employs a

non-black color to the mask area around the display screen.   By definition, anything other than

1  black is not claimed by the D'677 patent and should not be found to infringe."   (*Id.* ¶17.)

2  "Moreover, using a non-black color for the mask creates a completely different visual impression

3  on the ordinary observer that differentiates the white versions and Gray Metallic Versions from the

4  D'677 patent.   Once a non-black color is used for the mask, the front surface no longer appears as

5  a continuous black surface as described by Mr. Bressler and as shown on the D'677 patent."   (*Id.*

6  ¶18.)

7          The use of a non-black color for the mask area on the design around products causes the

8  design elements in the mask region to more readily stand out to the ordinary observer.   (*Id*. ¶19.)

9  For example, the receiver on the white and gray versions is finished in perforated polished chrome

10  so that it stands out very distinctly from the white or gray mask area.   (*Id.* ¶19.)   In each of these

11  phones, it is quite noticeable that the receiver element is differently shaped, protrudes slightly

12  above the glass surface, and is much closer to the top edge of the design than is the small, recessed

13  lozenge shaped element located above the display in the D'677 patent.   (*Id.*)   This element in

14  the D'677 patent is uniform in color with the remainder of the front face, causing it to blend into

15  the overall, homogenous design.   (*Id.*)   The shape of the receivers on the gray phones are also

16  visually distinct from the D'677 design; the Galaxy S II (T-Mobile) has an almost trapezoidal

17  shape and the Galaxy S II has a longer thinner form and both have numerous circular holes in

18  them.   (*Id.*)   In addition, the camera sensor apertures on the design around phones appear as

19  distinct black holes or circles against the surrounding white or metallic gray mask areas.   (*Id.*)

20  These contrasting colors serve to make those elements stand out more prominently to an ordinary

21  observer as compared to the uniform black face of the D'677 patent.   (*Id.*)

22          That the ordinary observer would notice the difference between black and non-black

23  designs is further supported by the way that consumers purchase costly electronic devices,

24  especially those that are purchased in conjunction with a cellular service contract.   (*Id*. ¶20.)

25  Ordinary consumers of expensive electronic devices, including cellular telephones and other

26  handheld electronic devices, typically do research for a period of time before making a purchase

27  and most sales of cellular phones are assisted by a sales professional who explains available

28  models, features, and service plans.   (*Id.*)   Also, it is common for products to be released in

1   different colors to suit different consumer preferences, and consumers are adept at distinguishing

2   between various colored models, including between black and non-black models and even models

3   in different shades of the same color.    Indeed, the human eye is capable of distinguishing

4   thousands of different hues.    (*Id.*)

5         "An ordinary observer, giving such attention as a purchaser of electronic devices usually

6   gives, would not find the designs to be substantially the same, and would not be deceived into

7   purchasing the white or Gray Metallic Versions of the Galaxy S II (T-Mobile) (SGH-T989) or the

8   Galaxy S II Epic 4G Touch (SPH-D710) thinking them to be the D'677 design."    (*Id*. ¶21.)

9         Mr. Lucente has since re-examined these four design around devices for the D'677 patent

10   and has also examined the physical version of the white Galaxy S II (Skyrocket).    (Supp. Lucente

11   Decl. ¶¶ 3-4.)    Mr. Lucente has concluded, for the same reasons he provided previously, that "the

12   front faces of the white Galaxy S II Skyrocket, the white and gray Galaxy S II (T-Mobile), and the

13   white and gray Galaxy S II Epic 4G Touch devices create substantially different overall

14   appearances from the design shown in the D'677 patent" and that based on side-by-side

15   comparisons with the D'677 patent "an ordinary observer, giving such attention as a purchaser of

16   such electronic devices usually gives, would not find the devices to be substantially the same as

17   the D'677 design, and would not be deceived into purchasing any of the devices thinking them to

18   be the D'677 design."    (*Id.* ¶5.)

19         In briefing on Apple's motion for a permanent injunction, Apple did not dispute that by

20   updating accused products to use a white front face in place of the black front face found to

21   infringe the D'677 patent, Samsung avoided any further infringement of the D'677 patent.    (Dkt.

22   2127-2 at 14 n. 5.)

23                  **(b)**    Whether the Design Arounds were Raised at Trial

24         At trial, Apple repeatedly contended that Samsung's prior art showed phones that are "not

25   black" in order distinguish the prior art from the D'677.    (Dkt. 1842 at 3592:1-2 ("I think one can

26   see that the front face is not black") (Mr. Bressler); DX728; Dkt. 1842 at 3598:2-4 ("In addition to

27   that, it is not drawn depicting a transparent face around the display, nor is it depicting black." )

28   (Mr. Bressler); DX511.)    Apple further told the jury in its closing statement that Samsung's prior

1    art depicted "not black" phones: "[KR'547] doesn't look anything like the iPhone patents.    There

2    is no edge-to-edge continuous material on the front face.    It's not black."   (Dkt. 1997 at 4104:7-

3    10 (referring to DX727); *see also* Dkt. 1997 at 4105:2-6, 7-12 (discussing DX511, DX728

4    respectively).)

5            Moreover, Apple based its infringement case on affirmatively distinguishing non-black

6    design arounds from the black device claimed in the D'677 patent.    During trial, Mr. Bressler

7    stated that the D'677 patent was specifically limited to the color black: "[Y]ou can see from the

8    shading that what's being claimed in this design is the front face of an electronic device that is

9    black in color."   (Dkt 1611 at 1014:2-8; *see also id.* at 1050, 1053 (Mr. Bressler testifying that

10   the accused products infringed in part because of their black front surfaces).)

11           And indeed, the D'677 patent itself confirms that it claims a device with a black face.

12   (JX1043.02 ("The claimed surface of the electronic device is illustrated with the color designation

13   for the color black")).    The Court explicitly instructed the jury that the D'677 is limited to a

14   device with a black face.    (Dkt. 1903 (Inst. No. 43: "The use of solid black surface shading on the

15   D'677 Patent represents the color black.").)

16                      **(c)**    If Not Raised at Trial, Why Not

17           Consistent with Apple's contention that Samsung's prior art shows phones that are "not

18   black," and therefore do not show the device claimed in the D'677 patent, Apple never accused

19   any white or gray phones of infringement of the D'677 patent.    To the contrary, as described

20   above, Apple repeatedly conceded, including at the preliminary injunction, claim construction, and

21   summary judgment phases, as well as through discovery responses, trial testimony and attorney

22   argument, that the D'677 patent is limited to the color black.    And the Court held the D'677 is

23   limited to black, and instructed the jury accordingly.    Having obtained those admissions and

24   rulings, Samsung was under no obligation to spend further trial time or trial exhibits repeating

25   examples of white, gray, or other non-black, non-infringing colors to the jury.    It was Apple's

26   burden to show infringement, not Samsung's burden to show that phones with a non-black face,

27   which were never accused of infringing the D'677, do not infringe.

28

1   DATED:     September 30, 2015        QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
2

3                                        By    /s/ Victoria F. Maroulis
                                              Charles K. Verhoeven
4                                             Kathleen M. Sullivan
                                              Kevin P.B. Johnson
5                                             Victoria F. Maroulis
                                              Michael T. Zeller
6
                                              Attorneys for SAMSUNG ELECTRONICS CO.,
7                                             LTD., SAMSUNG ELECTRONICS AMERICA,
                                              INC., and SAMSUNG
8                                             TELECOMMUNICATIONS AMERICA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28