[COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**JOINT SUBMISSION PURSUANT TO COURT'S SEPTEMBER 18, 2015 ORDER (DKT. 3289)** |

Pursuant to the Court's September 18, 2015 Order (Dkt. 3289), the parties provide this joint submission.

1    APPLE'S POSITION

2        Since the 2012 verdict, Samsung has sold over two million units of the same smartphones

3    that the jury found to infringe.  These post-verdict sales involved smartphones with the same

4    names, software, and color categories as certain units included in the verdict that both this Court

5    and the Federal Circuit have confirmed.  Yet Samsung asks the Court to revisit questions that the

6    jury already resolved and to consider arguments that Samsung failed to raise at trial or on appeal.

7    Samsung's actions have foreclosed that path.  The jury has resolved Apple's claims regarding

8    infringement for products using the alleged "design arounds."  Neither Apple nor the Court needs

9    to revisit evidence that Samsung either did present, or could have presented, at trial.

10       Samsung also failed to pursue its appeal of the Court's supplemental damages

11   methodology.  The Court should not revisit that methodology, particularly when it explicitly

12   suggested that any objections to its decision be raised on appeal.  Without ordering new discovery

13   and a new trial, the Court should follow the methodology set out in its March 1, 2013 Order and

14   calculate supplemental damages based on units sold of the products the jury found to infringe.

15   **I.    THE PRODUCTS AT ISSUE WERE INCLUDED IN THE DAMAGES VERDICT.**

16       Supplemental damages ensure that a patentee receives compensation when a defendant

17   sells the same products that were included in a prior damages award after the trial.  *See Hynix*

18   *Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 961 (N.D. Cal. 2009).  An award of

19   supplemental damages does not require a new trial on infringement because the jury already

20   resolved the question of infringement and damages.  *See Hynix*, 609 F. Supp. 2d at 961-62

21   (awarding supplemental damages because the jury had sales figures for the disputed product).

22       The July 2012 Joint Pretrial Statement and Order defined Apple's contentions.  Apple

23   accused each of three Galaxy S II products generally, without reference or restriction to color or

24   software build.  (Dkt. 1189 at 2 (*e.g.*, Apple "has accused the following products of infringing the

25   following design and utility patents: . . . Galaxy S II (T-Mobile)").)  Apple similarly accused the

26   Droid Charge and Galaxy Prevail generally, without reference or restriction to a specific firmware

27   version or software build.  (*Id.* at 3.)  Samsung's claims that Apple limited its accusations are

28   defeated by these plain statements defining the issues to be tried under Rule 16.  *S. Cal. Retail*

1

1    *Clerks Union & Food Emp'rs Joint Pension Tr. Fund v. Bjorklund,* 728 F.2d 1262, 1264 (9th Cir.

2    1984) ("[A] pretrial order controls the subsequent course of the action.").

3        On August 24, 2012, the jury found that Samsung's sales of all three Galaxy S II products,

4    the Galaxy Prevail, and the Droid Charge infringed Apple's patents.  (Dkt. 1931.)  The jury

5    awarded Apple damages for ***all*** units of these five products sold before June 30, 2012, ***including***

6    ***Galaxy S II units that were not black: some were white and some were dark gray***.  The sales

7    before the jury included Droid Charge units with the software that Samsung now claims is a

8    "design-around" to the D'305, '381, and '163 Patents.  Samsung has never denied this.

9        In fact, Samsung admits that it sold non-black versions of the accused Galaxy S II

10   products as early as November 23, 2011.  (Dkt. 3307 at 4.)  The D'305 "design-around" was

11   included in the Droid Charge no later than April 26, 2012.  (*Id.* at 3:11-13.)  And per Samsung the

12   source code that allegedly designs around the '381 and '163 Patents was included in products no

13   later than "December 14, 2011" and "April 26, 2012," respectively.  (*Id.* at 3:5-13.)

14       The jury awarded Apple damages on all variations of the accused products.  JX1500

15   provided the stipulated count of all the "units and revenues for each of the accused products."

16   (Dkt. 1597 ¶ 6(a); Dkt. 1839 at 2041:12-22.)  JX1500 included every sale of each supplemental

17   damages product through June 30, 2012 without any breakdown by color, firmware, or software

18   code.  The totals match the figures presented in two other trial exhibits that reflect Samsung's

19   sales of all Galaxy S II, Droid Charge, and Galaxy Prevail products.  (PX180; DX676).[1]  The jury

20   calculated damages for all sales of accused smartphones included in JX1500, including units that

21   incorporated each of the "design-arounds" on which Samsung relies.  That decision, not

22   speculation about the jury's intent, controls the outcome here.

23   ## II.   SAMSUNG COULD HAVE MADE ITS PRESENT ARGUMENTS AT TRIAL.

24       Samsung could have raised at trial the arguments it now advances, but it did not.  The jury

25   verdict thus resolved the issues of infringement and damages for these five smartphones.

26   _____

27       [1] Samsung also produced spreadsheets including model numbers for white and "titanium
     gray" Galaxy SII units that were included in the totals its damages expert submitted to the
28   jury.  (*See* SAMNDCA-D-0000011; Wagner's "Support for Volume 1, Tab6.accdb.")

JOINT SUBMISSION PURSUANT TO
                                                 CASE MANAGEMENT ORDER

1    Contrary to Samsung's argument, Apple has consistently opposed Samsung's attempts to reduce

2    supplemental damages based on these arguments. (Dkt. 2919-3 at 6-9.)

3        ***D'677 Patent*** *(Galaxy S II products only).* Nothing prevented Samsung from asking the

4    jury to exclude sales of Galaxy S II units based on color. To do so, Samsung needed to identify

5    those units, argue that they did not infringe, and exclude them from the damages totals submitted

6    by its expert. Neither Samsung nor its experts ever did so. In fact, Samsung's damages expert

7    admitted there was "no reason that [he] couldn't have disclosed" an opinion that "white" and

8    "gray" phones designed around the D'677 patent in his April 2012 report. (Dkt. 2382-5 at 814:2-

9    815:6.) Judge Grewal's sanctions order never addressed the D'677 Patent. (Dkt. 1106 at 3:25-

10   4:2.) Samsung's repeated representations to the contrary at the recent CMC are inexplicable.

11   (Sept. 18, 2015 Hr'g Tr. at 69:15-70:15, 72:5-19.) Samsung *chose* to present very limited

12   noninfringement defenses at trial; it never called Dr. Anders, its noninfringement expert on the

13   D'677 patent, to testify. Nor did Mr. Wagner raise the issue of color. As a result, consistent with

14   JX1500, the jury awarded damages on all Galaxy S II smartphones regardless of color.

15       ***'381 and '163 Patents*** *(Droid Charge and Galaxy Prevail).*[2] Because Samsung failed to

16   produce all design-around code by a court-ordered deadline, Judge Grewal precluded Samsung

17   from presenting its late-disclosed noninfringement positions for the '381 and '163 patents at trial.

18   (Dkt. 1106 at 2-4.) The order did not decide whether this sanction should apply post-trial. (*Id.* at

19   4.) But the logic and equities still point to preclusion, as the Court recognized at the September

20   CMC. (Sept. 18 Hr'g Tr. 71:16-72.2.) Had Samsung complied with Judge Grewal's order, it

21   could have presented its non-infringement positions to the jury. The Court should not reward the

22   violation of its discovery order with a new infringement trial.

23       ***D'305 Patent*** *(Droid Charge only).* Samsung claims that the D'305 Patent design-around

24   was presented at trial (Dkt. 3307 at 16:9-23), but points to no such evidence or argument. In fact,

25   Samsung showed the ***pre-design-around*** version of the Droid Charge during closing argument,

26   _____

27       [2] Although one Galaxy S II product infringed the '163 Patent, Samsung's design-around arguments do not affect supplemental damages for that product; all damages for that product arose from design patents. (*Apple, Inc. v. Samsung Elecs. Co.*, No. 14-1335, Dkt. 34 at 9.)

28

JOINT SUBMISSION PURSUANT TO
                                          CASE MANAGEMENT ORDER

1   but argued only (and unsuccessfully) that differences between it and the D'305 patent established

2   noninfringement.  (Dkt. 1997 at 4164-74.)  Moreover, Samsung did not try to exclude any Droid

3   Charge units from damages based on the implementation of any alleged design-around.  The jury

4   found that the Droid Charge infringed the D'305 Patent, making no distinction among products

5   sold before or after April 16, 2012, when the alleged design-around was implemented.

6        This Court has repeatedly refused to allow the parties to raise arguments that they could

7   have made, but did not make, at trial.  For example, the Court denied Apple's request for

8   supplemental damages between June 30 and the verdict because "nothing precluded Apple from

9   arguing that the jury should consider sales from June 30 through August 24, or from presenting

10  evidence on how to estimate such sales."  (Dkt. 2271 at 3:20-22.)  The Court similarly cut off

11  Samsung's belated effort to draw distinctions between different models of Gem phones prior to

12  the damages retrial.  (Dkt. 2635 at 1-4.)  The issue here is no different.  Arguments that Samsung

13  could have made to the jury do not justify a reduction in supplemental damages now.

14       ***Samsung's "New" Design-Arounds***. Samsung seeks to avoid its strategic choices by

15  claiming that two of the alleged "design-arounds" were available only after August 2012 and

16  could not have been raised at trial.  Neither issue prevents an award of supplemental damages.

17       *First*, Samsung's claim that it implemented a new design-around to the '915 Patent in the

18  Galaxy S II T-Mobile in fall 2012 is irrelevant because, as Samsung admits, damages for this

19  product are all attributable to Samsung's infringement of the D'677 design patent.  (*Apple, Inc. v.*

20  *Samsung Elecs. Co.*, No. 14-1335, Dkt. 34, at 9.)  Thus, the '915 Patent has no effect on the

21  calculation of supplemental damages.  Moreover, Samsung's expert confirmed that the relevant

22  source code was available in July 2012.  (Dkt. 2915-17 at 12 n.2.)

23       *Second*, Samsung's argument that its "steel gray" Galaxy S II product was first introduced

24  in fall 2012 ignores Samsung's complete failure to raise color as a defense at trial.  Apple accused

25  the Galaxy S II products without reference to color.  JX1500 included units without reference to

26  color, and the jury awarded damages for the Galaxy S II products without reference to color.

27  Many shades of gray were available both before and after trial, but having failed to raise color as

28  a defense at trial, Samsung cannot exclude "gray" phones from supplemental damages now.

4                                                    JOINT SUBMISSION PURSUANT TO
                                                     CASE MANAGEMENT ORDER

### III.   SAMSUNG DID NOT CHALLENGE THE COURT'S METHODOLOGY ON APPEAL.

After the Court resolved the methodology for calculating supplemental damages in March 2013 and decided that the actual unit sales for these five products would be used (Dkt. 2271 at 3), it told the parties that "obtaining the Federal Circuit's guidance, both as to the merits as well ***as to how to calculate supplemental damages***, before proceeding with an accounting is the most efficient and acceptable way to proceed." (Dkt. 2947 at 3 (emphasis added); *see also* Dkt. 2271 at 6.).  Thus, "if [Samsung] objected to this calculation method because it would include non-infringing sales, then you should have raised that and said this calculation method was legally erroneous because it is over-inclusive on non-infringing sales."  (Sept. 18 Hr'g Tr. at 58:18-22.)

Despite noticing its appeal of "each and every part" of the Court's judgment and attaching the Court's March 1 Order on damages to its appellate brief, Samsung did not pursue the methodology issue on appeal, although it challenged other aspects of the March 1 Order.  (Dkt. 3018.)  Thus, the Federal Circuit's mandate forecloses Samsung's arguments, each of which was presented to this Court in fall 2012 *before* the Court decided on its methodology and before Samsung's appeal.  *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008).  Moreover, Samsung's argument that this Court's order on methodology was not appealable is both belied by the fact that Samsung did appeal from that order and unsupported by the cases Samsung cites, none of which even involves supplemental damages.  Indeed, in *Orenshteyn v. Citrix Sys., Inc.*, the only binding precedent Samsung cites, the Federal Circuit made clear that the sanctions award at issue was not appealable because, unlike supplemental damages, sanctions "are not compensation for the injury giving rise to the action."  691 F.3d 1356, 1358 (Fed. Cir. 2012) (internal quotations omitted).  Here, where the supplemental damages award depends on the jury's infringement findings, Samsung was obligated to raise any objection to the Court's methodology in connection with its appeal of those findings.  Because it failed to do so, it is now bound by the Court's prior decision.  *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902 (Fed. Cir. 1986) (noting that district court's prior "finding of willful[] infringement is the law of the case" when assessing whether enhanced damages award was appropriate).

**SAMSUNG'S RESPONSE**

Most of the phones sold after the verdict incorporate the design arounds identified in Samsung's Supplemental Damages Statement, Dkt. 3307.  Apple does not deny that these design arounds avoid its patents.  Yet Apple now seeks to have the Court award supplemental damages for these non-infringing phones.  There is no merit to Apple's contention that the ***model name*** of the phone, and not whether it infringes, establishes Apple's right to supplemental damages.  The jury never found that any of Samsung's design arounds infringe Apple's patents and Samsung had no obligation to raise its design arounds at trial or on appeal.

**I.      Samsung Has Not Waived Any of Its Arguments Regarding Its Design Arounds**

It was not Samsung's burden to raise its actual design arounds at trial in order to preserve its right to rely on those design arounds for the purpose of determining supplemental damages.  Rather, it is Apple's burden to prove infringement of its patents to recover post-verdict supplemental damages, not Samsung's burden to prove non-infringement.  Dkt. 3280 at 2 (citing cases).  Apple has not cited any authority to the contrary, and fails to rebut Samsung's authorities showing that supplemental damages are limited to infringing sales.  *Hynix* supports Samsung's position, not Apple's.  *Hynix* awarded supplemental damages for post-verdict ***infringement,*** based on the parties' agreement that the products subject to supplemental damages had been adjudicated to infringe.  *Hynix Semiconductor*, 609 F. Supp. 2d at 961-62.  Hynix argued only against double recovery; it did not contest infringement or rely on design arounds.  *Id.*

Apple's argument that it accused some of Samsung's design arounds by including them in the JPTS is unavailing.  The phones in evidence with the features accused of infringement control the scope of the infringement findings, not the model numbers in the JPTS, *see Mechmetals Corp. v. Telex Computer Prods., Inc.*, 709 F.2d 1287, 1294 (9th Cir. 1983).   Apple neither accused the phones containing the design arounds nor presented the jury with any evidence of their infringement.  Merely because the JPTS used model names without reference "to color or software build" does not entitle Apple to perpetual damages even after Samsung implemented non-infringing colors and software.  Apple points to no trial exhibit or testimony that identifies any of Samsung's design arounds as being either (1) accused of infringement or (2) identified in

6

1    the sales data that went to the jury.  Likewise, Apple cites no trial testimony or evidence to

2    support its assertion that a high-level summary of sales units used at trial included some early

3    design around sales.  Therefore there is no basis to find that the jury intended to award damages

4    for phones containing Samsung's non-accused design arounds.

5         As to particular design arounds, Apple concedes Samsung was never precluded from

6    offering evidence of the '381 and '163 design arounds during post-trial proceedings.[3]  Yet Apple

7    now asks the Court to extend that preclusion–without a motion or hearing–in order to grant Apple

8    a windfall of supplemental damages on non-infringing phones.  Moreover, a phone with the blue

9    glow design around to the '381 patent was in evidence, and Apple did not contend that the blue

10   glow design around infringes.  *Id.* at 8; JX1033; Dkt. 1931 at 2.  Samsung did not have the '915

11   design around until after the verdict.  Dkt. 3307 at 14.[4]  Even under Apple's strained theories,

12   Samsung could not have waived this design around.  The '915 design around is relevant because

13   it was used in white and steel gray phones that Apple does not dispute avoid the D'677 patent.

14        The D'305 design around was in evidence at trial, and Apple did not contend that products

15   incorporating the design around infringe.  Dkt. 3307 at 16; Dkt. 1931 at 7.  Apple's contention

16   that the Droid Charge with the design around was not "raised as a defense" misses the mark.  The

17   relevant fact is the design around was not accused of infringement, and it was not Samsung's

18   burden to show what Apple has always admitted.  *See Minemyer v. R-Boc Representatives, Inc.*,

19   No. 07 C 1763, 2012 WL 2423102, at *2-3 (N.D. Ill. June 26, 2012) (finding plaintiff failed to

20   show he was entitled to supplemental damages for redesigned products in part because he never

21   identified redesigned products in his infringement contentions and did not accuse those products

22   at trial).  Apple does not dispute the D'677 design arounds.  Apple's statement that it "accused the

23   Galaxy S II products without reference to color" is false.  Apple repeatedly told the Court and the

24   jury that the D'677 is limited to black, and that phones that "were not black," including "silver or

25   _____

26   [3]   As stated in Samsung's Supplemental Damages Statement, Dkt. 3307, Samsung agrees
      that the Court's preclusion order applied only to the '381, '891, and '163 patents.

27   [4]   Samsung's expert merely indicated that Google, *not* Samsung, had the relevant source
      code in July 2012. (Dkt. 2915-17 at 12 n.2.)

28

7                                                        JOINT SUBMISSION PURSUANT TO
                                                         CASE MANAGEMENT ORDER

chrome," "white," and "gray or silver colored" phones, do not infringe.  Dkt. 3307 at 17 (quoting

Mr. Bressler).  Indeed, on June 26, 2012, Apple identified a white Galaxy S II phone as not

infringing the D'677.  *Id.*; Dkt. 1140-31 at ¶ 94.  Apple does not contend that any white or gray

phone was in evidence.  Apple's argument that white versions of some phones were released

before the verdict but the design around was not "raised as a defense" again misses the mark,

because Samsung did not bear the burden to show non-infringement.  As with the D'305, these

products were never accused and admitted not to infringe.[5]  Separately, the steel gray versions of

Galaxy S II (T-Mobile) and Galaxy S II (Epic 4G Touch) were not sold until after the verdict.

Dkt. 3307 at 4.  Apple does not and cannot contend that any trial evidence or testimony applies to

the steel gray phones.

### A.    Apple waived any arguments that Samsung cannot rely on design arounds in post-trial proceedings

Samsung argued in opposition to Apple's original request for supplemental damages

(based on projected sales by model) that the projections were overstated because they failed

account for Samsung's non-infringing design arounds.  Dkt. 2053 at 28.  Apple did not object to,

or dispute the relevance of, design arounds, but instead argued that its projections did take into

account design arounds.  Dkt. 2132 at 19.  In its opposition to Apple's motion for a permanent

injunction, Samsung submitted evidence establishing its design arounds from Messrs. Lucente

(D'677 and D'305), Gray ('915), and van Dam ('381).  Dkt. 2054 at 13-15; 2054-02; 2054-05;

2057.  Far from seeking to preclude design arounds from the post-trial proceedings, Apple instead

took discovery on them, Dkt. 2105, and addressed the impact of Samsung's design arounds on

both its initial and renewed motions for an injunction.[6]  Throughout both permanent injunction

---

[5]    Apple's response to Samsung's Interrogatory No. 72 identified fourteen phones that it alleged infringed the D'305 patent, none of which contained Samsung's design around, and fourteen phones that it alleged infringed the D'677 patent, but all of those phones were black. Dkt. 1185-23 at 111-122; 144-151.  *See also* Dkt. 3307 at 14-16 & 17-21.

[6]    For Apple's initial motion, Apple took the depositions of Lucente and Gray, Dkt. 2127-04 at 3, addressing their design around testimony in its reply brief, Dkt. 2127-02.  Apple also submitted new evidence from Mr. Singh, Dkt. 2127-03, whom Samsung deposed, Dkt. 2183-02, and Gray rebutted.  *Id.*  In its renewed motion, Apple itself raised Samsung's design arounds, Dkt.

(Footnote continues on next page.)

JOINT SUBMISSION PURSUANT TO
                                                       CASE MANAGEMENT ORDER

1    proceedings, in this Court and the Federal Circuit, Apple never objected to Samsung's use of

2    design around evidence, whether based on arguments from waiver, the jury findings, previous

3    court orders, or any other basis.  Consequently, Apple conceded Samsung's right to rely on its

4    design arounds in post-trial proceedings and has waived any challenge now.

5    **II.    The Court's Methodology Does Not Allow Supplemental Damages for Non-
6             Infringing Design Arounds, Therefore That Issue Was Not Appealed.**

7             **A.    The Court's Order does not provide for damages on non-infringing products.**

8    The Court's methodology for calculating supplemental damages only applies to infringing

9    sales—not to sales of products containing non-infringing design arounds.  Dkt. 2271 at 2

10   ("Section 284 requires that the Court award compensation for every *infringing* sale.") (emphasis

11   added); *and id.* at 5 (reasoning that supplemental damages can be awarded where "there is an

12   'absence of any meaningful distinction between pre-verdict and post-verdict *infringement*.'"

13   (emphasis added) (quoting *Hynix*, 609 F. Supp. 2d at 965)).

14   The Court's rationale for addressing supplemental damages after appeals confirms that

15   only infringing sales are eligible for supplemental damages.  At the hearing on Apple's motion,

16   Samsung explained that it would be premature to award supplemental damages based on findings

17   of liability that could be reversed on appeal, Dkt. 2200 at 78:18-22, and the Court agreed with

18   Samsung, Dkt. 2271 at 6.  For example, the Court's methodology for calculation of supplemental

19   damages would have originally included supplemental damages based on trade dress liability; but

20   because the Federal Circuit reversed trade dress liability, there now can be no award of

21   supplemental damages based on trade dress.  That conclusion is not in dispute, confirming that an

22   award of damages must be limited to infringing post-verdict sales.  Thus there was no reason for

23   Samsung to appeal the methodology for calculating supplemental damages.

24             **B.    In Any Event, The Court's Final Judgment Did Not Include Any Amount of
25                    Supplemental Damages That Could Have Been Appealed.**

26   (Footnote continued from previous page.)

27   2897 at 8; Samsung again submitted design around evidence from Gray and van Dam, Dkt. 2915-
     03 at 4, 20, 22; 2915-17, 1915-23, which Apple addressed on reply, Dkt. No. 2925 at 12.

28

JOINT SUBMISSION PURSUANT TO
                                                                   CASE MANAGEMENT ORDER

1    Separately, the final judgment did not include any monetary award of supplemental

2    damages subject to appeal because the Court did not grant Apple's motion under Rule 59(e) to

3    amend the judgment to include Apple's requested supplemental damages.  Dkt. 1989 at 26.  The

4    Court's post-trial order addressed multiple post-trial motions, including rulings on JMOL and

5    new trial motions—which were appealable—but the Court's statement of a methodology for

6    determining supplemental damages had no impact on the amount of the judgment.  Therefore that

7    separate statement was not appealable.

8    Samsung was not able to request an advisory opinion from the Federal Circuit on a future

9    award, especially because, as described above, the Court's ruling on supplemental damages was

10    conditioned on a determination of infringing post-verdict sales.  *See, e.g, Mead v. Reliastar Life*

11    *Ins. Co.,* 768 F.3d 102, 110-11 (2d Cir. 2014) (finding that a ruling setting forth the formula to

12    calculate the amount owed to plaintiff was not final and not appealable because the calculation of

13    the amount owed "is dependent upon resolving a number of underlying factual questions").  In

14    general, an order stating an intention to amend a money judgment but not calculating the amount

15    is not appealable.  *See Orenshteyn, Inc.,* 691 F.3d at 1357-58 (dismissing the part of an appeal

16    challenging an order on sanctions because "the district court's decision granting sanctions is a

17    separate order which is not final and appealable until the district court has decided the amount of

18    sanctions"); *accord Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc*., 873 F.2d 1327,

19    1329 (9th Cir. 1989)  ("The district court's first order imposing sanctions but not setting an

20    amount was therefore not a final or appealable order."); *Pace Commc'ns, Inc. v. Moonlight*

21    *Design, Inc.*, 31 F.3d 587, 591 (7th Cir. 1994) (noting that a decision on a Rule 59(e) motion to

22    award prejudgment interest but not calculating the amount is not final and not appealable.).  In

23    *Amado*, unlike here, the judgment on appeal "expressly noted" that a permanent injunction had

24    been granted, and in any event the Federal Circuit agreed that the district court had discretion to

25    reverse that injunction after remand.  517 F.3d at 1360.  Neither *Amado* nor *TWC Mfg.* (a case

26    about undisputed willfulness) support Apple's contention that the Court's limited ruling, which

27    did not grant Apple's request to amend the judgment under Rule 59(e), was final and appealable.

28

JOINT SUBMISSION PURSUANT TO
                                                                    CASE MANAGEMENT ORDER

1

2

Dated:  October 9, 2015

3

MORRISON & FOERSTER LLP
HAROLD J. McELHINNY (CA SBN 66781)

4

hmcelhinny@mofo.com
RACHEL KREVANS (CA SBN 116421)

5

rkrevans@mofo.com
ERIK OLSON (CA SBN 175815)

6

ejolson@mofo.com
MORRISON & FOERSTER LLP

7

425 Market Street
San Francisco, California  94105-2482

8

Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

9

10

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING

11

HALE AND DORR LLP
60 State Street

12

Boston, MA 02109
Telephone: (617) 526-6000

13

Facsimile: (617) 526-5000

14

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com

15

WILMER CUTLER PICKERING
HALE AND DORR LLP

16

950 Page Mill Road
Palo Alto, California 94304

17

Telephone: (650) 858-6000
Facsimile: (650) 858-6100

18

19

By:    /s/Rachel Krevans

20

Rachel Krevans

21

Attorneys for Plaintiff and Counterclaim-
Defendant APPLE INC.

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

By:    /s/Victoria F. Maroulis
Victoria F. Maroulis

Attorneys for Defendants and
Counterclaim-Plaintiffs  SAMSUNG
ELECTRONICS CO., LTD., SAMSUNG
ELECTRONICS AMERICA, INC. and
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC

11

1

**ATTESTATION OF E-FILED SIGNATURE**

2          I, Victoria F. Maroulis, am the ECF User whose ID and password are being used to file

3     this Joint Case Management Statement.  In compliance with Local Rule 5-1(i)(3), I hereby attest

4     that Rachel Krevans has concurred in this filing.

5     Dated:  October 9, 2015                    _/s/Victoria F. Maroulis_____
                                                  Victoria F. Maroulis
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT SUBMISSION PURSUANT TO
                                                  CASE MANAGEMENT ORDER