```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4


 5
      APPLE, INC.,                    )  CV-11-1846-LHK
 6                                    )
                       PLAINTIFF,     )  SAN JOSE, CALIFORNIA
 7                                    )
                  VS.                 )  DECEMBER 10, 2015
 8                                    )
      SAMSUNG ELECTRONICS CO. LTD. ET )  PAGES 1-47
 9    AL,                             )
                                      )
10                     DEFENDANT.     )

11

12                    TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE LUCY H. KOH
13                   UNITED STATES DISTRICT JUDGE

14

15      A P P E A R A N C E S:

16        FOR THE PLAINTIFF:  HAROLD J. MCELHINNY
                              NATHANIEL SABRI
17                            RACHEL KREVANS
                              MORRISON & FOERSTER LLP
18                            425 MARKET STREET
                              SAN FRANCISCO, CA 94105
19
          FOR THE DEFENDANT:  VICTORIA MAROULIS
20                            QUINN EMANUEL
                              555 TWIN DOLPHIN DRIVE, 5TH FLOOR
21                            REDWOOD SHORES, CA 94065

22              APPEARANCES CONTINUED ON THE NEXT PAGE

23      OFFICIAL COURT REPORTER:  SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1              FOR THE PLAINTIFF:  ERIK J. OLSON
                                   MORRISON & FOERSTER LLP
2                                  755 PAGE MILL ROAD
                                   PALO ALTO, CA 94304
3

4              FOR THE PLAINTIFF:  WILLIAM F. LEE
                                   LAUREN FLETCHER
5                                  WILMER PICKERING HALE & DORR LLP
                                   60 STATE STREET
6                                  BOSTON, MA 02109

7

8              FOR THE DEFENDANT:  CARL ANDERSON
                                   QUINN EMANUEL
9                                  50 CALIFORNIA STREET, 22ND FLOOR
                                   SAN FRANCISCO, CA 94111
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1          SAN JOSE, CALIFORNIA                 DECEMBER 10, 2015
2                        P R O C E E D I N G S
3          (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
4     WERE HELD:)
5               THE CLERK:  CALLING CASE 11-CV-01846.  APPLE VERSUS
6     SAMSUNG.  IF THE PARTIES WOULD PLEASE COME FORWARD AND STATE
7     THEIR APPEARANCES FOR THE RECORD.
8               MS. MAROULIS:  GOOD AFTERNOON, YOUR HONOR.  VICTORIA
9     MAROULIS WITH QUINN EMANUEL, COUNSEL FOR SAMSUNG.
10              MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.
11             HAROLD MCELHINNY, RACHEL KREVANS, ERIK OLSON AND NATE SABRI
12     FROM MORRISON & FOERSTER ON BEHALF OF APPLE.
13              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.
14             BILL LEE AND LAUREN FLETCHER FROM WILMER HALE FOR APPLE.
15              MR. ANDERSON:  CARL ANDERSON, ALSO FOR SAMSUNG.
16              THE COURT:  OKAY.  GOOD AFTERNOON AND WELCOME.  SO I
17     ASSUME YOU GOT MY COST ORDER YESTERDAY; IS THAT RIGHT?
18              MS. MAROULIS:  YES, YOUR HONOR.
19             AND SAMSUNG HAS MADE ARRANGEMENTS TO PAY DIRECTLY TO APPLE
20     AS OPPOSED TO APPLE GOING THROUGH THE SURETIES.
21              THE COURT:  OH, OKAY.  SO YOU ARE NOT GOING TO BE
22     APPEALING THAT ORDER?
23              MS. MAROULIS:  NO, YOUR HONOR.
24              THE COURT:  OKAY.  ALL RIGHT.
25             OKAY.  NOW DID APPLE SEND SAMSUNG THE INVOICE FOR THE $548
```

1    MILLION ON DECEMBER 4TH?

2            MS. MAROULIS:  YES, YOUR HONOR.

3        THE INVOICE WAS RECEIVED, AND I UNDERSTAND THAT THE PAYMENT

4    IS BEING REMITTED TOMORROW AND SHOULD BE RECEIVED BY MONDAY.

5        AND WE WILL UPDATE THE COURT ABOUT THE PENDING MOTION THAT

6    I UNDERSTAND APPLE WILL FILE A MOTION TO TAKE OFF CALENDAR ONCE

7    THEY GET THE PAYMENT.

8            THE COURT:  OKAY.  GREAT.  THANK YOU.

9        BECAUSE IF APPLE DOES NOT WITHDRAW THE MOTION TO ENFORCE,

10   I'M GOING TO GRANT APPLE'S MOTION TO DECEMBER 17TH, BUT

11   HOPEFULLY THIS WILL MOOT THAT ISSUE.

12       OKAY.  SO I WANTED TO HAVE TODAY'S CMC BECAUSE WE NEED TO

13   TALK ABOUT THE ISSUE OF SUPPLEMENTAL DAMAGES.  AND I HAVE A

14   BUNCH OF QUESTIONS TO ASK YOU AND AM NOT QUITE SURE WHAT IS THE

15   RIGHT WAY TO PROCEED ON THIS.

16       CORRECT ME IF I'M WRONG, BUT I ASSUME THAT SAMSUNG BELIEVES

17   THAT THE DESIGN-AROUNDS WERE NOT INCLUDED IN JX1500; IS THAT

18   RIGHT?  OR DO YOU BELIEVE THAT SOME WERE?

19           MR. ANDERSON:  YOUR HONOR, I'VE LOOKED AT THE RECORD,

20   I ACTUALLY CAN'T FIND ANYTHING IN THE RECORD ONE WAY OR THE

21   OTHER, SO I CAN'T GIVE YOU A DEFINITIVE YES OR NO ANSWER.

22           THE COURT:  OKAY.  NOW THAT WAS A JOINT EXHIBIT.  SO

23   WHAT WAS THE PARTY'S PROCESS IN COMING UP WITH THOSE NUMBERS?

24           MR. ANDERSON:  THOSE -- THE SAMSUNG NUMBERS IN THAT

25   EXHIBIT ARE FROM THE FINANCIALS THAT SAMSUNG COLLECTED AND

```
 1        PRODUCED FOR THIS CASE.

 2            THERE WERE ALSO SEPARATE SAMSUNG EXHIBITS THAT HAD THOSE

 3        NUMBERS IN IT.  AND TO THE EXTENT JX1500 HAD APPLE NUMBERS,

 4        THERE WERE SEPARATE NUMBERS WITH APPLE'S NUMBERS IN IT.  SO

 5        JX15 WAS SORT OF A HIGH LEVEL SUMMARY OF BOTH PARTY'S

 6        INFORMATION ON UNITS AND SALES.

 7                    THE COURT:  OKAY.

 8            AND I ASSUME THEN YOU USED UNDERLYING DOCUMENTS TO COME UP

 9        WITH SAMSUNG'S PORTION OF JX1500, AND YOU ARE SAYING YOU DON'T

10        KNOW WHETHER YOU INCLUDED THE DESIGN-AROUNDS IN THOSE

11        UNDERLYING NUMBERS THAT WERE USED TO CREATE JX1500; IS THAT

12        RIGHT?

13                    MR. ANDERSON:  YES.

14            THE UNDERLYING NUMBERS WERE NOT DONE.  THOSE WERE COLLECTED

15        BY MODEL NUMBER AND NOT AT THE LEVEL OF SPECIFICITY OF COLOR OR

16        SOFTWARE VERSION THAT WOULD SAY ONE WAY OR THE OTHER WHETHER

17        THE PRODUCT INCLUDED A DESIGN-AROUND.

18                    MR. MCELHINNY:  MAY I INTERRUPT, YOUR HONOR, THIS IS

19        A REALLY IMPORTANT POINT ON THE SEMANTICS HERE.

20            WHAT COUNSEL IS TELLING YOU, WHICH IS ACCURATE, IS THAT

21        JX15 ACCOUNTED FOR EVERY SALE OF EVERY PHONE WITH THAT SPECIFIC

22        MODEL NUMBER.

23            SO THE ANSWER TO YOUR FIRST QUESTION IS YES, EVERY PHONE,

24        INCLUDING PHONES THAT ARE NOW ALLEGED TO DESIGN-AROUND, THE

25        SALE OF THAT PHONE IS REFLECTED IN JX15.
```

1        MR. ANDERSON:  SO THAT IS WHAT I BELIEVE THERE'S NO

2    EVIDENCE IN THE RECORD FROM.  AND APPLE CAME FORTH WITH NOTHING

3    IN THE DEPOSITION OR AT TRIAL, STATEMENTS TO SAY THAT THAT'S

4    TRUE.

5        MR. MCELHINNY:  AGAIN, THAT'S NOT TRUE.

6        EVERY ENTRY ON JX15 TRACKS BACK TO A SAMSUNG DOCUMENT OR AN

7    INTERROGATORY ANSWER THAT RESPONDS TO THE QUESTION, HOW MANY

8    SALES OF THIS MODEL OCCURRED ON SUCH AND SUCH A DATE.

9        AND THE SEMANTIC, WELL -- SO THAT'S THE ANSWER.  THE ANSWER

10   IS EVERY MODEL SALE IS ACCOUNTED FOR, TRACKED BACK TO THEIR

11   DOCUMENTS AND TO THEIR SWORN INTERROGATORY RESPONSES

12       MR. ANDERSON:  AS I SAID BEFORE, YOUR HONOR, THE

13   MODEL NUMBER ITSELF DOESN'T TELL YOU SPECIFIC DETAILS THAT ARE

14   NECESSARY TO DECIDE WHETHER OR NOT THE PHONE HAS THE FEATURE

15   ACCUSED OF INFRINGEMENT, IT JUST TELLS YOU THE MODEL.

16       THE COURT:  BUT YOU UNDERSTOOD WHEN YOU SUBMITTED THE

17   DOCUMENT, THAT WAS THE DOCUMENT THE JURY WAS GOING TO USE TO

18   DETERMINE DAMAGES.

19       MR. ANDERSON:  YES, YOUR HONOR.

20       THE COURT:  OKAY.

21       LET ME ASK YOU, I READ THE PART OF THE FEDERAL CIRCUIT

22   DECISION THAT APPLE CITES AS A CONCESSION FROM SAMSUNG THAT ALL

23   DAMAGES FOR THE GALAXY S II T-MOBILE, ARE ATTRIBUTABLE TO THE

24   D'677 PATENT AND NOT THE '915 PATENT.  AND I DIDN'T SEE THAT.

25       IS THERE ANY ELABORATION THAT YOU WOULD LIKE TO GIVE?  I

1    DON'T SEE THAT, AND IT FRANKLY WOULD SURPRISE ME SINCE THEY ARE

2    TRYING TO INVALIDATE THE '915, IT WOULD SEEM ODD THEY WERE

3    ARGUING THAT THE '915 WAS NOT RESPONSIBLE FOR ANY DAMAGES.  IT

4    JUST DOESN'T SEEM LIKE IT WOULD HAVE BEEN IN THEIR INTEREST TO

5    EVEN MAKE THAT ARGUMENT.

6          MR. OLSON:  YOUR HONOR, THIS IS ERIK OLSON.  CAN I

7    RESPOND TO THAT QUESTION?

8        IF I MAY, THE GALAXY S II PRODUCTS WERE INTRODUCED IN

9    OCTOBER OF -- FALL OF 2011.  NOTICE HAD BEEN GIVEN -- AND THEY

10   ALL INFRINGE THE D'677 PATENT.  NOTICE ON THE D'677 PATENT

11   OCCURRED ON APRIL 15TH OF 2011.

12       SO FROM 2011 UNTIL THE END OF THE CASE, IN THIS CASE, FOR

13   PURPOSES OF JX1500 THROUGH JUNE OF 2012, THE SAMSUNG, THE '289

14   REMEDY, THE DISGORGEMENT OF SAMSUNG PROFITS COME INTO PLAY.

15   AND THAT'S HOW BOTH SIDES CALCULATED THE DAMAGES AS PRESENTED

16   TO THE JURY.

17       UNDER CATALINA LIGHTING, IF YOU RECEIVE A REMEDY,

18   DISGORGEMENT UNDER 289, YOU DON'T GET ANY UTILITY PATENT

19   REASONABLE ROYALTY.

20       THAT'S BEEN AGREED BY BOTH PARTIES, THAT IS AGREED BY BOTH

21   EXPERTS, THAT'S WHY THE EXPERTS PRESENTED THEIR INFORMATION.

22       SO SINCE THESE PRODUCTS CAME AFTER NOTICE SINCE THEY

23   INFRINGED A DESIGN PATENT, THE REMEDY PRESENTED WAS

24   DISGORGEMENT OF PROFITS AND ONLY DISGORGEMENT OF PROFITS.

25          AND GIVEN THAT THAT OCCURS, THERE CAN'T BE ANY UTILITY

1    PATENT REASONABLE ROYALTY.

2                 THE COURT:  BUT HOW DO WE KNOW THAT THE DAMAGES THAT

3    WERE AWARDED FOR THAT PRODUCT WAS FOR DISGORGEMENT OF SAMSUNG

4    PROFITS?

5                 MR. OLSON:  BECAUSE BOTH MR. MUSICA IN THIS CASE,

6    BECAUSE THIS CAME FROM THE ORIGINAL TRIAL, AND MR. WAGNER ONLY

7    PRESENTED A REMEDY ASSOCIATED WITH THE DISGORGEMENT OF PROFITS.

8         SO IT'S DX781 FROM THE FIRST TRIAL, WHICH WAS PRESENTED BY

9    THE DEFENDANTS, AND IT'S PX25, AND IF YOU LOOK AT THE SCHEDULES

10   THERE AND YOU LOOK AT GALAXY S II, WHAT YOU SEE IS GALAXY, AND

11   UNDER PX25, A STATEMENT OF WHERE THE REMEDY COMES FROM.  AND

12   IT'S ALL IN THAT COLUMN, SAMSUNG'S PROFITS.

13        WHEN YOU LOOK AT DX781, WHAT YOU WILL SEE IS MR. WAGNER'S

14   STATEMENT ABOUT WHAT SAMSUNG'S PROFITS WERE FOR THESE PRODUCTS.

15        NO ONE EVER INCORPORATED IN ANY EXHIBIT PRESENTED TO THE

16   JURY THAT CALCULATED DAMAGES, AN AMOUNT OF REASONABLE ROYALTY

17   FOR ANY OF THOSE GALAXY S II PRODUCTS.

18                 THE COURT:  DOES SAMSUNG AGREE WITH THAT?

19                 MR. ANDERSON:  YOUR HONOR, I DON'T HAVE ANY

20   INFORMATION ON ALL THE GALAXY S II PRODUCTS.

21        I BELIEVE YOUR HONOR ASKED ABOUT THE GALAXY S II T-MOBILE,

22   THE GALAXY S II T-MOBILE PRODUCT.  AND ACCORDING TO THE COURT'S

23   POST-TRIAL FINDINGS, THE AWARD ON THAT PRODUCT WAS ATTRIBUTABLE

24   TO THE D'677 PATENT.

25                 THE COURT:  YOU ARE SAYING FROM THE DAMAGES ORDER?

```
 1              MR. ANDERSON:  YES.

 2          SO AFTER THE TRIAL, AFTER THE FIRST TRIAL THE ORDER ON

 3      DAMAGES.

 4              THE COURT:  YEAH, I'M LOOKING AT THAT.  OKAY.

 5          BUT ARE YOU CONCEDING THEN THAT FOR THE S II T-MOBILE THE

 6      DAMAGES ATTRIBUTABLE TO THE D'677 NOT THE '915?

 7              MR. ANDERSON:  IN THE -- YES, IN THE JUDGMENT THAT IS

 8      TRUE.  THE DAMAGES IN THE CURRENT JUDGMENT, THAT IS TRUE.

 9          THE PROBLEM IS WE DON'T, YOU KNOW, I'M NOT SURE WHAT APPLE

10      IS SEEKING YET IN TERMS OF SUPPLEMENTAL DAMAGES FOR THOSE

11      PATENTS BECAUSE THEY HAVEN'T BEEN PRESENTED THAT YET.

12          SO AS TO WHETHER THEY ARE SEEKING '915 DAMAGES AND

13      SUPPLEMENTAL DAMAGES --

14              THE COURT:  I DIDN'T THINK YOU WERE; IS THAT RIGHT?

15              MR. OLSON:  WE ARE NOT.

16          AND THE REASON IS THAT YOUR MARCH 1ST ORDER ON DAMAGES SETS

17      THE MANNER IN WHICH WE SHOULD GET, TAKE IT, AND THE AMOUNT IN

18      THE JUDGMENT DIVIDED BY UNITS SO TO GET A PER-UNIT AMOUNT.

19          SO THE AMOUNT IN THE JUDGMENT IS ALL HE HAS JUST CONCEDED,

20      D'677 AND DESIGN PATENT RECOVERY; THEREFORE, THE TOTAL AMOUNT

21      WE ARE SEEKING IN SUPPLEMENTAL DAMAGES, WE ARE ONLY SEEKING IT

22      BASED ON THE JUDGMENT, AND THE JUDGMENT IS ALL D'677 DESIGN

23      PATENT DISGORGEMENT WHICH MEANS THERE WILL BE NO '915 ELEMENT

24      AT ALL.

25              MR. ANDERSON:  IF I MAY CLARIFY ON THAT, YOUR HONOR,
```

1    THAT IS A PHONE MODEL THAT DOESN'T INCLUDE DIFFERENT COLORS IN

2    THE DATA WE PRODUCED.

3        SO WHEN -- IF I UNDERSTAND THE COURT'S QUESTION, THE

4    COURT -- THE GRAVITY OF THE COURT'S QUESTION IS, WILL THE '915

5    PATENT BE RELEVANT FOR THAT PRODUCT.

6        SAMSUNG'S POSITION IS IT IS BECAUSE APPLE IS NOT ENTITLED

7    TO D'677 DAMAGES ON NON INFRINGING PHONES, AND THERE ARE

8    POST-VERDICT SALES OF THAT PHONE THAT DON'T INFRINGE THE D'677.

9            THE COURT:  OKAY.  LET ME UNDERSTAND APPLE'S

10   POSITION.

11       SO I UNDERSTAND YOU ARE SAYING THAT ANY DESIGN-AROUNDS THAT

12   EXISTED AT THE TIME OF THE TRIAL WERE INCLUDED, OR WERE

13   PRECLUDED BECAUSE OF JUDGE GREWAL'S ORDER ABOUT UNTIMELY

14   DISCOVERY.

15       WHAT IS YOUR POSITION FOR A DESIGN-AROUND THAT DID NOT

16   EXIST AT THE TIME OF THE 2012 TRIAL?

17       NOW I'M THINKING OF THE '915 DESIGN-AROUND, BUT THAT'S

18   PROBABLY NOT RELEVANT SINCE YOU ARE NOT SEEKING '915

19   SUPPLEMENTAL DAMAGES.

20       BUT I JUST WANT TO UNDERSTAND, DO YOU THINK FOR A

21   DESIGN-AROUND THAT WAS CREATED AFTER THE TRIAL, THAT THEY

22   SHOULD BE ABLE TO PRESENT THAT AS A BASIS TO REDUCE THE

23   SUPPLEMENTAL DAMAGES NUMBER FOR THAT PRODUCT?

24           MR. MCELHINNY:  FIRST OF ALL, WE DON'T THINK THERE

25   ARE ANY.

```
 1          WE THINK THAT ALL OF THE DESIGN-AROUNDS THAT THEY HAVE NOW

 2    COME UP WITH, THESE DEFENSES, ARE EACH BASED ON THE JOINT

 3    FILING, OR EACH AVAILABLE AND SOLD AND FOUND TO BE INFRINGING

 4    BY THE JURY, AND WE WERE AWARDED DAMAGES ON THOSE SALES.

 5          THAT'S TRUE, WITH ONE VERY SMALL EXCEPTION, WHICH IS THAT

 6    ALTHOUGH MANY COLORS, WHITE AND OTHERS, WERE APPARENTLY SOLD

 7    BEFORE THE TRIAL, THERE IS ONE PLATINUM OR STEEL GRAY COLOR

 8    WHICH CAME OUT AFTER.

 9          AND OUR POSITION ON THAT WAS THAT THE JURY DID NOT, THE

10    COLOR WAS NEVER PRESENTED AS A DEFENSE.  AND SO WE DON'T THINK

11    ROSE OR PINK OR YELLOW IS A SEPARATE DESIGN-AROUND.

12          THE COURT:  FOR THE D'677.

13          MR. MCELHINNY:  WE DON'T.

14    WHAT WAS PRESENTED TO THE JURY WAS WHETHER OR NOT THIS

15    MODEL INFRINGED.

16          THE JURY CONSIDERED EVERY DEFENSE THAT WAS PRESENTED.  AND

17    THEY DETERMINED THAT THESE -- THIS MODEL INFRINGES THE D'677.

18    IN FACT, THAT INCLUDED EVERY COLOR THEY HAVE SINCE RAISED, WITH

19    THE EXCEPTION OF PLATINUM.

20          BUT OUR POSITION IS THAT IF SAMSUNG HAD THOUGHT COLOR WAS

21    RELEVANT, THAT DEFENSE DOESN'T TURN ON WHAT THEY CALL THE

22    SHADE, IT TURNS ON WHETHER OR NOT COLOR WAS RELEVANT.  AND THEY

23    DID NOT RAISE THAT AS A DEFENSE.

24          AND AGAIN, AS WE POINT OUT, THEY PUT ON NO NON INFRINGEMENT

25    DEFENSE TO THE D'677 AT ALL.
```

```
 1          I'M SORRY, JUST REALLY QUICKLY, THERE WERE GRAYS THAT WERE

 2     AVAILABLE FOR THE TRIAL, SO THAT'S WHY I KEEP SAYING IT'S JUST

 3     ANOTHER, I DON'T WANT TO GET INTO HOW MANY SHADES OF GRAY, BUT

 4     WE DON'T THINK YOU CAN CALL IT A NEW DESIGN-AROUND BY SLIGHTLY

 5     CHANGING THE COLOR OF A PHONE THAT WAS FOUND TO BE INFRINGING.

 6          MR. ANDERSON:  YOUR HONOR, I WAS A LITTLE UNCLEAR

 7     ABOUT WHAT THE ANSWER WAS ABOUT THE '915.

 8          YOU ARE CORRECT THAT THE '915 DESIGN-AROUND WAS NOT

 9     AVAILABLE UNTIL AFTER TRIAL.

10          THE COURT:  IS THAT THE ONLY DESIGN-AROUND THAT

11     WASN'T AVAILABLE UNTIL AFTER TRIAL?

12          MR. ANDERSON:  WELL, THERE'S ALSO THE METALLIC SILVER

13     OR STEEL GRAY COLOR.

14          THE COURT:  FOR THE '677?

15          MR. ANDERSON:  YES.

16          THE COURT:  YOU SAID METALLIC GRAY OR STEEL SILVER.

17          MR. ANDERSON:  SORRY.  SO IN THE DECLARATIONS IT'S

18     REFERRED TO AS METALLIC SILVER.

19          THE COURT:  IT'S CALLED WHAT?

20          MR. ANDERSON:  METALLIC SILVER.

21       AND THEN IN THE UNIT SALES DATA WHICH SAMSUNG COLLECTED AND

22     SUBMITTED TO THE COURT, THE OFFICIAL NAME IS STEEL GRAY.

23          THE COURT:  AND WHEN WAS THAT INTRODUCED?

24          MR. ANDERSON:  I WILL JUST LOOK THAT UP IN OUR

25     STATEMENT.
```

```
 1          MR. MCELHINNY:  WHILE HE'S DOING THAT YOUR HONOR, IN

 2    OUR JOINT REPORT, WE POINTED OUT THAT THEIR EXPERT, MR. GRAY,

 3    IN HIS DECLARATION, SAID THAT THE '915 SO CALLED DESIGN-AROUND

 4    WAS ON THE MARKET IN JULY OF 2012.

 5          MR. ANDERSON:  SO I HAVE TO APOLOGIZE, THAT'S NOT

 6    TRUE.  HE SAID IT WAS AVAILABLE TO GOOGLE AT THAT TIME.  IT WAS

 7    NOT AVAILABLE TO SAMSUNG OR SAMSUNG'S COLORS.

 8       AS TO YOUR QUESTION ABOUT THE STEEL GRAY PRODUCTS, I'M

 9    LOOKING AT PAGE 4 OF SAMSUNG'S SUPPLEMENTAL DAMAGES STATEMENT,

10    AND IT VARIES A BIT BY CARRIER, THE SPRINT VERSION WAS

11    NOVEMBER 5, 2012.

12          THE COURT:  I DON'T UNDERSTAND.  THEY MADE IT

13    AVAILABLE TO GOOGLE.  AND WHAT DO YOU MEAN, GOOGLE EMPLOYEES?

14       WHAT ARE YOU TALKING ABOUT WHEN THEY MADE IT AVAILABLE TO

15    GOOGLE?  WHAT DOES THAT THAT MEAN?

16          MR. ANDERSON:  IT WAS A GOOGLE DESIGN-AROUND THAT WAS

17    THEN LATER MADE AVAILABLE TO SAMSUNG.

18          THE COURT:  SO SAMSUNG BOUGHT IT FROM GOOGLE?

19          MR. ANDERSON:  I DON'T KNOW IF I WOULD CHARACTERIZE

20    IT AS A SALE.  THEY RECEIVED IT FROM GOOGLE.  IT WAS GOOGLE

21    THAT CAME UP WITH IT.

22       AND WHAT MR. MCELHINNY WAS REFERRING TO WAS TESTIMONY ABOUT

23    WHEN GOOGLE HAD IT, NOT WHEN SAMSUNG HAD IT.

24       I'M SORRY, YOUR HONOR, DID YOU WANT ME TO CONTINUE WITH THE

25    STEEL GRAY -- OR
```

1          THE COURT:  WELL, WHEN DID SAMSUNG GET IT?

2          MR. ANDERSON:  I BELIEVE IT WAS THE NEXT MONTH.

3       SO THE REFERENCE I WAS LOOKING FOR EARLIER WAS IN A JOINT

4    SUBMISSION, IT'S ON PAGE 7, NUMBER 4 OF DOCKET 3316.

5          THE COURT:  WHAT DO YOU MEAN 4?

6          MR. ANDERSON:  NOTE 4.  I'M ON PAGE 7 OF DOCKET --

7    SORRY, I'M ON PAGE 7 --

8          THE COURT:  SO YOU THINK SAMSUNG HAD IT IN AUGUST OF

9    2012?

10         MR. ANDERSON:  I BELIEVE THAT'S CORRECT, BUT I WOULD

11   HAVE TO TRACK DOWN THAT, THE REFERENCE THERE TO THE DECLARATION

12   DOCKET --

13         THE COURT:  I GUESS I DON'T UNDERSTAND.

14      THEY HAD THE SOURCE CODE FOR THE COLOR OF THE HARDWARE?

15   THAT SEEMS WEIRD TO ME.

16         MR. ANDERSON:  SORRY, YOUR HONOR.

17         THE COURT:  AREN'T WE TALKING ABOUT THE COLOR?

18         MR. MCELHINNY:  THIS IS THE '915, YOUR HONOR.

19         MR. ANDERSON:  THIS IS THE '915 PATENT.

20         THE COURT:  OH, OKAY.  SORRY.

21         MR. MCELHINNY:  BUT AGAIN --

22         THE COURT:  IT ALMOST DOESN'T MATTER.  YOU ARE NOT

23   SEEKING SUPPLEMENTAL DAMAGES ON THE '915, SO IT'S IRRELEVANT.

24         MR. MCELHINNY:  EXACTLY, YOUR HONOR.

25         MS. MAROULIS:  YOUR HONOR, MIGHT I ADDRESS SOMETHING

1      THAT'S KIND OF JUMBLED WITH THIS DISCUSSION?

2          PART OF THE ISSUE WE ARE HAVING IS THAT APPLE DIDN'T

3      ACTUALLY MAKE A MOTION FOR SUPPLEMENTAL DAMAGES, SO WE

4      GENERALLY HAVE SOME IDEA OF WHAT THEY ARE SEEKING, BUT WE DON'T

5      HAVE THEIR EXACT REQUEST, THEIR ASK AND THEIR RESPONSE TO THE

6      ISSUES WE RAISED AND DISCLOSED TO THE COURT.

7              THE COURT:  I KNOW.  WE ARE GOING TO TALK ABOUT THAT

8      IN A MINUTE.

9              MS. MAROULIS:  SO IT MAY BE HELPFUL TO ANSWER THE

10     COURT'S QUESTIONS TO HAVE A FRAMEWORK, AND ALSO WHEN IT'S GOING

11     TO HAPPEN.

12         IT'S APPROPRIATE, AS THE COURT PREVIOUSLY SAID, TO HOLD IT

13     AFTER TRIAL.

14             THE COURT:  NOW, IS THERE AGREEMENT, SO UNFORTUNATELY

15     THERE'S NOT A LOT OF LAW ON THIS ISSUE, MOST PEOPLE SETTLE AND

16     ARE NOT IN OUR SITUATION.

17         SO IT SEEMS LIKE WHEN SUPPLEMENTAL DAMAGES END WOULD BE

18     EITHER THE BEGINNING OF A PERMANENT INJUNCTION, WHICH WE DON'T

19     HAVE IN THIS CASE, OR IT WOULD BE WHEN JUDGMENT IS ENTERED.

20         IS THERE AN AGREEMENT FROM THE PARTIES THAT WHEN JUDGMENT

21     IS ENTERED IN THIS CASE WOULD BE THE SEPTEMBER 18, 2015, DATE?

22             MR. ANDERSON:  2014?

23             THE COURT:  NO, I'M SAYING IT'S WHEN WE ENTERED

24     PARTIAL JUDGMENT.  WHEN WE ACTUALLY GOT THE MANDATE BACK FROM

25     THE FEDERAL CIRCUIT.

1    MR. ANDERSON:  THAT'S FINE.  BUT THE SALES ENDED LONG

2  BEFORE THAT.

3    THE COURT:  UNDERSTOOD.

4    AND I KNOW YOU PRODUCED THAT, BUT AT WHAT QUARTER DO ALL

5  THE SALES END?  I KNOW IT'S IN HERE.  IT GOES THROUGH -- WELL,

6  IT LOOKS LIKE, WELL, THERE'S NONE AS OF --

7    MR. ANDERSON:  SEPTEMBER OF 2013 IS THE LAST MONTH IN

8  WHICH THERE'S A POSITIVE SALE.

9    THE COURT:  THAT'S RIGHT.  OKAY.  SEPTEMBER 2013.  SO

10  THAT'S THE LAST SALE.

11    MR. ANDERSON:  YES.

12    THE COURT:  OKAY.  SO I HAD ALREADY FOUND BACK ON

13  MARCH 1ST OF 2013, SEEMS LIKE SO LONG AGO, THAT THE DATE THAT

14  SUPPLEMENTAL DAMAGES WOULD BEGIN WOULD BE AUGUST 25TH OF 2012,

15  THE DAY AFTER THE JURY VERDICT, SO IT STARTED THAT DATE.

16    I KNOW APPLE WANTED AN EARLIER DATE, BUT I REJECTED THAT.

17  BUT IT WOULD GO THROUGH SEPTEMBER 18, 2015, JUST BECAUSE THAT'S

18  WHEN JUDGMENT WAS ENTERED, BUT WOULD REALLY ONLY GO THROUGH

19  SEPTEMBER OF 2013.

20    DOES THAT SOUND RIGHT?

21    MR. MCELHINNY:  THAT DOES SOUND RIGHT.

22    MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.

23    THE COURT:  ALL RIGHT.  SO WE ARE IN AGREEMENT ON

24  THAT.  SEPTEMBER 2013.  OKAY.  END DATE BECAUSE LAST SALE.

25  OKAY.  SO WE GOT THAT.

1        NOW, FROM WHAT I UNDERSTAND, APPLE IS ONLY SEEKING

2    SUPPLEMENTAL DAMAGES AS TO THE GALAXY PREVAIL, THE DROID

3    CHARGE, AND THE FOLLOWING GALAXY S II SKYROCKET, T-MOBILE EPIC

4    4G TOUCH; IS THAT RIGHT?  IT'S ONLY THOSE FIVE?

5            MR. MCELHINNY:  THAT IS CORRECT, YOUR HONOR.

6            THE COURT:  OKAY.  AND HOW DID YOU COME TO THAT?  HOW

7    DID YOU COME TO THAT POOL OF PRODUCTS?

8            MR. MCELHINNY:  THOSE ARE THE ONLY ONES THAT HAD

9    CONTINUING SALES, YOUR HONOR.

10           THE COURT:  ONLY HAD CONTINUOUS SALES.

11       NOW AT LEAST THREE OF THESE REMEMBER FOUND TO HAVE

12   INFRINGED THE '915, RIGHT?

13           MR. MCELHINNY:  YES, YOUR HONOR.

14           THE COURT:  BUT YOU ARE CARVING OUT THE '915 DAMAGES

15   HOW?

16           MR. MCELHINNY:  BECAUSE THE JURY VERDICT IS GOING TO

17   BE BASED ON THE DESIGN DAMAGES.

18           THE COURT:  RIGHT.

19       THE GALAXY PREVAIL HAD NO DESIGN DAMAGES, IT WAS ONLY THE

20   THREE UTILITY PATENTS.  SO HOW IS THAT?

21           MR. OLSON:  YOUR HONOR, MR. OLSON AGAIN.

22       ON THE PREVAIL AND THE DROID CHARGE, SAMSUNG, IN ITS

23   STATEMENT THAT YOU ASKED THEM TO FILE, I THINK IT WAS

24   OCTOBER 1ST OR SEPTEMBER 30TH, WHATEVER THE DATE WAS, SAID THAT

25   THE ALLEGED DESIGN-AROUND WAS NOT INTRODUCED IN EITHER THE

1    PREVAIL OR THE DROID CHARGE.

2         SO IT'S NOT RELEVANT TO THE UNITS OF THOSE PHONES.  THE

3    ONLY PRODUCT FOR WHICH THEY CLAIM THAT THEY INTRODUCED THAT

4    DESIGN-AROUND IS THE GALAXY S II T-MOBILE, THE ONE WE TALKED

5    ABOUT A MOMENT AGO.

6              THE COURT:  YOU MEAN THE '915 DESIGN-AROUND.

7              MR. OLSON:  CORRECT.

8              THE COURT:  SO THE '915 -- NOW THE DROID CHARGE WAS

9    FOUND TO HAVE INFRINGED ONE DESIGN PATENT, THE '305.

10             MR. OLSON:  CORRECT.

11             THE COURT:  YOU ARE SAYING THERE'S NO '915

12   DESIGN-AROUND IN THE GALAXY PREVAIL, THE DROID CHARGE.  AND

13   WHAT WAS YOUR STATEMENT ABOUT THE T-MOBILE?

14             MR. OLSON:  THE GALAXY S T-MOBILE, SAMSUNG ALLEGES

15   THAT THEY INTRODUCED THE DESIGN-AROUND, BUT AGREES, AS WE JUST

16   WENT OVER, THAT ALL OF THE DAMAGES INCLUDED IN THE JUDGMENT

17   ARISE FROM THE DESIGN PATENT INFRINGEMENT AND DISGORGEMENT AND

18   THAT WE ARE ASKING ONLY FOR A CONTINUATION OF THAT SAME REMEDY;

19   THUS, THE '915 IS NOT RELEVANT.

20             THE COURT:  OKAY.

21         AND THEN THE SKYROCKET AND EPIC 4G TOUCH ARE EASY BECAUSE

22   THEY WERE ONLY FOUND TO INFRINGE THE DESIGN '677.

23             MR. OLSON:  PRECISELY, YOUR HONOR.

24             THE COURT:  OKAY.

25         NOW, I AGREE WITH MS. MAROULIS THAT I THINK IT'S TIME TO

```
1    PREPARE A MOTION AND TO SEE WHETHER IT'S POSSIBLE IN THIS CASE,

2    THERE MIGHT BE SOME AGREEMENT AND MAYBE SOME NARROWING.  AND --

3    I MEAN, IT SEEMS LIKE THE DISPUTE MAY NOT BE AS MONSTROUS AS I

4    THOUGHT.  I MEAN --

5              MR. ANDERSON:  WELL, WE CERTAINLY THINK IT WAS.

6              THE COURT:  I'M JUST CONCERNED BECAUSE OBVIOUSLY WE

7    HAVE ANOTHER TRIAL COMING IN MARCH.  AND THIS, TO ME, ALMOST

8    FEELS LIKE ANOTHER MINITRIAL, IF I'M HAVING TO MAKE

9    INFRINGEMENT DETERMINATIONS BASED ON DESIGN-AROUNDS.

10       AND SO I'M JUST CONCERNED ABOUT RESOURCES, THAT'S ALL.

11       SO HOW MUCH TIME WOULD YOU NEED TO DRAFT THE MOTION?  I

12   WOULD ASK THAT YOU MEET AND CONFER IN ADVANCE OF FILING AND SEE

13   IF THERE MIGHT BE SOME AGREEMENT.

14       I WOULD ALSO ASK THAT THERE BE SOME CONSERVATISM, IF IT'S

15   GOING TO BE SOMETHING THAT'S GOING TO REQUIRE A WHOLE MINITRIAL

16   ON INFRINGEMENT, I REALLY PREFER TO AVOID THAT, IF AT ALL

17   POSSIBLE.

18       SO -- AND I DON'T KNOW, DO YOU NEED MORE DISCOVERY?  DO YOU

19   NEED MORE EXPERT TESTIMONY?  WHAT DO WE NEED TO GET THIS

20   RESOLVED?

21             MR. MCELHINNY:  FIRST, I APPRECIATED YOU TAKING THE

22   TIME TO READ OUR JOINT STATEMENTS AND SEE THIS BECAUSE OUR

23   POSITION IS THAT THIS IS NOT MONSTROUS AT ALL.  OUR POSITION IS

24   THAT THERE'S A LEGAL QUESTION.

25             THE LEGAL QUESTION IS:  WERE THESE PRODUCTS FOUND
```

```
 1        INFRINGING?  AND IS SAMSUNG BOUND BY THAT DETERMINATION?

 2            AND IF THE ANSWER TO THAT QUESTION IS YES, OUR MOTION IS

 3        SIMPLY MATHEMATICAL.  WE NOW HAVE THE SALES FIGURES, THANKS TO

 4        YOUR HONOR.  WE HAVE THE REMEDY, AND IT'S JUST A QUESTION OF

 5        MULTIPLYING THAT OUT.

 6            THE COURT:  WELL, I GUESS I WOULD NEED TO KNOW WHERE

 7        IN AN EXHIBIT OR TRIAL TRANSCRIPT WAS THE DESIGN-AROUND

 8        PRESENTED TO THE JURY?

 9            SO I WOULD NEED THAT EXTRA HAND-HOLDING TO GET TO THE EASY

10        MATHEMATICAL PROBLEM THAT YOU'RE RAISING.

11            MR. MCELHINNY:  AND THE SEMANTICAL -- I MEAN, NOW I'M

12        WASTING YOUR TIME, BUT THE SEMANTICAL DIFFERENCE ABOUT THAT IS,

13        WHEN THE QUESTION WAS, "WAS THE DESIGN-AROUND PRESENTED TO THE

14        JURY?"  WHAT WE'RE SAYING IS THE PRODUCT THAT ALLEGEDLY WAS

15        DESIGNED AROUND WAS PRESENTED IN A NUMBER, IN A CATEGORY, THAT

16        SALE WAS PRESENTED TO A JURY.

17            AND WE CAN DEMONSTRATE THAT TO YOU.

18            SAMSUNG'S POSITION IS --

19            THE COURT:  WELL, I THINK YOU'VE GOTTEN THAT

20        CONCESSION TODAY.

21            MR. MCELHINNY:  YES.

22            BUT SAMSUNG'S POSITION IS THE JURY WAS NEVER TOLD THIS

23        PHONE WAS WHITE.  AND THEY WERE NEVER TOLD IT WAS WHITE AND

24        THAT MEANS IT DOESN'T INFRINGE.

25            SO THE FACT THAT WE HAD A "DESIGN-AROUND" THAT ISSUE, WAS
```

```
1    NOT PRESENTED TO THE JURY.  AND OUR RESPONSE TO THAT IS, WHY IS

2    THAT OUR PROBLEM.

3              MR. ANDERSON:  MAY I RESPOND?

4              MR. MCELHINNY:  AND SO WHERE IT COMES, AND THIS IS

5    WHAT THE MOTION WILL BE, IF YOUR HONOR AGREES WITH OUR POSITION

6    THAT SAMSUNG CANNOT RAISE NOW, DEFENSES THAT THEY DIDN'T RAISE

7    AT TRIAL, THIS IS A MATHEMATICAL CALCULATION.

8         WE ARE NOT GOING TO ASK YOU TO RULE WHETHER OR NOT THESE

9    NEW DESIGN-AROUNDS IN FACT INFRINGE THE PATENT BECAUSE WE DON'T

10   THINK THEY CAN RAISE THOSE ISSUES.

11             THE COURT:  AND WHY ARE YOU FINDING WAIVER, BECAUSE

12   JUDGE GREWAL DIDN'T ALLOW IT TO BE PRESENTED AT TRIAL BECAUSE

13   OF THE LATE DISCLOSURE OR NOT?

14             MR. MCELHINNY:  FOR THE COLOR ISSUES, FOR THE

15   ARGUMENT THAT THEY ARE NOW MAKING THAT COLOR IS A NON

16   INFRINGEMENT DEFENSE, THEY WERE COMPLETELY FREE WITH THAT.

17   THIS IS WHERE THEY GAVE YOU MISINFORMATION THE LAST TIME AND WE

18   CORRECTED IT.  THERE WAS NO PRECLUSION ORDER.

19        IF THEY THOUGHT COLOR WAS A DEFENSE, THEY WERE PERFECTLY

20   FREE TO PRESENT THAT DEFENSE, TO CALL A NON INFRINGEMENT

21   WITNESS, WHICH THEY DIDN'T DO, TO TAKE THOSE NUMBERS OUT OF THE

22   SALES NUMBERS, WHICH THEY DIDN'T DO, BUT THEY DIDN'T DO ANY OF

23   THAT.

24        AND OUR POSITION IS THEY CAN'T DO IT NOW.  THAT'S GOING TO

25   BE A LEGAL QUESTION, WHAT DID THE JURY DECIDE.
```

```
 1              THE COURT:  OKAY.  SO LET ME ASK YOU A QUESTION.

 2         SO DOES IT APPLY WHETHER IT'S A WHITE FACE, A GRAY FACE, A

 3    METALLIC SILVER, A STEEL GRAY, PLATINUM BLONDE FACE, WHATEVER

 4    ALL THESE ARE?

 5              MR. MCELHINNY:  IT DOES.

 6         IT DOES BECAUSE IN THE RULE 16 STATEMENT, IN THE STATEMENT

 7    OF WHAT WAS BEING ALLEGED, WHAT WAS BEING TRIED, WE SAID WE

 8    WERE ACCUSING THIS MODEL.

 9         THE MODEL WAS PRESENTED TO THE JURY, ALL THE EVIDENCE WAS

10    BASED ON THE MODEL.  NO DISTINCTIONS WERE MADE WITHIN THAT

11    MODEL OF ANY KIND WHATSOEVER.

12         ON THE OCCASION WHEN SAMSUNG DID TRY TO DRAW DISTINCTIONS

13    BY DISTINGUISHING BETWEEN WHICH PHONE COMPANIES, WE DID ALL OF

14    THAT, BUT ON THIS NO GRADATIONS WERE TRIED.  WHAT WAS TRIED TO

15    THE JURY WAS, DOES THIS MODEL INFRINGE AND DO EACH OF THESE

16    VARIETY SALES INFRINGE?

17         AND OUR EVIDENCE WAS THE PRODUCTS SOLD IN EACH OF THOSE

18    SALES INFRINGED.  SAMSUNG MADE NO COUNTER ARGUMENT TO THAT.

19         SO, THEY WANT TO MAKE THE ARGUMENTS NOW, AND THEY WILL GET

20    A CHANCE, BUT WHAT I'M SAYING IS WHAT OUR MOTION IS, THIS IS

21    ALL DETERMINED, IT'S NOW MATHEMATICAL.  WE ARE NOT GOING TO ASK

22    YOU TO DETERMINE WHETHER OR NOT WHATEVER KIND OF ARGUMENTS THEY

23    COME UP WITH NOW ABOUT THIS DIDN'T COUNT OR THAT DIDN'T COUNT,

24    OR THIS WAS DIFFERENT AND WE COULD HAVE SAID THIS IS WHITE AND

25    IT DOESN'T INFRINGE.  THAT'S NOT FOR YOU.
```

```
1                 THE COURT:  OKAY.  SO YOU ARE MAKING A WAIVER

2      ARGUMENT AS TO THE D'677, OKAY.

3                 MR. MCELHINNY:  I'M NOT EVEN -- IT COULD BE A WAIVER

4      ARGUMENT.

5            THE ARGUMENT I'M MAKING IS WE HAVE A FINDING FROM THIS JURY

6      THAT THIS MODEL NUMBER AND EVERY SALE OF IT INFRINGES.  AND

7      THEREFORE UNDER THE LAW, WE ARE ENTITLED TO THAT SAME

8      DEFINITION GOING FORWARD FOR THE SUPPLEMENTAL SALES.

9            AND TO THE EXTENT SAMSUNG WANTS TO FIGHT WITH THAT AND

10     BRING YOU NEW ARGUMENTS, WE ARE SAYING THOSE ARE WAIVED.

11                THE COURT:  OKAY.

12           CAN SAMSUNG CITE TO ANY PORTIONS OF THE TRIAL TRANSCRIPT

13     WHERE YOU RAISE A WHITE AND GRAY FRONT-FACED DEFENSE?

14                MR. ANDERSON:  NO.  AND YOUR HONOR, PLEASE, HE HAD

15     SEVERAL MINUTES TO LAY THAT OUT.

16                THE COURT:  WHY DIDN'T YOU RAISE THAT AT TRIAL?

17                MR. ANDERSON:  SAMSUNG RELIED ON OTHER

18     DESIGN-AROUNDS.

19           FOR THE D'677, YOU WILL RECALL THERE WERE A LOT OF PRODUCTS

20     FROM SAMSUNG AT ISSUE IN THE TRIAL THAT WERE NOT ACCUSED OF

21     DESIGN-AROUND.

22           THEN IN THE SECOND TRIAL WE HAD THE ACE WHICH WAS ACCUSED

23     OF THE D'677 AND THEN FOUND NOT TO INFRINGE.  AND WE PRESENTED

24     THAT AS A DESIGN-AROUND.

25           I URGE THE COURT TO RECOGNIZE THAT APPLE IS SAYING THIS IS
```

```
 1       A MATTER OF LAW.  THERE IS NO LAW --

 2               THE COURT:  WELL, LET'S GO THROUGH THE REST.  OKAY.

 3       LET'S GO THROUGH THE D'305, THE DESIGN-AROUND REPLACING THE

 4       SQUARES WITH ROUNDED CORNERS WITH OTHER SHAPES.

 5           WAS THAT PRESENTED TO THE JURY OR NOT?

 6               MR. ANDERSON:  YES, IT WAS.  BECAUSE THAT

 7       DESIGN-AROUND WAS INCORPORATED IN THE GALAXY S II PHONES;

 8       AGAIN, NOT ACCUSED OF INFRINGEMENT, BUT PRESENTED AT THAT TRIAL

 9       AND SHOWN TO THE JURY.

10               THE COURT:  YOU MEAN S II?

11               MR. ANDERSON:  YES.

12               THE COURT:  AND WHAT FLAVOR OF S II?  YOU HAVE SO

13       MANY, SKYROCKET, T-MOBILE, EPIC 4G TOUCH.

14               MR. ANDERSON:  THAT DESIGN-AROUND WAS IN THE GALAXY S

15       II AT&T, THE GALAXY S II I90100, THE GALAXY S II T-MOBILE, THE

16       GALAXY S II EPIC 4G TOUCH, THE GALAXY S II SKYROCKET, NONE OF

17       WHICH WERE EVER ACCUSED OF INFRINGING THE D'305.

18               THE COURT:  WELL, I GUESS THE ONLY RELEVANCE TO THE

19       '305 DESIGN-AROUND WOULD BE AS TO THE DROID CHARGE.

20               MR. MCELHINNY:  YES.

21           I WANT TO STEP BACK FOR A MINUTE.  WE HAVE A PROCESS IN

22       THIS COURT, YOUR HONOR, WHEN SOMEBODY IS ACCUSED OF PATENT

23       INFRINGEMENT, THEY PUT FORWARD THEIR NON INFRINGEMENT

24       CONTENTIONS.  THEY ANSWER INTERROGATORIES ABOUT THEIR NON

25       INFRINGEMENT CONTENTIONS.  THE WHOLE TRIAL IS THEN BASED ON THE
```

1    DESCRIPTION OF THE PRODUCT AND THE DEFENSES THAT HAVE BEEN

2    RAISED.

3        WE DID ALL OF THAT.  AND WHAT WE ARE DEALING WITH NOW IS

4    DEFENSES THAT NOW WE KNOW FROM THE JOINT STATEMENT THAT THEY

5    COULD HAVE RAISED AND THEY THOUGHT THEY WERE SERIOUS AT THE

6    TIME, BUT THEY DIDN'T.

7        AND SO THE ISSUE FOR YOU REALLY IS, DO YOU WANT TO HOLD

8    THEM TO THAT AND DO THIS AS A MATHEMATICAL MOTION OR DO YOU

9    WANT TO IN EFFECT GIVE THEM LEAVE TO RAISE NEW NON INFRINGEMENT

10   DEFENSES AS TO THE SUPPLEMENTAL, DO DISCOVERY ON THOSE DEFENSES

11   AND HAVE A --

12           THE COURT:  NO, I'M NOT GOING TO.

13           MR. MCELHINNY:  DIFFERENT AND SEPARATE INFRINGEMENT

14   TRIAL.

15           THE COURT:  ON THE D'677, I WOULD LIKELY ORDER

16   SUPPLEMENTAL DAMAGES.

17       JUST TELL ME ON THE DROID CHARGE, WHAT'S YOUR RESPONSE TO

18   THEIR DESIGN-AROUND ARGUMENT?

19           MR. OLSON:  YOUR HONOR, AS TO THE DROID CHARGE, WE

20   ALLEGED IT TO BE INFRINGING OF THE D'305.  AND THE JURY FOUND

21   IT TO BE INFRINGING.

22       WE ALLEGED ALL OF THE UNITS AND INCORPORATED ALL OF THE

23   UNITS INTO THE CALCULATION IN JX1500, WHICH THE PLAINTIFFS

24   STIPULATED WAS THE RIGHT NUMBER OF SALES FOR THE MODEL.  AND

25   THOSE INCLUDE THE UNITS THAT THEY SAY INCORPORATE THIS

1    DESIGN-AROUND AFTER APRIL OF 2012.

2        SO IN APRIL OF 2012 THEY SAY WE INTRODUCED THIS

3    DESIGN-AROUND.  THEY SAY THEY INTRODUCED IT INTO THE DROID

4    CHARGE.  THE JURY, THEY THEN SUBMITTED TO THE JURY JX1500 WHICH

5    INCLUDED ALL OF THOSE SALES.

6        THE JURY FOUND THE PRODUCT INFRINGED THE '305 PATENT AND

7    THIS IS JUST AN EXTENSION OF THAT VERDICT, AS MR. MCELHINNY HAS

8    ALREADY PREVIOUSLY SAID.

9        AND YOU ARE CORRECT AS WELL, BY THE WAY, THAT THE ONLY ONE

10   THE '305 AFFECTS WOULD BE THE DROID CHARGE.

11            THE COURT:  AND THE '915 PATENT, WHY IS THAT BEING

12   RAISED IF THEY ARE NOT SEEKING ANY DAMAGES ON THAT PATENT?

13   SUPPLEMENTAL DAMAGES ON THAT PATENT?

14            MR. ANDERSON:  YOUR HONOR, WE PUT FORTH OUR POSITION

15   ON THAT IN THE INTEREST FOR FULSOME DISCOVERY.  THAT, AGAIN, WE

16   HAVEN'T HEARD FROM APPLE, BUT THAT PRODUCT WAS PUT INTO WHITE

17   PHONES THAT DON'T INFRINGE THE D'677.

18       NOW IF APPLE'S POSITION IS THEY DON'T, THEY DON'T SEEK

19   SUPPLEMENTAL DAMAGES ON THOSE PHONES, THAT'S FINE, BUT OUR

20   POSITION IS IT WAS INCORPORATED IN WHITE PHONES AFTER THE

21   VERDICT.

22            THE COURT:  OKAY.  YOUR POSITION IS THE '915

23   DESIGN-AROUND WAS INCLUDED IN WHITE PHONES.

24       I GUESS I'M UNCLEAR ON HOW THE '915 DESIGN-AROUND PRECLUDES

25   SUPPLEMENTAL DAMAGES ON THE D'677.

```
1              MR. ANDERSON:  WE ARE NOT MAKING THAT ARGUMENT,
2       YOUR HONOR.
3              WE ARE SAYING WE THINK THE COLOR OF THE PHONE, THE WHITE
4       AND THE STEEL GRAY PHONE ARE NOT ELIGIBLE FOR D'677 DAMAGES.
5       THERE'S NOT A SINGLE CASE APPLE HAS EVER CITED THAT SUGGESTS
6       THAT IT'S DEFENDANT'S BURDEN TO PRESENT DESIGN-AROUND AT TRIAL.
7       THEY HAVEN'T OFFERED A SINGLE CASE TO SUPPORT THEM --
8              THE COURT:  I HAVE TO SAY IF YOU DID NOT RAISE A
9       COLOR DEFENSE AT TRIAL, IT'S NOT FAIR TO DO IT POST VERDICT.
10             MR. ANDERSON:  BUT YOUR HONOR --
11             THE COURT:  AND I GUESS THE QUESTION I STILL DON'T
12      UNDERSTAND IS IF THEY ARE NOT SEEKING SUPPLEMENTAL DAMAGES ON
13      THE '915 PATENT, WHY ARE WE TALKING ABOUT '915 DESIGN-AROUND?
14      I'M JUST NOT CLEAR.
15             MS. MAROULIS:  FIRST OF ALL, YOUR HONOR ORDERED US TO
16      GO THROUGH ALL THE DESIGN-AROUNDS AND PRODUCE THE INFORMATION
17      TO APPLE.
18             SO AS TO EACH OF THE PATENTS AT ISSUE, WE PRODUCED THIS
19      INFORMATION IN THE DOCKET STATEMENT, 3307.
20             BUT YOUR HONOR, IF I MAY GO BACK TO D'677, THE WHOLE TENOR
21      OF TESTIMONY AT TRIAL WAS THAT IT WAS A BLACK PHONE.  WE
22      ADDUCED ONE ADMISSION AFTER ANOTHER THAT THE PHONE HAD TO HAVE
23      A BLACK FACE.
24             JUST LAST WEEK APPLE FILED A RESPONSE, PTO ACTION WHERE
25      THEY ARE TRYING TO OVER COME THE INVALIDITY FINDING.  AND AGAIN
```

1      THEY SAID IT HAS TO BE A BLACK FACE ON THE PHONE.

2          THE PROBLEM IS THAT SAMSUNG CANNOT BE PENALIZED FOR NOT

3      SAYING WHITE PHONES DON'T INFRINGE AND PURPLE PHONES DON'T

4      INFRINGE BECAUSE IT WAS UNDISPUTED THROUGHOUT THE TESTIMONY,

5      AND WE LAID IT OUT IN OUR SUBMISSION, WHICH IS DOCKET 3307,

6      THAT NOBODY SAID THAT THE PATENT REQUIRED ANYTHING OTHER THAN A

7      BLACK FRONT OF THE PHONE.

8          MR. ANDERSON:  AND YOUR HONOR, I WAS GOING TO POINT

9      OUT THAT ANOTHER REASON WE ARE TALKING ABOUT THE '915 HERE IS

10     THAT IN THE PERMANENT INJUNCTION CONTEXT, AFTER TRIAL, SAMSUNG

11     PRESENTED THESE DESIGN-AROUNDS.

12         ALL OF THESE DESIGN-AROUNDS WERE PRESENTED AND LITIGATED IN

13     A PERMANENT INJUNCTION CONTEXT.  AT THE TIME, APPLE COULD HAVE

14     SAID YOU ARE PRECLUDED FROM DOING SO, BY WHATEVER THEORY OF

15     WAIVER OR JUDGMENT --

16         THE COURT:  BUT I THINK PERMANENT INJUNCTION IS

17     DISTINGUISHED FROM SUPPLEMENTAL DAMAGES.  I DON'T PUT THEM IN

18     THE SAME CATEGORY.

19         I THINK PERMANENT INJUNCTION, YOU HAVE TO DO THE ANALYSIS

20     OF WHETHER IT'S SUBSTANTIALLY THE SAME.  WHEREAS SUPPLEMENTAL

21     DAMAGES, I MEAN, THE WHOLE TRIAL IS TO GET THE JURY TO FIGURE

22     OUT WHAT THE DAMAGES AMOUNT IS.  THAT'S THE PURPOSE OF THE

23     TRIAL.

24         SO TO SAY, NO, NO, NO, THEY WERE REQUIRED TO DO A SECOND

25     AND SUBSEQUENT MINITRIAL ON NEW DEFENSES IN ORDER TO GET, I

```
 1    MEAN, IF THIS WERE TO SETTLE, YOU WOULD JUST HAVE GOTTEN A

 2    LICENSE AND YOU WOULD BE PAYING ROYALTIES ON ALL OF THESE

 3    DEVICES.

 4         AND SO IN SOME WAYS THE SUPPLEMENTAL DAMAGES IS JUST

 5    REPLACING A ROYALTY PAYMENT.

 6              MR. ANDERSON:  FOR THAT VERY REASON, IT'S STILL

 7    APPLE'S BURDEN.  AND IF APPLE WANTS TO COLLECT DAMAGES FOR

 8    INFRINGEMENT OF ITS PATENTS, IT HAS TO SHOW THE DESIGN-AROUNDS

 9    INFRINGE.  THAT'S THE BURDEN ON THEM, WHETHER IT'S THE

10    INJUNCTION CONTEXT OR THE SUPPLEMENTAL DAMAGES CONTEXT.

11         AND THAT ASPECT THAT IT'S APPLE'S BURDEN TO SHOW

12    INFRINGEMENT DOES NOT CHANGE BETWEEN SUPPLEMENTAL DAMAGES AND

13    THE INJUNCTION CONTEXT.

14              THE COURT:  BUT I THINK THE WHOLE POINT OF

15    SUPPLEMENTAL DAMAGES IS TO AVOID THE NEED TO HAVE A SECOND

16    TRIAL.

17         SO, YOU KNOW, YOU HAD FOUR WEEKS TO PUT ON YOUR DEFENSES TO

18    THE D'677.  YOU DECIDED TO RELY ON OTHERS.  YOU DID NOT RAISE

19    THE COLOR DEFENSE.  I DON'T THINK IT'S FAIR TO SAY NOW APPLE

20    HAS TO SUE ME AGAIN SO I CAN PUT ON NEW DEFENSES AND GET A NEW

21    INFRINGEMENT FINDING.  I THINK THAT UNDERMINES THE EFFICIENCY

22    THAT SUPPLEMENTAL DAMAGES ARE SUPPOSED TO GIVE YOU.

23         BUT ANYWAY, CAN WE JUST MOVE ON, IT'S GETTING LATE.

24         LET'S DO '163, SORRY, THE '163 PATENT.  THE DESIGN-AROUND

25    NO LONGER PERFORMS THE CENTERING OF A SECOND BOX OF CONTENT.
```

```
1              WAS THAT PRESENTED OR NOT PRESENTED?

2              MR. ANDERSON:  THAT WAS SUBJECT TO JUDGE GREWAL'S

3     ORDER.

4              MR. MCELHINNY:  BUT IT'S NOT -- AND AS I UNDERSTAND,

5     IT'S NOT GOING TO BE RELEVANT BECAUSE THEY DO NOT ALLEGE THAT

6     IT WAS ACTUALLY PUT INTO EITHER THE PREVAIL OR THE CHARGE

7     DURING THE SUPPLEMENTAL DAMAGES PERIOD.

8              THE COURT:  IS THAT TRUE?  AND WHAT ABOUT THE GALAXY

9     S II MOBILE THOUGH?

10             MR. ANDERSON:  THE -- SO YOUR HONOR, THE '163 ON THE

11    PREVAIL AND DROID CHARGE, I THINK THAT STATEMENT MAY HAVE BEEN

12    INACCURATE.

13        WE HAVE A SITUATION WHERE APPLE IS NOW SAYING SAMSUNG HAS

14    TO BE PUNISHED MILLIONS AND MILLIONS OF DOLLARS OF DAMAGES

15    BECAUSE THEY GOT THE DESIGN-AROUND IN A LITTLE TOO EARLY.

16    THAT'S THEIR POSITION ON THE '163.

17             THE COURT:  I GUESS THAT SEEMS LIKE A DIFFERENT

18    STATEMENT THAN, WAS IT IN THE PREVAIL OR DROID CHARGE DURING

19    THE SUPPLEMENTAL DAMAGES PERIOD?

20        WHEN YOU SAY IT'S IN, ARE YOU SAYING IT WAS INTRODUCED OR

21    YOU ARE SAYING IT WAS ACTUALLY INCORPORATED IN A SELLING

22    PRODUCT?  THAT'S WHAT I'M NOT CLEAR ON.

23             MR. ANDERSON:  IT WAS INCORPORATED IN A SELLING

24    PRODUCT.

25             THE COURT:  BEFORE THE JURY TRIAL?
```

1      MR. ANDERSON:  SO FOR THE '163 --

2          THE COURT:  LET ME ASK MR. MCELHINNY.

3      YOU JUST SAID IT WAS NOT IN THE PREVAIL OR THE DROID CHARGE

4  DURING THE SUPPLEMENTAL DAMAGES PERIOD.  WHAT DOES THAT MEAN?

5      IT WASN'T INCLUDED IN THOSE PRODUCTS THAT WERE SOLD DURING

6  THE SUPPLEMENTAL DAMAGES PERIOD?  OR IT WAS INCORPORATED BEFORE

7  THE JURY TRIAL AND CONTINUED TO BE IN THOSE PRODUCTS DURING THE

8  SUPPLEMENTAL DAMAGES PERIOD?

9          MR. MCELHINNY:  I THINK THE ANSWER IS I'M NOT SURE

10  WHICH OF THOSE IT IS.  WHAT I SHOULD HAVE SAID WAS THAT THE

11  PREVAIL AND THE CHARGE, IN THE SUPPLEMENTAL PERIOD, ARE

12  UNCHANGED FROM THE SPECIFIC PHONES THAT THE JURY FOUND

13  INFRINGING.

14          MR. ANDERSON:  SO THE DATES IN QUESTION ARE THAT THE

15  FIRST GALAXY PREVAIL WITH THE '163 DESIGN-AROUND WAS SOLD IN

16  THE UNITED STATES WAS AUGUST 23RD, 2012, FOR THE DROID CHARGE.

17  THE FIRST DAY THAT ONE OF THOSE WITH THE '163 DESIGN-AROUND WAS

18  SOLD WAS APRIL 26, 2012.

19          THE COURT:  WAIT, THE APRIL 26, 2012 IS FOR THE DROID

20  CHARGE?

21          MR. ANDERSON:  THE DROID CHARGE WITH THE '163

22  DESIGN-AROUND.

23          THE COURT:  OKAY.  THE 8-23 DATE IS THE PREVAIL.

24      DO YOU AGREE WITH THAT, MR. MCELHINNY?  THE DATE BEFORE THE

25  VERDICT?

1          MR. MCELHINNY:  THAT'S WHAT THEIR STATEMENT SAYS,

2     YOUR HONOR, AND WE HAVE BEEN ACCEPTING THAT.

3          THE COURT:  WELL, I CAN SEE APPLE'S ARGUMENT AS TO

4     THE DROID CHARGE.  APRIL 26, 2012 IS CERTAINLY BEFORE THE

5     JULY 30TH TRIAL.  BUT WHAT ABOUT THE ONE THAT WAS INCORPORATED

6     THE DAY BEFORE THE VERDICT?

7          MR. ANDERSON:  WELL, I THINK IT JUST SHOWS IT'S -- IT

8     SHOWS THE ABSURDITY OF THEIR POSITION.  WE GOT THE

9     DESIGN-AROUND IN OF THE PRODUCT TOO EARLY, THEREFORE WE HAVE TO

10    PAY ON THE POST-VERDICT SALES.

11         THE COURT:  WELL, YOU COULD HAVE PRESENTED THAT TO

12    THE JURY AND --

13         MR. MCELHINNY:  THIS IS THE JUDGE GREWAL ORDER.  AS

14    YOUR HONOR WILL RECALL, THIS IS THE SANCTION FOR FAILING TO

15    PRODUCE DURING DISCOVERY, FAILING TO RAISE IT AS A

16    DESIGN-AROUND.

17       AND OUR POSITION ON THIS IS, ALTHOUGH JUDGE GREWAL DID NOT

18    IMPOSE HIMSELF ON SUBSEQUENT ORDERS AND GET INTO YOUR

19    JURISDICTION, YOUR HONOR HAS SUBSEQUENTLY RULED THAT IT'S --

20    THAT YOU WERE NOT GOING TO CHANGE THE RULES FOR EACH OF THESE

21    TRIALS AND SUBSEQUENT PROCEDURES.

22       AND THE CONCEPT OF SANCTIONS WOULD GET RAISED FOR

23    SUPPLEMENTAL DAMAGES.  AND THEN WE WOULD HAVE A NON

24    INFRINGEMENT TRIAL, THAT DOESN'T --

25         THE COURT:  WHAT ABOUT THE GALAXY S II MOBILE FOR THE

```
1        '163?

2               MR. OLSON:  UNLESS I'M MISTAKEN, YOUR HONOR, I DON'T

3    BELIEVE IT WAS FOUND TO INFRINGE THE '163.

4        BUT IF I AM MISTAKEN ON THAT FRONT, WHAT I WOULD SAY IS THE

5    SAME THING AS TO -- EXCUSE ME, I'M INCORRECT, IT WAS.  YES, IT

6    WAS.

7               THE COURT:  IT WAS.

8               MR. OLSON:  BUT IT'S THE SAME PRECISE ISSUE AS THE

9    '915.  GALAXY S T-MOBILE INTRODUCED IN OCTOBER, ONLY SAMSUNG'S

10   PROFITS PRESENTED AT TRIAL AND ONLY SAMSUNG'S PROFITS PRESENTED

11   IN THE VERDICT AND THE JUDGMENT; THEREFORE, ONLY SAMSUNG'S

12   PROFITS BEING SOUGHT AS A SUPPLEMENTAL DAMAGES REMEDY.

13       AND UNDER CATALINA LIGHTING, WE WOULD NOT GET A REASONABLE

14   ROYALTY FOR EITHER THE '915 OR THE '163.  THERE'S NO

15   DISTINCTION.

16              THE COURT:  DO YOU AGREE WITH THAT, MR. ANDERSON?

17              MR. ANDERSON:  YES.  THIS IS THE GALAXY S II T-MOBILE

18   PRODUCT THAT WE TALKED ABOUT EARLIER.

19              THE COURT:  YEAH.  NO REASONABLE ROYALTY FOR ANY

20   UTILITY PATENTS ON THAT ONE.

21              MR. ANDERSON:  NOT IN THE JUDGMENT.

22              THE COURT:  OKAY.

23              MR. ANDERSON:  IT WAS FOUND TO INFRINGE THE '163.

24   AND THE FIRST STATE OF THE DESIGN-AROUND SALE THERE IS JULY 13,

25   2012.
```

```
 1              THE COURT:  THE FIRST SALE OF WHAT?

 2              MR. ANDERSON:  OF THE GALAXY S II T-MOBILE.

 3              THE COURT:  WITH THE '163 DESIGN-AROUND.  WAS WHAT

 4      DATE?  I'M SORRY.

 5              MR. ANDERSON:  JULY 13, 2012.

 6              THE COURT:  JULY 13, 2012.  AND THAT ONE WAS ALSO

 7      SUBJECT TO JUDGE GREWAL'S ORDER?

 8              MR. ANDERSON:  YES.

 9              THE COURT:  OKAY.  LET'S GO NOW, PLEASE, TO THE '381

10      PATENT.

11          THAT'S NOT ALLOWING YOU TO SCROLL PAST THE END OF THE

12      DOCUMENT HAVING THE BLUE OR ORANGE GLOW IF THE USER TRIES TO

13      SCROLL PAST THE EDGE OF THE DOCUMENT.

14          WHAT'S YOUR RESPONSE?

15              MR. MCELHINNY:  THIS IS SUBJECT TO JUDGE GREWAL'S

16      ORDER, AND THE DEFENSE WAS EXCLUDED FOR FAILURE TO COMPLY WITH

17      THE LOCAL RULES.

18              THE COURT:  OKAY.

19              MR. ANDERSON:  AND --

20              THE COURT:  WHEN WAS THE -- WHEN WERE -- WHEN WERE

21      THESE TWO PRODUCTS SOLD WITH THIS DESIGN-AROUND IN IT OR AT

22      LEAST THE FIRST SALE OF THESE PRODUCTS WITH THE DESIGN-AROUND

23      IN IT?

24              MR. ANDERSON:  THE GALAXY PREVAIL, THE FIRST DATE

25      WITH THE '381 DESIGN-AROUND IS NOVEMBER 21ST, 2011.
```

```
 1              THE COURT:  NOVEMBER 21ST, 2011.  OKAY.

 2              MR. ANDERSON:  FOR THE DROID CHARGE, THE FIRST DAY

 3    WITH THE 381 DESIGN-AROUND IS DECEMBER 14, 2012.

 4              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 5         SO I WOULD LIKE TO SET A HEARING DATE AND SET A BRIEFING

 6    SCHEDULE.  I WOULD -- YOU KNOW, THESE THINGS ARE SO COMPLICATED

 7    THAT THEY'RE NOT OBVIOUS FROM READING YOUR JOINT SUBMISSION.

 8         SO TO THE EXTENT YOU CAN REALLY SORT OF HAND-HOLD AND WALK

 9    THROUGH WHAT THE ARGUMENTS ARE WITH CITATIONS, AS NECESSARY,

10    TRIAL TRANSCRIPT PAGE AND LINE NUMBER OR EXHIBIT, THAT WOULD BE

11    REALLY HELPFUL.

12         SO WHEN CAN YOU FILE YOUR MOTION?  I KNOW IT WOULD REQUIRE

13    YOU TO SAY, YOU KNOW, FOR THIS PRODUCT, WE ARE ASKING FOR THIS

14    PRECISE NUMBER, THAT'S BASED ON THIS CALCULATION,

15              MR. MCELHINNY:  DECEMBER 23RD.

16              THE COURT:  YOU DON'T WANT THE 25TH?

17              MS. KREVANS:  HE WANTED THE 24TH, BUT I BEGGED HIM

18    NOT TO.

19              MR. MCELHINNY:  THE PROBLEM IS IF YOU GIVE US THE

20    28TH, THEN PEOPLE WILL HAVE TO WORK OVER THE HOLIDAY.  IF IT

21    GETS DONE, IT GETS DONE.  SO THE 23RD WOULD BE BETTER.

22         (OFF-THE-RECORD DISCUSSION.)

23              THE COURT:  OKAY.  WELL, WHAT DATE WOULD YOU LIKE?

24              MS. MAROULIS:  YOUR HONOR, WE WOULD LIKE FOUR WEEKS,

25    IF IT'S GOING TO BE OVER THE HOLIDAY, MAYBE FIVE WEEKS, IF
```

1      POSSIBLE.

2                 THE COURT:  I DIDN'T BRING A CALENDAR.

3          DO YOU WANT A REPLY?

4                 MR. MCELHINNY:  WE WOULD LIKE A REPLY, YOUR HONOR.

5          WE HAVE NOW, TAKING INTO ACCOUNT WHAT YOUR HONOR HAS SAID,

6      AND HOW IT NEEDS TO BE WRITTEN, WE HAVE BRIEFED THIS TWICE.

7                 THE COURT:  YEAH.

8                 MR. MCELHINNY:  I MEAN, THE IDEA THEY GET 4 OR

9      5 WEEKS TO DO IT A THIRD TIME SEEMS EXTREME TO ME.

10                THE COURT:  OKAY.

11                MS. MAROULIS:  YOUR HONOR, WE WILL TAKE JANUARY 28TH

12     OR 29.  IT'S A THURSDAY OR FRIDAY OF THAT WEEK.

13                THE COURT:  I DON'T SEE WHY YOU NEED A WHOLE MONTH,

14     THIS HAS BEEN BRIEFED.

15                MS. MAROULIS:  YOUR HONOR, WE WILL HAVE TO SUBMIT AN

16     EXPERT DECLARATION ONCE WE SEE THEIR EXPERT DECLARATION.

17         SO I PRESUME THEY PREPARED SOMETHING ALREADY, WHICH IS WHY

18     THEY PROBABLY DON'T NEED AS MUCH TIME AS WE DO, BUT WE DO NEED

19     TO ACCOUNT FOR MR. WAGNER'S SCHEDULE AS WELL.

20                THE COURT:  ARE YOU GOING TO BE SUBMITTING EXPERT

21     REPORTS OR EXPERT TESTIMONY?

22                MR. MCELHINNY:  I DON'T ANTICIPATE THAT WE WOULD.  I

23     THINK WE ARE GOING TO DO IT WITH CITES TO THE RECORD.  OH, I'M

24     SORRY, WE ARE GOING TO DO THE MATHEMATICAL CALCULATION, THAT

25     WILL PROBABLY COME IN IN A DECLARATION.

```
1                THE COURT:  OKAY.

2                MR. MCELHINNY:  BUT IT'S REALLY MATHEMATICAL.  THEY

3        HAVE GIVEN US THEIR SALES FIGURES.

4                THE COURT:  I WILL GIVE JANUARY 20TH, THAT'S FOUR

5        WEEKS.

6                MS. MAROULIS:  VERY WELL, YOUR HONOR.

7                THE COURT:  ALL RIGHT.  HOW MANY WEEKS DO YOU WANT?

8        TWO?

9                MR. MCELHINNY:  YES, PLEASE.

10               THE COURT:  SO THAT'S FEBRUARY 3RD.

11            WE HAVE, I THINK, WHAT --

12               MS. MAROULIS:  YOUR HONOR, WE ARE MEETING

13       FEBRUARY 11TH FOR MOTIONS TO STRIKE.  THE NEXT TIME WE WILL SEE

14       THE COURT IS THE PRETRIAL CONFERENCE IN MARCH.

15               THE COURT:  I THINK WE CAN'T DO IT ON THOSE DATES, IT

16       WOULD BE TOO HARD FOR US.

17           I WILL SET THE HEARING -- WELL, IT'S REALLY HARD FOR ME TO

18       ANTICIPATE, DO YOU THINK THERE ARE GOING TO BE A LOT OF ISSUES

19       FOR A PRETRIAL CONFERENCE?  I REMEMBER THE PRETRIAL CONFERENCE

20       THAT WAS IN OCTOBER OF 2013, WE ENDED UP FILING EIGHT

21       SUBSTANTIVE ORDERS, SO IT WAS ACTUALLY A LOT OF EFFORT.

22           WHAT'S YOUR, I'M HOPING, I'M JUST TRYING TO FIGURE OUT WHEN

23       I CAN SQUEEZE THIS IN BETWEEN THE MOTIONS TO STRIKE, THE

24       DAUBERT -- THE MOTIONS AND STRIKE AND THE PRETRIAL CONFERENCE.

25               I MEAN, I'M HOPING SINCE WE ALREADY HAVE SO MANY
```

```
 1    SUBSTANTIVE ORDERS ON FILE, I MEAN, WE HAVE THE NINTH CIRCUIT
 2    OPINION, THE JURY INSTRUCTIONS, SO THERE SHOULD NOT BE --
 3              MS. MAROULIS:  THERE WILL BE SOME ISSUES, YOUR HONOR.
 4    I AM HOPING IT WOULDN'T REQUIRE ANY SUBSTANTIVE ORDERS.
 5              MR. MCELHINNY:  I'M ALSO MISSING SOMETHING.  I'M NOT
 6    SURE WHAT I'M MISSING HERE, YOUR HONOR.
 7         YOU ARE ABOUT TO SET A HEARING DATE, YOU CAN SET THAT
 8    WHENEVER YOU WANT.  I MEAN, ONCE WE ARE COMPLETELY BRIEFED, YOU
 9    WILL HAVE IT UNDER SUBMISSION AND IT SHOULD BE YOUR SCHEDULE
10    THAT DETERMINES THE REST.
11              THE COURT:  YEAH, I KNOW.  I'M JUST TRYING TO THINK
12    IN TERMS OF, YOU KNOW, WORKLOAD-WISE, WE HAVE THE PRETRIAL
13    CONFERENCE ON MARCH 3RD.  I COULD SET IT THE 10TH.  THE 17TH I
14    HAVE MOTIONS TO DISMISS AND AN MDL.  I COULD SET IT FOR THE
15    24TH, BUT THAT WOULD BE THE WEEK BEFORE OUR TRIAL BEGINS,
16    ACTUALLY ONLY FOUR DAYS.
17              MR. MCELHINNY:  WE WILL ALL BE HERE.
18              THE COURT:  WHY DON'T I SET IT FOR THE 24TH OF MARCH.
19    THAT WILL BE AT 1:30.
20              MS. MAROULIS:  YOUR HONOR, MAY WE HAVE A REQUIREMENT
21    THAT LEAD COUNSEL MEET AND CONFER, HAVE SOME OF THE PEOPLE BY
22    PHONE AND OTHERS IN PERSON, BECAUSE WE STILL HAVE THE ORDER IN
23    PLACE FROM BEFORE.
24         FOR THIS MOTION, WE NEED TO MEET AND CONFER AND NARROW THE
25    ISSUES, AND CAN WE DO THAT WITH MYSELF AND SOMEBODY ELSE ALSO
```

1    HERE IN PERSON, AND THEN MR. MCELHINNY AND MR. PRICE CAN APPEAR

2    BY PHONE?

3                THE COURT:  OH, NO, THIS ONE IS IN PERSON.

4                MS. MAROULIS:  UNDERSTOOD.

5                THE COURT:  I THINK IT'S IMPORTANT ENOUGH TO REALLY

6    MAKE A GOOD FAITH EFFORT TO TRY TO NARROW THE ISSUES, IF YOU

7    CAN.  SO THAT'S IN PERSON.

8        OKAY.  WHAT ELSE?  WAS THERE ANYTHING ELSE THAT WE NEEDED

9    TO DO TODAY, OTHER THAN SUPPLEMENTAL DAMAGES?  I THINK THAT WAS

10   IT.

11       OH, TELL ME WHAT'S GOING ON WITH ALL THE OTHER CASES.

12       SO WHAT DO WE HAVE PENDING AT THE CIRCUIT?  WE HAVE THE

13   SECOND CASE THAT'S BEING ARGUED IN JANUARY

14               MS. MAROULIS:  YES, YOUR HONOR.  THERE'S A

15   JANUARY 5TH HEARING.

16               THE COURT:  OKAY.  SO THAT'S ON NUMBER TWO.  AND

17   THERE'S NOTHING -- OH, NO, WE HAVE AN INJUNCTION.

18               MS. MAROULIS:  THERE'S EN BANC REVIEW PENDING.

19       APPLE WAS ASKED TO SUBMIT A RESPONSE, AND THEY DID IN

20   NOVEMBER, SO THERE'S NOTHING YET FROM THE CIRCUIT, BUT WE WILL

21   INFORM THE COURT WHEN WE HEAR ONE WAY OR ANOTHER.

22               THE COURT:  OKAY.

23       DO YOU HAVE ANY SENSE FROM KNOWING HOW LONG THE CIRCUIT

24   USUALLY TAKES, WHEN YOU EXPECT ANY ANSWER ON THAT?

25               MS. MAROULIS:  IT'S JUST MY GUESS, THE EARLIEST WOULD

```
1     BE THIS MONTH.

2              MR. LEE:  YOUR HONOR, ON THIS ISSUE IT DEPENDS

3     ENTIRELY ON WHETHER SOMEONE WRITING THE OPINION WENT ONE WAY OR

4     THE OTHER, SO WE JUST DON'T KNOW.

5              THE COURT:  OKAY.

6              MR. LEE:  FOR INSTANCE, OFTEN WHEN YOU HAVE A DENIAL

7     WHEN YOU HAVE A HEARING EN BANC, SOMEONE WOULD HAVE TO WEIGH IN

8     AND THE SAY I GRANTED EN BANC.  IT MIGHT TAKE A LITTLE BIT

9     LONGER BEFORE YOU GET THE DECISION.

10             THE COURT:  I SEE.  OKAY.  SO MAYBE SOME TIME THIS

11    MONTH OR NEXT MONTH.

12             MR. LEE:  I THINK THAT'S RIGHT.

13             MS. MAROULIS:  YES, YOUR HONOR.

14        AND IN OTHER NEWS, APPLE FILED A NOTICE OF APPEAL FROM THE

15    UNITED STATES PATENT OFFICE INVALIDATING THE '915 PATENT.

16        I THINK THEY FILED THAT NOVEMBER 23RD.  IT HASN'T BEEN

17    DOCKETED YET, BUT IT SHOULD BE SOON.  ALSO, PROBABLY BY THE END

18    OF THIS MONTH OR THE LATEST, EARLY NEXT MONTH.

19             THE COURT:  THAT WAS WITH THE FEDERAL CIRCUIT?

20             MS. MAROULIS:  THAT'S CORRECT.

21             THE COURT:  OKAY.

22             MS. MAROULIS:  AND THEN WE ARE FILING THE

23    SUR-PETITION NEXT WEEK.

24             THE COURT:  ON WHICH ISSUE?

25             MS. MAROULIS:  IT WILL FOCUS ON THE DESIGN PATENTS.
```

```
1                    THE COURT:  OKAY.  THAT'S WITH THE SUPREME COURT.  SO

2        THAT'S WITH THE MAY 2015 ORDER.  THAT'S THAT ORDER, RIGHT?

3                    MS. MAROULIS:  THAT'S CORRECT.  MAY 2015.

4                    THE COURT:  YEAH.  OKAY.  AND WHEN ARE YOU FILING

5        THAT ONE?

6                    MS. MAROULIS:  ON MONDAY.

7                    THE COURT:  ON MONDAY.  SO THAT'S THE 14TH; IS THAT

8        RIGHT?

9                    MS. MAROULIS:  YES.

10                   THE COURT:  AND HOW LONG DO THEY TAKE TO RULE?

11                   MS. MAROULIS:  WELL, I DON'T KNOW WHETHER THERE'S

12       ANYTHING USUAL ABOUT THAT, BUT WE COULD HEAR AS EARLY AS

13       MID-FEBRUARY OR AS LATE AS THE SPRING.

14                   MR. LEE:  I THINK WITH OUR OPPOSITION, IT'S LIKELY

15       MARCH OR APRIL, YOU WILL HAVE AN ANSWER ON THE SUR-PETITION.

16                   THE COURT:  SO THAT'S MARCH OR APRIL.  AND WE HAVE

17       THE ORAL ARGUMENT.

18          AND I ASSUME THAT JANUARY 5TH IS ON EVERYTHING, INVALIDITY

19       AND INFRINGEMENT, ON ALL THE IP THAT WAS THE SUBJECT OF THAT

20       TRIAL.

21                   MR. LEE:  THAT'S THE ENTIRE JUDGMENT, YES.

22       EVERYTHING OTHER THAN THE PERMANENT INJUNCTION, WHICH THEY HAVE

23       ALREADY ADDRESSED.

24                   THE COURT:  OKAY.  SO THEN THE EN BANC PETITION, YOU

25       EXPECT TO HEAR SOME TIME IN THE NEXT TWO MONTHS.
```

1          I ASSUME, THEN, SAMSUNG WOULD FILE A SUR-PETITION WITH THE

2     SUPREME COURT, OR YOU HAVEN'T DECIDED?

3               MS. MAROULIS:  WE DON'T HAVE A PLAN YET, YOUR HONOR.

4               THE COURT:  OKAY.  ALL RIGHT.

5               MS. MAROULIS:  NOT THAT I CAN SHARE WITH THE COURT.

6               THE COURT:  THAT'S FINE.

7               MR. LEE:  YOUR HONOR, AND THERE'S ONE MORE APPEAL

8     PENDING.  SAMSUNG TOOK AN APPEAL FROM THE SANCTIONS ORDER THAT

9     JUDGE GREWAL ENTERED THAT YOUR HONOR AFFIRMED.

10              THE COURT:  OKAY.

11              MR. LEE:  WE FILED OUR BRIEF LAST WEEK IN RESPONSE AS

12    TO NOKIA.  THE REPLY IS DUE IN A COUPLE OF --

13              MS. MAROULIS:  THE REPLY IS DUE IN JANUARY.

14          BUT JUST TO CORRECT A LITTLE BIT, MR. LEE, IT'S NOT AN

15    APPEAL FROM THE SANCTIONS ORDER, IT'S AN APPEAL FROM THE

16    RECOMMENDED PRIVILEGE OF CERTAIN DOCUMENTS.

17              MR. LEE:  THAT'S CORRECT.  IT'S PART OF THE ORDER

18    THAT WAS ENTERED ON THE SANCTIONS, AND THE APPEAL WAS LIMITED

19    TO THAT PORTION OF THE ORDER.

20              THE COURT:  TO THE PRODUCTION OF PRIVILEGED

21    DOCUMENTS?

22              MS. MAROULIS:  CORRECT.

23              MR. LEE:  THAT'S CORRECT.

24              THE COURT:  OKAY.

25          AND THAT ONE, YOU'RE EXPECTING HEARING, LIKE, JULY?

```
 1                MR. LEE:  I THINK IT'S PROBABLY FULLY BRIEFED,
 2      YOUR HONOR, BY JANUARY, SO IT'S PROBABLY ON THE CALENDAR IN
 3      APRIL.
 4                THE COURT:  OKAY.
 5                MS. MAROULIS:  YEAH.
 6                THE COURT:  OKAY.  IT'S GOING TO BE FULLY BRIEFED IN
 7      JANUARY, I DIDN'T REALIZE THAT.  OKAY.  SO HEARING WILL BE
 8      APRIL OR MAY.
 9          OKAY.  ANY OTHERS?
10                MR. LEE:  I THINK THAT'S IT.
11                THE COURT:  OKAY.  AND THEN I ASSUME '915 MIGHT TAKE,
12      WHAT?
13                MS. MAROULIS:  YOUR HONOR, IF YOU APPLY THE NORMAL
14      DOCKETING RULES, IT SHOULD BE FULLY BRIEFED FOR HEARING SOME
15      TIME IN JULY OR AUGUST OF NEXT YEAR.
16          SO MY ESTIMATE OF APPLYING THE DIFFERENT DEADLINES WOULD BE
17      THE FEDERAL CIRCUIT WOULD HEAR THAT APPEAL IN JULY OR AUGUST OF
18      2016.
19                THE COURT:  WHEN IS IT GOING TO BE FULLY BRIEFED?
20                MR. LEE:  I DON'T THINK -- IT'S NOT DOCKETED YET, SO
21      IT'S NOT GOING TO BE FULLY BRIEFED UNTIL THE MIDDLE OF THE
22      YEAR.
23                THE COURT:  THE HEARINGS ARE ABOUT FOUR OR
24      FIVE MONTHS AFTER IT'S FULLY BRIEFED?
25                MR. LEE:  IT'S ABOUT TWO OR THREE MONTHS AFTER THE
```

1    JOINT APPENDIX IS FILED, SO IT'S TWO TO THREE MONTHS.

2             THE COURT:  WELL, HOW COME -- I THOUGHT THE APPLE TWO

3    WAS FULLY BRIEFED BY AUGUST, WHY IS -- I THOUGHT THE HEARING ON

4    THAT WAS GOING TO BE DECEMBER, WHY IS IT JANUARY?

5             MS. MAROULIS:  YOUR HONOR, BOTH LEAD COUNSEL AND

6    MR. LEE AND MS. SULLIVAN HAD A NUMBER OF OTHER ARGUMENTS, AND

7    WHILE I DON'T KNOW FOR SURE, THEY SUBMITTED THEIR

8    UNAVAILABILITY LETTERS, SO I DON'T KNOW IF THAT HAD TO DO WITH

9    THE FACT THAT BETWEEN THE TWO SIDES THERE WEREN'T AVAILABLE

10   DATES IN DECEMBER.

11            MR. LEE:  AND YOUR HONOR, THE OTHER COMPLICATION IS

12   THAT WE HAD A PANEL ALREADY ON THE PERMANENT INJUNCTION, THEY

13   TRIED TO CONSTITUTE THE SAME PANEL FOR AN APPEAL FROM THE SAME

14   CASE.

15       SO IT WOULD BE OUR SCHEDULES, BUT ALSO GETTING THE THREE

16   JUDGES WHO DECIDED THE PERMANENT INJUNCTION.

17            THE COURT:  SO THE JANUARY 5TH PANEL IS GOING TO BE

18   JUDGE RAYMOND, JUDGE PROBST AND JUDGE MOORE.

19            MR. LEE:  LIKELY.

20            THE COURT:  OKAY.  NOW WHAT THE ABOUT THE '915?

21            MR. LEE:  THAT WOULD GO TO A NEW PANEL.

22            THE COURT:  A TOTALLY NEW PANEL.  ALL RIGHT.

23       WHAT ABOUT THE PRIVILEGE ORDER, DOES THAT GO TO JUDGE CHEN,

24   JUDGE O'MALLEY, AND JUDGE PROBST?  DOES THAT GO TO THE APPLE

25   ONE?

```
 1              MS. MAROULIS:  IT'S NOT CLEAR.  THERE WAS ANOTHER
 2     APPEAL HERE THAT WENT TO THE SAME PANEL, THE MERITS APPEAL, BUT
 3     I DON'T KNOW WHETHER WE CAN SAY FOR SURE IT WILL GO TO THE SAME
 4     PANEL OR NOT.
 5              MR. LEE:  AND JUDGE CHEN REPLACED JUDGE BRYSON FROM
 6     THE FIRST PANEL ALREADY.
 7              THE COURT:  RIGHT.  RIGHT.
 8          SO WHEN DO YOU FULLY BRIEF THE '915 APPEAL?  WHEN DO YOU
 9     THINK THAT WILL BE?  HOW LONG WILL THE FULL BRIEFING TAKE?
10              MR. LEE:  IT'S NOT DOCKETED YET, SO IT'S PROBABLY
11     MIDDLE OF NEXT YEAR.
12              THE COURT:  SO, LIKE, JUNE?
13              MR. LEE:  YEAH.
14              THE COURT:  OKAY.  SO THEN IT SOUNDS LIKE YOUR
15     HEARING MIGHT BE MORE OCTOBER.
16              MR. LEE:  AND THEN IF YOU ADD THE 90 TO 120 DAYS FOR
17     DECISION, YOU ARE TALKING SOME TIME IN EARLY 2017 BEFORE THERE
18     WOULD BE A DECISION.
19              MS. MAROULIS:  ONCE IT'S DOCKETED, WE CAN FILE A
20     SHORT STATEMENT NOTIFYING THE COURT ON THE TIMELINE.  WE
21     HAVEN'T DONE SO YET BECAUSE IT HASN'T BEEN DOCKETED, SO THERE'S
22     NOTHING CONCRETE TO SHOW.
23          BUT IT WILL OCCUR SOME TIME, BOTH THE FULL BRIEFING AND THE
24     HEARING, MOST LIKELY BY THE END OF NEXT YEAR.
25              THE COURT:  OKAY.  AND WE WILL PROBABLY GET THE APPLE
```

```
1        2 ORDER THEN, PROBABLY JUNE; DOES THAT SOUND RIGHT?

2                   MS. MAROULIS:  POSSIBLY.

3                   MR. LEE:  I THINK SO.

4                   THE COURT:  OKAY.  ALL RIGHT.

5             ANYTHING ELSE THEN FOR TODAY?

6                   MS. MAROULIS:  NOTHING FROM SAMSUNG, YOUR HONOR.

7                   MR. MCELHINNY:  NOTHING FROM US YOUR HONOR.

8                   THE COURT:  ALL RIGHT.  LET ME SET A FURTHER CMC.  WE

9        MIGHT AS WELL JUST SET IT ON THE DATE YOU ARE COMING BACK.

10            I MEAN, I WOULD SET IT FOR MARCH 3RD, UNLESS YOU THINK

11       THERE'S ANY REASON FOR US TO MEET SOONER.

12                  MS. MAROULIS:  NO, YOUR HONOR.  THAT'S FINE.

13                  THE COURT:  OKAY.

14                  MR. MCELHINNY:  MARCH 3RD IS GOOD, YOUR HONOR.

15                  THE COURT:  ALL RIGHT.

16            SO OUR NEXT CMC IS GOING TO BE THE DATE OF THE PRETRIAL

17       CONFERENCE, WHICH IS MARCH 3RD OF 2016.

18            OKAY.  THANK YOU.

19                  MR. MCELHINNY:  THANK YOU, YOUR HONOR.

20                  MR. LEE:  THANK YOU, YOUR HONOR.

21            (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

22

23

24

25
```

1

2

3

4                        **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 12/11/15