# Redacted Version Of Document Sought To Be Sealed

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S NOTICE OF MOTION AND MOTION FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST**<br><br>Date:      March 24, 2016<br>Time:      1:30 p.m.<br>Place:     Courtroom 8, 4th Floor<br>Judge:     Hon. Lucy H. Koh |

1

## NOTICE OF MOTION

2
TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3
PLEASE TAKE NOTICE that on March 24, 2016, at 1:30 p.m., or as soon thereafter as

4
the matter may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District

5
Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st

6
Street, San Jose, CA 95113, Plaintiff Apple Inc. ("Apple") shall and hereby does move the Court

7
for an award of supplemental damages for post-verdict sales made by Samsung Electronics Co.

8
Ltd., Samsung America, Inc., and Samsung Telecommunications America, LLC (collectively,

9
"Samsung") and prejudgment interest on that award.  Apple's motion is based on this Notice, the

10
Memorandum of Points and Authorities below, the Declarations submitted herewith, and such

11
other written or oral argument as was and may be presented at or before the time this motion is

12
taken under submission by the Court.

13

## RELIEF REQUESTED

14
Apple respectfully requests that the Court order that Apple be awarded supplemental

15
damages in the amount of $178,659,870 plus prejudgment interest on supplemental damages in

16
the amount of $1,192,490 through March 24, 2016, and $2,363 for each day thereafter.

17

18
Dated: December 23, 2015                    MORRISON & FOERSTER LLP

19

20
By:   *Rachel Krevans*
                                            RACHEL KREVANS

21
                                            Attorneys for Plaintiff
22
                                            APPLE INC.

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. PROCEDURAL BACKGROUND ................................................................................... 1

III. ARGUMENT ................................................................................................................... 3

    A. The Jury's Verdict Bars Samsung from Re-Litigating Infringement Issues for the Products Included in the August 2012 Verdict ........................................... 3

    B. Supplemental Damages Apply to Each of The Five Supplemental Damages Products ................................................................................................................. 7

        1. Galaxy S II Skyrocket ($6,144,916) .......................................................... 8

        2. Galaxy S II Epic 4G Touch ($96,920,602) .............................................. 11

        3. Galaxy S II T-Mobile ($74,706,398) ...................................................... 12

        4. Droid Charge ($620,467) ......................................................................... 14

        5. Galaxy Prevail ($167,488) ....................................................................... 17

    C. Samsung Did Not Challenge the Court's Methodology on Appeal ..................... 18

    D. The Court's March 1 Order re Damages Results in Supplemental Damages of $178 Million ................................................................................................... 19

    E. The Court Should Calculate and Award Prejudgment Interest ........................... 20

IV. CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

**CASES**

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008) ............................................................................................. 19

*Apple, Inc. v. Samsung Elecs., Ltd.*,
   786 F.3d 983 (Fed. Cir. 2015) ................................................................................................... 3

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 14-1335, Dkt. 34, at 9 ....................................................................................................... 13

*Brain Life, LLC v. Elekta Inc.*,
   746 F.3d 1045 (Fed. Cir. 2014) ................................................................................................. 4

*Catalina Lighting Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002) ............................................................................................... 12

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988) .................................................................................................................. 4

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
   803 F.3d 620 (Fed. Cir. 2015) ................................................................................................... 3

*EON Corp IP Holdings LLC v. Apple Inc.*,
   No. 14-CV-05511-WHO, 2015 WL 4914984 (N.D. Cal. Aug. 17, 2015) .............................. 6, 7

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994) ................................................................................................... 4

*Orenshteyn v. Citrix Sys., Inc.*,
   691 F.3d 1356 (Fed. Cir. 2012) ............................................................................................... 19

*Paulo v. Holder*,
   669 F.3d 911 (9th Cir. 2011) ..................................................................................................... 6

*S. Cal. Retail Clerks Union & Food Emp'rs Joint Pension Tr. Fund v. Bjorklund*,
   728 F.2d 1262 (9th Cir. 1984) ............................................................................................... 5, 8

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .................................................................................................................. 3

*TWM Mfg. Co. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir. 1986) ................................................................................................. 19

1

2

# **TABLE OF AUTHORITIES**
**(Continued)**

3

Statutes

4

35 U.S.C. § 289 ................................................................................................................................. 12

5

Other Authorities

6

Fed. R. Civ. P. 16 ............................................................................................................................ 5

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Since the 2012 verdict, Samsung has sold over two and a half million units of the same smartphones that the jury found to infringe. These post-verdict sales are smartphones with the same names, software, and color as units included in the verdict that both this Court and the Federal Circuit have confirmed.  Yet Samsung asks the Court to revisit questions that the jury already resolved and to consider arguments that Samsung did not raise at trial or on appeal. That path is now foreclosed.  The jury's findings resolve Apple's claims regarding infringement for products using the alleged "design arounds."  And there is no basis to revisit evidence that Samsung did present, could have presented, or was precluded from presenting by its own misconduct.

Equally significant, Samsung failed to pursue its appeal of the Court's supplemental damages methodology.  The Court should not revisit that methodology, particularly when it expressly advised that any objections to its decision should be raised on appeal.  Without ordering new discovery and a new trial, the Court should follow the methodology set out in its March 1, 2013 Order and calculate supplemental damages based on units sold of the products the jury found to infringe.

## II.  PROCEDURAL BACKGROUND

Apple filed this action against Samsung on April 15, 2011, alleging claims for utility patent, design patent, trade dress, trademark, and unfair competition.  On July 6, 2012, the parties filed a Joint Pretrial Statement and Order that defined Apple's contentions for the subsequent course of the proceedings.  Apple accused each of three Galaxy S II products by name, without reference or restriction to color or software build.  (Dkt. 1189 at 2 (*e.g.*, Apple "has accused the following products of infringing the following design and utility patents: . . . Galaxy S II (T-Mobile)").)  Apple similarly accused the Droid Charge and Galaxy Prevail by name, without reference or restriction to a specific firmware version or software build.  (*Id.* at 3.)

After a thirteen-day trial, the jury found on August 24, 2012 that all three Galaxy S II products, the Galaxy Prevail, and the Droid Charge infringed Apple's patents.  (Dkt. 1931.)  The

1     jury awarded Apple damages for *all* units of these five products sold before June 30, 2012,

2     ***including Galaxy S II units that were not black: some were white and some were dark grey***.

3     The jury's damages verdict also included Droid Charge units with the software that Samsung now

4     claims is a "design around" to the D'305, '381, and '163 Patents.  Samsung has never denied this.

5         After the verdict, the Court confirmed the jury's infringement and validity findings.  (Dkt.

6     2220.)  The Court also ruled on Apple's request for supplemental damages plus prejudgment

7     interest for the infringing phones that Samsung continued to sell after June 30, 2012 – the last day

8     for which Samsung produced sales information for the trial.  (March 1, 2013 Order on Damages,

9     Dkt. 2271 at 2.)  The Court agreed that Apple was entitled to supplemental damages, finding that

10    the Court "must make an award for any sale for which the jury did not."  (*Id.* (citing *Finjan, Inc.*

11    *v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010).)  However, the Court rejected

12    Apple's argument that supplemental damages should begin on July 1, 2012 – the day after the last

13    sale admitted into evidence at trial – because "nothing precluded Apple from arguing that the jury

14    should consider sales from June 30 through August 24 [*i.e.*, the date of the jury's verdict], or from

15    presenting evidence on how to estimate such sales."  (Dkt. 2271 at 3.)  The Court therefore ruled

16    that it would "calculate the supplemental damages award beginning on August 25, 2012, the day

17    after the verdict."  (*Id.* at 3.)

18        The Court then determined how it would calculate the amount of supplemental damages.

19    It stated that it would "determine the per-sale amount on a product-by-product basis" by

20    "divid[ing] the jury award for each product by that product's number of sales."  (*Id.* at 5.)  It

21    would then "use that per-sale amount to determine the supplemental damages amount for each

22    product that has remained on the market for any post-verdict period" by multiplying the per-sale

23    amount by Samsung's "actual number of sales."  (*Id.* at 5-6.)  The Court deferred the arithmetic

24    of those calculations until after appeal.  (*Id.* at 6, 8.)

25        A partial damages retrial was held in November 2013.  Following the second jury's

26    verdict, the court entered a judgment of $929,780,039.  (Dkt. 3017.)  The Court then confirmed

27    its ruling on the method for calculating supplemental damages, but again deferred the final

28    calculation to obtain the Federal Circuit's guidance following appeal.  (Dkt. 2947 at 3.)  Samsung

1    appealed the judgment.  The appeal is now concluded.  The Federal Circuit affirmed the jury's

2    validity and infringement findings for all products.  *Apple, Inc. v. Samsung Elecs., Ltd.*, 786 F.3d

3    983 (Fed. Cir. 2015).  The Federal Circuit also affirmed the damages verdict for the products that

4    form the basis of Apple's supplemental damages award.  *Id.* at 1004-5; *see* Dkt. 3290.  Although

5    Samsung appealed the March 1 Order re Damages, Samsung did not argue to the Federal Circuit

6    that the Court erred in its rulings regarding the supplemental damages methodology.

7    **III.    ARGUMENT**

8            Apple seeks supplemental damages on post-verdict sales of five phones—three Galaxy

9    S II phones, the Droid Charge, and the Galaxy Prevail—that are the same in all material respects

10   as products that the jury evaluated, found to be infringing, and included in its damages verdict.

11   Most involve sales of products identical to those that form part of the existing $549 million

12   judgment.  Where changes have occurred, they are immaterial in light of the jury's findings,

13   which were affirmed on appeal.

14           The jury's verdict bars Samsung from attempting to re-litigate infringement in order to

15   pursue new arguments that Samsung failed to present at trial.  There is no legal or equitable

16   justification to treat the sales of the same smartphone one way in the jury's verdict and another

17   way for supplemental damages, as Samsung requests.  Instead, the Court should apply the

18   methodology outlined in its March 1 Order re Damages (Dkt. 2271), and award Apple $178

19   million in supplemental damages and $1.2 million in prejudgment interest.

20           **A.      The Jury's Verdict Bars Samsung from Re-Litigating Infringement Issues for the Products Included in the August 2012 Verdict.**

21

22           Under well-settled principles of issue preclusion, Samsung cannot retry infringement now,

     because the jury resolved infringement at the 2012 trial.  *See Dow Chem. Co. v. Nova Chems.*

23   *Corp. (Canada)*, 803 F.3d 620, 627 (Fed. Cir. 2015) ("[O]rdinarily issue preclusion (or law of the

24   case) would bar relitigation in the supplemental damages period of issues (such as validity) that

25   were resolved as to the earlier time periods.").  Issue preclusion "bars 'successive litigation of an

26   issue of fact or law already litigated and resolved in a valid court determination essential to the

27   prior judgment.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cited in *Dow Chem. Co.*, 803

28

F.3d at 627).  This principle provides a foundation for American civil procedure that makes jury determinations decisive and meaningful, and avoids the needless proliferation of proceedings once a trial has been held.  "If an issue of fact or law is actually litigated and determined by a final judgment, and the determination is essential to the judgment, that determination is conclusive in any later action between the parties on the same or a different claim."  *Brain Life, LLC v. Elekta Inc*., 746 F.3d 1045, 1055 (Fed. Cir. 2014); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (Issue preclusion "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'"); *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) ("[A] party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again.").  Because the supplemental damages products at issue are the same in all material respects as products that formed part of the verdict, the jury's decision controls and supplemental damages should be awarded.

After a thirteen-day trial and approximately three full days of deliberation, the jury conclusively resolved the issues that Samsung now seeks to re-litigate — infringement of the same three Galaxy S II, Galaxy Prevail, and Droid Charge products that the jury found to infringe Apple's design and utility patents.  (Dkt. 1931.)  Based on the choices that Samsung made during the course of this litigation and at trial, Samsung failed to present each of the non-infringement arguments that Samsung now seeks to raise at the supplemental damages phase.  Each argument was either available to Samsung at trial, but not presented as a result of strategic choices by Samsung, or was available to it in this action but foreclosed at trial due to Samsung's serious discovery misconduct and a resulting sanctions order.  As a result, the jury's damages award incorporated units that included Samsung's claimed design arounds into the verdict.  Samsung does not get a "do over" merely because it wishes to try infringement issues to the Court that it could have, but failed, to present to the jury.  *See Brain Life*, 746 F.3d at 1055 (issue preclusion applies to "previously challenged products which have not been materially altered" from the products adjudicated by the jury).

Samsung has argued that "[i]t was not [its] burden to raise its actual design arounds at trial

1   in order to preserve its right to rely on those design arounds for the purpose of determining

2   supplemental damages." (Dkt. 3316 at 6.)  But this assertion ignores the purpose of the issue

3   preclusion doctrine and the effect of the jury's findings.  Samsung needed to present all defenses

4   to infringement and damages at trial.  That is true regardless of who bore the burden of proof.

5   Nothing but Samsung's own actions barred it from doing so here.  And, after August 24, 2012,

6   the jury's verdict controls the question of how products included in its verdict should be treated.

7        The record of proceedings up to, during, and after the trial resolves these questions for

8   purposes of determining supplemental damages.

9        **First**, Apple accused each product of infringement in the parties' Joint Pretrial Statement

10  and Order ***without reference or restriction to color or software build***.  For example, Apple

11  "accused the following products of infringing the following design and utility patents: . . . Galaxy

12  S II (T-Mobile)." (Dkt. 1189 at 2.)  The same is true for each of the other two Galaxy S II

13  products for which it seeks supplemental damages.  (*Id.* at 2.)  Apple similarly accused the Droid

14  Charge and Galaxy Prevail by name, without restriction to a specific firmware version or software

15  build.  (*Id.* at 3.)  Apple's infringement contentions in the Joint Pretrial Statement and Order

16  defined the issues to be tried under Rule 16 for all subsequent proceedings.  *See S. Cal. Retail*

17  *Clerks Union & Food Emp'rs Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir.

18  1984) ("[A] pretrial order controls the subsequent course of the action.").  Samsung was therefore

19  obligated to come forward with any defenses to infringement that it intended to assert against

20  these products and any arguments as to why some or all of the sales of those products should not

21  receive a damages award.

22       **Second**, Samsung's own actions and strategic decisions—and nothing else—kept its

23  present arguments from the jury.  As discussed in detail below, Samsung sold both white and dark

24  grey Galaxy S II smartphones between November 2011 and June 2012 and those units were

25  included in the unit sales figures used by both parties' damages experts and the jury to calculate

26  damages.  (*See* Section D(1)-D(3), *infra*.)  Samsung's own damages expert, Michael Wagner,

27  admitted that there was "no reason that [he] couldn't have disclosed" an opinion that "white" and

28  "grey" phones designed around the D'677 Patent in his April 2012 damages report.  (Dkt. 2382-5

1    at 814:2-815:6.)  Samsung did not object—indeed, it stipulated—to the inclusion of units

2    embodying these white and grey smartphones in the sales numbers contained in JX1500 that both

3    parties jointly submitted to the jury and that the jury incorporated into its damages verdicts.  (Dkt.

4    1597 ¶ 6.)  Non-black Galaxy S II products, which Samsung now alleges are non-infringing, were

5    included in JX1500, which served as the basis for both experts' damages calculation and for the

6    jury's damages award.  (*See* Section D(1)-(3), *infra*.)

7         The exact same is true for smartphones that contain the alleged design arounds for the

8    D'305, '381, and '163 Patents.  (*See* Sections D(4)-(5), *infra*.)  According to Samsung, these

9    alleged changes were introduced into its smartphones as early as October 2011 and as late as

10   April 2012.  (Dkt. 3307 at 2-3.)  Products with those alleged design arounds are therefore also

11   included in JX1500.  While Samsung was not permitted to present to the jury its alleged design

12   arounds for the '381 and '163 Patents due to a prior sanctions order, that order makes clear that

13   the sanction resulted from Samsung's willful decision to ignore prior discovery orders that

14   required production of material in discovery.  (Dkt. 1106 at 3-4.)  A deliberate choice to sandbag

15   an opponent is not a justification to avoid the effect of a jury's verdict.

16        Samsung cannot avoid issue preclusion by pointing to non-infringement arguments that it

17   could have asserted at trial.  *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) ("[I]f a party

18   could avoid issue preclusion by finding some argument it failed to raise in the previous litigation,

19   the bar on successive litigation would be seriously undermined."); *EON Corp IP Holdings LLC v.*

20   *Apple Inc.*, No. 14-CV-05511-WHO, 2015 WL 4914984, at *5 (N.D. Cal. Aug. 17, 2015).

21        The Court has repeatedly held ***both parties*** to this rule by, among other things,

22   (1) rejecting Apple's claim to supplemental damages on units sold between June 30, 2012 (the

23   last day for which Samsung produced sales data before trial) and August 24, 2012 (the date of the

24   jury's verdict) because "nothing precluded Apple from arguing that the jury should consider sales

25   from June 30 through August 24, or from presenting evidence on how to estimate such sales"

26   (Dkt. 2271 at 3); (2) precluding Samsung from asserting new non-infringement arguments based

27   on different Gem models at the damages retrial (Dkt. 2635 at 1-4); and (3) precluding the parties

28   from expanding the issues at the damages retrial by relying on new sales data, new products, and

1   new methodologies or theories.  (*See* Dkt. 2316 at 3; Dkt. 3272 at 2.)

2          Samsung cannot show that it is entitled to a "do over" on non-infringement defenses that it

3   failed to pursue at trial.  "'[O]nce an issue is raised and determined, it is the entire issue that is

4   precluded, not just the particular arguments raised in support of it in the first case.'"  *EON Corp.*,

5   2015 WL 4914984, at *5 (quoting *Kamilche*, 53 F.3d at 1063).  As the Court recognized,

6   Samsung "had four weeks to put on its defenses" at trial.  (Dec. 10, 2015 Hr'g Tr. at 29:17-18.)

7   Holding a new infringement trial at this stage of the proceedings would not only violate settled

8   principles of issue preclusion, but would also undermine the purpose of supplemental damages,

9   which (as the Court correctly observed) is to "avoid the need to have a second trial" where

10  infringement and damages have already been determined.  (Dec. 10, 2015 H'rg Tr. at 29:14-16.)

11  A new trial is unnecessary, and Samsung's request reflects a continuation of its efforts to impose

12  on the parties and the Court additional but unnecessary proceedings.

13         The specifics supporting Apple's conclusions for each of the products included in the

14  supplemental damages calculation are discussed in detail in section B below.

15  **B.     Supplemental Damages Apply to Each of The Five Supplemental Damages
         Products.**

16

17         Samsung cannot contest the Court's methodology, both because it is law of the case and

18  because it did not argue any error in its prior appeal of the March 1 Order re Damages.  (*See*

19  Section C, *infra*.)  The per-unit supplemental damages amounts for each product are based on

20  undisputed facts, specifically the jury verdict and JX1500.  Samsung does not and cannot contest

21  its own sales figures.  Thus, Samsung's sole argument is that it can avoid the payment of

22  supplemental damages because some or all of the products sold after August 24, 2012, differ in

23  some material respect from the products included in the damages awarded by the jury.  That

24  argument is incorrect.  In individual sections below, Apple provides a step-by-step analysis why,

25  for each of the five supplemental damages products, the smartphones sold after the verdict are the

26  same in all material respects as the products included in the damages verdict.

27

28

**1.      Galaxy S II Skyrocket ($6,144,916)**

| Basis for Apple's Claim to Supplemental Damages | Design Arounds Asserted by Samsung | Design Around Products Included in Damages Award | Design Around Available Before Trial | Other Relevant Factors |
|---|---|---|---|---|
| D'677 Patent | Color (White) | Yes | Yes: White (November 23, 2011); Dark Grey (1st half 2012). | Not applicable. |

The jury found that the Galaxy S II Skyrocket infringed only the D'677 Patent, and thus

the D'677 Patent reflects the sole basis for both the jury's award and Apple's claim to

supplemental damages.  Samsung relies solely on color to avoid payment of supplemental

damages for this product.  Samsung has stated that only two colors of the Galaxy S II Skyrocket

were sold after August 24, 2012: Dark Grey and White.  (Dkt. 3307 at Ex. A.)  Samsung does not

contest that supplemental damages for the ▮▮▮ "dark grey" smartphones are resolved by the

jury's verdict.  (Declaration of Erik J. Olson in support of Apple's Motion for Supplemental

Damages ("Olson Decl."), ¶ 19.)  Thus, the only question is how the ▮▮▮ white units are

treated.

Apple is entitled to supplemental damages on all post-verdict sales because white units of

the Galaxy S II Skyrocket were included in the jury's damages verdict.  The July 2012 Joint

Pretrial Statement and Order, which defined the issues for trial, accused the Galaxy S II

Skyrocket without any restriction by color.  (Dkt. 1189 at 2); *see S. Cal. Retail Clerks Union*, 728

F.2d at 1264 ("[A] pretrial order controls the subsequent course of the action.").

At trial, all units of the Galaxy S II Skyrocket—regardless of color—were included in

JX1500, which the parties jointly submitted to the jury, and which formed the basis of the jury's

award.  Samsung stipulated during trial that JX1500 "will show units and revenues for each of the

accused products."  (Dkt. 1597 ¶ 6(a); Dkt. 1839 at 2041:11-22.)  It is undisputed that Samsung

introduced the white version of the Galaxy S II Skyrocket in November 2011, well before the

June 30, 2012 cut-off for the figures in JX1500.  (Dkt. 3307 at 4:12-13.)  At the recent Case

Management Conference, Samsung admitted that the information presented in JX1500 was

1   collected "by model number and not at the level of specificity of color[.]" (Dec. 10, 2015 H'rg

2   Tr. at 5:14-17.)  That is, it included the white units of the Galaxy S II Skyrocket.

3       JX1500 derives from financial reporting that Samsung provided pursuant to a Court order

4   requiring production of *all* sales of the accused products.[1]  (Dkt. 673 at 15; Dkt. 880 at 10, 16.)  It

5   covers the sales of the Galaxy S II Skyrocket from September 2011 to June 30, 3012.  (JX1500.)

6   Samsung testified in pretrial proceedings and at trial that its financial spreadsheets (DX676,

7   PX180 and JX1500) provided an accurate and complete statement of *all* sales for the relevant

8   smartphones, including the Galaxy S II Skyrocket.  (Dkt. 1842 at 3004:16-3006:7.)  Mr.

9   Sheppard, VP Finance, Samsung Telecommunications Americas LLC, testified that to generate

10  DX676, which included the same sales totals as JX1500, Samsung had to "extract the data model

11  by model, month by month to pull the data.  And then that was put into the spreadsheet and this

12  spreadsheet shows data month by month from left to right."[2]  Samsung's expert, Mr. Wagner,

13  agreed with Apple's damages expert on the total number of unit sales and revenues.  (Dkt. 1842 at

14  3028:7-25.)  Based on JX1500, the case submitted to the  jury by both parties included damages

15  for *all* units of these products sold before June 30, 2012, ***including Galaxy S II units that were***

16  ***not black: some were white and some were dark grey***.

17      Other documents produced by Samsung in this case and in the 630 case further confirm

18  that JX1500 included non-black units.  First, the monthly totals in DX676 and quarterly totals

19  included in JX1500 match exactly to the totals provided for each of the Galaxy S II products in

20  the 630 case, in which color was irrelevant.  (*Compare* 630 case, PX142, *with* 1846 case,

21  DX676.)  Further, in conjunction with productions in response to court orders and its damages

22  expert report, Samsung produced detailed spreadsheets that included more specific product

23

24  [1] These underlying spreadsheets were introduced at trial as DX676 and PX180.  The U.S. sales totals in each tie to the totals in JX1500.

25  [2] Samsung consistently has represented that the sales data that became JX1500 includes

26  every sale of each of the accused products.  For example, Timothy Sheppard stated under oath that the data "is accurate, comes directly from the accounting system used by Samsung in the

27  ordinary course of its business, and has been produced without modification or manipulation," and "represent a true and accurate picture of Samsung's sales of the accused . . . products during

28  the relevant period."  (Dkt. 801-22 at ¶ 34.)

information that formed the basis for the damages calculations.  (Olson Decl. ¶¶ 4-10.)  This more detailed information reflects the inclusion of model numbers that specifically relate to both white and "titanium" grey Galaxy S II units in the totals that tie to JX1500.  (*See* SAMNDCA-D-0000011; Wagner's "Support for Volume 1, Tab6.accdb.")   (Olson Decl. at ¶¶ 10-18.)

The foregoing evidence is overwhelming and consistent.  Samsung sold non-black versions of the Galaxy S II products for many months before trial.  Both experts used the totals in JX1500 to calculate damages.  JX1500 included all units, including those that were not black.  Thus, the jury's damages award included units that were not black, including the white and dark grey versions of the Galaxy S II Skyrocket.  Color is no reason to deviate from the jury's verdict.

Most important, nothing prevented Samsung from asking the jury to exclude sales of Galaxy S II units based on color.  No order precluded the argument, yet neither Samsung nor its experts ever raised this defense.  Samsung did not to seek to exclude these units from damages in its expert reports.  Samsung's damages expert, Michael Wagner, admitted there was "no reason that [he] couldn't have disclosed" an opinion that "white" and "grey" phones designed around the D'677 patent in his April 2012 damages report.  (Dkt. 2382-5 at 814:2-815:6.)  Samsung chose to present very limited non-infringement defenses at trial; it never even called Dr. Anders, its non-infringement expert on the D'677 Patent, to testify.  It cannot rely now on arguments that it failed to raise at trial.

The Galaxy S II Skyrocket smartphones sold after August 24, 2012, are the same in all material respects as products that were included in the jury's damages verdict.  Thus, the Court should include all ███ units of the Galaxy S II Skyrocket sold between the verdict and April 2013, regardless of color, in the supplemental damages award.  On that basis, the supplemental damages total $6,144,916.  (Declaration of Julie Davis in support of Apple's Motion for Supplemental Damages, ("Davis Decl.") Ex. 2.)

1

### 2.    Galaxy S II Epic 4G Touch ($96,920,602)

| Basis for Apple's Claim to Supplemental Damages | Design Arounds at Issue | Design Around Products Included in Jury Verdict | Design Around Available Before Trial | Other Relevant Factors |
|---|---|---|---|---|
| D'677 Patent | Color (White/Steel Grey) | Yes (White) | Yes<br><br>White (12/14/2011) | Not applicable. |

The jury found that the Galaxy S II Epic 4G Touch infringed only the D'677 Patent, and thus the D'677 Patent reflects the sole basis for both the jury's award and Apple's claim to supplemental damages.  Samsung has stated that three colors of the Galaxy S II Epic 4G Touch were sold after August 24, 2012: Black, White and "Steel Grey."  (Dkt. 3307 at Ex. A (Dkt. 3308-3).)  Samsung agrees that supplemental damages for ███ black units was resolved by the jury's verdict.  (*See* 3307 at 4, 17.)  Thus, the only question is whether Samsung can now raise color as a defense to the calculation of supplemental damages for the remaining ████ units.

For the same reasons stated above with respect to the Galaxy S II Skyrocket, the jury's verdict resolves the question of how supplemental damages should be calculated on the white units.  White versions of the Galaxy S II Epic 4G Touch were sold between December 14, 2011, and June 30, 2012.  (Dkt. 3307 at 4:20-21.)  The July 2012 Joint Pretrial Statement and Order accused the Galaxy S II Epic 4G Touch without any restriction by color.  (Dkt. 1189 at 2.)  JX1500 included all the relevant sales, including the non-black version of the Galaxy S II Epic 4G Touch, for the same reasons and based on the same evidence reflected in the discussion above.  As a result, the jury calculated damages for the Galaxy S II Epic 4G Touch in a manner that included white smartphones, and Samsung cannot exclude them now.

Issue preclusion also forecloses Samsung's reliance on "steel grey" as a basis to avoid supplemental damages.  Samsung claims that it introduced this shade of grey in this product in November 2012.  (Dkt. 3307 at 4:23-24.)  But neither color nor "grey" is a new issue.  As discussed above, Samsung included dark grey and titanium grey Galaxy S II smartphones in the sales data that it produced before trial.  Those units were incorporated into JX1500, and the jury

awarded damages with respect to them.  Samsung could have but did not raise color as a defense.  The jury verdict precludes that defense now.

The Galaxy S II Epic 4G Touch smartphones that were sold after August 24, 2012, are the same in all material respects as products included in the jury's damages verdict.  Thus, the Court should include all ███████ units of the Galaxy S II Epic 4G Touch sold between the verdict and July 2013, regardless of color, in the supplemental damages award.  On that basis, the supplemental damages are $96,920,602.  (Davis Decl. Ex. 2.)

### 3. Galaxy S II T-Mobile ($74,706,398)

| Basis for Apple's Claim to Supplemental Damages | Design Arounds at Issue | Design Around Products Included in Jury Verdict | Design Around Available Before Trial | Other Relevant Factors |
|---|---|---|---|---|
| D'677 Patent | Color (White/Steel Grey) | Yes (White) | Yes<br>White (12/13/2011) | Not applicable. |
| | '915 Patent change | No | Apple contends it was; Samsung disagrees | Design around is irrelevant because verdict, judgment and supplemental damages arise from disgorgement of Samsung's profits. |
| | '163 Patent | Yes | Yes | Design around is irrelevant because verdict, judgment and supplemental damages arise from disgorgement of Samsung's profits. |

The jury found that the Galaxy S II T-Mobile infringed the D'677 Patent, '915 Patent, and '163 Patent.  However, the D'677 Patent reflects the sole basis for the jury's damages award, as Samsung admitted at the recent Case Management Conference.  (Dec. 10, 2015 H'rg Tr. at 8:2-24; 9:4-8; 33:16-21.)  This is because all units of the Galaxy S II T-Mobile were sold after Samsung had notice of the D'677 Patent, and Apple could not obtain both design patent damages under 35 U.S.C. § 289 (*i.e.*, Samsung's profits) and also a reasonable royalty for utility patent infringement on those same sales.  *See Catalina Lighting Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277,

1  1290-91 (Fed. Cir. 2002). Accordingly, Apple's damages calculation for the Galaxy S II T-

2  Mobile at trial included only design patent damages derived from the D'677 Patent. (PX25A1.4,

3  PX25A1.5.) Samsung only admitted one exhibit at trial that calculated damages for the Galaxy S

4  II T-Mobile, DX781. DX781 likewise calculated only design patent damages for the Galaxy S II

5  T-Mobile based on disgorgement of Samsung's profits for the D'677 Patent. (DX781.001,

6  DX781.003.) Numerous filings and orders in this case confirm that the D'677 Patent reflects the

7  sole basis for the jury's damages award. For example, relying on Samsung's deconstruction of

8  the verdict, the Court characterized all the award for the Galaxy S II T-Mobile as arising from

9  design patent infringement in its March 1 Order re Damages. (Dkt. 2271 at 10.) Samsung

10  reaffirmed this conclusion in its appeal briefs. *Apple, Inc. v. Samsung Elecs. Co.*, No. 14-1335,

11  Dkt. 34 at 9. Thus, while Samsung alleges that "design arounds" related to each of the D'677,

12  '915 and '163 Patents were included in the Galaxy S II T-Mobile after the verdict, only the

13  "design arounds" related to color are relevant to Apple's calculation of supplemental damages.[3]

14      Samsung has stated that three colors of the Galaxy S II T-Mobile were sold after August

15  24, 2012: Black, White and "Steel Grey." (Dkt. 3307 at Ex. A.) Samsung agrees that

16  supplemental damages for ▮▮▮▮ black post-trial units was resolved by the jury's verdict. (*See*

17  Dkt. 3307 at 4, 17.)

18      The availability of supplemental damages for the remaining ▮▮▮▮ white and steel grey

19  units is identical to the discussion of the Galaxy S II Epic 4G Touch discussed above. A white

20  version of the Galaxy S II T-Mobile was introduced on December 13, 2011. (Dkt. 3307 at 4:1-3.)

21  The July 2012 Joint Pretrial Statement and Order accused the Galaxy S II T-Mobile without any

22  restriction by color. (Dkt. 1189 at 2.) All units (black and non-black) sold by Samsung between

23

24      [3] Notably, the Galaxy S II T-Mobile is the only product that includes the "design-around"
on which Samsung relies to avoid the '915 Patent. Because all damages sought on that product
were based on the D'677 Patent, and because Samsung is now precluded from raising color as a
25  defense to supplemental damages, the alleged design-around is irrelevant to both the calculation
of supplemental damages for the Galaxy S II T-Mobile and to the calculation of supplemental
26  damages in general. Even if the '915 design-around were relevant, Samsung's argument would
be precluded. The software revision was available before trial. Samsung's expert confirmed that
27  the relevant source code was available in July 2012. (Dkt. 2915-17 at 12 n.2). While Samsung
has claimed that it was only available to Google, that is not what it said in the expert report and
28  Samsung has always obtained this source code from Google in any event.

December 2011 and June 30, 2012, were included in JX1500 and in each side's damages calculations. They are part of the jury's damages verdict, and Samsung is precluded from arguing color as a new defense. Samsung claims that "steel grey" was introduced into this product in November 2012, but other grey Galaxy S II smartphones are included in JX1500 and in the damages award. The argument based on color has been precluded.

The Galaxy S II T-Mobile smartphones that were sold after August 24, 2012, are the same in all material respects as products included in the jury's damages verdict. Thus, the Court should include all ███████ units of the Galaxy S II T-Mobile sold between the verdict and July 2013, regardless of color, in the supplemental damages award. On that basis, the supplemental damages are $74,706,398. (Davis Decl. Ex. B.)

### 4.   Droid Charge ($620,467)

| Basis for Apple's Claim to Supplemental Damages | Design Arounds at Issue | Design Around Products Included in Jury Verdict | Design Around Available Before Trial | Other Relevant Factors |
|---|---|---|---|---|
| D'305 Patent | Removal of "boxes" in icon layout | Yes | Yes (4/26/2011) | Not applicable. |
| '915 Patent | None. No revision for Droid Charge product. | N/A | N/A | N/A |
| '381 Patent | "blue glow" | Yes | Yes (12/14/2011) | Preclusion of evidence by Judge Grewal's order |
| '163 Patent | Disabling centering of second box | Yes | Yes (4/26/2011) | Preclusion of evidence by Judge Grewal's order |

The jury found that the Droid Charge infringed the D'305 Patent, '915 Patent, '381 Patent, and '163 Patent, and all four form part of the basis for the jury's verdict. Thus, each forms a part of Apple's supplemental damages calculation. Samsung does not contend that the '915 "design around" was included in the ███████ Droid Charge units sold after August 24, 2102. As a result, only the alleged design arounds for the D'305, '381 and '163 Patents are potentially relevant to

1    the calculation of supplemental damages for the Droid Charge.  Each is resolved below.

2           ***D'305 Patent.*** Samsung included the alleged design around of the D'305 Patent in the

3    Droid Charge units that were sold after April 26, 2012.  (Dkt. 3307 at 3:8-10.)  The July 2012

4    Joint Pretrial Statement and Order accused the Droid Charge without any restriction by firmware

5    or software version.  (Dkt. 1189 at 2.)  All units of the Droid Charge sold in April, May, and June

6    2012 were included in JX1500 and in the damages calculations of both experts for the same

7    reasons discussed above with respect to the Galaxy S II Skyrocket.  Units reflecting the alleged

8    design arounds are therefore included in the jury's damages verdict.

9           Samsung did not seek to exclude any Droid Charge units containing the alleged design

10   around from the jury's infringement or damages verdict.  Although Samsung claims the design

11   around was "presented" at trial, its evidence is a handful of slides depicting *Galaxy S II products*.

12   (Dkt. 3307 at 16.)  There is no testimony, exhibit, or other evidence that sought to tie this design

13   around in any way to the Droid Charge.  Samsung never asserted this defense to rebut allegations

14   of infringement or damages for the Droid Charge.  At trial, the jury found that the Droid Charge

15   infringed and assessed damages based on JX1500.  Samsung cannot re-litigate that decision by

16   raising a defense to supplemental damages for the Droid Charge that was available but not made

17   at trial.

18          ***'163 and '381 Patents.***  There is no dispute that the alleged design arounds for the '381

19   and '163 Patents on which Samsung now relies were available long before the trial.  (*See, e.g.*,

20   Dkt. 3307 at 3:5-17 (showing introduction of the '381 Patent design around in November 2011

21   and introduction of the '163 Patent design around in April 2012).)

22          There is no dispute regarding why these design arounds were not presented to the jury.

23   Samsung's own misconduct precluded this evidence.  Samsung had the relevant source code but

24   refused to produce it despite a prior discovery order compelling it to do so.  As the Court found,

25   Samsung "failed miserably" in meeting its obligation to disclose its '163 and '381 design arounds

26   and the underlying source code.  (Dkt. 1106 at 3-4.)  Despite the fact that the '381 "blue glow"

27   design around had been introduced by Samsung in August 2011, Samsung failed to comply with

28   Judge Grewal's order to produce the underlying source code until late January 2012, nearly a

month after the court-ordered deadline.  (Dkt. 898 at 5.)  Samsung also delayed providing its '163 design around and source code even longer, failing to produce it until after the close of discovery, "knowing full well that the court would not grant the parties any exceptions."  (Dkt. 898 at 6.)  Judge Grewal noted that "Samsung offer[ed] precisely zero evidence to show that its actions were in good faith, or otherwise justified."  (*Id*.)  Thus, Judge Grewal precluded Samsung from presenting both design arounds at trial.  Samsung sought clarification.  Judge Grewal confirmed his order.  (Dkt. 1106.)

Judge Grewal did not decide whether this sanction should apply post-trial, concluding that "Samsung's right to offer design around evidence in any post-trial proceeding remains for another day."  (Dkt. 1106 at 4.)  His discussion of possible future application of the sanction focused on the question of whether Samsung could raise the issue in proceedings over a permanent injunction.  That, of course, is a separate equitable remedy that differs from the present need to extend a jury's damages verdict to sales of the same infringing products made after the verdict is rendered.  The question of when a defendant can raise a design around to avoid an injunction that would preclude all future sales raises different equitable issues not presented by this supplemental damages motion.

Here, both logic and the equities still point to preclusion.  As the Court recognized at the September 2015, Case Management Conference, Samsung is essentially seeking a new trial based on new evidence that Samsung could have presented if it had complied with the Federal Rules of Civil Procedure and the Court's orders.  (Sept. 18, 2015 Hr'g Tr. 71:16-72.2.)  Under the Groundhog Day rules the Court has consistently applied, the same evidence, rules, and preclusion orders have bound the parties in additional proceedings involving much larger amounts and issues.  (*See* Dkt. 2316 at 3; Dkt. 3272 at 2.)  There is no reason that should change for supplemental damages involving far smaller amounts of money.  Nor should the Court (or a new jury) have to bear the burden of a new trial to give Samsung a chance to address its own failure to comply with a specific discovery order.  The Droid Charge products were sold for only one additional month after the jury's verdict.  It is neither improper nor inequitable to apply Judge Grewal's sanction to supplemental damages as an extension of the jury's verdict.

Finally, after June 15, 2011, all of Apple's damages for the Droid Charge arose from the disgorgement of Samsung's profits for infringement of the D'305 Patent. (*See* PX25F; Dkt. 2271 at 18 (identifying notice dates for D'305 Patent).) Because of this, infringement of the '381 and '163 Patents (or a design around that avoided infringement) would not add or subtract from the damages in the period after June 2011. Nor would a design around for the '381 or '163 Patents result in the elimination of any units from the supplemental damages calculation. Samsung concedes that these post-verdict sales contain a "design around" for the D'305 Patent that formed a part of the jury's verdict. Thus, even if the Court were to consider the previously excluded design around to the '381 and '163 Patents, Apple would still be entitled to disgorgement of Samsung's total profit for Samsung's sales in August and September 2011 (without any added royalty for the '381 and '163 Patents). This further weighs in favor of applying Judge Grewal's order, honoring the jury's verdict and calculating supplemental damages in a manner consistent with the March 1 Order re Damages.

The Droid Charge smartphones sold after August 24, 2012, are the same in all material respects as products included in the jury's damages verdict. Thus, the Court should include all ███ units of the Droid Charge sold between the verdict and September 2012 in the supplemental damages award. On that basis, the supplemental damages are $620,467. (Davis Decl. Ex. B.)

### 5. Galaxy Prevail ($167,488)

| Basis for Apple's Claim to Supplemental Damages | Design Arounds at Issue | Design Around Products Included in Jury Verdict | Design Around Available Before Trial | Other Relevant Factors |
|---|---|---|---|---|
| '915 Patent | None. No revision to Galaxy Prevail product. | N/A | N/A | N/A |
| '381 Patent | "blue glow" | Yes | Yes (11/7/2011) | Preclusion of evidence by Judge Grewal's order |
| '163 Patent | Disabling centering of second box | Yes | Yes (7/11/2012) | Preclusion of evidence by Judge Grewal's order |

1    The jury found that the Galaxy Prevail infringed the '915 Patent, the '381 Patent, and the

2    '163 Patent, and all three form part of the jury verdict and the basis for Apple's supplemental

3    damages calculation.  Samsung does not contend that the '915 "design around" was included in

4    the Galaxy Prevail units sold after August 24, 2102.  As a result, only the alleged design arounds

5    for the '381 and '163 Patents are relevant to the calculation of supplemental damages for the

6    Galaxy Prevail.  The issues here are identical to those discussed above with respect to the Droid

7    Charge, with the exception that the Galaxy Prevail did not infringe a design patent.  The same

8    reasons exist to apply Judge Grewal's order to prevent Samsung from raising a new defense with

9    respect to the ▮▮▮▮▮ units and $167,488 that arise from post-verdict sales of the Galaxy Prevail.

10   The Galaxy Prevail smartphones sold after August 24, 2012, are the same in all material

11   respects as products included in the jury's damages verdict.  Thus, all Galaxy Prevail units should

12   be included in the calculation of supplemental damages, and on that basis, the total award is

13   $167,488.  (Davis Decl. Ex. B.)

14        **C.**      **Samsung Did Not Challenge the Court's Methodology on Appeal.**

15   A final reason exists to grant Apple's motion.  Samsung did not raise its arguments

16   regarding the Court's supplemental damages rulings when it appealed the March 1 Order re

17   Damages.  After the Court resolved the methodology for calculating supplemental damages in

18   March 2013 and decided that the actual unit sales for these five products would be used (Dkt.

19   2271 at 3), it advised the parties that "obtaining the Federal Circuit's guidance, both as to the

20   merits as well ***as to how to calculate supplemental damages***, before proceeding with an

21   accounting is the most efficient and acceptable way to proceed."  (Dkt. 2947 at 3 (emphasis

22   added); *see also* Dkt. 2271 at 6.)  Thus, "if [Samsung] objected to this calculation method because

23   it would include non-infringing sales, then you should have raised that and said this calculation

24   method was legally erroneous because it is over-inclusive on non-infringing sales."  (Sept. 18,

25   2015 Hr'g Tr. at 58:18-22.)

26        Despite noticing its appeal of "each and every part" of the Court's judgment and attaching

27   the Court's March 1 Order on damages to its appellate brief, Samsung did not pursue the

28   methodology issue on appeal, although it challenged other aspects of the March 1 Order.  (Dkt.

3018.)  Thus, the Federal Circuit's mandate forecloses Samsung's arguments, each of which was presented to this Court in fall 2012 in Samsung's opposition to Apple's motion for supplemental damages *before* the Court decided on its methodology and before Samsung's appeal. (Dkt. 2053 at 24-29 (referencing the specific design-arounds at issue here as addressed in more detail in Samsung's opposition to Apple's motion for a permanent injunction)); *see Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008). Moreover, Samsung's argument that this Court's order on methodology was not appealable is both belied by the fact that Samsung did appeal from that order and unsupported by the cases Samsung has cited, none of which even involves supplemental damages.  Indeed, in *Orenshteyn v. Citrix Sys., Inc.*, the only binding precedent Samsung has cited, the Federal Circuit made clear that the sanctions award at issue was not appealable because, unlike supplemental damages, sanctions "are not compensation for the injury giving rise to the action." 691 F.3d 1356, 1358 (Fed. Cir. 2012) (internal quotations omitted). Here, where the supplemental damages award depends on the jury's infringement findings, Samsung was obligated to raise any objection to the Court's methodology in connection with its appeal of those findings.  Because it failed to do so, it is now bound by the Court's prior decision. *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902 (Fed. Cir. 1986) (noting that district court's prior "finding of willful[] infringement is the law of the case" when assessing whether enhanced damages award was appropriate).  This provides an independent reason to proceed without a new trial on infringement before calculating supplemental damages.

### D.    The Court's March 1 Order re Damages Results in Supplemental Damages of $178 Million.

In light of these principles, the Court should calculate and award supplemental damages in the manner already defined in its March 1 Order re Damages. (Dkt. 2271 at 4-6.)  The Court's March 1 Order resolved how supplemental damages would be calculated, using product specific amounts derived from the damages totals for each product and all actual sales of the products sold after August 24, 2012.  (*Id.*)

In its Order, the Court explained that it "can simply divide the jury award for each product by that product's number of sales to calculate this per-product amount."  (Dkt. 2271 at 5.)  Apple

has provided these per-product amounts in the Declaration of Julie Davis filed herewith and the table below.  (Davis Decl. ¶ 7, Ex. 2.1.)

Samsung provided the unit sales of each product after August 24, 2012, pursuant to a Court order in an attachment to its September 30, 2015 Statement re: Supplemental Damages. (Dkt. 3308-3.)  Apple has accepted and used these numbers in its calculation.  Applying the Court's prescribed methodology to Samsung's unit sales, Apple is entitled to over $178 million in supplemental damages in the following amounts:

| Product | Basis for Apple's Claim to Supplemental Damages | Per Unit Amount (Per March 1 Order) | Post-Verdict Units Sold | Total Supplemental Damages |
|---|---|---|---|---|
| Galaxy SII Skyrocket | D'677 Patent | ▇ | ▇ | $6,144,916 |
| Galaxy SII Epic 4G Touch | D'677 Patent | ▇ | ▇ | $96,920,602 |
| Galaxy SII T-Mobile | D'677 Patent | ▇ | ▇ | $74,706,398 |
| Droid Charge | D'305 Patent '163 Patent '381 Patent '915 Patent | ▇ | ▇ | $620,467 |
| Galaxy Prevail | '163 Patent '381 Patent '915 Patent | ▇ | ▇ | $167,488 |
| **Total** | | | | **$178,659,870** |

(Davis Decl. ¶¶ 4-10 & Exs. 1-2, 2.1.)

    **E.**    **The Court Should Calculate and Award Prejudgment Interest.**

The Court has already ruled "that Apple is entitled to prejudgment interest." (Dkt. 2271 at 7.)  The Court also determined that it would "award prejudgment interest at the 52-week Treasury Bill Rate, compounded annually." (*Id.* at 8.)  Applying the Court's chosen interest rate and method to the supplemental damages due, Apple is entitled to prejudgment interest to March 24, 2016, for a total of $1,192,490 and a daily addition of $2,363 for each day thereafter.  (Davis Decl. at ¶¶ 11-12 & Exs. 1, 4.)

1   **IV.    CONCLUSION**

2        For the foregoing reasons, Apple respectfully requests that the Court enter a judgment for

3   the supplemental damages due to Apple in the amount of $178,659,870 and pre-judgment interest

4   on that award in the amount of $1,192,490 through March 24, 2016, along with $2,363 for every

5   day thereafter.

6

7   Dated: December 23, 2015                    MORRISON & FOERSTER LLP

8
                                        By:    *Rachel Krevans*
9                                              RACHEL KREVANS

10                                             Attorneys for Plaintiff
                                               APPLE INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28