# Redacted Version Of Document Sought To Be Sealed

HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE**<br><br>Date: February 11, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

### I. MS. DAVIS PRESENTS THE SAME CAPACITY OPINIONS ADMITTED AT THE 2012 AND 2013 TRIALS AND AFFIRMED ON APPEAL.

Samsung identifies no "new" capacity opinions in Ms. Davis's expert report that could give rise to a motion to strike. (Dkt. 3335 ("Mot.") at 1-2.) Instead, Ms. Davis relies on the exact same capacity schedules, methodology, and analysis that Mr. Musika relied on in his March 22, 2012 expert report. (*Compare* Dkt. 2386-3, Musika Ex. 26, *with* Dkt. 3336-2, Davis Ex. 26-S; *see also* PX25A1.14 (Musika), PX25F.14 (Davis).) Her report discloses the exact same capacity analysis that the Court admitted at the 2012 and 2013 trials. (*Compare* Dkt. 1839 at 2085-86, 2097, PX25A1.14, *with* Dkt. 2840 at 644, 671-76, PX25F.14.) Those same opinions were used by the jury in both trials as a predicate to awarding Apple lost profit damages. (*See* Dkt. 2013 at 20-22; Dkt. 2877 at 4, 5-6.) The Federal Circuit affirmed those lost profit awards as supported by substantial evidence. *See Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1004 (Fed. Cir. 2015).

Unable to support a motion to strike Ms. Davis's capacity opinions as new, Samsung argues instead that her opinions should be excluded on *Daubert* grounds. (Mot. at 1-2.) But the Court's September 1, 2015, Case Management Order did not authorize new *Daubert* motions. (Dkt. 3272 at 3.) As the Court explained before the damages retrial in 2013, "[b]ecause everyone is just going to be using the theories that have already gone through extensive motion practice last year, *there will be no new challenges to theories*." (Dkt. 2320 at 69:7-9 (emphasis added).) Samsung repeatedly (and unsuccessfully) challenged Mr. Musika's and Ms. Davis's capacity opinions in 2012 and 2013. (*See* Dkt. 934-3 at 7-8; Dkt. 1144 at 8; Dkt. 1819 at 4:26-28; Dkt. 2013 at 21-22 & n.18; Dkt. 2271 at 13-14; Dkt. 2882 at 23-24; Dkt. 2947 at 5:22-24, 8:9.) Samsung offers no reason why its *Daubert* challenge is not precluded by these prior orders.

In any event, Samsung's *Daubert* challenge fails on the merits. Samsung argues that (1) Ms. Davis's analysis does not show that Apple had additional capacity to sell more iPhones at Verizon because Ms. Davis did not receive capacity data broken down by carrier, and (2) this supposedly matters now because the majority of Apple's lost sales at this trial are based on Fascinate phones sold at Verizon, not AT&T. (Mot. at 1-2.) First, none of this is new. Apple sought lost profits for smartphones sold at Verizon in the first trial (*e.g.*, Fascinate) and the

1  second trial (*e.g.*, Droid Charge). (PX25A1.6 & PX25F.6.) As discussed above, Apple then and
2  now used the same analysis to justify lost profits for those sales. Further, there is no credible
3  claim to a gap in capacity. Samsung argues that a shortage may have existed at Verizon in
4  February 2011, two months *before* the lost profit period. (Mot. at 2; Dkt. 3335-6.) The capacity
5  analysis shows that Apple increased its capacity by *over* ▓▓▓ *units* in the same quarter in
6  which it began selling iPhones at Verizon. (*See* Dkt. 3336-2, Davis Ex. 26-S; *see also* Dkt. 3336-
7  3, Davis Ex. 17.2-R1.) That is more than sufficient for Apple to sell the additional ▓▓▓ iPhone
8  units that it would have sold during the lost profit window between April 15 and May 29, 2011 —
9  only ▓▓▓ of which were attributed to sales lost to Fascinate phones at Verizon. (*See* Dkt.
10 3336-3, Davis Ex. 17.2-R1.) Even Mr. Wagner concedes that Apple had capacity to sell more
11 iPhones during the lost profit window. (Dkt. 2843 at 1115:18-22.)
12      Samsung also argues that Ms. Davis did not apply the 74% carrier-switching reduction to
13 account for the need for Verizon customers to switch to AT&T to purchase an iPhone. (Mot. at
14 2.) But Ms. Davis's 74% carrier-switching reduction does not apply to Verizon customers during
15 the lost profits window between April 15 and May 29, 2011 because Verizon had been offering
16 the iPhone since early February 2011. As a result, Verizon customers could purchase the iPhone
17 without switching and, consistent with the analysis offered in the last two trials and which was
18 affirmed on appeal, the 74% number does not apply. There is nothing new here, and nothing that
19 would be subject to a motion to strike or a new (and unauthorized) *Daubert* motion. Finally,
20 Samsung's arguments go at most to the weight, not the admissibility, of these opinions.

21 **II.   MS. DAVIS'S *MOR-FLO* AND PER-PATENT CALCULATIONS RESPOND TO
22       COURT RULINGS ISSUED AFTER MS. DAVIS'S 2013 EXPERT REPORT.**

23       **A.   Ms. Davis's Alternative *Mor-Flo* Calculations Respond Directly to the Court's
             November 7, 2013, Order Re: Noninfringing Alternatives.**

24      The Court's November 7, 2013, Order Re: Noninfringing Alternatives, which issued after
25 Ms. Davis's August 2013 expert report, ruled that Samsung was entitled to try to show that the
26 Replenish and Galaxy Ace could be considered "available" noninfringing alternatives to the '915
27 patent, even though those products infringed other Apple patents. (Dkt. 2657 at 9.) In response
28 to that Order, Ms. Davis prepared additional lost profits calculations showing that, even if those

1    products were treated as noninfringing alternatives, Apple's damages would decrease *by less than*

2    *$9,500* out of $210.8 million.  Because Ms. Davis's alternative calculations were prepared in

3    response to a specific Court order issued after Ms. Davis's last report, they do not impermissibly

4    "expand the scope of the damages retrial," but merely respond to a Court ruling postdating Ms.

5    Davis's original report.

6          Samsung also argues that Ms. Davis made an arbitrary decision to treat the Replenish and

7    Galaxy Ace (but not certain other phones) as noninfringing alternatives.  But other than the

8    Intercept, which was not found to infringe any Apple patents and which Ms. Davis accounted for

9    in her original report, the Replenish and Galaxy Ace were the only other phones that Samsung

10    argued, and the Court ruled, could be considered noninfringing alternatives to the '915 patent.

11    There is no basis to treat "non-accused" phones never found to be noninfringing by a jury as

12    noninfringing alternatives.  Doing so would misstate facts and impermissibly expand the scope of

13    the retrial.

14          **B.**    **Ms. Davis Included Per-Patent Breakdowns in Response to the Court's Statement at the September 18, 2015, Case Management Conference Regarding the Verdict Form.**

15

16          Ms. Davis included per-product and per-patent breakdowns in her report because the

17    Court stated at the September 18, 2015, Case Management Conference that it "intends to use a

18    verdict form that requires the jury to quantify damages per product and per patent." (Dkt. 3291 at

19    24:9-10.)  Because the Court will provide such a verdict form to the jury, the jury will need to

20    know how to allocate damages across the five products and six patents at issue at the remand trial.

21    These are not new opinions, and do not use any new methodologies or facts; instead, the numbers

22    were simply broken out patent-by-patent per the Court's guidance.

23          Samsung argues that the Court's statement did not direct the experts to include a new

24    breakdown, and that the jury should have to figure things out on its own. (Mot. at 4.)  But, as the

25    Court recognized in the 630 case, the jury will need help from the damages experts to quantify

26    damages on a per-product and per-patent basis. (630 Dkt. 1927 at 2938:3-6 ("So either the jury

27    has to have information that they can use to make a calculation, that the verdict form requires.  If

28    they don't have that information, I'm just going to go with the 1846 [verdict form].").)

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE
CASE NO. 11-CV-01846-LHK (PSG)
sf-3611330

3

1  Accordingly, the Court permitted the parties to supplement their trial damages exhibits with these

2  calculations (630 Dkts. 1807, 1825); Ms. Davis has offered those calculations well in advance.

3  Samsung also wrongly argues that Ms. Davis's per-product and per-patent breakdowns are

4  misleading. First, Samsung incorrectly argues that Ms. Davis's breakdown makes it appear that

5  design patent damages are all separate and distinct despite significant overlap. (Mot. at 4.) Ms.

6  Davis deals with this in her explanation of the calculation in her report (Dkt. 3336-2 ¶ 94E),

7  which Mr. Wagner admitted he understood when he read it. (Declaration of Erik Olson in

8  Support of Apple's Opposition to Samsung's Motion to Strike, Ex. A at 1003:3-7.) Moreover,

9  the amounts stated under the D'677 column are in fact distinct because they reflect amounts

10  solely attributable to the D'677 patent between April 15 and June 15, 2011 (before the notice

11  date of the D'305 and D'087 patents on June 16, 2011). As Ms. Davis explains in her report, the

12  "D'305 & D'087" column represents amounts attributable to all three design patents after June

13  16, 2011. The D'677 patent was omitted from this column heading to avoid any confusion

14  associated with the D'677 patent appearing twice in two different columns (*see* Dkt. 3336-2

15  ¶ 94E). Apple also offered to rewrite the "D'677" column heading to read "D'677 Only" and the

16  "D'305 & D'087" column heading to read "D'677 or D'305 or D'087" to address Samsung's

17  concerns, but Samsung rejected Apple's offer.

18  Second, Samsung wrongly argues that the "D'305 & D'087" column makes it appear as

19  though each listed phone was found to infringe both the D'305 and D'087 patents. (Mot. at 5.)

20  Ms. Davis both explained this in her report and provided a clear exhibit, which has always been

21  incorporated into the PX25 series, that eliminates any risk of confusion as to which products

22  infringe the D'087 patent, the D'305 patent, or both. (Dkt. 3336-2 ¶ 94E & Davis Ex. 4-R; *see*

23  *also* PX25A1.3; PX25F.3.) Again, Samsung's arguments at most go to weight, not admissibility.

24  **III.   MS. DAVIS WILL NOT OFFER EXCLUDED OPINIONS AT TRIAL.**

25  Samsung incorrectly argues that Ms. Davis improperly included a new analysis, not

26  contained in Mr. Musika's report, comparing the incremental profit margin to the gross profit

27  margin of Samsung's accused phones. (Mot. at 5.) Ms. Davis's analysis is not new, but restates

28  identical numbers taken directly from Mr. Musika's incremental and gross profit calculations in

Exhibit 50-S to his May 8, 2012 report. (*Compare* Dkt. 2386-4, Musika Ex. 50-S, *with* Dkt. 3336-2, Davis Ex. 50-S.) Musika Exhibit 50-S was also admitted at the 2012 trial as PX28, which Mr. Musika discussed at length during his testimony. (Dkt. 1839 at 2057-61.) The exhibit shows Samsung's incremental profit margin was 38.6%, as compared to its gross profit margin of 39.2%. (Dkt. 3336-2, Davis Ex. 50-S.) Neither the numbers nor the comparison are new.

Nor were they struck from Ms. Davis' prior report, as Samsung contends. (Mot. at 5.) Samsung's prior motion moved to strike *Davis Exhibit 50-PT* and certain new calculations of damages using Samsung's incremental profit margin (applying the same methodology used to prepare Davis Exhibit 50-S to the seven products at the damages retrial that infringed Apple's design patents). (*See* Dkt. 2607-2 at 5:10-19; Dkt. 2386-2 at ¶ 163.) The Court struck those opinions, but Samsung did not move to strike, nor did the Court strike, the original Exhibit 50-S. (Dkt. 2607-2 at 5; Dkt. 2575 at 5-6.) Exhibit 50-S and the comparison about which Samsung complains have existed since the time of Mr. Musika's report and are neither new nor improper.

Finally, Samsung argues that the Court previously precluded Ms. Davis from presenting testimony relating to the history of Samsung's production of financial data. (Mot. at 5.) The Court's prior rulings, however, only precluded Mr. Musika and Ms. Davis from testifying that Samsung violated court orders to produce financial records and was sanctioned for doing so. (Dkt. 1668 at 1-2; Dkt. 2575 at 6-7.) The Court allowed Mr. Musika to testify that Samsung produced multiple versions of its financial spreadsheet that were pulled back during discovery because of incorrect totals, missing units, and internal inconsistencies. (Dkt. 1839 at 2065.) The Court allowed Ms. Davis to give that same testimony and to elaborate on one particularly significant change in which a Samsung witness admitted to reclassifying $1.3 billion of profits as costs in order to reduce Samsung's apparent profitability. (Dkt. 2840 at 701-02.) Consistent with the Court's prior rulings, Ms. Davis removed from her current report references to discovery order violations, but preserved her discussion of the errors and misstatements in Samsung's multiple financial productions.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Samsung's motion to strike.

Dated: January 14, 2016        MORRISON & FOERSTER LLP

By:   *Rachel Krevans*
      RACHEL KREVANS

Attorneys for Plaintiff
APPLE INC.