# EXHIBIT B
# Redacted Version of Document Sought to Be Sealed

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**United States District Court**
**Northern District of California**

**Apple Inc.**

v.

**Samsung Electronics Co., Ltd., et al.**

**Updated Rebuttal Expert Report of Michael J. Wagner**
**for New Trial on Damages**

**August 26, 2013**

**Volume I**

**LitiNomics**

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

182.    To calculate the damages under the assumption that damages begin when Apple first identified an accused product in the Complaint or Amended Complaint, I have identified in which Complaint the 13 products at issue in the New Trial first appear:

- April 15, 2011: Captivate, Continuum, Epic 4G, Indulge, Gem, Transform, and Galaxy Tab 7.0 (3G).[361]
- June 16, 2011: Droid Charge, Exhibit 4G, Galaxy Prevail, Infuse 4G, Nexus S 4G, and Replenish.[362]

183.    For my affirmative damages calculations, the only product that is affected by the change in the damages period is the Infuse 4G.  This is because I have assumed that all other products at issue in the New Trial would be eligible for either Samsung's profits based on infringement of the D'305, the earliest potential notice date for which is June 16, 2011; or else a lump sum reasonable royalty.  The damages for the Infuse 4G have been calculated elsewhere in this report based on either Samsung's profits starting at April 15, 2011, or based on an alternative running royalty rate starting on April 15, 2011.  Therefore, I calculate an alternative to both of these measures of damages, starting from June 16, 2011 in Schedule 29-NT at Tab 6 of this report.[363]

184.    In addition, I have calculated the amount by which Ms. Davis's damages would be reduced for each product if the damages she calculates prior to the alternative damages period are removed.  I have calculated the reduction for Ms. Davis's damages calculations summarized in Exhibits 17, 17.1, 18, 18.1, and 19.  The results of my calculations are in Schedule 30.1-NT at Tab 6 of my Report.

### b)  Ms. Davis does not take price elasticity of demand into consideration in her lost profits calculation.

185.    Ms. Davis is aware that Apple sells the products that were allegedly lost to Samsung at a wholesale price that is significantly higher than the price that Samsung charges its customers.  Exhibit 41.2-S to Ms. Davis's report shows that the average sales price of the

---

[361] Complaint for Patent Infringement, Federal False Designation of Origin and Unfair Competition, Federal Trademark Infringement, State Unfair Competition, Common Law Trademark Infringement, and Unjust Enrichment; Jury Trial Demand, April 15, 2011. [14.14]

[362] Amended Complaint for Federal False Designation of Origin and Unfair Competition, Federal Trademark Infringement, Federal Trade Dress Dilution, State Unfair Business Practices, Common Law Trademark Infringement, Unjust Enrichment, and Patent Infringement, June 16, 2011. [2.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

accused Samsung products is $348.01 while the average sales price for the products that Apple allegedly lost is $625.28.   Apple's prices are 80% higher[364] than Samsung's prices.   It is not reasonable to assume that Samsung's carrier customers would have been willing to spend an additional $304[365] on average more than what they actually paid, especially in light of the large number of alternatives. Ms. Davis's failure to take price elasticity of demand into consideration makes her lost profits calculation unreliable.

186.    The same result holds if end customer prices are examined, instead of wholesale (carrier) prices.   Strategy Analytics defines the iPhone as a leading-edge premium smartphone.[366]   According to Strategy Analytics, Apple is absent from high-volume, low-tier device markets.[367]   As shown in Figure 17 below, in 2011, Apple mostly operated in the $100-$249 and $250+ tier markets.[368]

---

[363] I have also calculated damages based on adjusting the jury's findings to match the earliest potential notice dates determined by the Court, limited to the date that a product is first identified in a complaint, in Schedule 31-NT at Volume 1, Tab 6 of this report.

[364] ($652.28 / $348.01) = 1.80

[365] ($652.28 - $348.01) = $304.27

[366] Apple – Competitive and Strategic Intelligence, Strategy Analytics, July 20, 2011, SAMNDCA00225633-640 at '639. [9.24]

[367] Apple – Competitive and Strategic Intelligence, Strategy Analytics, July 20, 2011, SAMNDCA00225633-640 at '639. [9.24]

[368] 2011 Wireless Smartphone Satisfaction Study, Management Report, J.D. Power and Associates, March, 2011, SAMNDCA10246338-445 at '362. [13.9]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 17:  Smartphone Cost Segment Share**[369]



187.    Kantar Worldpanel ComTech ("ComTech") has conducted several longitudinal consumer surveys to analyze the mobile phone market in terms of handset pricing.[370] According to a February 2011 study, Apple dominated in the high end price segment (selling price of handset over $170) with the iPhone 4 in the Q2 2010 – Q4 2010 time period.[371]  In a Q2 2010 report, ComTech states that Apple owners spend significantly more on their handset purchase than other smartphone owners.[372]  In particular, "Apple owners deliver a 15% to 150% premium on their initial handset spend… … versus owners of other smartphones."[373]  In a Q3 2010 report, ComTech also concludes that Apple dominates in the over $170 price band segment.[374]  A Q2 2011 study shows that "iOS still carries a premium" price compared to the market average for smartphones.[375]  Similarly, a February 2011 United States mobile phone

[369] 2011 Wireless Smartphone Satisfaction Study, Management Report, J.D. Power and Associates, March, 2011, SAMNDCA10246338-445 at '362. [13.9]

[370] ComTech United States Pricing Analysis, Apple Market Research & Analysis, February 18, 2011, APLNDC0002521965-2005 at '967, '969. [10.4]

[371] ComTech United States Pricing Analysis, Apple Market Research & Analysis, February 18, 2011, APLNDC0002521965-2005 at '968, '980. [10.4]

[372] ComTech Market Overview Q2 2010, Apple Market Research & Analysis, APLNDC0002621134-238 at '139, '220. [10.5]

[373] ComTech Market Overview Q2 2010, Apple Market Research & Analysis, APLNDC0002621134-238 at '139. [10.5]

[374] ComTech United States Report Q3 2010, Apple Market Research & Analysis, November 19, 2010, APLNDC0002636414-451 at '421, '442. [10.6]

[375] ComTech Global Report Q2 2011, Apple Market Research & Analysis, August 12, 2011, APLNDC0002640687-727 at '696. [4.13]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

market study indicates that "iOS has strong leaning toward the premium market, with 66% of sales over $170 versus 50% for Android."[376]  iPhone 4 is the top selling model in the segment where the average selling price of a handset is over $170.[377]

**Figure 18:  Handset Spend Overview[378]**




188.    "iOS handsets remain[ed] the most expensive of all OS's" in Q4 2011, according to a ComTech report.[379]  Apple smartphone customers reported spending the most ($206) on their smartphones in 2011, in contrast to other smartphone owners, including Samsung customers ($139).[380]  Based on this, consumers that purchased iPhones paid 48% more than consumers that purchased Samsung smartphones.[381]  More than one-third (35 percent) of Apple owners reported paying full price for their handset, compared to just 19 percent of owners

---

[376] ComTech United States Report Q410, Apple Market Research & Analysis, February 11, 2011, APLNDC00010809-809.54, at '809.9. [8.11]

[377] ComTech United States Report Q410, Apple Market Research & Analysis, February 11, 2011, APLNDC00010809-809.54 at '809.9, '809.41. [8.11]

[378] ComTech United States Report Q410, Apple Market Research & Analysis, February 11, 2011, APLNDC00010809-809.54 at '809.9. [8.11]

[379] ComTech USA Report Q4 2011, Apple Market Research & Analysis, February 10, 2012, APLNDC-Y0000148505-555 at '513. [4.12]

[380] 2011 Wireless Smartphone Satisfaction Study, Management Report, J.D. Power and Associates, March, 2011, SAMNDCA10246338-445 at '360. [13.9]

[381] 2011 Wireless Smartphone Satisfaction Study, Management Report, J.D. Power and Associates, March, 2011, SAMNDCA10246338-445 at '360. [13.9] ($206 / $139 – 1 = 48%)

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

paying full price for the industry.[382]   Apple also noted in a market research study that the "iPhone is perceived as expensive."[383]

189.   During the period that Ms. Davis calculates lost profits in August / September 2010, I understand that iPhone retail pricing was based on Apple's June 24, 2010 announcement when it released the iPhone 4.[384]   The two-year contract prices were $99 for the iPhone 3GS, $199 for the iPhone 4 16GB, and $299 for the iPhone 4 32GB.[385]

190.   During the period that Ms. Davis calculates lost profits from April 2011 until October 13, 2011, I understand that the prices discussed above for AT&T continued to apply, with the exception that the iPhone 3GS was available for $49 as of January 2011.[386]   During this period, the iPhone 4 was also being sold on Verizon with prices of $199 for the 16GB model and $299 for the 32GB model with a two-year contract.[387]   At the tail end of Ms. Davis's lost profits period,[388] iPhone prices changed again with the release of the iPhone 4S on October 14, 2011, with Apple offering a free iPhone on AT&T for the first time.[389]   Therefore, for most of the period that Ms. Davis calculates lost profits, the lowest cost iPhone was $99 (in 2010) or $49 (in 2011), and those phones were only available on AT&T.

191.   In contrast, Samsung offered a large number of lower-end basic handsets.[390]   In 2011, Samsung mostly operated in <$100 and $100-$249 smartphone cost tier markets, as

---

[382] 2011 Wireless Smartphone Satisfaction Study, Management Report, J.D. Power and Associates, March, 2011, SAMNDCA10246338-445 at '360. [13.9]

[383] iPhone and Android Smartphone Buyer Research, APLNDC-Y0000025148-188, at '157. [10.7]

[384] "Apple Presents iPhone 4," Apple Press Info, June 7, 2010, <http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html>, accessed March 26, 2012. [5.19]

[385] "Apple Presents iPhone 4," Apple Press Info, June 7, 2010, <http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html>, accessed March 26, 2012. [5.19]

[386] "AT&T Announces iPhone 3GS for $49.00," AT&T Press Release, January 6, 2011, <http://www.att.com/gen/press-room?pid=18889&cdvn=news&newsarticleid=31481>, accessed July 12, 2013. [5.22]

[387] iPhone 4 on Verizon Wireless Available for Pre-Order Tomorrow, Apple Press Info, February 2, 2011, <http://www.apple.com/pr/library/2011/02/02iPhone-4-on-Verizon-Wireless-Available-for-Pre-Order-Tomorrow.html>. [5.24]

[388] Except for the Infuse 4G, the last date for which Ms. Davis calculates lost profits is October 14, 2011. For the Infuse 4G, Ms. Davis calculates lost profits through December 14, 2011.  (Davis Report, Schedule 17.2-PT-H. [2.2])

[389] "Apple Launches iPhone 4S, iOS 5 & iCloud," Apple Press Info, October 4, 2011, <http://www.apple.com/pr/library/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud.html>, accessed October 10, 2011. [3.23]

[390] 2009 Mobile UX Forecast: M.T.O.C., Samsung Electronics Co., LTD, November 10, 2008, SAMNDCA00214969-5201 at '5073. [8.5]

presented in Figure 17 above.[391]  In a June 8, 2010 System Concepts study commissioned by Samsung, participants of the study commented that one of the benefits of Android is its cost, making it available to a broader market than the iPhone.[392]   Smartphone customers find Samsung more affordable than Apple, according to J.D. Power and Associates.[393]

192.    Indeed, an analysis of the sales data for Samsung's accused products reveals that about 42 percent of the accused products are models that have an average wholesale selling price of ███████████



**Figure 19:  STA Smartphones with Wholesale ASP** ██████████[94]



| Product | 2010 - Q2 2012 Total | |
| --- | --- | --- |
| | Quantity | ASP |
| Exhibit 4G Galaxy Prevail Gem Replenish Transform | | |
| Total Smartphone Products with ████ | | |
| Total Smartphone Products | | |
| Smartphone Products with ████ as a Percent of Total | | |

193.    These products are clearly in a very different market segment than the iPhones, which start at significantly higher wholesale prices.[395]

194.    iPhone owners have relatively higher disposable income compared to the income of smartphone owners on average.[396]  Forty-seven percent of iPhone 3G owners and 50 percent

---

[391] 2011 Wireless Smartphone Satisfaction Study, Management Report, J.D. Power and Associates, March, 2011, SAMNDCA10246338-445 at '362. [13.9]
[392] UX Critique by European Professionals, System Concepts, June 8, 2010, SAMNDCA00202869-933 at '919. [10.2]
[393] 2011 U.S. Wireless Mobile Phone Study Results Presentation Volume 2, J.D. Power and Associates, November 15, 2011, SAMNDCA00282033-088 at '080. [13.7]
[394] Schedule 15.2-NT. [1.6]
[395] In February 2012, the carrier price for the iPhone 3GS was $375, the iPhone 4 carrier price was $549, and the iPhone 4S carrier price was $649, $749, and $849 for the 16 GB / 32 GB / 64 GB versions, respectively. (Apple Inc. iPhone – US, Carrier & Reseller Pricing as of February 17, 2012, APLNDC-Y0000051622. [5.5])

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

of iPhone 3GS owners have disposable income of more than $100,000.[397]   In contrast, Crowd Science found that Android smartphone users are less affluent than iPhone users.[398]

**Figure 20:  iPhone Owners Income Distribution (Three Month Average Ending April 2010)[399]**



195.    In August 2007, Apple conducted an iPhone Consideration Study to "view the US mobile market approximately 30 days after the iPhone launch and understand the reasons why potential buyers chose not to consider or purchase the iPhone and why those still considering purchasing one have not done so yet."[400]   According to the study, the price of the iPhone was the top reason for not *considering* the purchase of the iPhone by those who purchased a mobile phone in the past 30 days.[401]   "Price of the iPhone" was also the top reason for not *purchasing* the iPhone.[402]   Apple, therefore, concluded that cost was the primary reason the iPhone was not purchased.[403]   In fact, those considering the purchase of the iPhone expected to pay $258 on

---

[396] iPhone 4.0 Quick Report & Analysis, Samsung Electronics, June 28, 2010, SAMNDCA00024872-941 at '880. [4.1]

[397] iPhone 4.0 Quick Report & Analysis, Samsung Electronics, June 28, 2010, SAMNDCA00024872-941 at '880. [4.1]

[398] Email from John Brown to Arthur Rangel, March 16, 2010, 40% of Blackberry Users Willing to Trade in Their Devices for Apple iPhones, March 15, 2010, APLNDC0001414064-066 at '065. [15.28]

[399] iPhone 4.0 Quick Report & Analysis, Samsung Electronics, June 28, 2010, SAMNDCA00024872-941 at '880. [4.1]

[400] iPhone Consideration Study, Topline Report, Apple Market Research & Analysis, August 2007, APLNDC0001218857-891 at '859. [10.8]

[401] iPhone Consideration Study, Topline Report, Apple Market Research & Analysis, August 2007, APLNDC0001218857-891 at '870. [10.8]

[402] iPhone Consideration Study, Topline Report, Apple Market Research & Analysis, August 2007, APLNDC0001218857-891 at '871. [10.8]

[403] iPhone Consideration Study, Topline Report, Apple Market Research & Analysis, August 2007, APLNDC0001218857-891 at '872, '889. [10.8]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

average, versus $117 for those who did not consider purchasing the iPhone.[404]  Similarly, in a January 2009 Global Mobile Phone Market Study commissioned by Apple, cost was a key driver for the lack of iPhone consideration.[405]

196.   In a May 2011 Apple study about Apple brand perception, Apple's price across all products was listed as a key Apple brand constraint.[406]  The study noted that "Apple is universally considered to be higher priced than similar brands and not always a strong value for the money to many."[407]

### (1)  Ms. Davis's analysis does not take into account the price segments targeted by the specific products at issue in the New Trial.

197.   As discussed above, the wholesale ASP of five of the models at issue in the New Trial are $251 or less.[408]  These products are clearly in a very different segment of the smartphone market than the iPhone, which Ms. Davis reports as selling for a wholesale ASP of $625.28 over the damages period.[409]

198.   Two of the products at issue in the New Trial (Galaxy Prevail and Indulge) are sold by regional carriers to consumers without a contract and with a substantially lower monthly payment than the $107 average monthly expenditure for iPhone owners.[410]  The Galaxy Prevail was sold by Boost Mobile for a $179.99 retail price with a "$50 Monthly Unlimited plan with no hidden fees and no contracts required."[411]  The Indulge was announced with a retail price of $329.99 and an "all-inclusive $55 Android plan, which provides users with unlimited talk, text, 411 information, navigation, international text, unlimited picture and video messaging,

---

[404] iPhone Consideration Study, Topline Report, Apple Market Research & Analysis, August 2007, APLNDC0001218857-891 at '877, '889. [10.8]

[405] Global Mobile Phone Market Study - 12 Country Omnibus Study, Apple Market Research & Analysis, January 2009, APLNDC0001256422-504 at '484. [8.9]

[406] Apple Brand Perception and Measures Research, Apple Market Research & Analysis, May 2011, APLNDC0001386830-899 at '855. [15.31]

[407] Apple Brand Perception and Measures Research, Apple Market Research & Analysis, May 2011, APLNDC0001386830-899 at '855. [15.31]

[408] Figure 19.

[409] Davis Report, Exhibit 41.2-S. [2.2]

[410] J.D. Power: 2011 Wireless Consumer Smartphone Satisfaction Study(SM) Volume I - Management Report, March 2011, SAMNDCA10246338-445 at '363. [13.9]

[411] "Why Settle When You Can 'Prevail' with the new Android-powered Phone from Boost Mobile and Samsung," newsroom.sprint.com, April 5, 2011, <http://newsroom.sprint.com/article_display.cfm?article_id=1854>. [3.31]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

nationwide data services on the company's reliable all 3G network, and more."[412]  Ms. Davis has
provided no evidence that customers who purchased a no-contract phone with a low monthly
charge would have even considered, let alone switch to, the iPhone.

     199.    The price differences for the products at issue in the New Trial are even larger in
2011, the period in which approximately 90 percent of Ms. Davis's lost profits damages are
calculated.[413]  I have calculated the total sales and ASPs of the products at issue in the New
Trial during August – September 2010 and April – October 2011 as follows:

**Figure 21:  Consolidated STA and SEA Revenue, Quantity, and ASP for Products at Issue in the
New Trial – August to September 2010 and April to October 2011[414]**



     200.    As shown by the figure, the average wholesale ASP of the 12 phones in the
period April to October 2011 i ███████████████████████████████████████████
█████████████████████████████████████████████████████████████ in this April to October
2011 period.  Even the three Galaxy S products prices had dropped considerably from the

---

[412] "Cricket Enhances Its Smartphone Line-Up with the Samsung Indulge™," PR Newswire Association
LLC, June 7, 2011. [5.25]

[413] In her base scenario, Ms. Davis calculates lost profits of $37,203,741 and $2,418,431 in August and
September 2010, respectively.  The total for these two months of $39,622,172 represents about 10
percent of her total lost profits damages in her base scenario, $419,029,253. (Davis Report, Exhibit
17.1-PT-H and 17.2-PT-H. [2.2])

[414] Schedule 15.3-NT. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

August – September 2010 period. Ms. Davis does not account for the drastic price differences between the iPhone and the majority of the products for which she calculates lost profits damages for the April to October 2011 period.

201.    Articles discussing several of the phones that are sold by Samsung at lower wholesale ASPs focused on price as a primary differentiator:

- Leading up to the release of the Exhibit 4G, T-Mobile touted that the Exhibit 4G would be a "sub-$100" smartphone.[415]

- The Galaxy Prevail was highlighted for its $179.99 retail price (with no contract) and the "great value" of Boost Mobile's $50 monthly plan.[416]

- The Gem was noted as being available for $29.99 with a 2-year agreement at U.S. Cellular.[417]

- The Indulge was announced with a retail price of $329.99 (no contract) and an "all-inclusive" $55 Android monthly plan.[418]

- The Replenish was released with a price of $49.99 on a two-year contract at Sprint.[419]

202.    Nearly every Samsung phone at issue in the New Trial competes in a different price segment than the iPhone during the period April to October 2011. Even for the three phones that are priced ███████████████ in the April to October 2011 period (Droid Charge, Infuse 4G, and Nexus S 4G),[420] STA's July 2011 launch recap highlights competition with other *Android* smartphones and barely mentions the iPhone in its discussion of the success of the phones in the first few months after launch.[421]  In the July 2011 STA launch recap, the discussion of the Droid Charge focuses on the HTC Thunderbolt 4G LTE as the competitive device;[422] the discussion of the Infuse 4G focuses on the Motorola Atrix 4G and, to a lesser

---

[415] "T-Mobile Announces Launch Date for Samsung Exhibit 4G and Gravity SMART," Brighthand, June 15, 2011, <http://www.brighthand.com/default.asp?newsID=17907&news=t-mobile+samsung+exhibit+4g+gravity+smart+android+2.2+2.3+froyo+gingerbread>. [3.9]

[416] "Why Settle When You Can 'Prevail' with the new Android-powered Phone from Boost Mobile and Samsung," newsroom.sprint.com, April 5, 2011, <http://newsroom.sprint.com/article_display.cfm?article_id=1854>. [3.31]

[417] "Samsung and U.S. Cellular launch the Gem today," Smartphone Envy, April 1, 2011. <http://www.smartphoneenvy.com/android/samsung-and-u-s-cellular-launch-the-gem-today/>. [3.30]

[418] "Cricket Enhances Its Smartphone Line-Up with the Samsung Indulge™," PR Newswire Association LLC, June 7, 2011. [5.25]

[419] "Samsung Officially Releases the Replenish Source Code," Phandroid, May 3, 2011, <http://phandroid.com/2011/05/03/samsung-replenish-gets-its-source-code-released/>. [3.25]

[420] Figure 21.

[421] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844. [4.16]

[422] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844 at '803 – 806, '809. [4.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

extent, the HTC Inspire 4G as the competitive devices;[423] and the discussion of the Nexus S 4G focuses on the HTC EVO and the Samsung Galaxy S 4G as the competitive devices.[424]

203.    With respect to the Galaxy Tab 7.0 (3G), I discuss below in Section V.A.4.d) that the Galaxy Tab 7.0 (3G) is priced significantly below the cellular-enabled version of the iPad.

204.    Ms. Davis's analysis does not properly account for the significant price differences between the products at issue in the New Trial and the iPhone.  Therefore, her analysis significantly overstates the extent of lost sales to Apple.

### c)    Ms. Davis does not account for differences in attributes of the phones at issue in the New Trial that would make it unlikely for customers to switch to an iPhone.

205.    Ms. Davis's high level analysis of Samsung's products overlooks several key features that would make it unlikely that the customers would have switched to an Apple iPhone if the Samsung phone the customer had purchased was not available.  For example, three of the Samsung phones at issue in the New Trial have slide-out keyboards (Epic 4G, Indulge, and Transform), and a fourth has an integrated keyboard (Replenish), as illustrated by the Figure below.

---

[423] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844 at '814, '816-818, '822. [4.16]

[424] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844 at '840-842. [4.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 22:  Products at Issue in the New Trial with Physical Keyboards**



Epic 4G (JX1012)



Indulge (JX1026)



Transform (JX1014)



Replenish (JX1024)

Ms. Davis has not explained why a customer that purchased a phone with a physical keyboard in the actual world would have switched to an iPhone that does not have a physical keyboard in the "but-for" world, despite the availability of other non-infringing smartphones with physical keyboards.

206.    Other examples include screen quality, size, and type (e.g., Super AMOLED); processor performance; the Android operating system; and 4G capability, amongst others. Each of these considerations are important demand drivers for smartphones, particularly relative to the importance of the functionalities covered by the patents at issue in the New Trial. Several reviews, press releases, and other articles highlight and emphasize specific features of the Samsung products that are differentiators from the iPhone:

- **Captivate**:  In a press release announcing the Captivate, an AT&T vice president stated that the "Captivate's amazing screen, huge amounts of onboard storage, a super-fast processor, all fueled by the nation's fastest

  
Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

> 3G network and a nationwide Wi-Fi network and you get a smartphone we know our customers will crave."[425]

- **Continuum**:   An Engadget article discussed the Continuum's release, touting it as the "first phone with a dedicated ticker display" and showing a "feature breakdown" in which the first item was a 3.4-inch Super AMOLED primary display (in addition to the "ticker" display).[426]

- **Droid Charge**:   A PCMag.com article led off its discussion of the Droid Charge, pointing out that the phone would be running on "Verizon's LTE network."[427]   Other features highlighted by PCMag.com include "a 4.3-inch Super AMOLED Plus touch screen," both a rear-facing and front-facing camera, "mobile hotspotting," and "Adobe Flash support," while also noting that the Droid Charge was a 4G Android phone.[428]   STA's post-launch review for the Droid Charge also noted its 4.3-inch Super AMOLED display, as well as its battery life.[429]

- **Exhibit 4G**:   An online smartphone news and review provider announced the release date of the Exhibit 4G on T-Mobile, emphasizing that the Exhibit 4G was to be a "sub-$100" smartphone and would function with T-Mobile's HSPA+4G network.[430]

- **Infuse 4G**:   A PCMag.com article emphasized the Infuse 4G's data speeds by saying that the phone is AT&T's "first smartphone with the HSPA+ 21 speeds that [PCMag.com] consider[s] to be the minimum for true 4G."[431]   The article also highlighted the size of the phone, stating that it is "unusually thin, long and wide" and mentions that the screen "sports Samsung's Super AMOLED Plus technology."[432]   STA's post-launch review for the Infuse 4G also emphasized its 4.5-inch Super AMOLED screen, high quality camera, and 4G speed.[433]

---

[425] "AT&T and Samsung Mobile Announce Upcoming Availability of the Samsung Captivate™, a Galaxy S™ Smartphone," AT&T, June 17, 2010, <http://www.att.com/gen/press-room?pid=18033&cdvn=news&newsarticleid=30881>. [15.37]

[426] "Samsung confirms Continuum dual-display Android handset for Verizon," Engadget, November 8, 2010, <http://www.engadget.com/2010/11/08/samsung-confirms-continuum-dual-display-android-handset-for-veri/>. [3.26]

[427] Samsung's Droid Charge Hits Verizon Stores Tomorrow," PCMag, May 13, 2011, <http://www.pcmag.com/article2/0,2817,2385379,00.asp>. [3.24]

[428] "Samsung's Droid Charge Hits Verizon Stores Tomorrow," PCMag, May 13, 2011, <http://www.pcmag.com/article2/0,2817,2385379,00.asp>. [3.24]

[429] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844 at '804, '809. [4.16]

[430] "T-Mobile Announces Launch Date for Samsung Exhibit 4G and Gravity SMART," Brighthand, June 15, 2011, <http://www.brighthand.com/default.asp?newsID=17907&news=t-mobile+samsung+exhibit+4g+gravity+smart+android+2.2+2.3+froyo+gingerbread>. [3.9]

[431] "AT&T, Samsung Launch Infuse 4G Smartphone," PCMag, May 5, 2011, <http://www.pcmag.com/article2/0,2817,2384980,00.asp>. [3.6]

[432] "AT&T, Samsung Launch Infuse 4G Smartphone," PCMag, May 5, 2011, <http://www.pcmag.com/article2/0,2817,2384980,00.asp>. [3.6]

[433] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844 at '815, '820. [4.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

- **Nexus S 4G**:  STA's post-launch review for the Nexus S 4G emphasized the Nexus S 4G's Super AMOLED screen and "Pure Google" experience.[434]

Similar to physical keyboards, Ms. Davis has not explained why Samsung customers that purchased due to a large (4-inch to 4.5-inch) Super AMOLED display or 4G network connectivity would instead purchase an iPhone.  Indeed, the iPhone had only a 3.5-inch display and 3G network connectivity through the 4S model,[435] only upgrading to 4G / LTE connectivity and a 4-inch screen with the release of the iPhone 5 in September 2012.[436]  Ms. Davis also does not explain why customers that purchased the Nexus S 4G, several of which were drawn by the "Pure Google" experience, would switch to the iPhone (a non-Android device) in place of the Nexus S 4G.

207.    Ms. Davis has not accounted for the differences in important smartphone characteristics between the iPhone and the products at issue in the New Trial.  Therefore, her analysis significantly overstates the extent of lost sales to Apple.

208.    One area where I agree with Ms. Davis is her implicit assumption that a straight vs. rounded phone edge does not have a significant effect on consumer demand.  As I explain in *Georgia-Pacific* factor 9, Samsung has available acceptable, non-infringing alternatives for the D'677 Patent in the form of rounded top and bottom edges.  To the extent that Ms. Davis disagrees that this alternative would be acceptable to consumers (i.e., if Ms. Davis argues that customers that purchased a phone with a relatively straight top / bottom edge would not have been willing to purchase a phone with a curved top / bottom edge), then Ms. Davis also needs to account for the reverse effect (customers that purchased a phone with a relatively curved top / bottom edge would not have been willing to purchase a phone with a straight top / bottom edge from Apple) in her lost profits calculations.

---

[434] Samsung Presentation: STA Post Launch Consumer Insights. July 2011, SAMNDCA00027781-844 at '839, '844. [4.16]

[435] Apple Press Info: Apple Launches iPhone 4S, iOS 5 & iCloud, October 4, 2011, <http://www.apple.com/pr/library/2011/10/04Apple-Launches-iPhone-4S-iOS-5-iCloud.html>, accessed on October 10, 2011. [3.23]  *See also* Ian Paul, "Apple iPhone 4S Launch Day: A Survival Guide," PCWorld, October 13, 2011, <http://www.pcworld.com/article/241837/apple_iphone_4s_launch_day_a_survival_guide.html>, accessed March 12, 2012. [5.15]

[436] "Apple Introduces iPhone 5," Apple Press Info, September 12, 2012, <http://www.apple.com/pr/library/2012/09/12Apple-Introduces-iPhone-5.html>, accessed October 5, 2012. [5.26]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### 5.   Ms. Davis's calculation of Samsung's profits is overstated.

244.   For the design patents at issue in the New Trial, I understand that Apple seeks Samsung's profits from its sales of the products found to infringe the D'677 and D'305 Patents. Ms. Davis calculates Samsung's profits three ways – the first deducting no expenses, the second based on Samsung's gross margin, and the last based on what Ms. Davis claims to be "incremental margin."[481]

245.   As I describe below, Samsung is entitled to deduct all of its operating expenses in its calculation of profits from its sales of products found to infringe the D'677 and D'305 Patents.  When calculated in this manner, Samsung's profits are considerably lower than that calculated by Ms. Davis.

### a)   Ms. Davis introduces a new calculation of Samsung's profits that she labels "incremental profits," basing her calculation on an artificial naming convention used in financial data produced by Samsung.

246.   Ms. Davis includes calculations of Samsung's profits based on "incremental profits."[482]  Mr. Musika never performed any damages calculations of Samsung's profits using anything other than gross profit and revenue, so this is a newly disclosed calculation.

247.   Further, I disagree with Ms. Davis's usage of a "fixed" or "variable" accounting designation to determine the appropriateness of deducting expenses in the context of the calculation of Samsung's profits as a damages remedy for design patent infringement.  The Court set forth its test for the deductibility of expenses in the first trial in its jury instructions:[483]

> If you find infringement by any Samsung defendant, Apple is entitled to all profit earned by that defendant on sales of articles that infringe Apple's design patents. Profit is determined by deducting certain expenses from gross revenue. Gross revenue is all of the infringer's receipts from the sale of articles using any design found infringed. Apple has the burden of proving the infringing defendant's gross revenue by a preponderance of the evidence.
>
> Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if they are directly attributable to the sale or manufacture of the

---

[481] Davis Report, pp. 63-65. [2.2]

[482] Davis Report, pp. 65, 72-74. [2.2]

[483] Revised Final Jury Instructions, August 20, 2012, p. 66. [15.39]  I express no opinion on the correctness of this instruction.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

infringing products resulting in a nexus between the infringing products and the expense. Samsung has the burden of proving the deductible expenses.

248.    Ms. Davis states that she agrees "with Mr. Musika that a 'fixed cost has no direct relationship to the volume of product produced or sold. In order for a fixed cost to be assigned to a product, the cost must be allocated on some systematic and rational basis."[484]  However, there are numerous examples of fixed costs that are directly related to a particular phone and do not need to be allocated, such as R&D expense related to a phone, a sales team dedicated to a particular phone, advertisements and marketing expenses for a phone, production molds for a phone, and numerous other expenses.  Ms. Davis's statement simply does not make accounting or economic sense.  Using fixed vs. variable expenses to distinguish between deductible expenses has no bearing on the instructions the Court gave in the first trial as to what deductible expenses are.

249.    In addition, Ms. Davis concludes that certain categories of expenses included in the financial data produced by Samsung (fixed expenses, R&D, and admin expenses) were not explained to her satisfaction for her to conclude they are deductible.[485]  Ms. Davis apparently believes that Samsung has to explain every financial document to her satisfaction before she will agree that an expense is deductible.  This is not appropriate.  Both Ms. Davis and I have based our damages calculations upon another set of financial documents.  With respect to those financial documents, Samsung has explained the expenses in deposition, I have explained the expenses in my report, and Apple has had the opportunity to question Samsung financial witnesses about the expense categories.  As I explained in my Original Report, at trial, and again in this report in my discussion of deductible expenses, the expense categories included by Samsung are directly attributable to the sale or manufacture of the infringing products.

250.    Ms. Davis concludes that only costs labeled "variable" in PX28 are directly associated with the sale of the infringing products, and therefore "fixed" costs should be ignored in calculating Samsung's profits.  Ms. Davis does not even include all expense categories included in Cost of Goods Sold because she excludes "COGS-Direct Cost-Depreciation Cost (Fixed)," "COGS-Direct Cost-Molds Cost (Fixed)," "COGS-Expenses-Other," and "COGS-Indirect Cost-Expenses (Operation Division)."  It should be noted that two of these four cost

---

[484] Davis Report, p. 73. [2.2]
[485] Davis Report, pp. 73-74. [2.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

categories in COGS are even labeled "Direct."  The word "variable" does not appear in the jury instructions from the first trial related to Defendant's Profits.  The jury instruction states only that costs can include the "cost of the goods."  I believe that all of Samsung's cost of goods sold are properly deducted to determine Samsung's profits.

251.    Ms. Davis appears to equate the term "direct" and "variable" when used with the word "cost."  Ms. Davis appears to subtract only what she believes to be direct costs that are labeled variable by Samsung.  However, the concept of direct cost and variable cost are separate concepts in cost accounting.  For example, the leading cost accounting textbook in the United States states that costs can be direct and variable, and also direct and fixed.[486]

252.    Ms. Davis does not consider any research and development costs or general maintenance costs to be directly associated with the production or sale of the accused products.  This does not make any sense from an economic standpoint.  If the product was never developed or improved over time, it would never have been sold.  It is incorrect not to include all the costs needed to design and produce the accused products as relevant costs to determine Samsung's profits.

253.    Finally, it is important to note that for a large enough quantity, or a long enough time period, every company cost is variable.  If Ms. Davis was assessing the incremental cost of a couple of additional units, then I would not have any major disagreements with her analysis of "incremental profitability." However, Ms. Davis is calculating the incremental profit for entire models of smartphones and a significant portion of Samsung's smartphone sales. This is a very different analysis, and apparently Ms. Davis does not appreciate the difference.

254.    It is simply unrealistic to assume that the costs that Ms. Davis treats as fixed are fixed for the scope of sales that Ms. Davis is analyzing. Even if the correct measure of profitability is incremental profitability, for the scope of sales that are at issue in the infringer's profit calculation, a substantial portion (if not all) of the operating costs would be variable. As an example, Ms. Davis treats all "Direct Commercial Sales – Marketing" expenses as fixed. While this may be appropriate when considering a few additional units, it is certainly not an appropriate assumption when analyzing an entire product line, such as the Infuse 4G.

---

[486] Horngren, Charles T., Srikant M. Datar, and George Foster, "Cost Accounting: A Managerial Emphasis," Prentice Hall, 11th Edition, 2003, p. 36. [5.10]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 30: Apple US iPhone Sales by Quarter[640]**



372.    The figure above shows Apple's U.S. iPhone sales by quarter from the release of the first iPhone through Q4 2011.  Apple's iPhone sales enjoyed a relatively steady climb from introduction through Q1 2011.  After a short lull, during which no new iPhone iterations were released, Apple's smartphone sales skyrocketed to approximately fifteen million units in the fourth quarter of 2011, the quarter during which the iPhone 4S launched.  As shown in the figure, this more than doubled the previous record of around seven million units during Q1 2011 with the launch of the Verizon iPhone 4.

---

[640] Schedule 14.1. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 31: Smartphone Average Selling Prices in the U.S., Q2 2007 Through Q4 2011[641]**



373.    The above figure shows Apple's iPhone ASP alongside Samsung's smartphone ASP from Q2 2007 through Q4 2011.  As illustrated, Apple has maintained a consistent and sizeable premium over Samsung.  In other words, Apple would be hard pressed to argue that its smartphone offering has suffered any price erosion at the hand of Samsung's products.  In fact, Apple's ASP has consistently increased since Q3 2009.

---

[641] Schedule 18-NT. [1.6]

**Figure 32: Smartphone Revenue Share in the U.S., Q2 2007 Through Q4 2011[642]**



374.    As pictured in the above figure, Apple has also consistently maintained a high proportion of smartphone revenue share since Q2 2007.  Notably, while Samsung's revenue share has also increased, Apple's share jumped to nearly 60% during Q4 2011, the quarter in which the iPhone 4S was released.

---

[642] Schedule 18-NT. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 33: Smartphone Unit Share in the U.S., Q2 2007 Through Q4 2011**[643]



375.    Very similar to the previous figure, the figure above shows that Apple has maintained its share of smartphone unit sales over time.  Again, Apple's unit sales set records in Q4 2011 with the release of the iPhone 4S.

---

[643] Schedule 18-NT. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 34: Apple's Share of Realized Handset Industry Profits Worldwide Q1 2008 Through Q4 2011[644]**



376.    The figure above shows Apple's share of realized worldwide handset profits. This figure depicts not only the consistent growth of Apple's share of industry profits, but also its profit earning power.   In the most recent quarter depicted, again Q4 2011 during which the iPhone 4S was released, Apple earned 75% of handset industry profits worldwide.

377.    Ms. Davis also mentions in her discussion of irreparable harm that she does not include in her lost profits calculations several additional revenue sources connected to sales of the iPhone and iPad.[645]   However, this discussion has nothing to do with a discussion of irreparable harm.   In fact, Ms. Davis may have had data sufficient to calculate damages from potentially lost sales of accessories or lost sales through iTunes, but did not include it in her

---

[644] Schedule 18-NT. [1.6]
[645] Davis Report, pp. 29-30, 33-34. [2.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

not affect her conclusion: "And the grid and the shape and the way the icons fill the screen is what you really notice primarily in the overall impression."[807]   Finally, Dr. Kare testified about a non-infringing screen image, that of the Blackberry Torch, and her reasons for finding it to provide a noninfringing alternative as follows: "And in this screen, you can see that just by having the batch of icons not on a consistent shape, it just – it looks different.  You see more background."[808]   I have copied the image of the Blackberry Torch that Dr. Kare used in her trial demonstratives in the figure below.

**Figure 45:  Blackberry Torch Image Used by Dr. Kare as Non-Infringing Screen**[809]



511.    Dr. Kare's testimony supports that removing the "containers" surrounding the icons, in a fashion similar to the GUI of the Galaxy S II products, would fully design around the D'305 Patent.

512.    To calculate the total cost to remove the container for every icon on the phones found to infringe the D'305 Patent, I rely upon the images of the application screens for the 13 smartphones that the jury found to infringe the D'305 Patent that Dr. Kare included in her expert report.[810]   In my Original Report, I summarized the number of icons on the application screens

---

[807] Apple v. Samsung Transcript of Proceedings, Volume 5, August 7, 2012, p. 1381. [16.12]
[808] Apple v. Samsung Transcript of Proceedings, Volume 5, August 7, 2012, pp. 1404-1405. [16.12]
[809] PDX14. [16.16]  *See also* Apple v. Samsung Transcript of Proceedings, Volume 5, August 7, 2012, pp. 1404-1405. [16.12]
[810] Expert Report of Susan Kare, March 22, 2012, Exhibits 15-27. [15.51]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

of each of these 13 phones.[811]   In order to calculate the total cost to re-design all the icons for the 13 smartphones the jury found to infringe the D'305 Patent, I apply the cost to re-design an icon of $420 per icon that I discussed in my Original Report to the number of icons on the 13 smartphones found to infringe the D'305 Patent.[812]   This results in a total design around cost of $251,580.[813]

513.    I note that Ms. Davis agrees that Samsung has design arounds available for the D'305 Patent that could be implemented in less than a month (0.5 months).[814]

*(b)        D'677 Patent*

514.    Only one smartphone at issue in the New Trial was found to infringe the D'677 Patent – the Infuse 4G.  As I discussed in my Original Report, there are several phones that were never accused of infringing the D'677 Patent that provide design alternatives for Samsung. Notably, three other phones at issue in the New Trial are Galaxy S phones but were never accused of infringing the D'677 Patent: the Captivate, the Continuum, and the Epic 4G.  As Ms. Davis has stated, the Galaxy S phones have been successful products in the market.

515.    In addition, Samsung has employed a wide range of smartphone designs in the market that have been found to be acceptable and are not accused of infringement in this lawsuit.  Further, numerous other smartphone and tablet manufacturers have competed in the marketplace with alternative designs.

516.    This wide range of designs are acceptable alternatives for the devices accused of infringing the D'677 Patent.  These products have been successful on the market, and Apple has provided no evidence that the "design" referred to by Apple's experts is connected in any way with the specific design features of the D'677 Patent.  Therefore, I conclude that Samsung has acceptable, noninfringing alternatives for the D'677 Patent.   Because Samsung had numerous smartphones on the market at all times that do not practice the D'677 Patent, I do not consider design around costs.

---

[811] Original Report, Schedule 17. [19.1]
[812] Original Report, Schedule 13.6. [19.1]
[813] Schedule 13.5 NT. [1.6]
[814] Davis Report, Exhibit 39.3-S and Exhibit 20-PT. [2.2]

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**                         **Schedule 13.5-NT**
**Design Around Analysis**
**Design Around Cost for Re-Designing All Icons on 13 Phones Found to Infringe the D'305 Patent**

| Product | Non-Dock Icons [a] | Dock Icons [a] | Total Number of Icons | Design Around Cost for Designing a New Icon [b] | Design Around Cost for Re-Designing All Icons [c] |
|---|---|---|---|---|---|
| Captivate | 38 | 4 | 42 | $420 | $17,640 |
| Continuum | 47 | 4 | 51 | $420 | $21,420 |
| Droid Charge | 48 | 4 | 52 | $420 | $21,840 |
| Epic 4G | 42 | 4 | 46 | $420 | $19,320 |
| Fascinate | 45 | 4 | 49 | $420 | $20,580 |
| Galaxy S 4G | 56 | 4 | 60 | $420 | $25,200 |
| Galaxy S (i9000) | 30 | 4 | 34 | $420 | $14,280 |
| Gem | 31 | 4 | 35 | $420 | $14,700 |
| Indulge | 42 | 4 | 46 | $420 | $19,320 |
| Infuse 4G | 38 | 4 | 42 | $420 | $17,640 |
| Mesmerize | 41 | 4 | 45 | $420 | $18,900 |
| Galaxy S Showcase (i500) | 41 | 4 | 45 | $420 | $18,900 |
| Vibrant | 48 | 4 | 52 | $420 | $21,840 |
| **Total Design Around Cost for Re-Designing All Icons** | | | | | **$251,580** |

<u>**Sources**</u> :

[a]   *Schedule 17-NT*

[b]   *Schedule 13.6-NT*

[c]   *= Total Number of Icons times Design Around Cost for Designing a New Icon.*

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**                      **Schedule 13.6-NT**
**Design Around Analysis**
**Design Around Cost for Designing a New Icon**

| Design Around Personnel | Approximate Hourly Rate [a] | Design Around Time (Hours) [b] | Design Around Cost |
|---|---|---|---|
| Senior Engineer | $35.00 | 0 | $0 |
| Engineer | $26.00 | 0 | $0 |
| Assistant Engineer | $23.00 | 0 | $0 |
| Senior Designer | $35.00 | 12 | $420 |
| Designer | $26.00 | 0 | $0 |
| Assistant Designer | $23.00 | 0 | $0 |
| | | | |
| Total Design Around Cost | | | $420 |

*Sources* :

[a]  *Conversation with Jong-wook Shim, April 12, 2012 (with translation assitance from Hoshin Lee); rates include full compensation (benefits / bonus, etc.).*

[b]  *Conversation with Sun-young Yi and Jaewoo Park, April 16, 2012 (with translation assistance from Hoshin Lee).*

   *Sun-young Yi estimated to take less than one day to design a new icon.*

   *Jaewoo Park indicated no engineer time would be required for an icon.*

   *Time estimates based on 6-day work weeks and 12 hours per day.*

   *Model utilizes the highest approximate hourly rate to calculate design around costs to be conservative.*

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**                                        Schedule 15.1-NT
**Samsung Financial Summary**
**Samsung STA and SEA Revenue, Quantity and Average Price Summary for the 13 Products in Second Trial**

| Product | 2010 | | | 2011 | | |
|---|---|---|---|---|---|---|
| | Revenue | Quantity | ASP | Revenue | Quantity | ASP |
| | [a] | [b] | | [c] | [d] | |
| *Smartphones* | | | | | | |
| Captivate | | | | | | |
| Continuum | | | | | | |
| Droid Charge | | | | | | |
| Epic 4G | | | | | | |
| Exhibit 4G | | | | | | |
| Galaxy Prevail | | | | | | |
| Gem | | | | | | |
| Indulge | | | | | | |
| Infuse 4G | | | | | | |
| Nexus S 4G | | | | | | |
| Replenish | | | | | | |
| Transform | | | | | | |
| **Total Smartphones** | | | | | | |
| | | | | | | |
| *Tablets* | | | | | | |
| Galaxy Tab | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| *Smartphones* | | | | | | |
| Captivate | | | | | | |
| Continuum | | | | | | |
| Droid Charge | | | | | | |
| Epic 4G | | | | | | |
| Exhibit 4G | | | | | | |
| Galaxy Prevail | | | | | | |
| Gem | | | | | | |
| Indulge | | | | | | |
| Infuse 4G | | | | | | |
| Nexus S 4G | | | | | | |
| Replenish | | | | | | |
| Transform | | | | | | |
| **Total Smartphones** | | | | | | |
| | | | | | | |
| *Tablets* | | | | | | |
| Galaxy Tab | | | | | | |

*Sources* :
[a]  Schedule 15.4-NT
[b]  Schedule 15.4-NT
[c]  Schedule 15.4-NT
[d]  Schedule 15.4-NT
[e]  Schedule 15.4-NT
[f]  Schedule 15.4-NT
[g]  = [a] + [c] + [e]
[h]  = [b] + [d] + [f]

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**                    **Schedule 15.2-NT**
**Samsung Financial Summary**
**Samsung Accused Smartphone Products with an Average Price** ████████████ **for 12**
**Smartphones**

| Product | 2010 - Q2 2012 Total | |
|---|---|---|
| | Quantity | ASP |
| | [a] | [a] |
| Exhibit 4G | | |
| Galaxy Prevail | | |
| Gem | | |
| Replenish | | |
| Transform | | |
| | | |
| Total Smartphone Products with ████████ | | |
| | | |
| [b] Total Smartphone Products | | |
| | | |
| Smartphone Products with ████████ as a Percent of Total | | |

**Note:**

[b] Products include the Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail, Gem, Indulge, Infuse 4G, Nexus S 4G, Replenish and Transform from Schedule 15.1-NT.

**Source:**

[a] Schedule 15.1-NT

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**                    **Schedule 15.3-NT**
**Samsung Financial Summary**
**Samsung STA and SEA Revenue, Quantity and Average Price Summary for Specific Months**

| Product | August - September, 2010 | | | April - October, 2011 | | |
|---|---|---|---|---|---|---|
| | Revenue | Quantity | ASP | Revenue | Quantity | ASP |
| | [a] | [a] | | [a] | [a] | |
| *Smartphones* | | | | | | |
| Captivate | | | | | | |
| Continuum | | | | | | |
| Droid Charge | | | | | | |
| Epic 4G | | | | | | |
| Exhibit 4G | | | | | | |
| Galaxy Prevail | | | | | | |
| Gem | | | | | | |
| Indulge | | | | | | |
| Infuse 4G | | | | | | |
| Nexus S 4G | | | | | | |
| Replenish | | | | | | |
| Transform | | | | | | |
| **Total Smartphones** | | | | | | |
| | | | | | | |
| *Tablets* | | | | | | |
| Galaxy Tab | | | | | | |

*Source*:
[a] *Schedule 15.4-NT*

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**                                   Schedule 15.4-NT
**Samsung Financial Summary**
**Samsung STA and SEA Revenue and Quantity Monthly Breakout**

|  |  |  |  | 2010 |  |  |  |  |  |  |  | 2011 |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Product | Source | May | June | July | August | September | October | November | December | January | February |

| [a] STA & SEA Revenue | | | |
|---|---|---|---|
| Captivate | Schedule 21.1-NT |
| Continuum | Schedule 21.2-NT |
| Droid Charge | Schedule 21.3-NT |
| Epic 4G | Schedule 21.4-NT |
| Exhibit 4G | Schedule 21.5-NT |
| Galaxy Prevail | Schedule 21.6-NT |
| Gem | Schedule 21.7-NT |
| Indulge | Schedule 21.8-NT |
| Infuse 4G | Schedule 21.9-NT |
| Nexus S 4G | Schedule 21.10-NT |
| Replenish | Schedule 21.11-NT |
| Transform | Schedule 21.12-NT |
| Galaxy Tab | Schedule 21.13-NT |
| **Total** | |

| [a] STA & SEA Units | | | |
|---|---|---|---|
| Captivate | Schedule 21.1-NT |
| Continuum | Schedule 21.2-NT |
| Droid Charge | Schedule 21.3-NT |
| Epic 4G | Schedule 21.4-NT |
| Exhibit 4G | Schedule 21.5-NT |
| Galaxy Prevail | Schedule 21.6-NT |
| Gem | Schedule 21.7-NT |
| Indulge | Schedule 21.8-NT |
| Infuse 4G | Schedule 21.9-NT |
| Nexus S 4G | Schedule 21.10-NT |
| Replenish | Schedule 21.11-NT |
| Transform | Schedule 21.12-NT |
| Galaxy Tab | Schedule 21.13-NT |
| **Total** | |

*Sources*:

[a]  Schedule 21.1-NT to Schedule 21.13-NT.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Apple Inc. v. Samsung Electronics Co.**                                                                                                      Schedule 15.4-NT
**Samsung Financial Summary**
**Samsung STA and SEA Revenue and (**

| | | 2011 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Product | Source | March | April | May | June | July | August | September | October | November | December |
| [a] STA & SEA Revenue | | | | | | | | | | | |
| Captivate | Schedule 21.1-NT | | | | | | | | | | |
| Continuum | Schedule 21.2-NT | | | | | | | | | | |
| Droid Charge | Schedule 21.3-NT | | | | | | | | | | |
| Epic 4G | Schedule 21.4-NT | | | | | | | | | | |
| Exhibit 4G | Schedule 21.5-NT | | | | | | | | | | |
| Galaxy Prevail | Schedule 21.6-NT | | | | | | | | | | |
| Gem | Schedule 21.7-NT | | | | | | | | | | |
| Indulge | Schedule 21.8-NT | | | | | | | | | | |
| Infuse 4G | Schedule 21.9-NT | | | | | | | | | | |
| Nexus S 4G | Schedule 21.10-NT | | | | | | | | | | |
| Replenish | Schedule 21.11-NT | | | | | | | | | | |
| Transform | Schedule 21.12-NT | | | | | | | | | | |
| Galaxy Tab | Schedule 21.13-NT | | | | | | | | | | |
| **Total** | | | | | | | | | | | |
| | | | | | | | | | | | |
| [a] STA & SEA Units | | | | | | | | | | | |
| Captivate | Schedule 21.1-NT | | | | | | | | | | |
| Continuum | Schedule 21.2-NT | | | | | | | | | | |
| Droid Charge | Schedule 21.3-NT | | | | | | | | | | |
| Epic 4G | Schedule 21.4-NT | | | | | | | | | | |
| Exhibit 4G | Schedule 21.5-NT | | | | | | | | | | |
| Galaxy Prevail | Schedule 21.6-NT | | | | | | | | | | |
| Gem | Schedule 21.7-NT | | | | | | | | | | |
| Indulge | Schedule 21.8-NT | | | | | | | | | | |
| Infuse 4G | Schedule 21.9-NT | | | | | | | | | | |
| Nexus S 4G | Schedule 21.10-NT | | | | | | | | | | |
| Replenish | Schedule 21.11-NT | | | | | | | | | | |
| Transform | Schedule 21.12-NT | | | | | | | | | | |
| Galaxy Tab | Schedule 21.13-NT | | | | | | | | | | |
| **Total** | | | | | | | | | | | |

***Sources***:
[a] Schedule 21.1-NT to Schedule 21.13-NT.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Apple Inc. v. Samsung Electronics Co.**                                                                                              Schedule 15.4-NT
**Samsung Financial Summary**
**Samsung STA and SEA Revenue and C**

| | | 2012 | | | | | | | | Q1 - Q2 2012 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Product | Source | January | February | March | April | May | June | 2010 Total | 2011 Total | Total | Total |
| [a] **STA & SEA Revenue** | | | | | | | | | | | |
| Captivate | Schedule 21.1-NT | | | | | | | | | | |
| Continuum | Schedule 21.2-NT | | | | | | | | | | |
| Droid Charge | Schedule 21.3-NT | | | | | | | | | | |
| Epic 4G | Schedule 21.4-NT | | | | | | | | | | |
| Exhibit 4G | Schedule 21.5-NT | | | | | | | | | | |
| Galaxy Prevail | Schedule 21.6-NT | | | | | | | | | | |
| Gem | Schedule 21.7-NT | | | | | | | | | | |
| Indulge | Schedule 21.8-NT | | | | | | | | | | |
| Infuse 4G | Schedule 21.9-NT | | | | | | | | | | |
| Nexus S 4G | Schedule 21.10-NT | | | | | | | | | | |
| Replenish | Schedule 21.11-NT | | | | | | | | | | |
| Transform | Schedule 21.12-NT | | | | | | | | | | |
| Galaxy Tab | Schedule 21.13-NT | | | | | | | | | | |
| **Total** | | | | | | | | | | | |
| | | | | | | | | | | | |
| [a] **STA & SEA Units** | | | | | | | | | | | |
| Captivate | Schedule 21.1-NT | | | | | | | | | | |
| Continuum | Schedule 21.2-NT | | | | | | | | | | |
| Droid Charge | Schedule 21.3-NT | | | | | | | | | | |
| Epic 4G | Schedule 21.4-NT | | | | | | | | | | |
| Exhibit 4G | Schedule 21.5-NT | | | | | | | | | | |
| Galaxy Prevail | Schedule 21.6-NT | | | | | | | | | | |
| Gem | Schedule 21.7-NT | | | | | | | | | | |
| Indulge | Schedule 21.8-NT | | | | | | | | | | |
| Infuse 4G | Schedule 21.9-NT | | | | | | | | | | |
| Nexus S 4G | Schedule 21.10-NT | | | | | | | | | | |
| Replenish | Schedule 21.11-NT | | | | | | | | | | |
| Transform | Schedule 21.12-NT | | | | | | | | | | |
| Galaxy Tab | Schedule 21.13-NT | | | | | | | | | | |
| **Total** | | | | | | | | | | | |

*Sources*:
[a] *Schedule 21.1-NT to Schedule 21.13-NT.*

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Apple Inc. v. Samsung Electronics Co., Ltd., et al.**　　　　**Schedule 17-NT**
**Icons for Phones Accused Analysis**
**Number of Icons for Phones Found to Infringe the D'305 Patent**

| | Accused Products | Non-Dock Icons | Dock Icons |
|---|---|---|---|
| [1] | Captivate | 38 | 4 |
| [2] | Continuum | 47 | 4 |
| [3] | Droid Charge | 48 | 4 |
| [4] | Epic 4G | 42 | 4 |
| [5] | Fascinate | 45 | 4 |
| [6] | Galaxy S 4G | 56 | 4 |
| [7] | Galaxy S (i9000) | 30 | 4 |
| [8] | Gem | 31 | 4 |
| [9] | Indulge | 42 | 4 |
| [10] | Infuse 4G | 38 | 4 |
| [11] | Mesmerize | 41 | 4 |
| [12] | Galaxy S Showcase (i500) | 41 | 4 |
| [13] | Vibrant | 48 | 4 |

***Sources***:

[1] *Expert Report of Susan Kare, March 22, 2012, Exhibit 15. [15.51]*
[2] *Expert Report of Susan Kare, March 22, 2012, Exhibit 16. [15.51]*
[3] *Expert Report of Susan Kare, March 22, 2012, Exhibit 17. [15.51]*
[4] *Expert Report of Susan Kare, March 22, 2012, Exhibit 18. [15.51]*
[5] *Expert Report of Susan Kare, March 22, 2012, Exhibit 19. [15.51]*
[6] *Expert Report of Susan Kare, March 22, 2012, Exhibit 20. [15.51]*
[7] *Expert Report of Susan Kare, March 22, 2012, Exhibit 21. [15.51]*
[8] *Expert Report of Susan Kare, March 22, 2012, Exhibit 22. [15.51]*
[9] *Expert Report of Susan Kare, March 22, 2012, Exhibit 23. [15.51]*
[10] *Expert Report of Susan Kare, March 22, 2012, Exhibit 24. [15.51]*
[11] *Expert Report of Susan Kare, March 22, 2012, Exhibit 25. [15.51]*
[12] *Expert Report of Susan Kare, March 22, 2012, Exhibit 26. [15.51]*
[13] *Expert Report of Susan Kare, March 22, 2012, Exhibit 27. [15.51]*