QUINN EMANUEL URQUHART &
SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST**<br><br>Date: March 24, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

III.    ARGUMENT ......................................................................................................... 10

    A.  Apple's Claims For Supplemental Damages On Alternative Designs Should Be Denied Because Apple Concedes It Cannot Establish Infringement................. 10

        1.  The Court's Orders On Supplemental Damages Allow Compensation Only For Infringing Sales.................................................. 10

        2.  Apple Makes No Attempt To Carry Its Burden To Prove That Samsung's Alternative Designs Infringe..................................................... 11

    B.  Issue Preclusion Cannot Apply To Samsung's Alternative Designs. .................... 13

    C.  A Proper Calculation Of Supplemental Damages Applies The Court's Methodology To Sales That Lack Samsung's Design Arounds............................... 20

        1.  Galaxy S II Skyrocket ............................................................................... 21

        2.  Galaxy S II Epic 4G Touch ....................................................................... 21

        3.  Galaxy S II (T-Mobile) ............................................................................. 22

        4.  Droid Charge ............................................................................................. 24

        5.  Galaxy Prevail .......................................................................................... 25

    D.  Calculation Of Prejudgment Interest On Supplemental Damages ......................... 25

IV.    CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008) ................................................................................................. 19

*Amstar Corp. v. Envirotech Corp.*,
   823 F.2d 1538 (Fed. Cir. 1987) ................................................................................................. 11

*Apple Inc. v. Samsung Elecs. Co.*,
   727 F.3d 1214 (Fed. Cir. 2013) ................................................................................................. 16

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 14-1335 (Fed. Cir.) ......................................................................................................... 7, 8

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 12-1600 (Fed. Cir.) ............................................................................................................. 16

*Arizona v. California*,
   460 U.S. 605 (1983) ................................................................................................................... 13

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971) ................................................................................................................... 20

*Bodenstab v. County of Cook*,
   569 F.3d 651 (7th Cir. 2009) ..................................................................................................... 13

*Brain Life, LLC v. Elekta Inc.*,
   746 F.3d 1045 (Fed. Cir. 2014) ....................................................................................... 13, 14, 19

*Calico Brand, Inc. v. Ameritek Imports, Inc.*,
   527 F. App'x 987 (Fed. Cir. 2013) ............................................................................................ 16

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002) ................................................................................................. 23

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
   803 F.3d 620 (Fed. Cir. 2015) ....................................................................................... 11, 13, 19, 20

*EON Corp IP Holdings LLC v. Apple Inc.*,
   No. 14-cv-5511-WHO, 2015 WL 4914984 (N.D. Cal. Aug. 17, 2015) ..................................... 19

*Foster v. Hallco Mfg. Co.*,
   947 F.2d 469 (Fed. Cir. 1991) ................................................................................................... 19

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994) ............................................................................................... 13, 14

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
   45 F.3d 1550 (Fed. Cir. 1995) ................................................................................................... 17

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   609 F. Supp. 2d 951 (N.D. Cal. 2009) ....................................................................................9

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005) .............................................................................................17

*Joyal Products, Inc. v. Johnson Elec. N. Am., Inc.*,
   No. 04–5172 (JAP), 2008 WL 4630500 (D.N.J. Oct. 17, 2008)...........................................17

*Kamilche Co. v. United States*,
   53 F.3d 1059 (9th Cir. 1995) ................................................................................................19

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
   275 F.3d 762 (9th Cir. 2001)................................................................................................19

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   134 S. Ct. 843 (2014) ...........................................................................................................19

*Minemyer v. R-Boc Representatives, Inc.*,
   No. 07 C 1763, 2012 WL 2423102 (N.D. Ill. Jun. 26, 2012)......................................11, 12, 13

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .............................................................................................................16

*Paulo v. Holder*,
   669 F.3d 911 (9th Cir. 2011) ................................................................................................19

*Quern v. Jordan*,
   440 U.S. 332 (1979) .............................................................................................................19

*S. Cal. Retail Clerks Union & Food Emp'rs Joint Pension Tr. Fund v. Bjorklund*,
   728 F.2d 1262 (9th Cir. 1984)..............................................................................................18

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985).............................................................................................20

*Syndia Corp. v. Gillette Co.*,
   No. 01 C 2485, 2002 WL 2012473 (N.D. Ill. Aug. 30, 2002) ..............................................11

*Timber Prods. Co. v. United States*,
   515 F.3d 1213 (Fed. Cir. 2008).............................................................................................16

*Tivo Inc. v. Echostar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011)..........................................................................................12, 20

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
   No. 09-157-RGA, 2013 WL 6118447 (D. Del. Nov. 20, 2013) ............................................12

*Young Eng'rs, Inc. v. United States ITC*,
   721 F.2d 1305 (Fed. Cir. 1983)............................................................................................19

1

## **Miscellaneous**

Manual of Patent Examining Procedure § 608.02(IX)....................................................................3

Restatement (Second) of Judgments § 27(e) (1982) .......................................................................13

# I.     INTRODUCTION

Based on the jury's verdicts and the prior rulings in this case, Apple is entitled to at most $24,662,650 in supplemental damages.    The verdict form asked the jury to decide infringement for specific devices in evidence, based on the specific accused features Apple presented in its infringement case.    Apple identifies no authority to justify its attempt to recover over $150,000,000 in additional supplemental damages on different products using alternative designs that were not evaluated by the jury and that Apple never proved infringe.

Apple seeks a windfall recovery based on an unprecedented and meritless legal theory of issue preclusion that conflicts with Federal Circuit law and the facts of this case.    But Apple falls far short of proving the necessary elements of issue preclusion.    It is undisputed that most of Samsung's alternative designs were never presented to the jury, and those that were (for the '381 and D'305) were not accused and not found to infringe.    In particular, most of Samsung's post-verdict sales used a white or a steel gray face rather than the black face claimed in the D'677 patent and relied upon by Apple to argue infringement and validity.    Yet Apple still seeks over $100,000,000 on non-infringing white-faced phones—a color configuration Apple had every opportunity to accuse, but instead argued was a non-infringing alternative—and over $50,000,000 for steel gray phones, a non-infringing configuration admittedly not released until after trial.



| JX1033 (trial exhibit) black-faced configuration | Anderson Decl., ¶ 9, Ex. 4 white-faced configuration | Anderson Decl., ¶ 10, Ex. 5 steel-gray-faced configuration |
| --- | --- | --- |

1   Federal law is clear that the jury's findings of infringement are specific to the accused

2   features and functionalities presented by Apple at trial.   Seeking to distort the scope of the jury's

3   verdicts, Apple ignores the relevant trial evidence of the phones and accused features presented to

4   the jury, and instead relies heavily on JX1500, a high level summary of sales data.   But JX1500

5   does not contain any of the product-specific information which Apple now belatedly seeks to

6   introduce into the record.   The Federal Circuit already ruled in this case that the detailed data

7   underlying the party's summary trial exhibits (including JX1500) "were not introduced at trial and

8   thus did not form the basis for the jury's damages award."   Consistent with this holding, Apple

9   fails to point to evidence in the record; instead it relies on new, post-hoc attorney argument and

10  documents never in evidence, which Apple deliberately never explored in deposition or trial

11  testimony.   As for the unit totals in JX1500, those included units Apple accused based on trade

12  dress and the D'087 patent, where Apple's claims were not limited to black-faced phones.   For

13  that reason, JX1500 totaled the sales of black-faced and white-faced phones—although Apple

14  identifies no evidence or testimony to suggest it informed the jury of that.   And, it is undisputed

15  that Samsung's steel-gray-faced phones were not sold until after the verdict and not summarized in

16  JX1500.   Apple's meritless and overreaching motion should be denied as to all of Samsung's

17  alternative designs.

18  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

19  **A.      Apple Argued That White- And Silver-Faced Phones Do Not Infringe The D'677**

20  **Patent During Injunction Proceedings.**   From the earliest stages of this litigation, Apple has

21  admitted that white is a non-infringing alternative to the D'677 patent.   In July 2011, Apple

22  sought a preliminary injunction based in part on D'677.   (Dkt. 86.)   When Samsung challenged

23  its validity on the basis that the color black was functional, Apple defended it with testimony from

24  its hardware design expert, Peter Bressler, who said that design alternatives existed using the color

25  white instead, and he expressly relied on the white version of Samsung's Galaxy S II i9100 phone

26  as an example of an alternative, non-infringing design.[1]   (Dkt. 279 ¶ 87; Dkt. 281-10.)   Bressler

27  _____

28  [1]      Apple accused the black-faced S II i9100 of infringing the D'677.   (Dkt. 1566-2 at 27.)

1   also opined that other non-infringing alternatives for D'677 were on the market in 2006 that "were

2   not black" including "many other smartphones in 2006 [that] were silver or chrome."   (Dkt. 279

3   ¶¶ 64, 92.)   In its order, the Court agreed that D'677 claimed a black front face and found the

4   accused products likely met that limitation because they also all had black front faces.   (Dkt. 452

5   at 21-27 & n.14.)

6      **B.   Apple Limited The Scope Of The D'677 Patent To Phones With A Black Face**

7   **During Claim Construction.**    Apple's claim construction briefing again put forward non-black

8   versions of Samsung's products as non-infringing alternatives for D'677.    Specifically, Apple

9   relied on a new report from Bressler stating that "a smartphone need not have a black surface like

10  the D'677 patent."   (Dkt. 1140-31 at 30.)   As examples, Bressler noted that "Samsung's Galaxy

11  S II line of phones comes in white versions" and he included an image of one, a white Galaxy S II

12  Epic 4G Touch.   (*Id.* at 31.)   The report stated that "a gray or silver colored surface" was

13  another alternative.   (*Id.*)

14     At the subsequent claim construction hearing, Apple argued to the Court that for D'677:

15     where the front face is shown in black, you are narrowing that claim to an
       electronic device by saying whatever else is true of the front face, ***it must be black***.

16     ***That's a limitation of this claim***.   In the second patent [D'087], it's identical
       except that the front face is not shown black, there is no claim as to what color the

17     front face is, and a phone – let's say we're talking about smartphones – a device
       that met the claim otherwise, no matter what color it was, would meet that second

18     claim.   ***It wouldn't meet the first claim unless the front face was black.***

19  (July 24, 2012 Hr'g Tr. at 14:21-15:8 (emphasis added).)   Indeed, the PTO requires different

20  shading to designate other colors, including gray or silver.   *See* MPEP § 608.02(IX).

21     **C.   Apple Deliberately Chose Not To Accuse Existing Alternative Designs In Its**

22  **Infringement Contentions, Expert Reports, Or At Trial.   D'677:**   By the end of 2011,

23  Samsung had already begun selling white versions of all three Galaxy S II phones at issue here.

24  (Dkt. 3307 at 4 (Dec. 13, 2011 for T-Mobile; Nov. 23, 2011 for Skyrocket; Dec. 14, 2011 for Epic

25  4G Touch).)   Nevertheless, when Apple set forth its infringement contentions for the D'677

26  patent in March 2012, it accused ***only the black-faced versions*** of those and other phones.   (Dkt.

27  974-2 at 111-22.)   Bressler's subsequent expert report also argued infringement only for the

28  black-faced products.   (Dkt. 1384-16 at 89-90 ("Just like the D'677 Patent, Samsung's Galaxy S

1  II (Epic 4G Touch) has a flat, translucent, **black-colored**, rectangular front surface with evenly

2  curved corners.") (emphasis added); *id.* at 91-92, 95-96 (same for S II (T-Mobile) and Skyrocket).)

3  At trial, Apple continued to accuse only phones with black front faces.   (*See* Dkt. 1889 at

4  9-10 (JX1033 (S II (T-Mobile)), JX1034 (Epic 4G Touch); JX1035 (Skyrocket)); Dkt. 1566-2

5  (Apple's exhibit PX7 showing images of the black-faced products it was accusing).)   Describing

6  D'677, Bressler told the jury "you can see from the shading that what's being claimed in this

7  design is the front face of an electronic device that is black in color."   (Dkt. 1611 at 1014:2-8.)

8  He then stated the Galaxy S 4G phone infringed in part because it had a "black" front face.   (*Id.*

9  at 1050:13-24.)   He applied the same reasoning to the other D'677 accused exhibits.   (*Id.* at

10  1054:5-1055:25.)

11  **D'305:**   Apple accused only Samsung products having applications screens with

12  consistent rounded square icons, and never accused existing phones already using Samsung's

13  alternative design.   (Dkt. 974-2 at 144-51.)   Apple's user interface design expert, Susan Kare,

14  stated in her report that the D'305 accused phones, including the Droid Charge, were substantially

15  the same as D'305 because of "the consistent use of rounded, square-shaped icons in a grid

16  layout."   (Dkt. 927, Ex. 23 (submitted under seal on May 17, 2012) at 4, 42.)   Neither Apple's

17  infringement contentions nor its expert's report accused Samsung phones with updated icon

18  menus that omitted the consistent rounded square icon shapes, such as the Galaxy S II line of

19  phones.   (Dkt. 974-2 at 73-77 (accusing the S II display screens of trademark and trade dress

20  infringement, but not for D'305).)   Software incorporating the unaccused, alternative display

21  screen was made available for download onto Droid Charges just weeks after Apple's

22  infringement contentions were served and Droid Charges incorporating the alternative design were

23  sold starting the next month, April 2012.   (Dkt. 3307 at 3.)   Apple did not seek to amend its

24  contentions to include the updated Droid Charge.

25  At trial, Apple accused only the old version of the Droid Charge with consistent rounded

26  square icons.   (JX1025; PX7.7.)   Apple's expert Kare testified that having a "regular grid of

27  icons that are square with rounded corners" was an integral part of the overall impression of the

28  D'305 design (Dkt. 1612 at 1367:12-13) and that the accused Samsung designs, including the

-4-                        Case No. 11-cv-01846-LHK

1   Droid Charge, were infringing because they each had a grid of "icons that are square with rounded

2   corners" (*id.* at 1375:5-6).   Even though other Samsung devices incorporating the updated design

3   were in evidence and accused for other patents (*see* PX7.24-.32 (showing the unaccused Galaxy S

4   II display screens)), Apple never accused those alternative display screens of infringing D'305 nor

5   was the jury asked to evaluate them for infringement as to D'305 (Dkt. 1931 at 7).

6        **'163:**   Apple's infringement contentions identified only applications having a two-step

7   process for enlarging and substantially centering a first box of content and then substantially

8   centering a second box of content within a structured electronic document.   (Anderson Decl., Ex.

9   9 at 41 (Claim 50).)   No contentions were made against Samsung's alternative design lacking the

10  second step of centering a second box.   (*Id.*)   This alternative design was available for download

11  and incorporated into certain products prior to trial.   (Dkt. 3307 at 2-3.)   At trial, however,

12  Apple accused only the old design and its expert testified that every accused exhibit, including the

13  S II (T-Mobile), Droid Charge, and Prevail, each incorporated the second-step limitation.   (Dkt.

14  1695 at 1840:2-1841:23.)   Apple never asked the jury to evaluate infringement of the '163 where

15  the function of centering a second box was absent.   (*Id.*)   At the 2013 damages retrial, Apple's

16  expert admitted the alternative design does not infringe.   (Dkt 2739 at 460:22-463:7.)

17       **'381:**   Apple's infringement contentions identified only products having a snap or bounce

18  back feature.   (Anderson Decl., Ex. 8 at 21-26 (Claim 19).)   No contentions were made against

19  Samsung's alternative design using a blue or orange glow instead of bounce back.   Apple's

20  expert, Dr. Ravin Balakrishnan, agreed in his expert report that "the use of the 'blue glow' effect is

21  an alternative to using the features of the '381 patent."   (Dkt. 3307 at 6.)   He admitted this again

22  at his deposition.   (Dkt. 1314-10 at 62:7-11.)   At trial, he testified that every accused exhibit,

23  including the Droid Charge and Prevail, had the bounce back limitation.   (Dkt. 1695 at 1751:11-

24  1753:8.)   A phone having the blue glow alternative was also in evidence, the Galaxy S II (T-

25  Mobile) (JX1033), and Apple did not accuse it of infringing the '381, having earlier expressly

26  conceded it had chosen not to do so.   (June 19, 2012 Hr'g, Dkt. 1163 at 22:15-19.)   Apple never

27  asked the jury to evaluate infringement of the '381 where a blue or orange glow was used instead

28  of a bounce back function.   (Dkt. 1695 at 1751:11-1753:8.)

1    **'915:**   Apple's infringement contentions identified only products that had software that

2    executed either scrolling code or scaling code by distinguishing between a single touch scroll and

3    a two-or-more touch gesture.   (Anderson Decl., Ex. 10 at 10-14 (Claim 8).)    No contentions

4    were made against any alternative design that avoided distinguishing between a single touch scroll

5    and a two-or-more touch gesture by processing events independently for the scroll and scaling

6    code.[2]   (*Id.*)   At trial, Apple's expert testified that every accused exhibit, including the Galaxy S

7    II (T-Mobile), Droid Charge, and Prevail, had the accused limitation.   (Dkt. 1695 at 1818:23-

8    1819:11; 1820:18-1826:5; 1829:12-1830:21.)   Apple never asked the jury to evaluate

9    infringement of the '915 for a product that did not distinguish between a single touch scroll and a

10   two-or-more touch gesture.   (*Id.*)

11   Samsung's alternative designs for the '381 and D'305 were presented to the jury, but not

12   accused and not found to infringe.   The other alternative designs, white-faced and steel-gray

13   faced phones, and the '163 and '915 alternatives, were not.

14   **D.    The Jury Instructions And Verdict Forms Limited The Issues Of Infringement**

15   **And Damages To The Devices In Evidence.**    The Court instructed the jury that D'677 included

16   the designation for black.   (Dkt. 1903, Inst. No. 43.)    The Court also instructed for design

17   patents that "Apple bears the burden of proving by a preponderance of the evidence that ***each***

18   ***device*** infringes each separate patent.    Therefore, you, the jury, must determine infringement for

19   each patent separately, considering ***each individual device*** separately."    (*Id.*, Inst. No. 45

20   (emphasis added); *see also id.*, Inst. No. 23 (utility patents).)    For all patents, the verdict form

21   asked the jury to decide infringement for the specific physical devices admitted into evidence with

22   an exhibit number.   (Dkt. 1931 at 2-4, 6-7.)    For the D'677 phones here, for example:

23   Galaxy S II (T-Mobile) (JX 1033)

24   Galaxy S II (Epic 4G Touch) (JX 1034)

25   Galaxy S II (Skyrocket) (JX 1035)

26

27      [2]    Samsung did not have the alternative design to the '915 patent used in the products here
until after the verdict.   (Dkt. 3307 at 14; 3316 at 7 n.4.)

28

1    Likewise for damages, the verdict forms for both the 2012 and 2013 trials asked the juries

2    to award damages for the specific devices in evidence, identified by joint exhibit numbers.   (Dkt.

3    1931 at 16; Dkt. 2822 at 2.)   For design patent damages, the jury was authorized only to award

4    infringer's profits "attributable to the ***infringing*** products."   (Dkt. 1903, Inst. No. 54 (emphasis

5    added).)   For utility patents, the Court instructed the jury that it must "determine the amount of

6    money damages to be awarded to the patent holder to compensate it for the ***infringement***."   (*Id.*,

7    Inst. No. 35 (emphasis added).)   It also instructed that "Apple seeks to recover lost profits for

8    some of Samsung's sales of allegedly ***infringing*** products, and a reasonable royalty on the rest of

9    Samsung's allegedly ***infringing*** sales."   (*Id.*, Inst. No. 36 (emphasis added).)

10   **E.    Throughout Post-Trial Motions And Appeal, Apple Relied On Its Trial Theories**

11   **Of Infringement, Which Do Not Cover Samsung's Alternative Designs.**   After trial, Samsung

12   filed JMOL motions challenging the jury's infringement findings.   (Dkt. 2013 at 4-7, 13-15.)

13   For D'677 and D'305, Apple responded that the jury's infringement verdicts were supported by its

14   experts' testimonies about the similarity of the phones in evidence and the patents.   (Dkt. 2050 at

15   5 (citing Bressler and Kare).)   The Court upheld the jury's findings based on the actual physical

16   exhibits and the expert testimony cited by Apple, ruling that "[t]he phones themselves, along with

17   the expert testimony, constitute substantial evidence in the record to support the jury's finding of

18   infringement."   (Dkt. 2220 at 3.)

19   On appeal, Apple defended the Court's rulings, noting first for D'677 that the patent

20   "claims the iPhone's distinctive front face, notably the combination of its form factor ..., ***black***

21   ***color***, speaker slot, and reflective or transparent surface."   *Apple Inc. v. Samsung Elecs. Co.*, No.

22   14-1335 (Fed. Cir.) (Apple Response Brief, ECF No. 77 at 7) (emphasis added).   Apple then

23   argued that all the accused Samsung devices in evidence were "black" like the patent, which the

24   jurors could observe "for themselves by comparing the D'677 patent's figures with Samsung's

25   phones, which they had in the jury room."   *Id.* at 33-34.   For D'305, Apple argued that it

26   "claims the design of the iPhone's graphical user interface, including the arrangement of rows of

27   colorful icons in square containers with rounded corners."   *Id.* at 9.   Apple then argued that all

28   the devices in evidence had "display screens that produced substantially the same 'overall visual

1    impression' as the D'305 patent" due to their grids of "colorful icons that are square with rounded

2    corners."   *Id.* at 41.   Again, Apple noted that the jury could see this by looking at the actual

3    accused devices in evidence.   *Id.* at 41-42 (citing the physical trial exhibits).

4           For all three utility patents, Apple argued post-trial that the infringement verdicts should

5    stand because the jury saw videos of each accused product performing the claim steps, Apple's

6    experts testified to having tested the functionality on all the accused devices, and the jurors had all

7    the devices to test for themselves.   (Dkt. 2050 at 11-13.)   The Court upheld the verdicts based

8    on this exhibit-specific evidence, ruling that the "the jurors entered the jury room with both an

9    understanding of how the accused UI features were alleged to work *and* actual working products,

10   which the jurors could test to confirm whether the devices infringed the UI utility patents."   (Dkt.

11   2220 at 15; *id.* ("[T]he combination of the testimony and the devices themselves constituted

12   substantial evidence in the record to support a finding of infringement.").)

13          **F.   Apple Requested Supplemental Damages Only For Infringing Sales, And The**

14   **Court's Order Encompassed Only Infringing, Post-Verdict Sales.**   After the 2012 trial, Apple

15   moved for supplemental damages, asking the Court to award them immediately, basing the

16   anticipated number of post-verdict infringing sales on extrapolations from data in JX1500

17   regarding *pre*-verdict sales.   (Dkt. 1989 at 27-29.)   Apple said that it sought only to "estimate

18   the number of Samsung's ***infringing*** sales."   (*Id.* at 28 (emphasis added).)   Samsung opposed

19   Apple's method because it impermissibly "fail[ed] to take into account non-infringing sales and

20   design-arounds" that were now apparent from the jury's verdict.   (Dkt. 2053 (under seal version)

21   at 28.)   Samsung provided specific details about the alternative designs that were being sold post-

22   verdict.   (*Id.* (citing declarations from experts and Samsung representatives at Dkts. 2054-2,

23   2054-5, 2055, 2057, 2060)).)   Apple ***conceded*** that only infringing sales should be included,

24   stating that Samsung "wrongly criticizes Apple for failing to consider the effect of new products

25   or supposedly non-infringing variations of the eight [supplemental damages] products."   (Dkt.

26   2132 at 19.)   Apple argued instead that it had accounted for such "variations" by taking "into

27   account the likelihood of reduced demand, and thus reduced sales."   (*Id.*)   In its March 1, 2013

28   order, the Court ruled that Apple was only "seek[ing] an award of supplemental damages for

1  infringing sales not considered by the jury" and that such damages were justified as

2  "compensation for every infringing sale."   (Dkt. 2271 at 2.)

3       The Court then explained it would apply a per-unit rate to qualifying post-verdict

4  infringing units (*id*. at 4-6), which can be represented by the formula:

5    (A) *per-unit rate*   x    (B) *# of post-verdict infringing units*   =   (C) *supplemental damages*

6  As to (A), the Court stated that it was only permissible to use such a rate if "there is an 'absence of

7  any meaningful distinction between pre-verdict and post-verdict infringement.'"   (*Id.* at 5

8  (quoting *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 965 (N.D. Cal. 2009)).)

9  As to (B), the Court ruled that to properly compensate "for ***infringing*** sales not considered by the

10  jury" (*id*. at 2 (emphasis added)), it would wait for "evidence of the actual number of sales" (*id.* at

11  5-6).   Despite Apple's assurances that its proposed method would not inject non-infringing sales

12  into (B), the Court still sided with Samsung in rejecting Apple's attempt to use JX1500 to

13  determine the number of units available for supplemental damages.   (*Id.* at 5-6.)   The Court

14  neither set the rates for (A), nor the number of infringing units for (B).   (*Id.*)

15       Shortly after the March 1 order, Apple acknowledged that the Court had "held that an

16  award of supplemental damages is 'necessary' to provide 'compensation for every ***infringing***

17  sale.'"   (Dkt. 2288 at 14 (quoting Dkt. 2271 at 2) (emphasis added).)   Apple nevertheless moved

18  for reconsideration of the order and attempted to include sales of an unadjudicated version of a

19  Galaxy S II AT&T phone in the Court's supplemental damages calculus, claiming the phone was

20  identical to an adjudicated version.   (Dkt. 2306 at 3 n.4.)   The Court denied the motion, stating

21  that it would not "allow any new products to be swept into the supplemental damages issue" and

22  that "the supplemental damages issue deals with the products that were the subject of the trial."

23  (Apr. 29, 2013 Hr'g, Dkt. 2320 at 46:2-6.)

24       After the 2013 damages retrial, Apple asked the Court to again revisit its order on

25  supplemental damages, this time trying to get the Court to fill in Factor (B) using post-verdict

26  sales data from the 630 case.   (Dkt. 2876 at 7.)   Again Samsung objected, showing that the 630

27  data also failed to account for non-infringing alternatives relevant to this case.   (Dkt. 2912 at 10

28  (citing unrebutted evidence that the alternative designs were non-infringing).)   In its reply brief

1   (Dkt. 2919-3 at 7), Apple argued for the use of the 630 sales data by ignoring the unambiguous

2   statements in the Court's order on "infringing" post-verdict sales.    (Dkt. 2271 at 2).    The Court

3   denied Apple's attempt to revisit its decision "to award supplemental damages for *infringing*

4   products sold after August 25, 2012," which the Court made clear was what Apple itself had

5   previously requested.    (Dkt. 2947 at 3 (emphasis added).)    Apple never appealed the denial of

6   its attempt to include non-infringing units in supplemental damages.

7           **G.    Apple Does Not Contend That Any Of Samsung's Alternative Designs Infringe.**

8           Over the last three years, Samsung has provided substantial evidence, including

9   declarations from experts, identifying its alternative designs and the reasons they do no infringe.

10  The D'677 is not infringed by phones using white and steel gray front faces; the D'305 is not

11  infringed where display screens use non-square icons; and for the utility patents, there is no

12  infringement where the accused functionalities are removed:    for '163 no centering of a second

13  box after enlarging a first, for '381 using blue or orange glow instead of a bounce back, and for

14  '915 using separate processing of scaling and scrolling code.    (*See* Dkt. 3307 through 3307-4;

15  2054-2; 2054-5; 2057; 2183-2; 2915-10; and 2915-17 through 2915-23.)    Samsung provided

16  physical samples of all the alternative designs to Apple for its review (Dkt. 3307 at 2), and submits

17  for the Court images and physical samples of these alternative designs.    (Anderson Decl., ¶¶ 4-

18  13, Exs. 1-7.)    Apple has never attempted to prove these alternatives infringe its patents, and it

19  has given up on proving infringement.    (Dec. 10, 2015 Hr'g Tr. at 21:8-9 (Dkt. 3331) (Apple:

20  "We are not going to ask you to rule whether or not these new design-arounds in fact infringe").)

21  **III.    ARGUMENT**

22          **A.    Apple's Claims For Supplemental Damages On Alternative Designs Should Be
                Denied Because Apple Concedes It Cannot Establish Infringement.**

23
                **1.    The Court's Orders On Supplemental Damages Allow Compensation
24                  Only For Infringing Sales.**

25          This Court's March 1, 2013 order held that supplemental damages would be awarded on

26  infringing, post-verdict sales, which was the only relief sought by Apple:    "Apple seeks an award

27  of supplemental damages for *infringing* sales not considered by the jury."    (Dkt. 2271 at 2

28  (emphasis added).)    The Court granted the request on the basis that "Section 284 requires that the

1    Court award compensation for every *infringing* sale" "where the jury does not make an award."

2    (*Id.* (emphasis added).)    The Court's subsequent discussion of methodology was based on those

3    fundamental principles, which Apple ignores.    Contrary to Apple's suggestion, when the Court

4    stated several pages later that it would wait for the exact "number of post-verdict sales" to plug

5    into its formula, it was not contradicting its finding that supplemental damages are justified only to

6    compensate for *infringing* sales.    (*Id.* at 5.)    This conclusion is made even more clear by the

7    history of the briefing behind supplemental damages, described in detail above, where Apple was

8    repeatedly denied in attempting to include non-infringing sales.    *See supra* pp. 8-10.    Samsung

9    had no reason (or opportunity) to object to the Court's proposed methodology on this basis

10   because the Court never stated that it would or could compensate Apple for non-infringing sales.

11   Apple's "law of the case" argument is meritless.

12              **2.    Apple Makes No Attempt To Carry Its Burden To Prove That
                       Samsung's Alternative Designs Infringe.**

13   The great majority of Samsung's sales after the verdict incorporated alternative designs

14   that avoid Apple's patents.    It is undisputed that Apple has the affirmative burden to prove

15   infringement for every sale it seeks to include in supplemental damages.    Apple's lead case

16   unequivocally holds that "[i]n order to prevail on a claim for supplemental damages, a patentee

17   must establish infringement for the supplemental damages period."    *Dow Chem. Co. v. Nova*

18   *Chems. Corp. (Can.)*, 803 F.3d 620, 626 (Fed. Cir. 2015) (cited by Mot. at 3); *see also Amstar*

19   *Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1545 (Fed. Cir. 1987) ("During an accounting, as

20   during the liability trial, a patentee must prove infringement").    Apple bears this burden anew in

21   the supplemental damages phase because infringement is a continuing tort and any requests for

22   damages beyond those considered by the jury are based on new acts of alleged infringement that

23   must be decided as new claims.    *Dow Chem*, 803 F.3d at 626; *see also Syndia Corp. v. Gillette*

24   *Co.*, No. 01 C 2485, 2002 WL 2012473, at *2-5 (N.D. Ill. Aug. 30, 2002) (holding patentee not

25   entitled to discovery or supplemental damages for sales of redesigned products).

26   Even for alternative designs that came out prior to trial, the burden is still on Apple to

27   prove infringement.    For example, in *Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763,

28

1   2012 WL 2423102 at *2-3 (N.D. Ill. Jun. 26, 2012), the court denied an injunction and

2   supplemental damages on a redesign that occurred during discovery because "the plaintiff failed to

3   accuse the redesigned couplers of infringement in his infringement contentions and never sought

4   to amend those contentions at any point in these proceedings," thus "the jury certainly did not find

5   the redesigned couplers infringing" as "they were not even accused products at the trial."   *Id.* at

6   *2 ("[T]he jury in this case was never asked to make the necessary, specific determinations about

7   the redesigned coupler.")    Here, Apple deliberately chose not to accuse the white-faced phones of

8   infringing the D'677, or Samsung's alternatives to the '381 and '163, and cannot claim

9   supplemental damages for them.    *See supra* pp. 2-8.

10          In *XpertUniverse, Inc. v. Cisco Systems, Inc.*, No. 09-157, 2013 WL 6118447 at *10 (D.

11  Del. Nov. 20, 2013), the court denied patentee XU supplemental damages on Cisco's designed-

12  around products, rejecting the same arguments Apple makes here.   XU moved for supplemental

13  damages on sales of Cisco's Remote Expert product that incorporated alternatives in place of the

14  accused functionality, sold prior to the verdict under the same product name.   XU argued that

15  "Cisco never argued at trial that it had versions of Remote Expert that were not infringing" and

16  "Cisco never asked the jury to determine that another version sold prior to the date of the trial did

17  not infringe."  *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 4460332 (D. Del. June 27, 2013)

18  (Plaintiff's Reply Brief).   Rejecting these arguments, the court noted that post-verdict relief,

19  including supplemental damages, generally requires the patentee to prove both "that the new

20  version is not more than colorably different from the product found to infringe and that the newly

21  accused product actually infringes."   2013 WL 6118447, at *10 (citing *Tivo Inc. v. Echostar

22  Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011)).   Then, focusing on the absence of the specific

23  infringing functionality accused at trial, rather than the use of the same name on the product, the

24  court held that XU did not satisfy its burden.   *Id*. at *11 ("The multilingual feature relied upon to

25  establish infringement of a specific limitation at trial is no longer present in Remote Expert.").

26          Here, Apple has made no effort to show Samsung's alternative designs are "not more than

27  colorably different" and has conceded it does not seek to show infringement.   (Dec. 10, 2015

28  Hr'g Tr. at 21:8-9 (Dkt. 3331).)   Under any standard, there can be no supplemental damages on

1   the alternative designs.

2   **B.      Issue Preclusion Cannot Apply To Samsung's Alternative Designs.**

3          Rather than trying to carry its burden to show infringement—which Apple plainly could

4   never do—Apple relies on a novel and unsupported theory of issue preclusion.   But the Federal

5   Circuit sets an extremely high bar for applying issue preclusion, requiring Apple to prove that "(1)

6   the issue is ***identical*** to one decided in the first action; (2) the issue was ***actually litigated*** in the

7   first action; (3) resolution of the issue was ***essential*** to a final judgment in the first action; and (4)

8   [Samsung] had a ***full and fair*** opportunity to litigate the issue in the first action."   *In re Freeman*,

9   30 F.3d 1459, 1465 (Fed. Cir. 1994) (emphases added).   Issue preclusion does not encompass

10  entire claims, but is limited to a specific "right, question or fact," and only if it was "distinctly put

11  in issue."   *Id*.   "An issue is not actually litigated if the defendant might have interposed it as an

12  affirmative defense but failed to do so; . . . nor is it actually litigated if it is the subject of a

13  stipulation between the parties."   Restatement (Second) of Judgments § 27(e) (1982).   And even

14  if all four factors are proved, "issue preclusion does not apply where a new determination is

15  warranted . . . to avoid inequitable administration of the laws."   *Dow Chem.*, 803 F.3d at 628.[3]

16         Apple has not shown that any of the four elements required for issue preclusion are

17  satisfied here.[4]   ***First***, Apple fails to show that the specific issues of infringement decided by the

18  jury are ***identical*** to those presented by the unadjudicated alternative designs.   Issue preclusion

19  does not apply to products that are materially different from the versions previously considered.

20  *See, e.g.*, *Brain Life, LLC v. Elekta Inc*., 746 F.3d 1045, 1054-55 (Fed. Cir. 2014) (refusing to

21  apply issue preclusion where the alleged infringing product "was never at issue" in the previous

22  litigation).   Apple offers no evidence or testimony to show that Samsung's alternative designs are

23  "not materially different" from the features adjudicated at trial.   *Id.* at 1055.   Rather, Apple

─────────────────────

24         [3]    To the extent Apple suggests that law of the case is available as an alternative to issue
    preclusion, it is incorrect.   Law of the case "directs a court's discretion" regarding prior decisions
25  "upon a rule of law" during the case; it does not operate as estoppel.   *See Arizona v. California,*
    460 U.S. 605, 618-19 (1983) (distinguishing law of the case from res judicata and collateral
26  estoppel).

27         [4]    The Court should not consider any further argument by Apple.   *See, e.g.*, *Minemyer*,
    2012 WL 2423102, at *3 (arguments not fully developed until a reply brief are waived) (citing
28  *Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009)).

1   relies on the wholly conclusory assertion that "Apple seeks supplemental damages on post-verdict

2   sales of five phones . . . that are the same in all material respects as products that the jury

3   evaluated"   (Mot. at 3; *see also id.* at 4 (claiming without factual support that "the supplemental

4   damages products at issue are the same in all material respects as products that formed part of the

5   verdict").)   Apple's statements lack credibility.   The record is clear that no white-faced or gray-

6   faced phones were accused by Apple, presented to the jury, or evaluated by the jury.   (JX1033-

7   35; Dkt. 1566-2; Dkt. 1931 at 6.)   The S II products here were only sold in configurations with

8   black, white, and steel gray faces.   (Declaration of Eunjei Lee, ¶¶ 2-9, Declaration of Dohyung

9   Ha, ¶¶ 2-5, Declaration of Tim Rowden, ¶¶ 2-3, 7-8, 14-15).   Apple concedes that Samsung's

10  steel-grey-faced phones were not released until after the verdict.   (Dec. 10, 2015 Hr'g Tr. at 11:5-

11  8 (Dkt. 3331).)   Samsung's Supplemental Damages Statement set forth unrebutted evidence why

12  each alternative design does not infringe and is materially different from the features accused at

13  trial.   (*See* Dkt. 3307 at 5-21; Dkt. 3307-1 to 3307-4.)   Apple fails to address any of this

14  compelling evidence or to cite a single piece of evidence establishing that Samsung's alternative

15  designs are "identical to [those] decided" by the jury.   *In re Freeman*, 30 F.3d at 1465.

16         **Second**, the issue of whether Samsung's alternative designs are infringing has never been

17  ***actually litigated***, which would have required that "the parties to the original action disputed the

18  issue and the trier of fact decided it."   *In re Freeman*, 30 F.3d at 1466.   Through discovery and

19  trial, there was never a dispute that any of the alternative designs were infringing, nor did the jury

20  ever decide if they were.   None of these factual inquiries were "distinctly put in issue" as

21  required.   *Id.* at 1465.   Some of the alternative designs could not have been actually litigated

22  because they were not incorporated into products until after trial (steel gray for D'677 and the '915

23  alternative).   (Dkt. 3307 at 3-4, 14.)   The reason Apple did not accuse the remaining alternative

24  designs is immaterial, the relevant question for issue preclusion is simply whether the issues were

25  actually litigated on the merits.   They were not.

26         Thus, the order by Magistrate Judge Grewal excluding evidence of design arounds for the

27  '381 and '163 patents is no help for Apple.   As the order stated and this Court affirmed,

28  "'[b]ecause Apple only requested this sanction as to the upcoming jury trial, this restriction does

1    not extend beyond trial to any post-trial proceeding.'"    (Dkt. 1545 at 2 (quoting Dkt. 1106 at 4).)

2    Further, the order was an "evidentiary sanction" (Dkt. 2657 at 12) that precluded only *Samsung*

3    from offering evidence of the alternative '381 and '163 designs (Dkt. 1545 at 2); it did not

4    establish as a proven fact that those designs were infringing, nor did it preclude Apple from

5    accusing them of infringement.    Apple *voluntarily* chose not to do so, which it admitted at the

6    reconsideration hearing:    "As you know, the S II, which is the only one where Apple concedes

7    blue glow was involved for one specific S II that they produced source code for, we didn't accuse

8    that model, the T-Mobile model, of infringing ['381]."    (June 19, 2012 Hr'g, Dkt. 1163 at 22:15-

9    19.)    There is also no basis to apply the evidentiary sanction to post-trial proceedings;    the

10   Court's basis was that Apple's experts would not have sufficient time to consider the source code,

11   putting them at risk on cross-examination if they had to admit they did not fully analyze all the

12   available code.    (Dkt. 1545 at 5.)    Those risks no longer exist.    Samsung disclosed its non-

13   infringing source code and Apple took all the discovery it wanted during the permanent injunction

14   phase.    (Dkt. 3307 at 6-7, 9-10.)    If Apple believed the alternative designs were infringing, it

15   had time to present expert testimony to that effect.    Tellingly, Apple has never done so.

16       **Third**, the issue of whether the alternative designs are infringing was ***not essential*** to the

17   jury's verdicts.    In post-trial motions and on appeal, Apple defended the jury's infringement

18   verdicts based solely on the infringement arguments it made at trial for the devices and features in

19   evidence.    *See supra* pp. 7-8.    This Court (and the Federal Circuit for design patents) then

20   upheld the infringement verdicts on that same evidence at Apple's request.    *Id.*    Apple never, for

21   example, invoked a white- or steel-gray-faced Galaxy S II phone in defending the jury's verdict

22   that the black-faced versions of those phones infringed D'677.    Those alternative colors are not a

23   factual predicate to whether a black patent is infringed, so they cannot be essential.

24       Further, the inclusion of some sales of alternative designs in the data underlying JX1500 is

25   irrelevant for issue preclusion, especially to establish infringement by those designs.    The actual

26   financial exhibits the jury saw said nothing about the color of the phones, or the other specifically

27   accused functionalities and features for the products on which Apple seeks supplemental damages.

28   Apple cannot argue otherwise.    Indeed, the Federal Circuit ruled in this case that the type of

1    product-specific information set forth in Mr. Wagner's work papers and on which Apple relies

2    "did not form the basis for the jury's damages award."   *Apple Inc. v. Samsung Elecs. Co.*, 727

3    F.3d 1214, 1226 (Fed. Cir. 2013).   During that appeal on sealing issues, Apple and Samsung

4    jointly argued that their highly confidential product-specific data should be sealed because, in

5    Apple's words, it "was not offered into evidence at trial and did not play any part in the jury's

6    verdict."   *Apple Inc. v. Samsung Elecs. Co.*, No. 12-1600 (Fed. Cir.) (Apple Reply Brief, ECF

7    No. 59 at 8); *see also id.* (Apple Opening Brief, ECF No. 20-1 at 29-30) (referring to JX1500 in

8    the appellate appendix).   The Federal Circuit agreed, ruling that both parties' product-specific

9    documents and data were sealable because they "were ***not introduced at trial*** and thus ***did not***

10   ***form the basis for the jury's damages award***."   *Apple*, 727 F.3d at 1224-26 (emphasis added).

11   This was so even though the underlying data was used to create high-level, summary financial trial

12   exhibits, including JX1500.   *Id.* at 1226 ("[B]ecause the parties agreed to rely on less-detailed

13   financial information to prove their damages at trial, none of the [underlying] documents were

14   introduced into evidence.   Thus, the financial information at issue was not considered by the jury

15   and is not essential to the public's understanding of the jury's damages award.").   The Federal

16   Circuit's holding is now the law of the case.   *See Timber Prods. Co. v. United States*, 515 F.3d

17   1213, 1220 (Fed. Cir. 2008).   Further, Apple is judicially estopped from arguing that any

18   financial documents are incorporated into the verdict where the jury never saw them:   Apple's

19   new position is "clearly inconsistent with its earlier position," Apple "succeeded in persuading a

20   court to accept [its] earlier position," and Apple would "derive an unfair advantage or impose an

21   unfair detriment on the opposing party if not estopped."   *New Hampshire v. Maine*, 532 U.S. 742,

22   750-51 (2001) (quotation marks omitted).

23        Even if the Federal Circuit's order were not dispositive, Apple cites no competent evidence

24   or testimony to support a finding that the jury found infringement and awarded D'677 damages for

25   white phones.   Instead, Apple relies entirely on new, post-hoc attorney argument and expert work

26   papers never offered in evidence, and which Apple deliberately never explored in deposition or

27   trial testimony.   *See Calico Brand, Inc. v. Ameritek Imports, Inc.*, 527 F. App'x 987, 994 (Fed.

28   Cir. 2013) (holding that for willfulness, a document "not relied on at trial" could not suffice to

1   show the specific type of product sold).    Post-hoc attorney declarations seeking to supplement

2   and construe evidence in place of competent expert or fact witness testimony are unreliable,

3   impermissible, and should be stricken or disregarded.    *Invitrogen Corp. v. Clontech Labs., Inc.*,

4   429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning

5   of technical evidence is no substitute for competent, substantiated expert testimony."); *Glaverbel*

6   *Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995); *Joyal*

7   *Products, Inc. v. Johnson Elec. N. Am., Inc.*, No. 04–5172, 2008 WL 4630500, at *4 (D.N.J. Oct.

8   17, 2008).    And, the jury's award of only a fraction of the damages Apple requested (Dkt. 2271

9   at 9-10) undermines any argument that the jury necessarily must have awarded damages for white

10  phones.    Further, this Court has found that the jury awarded a percentage of the figures in exhibit

11  PX25A (*id*. at 18), not JX1500.

12          At trial, Apple accused the five phones at issue here of diluting its combination iPhone

13  trade dress, which covered both "black or white" front faces, but the jury rejected Apple's claims.

14  (Dkt. 1904-11 at 110; Dkt. 1931 at 10, 13).    Apple also accused the Epic 4G Touch and

15  Skyrocket of infringing the D'087 patent, which Apple claimed was not limited to any color (Dkt.

16  1611 at 1019:15-17), and sought damages for those sales, although the jury found no infringement

17  (Dkt. 1931 at 6).    Thus, it is hardly surprising that the JX1500 summary included some white

18  phones.    Nevertheless, the jury was never given any evidence or testimony about this.    But even

19  if the jury's calculation relied on summary data for theories of liability that it rejected, this was at

20  most a windfall to Apple.    That windfall is due to the use of summaries of complex financial

21  information, the jury's unexpected methods of calculation, and the particular outcome of Apple's

22  claims for damages based on trade dress—which included both white and black phones.    These

23  circumstances do not justify Apple's claims for supplemental damages on alternative designs.

24          JX1500 is not an admission of liability as to the five patents at issue here.    It was created

25  in response to the Court's request that the parties reduce the number of sealing requests and in

26  light of the Court's indication that it was not inclined to seal the more detailed, product-specific

27  financial information of both parties.    Notably, the stipulation the parties submitted to reduce the

28  number of sealing requests for more detailed financial information—including the new, less-

1    detailed JX1500 exhibit—stated that the stipulation was "not a waiver of any claims or defenses or

2    claims for relief" and that it "shall apply only to the first trial of this dispute and any appeal

3    therefrom," but to no other proceedings.   (Dkt. 1597 at 1, 5.)   JX1500 was a joint exhibit

4    because it included high level summaries of the undisputed total—for all trade dresses and all

5    patents—unit and revenue numbers (rounded, by quarter) for both Apple and Samsung.   It cannot

6    justify a further windfall of supplemental damages on Samsung's alternative designs.

7        **Fourth**, Samsung did not have a ***full and fair*** opportunity to litigate the alternative designs

8    because Apple never properly accused them, either in infringement contentions or at trial.   Apple

9    argues that because it used product names like "Droid Charge" in the Pretrial Statement, somehow

10   the burden flipped to Samsung to show non-infringement of all actual and later-developed

11   unaccused alternatives.   (Mot. at 5.)   That is absurd.   That rule would make supplemental

12   damages for unadjudicated design arounds a foregone conclusion in every case.   Apple identifies

13   no authority that suggests post-verdict infringement by alternative designs is conclusively

14   established by the use of product names in the Pretrial Statement, or that such use expands the

15   patentee's previously disclosed infringement contentions, or relieves Apple of its burden of

16   proving infringement.[5]

17       Apple had the burden under the patent local rules and this Court's rulings to timely present

18   all of its specific infringement contentions well before its Pretrial Statement.   (Dkt. 1144 at 2

19   (precluding untimely contentions); Dkt. 1563 at 2-4 (similar); Dkt. 1545 at 8 (ruling that Apple's

20   interrogatory responses for design patents "disclos[ed] Apple's infringement theories upon which

21   it would rely at trial" and that both parties would be precluded from relying on any new theories).

22   Again, Apple identifies no authority for placing on Samsung the burden to affirmatively raise non-

23

24       [5]    Apple misconstrues the comment in *S. Cal. Retail Clerks Union & Food Emp'rs Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984).   That holding obligates a party to give notice of all the issues that are actually in dispute that it wants to take to trial.

25   It does not allow a party to expand its case to new issues or claims that were not previously and properly put in dispute:   "[t]he very purpose of the pretrial order is to narrow the scope of the suit

26   to those issues that are actually disputed and, thus, to eliminate other would-be issues that appear in other portions of the record of the case."   *Id.*   Also, as the Court recognized, the "Joint

27   Pretrial Statement . . . was not anything that the jury was ever informed of and it was never before the jury."   (Apr. 29, 2013 Hr'g, Dkt. 2320 at 32:6-8.)

28

1   infringement arguments against infringement contentions that were never made.   The Supreme

2   Court recently held that even in the declaratory judgment context, where non-infringement is

3   brought as an affirmative claim, the patentee-as-defendant *still* bears the burden of proving

4   infringement, and that shifting the burden to prove non-infringement is reversible error that

5   contradicts "[s]imple legal logic, resting upon settled case law."   *Medtronic, Inc. v. Mirowski*

6   *Family Ventures, LLC*, 134 S.Ct. 843, 849 (2014) (collecting cases).[6]   Not only was Samsung

7   justified in relying on Apple's disclosed contentions, but the Court's preclusion orders also require

8   denial of any damages for alternative designs that Apple could have but did not timely accuse.

9        Samsung is not seeking to re-litigate in this brief the infringement findings the jury

10  actually made.[7]   Consequently, all of Apple's cases are inapplicable, as they all involve parties

11  seeking to undo prior adverse rulings.   *Kamilche Co. v. United States*, 53 F.3d 1059, 1062-63

12  (9th Cir. 1995) (barring new argument about land ownership); *Paulo v. Holder*, 669 F.3d 911,

13  917-18 (9th Cir. 2011) (same regarding deportation relief); *EON Corp IP Holdings LLC v. Apple*

14  *Inc.*, No. 14-cv-5511, 2015 WL 4914984, at *8-9 (N.D. Cal. Aug. 17, 2015) (same regarding

15  infringement).   There is nothing to undo here regarding the alternative designs.

16       The law of the case doctrine likewise cannot bootstrap the unadjudicated alternative

17  designs into the infringement verdicts because they were never considered by the jury, the Court,

18  or the Federal Circuit, and thus have never been the subject of a decision on the merits.   *Quern v.*

19  *Jordan*, 440 U.S. 332, 347 n.18 (1979); *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,

20  275 F.3d 762, 766-67 (9th Cir. 2001).   Apple's citations to orders limiting what could be argued

21

22      [6]   What Apple is actually seeking is application of a broader type of *claim* preclusion to bar
Samsung from raising *any* issues related to infringement of Apple's patents, including those that

23  were not litigated previously.   Claim preclusion does not apply to supplemental damages.   *Dow*
*Chem.*, 803 F.3d at 626.   Even if that legal bar could be avoided, claim preclusion does not apply

24  to the alternative designs because Apple has failed to prove that the unadjudicated devices are the
same as those the jury found to infringe.   *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed.

25  Cir. 1991) ("With respect to patent litigation, we are unpersuaded that an 'infringement claim,' for
purposes of claim preclusion, embraces more than the specific devices before the court in the first

26  suit."); *see also Young Eng'rs, Inc. v. United States ITC*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)
("As the proponent of the defense of claim preclusion, the burden was on TYE to establish the

27  defense by showing that the devices here were the same as those in the 1969 suit."); *accord Brain*
*Life*, 746 F.3d at 1053; *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326-27 (Fed. Cir. 2008).

28      [7]   Samsung continues to appeal the jury findings on liability and damages.

1   at the 2013 retrial are also irrelevant.   (Mot. at 6-7.)   There, the Court through its Groundhog

2   Day rule aimed "to do a very limited retrial on damages on all of the old information and then

3   have this go up to the Federal Circuit."   (Apr. 29, 2013 Hr'g, Dkt. 2320 at 43:16-18.)   Neither

4   infringement nor supplemental damages were at issue, so those rulings are inapposite.

5        Finally, well settled patent policy gives the Court good reason not to award Apple an

6   "inequitable" windfall of over $150,000,000 in excess damages.   *Dow Chem.*, 803 F.3d at 628;

7   *see also Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U. S. 313, 349-50 (1971) (a

8   patentee "should not be . . . allowed to exact royalties for the use of an idea . . . that is beyond the

9   scope of the patent monopoly granted").   Awarding supplemental damages on alternative designs

10  violates the explicit policy that "design-around efforts should always be encouraged as a path to

11  spur further innovation."   *Tivo*, 646 F.3d at 883.   "One of the benefits of a patent system is its

12  so-called 'negative incentive' to 'design around' a competitor's products, even when they are

13  patented, thus bringing a steady flow of innovations to the marketplace."   *State Indus., Inc. v.

14  A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).   Apple would have the Court flatly

15  contradict this clear policy.

16       Apple fails to carry its burden to prove each element of issue preclusion or law of the case.

17  **C.     A Proper Calculation Of Supplemental Damages Applies The Court's
         Methodology To Sales That Lack Samsung's Design Arounds.**

18

19       As shown above, Apple is entitled to supplemental damages only on products that infringe.

20  The proper calculation of supplemental damages is laid out in detail in the accompanying

21  Declaration of Michael Wagner and summarized below, based on uncontested post-verdict sales

22  and the implementation dates of alternative designs.   (Dkt. 3307 at 2-4; Dkt. 3308-03.)

| Product | D'677 | D'305 | '381 | '915 | '163 | Supplemental Damages |
|---|---|---|---|---|---|---|
| Galaxy S II Skyrocket | $2,975,307 | $0 | $0 | $0 | $0 | $2,975,307 |
| Galaxy S II Epic 4G Touch | $13,017,292 | $0 | $0 | $0 | $0 | $13,017,292 |
| Galaxy S II (T-Mobile) | $8,330,716 | $0 | $0 | $229,352 | $0 | $8,560,069 |
| Droid Charge | $0 | $0 | $0 | $25,538 | $0 | $25,538 |
| Galaxy Prevail | $0 | $0 | $0 | $84,444 | $0 | $84,444 |
| **Total** | **$24,323,316** | **$0** | **$0** | **$339,334** | **$0** | **$24,662,650** |

1. **Galaxy S II Skyrocket**

| Front Face Color | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
|---|---|---|---|---|---|
| Black | D'677 | Infringer's Profits | ███ | ███ | $2,975,307 |
| White | None | None | None | ███ | $0 |

The black-faced Galaxy S II Skyrocket was the only configuration found to infringe the D'677 patent.   (JX1035; Dkt. 1566-2 at PX7.33; 1931 at 6.)   White-faced Skyrocket phones were first sold November 23, 2011.   (Dkt. 3307 at 4.)   Apple could have, but did not, accuse the white-faced Skyrocket in its interrogatory responses, its expert reports, or at trial.   Rather, in June of 2012, Apple relied on the white-faced configuration of S II phones as a non-infringing alternative during the claim construction phase.   (Dkt. 1140-31 ¶ 94.)   The unrebutted evidence shows that the white-faced Skyrocket does not infringe.   (Dkt. 3307 at 16-20; Dkt. 3307-2 at 1; Dkt. 3307-3 at 3-6.)

The black-faced Galaxy S II Skyrocket phones sold after the verdict, just like those sold before the verdict and found to infringe by the jury, are listed as "Dark Gray" in Samsung's internal documents and sales data.   (Ha Decl., ¶¶ 2-5; Rowden Decl., ¶¶ 2-6.)   But the "Dark Gray" identifier refers to the original color of the ***back cover*** of the device, not the front face of the phone, which remained black.   (Ha Decl., ¶ 2.)   The front face of the so-called Dark Gray Skyrocket phones has always been black, and thus for the purpose of supplemental damages Samsung does not contend that it is a design around for D'677.   Notably, Apple likewise advertises Gold, Silver, Space Gray, and Rose Gold phones based on their back surface colors despite white and black front faces.[8]

Only ███ units of Skyrockets sold after the verdict have a black front face.   At a rate of ███/phone (rounded), supplemental damages for the Skyrocket can be no more than $2,975,307.   (Wagner Decl., ¶¶ 16-17, Ex. B Schedule 3.1.)

2. **Galaxy S II Epic 4G Touch**

---

[8]   *See, e.g.*, http://www.apple.com/iphone/compare/ (accessed on Jan. 20, 2016).

| Front Face Color | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
|---|---|---|---|---|---|
| Black | D'677 | Infringer's Profits | ▮ | ▮ | $13,017,292 |
| White | None | None | None | ▮ | $0 |
| Steel Gray | None | None | None | ▮ | $0 |

As with the Skyrocket, in discovery and at trial Apple accused only an Epic 4G Touch with a black front face, and the jury found infringement of the D'677 by that product alone.   (JX1034; Dkt. 1566-2 at PX7.31; Dkt. 1931 at 6.)   The white-faced configuration was introduced December 14, 2011.   (Dkt. 3307 at 4.)   Apple again chose not to accuse the white-faced configuration, but instead argued it was a non-infringing alternative (Dkt. 1140-31 ¶ 94), and does not dispute Samsung's evidence that it does not infringe.   (Dkt. 3307 at 17-20; Dkt. 3307-2 at 1; Dkt. 3307-3 at 3-6.)   The Epic 4G Touch with a steel gray face was released after trial on October 30, 2012 (Dkt. 3307 at 4) and therefore could not possibly have been adjudicated at trial or included in JX1500.   The unrebutted evidence shows the steel-gray-faced model does not infringe.   (*Id.* at 16-20; Dkt. 3307-2 at 1; Dkt. 3307-3 at 3-6.)

Only the ▮ units of Epic 4G Touch devices with black front faces sold after the verdict are eligible for supplemental damages.   At a rate of ▮/phone (rounded), supplemental damages for the Epic 4G Touch can be no more than $13,017,292.   (Wagner Decl., ¶¶ 18-19, Ex. B Schedule 3.1.)

### 3.      Galaxy S II (T-Mobile)

| Front Face Color/Version | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
|---|---|---|---|---|---|
| Black | D'677, '915 | Infringer's Profits | ▮ | ▮ | $8,330,716 |
| White | '915 | Reasonable Royalty | ▮ | ▮ | $229,352 |
| White (with '915 design around) | None | None | None | ▮ | $0 |
| Steel Gray | None | None | None | ▮ | $0 |

The black-faced Galaxy S II (T-Mobile) model accused at trial was found to infringe the D'677, '915, and '163 patents.   (JX1033; Dkt. 1566-2 at 29 (PX7.29); Dkt. 1931 at 3-6.)   As with the other S II phones, Apple chose not to accuse the white-faced configuration of the S II (T-Mobile), released December 13, 2011 (Dkt. 3307 at 4), instead calling it a non-infringing

1   alternative (Dkt. 1140-31 ¶ 94).    The S II (T-Mobile) with a steel gray face was released after

2   trial on November 12, 2012 (Dkt. 3307 at 4), and so was not adjudicated or included in

3   JX1500.   The unrebutted evidence shows the white-faced and steel-gray-faced configurations do

4   not infringe.   (*Id.* at 16-20; Dkt. 3307-2 at 1; Dkt. 3307-3 at 3-6.)

5          Apple's argument that a website refers to a "Titanium" version of this phone—a model

6   with a black face (Lee Decl., ¶ 4)—is no substitute for infringement evidence against the steel-

7   gray-faced phone, and reveals how fatally inadequate Apple's speculative allegations are.   The S

8   II (T-Mobile) phones with Samsung's alternative design are identified as Steel Grey, not

9   "Titanium."   The "Titanium" identifier referred to the color on the ***back cover*** of the original S II

10  (T-Mobile).   (*Id.*, ¶¶ 2-8.)   The black-faced Titanium version was the one presented to the jury;

11  no S II (T-Mobile) ever had a "titanium grey" face as Apple's attorney wrongly speculates.

12  (Rowden Decl., ¶¶ 7-13, 21; *compare* Olson Decl., ¶¶ 3, 17-18.)   Indeed, the Titanium device

13  shown in the attorney's declaration has a black front face, but he misleadingly refers to it as

14  "titanium grey."   (Olson Decl., ¶ 18.)   This error is further proof that Apple's attorney

15  declaration is unreliable and should be disregarded.   *See supra* p. 17 (citing cases).   *See*

16  *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1381 (Fed. Cir. 2002) (requiring

17  inspection of actual product for design patent infringement).

18          ▮▮▮▮ units of the black-faced Galaxy S II (T-Mobile) were sold during the supplemental

19  damages period.   At a rate of ▮▮▮▮/phone (rounded), supplemental damages for the black

20  device can be no more than $8,330,716.   (Wagner Decl., ¶ 21, Ex. B Schedule 3.1.)

21          For the '163 patent, Samsung first sold S II (T-Mobile)'s with the design around on July

22  13, 2012 and included the design around in all models after August 24, 2012.   (Dkt. 3307 at 3-4.)

23  Apple has made no attempt to prove that the '163 design around is infringing, and the undisputed

24  evidence is that the '163 design around does not infringe.   (*Id.* at 8-10.)   The '163 design around

25  has been included in all post verdict sales of the S II (T-Mobile).   (*Id.* at 4.)

26          For the '915 patent, the design around was first introduced in S II (T-Mobile)'s available

27  for sale on October 26, 2012.   (Dkt. 3307 at 3.)   Although some black faced Galaxy S II T-

28  Mobiles may have been sold without the '915 alternative design, these sales are accounted for the

in the supplemental damages for the ███ units discussed above.   (Wagner Decl., ¶ 23.)   All steel gray configurations included the '915 design around.   (Dkt. 3307 at 4.)   The '915 design around was introduced in the white configurations after November 2, 2012.   (*Id.* at 4.)   Thus, ███ units of the white S II (T-Mobile)'s were sold without the '915 design around.   (Wagner Decl. ¶ 25.)   For these units, a per unit rate of ███/device should be applied because infringer's profits cannot be awarded for utility patent infringement and the Court's March 1, 2013 order found that the first jury awarded 50% of Apple's claimed royalties for the '915 patent ███ ███).   (Dkt. 2271 at 9; Wagner Decl., ¶ 25.)   Supplemental damages for the white-faced phones should be no greater than $229,352 .   (Wagner Decl., ¶ 25, Ex. B Schedule 3.1.)

**4.    Droid Charge**

| Product Version | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
|---|---|---|---|---|---|
| Droid Charge | '915 | Reasonable Royalty | ███ | ███ | $25,538 |

At trial, the Droid Charge was found to infringe the D'305, '381, '915, and '163 patents. For the D'305 patent, Apple accused at trial only a Droid Charge with consistent rounded square icons.   Firmware Version 2.3.6 updated the accused application screens of these phones to remove the square containers from behind the icons.   The undisputed evidence in the record is that phones running Firmware Version 2.3.6 do not infringe the D'305 patent.   (Dkt. 3307 at 14-16.)   The alternative design for the applications screen for the Droid Charge device was released on April 26, 2012, so all post-verdict sales have included the alternative design.   (*Id.* at 3.) Thus, no infringer's profits are permissible for the Droid Charge.

Droid Charge products including the '381 alternative design were available for sale starting December 14, 2011, thus all post-verdict sales of Droid Charges have included the '381 alternative design, which Apple has never accused at trial or proved to be infringing.   (Dkt. 3307 at 3, 5-7.) As for the '163, Apple has never attempted to prove that the alternative design infringes, thus the evidence in the record of non-infringement is unrebutted.   (*Id*. at 8-10.)   Droid Charge products including the '163 alternative design were available for sale starting April 26, 2012, thus all post-verdict sales of Droid Charges have included it.   (*Id*. at 3.)

1    Only the '915 patent can provide a basis for supplemental damages for Droid Charges.

2  Although the jury originally infringer's profits for the Droid Charge, that remedy is not available

3  for utility patents.    Thus the ████ post-verdict sales of Droid Charges should be subject to at

4  most a rate of ████/device for damages no greater than $25,538.    (Wagner Decl., ¶¶ 27-30,

5  Ex. B Schedule 3.1.)

6          **5.      Galaxy Prevail**

| Product Version | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
|---|---|---|---|---|---|
| Galaxy Prevail | '915 | Reasonable Royalty | ████ | ████ | $84,444 |

10    At trial, the Galaxy Prevail was found to infringe the '381, '915, and '163.    As with the

11  Droid Charge, Apple has never attempted to prove that the '381 or '163 alternative designs

12  infringe, and the unrebutted evidence in the record shows that Prevail devices incorporating these

13  alternative designs do not infringe.    (Dkt. 3307 at 5-7, 8-10.)    Moreover, all sales of the Prevail

14  after August 24, 2012 included the '381 and '163 alternative designs.    (*Id.* at 2 (Nov. 21, 2011 for

15  '381, Aug. 23, 2012 for '163).)    Only the '915 patent can provide a basis for supplemental

16  damages for Galaxy Prevail.    Thus the ████ post-verdict sales of Prevails should be subject to a

17  rate of ████/device, for supplemental damages no greater than $84,444.[9]    (Wagner Decl., ¶¶ 31-

18  32, Ex. B Schedule 3.1.)

      **D.      Calculation Of Prejudgment Interest On Supplemental Damages**

19    There is no dispute as to the method for calculating prejudgment interest, only the amount

20  of supplemental damages to use as the base, which Samsung has shown is $24,662,650.    (Wagner

21  Decl., ¶¶ 34-36, Ex. B Schedules 1 and 1.2.)    The interest through March 24, 2016 is $174,235,

22  with a daily addition of $326 thereafter.    (*Id.*)

**IV.    CONCLUSION**

24    For the foregoing reasons, the Court should deny Apple's motion and enter an award for

25  supplemental damages no greater than $24,662,650.

---

[9]      Apple's chart presenting its claims for supplemental damages (Mot. at 20) contains errors. The total supplemental damages figures in the right hand column do not add up, and the Galaxy Prevail calculation is incorrect.

1

2   DATED:   January 20, 2016      QUINN EMANUEL URQUHART &
                  SULLIVAN, LLP

3

4                   By   */s/ Victoria F. Maroulis*
                     John B. Quinn

5                     William C. Price
                     Michael T. Zeller

6                     Kevin P.B. Johnson
                     Victoria F. Maroulis

7

8                     Attorneys for SAMSUNG ELECTRONICS CO.,
                     LTD., SAMSUNG ELECTRONICS AMERICA,
                     INC., and SAMSUNG

9                     TELECOMMUNICATIONS AMERICA, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28