# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:   (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**DECLARATION OF MICHAEL J. WAGNER IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST** |

I, Michael J. Wagner, hereby declare as follows:

## BACKGROUND

1. I am currently a Managing Director at LitiNomics, Inc., a financial and economic consulting firm specializing in the analysis of economic issues that arise in commercial disputes.

2. I am a Certified Public Accountant and attorney licensed in the State of California. I have been a Partner at Price Waterhouse; a Managing Director at Putnam, Hayes & Bartlett; and a Senior Advisor at CRA International, a publicly traded management consulting firm. I have a Bachelor of Science in Engineering, which I received from the University of Santa Clara in 1969. I have a Masters in Business Administration, which I received from U.C.L.A. in 1971. I have a Juris Doctor degree, which I received from Loyola University School of Law at Los Angeles in 1975. Exhibit A is a true and correct copy of my *curriculum vitae*.

3. I have specialized in the computation of commercial damages over the last 39 years of my professional career. I have been qualified and testified at trial as an expert on financial matters, principally commercial damages, 139 times, including Lanham Act cases and patent cases (42 times in patent cases). I have testified on financial issues in 36 arbitrations. I also have been deposed 344 times (122 times in patent cases; more than 10 times in trademark or Lanham Act cases) on financial issues over my career.

4. I have 31 professional publications, the majority of which deal with the computation of commercial damages (ten deal directly with patent damages). My most significant publication is the *Litigation Services Handbook*, which I co-edited through its fourth edition. The book is a collaborative effort of many of the leading experts in the financial area. I am the founding editor and continued as an editor for over 20 years. The Handbook has been recognized as authoritative by the Federal Judicial Center in its *Treatise on Scientific Evidence*. The Treatise's chapter on Economic Damages in the first two editions cited only five additional reference sources for further guidance to federal judges. The *Litigation Services Handbook* was one of the five reference sources.

5. In the above-captioned case, *Apple Inc. v. Samsung Electronics Co., Ltd., et al.*, I previously submitted several declarations, including a Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction and a Declaration of Michael J. Wagner in Support of Samsung's Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59. I have also submitted expert reports, including my April 20, 2012 Corrected Expert Report of Michael J. Wagner; my May 11, 2012 Supplemental Expert Report of Michael J. Wagner; my August 26, 2013 Updated Rebuttal Expert Report of Michael J. Wagner for New Trial on Damages; and my November 6, 2015 Rebuttal Expert Report of Michael J. Wagner for Third Trial on Damages. I also testified at the August 2012 trial and at the November 2013 retrial on damages.

6. I submit this declaration in support of Samsung's Opposition to Apple's Motion for Supplemental Damages and Prejudgment Interest. If asked at a hearing or trial, I am prepared to testify regarding the matters I discuss in this declaration.

7. I am being compensated at $795 per hour for my work on this case. My compensation is in no way contingent upon the opinions I arrive at or the result of the litigation.

8. In performing my analysis, I have reviewed the Court's March 1, 2013 Order RE: Damages, the August 24, 2012 Amended Verdict Form, the November 21, 2013 Verdict Form, Samsung's Supplemental Damages Statement, and Apple's Motion for Supplemental Damages and Prejudgment Interest. I also attended most of the original trial and retrial on damages, and I have also reviewed trial transcripts, trial demonstratives and exhibits, as well as publicly available documents discussed in this declaration. I also reviewed the post-verdict sales information produced by Samsung at the Court's direction.

9. In addition to the review of documents listed above, I have relied on my training as a Certified Public Accountant and my knowledge and expertise regarding intellectual property litigation damages.

10.     I may supplement this declaration in the event that additional relevant materials are provided to me, including court filings and declarants' testimony.

## SUPPLEMENTAL DAMAGES

11.     I understand that the parties agree that there are five products for which supplemental damages should be awarded: Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S II T-Mobile, Droid Charge, and Galaxy Prevail.

12.     In calculating supplemental damages, I have assumed that Apple is only entitled to supplemental damages for products that infringe its patents. Samsung has provided detailed information regarding its alternative designs for Apple's patents (Dkt. 3307), and given the lack of contrary evidence, I have accepted this information as true. My understanding is that products incorporating these alternative designs do not give rise to supplemental damages. Thus my calculations only provide supplemental damages for products found to infringe at least one Apple patent that have not incorporated these alternative designs.

13.     I understand that the Court's March 1, 2013 Order RE: Damages held that it would be appropriate to calculate a per-unit supplemental damages amount by dividing the jury award for a given product by the number of sales of that product encompassed within the jury award. I also understand that the Court's order held that the supplemental damages period would begin on August 25, 2012.

14.     I have calculated the per-unit supplemental damages amounts consistent with the Court's Order in Exhibit B. A summary chart follows. I understand that the parties agree on these calculations. Although these numbers appear here in rounded form, the full per unit numbers, without rounding, were used in my calculation of supplemental damages.

| Product | Jury Award | Unit Sales June 2010 - June 2012 | Damages Per Unit (Rounded) |
|---|---|---|---|
| Droid Charge | $60,706,020 | ■ | ■ |
| Galaxy Prevail | $22,143,335 | ■ | ■ |
| Galaxy S II T-Mobile | $83,791,708 | ■ | ■ |
| Galaxy S II Epic 4G Touch | $100,326,988 | ■ | ■ |
| Galaxy S II Skyrocket | $32,273,558 | ■ | ■ |

15. Calculation of the appropriate amount of supplemental damages for infringing products is attached as Exhibit B. What follows is a summary and explanation of my calculations for each product.

*Galaxy S II Skyrocket*

16. I understand that a black-faced version of the Galaxy S II Skyrocket was found to infringe only the D'677 patent at trial (Dkt. 1931). I further understand that white-faced versions of the Skyrocket have been sold since November 23, 2011 (Dkt. 3307, p. 4). As I understand that white-faced phones do not infringe the D'677 patent, I only calculate supplemental damages for Skyrocket phones with a black face.

17. According to Samsung's sales data, ▮▮▮ units of black-faced Skyrockets were sold after the August 24, 2012 verdict. At a per unit supplemental damages amount of ▮▮▮▮▮▮, this results in supplemental damages of $2,975,307 (Exhibit B, Schedule 3.1).

| Galaxy S II Skyrocket | | | | | |
|---|---|---|---|---|---|
| Front Face Color | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
| Black | D'677 | Infringer's Profits | ▮▮▮ | ▮▮▮ | $2,975,307 |
| White | None | None | None | ▮▮▮ | $0 |

*Galaxy S II Epic 4 G Touch*

18. I understand that a black-faced version of the Galaxy S II Epic 4G Touch was found to infringe only the D'677 patent (Dkt. 1931). I also understand that white-faced versions of the Epic 4G Touch were introduced by Samsung on December 14, 2011 (Dkt. 3307, p. 4), and steel-gray-faced versions were introduced on October 30, 2012 (Dkt. 3307, p. 4). As I understand that white-faced and steel-gray-faced phones do not infringe the D'677 patent, I only calculate supplemental damages for Epic 4G Touch phones with a black face.

19. According to Samsung's sales data, ▮▮▮ units of Epic 4G Touch devices with black front faces were sold after the verdict. At a per unit supplemental damages amount of

1    ▮▮▮▮▮▮▮▮▮, this results in supplemental damages of $13,017,292 (Exhibit B, Schedule

2    3.1).

| Galaxy S II Epic 4G Touch | | | | | |
|---|---|---|---|---|---|
| **Front Face Color** | **Patents Infringed** | **Basis for Award** | **Per Unit Rate** | **Number of Units** | **Supplemental Damages** |
| Black | D'677 | Infringer's Profits | ▮▮▮ | ▮▮▮ | $13,017,292 |
| White | None | None | None | ▮▮▮ | $0 |
| Steel Gray | None | None | None | ▮▮▮ | $0 |

*Galaxy S II T-Mobile*

20.    I understand that the jury found a Galaxy S II T-Mobile with a black front face infringed the D'677, '915, and '163 patents (Dkt. 1931).   I also understand that white-faced and steel-gray-faced versions for this phone were released on December 13, 2011 and November 12, 2012, respectively (Dkt. 3307, p. 4).

21.    As I understand that white-faced and steel-gray-faced phones do not infringe the D'677 patent, I only calculate supplemental damages relating to the D'677 patent for T-Mobile phones with a black face.   Samsung's sales data show that ▮▮▮ units of the black-faced Galaxy S II T-Mobile were sold during the supplemental damages period.   At a per unit rate of ▮▮▮▮▮▮▮▮, this results in supplemental damages of $8,330,716 (Exhibit B, Schedule 3.1).

22.    I understand that Samsung's alternative design for the '163 patent was implemented in the Galaxy S II T-Mobile on July 13, 2012 (Dkt. 3307, p. 3), and that all post-verdict sales of the Galaxy S II T-Mobile phones included the alternative design (Dkt. 3307, p. 4). As such, I have not calculated supplemental damages for Galaxy S II T-Mobile sales for the '163 patent.

23.    I understand that Samsung's alternative design for the '915 patent was first introduced in the Galaxy S II T-Mobile on October 26, 2012 (Dkt. 3307, p. 3).   Although some black-faced Galaxy S II T-Mobiles may have been sold after the date the verdict was entered without the '915 alternative design, these sales are accounted for in the supplemental damages for

1  the ▮▮▮ units calculated in paragraph 21.  Thus, no additional supplemental damages are
2  necessary for the black-faced Galaxy S II T-Mobile phones for the '915 patent.

3      24.  I understand that all steel-gray-faced versions of the Galaxy S II T-Mobile included
4  Samsung's alternative design for the '915 patent (Dkt. 3307, p. 4).  As such, I understand that
5  Apple is not entitled to supplemental damages for steel-gray-faced versions of the Galaxy S II T-
6  Mobile sales for the '915 patent.

7      25.  I understand that all sales of the white-faced versions of the Galaxy S II T-Mobile
8  phones after November 2, 2012 included the '915 alternative design (Dkt. 3307, p. 4).  Based on
9  Samsung's sales data, this means that ▮▮▮ units of the white-faced Galaxy S II T-Mobile were
10 sold without the '915 alternative design (between August 24, 2012 and November 2, 2012).
11 Therefore, I have calculated supplemental damages for these sales.  For these sales, I have
12 applied a per unit rate of ▮▮ because infringer's profits cannot be awarded for utility patent
13 infringement—the ▮▮ per unit rate discussed above is calculated based on the jury's award of
14 Samsung's profits for the Galaxy S II T-Mobile.  Thus, supplemental damages should be
15 awarded based on a reasonable royalty.  At trial, I understand that Apple sought a royalty of
16 ▮▮ for the '915 patent (PX 25A1).  However, I understand that the Court's March 1, 2013
17 Order RE: Damages found that the jury in fact awarded only ▮▮ of Apple's claimed reasonable
18 royalties for the phones on which reasonable royalties were awarded by the jury (Dkt. 2271, pp. 9-
19 10).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  When applied to the ▮▮▮ sales
21 of white-faced Galaxy S II T-Mobile devices without the '915 alternative design, this results in
22 additional supplemental damages of $229,352, which should be added to those calculated in
23 paragraph 21 (Exhibit B, Schedule 3.1).

| Galaxy S II T-Mobile | | | | | |
|---|---|---|---|---|---|
| Front Face Color/Version | Patents Infringed | Basis for Award | Per Unit Rate | Number of Units | Supplemental Damages |
| Black | D'677, '915 | Infringer's Profits | ■ | ■ | $8,330,716 |
| White | '915 | Reasonable Royalty | ■ | ■ | $229,352 |
| White (with '915 design around) | None | None | None | ■ | $0 |
| Steel Gray | None | None | None | ■ | $0 |

26. Note that the '915 patent per unit supplemental damages amount for the Galaxy S II T-Mobile is different from the per unit amount for the '915 patent for the Droid Charge and Galaxy Prevail, discussed below. This is because the Galaxy S II T-Mobile phone was not at issue in the 2013 retrial on damages, where the jury awarded ■ of Apple's claimed reasonable royalty damages, as opposed to the ■ awarded by the first jury. This results in a higher per unit supplemental damages amount for the '915 patent that is applied to the products that were part of the retrial on damages.

### *Droid Charge*

27. I understand that the jury found a Droid Charge to infringe the D'305, '381, '915, and '163 patents (Dkt. 1931). I understand that all post verdict sales of the Droid Charge included an alternative design for the D'305 patent (Dkt. 3307, p. 3). Thus, I have not calculated supplemental damages for the D'305 patent on these sales.

28. I understand that all post-verdict sales of the Droid Charge included the alternative design for the '381 patent (Dkt. 3307, p. 3). Thus, I have not calculated supplemental damages for the '381 patent on these sales.

29. I also understand that all post-verdict sales of the Droid Charge included the alternative design for the '163 patent (Dkt. 3307, p. 3). As such, I have not calculated supplemental damages for the '163 patent on these sales.

30. The implementation of Samsung's alternative designs discussed above means that only the '915 patent can provide a basis for supplemental damages for the Droid Charge. I understand that the '915 alternative design was not implemented for the Droid Charge. I understand the jury awarded Samsung's profits for the Droid Charge in the original trial and the

retrial on damages based on infringement of the D'305 patent.   Given the '915 patent is the only patent that provides a basis for supplemental damages for the Droid Charge, supplemental damages should be awarded based on a reasonable royalty.   As such, I have applied the ▬ per unit reasonable royalty that Apple asked for and was awarded (Dkt. 2947, p. 4) for the '915 patent in the 2013 retrial on damages.   Samsung's sales data show that there were ▬ post-verdict sales of the Droid Charge.   Applying the per unit supplemental damages amount of ▬ to these sales results in supplemental damages of $25,538 (Exhibit B, Schedule 3.1).

| **Droid Charge** | | | | | |
|---|---|---|---|---|---|
| **Product Version** | **Patents Infringed** | **Basis for Award** | **Per Unit Rate** | **Number of Units** | **Supplemental Damages** |
| Droid Charge | '915 | Reasonable Royalty | ▬ | ▬ | $25,538 |

*Galaxy Prevail*

31.   I understand that a Galaxy Prevail was found to infringe the '381, '915, and '163 patents (Dkt. 1931).   I also understand that Samsung implemented alternative designs for the '381 and '163 patents on November 21, 2011 and August 23, 2012 respectively, and that all Galaxy Prevail phones sold after the verdict implemented these alternative designs for the '381 and '163 patents (Dkt. 3307, p. 2).   As such, I have not calculated supplemental damages on sales of the Galaxy Prevail for infringement of the '381 or '163 patents.

32.   I understand that the '915 alternative design was not implemented for the Galaxy Prevail.   Therefore, I have calculated supplemental damages for the Galaxy Prevail for the '915 patent.   According to Samsung's sales data, there were ▬ post-verdict sales of the Galaxy Prevail.   I have applied the ▬ per unit reasonable royalty that Apple asked for and was awarded (Dkt. 2947, p. 4) for the '915 patent in the 2013 retrial on damages.   Applying the per unit supplemental damages amount of ▬ results in a supplemental damages amount of $84,444 (Exhibit B, Schedule 3.1).

| **Galaxy Prevail** | | | | | |
|---|---|---|---|---|---|
| **Product Version** | **Patents Infringed** | **Basis for Award** | **Per Unit Rate** | **Number of Units** | **Supplemental Damages** |
| Galaxy Prevail | '915 | Reasonable Royalty | ▬ | ▬ | $84,444 |

*Total Supplemental Damages*

33.     The total amount of supplemental damages is calculated simply by adding all of the awards calculated above.  This results in a total supplemental damages amount of $24,662,650 (Exhibit B, Schedule 3).

| **Total Supplemental Damages** | | | | | | |
|---|---|---|---|---|---|---|
| **Product** | **D'677** | **D'305** | **'381** | **'915** | **'163** | **Supplemental Damages** |
| Galaxy S II Skyrocket | $2,975,307 | $0 | $0 | $0 | $0 | $2,975,307 |
| Galaxy S II Epic 4G Touch | $13,017,292 | $0 | $0 | $0 | $0 | $13,017,292 |
| Galaxy S II (T-Mobile) | $8,330,716 | $0 | $0 | $229,352 | $0 | $8,560,069 |
| Droid Charge | $0 | $0 | $0 | $25,538 | $0 | $25,538 |
| Galaxy Prevail | $0 | $0 | $0 | $84,444 | $0 | $84,444 |
| **Total** | **$24,323,316** | **$0** | **$0** | **$339,334** | **$0** | **$24,662,650** |

## **PREJUDGMENT INTEREST**

34.     I understand that the Court has found that an award of prejudgment interest is appropriate in this case, and has stated that it will award prejudgment interest at the 52-week Treasury Bill Rate, compounded annually.   I have calculated the appropriate prejudgment interest on the supplemental damages in Exhibit B (Schedule 1.1).

35.     I also understand that Apple has offered a prejudgment interest calculation provided by Ms. Julie Davis.   Based on my review of Ms. Davis's calculations, it appears that we apply the same methodology.   We both calculate prejudgment interest using the 52-week Treasury Bill Rate through the hearing date on Apple's motion for supplemental damages (March 24, 2016) with a per diem amount thereafter.   The 52-week Treasury Bill Rate from December 2015 to March 2016 is held constant from November 2015 to be consistent with Ms. Davis's methodology.   The only difference between our prejudgment interest calculations is the supplemental damages base.

36.     Calculating prejudgment interest on the supplemental damages for only infringing sales—$24,662,650—results in a prejudgment interest through March 24, 2016 of $174,235, with a daily addition of $326 thereafter.    (Exhibit B, Schedule 1 and Schedule 1.2).

1    I declare under penalty of perjury of the laws of the United States of America that the
2 foregoing is true and correct.  Executed in Santa Clara County, California on January 20, 2016.

By: _____
   Michael J. Wagner

## **ATTESTATION**

I, Victoria Maroulis, am the ECF User whose ID and password are being used to file this Declaration.  In compliance with Civil Local Rule 5-1(i), I hereby attest that Michael J. Wagner has concurred in this filing.

Dated:   January 20, 2016                         */s/ Victoria Maroulis*
                                                                    Victoria Maroulis