HAROLD J. MCELHINNY (CA SBN 66781)
hmcelhinny@mofo.com
RACHEL KREVANS (CA SBN 116421)
rkrevans@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK (PSG)<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST**<br><br>Date: March 24, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**TABLE OF CONTENTS**

**Page**

I. SAMSUNG CANNOT RE-LITIGATE INFRINGEMENT. .... 1

A. The Issues Are The Same. .... 3

B. The Issues Were Actually Litigated. .... 6

C. The Issues Were Essential to the Judgment. .... 7

D. Samsung Had a Full and Fair Opportunity to Argue Its Defenses. .... 10

II. SAMSUNG CONCEDES IT FAILED TO CHALLENGE THE COURT'S METHODOLOGY ON APPEAL. .... 12

III. APPLE IS ENTITLED TO SUPPLEMENTAL DAMAGES ON ALL POST-VERDICT SALES OF THE FIVE SUPPLEMENTAL DAMAGES PRODUCTS .... 13

IV. CONCLUSION .... 14

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alzheimer's Inst. of Am. v. Eli Lilly & Co.*,
   No. 10-CV-00482-EDL,
   2015 WL 5243874 (N.D. Cal. June 5, 2015) .............................................................. 7

*Amstar Corp. v. Envirotech Corp.*,
   823 F.2d 1538 (Fed. Cir. 1987) ................................................................................. 6

*Apple Inc. v. Samsung Elecs. Co.*,
   727 F.3d 1214 (Fed. Cir. 2013) ..................................................................... 8, 10, 13

*Bains LLC v. ARCO Prods. Co.*,
   405 F.3d 764 (9th Cir. 2005) ................................................................................ 9, 10

*Brain Life, LLC v. Elekta Inc.*,
   746 F.3d 1045 (Fed. Cir. 2014) ............................................................................. 4, 6

*Colida v. Qualcomm Inc.*,
   128 F. App'x 765 (Fed. Cir. 2005) ............................................................................ 4

*Dana v. E.S. Originals, Inc.*,
   342 F.3d 1320 (Fed. Cir. 2003) ................................................................................. 4

*Dow Chemical Co. v. Nova Chemicals, Corp. (Can.)*,
   803 F.3d 620 (Fed. Cir. 2015) ................................................................................... 2

*DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd.*,
   268 F.3d 829 (9th Cir. 2001) ................................................................................... 11

*Galdamez v. Potter*,
   415 F.3d 1015 (9th Cir. 2005) ................................................................................. 11

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994) ..................................................................... 2, 3, 7, 12

*Minemyer v. R-Boc Representatives, Inc.*,
   No. 07 C 1763,
   2012 WL 2423102 (N.D. Ill. Jun. 26, 2012) ............................................................. 6

*Novartis Pharm. Corp. v. Watson Labs., Inc.*,
   611 F. App'x 988 (Fed. Cir. 2015) ............................................................................ 7

*Patterson v. Hughes Aircraft Co.*,
   11 F.3d 948 (9th Cir. 1993) ..................................................................................... 11

*Reese v. Verizon California, Inc.*,
   498 F. App'x 980 (Fed. Cir. 2012) ............................................................................ 4

*Richardson v. Marsh*,
   481 U.S. 200 (1987) ................................................................................................... 9

*S. Cal. Retail Clerks Union & Food Emp'rs Joint Pension Trust Fund v. Bjorklund*,
   728 F.2d 1262 (9th Cir. 1984) ................................................................................................ 11

*Simmons v. Small Bus. Admin.*,
   475 F.3d 1372 (Fed. Cir. 2007) ................................................................................................ 7

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt. LLC*,
   778 F.3d 1311 (Fed. Cir. 2015) .............................................................................................. 11

*Stephen Slesinger, Inc. v. Disney Enters., Inc.*,
   702 F.3d 640 (Fed. Cir. 2012) .................................................................................................. 3

*Syndia Corp. v. Gillette Co.*,
   No. 01 C 2485,
   2002 WL 2012473 (N.D. Ill. Aug. 30, 2002) ........................................................................... 6

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) .................................................................................................. 3

*United States v. First Nat'l Bank of Circle*,
   652 F.2d 882 (9th Cir. 1981) .................................................................................................. 11

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
   No. 09-157-RGA,
   2013 WL 6118447 (D. Del. Nov. 20, 2013) ............................................................................ 6

**STATUTES**

35 U.S.C. § 289 ................................................................................................................................ 13

**OTHER AUTHORITIES**

18 Wright, Miller & Cooper, Federal Practice and Procedure § 4419
   (2nd ed. 2008) .......................................................................................................................... 7

Samsung agrees that Apple is entitled to supplemental damages. It disputes, however, the amount of those supplemental damages. Samsung asks the Court to ignore the jury's verdicts from two trials and deny Apple supplemental damages on products that are the *same* as products included in those verdicts. But under the principles of issue preclusion and law of the case, Samsung may not now deny its obligation to pay damages for continued sales of products already included in the jury verdicts, approved by this Court, and affirmed on appeal.

With respect to the D'677 patent, Samsung has conceded that the August 2012 jury awarded Apple damages for infringement by Galaxy S II products that were not black—including for phones that were white. Nonetheless, Samsung now claims that the Court cannot award Apple supplemental damages for Galaxy S II products sold after the verdict if they are not black. The jury's verdict precludes Samsung from making this argument. This justifies an award of supplemental damages on all post-verdict sales of the three Galaxy S II products, which represent more than 99% of the damages amount at issue in this motion.

With respect to the '381, '163 and D'305 patents, Samsung similarly concedes that the November 2013 jury awarded Apple damages for Droid Charge and Galaxy Prevail products that include certain "design-arounds" on which Samsung currently relies. Yet Samsung now claims that the Court cannot award Apple supplemental damages for the sale of identical Droid Charge and Galaxy Prevail products. The jury's verdict precludes Samsung from making this argument as well, and that preclusion resolves all remaining issues in this motion.

Finally, Samsung concedes by its silence that it failed to challenge on appeal the Court's March 1, 2013 Order (Dkt. 2271) defining how supplemental damages would be calculated despite clear and repeated directions from this Court that it should do so. This failure provides an independent ground for the Court to reject Samsung's attempts to circumvent the straight-forward calculation defined by that order.

For these reasons, the Court should award Apple supplemental damages of $178,659,870.

## I. SAMSUNG CANNOT RE-LITIGATE INFRINGEMENT.

Issue preclusion bars Samsung from raising a "color" defense because the jury found infringement and awarded damages for the five supplemental damages products and the jury's

1  findings on infringement and damages have been affirmed on appeal.  As discussed below, all of
2  the elements of the issue preclusion doctrine are met.  *See In re Freeman*, 30 F.3d 1459, 1465-67
3  (Fed. Cir. 1994).  The supplemental damages products are the same in all material respects as
4  products that were included in the verdict.  The issues of infringement, damages, and which
5  products and units would be included in the verdict were actually litigated.  And nothing could be
6  more essential to the judgment than the amount of the jury's final damages award.  Samsung had
7  a full and fair opportunity to litigate these issues; nothing other than Samsung's own strategic
8  choices and misconduct prevented Samsung from arguing for exclusion of allegedly
9  noninfringing units from the damages totals because of color or software.  Thus, the verdicts put
10 to rest once and for all the questions that Samsung seeks to litigate again in connection with
11 supplemental damages.

12 Samsung relies on *Dow Chemical Co. v. Nova Chemicals, Corp. (Can.)*, 803 F.3d 620,
13 626 (Fed. Cir. 2015), to argue that Apple must separately establish infringement by the
14 supplemental damages products.  But Samsung misreads *Dow*—it does not say that Apple must
15 introduce new evidence after the verdict to obtain supplemental damages on the *same phones* that
16 were included in the verdict.  Such a holding would eviscerate the final nature of jury verdicts.
17 To the contrary, *Dow* makes clear that issue preclusion bars relitigation in a post-verdict
18 proceeding of issues already resolved by the jury's verdict.  *Id.* at 627.  Put simply, if a patent-
19 holder obtains damages on a configuration of an accused product as part of a jury's verdict, the
20 court does not reevaluate in a later proceeding whether the patent holder gets supplemental
21 damages for sales of the same product after the verdict.[1]

22 Issue preclusion exists to make sure trials, post-trial motions and appeals all lead to
23 meaningful and final resolutions of disputes.  Without it, every defendant could argue post-trial
24 (or even post-appeal) that some new defense or new distinction justifies relitigating issues
25 decided by the jury.  Unless Samsung is held to the jury's verdict, the parties and the Court could

---

[1] Samsung's argument that law of the case cannot bar its design-around arguments is nonsensical.  (*See* Opp. at 13 n.3.)  *Dow* clearly states that in an ongoing case, "the doctrine of law of the case would preclude relitigation" of "issues (such as validity) that were resolved as to the earlier time periods."  803 F.3d at 627.

1  face "repetitious litigation" that yields "inconsistent decisions" as to the same products—
2  precisely what issue preclusion is intended to prevent. *Texas Instruments Inc. v. Cypress*
3  *Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (goal of issue preclusion is to "relieve
4  parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by
5  preventing inconsistent decisions, encourage reliance on adjudication"); *see also Stephen*
6  *Slesinger, Inc. v. Disney Enters., Inc.*, 702 F.3d 640, 644 (Fed. Cir. 2012) (issue preclusion
7  "protects the finality of judgments"); *In re Freeman*, 30 F.3d at 1465 (goal of issue preclusion is
8  to "prevent repetitious litigation of what is essentially the same dispute").
9      Indeed, this is the precise situation that issue preclusion is intended to address—an
10 attempt to relitigate an issue that has already been decided. *In re Freeman*, 30 F.3d at 1465 ("[A]
11 party who has litigated an issue and lost should be bound by that decision and cannot demand that
12 the issue be decided over again."). Samsung had its chance—several chances, in fact—to contest
13 infringement and damages as to the units of the Galaxy S II, Droid Charge and Galaxy Prevail
14 smartphones that were included in JX1500. It had its chance to address any and all issues related
15 to the verdicts for these products on appeal. It fully and aggressively availed itself of these
16 opportunities, but raised none of these issues. Samsung may not argue infringement and damages
17 anew to avoid an award of supplemental damages.

18      **A.    The Issues Are The Same.**

19      Because the products that give rise to supplemental damages are the same in all material
20 respects as the products that were included in the jury's damages award, the issues Samsung now
21 seeks to relitigate—whether Samsung should pay Apple for the sale of each of these five
22 products, and if so, in what amount—are identical to issues that were previously litigated.

23      ***Samsung Concedes Its Alleged Design-Arounds Were Included in the Jury's Verdict.***
24 Apple's motion began with the following statement: "[Samsung's] post-verdict sales are
25 smartphones with the same names, software and color as units included in the verdict that both
26 this Court and the Federal Circuit have confirmed." (Mot. at 1.) Samsung does not dispute that
27 this is true.

28      Samsung concedes that the unit totals in JX1500 for each of the Galaxy S II Skyrocket,

APPLE'S REPLY ISO SUPPLEMENTAL DAMAGES
CASE NO. 11-CV-01846-LHK (PSG)                                                                    3
sd-675385

the Galaxy S II Epic 4G Touch and the Galaxy S II T-Mobile included white smartphones. (*See, e.g.*, Opp. at 17 ("[T]he JX1500 summary included some white phones."); Opp. at 2 ("JX1500 totaled the sales of black-faced and white-faced phones.").) Thus the white phones Samsung now seeks to exclude from the supplemental damages calculation are *identical* to phones included in the jury verdict. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1055 (Fed. Cir. 2014) (issue preclusion applies to "previously challenged products which have not been materially altered" from the products adjudicated by the jury); *Reese v. Verizon California, Inc.*, 498 F. App'x 980, 983 (Fed. Cir. 2012) (applying issue preclusion where "the accused products and technology are the same, and the asserted patent claims are the same."); *Colida v. Qualcomm Inc.*, 128 F. App'x 765, 766 (Fed. Cir. 2005) (applying issue preclusion when product and patents were the same as in the prior litigation); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1325 (Fed. Cir. 2003) (finding the issues were identical where products and patent were the same in second proceeding and rejecting defendants' attempt to "buttress their case through different evidence[.]").

Samsung also concedes that Galaxy S II Skyrocket smartphones that Samsung refers to as "Dark Gray" (and admits are not different from the "black" products sold after the verdict) and Galaxy S II T-Mobile smartphones that Samsung referred to as "Titanium" were included in JX1500 and in the verdict.[2] (*Id.* at 23 (acknowledging that the "Titanium" version of the Galaxy S II T-Mobile was shown to the jury); *id.* at 21 ("Galaxy S II Skyrocket phones sold after the verdict, just like those sold before the verdict and found to infringe by the jury, are listed as 'Dark Gray.'").) Samsung seeks to offer new evidence—not submitted during any trial or appeal—to suggest that "dark gray" referred to the back, not the front, of the product, and seeks to argue that "steel gray" and "titanium" are not the same color. But Samsung does not contest that Galaxy S II smartphones that Samsung identified using the labels "dark gray" and "titanium" were included in JX1500 and in the verdict. (*Id.*)

Samsung also concedes that the unit totals in JX1500, which served as the basis for the

---

[2] Samsung argues that the Court previously rejected an attempt by Apple to include a new Samsung model in supplemental damages that was not included in the jury's verdict. (Opp. at 9.) But the circumstances differ here—the supplemental damages products are the same smartphone models that were at issue at trial.

1  jury's verdict, included Droid Charge units (after March 2012) that contain the allegedly different
2  software related to the D'305, '381 and '163 patents on which Samsung now relies to avoid
3  payment of supplemental damages. (*See* Opp. at 24; Wagner Decl. ¶¶ 13-14 (using total units in
4  JX1500 to calculate "per-unit" supplemental damages amount for infringing products); Dkt. 3307
5  at 3 (Droid Charge incorporated all three alleged design-arounds by April 2012).)  It further
6  concedes that the unit totals in JX1500 include Galaxy Prevail units that include the "design-
7  around" for the '381 patent on which it now relies. (*See* Opp. at 25; Wagner Decl. ¶ 31; Dkt.
8  3307 at 2 (design-around available in November 2011).)

9        These facts resolve the first element of issue preclusion. The products are the same in all
10  material respects as units included in JX1500, and the question whether and what damages should
11  be paid is the same as the question resolved by the verdict.

12        In response, Samsung argues that the jury's infringement and damages findings were
13  limited to black Galaxy S II smartphones because the physical JX products had black faces.
14  (Opp. at 6.)  But the color of these exemplar phones—which were just one piece of evidence
15  submitted by Apple—does not change the fact that white and gray units were included in JX1500.
16  Samsung itself included white, gray and other alleged designed-around units in the financial
17  spreadsheets that it produced to Apple and to its damages expert, Mr. Wagner. (*See* Mot. at 9-
18  10.)  Samsung concedes that the jury awarded damages based on the opinions of the two damages
19  experts using the unit counts submitted in JX1500. (Opp. at 18 (JX1500 included "the undisputed
20  total—for all trade dresses and all patents—unit and revenue numbers (rounded, by quarter) for
21  both Apple and Samsung."); Wagner Decl. ¶¶ 13-14 (using total units in JX1500 as the infringing
22  units to calculate a "per-unit" supplemental damages amount).)  Indeed, Samsung stipulated that
23  these unit totals in JX1500 represented the accused smartphones for purposes of the trial. (*See*
24  Dkt. 1597 at 1-3.)  Moreover, as discussed in more detail below, Apple's pretrial statement
25  accused all Galaxy S II smartphones regardless of color or software build. (*See* Sec. II(D), *infra*.)
26  But Samsung made no attempt to exclude white or gray Galaxy S II smartphones from the
27  damages totals submitted to the jury.

28        ***Samsung's Cases Are Inapposite.***  Samsung argues that the infringement issues are not

1  identical based on a line of cases in which plaintiffs sought post-verdict relief for products *not*
2  *included* in the jury's verdict. That is not the case here.

3  Both *Amstar* and *Minemyer* deal with redesigns that were not accused at trial. *See Amstar*
4  *Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1545 (Fed. Cir. 1987); *Minemyer v. R-Boc*
5  *Representatives, Inc.*, No. 07 C 1763, 2012 WL 2423102, at *3 (N.D. Ill. Jun. 26, 2012). As the
6  *Amstar* court explained, its task was to determine "whether the *new* item has elements 'similar' to
7  the infringing elements of the *adjudicated infringing items*." 823 F.2d at 1545 (emphasis added);
8  *see also Minemyer*, 2012 WL 2423102, at *3 (addressing "products that were not accused in the
9  trial."). Unlike the plaintiffs in *Amstar* and *Minemyer*, Apple is seeking supplemental damages
10 on smartphones that were included in JX1500 and in two trials. And in *Brain Life*, the court
11 refused to apply issue preclusion to a product that was never at issue in the trial because the
12 product was acquired by the plaintiff *after the litigation was complete*. 746 F.3d at 1055. These
13 cases apply to circumstances not present here.

14 Nor does *Syndia* or *XpertUniverse* provide a reason to deny Apple relief. While the
15 *Syndia* court declined a request to award supplemental damages on entirely new phones, the court
16 actually ordered discovery to establish how many additional sales of the products that had been
17 *included in the verdict* had occurred, so that the plaintiff could seek damages on those products.
18 *Syndia Corp. v. Gillette Co.*, No. 01 C 2485, 2002 WL 2012473, at *1 (N.D. Ill. Aug. 30, 2002).
19 And in *XpertUniverse*, the plaintiff XU sought pre-verdict sales information on a product Cisco
20 alleged had been redesigned so that XU could claim supplemental damages on that product.
21 Unlike here, Cisco *excluded* the redesigned product from the sales figures used at trial, and thus
22 the redesigned product was not included in the verdict. *XpertUniverse, Inc. v. Cisco Sys., Inc.*,
23 No. 09-157-RGA, 2013 WL 6118447, at *2 (D. Del. Nov. 20, 2013). Samsung's cases are
24 entirely consistent with the relief Apple seeks.

25     **B.    The Issues Were Actually Litigated.**

26 It is beyond dispute that the questions of whether and what Apple should be paid for the
27 sale of the smartphones included in JX1500 were actually litigated, thus meeting the second
28 requirement for issue preclusion. "The requirement that the issue have been actually decided is

1  generally satisfied if the parties to the original action disputed the issue and the trier of fact

2  decided it." *In re Freeman*, 30 F.3d at 1466.  Infringement and damages for the Galaxy S II,

3  Droid Charge and Galaxy Prevail smartphones included in JX1500 was the subject of the August

4  2012 trial.  The jury returned a verdict on infringement and damages for each of these products as

5  to all units included in JX1500.  (*See* Sec. II(C), *infra*.)  Samsung raised non-infringement

6  defenses, but chose not to raise the defenses, in particular color, that it now claims bar most of the

7  supplemental damages.

8        Samsung argues that issue preclusion should not apply to the Droid Charge and Galaxy

9  Prevail products (███████████████████████ supplemental damages units) because it was

10  precluded at trial from arguing its alleged design-arounds for the '163 and '381 design-arounds.

11  But given the egregiousness of Samsung's misconduct, both law and equity support preclusion

12  here as well.  *See, e.g.*, *Novartis Pharm. Corp. v. Watson Labs., Inc.*, 611 F. App'x 988, 998-99

13  (Fed. Cir. 2015) (precluding relitigation of infringement in second action even though Novartis

14  complained that a key piece of evidence was precluded in first action); *Alzheimer's Inst. of Am.*

15  *v. Eli Lilly & Co.*, No. 10-CV-00482-EDL, 2015 WL 5243874, at *5 (N.D. Cal. June 5, 2015)

16  (rejecting argument that plaintiff did not have a full and fair opportunity to litigate its claim

17  because of excluded evidence).

18        Samsung cannot avoid preclusion by raising new noninfringement defenses.  *See* 18

19  Wright, Miller & Cooper, Federal Practice and Procedure § 4419, 498-500 (2nd ed. 2008) ("Nor

20  can preclusion be defeated by seeking rescue from a mistaken trial strategy," or "by undertaking

21  an improved evidentiary presentation[.]").  Samsung chose its discovery and trial strategy and

22  received its due process; it is not entitled to raise defenses at the supplemental damages phase that

23  it could have raised at trial.  *Simmons v. Small Bus. Admin.*, 475 F.3d 1372, 1374-75 (Fed. Cir.

24  2007) (applying issue preclusion even though plaintiff advanced a new, alternative theory and

25  "new" evidence that was available to plaintiff long before trial).

26        **C.**    **The Issues Were Essential to the Judgment.**

27        There could be nothing more essential to the judgment than the jury's findings regarding

28  whether and how much Apple should be paid for the sale of the units included in JX1500.

1  Because Samsung does not contest that the smartphones sold post-trial were either identical to or
2  the same in all material respects as products included in JX1500, issue preclusion applies.

3  Indeed, Samsung does not dispute that white, "dark gray," and "titanium" smartphones
4  were included in the totals in JX1500. Instead, Samsung argues that this fact can be ignored
5  because certain of the underlying documents which Apple submitted with its motion were not
6  admitted at trial. (Opp. at 15-16.) But the fact that the parties agreed to submit less detailed
7  information at trial to minimize sealing issues does not mean Samsung can dispute whether
8  infringement and damages for products included in JX1500 were resolved by and essential to the
9  verdict.[3] The entire purpose of the parties' stipulation was to prevent new challenges about the
10 products included in the verdict in exchange for the expedience of having a single, summary
11 document—JX1500—to present to the Court and jury. (*See* Dkt. 1597 at 1-3.) As the Federal
12 Circuit explained, "the parties filed a joint stipulation in which they agreed, among other things,
13 to make publicly available certain financial data underlying their damages calculations. Each
14 party agreed not to challenge the sufficiency of the evidence to support the other party's damages
15 calculations on the ground that the calculations were not based on more detailed financial
16 information."[4] *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1219 (Fed. Cir. 2013). All of
17 the damages experts agreed on the total units for each accused product, and there is no dispute
18 about where those numbers came from. (*See* Opp. at 18 (admitting JX1500 included "summaries
19 of the undisputed total—for all trade dresses and all patents—unit and revenue numbers (rounded,
20 by quarter) for both Apple and Samsung"); Opp. at 16-17 (admitting the detailed information
21 cited by Apple was used to create JX1500).)

22 The jury awarded damages on the units included in JX1500. *First*, the parties' damages

---

[3] Samsung's argument that Apple is judicially estopped misses the mark. (Opp. at 16.) Apple has never argued that the jury was provided with this detailed financial information. It argues that white and gray smartphones were included in JX1500, were found to infringe the D'677 patent and were the subject of the specific damages award included in the verdict for these three Galaxy S II products.

[4] The Federal Circuit's analysis regarding what information served as the basis for the jury's verdict occurred in the context of whether the public had an interest in seeing the parties' more detailed information. The court was not making a determination about what was or was not included in the infringement verdict.

APPLE'S REPLY ISO SUPPLEMENTAL DAMAGES
CASE NO. 11-CV-01846-LHK (PSG)
sd-675385

8

1  experts based their opinions on the exact same unit totals for each accused product—the totals
2  contained in JX1500.  (Dkt. 1839, Trial Tr. at 2165:5-11 (Musika); Dkt. 1842, Trial Tr. at
3  3028:15-21 (Wagner); *see also* Dkt. 2840 at 635:1-15 (Apple expert Julie Davis confirming there
4  is no dispute between she and Mr. Wagner "about how many infringing units of each product
5  Samsung sold during the damages period" in this case" and that those unit totals come from
6  JX1500); Dkt. 2841 at 1032:4-1033:25 (Wagner agreeing on the number of infringing units).)
7  There has never been any dispute that the jury based its award of damages on the opinions of the
8  parties' experts.

9        *Second*, Samsung's expert did the same per-unit supplemental damages calculation as
10  Apple, relying on the jury's damages award and the total infringing units taken from JX1500.
11  (*See* Wagner Decl. ¶¶ 13-14 (Wagner "calculate[d] a per-unit supplemental damages amount by
12  dividing the jury award for a given product by the number of sales of that product encompassed
13  within the jury award" and stating "the parties agree on these calculations.").)  In accordance with
14  the Court's March 1 Order, the "infringing units" are the total units for each product as reflected
15  in JX1500.  (Dkt. 2271 at 25.)  This necessarily means that every unit in JX1500 was found to
16  infringe and was the subject of the jury's damages award.  Samsung did not appeal the Court's
17  per-unit calculation at all, let alone argue that JX1500 overstates the number of infringing units.

18        *Third*, as Samsung itself argues, the jury instructions asked the jury to award damages
19  "attributable to the infringing products."  (Opp. at 6-7 (citing Dkt. 1903, Inst. No. 54).)  The jury
20  did so based on the totals they were provided in JX1500 and in Samsung's damages exhibit
21  DX676, an underlying financial spreadsheet which contained the exact same totals for unit sales
22  of the accused products.  Thus the jury instruction provides the basis of a separate conclusive
23  presumption favoring Apple.  Because the jury was instructed to award damages only for
24  smartphones that they concluded had infringed an Apple patent and they awarded damages for the
25  sales of Galaxy S II, Droid Charge and Galaxy Prevail smartphones included in JX1500, the
26  Court must conclude that the jury found all the smartphones included in those totals infringed.
27  *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the
28  law that jurors follow their instructions"); *Bains LLC v. ARCO Prods. Co.*, 405 F.3d 764, 770-71

APPLE'S REPLY ISO SUPPLEMENTAL DAMAGES
CASE NO. 11-CV-01846-LHK (PSG)
sd-675385

9

1  (9th Cir. 2005) ("We must presume that the jury followed [the court's] instruction.").

2  Samsung now makes a new argument: that the Court cannot conclude that the jury
3  awarded damages for all the *units* included in JX1500 because the jury did not award all of the
4  *damages* Apple sought. But there was never any dispute, either at trial, in post-trial motions or on
5  appeal, that all of these units were included in the verdict, since both experts used the exact same
6  unit totals and the jury was instructed to award damages for all infringing units. Nor is this
7  argument consistent with Samsung's statements about the scope and nature of the verdict on
8  appeal.[5] *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, Appeal No. 14-1335, Dkt. 34 at 9, 35 n.3.
9  The question of damages for products included in JX1500 is essential to the verdict, satisfying the
10  third element of issue preclusion.

11  **D.  Samsung Had a Full and Fair Opportunity to Argue Its Defenses.**

12  Each of the arguments Samsung now seeks to raise at the supplemental damages phase
13  was either available to Samsung at trial but not presented as a result of strategic choices by
14  Samsung, or was available but foreclosed at trial due to Samsung's discovery misconduct and a
15  resulting sanctions order. Samsung had a full and fair opportunity to raise these defenses.

16  Samsung argues that it did not have an opportunity to argue that the non-black
17  smartphones included in JX1500 did not infringe the D'677 patent because Apple did not accuse
18  those phones. But Apple never limited its allegations to a subset of Samsung's sales of the
19  Galaxy S II smartphones. In the pretrial statement, which conclusively defined Apple's
20  allegations, Apple accused the three models of the Galaxy S II smartphones by name, without
21  distinguishing by color. (*See* Dkt. 1189 at 2.) The pretrial statement supersedes the parties'
22  contentions and interrogatory responses and provides the controlling definition of the issues for

---

[5] Samsung's argument also is contradicted by its post-trial characterizations of how the jury calculated damages. Pursuant to Samsung's argument, the Court concluded that the jury's awards of damages for each product "correspond to an exact and consistent percentage of the amount Mr. Musika testified was warranted for each category." (Dkt. 2271 at 9.) In other words, according to Samsung and the Court, the jury took Mr. Musika's total damages numbers, which were based on the unit totals in JX1500, and applied a discount to those numbers to reach their award for each product. (*Id.* at 9-10.) If true, this means the jury applied its discount uniformly to all of the products—the jury did not apply a larger discount to the Galaxy S II damages totals to exclude units Samsung now claims are noninfringing based on color.

1  trial. As the Ninth Circuit has made clear, any references to an issue prior to the pretrial order are
2  "irrelevant," since "[t]he very purpose of the pretrial order is to narrow the scope of the suit to
3  those issues that are actually disputed and, thus, to eliminate other would-be issues that appear in
4  other portions of the record of the case." *S. Cal. Retail Clerks Union & Food Emp'rs Joint*
5  *Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984); *see also DP Aviation v.*
6  *Smiths Indus. Aerospace and Defense Sys. Ltd.*, 268 F.3d 829, 842 n.8 (9th Cir. 2001) (courts
7  look "to the pretrial order in determining the scope of the claims presented"); *Patterson v. Hughes*
8  *Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) ("A pretrial order generally supersedes the
9  pleadings, and the parties are bound by its contents").

10  Samsung was required to come forward with its defenses in the pretrial statement and at
11  trial; it had every opportunity, as well as ample motivation, to exclude any units that it now
12  claims are noninfringing. *S. Cal. Retail Clerks Union*, 728 F.2d at 1264 (defendant waived
13  defense by failing to include it in pretrial order); *Soverain Software LLC v. Victoria's Secret*
14  *Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) ("The fact that Soverain had
15  arguments which it did not make does not mean that Soverain lacked the incentive to make
16  them."); *cf. Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005) (refusing to modify pretrial
17  order to add claim because plaintiff had evidence available to plead the claim well before entry of
18  pretrial order); *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 n.5 (9th Cir. 1981)
19  (noting that exclusion of "contentions or evidence not listed in or disclosed in accordance with the
20  pretrial order has been repeatedly upheld."). If Samsung wanted to use evidence from Apple's
21  expert reports or interrogatory answers to argue noninfringement, it could have. If Samsung had
22  "relied on Apple's disclosed contentions," it could have sought to exclude the units it claims
23  included these alleged "design-arounds" in its expert reports or other disclosures before trial. It
24  did not. Samsung's own expert admitted that there was "no reason that [he] couldn't have
25  disclosed" an opinion that "white" and "gray" phones designed around the D'677 patent in his
26  April 2012 damages report. (Dkt. 2382-5 (Wagner Dep.) at 814:2-815:6.)

27  Samsung argues that Apple's experts limited their testimony to phones with black faces.
28  (Opp. at 4.) But Apple expressly accused every unit included in JX1500 at trial. Mr. Musika

1  repeatedly stated that all units from JX1500 were accused of infringement:

2         Q.      And have you done that on 1500?

3         A.      I'm sorry. Have I done what on 1500?

4         Q.      Identified which units infringe and which don't?

5         A.      All these units infringe.

6  (Dkt. 1839, Trial Tr. at 2166:18-22; *see also id.* at 2167:1 (adding that "[e]very unit on here is

7  infringing."); *id* at 2165:5-11 (directing jury to JX1500 for units by product).)  Samsung's expert

8  testified that, although he relied on Samsung's exhibit DX676 for his damages totals, that exhibit

9  contained the exact same unit totals for each product as JX1500.  (Dkt. 1842, Trial Tr. at 3028:18-

10  21 (Wagner).)

11        Finally, Samsung attempts to dismiss all of the Court's prior orders holding the parties to

12  their disclosed theories and calculations because those orders do not expressly refer to

13  supplemental damages.  But the reasoning of those orders applies with full force here: the parties

14  cannot belatedly raise arguments they could have raised before.  (*See* Mot. at 6-7.)

15  **II.   SAMSUNG CONCEDES IT FAILED TO CHALLENGE THE COURT'S METHODOLOGY ON APPEAL.**

16

17        Samsung does not even address its failure to appeal any aspect of the Court's

18  supplemental damages methodology set forth in the March 1 Order re Damages.  Apple was clear

19  that it sought supplemental damages on all smartphones included in the verdict.  The Court laid

20  out its methodology for calculating supplemental damages in it March 1 Order re Damages and

21  encouraged Samsung both in that order and in a later order to raise any issues concerning this

22  methodology on appeal.  (*See* Mot. at 18-19.)  Samsung appealed and attached the March 1 Order

23  to its brief, but it did not challenge the Court's methodology.  Samsung has thus waived any

24  further challenge, and is precluded now from contesting the Federal Circuit's findings.  *In re*

25  *Freeman*, 30 F.3d at 1465 ("Where an appellate court has decided a specific question, the

26  doctrine of issue preclusion should normally prevent relitigation of that issue").  This provides an

27  independent reason to grant Apple's motion.

28

### III. APPLE IS ENTITLED TO SUPPLEMENTAL DAMAGES ON ALL POST-VERDICT SALES OF THE FIVE SUPPLEMENTAL DAMAGES PRODUCTS.

For the reasons stated above, Samsung is precluded from raising color as a defense to infringement of the D'677 patent. Samsung does not contest that the D'677 patent is the only design patent infringed by the Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, or the Galaxy S II T-Mobile. (*See* Opp. at 21-23.) And Samsung concedes, as it must in light of its arguments to this Court, to the Federal Circuit and to the United States Supreme Court, that the sole basis for the jury's damages award for these Galaxy S II products was the disgorgement of Samsung's profits under 35 U.S.C. § 289, which applies only to design patents (making any alleged design-around for the '915 patent irrelevant).[6] (Dec. 10, 2015 H'rg Tr. at 8:2-24; 9:4-8; 33:16-21); *Apple Inc. v. Samsung Elecs. Co.*, Appeal No. 14-1335, Dkt. 34 at 9, 35 n.3.) Thus, Apple is entitled to supplemental damages for all post-verdict sales of these products. The parties agree on the per-unit amounts to be used in the supplemental damages calculation in accordance with the March 1, 2013 Order re Damages. (Wagner Decl. ¶¶ 13-14; Davis Decl. ¶¶ 5-7.) Applying those per-unit amounts to the total units sold for each product results in the following amounts due to Apple:[7]

| Product | Units | Per-Unit Amount | Total |
| --- | --- | --- | --- |
| Galaxy S II Skyrocket | ■ | ■ | $6,144,916 |
| Galaxy S II Epic 4G Touch | ■ | ■ | $96,920,602 |
| Galaxy S II T-Mobile | ■ | ■ | $74,706,398 |

Also for the reasons stated above and in Apple's motion, (Dkt. 3339-3 at 15-17), Samsung is precluded from raising its alleged design-arounds for the D'305, '163 and '381 patents. Thus all post-verdict sales of the Droid Charge and Galaxy Prevail products should be included in the

---

[6] According to Samsung, the Galaxy S II T-Mobile is the only product that received the alleged design-around for the '915 patent. (*See* Wagner Decl. ¶¶ 23-25, 30, 32.) As a result, the '915 patent does not serve as the basis for any monetary relief if supplemental damages are awarded for infringement of the D'677 patent in a manner consistent with the jury's verdict.

[7] The supplemental damages table in Apple's motion contained slight inconsistencies with Exhibit 2 to the Davis Declaration. The Davis Declaration and Exhibits reflect the correct numbers (which also have been corrected herein). (*See* Dkts. 3339-8 through 3339-13).

supplemental damages calculation, which results in the following amounts due to Apple:

| Product | Units | Per-Unit Amount | Total |
|---|---|---|---|
| Droid Charge | ██ | ██ | $620,467 |
| Galaxy Prevail | ██ | ██ | $267,488 |

## IV.   CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court enter a judgment for the supplemental damages due to Apple in the amount of $178,659,870 and pre-judgment interest on that award in the amount of $1,192,490 through March 24, 2016,[8] along with $2,363 for every day thereafter, as detailed in Exhibits 2 and 3 to the Declaration of Julie Davis.  (Dkts. 3339-8, 3339-10, 3339-12).

Dated:  February 3, 2016                              MORRISON & FOERSTER LLP

                                                                    By:   *Rachel Krevans*
                                                                            RACHEL KREVANS

                                                                            Attorneys for Plaintiff
                                                                            APPLE INC.

---

[8] Although Mr. Wagner reaches a different total amount of prejudgment interest owed by Samsung (based on a different supplemental damages total), he and Ms. Davis agree on the methodology for calculating prejudgment interest.  (*See* Opp. at 25.)