QUINN EMANUEL URQUHART &
SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S MOTIONS *IN LIMINE***<br><br><br>**Date**:   March 3, 2016<br>**Time**:   1:30 pm<br>**Place**:  Courtroom 8, 4th Floor<br>**Judge**:  Hon. Lucy H. Koh |

1    PLEASE TAKE NOTICE that on March 3, 2016, at 1:30 p.m., or as soon as the matter

2  may be heard by the Honorable Lucy H. Koh in Courtroom 8, United States District Court for the

3  Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San

4  Jose, CA 95113, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung

5  Telecommunications America, LLC (collectively, "Samsung") shall and hereby do move for an

6  order preventing Apple from introducing certain testimony, evidence, and arguments at trial.

7    This motion is based on this notice of motion and supporting memorandum of points and

8  authorities; the Declaration of Scott Kidman and exhibits thereto; and such other written or oral

9  argument as may be presented at or before the time this motion is taken under submission by the

10  Court.

11  **RELIEF REQUESTED**

12  •    An order excluding evidence or argument regarding Samsung's revenue or profit for all
      infringing sales.

13  •    And order excluding evidence of market share based on products not at issue in this trial.

14  •    An order excluding testimony of Apple's damages expert, Julie Davis, as to a purely legal
      issue.

15

16  **STATEMENT OF ISSUES**

17  Whether Apple may introduce at the upcoming damages retrial testimony, evidence, or

18  argument of the types identified above.

19

20  DATED: February 18, 2016        QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
21

22                                  By */s/ Victoria F. Maroulis*
                                        Victoria F. Maroulis
23                                      Attorney for SAMSUNG ELECTRONICS CO.,
                                        LTD., SAMSUNG ELECTRONICS AMERICA,
24                                      INC., and SAMSUNG
                                        TELECOMMUNICATIONS AMERICA, LLC
25

26

27

28

# I.     MIL# 1:  EXCLUDE EVIDENCE OR ARGUMENT REGARDING SAMSUNG'S REVENUE OR PROFIT FROM ALL INFRINGING SALES

Apple should not be allowed to refer to the total revenue and profit Samsung earned from sales of the accused products.  This Court excluded this information during the last trial, finding that disclosing Samsung's total revenues and profits would be prejudicial and misleading where Apple "ha[d] no claim to infringer's profits" because of the applicable notice dates for Apple's design patents.  Dkt. 2721 at 4; *cf. id.* (Apple's "presentation of [Samsung's] total revenue figure . . . misleadingly suggests that Apple may be eligible to recover infringer's profits on all of Samsung's infringing sales").[1]  The Court's reasoning applies here.  Ms. Davis's report again includes calculations of total revenue, including sales which are not eligible for an award of profits under 35 U.S.C. § 289.  *See* Davis Rpt. Ex. 37.1-R at 2 (stating Samsung made nearly $2 billion in revenue but identifying less than a third of that revenue as eligible for a § 289 remedy).

Apple has a history of misleading statements about Samsung's total revenue and profit, using them for the very purpose the Court found misleading and prejudicial—*i.e.*, to frame its total damages claim in terms of disgorgement, even where disgorgement was not an available remedy.  In the last trial, Apple repeatedly asked the jury to decide how much of the total infringing revenue Samsung should "give back" or "return" to Apple.  *See, e.g.,* Dkt. 2739 at 347:20-22 ("decide how much of that 3.5 billion Samsung should rightfully return to Apple"); *id.* at 353:15-17 (asking the jury to "take 379 million out of the 3.5 billion [Samsung] earned and to give that amount back to Apple"); *cf.* Dkt. 2844 at 1303:23-1304:5 (chiding Samsung for "asking to retain $3.45 billion, 99 percent, 99 percent of what they collected").  Apple did the same thing in the first trial, arguing that Samsung had "taken" $8 billion in revenue and the jury needed to decide how much it should

---

[1]  The Court granted-in-part a similar motion in *limine* in the 630 case, ruling that "Apple may not use the total revenue or profits figures in opening statements or closing arguments to compare Apple's requested damages to Samsung's total revenues or profits," because "the prejudicial value of such argument or statement would be high."  Case No. 12-cv-0630, Dkt. 1328 at 2.  The Court permitted Apple to question the parties' damages experts regarding Samsung's revenues, but only because both experts expressly relied on Samsung's revenues as an input to their methodologies. *Id.*  In this case, neither Ms. Davis nor Mr. Wagner have used Samsung's total revenues or profits as an input to their damages models, except with respect to sales eligible for an award of infringer's profits.

1  give back.  *See, e.g.*, Dkt. 1997 at 4225:1-4 (arguing that it would be "stupid [ ] for Apple to" let

2  Samsung "take an [*sic*] $8 billion of revenue"); *id.* at 4242:20-25 ("Don't let someone get a get-

3  out-of-jail free card.  Don't let someone take $8 billion from us."); *cf. id.* at 4219:19-4220:2

4  ("What they're saying to you is we want you to let us keep all $8 billion . . . That's the number.

5  The number for you to focus on is $8 billion.")

6      Apple's use of revenue figures is unduly prejudicial.  In *Uniloc*, the court held that "[t]he

7  disclosure that a company has made $19 billion in revenue from an infringing product cannot help

8  but skew the damages horizon for the jury."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292,

9  1320 (Fed. Cir. 2011).  Even if the patentee merely used the entire market value as a "check,"

10  doing so improperly "lend[ed] legitimacy" to its requested damages.  *Id.* at 1321.  Furthermore, by

11  belittling the defendant's royalty calculations as a tiny fraction of the overall infringing revenues,

12  the patentee "may have inappropriately contributed to the jury's rejection of his calculations."  *Id.*

13  Thus, the court upheld the trial court's ruling that the jury's deliberations had been "tainted"

14  because neither cross-examination nor even a specific curative jury instruction could effectively

15  put "[t]he $19 billion cat . . . back into the bag."  *Id.* at 1319-20; *see also LaserDynamics, Inc. v.*

16  *Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("Admission of [defendant's] overall

17  revenues . . . only serve to make a patentee's proffered damages amount appear modest by

18  comparison, and to artificially inflate the jury's damages calculation").[2]

19      In the same way the *Uniloc* expert used the defendant's total revenue as a "reasonableness"

20  check, Apple has used Samsung's total revenue to justify its total damages claim and even portray

21  it as "conservative."  *See, e.g.*, Dkt. 1997 at 4123:1-17 (arguing that Samsung's total infringing

22

---

23      [2]  Relying on *Uniloc*, district courts have consistently excluded evidence of the defendant's
total infringing revenues or profits as unduly prejudicial.  *See, e.g., Fujifilm Corp. v. Motorola*

24  *Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 1737951, at *14 (N.D. Cal. Apr. 8, 2015)
(rejecting patentee's argument that its "reliance on the total sales of the accused products should

25  be excused because [its expert] references the total sales only as 'a sort of reasonableness check'
of his actual reasonably royalty analysis."); *Mformation Techs., Inc. v. Research in Motion Ltd.*,

26  No. 08-04990 JW, 2012 WL 1142537, at *4 (N.D. Cal. Mar. 29, 2012) ("[U]nfair prejudice would
result from letting the jury hear that the accused devices generated a certain amount of profits.");

27  *Multimedia Patent Trust v. Apple Inc.*, No. 10-2618, 2012 WL 5873711, at *6 (S.D. Cal. Nov. 20,
2012) ("*[A]ny discussion* of the Defendants' total revenue carries a substantial danger of unfair

28  prejudice to the Defendant.") (emphasis added).

revenue was one of "two factors that are driving the damages in this case" and that the "damages in this case should be large because the infringement has been massive."); Dkt. 2844 at 1324:24-1325:6 ("Is [$379 million] a lot of money?  . . . [Y]es it is.  But, wow, there was an awful lot of infringement.  $3.5 billion.  That's the number you should judge against."); Dkt. 2739 at 347:13-16 ("People are going to talk about how much money the damages are, whether that's a large number.  You have to have the context.  $3.5 billion from selling infringing phones and tablets.")  Apple also tried to belittle Mr. Wagner's calculations in relation to Samsung's total infringing revenues.  *See, e.g.*, Dkt. 2842 at 1034:1-4 ("[Y]our total $52 million in damages would allow Samsung to keep about 99.5 percent of all the revenues it collected for infringing these patents; correct?"); *cf.* Dkt. 2844 at 1398:9-11 ("$52 million is a very small piece of $3.5 billion.").  And, in clear violation of the entire market rule, Apple directly expressed its total damages claim as a percentage of the entire market value of the infringing sales.  *See, e.g., id.* at 1303:23-1304:5 ("We have asked for approximately 10% of what they collected from infringing our [patents] . . . . They are asking to retain $3.45 billion, 99 percent, 99 percent of what they collected.").

     None of Apple's various justifications for these references withstands scrutiny.  First, Apple has argued that its disclosure of Samsung's total revenue causes no prejudice because "[n]one of Apple's damages calculations are based on the entire market value of Samsung's infringing products."  Dkt. 2908-3 at 32.  But this only underscores the irrelevance of Samsung's total revenue and the absence of any valid basis for Apple to compare its damages to the entire market value of the accused products.  Second, Apple has claimed Samsung's total profits on the sales subject to Section 289, but this fails to explain why Apple should be allowed to disclose Samsung's revenue or profits on *all* sales, instead of just those sales which are actually relevant to infringer's profits.  Allowing Apple to disclose Samsung's revenues or profits for all sales would be prejudicial, misleading, and unfairly "skew the damages horizon" in Apple's favor.  *Uniloc*, 632 F.3d at 1320.  The Court should not permit Apple to do so.

1  **II.**      **MIL #2:  EXCLUDE EVIDENCE OF MARKET SHARE BASED ON PRODUCTS**

2              **NOT AT ISSUE IN THIS TRIAL**

3          Apple has made much of the fact that Samsung's smartphone and tablet market share

4  increased significantly between 2010 and 2012.  *See, e.g.,* Davis Ex. 11.2-PT; PDX 34.9 (Musika

5  demonstrative); PDX 100.8 (Davis demonstrative).   Samsung's market share gains, however, are

6  irrelevant unless tied to the five products at issue in this trial or the specific intellectual property

7  rights the jury will be asked to value.  Yet Apple's market share evidence is not limited to the five

8  products at issue in the retrial—or even to products that have been found to infringe the patents-in-

9  suit—and Ms. Davis herself has admitted that there is no evidence that would quantify the amount

10 of market share Samsung supposedly took from Apple, the amount of market share the specific

11 phones at issue in this case have taken from Apple, or how much of the increased Samsung's

12 market share is attributable to Samsung's use of Apple's intellectual property.  *See, e.g.,* Kidman

13 Decl. Exhibit 2, 08/26/13 Davis Dep. Tr. at 250:12-252:1.  Permitting Apple to rely on evidence of

14 Samsung's market share gains without tying it to the products at issue would prejudice Samsung

15 in several ways, each of which justifies exclusion.

16         ***First***, the vast majority of sales reflected in Ex. 11.2-PT are of products which are not at

17 issue in the remand trial.  Prior to the 2013 damages retrial, the Court excluded evidence of sales

18 data for products that were not at issue (Dkt. 2645 at 3 (PX 1500A and PX 29A)), rejecting

19 Apple's argument that "the commercial success of other infringing products . . . is relevant to

20 showing demand and the lack of non-infringing alternatives."  Dkt. 2438 at 7.  Here, the five

21 remand products account for just ***16.6%*** of Samsung's sales during the time period depicted in

22 Exhibit 11.2-PT (Q3 2010 – Q1 2012), and just 19.81% of sales during the second quarter of

23 2011—the only period relevant to Apple's lost profits claim.  *Compare* Davis Rpt. Ex. 37.1-R at

24 1-2 *with* Ex. 29-PT.  In fact, the number of sales of the five remand products (4.8 million) is *less*

25 *than half the number of noninfringing sales* reflected in Exhibit 11.2-PT (10.7 million).  *See* Davis

26 Ex. 37.1-R at 3-4.  By including these irrelevant products, Exhibit 11.2-PT threatens to confuse

27 and mislead the jury about the proper scope of damages, to Samsung's prejudice.

28         ***Second***, allowing Apple to rely on Samsung's market share gains inevitably opens the door

to the first jury's findings of infringement for products that are irrelevant to this trial. When Samsung questioned Ms. Davis about the fact that Exhibit 11.2-PT included phones that were not at issue in the 2013 damages retrial, she made the baseless and unsupported claim that "90 percent of th[e] increase in 2010 . . . are infringing phones" (Dkt. 2840 at 719:9-720:11), a claim that Apple repeatedly emphasized throughout its closing argument. Dkt. 2844 at 1301:14-1302:1 ("[Ms. Davis] told you, and Mr. Wagner didn't dispute it, that 90 percent, 90 percent of those phones infringed Apple's patents."); *id.* at 1313:17-22; 1387:21-1388:1. In fact, the Court later ruled that Samsung, by questioning Ms. Davis about the fact that Exhibit 11.2-PT included noninfringing phones and phones not at issue in the damages retrial, had opened the door for Apple to directly ask Ms. Davis about the other Samsung phones found to infringe. Dkt. 2840 at 728:18-732:25. This presents Samsung with a Hobson's choice: either let Apple's misleading market share evidence go unrebutted, or necessarily open the door to the irrelevant and prejudicial fact that other Samsung phones were found to infringe. There is no justification for placing this prejudicial burden on Samsung. The market share evidence is not probative of any question in the remand trial. The Court, recognizing the risk of confusing the jury, has "generally precluded Apple from referring to the 2012 jury's infringement verdicts as to other Samsung products" (Dkt. 2774 at 2), and has also placed strict limitations on Samsung's ability to rely on the 2012 verdict. The Court should adhere to its prior rulings and keep the jury's focus on the five products that are actually at issue in the remand trial.

**Finally**, Apple's further use of market share data such as Exhibit 11.2-PT would be misleading and prejudicial because Samsung has *already compensated Apple* for the majority of the infringing sales reflected in that document. Samsung has paid Apple its total profit on the entire line of Galaxy S II devices, which are the source of Samsung's market share gains in the second half of 2011. *See* Dkt. 1931 at 16; Dkt. 2271 at 10. Samsung has also paid the royalty awarded on the Nexus S 4G, Replenish, and Transform. Dkt. 2271 at 10. Further, Apple has recovered its claimed lost profits and royalties for the products at issue in the second trial: Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail, Gem, and Indulge. Dkt. 2947 at 4 ("the jury adopted Apple's proposed lost profits and reasonable royalty

calculations").  All told, Apple has been fully compensated for nearly 75% of the infringing sales during the time period depicted in Exhibit 11.2-PT.  *See* Davis Rpt. Ex. 37.1-R at 4.  Apple cannot continue to portray Samsung's increased market share as ill-gotten gains when it has already been fully compensated for the lion's share of any injury that resulted.

The remand trial is narrow in scope.  The sole task for the jury is to determine the amount Apple is owed for the sales of five products.  Exhibit 11.2-PT introduces *more than a dozen* other infringing products that are not at issue in this trial, plus an untold number of noninfringing products that were not even at issue in the first trial.  Exhibit 11.2-PT should therefore be excluded.

III.   **EXCLUDE TESTIMONY OF JULIE DAVIS AS TO A PURELY LEGAL ISSUE**

A central issue in the upcoming damages retrial will be which of Samsung's expenses should be deducted from its gross profits to arrive at "total profit" for design patent infringement. The damages experts should testify on this issue based on their experience and expertise in damages calculations and accounting principles, not based on their interpretation of jury instructions. But in her recent deposition, Apple's expert, Julie Davis, repeatedly and explicitly based her opinions squarely on her interpretation of the Court's jury instructions. She repeatedly testified that under her interpretation of the phrase "directly attributable" in the Court's jury instructions, Samsung's profits could not be calculated by deducting operating expenses. By her own admission, the phase "directly attributable" is not found in Generally Accepted Accounting Principles, and the Court has not otherwise defined that term. Allowing Ms. Davis to testify or suggest that, based on her interpretation, the Court's jury instructions preclude the deduction of operating expenses constitutes an improper opinion on the law by a damages expert.

A.    **BACKGROUND**

Samsung's profits, as a remedy for design patent infringement, make up the vast majority of Apple's damages. Based on Ms. Davis' November 6, 2015 report, Apple will seek at least $189 million in Samsung's profits. Dkt. 3335-02 at 26. Samsung's damages expert, Michael Wagner, will present a significantly lower figure. The principle reason for the difference between the parties' positions is that Ms. Davis bases her calculation of Samsung's profits on its gross profits, (*Id*. at 66), while Mr. Wagner deducts both costs of goods sold and operating expenses (2015 Wagner Rpt. at 120). As such, the proper calculation of Samsung's profits, and more particularly which of Samsung's expenses are properly deductible, will be a central issue for the jury to decide.

In her recent deposition, Ms. Davis repeatedly invoked her own interpretation of the Court's phrase "directly attributable" (Dkt. 3335-02 at 57, *citing* Dkt. 1903) as the basis for not deducting a single dollar of operating expenses. Kidman Decl. Exhibit 1, Davis 12/2/2015 Depo. Tr. at 423:18-424:10; 548:7-549:23; 551:1-553:10. She admitted that the term "directly attributable" is not found anywhere in Generally Accepted Accounting Principles (*Id*. at 388:16-

1  23) and further acknowledged that, in her professional experience, she could not "recall any other

2  case where the standard was articulated in that language." *Id*. at 425:13-20.

3        Rather, Ms. Davis repeatedly testified that the phase "directly attributable" in the Court's

4  jury instructions is a legal term that, in her understanding, precluded her from deducting operating

5  expenses to calculate Samsung's profits.  She stuck to this position no matter how absurd the

6  result as a matter of accounting.

7        Q.  So let me get back to the hypothetical where a salesman is selling 50 phones and 50
            percent TVs and were trying to find the profit from the sale of the phones.  If you
8           are applying the standard that you applied in this case, you would not deduct any of
            the salesman's expenses from the sale of the phones, correct?
9        A.  That's correct, because that's my understanding of how the "directly attributable"
            language in the instructions in this case is to be applied.
10       Q.  And if you were asked to find the profits from the sale of the TVs, you wouldn't
            deduct any allocated expense of the salesman's, you know, expense in calculating
11          that profit either, would you?
         A.  If I'm required to use the same standard as we're using in this case, that would be
12          true.

13  *Id*. at 423:18-424:10.  *See also id.* 385:16-19 ("My understanding is 'directly attributable,' as used

14  in the context of this case by the court, has a specific meaning described by the court.");  *id.* 552:3-

15  8 ("if we are using the 'directly attributable' standard rather than the Generally Accepted

16  Accounting Principles standard, I would not deduct any expenses associated with the

17  [advertisement] in your hypothetical.");  *id.* 420:1-5 ("I would not deduct [the expenses in your

18  hypothetical] under the instructions provided by Judge Koh in this case.").

19        It would be one thing for Ms. Davis to offer an opinion that certain Samsung expenses are

20  not deductible based on her expertise as an accountant and damages expert.  But it is quite another

21  for her to testify or suggest that Samsung's operating expenses cannot ***legally*** be deducted under

22  the Court's instructions on the law.

23        **B.    MS. DAVIS SHOULD BE PRECLUDED FROM TESTIFYING THAT**

24             **OPERATING  EXPENSES  CANNOT  BE  DEDUCTED  UNDER  THE**

25             **COURT'S JURY INSTRUCTIONS**

26        In offering her opinions on properly deductible expenses, Ms. Davis should not be

27  permitted to refer to the Court's jury instruction or her interpretation of it.  This is improper expert

28  testimony.  Ninth Circuit law governs the scope of expert testimony.  *See Micro Chem., Inc. v.*

Case No. 11-cv-01846-LHK
SAMSUNG'S MOTIONS IN LIMINE

1   *Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).  And the Ninth Circuit has held that "an

2   expert witness cannot give an opinion . . . on an ultimate issue of law."  *Nationwide Transp. Fin.*

3   *v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also U.S. v. Boulware*, 558 F.3d

4   971, 975 (9th Cir. 2009) (upholding the trial court's exclusion of expert testimony that corporate

5   distributions were legally non-taxable because "exclusion of the expert testimony to the extent that

6   it constituted a legal opinion was well within its discretion").  In the *Nationwide* case, the Ninth

7   Circuit upheld the district court's exclusion of various sections of an expert's opinion, including

8   sections that discussed the law and/or applied the law to the facts of the case, and sections that

9   discussed the appropriate formula to calculate damages under the law.  *Nationwide Transp. Fin.*,

10   523 F.3d at 1058-59.  As in *Nationwide*, any testimony or suggestion by Ms. Davis that the phrase

11   "directly attributable" as used in the Court's jury instructions precludes the deduction of operating

12   expenses amounts to an improper opinion on an ultimate issue of law.[3]

13      The improper nature of Ms. Davis's testimony is not affected by the general rule that

14   experts may testify as to ultimate issues of ***fact***.  "Testimony as to ultimate issues is not permitted

15   when it consists of legal conclusions or opinions."  *Mannick v. Kaiser Found. Heath Plan, Inc.*,

16   2006 WL 1626909, at *17 (N.D. Cal. June 9, 2006) (excluding expert testimony regarding

17   whether certain steps were "readily achievable" under provisions of the ADA); *see also Boulware*,

18   558 F.3d 975.  Ms. Davis should not be permitted to testify or suggest that, as a legal matter,

19   "directly attributable" under the Court's jury instructions precludes her from deducting operating

20   expenses or otherwise ascribe legal significance to that phrase.  Fed. R. Evid. 702 (requiring that

21   expert opinion "help the trier of fact to understand the evidence or to determine a fact in issue").

22          *   *   *

23      In her testimony at trial, Ms. Davis should not be permitted to refer the Court's jury

24   instruction or her interpretation of it or to otherwise suggest that under the Court's instructions the

25   phase "directly attributable" precludes the deduction of operating expenses.

---

26     [3] Ms. Davis's interpretation of the Court's instruction on the law is not only improper, it is

27   also incorrect as made clear by Congressional Debate when the Act of 1887 was enacted.  *See* 18
Cong. Rec. 834 (1887) ("The patentee recovers the profit actually made on the infringing article . .

28   . that is, what the infringer realized from the infringing article minus what they cost him.").

DATED: February 18, 2016              QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP


                                      By /s/ Victoria F. Maroulis
                                          Victoria F. Maroulis


                                      Attorneys for SAMSUNG ELECTRONICS
                                      CO., LTD., SAMSUNG ELECTRONICS
                                      AMERICA, INC. and SAMSUNG
                                      TELECOMMUNICATIONS AMERICA, LLC