# Exhibit 1

Highly Confidential Outside Counsel Eyes' Only

Page 333

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5

6    APPLE, INC., a California   )

     Corporation,                )

7                                )

         Plaintiff,              )

8                                ) Civil Action

              vs.                ) No. 11-cv-01846-LHK

9                                )

     SAMSUNG ELECTRONICS CO.,    )

10   LTD., et al.,               )

                                 )

11       Defendants.             )

     _____)

12

13

14     HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

15

16                        VOLUME II

17         VIDEOTAPED DEPOSITION OF JULIE DAVIS

18                    Chicago, Illinois

19              Wednesday, December 2, 2015

20

21

22

23   Reported by:

24   PAULA CAMPBELL, CSR, RDR, CRR, CCP

25   JOB NO. 100619

Highly Confidential Outside Counsel Eyes' Only

Page 385

1       A.   That -- those terms are used in accounting,

2   yes.

3       Q.   And it's your understanding that those

4   terms are different than the term "directly

5   attributable," which is used in this case in

6   connection with the determining the infringer's

7   profits for infringing a patent design; correct?

8       A.   I think I missed the first part of your

9   question.  I might have to have that back.

10      Q.   It's your understanding that those terms,

11  "direct" and "indirect" under Generally Accepted

12  Accounting Principles, are different than the term

13  "directly attributable," which is used in this case

14  in connection with the infringer's profits in

15  connection with design patent infringement?

16      A.   I think that's probably true.  My

17  understanding is "directly attributable," as used in

18  the context of this case by the court, has a

19  specific meaning described by the court.

20      Q.   So previously when you were using the word

21  "directly attributable" to explain under Generally

22  Accepted Accounting Principles what would be

23  allocated and what wouldn't, in that context you

24  were referring to the GAAP concept of direct versus

25  indirect costs; correct?

Highly Confidential Outside Counsel Eyes' Only

Page 388

1    phrase "directly attributable" is in connection with

2    the law on awarding damages for design patent

3    infringement; correct?

4        A.   I will defer to a legal expert on that

5    subject.

6        Q.   And so, when you have used the phrase

7    "directly attributable," you were not suggesting

8    that your definition is the same as the legal

9    definition of that phrase as used in design patent

10   infringement cases, because you don't have the

11   expertise to say that?

12       A.   I have told you what my definition is.  I'm

13   not the person to interpret what the court's

14   definition is, because I would need to defer to a

15   legal expert on that.

16       Q.   And that phrase "directly attributable" is

17   a phrase that is not used in the area in which you

18   are in expertise, which is in this volume of

19   Generally Accepted Accounting Principles; correct?

20       A.   I think it's fair to say that the term

21   "directly attributable" is probably not used in the

22   broader base of Generally Accepted Accounting

23   Principles.

24       Q.   Now, earlier we were talking about

25   marketing expenses, and we agreed that businesses

Highly Confidential Outside Counsel Eyes' Only

Page 419

1    unfortunately, I think some long hypotheticals.  So

2    let me try to make it a little simpler to see if I

3    understand what GAAP would allow.  And so, let me

4    see if I can -- I can simplify it.

5            Let's say that a company has a salesman,

6    and that salesman sells phones and TVs, and that the

7    revenue that is generated from his efforts is 50/50.

8    If you wanted to treat the TV and the phone as a

9    separate product line, and you were trying to say

10   what's the operating margin of the sale on the

11   phone, under GAAP principles would you deduct from

12   the revenue from the phone, you know, a percentage

13   of the salesman's expense?

14       A.  If your goal is to report operating margin

15   by product line, and in your hypothetical you have

16   two product lines, you have an expense in your

17   hypothetical that relates to both product lines, it

18   would be appropriate under Generally Accepted

19   Accounting Principles to allocate that expense to

20   those two product lines for a presentation in the

21   financial statements.

22       Q.  Now, using the methodology you applied in

23   this case, would you deduct any of the expense of

24   the salesperson in determining the profit for the

25   sales of the phone?

Highly Confidential Outside Counsel Eyes' Only

Page 420

1    A.   In your hypothetical I am understanding

2  that there is nothing that ties that expense

3  directly to the sale of the product, therefore, I

4  would not deduct it under the instructions provided

5  by Judge Koh in this case.

6    Q.   Well, again, when you say "provided under

7  the instructions of Judge Koh," you are using -- you

8  are not using your expertise in interpreting that

9  instruction; right?  You don't have an opinion on

10  what that means?

11    A.   I don't have a legal opinion on what that

12  means.  I have to have an understanding of what that

13  means in order to apply it using my background as a

14  CPA and my experience in that type of situation.

15    Q.   When you say your experience in that type

16  of situation, prior to giving your opinion in this

17  case had you previously given an opinion as to what

18  directly attributed, such that there is a nexus

19  between the sale and the expense, had you previously

20  given an opinion as to what that meant?

21    A.   I don't believe I've seen that language

22  used in any other case.  What I meant when I said

23  "my experience," I was talking about my experience

24  as a CPA and my understanding of financial

25  statements and how they are compiled and presented.

Highly Confidential Outside Counsel Eyes' Only

Page 423

1    similar to the language that Judge Koh is using in

2    this case?

3        A.   No.

4        Q.   What's the language that was similar in

5    what case?  I mean, you said there was language in

6    other cases that were similar to Judge Koh, and

7    that's part ever your expertise.  What's the

8    language?

9        A.   I would have to think back on any specific

10   case that gave rise to an unjust enrichment type of

11   analysis.  Some of those included language that was

12   intended to be directly tied to the manufacture or

13   sale of the product.  Others were less direct and

14   had anything to do with the manufacture or sale of

15   the product.  In other words, they were activities

16   that were required in order to manufacture or sell

17   the product.

18       Q.   So let me get back to the hypothetical

19   where a salesman is selling 50 percent phones and

20   50 percent TVs and we're trying to find the profit

21   from the sale of the phones.  If you are applying

22   the standard that you applied in this case, you

23   would not deduct any of the salesman's expenses from

24   the sale of the phones; correct?

25       A.   That's correct, because that's my

Highly Confidential Outside Counsel Eyes' Only

Page 424

1    understanding of how the "directly attributable"

2    language in the instructions in this case is to be

3    applied.

4         Q.   And if you were asked to find the profits

5    from the sale of the TVs, you wouldn't deduct any

6    allocated expense of the salesman's, you know,

7    expense in calculating that profit either, would

8    you?

9         A.   If I'm required to use the same standard as

10   we're using in this case, that would be true.

11        Q.   And that's -- that's based again upon your

12   understanding, which is not an expert understanding,

13   as to what those words mean; correct?

14            MS. KREVANS:   Objection.   Misstates the

15        prior testimony.

16        A.   I'm not a legal expert, so I do not have a

17   legal opinion on what those words mean.   I do have

18   an opinion or an understanding of what those words

19   mean, based upon my experience as an accountant.

20        Q.   You said based upon your experience as an

21   accountant you know what the standard "directly

22   attributable," such as there is a nexus between the

23   sale and the expense.   Have you ever used that

24   standard in your practice as a professional

25   accountant?

Highly Confidential Outside Counsel Eyes' Only

Page 425

1        A.  I have never seen a case where the standard

2   was worded exactly as it has been in this case.

3        Q.  And is it your understanding that the court

4   exercised a great deal of care in choosing the words

5   that were to comprise the standard that was to be

6   applied in this case?

7            MS. KREVANS:  Objection.  Foundation.

8        A.  I don't have any way of knowing that, but I

9   would expect that to be true.

10       Q.  Do you expect that the exact language that

11  the court is using in this case matters?

12       A.  Absolutely.  I would agree with that.

13       Q.  And in your professional experience you

14  have never applied the standard which the court has

15  enunciated in this case that is the standard, that

16  the cost must be directly attributable to the sale,

17  such as -- such that there is a nexus between the

18  sale and the expense?

19       A.  I don't recall any other case where the

20  standard was articulated in that language.

21       Q.  Now, so the cases that you've dealt with

22  outside of this case used different language in

23  describing the standard; correct?

24       A.  Yes.

25       Q.  Now, if -- if the salesman here only sold

Highly Confidential Outside Counsel Eyes' Only

Page 548

1   A.  Yes.  That is a typical incremental profit

2   analysis.  To the extent that one is trying to

3   determine incremental profits, one would be looking

4   at whether an expense would be incurred absent an

5   increase in sales.  It's similar to a fixed or

6   variable cost analysis.

7   Q.  So in this case what you're saying, for

8   example, in applying your methodology is that if a

9   salesman was selling more than two products, and he

10  got paid a fixed amount for selling two products,

11  that you would not include a portion of his expense

12  in determining what the profit was in the sale of

13  one of those two products?

14  A.  If that expense would remain unchanged,

15  even if the infringing products were not sold, then

16  I would not deduct that expense.

17  Q.  Even though if you were calculating an

18  operating profit under Generally Accepted Accounting

19  Principles, to make a fair representation as to what

20  profit remained after deducting appropriate

21  expenses, you would deduct that expense?

22  A.  Generally Accepted Accounting Principles

23  require a different test and a different process,

24  and allocated expenses would be appropriate in that

25  circumstance.

Highly Confidential Outside Counsel Eyes' Only

Page 549

1    Q.  And with respect to, say, an

2  advertising/marketing expense, if an expense was

3  incurred to advertise four products, one expense and

4  there are four products that are advertised, if you

5  were to try to determine the profit from selling one

6  of those profits -- one of those products, under

7  your methodology would you deduct a portion of that

8  advertising expense?

9    A.  Am I doing that under the standard to be

10  applied in this case or under Generally Accepted

11  Accounting Principles?

12    Q.  Under the methodology you applied in this

13  case, if $1,000 was spent to advertise four

14  products, in calculating the profit from the sales

15  of one of those products, would you deduct a portion

16  of that advertising expense?

17    A.  If I had evidence of how much of that

18  expense related specifically to any given product

19  during the damages period, I could deduct that.  I

20  don't have any such evidence.  And if it's an amount

21  that would be unchanged, even if there were only

22  three products advertised, then that would not be

23  deductible either.

24    Q.  You understand that Budweiser has

25  advertisements where it shows horses saving a puppy;

Highly Confidential Outside Counsel Eyes' Only

Page 551

1    Q.  I'll ask the question again, because it's a

2  hypothetical.

3         Assume Budweiser has an advertisement that

4  is intending to sell beer and doesn't mention beer

5  and instead shows horses saving a puppy.  The intent

6  is to make sales of three different types of beer,

7  light beer, draft beer, regular beer.  And assume

8  that you wanted to determine the profit from the

9  sales of just one type of those beers, let's say

10 light beer.  Assume that.

11        Using your methodology that you applied in

12 this case, would you deduct a portion of that

13 advertisement in calculating the profit of the light

14 beer?

15        MS. KREVANS:  Objection.  Vague.

16    A.  If you're asking me to use the "directly

17 attributable" standard as opposed to the Generally

18 Accepted Accounting Principles standard, then I do

19 not believe the advertisement that you have

20 hypothesized in your example of a Clydesdale saving

21 a puppy would be appropriately deducted from any of

22 the beer revenues in that case.

23    Q.  And you would have the same answer if you

24 were trying to find the profits from the sale of the

25 category of draft beers?  You also, using your

Highly Confidential Outside Counsel Eyes' Only

Page 552

1    methodology, would not subtract any portion of the

2    expense of that advertisement; correct?

3         A.   Once again, if we are using the "directly

4    attributable" standard rather than the Generally

5    Accepted Accounting Principles standard, I would not

6    deduct any expenses associated with the Clydesdale

7    saving the puppy ad in your hypo -- in your

8    hypothetical.

9         Q.   And what you continue to refer to as the

10   "directly attributable" standard, using those two

11   words from the jury instruction, that's the

12   methodology that you used in this case?

13        A.   Yes.

14        Q.   And the same would be true if you were

15   trying to calculate the profits on regular beer,

16   that is if you were trying to calculate those

17   profits, and I'm going to say using the methodology

18   you used in this case, and you will, of course, say

19   the "directly attributable" standard that you were

20   interpreting the court used, if you apply the

21   methodology you used in this case, you would not

22   deduct from the revenue for regular beer any portion

23   of that advertising; correct?

24        A.   Once again, I think that's like your other

25   two examples in your hypothetical.  I would not

Highly Confidential Outside Counsel Eyes' Only

Page 553

1    deduct a portion of the Clydesdale saving the puppy

2    ad, because it was not directly attributable to the

3    draft beer in your example.

4          Q.  So under your methodology if you were

5    trying to determine the profit from the sale of the

6    aggregate of those three beers, you would deduct the

7    advertising expense; correct?

8          A.  I would only deduct the advertising expense

9    in your hypothetical if I were trying to follow

10   Generally Accepted Accounting Principles.

11         Q.  I'm trying to change the hypothetical.  My

12   first hypothetical was look at each one

13   individually.

14             All right.  Now, assume that we are looking

15   at these three products together, and it's just

16   what's your profit selling beer.  You sell beer.

17   You sell light, draft and regular.  What was your

18   profit in selling beer?  Using your methodology, you

19   would deduct from revenues the cost of that

20   advertisement?

21         A.  I would not deduct from revenues the cost

22   of the Clydesdale saving the puppy ad in your

23   hypothetical, because that ad is not attributable to

24   the sale of the beer.  There is nothing in that ad

25   that relates to beer.