1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA        )  C-11-01846 LHK
6  CORPORATION,                    )
                                   )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,          )
                                   )  MARCH 3, 2016
8          VS.                     )
                                   )  PAGES 1-87
9  SAMSUNG ELECTRONICS CO., LTD.,  )
   A KOREAN BUSINESS ENTITY;       )
10 SAMSUNG ELECTRONICS AMERICA,    )
   INC., A NEW YORK CORPORATION;   )
11 SAMSUNG TELECOMMUNICATIONS      )
   AMERICA, LLC, A DELAWARE        )
12 LIMITED LIABILITY COMPANY,      )
                                   )
13             DEFENDANTS.         )
   _____ )

14

15

16         TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22 OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                               CERTIFICATE NUMBER 9595
23

24

25     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
          TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      A P P E A R A N C E S:

 3      FOR PLAINTIFF          MORRISON & FOERSTER
        APPLE:                 BY:  HAROLD J. MCELHINNY
 4                                  RACHEL KREVANS
                                    NATHAN B. SABRI
 5                                  CHRISTOPHER L. ROBINSON
                               425 MARKET STREET
 6                             SAN FRANCISCO, CALIFORNIA  94105

 7                             BY:  ERIK J. OLSON
                               755 PAGE MILL ROAD
 8                             PALO ALTO, CALIFORNIA  94304

 9                             BY:  MARY PRENDERGAST
                               12531 HIGH BLUFF DRIVE
10                             SAN DIEGO, CALIFORNIA  92130

11                             WILMER, CUTLER, PICKERING,
                               HALE AND DORR
12                             BY:  WILLIAM F. LEE
                                    LAUREN B. FLETCHER
13                                  SARAH R. FRAZIER
                               60 STATE STREET
14                             BOSTON, MASSACHUSETTS  02109

15                             BY:  MARK D. SELWYN
                               950 PAGE MILL ROAD
16                             PALO ALTO, CALIFORNIA  94304

17      FOR DEFENDANT          QUINN, EMANUEL, URQUHART,
        SAMSUNG:               OLIVER & HEDGES
18                             BY:  VICTORIA F. MAROULIS
                                    SARA E. JENKINS
19                                  NICHOLAS A. LEEFER
                                    BRETT J. ARNOLD
20                             555 TWIN DOLPHIN DRIVE, 5TH FLOOR
                               REDWOOD SHORES, CALIFORNIA  94065
21
                               BY:  WILLIAM C. PRICE
22                             865 SOUTH FIGUEROA STREET, 10TH FLOOR
                               LOS ANGELES, CALIFORNIA  90017
23
                               BY:  CARL G. ANDERSON
24                                  JOSEPH B. MARTIN
                               50 CALIFORNIA STREET, 22ND FLOOR
25                             SAN FRANCISCO, CALIFORNIA  94111
```

```
 1      SAN JOSE, CALIFORNIA                    MARCH 3, 2016

 2                     P R O C E E D I N G S

 3         (COURT CONVENED AT 3:03 P.M.)

 4             THE CLERK:  CALLING CASE 11-CV-01846, APPLE, INC.,

 5      VERSUS SAMSUNG ELECTRONICS.

 6         IF THE PARTIES WOULD PLEASE STATE THEIR APPEARANCES FOR

 7      THE RECORD.

 8             MR. MCELHINNY:  GOOD AFTERNOON, YOUR HONOR.

 9      HAROLD MCELHINNY, RACHEL KREVANS, ERIK OLSON, NATHAN SABRI,

10      CHRISTOPHER ROBINSON, AND MARY PRENDERGAST FROM

11      MORRISON & FOERSTER ON BEHALF OF APPLE.

12             THE COURT:  OKAY.  CAN YOU GIVE ME ONE SECOND,

13      PLEASE.

14         NATHAN SABRI, CHRISTOPHER REYNOLDS, DID YOU SAY?

15             MR. MCELHINNY:  ROBINSON, YOUR HONOR.

16             THE COURT:  OH, I'M SORRY, ROBINSON.  AND

17      MARIE PENDERGRAST?

18             MR. MCELHINNY:  MARY PRENDERGAST.

19             THE COURT:  MARY.  OKAY, I SPELLED IT RIGHT.

20      MARY PENDERGRAST?

21             MR. MCELHINNY:  PRENDER, YOUR HONOR,

22      P-R-E-N-D-E-R-G-A-S-T.

23             THE COURT:  OKAY, PRENDERGAST.  OKAY, THANK YOU.

24             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.  BILL LEE,

25      MARK SELWYN, LAUREN FLETCHER, AND WITH ME AT THE TABLE IS
```

```
1          SARAH FRAZIER FROM WILMER, HALE FOR APPLE.

2               THE COURT:  OKAY.  WAIT ONE SECOND.

3          SO MR. LEE, MR. SELWYN AND -- I'M SORRY, I'M TRYING TO

4     WRITE THESE NAMES.

5               MR. LEE:  LAUREN FLETCHER, MS. FLETCHER, AND THEN

6     SARAH FRAZIER.

7               THE COURT:  OKAY.  THANK YOU.

8               MR. LEE:  THANK YOU.

9               MS. MAROULIS:  GOOD AFTERNOON, YOUR HONOR.

10    VICTORIA MAROULIS OF QUINN, EMANUEL, COUNSEL FOR SAMSUNG.  WITH

11    ME ARE BILL PRICE, NICHOLAS LEEFER --

12              THE COURT:  OKAY.  I'M SORRY, GIVE ME ONE SECOND.

13              MS. MAROULIS:  YOUR HONOR, WOULD IT BE HELPFUL IF THE

14    FOLKS THAT HAVEN'T APPEARED BEFORE GET UP AS I CALL THEIR

15    NAMES?

16              THE COURT:  SURE, THAT WOULD BE GREAT.

17          OH, WAIT.  YOU HAVE MR. ANDERSON, IS THAT RIGHT?

18              MS. MAROULIS:  MR. ANDERSON IS TO MY RIGHT AND HE HAS

19    APPEARED BEFORE.

20              THE COURT:  YES, I KNOW.  I'M SORRY.  I'M JUST TRYING

21    TO GET MY LIST OF EVERYONE WHO'S PRESENT.

22              MS. MAROULIS:  SO THERE'S MS. JENKINS.

23              THE COURT:  OKAY.

24              MS. MAROULIS:  MR. JOSEPH MARTIN.

25              THE COURT:  MR. JOSEPH -- OKAY.  WHAT IS MS. JENKINS'
```

1    FIRST NAME, PLEASE?

2            MS. MAROULIS:  SARA JENKINS.

3            THE COURT:  OKAY.  SARA JENKINS, JOSEPH MARTIN.

4            MS. MAROULIS:  BRETT ARNOLD.

5            THE COURT:  OKAY.  B-R-E-T-T?

6            MS. MAROULIS:  CORRECT.

7            MR. ARNOLD:  YES.

8            THE COURT:  OKAY, BRETT ARNOLD.

9            MS. MAROULIS:  NICHOLAS LEEFER.

10           THE COURT:  OKAY.

11           MS. MAROULIS:  AND OF COURSE YOU KNOW BILL PRICE.

12           THE COURT:  YES.  WELCOME BACK.

13           MR. PRICE:  THANK YOU.

14           THE COURT:  ALL RIGHT.  WELCOME.

15       SO YOU RECEIVED MY ORDERS FROM MONDAY NIGHT AND LAST

16   NIGHT, SO THAT RULED ON A LOT OF THE ISSUES.

17       SO JUST SOME COORDINATION.  WHEN YOU NEED ACCESS TO THE

18   EXHIBITS AND THE COURTROOM, PLEASE COORDINATE ALL THAT THROUGH

19   MS. SAKAMOTO.

20       AND ARE THERE ANY ADDITIONAL STIPULATIONS YOU INTEND TO

21   FILE, OTHER THAN THE ONES YOU'VE ALREADY FILED?

22           MS. MAROULIS:  NOT AT THE MOMENT, YOUR HONOR.  BUT IF

23    THERE ARE ANY, WE WILL FILE THEM BEFOREHAND.  I BELIEVE THERE

24    WAS THREE OR FOUR STIPULATIONS THAT THE PARTIES PUT IN THE FILE

25    YESTERDAY.

```
 1                  THE COURT:  OKAY.  I SAW 3436 THROUGH 3439.  DID YOU

 2      HAVE MORE THAN THOSE?

 3                  MS. MAROULIS:  I BELIEVE THERE WERE FOUR.

 4                  THE COURT:  OKAY.  THAT'S FOUR, SO MAYBE THAT'S --

 5            DO YOU KNOW OF ANY?

 6                  MR. MCELHINNY:  I THINK THAT MAY BE ALL.  THAT'S ALL

 7      WE KNOW ABOUT AT THE MOMENT, YOUR HONOR.

 8                  THE COURT:  OKAY.  ALL RIGHT.  THAT'S FINE.

 9            OKAY.  NOW, I WASN'T SURE, FROM THE PRETRIAL STATEMENT,

10      WHETHER THERE WAS A DISPUTE AS TO SUPPLEMENTAL DAMAGES FOR THE

11      FIVE PRODUCTS THAT ARE THE SUBJECT OF THE 2016 DAMAGES RETRIAL.

12      IS THERE A DISPUTE AS TO THAT, OR NO, THERE'S NOT?  IS THAT

13      CORRECT?

14                  MR. ANDERSON:  THERE'S NOT.

15                  MR. MCELHINNY:  I DON'T THINK THERE IS A DISPUTE.

16                  THE COURT:  OKAY, GOOD.  THANK YOU.  I JUST WASN'T

17       CLEAR AND I WANTED TO CONFIRM THAT WITH YOU.

18            OKAY.  SO LET'S TALK ABOUT THE FINAL LIST OF WITNESSES,

19      LAWYERS, LAW FIRMS.  YOU ALL HAVE PUT THAT TOGETHER THREE TIMES

20      NOW, SO YOU'LL HAVE TO PUT IT TOGETHER AGAIN.  I'D LIKE TO SET

21      A FILING DATE FOR THAT, AND THEN ALSO SET A DATE WHERE YOU'RE

22      GOING TO PREPARE THE JUROR BINDERS LIKE YOU'VE DONE FOR THE

23      LAST THREE TRIALS.

24            WHAT'S A DATE THAT WORKS FOR YOU?

25                  MS. MAROULIS:  YOUR HONOR, I BELIEVE THE LAST FEW
```

```
 1        TRIALS, IT WAS ABOUT A WEEK BEFORE THE TRIAL, SO IF THAT WORKS

 2        FOR THE COURT, THAT SHOULD BE SUFFICIENT TIME FOR THE PARTIES.

 3                THE COURT:  OKAY.

 4                MS. KREVANS:  THAT'S FINE FOR APPLE, YOUR HONOR.

 5                THE COURT:  OKAY.  TRIAL STARTS MARCH 28TH, SO SHALL

 6        WE SAY THE 21ST?

 7                MS. MAROULIS:  YES, YOUR HONOR.

 8                THE COURT:  OKAY.  SO THAT'LL BE MARCH 21 OF 2016.

 9            ALL RIGHT.  NOW, LET'S TALK ABOUT THE DEMONSTRATIVES.  I

10        KNOW THAT YOU ALL ARE PROPOSING TO BRING YOUR OBJECTIONS TO

11        CLOSING DEMONSTRATIVES THE MORNING OF CLOSING.

12            MY CONCERN IS I THINK THAT'S TOO LATE AND I DON'T WANT TO

13        HAVE OUR JURY -- YOU KNOW, OUR JURY WAITING WHILE I'M HAVING TO

14        RULE ON DEMONSTRATIVE OBJECTIONS, SO I THINK THAT NEEDS TO BE

15        EXPEDITED.

16            WHEN -- WHEN CAN YOU DO IT?

17            AND I'D LIKE TO ALSO IMPOSE A LIMIT, BECAUSE THERE ARE

18        TIMES WHEN YOU'VE GIVEN US 500 DEMONSTRATIVE SLIDES AND 91

19        OBJECTIONS AND IT'S TOO MUCH.

20            SO --

21            (DISCUSSION OFF THE RECORD BETWEEN COUNSEL).

22                THE COURT:  SO WE NEED TO SET DEADLINES FOR BOTH

23        OPENING DEMONSTRATIVES AND CLOSING DEMONSTRATIVES, AND WE NEED

24        TO SET PAGE LIMITS ON THE DEMONSTRATIVES.

25                MR. LEE:  YOUR HONOR, ON THE CLOSING
```

```
1    DEMONSTRATIVES --

2              THE COURT:  YES.

3              MR. LEE:  -- WHAT IF WE SUBMITTED THE DEMONSTRATIVES

4    THE MORNING BEFORE CLOSING TO EACH OTHER --

5              THE COURT:  OKAY.

6              MR. LEE:  -- AND THEN FILE OBJECTIONS BY 6:00 O'CLOCK

7    THE NIGHT BEFORE THE CLOSINGS?  WOULD THAT GIVE YOU ENOUGH

8    TIME?

9              THE COURT:  ONLY IF I CAN LIMIT THE NUMBER OF

10   DEMONSTRATIVES.

11             MS. MAROULIS:  THERE'S A 50 PAGE LIMIT FOR THE

12   OPENING, SO WE CAN DO EITHER 50 OR 60 FOR CLOSING, YOUR HONOR.

13             THE COURT:  HMM.  I THINK IT MIGHT BE HARD FOR US TO

14   RULE ON, LIKE, OBJECTIONS TO POTENTIALLY 120 SLIDES THAT WE GET

15   AT 6:00 P.M. THAT WE HAVE TO RULE ON BEFORE MIDNIGHT OR BEFORE

16   2:00 A.M.  I JUST THINK THAT'S A LITTLE BIT DIFFICULT FOR US.

17        I MEAN, WE'VE DONE THIS TRIAL, LIKE, THREE TIMES.  THIS IS

18   THE THIRD TIME.  I'M HOPING THAT YOU CAN ADVANCE THE DEADLINES

19   A LITTLE BIT MORE.

20             MR. LEE:  WHAT IF WE SET A LIMIT ON THE NUMBER THAT

21   WE WOULD EXCHANGE THAT WERE NEW, THAT HAD NOT COME INTO

22   EVIDENCE DURING THE COURSE OF THE EVIDENCE SO THAT WE NARROW

23   THE NUMBER THAT COULD BE THE SUBJECT OF OBJECTIONS AND NARROW

24   THE NUMBER THAT COULD BE COMING TO YOU?  STATED -- MAYBE STATED

25   DIFFERENTLY --
```

```
1              THE COURT:  SO IT'S LIMITED TO, WHAT, MAYBE 15 SLIDES

2     EACH THAT YOU CAN OBJECT TO?

3              MS. MAROULIS:  SO MY ONLY CONCERN WITH THAT IS THAT

4     SOME SLIDES THAT PREVIOUSLY CAME IN COULD BECOME OBJECTIONABLE

5     IN VIEW OF TESTIMONY.  IT'S JUST HARD TO -- SO THERE WOULDN'T

6     BE A VEHICLE FOR OBJECTING TO THEM IF WE ONLY SUBMIT NEW

7     SLIDES.

8         SO WE'RE OKAY WITH LIMITING NEW SLIDES, BUT IT WOULD BE

9     GOOD TO RESERVE THE RIGHT TO OBJECT TO PRIOR SLIDES AS WELL,

10    AND WE UNDERSTAND THE COURT'S DIRECTION TO NOT OVERBURDEN THE

11    COURT WITH THE NUMBER OF EXHIBITS AND OBJECTIONS.

12             MR. LEE:  YOUR HONOR, WHY DON'T -- I UNDERSTAND THAT

13    PROBLEM.  WHY DON'T WE -- IF WE DISCLOSE AT 9:00 O'CLOCK THE

14    DAY BEFORE THE CLOSINGS -- I MEAN, THERE'S A REASONABLE CHANCE

15    THAT CLOSINGS WOULD BE ON A FRIDAY GIVEN THE TIME LIMITS YOUR

16    HONOR HAS SET.  SO IF WE DISCLOSED AT 9:00 O'CLOCK THE MORNING

17    BEFORE THE CLOSINGS AND WE GOT YOU OUR OBJECTIONS BY 1:00

18    O'CLOCK THAT DAY?

19             THE COURT:  THAT WOULD HELP.  BUT I WOULD STILL LIKE

20    TO IMPOSE A LIMIT.  I MEAN, I REMEMBER ONE TIME YOU ALL HAD --

21    I THINK EVEN ONE PARTY HAD JUST 500 DEMONSTRATIVE SLIDES AND

22    THERE WERE ABOUT 91 -- OVER 100 OBJECTIONS JUST TO THOSE

23    PARTY'S SLIDES.  SO I JUST REALLY DON'T WANT TO RELIVE THOSE

24    NIGHTMARES.

25             SO WHAT CAN WE DO?  CAN WE LIMIT IT TO --
```

```
1            MR. LEE:  HOW ABOUT 75?  BECAUSE SOME OF THE SLIDES
2   ARE THINGS THAT INCLUDE THINGS LIKE TESTIMONY, WHICH WE'VE BOTH
3   USED BEFORE, AND I'M CONTEMPLATING THAT WE INCLUDE THOSE.
4         SO IF WE EACH HAD 75, 9:00 O'CLOCK THE DAY BEFORE THE
5   CLOSING, OBJECTIONS BY 1:00 O'CLOCK.
6            THE COURT:  SO YOU'RE HAVING A TOTAL OF 75 SLIDES
7   THAT YOU ARE GOING TO USE?
8            MR. LEE:  YES.
9            THE COURT:  WELL, I THINK I WOULD STILL LIKE TO LIMIT
10  THE NUMBER LIKE WE DO WITH THE HIGH PRIORITY OBJECTIONS.
11           MR. LEE:  OH, THE NUMBER OF OBJECTIONS?  OKAY.
12           THE COURT:  OR AT LEAST THE NUMBER OF SLIDES THAT YOU
13  CAN OBJECT TO, BECAUSE I WOULD PREFER NOT TO HAVE, YOU KNOW,
14  150 SLIDES, YOU KNOW, WITH MULTIPLE OBJECTIONS TO EACH SLIDE.
15  THAT'S, YOU KNOW, TOO MUCH BECAUSE THERE MAY BE OTHER THINGS
16  THAT WE NEED TO DO THAT NIGHT.  THAT'S MY ONLY CONCERN.
17           MR. MCELHINNY:  THE PROBLEM WITH THAT, YOUR HONOR, IS
18  THAT COULD MOTIVATE ONE SIDE TO PUT IN OBJECTIONABLE SLIDES
19  KNOWING THAT THEY WOULD HAVE MORE OBJECTIONABLE SLIDES THAN
20  THERE WERE OBJECTIONS.  IT JUST -- I MEAN, IT'S THE UNINTENDED
21  CONSEQUENCE OF THE LIMITATION.
22           THE COURT:  ALL RIGHT.  WELL, I'M DISAPPOINTED THAT
23  THIS IS SO DIFFICULT SINCE THIS IS THE THIRD TIME WE'RE DOING
24  THIS TRIAL.
25           ALL RIGHT.  THEN WHY DON'T WE DO THIS:  YOU CAN EXCHANGE
```

```
1    50 DEMONSTRATIVES FOR CLOSING AND YOU'LL FILE YOUR OBJECTIONS

2    BY 1:00 P.M. THE DAY BEFORE.  OKAY?

3              MR. LEE:  OKAY.

4              MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

5              THE COURT:  OKAY.  NOW, FOR OPENINGS, SINCE THIS IS

6    THE THIRD TIME WE'VE TRIED THIS CASE, I WOULD LIKE IT SOONER.

7    CAN YOU FILE IT ON WEDNESDAY, THE 23RD, AND I CAN GIVE YOU

8    RULINGS BY THE 24TH?  OR YOU COULD FILE IT I GUESS POTENTIALLY

9    ON THE 24TH AND I'LL GIVE YOU RULINGS ON THE 25TH.

10             MS. MAROULIS:  YES, YOUR HONOR, WE COULD DO THAT.

11             MR. MCELHINNY:  THE 24TH AND 25TH WORK, YOUR HONOR.

12             THE COURT:  ALL RIGHT THEN.

13        SO PLEASE FILE YOUR OBJECTIONS -- SO THAT MEANS YOU'LL

14   HAVE TO EXCHANGE AND MEET AND CONFER BEFORE THEN.  PLEASE FILE

15   YOUR OBJECTIONS ON MARCH 24TH, I'M GOING TO SAY BY 9:00 A.M.,

16   AND LET'S ALSO PUT A LIMIT ON THAT.

17        I BELIEVE YOU ONLY HAVE 45 MINUTES FOR OPENINGS.  IS THAT

18   RIGHT?

19             MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.

20             THE COURT:  OKAY.  SO CAN WE SAY 40 SLIDES FOR

21   OPENING?  BASICALLY THAT WOULD BE A MINUTE A SLIDE.  WHAT ABOUT

22   40 SLIDES?

23             MR. MCELHINNY:  THAT'S FINE WITH US, YOUR HONOR.

24             MS. MAROULIS:  YES, YOUR HONOR.

25             THE COURT:  OKAY.  ALL RIGHT.  SO THEN YOU'RE GOING
```

```
1      TO EXCHANGE 40 SLIDES --

2              MR. MCELHINNY:  JUST SO THAT IT'S CLEAR, IT'S SLIDES

3      AND VIDEO.

4              THE COURT:  SO 40 DEMONSTRATIVE SLIDES.  HOW ABOUT

5      THAT?

6              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

7              THE COURT:  SO 40 DEMONSTRATIVE SLIDES WILL BE

8      EXCHANGED, AND THEN YOU'LL FILE ANY OBJECTIONS BY 9:00 A.M. ON

9      MARCH 24TH.

10         FOR CLOSING, YOU'LL EXCHANGE 50 DEMONSTRATIVE SLIDES, AND

11     YOU'LL FILE ANY OBJECTIONS BY 1:00 P.M. THE DAY BEFORE CLOSING.

12         AND THEN WE CAN FINE TUNE THIS AS THE TRIAL PROGRESSES AND

13     WE HAVE A BETTER SENSE OF WHEN CLOSINGS ARE GOING TO BE.  WE

14     MAY NEED TO ADDRESS SOME OF THESE DEADLINES.

15         OKAY.  NOW, ON THE 630 CASE -- AND IF YOU HAVEN'T DECIDED

16     YET, THAT'S FINE -- BUT IS THERE GOING TO BE A PETITION FOR EN

17     BANC REVIEW?

18             MR. LEE:  THERE MAY BE.  WE HAVEN'T DECIDED YET, YOUR

19     HONOR.

20             THE COURT:  OKAY.  ALL RIGHT.

21         AND THEN I GUESS AFTER THAT, WE'LL HAVE TO FIGURE OUT WHAT

22     HAPPENS WITH THE INJUNCTION; CORRECT?

23             MS. MAROULIS:  YES, YOUR HONOR.

24             MR. LEE:  CORRECT.

25             MS. MAROULIS:  AS SOON AS MANDATE ISSUES, SAMSUNG
```

```
 1        WILL BE FILING A MOTION TO ENJOIN --

 2             THE COURT:  OKAY.  ALL RIGHT.

 3        WILL THAT BE A STIPULATED MOTION?

 4             MR. LEE:  I THINK IF MANDATE ISSUED -- IF THERE

 5   WAS -- IF PETITION FOR REHEARING WAS DENIED AND MANDATE WAS

 6   ISSUED, THERE WOULD LIKELY BE A STIPULATION.

 7             THE COURT:  OH, OKAY.  ALL RIGHT.  THANK YOU.

 8        OKAY.  I THINK THAT WAS IT FOR THE TRIAL HOUSEKEEPING.

 9   DID YOU HAVE ANY OTHER TRIAL HOUSEKEEPING ISSUES?  I DIDN'T

10   THINK SO.

11             MR. LEE:  I JUST WANTED TO CONFIRM, I THINK FOR EACH

12   OF THE PRIOR THREE TRIALS, SEQUESTRATION HAS BEEN TO SEQUESTER

13   FACT WITNESSES, BUT NOT EXPERTS, AND WE JUST WANTED TO CONFIRM

14   THAT THAT'S THE SAME HERE.

15             MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

16             THE COURT:  THAT'S FINE.

17             MS. MAROULIS:  YOUR HONOR, MAY WE SEEK CLARIFICATION

18   ABOUT OBJECTIONS TO THE TENTATIVE JURY INSTRUCTIONS AND THE

19   SCOPE OF THE OBJECTIONS?

20        WHEN THE PARTIES SUBMITTED THEIR JOINT INSTRUCTIONS, THERE

21   WEREN'T ANY DISPUTES, AND SO FAR AS WE ALL UNDERSTOOD THAT,

22   BECAUSE OF THE GROUNDHOG DAY RULE, WE WERE NOT TO RELITIGATE

23   ANY ISSUES ON WHICH THE PARTIES LOST.

24        WHEN WE RECEIVED THE ORDERS YESTERDAY, THERE'S A PREAMBLE

25   THERE THAT INVITES OBJECTION.  WE JUST WANTED TO UNDERSTAND
```

```
1    WHETHER THE COURT WANTS US TO RESUBMIT OUR PRIOR OBJECTIONS AND

2    PRIOR ALTERNATIVE INSTRUCTIONS, OR SIMPLY RELY ON THE PRIOR

3    OBJECTIONS WHERE, LIKE WE DID IN THE PREAMBLE OF THE FILING,

4    WE'RE INCORPORATING BY REFERENCE ALL OF THE PRIOR OBJECTIONS.

5              THE COURT:  SO I GUESS THE QUESTION I HAVE IS THE

6    FEDERAL CIRCUIT HAS ALREADY REVIEWED THESE JURY INSTRUCTIONS

7    AND EITHER YOU DIDN'T RAISE AN APPEAL OR YOUR APPEAL WAS

8    DENIED.

9         SO WHAT ARE YOU PRESERVING IT FOR?  YOU THINK THAT THE

10   SECOND TIME AROUND ON THE SAME INSTRUCTION THEY'RE GOING TO

11   COME OUT DIFFERENTLY?  I GUESS THAT'S WHAT WAS CONFUSING TO ME.

12        I OBVIOUSLY DON'T WANT TO HAVE TO RERULE ON THINGS I'VE

13   ALREADY RULED ON.  I GUESS IF YOU WANT TO JUST PUT IN A

14   SENTENCE THAT SAYS -- WELL, I DON'T KNOW.

15        WHAT'S APPLE'S RESPONSE?

16             MS. MAROULIS:  YOUR HONOR, WE WOULD PREFER TO NOT

17   BURDEN THE COURT WITH ANY ADDITIONAL RULINGS BECAUSE THE

18   COURT'S RULINGS ARE GOING TO STAND THE WAY THEY WERE.

19        WE WOULD PREFER TO JUST PRESERVE THEM BY FILING A ONE

20   SENTENCE OR TWO SENTENCE STATEMENT.

21        THERE ARE SOME INSTRUCTIONS THAT ARE CURRENTLY ON APPEAL

22   TO THE SUPREME COURT, AND THE DECISION ON SAMSUNG'S CERT

23   PETITION IS IMMINENT.  IT'S PROBABLY GOING TO BE DISCUSSED

24   TOMORROW AND SOME FORM OF ORDER IS GOING TO ISSUE IN THE NEAR

25   FUTURE.
```

```
 1            THERE ARE OTHER INSTRUCTIONS WHERE THE LAW MIGHT CHANGE IN

 2     THE INTERIM.  SO WE WOULD LIKE TO PRESERVE OUR OBJECTIONS, BUT

 3     WE DON'T WANT AND NEED THE COURT TO RULE ON THEM AGAIN.

 4            THE COURT:  I SEE.

 5            MS. MAROULIS:  SO IF THE COURT ALLOWS US, WE CAN

 6     SIMPLY PUT IN A STATEMENT INCORPORATING BY REFERENCE ALL THE

 7     PRIOR DOCKET NUMBERS AND THEN WE CONSIDER IT PRESERVED.

 8            THE COURT:  OH.  DO YOU THINK THE SUPREME COURT IS

 9     GOING TO RULE ON THE DESIGN PATENT DAMAGES ISSUE?

10            MS. MAROULIS:  WHEN?

11            THE COURT:  THEY'RE GOING TO SEEK -- WHETHER THEY'RE

12     GOING TO -- PARDON ME -- GRANT YOUR CERT PETITION?  DO YOU

13     THINK THEY'RE GOING TO DISCUSS IT TOMORROW?

14            MS. MAROULIS:  YOUR HONOR, IT'S LIKELY TO BE

15     SCHEDULED FOR THE CONFERENCE TOMORROW.  SOMETIMES CERT

16     PETITIONS ARE DISCUSSED IN MULTIPLE CONFERENCES.

17          SO AN ORDER CAN ISSUE AS EARLY AS MARCH 7TH, BUT IT COULD

18     BE LATER.

19            THE COURT:  I SEE.  OKAY.  AND THAT'S ON THE CERT

20     PETITION ON THE MERITS OPINION IN THE 11-1846 CASE?  IS THAT

21     RIGHT?

22            MS. MAROULIS:  CORRECT, YOUR HONOR.

23            THE COURT:  OKAY.

24            MS. MAROULIS:  IT RELATES TO LIABILITY AND DAMAGES OF

25     THE DESIGN PATENTS.
```

1          THE COURT:  NOW, THE SECOND CERT PETITION IS ON THE

2     INJUNCTION; CORRECT?

3          MS. MAROULIS:  THERE HASN'T BEEN A FILING YET OF A

4     CERT PETITION OR AN INJUNCTION.

5          THE COURT:  OH, OKAY.  I THOUGHT THERE WERE TWO CERT

6     PETITIONS PENDING.  IS THAT NOT RIGHT?

7          MR. LEE:  THERE'S ONLY ONE.

8          MS. MAROULIS:  NO, YOUR HONOR, ONLY ONE.

9          THE COURT:  OH, OKAY.  AND THAT'S ON THE MERITS

10     OPINION OF THE CIRCUIT ON THE FIRST CASE?

11          MS. MAROULIS:  THAT IS CORRECT.

12          THE COURT:  OKAY.

13          MR. LEE:  AND, YOUR HONOR, JUST TO ANSWER YOUR

14     QUESTION ON OUR POSITION --

15          THE COURT:  YES.

16          MR. LEE:  -- THE CERT PETITION GOES TO JURY

17     INSTRUCTIONS ON THE LIABILITY PORTION, NOT THE DAMAGES PORTION

18     OF THE DESIGN PATENTS AND THE QUESTION OF 289 AND WHETHER

19     APPORTIONMENT IS REQUIRED.

20          THE COURT:  UM-HUM.

21          MR. LEE:  THAT'S ALL.

22          FOR THE -- FOR ANY OTHER INSTRUCTION, OUR POSITION IS AS

23     WE SET FORTH IN THE JOINT SUBMISSION.  WE THINK THOSE THAT WENT

24     UP THAT WERE APPEALED, OR NOT APPEALED, AND HAVE NOW COME BACK

25     ARE THE LAW OF THE CASE AND THERE CAN BE NO FURTHER APPEAL FROM

1    THEM.

2            THE COURT:  UM-HUM.

3            MR. LEE:  WE JUST HAD DIFFERENT POSITIONS ON THIS

4    ISSUE.

5            THE COURT:  ALL RIGHT.  WELL, THE APPORTIONMENT WOULD

6    BE IMPLICATED IN THE DAMAGES JURY INSTRUCTIONS; RIGHT?

7            MR. LEE:  IF THE SUPREME COURT GRANTS CERT AND SAID

8    THAT 289 REQUIRED APPORTIONMENT ON SOME BASIS, THEN IT WOULD BE

9    IMPLICATED.

10            THE COURT:  UM-HUM.

11            MR. LEE:  IT COULD BE IMPLICATED.

12            THE COURT:  ALL RIGHT.

13            MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.  IT IS AT

14    ISSUE IN THE SUPREME COURT PETITION.

15        AND WE DON'T THINK THAT IT'S NECESSARY FOR THIS COURT TO

16    RESOLVE WHETHER IT IS GOING TO BE APPEALABLE OR NOT.  WE SIMPLY

17    ARE TRYING TO FIGURE OUT HOW TO PRESERVE OUR APPELLATE RIGHTS

18    WITHOUT UNDULY BURDENING THE COURT IN THE PRETRIAL PROCESS.

19            THE COURT:  ALL RIGHT.  MR. LEE, WHAT'S YOUR OPINION,

20    OR APPLE'S OPINION, ABOUT A ONE SENTENCE STATEMENT BY SAMSUNG

21    THAT SAYS WE WANT TO PRESERVE ANY OBJECTION?

22            MR. LEE:  I THINK THAT'S FINE, YOUR HONOR.  I THINK

23    THAT WON'T BURDEN THE COURT AND WON'T BURDEN THE PARTIES, AND

24    THEN WHETHER IT HAS ANY -- WHETHER IT WORKS OR NOT AND WHETHER

25    THEY'RE RIGHT OR WE'RE RIGHT WILL BE DETERMINED AT SOME LATER

```
1    DATE.

2              MS. MAROULIS:  THAT'S CORRECT.  IT'LL BE DETERMINED

3    IN A DIFFERENT FORUM.

4              THE COURT:  OKAY.  THAT'S FINE.

5              MS. MAROULIS:  THANK YOU.

6              THE COURT:  ALL RIGHT.  SO I THINK YOU HAVE UNTIL,

7    WHAT, MARCH 9TH TO FILE ANY OBJECTIONS TO THE PRELIMINARY AND

8    FINAL JURY INSTRUCTIONS.

9         OKAY.  AND I'M HOPING TO -- I WAS GOING TO TRY TO DO IT

10   TODAY, BUT I WAS NOT ABLE TO -- TO ALSO FILE THE VERDICT FORM.

11   HOPEFULLY TOMORROW, MAYBE, IF NOT TODAY, OR MONDAY, AND I'LL

12   GIVE YOU A WEEK AS WELL TO COMMENT ON THAT DOCUMENT.

13        OKAY.  WHAT ELSE?  ANY OTHER HOUSEKEEPING?  OTHERWISE

14   WE'LL GO TO THE MAIN EVENT TODAY.

15             MR. MCELHINNY:  WELL, YOU MAY TELL ME THIS IS NOT

16   HOUSEKEEPING.

17             THE COURT:  OH, OKAY.

18             MR. MCELHINNY:  BUT I WANTED TO ASK YOU, TO FOLLOW UP

19   ON YOUR RULING ON OUR MOTION IN LIMINE NUMBER 1 --

20             THE COURT:  OKAY.

21             MR. MCELHINNY:  -- WHICH IS THE MOTION ABOUT EVIDENCE

22   THAT POST-DATED THE DECISION IN THE FIRST CASE.

23             THE COURT:  YES.

24             MR. MCELHINNY:  AND YOUR HONOR HAD -- YOUR HONOR

25   DENIED THE MOTION WITHOUT PREJUDICE AND SAID WE CAN DEAL WITH
```

1  THAT, THE OBJECTIONS AT TRIAL.  THE RULES ARE CLEAR, BUT IF

2  THERE ARE OBJECTIONS, WE CAN DEAL WITH THEM AT TRIAL.

3    AND THE INQUIRY I WOULD -- WHAT I WOULD LIKE THE COURT TO

4  DO --

5    THE COURT:  UM-HUM.

6    MR. MCELHINNY:  -- IS TO DIRECT THE PARTIES THAT IF

7  THERE IS GOING TO BE ANY ATTEMPT TO OFFER SUCH EVIDENCE AT

8  TRIAL, THAT THAT BE BROUGHT TO THE ATTENTION OF THE COURT

9  BEFORE AN OFFER IS ACTUALLY MADE.

10    IN OTHER WORDS, WE DON'T WANT TO GET SURPRISED BY IT.  WE

11  DON'T WANT TO SEE A WITNESS ASKED ABOUT A QUESTION -- WE DON'T

12  WANT THE JURY TO HEAR ABOUT IT AND HAVE TO DEAL WITH AN

13  OBJECTION.

14    SO IF THERE'S ANY INTENT TO COME CLOSE TO THE GROUNDHOG

15  DAY RULES, WE WOULD LIKE, FOR EITHER PARTY THAT THINKS THERE'S

16  GOING TO BE AN ISSUE, THAT KNOWS THERE'S GOING TO BE AN ISSUE

17  THERE, TO BRING IT TO THE ATTENTION OF THE COURT IN ADVANCE SO

18  THAT OBJECTIONS CAN BE MADE BEFORE IT ACTUALLY GETS RAISED AT

19  THE TRIAL.

20    THE COURT:  AND HOW ARE YOU PROPOSING THAT BE DONE?

21  THAT IT BE FILED?  THAT WE'RE THINKING ABOUT ASKING WITNESS X

22  QUESTION Y?

23    MR. MCELHINNY:  NO, THAT THEY SIMPLY INFORM THE COURT

24  THAT WE THINK IT'S APPROPRIATE TO ASK THIS NEXT WITNESS ABOUT A

25  DOCUMENT THAT HAPPENED, AND WE INTEND TO DO THAT, AND WE WANT

1      THE COURT TO KNOW ABOUT IT IN ADVANCE AND THE OTHER PARTY TO

2      KNOW ABOUT IT IN ADVANCE SO THAT THE OBJECTIONS CAN BE HEARD

3      BEFORE IT'S ACTUALLY SPRUNG.

4           THE COURT:  AND DO THAT IN FRONT OF THE JURY.

5           MR. MCELHINNY:  NO, NOT IN FRONT OF THE JURY, YOUR

6      HONOR.  THAT'S THE POINT.

7           THE COURT:  I KNOW.  BUT I GUESS I'M -- WHEN ARE THEY

8      SUPPOSED TO STAND UP AND SAY THAT?

9           MR. MCELHINNY:  FOR EXAMPLE -- I MEAN, FOR EXAMPLE --

10          THE COURT:  OKAY.

11          MR. MCELHINNY:  -- IF, BECAUSE OF SOMETHING THAT

12     HAPPENED AT THE TRIAL, WE THOUGHT A DOOR HAD BEEN OPENED AND IT

13     WOULD BE APPROPRIATE TO CROSS-EXAMINE SOME SAMSUNG WITNESS

14     ABOUT SOME DOCUMENT THAT POST-DATED THE TRIAL, THAT BEFORE WE

15     ACTUALLY DID THAT, WE WOULD INFORM THE COURT THAT WE THINK THAT

16     DOOR IS OPEN AND THAT WE INTEND TO DO THAT EXAMINATION.

17          SO SAMSUNG WOULD KNOW IT'S COMING, WE'D KNOW IT'S COMING,

18     AND IF THERE ARE OBJECTIONS, THEY COULD BE HEARD BEFORE THE

19     DOCUMENT WAS ACTUALLY -- BEFORE THE WITNESS WAS ACTUALLY ASKED

20     QUESTIONS.

21          MS. MAROULIS:  YOUR HONOR, I'M NOT SURE WHAT COUNSEL

22     IS PROPOSING GIVEN THAT WE ALREADY HAVE THE HPO PROCESS WHERE

23     EXHIBITS HAVE TO BE PUT ON THE LIST, SO WE'LL HAVE THE FORMAL

24     PROCESS OF RULING AND OBJECTIONS.

25          IF THERE'S SOMETHING DIFFERENT THAT IS BEING PROPOSED,

```
1        IT'S NOT CLEAR WHAT THE PARAMETERS ARE.

2              MR. MCELHINNY:  IT JUST --

3              THE COURT:  SO WHEN YOU DO THE WITNESS EXCHANGES, YOU

4        KNOW, WHEN YOU'RE EXCHANGING EXHIBITS, DEMONSTRATIVES, DEPO

5        DESIGNATIONS --

6              MR. MCELHINNY:  RIGHT.

7              THE COURT:  -- CAN IT BE INCLUDED IN THAT SO THAT IT

8        GETS INCORPORATED IN THE HPO PROCESS?

9              MR. MCELHINNY:  IT JUST DEPENDS HOW IT COMES UP.

10             ANOTHER EXAMPLE THAT HAPPENED AT THE LAST TRIAL WAS AN

11       ATTEMPT TO CREATE A NON-INFRINGEMENT ARGUMENT ABOUT A PHONE

12       THAT NO EXPERT HAD TALKED ABOUT THROUGH CROSS-EXAMINATION OF AN

13       EXPERT.  SO OUR EXPERTS WERE ASKED ABOUT WHETHER OR NOT CERTAIN

14       PHONES INFRINGED THE PATENTS, EVEN THOUGH THEY WERE NOT PART OF

15       THE PHONES THAT YOUR HONOR HAD RULED ON IN TERMS OF THEIR

16       ADMISSIBILITY.

17             AND IF THAT KIND OF LINE OF QUESTIONING IS GOING TO GO IN,

18       WE WOULD LIKE TO BE ABLE TO OBJECT TO IT BEFORE IT'S ACTUALLY

19       SPRUNG ON THE WITNESS.

20             THE COURT:  SO WHEN ARE YOU SAYING THAT THAT HEADS-UP

21       BE DONE?

22             MR. MCELHINNY:  THE -- AT THE BREAK BEFORE IT'S DONE.

23             WE JUST DON'T WANT SURPRISE, YOUR HONOR.  THAT'S ALL.  I

24       MEAN, I'M NOT ASKING FOR FIVE DAYS NOTICE.  I'M JUST SAYING SO

25       THAT YOUR HONOR KNOWS THE OBJECTION IS COMING, SO THAT WE KNOW
```

```
1      AN OBJECTION IS COMING AND THAT THERE'S JUST -- IT'S NOT SPRUNG

2      AS A SURPRISE.  THAT'S ALL WE'RE ASKING.

3              MR. PRICE:  I THINK I KIND OF UNDERSTAND WHAT

4      MR. MCELHINNY IS SAYING.  IN CROSS-EXAMINATION, YOU MIGHT THINK

5      THE DOOR IS OPENED TO SOMETHING AND WANT TO GO BEYOND THE

6      COURT'S ORDER.

7          I THINK IF WE JUST -- YOU KNOW, IF WE'RE REQUIRED TO ASK

8      FOR A SIDE-BAR BEFORE WE DID THAT AND SAY, HEY --

9              MR. MCELHINNY:  PERFECTLY FINE WITH ME, YOUR HONOR.

10             MR. PRICE:  -- WE PLAN TO USE THIS, PROBLEM SOLVED.

11             MR. MCELHINNY:  THAT WOULD SOLVE IT.  I JUST -- THAT

12     WOULD BE -- IF THAT'S ACCEPTABLE TO YOUR HONOR, THAT'S ALL

13     WE'RE ASKING FOR.

14             THE COURT:  WELL, I WOULD ASK THAT YOU TRY TO

15     INCORPORATE IT INTO THE HPO PROCESS.

16             MR. PRICE:  RIGHT.

17             THE COURT:  SO TRY TO DISCLOSE IT WHEN YOU'RE

18     ACTUALLY DOING THE DISCLOSURES FOR YOUR EXCHANGES.  THAT WOULD

19     BE THE BEST, TO INCLUDE IT IN THAT PROCESS.

20             MR. MCELHINNY:  SURE.

21             MR. PRICE:  RIGHT.

22             THE COURT:  BECAUSE I WOULD REALLY PREFER NOT TO HAVE

23     THE JURY JUST WAITING AROUND FOR US TO RULE ON EVIDENTIARY

24     OBJECTIONS.  I THINK WE SHOULDN'T USE THEIR TIME THAT WAY.

25         SO TO THE EXTENT YOU CAN INCORPORATE IT IN THE HPO
```

1     PROCESS, THAT IS THE BEST BECAUSE I DON'T LIKE DOING SIDE-BARS.

2     THEY DON'T LIKE IT.  I'LL HAVE TO ASK THEM TO LEAVE, WE'LL HAVE

3     TO TAKE ALL THIS TIME TO MOVE THE JURORS IN AND OUT.  SO TRY TO

4     INCLUDE IT IN THE HPO PROCESS.

5               MR. MCELHINNY:  THANK YOU, YOUR HONOR.

6               THE COURT:  THIS IS THE THIRD TIME WE'RE DOING THIS.

7     THERE SHOULD NOT BE ANY SURPRISING.

8               MR. MCELHINNY:  WE'RE LEARNING, YOUR HONOR.

9               THE COURT:  YOU SHOULD KNOW IN ADVANCE.  YOU SHOULD

10    KNOW IN ADVANCE THAT YOU MAY OR MAY NOT WANT TO USE IT AND

11    INCLUDE THAT IN YOUR HPO PROCESS.  OKAY?

12              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

13              THE COURT:  THANK YOU.

14              MR. PRICE:  AND, YOUR HONOR, ONE OTHER THING.  I

15    DON'T KNOW IF THIS IS HOUSEKEEPING, BUT --

16              THE COURT:  YES.

17              MR. PRICE:  -- IN PREPARING FOR THE CASE AGAIN AND

18    LOOKING AT OPENINGS AND CLOSINGS THAT HAVE BEEN DONE, APPLE

19    HAS, IN THE PAST, SAID THINGS LIKE THAT SAMSUNG, YOU KNOW,

20    CHOSE TO INFRINGE, OR BROKE THE LAW, THINGS LIKE THAT WHICH

21    IMPLY, YOU KNOW, THAT WE WERE BRAZEN OR WHATEVER.

22         AND IF THAT COMES UP IN THIS OPENING -- I'M NOT ASKING

23    THAT IT BE EXCLUDED, BUT I'D LIKE PERMISSION TO BE ABLE TO

24    SAY -- OR WHOEVER IS DOING THE OPENING -- THAT, YOU KNOW, IT'S

25    BEEN DETERMINED THAT SAMSUNG HAD, YOU KNOW, OBJECTIONS --

```
 1     OBJECTIVELY REASONABLE DEFENSES SO THAT, YES, THERE WAS

 2     INFRINGEMENT, BUT, YOU KNOW, IF THEY'RE GOING TO SAY THAT MEANS

 3     YOU BROKE THE LAW OR CHOSE TO DO SOMETHING WRONG, THEN I THINK

 4     THE OTHER SIDE GETS TO BE SAID, TOO, WHICH IS THAT, WELL, BUT

 5     THERE'S BEEN A DETERMINATION THAT WE HAD OBJECTIVELY REASONABLE

 6     DEFENSES.  WE WERE WRONG.

 7              THE COURT:  WHAT'S YOUR RESPONSE TO THAT,

 8     MR. MCELHINNY?

 9              MR. MCELHINNY:  WELL, I THINK THAT'S QUITE COMPLEX,

10     BUT IT'S ALSO COUNTERFACTUAL.  THERE'S BEEN NO FINDING OF THIS

11     COURT THAT OBJECTIONS -- THAT SAMSUNG HAD OBJECTIVELY

12     REASONABLE DEFENSES THAT WERE CONTEMPORANEOUS WITH THE

13     DECISIONS THAT SAMSUNG MADE IN THE CASE.

14         WHAT YOUR HONOR HELD WAS WHEN THEY FINALLY GOT TO

15     LITIGATION, THEY RAISED REASONABLE DEFENSES.

16         BUT THERE IS NO TESTIMONY -- AND OBVIOUSLY MR. PRICE CAN

17     BRING IN TESTIMONY -- BUT THERE IS NO TESTIMONY FROM ANY

18     SAMSUNG EXECUTIVE, OR ANY PERSON WHO WAS INVOLVED IN THE

19     DECISION MAKING PROCESS, THAT THEY THOUGHT IT WAS FINE FOR THEM

20     TO GO AHEAD AND MAKE THE DESIGN CHANGES DESPITE KNOWLEDGE OR

21     AWARENESS OF THE PATENTS.

22         SO I -- MY RECOLLECTION IS THERE'S NO TESTIMONY BY SAMSUNG

23     THAT THEY EVEN KNEW ABOUT THE PATENTS.

24         SO I DON'T -- I MEAN, THE ANSWER IS I'M NOT SURE WHAT THE

25     ISSUE IS OR HOW IT WOULD COME UP OR HOW IT WOULD BE ADDRESSED.
```

1    OBVIOUSLY IF SOMETHING IS SAID INAPPROPRIATE IN AN ARGUMENT,

2    COUNSEL CAN ASK YOUR HONOR FOR A CLARIFYING INSTRUCTION.

3         BUT WHAT HE'S SAYING TO YOUR HONOR NOW WOULD BE

4    APPROPRIATE IS NOT BECAUSE IT'S JUST FACTUALLY WRONG.

5              MR. PRICE:  YOUR HONOR, THERE IS A FINDING OF THE

6    COURT THAT SAMSUNG HAD OBJECTIVELY REASONABLE DEFENSES, AND I

7    THINK IT'S UNFAIR TO USE LANGUAGE SUCH AS "CHOSE TO INFRINGE,"

8    YOU KNOW, "CHOSE TO DO SOMETHING ILLEGAL" IN OPENING OR

9    ARGUMENT IF YOU'RE NOT ALLOWED TO BRING IN THE OTHER PART

10   THAT -- YOU KNOW, WE'RE ENTITLED TO DEFEND OURSELVES.  WE'RE

11   ENTITLED TO COME TO COURT AND CHALLENGE, AND THAT WAS A FINDING

12   MADE BY THE COURT.

13        NOW, THIS MAY BE UNNECESSARY BECAUSE IT COULD BE THIS TIME

14   APPLE IS GOING TO SAY, YOU KNOW, WE COPIED, AND I UNDERSTAND

15   THAT THERE'S BEEN A RULING THAT THAT'S APPROPRIATE.

16        BUT IT'S WHEN YOU GET INTO THE, THE LANGUAGE OF "BROKE THE

17   LAW," "CHOSE TO DO SOMETHING WRONG."

18             THE COURT:  WHAT'S THE DIFFERENCE BETWEEN YOU CHOSE

19   TO COPY AND YOU CHOSE TO INFRINGE?  WHAT'S THE DIFFERENCE?

20             MR. PRICE:  WELL, THE DIFFERENCE IS THE SUGGESTION --

21   IS YOU'RE -- "CHOSE TO COPY" GOES TO HOW -- WHETHER THERE'S ANY

22   VALUE TO THE PATENT.  THAT'S WHY THE COURT HAS RULED THAT

23   COPYING EVIDENCE GETS IN.

24        WHEN YOU SAY "CHOSE TO INFRINGE," YOU'RE SAYING WE CHOSE

25   TO DO SOMETHING THAT WAS, YOU KNOW, AGAINST THE LAW, BAD, THAT

1      SHOULD BE PUNISHED.

2            AND THE JURY WOULD NEED TO SEE THE FULL SCOPE OF THAT,

3      WHICH IS THAT, WELL, WE CHOSE TO CONTINUE USING THIS

4      METHODOLOGY, BUT WE HAD OBJECTIVELY REASONABLE DEFENSES IN

5      DOING THAT.

6            THIS PART OF THE CASE, THIS ISN'T ABOUT PUNISHMENT.  IT'S

7      ABOUT THE VALUE OF PATENTS.  AND WHEN YOU USE WORDS LIKE "CHOSE

8      TO INFRINGE" OR "BROKE THE LAW," YOU'RE INTRODUCING A PUNITIVE

9      ASPECT TO IT.  IT'S NO LONGER, WHAT'S THE VALUE BECAUSE THERE

10     WAS COPYING?

11           IT'S, THESE GUYS DID SOMETHING EVIL.  AND, YOU KNOW, IF

12     THAT'S THE IMPRESSION THAT APPLE WANTS TO GIVE, THEN WE SHOULD

13     BE ABLE TO COME BACK AND SAY, YOU KNOW, THERE WERE OBJECTIVELY

14     REASONABLE DEFENSES.  THAT'S WHAT THE COURT HAS FOUND.

15           MR. MCELHINNY:  WE ACTUALLY REHASHED THIS BEFORE.

16     THIS IS THE QUESTION OF WHAT YOUR HONOR IS GOING TO TELL THE

17     JURY WHAT WAS FOUND IN THE ORIGINAL TRIAL.

18           AND YOUR HONOR ACTUALLY CAME UP WITH A PERFECT -- NOT

19     PERFECT, BUT -- I MEAN, IT WASN'T EVERYTHING WE WANTED, BUT IT

20     WAS A STATEMENT THAT YOU TOLD THE JURY WHICH WAS INCORPORATED

21     IN THE JURY INSTRUCTIONS WHICH BOTH PARTIES HAVE NOW SUBMITTED

22     TO YOUR HONOR TO GIVE THE EXACT SAME STATEMENT AGAIN.

23           THE FACT HERE, AS YOUR HONOR WILL RECALL, IS THAT SAMSUNG

24     WAS FOUND TO HAVE WILLFULLY INFRINGED THE TRADE DRESS IN THIS

25     CASE BY INTENTIONAL DECISIONS THAT IT MADE AT THE TIME THE

1    DESIGNS WERE MADE.

2         YOUR HONOR -- THEY WERE ALSO FOUND BY A JURY TO HAVE

3    WILLFULLY INFRINGED THE PATENT, AND YOUR HONOR SET THAT

4    DECISION BY THE JURY, YOUR HONOR SET IT ASIDE ON THE BASIS THAT

5    THE DEFENSES THAT THEY HAD RAISED AT TRIAL WERE REASONABLE.

6         THE QUESTION OF HOW MUCH OF THAT AND, YOU KNOW, IF WE CAN

7    GET TO AN AGREED STATEMENT OR WHAT YOUR HONOR WANTS TO TELL THE

8    JURY IS VERY COMPLEX.

9         THIS IS AN ATTEMPT TO PRE-EDIT SOMETHING THAT, AS

10   MR. PRICE CONCEDES, HE HASN'T HEARD YET.

11        AND THE WAY THIS IS TRADITIONALLY DONE, AS YOUR HONOR

12   KNOWS, IN TRIALS IS IF SOMETHING OBJECTIONABLE IS SAID, AN

13   OBJECTION IS MADE, AND IF YOUR HONOR AGREES THAT IT'S

14   OBJECTIONABLE, THEN YOU GIVE A -- YOU KNOW, YOU EITHER

15   OVERRULE -- YOU EITHER SUSTAIN THE OBJECTION OR YOU GIVE A

16   CAUTIONARY INSTRUCTION IF YOU THINK THAT'S APPROPRIATE.

17        THE COURT:  OKAY.  WELL, THE REQUEST IS DENIED.

18        LET'S GO TO THE SAMSUNG MOTIONS IN LIMINE, PLEASE.

19        ALL RIGHT.  WELL, WHY DON'T WE START WITH -- MAYBE WE

20   DIDN'T ASSIGN THIS CORRECTLY.  NUMBER 3 IS FOR THE SEVENTH

21   YEARS; IS THAT CORRECT?

22        MS. PRENDERGAST:  THAT'S CORRECT, YOUR HONOR.

23        THE COURT:  LET'S DO NUMBER 2 FIRST SO THAT --

24        (LAUGHTER.)

25        THE COURT:  -- THE FIFTH YEARS CAN BE PUT OUT OF

```
1     THEIR MISERY SOONER.  YOU'VE ALREADY HAD TO WAIT FOR SEVERAL

2     HOURS ALREADY.

3          (LAUGHTER.)

4               THE COURT:  SO YOU GOT THE LIST OF QUESTIONS.

5               MS. FRAZIER:  YES, YOUR HONOR.

6               THE COURT:  SINCE THIS IS SAMSUNG'S MOTION, I'LL

7     START WITH SAMSUNG, PLEASE.

8          AND IF YOU WOULD START OFF WITH STATING YOUR NAME.

9               MR. LEEFER:  SURE.  THANK YOU, YOUR HONOR.

10    NICHOLAS LEEFER FROM QUINN, EMANUEL FOR SAMSUNG.

11         NOW, MS. DAVIS'S EXHIBIT 11.2-PT SHOWS OVERALL MARKET

12    SHARE DATA THAT BEARS LITTLE, IF ANY, RESEMBLANCE TO THE SALES

13    OF THE FIVE PRODUCTS THAT ARE ACTUALLY AT ISSUE IN THIS TRIAL.

14         AS SUCH, IT HAS MINIMAL PROBATIVE VALUE, WHICH IS EASILY

15    OUTWEIGHED BY THE PREJUDICE TO SAMSUNG, THE LIKELIHOOD OF

16    CONFUSION TO THE JURY, AND THE RISK OF WASTING TIME.

17         THAT'S BECAUSE WE'RE ABOUT TO BEGIN A RELATIVELY NARROW

18    TRIAL THAT'S DESIGNED TO FIX THE DAMAGES FOR FIVE SPECIFIC

19    PRODUCTS, AND IN THIS TRIAL, THOSE FIVE PRODUCTS MAKE UP LESS

20    THAN 17 PERCENT OF THE OVERALL SALES THAT ARE REFLECTED IN

21    EXHIBIT 11.2-PT.

22         MOREOVER, THE SALES TREND FOR THE AT-ISSUE PRODUCTS

23    DIVERGE STARKLY FROM THE OVERALL TRENDS SHOWN IN THIS CHART.

24         NOW, AT THE LAST TRIAL, THIS WAS NOT LIMITED TO A SINGLE

25    QUESTION ON CROSS-EXAMINATION.  IT WAS ACTUALLY A THEME THAT
```

1    APPLE REFERRED TO REPEATEDLY THROUGHOUT THE TRIAL AND IN ITS

2    CLOSING ARGUMENTS.

3         MS. DAVIS TESTIFIED ABOUT THIS CHART ON DIRECT AND SHE

4    TESTIFIED THAT THE RELEASE OF CERTAIN AT-ISSUE PRODUCTS WAS

5    DRIVING THE INCREASE IN SAMSUNG'S MARKET SHARE.

6         ON CROSS-EXAMINATION, MS. DAVIS SAID, WITHOUT SUPPORT,

7    THAT 90 PERCENT OF THE INCREASE SHOWN IN ONE QUARTER IN 2010

8    WAS INFRINGING PHONES.

9         AND THEN IN CLOSING ARGUMENT, APPLE REFERRED TO THIS

10   EXHIBIT AND TO MS. DAVIS'S TESTIMONY NOT ONCE, NOT TWICE, BUT

11   THREE TIMES, FOR EXAMPLE, ARGUING THAT THERE WERE OTHER

12   MANUFACTURER ANDROID-BASED PRODUCTS THAT AREN'T ACHIEVING

13   MARKET SHARE GROWTH BY HAVING 90 PERCENT OF THEIR PHONES

14   INFRINGING.

15        THIS SORT OF EVIDENCE AND ARGUMENT IS EXTREMELY

16   PREJUDICIAL TO SAMSUNG, AND IT'S MISLEADING, BECAUSE THE

17   RECURRING POINT THAT APPLE IS TRYING TO MAKING -- OR TRYING TO

18   MAKE IS THAT IT SHOULD BE COMPENSATED BECAUSE THE AT-ISSUE

19   PRODUCTS DROVE THE INFRINGEMENT.

20        IN THIS CASE, THE AT-ISSUE PRODUCTS ARE LESS THAN 17

21   PERCENT OF THE OVERALL SALES SHOWN ON THIS CHART.

22        MOREOVER, THE IDEA THAT THERE'S A UNIVERSE OF INFRINGING

23   SALES OUTSIDE OF THOSE THAT ARE AT ISSUE IN THIS CASE IS LIKELY

24   TO MISLEAD AND CONFUSE THE JURY.  THE JURY MAY BE TEMPTED TO

25   COMPENSATE APPLE FOR SALES THAT ARE NOT AT ISSUE, OR IT MAY BE

1    CONFUSED ABOUT WHY THOSE SALES ARE NOT AT ISSUE IN THIS CASE.

2         THE KEY POINT HERE IS THAT DESPITE THE FACT THAT THESE

3    EXHIBITS WERE PREVENTED -- PRESENTED PREVIOUSLY, THE 403

4    BALANCING TEST IS CONTEXT DEPENDENT AND THE CIRCUMSTANCES HAVE

5    CHANGED SIGNIFICANTLY SINCE 2012 AND 2013.

6         IN 2012, APPLE WAS CLAIMING THAT ALMOST 80 PERCENT OF THE

7    OVERALL SALES THAT ARE REFLECTED IN THIS CHART WERE ALLEGEDLY

8    INFRINGING.

9         THEN IN THE 2013 TRIAL, APPLE CLAIMED THAT 36 PERCENT OF

10   THE SALES REFLECTED ON THIS CHART WERE INFRINGING PRODUCTS.

11        NOW THAT NUMBER IS DOWN TO LESS THAN 17 PERCENT.  AS THE

12   NUMBER OF SALES ACTUALLY AT ISSUE DECREASES, THE PROBATIVE

13   VALUE OF THE EVIDENCE DECREASES.

14        THE COURT:  I'M SORRY.  LET ME INTERRUPT YOU.  I

15   DIDN'T CATCH THAT.  36 PERCENT, WAS THAT THE 13 PRODUCTS IN THE

16   2013 RETRIAL?

17        MR. LEEFER:  IT WAS THE 12 SMARTPHONE PRODUCTS IN THE

18   2013 RETRIAL.

19        THERE WAS ALSO ONE TABLET PRODUCT THAT'S NOT --

20        THE COURT:  NOT ON THIS?

21        MR. LEEFER:  -- NOT ON THIS.

22        THE COURT:  OKAY.  SO THAT REPRESENTS 36 PERCENT.

23        OKAY.  GO AHEAD.  I'M SORRY.

24        MR. LEEFER:  SO AS THE PERCENTAGE OF SALES AT ISSUE

25   IN THE CASES DECREASE, THE PROBATIVE VALUE OF THE EVIDENCE HAS

1    ALSO DECREASED SUBSTANTIALLY, AND AT THE SAME TIME, THE RISK OF

2    PREJUDICE TO SAMSUNG HAS INCREASED.

3         IN A UNIVERSE WHERE APPLE IS CLAIMING 80 PERCENT OF THE

4    SALES SHOWN IN THIS CHART ARE INFRINGING, THERE'S A MUCH

5    SMALLER RISK OF THE JURY MISTAKENLY INFLATING THE VERDICT THAN

6    WHERE AT-ISSUE SALES MAKE UP LESS THAN 17 PERCENT.

7              THE COURT:  DO YOU HAVE THE -- SO IT SOUNDS LIKE

8    YOU'RE SAYING, THOUGH, MY FIRST BULLET IS WRONG, THAT APPLE --

9    ARE YOU SAYING THAT APPLE ASKED MS. DAVIS MORE THAN ONE

10   QUESTION ABOUT THE MARKET SHARE EVIDENCE?  OR MORE JUST THAT

11   THEY RELIED ON IT REPEATEDLY IN CLOSING?  I DIDN'T -- I DIDN'T

12   CATCH THAT.

13        AND IF YOU HAVE CITATIONS TO THE RECORD WHERE THERE WERE

14   ADDITIONAL QUESTIONS BY APPLE OF MS. DAVIS ABOUT THIS CHART,

15   CAN YOU GIVE THEM TO ME SO I CAN WRITE THEM DOWN, PLEASE?

16             MR. LEEFER:  YES, YOUR HONOR.

17        IN ADDITION TO THE ONE QUESTION YOU MENTIONED IN YOUR

18   QUESTIONS --

19             THE COURT:  UM-HUM.

20             MR. LEEFER:  -- MS. DAVIS TESTIFIED ABOUT THIS

21   EXHIBIT ON DIRECT EXAM.  YOU CAN FIND THAT AT -- THAT'S THE

22   2013 TRIAL TRANSCRIPT.

23             THE COURT:  OKAY.

24             MR. LEEFER:  DOCKET 2840 ON PAGES 638 AND 639.

25             THE COURT:  OKAY.

1          MR. LEEFER:  IT ALSO CAME UP DURING

2    CROSS-EXAMINATION.  ONE SPECIFIC CITATION WHERE MS. DAVIS PUT

3    OUT THE UNSUPPORTED 90 PERCENT CLAIM IS DOCKET 2840 ON

4    PAGE 719.

5          AND THEN THE CLOSING STATEMENTS BY APPLE, THE THREE -- THE

6    THREE STATEMENTS THAT I REFERRED TO CAN BE FOUND ON THE

7    TRANSCRIPT DOCKET 2844 ON PAGES 1301, 1302, AND 1313.

8          THE COURT:  OKAY.

9          MR. LEEFER:  AND THESE STATEMENTS THAT APPLE MADE,

10   ESPECIALLY IN CLOSING, ARE AN EXAMPLE OF WHY THIS EVIDENCE IS

11   PREJUDICIAL AND CONFUSING.

12         THEY TOOK THIS STATEMENT BY MS. DAVIS THAT 90 PERCENT OF

13   THE PRODUCTS ON THE CHART WERE INFRINGING AND THEY MENTIONED IT

14   REPEATEDLY.  THEY USED IT, FOR EXAMPLE, TO TRY AND REHABILITATE

15   THE SURVEY EVIDENCE THAT SAMSUNG SUCCESSFULLY CALLED INTO

16   QUESTION.

17         APPLE ARGUED THAT THE BEST SURVEY WAS THAT SAMSUNG MARKET

18   SHARE, AND I QUOTE HERE, "SKYROCKETED ON THE BACK OF 90 PERCENT

19   OF THEIR PRODUCTS INFRINGING," AND THAT'S FROM PAGE 1313 WHICH

20   I CITED EARLIER.

21         THAT'S MISLEADING FOR A NUMBER OF REASONS.  ONE OF THOSE

22   IS BECAUSE MOST OF THOSE SALES ARE NOT AT ISSUE HERE, AND

23   THEY -- THE IDEA THAT THERE ARE OTHER INFRINGING SALES DOESN'T

24   HELP THE JURY ARRIVE AT THE CONCLUSIONS IT NEEDS TO IN THIS

25   CASE.

1        THE JURY WILL NEED TO ASSIGN DAMAGES TO FIVE PRODUCTS, NOT

2    THE DOZENS OF OTHER PRODUCTS THAT MAKE UP THE OVERALL MARKET

3    SHARE.  IT'S NOT HELPFUL TO BRING IN THE OTHER INFRINGING SALES

4    AND IT PREJUDICES SAMSUNG BY RISKING EXCESSIVE COMPENSATION.

5        THE COURT:  DO YOU THINK IT'S AT ALL RELEVANT TO LOST

6    PROFITS OR INFRINGER'S PROFITS OR REASONABLE ROYALTY?  I KNOW

7    YOU'RE SAYING IT'S PREJUDICIAL, BUT DO YOU THINK IT'S AT ALL

8    RELEVANT?

9        MR. LEEFER:  I THINK THAT WHATEVER MINIMAL RELEVANCE

10   OR PROBATIVE VALUE THE EVIDENCE HAS IS SUBSTANTIALLY OUTWEIGHED

11   BY THE PREJUDICE AND OTHER RISKS.

12       THE COURT:  UM-HUM.

13       MR. LEEFER:  I THINK THAT THERE MAY BE SOME MARKET

14   SHARE EVIDENCE THAT COULD BE RELEVANT TO THOSE QUESTIONS,

15   ALTHOUGH I DON'T WANT TO SPECULATE ABOUT WHAT THAT MIGHT LOOK

16   LIKE.

17       THE EXHIBIT THAT WE HAVE IN FRONT OF US, THE 11.2-PT, THE

18   PROBATIVE VALUE IS SO SMALL AND SO HEAVILY OUTWEIGHED BY THE

19   RISK OF PREJUDICE AND CONFUSING THE JURY THAT IT SHOULD NOT BE

20   ADMITTED.

21       THE COURT:  SO IS THERE ANY CHART THAT YOU WOULD FIND

22   ACCEPTABLE?  LIKE MAYBE -- I'M NOT SURE HOW YOU COULD DO IT AND

23   LIMIT IT JUST TO THE FIVE PRODUCTS.  IS THERE ANY CHART THAT

24   YOU WOULD FIND ACCEPTABLE ON MARKET SHARE?

25       MR. LEEFER:  I HAVEN'T SEEN THAT CHART.  THIS IS THE

1    CHART THAT APPLE HAS USED AT THE PREVIOUS TRIALS AND THE

2    TESTIMONY FROM MS. DAVIS.

3         SO, AGAIN, I DON'T WANT TO SPECULATE ABOUT WHAT ANOTHER

4    CHART MIGHT LOOK LIKE WITHOUT SEEING IT.

5              THE COURT:  UM-HUM.

6              MR. LEEFER:  AS I SAID, IT'S POSSIBLE THAT THERE

7    COULD BE SOME LESS PREJUDICIAL MARKET SHARE DATA THAT COULD BE

8    PRESENTED, BUT I CAN'T SAY FOR SURE.

9              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10        LET ME HEAR FROM APPLE.

11             MS. FRAZIER:  GOOD AFTERNOON, YOUR HONOR.

12   SARAH FRAZIER FROM WILMER, HALE ON BEHALF OF APPLE.

13        SAMSUNG'S SECOND MOTION IN LIMINE IS ASKING THE COURT TO

14   RECONSIDER AN ISSUE IT'S ALREADY DECIDED AND I THINK NEEDS TO

15   BE DENIED FOR SEVERAL REASONS, THE FIRST OF WHICH IS THAT THIS

16   INVITATION TO REVISIT RULINGS THE COURT ALREADY MADE IS IN

17   DIRECT VIOLATION OF YOUR HONOR'S GROUNDHOG DAY RULE.

18        AS YOU KNOW, IN 2012, SAMSUNG OBJECTED TO THE INTRODUCTION

19   OF ITS MARKET SHARE INFORMATION, PARTICULARLY THE SLIDE THAT

20   APPEARS AT MS. DAVIS'S EXHIBIT 11.2-PT.

21        YOUR HONOR OVERRULED THAT OBJECTION, FINDING THAT THE

22   EXHIBIT WAS, IN FACT, PROBATIVE.

23        AT THE 2013 RETRIAL, MS. DAVIS DID TESTIFY ABOUT THE

24   EXHIBIT BRIEFLY DURING HER DIRECT TESTIMONY, WHICH MR. LEEFER

25   JUST MENTIONED.  THAT WAS WITHOUT OBJECTION.

1    THE ONLY OBJECTION THAT WAS MADE WAS TO HER BRIEF

2    CLARIFICATION THAT THE EXHIBIT DID, IN FACT, INCLUDE INFRINGING

3    PHONES BEYOND THOSE AT ISSUE, AND YOUR HONOR OVERRULED THAT

4    OBJECTION AS WELL.

5    SAMSUNG DID NOT APPEAL EITHER OF THOSE EVIDENTIARY

6    RULINGS.  UNDER THE CASE MANAGEMENT ORDER, THEY SHOULD REMAIN

7    IN EFFECT AS THE LAW OF THE CASE.  SAMSUNG HAS OFFERED NO GOOD

8    REASON TO DEVIATE FROM THOSE RULINGS, AND DOING SO THREATENS TO

9    OPEN UP PANDORA'S BOX OF ISSUES THAT THE PARTIES MAY WANT TO

10   SEEK TO HAVE RELITIGATED.

11   THE SECOND REASON, YOUR HONOR, APART FROM YOUR GROUNDHOG

12   DAY RULE, IS THAT THE CHART'S ADMISSIBLE NOW FOR THE SAME

13   REASONS IT WAS ADMISSIBLE IN THE FIRST TWO TRIALS.  IT'S

14   RELEVANT TO DAMAGES, AND THE FACT THAT THERE ARE ONLY FIVE

15   PRODUCTS AT ISSUE NOW DOESN'T DECREASE THAT RELEVANCE.

16   AS MS. DAVIS TESTIFIED AT THE 2013 TRIAL, 90 PERCENT OF

17   THE SALES IN THAT FIRST QUARTER OF INCREASE THAT THE CHART

18   FOCUSES ON ARE ATTRIBUTABLE TO PRODUCTS THAT INFRINGE THE EXACT

19   PATENTS THAT ARE AT ISSUE NOW.  THE CHART'S, THEREFORE,

20   PROBATIVE OF DEMAND FOR THE PATENTED FEATURES, WHICH IN TURN

21   OBVIOUSLY MAKES IT RELEVANT BOTH TO THE REASONABLE ROYALTY

22   ANALYSIS, SPECIFICALLY GEORGIA-PACIFIC FACTORS 5, 9, AND 11;

23   AND ALSO TO THE LOST PROFITS ANALYSIS, SPECIFICALLY PANDUIT

24   FACTOR 2.

25   BUT ALSO MORE BROADLY.  MS. DAVIS TALKS IN HER REPORT

1    ABOUT SAMSUNG TAKING SHARE FROM APPLE AND THE CRITICAL TIME AT

2    WHICH THAT HAPPENED AND THE IMPACT IT MIGHT HAVE HAD ON THE

3    ECOSYSTEM EFFECT.

4         YOUR HONOR ALLOWED THIS EVIDENCE IN IN BOTH THE RETRIALS

5    BECAUSE IT WAS PROBATIVE OF THOSE SAME ISSUES.

6         AND IN 2012, AT THE FIRST TRIAL WHEN YOUR HONOR RULED THAT

7    THIS INFORMATION WAS PROBATIVE, SAMSUNG MADE THE SAME OBJECTION

8    IT'S RAISING NOW, ESSENTIALLY THAT THE CHART INCLUDES PHONES

9    THAT AREN'T AT ISSUE.

10         BUT AT THE TIME THAT THE CHART CAME IN, NONE OF THE PHONES

11    HAD BEEN ADJUDICATED AS INFRINGING.  ARGUABLY, THE CHART'S MORE

12    RELEVANT NOW THAT WE KNOW A GOOD DEAL OF THOSE PHONES ARE

13    INFRINGING AND A GREAT DEAL OF THAT INCREASE CAN BE ATTRIBUTED

14    TO THE INFRINGING PRODUCTS.

15         WITH RESPECT TO THE 2013 RETRIAL, THE 12 SMARTPHONES AT

16    ISSUE THEN ACCOUNT FOR LESS OF THE MARKET SHARE INCREASE IN

17    THAT FIRST QUARTER THAN THE FIVE PRODUCTS AT ISSUE NOW.  THE

18    FIVE PRODUCTS AT ISSUE NOW ACCOUNT FOR ABOUT OVER 50 PERCENT OF

19    THAT INCREASE, AND THE 12 PRODUCTS AT ISSUE IN THE 2013 TRIAL

20    WERE ONLY 40 PERCENT OF THAT INCREASE.

21         SO TO THE EXTENT THE COURT BELIEVES THAT THERE IS A

22    CORRELATION BETWEEN THE SALES OR THE NUMBER OF PRODUCTS AT

23    ISSUE, I WOULD SUGGEST THAT THE MORE RELEVANT COMPARISON IS HOW

24    THOSE SALES ARE DRIVING THAT INCREASE, NOT THE OVERALL NUMBER

25    OF SALES ACROSS THE ENTIRE PERIOD OF THE CHART.

1           AND FINALLY, YOUR HONOR, I THINK THAT SAMSUNG'S MOTION

2    SHOULD BE DENIED BECAUSE THERE HASN'T BEEN ANY REAL PREJUDICE

3    ARTICULATED.  THE ONE QUESTION THAT MS. DAVIS WAS ASKED ON

4    REDIRECT THAT SHE CLARIFIED THE CHART DOES, IN FACT, INCLUDE

5    OTHER INFRINGING PRODUCTS IS NOT IN AND OF ITSELF PREJUDICIAL.

6    IF SAMSUNG CHOOSES TO OPEN THE DOOR TO THAT SAME QUESTION

7    AGAIN, I BELIEVE THE SAME RULING WOULD BE IN ORDER.

8           THE FIRST JURY WAS ASKED TO AWARD DAMAGES ON THESE SAME

9    FIVE PRODUCTS WITH COMPLETE KNOWLEDGE OF THE SCOPE OF SAMSUNG'S

10   INFRINGEMENT.  THEY WERE THE JURY THAT DECIDED IT.

11          AND AS TO A RISK OF CONFUSION OR MISLEADING THE JURY, I

12   THINK IT'S CLEAR THAT THE CHART IS JUST MARKET SHARE.  THE JURY

13   WON'T HAVE ANY NUMBERS ABOUT SALES, REVENUES, PROFITS OF THESE

14   OTHER PHONES.  THEY WOULD HAVE NO DATA FROM WHICH THEY COULD

15   POSSIBLY COME UP WITH A CALCULATION OF DAMAGES FOR PRODUCTS

16   BEYOND THE FIVE AT ISSUE.

17          AND THE JURY INSTRUCTIONS ARE VERY CLEAR AS TO THE SCOPE

18   OF THEIR DUTIES HERE.  THEY ARE RESPONSIBLE FOR ASSESSING THE

19   DAMAGES FOR JUST THOSE FIVE PRODUCTS.

20          THE COURT:  BUT YOU WOULD AGREE THAT THE 403

21   BALANCING HAS TO BE DONE NOW?  I CAN'T JUST REST ON 403

22   BALANCING FROM ALMOST TWO AND A HALF, THREE YEARS AGO.  DON'T I

23   HAVE TO LOOK AT THE CURRENT PRODUCTS AND THE CURRENT FACTS?

24          MS. FRAZIER:  I AGREE THAT 403 BALANCING NEEDS TO

25   TAKE INTO ACCOUNT THE CURRENT CIRCUMSTANCES.  I THINK UNDER

 1      THESE CURRENT CIRCUMSTANCES, THE CHART REMAINS AS PROBATIVE, IF

 2      NOT MORE SO, THAN IT WAS AT THE PRIOR TRIALS, AGAIN, BECAUSE WE

 3      NOW KNOW THAT THE PHONES ARE INFRINGING.

 4           AND I DO THINK THAT IT HAS RELEVANCE BEYOND THE FIVE

 5      PHONES SPECIFICALLY AT ISSUE IN THE RETRIAL BECAUSE IT SHOWS

 6      DEMAND FOR THE PATENTED FEATURES IN GENERAL.

 7              THE COURT:  EXPLAIN TO ME, THERE'S A DIFFERENCE IN

 8      THE NUMBERS HERE.  MR. LEEFER IS RELYING ON PERCENTAGE OF

 9      SALES.  YOU'RE RELYING ON PERCENTAGE OF INCREASE.

10          SO ARE YOU USING UNIT NUMBERS AND THEN --

11          LET ME ASK MR. LEEFER, MAYBE YOU CAN EXPLAIN, WHAT'S THE

12      DIFFERENCE BETWEEN YOUR 17 AND 36 PERCENT OF SALES FIGURES AND

13      THEN -- I'M SORRY --

14              MR. LEEFER:  I'M HAPPY TO EXPLAIN, YOUR HONOR, HOW I

15      ARRIVED AT THOSE PERCENTAGES IF YOU'D LIKE.

16              THE COURT:  OKAY.

17              MR. LEEFER:  THE NUMBER --

18              THE COURT:  AND ALSO -- SORRY TO INTERRUPT YOU -- CAN

19      YOU RESPOND TO MS. FRAZIER'S NUMBERS?  ARE THOSE ACCURATE, THAT

20      50 PERCENT AND 40 PERCENT OF THE INCREASE IS DRIVEN BY THE FIVE

21      PRODUCTS IN THE 2016 RETRIAL, WHEREAS THE 12 PRODUCTS IN THE

22      2013 RETRIAL ONLY ACCOUNTED FOR 40 PERCENT OF THE MARKET SHARE

23      INCREASE?

24              MR. LEEFER:  I'M NOT SURE ABOUT THE 40 PERCENT NUMBER

25      FROM THE FIRST TRIAL.

1          THE COURT:  OKAY.

2          MR. LEEFER:  THE 50 PERCENT INCREASE THAT WAS

3     MENTIONED FOR THE -- FOR THIS TRIAL, I THINK --

4          THE COURT:  UM-HUM.

5          MR. LEEFER:  -- IN APPLE'S BRIEFING, THAT NUMBER IS

6     FOR SEVERAL PRODUCTS IN A PARTICULAR QUARTER.  IT'S NOT THE

7     OVERALL DATA SHOWN IN THE CHART THAT'S SPECIFIC TO ONE QUARTER.

8          I BELIEVE THAT IT'S THE, THE SECOND TO THIRD QUARTER IN

9     2010.

10         THE COURT:  OKAY.

11         DO YOU AGREE WITH THAT, MS. FRAZIER?

12         MS. FRAZIER:  I AGREE WITH THAT, YOUR HONOR, WITH THE

13    CAVEAT THAT IT ACTUALLY EXTENDS.  THE SAME NUMBER HOLDS TRUE IF

14    YOU GO TO THE NEXT QUARTER, SO Q2 2010 TO Q4 2010.

15         THE COURT:  SO YOUR NUMBERS, MS. FRAZIER, THEN ARE

16    JUST LOOKING AT THE SECOND AND THIRD QUARTERS OF 2010?  IS THAT

17    RIGHT?

18         MS. FRAZIER:  CORRECT, YOUR HONOR, THAT FIRST PEAK IN

19    MARKET SHARE AFTER THE INFRINGING PHONES WERE FIRST INTRODUCED.

20         THE COURT:  OKAY.  AND YOU'RE BASING THAT BASED ON

21    UNITS THEN OR WHAT?

22         MS. FRAZIER:  UNIT SALES, YOUR HONOR.

23         THE COURT:  OKAY.

24         MS. FRAZIER:  AND THE INFORMATION UNDERLYING THOSE

25    CALCULATIONS CAN BE FOUND AT MS. DAVIS'S EXHIBIT 11.1 AND

1      37.1-R.

2              THE COURT:  ALL RIGHT.  SO LET ME GO TO MR. LEEFER.

3          HOW ARE YOUR PERCENTAGES OF SALES NUMBERS CALCULATED?  ARE

4      YOU -- WHAT -- FIRST OF ALL, WHAT TIME FRAME ARE YOU USING FOR

5      YOUR CALCULATION?

6              MR. LEEFER:  THE TIME FRAME IS THE TIME FRAME SHOWN

7      IN RED IN MS. DAVIS'S EXHIBIT, SO THAT'S THE THIRD QUARTER OF

8      2010 THROUGH THE FIRST QUARTER OF 2012.

9          THE EXHIBIT ACTUALLY INCLUDES THE SECOND QUARTER OF 2012

10     AS WELL, BUT THE IDC DATA, WHICH MS. DAVIS REFERS TO IN HER

11     REPORT, ONLY EXTENDS TO THE FIRST QUARTER OF 2012.

12             THE COURT:  AND ARE YOU USING PRICE OF THE PHONE?  OR

13     WHAT -- WHAT -- YOU'RE NOT USING UNITS; RIGHT?  OR ARE YOU?

14     ARE YOU USING UNITS?

15             MR. LEEFER:  YES, YOUR HONOR, WE'RE USING UNITS.

16             THE COURT:  OKAY.

17             MR. LEEFER:  AND THE NUMBERS COME FROM MS. DAVIS'S

18     EXHIBIT 37.1-R.  IT SHOWS THE UNIT SALES OF THE FIVE PRODUCTS

19     AT ISSUE IN THIS CASE, WHICH ARE SUMMED UP FROM THE THIRD

20     QUARTER OF 2010 THROUGH THE FIRST QUARTER OF 2012.

21         THAT NUMBER IS THEN DIVIDED BY THE SAME SUM THAT CAN BE

22     CALCULATED FROM EXHIBIT 29-PT.

23         THESE CAN ALL BE FOUND, BY THE WAY, AT DOCKET NUMBER 3342.

24     THAT'S A VERSION OF MS. DAVIS'S REPORTS WITH THESE EXHIBITS.

25             AND IF YOU SUM UP THE SAMSUNG UNITS SOLD NUMBERS FOR THE

1    SAME QUARTERS --

2              THE COURT:  UM-HUM.

3              MR. LEEFER:  -- AND USE THAT AS THE DENOMINATOR, YOU

4    ARRIVE AT A NUMBER OF 16.6 PERCENT FOR THAT TIME PERIOD.

5              THE COURT:  OKAY.  SO YOU AGREE THAT MS. FRAZIER'S

6    NUMBERS ARE RIGHT, BUT YOU THINK THEY'RE JUST LIMITED TO ONE OR

7    TWO QUARTERS OF ONE YEAR?  IS THAT YOUR POSITION?  OR -- AS FAR

8    AS THE FIVE PRODUCTS IN THE 2016 RETRIAL?

9              MR. LEEFER:  MY UNDERSTANDING OF THE NUMBER, THE 50

10   PERCENT NUMBER THAT WAS DISCUSSED HERE WAS THAT WAS SPECIFIC TO

11   TWO PRODUCTS FOR ONE QUARTER OF THE DATA ON THIS CHART.

12        BEYOND THAT, I'M NOT SURE WHETHER OR NOT OTHER NUMBERS

13   THAT WERE DISCUSSED WERE CORRECT.  I HAVEN'T HAD A CHANCE TO

14   CHECK THOSE.

15             THE COURT:  OKAY.  SO YOU'RE SAYING TWO PRODUCTS

16   ACCOUNTED FOR 50 PERCENT OF THE MARKET SHARE INCREASE IN ONE

17   QUARTER IN 2010?  THAT'S YOUR UNDERSTANDING OF WHAT THE

18   STATISTICS SUPPORT?

19             MR. LEEFER:  YES, YOUR HONOR, THAT'S MY

20   UNDERSTANDING.

21             THE COURT:  OKAY.

22             MR. LEEFER:  MY UNDERSTANDING IS OVERALL THAT NUMBER

23   DROPS PRECIPITOUSLY TO LESS THAN 17 PERCENT.

24        SO YOU HAVE 50 PERCENT IN ONE QUARTER, AND THEN MUCH, MUCH

25   LOWER THAN THAT THROUGHOUT THE REST OF THE DATA SHOWN ON THE

```
1    CHART.

2           THE COURT:  GOT IT.  OKAY.

3        NOW, MS. FRAZIER, YOU AGREE THAT MR. LEEFER'S NUMBERS ARE

4    CORRECT, YOU JUST THINK THAT HE SHOULD LOOK AT A MORE NARROW

5    TIME FRAME?  IS THAT RIGHT?  OR DO YOU THINK THAT HIS NUMBERS

6    ARE WRONG?

7           MS. FRAZIER:  I BELIEVE THAT THEY ARE ROUGHLY

8    ACCURATE.  I THINK THERE MIGHT BE A LITTLE BIT OF DISPUTE

9    AROUND THE MARGINS, BUT I CERTAINLY DON'T DISPUTE THAT THE

10   ORDER OF MAGNITUDE IS CORRECT.

11       I THINK BOTH THAT IT'S MORE APPROPRIATE TO FOCUS ON THE

12   INCREASE THAT THE CHART IS FOCUSSED ON, THAT MS. DAVIS HAS BEEN

13   FOCUSSED ON, BUT ALSO, YOUR HONOR, I DON'T THINK IT'S NECESSARY

14   OR REQUIRED THAT WE LIMIT OURSELVES TO THESE FIVE PRODUCTS.

15   THE FACT THAT THE MAJORITY OF THE SALES ARE INFRINGING OF THE

16   PATENTS AT ISSUE CONTRIBUTES TO THE PROBATIVE VALUE OF THIS

17   CHART.  WHETHER IT'S THESE FIVE PRODUCTS OR OTHER PRODUCTS

18   FOUND TO INFRINGE THOSE SAME PATENTS, IT'S PROBATIVE OF DEMAND

19   FOR THE PATENTED FEATURES.

20       AND AS SAMSUNG EVEN CONCEDED IN THEIR MOTION, BEING ABLE

21   TO TIE THE CHART TO THOSE FEATURES DOES, IN FACT, MAKE IT

22   PROBATIVE, EVEN UNDER SAMSUNG'S VIEW.

23           THE COURT:  OKAY.  I'M GOING TO GIVE MR. LEEFER THE

24   LAST WORD SINCE THIS IS SAMSUNG'S MOTION.

25       DO YOU HAVE ANYTHING ELSE YOU'D LIKE TO ADD?
```

1          MR. LEEFER:  YES, THANK YOU, YOUR HONOR.  JUST A FEW

2     QUICK POINTS.

3          THIS EVIDENCE IS NOT MORE PROBATIVE NOW THAN IT WAS

4     BEFORE.  THE FACT THAT THESE OTHER PRODUCTS INFRINGE DOES NOT

5     HELP THE JURY AND, IN FACT, IT'S EVEN MORE PREJUDICIAL NOW

6     BECAUSE APPLE HAS ALREADY BEEN PAID FOR OTHER INFRINGING SALES.

7     THAT WAS NOT TRUE IN 2013.  IT WASN'T TRUE IN 2012.  IT IS TRUE

8     NOW.

9          THAT RESULTS IN HIGHER RISK OF PREJUDICE BECAUSE THERE'S A

10    RISK OF DOUBLE RECOVERY IF THE JURY IS TEMPTED TO INFLATE ITS

11    VERDICT BASED ON THIS IDEA THAT THERE'S A UNIVERSE OF

12    INFRINGING SALES OVER THERE.

13          THE COURT:  BUT WOULD YOU WANT THE JURORS TO KNOW

14    THAT YOU'VE ALREADY PAID FOR SOME OF THESE?

15          MR. LEEFER:  NO, ABSOLUTELY NOT.

16          THE COURT:  OKAY.

17          MR. LEEFER:  AND, AGAIN, THIS ILLUSTRATES THE RISK OF

18    PREJUDICE IN ADMITTING THIS EVIDENCE.

19          THE -- THE EVIDENCE IS MISLEADING AND CONFUSING BECAUSE IT

20    DOESN'T ACCURATELY REFLECT THE SALES AT ISSUE IN THIS CASE, AND

21    LETTING THERE BE TESTIMONY OR ARGUMENT ON THIS EXHIBIT IS

22    LIKELY TO BRING IN MORE PREJUDICIAL EVIDENCE, SUCH AS THE

23    UNIVERSE OF OTHER INFRINGING PRODUCTS, WHICH IS WHAT HAPPENED

24    IN 2013, OR THE FACT THAT THERE WERE PAYMENTS MADE FOR OTHER

25    ACTS OF INFRINGEMENT.

```
1        AND THE ARGUMENTS MADE BY APPLE IN CLOSING IN THE 2013

2   TRIAL PERFECTLY ILLUSTRATE WHY FOCUSSING ON ONE SPECIFIC

3   QUARTER OF THIS DATA IS INAPPROPRIATE.

4        MS. DAVIS'S TESTIMONY AT THE 2013 TRIAL WHERE SHE

5   MENTIONED THE 90 PERCENT FIGURE, THAT WAS CONFINED TO ONE

6   QUARTER'S WORTH OF DATA.

7        AND THAT, THAT NUMBER WAS THEN USED REPEATEDLY BY COUNSEL

8   FOR APPLE WITHOUT SPECIFYING THAT IT APPLIED ONLY TO A SPECIFIC

9   QUARTER.  IT WAS USED TO DRAW THE VERY CLEAR IMPLICATION THAT

10  90 PERCENT OF THE SALES IN THIS CHART WERE INFRINGING SALES AND

11  THAT APPLE SHOULD BE COMPENSATED BECAUSE SAMSUNG'S MARKET SHARE

12  WAS DRIVEN BY INFRINGING SALES.

13            THE COURT:  WHAT DO YOU THINK THE PERCENTAGE IS IF

14  IT'S NOT 90 PERCENT?

15            MR. LEEFER:  THE --

16            THE COURT:  OF ALL THE PRODUCTS THAT HAVE BEEN FOUND

17  TO INFRINGE, WHAT DO YOU THINK THE RIGHT PERCENTAGE IS?

18            MR. LEEFER:  I DON'T HAVE TO SPECULATE ABOUT THIS.

19  HAPPILY, MS. DAVIS PURPORTS TO DO THIS VERY CALCULATION.

20            THE COURT:  UM-HUM.

21            MR. LEEFER:  AGAIN, THIS IS DOCKET 3342, HER REPORT.

22  IF YOU LOOK AT EXHIBIT 29-PT, SHE CALCULATES THE PERCENTAGE OF

23  SAMSUNG INFRINGING UNIT SALES ON A QUARTER-BY-QUARTER BASIS.

24       FOR THAT THIRD QUARTER OF 2010, SHE SAYS THAT NUMBER IS 70

25  PERCENT, NOT 90 PERCENT.
```

```
 1            THE COURT:  FOR Q3 OF 2010?

 2            MR. LEEFER:  YES, THAT'S RIGHT.

 3            THE COURT:  OKAY.

 4            MS. FRAZIER:  AND, YOUR HONOR, IF I MAY JUST CLARIFY

 5   A DISCREPANCY BETWEEN THE 70 PERCENT AND THE 90 PERCENT?

 6            THE COURT:  GO AHEAD, PLEASE.

 7            MS. FRAZIER:  THE 70 PERCENT THAT APPEARS AT THE

 8   EXHIBIT MR. LEEFER JUST REFERENCED IS THE PERCENTAGE OF TOTAL

 9    SALES FOR THAT QUARTER.

10       WHAT MS. DAVIS WAS REFERENCING WAS ACTUALLY THE PORTION OF

11   THE INCREASE.  SO SHE LOOKED FIRST AT THE DIFFERENCE IN SALES

12   FROM THE PRIOR QUARTER TO THAT SECOND QUARTER OF 2010 AND

13   THAT'S WHY THOSE NUMBERS ARE SLIGHTLY DIFFERENT.

14       AND IF I MAY ALSO OFFER ONE OTHER POINT OF REFERENCE --

15            THE COURT:  OKAY, WAIT.  I'M SORRY TO INTERRUPT YOU.

16   SO THE 90 PERCENT IS 90 PERCENT OF THE INCREASE IN MARKET SHARE

17    FROM, WHAT, Q2 TO Q3 OF 2010?

18            MS. FRAZIER:  FROM Q1 TO Q2, I BELIEVE.

19            THE COURT:  Q1 TO Q2, IT SEEMS THAT THE MARKET SHARE

20    GOES DOWN.

21            MS. FRAZIER:  I APOLOGIZE, YOUR HONOR.  IT IS Q2 TO

22    Q3 OF 2010.

23            THE COURT:  OKAY.  OKAY.  SO THAT 90 PERCENT OF THE

24   INCREASE IN MARKET SHARE FROM Q2 TO Q3 IN 2010 IS PRODUCTS THAT

25   HAVE BEEN FOUND TO INFRINGE, WHETHER THEY'RE PART OF THIS TRIAL
```

1    OR NOT?

2              MS. FRAZIER:  CORRECT.

3              THE COURT:  OKAY.  ALL RIGHT.

4         GO AHEAD.  SORRY TO INTERRUPT YOU.

5              MS. FRAZIER:  THE OTHER POINT OF REFERENCE I JUST

6    WANTED TO OFFER, YOUR HONOR, AS A COMPARISON POINT TO

7    MR. LEEFER'S ARGUMENT THAT THE FIVE PRODUCTS AT ISSUE ARE

8    APPROXIMATELY 20 PERCENT OF THE RED AREA, THE PRODUCTS AT ISSUE

9    DURING THE RETRIAL ARE APPROXIMATELY 30 PERCENT OF THAT ENTIRE

10   RED AREA, AND THERE WAS NO OBJECTION FROM SAMSUNG DURING THAT

11   TRIAL THAT THIS CHART WAS NOT PROBATIVE.

12             THE COURT:  OKAY.  ALL RIGHT.

13        THANK YOU VERY MUCH.  THAT WAS AN EXCELLENT ARGUMENT.

14   THANK YOU.

15             MS. FRAZIER:  THANK YOU, YOUR HONOR.

16             MR. LEEFER:  THANK YOU, YOUR HONOR.

17             THE COURT:  I DON'T KNOW WHY WE HAVE ANY OTHER

18   COUNSEL IN THIS CASE.

19             MR. LEE:  WE MAY NOT AFTER TODAY.

20        (LAUGHTER.)

21             THE COURT:  AFTER TODAY, THE RESUMES WILL GO OUT.

22   THAT'S WHAT I'M SAYING.  RESUMES SHOULD GO OUT AFTER TODAY.

23             MR. MCELHINNY:  I THINK WHAT YOU'RE GOING TO SEE IS A

24   RATE INCREASE.

25        (LAUGHTER.)

```
 1           THE COURT:  CERTAINLY GOOD BONUSES, I WOULD SAY.

 2           OKAY.  LET'S GO TO MOTION IN LIMINE NUMBER 3.

 3           OKAY.  THIS IS SAMSUNG'S MOTION, SO IF YOU WOULD GO FIRST,

 4      PLEASE.

 5               MR. ARNOLD:  GOOD AFTERNOON, YOUR HONOR.  I'M

 6       BRETT ARNOLD FROM QUINN, EMANUEL.

 7           AND IN SAMSUNG'S MOTION NUMBER 3, WE'RE ASKING THE COURT

 8      TO PRECLUDE MS. DAVIS FROM TELLING THE JURY THAT, UNDER THE

 9      COURT'S INSTRUCTION, YOU CANNOT DEDUCT OPERATING EXPENSES, AND

10      THAT'S THE CORE OF THE MOTION.

11           SHE SHOULDN'T BE DEFINING WHAT "DIRECTLY ATTRIBUTABLE"

12      MEANS FOR THEM OR OTHERWISE TELLING THEM WHAT THE JURY

13      INSTRUCTION DOES OR DOES NOT REQUIRE.

14           NOW, IT BECAME APPARENT TO US AT MS. DAVIS'S DEPOSITION

15      JUST THREE MONTHS AGO THAT THIS WAS THE TYPE OF TESTIMONY THAT

16      SHE WAS GOING TO RELY ON FOR HER OPINION, SPECIFICALLY HER

17      REASON FOR WHY SHE WOULD NOT DEDUCT OPERATING EXPENSES.

18           SHE HID BEHIND THE INSTRUCTION AT LEAST A DOZEN TIMES IN

19      THE DEPOSITION.  WE PROVIDED SOME EXAMPLES IN THE MOTION.

20           I WOULD JUST HIGHLIGHT A FEW THAT ARE INDICATIVE OF THE

21      KIND OF TESTIMONY SHE WAS GIVING.  AT PAGES 423 AND 424 OF THE

22      DEPOSITION TRANSCRIPT, SHE -- WHEN ASKED WHY SHE WOULD NOT

23      DEDUCT OPERATING EXPENSES, SHE SAID "BECAUSE THAT'S MY

24      UNDERSTANDING OF HOW THE "DIRECTLY ATTRIBUTABLE" LANGUAGE IN

25      THE INSTRUCTIONS IN THIS CASE IS TO BE APPLIED."
```

 1          AT PAGE 420 SHE SAID, "I WOULD NOT DEDUCT IT UNDER THE

 2     INSTRUCTIONS PROVIDED BY JUDGE KOH IN THIS CASE."

 3          SHE EVEN MADE A DISTINCTION AT PAGE 548, "THE GENERALLY

 4     ACCEPTED ACCOUNTING PRINCIPLES REQUIRE A DIFFERENT TEST AND A

 5     DIFFERENT PROCESS."

 6          SO THESE ARE JUST A FEW OF THE DOZEN TIMES WHERE SHE'S

 7     HIDING BEHIND THE INSTRUCTION TO JUSTIFY HER DECISION RATHER

 8     THAN APPLYING ACCOUNTING PRINCIPLES TO IT.

 9          NOW, WE THINK THERE ARE AT LEAST THREE PRINCIPAL REASONS

10     WHY THIS TYPE OF TESTIMONY SHOULD BE PRECLUDED, AND I THINK THE

11     FOREMOST IS THAT NINTH CIRCUIT LAW MAKES IT CLEAR THAT AN

12     EXPERT SHOULDN'T SIT IN THE ROLE OF A JUDGE TELLING THE JURY

13     WHAT THE INSTRUCTIONS ARE AND WHAT THEY MEAN.

14          AND, SECONDLY, MS. DAVIS ADMITTED ALSO IN THE DEPOSITION

15     THAT SHE DIDN'T HAVE AN UNDERSTANDING OR PROFESSIONAL EXPERTISE

16     IN WHAT THAT PHRASE "DIRECTLY ATTRIBUTABLE" MEANS.

17          SHE ADMITTED IN THE DEPOSITION -- IF YOU LOOK AT PAGE 383,

18     SHE WAS ASKED, "IN TERMS OF GENERALLY ACCEPTED ACCOUNTING

19     PRINCIPLES, IS THE PHRASE 'DIRECTLY ATTRIBUTABLE' A TERM OF

20     ART?"

21          AND SHE SAID, "NO, I DON'T BELIEVE SO."

22          AT 384, SHE ADMITTED SHE WOULD NOT EXPECT TO FIND THAT

23     PHRASE WITHIN THE GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

24          SHE ALSO ADMITS THAT SHE'S NEVER SEEN THIS PHRASE IN ANY

25     CASE WHERE SHE'S BEEN A DAMAGES EXPERT.  AT PAGE 425 OF THE

1    DEPO TRANSCRIPT, SHE SAYS, "I'VE NEVER SEEN A CASE WHERE THE

2    STANDARD WAS WORDED EXACTLY AS IT HAS BEEN IN THIS CASE."

3         AT 421, SHE SAYS IT'S THE FIRST TIME SHE'S BEEN ASKED TO

4    USE THIS EXACT LANGUAGE.

5         SO NOT ONLY DOES NINTH CIRCUIT LAW SAY SHE SHOULDN'T SIT

6    IN THE ROLE OF THE JUDGE, SHE'S ADMITTED SHE HAS NO

7    UNDERSTANDING OF THIS TERM ASIDE FROM A LEGAL INTERPRETATION

8    THAT SHE'S ASSUMING.

9         BUT THE THIRD REASON IS THAT HER INTERPRETATION OF THE

10   INSTRUCTION IS WRONG, AND WE KNOW IT'S WRONG BECAUSE YOUR HONOR

11   TOLD US IT'S WRONG AFTER THE 2013 TRIAL IN YOUR ORDER, YOUR

12   FEBRUARY 7TH, 2014, ORDER ON POST-TRIAL MOTIONS.  THAT'S DOCKET

13   2947.  YOUR HONOR RULED THAT THE JURY PROPERLY FOLLOWED THE

14   INSTRUCTIONS BY DEDUCTING SOME MEASURE OF OPERATING EXPENSES.

15        SO FOR AT LEAST THOSE THREE REASONS, YOUR HONOR, WE

16   BELIEVE THAT MS. DAVIS SHOULD NOT BE ALLOWED TO GIVE AN

17   INSTRUCTION -- OR GIVE TESTIMONY TO THE JURY TELLING THEM THAT

18   THEY CANNOT DEDUCT OPERATING EXPENSES.

19           THE COURT:  SO DOES SAMSUNG HAVE AN OBJECTION TO THE

20    INSTRUCTION ITSELF THAT THERE SHOULD NOT BE THIS "DIRECTLY

21    ATTRIBUTABLE" CONSIDERATION FOR DEDUCTIBLE EXPENSES?  OR YOU'RE

22   JUST SAYING THAT MS. DAVIS SHOULD NOT BE TESTIFYING ABOUT IT?

23           MR. ARNOLD:  THE PURPOSE OF THE MOTION IS TO LIMIT

24    MS. DAVIS'S TESTIMONY.

25           THE COURT:  UM-HUM.

```
 1            MR. ARNOLD:  THE INSTRUCTION WAS OBJECTED TO BY

 2      SAMSUNG, BUT YOUR HONOR HAS RULED ON THAT.

 3            THE COURT:  OKAY.  BUT WAS IT OBJECTED TO ON APPEAL?

 4      WAS IT CHALLENGED ON APPEAL?

 5            MR. ARNOLD:  THE -- SO THE INSTRUCTION WHERE THIS

 6      LANGUAGE IS FOUND IS THE DEFENDANT'S PROFIT INSTRUCTION.

 7            THE COURT:  UM-HUM.

 8            MR. ARNOLD:  THAT'S INSTRUCTION 54 FROM THE FIRST

 9      TRIAL AND 31 FROM THE LAST TRIAL AND THAT INSTRUCTION IS ON

10      APPEAL.  IT'S PART OF WHAT'S IN SAMSUNG'S CERT PETITION.  SO

11      THAT INSTRUCTION IS BEFORE THE SUPREME COURT.

12         BUT THE SPECIFIC LANGUAGE ABOUT EXPENSES HAT NOT BEEN

13      BRIEFED.

14            THE COURT:  RIGHT, THAT WASN'T BRIEFED ON APPEAL.

15         SO WHAT EXACTLY WOULD YOU LIKE PRECLUDED?  ANY DISCUSSION

16      BY MS. DAVIS OF DEDUCTIBLE EXPENSES?  OR --

17            MR. ARNOLD:  YOUR HONOR, I THINK IT -- NOT TO LIMIT

18      HER TO TALK ABOUT WHICH EXPENSES SHE'S DEDUCTED AND WHAT SHE'S

19      DONE, THE METHOD SHE'S USED, BUT ANYTHING THAT'S GOING TO

20      INCORPORATE A LEGAL OPINION.

21         SO I THINK AT THE CORE OF IT IS ANY TESTIMONY WHERE SHE'S

22      PURELY TELLING THE JURY WHAT THE LAW IS.  THAT'S REALLY GOING

23      TO RUN AFOUL OF WHAT SHE SHOULD BE DOING.

24            A RELATED POINT -- AND I THINK APPLE'S OPPOSITION GETS

25      MORE TO THIS -- IS, YOU KNOW, WHAT HAPPENS WHEN SHE IS ASKED A
```

1    QUESTION ABOUT WHETHER A SPECIFIC EXPENSE IS OR IS NOT DIRECTLY

2    ATTRIBUTABLE?

3              THE COURT:  UM-HUM.

4              MR. ARNOLD:  AND UNDER THE SAME -- AS WE KNOW ON THE

5    RECORD NOW FROM HER DEPOSITION, IT'S GOING TO BE -- I'M NOT

6    SURE IF I CAN THINK OF A SITUATION WHERE SHE'D BE ABLE TO

7    RENDER AN OPINION OR AN ANSWER TO THAT WITHOUT ASSUMING SOME

8    LEGAL INTERPRETATION OF THE INSTRUCTION IN ORDER TO APPLY IT TO

9    THE FACTS.

10         SO THERE'S SORT OF TWO THINGS GOING ON, I MEAN, THE FIRST

11   ONE BEING SHE SHOULDN'T BE TELLING THE JURY WHAT THE

12   INSTRUCTION DOES OR DOES NOT ALLOW THEM TO DEDUCT.

13         AND THE SECOND THING WOULD BE WHETHER SHE CAN APPLY HER

14   INTERPRETATION OF THE LAW TO THE FACTS IN RENDERING OPINIONS

15   ABOUT WHICH EXPENSES ARE AND ARE NOT DIRECTLY ATTRIBUTABLE.

16         YOUR HONOR HAD ASKED WHETHER THIS ISSUE OF WHETHER SHE'S

17   GIVEN AN OPINION ABOUT WHAT "DIRECTLY ATTRIBUTABLE" MEANS,

18   WHETHER THAT CAME UP AT THE 2013 TRIAL --

19              THE COURT:  UM-HUM.

20              MR. ARNOLD:  -- AND THE ANSWER IS NO, THAT ISSUE WAS

21   NOT DECIDED.  SHE DIDN'T GIVE AN OPINION ABOUT WHAT "DIRECTLY

22   ATTRIBUTABLE" MEANS OR HIDE BEHIND THE JURY INSTRUCTION AT THAT

23   TIME.

24         THE CLOSEST IT CAME WAS THAT COUNSEL FOR APPLE ASKED HER

25   IF SHE COULD TELL THE JURY WHAT THE TEST WAS.  THE QUESTION WAS

1    SPECIFICALLY AT DOCKET 2840, PAGE 691, AND THE QUESTION WAS,

2    "CAN YOU EXPLAIN TO THE JURY WHAT THE TEST IS FOR PURPOSES OF

3    PATENT INFRINGEMENT DAMAGES TO ARRIVE AT AN INFRINGER'S PROFITS

4    NUMBER?"

5         SO SHE WAS ASKED TO TELL THE JURY WHAT THE TEST IS.

6         SAMSUNG OBJECTED TO THAT ON THE BASIS THAT IT CALLED FOR A

7    LEGAL OPINION AND THE QUESTION WAS WITHDRAWN BEFORE YOUR HONOR

8    COULD RULE ON THE OBJECTION.

9         SO THAT'S AS CLOSE AS THE ISSUE CAME TO, IN 2013, WHETHER

10   SHE COULD INSTRUCT THE JURY PURELY ON WHAT THE LAW WAS.

11              THE COURT:  ALL RIGHT.  THANK YOU.

12              MS. PRENDERGAST:  YOUR HONOR, MARY PRENDERGAST FROM

13    MORRISON & FOERSTER ON BEHALF OF APPLE.

14        FIRST, THIS IS AN ISSUE THAT YOU'VE ALREADY DECIDED.  IN

15   2012, MR. MUSIKA TESTIFIED, USING A DIRECTLY ATTRIBUTABLE

16   STANDARD, TO GIVE HIS OPINION ON THE FACTUAL QUESTION OF WHAT

17   EXPENSES SHOULD BE DEDUCTIBLE.

18        SAMSUNG DID NOT OBJECT AT THAT TIME.

19        IN 2013, MS. DAVIS PROVIDED THE EXACT OPINION THAT SHE

20   INTENDS TO PROVIDE HERE BASED ON A DIRECTLY ATTRIBUTABLE

21   STANDARD.

22        SAMSUNG DID, IN FACT, OBJECT AT THAT POINT THAT SHE WAS

23   PRESENTING A LEGAL OPINION AND YOUR HONOR OVERRULED THAT

24   OBJECTION, AND THAT IS AT DOCKET 2841 AT PAGE 1174, LINES 12

25   THROUGH 22.

1          SO SAMSUNG'S REPRESENTATION THAT THAT -- THAT THAT

2     OBJECTION WAS NOT RULED ON IS INCORRECT.

3          AS YOUR HONOR POINTED OUT, NEITHER THAT RULING NOR THE

4     ACTUAL "DIRECTLY ATTRIBUTABLE" LANGUAGE FROM THE JURY

5     INSTRUCTION WAS ACTUALLY CHALLENGED ON APPEAL.

6          SAMSUNG ACTUALLY CHALLENGED OTHER ASPECTS OF THAT JURY

7     INSTRUCTION, AS THEY'VE ADMITTED HERE, BUT NOT THE "DIRECTLY

8     ATTRIBUTABLE" LANGUAGE.

9          THAT IS LAW OF THE CASE AND ON THAT BASIS ALONE SAMSUNG'S

10    MOTION SHOULD BE DENIED.

11         BUT MOVING TO THE MEAT OF THE ISSUE, MS. DAVIS IS NOT --

12    SHE IS NOT OFFERING A LEGAL OPINION.  SHE NEVER HAS.

13         WHAT SHE HAS DONE INSTEAD IS TO APPLY THE ACTUAL WORDS OF

14    THE JURY INSTRUCTION, USED HER ACCOUNTING EXPERTISE, AND

15    EXAMINED THE EVIDENCE PROVIDED BY SAMSUNG OF THEIR EXPENSES TO

16    DETERMINE WHICH OF THOSE, IN HER OPINION, SHE BELIEVES CAN BE

17    DEDUCTED.

18         THIS IS NO DIFFERENT FROM A TECHNICAL EXPERT PROVIDING,

19    FOR EXAMPLE, TESTIMONY ON OBVIOUSNESS.  OBVIOUSNESS HAS A LEGAL

20    TEST THAT THE COURT THEN DISTILLS INTO LANGUAGE THE JURY CAN

21    UNDERSTAND AND THAT BECOMES PART OF THE JURY INSTRUCTIONS.  THE

22    TECHNICAL EXPERT THEN WILL GIVE TESTIMONY ON THE FACTUAL

23    FINDINGS THAT THE JURY NEEDS TO MAKE IN ORDER TO REACH THE

24    ULTIMATE LEGAL CONCLUSION OF OBVIOUSNESS.

25         FOR INSTANCE, THE TECHNICAL EXPERT WILL REFER TO THE

1    LANGUAGE, FOR EXAMPLE, WHAT IS THE LEVEL OF ORDINARY SKILL IN

2    THE ART?  THAT DOESN'T MEAN THAT TECHNICAL EXPERT IS GIVING A

3    LEGAL OPINION ON WHAT THAT MEANS.

4         AND NEITHER WILL MS. DAVIS DO THAT HERE.  SHE WILL REFER

5    TO THE WORDS OF THE INSTRUCTION, THE ORDINARY, PLAIN LANGUAGE

6    WORDS THAT YOUR HONOR HAS LAID OUT, AND SHE WILL USE HER

7    EXPERTISE TO GIVE A FACTUAL OPINION TO THE JURY THAT THEY CAN

8    THEN USE TO MAKE THE ULTIMATE CONCLUSION OF WHAT THE TOTAL

9    PROFIT IS THAT APPLE SHOULD BE AWARDED FOR SAMSUNG'S

10   INFRINGEMENT.

11        MS. DAVIS HAS CONFIRMED REPEATEDLY THAT SHE DOES NOT

12   INTEND TO OFFER AN INTERPRETATION OF THE "DIRECTLY

13   ATTRIBUTABLE" PHRASE.  SHE DOES NOT INTEND TO GIVE ANY LEGAL

14   OPINION.  SHE WOULD NOT TRESPASS ON THE COURT'S PROVINCE TO

15   INSTRUCT THE JURY ON THE LAW.  SHE UNDERSTANDS THE LIMITATIONS.

16        AND SO WHAT MS. DAVIS IS GOING TO DO HERE IS TAKE HER

17   YEARS OF ACCOUNTING EXPERIENCE, APPLY THAT TO ALL OF THE

18   DOCUMENTATION THAT SAMSUNG PRODUCED, OR THE LACK THEREOF, AND

19   PROVIDE AN OPINION THAT THE JURY CAN THEN USE TO REACH THE

20   LEGAL CONCLUSION.  SHE, HERSELF, WILL NOT BE THE ONE OFFERING A

21   LEGAL OPINION.

22        IN FACT, SAMSUNG'S COUNSEL JUST CONCEDED THAT WHAT SHE

23   WILL BE DOING IS, IN FACT, APPLYING THIS TEST TO THE FACTS.

24        THAT ITSELF IS NOT PROVIDING A LEGAL OPINION.  SHE IS

25   GIVING A FACTUAL OPINION ABOUT WHAT EXPENSES SHE BELIEVES ARE

1    DEDUCTIBLE.

2         FOR EXAMPLE, TAKE GENERAL ADMINISTRATION EXPENSES.  WHAT

3    MS. DAVIS DID IN 2013 IS WHAT SHE WILL DO HERE AGAIN, AND THAT

4    IS TO LOOK AT ALL THE DOCUMENTATION PROVIDED BY SAMSUNG AND

5    SAY, SAMSUNG HAS ALLOCATED THAT TO THESE PRODUCTS, BUT IN MY

6    OPINION AS AN ACCOUNTANT, I DON'T BELIEVE ANY OF THOSE ARE

7    DIRECTLY ATTRIBUTABLE TO THESE PRODUCTS.

8         THAT IS WHAT SHE DID AT THE DAMAGES RETRIAL, THAT WAS

9    OBJECTED TO AS A LEGAL OPINION, YOUR HONOR OVERRULED IT, AND IT

10   WAS NOT APPEALED.

11        THE COURT:  DO YOU AGREE, THOUGH, THAT THE TERM

12   "DIRECTLY ATTRIBUTABLE" IS A LEGAL ONE?

13        MS. PRENDERGAST:  IT'S FOUND IN THE JURY INSTRUCTION,

14   BUT I DON'T NECESSARILY THINK THAT IT IS A LEGAL STANDARD.

15        THE LEGAL QUESTION OF THE JURY INSTRUCTION IS, WHAT IS THE

16   TOTAL PROFIT THAT SAMSUNG MUST PAY TO APPLE FOR A DESIGN PATENT

17   INFRINGEMENT?

18        THE "DIRECTLY ATTRIBUTABLE" LANGUAGE THERE IS PART OF THE

19   FACTUAL CONCLUSION THAT THE JURY NEEDS TO MAKE TO REACH THAT

20   ULTIMATE CONCLUSION.

21        THE COURT:  BUT IF SHE DOESN'T HAVE ANY INDEPENDENT

22   UNDERSTANDING OF WHAT "DIRECTLY ATTRIBUTABLE" MEANS, HOW CAN

23   SHE EVEN GIVE ANY OPINION ON IT?

24        MS. PRENDERGAST:  WELL, SHE HAS AN UNDERSTANDING OF

25   WHAT THOSE WORDS MEAN AS PLAIN ENGLISH.

```
 1            BUT SHE WILL CONTINUE TO REFER TO THE JURY INSTRUCTION, TO
 2     THE -- SORRY, NOT THE JURY INSTRUCTION ITSELF, BUT THE LANGUAGE
 3     OF THE JURY INSTRUCTION AND THE COURT'S INSTRUCTION ON WHAT
 4     THAT MEANS.
 5            OUR -- YOU KNOW, ON DIRECT EXAMINATION, THERE'S NO NEED
 6     FOR HER TO REFER TO THE JURY INSTRUCTION.  SHE CAN SIMPLY USE
 7     THE WORDS OF THE TEXT, WHICH THE JURY WILL THEN HAVE.
 8            IF SHE IS PUSHED ON CROSS-EXAMINATION ABOUT WHAT SHE
 9     BELIEVES THAT PLAIN LANGUAGE TO MEAN, SHE MAY PROVIDE AN
10     OPINION OF WHAT THAT PLAIN LANGUAGE MEANS TO HER.
11            BUT SHE IS NOT INTENDING TO PROVIDE A LEGAL OPINION
12     THAT -- YOU KNOW, AN INTERPRETATION THAT COULD POTENTIALLY
13     CONFLICT WITH WHAT THE COURT IS INSTRUCTING.  SHE INTENDS TO
14     APPLY THE ACTUAL WORDS USING HER EXPERTISE TO GIVE THE JURY THE
15     FACTS IT NEEDS TO MAKE A DETERMINATION.
16            THE COURT:  MR. ARNOLD, WOULD YOU LIKE TO RESPOND?
17            MR. ARNOLD:  YES, PLEASE.
18            I WOULD FIRST TURN TO WHAT MS. DAVIS HAS JUST RECENTLY
19     SAID ABOUT HER UNDERSTANDING OF THE PHRASE.
20            COUNSEL SAID THAT IT HAS A PLAIN LANGUAGE MEANING, BUT
21     MS. DAVIS SAID OTHERWISE IN HER DEPOSITION AT PAGE 387.  SHE
22     WAS ASKED THE QUESTION, "QUESTION:  YOU DON'T HOLD YOURSELF OUT
23     AS SOMEONE WHO HAS EXPERTISE IN KNOWING WHAT THE MEANING OF THE
24     PHRASE 'DIRECTLY ATTRIBUTABLE' IS IN CONNECTION WITH THE LAW ON
25     AWARDING DAMAGES FOR DESIGN PATENT INFRINGEMENT; CORRECT?"
```

```
 1              AND HER ANSWER IS, "I WILL DEFER TO A LEGAL EXPERT ON THAT

 2     SUBJECT."

 3              NOW, SHE SAID AT PAGE 385, "MY UNDERSTANDING IS 'DIRECTLY

 4     ATTRIBUTABLE,' AS USED IN THE CONTEXT OF THIS CASE BY THE

 5     COURT, HAS A SPECIFIC MEANING DESCRIBED BY THE COURT."

 6              SO SHE HAS ADMITTED THIS ISN'T A PLAIN LANGUAGE WORD.

 7     SHE'S ADMITTED IT'S NOT A WORD SHE'S USED IN HER ACCOUNTING

 8     EXPERTISE OR IN HER EXPERTISE AS A DAMAGES EXPERT.

 9              SO I DON'T THINK SHE CAN GIVE ANY KIND OF A PLAIN MEANING

10     DEFINITION TO IT BASED ON WHAT SHE'S ADMITTED IN HER

11     DEPOSITION.

12              MS. PRENDERGAST:  YOUR HONOR, IF I MIGHT RESPOND TO

13     THAT BRIEFLY?

14              THE COURT:  GO AHEAD, PLEASE.

15              MS. PRENDERGAST:  WHAT MS. DAVIS HAS DONE IN HER

16     DEPOSITION IS TO DEFER TO YOUR HONOR AND TO THE JURY

17     INSTRUCTION FOR THE MEANING OF THAT PHRASE.  SHE IS NOT

18     OFFERING HER OWN INTERPRETATION.  THAT'S -- WHAT SHE HAS DONE

19     HERE IS TO SAY THAT THERE IS A MEANING, AND YOU WILL TELL THE

20     JURY WHAT IT IS.

21              SECONDLY, SAMSUNG HAS COMPLAINED HERE -- THEY HAVE SAID

22     THAT THERE ARE THESE GAAP ISSUES, THAT THIS IS NOT A TERM THAT

23     WAS KNOWN UNDER GAAP, THAT MS. DAVIS HAS NEVER USED THIS

24     BEFORE.

25              ALTHOUGH WE MAY OR MAY NOT DISAGREE, THOSE ARE ISSUES THAT
```

1    SAMSUNG SHOULD HAVE RAISED ON DAUBERT IF THEY EVER HAD A

2    PROBLEM WITH THAT.  THEY HAVE NEVER DONE SO.  THEY HAVE NEVER

3    DONE SO, AND YOUR HONOR HAS SAID THAT YOUR PRIOR DAUBERT

4    RULINGS WILL STAND AND THERE WILL BE NO OPPORTUNITY FOR THE

5    PARTIES TO RAISE NEW DAUBERT CHALLENGES.

6         IF SAMSUNG HAD A PROBLEM WITH HER PROVIDING TESTIMONY

7    BECAUSE, YOU KNOW, SHE ARGUED THAT SHE'S NEVER DONE IT BEFORE,

8    THAT SHOULD HAVE BEEN A DAUBERT CHALLENGE.

9         WHAT THEY'RE TALKING ABOUT HERE IS HAMSTRINGING MS. DAVIS

10   FROM PRESENTING THE OPINION THAT SHE PRESENTED IN 2013 THAT,

11   APPLYING THE LANGUAGE OF THE JURY INSTRUCTION TO THESE FACTS,

12   TO THIS DOCUMENTATION, IN HER EXPERTISE AS AN ACCOUNTANT, THESE

13   EXPENSES SHOULD NOT BE DEDUCTED.

14        MR. ARNOLD:  YOUR HONOR, I WOULD RESPOND TO THAT BY

15   SAYING FIRST THERE'S NO DEFINITION GIVEN IN THE JURY

16   INSTRUCTION AS TO WHAT THE WORDS "DIRECTLY ATTRIBUTABLE" MEAN.

17        AND ALSO, THOSE TWO WORDS ARE PLUCKED OUT OF AN ENTIRE

18   SENTENCE TO GIVE CONTEXT TO WHAT THE JURY IS GOING TO HAVE TO

19   DO.  THAT'S THE LAW THE JURY IS GOING TO HAVE TO FOLLOW.

20        I WOULD ALSO SAY THAT THIS IS NOT A DAUBERT ISSUE BECAUSE

21   WE'RE NOT CHALLENGING MS. DAVIS'S ABILITY TO DISCUSS ACCOUNTING

22   PRINCIPLES OR TO DISCUSS THE FACTS AND APPLY HER ACCOUNTING

23   EXPERTISE TO THEM.

24        BUT THIS IS PURELY AN ISSUE THAT'S PERFECT FOR A MOTION IN

25   LIMINE.  THIS IS HOW THE NINTH CIRCUIT, IN MULTIPLE CASES,

1    WE'VE CITED NATIONWIDE, BOULWARE, THOSE ARE JUST A FEW CASES

2    WHERE THE NINTH CIRCUIT HAS CONSIDERED WHETHER AN EXPERT CAN

3    GIVE LEGAL OPINION THROUGH A MOTION IN LIMINE.

4         THAT'S THE PROPER VEHICLE FOR DOING THIS, CABINING HER TO

5    HER AREA OF EXPERTISE.  THAT'S WHAT WE'RE TRYING TO DO, NOT SAY

6    THAT SHE DOESN'T HAVE AN AREA OF EXPERTISE.

7              MS. PRENDERGAST:  YOUR HONOR, IF I MIGHT RESPOND TO

8    THAT?

9         THE NINTH CIRCUIT HAS ALSO AFFIRMED, EVEN IN THE

10   NATIONWIDE CASE RELIED ON BY SAMSUNG, THAT AN EXPERT MAY REFER

11   TO THE LANGUAGE OF A LEGAL STANDARD IN PROVIDING THEIR OPINION,

12   AND THAT IN ITSELF IS NOT PROVIDING A LEGAL OPINION.

13        THIS IS EXACTLY THE SAME AS A DAMAGES EXPERT PROVIDING

14   OPINIONS ON, FOR EXAMPLE, THE GEORGIA-PACIFIC FACTORS.  THOSE

15   ARE LEGAL FACTORS FROM THE GEORGIA-PACIFIC CASE THAT THE EXPERT

16   THEN PROVIDES FACTUAL TESTIMONY ON HOW THEY AFFECT THAT DAMAGES

17   EXPERT'S ANALYSIS.

18        THE SAME IS TRUE FOR THE PANDUIT FACTORS.  THE FACT THAT

19   THE EXPERT REFERS TO THE ACTUAL LANGUAGE OF THE LEGAL STANDARD

20   DOES NOT TRANSFORM IT INTO A LEGAL OPINION.

21             MR. ARNOLD:  YOUR HONOR, I WOULD RESPOND TO THAT BY

22   SAYING THAT THE CASE THEY'RE RELYING ON IS HANDGUARD, IT'S A

23   NINTH CIRCUIT OPINION, AND IN THAT CASE, THE COURT SPECIFICALLY

24   SAID THAT THE LEGAL -- THE LEGAL PROVISIONS THAT WERE BEING

25   DISCUSSED BY THE EXPERT, NONE OF WHICH WERE DIRECTLY AT ISSUE

```
1       IN THE CASE, THAT WAS AN IMPORTANT FACT IN THAT CASE AND THEY

2    HAD AN EXPERT WHO WAS TALKING ABOUT LAWS THAT WEREN'T BEING

3    APPLIED IN THE CASE TO RENDER AN OPINION THAT THE JURY COULD

4    THEN TAKE AND APPLY TO THE LAW THAT WOULD BE APPLIED IN THE

5    CASE.

6           AND THAT LANGUAGE IS QUOTED IN NATIONWIDE, THE FACT THAT

7    THOSE PROVISIONS WERE NOT DIRECTLY AT ISSUE IN THE CASE.

8              THE COURT:  ALL RIGHT.  WELL, THANK YOU ALL VERY

9    MUCH.  EXCELLENT.  EXCELLENT.  I SEE MORE UNEMPLOYMENT

10   COMING --

11             MS. PRENDERGAST:  THANK YOU, YOUR HONOR.

12             THE COURT:  -- FOR OTHER LAWYERS IN THE CASE.  THANK

13   YOU.

14        (LAUGHTER.)

15             THE COURT:  OKAY.  LET'S GO TO THE FINAL MOTION,

16   MOTION IN LIMINE NUMBER 1 REGARDING THE REVENUE AND PROFIT.

17        OKAY.  GO AHEAD, PLEASE.

18          MR. MARTIN:  THANK YOU, YOUR HONOR.  JOSEPH MARTIN,

19   QUINN EMANUEL FOR SAMSUNG.

20        THIS MOTION IN LIMINE SEEKS TO PRECLUDE APPLE'S COUNSEL

21   AND ITS WITNESSES FROM REFERENCING SAMSUNG'S TOTAL INFRINGING

22   REVENUE.

23        IT SHOULD BE GRANTED FOR TWO REASONS.  THE FIRST REASON IS

24   THAT THE COURT HAS ALREADY RULED ON THESE ISSUES AND THE COURT

25   RULED ON THEM IN SAMSUNG'S FAVOR.  IT WAS AN ORDER IN PDX 25G,
```

1    PDX 100, BOTH OF WHICH EXCLUDED THE EXACT SAME INFORMATION THAT

2    SAMSUNG WANTS TO EXCLUDE FROM THIS TRIAL.

3        AND IT WAS ALSO THE ORDER IN THE 630 CASE WHERE THE COURT

4    GRANTED A VIRTUALLY IDENTICAL MOTION.

5        THE SECOND REASON IS THE MERITS.  SAMSUNG CITED ABOUT HALF

6    A DOZEN CASES IN ITS BRIEF THAT RECOGNIZE THAT EMPHASIZING A

7    DEFENDANT'S INFRINGING REVENUES IS DEEPLY PREJUDICIAL, WARRANTS

8    A NEW TRIAL IN SOME CASES, AND APPLE'S ONLY SUBSTANTIVE

9    RESPONSE IS A RELEVANCE ARGUMENT THAT DOESN'T EVEN HOLD ANY --

10   IT DOES NOT CARRY WATER.

11       ACCORDING TO APPLE, IT CAN DISCLOSE ALL OF SAMSUNG'S

12   REVENUES BECAUSE A THIRD OF IT IS RELEVANT TO INFRINGER'S

13   PROFITS, AND THAT THE STARTING POINT FOR A CALCULATION OF

14   INFRINGER'S PROFITS IS 2 BILLION AND NOT THE MUCH SMALLER

15   NUMBER THAT'S ACTUALLY ELIGIBLE FOR AN AWARD OF INFRINGER'S

16   PROFITS.

17       THAT CAN'T BE RIGHT, AND WE KNOW THAT IT CAN'T BE RIGHT

18   BECAUSE YOUR HONOR HAS TOLD US THAT IT'S NOT RIGHT.  PDX 100,

19   WHICH WAS EXCLUDED FROM THE LAST TRIAL, MAKES THIS EXACT SAME

20   ARGUMENT.  IT WAS AN INFRINGER'S PROFITS CALCULATION THAT

21   STARTED WITH 3.5 BILLION.  THAT WAS THE -- THAT WAS SAMSUNG'S

22   INFRINGING REVENUE IN THE LAST TRIAL.  IT USED THAT AS THE

23   STARTING POINT.

24       THE COURT FOUND THAT TO BE MISLEADING AND PREJUDICIAL, IT

25   WAS EXCLUDED, AND AS A RESULT, MS. DAVIS, IN HER TESTIMONY WHEN

```
 1    SHE EXPLAINED INFRINGER'S PROFITS, HER INFRINGER'S PROFITS

 2    CALCULATION, DID NOT USE 3.5 BILLION AS A STARTING POINT.  SHE

 3    USED 854 MILLION, WHICH WAS THE REVENUE THAT WAS ACTUALLY

 4    ELIGIBLE FOR AN AWARD OF INFRINGER'S PROFITS.

 5         SHE SHOULD HAVE TO DO THE SAME THING IN THIS TRIAL.

 6         AND I JUST WANT TO POINT OUT THAT APPLE -- THIS RELEVANCE

 7    ARGUMENT, IT ACTUALLY BEARS NO RESEMBLANCE WHATSOEVER TO HOW

 8    APPLE ACTUALLY USED SAMSUNG'S REVENUE IN THE LAST TRIAL.  THEY

 9    DON'T MAKE ANY ATTEMPT TO DEFEND HOW THEY ACTUALLY USED IT.  IT

10    WASN'T THEIR STARTING POINT FOR INFRINGER'S PROFITS, IT WASN'T

11    A FACTOR IN THE GEORGIA-PACIFIC OR, YOU KNOW, ONE OF THE

12    REASONABLE ROYALTY CALCULATIONS.

13         IT WAS A MAIN TRIAL THEME.  IT WAS MENTIONED SIX TIMES IN

14    OPENING STATEMENTS.  MR. MCELHINNY REFERRED TO IT IN DEFINING

15    THE ENTIRE TRIAL FOR THE JURY.  HE SAID, QUOTE, "THIS TRIAL IS

16    ABOUT A SINGLE QUESTION."  THIS IS ON TRIAL TRANSCRIPT

17    PAGE 347.  HE REFERENCES SAMSUNG'S $3.5 BILLION REVENUES FOUR

18    TIMES IN THE SPAN OF 17 TRANSCRIPT LINES, AND THEN SAYS THAT

19    SINGLE QUESTION FOR THE JURY THAT THEY WOULD HAVE TO DECIDE AT

20    THE END OF TRIAL WAS, QUOTE, "HOW MUCH OF THAT 3.5 BILLION

21    SAMSUNG SHOULD RIGHTFULLY RETURN TO APPLE."

22         IN CLOSING, MR. LEE, HE DID EXACTLY WHAT UNILOC SAYS THAT

23    YOU'RE NOT ALLOWED TO DO, WHICH IS EXPRESS YOUR DAMAGES FIGURE

24    AS A PERCENTAGE OF THE ENTIRE MARKET VALUE OF THE ACCUSED

25    SALES.  HE SAID THAT -- HE REASSURED THE JURY AND SAID THAT
```

1    APPLE WAS ONLY SEEKING APPROXIMATELY 9, 10 PERCENT OF WHAT

2    SAMSUNG COLLECTED, LEAVING THEM WITH 90 PERCENT.

3         AND HE CHASTISED MR. WAGNER, JUST AS HE HAD DONE ON CROSS,

4    FOR, QUOTE -- I'M SORRY -- FOR LETTING SAMSUNG, QUOTE, "RETAIN

5    3.45 BILLION, 99 PERCENT OF WHAT THEY COLLECTED."  THAT'S AT

6    TRIAL TRANSCRIPT 1303 AND 1304.

7         I JUST ALSO WANT TO POINT OUT THAT APPLE REFERENCED

8    SAMSUNG'S TOTAL REVENUE 11 TIMES IN OPENING AND CLOSING.

9         BY CONTRAST, THEIR ACTUAL DAMAGES NUMBERS, 379 MILLION,

10   TWICE, JUST MENTIONED TWICE.  IN BOTH OF THOSE INSTANCES, APPLE

11   MENTIONED 3.5 BILLION IN THE VERY SAME BREATH.

12        IN OPENING, QUOTE, "WE WILL ASK YOU TO ORDER SAMSUNG TO

13   TAKE 379 MILLION OF THE 3.5 BILLION IT EARNED AND GIVE THAT

14   AMOUNT BACK TO APPLE."  THAT'S AGAIN AT 353.

15        AND THIS IS IN CLOSING.  IS 3. -- I'M SORRY.  "IS 379

16   MILLION A LOT OF MONEY?  YES, IT IS.  BUT, WOW, THERE WAS AN

17   AWFUL LOT OF INFRINGEMENT.  3.5 BILLION.  THAT'S THE NUMBER TO

18   JUDGE AGAINST."

19             THE COURT:  DO YOU THINK THAT THE PROFIT NUMBER IS

20    EVER RELEVANT TO THIS DAMAGES QUESTION?

21             MR. MARTIN:  I THINK IT'S IMPORTANT TO BE SPECIFIC

22    ABOUT WHICH PROFIT NUMBER WE'RE TALKING ABOUT, OR WHICH REVENUE

23    NUMBER.

24             THE COURT:  UM-HUM.

25             MR. MARTIN:  IN TERMS OF THE REVENUE THAT'S ELIGIBLE

```
 1        FOR AN AWARD OF INFRINGER'S PROFITS, IT'S DEFINITELY RELEVANT.
 2             THE COURT:  OKAY.
 3             MR. MARTIN:  THERE'S REALLY NO NEED TO REFER TO ANY
 4        BIGGER NUMBERS THAN THAT BECAUSE THE UTILITY PATENT REVENUE,
 5        THE REVENUE THAT'S ONLY ELIGIBLE FOR UTILITY PATENT REMEDY --
 6             THE COURT:  WELL, LET ME ASK A QUESTION.  SO DO YOU
 7        THINK THAT APPLE SHOULD BE ABLE TO BRING IN THE REVENUE
 8        NUMBERS, AT LEAST AS TO WHEN NOTICE WAS GIVEN ON THE FIRST
 9        DESIGN PATENT?  DO YOU THINK FROM THAT POINT FORWARD SINCE AT
10        THAT POINT SAMSUNG'S PROFITS ARE A POTENTIAL REMEDY?  AT THAT
11        POINT WE SHOULD HAVE THE REVENUE NUMBERS PRESENTED TO THE JURY?
12             MR. MARTIN:  IF I CAN JUST DOUBLE-CHECK WITH MY
13        CO-COUNSEL?
14             THE COURT:  YEAH, PLEASE, GO AHEAD.
15          (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)
16             MR. MARTIN:  YES, YOUR HONOR.  RIGHT NOW THAT NUMBER
17        IS UNDER SEAL, SO I WON'T SAY IT OUT LOUD.
18             THE COURT:  YEAH, I DON'T -- I'M SORRY.  I DON'T WANT
19        TO ACTUALLY ASK FOR THE NUMBER.
20          I'M JUST TRYING TO FIGURE OUT, IS THERE A -- IS THERE A
21        DATE AFTER WHICH SAMSUNG WOULD CONCEDE THAT THE REVENUE AND
22        PROFIT NUMBERS ARE RELEVANT AND SHOULD BE PRESENTED TO THE
23        JURY, WITHOUT SAYING WHAT ANY OF THOSE NUMBERS ARE?
24             MR. MARTIN:  YEAH.  IT'S LESS THAN -- LESS THAN A
25        THIRD OF THE TOTAL REVENUES IN THIS CASE, IN THIS TRIAL.
```

1      AND I -- YOU KNOW, AS YOUR HONOR ASKED IN ONE OF HER

2  QUESTIONS, THE DESIGN PATENT NOTICE DATE, APRIL 15TH, 2011, AND

3  PROVIDED THAT -- YOU KNOW, I WOULD HAVE TO CHECK THE NOTICE

4  DATES FOR EACH PRODUCT AND WHICH PATENTS HAVE BEEN FOUND TO BE

5  INFRINGED BY EACH OF THE PRODUCTS.

6      THE COURT:  UM-HUM.

7      MR. MARTIN:  BUT ASSUMING THAT INFRINGER'S PROFITS

8  START FOR ALL FIVE PRODUCTS AS OF APRIL 15TH, 2011, THEN THE

9  REVENUES PAST THAT POINT WOULD BE RELEVANT IN THE --

10      THE COURT:  OKAY.  SO YOUR MOTION IS REALLY MORE

11  CONCERNED ABOUT ANY OF THOSE NUMBERS UP TO AND INCLUDING

12  APRIL 14 OF 2011?

13      MR. MARTIN:  YES, YES.

14      THE COURT:  OKAY.  ALL RIGHT.

15      GO AHEAD.  I'M SORRY TO INTERRUPT YOU.  GO AHEAD.

16      MR. MARTIN:  THE COMPARISONS THAT I WAS JUST QUOTING

17  FROM OPENING AND CLOSING, 10 PERCENT OF REVENUE, MR. WAGNER,

18  LESS THAN 1 PERCENT OF REVENUE, THOSE ARE COMPARISONS THAT ARE

19  EXPRESSLY PROHIBITED BY UNILOC.  APPLE HAS MADE THIS

20  DISTINCTION THAT THEY LIKE WITH UNILOC, AND THIS CASE INVOLVES

21  DESIGN PATENTS.

22      BUT THAT DISTINCTION, IT DOESN'T APPLY TO SALES THAT

23  AREN'T ELIGIBLE FOR DESIGN PATENT REMEDY.

24      FOR THE TWO-THIRDS, MORE THAN TWO-THIRDS OF REVENUE THAT

25  ARE ONLY ELIGIBLE FOR A UTILITY PATENT REMEDY, AND FOR WHICH

1    APPLE ONLY SEEKS A REASONABLE ROYALTY, DISCLOSING THAT REVENUE

2    TO THE JURY CLEARLY IMPLICATES UNILOC AND IT CLEARLY IMPLICATES

3    THE ENTIRE MARKET VALUE RULE.

4         REALLY WHAT APPLE IS ASKING THE COURT TO DO IS TO RULE

5    THAT UNILOC JUST DOESN'T APPLY AS LONG AS SOME PORTION OF THE

6    DEFENDANT'S SALES IS ELIGIBLE FOR DISGORGEMENT.  THEY'RE ASKING

7    THE COURT TO CREATE THE SECOND EVER EXCEPTION TO THE ENTIRE

8    MARKET VALUE RULE.  ONE WOULD BE, OF COURSE, THAT THE PATENTED

9    FEATURE DRIVES DEMAND; AND TWO, THE ONE THAT APPLE IS ASKING

10   YOU TO CREATE, SOME PORTION HAS BEEN FOUND TO INFRINGE THE

11   DESIGN PATENT.

12        SAMSUNG WANTS TO POINT OUT THAT THERE'S NO AUTHORITY CITED

13   BY APPLE THAT WOULD SUPPORT THAT NEW EXCEPTION, AND IT'S

14   TOTALLY INCONSISTENT WITH THE PRETTY STRICT APPLICATION THAT

15   THE FEDERAL CIRCUIT HAS TAKEN OF THE ENTIRE MARKET VALUE RULE

16   IN RECENT YEARS.

17        AND I JUST WANT TO PAUSE FOR A SECOND JUST TO MAKE SURE

18   THAT I'VE ADDRESSED BOTH OF THE QUESTIONS THAT THE COURT HAS

19   POSED TO SAMSUNG, AND I'LL START WITH THE SECOND ONE FIRST, THE

20   ISSUE OF JX 1500.

21        YOU KNOW, THE COURT IS CORRECT THAT THAT EXHIBIT WAS

22   ADMITTED.  SAMSUNG IS NOT CHALLENGING THE ADMISSIBILITY OF

23   JX 1500.  IT'S ONE THING TO ADMIT A JOINT EXHIBIT THAT CONTAINS

24   A COLD DATA POINT OF SAMSUNG'S REVENUES, AND IT'S SOMETHING

25   ENTIRELY DIFFERENT TO ALLOW APPLE'S COUNSEL OR ITS WITNESSES TO

1      EXPLICITLY OR IMPLICITLY COMPARE THOSE REVENUES TO EITHER

2      PARTY'S DAMAGES.  IT'S THE LATTER THAT UNILOC TELLS US IS

3      FORBIDDEN.  JX 1500, IN AND OF ITSELF, AS A PIECE OF PAPER

4      SITTING ON THE TABLE IN THE JURY ROOM, DOESN'T INVITE THOSE

5      COMPARISONS.  THE PREJUDICE ISN'T THE SAME.

6           AND SO THIS ARGUMENT THAT THE ADMISSION OF JX 1500 IN

7      PRIOR TRIALS SOMEHOW PRECLUDES SAMSUNG FROM MAKING THIS MOTION,

8      IT JUST DOESN'T APPLY.

9           THE COURT:  SO ARE YOU SATISFIED WITH THEN HOW THE

10     LINE WAS DRAWN DURING THE LAST TRIAL, WHICH WAS THAT JX 1500

11     WAS ADMITTED, BUT PDX 100.30, .31, .34 WERE EXCLUDED?  ARE YOU

12     COMFORTABLE WITH THAT, DRAWING THE LINE THAT WAY?  SO WE WOULD

13     ALLOW JX 1500, BUT APPLE IS NOT ALLOWED TO ARGUE THE 3.5

14     BILLION NUMBER, EITHER IN A DEMONSTRATIVE OR IN CLOSING?

15          MR. MARTIN:  AND I WOULD JUST ASK THAT THE LINE --

16     THAT EXPERT TESTIMONY WOULD ALSO BE INCLUDED THERE, BECAUSE

17     REALLY, BECAUSE OF THE SHEER IRRELEVANCE OF THAT NUMBER,

18     THERE'S NO REASON FOR ANYONE TO BE REFERRING TO IT EVEN IN

19     TESTIMONY.

20          IF WE NEED TO CALCULATE INFRINGER'S PROFITS, LET'S START

21     WITH THE MUCH SMALLER NUMBER THAT'S ACTUALLY ELIGIBLE FOR

22     INFRINGER'S PROFITS.

23          THE COURT:  UM-HUM.

24          OKAY.  THANK YOU.

25          MR. MARTIN:  THANK YOU.

1    MR. SABRI:  THANK YOU, YOUR HONOR.  EXCUSE ME.

2    NATHAN SABRI FROM MORRISON & FOERSTER FOR APPLE.

3    THE TOTAL REVENUE AND PROFITS ARE RELEVANT DIRECTLY AND

4    PERMISSIBLY USED IN MS. DAVIS'S EXPERT REPORT, AND APPLE SHOULD

5    BE ALLOWED TO RELY ON THEM, AS SHOULD APPLE'S EXPERT.

6    I'LL START FIRST BY FOCUSSING ON THE NOTICE DATE AND

7    SEPARATION AS, FROM THE COURT'S QUESTIONS, THE COURT IS

8    FOCUSSED ON THAT.

9    TOTAL REVENUE OF PHONES AND PROFIT ACROSS ALL PHONES AT

10   ISSUE IN THE REMAND TRIAL IS RELEVANT NOT JUST TO INFRINGER'S

11   PROFITS, BUT THE TOTAL FOR THE ENTIRE DAMAGES PERIOD WAS

12   CONSIDERED BY MS. DAVIS UNDER THE GEORGIA-PACIFIC FACTORS.

13   GEORGIA-PACIFIC FACTOR NUMBER 8 ESTABLISHES PROFITABILITY

14   AND COMMERCIAL SUCCESS.  THAT'S AT PARAGRAPH 224 OF MS. DAVIS'S

15   REPORT.  SHE CITES TO EXHIBIT 37-R IN THAT PARAGRAPH.  37-R IS

16   THE TOTAL -- TOTAL REVENUE, TOTAL PROFIT SHEET.  IT'S NOT

17   LIMITED TO AN INFRINGER'S PROFITS REMEDY, OF COURSE, BECAUSE

18   IT'S BEING CITED IN SUPPORT OF A REASONABLE ROYALTY.

19   MS. DAVIS DISCUSSES THESE NUMBERS AGAIN WITH RESPECT TO

20   GEORGIA-PACIFIC FACTOR NUMBER 11 -- THAT'S AT PARAGRAPH 242 --

21   THE EXTENT OF INFRINGER'S USE, AND SHE CITES BACK TO FACTOR

22   NUMBER 8.  SHE WRITES RELEVANT TO NUMBER 11 IS FINANCIAL VALUE

23   AS DISCUSSED PREVIOUSLY UNDER NUMBER 8.

24   MR. MUSIKA SIMILARLY TESTIFIED ON GEORGIA-PACIFIC FACTORS.

25   HE USED TOTAL REVENUE NUMBERS AT DOCKET 1839, PAGES 2090 TO 91.

1    HE MENTIONED TOTAL PROFITS SEVERAL TIMES, AND IN THOSE PAGES

2    SPECIFICALLY CITES GEORGIA-PACIFIC FACTOR NUMBER 8, THE EXACT

3    FACTOR MS. DAVIS USES.

4         AND, OF COURSE, TOTAL REVENUE AND PROFIT POST-APRIL 15

5    NOTICE DATE IS DIRECTLY RELEVANT TO THE INFRINGER'S PROFITS

6    CALCULATION, BUT IT SOUNDS FROM A FEW MOMENTS AGO LIKE WE HAVE

7    CONCESSION ON THAT.

8         AND TURNING TO THE SPECIFIC DEMONSTRATIVES AT ISSUE, I

9    WOULD LIKE TO CORRECT A FEW POINTS I HEARD A FEW MOMENTS AGO.

10        THE COURT HAS ABSOLUTELY NOT RULED ON THE ISSUES AS

11   SAMSUNG SUGGESTS.  IF ANYTHING, THE COURT'S PRIOR RULINGS

12   DICTATE EXACTLY WHAT SHOULD HAPPEN HERE.  THE COURT HAS AVOIDED

13   BLANKET PROHIBITIONS, AND A BLANKET PROHIBITION IS EXACTLY WHAT

14   SAMSUNG REQUESTS.  ITS MOTION SAYS APPLE SHOULD NOT BE ALLOWED

15   TO REFER TO THE TOTAL REVENUE AND PROFITS SAMSUNG EARNED FROM

16   SALES OF ACCUSED PRODUCTS.

17        IT CLOSES THAT MOTION WITH, ALLOWING APPLE TO DISCLOSE

18   SAMSUNG'S REVENUES OR PROFITS FOR ALL SALES WOULD BE

19   PREJUDICIAL, MISLEADING, AND UNFAIRLY SKEW THE DAMAGES HORIZON.

20        SAMSUNG POINTS TO NO SPECIFIC DEMONSTRATIVE, NO SPECIFIC

21   PIECE OF TESTIMONY, AND IT'S NOT LIMITING THIS OBJECTION.  THE

22   MOTION SEEKS TO PREVENT APPLE AND ITS EXPERT FROM USING THESE

23   NUMBERS IN ANY WAY.  THAT WOULD INCLUDE THE USES I JUST POINTED

24   OUT IN MS. DAVIS'S REPORT.

25        THE COURT'S ORDER ON DEMONSTRATIVES -- THAT WAS DOCKET

1    2721 AT PAGE 4 -- WAS LOOKING AT THREE SPECIFIC SLIDES AND IT

2    FOUND THAT, IN THAT FACT SPECIFIC CONTEXT, THOSE SLIDES, NUMBER

3    ONE, CONTAINED PREVIOUSLY UNDISCLOSED NUMBERS, SO THERE WAS A

4    DISCLOSURE OBJECTION THAT GUIDED THE COURT'S RULING; AND, TWO,

5    AS SHOWN ON THAT SLIDE, THE NUMBERS WERE MISLEADING.

6         AND WHEN SAMSUNG ATTEMPTED TO EXTEND THAT AND SUGGEST IT

7    WAS A BROADER RULING IN ITS JMOL MOTION, THE COURT REJECTED

8    THAT ATTEMPT.  THAT'S AT DOCKET 2947, THE COURT'S ORDER ON JMOL

9    IN 2014, AND THE COURT STATED, SAMSUNG'S TWO AND A HALF LINE

10   PRETRIAL OBJECTION WAS SUSTAINED AND WAS LIMITED TO THOSE

11   PARTICULAR SLIDES.

12           THE COURT:  THAT'S ECF 2927?

13           MR. SABRI:  THAT'S ECF 2947, YOUR HONOR, I'M SORRY.

14   THAT'S THE JMOL ORDER.

15           THE COURT:  OKAY.

16           MR. SABRI:  SO THESE RULINGS SHOW THE COURT HAS

17   CONSISTENTLY ADDRESSED THESE TYPES OF ISSUES.  BOTH PARTIES

18   KNOW FROM THOSE ORDERS THE BOUNDS OF WHAT THEY CAN AND CANNOT

19   SAY.

20        BUT WHAT THE COURT HAS REPEATEDLY DECLINED TO DO,

21   APPROPRIATELY, IS ISSUE A BLANKET PROHIBITION, AND HERE THAT

22   BLANKET PROHIBITION WOULD DIRECTLY REMOVE MS. DAVIS'S ABILITY

23   TO ADDRESS THESE RELEVANT POINTS THAT SHE MAKES IN HER REPORT,

24   TESTIMONY THAT SAMSUNG HAS PREVIOUSLY NOT OBJECTED TO, AND SHE

25   SHOULD NOT BE PROHIBITED FROM DOING THAT.

```
 1         AND I'LL CONTINUE TO ANOTHER, ANOTHER ARGUMENT I HEARD A

 2   FEW MOMENTS AGO, THAT THE CITATIONS IN SAMSUNG'S BRIEF DIRECT

 3   THIS RULING.

 4         THEY DON'T FOR SEVERAL REASONS.  ONE, OF COURSE NONE OF

 5   THEM ADDRESS INFRINGER'S PROFITS, UNILOC, LASER DYNAMICS AND

 6   DISTRICT COURTS CASES THAT FOLLOWED UNILOC.

 7         BUT, NUMBER TWO, NOT ONE OF THOSE CASES STANDS FOR THE

 8   PROPOSITION THAT A PARTY SHOULD BE PROHIBITED IN ANY SENSE FROM

 9   USING TOTAL REVENUE, TOTAL PROFIT NUMBERS.

10             THE COURT:  WAIT.  CAN I ASK YOU A QUESTION ON THAT

11    POINT?

12             MR. SABRI:  CERTAINLY, YOUR HONOR.

13             THE COURT:  I HEAR YOUR POINT THAT UNILOC DIDN'T DEAL

14   WITH INFRINGER'S PROFITS.

15         BUT IF IT DEALT WITH REASONABLE ROYALTY, WHY SHOULD WE

16   ALLOW IT FOR GEORGIA-PACIFIC FACTORS 8 AND 11 LIKE HE JUST

17   ARGUED.

18             MR. SABRI:  CERTAINLY, YOUR HONOR.

19             THE COURT:  HOW DO WE HARMONIZE UNILOC WITH WHETHER

20   IT'S RELEVANT FOR GEORGIA-PACIFIC FACTORS?

21             MR. SABRI:  SO THE KEY WITH ALL OF THOSE CASES IS HOW

22   THESE NUMBERS ARE GOING TO BE USED AND WHETHER, UNDER A FACT

23   SPECIFIC 403 ANALYSIS GENERALLY, THE NUMBERS ARE MORE

24   PREJUDICIAL THAN PROBATIVE, OR WHETHER CERTAIN TESTIMONY WAS

25   MORE PREJUDICIAL THAN PROBATIVE, OR IN THIS CASE, RIGHT, IT
```

1    COULD BE WHETHER A CERTAIN DEMONSTRATIVE IS MORE PREJUDICIAL

2    THAN PROBATIVE.

3           AND IN THOSE CASES, EACH ONE, UNILOC AND LASER DYNAMICS

4    INCLUDED, RELATED TO AN ATTEMPT TO USE THE ENTIRE MARKET VALUE

5    RULE THEORY.  SO THERE WAS AN ATTEMPT TO USE THESE NUMBERS IN

6    ORDER TO, IN ORDER TO GET AROUND PROVING UP THAT A PATENT

7    DRIVES THE DEMAND FOR THE ENTIRE PRODUCT, IT DRIVES THE SALES

8    FOR THE ENTIRE PRODUCT.

9           THAT IS NOT HOW MS. DAVIS USES THESE NUMBERS.  NONE OF THE

10   CASES SAMSUNG CITES ADDRESSES USE IN GEORGIA-PACIFIC FACTORS OR

11   OTHER RELEVANT PURPOSES.

12          AND THIS TYPE OF BLANKET PROHIBITION, INDEPENDENT OF

13   SPECIFIC OBJECTIONS AT TRIAL, COULD HAVE FAR REACHING

14   UNINTENDED CONSEQUENCES.  JUST TO PICK ANOTHER EXAMPLE, IN

15   ADDITION TO MS. DAVIS'S STATEMENTS IN HER REPORT, A SPREADSHEET

16   THAT SHOWS SAMSUNG COSTS, IF WE WERE TO CUT OFF THAT

17   SPREADSHEET AT THE NOTICE DATE UNDER THE IDEA THAT REVENUES AND

18   PROFITS FOR TOTAL -- TOTAL REVENUE AND PROFITS APPEAR ON THAT

19   PAGE AND, THEREFORE, THEY SHOULDN'T BE SHOWN TO THE JURY, THE

20   JURY WILL NOT BE ABLE TO EVALUATE, FOR EXAMPLE, THE COSTS

21   ARGUMENT.

22          SO THERE'S A DISPUTE OVER THE R&D COSTS, AMONG OTHERS,

23   WHETHER THOSE COSTS ARE DIRECTLY ATTRIBUTABLE.

24          AND FOR THE JURY TO EVALUATE THE CREDIBILITY OF THE

25   PARTIES' ARGUMENTS, THE CREDIBILITY AND REASONABLENESS OF THE

1    EXPERTS' ARGUMENTS, THEY NEED TO BE ABLE TO SEE THE FULL

2    CONTEXT OF THOSE CLAIMED COSTS.  THAT WOULD INCLUDE

3    PRE-APRIL 15, 2011, SALES.

4         SO APPLE SUGGESTS, YOUR HONOR, THE APPROPRIATE APPROACH

5    HERE IS EXACTLY WHAT THE COURT HAS DONE IN THE PAST.  IF

6    THERE'S AN OBJECTION TO A PARTICULAR SLIDE, A PARTICULAR PIECE

7    OF TESTIMONY, SAMSUNG SHOULD MAKE THAT OBJECTION, THE COURT CAN

8    RULE ON IT.

9         IF THERE'S NOT, THE TYPE OF BLANKET RULE THAT SAMSUNG

10   SEEKS IN THE MOTION IS SIMPLY INAPPROPRIATE AND WOULD NOT,

11   WOULD NOT HELP EITHER PARTY, WOULD NOT HELP THIS CASE PROCEED.

12        THE COURT:  SO YOU'RE SAYING THIS SHOULD BE A DENIAL

13   WITHOUT PREJUDICE?

14        MR. SABRI:  THAT WOULD BE APPROPRIATE, YOUR HONOR.

15        THE COURT:  AND ALLOW THEM TO MAKE SPECIFIC

16   OBJECTIONS?

17        MR. SABRI:  YES, YOUR HONOR.

18        THE COURT:  I GUESS I'M NOT CLEAR, FOR UNILOC, ARE

19   YOU SAYING THAT AS LONG AS THE CLAIMANT IS NOT ADVANCING AN

20   ENTIRE MARKET VALUE RULE THEORY, THEY CAN STILL GET THE SAME

21   DATA IN AS LONG AS THEY DON'T MAKE AN ENTIRE MARKET VALUE RULE

22   ARGUMENT?

23        MR. SABRI:  WHAT I'M SAYING, YOUR HONOR, IS UNILOC

24   DOESN'T STAND FOR A BROAD PROPOSITION THAT NO TOTAL REVENUE, NO

25   TOTAL PROFIT NUMBERS CAN COME IN.

1        WHAT IT STANDS FOR IS, NUMBER ONE, A PARTY CAN'T MAKE AN

2    ENTIRE MARKET VALUE RULE THEORY ARGUMENT WITHOUT ESTABLISHING

3    THE RIGHT -- WITHOUT MEETING THE APPROPRIATE STANDARD.

4        AND, NUMBER TWO, A PARTY CAN'T SIMPLY PLUCK A TOTAL NUMBER

5    AND USE IT AS A, QUOTE-UNQUOTE, REASONABLENESS CHECK.

6        NEITHER OF THOSE IS WHAT MS. DAVIS IS PURPORTING TO DO.

7    MS. DAVIS USES THESE NUMBERS FOR THE GEORGIA-PACIFIC FACTORS.

8    SHE SHOULD BE PERMITTED TO DO THAT.

9        AND APPLE IN OPENING MAY DISCUSS WHAT MS. DAVIS IS GOING

10   TO DO, WHAT THE EVIDENCE WILL SHOW IN THIS CASE, AND AFTER THE

11   EVIDENCE IS IN, IN CLOSING ARGUMENT, MAY CITE WHAT THE EVIDENCE

12   HAS SHOWN AND WHAT THE TESTIMONY -- WHAT TESTIMONY CAME IN.

13       AND AT THE APPROPRIATE TIME, THE COURT CAN RULE -- IF

14   THERE ARE OBJECTIONS AS TESTIMONY COMES IN OR IF A

15   DEMONSTRATIVE SEEMS TO CROSS THE LINE, SAMSUNG CAN OBJECT AND

16   IT WILL BE DEALT WITH AT THAT TIME.

17       BUT A DENIAL WITHOUT PREJUDICE WOULD BE THE APPROPRIATE

18   RESULT, YOUR HONOR.

19           THE COURT:  LET ME ASK, MR. MARTIN, DO YOU AGREE WITH

20   MR. SABRI THAT THE TOTAL REVENUE AND PROFITS WOULD BE RELEVANT

21   TO SOME GEORGIA-PACIFIC FACTORS?

22           MR. MARTIN:  NO.  I MEAN --

23           THE COURT:  YOU DON'T THINK IT'S RELEVANT AT ALL?

24           MR. MARTIN:  I DON'T AGREE AT ALL.

25           THE COURT:  I GUESS I'M TRYING TO FIGURE OUT, IS IT

1    YOUR POSITION THAT IT'S RELEVANT, BUT UNDER 403, IT'S UNDULY

2    PREJUDICIAL AND THAT OUTWEIGHS ANY PROBATIVE VALUE AND, ON THAT

3    BASIS, IT SHOULD BE EXCLUDED?

4        OR YOU THINK IT'S NOT AT ALL RELEVANT TO GEORGIA-PACIFIC?

5    AND IF SO, WHY?

6          MR. MARTIN:  WELL, I WOULD ALSO ADD CUMULATIVE

7    BECAUSE THERE ARE ALSO UNIT SALES NUMBERS IN THE RECORD.  IF

8    WE'RE EVALUATING SOMETHING LIKE THE EXTENT OF THE INFRINGING

9    USE, JUST, YOU KNOW, MULTIPLYING THAT QUANTITY SOLD BY THE

10    PRICE AND JUST TELLING A BIG, BIG DOLLAR NUMBER IS JUST TOTALLY

11    UNNECESSARY AND IT'S VERY PREJUDICIAL.

12        IT IS A $2 BILLION CAT, IN THE WORDS OF THE UNILOC COURT,

13    THAT IS BEING LET OUT OF THE BAG.  AND IN UNILOC, THERE WAS

14    VERY EFFECTIVE CROSS-EXAMINATION ON THIS POINT POINTING OUT

15    THAT THAT WAS NOT A RELEVANT COMPARISON.  THERE WAS A SPECIFIC

16    CURATIVE INSTRUCTION TELLING THE JURY THAT THEY ARE NOT ALLOWED

17    TO CONSIDER THOSE NUMBERS.

18        AND EVEN AFTER GIVING THAT CONSTRUCTION -- THAT

19    INSTRUCTION, THE DISTRICT COURT SAID, YOU KNOW WHAT, THAT

20    WASN'T GOOD ENOUGH.  THIS INEVITABLY TAINTED THE JURY'S

21    VERDICT.  IT SKEWED THE DAMAGES HORIZON.  HE GRANTED A NEW

22    TRIAL, THE FEDERAL CIRCUIT AFFIRMED.

23          THE COURT:  UM-HUM.  SO I WOULD AGREE WITH YOU THAT

24    THE UNITS COULD SUFFICE ON FACTOR 11, EXTENT OF INFRINGER'S

25    USE.

```
 1              BUT WHY WOULDN'T TOTAL REVENUE AND PROFITS BE RELEVANT TO
 2    FACTOR 8, WHICH IS PROFITABILITY?
 3              MR. MARTIN:  YOUR HONOR, I JUST WANTED TO MAKE THE
 4    POINT THAT --
 5              THE COURT:  YEAH.
 6              MR. MARTIN:  -- AT LEAST IN EVERY CASE THAT I'VE BEEN
 7    INVOLVED IN, A DAMAGES EXPERT ALWAYS CITES THE GEORGIA-PACIFIC
 8    FACTORS.
 9              THE COURT:  UM-HUM.
10              MR. MARTIN:  THIS WOULD BE A RULING, ESSENTIALLY,
11    THAT GEORGIA-PACIFIC -- IT'S NOT EVEN A FEDERAL CIRCUIT CASE --
12    THAT GEORGIA-PACIFIC TRUMPS UNILOC, THAT IT TRUMPS THE ENTIRE
13    MARKET VALUE ENTIRELY, THAT IF YOU CAN CITE THE ENTIRE MARKET
14    VALUE OF THE ACCUSED PRODUCTS IN CONNECTION WITH ONE OF THE
15    GEORGIA-PACIFIC FACTORS, THEN YOU HAVE FREE REIGN TO JUST THROW
16    THOSE NUMBERS INTO THE RECORD.
17              THE COURT:  UM-HUM.
18              MR. MARTIN:  AND, YOU KNOW, THAT'S NOT ONLY
19    INCONSISTENT WITH UNILOC, IT'S ALSO INCONSISTENT WITH ANOTHER
20    CASE THAT'S BEEN DECIDED MORE RECENTLY.  THIS IS ERICSSON
21    VERSUS D-LINK.  THIS IS AT 773 F.3D 1201.
22              THE COURT:  I'M SORRY, CAN YOU REPEAT THAT?  773 F.3D
23    201?
24              MR. MARTIN:  F.3D 1201.
25              THE COURT:  OH, 1201.  OKAY, THANK YOU.  GO AHEAD.
```

1          MR. MARTIN:  AND THE COURT CLARIFIES, THE ENTIRE

2     MARKET VALUE IS ACTUALLY TWO SEPARATE COMPONENTS.  THERE IS ONE

3     SUBSTANTIVE LEGAL RULE, WHICH IS YOU CANNOT BASE YOUR DAMAGES

4     CALCULATION AS A PERCENTAGE OF THE ENTIRE MARKET VALUE OF THE

5     INFRINGING PRODUCTS WITHOUT SHOWING THAT THE PATENTED FEATURE

6     DRIVES DEMAND.

7          BUT THEN THEY SAY THAT THERE'S A SECOND EVIDENTIARY

8     PRINCIPLE.

9          THE COURT:  SO IS YOUR POSITION THAT YOU CAN'T --

10    THERE'S NO OTHER REASON TO BRING IN TOTAL REVENUE AND TOTAL

11    PROFIT UNLESS YOU ARE ARGUING FOR THE ENTIRE MARKET VALUE RULE?

12         BECAUSE MR. SABRI SEEMS TO BE TRYING TO SAY, WELL, I'M NOT

13    ARGUING FOR THE ENTIRE MARKET VALUE RULE, BUT I STILL THINK IT

14    MIGHT BE RELEVANT AND I CAN USE IT SOME OTHER WAY.

15         ARE YOU SAYING, NO, THAT'S NOT POSSIBLE?  IF YOU'RE

16    BRINGING IT IN, IT'S TO AT LEAST GET THE BENEFIT OF THE ENTIRE

17    MARKET VALUE RULE, EVEN IF YOU'RE NOT EXPLICITLY REQUESTING IT

18    FROM THE JURY?

19         MR. MARTIN:  I WOULD JUST -- I WOULD LEAVE IT AT THE

20    FACT THAT IF ALL YOU HAD TO DO TO GET AROUND THE MARKET VALUE

21    RULE, THE ENTIRE MARKET VALUE RULE IS CITE GEORGIA-PACIFIC, IT

22    WOULD HAVE NO MORE EFFECT IN TERMS OF THERE WOULD ONLY BE THAT

23    FIRST SUBSTANTIVE LEGAL RULE, WHICH PREVENTS YOU FROM BASING

24    DAMAGES AS A PERCENTAGE OF THE ENTIRE MARKET VALUE RULE OF THE

25    ACCUSED PRODUCTS.

```
1              BUT IT WOULD COMPLETELY OVERTURN THIS SEPARATE EVIDENTIARY

2      PRINCIPLE THAT WAS ARTICULATED IN UNILOC AND HAS BEEN APPLIED

3      BY EACH OF THE CASES THAT WE CITE IN OUR BRIEF.

4              I'M SURE THAT IN ONE OF THOSE CASES, IF NOT ALL OF THEM,

5      THOSE REVENUES WERE CITED IN CONNECTION WITH ONE OF THE

6      GEORGIA-PACIFIC FACTORS.  THERE ARE 15 OF THEM.  IT'S NOT THAT

7      HARD TO FIND ONE THAT'S RELEVANT.

8              THE COURT:  UM-HUM.

9              MR. MARTIN:  IF THAT'S ALL YOU HAVE TO DO, THEN WE

10     HAVE -- IT'S JUST NULLIFIED AT LEAST MOST OF WHAT UNILOC STANDS

11     FOR.  IT REALLY WILL NOT MUCH THAT MUCH EFFECT.

12             THE COURT:  UM-HUM.  OKAY.  WHAT'S YOUR RESPONSE TO

13     MR. SABRI'S ARGUMENT OF, LIKE, OKAY, YOU MAY NEED TO EXCLUDE

14     THINGS GOING FORWARD, BUT JUST DO IT ON A DOCUMENT OR

15     QUESTION/OBJECTION BASIS AND DON'T DO A BLANKET MOTION IN

16     LIMINE RULING?

17             MR. MARTIN:  I PERSONALLY FOUND IT IRONIC IN LIGHT OF

18     A STATEMENT THAT WAS MADE IN APPLE'S OPPOSITION TO OUR NEW

19     TRIAL MOTION.  PERHAPS THE COURT WILL RECALL THAT APPLE ARGUED

20     THAT WE HAD FAILED TO PRESERVE BY NOT MAKING CONTEMPORANEOUS

21     OBJECTIONS EACH AND EVERY TIME IT WAS MENTIONED.

22             AND THERE WAS A FOOTNOTE ON PAGE 30, FOOTNOTE 18, THAT

23     FAULTED SAMSUNG FOR NOT FILING A MOTION IN LIMINE.  QUOTE,

24     "SAMSUNG FILED NO MOTION IN LIMINE OR OTHER GENERAL OBJECTION

25     TO THE ADMISSION OF TOTAL REVENUES."
```

1      THAT'S WHAT WE'VE DONE.  WE DID IT IN THE 630 CASE, THE

2 COURT GRANTED THAT MOTION.

3      WE FILED THE EXACT SAME MOTION IN THIS CASE AND THE COURT

4 SHOULD GRANT IT AGAIN.

5      AGAIN, IT'S -- IN THE WORDS OF THE UNILOC COURT, AS SOON

6 AS THAT CAT IS LET OUT OF THE BAG, YOU CAN'T PUT IT BACK IN.

7 THE JURY VERDICT IS TAINTED IN THE WORDS OF THAT COURT.  THE

8 HORIZON HAS BEEN SKEWED.

9      EVEN WITH A CURATIVE INSTRUCTION, THAT WAS NOT ENOUGH.

10 YOU CAN'T -- YOU KNOW, IT IS PREJUDICIAL TO JUST THROW BIG

11 NUMBERS INTO THE RECORD BECAUSE THEY INEVITABLY INVITE

12 COMPARISONS.

13      YOU KNOW, IF MS. DAVIS, LIKE MR. MUSIKA DID IN THE FIRST

14 TRIAL, SAYS THAT THIS IS WHAT THE TOTAL REVENUES WERE IN

15 CONNECTION WITH THE GEORGIA-PACIFIC FACTORS, AND THEN ON THE

16 NEXT PAGE OF THE TRANSCRIPT SAYS THAT MY REASONABLE ROYALTY

17 NUMBER IS HOWEVER MANY MILLION, THAT INEVITABLY WILL INVITE THE

18 JURY TO COMPARE THE TWO.

19           THE COURT:  ALL RIGHT.

20           MR. SABRI:  YOUR HONOR, MAY I RESPOND BRIEFLY?

21           THE COURT:  GO AHEAD, PLEASE.

22           MR. SABRI:  ON THE 630, I DO WANT TO CORRECT.  THE

23 COURT ABSOLUTELY DID NOT GRANT THE TYPE OF MOTION SAMSUNG IS

24 MAKING HERE.

25      SAMSUNG HAS TOLD US ALL SEVERAL TIMES NOW, APPLE'S EXPERTS

1    SHOULD ALSO BE PROHIBITED FROM USING TOTAL REVENUE AND TOTAL

2    PROFIT NUMBERS.

3         AND OF COURSE THE COURT EXPLICITLY ALLOWED APPLE'S EXPERTS

4    TO REACH TOTAL REVENUE AND TOTAL PROFIT NUMBERS IN RULING ON

5    SAMSUNG'S MOTION IN LIMINE IN THE 630 CASE.  SO SAMSUNG'S

6    REQUEST HERE FOR A BROAD PROHIBITION HAS NEVER BEEN GRANTED BY

7    THE COURT, NOT IN THIS CASE AND NOT IN THE 630 CASE.

8         AND AS TO THE ASSERTION THAT USE OF THESE NUMBERS IN THE

9    GEORGIA-PACIFIC FACTORS WOULD MOOT UNILOC AND LASER DYNAMICS,

10   WELL, THAT'S NOT TRUE, EITHER, BECAUSE NEITHER UNILOC NOR

11   LASER DYNAMICS STANDS FOR THE PROPOSITION THAT THESE NUMBERS

12   CAN'T BE USED AT ALL.

13        WHAT MATTERS IS, UNDER THE FACTS OF A CERTAIN CASE, HOW

14   ARE THESE NUMBERS BEING USED?  ARE THEY BEING USED IN A

15   MISLEADING WAY?  ARE THEY BEING USED TO EVADE OR CIRCUMVENT THE

16   ENTIRE MARKET VALUE RULE THEORY?  ARE THEY FAILING A 403

17   ANALYSIS?

18        AND IF THEY'RE BEING USED, AS MS. DAVIS USED THEM IN HER

19   REPORT IN LINES THAT HAVE NOT BEEN STRICKEN, WITH TESTIMONY

20   THAT HAS NOT PREVIOUSLY BEEN OBJECTED TO, THEY'RE USED TO

21   SUPPORT A GEORGIA-PACIFIC FACTOR ANALYSIS THAT IS COMPLETELY

22   APPROPRIATE AND MORE PROBATIVE THAN PREJUDICIAL.

23             MR. MARTIN:  IF I COULD JUST POINT OUT THAT AT THE

24   LAST TRIAL, MS. DAVIS SAW NO NEED TO DISCLOSE THE TOTAL

25   REVENUES WHEN SHE WAS DISCUSSING THE GEORGIA-PACIFIC FACTORS.

1    SHE ONLY DISCUSSED ONE, GEORGIA-PACIFIC FACTOR 5, COMPETITION

2    BETWEEN THE PARTIES.

3        IF WE SUDDENLY HAVE THIS NEW NEED THAT WE CAN'T DO A FULL

4    GEORGIA-PACIFIC ANALYSIS WITHOUT THROWING OUT A $2 BILLION

5    NUMBER, I WOULD POSIT THAT THAT'S PRETEXTUAL.  IT WAS NOT THAT

6    IMPORTANT LAST TIME.

7        WE HAVE OTHER WAYS TO PRESENT THE SAME INFORMATION.  APPLE

8    IS NOT DOING IT FOR GEORGIA-PACIFIC PURPOSES.  IT'S DOING IT

9    FOR PURPOSES THAT ARE FORBIDDEN UNDER UNILOC.

10       THE COURT:  DO YOU WANT TO RESPOND TO THAT,

11   MR. SABRI?

12       MR. SABRI:  I WOULD, YOUR HONOR.

13       APPLE BEARS THE BURDEN OF PROOF.  THE GROUNDHOG DAY RULES

14   HAVE ALWAYS STATED THE PARTIES MAY RELY ON PRIOR DISCLOSURES,

15   EXPERT REPORTS.

16       MS. DAVIS SHOULD NOT BE LIMITED TO WHAT SHE ACTUALLY CHOSE

17   TO TESTIFY ON IN THE LIMITED AMOUNT OF TIME THAT WE HAD IN

18   2013.  THAT WOULD MAKE NO SENSE.

19       AND AS I MENTIONED, MR. MUSIKA DID, IN FACT, USE HIS

20   GEORGIA-PACIFIC FACTOR ANALYSIS, HE USED TOTAL PROFITS, TOTAL

21   REVENUES FOR THIS EXACT PURPOSE IN 2012.

22       IT'S NOT A SUFFICIENT BASIS TO GRANT A BROAD PROHIBITION

23   TO SAY, WELL, YOU DIDN'T USE IT LAST TIME, THEREFORE, THE COURT

24   SHOULD GRANT A MOTION IN LIMINE AND PREVENT YOU FROM USING IT

25   THIS TIME.  THAT WOULDN'T MAKE ANY SENSE, IT WOULD BE

1    OVERBROAD, AND IT WOULD LEAD TO UNINTENDED CONSEQUENCES.

2            MR. MARTIN:  I HAVEN'T HEARD ANY REASON TO NOT GRANT

3    AN ORDER, AT THE VERY LEAST, AN ORDER THAT MIRRORS THE ORDER

4    THAT WAS GRANTED IN THE 630 CASE, WHICH WOULD HAVE PREVENTED

5    ALL OF THOSE IMPROPER COMPARISONS THAT WE HEARD IN OPENING AND

6    CLOSING.  THAT, TO ME, SEEMS LIKE A BASELINE.  I HAVEN'T HEARD

7    ANY ARGUMENT AS TO WHY THIS CASE IS ANY DIFFERENT FROM THE 630

8    CASE IN THAT RESPECT, ALTHOUGH ACTUALLY I DO WANT TO ADDRESS

9    ONE POINT --

10            THE COURT:  AND YOU WOULD AGREE THAT MR. WAGNER USED

11    TOTAL PROFITS AND REVENUE IN HIS ANALYSIS?  OR NOT?

12            MR. MARTIN:  SO, NO, HE DID NOT, NO.

13        PERHAPS OTHER THAN A CITATION TO THE GEORGIA-PACIFIC

14    FACTORS, NO.

15        YOU KNOW, I WOULD HAVE TO -- I DON'T HAVE THE REPORT IN

16    FRONT OF ME.  I'D HAVE TO TAKE A LOOK.

17            THE COURT:  OKAY.  BUT IT SOUNDS LIKE WHAT YOU'RE

18    SAYING TODAY IS YOU CONCEDE THAT IT WOULD BE RELEVANT FOR

19    INFRINGER'S PROFITS, OR ESSENTIALLY LOST PROFITS.

20        YOUR OBJECTION IS MORE USING IT FOR THE REASONABLE ROYALTY

21    TIME PERIOD.

22            MR. MARTIN:  YES.  I WOULD STATE IT A LITTLE BIT

23    DIFFERENTLY.

24            THE COURT:  OKAY.

25            MR. MARTIN:  THAT -- WELL, WE CAN JUST DRAW THE LINE

1    AT THE DESIGN PATENT NOTICE.  I THINK THAT THAT -- ALTHOUGH IT

2    IS BASED ON REMEDY, IT'S REALLY BASED ON RELEVANCE.  THAT'S

3    WHEN IT REALLY TAKES ON ANY PROBATIVE VALUE THAT WOULD OUTWEIGH

4    SOME OF THE PREJUDICIAL CONCERNS.

5              THE COURT:  OKAY.  AND THEN I GUESS YOUR RESPONSE

6    WOULD BE, WELL, GEORGIA-PACIFIC 8 AND 11.

7              MR. SABRI:  AND, YOUR HONOR, THE UNINTENDED

8    CONSEQUENCE AGAIN.  HOW IS THAT GOING TO BE IMPLEMENTED, THAT

9    TYPE OF BROAD RULE?  ARE WE NOW GOING TO HAVE TO DRAW A LINE

10   DOWN THE MIDDLE OF ALL SPREADSHEETS AND SAY, WE CAN'T SHOW YOU

11   ANY OF SAMSUNG'S NUMBERS BEFORE APRIL 15, 2011, BECAUSE THOSE

12   SHOW REVENUES AND PROFITS ON THEM AND THAT WOULD VIOLATE THIS

13   MOTION IN LIMINE ORDER?

14        AND THEN, AS I MENTIONED AT THE BEGINNING OF THE ARGUMENT,

15   HOW IS THE JURY GOING TO SEE THE FULL CONTEXT OF, FOR EXAMPLE,

16   THE COST ANALYSIS?

17        SO R&D EXPENSES WHICH, IF THEY ARE DIRECTLY ATTRIBUTABLE,

18   ONE WOULD EXPECT THEM TO VARY OVER TIME, PERHAPS MORE THAN THEY

19   DO IN LOOKING AT THE SPREADSHEETS.  THOSE NUMBERS WOULD BE SEEN

20   PRE-APRIL 15TH, 2011, AND A BLANKET RULE WOULD PREVENT THE JURY

21   FROM SEEING THOSE NUMBERS, AS OPPOSED TO RULING ON THE SPECIFIC

22   SLIDES, SPECIFIC LINES OF TESTIMONY OVER THE COURSE OF THE

23   TRIAL.

24        APPLE HAS THE COURT'S PRIOR ORDERS.  BOTH PARTIES DO.

25   THEY WILL, OF COURSE, ABIDE BY THEM.

1    AND APPLE WILL ABIDE BY ANY OBJECTION RULINGS DURING

2    TRIAL.

3         BUT A BROAD RULE WOULD BE UNWORKABLE AND INAPPROPRIATE IN

4    THIS CIRCUMSTANCE.

5              MR. MARTIN:  WITH RESPECT TO THE INFRINGER'S PROFITS

6    ISSUE, I HAVEN'T HEARD MR. SABRI ADDRESS THE ORDER ON PX 25G.

7    IT'S THE SAME ORDER AS 2721, SAME PAGE AT 4.

8         THE COURT RULED AT PAGES 7 TO 10, WHICH IS -- THOSE PAGES

9    WERE IDENTICAL TO THE EXHIBIT FROM MS. DAVIS'S REPORT THAT WE

10   BASE OUR MOTION ON, WITH DIFFERENT PRODUCTS, OBVIOUSLY -- PAGES

11   7 TO 10 CONTAIN PREJUDICIAL FIGURES OF TWO KINDS.  THEY CONTAIN

12   SAMSUNG SALES FIGURES FOR DESIGN PATENT INFRINGEMENT FOR

13   PERIODS IN WHICH APPLE HAS NO CLAIM FOR INFRINGER'S PROFITS.

14        WHY?  BECAUSE OF THE NOTICE DATE.

15        SO THIS IDEA THAT WE CAN PUT IN GROSS PROFIT NUMBERS FROM

16   BEFORE THEY'RE ELIGIBLE FOR AN AWARD OF ANY KIND OF PROFITS HAS

17   BEEN REJECTED BY THE COURT ALREADY.

18             MR. SABRI:  YOUR HONOR, I'D LIKE TO RESPOND ON THAT

19   JUST TO CORRECT IT.

20        MR. MARTIN JUST LEFT OUT TWO KEY WORDS THAT WERE IN A

21   PARENTHETICAL THAT SHOW WHAT WAS BEING EXCLUDED WAS NOT TOTAL

22   REVENUES AND TOTAL PROFITS, ACTUAL NUMBERS FROM SAMSUNG'S

23   FINANCIAL INFORMATION.

24        WHAT THE COURT WAS LOOKING AT WAS SAMSUNG SALES FIGURES,

25   PARENTHESES, INFRINGER'S PROFITS, BECAUSE THE ITEMS THAT THE

1    COURT WAS EXCLUDING WERE GROSS PROFIT CALCULATIONS, AN

2    INFRINGER'S PROFIT CALCULATION.

3         SO THE SPREADSHEET SHOWED, OVER A LONG PERIOD OF TIME,

4    GROSS PROFIT NUMBERS, THAT IS, THE GROSS PROFIT CALCULATION OR

5    AN INFRINGER'S PROFIT CALCULATION, AND THE COURT SAID, WELL,

6    THE NUMBERS THAT COME BEFORE THE DESIGN PATENT NOTICE DATE, AS

7    SEEN IN THIS SPECIFIC EXHIBIT, AND THIS SPECIFIC EXHIBIT

8    RULING, THOSE CONTAIN SAMSUNG'S SALES FIGURES, INFRINGER'S

9    PROFITS FOR PRODUCTS NOT ACCUSED OF VIOLATING APPLE'S DESIGN

10   PATENTS.

11        THAT WAS NOT ACTUAL TOTAL REVENUE, ACTUAL TOTAL PROFITS,

12   AND CERTAINLY DID NOT LEAD TO A BLANKET PROHIBITION ON THE TYPE

13   OF USE THAT MS. DAVIS WOULD CONDUCT WITH THESE NUMBERS.

14        MR. MARTIN:  YOUR HONOR, IT WAS REVENUE ON A PER

15   PRODUCT, MONTH-BY-MONTH BASIS WITH A GRAND TOTAL AT THE BOTTOM.

16   IT WAS GROSS PROFIT, PRODUCT BY PROFIT, MONTH BY MONTH, WITH A

17   GRAND TOTAL AT THE BOTTOM.

18        AND IF GROSS PROFITS FOR THOSE TIME PERIODS ARE IRRELEVANT

19   AND PREJUDICIAL, THE REVENUE THAT YOU USE TO CALCULATE GROSS

20   PROFITS IS EQUALLY PREJUDICIAL, IF NOT MORE, AND JUST AS

21   IRRELEVANT.

22        I MEAN, APPLE EVEN CITES IN ITS BRIEF, IN ITS OPPOSITION,

23   IT SAYS THAT THEY WILL ABIDE BY THAT RULING AND REMOVE THAT

24   INFORMATION FROM THAT EXHIBIT.  THEY SHOULD BE HELD TO THAT.

25        AND, AGAIN, I JUST HAVE TO REITERATE, IF THE GROSS PROFIT

1    INFORMATION IS NOT RELEVANT, IF THAT HAS TO BE GONE FROM THE

2    EXHIBIT, THERE'S NO REASON TO CONTINUE TO ALLOW THEM TO RELY ON

3    THE CUMULATIVE REVENUE NUMBER THAT WOULD INCLUDE ALL OF THAT

4    INFORMATION.

5                    THE COURT:  ALL RIGHT.  THANK YOU ALL VERY MUCH.

6    THAT WAS AN EXCELLENT ARGUMENT.  THESE ARE COMPLICATED ISSUES.

7                    MR. SABRI:  THANK YOU, YOUR HONOR.

8                    THE COURT:  THANK YOU.

9                    MR. MARTIN:  THANK YOU.

10                   THE COURT:  IS THERE ANYTHING MORE THAT WE NEEDED TO

11   DISCUSS TODAY?

12                   MR. ANDERSON:  YOUR HONOR, I HAVE AN ACTUAL

13   HOUSEKEEPING ISSUE.

14                   THE COURT:  OH, OKAY.  WHAT'S THAT?

15                   MR. ANDERSON:  THE COURT ASKED THAT WE PROVIDE

16   ELECTRONIC AND HARD COPIES OF THE EXPERT REPORTS THAT WERE RED

17   LINED AFTER THE ORDER.

18                   THE COURT:  YES.

19                   MR. ANDERSON:  SAMSUNG HAS DISCOVERED THAT WE MAY

20   HAVE MADE A MISTAKE AND NOT MARKED OFF A PARAGRAPH, OR I GUESS

21   IT'S FOUR PARAGRAPHS WE SHOULD HAVE.

22                   THE COURT:  OKAY.

23                   MR. ANDERSON:  SO JUST TO GIVE YOUR HONOR A HEADS-UP,

24   WE'RE GOING TO WORK WITH THE COURT TO GET YOU REPLACEMENT

25   COPIES OF THE PORTIONS OF THE RED LINED REPORT WITH THE

```
1        CORRECTED RED LINE.

2               THE COURT:  OKAY, GREAT.

3               MR. ANDERSON:  AND I ASSUME YOU'D LIKE ELECTRONIC

4    COPIES AS WELL.

5               THE COURT:  YES, PLEASE.  AND THEN LET US KNOW WHAT

6    WE SHOULD SWAP OUT, OR IF THERE'S A SOFT COPY WE SHOULD DELETE

7    THAT'S GOING TO BE REPLACED BY THIS NEW ONE, JUST LET US KNOW

8    WHICH ONE NEEDS TO BE REPLACED.

9               MR. ANDERSON:  WE WILL DO THAT.

10              THE COURT:  OKAY.  THANK YOU.

11       WERE THERE ANY OTHER HOUSEKEEPING ISSUES OR ANYTHING ELSE?

12       OKAY.  THEN I GUESS I'LL SEE YOU ALL ON MARCH 28TH, RIGHT?

13   I DON'T SEE ANY NEED TO GET TOGETHER AGAIN.

14       ALL RIGHT.  THEN WE'LL SEE YOU AT THE TRIAL.  THANK YOU.

15              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

16              MS. MAROULIS:  THANK YOU, YOUR HONOR.

17              MR. LEE:  THANK YOU, YOUR HONOR.

18              MR. PRICE:  THANK YOU, YOUR HONOR.

19          (THE PROCEEDINGS WERE CONCLUDED AT 4:53 P.M.)

20

21

22

23

24

25
```

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18        DATED:  MARCH 15, 2016

19

20

21

22

23

24

25