# EXHIBIT A

Case: 5:11-cv-01846-LHK    Document: 3489-1    Filed 04/14/17    Page 2 of 15

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 04/14/2017

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Each side shall bear its own costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)


FOR THE COURT


/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court


16-1402 - In re: Apple Inc.
United States Patent and Trademark Office, Case No. 90/012,332

Case 5:11-cv-01846-LHK    Document 3489-1    Filed 04/14/17    Page 3

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**IN RE: APPLE INC.,**
*Appellant*

———————————

2016-1402

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/012,332.

———————————

Decided: April 14, 2017

———————————

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for appellant. Also represented by SYDENHAM B. ALEXANDER III, LAUREN B. FLETCHER, SARAH R. FRAZIER, DOMINIC E. MASSA; RACHEL KREVANS, NATHANIEL BRYAN SABRI, Morrison & Foerster LLP, San Francisco, CA.

ROBERT J. MCMANUS, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee. Also represented by NATHAN K. KELLEY, THOMAS W. KRAUSE, FRANCES LYNCH, SCOTT WEIDENFELLER.

KATHLEEN M. SULLIVAN, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for amici curiae Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.

2                                                    IN RE: APPLE INC.

Also represented by WILLIAM ADAMS; VICTORIA FISHMAN
MAROULIS, Redwood Shores, CA.

_____

Before PROST, *Chief Judge,* DYK and STOLL, *Circuit
Judges.*

STOLL, *Circuit Judge.*

Apple appeals the Patent Trial and Appeal Board's
decision rejecting all claims of its patent in a reexamina-
tion proceeding. Apple contends that the Board erred by
construing the "scroll or gesture" and "rubberbanding"
limitations too broadly. We agree with Apple on the
latter, but not the former. Accordingly, we affirm-in-part,
vacate-in-part, and remand for further proceedings con-
sistent with this opinion.

## BACKGROUND

Apple Inc. is the assignee of U.S. Patent
No. 7,844,915, which claims software that allows a
touchscreen device to differentiate between a scroll opera-
tion and a gesture operation based on the number of
detected input points—i.e., finger touches. *See* '915
patent col. 23 ll. 16–41. For example, the '915 patent
teaches that a single input point is interpreted as a scroll,
whereas two or more input points are interpreted as a
gesture. *Id.* at col. 6 ll. 39–43. Gestures may include
zooming in, zooming out, or rotating an image on the
screen. *Id.* at col. 5 ll. 42–48. Claim 1 recites a method
that invokes the "scroll or gesture" limitation in dispute in
this case:

   1. A machine implemented method for scroll-
   ing on a touch-sensitive display of a device com-
   prising:

      receiving a user input, the user input
      is one or more input points applied to the

Case 5:11-cv-01846-LHK   Document 3489-1   Filed 04/14/17   Page 5 of 15

IN RE: APPLE INC.                                         3

> touch-sensitive display that is integrated with the device;
>
> creating an event object in response to the user input;
>
> determining whether the event object invokes a scroll or gesture operation by *distinguishing between a single input point* applied to the touch-sensitive display that is *interpreted as the scroll operation and two or more input points* applied to the touch-sensitive display that are *interpreted as the gesture operation*;
>
> issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;
>
> responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object based on an amount of a scroll with the scroll stopped at a predetermined position in relation to the user input; and
>
> responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

*Id.* at col. 23 ll. 16–41 (emphases added). Independent claims 8 and 15 recite a machine readable storage medium and an apparatus, respectively, that contain the same limitation. All other claims in the '915 patent depend from either claim 1, 8, or 15.

The '915 patent also describes an improved scrolling feature called "rubberbanding." When a user scrolls past the edge of the content on the screen, a predetermined

amount of blank space is displayed and then the content slides back to fit on the screen, resembling the motion of a taut rubber band when the tension is released from one end. For example, if a user scrolls too far such that no content remains in the direction of the scroll—i.e., a user scrolls down when the screen is already displaying the most recent email at the top—the phone will show a predetermined amount of blank space above the most recent email and will slide the content back onto the screen at the end of the scroll. *Id.* at col. 7 ll. 59–67, col. 8 l. 61 − col. 9 l. 60; *see also id.* Figs. 6A–6D. Claim 2 recites rubberbanding:

> 2. The method as in claim 1, further comprising:
>
>> rubberbanding a scrolling region displayed within the window by a predetermined maximum displacement when the scrolling region exceeds a window edge based on the scroll.

*Id.* at col. 23 ll. 42–46. Dependent claims 9 and 16 contain similar limitations.

An unidentified third party filed a request for ex parte reexamination of all claims of the '915 patent, and the U.S. Patent and Trademark Office granted the request. Based on its constructions of the scroll or gesture and rubberbanding limitations, the Examiner rejected every claim of the '915 patent as anticipated or obvious in view of the prior art, and the Board affirmed. *Ex Parte Apple, Inc.*, No. 2014-007899, 2014 WL 7171965, at *7 (PTAB Dec. 9, 2014) ("*Board Decision*"). The Board granted Apple's Request for Rehearing but declined to modify its decision. *Ex Parte Apple, Inc.*, No. 2014-007899, 2015 WL 5676869, at *4 (PTAB Sept. 24, 2015) ("*Rehearing Decision*").

Case 5:11-cv-01846-LHK    Document 3489-1    Filed 04/14/17    Page 7 of 15

IN RE: APPLE INC.                                                                    5

Apple timely appealed the Board's decision.  We have jurisdiction pursuant to 35 U.S.C. § 141(a) and 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Both of Apple's arguments on appeal are rooted in claim construction.  "[W]e review the Board's ultimate claim constructions de novo and its underlying factual determinations involving extrinsic evidence for substantial evidence."  *Prolitec, Inc. v. Scentair Techs., Inc.*, 807 F.3d 1353, 1358 (Fed. Cir. 2015) (citing *Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015)).  Here, "because the intrinsic record fully determines the proper construction, we review the Board's claim constructions de novo."  *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015).  Claims receive the broadest reasonable interpretation consistent with the specification during reexamination proceedings.  *In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1286 (Fed. Cir. 2016).  "While the Board must give the terms their broadest reasonable construction, the construction cannot be divorced from the specification and the record evidence."  *In re NTP, Inc.*, 654 F.3d 1279, 1288 (Fed. Cir. 2011).

## I.

First, Apple contends that the Board's construction of the phrase "two or more" in the scroll or gesture limitation is unreasonable in light of the claim structure and specification.  According to Apple, the '915 patent articulates a single rule for distinguishing between two categories of operations: 1) a "single" input point that is interpreted as a scroll operation; and 2) "two or more" input points that are interpreted as a gesture operation.  Apple claims that the "or" in the phrase "two or more" does not create a distinction between two input points and more than two input points.  In other words, the phrase "two or more" must be interpreted as an atomic unit,

Case 5:11-cv-01846-LHK    Document 3489-1    Filed 04/14/17    Page 7 of 15

6                                                    IN RE: APPLE INC.

meaning that two-, three-, four-, and five-input points
must *all* be interpreted as gestures.   Noting that the
Board is required to apply the broadest reasonable inter-
pretation in light of the specification, Apple points out
that the specification consistently refers to gestures as
requiring "two or more" input points or a "plurality" of
input points.  *See, e.g.*, '915 patent col. 1 ll. 45–46, col. 5
ll. 42–48, col. 7 ll. 4–8.

    In reaching a contrary conclusion, the Board ex-
plained that the broadest reasonable interpretation of the
phrase "two or more" permits either two input points or
more than two input points to be interpreted as a gesture
operation.   *Board Decision*, 2014 WL 7171965, at *4;
*Rehearing Decision*, 2015 WL 5676869, at *1.    Stated
differently, the Board held that the claim language only
requires detection of a scroll operation in response to a
single input point and a gesture operation in response to
one of the possible multi-input touches.  Because the prior
art relied on by the patent examiner—including JP 2000-
163031 to Nomura and U.S. Patent No. 7,724,242 to
Hillis—both teach a single-input scroll and a two-input
gesture, J.A. 409, ¶¶ 53–56; '242 patent col. 3 ll. 46–49,
col. 8 ll. 44–48, the Board rejected the claims.   *Board
Decision*, 2014 WL 7171965, at *4.

    We agree with the Board's construction.  The perti-
nent claim language recites: "distinguishing between a
single input point . . . and two *or* more input points." '915
patent col. 23 ll. 25–28 (emphasis added).  On its face, this
language does not limit the invention such that all re-
ceived user inputs must be categorized as either a scroll
or a gesture as Apple contends.   Apple's construction
would replace the word "or" with "and," thereby requiring
all multi-input touches to be distinguished as gestures.
But this reading is too narrow.  The broadest reasonable
interpretation of the word "or" in the phrase "two or more"
creates alternatives for the gesture operation: a gesture
operation occurs if either two input points or more than

IN RE: APPLE INC.                                                    7

two input points are detected.  We additionally note that
the claims use the open-ended transitional phrase "com-
prising" and, thus, the claims are broad enough to include
user inputs that are categorized as something other than
a scroll or a gesture, undermining Apple's suggestion that
the claims are limited to a single rule.  And the claim
language is broad enough to read on prior art, such as
Nomura and Hillis, that distinguishes between a single
input point and two input points, regardless of how three-,
four-, or five-input points are interpreted.

    Apple's reliance on the specification is also unavail-
ing.  Although the specification does describe a gesture
operation in the context of "two or more" or a "plurality" of
input points or touches, it does not define "two or more" or
"plurality" as meaning that all of the possible pluralities
(e.g., two-, three-, four-, and five-input touches) must be
interpreted as a gesture.  Apple's brief touts the invention
disclosed in the specification as a single rule that distin-
guishes all user inputs as either a scroll or a gesture.
Apple states:  "The '915 patent does not describe any
category of user input other than a scroll or a gesture;
every user input is determined to be in one of those two
categories."  Appellant Br. 9.  But the specification does
not bear out Apple's reading.  In describing Figure 1, for
example, the specification suggests that other user inputs
are possible, explaining that "user input may be in the
form of an input key, button, wheel, touch, or other means
for interacting with the device." '915 patent col. 6 ll. 34–
36.  Moreover, the specification describes methods other
than a single rule to distinguish scrolls from gestures.
For example, the specification discloses that, "[i]n certain
embodiments, determining whether the event object
invokes a scroll or gesture operation is based on receiving
a drag user input for a certain time period."  *Id.* at col. 6
ll. 43–46.  Contrary to the description of the patent in
Apple's brief, Apple's specification does not emphasize the
importance of the single rule Apple now wants its claims

IN RE: APPLE INC.

to cover.  Nor does the specification expressly or implicitly define the term "two or more" beyond its ordinary meaning such that the claims should be interpreted to require a single rule that identifies and separates all inputs as either scrolls (by detecting one-touch) or gestures (by detecting all other multi-input touches).

As the Board recognized, this claim language is properly construed under the BRI as distinguishing between a single input touch and any multi-input touch. Accordingly, we discern no error in the Board's construction of "two or more" under the broadest reasonable interpretation.

## II.

Apple next faults the Board for adopting the Examiner's interpretation of "rubberbanding" as covering sliding content forward at the end of a scroll (i.e., sliding in the same direction as the scroll).  Based on this construction, the Board rejected claims 2, 9, and 16—which include the rubberbanding limitation—as obvious in view of WO 03/081458 to Lira in combination with Hillis or other prior art of record.  Apple contends the Board erred in its claim construction because rubberbanding requires sliding the content backwards in the opposite direction of the scroll.[1]

---

[1]     As an initial matter, we disagree with the Board's conclusion that Apple waived its argument that rubberbanding requires sliding the displayed content backwards. *Rehearing Decision*, 2015 WL 5676869, at *3.  Apple raised this argument in its Patent Owner's Appeal Brief when it contended that "Lira teaches that the screen should 'snap' to the next region of content" and therefore achieved "the opposite effect from rubberbanding." J.A. 798–99.

IN RE: APPLE INC.                                                    9

Lira discloses a method for scrolling within a column of content on a small display screen that relies on a "user-defined snap threshold" to determine whether to stay on the current column of text or move horizontally to the next column. J.A. 477. If the user's horizontal scroll does not exceed the threshold, indicating an intent to stay on the current column, that column is centered on the display screen at the end of the scroll. If, however, the user's scroll exceeds the threshold, the adjacent column in the direction of the scroll is "snapped" into view, i.e., the content slides forward to display the next column. *Id.*

The Examiner appears to have construed rubberbanding in a circular manner to require "rubberbanding a scrolled region by a predetermined maximum displacement when the scrolled region exceeds a display edge." J.A. 843 (quoting '915 patent col. 5 ll. 35–40). The PTO argues on appeal that the broadest reasonable interpretation of rubberbanding is not limited to sliding content in a particular direction, much less requiring that the content must slide backwards, and that the concept of rubberbanding "simply seeks to control the movement of scrolled content." Appellee Br. 49. Because the Board's construction did not limit rubberbanding to sliding content backwards, it found that Lira disclosed this limitation.

We agree with Apple that the Board's analysis rests on an incorrect interpretation of rubberbanding. As expressly defined in the specification, the key to the rubberbanding feature is sliding content in the opposite direction of the scroll—sliding content backwards—once the scroll has been completed. Acting as lexicographers, the inventors of the '915 patent expressly defined rubberbanding in the specification as follows:

> Rubberbanding a scrolled region according to the method 300 occurs by a predetermined maximum displacement value when the scrolled region exceeds a display edge of a display device based on a

IN RE: APPLE INC.

> scroll.  If a user scrolls content of the display mak-
> ing a region past the edge of the content visible in
> the display, then the displacement value limits
> the maximum amount for the region outside the
> content.  At the end of the scroll, the *content slides
> back* making the region outside of the content no
> longer visible on the display.

'915 patent col. 7 ll. 59–67 (emphasis added); *see also id.*
at col. 9 ll. 10–46; Figs. 6A–6D.  As this portion of the
specification makes clear, rubberbanding requires the
content to slide backwards at the end of a scroll.  The
term "rubberbanding," as defined by the inventors, does
not cover sliding content forward at the end of the scroll,
and the Examiner did not cite any evidence to support the
proposition that selecting the direction of the scrolling
would be within the level of ordinary skill.  Because the
Board misinterpreted the rubberbanding limitation, we
vacate its rejection of claims 2, 9, and 16, and remand for
the Board to reconsider these claims in light of the proper
interpretation of rubberbanding.[2]

## Conclusion

We have considered the parties' remaining arguments
and find them unpersuasive.  The Board correctly con-
strued the scroll or gesture limitation but erred in its
construction of the rubberbanding limitation.  Therefore,
the Board's decision is affirmed-in-part, vacated-in-part,
and remanded for further proceedings consistent with this
opinion.

_____

[2]  On remand, the Board should also consider Lira's
disclosure that the "column is re-centered and snapped
back" into alignment with the display window when "the
user's scrolling does not exceed the threshold," as identi-
fied in the Examiner's Answer.  J.A. 844.

IN RE: APPLE INC.                                    11

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

Each party shall bear its own costs.

Case 5:11-cv-01846-LHK   Document 3489-1   Filed 04/14/17   Page 14 of 15

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for panel rehearing are rarely successful because they most often fail to articulate sufficient grounds upon which to grant them. For example, a petition for panel rehearing should not be used to reargue issues already briefed and orally argued; if a party failed to persuade the court on an issue in the first instance, a petition for panel rehearing should not be used as an attempt to get a second "bite at the apple." This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36. Such dispositions are entered if the court determines the judgment of the trial court is based on findings that are not clearly erroneous, the evidence supporting the jury verdict is sufficient, the record supports the trial court's ruling, the decision of the administrative agency warrants affirmance under the appropriate standard of review, or the judgment or decision is without an error of law.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit. Almost 1000 petitions for certiorari have been filed in that period.

October 20, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMATION SHEET

## FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999