QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and Samsung
Telecommunications America, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S OPENING BRIEF IN RESPONSE TO THE COURT'S APRIL 4, 2017 ORDER**<br><br>**Hearing:**<br><br>Date: June 15, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ................................................................... 2

    A.    The Design-Patent Proceedings In This Court ......................................... 2

    B.    The Federal Circuit's Design-Patent Holding On Appeal ....................... 5

    C.    The Supreme Court's Decision ................................................................. 5

    D.    The Federal Circuit's Remand Decision .................................................. 6

ARGUMENT .......................................................................................................................... 6

I.    SAMSUNG IS ENTITLED TO A NEW TRIAL ON DESIGN-PATENT DAMAGES BEFORE A PROPERLY-INSTRUCTED JURY ............................................ 6

    A.    The Trial Record Amply Supports An Instruction That The "Article Of Manufacture" Is "The Part Or Portion Of The Product As Sold That Incorporates Or Embodies The Subject Matter Of The Patent" .............. 8

        1.    Apple's Design Patents ................................................................ 8

        2.    Apple Witnesses' Admissions .................................................... 10

        3.    Undisputed Evidence Of Physically Separable Components ...... 11

        4.    Consumer Survey And Product Review Evidence ...................... 13

    B.    A New Trial On Design-Patent Damages Is Required In Light Of The Record ................................................................................................... 14

CONCLUSION ...................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## <u>Cases</u>

*Apple Inc. v. Samsung Elecs. Co.*,
786 F.3d 983 (Fed. Cir. 2015) ...................................................................................1, 5

*Apple Inc. v. Samsung Elecs. Co.*,
___ F. App'x ___, 2017 WL 490419 (Fed. Cir. Feb. 7, 2017) .............................6, 15

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016) .......................................................................................8

*Big Horn County Elec. Coop., Inc. v. Adams*,
219 F.3d 944 (9th Cir. 2000) ..........................................................................................17

*Blassingill v. Waterman S.S. Corp.*,
336 F.2d 367 (9th Cir. 1964) ......................................................................................8, 14

*Bush & Lane Piano Co. v. Becker Bros.*,
222 F. 902 (2d Cir. 1915) ............................................................................................3, 4

*Bush & Lane Piano Co. v. Becker Bros.*,
234 F. 79 (2d Cir. 1916) ..............................................................................................3, 4

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) ......................................................................................15

*Cruz v. Int'l Collection Corp.*,
673 F.3d 991 (9th Cir. 2012) ..........................................................................................16

*Dang v. Cross*,
422 F.3d 800 (9th Cir. 2005) ............................................................................................7

*Don Burton, Inc. v. Aetna Life & Cas. Co.*,
575 F.2d 702 (9th Cir. 1978) ......................................................................................7, 14

*Ecolab, Inc. v. Paraclipse, Inc.*,
285 F.3d 1362 (Fed. Cir. 2002) ........................................................................................8

*Flast v. Cohen*,
392 U.S. 83 (1968) ..........................................................................................................17

*Forshey v. Principi*,
284 F.3d 1335 (Fed. Cir. 2002) ......................................................................................17

*Galdamez v. Potter*,
415 F.3d 1015 (9th Cir. 2005) ....................................................................................7, 14

*Gross v. FBL Fin. Svcs. Inc.*,
588 F.3d 614 (8th Cir. 2009) ............................................................................................7

*G&S Holdings LLC v. Cont'l Cas. Co.,*
   697 F.3d 534 (7th Cir. 2012) ......................................................................................16

*Harper v. Va. Dep't of Taxation,*
   509 U.S. 86 (1993) ......................................................................................................17

*Holk v. Snapple Beverage Corp.,*
   575 F.3d 329 (3d Cir. 2009) ......................................................................................16

*Hunter v. County of Sacramento,*
   652 F.3d 1225 (9th Cir. 2011) ...........................................................................7, 14, 15

*Kingsley v. Hendrickson,*
   801 F.3d 828 (7th Cir. 2015) ......................................................................................6

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
   726 F.2d 1381 (9th Cir. 1984) ....................................................................................8

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................................16

*Nike, Inc. v. Wal-Mart Stores, Inc.,*
   138 F.3d 1437 (Fed. Cir. 1998) ...........................................................................2, 3, 4

*Norwood v. Vance,*
   591 F.3d 1062 (9th Cir. 2010) ..................................................................................15

*North Carolina v. Rice,*
   404 U.S. 244 (1971) ..................................................................................................17

*Preiser v. Newkirk,*
   422 U.S. 395 (1975) ..................................................................................................17

*Samsung Elecs. Co. v. Apple Inc.,*
   137 S. Ct. 429 (2016) .........................................................................................1, 6, 7

*United States v. Recio,*
   371 F.3d 1093 (9th Cir. 2004) ....................................................................................7

*Zixiang Li v. Kerry,*
   710 F.3d 995 (9th Cir. 2013) ....................................................................................16

## Statutes and Rules

Fed. R. Civ. P. 50(a) ..............................................................................................................2, 4

Fed. R. Civ. P. 50(b) ..............................................................................................................2, 4

Fed. R. Civ. P. 51 ......................................................................................................................15

Fed. R. Civ. P. 51(c)(1) ............................................................................................................15

H.R. Rep. No. 49-1966 (1886) ..................................................................................................16

## INTRODUCTION

Samsung respectfully requests that the Court vacate the $399 million design-patent judgment and order a new design-patent damages trial on all products on which the juries found design-patent liability. The Court should reject Apple's suggestion that the existing judgment can simply remain in place even though the Supreme Court has now reversed this Court's and the Federal Circuit's interpretation of Section 289 of the Patent Act. To the contrary, the Supreme Court has now held, agreeing with Samsung, that the term "article of manufacture" in Section 289 does not entitle a design-patent holder to total profit on an entire product as this Court and the Federal Circuit held, but rather "is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not." *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 435 (2016), *rev'g Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983 (Fed. Cir. 2015). The Supreme Court's new rule invalidates the legal premise on which design-patent damages were tried in the earlier trials, and eliminates any legal basis for the $399 million design-patent award amounting to Samsung's total profit on its entire phones. Because the new rule necessarily renders erroneous the Court's instructions to the juries in this case that Section 289 requires entire-product profits, the Court should grant a new trial before a properly-instructed jury.

The Court should reject Apple's last-ditch attempt to prevent such a new trial by raising new and forfeited arguments that it failed to present to this Court or the Federal Circuit. Samsung argued consistently in this Court, the Federal Circuit, and the Supreme Court that the relevant "articles of manufacture" here are less than the entire accused smartphones. Apple insisted that, to the contrary, an "article of manufacture" under Section 289 must be an entire product as sold, *as a matter of law*—maintaining that position in this Court, the Federal Circuit and its Supreme Court certiorari-stage brief as its exclusive response to Samsung's argument. Only after the Supreme Court granted certiorari and the United States filed an *amicus curiae* brief agreeing with Samsung did Apple suddenly do a startling about-face, conceding for the first time in its Supreme Court merits brief that an "article of manufacture" under Section 289 need not be coextensive with a product as sold. Having abandoned its legal argument, Apple switched strategies and raised a flurry of new objections to Samsung's entitlement to any benefit on remand from the correct

1  interpretation of Section 289.  This Court should reject Apple's new arguments as waived because

2  it failed to raise them in this Court or in the Federal Circuit appeal, and also because they are

3  baseless on their merits.  The Court should follow the normal course of proceedings when the

4  Supreme Court announces a new rule of law, and order a new trial at which the instructions

5  properly embody the Supreme Court's decision.

6  **FACTUAL & PROCEDURAL BACKGROUND**

7  **A.     The Design-Patent Proceedings In This Court**

8  Apple tried the entire design-patent portion of its case in this Court on the theory that a

9  finding of design-patent infringement entitled it under Section 289 to Samsung's total profit on the

10 accused smartphones *as a matter of law*, even if the patented designs were applied only to a

11 narrow portion of the phones.  In making this argument, Apple relied, as did this Court and later

12 the Federal Circuit in its now-reversed decision, on prior Federal Circuit law that seemed to

13 suggest as much.  *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1441-42 (Fed. Cir.

14 1998).  It was not anticipated at the time that Samsung would ultimately persuade the Supreme

15 Court that this interpretation of Section 289 is wrong.

16 There is not the slightest ambiguity in the trial record that Apple insisted it was entitled to

17 entire-product profits *as a matter of law*.  For example, Apple asserted in its interrogatory

18 responses a claim to "Samsung's total profits based on sales of each of the infringing products."

19 Dkt. 1384-27 at 4.  Apple's pretrial statement claimed its entitlement to "all of Samsung's profits

20 relating to the accused products."   Dkt. 1189 at 18.  Apple's trial brief asserted its entitlement to

21 "all profits received by the infringer for sale of the product."  Dkt. 1323 at 21.  Apple insisted in

22 objecting to Samsung's proposed jury instructions that the term "article of manufacture" in

23 Section 289 as a matter of statutory interpretation necessarily "refers to the product that is sold."

24 Dkt. 1694 at 140.  At closing argument, Apple's counsel emphasized to the jury that "***Congress***

25 awards the entire profit on a product."   Dkt. 1997 at 4124:13-15 (emphasis added).  And in

26 opposition to Samsung's JMOL motions, Apple again insisted that, "[o]n the infringer's profits,

27 the entire device is, as a legal matter, the proper base."  Dkt. 2842 at 936 (Rule 50(a) opposition in

28 partial damages retrial); *see also* Dkt. 2050 at 18-19 (opposing Rule 50(b) motion in first trial on

basis that *Nike* "permits [infringer's profits] awards if the jury finds liability and reasonable proof of defendants' profits—nothing more is required").  At no point during these proceedings did Apple assert or seek to prove that it was entitled to entire-product profits because Samsung had supposedly applied Apple's designs to Samsung's entire phones as a matter of fact.

Samsung consistently argued for the opposite interpretation of Section 289—namely, that total profit under Section 289 may be ***less than*** profit on the entire phones where the patented designs apply only to portions of the phones.  Samsung repeatedly argued in the alternative for either of two possible rules that might be used to implement this interpretation of Section 289: (1) that total profit under Section 289 should be apportioned to limit recovery to profit attributable to the patented design; or (2) that total profit under Section 289 should be limited to profit from the "articles of manufacture" to which Apple's designs had been applied—namely, in this case, to profit from components that are less than the entire phone.  While Apple sought to conflate these two proposed rules as both forbidden "apportionment" arguments,[1] there can be no doubt based on the trial record that Samsung repeatedly argued for the "article of manufacture" rule as an alternative rule distinct and separate from an "apportionment" rule:

- In its trial brief submitted before the start of trial, Samsung argued that "Apple's request for a noncompensatory windfall overlooks Section 289's requirement that profits disgorgement be limited to the 'article of manufacture' to which a patented design is applied, and is contrary to law," and urged that "removal of the need to apportion [between design and article] did not remove the need to limit an award of profits to the article bearing the design itself, and to determine what the article bearing the design actually is."  Dkt. 1322 at 19, 21; *see also id.* at 20 (arguing same and discussing the *Piano Cases—Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 903-04 (2d Cir. 1915) ("*Piano I*"), and *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79 (2d Cir. 1916) ("*Piano II*")).

- Samsung preserved its argument for an instruction embodying the "article of manufacture" rule by asking the Court to give its Proposed Instruction No. 42.1, stating that the jury "should award only those profits which were derived from the article of manufacture to which Apple's patented design was applied" and that "[t]he article of manufacture to which a design has been applied is the part or portion of the product as

---

[1]  *See, e.g.*, Dkt. 1694 at 140 (stating, in objecting to Samsung's Proposed Instruction No. 42.1, that "*Nike* explains that [the term "article of manufacture" in Section 289] refers to the product that is sold, as § 289 does not allow for apportionment") (citing *Nike*, 138 F.3d at 1442).

sold that incorporates or embodies the subject matter of the patent." Dkt. 1694 at 140 (citing *Piano I*, 222 F. at 904).

- Samsung argued in its Rule 50(a) motion at the close of Apple's case-in-chief that judgment should be granted for Samsung as to Section 289 profit because Apple had failed to "to limit the profits it's seeking to the article to which the design is applied" as Section 289's "plain language" requires, and instead had simply "assum[ed]" that the article to which the design is applied is the entire product." Dkt. 1839 at 2189-90.

- Samsung further preserved its objection to instructional error as to "article of manufacture" by objecting at the charging conference to the Court's Instruction No. 54 and arguing instead for a jury instruction that, like Samsung's Proposed Instruction No. 42.1, would have given a "definition of what the article is" that makes clear that "the profits have to be from" "the article to which the design was applied." Dkt. 1998 at 3916; *see also id.* (relying on *Piano Cases* for "article of manufacture" instruction).

- Samsung reiterated the same argument in its post-trial motions for judgment as a matter of law under Rule 50(b), again arguing that "[t]he record contains no evidence that the entire sales value of Samsung's products was attributable to their outer casings or GUI, as opposed to the numerous noninfringing technological components that enable the devices to function and drive consumer choice" (Dkt. 2013 at 19), and that "the jury's award of Samsung's profits from the phones as a whole cannot be sustained in light of Apple's failure to offer any evidence that those are the profits from the 'article of manufacture' at issue" (Dkt. 2131 at 14) (both citing *Piano I*, 222 F. at 905, and *Piano II*, 234 F. at 81-82).

- Samsung reasserted this argument in the partial damages retrial, again seeking JMOL on Apple's claim to Section 289 profit from the entire phones and explaining that "Samsung previously cited a number of cases, including the *Piano cases*, *Bush & Lane Piano v. Becker Brothers* and *Untemeyer v. Freund*, all of … [which] stand for the proposition that you cannot get infringer's profits on the entire device and you can only do it for the actually infringing feature." Dkt. 2842 at 922 (Rule 50(a) motion); *see also* Dkt. 2884-02 at 31 (Rule 50(b) motion).

In its instructions to the jury, the Court adopted Apple's and not Samsung's interpretation of Section 289. The Court instructed the jury that any award under Section 289 must be the "total profit attributable to the infringing *products*" and "not just the *portion* of profits attributable to the design or ornamental aspects covered by the design." Dkt. 1903 at 72 (Jury Instruction No. 54) (emphasis added). And in rejecting Samsung's post-trial motions after both the trial and the partial damages retrial, the court again ruled that Samsung's position was "clearly foreclosed by Federal Circuit precedent." Dkt. 2271 at 12 (citing *Nike*, 138 F.3d at 1442-43); *see also* Dkt. 2947

at 16 n.8 (same); *id.* at 12 ("Section 289 of Title 35 authorizes damages for design patent infringement of the amount of the infringer's 'total profit' for each infringing sale.").

The Court entered final judgment (Dkt. 3017), of which $399 million was for design-patent infringement (Dkt. 3264 at 1; Dkt. 2271 at 9-10; Dkt. 2947 at 12).  It is undisputed that this award represents the juries' calculations of Samsung's total profit on eleven smartphones.  Dkt. 2271 at 9-10, 24-26; Dkt. 2947 at 15-16.

### B.   The Federal Circuit's Design-Patent Holding On Appeal

The Federal Circuit affirmed the $399 million design-patent award, rejecting Samsung's argument that total profit from the "article of manufacture" to which the patented design is applied is limited to profit from "'the portion of the product as sold that incorporates or embodies the subject matter of the patent.'"  *Apple*, 786 F.3d at 1002 (quoting Samsung's proposed "article of manufacture" jury instruction, which had been quoted in Samsung's opening Federal Circuit brief, *Apple Inc. v. Samsung Elecs. Co.*, No. 14-1335, ECF 34 at 38 (Fed. Cir. May 23, 2014)).  The Federal Circuit instead upheld this Court's Instruction No. 54, interpreting the term "article of manufacture" in Section 289 to mean an entire product as sold to consumers.  *Apple*, 786 F.3d at 1002.

On remand, this Court entered a partial judgment totaling $548 million, including  $399 million in design-patent damages.  Dkt. 3290; Dkt. 3264 at 1.  Samsung paid that amount under protest.

### C.   The Supreme Court's Decision

The Supreme Court granted Samsung's petition for certiorari on the question:  "Where a design patent is applied to only a component of a product, should an award of infringer's profits be limited to those profits attributable to the component?"  Pet. for Writ of Cert. i, *Samsung Elecs. Co. v. Apple Inc.*, No. 15-777.  Samsung pressed the very same "article of manufacture" argument it had previously made to this Court and the Federal Circuit.  *Id.* at 26-35.  In its brief in opposition, Apple argued that interpreting the statutory term "article of manufacture" to mean "the specific 'portion of a product to which the patented design is applied'" would "contradict[] [the] clear statutory language about 'total profit.'"  Brief in Opposition 29, *Samsung Elecs. Co. v. Apple*

*Inc.*, No. 15-777 (emphasis removed).  But after the Supreme Court granted certiorari and the United States filed a brief (as *amicus curiae*) agreeing with Samsung, Apple conceded for the first time in its merits brief that "the infringing article of manufacture for which total profits may be awarded could be something less than an entire product as sold."  Br. for Respondent 35, *Samsung Elecs. Co. v. Apple Inc.*, No. 15-777 (emphasis and internal quotation marks omitted).  Apple now tried to pin waiver arguments on Samsung that it had never raised in this Court or the Federal Circuit—such as suggesting that Samsung supposedly had not adduced enough evidentiary support for its proposed Instruction No. 42.1.  *Id.* at 41-49.

Reversing the Federal Circuit, the Supreme Court held that "the term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not."  *Samsung*, 137 S. Ct. at 436.  The Court also held that "two steps" must be addressed before "[a]rriving at a damages award under § 289":  a court must (1) "identify the 'article of manufacture' to which the infringed design has been applied"; and (2) "calculate the infringer's total profit made on that article of manufacture."  *Id.* at 434.

### D.     The Federal Circuit's Remand Decision

On remand from the Supreme Court, the Federal Circuit rejected Apple's request to reaffirm the $399 million design-patent award and remanded to this Court, stating that "the parties dispute what jury instructions the current trial record supports" and directing this Court (1) to "consider the parties' arguments in light of the trial record and determine what additional proceedings, if any, are needed," and, if additional proceedings are needed, (2) "to set forth a test for identifying the relevant article of manufacture for purposes of § 289, and to apply that test to this case."  *Apple Inc. v. Samsung Elecs. Co.*, ___ F. App'x ___, 2017 WL 490419, *2 (Fed. Cir. Feb. 7, 2017).  This Court has directed briefing on the first issue.  Dkt. 3487.

## ARGUMENT

### I.     SAMSUNG IS ENTITLED TO A NEW TRIAL ON DESIGN-PATENT DAMAGES BEFORE A PROPERLY-INSTRUCTED JURY

In a typical case after a party prevails in the Supreme Court on a legal argument underlying an asserted instructional error, a new trial is held before a properly-instructed jury.  *See, e.g.*,

*Kingsley v. Hendrickson*, 801 F.3d 828, 831, 833 (7th Cir. 2015) (ordering new trial on remand from Supreme Court where Supreme Court resolved circuit split, rendering district court's jury instruction erroneous); *Gross v. FBL Fin. Svcs. Inc.*, 588 F.3d 614, 617 (8th Cir. 2009) (ordering new trial on remand from Supreme Court where district court's jury instructions were inconsistent with new rule announced by Supreme Court); *United States v. Recio*, 371 F.3d 1093, 1100-03 (9th Cir. 2004) (ordering new trial on remand from Supreme Court where Supreme Court's decision rendered jury instruction improper).  Here, Samsung prevailed in the Supreme Court, convincing the Court to hold, contrary to this Court's Instruction No. 54, that Section 289 does not require an award of total profit from an entire product as sold.  *See Samsung*, 137 S. Ct. at 435.

Apple nevertheless persists in arguing that Samsung, the very party that persuaded the Supreme Court to adopt the new "article of manufacture" rule, is unable to benefit from that rule. That argument is baseless.  Samsung fully preserved its objection to Instruction No. 54 and its argument that the Court instead should have given Samsung's Proposed Instruction 42.1, which correctly stated the rule of law the Supreme Court has now adopted.  *See supra*, at 4.  Moreover, the trial record provides an overwhelming evidentiary basis from which a reasonable jury could have determined that portions of the phones and not the phones themselves were the relevant articles of manufacture, if Instruction No. 42.1 had been given.

This is more than sufficient under governing Ninth Circuit law.  A party is "entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence."  *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) (internal quotation marks omitted).  This evidentiary standard is *not* a high bar:  A legal theory has a "foundation in evidence" where there is "***any*** direct or circumstantial evidence to support it," *Don Burton, Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702, 706 (9th Cir. 1978) (emphasis added), such that "a reasonable jury could have found" consistent with the proposed instruction, *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).[2]

---

[2]  *See also Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005) ("[F]ailure to give an instruction on a party's theory of the case is reversible error if the theory is legally sound and *evidence in the* (footnote continued)

A.    **The Trial Record Amply Supports An Instruction That The "Article Of Manufacture" Is "The Part Or Portion Of The Product As Sold That Incorporates Or Embodies The Subject Matter Of The Patent"**

The undisputed trial record far surpasses the low bar of "any evidence" required to support Samsung's Proposed Instruction No. 42.1.  Had that instruction been given, Samsung could have argued to the jury that total profit should be derived from "the part or portion of the product as sold that incorporates or embodies the subject matter of the patent."  *See* Dkt. 1694 at 140.  Specifically, the undisputed evidence supports the conclusion that the articles of manufacture here were not the entire phones and instead were no more than a phone's front face (D'677), a phone's front face with a bezel (D'087), and a single array of GUI icons on a display screen (D'305).  That evidence includes the patents themselves, the admissions of Apple's own witnesses, undisputed evidence that Samsung's phones comprise multiple separable components, and consumer surveys and product reviews.

1.    **Apple's Design Patents**

Apple's design patents were in evidence, and each of them expressly depicts a claimed design that applies only to discrete portions of a device, and not to any entire device.

The D'677 patent claims a design for a black, rectangular front glass face with rounded corners and specifically disclaims the surrounding rim or "bezel," the circular home button on the front, and the sides, top, bottom and back of the device (*i.e.*, the rest of the phone).

---

*case* makes it applicable.") (emphasis added; internal quotation marks omitted); *Galdamez*, 415 F.3d at 1025 (proposed instruction on legally-correct theory should have been given where evidence presents "issues of fact that could be resolved either way"); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984) ("A party is entitled to have theories *supported by the evidence* presented to the jury.") (emphasis added); *Blassingill v. Waterman S.S. Corp.*, 336 F.2d 367, 368 (9th Cir. 1964) ("[A] party is entitled to have [its] theory of the case presented to the jury by proper instructions, if there be *any* evidence to support it.") (emphasis added); *cf. Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016) (error is harmless only if it "'could not have changed the result,' *i.e.*, if 'the same verdict would necessarily be reached absent the error'") (quoting *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1374 (Fed. Cir. 2002)).



JX1043.5

The D'087 patent, like the D'677 patent, claims a design for a rectangular front face with rounded corners, minus the black shading and with the addition of a bezel; the patent specifically disclaims the sides, back, top, and bottom of the device (*i.e.*, the rest of the phone), as well as features on the front, such as the circular home button.



JX1041.7.

The D'305 patent claims a design for a specific grid of sixteen colorful icons that may appear on one of many different graphical user interface screens a phone may display; the patent specifically disclaims every attribute of a smartphone except that specific display.



JX1042.6.

### 2.    Apple Witnesses' Admissions

Apple's own witness testimony overwhelmingly supports the same conclusion:  that the designs were applied to narrow and discrete portions of the smartphones, not to the entire phones.

Apple's expert Peter Bressler admitted that the D'677 patent claimed only a design for "the front face of an electronic device that is black in color," with the dotted lines excluding what is "not being claimed in this patent" because "the only thing being claimed is the area in the solid lines." Dkt. 1611 at 1014-15; *id.* at 1015 ("all it's claiming is that front face.")

Bressler similarly admitted that the D'087 patent claimed only a design for the "flat front face and the bezel" of a phone:  "As you can see by the broken lines, again, it's not claiming the body.  It's claiming the bezel and the front face." Dkt. 1611 at 1018-19.

And Apple's expert Susan Kare testified that the D'305 patent was limited to a design for "the rectangular area that's within the dotted line that goes around the outside."  Dkt. 1612 at 1367.

Apple's experts, in their infringement analysis, described the corresponding infringing features of Samsung's accused products in similarly narrow and discrete terms:

As to the D'677 patent, Apple's expert Bressler testified that Samsung's phones infringed because they "ha[d] a flat, uninterrupted surface that is rectangular in proportions described in the '677 patent; it runs edge to edge across the front of the phone and is transparent and is black; and it has a display that is centered on the face of the phone and a lozenge shaped speaker slot, and I find those features to be substantially the same." Dkt. 1611 at 1050.  Bressler further testified that he ignored all other portions of Samsung's phones because they were not claimed by the patent. For example, Bressler considered only the "front of the" Galaxy S 4G but "did not consider" aspects like the back of the Samsung phone, because they were "not part of the claimed design." Dkt. 1611 at 1050-51; *see id.* at 1051 ("I looked at it but did not consider it as part of my analysis … [b]ecause it is the back of the phone and this patent is specifically for the face of the phone."). Bressler also testified that the (dissimilar) design of the home button on the parties' devices "doesn't matter" because the home button is not part of Apple's claimed design.  *Id.* at 1016.

Bressler's testimony with respect to the D'087 patent was similar.  As to that patent, Bressler examined only the front face and bezel of Samsung's accused products in considering substantial similarity.  Dkt. 1611 at 1058.  As with the D'677 patent, dissimilar portions of the accused phones did not matter to Bressler because, "as you can see by the broken lines," the D'087 patent was "not claiming the body" but only "the bezel and front face." *Id.* at 1019.

Apple's expert Kare likewise testified that she considered only particular screens within the GUI of the accused Samsung devices when assessing infringement of the D'305 patent, and disregarded all other screens and all other smartphone components.  Specifically, Kare's infringement comparisons were limited to the "Samsung applications screen[s]" and not the "start-up screen," "unlock screen," or "home screen of the Samsung phone[s]."  Dkt. 1612 at 1421-24. In fact, Apple had "asked that body style not be included" in trial exhibits for the D'305 patent, and the Court excluded exhibits depicting the "overall phone" in the context of D'305 patent infringement comparisons, allowing only "screen-to-screen shots."  *Id.* at 1372-73.

### 3.      Undisputed Evidence Of Physically Separable Components

The trial record also contains extensive evidence, including testimony from Samsung and Apple witnesses, showing the physical breakdown of the accused products into their component parts.  For example, during the testimony of Apple executive Scott Forstall, the jury saw an internal Apple teardown of the Samsung Vibrant, which showed the phone being systematically taken apart, with slides for each step displaying the phone's loudspeaker, SIM card slot, camera, motherboard, and other components in isolation and describing them as separate "sub-modules." DX2519.005-.011.  Another slide, entitled "Phone Features," showed separate physical features such as the light sensor, the power/wake/sleep button, the camera, and capacitive touch buttons. DX2519.004.  In contrast to the specific application screen depicted in the D'305 patent, the teardown also showed other unaccused interface screens on Samsung's phones, including the lock screen, home screen, social hub, and keyboard.  *Id.*; DX2519.012.

Multiple witnesses, moreover, testified that the accused phones consisted of numerous separate components that were often manufactured separately.  Samsung Chief Strategy Officer Justin Denison gave uncontradicted testimony that the display, speakers, microphones, and input

keys were some of the "main components in a phone." Dkt. 1610 at 868-872.  He described how the display screen is separate from "the bezel, if there's a bezel, or the frame if there's a unibody frame," and how the front glass face is yet another component separate from those. *Id.* at 871-72; *see id.* at 872 ("[T]here's a piece of glass and then underneath that is a display and you have to glue that on top.").  Samsung expert witness Itay Sherman similarly testified, without rebuttal, that the overall shape of mobile devices is predominately rectangular because their internal display elements are separately manufactured that way:  "[I]n terms of what's available and what's easy to manufacture in terms of cost … [the] overwhelming majority of the displays are rectangular and any other shape would be more expensive, completely rare."  Dkt. 1840 at 2603-04.  He further testified that "there are a lot of components that reside below the surface" of the phone's glass face and that a black mask is used "to hide them." *Id.* at 2610-11.  Samsung's expert Michael Wagner testified about the division within Samsung, System LSI, that makes "components for smartphones," and noted that "they're the part of Samsung that supplies components to Apple" as well. Dkt. 2842 at 1041-42.  Wagner also testified as to the design-around process and the ease by which the Samsung application screen, as well as other software features, could be separately "redesign[ed]" and applied to the device via a "software update" without having to "take the phone and take it apart and look at the innards." Dkt. 2842 at 996, 1030.

Apple's witnesses themselves admitted that a smartphone has numerous separable components.  Apple's Vice President of Procurement Tony Blevins, who was responsible for "acquiring necessary components" for Apple's iPhones, showed the jury a disassembled iPhone 4's internal motherboard or "major logic board" and pointed out the baseband processor on it, which was supplied by a third party.  Dkt. 1842 at 3165-68.  Apple's attorney even had the jury pass around the major logic board. *Id.* at 3168.  Blevins further explained that there are "900 to 1,000 parts total" in the iPhone, with "around 850 to 900 parts on the major logic board, and then there's an additional 100 parts that are required for assembly."  Dkt. 1842 at 3168.  Apple designer Chris Stringer testified about the "many" manufacturing challenges Apple faced in working with separate components of its products, including "producing the glass," "putting the glass in close proximity to hardened steel," and separately "machining" a "high grade of steel" for bezels at

1   volumes that were "unprecedented at that time."  Dkt. 1547 at 494-95.  Stringer further testified

2   that the exterior of the iPhone was designed independently of any "requirements from the

3   components or the internal elements of the phone."  *Id.* at 496.  Apple's damages expert Terry

4   Musika also testified about the division within Samsung that manufactured "components" such as

5   "processors," "memory chips," "touchscreen[s]," and "flash memory" for various phone

6   manufacturers, including Samsung itself and Apple.  Dkt. 1839 at 2148-53.  Apple witness Paul

7   Dourish, a computer science professor who was offered as an expert in the field of interface

8   technology, testified that the phones could "download and install software programs that can

9   extend the functionality of the device by letting it do things that it hadn't necessarily been

10   designed into it or conceived of when it was designed" (Dkt. 1842 at 3195-96), further showing

11   that accused software interface elements (such as the D'305 application screen) were separable

12   from other interface elements of the phone.

### 4.      Consumer Survey And Product Review Evidence

14          The record also contains extensive undisputed evidence that consumers and reviewers treat

15   smartphones as multi-component devices.  For the D'677 and D'087 patents, Apple's own exhibit

16   of media commentary showed that non-accused external features were conceptually distinct

17   components from those accused of embodying the claimed designs, stating that the Galaxy S

18   possessed an "all black, shiny plastic body" as well as "minimal buttons on the phone's face"

19   (PX6.1), and that the Vibrant had a "candybar shape" and a "glossy, black finish" on the back, in

20   addition to "rounded curves at the corners" and a "metallic border around the display" (*id.*).  Other

21   reviews described the Vibrant's "plastic shell" and separate software "app menu" consisting of

22   icons "arrayed across a series of swipable horizontal screens."  PX6.2.

23          For the D'305 patent, the record contains extensive evidence regarding the numerous

24   applications and GUI screens that are displayed on the phones apart from the specific array of

25   icons depicted in the D'305 patent—including the unaccused Samsung home screen and the web

26   browser, contacts program, and picture gallery.  For example, Apple's expert Dr. Ravin

27   Balakrishnan, in testifying about infringement of Apple's utility patents, referenced the "gallery

28   application," which was separate from the "browser application" and the "contacts list

1    application." Dkt. 1695 at 1741-49.  And Apple's expert Dr. Karan Singh separately testified as to

2    infringement by the "browser application," and stated he "didn't need to" consider other

3    applications such as the gallery, email, and music applications—let alone Samsung's entire

4    phones. *Id.* at 1904.

### B.    A New Trial On Design-Patent Damages Is Required In Light Of The Record

6         The above evidence makes clear that Samsung's Proposed Instruction No. 42.1 was

7    supported by the trial record, and refutes Apple's suggestion that Samsung somehow waived its

8    entitlement to that instruction.

9         *First*, the foregoing evidence, all undisputed, was more than sufficient for a reasonable,

10   properly-instructed jury to conclude that the articles of manufacture to which Apple's patented

11   designs were applied were components of the smartphones and *not* the entire smartphones.

12   Indeed, the evidence far surpasses the "any evidence" standard set by Ninth Circuit law.  *See, e.g.*,

13   *Don Burton*, 575 F.2d at 706; *Blassingill*, 336 F.2d at 368; *see also, e.g.*, *Hunter*, 652 F.3d at

14   1232; *Galdamez*, 415 F.3d at 1023.  The patent figures alone conclusively show that Apple's

15   designs are applied only to narrow, discrete portions of an entire phone, and not the entire phone.

16   Moreover, testimony from Apple's own expert witnesses confirmed the same conclusion:  namely,

17   that each patent is applied only to a discrete portion of a smartphone's outer appearance or a single

18   display screen, and that only discrete, corresponding portions of Samsung's accused phones were

19   relevant to infringement.  If any more evidence were needed, other undisputed testimony and

20   exhibits, including teardowns, showed that Samsung's accused phones are separable into their

21   various components.  Media articles and reviews confirmed that unaccused components are

22   physically and conceptually distinct from the components that did embody the claimed designs.

23   And the actual devices were in evidence, so the jury could confirm through their own physical

24   examination that the devices contained distinct external and graphical components.  Samsung was

25   thus entitled to its Proposed Instruction No. 42.1, which would have defined "article of

26   manufacture" as the "the part or portion of the product as sold that incorporates or embodies the

27   subject matter of the patent."

28

1    *Second*, any suggestion that Samsung did not argue to the jury about "articles of

2    manufacture" less than the entire phones would be misplaced.  By the time of closing arguments,

3    the Court had already rejected Samsung's Proposed Instruction No. 42.1 and instead instructed the

4    jury (Instruction No. 54, Dkt. 1903 at 72) that Section 289 awards an infringer's total profit on its

5    entire products.  Any attorney argument to the contrary would have been impermissible under the

6    Court's instructions as given.   Ninth Circuit authority provides that a party preserves legal

7    objections to jury instructions by objecting to those instructions (as Samsung did here, *see* Dkt.

8    1998 at 3916) and offering contrary proposed instructions (as Samsung did here, *see* Dkt. 1694 at

9    140).[3]  No authority requires that the party then defy the Court by pressing arguments to the jury

10   contrary to the Court's instructions in order to preserve an objection to omission of a proposed

11   instruction.

12       *Third*, any suggestion that Samsung did not put in evidence a specific quantum of total

13   profit from the relevant component-level articles of manufacture would be irrelevant.  This issue is

14   outside the Federal Circuit's mandate.  *See, e.g.*, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,

15   576 F.3d 1348, 1356 (Fed. Cir. 2009) (reversing where on remand district court considered issue

16   not set forth in mandate on prior appeal).   In directing this Court to "consider the parties'

17   arguments in light of the trial record," *Apple*, 2017 WL 490419, at *2, the Federal Circuit

18   identified only one argument that Apple made on that question:  namely, Apple's argument that

19   "the record permits only the conclusion that the relevant articles of manufacture must be

20   Samsung's infringing phones."  *Id.* at *1.  This argument goes to what the relevant article of

21   manufacture is (the first step of the Supreme Court's new test), not what the quantum of damages

22   from that article might be (the second step of that test).  Moreover, the fault for any deficiency in

23   _____

24   [3]   As the Ninth Circuit explained in *Hunter*, 652 F.3d at 1230:  "Under Federal Rule of Civil
      Procedure 51, '[a] party who objects to an instruction or the failure to give an instruction must do

25   so on the record, stating distinctly the matter objected to and the grounds for the objection.'  Fed.
      R. Civ. P. 51(c)(1).  An objection to a jury instruction 'need not be formal,' and a party may

26   properly object by submitting a proposed instruction that is supported by relevant authority, so
      long as the 'proffered language [is] sufficiently specific to bring into focus the precise nature of

27   the alleged error.'  *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010)."  (additional internal
      quotation marks omitted).

28

1   the proof of total profit would rest with Apple, which now concedes that **it,** as the plaintiff, bore

2   the burden of proving damages.  *See* Dkt. 3486 at 7 ("the issue of damages is one on which Apple

3   carries the burden.");  *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir.

4   2009) ("The burden of proving damages falls on the patentee.");  H.R. REP. NO. 49-1966, at 3

5   (1886) (legislative history of Section 289 confirming that a patentee can "recover[] the profit

6   actually made on the infringing article *if he can prove that profit*") (emphasis added).

7           **Fourth**, in any event, Apple long ago forfeited its evidentiary objection to Samsung's

8   proposed instruction and should not be permitted to raise it now.[4]  Apple never raised this

9   argument in objecting to Samsung's proposed instruction in this Court, in opposing Samsung's

10  appeal in the Federal Circuit, or even in opposing Samsung's petition for certiorari.  Rather, until

11  its merits brief in the Supreme Court, Apple's **only** response to Samsung's repeated attempts to

12  limit recoverable profits to those attributable to the portions of its phones to which Apple's

13  designs were applied was that, under Federal Circuit precedent, the term "article of manufacture"

14  supposedly "refers to the product that is sold," **as a matter of law**.  *See supra*, at 2-3, 6.  Apple's

15  new evidentiary objection comes far too late.

16                                              ***

17          Apple has pointed to no case in which a party that prevailed in the Supreme Court was held

18  on remand not to have preserved the legal issue on which the Supreme Court ruled.  And for good

19  reason:  such a ruling would render the Supreme Court's decision entirely **advisory**, for it would

20

21

22  _____

23  [4]   *See, e.g.*, *Zixiang Li v. Kerry*, 710 F.3d 995, 1000 n.4 (9th Cir. 2013) ("'[A] party waives an
    argument by failing to make it before the district court ....'") (quoting *G&S Holdings LLC v.*

24  *Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) (alteration and omission in original)); *Cruz v.*

25  *Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (rejecting defense not raised before trial
    court and stating general rule that "[t]o have been properly raised below, the argument must be

26  raised sufficiently for the trial court to rule on it") (internal quotation marks omitted); *cf. Holk v.*
    *Snapple Beverage Corp.*, 575 F.3d 329, 335 (3d Cir. 2009) (stating rule permitting affirmance on

27  alternate grounds "does not apply to cases in which the party has waived the issue in the district

28  court").

1    have no effect on the parties that were before the Court.[5]  Such a ruling would, moreover, mean

2    that the prevailing litigant in the Supreme Court would be the ***only*** party in pending litigation that

3    could not benefit from the Supreme Court's decision, for it is absolutely clear that the Supreme

4    Court's new rule applies to all pending cases—even where a party failed to preserve the argument

5    prior to the Supreme Court's decision.[6]  The Supreme Court's reversal must be given effect here.

6                                                    **CONCLUSION**

7            For the foregoing reasons, Samsung respectfully requests that the Court vacate the $399

8    million design-patent judgment and order a new trial on design-patent damages.

9            As Samsung explained in its portion of the CMC Statement (Dkt. 3486 at 15-17), before

10   any new damages trial, the Court should receive additional briefing and argument to determine, as

11   a matter of law based on undisputed facts, (a) the proper legal test for determining an article of

12   manufacture under Section 289, and (b) what the relevant articles of manufacture are in this case.

13   That briefing and argument may be made on the existing, undisputed record without the need for

14   further evidence.

15           After resolving these issues, the sole issue for the jury at the new damages trial would be

16   the quantum of Samsung's profits from the articles of manufacture that the Court identified.  As to

17

18

19

20   [5]    *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The exercise of judicial power under
     Art. III of the Constitution depends on the existence of a case or controversy. … [A] federal court
21   has neither the power to render advisory opinions nor 'to decide questions that cannot affect the
     rights of litigants in the case before them.'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246
22   (1971)); *Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("[N]o justiciable controversy is presented …
     when the parties are asking for an advisory opinion ….").

23   [6]    *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) (Supreme Court decision "is the
     controlling interpretation of federal law and must be given full retroactive effect in all cases still
24   open on direct review and as to all events, regardless of whether such events predate or postdate
     [the Supreme Court's] announcement of the rule."); *Big Horn County Elec. Coop., Inc. v. Adams*,
25   219 F.3d 944, 953 (9th Cir. 2000) (recognizing "an exception to the waiver rule … for intervening
     changes in the law"); *Forshey v. Principi*, 284 F.3d 1335, 1356 (Fed. Cir. 2002) ("[D]ecision of an
26   issue not decided or raised below is permitted when there is a change in the jurisprudence of the
     reviewing court or the Supreme Court after consideration of the case by the lower court."),
27   *superseded by statute on other grounds*.

28

that issue, the Court may find a limited reopening of discovery appropriate in light of the Supreme Court's decision.

DATED:        April 21, 2017             QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP


                                    By   /s/ Victoria F. Maroulis
                                         John B. Quinn
                                         Kathleen M. Sullivan
                                         William C. Price
                                         Michael T. Zeller
                                         Kevin P.B. Johnson
                                         Victoria F. Maroulis

                                         Attorneys for SAMSUNG ELECTRONICS CO.,
                                         LTD., SAMSUNG ELECTRONICS AMERICA,
                                         INC., and SAMSUNG
                                         TELECOMMUNICATIONS AMERICA, LLC