QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and Samsung
Telecommunications America, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | **SAMSUNG'S OPENING BRIEF PURSUANT TO ORDER OF JULY 28, 2017 REGARDING NECESSITY OF NEW TRIAL ON DESIGN-PATENT DAMAGES** |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | **Hearing:** |
| | Date:  October 12, 2017 |
| | Time: 1:30 p.m. |
| Defendants. | Place: Courtroom 8, 4th Floor |
| | Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

RESPONSES TO THE SEVEN ISSUES THAT THE COURT IDENTIFIED ................................. 3

1. What is the test for identifying the article of manufacture for purposes of § 289? ............................................................................................................... 3

2. Is the identification of an article of manufacture a factual question, a legal question, or a mixed question of law and fact? What issues should be decided by a jury? What issues should be decided by the Court? ................................ 7

3. Who bears the burden of proof to identify the relevant article of manufacture for purposes of § 289? ................................................................. 8

4. Who bears the burden of proof to demonstrate total profits on an article of manufacture for purposes of § 289? .................................................................. 11

5. Identify the relevant article of manufacture for the D'677 patent, D'087 patent, and D'305 patent. ............................................................................... 12

6. Identify evidence in the record supporting each party's asserted article of manufacture for the D'677 patent, D'087 patent, and D'305 patent. ..................... 12

   a. The Scope Of The Design Patents ................................................................. 12

   b. The Accused Products And Scope Of Alleged Infringement ....................... 15

7. Identify evidence in the record supporting the total profit for each party's asserted article of manufacture for the D'677 patent, D'087 patent, and D'305 patent. .................................................................................................... 22

CONCLUSION ...................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbott Labs. v. Syntron Bioresearch Inc.*,
    2001 WL 34082555 (S.D. Cal. Aug. 24, 2001) .................................................. 16

*Alaska Dep't of Envtl. Conserv. v. EPA*,
    540 U.S. 461 (2004) ........................................................................................... 11

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012) ..................................................................... 4, 16

*Astrue v. Ratliff*,
    560 U.S. 586 (2010) ........................................................................................... 10

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) ............................................................................................. 3

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1988) ........................................................................................... 24

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) ........................................................................... 22

*Cornell Univ. v. Hewlett–Packard Co.*,
    609 F. Supp. 2d 279 (N.D.N.Y. 2009) .............................................................. 11

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ............................................................................. 22

*Don Burton, Inc. v. Aetna Life & Cas. Co.*,
    575 F.2d 702 (9th Cir. 1978) ............................................................................. 20

*Door-Master Corp. v. Yorktowne, Inc.*,
    256 F.3d 1308 (Fed. Cir. 2001) ................................................................... 4, 5, 8

*Dow Chem. Co. v. Mee Indus., Inc.*,
    341 F.3d 1370 (Fed. Cir. 2003) ......................................................................... 10

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
    2013 WL 4538210 (N.D. Cal. Aug. 22, 2013) .................................................. 10

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ............................................................................. 7

*Facebook, Inc. v. Power Ventures, Inc.*,
    2017 WL 1650608 (N.D. Cal. May 2, 2017) .................................................... 22

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ......................................................................... 23

*Gantt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013) ............................................................................. 22

*Golden Bridge Tech. v. Apple Inc.*,
  2014 WL 2194501 (N.D. Cal. May 18, 2014) ................................................................. 10

*Gorham v. White*,
  81 U.S. 511 (1871) ...................................................................................................... 3

*In re Hruby*,
  373 F.2d 997 (C.C.P.A. 1967) ..................................................................................... 21

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) ..................................................................................... 7

*IP Innovation L.L.C. v. Red Hat, Inc.*,
  705 F. Supp. 2d 687 (E.D. Tex. 2010) ......................................................................... 10

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ..................................................................................... 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ............................................................................... 8, 11

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ................................................................................... 16

*Miles v. Apex Marine Corp.*,
  498 U.S. 19 (1990) ...................................................................................................... 10

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopedics, Inc.*,
  976 F.2d 1559 (Fed. Cir. 1992) ..................................................................................... 5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ..................................................................................... 7

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ..................................................................................... 5

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
  739 F.3d 694 (Fed Cir. 2014) ...................................................................................... 14

*Pearson v. Duane*,
  71 U.S. (4 Wall.) 605 (1866) ........................................................................................ 7

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ........................................................................................ 9

*Samsung Elecs. Co. v. Apple Inc.*,
  137 S. Ct. 429 (2016) ........................................... 3, 4, 5, 6, 7, 8, 9, 11, 13, 14, 15, 16, 21

*Schaffer v. Weast*,
  546 U.S. 49, 57 (2005) ........................................................................................... 8, 11

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991) ........................................................................... 7, 8, 11

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003) ................................................................................. 24

*In re Stevens*,
    173 F.2d 1015 (C.C.P.A. 1949) ............................................................................. 3, 8

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ................................................................................. 10

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    290 F.3d 1364 (Fed. Cir. 2002) ............................................................................... 11

*United States v. Dreyer*,
    804 F.3d 1266 (9th Cir. 2015) ................................................................................. 22

*Voda v. Cordis Corp.*,
    536 F.3d 1311 (Fed. Cir. 2008) ............................................................................... 22

*In re Zahn*,
    617 F.2d 261 (C.C.P.A. 1980) ............................................................................... 4, 8

<u>Statutory Authorities</u>

15 U.S.C. § 1117(a) ..................................................................................................... 9

17 U.S.C. § 504 ........................................................................................................... 9

35 U.S.C. § 171(a) ................................................................................................. 3, 15

35 U.S.C. § 289 ......................................................................................................... 10

<u>Treatises</u>

1 McCormick On Evidence § 54 (7th ed. 2016) ........................................................ 16

2 McCormick On Evidence § 337 (7th ed. 2016) ...................................................... 11

<u>Legislative Materials</u>

H.R. Rep. No. 49-1966 (1886) ............................................................................... 9, 11

<u>Additional Authorities</u>

88 C.J.S. Trial § 188 .................................................................................................. 16

# INTRODUCTION

Samsung respectfully submits this memorandum of law in response to the Court's July 28, 2017 Order (the "Order," Dkt. 3509).  In the Order, the Court ruled that Samsung preserved its argument that an article of manufacture under Section 289 can be less than an entire product as sold (*id.* at 13-27, 32) and that the juries that awarded Apple $399 million in design-patent damages were "not provided an instruction that stated the law as provided by the United States Supreme Court decision" (*id.* at 22).  The Court, however, deferred consideration of whether Samsung is entitled to a new trial to determine design-patent damages in light of the Supreme Court's decision.  *Id.* at 32.

The answer to that question is "Yes":  The Court should vacate the $399 million design-patent award and grant a new trial.  In no event can the Court forego a new trial and allow the existing $399 million award to stand, because the evidence does not "establish as a matter of law that the entirety of Samsung's phones are the relevant article of manufacture." Dkt. 3509 at 29.  The only way the Court could forego a new trial is by ruling that Apple is entitled to ***no*** infringer's profits because it was Apple's burden to prove total profit from the relevant articles of manufacture, Apple failed to prove any article of manufacture less than the entire phones, and the entire phones cannot be the article of manufacture on the record here in light of the Supreme Court's decision.

If the Court does not so rule, then there must be a new trial, and the only remaining issue is what it should decide.  Samsung believes that the identity of the relevant articles of manufacture here is clear based on the undisputed evidence, including Apple's own admissions.  Samsung thus urges the Court to issue an order identifying the articles of manufacture as a matter of law and grant a new jury trial limited to the quantum of profit from those articles.  The proper answers to the seven questions the Court identified clearly support this approach.  And this approach would greatly streamline the case.  If the Court does not take this approach, then at a minimum it should grant a new jury trial on both the relevant articles of manufacture and the quantum of profit.

As the detailed answers below to the Court's seven questions explain, the relevant article of manufacture under Section 289 is the specific part, portion, or component of a product to which the patented design is applied.  That article is determined by comparing the scope of the design patent claim to the accused product.  While identifying the article of manufacture to which a patented

1 design is applied is ultimately a question of fact for the jury, that determination must be guided by

2 the scope of the design patent's claim, which is a question of law for the court.

3      Where, as here, design patents clearly delimit the claimed designs' scope, and there are no

4 disputes of material fact as to the components to which the patented designs are applied, the court

5 should identify the relevant article(s) of manufacture itself as a matter of law and limit the jury's

6 determination to the quantum of profit.  Here, the scope of Apple's claimed designs is both clear

7 and narrow.  Moreover, there is voluminous undisputed evidence, including Apple's own

8 admissions, that makes clear to what components of the phones those designs were applied.  The

9 Court therefore should rule as a matter of law pre-trial that the relevant articles of manufacture in

10 this case are:

11      • the phone's round-cornered, glass front face (D'677);

12      • the phone's round-cornered glass front face plus surrounding rim or bezel (D'087); and

13      • the phone's display screen while displaying the single claimed array of GUI icons

14         (D'305).

15 At a minimum, the Court should rule as a matter of law pre-trial that the relevant articles of

16 manufacture are *not* the entire phones as sold.  Apple's patented designs cover only discrete portions

17 of a smartphone's exterior.  As a matter of law, those designs were not and could not have been

18 applied to Samsung's entire phones, which indisputably include many components, both internal

19 and external, that do not correspond to the claimed attributes of Apple's designs.

20      Identifying the articles of manufacture now (or at least resolving that they are not and cannot

21 be Samsung's entire phones) would yield substantial efficiencies for the remaining proceedings in

22 this case.  It would greatly streamline fact and expert discovery, eliminate the need for dispositive

23 motions on the identity of the articles of manufacture, and leave fewer issues to be resolved by the

24 jury at trial.

25      Accordingly, the Court should vacate the $399 million design-patent award, determine the

26 identity of the relevant articles of manufacture based on the scope of the patents and the undisputed

27 record, and grant a new trial limited to the quantum (if any) of design-patent damages.

28

# ARGUMENT

## RESPONSES TO THE SEVEN ISSUES THAT THE COURT IDENTIFIED

Samsung addresses in turn the seven issues that the Court identified in the Order (at 32-33):

**1.     What is the test for identifying the article of manufacture for purposes of § 289?**

**Answer:**  The relevant article of manufacture is the specific part, portion, or component of a product to which the patented design is applied.  The article is identified by comparing the claimed attributes of the design patent to the accused product to identify the specific part, portion, or component of the product that corresponds to the patent's claim.  The relevant article of manufacture does not include any part, portion, or component of a product that is disclaimed by the patent or that does not correspond to the claimed attributes of the patented design, including any part, portion, or component of a product that is not considered when determining infringement.

**Analysis:**  To "identify the 'article of manufacture' to which the infringed design has been applied," as the Supreme Court has directed, *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016), requires examination of (1) the patent, which defines and limits the scope of the patented design, and (2) the accused product, to determine the part, portion, or component of the product that corresponds to the scope of the patented design.

**(1) The Patent:**  The scope of a design patent, as depicted in the patent illustration and construed by a court, will principally determine the identity of the article of manufacture.  The illustrations of a design patent dictate the scope of its claim and thus establish whether the design extends to an entire product or a product component.  A design patent claim may extend only to the "ornamental" appearance of an "article of manufacture," 35 U.S.C. § 171(a), meaning aspects contributing to "an aesthetically pleasing appearance."  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989); *see also Gorham v. White*, 81 U.S. 511, 524-25 (1871).  It may not extend to features "concealed or obscure[d] in normal use."  *In re Stevens*, 173 F.2d 1015, 1016 (C.C.P.A. 1949); *see Samsung*, 137 S. Ct. at 435 (noting that Section 289 must be read to be "consistent" with Section 171(a)).

In modern practice, design patents commonly issue on partial claims to discrete portions of a product's design, and expressly disclaim the remainder of the product, including by the use of broken lines in the patent figure. *See, e.g.*, *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001); *In re Zahn*, 617 F.2d 261, 263 (C.C.P.A. 1980).  For example, some design patents claim only the design for the heel of a shoe (D677,041), the waistband on a pair of shorts (D652,199), the bed of an asphalt paver (D652,432), or buttons on a video game controller (D667,892).  Such a partial claim is an admission by the patentee that the patented design covers less than the entire product. *See, e.g.*, *Apple Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1317 (Fed. Cir. 2012); *Door-Master*, 256 F.3d at 1313.  Indeed, those seeking design patents often engage in the "standard and well-accepted patent gamesmanship" of filing **multiple** partial design-patent claims for discrete portions of the **same product** so as to maximize their possible infringement claims against competitors.  Perry J. Saidman, *The Crisis in the Law of Designs*, 89 J. Pat. & Trademark Off. Soc'y 301, 319-22 (2007).

**(2) The Product.**  Once the scope of the patent claim is determined, the relevant article of manufacture is further identified by comparing the patent claim to the part, portion, or component of the accused product that corresponds to the scope of the patented design.  If a patented design is applied to "a single-component product, such as a dinner plate," *Samsung*, 137 S. Ct. at 432, then the article of manufacture is necessarily the entire product.  But if a product is "a multicomponent product, such as a kitchen oven," *id.*, and the patent claims only a design for a part, portion, or component of such a product, then the relevant article of manufacture to which the design is "applied" is the specific part, portion, or component of the product that corresponds to the claimed attributes of the patented design, and not the entire product. *See id.* at 435 ("While the design must be *embodied* in some articles, the statute is not limited to designs for complete articles, or 'discrete' articles, and certainly not to articles separately sold ….") (quoting *Zahn*, 617 F.2d at 268).

Comparing the scope of the patent claim to the accused product for article-of-manufacture purposes is closely analogous to comparing the scope of the patent claim to the accused product in infringement analysis.  "Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device."

*OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404-05 (Fed. Cir. 1997); *see Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1570 (Fed. Cir. 1992) (determining infringement "requires a two step analysis—first, the language of the claim at issue must be interpreted to define its proper scope and, second, the evidence before the court must be examined to ascertain whether the claim has been infringed, whether the claim 'reads on' the accused product or process.").  The infringement test involves a comparison of the *specific claim* of a patented design to the *corresponding* portion of an accused product, disregarding other product attributes.  *Door-Master*, 256 F.3d at 1312-14; *see Samsung Elecs. Co. v. Apple Inc.*, No. 15-777, Br. for Respondent 53 (July 29, 2016) (Apple admitting that, "to prove infringement" of a design patent for a cupholder in a car, "the patentee would ask the jury to compare its cupholder design with the accused cupholder, not with the car in which the cupholder appears").  Just as product components that do not correspond to the claimed attributes of a design patent are not relevant to infringement, they are not relevant to infringer's profit under Section 289.

**Application:**  As more fully explained below (*see infra*, at 13-15), the Apple design patents here are narrow, partial design patents.  Indeed, Apple engaged in the "standard and well-accepted patent gamesmanship" of obtaining at least thirteen design patents covering the external design features of the original iPhone, one of which is for the entire external case of an iPhone (U.S. Patent No. D580,387 (filed Jan. 5, 2007)) and twelve of which—including the patents-in-suit—are for designs covering only discrete, partial features of the overall iPhone, using broken lines to disclaim the remainder of the product.[1]  Similarly, Apple obtained at least twenty-one design patents covering

---

[1]  U.S. Patent No. D558,756 (filed Jan. 5, 2007); U.S. Patent No. D558,757 (filed Jan. 5, 2007); U.S. Patent No. D558,758 (filed Jan. 5, 2007); U.S. Patent No. D581,922 (filed July 30, 2007); U.S. Patent No. D586,800 (filed July 30, 2007); U.S. Patent No. D593,087 (filed July 30, 2007); U.S. Patent No. D601,558 (filed Feb. 13, 2009); U.S. Patent No. D613,736 (filed May 12, 2009); U.S. Patent No. D618,677 (filed Nov. 18, 2008); U.S. Patent No. D618,678 (filed Feb. 23, 2009); U.S. Patent No. D627,343 (filed Sept. 15, 2009); U.S. Patent No. D634,319 (filed June 21, 2010).

various designs for graphic user elements in the original iPhone,[2] and then pursued infringement in this case based on a single one of those designs claiming a single, specific grid of icons.

The corresponding components of the accused products here accordingly cannot be the entire phones as sold.  A patented design for a smartphone's front face or front face and bezel corresponds only to the front face or the front face and bezel in the accused product—and *is not* applied to other exterior components, or to the circuits, microchips, speakers, processors and other internal, non-design features that give a smartphone its functionality.  *See Samsung*, No. 15-777, Tr. 40 (Roberts, C.J.) ("Maybe I'm not grasping the difficulties in the case.  It seems to me that the design is applied to the exterior case of the phones.  It's not applied to the—all the chips and wires. …  So there should—there shouldn't be profits awarded based on the entire price of the phone.").  The same is true, *a fortiori*, for a design patent for a single display of icons that appears only fleetingly on a display screen.

Apple's infringement case at trial confirms these conclusions.  Apple pointedly limited its infringement case to the narrow, discrete attributes of the claimed designs, insisting that the jury and the Court should disregard all other aspects of the patent drawings and Samsung's products that might have pointed to material differences.  Dkt. 1611 at 1051; Dkt. 1612 at 1421-24; *see also infra*, at 19-20.  Components of the accused products that are disregarded for purposes of infringement cannot be part of the relevant article of manufacture for purposes of Section 289 damages.

---

[2]   U.S. Patent No. D621,845 (filed July 30, 2007); U.S. Patent No. D621,849 (filed July 30, 2007); U.S. Patent No. D627,790 (filed Aug. 20, 2007); U.S. Patent No. D624,555 (filed May. 6, 2008); U.S. Patent No. D617,334 (filed July 15, 2008); U.S. Patent No. D618,248 (filed Sept. 23, 2008); U.S. Patent No. D652,428 (filed Apr. 30, 2010); U.S. Patent No. D642,588 (filed May 19, 2010); U.S. Patent No. D644,239 (filed May 19, 2010); U.S. Patent No. D686,218 (filed June 14, 2010); U.S. Patent No. D668,666 (filed June 14, 2010); U.S. Patent No. D659,160 (filed June 21, 2010); U.S. Patent No. D660,315 (filed June 21, 2010); U.S. Patent No. D665,818 (filed June 21, 2010); U.S. Patent No. D652,054 (filed June 21, 2010); U.S. Patent No. D651,610 (filed June 30, 2010); U.S. Patent No. D668,263 (filed Oct. 18, 2010); U.S. Patent No. D651,215 (filed Oct. 22, 2010); U.S. Patent No. D675,639 (filed Sept. 19, 2011); U.S. Patent No. D726,765 (filed June 9, 2013).

1    **2.    Is the identification of an article of manufacture a factual question, a legal question, or a mixed question of law and fact? What issues should be decided by a jury? What issues should be decided by the Court?**

2

3    **Answer:**  The identity of the relevant article of manufacture is ultimately a question of fact

4    for the jury, but it depends upon the scope of the patented design, which is a question of law for the

5    court.  The part, portion, or component of the accused product corresponding to that patent scope is

6    a question of fact for the jury subject to the court's legal guidance.  The court may determine the

7    identity of the relevant article of manufacture as a matter of law where there are no disputed issues

8    of material fact.

9    **Analysis:**  Identifying the relevant article of manufacture is a necessary aspect of a damages

10    analysis under Section 289, *see Samsung*, 137 S. Ct. at 434, and damages present questions of fact

11    triable to a jury.  *See, e.g.*, *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164

12    (Fed. Cir. 1991) ("[T]he amount of a prevailing party's damages is a finding of fact on which the

13    plaintiff bears the burden of proof by a preponderance of the evidence."); *Pearson v. Duane*, 71 U.S.

14    (4 Wall.) 605, 614 (1866) ("The damages are a matter which are in the nature of a finding by a

15    jury.").

16    While identifying the relevant article of manufacture is ultimately a question of fact for a

17    jury, the issue is nevertheless subject to legal inputs that must be established by courts.  A court

18    must determine the scope of a patent claim, which presents a question of law.  *Cf. Egyptian Goddess,*

19    *Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (en banc).  And just as courts instruct

20    juries regarding the meaning and scope of patents in considering infringement, *id.* (design-patent

21    context); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008)

22    (utility-patent context), courts should instruct juries regarding design-patent scope to guide them in

23    identifying the article of manufacture to which a design is applied.

24    As with all questions of fact, the identity of the article of manufacture to which a design is

25    applied may be determined by the court as a matter of law on summary judgment where there are

26    no disputed issues of material fact.  *Cf. Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052,

27    1075-81 (Fed. Cir. 2005) (affirming partial summary judgments related to patent validity and

28    infringement).  If a court determines the identity of the relevant article of manufacture as a matter

of law on summary judgment, it should instruct the jury regarding that determination, leaving it to the jury to calculate only the total profit on that article.

**Application:**  In light of the undisputed record discussed below, the Court should identify the relevant articles of manufacture in this case as a matter of law in advance of trial, leaving for the jury only the issue of the quantum of damages.  Even if the Court does not instruct the jury as to what the relevant articles of manufacture are, it should at least instruct the jury that the relevant articles are *not* the entire phone.  If the identity of the articles goes to the jury, then the Court should instruct the jury as to the scope of the patented designs by, for example, stating that the D'677 patent "cover[s] a black rectangular front face with rounded corners," the D'087 patent "cover[s] a rectangular front face with rounded corners and a raised rim," and the D'305 patent "cover[s] a grid of 16 colorful icons on a black screen."  *Samsung*, 137 S. Ct. at 433.  In this circumstance, the Court should also explain to the jury that Apple's patented designs disclaim everything outside the broken lines, including the interior componentry.  *See, e.g.*, *Door-Master*, 256 F.3d at 1313; *Zahn*, 617 F.2d at 263; *Stevens*, 173 F.2d at 1016.  The jury would then identify the relevant articles of manufacture and Samsung's total profit therefrom.

### 3. Who bears the burden of proof to identify the relevant article of manufacture for purposes of § 289?

**Answer:**  The patentee bears the burden to prove the identity of the relevant article of manufacture for purposes of Section 289.  That burden never shifts to the defendant.

**Analysis:**  The "ordinary default rule" is that "plaintiffs bear the burden of persuasion regarding the essential aspects of their claims."  *Schaffer v. Weast*, 546 U.S. 49, 57 (2005).  "Absent some reason to believe that Congress intended otherwise … the burden of persuasion lies where it usually falls, upon the party seeking relief."  *Id.* at 57-58.  Patent cases are no exception to this rule: "The burden of proving damages falls on the patentee."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see SmithKline Diagnostics*, 926 F.2d at 1164.  Apple has thus conceded that it bears the burden of proof on damages.  *See* Dkt. 3486 at 7 ("[T]he issue of damages is one on which Apple carries the burden.").

1    The plaintiff bears the burden of identifying the article of manufacture just as much as it

2    bears the burden of proving a quantum of damages.  As the Supreme Court made clear, the

3    identification of the relevant article of manufacture is an essential aspect of a plaintiff's claim for

4    damages under Section 289.  *See Samsung*, 137 S. Ct. at 434 ("Arriving at a damages award under

5    § 289 thus involves two steps.  First, identify the 'article of manufacture' to which the infringed

6    design has been applied.  Second, calculate the infringer's total profit made on that article of

7    manufacture.").  Nothing in the text or legislative history of Section 289 reveals any legislative

8    intent to put the burden on defendants to prove a plaintiff's claim for damages by identifying the

9    relevant article of manufacture.  To the contrary, the legislative history of Section 289's predecessor

10   expressly provides that a patentee can "recover[] the profit actually made on the infringing article *if*

11   *he can prove that profit*," thus confirming that the patentee bears the burden of proving profit from

12   the relevant article of manufacture.  H.R. REP. NO. 49-1966, at 3 (1886) (emphasis added).

13       In sharp contrast to infringer's profit awards under the copyright and trademark laws, Section

14   289 does not on its face shift any burden to the defendant.  Under the Copyright Act, Congress

15   imposed on plaintiffs the burden of proving gross revenue but shifted the burden to defendants to

16   prove both deductible expenses ***and*** the portion of profit attributable to the copyrighted work:  "In

17   establishing the infringer's profits, the copyright owner is required to present proof only of the

18   infringer's gross revenue, and *the infringer is required to prove his or her deductible expenses and*

19   *the elements of profit attributable to factors other than the copyrighted work*."  17 U.S.C. § 504

20   (emphasis added); *see Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004)

21   ("§ 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant

22   must first show a causal nexus between the infringement and the gross revenue; and 2) once the

23   causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the

24   result of infringement.").  Similarly under governing interpretation of the Lanham Act, Congress

25   imposed on plaintiffs the burden to prove the defendant's sales of the infringing product, but shifted

26   the burden to defendants to prove both deductible expenses ***and*** the amount of profit attributable to

27   use of the trademark:  "In assessing profits the plaintiff shall be required to prove defendant's sales

28   only; *defendant must prove all elements of cost or deduction claimed*."  15 U.S.C. § 1117(a)

(emphasis added); *see Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (Under the Lanham Act, "[o]nce the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity.  The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead.") (internal citations omitted), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016).

Section 289 contains no such burden-shifting language—even though it was enacted *after* these copyright and trademark laws.  Section 289 instead merely provides that a design-patent infringer "shall be liable to the owner to the extent of his total profit."  35 U.S.C. § 289.  Congress could well have imposed upon a defendant the burden to prove what the article of manufacture is, but chose not to; its failure to do so in light of its copyright and trademark enactments precludes such an interpretation now.  *See, e.g.*, *Astrue v. Ratliff*, 560 U.S. 586, 595 (2010) (where "Congress knows how to" achieve a specific statutory effect, "we are reluctant to interpret" another provision to achieve that effect "absent clear textual evidence supporting such an interpretation"); *cf. Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

Placing the burden of identifying the correct article of manufacture on the patent plaintiff also corresponds with the analogous law of utility-patent damages for multicomponent products, where the patent plaintiff similarly must prove the correct component to be used as a royalty base and the quantum of damages relating to that component.  *See, e.g.*, *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689-90 (E.D. Tex. 2010) (Rader, J.) (stating that the plaintiff, not the defendant, "has the burden of proving damages by a preponderance of evidence," and thus ruling that the plaintiff many not "shift the burden to [defendants]" where the plaintiff's expert fails to identify the correct product component to use as a royalty base) (citing *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003)); *Golden Bridge Tech. v. Apple Inc.*, 2014 WL 2194501, at *6 (N.D. Cal. May 18, 2014) (excluding at Apple's urging the patentee's expert damages opinion for failure to identify the "smallest salable patent-practicing unit" within Apple's iPhones as the royalty base); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, 2013 WL 4538210, at *3-

4 (N.D. Cal. Aug. 22, 2013) ("[T]he patentee must determine the 'smallest salable infringing unit with close relation to the claimed invention' ….") (quoting *Cornell Univ. v. Hewlett–Packard Co.*, 609 F. Supp. 2d 279, 288 (N.D.N.Y. 2009) (Rader, J.)).[3]

**Application:**  Apple has the burden to identify the relevant article of manufacture in order to recover infringer's profit under Section 289.  Samsung bears no burden with respect to the identity of the relevant article of manufacture at any stage of the case.

    **4.**    **Who bears the burden of proof to demonstrate total profits on an article of manufacture for purposes of § 289?**

**Answer:**  The patentee bears the burden to prove the total profit on the relevant article of manufacture for purposes of Section 289.

**Analysis:**  Apple has conceded that it bears the burden on quantum of damages.  *See supra*, at 8.  Settled law likewise confirms that "the patent owner bears the burden of proving by a preponderance of the evidence the quantum of damages." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002); *accord  Lucent*, 580 F.3d at 1324; *SmithKline Diagnostics*, 926 F.2d at 1164; *see supra*, at 8.  Moreover, as discussed above, the legislative history of Section 289's predecessor expressly provides that a patentee can recover an infringer's total profit "if he can prove that profit," thus confirming that the patentee bears the burden of proof.  H.R. REP. NO. 49-1966, at 3 (1886).  Nothing in the text of Section 289 suggests otherwise, meaning that the burden rests solely on the plaintiff.  *See Schaffer*, 546 U.S. at 57, 58 ("Absent some reason to believe that Congress intended otherwise … the burden of persuasion lies where it usually falls, upon the party seeking relief").

---

[3]  The Court should disregard the government's passing, extra-statutory proposal to shift to defendants the burden of identifying the relevant article of manufacture based on supposed asymmetry of information.  *See Samsung*, No. 15-777, Br. for the United States As *Amicus Curiae* Supporting Neither Party 31 (June 8, 2016).  No court has adopted that approach.  And there is no reason to believe that defendants in design-patent cases will have "*exclusive* knowledge" of relevant information that the plaintiff does not already have or could not obtain in discovery. 2 MCCORMICK ON EVIDENCE § 337 (7th ed. 2016) (emphasis added); *see Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 494 n.17 (2004).

In addition, as shown above, this result is consistent with analogous utility-patent law, which requires the patentee to prove not only the appropriate component to use as the royalty base, but also the amount of damages attributable to that properly-identified component. *See supra*, at 10-11.

**Application:**  Apple has the burden to prove the quantum of Samsung's profit on the relevant article of manufacture.  Samsung bears no burden with respect to the quantum of infringer's profits at any stage of the case.

> **5.**     **Identify the relevant article of manufacture for the D'677 patent, D'087 patent, and D'305 patent.**

**Answer:**  Based on the article-of-manufacture test presented above (*see supra*, at 3-6), and the overwhelming record evidence described in detail below (*see infra*, at 13-20), the relevant articles of manufacture are:

- **D'677** – The phone's round-cornered, glass front face.
- **D'087** – The phone's round-cornered, glass front face plus its surrounding rim or bezel.
- **D'305** – The display screen while displaying the single, patented array of GUI icons.

> **6.**     **Identify evidence in the record supporting each party's asserted article of manufacture for the D'677 patent, D'087 patent, and D'305 patent.**

**Answer:**  Overwhelming evidence demonstrates that the relevant articles of manufacture are those set forth above.  This evidence far exceeds the minimal "any evidence" that Samsung needed to support its proposed article-of-manufacture instruction and thus is sufficient to require a new trial on design-patent damages.  Indeed, the undisputed evidence is so overwhelming that this Court should rule now, as a matter of law, that these product components are the relevant articles of manufacture.  At the very least, the Court should declare based on the undisputed record that the relevant articles of manufacture are *not* Samsung's entire phones.

**Analysis:**

> **a.**     **The Scope Of The Design Patents**

Each of Apple's design patents depicts a design that applies only to discrete, limited portions of a smartphone, and not an entire smartphone.

1     *First,* the D'677 patent claims a design for a black, rectangular front glass face with rounded

2     corners and specifically disclaims the surrounding rim or "bezel," the circular home button on the

3     front, and the sides, top, bottom and back of the smartphone (*i.e.*, the rest of the phone).  The patent

4     does not (and indeed could not) depict or claim any internal componentry of the phone.



10    JX1043.5.  The Court instructed the jury that "[t]he broken lines in the D'677 Patent constitute

11    unclaimed subject matter."  Dkt. 1903 at 59 (Inst. No. 43).  The Supreme Court also recognized that

12    the D'677 patent covers only "a black rectangular front face with rounded corners[.]"  *Samsung*,

13    137 S. Ct. at 433.

14        *Second,* the D'087 patent, like the D'677 patent, claims a design for a rectangular front face

15    with rounded corners, minus the black shading and with the addition of a bezel.  The patent

16    specifically disclaims the sides, back, top, and bottom of the smartphone (*i.e.*, the rest of the phone),

17    as well as features on the front, such as the circular home button.  The patent does not (and could

18    not) depict or claim any internal componentry of the phone.



25    JX1041.7.  The Court instructed the jury that "[t]he broken lines in the D'087 Patent constitute

26    unclaimed subject matter."  Dkt. 1903 at 59 (Inst. No. 43).  The Court also instructed that "the D'087

27    Patent claims the front face, a bezel encircling the front face of the patented design that extends

28    from the front of the phone to its sides, and a flat contour of the front face, *but does not claim the*

*rest of the [phone].*" *Id.* (emphasis added).[4]  The Supreme Court likewise recognized that the D'087 patent covers only "a rectangular front face with rounded corners and a raised rim[.]" *Samsung,* 137 S. Ct. at 433.

*Third,* the D'305 patent claims a design for a specific grid of sixteen colorful icons that can appear, temporarily, on a display screen.  The patent specifically disclaims every attribute of a smartphone except that specific display image, and does not depict or claim any other display screen images or any internal componentry of the phone.



JX1042.6.  The Court instructed the jury that "[t]he broken line showing of a display screen in both views forms no part of the claimed design."  Dkt. 1903 at 60 (Inst. No. 43).  The Supreme Court likewise recognized that this patent covers only "a grid of 16 colorful icons on a black screen." *Samsung,* 137 S. Ct. at 433.

Apple, moreover, specifically disclaimed rights as to other design elements in prosecuting its patents.  For example, as to the D'305 patent, Apple's original application claimed designs for *194* separate images that could appear on a display screen, but as issued by the PTO, the D'305 patent claims only a design for a *single* array of icons.  *See* JX1042; *see also Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 703-04 (Fed Cir. 2014) (holding that

---

[4]  The Court's instruction used the term "article of manufacture" rather than "phone," *see* Dkt. 1903 at 59, but did so based on the erroneous understanding that "article of manufacture" meant an entire product as sold, *see* Dkt. 3509 at 20.  While use of the term "article of manufacture" in the claim construction for the D'087 patent was incorrect, the construction correctly recognized that Apple's patented design does not claim most of a phone.  *See* Dkt. 1903 at 59.

prosecution history estoppel applies to limit claim scope where applicant surrenders subject matter to comply with single-claim requirement for design patent).  The prosecution history for the D'677 and D'087 patents is similar.  *See* JX1064.20-.25, .177-.179, .192-.193, .221-.223, .334-.341, .353-.354; JX1062.86-.97, .164-.165, .169-.173, .307-.308; *see also* Dkt. 943-7 through 943-10 (D'677 file wrapper); Dkt. 944 through 944-5 (D'087 file wrapper).

At trial, Apple's own experts on design-patent infringement expressly admitted the above narrow constructions.  Apple's expert on hardware design, Peter Bressler, admitted at trial that the D'677 patent claimed a design for only "the front face of an electronic device that is black in color," with the dotted lines excluding what is "not being claimed in this patent" because "the only thing being claimed is the area in the solid lines."  Dkt. 1611 at 1014-15; *id.* at 1015 ("all it's claiming is that front face.").  Similarly, Bressler admitted that the D'087 patent claimed a design for only the "flat front face and the bezel" of a phone:  "As you can see by the broken lines, again, it's not claiming the body.  It's claiming the bezel and the front face."  Dkt. 1611 at 1018-19.  Apple's expert on graphical user interface design, Susan Kare, likewise testified that the D'305 patent was limited to a design for "the rectangular area that's within the dotted line that goes around the outside."  Dkt. 1612 at 1367.

Accordingly, the scope of Apple's patented designs is unquestionably narrow.  Each design patent claims only a portion of the design for a smartphone.  None claims a design for an entire phone, and none claims the design for any interior componentry.  Therefore, because Apple's patents do not *claim* designs for entire products, the articles of manufacture to which those designs are *applied* are not Samsung's entire products.  *See Samsung*, 137 S. Ct. at 435 (explaining that the meaning of "article of manufacture in §289 is consistent with 35 U.S.C. § 171(a)," under which "a design extending to only a component of a multicomponent product" is patentable as a design for an article of manufacture); *see also supra*, at 5-6.

### b.   The Accused Products And Scope Of Alleged Infringement

The accused products and scope of alleged infringement further confirm that the relevant articles of manufacture here are *not* Samsung's entire phones and, instead, are the components of Samsung's phones that correspond to the attributes of the patented designs.  All of the evidence

described below is in the trial record, and all of it is undisputed or the admissions of Apple's witnesses. Such evidence, once admitted, may be used for *any* purpose to which it is relevant— including, here, to show the relevant articles of manufacture.[5] Thus, contrary to Apple's prior arguments, the Court need not determine the purpose for which this evidence was admitted at trial. Accordingly, had the juries been properly instructed, Samsung could have relied on all of this evidence in its closings to argue that the relevant articles of manufacture were particular components of Samsung's phones.

(i)     Evidence Showing That The Proposed Articles Of Manufacture Are Separable Components Of Samsung's Products

*First,* the evidence overwhelmingly showed that Samsung's accused smartphones are complex, multi-component devices containing hundreds of different components. The accused smartphones themselves demonstrate this. These complex, functional, working devices were provided to the juries to examine through hands-on use. Samsung's smartphones are obviously far more complex than a "kitchen oven," which the Supreme Court identified as an example of a multi-component product containing several articles of manufacture. *Samsung*, 137 S. Ct. at 432.[6]

Similarly, during the testimony of Apple executive Scott Forstall, the jury saw "detailed tear-down analyses" of the Samsung Vibrant, which included "breaking out each component and looking both at hardware components and the actual boards that are used." Dkt. 1610 at 772; *id.* at 769-72.

---

[5]  *See*, *e.g.*, *Abbott Labs. v. Syntron Bioresearch Inc.*, 2001 WL 34082555, at *3 (S.D. Cal. Aug. 24, 2001) (agreeing that "prior art reference[s], like any other piece of evidence, once admitted, [are] admissible for any purpose for which [they are] relevant"); 1 *McCormick On Evidence* § 54 (7th ed. 2016) ("[T]estimony … received without objection … becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power."); 88 C.J.S. *Trial* § 188 (2017) ("Where evidence is admitted generally, it may be considered for any purpose for which it is relevant and competent.") (collecting cases; footnotes omitted); *cf. Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1377 (Fed. Cir. 2012) (reversing order excluding certain prior art references because, even if they were outside court order limiting scope of admissible prior art at trial, they were also relevant to corroborating witness's testimony about product characteristics).

[6]  The Court previously ruled that Samsung's "phones themselves provide substantial evidence" to support the first jury's findings regarding infringement, demonstrating that the phones themselves can be probative evidence. Dkt. 2219 at 10 (Order on Apple's JMOL motion); *see* Dkt. 2220 at 3, 15 (Order on Samsung's JMOL motion) (similar).

This presentation shows the phone being systematically taken apart, with slides for each step of the dismantlement displaying annotated images of the phone's loudspeaker, SIM card slot, camera, motherboard, and other components in isolation, and describing them as separate "sub-modules." DX2519.005-.011. Another slide, entitled "Phone Features," shows separate physical features such as the light sensor, the power/wake/sleep button, the camera, and capacitive touch buttons. DX2519.004. Below are sample images from the teardown:



DX2519.004, .006, .008, .012.

Apple's witnesses likewise acknowledged the many components that make up a smartphone. Apple's Vice President of Procurement, Tony Blevins, who was responsible for "acquiring necessary components" for Apple's iPhones, showed the jury a disassembled iPhone 4's internal motherboard or "major logic board" and the baseband processor on it. Dkt. 1842 at 3165-68. Blevins further explained that there are "900 to 1,000 parts total" in the iPhone. Dkt. 1842 at 3168. Apple's damages expert, Terry Musika, testified about the Samsung division that manufactured "components" such as "processor[s]," "memory chips," "touchscreen[s]," and "flash memory" for various phone manufacturers, including Samsung and Apple products. Dkt. 1839 at 2148-53.

*Second,* the trial record contains extensive evidence that the articles of manufacture here are specific components of the accused phones. For example, Samsung witnesses confirmed that these

1    components were often manufactured separately.  Samsung Chief Strategy Officer Justin Denison

2    gave uncontradicted testimony that the display, speakers, microphones, and input keys were some

3    of the "main components in a phone."  Dkt. 1610 at 868-72.  Denison described how the display

4    screen is separate from "the bezel, if there's a bezel, or the frame if there's a unibody frame," and

5    how the front glass face is yet another component separate from those.  *Id.* at 871-72; *see id.* at 872

6    ("[T]here's a piece of glass and then underneath that is a display and you have to glue that on top.").

7    The teardown likewise shows non-accused graphical user interface screens on Samsung's phones,

8    including the lock screen, home screen, social hub, and keyboard.  DX2519.004; DX2519.012.  And

9    Samsung's expert witness Itay Sherman similarly testified that "there are a lot of components that

10   reside below the surface" of the phone's glass face and that a black mask is used "to hide them."

11   Dkt. 1840 at 2610-11.

12        Additionally, Samsung's damages expert, Michael Wagner, testified to the process of

13   designing around Apple's asserted patents and the ease with which the accused Samsung application

14   menu, as well as other software features, could be separately "redesign[ed]" and applied to the

15   device through a "software update" without having to "take the phone and take it apart and look at

16   the innards."  Dkt. 2842 at 996, 1030.  That is, not only are Samsung's accused phones made up of

17   separate *physical* components, but images and components within the graphical user interface are

18   also separable from one another at the software-programming level.

19        Finally, Apple industrial designer Chris Stringer, a named inventor on the D'677 and D'087

20   patents, testified about the manufacturing challenges Apple faced in working with separate

21   components for its products, including "producing the glass," "putting the glass in close proximity

22   to hardened steel," and separately "machining" a "high grade of steel" for bezels at volumes that

23   were "unprecedented at that time."  Dkt. 1547 at 494-95.  Stringer further testified that the iPhone's

24   exterior was designed independently of any "requirements from the components or the internal

25   elements of the phone."  *Id.* at 496.  As for the graphical user interface, Apple witness Paul Dourish,

26   a computer science professor who was offered as an expert in the field of interface technology,

27   testified that the phones could "download and install software programs that can extend the

28   functionality of the device by letting it do things that hadn't necessarily been designed into it or

conceived of when it was designed" (Dkt. 1842 at 3195-96), further showing that accused applications screens were separable from other interface elements of the phones.

Thus, the undisputed evidence establishes that Samsung's smartphones are complex products consisting of many components, including numerous components *other than* those that correspond to the claimed attributes of Apple's narrow patented designs.   Only the specific components that correspond to those narrow designs are the relevant articles of manufacture.

(ii)   <u>Evidence Showing The Narrow Scope Of Apple's Infringement Allegations</u>

Apple's narrow infringement allegations further demonstrate the metes and bounds of the relevant articles of manufacture.  In asserting infringement, Apple did not claim that all components of Samsung's phones were infringing.   To the contrary, Apple's infringement experts limited their infringement opinions to particular components of Samsung's phones, to the exclusion of all other parts.

*First,* as to the D'677 patent, Apple's expert Bressler testified that Samsung's phones infringed because they "ha[d] a flat, uninterrupted surface that is rectangular in proportions described in the '677 patent; it runs edge to edge across the front of the phone and is transparent and is black; and it has a display that is centered on the face of the phone and a lozenge shaped speaker slot, *and I find those features to be substantially the same.*"  Dkt. 1611 at 1050 (emphasis added).  Bressler disregarded all other portions of Samsung's phones that did not correspond to the attributes of the claimed design.  For example, Bressler considered only the "front" of the Galaxy S 4G and "did *not* consider" aspects like the back of the Samsung phone, because they were "not part of the claimed design."  Dkt. 1611 at 1050-51 (emphasis added); *see id.* at 1051 ("I looked at it but did not consider it as part of my analysis … *[b]ecause it is the back of the phone and this patent is specifically for the face of the phone.*") (emphasis added).  Bressler also testified that the lack of a physical home button on the accused Samsung phones "doesn't matter" because the location of the iPhone's home button is disclaimed through broken lines in the D'677 patent.  *Id.* at 1016.

*Second,* Bressler's testimony with respect to the D'087 patent was similar.  As to that patent, Bressler examined *only* the front face and bezel of Samsung's accused phones in considering his

infringement analysis.  Dkt. 1611 at 1058.  As with the D'677 patent, dissimilar portions of the accused phones did not matter to Bressler because, "as you can see by the broken lines," the D'087 patent was "not claiming the body" but only "the bezel and front face."  *Id.* at 1019.

*Third,* Apple's expert Kare similarly testified that she considered only a particular screen within the GUI of the accused Samsung devices when assessing infringement of the D'305 patent, and disregarded all other screens and all other smartphone components.  Specifically, Kare's infringement comparisons were limited to the "Samsung application screen" and *not* the "start-up screen," "unlock screen," or "home screen of the Samsung phone[s]."  Dkt. 1612 at 1421-24.  Further, Apple "asked that body style not be included" in trial exhibits for the D'305 patent, and the Court excluded exhibits depicting the "overall phone" in the context of D'305 patent infringement comparisons, allowing only "screen-to-screen shots."  *Id.* at 1372-73.[7]

**Application:**  At a minimum, there was an adequate foundation for Samsung's proposed article-of-manufacture instruction because a properly-instructed jury could have found that smartphone components are the relevant articles of manufacture, as Chief Justice Roberts recognized at oral argument (*see supra*, at 6).  *See Don Burton, Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702, 706 (9th Cir. 1978) ("While it is unnecessary to give instructions unsupported by the evidence, a litigant is entitled to have the jury charged concerning his theory of the case if there is any direct or circumstantial evidence to support it."), *quoted in* Dkt. 3509 at 28; *see also* Dkt. 3509 at 29 ("The determination whether there is an adequate foundation necessarily would require finding, for example, that the evidence in the record does not establish as a matter of law that the entirety of Samsung's phones are the relevant article of manufacture.").

---

[7]  In addition to the phones themselves, the record also contains extensive evidence regarding the numerous software applications and GUI screens that are displayed on the phones apart from the specific array of icons depicted in the D'305 patent—including the unaccused Samsung home screen and the web browser, contacts program, and picture gallery.  For example, Apple's expert Dr. Ravin Balakrishnan, in testifying about infringement of Apple's utility patents, referred to the "gallery application," which was separate from the "browser application" and the "contacts list application."  Dkt. 1695 at 1741-49.  And Apple's expert Dr. Karan Singh separately testified as to infringement by the "browser application."  *Id.* at 1904.

1    In fact, the extensive evidentiary record supports determination as a matter of law that the

2 relevant articles of manufacture are *not* Samsung's entire phones, but rather are the specific

3 components of those phones that correspond to Apple's narrow patented designs:  for the D'677

4 patent, the phone's round-cornered, glass front face; for the D'087 patent, the phone's round-

5 cornered, glass front face plus its surrounding rim or bezel; and for the D'305 patent, the display

6 screen while displaying the single, patented array of GUI icons.[8]  *See, e.g.*, *Samsung*, 137 S. Ct. at

7 436 ("the term 'article of manufacture' is broad enough to embrace both a product sold to a

8 consumer and a component of that product, whether sold separately or not").

9    The Court should so rule now (or on summary judgment) and instruct the jury accordingly.

10 Apple obtained patents on narrow designs, deliberately *excluding* most smartphone attributes from

11 the scope of its claims.  Apple then accused Samsung of infringing those narrow design patents

12 based solely on elements of Samsung's phones that correspond to the claimed attributes of Apple's

13 designs, *disregarding* the many dissimilarities as to subject matter expressly disclaimed by the use

14 of broken lines or otherwise outside the scope of the claims.  The articles of manufacture to which

15 Apple's designs were applied are the components that correspond to the claimed attributes of the

16

17

---

18    [8]  For the D'305 patent, the article of manufacture cannot be the *entire* display screen because

19 the entire screen does not correspond to Apple's design patent and only a *single* GUI image that
appears on that screen, fleetingly, was found to infringe.  Apple specifically limited its infringement

20 case to that single image, disregarding other images on the display screen that it had not accused of
infringement.  Dkt. 1612 at 1421-24.  The display screen while displaying that image therefore

21 corresponds to the patented design and is the relevant article of manufacture.  *See, e.g.*, *In re Hruby*,

22 373 F.2d 997, 999 (C.C.P.A. 1967) (holding under Section 171 that the "portion of a water fountain
which is composed entirely of water in motion is within the statutory term 'article of manufacture'"

23 even though "the pattern created is wholly ... fleeting") (internal quotation marks omitted), *cited
with approval in Samsung*, No. 15-777, Br. for Respondent 36.

24    *Hruby*, moreover, reinforces that the relevant article of manufacture for the D'305 patent cannot

25 be the entire phone as a matter of law because there the article of manufacture was held to be the
"water display itself," not "a catch basin and a fountain producing device" that produced the

26 ornamental appearance but that were excluded by "broken lines."  373 F.2d at 998, 999.  So too
here, the D'305 disclaims large portions of the phones necessary to produce the single array of icons

27 that it claims.

28

patented design, which Apple accused of infringement.  The articles of manufacture are not, and could not be, Samsung's entire phones.

The instructions failed to so guide the jury, and Apple may not now avoid a new trial by claiming that this instructional error was "harmless."  Apple waived any harmless-error argument by raising it for the first time on remand after losing in the Supreme Court, which is far too late.[9]  The error was also clearly prejudicial:   the jury instructions *required* the jury, if it elected Section 289 damages, to award Samsung's profit on its entire accused phones, *see* Dkt. 3509 at 22 (finding that given instructions "direct[ed]" the "jury to find that the article of manufacture and product are the same"), even though the evidence did not require such an award, *see supra*, at 13-20.  Instructing a jury to award entire-product profit when the facts do not require such an award is the epitome of prejudice.  *See, e.g.*, *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) ("[P]rejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered."); *Dang v. Cross*, 422 F.3d 800, 811-12 (9th Cir. 2005) (similar; holding that the party defending the verdict has the burden to show that the instructional error was harmless); *see also Voda v. Cordis Corp.*, 536 F.3d 1311, 1328 (Fed. Cir. 2008) (regional circuit law governs harmless-error review).

> **7.    Identify evidence in the record supporting the total profit for each party's asserted article of manufacture for the D'677 patent, D'087 patent, and D'305 patent.**

**Answer:**  The trial record contains evidence from which a properly-instructed jury could have calculated profits from the relevant articles of manufacture.  Even if there were not sufficient evidence, Samsung still would be entitled to a judgment of no infringer's profits or, at a minimum, a new trial on design-patent damages, because Apple bore the burden of proving infringer's profits.

---

[9]    *See, e.g., Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (harmless-error argument waived if not raised in appellee's brief); *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("Generally, an appellee waives any argument it fails to raise in its answering brief"), *quoted in* Dkt. 3509 at 25; *Facebook, Inc. v. Power Ventures, Inc.*, 2017 WL 1650608, at *7 (N.D. Cal. May 2, 2017) ("[A]n issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand."), *quoted in* Dkt. 3509 at 24; *see also* Dkt. 3498 at 12-13 (Samsung's opposition brief arguing same).

**Analysis:**  Apple's own damages experts provided the juries information from which they reasonably could have awarded Samsung's profit from the relevant articles of manufacture, which are less than the entire phone.  Apple's experts offered reasonable-royalty calculations for the D'677, D'087, and D'305 patents, with one methodology (the "income method") suggesting a value of $9 per phone for those three patents combined.  Dkt. 1839 at 2088-92 (testimony of Apple's damages expert Musika at 2012 trial); Dkt. 2840 at 704-08 (testimony of Apple's damages expert Davis at 2013 trial); PX25A1.16 (Apple's 2012 trial exhibit summarizing its damages contentions); PX25F.16 (same for 2013 trial).  These "income method" opinions used Samsung's "*actual profits*" as the measure of what Samsung would earn *from the components* "*embodying the patented [designs]*."  PX25A1.16 (emphasis added); PX25F.16 (same); *see, e.g.,* Dkt. 2840 at 771-72 (Apple's damages expert Davis testifying that Apple's proposed royalty estimated the *value of each phone's* "*case*," not its "guts") (emphasis added); *id.* at 773 (similar).  Samsung's actual profit from the relevant articles of manufacture here would in fact be far less than Apple's proposed $9 per unit because, among other things, that figure purported to estimate the value of all design patents combined—even though none of the accused phones subject to the partial judgment was found to infringe all three patents (*see* PX25A1.16; Dkt. 1931 at 6-7; Dkt. 3290 at 1).

The trial record also contains evidence supporting inferences that smartphones derive their value principally from features other than the components to which Apple's designs were applied. Apple's own market research and analysis shows, for example, that consumer demand was driven by features and components such as larger display, choice of wireless carrier, trust in the Google brand, access to Android app market, integrated Google services, and turn-by-turn GPS navigation (DX572.082); web capabilities, ease of use, and availability of apps (PX143.5); improved battery life and camera quality (PX143.6); and brand choice and multimedia functions (DX592.010, .023). One trial exhibit shows a presentation in which Apple itself asserted, before filing this lawsuit, that "*[s]oftware* creates the largest share of product value."  DX586.004.

**Application:**  The foregoing evidence would have allowed a properly-instructed jury to determine total profit from the relevant articles of manufacture at amounts within a "range [of damages] encompassed by the record as a whole." *Finjan, Inc. v. Secure Computing Corp.*, 626

F.3d 1197, 1212 (Fed. Cir. 2010); *see id.* at 1208-09 (jury did not have to accept either parties' damages calculations and "was entitled to choose its own figures from the evidence"); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1072-73 (Fed. Cir. 2003) (affirming "jury's award, which was … substantially smaller than the amount calculated by [plaintiff's] expert," even though defendants presented no expert damages testimony). And the amounts awarded undoubtedly would have been a small fraction of Samsung's total profit on the entire phones, which was as much as $70 per phone. *See* Dkt. 1931 at 16; JX1500.1.

But even if the evidentiary record were not sufficient to allow the juries to calculate total article-of-manufacture profit (and it was), the existing design-patent judgment still cannot stand. As shown above (*see supra,* at 11-12), Apple alone bore the burden of proving the quantum of damages from the relevant articles of manufacture. If the evidence demonstrating Samsung's profits from the correct articles of manufacture was insufficient, the Court should find that ***Apple*** failed to meet its burden and cannot obtain infringer's profits under Section 289. *See, e.g.*, *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513 (1988) (where "the evidence presented in the first trial would not suffice, as a matter of law, to support a jury verdict" for the plaintiff under correct instructions, judgment may be entered for defendant "without a new trial").

If the Court does not direct judgment for Samsung, then, at a minimum, it should grant a new trial. That trial should be limited to the quantum of Samsung's profits from the relevant articles of manufacture as determined by the Court. Alternatively, the Court should grant a new trial at which the jury determines both articles and quantum. In no event, however, can the state of the evidentiary record regarding Samsung's profits be used against Samsung, which as the defendant had no burden to introduce any evidence of profits at all.

## CONCLUSION

The Court should vacate the $399 million design-patent judgment. Apple cannot "establish as a matter of law that the entirety of Samsung's phones are the relevant article of manufacture" (Dkt. 3509 at 29), given the Supreme Court's decision and the overwhelming evidence that Apple's narrow design patents were applied to discrete components of Samsung's phones. Upon vacatur, the Court should enter judgment of no infringer's profits because Apple failed to satisfy its burden

1  to prove total profit from the relevant articles of manufacture, which cannot be the entire phones.  If

2  the Court does not so rule, then it should identify pre-trial, as a matter of law, the relevant articles

3  of manufacture, and order a new jury trial limited to the quantum of profit from those articles.  If

4  the Court does not so rule, then, at a minimum, the Court should grant a new jury trial on both the

5  relevant articles of manufacture and the quantum of profit.

6  DATED:          September 8, 2017          QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
7

8

9                                            By   /s/ Victoria F. Maroulis
                                                 John B. Quinn
10                                               Kathleen M. Sullivan
                                                 William C. Price
11                                               Michael T. Zeller
                                                 Kevin P.B. Johnson
12                                               Victoria F. Maroulis

13                                               Attorneys for SAMSUNG ELECTRONICS CO.,
14                                               LTD., SAMSUNG ELECTRONICS AMERICA,
                                                 INC., and SAMSUNG
15                                               TELECOMMUNICATIONS AMERICA, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28