ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
NATHAN B. SABRI (CA SBN 252216)
nsabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522


Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S OPENING BRIEF IN RESPONSE TO THE COURT'S JULY 28, 2017 ORDER**<br><br>Date:     October 12, 2017<br>Time:     1:30pm<br>Place:    Courtroom 8, 4th Floor<br>Judge:    Hon. Lucy H. Koh |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................... 1

II.    RESPONSE TO THE COURT'S QUESTIONS .................................................... 2

    A.    Issue 1:  The "Article Of Manufacture" Is The Thing To Which The Defendant Applied The Patented Design For The Purpose Of Sale. ..................... 2

    B.    Issue 2:  Identifying The Article Of Manufacture Is A Question Of Fact To Be Decided By A Jury When Disputed. ..................................................... 7

    C.    Issues 3 & 4:  After The Plaintiff Makes Out A *Prima Facie* Case Under § 289, The Burden Shifts To The Defendant To Prove An Article Of Manufacture Less Than The Product As Sold And To Prove Its "Total Profit" On That Article. ................................................................. 9

    D.    Issue 5:  Samsung's Infringing Phones Are The Relevant Articles Of Manufacture For All Three Design Patents. ..................................................... 14

    E.    Issue 6:  The Record Only Supports A Finding That The Relevant Articles Of Manufacture For All Three Design Patents Are Samsung's Infringing Phones. .............................................................................. 15

        1.    The evidence shows that the infringing phones were the articles to which Samsung applied the patented designs for the purpose of sale. ................................................................................................ 15

        2.    The jury could not have found any smaller article of manufacture. ......................................................................................... 20

    F.    Issue 7:  There Is No Record Evidence Supporting The "Total Profit" For Any Article Other Than Samsung's Infringing Phones. ..................... 21

III.   APPLYING THE ABOVE PRINCIPLES, NO NEW TRIAL IS WARRANTED. ......................................................................................................... 23

IV.    CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AI Realty Marketing of New York, Inc.*,
    293 B.R. 586 (Bankr. S.D.N.Y. 2003) ...................................................................14

*Apple Inc. v. Samsung Electronics Co.*,
    786 F.3d 983 (Fed. Cir. 2015) ............................................................................23

*In re Beckwith*,
    203 F. 45 (7th Cir. 1913) ............................................................................11, 14

*Bergstrom v. Sears, Roebuck & Co.*,
    496 F. Supp. 476 (D. Minn. 1980) ......................................................................14

*SEC v. Bilzerian*,
    29 F.3d 689 (D.C. Cir. 1994) ............................................................................12

*Boyce v. Soundview Technology Group, Inc.*,
    464 F.3d 376 (2d Cir. 2006) ............................................................................13

*Braun Inc. v. Dynamics Corp. of America*,
    975 F.2d 815 (Fed. Cir. 1992) ............................................................................8

*Bush & Lane Piano Co. v. Becker Brothers*,
    222 F. 902 (2d Cir. 1915) ............................................................................4, 5, 6

*Bush & Lane Piano Co. v. Becker Brothers*,
    234 F. 79 (2d Cir. 1916) ............................................................................8

*Campbell v. United States*,
    365 U.S. 85 (1961) ............................................................................10

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
    295 F.3d 1277 (Fed. Cir. 2002) ............................................................................8

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) ............................................................................24, 25

*Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension
    Trust for Southern California*,
    508 U.S. 602 (1993) ............................................................................10

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ............................................................................25

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ...................................................................................... 3

*Erving Paper Mills v. Hudson-Sharp Machine Co.*,
   332 F.2d 674 (7th Cir. 1964) ....................................................................................... 11

*SEC v. First City Financial Corp.*,
   890 F.2d 1215 (D.C. Cir. 1989) .................................................................................... 12

*SEC v. Fujinaga*,
   No. 16-15623, 2017 WL 2465002 (9th Cir. June 7, 2017) ......................................... 13

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................................... 3

*Glen Raven Knitting Mills, Inc. v. Sanson Hosiery Mills, Inc.*,
   189 F.2d 845 (4th Cir. 1951) ......................................................................................... 6

*Gorham Co. v. White*,
   81 U.S. (14 Wall.) 511 (1872) .................................................................................... 4, 8

*SEC v. Halek*,
   537 F. App'x 576 (5th Cir. 2013) ................................................................................ 12

*Hana Financial, Inc. v. Hana Bank*,
   135 S. Ct. 907 (2015) ..................................................................................................... 8

*SEC v. Hughes*,
   124 F.3d 449 (3d Cir. 1997) ........................................................................................ 13

*Kokesh v. SEC*,
   137 S. Ct. 1635 (2017) ................................................................................................ 12

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993) ..................................................................................... 6

*Lehnbeuter v. Holthaus*,
   105 U.S. 94 (1881) ......................................................................................................... 6

*Lindahl v. Office of Personnel Management*,
   776 F.2d 276 (Fed. Cir. 1985) ..................................................................................... 10

*Liriano v. Hobart Corp.*,
   170 F.3d 264 (2d Cir. 1999) ........................................................................................ 13

*Michery v. Ford Motor Co.*,
   650 F. App'x 338 (9th Cir. 2016) ................................................................................ 10

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) .............................................................................. 4, 5, 11

*Parker Sweeper Co. v. E.T. Rugg Co.*,
    474 F.2d 950 (6th Cir. 1973)..............................................................................6

*SEC v. Platforms Wireless International Corp.*,
    617 F.3d 1072 (9th Cir. 2010)..........................................................................12

*Primos, Inc. v. Hunter's Specialties, Inc.*,
    451 F.3d 841 (Fed. Cir. 2006)..........................................................................23

*Samsung Electronics Co. v. Apple Inc.*,
    137 S. Ct. 429 (2016) .............................................................................3, 8, 9

*In re Schnell*,
    46 F.2d 203 (C.C.P.A. 1931) ...........................................................................7

*Selma, R. & D.R. Co. v. United States*,
    139 U.S. 560 (1891) ......................................................................................10

*Shinseki v. Sanders*,
    556 U.S. 396 (2009).................................................................................23, 25

*SEC v. Whittemore*,
    744 F. Supp. 2d 1 (D.D.C. 2010) ...................................................................12

*SEC v. Wyly*,
    56 F. Supp. 3d 260 (S.D.N.Y. 2014)..............................................................13

*Young v. Grand Rapids Refrigerator Co.*,
    268 F. 966 (6th Cir. 1920)................................................................................5

**State Cases**

*Barker v. Lull Eng'g Co.*,
    573 P.2d 443 (Cal. 1978) ...............................................................................11

**Federal Statutes & Regulations**

35 U.S.C. § 171..................................................................................................7

35 U.S.C. § 284..................................................................................................8

35 U.S.C. § 289........................................................................................ *passim*

37 C.F.R. § 1.153...............................................................................................7

**Other Authorities**

2 McCormick on Evidence § 337 (7th ed. 2013)............................................10

18 Congressional Record 824 (Jan. 20, 1887) .........................................6, 12

Manual of Patent Examining Procedure § 1503.01 ..........................................................7

Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011)................................12, 13

Wright & Miller, 21B Federal Practice & Procedure Evidence § 5122 (2d ed. 2005) ....................................................................................................................10

**Briefs**

Apple Brief,
  *Apple Inc. v. Samsung Electronics Co.*, No. 14-1335,
  2014 WL 3909249 (Fed. Cir. July 28, 2014) ...........................................................23

Apple Statement in Support of Continued Panel Review,
  *Apple Inc. v. Samsung Electronics Co.*, No. 14-1335,
  2016 WL 8222614 (Fed. Cir. Dec. 27, 2016) ..........................................................24

Brief for United States as Amicus Curiae Supporting Neither Party,
  *Samsung Electronics Co. v. Apple Inc.*, No. 15-777,
  2016 WL 3194218 (S. Ct. June 8, 2016) ........................................................ *passim*

Petitioner's Reply Brief,
  *Samsung Electronics Co. v. Apple Inc.*, No. 15-777,
  2016 WL 6599922 (S. Ct. June 1, 2016) .................................................................22

Petitioner's Reply Brief,
  *Samsung Electronics Co. v. Apple Inc.*, No. 15-777,
  2016 WL 4524542 (S. Ct. Aug. 29, 2016) ............................................................7, 24

Respondent's Brief,
  *Samsung Electronics Co. v. Apple Inc.*, No. 15-777,
  2016 WL 4073686 (S. Ct. July 29, 2016) ................................................................24

Samsung Statement in Support of Remand,
  *Apple Inc. v. Samsung Electronics Co.*, No. 14-1335,
  2017 WL 514460 (Fed. Cir. Jan. 12, 2017) ............................................................24

# I.    INTRODUCTION

35 U.S.C. § 289 provides that a patentee may recover an infringer's "total profit" on the article of manufacture to which the infringer has applied the patented design for the purpose of sale.  When a patentee has demonstrated that the infringer applied the patented design to a product and profited from that product's sale, it has proven its *prima facie* case for infringer's profits under § 289.  The infringing defendant may then try to reduce the damages amount by, for instance, showing that certain costs should be deducted from the infringing product revenue or by arguing that the patented design was applied not to the product as a whole, but to an "article of manufacture" that is only a component of that overall product.

Whether an infringer can reduce the § 289 damages it owes—through offsetting costs or a smaller "article of manufacture"—are factual issues that, when disputed, are for the jury, because they are simply sub-questions within the jury's overall damages decision.  As is typical of a disgorgement-like remedy, the defendant bears the burden of persuasion on its request to reduce damages, because it has superior access to relevant information and should shoulder the burden of proving (if it so contends) that its ill-gotten gains are less than what it received from the infringing sales.  This Court recognized these principles in its instructions regarding Samsung's effort to identify deductible costs; Samsung's efforts to reduce the damages amount based on an asserted smaller "article of manufacture" should be treated no differently.  Thus, as the Solicitor General of the United States explained before the Supreme Court, once the patentholder makes its *prima facie* case that the defendant misappropriated the patented design in a sold product, the defendant has the burden of identifying evidence showing that the design was in fact applied to a smaller article of manufacture.  For the same reasons, the defendant also has the burden of proving the total profit on that smaller article of manufacture.  Both issues are for the jury.

Where a defendant meaningfully disputes the patentee's *prima facie* case by introducing evidence that the patented design was applied to an "article of manufacture" smaller than the product as sold, the jury should determine—as the statute directs—the thing to which the defendant applied the patented design for the purpose of sale.  As the Solicitor General explained,

1    the article of manufacture is the thing "that most fairly may be said to embody the defendant's

2    appropriation of the plaintiff's innovation."  Br. for United States as Amicus Curiae Supporting

3    Neither Party 9, *Samsung Elecs. Co. v. Apple Inc.*, No. 15-777, 2016 WL 3194218 (June 8, 2016)

4    ("U.S. Br.").  While no bright-line rule will dictate the result in all cases, several factors may

5    inform the inquiry, including:  how the defendant sells its asserted article of manufacture (*e.g.*,

6    separately or as part of a unitary product); the visual contribution of the patented design to the

7    product as a whole; the degree to which the asserted article is physically or conceptually distinct

8    from the product as a whole; and the defendant's aim in appropriating the patented design.

9         These principles make plain that this Court did not err in not giving Samsung's Proposed

10   Jury Instruction 42.1.  Apple overwhelmingly proved its *prima facie* case that Samsung applied

11   Apple's patented designs to its entire phones and proved Samsung's revenues on those phones.

12   Although Samsung offered evidence of ***costs*** that it believed should offset the proven revenue, no

13   Samsung witness testified that the recoverable profits should be further reduced because Samsung

14   applied Apple's patented designs to any "article" other than Samsung's infringing phones.

15   Having identified no evidence of any alternative "article of manufacture," Samsung also failed to

16   identify any evidence of an alternative "total profit" calculation on such an article.  The record is

17   entirely one-sided on these points.

18        Because no foundation in the evidence would have permitted a reasonable jury to find that

19   Samsung carried its burden of identifying any lesser "article of manufacture," let alone the "total

20   profit" on that article, there was no error in declining to give Samsung's Proposed Jury

21   Instruction 42.1 and Samsung has shown no cognizable prejudice in the Court's instructions.

22   Accordingly, no new trial is warranted.

23   **II.    RESPONSE TO THE COURT'S QUESTIONS**

24        **A.    Issue 1:  The "Article Of Manufacture" Is The Thing To Which The
             Defendant Applied The Patented Design For The Purpose Of Sale.**

25

26        Section 289 provides:  "Whoever during the term of a patent for a design, without license

27   of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of

28

1    manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to

2    which such design or colorable imitation has been applied shall be liable to the owner to the

3    extent of his total profit[.]"  The Supreme Court stated that an article of manufacture "is simply a

4    thing made by hand or machine" and may be "a product sold to a consumer as well as a

5    component of that product."  *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 435 (2016).

6    Accordingly, as § 289 makes clear, the article of manufacture is *the thing to which the defendant*

7    *applies the patented design for the purpose of sale*.  Or, as the Solicitor General put it, the article

8    of manufacture is *the thing "that most fairly may be said to embody the defendant's*

9    *appropriation of the plaintiff's innovation."*  U.S. Br. 9.[1]

10          As the party seeking damages, the plaintiff bears the initial burden of proving a *prima*

11   *facie* case identifying the article of manufacture for which it seeks profits.  The plaintiff meets

12   that burden by showing that the defendant applied the patented design to a product that was sold.

13   If the factfinder decides that the product as sold infringed the design patent (as happened here),

14   the product is then necessarily an "article of manufacture" to which the patented design has been

15   applied for the purpose of sale.  In some cases, the defendant will not challenge the point, and the

16   *prima facie* case will end the inquiry.  In other cases, the defendant may seek to reduce the

17   amount of recoverable profits by identifying some component of the infringing product as sold

18   and asserting that the identified component is the article of manufacture on which profits are

19   owed.  Resolving such a dispute will turn on the specific evidence in each case, but Apple

20   proposes that the following four factors may be considered:[2]

21          1.    *How the defendant sells its infringing product and accounts for its profits*
                 *on those sales, including whether the defendant typically sells its asserted*
22               *article of manufacture as part of a unified product or separately.*

23          This factor follows from the statutory language, which states that the defendant "sells or

24

───────────────────────────

25   [1]    Emphases are added unless otherwise noted.

26   [2]    Just as the factors that guide the reasonable royalty analysis set out in *Georgia-Pacific*
     *Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), must be adapted to the
27   particular circumstances of each case, *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201,
     1230-1232 (Fed. Cir. 2014), the factors listed below should be adapted as each case requires, and
28   the relevance of each factor may vary from case to case.

1    exposes for sale" the article of manufacture or "applies the patented design" to the article of

2    manufacture "for the purpose of sale."  35 U.S.C. § 289.  The factfinder should consider what

3    physical items the defendant sells and how the defendant earns and accounts for its revenues and

4    profits.  If the defendant typically sells its asserted article of manufacture as part of a unitary

5    product, the factfinder may reasonably infer that the defendant has applied the patented design to

6    the product as a whole.  Relatedly, if the defendant normally tracks unit sales, revenues, and

7    profits on the products as a whole (as opposed to on the asserted article of manufacture), that

8    further indicates that the defendant recognizes profits from applying the patented design to the

9    whole product.  For example, where a design patent covers only the "upper" portion of a shoe, the

10   entire shoe may fairly be considered the article of manufacture if the defendant only sells the

11   infringing shoes as a whole.  *See, e.g.*, *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447

12   (Fed. Cir. 1998) (noting that the defendants stipulated to the "amount … generated from sales of

13   the infringing shoes" where the design patent covered only the "upper" portion of the shoe).

14        However, if the defendant typically sells its asserted article of manufacture separately,

15   allows consumers to substitute different designs, or separately tracks unit sales, revenues, or

16   profits from individual components, that might suggest that the patented design was applied to an

17   article of manufacture smaller than the product as a whole.  For example, in the *Piano Cases*, the

18   Second Circuit noted that purchasers could customize or select different piano cases for the same

19   piano mechanism, such that the case "is sold separate and apart from the music-making

20   apparatus."  *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 904 (2d Cir. 1915) ("*Piano I*").

21        2.    *The visual contribution of the patented design to the product as a whole,*
              *including whether the claimed design gives distinctive appearance to the*
22            *product as a whole or only to the asserted article of manufacture.*

23        A patented design "gives a peculiar or distinctive appearance to the manufacture, or article

24   to which it may be applied."  *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 525 (1872).  Thus,

25   the factfinder should seek to identify the thing that derives its distinctive appearance from

26   application of the patented design, keeping in mind that the design may be applied to "***any*** article

27   of manufacture," 35 U.S.C. § 289.  As the Solicitor General stated, "if the design is a significant

28

attribute of the entire product, affecting the appearance of the product as a whole, that fact might suggest that the 'article' should be the product." U.S. Br. 28.  Conversely, where the design does not significantly contribute to the product's overall appearance, that might suggest that the relevant article of manufacture is a smaller component.

For example, if a defendant applies a patented design for the body of a car (*e.g.*, the shape of a Volkswagen Beetle), a factfinder may reasonably infer that the article of manufacture is the entire car, because the body's distinctive design contributes significantly to the car's overall appearance.  *See* U.S. Br. 26.  By contrast, a reasonable factfinder would be unlikely to conclude, for example, that a patented cupholder design made a substantial visual contribution to the entire car's appearance, or that a patented refrigerator latch design entitled the patentee to all profits on the refrigerator.  *See Young v. Grand Rapids Refrigerator Co.*, 268 F. 966, 974 (6th Cir. 1920) (where design patent covered refrigerator latch, "it [wa]s not seriously contended that all the profits from the refrigerator belonged to [the patentee]").

> 3.    *The degree to which the asserted article of manufacture is physically and conceptually distinct from the product as sold.*

Nearly every product will contain individual components that were, at least at one time, separate from the end product.  Thus, whether an identified component is the article of manufacture to which a patented design is applied cannot be answered simply by determining whether that component is *ever* physically or conceptually distinct from the product as a whole.  Rather, the factfinder should "consider whether the design is conceptually distinct from the product as a whole" (U.S. Br. 28) and "the extent to which various components can be physically separated from the product as a whole" when it is sold (*id.* 9).

Sometimes "the design is inseparable from the article to which it is attached, or of which it is a part."  *Piano I*, 222 F. at 904.  A design for the body of a shoe, for instance, may be conceived of holistically as part of the entire shoe such that the shoe body cannot be separated from the shoe, either physically or conceptually.  *See Nike*, 138 F.3d at 1442 ("the article[s] bearing the [patented] design" were the whole athletic shoes, where the patented design focused

on the shoe "upper" and did not include the sole). However, there are other instances where the patented design is applied to a component (*e.g.*, the piano case) that is both physically and conceptually distinct from the product as a whole (*e.g.*, the piano). *See Piano I*, 222 F. at 903-904 (finding the case was the relevant article of manufacture, where a consumer "may have [a] piano placed in any one of several cases dealt in by the maker").

4.     The defendant's reasons for appropriating the patented design, including whether the defendant did so in an effort to replicate a product as a whole.

Congress understood that design drives sales in a competitive marketplace where many products have similar functions and features. 18 Cong. Rec. 824, 834 (Jan. 20, 1887) ("[I]t is the design that sells the article, and so that makes it possible to realize any profit at all."). While inadvertent design patent infringement is theoretically possible, most design patent infringement involves deliberate appropriation.[3] Accordingly, the factfinder may consider **why** the defendant decided to appropriate the patented design. For example, if the defendant intentionally copied the patented design (*e.g.*, the design for the body of a car) to make a product (*e.g.*, a car) that resembles the patentee's product—and, in fact, profited from infringing sales of that entire product—that would support a finding that the article is the entire product. On the other hand, if the defendant copied the design of only an insignificant component of a product (*e.g.*, a cupholder in a car, a latch on a refrigerator) for reasons other than imitating the patentee's entire product, that may indicate that the article is only the copied component rather than the entire product.

*       *       *

Samsung and the Solicitor General have pointed to the design patent itself, including the scope of the claimed design, as a relevant factor in determining the article of manufacture. *See, e.g.*, Pet. Reply Br. 15, *Samsung*, No. 15-777, 2016 WL 4524542 (Aug. 29, 2016); U.S. Br. 27-

---

[3]     *E.g.*, *Lehnbeuter v. Holthaus*, 105 U.S. 94, 96 (1881) (accused design was "servile copy of" patented design); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993) (accused shoes were "almost a direct copy" of patented design (internal quotation marks omitted)); *Parker Sweeper Co. v. E.T. Rugg Co.*, 474 F.2d 950, 950 (6th Cir. 1973) (defendant "appeared … deliberately to have copied [plaintiff's] … successful product"); *Glen Raven Knitting Mills, Inc. v. Sanson Hosiery Mills, Inc.*, 189 F.2d 845, 847 (4th Cir. 1951) ("unabashed attempts to copy" patented design).

28.  Any consideration of the patent itself, however, should be carefully limited when inquiring into the article to which *the infringer* applied the patented design for at least two reasons.

First, while a design patent may claim only certain aspects of a product, there is a difference between the ***design claimed*** in the patent and the ***article of manufacture*** to which the design has been applied.  They are not coextensive:  the claimed design delineates the distinctive features that make up the innovative design, whereas an article of manufacture is a thing (like a phone) to which that design has been applied.  *See* 35 U.S.C. § 289 (distinguishing between an "article of manufacture" and the "patented design" applied to it).

Second, while the patent must identify ***an*** article of manufacture to which the design may be applied, 35 U.S.C. § 171; *see* 37 C.F.R. § 1.153; MPEP § 1503.01, the article described or illustrated in the patent does not limit the article to which the ***defendant*** may apply the patented design.  Rather, § 289 makes clear that the defendant may apply the patented design to, and profits may be recovered for, "***any*** article of manufacture."  35 U.S.C. § 289.  Accordingly, "[i]t is well settled that a design patent may be infringed by articles which are specifically different from that shown in the patent …. [T]he inventive concept of a design is not limited to the exact article which happens to be selected for illustration in [a] patent."  *Application of Rubinfield*, 270 F.2d 391, 393 (C.C.P.A. 1959); *see In re Schnell*, 46 F.2d 203, 209-210 (C.C.P.A. 1931); U.S. Br. 28 ("[T]he factfinder should not treat the patent's designation of the article as conclusive.").  Thus, while the factfinder might consult the patent to understand the claimed design, the patent does not determine the article to which ***the infringer has applied*** the patented design.

## B.    Issue 2:  Identifying The Article Of Manufacture Is A Question Of Fact To Be Decided By A Jury When Disputed.

Identifying the article of manufacture to which the defendant has applied the patented design is a question of fact that, if materially disputed, is for the jury.  If the defendant comes forward with sufficient evidence that the article of manufacture is something less than the entire infringing product, then resolving the dispute requires—as enumerated in the factors discussed above—considering "the relation to the business whole of the part embodying the patent, and that

1    relation must be considered from all viewpoints, technical, mechanical, popular, and

2    commercial." *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 81 (2d Cir. 1916).  These

3    "[c]ontext-specific judgments about the relationship of the design to the article as whole … are

4    quintessentially factual in nature."  U.S. Br. 29.

5        Treating the article of manufacture issue as a jury question accords with the Supreme

6    Court's recognition that it is the first "step[]" in "[a]rriving at a damages award under § 289."

7    *Samsung*, 137 S. Ct. at 434.  It is well-established that the jury is responsible for determining

8    damages in design patent cases.  *See, e.g.*, *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d

9    1277, 1283-1284 (Fed. Cir. 2002) (infringer's profits for design patent infringement); *Braun Inc.*

10   *v. Dynamics Corp. of Am.*, 975 F.2d 815, 818 (Fed. Cir. 1992) (same).[4]

11        Besides, it would be impractical to take a disputed part of the § 289 inquiry away from the

12   jury.  As occurred here, the jury determines (1) whether an accused product infringes; (2) the

13   amount of the "total profit" under § 289; and (3) the amount of lost profits or a reasonable royalty

14   under 35 U.S.C. § 284, if applicable.  The plaintiff might even present alternative damages

15   theories under § 284 and § 289 for the same acts of infringement, depending on the

16   circumstances.  It would be bizarre to carve out a small piece of one of these inquiries—

17   identifying the article of manufacture—while committing the rest to the jury.

18        Indeed, Samsung has already conceded that the jury should determine the article of

19   manufacture.  Samsung urged on appeal that this Court gave incorrect ***jury instructions*** on the

20   issue, not that the Court should have determined the article of manufacture in the first instance.

---

22   [4]      Additionally, "[t]reating the identification of the relevant 'article of manufacture' as a jury
23   question is consistent with the jury's role in determining design-patent infringement[.]"  U.S. Br.
     30.  To determine infringement, the jury compares the patented and accused designs, assessing
24   whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, …
     the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it
25   to be the other."  *Gorham*, 81 U.S. (14 Wall.) at 528; *see also* Dkt. 1903 at 63 (jury instruction
     based on *Gorham*).  As with that "ordinary observer" test, the factors that guide the article of
26   manufacture inquiry are context-specific and will often include judgments about how ordinary
     persons conceive of products.  It has long been understood "across a variety of doctrinal contexts
27   that, when the relevant question is how an ordinary person or community would make an
     assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive
28   answer."  *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 911 (2015).

1    *See* Samsung CAFC Br. 38-39; Samsung CAFC Reply Br. 16-18; Dkt. 1694 at 151.  As this

2    Court noted, Samsung objected to the failure to give Proposed Jury Instruction 42.1 "on the

3    grounds that ***the jury should be allowed*** to determine that the article of manufacture was less than

4    the entirety of each infringing Samsung phone."  Dkt. 3509 at 16.  Likewise, Samsung's objection

5    to Final Jury Instruction 54 never suggested that the article of manufacture question should be

6    taken away from the jury—rather, Samsung offered only a "general objection."  *Id.* at 17.

7    **C.    Issues 3 & 4:  After The Plaintiff Makes Out A *Prima Facie* Case Under**
8    **§ 289, The Burden Shifts To The Defendant To Prove An Article Of**
     **Manufacture Less Than The Product As Sold And To Prove Its "Total Profit"**
9    **On That Article.[5]**

10        As the party seeking damages, a design patent plaintiff bears the initial burden of proving

11   that the defendant applied the patented design to a product that was sold and further proving

12   revenues from the sale—as Apple did here.[6]  At that point, the plaintiff has made out a *prima*

13   *facie* case under § 289 by identifying both an "article of manufacture" to which the patented

14   design has been applied and the "total profit" on that article.  The burden then shifts to the

15   defendant, if it so chooses, to prove that the damages should be reduced by, for example,

16   deducting allowable costs.  That is precisely the burden-shifting framework this Court employed

17   at trial.  *See* Dkt. 1903 at 72 (2012 Trial) (instructing jury that "Apple has the burden of proving

18   the infringing defendant's gross revenue by a preponderance of the evidence….  Samsung has the

19   burden of proving the deductible expenses."); Dkt. 2784 at 39 (2013 Trial) (same).

20        The defendant may also try to reduce damages by showing that it applied the patented

21   design to an article of manufacture less than the infringing product as sold.  As the Solicitor

22   General explained, "once the plaintiff has shown that the defendant profited by exploiting a

23
     ---
24   [5]      As the Supreme Court noted, identifying the "article of manufacture" and calculating the
     "total profit" on that article are separate steps under § 289.  *Samsung*, 137 S. Ct. at 434.  Apple
     addresses both steps together in this section because the reasons for placing the burden on the
25   defendant when it advocates for a smaller article of manufacture are the same for each step.
26   [6]      Although Apple had the burden to prove only Samsung's revenues, Apple actually
     demonstrated Samsung's total profit by presenting evidence of Samsung's revenues on the
27   infringing phones minus the cost of goods sold.  *E.g.*, Dkt. 1839 at 2041-2045; Dkt. 2840 at 639;
     PX25A1; PX25F.  Samsung then sought to reduce the amount of that "total profit" by asserting
28   that additional costs should be deducted.  *E.g.*, Dkt. 2842 at 1014-1015; DX676; DX753.

1    product containing the plaintiff's patented design, the defendant should be required to identify,

2    through the introduction of admissible evidence, the component that the defendant asserts is the

3    article to which the design was applied."  U.S. Br. 31.  Several reasons support requiring the

4    defendant to shoulder the burden of proving that the article of manufacture is something smaller

5    than the infringing product and of proving the amount of the "total profit" on that smaller article;

6    indeed, they mirror the reasons for requiring the defendant to prove deductible costs.

7         *First*, courts often assign the burden of proof on an issue to the party with superior

8    knowledge of or access to the relevant facts.  *E.g.*, *Concrete Pipe & Prod. of Cal., Inc. v. Constr.*

9    *Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 626 (1993) ("It is indeed entirely sensible to

10   burden the party more likely to have information relevant to the facts about [a disputed issue].

11   Such was the rule at common law."); *Campbell v. United States*, 365 U.S. 85, 96 (1961) ("[T]he

12   ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of

13   establishing facts peculiarly within the knowledge of his adversary."); *Selma, R. & D.R. Co. v.*

14   *United States*, 139 U.S. 560, 568 (1891) ("[T]he burden of proof lies on the person who wishes to

15   support his case by a particular fact which lies more peculiarly within his knowledge, or of which

16   he is supposed to be cognizant."); *Lindahl v. Office of Pers. Mgmt.*, 776 F.2d 276, 280 (Fed. Cir.

17   1985) ("The party with the best knowledge normally sustains the burden.").[7]

18         In a design patent case, the defendant—as the party who applied the patented design to an

19   infringing product—is better positioned to identify any component less than the product as sold to

20   which it believes the patented design has been applied.  Indeed, manufacturers are often assigned

21   the burden of persuasion as to facts about product design "because the considerations which

22   influenced the design of [a] product are peculiarly within [their] knowledge."  *Michery v. Ford*

23   *Motor Co.*, 650 F. App'x 338, 341 (9th Cir. 2016) (internal quotation marks omitted); *see also*

24   U.S. Br. 31 ("The defendant, as the manufacturer or seller of the accused product, has superior

25

---

26   [7]     *See also* Wright & Miller, 21B Fed. Prac. & Proc. Evid. § 5122 (2d ed. 2005) (In

27   allocating burdens of proof, "courts look to see whether one party has superior access to the
evidence needed to prove the fact.  If so, then that party must bear the burdens of proof.");
2 McCormick on Evid. § 337 (7th ed. 2013) ("[W]here the facts with regard to an issue lie

28   peculiarly in the knowledge of a party, that party has the burden of proving the issue.").

1    knowledge of the identity of the product's components, as well as of some of the factors relevant

2    to the 'article' determination[.]"); *Erving Paper Mills v. Hudson-Sharp Mach. Co.*, 332 F.2d 674,

3    678 (7th Cir. 1964) (manufacturer has burden because it "ha[s] peculiar knowledge, unavailable

4    to [the plaintiff]" about the product); *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 455 (Cal. 1978)

5    (where "most of the evidentiary matters which may be relevant to the determination of the

6    adequacy of a product's design … and [the dispute] involve[s] technical matters peculiarly within

7    the knowledge of the manufacturer," then "the burden should appropriately shift to the defendant

8    to prove" non-defectiveness after the plaintiff has made a *prima facie* showing of causation).

9            Similarly, the seller of an infringing product is also in a better position to prove the "total

10   profit" on any article of manufacture that is less than the product as sold.  Neither the revenues

11   nor profits associated with a component of the infringing product are likely to be known to the

12   plaintiff, especially where the component is sold only as part of a unitary product; the plaintiff

13   may not even know whether separate records are kept.  The defendant is better equipped to

14   provide information about the revenues, profits, and costs associated with its asserted article of

15   manufacture, and thus should fairly be assigned the burden of demonstrating the "total profit"

16   associated with any component it contends is the article of manufacture.  *See In re Beckwith*, 203

17   F. 45, 48-49 (7th Cir. 1913) ("[A]scertainment of the profits attributable to the infringement

18   requires such discovery, not alone of the gross sales, but of all items of cost entering into the

19   production and sale, which are presumptively within the knowledge or means of information

20   possessed by the infringing manufacturer.").

21           *Second*, shifting the burden to the defendant is consistent with § 289's disgorgement-like

22   remedy.  *See Nike*, 138 F.3d at 1448 (§ 289 "requires the disgorgement of the infringers' profits

23   to the patent holder, such that the infringers retain no profit from their wrong"); *see also* Samsung

24   Pet. for Cert. 33 (arguing that § 289 is to be interpreted in accordance with disgorgement

25   principles); U.S. Br. 10, 31 (describing burden-shifting regime for § 289's disgorgement remedy).

26           Disgorgement remedies typically require the defendant to shoulder the burden of

27   persuasion regarding any reduction of recovery below the plaintiff's *prima facie* showing.  In

28

1    securities cases, for instance, a plaintiff seeking disgorgement of profits need only prove a

2    "reasonable approximation of profits causally connected to the violation."  *SEC v. First City Fin.*

3    *Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989); *see, e.g.*, *SEC v. Platforms Wireless Int'l Corp.*,

4    617 F.3d 1072, 1096 (9th Cir. 2010) (explaining that "[t]he amount of disgorgement should

5    include all gains flowing from the illegal activities" and therefore "need be only a reasonable

6    approximation of profits causally connected to the violation" (citations and internal quotation

7    marks omitted)); Restatement (Third) of Restitution and Unjust Enrichment § 51 (2011) (under

8    disgorgement scheme, the plaintiff bears the initial "burden of producing evidence permitting at

9    least a reasonable approximation of the amount of the wrongful gain").[8]

10        Once the plaintiff in a securities action proves a reasonable approximation of total profits

11   gained from the illegal activity, it has proved a *prima facie* case that, if left unrebutted, meets its

12   "ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount

13   of unjust enrichment."  *First City Fin.*, 890 F.2d at 1232.  The defendant then "bears the burden

14   of establishing" facts that reduce the plaintiff's sum of disgorgement.  *SEC v. Bilzerian*, 29 F.3d

15   689, 697 (D.C. Cir. 1994) ("[a]bsent proof of this sort," the plaintiff's *prima facie* case stands);

16   *see also SEC v. Whittemore*, 744 F. Supp. 2d 1, 8 (D.D.C. 2010) (after the claimant has made a

17   "reasonable approximation of profits," "the ***burden of proof shifts*** to the defendants to rebut the

18   presumption that all profits gained while the defendants were in violation of the law constituted

19   ill-gotten gains"), *aff'd*, 659 F.3d 1 (D.C. Cir. 2011); *SEC v. Halek*, 537 F. App'x 576, 581 (5th

20   Cir. 2013) (plaintiff "carries the initial burden to prove that the amount of disgorgement is a

21   reasonable approximation of profits connected to the violation … the burden then shifts to

22   defendant ***to prove*** that the amount is unreasonable").  This burden-shifting approach is

23   appropriate because "the risk of uncertainty in calculating disgorgement should fall upon the

24

---

25   [8]      The disgorgement remedy in securities cases is derived from the federal courts' "inherent
26   equity power to grant relief ancillary to an injunction."  *Kokesh v. SEC*, 137 S. Ct. 1635, 1640
     (2017).  By contrast, § 289 is a legal rule to provide "recovery for infringement of design
27   patents."  18 Cong. Rec. at 834.  Thus, while the burden-shifting approach in securities cases
     provides a useful framework for understanding the burden-shifting under § 289, the framework is
28   applied by the judge in securities cases and by the jury in design patent cases.

1   wrongdoer whose illegal conduct created that uncertainty." *SEC v. Wyly*, 56 F. Supp. 3d 260,

2   264-265 (S.D.N.Y. 2014); *accord SEC v. Hughes*, 124 F.3d 449, 455 (3d Cir. 1997) ("[i]mposing

3   the burden upon the defendant of proving the propriety [of the disgorgement amount] is

4   appropriate and reasonable" because the wrongdoer is in a superior position to identify relevant

5   facts about its ill-gotten gains).[9]

6          These burden-shifting principles for disgorgement cases readily apply to § 289, which

7   similarly aims to identify (and disgorge) the defendant's ill-gotten gains.  A design patent plaintiff

8   establishes a complete claim for relief under § 289, as Apple did here, by proving:  (1) that the

9   defendant sold a product incorporating the patented design; and (2) the defendant's revenues on

10  the sales of those infringing products.  *See* 35 U.S.C. § 289; Restatement (Third) of Restitution

11  and Unjust Enrichment § 51 (2011) ("[T]he claimant's burden of proof … is ordinarily met as

12  soon as the claimant presents a coherent theory of recovery in unjust enrichment.").[10]  Once the

13  plaintiff has made out a *prima facie* case, the burden shifts to the defendant to prove that the

14  "total profit" under § 289 should be some lesser amount.  The defendant may do so by

15  demonstrating deductible costs or by showing that the article of manufacture is something smaller

16  than the entire infringing product and proving the amount of the "total profit" on that smaller

17  article.  If the defendant fails to come forward with evidence identifying the smaller article of

18  manufacture and the "total profit" associated with it, then the plaintiff's calculation stands.

19         ***Third***, courts (including this Court, *see supra* p. 9) have already followed this burden-

20  shifting approach by requiring defendants to prove any deductible costs they believe reduce their

21

22  [9]     As with any burden-shifting regime, if the defendant fails to meet its burden, the
    plaintiff's case stands.  *See Liriano v. Hobart Corp.*, 170 F.3d 264, 272 (2d Cir. 1999) ("[S]ince

23  the *prima facie* case was not rebutted, it suffices.").  Accordingly, where securities defendants
    "fail[] to rebut" the SEC's approximation of profits, the approximation stands as the measure of

24  disgorgement.  *See, e.g.*, *SEC v. Fujinaga*, 2017 WL 2465002, at *2 (9th Cir. June 7, 2017).

25  [10]    Similar rules exist in contract law.  In an action for breach, "[a]ll a plaintiff must establish
    is (1) that the defendant caused the breach and (2) that damages resulted from that beach."  *Boyce*

26  *v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 392 (2d Cir. 2006).  "The plaintiff need only show
    a 'stable foundation for a reasonable estimate' of damages to which he is entitled[.]"  *Id.* (citation

27  omitted).  After that burden is met, "the breaching party (read: 'wrongdoer') … must shoulder the

28  burden of the uncertainty regarding the amount of damages."  *Id.*

"total profit" under § 289.  *See, e.g.*, *In re AI Realty Mktg. of N.Y., Inc.*, 293 B.R. 586, 618 (Bankr. S.D.N.Y. 2003) ("Once a patent owner establishes the amount of infringing sales, the burden shifts to the infringer to demonstrate the nature and amount of the costs that should be considered in calculating its 'total profits,' as well as their relationship to the infringing product."), *aff'd in relevant part sub nom. Sunbeam Prod., Inc. v. Wing Shing Prod. (BVI) Ltd.*, 311 B.R. 378 (S.D.N.Y. 2004); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) (observing that the purpose of § 289 is to prevent unjust enrichment and thus "[t]he burden of establishing the nature and amount of [deductions from the sum of disgorgement] is on the defendants").  The burden of lessening the damages recoverable under § 289 by identifying an "article of manufacture" smaller than the entire product as sold and by calculating the "total profit" on that smaller article of manufacture should be no different.[11]

### D.    Issue 5:  Samsung's Infringing Phones Are The Relevant Articles Of Manufacture For All Three Design Patents.

The relevant articles of manufacture for the D'677, D'087, and D'305 patents are Samsung's infringing phones.  Apple proved its *prima facie* case by showing that each phone is: (1) an article of manufacture (*i.e.*, "a thing made by hand or machine"); (2) that Samsung sold; and (3) to which Samsung applied Apple's patented designs (demonstrated by the jury's infringement verdict).  That has been Apple's position from the outset.  Dkt. 1384-27 at 4 (Apple interrogatory response seeking Samsung's profits on its infringing phones).  Indeed, Samsung concedes (Dkt. 3491 at 2) that Apple made clear in its trial brief and Rule 16 pretrial statement that Apple was seeking Samsung's profits on the entire phones, not any smaller components thereof.  And as the Court has acknowledged, at no point during discovery did Samsung identify

---

[11]     At a minimum, the defendant must provide evidence permitting the factfinder to reach a lower disgorgement figure.  *See, e.g.*, *Beckwith*, 203 F. at 48-49 (infringer must produce discovery as to profits because "all items of cost entering into the production and sale … are presumptively within the knowledge or means of information possessed by the infringing manufacturer").  Although Samsung produced evidence of its claimed deductible costs, Samsung produced no competent evidence regarding its profits on any alternative articles of manufacture; that by itself should preclude Samsung from asserting that the § 289 award should be some lower profits figure based on an alternative article of manufacture.  *See infra* pp. 21-22.

any alternative article of manufacture.  Dkt. 3509 at 8.  The case thus proceeded to trial on the only theory it could have:  that Apple sought and was entitled to recover Samsung's "total profit" on the phones to which Samsung applied Apple's patented designs.  As discussed below, the record fully supports that finding and is devoid of evidence supporting an alternative conclusion.[12]

### E.      Issue 6:  The Record Only Supports A Finding That The Relevant Articles Of Manufacture For All Three Design Patents Are Samsung's Infringing Phones.

#### 1.      The evidence shows that the infringing phones were the articles to which Samsung applied the patented designs for the purpose of sale.

The record is replete with evidence that Samsung's infringing phones, and not any components thereof, are the relevant articles of manufacture.  Apple's design experts Peter Bressler and Susan Kare testified that Samsung applied the patented designs to the infringing phones.  *E.g.*, Dkt. 1611 at 1049 ("[T]he ***design of this phone*** would be considered substantially the same as the design of the '087 and '677 patents by an ordinary observer."); *id.* at 1057 (referring to "the ***design or appearance of these [infringing] phones***"); *id.* at 1055 (referring to "the ***design of the Galaxy S 4G***"); *id.* at 1150 ("[T]he ordinary observer should be getting an overall impression of what the ***design of the phone*** is[.]"); Dkt. 1612 at 1376 ("This is another ***Samsung phone*** called the Captivate where I found similarly that the ***overall visual impression*** was substantially similar to the D'305[.]"); *id.* at 1377-1379 (same for other infringing phones).  Samsung presented no contradictory testimony and no expert testimony on the point.  And the jury's infringement findings conclusively establish that Samsung "applied" Apple's patented designs to Samsung's phones.  Dkt. 1931 at 6-7 (verdict form identifying each infringing phone).

While Apple made out its *prima facie* case that the articles of manufacture are the infringing phones (and calculated the "total profit" on those phones), Samsung never identified or came forward with evidence of any smaller article of manufacture (let alone the "total profit" on a smaller article) and thus cannot satisfy its burden of proving any article of manufacture other than

---

[12]     It is still unclear precisely what Samsung contends the "article of manufacture" is. Samsung did not identify any components as the relevant articles during discovery or for the jury. On appeal and remand, Samsung's asserted articles changed repeatedly.  *See* Dkt. 3503 at 4 n.3.

the infringing phones.  Accordingly, the record only supports the conclusion that the relevant

articles of manufacture for each design patent are the infringing phones.  Reviewing the record in

light of the relevant factors (*see supra* pp. 3-6) only confirms that.

*First*, the only articles Samsung sold were the infringing phones, which were sold as

unitary products.  Indeed, when STA's Vice-President of Finance and Operations was asked what

his company did, he said it "*sells handsets*."  Dkt. 2842 at 953; *see also* Dkt. 1842 at 3009-3010

(similar); Dkt. 1610 at 792 (agreeing STA "sells mobile devices"); *id.* at 794 (similar).  All

financial records admitted at trial similarly show that Samsung sold phones and not any smaller

components, and that Samsung accounted for its revenues and profits from the sales of phones

and not from sales of any smaller components.  *See* DX676 (Samsung financials); Dkt. 1842 at

3005 (DX676 generated by "extract[ing] the data model by model"); Dkt. 2842 at 968 (DX676

"shows revenue, sales, and costs *for products*").

Samsung adduced no evidence that it separately sold any component that it may now

contend is the relevant article of manufacture.[13]  There is no evidence that Samsung ever

separately sold phone casings, bezels, front faces, or graphical user interfaces anywhere, to

anyone, at any time.  In fact, the record contains no evidence that *any* component of Samsung's

phones could be purchased separately by consumers (*e.g.*, as a replacement part); nor is there any

evidence that consumers could select or replace any individual phone components by, for

example, mixing and matching casings, bezels, front faces, or graphical user interfaces in a

manner that might suggest that those components could be separate articles of manufacture.

*Second*, the patented designs made a prominent visual contribution to the phones' overall

appearance.  The patented designs, which claim features related to the shape, rounded corners,

end-to-end glass front face, bezel, and grid of colorful icons, were prominent aspects of the

phones' overall design and contributed to the ultimate "look and feel" of the infringing phones.

The jury could observe this from the phones themselves, which were in evidence, and as shown in

---

[13]      Evidence that Samsung sold processors to Apple and others is irrelevant.  *E.g.*, Dkt. 2843
at 1141-1142.  Samsung does not and could not contend that those internal hardware components
alone are the "article[s] of manufacture" to which Samsung applied the patented designs.

Apple's Closing Slide 9:



The record also shows that members of the public, including consumers and the press, focused on features of all three patented designs as indicators of the striking similarity between the **overall appearance** of Samsung's **phones** and the design of the iPhone, not similarity between only some portion of Samsung's phones and a portion of the design of the iPhone. PX6; PX174. For example, a *Wired* article headlined "Samsung Vibrant Rips Off iPhone 3G Design" compared those phones and concluded that "[t]he Vibrant's industrial design is shockingly similar to the iPhone 3G," identifying "[t]he rounded curves at the corners, the candybar shape, the glossy, black finish[,] the chrome-colored metallic border" and the look of the "square icons" as notable features in common. PX174. A *PCWorld* article about a Samsung Galaxy S remarked that "[t]he design is actually very iPhone 3GS-like with an all black, shiny plastic body and minimal buttons on the phone's face." PX6.1. Another article stated: "Samsung's Galaxy S Vibrant is one sleek looking phone. In fact when I first unboxed it at the office many walked by and asked if it was an iPhone." PX6.3. These articles and others demonstrate that the use of Apple's patented designs influenced the appearance of Samsung's phones in their entirety. *See, e.g.*, PX6.4 ("[The Mesmerize's] sleek and streamlined design feels very reminiscent of the iPhone 3GS."; "If the Samsung Galaxy S II looks familiar it's because it resembles Apple's popular iPhone 4.").

**Third**, the evidence shows that Samsung's infringing phones are unitary objects and that the various components Samsung has belatedly suggested as articles of manufacture are neither

1   physically nor conceptually distinct from the phones as a whole.  The infringing phones

2   themselves, which the jury had during deliberations, showed that the phones were sold as unified

3   products, not intended to be separated into components by consumers.  Samsung's own witnesses

4   made clear that Samsung conceives of design at the entire-phone level, not at any component

5   level.  One Samsung executive testified that he used the term "industrial design" to mean "the

6   outer physical appearance *of the device*" and indicated that he "spoke to the actual designers who

7   were responsible for the ***design of those products*** that were at issue."  Dkt. 1610 at 842, 855; *see*

8   Dkt. 1611 at 950 (comparing designs of phones as a whole); *id.* at 951 (referring to the "physical

9   design *of the products*").  Apple's two design experts also regularly referred to the design of

10  Samsung ***phones*** as matching or infringing the patented designs.  *E.g.*, *supra* p. 15; Dkt. 1611 at

11  1008 (Bressler: "[T]here are a number of Samsung phones … that are substantially the same as

12  the designs in those patents."); Dkt. 1612 at 1377 (Kare: "This is the Continuum.  This is another

13  one of the group of phones that I thought was substantially similar to the D'305."); *id.* at 1377-

14  1379 (same for eight other phones).  And the press reports cited above reflect that third parties

15  were struck by the similarity of the design of the infringing ***phones*** to Apple's iPhone.  PX6;

16  PX174 ("The Vibrant's industrial design is shockingly similar to the iPhone 3G[.]").  Thus, to

17  Samsung employees, experts, and lay observers, the infringing designs of the phones are

18  synonymous with the devices themselves.

19       And as the jury heard, Apple took the same view.  When Apple first approached Samsung

20  to request that it stop copying, it was the design of the Galaxy S II product ***as a whole*** (and its

21  close similarity to the iPhone) that Apple found offensive (PX52.17):

22

23

24

25

26

27

28

*Samsung Copying iPhone*

 

Apple iPhone 4                    Samsung Galaxy S

Upon seeing a Samsung Galaxy S phone, Apple executive Phil Schiller testified that his "first thought was, wow, they've completely copied the i[P]hone."  Dkt. 2842 at 850; *see* Dkt. 1547 at 510 (Schiller:  it was "plain to see" that Apple's designs had been "ripped off" by Samsung).

   ***Fourth***, the evidence shows that Samsung copied Apple's patented designs in an effort to replicate the competing iPhone and to sell more phones, not to sell only components of phones. Internal Samsung documents noted that the iPhone had "set the standard" for "[s]creen-centric design," that the iPhone's "strong, screen-centric design ha[d] come to equal what's on trend and cool for many consumers," *see* PX36.31, and that its "[e]asy and intuitive [user interface]" and "[b]eautiful design" were "factors that could make iPhone a success," *see* PX34.16 (capitalization altered).  Understanding that "[t]he look and feel of a product matters most," and faced with feedback to "make something like the iPhone," Samsung did precisely that.  PX40.2, .3; *see also* PX40.5 (Samsung executives recognizing that Samsung faced a "crisis of design"); PX44.122, .127 (comparing the iPhone and Samsung's GT-i9000 side-by-side and including "[d]irections for improvement" to make Samsung's graphical user interface and icons more like Apple's).

   Samsung's strategy worked.  A depiction of Samsung's market share provided the jury with "a rather dramatic demonstration" that "Samsung was losing market share during the period prior to 2010" and that "[a]fter they introduced the first accused phone, Samsung's market share took an abrupt upward swing and … continued … to advance dramatically[.]"  PDX34B.9; Dkt. 1839 at 2044-2045.  In short, by applying Apple's patented designs to its ***phones*** in order to

1   replicate its competitor's product, Samsung profited from increased sales of those **phones**.

2              **2.**           **The jury could not have found any smaller article of manufacture.**

3          In prior briefing, Samsung pointed to three categories of evidence as supposedly showing

4   that the jury could have found the relevant articles of manufacture to be something less than the

5   entire phones.  *See* Dkt. 3509 at 29-30 (summarizing cited evidence).  As the Court noted,

6   however, Samsung "never raised" "the issue of the proper article of manufacture … during

7   discovery," and "[a]t trial, Samsung did not offer a damages theory based on an article of

8   manufacture that is less than the entirety of Samsung's infringing phones."  Dkt. 3509 at 8, 30.

9   Samsung therefore failed to satisfy its burden to identify and prove that the relevant articles of

10  manufacture are anything smaller than the infringing phones, and Apple's *prima facie* case

11  demonstrating that the infringing phones are the relevant articles of manufacture should stand.

12  But even if considered, the scattered pieces of evidence identified by Samsung are insufficient to

13  support a finding of any article of manufacture less than the infringing phones.

14         **First**, the design patents themselves do not suggest that the articles of manufacture for

15  § 289 purposes are only components of the infringing phones.  As discussed above, the scope of

16  the claimed design does not define the scope of the thing—the "article"—to which the design is

17  applied.  And a design patent need only describe an example of an article of manufacture; it does

18  not limit the articles of manufacture to which the **defendant** may apply the infringing design for

19  the purpose of sale—which is the relevant inquiry under § 289.  *See supra* p. 7.[14]

20         **Second**, Samsung points to testimony and evidence, such as a tear-down report,

21  purporting to show that Samsung's phones could be separated into component parts.  All that

22  shows is that the phones were made from multiple components, which is true of virtually all

23  products.  And while it may be another attempt by Samsung to argue apportionment, it says

24  nothing about the relevant article of manufacture under § 289.  The cited evidence in no way

25  suggests that Samsung sells only various components of the infringing phones; on the contrary, as

26

27          [14]     The D'677 and D'087 patents describe an entire phone as the exemplary article of

28  manufacture to which the patented designs are applied.  *See* JX1041; JX1043.

discussed above (pp. 15-19), *all* of the evidence showed that Samsung sells and consumers use the infringing phones in their entirety.  Further, much of the evidence cited by Samsung in this category is actually about Apple's iPhone, which has nothing to do with identifying the article of manufacture to which *Samsung* applied the patented designs for profit.

*Third*, Samsung referred to "consumer survey" evidence discussing its phones' outer shape.  Even that evidence (which is actually a summary of news articles) shows that consumers viewed Apple's patented designs as important to the overall visual appearance of Samsung's phones, not just components thereof.  *E.g.*, PX6 (citing patented design features as drivers of the overall similarity between Samsung phones and Apple's iPhone).  Indeed, as discussed above (pp. 15-18), experts and lay observers overwhelmingly viewed the infringing designs as synonymous with Samsung's phones themselves.

\*   \*   \*

The evidence compels the conclusion that Samsung intentionally applied Apple's patented designs to its infringing phones for the purpose of sale.  More importantly, the evidence could ***not*** support a finding that the relevant articles of manufacture were anything else—indeed, Samsung never even identified for the jury what that alternative article might be.  For that reason, and as explained further below (pp. 23-25), the Court's refusal to give Samsung's Proposed Jury Instruction 42.1 was not erroneous and, in any event, caused Samsung no prejudice.

### F.    Issue 7:  There Is No Record Evidence Supporting The "Total Profit" For Any Article Other Than Samsung's Infringing Phones.

The record plainly supports a calculation of Samsung's profits from the infringing phones; indeed, that is the ***only*** award of profits the record supports, as neither side offered any other measure of § 289 damages.  *See* PX25A1 at 2-6 & PX25F at 2-6 (Apple experts' summary of profits on phones); DX781 at 1-6 (Samsung expert's summary of profits on phones); Dkt. 1839 at 2040-2041, 2052-2053; Dkt. 1842 at 3021-3022, 3031; Dkt. 2840 at 623-625, 633-638; Dkt. 2841 at 1017-1018, 1024.  In fact, the parties' experts "agree[d] completely on what total revenues are" for the infringing phones (Dkt. 2841 at 1014); the only dispute was over deductible costs.

1    By contrast, there is *no* record evidence of Samsung's profits on any other article of

2   manufacture.  Samsung conceded before the Supreme Court that "the record contains no proof of

3   total profit from" the smartphone components it claims are the relevant articles of manufacture.

4   Pet. Br. 54, *Samsung*, No. 15-777, 2016 WL 6599922 (June 1, 2016) (capitalization altered).  This

5   Court likewise recognized that "Samsung did not offer a damages theory based on an article of

6   manufacture that is less than the entirety of Samsung's infringing phones."  Dkt. 3509 at 30.  All

7   the Samsung financial data in the record reports revenues, costs, and profits for entire phones.

8   DX676; DX753; JX1500; PX28; PX180; Dkt. 1842 at 3005-3007.  And no witness, expert or

9   otherwise, testified that total profit could or should be calculated for any article other than the

10   products as sold, let alone informed the jury how to carry out those calculations.[15]

11    In sum, the evidence supports a determination of Samsung's "total profit" from the

12   infringing phones, but not of its profit from any other putative "article of manufacture."[16]  Thus,

13   regardless of the correct test for determining the relevant article of manufacture, and even if there

14   were evidence from which the jury could have concluded that the relevant articles of manufacture

15   were something other than the infringing phones, the Court was still right not to give Samsung's

16   Proposed Jury Instruction 42.1, because it had no foundation in the evidence.  *See* Dkt. 3509 at 30

17   (noting that, if Samsung had the burden to prove profits on a smaller article of manufacture, "a

18   lack of evidence of profits may have allowed the Court to exclude Proposed Jury Instruction

19   42.1").  Moreover, any error in rejecting Samsung's proposed instruction was not prejudicial;

20   Samsung's failure to give the jury any basis to calculate profits on a smaller article of

---

21

22   [15]    Samsung initially refused to produce any component-specific financial data and, after
being ordered by the Court to do so, produced only limited cost data for some components.  *See*
23   Dkt. 673 at 15; Dkt. 880 at 10-15.  Samsung never presented component evidence to the jury.  Even if it
had, the component-level cost data would not have allowed the jury to calculate profits on any
24   alternative articles of manufacture, since Samsung did not identify any alternative article of
manufacture and adduced no evidence of revenues associated with those components.
25   [16]    If the Court concludes that a new trial is required and that Apple had the burden to show
Samsung's total profit on something other than the infringing phones—even though Samsung
26   never gave notice that it would pursue such a theory or articulated what that "something" might
be—then the Court should reopen discovery on that issue.  It would be manifestly unfair to punish
27   Apple for not developing evidence on an issue that Samsung never raised until after discovery
closed.
28

1   manufacture makes it overwhelmingly likely that the jury would have reached the same result

2   even had it received Proposed Jury Instruction 42.1.  *See infra* pp. 24-25.

3   **III.    APPLYING THE ABOVE PRINCIPLES, NO NEW TRIAL IS WARRANTED.**

4          The above principles make plain that no new trial is required.  Declining to give

5   Samsung's Proposed Jury Instruction 42.1 was not error, and did not prejudice Samsung in any

6   event.  Apple made its *prima facie* case overwhelmingly, putting forth ample evidence of

7   Samsung applying the patented designs to its phones and of Samsung's total revenues (and profit)

8   from those phones.  Samsung never identified any alternative article of manufacture, and the

9   record cannot support a finding either of an alternative article or of Samsung's profit on such an

10  alternative.  Because Samsung failed to meet its burden to rebut Apple's *prima facie* case, the

11  Court did not err in excluding Proposed Jury Instruction 42.1.  *See* Dkt. 3509 at 30.

12         Even if the Court's exclusion of that instruction was erroneous, however, a new trial is not

13  warranted unless that alleged error prejudiced Samsung, and it clearly did not.  As a threshold

14  matter, Apple did not waive—and could not have waived—its argument that Samsung was not

15  prejudiced by the alleged instructional error.  *See* Dkt. 3509 at 31.  Showing prejudice is an

16  element of Samsung's demand for a new trial, which has been remanded in full to this Court with

17  no suggestion by the Federal Circuit or the Supreme Court that Apple waived the issue.  And the

18  Supreme Court has made clear that, in civil cases, "the party that seeks to have a judgment set

19  aside because of an erroneous ruling carries the burden of showing that prejudice resulted."

20  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (internal quotation marks omitted); *see also*

21  *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 852 (Fed. Cir. 2006) ("A party seeking to

22  alter a judgment based on erroneous jury instructions must establish that those instructions were

23  legally erroneous, and that the errors had prejudicial effect." (internal quotation marks omitted)).

24  In other words, regardless of what Apple argued on appeal, Samsung's new trial request depends

25  on **Samsung** showing prejudice, as the Federal Circuit recognized.  *See Apple Inc. v. Samsung*

26  *Elecs. Co.*, 786 F.3d 983, 999 (Fed. Cir. 2015) ("Samsung has failed to show prejudicial error in

27  the jury instructions as a whole that would warrant a new trial.").  Samsung's burden to show

28

1    prejudice has not changed simply because the matter has been remanded to this Court.

2          In any event, Apple has raised the issue at every stage.  On Samsung's initial appeal,

3    Apple argued that there was "no error, let alone prejudicial error" in the jury instructions

4    "warranting a new trial."  Apple Br. 88, *Apple Inc. v. Samsung Elecs. Co.*, No. 14-1335, 2014 WL

5    3909249 (Fed. Cir. July 28, 2014); *see id*. at 26 ("Jury instructions are reviewed de novo, but only

6    prejudicial error warrants a new trial.").  To the Supreme Court, Apple argued that Proposed Jury

7    Instruction 42.1 was "not supported by the evidence" because "the jury could reasonably

8    conclude only that the articles of manufacture were the entire phones."  Resp. Br. 44, *Samsung*,

9    No. 15-777, 2016 WL 4073686 (July 29, 2016).  Samsung, in reply, did not claim waiver;

10   instead, it engaged on the merits.  Pet. Reply Br. 20-22, *id.*, 2016 WL 4524542 (Aug. 29, 2016).

11   On remand to the Federal Circuit, Apple again argued that "there was no evidence from which the

12   jury could have calculated infringer's profits based on anything less than the entire infringing

13   phones."  Apple Statement in Sup. of Cont. Panel Review 15, No. 14-1335, 2016 WL 8222614

14   (Fed. Cir. Dec. 27, 2016).  Although Samsung then argued (for the first time) that Apple waived

15   the issue of prejudice, Samsung Statement in Sup. of Remand 12, *id.*, 2017 WL 514460 (Jan. 12,

16   2017), the Federal Circuit's order nowhere suggested that prejudice was off-limits on remand to

17   this Court.  If anything, by engaging with the merits of Apple's evidentiary argument without

18   claiming waiver in its Supreme Court brief, Samsung has waived any belated claim of waiver.

19         Finally, the merits of the prejudice analysis clearly favor Apple.  There was no evidence

20   from which the jury could have determined that something other than the phones was the article

21   of manufacture and no evidence of profit on such an alternative.  Moreover, even were the Court

22   to conclude that there was evidence such that a jury *could* have found alternative articles of

23   manufacture and calculated the profits therefrom, the failure to give Proposed Jury Instruction

24   42.1 would still not be prejudicial.  The mere possibility that the excluded instruction *could* have

25   affected the verdict is not enough to warrant a new trial.  Instructional error is not prejudicial, and

26   thus does not warrant a new trial, as long as "it is ***more probable than not*** that the jury would

27   have reached the same verdict had it been properly instructed."  *Clem v. Lomeli*, 566 F.3d 1177,

28

1  1182 (9th Cir. 2009); *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005).[17]  Given the utter lack of

2  evidence supporting any determination of alternative articles of manufacture or Samsung's profits

3  therefrom, it is far "more probable than not" that the jury would have reached the same verdict

4  even if Proposed Jury Instruction 42.1 had been given.  Thus, even if the Court's rejection of

5  Samsung's Proposed Jury Instruction 42.1 was error, it did not prejudice Samsung.

6       Accordingly, this Court may and should determine that Samsung has not proven that the

7  omission of Proposed Jury Instruction 42.1—if error at all—was prejudicial error.

8  **IV.    CONCLUSION**

9       For the foregoing reasons, a new trial is unwarranted, and the Court should confirm its

10  judgment of $398,940,864 for eleven Samsung products found to infringe Apple's design patents.

12  Dated: September 8, 2017                     WILMER CUTLER PICKERING HALE AND
13                                               DORR LLP

15                                         By:  */s/ Mark D. Selwyn*
16                                               MARK D. SELWYN

17                                               Attorneys for Plaintiff
                                                 APPLE INC.

---

[17]    To the extent *Clem* suggests that Apple bore the burden to show a lack of prejudice (*see* Dkt. 3509 at 31), that proposition is directly contradicted by the Supreme Court's statement in *Shinseki* that the party seeking to set aside the judgment bears the burden of showing prejudice. In any event, Apple did show harmlessness, as there was ***no evidence*** of Samsung's "total profit" on any article of manufacture smaller than the infringing phones.

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that a true and correct copy of the above and foregoing document has been

3

served on September 8, 2017 to all counsel of record who are deemed to have consented to

4

electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

5

6

*/s/ Mark D. Selwyn*_____
Mark D. Selwyn

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28