ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
NATHAN B. SABRI (CA SBN 252216)
nsabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522


Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S RESPONSE TO SAMSUNG'S OPENING BRIEF IN RESPONSE TO THE COURT'S JULY 28, 2017 ORDER**<br><br>Date:        October 12, 2017<br>Time:        1:30pm<br>Place:       Courtroom 8, 4th Floor<br>Judge:      Hon. Lucy H. Koh |

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   RESPONSE TO SAMSUNG'S ANSWERS TO THE COURT'S
      QUESTIONS ...................................................................................................... 2

      A.    Issue 1:  Samsung's Proposed Test Improperly Equates The
            Claimed Design With The Article Of Manufacture. .............................. 2

      B.    Issue 2:  The Identity of the Article of Manufacture Is A Question
            Of Fact For The Jury, But Is Not Dictated By The Claimed Design
            As Samsung Suggests. .......................................................................... 6

      C.    Issues 3 & 4:  While The Patentee Bears The Ultimate Burden On
            Damages, The Defendant Bears The Burden On Certain Subsidiary
            Issues. ................................................................................................... 9

      D.    Issue 5:  The Articles of Manufacture Are Samsung's Infringing
            Phones. ................................................................................................ 12

      E.    Issue 6:  The Record Evidence Supports Only The Conclusion That
            The Relevant Articles of Manufacture Are Samsung's Infringing
            Phones. ................................................................................................ 13

      F.    Issue 7:  There Is No Record Evidence Supporting The
            Determination Of "Total Profit" For Any Article Other Than
            Samsung's Infringing Phones. ............................................................ 18

III.  CONCLUSION .................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*Apple Inc. v. Samsung Electronics Co.*,
    786 F.3d 983 (Fed. Cir. 2015)...............................................................................5, 8

*Application of Rubinfield*,
    270 F.ed 391, 393 (C.C.P.A. 1959)......................................................................4, 14

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009)........................................................2, 6, 17, 20

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005)...............................................................................17

*Door-Master Corp. v. Yorktowne, Inc.*,
    256 F.3d 1308 (Fed. Cir. 2001)..........................................................................15

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) (en banc)..............................................................8

*Engel Industries, Inc. v. Lockformer Co.*,
    166 F.3d 1379 (Fed. Cir. 1999)..........................................................................18

*Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*,
    90 F. App'x 540 (Fed. Cir. 2004) .........................................................................8

*Erving Paper Mills v. Hudson-Sharp Machine Co.*,
    332 F.2d 674 (7th Cir. 1964)..............................................................................12

*Exxon Corp. v. United States*,
    931 F.2d 874 (Fed. Cir. 1991)..............................................................................5

*Gantt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013)..............................................................................17

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)....................................................................19

*Golden Bridge Technology v. Apple Inc.*,
    C.A. No. 12-4882, 2014 WL 2194501 (N.D. Cal. May 28, 2014) .......................11

*Honeywell International Inc. v. ICM Controls Corp.*,
    45 F. Supp. 3d 969 (D. Minn. 2014) ..................................................................11

*In re Hruby*,
    373 F.2d 997 (C.C.P.A. 1967) ...........................................................................13

*In re Stevens*,
  173 F.2d 1015 (C.C.P.A. 1949) ............................................................................5

*Kokesh v. SEC*,
  137 S. Ct. 1635 (2017) ......................................................................................10

*Lee v. Dayton-Hudson Corp.*,
  838 F.2d 1186 (Fed. Cir. 1988) .........................................................................16

*Lucent Technologies, Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...........................................................................9

*MediaTek Inc. v. Freescale Semiconductor, Inc.*, C.A. No. 11-5341,
  2014 WL 2854890 (N.D. Cal. June 20, 2014) ....................................................11

*Micro Chemical, Inc. v. Lextron, Inc.*,
  318 F.3d 1119 (Fed. Cir. 2003) .........................................................................11

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998) ...........................................................................4

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ...........................................................................7

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc) ...........................................................11

*Robert Bosch, LLC v. Pylon Manufacturing Corp.*,
  719 F.3d 1305 (Fed. Cir. 2013) (en banc) .........................................................10

*Samsung Electronics Co. v. Apple Inc.*,
  136 S. Ct. 1453 (2016) .........................................................................................8

*Samsung Electronics Co. v. Apple Inc.*,
  137 S. Ct. 429 (2016) .................................................................................. *passim*

*SEC v. Platforms Wireless International Corp.*,
  617 F.3d 1072 (9th Cir. 2010) ...........................................................................10

*SEC v. Teo*,
  746 F.3d 90 (3d Cir. 2014) .................................................................................10

*Shinseki v. Sanders*,
  556 U.S. 396 (2009) ...........................................................................................18

*SmithKline Diagnostics v. Helena Laboratories Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991) ...........................................................................9

*Stowell v. Secretary of Health & Human Services*,
  3 F.3d 539 (1st Cir. 1993) ....................................................................................9

*Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Manufacturing*
*Co.*, 225 U.S. 604 (1912) ....................................................................................10

*Wittich v. Allison*,
56 F. 796 (5th Cir. 1893) ....................................................................................10

**State Cases**

*Barker v. Lull Engineering Co.*,
573 P.2d 443 (Cal. 1978) ....................................................................................12

*Greenfield v. Massachusetts Mutual Life Insurance Co.*,
47 N.Y. 430 (1872) ....................................................................................10

**Federal Statutes**

15 U.S.C. § 1117(a) ....................................................................................9

17 U.S.C. § 504(b) ....................................................................................9

35 U.S.C. § 284 ....................................................................................9, 11, 18, 19

35 U.S.C. § 289 .................................................................................... *passim*

**Other Authorities**

Manual of Patent Examining Procedure § 1503.01 ....................................................................................2

Manual of Patent Examining Procedure § 1503.02 ....................................................................................15

**Briefs & Transcript**

Apple Brief,
*Apple Inc. v. Samsung Electronics Co.*, No. 14-1335,
2014 WL 3909249 (Fed. Cir. July 28, 2014) ....................................................................................18

Brief for United States as Amicus Curiae Supporting Neither Party,
*Samsung Electronics Co. v. Apple Inc.*, No. 15-777,
2016 WL 3194218 (S. Ct. June 8, 2016) ....................................................................................4, 5, 10, 12

Petitioner's Brief,
*Samsung Electronics Co. v. Apple Inc.*, No. 15-777,
2016 WL 6599922 (S. Ct. June 1, 2016) ....................................................................................18

Samsung Brief,
*Apple Inc. v. Samsung Electronics Co.*, No. 14-1335,
2014 WL 2586819 (Fed. Cir. May 23, 2014) ....................................................................................18

Samsung's Petition for Writ of Certiorari,
    *Samsung Electronics Co. v. Apple Inc.*, No. 15-777
    2015 WL 10013702 (S. Ct. Dec. 14, 2015) ............................................................................8

Transcript of Oral Argument, *Samsung Electronics Inc. v. Apple Inc.*,
    137 S. Ct. 429 (No. 15-777) *available at*
    https://www.supremecourt.gov/oral_arguments/argument_transcripts/2016/
    15-777_1b82.pdf ............................................................................5, 17

1    **I.      INTRODUCTION**

2           Samsung's answers to the questions posed in the Court's July 28, 2017 Order amount to

3    little more than a repackaging of the earlier "apportionment" argument that the Federal Circuit

4    and this Court rejected and Samsung expressly abandoned at the Supreme Court.  As explained in

5    Apple's Opening Brief, Samsung's infringing phones are the relevant articles of manufacture

6    under any appropriate test, and Apple is entitled to Samsung's "total profit" on those phones.

7           Samsung seeks to escape that conclusion by constructing a self-serving test for identifying

8    the relevant article of manufacture that conflicts with both decades-old law and the Supreme

9    Court's ruling in this very case.  Samsung proposes that the scope of a patent's claimed design

10   defines the article of manufacture to which the defendant applied the design; therefore, it argues,

11   because Apple's design patents do not *claim* entire phones, Samsung cannot have *applied* the

12   patented designs to entire phones.  But by limiting the article of manufacture to the claimed

13   ornamental, non-functional design elements, Samsung would render it impossible for any

14   complex, multicomponent product to be the article of manufacture to which a patented design has

15   been applied.  This, of course, runs counter to the Supreme Court's ruling that the term "article of

16   manufacture" as applied to a multicomponent product may be either a product as sold or a smaller

17   component.  Moreover, Samsung's proposed test would necessarily require *apportioning* between

18   the functional "innards" of a device and its external design.  As this Court (and Samsung) is well

19   aware, such apportionment under § 289 is prohibited, and both the law of the case and the Federal

20   Circuit's mandate forbid reconsideration of that issue.  Samsung's proposed test therefore cannot

21   be the appropriate method for identifying the article of manufacture to which a claimed design

22   has been applied.  Instead, as proposed in Apple's Opening Brief, the correct test is one that takes

23   into account multiple factors and leaves open the possibility—as mandated by the Supreme

24   Court—that the article could be either the product as sold or a smaller component.

25          Samsung's suggestion that it does not bear any burden of proof under § 289 likewise

26   conflicts with settled law.  As made clear by the Court's jury instructions in this case, the fact that

27   the patentee bears the ultimate burden on damages does not mean that the defendant bears no

28

1   burden on certain subsidiary issues.  Just as Samsung bore the burden to reduce its liability by

2   proving deductible costs, so too was it responsible for proving that it applied Apple's patented

3   designs to any article of manufacture less than the infringing phones and the profit associated

4   with such an article.  Because Samsung failed to do so, no new trial is warranted and the design

5   patent damages award should be confirmed.

6        Finally, contrary to Samsung's suggestion that a new trial is required if the record does

7   not "establish as a matter of law" that Samsung's phones are the articles of manufacture"

8   (Samsung Br. 1), precedent cited by both Samsung and the Court holds that no new trial is

9   necessary or appropriate as long as it is "more probable than not" that the jury would have

10  concluded that the phones were the articles of manufacture even if Samsung's proposed

11  instruction had been given.  *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009).  That standard

12  is easily met here:  the jury found that Samsung's phones infringed Apple's design patents, and

13  the evidence proves not only that the entire phones are the relevant articles of manufacture but

14  also that they are the ***only*** articles on which the jury could have calculated Samsung's profits.

## II.    RESPONSE TO SAMSUNG'S ANSWERS TO THE COURT'S QUESTIONS

### A.    Issue 1:  Samsung's Proposed Test Improperly Equates The Claimed Design With The Article Of Manufacture.

Section 289 is clear that a "patented design" is distinct from the "article of manufacture"

to which that design is "applie[d]."  In fact, the statute expressly contemplates that a single

claimed design may be applied to multiple articles of manufacture, debunking any notion that the

two concepts are commensurate.  *See* 35 U.S.C. § 289 (authorizing the recovery of infringer's

profits when "***the*** patented design" is applied "to ***any*** article of manufacture").[1]  The Manual of

Patent Examining Procedure also makes clear that "the claimed design … may be directed to only

a portion of [an] article" and need not encompass an entire article of manufacture.  *See, e.g.*,

MPEP § 1503.01 ("[T]he claimed design shown in full lines in the drawings may be directed to

only a portion of the article.").  Yet Samsung repeatedly conflates the scope of a patented design

---

[1]      All emphases added unless otherwise noted.

with the identification of the article to which the defendant applies that design, arguing that "[t]he scope of a design patent . . . *will principally determine* the identity of the article of manufacture." Samsung Br. 3; *see id.* 15 ("[B]ecause Apple's patents do not *claim* designs for entire products, the articles of manufacture to which those designs are *applied* are not Samsung's entire products." (emphases in original)).  Because Samsung's proposed test for identifying the article of manufacture ignores the critical distinction between the design as claimed by the patentee and the article to which the defendant applies that design, it must be rejected.

The scope of a claimed design, as Samsung itself says, may by law "extend *only* to the 'ornamental' appearance of an 'article of manufacture'" and not to internal or functional features. *Id.* 3.  Thus, if Samsung were correct that the relevant article of manufacture is always "the part, portion, or component of the [infringing] product that corresponds to the scope of the patented design" (*id.*), then the article of manufacture could *never* be an entire multicomponent product. Instead, in Samsung's view, the article of manufacture must be limited to exterior elements of a product.  But that is inconsistent with the Supreme Court's holding that "the term 'article of manufacture' is broad enough to encompass both *a product sold to a consumer* as well as a component of that product."  *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 435 (2016).

Even the one situation in which Samsung concedes that an "article of manufacture" may be an entire product—the case of "'a single-component product, such as a dinner plate'" (Samsung Br. 4 (quoting *Samsung*, 137 S. Ct. at 432))—proves that the article of manufacture to which a patented design is applied may exceed the scope of the claimed design.  As Samsung recognizes, if a patented design is "applied to" a dinner plate, then the article of manufacture "is necessarily" the entire plate.  *Id.*  But a design that is applied to a plate need not cover the entire plate.  Consider, for example, a patent that claims a design for the rim of a dinner plate.  *E.g.*, U.S. Patent No. D'730,115 S.  The patent claims only the rim, and disclaims, through broken lines, the remainder of the front surface of the plate, as well as its back.  *Id.*  If an infringer then applies the patented rim design to a plate it manufactures, the entire plate—as Samsung concedes—"is necessarily" the article of manufacture.  That is so even though the "scope of the

patented design" was expressly limited to the outer rim of the plate and even though the outer rim of the infringing plate would be the "portion . . . of the product that corresponds to the scope of the patented design." Samsung Br. 3. And it is so even assuming Samsung is correct that the majority of the plate would be "disregarded for purposes of infringement." *See id.* 6. Thus, even Samsung implicitly recognizes that a design covering only a portion of a product may nonetheless be "applied" to a larger product, such that the entire product is the article of manufacture.[2]

In the case of a "'multicomponent product, such as a kitchen oven,'" Samsung's proposed test amounts to nothing more than a *per se* rule that if the patent claims a design covering fewer than all components of that product, the design cannot be "applied" to the entire product. Samsung Br. 4 (quoting *Samsung*, 137 S. Ct. at 432); *id.* 3 ("The relevant article of manufacture ***is the specific part, portion or component of a product*** to which the patented design is applied."). Putting aside that the Supreme Court expressly stated that such a case was not so simple, *Samsung*, 137 S. Ct. at 432 ("In the case of a design for a multicomponent product, such as a kitchen oven, identifying the 'article of manufacture' to which the design has been applied is a more difficult task."), Samsung's proposed test also cannot be squared with the fact that Congress and the courts—including this Court, in this case—consistently have rejected any attempt to apportion an infringer's profits under § 289 between the design of a product and its utilitarian features. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1441 (Fed. Cir. 1998); Dkt. 1157 at 9 (excluding apportionment testimony of Samsung's expert as "contrary to law"); Dkt. 2271 at 12 (calling the apportionment argument "clearly foreclosed by Federal Circuit precedent" and noting that "Congress specifically drafted the design patent remedy provisions to remove an apportionment requirement"); *see also* Br. for United States as Amicus Curiae Supporting Neither Party 8, 2016 WL 3194218 ("U.S. Br.") (stating that § 289's "language unambiguously permits a patent holder to recover the infringer's entire profits from the 'article of manufacture' to which

---

[2]     Furthermore, the claimed design cannot properly limit the article of manufacture because "a design patent may be infringed by articles which are specifically different from that shown in the patent." *Application of Rubinfield*, 270 F.2d 391, 393 (C.C.P.A. 1959). That is, a patent claiming a design for the outer rim of a dinner plate may be infringed by the application of that same design to a teacup, or a bowl, or any other product that could bear the design.

the design was applied, regardless of the extent to which those profits are attributable to the infringing design"). Given that a design patent "may not extend to features 'concealed or obscure[d] in normal use," Samsung Br. 3 (quoting *In re Stevens*, 173 F.2d 1015, 1016 (C.C.P.A. 1949)), *every* design patent will claim only a product's external features and not its "internal, non-design features." *Id.* 6. Thus, under Samsung's view, damages for design patent infringement by a multicomponent product must *always* be limited to the infringer's profits from the product's external components, as distinguished from the profits contributed by its internal components.

Samsung's argument is apportionment, plain and simple. But Samsung abandoned its apportionment theory at the Supreme Court. Tr. of Oral Argument 52, *Samsung*, 137 S. Ct. 429 (No. 15-777) ("Congress said you can't apportion the value of the design in relation to the article. We're conceding that here."). And even had it not expressly conceded the point, the law of the case and the Federal Circuit's mandate would prevent Samsung from asserting it now. *See Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1001-1002 (Fed. Cir. 2015) (rejecting Samsung's apportionment argument as inconsistent with "[t]he clear statutory language"); *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991) ("When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand." (internal quotation marks omitted)). Samsung cannot revive its apportionment argument by disguising it as a test for identifying the article of manufacture.

Rather, the appropriate test must account for the Supreme Court's admonition that the relevant "article of manufacture" may be either an entire product or a component of such a product. *Samsung*, 137 S. Ct. at 435. Thus, as the Solicitor General explained, if the defendant proposes an article that is something less than the product as sold, "a case-specific analysis of the relationship among the design, the product, and any components" is required to determine which of the proposed articles "most fairly may be said to embody the defendant's appropriation of the plaintiff's innovation." U.S. Br. 9. That analysis should be guided by the language of the statute and factors such as those discussed in Apple's Opening Brief (at 3-6), including whether the defendant sells its asserted article of manufacture as part of a unified product. In fact, Samsung

1    itself has conceded that if an asserted article of manufacture cannot be separated from the product

2    *as sold*, profits should be awarded on the entire product.  *See* Dkt. 1300 at 21 (Samsung stating

3    that "[i]n some cases the article bearing the infringing design is *inseparable* from the entire article

4    *as sold*, and therefore all profits from sales of the article are recoverable under Section 289").

5              Depending on the facts of a given case, a proper test (such as that proposed by Apple)

6    sometimes will lead the factfinder to conclude that a patented design was "applied" to a

7    subcomponent of the infringing product, and sometimes will lead the factfinder to conclude that

8    the patented design was "applied" to the product as a whole.  In this case, the mere fact that

9    Apple's patents *claim* less than an entire phone does not mean that Samsung did not *apply* those

10   designs to entire phones as the infringing *articles of manufacture*.  It is thus irrelevant that Apple

11   owns multiple design patents covering design features of an electronic device.  If a defendant

12   infringes any of those patents, the specific circumstances of the case will determine whether the

13   infringer has "applied" the patented design to an entire device or to a subcomponent thereof.  The

14   record evidence here makes clear that the patented designs were applied to Samsung's infringing

15   phones and that those phones reflect, and indeed are the best embodiment of, Samsung's

16   appropriation of Apple's patented designs.  For that reason, and given Samsung's utter failure to

17   even identify an alternative article of manufacture for the jury, it was not error to decline to give

18   Samsung's proposed instruction.  At a minimum, because it is "more probable than not" that the

19   jury would have concluded that Samsung's infringing phones were the articles of manufacture in

20   any event, any instructional error was not prejudicial.  *See Clem*, 566 F.3d at 1182.

21        **B.      Issue 2:  The Identity of the Article of Manufacture Is A Question Of Fact For
                    The Jury, But Is Not Dictated By The Claimed Design As Samsung Suggests.**

22

23            Samsung concedes, as it must, that identifying the relevant article of manufacture is "a

24   question of fact for the jury" that may be determined by the Court "as a matter of law where there

25   are no disputed issues of material fact."  Samsung Br. 7.  But what Samsung gives the jury with

26   one hand it takes away with the other, by arguing that this undisputedly factual question is

27   "subject to the court's legal guidance" (*id.*)—guidance that Samsung quickly makes clear

28

effectively disposes of the jury's factfinding role (*id.* 8). Samsung's thinly veiled attempt to substitute claim construction as the mechanism to be used to identify the article of manufacture finds no support in law and should be rejected for several reasons.

***First***, "[t]he purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citation omitted). Resolving the scope of design patent claims for purposes of determining infringement and invalidity is a separate issue entirely from the subsequent step of identifying the article to which the defendant has applied an infringing design for purposes of calculating infringer's profits.

***Second***, Samsung's insistence that the identity of the relevant article of manufacture "depends upon the scope of the patented design" cannot be reconciled with its concession that the identity of the article of manufacture is "ultimately a question of fact." Samsung Br. 7-8. Samsung argues, on the one hand, that the article of manufacture is limited exclusively to "any part, portion, or component of a product" that "correspond[s] to the claim attributes of a patented design," and cannot include "any part, portion, or component of a product that is disclaimed by the patent." *Id.* 3. It also concedes that "the scope of a patent claim" is "a question of law." *Id.* 7. On the other hand, Samsung grudgingly admits that the identification of the article must "ultimately" be a question of fact for the jury. *Id.* 7. But if the article of manufacture is synonymous with the claimed scope of the patented design as Samsung suggests, then identification of the article will ***never*** go the jury as a fact issue, because it will always be resolved through claim construction. Unsurprisingly, that is exactly what Samsung asks for, requesting that the Court "identify the relevant articles of manufacture in this case as a matter of law in advance of trial," using its desired articles, "leaving for the jury only the issue of the quantum of damages." *Id.* 8. Samsung does not explain how this procedure treats identifying the article of manufacture as a question of fact for the jury, which Samsung concedes it must be.[3]

---

[3]    Alternatively, Samsung argues (Br. 8) that "[i]f the identity of the articles goes to the jury," the Court should "instruct the jury as to the scope of the patented designs" and explain "that Apple's patented designs disclaim everything outside the broken lines, including the interior

*Finally*, Samsung's suggestion (*id.*) that the Supreme Court's brief characterizations of Apple's patents should be provided as claim constructions to guide the jury's identification of the article of manufacture ignores that this Court *already* construed and instructed the jury on the patents' scope.  Nothing in the Supreme Court's decision suggests it intended for its descriptions, located in the factual background portion of the opinion, to substitute for claim construction or to guide the jury in identifying the relevant articles.  To the contrary, the Supreme Court was explicit that "the only question we resolve today is whether, in the case of a multicomponent product, the relevant 'article of manufacture' must always be the end product sold to the consumer or whether it can also be a component of that product."  *Samsung*, 137 S. Ct. at 434.[4]  More importantly, this Court already correctly rejected giving *any* "detailed written claim construction describing various elements of the claimed designs," recognizing that the ordinary observer test focuses on "the overall visual impression of the claimed designs."  Dkt. 1425 at 3 ("The Federal Circuit has cautioned against attempts to 'construe' design patent claims by providing a detailed verbal description of the claimed design." (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc)).  Thus, this Court construed the design patents as shown in the patent figures themselves.  *E.g.*, Dkt. 1425 at 9 ("The '677 Patent claims the ornamental design of an electronic device as shown in Figures 1-6.").  The Federal Circuit affirmed those constructions.  *Apple*, 786 F.3d at 998-999.  Asking this Court (again) to verbally describe the design patents' scope is contrary to the law of the case.  *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 90 F. App'x 540, 541 (Fed. Cir. 2004) ("Claim constructions previously determined on appeal to this court are law of the case on remand." (citation omitted)).  To the extent the scope of the claims has any bearing on the identity of the article to which the patented designs were applied, the jury was already correctly instructed on that issue.

---

componentry."  Samsung does not explain how the "jury would then identify the relevant articles" based on those instructions, other than to assume they are commensurate with the claimed designs' scope, as Samsung insists they are.  *Id.*  Such an instruction would thus only invite error.

[4]     The Supreme Court declined to review Samsung's first question presented, which related to the scope and construction of design patent claims.  *Compare* Samsung Pet. for Cert., 2015 WL 10013702, at (i), *with Samsung Elecs. Co. v. Apple Inc.*, 136 S. Ct. 1453 (2016) ("Petition for writ of certiorari … granted limited to Question 2 presented by the petition.").

C.    **Issues 3 & 4:  While The Patentee Bears The Ultimate Burden On Damages, The Defendant Bears The Burden On Certain Subsidiary Issues.**

Samsung asserts (Br. 11-12) that it "bears no burden with respect to" either step identified by the Supreme Court for determining damages under § 289 "at any stage of the case."  Samsung stakes out this absolutist position even though this Court twice instructed the jury that, while § 289 assigns "Apple [] the burden of proving the infringing defendant's gross revenue, . . . *Samsung has the burden of proving the deductible expenses*."  Dkt. 1903 at 72 (2012 Trial); Dkt. 2784 at 39 (2013 Trial).  Samsung did not object to this instruction on either occasion and did not appeal it to the Federal Circuit.[5]  This shows the fallacy in Samsung's position.  And while Apple does not dispute that it bears the ultimate burden of proving damages, it does not follow that Samsung has no burden whatsoever on any issue relating to damages, including propositions that Samsung itself raises in an effort to reduce its liability once Apple has made a *prima facie* case.  As the Court's damages instructions show, defendants often bear discrete burdens of proof on subsidiary issues, even where the ultimate burden rests on a plaintiff.[6]

Samsung's reliance on copyright and trademark damages regimes also fails.  Samsung suggests that, since § 289 "does not *on its face* shift any burden to the defendant," no burden shifting can occur.  Samsung Br. 9.  Once again, this argument founders on Samsung's agreement at trial that § 289 assigns the burden of proving deductible costs to the defendant, even though the copyright and trademark statutes contain express language on this point (17 U.S.C. § 504(b); 15 U.S.C. § 1117(a)), and § 289 does not.  That the various remedies share similar features despite different language is unremarkable:  "Congress … may choose to express the same idea in many different ways."  *Stowell v. Sec'y of Health & Human Servs.*, 3 F.3d 539, 542 (1st Cir. 1993).

---

[5]     This was no mere temporary oversight on Samsung's part.  Samsung offered extensive testimony from Mr. Wagner regarding its deductible expenses in an effort to reduce its liability.  *See* Dkt. 1842 at 3021-3032; Dkt. 2841 at 1014-1024.

[6]     Samsung's cited authorities are not to the contrary.  Neither *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), nor *SmithKline Diagnostics v. Helena Laboratories Corp.*, 926 F.2d 1161 (Fed. Cir. 1991), stands for the proposition that the burden of persuasion on damages *never* shifts to the defendant *on any issue*.  And both cases concern damages under 35 U.S.C. § 284, not the disgorgement of ill-gotten profits under § 289.

1    In any event, § 289 "provides a damages remedy specific to design patent infringement."

2   *Samsung*, 137 S. Ct. at 432.  That specific remedy is modeled on the equitable disgorgement

3   remedy, which often uses a burden-shifting regimen to determine ill-gotten profits even when the

4   governing statute is silent on the issue of remedies.  *See, e.g.*, *Kokesh v. SEC*, 137 S. Ct. 1635,

5   1640 (2017) (SEC may seek disgorgement despite "the absence of statutory authorization for

6   monetary remedies"); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010)

7   (once a plaintiff "establishes a reasonable approximation of defendants' actual profits . . . the

8   burden shifts to the defendants to demonstrate that the disgorgement figure was not a reasonable

9   approximation" (internal quotation marks omitted)); *see also* U.S. Br. 31 (citing *SEC v. Teo*, 746

10  F.3d 90 (3d Cir. 2014) to support that "once the plaintiff has shown that the defendant profited by

11  explanting a product containing the plaintiff's design, the defendant should be required to identify

12  . . . the component that the defendant asserts is the article to which the design is applied").

13    Indeed, contrary to Samsung's reliance on legislative history, the default remedy for

14  infringement in 1887 was an equitable accounting of profits attributable to the infringement.  *See*

15  *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1308-1312 (Fed. Cir. 2013) (en banc)

16  (discussing the history of "accounting" as a remedy for patent infringement in the nineteenth

17  century).  This remedy was understood to involve burden shifting and often allocated the burden

18  of proof on subsidiary issues to defendants.  *See, e.g.*, *Westinghouse Electric & Mfg. Co. v.*

19  *Wagner Electric & Mfg. Co.*, 225 U.S. 604, 610 (1912) (holding that once the plaintiff "has

20  proved the existence of profits attributable to his invention" the "burden of separation is cast on

21  the defendant"); *Greenfield v. Massachusetts Mut. Life Ins. Co.*, 47 N.Y. 430, 432 (1872) ("An

22  account stated is not conclusive; it throws the burden of proving mistakes on defendants.");

23  *Wittich v. Allison*, 56 F. 796, 799 (5th Cir. 1893) ("The burden is put on the defendant to show

24  [error in the accounting]; the account stated having made a prima facie case, and shifted the

25  burden of proof.").  Given the prevailing law of the day, Congress would have well-understood its

26  design patent remedy to involve the sort of burden-shifting that is part and parcel of a traditional

27  equitable accounting.

28

1    In fact, such burden-shifting in the absence of express statutory language is common.

2  While Samsung cites cases involving utility patent damages under § 284 to suggest that the

3  defendant never bears a burden of proof (Samsung Br. 10), such cases frequently employ burden-

4  shifting in the damages context.  *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122

5  (Fed. Cir. 2003) ("To recover lost profits [under § 284] a patentee must show that 'but for'

6  infringement it reasonably would have made the additional profits enjoyed by the infringer . . . .

7  A patentee may resort to any method showing, with reasonable probability, entitlement to lost

8  profits 'but for' the infringement.  Once the patentee establishes the reasonableness of this

9  inference, ***the burden shifts to the infringer to show that the inference is unreasonable for some***

10  ***or all of the lost profits***." (citations omitted)); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545

11  (Fed. Cir. 1995) (en banc) (once a patentee has shown a reasonable estimation of lost profits,

12  "[t]he ***burden then shifts to the infringer*** to show that the inference is unreasonable").

13    Even in the smallest salable unit context, on which Samsung relies (Br. 10-11), once the

14  patentee makes a case for what it believes is the smallest salable unit, the burden shifts to the

15  defendant to come forth with an alternative.  *E.g.*, *Honeywell Int'l Inc. v. ICM Controls Corp.*, 45

16  F. Supp. 3d 969, 1012 (D. Minn. 2014) ("Although ICM challenges Honeywell's assertion that

17  the accused products constitute the smallest salable patent-practicing unit, ICM has not identified

18  a smaller component within the accused products that should be deemed to practice the invention

19  such that use of the whole product is so improper as to warrant exclusion."); *MediaTek Inc. v.*

20  *Freescale Semiconductor, Inc.*, 2014 WL 2854890, at *4 (N.D. Cal. June 20, 2014) ("MediaTek

21  has offered its expert's opinion . . . that the 'smallest salable patent-practicing unit' is the chip

22  itself . . . While Freescale argues that this is not the proper smallest salable patent-practicing unit,

23  it offers no evidence to support an alternative.").  Thus, where a utility patent owner has made out

24  a *prima facie* case as to the smallest salable unit for damages purposes, the infringer must come

25  forward with evidence to rebut the case if it believes the smallest salable unit is something less.[7]

26

27  [7]    Apple's position in *Golden Bridge Technology v. Apple Inc.*, 2014 WL 2194501, at *5-6
    (N.D. Cal. May 28, 2014), cited by Samsung (Br. 10), is consistent with Apple's position here.
28  *Golden Bridge* involved an expert's failure to apportion under § 284.  Nothing in *Golden Bridge*

The same basic framework applies here.  Apple agrees that it bears the ultimate burden on damages, and that it bore an initial burden of making out a *prima facie* case regarding the relevant article of manufacture and the revenues associated with it.  Far from shirking that duty, Apple offered overwhelming evidence that Samsung applied its patented designs to the infringing phones and showed the profits Samsung earned on those phones.  Apple Opening Br. 15-22.  As the Solicitor General agreed (U.S. Br. 31), any remaining burden to reduce liability by proving additional deductible costs or identifying a lesser article of manufacture was firmly on Samsung.[8]

**D.   Issue 5:  The Articles of Manufacture Are Samsung's Infringing Phones.**

Samsung (at 2) identifies the articles of manufacture for which profits should be awarded as "the phone's round-cornered, glass front face (D'677)"; "the phone's round-cornered glass front face plus surrounding rim or bezel (D'087)"; and "the phone's display screen while displaying the single claimed array of GUI icons (D'305)."  These articles—identified more than five years after trial—differ from Samsung's previous, but still untimely articulations (*see* Dkt. 3503 at 4 n.3), and, as discussed below, find no record support under any appropriate test.

Samsung's asserted articles of manufacture are nothing more than specific design elements Samsung alleges are covered by the patents' claims.  But as discussed above (pp. 2-5), the scope of a claimed design is not commensurate with and does not dictate the article to which the defendant applied that design.  Also, Samsung's asserted article for the D'305 patent—a "display screen while displaying the single, claimed array of GUI icons"—is not even an article, but rather an article in a particular status, at a particular time.  It is, in Samsung's own words,

---

stands for the proposition that, once a plaintiff has made out a *prima facie* damages claim (as Apple did here), the burden never shifts to the defendant to rebut the claim.

[8]   Samsung suggests this Court should ignore the Solicitor General's views about assigning the burden of proof because "[n]o court has adopted [its] approach."  Samsung Br. 11 n.3.  But as is always the case with issues of first impression, no court has yet adopted ***any*** approach.  Samsung also argues that there is "no reason to believe that defendants in design-patent cases will have '*exclusive* knowledge' of relevant information."  *Id.*  But in many contexts involving complex products—as Samsung describes its products here (*id.* 16-18)—courts assign manufacturers the burden to prove facts related to their products due to their superior knowledge of the product.  *See, e.g.*, *Erving Paper Mills v. Hudson-Sharp Mach. Co.*, 332 F.2d 674, 678 (7th Cir. 1964); *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 455 (Cal. 1978).

"fleeting."  Br. 21 n.8.  Given that an article of manufacture must be "a thing made by hand or machine," *Samsung*, 137 S. Ct. at 435, Samsung's asserted article for the D'305 patent cannot be correct.[9]  Rather, the articles of manufacture are, as Apple has claimed from the outset and as the evidence described in Apple's Opening Brief (at 15-21) shows, Samsung's infringing phones.

### E.    Issue 6:  The Record Evidence Supports Only The Conclusion That The Relevant Articles of Manufacture Are Samsung's Infringing Phones.

The manner in which Samsung applies its proposed "article of manufacture" test to the evidence in this case confirms the test's flaws.  Samsung's purported analysis makes clear that the test conflates the claimed ***design*** with the ***article of manufacture*** to which the defendant has applied the design.  It also demonstrates that the test amounts to an impermissible *per se* rule that only the exterior of a multicomponent product could qualify as the relevant "article of manufacture."  Under any reasonable test, none of the evidence to which Samsung points supports a finding of any article of manufacture other than Samsung's infringing phones.

The first category of "evidence" Samsung cites is the scope of the claims in the infringed patents.[10]  For example, Samsung emphasizes that none of the three patents at issue "depict[s] or claim[s] any internal componentry of the phone."  Samsung Br. 13-14.  But as Samsung admits,

---

[9]      Samsung cites *In re Hruby*, 373 F.2d 997 (C.C.P.A. 1967), but that case was about the patentee's identification of an article of manufacture under § 171, not the defendant's application of a patented design to "any" article of manufacture under § 289.  Apple accordingly cited it for the proposition (which the Supreme Court adopted) that an article of manufacture may be anything "made by the hands of man from raw materials."  *Id.* at 1000 (internal quotation marks omitted); *see also Samsung*, 137 S. Ct. at 435.  And contrary to Samsung's claim that *Hruby* approved of a "fleeting" article (Br. 21 n.8), *Hruby* actually held that the "water fountain" could be an article of manufacture because it was ***not*** "fleeting."  373 F.2d at 999 ("[A] particular droplet or droplets may be 'a fleeting product' but the fountain itself is not.  The fountain in its entirety under proper conditions presents a product of constant appearance rather than a fleeting product.").

Additionally, Samsung's identified article for the D'305 patent does not even include all the components needed to "display[] the single, claimed array of GUI icons."  Without additional hardware and software, the "display screen" on Samsung's phones cannot display ***anything***, let alone the array of icons claimed in the patent.

[10]      Samsung includes the prosecution histories for the D'677 and D'087 patents among the "evidence" in this category (Samsung Br. 15 (citing JX1062; JX1064)), but neither was an admitted exhibit (Dkt. 1889; Dkt. 2789).  Even so, while the prosecution histories may be relevant to claim construction, they do not affect the "article of manufacture" analysis.  *See supra* pp. 7-8.

1   that is true of *every* design patent, which by definition claim only "ornamental" aspects of an

2   article. *Id.* 3. It is thus unsurprising, and meaningless, that Apple's design patents do not claim

3   the "internal componentry" of a phone—such components are features not of a design, but of an

4   article of manufacture to which a design may be applied.

5         Relatedly, the fact that the patents at issue do not claim, for example, the back of a phone

6   (*see* Samsung Br. 13) does not mean that the design has not been applied to the whole product.

7   Again, the scope of a claimed design is not coextensive with the article of manufacture to which

8   the design has been applied; and, as § 289 makes clear, the defendant may apply the patented

9   design to "*any* article of manufacture." Put another way, "the inventive concept of a design is not

10  limited to the exact article which happens to be selected for illustration in [a] … patent."

11  *Rubinfield*, 270 F.2d at 393. The patent illustrations delineate the scope of the patented designs

12  and provide examples of articles to which the claimed designs may be applied, but they do not

13  determine the article to which Samsung applied those designs.[11]

14        Indeed, Samsung goes so far as to intentionally ***misquote*** the Court's construction of the

15  D'087 patent—replacing "article of manufacture" with "phone" (Samsung Br. 14)—to better fit

16  its theory that the article cannot be anything broader than the claimed design. Samsung now

17  alleges that "use of the term 'article of manufacture' in the claim construction … was incorrect."

18  Samsung Br. 14 n.4. However, as discussed above (p. 8), the Federal Circuit affirmed the

19  construction, which is the law of the case. Further, Samsung never objected to the Court's use of

20  the term "article of manufacture" in that construction. To the contrary, the Court's use of that

21  term is entirely consistent with Samsung's own use of the word "article" in its claim construction

22  brief, which makes clear that Samsung previously understood that the scope of a claimed design

23  is often narrower than the "article" to which it is applied. *See* Dkt. 1090-1 at 1 ("[W]hen a field is

24

_____

25  [11]    Samsung's proposed test also cannot be correct because it would ***exclude*** the exemplary
26  articles identified in the patents from being treated as articles of manufacture. *See, e.g.*, JX1043
    (D'677 patent identifying an "electronic device," such as a "cellular phone," as an exemplary
27  article of manufacture in the description and drawings); *see also* Dkt. 999-18, ¶ 48 (Samsung's
    damages expert noting that "the D'677 patent states that 'the article of manufacture to which the
28  ornamental design has been applied is an electronic device … e.g., a cellular phone'").

crowded with many references relating to the design of the same type of article, a design patent's scope of protection is limited to a more narrow range[.]" (internal quotation marks omitted)); *id.* at 9 (observing that "shading is also necessary to distinguish between any open and solid areas of the article" depicted in the D'087 patent (quoting MPEP § 1503.02, ¶15.48)).[12]

Samsung next argues at length in favor of a point no one disputes:  that "Samsung's accused smartphones are complex, multicomponent devices containing hundreds of different components."  Samsung Br. 16; *see id.* 17-18 (citing Justin Denison and Itay Sherman); *id.* 20 n.7 (citing Drs. Balakrishnan and Singh for proposition that infringing phones have "numerous software applications").  Though true, that is beside the point.  Samsung's proposed test for identifying the article of manufacture does not even consider whether the asserted articles are ***manufactured*** as separate components.  As Samsung previously conceded, what matters is whether the asserted articles can be separated from the product ***as sold***, which Samsung's asserted articles cannot.  *See supra* pp. 5-6.

Furthermore, while a patented design might or might not, in a given case, have been applied to a product containing many internal components, the mere fact that the product contains many such components does not make it more or less likely that the design was applied to the product as a whole.  If it did, then even an infringer who blatantly copied the design of a multicomponent product for the specific purpose of increasing sales of that product could be liable only for damages apportioned between the "design" elements of the product and its "functional" elements.  As explained above (p. 3), that is not the law.  Accordingly, evidence that Samsung's phones are multicomponent devices does not advance Samsung's argument that those phones are not the relevant articles of manufacture.

Besides, Samsung's cited evidence fails even to support its assertion that the articles of manufacture are the specific components Samsung has identified.  For example, Samsung points

---

[12]     The Court's use of "article of manufacture" in the construction is also consistent with Samsung's cited case, which makes clear that a claimed design is not coextensive with, and may cover only a portion of, an article of manufacture.  *See Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) ("[A] patented design may be embodied in less than an entire article of manufacture[.]").

to a tear-down analysis of its infringing Vibrant phone showing "components in isolation." Samsung Br. 17.  But the tear-down analysis does not identify or show a "rounded-cornered, glass front face," a "surrounding rim or bezel," and a "display screen while displaying" the infringing array of icons.  *See id.* 16-17.  Separately, Samsung cites testimony from Michael Wagner that various software features could be redesigned without physical intrusion into Samsung's phones and testimony from Paul Dourish that software programs can be conceived of and implemented independent from one another, but Samsung does not explain what relevance either of these facts could have to an analysis of what physical "thing" constitutes the article of manufacture in this case.  *See id.* 18.  Samsung also cites evidence about the iPhone's components and "manufacturing challenges Apple faced."  *Id.* 18-19.  But as explained (Apple's Opening Br. 21), evidence about the iPhone sold by Apple has no bearing on the article of manufacture to which ***Samsung*** applied the patented designs.  What should bear on that inquiry is the fact that Samsung only sells, and consumers only use, the infringing phones in their entireties.

Next, Samsung argues that the allegedly "narrow scope of Apple's infringement allegations" somehow constitutes evidence that the articles of manufacture are something less than Samsung's phones because "Apple did not claim that all components of Samsung's phones were infringing."  Samsung Br. 19-20.  Samsung bases this claim on testimony from Apple's experts that they focused on certain elements of Samsung's phones in concluding that the phones infringed Apple's patents.  But the set of features relevant to the comparison of the patented design and the accused design is ***not*** coextensive with the set of features contained within the article of manufacture to which that design has been applied.  Indeed, certain "functional" features of an accused product are categorically irrelevant to design patent infringement.  *See Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).  And even non-functional aspects of a product may be incidental to design patent infringement, yet still contained within or form a portion of the "article of manufacture" to which that patented design has been applied.  As explained above, the fact that a portion of a product is outside the scope of a claimed design does not determine whether such portion is part of the article of manufacture to which that design has

been applied.  Accordingly, the fact that Apple's expert Peter Bressler did not consider the back of the phone, for example, in assessing infringement of the patented designs is irrelevant to the "article of manufacture" determination.  And, in any case, Apple's experts did testify that Samsung applied the claimed designs to the infringing ***phones***.  *See* Apple Opening Br. 15.

Furthermore, Apple's infringement allegations were not narrow.  Apple alleged—and the jury agreed—that Samsung's phones, not any lesser components of the phones, infringed Apple's design patents. Dkt. 75 at 24 (Final Amended Complaint); Dkt. 1931 at 6-7 (verdict).  Thus, to the extent the infringement analysis has any bearing on identifying the article of manufacture, it weighs in favor of Apple's argument that the articles are the entire phones.

Finally, Samsung wrongly asserts that Chief Justice Roberts "recognized at oral argument" that a properly instructed jury "could have found that smartphone components are the relevant articles of manufacture."  Samsung Br. 20.  Chief Justice Roberts's comment at oral argument—which did not purport to be an authoritative statement of the law—said nothing about the record evidence in this case.  At most, the Chief Justice's comment foreshadowed the Court's later ruling that a patented design ***could*** be applied to a component of a product.[13]

Even if the jury "could have" reached a different conclusion as to the relevant articles of manufacture if Samsung's proposed instruction had been given (and clearly the jury could not have), that still would not entitle Samsung to a new trial.  As explained in Apple's Opening Brief (at 24-25), it is not enough for Samsung to show that its proposed instruction "could have" led the jury to reach a different verdict.  Rather, the verdict must stand if "it is ***more probable than not*** that the jury would have reached the same verdict" even if given Samsung's desired instruction.  *Clem*, 566 F.3d at 1182.  The cases Samsung cites endorse that standard.  *See Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013); *Dang v. Cross*, 422 F.3d 800, 811-812 (9th Cir. 2005).  Thus, although there was ***no*** evidence from which a jury could have concluded that the relevant articles were anything other than the infringing phones, even some quantum of evidence

---

[13]     The only comment about the record made by a justice at oral argument came from Justice Sotomayor, who said to Samsung:  "I don't know where in the record you would have enough to survive your argument."  Tr. of Oral Arg. 8, *Samsung*, 137 S. Ct. 429 (No. 15-777).

1    supporting that determination would not change the conclusion that the verdict here must stand.[14]

2    ### F.    Issue 7:  There Is No Record Evidence Supporting The Determination Of "Total Profit" For Any Article Other Than Samsung's Infringing Phones.

3

4         Samsung does not dispute (nor could it) that the record contains ample evidence of its

5    "total profit" on the infringing phones, including the testimony of its own damages expert.

6    Instead, Samsung argues only that the record also contains sufficient evidence from which a jury

7    could calculate Samsung's total profit from the smaller components that Samsung claims are the

8    relevant articles.  It is hard to imagine how the jury could have made such calculations, given that

9    Samsung never even identified those alleged articles to the jury.  And Samsung's brief to the

10   Supreme Court asserted the exact opposite:  "The Record Contains No Proof of Total Profit From

11   The Relevant Articles Of Manufacture."  Pet. Br. 54, *Samsung*, No. 15-777, 2016 WL 6599922

12   (June 1, 2016).  Even if Samsung had not already conceded the point, the record is plainly devoid

13   of evidence from which the jury could calculate profits on Samsung's alleged articles.

14        Notably, Samsung does not identify any actual ***amount*** of profits the jury could have

15   attributed to its alleged articles.  Samsung instead gestures toward two (and only two) categories

16   of evidence that supposedly support a profit calculation, while refusing to say what the

17   calculation is.  The first is evidence Apple put forth relating to Apple's experts' "income method"

18   for calculating a reasonable royalty under § 284.  Specifically, Samsung points to a single row of

19   a table within a summary damages exhibit and wrongly asserts that the method was based on

20

21   _____

     [14]    As set forth in Apple's Opening Brief (at 23-24), Apple did not waive its argument that

22   any instructional error was harmless.  Apple raised the argument at every stage, *see, e.g.*, Apple
     Br. 88, *Apple Inc. v. Samsung Elecs. Co.*, No. 14-1335, 2014 WL 3909249 (Fed. Cir. July 28,

23   2014) (arguing that there was "no error, let alone prejudicial error warranting a new trial"), and
     indeed as the appellee could not have waived the argument in the Federal Circuit.  Rather, if any

24   party waived its argument regarding the effect of the alleged error, it was Samsung, which failed
     to even allege prejudice in its opening brief to the Federal Circuit.  Samsung Br. 36-39, *Apple Inc.*

25   *v. Samsung Elecs.*, No. 14-1335, 2014 WL 2586819 (Fed. Cir. May 23, 2014); *see Shinseki v.*
     *Sanders*, 556 U.S. 396, 409 (2009) ("[T]he party that seeks to have a judgment set aside because

26   of an erroneous ruling carries the burden of showing that prejudice resulted." (internal quotation
     marks omitted)); *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)

27   ("An issue that falls within the scope of the judgment appealed from but is not raised by the
     appellant in its opening brief on appeal is necessarily waived.").

28

profits "*from the components 'embodying the patented [designs]*.'"  Samsung Br. 23 (emphasis in original).[15]  But the full sentence from which Samsung quotes shows otherwise:  "The income approach to the value of the patents at issue is based on the future profitability *of the products* embodying the patented technology."  PX25A1.16; PX25F.16.  Samsung similarly misrepresents the testimony of Apple's expert Julie Davis, who did not testify that "Apple's proposed royalty estimated the value of each phone's 'case,' not its 'guts.'"  Samsung Br. 23.  Rather, Ms. Davis said that, although the "guts" of an infringing phone theoretically could be placed into a non-infringing "case," such a redesign would take considerable time and would not be a financially viable alternative to paying a reasonable royalty for the use of the patented designs.  Dkt. 2840 at 772.  Thus, the limited evidence regarding the "income method" that contributed to Apple's experts' calculation of a reasonably royalty for each infringing *phone* offered absolutely no basis on which a jury could calculate Samsung's total profit from any components of the phones.

The second category of evidence on which Samsung relies is evidence that, according to Samsung, supports an inference that smartphones' value is derived primarily from non-design features.  Samsung Br. 23.  Samsung's argument based on that evidence is twice flawed.

*First*, the argument is a direct callback to the apportionment arguments this Court and the Federal Circuit have unequivocally rejected in this case.  To suggest that the jury should have determined Samsung's profits from the articles of manufacture by segmenting off any profit derived from the phones' technical features is merely to call for apportionment by some other name.  Indeed, Samsung previously cited the very same documents it now relies on in support of its rejected, and since-abandoned, apportionment argument.  *Compare* Samsung Br. 23 (citing PX143.6; DX586.004; DX592.023), *with* Dkt. 999-18 at 142, 145 (offering excluded apportionment opinion and quoting the documents that became DX586.004 and PX143.6), *and*

---

[15]     The "income method" was one of three separate methodologies employed by Apple's damages experts to determine a reasonable royalty under § 284 for design patent infringement.  *See* PX25A1.16; PX25F.16.  The ultimate opinion offered at trial by both Mr. Musika and Ms. Davis as to the appropriate royalty was based on consideration of all three methods, along with the fifteen factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Dkt. 1839 at 2088-2090; Dkt. 2840 at 705-708.

1  Dkt. 2013 (Samsung's JMOL) (citing DX592.023 in support of apportionment argument).[16]

2  **Second**, even if this evidence properly could be considered in calculating profits, it alone

3  is clearly insufficient to support any **specific** determination of Samsung's profit from its asserted

4  articles of manufacture. Generic statements or survey results about which features matter to

5  consumers constitute no proof whatsoever of **how much money** Samsung actually made from

6  those or any other features of the phones—let alone the specific features Samsung alleges are the

7  articles of manufacture. No witness provided any opinion as to how to translate those statements

8  into a damages assessment, and no other evidence would allow for such a conversion.

9      In sum, and as Apple explained (Opening Br. 21-23), there simply is no record evidence

10  to support a determination of Samsung's total profit from its asserted articles of manufacture. To

11  the extent Apple bore the burden to prove profits associated with an article, it fulfilled that duty

12  by presenting evidence of the profits Samsung earned on its infringing phones.[17] Because

13  evidence of Samsung's total profit from the infringing phones was the **only** calculation offered by

14  either side, it is far "more probable than not" that the jury would have reached the same damages

15  verdict even if Samsung's Proposed Instruction 42.1 were given. *Clem*, 566 F.3d at 1182. Any

16  asserted error in the jury instructions cannot have been prejudicial, and no new trial is warranted.

17  **III.    CONCLUSION**

18      For the foregoing reasons, there was no error, let alone prejudicial error, in failing to give

19  Samsung's Proposed Instruction 42.1. Samsung's request for JMOL of no profits and its request

20  for a new trial should be denied, and the design patent damages judgment should be confirmed.

21

---

22  [16]      Samsung's suggestion that the jury could have relied on DX586.004 to determine

23  damages for its asserted articles of manufacture also ignores that the jury was instructed **not** to consider that evidence in assessing damages. *See* Dkt. 1889 at 10 ("Do not consider [DX586] to prove or disprove the validity or invalidity of a claim or the amount of a disputed claim.").

24  [17]      For the reasons stated in Apple's initial brief on remand to this Court (Dkt. 3490-2 at 15-16), Samsung waived its argument for JMOL of no infringer's profits by failing to raise any

25  "article of manufacture" argument in its Rule 50(a) and Rule 50(b) motions and now, more recently, in its initial brief on remand to this Court. *See* Dkt. 3509 at 12-13 ("Samsung no longer

26  seeks judgment as a matter of law with respect to the article of manufacture issue."). In any event, given that Samsung did not identify any article of manufacture smaller than its infringing

27  phones before trial, Apple cannot possibly be blamed for focusing its damages evidence on the

28  only article of manufacture at issue at the time of trial.

1

2

3

Dated: September 28, 2017                    WILMER CUTLER PICKERING HALE AND
                                             DORR LLP

4

5                                            By:  */s/ Mark D. Selwyn*

6                                                   MARK D. SELWYN

7                                                 Attorneys for Plaintiff
                                                  APPLE INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that a true and correct copy of the above and foregoing document has been

3

served on September 28, 2017 to all counsel of record who are deemed to have consented to

4

electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

5

6

*/s/ Mark D. Selwyn*
Mark D. Selwyn

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28