QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and Samsung
Telecommunications America, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>       Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S RESPONSE TO APPLE SUBMISSION PURSUANT TO ORDER OF JULY 28, 2017 REGARDING NECESSITY OF NEW TRIAL ON DESIGN-PATENT DAMAGES**<br><br>**Hearing:**<br><br>Date:  October 12, 2017<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    1.    Apple's multifactor test for identifying the relevant article of manufacture is incorrect and unworkable. .................................................................................... 2

    2.    Identification of the relevant article of manufacture is ultimately a factual question for the jury but the critical factor—the scope of the design patent—is an issue of law for the court. ............................................................................ 8

    3.    The patent plaintiff (here, Apple) bears the burden of proof to identify the relevant article of manufacture for purposes of § 289. ................................... 9

    4.    The patent plaintiff (here, Apple) bears the burden of proof to demonstrate total profit on the relevant article of manufacture for purposes of § 289. ............... 12

    5.    The relevant articles of manufacture for the D'677 patent, D'087 patent, and D'305 patent are *not* the entire phone; they are instead, respectively, the phone's round-cornered, glass front face; the  phone's round-cornered, glass front face plus surrounding rim or bezel; and the phone's display screen while displaying the single, patented array of GUI icons. .................................. 15

    6.    Ample evidence in the record supports Samsung's asserted articles of manufacture, even under Apple's proposed test. ...................................... 15

    7.    Ample evidence in the record supports total profit amounting to a fraction of the profit on the entire phone for the relevant articles of manufacture. ................... 19

CONCLUSION ................................................................................................................. 20

# **TABLE OF AUTHORITIES**

## Cases

*Apple Inc. v. Samsung Elecs. Co.*,
    735 F.3d 1352 (Fed. Cir. 2013) ........................................................................ 17

*Astrue v. Ratliff*,
    560 U.S. 586 (2010) ........................................................................................ 10

*Barker v. Lull Engineering Co.*,
    20 Cal. 3d 413 (1978) ...................................................................................... 12

*In re Beckwith*,
    203 F. 45 (7th Cir. 1913) ................................................................................. 13

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971) .......................................................................................... 3

*Bush & Lane Piano Co. v. Becker Bros.*,
    222 F. 902 (2d Cir. 1915) ................................................................................... 5

*Bush & Lane Piano Co. v. Becker Bros.*,
    234 F. 79 (2d Cir. 1916) ......................................................................... 5, 7, 18

*Campbell v. United States*,
    365 U.S. 85 (1961) ........................................................................................... 12

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) ..................................................................... 2, 20

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
    508 U.S. 602 (1993) ......................................................................................... 12

*Door-Master Corp. v. Yorktowne, Inc.*,
    256 F.3d 1308 (Fed. Cir. 2001) .......................................................................... 6

*Erving Paper Mills v. Hudson-Sharp Machine Co.*,
    332 F.2d 674 (7th Cir. 1964) ............................................................................ 12

*Garretson v. Clark*,
    111 U.S. 120 (1884) .................................................................................... 10, 11

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ............................................................................................. 2

*United States v. Kim*,
    65 F.3d 123 (9th Cir. 1995) ................................................................................ 2

*Kokesh v. S.E.C.*,
    137 S. Ct. 1635 (2017) ..................................................................................... 14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) .................................................................. 4, 10, 15

*Lindahl v. Office of Pers. Mgmt.*,
    776 F.2d 276 (Fed. Cir. 1985) .................................................................................. 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .............................................................................. 13

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ................................................................................................. 8

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    134 S. Ct. 843 (2014) ......................................................................................... 3, 12

*Mercoid Corp. v. Mid-Continent Inv. Co.*,
    320 U.S. 661 (1944) ................................................................................................. 3

*Michery v. Ford Motor Co.*,
    650 F. App'x 338 (9th Cir. 2016) .......................................................................... 12

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998) ............................................................................... 5

*S.E.C. v. First City Financial Corp.*,
    890 F.2d 1215 (D.C. Cir. 1989) ............................................................................. 14

*Samsung Elecs. Co. v. Apple Inc.*,
    137 S. Ct. 429 (2016) ........................................... 4, 6, 7, 10, 11, 14, 16, 17, 18

*Schaffer v. Weast*,
    546 U.S. 49 (2005) ............................................................................................. 9, 11

*Selma, R. & D.R. Co. v. United States*,
    139 U.S. 560 (1891) ............................................................................................... 12

*Shinseki v. Sanders*,
    556 U.S. 396 (2009) ............................................................................................... 20

*In re Stevens*,
    173 F. 2d 1015 (C.C.P.A. 1949) .............................................................................. 6

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015) ............................................................................................... 8

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ....................................................................... 10, 15

*White v. Baca*,
    676 F. App'x 724 (9th Cir. 2017) .......................................................................... 20

*In re Zahn*,
    617 F.2d 261 (C.C.P.A. 1980) ................................................................................. 4

Statutory Authorities

15 U.S.C. § 1117(a) ................................................................................................ 10

17 U.S.C. § 504(b) ................................................................................................ 10

35 U.S.C. § 284 ..................................................................................................... 11

35 U.S.C. § 289 ................................................................................................ 3, 11

Treatises

2 McCormick on Evidence, § 337 (7th ed. 2013) ................................................. 11

Restatement (3d) of Restitution and Unjust Enrichment § 51 (2011) ................... 14

Legislative Materials

H.R. Rep. No. 49-1966 (1886) ......................................................................... 10, 13

Additional Authorities

Matt Levy, *Apple is trying to muddy design patent law in order to get its way*,
    IPWatchdog (Sept. 28, 2017), http://www.ipwatchdog.com/2017/09/28/apple-
    trying-muddy-design-patent-law/id=88535 ....................................................... 2

Sarah Burstein, *The "Article of Manufacture" Today*, https://papers.ssrn.com/sol3/
    Data_Integrity_Notice.cfm?abid=3033231 (draft of Sept. 16, 2017) ......................... 2, 8, 15

# INTRODUCTION

The Court should reject Apple's proposed multifactor test for identifying the relevant "article of manufacture" under Section 289 of the Patent Act, and should instead adopt the straightforward and easily administered test proposed by Samsung.  Apple's test has no basis in the text of the governing statute and ignores relevant Federal Circuit law.  Apple's test also creates great complexity and vagueness that will render "article of manufacture" inquiries difficult to administer in future cases.  And Apple's insistence that it is still entitled to Samsung's total profit on its entire phones makes a mockery of the Supreme Court's intervening decision.

Contrary to Apple's arguments, a patented design claiming only a portion of the exterior appearance of a multi-component product—whether a piano, a car or a smartphone—warrants total profit only from the component to which the patented design is applied.  It warrants no profit from the machine's hidden, interior components or any exterior component disclaimed by dotted lines in the patent drawing.  Because Apple asserted only narrow, partial designs that were applied to only narrow, partial portions of Samsung's phones, Apple is not entitled to total profit from Samsung's entire phones.  To the contrary, because Apple failed to meet its burden of both identifying the relevant articles of manufacture and proving the profit therefrom, judgment for *Samsung* is warranted.  But if the Court declines to enter judgment for Samsung, then Samsung is most certainly entitled to a new trial because the evidence here does not "establish as a matter of law that the entirety of Samsung's phones are the relevant article of manufacture."  Dkt. 3509 at 29.

This is so no matter whose test the Court adopts for identifying the relevant article of manufacture.  Under Samsung's straightforward and easily administered test, the Court would define, prior to trial, the relevant articles of manufacture based on the scope of the patents and the undisputed facts in the existing record, and then hold a new trial solely on the quantum of total profit from those articles.  Under Apple's complicated, cherry-picked, multifactor test, the Court would put to the jury both the identity of the relevant articles of manufacture and the quantum of total profit from those articles.  In either case, a new trial is required; under no circumstance could this Court forego a new trial and rule that the relevant articles of manufacture are the entire phones as a matter of law.  In light of the Supreme Court's decision, any such ruling would be reversible error.

Nor may Samsung be denied a new trial based on Apple's belated request that the Court deem this instructional error "harmless." Apple bears the burden of proving harmless instructional error, and Apple has waived that argument by failing to raise it previously. *See, e.g.*, *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). But even if the harmless-error argument were preserved (it is not), it would be Kafkaesque to apply it here given the intervening change of law. Samsung cannot be held to have failed to meet burdens that never before existed under a test that still has not been determined. Thus, even if the Court adopts Apple's newly minted test (it should not), Samsung should have, at the very minimum, a "fair opportunity to litigate [its] case in light of [the new] holding." *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010); *see. e.g.*, *United States v. Kim*, 65 F.3d 123, 126-27 (9th Cir. 1995) (remanding for new evidence based on change in law).

## **ARGUMENT**

### 1. **Apple's multifactor test for identifying the relevant article of manufacture is incorrect and unworkable.**

Before addressing the specific flaws in the factors Apple includes in its multifactor test for "article of manufacture," it is critical to point out two overarching flaws in Apple's test as a whole. *First*, Apple's multifactor test is needlessly complicated and vague, will create great uncertainty and unpredictability in application, and thus will chill legitimate innovation and competition. This Court should reject Apple's invitation (Br. 3 n.2) to create the *Georgia-Pacific* of design-patent law. *See generally* Sarah Burstein, *The "Article of Manufacture" Today*, https://papers.ssrn.com/sol3/Data_Integrity_Notice.cfm?abid=3033231 (draft of Sept. 16, 2017), at 16-43 (criticizing proposed multifactor tests like Apple's); *id.* at 24 (noting such a test would be "problematic in practice" because it would necessitate a "full trial on the merits" on the identity of the article under "a cloud of uncertainty," increase "the amount both sides would have to spend on damages experts," and give "design patent owners undue power to chill legitimate competition").[1] By contrast, Samsung's test

---

[1]    *See also* Matt Levy, *Apple is trying to muddy design patent law in order to get its way*, IPWatchdog (Sept. 28, 2017), http://www.ipwatchdog.com/2017/09/28/apple-trying-muddy-design-patent-law/id=88535 ("Rather than apply a straightforward objective analysis to identify

---

1  (compare the patent claim to the corresponding part, portion or component of the product) is just

2  like other easily administered tests in patent law like the test for infringement (compare the patent

3  claim to the corresponding portion of the product).

4      *Second*, Apple conspicuously (and erroneously) leaves out of its test the most important

5  factor: ***the scope of the patent***.  This is surely Hamlet without the Prince.  Section 289, by its terms,

6  allows for recovery of total profit from one who, "without license of the owner, (1) applies ***the***

7  ***patented design***, … to any article of manufacture for the purpose of sale, or (2) sells or exposes for

8  sale any article of manufacture to which ***such design*** ... has been applied."  35 U.S.C. § 289

9  (emphases added).  The statute cannot be administered without first ascertaining the scope of the

10  design claimed by the patent.  Portions of an accused product that do not correspond with the claimed

11  attributes of a patented design cannot be part of the article of manufacture to which the patented

12  design is applied.  Apple thus errs in suggesting (Br. 6-7) that the factfinder need not consider the

13  patented design in identifying the article of manufacture to which that design is applied.[2]

14      In fact, because a patent delineates the scope of a patentee's lawful monopoly, consideration

15  of the patent could not be more critical.  The Supreme Court has explained that a "patentee 'should

16  not be ... allowed to exact royalties for the use of an idea ... that is beyond the scope of the patent

17  monopoly granted,'" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 851-52

18  (2014) (quoting *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50 (1971)),

19  and accordingly requires a patent be "limited to the invention which it defines," *Mercoid Corp. v.*

20  *Mid-Continent Inv. Co.*, 320 U.S. 661, 665-66 (1944).  Thus, in the context of utility-patent

21  damages, the Federal Circuit cautions that, "[w]here small elements of multi-component products

22  are accused of infringement, calculating a royalty on the entire product carries a considerable risk

23

24  which component(s) bears the patented design, Apple proposes a totally subjective four-factor test

25  ….").

26  [2]  The U.S. government *amicus* brief on which Apple relies so heavily is in accord with Samsung

27  on this point.  *See* Br. for United States as *Amicus Curiae* in Support of Neither Party at 27-28

   *Samsung Elecs. Co. v. Apple Inc.*, No. 15-777 (U.S. June 8, 2016) ("U.S. Br.") (stating that the first

28  factor in determining the article of manufacture is "the scope of the design claimed in the plaintiff's

   patent").

1   that the patentee will be improperly compensated for non-infringing components of that product."

2   *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).  While such

3   "smallest saleable practicing unit" cases involve apportioning a royalty and not (as here) calculating

4   total profit from an article of manufacture, the same general principles apply in both contexts; here,

5   they require limiting the article of manufacture for purposes of Section 289 to the component of a

6   product that corresponds with the claimed, protected attributes of the patented design.

7        While Apple's disregard of the single most vital factor—***the patent***—is alone enough to

8   warrant rejection of its proposed test, the factors Apple does propose are also all flawed:

9        **Apple's first proposed factor**—"How the defendant sells its infringing product and

10   accounts for its profits on those sales" (Br. 3-4)—should be rejected out of hand.  *First*, Apple

11   flagrantly disregards the Supreme Court's decision, which specifically ***rejected*** Apple's contention

12   that the identity of the article of manufacture turns on how a product is sold.  The Supreme Court

13   held that "[t]he term 'article of manufacture,' as used in § 289, encompasses ***both a product sold to***

14   ***a consumer and a component of that product***," *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429,

15   434 (2016), expressly overruling the Federal Circuit's holding "that 'limit[ing] the damages' award

16   was not required because the 'innards of Samsung's smartphones ***were not sold separately*** from

17   their shells as distinct articles of manufacture to ordinary purchasers,'" *id.* (quoting Federal Circuit

18   decision; emphasis added, alterations in original).  The Court held this interpretation of Section 289

19   necessary in light of Section 171, which authorizes patents for designs for "article[s] of

20   manufacture" and is "'certainly'" not limited to "'articles separately sold.'"  *Id.* at 435 (quoting *In*

21   *re Zahn*, 617 F.2d 261, 268 (C.C.P.A. 1980)).

22        *Second*, Apple erroneously collapses the two steps the Supreme Court expressly listed as

23   separate and sequential, requiring (1) identifying the "article of manufacture" to which the patented

24   design has been applied, and only then (2) calculating the infringer's total profit on that article.

25   *Samsung*, 137 S. Ct. at 434.  Contrary to Apple's suggestion, whether the relevant article of

26

27

28

manufacture was sold separately and how the defendant accounts for profits on such sales are irrelevant to the identity of the article at step one; they are at most questions relevant to step two.[3]

*Third*, Apple misplaces reliance (Br. 4) on *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 904 (2d Cir. 1915) ("*Piano I*"), and *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998), as supposed support for its how-product-is-sold factor. Apple fails to mention that the **second** *Piano Case* expressly **rejected** a test based on whether pianos and piano cases are sold in separate markets, holding that the existence of a "separate market" for piano cases "makes no difference in the rule of law" that profits were recoverable only on the cases and not on the pianos, which "are different **articles**" no matter how sold. *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 82-83 (2d Cir. 1916) ("*Piano II*") (emphasis added). By analogy, the court explained, "[a] patent for a 'book binding' cannot, either justly or logically, be so identified with the entire book as to give all the profits on a work of literary genius to the patentee of a binding, although the binding was manufactured with and for that one book, and **has no separate commercial existence**." *Id.* at 81-82 (emphasis added). And in light of the Supreme Court's rejection of the Federal Circuit's "separately sold" test, Apple may no longer rely on *Nike* to argue that "article of manufacture" refers to "the product that is sold," as it repeatedly did earlier in this case (*e.g.* Dkt. 1694, at 140).

*Finally*, Apple's how-product-is-sold factor would be harmful as a practical matter, because complex multi-component products (like pianos and, *a fortiori*, cars and smartphones) **almost always** have components that are not sold separately. Thus, considering this factor would either give factfinders no help at all or else invite blatant evasion of the Supreme Court's core holding.

**Apple's second proposed factor**—"The visual contribution of the patented design to the product as a whole" (Br. 4-5)—should also be rejected out of hand. *First*, this factor ignores the key statutory language, which focuses on the article of manufacture to which "the patented design"

_____

[3] The Solicitor General again is in accord. *See* U.S. Br. 9, 19, *Samsung*, No. 15-777 ("The factfinder should identify the article in which the design prominently features, and that most fairly may be said to embody the defendant's appropriation of the plaintiff's invention," and, if that article is a product component, then "the sale of the complete product in commerce is properly viewed as a sale of the component as well, since title to the component is transferred as an incident of the larger sale.").

is applied.  Thus, what matters is what the design patent **claims**, and what component of the infringing product corresponds with that claimed design.  Nothing in the statute suggests that the identity of the article depends on some free-form aesthetic judgment about product appearance.

*Second*, Apple's proposed visual-contribution factor again collapses steps one and two of the Supreme Court's mandated two-step test.  The visual importance of the design to the product has nothing to do with the *identity* of the relevant article of manufacture at step one; it is at most a factor relevant to the *amount of profit* derived from that article at step two.  For example (*contra* Apple Br. 5), the article of manufacture to which a patented design for the exterior body of a car is applied is the body of the infringing car, not the entire car.  And the article of manufacture to which a patented cupholder design is applied is the cupholder.  A patent-holder might well recover more from infringement of the car-body design than the cupholder design because the former makes a greater contribution to profit—but such issues of quantification go only to *step two*, and have no bearing on the identity issue presented at *step one*.

*Third*, Apple's suggestion (Br. 4) that the article could somehow be the entire product if the patented design gives a "distinctive appearance to the product as a whole" is simply wrong as a matter of law.  A design patent for a portion of a phone's exterior may not "be applied to" hidden, non-ornamental, interior components of a product, period—no matter how "distinctive" such a design makes the exterior.  Apple ignores this well-established law.  *See, e.g.*, *In re Stevens*, 173 F. 2d 1015, 1016 (C.C.P.A. 1949) (holding a design patent may not extend to a feature that is "concealed or obscure[d] in normal use"); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312-13 (Fed. Cir. 2001) (similar; parties did not dispute that internal features of door were "concealed and thus [were] not protected by the design patent").  As Chief Justice Roberts put this common-sense point in colloquy:  "Maybe I'm not grasping the difficulties in the case.  It seems to me that the design is applied to the exterior case of the phones.  It's not applied to the—all the chips and wires. … So there should—there shouldn't be profits awarded based on the entire price of the phone."  *Samsung*, No. 15-777, Tr. 40:7-19; *see id.* at 52:8-9 (Roberts, C.J.: "It's applied to the outside of the phone."); *id.* at 43:16-18 (Sotomayor, J.: "it makes logical sense to me … that the Volkswagen body, not the innards, are the article of manufacture"); *id.* at 51:11-12 (Alito, J.: a

1    design for a smartphone's exterior components is "applied to the outside in a physical sense").  Thus,

2    a design covering a portion of a phone's exterior may **never** be "applied to" an entire phone,

3    including hidden, interior componentry, merely because it is visually "distinctive."

4        *Finally*, the highly subjective nature of Apple's proposed visual-contribution factor would

5    make the article-of-manufacture inquiry needlessly complex and unworkable in practice.  Indeed,

6    Apple never explains how a factfinder should measure a design's "visual contribution" to a product.

7        **Apple's third proposed factor**—"The degree to which the asserted article of manufacture

8    is physically and conceptually distinct from the product as sold" (Br. 5-6)—once again flouts the

9    Supreme Court's decision and should be rejected, for it erroneously refers to separability at the time

10   of sale.  To be sure, an article of manufacture may be a component of a product "distinct" from the

11   product as a whole.  *See Samsung*, 137 S. Ct. at 432 (suggesting that it is appropriate to ask whether

12   an accused product is "a single-component product, such as a dinner plate," or "a multicomponent

13   product, such as a kitchen oven"); *Piano II*, 234 F. at 82 ("The binding and the printed record of

14   thought respond to different concepts; they are different articles.").  But what matters is whether the

15   infringing product is **made up** of more than one component—not (*contra* Apple Br. 5) whether its

16   constituent components are "separable" "***when it is sold***" (emphasis added).  "That a component

17   may be ***integrated*** into a larger product ... does **not** put it outside the category of articles of

18   manufacture."  *Samsung*, 137 S. Ct. at 435 (emphases added).  Thus (*contra* Apple Br. 5), a car's

19   steering wheel and windshield are separate articles of manufacture even though steering wheels and

20   windshields cannot be "'physically separated from the [car] as a whole' when it is sold."  And

21   similarly, under the Supreme Court's decision, a smartphone's front face, front face with bezel, or

22   display screen while displaying a specific array of icons are separate articles of manufacture even if

23   "integrated" into the phone at the time of sale.

24       **Apple's fourth proposed factor**—"The defendant's reasons for appropriating the patented

25   design" (Br. 6)—is a factor made up by Apple out of whole cloth and has no place whatsoever in

26   the "article of manufacture" inquiry.  *First*, Apple cites no authority supporting the relevance of this

27   factor, and there is none.  The question is to which article of manufacture the patented design was

28   *physically* applied—*i.e.*, which "thing made by hand or machine" corresponds with the patented

design.   What the defendant thought or intended cannot transform the relevant article of manufacture, which is a *physical* thing, from a small component to a larger one.[4]

Second, in arguing (Br. 6) that the article might vary based on whether the defendant "intentionally copied the patented design," Apple merely duplicates its second, visual-importance factor, thus seeking to consider twice a factor that should not be considered at all.

*Third*, in any event, Apple ignores that copying is *irrelevant* to patent infringement.  *See, e.g.*, Dkt. 2219 at 14 ("Evidence of copying … is not evidence of infringement or knowledge thereof").  Because the proper article-of-manufacture test resembles the test for infringement, it would be incongruous to deem supposed copying any more relevant here than there.  Indeed, Apple cites no authority holding that copying is material to infringement or infringer's profits.

**2.    Identification of the relevant article of manufacture is ultimately a factual question for the jury but the critical factor—the scope of the design patent—is an issue of law for the court.**

Samsung (Br. 7-8) and Apple (Br. 7-9) agree that identification of the article of manufacture to which a patented design has been applied is ultimately a factual question for the jury where there are disputed issues.  But the ***scope of the design patent***, the first and critical step in this inquiry, is an issue of law for the Court.  The meaning of a patent claim is "'exclusively' for 'the court' to determine," *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)), and therefore the Court must either determine the article of manufacture itself based on the patent claim and the undisputed facts or else, if there is any factual dispute, instruct the jury on the scope of the claimed design in explaining how to identify the article to which that design has been applied.  *See* Burstein, *supra*, at 56 (arguing that "[j]udges, not juries would seem to be better suited to determine the relevant article of manufacture under §289," because such determinations "involve consideration of the scope of the patent claim" and are therefore "analogous to the issue in *Markman*"); *id*. at 57-58 (arguing that "[t]reating the 'article of manufacture' issue as one of law" would promote uniformity in patent law, provide

---

[4]   Not surprisingly, therefore, the test proposed by the Solicitor General, from which Apple cherry-picks, conspicuously omits Apple's fourth factor.  *See* U.S. Br. 27-29.

predictability, allow for earlier judicial outcomes, and limit the *in terrorem* value of design patents to chill innovation and competition).

### 3. The patent plaintiff (here, Apple) bears the burden of proof to identify the relevant article of manufacture for purposes of § 289.

The Court should reject Apple's burden-shifting proposal (Br. 9) under which a patent plaintiff would bear only the "initial burden of proving that the defendant applied the patented design to a product that was sold." This proposal—which adds nothing whatsoever to the patentee's existing burden to prove *infringement*—has no support in the text or history of Section 289, disregards Federal Circuit precedent, and again flouts the Supreme Court's decision. As Apple recognizes (Br. 3, 9), patent plaintiffs bear the burden of proving damages, and identification of the relevant article of manufacture is an element of that proof under Section 289. Accordingly, the burden of identifying the relevant article of manufacture belongs exclusively to the patent plaintiff, and the burden never shifts to the defendant to prove that the jury should "reduce damages" by identifying a *different* article of manufacture, as Apple wrongly suggests.

*First*, Apple's proposed burden-shifting regime disregards the governing statute. As the Supreme Court has explained, the "ordinary default rule" is that, when asserting a private cause of action, "plaintiffs bear the risk of failing to prove their claims" and therefore must "bear the burden of persuasion regarding the essential aspects of their claims." *Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005); *see id.* at 56 (generally "plaintiffs bear the burdens on the elements in their claims") (internal quotations marks omitted). While Congress may choose to shift that burden, the question whether it did so is one of legislative intent: "*Absent some reason to believe that Congress intended otherwise* … the burden of persuasion lies where it usually falls, upon the party seeking relief." *Id.* at 57-58 (emphasis added); *see Lindahl v. Office of Pers. Mgmt.*, 776 F.2d 276, 278-80 (Fed. Cir. 1985) (burden of proof fell on claimant because governing statute did not reveal intent to alter ordinary burden allocation). "When we are determining the burden of proof under a statutory cause of action, the touchstone of our inquiry is, of course, the statute." *Schaffer*, 546 U.S. at 56. And where Congress has demonstrated that it "knows how to" achieve a specific effect in one statute,

1   another statute may not be interpreted to achieve that same effect "absent clear textual evidence

2   supporting such an interpretation." *Astrue v. Ratliff*, 560 U.S. 586, 595 (2010).

3       Here, Apple ignores that the text of Section 289 stands in sharp contrast to the Copyright

4   and Lanham Acts, whose infringer's profits provisions expressly provide for burden shifting.  *See*

5   17 U.S.C. § 504(b) ("the infringer is required to prove … the elements of profit attributable to factors

6   other than the copyrighted work"); 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be

7   required to prove defendant's sales only; defendant must prove all elements of cost or deduction

8   claimed").   Because Congress chose, in contrast, ***not*** to include any burden-shifting language

9   whatsoever in enacting Section 289, the "ordinary default rule" applies.

10      *Second*, Apple ignores the legislative history of Section 289.  When Congress overruled the

11  *Dobson* cases by relieving the design-patent plaintiff of the burden to prove infringer's profits

12  attributable to the infringement, *see Samsung*, 137 S. Ct. at 432-33, it authorized an award of total

13  profit from the "article of manufacture" to which the patented design was applied.  Congress thus

14  changed the ***substantive*** burden on design-patent plaintiffs.  But Congress did nothing to shift the

15  ***placement*** of that new burden to defendants.  To the contrary, congressional supporters of Section

16  289's predecessor noted that a patent-holder may only "recover[] the profit actually made on the

17  infringing article ***if he can prove that profit***."  H.R. REP. NO. 49-1966, at 3 (1886) (emphasis added).

18  If Congress had intended to change *Dobson*'s rule that plaintiffs bear the burden of proving

19  infringer's profits, it would have said so explicitly in the statute enacted in response to *Dobson*.

20      *Third*, Apple's approach also conflicts with Federal Circuit precedent in analogous settings.

21  For example, in utility-patent cases, damages awards must "be based not on the entire product, but

22  instead on the 'smallest salable patent-practicing unit,'" unless the patent-holder proves "that the

23  demand for the entire product is attributable to the patented feature."  *LaserDynamics*, 694 F.3d at

24  67-68 (quotation omitted).  In those cases, patent plaintiffs alone bear the burden of proving ***both***

25  the identity of the relevant product component ***and*** the amount of damages associated with that

26  component.  "[A] patentee 'must in every case give evidence tending to separate or apportion the

27  defendant's profits and the patentee's damages between the patented feature and the unpatented

28  features.'"  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Garretson*

1  *v. Clark*, 111 U.S. 120, 121 (1884)).  Thus, the burden falls on "a patentee [to] identify damages

2  associated with the smallest salable patent-practicing unit," and this burden *never* shifts to a

3  defendant.  *Id.* at 1327; *see* Samsung Br. 10-11 (collecting authorities).

4         The correct approach under Section 289 is similar, even though this case involves articles of

5  manufacture and not apportionment.  Just as a utility-patent plaintiff may recover damages only "for

6  the use made of the invention by the infringer," 35 U.S.C. § 284, a design-patent plaintiff may

7  recover only the profit "an infringer makes from the infringement," *Samsung*, 137 S. Ct. at 434,

8  which is the total profit from the relevant article of manufacture.  Thus, just as the patent-holder

9  alone bears the burden under Section 284 of proving the amount of damages from use of the patented

10  invention, the patent-holder alone bears the burden under Section 289 of proving the amount of total

11  profit from the relevant article of manufacture corresponding to the patented design.  And when an

12  infringing product has multiple components, Sections 284 and 289 alike require the patent-holder

13  to prove the identity of ***and*** the quantum of damages/profit from the relevant component.

14         *Fourth*, Apple's erroneous burden-shifting proposal again flouts the Supreme Court's

15  decision by ignoring step one of the mandated two-step inquiry.  Contrary to Apple's suggestion

16  (Br. 3, 9), it may not meet its burden under Section 289 merely "by showing that the defendant

17  applied the patented design to a product that was sold."  To the contrary, the Supreme Court's central

18  holding is that the product a defendant sells is ***not*** necessarily the relevant article of manufacture.

19  Accordingly, Apple's proposal cannot satisfy the Supreme Court's step one, which requires

20  identification of the product ***or*** product component "to which [the patented] design or colorable

21  imitation has been applied.'"  *Samsung*, 137 S. Ct. at 434 (quoting 35 U.S.C. § 289, alteration in

22  original).

23         *Finally*, Apple errs in suggesting (Br. 10-11) that the defendant should bear the burden of

24  identifying the relevant article of manufacture because it supposedly has "superior knowledge" of

25  the accused product.  Such an argument is inapplicable outside the narrow context where there is

26  "*exclusive* knowledge in one party" of the relevant information, such that one party *alone* is capable

27  of proving or disproving a fact in issue.  2 MCCORMICK ON EVIDENCE § 337 (7th ed. 2013); *see*

28  *Schaffer*, 546 U.S. at 60 (noting that the "peculiar knowledge" exception is narrow) (quotations

omitted).  A burden shift based on asymmetrical information makes no sense where (as here) two competitors both make exactly the same type of product and thus possess virtually identical industrial knowledge.  Indeed, it would be ludicrous to suggest that Samsung has an informational advantage over Apple in knowing how smartphones are made.  Moreover, with modern discovery, design-patent plaintiffs are fully able to learn just as much as defendants about the components of any accused products, and indeed will typically do so in building their infringement case.  *See Medtronic*, 134 S. Ct. at 846.

Apple's cases (Br. 10-11) all fail to support shifting any burden to defendants where the governing statute plainly dictates otherwise.  *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602 (1993), involved an *express* statutory "presumption favoring determinations of [a retirement] plan sponsor," which "shift[ed] a burden of proof or persuasion to the employer."  *Id.* at 621.  In sharp contrast, Congress did not include any such burden-shifting scheme in Section 289.  *Campbell v. United States*, 365 U.S. 85, 96 (1961), concerned facts that really were "peculiarly within the knowledge of [the criminal defendant's] adversary"—including the contents of an investigative report the government could not be ordered to disclose.  At issue in *Michery v. Ford Motor Co.*, 650 F. App'x 338 (9th Cir. 2016), were "the considerations *which influenced the design* of [the defendant's] product," *id.* at 341—which is not relevant here.  Apple's other authorities are entirely off point.[5]

### 4.    The patent plaintiff (here, Apple) bears the burden of proof to demonstrate total profit on the relevant article of manufacture for purposes of § 289.

For similar reasons, the Court should reject Apple's argument (Br. 9) that a patent plaintiff meets its burden on quantum of profit from the relevant article of manufacture merely by proving

---

[5]    *Selma, R. & D.R. Co. v. United States*, 139 U.S. 560 (1891), and *Erving Paper Mills v. Hudson-Sharp Machine Co.*, 332 F.2d 674 (7th Cir. 1964), both concerned information that was solely within one party's possession.  *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413 (1978), announced a *California common-law* rule pertaining to the burden to prove facts within the defendant's peculiar knowledge about the design of a defective product.  *See id.* at 431.  That rule has no application to the federal statutory cause of action at issue here.

the amount of an infringing product's revenues, at which point the burden supposedly shifts to defendants to reduce that quantum commensurate with the correct article of manufacture.

*First*, it is settled that "[t]he burden of proving damages falls on the patentee," *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), and Section 289 contains no language shifting any part of that burden to defendants. This Court thus correctly instructed the prior juries that **Apple** had the burden of proving the amount of Samsung's profit: "Apple can elect to prove either actual damages, known as compensatory damages, or it may elect to *prove the defendant's profits* as its measure of potential recovery." Dkt. 1903 at 71 (No. 53 (emphasis added)).

*Second*, Apple errs in asserting (Br. 11) that "the seller of an infringing product is … in a better position to prove the 'total profit' on any article of manufacture that is less than the product as sold." As noted, modern discovery gives a plaintiff every opportunity to develop evidence to prove the defendant's total profit on the relevant article of manufacture. Apple's cited case, *In re Beckwith*, 203 F. 45 (7th Cir. 1913) (*see* Br. 11), only proves this was also true a century ago, for the court there held that the plaintiff was entitled to discovery because, ultimately, "the burden rests on the complainant to establish both fact and amount of profit attributable to the infringement." *Id.* at 48. Patent plaintiffs bear that same burden under Section 289.[6]

Moreover, the 1887 Congress that enacted Section 289's predecessor expressly solved any asymmetry of information problem by providing a statutory "minimum recovery of $250"—an remedy chosen expressly in order "to meet the case when the exact profit in dollars and cents cannot be proved." H.R. REP. NO. 49-1966, at 3 (1886); *see* S. Rep. No. 49-206, at 2 (similar). The $250 statutory minimum—not a burden-shifting regime—was and remains Congress's solution to

---

[6]  Apple complains (Br. 14 n.11) that "Samsung produced no competent evidence regarding its profits on any alternative articles of manufacture," but the Court has already found that Apple obtained access in discovery to "pricing information … about the component parts of Samsung's phones," Dkt. 3509 at 8, and Apple's own damages expert acknowledged that "Samsung provided a file that reflects *detailed* information on its material costs for the Accused Products," Dkt. 2607-5 at 16 (Supplemental Damages Report of Terry Musika). Apple has not explained why it could not use this and other information to arrive at a measure of component-level profits.

1  anticipated problems of proof.  The fact Congress has not since increased that floor does not give

2  courts any license to invent a burden-shifting scheme that has no basis in the statutory text.

3  *Third*, Apple's analogy (Br. 11-13) to government enforcement actions in securities-fraud

4  cases likewise fails.  As Apple acknowledges (Br. 12 n.8), **the courts** developed the disgorgement

5  regime applicable in such cases, "exercis[ing] their inherent equity power" because they labored

6  under an "absence of statutory authorization for monetary remedies."  *Kokesh v. S.E.C.*, 137 S. Ct.

7  1635, 1640 (2017) (citation and internal quotation marks omitted).  But while courts may have been

8  free in their exercise of "inherent equity power" to tailor a disgorgement regime to fill a gap in

9  securities law, there is no such latitude here:  Section 289 governs the infringer's profits remedy at

10  issue, and it makes no provision for burden shifting.  The judge-made burden-shifting regime in

11  SEC-initiated cases expressly "applies *only* in the context of an SEC enforcement suit, where

12  deterrence is the key objective" and a governmental agency is the plaintiff.  *S.E.C. v. First City*

13  *Financial Corp.*, 890 F.2d 1215, 1232 n.24 (D.C. Cir. 1989) (emphasis added).  Apple's securities

14  cases thus are inapposite to the context here of a statutory remedy in a suit between private parties.

15  Nor do common-law restitution principles (Br. 12-13) support Apple's proposal The

16  Restatement is clear in providing that "[a] **claimant** who seeks disgorgement of profit has the burden

17  of producing evidence permitting at least a reasonable approximation of the amount of the wrongful

18  gain."  RESTATEMENT (3D) OF RESTITUTION AND UNJUST ENRICHMENT § 51(5)(d) (2011) (emphasis

19  added).  In a Section 289 case, the "wrongful gain" is that from applying an infringing design *to the*

20  *relevant article of manufacture*.  *See Samsung*, 137 S. Ct. at 434-36.  Thus, under the Restatement's

21  rule, a Section 289 plaintiff "has the burden" of establishing at least a "reasonable approximation"

22  of the amount of profit earned *from the relevant article of manufacture*.  Proof of revenues on the

23  entire product is insufficient where a product component is the relevant article.

24  *Finally*, Apple is mistaken in analogizing (Br. 9, 13-14) its proposed shift of the burden of

25  proof on profit from the relevant article of manufacture to any shift of the burden of proof on costs.

26  Unlike the Copyright and Lanham Acts, Section 289 contains **no language whatsoever** providing

27  for any burden shifting to defendant.  And to the extent courts apply any judge-made burden shifting

28  on costs by analogy to provisions of those other statutes, such a shift could occur only *after* the

plaintiff identifies the relevant article of manufacture, and only *after* the plaintiff proves the defendant's revenues from that article.

> **5.** **The relevant articles of manufacture for the D'677 patent, D'087 patent, and D'305 patent are _not_ the entire phone; they are instead, respectively, the phone's round-cornered, glass front face; the phone's round-cornered, glass front face plus surrounding rim or bezel; and the phone's display screen while displaying the single, patented array of GUI icons.**

Based on its erroneous proposed article-of-manufacture test and erroneous burden-shifting proposal, Apple wrongly concludes (Br. 14) that Samsung's entire phones are the relevant articles of manufacture for all three design patents here. But this argument is baseless, and the Court need look no further in the record than the patents themselves and the corresponding components of Samsung's phones to see as much. Apple asserted only narrow, partial patent claims covering only the design of a round-cornered, glass front face of a phone (D'677 patent); a round-cornered front face and surrounding bezel of a phone (D'087 patent); and a single array of icons for a display screen (D'305 patent). Apple could never have proved infringement had it not confined its case to these narrow, partial claims. *See* Burstein, *supra*, at 9-10 (discussing partial claiming as a technique for increasing the chance to win infringement verdicts). The articles of manufacture to which those narrow patented designs were applied are, accordingly, the corresponding components of each accused phone. Apple's assertion that it is entitled, based on any one of these narrow, partial claims, to total profit on Samsung's entire phones thus fails because it would "improperly compensate[] [Apple] for non-infringing components of that product," *LaserDynamics*, 694 F.3d at 67, and erroneously "overreach and encompass components not covered by the patent," *id.* at 70; *see Virnetx*, 767 F.3d at 1326 (same), especially given that **none of the accused phones subject to the 2015 partial judgment was found to infringe all three patents**. Dkt. 1931 at 6-7; Dkt. 3290.

> **6.** **Ample evidence in the record supports Samsung's asserted articles of manufacture, even under Apple's proposed test.**

While the Court should reject Apple's proposed test for all the reasons above, a new trial is required **even if the Court adopts Apple's test** because, contrary to Apple's argument (Br. 15-21), the record does not establish as a matter of law that Samsung's entire phones are the relevant articles of manufacture under that test.

1      **Apple's Factor 1 — How the products or components are sold.** Apple first errs in arguing

2  (Br. 16) that Samsung's entire products must be the relevant articles of manufacture because "the

3  only articles Samsung sold were the infringing phones."   This argument explicitly seeks to

4  circumvent the Supreme Court's holding that a component may be the relevant article of

5  manufacture "whether sold separately or not." *Samsung*, 137 S. Ct. at 436.  Even if this factor were

6  proper (it is not), Apple overlooks evidence that Samsung *does sell* the components it makes to other

7  manufacturers, including Apple.  For example, Samsung's Chief Strategy Officer, Justin Denison,

8  testified that Samsung makes top-of-the-line display screens using super AMOLED display

9  technology, manufactures the glass for the front face of its devices, and manufactures other

10  components like the devices' processers.  Dkt. 1610 at 868-69, 886; Dkt. 1611 at 969; *see* Dkt. 1841

11  at 2805-06 (Samsung industrial designer Jinsoo Kim explaining how Samsung manufactures the

12  glass for the front surfaces of its devices).  Mr. Denison also testified that Samsung *sells its*

13  *components*, and that approximately 25% of the components in Apple's own phones, measured by

14  cost, are "actually supplied by Samsung." Dkt. 1611 at 969; Dkt. 1839 at 2148-53 (Apple's damages

15  expert testifying about components manufactured and sold by Samsung to competitors).  The jury

16  was therefore presented with evidence showing that the *components* to which the designs were

17  applied, and not just the complete phones, are separately sold and accounted for.

18      **Apple's Factor 2 — Visual contribution of the patented designs.** Apple likewise errs in

19  suggesting (Br. 16-17) that "all three patented designs" *when combined together* "made a prominent

20  visual contribution to the phones' overall appearance," for  the relevant article of manufacture must

21  be identified *for each patent*, not for Apple's patents collectively.   The pertinent question is

22  "whether, for *each* of the design patents at issue here, the relevant article of manufacture is the

23  smartphone, or a particular smartphone component." *Samsung*, 137 S. Ct. at 436 (emphasis added).

24  Apple fails to cite any evidence showing that any individual design made such a contribution to the

25  overall appearance of Samsung's entire phones.  Nor could it do so in light of the jury's verdict.

26      Specifically, *not a single product* subject to the 2015 partial judgment at issue here was

27  found to infringe any combination of all three design patents here.  Although the Court did not

28  permit the juries to identify the relevant articles of manufacture, it did instruct the first jury to

1   compare each accused phone to each patent individually.  Dkt. 1903 at 62 (No. 45).  That jury

2   proceeded accordingly—and did not find that *any* of the Samsung products subject to the partial

3   judgment infringed all three asserted Apple design patents.  Dkt. 1931 at 6-7.  To the contrary, the

4   jury found that all but one of the twelve Samsung products relevant here infringed only a single

5   design patent.  *Id.*; *see* Dkt. 3290.  Apple thus has no evidentiary basis for asserting that the purported

6   visual effect of its three designs was somehow distinctive collectively.

7        Consideration of each of Apple's patents individually shows that the visual-contribution

8   factor, even if relevant (it is not), if anything supports *Samsung*.  The D'305 patent covers only a

9   design for a specific array of icons reflected in a single applications screen buried below the home

10  screen on Samsung's accused phones.  *See, e.g.*, Dkt. 1997 at 4097-98.  No jury could possibly find

11  that such a design made a significant visual contribution to the overall appearance of Samsung's

12  entire phones.  Similarly, the D'677 and D'087 patents cover only narrow designs for portions of a

13  phone's exterior, and no jury could find that the basic form of a round-cornered rectangle gave

14  Samsung's entire phones their overall appearance, much less *required* to make such findings.[7]

15  **Apple's Factor 3 — The physical and conceptual separability of the components.**  Apple

16  further errs in insisting (Br. 17-18) that complex, high-functioning smartphones are "unitary

17  objects" lacking components "distinct from the phones as a whole."  Such a remarkable assertion

18  cannot be supported by evidence that the phones were sold as unified products or that witnesses

19  referred in testimony to the design of "phones" or "products" without further specificity.  A

20  smartphone is nothing like a "dinner plate," and is obviously far more complex and made up of

21  many more components than even a multi-component product like a "kitchen oven."  *See Samsung*,

22

23

---

24       [7]  The Court should also disregard Apple's irrelevant quotes from journalists (Br. 17) comparing
     the parties' products.  Most of these snippets refer to design features that are not elements of the

25   asserted patents at all—such as a "candybar shape," "an all black, shiny plastic body," and a
     "chrome-colored metallic border," *id.*  This Court recognized previously that the cited evidence does

26   not pertain to Apple's "actual patented designs."  Dkt. 2197 at 9; *see Apple Inc. v. Samsung Elecs.
     Co.*, 735 F.3d 1352, 1366 (Fed. Cir. 2013) (opining that such "isolated, anecdotal statements about

27   single design elements" do not show consumer perceptions about the patented designs).  None of
     this evidence, moreover, purports to show the visual significance of each design *individually*.

28

1    137 S. Ct. at 432.  If considering this proposed factor shows that Samsung's smartphones are

2    "unitary objects," that only proves this factor should not be considered.

3          In any event, the evidence shows that Samsung's products are made up of hundreds of

4    separable components and that they can be broken down physically into those separate components.

5    For example, Apple purchased a Samsung phone and demonstrated to the jury how it could be

6    dismantled piece by piece to study its components.  *See* Samsung Br. 16-17 (citing DX2519).  The

7    record also shows that Samsung could design around Apple's patents by changing discrete aspects

8    of the phones, such as using a different front face or updating the software to alter the icons, rather

9    than having to redesign entire phones.  *Id.* at 18.  And both parties' witnesses described individual

10   components of the finished products as discrete aspects of the larger product.  *Id.* at 16-18.  Thus,

11   just as the cover of a book is a  different article from the book's contents and the book as a whole,

12   *see Piano II*, 234 F. at 82, so the front glass surface of Samsung's phones and the single claimed

13   graphical user interface on their display screens are also distinct from other components and from

14   the phones as a whole.[8]

15        **Apple's Factor 4 — The defendant's intent in designing the product.**  Finally, Apple

16   mistakenly argues (Br. 19-20) that, because Samsung supposedly copied Apple's narrow patented

17   designs, Samsung's entire phones are the relevant articles of manufacture.  Even if this were a logical

18   conclusion (it is not), the evidence at trial did not require the jury to accept Apple's allegations of

19   copying.  To the contrary, the jury could have agreed with Samsung that it independently arrived at

20   its designs, because patent infringement has no mental state requirement.  And in any event, this

21   factor does not show that Samsung's entire phones *must be* the relevant articles of manufacture.

22        Specifically, the evidence showed that Samsung had independently designed numerous

23   iterations of rectangular, round-cornered, flat-faced devices ***by 2006—before the first iPhone was***

24   ***even announced***.  See DX684; Dkt. 1841 at 2818-20 (testimony regarding DX684).  The industrial

25   _____

26        [8]  Apple misplaces reliance (Br. 18) on its experts' statements referring in shorthand to similarity
     between the patents and the "design of Samsung phones," for the testimony could not be clearer that
27   Apple's experts limited their similarity opinions to the specific components of Samsung's phones
     that corresponded to the claimed designs, ignoring all other components.  *See* Samsung Br. 19-20.
28

design of Samsung's flagship phones in the years that followed continued these general design trends. *E.g.*, PX36.54. Samsung's designers all confirmed that they did not copy the iPhone in arriving at their designs, nor did they follow any supposed recommendations by non-designers to adjust designs in reference to the iPhone. Dkt. 1841 at 2821 (Jinsoo Kim); Dkt. 1840 at 2540-41, 2550-51 (JY Wang).

Moreover, the so-called "crisis of design" to which Apple refers had nothing to do with alleged copying of the iPhone's ***exterior appearance***. To the contrary, it referred to concerns about the design of the ***operating system*** in Samsung's phones, namely the Windows-based system used in the Omnia. *See* Dkt. 1611 at 997; PX40.2; PX36.67; Dkt. 2842 at 1047.[9] Samsung ultimately solved the operating-system issue not by redesigning its phones to look like the iPhone, but by adopting Android. Dkt. 1611 at 997 (Denison). And that, coupled with Samsung's inclusion of cutting-edge technology (like "having the fastest processor, the brightest screens," the earliest "3G and 4G" high speed network connectivity, and letting consumers choose their wireless network provider), is what led to Samsung's increase in market share. DX572.081-.082; Dkt. 1842 at 3044 (Wagner).

Thus, even if Samsung's intent were relevant to the identity of the relevant articles of manufacture (it is not), this factor would not support Apple's conclusion that Samsung's entire phones must be the articles of manufacture here.

**7.      Ample evidence in the record supports total profit amounting to a fraction of the profit on the entire phone for the relevant articles of manufacture.**

Finally, Apple errs in arguing (Br. 21-23) that the record did not contain evidence of the quantum of profit from the relevant components. As Samsung has shown (Samsung Br. 23), Apple's own damages experts admitted that total profit from the product components embodying Apple's claimed designs was much lower than entire-product profits, allowing the jury to calculate

---

[9]   Consumer feedback showed that users preferred the design of the Omnia and other early Samsung phones over the iPhone, but that usability of the operating system was an issue. PX36.64, .72. Samsung's executives *rejected* the idea that Samsung should "make something like the iPhone," and instead directed designers to "make Screen Size bigger" and fix the operating system problems. PX40.5.

1   Samsung's profits at amounts far lower than the $399 million award at issue.  But even if Apple

2   were right, it would simply mean that *no* profits could properly have been awarded because ***Apple***

3   bore the burden of proving Samsung's profits from the relevant articles of manufacture.

4          Contrary to Apple's contention (Br. 22-25), Apple's untimely invention of a new proposed

5   burden-shifting test ***five years after trial*** cannot possibly render the errors ***at trial*** harmless and

6   justify maintaining the existing $399 million judgment.  Apple clearly waived the harmless- error

7   arguments it makes now, and in any event, the harmless-error analysis is not such a counterfactual

8   hypothetical exercise.  Rather, prejudice is ***presumed***, *see Clem*, 566 F.3d at 1182, and here, nothing

9   in the "verdict indicates that the result would have been the same without the error'" *Dang v. Cross*,

10   422 F.3d 800, 811 (9th Cir. 2005) (reversing based on instructional error) (internal quotation marks

11   omitted); *see Clem*, 566 F.3d at 1183 (same).[10]  The Court instructed the jury that Apple bore the

12   burden of proving Samsung's profits.  *See* Dkt. 1903 at 71 (Inst. No. 53).  If Instruction No. 42.1

13   had been given, the jury therefore could have rejected an award of infringer's profits under Section

14   289 entirely, finding that components were the relevant articles and that Apple failed to prove profits

15   from those components.

16                                       **<u>CONCLUSION</u>**

17          For the foregoing reasons, the Court should grant a new trial on design-patent damages,

18   unless it enters judgment that Apple is entitled to no infringer's profits under Section 289.

19

20

21

22

23

24

25   ───────────────

26   [10]   *Shinseki v. Sanders*, 556 U.S. 396 (2009), did not involve instructional error and thus does not
     require a different test (*contra* Br. 23).  Notably, the Ninth Circuit has continued to presume
27   prejudice following *Shinseki*, *see, e.g.*, *White v. Baca*, 676 F. App'x 724, 725 (9th Cir. 2017), and
     this Court has rightly recognized that it must apply that standard, Dkt. 3509 at 31.

28

1    DATED:          September 28, 2017          QUINN EMANUEL URQUHART
2                                                  & SULLIVAN, LLP

3

4                                              By   */s/ Victoria F. Maroulis*
5                                                  John B. Quinn
                                                   Kathleen M. Sullivan
                                                   William C. Price
6                                                  Michael T. Zeller
                                                   Kevin P.B. Johnson
7                                                  Victoria F. Maroulis

8                                                  Attorneys for SAMSUNG ELECTRONICS CO.,
9                                                  LTD., SAMSUNG ELECTRONICS AMERICA,
                                                   INC., and SAMSUNG TELECOMMUNICATIONS
10                                                 AMERICA, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28