1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

6    APPLE INC., A CALIFORNIA          )  C-11-01846 LHK
     CORPORATION,                      )
                                       )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,              )
                                       )  OCTOBER 12, 2017
8         VS.                          )
                                       )  PAGES 1-62
9    SAMSUNG ELECTRONICS CO., LTD.,    )
     A KOREAN BUSINESS ENTITY;         )
10   SAMSUNG ELECTRONICS AMERICA,      )
     INC., A NEW YORK CORPORATION;     )
11   SAMSUNG TELECOMMUNICATIONS        )
     AMERICA, LLC, A DELAWARE          )
12   LIMITED LIABILITY COMPANY,        )
                                       )
13             DEFENDANTS.             )
     _____  )
14                                     )
                                       )

15

16        TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE LUCY H. KOH
17        UNITED STATES DISTRICT JUDGE

18

19

20        APPEARANCES ON NEXT PAGE

21

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
         TRANSCRIPT PRODUCED WITH COMPUTER

2

```
 1

 2     A P P E A R A N C E S:

 3     FOR PLAINTIFF          WILMER, CUTLER, PICKERING,
       APPLE:                 HALE AND DORR
 4                            BY:  WILLIAM F. LEE
                                   SARAH R. FRAZIER
 5                                 LAUREN B. FLETCHER
                              60 STATE STREET
 6                            BOSTON, MASSACHUSETTS  02109

 7                            BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
 8                            PALO ALTO, CALIFORNIA  94304

 9
                              MORRISON & FOERSTER
10                            BY:  ERIK OLSON
                              755 PAGE MILL ROAD
11                            PALO ALTO, CALIFORNIA  94304

12                            BY:  NATHAN SABRI
                              425 MARKET STREET, 32ND FLOOR
13                            SAN FRANCISCO, CALIFORNIA  94105

14

15     FOR DEFENDANT          QUINN, EMANUEL, URQUHART & SULLIVAN
       SAMSUNG:               BY:  KATHLEEN M. SULLIVAN
16                                 WILLIAM B. ADAMS
                              51 MADISON AVENUE, 22ND FLOOR
17                            NEW YORK, NEW YORK  10010

18                            BY:  VICTORIA F. MAROULIS
                                   BRETT J. ARNOLD
19                            555 TWIN DOLPHIN DRIVE
                              SUITE 560
20                            REDWOOD SHORES, CALIFORNIA  94065

21                            BY:  CARL G. ANDERSON
                              50 CALIFORNIA STREET, 22ND FLOOR
22                            SAN FRANCISCO, CALIFORNIA  94111

23                            BY:  BRETT DYLAN PROCTOR
                              865 SOUTH FIGUEROA STREET, 10TH FLOOR
24                            LOS ANGELES, CALIFORNIA  90017

25
```

```
 1        SAN JOSE, CALIFORNIA                    OCTOBER 12, 2017

 2                      P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AT 1:39 P.M.)

 4             THE CLERK:  PLEASE BE SEATED.

 5        YOUR HONOR, CALLING CASE 11-CV-01846, APPLE, INC., VERSUS

 6   SAMSUNG ELECTRONICS COMPANY, LIMITED, ET AL.

 7        COUNSEL, PLEASE STATE YOUR APPEARANCES.

 8             MR. LEE:  GOOD AFTERNOON, YOUR HONOR.

 9        FOR APPLE, FROM WILMER HALE, BILL LEE, MARK SELWYN,

10   LAUREN FLETCHER, AND SARAH FRAZIER.

11             MR. OLSON:  AND FROM MORRISON & FOERSTER FOR APPLE,

12   ERIK OLSON AND NATHAN SABRI.

13             MS. SULLIVAN:  GOOD AFTERNOON, YOUR HONOR.

14        FOR SAMSUNG FROM THE QUINN, EMANUEL LAW FIRM,

15   KATHLEEN SULLIVAN, TOGETHER WITH VICTORIA MAROULIS,

16   DYLAN PROCTOR, WILLIAM ADAMS, CARL ANDERSON, AND BRETT ARNOLD.

17             THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.  WELCOME.

18        SO I HAVE A NUMBER OF QUESTIONS ABOUT THE ARTICLE OF

19   MANUFACTURE TEST; THEN I HAVE A FEW QUESTIONS ABOUT THE EXACT

20   ARTICLES OF MANUFACTURE; AND THEN I HAVE A COUPLE OF QUESTIONS

21   ABOUT BURDEN SHIFTING; AND THEN, LIKE, TWO SMALL

22   HOUSEKEEPING -- ACTUALLY, PROBABLY THREE HOUSEKEEPING ISSUES

23   FOR THE END.

24        SO THE FIRST QUESTION I HAVE IS FOR BOTH PARTIES, AND THEN

25   AFTER THAT, I HAVE A COUPLE FOR EACH PARTY.  OKAY?
```

```
 1          SO LET'S START WITH THE ARTICLE OF MANUFACTURE TEST.  SO
 2     BEFORE THE U.S. SUPREME COURT, THE PARTIES SAID THE FOLLOWING
 3     ABOUT THE DEPARTMENT OF JUSTICE SOLICITOR GENERAL'S PROPOSED
 4     TEST.  THIS IS MS. SULLIVAN:  "WE -- WE LIKE THE SOLICITOR
 5     GENERAL'S TEST."
 6          THIS IS MR. WAXMAN:  "WE BELIEVE THAT THE, THE FOUR
 7     FACTORS THAT THE SOLICITOR GENERAL ARTICULATED WOULD BE
 8     APPROPRIATE FACTORS TO CONSIDER."
 9          SO MY QUESTION IS, WHY SHOULDN'T THIS COURT JUST ADOPT THE
10     DEPARTMENT OF JUSTICE TEST?  YOU BOTH SEEMED TO LIKE IT WELL
11     ENOUGH A YEAR AGO.  CAN WE JUST GO WITH THAT?
12          WHAT'S YOUR THINKING?
13               MR. LEE:  YOUR HONOR, TWO POINTS.
14               THE COURT:  UM-HUM.
15               MR. LEE:  FOR APPLE --
16               THE COURT:  OKAY.
17               MR. LEE:  -- I THINK ADOPTING THAT TEST WOULD BE FINE
18     WITH APPLE.  WE'VE TRIED TO REFINE IT IN THE FOUR FACTORS THAT
19     WE'VE GIVEN YOU.
20          TO THE EXTENT IT WOULD BE OF ANY USE TO THE COURT, AFTER
21     THE BRIEFING HERE, ANOTHER DISTRICT COURT HAS ACTUALLY CHARGED
22     A JURY, APPLYING --
23               THE COURT:  THIS IS IN SAN DIEGO?
24               MR. LEE:  IN SAN DIEGO.
25               THE COURT:  OKAY.  I'M AWARE OF THAT.
```

```
 1              MR. LEE:  AND IT'S VERY CLOSE TO THE SOLICITOR

 2    GENERAL'S FOUR FACTORS, SO WE THINK WE COULD LIVE WITH THAT.

 3    WE TRIED TO REFINE IT IN A WAY THAT WE THOUGHT WAS A LITTLE BIT

 4    CLOSER TO WHAT THE STATUTE SAID, BUT WE CAN LIVE WITH IT.

 5              THE COURT:  OKAY.  ACTUALLY, I HAD TWO QUESTIONS FOR

 6    YOU ABOUT YOUR, I GUESS, REFINEMENTS.  I CAN SAVE THAT FOR

 7    AFTER THEY ANSWER THE FIRST QUESTION OR I CAN POSE THEM TO YOU

 8    NOW.

 9              MR. LEE:  WHATEVER IS BEST FOR YOUR HONOR.

10              THE COURT:  OKAY.  LET'S TALK ABOUT YOUR, I GUESS

11    YOUR FIRST FACTOR, WHICH IS HOW THE PRODUCT IS SOLD.

12         IT SEEMED FROM THE SUPREME COURT'S OPINION, ARTICLE OF

13    MANUFACTURE CAN COVER THE PRODUCT OR IT CAN COVER A COMPONENT,

14    WHETHER THAT COMPONENT IS SOLD SEPARATELY OR NOT, WHICH SEEMS

15    TO INDICATE THAT IT DOESN'T MATTER HOW IT'S SOLD.

16         SO WHY SHOULD THAT BE A FACTOR?  AND FOR ALL

17    MULTI-COMPONENT PRODUCTS, AREN'T THEY SOLD TOGETHER AS A

18    PRACTICAL MATTER?  SO WOULD THAT EVEN BE A RELEVANT FACTOR?

19         SO WHY DON'T YOU ADDRESS YOUR FIRST FACTOR?  AND THEN ON

20    YOUR FOURTH FACTOR, IF WILLFULNESS ISN'T A REQUIREMENT, WHY

21    DOES IT MATTER WHAT THE DEFENDANT'S REASON IS --

22              MR. LEE:  SO IF I TAKE --

23              THE COURT:  -- FOR COPYING THE PHONE?

24              MR. LEE:  LET ME TAKE THE FIRST QUESTION FIRST.

25              THE COURT:  ALL RIGHT.
```

1           MR. LEE:  I THINK THERE ARE TWO ANSWERS TO THE

2    QUESTION.  THE FIRST IS IN 289 ITSELF, AND IF THE COURT

3    CONSIDERS 289, WHICH IS WHAT THE SUPREME COURT WAS DISCUSSING,

4    289, SUBSECTION (1), IS SPECIFICALLY TALKING ABOUT ANY ARTICLE

5    OF MANUFACTURE FOR THE PURPOSE OF SALE.  THAT'S WHAT IT'S

6    TALKING ABOUT.

7           AND THEN SUBSECTION (2) TALKS ABOUT SELLING OR EXPOSING

8    FOR SALE AN ARTICLE OF MANUFACTURE.  SO I THINK AS A STARTING

9    POINT, THE STATUTE ITSELF IS FOCUSSING ON THE SALE.

10          THE SECOND POINT, YOUR HONOR, IS THIS:  THE BACKDROP TO

11   ALL OF WHAT THE SOLICITOR GENERAL SAYS IS AT PAGE 26 OF THEIR

12   BRIEF, AND IT'S THE STATEMENT -- AND WE'VE QUOTED IT TO YOUR

13   HONOR BEFORE, BUT IF I COULD QUOTE IT AGAIN, IT'S JUST ONE

14   SENTENCE.

15          THE COURT:  GO AHEAD.

16          MR. LEE:  IT SAYS, "IN CONDUCTING THE INQUIRY OF WHAT

17   THE ARTICLE OF MANUFACTURE IS, THE FACT FINDER'S OVERARCHING

18   OBJECTIVE SHOULD BE TO IDENTIFY THE ARTICLE THAT MOST FAIRLY

19   MAY BE SAID TO EMBODY THE DEFENDANT'S APPROPRIATION OF THE

20   PLAINTIFF'S INVENTION."

21          THAT IS FOCUSSING ON, UNDER 289, ON THE EVENT THAT OCCURS

22   AT THE TIME OF INFRINGEMENT OR THE TIME OF SALE.

23          NOW, YOU CAN FOR SURE HAVE A MULTI-COMPONENT PRODUCT UNDER

24   THE SUPREME COURT'S HOLDING THAT MIGHT, RIGHT?  THE

25   MULTI-COMPONENT PRODUCT ITSELF, AT THE TIME OF SALE, IS THE

```
1    ARTICLE OF MANUFACTURE.

2         ALL THE SUPREME COURT SAID AND THE SOLICITOR GENERAL SAID

3    IS YOU COULD ALSO POSSIBLY HAVE A COMPONENT THAT AT THE TIME OF

4    SALE WAS THE ARTICLE OF MANUFACTURE.

5         AND THEN IF YOU COLLECTIVELY -- AND THIS IS WHAT WE WERE

6    TRYING TO DO WITH THE FIRST FACTOR IS FOCUS ON THE TEXT OF THE

7    STATUTE, WHICH WAS THE DRIVING FORCE BEHIND THE SUPREME COURT

8    AND THE SOLICITOR GENERAL'S BRIEF, AND THEN FOCUS ON THE

9    FACTORS, AND WE THINK THAT FOCUSSING ON THE FACTORS AT THE TIME

10   OF SALE IS IMPORTANT.

11        SO IF YOU LOOK AT JUST TWO --

12         THE COURT:  CAN I ASK YOU A QUESTION?  WHY -- I COULD

13   SEE HOW, HOW IT'S SOLD COULD BE RELEVANT TO THE SOLICITOR

14   GENERAL'S FOURTH FACTOR, THE EXTENT TO WHICH VARIOUS COMPONENTS

15   CAN BE PHYSICALLY SEPARATED FROM THE PRODUCT AS A WHOLE OR THE

16   MANNER IN WHICH THE COMPONENTS WERE MANUFACTURED.

17        DOESN'T THAT -- OR IS THAT SOMETHING DIFFERENT FROM WHAT

18   YOU'RE GETTING AT?

19         MR. LEE:  YOUR HONOR, I THINK THEY OVERLAP SOME, BUT

20   THEY'RE NOT ENTIRELY COINCIDENT.

21        SO IF YOU LOOK AT THE SOLICITOR GENERAL'S SECOND FACTOR

22   AND THE THIRD FACTOR --

23         THE COURT:  YEAH.

24         MR. LEE:  -- WHICH IS EXAMINING THE RELATIVE

25   PROMINENCE OF THE DESIGN WITHIN THE PRODUCT AS A WHOLE, THAT'S
```

```
1        OCCURRING AT SOME POINT IN TIME.  THERE'S A TEMPORAL ASPECT TO

2    IT.

3            AND THE THIRD FACTOR IS THE SAME THING, REFERRING TO THE

4    FACT FINDER CONSIDERING WHETHER THE DESIGN IS CONCEPTUALLY

5    DISTINCT FROM THE PRODUCT AS A WHOLE.

6            THERE IS A NECESSARY -- IT'S NECESSARY TO DETERMINE WHEN

7    THAT DETERMINATION IS MADE.

8            SO FOR THE SECOND, THIRD, AND FOURTH FACTORS, WE AGREE

9    THAT THERE'S SOME OVERLAP WITH OUR FIRST FACTOR.

10           BUT THE PURPOSE OF THE FIRST FACTOR IS TO CAPTURE THE FACT

11   THAT 289, IN BOTH SUBSECTION (1) AND SUBSECTION (2), IS

12   FOCUSSING ON THE TIME OF SALE.

13           AND IF YOU TAKE SECTION 289 AND READ IT IN THAT CONTEXT

14   AND LOOK AT THE SECOND, THIRD, AND FOURTH FACTORS IN THE S.G.'S

15   TEST, THEY'RE VERY MUCH FOCUSSED ON THE POINT OF SALE, THE

16   PRODUCT SOLD, AND THE IMPORTANCE OF THE DESIGN AT THAT POINT IN

17   TIME.

18           AND THAT'S THE REASON THAT WE TRIED TO CAPTURE THAT

19   CONCEPT AND THAT TEXT -- THAT HAS TEXTUAL BASIS IN SECTION 289

20   IN OUR FIRST FACTOR.

21           TO GO TO THE --

22               THE COURT:  OKAY.  CAN I ASK YOU A QUESTION?

23               MR. LEE:  SURE.

24               THE COURT:  SO THERE WAS -- AND I WAS GOING TO GET

25    INTO THIS LATER, BUT SINCE YOU'VE RAISED IT, SO SAMSUNG
```

```
 1          PROPOSES THE RELEVANT ARTICLE OF MANUFACTURE FOR THE D'305 HAS
 2          A TEMPORAL COMPONENT.  IT'S THIS DISPLAY SCREEN WHILE
 3          DISPLAYING THE SINGLE PATENTED ARRAY OF GUI ICONS.
 4              SO ARE YOU SAYING THE ARTICLE -- IT SOUNDS LIKE YOU'RE
 5          SAYING THE ARTICLE OF MANUFACTURE DOES HAVE A TEMPORAL
 6          LIMITATION.  IT HAS A, A POINT IN TIME LIMITATION, OR --
 7                  MR. LEE:  NOT IN THE SAME SENSE THAT I THINK THAT
 8          THEY'RE USING IT.
 9                  THE COURT:  OKAY.
10                  MR. LEE:  I'M SURE MS. SULLIVAN WILL TALK ABOUT WHAT
11          THAT TEMPORAL LIMITATION IS.
12                  THE COURT:  YEAH.
13                  MR. LEE:  I THINK WHAT WE'RE SAYING IS THAT IF YOU
14          THINK ABOUT A MULTI-COMPONENT PRODUCT, YOUR HONOR, AT ANY POINT
15          IN TIME, ANY PRODUCT -- MANY PRODUCTS COULD HAVE MULTI
16          COMPONENTS, EVEN THE PLATE THAT HAS BEEN THE SUBJECT OF THE
17          DISCUSSIONS BETWEEN ALL OF US.  THERE ARE MULTI COMPONENTS
18          BEFORE THE PLATE, THE CERAMIC PLATE BECOMES A CERAMIC PLATE.
19              THE QUESTION THEN BECOMES, AT WHAT POINT IN TIME IS THERE
20          AN ARTICLE OF MANUFACTURE, WHICH IS, I THINK -- WE BELIEVE
21          UNDER THE STATUTE IT'S CLEAR THAT THE DESIGN AND THE ARTICLE OF
22          MANUFACTURE ARE TWO THINGS.  THE DESIGN IS THE THING THAT'S
23          PATENTED, INNOVATIVE, AND CREATIVE, AND IT'S THEN APPLIED TO
24          THIS SEPARATE THING, THE ARTICLE OF MANUFACTURE.
25              AND THEN THE QUESTION IS, IN DETERMINING WHAT IS THE
```

1   ARTICLE OF MANUFACTURE, AT WHAT POINT IN TIME DO YOU FOCUS?

2        AND THE REASON, YOUR HONOR, I THINK THE STATUTE FOCUSES ON

3   THE POINT OF SALE IS THIS:  AT WHAT POINT IN TIME IS THE

4   INNOVATION OF THE DESIGN PATENT MISAPPROPRIATED BY THE

5   DEFENDANT?

6        AND THE POINT IN TIME IS WHEN THE DESIGN IS APPLIED TO AN

7   ARTICLE OF MANUFACTURE, WHATEVER THAT MIGHT BE, AND THEN IT'S

8   SOLD, AND THAT'S THE ACT OF INFRINGEMENT.

9        AND IT'S THE SELLING OF THE THING, THE ARTICLE OF

10  MANUFACTURE, TO WHICH THE DESIGN HAS BEEN APPLIED THAT IS THE

11  ACT OF INFRINGEMENT THAT THEN RESULTS IN LIABILITY AND REQUIRES

12  US TO DETERMINE DAMAGES.

13        THE COURT:  SO LET ME JUST MAKE SURE, BECAUSE I'M NOT

14  SURE I UNDERSTAND.

15        SO YOU'RE SAYING THERE'S A TEMPORAL LIMITATION TO -- FOR

16  THE SOLICITOR'S FOUR FACTORS, FACTORS 2, 3, AND 4, AND THAT YOU

17  MAKE THOSE DETERMINATIONS AT THE POINT OF SALE?  IS THAT --

18        MR. LEE:  AT THE TIME OF TIME.

19        THE COURT:  AT THE TIME OF SALE.

20        MR. LEE:  THAT'S THE ACT --

21        THE COURT:  AND THERE COULD BE MANY TIMES OF SALE,

22  RIGHT?  I MEAN, ARE WE GOING TO GET INTO A DISPUTE OF --

23        MR. LEE:  I DON'T THINK SO HERE, YOUR HONOR.

24        THE COURT:  OKAY.

25        MR. LEE:  BECAUSE FOR THE 35 MILLION SALES OR SO THAT

```
1    BECAME THE SUBJECT OF THE DAMAGES AWARD, NO ONE EVER CONTENDED

2    DURING DISCOVERY OR EXPERT REPORTS THAT YOU COULD TREAT ANY OF

3    THEM DIFFERENTLY BECAUSE THEY WERE MADE AT DIFFERENT TIMES.  NO

4    ONE EVER CONTENDED THAT THERE WERE DIFFERENT ARTICLES OF

5    MANUFACTURE FROM SALES AT DIFFERENT POINTS IN TIME.

6         IN FACT, AS WE'VE ARGUED TO YOUR HONOR, THERE WAS ONLY ONE

7    CONTENTION ABOUT THE ARTICLE OF MANUFACTURE DURING DISCOVERY,

8    AS YOUR HONOR NOTED IN HER OPINION.

9         THE COURT:  OKAY.  SO LET ME ASK, YOU HAVE YOUR OWN

10   TEST.  ARE YOU THEN SAYING THESE WERE IN ADDITION TO OR IN LIEU

11   OF THE SOLICITOR'S TEST?

12        MR. LEE:  IN LIEU OF.

13        THE COURT:  IN LIEU OF, OKAY.

14        MR. LEE:  AND TO BE FAIR, YOUR HONOR --

15        THE COURT:  I MEAN, SOME OF THEM LOOK QUITE -- YOUR

16   FACTOR 2 --

17        MR. LEE:  I THINK --

18        THE COURT:  -- SEEMS OVERLAPPING WITH THE SOLICITOR'S

19   FACTOR 2.

20        MR. LEE:  YES.  OUR FACTOR 3 --

21        THE COURT:  YOUR 3 IS OVERLAPPING WITH THE

22   SOLICITOR'S FACTOR 3 SORT OF, RIGHT?

23        MR. LEE:  IT'S ACTUALLY INTENDED TO CAPTURE BOTH 3

24   AND 4 FROM THE SOLICITOR'S FACTORS.

25        AND YOUR HONOR IS CORRECT, IN OUR FOURTH --
```

```
 1                THE COURT:  YES.
 2                MR. LEE:  -- IT'S DIFFERENT FROM WHAT THE SOLICITOR
 3       GENERAL HAS PROPOSED.  WE THOUGHT IT WAS IMPORTANT BECAUSE IF
 4       WE LOOK BACK AT THE GENESIS OF THE DESIGN PATENT STATUTE IN
 5       SECTION 289, IT WAS PREMISED ON THE FACT THAT -- TWO FACTS:
 6       ONE, DESIGN IS WHAT DRIVES SALES OF MANY PRODUCTS, AND THE
 7       PROOF THAT YOUR HONOR SAW DURING THE COURSE OF THE TWO TRIALS
 8       DEMONSTRATED JUST THAT.  THERE WERE SMARTPHONES WITH INNARDS
 9       WITH DIFFERENT DESIGNS BEING SOLD BY SAMSUNG BEFORE THE
10       INFRINGING PRODUCTS WERE INTRODUCED AND THE MARKET SHARE WAS
11       DROPPING.
12                AND THOSE SAME INNARDS WERE PACKAGED WITH THE DESIGNS THAT
13       WERE PATENTED AND INNOVATED BY APPLE AND MARKET SHARE TOOK OFF.
14                SO THE FACT THAT THE STATUTE IS PREDICATED UPON THE
15       PROPOSITION THAT DESIGN DRIVES SALES IS PART OF THE REASON.
16                THE SECOND IS, IF YOU LOOK BACK AT THE LEGISLATIVE
17       HISTORY, THE PREMISE AND THE REASON THERE'S A DISGORGEMENT
18       REMEDY IS THAT VERY FEW PEOPLE INADVERTENTLY INFRINGE A DESIGN
19       PATENT.  YOU'RE TRYING TO TRADE ON THE BRAND AND THE GOODWILL
20       OF ANOTHER PARTY AND YOU DO THAT BY MISAPPROPRIATING THEIR
21       DESIGN.
22                SO WE THOUGHT, AND WE THINK, THAT THE REASONS FOR
23       APPROPRIATING THE DESIGN ARE RELEVANT TO WHAT THE ARTICLE OF
24       MANUFACTURE IS.
25                SO STATED DIFFERENTLY, IF THE REASON FOR MISAPPROPRIATING
```

1    THE DESIGN IS TO REPACKAGE THE VARIOUS PARTS OF AN IPHONE IN A

2    DIFFERENT DESIGN SO YOU COULD SELL THAT DIFFERENT DESIGN, THAT

3    IS RELEVANT TO WHAT THE ARTICLE OF MANUFACTURE IS.

4         IF YOU'RE CLAIMING THAT IT'S A SMALLER COMPONENT, RIGHT,

5    THAT FACT WOULD TEND TO DISPROVE THAT PROPOSITION.

6         THE COURT:  YOU DON'T THINK EVIDENCE OF YOUR FACTOR 4

7    WOULD COME IN AS -- IN FACTOR 2 OF THE SOLICITOR'S TEST?  OR

8    SOME OF THE OTHER FACTORS?

9         MR. LEE:  I THINK, YOUR HONOR, IT COULD COME IN.  AND

10   I THINK THIS IS WHY WE SAY THAT WE THINK THAT WE COULD LIVE

11   WITH THE SOLICITOR GENERAL'S TEST.

12        I THINK IT COULD COME IN AS RELEVANT UNDER 2 AND 3.

13        THE COURT:  OKAY.  SO IF YOU WERE GOING TO HAVE A

14   FRANKENSTEIN OF YOURS AND THE SOLICITOR'S, WHAT WOULD YOU THINK

15   SHOULD BE ADDED?  I MEAN, 2 AND 3 SEEM LARGELY DUPLICATIVE.

16        MR. LEE:  YEAH.  I --

17        THE COURT:  SO I GUESS YOU JUST WOULD HAVE 1 AND 4.

18        MR. LEE:  YOU WOULD ADD 1 AND 4 TO THE SOLICITOR'S

19   FACTORS.

20        THE COURT:  OKAY.  LET ME HEAR FROM MS. SULLIVAN ON

21   DO YOU LIKE THE SOLICITOR'S TEST, WHAT DON'T YOU LIKE ABOUT IT,

22   WHAT WOULD YOU -- IF YOU HAD YOUR CHOICE TO DO A FRANKENSTEIN

23   AND ADD COMPONENTS OF YOUR TEST TO IT, WHAT WOULD THEY BE?  ARE

24   THEY LARGELY DUPLICATIVE?

25        MS. SULLIVAN:  THANK YOU, YOUR HONOR.

1          WE LIKE THE SOLICITOR GENERAL'S TEST, BUT WE LIKE OUR TEST

2     BETTER.

3               THE COURT:  OKAY.

4               MS. SULLIVAN:  AND AS WE SAID IN THE SUPREME COURT,

5     WE LIKE OUR TEST BETTER BECAUSE IT'S SIMPLER.  WE THINK OUR

6     TEST, WHICH JUST SAYS LOOK AT THE SCOPE OF THE PATENTED DESIGN

7     AND COMPARE THAT TO THE PART, PORTION, OR COMPONENT OF THE

8     PRODUCT TO WHICH THE PATENTED DESIGN IS APPLIED, THAT SIMPLE

9     TWO-STEP PROCESS IS VERY SIMILAR TO WHAT YOU INSTRUCT JURIES TO

10    DO IN THE INFRINGEMENT TEST.  IT'S SIMPLE, IT'S

11    STRAIGHTFORWARD, IT'S EASY TO ADMINISTER AND EASY TO APPLY.

12         SO THAT'S WHY WE THINK OUR TWO-STEP PROPOSAL IS THE BEST

13    PROPOSAL.

14         BUT THE SECOND BEST PROPOSAL IS CERTAINLY THE SOLICITOR

15    GENERAL'S TEST.  AND IF YOUR HONOR IS INCLINED TO ADOPT THAT

16    TEST, SAMSUNG BELIEVES THAT THAT TEST HAS A LOT OF MERIT.  WE

17    THINK OUR TEST IS BETTER, BUT WE THINK THE SOLICITOR GENERAL'S

18    TEST HAS A LOT OF MERIT.

19         THE KEY THING, YOUR HONOR, IS WE THINK YOU MUST NOT ADD

20    APPLE'S FIRST OR FOURTH FACTOR.  WE THINK THE MOST IMPORTANT

21    THING YOU CAN DO IN FASHIONING THE TEST IS NOT BE LED BY APPLE

22    INTO ERROR BY ADDING THE FIRST AND FOURTH FACTOR.

23         AND IF YOUR HONOR IS OKAY WITH IT, I'LL START WITH THE

24    FIRST APPLE FACTOR AND WHY IT SHOULD NOT BE ADDED.

25              THE COURT:  I'M NOT LIKELY TO ADD THE FIRST AND

```
1    FOURTH.  I MEAN, YOU CAN, BUT, I MEAN, I DID HAVE OTHER

2    QUESTIONS FOR YOU ON THIS.

3              MS. SULLIVAN:  UNDERSTOOD.

4              THE COURT:  BUT IF YOU WANT TO BRIEFLY ADDRESS 1 AND

5    4, THAT'S FINE.

6              MS. SULLIVAN:  VERY BRIEFLY, YOUR HONOR.

7              THE COURT:  OKAY.

8              MS. SULLIVAN:  APPLE'S FIRST FACTOR IGNORES THE

9    SUPREME COURT'S DECISION.  THE CENTRAL HOLDING OF THE SUPREME

10   COURT WAS TO REVERSE THE FEDERAL CIRCUIT FOR FINDING THAT THE

11   ARTICLE OF MANUFACTURE IS THE PRODUCT AS SOLD.

12        APPLE WANTS TO BRING IN, THROUGH FACTOR 1, THE VERY THING

13   IT LOST IN THE SUPREME COURT; AND IT'S ALSO MISREADING

14   SECTION 289 WHICH DOESN'T SAY ARTICLE OF SALE, IT SAYS ARTICLE

15   OF MANUFACTURE.

16        THE ISSUE IS, WHAT WAS MANUFACTURED?  SALES ARE OBVIOUSLY

17   IN THERE TO CREATE FEDERAL JURISDICTION UNDER THE COMMERCE

18   LAWS.  THAT'S THE ONLY REASON THEY'RE THERE.

19              THE COURT:  CAN I ASK YOU A QUESTION ABOUT THIS,

20   THOUGH?  EVEN THOUGH I'M NOT LIKELY TO ADD THE FIRST FACTOR,

21   I -- YOU KNOW, I THINK EVEN THE TEST THAT'S -- THE CASE THAT

22   SAMSUNG CITED BEFORE THE TRIAL WAS THE PIANO, THE PIANO CASE --

23              MS. SULLIVAN:  YES, YOUR HONOR.

24              THE COURT:  -- THE NEW YORK CASES FROM THE LATE 1890S

25   OR SO.  AND IT DOES SEEM THAT HOW IT'S SOLD AND WHETHER IT'S A
```

```
1        PIECE THAT CAN BE SEPARATELY SOLD IS A FACTOR THAT GETS
2        CONSIDERED, AND I'M PRETTY SURE THE PIANO CASE WAS ONE OF THE
3        MAIN CASES YOU ALL CITED BEFORE THE TRIAL.
4             AND SO EVEN THOUGH IT MAY NOT BE A FACTOR, YOU KNOW,
5        EXPLICITLY IN A MULTI-PART TEST, WHY ISN'T IT AT LEAST --
6        PERHAPS EVIDENCE COULD BE INTRODUCED ON THAT POINT TO HELP US
7        DECIDE SOME OF THESE OTHER SOLICITOR GENERAL FACTORS?
8             DOES THAT MAKE SENSE?
9             MS. SULLIVAN:  YES, YOUR HONOR.  I KNOW EXACTLY WHAT
10       YOU'RE ASKING.
11            THE COURT:  IT MIGHT BE EVIDENCE, EVEN THOUGH IT'S
12       NOT A FACTOR.
13            MS. SULLIVAN:  WE THOUGHT YOU MIGHT ASK THAT, YOUR
14       HONOR.  IT'S A VERY SENSIBLE QUESTION.
15            THE COURT:  YEAH.
16            MS. SULLIVAN:  LET ME SAY FIRST WHAT THE PIANO CASES
17       SAY.  THE PIANO CASES, WHICH WE THINK HAVE NOW BEEN, IN EFFECT,
18       EMBRACED BY THE SUPREME COURT, SAY JUST THE OPPOSITE.  THEY SAY
19       YOU DO NOT LOOK AT THE PRODUCTS AS SOLD.
20            IN PIANO CASE II -- REMEMBER, THERE'S TWO OF THEM -- IN
21       THE SECOND ONE, THE COURT SAID IT MAKES NO DIFFERENCE AS A
22       MATTER OF LAW HOW THE PRODUCTS WERE SOLD, NO DIFFERENCE AS A
23       MATTER OF LAW.  AND WE THINK THAT'S CORRECT.
24            WE THINK THE PIANO CASES ORIGINALLY, AND THE SUPREME COURT
25       NOW, IS ASKING YOU TO MAKE A PHYSICAL, OBJECTIVE DETERMINATION
```

1    OF WHAT THE ARTICLE OF MANUFACTURE IS TO WHICH THE DESIGN WAS

2    APPLIED.  THAT'S AN OBJECTIVE, PHYSICAL QUESTION AND IT DOESN'T

3    OCCUR AT THE TIME OF SALE.  THAT'S THE ONE THING WE KNOW FROM

4    THE SUPREME COURT.

5         SO PIANO CASE II, YOUR HONOR, WE CITE THE EXACT CITE IN

6    THE BRIEF, BUT IT EXPRESSLY HELD THAT HOW THE PRODUCT IS SOLD

7    MAKES NO DIFFERENCE AS A MATTER OF LAW.

8         SO WE ACTUALLY THINK YOU SHOULD KEEP HOW THE PRODUCT IS

9    SOLD TOTALLY OUT OF STEP 1 OF THE SUPREME COURT'S REMAND.

10   STEP 1 IS, WHAT IS THE TEST FOR IDENTIFYING THE ARTICLE OF

11   MANUFACTURE?

12        BUT, YOUR HONOR -- I UNDERSTAND YOUR HONOR'S INSTINCT,

13   SHOULDN'T IT BE RELEVANT TO SOMETHING?  AND I THINK THE ANSWER,

14   YOUR HONOR, IS WHAT THE SALE MIGHT BE RELEVANT TO IS -- MIGHT

15   BE RELEVANT TO -- IS STEP 2, WHAT'S THE QUANTUM OF PROFIT?

16   MAYBE YOU LOOK TO HOW THE PRODUCT IS SOLD AND WHETHER

17   COMPONENTS ARE SOLD SEPARATELY IN A PARTS MARKET OR AN

18   AFTERMARKET.  MAYBE YOU LOOK TO THAT IN DETERMINING, OR

19   INSTRUCTING A JURY TO DETERMINE, THE QUANTUM OF PROFIT IN

20   STEP 2.

21        BUT WE THINK THE ONE THING WE LEARNED FROM THE SUPREME

22   COURT IS THE PIANO CASES WERE RIGHT, FEDERAL CIRCUIT WAS WRONG,

23   AND HOW THE PRODUCT IS SOLD HAS NO BEARING AT ALL ON THE

24   IDENTITY OF THE ARTICLE OF MANUFACTURE.

25             THE COURT:  DO YOU WANT TO RESPOND TO THAT?

1          MR. LEE:  YEAH.

2          YOUR HONOR, I COULDN'T DISAGREE MORE.  THE SUPREME COURT

3     DIDN'T GO THAT FAR.  AND IF YOU LOOK AT THE NINE-PAGE OPINION

4     FROM THE SUPREME COURT, WHAT THEY THOUGHT THEY WERE GETTING

5     WHEN THEY TOOK CERT, WHICH IS A CASE INVOLVING APPORTIONMENT,

6     WAS ABANDONED DURING BRIEFING AND AT THE ORAL ARGUMENT, AND WE

7     THEN FOCUSSED ON THE ARTICLE OF MANUFACTURE, WHICH WAS ABOUT

8     TWO PARAGRAPHS OF THE FEDERAL CIRCUIT'S DECISION.

9          AND THE SUPREME COURT RECOGNIZED THREE CRITICAL THINGS:

10    THE FIRST THING IS, THE ONLY NARROW ISSUE IT COULD DECIDE IS

11    WHETHER THE ARTICLE OF MANUFACTURE HAD TO BE THE PRODUCT AS

12    SOLD.  THEY NEVER SAID IT COULDN'T BE.  NEVER SAID IT WASN'T

13    RELEVANT.  WHETHER IT HAD TO BE.

14         THE SECOND THING THAT IS CLEAR FROM THE SUPREME COURT'S

15    OPINION IS IT WASN'T ARTICULATING THE TEST THAT THEY'RE

16    DESCRIBING UNDER THE PIANO CASES OR OTHERWISE AND, IN FACT,

17    SPECIFICALLY REMANDED FOR THAT PURPOSE.

18         AND THE THIRD THING THAT'S CLEAR FROM THE ARGUMENT ITSELF

19    IS THAT ONE OF THE QUESTIONS THE SUPREME COURT HAD WAS WHETHER

20    SAMSUNG HAD OFFERED ANY EVIDENCE OR ANY CONTENTION THAT COULD

21    FAIRLY HAVE BEEN INTERPRETED TO IDENTIFY AN ARTICLE OF

22    MANUFACTURE LESS THAN THE PHONE.

23         THE COURT:  OKAY.  WELL, LET'S STAY FOCUSSED ON THE

24    TEST RIGHT NOW.  OKAY?

25         MR. LEE:  YEAH.

```
1              THE COURT:  THANK YOU.

2              MR. LEE:  I AGREE.

3              THE COURT:  ALL RIGHT.

4              MR. LEE:  YOUR HONOR, COULD I --

5              THE COURT:  GO AHEAD.

6              MR. LEE:  -- RESPOND ON THAT ONE POINT?

7              THE COURT:  YES.

8              MR. LEE:  AND I KNOW YOUR HONOR HAS OTHER QUESTIONS,

9       SO I'LL BE QUICK.

10             THE COURT:  YES.

11             MR. LEE:  IF YOU JUST LOOK AT 289, THE IDEA THAT THE

12      CONCEPT OF FOR SALE, WHICH YOUR HONOR KNOWS IS AN ACT OF

13      INFRINGEMENT, WAS THERE TO BE SURE THERE WAS JURISDICTION UNDER

14      THE COMMERCE CLAUSE OR A CONSTITUTIONAL BASIS DOESN'T MAKE ANY

15      SENSE.

16          AND IF YOU LOOK AT THE STATUTE, IT'S TALKING ABOUT

17      APPLYING THE DESIGN TO ANY ARTICLE OF MANUFACTURE FOR THE

18      PURPOSE OF SALE, OR SELLING ANY ARTICLE OF MANUFACTURE.  THAT'S

19      WHAT THE STATUTE SAYS.

20          THE SUPREME COURT NEVER SAID THAT THE SALE, THE MANNER IN

21      WHICH THE PRODUCT IS SOLD IS IRRELEVANT TO THE DETERMINATION.

22             THE COURT:  LET ME GO BACK TO MS. SULLIVAN.

23          I -- THERE MUST BE A DISPUTE HERE THAT I'M NOT AWARE OF.

24      WHY IS THE TIMING SO IMPORTANT?  BECAUSE I DON'T RECALL TIMING

25      BEING REALLY DISCUSSED, CERTAINLY AT THE SUPREME COURT HEARING,
```

1   OR REALLY IN THE BRIEFS.  THE TIMING OF WHEN YOU MAKE A

2   DETERMINATION ABOUT THESE FACTORS, WHY IS THAT RELEVANT?  THERE

3   MUST BE SOMETHING FACTUALLY HERE THAT MAKES IT QUITE IMPORTANT.

4          MS. SULLIVAN:  YOUR HONOR, WE DON'T THINK TIMING IS

5   IMPORTANT.  WE DO THINK THERE'S A TEMPORAL LIMIT TO A FLEETING

6   DESIGN, LIKE THE GUI, BUT LET'S PUT THAT OFF FOR A MINUTE.

7          WHEN YOU ASK A JURY TO DECIDE WHAT THE ARTICLE IS, OR IF

8   YOU DECIDE WHAT THE ARTICLE IS ON UNDISPUTED FACTS, YOU'RE NOT

9   LOOKING AT ONE MOMENT.  A MANUFACTURING PROCESS TAKES MANY

10  MOMENTS OVER TIME AND THE FACT FINDER SHOULD BE FREE TO LOOK AT

11  THAT ENTIRE MANUFACTURING PROCESS, NOT THE MOMENT OF SALE.

12         THE COURT:  SO HOW DO WE DETERMINE THEN WHICH MOMENT

13  OF MANUFACTURING IS THE CORRECT TIME TO MAKE THE DETERMINATION

14  OF THESE FACTORS?

15         MS. SULLIVAN:  ALL ASPECTS OF THE MANUFACTURING

16  PROCESS ARE POTENTIALLY RELEVANT.

17         IN OTHER WORDS, IN A MULTI-COMPONENT PRODUCT, IT MIGHT BE

18  VERY RELEVANT HOW THE COMPONENT IS MADE, IRRESPECTIVE OF THE

19  TIME OF SALE WHEN IT'S ASSEMBLED INTO A PRODUCT.

20         TO TAKE A SIMPLE EXAMPLE, YOUR HONOR, LET'S GO BACK TO THE

21  SUPREME COURT OPINION.  YOU'LL REMEMBER THAT, WRITING FOR THE

22  COURT, THE OPINION OF THE COURT MAKES A DISTINCTION BETWEEN AN

23  OVEN AND A PLATE, AND USES THE PLATE AS THE EXAMPLE OF A SINGLE

24  ARTICLE OF MANUFACTURE PRODUCT AND IT USES THE OVEN AS THE

25  EXAMPLE OF A MULTI-COMPONENT PRODUCT.

```
 1              THE COURT:  UM-HUM.

 2              MS. SULLIVAN:  BUT A PLATE IS A SINGLE COMPONENT

 3     PRODUCT, DISTINCT FROM A KITCHEN OVEN, NOT BECAUSE IT -- YOU

 4     KNOW, THEY'RE SOLD DIFFERENTLY.  THEY'RE BOTH SOLD AS A SINGLE

 5     PRODUCT AT THE TIME OF SALE.

 6         BUT THE SUPREME COURT SENT THIS CASE BACK INSTRUCTING YOU

 7     TO LOOK BEHIND THE MOMENT OF SALE AND TO SEE WHETHER THEY ARE

 8     PHYSICALLY MADE UP OF ONE COMPONENT, AS IN THE CASE OF THE

 9     PLATE, OR OF MANY COMPONENTS, AS IN THE CASE OF THE OVEN.

10         SO WE ACTUALLY THINK THAT IF THE SUPREME COURT DID

11     ANYTHING HERE, IT TOOK PRODUCT AS SOLD AND TIME OF SALE OUT OF

12     THIS INQUIRY.  THE INQUIRY IS AN OBJECTIVE INQUIRY INTO THE

13     PROCESS AND RESULTS OF MANUFACTURE.

14              THE COURT:  I SEE.  SO I THINK THE TIME, THE TEMPORAL

15     ISSUE IS NOW SORT OF COLLAPSING INTO THE WHOLE PRODUCT VERSUS

16     COMPONENT.

17              MS. SULLIVAN:  THAT'S EXACTLY RIGHT, YOUR HONOR.

18              THE COURT:  OKAY.  SO THAT'S WHY IT'S RELEVANT.  I

19     UNDERSTAND.  ALL RIGHT.  THANK YOU.  THANK YOU FOR CLEARING

20     THAT UP FOR ME.

21         OKAY.  LET'S GO TO THE DINNER PLATE.  YOU KNOW, I WOULD

22     ASSUME, IF THE DESIGN PATENT ONLY COVERS THE RIM, THAT THE

23     PLATE ITSELF, THE BIG CHUNK, THE MIDDLE THAT HAS ALL THE FOOD,

24     IS PROBABLY DISCLAIMED.

25         SO I DON'T SEE HOW, IN YOUR TEST, THAT THE ARTICLE OF
```

```
 1    MANUFACTURE WOULD BE THE WHOLE PLATE BECAUSE YOU SPECIFICALLY

 2    EXCLUDE, YOU KNOW, ANY PART, PORTION, OR COMPONENT OF A PRODUCT

 3    THAT IS DISCLAIMED BY THE PATENT.  AND IF, YOU KNOW, THE DESIGN

 4    PATENT IS ONLY COVERING THE RIM OF THE PLATE, THEN I JUST DON'T

 5    SEE HOW YOUR TEST WOULD MAKE SENSE WITH THAT DINNER PLATE

 6    EXAMPLE.

 7            CAN YOU EXPLAIN THAT, PLEASE?

 8            MS. SULLIVAN:  YES, YOUR HONOR.

 9            WE CONCEDE THAT IN A SINGLE ARTICLE PRODUCT, LIKE A

10    PLATE --

11            THE COURT:  UM-HUM.

12            MS. SULLIVAN:  -- I THINK OF IT KIND OF LIKE A LEAST

13    COMMON DENOMINATOR.  THE LEAST COMMON DENOMINATOR -- OR IT'S A

14    LITTLE BIT LIKE SMALLEST SALEABLE UNIT FROM THE UTILITY PATENT

15    CONTEXT.  WE CAN'T GET SMALLER THAN THE PLATE.  THE PLATE IS A

16    SINGLE PHYSICAL OBJECTIVE ARTICLE.  AND SO WE WOULD CONCEDE

17    THAT WHEN THE DESIGN FOR THE RIM IS APPLIED TO THE RIM OF THE

18    PLATE, THE PLATE IS THE ARTICLE OF MANUFACTURE.

19            WHERE OUR TEST WOULD COME OUT DIFFERENTLY IS WHERE THERE'S

20    A MULTI-COMPONENT PRODUCT, LIKE THE PRODUCT ACCUSED HERE, AND A

21    PARTIAL CLAIM IN A PATENT WHICH DISCLAIMS THE OTHER COMPONENTS.

22            SO WHEN THE DOTTED LINES SEGREGATE EVERYTHING BUT THE

23    FRONT FACE, WHEN THE DOTTED LINES SEGREGATE EVERYTHING BUT THE

24    FRONT FACE AND BEZEL, THOSE OTHER COMPONENTS, EXTERIOR AND

25    INTERIOR, ARE NOT CAPABLE OF BEING THE ARTICLE OF MANUFACTURE
```

1  TO WHICH THE PATENTED DESIGN IS APPLIED.

2      SO JUST TO SUM UP, YOUR HONOR, IF YOU APPLY A PATENTED

3  DESIGN TO A SINGLE ARTICLE PRODUCT, THE PRODUCT IS THE LEAST

4  COMMON DENOMINATOR, AND THERE WE CONCEDE THAT THERE'S GOING TO

5  BE A LITTLE BIT OF WINDFALL TO THE PLAINTIFF.  THEY'LL GET A

6  LITTLE BIT OF EXTRA FROM THE MIDDLE OF THE PLATE WHERE THE FOOD

7  GOES.

8      BUT THAT'S NOT THE CASE HERE, YOUR HONOR, BECAUSE OF

9  COURSE THE DOTTED LINES HERE DISCLAIM OTHER ASPECTS OF THE

10 EXTERIOR CASE AND, OF COURSE, BY DEFINITION, ANYTHING INSIDE.

11      THE COURT:  SO LET ME ASK, WHEN I LOOK AT THE

12 LANGUAGE OF YOUR PROPOSAL, I JUST DON'T SEE IT SUPPORTING WHAT

13 YOU'VE SAID ABOUT THE SINGLE ARTICLE PRODUCT.  WOULD YOU NEED

14 TO CREATE SOME KIND OF CARVE OUT AND SAY -- I'M NOT SURE HOW IT

15 WOULD BE WORDED.

16      MS. SULLIVAN:  I GUESS THE WAY I'D -- IF I COULD MAKE

17 A SUGGESTION, YOUR HONOR?

18      THE COURT:  YEAH.

19      MS. SULLIVAN:  SOMETIMES THE COMPONENT AND THE

20 PRODUCT IN A SINGLE ARTICLE PRODUCT WILL BE COEXTENSIVE.  SO IN

21 OTHER WORDS, THE COMPONENT IN THE PLATE CASE IS THE PLATE.

22 IT'S NOT THE RIM.  THE COMPONENT IN THE PLATE CASE IS THE SAME

23 AS THE PRODUCT BECAUSE IT'S A SINGLE ARTICLE PRODUCT.

24      AND THIS TAKES US BACK TO CONGRESS IN 1887, YOUR HONOR,

25 WHEN THEY WERE THINKING ABOUT WALLPAPERS, RUGS, AND OIL CLOTHS.

```
1    THEY WERE THINKING THERE THAT THE DESIGN IS APPLIED TO A SINGLE

2    ARTICLE, THE PRODUCT, THE RUG.

3            THE COURT:  UM-HUM.

4            MS. SULLIVAN:  THEY LET THE PATENTEE GET A LITTLE

5    WINDFALL FROM THE FIBERS AND PADDING IN THE RUG THAT AREN'T ON

6    THE SURFACE.

7            THE COURT:  UM-HUM.

8            MS. SULLIVAN:  BUT WE CONCEDE THAT WHEN THE PATENT IS

9    APPLIED TO A SINGLE ARTICLE PRODUCT, THE ARTICLE IS THE

10   PRODUCT.

11        WE JUST THINK THAT'S --

12            THE COURT:  YEAH.

13            MS. SULLIVAN:  -- PLATES, RUGS, OIL PAPERS.  IT

14   COULDN'T BE FARTHER FROM THE WORLD OF SMARTPHONES.

15            THE COURT:  BUT I STILL THINK THE LANGUAGE OF YOUR

16   TEST WOULD NOT ALLOW THAT BECAUSE IT SPECIFICALLY SAYS THE

17   RELEVANT ARTICLE OF MANUFACTURE DOES NOT INCLUDE ANY PART OF A

18   PRODUCT THAT IS DISCLAIMED BY THE PATENT, AND I WOULD ASSUME IN

19   THAT PLATE CASE, THEY HAD TO DISCLAIM EVERYTHING BUT THE RIM.

20   SO I --

21            MS. SULLIVAN:  SO, YOUR HONOR, WHAT WE --

22            THE COURT:  I JUST THINK YOUR CURRENT TEST WOULD NOT

23   WORK WITH THE PLATE.  THERE WOULD HAVE TO BE SOME CARVE OUT OR

24   SOMETHING FOR SINGLE ARTICLE PRODUCTS.

25            MS. SULLIVAN:  YOUR HONOR, MAYBE I COULD REFER YOU
```

1       TO -- MAYBE THE BEST PLACE WE STATED OUR TEST --

2               THE COURT:  YEAH.

3               MS. SULLIVAN:  -- IT'S IN DOCKET 3521 AT PAGE 3 AT

4       LINES 14 THROUGH 17.

5               THE COURT:  LINES 14 THROUGH --

6               MS. SULLIVAN:  SORRY.  THE LINES ARE A LITTLE OFF,

7       YOUR HONOR, BUT IT'S THE PARAGRAPH BEGINNING "ANALYSIS."

8               THE COURT:  UM-HUM.

9               MS. SULLIVAN:  AND IF YOU LOOK THERE, WE SAY THAT THE

10      TEST SHOULD BE THAT YOU EXAMINE, ONE, THE PATENT, WHICH DEFINES

11      AND LIMITS THE SCOPE OF THE PATENTED DESIGN; AND, TWO, THE

12      ACCUSED PRODUCT TO DETERMINE THE PART, PORTION, OR COMPONENT OF

13      THE PRODUCT THAT CORRESPONDS TO THE SCOPE OF THE PATENTED

14      DESIGN.

15          AND WE THINK THAT THE PORTION OF THE PRODUCT THAT

16      CORRESPONDS WHEN THERE'S A ONE COMPONENT PRODUCT HAS TO BE THE

17      COMPONENT.  IN OTHER WORDS, WE CONCEDE THAT SOMETIMES COMPONENT

18      AND PRODUCT WILL BE EXTENSIVE -- COEXTENSIVE.

19          IF YOU THINK THE SENTENCE ISN'T CLEAR ENOUGH, YOUR HONOR,

20      WE'D BE HAPPY TO TRY TO MAKE IT CLEARER.

21          BUT I WANTED TO BE VERY CLEAR ON OUR POSITION.  WE CONCEDE

22      THAT FOR A PLATE, LIKE A RUG, THE DESIGN, EVEN IF IT'S APPLIED

23      TO A PORTION OF THAT SINGLE ARTICLE, THE ARTICLE IS STILL THE

24      PRODUCT.

25              THE COURT:  YEAH, I'VE GOT --

```
 1              MS. SULLIVAN:  IT'S GOT TO BE A ONE ARTICLE PRODUCT.

 2              THE COURT:  I THINK THAT LANGUAGE WOULD HAVE TO BE

 3      TWEAKED BECAUSE IT SAYS "THE ACCUSED PRODUCT, TO DETERMINE THE

 4      PART, PORTION, OR COMPONENT OF THE PRODUCT THAT CORRESPONDS TO

 5      THE SCOPE OF THE PATENTED DESIGN."

 6              SO THAT LANGUAGE, TO ME, MEANS IT'S NOT THE PRODUCT, IT'S

 7      THE PART, PORTION, OR COMPONENT OF THE PRODUCT THAT CORRESPONDS

 8      TO THE SCOPE OF THE PATENTED DESIGN.

 9              ALL RIGHT.  THANK YOU.

10              OKAY.  CAN WE MOVE ON TO -- THE NEXT IS THE ARTICLE OF

11      MANUFACTURE.

12              ACTUALLY, SINCE WE'VE SORT OF TOUCHED ON THE TEMPORAL,

13      LET'S GO BACK TO THAT.

14              CAN YOU -- I DIDN'T REALIZE THAT -- I MEAN, THE TEMPORAL

15      LIMITATIONS NEVER CAME UP FROM WHAT I READ OF WHAT HAPPENED AT

16      THE SUPREME COURT AND THE FEDERAL CIRCUIT'S OPINIONS AND WHAT

17      NOT.

18              SO CAN YOU EXPLAIN, FOR THE D'305, THE RELEVANT ARTICLE OF

19      MANUFACTURE IS THE DISPLAY SCREEN WHILE DISPLAYING THE SINGLE

20      PATENTED ARRAY OF GUI, OR G-U-I, ICONS.

21              I'M NOT SURE HERE, IS ARTICLE OF MANUFACTURE THE SCREEN,

22      OR IS IT -- CAN YOU JUST EXPLAIN YOUR TIME LIMITATION HERE, THE

23      "WHILE DISPLAYING" LANGUAGE?

24              MS. SULLIVAN:  YES, YOUR HONOR.

25              THE -- AT A MINIMUM, WE SUGGEST THAT YOUR HONOR WOULD HAVE
```

1    TO LIMIT THE ARTICLE OF MANUFACTURE FOR THE D'305 TO THE

2    DISPLAY SCREEN, NOT ANY OTHER PORTION OF THE PHONE, LIKE THE

3    BATTERY, THE PROCESSOR, OR A LIGHT SOURCE, THAT HELPS A DISPLAY

4    BE PERCEPTIBLE.

5         AND THE CASE WE CITE TO YOUR HONOR IS IN RE: HRUBY,

6    H-R-U-B-Y, DISCUSSED IN OUR BRIEFS, AND THAT'S THE CASE IN

7    WHICH THE PREDECESSOR TO THE FEDERAL CIRCUIT HELD THAT A

8    CLAIMED FOUNTAIN DESIGN, THE DESIGN FOR THE SHAPE AND

9    DIMENSIONS OF THE WATER COMING OUT OF THE NOZZLE IN A FOUNTAIN

10   DISPLAY, IT HELD THAT THAT WAS A PATENTABLE DESIGN FOR PURPOSES

11   OF SECTION 171.

12        AND CRUCIAL FOR THE ANALOGY HERE IS HRUBY MAKES VERY CLEAR

13   THAT NOTHING ELSE ABOUT THE FOUNTAIN, NOT THE VALVES, NOT THE

14   NOZZLES, NOT THE CATCH BASIN, IS THE ARTICLE OF MANUFACTURE.

15   THE ARTICLE OF MANUFACTURE THAT'S PATENTABLE IS THE WATER IN

16   THE SHAPE THAT IS CREATED BY THOSE THINGS.

17        SO POINT ONE -- AND CRUCIAL, YOUR HONOR -- IS WE SAY THE

18   ARTICLE CAN ONLY BE THE DISPLAY SCREEN, NOT ANY OF THE OTHER

19   INNARDS OR CHIPS OR WIRES THAT MAKE THE DISPLAY PERCEPTIBLE.

20   THAT'S POINT ONE.

21        POINT TWO, YOUR HONOR -- AND THIS IS WHERE YOUR TEMPORAL

22   QUESTION COMES IN -- IS EVEN THE DISPLAY SCREEN IS TOO MUCH OF

23   AN ARTICLE OF MANUFACTURE TO FIT THE FUNDAMENTAL PRINCIPLE THAT

24   THE PATENT MONOPOLY IS LIMITED TO THE SCOPE OF THE INVENTION,

25   BECAUSE THE DISPLAY SCREEN IS GOING TO BE ABLE TO SHOW

1    THOUSANDS OF OTHER DISPLAYS THAT ALSO APPEAR ACROSS IT

2    FLEETINGLY.

3         AS YOU KNOW, YOUR HONOR, FROM THE TRIAL, APPLE'S OWN

4    WITNESSES AGREED THAT THE DISPLAY THAT'S CLAIMED BY THE D'305

5    IS SEVERAL LAYERS DOWN UNDER THE HOME SCREEN, ET CETERA.

6         SO, YOUR HONOR, IT WOULDN'T -- THERE WOULD BE A REAL

7    CONSTITUTIONAL PROBLEM WITH SECTION 289 IF IT GIVES APPLE ALL

8    THE PROFIT ON THE DISPLAY SCREEN FOR SOMETHING THAT IT MIGHT

9    DISPLAY ONLY FLEETINGLY.

10        AND WE THINK THAT TEMPORAL POINT IS IN HRUBY AS WELL,

11   BECAUSE HRUBY SUGGESTS THAT YOU CAN HAVE PATENTABLE DESIGN

12   PATENTS EVEN IF -- AND THIS IS THE WORD USED IN HRUBY -- THE

13   DESIGN IS DISPLAYED FLEETINGLY.  THE FOUNTAIN IS NOT ALWAYS ON.

14        BUT A FLEETING DESIGN PATENT MAY BE PATENTABLE.

15        AND WE THINK THE WAY TO READ 171, TOGETHER WITH

16   SECTION 289, WHICH THE SUPREME COURT SAID WE HAVE TO, IS TO

17   LIMIT SECTION 289 PROFITS, IN A FLEETING DESIGN INSTANCE, TO

18   THE MOMENT THAT THE DESIGN APPEARS.

19        SO IN OTHER WORDS, IF APPLE -- APPLE DESIGNS MANY GUIS AND

20   THEY ALL CAN APPEAR FOR DIFFERENT MICROSECONDS.  APPLE DOESN'T

21   GET THE ENTIRE PROFIT ON THE DISPLAY SCREEN FOR EVERY SINGLE

22   ONE OF THOSE PATENTS.  THAT WOULD LEAD TO TERRIBLY

23   DISPROPORTIONATE RECOVERY.

24        SO WHAT WE'RE TRYING TO DO HERE, YOUR HONOR, IS READ 171

25   TOGETHER WITH 289.  IF YOU CAN HAVE PATENTABLE DESIGN ON

1    FLEETING MATERIAL, THEN THERE OUGHT TO BE SOME KIND OF

2    LIMITATION TO THE FLEETING MATERIAL AND HOW YOU DEFINE THE

3    ARTICLE OF MANUFACTURE.

4         SO IT'S TWO STEPS, YOUR HONOR.  AT A MINIMUM, DISPLAY

5    SCREEN ONLY, NOT ALL THE OTHER APPARATUS; AND, SECOND, WITHIN

6    THE DISPLAY SCREEN, FIND SOME WAY TO CAPTURE THAT WHAT'S

7    PATENTED IS JUST THE DISPLAY OF THE DESIGN.

8         WE SUGGESTED TEMPORAL AS AN EASILY ADMINISTRABLE WAY TO DO

9    THAT, TO TRY TO THINK, WHAT IS THAT ARTICLE FOR THE TIME IT IS

10   BEING USED?

11        AND, YOUR HONOR, IN ADDITION TO HRUBY, WE WOULD JUST CITE

12   THE STATUTE ITSELF.  THE STATUTE HAS THE LANGUAGE THAT YOU CAN

13   HAVE A TOTAL PROFIT FROM THE ARTICLE OF MANUFACTURE TO WHICH

14   THE PATENTED DESIGN IS APPLIED.  YOU PAY IF YOU APPLY THE

15   PATENTED DESIGN TO THE ARTICLE OF MANUFACTURE.

16        AND THE TERM "APPLY" IMPORTS THE NOTION OF, IN A FLEETING

17   DESIGN CASE, THE TIME DURING WHICH IT IS APPLIED.

18             THE COURT:  LET ME --

19             MS. SULLIVAN:  WE RECOGNIZE THIS IS NEW LAW, YOUR

20   HONOR.  WE RECOGNIZE WE'RE ASKING YOU TO INTRODUCE SOMETHING

21   THAT ISN'T THERE.

22        WE DON'T -- JUST TO BE CLEAR, YOUR HONOR, WE THINK

23   TEMPORAL LIMITATIONS ARE IRRELEVANT AS TO TIME OF SALE.  THE

24   TIME OF SALE IS OUT.  THAT'S WHAT WE ALREADY TALKED ABOUT WITH

25   APPLE'S FACTOR 1.  SO WE DON'T THINK TIME IS A VERY IMPORTANT

1    ELEMENT HERE.

2         WE JUST USED TIME AS ONE WAY TO TRY TO MAKE SURE THAT 289

3    ISN'T LEADING TO AN UNCONSTITUTIONAL RESULT BY LIMITING THE

4    DISPLAY SCREEN'S PROFIT TO SOME KIND OF APPROXIMATION OF THE

5    RELATIVE TIME DURING WHICH IT'S GOING TO DISPLAY THE PATENTED

6    GUI RATHER THAN OTHER GUIS.

7         DOES THAT MAKE SENSE, YOUR HONOR?

8         I'M TELLING YOU WHAT WE'RE TRYING TO DO.  I CONFESS THAT

9    HRUBY IS HELPFUL, BUT IT'S NOT SQUARELY ON POINT.

10        BUT WE THINK THAT YOU HAVE TO DO SOMETHING TO GET THE

11   PROFIT DOWN FROM DISPLAY SCREEN AS A WHOLE TO CORRESPOND WITH

12   THE DESIGN THAT IS BEING APPLIED.  BECAUSE APPLE WASN'T

13   CLAIMING, IN THE D'305, THE THOUSANDS OF GUIS THAT MIGHT APPEAR

14   IN DIFFERENT VERSIONS OF THE IPHONE.  IT WAS JUST CLAIMING ONE

15   PATENTED GRID OF SPECIFIC ICONS, AND THAT JUST APPEARS, OR IS

16   APPLIED TO THE SCREEN, FOR A MOMENT HERE OR THERE.

17             MR. LEE:  YOUR HONOR, IF I COULD --

18             THE COURT:  I'M GOING TO -- I'LL LET YOU RESPOND TO

19   THAT, BUT I WANT TO ADD SOMETHING FOR YOU TO RESPOND TO.

20             MR. LEE:  SURE.

21             THE COURT:  AND THIS IS ALL ON THE D'305.

22             MR. LEE:  SURE.

23             THE COURT:  OKAY.  SO I'M GOING TO READ FROM THE

24   M.P.E.P., 1504.01(A).  IT SAYS, "THUS, IF AN APPLICATION CLAIMS

25   A COMPUTER-GENERATED ICON SHOWN ON A COMPUTER SCREEN, MONITOR,

```
 1        OTHER DISPLAY PANEL, OR A PORTION THEREOF, THE CLAIM COMPLIES

 2        WITH THE 'ARTICLE OF MANUFACTURE' REQUIREMENT OF 35 U.S.C.

 3        SECTION 171.  SINCE A PATENTABLE DESIGN IS INSEPARABLE FROM THE

 4        OBJECT TO WHICH IT IS APPLIED AND CANNOT EXIST ALONE MERELY AS

 5        A SCHEME OF SURFACE ORNAMENTATION, A COMPUTER-GENERATED ICON

 6        MUST BE EMBODIED IN A COMPUTER SCREEN, MONITOR, OTHER DISPLAY

 7        PANEL, OR PORTION THEREOF, TO SATISFY 35 U.S.C. SECTION 171."

 8             SO DOESN'T THIS SUGGEST THAT THE ARTICLE OF MANUFACTURE

 9        FOR THE D'305 IS SOMETHING LESS THAN THE WHOLE PHONE?

10             MR. LEE:  IT -- THE ANSWER IS NO, YOUR HONOR.

11             BUT I WANT TO BE SURE THAT I RESPOND TO A COUPLE POINTS

12        MS. SULLIVAN MADE.

13                  THE COURT:  OKAY.

14             MR. LEE:  BUT I CAN TAKE THEM IN ANY ORDER THAT YOUR

15        HONOR WANTS.

16                  THE COURT:  IT DOESN'T MATTER.

17             MR. LEE:  OKAY.  SO FOUR POINTS, AND THE FOURTH WILL

18        BE ADDRESSING THE M.P.E.P.

19                  THE COURT:  OKAY.

20             MR. LEE:  BECAUSE 171 AND 289, WHILE THEY USE THE

21        SAME WORDS, ARE DIFFERENT.  AND THAT'S SOMETHING THAT WAS

22        BEFORE THE SUPREME COURT, AND THEY ARE ACTUALLY TALKING ABOUT

23        DIFFERENT THINGS AT DIFFERENT POINTS IN TIME.

24             BUT FOUR POINTS.

25             IF WE COULD JUST STEP BACK AND PAUSE FOR A MINUTE AND
```

1    THINK ABOUT WHAT SAMSUNG IS URGING YOUR HONOR, THEY JUST SAID

2    TO YOU THAT THE SUPREME COURT DECIDED THAT FOR ANY

3    MULTI-COMPONENT PRODUCT, THE PRODUCT ITSELF COULD NEVER BE THE

4    ARTICLE OF MANUFACTURE.

5         IF WE COULD JUST ASK THE COURT TO PAUSE FOR A MINUTE,

6    THERE WAS NO DOUBT THAT WE'RE DEALING WITH A MULTI-COMPONENT

7    PRODUCT.  IF THAT'S WHAT THE SUPREME COURT WAS SAYING, IT WOULD

8    HAVE SAID, "NO, THIS PRODUCT CAN NEVER BE THE ARTICLE OF

9    MANUFACTURE."

10         MS. SULLIVAN:  YOUR HONOR, I DIDN'T SAY THAT, SO I'LL

11    ASK LEAVE TO REPLY.

12         MR. LEE:  SO -- FAIR ENOUGH.  I MAY HAVE MISHEARD.

13         BUT I THINK I HEARD THAT THERE WAS AN EXCEPTION FOR THE

14    PLATE, WHICH WAS A SINGLE COMPONENT PRODUCT, BUT FOR ANY

15    MULTI-COMPONENT PRODUCT, BY DEFINITION, THE PRODUCT COULDN'T

16    BE -- THE PRODUCT AS SOLD COULDN'T BE THE ARTICLE OF

17    MANUFACTURE.

18         YOUR HONOR, WHAT THE SUPREME COURT SAID AT PAGE 8 OF ITS

19    OPINION IS "THE TERM 'ARTICLE OF MANUFACTURE' IS BROAD ENOUGH

20    TO EMBRACE BOTH THE PRODUCT SOLD TO A CONSUMER AND A COMPONENT

21    OF THAT PRODUCT, WHETHER SOLD SEPARATELY OR NOT."

22         ALL IT WAS FOCUSSING IN ON IS THE NARROW QUESTION OF, DOES

23    IT ALWAYS HAVE TO BE THE PRODUCT AS SOLD?  IT WAS NEVER A

24    SUGGESTION THAT IT COULD NOT BE.

25         AND A GOOD EXAMPLE OF WHAT SAMSUNG IS TRYING TO DO BY

1    FUNDAMENTALLY COLLAPSING THE SCOPE OF THE CLAIMS -- TO GO TO

2    YOUR HONOR'S DOTTED LINE QUESTION -- WITH A QUESTION OF ARTICLE

3    OF MANUFACTURE, AND THAT'S WHY I SAID AT THE OUTSET THEY'RE TWO

4    DIFFERENT THINGS, IS WHAT SAMSUNG SAYS TO YOU ABOUT THE DESIGN

5    PATENT ON A CAR.

6         THERE IS A DESIGN PATENT ON THE SHAPE OF A VW BUG, OR

7    VW BEETLE.  UNDER SAMSUNG'S ANALYSIS -- AND THEY ACTUALLY SAY

8    THIS TO YOU IN THE BRIEF -- THE ARTICLE OF MANUFACTURE IS ONLY

9    THE OUTER PORTION OF THE CAR.

10        IT'S NOT.  THE DESIGN OF THE BEETLE, THE VOLKSWAGON

11   BEETLE, IS APPLIED TO THE ENTIRETY OF THE CAR FOR THE PURPOSE

12   OF SELLING THAT CAR WITH THAT DESIGN.

13        THIS IDEA, TO GO TO THE D'305, THAT SOMEHOW YOU SHOULD

14   COME UP WITH A TEMPORAL LIMITATION OR ALLOCATE TIME, THIS IS

15   JUST APPORTIONMENT BY A DIFFERENT NAME.  IT'S TRYING TO GET YOU

16   TO COME UP WITH SOME FORMULA TO APPORTION THINGS DOWN.

17        NOW, TO GO TO YOUR HONOR'S LAST QUESTION, THE FOURTH

18   POINT, THERE'S A DIFFERENCE BETWEEN SECTION 171 AND 289.  ONE

19   IS DEALING WITH, WHICH YOU HAVE TO DO TO HAVE A VALID

20   INVENTION, IT TALKS ABOUT APPLYING TO AN ARTICLE OF

21   MANUFACTURE.

22        THE QUESTION UNDER 289 IS WHAT HAS, IN FACT, HAPPENED?

23   THAT'S WHY I EMPHASIZED THE "AS SOLD" OF 289 IN BOTH

24   SUBSECTIONS 1 AND 2, AND THE FOCUS IS ON WHAT HAS THE DEFENDANT

25   DONE?  WHAT HAS IT DONE WITH THE DESIGN AND HOW -- WHAT HAS IT

1    APPLIED IT TO?

2         AND THERE IS NO TEMPORAL LIMITATION BECAUSE YOU'RE

3    APPLYING THE DESIGN FOR A REASON, AND IN SOME SENSE, THE D'305

4    IS -- WELL, IT'S CERTAINLY DIFFERENT THAN THE OTHER TWO.

5         BUT IT'S ACTUALLY DIFFERENT IN A WAY THAT MIGHT DRIVE YOU

6    FURTHER TOWARDS THE POSITION THAT WE'VE TAKEN, WHICH IS THIS:

7    WITHOUT THE INNARDS OF THE PHONE, YOU CAN'T DISPLAY THAT

8    SCREEN.  WITHOUT THE SOFTWARE, YOU CAN'T DISPLAY THAT SCREEN.

9    YOU CAN'T HAVE IT COME UP.  YOU CAN'T HAVE IT HAVE THOSE ICONS

10   IN THAT ORDER.  YOU CAN'T MANIPULATE THOSE ICONS.

11        AND THIS IS ALL THE RESULT OF TAKING THE DESIGN, APPLYING

12   IT TO A SCREEN USING SOFTWARE THAT DOES THE SAME THING, AND

13   IT'S ALL REQUIRED TO MAKE IT HAPPEN.

14        AND THAT'S WHY THE PHONE, EVEN FOR THE D'305, WAS THE

15   FOCUS.  IT WAS THE INFRINGING PRODUCT.  THE DESIGN WAS APPLIED

16   TO THAT PRODUCT.  IT WAS DESIGNED FOR THE PURPOSE OF SELLING

17   IT.

18        AND WE KNOW THAT FROM SAMSUNG'S OWN DOCUMENTS AND OWN

19   WITNESSES, AND THAT'S WHY WHAT THEY'RE TRYING TO DO NOW IS

20   BASICALLY TO APPORTION.

21        AND I THINK, YOUR HONOR, THE FUNDAMENTAL DISAGREEMENT

22   BETWEEN US IS WHETHER THERE'S A DISTINCTION BETWEEN WHAT IS

23   CLAIMED IN THE ARTICLE OF MANUFACTURE.  DOES ONE COLLAPSE INTO

24   THE OTHER, AS SAMSUNG SUGGESTS?  OR ARE THEY TWO DIFFERENT

25   THINGS?

1    AND THE SUPREME COURT HAS TOLD US, WE BELIEVE, THAT THEY

2    ARE, FIRST, TWO DIFFERENT THINGS.  THEY'RE NOT LIMITED TO THE

3    PRODUCT AS SOLD, BUT THEY CERTAINLY CAN BE THE PRODUCT AS SOLD.

4    AND, CRITICALLY, THEY CAN BE THE PRODUCT AS SOLD IN A

5    MULTI-COMPONENT CONTEXT.

6    BECAUSE IF IT WERE DIFFERENT, THERE WOULDN'T BE ANY REASON

7    TO REMAND TO YOUR HONOR FOR THE PROCEEDINGS THAT WE'RE A PART

8    OF NOW.

9    THE COURT:  CAN I ASK A QUESTION ABOUT -- AND THIS IS

10   FOR MS. SULLIVAN.

11   I WAS A LITTLE BIT CONFUSED IN THAT SAMSUNG'S POSITION IS

12   THAT DETERMINING THE ARTICLE OF MANUFACTURE IS A QUESTION FOR

13   THE JURY.  IT'S A FACT QUESTION.

14   BUT THEN YOU SAY THAT I SHOULD DECIDE IT ON SUMMARY

15   JUDGMENT BECAUSE THERE'S NO MATERIAL FACTUAL DISPUTE, OR AT

16   LEAST GIVE A JURY INSTRUCTION TO THE JURY THAT THEY CANNOT

17   CONCLUDE THAT THE ARTICLE OF MANUFACTURE IS THE WHOLE PHONE OR

18   THE WHOLE PRODUCT.

19   MS. SULLIVAN:  YES, YOUR HONOR.

20   THE COURT:  AND SO I'M -- I'M CONFUSED IN THAT, YOU

21   KNOW, NUMBER ONE, THERE'S CLEARLY A DISPUTE AS TO WHAT THE

22   ARTICLE OF MANUFACTURE IS, SO I -- I MEAN, WE'LL HAVE TO SEE

23   WHEN SUMMARY JUDGMENT IS BRIEFED, BUT AT THIS POINT, IT SEEMS

24   DIFFICULT -- BOTH SIDES AGREE IT'S A FACT QUESTION.  IT JUST

25   SEEMS DIFFICULT AT THIS POINT TO SAY THAT THERE'S NO FACTUAL

```
 1        MATERIAL DISPUTE ON WHAT THE RELEVANT ARTICLE OF MANUFACTURE

 2        IS.

 3             AND THEN THE SECOND QUESTION IS, I'M JUST HAVING THIS

 4        DIFFICULTY OF IF IT'S A FACT QUESTION, IT SHOULD GO TO THE

 5        JURY.

 6             BUT THEN HOW SHOULD I BE DECIDING IT AS A MATTER OF LAW ON

 7        SUMMARY JUDGMENT OR IN JURY INSTRUCTIONS?  IT JUST SEEMS LIKE

 8        THERE'S A TENSION THERE THAT I DON'T FULLY UNDERSTAND.

 9             MS. SULLIVAN:  THANK YOU FOR THE CHANCE TO ADDRESS

10        THAT, YOUR HONOR, AND LET ME TRY TO DISPEL THE TENSION.

11             YOU'VE STATED OUR POSITION EXACTLY CORRECTLY.  ULTIMATELY,

12        ARTICLE OF MANUFACTURE IS A QUESTION OF FACT --

13             THE COURT:  UM-HUM.

14             MS. SULLIVAN:  -- TYPICALLY FOR A JURY TO DECIDE.

15             THE COURT:  UM-HUM.

16             MS. SULLIVAN:  JUST LIKE INFRINGEMENT IS ULTIMATELY A

17        QUESTION OF FACT FOR A JURY TO DECIDE.

18             THE COURT:  UM-HUM.

19             MS. SULLIVAN:  BUT THE COURT ALWAYS, AS A MATTER OF

20        LAW, CONSTRUES THE PATENT CLAIMS FOR PURPOSES OF THE

21        INFRINGEMENT CASE.

22             AND HERE WE'RE SUGGESTING A PARALLEL.  HERE WE SUGGEST

23        THAT THE COURT MUST DEFINE THE SCOPE OF THE PATENTED DESIGN AS

24        A MATTER OF LAW, NOT LET THE JURY TO MAKE THAT UP.

25             THE COURT:  BUT ISN'T THAT CLAIM CONSTRUCTION?  I'VE
```

1    ALREADY DONE THAT.

2         MS. SULLIVAN:  UNDERSTOOD, YOUR HONOR.

3         IT'S LIKE CLAIM CONSTRUCTION, BUT IT'S DIFFERENT.  CLAIM

4    CONSTRUCTION IS ABOUT THE SCOPE OF THE PATENT CLAIM.

5         HERE WHAT WE'RE ASKING YOU TO DO IS TO SAY WHAT THE SCOPE

6    OF THE PATENT IS FOR PURPOSES OF COMPARING IT TO THE PRODUCT TO

7    WHICH IT'S APPLIED.

8         NOW, LET ME GO -- SO WE THINK SOMETIMES THERE WILL BE NO

9    DISPUTED FACT ON WHICH A REASONABLE JURY COULD DISAGREE.

10        OBVIOUSLY WE ACTUALLY DISAGREE.

11        THE COURT:  RIGHT.

12        MS. SULLIVAN:  WHAT WE'RE SUGGESTING -- WE'VE TRIED

13   TO BUILD THE CASE VERY CAREFULLY, YOUR HONOR, EXCLUSIVELY FROM

14   APPLE'S EVIDENCE.  WE'VE TRIED TO SHOW YOU THAT THE PATENTS

15   THEMSELVES ARE PARTIAL, NARROW PATENTS THAT DISCLAIM ALMOST

16   EVERYTHING ABOUT THE PHONE EXCEPT THE FRONT FACE, THE FRONT

17   FACE WITH BEZEL, OR A SINGLE GUI GRID.

18        AND, SECOND, WE --

19        THE COURT:  I'M SORRY TO INTERRUPT YOU.  CAN I ASK

20   YOU A QUESTION THEN?  SO YOU CONCEDE THERE IS A FACTUAL

21   MATERIAL DISPUTE, YOU JUST DON'T THINK IT'S ONE THAT RISES TO

22   THE LEVEL THAT A REASONABLE JURY WOULD AGREE EXISTS?  IS THAT

23   THE ARGUMENT YOU JUST MADE?

24        MS. SULLIVAN:  THAT'S ALMOST EXACTLY RIGHT, YOUR

25   HONOR.

```
1                THE COURT:  OKAY.

2                MS. SULLIVAN:  WE CONCEDE THERE'S A FACTUAL DISPUTE.

3                THE COURT:  OKAY.

4                MS. SULLIVAN:  WE DON'T THINK THERE'S A FACTUAL

5       DISPUTE OF ANY MATERIAL FACT AS TO WHICH A REASONABLE JURY

6       COULD DISAGREE.

7                AND, YOUR HONOR, JUST TO LIST THE KEY THINGS THAT WE THINK

8       MAKE IT UNDISPUTED, THE PATENTS ARE APPLE'S, THE INFRINGEMENT

9       CASE WAS APPLE'S, AND YOU'LL REMEMBER VIVIDLY THAT THE

10      INFRINGEMENT CASE WAS ALL ABOUT APPLE'S WITNESSES TRYING TO GET

11      THE CLAIMED FEATURES DOWN AS NARROW AS THEY COULD POSSIBLY BE.

12      IT'S JUST THIS LITTLE TEENY, TINY PART OF THE PHONE, BECAUSE

13      THE MINUTE THEY WENT BROADER, THEY WOULD LOSE THEIR

14      INFRINGEMENT CASE.

15               SO APPLE'S WITNESSES, THE DESIGN WITNESSES AND THE

16      INFRINGEMENT WITNESSES, ALL TESTIFIED THAT THE CLAIMED DESIGN

17      WAS EXCEEDINGLY NARROW.

18               SO WE THINK IF YOU PUT THE PATENTS TOGETHER WITH APPLE'S

19      WITNESSES, YOU'RE ALMOST THERE.

20               AND THEN ADD THE PHONES THEMSELVES, AND THERE WAS AN

21      ELABORATE SET OF TEAR-DOWNS THAT SHOWED THAT THE PHONES COULD

22      BE BROKEN UP INTO SEPARABLE COMPONENTS, COMPONENTS LIKE A FRONT

23      SCREEN, WHICH IS A SEPARABLE COMPONENT.

24               ANYBODY WHO BREAKS THE SCREEN ON THEIR SMARTPHONE AND

25      TAKES IT TO THE GUY WHO FIXES SCREENS KNOWS THAT THAT'S A
```

1      SEPARABLE COMPONENT.

2          SO WE DON'T KNOW WHAT MORE IN THE WORLD ANY JURY WOULD

3      NEED TO KNOW THAN YOU ALREADY KNOW ABOUT WHAT THE ARTICLES OF

4      MANUFACTURE ARE.  AND YOU COULD RULE RIGHT NOW, SHORTEN THE

5      DISCOVERY, SHORTEN THE NEW TRIAL BY RULING WHAT THE ARTICLES OF

6      MANUFACTURE ARE BASED ON SAMSUNG'S -- I'M SORRY -- ON APPLE'S

7      EVIDENCE, PLUS UNDISPUTED PHYSICAL OR DOCUMENTARY EVIDENCE, AND

8      THAT WOULD GREATLY STREAMLINE WHAT'S AHEAD.

9          SO, YOUR HONOR, WE'RE REALLY JUST SUGGESTING THAT THERE

10     ARE NO REASONABLE DISPUTES OF MATERIAL FACT.  WE CAN HAVE

11     RHETORIC WHERE WE DISAGREE WITH ONE OTHER.

12         BUT YOU'RE BOUND BY THE EVIDENCE, AND THE EVIDENCE HERE

13     SHOWS YOU THREE DISTINCT ARTICLES OF MANUFACTURE.

14         YOU COULD MAKE NEW LAW HERE, SETTING THE TEST FOR THE

15     FUTURE.  BUT AS YOU KNOW, THE BEST WAY TO SET A TEST FOR THE

16     FUTURE IS OFTEN TO CASH IT OUT BY SAYING HOW IT APPLIES, AND WE

17     THINK YOU HAVE ALL THE EVIDENCE YOU NEED IN THIS CASE TO DECIDE

18     WHAT THE ARTICLES ARE.

19              MR. LEE:  YOUR HONOR, IF I MAY BRIEFLY RESPOND --

20              THE COURT:  UM-HUM.

21         MR. LEE:  -- ON PRECISELY THIS POINT?

22         THREE POINTS.  IF YOU ACCEPT SAMSUNG'S ARGUMENT, CLAIM

23     CONSTRUCTION, WHETHER IT'S CLAIM CONSTRUCTION THAT YOUR HONOR

24     ORIGINALLY DID, WHICH WAS NEVER APPEALED AND, THEREFORE, IS THE

25     LAW OF THE CASE, OR THIS NEW HYBRID, WHICH IS JUST CLAIM

1    CONSTRUCTION, COLLAPSES INTO THE ARTICLE OF MANUFACTURE

2    INQUIRY.

3            THEIR ARGUMENT IS, YES, IT'S A FACTUAL ISSUE, BUT THE

4    COURT DEFINES AS A LEGAL MATTER WHAT THE SCOPE OF THE CLAIM IS,

5    THEREFORE, THERE'S NO FACTUAL DISPUTE, THEREFORE.

6            THAT CAN'T BE CORRECT.

7            AND THE ARTICLE OF MANUFACTURE AND THE CLAIMS ARE

8    DIFFERENT.  THAT'S WHY THE M.P.E.P., WHICH YOUR HONOR JUST

9    CITED TO ME, SAYS YOU CAN APPLY THE DESIGN TO A PORTION OF AN

10   ARTICLE OF MANUFACTURE.  THEY ARE DIFFERENT THINGS, AND CLAIM

11   CONSTRUCTION DEFINES THE PATENTED DESIGN.

12           THE SECOND THING IS THERE ARE CIRCUMSTANCES WHERE THERE

13   MIGHT BE NO DISPUTE FOR THE JURY, AND ONE OF THOSE

14   CIRCUMSTANCES WOULD BE WHERE THE PARTIES HAVE NOT OFFERED YOU

15   COMPETING CONTENTIONS OF WHAT THE ARTICLES OF MANUFACTURE ARE.

16   SO IF THE PARTIES AGREE THAT THE ARTICLES OF MANUFACTURE ARE X,

17   OR THEY DON'T DISPUTE THE ARTICLE OF MANUFACTURE, THEN THERE

18   WOULD BE NO FACTUAL ISSUE FOR THE JURY TO RESOLVE.

19           AND POINT NUMBER THREE IS THIS:  I DON'T -- I WAS HERE FOR

20   THE FIRST TRIAL.  I DON'T QUITE REMEMBER THE EVIDENCE FROM THE

21   APPLE WITNESSES AS MS. SULLIVAN RECALLS IT.

22           BUT TO THE EXTENT THAT WE'RE FOCUSSING ON THE EVIDENCE AND

23   THE RECORD FROM THE FIRST CASE, WHICH WE THINK WE SHOULD FOR

24   THE FIRST/SECOND CASE AND THE RETRIAL OF THE PORTION OF THE

25   FIRST CASE, THE ONE THING WE KNOW IS THERE WERE NO COMPETING

1    CONTENTIONS ABOUT WHAT THE ARTICLES OF MANUFACTURE WERE.  YOUR

2    HONOR SAID SO IN YOUR OPINION, THAT NONE WERE DISCLOSED IN

3    DISCOVERY, NONE WAS PURSUED AT TRIAL.

4         SO THERE IS -- IT IS A FACTUAL ISSUE, TO BE SURE.

5         THERE ARE CIRCUMSTANCES, THOUGH, WHERE THERE'S NO FACT FOR

6    THE JURY TO DECIDE.  BUT THAT FACT IS LIKELY TO BE IN THOSE

7    CIRCUMSTANCES WHERE THE PARTIES DON'T DISPUTE WHAT IT IS, OR AT

8    LEAST THEY HAVEN'T OFFERED COMPETING CONTENTIONS, AND THAT'S

9    THE CIRCUMSTANCE WE HAVE HERE.

10        THE COURT:  ALL RIGHT.  WELL, I WISH THIS CASE WERE

11    ABOUT DINNER PLATES, BUT WE'RE NOT.

12        LET'S GO TO BURDEN SHIFTING, AND THIS QUESTION IS FOR

13    APPLE.

14        I WASN'T SURE, WHEN YOU'RE PROPOSING YOUR BURDEN SHIFTING

15    FRAMEWORK WHERE APPLE WOULD MAKE THE INITIAL -- WOULD HAVE THE

16    BURDEN INITIALLY AND THEN SAMSUNG WOULD HAVE TO RESPOND, ARE

17    YOU TALKING ABOUT THE BURDEN OF PERSUASION OR BURDEN OF

18    PRODUCTION?  OR BOTH?  AND THIS IS AS TO BOTH RELEVANT ARTICLE

19    OF MANUFACTURE AND PROVING TOTAL PROFIT.

20        MR. LEE:  I WOULD SAY TWO THINGS, YOUR HONOR.

21        THE COURT:  YEAH.

22        MR. LEE:  WE HAVE THE ULTIMATE BURDEN OF PERSUASION

23    ON THE ISSUE OF DAMAGES.

24        THE COURT:  OKAY.  ALL RIGHT.

25        MR. LEE:  WE WOULD HAVE -- AS THE SOLICITOR GENERAL

1    SAID, WE WOULD HAVE THE BURDEN OF PRODUCTION INITIALLY OF

2    IDENTIFYING WHAT WE THOUGHT THE ARTICLE OF MANUFACTURE WAS.

3            THE COURT:  UM-HUM.

4            MR. LEE:  AND AS THE SOLICITOR GENERAL SAID, WE COULD

5    SATISFY THAT BURDEN OF PRODUCTION BY IDENTIFYING AND PROVING

6    THAT THE ARTICLES OF MANUFACTURE WERE, IN FACT, SOLD AND

7    INFRINGING.

8            AND THEN WE'D OBVIOUSLY HAVE TO PROVE QUANTITATIVELY WHAT

9    THE -- QUANTITATIVELY WHAT THE AMOUNT OF THE TOTAL PROFITS OR

10   TOTAL REVENUES WERE, SUBJECT TO THE BURDEN THEN SHIFTING TO

11   SAMSUNG.

12           SO WE HAVE A BURDEN OF PRODUCTION AND PERSUASION AT THE

13   OUTSET OF PROVING ACTIVE INFRINGEMENT, THE NUMBER OF ACTS OF

14   INFRINGEMENT, THE ARTICLES OF MANUFACTURE AS SOLD, AND THEN

15   TOTAL PROFITS.

16           THE BURDEN THEN SHIFTS TO SAMSUNG, AS IT DID IN THE FIRST

17   TWO TRIALS -- WE DIDN'T CONTEST ARTICLE OF MANUFACTURE -- TO

18   IDENTIFY DEDUCTIONS FROM THOSE TOTAL REVENUES OR THOSE PROFITS

19   THAT IT SAYS SHOULD BE MADE.

20           AND YOUR HONOR WILL RECALL FROM THE FIRST TRIAL THAT MOST

21   OF THE FIGHTING BETWEEN MR. MUSIKA, LATER MS. DAVIS, AND

22   MR. WAGNER WAS ABOUT THE DEDUCTIBILITY OF ADVERTISING AND OTHER

23   EXPENSES FROM THE TOTAL REVENUES.

24           UNDER OUR BURDEN SHIFTING, ONCE WE'VE DONE THAT, WE HAVE

25   SATISFIED OUR BURDEN OF PRODUCTION AND THE JURY WOULD DECIDE

1    WHETHER WE HAVE SATISFIED OUR BURDEN OF PERSUASION.

2         AT THAT POINT IN TIME, SAMSUNG COULD FOCUS ON ONE OF THREE

3    THINGS:  IT COULD FOCUS ON DEDUCTING COSTS FROM THE TOTAL

4    REVENUES, WHICH IS WHAT HAPPENED AT THE FIRST TRIAL.

5         THE SECOND THING IT COULD DO IS IT COULD IDENTIFY AND

6    PRODUCE EVIDENCE, SO A BURDEN OF PRODUCTION, OF A COMPONENT, OR

7    SOMETHING SMALLER THAN THEIR PRODUCT AS SOLD IN A

8    MULTI-COMPONENT PRODUCT THAT IT CONTENDED WAS THE ARTICLE OF

9    MANUFACTURE.  IT HAD THE BURDEN OF PRODUCTION ON THAT, AT A

10   MINIMUM, BECAUSE IF IT DIDN'T COME FORWARD WITH THAT, THERE

11   WOULD BE NOTHING FOR THE JURY TO FOCUS UPON AND DECIDE.

12        IT ALSO WOULD HAVE THE BURDEN OF PRODUCTION, AT A MINIMUM,

13   IN PRODUCING EVIDENCE AFFIRMATIVELY OF THE TOTAL PROFITS,

14   REVENUES, AND COSTS FROM THOSE COMPONENTS.

15        SO THAT'S WHAT WE WOULD SAY.  WE HAVE THE ULTIMATE BURDEN

16   OF PERSUASION ON DAMAGES.  WE HAVE AN INITIAL BURDEN OF

17   PRODUCTION BY PROVING INFRINGEMENT, ARTICLE OF MANUFACTURE,

18   TOTAL REVENUES.

19        THE BURDEN THEN SHIFTS TO SAMSUNG IN THIS DISGORGEMENT

20   CONTEXT TO BASICALLY PROVE WHAT THEY TRIED TO DO AT TRIAL,

21   WHICH THEY DID IN PART AT TRIAL ACTUALLY, BUT THERE ARE

22   ADDITIONAL COSTS THAT SHOULD BE DEDUCTED.

23        AND SAMSUNG WOULD THEN HAVE, TO THE EXTENT IT WANTED TO

24   FOCUS ON A SMALLER COMPONENT, IT SHOULD HAVE BOTH, WE SAY, THE

25   BURDEN OF PRODUCTION AND PERSUASION THAT THERE IS A SMALLER

```
1     COMPONENT, AND THE BURDEN OF PRODUCTION AND PERSUASION THAT

2     THERE IS A QUANTITATIVE AMOUNT OF PROFITS TIED TO THAT SMALLER

3     COMPONENT.

4          AND WE THINK THAT THAT IS CONSISTENT WITH THE HISTORY OF

5     THE STATUTE.  WE BELIEVE IT'S CONSISTENT WITH THE DISGORGEMENT

6     REMEDY AND THE MANNER IN WHICH IT'S BEEN APPLIED IN OTHER

7     CASES.  IT'S CONSISTENT WITH WHAT THE SOLICITOR GENERAL

8     SUGGESTED TO THE SUPREME COURT ABOUT THE BURDENS.

9               MS. SULLIVAN:  YOUR HONOR, MAY I RESPOND?

10              THE COURT:  OKAY.  GO AHEAD, PLEASE.

11              MS. SULLIVAN:  SO, YOUR HONOR, WITH RESPECT, I

12    DISAGREE WITH EVERYTHING MR. LEE JUST SAID ABOUT THE BURDEN.

13    THE BURDEN IS ON APPLE AND IT DOES NOT SHIFT TO SAMSUNG TO SHOW

14    WHAT THE ARTICLE OF MANUFACTURE IS, OR TO SHOW THE QUANTUM OF

15    PROFIT.

16         AND HOW DO WE KNOW THIS?  WE KNOW THIS FROM THE STATUTE.

17    THE STATUTE IS OUR TOUCHSTONE HERE, YOUR HONOR.  AND

18    SECTION 289 WAS ENACTED IN A VERY SPECIFIC CONTEXT, AND IT

19    EXPRESSLY DOES NOT HAVE A BURDEN SHIFT IN IT.

20         AND LET'S REMEMBER, WHAT WAS IT TRYING TO OVERTURN?

21    CONGRESS WAS TRYING TO OVERTURN THE DOBSON CASES.  THE DOBSON

22    CASES HAD PUT THE BURDEN ON THE PATENTEE TO APPORTION THE VALUE

23    OF THE DESIGN RELATIVE TO THE VALUE OF THE ARTICLE OF

24    MANUFACTURE.

25         AND CONGRESS OVERTURNED DOBSON AND IT SAID, "WE'RE TAKING
```

1        THAT SUBSTANTIVE BURDEN OF APPORTIONMENT OFF THE PATENTEE.

2        PATENTEE NO LONGER HAS TO PROVE THE VALUE OF THE DESIGN

3        RELATIVE TO THE ARTICLE.  PATENTEE GETS TOTAL PROFIT FROM THE

4        ARTICLE."  THAT'S WHAT CONGRESS SAID.

5              IT NEVER SHIFTED THE PLACEMENT OF THE BURDEN ON TO THE

6        DEFENDANT TO IDENTIFY THE ARTICLE OF MANUFACTURE.

7              TO THE CONTRARY.  CONGRESS ADOPTED AN ALTERNATIVE

8        STATUTORY FLOOR.  IT SEEMS KIND OF LOW BY MODERN STANDARDS.

9        IT'S $250.  BUT THE REASON THEY DID WAS THAT IN CASE THERE WERE

10       PROBLEMS OF PROOF ON THE PART OF THE PLAINTIFF.

11             AND, YOUR HONOR, THE LEGISLATIVE HISTORY CONFIRMS THAT

12       CONGRESS SAW THE BURDEN AS RESTING ALWAYS -- THE BURDEN OF

13       PRODUCTION, THE BURDEN OF PERSUASION, THE BURDEN AS TO

14       IDENTIFYING THE ARTICLE OF MANUFACTURE, THE BURDEN AS TO

15       IDENTIFYING THE QUANTUM OF PROFIT FROM THE ARTICLE OF

16       MANUFACTURE ALWAYS RESTS EXCLUSIVELY WITH THE PLAINTIFF.

17             YOUR HONOR, WE CITE THE LEGISLATIVE HISTORY ON THIS POINT

18       AT DOCKET 3524, PAGE 10, LINES 16 AND 17 WHERE THE SPONSORS OF

19       THE PREDECESSOR TO SECTION 289 SAID PATENT HOLDER MAY "RECOVER

20       THE PROFIT ACTUALLY MADE ON THE INFRINGING ARTICLE IF HE CAN

21       PROVE THAT PROFIT."

22             NOW, YOUR HONOR, THE WAY TO SEE 289 DOESN'T HAVE A BURDEN

23       SHIFT IS JUST COMPARE IT TO THE COPYRIGHT ACT AND THE LANHAM

24       ACT CASES THAT YOUR HONOR SEES ON A FREQUENT BASIS IN THIS

25       COURT.  THE COPYRIGHT ACT AND THE LANHAM ACT, THE TRADEMARK

1    STATUTE, HAVE EXPRESS BURDEN SHIFTS IN THEM.

2            THE COURT:  CAN I ASK YOU A QUESTION?  I UNDERSTAND

3    YOUR POSITION --

4            MS. SULLIVAN:  THANK YOU, YOUR HONOR.

5            THE COURT:  -- IS THAT 289 DOES NOT HAVE BURDEN

6    SHIFTING.

7        BUT IN THE UTILITY PATENT CONTEXT, DOESN'T THE FEDERAL

8    CIRCUIT SOMETIMES SAY THE COURT SHOULD CONSTRUE UNCERTAINTY IN

9    DAMAGES CALCULATIONS AGAINST THE INFRINGER?  AND I'M THINKING

10   OF RYCO INCORPORATED VERSUS AG-BAG CORP.  THAT'S A 1989 FEDERAL

11   CIRCUIT CASE AND IT SAYS, "WHEN THE AMOUNT OF DAMAGES CANNOT BE

12   ASCERTAINED WITH PRECISION, ANY DOUBTS REGARDING THE AMOUNT

13   MUST BE RESOLVED AGAINST THE INFRINGER."

14       SO AREN'T THERE SOME INSTANCES WHERE DEFENDANT CAN BEAR

15   SOME BURDEN ON DAMAGES?

16           MS. SULLIVAN:  SO, YOUR HONOR --

17           THE COURT:  UH-HUH.

18           MS. SULLIVAN:  -- I AGREE THAT THAT'S A LIMITATION ON

19   DAMAGES.  IT COMES UP IN A LOT OF CASES.

20       IT HAS NOTHING TO DO WITH BURDEN.  IT HAS NOTHING TO DO

21   WITH BURDEN.  THAT STATEMENT THAT YOU JUST READ THAT WE

22   FREQUENTLY SEE IS ABOUT WHAT IF THERE'S SOME UNCERTAINTY IN THE

23   PROOF.

24           THE COURT:  UM-HUM.

25           MS. SULLIVAN:  BUT IT SAYS NOTHING ABOUT WHO BEARS

1    THE BURDEN OF PROOF.

2         SO IF THE RIGHT PARTY IS BEARING THE BURDEN AND THE EXPERT

3    IS A LITTLE FUZZY, MAYBE YOU CONSTRUE THE FUZZY EXPERT AGAINST

4    THE INFRINGER.  BUT THAT DOESN'T AFFECT WHERE WE PLACE THE

5    BURDEN.

6         BUT, YOUR HONOR, I DO THINK UTILITY PATENT LAW IS VERY

7    HELPFUL TO YOUR HONOR, BECAUSE IF YOU LOOK SQUARELY AT THE MOST

8    ANALOGOUS UTILITY PATENT CONTEXT, IT'S SMALLEST SALEABLE UNIT.

9              THE COURT:  UM-HUM.

10             MS. SULLIVAN:  AND WE KNOW THAT SMALLEST SALEABLE

11   UNIT -- SO THE ENTIRE MARKET VALUE RULE IS AN EXCEPTION TO THE

12   SMALLEST SALEABLE PATENT PRACTICING UNIT.  THAT'S OVER IN THE

13   UTILITY WORLD, APPORTIONMENT WORLD.

14        BUT THE CRUCIAL THING TO YOUR HONOR -- AND WE CITE THIS IN

15   3521, DOCKET 3521 AT PAGES 10 TO 11, THAT'S WHERE WE GIVE YOU

16   ALL THE CASES.  VIRNETX IS THE MOST RECENT.  IT'S A CASE THAT

17   SHOULD MAKE APPLE VERY HAPPY.  THEY WERE ON THE WINNING SIDE.

18        BUT VIRNETX SAYS VERY CLEARLY THAT THE BURDEN FOR PROVING

19   WHAT IS THE SMALLEST SALEABLE UNIT ALWAYS RESTS WITH THE

20   PATENTEE.

21             AND TO GIVE YOU A SECOND EXAMPLE CITED IN OUR BRIEFS, YOUR

22   HONOR, THE CORNELL VERSUS HEWLETT-PACKARD CASE, THAT'S THE CASE

23   IN WHICH JUDGE RADER WAS SITTING BY DESIGNATION IN THE DISTRICT

24   COURT.

25             THE COURT:  UM-HUM.

```
 1            MS. SULLIVAN:  AND HE SAID IT'S SO MUCH THE BURDEN ON

 2    THE PATENTEE TO SHOW WHAT THE SMALLEST SALEABLE UNIT IS THAT IF

 3    THE PATENTEE JUST COMES IN AND SAYS, "OH, ENTIRE MARKET VALUE"

 4    AND DOESN'T PROVE THE SMALLEST SALEABLE UNIT, EITHER THE EXPERT

 5    WILL BE TOSSED OUT, AS IN LATER CASES, LIKE DIANETICS, OR

 6    YOU'LL GET JMOL AGAINST YOU.

 7            SO, YOUR HONOR, WE ACTUALLY THINK THAT THERE IS A GOOD

 8    ANALOGY FROM A UTILITY PATENT.  IT'S SMALLEST SALEABLE UNIT.

 9    AND THAT'S THE ONE CASE IN THE UTILITY PATENT WORLD IN WHICH

10    THE FEDERAL CIRCUIT HAS MADE CLEAR, THE PATENT ALWAYS RESTS

11    WITH THE PATENTEE.

12            SO THIS WOULD BE THE LAST PLACE WHERE YOU WANT TO CREATE A

13    NEW JUDGE-MADE BURDEN WHICH HAS NO BASIS IN THE STATUTE AND

14    TELL THE DEFENDANT THEY HAVE TO DO SOMETHING BECAUSE THE EXACT

15    ANALOGOUS UTILITY PATENT CONTEXT IS ONE WHERE THEY'VE SAID --

16    WHERE THE FEDERAL CIRCUIT HAS SAID, AND WHERE JUDGE RADER,

17    SITTING BY DESIGNATION IN CORNELL, SAID THE BURDEN ALWAYS RESTS

18    ON THE PLAINTIFF.

19            THE COURT:  LET ME ASK A QUESTION FOR MR. LEE ON

20    BURDEN SHIFTING.

21            DO YOU KNOW OF ANY COURT THAT HAS PLACED THE BURDEN TO

22    PROVE DAMAGES ON THE DEFENDANT IN A PATENT CASE BECAUSE THE

23    DEFENDANT HAS SUPERIOR KNOWLEDGE?

24            MR. LEE:  FOR SOLELY THAT REASON, NO.

25            BUT IT'S ONE OF THE REASONS THAT -- IN THE DAMAGES
```

```
 1        CONTEXT, THE THING YOUR HONOR JUST CITED, THE REASON THE

 2        DAMAGES ISSUES ARE OFTEN RESOLVED AGAINST THE PARTY WHO IS THE

 3        DEFENDANT IS BECAUSE THEY HAVE SUPERIOR KNOWLEDGE ABOUT THE

 4        INFORMATION.

 5             I DON'T THINK THAT REASON ALONE IS WHY WE URGE THE BURDEN

 6        SHIFTING.

 7             YOUR HONOR, YOUR INSTRUCTIONS ON 289 HAD BURDEN SHIFTING

 8        IN THE FIRST TWO TRIALS.  NO ONE OBJECTED TO THAT.  THE IDEA

 9        THAT 289 PRECLUDES BURDEN SHIFTING WOULD HAVE PRECLUDED THE

10        INSTRUCTION THAT YOU GAVE ON SHIFTING THE BURDEN OF PRODUCTION

11        AND PERSUASION TO SAMSUNG TO PROVE THE DEDUCTIBLE COSTS.  AND

12        WE MADE THAT POINT TO YOU IN OUR OPENING BRIEF.  THERE'S ONE

13        SENTENCE IN SAMSUNG'S BRIEF.

14             IT'S THE REASON THE SOLICITOR GENERAL SAYS AT PAGE 9,

15        CLEAR AS A BELL, THAT THE BURDEN OF -- THE BURDEN SHOULD SHIFT

16        TO THE DEFENDANT TO PROVE THE ALTERNATIVE ARTICLE OF

17        MANUFACTURE, AND THEY'RE DESCRIBING IT, IN OUR VIEW, AS

18        PRODUCTION AND PERSUASION.

19             THERE ARE -- RESPECTFULLY, THERE ARE, IN THE UTILITY

20        PATENT CONTEXT, FEDERAL CIRCUIT DECISIONS WHERE THE BURDEN

21        SHIFTS, AND IT'S IN THE LOST PROFIT CONTEXT.  AND THE FEDERAL

22        CIRCUIT EXPLICITLY SHIFTS THE BURDEN TO THE DEFENDANT AFTER THE

23        PLAINTIFF HAS PROVEN ITS PRIMA FACIE CASE OF LOST PROFITS.  SO

24        THIS IDEA THAT THERE'S NO ANALOGY IS INCORRECT.

25             THE BEST ANALOGY POSSIBLE IS PROVING LOST PROFITS UNDER A
```

1    UTILITY PATENT, AND THERE ARE AT LEAST TWO FEDERAL CIRCUIT

2    DECISIONS WE CITED TO YOUR HONOR WHERE THE BURDEN HAS SHIFTED

3    TO THE DEFENDANT TO BASICALLY CONTEST.

4         TWO OTHER SMALL POINTS.  THE $250 THAT'S THE ALTERNATIVE

5    REMEDY IS DESIGNED TO DEAL WITH A COPYIST WHO THEN SELLS THE

6    PRODUCT, OR THE KNOCKOFF, FOR SUCH A LOW PRICE, THERE ARE NO

7    PROFITS TO HAVE, AND THAT WAS PUT IN TO PROTECT THAT SITUATION.

8         IT WAS NOT, AND HAS NOTHING TO DO WITH, WHETHER THE BURDEN

9    SHIFTS OR NOT.

10        AND I THINK AT THE END, YOUR HONOR, IF -- WE UNDERSTAND

11   IT'S JUST ANOTHER DISTRICT COURT INSTRUCTING, BUT IF YOUR HONOR

12   TAKES YOUR CHARGE IN THE FIRST CASE WHERE YOU HAD BURDEN

13   SHIFTING ON A DISGORGEMENT REMEDY, THE SOLICITOR GENERAL'S

14   STATEMENT IN THE BRIEF, AND THE COLUMBIA SPORTSWEAR JURY

15   CHARGE, WHICH EXPLICITLY SHIFTS THE BURDEN AND EXPLICITLY PUT

16   THE BURDEN ON THE DEFENDANT TO PROVE PRODUCTION AND PERSUASION,

17   THE ARTICLE OF MANUFACTURE LESS THAN THE MULTI-COMPONENT

18   PRODUCT, YOU PUT THAT ON ONE SIDE OF THE SCALE, THE ONLY THING

19   YOU HAVE ON THE OTHER IS SAMSUNG SAYING THE BURDEN CAN NEVER

20   SHIFT.

21        AND IF THE BURDEN COULD NEVER SHIFT, WE FOR SURE WOULD

22   HAVE HEARD ABOUT THAT IN THE FIRST TRIAL.  WE FOR SURE WOULD

23   HAVE HEARD ABOUT IT IN THE SECOND TRIAL.

24        OR YOUR INSTRUCTION WOULD HAVE BEEN APPEALED TO THE

25   FEDERAL CIRCUIT.  IT NEVER WAS.  FOR ALL OF THE HOST OF ISSUES

1    APPEALED, NO ONE EVER SUGGESTED THAT THE FACT THAT YOU SHIFTED

2    THE BURDEN IN TWO TRIALS WAS SOMEHOW ERROR.

3              THE COURT:  CAN I ASK, WHAT'S THE STATUS OF THE D'677

4    RE-EXAM?

5              MR. LEE:  IT'S STILL IN THE PATENT OFFICE, YOUR

6    HONOR.

7              THE COURT:  OH, IT HASN'T EVEN GONE TO THE PTAB?

8              MR. LEE:  NO.  IT'S STILL IN THE PATENT OFFICE.

9              THE COURT:  OKAY.  SO IT'S ON APPEAL TO THE PTAB?

10             MR. LEE:  NO.

11        LET ME JUST CHECK TO BE SURE.

12             THE COURT:  BUT IT HASN'T BEEN APPEALED TO THE --

13    WELL, IT HASN'T BEEN APPEALED TO THE FEDERAL CIRCUIT YET?

14             MR. LEE:  IT'S STILL WITH THE EXAMINER.

15             THE COURT:  IT'S STILL WITH THE EXAMINER?

16             MR. LEE:  YES.

17             THE COURT:  OH.  SO IT HASN'T BEEN APPEALED TO THE

18    PTAB AND IT HASN'T BEEN APPEALED TO THE FEDERAL CIRCUIT?

19             MR. LEE:  YEAH.  IT'S STILL WITH THE EXAMINER.

20             THE COURT:  OH, OKAY.  I SEE.  HOW LONG DO APPEALS AT

21    THE PTAB TAKE?

22             MR. LEE:  WELL, IT WOULD HAVE TO COME FROM THE

23    EXAMINER FIRST AND THEN --

24             THE COURT:  I UNDERSTAND.

25             MR. LEE:  IT'S HIGHLY VARIABLE I THINK IS THE BEST I

```
 1          CAN TELL YOU.

 2                    THE COURT:  OKAY.  AND THEN AFTER THAT, IT COULD BE

 3          APPEALED TO THE FEDERAL CIRCUIT?

 4                    MR. LEE:  YES, CORRECT, YOUR HONOR.

 5                    THE COURT:  I SEE.  OKAY.

 6          SO BACK IN MARCH OF 2016, WE WERE ABOUT TO HAVE ANOTHER

 7          SMALL TRIAL WHICH WAS STAYED BECAUSE OF THE CERT PETITION BEING

 8          GRANTED.

 9              IF THERE IS A RETRIAL IN THIS CASE FOR, YOU KNOW, THE

10          ISSUES THAT WE'RE DISCUSSING TODAY, CAN WE WRAP UP THE ISSUES

11          FROM WHAT WE WERE GOING TO RETRY IN MARCH OF 2016?  CAN WE TAKE

12          CARE OF EVERYTHING IN ONE TRIAL IS THE QUESTION?

13                    MS. SULLIVAN:  YES.

14                    MR. LEE:  YES, YOUR HONOR.

15                    THE COURT:  OKAY.

16                    MR. LEE:  I THINK THAT WAS THE CONTEMPLATION.

17                    THE COURT:  OKAY, GOOD.  GOOD.

18          I -- YOU KNOW, WHEN WE WERE LAST TOGETHER FOR THE CMC, I

19          APPRECIATE THE PARTIES AGREED TO A PRETTY FAST SCHEDULE, AND

20          I'M JUST CONCERNED THAT THE POST-TRIAL MOTION SCHEDULE IS NOT

21          GOING TO GIVE YOU ENOUGH TIME OR ME ENOUGH TIME.

22              SO WHAT I'D LIKE TO DO, IF -- I HAVEN'T MADE A DECISION

23          YET, BUT IF I DECIDE TO GRANT A NEW TRIAL, I WOULD WANT -- AND

24          I THINK -- I DON'T KNOW, BUT I'M HOPING THAT I CAN GET YOU A

25          RULING SOONER THAN -- I THINK OUR NEXT CMC IS NOVEMBER --
```

1          MS. MAROULIS:  NOVEMBER 8TH, YOUR HONOR.

2          MR. LEE:  NOVEMBER 8TH.

3          MS. SULLIVAN:  NOVEMBER 8TH.

4          THE COURT:  I'D LIKE TO ADVANCE THAT, IF POSSIBLE,

5     JUST BECAUSE TIME IS OF THE ESSENCE, AND THE MORE TIME WE CAN

6     BUILD IN ON THE FRONT END, THEN WE CAN ALL GIVE OURSELVES MORE

7     TIME ON THE BACK END BECAUSE THE POST-TRIAL BRIEFING IS VERY

8     TIGHT.

9          SO I GUESS THE QUESTION IS, WOULD YOU BE AVAILABLE TO

10    HAVE -- I THINK IT WOULD BE EASIER TO DO IT IN PERSON BECAUSE

11    WE HAVE TO CHECK SO MANY SCHEDULES.  WOULD YOU BE AVAILABLE TO

12    ADVANCE THE CMC, IF I DO GRANT A RETRIAL, TO SEE IF WE CAN

13    ADVANCE THAT TRIAL SO WE CAN BUILD IN MORE TIME?  I MEAN, RIGHT

14    NOW POST-TRIAL BRIEFING IS TEN DAYS AFTER VERDICT, TEN DAYS

15    AFTER OPENING, FIVE DAYS AFTER RESPONSES.  THAT'S EXTREMELY

16    TIGHT.

17         MS. SULLIVAN:  FROM SAMSUNG, YES, YOUR HONOR, WE'RE

18    HAPPY TO TRY TO ADVANCE THE CMC SUBJECT TO CONFERRING ON

19    SCHEDULES.

20         MR. LEE:  OF COURSE, YOUR HONOR.

21         THE COURT:  OKAY.  SO UNFORTUNATELY, RIGHT NOW I

22    COULD NOT GIVE YOU A TIME FOR WHEN THE ORDER WILL GO OUT, BUT

23    I'M HOPEFUL IT WILL NOT BE -- I'M HOPING THAT IT'LL BE SOON.

24         SO WE CAN EITHER PICK A POSSIBLE ADVANCED DATE AND THEN,

25    YOU KNOW, BASED ON WHEN THE ORDER GOES OUT, THAT'LL EITHER

1      BECOME FEASIBLE OR NOT FEASIBLE.

2             SO WHAT -- TODAY IS THE 12TH OF OCTOBER.  AND THEN I

3      PRESUME YOU WOULD NEED -- WHAT WOULD YOU PREFER?  HAVING A WEEK

4      TO TRY TO WORK OUT A SCHEDULE AMONGST YOURSELVES?  OR -- I ALSO

5      THINK IT'S HELPFUL TO HAVE YOU ALL HERE AND IN THE ATTORNEY'S

6      LOUNGE SORT OF CONFERRING REAL TIME, TOO.

7             WHAT WOULD YOU PREFER?  HOW MUCH TIME WOULD YOU NEED

8      BASICALLY FROM WHEN THE ORDER GOES OUT AND WHEN WE SHOULD

9      ACTUALLY MEET IN PERSON TO TRY TO HAMMER OUT AN ACCELERATED

10     SCHEDULE?

11             MS. SULLIVAN:  FROM SAMSUNG'S PERSPECTIVE, A WEEK IS

12     AMPLE, YOUR HONOR.

13             THE COURT:  OKAY.

14             MR. LEE:  THAT WOULD BE FINE, YOUR HONOR.

15             THE COURT:  A WEEK FOR YOU TO COME IN?

16             MS. SULLIVAN:  YES.

17             THE COURT:  OKAY.

18             MS. MAROULIS:  YOUR HONOR, WOULD THE CMC STATEMENT BE

19     REQUIRED FOR THIS CONFERENCE?  BECAUSE THE LOCAL RULES REQUIRE

20     US TO FILE IT SEVEN DAYS BEFORE.  THAT'S --

21             THE COURT:  NO.  WE CAN --

22             MS. MAROULIS:  OKAY.

23             THE COURT:  WE CAN FIGURE SOMETHING OUT.  I MEAN, IF

24     YOU THINK IT'LL BE MOST USEFUL TO MEET IN PERSON TO TRY TO WORK

25     OUT A SCHEDULE, WOULD THAT BE MORE USEFUL THAN, YOU KNOW,

```
 1      MEETING AND CONFERRING BY E-MAIL?

 2              MR. LEE:  WELL, IN THE LAST GO ROUND, YOUR HONOR --

 3              THE COURT:  YEAH.

 4              MR. LEE:  -- BEFORE WE CAME TO SEE YOU, WE WERE

 5      ACTUALLY VERY CLOSE.

 6              THE COURT:  OKAY.

 7              MR. LEE:  AND MY BET IS, WITH YOUR HONOR'S GUIDANCE

 8      FROM THE LAST CMC AND KNOWING THAT YOU'D LIKE MORE TIME AT THE

 9      END, MY BET IS -- THERE'S NOT A LOT OF ROOM TO MOVE, SO MY BET

10      IS THAT WE CAN GET TOGETHER AND AGREE UPON SOMETHING WITHIN

11      THAT WEEK IS MY BET.

12              THE COURT:  YEAH.  AND IT -- YOU KNOW, THE ONLY

13      REASON WHY I WOULD NEED TO SEE YOU IS THAT I WOULD NEED TO MAKE

14      SURE THE HEARINGS, THE FINAL PRETRIAL -- I MEAN, ANYTHING THAT

15      IMPLICATES COURT PROCEEDINGS, I JUST NEED TO MAKE SURE IT WORKS

16      FOR OUR SCHEDULE.

17          BUT, YOU KNOW, OF COURSE EXPERT DISCOVERY CUTOFFS, I MEAN,

18      THOSE DATES, WHATEVER WORKS FOR THE PARTIES ARE FINE.

19              MR. LEE:  RIGHT.

20              THE COURT:  AS LONG AS I CAN, YOU KNOW, DO THE

21      HEARINGS TO GIVE YOU PROMPT ORDERS.

22              MS. SULLIVAN:  YOUR HONOR, WE'RE VERY HAPPY TO COME

23      IN LIVE AT YOUR HONOR'S DIRECTION.  I AGREE WITH MR. LEE THAT

24      WE WERE VERY CLOSE, BUT WE WANT TO DO WHATEVER IS MOST HELPFUL

25      TO YOUR HONOR.
```

```
 1                THE COURT:  SO TODAY IS THE 12TH.  UNFORTUNATELY --
 2       WELL, ACTUALLY, WE DON'T HAVE TRIAL ON THE 27TH.  IS THAT
 3       RIGHT?
 4                THE CLERK:  THAT'S CORRECT, YOUR HONOR.
 5                THE COURT:  I THINK WE HAVE TRIAL ON THE 23RD AND
 6       24TH, BUT NOT THE 27TH.
 7                MR. LEE:  YOUR HONOR, IF I MAY MAKE A SUGGESTION?
 8                THE COURT:  YES.
 9                MR. LEE:  WE ACTUALLY HAVE A CMC ON THE 25TH.
10                MS. SULLIVAN:  THAT WAS JUST WHAT WE WERE TALKING
11       ABOUT.
12                THE COURT:  OH, YOU DO?
13                MR. LEE:  IN THE SECOND CASE, WHICH I THINK IS
14       PROBABLY UNNECESSARY, BECAUSE THE DEPOSITIONS OF THE EXPERTS
15       ARE GOING TO OCCUR THE WEEK AFTER THAT.  SO MAYBE WE COULD USE
16       THAT TIME.
17                THE COURT:  AH, THAT ACTUALLY WOULD BE GREAT.
18                MS. MAROULIS:  WE WERE GOING TO SUGGEST THE SAME
19       THING, YOUR HONOR, BECAUSE WE WERE PLANNING TO COME IN ON THE
20       25TH ALREADY.
21                THE COURT:  I SEE.  THAT SOUNDS GREAT.
22           LET ME ASK, I UNDERSTOOD THAT THE CERT PETITION IS STILL
23       PENDING ON THAT CASE.
24                MS. SULLIVAN:  YES, YOUR HONOR.
25                THE COURT:  OKAY.  IF IT -- OKAY.  DO WE KNOW
```

```
1        ANYTHING ABOUT TIMING POTENTIALLY?

2              MR. LEE:  I THINK WE DO, YOUR HONOR.  THE SOLICITOR

3   GENERAL FILED A BRIEF ON FRIDAY RECOMMENDING THAT THE SUPREME

4   COURT NOT TAKE CERT.

5        SO WE BELIEVE THAT THE CASE WILL BE CONFERENCED ON

6   NOVEMBER THE 4TH.  THE 3RD, I'M SORRY, NOVEMBER THE 3RD.

7              THE COURT:  I'M SORRY.  THEY FILED A BRIEF ON

8   OCTOBER 6TH?

9              MR. LEE:  YES.

10             THE COURT:  OH, OKAY.

11             MR. LEE:  THEY FILED A BRIEF LAST WEEK.

12             THE COURT:  OKAY.

13             MR. LEE:  AND WE CAN GET YOUR HONOR A COPY IF YOU'D

14   LIKE.

15       BUT RECOMMENDING THAT CERT NOT BE TAKEN.

16       IN FACT, I HAVE A COPY HERE (HANDING).

17             THE COURT:  OH, OKAY.  THANK YOU.

18             MS. SULLIVAN:  YOUR HONOR, SAMSUNG WILL BE FILING A

19   SUPPLEMENTAL BRIEF ON OCTOBER 17TH.

20             THE COURT:  OKAY.

21             MS. SULLIVAN:  AND THEN IT WILL GO TO CONFERENCE.

22             THE COURT:  AND IT'LL GO TO CONFERENCE, YOU SAID, ON

23   NOVEMBER 3RD?

24             MR. LEE:  NOVEMBER 3RD.

25             THE COURT:  OKAY.  SO WE SHOULD HAVE AN ANSWER, THEN,
```

```
 1         POTENTIALLY -- THOSE ARE FAIRLY PROMPT, RIGHT?

 2               MR. LEE:  POTENTIALLY, YES.

 3         I'M SORRY.  GO AHEAD.

 4               MS. SULLIVAN:  I'M SORRY, MR. LEE.

 5               MR. LEE:  NO, NO.  GO AHEAD.

 6               MS. SULLIVAN:  IT CAN BE PROMPT, UNLESS THE CASE IS

 7    RELISTED FOR A FURTHER CONFERENCE.

 8               THE COURT:  I SEE.

 9               MR. LEE:  RIGHT.

10               THE COURT:  OKAY.  AND IF IT'S RELISTED FOR FURTHER

11    CONFERENCE, IS THAT DONE A MONTH LATER?  LIKE IS THE FURTHER

12    CONFERENCE A MONTH LATER, OR IS THAT A VARIABLE DATE?

13               MS. SULLIVAN:  I -- IT'S SET IN ADVANCE, GENERALLY

14    THE NEXT WEEK.  I DON'T HAVE THE NOVEMBER CALENDAR IN FRONT OF

15    ME.

16               THE COURT:  OH, OKAY.

17               MS. SULLIVAN:  BUT, YOUR HONOR, IT'S SAFE TO ASSUME

18    THAT WE'LL HAVE AN ANSWER SOMETIME RELATIVELY SOON AFTER

19    NOVEMBER 3RD.

20               THE COURT:  OH, OKAY.  ALL RIGHT.

21         IF CERT IS GRANTED, DOES THAT MEAN WE -- I MEAN, OBVIOUSLY

22    IT DEPENDS ON WHAT QUESTIONS THE COURT WANTS TO HEAR.  DOES

23    THAT AFFECT WHAT WE'RE DOING?  OR IS IT -- IT SEEMS LIKE IT MAY

24    NOT, RIGHT, BECAUSE THAT'S MOSTLY -- WELL, IT DEPENDS ON WHAT

25    THEY TAKE.  BUT DOES THAT AFFECT WHAT WE'RE DOING ON THE 12-630
```

```
1    CASE, OR NOT?

2              MS. MAROULIS:  YOUR HONOR, TO THE EXTENT THAT THEY

3    GRANT CERT AS TO THE '647 PATENT, THAT WOULD -- WE WOULD NEED

4    TO STAY THOSE PROCEEDINGS OR TAKE THEM OFF CALENDAR BECAUSE

5    OTHERWISE WE WOULD BE WASTING THE COURT'S TIME WITH THE RUNNING

6    ROYALTY PROCEEDINGS.

7              THE COURT:  OKAY.  BUT IF -- LET'S SAY THEY JUST TAKE

8    IT ON PERMANENT INJUNCTION.  THEN I THINK WE CONTINUE; IS THAT

9    RIGHT?

10             MR. LEE:  YEAH.  AND ACTUALLY, YOUR HONOR, TO BE

11   PRECISE, THERE ARE THREE QUESTIONS PRESENTED.

12             THE COURT:  OKAY.

13             MR. LEE:  THE FIRST TWO, WHICH SAMSUNG CONTENDED WERE

14   CERT, WOULD NOT AFFECT THE ONGOING ROYALTY OR THE PROCEEDINGS

15   WE HAVE GOING ON ON THE '647 PATENT.

16       THE THIRD QUESTION WITH THE '647, YOU KNOW, WE'LL KNOW BY

17   THE MIDDLE OF NOVEMBER.  I WOULD PREDICT VERY FEW THINGS, BUT I

18   WOULD PREDICT THAT THAT'S NOT GOING TO BE SOMETHING WE'RE GOING

19   TO HAVE TO WORRY ABOUT.

20             MS. MAROULIS:  WE'LL UPDATE THE COURT WHEN THE

21   SUPREME COURT RULES.

22             MR. LEE:  FOR SURE.

23             THE COURT:  OKAY.  ALL RIGHT.  BUT IS THERE SOME

24   AGREEMENT THAT CERTAIN ISSUES WOULD NECESSITATE A STAY IF CERT

25   IS GRANTED AND CERTAIN ISSUES WOULD NOT?
```

```
 1                MR. LEE:  YES.

 2                THE COURT:  DO YOU --

 3                MR. LEE:  ONLY ONE OF THE THREE ISSUES RELATES TO THE

 4      '647 PATENT.  I THINK WE CAN AGREE UPON THAT.

 5                MS. SULLIVAN:  CORRECT.

 6                MS. MAROULIS:  THAT'S CORRECT.

 7                THE COURT:  OKAY.  ALL RIGHT.  SO THEN WE'LL JUST

 8      HAVE TO WAIT AND SEE.

 9           OKAY.  THEN I APPRECIATE -- LET'S DO THAT, THEN, HAVE --

10      IF WE CAN GET THE ORDER OUT QUICKLY, THEN I WOULD APPRECIATE US

11      HAVING THAT CMC ON THE 25TH TO TRY TO ADVANCE, ASSUMING A NEW

12      TRIAL IS GRANTED, THE WHOLE SCHEDULE, INCLUDING THE TRIAL, SO

13      THAT WE HAVE SUFFICIENT TIME TO REALLY DO THE POST-TRIAL

14      MOTIONS.  OKAY?

15                MS. MAROULIS:  YES, YOUR HONOR.

16                THE COURT:  ALL RIGHT.  DO I NEED TO SCHEDULE A

17      FURTHER CMC?  I GUESS I'M SCHEDULING IT ALREADY FOR THE 25TH OF

18      OCTOBER AT 2:00 O'CLOCK, SO THERE'S REALLY NOTHING MORE FOR

19      TODAY.

20           I DON'T HAVE ANY MORE QUESTIONS.

21           IS THAT --

22                MS. MAROULIS:  YOUR HONOR, IS THE NOVEMBER 8TH CMC

23      OFF CALENDAR NOW AS A RESULT OF THE OCTOBER 25TH?

24                THE COURT:  WELL, I MEAN, IF SOMETHING BAD HAPPENS

25      AND I'M NOT ABLE TO GET THE ORDER OUT -- WHY DON'T WE ASSUME,
```

```
 1        IF WE ARE HAVING A -- I'M SETTING A FURTHER CMC FOR THE 25TH OF

 2   OCTOBER AT 2:00.

 3        IF YOU DON'T HAVE AN ORDER SOON ENOUGH SUCH THAT WE CAN

 4   HAVE A CMC THAT DAY, THEN I WOULD LIKE TO KEEP THE 8TH.  BUT IF

 5   WE DO HAVE IT ON THE 25TH, YOU SHOULD ASSUME THE 8TH IS

 6   VACATED.

 7             MS. SULLIVAN:  THANK YOU, YOUR HONOR.

 8             MR. LEE:  OKAY.

 9             THE COURT:  OKAY.

10             MR. LEE:  AND, YOUR HONOR, IF WE DON'T HAVE IT -- AND

11   IF WE DON'T HAVE AN ORDER SO THAT WE'RE GOING TO HAVE TO COME

12   IN ON THE 8TH -- I THINK WE BOTH AGREE THAT THE CMC FOR THE

13   SECOND CASE IS NOT NECESSARY AT THIS MOMENT IN TIME BECAUSE

14   WE'RE IN THE MIDDLE OF THE EXPERT DISCOVERY.

15        OR SAID DIFFERENTLY, COULD WE PULL THE CMC FOR --

16             THE COURT:  FOR THE 630?

17             MR. LEE:  YES.

18             THE COURT:  THERE ARE NO ISSUES ON THE 630?

19             MS. MAROULIS:  YOUR HONOR, WE DID SEND A LETTER TO

20   APPLE WITH SOME CONCERNS ABOUT THEIR EXPERT REPORTS.  IT'S NOT

21   RIPE YET FOR THE COURT.

22        SO THIS VERY MINUTE RIGHT NOW, WE DON'T HAVE ANY ISSUES.

23        WE WOULD LIKE AN OPPORTUNITY, IF THAT IS NOT RESOLVED, TO

24   SEE THE COURT SOMETIME PRIOR TO THE BRIEFING.  BUT WE CAN

25   CANCEL THAT FOR THE OCTOBER 25TH TIMEFRAME.
```

1           THE COURT:  ALL RIGHT.  WELL, SHOULD WE CONTINUE IT

2      OUT TO A LATER DATE?  AND WHAT DATE SHOULD THAT BE?

3           MS. MAROULIS:  IT PROBABLY SHOULD BE A DATE AFTER THE

4      DEPOSITIONS, WHICH ARE CURRENTLY SCHEDULED FOR OCTOBER 27 AND

5      OCTOBER 31 RESPECTIVELY.  SO SOMETIME IN NOVEMBER IF YOUR HONOR

6      HAS TIME.

7           THE COURT:  ALL RIGHT.  WELL, WHAT WE COULD DO --

8      WHAT ABOUT USE THAT ON THE 8TH?  YOU HAVE NOVEMBER 8TH.  WHAT

9      ABOUT JUST SWITCHING?

10          MS. MAROULIS:  THAT'S FINE FOR SAMSUNG, YOUR HONOR.

11          MR. LEE:  THAT'S FINE.

12          THE COURT:  OKAY.  SO WHY DON'T WE CONTINUE THE CMC

13     IN 12-CV-630 TO NOVEMBER 8TH; AND WE'LL ADVANCE 11-1846 TO

14     OCTOBER 25.  OKAY?

15          MS. MAROULIS:  THANK YOU, YOUR HONOR.

16          MR. LEE:  THANK YOU, YOUR HONOR.

17          THE COURT:  ALL RIGHT.  THANK YOU.

18        AND THOSE ARE BOTH AT 2:00 P.M.

19        THANK YOU.

20          MS. SULLIVAN:  THANK YOU VERY MUCH, YOUR HONOR.

21          MR. LEE:  THANK YOU, YOUR HONOR.

22          THE CLERK:  COURT'S ADJOURNED.

23        (THE PROCEEDINGS WERE CONCLUDED AT 2:58 P.M.)

24

25