UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br>               Plaintiff, <br><br>        v. <br><br> SAMSUNG ELECTRONICS CO. LTD., et al., <br><br>             Defendants. | Case No. 11-CV-01846-LHK <br><br> **ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES** <br><br> Re: Dkt. Nos. 3521-24 |

After two jury trials and decisions by both the Federal Circuit and the United States Supreme Court, the instant case has been remanded for a determination of whether the jury's $399 million award in favor of Apple for design patent infringement should stand or whether a new damages trial is required. At the center of the U.S. Supreme Court's decision and the question now before this Court is 35 U.S.C. § 289, which is a damages provision specific to design patents. Section 289 reads, in relevant part:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

Apple and Samsung[1] dispute whether the relevant article of manufacture for the purpose of calculating damages under § 289 for the design patent infringement in the instant case is the entire smartphone or a part thereof. In *Samsung Electronics Co. v. Apple Inc.*, 137 S. Ct. 429 (2016) ("*Supreme Court Decision*"), the U.S. Supreme Court interpreted § 289 for the first time. It explained that "[a]rriving at a damages award under § 289 . . . involves two steps. First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Id.* at 434. The U.S. Supreme Court then held that "[t]he term 'article of manufacture,' as used in § 289, encompasses both a product sold to a consumer and a component of that product." *Id.* However, the U.S. Supreme Court declined to establish the test for identifying the article of manufacture for the purpose of § 289. *Id.* After remand to the Federal Circuit, the Federal Circuit held that "the trial court should consider the parties' arguments in light of the trial record and determine what additional proceedings, if any, are needed. If the court determines that a new damages trial is necessary, it will have the opportunity to set forth a test for identifying the relevant article of manufacture for purpose of § 289, and to apply that test to this case." *Apple Inc. v. Samsung Elecs. Co.*, 678 F. App'x 1012, 1014 (Fed. Cir. 2017) (unpublished) ("*Federal Circuit Remand Decision*").

Accordingly, the Court must now set forth the method for determining the relevant article of manufacture for the purpose of § 289. Taking into consideration that test and the trial proceedings in the instant case, the Court must then decide whether a new damages trial for design patent infringement is warranted.

## I.    BACKGROUND

### A.    History of § 289

"Section 289 of the Patent Act provides a damages remedy specific to design patent infringement." *Supreme Court Decision*, 137 S. Ct. at 432. The history of § 289 provides important context for understanding the progression of the litigation in the instant case, as well as

---

[1] The Court refers to Samsung Electronics Company, Samsung Electronics America, and Samsung Telecommunications America collectively as "Samsung" in this order.

United States District Court
Northern District of California

the competing policy considerations implicated by the formulation of a test for determining the relevant article of manufacture under § 289. As the U.S. Supreme Court has explained, Congress enacted the predecessor to § 289 in 1887 in response to the U.S. Supreme Court's decisions in what are known as the *Dobson* cases. *Supreme Court Decision*, 137 S. Ct. at 432-33 (citing *Dobson v. Dornan*, 118 U.S. 10 (1886); *Dobson v. Hartford Carpet Co.*, 114 U.S. 439 (1885)). "The cases involved the Dobson brothers, who were found to have infringed patented designs for carpets." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1441 (Fed. Cir. 1998). "In *Dobson v. Hartford Carpet Co.*, the lower courts had awarded the holders of design patents on carpets damages in the amount of 'the entire profit to the [patent holders], per yard, in the manufacture and sale of carpets of the patented designs, and not merely the value which the designs contributed to the carpets.'" *Supreme Court Decision*, 137 S. Ct. at 432-33 (internal citation omitted) (quoting *Dobson v. Hartford Carpet Co.*, 114 U.S. at 443). The U.S. Supreme Court "construed the statute [in effect at the time] to require proof that the profits were 'due to' the design rather than other aspects of the carpets." *Id.* at 433 (quoting *Dobson v. Hartford Carpet Co.*, 114 U.S. at 444). "[B]ecause the patentees could not show what portion of the [damages] was due to the patented design and what portion was due to the unpatented carpet," the U.S. Supreme Court reversed. *Nike*, 138 F.3d at 1441 (citing *Dobson v. Dornan*, 118 U.S. 10; *Dobson v. Hartford Carpet Co.*, 114 U.S. 439). The U.S. Supreme Court awarded nominal damages of six cents to each plaintiff. *Dobson v. Dornan*, 118 U.S. at 18; *Dobson v. Hartford Carpet Co.*, 114 U.S. at 447.

Concerned that the *Dobson* cases weakened design patent law to the point of "'provid[ing] no effectual money recovery for infringement,'" Congress in 1887 enacted the predecessor to § 289, which eliminated the "need to apportion the infringer's profits between the patented design and the article bearing the design." *Nike*, 138 F.3d at 1441-42 (quoting H.R. REP. NO. 1966, 49th Cong. 1st Sess., 1 (1886)); *see also Supreme Court Decision*, 137 S. Ct. at 433 (citing S. REP. NO. 206, 49th Cong., 1st Sess., 1-2 (1886)). Instead of requiring proof that profits were attributable to the patented design, the predecessor to § 289 allowed the patentee to recover "the total profit" made by the infringer from the "manufacture or sale . . . of the article or articles to which the

design, or colorable imitation thereof, has been applied." *Supreme Court Decision*, 137 S. Ct. at

433 (quoting 24 Stat. 387). The Patent Act of 1952 codified that "total profit" remedy for design

patent infringement in § 289, *see id.*, and the Federal Circuit in *Nike* affirmed that § 289 did not

require apportionment, *see* 138 F.3d at 1441-43. With this background established, the Court now

recounts the history of the instant case.

**B.      The Design Patents and Trial Proceedings in the Instant Case**

After releasing the iPhone in 2007, Apple obtained design patents on a number of phone

design features. As relevant here, Apple obtained the following three design patents: (1) the

D618,677 patent (the "D'677 patent"), which covers a black rectangular front face of a phone with

rounded corners; (2) the D593,087 patent (the "D'087 patent"), which covers a rectangular front

face of a phone with rounded corners and a raised rim; and (3) the D604,305 patent (the "D'305

patent"), which covers a grid of 16 colorful icons on a black screen. *See Supreme Court Decision*,

137 S. Ct. at 432-33.

On April 15, 2011, Apple sued Samsung for, among other things, design patent

infringement, utility patent infringement, and trade dress infringement. ECF No. 1. Throughout

the proceedings, Samsung argued for apportionment. Samsung only raised its article of

manufacture theory days before trial. Specifically, Samsung does not contest that the issue of the

proper article of manufacture was never raised during discovery. In fact, Samsung resisted

attempts by Apple to obtain data about the costs of components of Samsung's infringing phones.

*See* ECF No. 673 at 15 (order by Magistrate Judge Paul Grewal holding that Samsung has

previously withheld relevant information on the "selling price per accused product, gross margin,

expenses and operating profit"); ECF No. 880 at 10–14 (Magistrate Judge Grewal imposing

sanctions for Samsung's delay in providing documents including the "'costed bills of materials'

for the accused products"). However, Samsung eventually produced pricing information to Apple

about the component parts of Samsung's phones. *See* ECF No. 2607-5 at 16 (Apple's damages

expert noting that he relied on "a file that reflects detailed information on [Samsung's] material

costs for the Accused Products").

One of Samsung's expert reports written by Michael Wagner, which Samsung filed as part of its motion for summary judgment, included a damages theory that would have awarded Apple less profit than the entire profit on Samsung's infringing phones.  *See* ECF No. 3198 ¶ 340 (using consumer survey information to indicate a split between the profit attributable to the design of Samsung's phones and its technology).  However, in response to Apple's motion to exclude the damages theory from this expert report, Samsung solely argued that the expert report was admissible based on its apportionment theory of damages, and did not mention the article of manufacture theory.  ECF Nos. 1057, 1157 ("Samsung's opposition cites no legal basis for Mr. Wagner's apportionment of damages, in clear contravention of 35 U.S.C. § 289, instead appealing only to procedural and policy arguments for allowing apportionment in this case.").  The Court excluded Michael Wagner's expert report as to those damages because § 289 and Federal Circuit case law clearly exclude an apportionment theory of design patent damages.  *See* ECF No. 1157 (citing *Nike*, 138 F.3d at 1442-43 (noting that Congress removed "the need to apportion the infringer's profits between the patented design and the article bearing the design" when it passed the Act of 1887, which was subsequently codified under § 289)).

The first time Samsung raised its article of manufacture theory was in a trial brief filed on July 24, 2012, 6 days before the 2012 trial, which began on July 30, 2012.  In that trial brief, Samsung argued in its trial brief that § 289 "require[s] that profits disgorgement be limited to the 'article of manufacture' to which a patented design is applied" and that, as a result, Apple's attempt to seek "*all* of Samsung's profits from sales of the accused phones and tablets" would result in a windfall.  ECF No. 1300 at 19-22.  Samsung relied on *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902 (2d Cir. 1915) ("*Piano I*"), and *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79 (2d Cir. 1916) ("*Piano II*") (opinion after appeal following remand) (collectively, "the *Piano* cases"), in which the Second Circuit held that the patentee had been overcompensated for being awarded the profits from an entire piano when the design patent at issue only applied to the piano case, not the internal components of the piano itself.  *Piano I*, 222 F. at 904.

Samsung raised this issue again in a Rule 50(a) motion for judgment as a matter of law

following the close of Apple's case-in-chief.  Samsung argued that "Apple [has not] made any

effort to limit the profits it's seeking to the article to which the design is applied.  That's the plain

language of [§ 289].  They are acting—they are assuming that the article to which the design is

applied is the entire product, which is erroneous as a matter of law.  They have not factored out,

for example, the technology and what drives those profits."  ECF No. 1839 at 201-02.

In addition, Samsung's proposed jury instructions included Proposed Jury Instruction 42.1:

> If you find that [Samsung] infringed any of Apple's design patents, and if you
> decide to award Apple profits from [Samsung's] sales, you should award only
> those profits which were derived from the article of manufacture to which Apple's
> patented design was applied.  The article to which Apple's design was applied
> may be the same as or different from Samsung's devices as sold because devices
> offered for sale may incorporate a single article of manufacture or several articles
> of manufacture.  The article of manufacture to which a design has been applied is
> the part or portion of the product as sold that incorporates or embodies the subject
> matter of the patent.  Where the article of manufacture is a case or external
> housing of the device, then only the profits from the sale of the case or external
> housing of the device should be awarded.  Under these instructions, an award of
> profits for design patent infringement should not include profits earned from the
> technology by which the devices operate or from any other functions of the
> devices.

ECF No. 1694 ("Proposed Final Jury Instructions") at 151.

Apple objected to Proposed Jury Instruction 42.1 on the grounds that (1) the *Piano* cases

were out-of-circuit, century-old precedent; (2) the Federal Circuit's *Nike* decision "explain[ed] that

[article of manufacture] refers to the product that is sold"; and (3) the instant case was

distinguishable from the *Piano* cases because those cases "refer[] to the piano case being sold

separately from the piano," whereas the outer case and internals of the phone are not sold

separately.  Proposed Final Jury Instructions at 151-52.

The Court excluded Proposed Jury Instruction 42.1.  *See* ECF No. 1901.  Instead of

Proposed Jury Instruction 42.1, the Court gave Final Jury Instruction No. 54, which read in

relevant part:

> If you find infringement by any Samsung defendant and do not find Apple's
> design patents are invalid, you may award Apple that Samsung defendant's total
> profit attributable to the infringing products.

The "total profit" of [Samsung] means the entire profit on the sale of the article to

United States District Court
Northern District of California

which the patented design is applied, and not just the portion of profit attributable to the design or ornamental aspects covered by the patent. "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

If you find infringement by any Samsung defendant, Apple is entitled to all profit earned by that defendant on sales of articles that infringe Apple's design patents.

ECF No. 1901 at 72.

After a thirteen day jury trial from July 30, 2012 to August 24, 2012 (the "2012 trial") and approximately three full days of deliberation, the jury reached a verdict. *See* ECF No. 1931. The jury found that Samsung had infringed the D'677, D'087, and D'305 patents, Apple's utility patents, and Apple's trade dress. *Id.* The jury awarded approximately $1.049 billion to Apple on its infringement and trade dress claims. *Id.*

After trial, Samsung moved for judgment as a matter of law. ECF No. 2013. In that motion, Samsung mixed the apportionment and article of manufacture theories. Samsung argued that Apple should have "limit[ed] its calculations of Samsung's profits to those attributable to use of the patented designs," which "violate[d] the causation requirement" that exists in "all patent infringement litigation." *Id.* at 18-19. Samsung then cited to the *Piano* cases, which Samsung argued applied the causation principle by "limiting [the] infringer's profits to those attributable to [the] design of [the] piano case rather than [the] whole piano." *Id.* at 19. Moreover, Samsung argued that "[t]he record contains no evidence that the entire sales value of Samsung's products was attributable to their outer casings or GUI, as opposed to the numerous noninfringing technological components that enable the devices to function and drive consumer choice." *Id.* at 19. In Samsung's reply brief in support of its motion for judgment as a matter of law, Samsung argued that Apple "fail[ed] to offer any evidence that [the profits awarded in the instant case] are the profits from the 'article of manufacture' at issue, which is the phones' outer casings or GUI." ECF No. 2131 at 4. The Court denied Samsung's motion for judgment as a matter of law under *Nike* and the Federal Circuit's precedent forbidding the apportionment of design patent damages. ECF No. 2271 at 12–13 (citing *Nike*, 138 F.3d at 1441 ("'It is expedient that the infringer's entire profit on the article should be recoverable,' for 'it is not apportionable' . . . .")).

7

However, the Court granted judgment as a matter of law as to the 2012 jury verdict on the theory that Apple's utility and design patent infringement damages numbers relied on improper notice dates. *See* 35 U.S.C. § 287(a) (predicating infringement damages in certain circumstances on proof that "the infringer was notified of the infringement and continued to infringe thereafter"). Because Apple had not presented sufficient evidence to recalculate the appropriate damages award for some of the infringing sales at issue in light of the proper notice dates, the Court struck approximately $410 million from the 2012 jury award and ordered a limited new trial on utility and design patent damages relating only to the sales of those products (the "2013 trial"). *See* ECF No. 2271 at 26; 2316 at 2 (case management order reinstating portion of original jury award).

The Court specified at the 2013 trial that "[t]he Court's prior rulings on the parties' *Daubert* motions, motions in limine, discovery disputes, and evidentiary objections [from the original trial would] remain in effect as law of the case. The parties [could] not relitigate these issues." ECF No. 2316 at 2. Thus, the Court limited the evidence and witnesses at the 2013 trial to the evidence that was admissible at the 2012 trial. *See* ECF No. 2369.

At the 2013 trial, Samsung argued in a Rule 50(a) motion for judgment as a matter of law at the close of Apple's case that "Apple presents no evidence of apportionment." ECF No. 2842 at 113. However, Samsung's argument had two parts. First, Samsung explained that "Samsung previously cited a number of cases, including [the *Piano* cases] . . . , all of those cases stand for the proposition that you cannot get infringer's profits on the entire device and you can only do it for the actually infringing feature." *Id.* Second, Samsung argued that "Apple further did not present any evidence of causation, that these particular accused features of the design patents or the patented designs drive the sales and did not include that in their calculation analysis." *Id.* at 113-14. The Court denied Samsung's motion. *Id.* at 132. The Court gave Final Jury Instruction 31 on design patent damages, which was substantially the same as the 2012 trial's Final Jury Instruction 54, edited only to reflect the fact that liability had already been determined. *See* ECF No. 2783 at 40.

On November 21, 2013, after six days of trial and two days of deliberation, a jury awarded

8

Apple approximately $290 million in damages for design and utility patent infringement.  *See* ECF No. 2822.  After the 2013 trial, Samsung repeated verbatim in its Rule 50(b) motion for judgment as a matter of law the arguments Samsung made in its Rule 50(b) motion for judgment as a matter of law after the 2012 trial.  *See* ECF No. 2884-2 at 31–32.  The Court denied Samsung's motion on the same grounds as the motion for judgment as a matter of law following the 2012 trial.  ECF No. 2947 at 16 n.8.  On March 6, 2014, the Court entered final judgment in favor of Apple in the amount of $929,780,039 on its design patent, utility patent, and trade dress claims.  ECF No. 3017.

## C.     Appeal of the Final Judgment

With respect to design patent damages, Samsung argued on appeal that "the district court legally erred in allowing the jury to award Samsung's entire profits on its infringing smartphones as damages." *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1001-02 (Fed. Cir. 2015) ("*Federal Circuit Appeal*").  Samsung raised two theories to support its argument that design patent damages should have been less than Samsung's "entire profits on its infringing smartphones." *Id.*  The Federal Circuit held that both theories lacked merit.  *Id.*

First, Samsung argued that "[t]he damages . . . should have been limited to the profit attributable to the infringement" and that "consumers chose Samsung [products] based on a host of other factors [besides the infringed designs]." *Id.*  The Federal Circuit noted that this theory essentially advocated "apportionment," which would "require[] [the patentee] to show what portion of the infringer's profit, or of his own lost profit, was due to the design and what portion was due to the article itself." *Id.*  However, the Federal Circuit held that, as recognized in *Nike*, 138 F.3d 1437, Congress rejected apportionment for design patent damages under § 289.  *Federal Circuit Appeal*, 786 F.3d at 1001-02.

Second, Samsung argued that "the profits awarded [for design patent infringement] should have been limited to the infringing 'article of manufacture,' not the entire infringing product." *Id.*  The Federal Circuit rejected this theory because "[t]he innards of Samsung's smartphones were not sold separately from their shells as distinct articles of manufacture to ordinary purchasers." *Id.*  Thus, the Federal Circuit held that the design patent damages did not need to be limited to profits

9

attributable to an article of manufacture less than the entirety of each infringing Samsung phone. *Id.*

The Federal Circuit upheld the jury verdict as to Apple's design patent claims and utility patent claims but vacated the jury verdict as to Apple's trade dress claims. *Id.* at 994-96. The Federal Circuit held that Apple's claimed trade dress was not protectable under Ninth Circuit law and vacated the jury verdict as to Apple's trade dress claims. *Id.* The Federal Circuit "remand[ed] for immediate entry of final judgment on all damages awards not predicated on Apple's trade dress claims and for any further proceedings necessitated by our decision to vacate the jury's verdicts on the unregistered and registered trade dress claims." *Id.* at 1005.

On September 18, 2015, on remand, this Court entered partial final judgment in the amount of $548,176,477 as to the damages for products that were found to infringe only Apple's design and utility patents (and not Apple's trade dress). ECF No. 3290. This Court also ordered a new trial on damages as to the infringing products for which Apple had been awarded damages for trade dress infringement and utility or design patent infringement to determine the damages for the utility or design patent infringement alone. ECF No. 3289. The trial would begin on March 28, 2016.

**D.      Proceedings Before the U.S. Supreme Court**

On March 21, 2016, the U.S. Supreme Court granted certiorari in this case. *Samsung Elecs. Co. v. Apple Inc.*, 136 S. Ct. 1453 (2016) (granting certiorari). The question for which certiorari was granted was: "Where a design patent is applied to only a component of a product, should an award of infringer's profits be limited to those profits attributable to the component?" *Id.* As a result, on March 22, 2016, this Court vacated the March 28, 2016 trial and stayed the case. ECF No. 3472.

At oral argument on October 11, 2016, Samsung abandoned its apportionment argument, and thus interpretation of the term "article of manufacture" was the only issue before the U.S. Supreme Court. *See Supreme Court Decision*, 137 S. Ct. at 434 n.2; Tr. of Oral Arg. at 6. On December 6, 2016, the U.S. Supreme Court held that determining profits under § 289 involves two

10

steps: "First, identify the 'article of manufacture' to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture." *Supreme Court Decision*, 137 S. Ct. at 434. On the first step, the U.S. Supreme Court held that the "article of manufacture" for which total profits are awarded under § 289 was not necessarily limited to the product that is sold to consumers, but may be either "a product sold to a consumer [or] a component of that product." *Id.* However, the U.S. Supreme Court "decline[d] to lay out a test for the first step of the § 289 damages inquiry in the absence of adequate briefing by the parties." *Id.* at 436.

After remand, the Federal Circuit remanded the case to this Court and held that "the trial court should consider the parties' arguments in light of the trial record and determine what additional proceedings, if any, are needed. If the court determines that a new damages trial is necessary, it will have the opportunity to set forth a test for identifying the relevant article of manufacture for purpose of § 289, and to apply that test to this case." *Federal Circuit Remand Decision*, 678 F. App'x at 1014.

**E.     Proceedings on Remand in this Court**

On remand, Samsung sought a new trial on design patent damages on the ground that, in light of the U.S. Supreme Court's interpretation of "article of manufacture" in this case, this Court provided legally erroneous instructions to the jury that prejudiced Samsung. Apple argued that Samsung had waived its right to seek a new trial on the article of manufacture issue, that the jury instructions given were not legally erroneous, and that no evidence in the record supported Samsung's proposed jury instruction. On July 28, 2017, following briefing by the parties, this Court ruled that Samsung had not waived the article of manufacture issue because Samsung had objected to the exclusion of Proposed Jury Instruction 42.1. ECF No. 3509.

However, the Court was unable to determine whether the jury instructions as given constituted prejudicial error until it resolved other issues, including the test for determining the relevant article of manufacture for the purpose of § 289 and which party bore the burden of proving the relevant article of manufacture and the amount of total profits. Accordingly, the Court

deferred ruling on whether a new trial was warranted and ordered further briefing on what the test should be for determining the relevant article of manufacture for purpose of § 289, whether the determination of the article of manufacture was a question of fact or law, which party bore the burden of identifying the relevant article of manufacture, and which party bore the burden of establishing the total profits for the purpose of § 289. ECF No. 3509 at 32-33. The Court also ordered the parties to identify the relevant article of manufacture for each of the patents at issue in the instant case, as well as evidence in the record supporting their assertions of the relevant article of manufacture and their assertions of the total profit for each article of manufacture. *Id.* at 33.

On September 8, 2017, the parties submitted cross-opening briefs on those issues. ECF No. 3521 ("Samsung Opening Br."); ECF No. 3522 ("Apple Opening Br."). On September 28, 2017, the parties submitted cross-responses. ECF No. 3523 ("Apple Response"); ECF No. 3524 ("Samsung Response"). The Court held a hearing on October 12, 2017.

## II.    DISCUSSION

In order to determine whether a new trial on design patent damages is warranted, the Court must first decide the test to identify the relevant article of manufacture for the purpose of § 289 and which party bears the burden of proving the relevant article of manufacture. Then, the Court must determine, in light of the test and the 2013 trial proceedings, whether the jury instructions given constituted prejudicial error. The Court addresses these issues in turn.

### A.    Identifying the Relevant Article of Manufacture for the Purpose of § 289

As explained above, the U.S. Supreme Court and the Federal Circuit declined to specify how courts or juries[2] are to identify the relevant article of manufacture for the purpose of § 289. *See Supreme Court Decision*, 137 S. Ct. at 436; *Federal Circuit Remand Decision*, 678 F. App'x at 1014. The Court first describes the approach advocated by the United States before the U.S. Supreme Court and then describes the approaches advocated by the parties. The Court then

---

[2] The parties agree that determining the relevant article of manufacture for the purpose of § 289 is a question of fact that a jury decides when there is a material factual dispute. *See* Apple Opening Br. at 7-9; Samsung Opening Br. at 7-8.

1  analyzes the various approaches.

2  **1. The Method for Determining the Relevant Article of Manufacture**

3  **a. The United States' Proposal**

4  Writing as amicus curiae in support of neither party before the U.S. Supreme Court, the

5  United States described the article of manufacture inquiry as "a case-specific analysis of the

6  relationship among the design, the product, and any components." Brief for United States as

7  Amicus Curiae Supporting Neither Party ("U.S. Br.") at 9, *Samsung Elecs. Co., Ltd. v. Apple Inc.*,

8  137 S. Ct. 429 (2016) (No. 15-777), 2016 WL 3194218, at *9. "The factfinder should identify the

9  article in which the design prominently features, and that most fairly may be said to embody the

10  defendant's appropriation of the plaintiff's innovation." *Id.* With respect to multicomponent

11  products, the United States argued that in some instances, "the finished product as sold in

12  commerce is most naturally viewed as the article to which the patented design is 'applied.'" *Id.* at

13  *18. However, in other instances, "it is more natural to say that the design has been applied to a

14  single component, or to a set of components that together are only a portion of the product as

15  sold." *Id.* at *18-19.

16  The United States proposed that the U.S. Supreme Court adopt a four-factor test to

17  determine the relevant article of manufacture. The factors that the United States identified were:

18  - "[T]he scope of the design claimed in the plaintiff's patent, including the drawing and written description";

19  - "[T]he relative prominence of the design within the product as a whole";

20  - "[W]hether the design is conceptually distinct from the product as a whole"; and

21  - "[T]he physical relationship between the patented design and the rest of the product," including whether "the design pertains to a component that a user or seller can physically separate from the product as a whole," and whether "the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately."

23  *Id.* at *27-29; *see also* Elizabeth M. Gil, Note, Samsung v. Apple: *Taking a Bite Out of the Design*

24  *Patent "Article of Manufacture" Controversy*, 25 U. MIAMI BUS. L. REV. 67, 84-88 (2017)

25  (endorsing the United States' test). During oral argument before the U.S. Supreme Court, both

26  parties approved of the United States' proposed test, with some caveats. *See* Tr. of Oral Arg. at

27  20:7-9 (Samsung's counsel: "We – we like the Solicitor General's test. We propose a briefer test

28
13

that we think is more administrable."), 39:3-5 (Apple's counsel: "We believe that the – the four factors that the Solicitor General articulated would be appropriate factors to consider."), 39:22-40:1 (Apple's counsel: "In [determining the article of manufacture], you may consider, and this would depend on the evidence in the case, among other factors I would include the Solicitor General's, and there may be other things."), 43:1-7 (Justice Sotomayor: "[The Solicitor General has] a four-part test. Do you agree that that four-part test with respect to identifying just the article of manufacture?" Apple's counsel: "Yes, with the following caveat only.  What – the factors that the jury will be told will depend on the evidence that the parties educe.")

### b.  The Parties' Proposals

Notwithstanding the parties' apparent general agreement with the United States' proposed test during oral argument before the U.S. Supreme Court, both parties now advocate different tests, which only partially overlap with the United States' proposed test.  Apple now advocates a test comprising four factors.  Apple's proposed factors are:

- "How the defendant sells its infringing product and accounts for its profits on those sales, including whether the defendant typically sells its asserted article of manufacture as part of a unified product or separately";
- "The visual contribution of the patented design to the product as a whole, including whether the claimed design gives distinctive appearance to the product as a whole or only to the asserted article of manufacture";
- "The degree to which the asserted article of manufacture is physically and conceptually distinct from the product as sold"; and
- "The defendant's reasons for appropriating the patented design, including whether the defendant did so in an effort to replicate a product as a whole."

Apple Opening Br. at 3-6.  Apple explains that the relevance of each factor may vary from case to case.  *Id.* at 3 n.2.

Samsung contends that the relevant article of manufacture is "the specific part, portion, or component of a product to which the patented design is applied.  The article is identified by comparing the claimed attributes of the design patent to the accused product to identify the specific part, portion, or component of the product that corresponds to the patent's claim." Samsung Opening Br. at 3.  Samsung further contends that the relevant article of manufacture "does not include any part, portion, or component of a product that is disclaimed by the patent or

14

that does not correspond to the claimed attributes of the patented design, including any part, portion, or component of a product that is not considered when determining infringement." *Id.*

### c. Analysis

Apple contends that Samsung's proposed test is too restrictive because overreliance on the scope of the design patent would foreclose the possibility that the relevant article of manufacture in a multicomponent product could ever be the entire product as sold to the consumer. Apple Response at 1, 4-5. The U.S. Supreme Court's decision, Apple argues, did not go so far. *Id.* at 4-5. For its part, Samsung accuses Apple of flouting the U.S. Supreme Court's holding and proposing factors that have nothing to do with the relevant inquiry. Samsung Response at 7-13. The Court addresses these arguments in turn, and then the Court assesses the United States' proposal.

### 1. The U.S. Supreme Court Did Not Foreclose the Possibility that a Multicomponent Product Could be the Relevant Article of Manufacture in Some Cases

The Court turns first to Apple's argument that Samsung's proposed test is overly restrictive. As explained above, Samsung advocates that the factfinder should "compar[e] the claimed attributes of the design patent to the accused product to identify the specific part, portion, or component of the product that corresponds to the patent's claim." Samsung Opening Br. at 3. Samsung contends that, as a matter of law, the "relevant article of manufacture does not include any part, portion, or component of a product that is disclaimed by the patent." *Id.* According to Apple, this test would mean that a complex multicomponent product could never be the relevant article of manufacture, because a design patent may only cover the "ornamental appearance of an article of manufacture," not "internal or functional features." Apple Response at 3 (internal quotation marks omitted); *see* Samsung Opening Br. at 3.

The U.S. Supreme Court's decision did not rule out the possibility that the relevant article of manufacture could be a multicomponent product. The U.S. Supreme Court framed the issue before it as follows:

> The only question we resolve today is whether, in the case of a multicomponent product, the relevant "article of manufacture" must always be the end product

15

United States District Court
Northern District of California

sold to the consumer or whether it can also be a component of that product. Under the former interpretation, a patent holder will always be entitled to the infringer's total profit from the end product. Under the latter interpretation, a patent holder will *sometimes* be entitled to the infringer's total profit from a component of the end product.

*Supreme Court Decision*, 137 S. Ct. at 434 (emphasis added). Logically, if the patent holder is only sometimes entitled to the infringer's total profit from a component of the end product, then the patent holder is also sometimes entitled to the infringer's total profit on the entire end product. Indeed, the U.S. Supreme Court did not adopt a per se rule that the relevant article of manufacture in a multicomponent product is *always* only a component.[3] Rather, the U.S. Supreme Court held that "the term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not." *Id.* at 436.

Samsung's test is not consistent with the U.S. Supreme Court's decision, which left open the possibility that a multicomponent product could be the relevant article of manufacture. Indeed, Samsung's test does not produce a logical result when applied to the very product that the U.S. Supreme Court identified as an easy case: a dinner plate. *See Supreme Court Decision*, 137 S. Ct. at 432. Consider a design patent for the decorative rim of a dinner plate. *See, e.g.*, U.S. Patent No. D730,115 (design patent that claims design for rim of a dinner plate). Samsung's test purports to exclude as a matter of law any part of a product not claimed in the design patent. But in the case of a unitary object such as a dinner plate, the object must be the relevant article of manufacture, even where the design patent disclaims part of the object. *See Supreme Court Decision*, 137 S. Ct. at 432. Although Samsung conceded during the October 12, 2017 hearing that in the case of a single-article product that article must be the relevant article of manufacture, ECF No. 3528 at 22:9-22:18, 23:2-23:7, 23:19-23:23, 24:8-24:10 ("Hearing Tr."), the dinner plate example shows that Samsung's test as written does not produce a logical result, even when applied to a simple unitary product. Thus, it would likely also be over-restrictive when applied to multicomponent products. Because Samsung's test would result in a stricter application of § 289

---

[3] Although Samsung cites questions posed by U.S. Supreme Court Justices during oral argument to support its test, *see* Samsung Response at 6, it is the text of the written opinion that controls.

than the U.S. Supreme Court appeared to contemplate, the Court declines to adopt Samsung's proposed test.

### 2. Apple's Test Omits the Scope of the Design Patent and Its Fourth Factor Strays From the Text of the Statute

Apple's proposed test also has some flaws. Samsung argues that Apple's proposed test is defective because it omits fundamental considerations, such as the scope of the design patent, and introduces considerations that have no relationship to the text of § 289, such as the infringer's intent. Samsung Response at 3, 8. Samsung also contends that some of Apple's proposed factors contradict the U.S. Supreme Court's decision in the instant case.

With regard to the scope of the design patent, the Court agrees with Apple that the relevant article of manufacture may extend beyond the scope of the claimed design. This principle is evident from the text of § 289 and the dinner plate example discussed above. *See* 35 U.S.C. § 289 ("Whoever during the term of a patent for design . . . applies the patented design . . . to *any* article of manufacture . . .") (emphasis added). At the same time, the Court agrees with Samsung that "[t]he statute cannot be administered without first ascertaining the scope of the design claimed by the patent." Samsung Response at 3. As a result, the scope of the design patent must be a central consideration for the factfinder when determining the relevant article of manufacture for the purpose of § 289.

Conversely, Apple's fourth proposed factor, the infringer's intent in copying the patented design, finds no support in the text of the statute. Apple cites no authority in its briefs to support the inclusion of this factor. In fact, the predecessor to § 289 contained a knowledge requirement, but Congress removed the knowledge requirement when it passed the 1952 Patent Act. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1290 (Fed. Cir. 2002); Mark A. Lemley, *A Rational System of Design Patent Remedies*, 17 STAN. TECH. L. REV. 219, 223 & n.19 (2013) (explaining history of knowledge requirement). Moreover, the article of manufacture inquiry is a factual one: to which article of manufacture was the patented design applied? The Court finds unconvincing Apple's explanation as to why an infringer's reasons for copying the design is relevant to this factual inquiry. As a result, the Court declines to include the infringer's

intent as a factor in the article of manufacture test.

Finally, Samsung contends that Apple's first proposed factor, how the defendant sells and accounts for its profits on the infringing profit, conflicts with the U.S. Supreme Court's reasoning in the instant case. Apple argues that "[i]f the defendant typically sells its asserted article of manufacture as part of a unitary product, the factfinder may reasonably infer that the defendant has applied the patented design to the product as a whole." Apple Opening Br. at 4. Apple goes on, "For example, where a design patent covers only the 'upper' portion of a shoe, the entire shoe may fairly be considered the article of manufacture if the defendant only sells the infringing shoes as a whole." *Id.* Samsung contends that this is precisely the reasoning that the Federal Circuit adopted in the instant case, and it is also the reasoning that the U.S. Supreme Court rejected. Samsung Response at 4. Accordingly, Samsung urges the Court to "keep how the product is sold totally out of" the test for determining the relevant article of manufacture. Hearing Tr. 17:8-17:9.

The Court does not read the U.S. Supreme Court's decision as narrowly as Samsung suggests. The U.S. Supreme Court interpreted the Federal Circuit's decision in the instant case as adopting a per se rule that "the relevant 'article of manufacture' must always be the end product sold to the consumer." *Supreme Court Decision*, 137 S. Ct. at 434. The U.S. Supreme Court framed the question before it as follows: "[T]he Federal Circuit identified the entire smartphone as the only permissible 'article of manufacture' for the purpose of calculating § 289 damages because consumers could not separately purchase components of the smartphones. The question before us is whether that reading is consistent with § 289. We hold that it is not." *Supreme Court Decision*, 137 S. Ct. at 432. The U.S. Supreme Court also said, "[R]eading 'article of manufacture' in § 289 to cover *only* an end product sold to a consumer gives too narrow a meaning to the phrase." *Id.* at 436 (emphasis added). Thus, the U.S. Supreme Court rejected a per se rule that the relevant article of manufacture is always the product sold to the consumer. Instead, the U.S. Supreme Court held that "the term 'article of manufacture' is broad enough to encompass both a product sold to a consumer as well as a component of that product." *Id.* at 435. Moreover, the U.S. Supreme Court did not hold that how a product is sold is irrelevant to the article of manufacture inquiry.

United States District Court
Northern District of California

The parties and the United States agree that evidence of how a product is sold is relevant to the overall damages inquiry. In the October 12, 2017 hearing, Samsung conceded that evidence of how a product is sold would be relevant to determining the amount of total profit on the relevant article of manufacture. Hearing Tr. 17:12-17:20 ("[W]hat the sale might be relevant to is – might be relevant to – is step 2, what's the quantum of profit? Maybe you look to how the product is sold and whether components are sold separately in a parts market or an aftermarket."). In addition, the United States' fourth proposed factor includes whether "the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately." In light of the U.S. Supreme Court's decision in this case and the parties' agreement that evidence of how the product is sold is relevant, the Court finds that how the product is sold can be considered by the factfinder in determining the relevant article of manufacture. However, because the Court finds the United States' articulation of this factor preferable, the Court declines to adopt Apple's first factor as written and instead adopts the United States' fourth factor, as explained in more detail below.

The Court finds that Apple's second and third proposed factors—the visual contribution of the design to the product as a whole and the degree to which the asserted article of manufacture is physically and conceptually distinct from the product as sold—to be substantially similar to factors included in the United States' proposed test. Accordingly, the Court addresses those factors in the next section.

### 3. The United States' Proposed Test Most Accurately Embodies the Relevant Inquiry

The Court now turns to the four-factor test proposed by the United States. Once again, those factors are:

- "[T]he scope of the design claimed in the plaintiff's patent, including the drawing and written description";
- "[T]he relative prominence of the design within the product as a whole";
- "[W]hether the design is conceptually distinct from the product as a whole"; and
- "[T]he physical relationship between the patented design and the rest of the product," including whether "the design pertains to a component that a user or seller can physically separate from the product as a whole," and whether "the

design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately."

Among the various proposals before the U.S. Supreme Court and this Court, this Court finds that the United States' proposal is the most likely to help the factfinder perform its task of identifying the article of manufacture to which the patented design was applied, "without unnecessarily sweeping in aspects of the product that are unrelated to that design." U.S. Br., 2016 WL 3194218 at *26. Moreover, at the October 12, 2017 hearing, both parties stated that they found the United States' test acceptable. *See* Hearing Tr. 4:17-4:18 (Apple's counsel: "I think adopting that test would be fine with Apple."), 5:1-5:2 (Apple's counsel: "And [Apple's test is] very close to the Solicitor General's four factors, so we think we could live with that."), 14:1-14:2 (Samsung's counsel: "We like the Solicitor General's test . . . ."), 14:14-14:18 (Samsung's counsel: "But the second best proposal is certainly the Solicitor General's test. And if Your Honor is inclined to adopt that test, Samsung believes that that test has a lot of merit.").

With regard to the first factor, the Court concludes that the factfinder must consider the scope of the claimed design to determine to which article of manufacture the design was applied, but the scope of the claimed design is not alone dispositive. As the United States explained, "the scope of the design claimed in the plaintiff's patent . . . provides insight into which portions of the underlying product the design is intended to cover, and how the design relates to the product as a whole." U.S. Br., 2016 WL 3194218 at *27. The Court acknowledges Apple's concern that the defendant may apply the patented design in a way that differs from the way that the plaintiff claimed the design in its patent, which would leave the scope of the claimed design with little significance. *See* Apple Opening Br. at 7. But this is an issue that can be argued to the factfinder in the context of the facts of a given case; it is not a reason to altogether exclude from consideration the scope of the claimed design.

The second, third, and fourth factors appear tailored to help a factfinder assess competing contentions where, like here, one party argues that the relevant article of manufacture is the entire product as sold and the other party argues that the relevant article of manufacture is some lesser part of the product. Each factor helps the factfinder think through whether the patented design has

20

been applied to the product as a whole or merely a part of the product. For the purposes of the

instant case, the Court finds that the four factors proposed by the United States best embody the

relevant inquiry, and so the Court adopts these four factors as the test for determining the relevant

article of manufacture for the purpose of § 289.[4]

Adopting the United States' test is also consistent with actions of the only other court to

have instructed a jury on § 289 after the U.S. Supreme Court's decision in the instant case. On

September 29, 2017, a court in the Southern District of California largely adopted the United

States' proposed test and instructed the jury accordingly. *See* Jury Instructions at 15-16, *Columbia

Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:17-cv-01781-HZ (S.D. Cal.

Sept. 9, 2017), ECF No. 378.

Particularly where, as here, both parties agree that the United States' test is acceptable,

there is little reason to adopt a different test in this case.

**B.** **The Burden of Proving the Relevant Article of Manufacture and the Total Profit on the Sale of that Article**

The Court now turns to which party bears the burden to establish the relevant article of

manufacture and to prove the total profit on the sale of that article of manufacture. The U.S.

Supreme Court has observed that "[t]he term 'burden of proof' is one of the 'slipperiest member[s]

of the family of legal terms.'" *Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting J. STRONG, 2

MCCORMICK ON EVIDENCE § 342, p.433 (5th ed. 1999)). This is in part because "historically, the

concept encompassed two distinct burdens: the 'burden of persuasion,' *i.e.*, which party loses if

the evidence is closely balanced, and the 'burden of production,' *i.e.*, which party bears the

---

[4] Samsung and some commentators have expressed concern about the administrability of a multifactor test, which they contend is vague and will yield unpredictable results. *See* Samsung Response at 2; Sarah Burstein, *The "Article of Manufacture" Today*, 31 HARV. J. L. & TECH. (forthcoming Spring 2018) (manuscript as of Sept. 16, 2017 at 23-24) (http://ssrn.com/abstract=3033231). However, intellectual property law is already replete with multifactor tests. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007) (discussing factors for determining obviousness of an invention); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 11120 (S.D.N.Y. 1970) (listing fifteen factors informing reasonable royalty calculations in utility patent cases). The United States' proposed four-factor test is no less administrable than these other tests.

Case No. 11-CV-01846-LHK
ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES

1   obligation to come forward with the evidence at different points in the proceeding." *Id.* To avoid

2   ambiguity, the Court will refer to the "burden of persuasion" and the "burden of production,"

3   rather than the "burden of proof." For the reasons stated below, the Court finds that the plaintiff

4   bears the burden of persuasion on identifying the relevant article of manufacture and proving the

5   total profit on that article. The Court next finds that the plaintiff initially bears the burden of

6   production on identifying the relevant article of manufacture and proving the total profit on that

7   article. If the plaintiff satisfies this burden of production, the burden of production then shifts to

8   the defendant to come forward with evidence of an alternative article of manufacture and evidence

9   of a different profit calculation, including any deductible costs.

10      Apple urges the Court to adopt a burden-shifting framework for both identifying the

11  relevant article of manufacture and proving total profit on the sale of that article, whereby the

12  "plaintiff bears the initial burden of proving that the defendant applies the patented design to a

13  product that was sold and further proving revenues from the sale." Apple Opening Br. at 9. "At

14  that point, the plaintiff has made out a *prima facie* case under § 289," and the "burden then shifts

15  to the defendant, if it so chooses, to prove that the damages should be reduced" by proving a lesser

16  article of manufacture or identifying deductible costs. *Id.* Apple does not specify in its briefs

17  whether it means the burden of production or persuasion, but at the October 12, 2017 hearing,

18  Apple clarified that its position is that both burdens should shift to the defendant. Hearing Tr.

19  43:23-44:3. At the same time, Apple concedes that it bears "the ultimate burden of persuasion on

20  the issue of damages." Hearing Tr. 41:22-23; Apple Response at 9. Apple does not explain how

21  this "ultimate burden" fits with the burden-shifting framework that it proposes.

22      The United States advocates a different burden-shifting regime. According to the United

23  States, the plaintiff bears the burden of persuasion on identifying the relevant article of

24  manufacture and the amount of total profit. U.S. Br., 2016 WL 3194218, at *30-31. The United

25  States does not advocate shifting the burden of persuasion to the defendant. *Id.* The plaintiff also

26  bears a burden of production on both issues. Once the plaintiff has satisfied its burden of

27  production on identifying the relevant article of manufacture, the burden of production shifts to the

28

defendant. *Id.*

Apple and the United States argue that a burden-shifting framework would be consistent with the principle that the party with superior knowledge of or access to the relevant facts should bear the burden of proving those facts. *See id.*; Apple Opening Br. at 10-11 (citing, e.g., *Concrete Pipe & Prod. Of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 626 (1993); *Campbell v. United States*, 365 U.S. 85, 96 (1961)).

Samsung objects to this proposed burden-shifting framework. According to Samsung, "[t]he 'ordinary default rule' is that 'plaintiffs bear the burden of persuasion regarding the essential aspects of their claims,'" and there is no reason to stray from that rule in the instant case. Samsung Opening Br. at 8 (quoting *Schaffer*, 546 U.S. at 57).

The Court first assesses which party bears the burden of persuasion on identifying the relevant article of manufacture and proving the total profit on that article. The Court then examines the burden of production on these same issues.

### 1. The Burden of Persuasion

Where a statute is silent on the allocation of the burden of persuasion, the Court "begin[s] with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id.* "Absent some reason to believe that Congress intended otherwise . . . the burden of persuasion lies where it usually falls, upon the party seeking relief." *Id.* at 57-58. This default rule applies to proving infringement and damages in patent cases. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014) ("It is well established that the burden of proving infringement generally rests upon the patentee."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee."); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (stating in a design patent case that, "as is always the case, the burden of proof as to infringement remains on the patentee"), *cert. denied*, 129 S. Ct. 1917 (2009); *Avid Identification Sys., Inc. v. Global ID Sys.*, 29 F. App'x 598, 602 (Fed. Cir. 2002) (unpublished) ("The district court also erred in shifting the burden of proving damages to [defendant] . . . ."); ROBERT A. MATTHEWS, JR., 4 ANNOTATED PATENT DIGEST § 30:9.

United States District Court
Northern District of California

The Court concludes that the plaintiff bears the burden of persuasion on identifying the relevant article of manufacture and proving the defendant's total profit on that article. First, there is no indication that Congress intended the defendant to bear the burden of persuasion on identifying the relevant article of manufacture or proving the amount of total profit, *see* Burstein, *supra* n.4, at 59-61, and so the default rule is presumed to apply, *Schaffer*, 546 U.S. at 56. In fact, the legislative history of the predecessor to § 289 shows that Congress intended that the plaintiff bear the burden of persuasion. *See* Burstein, *supra* n.4, at 59-61; Sarah Burstein, *The "Article of Manufacture" in 1887*, 32 BERKELEY TECH. L. J. (forthcoming) (manuscript as of Sept. 4, 2017 at 68 & nn.419-20) (https://ssrn.com/abstract=2850604); H.R. REPORT NO. 1966, at 3 (1886); S. REP. NO. 206, at 2 (1886). Moreover, as Samsung points out, "[p]lacing the burden of identifying the correct article of manufacture on the patent plaintiff also corresponds with the analogous law of utility-patent damages for multicomponent products, where the patent plaintiff similarly must prove the correct component to be used as a royalty base . . . ." Samsung Opening Br. at 10; *see Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . . , the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology."). Finally, Apple concedes that it bears the ultimate burden of persuasion on the issue of damages. Hearing Tr. 41:22-23; Apple Response at 9. Accordingly, the plaintiff must bear the burden of persuasion in identifying the relevant article of manufacture for the purpose of § 289 and proving the defendant's total profit on that article.

Apple's argument in favor of shifting the burden of persuasion is unconvincing. Apple argues that it would be appropriate to shift the burden of persuasion to identify the relevant article of manufacture on the defendant because the defendant has superior knowledge of the infringing product's components. *See* Apple Opening Br. at 10-11. However, the U.S. Supreme Court has confirmed that the "superior knowledge" burden-shifting principle is "far from being universal, and has many qualifications upon its application." *Schaffer*, 546 U.S. at 60 (quoting *Greenleaf's*

24

*Lessee v. Birth*, 6 Pet. 302, 312 (1832)).  None of the cases that Apple cites in support of this argument apply the "superior knowledge" burden-shifting principle to an analogous situation in the intellectual property context, let alone a patent case.  Indeed, in the closest analogous context—identification of the smallest salable patent-practicing unit for utility patent damages—the burden of persuasion rests on the plaintiff, as explained above.  Moreover, Apple offers no reason why ordinary discovery would not be sufficient to allow a design patent plaintiff to carry its burden of persuasion on identifying the relevant article of manufacture.  As a result, the Court concludes that the plaintiff bears the burden of persuasion.

### 2. Burden of Production

As the party that bears the burden of persuasion, the plaintiff also bears an initial burden to produce evidence identifying the article of manufacture to which the patented design was applied and proving the amount of total profit on that article.  *See generally* GEORGE E. DIX ET AL., 2 MCCORMICK ON EVIDENCE § 337 (7th ed.).  Apple concedes that it bears this burden of production.  *See* Apple Opening Br. at 9.

Apple contends that if the plaintiff has made an initial showing as to the relevant article of manufacture, and if the defendant disputes the relevant article of manufacture, the burden of production then shifts to the defendant to come forward with evidence to support its alternative article of manufacture.  Apple Opening Br. at 9.  Apple asserts that the same burden-shifting scheme applies to the calculation of total profit.  Apple argues that such a shift in burden is consistent with § 289's disgorgement-like remedy, because in other disgorgement contexts the defendant bears the burden to prove any deductions.  *Id.* at 11-12 (analogizing to the SEC enforcement and contract contexts).  Samsung disagrees.  In Samsung's view, the text of the statute is determinative.  Nothing in the text of § 289 suggests that Congress contemplated the defendant bearing any burden.  By contrast, the text of both the Copyright Act and the Lanham Act explicitly impose a burden on the defendant to prove deductible costs.  Samsung Opening Br. at 9 (quoting 17 U.S.C. § 504 and 15 U.S.C. § 1117(a)).  The logical inference, according to Samsung, is that Congress did not intend the defendant to bear any burden on either identifying

the article of manufacture or the amount of damages.

The Court holds that if the plaintiff has met its initial burden of production on identifying the relevant article of manufacture for the purpose of § 289 and the defendant disputes the plaintiff's identification of the relevant article of manufacture, then the burden of production shifts to the defendant to come forward with evidence supporting its asserted article of manufacture. First, a defendant will seek to prove an alternative article of manufacture to lower the amount of total profit. Assigning the defendant a burden of producing evidence to support its position is thus consistent with other disgorgement remedies, where the defendant bears the burden of proving any allowable deductions that decrease the amount of total profit. *See, e.g.*, *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989) (describing how "the burden of going forward" shifted to defendants to demonstrate that the disgorgement figure was not a reasonable approximation of its unjust enrichment even though the SEC bore the ultimate burden of persuasion).

Such a shift in the burden of production is also consistent with the lost profits remedy under 35 U.S.C. § 284. In the § 284 lost profits context, the patentee "must show that 'but for' infringement it reasonably would have made the additional profits enjoyed by the infringer." *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003). "Once the [patent holder] establishes the reasonableness of this inference, the burden shifts to the infringer to show that the inference is unreasonable for some or all of the lost profits." *Id.* Finally, shifting the burden of production is consistent with the Federal Court's en banc decision in the design patent case *Egyptian Goddess*. In *Egyptian Goddess*, the Federal Circuit clarified that the test for design patent infringement is whether an ordinary observer familiar with the prior art would be deceived by the similarity between the claimed and accused designs. 543 F.3d at 678, 681, 683. Although the burden of proof as to infringement remained on the patentee, an accused infringer who elects to rely on comparison to prior art as a defense to infringement bears the burden of production of that prior art. *Id.* at 678-79. The Federal Circuit reasoned that "[t]he accused infringer is the party with the motivation to point out close prior art, and in particular to call to the court's attention the

Case No. 11-CV-01846-LHK
ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES

prior art that an ordinary observer is most likely to regard as highlighting the differences between the claimed and accused design." *Id.* at 679. Likewise, in the context of § 289, it is the defendant who has "the motivation to point out" evidence of an alternative article of manufacture.

Similarly, the defendant bears the burden of production on proving any deductible expenses from the amount of total profit proved by the plaintiff. This result is, first of all, the law of the case, and Samsung did not appeal it. *See* ECF No. 1903 at 72 (jury instruction from 2012 trial assigning Samsung the burden of proving deductible expenses); ECF No. 2784 at 39 (same for 2013 trial); Opening Brief for Defendants-Appellants, *Apple Inc. v. Samsung Elecs. Co.*, Nos. 2014-1335, 2014-1368, 2014 WL 2586819 (Fed. Cir. May 23, 2014). Second, other courts in design patent cases have assigned the burden on deductible expenses to the defendant. *See Henry Hanger & Display Fixture Corp. of Am. v. Sel-O-Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959) (stating that the "burden of establishing" deductible overhead costs "rested upon the defendants"); *Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F. Supp. 2d 333, 341 (S.D.N.Y. 2003) ("[The defendant] has not provided any evidence that the objected-to [operating] expenses were sufficiently related to the production of the [infringing products]. Therefore, the Court hereby adopts [the plaintiff's] calculations . . . ."), *vacated in part on other grounds*, 90 F. App'x 543 (Fed. Cir. 2004) (unpublished); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) ("The burden of establishing the nature and amount of these [overhead] costs, as well as their relationship to the infringing product, is on the defendants.").

Samsung's argument that the face of the statute lacks an explicit burden-shifting scheme does not mandate a different result. The Federal Circuit has endorsed shifting the burden of production in contexts where the statute does not explicitly require it. For example, § 284 does not mention burden shifting, but the Federal Circuit endorses burden-shifting in the lost profits context under § 284, as discussed above. *See Micro Chem.*, 318 F.3d at 1122. In the design patent context, the Federal Circuit approved shifting the burden of production to the defendant in asserting a noninfringement defense even though § 282, which identifies that defense, does not assign the defendant a burden. *See* 35 U.S.C. § 282(b); *Egyptian Goddess*, 543 F.3d at 678-79.

27

1  Accordingly, the defendant must bear the burden of production on any deductible costs that it

2  argues should be subtracted from the profits proved by plaintiff.

3         Overall, the Court's allocation of the burdens of persuasion and production is consistent

4  with how the court in *Columbia Sportswear* instructed the jury in that case.  The court in

5  *Columbia Sportswear* assigned the plaintiff "the initial burden of producing evidence identifying

6  the article of manufacture for which it seeks profits."  Jury Instructions at 15, No. 3:17-cv-01781-

7  HZ.  The plaintiff was also required to prove the defendant's total profit from the sale of the

8  infringing article.  The defendant then bore "the burden of proving that the article of manufacture

9  [wa]s something less than the entire product."  *Id.*  The defendant also bore the burden of proving

10  deductible expenses.  *Id.* at 17.

11         To summarize, the Court adopts the four-factor test for determining the relevant article of

12  manufacture for the purpose of § 289 proposed by the United States in its amicus brief before the

13  U.S. Supreme Court.  The plaintiff bears the burden of persuasion in proving the relevant article

14  of manufacture and in proving the amount of defendant's total profit under § 289.  The plaintiff also

15  bears an initial burden of production on both of these issues.  However, once the plaintiff satisfies

16  its initial burden of production, the burden of production shifts to the defendant to come forward

17  with evidence to support any alternative article of manufacture and to prove any deductible

18  expenses.  Having established these threshold issues, the Court now turns to whether the jury

19  instructions given at trial constituted prejudicial error.

20  **C.     The Jury Instructions Were Prejudicial Error**

21         As explained above, Samsung contends that a new trial is warranted because the jury

22  instructions given inaccurately stated the law on the article of manufacture issue.  Specifically,

23  Samsung contends that excluding Proposed Jury Instruction 42.1 and giving Final Jury Instruction

24  54 led the jury to believe that the entire phone was the only possible article of manufacture under

25  § 289.  Once again, Proposed Jury Instruction 42.1 read:

26         If you find that [Samsung] infringed any of Apple's design patents, and if you
         decide to award Apple profits from [Samsung's] sales, you should award only
27         those profits which were derived from the article of manufacture to which Apple's

28

28

United States District Court
Northern District of California

Case No. 11-CV-01846-LHK
ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES

Accordingly, the defendant must bear the burden of production on any deductible costs that it argues should be subtracted from the profits proved by plaintiff.

Overall, the Court's allocation of the burdens of persuasion and production is consistent with how the court in *Columbia Sportswear* instructed the jury in that case.  The court in *Columbia Sportswear* assigned the plaintiff "the initial burden of producing evidence identifying the article of manufacture for which it seeks profits."  Jury Instructions at 15, No. 3:17-cv-01781-HZ.  The plaintiff was also required to prove the defendant's total profit from the sale of the infringing article.  The defendant then bore "the burden of proving that the article of manufacture [wa]s something less than the entire product."  *Id.*  The defendant also bore the burden of proving deductible expenses.  *Id.* at 17.

To summarize, the Court adopts the four-factor test for determining the relevant article of manufacture for the purpose of § 289 proposed by the United States in its amicus brief before the U.S. Supreme Court.  The plaintiff bears the burden of persuasion in proving the relevant article of manufacture and in proving the amount of defendant's total profit under § 289.  The plaintiff also bears an initial burden of production on both of these issues.  However, once the plaintiff satisfies its initial burden of production, the burden of production shifts to the defendant to come forward with evidence to support any alternative article of manufacture and to prove any deductible expenses.  Having established these threshold issues, the Court now turns to whether the jury instructions given at trial constituted prejudicial error.

**C.     The Jury Instructions Were Prejudicial Error**

As explained above, Samsung contends that a new trial is warranted because the jury instructions given inaccurately stated the law on the article of manufacture issue.  Specifically, Samsung contends that excluding Proposed Jury Instruction 42.1 and giving Final Jury Instruction 54 led the jury to believe that the entire phone was the only possible article of manufacture under § 289.  Once again, Proposed Jury Instruction 42.1 read:

> If you find that [Samsung] infringed any of Apple's design patents, and if you decide to award Apple profits from [Samsung's] sales, you should award only those profits which were derived from the article of manufacture to which Apple's

28

*(margin, left side, vertical text)* United States District Court — Northern District of California

Case No. 11-CV-01846-LHK
ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES

patented design was applied. The article to which Apple's design was applied may be the same as or different from Samsung's devices as sold because devices offered for sale may incorporate a single article of manufacture or several articles of manufacture. The article of manufacture to which a design has been applied is the part or portion of the product as sold that incorporates or embodies the subject matter of the patent. Where the article of manufacture is a case or external housing of the device, then only the profits from the sale of the case or external housing of the device should be awarded. Under these instructions, an award of profits for design patent infringement should not include profits earned from the technology by which the devices operate or from any other functions of the devices.

ECF No. 1694 at 151. Final Jury Instruction 54 read in relevant part:

If you find infringement by any Samsung defendant and do not find Apple's design patents are invalid, you may award Apple that Samsung defendant's total profit attributable to the infringing products.

The "total profit" of [Samsung] means the entire profit on the sale of the article to which the patented design is applied, and not just the portion of profit attributable to the design or ornamental aspects covered by the patent. "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

If you find infringement by any Samsung defendant, Apple is entitled to all profit earned by that defendant on sales of articles that infringe Apple's design patents.

ECF No. 1901 at 72.

"A jury verdict will be set aside, based on erroneous jury instructions, if . . . 'those instructions were legally erroneous,' and that 'the errors had prejudicial effect.'" *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1311-12 (Fed. Cir. 2005) (quoting *Advanced Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1281 (Fed. Cir. 2000)), *abrogated on other grounds as recognized in Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016). More specifically, a judgment may be altered based on an erroneous jury instruction by a party if "(1) [the party] made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) [the party] requested alternative instructions that would have remedied the error." *Advanced Display,* 212 F.3d at 1281 (internal citations omitted). The Court addresses these factors in turn.

**1.  The Objection Was Proper and Timely**

The Court has already determined that "Samsung objected to the exclusion of Proposed

29

Jury Instruction 42.1 in a proper and timely manner that was in compliance with Rule 51." ECF No. 3509 at 15-16.

### 2. The Instructions Were Legally Erroneous

The jury instructions given were legally erroneous because they did not state the law as provided by the U.S. Supreme Court in this case. Nevertheless, Apple contends that it was not error for the Court to have declined to give Proposed Jury Instruction 42.1 because that instruction did not have an adequate foundation in the evidence. Apple also contends that legal errors in the proposed instruction mean that it was not error for the Court to have excluded it. For the reasons below, the Court disagrees.

#### a. The Instructions Did Not Properly State the Law

In its order on July 28, 2017, the Court held that "the jury was not provided an instruction that stated the law as provided by the United States Supreme Court decision in this case that an article of manufacture can be 'a product sold to a consumer [or] a component of that product.' Without such an instruction, Final Jury Instructions 53 and 54 would direct a jury to find that the article of manufacture and product are the same." *Id.* at 22 (citation omitted).

#### b. There Was an Adequate Foundation in Evidence

Apple argues that the Court did not err by declining to give Proposed Jury Instruction 42.1 because there was not an adequate foundation in the evidence for it. ECF No. 3490-2 at 17. "While it is unnecessary to give instructions unsupported by the evidence, a litigant is entitled to have the jury charged concerning his theory of the case if there is any direct or circumstantial evidence to support it." *Don Burton, Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702, 706 (9th Cir. 1978); *see Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005) (determining whether there was prejudicial error by determining whether "a reasonable jury could have found" for the party proposing the instruction); *see also Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1021 (Fed. Cir. 2009) ("Challenges to jury instructions are reviewed under the law of the regional circuit where the district court sits." (internal quotation marks omitted)).

Samsung argues that there was a sufficient foundation in evidence to instruct the jury on

Case No. 11-CV-01846-LHK
ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES

the possibility of a lesser article of manufacture based on evidence that was presented to the jury as part of the parties' infringement and invalidity cases. ECF No. 3491 at 8. Samsung cites three categories of evidence to show that the jury could have found an article of manufacture that was less than the entirety of each infringing Samsung phone. First, Samsung cites to the design patents themselves, which cover only certain aspects of Samsung's phones. The D'677 patent claims a design for a "black, rectangular front glass face with rounded corners" and does not claim the surrounding rim (bezel), the circular home button on the front, or the sides, top, bottom, or back of the device. ECF No. 1611 at 1014-15 (Apple's expert Peter Bressler stating that "all [the D'677 patent is] claiming is that front face"). The D'087 patent claims a rectangular front face with rounded corners, with a bezel, but without black shading, and does not claim the sides, back, top, and bottom of the device or the home button. *Id.* at 1018-19 (Bresseler stating that the D'087 patent is "not claiming the body. It's claiming the bezel and the front face."). The D'305 patent claims a design for a grid of sixteen colorful icons on a screen on a mobile device as part of a graphical user interface, and does not claim any other aspect of the device. ECF No. 1612 at 1367 (Apple expert Susan Kare stating that the D'305 patent is limited to "the rectangular area" represented by the phone's screen).

Second, Samsung cites to testimony and exhibits that purport to show that Samsung's phones can be separated into various component parts. For example, Samsung cites to slides that show a breakdown of one of Samsung's infringing phones, the Vibrant, and its various components. *See* DX2519 at 5-11. Similarly, multiple witnesses testified about how smartphones are assembled and how the screen was separate from internal components. *See, e.g.*, ECF No. 1610 at 313-17 ("[T]here's a piece of glass [for the screen] and then underneath that is a display and have to glue that on top."). At one point in the trial, an Apple witness showed and passed around to the jury the "major logic board" of a disassembled iPhone 4. ECF No. 1842 at 3165-68.

Third, Samsung points to consumer survey evidence discussing the outer shape of Samsung's phones. *See* PX6.1 (commentary about Samsung's Galaxy S phone and its "all black, shiny plastic body" and the "minimal buttons on the phone's face").

31

As to whether there was sufficient evidence for the jury to calculate Samsung's total profit on an article of manufacture other than the entire phone, Samsung argues that Apple's own damages experts provided this information at trial. Samsung Opening Br. at 23. Specifically, Samsung contends that "Apple's experts offered reasonable-royalty calculations for the D'677, D'087, and D'305 patents, with one methodology (the 'income method') suggesting a value of $9 per phone for those three patents combined." *Id.* (citing ECF No. 1839 at 2088-92 (testimony of Apple's damages expert at 2012 trial); ECF No. 2840 at 704-08 (testimony of Apple's damages expert at 2013 trial); PX25A1.16 (Apple's 2012 trial exhibit summarizing its damages contentions); PX25F.16 (same for 2013 trial)). According to Samsung, "[t]hese 'income method' opinions used Samsung's 'actual profits' as the measure of what Samsung would earn from the components 'embodying the patented [designs].'" *Id.* (quoting PX25A1.16; PX25F.16) (emphasis removed).

In response, Apple accuses Samsung of misstating the evidence. Apple Response at 19. For example, the quoted sentence from PX25A1.16 and PX25F.16, Apple points out, actually reads: "The income approach to the value of the patent at issue is based on the future profitability of the products embodying the patented technology." Apple also contends that the jury would not have been able to calculate Samsung's total profit on a lesser article of manufacture because Samsung never identified any lesser article of manufacture for the jury and never identified any amount of profits that the jury could have attributed to these lesser articles. *Id.* at 18. However, had the Court not excluded Proposed Jury Instruction 42.1, Samsung could have made such arguments in its closing.

Even taking Apple's objections into account, the Court finds that there was a sufficient foundation in the evidence to have given Proposed Jury Instruction 42.1. The level of evidence required to support a jury instruction is not high: "a litigant is entitled to have the jury charged concerning his theory of the case if there *is any direct or circumstantial evidence to support it*." *Don Burton*, 575 F.2d at 706 (emphasis added). The testimony about the various components of the phones at issue, together with the design patents themselves, is enough to support Proposed

32

Jury Instruction 42.1.

### c. Legal Error in the Proposed Instruction Would Not Have Excused the Court From Properly Instructing the Jury

Finally, Apple argues that the Court did not err by declining to give Proposed Jury Instruction 42.1 because that proposed instruction "contained multiple misstatements of law." ECF No. 3490-2 at 18. Specifically, Proposed Jury Instruction 42.1 included Samsung's now-abandoned apportionment theory and also defined the article of manufacture as invariably less than the entire product as sold. *Id.* As the Court stated in its July 28, 2017 order, however, once an issue is raised to the district court, "[t]he fact that the proposed instruction was misleading does not alone permit the district judge to summarily refuse to give any instruction on the topic." *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007). Instead, "[i]f a party's proposed instruction has brought an 'issue . . . to the district court's attention,' the court commits error if it 'omit[s] the instruction altogether, rather than modifying it to correct the perceived deficiency.'" *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1235 n.11 (9th Cir. 2011) (citation omitted); *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010) ("Perfect or not, the defendants' proposed instruction brought the issue of deference to the district court's attention.").

In this case, Proposed Jury Instruction 42.1 raised the issue of whether the proper article of manufacture for Samsung's phones was the "product sold to a consumer [or] a component of that product." *Supreme Court Decision* at 434. Because, as explained above, the Court finds that Proposed Jury Instruction 42.1 had an adequate foundation in the evidence, the Court's duty under *Hunter* would have been to ensure that the jury instructions reflected the U.S. Supreme Court's decision, had it been in effect at the time. *Hunter*, 652 F.3d at 1235 n.11. Accordingly, the fact that the proposed instruction contained legal errors would not have excused the Court from accurately instructing the jury how to determine the relevant article of manufacture for the purpose of § 289. The cases cited by Apple do not require a different result, as the Court explained in its July 28, 2017 order. *See* ECF No. 3509 at 27 n.5.

### 3. The Error Was Prejudicial

"An error in instructing the jury in a civil case requires reversal unless the error is more

probably than not harmless." *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (quoting *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005)). The Court must "presume prejudice where civil trial error is concerned." *Dang*, 422 F.3d at 811 (quoting *Galdamez*, 415 F.3d at 1025). The burden then shifts to the party opposing the new trial "to demonstrate 'that it is more probable than not that the jury would have reached the same verdict' had it been properly instructed." *Galdamez*, 415 F.3d at 1025 (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)). Thus, Apple bears the burden of proving that it is more probable than not that the jury would have awarded profits on the entire phones had it been properly instructed.

Apple has not carried its burden. Based on the evidence discussed in the foundation-in-the-evidence section above, the Court finds that a properly instructed jury may have found that the relevant article of manufacture for each of the design patents was something less than the entire phone. Apple's argument that Samsung's failure to actually identify a smaller article of manufacture at trial would have precluded the jury from finding any article of manufacture other than the entire phone is not persuasive. *See* Apple Opening Br. at 15, 20-21. Had the Court agreed to give some version of Proposed Jury Instruction 42.1, Samsung could have identified a smaller article of manufacture in its closing argument. The Court's erroneous jury instructions were thus prejudicial error.

### 4. Samsung Requested an Instruction That Would Have Remedied the Error

As discussed in the beginning of this section, the last element to be considered when a party asserts instructional error is whether "[the party] requested alternative instructions that would have remedied the error." *Advanced Display*, 212 F.3d at 1281. The Court finds that Proposed Jury Instruction 42.1 would have remedied the error because it would have clarified for the jury that the relevant article of manufacture could be something other than the entire product as sold.

In sum, the Court finds that the jury instructions given at trial did not accurately reflect the law and that the instructions prejudiced Samsung by precluding the jury from considering whether the relevant article of manufacture for the purpose of § 289 was something other than the entire

Case No. 11-CV-01846-LHK
ORDER REQUIRING NEW TRIAL ON DESIGN PATENT DAMAGES

phone.

## III. CONCLUSION

For the foregoing reasons, the Court orders a new trial on damages for the D'677, D'087, and D'305 patents. The test for determining the article of manufacture for the purpose of § 289 shall be the following four factors:

- The scope of the design claimed in the plaintiff's patent, including the drawing and written description;
- The relative prominence of the design within the product as a whole;
- Whether the design is conceptually distinct from the product as a whole; and
- The physical relationship between the patented design and the rest of the product, including whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately.

The plaintiff shall bear the burden of persuasion on identifying the relevant article of manufacture and proving the amount of total profit on the sale of that article.

The plaintiff also shall bear an initial burden of production on identifying the relevant article of manufacture and proving the amount of total profit on the sale of that article. If the plaintiff satisfies its burden of production on these issues, the burden of production shifts to the defendant to come forward with evidence of an alternative article of manufacture and any deductible expenses.

**IT IS SO ORDERED.**


Dated: October 22, 2017

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge