# EXHIBIT 1

1

1          IN THE SUPREME COURT OF THE UNITED STATES
2   - - - - - - - - - - - - - - - - - x
3   SAMSUNG ELECTRONICS CO.,           :
4   LTD., ET AL.,                      :
5             Petitioners              :   No. 15-777
6         v.                           :
7   APPLE, INC.,                       :
8             Respondent.              :
9   - - - - - - - - - - - - - - - - - x
10                       Washington, D.C.
11                       Tuesday, October 11, 2016
12
13            The above-entitled matter came on for oral
14   argument before the Supreme Court of the United States
15   at 10:05 a.m.
16   APPEARANCES:
17   KATHLEEN M. SULLIVAN, ESQ., New York, N.Y.; on behalf of
18      the Petitioners.
19   BRIAN H. FLETCHER, ESQ., Assistant to the Solicitor
20      General, Department of Justice, Washington, D.C.;
21      for United States, as amicus curiae, supporting
22      neither party.
23   SETH P. WAXMAN, ESQ., Washington, D.C.; on behalf of the
24      Respondent.
25

```
 1                I believe that your basic argument, everyone
 2   is in agreement, that the test is an article of
 3   manufacture for purposes of sale.
 4                But I am like Justice Kennedy, which is, how
 5   do we announce the right test for that?  Because the
 6   phone could be seen by a public -- a purchasing consumer
 7   as being just that rounded edge, slim outer shell.  That
 8   might be what drives the sale.  I don't know.
 9                Certainly your expert didn't tell me how to
10   figure out the component part.  I don't know where in
11   the record you would have enough to survive your
12   argument.
13                MS. SULLIVAN:  So, Your Honor, let me back
14   up and restate the test, the burden, and the evidence.
15                The -- the test -- and I want to agree with
16   Your Honor.  To be clear, we say that what the Federal
17   Circuit held was wrong as a matter of law.  It is wrong
18   as a matter of law to hold that the entire product is
19   necessarily the article of manufacture from which you
20   measure total profit.  That's wrong as a matter of law,
21   but we did not argue, Your Honor, that the test has to
22   hold we're right on the article as a matter of law.
23                It's an -- it's a -- it's a question of
24   either fact or, as you said in Markman, a mongrel
25   question of law and fact.
```

1    that Justice Ginsburg was asking, I think they would --
2    the experts would probably be speaking -- or could be
3    speaking to some of the issues that Your Honor raised in
4    your question in the Sullivan, which is things like
5    consumer surveys, to what extent do the various
6    components of a smartphone drive consumer demand and
7    contribute to the value of the phone.
8              CHIEF JUSTICE ROBERTS:  Well, one of the
9    things that was mentioned was cost in terms of that.  I
10   don't understand how that helps on this question.  It
11   would seem to me the higher the cost, the less it
12   contributed to profits.
13             MR. FLETCHER:  So I think, Mr. Chief
14   Justice, it will depend on the case.  Sometimes you --
15   you might try to build up the share of the profits from
16   the bottom up by saying, what's the cost of each of
17   these components, and then what share of the revenue is
18   attributable to each of these components.  And then you
19   say this component is 10 percent of the cost and 20
20   percent of the revenue, and we -- we do a bottom-up
21   calculation and try to do it that way.
22             Courts haven't always done that.  Sometimes
23   that won't be feasible.  Sometimes instead they've --
24   they've done a more impressionistic approximation and
25   said the total profits on this product are $10 million,

30

1   system, things like that -- that's an area where you
2   might want to hear adverse testimony.
3              JUSTICE SOTOMAYOR:  But that's the first
4   part of the test.
5              MR. FLETCHER:  Correct.
6              JUSTICE SOTOMAYOR:  That's the article of
7   manufacture.
8              So now take the second part of the test and
9   apply it to the Bug.
10             MR. FLETCHER:  So supposing that we've
11  decided that the Bug -- the relevant article in the Bug
12  is just the body of the Bug.
13             JUSTICE SOTOMAYOR:  Exactly.
14             MR. FLETCHER:  Then I think the question is
15  the best way to determine that, at least that I can
16  think of right now, would be consumer surveys addressed
17  to, to what extent are people who buy Bugs making their
18  purchasing decisions based on the look of the car, and
19  to what extent are they instead valuing other things
20  like --
21             JUSTICE KAGAN:  So you think that that
22  question is not relevant to the first question.  In
23  other words, suppose I think that people who buy VW Bugs
24  buy them because of the look of the car.
25             MR. FLETCHER:  Yes.

1  similar to what was in a VW Beetle that was in a Jeep or
2  a Porsche and say, oh, this must be a VW.  But somebody
3  who looked at the exterior of a Jeep that copied the
4  iconic side profile of the VW Beetle might very well say
5  that, and a jury would take that into account.
6          JUSTICE KENNEDY:  Is the approach -- is the
7  approach that you're discussing fairly described as
8  "apportionment," or is that a bad word?
9          MR. WAXMAN:  That is a really bad word.  And
10  if there's a -- I mean, in some --
11          JUSTICE KENNEDY:  What other -- what -- what
12  word would you use to describe your approach?
13          MR. WAXMAN:  What is the thing, the article
14  of manufacture, to which the design is applied for
15  purposes of sale in order to give it a distinctive and
16  pleasing appearance.  Apportionment is what their
17  expert, Mr. Wagner, tried to do in his report saying the
18  total profits on the phone are X hundreds of millions of
19  dollars, but I find that only one percent of consumers
20  buy phones because of the front face of the phone either
21  off or on.
22          JUSTICE KENNEDY:  But once you've identified
23  the relevant article, then it seems to me necessarily
24  what you're doing is apportioning profits.  I just don't
25  see how we can get away from that word.

1            MR. WAXMAN:  Yes.  In this sense, Justice
2    Kennedy, the vernacular sense of "apportionment," once
3    you -- if you -- if the jury answers the question at
4    step 1 and says no, no, no, the article of manufacture
5    is the refrigerator latch or the cup-holder, how do we
6    determine total profits from the sale of that thing?
7    You do have to engage in a kind of an apportionment that
8    looks to how much did it cost to make the cup-holder and
9    what is the -- you know, what is the profit margin for
10   the car or the refrigerator or something like that.
11   That, it seems to me, is the way that you would do it if
12   you found it.
13           So, you know, in this case it's a little
14   difficult to figure out what the alternative article of
15   manufacture would be.  I mean, in the trial court even
16   before the trial judge, they never even suggested what
17   the article of manufacture could be for the 305 patent,
18   the graphical user interface.  And --
19           JUSTICE ALITO:  Listing factors is not
20   helpful unless the jury or whoever the fact finder is
21   knows what the determination must -- what determination
22   must be made.  The factors are helpful in making the
23   determination.
24           Now what you just said about the article of
25   manufacture is, it is the thing to which the design is