ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
NATHAN B. SABRI (CA SBN 252216)
nsabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522


Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DR. REIBSTEIN'S EXPERT REPORT**<br><br>Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ......................................................................................................... 1

      A.      Dr. Reibstein's "Valuations" Of Samsung's Alleged AOMs Clearly
            Violate The Court's Orders Regarding The Permissible Scope Of
            Expert Discovery. ........................................................................................ 1

      B.      Dr. Reibstein's Opinions Regarding Factors 2 And 3 Do Not Serve
            Any Purpose Authorized By This Court. ...................................................... 3

      C.      Samsung's Reliance On Dr. Reibstein To Conduct A New Survey
            And Assist With Damages Calculations Is Prejudicial To Apple. ............... 4

      D.      Mr. Wagner Relies On Dr. Reibstein To Do An Improper
            Apportionment ............................................................................................. 5

III.    CONCLUSION ...................................................................................................... 5

1

## I.      INTRODUCTION

2          After two CMCs addressing the permissible scope of expert discovery, the Court made

3   clear that the parties could rely on new experts *only* to identify the relevant AOMs and *not* to

4   assist with damages calculations.  Yet Samsung does not dispute that Dr. Reibstein fails to

5   identify any AOMs "specifically" and that, for purposes of his opinion, he "assumed" the relevant

6   AOMs were the components that Samsung identified in its interrogatory response.  Samsung also

7   concedes that it relies on Dr. Reibstein to provide numerical values (which are "apportionment"

8   percentages) and that Mr. Wagner uses those values directly to calculate § 289 damages.  In other

9   words, Dr. Reibstein fails to identify the relevant AOMs but assists Mr. Wagner with his damages

10  calculations—precisely what the Court prohibited.  Dr. Reibstein's report should be stricken.

11  ## II.     ARGUMENT

12          ### A.      Dr. Reibstein's "Valuations" Of Samsung's Alleged AOMs Clearly Violate
                        The Court's Orders Regarding The Permissible Scope Of Expert Discovery.

13

14          Samsung concedes that Dr. Reibstein provides numerical valuations of Samsung's alleged

15  AOMs based on consumer surveys and that Mr. Wagner uses those valuations as direct inputs to

16  calculate damages.  Opp. 5-7.  Nevertheless, in a game of semantics, Samsung contends that Dr.

17  Reibstein "does not opine on damages" because his report "discusses no financial information,

18  never uses the word 'profit,' and does not contain a single '$' sign."  *Id.* at 6.  But there is no

19  doubt that Dr. Reibstein's numerical valuations are *only* relevant to—and Mr. Wagner *only* uses

20  them for—calculating the "total profit" on Samsung's AOMs under the second step of the § 289

21  analysis.  *See Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016).  Samsung's attempt

22  to recast Dr. Reibstein's numerical valuations as not "damages" opinions does not pass muster.

23          Samsung's interpretation of the Court's ruling regarding the scope of expert discovery

24  also cannot be squared with what happened at the November 30, 2017 CMC or the Court's

25  subsequent order.  The Court prohibited the parties from relying on new experts to calculate

26  profits on Samsung's alleged AOMs.  In so ruling, the Court was clear—and reiterated its holding

27  at least four times—that Samsung could not rely on a new expert to "be able to apply to the

28

calculations" of damages on Samsung's alleged AOMs, or to "help" or "assist" Mr. Wagner with those calculations.  Dkt. 3546 at 7, 12, 14-15, 19-20.  By having Dr. Reibstein supply inputs for Mr. Wagner to use directly in a multiplication to arrive at his damages calculations, Samsung is doing exactly what the Court said it could not do.  Moreover, the Court's order also made clear that the new experts may only be used to "identify the relevant [AOM]."  Dkt. 3542 at 1. Samsung does not even attempt to explain how Dr. Reibstein's numerical valuations address that issue—because they do not.  Indeed, Dr. Reibstein's statement that, for purposes of his opinion, he "assumed" the AOMs were the components identified by Samsung in its interrogatory response (Dkt. 3573-4, Ex. C, Reibstein Rpt. ¶ 199)—a point to which Samsung offers no response—confirms that his valuations have nothing to do with identifying the relevant AOMs.

Undeterred, Samsung contends that its approach of having Mr. Wagner rely on Dr. Reibstein for inputs to his damages calculations is not "objectionable" because damages experts often rely on other experts.  Opp. 6-7.  But Apple's objection is not to Mr. Wagner's reliance on other experts generally; it is that the Court specifically prohibited the parties from introducing new experts to help calculate damages.  While Samsung suggests that a damages expert may always rely on other experts without limitation (Opp. 7), the Court has broad discretion to limit the scope of discovery especially where, as here, discovery closed years ago and was reopened only to address limited new issues.  *See Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996), *as amended* (Jan. 15, 1997) ("[A] district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial."  (internal quotation marks omitted)); *Little v. City of Richmond*, 2015 WL 798544, at *1 (N.D. Cal. Feb. 23, 2015) ("With respect to retrials, district courts have the discretion to admit or exclude new evidence or witnesses on retrial.  This discretion extends to consideration of new expert witnesses, as well.").

In a further effort to justify Mr. Wagner's improper reliance on Dr. Reibstein's valuations to calculate damages, Samsung points to Ms. Davis's reliance on other Apple experts in forming her damages opinions.  Opp. 7-8.  But the key difference is that Ms. Davis did not violate this Court's rulings regarding the permissible scope of new expert discovery.  As Samsung

recognizes, Ms. Davis relied on Dr. Hauser and other experts in her *Georgia-Pacific* analysis for determining reasonable royalties under § 284; those opinions were disclosed in her 2013 and 2016 reports and have not changed.  Ms. Davis also relies on Mr. Ball and Ms. Kare not to calculate damages but to identify the relevant AOMs—the very reason the Court permitted new expert opinions, and akin to Mr. Wagner's reliance on Mr. Lucente's opinion regarding the identity of the AOMs generally, which Apple's motion does not challenge.

### B.  Dr. Reibstein's Opinions Regarding Factors 2 And 3 Do Not Serve Any Purpose Authorized By This Court.

Samsung contends (Opp. 3) that it relies on Dr. Reibstein to identify the relevant AOMs, which is the only topic on which new experts were permitted to opine.  But Samsung does not address, much less deny, Dr. Reibstein's own statement that he merely *assumed* the AOMs were the components identified by Samsung in its interrogatory responses.  *See* Dkt. 3573-4, Ex. C, Reibstein Rpt. ¶ 199 ("For purposes of my opinion, I assume that the [AOMs] to be as set forth by Samsung in its interrogatory responses.").  That alone confirms that Dr. Reibstein's purported discussion of Factors 2 and 3 is nothing more than window dressing made to look as though he is opining on the identity of the AOMs, when in fact he is not.

Samsung also does not dispute that Dr. Reibstein fails to "identify the *specific* articles of manufacture."  Opp. 5.  Instead, Samsung's response is that he was not required to do so.  *See id.* But that cannot be.  If Samsung is relying on Dr. Reibstein's opinions to identify the AOMs (as it claims), surely he would have to say—specifically—what those AOMs are.  Because he does not, his testimony cannot possibly help a jury identify the relevant AOMs.  Samsung's excuse that he is a "marketing" expert should not entitle him to discuss the relative value of design generally as compared to other, technical features of Samsung's infringing smartphones—which is all that the sections of his report purporting to address Factors 2 and 3 actually do.

Finally, Samsung's suggestion (Opp. 5) that its design expert Mr. Lucente "relies on" Dr. Reibstein's opinions regarding Factors 2 and 3 mischaracterizes Mr. Lucente's disclosed opinion. Mr. Lucente's report refers to Dr. Reibstein in only two paragraphs, where he summarily states

that he agrees with Dr. Reibstein's opinions but "independently" concluded that Factors 2 and 3 support his opinion regarding the AOM.  Dkt. 3581-6, Lucente Rpt. ¶¶ 219, 270.  In other words, Mr. Lucente emphasizes that his opinions do ***not*** rely on Dr. Reibstein in any way.

C.     **Samsung's Reliance On Dr. Reibstein To Conduct A New Survey And Assist With Damages Calculations Is Prejudicial To Apple.**

Samsung does not dispute that its disclosure of Dr. Reibstein's new opinions at this very late stage of the case has prejudiced Apple.  Instead, it claims that Apple should not have been "surprise[d]" by its tactics.  Opp. 8-9.  But Apple could not have anticipated that Samsung would retain a new expert to conduct a new survey in 2018 (where the infringement occurred in 2010-2012) and provide new valuations for damages calculations—especially since Samsung did not disclose those new facts or theories in its interrogatory responses and, as discussed above, the new opinions are contrary to the Court's rulings defining the allowable scope of expert discovery.

Samsung notes that the Court inquired about the possibility of "a consumer survey expert" at the October 25, 2017 CMC.  Opp. 9.  That would have been an opportune time for Samsung to mention that it was considering a new expert to conduct a new survey.  Instead, Samsung's counsel said:  "We anticipate design patent experts to talk about the [AOM] and damage expert, and there may be somebody else, but I can't think of it right now."  Dkt. 3538 at 39-40.  The Court even read this exchange aloud at the November 30, 2017 CMC, but Samsung's counsel again chose not to disclose that Samsung would have a new expert conduct a new survey and instead stated only that Samsung might have "potentially another expert" to "assist" Mr. Wagner. Dkt. 3543 at 13-14.  After the Court denied that request, Apple had no reason to believe that Samsung would use a new expert to conduct a new survey or assist with damages calculations.[1]

Samsung's reliance on Dr. Reibstein in contravention of the Court's ruling has prejudiced

---

[1]     Samsung also points out (Opp. 9) that Apple raised the possibility of disclosing marketing experts in these remand proceedings, but that was before the Court set the parameters limiting the scope of any new expert discovery.  After the Court ruled that new experts could be used only to identify the AOMs and not to help calculate damages, Apple reasonably expected that Samsung would abide by that ruling.  Had Samsung properly relied on Dr. Reibstein to identify the AOMs and not to assist with calculating damages, Apple would not have moved to strike his report.

1   Apple, and that prejudice can only be cured by striking Dr. Reibstein's report.  To the extent the

2   Court declines to do so, Apple requests leave to submit a report from another expert to rebut Dr.

3   Reibstein's unanticipated opinions (not to conduct a new survey as Samsung implies, Opp. 9 n.1).

4       **D.     Mr. Wagner Relies On Dr. Reibstein To Do An Improper Apportionment.**

5          Samsung's assertion (Opp. 9-10) that Mr. Wagner is not performing the same

6   "apportionment" that this Court previously rejected and Samsung abandoned is absurd.  Just as

7   before the 2012 trial, the majority of Mr. Wagner's current methodologies improperly calculate

8   § 289 damages by assigning a percentage to the "value" of design relative to other, technical

9   features in the infringing phones based on consumer surveys (where those values now come from

10  Dr. Reibstein), and then multiplying that percentage by what Mr. Wagner calculates to be

11  Samsung's "total profit" on the ***entire*** infringing phones.  That is apportionment, plain and

12  simple.  By contrast, § 289 requires first identifying the AOM and then determining the profit that

13  Samsung actually made on that AOM.  *Samsung*, 137 S. Ct. at 434.  If these two approaches were

14  one and the same (as Samsung now suggests), Samsung would not have pursued them separately

15  at the Supreme Court and expressly abandoned one but not the other.  The Court should not allow

16  Samsung to again raise its abandoned and improper "apportionment" theories simply by referring

17  to them as "AOM" theories.  If needed, Apple will raise this issue in a *Daubert* motion.

18  **III.   CONCLUSION**

19         Apple respectfully requests that the Court strike Dr. Reibstein's expert report in its

20  entirety, or at least the portions of the report that Mr. Wagner relies on to calculate damages.[2]

21  _____

22  [2]     Contrary to Samsung's assertion (Opp. 10 n.2), Apple complied with the Court's
    requirements before filing this motion.  That the phone call between lead counsel lasted "3 to 5

23  minutes" reflects only that there was not much to discuss since Samsung opposes Apple's motion
    and there was no agreement to be reached.  As Apple's counsel noted—in a portion of the email

24  exchange with Samsung's counsel that Samsung omitted from its filing—the parties' lead counsel
    were able to complete the meet-and-confer "quickly and amicably."  Selwyn Decl., Ex. A.

25         Samsung's claim (Opp. 10 n.2) that Apple "ambush[ed]" it with this motion is also
    unjustified.  Given that Samsung served over 15,000 pages of expert reports disclosing new facts

26  and theories—a point that Apple made in its opening brief and that Samsung's response nowhere
    denies—and the expedited schedule for expert discovery, Apple filed this motion as promptly as

27  it could after reviewing Samsung's reports and appropriately sought an expedited briefing
    schedule with the hope that the motion could be resolved during the expert discovery period.

28

1

2

3   Dated: February 7, 2018                    WILMER CUTLER PICKERING HALE AND
                                               DORR LLP

4

5                                              By:  */s/ Mark D. Selwyn*
                                                    MARK D. SELWYN
6

7                                              Attorneys for Plaintiff
                                               APPLE INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on February 7, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.


*/s/ Mark D. Selwyn*
Mark D. Selwyn