1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   John B. Quinn (Cal. Bar No. 90378)
2  johnquinn@quinnemanuel.com
   William C. Price (Cal. Bar No. 108542)
3  williamprice@quinnemanuel.com
   Michael T. Zeller (Cal. Bar No. 196417)
4  michaelzeller@quinnemanuel.com
   865 S. Figueroa St., 10th Floor
5  Los Angeles, California 90017
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Kathleen M. Sullivan (Bar No. 242261)
   kathleensullivan@quinnemanuel.com
8  Kevin P.B. Johnson (Cal. Bar No. 177129)
   kevinjohnson@quinnemanuel.com
9  Victoria F. Maroulis (Cal. Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
10 555 Twin Dolphin Drive 5th Floor
   Redwood Shores, California 94065
11 Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
12
   Attorneys for SAMSUNG ELECTRONICS
13 CO., LTD., SAMSUNG ELECTRONICS
   AMERICA, INC. and SAMSUNG
14 TELECOMMUNICATIONS AMERICA, LLC

15

16                 UNITED STATES DISTRICT COURT

17        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18 | APPLE INC., a California corporation,        | CASE NO. 11-cv-01846-LHK

19 |                 Plaintiff,                   | **SAMSUNG'S OPPOSITION TO APPLE'S MOTION TO STRIKE DR. REIBSTEIN'S EXPERT REPORT**

20 |          vs.                                 |

21 | SAMSUNG ELECTRONICS CO., LTD., a             | **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
   | Korean business entity; SAMSUNG              |
22 | ELECTRONICS AMERICA, INC., a New             |
   | York corporation; SAMSUNG                    | **Hearing:**
23 | TELECOMMUNICATIONS AMERICA,                  |
   | LLC, a Delaware limited liability company,   | Date: TBD
24 |                                              | Time: TBD
   |          Defendant.                          | Place: Courtroom 8, 4th Floor
25 |                                              | Judge: Hon. Lucy H. Koh

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court ruled at the last status conference that only the parties' prior damages experts may testify to damages. Samsung has followed that instruction: Mr. Wagner is the only expert who will address damages on Samsung's behalf. Apple's misleading motion to strike should be denied.

Dr. David Reibstein is a marketing and survey expert, and proffered as such. In his 118-page report, Dr. Reibstein discusses advertising and marketing, third-party smartphone reviews, third-party surveys and his own consumer survey and concludes, in the two main sections of his report (which span 90 pages), that this Court's second and third factors for identifying the relevant article of manufacture (relative prominence and conceptual distinctness) favor a finding that smartphone components, and not entire phones, are the relevant articles of manufacture. Samsung's other article-of-manufacture identity expert, Mr. Sam Lucente, relies on these opinions to further support his conclusions that the specific components identified by Samsung are the relevant articles of manufacture. Apple's assertion (Br. 1, 7-9) that Dr. Reibstein does not address the identity of the relevant articles of manufacture is thus simply wrong—in fact, nearly all of his report is dedicated *exclusively* to that issue. Although Apple seeks to strike the entirety of Dr. Reibstein's report, it makes no argument that these sections are improper.

Dr. Reibstein also concludes, in a separate seven-page section of his report, that his survey provides useful information regarding the value of the articles of manufacture to which Apple's designs were applied. This is entirely proper, as is Mr. Wagner's reliance on this portion of Dr. Reibstein's report. At the November 30, 2017 case management conference, Samsung proposed that Mr. Wagner would calculate the profits earned on *Samsung's entire phones* while a new damages expert would calculate profits on *the relevant component articles of manufacture*. The Court rejected that proposal, ruling that Samsung may not designate an additional damages expert to calculate profits on the articles of manufacture. Samsung has not done so: Dr. Reibstein is a survey expert, not a damages expert, and he does not offer any damages opinions. Only Mr. Wagner has calculated damages on Samsung's behalf. Apple objects (Br. 1, 5-7) that a portion of Mr. Wagner's report *relies* on Dr. Reibstein, but the Court has never ruled that the parties'

1   damages experts cannot rely on other experts, and indeed Apple's own damages expert explicitly

2   and repeatedly relies on Apple's other experts in forming her damages opinions.  The Federal

3   Circuit has repeatedly held, moreover, that such reliance is proper and often necessary.

4        Apple also claims (Br. 9-10) that it supposedly "could not have reasonably anticipated"

5   that Samsung would serve a report from a "new expert [who would] conduct a new survey."  But

6   the Court explicitly ruled that the parties could call two new expert witnesses who "need not have

7   previously testified or been disclosed," Dkt. 3542 at 1, and the prospect of consumer surveys has

8   been on the table for years.  In the Supreme Court, the Solicitor General explained that courts

9   applying the article-of-manufacture test should consider the extent to which "the various

10  components of a smartphone drive consumer demand and contribute to the value of the phone,"

11  and "*the best way to determine that ... would be consumer surveys . . . .*"  Borden Decl., Exh. 1 at

12  25:5-7; 30:14-20 (emphasis added).  Justice Sotomayor agreed that the perspective of "a

13  purchasing consumer" as to "what drives the sale" is relevant.  *Id.* at 8:5-8.  On remand, this Court

14  inquired about the possibility of "a consumer survey expert," Dkt. 3538 at 39:10-11, and Apple

15  itself stated that it was considering calling experts with expertise in surveys, Dkt. 3539 at 3.

16  Apple's suggestion that it had no idea that Samsung might proffer a survey from a survey expert is

17  not a basis for striking Samsung's expert report.  And Apple's claim that it just discovered that

18  Samsung might pursue a survey overlooks that Samsung formally disclosed Dr. Reibstein, who

19  Apple knows is a survey expert, almost two months ago.

20       The Court reopened discovery because it recognized that new information is relevant and

21  may be introduced in light of the "change in the law" at the Supreme Court.  Dkt. 3538 at 18:18-

22  20.  The Court permitted the parties to designate new experts going to the article-of-manufacture

23  inquiry because it recognized that issue "is new and that was not part of the previous two trials."

24  Dkt. 3546 at 19:21-20:8. Dr. Reibstein's expert analysis is critical, highly relevant information that

25  goes directly to the new article of manufacture test.  His report should not be stricken.

26  **I.    DR. REIBSTEIN'S EXPERT REPORT IS ENTIRELY PROPER**

27       Dr. Reibstein is one of the leading marketing and survey experts in the country.   Contrary

28  to Apple's repeated assertions (Br. 1, 5-7), Samsung has not proffered Dr. Reibstein to testify to

1    damages.  He does not calculate damages under any theory, and his report does not discuss

2    Apple's or Samsung's revenues or profits or any other financial data.  That information is

3    discussed and damages are calculated only by Mr. Wagner.  Dr. Reibstein is not an economist or

4    an accountant, and he does not pretend to be one.

### A.    Dr. Reibstein's Extensive Analysis Of Two Of The Four Factors For Identifying The Relevant Articles Of Manufacture Is Proper

Apple states (Br. 7) that "Samsung does not rely on Dr. Reibstein to identify the relevant AOMs."  In fact, Samsung relies on Dr. Reibstein to do exactly that.  The two main sections of his report (Sections III and IV) analyze "relative prominence" and "conceptual distinctness," which are factors two and three of this Court's test for identifying the relevant articles of manufacture.

In Section III of his report, on pages 21 to 81, Dr. Reibstein canvasses relevant evidence and concludes that Apple's patented designs *are conceptually distinct* from other features of Samsung's smartphones and from the smartphones as a whole, showing that the relevant articles of manufacture are product components and not entire phones.  In reaching this conclusion, Dr. Reibstein relies upon:

- Scholarly literature showing that consumers view complex products like smartphones as bundles of features rather than unitary products.  Dkt. 3573-4, Exh. C (Reibstein Report) at 21-23.

- Advertising and marketing by smartphone providers, carriers, and retailers showing that smartphones are marketed to consumers as a bundle of conceptually distinct features and attributes, including carrier, operating system, screen quality, GPS, Bluetooth, web browsing, premium camera, Wifi, video calling, and other features.  *Id*. at 23-36.

- Third-party smartphone reviews of the accused phones on websites such as CNET, Phone Arena, The Verge, Engadget and GSM Arena, which compare and contrast smartphones across dozens of features and allow consumers to customize their own feature by feature comparisons.  *Id*. at 37-45.

- Third-party surveys conducted in 2011 and 2012 by reputable, unbiased sources such as by J.D. Power, Nieslen, ComScore, and Strategy Analytics, as well as a survey Dr. Reibstein

conducted for this litigation, which all confirm that consumers readily distinguish between and among smartphone features, including those relating to the patented designs.  *Id*. at 45-75.  In addition, Dr. Reibstein explicitly rebuts the contrary opinions regarding "conceptual distinctness" expressed by Dr. Kare and Mr. Ball, Apple's designated experts regarding the identity of the relevant articles of manufacture.  *Id*. at 75-80.

In the next section of his report (Section IV), spanning pages 81 to 110, Dr. Reibstein concludes that the patented designs *are not prominent* when compared to other aspects of smartphones, again showing that the relevant articles of manufacture are product components and not entire phones.  Dr. Reibstein explains that companies advertise the features they think consumers find important in a product, and he analyzes at length the features highlighted in smartphone advertising.  *Id*. at 81-88.  Dr. Reibstein then reviews the lack of emphasis on the patented designs in third-party smartphone reviews.  *Id*. at 88-92.  Dr. Reibstein notes that Apple's expert, Dr. Kare, agrees that the time spent by consumers using the infringing app menu screen is a relevant metric in considering prominence of the design, but explains his disagreement with her conclusions.  *Id*. at 95-98.  Dr. Reibstein also explains that third party surveys and his own survey show that the patented designs are not relatively prominent, and that other features and attributes are more important, in the minds of consumers.  *Id*. at 92-94, 98-102.  Dr. Reibstein also addresses flaws in the "prominence" opinions of Dr. Kare and Mr. Ball, including their distortions of advertising and packaging.  *Id*. at 102-110.

These opinions go to the core of the article-of-manufacture test—and collectively, they occupy 90 pages of Dr. Reibstein's 118-page report.  Yet while Apple seeks to strike that report in its entirety, Apple hardly even addresses this proposed testimony.  Apple acknowledges, near the end of its brief (Br. 8), that Dr. Reibstein "purports to address two factors of the Court's AOM test (the relative prominence of the design within the product as a whole, and whether the design is conceptually distinct from the product as a whole)," yet makes no argument that such testimony violates the Court's rulings.  Nor does Apple dispute that Dr. Reibstein, with his expertise in marketing and consumer perceptions, is well qualified to opine on these factors.  Instead, Apple asserts without explanation (*id.*) that these opinions supposedly reflect a prohibited

1  "apportionment-type analysis," but as even Apple acknowledges (Br. 5 n.2) that is an issue to be

2  raised, if at all, on *Daubert*.   Moreover, as briefly shown in Section III below, Apple's

3  "apportionment" position is incorrect, and flatly conflicts with the Supreme Court's ruling.

4     Apple also contends (Br. 9) that because Dr. Reibstein does not identify the *specific*

5  articles of manufacture in Samsung's phones to which Apple's patented designs were applied, "his

6  report should be stricken in its entirety."   This claim is meritless.  Because he is a *marketing*

7  expert, Dr. Reibstein does not express an opinion about two of the factors in the Court's four-

8  factor test as to which marketing is not probative—the scope of the patented design and the

9  physical relationship between the design and the product.   Instead, Dr. Reibstein focused his

10  analysis on the two factors that deal with consumer perceptions, his area of expertise, and

11  concluded that those two factors support a finding that product components, and not entire phones,

12  are the relevant articles of manufacture.   Dkt. 3573-4, Exh. C (Reibstein Report) ¶ 144 ("My

13  review of the evidence reveals that the designs corresponding to the D'677 patent, the D'087

14  patent, and the D'305 patent are conceptually distinct from other smartphone features and from the

15  smartphone as a whole."); *id.* ¶ 198 ("[F]or the smartphones that incorporate them, the designs of

16  the D'677 patent, the D'087 patent, and the D'305 are not prominent when compared to many

17  other features identified and highlighted by smartphone providers, carriers, third-party retailers,

18  third party reviewers, and consumers.").   Samsung's other article-of-manufacture identity expert,

19  Mr. Lucente, then relies on these conclusions of Dr. Reibstein to further support his identification

20  of the specific articles of manufacture to which the designs were applied:

21     I am informed that expert witness David Reibstein has considered the second
       factor and has also come to the conclusion, as I have, that this factor weighs in
22     favor of component parts being the proper articles of manufacture. I have
       reviewed his opinions and believe they support the conclusions I have
23     independently made here.

24  Borden Decl. Exh. 2, ¶ 219; *see also id.* ¶ 270 (similar, as to relative prominence factor).  This is

25  all proper, and Apple makes no argument to the contrary.

26     **B.     Dr. Reibstein's Opinions Regarding The Usefulness Of Surveys In Assessing
              Relative Value Are Also Proper, As Is Mr. Wagner's Reliance On Those**
27            **Opinions**

28  In a separate section of his report (Section V), Dr. Reibstein explains that consumer

surveys also provide useful information in valuing smartphone features.   Contrary to Apple's
assertions, however, Dr. Reibstein does not opine on damages.   Instead, acting as a *survey* expert,
Dr. Reibstein discusses academic literature and explains the usefulness of surveys, including his
own survey, in assessing the relative value of different features.   Dkt. 3573-4, Exh. C (Reibstein
Report) at 111-118.   For example, survey responses identifying the importance to consumers of
certain aspects of style and design provide information that is relevant to valuing the front face of
a smartphone, which Samsung contends is the relevant article of manufacture for the D'677 patent.
*Id.* at 113-114.   A larger group of survey responses provide information that is relevant to valuing
the article of manufacture to which Samsung contends the D'087 patent was applied.   *Id.* at 114.
And a different group of responses inform the value of the article of manufacture to which the
D'305 patent was applied.   *Id.* at 114-15.

Apple's assertion that this testimony violates the Court's rulings is incorrect.   At the last
status conference, Samsung requested permission to bring in a new *damages* expert who would
*calculate profits* from the relevant articles of manufacture.   Under Samsung's proposal, Mr.
Wagner would calculate profits on Samsung's entire phones and a new expert would calculate
profits on the relevant component articles of manufacture.   Dkt. 3546 at, *e.g.,* 19:9-14.   The Court
rejected that proposal*,* ruling that only Mr. Wagner could calculate damages.   *See  id.* (denying
request for "an extra expert who will be opining on the calculations of the article of
manufacture"); *id.* at 14:18-15:2; 19:9-14 (denying Samsung's request "to have an extra expert to
assist Mr. Wagner with the calculations of [the article of manufacture]")).   As the Court explained,
"what's new is the article of manufacture.   So I actually don't think doing the CPA number
crunching accounting has really changed, so Wagner and Davis will remain."   *Id.* at 7:17-21.   Dr.
Reibstein clearly does not engage in "CPA number crunching accounting," or anything remotely
similar.   Section V of his report discusses no financial information, never uses the word "profit,"
and does not contain a single "$" sign.   Manifestly, this is not a damages opinion.

Apple objects (Br. 6) that Mr. Wagner "uses the 'values' provided by Dr. Reibstein as
inputs" for certain of Mr. Wagner's damages opinions, but it is not clear why Apple finds this
objectionable.   That is par for the course with damages experts—they rely on other experts in

forming opinions all the time.  The Court never prohibited the parties' damages experts from relying on other experts, and any such prohibition would be contrary to well-established, controlling law.  *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Group., Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015) ("the district court properly concluded that [the expert] could, indeed must, rely upon [the party's] other experts having such industry-specific experience"); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) (reversing exclusion of damages testimony that relied on other expert testimony:  "Experts routinely rely upon other experts hired by the party they represent for expertise outside their field."), *partly overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  Mr. Wagner relies on many different documents and other materials in forming his opinions on damages, including preexisting surveys that have been admitted at prior trials, and Apple does not argue any of that is improper.  His reliance on Dr. Reibstein's opinions is no different.

Indeed, Apple's own damages expert, Ms. Davis, extensively relies on Apple's other experts in forming her damages opinions.  Ms. Davis's report explains that she spoke with at least five retained Apple experts, including Dr. Ravin Balakrishnan, Dr. John Hauser, Dr. Karan Singh, Mr. Alan Ball, and Dr. Susan Kare, and that "*[i]t is usual and customary for experts to consider and/or rely upon sources of information such as those [experts] in forming damages opinions.*" Borden Decl., Exh. 3, ¶¶ 23-24 (emphasis added).  Ms. Davis also notes that she relied on Apple's other experts in forming several of her opinions.  *See, e.g., id.* ¶ 247 (citing all five Apple experts in her discussion of Georgia-Pacific Factor #14); *id.* ¶ 89A ("Based on . . . the conclusions drawn by Apple's design experts Mr. Ball and Dr. Kare, I have prepared a calculation of the money damages to which Apple is entitled"); *id.* ¶ 140C ("I have relied on [Mr. Ball's and Dr. Kare's] conclusions in my analysis of Samsung's total profits in connection with the damages calculations included in this report."); *id.* ¶ 140B (similar); *id.* ¶ 140D (similar).

For example, Ms. Davis relies extensively on "the results of two consumer surveys performed by Dr. John Hauser" in analyzing Georgia-Pacific Factor #13.  *Id.* ¶¶ 104, 245.  Dr. Hauser's surveys purport to determine a "price premium" for certain patented features.  *Id.* ¶ 104. Ms. Davis relies on these price premium surveys and Apple's technical experts' opinions to

calculate her "Patent Qualitative Ranking" for each utility patent, which she uses in her reasonable royalty "Income" calculations. *Id.* Ex. 45 n. 2 ("I have assigned a rating of 1 through 4 on each patent based on my discussions with technical experts and representatives of Apple . . . .  In assigning a rating, I have considered and used my discussions with experts, discussions with Apple personnel, the design around time, degree of program integration, and the results of the [*sic*] John Hauser's Conjoint Analysis . . . ."); *see id.* Ex. 46-R (Ms. Davis's conclusions based on this analysis).  Ms. Davis thus explicitly relies on Dr. Hauser's surveys and her conversations with Apple's technical experts for her ultimate calculations of all utility patent royalties.

There is, accordingly, no basis for striking either Dr. Reibstein's report or the portions of Mr. Wagner's report that rely on Dr. Reibstein.  The Court ruled that only Mr. Wagner could address damages, and as ordered, only Mr. Wagner has addressed damages.  The Court never prohibited the parties from introducing survey expert testimony and never ruled that the parties' damages experts cannot rely on other experts.  Apple's objections lack merit.

Apple's motion also fails to recognize why this Court reopened discovery and allowed for new expert reports in the first place.  As this Court explained, the upcoming trial concerns a new set of issues, Dkt. 3530 at 4, and new discovery is appropriate regarding these issues because "there has been a change in the law and it would be more problematic on appeal for me not to allow discovery." Dkt. 3538 at 18:18-20.  The Court *specifically authorized* the parties to identify new article of manufacture experts because "that is new and that was not part of the two previous trials." Dkt. 3546 at 19:21-20:8.  Dr. Reibstein's report sets forth new, critically relevant article-of-manufacture opinions.  Apple's motion to strike this report, and the portions of another report that rely on it, made absent any showing that the substance of Samsung's proposed testimony is flawed in any way, is an invitation to error which the Court should reject.

## II.  APPLE'S FAILURE TO DESIGNATE ITS OWN SURVEY EXPERT DOES NOT WARRANT STRIKING SAMSUNG'S EXPERT REPORT

Apple also implausibly argues (Br. 9-10) that it "could not have reasonably anticipated" that "Samsung intended to rely on a new expert to conduct a new consumer survey," and urges the Court to strike Samsung's report for this reason.  The Court, however, explicitly ruled that the

1   parties could call two new expert witnesses who "need not have previously testified or been

2   disclosed," Dkt. 3542 at 1, and the prospect of consumer surveys is certainly nothing new.  Both

3   Justice Sotomayor and the Solicitor General discussed the relevance of consumer surveys at oral

4   argument, with the Solicitor General explaining that courts should use such data to assess the

5   extent to which "the various components of a smartphone drive consumer demand and contribute

6   to the value of the phone."  Borden Decl., Exh. 1 at 8:5-8, 25:5-7; 30:14-20.  After the remand,

7   this Court inquired about the possibility of "a consumer survey expert," Dkt. 3538 at 39:10-11,

8   and Apple stated that it was considering calling experts who claim to have expertise in surveys,

9   Drs. Sanjay Sood and Russell Winer, Dkt. 3539 at 3.  Then, in December 2017, Samsung formally

10  disclosed Dr. Reibstein—who Samsung had previously designated as a survey expert in related

11  litigation—as one of its experts.  Borden Decl., Exh. 4 at 2070:20-25.  Apple's professed surprise

12  that Samsung might proffer a survey from Dr. Reibstein is not a basis for striking his report.[1]

13  ### III.    APPLE'S CASUAL ASSERTIONS THAT SAMSUNG'S EXPERTS ENGAGE IN "APPORTIONMENT" ARE BOTH MISPLACED AND WRONG

14          Apple appears to recognize that this is not the time to argue alleged flaws in an expert

15  report:  Apple states that it intends to move to preclude certain testimony in *Daubert* motions,

16  including on the grounds that Samsung's experts supposedly engage in prohibited apportionment.

17  *See* Br. at 2 n.1, 5 n.2.  Yet Apple also argues here that "Mr. Wagner uses Dr. Reibstein's inputs to

18  calculate damages by performing an ***apportionment*** between the alleged design value as compared

19  to other, technical features of the product," Br. 4-5 (emphasis in original), and that Samsung's

20  experts "seek to revive the same 'apportionment' methodology that this Court and the Federal

21  Circuit held is contrary to law and that Samsung abandoned before the Supreme Court," Br. 1.

22          In fact, it is Apple that seeks to "revive" the same arguments which it made before the

23  Supreme Court—which are the very arguments that the Supreme Court unanimously rejected.

24

25  _____

26  [1]  Apple also claims that its "surprise" (Br. 10 n.3) should entitle it to designate a *fourth* expert
    who will conduct another survey.  But Apple could have designated someone with survey or

27  marketing expertise in response to the Court's ruling that the parties may designate two new
    experts, but chose not to do so.  That choice does not justify its request for an additional expert.

28

1    There is no improper "apportionment" in Samsung's expert reports.  Instead, Mr. Wagner properly

2    calculates the profit *on the component articles of manufacture* to which Apple's designs were

3    applied, as distinguished from profit earned on other features.  That is not apportionment—

4    instead, it is the core requirement of the article-of-manufacture limitation.  *See Samsung*

5    *Electronics Co., Ltd. v. Apple Inc.*, 137 S.Ct. 429, 434-36 (2016) (holding that a patentee may only

6    "be entitled to the infringer's total profit from a component of the end product.").  Indeed, Apple's

7    own attorney conceded in the Supreme Court that this form of profit segregation is necessary.

8    Borden Decl., Exh. 1 at 50:7-10 (Mr. Waxman acknowledging that "[y]ou do have to engage in a

9    kind of an apportionment" to determine profit from a component article of manufacture).

10   After calculating the profit earned on the relevant component articles of manufacture, Mr.

11   Wagner does *not* then "apportion" that profit to reflect the contributions of the patented designs as

12   compared to other features of the articles of manufacture.  Rather, the total profit on the articles of

13   manufacture is calculated, without any further adjustments to reflect the limited value of Apple's

14   designs.  Apple cannot dispute this; and for this reason, its assertion that Samsung has engaged in

15   prohibited apportionment is wrong.  Mr. Wagner's damages opinions calculate total profit from

16   the relevant articles of manufacture.  Apple is not entitled to anything more.

17   Throughout this case, Apple has insisted that any and all calculations of profit that are less

18   than entire-product profit reflect prohibited "apportionment."  That erroneous position is what led

19   to the reversal of prior rulings in the Supreme Court.  Apple's persistence in maintaining that

20   erroneous position even now should not be rewarded.  Its motion to strike should be denied.

## CONCLUSION

22   For the foregoing reasons, the Court should deny Apple's Motion in its entirety.[2]

---

24   [2]  Samsung notes that Apple violated this Court's meaningful meet and confer requirement
and the Civil Local Rules in filing this motion.  Samsung first learned about Apple's intent to seek
25   leave to file a motion to strike on the afternoon of February 1, after Apple's lead counsel emailed
Samsung's lead counsel asking for a "quick call" on an unspecified topic.  Their call lasted 3 to 5
26   minutes, and Apple filed its motion that evening.  Borden Decl., Exh. 5.  Apple also failed to
comply with any of the requirements Civil L.R. 6-3 in seeking expedited briefing.  Apple has
27   attempted to ambush Samsung with this motion.

1 | DATED: February 6, 2018          Respectfully submitted,

2 |                                  QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
3 |

4 |

5 |                                  By  /s/ Victoria F. Maroulis
                                         John B. Quinn
6 |                                      William C. Price
                                         Michael T. Zeller
7 |                                      Kathleen M. Sullivan
                                         Kevin P.B. Johnson
8 |                                      Victoria F. Maroulis

9 |

10 |                                 Attorneys for SAMSUNG ELECTRONICS CO.,
                                     LTD., SAMSUNG ELECTRONICS AMERICA,
11 |                                 INC. and SAMSUNG
                                     TELECOMMUNICATIONS AMERICA, LLC
12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |