# EXHIBIT A
## (Filed Under Seal)

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**United States District Court**
**Northern District of California**
**San Jose Division**
**Case No. 11-cv-01846 LKH**

**Apple Inc.**

**v.**

**Samsung Electronics Co., Ltd., et al.**

---

**Rebuttal Expert Report of Michael J. Wagner**
**for 2018 Trial on Damages**

**January 29, 2018**

**Volume I**

**LitiNomics**

# Apple Inc. v. Samsung Electronics Co., Ltd., et al.

## Table of Contents

### Rebuttal Expert Report of Michael J. Wagner for 2018 Trial on Damages

### Volume 1

| Tab # | Description |
|---|---|
| 1 | Rebuttal Expert Report of Michael J. Wagner for 2018 Trial on Damages |
| 4 | Additional Documents Considered |
| 5 | Curriculum Vitae of Michael J. Wagner |
| 6 | Rebuttal Damages Model |

# Tab 1

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

# United States District Court
# Northern District of California
# San Jose Division
# Case No. 11-cv-01846 LHK

## APPLE INC.
## v.
## SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

---

## Rebuttal Expert Report of Michael J. Wagner
## for 2018 Trial on Damages
## January 29, 2018

i

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

I.    INTRODUCTION AND BACKGROUND ...................................................................... 4

II.   QUALIFICATIONS ................................................................................................... 7

III.  SUMMARY OF OPINIONS ...................................................................................... 9

   A. DISAGREEMENTS WITH THE OPINIONS EXPRESSED BY JULIE L. DAVIS .................... 9

      1.  Ms. Davis offers a high-level analysis that is largely divorced from the specific
          intellectual property that is at issue in this lawsuit. ................................... 9

      2.  Mr. Musika used the Entire Market Value Rule in his analysis and Ms. Davis has
          adopted the same approach. ..................................................................... 9

      3.  Ms. Davis's analysis does not properly account for the limited demand for the
          intellectual property at issue. .................................................................... 9

      4.  Ms. Davis's calculation of Samsung's profits is overstated. ......................... 9

      5.  Ms. Davis's reasonable royalty analysis relied on unreasonable benchmarks and
          resulted in an overstated concluded royalty rate. .................................... 10

   B. SAMSUNG'S PROFITS RELATED TO THE ARTICLE OF MANUFACTURE FOR THE DESIGN PATENTS ............ 10

      1.  Rebuttal Opinions to Ms. Davis's "Supporting" Opinions with respect to Article of
          Manufacture ....................................................................................... 10

      2.  All of Samsung's operating expenses qualify as deductible expenses with the exception
          of the legal expenses related to this lawsuit. ......................................... 11

      3.  Samsung's Entire Profits on the Phones Found to Infringe Design Patents ......... 11

      4.  Total Profit Related to the Article of Manufacture to Which the Design is Applied ........... 13

   C. REASONABLE ROYALTY: .................................................................................... 17

      1.  The reasonable royalty that is adequate to compensate Apple for Samsung's alleged
          infringement of Apple's asserted intellectual property is summarized as follows: ............. 17

IV.  BACKGROUND AND DESCRIPTION OF THE INVENTIONS ...................................... 18

   A. APPLE'S ASSERTED INTELLECTUAL PROPERTY ..................................................... 18

      1.  Apple's Utility Patents ........................................................................ 18

      2.  Apple's Design Patents ....................................................................... 20

   B. SAMSUNG'S PRODUCTS FOUND TO INFRINGE ...................................................... 25

      1.  Samsung Galaxy S Smartphones ......................................................... 27

      2.  Other Samsung Smartphones .............................................................. 28

V.   BASES FOR OPINIONS ........................................................................................ 29

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

A. DISAGREEMENTS WITH THE OPINIONS EXPRESSED BY JULIE L. DAVIS (OTHER THAN RELATING TO IDENTITY OF ARTICLE OF MANUFACTURE AND PROFITS RELATED TO SUCH) .......................................... 29

    1.   Ms. Davis offers a high-level analysis that is largely divorced from the specific intellectual property that is at issue in this lawsuit. .............................................. 30

    2.   Mr. Musika used the Entire Market Value Rule in his analysis and Ms. Davis has adopted the same approach. ............................................. 40

    3.   Ms. Davis's analysis does not properly account for the limited demand for the intellectual property at issue. ............................................. 41

    4.   Ms. Davis's calculation of Samsung's profits is overstated. .................................................. 61

    5.   Ms. Davis's reasonable royalty analysis relied on unreasonable benchmarks and resulted in an overstated concluded royalty rate. .................................................. 69

B. SAMSUNG'S PROFITS RELATED TO THE ARTICLE OF MANUFACTURE FOR THE DESIGN PATENTS .......... 103

    1.   Apple's and Samsung's Positions on the Article of Manufacture ........................................ 104

    2.   Rebuttal Opinions to Ms. Davis's "Supporting" Opinions with respect to Article of Manufacture ...................................................................................... 108

    3.   Opinions Regarding Samsung's Profits from Sales of Products Found to Infringe the D'677, D'087, and D'305 Patents ........................................................................... 154

    4.   Total Profit Related to the Article of Manufacture To Which the Design is Applied ............. 167

C. OPINIONS REGARDING REASONABLE ROYALTY RATE ........................................................ 254

    1.   Basic Framework for Calculating Reasonable Royalty Damages for Patent Infringement . 254

    2.   *Georgia-Pacific* Factor Analysis ........................................................................... 261

    3.   Major Facts Known or Knowable to Both Parties at the Hypothetical Negotiation ............. 289

    4.   Calculation of Royalties Due ........................................................................... 290

VI.     **DOCUMENTS, DATA AND OTHER INFORMATION CONSIDERED** ........................................ 291

VII.    **POTENTIAL ADDITIONAL ANALYSES TO PERFORM** ............................................................. 292

VIII.    **COMPENSATION** ............................................................................................................ 292

351.    I understand that the District Court subsequently issued an order to "set forth the method for determining the relevant article of manufacture for the purpose of § 289," and ordered a new trial on both the relevant article of manufacture and on damages.[541]

### 3. Opinions Regarding Samsung's Profits from Sales of Products Found to Infringe the D'677, D'087, and D'305 Patents

352.    One input relevant to calculating the total profit related to the articles of manufacture identified by the parties is the profit that Samsung earned on the 16 phones found to infringe at least one design patent.   To differentiate the profit on the entire phone from the total profit related to the article of manufacture, I will refer to the profit that Samsung earns on the entire phone as "Samsung's Entire Profits."   Ms. Davis has performed a calculation of Samsung's Entire Profits based on total revenues, based on Samsung's gross margin, and based on Samsung's "incremental profit."[542]   As described more fully below, I have concluded that Samsung's COGS and operating expenses are deductible expenses as they are related to and necessary for the sale and manufacture of the accused products.

### a) Samsung's Sales Data

353.    Samsung has produced updated sales data and expense data for STA, SEA, and SEC.[543]   The sales data include monthly data covering the period May 2010 through June 2012 for 33 Samsung products.[544]   For each of the 3 Samsung entities, the sales data include quantity (in units), sales ($), cost of goods sold (COGS), and operating expenses broken down into major operating expense categories.

354.    SEA and STA are the only Samsung entities that sell into the United States.[545]   Therefore Samsung's U.S. sales of the accused products are determined by the sales of the accused products by SEA and STA.   Mr. Sheppard testified that STA sells Samsung's mobile phones in the United States.[546]   Therefore, SEA does not sell any devices in the United States

---

[541] Order Requiring New Trial on Design Patent Damages, October 22, 2017, pp. 2, 35. [20.2]
[542] Davis 2018 Report, pp. 62-64. [2.2]
[543] SAMNDCA00422828.
[544] I understand that the product referred to as "Galaxy Tab (JX 1036)" in the Amended Jury Verdict is the product referred to as "Galaxy Tab 7.0 (3G)" in Samsung's sales data.   Therefore, I have used this data in my analysis, which matches with the data used by Ms. Davis in her analysis.
[545] Deposition of Jaehwang Sim, March 10, 2012, pp. 119-120, 142-143. [4.5]
[546] Deposition of Timothy Sheppard, January 24, 2012, pp. 26-28, 86-87. [3.22]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

that are at issue in the 2018 Trial.[547]   Nonetheless, I continue to refer to "STA and SEA" in my discussion below, as I did in my Original Report.

355.    The following figure provides a summary for STA and SEA of the quantity sold, revenue, and ASP for each of the accused products:

**Figure 46:  Consolidated STA and SEA Revenue, Quantity, and ASP for Accused Products**[548]

| Product | 2010 | | | 2011 | | |
|---|---|---|---|---|---|---|
| | Revenue | Quantity | ASP | Revenue | Quantity | ASP |
| | [a] | [b] | | [c] | [d] | |
| *Smartphones* | | | | | | |
| Fascinate | $468,640,215 | 1,027,206 | $456 | $150,478,565 | 406,820 | $370 |
| Galaxy S 4G | $0 | 0 | | $395,281,186 | 1,145,702 | $345 |
| Mesmerize | $56,630,363 | 119,630 | $473 | $204,644,961 | 537,339 | $381 |
| Showcase / Galaxy S Showcase (i500) | $15,649,036 | 31,500 | $497 | $88,312,660 | 233,016 | $379 |
| Vibrant | $428,544,127 | 973,166 | $440 | $16,615,189 | 47,877 | $347 |
| Captivate | $325,163,101 | 732,869 | $444 | $198,540,962 | 658,440 | $302 |
| Continuum | $73,338,883 | 173,560 | $423 | $38,720,356 | 146,614 | $264 |
| Droid Charge | $0 | 0 | | $351,465,501 | 699,366 | $503 |
| Epic 4G | $363,131,713 | 702,727 | $517 | $458,714,814 | 1,092,661 | $420 |
| Galaxy S II 2 (AT&T) | $0 | 0 | | $179,853,040 | 383,661 | $469 |
| Gem | $0 | 0 | | $63,595,570 | 374,101 | $170 |
| Hercules / Galaxy S II (T-Mobile) | $0 | 0 | | $195,794,628 | 432,286 | $453 |
| Indulge | $0 | 0 | | $98,221,588 | 270,612 | $363 |
| Infuse 4G | $0 | 0 | | $360,510,494 | 850,643 | $424 |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | $0 | 0 | | $274,548,453 | 578,632 | $474 |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | $0 | 0 | | $160,401,079 | 327,772 | $489 |
| **Total Smartphones** | **$1,731,097,438** | **3,760,658** | **$460** | **$3,235,699,046** | **8,185,542** | **$395** |



| | Q1 - Q2 2012 | | | 2010 - Q2 2012 Total | | |
|---|---|---|---|---|---|---|
| | Revenue | Quantity | ASP | Revenue | Quantity | ASP |
| | [e] | [f] | | [g] | [h] | |
| *Smartphones* | | | | | | |
| Fascinate | | | | | | |
| Galaxy S 4G | | | | | | |
| Mesmerize | | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | | |
| Vibrant | | | | | | |
| Captivate | | | | | | |
| Continuum | | | | | | |
| Droid Charge | | | | | | |
| Epic 4G | | | | | | |
| Galaxy S II 2 (AT&T) | | | | | | |
| Gem | | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | | |
| Indulge | | | | | | |
| Infuse 4G | | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | | |
| **Total Smartphones** | | | | | | |

---

[547] Schedule 21.1-4T – 21.16-4T. [1.6]
[548] Schedule 15.1-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### b) Samsung's Deductible Expenses

356.    Samsung has provided detailed, monthly sales and expense data for each accused product.   Other than one adjustment that I describe below relating to the COGS reported in the "manufacturing" section of Samsung's financial data, I understand that the expense data reported in Samsung's financial data are extracted directly from Samsung's SAP financial database.[549]

357.    I have reviewed each category of cost included in the data and have had conversations with Samsung employees[550] to confirm that the expense items included in Samsung's financial data are deductible expenses.

### (1) SEC's Deductible Expenses

358.    Samsung's financial data includes a section titled "Manufacturing," which includes sales data and expense data for SEC and two Chinese manufacturing subsidiaries.[551] As discussed by SEC's 30(b)(6) witness on its financial data, Mr. Sim, in some previous iterations of its financial data productions, Samsung had adjusted the COGS reported in the data in order to "zero out" the manufacturing profits of the Chinese manufacturing subsidiaries.[552]  I understand that this was done because neither of those manufacturing entities are a party to this case.  Subsequent versions of Samsung's data production relied upon by me, Ms. Davis and Mr. Musika in his supplemental report contain manufacturing COGS that do not "zero out" the manufacturing profits of the Chinese manufacturing subsidiaries.   Using these latest financial productions, Ms. Davis has no need to adjust COGS and simply follows the methodology set forth by Mr. Musika in his supplemental report in order to calculate profits.[553]

359.    To determine whether SEC's reported expenses are deductible, I have reviewed several deposition transcripts of Samsung financial witnesses and had a conversation with Mr.

---

[549] Deposition of Jaehwang Sim, March 10, 2012, pp. 34-35. [4.5]  *See also* Deposition of Timothy Sheppard, February 29, 2012, p. 84. [10.13]  *See also* Deposition of Timothy Sheppard, March 30, 2012, p. 150. [13.3]

[550] Conversation with Dongyul Choi, April 15, 2012.

[551] The Manufacturing section includes data for SEC Korea, SEHZ, and TSTC, the latter two of which are the Chinese manufacturing subsidiaries.  *See* Deposition of Jaehwang Sim, March 10, 2012, p. 114. [4.5]

[552] Deposition of Jaehwang Sim, March 31, 2012, pp. 241-242, 261. [13.4]  *See also* Deposition of Timothy Sheppard, March 30, 2012, pp. 147-148. [13.3]

[553] Davis 2018 Report, pp. 62-64. [2.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Dongyul Choi, a Manager in the Finance Team for the Mobile Business Unit at SEC, to gain a better understanding of the costs included in the different expense categories.

360.   The largest cost category for SEC is the cost of goods sold for the accused products.   Based on my conversation with Mr. Choi, I understand that the COGS expense includes direct expenses, such as direct labor and royalties, and indirect expenses, such as indirect manufacturing labor cost, manufacturing overhead, and utility costs.   These costs are necessary for the manufacture of the accused products and are therefore deductible expenses.

361.   As part of its calculation of the operating expenses (and COGS to a lesser degree), Samsung allocates expenses that are not directly related to a specific product. Samsung's financial witnesses have described that Samsung's allocation methodology follows a three-step allocation process.   Timothy Sheppard, STA's Vice President of Finance and Operations, describes the three-step process as follows:[554]

> First, any expenses that are incurred specifically with respect to a particular model are allocated to that model;
>
> Second, costs that are not specific to a given model are allocated to various cost centers. So, for example, the lease of a building will be allocated to various cost centers. If that allocation can be undertaken on the basis of usage, that method will be used. For example, if the sales team that works with Sprint takes up two thousand square feet of a four thousand square foot building, half of the rent will be allocated to that Sprint sales team. Alternatively, if the usage methodology is not practical, the revenue method will be used.
>
> The third and final step is to then take common cost centers, for example, the HR department or the accounting group and allocate those costs across devices.

362.   This allocation procedure is used in Samsung's ordinary course of business,[555] and is instituted as part of Samsung's monthly closing process.[556]   This type of allocation methodology is a reasonable method to allocate expenses.   I note that Apple's 30(b)(6) witness

---

[554] Declaration of Timothy Sheppard in Support of Samsung's Opposition to Apple's Motion for Rule 37(b)(2) Sanctions for Samsung's Alleged Violations of January 27, 2012 Damages Discovery Order, March 12, 2012, (hereafter, "Sheppard Declaration") p. 8. [4.2]   *See also* Deposition of Timothy Sheppard, February 29, 2012, pp. 60-64, 92-97, 99. [10.13]   *See also* Deposition of Jaehwang Sim, March 10, 2012, pp. 120-121, 134-137. [4.5]
[555] Sheppard Declaration, p. 11. [4.2]
[556] Deposition of Timothy Sheppard, February 29, 2012, pp. 65-67, 96-98. [10.13]   Deposition of Timothy Sheppard, March 30, 2012, pp. 77-78. [13.3]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

on financial topics testified that Apple itself allocates the majority of its operating expenses by revenue.[557]

363.   Based on my conversation with Mr. Choi,[558] I understand that the different operating expense categories include:

- GA Expense – Labor Cost: General & Administrative Staff labor cost
- GA Expense – Depreciation: G&A Staff office supplies and depreciation cost
- GA Expense – Others: IT support cost, 3rd party service expense cost
- Sales Expense – Marketing: Advertising, promotion, and sales commissions
- Sales Expense – Paid Commission: Sales expenses related to 3rd party subcontractors[559]
- Sales Expense – Insurance: all Insurance Cost
- Sales Expense – Others: Sales personnel labor cost, transportation cost, service costs.
- R&D Expense – Labor Cost: R&D related labor cost[560]
- R&D Expense – Depreciation: R&D related equipment depreciation
- R&D Expense – Others: R&D material cost, 3rd party R&D costs.[561]

364.   Based on my discussions, these expenses are necessary for the sale or manufacture of the products found to infringe, and there is a clear nexus between the infringing products and the expense.  Further, Samsung has allocated these expenses to the products found to infringe using commonly used, reliable methodologies.  Therefore, I have concluded that all of these expenses are deductible expenses.

365.   One expense that I requested more information about is whether any litigation expense related to the current lawsuit is included in the expense data.  I received financial data that breaks out all the litigation expense that has been allocated to each accused product on a worldwide basis.[562]  Because the allocated lawsuit expense is a component of COGS, I effectively exclude litigation expenses from the deductible expenses by adding the litigation

---

[557] Deposition of Mark Buckley, February 23, 2012, p. 104. [5.2]
[558] Conversation with Dongyul Choi, April 15, 2012.
[559] Deposition of Jaehwang Sim, March 31, 2012, p. 251. [13.4]  *See also* Deposition of Jaehwang Sim, March 10, 2012, pp. 127-129. [4.5]
[560] Deposition of Jaehwang Sim, March 10, 2012, p. 138. [4.5]
[561] Deposition of Jaehwang Sim, March 10, 2012, p. 138. [4.5]
[562] Worldwide Litigation Expenses by Product. [9.26]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

expenses back into my Samsung's profits calculation, thereby increasing my calculation of profits.

366.    In summary, I have determined that all of the expenses in the Manufacturing section of Samsung's financial data are deductible expenses except the litigation expense that has been allocated to the accused products.

### (2)  STA's and SEA's Deductible Expenses

367.    The expense categories included in the financial data are identical between STA and SEA, and Timothy Sheppard verified that the expenses are reported in a similar fashion.[563] Therefore, I analyze the deductible expenses of STA and SEA together.   In my discussion below, I will refer to STA, but the SEA treatment is identical.[564]

368.    Similar to SEC, STA's largest expense is COGS.  I understand that the large majority of COGS is the transfer price from SEC to STA, but other expenses such as repair, inventory value adjustments, scrap, and physical inventory adjustments are also included in STA's COGS.[565]   Mr. Sim testified that "When it comes to COGS under STA, it includes purchase cost, purchase price for the products obtained from a manufacturer.  And there is also costs related to importing products, additional costs.  So you can consider this figure in COGS hundred percent direct cost."[566]

369.    Because STA's COGS are directly related to the sale of the accused products, STA's COGS are a deductible expense for the purpose of calculating STA's profit.  However, when calculating the consolidated profitability of SEC, STA, and SEA, the transfer price between SEC and STA is not a deductible expense because it is a cost to STA and revenue to SEC.  Therefore, I do not treat the transfer price as a deductible expense when calculating the profitability including SEC.  Even though there are expenses included in STA's COGS other than the transfer price, I do not make any deduction for these other COGS expenses.  Instead, I remove the entirety of STA's and SEA's COGS for the calculation of the consolidated profitability of SEC, STA, and SEA.

---

[563] Conversation with Timothy Sheppard, April 13, 2012.

[564] Conversation with Timothy Sheppard, April 13, 2012.  *See also* Deposition of Jaehwang Sim, March 31, 2012, p. 239. [13.4]

[565] Conversation with Timothy Sheppard, April 13, 2012.

[566] Deposition of Jaehwang Sim, March 31, 2012, p. 227. [13.4]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

370.    Based on discussion in Ms. Davis's report, I understand that Apple may contest that 100% of the transfer price is a deductible expense when calculating the profitability of STA and SEA.[567]   As Samsung's financial witnesses have explained, the transfer price is set based on an agreement between Samsung and the U.S. government.[568]   Mr. Sheppard testified that "the negotiation for the APA is really a three-party negotiation between the Korean IRS, the U.S. IRS and Samsung to say based on our economic activity, they hire economists, we hire economists, the Korean government hires economists and says based on the activity STA does, this is a fair and reasonable amount of profit that reflects the activity that STA is doing.   Based on that, that's how the tax is paid."[569]   I do not see any reason why an adjustment would need to be made to the transfer price.

371.    Based on my conversation with Tim Sheppard,[570] I understand that the different operating expense categories include:[571]

- GA Expense – Labor Cost: General & Administrative Staff labor cost (salaries, overtime, bonuses, benefits, etc.)

- GA Expense – Depreciation: All depreciation for fixed assets (computers, office equipment, etc.)

- GA Expense – Others: Travel expenses, telephone expenses, building expenses for accounting, IT, HR, facilities, legal, and management

- Sales Expense – Logistics Cost: Warehousing and freight (moving products)

- Sales Expense – Paid Commission: Primarily Temporary staff

- Sales Expense – Insurance: Property and general liability insurance

- Sales Expense – Others:  Travel expenses, telephone expenses, building expenses for sales cost centers

- Operating Expenses – Other: small miscellaneous items.

---

[567] For example, Ms. Davis criticizes a Samsung financial spreadsheet produced early in the case because it "did not reflect the consolidated profits of the company but a tax-based profit prepared using a transfer pricing model, which does not accurately reflect the total profits that Samsung earned on the sale of the products in the United States." (Davis 2018 Report, p. 65. [2.2])

[568] Deposition of Timothy Sheppard, January 24, 2012, pp. 21-22, 35, 62-63, 82-83, 115-116. [3.22]  *See also* Advance Pricing Agreement between Samsung Electronics America, Inc. and The Internal Revenue Service, S-ITC-007274461-476. [4.3]   *See also* Deposition of Timothy Sheppard, February 29, 2012, pp. 123-129. [10.13]

[569] Deposition of Timothy Sheppard, February 29, 2012, p. 126. [10.13]

[570] Conversation with Timothy Sheppard, April 16, 2012.

[571] The financial data includes a Sales Expenses – Marketing line, but the expenses are zero because SEC reimburses STA for marketing expense.  (Deposition of Jaehwang Sim, March 31, 2012, pp. 251-252. [13.4]  *See also* Deposition of Timothy Sheppard, March 30, 2012, p. 98. [13.3])

160

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

372.    Mr. Sheppard testified that STA is "primarily a sales organization."[572]

373.    Based on my discussions, these costs are necessary for the manufacture and sale of those products, and there is a clear nexus between the infringing products and the expense.  Further, Samsung has allocated these expenses to the products found to infringe using commonly used, reliable methodologies.  Therefore, I have concluded that all of these expenses are deductible expenses.

374.    In summary, I have determined that all of the expenses in the STA and SEA sections of the financial data are deductible expenses.

### c)    Calculation of Samsung's Entire Profits on the Accused Products[573]

375.    In my Original Report, I added up the revenue and expense line items across all months during the period for which the profit is calculated.[574]  Given that I have concluded that all expenses reported by Samsung in its financial spreadsheets are deductible expenses, the operating profit reported by Samsung summed in this manner (after adding back in litigation expenses) is my concluded Samsung's Entire Profits after deductible expenses.  I refer to this method of calculating profits as the "Summation Methodology," or "Summation Method."

376.    I note that this methodology would not provide a relevant metric of profit after deductible expenses for the worldwide data set upon which Ms. Davis based her damages calculations and upon which I based my "Tab 2" analysis in my Original Report.  This is because the worldwide data included in the "Manufacturing" section are the revenues and expenses of products sold worldwide.  Therefore, the operating profit reported in that section includes profits from phones that were not sold in the U.S. and therefore are not subject to this lawsuit.

377.    On the other hand, the "Manufacturing" section of the U.S. data upon which I rely for my analysis includes revenues and expenses limited to those products that were sold (or

---

[572] Deposition of Timothy Sheppard, January 24, 2012, p. 24. [3.22]

[573] In previous reports, I calculated profits using both the "Per Unit Methodology" and the "Summation Methodology."  At the second trial, I presented profits based on the Summation Methodology, and anticipated doing the same at the 2015 trial prior to the trial being stayed.  Given the Summation Methodology most accurately calculates profits for phones sold during the notice period, I believe that the summation methodology is the best methodology to calculate Samsung's Entire Profits, and I only summarize the Summation Methodology in the written report.  I have continued to calculate Samsung's Entire Profits using the Per Unit Methodology in my damages schedules at Volume 1, Tab 6 of my report, and I described the methodology used to calculate the Entire Profit using the Per-Unit Method in my prior reports.

[574] Tab 6 of Original Report, Schedule 5.5.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

were manufactured to be sold) in the U.S.   Therefore, the profit after deductible expenses calculated by summing the monthly operating profit for SEA, STA and SEC (and adding back in litigation expenses) is a relevant measure of Samsung's Entire Profits after deductible expenses tied to its sales in the United States.   Given the timing of SEC's sales to STA, followed by STA's sale to the customer, this methodology likely includes a small number of SEC's sales that had not yet been sold by STA to a carrier customer by June 30, 2012.

378.    Units of the Infuse 4G for which Apple was previously awarded lost profits in the Second Trial are removed from my calculation of Samsung's Entire Profits.   I understand that the District Court has confirmed that Apple was awarded 100% of the lost profits that it sought for the Infuse 4G at the Second Trial.   Apple was awarded lost profits on other products that infringed design patents, but those products infringed only the D'305 Patent, which has a notice date of June 16, 2011; therefore, the Total Profits calculation for those products does not overlap with the period for which Apple was awarded lost profits, so no adjustment is necessary to my calculation of Samsung's Entire Profits for these other products.   Therefore, I remove the units that Ms. Davis included as lost profits units for the Infuse 4G from my calculations.

379.    Although I have not had time to review her new calculations in detail, I understand that Ms. Davis has submitted an Amendment to her Opening Report which provides damages calculations excluding the units for which Apple was awarded lost profits as well.[575]

380.    I calculate Samsung's Entire Profits on Infuse 4G units previously awarded lost profits using STA and SEA operating profit, SEC operating profit and SEC litigation expense from April 15, 2011 to May 31, 2011 (the period for which the Infuse 4G was previously awarded lost profits). I estimate the portion of each entity's operating profits on units not previously awarded lost profits by multiplying a) STA operating profit by the share of STA units not previously awarded lost profits to total STA units and b) SEC operating profits by the share of STA units not previously awarded lost profits to total SEC units.   I apply the same method to estimate SEC litigation expense for units not previously awarded lost profits.   Additionally, I subtract these estimated amounts from profits on all units in the period to calculate profits on Infuse 4G units previously awarded lost profits. Samsung's Entire Profits are the sum of estimated STA operating profit, estimated SEC operating profit and estimated SEC litigation

---

[575] Amendment to Opening Expert Report of Julie L. Davis, CPA, January 24, 2018.

expense.[576] These amounts are then subtracted from Infuse 4G Entire Profits for the period April 15, 2011 to June 30, 2012.[577]

381.   My calculations of profits on the accused products after deductible expenses based on this summation methodology are as follows:

**Figure 47:  Samsung's Entire Profits after Deductible Expenses (Summation Methodology)[578]**



| Product | Entire Profit (4/15/11-6/30/12) | Entire Profit (6/16/11-6/30/12) | Entire Profit (Based on Infringed Patent w/ Earliest Notice Date) |
|---|---|---|---|
| Fascinate | | | |
| Galaxy S 4G | | | |
| Mesmerize | | | |
| Showcase / Galaxy S Showcase (i500) | | | |
| Vibrant | | | |
| Captivate | | | |
| Continuum | | | |
| Droid Charge | | | |
| Epic 4G | | | |
| Galaxy S II 2 (AT&T) | | | |
| Gem | | | |
| Hercules / Galaxy S II (T-Mobile) | | | |
| Indulge | | | |
| Infuse 4G | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | |
| **Samsung's Entire Profits After Deductible Expenses** | | | |
| **Samsung's Entire Profits After Deductible Expenses (Excluding Negative Amounts)** | | | |

**(1)   Alternative Entire Profits Calculation Excluding White Phones**

382.   I understand that Samsung sold three Galaxy S II phones with a white face.  The only design patent that these products were found to infringe was the D'677 Patent.[579]  As discussed in more detail above, Samsung contends that the AOM to which the D'677 Patent

---

[576] Schedule 4.16-4T [1.6]
[577] Schedule 4.2A-4T and 4.2B-4T. [1.6]
[578] Schedule 4.2A-4T. [1.6]
[579] Schedule 6.1-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

was applied is the "black, round-cornered, glass front face of each phone."[580]   This AOM is corroborated by Peter Bressler, Apple's expert for the D'677 Patent, who discussed an alternative, noninfringing design of using a non-black face in his September 30, 2011 declaration.[581]

383.    I have included below a figure showing the white version of the Samsung Galaxy SII:

**Figure 48:  Samsung Galaxy S II in White**[582]



384.    The white Galaxy SII depicted in the Figure above was released on April 28, 2011, as confirmed by Mr. Bressler's declaration.[583]

385.    Samsung sold non-infringing, white-faced versions of three products-at-issue prior to June 30, 2012: the Galaxy S II (T-Mobile), the Galaxy S II (Epic 4G Touch) and the

---

[580] Samsung's Second Supplemental Objections and Responses to Plaintiff Apple Inc.'s First Set of Interrogatories Regarding Article of Manufacture, Response to Interrogatory No. 1, December 21, 2017, p. 2. [21.5]

[581] Reply Declaration of Peter W. Bressler in support of Apple's Motion for a Preliminary Injunction, September 30, 2011, pp. 19-21. [16.17]

[582] T-Mobile, "Samsung Galaxy S II," <http://www.t-mobile.co.uk/common/img/products/phones/samsung/galaxy-s-ii-white/galaxy_s_ii_white_SC_large_second.jpg>, accessed July 12, 2013. [16.7]

[583] Phone Arena, "Samsung Galaxy S II Spec," <http://www.phonearena.com/phones/samsung-galaxy-s-ii_id5106>, accessed July 12, 2013. [16.8]  This is also confirmed by an Exhibit submitted by Apple (Reply Declaration of Peter W. Bressler in Support of Apple's Motion for a Preliminary Injunction, September 30, 2011, Exhibit 56. [16.17])

Galaxy S II (Skyrocket).[584] The only past trial in which the Galaxy S II products were at issue was the first trial. At that trial, Apple asserted several design IP elements against the Galaxy S II products:[585]

- Galaxy S II (T-Mobile):
  - Infringed – D'677
  - Not Infringed / Diluted - Registered iPhone Trade Dress, Unregistered iPhone 3G Trade Dress
- Galaxy S II (Epic 4G Touch):
  - Infringed – D'677
  - Not Infringed / Diluted - D'087 Patent, Registered iPhone Trade Dress, Unregistered iPhone 3G Trade Dress
- Galaxy S II (Skyrocket):
  - Infringed – D'677
  - Not Infringed / Diluted - D'087 Patent, Registered iPhone Trade Dress, Unregistered iPhone 3G Trade Dress

386. Given the breadth of design IP asserted against these products, and the fact that the D'677 Patent was the only design IP of which I'm aware being limited to the color black, the fact that Samsung started selling white versions of these phones at the end of 2011 was never an issue raised for trial. Indeed, given the number of design elements being asserted, attempting to consider every potential outcome of the jury's findings would be nearly impossible.

387. However, now that the jury has returned its verdict, and the damages for these phones are at issue again, I have calculated an alternative version of Samsung's Entire Profits excluding the white versions of these phones.

388. I calculate profits related to the white faced models of these three phones during the damages period to subtract from total Samsung profits. Samsung produced profit and loss data from SEC at the SKU level through Q2 2012, which contains information about the color of each product.[586] This SKU level data is discussed in detail by Mr. Kyuhyun Han.[587] These data contain SKU level finished product phone sales from the manufacturing entity to the U.S.

---

[584] Samsung's Second Supplemental Objections and Responses to Plaintiff Apple Inc.'s First Set of Interrogatories Regarding Articles of Manufacture, Second Supplemental Response to Interrogatory No. 1, p. 15. [21.5]

[585] Amended Verdict Form, August 24, 2012, pp. 6, 10-14. [5.9]

[586] SAMNDCA30010153_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx.

[587] Deposition Transcript of Kyuhyun Han, December 20, 2017, pp. 143-152. [23.7]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

entities STA and SEA.[588] Using this data, I understand the 9th and 10th letters of each product's model number (SKU) signifies the color of the model and, more specifically, the letters "ZW" refer to white models.[589]  In order to calculate profits on these models, I filter the SEC SKU level data for "ZW" models and report the profit and loss data in my damages schedules.[590]

389.    Samsung did not produce STA and SEA financials at the SKU level.  For the purposes of calculating profits related to white phones, I assume that STA sells an equivalent number of white phones as does SEC in each month that SEC sells a white phone.  Therefore, I estimate STA operating profit by multiplying STA operating profit for all colors by the ratio of SEC white units to STA units for all colors.[591]  I estimate STA white unit sales by multiplying SEC white unit sales by the ratio of STA units for all colors to SEC units of all colors.[592] Further, Samsung's SKU level production does not include litigation expense by model. I estimate SEC litigation expense for white units by multiplying SEC litigation expense for all colors by the ratio of SEC white units to SEC units for all colors.[593] Samsung's Entire Profits under the summation method for white phones equal estimated STA operating profits on white phones plus SEC operating profits on white phones plus estimated SEC litigation expense on white phones.

390.    Excluding white phones, my calculations of Samsung's Entire Profits on the accused products after deductible expenses are as follows:

---

[588] Deposition Transcript of Kyuhyun Han, December 20, 2017, pp. 149-150. [23.7]
[589] See Deposition Transcript of Kyuhyun Han, December 20, 2017, p. 135. [23.7]
[590] Schedule 34.2-4T, 34.3-4T, and 34.4-4T. [1.6]
[591] Schedule 34.2-4T, 34.3-4T, and 34.4-4T. [1.6]
[592] Schedule 34.2-4T, 34.3-4T, and 34.4-4T. [1.6]
[593] Schedule 34.2-4T, 34.3-4T, and 34.4-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 49: Samsung's Entire Profits after Deductible Expenses (Summation Methodology) – Excluding White Phones**[594]



| Product | Entire Profit (4/15/11-6/30/12) | Entire Profit (6/16/11-6/30/12) | Entire Profit (Based on Infringed Patent w/ Earliest Notice Date) |
|---|---|---|---|
| Fascinate | | | |
| Galaxy S 4G | | | |
| Mesmerize | | | |
| Showcase / Galaxy S Showcase (i500) | | | |
| Vibrant | | | |
| Captivate | | | |
| Continuum | | | |
| Droid Charge | | | |
| Epic 4G | | | |
| Galaxy S II 2 (AT&T) | | | |
| Gem | | | |
| Hercules / Galaxy S II (T-Mobile) | | | |
| Indulge | | | |
| Infuse 4G | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | |
| **Samsung's Entire Profits After Deductible Expenses** | | | |
| **Samsung's Entire Profits After Deductible Expenses (Excluding Negative Amounts)** | | | |

### 4. Total Profit Related to the Article of Manufacture To Which the Design is Applied[595]

391.    In this section, I discuss my calculations of the total profit related to the article of manufacture to which the design has been applied for each of the design patents at issue.  I discuss several approaches to determining the total profit related to the AOM, and provide damages calculations using each of these approaches.   In addition, I discuss several approaches that provide ceilings on the maximum profit attributable to the AOM, which corroborate the specific calculations that I have performed.  Finally, I conclude this section with a qualitative discussion of the importance of other features and functionalities of the phone

---

[594] Schedule 4.2B-4T. [1.6]

[595] As discussed above in footnote 573, I previously calculated profits using both the "Per Unit Methodology" and the "Summation Methodology."  I continue to calculate Samsung's Entire Profits using both methods in my damages schedules, but only present the Summation Method calculations in my report.  To minimize the number of specific damages calculations, I only calculate the Total Profits related to the Article of Manufacture to which the patented designs are applied using the Entire Profits based on the Summation Method.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

unrelated to the AOM at issue in this case, which also corroborates the specific calculations that I have performed.

### a)  Approaches to Calculate the Total Profit Related to the AOM

392.    I have identified several approaches to calculate the total profit related to the AOM, each of which I believe provides a reliable and reasonable estimate of the total profit related to the AOM.  I describe each of these approaches below, as well as the total profit related to the AOM that would be due based upon the approach. As I discuss below, some approaches allow a calculation of total profits related to the D'305 AOM only for the alternative that the AOM is the display screen, while others allow for a calculation of total profits related to the D'305 AOM for both alternatives (the D'305 AOM is the display screen while displaying the D'305 image or the D'305 AOM is the entire display screen).

393.    Further, the values for the D'087 AOM either completely overlap or largely overlap the value for the D'677 AOM.  Further, the D'087 Patent notice date (June 16, 2011) is later than the D'677 Patent (April 15, 2011).  Therefore, in terms of the total profits for all AOMs, the only contribution of the D'087 Patent (above and beyond the D'677 Patent) is the portion of the value that does not overlap the D'677 Patent.  Given the Court's request to break down damages by patent, I separately calculate the total profit related to the D'087 AOM that overlaps with the D'677 AOM and the total profit related to the D'087 AOM that does not overlap with the D'677 AOM.  Only the total profit related to the D'087 AOM that does not overlap with the D'677 AOM is included in my sum of total profit related to all AOMs.

### (1)  Survey Performed by Dr. David Reibstein

394.    David Reibstein, Ph.D., is an expert retained by Samsung to evaluate factors relevant to the article of manufacture, such as prominence of the designs at issue, as well as evaluate the usefulness of consumer surveys in assessing the value of the articles of manufacture identified in Samsung's interrogatory responses.[596]   As part of his work, Dr. Reibstein performed a survey that he describes as follows:[597]

> In part to address these limitations and (more directly) evaluate consumer perceptions regarding the importance of the Patents-in-Suit, I conducted the online customer survey discussed above that builds on and modifies

---

[596] Expert Report of David Reibstein, Ph.D., January 29, 2018 (hereafter, "Reibstein Report"), p. 1.
[597] Reibstein Report, pp. 98-99.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

the structure of the J.D. Power surveys. I designed and executed the survey to elicit responses directly as a way to evaluate the prominence of the designs of the Patents-in-Suit to the consumer smartphone purchase decision. As discussed above, such direct elicitation surveys can be used to investigate topics such as measuring customer satisfaction, emotions, attitudes, willingness to recommend, product/brand awareness, and purchase intent, and estimating product willingness to pay.

395.    Dr. Reibstein explained the advantages of his survey as follows:[598]

The survey I conducted yielded information that is useful in evaluating the value of the AOM, as set forth by Samsung in its interrogatory responses. The information from the survey that I conducted is more useful than the other third party surveys I analyzed because it drills down from the broader feature categories utilized by these other surveys. As discussed above, my survey design examined smartphone features and attributes at three levels. The features and attributes included at the first two levels were based primarily on features and attributes tested in the ████████. Among those second-level features included in the ████████ were three which I understand are of particular interest here: "Phone shape/type," "Color," and "Durability of phone" (within the first-level category of "Style/design") and "Easy to understand/navigate menu system" (within the first-level category of "Phone operation"). The framework of my survey extended three of these second-level features to a third-level that included as many as eight additional sub-features underneath each of "Phone shape/type," "Color," and "Easy to understand/navigate menu system."

396.    Dr. Reibstein explains that the weights calculated from his survey can be used to estimate value of different feature: "Based on the CSS approach I employed, I am able to determine the weight assigned to each second- and third-level feature by each individual Samsung respondent, as well as the average weight across all Samsung respondents. This provides useful information regarding the value of the patented designs and the AOM, as specified in Samsung's interrogatory responses."[599]

397.    Dr. Reibstein summarizes the average weight for each feature in his survey in Exhibit 14 of his report.  In my conversation with Dr. Reibstein, I confirmed that the average weights presented in his Exhibit 14 can be used to estimate the average value of different features.[600]

---

[598] Reibstein Report, pp. 112-113.
[599] Reibstein Report, p. 113.
[600] Conversation with David Reibstein, January 20, 2018. *See also* Reibstein Report, pp. 113-115.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

398.    Based on the features included by Dr. Reibstein, I use the following features in my analysis, along with his concluded overall weight attributed to each smartphone feature:[601]

- D'677 Patent:
  - Style/Design / Phone Shape/Type / Look, Feel, and Shape of the front of the phone (0.4%)
  - Style/Design / Color / All Colors (0.6%)
  - Style/Design Durability of Phone (2.1%)
  - Style/Design / Other (0.0%)
  - Total: 3.1%.
- D'087 Patent: Style/Design / Phone Shape/Type; Style/Design / Durability of Phone; and Style/Design / Other.
  - Style/Design / Phone Shape/Type / Look, Feel, and Shape of the front of the phone (0.4%)
  - Style/Design / Phone Shape/Type / Look, feel, and shape of the side / edges of the phone (0.3%)
  - Style/Design / Color / All Colors (0.6%)
  - Style/Design Durability of Phone (2.1%)
  - Style/Design / Other (0.0%)
  - Total: 3.4%.
- D'305 Patent (Display Screen While Displaying the D'305 Image): Phone Operation / Easy to Understand/Navigate Menu System / App Menu Screens (0.8%)
- D'305 Patent Alternative (Display Screen): Style/Design / Size and Quality of Display Screen (2.9%).

399.    I note that the sum of my values is slightly higher than that calculated by Dr. Reibstein,[602] likely due to rounding; I use the summed values above given they are broken down by feature.

400.    It should be noted that the inclusion of the entire value associated with the feature results in a conservative overstatement of the total profit related to the AOM.  For example, the AOM for the D'677 Patent and the D'087 Patent do not provide the entirety of the durability of the phone, or the value due to color.  For example, based on my conversation with Jin-Soo Kim, I understand that the window glass and display panel and the bezel contribute only a portion of the styling and durability of the accused smartphones. The rib design used by

---

[601] Schedule 3,2-4T and 3.3-4T. [1.6]
[602] Reibstein Report, pp. 113-115.

Samsung makes the smartphone strong and resists twisting of the phone.[603]   Therefore, these values should be considered the maximum total profit associated with the AOMs.  Nonetheless, I have used these values in my calculations because they are the most granular data available in this approach.

401.   To determine the total profit related to the AOM, I have applied the percentages summarized above to Samsung's Entire Profit on the infringing phones by design patent.

402.   Based on this approach, the total profit related to the article of manufacture to which the design is applied when the D'305 AOM is the display screen while displaying the D'305 Image is calculated as follows:

**Figure 50:   Total Profit Related to AOM – Dr. Reibstein's Survey (D'305 AOM: Display Screen While Displaying the D'305 Image)[604]**



403.   Alternatively, the total profit related to the article of manufacture to which the design is applied when the D'305 AOM is the display screen is calculated as follows:

---

[603] Conversation with Jin-Soo Kim on January 18, 2018.
[604] Schedule 3.2-4T. [1.6]

**Figure 51:  Total Profit Related to AOM – Dr. Reibstein's Survey (D'305 AOM is Display Screen)[605]**



| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

404.    When the total profit related to the article of manufacture to which the design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

---

[605] Schedule 3.3-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 52:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) – Dr. Reibstein's Survey (D'305 AOM: Display Screen While Displaying the D'305 Image)[606]**



| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

---

[606] Schedule 3.12-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 53:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) – Dr. Reibstein's Survey (D'305 AOM is Display Screen)[607]**

| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

---

[607] Schedule 3.13-4T. [1.6]

[608] J.D. Power: 2011 Wireless Consumer Smartphone Satisfaction Study(SM) Volume I - Management Report, March 2011, SAMNDCA10246338-445 at '343. [13.9] *See also* J.D. Power and Associates, 2012 Wireless Smartphone Satisfaction Study Vol. 1, March 2012, SAMNDCA30008512-628 at '517. [22.4]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

does Dr. Reibstein's survey, but it does not include any breakdown beyond this level.  I understand that Dr. Reibstein has opined that it would be reasonable to apply the third-level percentages from his survey and apply them to the second level features in the ███████████ ██████ top reason for purchase survey.[614]  Dr. Reibstein has performed these calculations in Exhibit 15 to his report, which I rely upon for my calculation of the total profits related to the D'305 AOM when the AOM is the display screen when the D'305 image is displayed.

410.    The specific reasons included in the March 2012 and September 2012 studies (and the general reason categories) are identical.  I use the following factors and attributes in my analysis:[615]

- D'677 Patent: Style/Design / Phone Shape/Type; Style/Design / Color; Style/Design / Durability of Phone; and Style/Design / Other.
- D'087 Patent: Style/Design / Phone Shape/Type; Style/Design / Color; Style/Design / Durability of Phone; and Style/Design / Other.
- D'305 Patent (Display Screen While Displaying the D'305 Image): Phone Operation / Easy to Understand/Navigate Menu System, broken down further to "App Menu Screens" by applying weights from Dr. Reibstein's survey.
- D'305 Patent (Display Screen): Style/Design / Quality of Display Screen.

411.    Summing the values determined by the ████████████████████████ for the reasons for purchase related to the AOMs results in the following estimates of the value of the AOM as a percentage of the entire phone:

---

[614] Reibstein Report, pp. 117-118.
[615] Schedule 36.3-4T and 36.4-4T. [1.6]

**Figure 54:  Summary of Value of AOM as % of Entire Phone – J.D. Power and Associates Survey of Reason for Purchase (D'305 AOM: Display Screen While Displaying the D'305 Image)[616]**



**Figure 55:  Summary of Value of AOM as % of Entire Phone – J.D. Power and Associates Survey of Reason for Purchase (D'305 AOM: Display Screen)[617]**



412.    Given there is a small sample warning for at least one of the general categories for the Samsung users,[618] I have also calculated the percentages for the study average in my schedules.  The study average results are generally similar to the Samsung user average.[619] Given the categories that warn of the small sample size do not include any of the specific reasons for purchase that I use to calculate the percentages above and the Samsung user

---

[616] Schedule 36.1-4T. [1.6]
[617] Schedule 36.2-4T. [1.6]
[618]

[619] Schedules 36.1-4T and 36.2-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

percentages are relatively close to the industry average, I use the percentages for the Samsung users in my calculation of total profit.

413.    It should be noted that the inclusion of the entire value associated with the reason for purchase results in a conservative overstatement of the total profit related to the AOM.  For example, the AOM for the D'677 Patent and the D'087 Patent do not provide the entirety of the durability of the phone, color, or the phone shape / type categories.  Based on my conversation with Jin-Soo Kim, I understand that the window glass and display panel and the bezel contribute only a portion of the styling and durability of the accused smartphones. The rib design used by Samsung makes the smartphone strong and resists twisting of the phone. For example, a lot of design is in the back of the smartphone where the hand holds the smartphone. This back must not be slippery or put stress on the hand when held.[620]  Therefore, these values should be considered the maximum total profit associated with the AOMs.  Nonetheless, I have used these values in my calculations because they are the most granular data available in this approach.

414.    To determine the total profit related to the AOM, I have applied the average percentage from the two studies that I calculate above based on Samsung users to Samsung's Entire Profit on the infringing phones by design patent.   Given the ██████████████ purchase that are related to the D'087 Patent AOM is a subset of the reasons for purchase for the D'677 Patent AOM, the two products that infringe the D'087 Patent also infringe the D'677 Patent, and the notice date for the D'087 Patent is after the notice date for the D'677 Patent, the D'087 does not add any additional value in this approach beyond the total profit that I calculate for the D'677 AOM.

415.    Based on this approach, the total profit related to the article of manufacture to which the design is applied is calculated as follows:

---

[620] Conversation with Jin-Soo Kim on January 18, 2018.

**Figure 56: Total Profit Related to AOM – J.D. Power and Associates Survey of Reason for Purchase (D'305 AOM: Display Screen While Displaying the D'305 Image)[621]**



|  | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
| Product | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| --- | --- | --- | --- | --- | --- |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

416.     Alternatively, the total profit related to the article of manufacture to which the design is applied when the D'305 AOM is the display screen is calculated as follows:

---

[621] Schedule 3.4-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 57: Total Profit Related to AOM – J.D. Power and Associates Survey of Reason for Purchase (D'305 AOM: Display Screen)[622]**



| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
| --- | --- | --- | --- | --- | --- |
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

417.    When the total related to the article of manufacture to which the design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

---

[622] Schedule 3.5-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 58:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) – J.D. Power and Associates Survey of Reason for Purchase (D'305 AOM: Display Screen While Displaying the D'305 Image)**[623]

| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

---

[623] Schedule 3.14-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 59:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) – J.D. Power and Associates Survey of Reason for Purchase (D'305 AOM: Display Screen)[624]**

| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |



### (3)  J.D. Power and Associates Model of Importance of Attributes

418.    J.D. Power and Associates has conducted Wireless Smartphone Satisfaction Studies to understand attitudes, experiences and behavioral characteristics of smartphone users and determine factors that impact customer satisfaction across smartphone user segments.[625]   In my prior reports, I used these studies to calculate the value of design of a phone as a percentage of the value of the phone, using studies dated March 2011 and

---

[624] Schedule 3.15.4T. [1.6]

[625] J.D. Power: 2011 Wireless Consumer Smartphone Satisfaction Study(SM) Volume I - Management Report, March 2011, SAMNDCA10246338-445 at '343. [13.9] *See also* J.D. Power and Associates, 2012 Wireless Smartphone Satisfaction Study Vol. 1, March 2012, SAMNDCA30008512-628 at '517. [22.4]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

November 2011.[626]



---

[626] J.D. Power: 2011 Wireless Consumer Smartphone Satisfaction Study(SM) Volume I - Management Report, March 2011, SAMNDCA10246338-445. [13.9] *See also* J.D. Power and Associates 2011 U.S. Wireless Mobile Phone Study Results Presentation Volume 2, November 14, 2011, SAMNDCA00282033-088. [13.7]

[627] ███████████████████████████████████████████████████

[628] J.D. Power and Associates 2011 U.S. Wireless Mobile Phone Study Results Presentation Volume 2, November 14, 2011, SAMNDCA00282033-088 at '035. [13.7]

[629]
[630]
[631]
███████████████████████████████████████████████████

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 60:  Smartphone Factors and Attributes[832]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



of attributes. Therefore, I calculate and apply Dr. Reibstein's weights for the category based on his calculations summarized in his Exhibits.[638]

424.

(and the general reason categories) are identical. I use the following factors and attributes in my analysis:[639]

- D'677 Patent: Style/Design / Phone Shape/Type; Style/Design / Color; Style/Design / Durability of Phone; and Style/Design / Other.
- D'087 Patent: Style/Design / Phone Shape/Type; Style/Design / Color; Style/Design / Durability of Phone; and Style/Design / Other.
- D'305 Patent (Display Screen While Displaying the D'305 Image): Phone Operation / Easy to Understand/Navigate Menu System, broken down further to "App Menu Screens" by applying weights from Dr. Reibstein's survey.
- D'305 Patent (Display Screen): Style/Design / Quality of Display Screen.

425. I include the same factors and attributes in my analysis of the

---

[635]

[636] Schedule 37.3-4T. [1.6]
[637] Reibstein Report, pp. 117-118.
[638] Schedule 37.3-4T and 37.4-4T. [1.6]
[639] Schedule 37.3-4T and 37.4-4T. [1.6]
[640] Schedule 37.3-4T and 37.4-4T. [1.6]



**Figure 61:  Summary of Value of AOM as % of Entire Phone –** ███████████ **Model of Importance of Attributes (D'305 AOM: Display Screen While Displaying the D'305 Image)[641]**

|  | Total Profit of AOM as Percent of Entire Phone Profit | | |
|---|---|---|---|
|  | Related to D'305 AOM | Related to D'677 AOM | Related to D'087 AOM |
| November 2011 / March 2012 | | | |
| September 2012 | | | |
| **Average** | | | |

**Figure 62:  Summary of Value of AOM as % of Entire Phone** ██████████████ **Model of Importance of Attributes (D'305 AOM: Display Screen)**

|  | Total Profit of AOM as Percent of Entire Phone Profit | | |
|---|---|---|---|
|  | Related to D'305 AOM | Related to D'677 AOM | Related to D'087 AOM |
| November 2011 / March 2012 | | | |
| September 2012 | | | |
| **Average** | | | |

426.   It should be noted that the inclusion of the entire value associated with these factors and attributes results in a conservative overstatement of the total profit related to the AOM.  For example, the AOM for the D'677 Patent and the D'087 Patent do not provide the entirety of the strength and durability or the styling of the wireless phone.

427.   Based on my conversation with Jin-Soo Kim, I understand that the window glass and display panel and the bezel contribute only a portion of the styling and durability of the accused smartphones. The rib design used by Samsung makes the smartphone strong and resists twisting of the phone. For example, a lot of design is in the back of the smartphone where the hand holds the smartphone. This back must not be slippery or put stress on the hand

---

[641] Schedule 37.1-4T. [1.6]
[642] Schedule 37.2-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

when held.[643]    Therefore, these values should be considered the maximum total profit associated with the AOMs.  Nonetheless, I have used these values in my calculations because they are the most granular data available in this approach.

428.    To determine the total profit related to the AOM, I have applied the average percentage from the two studies that I calculate above to Samsung's Entire Profit on the infringing phones by design patent.  Given the ██████████████████████ ████████████████████████████████████████  the two products that infringe the D'087 Patent also infringe the D'677 Patent, and the notice date for the D'087 Patent is after the notice date for the D'677 Patent, the D'087 does not add any additional value in this approach beyond the total profit that I calculate for the D'677 AOM.

429.    Based on this approach, the total profit related to the article of manufacture to which the design is applied is calculated as follows:

**Figure 63: Total Profit Related to AOM – ██████████████████████ Model of Importance of Attributes (D'305 AOM: Display Screen While Displaying the D'305 Image)[644]**

| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

---

[643] Conversation with Jin-Soo Kim on January 18, 2018.
[644] Schedule 3.6-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 64: Total Profit Related to AOM – ███████████████ Model of Importance of Attributes (D'305 AOM: Display Screen While Displaying the D'305 Image)[645]**

| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
| --- | --- | --- | --- | --- | --- |
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

430. When the total profit related to the article of manufacture to which the design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

---

[645] Schedule 3.7-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 65:  Total Profit Related to AOM (Excluding White Galaxy S II Phones)** █████████
█████████ **Model of Importance of Attributes (D'305 AOM: Display Screen While Displaying the D'305 Image)**[646]

| | Total Profit Related to the AOM | | | | |
| Product | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

---

[646] Schedule 3.16-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Figure 66: **Total Profit Related to AOM (Excluding White Galaxy S II Phones) –** ███████
███████ **Model of Importance of Attributes (D'305 AOM: Display Screen)**

| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
| --- | --- | --- | --- | --- | --- |
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

#### (4)  Component Cost Approach

431.    One of the three primary methods of valuation is the cost approach.[648]   Indeed, Ms. Davis (and Mr. Musika before her) uses the cost approach as one of the three approaches considered in her evaluation of a reasonable royalty in this matter.[649]

432.    Samsung lists the components that map to the AOM in SAMNDCA30000055.[650] Using SEC's bill of materials information,[651] it is possible to determine the cost (by month) of the components that make up the infringing smartphones.  I understand that the glass front face of the phone (or window glass) and the display screen (or display panel) are both components of

---

[647] Schedule 3.17-4T. [1.6]

[648] American Institute of Certified Public Accounts, Inc., "Valuation Services, VS Section 100," pp. 10-12, <https://www.aicpa.org/InterestAreas/ForensicAndValuation/Resources/Standards/DownloadableDocuments/SSVS_Full_Version.pdf>, accessed January 29, 2018. [24.29]

[649] Davis 2018 Report, pp. 81-82. [2.2]

[650] SAMNDCA30000055_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xls.

[651] SAMNDCA30000054_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xls. *See also* Deposition of Dongwook Kim, December 22, 2017, pp. 53-55, 62-73, 87-91. [23.5]

the display assembly, which is referred to as the assembly LCD (or "ASSY LCD") in SEC's bill of materials data. For example, Dongwook Kim testified that the display module is made up of multiple components, including the window (window glass), the display (display panel), the drive IC, and circuit boards.[652] Samsung has produced Specification for Approval documents for each ASSY LCD that list each of these components in detail.

433. In addition to the window glass and the display panel, the display assembly generally includes PCB assemblies.

434. In addition to the window glass and display panel components discussed above, the D'087 AOM also includes the bezel. I understand                        in Samsung's bill of materials data is the material that contains the bezel.[658] Similar to my analysis of other bill of material costs, I calculate the percentage that the                        makes up of the total material costs for each product found to infringe the D'087 by month.[659] I have included the                        materials and descriptions in my summary schedule.[660]

[652] Deposition of Dongwook Kim, December 22, 2017, p. 39. [23.5]
[653] Samsung Specification for Approval, SAMNDCA30002914-3282 at '2914-'2915. [23.8]
[654] Schedule 34.9-4T. [1.6]
[655] Schedule 38.9-4T. [1.6]
[656] Samsung Specification for Approval, SGH-I727, SAMNDCA30001452-555 at '453. [23.9]
[657] Schedule 38.9-4T. [1.6]
[658] SAMNDCA30000055_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xls. *See also* Schedule 38.9-4T. [1.6]
[659] Schedule 34.5-4T. [1.6]
[660] Schedule 38.9-4T. [1.6]

Highly Confidential - Attorneys Eyes Only - Subject to Protective Order

435. In my conversation with Sam Lucente, I confirmed that these different components (the ███████████ on the specification for approval documents and the bezel portion of the ███████ material) are the relevant components for the AOMs for the design patents at issue.[661]

436. Given the display assembly includes multiple components; I use two different sources to split the display assembly into its component parts. The first source I use is data produced by Samsung Display Co. ("SDC") on the material costs of the display assembly itself to split the display assembly into its component parts. The second source I use is data produced by STA relating to its purchases of window glass for use in its repair process. I discuss the data and calculations for each method in turn.

### (a) Component Cost Approach Calculated Using SDC Data

437. Samsung Display Co. Ltd. ("SDC") provided data specific to each of the material costs that comprise an ASSY LCD.[662] Hyangsook Park, a principal professional at SDC, submitted a declaration that verified the data, in which she describes the data produced by SDC:[663]

> SDC000001 is a true and correct copy of a Bill of Materials spreadsheet detailing certain materials costs for the time period April 2011 to April 2012, which was created on December 5, 2017 by myself and based on data maintained by SDC in the ordinary course of its business, as a regular practice of SDC's manufacture and sale of display modules for smartphones.

438. To confirm my understanding of the data and to ensure I was interpreting the data correctly, I spoke with Ms. Park and confirmed the following:[664]



---

[661] Conversation with Sam Lucente, January 29, 2018.

[662] SDC000001_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx.

[663] Declaration of Hyangsook Park Regarding Authenticity of Samsung Display Co. Ltd. Document, December 22, 2017, p. 2. [24.25]

[664] Conversation with Hyangsook Park, December 22, 2017.

Highly Confidential - Attorneys' Eyes Only - Subject to Protective Order



440.   To calculate the cost of the window glass and the display panel as a percentage of the cost of the phone, I first calculate the percentage that the display assembly material cost represents of the entire phone material cost in SEC's bill of materials, then multiply that percentage by the percentage that the window glass and the display panel material cost represent of the display assembly material cost.[667]  For the first step, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I use the weighted average of the cost percentages by month, weighted by the units sold by SEC.[668]



441.

---

[665] SAMNDCA30000055_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xls.

[667] SEC's bill of materials reports material costs at the SKU level by month (i.e.,, there are multiple material costs per product for each month). I calculate the simple average material cost across SKUs for each product to get one average material cost for each product in each month. (Schedule 34.6-4T, 34.7-4T, and 34.8-4T. [1.6])

[668] Schedule 34.4-4T and 34.5-4T. [1.6]

[665]

[670]

[671]

[672] Schedule 38.9-4T. [1.6]

[673] Mr. Kim was asked about row 250 of SEC's bill of materials data, which relates to material "GH96-04658A." (Deposition of Dongwook Kim, December 22, 2017, pp. 88-90. [23.5] See also SAMNDCA30000054_HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY.xlsx, tab "BOM Data.")

193

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

███████████████████████████████████████████████████████████████

███████████████████████████████   Therefore, I do not calculate any percentage for window glass for this product.  The Gem was not found to infringe the D'677 Patent,[675] therefore the window glass is not relevant to the total profits analysis for the Gem.

442.    Further, I understand that the Indulge display module (GH96-05012A) is also a ████████████████   ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ percentage of display panel of the entire display assembly using the percentage that I calculate for the Gem.

443.    Using the costs from these components in relation to all the costs in the bills of material for the infringing smartphones results in these percentages of the total cost of the infringing smartphones that is made up of the relevant Articles of Manufacture.

Figure 67:  Summary of Component Cost Approach Percentages Based on SDC Data (D'305 AOM: Display Screen)[677]

| Product | Percent of Entire Profits Related to the AOM | | |
|---|---|---|---|
| | D'305 | D'677 | D'087 |
| Fascinate | | | |
| Galaxy S 4G | | | |
| Showcase / Galaxy S Showcase (i500) | | | |
| Mesmerize | | | |
| Vibrant | | | |
| Captivate | | | |
| Continuum | | | |
| Droid Charge | | | |
| Epic 4G | | | |
| Galaxy S II 2 (AT&T) | | | |
| Gem | | | |
| Hercules / Galaxy S II (T-Mobile) | | | |
| Indulge | | | |
| Infuse 4G | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | |

---

[674] Deposition of Dongwook Kim, December 22, 2017, pp. 88-90. [23.5]
[675] Schedule 6.1-4T. [1.6]
[676] ███████████████████████████████████████████████████████████
[677] Schedule 38.1A-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

444.    To determine the total profit related to the AOM, I have applied the percentages summarized above to Samsung's Entire Profit on the infringing phones by design patent.  Given the window glass component is identical between the D'677 AOM and the D'087 AOM, the two products that infringe the D'087 Patent also infringe the D'677 Patent, and the notice date for the D'087 Patent is after the notice date for the D'677 Patent, the only additional value added by the D'087 AOM relates to the cost of the bezel.   Therefore, when I calculate the total profit related to the D'087 AOM, I calculate the value related to the bezel only, which then can be added to the total profit of the D'677 AOM.

445.    Based on this approach, the total profit related to the article of manufacture to which the design is applied is calculated as follows:

**Figure 68:  Total Profit Related to AOM – Component Cost Approach Based on SDC Data (D'305 AOM: Display Screen)[678]**



| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

446.    When the total related to the article of manufacture to which the design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

---

[678] Schedule 3.8-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 69:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) – Component Cost Approach Based on SDC Data (D'305 AOM: Display Screen)**[679]



| Product | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

*(b)  Component Cost Approach Calculated Using STA Data on Window Glass Purchases*

447.    Another approach to calculating the cost of the AOMs as a percent of total material costs is to use window glass replacement cost data produced by STA.[680]  These data report both monthly purchase and monthly usage (quantity and total cost in USD) for window glass materials used to repair or replace window glass in the 16 products-at-issue. Using the window glass material provided, I have confirmed that all but two of the window glass materials can be linked to specification for approval documents that list the same materials under "window," the window glass component of the display assembly.[681]  Using these material

---

[679] Schedule 3.18-4T. [1.6]

[680] SAMNDCA30010151.xlsx. *See also* Deposition of Dongwook Kim, December 22, 2017, pp. 77-85. [23.5]

[681] Schedule 38.9-4T [1.6] lists the window glass SEC materials in the specification for approval documents and Schedule 39.2-4T [1.6] lists the window glass materials from SAMNDCA30010151.xlsx. Two products, the Gem and Indulge, do not use the same material for the window glass as the other products-at-issue; all but one of the remaining materials can be linked to a specification for approval "window" material.

numbers, I have determined the STA window glass data reports material cost and purchase quantity of window-rigid components. Using the purchase data, I calculate the cost per unit for each window glass material, as well as the simple and weighted average cost per unit across window glass materials.[682] Since the STA repair data isn't available for all months in the damages period, I reviewed the cost per unit across the months of available data (which ranges from January 2012 through January 2013) to see if costs are changing over time. I also compare quarterly totals to identify any trends. Since the cost per unit remains relatively constant across the period for which data has been provided, I use the total cost per unit (January 2012 – January 2013) for the analysis.[683]  I have determined that the monthly usage data renders similar costs per unit and I rely on the purchase data for my AOM analysis, given it has more complete data.[684]

448.    Using the costs from these two components in relation to all the costs in the bill of materials for the infringing smartphones results in these percentages of the total cost of the infringing smartphones that is made up of the relevant Articles of Manufacture.

**Figure 70:  Summary of Component Cost Approach Percentages Based on STA Window Glass Data (D'305 AOM: Display Screen)**[685]

| Product | Percent of Entire Profits Related to the AOM | | |
|---|---|---|---|
| | D'305 | D'677 | D'087 |
| Fascinate | | | |
| Galaxy S 4G | | | |
| Showcase / Galaxy S Showcase (i500) | | | |
| Mesmerize | | | |
| Vibrant | | | |
| Captivate | | | |
| Continuum | | | |
| Droid Charge | | | |
| Epic 4G | | | |
| Galaxy S II 2 (AT&T) | | | |
| Gem | | | |
| Hercules / Galaxy S II (T-Mobile) | | | |
| Indulge | | | |
| Infuse 4G | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | |

---

[682] Schedule 36.2-4T and 36.3-4T. [1.6]
[683] See also Schedule 36.2-4T. [1.6]
[684] Schedule 36.1A-4T. [1.6]
[685] Schedule 34.1B-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

449.    To determine the total profit related to the AOM, I have applied the percentages summarized above to Samsung's Entire Profit on the infringing phones by design patent.  Given the window glass component is identical between the D'677 AOM and the D'087 AOM, the two products that infringe the D'087 Patent also infringe the D'677 Patent, and the notice date for the D'087 Patent is after the notice date for the D'677 Patent, the only additional value added by the D'087 AOM relates to the cost of the bezel.   Therefore, when I calculate the total profit related to the D'087 AOM, I calculate the value related to the bezel only, which then can be added to the total profit of the D'677 AOM.

450.    Based on this approach, the total profit related to the article of manufacture to which the design is applied is calculated as follows:

**Figure 71:  Total Profit Related to AOM – Component Cost Approach Based on STA Window Glass Data (D'305 AOM: Display Screen)[686]**



451.    When the total related to the article of manufacture to which the design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

---

[686] Schedule 3.9-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 72:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) – Component Cost Approach Based on STA Window Glass Data (D'305 AOM: Display Screen)**[687]



| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
| --- | --- | --- | --- | --- | --- |
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

**(5)**  **Survey of Smartphone Purchase Drivers**

452. 

453.    I understand that Dr. Reibstein has reviewed this survey, and it is his opinion that the survey "can also be used to assess the value of the features associated with the

---

[687] Schedule 3.19-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

AOM identified in Samsung's interrogatory responses."[690]  Therefore, I also use the percentages from the Nielsen survey to calculate a value for the total profit related to the AOM.

454.    Given the likely Q2 2012 timeframe for the survey, the '' group correlates with the damages period, so I have focused on the results for ███████████████████████████

455.    The study summarizes its results as follows:



456.    Amongst the purchase drivers listed, the driver that lines up most closely with the D'305 AOM is the ███████████████████████████

---

[690] Reibstein Report, pp. 115, footnote 425.  *See also* pp. 51-53.

[22.6]

200

—

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

████████████   This survey does not provide a method to directly value the D'305 AOM when the AOM is the display screen while displaying the D'305 image.

457.   It should be noted that the inclusion of the entire value associated with the "Design / Style / Form factor" for the D'677 and D'087 AOM likely results in a conservative overstatement of the total profit related to the AOM given that not all of the value of design / style / form factor derives from the D'677 and D'087 AOMs.  Therefore, these values are likely the maximum total profit associated with these AOMs.  Nonetheless, I have used these values in my calculations because they are the most granular data available in this approach.

458.   To determine the total profit related to the AOM, I have applied the percentages summarized above to Samsung's Entire Profit on the infringing phones by design patent.  Given the purchase drivers that are related to the D'087 Patent AOM and the D'677 Patent AOM are identical, the two products that infringe the D'087 Patent also infringe the D'677 Patent, and the notice date for the D'087 Patent is after the notice date for the D'677 Patent, the D'087 does not add any additional value in this approach beyond the total profit that I calculate for the D'677 AOM.

459.   Based on this approach, the total profit related to the article of manufacture to which the design is applied is calculated as follows:

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 74:  Total Profit Related to AOM - Nielsen Summary of Smartphone Purchase Drivers (D'305 AOM: Display Screen)[692]**



460.    When the total related to the article of manufacture to which the design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

---

[692] Schedule 3.10-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 75:  Total Profit Related to AOM (Excluding White Galaxy S II Phones) - Nielsen Summary of Smartphone Purchase Drivers (D'305 AOM: Display Screen)[693]**



| Product | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |
| Fascinate | | | | | |
| Galaxy S 4G | | | | | |
| Mesmerize | | | | | |
| Showcase / Galaxy S Showcase (i500) | | | | | |
| Vibrant | | | | | |
| Captivate | | | | | |
| Continuum | | | | | |
| Droid Charge | | | | | |
| Epic 4G | | | | | |
| Galaxy S II 2 (AT&T) | | | | | |
| Gem | | | | | |
| Hercules / Galaxy S II (T-Mobile) | | | | | |
| Indulge | | | | | |
| Infuse 4G | | | | | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | | | | | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | | | | | |
| **Samsung's Profits After Deductible Expenses** | | | | | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | | | | | |

### (6)  Conclusion with respect to approaches to calculate the Total Profits Related to the AOM

461.    As discussed above, I have used several approaches to calculate specific values for the total profits related to the AOMs for the design patents at issue.  The Figures below summarize the approaches (varying based on whether the D'305 AOM is either the display screen while displaying the D'305 image or the display screen, and based on whether white Galaxy S II phones are included or excluded).

---

[693] Schedule 3.20-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 76:  Summary of Total Profit Related to AOM (Including White Galaxy S II Phones) when D'305 AOM is the Display Screen While Displaying the D'305 Image**[694]

| | Total Profit Related to the AOM | | | | |
| Approach | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | Sum of Total Profit for All AOMs |
| --- | --- | --- | --- | --- | --- |

*Methods to Calculate Total Profit for All AOMs (D'305 AOM: Display Screen is Displaying the D'305 Image)*

Samsung's Profits After Deductible Expenses

Reibstein Survey

J.D. Power and Associates Survey of
Reason for Purchase
J.D. Power and Associates Model of
Importance of Attributes

Samsung's Profits After Deductible Expenses

Reibstein Survey

J.D. Power and Associates Survey of
Reason for Purchase
J.D. Power and Associates Model of
Importance of Attributes



---

[694] Schedule 3.1A-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 77:  Summary of Total Profit Related to AOM (Including White Galaxy S II Phones) when D'305 AOM is the Display Screen[695]**

| | Total Profit Related to the AOM | | | | |
|---|---|---|---|---|---|
| Approach | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | Sum of Total Profit for All AOMs |

***Methods to Calculate Total Profit for All AOMs (D'305 AOM: Display Screen)***

Samsung's Profits After Deductible Expenses

Reibstein Survey

Cost Approach Using SDC Cost Data

Cost Approach Using STA Replacement Cost Data

Summary of Smartphone Purchase Drivers

Samsung's Profits After Deductible Expense

Reibstein Survey

Cost Approach Using SDC Cost Data

Cost Approach Using STA Replacement Cost Data

Summary of Smartphone Purchase Drivers



---

[695] Schedule 3.1A-4T. [1.6]

205

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 78:  Summary of Total Profit Related to AOM (Excluding White Galaxy S II Phones) when D'305 AOM is the Display Screen While Displaying the D'305 Image** [696]

| Approach | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |

***Methods to Calculate Total Profit for All AOMs (D'305 AOM: Display Screen is Displaying the D'305 Image)***

Samsung's Profits After Deductible Expenses

Reibstein Survey



Samsung's Profits After Deductible Expenses

Reibstein Survey

---

[696] Schedule 3.1B-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 79:  Summary of Total Profit Related to AOM (Excluding White Galaxy S II Phones) when D'305 AOM is the Display Screen**[697]

| Approach | Total Profit Related to the AOM | | | | Sum of Total Profit for All AOMs |
|---|---|---|---|---|---|
| | D'305 | D'677 | D'087 Overlapping with D'677 AOM | D'087 Not Overlapping with D'677 AOM | |

*Methods to Calculate Total Profit for All AOMs (D'305 AOM: Display Screen)*

Samsung's Profits After Deductible Expenses

Reibstein Survey



Cost Approach Using SDC Cost Data

Cost Approach Using STA Replacement Cost Data
Summary of Smartphone Purchase Drivers

Samsung's Profits After Deductible Expens

Reibstein Survey

Cost Approach Using SDC Cost Data

Cost Approach Using STA Replacement Cost Data
Summary of Smartphone Purchase Drivers

462.    Based on my analysis and discussion above, and my conversation with Dr. Reibstein,[698] it is my opinion that Dr. Reibstein's survey provides the best indicator of value for the specific AOMs at issue, given that it provides the most granular level of features that are being valued.  However, all of the approaches above provide reasonable values for the total profits related to the AOMs to which the approaches are valuing.  For the approaches that value the D'305 AOM as a display screen, these values would provide an upper bound under that approach for the value of the D'305 AOM when displaying the D'305 image, given that the value

---

[697] Schedule 3.1-B-4T. [1.6]
[698] Conversation with David Reibstein, Ph.D., January 29, 2018.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

of a display screen would be higher than the value of that same display screen when displaying a particular image.

**b)   Corroborating Quantitative Evidence**



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



465.    The study summarizes its results for the U.S. respondents in the following pie chart:

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



466.

467.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

468.    Given this survey does not provide a value for all AOMs, and that it only provides a value for the alternative D'305 AOM being a display screen, I have included this approach as a corroborative analysis.  The percentage value calculated in this approach is similar to several of the other approaches that I've used to calculate the alternative D'305 AOM when it is the display screen.

469.    If this survey were to be used to calculate the total profit related to the D'305 AOM when the AOM is the display screen, the calculation would be as follows:

**Figure 81:  Total Profit Related to D'305 AOM – Strategy Analytics Survey (D'305 AOM: Display Screen)[704]**

| Product | Total Profit Related to the D'305 AOM |
|---|---|
| Fascinate | |
| Galaxy S 4G | |
| Mesmerize | |
| Showcase / Galaxy S Showcase (i500) | |
| Vibrant | |
| Captivate | |
| Continuum | |
| Droid Charge | |
| Epic 4G | |
| Galaxy S II 2 (AT&T) | |
| Gem | |
| Hercules / Galaxy S II (T-Mobile) | |
| Indulge | |
| Infuse 4G | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | |
| **Samsung's Profits After Deductible Expenses** | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | |

---

[704] Schedule 3.11-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

470.     When the total related to the article of manufacture to which the D'305 design is applied is calculated excluding the white Galaxy S II phones, the total profit is calculated as follows:

**Figure 82:  Total Profit Related to D'305 AOM (Excluding White Galaxy S II Phones) - Strategy Analytics Survey (D'305 AOM: Display Screen)**[705]



| Product | Total Profit Related to the D'305 AOM |
|---|---|
| Fascinate | |
| Galaxy S 4G | |
| Mesmerize | |
| Showcase / Galaxy S Showcase (i500) | |
| Vibrant | |
| Captivate | |
| Continuum | |
| Droid Charge | |
| Epic 4G | |
| Galaxy S II 2 (AT&T) | |
| Gem | |
| Hercules / Galaxy S II (T-Mobile) | |
| Indulge | |
| Infuse 4G | |
| Epic 4G Touch / Galaxy S II (Epic 4G Touch) | |
| Galaxy S2 Skyrocket / Galaxy S II (Skyrocket) | |
| **Samsung's Profits After Deductible Expenses** | |
| **Samsung's Profits After Deductible Expenses (Excluding Negative Amounts)** | |

471.     I note that because the Galaxy S II phones were not found to infringe the D'305 Patent, the Figure above (excluding white Galaxy S II phones) is the same as the prior Figure (including white Galaxy S II phones).



---

[705] Schedule 3.20-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



**(3)   iPhone versus iPod Touch Profit Comparison**



477.    Industry observers also described the iPod Touch as an iPhone without the phone.  For example, a September 2010 article chronologically lays out the evolution of the iPod from 2001 through 2010.[717]   An important year in the timeline was 2007, when Apple first introduced the iPod Touch, which the article described as follows:[718]

> Now coming to the most important iPod of the year, the iPod touch. The iPod touch was nothing more than the standard iPhone with the phone features such as calling and messaging stripped off. This means the iPod touch had an instant advantage over any media player out there. Not only could you play your music and movies on it, but also browse the web, check your mail, use Google Maps for navigation and install additional applications and games in future when Apple would start the applications service. This means the iPod touch was not just a media player but also a pocket computer and gaming device all in one.

---

[712] Schedules 8.5, 8.6, and 8.7. [1.6]
[713] Deposition of Stanley Ng, February 21, 2012, p. 38. [21.9]
[714] Deposition of Greg Joswiak, February 23, 2012, p. 60. [9.2]
[715] Email from Stanley Ng to Greg Joswiak, October 5, 2010, APLNDC0001867872-876 at '872. [20.16]
  See also Deposition of Stanley Ng, February 21, 2012, p. 141. [21.9]
[716] Email from Stanley Ng to Greg Joswiak, October 5, 2010, APLNDC0001867872-876 at '874. [20.16]
[717] "The Timeline of Apple iPod," TechTree.com, September 5, 2010. [20.17]
[718] "The Timeline of Apple iPod," TechTree.com, September 5, 2010. [20.17]

214

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

478.     A May 2013 review of the 4ᵗʰ generation iPod Touch compares the "Hardware Features" of the iPod Touch to the iPhone, stating that "[y]ou still can't make cell phone calls on the Touch, surf over a 3G connection, or receive a GPS signal, but the gap between the Touch and the iPhone is surprisingly small."[719]

479.     Therefore, a profitability comparison between these products provides a measure of the profit attributable to the iPhone's phone capabilities.  In this section, I first discuss the similarity between the AOMs that embody the design patents at issue between the iPod Touch and iPhone, then describe the comparison of profitability that I've calculated.

### (a)  The Display Screen (D'305 Patent)

480.     The screen on the iPod Touch and iPhone look similar to one another, and Apple has stated that both embody the D'305 Patent.  In its responses to an interrogatory asking Apple to identify the products that practice the patents-in-suit, Apple responded that the patented design of the D'305 patent is embodied in at least the original iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, and all generations of the iPod Touch.[720]

481.     Freddy Anzures, a designer in the Human Interface Group at Apple,[721] testified in his deposition



---

[719] CNET, "Apple iPod Touch (4th generation) review: Best iPod Value," May 30, 2013, <https://www.cnet.com/products/apple-ipod-touch-4th-generation/review/>, accessed January 23, 2018. [23.11]

[720] Apple Inc.'s Corrected Amended Objections and Responses To Samsung Electronics Co. LTD's Interrogatory Nos. 4, 6, 7,16, 17, 18 to Apple Inc., March 9, 2012, pp. 1-2. [22.12]

[721] Deposition of Freddy Anzures, October 18, 2011, p. 6. [21.10]

[722] Deposition of Freddy Anzures, October 18, 2011, pp.15-17. [21.10]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



482.    In September 2009, CNET published a review of the "Apple iPod Touch third generation" that discusses the similarity of the iPod Touch screen and the iPhone screen:[723]

> Just like its phone-wielding sibling, the iPhone, the iPod Touch is a touch-screen device with a glass-covered 3.5-inch screen that sports a 480x320-pixel resolution. In spite of its touch-screen interface, Apple includes a few physical buttons, including a slim volume control on the left edge, a hold switch on the top, and a home button on the face of the player, placed below the screen.

483.    It appears that the specs of the display screen are either very similar or identical to each other.  For example, the third generation iPod Touch and iPhone 3GS have very similar display screen specs to each other, as summarized in the Figure below:

---

[723] CNET, "Apple iPod Touch third generation review: Apple iPod Touch third generation," September 10, 2009, <https://www.cnet.com/products/apple-ipod-touch-third-generation/review/>, accessed January 23, 2018. [23.12]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 84:  Comparison of Third Generation iPod Touch and iPhone 3GS Display Screen Specs[724]**

| Type | Third Generation iPod Touch | iPhone 3GS |
| --- | --- | --- |
| Type | TN LCD | LCD |
| Number of colors | 262,144 colors | 16,777,216-color |
| Diagonal Size (inches) | 3.5 inches (52.0% screen-to-body ratio) | 3.5 inches (50.9% screen-to-body ratio) |
| Size (mm/in) | D (89 mm), H (74 mm), W (49 mm) | D (89 mm), H (74 mm), W (49 mm) |
| | | H (2.91 in), W (1.94 in) |
| Aspect ratio | 3:2 | 3:2 |
| Pixels Per Inch (PPI) | 163 | 163 |
| Color depth | 18 - Bit | 24 - Bit |
| Resolution | 480 x 320 px (HVGA) | 480 x 320 px (HVGA) |
| Contrast ratio | 200:1 | 200:1 |
| Pixel size | 156 µm | 156 µm |
| Backlight type | LED | LED |
| Luminance | | n/a |
| Multitouch | Yes | Yes |
| Protection | Corning Gorilla Glass, oleophobic coating | Fingerprint-resistant oleophobic coating |

484.   Similarly, the fourth generation iPod Touch and iPhone 4 also have very similar display screen specs to each other, as summarized in the Figure below:

**Figure 85:  Comparison of Fourth Generation iPod Touch and iPhone 4 Display Screen Specs[725]**

| Type | Fourth Generation iPod Touch | iPhone 4 |
| --- | --- | --- |
| Type | TN LCD | IPS LCD |
| Number of colors | 16,777,216-color | 16,777,216-color |
| Diagonal Size (inches) | 3.5 inches (54.0% screen-to-body ratio) | 3.5 inches (54.0% screen-to-body ratio) |
| Size (mm/in) | D (89 mm), H (74 mm), W (49 mm) | D (89 mm), H (74 mm), W (49 mm) |
| | | H (2.91 in), W (1.94 in) |
| Aspect ratio | 3:2 | 3:2 |
| Pixels Per Inch (PPI) | 326 | 326 |
| Color depth | 18 - Bit + FRC | 24 - Bit |
| Resolution | 960 × 640 px (DVGA) | 960 × 640 px (DVGA) |
| Contrast ratio | 800:1 | 800:1 |
| Pixel size | 78 µm | 78 µm |
| Backlight type | LED | LED |
| Luminance | 500 cd/m² max brightness | 500 cd/m² max brightness |
| Multitouch | Yes | Yes |
| Protection | Corning Gorilla Glass, oleophobic coating | Corning Gorilla Glass, oleophobic coating |

485.   Therefore, the D'305 AOM is either very similar or identical between the iPhone and the equivalent iPod Touch.

---

[724] Schedule 40.8-4T. [1.6]
[725] Schedule 40.9-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

*(b)   Front Face and Bezel (D'677 and D'087 Patent)*

486.    The front face and bezel of the iPod Touch and iPhone also look similar to one another.   As illustrated in the Figures below comparing the iPod Touch (on the left) to the iPhone (on the right), the front face of the first four generations of the iPod Touch and iPhone are almost identical in look and design to one another.

**Figure 86:  The 1st Generation iPod Touch (Left) and the Original iPhone (Right)[726]**

 

---

[726] EveryiPod.com, "iPod touch Q&A," updated August 21, 2013,
<https://everymac.com/systems/apple/ipod/ipod-faq/differences-between-ipod-touch-and-iphone.html>,
accessed January 23, 2018. [23.13] *See also* Macworld.com, "The original iPhone in photos: Looking
back on the iPhone that started it all," June 29, 2017,
https://www.macworld.com/article/3204152/apple-phone/original-2007-iphone-photo-
album.html#slide1, accessed January 26, 2018. [23.14]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 87:  The 2nd Generation iPod Touch (Left) and iPhone 3G (Right)[727]**



**Figure 88:  The 3rd Generation iPod Touch (Left) and iPhone 3GS (Right)[728]**



---

[727] EveryiPod.com, "iPod touch Q&A," Updated August 21, 2013,
<https://everymac.com/systems/apple/ipod/ipod-faq/differences-between-ipod-touch-2g-and-iphone-3g.html>, accessed January 23, 2018. [23.15]

[728] EveryiPod.com, "iPod touch Q&A," Updated August 21, 2013,
<https://everymac.com/systems/apple/iphone/iphone-faq/differences-between-iphone-3gs-ipod-touch-3g-late-2009.html>, accessed January 23, 2018. [23.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 89:  The 4th Generation iPod Touch (Left) and iPhone 4 (Right)[729]**



487.    The similarity of the look between the iPod Touch and the iPhone is something that was observed by many industry observers.

488.    Billboard wrote an article in September 2007, which describes the "iPod Touch" as follows:[730]

> What it is: A Wi-Fi-enabled, touch-screen carbon-copy of the iPhone in every way except it has no phone functionality. For the first time, users can search, browse, sample, buy and download music from the iTunes service directly from a portable device -- no computer needed. The company will release a software upgrade for the iPhone in the coming weeks to allow the same.

489.    CNET published an article in December 2008, titled the "Differences between the iPhone and IPod Touch", and while the article states some differences between the two devices, it discusses the "striking resemblance" to one another: "The newly introduced iPod Touch bears striking resemblance to the iPhone, aesthetically and functionally. It uses the same multi-touch screen, apparently runs a scaled down version of OS X that runs Safari and a YouTube

---

[729] EveryiPod.com, "iPod touch Q&A," Updated October 2, 2012, <https://everymac.com/systems/apple/iphone/iphone-faq/differences-between-iphone-4-4s-ipod-touch-4th-gen.html>, January 23, 2018. [23.17]
[730] "An Apple Christmas," Billboard, September 15, 2007. [20.18]

application, uses WiFi, has an accelerometer that allows the display to shift based on physical orientation, and uses the same "SpringBoard" interface to launch its applications."[731]

490.    It was not until the 5th generation of the iPod Touch that Apple really began to differentiate the look and design of the iPod Touch from the iPhone. In an October 2012 article from CNET titled, "iPod Touch: Hands-on with the almost-iPhone," the article states "[t]he new iPod Touch is a coming-out party. It looks slightly different from the new iPhone, deliberately so. There are bright color options, and a funky loop-shaped hand strap. The curved contours on the back have replaced the Touch's old shiny polished steel. The new Touch is made to stand out in a store and look different from an iPhone, and that's a good thing."[732]



---

[731] CNet," Differences between the iPhone and iPod Touch," December 5, 2008,
     <https://www.cnet.com/news/differences-between-the-iphone-and-ipod-touch/>, accessed January 23,
     2018. [23.18]
[732] CNet, "iPod Touch: Hands-on with the almost-iPhone," October 10, 2012,
     <https://www.cnet.com/products/apple-ipod-touch-5th-generation/preview/>, accessed January 23,
     2018. [23.19]
[733] Deposition of Fletcher Rothkopf, February 29, 2012, p. 7. [21.11]
[734] Deposition of Fletcher Rothkopf, February 29, 2012, pp. 13-15. [21.11]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



*(c)   Conclusion with respect to similarity of AOMs*

492.    Given that both the iPod Touch and iPhone have similar embodiments of the AOM, the difference in profitability of the two products is driven by factors other than the AOM, mainly the ability to make a telephone call or send a text message. Therefore, I have compared profits of the iPod Touch to the iPhone. The difference in profitability is a reasonable estimate of the amount of profitability due to the phone calling features and additional features (unrelated to the AOM) of the iPhone.

*(d)   Calculation of Profitability*



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



---

[736] Schedule 40.6-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 90:  Summary of Comparison of iPod Touch / iPhone US Profitability**[737]

| | Weighted Average for Entire Time Period | Weighted Average (FQ3 2011 through FQ4 2011) | Weighted Average (FQ3 2011 through FQ3 2012) |
|---|---|---|---|
| **iPod Standard Margin as Percentage of iPhone Standard Margin** | | | |
| US Profitabilty (Additional Expenses Calculated on a Percentage Basis) | | | |
| WW Profitabilty (Additional Expenses Calculated on a Percentage Basis) | | | |
| **iPod Operating Margin as Percentage of iPhone Operating Margin** | | | |
| US Profitabilty (Additional Expenses Calculated on a Percentage Basis) | | | |
| WW Profitabilty (Additional Expenses Calculated on a Percentage Basis) | | | |



497. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The U.S. profitability is the most relevant to this case.  As I discuss above, I have determined that all operating expenses are deductible expenses for Samsung; therefore, I believe the comparison of profitability at the operating profit level is the most appropriate comparison, as it takes into account all expenses that generate sales.

*(e)  Conclusion with respect to iPhone vs. iPod Touch Comparisons*



498. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

499.    In my opinion, this analysis corroborates the specific calculations of total profit that are calculated in the prior section.

[737] Schedule 40.1-4T. [1.6]

### (4)   Comparison of the Profit per Unit for Infringing Smartphones by Design Patent to the Least Profitable Infringing Smartphone

500.    Given that all infringing phones for a particular design patent incorporate an infringing AOM, the profit of the least profitable infringing smartphone that infringes that design patent can be considered the maximum profit that can be attributable to the AOM for that design patent. The additional profitability of the more profitable phones must be due to other features offered in these phones or other reasons unrelated to the AOM. I have analyzed the profit per unit for all of the smartphones that infringe the D'305 Patent and separately for the smartphones that infringe either the D'677 Patent or the D'087 Patent since only two smartphones were found to infringe the D'087 Patent (the Vibrant and the Galaxy S 4G) between May 1st 2010 and June 30, 2012.  I included the full period of sales in my analysis to make the profitability of the products the most comparable.

### (a)   Profit Comparisons for the D'305 Patent

**Figure 91:  Profit Comparison for D'305 Patent[738]**



Similar to the iPod Touch vs. iPhone comparison, even the Continuum has other features beyond the AOM, so this percentage is a conservative overstatement of the value of the AOM as a percentage of the entire phone.

(b)  *Profit Comparisons for the D'677 Patent and D'087 Patent*

**Figure 92:  Profit Comparison for D'677 Patent and D'087 Patent**[739]



503.   In addition to the calculations above, I also calculated these profit comparisons in an alternative way to confirm whether the sales cycle has a significant effect on the results of the profit comparison.   Specifically, for each of the D'305 Patent and the D'677 Patent, I determined the fewest number of months that a product could have been sold by the time that the financial data stops in June 2012.   For the D'305 Patent, this period is 15 months (based on

---

[739] Schedule 41.3-4T. [1.6]

████████████████ and for the D'677 Patent, this period is 9 months (based on ████████████████ I then performed the same profit comparison as above, but I only use data for the first X months that the product is being sold (where X is 15 months for the D'305 Patent and 9 months for the D'677 Patent).

504.    Below are the profit comparisons based on the first X months of sales.

**Figure 93:  Profit Comparison for D'305 Patent (First 9 Months of Sales)[740]**



Weighted Average Excluding Products with Negative Profits

**Figure 94:  Profit Comparison for D'677 Patent and D'087 Patent (First 15 Months of Sales)[741]**



505.    As can be seen in the Figures above, using the first X months of sales results in very similar (and slightly lower calculations).

---

[740] Schedule 41.4-4T. [1.6]
[741] Schedule 41.5-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### c)   Corroborating Qualitative Evidence

506.    There is a wide range of sources that discuss the importance of features and attributes in smartphones that are unrelated to the AOMs to which the patented designs are applied.  In this section, I discuss a range of such evidence that supports the importance of features unrelated to the AOMs at issue.

### (1)   Apple's discussion of features unrelated to the AOM in licensing discussions with Samsung

507.    Apple itself highlighted the value of other smartphone features, rather than industrial design, during its licensing discussions with Samsung.  During the October 5, 2010 meeting with Samsung, Apple presented a potential licensing framework.[742]  According to the presentation, an advanced mobile device would need to license three sets of technology: basic telephony, Apple computing technologies, and advanced iPhone technologies.[743]  Specifically, this framework was based on Apple's conclusion that "***Software*** creates the largest share of product value."[744]  (emphasis in original)  Apple further explained that "[o]perating system, applications, user interface, and services are the key to a ***differentiated customer experience***."[745]  (emphasis in original)  In fact, "[s]oftware [had] always been at the heart of Apple's business and intellectual property portfolio."[746]

508.    The evolution of Apple's devices saw both an increase in processing power and miniaturization, resulting in the iPhone and iPad line of products, which Apple characterized as "RF Mobile Computer[s]."[747]  Such "Mobile Computers rely upon several key technologies principally developed in the computing industry."[748]  The slide below, presented by Apple during the October meeting, specifically highlighted several of these "key technologies."[749]

---

[742] Deposition of Richard J. Lutton, Jr., July 26, 2011, p. 181. [14.7]

[743] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '893. [14.8]

[744] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '889. [14.8]

[745] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '889. [14.8]

[746] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '889. [14.8]

[747] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '890. [14.8]

[748] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '891. [14.8]

[749] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '891. [14.8]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

**Figure 95:  Key Technologies for Mobile Computing**



509.    These "[m]obile computers create more value for customers – and sell for more – by virtue of the additional technologies that enable them."[750]   By contrast, save for one sole slide,[751] Apple's presentation is devoid of any mention of the value of industrial design as a value driver for smartphones.

### (2)   Apple iPhone Buyer Surveys

---

[750] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '892. [14.8]

[751] Exhibit 11 to Lutton Deposition, Samsung-Apple Licensing Discussion, October 5, 2010, APLNDC00010886-903 at '898. [14.8]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



**(3) Marketing messages of OEMs during the damages period are unrelated to the AOMs at issue in the 2018 Trial.**

515.    Several documents produced by the parties discuss the marketing messages that Apple, Samsung, and other smartphone OEMs used by consumer; the marketing messages have no apparent connection to the AOMs at issue, providing further corroboration of

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

my quantitative calculations above.



516.    As indicated in the figure, none of the campaign messages appear to have any apparent connection to the AOMs at issue.

517.    An earlier Samsung presentation, dated December 2010, summarizes Apple's advertising messages over time, noting that Apple spent its "largest portion of its TV spending on the 'There's an App for that' campaign, which Samsung categorized as "App Store."[763] Samsung categorized Apple's campaigns under the categories Browse (iPhone), Speed (iPhone 3G), App Store (iPhone 3G and iPhone 3GS), Video (iPhone 3GS and iPhone 4), Multitask (iPhone 3GS and iPhone 4), and FaceTime (iPhone 4).[764]   None of these campaign messages appear to have any apparent connection to the AOMs at issue.

<hr />

[763] Samsung Mobile, "Apple iPhone TV Spending by Marketing Message," December 2010, SAMNDCA00235640-643 at '641. [9.16]

[764] Samsung Mobile, "Apple iPhone TV Spending by Marketing Message," December 2010, SAMNDCA00235640-643 at '641-642. [9.16]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

518.    Apple   recognized   that   Samsung's   advertising   was   providing   Samsung   a
competitive advantage.

520.



**(4) Discussion of importance of features unrelated to the AOMs at issue in the 2018 Trial**

*(a) Camera*



523.    According to a presentation by Samsung Design America, "taking pictures is considered to be of high importance to users who like to take pictures on the go and send them to their family & friends instantaneously."[776]

[770] 

[771] Deposition of Philip Schiller, February 17, 2012, p. 16. [23.21]

[772] Deposition of Stephanie Chen, March 8, 2012, p. 93. [12.24] See also Deposition of Philip Schiller, February 17, 2012, p. 88. [23.21]

[773] Email from Philip Schiller to James Vincent, January 31, 2013, APLNDC630-0001397337-338 at '338. [23.22]

[774] Camera Tops Feature Priority List for Next Phone Purchase, April 2012, SAMNDCA30008229-253 at '232. [23.10]

[775] Camera Tops Feature Priority List for Next Phone Purchase, April 2012, SAMNDCA30008229-253 at '233-234. [23.10]

[776] Users Mobile America 2010, Samsung Design America, April 15, 2010, SAMNDCA00221819-877 at '840. [8.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

*(b)  Android OS*

524.    Android OS, the operating system installed on the Samsung mobile phones at issue, is another important design element that is valued by consumers.  The Android OS was listed as one of the top "Likes" among users of the Captivate, Vibrant, Epic 4G, and Fascinate.[777]  A study by ChangeWave Research found that the Android OS was one of the top 3 reasons buyers chose their new Samsung smart phone.[778]

525.    The importance of Android OS is partly due to device OS loyalty among smartphone owners.  For owners of smartphones with Android OS, ██████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

526.    In the smartphone market, not only do customers seek a particular brand (e.g., Apple or Samsung) or model (e.g., iPhone or Galaxy S 4G), but also a particular operating system or platform.  In this case, there are two major platforms of relevance: Apple's iOS and Google's Android.

527.    A consumer considering the purchase of a smartphone may prefer a device that runs a particular platform, a theory that has been propounded by Samsung's and Apple's experts alike.[782]  This view, which postulates that a smartphone's operating system holds significant influence over an individual buyer's purchase decision, is also supported by many observers of the technology industry.  For example, a March 2011 Computerworld article proposed the following: "[i]f you're in the market for a new smartphone, choosing which one to

---

[777] Epic 4G and Fascinate User Experience Research, Samsung Mobile, SAMNDCA00237460-482 at '472. [24.1]  See also Captivate and Vibrant Customer Panels, Samsung Mobile, SAMNDCA00237483-509 at '493. [24.2]

██████████████████████████████████████████████████████

[782] Declaration of Michael J. Wagner in Support of Samsung's Opposition to Apple's Motion for a Preliminary Injunction, August 21, 2011, pp. 30-35. [5.33]  See also Musika Report, p. 32. [12.9]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

buy has as much to do with the operating system that runs the phone as with the hardware itself."[783]

528.    One explanation for consumers' preference for Android is that Android operators and manufacturers have spent significant advertising dollars on Android, which serves to elevate the importance of the Android platform to smartphone consumers. For example, an Apple presentation titled "Android Market Overview" and dated Q4 2010 notes that Android operators and handset manufacturers had a "[n]early 9 to 1 Spend Ratio over iPhone Advertising."[784]   This level of advertising for the platform, along with the Google brand, helps to create a branded platform that can compete with Apple's platform. The resulting preference for the Android platform means that many of the customers that select an Android smartphone would not consider a smartphone with a different operating system (such as the Apple's iOS).

529.    Another article, published in April 2011 by Business Insider, illustrated graphically certain consumer's preference for the Android operating system.  Specifically, Business Insider described a smartphone survey that indicated over 56% of respondents who already owned an Android would simply not buy an iPhone instead.[785]

---

[783] "Smartphone OS shootout: Android vs. iOS vs. Windows Phone," Computerworld, March 17, 2011, <http://www.computerworld.com/s/article/9214206/Smartphone_OS_shootout_Android_vs._iOS_vs._ Windows_Phone_?taxonomyId=mobile+and+wireless&taxonomyId=15>. [5.34]

[784] Android Market Overview, Apple Market Research & Analysis, CY10-Q4, APLNDC00004618-736 at '626. [11.23]

[785] "The Truth About Smartphones: Our Exclusive Survey on iPhone vs. Android," Business Insider, April 18, 2011, <http://www.businessinsider.com/smartphone-survey-results-2011-4?op=1>. [5.35]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



530.   The same survey indicated that over 38% of smartphone buyers considered platform the most important factor when choosing a particular smartphone.[786]   Respondents also chose platform as another important factor in choosing a smartphone close to 50% of the time.[787]

---

[786] "The Truth About Smartphones: Our Exclusive Survey on iPhone vs Android," Business Insider, April 18, 2011, <http://www.businessinsider.com/smartphone-survey-results-2011-4?op=1>. [5.35]

[787] "The Truth About Smartphones: Our Exclusive Survey on iPhone vs Android," Business Insider, April 18, 2011, <http://www.businessinsider.com/smartphone-survey-results-2011-4?op=1>. [5.35]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order





### (c)   Battery

531.     Battery Life is another attribute of smartphones that consumers consider important. 

532.     A Samsung presentation regarding Samsung's touch portfolio identified battery life as a 

533.     A Samsung presentation on customer survey results from March 2011 identified "Battery" as the top worst complaint for Samsung, Apple, and HTC, with a total complaint rate of 46%.[790]  Similarly, a study by  Consumers' complaints about the battery life on their smartphone suggest that it is one of the attributes they consider most important in a smartphone.

### (d)   Processor

534.     The processor in mobile phones is another important attribute to consumers.  A Samsung presentation that compares the Samsung ACME, a Samsung mobile phone, with the iPhone, claims that "users react well to the fast processor" and identifies this as a "cornerstone[] of performance for high value targets."[792]

535.     When the Galaxy S was launched, it was touted as having the "fastest processor."[793]  One of the four advertisements used to drive stronger interest in the Galaxy S was titled "Fastest Processor."[794]



[792] "Touch Portfolio Rollout Strategy Final Presentation," Samsung, December 17, 2008, SAMNDCA00191811-987 at '884. [21.7]
[793] On the road from Great to WOW, Samsung Telecommunications America, March 2010, SAMNDCA00257643-659 at '649. [24.3]
[794] Galaxy S, Samsung Mobile, SAMNDCA00234948-957 at '950. [24.4]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

### (e)   Wi-Fi

536.    A phone's Wi-Fi___33 capability is another important attribute for consumers. A

### (f)   GPS

537.    A phone's GPS capability is an important feature of smartphones for consumers.

538.    According to a presentation by Samsung Design America, the GPS feature is extremely important especially when users are in the car. For many users, phone Maps & Directions replace car GPS systems."[799]

### (g)   Memory

539.    A phone's memory is another important feature of smartphones for consumers. An article from CNET indicated that "for price sensitive consumers, getting a device with less storage is viable if they don't mind limiting and managing what they store on those devices."[800] As smartphone features continue to improve the demand for memory will increase among consumers. For instance, the article claims that as smartphone screen resolution gets better,



[799] Users Mobile America 2010, Samsung Design America, April 15, 2010, SAMNDCA00221819-877 at '840. [8.2]
[800] Marguerite Reardon, "How Much Storage Do I Really Need on My Smartphone?", CNET, November 9, 2012, <https://www.cnet.com/news/how-much-storage-do-i-really-need-on-my-smartphone/>, accessed January 20, 2018. [24.5]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

"there are more high definition movies, HD apps, and HD games for [the] phone."[801]   As cameras improve, "even storing photos and video […] taken on [the] smartphone will eat up a lot of storage."[802]

540.   Consumer demand for memory has also been identified for specific smartphones.   For example, a Samsung presentation on Post Launch Consumer Insights indicated that "low memory storage" was a top concern for the Galaxy S 4G smartphone.[803]   The demand for removable memory on smartphones further demonstrates the importance of memory to consumers.   Around the time when it was launched, the iPhone 4 was criticized for having no expandable memory.[804]   By contrast, a presentation on Motorola Droid research found that users identified "[t]he fact that it has removable memory unlike its direct competitor the iPhone and it included a 16GB card" as one of the strengths of the Motorola Droid.[805]

### (i)       Profit from additional memory based on iPhone

541.   Apple's iPhone demonstrates the profitability of memory in a smartphone. Historically, Apple sold its top model of iPhone with different levels of memory.   For example, Mr. Joswiak testified that as of February 2012, Apple's iPhone line consisted of the iPhone 3GS, the iPhone 4, and the iPhone 4S.[806]   The iPhone 3GS was available to AT&T customers on a two-year contract at no cost.[807]   Without a contact, the iPhone 3GS was priced at $399.[808]   The iPhone 4 costs $99 on a two-year contract and was available to AT&T, Verizon and Sprint customers.[809]   Without a contract, its price is $549.[810]   The iPhone 4S starts at $199 with a two-year contract, and is also available at $299 and $399, depending on memory capacity.[811] Without a contract, iPhone 4S's price starts at $649 and increases in hundred dollar increments

[801] Marguerite Reardon, "How Much Storage Do I Really Need on My Smartphone?", CNET, November 9, 2012, <https://www.cnet.com/news/how-much-storage-do-i-really-need-on-my-smartphone/>, accessed January 20, 2018. [24.5]

[802] Marguerite Reardon, "How Much Storage Do I Really Need on My Smartphone?", CNET, November 9, 2012, <https://www.cnet.com/news/how-much-storage-do-i-really-need-on-my-smartphone/>, accessed January 20, 2018. [24.5]

[803] Post Launch Consumer Insights Summary, Samsung Mobile, March 2011, SAMNDCA00027737-770 at '744. [8.8]

[804] STA PR – Daily Media Monitoring – iPhone 4 Launch, June 24, 2010, SAMNDCA00024755-784 at '755. [24.6]

[805] Motorola Droid Research Findings, Samsung Mobile, SAMNDCA00233817-837 at '833. [24.7]

[806] Deposition of Gregory Joswiak, Volume I, February 23, 2012, p. 243. [9.2]

[807] Deposition of Gregory Joswiak, Volume I, February 23, 2012, pp. 243-244. [9.2]

[808] Deposition of Gregory Joswiak, Volume I, February 23, 2012, p. 245. [9.2]

[809] Deposition of Gregory Joswiak, Volume I, February 23, 2012, p. 247. [9.2]

[810] Deposition of Gregory Joswiak, Volume I, February 23, 2012, p. 247. [9.2]

[811] Deposition of Gregory Joswiak, Volume I, February 23, 2012, p. 248. [9.2]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

to $849, depending on memory capacity.[812]   Mr. Joswiak also testified that the price to consumer of various models of the iPhone is very similar to the price of the same phones to carriers.[813]   Similarly, when the iPhone 4 was released, Apple sold a 16 GB version of the iPhone 4 and a 32 GB version of the iPhone for $100 more.[814]



---

[812] Deposition of Gregory Joswiak, Volume I, February 23, 2012, p. 248. [9.2]

[813] Deposition of Gregory Joswiak, Volume II, February 24, 2012, p. 451. [9.3]

[814] "Apple Presents iPhone 4," Apple Press Info, June 7, 2010, <http://www.apple.com/pr/library/2010/06/07Apple-Presents-iPhone-4.html>, accessed March 26, 2012. [5.19]

[815] GAAP Line of Business Reporting  iPhone, APL794-F0000008233-246 at '237-240. [22.7] *See also* GAAP Line of Business Reporting  iPhone, APLNDC-Y0000408220-223 at '220. [15.3] *See also* iPhone Summary, APLNDC0003149809-814. [15.6] *See also* FY12 iPhone Summary, APLNDC-Y0000408219. [15.14]

[816] Deposition of Gregory Joswiak, Volume II, February 24, 2012, p. 451. [9.3]

[817] 30(b)(6) Deposition of Tony Blevins, Volume I, December 17, 2017, pp. 133-135, 140. [21.1]

[818] 30(b)(6) Deposition of Tony Blevins, Volume I, December 17, 2017, pp. 125, 140. [21.1]

[819] 30(b)(6) Deposition of Tony Blevins, Volume I, December 17, 2017, pp 126-127. [21.1]

[820] 30(b)(6) Deposition of Tony Blevins, Volume I, December 17, 2017, pp. 127-128. [21.1]

[821] 30(b)(6) Deposition of Tony Blevins, Volume I, December 17, 2017, p. 128. [21.1]

[822] 30(b)(6) Deposition of Tony Blevins, Volume I, December 17, 2017, p. 130. [21.1]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



546.

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



**(5) Intellectual property in smartphones unrelated to the AOM**

548.    In addition to the functionalities that are important to consumers and unrelated to the AOMs, there is a significant amount of intellectual property in smartphones that is unrelated to the AOMs at issue in this case.  In this section, I discuss several categories of such intellectual property.

*(a) Standard Essential Patents on Communications Standards*

549.    There are many standard essential patents declared for communications standards used in smartphones, such 3G and 4G communications.  Each of the 3G and 4G communications standards has hundreds or thousands of patents declared as standard essential.

---

823 Schedule 42.1-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

550.    For example, in a study on the determinants of essential patent claims incompatibility standards, W-CDMA is identified as one of the most successful standards in telecommunications.[824] The article describes W-CDMA as follows:[825]



551.    The study included the latest available data set containing all patents declared by their owners as essential to the W-CDMA standard,[826] █████████████████████████████████████████████████████████████████████

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



---

[829] Fairfield Resources International, "Analysis of Patents Declared as Essential to GSM as of June 6, 2007," December 31,2007, SAMNDCA30011546-558 at '546. [24.9]

[830] El Sevier, Research Policy, "An empirical study on the determinants of essential patent claims in compatibility standards*," May 7, 2011, SAMNDCA30011468-482 at '469. [24.8]

[831] Fairfield Resources International, "Analysis of Patents Declared as Essential to GSM as of June 6, 2007," December 31,2007, SAMNDCA30011546-558 at' 552-553. [24.9]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order





"Evaluation of LTE Essential patents declared to ETSI," Version 1.0, December 2011, SAMNDCA30011516-545. [24.13]

841 Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 3.0, June 2013, SAMNDCA30011483-515 at '503. [24.12]  See also Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 1.0, December 2011, SAMNDCA30011516-545. [24.13]

842 Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 3.0, June 2013, SAMNDCA30011483-515 at '503. [24.12]  See also Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 1.0, December 2011, SAMNDCA30011516-545. [24.13]

843 Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 3.0, June 2013, SAMNDCA30011483-515 at '503. [24.12]  See also Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 1.0, December 2011, SAMNDCA30011516-545. [24.13]

844 Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 3.0, June 2013, SAMNDCA30011483-515 at '503. [24.12]  See also Cyber Creative Institute Co. Ltd, "Evaluation of LTE Essential patents declared to ETSI," Version 1.0, December 2011, SAMNDCA30011516-545. [24.13]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



---

[845] Fairfield Resources International, Inc., "Review of Patents Declared as Essential to LTE and SAE (4G Wireless Standards) Through June 30, 2009," January 6, 2010, SAMNDCA30011559-578 at '559. [24.14]

[846] Fairfield Resources International, Inc., "Review of Patents Declared as Essential to LTE and SAE (4G Wireless Standards) Through June 30, 2009," January 6, 2010, SAMNDCA30011559-578 at '559. [24.14]

[847] Fairfield Resources International, Inc., "Review of Patents Declared as Essential to LTE and SAE (4G Wireless Standards) Through June 30, 2009," January 6, 2010, SAMNDCA30011559-578 at '560, 569. [24.14]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order



Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

*(b) Apple's Design Patents Unrelated to the AOMs*

558.    Apple is in possession of many design patents that do not relate to the front face, bezel, or main screen of the iPhone.  Many of Apple's design patents cover the design of the Graphical User Interface for a display screen of specific mobile applications, such as the default calendar, calculator, and compass applications for the iPhone.[848]  There are also many patents assigned to Apple that relate to parts of the iPhone other than the front face or the bezel. These design patents relate to the design of various parts of iPhones, including the home button, the volume buttons and silent/ring switch on the side of iPhones, the lightning port receptacle on the bottom side of iPhones, the SIM card tray, and the rear camera.[849]

559.    The fact that Apple patented many different design aspects of the iPhone itself and different screens demonstrates that the AOMs at issue are only a portion of the value of the design of the entire phone.

*(c) Apple's Utility Patents Unrelated to the AOMs*

560.    Apple has asserted against third parties utility patents unrelated to the AOMs at issue.  The existence of these patents (and the fact that Apple was willing to assert them in litigation) provides further corroboration of value of other functionalities in smartphones unrelated to the AOMs at issue.

561.    As an example, I have researched the U.S. litigations and identified the U.S. patents that were asserted by Apple against HTC.  Apple has asserted a total of 32 different patents against HTC, four of which were also at issue in this litigation at some point of time and included in Ms. Davis's income approach in her reasonable royalty analysis.[850]  Therefore, Apple has asserted 28 patents against HTC that have not been at issue in this litigation, which is reflective of the broad scope of Apple's patent portfolio beyond the patents at issue in this lawsuit.

---

[848] US D618,248 S, SAMNDCA30011656-658. [24.15]  *See also*  US D621,845 S, SAMNDCA30011659-661. [24.16]  *See also* US D624,555 S, SAMNDCA30011665-667. [24.17]  *See also* US D625,733 S, SAMNDCA30011668-669. [24.18]  *See also* US D648,346 S, SAMNDCA30011670-671. [24.19]

[849] US D747,310 S, SAMNDCA30011721-732. [24.20]  *See also* US D763,253 S, SAMNDCA30011736-748. [24.21]  *See also* US D773,453 S, SAMNDCA30011749-758. [24.24]  *See also* US D789,926 S, SAMNDCA30011759-766. [24.22]  *See also* US D790,535 S, SAMNDCA30011767-783. [24.23]

[850] Schedule 27-NT. [1.6]

**(6) Evidence Indicating App Screen is Small Aspect of the Display Screen**

562.     I've reviewed two data points indicating that the app screen found to infringe the D'305 Patent is a relatively small aspect of the different images and uses made of a display screen.  First, I understand that Dr. Reibstein has performed a calculation that indicates at most between 1.8% and 2.4% of the time that smartphone users spend on their phone is spent navigating the app menus.[851]  Given that not all the time spent opening applications would involve the app screen,[852] this data suggests that smartphone users spend a very small fraction of their time on the app screen.

563.     Second, Samsung has produced a large number of files that discuss the different screens used for the GUI and system applications.  I have summarized these files at a high level at Schedule 45.1-4T at Volume 1, Tab 6 of my Report.  The high level categories that Samsung's documents cover include the calculator, daily briefing, Android widgets, quick panel, TMO widgets, music, camera and camcorder, clock, dictionary, eBook, email, instant messaging, call logs, media browser, memo, menu & homescreen (which includes the app screen), message, my files, phonebook, text input, unified messages, quick panel, and winset.[853]  The large number of screens included in these presentations, along with the wide range of system applications included on Samsung's phones, demonstrates the relatively limited value contributed by the D'305 image.

564.     Both of these data points corroborate the relatively small value that the D'305 AOM based on the display screen when showing the D'305 image makes up as compared to the alternative D'305 AOM based on the display screen.

**C.   Opinions Regarding Reasonable Royalty Rate**

**1.   Basic Framework for Calculating Reasonable Royalty Damages for Patent Infringement**

565.     The determination of damages for patent infringement is defined in Section 284 of U.S. Title 35, which states that "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  A

---

[851] Reibstein Report, pp. 96-97.
[852] Reibstein Report, p. 97.
[853] Schedule 45.1-4T. [1.6]

Highly Confidential – Attorneys' Eyes Only – Subject to Protective Order

Michael J. Wagner