# EXHIBIT 3
# Unredacted Version of Document Sought to Be Sealed

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1               UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                   SAN JOSE DIVISION
4
5    APPLE INC., a California        )
     corporation,                    )
6                                    )
             Plaintiff,              )
7                                    ) Case No.
        vs.                          ) 11-cv-01846-LHK
8                                    )
     SAMSUNG ELECTRONICS CO., LTD.,  )
9    a Korean business entity;       )
     SAMSUNG ELECTRONICS AMERICA,    )
10   INC., a New York corporation;   )
     SAMSUNG TELECOMMUNICATIONS      )
11   AMERICA, LLC, a Delaware        )
     limited liability company,      )
12                                   )
             Defendants.             )
13   _____
14
            HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
15
16        The deposition of JULIE DAVIS, VOLUME III taken
17   before Maria S. Winn, CSR, RPR and CRR, pursuant to
18   the Federal Rules of Civil Procedure for the United
19   States District Courts pertaining to the taking of
20   depositions, at Quinn Emanuel, 191 North Wacker
21   Drive, Suite 2700, Chicago, Illinois, commencing
22   at 9:56 a.m. on February 15, 2018.
23
24
25   Pages 1 - 162

                                              Page 1
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A    Yes, it does. | 10:18:47 |
| 2 | And thank you for including tabs. | 10:18:48 |
| 3 | Q    It does make it easier. | 10:18:50 |
| 4 | I'd like to call your attention to your | 10:18:53 |
| 5 | report on page 11, and particularly paragraph 19. | 10:18:56 |
| 6 | And you say four lines down, you say: | 10:19:10 |
| 7 | "I have also provided certain economic | 10:19:16 |
| 8 | and market-related analysis that provides | 10:19:18 |
| 9 | information relevant to one or more of the four | 10:19:21 |
| 10 | factors included in the Court's test for | 10:19:23 |
| 11 | determining the article of manufacture to which | 10:19:26 |
| 12 | Samsung applied Apple's patented designs." | 10:19:28 |
| 13 | Do you see that? | 10:19:32 |
| 14 | A    I do. | 10:19:32 |
| 15 | Q    Who asked you to do that analysis, an | 10:19:44 |
| 16 | analysis for information relating to the factors | 10:19:46 |
| 17 | pertaining to the article of manufacture? | 10:19:49 |
| 18 | A    I was asked to comment on those aspects | 10:19:53 |
| 19 | of the four factor test that were within the | 10:19:58 |
| 20 | scope of my expertise, and talk about how they | 10:20:02 |
| 21 | related to the opinions and conclusions formed by | 10:20:09 |
| 22 | Ms. Ball and -- Mr. Ball and Ms. Kare. | 10:20:14 |
| 23 | Q    Who asked you to do that? | 10:20:19 |
| 24 | A    Counsel for Apple. | 10:20:20 |
| 25 | Q    So to be clear, Ms. Kare did not ask you | 10:20:22 |

Page 21

| | | |
|---|---|---|
| 1 | to do that, correct? | 10:20:25 |
| 2 | A    Correct. | 10:20:26 |
| 3 | Q    And Mr. Ball did not ask you to do that, | 10:20:26 |
| 4 | correct? | 10:20:29 |
| 5 | A    That's right. | 10:20:29 |
| 6 | Q    And as far as you know, neither | 10:20:30 |
| 7 | Mr. Kare nor -- sorry.  Neither Ms. Kare nor | 10:20:33 |
| 8 | Mr. Ball relied on your analysis pertaining to | 10:20:36 |
| 9 | the four factors, correct? | 10:20:40 |
| 10 | A    I don't recall any reference in their | 10:20:43 |
| 11 | opening reports where they mentioned relying on | 10:20:45 |
| 12 | me for any aspect of their opinions. | 10:20:48 |
| 13 | As I said, Mr. Ball does reference my | 10:20:53 |
| 14 | opening report in his reply report, but that's | 10:20:56 |
| 15 | all I'm remembering specifically. | 10:21:00 |
| 16 | Q    Do you have any recollection of what | 10:21:03 |
| 17 | Mr. Ball references in his reply report from your | 10:21:05 |
| 18 | report? | 10:21:08 |
| 19 | A    I'd have to look back at his reply | 10:21:09 |
| 20 | report.  I don't recall the specifics. | 10:21:13 |
| 21 | Q    Is there any reason why you did not | 10:21:15 |
| 22 | provide to Ms. Kare or Mr. Ball your analysis | 10:21:22 |
| 23 | pertaining to the four factors that relate to the | 10:21:28 |
| 24 | article of manufacture, prior to their submitting | 10:21:34 |
| 25 | their initial reports? | 10:21:36 |

Page 22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A    I think they were forming their | 10:21:38 |
| 2 | conclusions on those four factors, based upon | 10:21:40 |
| 3 | their own expertise.  They were not relying upon | 10:21:42 |
| 4 | me for any aspect of those conclusions. | 10:21:47 |
| 5 | Q    Now, are you offering an opinion in this | 10:21:50 |
| 6 | case that the article of manufacture in the case | 10:21:53 |
| 7 | is the entire phone? | 10:21:55 |
| 8 | A    I'm relying upon Mr. Ball and Ms. Kare | 10:21:58 |
| 9 | for that opinion.  And then as I've described in | 10:22:02 |
| 10 | my report, I have identified evidence that I | 10:22:05 |
| 11 | think supports those opinions. | 10:22:11 |
| 12 | Q    Was it your assignment to identify | 10:22:13 |
| 13 | evidence that supports Ms. Kare and Mr. Ball's | 10:22:15 |
| 14 | opinions? | 10:22:19 |
| 15 | A    It was my assignment to identify | 10:22:20 |
| 16 | evidence that had something to do with the four | 10:22:22 |
| 17 | factor test, and I have done so in my report. | 10:22:24 |
| 18 | Q    And from that evidence, you were not | 10:22:30 |
| 19 | giving an opinion as to what the article of | 10:22:34 |
| 20 | manufacture is, correct? | 10:22:36 |
| 21 | A    I'm relying upon Mr. Ball and Ms. Kare | 10:22:38 |
| 22 | for an opinion as to what that article of | 10:22:42 |
| 23 | manufacture is.  I am merely referencing the fact | 10:22:44 |
| 24 | that the evidence that I identified supports | 10:22:49 |
| 25 | those opinions. | 10:22:52 |

Page 23

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      Q    So I want to be clear.                    10:22:53

 2           You said that you're relying on Mr. Ball  10:22:54

 3   and Ms. Kare for an opinion as to what the        10:22:57

 4   article of manufacture is.                        10:23:00

 5           Are you giving an opinion as to what the  10:23:01

 6   article of manufacture is?                        10:23:03

 7      A    I do not have an independent opinion as   10:23:04

 8   to what that article of manufacture is for any of 10:23:07

 9   the three design patents in this case.            10:23:10

10      Q    So what you're telling us is that the     10:23:13

11   purpose of your analysis is to offer analysis and 10:23:15

12   information that supports Ms. Kare's and          10:23:25

13   Mr. Ball's opinions regarding the identity of the 10:23:29

14   AOMs?                                             10:23:33

15           MR. OLSON:   Objection, form.             10:23:34

16      A    To be more clear, I think my discussion   10:23:35

17   in the report is focused on providing information 10:23:41

18   that I believe to be relevant to those factors.   10:23:43

19   That information and evidence that I cite         10:23:47

20   supports their conclusions about what the article 10:23:50

21   of manufacture is.                                10:23:53

22   BY MR. PRICE:                                     10:24:02

23      Q    Do you think it would have been           10:24:04

24   important for -- let me step back.                10:24:05

25           In your experience as an expert, do you   10:24:12
```

Page 24

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A     I agree that the cost reference -- or      02:28:48

 2    the cost value reference point was something I       02:28:49

 3    use in the forming a conclusion regarding the        02:28:51

 4    reasonable royalty.                                  02:28:55

 5        Q     And at line 13-and-a-half, you say:        02:28:58

 6              "Because the Federal Circuit determined    02:29:02

 7    that Apple's trade dress claims were not             02:29:05

 8    protectable, I asked SRR to remove trade dress       02:29:07

 9    from among the basket of intellectual property       02:29:13

10    rights included in the cost value reference          02:29:16

11    calculations contained in Exhibits 39S to 39.4S."    02:29:19

12              Do you see that?                           02:29:24

13        A     I do.                                      02:29:25

14        Q     And so we're clear, at the time you did    02:29:25

15    the original calculation, Apple was claiming that    02:29:37

16    Samsung infringed or diluted Apple's overall         02:29:39

17    trade dress for the iPhone.  Correct?                02:29:44

18        A     That's right.                              02:29:47

19        Q     It's got the look and feel of the          02:29:48

20    iPhone, correct?                                     02:29:51

21        A     Yes.                                       02:29:51

22        Q     And a court later determined that that     02:29:52

23    protection was not available to Apple.  Correct?     02:29:53

24        A     That's my understanding.                   02:29:56

25        Q     And you have seen instances in this        02:30:02
```

Page 138

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | case where Apple has asserted infringement or | 02:30:04 |
| 2 | dilution, and it has been determined that in | 02:30:08 |
| 3 | fact, Samsung did not infringe.  Correct? | 02:30:11 |
| 4 | A    Correct. | 02:30:15 |
| 5 | Q    In this case, now that the trade dress | 02:30:24 |
| 6 | claims are out of the case, you recalculated the | 02:30:25 |
| 7 | cost value reference point and it decreased by | 02:30:29 |
| 8 | 25 percent. | 02:30:33 |
| 9 | Correct? | 02:30:33 |
| 10 | A    Yes. | 02:30:34 |
| 11 | Q    And it's correct that that reduction, | 02:30:50 |
| 12 | 25 percent of the cost value reference point, did | 02:30:52 |
| 13 | not change your reasonable royalty rate at all. | 02:30:56 |
| 14 | Correct? | 02:31:00 |
| 15 | A    That is correct. | 02:31:00 |
| 16 | Q    In fact, you did not remove trade dress | 02:31:10 |
| 17 | from your income value reference point? | 02:31:12 |
| 18 | A    Trade dress was not a separate | 02:31:15 |
| 19 | calculation in the income value reference point. | 02:31:17 |
| 20 | Q    So to be clear, in your earlier report, | 02:31:22 |
| 21 | when trade dress was part of the case, your | 02:31:26 |
| 22 | income value reference point referred to design | 02:31:32 |
| 23 | patents, trade dress and trademarks. | 02:31:35 |
| 24 | Right? | 02:31:36 |
| 25 | A    That's right. | 02:31:39 |

Page 139

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q    And then in this case, in your report, | 02:31:39 |
| 2 | "value" refers to design patents and trademarks. | 02:31:45 |
| 3 | It has removed trade dress? | 02:31:49 |
| 4 | A    That's right. | 02:31:51 |
| 5 | Q    And that has made no difference | 02:31:52 |
| 6 | whatsoever in your income value reference point? | 02:31:53 |
| 7 | A    It does not. | 02:31:56 |
| 8 | Q    So why do you adjust down the cost | 02:32:08 |
| 9 | value reference point after removing trade dress | 02:32:11 |
| 10 | from the basket of intellectual property, but not | 02:32:12 |
| 11 | the income reference point? | 02:32:15 |
| 12 | A    Those two reference points are | 02:32:18 |
| 13 | calculated in different ways. | 02:32:20 |
| 14 | The cost value reference point included | 02:32:22 |
| 15 | the design-around time related to the trade | 02:32:24 |
| 16 | dress.  Design-around time related to trade dress | 02:32:30 |
| 17 | is not a factor that's considered in the income | 02:32:33 |
| 18 | value reference point. | 02:32:36 |
| 19 | Therefore, the removal of trade dress | 02:32:39 |
| 20 | from the calculation has no impact on the income | 02:32:42 |
| 21 | value reference point. | 02:32:46 |
| 22 | I think we discussed this at some length | 02:32:52 |
| 23 | in our 2015 deposition. | 02:32:56 |
| 24 | Q    Why is it that the removal of trade | 02:33:05 |
| 25 | dress has no impact on the income value reference | 02:33:08 |

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| 1 | point? | 02:33:12 |
| 2 | A   I'll show you.  Let me refer you to | 02:33:12 |
| 3 | Exhibit 41 of my opening report.  The calculation | 02:33:33 |
| 4 | begins on Exhibit 41.3S.  That "S" signifies it | 02:33:37 |
| 5 | has not changed since Mr. Musika's supplemental | 02:33:44 |
| 6 | report. | 02:33:49 |
| 7 | There is not a single line item on this | 02:33:49 |
| 8 | calculation that has anything to do with trade | 02:33:52 |
| 9 | dress separately. | 02:33:54 |
| 10 | Therefore, taking trade dress out of the | 02:33:58 |
| 11 | picture does not affect this calculation; | 02:34:00 |
| 12 | whereas, it did affect the cost value reference | 02:34:05 |
| 13 | point. | 02:34:07 |
| 14 | Q   Is there anything on 41.3S that -- a | 02:34:09 |
| 15 | single line item that has anything to do with | 02:34:16 |
| 16 | Apple's patents? | 02:34:20 |
| 17 | A   Patents? | 02:34:24 |
| 18 | Q   Patents. | 02:34:25 |
| 19 | A   Design patents? | 02:34:26 |
| 20 | Q   Yes. | 02:34:27 |

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1   ███████████████████████████████████   ████████

██   ██████████████   ████████

3      Q     It's your opinion that Apple would ask          02:38:13

4   for the same royalty amount, whether a Samsung          02:38:15

5   device used a single icon, or every icon, plus          02:38:19

6   the elements of the D'677 and '087 patents?             02:38:30

7      A     Say that again, please.                         02:38:35

8      Q     Let me ask it another way.                      02:38:36

9            If a company did a complete copy of the         02:38:47

10  iPhone, the exact same case, the same icons,            02:38:50

11  used the Apple name on the phone, what would the        02:38:55

12  reasonable royalty be for that complete knockoff?       02:39:06

13           MR. OLSON:   Objection to form.                 02:39:09

14     A     It's not a hypothetical I've considered.        02:39:10

15  That almost sounds like a criminal act.  It             02:39:13

16  sounds like that more than just a civil action.         02:39:16

17  BY MR. PRICE:                                            02:39:21

18     Q     Well, isn't your opinion that the              02:39:21

19  $24 royalty reflects the totality of Apple's            02:39:23

20  intellectual property?                                   02:39:30

21     A     No.  It is the royalty associated with         02:39:31

22  the use of any of Apple's design IP.  Apple does        02:39:38

23  not want anybody making and selling smartphone-s        02:39:46

24  that look like its iPhones.                              02:39:56

25     Q     Okay, so let me change the hypothetical.       02:39:58

                                              Page 144

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1            If someone made a phone that copied        02:40:00

2    Apple's design IP to the letter, and it had the    02:40:04

3    same icons, it had the same case design, it        02:40:11

4    had -- your understanding is that there were       02:40:15

5    other patents that Apple has on the design of its  02:40:17

6    iPhone.  Correct?                                  02:40:20

7        A    Yes.                                      02:40:22

8        Q    And it used every design that Apple had   02:40:25

9    patented.  So that in terms of design, it looked   02:40:27

10   like just the iPhone.                              02:40:32

11       A    Right.                                    02:40:35

12       Q    What would the royalty rate be?           02:40:35

13       A    Under this methodology, it would be $24.  02:40:38

14            But if that happened in the real world,   02:40:41

15   as we've discussed before, Apple would not         02:40:43

16   license that at all.                               02:40:45

17       Q    So let's take another hypothetical.       02:41:00

18   Assume a company made -- let's give you an          02:41:02

19   example.  Look at your report.                      02:41:25

20       A    Are you talking about the opening         02:41:30

21   report?                                            02:41:32

22       Q    Your reply report, page 14.               02:41:41

23            Do you see, there is a picture you have   02:41:56

24   there which you claim are the phones that Samsung  02:41:57

25   has been selling since the first quarter of 2010.  02:42:01
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Do you see that? | 02:42:04 |
| 2 | A    I do. | 02:42:04 |
| 3 | Q    Is it your understanding those are the | 02:42:05 |
| 4 | only phones they had been selling? | 02:42:06 |
| 5 | A    These are examples of the phones sold on | 02:42:08 |
| 6 | those dates. | 02:42:12 |
| 7 | So to be clear, it wasn't just in the | 02:42:12 |
| 8 | first quarter of 2010.  Also, it was earlier than | 02:42:13 |
| 9 | that, as the lead-in to the picture says. | 02:42:16 |
| 10 | Q    Okay.  And are these all the phones that | 02:42:20 |
| 11 | they had been selling, all the models? | 02:42:22 |
| 12 | A    No. | 02:42:25 |
| 13 | Q    Who picked these particular models as | 02:42:25 |
| 14 | compared to other ones? | 02:42:27 |
| 15 | A    I recall this to have been a | 02:42:30 |
| 16 | demonstrative used at trial. | 02:42:31 |
| 17 | Q    Who picked these?  Did you pick these? | 02:42:32 |
| 18 | A    No, this predates my involvement.  This | 02:42:35 |
| 19 | was used in the 2012 trial. | 02:42:37 |
| 20 | Q    So look at the Sunburst on the far | 02:42:39 |
| 21 | right, okay? | 02:42:45 |
| 22 | So let's assume Samsung made a phone | 02:42:48 |
| 23 | that looked like the Sunburst, okay, and on its | 02:42:52 |
| 24 | app page, like three menus in, it used one icon | 02:43:06 |
| 25 | that infringed the D'305 patent. | 02:43:16 |

Page 146

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | understanding is that the icon by itself does not | 02:44:21 |
| 2 | infringe, but the phone with that icon in it, on | 02:44:23 |
| 3 | it, infringes. | 02:44:26 |
| 4 | So I will accept that that's what you're | 02:44:27 |
| 5 | trying to set up in your hypothetical. | 02:44:30 |
| 6 | Q   Okay.  So we'll say that the phone looks | 02:44:32 |
| 7 | like the Sunburst, and that the, quote, phone | 02:44:34 |
| 8 | infringes because on the second menu page in that | 02:44:40 |
| 9 | phone, among 16 icons, there is one icon which | 02:44:45 |
| 10 | would infringe the D'305 patent. | 02:44:52 |
| 11 | Okay, are you with me so far? | 02:44:55 |
| 12 | MR. OLSON:  Objection to form. | 02:44:57 |
| 13 | A   Well, now you've added 16 icons.  That | 02:44:58 |
| 14 | strikes me that that infringes the other aspect | 02:45:02 |
| 15 | of '305, which is the 4 by 4 layout.  So it's | 02:45:06 |
| 16 | more than just an icon. | 02:45:10 |
| 17 | BY MR. PRICE: | 02:45:12 |
| 18 | Q   Are you saying that Apple -- you | 02:45:13 |
| 19 | infringe the D'305 patent if you have 16 icons on | 02:45:23 |
| 20 | an app screen and none of them have the square | 02:45:27 |
| 21 | containers around the icon? | 02:45:30 |
| 22 | MR. OLSON:  Objection to form. | 02:45:32 |
| 23 | A   I have no opinions on liability.  That's | 02:45:33 |
| 24 | not my understanding of what would infringe. | 02:45:36 |
| 25 | | |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. PRICE: | 02:45:39 |
| 2 | Q    Okay, so let me ask it this way. | 02:45:39 |
| 3 | Among these intellectual property | 02:45:46 |
| 4 | rights, that you say are part of the $24 royalty | 02:45:48 |
| 5 | rate, would be any trademarks relating to design. | 02:45:52 |
| 6 | Correct? | 02:45:55 |
| 7 | A    Yes. | 02:45:56 |
| 8 | Q    So assume that in this Sunburst Samsung | 02:46:01 |
| 9 | phone, on the second menu page, amongst a group | 02:46:08 |
| 10 | of icons, 10 to 14 to 16, whatever, there is one | 02:46:11 |
| 11 | icon that infringes an Apple trademark. | 02:46:16 |
| 12 | A    Okay. | 02:46:22 |
| 13 | Q    What's the royalty rate for that icon? | 02:46:24 |
| 14 | MR. OLSON:  Objection to form. | 02:46:26 |
| 15 | A    That's a hypothetical I haven't | 02:46:29 |
| 16 | considered, because that has nothing to do with | 02:46:30 |
| 17 | the facts of our case. | 02:46:32 |
| 18 | However, using this methodology, the | 02:46:36 |
| 19 | answer would be $24, because Apple doesn't want | 02:46:38 |
| 20 | anyone copying any aspect of its design IP, | 02:46:42 |
| 21 | including what you just described as a trademark | 02:46:45 |
| 22 | on a hypothetical Sunburst phone. | 02:46:48 |
| 23 | BY MR. PRICE: | 02:46:49 |
| 24 | Q    So under your analysis, an infringer | 02:47:00 |
| 25 | would pay the same $24 royalty to Apple if it | 02:47:02 |

Page 149

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | were copying all of Apple's IP, so that the phone | 02:47:06 |
| 2 | would look just like an iPhone.  It would pay the | 02:47:10 |
| 3 | same $24 royalty as it would pay if it were | 02:47:14 |
| 4 | making a product that looked nothing like the | 02:47:18 |
| 5 | iPhone, except that one of many icons infringed | 02:47:20 |
| 6 | an Apple trademark? | 02:47:23 |
| 7 | A    To be clear, if this were happening in | 02:47:26 |
| 8 | the real world, Apple would not license that at | 02:47:28 |
| 9 | all because it does not want anyone using its | 02:47:30 |
| 10 | design IP. | 02:47:36 |
| 11 | However, under the constraints of the | 02:47:38 |
| 12 | reasonable royalty analysis that we're asked to | 02:47:42 |
| 13 | consider under Georgia-Pacific, I believe the | 02:47:43 |
| 14 | answer would be $24. | 02:47:48 |
| 15 | Q    The same royalty? | 02:47:51 |
| 16 | A    Yes. | 02:47:52 |
| 17 | Q    Now, what's the basis of your opinion | 02:48:04 |
| 18 | that a company that made a phone that looked | 02:48:06 |
| 19 | nothing like Apple's except that it used a single | 02:48:11 |
| 20 | icon that infringed a trademark, what's the basis | 02:48:14 |
| 21 | for your opinion that that company would agree to | 02:48:16 |
| 22 | pay $24 for that? | 02:48:19 |
| 23 | A    Either they would pay $24 for that or | 02:48:26 |
| 24 | they would just stop using it because it's not | 02:48:29 |
| 25 | that important to them.  And that's probably the | 02:48:31 |

Page 150

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | outcome that Apple really wishes would happen, | 02:48:33 |
| 2 | because they don't want anybody out there selling | 02:48:36 |
| 3 | a phone that has those characteristics. | 02:48:38 |
| 4 | Q    Well, but assume a company has been | 02:48:42 |
| 5 | using an icon that infringes Apple's trademark | 02:48:44 |
| 6 | and has been doing it -- strike that. | 02:48:47 |
| 7 | Under a reasonable royalty analysis, and | 02:48:55 |
| 8 | under the Georgia-Pacific factors, you're trying | 02:48:58 |
| 9 | to look at the result of a negotiation between a | 02:49:03 |
| 10 | reasonable buyer and a reasonable seller; is that | 02:49:07 |
| 11 | fair? | 02:49:10 |
| 12 | A    Yes. | 02:49:10 |
| 13 | Q    Neither one can be unreasonable, | 02:49:18 |
| 14 | correct? | 02:49:20 |
| 15 | MR. OLSON:  Objection to form. | 02:49:21 |
| 16 | A    I'm not sure what unreasonable means, | 02:49:22 |
| 17 | but we're talking about a willing buyer and a | 02:49:24 |
| 18 | willing seller.  So we are required to assume | 02:49:26 |
| 19 | that Apple must license its IP even though it | 02:49:28 |
| 20 | doesn't want to. | 02:49:33 |
| 21 | BY MR. PRICE: | 02:49:35 |
| 22 | Q    And that Samsung must take a license? | 02:49:36 |
| 23 | A    Must take a license and must pay for the | 02:49:39 |
| 24 | IP, even though it doesn't want to. | 02:49:41 |
| 25 | Q    So in that situation, because Apple has | 02:49:46 |

Page 151

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   STATE OF ILLINOIS )
 2                     ) SS:
 3   COUNTY OF C O O K )
             The within and foregoing deposition of
 4   the aforementioned witness was taken before
     MARIA S. WINN, CSR, RPR and CRR, at the place,
 5   date and time aforementioned.
 6             There were present during the taking of
 7   the deposition the previously named counsel.
             The said witness was first duly sworn and
 8   was then examined upon oral interrogatories; the
     questions and answers were taken down in shorthand
 9   by the undersigned, acting as stenographer; and
10   the within and foregoing is a true, accurate and
11   complete record of all of the questions asked of
     and answers made by the aforementioned witness, at
12   the time and place hereinabove referred to.
      The signature of the witness was not
13   waived, and the deposition was submitted,
14   pursuant to Rule 30(e) and 32(d)4 of the Rules
     of Civil Procedure for the United States District
15   Courts, to the deponent per copy of the attached
16   letter.
             The undersigned is not interested in the
17   within case, nor of kin or counsel to any of the
     parties.
18             In witness whereof, I have hereunto set
19   my hand and seal of office this day, February 19,
     2018.
20
21
22
23
24        MARIA S. WINN, CSR, RPR and CRR
25   CSR No. 084-003784 - Expiration Date: May 31, 2019


                                        Page 162
```