# EXHIBIT 3

```
 1   such situation.                                        12:06:13
 2       Q   Are you aware of others -- strike that.         12:06:15
 3           Do you think that would be inappropriate        12:06:30
 4   to use surveys to apportion an SSPPU as part of a      12:06:32
 5   reasonable royalty analysis?                           12:06:37
 6           MR. OLSON:  Objection, form.                   12:06:39
 7       A   I don't think it would necessarily be          12:06:45
 8   inappropriate.  I think it depends upon the facts     12:06:46
 9   of the case and what those surveys are designed       12:06:48
10   to do and what exactly they report.                   12:06:51
11   BY MR. PRICE:                                          12:06:53
12       Q   Have you used surveys in conducting           12:07:00
13   damages analyses?                                     12:07:02
14       A   I believe I have used surveys that            12:07:04
15   reflect on extent of use of a particular patented    12:07:05
16   technology or method.                                 12:07:09
17       Q   And when you say surveys reflecting on       12:07:24
18   extent of use, what kind of surveys are you          12:07:26
19   talking about?                                        12:07:28
20       A   I believe I'm recalling surveys that         12:07:31
21   related to how often a doctor used a particular      12:07:35
22   method when he used a product that was accused of   12:07:40
23   infringement when that method was employed.          12:07:49
24       Q   Can you give me the specifics as to          12:07:53
25   product and what you were doing, so we can kind     12:07:55
```

Page 86

| | | |
|---|---|---|
| 1 | of -- so it's not just generic? | 12:07:57 |
| 2 | A   I don't remember enough of the | 12:08:09 |
| 3 | specifics, but it had to do with a treatment for | 12:08:10 |
| 4 | varicose veins and how a particular medical | 12:08:12 |
| 5 | device was used.  When used with one method of | 12:08:16 |
| 6 | treatment, it would be infringing; when used in | 12:08:25 |
| 7 | other methods, it would not be. | 12:08:28 |
| 8 | So therefore, in order to determine the | 12:08:31 |
| 9 | extent of use and the value attributable to that | 12:08:34 |
| 10 | use, I looked at surveys of the doctors who used | 12:08:41 |
| 11 | that patented method. | 12:08:48 |
| 12 | Q   Were these surveys that were conducted | 12:08:52 |
| 13 | specifically for that case? | 12:08:54 |
| 14 | A   I don't believe so. | 12:09:06 |
| 15 | Q   So what kind of surveys were they?  Who | 12:09:07 |
| 16 | did the surveys? | 12:09:09 |
| 17 | A   I recall them to have been white papers | 12:09:11 |
| 18 | written by other doctors or researchers in that | 12:09:13 |
| 19 | industry. | 12:09:21 |
| 20 | Q   Have you ever used J.D. Power surveys to | 12:09:30 |
| 21 | assist you in determining damages? | 12:09:34 |
| 22 | A   I have used them to provide qualitative | 12:09:35 |
| 23 | input, as I've discussed even in my own reports | 12:09:41 |
| 24 | in this case over the years.  I'm not currently | 12:09:46 |
| 25 | recalling any situation where I relied upon them | 12:09:49 |

Page 87

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | to provide quantitative input. | 12:09:53 |
| 2 |     MR. PRICE:  I think we've been going | 12:10:02 |
| 3 | another hour. | 12:10:03 |
| 4 |     Can we take another relief break -- | 12:10:04 |
| 5 |     THE WITNESS:  I'd be happy to finish out | 12:10:08 |
| 6 | this DVD. | 12:10:08 |
| 7 |     MR. PRICE:  Oh, lunch is also here, | 12:10:08 |
| 8 | actually, also. | 12:10:10 |
| 9 |     So we'll give you the same 40 minutes | 12:10:12 |
| 10 | you guys gave us, although you don't have to | 12:10:14 |
| 11 | walk as far. | 12:10:17 |
| 12 |     MR. OLSON:  Well, I think what she is | 12:10:18 |
| 13 | saying is, I think she would prefer to go | 12:10:19 |
| 14 | ahead and even, whether or not now or later, | 12:10:22 |
| 15 | but we should go ahead and finish out this | 12:10:26 |
| 16 | tape, is what I heard her say. | 12:10:28 |
| 17 |     MR. PRICE:  Well, the tape doesn't | 12:10:30 |
| 18 | define either my biological concerns or when | 12:10:32 |
| 19 | lunch appears, so... | 12:10:35 |
| 20 |     MR. OLSON:  Yeah, on the biological | 12:10:36 |
| 21 | question.  But I was going more to the lunch | 12:10:38 |
| 22 | question. | 12:10:40 |
| 23 |     MR. PRICE:  Oh. | 12:10:40 |
| 24 |     MR. OLSON:  So if you want to take a | 12:10:43 |
| 25 | break, and then we can come back on, and I | 12:10:44 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q   So assume that you have cost information | 12:40:43 |
| 2 | from a relevant and reliable source that could be | 12:40:49 |
| 3 | attributed to the specific components Samsung has | 12:40:53 |
| 4 | identified for each of the products over the | 12:40:59 |
| 5 | relevant period. | 12:41:02 |
| 6 | Are you with me so far? | 12:41:05 |
| 7 | A   I am. | 12:41:05 |
| 8 | Q   And you've told us that would be what | 12:41:09 |
| 9 | you would need to have sufficient cost | 12:41:11 |
| 10 | information. | 12:41:13 |
| 11 | A   And I believe I said revenue | 12:41:15 |
| 12 | information. | 12:41:16 |
| 13 | Q   Well, focusing on cost. | 12:41:17 |
| 14 | A   Okay. | 12:41:20 |
| 15 | Q   What I just said would be sufficient for | 12:41:20 |
| 16 | cost information, correct? | 12:41:23 |
| 17 | A   I believe so. | 12:41:27 |
| 18 | Q   So if you had that cost information, do | 12:41:30 |
| 19 | you believe there is a methodology you could use | 12:41:39 |
| 20 | to calculate damages from the sale of those | 12:41:43 |
| 21 | articles of manufacture? | 12:41:56 |
| 22 | A   In your hypothetical, what do I have for | 12:41:57 |
| 23 | revenue information to go with that cost | 12:41:59 |
| 24 | information? | 12:42:01 |
| 25 | Q   You just have revenue for the | 12:42:02 |

Page 100

```
 1   entire phone.                                        12:42:03
 2        A    All right.  Now that I have that your      12:42:10
 3   hypothetical in mind, ask me again what your         12:42:12
 4   question is.                                         12:42:15
 5        Q    So if you have cost information that you   12:42:15
 6   told us that you would need to have, and the only    12:42:17
 7   revenue information you had was revenue for the      12:42:23
 8   entire phone because these articles of               12:42:25
 9   manufacture were not sold separately, is there a     12:42:28
10   methodology you could use to calculate damages on    12:42:33
11   the sale of those articles of manufacture?           12:42:37
12        A    I don't know.  I think that's in part a    12:42:49
13   legal question, and absent further guidance from     12:42:51
14   this court or any other, I don't know the answer     12:42:54
15   to that question.                                    12:43:01
16        Q    Well, let's assume there is no more        12:43:01
17   legal guidance than what you know of.  I mean,       12:43:04
18   you initially said you would need revenue and        12:43:08
19   cost information for the articles of manufacture.    12:43:10
20             Correct?                                   12:43:15
21        A    Right.                                     12:43:15
22        Q    So I'm saying, assuming you have all the   12:43:18
23   cost information you need to make a reasonable       12:43:24
24   estimate as to the cost, and the only revenue        12:43:26
25   information you have is for sale of the              12:43:29
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | entire product. | 12:43:31 |
| 2 | And in that situation, is there a | 12:43:32 |
| 3 | methodology you can use to calculate damages on | 12:43:35 |
| 4 | the sale of the articles of manufacture? | 12:43:36 |
| 5 | A   Once again, I don't know what the legal | 12:43:45 |
| 6 | constraints would be, but absent any further | 12:43:47 |
| 7 | guidance, I would probably seek to allocate the | 12:43:50 |
| 8 | revenue from the entire smartphone in a manner | 12:43:55 |
| 9 | that is consistent with the cost of the article | 12:43:59 |
| 10 | of manufacture as compared to the total cost of | 12:44:07 |
| 11 | the product.  That's all based, of course, on | 12:44:09 |
| 12 | your hypothetical that I have sufficient relevant | 12:44:19 |
| 13 | data for cost. | 12:44:22 |
| 14 | Q   So how would you do that?  You have | 12:44:23 |
| 15 | adequate data for cost.  You said you would seek | 12:44:26 |
| 16 | to allocate the revenue for the entire smartphone | 12:44:30 |
| 17 | in a way that was consistent with the cost of the | 12:44:32 |
| 18 | article of manufacture compared to the total cost | 12:44:35 |
| 19 | of the product. | 12:44:37 |
| 20 | Would you take a percentage? | 12:44:38 |
| 21 | A   Yes.  Probably. | 12:44:40 |
| 22 | Q   And then what would you do with that | 12:44:42 |
| 23 | percentage of cost? | 12:44:44 |
| 24 | A   Absent any further information that | 12:44:45 |
| 25 | would suggest that the article of manufacture is | 12:45:01 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | by itself more or less profitable in some other | 12:45:02 |
| 2 | part of the phone, I would probably allocate | 12:45:06 |
| 3 | profits based upon that percentage. | 12:45:11 |
| 4 | Q    Now, do you agree that Mr. Wagner | 12:45:25 |
| 5 | attempted to do that type of allocation? | 12:45:27 |
| 6 | A    I do.  But he did not have the same | 12:45:30 |
| 7 | quality or quantity of cost data that you have | 12:45:32 |
| 8 | asked me to assume that I have in my | 12:45:34 |
| 9 | hypothetical. | 12:45:36 |
| 10 | Q    So that is your primary disagreement | 12:45:39 |
| 11 | with what he attempted to do, which is that he | 12:45:44 |
| 12 | didn't have sufficient cost information to come | 12:45:47 |
| 13 | to a reliable percentage? | 12:45:50 |
| 14 | A    He didn't have sufficiently reliable or | 12:45:59 |
| 15 | relevant data to use.  The overall methodology | 12:46:04 |
| 16 | would not be something that I would criticize. | 12:46:07 |
| 17 | Q    Do you agree that he had sufficient | 12:46:15 |
| 18 | revenue information? | 12:46:17 |
| 19 | A    Yes. | 12:46:20 |
| 20 | Q    So your criticism is the quality of the | 12:46:27 |
| 21 | cost information? | 12:46:29 |
| 22 | A    Yes, and quantity. | 12:46:29 |
| 23 | THE VIDEOGRAPHER:  Five minutes of tape | 12:46:36 |
| 24 | remaining. | 12:46:37 |
| 25 | | |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. PRICE: | 12:46:38 |
| 2 | Q    Would you call the methodology you | 12:46:38 |
| 3 | talked about an apportionment methodology? | 12:46:40 |
| 4 | A    I think of it as an apportionment | 12:46:43 |
| 5 | methodology. | 12:46:44 |
| 6 | Q    Do you think that the methodology that | 12:46:45 |
| 7 | you've talked about is the type of methodology | 12:46:47 |
| 8 | that the Court in this case has excluded? | 12:46:50 |
| 9 | A    That's not clear to me.  I'll have to | 12:46:54 |
| 10 | defer to the Court to provide that insight. | 12:46:58 |
| 11 |         MR. PRICE:  Okay, let's have lunch. | 12:47:02 |
| 12 |         THE VIDEOGRAPHER:  We are going off the | 12:47:04 |
| 13 |     record.  This is the end of Media Unit | 12:47:05 |
| 14 |     Number 2.  The time is 12:47 p.m. | 12:47:07 |
| 15 |             (WHEREUPON, a lunch recess was | 01:17:54 |
| 16 |               taken, after which the following | 01:17:54 |
| 17 |               proceedings were held:) | 01:17:54 |
| 18 |         THE VIDEOGRAPHER:  We are back on the | 01:30:58 |
| 19 |     record.  This is the beginning of Media Unit | 01:30:59 |
| 20 |     Number 3.  The time is 1:31 p.m. | 01:31:01 |
| 21 |         Please proceed. | 01:31:02 |
| 22 | BY MR. PRICE: | 01:31:04 |
| 23 | Q    Ms. Davis, the methodology we were | 01:31:05 |
| 24 | talking about, where you would allocate profits | 01:31:07 |
| 25 | based upon a percentage of costs, the AOM to | 01:31:11 |

Veritext Legal Solutions
866 299-5127

```
 1              Is there any other cases where you used         01:43:56
 2     a survey to assist you in calculating reasonable         01:43:58
 3     royalty?                                                 01:44:00
 4         A    That's the only one that I can recall           01:44:05
 5     that I would characterize as a survey.                   01:44:07
 6         Q    Have you ever used a J.D. Power survey          01:44:18
 7     in any of your damages work?                             01:44:20
 8         A    Yes.  As we talked about this morning,          01:44:22
 9     I have referred to observations made from                01:44:23
10     J.D. Power surveys as part of a qualitative              01:44:25
11     discussion.  I'm not currently recalling any             01:44:32
12     situation where I would have relied upon a               01:44:34
13     J.D. Power survey to quantify damages.                   01:44:36
14         Q    When you say qualitative, can you give          01:44:51
15     me an example of how you used the J.D. Power             01:44:52
16     survey?                                                  01:44:55
17         A    As I've discussed even in this case,            01:44:56
18     I talk about the J.D. Power survey in the                01:44:57
19     context of the importance of design, and the fact        01:45:00
20     that ██████████████████████████████████                  01:45:04
21     ██████████████████████████████████████                   01:45:09
22     ████████████████                                         01:45:12
23         Q    And how do you use that in supporting           01:45:15
24     your conclusions?                                        01:45:17
25         A    I talked about that in the context of           01:45:19
```

| | | |
|---|---|---|
| 1 | demand for the patented product, as well as the | 01:45:21 |
| 2 | reasonable royalty analysis. | 01:45:26 |
| 3 | Q    So did you use that in a qualitative | 01:45:36 |
| 4 | way to come to a conclusion about the relative | 01:45:38 |
| 5 | value of design versus other features of a | 01:45:44 |
| 6 | smartphone? | 01:45:47 |
| 7 | A    I don't think I would characterize it | 01:45:50 |
| 8 | as reaching a conclusion on relative value.  I | 01:45:51 |
| 9 | think I would characterize it more as an | 01:45:53 |
| 10 | observation related to the importance of the | 01:45:58 |
| 11 | technology, or in this case, the importance of | 01:46:00 |
| 12 | the design. | 01:46:04 |
| 13 | Q    And the importance compared to what? | 01:46:05 |
| 14 | A    To consumers as a reason to buy the | 01:46:10 |
| 15 | product if we're looking at motivation to buy and | 01:46:12 |
| 16 | the contribution that that patented technology or | 01:46:18 |
| 17 | design makes to the overall product. | 01:46:31 |
| 18 | Q    So you looked at the survey and ranking | 01:46:47 |
| 19 | of design to look at the motivation of the | 01:46:49 |
| 20 | consumer to buy the product.  Right? | 01:46:51 |
| 21 | A    I think so. | 01:46:57 |
| 22 | If we want to know specifically how I | 01:46:58 |
| 23 | used it, we should look at may report.  Because | 01:47:00 |
| 24 | I've referenced it a few times in the report and | 01:47:02 |
| 25 | we can tell exactly how it was used, if you want | 01:47:04 |

Page 114

| | | |
|---|---|---|
| 1 | to be specific. | 01:47:08 |
| 2 | Q    Well, you thought that looking at the | 01:47:09 |
| 3 | survey was a reasonable way to get an idea of the | 01:47:13 |
| 4 | contribution that the patented technology design | 01:47:18 |
| 5 | makes to the overall product, correct? | 01:47:21 |
| 6 | A    Those were the words I used.  I'm | 01:47:24 |
| 7 | thinking of it in terms of, what is the value of | 01:47:27 |
| 8 | that design, or the value of the patented | 01:47:30 |
| 9 | technology to the consumer. | 01:47:32 |
| 10 | So it leads to demand, if that's | 01:47:43 |
| 11 | something the consumer wants, and it also | 01:47:49 |
| 12 | reflects on various Georgia-Pacific factors for | 01:47:51 |
| 13 | the reasonable royalty analysis. | 01:47:54 |
| 14 | Q    Let me switch to something that might | 01:48:07 |
| 15 | be... | 01:48:08 |
| 16 | When a feature contributes to attracting | 01:48:31 |
| 17 | customers, that increase in demand will often | 01:48:34 |
| 18 | manifest itself in either revenue earned through | 01:48:37 |
| 19 | higher prices or greater quantity; is that right? | 01:48:43 |
| 20 | A    It can. | 01:48:47 |
| 21 | Q    Is it your experience that that's | 01:48:53 |
| 22 | generally -- there is generally a correlation | 01:48:54 |
| 23 | between a feature attracting a customer, would | 01:49:00 |
| 24 | lead to increased demand, which would then lead | 01:49:05 |
| 25 | to either higher revenue or greater quantity? | 01:49:08 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A    It depends upon what else the consumer | 01:49:13 |
| 2 | has to choose from.  If that individual is | 01:49:17 |
| 3 | looking at a selection where one product has it | 01:49:28 |
| 4 | and the other one doesn't, and that person wants | 01:49:32 |
| 5 | that feature, then that contributes to additional | 01:49:34 |
| 6 | revenues. | 01:49:35 |
| 7 | If it's a feature that's fairly | 01:49:36 |
| 8 | ubiquitous, because every -- in this case | 01:49:39 |
| 9 | smartphone has it, that's not going to reflect | 01:49:42 |
| 10 | any additional revenues, even though there is | 01:49:47 |
| 11 | demand for it. | 01:49:50 |
| 12 | So for example, every smartphone that | 01:49:52 |
| 13 | I know of sends and receives e-mails, and most | 01:49:59 |
| 14 | customers and consumers are probably not trying | 01:50:03 |
| 15 | to distinguish between smartphones based upon | 01:50:07 |
| 16 | that e-mail capability.  However, if it did not | 01:50:11 |
| 17 | have e-mail, then that would distinguish the | 01:50:14 |
| 18 | products, and the product that did, would have | 01:50:17 |
| 19 | greater revenues. | 01:50:21 |
| 20 | Q    In this case, in your royalty analysis, | 01:50:33 |
| 21 | one of the approaches you use is an income | 01:50:36 |
| 22 | approach, right? | 01:50:38 |
| 23 | A    Yes. | 01:50:39 |
| 24 | Q    And in that approach, do you look at the | 01:50:39 |
| 25 | demand for a patented feature? | 01:50:46 |

Veritext Legal Solutions
866 299-5127

```
 1   STATE OF ILLINOIS )
 2                     ) SS:
 3   COUNTY OF C O O K )
              The within and foregoing deposition of
 4   the aforementioned witness was taken before
     MARIA S. WINN, CSR, RPR and CRR, at the place,
 5   date and time aforementioned.
              There were present during the taking of
 6
 7   the deposition the previously named counsel.
              The said witness was first duly sworn and
 8   was then examined upon oral interrogatories; the
     questions and answers were taken down in shorthand
 9   by the undersigned, acting as stenographer; and
10   the within and foregoing is a true, accurate and
11   complete record of all of the questions asked of
     and answers made by the aforementioned witness, at
12   the time and place hereinabove referred to.
        The signature of the witness was not
13   waived, and the deposition was submitted,
14   pursuant to Rule 30(e) and 32(d)4 of the Rules
     of Civil Procedure for the United States District
15   Courts, to the deponent per copy of the attached
16   letter.
              The undersigned is not interested in the
17   within case, nor of kin or counsel to any of the
     parties.
18            In witness whereof, I have hereunto set
19   my hand and seal of office this day, February 19,
     2018.
20
21
22              [signature: Maria S. Winn]
23
24       MARIA S. WINN, CSR, RPR and CRR
25   CSR No. 084-003784 - Expiration Date: May 31, 2019
```

Page 162