ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
NATHAN B. SABRI (CA SBN 252216)
nsabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE MR. WAGNER'S TESTIMONY REGARDING APPORTIONMENT**<br><br>**FILED UNDER SEAL**<br><br>Date:   March 29, 2018<br>Time:   1:30 p.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh |

The Court should exclude Mr. Wagner's survey-based damages methodologies and "corroborating" evidence as unreliable and contrary to law.

### A.   Mr. Wagner Engages In Improper Apportionment.

Samsung does not dispute that Mr. Wagner's survey-based approaches use the same surveys and calculations as his excluded apportionment method. In fact, Samsung concedes that Mr. Wagner uses "surveys to *value* the relevant articles of manufacture" ("AOMs") (Opp. 3) and that he does so by quantifying "*attributes* that relate to the relevant [AOMs]" (Opp. 1).[1] The sole purported distinction Samsung identifies from Mr. Wagner's excluded method is that he now includes ▬▬▬ a "non-ornamental attribute[]," among the attributes he valued. But ▬▬▬ is a sub-factor within the ▬▬▬ category in the J.D. Power survey. Dkt. 3594-06, ¶¶ 410, 424-426; Dkt. 3594-15, SAMNDCA30008448. His excluded apportionment analysis, also based on a J.D. Power survey, likewise considered ▬▬▬ and the sub-factors of ▬▬▬ *including non-ornamental attributes* such as ▬▬▬ Dkt. 1014-18, ¶¶ 363-366. Thus, the inclusion of ▬▬▬ does not render Mr. Wagner's current methodology something other than an improper apportionment. Further, Samsung's argument does not even purport to excuse Mr. Wagner's calculations based on the Nielsen Survey, which consider only the design-related attributes of ▬▬▬ and ▬▬▬ or his allegedly "corroborating" opinions. Dkt. 3594-06, ¶¶ 456, 463-475.

Because his survey-based methods and "corroborating" opinions do not calculate profits earned by Samsung on any AOM components, but instead apportion profits based on the "value" of predominantly design-related "attributes," they should be excluded as contrary to § 289.

### B.   Mr. Wagner's Survey-Based Methodologies Are Otherwise Unreliable.

Samsung's remaining arguments cannot salvage Mr. Wagner's survey-based approaches. *First*, Samsung's reliance on *Summit 6, LLC v. Samsung Electronics Co.*, 802 F.3d 1283 (Fed.

---

[1] Far from agreeing "this form of profit segregation is appropriate" (Opp. 1) under § 289, as Samsung suggests, Apple's counsel criticized Mr. Wagner's apportionment of profits based on the purported value of features. Dkt. 3603-5 at 49. Apple's counsel suggested only that using the "cost to make" the AOMs may be appropriate. *Id.* at 50. Apple has not challenged Mr. Wagner's methods based on cost data as per se unreliable.

Cir. 2015), actually undermines its argument. The damages expert in *Summit 6* used third-party surveys in a manner similar to Mr. Wagner "*to apportion*" in the context of calculating a reasonable royalty under § 284. *Id.* at 1297. The parallels between *Summit 6* and Mr. Wagner's methodology confirm that Mr. Wagner is improperly apportioning under § 289.[2]

*Second*, the Solicitor General's office did not endorse Mr. Wagner's approach. In the context of a hypothetical regarding the Volkswagen Beetle, the Solicitor General's office suggested that surveys of "**people who buy Bugs**" may be useful in calculating profits for "the body of the Bug." Dkt. 3603-5 at 30. The surveys Mr. Wagner relies on were not targeted at purchasers of the infringing products or even the infringing products themselves.[3]

*Third*, the alleged "'direct correlation' between the survey factors and Samsung's profits" that Samsung submits could render Mr. Wagner's survey-based methods reliable (Opp. 3) does not exist. Mr. Wagner's testimony was that his report "***doesn't*** explain how the purchase driver percentage determined by the Nielsen survey is related to Samsung's profits," and "***doesn't*** explain anywhere the basis for [his] *assumption*" that there is "a direct one-to-one correlation." Dkt. 3603-6 at 1285. In other words, Mr. Wagner uses an unexplained assumption to apportion profits to Samsung's alleged AOMs based on surveys he admits do not address those AOMs.

*Finally*, Samsung does not dispute that Mr. Wagner's report does not disclose an independent opinion that the surveys he relies on can be used to estimate value. Mr. Wagner's report relies exclusively on Dr. Reibstein for that purpose. Dkt. 3594-06, ¶¶ 408, 423, 453. Thus, even if Mr. Wagner were qualified to offer that opinion (he is not), it was not properly disclosed. Fed. R. Civ. P. 26 (a)(2)(B) (report must contain "a complete statement of all opinions the witness will express"); *see, e.g.*, Dkts. 1563, 1690 (excluding expert testimony on issues not in report).

---

[2] Ms. Davis considered surveys only "in the context of demand for the patented product, as well as the reasonable royalty analysis," not "to quantify damages." Dkt. 3603-7 at 113-114.

[3] Ms. Davis also did not agree that surveys are "'a reasonable way to get an idea' of the monetary contribution that product attributes make.'" Opp. 3. She agreed only that surveys can be used to understand "the value of [a] design, or the value of the patented technology to the consumer." Dkt. 3603-7 at 115. Her testimony had nothing to do with calculating profits on an AOM; her testimony was explicitly about "demand" and "various *Georgia-Pacific* factors for the reasonable royalty analysis"—where apportionment is required. *Id.*

| | |
|---|---|
| Dated: March 16, 2018 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | By: */s/ Mark D. Selwyn* <br> MARK D. SELWYN |
| | Attorneys for Plaintiff <br> APPLE INC. |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on March 16, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

/s/ Mark D. Selwyn
Mark D. Selwyn