UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLE INC.,

               Plaintiff,

      v.

SAMSUNG ELECTRONICS CO. LTD., et al.,

               Defendants.

Case No. 11-CV-01846-LHK

**ORDER RE *DAUBERT* MOTIONS**

Re: Dkt. Nos. 3593, 3594, 3595

Samsung moves to exclude the testimony of Apple experts Alan Ball, Susan Kare, and Julie Davis. ECF Nos. 3593, 3595. Apple, in turn, moves to exclude portions of Samsung damages expert Michael Wagner's opinions. ECF No. 3594.

## I.      BACKGROUND

This patent case has entered its seventh year. Apple filed this case on April 15, 2011. ECF No. 1. After a thirteen day jury trial from July 30, 2012 to August 24, 2012 (the "2012 trial") and approximately three full days of deliberation, the first jury reached a verdict. *See* ECF No. 1931. The jury found that Samsung had infringed the D'677, D'087, and D'305 patents, Apple's utility patents, and Apple's trade dress. *Id.* The jury awarded approximately $1.049 billion to Apple on its infringement and trade dress claims. *Id.* After determining that the jury's damages calculations

relied on improper notice dates, the Court struck approximately $410 million from the 2012 jury award and ordered a limited new trial on utility and design patent damages relating only to the sales of those products (the "2013 trial"). *See* ECF No. 2271 at 26; 2316 at 2 (case management order reinstating portion of original jury award).

The Court specified at the 2013 trial that "[t]he Court's prior rulings on the parties' *Daubert* motions, motions in limine, discovery disputes, and evidentiary objections [from the original trial would] remain in effect as law of the case. The parties [could] not relitigate these issues." ECF No. 2316 at 2. Thus, the Court limited the evidence and witnesses at the 2013 trial to the evidence that was admissible at the 2012 trial. *See* ECF No. 2369. On November 21, 2013, after six days of trial and two days of deliberation, a jury awarded Apple approximately $290 million in damages for design and utility patent infringement. *See* ECF No. 2822.

On appeal, the Federal Circuit on May 18, 2015 upheld the jury verdict as to Apple's design patent claims and utility patent claims but vacated the jury verdict as to Apple's trade dress claims. *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 994-96 (Fed. Cir. 2015) ("*Federal Circuit Opinion*"). The Federal Circuit held that Apple's claimed trade dress was not protectable under Ninth Circuit law and vacated the jury verdict as to Apple's trade dress claims. *Id.* The Federal Circuit "remand[ed] for immediate entry of final judgment on all damages awards not predicated on Apple's trade dress claims and for any further proceedings necessitated by our decision to vacate the jury's verdicts on the unregistered and registered trade dress claims." *Id.* at 1005.

On September 18, 2015, on remand, this Court entered partial final judgment in the amount of $548,176,477 as to the damages for products that were found to infringe only Apple's design and utility patents (and not Apple's trade dress). ECF No. 3290. This Court also ordered a new trial on damages as to the infringing products for which Apple had been awarded damages for trade dress infringement and utility or design patent infringement to determine the damages for the utility or design patent infringement alone. ECF No. 3289. The trial would begin on March 28, 2016.

1   On March 21, 2016, the U.S. Supreme Court granted certiorari in this case.  *Samsung*

2   *Elecs. Co. v. Apple Inc.*, 136 S. Ct. 1453 (2016) (granting certiorari).  The question for which

3   certiorari was granted was: "Where a design patent is applied to only a component of a product,

4   should an award of infringer's profits be limited to those profits attributable to the component?"

5   *Id.*  As a result, on March 22, 2016, this Court vacated the March 28, 2016 trial and stayed the

6   case.  ECF No. 3472.

7   On December 6, 2016, the U.S. Supreme Court held that determining profits under § 289

8   involves two steps: "First, identify the 'article of manufacture' to which the infringed design has

9   been applied.  Second, calculate the infringer's total profit made on that article of manufacture."

10  *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016) ("*Supreme Court Decision*").  On the

11  first step, the U.S. Supreme Court held that the "article of manufacture" for which total profits are

12  awarded under § 289 was not necessarily limited to the product that is sold to consumers, but may

13  be either "a product sold to a consumer [or] a component of that product."  *Id.* However, the U.S.

14  Supreme Court "decline[d] to lay out a test for the first step of the § 289 damages inquiry in the

15  absence of adequate briefing by the parties."  *Id.* at 436.

16  After remand, the Federal Circuit remanded the case to this Court and held that "the trial

17  court should consider the parties' arguments in light of the trial record and determine what

18  additional proceedings, if any, are needed.  If the court determines that a new damages trial is

19  necessary, it will have the opportunity to set forth a test for identifying the relevant article of

20  manufacture for purpose of § 289, and to apply that test to this case."  *Apple Inc. v. Samsung*

21  *Elecs. Co.*, 678 F. App'x 1012, 1014 (Fed. Cir. 2017) (per curiam) (unpublished).

22  After a hearing, this Court on October 22, 2017 ordered a new damages trial and set forth a

23  four-factor test for determining the relevant article of manufacture for the purpose of § 289.  *Apple*

24  *Inc. v. Samsung Elecs. Co.*, No. 11-CV-1846-LHK, 2017 WL 4776443 (N.D. Cal. Oct. 22, 2017)

25  ("*October 22, 2017 Order*").  At a case management conference on November 30, 2017, the Court

26  discussed with the parties whether to reopen limited discovery as a result of the new article of

27  manufacture test.  *See* ECF No. 3546.  That same day, the Court issued a case management order

28
    3

in which the Court ruled that the parties' damages experts were to remain the same as in the previous trial but that "the parties may each call two expert witnesses to identify the relevant article of manufacture." ECF No. 3542.

On February 1, 2018, Apple filed a motion to strike the report of Samsung's marketing expert, Dr. Reibstein, as violating the Court's November 30, 2017 case management order. *See* ECF No. 3573. After expedited briefing, the Court granted Apple's motion to strike Dr. Reibstein's report on February 8, 2018. ECF No. 3585.

The parties then filed the instant *Daubert* motions. The Court held a two-hour hearing on the *Daubert* motions on March 29, 2018. *See* ECF No. 3631.

## II. LEGAL STANDARDS

### A. Admission of Expert Testimony Under Federal Rule of Evidence 702 and *Daubert*

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). A district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). An expert witness may provide opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589-90. In *Daubert*, the United States Supreme Court identified

"four factors that may bear on the analysis": (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory is generally accepted in the scientific community. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593-94). However, the Ninth Circuit has explained that "the reliability analysis remains a malleable one tied to the facts of each case" and that the "*Daubert* factors are exemplary, not constraining." *Id.* The Ninth Circuit has also stated that "[i]t is important to remember that the factors are not 'equally applicable (or applicable at all) in every case,'" and that "[a]pplicability 'depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* (first quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), then quoting *Kumho Tire*, 526 U.S. at 150) (third alteration in original).

Because of the fluid and contextual nature of the inquiry, district courts are vested with 'broad latitude' to 'decid[e] *how* to test an expert's reliability' and '*whether or not* [an] expert's relevant testimony is reliable.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152-53) (alterations and emphasis in original). Thus, the Court "may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153); *see also id.* at 924 ("District courts have broad range to structure the reliability inquiry and may choose not to comment on factors that would not inform the analysis.").

Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

## III.   DISCUSSION

Samsung seeks to exclude part or all of the opinions of each of Apple's expert witnesses:

Case No. 11-CV-01846-LHK
ORDER RE *DAUBERT* MOTIONS

industrial designer Alan Ball, icon and user interface graphic designer Dr. Susan Kare, ECF No. 3595-2, and damages expert Julie Davis, ECF No. 3593-2.

The Court previously granted Apple's motion to strike the expert report of Samsung marketing expert Dr. David Reibstein. ECF No. 3585. Apple now seeks to exclude portions of the opinion of Samsung's damages expert, Michael Wagner. ECF Nos. 3594-3, 3594-4.

The Court first addresses Samsung's *Daubert* motions. Then the Court explains its reasons for striking Dr. Reibstein's report and addresses Apple's *Daubert* motion.

**A.      Samsung's Motion to Exclude Expert Opinions of Alan Ball and Susan Kare**

Samsung does not challenge the credentials or relative expertise of Mr. Ball or Dr. Kare. Mr. Ball is an industrial designer with more than 30 years of experience designing industrial, medical, and consumer products. ECF No. 3595-4 ¶ 11. Specifically, Mr. Ball has experience designing personal electronic devices, including CB radios, mobile phones, and tablet computers. *Id.* ¶¶ 15-23. Mr. Ball founded and is the president of his own product design consulting firm, and he is a named inventor on 57 U.S. design patents. *Id.* ¶ 11. Mr. Ball holds a Bachelor of Industrial Design degree from Syracuse University. *Id.* ¶ 12.

Dr. Kare is an icon and user interface graphic designer with more than 35 years of experience in the field of icon design and user interface graphic design. ECF No. 3595-7 at ¶¶ 3, 7. Throughout her career, Dr. Kare has designed thousands of icons for user interfaces and has created graphical user interfaces for a range of software programs and products. *Id.* ¶¶ 9, 11. Dr. Kare founded and runs her own design studio, and she also serves as a creative director at Pinterest. *Id.* ¶ 3. In 2001, Dr. Kare received the Chrysler Design Award, which recognizes "the achievements of individuals who have consistently championed seminal works of architecture and design, and significantly influenced modern American culture." *Id.* ¶ 12. In April 2018, Dr. Kare will receive the AIGA Medal in recognition of "exceptional achievements, services or other contributions to the field of design and visual communication." *Id.* ¶ 15. Dr. Kare holds a Bachelor of Arts degree from Mount Holyoke College, a Master of Arts degree from New York University, and a Doctor of Philosophy degree in fine arts from New York University. *Id.* ¶¶ 4-5.

Instead of challenging Mr. Ball's or Dr. Kare's expertise in their relative fields, Samsung argues that Mr. Ball's and Dr. Kare's opinions are unreliable because they misstate and misapply the applicable law and consider information that is legally irrelevant to the article of manufacture inquiry. ECF No. 3595-2 at 2-3. Specifically, Samsung contends that Mr. Ball and Dr. Kare (1) distort each of the four factors of the article of manufacture inquiry; (2) offer opinions on Apple's copying allegations, which Samsung argues is not relevant to the article of manufacture inquiry; (3) apply the "designer of ordinary skill in the art" and "ordinary observer" standards from the validity and infringement context, which Samsung contends do not apply to the article of manufacture inquiry; (4) include testimony about Apple's design process, marketing philosophy, application of designs to the iPhone, and the iPhone's "look and feel," which Samsung argues is irrelevant; and (5) opine on consumer behavior and consumer perceptions, which are not within Mr. Ball's or Dr. Kare's fields of expertise. *Id.* In addition, Samsung asserts that the Court should exclude testimony about willful infringement, the Court's prior jury instructions, and the wording of prior jury forms because such information is irrelevant and unduly prejudicial. *Id.* at 3. The Court addresses these arguments in turn.

Before doing so, however, the Court notes that the Ninth Circuit recently advised that "the best practice may be for district courts to at least reference the four *Daubert* factors," even where those factors are not relevant for assessing the reliability of the expert opinions at issue in the case. *Murray*, 870 F.3d at 924. Accordingly, the Court finds that the factors mentioned in *Daubert* are not relevant for evaluating Mr. Ball's and Dr. Kare's opinions, which are not scientific or technical in nature and which are based on their experience in their respective fields of industrial design and icon and user interface graphic design. Rather, the Court finds that the issues that Samsung raises, such as whether the experts misstate or misapply the law, are relevant in the circumstances of this case to determining the reliability of the experts' opinions. *See Kumho Tire*, 526 U.S. at 153 ("[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine.").

7

**1. Application of the Four-Factor Article of Manufacture Test**

In its October 22, 2017 Order, the Court identified a four-factor test for identifying the relevant article of manufacture for the purpose of § 289. 2017 WL 4776443 at *19. The four factors are (1) "[t]he scope of the design claimed in the plaintiff's patent, including the drawing and written description"; (2) "[t]he relative prominence of the design within the product as a whole; (3) "[w]hether the design is conceptually distinct from the product as a whole"; and (4) "[t]he physical relationship between the patented design and the rest of the product, including whether the design pertains to a component that a user or seller can physically separate from the product as a whole, and whether the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately." *Id.* Samsung attacks Mr. Ball's and Dr. Kare's interpretation or application of each of the factors, which the Court addresses in turn.

**a. Scope of the Claimed Design**

Samsung argues that the first factor, the scope of the claimed design, is a question of law for the Court. ECF No. 3595-2 at 1. Apple responds that Apple's experts do not offer opinions on the scope of the claimed design. ECF No. 3605-3 at 1. Instead, Apple asserts that its experts "considered the Court's claim constructions . . . and expressly acknowledged and considered that the broken lines in the figures represent ***unclaimed*** portions." *Id.* Indeed, Mr. Ball quotes the language of the patents and the Court's claim constructions—he does not offer alternative constructions. *See* ECF No. 3595-4 ¶¶ 79, 93, 102, 110. Moreover, in describing the patents' figures, Mr. Ball accurately states what is claimed and unclaimed subject matter. For example, with respect to Figures 1-8 of the D'087 patent, Mr. Ball states that "the top surface, with surrounding bezel, is shown in black lines to indicate that it is being claimed. The back and portions of the sides are shown in broken lines to indicate that it is unclaimed. The rectangular screen and the capsule-shaped speaker aperture on the front surface is [*sic*] unclaimed." *Id.* ¶ 81. Similarly, Dr. Kare quotes the D'305 patent and the Court's claim construction and does not offer an alternative construction. *See* ECF No. 3595-7 ¶¶ 63-64. As such, the Court finds that Mr. Ball

United States District Court
Northern District of California

and Dr. Kare have accurately stated the scope of the patents. The Court therefore DENIES Samsung's motion to exclude the opinions of Mr. Ball and Dr. Kare to the extent Samsung's motion is based on the assertion that Mr. Ball and Dr. Kare have invaded the province of the Court in their application of the first factor.

Samsung also objects to how Mr. Ball and Dr. Kare apply the first factor. ECF No. 3595-2 at 1. Specifically, Samsung argues that "Apple's experts improperly disregard the scope of the *claimed designs* . . . and instead base their opinions on *disclaimed* subject matter shown in broken lines and other matter that has no bearing on the designs' scope. *Id.* Apple replies that "Samsung simply disagrees with the conclusions Apple's experts draw from this evidence—that the patents show and describe the ***claimed designs*** being ***applied to*** electronic devices." ECF No. 3605-3 at 1. Apple points out that the Court stated in its October 22, 2017 Order that the relevant article of manufacture may extend beyond the scope of the claimed design. *Id.* Samsung replies that the question Apple's experts are answering—whether the patents show the claimed designs being applied to electronic devices—is distinct from the first factor, which focuses on the scope of the claimed designs. ECF No. 3618.

In its October 22, 2017 Order, the Court "conclude[d] that the factfinder must consider the scope of the claimed design to determine to which article of manufacture the design was applied," but the Court noted that "the scope of the claimed design is not alone dispositive." 2017 WL 4776443 at *12. The Court then quoted the United States' brief before the U.S. Supreme Court, which explained that "the scope of the design claimed in the plaintiff's patent . . . provides insight into which portions of the underlying product the design is intended to cover, and how the design relates to the product as a whole." *Id.* (quoting Brief for United States as Amicus Curiae Supporting Neither Party ("U.S. Br.") at 27, *Samsung Elecs. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429 (2016) (No. 15-777), 2016 WL 3194218, at *27). The "product as a whole" necessarily comprises the claimed and unclaimed subject matter. Thus, by stating that the scope of the claimed design provides insight into "how the design relates to the product as a whole," the Court's October 22, 2017 Order contemplated that evaluation of the first factor could include discussion of the

relationship between the claimed design and the unclaimed subject matter described in the patent and depicted in the patent's figures. Moreover, interpreting the first factor—the only factor focused on the patent itself, as opposed to the defendant's infringing product—to preclude discussion of the relationship between the claimed design and unclaimed subject matter would be inconsistent with the other three factors, all of which consider the relationship between the design and the rest of the defendant's infringing product. Accordingly, the Court finds that Mr. Ball and Dr. Kare have not misapplied the law insofar as they consider unclaimed subject matter in their analysis of the first factor. The Court finds that Mr. Ball's and Dr. Kare's opinions as to the first factor are relevant, reliable, and will be helpful to the jury. To the extent Samsung believes that Mr. Ball and Dr. Kare draw the wrong inferences from the first factor, Samsung may "discredit [Mr. Ball's and Dr. Kare's opinions] . . . through competing evidence and incisive cross-examination." *Murray*, 870 F.3d at 925 (citing *Primiano*, 598 F.3d at 564). Samsung's motion to exclude the testimony of Mr. Ball and Dr. Kare as to the first factor is DENIED.

### b. Relative Prominence of the Design

Samsung next asserts that Mr. Ball's and Dr. Kare's opinions are unreliable because they erroneously interpret the second factor, "[t]he relative prominence of the design within the product as a whole." ECF No. 3595-2 at 1. Specifically, Samsung relies on the United States' brief before the U.S. Supreme Court for the proposition that "a design's *relative* prominence requires consideration of *other* product features not affected by the design." *Id.* Samsung argues that Apple's experts read the word "relative" out of the factor by failing to compare the prominence of the design to other features not affected by the design. *Id.* at 1-2. Apple responds that Mr. Ball and Dr. Kare correctly recite the wording of the factor. ECF No. 3605-3 at 1. Apple also argues that the United States' brief "is not the law," even though this Court adopted the United States' proposed test. *Id.* Samsung replies that "Apple's experts concededly do not address the sole issue under Factor 2: *i.e.*, whether the patented design is relatively prominent in the accused product when considered together with 'other components unaffected by the design.'" ECF No. 3618 at 1 (quoting U.S. Br., 2016 WL 3194218 at *28).

Case No. 11-CV-01846-LHK
ORDER RE *DAUBERT* MOTIONS

Apple is correct that the United States' brief is not the law. The Court's October 22, 2017 Order setting forth the article of manufacture test did not require that the second factor's relative prominence inquiry necessarily include a comparison to "other components unaffected by the design." Indeed, in some scenarios, a design may so dominate the product that comparison to other features of the product would add little value to the inquiry. Moreover, to the extent that the United States' brief is a helpful reference, Samsung focuses on one half of the United States' explanation of the second factor while ignoring the second half. Specifically, Samsung focuses on the United States' statement that "[i]f the design is a minor component of the product, like a latch on a refrigerator, or if the product has many other components unaffected by the design, that fact suggests that the 'article' should be the component embodying the design." *See* U.S. Br., 2016 WL 3194218 at *28. The very next sentence, which Samsung fails to mention, says: "Conversely, if the design is a significant attribute of the entire product, affecting the appearance of the product as a whole, that fact might suggest that the 'article' should be the product." *Id.*

The United States' brief thus identifies two alternative approaches for assessing the relative prominence of the design within the product as a whole. In the reasonable royalty context, the Federal Circuit has recognized that there may be more than one reliable method to estimate a reasonable royalty in any given case. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination." *Id.* "That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible." *Id.* So too here. Apple's experts' opinions as to the second factor are not inadmissible simply because they take a different approach to analyzing the factor than Samsung's expert does.

Mr. Ball's opinion applies the second approach described by the United States, in that Mr. Ball bases his opinion on the design's relative prominence on the extent to which the design

affects the appearance of the Samsung phones as a whole.[1]  Specifically, with respect to the D'677 patent, for example, Mr. Ball states:

> The D'677 design—including the overall shape of the front face of the phone, including the relative proportions, straight edges and rounded corners, the glass front face extending from edge-to-edge of the device, and the black front face—is very prominent in these twelve infringing Samsung phones, and contributes greatly to their overall appearance.  These are primary design features that are noticed quickly when looking at the products and contribute significantly to the look of the infringing phones as a whole.  The claimed design influences the shape and size of other portions of the infringing phones, for example by defining the general shape of the device.  The claimed design also serves to differentiate the infringing phones from other phone designs.

> Having examined the twelve Samsung phones that the jury found to infringe the D'677 patent, it is my opinion that the D'677 design is extremely prominent within the infringing products as a whole, and this factor supports the conclusion that the article of manufacture is the entire infringing phone.

ECF No. 3595-4 ¶¶ 192-93 (citation omitted); *see also id.* ¶¶ 186-87 (stating similar conclusion for D'087 patent).

Besides the United States' brief, Samsung cites no other authority and provides no other reasoning to support its assertion that the failure to explicitly compare the design's prominence to the prominence of other components unaffected by the design constitutes legal error or renders an expert's opinion so unreliable as to merit exclusion under Rule 702 and *Daubert*.  To the contrary, the Court finds that Mr. Ball has accurately stated the second factor and that his application of the factor is adequately grounded in fact and his experience as an industrial designer.  The Court further finds that Mr. Ball's analysis of the second factor is relevant and would be helpful to the jury.  To the extent that Samsung disagrees with the conclusion that Mr. Ball draws from the second factor, Samsung can challenge Mr. Ball's conclusion through contrary evidence and cross-examination.  *See Primiano*, 598 F.3d at 568 ("Given that the judge is a gatekeeper, not a fact finder, the gate could not be closed to this relevant opinion offered with sufficient foundation by

---

[1] The Court separately addresses Samsung's objections to Mr. Ball's discussion of an ordinary observer, Apple's copying allegations, and the iPhone's implementation of the design in the sections that follow.

Case No. 11-CV-01846-LHK
ORDER RE *DAUBERT* MOTIONS

one qualified to give it.") (internal quotation marks omitted). Samsung's motion to exclude Mr. Ball's testimony as to the second factor is DENIED.

With respect to Dr. Kare's opinion, Samsung is incorrect to suggest that Dr. Kare does not compare the prominence of the D'305 design with any other features. In paragraph 92 of her report, Dr. Kare states:

> While the exterior design of the infringing Samsung phones is also a prominent feature of the infringing products, the design of the graphical user interface in the infringing Samsung phones is a comparably prominent feature. At the time when the iPhone was still a relatively new product, and when Samsung began to introduce its infringing phones in 2010 and 2011, the unique design for a graphical user interface claimed by the D'305 patent, and appropriated by the infringing Samsung phones, was a striking feature of those products. The patented GUI design, together with the exterior design also patented by Apple and infringed by Samsung, was a prominent aspect of the overall design of the infringing Samsung phones. The overall effect of the hardware and graphical user interface makes a distinctive whole—both as patented by Apple and infringed by Samsung.

ECF No 3595-7 ¶ 92. The Court finds that Dr. Kare's opinion as to the second factor is relevant, reliable, and would be helpful to the jury. To the extent that Samsung believes Dr. Kare's analysis of the second factor was not comprehensive enough, Samsung may demonstrate that point through cross-examination and competing evidence. Samsung's motion to exclude Dr. Kare's testimony as to the second factor is DENIED.

### c. Whether the Design is Conceptually Distinct

With respect to the third factor, "[w]hether the design is conceptually distinct from the product as a whole," Samsung again relies on the United States' brief before the U.S. Supreme Court, this time for the proposition that "[i]f the product contains other components that embody conceptually distinct innovations, it may be appropriate to conclude that a component is the relevant article." ECF No. 3595-2 at 2; U.S. Br., 2016 WL 3194218 at *29. Samsung faults Apple's experts for failing to consider whether Samsung's phones contain other components embodying conceptually distinct innovations. *Id.* Apple responds that its experts did not ignore parts of the phones, but rather "opined that the patented designs (which are visual in nature) are

13

conceptually integral to the phones as a whole." ECF No. 3605-3 at 1-2. Samsung replies that Apple's experts in fact considered whether the designs are separable from the phones as a whole, when in fact the third factor asks whether the designs are conceptually distinct from the phones as a whole. ECF No. 3618 at 1.

Once again, Samsung asserts legal error based not on any court's opinions or rulings, but on the United States' brief. The United States' brief is not the law. To the extent that the United States' brief is a helpful reference, the Court notes that the United States observed that *if* the product "contains other components that embody conceptually distinct innovations, *it may be appropriate* to conclude that a component is the relevant article." U.S. Br., 2016 WL 3194218 at *29 (emphasis added). This statement explains one inference that could be drawn from the presence of other components that embody conceptually distinct innovations. It does not purport to be the only way in which conceptual distinctness can be assessed.

Moreover, the United States offered one example of this factor's application when it identified a book binding and a literary work as conceptually distinct components of a product. *Id.* at *28-29. Mr. Ball offers several examples of other products that, in his view and based on his experience as an industrial designer, contain designs that are conceptually distinct from the product as a whole. *See* ECF No. 3595-4 ¶¶ 217-19. Mr. Ball then compared the relationship between the D'087 and D'677 designs and the Samsung phones with those products that he identified as containing conceptual distinctions and concluded that the D'087 and D'677 designs are not conceptually distinct from the phones as a whole. *Id.* ¶ 220. Mr. Ball also considered evidence of how Samsung's designers conceived of their designs. The Court cannot say that Mr. Ball's approach is flawed as a matter of law. As with the previous two factors, the more appropriate route is for Samsung to attempt to discredit Mr. Ball's opinion through cross-examination and contrary evidence. Samsung's motion to exclude Mr. Ball's testimony as to the third factor is DENIED.

For her part, Dr. Kare opines that the D'305 design is not conceptually distinct from the phone as a whole based on the graphical user interface's central importance to the phone's

14

operation.  For example, Dr. Kare states that "[t]he D'305 design corresponds to portions of the product a user must manipulate to use the phone as a whole," and that "[t]he user's primary interaction when operating the device is through the graphical user interface."  ECF No. 3595-7 ¶ 107.  Dr. Kare also reasons that the "graphical user interface has no value apart from the infringing phones as a whole," and that, similarly, "without the graphical user interface one could not operate the product or access any of its other features."  *Id.* ¶ 108.  The Court finds that Dr. Kare has accurately stated the third factor and that her application of the factor is adequately grounded in fact and her experience as an icon and graphical user interface designer.  The Court further finds that Dr. Kare's analysis of the third factor is relevant and would be helpful to the jury.  To the extent that Samsung disagrees with the conclusion that Dr. Kare draws from the third factor or her reasoning, Samsung can challenge Dr. Kare's conclusion through contrary evidence and cross-examination.  *See Primiano*, 598 F.3d at 568 ("Given that the judge is a gatekeeper, not a fact finder, the gate could not be closed to this relevant opinion offered with sufficient foundation by one qualified to give it.") (internal quotation marks omitted).  Samsung's motion to exclude Dr. Kare's testimony as to the third factor is DENIED.

### d. Physical Relationship Between Design and Rest of Product

Samsung argues that Apple's experts misapply the fourth factor, the physical relationship between the design and the rest of the product, because Apple's experts focus too much on how Samsung's phones are sold and are used by consumers and not enough on how they are manufactured or *can be* sold.  ECF No. 3595-2 at 2-3.  Samsung asserts that by focusing on how the products are sold to consumers, Apple's experts applied the very rule that the U.S. Supreme Court rejected in this case.  *Id.* at 3.  Apple responds that Mr. Ball discussed how the phones are manufactured and how the glass front face is sold separately for repairs, while Dr. Kare "considered whether the GUI design or the components Samsung identified are physically separable from the phones."  ECF No. 3605-3 at 2.  Apple also points out that the U.S. Supreme Court did not reject consideration of how the phones are sold, and this Court has ruled that how the product is sold can be considered by the factfinder in determining the relevant article of

manufacture. *Id.* Samsung replies that Apple's experts explicitly refused to "address the issues identified by the Court," including whether "the design pertains to a component that a user or seller can physically separate from the product as a whole," and whether "the design is embodied in a component that is manufactured separately from the rest of the product, or if the component can be sold separately." ECF No. 3618 at 2; October 22, 2017 Order, 2017 WL 4776443 at *19.

Contrary to Samsung's characterization, Mr. Ball did not apply the very rule that the U.S. Supreme Court rejected in this case. As the Court explained in its October 22, 2017 Order, the U.S. Supreme Court rejected a per se rule that the relevant article of manufacture must always be the end product sold to the consumer. 2017 WL 4776443 at *11. Neither the U.S. Supreme Court nor this Court has held that how the product is sold is irrelevant to the article of manufacture inquiry. *See id.* Moreover, again contrary to Samsung's characterization, Mr. Ball at least mentions each of the component-based considerations that this Court identified as part of the fourth factor. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1303 (Fed. Cir. 2015) (holding that district court did not err in admitting expert's testimony in part because the expert "in fact took reasoned account of the evidence that [the appellant] says she 'disregarded'"). For example, Mr. Ball observes that "the D'677 design does not pertain to a component that a user can physically separate from the product as a whole during normal use of the product." ECF No. 3595-4 ¶ 241. Mr. Ball cites evidence for this opinion, including the facts that Samsung did not design the phone with the expectation that users would remove the front face and that Samsung's own employee needed assistance from a third-party company with "specialty equipment" to successfully remove the phones' front faces for the purposes of this litigation. *Id.* ¶¶ 242-45. Mr. Ball acknowledges that "Samsung took components and sub-assemblies" that "themselves may have been manufactured elsewhere or by other companies" to manufacture the phones as a whole. *Id.* ¶ 251. Mr. Ball also acknowledges that Samsung has sold glass front faces and bezels separately from the phones "for the purpose of repair." *Id.* ¶¶ 260, 261(a). Samsung's disagreement with the relative weight that Mr. Ball afforded these facts is not a ground for excluding Mr. Ball's opinion. Thus, Samsung's motion to exclude Mr. Ball's opinion as to the

fourth factor is DENIED.

The Court also finds that Dr. Kare's opinion as to the fourth factor is admissible. Dr. Kare's central point as to the fourth factor appears to be that the D'305 design is a design for a graphical user interface, and the graphical user interface cannot exist in only components of a phone, as opposed to an entire phone. *See* ECF No. 3595-7 ¶¶ 112-13. Dr. Kare opines that the graphical user interface "does not exist apart from, and cannot be separated from, the infringing Samsung phones" as complete products. *Id.* ¶ 112. Dr. Kare reasons that the display screen, which Samsung contends is the relevant article, cannot embody the D'305 design when the screen is separated from the rest of the phone. ECF No. 3595-8 ¶ 50. The Court finds that the wording of the fourth factor does not preclude Dr. Kare from opining that the patented design is embodied in the graphical user interface, which cannot exist apart from the phones as a whole. Dr. Kare has sufficiently tied her opinion to the facts of the case. Accordingly, Samsung's motion to preclude Dr. Kare from offering her opinion as to the fourth factor is DENIED.

### 2. Testimony Related to Apple's Copying Allegations

Samsung argues that the Court should exclude Apple's experts' references to Apple's copying allegations. ECF No. 3595-2 at 3. Specifically, Samsung asserts that "[c]opying is not mentioned in, or relevant to, any of the four factors." *Id.* Samsung points out that the Court ruled in its October 22, 2017 Order that "the infringer's intent in copying the patented design" is not relevant to § 289. *Id.* Samsung also states that the Court previously ruled that "an expert cannot opine about Samsung's purported intent," which Samsung argues "applies fully to Mr. Ball and Dr. Kare." *Id.* Apple responds that the Court did not rule that copying is irrelevant, but only that Samsung's *reasons* for copying should not be considered. ECF No. 3605-3 at 2. Apple adds that the Court "observed that copying evidence may be relevant to factor 2 and other [article of manufacture] factors." *Id.* (citing ECF No. 3528 at 13). Apple argues that its experts properly considered the fact of Samsung's copying, which Apple asserts is evidence that the patented designs "are relatively prominent in and not conceptually distinct from the products as a whole."

In its October 22, 2017 Order, the Court held that "Apple's fourth proposed factor, the

infringer's intent in copying the patented design, finds no support in the text of the statute." 2017 WL 4776443 at *10. The Court also observed that Congress removed the knowledge requirement from § 289's predecessor when Congress passed the 1952 Patent Act. *Id.* However, the Court did not hold that all evidence of copying is irrelevant. Nor has the Court precluded all experts from testifying about copying, as Samsung misleadingly implies. The ruling that Samsung cites concerned the propriety of Apple's damages expert, Ms. Davis, a CPA, offering an opinion on whether Samsung copied Apple's patented designs, which the Court found Ms. Davis was unqualified to do. *See* ECF No. 2654 at 4 ("Davis' area of expertise is financial analysis and intellectual property damages. She does not have technical expertise in the telecommunications industry, consumer electronics, industrial design, or patents . . . . Nonetheless, in her expert report, Davis provides various conclusions about whether Samsung copied Apple's products . . . ."). Moreover, in that same order, the Court explicitly contemplated the possibility of "Apple's technical experts provid[ing] conclusions at retrial regarding Samsung's adoption of Apple's features." *Id.* at 6.

Mr. Ball and Dr. Kare are qualified in their respective relevant arts such that they would be permitted to offer opinions about the similarities between Apple's patents and products and Samsung's products in an infringement trial. *See Sundance*, 550 F.3d at 1362. Indeed, in the typical trial where liability and damages are not bifurcated, the same experts would likely be offering opinions as to infringement and article of manufacture. The question here is whether such copying testimony is relevant specifically to the article of manufacture issue and admissible under Rule 403 when liability is no longer at issue.

The Court finds that evidence of and opinions about copying are relevant to the second factor, the prominence of the design. Specifically, Apple's experts consider evidence that the D'087, D'677, and D'305 designs were widely associated with the iPhone, that Samsung was interested in designing a phone that was "like the iPhone," ECF No. 3595-4 ¶ 121, and that observers commented on the striking similarities between the infringing Samsung phones and the iPhone based on the D'087, D'677, and D'305 designs. Mr. Ball's conclusion based on this

evidence that Samsung copied Apple's most prominent designs thus tends to make it more probable that the D'087, D'677, and D'305 designs were prominent within the phones as a whole. *See* Fed. R. Evid. 401. The copying evidence and opinions are thus relevant to the article of manufacture inquiry. As such, Samsung's motion to preclude Mr. Ball and Dr. Kare from discussing evidence of copying is DENIED.

### 3. The Relevant Perspective for the Article of Manufacture Inquiry

Samsung argues that the Court should exclude testimony about the "designer of ordinary skill in the art" ("DOSA") and "ordinary observer" standards, which are used in considering validity and infringement. ECF No. 3595-2 at 3. Samsung asserted that these standards "have no bearing on the article of manufacture to which Samsung applied Apple's designs." *Id.* Samsung did not identify what standard it believes applies to the article of manufacture inquiry. Apple responded that consideration of these perspectives is appropriate but did not explain why. ECF No. 3605-3 at 3. Apple added that Samsung's design expert agreed that his opinions were "inclusive of" those perspectives. *Id.* Samsung did not address this issue in its reply. Given the limited attention both sides afforded to this issue in the initial briefing, the Court on March 27, 2018 ordered the parties to file supplemental statements explaining their positions on the appropriate perspective for evaluating the article of manufacture inquiry. *See* ECF No. 3627 at 3.

In its supplemental brief, Samsung argues that there is no basis, statutory or otherwise, to incorporate any particular perspective into the article of manufacture inquiry. ECF No. 3628-3 at 1. Samsung asserts that "[r]ather than step into the shoes of any such hypothetical person here, the jury should simply identify the relevant [articles of manufacture] *itself* based on its assessment of the evidence under the relevant [article of manufacture] factors as instructed by the Court. *Id.* Samsung also acknowledges that expert evidence may be relevant to the jury's understanding of the various factors, but Samsung maintains that the jury should identify the relevant articles for itself. *Id.* at 2. Apple responds that its experts appropriately considered the perspective of a designer of ordinary skill in the art ("DOSA") when analyzing the first factor, the scope of the claimed design, because "the DOSA's perspective is the relevant standard to consider when

19

evaluating what is claimed by a design patent." ECF No. 3629-3 at 1. Similarly, Apple contends that the ordinary observer's perspective is relevant to the second and third factors "since both factors require consideration of the patented designs as they relate to the products as a whole." *Id.* at 2.

To some extent, the parties are talking past each other. Apple does not suggest that the jury be instructed that it must consider any of the factors from any particular perspective, and so Apple does not appear to disagree with Samsung's insistence that the jury decide the relevant articles of manufacture for itself, without taking on any particular perspective. In addition, Samsung is correct that there is no basis for importing the DOSA and ordinary observer perspectives into the article of manufacture inquiry, but the Court agrees with Apple's underlying point that how a designer would understand the patent and how a consumer would view the products are relevant to the test that the Court has identified. Moreover, as the Court explains below, the Court finds that the professional experiences of Mr. Ball and Dr. Kare qualify them to opine on how a consumer would view or interact with the phones at issue here. *See* Section III.A.5, below.

Accordingly, the Court GRANTS Samsung's motion to preclude Mr. Ball and Dr. Kare from testifying as to perspectives of a DOSA or ordinary observer. The Court finds that there is no basis for importing these perspectives, which are used in the infringement and validity contexts, into the article of manufacture inquiry. Furthermore, the Court finds that introducing these perspectives risks confusing and misleading the jury. However, the Court declines Samsung's request to exclude all of the material that Samsung identified as related to these perspectives, which Samsung highlighted in pink in the exhibits to its motion.

Specifically, the Court finds that much of the DOSA-related testimony would be relevant and admissible if Mr. Ball and Dr. Kare instead testify to these points from their own perspectives as experts in industrial design and icon and graphical user interface design. For example, paragraph 152 of Mr. Ball's opening report currently states his "opinion that a DOSA, seeing the drawings in the D'087 patent[,] would recognize that the claimed design is for an electronic device

such as a phone, not just part of an electronic device." ECF No. 3595-4 ¶ 152. The Court will not permit Mr. Ball to testify about the DOSA standard or how a DOSA would understand the relationship between the design claimed in the D'087 patent and the product as a whole, but the Court would permit Mr. Ball to opine on how he, as an industrial design expert and the named inventor in many patents, understands that same relationship. At the *Daubert* hearing, Samsung agreed that these experts could testify from their own perspectives. *See* ECF No. 3643 at 42:12-16. Such testimony was timely disclosed, so its admission would not unfairly prejudice Samsung. *See Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-4645 RS, 2013 WL 3786633, at *7 (N.D. Cal. July 18, 2013) (declining to strike expert testimony where exact language had not been previously disclosed but other party was aware of the expert's general opinion on the matter).

Similarly, the Court will not permit Mr. Ball and Dr. Kare to testify about how an ordinary observer would perceive the phones at issue, but the Court would permit Mr. Ball and Dr. Kare to testify as to their opinions about how a consumer would interact with the phones. For example, Mr. Ball states that "[a]n ordinary observer would recognize the product by looking at the front surface, not the back or sides" and that "[o]rdinary observers also would have encountered Samsung phones in their packaging." ECF No. 3595-4 ¶¶ 199, 201. Such opinions that invoke the ordinary observer, when framed instead as opinions on how a consumer is likely to interact with a phone, are well within the scope of an industrial designer's expertise and are relevant to at least the second factor of the four-factor article of manufacture test.

To summarize, the Court GRANTS Samsung's motion to preclude Mr. Ball and Dr. Kare from testifying as to perspectives of a DOSA or ordinary observer, but the Court will allow Mr. Ball and Dr. Kare to offer their own perspectives as experts, which include opinions on how a consumer would view and interact with the phones at issue.

### 4. Apple's Design Process

Samsung argues that the Court should exclude testimony about Apple's design process, marketing philosophy, application of designs to the iPhone, and the iPhone's "look and feel." ECF No. 3595-2 at 3. Samsung argues that Apple has conceded that "evidence about the iPhone

United States District Court
Northern District of California

1  sold by Apple has no bearing on the article of manufacture to which *Samsung* applied the

2  patented designs." *Id.* (quoting ECF No. 3523 at 16). Apple responds that the Court relied on

3  evidence about Apple's products in ordering a new trial, and that excluding such evidence now as

4  irrelevant to the article of manufacture inquiry would require the Court to revisit its order granting

5  a new trial. ECF No. 3605-3 at 3 & n.1 (citing October 22, 2017 order, 2017 WL 4776443 at *17

6  (in turn citing ECF No. 1610 at 313-17[2], ECF No. 1842 at 3165-68)). Samsung replies that "[t]he

7  jury's task is to identify the article to which *Samsung*—not Apple—applied the patented designs,

8  and, in ordering a new trial, the Court relied only on evidence about the manufacture of *Samsung's*

9  phones." ECF No. 3618 at 2.

10  Taking the last point first, Samsung is incorrect that the Court "relied only on evidence

11  about the manufacture of *Samsung's* phones." *Id.* The Court also cited the testimony of an Apple

12  witness testifying about an iPhone and "pass[ing] around to the jury the 'major logic board' of a

13  disassembled iPhone 4." October 22, 2017 Order, 2017 WL 4776443 at *17. In addition,

14  Samsung argues that Apple has conceded that evidence about the iPhones is irrelevant to the

15  article of manufacture inquiry, but the Court notes that Samsung filed a motion to compel

16  discovery of "information regarding the manufacture, cost, profit, and separability of iPhone

17  components" because Samsung contended that that information "goes directly to the four-factor

18  test for identifying the relevant article of manufacture." ECF No. 3550-2 at 2. Thus, both parties

19  have taken positions in the recent course of this litigation that contradict, at least to some degree,

20  their current positions.

21  In any event, as explained above, the Court finds that some comparison to the iPhone is

22  relevant to the analysis of the second factor, relative prominence of the design within the product

23  as a whole. Specifically, evidence that Apple's marketing focused on views of the iPhone that

24  featured the patented designs, evidence of and opinions related to the iPhones' "look and feel,"

25

26  ───────────────

27  [2] The Court's citation was to the page numbers assigned by the ECF filing system. For clarity, the pages of the deposition transcript cited by the Court are pages 868-72 as numbered in the deposition transcript.

28

Case No. 11-CV-01846-LHK
ORDER RE *DAUBERT* MOTIONS

and evidence that consumers associated the patented designs with iPhones are relevant to the second factor, prominence of the design within the article as a whole. Specifically, Apple's experts opine based on this evidence that Samsung copied the iPhone's most prominent designs in an effort to make Samsung's phones more like the iPhone. *See* ECF No. 3595-4 ¶ 206; ECF No. 3595-7 ¶¶ 84-85, 100-01. For example, Dr. Kare opines that "[t]he fact that the iPhone home screen became iconic is powerful evidence that the D'305 design as embodied in Samsung's infringing phones is in fact a prominent design feature." ECF No. 3595-8 ¶ 34. These opinions and evidence thus tend to make it more likely that the designs were relatively prominent within the products as a whole. Accordingly, Samsung's motion to exclude Mr. Ball's and Dr. Kare's opinions insofar as they discuss Apple's design process, marketing philosophy, application of designs to the iPhone, and the iPhone's "look and feel" is DENIED.

### 5. Opinions Related to Consumer Behavior or Marketing

Samsung asserts that Mr. Ball and Dr. Kare are unqualified to testify about consumer behavior or how consumers perceive Apple's designs and the parties' products. ECF No. 3595-2 at 3. Apple responds that "Mr. Ball and Dr. Kare have decades of experience designing products for companies. That experience includes—in a significant way—considering how consumers perceive and use designs and products." ECF No. 3605-3 at 3. Samsung replies that "Apple does not identify any *marketing* expertise supporting its experts' marketing opinions." ECF No. 3618 at 2.

Although Samsung asserts in its motion that Dr. Kare offers marketing opinions, Samsung does not identify any particular part of either of Dr. Kare's reports that constitutes a marketing opinion. *See* ECF No. 3595-7 (lack of blue highlighting, which Samsung used to designate marketing opinions per ECF No. 3595 ("The Court should exclude testimony (highlighted in blue) regarding consumer behavior . . .")); ECF No. 3595-8 (same). In addition, the Court has not independently identified any part of Dr. Kare's report that constitutes a marketing opinion. Accordingly, Samsung's request to exclude unspecified parts of Dr. Kare's opinions as outside the scope of her expertise is DENIED.

The specific opinions Samsung identifies as marketing opinions from Mr. Ball's reports include, from Mr. Ball's opening expert report:

> 200. A consumer's first interaction with the infringing products commonly would have been through marketing from Samsung. When Samsung marketed the infringing phones, it did so in a way that showcased the front faces, including the D'087 and D'677 designs.

> 223. I am not aware of any instance in which a consumer has used the glass front face or bezel of an infringing Samsung device separately from the rest of the device. Samsung also has not identified any such instance. (*See, e.g.*, J. Kim 2017 Dep. 75:25-76:7 ("Q. Are you aware of any instance in which a consumer has used the phones [found to infringe the D'087 patent] without the bezel on them? A. Not to my knowledge. Q. Are you aware of any instance in which a consumer has used the phones [found to infringe the D'087 patent] without the glass front face plus surrounding bezel? A. The same. Not to my knowledge.").

> 253. The end result of Samsung's manufacturing process was to create the infringing phones, which, to carriers, retailers, and end users appear monolithic and inseparable.

ECF No. 3595-4 ¶¶ 200, 223, 253.

Additionally, Samsung identifies the following sentences from Mr. Ball's reply report:

> 46. When viewed by a user during use, the claimed designs comprise nearly the entire appearance.

> 48. Putting this aside, consumers throughout their day regularly observe their phones in 'off' or 'sleep' modes, which Mr. Lucente does not dispute show the D'677 design.

> 60. As explained in my Opening Report, the front face of the infringing Phones is most prominent to the user. It is the only face that must be seen to operate the phone. Nearly everything a user can do with a smartphone requires interacting with its front face. For example, dialing phone numbers, typing or reading email or SMS messages, playing games, watching videos, surfing the web, and using GPS all involve interaction with the front of the device.

> 61. A user talking on the phone (holding it up to an ear) does not see the phone at all. A person observing a user talking on the phone in this manner would not see the phone either because it is obscured by the user's hand. Further, many people talk on smartphones using headphones or in speaker mode while holding the device face up.

24

62. In my experience, phones are most often not placed face down on a table to avoid scratching the glass front. Placing a phone face down is often used as a gesture to signify that the user is not distracted by the phone. In other words, by removing the most prominent side of the phone from view, the user is indicating that the phone is not a consideration.

63. A typical phone case obscures all sides of the phone except for the front face which remains unobstructed because it is the most prominent and necessary for the operation of the phone.

90. Based on my experience, I believe consumers would have no trouble picturing book binding separated from the rest of a book.

99. This front view of the phone is what consumers associate with the product as a whole, and so any advertisement for the product and any of its features is likely to show that view.

ECF No. 3595-5 ¶¶ 46, 48, 60-63, 90, 99.

Paragraph 200 of Mr. Ball's opening report and paragraph 99 of Mr. Ball's reply report do offer opinions related to marketing and advertising. Mr. Ball has not established that his expertise includes experience with marketing or advertising, and so these opinions will be excluded as outside Mr. Ball's expertise.

By contrast, paragraph 223 of Mr. Ball's opening report is not an opinion, but rather a factual statement. To the extent Samsung believes the jury should disregard Mr. Ball's factual statement, Samsung may demonstrate that point through cross-examination.

The Court finds that Mr. Ball's extensive experience as an industrial designer encompasses "understand[ing] the intended users or purchasers and their ability to perceive and use the product being designed." ECF No. 3595-4 ¶ 49. Mr. Ball explained that to develop this understanding of consumer perceptions, "an Industrial Designer is trained in techniques used to gain insight and understanding into users' or purchasers' needs and desires related to the product being designed. This ability is further developed over time as a designer gains experience designing products." *Id.* ¶ 49. The Court finds that this experience qualifies Mr. Ball to offer an opinion on whether end users would perceive Samsung's phones as "monolithic and inseparable," *id.* ¶ 253, as well as to offer opinions on how users would typically use or interact with their phones. Indeed, the opinions in Mr. Ball's reply report about how a user would typically engage with and hold a

25

smartphone are precisely the types of issues that industrial designers consider in their work. *See id.* ¶¶ 20, 23, 44.

Thus, the Court DENIES Samsung's request to preclude Mr. Ball from offering the statements and opinions that Samsung highlighted in blue in his opening and reply expert reports, with the exception of paragraph 200 of Mr. Ball's opening report and paragraph 99 of Mr. Ball's reply report. The Court DENIES Samsung's request as to Dr. Kare because Samsung has not identified any of Dr. Kare's report as containing marketing opinions.

### 5. Willfulness

Samsung urges the Court to exclude one sentence of Dr. Kare's report that references the previous jury's finding of willful infringement because the willfulness finding "is irrelevant and highly and unduly prejudicial." ECF No. 3595-2 at 3 (referring to ECF No. 3595-7 ¶ 52). Apple states that Dr. Kare "does not intend to discuss the willfulness verdict at the retrial." ECF No. 3605-3 at 2-3. Accordingly, the Court GRANTS Samsung's motion to exclude reference to the willfulness verdict as unduly prejudicial under Rule 403, so long as Samsung does not open the door to this issue.

### 6. Claim Construction of the D'087 Patent, Previous Jury Instructions, and Verdict Forms

Samsung argues that the Court should exclude testimony that "the Court previously instructed prior juries that the entire phones were the relevant articles of manufacture, or that the juries supposedly so found through their infringement verdicts." ECF No. 3595-2 at 3. Samsung also identifies as problematic the Court's claim construction for the D'087 patent, which includes the phrase "article of manufacture" in describing the scope of the claim. *See, e.g.*, ECF No. 1425 at 8; ECF No. 1447 at 2. Apple responds that "Mr. Ball and Dr. Kare properly considered the fact that a jury found that Samsung's 'products' infringed," which Apple contends "shows the products encompass the patented designs." ECF No. 3605-3 at 3. Samsung replies that the U.S. Supreme Court has held that the prior jury was misinstructed on this very topic, which makes the prior jury's findings unreliable, irrelevant, and prejudicial. ECF No. 3618 at 2.

26

The Court agrees with Samsung. The Court first addresses its D'087 claim construction. That construction reads:

> The D'087 Patent claims the ornamental design of an electronic device as shown in Figures 1-48. The broken lines in the D'087 Patent constitute unclaimed subject matter. Thus, the D'087 Patent claims the front face, a 'bezel encircling the front face of the patented design [that] extends from the front of the phone to its sides,' and a flat contour of the front face, but does not claim the rest of the article of manufacture.

ECF No. 1447. Samsung argued on appeal that the Court erred by "failing to exclude the functional aspects of the design patents" in its claim constructions, but the Federal Circuit rejected this argument. *See Federal Circuit Opinion*, 786 F.3d at 998. Samsung then sought U.S. Supreme Court review of the scope of the claim construction, but the U.S. Supreme Court denied certiorari as to this issue. *See* 136 S. Ct. 1453 (granting certiorari only as to "Question 2 presented by the petition"). Given the history of this issue on appeal, the Court finds it inappropriate to amend its claim constructions at this late stage in the litigation.

However, the Court finds that Apple's experts' contentions that the Court somehow determined the relevant article of manufacture in its claim constructions are inappropriate. For example, Mr. Ball states in reference to the D'087 patent that "[t]he Court's claim construction later states that the patent does not claim 'the rest of the article of manufacture.' This makes clear that the article of manufacture is not limited to just the claimed portions of the electronic device, and it includes the unclaimed portion of the electronic device as well." ECF No. 3595-4 ¶ 145. The Court construed the design patent claims in this case before the U.S. Supreme Court clarified the meaning of the phrase "article of manufacture." As such, allowing arguments such as the one that Mr. Ball makes in paragraph 145 of his opening report would be misleading to the jury and highly prejudicial to Samsung. Apple represented at the March 29, 2018 *Daubert* hearing that its experts would not offer such opinions at trial, and both parties agreed that it would be appropriate to instruct the jury that identifying the relevant article of manufacture is a question for the jury. *See* ECF No. 3643 at 80:18-82:2, 83:19-84:2. Accordingly, the Court will not amend its claim

constructions, will not allow any of the experts to opine that the Court's claim constructions determined the relevant article of manufacture, and will instruct the jury that identifying the relevant article of manufacture is a question for the jury. The parties shall propose appropriate jury instruction language in their proposed jury instructions.

Similarly, Apple's experts may not argue that the prior jury determined the relevant article of manufacture based on the products it received for its deliberations, its verdict, or the wording of its verdict form. Samsung's motion to exclude the testimony highlighted in green (ECF No. 3595-4 ¶¶ 136, 137, page 32 (copy of verdict form), ¶¶ 138, 205; ECF No. 3595-5 ¶¶ 23, 25 (highlighted sentence), 38, 41 (highlighted sentence), 69, 102 (sentence highlighted in green); ECF No. 3595-7 ¶ 60) is GRANTED.

**B.     Samsung's Motion to Exclude Portions of Julie Davis's Expert Opinion**

Samsung moves to exclude parts of the opinion of Julie Davis, Apple's damages expert, on five grounds. ECF No. 3593-2. First, Samsung seeks to exclude Ms. Davis's reasonably royalty opinion because Samsung argues that Ms. Davis did not limit her analysis to the patents-in-suit and did not attempt to account for the value added to Samsung's phones by non-infringing features. *Id.* at 1-2. Second, Samsung seeks to exclude Ms. Davis's testimony about the identity of the relevant articles of manufacture because such testimony is outside Ms. Davis's area of expertise and violates the Court's order limiting each party to two "article of manufacture experts." *Id.* at 2. Third, Samsung seeks to exclude Ms. Davis's testimony "regarding Samsung's alleged intent to adopt the patented designs." *Id.* at 3. Fourth, Samsung argues that Ms. Davis should not be allowed to offer new opinions about Samsung's margins and financial statements, which Samsung asserts violate the Court's Groundhog Day rules. *Id.* Fifth, Samsung seeks to exclude Ms. Davis's assertions that Samsung's white phones were "adjudicated as infringing the D'677." *Id.* The Court addresses these arguments in turn, except for the white phone issue, which the Court discusses together with Apple's white phone-related arguments in Section III.E.3, below.

### 1. Opinion Based on Portfolio of IP

Samsung first argues that Ms. Davis should be precluded from testifying that a reasonable royalty for any or all of Apple's design patents is $24 per phone. ECF No. 3593-2 at 1. Samsung asserts that this opinion contravenes the rule that a reasonable royalty must apportion damages "between the patented improvement and the conventional components of the multicomponent product." *Id.* (quoting *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018)). Samsung argues that a royalty cannot be calculated on a portfolio basis, citing *Oracle America, Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1115 (N.D. Cal. 2011), and *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 725-26 (E.D. Tex. 2011). ECF No. 3593-2 at 1 & n.4.

Samsung has already made the same argument, and the Court has already rejected it. Specifically, in May 2012, Samsung sought to exclude Mr. Musika's "income approach"—the same methodology at issue here—based on Mr. Musika's alleged failure to apportion to other assets. *See* ECF No. 2504 at 4-5. In support of this argument, Samsung cited *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011), *Oracle*, and *Mirror Worlds*. ECF No. 2504 at 4-5. On June 30, 2012, the Court rejected this argument. *See* ECF No. 1157 at 11-12; *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-1846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) ("June 30, 2012 Order"). The Court found that "Samsung's criticisms of Mr. Musika's 'income approach' and 'cost approach' analyses largely go to weight, not admissibility." 2012 WL 2571332 at *8. The Court ruled that "while Samsung may disagree with Mr. Musika's apportionment of any premium for Apple's iPhone and iPad products, his basic income approach methodology is sound and is not subject to exclusion under FRE 702 and *Daubert*." *Id.* Ms. Davis subsequently included the same methodology in her 2013 and 2015 expert reports. *See* Expert Report of Julie L. Davis (Nov. 6, 2015) at 77-79, 98 ("Davis 2015 Report"); Expert Report of Julie L. Davis (June 24, 2013) at 85-86, 106 ("Davis 2013 Report"). Samsung did not appeal the Court's admission of testimony based on this methodology. *See* Opening Brief for Defendants-Appellants, *Apple Inc. v. Samsung Elecs. Co.*, Nos. 2014-1335, 2014-1368, 2014 WL

Case No. 11-CV-01846-LHK
ORDER RE *DAUBERT* MOTIONS

2586819, at *72-73 (May 23, 2014) (appealing other aspects of Ms. Davis's testimony).

Samsung argues that Ms. Davis did not adjust her opinion to reflect that the instant retrial only concerns three design patents, as opposed to the seven design patents, eight trade dresses, and eight trademarks that were at issue when Mr. Musika issued his expert report. *Id.* However, this argument ignores that Ms. Davis has consistently stated that her opinion of the reasonable royalty amount for the design IP at issue would be "the same amount for each individual design element as the total group of asserted design-related intellectual property." Davis 2018 Opening Report ¶ 246; Davis 2015 Report ¶ 246; Davis 2013 Report ¶ 246; Davis 2013 Deposition at 218:1-220:11. In response, Samsung cites to Mr. Musika's 2012 deposition testimony, in which Mr. Musika stated that if only one trade dress were at issue instead of all of the asserted design IP, then his opinion of the reasonable royalty would drop to $4 per unit. *See* ECF No. 3614-3 at 1 (citing Musika 2012 Deposition at 85:7-86:10).

Samsung ignores that later in the same deposition, Mr. Musika explained that his $4 per unit opinion was based on Apple's "Made for iPhone, iPad, and iPod program" licenses, in which Apple permits hardware and software developers to use the iPhone, iPad, or iPod trademarks and some related logos on products designed as accessories to Apple products. Musika 2012 Deposition at 104:11-18. Mr. Musika opined that the "Made for" program licenses supported the conclusion that $4 is the minimum that Apple would be willing to accept for the use of its "trademark or an element of [its] design IP." *Id.* at 104:19-22. Samsung also ignores that Samsung later moved to exclude Mr. Musika's opinion of the $4 floor because the "Made for" licenses were not comparable to any of the intellectual property at issue in this case. *See* June 30, 2012 Order, 2012 WL 2571332 at *8 (citing *ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)). The Court granted Samsung's motion to exclude "Mr. Musika's opinion that the 'Made for' program establishes a floor for reasonable royalties." *Id.* Pursuant to the Court's order, at the 2012 trial Mr. Musika did not opine that there was a floor for reasonable royalties, nor did he opine that licensing only one trade dress or one element of Apple's design IP would require a different royalty than licensing a bundle of Apple's design IP. *See* Trial Tr. 2091:3-2092:2;

2164:10-2165:11.  Instead, he testified that "whether it's one or all of them, that would be $24."  *Id.* at 2164:24-25.

In short, Samsung now seeks to have the Court reverse its earlier admission of the income approach methodology based on two statements in a deposition that (1) the Court later excluded from trial at Samsung's request, (2) were made by a witness who died in December 2012, and (3) have not been adopted by Apple's current witness, Ms. Davis.  Given these unique circumstances, the Court finds that relying on Mr. Musika's deposition testimony to change the Court's earlier ruling would be unduly prejudicial to Apple, given that it is impossible for Mr. Musika, who died in December 2012, to explain the reasoning behind these statements.  In addition, as stated earlier, Samsung did not appeal this part of Ms. Davis's opinion, and so the Court's earlier ruling admitting testimony based on this methodology is the law of the case.  Thus, the only basis for the Court to reconsider its prior rulings regarding the admissibility of the income approach would be a change in the law related to this issue.

Samsung cites *Exmark*, which the Federal Circuit decided in January 2018.  In *Exmark*, the Federal Circuit held that the district court erred by admitting a damages expert's opinion that "failed to adequately tie the expert's proposed reasonable royalty rate to the facts of th[e] case." 879 F.3d at 1349.  This requirement—that an expert must tie her rate to the facts of the case—is not new.  Indeed, the *Exmark* opinion cites the Federal Circuit's 2011 decision in *Uniloc* for this principle.  *Id.* (quoting *Uniloc*, 632 F.3d at 1315).  This Court previously acknowledged in its June 30, 2012 Order that Samsung's motion to exclude Mr. Musika's income approach methodology was based in part on *Uniloc*.  2012 WL 2571332 at *8.

The facts of *Exmark* are also distinguishable from the instant case.  "After a discussion of each of the *Georgia-Pacific* factors, including the benefits of the patented technology, sales and profitability, and the competitive relationship of the parties, Exmark's expert concluded with little explanation that Exmark and [the defendant] would have agreed to a 5% reasonable royalty rate . . . ."  *Exmark*, 879 F.3d at 1349.  The damages expert in *Exmark* did not explain the relationship between her analysis of the *Georgia-Pacific* factors and her conclusion that the parties would

agree to a 5% royalty rate. *Exmark*, 879 F.3d at 1349-50. By contrast, here, Ms. Davis includes

specific explanation of the principles, assumptions, and calculations that led to her identification

of the income value reference point to which Samsung objects. *See* Davis 2018 Report at 83

(incorporating by reference Musika Report ¶¶ 182-90); Exhibits 41-R, 41.1-S, 41.2-R, 41.3-S,

41.4, and 41.5 to the Davis 2018 Report. Moreover, *Exmark* does not address the propriety of

calculating royalties based on a portfolio of intellectual property rights. Accordingly, *Exmark* did

not change the applicable law in a way that would require the Court to change its previous ruling

on the admissibility of Apple's experts' income approach methodology. As such, Samsung's

motion to exclude Ms. Davis's income approach opinions is DENIED.

### 2. Article of Manufacture Opinions

Samsung next argues that Ms. Davis should be precluded from opining on the relevant

article of manufacture. ECF No. 3593-2 at 2. Samsung contends that such testimony (1) violates

the Court's order limiting each party to two "article of manufacture" experts, and (2) falls outside

Ms. Davis's area of expertise. *Id.* Apple responds that Ms. Davis does not violate the Court's

order because she does not offer an ultimate opinion about the identity of the relevant article of

manufacture. ECF No. 3612 at 2. Apple also asserts that the financial and marketing documents

that Ms. Davis discusses are within her area of expertise, and Samsung's damages expert Mr.

Wagner discusses the same type of information in his rebuttal report. *Id.* at 2-3. Samsung replies

that Apple's argument directly contradicts the argument that Apple made in its motion to strike

Dr. Reibstein's report. ECF No. 3614-3 at 2.

The Court agrees with Samsung. In reopening discovery and permitting the parties to call

different experts, the Court explicitly limited each party to two experts related to identifying the

relevant article of manufacture. *See* ECF No. 3542 (Nov. 30, 2017 Case Management Order);

ECF No. 3546 at 7-8 (transcript of Nov. 30, 2017 case management conference). At the

November 30, 2017 case management conference, the Court distinguished between the damages

experts and "whatever experts [the parties] thought were most appropriate for article of

manufacture." ECF No. 3546 at 8:1-3. The Court went on, "I would just limit you to two. So

we'd keep the damages expert as is, but as far as article of manufacture, you each get to pick two new experts." *Id.* at 8:3-5. At that hearing, Apple's counsel represented that Ms. Davis would "giv[e] an opinion on the quantitative process on our article of manufacture," "testify to reasonable royalty," and "*do the additional computation, because that's all it is*, on the total profits on whatever article of manufacture Samsung identifies." *Id.* at 15:4-11 (emphasis added). Apple's counsel also characterized the role of Ms. Davis as the expert who "[is] going to give the jury the computations and the numbers" and argued that "[t]here is no reason that [Ms. Davis and Mr. Wagner] can't do this additional computation." *Id.* at 15:14-19; *see also id.* at 17:18-19 (Apple's counsel characterizing Ms. Davis as the expert "who [is] giving the numbers the jury is going to have to pick from"). Indeed, Apple even characterized Ms. Davis's report as limited to "provid[ing] her damages calculations" in the context of its motion to strike Dr. Reibstein's report, in which Apple heavily relied on the Court's order limiting each side to two article of manufacture experts and one damages expert as a basis for striking Dr. Reibstein's report. *See* ECF No. 3573-3 at 4.

The Court acknowledges that in other circumstances, it may be appropriate for a damages expert to opine on some aspects of the article of manufacture issue, particularly the part of the fourth factor that addresses whether a component that embodies the patented design can be sold separately from the product as a whole. However, here, the Court finds that interests of fairness and efficiency outweigh any harm caused by precluding both parties' damages experts from offering opinions on the relevant article of manufacture. The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties—both under the Federal Rules of Evidence and as part of the Court's inherent authority. *See, e.g.*, Fed. R. Evid. 403 (Court may exclude relevant evidence, the probative value of which is nevertheless substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"); *Navellier v. Sletten*, 262 F.3d 923, 941-42 (9th Cir. 2001) (imposing limits on the parties' presentation of evidence is within "the broad discretion that the district court had to manage the trial"); *Beatrice Foods Co. v. New England*

*Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) (per curiam) ("A trial court has broad discretionary authority in managing the litigation before it . . . ."). The Court finds that in this instance, it would be unfair and unduly prejudicial to Samsung to allow all three of Apple's experts to offer opinions related to identifying the article of manufacture when the Court has enforced the same order limiting the number and types of experts to exclude one of Samsung's experts. Accordingly, the Court GRANTS Samsung's motion to exclude Ms. Davis's opinion that certain financial or marketing information supports Mr. Ball's and Dr. Kare's conclusions about the identity of the relevant article of manufacture. However, Ms. Davis will be permitted to rely on Mr. Ball's and Dr. Kare's opinions about the relevant article of manufacture in order to perform her calculations. Similarly, Samsung's damages expert, Mr. Wagner, will be precluded from offering opinions related to the identity of the relevant article of manufacture.

### 3. Copying

Samsung seeks to exclude several statements in Ms. Davis's reports related to Samsung's alleged intent to copy the patented designs. ECF No. 3593-2 at 3. Specifically, Samsung seeks to exclude paragraph 140H and footnote 202N of Ms. Davis's opening report and paragraphs 32 through 35 of Ms. Davis's reply report. The Court has already excluded these portions of Ms. Davis's reports insofar as Ms. Davis offers them to identify or to support other experts' identification of the article of manufacture. *See supra*, Section III.B.2. However, as the Court previously ruled, "to the extent that Apple's technical experts provide conclusions at the retrial regarding Samsung's adoption of Apple's features, [Ms.] Davis may assume those conclusions as fact in her testimony because her assumptions will be based on foundational testimony given at trial." *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-1846-LHK, 2013 WL 5955666, at *4 (N.D. Cal. Nov. 6, 2013). Accordingly, Samsung's motion to exclude Ms. Davis's testimony related to copying is GRANTED insofar as such testimony is offered to identify or to support other experts' identification of the article of manufacture.

### 4. New Margin and Financial Statement Opinions

Samsung next argues that Ms. Davis should not be allowed to offer a new opinion about

Samsung's margins and financial statements contained in paragraph 166 of Ms. Davis's reply report because it violates the Court's Groundhog Day rule. ECF No. 3593-2 at 3. Apple responds that Ms. Davis can offer opinions about Mr. Wagner's allegedly misleading use of Samsung's financial statements. ECF No. 3612 at 3. Apple adds that each side has argued its view of the comparison at trial, and so either both opinions should be admitted or both should be excluded. *Id.* (citing ECF No. 1842 at 3073:5-3075:17 and ECF No. 2843 at 1179:13-1180:13). Because Apple is correct that Ms. Davis previously offered an opinion at trial that operating profit data from Samsung's Telecommunications segment is not probative of the profit on the phones at issue in this case without objection from Samsung, the Court DENIES Samsung's request to preclude Ms. Davis from offering the same opinion now.

**C.      Apple's Motion to Strike Dr. Reibstein's Report**

As explained above, on February 1, 2018, Apple filed a motion to strike the report of Samsung's marketing expert, Dr. Reibstein. ECF No. 3573-3. On February 6, 2018, Samsung filed an opposition. ECF No. 3581-3. On February 7, 2018, Apple filed a reply. ECF No. 3583. Pursuant to the case schedule already set by the Court, Apple's reply expert reports were due the next day, on February 8, 2018. Expert discovery was to close on February 16, 2018, and dispositive motions and *Daubert* motions were due one week after that, on February 23, 2018. ECF No. 3542.

Because Apple's reply expert reports were due the day after briefing was completed and expert discovery was set to close approximately one week later, the Court determined that a quick ruling was needed. Indeed, delaying the expert or motions deadlines would very likely have cascading effects on the remaining pretrial deadlines as well as the trial dates, all of which were already set on a compressed schedule. On February 8, 2018, the Court granted the motion to strike without a written decision. *See* ECF No. 3585. The Court now briefly explains its reasons for striking Dr. Reibstein's report.

As explained above with respect to Ms. Davis's opinions on the identity of the article of manufacture, the Court allowed each side to call two new experts to identify the article of

35

manufacture, but the Court required each side to keep the same damages expert that they called in the 2013 retrial—for Samsung, Mr. Wagner was the damages expert. *See* ECF No. 3542 (Nov. 30, 2017 Case Management Order); ECF No. 3546 at 7-8, 15 (transcript of Nov. 30, 2017 case management conference). Samsung's counsel requested several times that the Court permit Samsung to call an expert to "help Mr. Wagner" with the "calculations of article of manufacture." ECF No. 3546 at 7:13-15; *see also id.* at 12:1-3, 12:16-19, 14:20-21. The Court denied this request and stated that each side could have two experts to identify the article of manufacture and the same damages expert that testified at trial in 2013. *Id.* at 19:16-20-20:7.

Nevertheless, despite being offered as an article of manufacture expert, Dr. Reibstein does not offer an opinion identifying the relevant article of manufacture. Indeed, for the first 110 pages of Dr. Reibstein's 118-page report, Dr. Reibstein fails to identify any article of manufacture. He first identifies an article of manufacture on page 111 of his 1118-page report. *See* ECF No. 3587-4 ¶ 199. Instead, nearly half of Dr. Reibstein's report is devoted to a discussion of various consumer surveys that relate to consumers' reasons for choosing the phone that they bought. *See id.* at 45-99. However, the fact that some percentage of consumers selected their phones based primarily on price while some other percentage of consumers selected their phones based primarily on the phone's battery life and yet another percentage of consumers selected their phones based primarily on the phone's color does not identify the article of manufacture to which Samsung applied the patented designs in this case. *See id.* at 47-48. Moreover, when Dr. Reibstein does identify the relevant articles of manufacture, he does not offer his own opinion. Rather, Dr. Reibstein assumes the articles of manufacture identified by Samsung in its interrogatory responses are the relevant articles of manufacture. *Id.* at ¶ 199.

Thus, Dr. Reibstein's report does not contribute to identifying the article of manufacture— the very purpose for which the Court permitted the parties to call new experts. *See* ECF No. 3542 (Nov. 30, 2017 Case Management Order); ECF No. 3546 at 7-8, 15 (transcript of Nov. 30, 2017 case management conference). Instead, Dr. Reibstein's contribution is to augment Mr. Wagner's survey-based damages calculations, which the Court discusses in more detail in the sections that

36

follow. Thus, despite the Court's denial of Samsung's requests for permission to call an expert to help Mr. Wagner with damages, Samsung nevertheless offered Dr. Reibstein to help Mr. Wagner with damages. The Court has the inherent authority to enforce its orders. *See Degen v. United States*, 517 U.S. 820, 827 (1996) (district court "has at its disposal an array of means to enforce its orders . . . [and] its powers include those furnished by . . . inherent authority"); *Navellier*, 262 F.3d at 941-42 (9th Cir. 2001) (imposing limits on the parties' presentation of evidence is within "the broad discretion that the district court had to manage the trial"). Because Dr. Reibstein's report was not directed to a permissible purpose under the Court's November 30, 2017 case management order, the Court granted Apple's motion to strike it.

## D. Apple's Motion to Exclude Mr. Wagner's Allegedly Improper Apportionment Opinions

Apple seeks to exclude Mr. Wagner's opinions that rely on consumer survey data because Apple argues such opinions engage in apportionment, which is not permissible for damages sought under § 289. ECF No. 3594-3 at 1. Apple also argues that even if the survey-based methodologies were not apportionment, they are unreliable for several reasons, including because the surveys do not deal with specific components of the phones at issue and because Mr. Wagner has not established why surveys about consumers' reasons for purchasing a phone are relevant to determining the amount of profit that Samsung earned on a component of that phone. *Id.* at 2. Samsung responds that Mr. Wagner's methodology does not assess the value of the designs, but rather assesses what portion of Samsung's profit from the entire phones is attributable to the relevant components. ECF No. 3603-3 at 1. Apple replies that Mr. Wagner's survey-based approaches use the same surveys and calculations as did his previous apportionment method, which the Court excluded as contrary to § 289. ECF No. 3616-2 at 1.

Before the 2012 trial, the Court excluded Mr. Wagner's opinions that apportioned Samsung's profits based on Apple's design patents as contrary to § 289 and thus unreliable under Rule 702 and *Daubert* and unduly prejudicial under Rule 403. 2012 WL 2571332 at *6. The Federal Circuit affirmed the Court's determination that § 289 prohibits limiting damages to the

profit attributable to the infringement, or in other words, the profit attributable to the design. *Federal Circuit Opinion*, 786 F.3d at 1001. At oral argument before the U.S. Supreme Court on October 11, 2016, Samsung abandoned its apportionment argument, and thus interpretation of the term "article of manufacture" was the only issue before the U.S. Supreme Court. *See Supreme Court Decision*, 137 S. Ct. at 434 n.2; Tr. of U.S. Supreme Court Oral Arg. at 6. As a result, the U.S. Supreme Court did not reach how damages are to be calculated on an article of manufacture that is less than the product as a whole.

Because the U.S. Supreme Court held that the relevant article of manufacture could be something less than the product as a whole, there must be some way for the parties to calculate profits on a component of a product when the defendant does not maintain profit data on that specific component. In some circumstances, consumer survey data may play a role in that calculation. It is clear that what remains impermissible is for Samsung to apportion profits based only on design. However, some of the survey questions upon which Mr. Wagner relies go beyond design, and instead address other attributes of a phone's case or screen. *See, e.g.*, ECF No. 3600-5 ¶ 420. As a result, Mr. Wagner's approach is not all forbidden apportionment, insofar as not all of his apportionment seeks to separate out the profits attributable to the design of the phones. Rather, the dispute turns on whether Mr. Wagner's use of the surveys is sufficiently reliable to satisfy *Daubert*. For two reasons, the Court concludes that it is not. Specifically, Mr. Wagner fails to explain one of the fundamental assumptions underpinning his survey-based methodology and the surveys are not sufficiently tied to the facts of this case.

First, throughout Mr. Wagner's article of manufacture calculations, the surveys upon which Mr. Wagner relies do not directly or indirectly measure customers' willingness to pay for certain components or features. Rather, the J.D. Power and Associates surveys cover "factors that impact customer satisfaction," ECF No. 3600-5 ¶ 405, and customers' reasons for choosing the phone that they purchased, *id.* ¶ 406. Mr. Wagner does not explain how this data or "how the purchase driver percentage determined by the Nielsen survey" are related to Samsung's profits, nor does he explain the basis for his assumption that there is "a direct one-to-one correlation"

between the consumer preference survey results and Samsung's profits. *See* ECF No. 3603-6 at 1285. Indeed, Mr. Wagner conceded in his deposition that his report does not explain the basis for his one-to-one assumption:

> Q: And your report doesn't explain why you concluded that design, style, form factor is the purchase driver that lines up most closely with what Samsung identifies as the article of manufacture, correct?
>
> A: That is true.
>
> Q: Your report does not explain how purchase driver percentage is related to Samsung's profits on the alleged article of manufacture, correct?
>
> A: No, except for the logic that I believe there's a direct correlation.
>
> Q: You have assumed a direct one-to-one correlation between purchase driver percentages and Samsung's profits, correct?
>
> A: Yes, that's the way the logic works.
>
> Q: Your report doesn't explain anywhere the basis for that assumption, correct?
>
> A: I would agree with that.
>
> Q: Your report doesn't explain how the purchase driver percentage determined by the Nielsen survey is related to Samsung's profits on the article of manufacture that Samsung has identified, correct?
>
> A: Correct.

*Id.* at 1285:3-25.

Thus, Mr. Wagner's survey-based methodology is premised on an assumption—that there is a one-to-one correlation between the survey results and Samsung's profits—for which he offers no explanation. In *Exmark*, the Federal Circuit was troubled by a similar unexplained logical leap. *See Exmark*, 879 F.3d at 1350. Specifically, the Federal Circuit explained in *Exmark* that "the expert acknowledged that [the defendants] have patents covering other components of the accused mowers. But she ignored those components, opining without support that they do not relate to the quality of cut, which she considered 'paramount' to selling mowers." *Id.* The Federal Circuit stated that it was "skeptical that other patented components of the mower bear no relation to the

39

overall value of the accused mowers," which would influence the relative value of the patent at issue in *Exmark*. *Id.* The Federal Circuit went on, "Even assuming, however, that [the other patented components have no influence on the mowers' value], the expert was required to support her opinion to that effect with sound economic reasoning. Merely concluding that other components do not affect the value of the accused mower amounts to nothing more than speculation." *Id.* "Without a more detailed analysis, the jury is simply left to speculate or adopt the expert's unsupported conclusory opinion." *Id.*

Here, Mr. Wagner asserts that survey results about consumers' reasons for purchasing their phones are directly correlated with the amount of profit attributable to the components associated with those reasons, but he does not explain why this is a sound assumption. Indeed, there are reasons to believe that it is not a sound assumption. For example, the percent of consumers that chooses any given feature as the most important factor in their purchasing decision could vary widely based on the number of features surveyed. If the survey only offers two features—say, "style" and "network speed"—the percentage of users selecting either of those features is likely to be much higher than if those same features are two out of twenty features surveyed and even higher if those same features are two out of a hundred features surveyed. Samsung conceded this basic point during the hearing on March 29, 2018. *See* ECF No. 3643 at 55:9-15, 56:5-7 ("[Y]ou talked about the number of factors. Obviously, you're right, if there are more factors, that will change the percentage."). Under Mr. Wagner's methodology, the amount of profits attributable to the same feature could vary significantly based on the design of the survey. Under the Federal Circuit's decision in *Exmark*, when such a foundational assumption as Mr. Wagner's one-to-one ratio is not supported by any explanation, let alone "sound economic reasoning," the resulting opinion is not admissible under *Daubert*. *Exmark*, 879 F.3d at 1350.

Second, even if Mr. Wagner's survey-based methodology were reliable, the Court finds that the survey data that Mr. Wagner uses is not sufficiently related to the facts of this case. *See Summit 6*, 802 F.3d at 1296 ("[A] reasonable or scientifically valid methodology is nonetheless unreliable where the data used is not sufficiently tied to the facts of the case."). Specifically, the

surveys upon which Mr. Wagner relies are not limited to the products at issue in this case. Nor do the surveys deal specifically or sometimes even generally with the articles of manufacture that Samsung contends are relevant in this case. Instead, the surveys include general categories such as a phone's color, durability, camera quality, battery performance, and price. Mr. Wagner then selects groups of features that he contends are most closely associated with Samsung's asserted articles of manufacture. However, Mr. Wagner offers no explanation for why he believes that general survey responses about cell phone purchasing decisions—or even Samsung customers' purchasing decisions—are representative of what the results would be for the specific phones at issue in this case. Mr. Wagner also does not attempt to account for other potentially confounding factors in this case. For example, as Samsung's designs became more similar to Apple's designs, design may have become a less important purchasing factor because design no longer significantly distinguished between the different options. Accordingly, Samsung's infringement may have depressed the number of survey respondents who say that the style or shape of the phone—two factors that Mr. Wagner associates with the article of manufacture for the D'087 and D'677 designs—were the most important feature in their purchasing decision. Mr. Wagner's methodology does not address any of these issues.

Samsung relies on the Federal Circuit's decision in *Summit 6*, 802 F.3d 1283, a utility patent infringement case that concerned cell phones' cameras, in which the Federal Circuit approved of an expert's reasonably royalty methodology that incorporated survey data. However, *Summit 6* is distinguishable. In *Summit 6*, which involved method claims, the expert first estimated the revenue of each phone attributable to the phone's camera by using "annual reports, internal cost and revenue spreadsheets, and interrogatory responses to determine that the camera component accounted for 6.2% of the phone's overall production cost." 802 F.3d at 1297. The expert then calculated 6.2% of the revenue from each phone and attributed that revenue— $14.15—to the camera. *Id.* Next, the expert relied on surveys to estimate "the percentage of camera users who used the camera to perform the infringing methods rather than for other purposes" and determined that at least 20.8% of camera users used the camera for the infringing

41

features. *Id.* The expert then calculated 20.8% of the $14.15 of revenue attributable to the camera to conclude that $2.93 of the revenue for each phone was due to the infringing features. The expert then further reduced that amount to account for profit margins and capital asset contributions and ultimately concluded that $0.56 of the profit on each phone was attributable to the infringement. *Id.*

Thus, the expert in *Summit 6* first attributed profits based on the cost of the components—a step that grounded the methodology in the facts of the case and a step that Mr. Wagner's survey-based methodology does not include. The *Summit 6* expert then used survey data that was closely tied to the feature at issue—the camera—and specifically to how users used the cameras, in order to calculate the amount of profit attributable to the infringing feature. *See id.* In holding that the district court did not abuse its discretion in admitting the expert's testimony, the Federal Circuit stressed that the expert's methodology first estimated the "economic benefit from infringement by *specifically focusing on the infringing features* and by valuing those infringing features" based on the defendant's own data. *Id.* at 1298 (emphasis added). The Federal Circuit also relied on precedent that recognized a relationship between the frequency of use of an infringing feature and its value. *Id.* By contrast, Mr. Wagner's methodology uses broad survey response categories that are not sufficiently tied to the facts in this case. Mr. Wagner then asserts without explanation that the ratio of users who found a feature important to their purchasing decision is directly correlated to the percent of profit attributable to the corresponding article of manufacture. Thus, the Court concludes that Mr. Wagner's methodology is distinguishable from the expert's methodology in *Summit 6*. The Court finds that Mr. Wagner's methodology is not reliable and is not sufficiently tied to the facts of this case. Moreover, such evidence would confuse and potentially mislead the jury and thus should be excluded under Federal Rule of Evidence 403. Accordingly, Apple's motion to exclude Mr. Wagner's opinions related to his survey-based methodology is therefore GRANTED.

United States District Court
Northern District of California

### E. Apple's Motion to Exclude Mr. Wagner's Testimony on SDC Cost Data, Apple Cost Data, and White Phones

Apple also moves to exclude certain testimony from Mr. Wagner on three grounds. ECF No. 3594-4. First, Apple argues that data from non-party Samsung Display Co. ("SDC"), upon which Mr. Wagner relies for some calculations, was produced in a manner that prevented Apple from investigating its reliability. *Id.* at 1. Second, Apple argues that its own cost data is irrelevant to determining Samsung's profits and that Mr. Wagner's methodology for using the Apple cost data is unreliable in any event. *Id.* at 2-3. Third, Mr. Wagner excludes from his calculations more than a million units from the infringement verdict totals because he asserts that those phones were white, and therefore could not have infringed the D'677 patent. *Id.* at 3. Apple objects on several grounds, including that Samsung never raised this argument during the 2012 trial on both liability and damages, that Samsung stipulated to the data upon which the jury based its verdict, that Mr. Wagner is not qualified to give an infringement opinion, and that Mr. Wagner's method for determining the number of white phones is unreliable. *Id.* The Court addresses these issues in turn.

#### 1. SDC Cost Data

Apple asserts that Samsung produced the SDC cost data "just hours before fact discovery closed on December 21, 2017, and after all Samsung fact depositions." ECF No. 3594-4 at 1. The data was accompanied by a declaration signed by SDC employee Hyangsook Park that stated that the document containing the data was created on December 5, 2017. ECF No. 3594-10 ¶ 6(a). Apple asserts that it objected to the timing of Samsung's production and to Samsung's failure to identify SDC or Ms. Park in its interrogatory responses. ECF No. 3594-4 at 1. In response, Samsung represented that Ms. Park "does not have discoverable personal knowledge beyond the facts" in the declaration and that Samsung has no control over non-party SDC. *Id.* Despite Samsung's representation that Ms. Park did not have any discoverable knowledge, Mr. Wagner had a conversation with Ms. Park to better understand the content of the SDC data produced. *Id.* Apple objects that based on the timing of the production of the SDC data, Apple had no opportunity to depose Ms. Park or investigate in any way the reliability of the data or the

circumstances surrounding its compilation. Apple contends there are at least two reasons that such investigation was needed here.

First, the SDC data only includes data covering three months out of the fifteen-month damages period: April 2011, October 2011, and April 2012. ECF No. 3594-4 at 2. Ms. Park does not state, and Mr. Wagner did not know, why no data from the other months of the damages period were produced. *Id.* Thus, Apple asserts that it is impossible to determine whether the cost data from the three months produced are representative of the broader damages period. *Id.*; ECF No. 3643 at 77:12-78:10.

Second, Apple argues that the SDC data purport to relate to component costs for the manufacture of infringing phones during periods (October 2011, April 2012) in which Samsung was no longer making and selling several of the phones at issue. ECF No. 3594-4 at 2; ECF No. 3643 at 77:12-78:10. Although Mr. Wagner later amended his report to exclude what Apple calls this "phantom data," Apple contends that this discrepancy in the SDC data casts doubt on the data's reliability. ECF No. 3594-4 at 2.

The Court recognizes that questions about the reliability of underlying data typically go to the weight, not the admissibility, of an expert's opinion. *See Summit 6*, 802 F.3d at 1299. However, here, the Court's decision to exclude the SDC data is not premised on reliability, but rather on the circumstances of Samsung's production of the data. Samsung never disclosed SDC as a separate entity or Ms. Park in its interrogatory responses. Despite the fact that the SDC data were compiled on December 5, 2017, Samsung did not produce the data until hours before the discovery cutoff on December 21, 2017, after Apple had completed all of its fact depositions. In addition, Samsung represented to Apple that Ms. Park did not have any additional discoverable information, but then allowed Samsung's own damages expert, Mr. Wagner, to speak with Ms. Park for clarification. Given these circumstances, which effectively prevented Apple from conducting any inquiry into the reliability of the SDC data, the Court finds that allowing Mr. Wagner to rely on the SDC data would be unduly prejudicial to Apple. *See* Fed. R. Evid. 403 (courts may exclude relevant evidence, the probative value of which is nevertheless substantially

44

circumstances surrounding its compilation. Apple contends there are at least two reasons that such investigation was needed here.

First, the SDC data only includes data covering three months out of the fifteen-month damages period: April 2011, October 2011, and April 2012. ECF No. 3594-4 at 2. Ms. Park does not state, and Mr. Wagner did not know, why no data from the other months of the damages period were produced. *Id.* Thus, Apple asserts that it is impossible to determine whether the cost data from the three months produced are representative of the broader damages period. *Id.*; ECF No. 3643 at 77:12-78:10.

Second, Apple argues that the SDC data purport to relate to component costs for the manufacture of infringing phones during periods (October 2011, April 2012) in which Samsung was no longer making and selling several of the phones at issue. ECF No. 3594-4 at 2; ECF No. 3643 at 77:12-78:10. Although Mr. Wagner later amended his report to exclude what Apple calls this "phantom data," Apple contends that this discrepancy in the SDC data casts doubt on the data's reliability. ECF No. 3594-4 at 2.

The Court recognizes that questions about the reliability of underlying data typically go to the weight, not the admissibility, of an expert's opinion. *See Summit 6*, 802 F.3d at 1299. However, here, the Court's decision to exclude the SDC data is not premised on reliability, but rather on the circumstances of Samsung's production of the data. Samsung never disclosed SDC as a separate entity or Ms. Park in its interrogatory responses. Despite the fact that the SDC data were compiled on December 5, 2017, Samsung did not produce the data until hours before the discovery cutoff on December 21, 2017, after Apple had completed all of its fact depositions. In addition, Samsung represented to Apple that Ms. Park did not have any additional discoverable information, but then allowed Samsung's own damages expert, Mr. Wagner, to speak with Ms. Park for clarification. Given these circumstances, which effectively prevented Apple from conducting any inquiry into the reliability of the SDC data, the Court finds that allowing Mr. Wagner to rely on the SDC data would be unduly prejudicial to Apple. *See* Fed. R. Evid. 403 (courts may exclude relevant evidence, the probative value of which is nevertheless substantially

44

outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"); *Navellier*, 262 F.3d at 941-42 (imposing limits on the parties' presentation of evidence is within "the broad discretion that the district court had to manage the trial"); *Beatrice Foods*, 899 F.2d at 1177 ("A trial court has broad discretionary authority in managing the litigation before it . . . ."). Samsung's arguments to the contrary are not persuasive. Accordingly, Apple's motion to preclude Mr. Wagner's opinions based on the SDC data is GRANTED.

### 2. Apple Cost Data

Apple also seeks to preclude Mr. Wagner from offering opinions related to the article of manufacture calculations based on Apple's cost data. ECF No. 3594-4 at 2. Apple argues that its costs and profits are irrelevant to the issue of Samsung's profits and that Mr. Wagner has not made any attempt to show that Apple and Samsung "use similar suppliers, negotiate similar supply arrangements, or have similar cost structures." *Id.* at 2-3. Apple also contends that even if its cost data were relevant, Mr. Wagner's calculations are not reliable because he makes unfounded assumptions. *Id.* at 3. Specifically, Mr. Wagner assumes that the cost of one square foot of glass is approximately equal to the "cost of cover glass for one phone." *Id.* However, Mr. Wagner does not provide any reasoning for that assumption, which Apple contends "ignores the manufacturing and processing costs necessary to convert square feet of sheet glass to units of cover glass for Apple's iPhones." *Id.* Samsung responds that Mr. Wagner was forced to make assumptions about Apple's cost data because Apple refused to provide unit-level cost data after having previously stipulated to do so. ECF No. 3604-2 at 2. Apple replies that Samsung's response does not address the main issue, which is that Mr. Wagner's calculations are based on unsound assumptions. ECF No. 3617-2 at 2.

The Court will not exclude Mr. Wagner's testimony because it is based on an assumption that is necessitated by Apple's failure to produce unit-level cost data. The Court finds that the remainder of Apple's arguments concern the weight and not the admissibility of Mr. Wagner's opinions. Apple may "discredit [Mr. Wagner's opinions] . . . through competing evidence and

45

incisive cross-examination." *Murray*, 870 F.3d at 925 (citing *Primiano*, 598 F.3d at 564). Accordingly, Apple's motion to exclude Mr. Wagner's discussion of Apple's cost data is DENIED.

### 3. White Phones

Finally, Apple objects to Mr. Wagner's subtraction of more than a million units from the totals in the jury verdict based on Mr. Wagner's contention that these units were white, and therefore could not have infringed the D'677 patent, which requires a black front face. ECF No. 3594-4 at 3. Apple argues that Samsung never raised this argument during the 2012 infringement trial, that Samsung stipulated to the data in JX1500 (upon which the jury based its verdict), that Mr. Wagner is not qualified to give an infringement opinion, and that Mr. Wagner's method for determining the number of white phones is unreliable. *Id.* Samsung responds that Apple never accused the white phones and that the white phones were never evaluated by the jury. ECF No. 3604-2 at 3. In addition, Samsung argues that the white phones were only included in JX1500 because JX1500 included all accused units, including those units that were accused of trade dress infringement. *Id.* Thus, Samsung asserts that it never stipulated that the white phones should be counted as included in the sales totals for the D'677 patent. *Id.*

The Court finds that Samsung has waived its argument that the totals in JX1500 include sales of non-infringing white phones. Samsung did not raise this issue during the 2012 trial, when both liability and damages were being tried, either as a defense to infringement or as a reason to reduce design patent damages. Samsung did not appeal this issue to the Federal Circuit or to the U.S. Supreme Court. In addition, Samsung's argument that it had no reason to raise the white phone issue until now because the white phones may have infringed Apple's trade dress, which is no longer at issue in the case, is unfounded. Whether or not trade dress damages are available, Samsung has always had reason to argue that the alleged sales of white phones did not infringe Apple's design patent and should be excluded from design patent damages calculations. Accordingly, the Court finds that Samsung has waived this issue.

Moreover, in the seven years of this litigation, Samsung has never produced sales data

showing the number of white phones that Samsung sold. *See* ECF No. 3594-6 ¶¶ 388-89. The lack of sales numbers for white phones prevents the experts from reliably calculating the amount by which the numbers in JX1500 should be reduced. This alone would justify exclusion based on Federal Rule of Evidence 403. Moreover, Samsung's lack of production of sales numbers for white phones underscores that Samsung has never previously raised this D'677 non-infringement and damages argument. The new law in this case about the identity of the article of manufacture is unrelated to this white phone issue. As such, there is no basis for allowing Samsung to relitigate facts to which it stipulated, relied on at trial, and failed to appeal.

Apple's motion to exclude Mr. Wagner's calculations based on the white phones is GRANTED.

## IV. CONCLUSION

As evidenced by the fact that Samsung challenged all three of Apple's experts, Samsung circumvented the Court's limit of two *Daubert* motions per side. Moreover, both parties' *Daubert* motions are to a significant extent motions in limine, rather than traditional *Daubert* motions. *See Van v. Language Line Servs., Inc.*, No. 14-CV-3791-LHK, 2016 WL 3566980, at *1 (N.D. Cal. June 30, 2016) ("Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence." (quoting *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, 2010 WL 4337827, *1 (D. Mont. Oct. 26, 2010))). For the reasons discussed in this order, the Court rules as follows:

- Samsung's motion to exclude the opinion of Mr. Ball is GRANTED IN PART insofar as Mr. Ball will not be permitted to:
  - testify as to perspectives of a DOSA or ordinary observer;
  - offer the marketing opinions contained in paragraph 200 of Mr. Ball's opening report and paragraph 99 of Mr. Ball's reply report; or
  - assert that that the Court's claim construction determined the relevant article of manufacture or that the prior jury determined the relevant article of manufacture based on the products the jury received for its deliberations, its verdict, or the wording of its verdict form.
- Samsung's motion to exclude Mr. Ball's testimony based upon Mr. Ball's alleged misstatement or misapplication of the Court's four-factor article of manufacture test is DENIED.
- Samsung's motion to exclude Mr. Ball's references to Apple's copying allegations

47

is DENIED.

- Samsung's motion to exclude Mr. Ball's references to Apple's design process, marketing philosophy, application of designs to the iPhone, and the iPhone's "look and feel" is DENIED.
- Samsung's motion to exclude Mr. Ball's alleged marketing opinions is DENIED except as to paragraph 200 of Mr. Ball's opening report and paragraph 99 of Mr. Ball's reply report, as described above.
- Samsung's motion to exclude the testimony of Dr. Kare is GRANTED IN PART insofar as Dr. Kare will not be permitted to:
    - testify as to perspectives of a DOSA or ordinary observer;
    - discuss the jury's willfulness verdict;
    - assert that that the Court's claim construction determined the relevant article of manufacture or that the prior jury determined the relevant article of manufacture based on the products the jury received for its deliberations, its verdict, or the wording of its verdict form.
- Samsung's motion to exclude Dr. Kare's testimony based upon Dr. Kare's alleged misstatement or misapplication of the Court's four-factor article of manufacture test is DENIED.
- Samsung's motion to exclude Dr. Kare's references to Apple's copying allegations is DENIED.
- Samsung's motion to exclude Dr. Kare's references to Apple's design process, marketing philosophy, application of designs to the iPhone, and the iPhone's "look and feel" is DENIED.
- Samsung's motion to exclude Dr. Kare's alleged marketing opinions is DENIED.
- Samsung's motion to exclude the testimony of Ms. Davis is GRANTED IN PART insofar as Ms. Davis will not be permitted to offer opinions related to the identity of the relevant article of manufacture.
- Samsung's motion to exclude Ms. Davis's opinion as improperly relying on a portfolio of intellectual property is DENIED.
- Samsung's motion to exclude Ms. Davis's references to copying is GRANTED insofar as Ms. Davis will not be permitted to discuss copying to identify or to support other experts' identification of the article of manufacture.
- Samsung's motion to exclude Ms. Davis's allegedly new margin and financial statement opinions is DENIED.
- Apple's motion to exclude Mr. Wagner's survey-based methodology is GRANTED.
- Apple's motion to exclude Mr. Wagner's reliance on SDC cost data is GRANTED.
- Apple's motion to exclude Mr. Wagner's reliance on Apple cost data in his article of manufacture calculations is DENIED.
- Apple's motion to exclude Mr. Wagner's calculations based on the alleged sales of white phones is GRANTED.

**IT IS SO ORDERED.**

Dated: April 2, 2018

*Lucy H. Koh*

48

United States District Court
Northern District of California

LUCY H. KOH
United States District Judge

Case No. 11-CV-01846-LHK
ORDER RE *DAUBERT* MOTIONS