# EXHIBIT D

# PrawfsBlawg
"Where Intellectual Honesty Has (Almost Always) Trumped Partisanship Since 2005"

## Our Sponsor

Advertise here!

Email
howard.wasserman@fiu.e...







## Recent Posts

Legal Ed's Futures: No. 58 (Gordon Smith)

Legal Ed's Futures: No. 57 (Dan Rodriguez)

Legal Ed's Futures: No. 56 (guest post, Margaret Ryznar)

Rotations

Legal Ed's Futures: No. 55 (Dan Hunter)

Legal Ed's Futures: No. 54 (Robert Ahdieh)

« Reforming Legal Education's Finances: How to Cut Salaries | Main | Sowing Self-Replicating Seeds of Change »

**THURSDAY, NOVEMBER 15, 2012**

## Software Patents and the Smartphone

I will be speaking at Santa Clara Law School's outstanding conference about Solutions to the Software Problem tomorrow. It promises to be a great event, with academics, public interest advocates, and government officials all weighing in.

As a lead-in to the conference, I want to discuss an oft repeated statistic: that there are 250,000 patents that might be infringed by any given smartphone. I'm going to assume that number is accurate, and I have no reason to doubt its veracity. This number, many argue, is a key reason why we must have wholesale reform - no piecemeal action will solve the problem.

Here are my thoughts on the subject:

1. Not all of these patents are in force. Surely, many of them expired due to lack of maintenance fee payments.

2. Not all of the remaining patents are asserted. After all, we don't see every smartphone manufacturer being sued 250,000 times.

3. Many of these patents are related to each other or are otherwise aggregated together. Thus, there are opportunities for global settlements.

4. Even if you think that 250,000 is huge number of patents (and it is, really - there's not disputing that), it is unclear to me why anyone is surprised by the number when you consider what's in a smartphone. More specifically:

- A general purpose computer and all that comes with it (CPU, RAM, I/O interface, operating system, etc.).
- Active matrix display
- Touch screen display
- Cellular voice technology
- 1x data networking
- 3G data networking
- 4G data networking
- Wi-Fi data networking
- Bluetooth data networking
- GPS technology (and associated navigation)
- Accelerometer technology
- Digital camera (including lens and image processing)
- Audio recording and playback
- Battery technology
- Force feedback technology (phone vibration and haptic feedback)

## E-mail Us
## About Prawfsblawg

## Prawfs

Follow Prawfs on Twitter

## Dan Markel
(1972 - 2014)
Founder and Friend

### Ethan J. Leib

Ethan's Home Page
Ethan's SSRN Page
*Deliberative Democracy in America*
*The Search for Deliberative Democracy in China*
*Privilege or Punish?*
*Criminal Justine and the Challenge of Family Ties*
*Friend v. Friend*

### Paul Horwitz

Paul's Home Page
Paul's SSRN Page
*The Agnostic Age*
*First Amendment Institutions*

### Rick Garnett

Rick's Home Page
Rick's SSRN Page

### Matt Bodie

Matt's Home Page
Matt's SSRN Page

### Steve Vladeck

Steve's Homepage
Steve's SSRN Page

### Orly Lobel

Orly's Homepage
Orly's SSRN Page

### Rick Hills

Rick's Homepage
Rick's SSRN Page

### Howard M. Wasserman

Legal Ed's Futures: No. 53 (Dan Rodriguez)

Legal Ed's Futures: No. 52 (Robert Ahdieh)

Legal Ed's Futures: No. 51 (Megan Carpenter)

Legal Ed's Futures: No. 50 (Michele Pistone)

The Future of Legal Scholarship: That Time that Justice Breyer Made Fun of my Harvard Law Review article's title...

Legal Ed's Futures: No. 49 (Frank Pasquale)

Erie and litigation financing

Class certification and universal injunctions

Legal Ed's Futures: No. 48 (Dan Hunter)

## Recent Comments

find a threesome on Coming Out as a Bisexual Woman When You're Dating a Man

jrprof on Submission Angsting Spring 2018

anon2 on Submission Angsting Spring 2018

cranky on Submission Angsting Spring 2018

Anon on Submission Angsting Spring 2018

cranky on Submission Angsting Spring 2018

Asher Steinberg on Quillette on Critical Legal Studies: The Wrong Start to What Could Be an Interesting Discussion

submitTHIS on Submission Angsting Spring 2018

James on The Future of Legal Scholarship: That Time that Justice Breyer Made Fun of

- Design patents

The areas above are by and large "traditional" patent areas - they aren't software for the most part. And there are thousands of patents in each category, before we even get to the potential applications of the smartphone that might be patented (and these are of greater debate, of course).

So, yes, there are many, many patents associated with the smartphone, but what else would you expect when you cram all of these features into a single device? Perhaps smartphones are the focus of the software patent problem because, well, they do everything, and so they might infringe everything. I'm not convinced that this should drive a wholesale reform of the system. Maybe it just means that smartphones are underpriced given what they include. Not that I'm complaining.

Posted by Michael Risch on November 15, 2012 at 10:39 AM in Intellectual Property, Web/Tech | Permalink

### TRACKBACK

TrackBack URL for this entry:
http://www.typepad.com/services/trackback/6a00d8341c6a7953ef017c33861fa

Listed below are links to weblogs that reference Software Patents and the Smartphone:

### COMMENTS

The most idiotic source of much of Apple's patent litigiousness has been the design patents - almost all of the claims being totally farcical. For example, they claimed "rounded corners" on rectangular phones. Hope you discuss that.

Posted by: Ray Silva | Nov 15, 2012 11:03:08 AM

It would be interesting, and an important area of research, to take a look at how many of those patents are standards essential and what that means for licensing. Two years ago a paper was published that looked at the number of standards contained in a laptop, now I wonder what the number of standards - and by extension patents- are contained in a phone.

It recently came to light that HTC may be paying Apple as much as $7-$9 dollars a phone in licenses. While much of that gets passed on to the customer in the form of a price increase it begs the question; are phones [and by extension all generally computing products] OVER priced due to the high cost of licenses?

Maybe it is time to ask the question of whether the patent system is needed for devices like this? The Patent System is there to provide an incentive to innovate [and protection for those who do] but doesn't the market already provide that incentive - particularly in this area? Are there other avenues to "protect" those that innovate - and should those protections be maintained given the incentive the market provides? Have we created a system that stifles innovation through protection? Shouldn't there be some risk involved

Howard's Home Page
Howard's SSRN Page
*Understanding Civil Rights Litigation (2d ed.)*

**Lyrissa Lidsky**
Lyrissa's Homepage
Lyrissa's SSRN Page

**Sarah Lawsky**
Sarah's Home Page
Sarah's SSRN Page

**Daniel Rodriguez**
Dan's Home Page
Dan's SSRN Page

**Richard M. Re**
Richard's Home Page
Richard's SSRN Page

**Carissa Byrne Hessick**
Carissa's Home Page
Carissa's SSRN Page
*Refining child pornography law*

## Guests

## PrawfsBlawg Alumni

## PrawfsBlawg Recommends

Larry Solum (Legal Theory)

CrimProf Blog

ACS Blog

Althouse

Becker-Posner Blog

Crescat Sententia

CrimLaw

Crime & Federalism

How Appealing

Instapundit.com

JD2B.com

Lawrence Lessig

my Harvard Law
Review article's title...

Orly Lobel on The
Future of Legal
Scholarship: That Time
that Justice Breyer
Made Fun of my
Harvard Law Review
article's title...

Orly Lobel on The
Future of Legal
Scholarship: That Time
that Justice Breyer
Made Fun of my
Harvard Law Review
article's title...

Joe on The Future of
Legal Scholarship:
That Time that Justice
Breyer Made Fun of
my Harvard Law
Review article's title...

JollyGoodFellow on
Submission Angsting
Spring 2018

Let'scloneandfarmmamm
on Quillette on Critical
Legal Studies: The
Wrong Start to What
Could Be an
Interesting Discussion

anon3 on Submission
Angsting Spring 2018

## Archives

April 2018

March 2018

February 2018

January 2018

December 2017

November 2017

October 2017

September 2017

August 2017

July 2017

## Categories

10th Anniversary

2016-17 End of Term

in innovation, and has that risk been removed through the patent
protections?

Posted by: Andrew White | Nov 15, 2012 1:12:30 PM

Hi Andrew - thanks for the comment. I debated putting that last sentence in
the post, because it wasn't critical to my point, and I knew I would get the
"what if phones are overpriced" comment (and if you posted it, I'm sure
many others are thinking it).

I left the point in, however, because I think it is an important part of the
debate. I lean strongly in the other direction for the system as a whole
(though I will admit that far too many patents issue that shouldn't).
Justifying it is more than I can do in a comment or even in another blog post.

I will note, though, that standards don't grow on trees. They come from real
investment in real R&D, and there is real risk. The patent doesn't eliminate
that risk - many patented innovations never make it into a standard and
might even fail completely. There's a reason why half of the patents issued
expire by their 12th year due to lack of maintenance fee payments.

Posted by: Michael Risch | Nov 15, 2012 1:46:18 PM

Mr. Risch -
I appreciate the response as this is an area I'm really interested in. I
understand that there is risk in the R&D process and can appreciate the risk
that companies and researchers take in spending both time and money to
develop new tech that goes into the shiny toys we all purchase in such great
quantities - particularly around this time of year. [I'm not different - new
phone here I come!]

That being said - I think there is room for debate on what the fair price of a
device should be. I don't have a stake in this game - I can see the arguments
for "more expensive" and for " less expensive." But I think the debate is
worth having if for no other reason than to fully flesh out what we value and
are willing to pay for.

Should we pay as much as we do for the physical device? What about the
service/connectivity that is required to make the device work? Are we
currently over-valuing the IP inherent in the device? These are all questions I
would be interested to hear well researched/thought-out opinions on.

A further thought - if we allow that by the 12th year many patents in a mobile
device are defunct due to lack of up-keep - and given the length of time it
takes to get a patent through the PTO at this point - should these patents
even be issued? [another question I would be interested in having a
discussion about, not that I have an answer for]

Posted by: Andrew White | Nov 15, 2012 2:05:23 PM

Well said. There are many historical antecedents for the "mobile phone
wars" -- including the early landline phone system (AT&T, at its inception,
was involved in roughly 300 patent infringement lawsuits). The amazing
thing, to my mind, is that things work as well as they do with respect to

Leiter Reports

ProfessorBainbridge.cor

SCOTUSBlog

Sentencing Law and
Policy

The Buck Stops Here

Volokh Conspiracy

Jack Balkin

Conglomerate

The Right Coast

The Yin Blog

Point of Law

Underneath Their
Robes

Ribstein

Mirror of Justice

Mark Kleiman

Truth On the Market

Opinio Juris

Orin Kerr

Juris Novus

Jurisdynamics

TalkLeft

Workplace Prof

Above the Law

National Security
Advisors

Open University

Adjunct Law Profs

Bill of Health

BlackProf

Brian Leiter's Law
School Reports

Chicago-Kent Law
Faculty Blog

Concurring Opinions

Crooked Timber

Dean Dan Rodriguez,
Northwestern Law

Dorf et al. on Law

Drezner

2018 Symposium: Future of Legal Ed

Article Spotlight

Blogging

Books

Carissa Byrne Hessick

Civil Procedure

Constitutional thoughts

Corporate

Criminal Law

Culture

Current Affairs

Dan Markel

Daniel Rodriguez

Daniel Solove

Dave Hoffman

Deliberation and voices

Employment and Labor Law

Entry Level Hiring Report

Erik Knutsen

Ethan Leib

Fernando Teson

Film

First Amendment

Food and Drink

Funky FSU

Games

Gender

Getting a Job on the Law Teaching Market

Hillel Levin

Housekeeping

Howard Wasserman

Immigration

Information and Technology

Intellectual Property

International Law

Jay Wexler

product innovation, continuing R&D, market entry, and ultimately consumer welfare. How many new mobile phones and tablets have been introduced in the past 6 months? Think Samsung, Apple, Nokia, Microsoft, etc. etc. If this is a broken market I would have a hard time keeping up with a well-functioning one!

Of course, I am a notorious "transaction cost optimist," destined to be a minority voice on this issue. And I am always in favor of following Rahm Emanuel's Law and not wasting a good crisis; the mobile wars are an excellent opportunity to fix damages, enablement, indefiniteness, and maybe even international patent litigation coordination. But overall the mobile space seems to be chugging along quite well. And it appears I may have some company in that view.

- Rob Merges

Posted by: Robert Merges | Nov 15, 2012 2:06:52 PM

Surely the number of patents that applies suggests that patent damages are too high? If there are thousands or tens of thousands of patents that apply to the average smartphone, but the smartphone is worth only $200-$300, doesn't that suggest that the value of individual patents must be fractions of a penny per phone? (I suppose that you could respond that phones are really worth more because of the patents they embody, but I am not sure that would increase the values of the patents themselves because presumably the number of phones sold would drop dramatically if they cost 2 or 3 times there current price.) Even assuming that some patents are more important than others, the amounts that people ask per phone in litigation seems to be out of all proportion to the value that the patents actually provide to the end user.

Posted by: anon | Nov 15, 2012 4:25:41 PM

Isn't it the case that most of the hardware related patents are licensed via the sale of components to the end manufacturer? That is, if the surface mount capacitor, processor, or radio are patented, I get a right to install, use, and sell the patented device after I buy the part from the patent holder. The price of the patent license is rolled in the price of the part.

With the software patents, I generally can't buy a thing from the "manufacturer" that I can put into my program's code that allows me to use the patented invention. Of course, I can try to read the patent to get a recipe of sorts for implementation, but since software patents don't generally come with source code nor is it required (unlike mechanical drawings for more traditional inventions), the patent itself is either not enough to understand how to implement the invention or too trivial on its face. Software patent holders tend to use their patents only to stop others from using the invention. Patent holders for physical things tend to want to sell those things (even to their competitors) whether they be end products or parts of a new product.

The trivial software patents (like one-click purchasing) drive a lot of outrage, I think, for obvious reasons. Including those stated above. The less trivial

Empirical Legal Studies Blog

Feminist Law Professors

Findlaw's Writ

Harvard L. Rev. Forum

In Brief--Va. L. Rev.

Is That Legal?

Jotwell

LawBlog Central

LawCulture

Legal Profession Blog

Legal Scholarship Blog

Legal Workshop

Loyola LS Faculty Blog

Mich. L.Rev.'s FirstMPressions

Michael Froomkin

MoneyLaw

Northwestern's Colloquy

Opinio Juris

Rick Hasen's Election Law Blog

Rutgers Review of Criminal Law and Criminal Justice Books

Talkleft

Tex L.R.'s See Also

The BLT

The Faculty Lounge

U.Penn L. Rev. Pennumbra

YLJ Pocket Part

Powered by TypePad

Jonathan Simon

Jr. Law Prawfs FAQ

Judicial Process

Law and Politics

Law Review Review

Legal Theory

Life of Law Schools

Lipshaw

Lyrissa Lidsky

Matt Bodie

Music

Odd World

oPtion$ Book Club

Orly Lobel

Paul Horwitz

Peer-Reviewed
Journals

Prawf Blogger Census

Privilege or Punish

Property

Religion

Research Canons

Retributive Damages

Rick Garnett

Rick Hills

Scholarship in the
Courts

Science

Sponsored
Announcements

Sports

Steve Vladeck

Syllabi Project

Symposium

Tamanaha

Tax

Teaching Law

Television

Things You Oughta
Know if You Teach X

Torts

ones drive outrage in cases where the was some perceived abuse of the system (like the RSA algorithm patent, published in 1977 in a paper and patented in 1983). Much the same is true of the design patent referenced above.

These things, coupled with the fact software patent holders tend to demand dollars per device to license trivial inventions, makes it pretty clear to me that the situation has gotten out of hand.

Posted by: billb | Nov 17, 2012 10:40:35 AM

**POST A COMMENT**

**Verify your Comment**

**Previewing your Comment**

Posted by:  |

This is only a preview. Your comment has not yet been posted.

[Post]  [Edit]

Your comment could not be posted. Error type:

Your comment has been posted. Post another comment

The letters and numbers you entered did not match the image. Please try again.

As a final step before posting your comment, enter the letters and numbers you see in the image below. This prevents automated programs from posting comments.

Having trouble reading this image? View an alternate.

[Continue]

☐ Remember personal info?

Name:

Email Address:

URL:

Comments:

Prawfsblawg: Software Patents and the Smartphone

Preview    **Post**

Travel

Web/Tech

Weblogs

Workplace Law

Subscribe to this
blog's feed

A P R I L   2 0 1 8

| Sun | Mon | Tue | Wed | Thu | Fri | |
|-----|-----|-----|-----|-----|-----|-----|
| 1 | 2 | 3 | 4 | 5 | 6 | |
| 8 | 9 | 10 | 11 | 12 | 13 | |
| 15 | 16 | 17 | 18 | 19 | 20 | |
| 22 | 23 | 24 | 25 | 26 | 27 | |
| 29 | 30 | | | | | |

# Search Site

»

Add me to your
TypePad People list