ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
NATHAN B. SABRI (CA SBN 252216)
nsabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522


Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 11-cv-01846-LHK <br><br> **APPLE INC.'S OPPOSITION TO SAMSUNG'S MOTION IN LIMINE #1** <br><br> Date:  May 3, 2018 <br> Time:  1:30 p.m. <br> Place:  Courtroom 8, 4th Floor <br> Judge:  Hon. Lucy H. Koh |

The Court has twice ruled that the market share evidence that Samsung seeks to exclude is admissible at trial, most recently finding it "highly probative on the question of damages."  Dkt. 3447 at 3 (denying Samsung's motion in limine seeking to exclude the same evidence from the stayed 2016 retrial); Dkt. 1895 at 1 (ruling in 2012 that "[t]his chart is probative and admissible under FRE 403").  This evidence is even more probative now than it was for the stayed 2016 trial, and Samsung's motion does not justify revisiting the Court's prior rulings.

A.     **Samsung's Motion Should Be Denied Under The Groundhog Day Rule.**

At the 2012 and 2013 trials, Apple's damages experts testified that Samsung's market share increased dramatically after Samsung introduced the infringing phones.  *See* Dkt. 1839 at 2044; Dkt. 2840 at 638-639.  Both times, Apple's experts showed the jury a demonstrative titled "Samsung U.S. Smartphone Market Share."  Dkt. 1839 at 2043-2044 (discussing PDX34B.9); Dkt. 2840 at 638-639 (discussing PDX100.8).  Samsung objected in 2012 to Apple's use of this demonstrative in closing argument as "[i]rrelevant, confusing, and misleading" (Dkt. 1872 at 1), but the Court overruled the objection, finding the chart was "probative and admissible."  Dkt. 1895 at 1.  Samsung did not challenge that ruling on appeal.

Before the scheduled 2016 trial, Samsung again challenged the introduction of the market share evidence (Dkt. 3395-3 at 4-6), and the Court again ruled that the evidence is "highly probative" and that its "probative value is not substantially outweighed by a danger of misleading or confusing the jury, or unfair prejudice to Samsung."  Dkt. 3447 at 3.

Samsung now urges the Court to revisit this same evidence a third time, arguing that Ms. Davis' recent deposition testimony "changes the calculus."  Dkt. 3649 at 1.  But there is nothing new about Ms. Davis' opinions regarding this evidence.  Ms. Davis' 2018 opinions regarding the market share evidence are identical to those she offered in 2013 and 2015.  *Compare* Dkt. 3593-4, ¶¶ 48-49, 225 (2018 report), *with* Dkt. 2386-02, ¶¶ 48-49, 225 (2013 report), *and* Dkt. 3336-02 ¶¶ 48-49, 225 (2015 report).  Neither Mr. Musika nor Ms. Davis ever asserted that they had direct evidence that the patented *features* caused the increase in Samsung's market share.  They testified only to the undisputed facts that Samsung's market share skyrocketed after the introduction of the

infringing phones, and that a large share of that increase is attributable to infringing phones.  *E.g.*, Dkt. 1839 at 2044 ("[A]fter [Samsung] introduced the first accused phone, Samsung's market share took an abrupt upward swing."); Dkt. 2840 at 639 ("[A]bout the time Samsung launched the first infringing phone … the market share increased dramatically."); *id.* at 719 ("[I]n the first quarter where you see the jump in the red line, 90 percent of that are infringing phones.").  In other words, sales of the infringing *phones* account for the increase in Samsung's market share. Ms. Davis' recent deposition testimony is the same.  Dkt. 3638-1 at 75 ("Samsung's market share did increase.  It corresponds with the introduction of the infringing products.").

Samsung's present criticism of Ms. Davis' testimony—that she cannot testify specifically that the infringing features caused the market share increase—is also not new.  In 2013, Samsung cross-examined Ms. Davis about the "reason Samsung's market share increased."  Dkt. 2840 at 719.  And in 2016, Samsung sought to exclude the market share evidence because Ms. Davis did not know "how much of the increased Samsung's market share is attributable to Samsung's use of Apple's intellectual property."  Dkt. 3395-3 at 4.  Because the evidence, opinions, and arguments have not changed, the Court's prior ruling that the market share evidence is admissible should "remain in effect per the Groundhog Day rule."  Dkt. 3639 at 1.

### B.        The Market Share Evidence Remains Highly Probative.

Even if the Court were to reconsider its FRE 403 analysis regarding the market share evidence (though it should not), the result would be the same.  Apple's experts should be permitted to testify about the introduction of the infringing phones and the corresponding increase in Samsung's market share exactly as they did at trial, without objection, in 2012 and in 2013.

The comparison of Samsung's market share before and after it introduced the infringing products is circumstantial evidence of demand for the patented features, which is relevant to at least *Georgia-Pacific* Factors 5, 9 and 11.  It is also direct evidence of the success of Samsung's infringing phones, which makes it relevant to *Georgia-Pacific* Factor 8.  *See* Dkt. 3593-4, ¶ 225. Samsung alleges that this evidence is not probative under Factor 8 because Ms. Davis cannot testify to whether the patented features caused the increase in market share or profits.  But Factor

8 addresses the "profitability of the **product** made under the patent; its commercial success; and its current popularity."  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added).  It is not necessary to show a causal relationship between the patented features and that success to render this information relevant.  *See Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 628-629 (E.D. Tex. 2009) (finding the "overwhelming popularity and commercial success of Toyota's hybrid vehicles" probative under Factor 8 where the patents-in-suit concerned an electric vehicle drive train); *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226, 2013 WL 707914, at *4 (N.D. Cal. Feb. 26, 2013) (allowing discovery into "the commercial success and popularity of the [accused] EReaders" because it was relevant to Factor 8 where the patents-in-suit concerned a "controller drive scheme").[1]

        If anything, the probative value of the market share evidence has increased since the Court's earlier finding that it was "highly probative."  Before the scheduled 2016 trial, Samsung argued that the market share evidence should be excluded because fewer products were at issue than in 2012 or 2013, and therefore accounted for a smaller relative portion (17%) of Samsung's sales during the damages period.  *See* Dkt. 3463 at 30 ("As the number of sales actually at issue decreases, the probative value of the evidence decreases.").  Now, however, there are 18 products at issue in the upcoming trial, which account for approximately half of Samsung's sales during that period.  *See* Dkt. 3593-4, Exs. 29-R2, 37.1-R2.

        Finally, the highly probative nature of this evidence is not outweighed by any risk of confusion or prejudice.  Samsung's only alleged prejudice is that the jury may infer that the infringed features caused the increase in market share.  But it is the province of the jury to draw inferences from this evidence.  To the extent that Samsung believes an alternative explanation exists for the increase in its market share coinciding with the introduction of the infringing products, it is free to present them through cross-examination of Ms. Davis (as it did in 2013) or through its own witnesses (to the extent that the theories have been properly disclosed).

---

[1]        While this market share evidence was previously also relevant to Apple's lost profits analysis, Apple is not seeking lost profits at the upcoming trial.

1

2   Dated: April 13, 2018                         WILMER CUTLER PICKERING
                                                    HALE AND DORR LLP
3

4
                                              By:  */s/ Mark D. Selwyn*
5                                                   MARK D. SELWYN

6                                                 Attorneys for Plaintiff
                                                  APPLE INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I hereby certify that a true and correct copy of the above and foregoing document has been

3    served on April 13, 2018, to all counsel of record who are deemed to have consented to electronic

4    service via the Court's CM/ECF system per Civil Local Rule 5.4.

5

6                                                          */s/ Mark D. Selwyn*
                                                           Mark D. Selwyn
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28