```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5

 6   APPLE INC., A CALIFORNIA         )  C-11-01846 LHK
     CORPORATION,                     )
 7                                    )  SAN JOSE, CALIFORNIA
                      PLAINTIFF,      )
 8                                    )  MAY 3, 2018
              VS.                     )
 9                                    )  PAGES 1 - 59
     SAMSUNG ELECTRONICS CO., LTD.,   )
10   A KOREAN BUSINESS ENTITY;        )
     SAMSUNG ELECTRONICS AMERICA,     )
11   INC., A NEW YORK CORPORATION;    )
     SAMSUNG TELECOMMUNICATIONS       )
12   AMERICA, LLC, A DELAWARE         )
     LIMITED LIABILITY COMPANY,       )
13                                    )
                      DEFENDANTS.     )
14   _____ )

15

16                   TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE LUCY H. KOH
17                 UNITED STATES DISTRICT JUDGE

18

19

20                 APPEARANCES ON NEXT PAGE

21

22   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
23

24            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        A P P E A R A N C E S:

 2
          FOR PLAINTIFF          WILMER, CUTLER, PICKERING,
 3        APPLE:                 HALE AND DORR
                                 BY:  WILLIAM F. LEE
 4                                    JOSEPH J. MUELLER
                                 60 STATE STREET
 5                               BOSTON, MASSACHUSETTS  02109

 6                               BY:  MARK D. SELWYN
                                 950 PAGE MILL ROAD
 7                               PALO ALTO, CALIFORNIA  94304

 8                               BY:  AMY K. WIGMORE
                                 1875 PENNSYLVANIA AVENUE, N.W.
 9                               WASHINGTON, D.C.  20006

10                               MORRISON & FOERSTER
                                 BY:  ERIK OLSON
11                               755 PAGE MILL ROAD
                                 PALO ALTO, CALIFORNIA  94304
12
                                 BY:  NATHAN B. SABRI
13                               425 MARKET STREET, 32ND FLOOR
                                 SAN FRANCISCO, CALIFORNIA  94105
14

15        FOR DEFENDANT          QUINN, EMANUEL, URQUHART & SULLIVAN
          SAMSUNG:               BY:  VICTORIA F. MAROULIS
16                                    BRETT J. ARNOLD
                                 555 TWIN DOLPHIN DRIVE
17                               SUITE 560
                                 REDWOOD SHORES, CALIFORNIA  94065
18
                                 BY:  WILLIAM C. PRICE
19                                    JOHN B. QUINN
                                 865 SOUTH FIGUEROA STREET, 10TH FLOOR
20                               LOS ANGLES, CALIFORNIA  90017

21                               BY:  CARL G. ANDERSON
                                 50 CALIFORNIA STREET, 22ND FLOOR
22                               SAN FRANCISCO, CALIFORNIA  94111

23

24

25
```

```
 1      SAN JOSE, CALIFORNIA                    MAY 3, 2018

 2                      P R O C E E D I N G S

 3          (COURT CONVENED AT 1:37 P.M.)

 4              THE CLERK:  YOUR HONOR, CALLING CASE 11-CV-01846,

 5      APPLE, INC., VERSUS SAMSUNG ELECTRONICS, LIMITED, ET AL.

 6          COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 7              MR. QUINN:  GOOD AFTERNOON, YOUR HONOR.

 8          JOHN QUINN FOR SAMSUNG.

 9              MS. MAROULIS:  YOUR HONOR, VICTORIA MAROULIS, COUNSEL

10      FOR SAMSUNG.  WITH US, BESIDES MR. QUINN, ARE BILL PRICE,

11      CARL ANDERSON, AND BRETT ARNOLD.

12              THE COURT:  OKAY.  GOOD AFTERNOON.

13              MS. MAROULIS:  GOOD AFTERNOON.

14              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.

15          FOR APPLE, BILL LEE FROM WILMER, HALE, AND WITH ME AT

16      COUNSEL TABLE ARE MARK SELWYN, JOE MUELLER, AND AMY WIGMORE.

17              MR. SABRI:  GOOD AFTERNOON, YOUR HONOR.

18          NATHAN SABRI FROM MORRISON & FOERSTER FOR APPLE, AND WITH

19      ME IS ALSO ERIK OLSON.

20              THE COURT:  OKAY.  GOOD AFTERNOON AND WELCOME.

21          SO YOU, I HOPE, GOT THE RULING ON MOTIONS IN LIMINE THAT

22      WAS FILED, I THINK, ON MONDAY.

23          AND THEN I JUST FILED TODAY SOME ADDITIONAL EVIDENTIARY

24      OBJECTION RULINGS.  DID YOU GET THAT?

25              MR. LEE:  WE DID, YOUR HONOR.
```

1          MS. MAROULIS:  YES, YOUR HONOR.

2          THE COURT:  OKAY.  ALL RIGHT.

3      AND THERE WERE AT LEAST TWO ISSUES THAT I WANTED YOU TO

4    BRIEF FURTHER.  CAN YOU MEET THOSE DEADLINES?

5          MS. MAROULIS:  YES, YOUR HONOR.

6          MR. LEE:  WE CAN, YOUR HONOR.

7          THE COURT:  OKAY, GOOD.  ALL RIGHT.  THANK YOU.

8      ALL RIGHT.  SO I ONLY HAVE TWO MOTIONS IN LIMINE TO ASK

9    YOU ABOUT TODAY, AND THEN WE HAVE SOME HOUSEKEEPING, SO I'M

10   HOPING THIS WILL NOT BE TOO LONG.

11      LET'S JUST GO TO THE TWO REMAINING MOTIONS IN LIMINE.  ONE

12   IS APPLE'S NUMBER 1 REGARDING INDEPENDENT DEVELOPMENT.  SO

13   LET'S START WITH APPLE ON THAT ONE.

14          MR. LEE:  YOUR HONOR, THIS IS AN ISSUE THAT YOU HAVE

15    ADDRESSED ON A NUMBER OF OCCASIONS BEFORE, AND IF I'M GOING

16    INTO TOO MUCH DETAIL OF THE HISTORY, JUST LET ME KNOW.

17          THE COURT:  WELL, LET ME JUST ASK YOU A SPECIFIC

18    QUESTION.  IF INVALIDITY AND OBVIOUSNESS ARE NOT AT ISSUE,

19    WHICH IS REALLY WHAT JUDGE GREWAL'S ORDER WAS FOCUSSED ON, AND

20    YOU HAD THE OPPORTUNITY TO CONDUCT DISCOVERY DURING THE

21    REOPENED DISCOVERY PERIOD, WHY SHOULD THE PREVIOUS ORDER STILL

22    BE BINDING?

23          MR. LEE:  YOUR HONOR, IT WAS -- JUDGE GREWAL'S ORDER

24    WAS FOCUSSED ON INVALIDITY AND OBVIOUSNESS.

25          THE COURT:  UM-HUM.

1            MR. LEE:  BUT THE PRECISE ISSUE WAS THERE WAS A

2     COPYING ALLEGATION MADE AND INDEPENDENT DEVELOPMENT WAS OFFERED

3     TO REBUT THE COPYING ALLEGATION.  SO I THINK IT'S IMPORTANT TO

4     LOOK AT WHAT THE PRECISE ALLEGATION WAS.

5            AND JUDGE GREWAL, AS A SANCTION, PRECLUDED SAMSUNG FROM

6     RELYING UPON THAT INDEPENDENT DEVELOPMENT TO REBUT A COPYING

7     STORY, OR A COPYING ALLEGATION, BECAUSE THEY HAD NOT PROVIDED

8     THE DISCOVERY OR MADE A DISCLOSURE.

9            BETWEEN YOU AND JUDGE GREWAL, YOU RECONSIDERED, OR YOU

10    WERE ASKED TO RECONSIDER THE MOTION ON THREE DIFFERENT

11    OCCASIONS AND REACHED THE SAME DETERMINATION.

12            AND THEN, AS YOUR HONOR KNOWS, WE HAD THE EVENTS ON THE

13    DAY OF THE OPENING OF THE FIRST TRIAL WHERE YOU WERE ASKED TO

14    RECONSIDER IT AGAIN.  YOU EXCLUDED IT AGAIN.

15            AND IT WAS THEN POSTED ON THE INTERNET AND YOUR HONOR

16    ADDRESSED IT AT THE END OF THE COURT DAY.

17            BUT PERHAPS EVEN MORE PRECISELY, YOUR HONOR, YOUR HONOR

18    RULED ON THIS IN THE 2013 TRIAL.  AND IN THE 2013 TRIAL,

19    INVALIDITY WAS NO LONGER AN ISSUE.  OBVIOUSNESS WAS NO LONGER

20    AN ISSUE.

21            BUT COPYING WAS, AND SAMSUNG OFFERED THE INDEPENDENT

22    DEVELOPMENT EVIDENCE FOR PRECISELY THE SAME REASON, TO REBUT

23    COPYING.

24            AND YOUR HONOR, AT DOCKET 2708 AT PAGE 4, YOU EXCLUDED IT

25    AGAIN BECAUSE IT WAS BEING USED FOR PRECISELY THE SAME PURPOSE.

1      BUT THEN YOU WENT ONE STEP FURTHER, WHICH IS -- AND STATED

2  SOMETHING THAT IS TRUE, WHICH IS THAT THE EVIDENCE IS ACTUALLY

3  EVEN MORE PREJUDICIAL IN THIS CONTEXT BECAUSE INVALIDITY AND

4  OBVIOUSNESS ARE NOT IN THE CASE, AND OFFERING INDEPENDENT

5  DEVELOPMENT EVIDENCE MIGHT, AS YOUR HONOR SAID IN YOUR RULING,

6  CREATE EVEN MORE JUROR CONFUSION.

7      THAT RULING WAS APPEALED TO THE FEDERAL CIRCUIT.  THE

8  QUESTION OF WHETHER THIS INFORMATION COMES IN WAS APPEALED TO

9  THE FEDERAL CIRCUIT, AND APPEALED AFTER THAT SECOND TRIAL WHERE

10  YOUR HONOR EXCLUDED IT WHEN VALIDITY WAS NOT AN ISSUE,

11  OBVIOUSNESS WAS NOT AN ISSUE, AND THAT PRECISE ISSUE WAS

12  APPEALED, THE FEDERAL CIRCUIT AFFIRMED AND FOUND THAT THERE WAS

13  NO ERROR ON YOUR HONOR'S PART IN EXCLUDING THE EVIDENCE.

14      SO WE'RE HERE BACK TODAY, AND PERHAPS, YOUR HONOR, RATHER

15  THAN TRYING TO PUT IT IN THE CONTEXT OF THE 2012 TRIAL, WHICH

16  IT'S AN IMPORTANT BACKDROP BECAUSE THAT'S WHERE IT CAME UP FIVE

17  DIFFERENT TIMES, THIS IS IDENTICAL TO WHAT HAPPENED IN THE 2013

18  TRIAL WHEN YOUR HONOR RECOGNIZED THAT COPYING WAS AN ISSUE,

19  THAT THIS MIGHT BE USED TO REBUT COPYING, BUT VALIDITY AND

20  OBVIOUSNESS WERE NO LONGER AN ISSUE.

21      AND AS A CONSEQUENCE, GIVEN THE GROUNDHOG DAY RULE, THERE

22  WAS NEITHER A REASON NOR AN OPPORTUNITY TO TAKE THIS DISCOVERY

23  ON THIS ISSUE.

24      AND I THINK, YOUR HONOR, THE BEST INDICATION THAT THIS

25  IS -- HOWEVER YOU CHARACTERIZE THE ISSUES THAT WERE INVOLVED IN

1    THE 2012 TRIAL, THE 2013 TRIAL, OR THIS TRIAL, THE WITNESS WHO

2    RESPONDS TO THIS, MR. LUCENTE, THE PARAGRAPHS THAT THEY'RE

3    OFFERING NOW IN DR. LUCENTE'S REPORT ARE VIRTUALLY IDENTICAL TO

4    WHAT JUDGE GREWAL STRUCK AS A SANCTION.

5         SO TO ALLOW THEM TO PROCEED TODAY WOULD BE, IN OUR VIEW,

6    INCONSISTENT WITH THE RULING OF 2013 -- AGAIN, DAMAGES ONLY --

7    AND WOULD ALLOW THEM TO REVIVE AN ISSUE WHICH WAS FIVE TIMES

8    BARRED IN THE FIRST TRIAL.

9         AND IN THE LAST ATTEMPT TO OFFER IT, YOUR HONOR DESCRIBED

10   SAMSUNG'S EFFORTS AS, AND I QUOTE FROM DOCKET 1610 AT 575, "A

11   WILLFUL AND DELIBERATE ATTEMPT TO FURTHER PROPAGATE EXCLUDED

12   EVIDENCE."

13        THIS EVIDENCE WAS EXCLUDED BY JUDGE GREWAL FOR A GOOD

14   REASON.  IT WAS FIVE TIMES REVISITED AND DENIED FOR A GOOD

15   REASON.  IT WAS DENIED IN THE 2013 TRIAL WHERE VALIDITY AND

16   OBVIOUSNESS WERE NOT AT ISSUE.  IT WAS APPEALED TO THE FEDERAL

17   CIRCUIT, AND NO ONE MADE THE ARGUMENT THAT'S NOW BEING MADE TO

18   YOU, AND IT'S PRECISELY THE SAME ISSUE NOW.

19        THE COPYING EVIDENCE IS RELEVANT BOTH TO FACTOR 2 OF THE

20   TEST ARTICULATED BY YOUR HONOR, BUT ALSO THE REASONABLE

21   ROYALTY.  IF THIS WAS GOING TO BE INFORMATION THAT WOULD BE

22   USED TO REBUT IT, IT SHOULD HAVE, FIVE YEARS AGO, BEEN THE

23   SUBJECT OF DISCOVERY.

24             THE COURT:  SO WHAT'S THE PREJUDICE TO APPLE NOW OF

25    LETTING THIS EVIDENCE IN?

1          MR. LEE:  WELL, YOUR HONOR, THE PREJUDICE IS

2     THREE-FOLD.  THE FIRST IS THERE'S EVIDENCE OF INDEPENDENT

3     DEVELOPMENT WHICH WE HAVEN'T HAD A CHANCE TO FULLY DISCOVER OR

4     EXPLORE.

5          THE SECOND IS THAT IT'S EVIDENCE THAT, AS YOUR HONOR SAID

6     IN YOUR 2013 RULING, MIGHT SUGGEST TO THE JURY THAT THERE IS A

7     VALIDITY ISSUE THAT'S INVOLVED AND THAT THIS IS RELEVANT TO THE

8     VALIDITY OF THE D'677 PATENT.

9          AND THEN LASTLY, YOUR HONOR, IT'S NOT JUST RELYING UPON

10    THE GROUNDHOG DAY RULE.  WHEN YOU HAVE A SANCTION BECAUSE

11    SOMEONE HASN'T COMPLIED WITH DISCOVERY FIVE YEARS AGO, AND IT'S

12    BEEN REVISITED ON MULTIPLE OCCASIONS BY YOUR HONOR AND APPEALED

13    TO THE FEDERAL CIRCUIT, I SUGGEST THAT APPLE IS ENTITLED TO

14    RELY UPON THAT RULING, AND TO NOW PUT APPLE IN THE POSITION

15    WHERE WE'RE GOING TO TURN 180 DEGREES AND ALLOW EVIDENCE THAT

16    WAS NEVER THE SUBJECT OF DISCOVERY TO COME IN WOULD BE VERY

17    PREJUDICIAL.

18          THE COURT:  AND SO YOU'RE SAYING YOU DIDN'T TAKE

19    DISCOVERY OF THIS DURING THE REOPENED DISCOVERY PERIOD THAT WE

20    JUST HAD BECAUSE YOU RELIED ON THESE PREVIOUS RULINGS AND THE

21    FEDERAL CIRCUIT RULING?

22          MR. LEE:  YES, YES.

23          AND, YOUR HONOR, YOU'LL RECALL THAT YOU ALLOWED SOME

24    MINIMAL WRITTEN DISCOVERY --

25          THE COURT:  UM-HUM.

1        MR. LEE:  -- DURING THIS REOPENED DISCOVERY PERIOD,

2   AND ONE OF THE THINGS THAT WE ASKED FOR WAS, WHO ARE THE PEOPLE

3   WHO ARE GOING TO SPONSOR THE INFORMATION YOU HAVE ABOUT THE

4   ARTICLE OF MANUFACTURE, WHICH IS WHAT THIS MIGHT BE RELEVANT TO

5   NOW.

6        THIS INFORMATION WASN'T DISCLOSED AS PART OF THAT

7   SUPPLEMENTAL DISCLOSURE OF WHO WOULD BE RELEVANT TO THE ARTICLE

8   OF MANUFACTURE.

9        SO WE STILL -- TO THE EXTENT THAT THERE'S THIS THEORY --

10  AND YOUR HONOR MAY RECALL THIS F700 THAT'S THE FOCUS OF THIS --

11       THE COURT:  SO YOU'RE SAYING SAMSUNG DIDN'T DISCLOSE

12  IT IN, WHAT, RESPONSE TO INTERROGATORIES?  OR WHAT'S --

13       MR. LEE:  YES, ASKING FOR THE PEOPLE MOST

14  KNOWLEDGEABLE ABOUT THEIR ARTICLE OF MANUFACTURE CONTENTIONS.

15       BUT I THINK, YOUR HONOR, THE TRUTHFUL ANSWER IS WE RELIED

16  UPON YOUR HONOR'S PRIOR RULING, WE RELIED UPON WHAT HAPPENED IN

17  THE 2013 TRIAL, WE RELIED UPON THE APPEAL TO THE FEDERAL

18  CIRCUIT, AND WE RELIED UPON THE FACT THAT, AS YOUR HONOR SAID

19  IN 2013, THIS IS THE SAME ISSUE, THIS IS THE SAME EVIDENCE TO

20  REBUT THE SAME ISSUE, AND THERE'S A SANCTION AND I'M NOT GOING

21  TO RELIEVE YOU OF THE OBLIGATIONS OR THE PENALTY FOR HAVING NOT

22  COMPLIED WITH JUDGE GREWAL'S ORDERS.

23       THE COURT:  OKAY.  LET ME HEAR FROM SAMSUNG.

24       IN 2013, I WAS CONCERNED THAT THIS EVIDENCE WOULD INVITE

25  THE JURY TO QUESTION THE 2012 JURY'S LIABILITY VERDICT, SO HOW

```
1        HAS THAT CHANGED?

2                MR. QUINN:  YES, YOUR HONOR.  AS --

3                THE COURT:  AND ARE YOU GOING TO DO IT ON THE WEBSITE

4        AGAIN THIS TRIAL?

5                MR. QUINN:  NO, YOUR HONOR.

6                THE COURT:  YOU'RE NOT?

7                MR. QUINN:  NO.

8                THE COURT:  WHY NOT?  YOU DID IT LAST TIME.

9                MR. QUINN:  IT WAS A MISTAKE, YOUR HONOR.

10           BUT IN ANSWER TO YOUR HONOR'S QUESTION, IT WAS EXCLUDED IN

11       THE 2013 TRIAL BECAUSE THEY -- THE COURT SAID THERE WAS A

12       POTENTIAL FOR JURY CONFUSION, THAT THE JURY MIGHT THINK THAT

13       THIS WENT TO THE VALIDITY OF THE PATENTS WHICH WERE NOT AT

14       ISSUE.

15           THAT IS SOMETHING THAT'S SIMPLY READILY CURED BY AN

16       INSTRUCTION, A SIMPLE INSTRUCTION TO THE JURY THAT THERE IS NO

17       ISSUE ABOUT THE VALIDITY OF THESE PATENTS.

18           I MEAN, TO GET BACK TO THE QUESTION THAT THE COURT POSED

19       TO MR. LEE, YOUR HONOR, WE HAVE A DIFFERENT LEGAL LANDSCAPE

20       HERE NOW.  WE HAVE -- WE'RE ADDRESSING A DIFFERENT ISSUE, OF

21       COURSE, ABOUT WHAT THE ARTICLE OF MANUFACTURE IS, AND IN

22       PARTICULAR, YOU KNOW, THE ONE FACTOR ABOUT THE PROMINENCE OF

23       THE DESIGN, AND THE COURT HAS SAID THAT THE COPYING EVIDENCE IS

24       RELEVANT TO THAT AND WE NEED TO -- WE HAVE A BURDEN THAT'S BEEN

25       IMPOSED ON US, A BURDEN OF PRODUCTION AND COMING FORWARD WITH
```

1    EVIDENCE TO ADDRESS THAT, AND ANTI-COPYING EVIDENCE, IF YOU

2    WILL, YOUR HONOR, IS FAIR GAME AND IT SHOULD BE APPROPRIATE TO

3    ADDRESS THAT.

4         WE DID, IN FACT, IDENTIFY IN OUR INTERROGATORY ANSWERS --

5    AND I CAN CITE THEM TO THE COURT -- THE WITNESSES WHO WOULD

6    SPONSOR THIS EVIDENCE, WHICH INCLUDE MR. H.S. PARK,

7    JINSOO KIM, AND SAM LUCENTE.

8         SO WE'RE REALLY DEALING WITH A VERY DIFFERENT CIRCUMSTANCE

9    HERE.

10        BACK IN 2012, YOUR HONOR, AND 2013, I MEAN, OUR

11   RECOLLECTION -- I BEG TO DIFFER WITH MR. LEE.  IT WAS NOT A

12   SANCTION.  MAGISTRATE GREWAL SAID, AS IT RELATES TO OUR

13   RESPONSES TO VALIDITY INSTRUCTIONS GOING AS TO EVIDENCE WE'D

14   RELY ON TO ESTABLISH THE INVALIDITY OF THE PATENTS, WE

15   APPARENTLY HAD NOT IDENTIFIED THESE DOCUMENTS.  WE CITED BATES

16   NUMBERS, BUT HE SAID OUR REFERENCES WERE NOT ADEQUATE, SO IT

17   WOULDN'T COME IN FOR THE PURPOSES OF VALIDITY.

18        THOSE DOCUMENTS HAD BEEN IDENTIFIED VERY EARLY ON IN THE

19   CASE IN CONNECTION WITH A PRELIMINARY INJUNCTION PROCEEDING.

20   THERE WAS NO -- THERE WAS NO SURPRISE BY THAT.

21        THAT'S ALL WATER UNDER THE BRIDGE.

22        BUT SOME OF THESE -- SOME OF THIS INFORMATION I WOULD

23   POINT OUT IS ALREADY IN THE RECORD, YOUR HONOR, AND IN

24   PARTICULAR THE EXHIBIT, DEFENSE EXHIBIT 684, WHICH HAS THE

25   IMAGES OF ALL THE PHONES BEFORE AND AFTER THE IPHONE.  THERE'S

1    AN ARRAY OF PHONES ON THE TOP BEFORE THE IPHONE AND AN ARRAY OF

2    PHONES AFTER, INCLUDING IMAGES OF THE Q-BALL AND THE F7 -- OR

3    THE F900 PHONE.  THAT IS ALREADY IN EVIDENCE, OR IT WAS IN

4    EVIDENCE IN THE RECORD IN THOSE PRIOR TRIALS.

5         SIMILARLY, THE F700 Q-BALL PHONE ITSELF IS IN EVIDENCE AND

6    WAS RECEIVED IN EVIDENCE.

7         SO AT A MINIMUM, THE MOTION THAT APPLE HAS MADE IS

8    OVERBROAD.

9         BUT WE NEED TO HAVE AN OPPORTUNITY TO RESPOND TO THIS,

10   THIS COPYING EVIDENCE, AND THE COURT -- THERE'S A NEW ISSUE NOW

11   THAT'S BEEN PRESENTED THAT IT'S RELEVANT TO, AND THAT IS THE

12   PROMINENCE, AND THIS GOES TO THAT ISSUE.  WE NEED TO BE ABLE TO

13   DO, TO DO BATTLE WITH THAT.

14        AND AGAIN, YOU KNOW, OUR -- WE DO NOT -- WE DO NOT BELIEVE

15   THAT THIS WAS EXCLUDED AS A SANCTION BY JUDGE GREWAL

16   ORIGINALLY.  I MEAN, IT WAS -- IT WAS AN ISSUE OF WHETHER WE

17   HAD IDENTIFIED IT ADEQUATELY IN OUR RESPONSES TO THE VALIDITY

18   INTERROGATORIES.

19        I CAN IDENTIFY FOR THE COURT -- THIS TIME AROUND IN THE

20   DISCOVERY, WE AGAIN IDENTIFIED ALL THIS INFORMATION EARLY ON.

21   I CAN IDENTIFY THE INTERROGATORY ANSWERS WHERE WE GAVE THEM THE

22   NAMES OF THE SPONSORING WITNESSES IF THAT'S OF INTEREST.

23        THE COURT:  NO.  MR. LEE'S VOICE TRAILED OFF.  I

24    ASSUME THAT WAS A WEAK ARGUMENT, TO BE HONEST.

25        ALL RIGHT.  I THINK I'VE HEARD ENOUGH.

```
 1          DO YOU WANT TO RESPOND, MR. LEE?  AND THEN LET'S GO TO THE

 2    NEXT MOTION.

 3               MR. LEE:  SURE.

 4          YOUR HONOR --

 5               THE COURT:  YES.

 6               MR. LEE:  -- I THINK THE ANSWER TO MR. QUINN'S

 7    ARGUMENT IS AT PAGES 3 AND 4 OF YOUR ORDER IN THE 2013 TRIAL.

 8    SO THIS IS DOCKET NUMBER 2708, AND YOUR HONOR ADDRESSED

 9    PRECISELY THE ISSUE OF WHAT THIS EVIDENCE WAS RELEVANT TO,

10    WHICH WAS TO REBUT COPYING, WHETHER IT WAS EXCLUDED AS A RESULT

11    OF JUDGE GREWAL AND THE COURT'S SUBSEQUENT ORDERS, AND WHETHER

12    THE FACT THAT IT WAS A DAMAGES ONLY TRIAL CHANGED THE

13    LANDSCAPE, AND THE ANSWER IS IT DIDN'T.

14          SO I THINK, YOUR HONOR, WE'RE IN A SITUATION WHERE THAT

15    WAS WHAT YOUR HONOR'S RULING WAS.  THAT RULING WAS APPEALED.

16          SO THE QUESTION OF WHETHER YOUR HONOR ABUSED YOUR

17    DISCRETION OR ERRED IN EXCLUDING THAT EVIDENCE TO REBUT COPYING

18    HAS BEEN AFFIRMED BY THE FEDERAL CIRCUIT, SO AS A COMBINATION

19    OF BOTH THE GROUNDHOG DAY RULE AND LAW OF THE CASE, IT OUGHT TO

20    STAND.

21          TO BE PRECISE, MY VOICE MAY HAVE TRAILED OFF, AND I DIDN'T

22    MEAN FOR IT TO COMPROMISE THE ARGUMENT, BUT THE ARGUMENT

23    THAT THIS -- THEY IDENTIFIED THESE COUPLE OF FOLKS.

24          BUT THIS ARGUMENT THAT THIS IS EVIDENCE THAT REBUTS

25    COPYING WAS FIRST DISCLOSED IN MR. LUCENTE'S EXPERT REPORT, AND
```

1    IT'S THE SAME THING HE SAID IN THE REPORT THAT WAS STRICKEN BY

2    JUDGE GREWAL.

3             THE COURT:  CAN I ASK YOU TO RESPOND TO THE ARGUMENT

4    THAT DEFENDANT'S EXHIBIT 684 AND THE F700 PHONE IS ALREADY IN

5    EVIDENCE, SO THE MOTION IS OVERBROAD?  WHAT DO YOU THINK ABOUT

6    THAT?

7         I THINK YOU PERSUADED ME ON THE CRUX OF THE POINT, THAT

8    INVALIDITY AND OBVIOUSNESS WERE NOT PART OF THE 2013 TRIAL AND

9    THIS ISSUE WAS APPEALED TO THE FEDERAL CIRCUIT AND AFFIRMED.

10        BUT WHAT ABOUT THE ISSUE THAT THIS IS OVERBROAD?

11            MR. LEE:  YOUR HONOR, YOU HAD ALLOWED THE F700 -- THE

12   PRODUCTS IN FOR THE PURPOSE OF DEMONSTRATING NON-INFRINGING

13   ALTERNATIVES, AND OUR MOTION DID NOT SEEK TO EXCLUDE THEM AS

14   INDICATIONS OF NON-INFRINGING ALTERNATIVES.

15        I MEAN, THE JURY CAN DECIDE WHETHER A SLIDER PHONE IS

16   REALLY A NON-INFRINGING ALTERNATIVE OR NOT.

17        I HOPE WE WERE PRECISE ENOUGH IN OUR MOTION.  WE DID NOT

18   INTEND -- YOUR HONOR MADE THAT RULING BEFORE.  WE ACCEPT THAT

19   RULING UNDER THE GROUNDHOG DAY RULE.

20        SO IT COMES IN, BUT IT DOESN'T COME IN WITH THE ENTIRE

21   STORY ABOUT HOW IT CAME TO BE AND WHAT THE DEVELOPMENT STORY

22   WAS.

23            THE COURT:  AND WAS THAT ADMITTED WITH A LIMITING

24   INSTRUCTION, THAT IT COULD ONLY BE CONSIDERED AS AN ALTERNATIVE

25   TO HOW THAT WAS DONE?

```
 1                    MR. LEE:  YES.

 2                    THE COURT:  OKAY.  WHAT IS DEFENSE EXHIBIT 684?

 3                    MR. LEE:  LET ME CHECK.

 4               (PAUSE IN PROCEEDINGS.)

 5                    MR. LEE:  YOUR HONOR, IT'S A PICTURE OF THE SAMSUNG

 6     PHONES BEFORE AND AFTER THE INTRODUCTION OF THE IPHONE.

 7                    THE COURT:  OKAY.  AND YOUR MOTION WAS NOT INTENDED

 8     TO EXCLUDE THAT EXHIBIT?

 9                    MR. LEE:  IT WAS NOT INTENDED TO EXCLUDE THAT

10     EXHIBIT.

11                    THE COURT:  OKAY.  WELL, THIS MOTION IS GOING TO BE

12     GRANTED.  I DID RULE ON THIS ISSUE AT LEAST FOUR, IF NOT FIVE,

13     TIMES PREVIOUSLY AND THE INFORMATION WAS ALREADY PUBLICLY

14     POSTED BY QUINN, EMANUEL DURING THE TRIAL IN 2012, WHICH I AM

15     EXTREMELY STILL DISAPPOINTED THAT QUINN, EMANUEL WOULD DO THAT,

16     PURPOSELY TRYING TO TAINT THE JURY WITH EXCLUDED EVIDENCE, BUT

17     THEY CHOSE TO DO THAT.

18          THIS ISSUE WAS APPEALED BY QUINN, EMANUEL TO THE FEDERAL

19     CIRCUIT.  I WAS AFFIRMED ON THIS RULING IN 2013.

20          AT THE DAMAGES RETRIAL, INVALIDITY AND OBVIOUSNESS WERE

21     NOT ISSUES IN THAT CASE.  BUT THERE WAS A CONCERN THAT THIS

22     WOULD CONFUSE THE ISSUES, PERHAPS MISLEAD THE JURY, AND WASTE

23     TIME IN INTRODUCING A POTENTIAL INVALIDITY ISSUE AND PERHAPS

24     CAUSE THE JURY TO QUESTION THE LIABILITY VERDICT, WHICH IN THIS

25     CASE THEY'RE SUPPOSED TO JUST ACCEPT AND JUST ASSESS DAMAGES.
```

```
 1          SO I THINK FOR THOSE SAME REASONS, UNDER 403 -- AND I

 2    THINK IT WOULD BE UNDULY PREJUDICIAL TO APPLE BECAUSE THEY HAVE

 3    RELIED ON THE FIVE PREVIOUS RULINGS AND THE FEDERAL CIRCUIT'S

 4    AFFIRMANCE THAT THIS ISSUE WOULD NOT BE RE-DONE, EVEN THOUGH

 5    THIS IS THE THIRD TIME WE ARE TRYING DAMAGES IN THIS CASE.

 6          AND PERHAPS BECAUSE IT IS THE THIRD TIME WE'RE TRYING

 7    DAMAGES IN THIS CASE AND WE'VE HAD THIS GROUNDHOG DAY RULE SO

 8    THAT YOU CAN'T JUST KEEP GETTING DO-OVERS, I THINK IT IS

 9    IMPORTANT THAT BASICALLY THAT LARGELY THE SAME EVIDENCE, WITH

10    THE EXCEPTION OF NEW EVIDENCE FOR THIS NEW ISSUE OF ARTICLES OF

11    MANUFACTURE, LARGELY REMAIN THE SAME.

12          AND I HAVE THE SAME 403 CONCERNS ABOUT HAVING A SATELLITE

13    LITIGATION ON THE VALIDITY QUESTION.

14          SO THAT MOTION IS GRANTED.

15          LET'S GO TO SAMSUNG'S MOTION NUMBER -- I'M SORRY.  THIS IS

16    APPLE'S MOTION IN LIMINE NUMBER 2.

17          SO I HAVE QUESTIONS FOR BOTH SIDES.

18          LET'S START WITH APPLE SINCE THIS IS YOUR MOTION.

19          ACTUALLY, LET ME START WITH SAMSUNG FIRST.  LET ME

20    UNDERSTAND HOW YOU ARE PLANNING TO USE UNASSERTED PATENTS

21    BEFORE THE JURY.  WILL IT BE SOMETHING THAT'S JUST SORT OF LIKE

22    A RAW NUMBER, THERE ARE HUNDREDS, AND RELYING ON THE APPLE

23    EXHIBIT AS TO THE NUMBER OF PATENTS THAT ARE INCORPORATED IN A

24    SPECIFIC PHONE?

25          OR ARE YOU PLANNING TO ACTUALLY GET INTO SPECIFIC PATENTS?
```

1   AND IF YOU DO, THEN ARE WE GOING TO NEED TO GO INTO WHETHER

2   THERE'S ACTUALLY INFRINGEMENT OR NOT OF UNASSERTED PATENTS?

3           LIKE MY CONCERN IS HOW MUCH OF THIS WILL, YOU KNOW, ENTAIL

4   SPECIFIC DIGGING INTO SPECIFIC UNASSERTED PATENTS.

5               MR. PRICE:  SURE.

6               THE COURT:  OR WILL THIS BE LIKE THE OVERALL ASSERTED

7   NUMBERS?  WHAT WERE YOU ENVISIONING WITH RESPECT TO THIS

8   MOTION?

9               MR. PRICE:  A LITTLE OF BOTH.

10              THE COURT:  YES.

11              MR. PRICE:  AND I CAN UNDERSTAND WHY YOU'RE TALKING

12  ABOUT THIS SPECIFICALLY.

13          I THINK THERE WILL BE TESTIMONY ABOUT THE NUMBER OF

14  PATENTED INNOVATIONS, INVENTIONS, AND THAT'S A NUMBERS ISSUE.

15          I THINK WE ALSO WANT TO IDENTIFY A FEW SPECIFIC PATENTS.

16  FOR EXAMPLE, THERE'S -- SAMSUNG HAS, IT'S THEIR PATENT D'815,

17  AND SO IT'S IDENTIFIED AS DX 4580, AND MR. LUCENTE, YOU KNOW,

18  OPINES THAT --

19              THE COURT:  DX 4580, IS THAT THE EXHIBIT NUMBER?

20              MR. PRICE:  YEAH, DX 4580 IS THE EXHIBIT NUMBER.  THE

21  PATENT IS D638,815.

22              THE COURT:  4850 IS THE EXHIBIT NUMBER?

23              MR. PRICE:  YES, YOUR HONOR.

24              THE COURT:  DO I HAVE THAT?

25              MR. PRICE:  I BELIEVE YOU DO.

```
1              THE COURT:  OKAY.

2              MR. PRICE:  I'M BEING TOLD THAT THE COURT MAY NOT

3      HAVE THE EXHIBITS YET.

4              THE COURT:  OKAY.  ALL RIGHT.  I'M WONDERING IF, FOR

5      THIS ONE, IT MIGHT BE HELPFUL TO HAVE IT.

6           SO WHAT ELSE -- SO THE TOTAL NUMBER, THAT SEEMS FAIR.

7           I'M ASSUMING THAT APPLE HAS NO OBJECTION TO THAT.  I THINK

8      YOU ALL DID THAT YOURSELVES DURING YOUR CASE.

9              MR. MUELLER:  WE'RE FINE WITH THE GENERAL NUMBER OF

10     PATENTS THAT THE PARTIES HOLD, AND EVEN, YOU KNOW, A HIGH LEVEL

11     REFERENCE TO THE ESTIMATE OF THE NUMBER OF PATENTS THAT MIGHT

12     BE IN ONE OF THE PHONES.

13          WE DO HAVE A DISPUTE WITH RESPECT TO --

14             THE COURT:  I KNOW.  LET'S GET INTO IT.

15             MR. PRICE:  SO --

16             THE COURT:  SO APPLE'S MOTION IS DENIED IN PART

17     INSOFAR AS SAMSUNG WILL BE ALLOWED TO ELICIT THE NUMBER OF

18     PATENTS.

19          ACTUALLY, HOW SHOULD I WORD THIS?  IS THIS ONLY THE NUMBER

20     OF PATENTS THAT APPLE OBTAINED RELATING TO ITS IPHONE?  OR I

21     GUESS IT'S ALL THE NUMBER OF PATENTS THE INFRINGING SAMSUNG

22     PHONES PRACTICE.  HOW SHOULD I WORD THIS PART OF THE MOTION?

23             MR. MUELLER:  YOUR HONOR, THERE ARE TWO CATEGORIES

24     HERE.

25             THE COURT:  OKAY.
```

```
1              MR. MUELLER:  I -- I GUESS --

2              THE COURT:  WHAT IS IT THAT YOU'RE NOT OBJECTING TO?

3              MR. MUELLER:  SURE.  SO WE DON'T OBJECT TO SAMSUNG

4      SAYING, FOR EXAMPLE, THAT IT HAS A LARGE PORTFOLIO OF PATENTS

5      AND A LARGE NUMBER OF THOSE MIGHT RELATE TO PHONES.

6              WE DO OBJECT TO SAMSUNG SAYING THAT THERE'S SOME SET

7      NUMBER THAT ARE PRACTICED BY THE PARTICULAR PHONES AT ISSUE IN

8      THIS CASE, AND THIS GOES BOTH TO THE HIGH LEVEL POINT ABOUT HOW

9      MANY PATENTS MIGHT BE IN THE PHONE OVERALL, AS WELL AS ANY

10     SPECIFIC PATENTS THEY WANT TO IDENTIFY.

11             THERE'S ABSOLUTELY NO EVIDENCE WHATSOEVER THAT ANY PATENT,

12     LET ALONE MORE THAN ONE, ARE PRACTICED BY THESE PHONES, ASIDE

13     FROM THE ONES THAT WE'RE ACTUALLY ASKING THE JURY TO CONSIDER.

14     THERE'S NO EXPERT OPINION THEY'VE OFFERED THAT DEMONSTRATE THAT

15     PARTICULAR PATENTS ARE PRACTICED BY THE PHONES.

16             THIS WOULD REQUIRE PRECISELY THE SORT OF SATELLITE

17     LITIGATION THAT YOUR HONOR JUST REFERRED TO IN THE FIRST MOTION

18     IN LIMINE.  WE WOULD HAVE TO GET INTO AN ANALYSIS OF THE CLAIMS

19     AND HOW THEY COMPARE TO THE PRODUCTS IN SUIT.

20             SO WE WOULD OBJECT TO ANY STATEMENTS ABOUT THE NUMBER OF

21     PATENTS THAT ARE PRACTICED BY THE PHONES.

22             WE DON'T OBJECT TO SAMSUNG SAYING IT OWNS A LARGE

23     PORTFOLIO OF PATENTS, AND EVEN THAT IT HAS A LARGE NUMBER OF

24     PATENTS THAT RELATE TO PHONES IN GENERAL TERMS.

25             THE COURT:  OKAY.  LET ME SEE IF I -- AND MAYBE
```

```
1        MR. PRICE -- SO I JUST WANT TO DRAW THE LINE HERE.

2             SO FOR SAMSUNG HAVING A LARGE PORTFOLIO OF PATENTS, MANY

3        OF THEM RELATING TO PHONES, THAT IS COMING IN, OKAY?  SO TO

4        THAT EXTENT, THE APPLE MOTION IS DENIED.

5             APPLE HAVING A LOT OF PATENTS ALSO RELATED TO ITS PHONES,

6        COMING IN.

7             SO THAT -- I HOPE THAT'S CLEAR, AND I'M NOT SURE HOW

8        EXACTLY THIS IS GOING TO BE WRITTEN UP.

9             BUT THE FACT THAT BOTH COMPANIES HAVE LARGE PATENT

10       PORTFOLIOS THAT RELATE TO PHONES, THAT'S COMING IN.

11            NOW, LET'S GET INTO --

12            MR. PRICE:  YOUR HONOR, ONE OTHER BROAD CATEGORY IF I

13       CAN REQUEST?

14            THE COURT:  YES, BUT CAN I -- I'M JUST TRYING TO

15       NARROW THIS.

16            MR. PRICE:  SURE.

17            THE COURT:  SO AS TO WHICH APPLE PATENTS APPLE HAS

18       ASSERTED AGAINST OTHER THIRD PARTIES, THAT'S NOT COMING IN.  I

19       DON'T WANT TO HAVE SATELLITE LITIGATION ON OTHER LITIGATION.

20       OKAY?  SO THAT'S NOT COMING IN.

21            AND AGAINST WHICH PARTIES OR TO MAKE A FAIRNESS POLICY

22       ARGUMENT ABOUT SECTION 289, THE MOTION IS GRANTED TO THAT

23       EXTENT.

24            NOW, LET'S TALK ABOUT THIS SPECIFIC ISSUE ABOUT SPECIFIC

25       UNASSERTED PATENTS.
```

```
 1              SO THE D'815, IS THERE ANYTHING ELSE THAT YOU SPECIFICALLY

 2    HAD IN MIND?

 3              MR. PRICE:  YES.

 4              THE COURT:  OKAY.

 5              MR. PRICE:  FIRST, YOUR HONOR, FOR A BROAD CATEGORY,

 6    BUT I'D LIKE TO GET IN TESTIMONY OF THIRD PARTY COUNTS OF

 7    STANDARD ESSENTIAL PATENTS WHICH, BY DEFINITION, ARE PRACTICED

 8    BY THESE PHONES; THAT IS, THE ABILITY, FOR EXAMPLE, TO MAKE A

 9    CALL, THAT OBVIOUSLY IS A -- AN INVENTION, INNOVATION THAT'S

10    EMBODIED IN ALL OF THESE PHONES.

11              THE COURT:  ALL RIGHT.  CAN WE JUST STOP RIGHT THERE?

12         WHAT'S YOUR VIEW?

13              MR. MUELLER:  NO.  WE OBJECT.

14              THE COURT:  WHY?

15              MR. MUELLER:  I'LL TELL YOU WHY, YOUR HONOR.

16         AS YOUR HONOR IS FAMILIAR WITH FROM OTHER CASES, INCLUDING

17    THE GPNE CASE BEFORE YOUR HONOR, WHETHER SOMETHING IS ASSERTED

18    TO BE STANDARD ESSENTIAL DOES NOT MEAN THAT IT, IN FACT, IS

19    STANDARD ESSENTIAL.

20         THE DECLARATIONS AND DATABASES OF DECLARATIONS THAT I

21    BELIEVE MR. PRICE IS REFERRING TO IN MOST STANDARD SETTING

22    ORGANIZATIONS ARE COMPRISED OF SELF DECLARATIONS BY COMPANIES

23    THAT SELF DECLARE, AS OPPOSED TO ANY GATEKEEPER VERIFYING THAT

24    PARTICULAR PATENTS ARE USED IN STANDARDS.

25              EVEN IF YOU DID HAVE A GATEKEEPER ORGANIZATION -- AND I
```

1    DON'T THINK THERE'S ANY SUCH ORGANIZATION THAT'S BEING REFERRED

2    TO NOW -- YOU'D THEN NEED TO CONFIRM THAT THE PRODUCTS AT ISSUE

3    PRACTICE THOSE STANDARDS AND WE'RE AGAIN DEALING WITH A

4    SATELLITE LITIGATION INTO UNRELATED ISSUES.

5        SO WE VERY MUCH OBJECT TO ANY REFERENCES TO THIRD PARTY

6    PATENTS AND THE SUGGESTION THAT THEY'RE NECESSARILY PRACTICED

7    BY PHONES.  IT'S JUST NOT TRUE.

8        THE COURT:  ALL RIGHT.  SO THAT'S -- THAT'S ONE

9    ISSUE.  I MAY NOT BE ABLE TO DECIDE THAT TODAY.

10       MR. PRICE:  OKAY.

11       THE COURT:  I WAS TRYING TO GIVE YOU AS MANY RULINGS

12    AS I CAN BECAUSE I KNOW YOU'RE ALL VERY BUSY PREPARING FOR

13    TRIAL.

14       MR. PRICE:  I APPRECIATE THAT.

15       THE COURT:  TELL ME, WHAT ELSE DO YOU WANT?

16       MR. PRICE:  LET ME TALK TO YOU ABOUT THE SPECIFIC

17    PATENTS.

18       THE COURT:  YES, PLEASE.

19       MR. PRICE:  MR. LUCENTE IN HIS REPORT TALKS ABOUT

20    SAMSUNG'S PATENT, D638,815, WHICH WILL BE DX 4580 ONCE WE GET

21    YOUR HONOR A COPY OF THE EXHIBITS.

22       THE COURT:  4850?

23       MR. PRICE:  YES, 4580.  IT'LL BE DX 4580.

24       THE COURT:  4580, OKAY.

25       MR. PRICE:  AND THAT'S A SAMSUNG DESIGN PATENT THAT

```
1    WAS ISSUED AND MR. LUCENTE OPINES, IF YOU LOOK AT THAT DESIGN
2    PATENT, THOSE DESIGNS ARE USED ON THREE OF THE PHONES IN THIS
3    CASE, THE FASCINATE, THE MESMERIZE, AND THE SHOWCASE, WHICH
4    HAVE INFRINGED.
5         AND IT'S NOT SAYING THAT WE DIDN'T INFRINGE APPLE'S
6    PATENTS.
7         BUT MR. LUCENTE USES THAT TO SUPPORT HIS VIEW THAT THERE
8    WAS NOT COPYING, THAT SAMSUNG WAS INDEPENDENTLY TRYING TO COME
9    UP WITH DESIGNS FOR ITS PHONES AND USING THEM.  IT, IN FACT,
10   GOT PATENTS SAYING THAT THOSE DESIGNS WERE UNIQUE AND
11   INNOVATIVE AND THEY WERE USED ON SOME OF THE PHONES IN THIS
12   CASE.
13        SO IT SORT OF SAYS, SEE, THIS IS A -- HE SAYS THIS IS
14   FURTHER EVIDENCE CORROBORATING THAT WITH RESPECT TO THESE
15   DESIGN PATENTS, THAT SAMSUNG DIDN'T COPY.  IT WAS ENGAGING IN
16   ITS OWN INNOVATION IN THE DESIGN AREA.
17             THE COURT:  AND THEN IS THERE ANOTHER PATENT THAT
18   YOU'D LIKE TO INTRODUCE OTHER THAN THE D'815?
19             MR. PRICE:  NOT SPECIFICALLY FOR SAMSUNG PHONES.
20             THE COURT:  ALL RIGHT.  ANYONE ELSE?
21             MR. PRICE:  FOR APPLE PHONES --
22             THE COURT:  OKAY.
23             MR. PRICE:  -- THE APPLE DESIGN PATENTS, YOUR HONOR,
24   ARE RELEVANT --
25             THE COURT:  AND WHICH ONES -- I MEAN, IT WAS NOT VERY
```

```
1       SPECIFIC IN THE BRIEFING, AND THAT MAY BE MY OWN FAULT FOR

2       HAVING SUCH TIGHT PAGE LIMITS.

3           BUT IT WOULD BE REALLY HELPFUL, BECAUSE I DON'T KNOW IF

4       THIS IS BETTER TO JUST RULE IN HIGH PRIORITY OBJECTIONS TO

5       SPECIFIC EVIDENCE, OR TO TRY TO -- I'M JUST CONCERNED THAT

6       WE'LL HAVE A WEEK THAT WILL BE VERY INTENSE, SO TO THE EXTENT

7       THAT WE CAN TRY TO NARROW SOME OF THE DISPUTES NOW, I'D LIKE TO

8       TRY TO DO IT AND THAT WAY YOU HAVE THE BENEFIT OF A RULING

9       BEFORE PREPARING FOR TRIAL.

10          BUT HOW MANY APPLE PATENTS ARE THERE?

11              MR. PRICE:  I THINK RIGHT NOW I'M LOOKING AT FIVE.

12              THE COURT:  OKAY.  AND WHAT ARE THEY?

13              MR. PRICE:  AND, OF COURSE, I TELL YOUR HONOR THAT

14      MORE CAME UP IN THE PREPARATION, BUT ONE IS PATENT D789 --

15              THE COURT:  789, OKAY.

16              MR. PRICE:  -- 926S.  IF YOU WANT ME TO, I'LL JUST

17      USE THE LAST NUMBERS.

18              THE COURT:  YEAH, IF YOU COULD JUST GIVE ME THE LAST

19      THREE DIGITS, PLEASE.

20              MR. PRICE:  D'926.

21              THE COURT:  OKAY.

22              MR. PRICE:  D'310.

23              THE COURT:  OKAY.

24              MR. PRICE:  D'160.

25              THE COURT:  ALL RIGHT.
```

```
1              MR. PRICE:  D'248.

2              THE COURT:  OKAY.

3              MR. PRICE:  D'387.

4              THE COURT:  ALL RIGHT.

5              MR. PRICE:  AND THE PURPOSE OF USING THESE PATENTS

6     IS, ONE, TO GIVE CONTEXT FOR WHAT IS CLAIMED IN THE PATENTS IN

7     THIS CASE.  I MEAN, THAT'S -- THE SCOPE OF THE CLAIMS IS

8     FACTOR 1 AND THE EXPERTS HAVE SOME DISAGREEMENT AS TO THAT.

9          AND SHOWING THESE OTHER PATENTS WHICH CLAIM OTHER ELEMENTS

10    OF DESIGN, AGAIN, IT PUTS THAT IN CONTEXT SAYING THAT WHAT WE

11    HAVE HERE ARE PATENTS WHICH ARE VERY SPECIFIC ON WHAT THEY

12    CLAIM.

13         AND APPLE, IN FACT, HAS SAID THERE ARE OTHER CONCEPTUALLY

14    DISTINCT, YOU KNOW, DESIGN INVENTIONS THAT IT HAS OTHER THAN

15    THE ONES THAT ARE IN THIS CASE.

16         AND IT DOESN'T MATTER WHETHER THEY ARE ASSERTED OR NOT.

17    THAT'S NOT THE POINT.

18         THE POINT IS THE CONCEPTUAL DISTINCTNESS OF THESE VARIOUS

19    DESIGNS, AND ALSO PUTTING IN CONTEXT WHAT IS CLAIMED IN THE

20    PATENTS IN THIS CASE AND WHAT IS NOT CLAIMED.

21         ALSO, THERE'S THIS GENERAL STATEMENT IN MR. BALL'S EXPERT

22    REPORT ABOUT HOW APPLE'S DESIGN IS HOLISTIC AND MONOLITHIC, AND

23    THESE PATENTS SHOW THAT, NO, THERE ACTUALLY ARE DISTINCT

24    INVENTIONS, DISTINCT DESIGNS, THAT APPLE HAS PATENTED.

25              THE COURT:  AND IS THERE ANY OTHER UNASSERTED PATENT
```

```
1     THAT YOU'RE INTERESTED IN, OR IS THIS THE UNIVERSE?  YOU SAID

2     YOU WOULD TRY TO GET MORE IN LATER.  HOW WOULD YOU GET THEM IN?

3     I ASSUME THEY'RE NOT PART OF THE EXPERT REPORT.

4           MR. PRICE:  ACTUALLY, MR. LUCENTE DOES TALK ABOUT

5     SOME OF THESE.  MY GUESS IS THAT THEY --

6           THE COURT:  NO, BUT YOU SAID THAT THERE MIGHT BE MORE

7     THAT YOU'D FIND IN THE NEXT FIVE DAYS, TEN DAYS.

8           MR. PRICE:  IF THERE WERE ANY, THEY WOULD BE IN THE

9     EXPERT REPORTS.

10          MR. ARNOLD:  THEY'RE ALL IN THE EXPERT REPORTS.

11          MR. PRICE:  THEY'RE IN THE EXPERT REPORTS AND THE ROG

12    RESPONSES DISCLOSED ANY PATENTS THAT WE MIGHT USE.

13          THE COURT:  OKAY.

14          MR. PRICE:  ONE OTHER THING, YOUR HONOR, THAT I

15    WANTED TO -- THE OTHER REASON WE MIGHT WANT TO USE THESE IS

16    MR. BALL MAKES CONCLUSIONS ABOUT THE ARTICLE OF MANUFACTURE BY

17    REFERENCING THE TITLE TO SOME OF THE PATENTS, AND WE WOULD USE

18    THESE TO SHOW THAT THE TITLE, YOU KNOW, COULD NOT REASONABLY BE

19    SEEN AS BEING A STATEMENT OF THE ARTICLE OF MANUFACTURE.

20          SO IT'S RELEVANT TO HOW APPLE ACTUALLY WOULD USE THE

21    TITLES AND WHETHER OR NOT THE LOGIC THAT MR. LUCENTE -- THAT

22    MR. BALL USES REALLY MAKES ANY SENSE.

23          SO WITH RESPECT TO THESE PATENTS, THERE'S NO ISSUE AS TO

24    WHETHER UNASSERTED, ASSERTED.  IT'S JUST THE FACT THAT APPLE

25    HAS THESE PATENTS WHICH ARE OBVIOUSLY, BY THE FACT THAT THEY'RE
```

```
1      PATENTED, THE PATENT OFFICE SAID WERE UNIQUE, DISTINCT

2      INNOVATIONS.

3              THE COURT:  ALL RIGHT.  LET ME -- LET ME HEAR THEN

4       FROM MR. MUELLER.

5          SO ON THIRD PARTY PATENTS, YOUR ARGUMENT IS 403, SATELLITE

6      LITIGATION?

7              MR. MUELLER:  (NODS HEAD UP AND DOWN.)

8              THE COURT:  OKAY.  WHAT'S YOUR ARGUMENT AS TO THE

9       D'815 AND THESE FIVE SPECIFIC APPLE PATENTS?

10              MR. MUELLER:  SURE, AND ALSO FOR THE THIRD PARTY,

11      ALSO RELEVANCE.

12          FOR THESE SPECIFIC --

13              THE COURT:  WELL, RELEVANCE I THINK YOU LOSE.

14              MR. MUELLER:  I'M NOT SURE, YOUR HONOR.  THERE'S NO

15      LINKING EVIDENCE BETWEEN THOSE THIRD PARTY PATENTS AND THE

16      ACTUAL PRODUCTS IN SUIT, AND SO WE THINK THAT --

17              THE COURT:  OH, YOU'RE SAYING BECAUSE YOU'RE GOING TO

18      CONTEST THAT THEY ACTUALLY INFRINGE?

19              MR. MUELLER:  THAT'S RIGHT.

20              THE COURT:  GOT IT.  THAT'S MY MISTAKE THEN.

21              MR. MUELLER:  NO PROBLEM, YOUR HONOR.

22          WITH RESPECT TO THE SPECIFIC PATENTS THAT MR. PRICE

23      IDENTIFIED, I'D SAY A FEW THINGS.  WE THINK THERE'S THREE

24      CATEGORIES OF REASONS WHY THEY SHOULDN'T BE ADMITTED.

25              THE FIRST IS FROM A LEGAL PERSPECTIVE, THE FOUR FACTOR
```

1    TEST THAT YOUR HONOR HAS GIVEN US AND THAT THE JURY WILL APPLY

2    IN THIS CASE FOCUSES ON THE RELATIONSHIP BETWEEN THE CLAIMED

3    DESIGNS AND THE ARTICLE OF MANUFACTURE TO WHICH THOSE CLAIMED

4    DESIGNS HAVE BEEN APPLIED, AND THE JURY NEEDS TO IDENTIFY WHAT

5    IS THAT ARTICLE OF MANUFACTURE TO WHICH THE CLAIMED DESIGNS

6    HAVE BEEN APPLIED.

7         IT DOES NOT ASK THE JURY TO CONSIDER, ARE THERE OTHER

8    PATENTS THAT MIGHT APPLY TO THOSE SAME ARTICLES OF MANUFACTURE?

9    IT DOES NOT ASK THE JURY TO CONSIDER THE RELATIONSHIP BETWEEN

10   THE THREE DESIGN PATENTS-IN-SUIT AND OTHER PATENTS NOT IN THE

11   CASE.

12        SO THE LEGAL TEST THAT YOUR HONOR HAS GIVEN US DOES NOT

13   REQUIRE, AND THERE'S NO LOGICAL CONNECTION TO, UNASSERTED

14   PATENTS NOT IN THE CASE.  SO FROM A LEGAL PERSPECTIVE, WE THINK

15   THIS EVIDENCE IS IRRELEVANT.

16        THE SECOND CATEGORY OF REASONS WHY WE THINK THEY SHOULD

17   NOT BE ADMITTED IS THERE'S NO LINKING EVIDENCE ESTABLISHING A

18   NEXUS BETWEEN ANY OF THE PATENTS THAT MR. PRICE NAMED AND THE

19   PRODUCTS IN SUIT.

20        I'M ASSUMING THAT SAMSUNG IS NOT CONCEDING INFRINGEMENT ON

21   OTHER APPLE PRODUCTS NOT IN THE CASE.  THEIR EXPERTS CERTAINLY

22   HAVE NOT SUGGESTED THEY ARE, NOR HAVE THEIR EXPERTS ARTICULATED

23   ANY PRECISE BASIS ON WHICH THESE PRODUCTS IN SUIT ARE

24   PRACTICING OTHER APPLE PATENTS.

25        NOR HAS ANY EXPERT IN THIS CASE ESTABLISHED ANY BASIS FOR

1    CONCLUDING THAT UNASSERTED SAMSUNG PATENTS -- I'M SORRY --

2    SAMSUNG PATENTS ARE PRACTICED BY THESE PRODUCTS IN SUIT.

3         THERE'S BEEN A SUGGESTION IN THE BRIEFING, I THINK PERHAPS

4    IN THE ARGUMENT AS WELL, THAT IT WOULD BE RELEVANT IF SAMSUNG

5    WERE PRACTICING THESE PATENTS.

6         BUT PRACTICE IS SHORTHAND FOR MEETING THE CLAIMS, AND

7    THERE'S NO EVIDENCE WHATSOEVER THAT THE PRODUCTS IN SUIT MEET

8    THE CLAIMS OF ANY PATENT, LET ALONE MORE THAN ONE PATENT,

9    WHETHER IT'S SAMSUNG OR APPLE.

10        THE PARTIES HAVE FOCUSSED ON THE PATENTS-IN-SUIT THAT WERE

11   ASSERTED BY APPLE AND THERE HAS BEEN ANALYSES AND THERE'S BEEN

12   FINDINGS BY A JURY AND WE HAVE THOSE FINDINGS NOW.

13             THE COURT:  I'M SORRY TO INTERRUPT YOU.

14             MR. MUELLER:  SURE.

15             THE COURT:  MR. PRICE, IS SAMSUNG GOING TO CONCEDE

16    INFRINGEMENT ON THE FIVE APPLE DESIGN PATENTS?

17             MR. PRICE:  NO, NOT AT ALL.  AND THAT'S IRRELEVANT.

18    THIS IS ABOUT DAMAGES FOR THESE THREE DESIGN PATENTS.

19        THE POINT IS THAT APPLE, APPLE'S EXPERT, LOOKING AT

20   APPLE'S PATENTS IN THIS CASE, HAS TALKED ABOUT WHETHER OR NOT

21   WHAT'S IN THOSE PATENTS LEADS TO A CONCLUSION THAT THE ARTICLE

22   OF MANUFACTURE IS THE ENTIRE PRODUCT.

23        AND IT'S RELEVANT TO THAT ISSUE AS TO WHETHER OR NOT APPLE

24   ITSELF SEES DIFFERENT PARTS OF A DESIGN OF AN ELECTRONIC DEVICE

25   AS BEING UNIQUE AND DISTINCTIVE AS OPPOSED TO BEING, IN

1      MR. BALL'S WORDS, UNITARY OR HOLISTIC OR MONOLITHIC.

2           AND WHAT IS ALSO RELEVANT IS WHETHER OR NOT THE LANGUAGE

3      IN THE DESIGN PATENTS HERE -- MR. BALL USES THAT LANGUAGE TO

4      SUPPORT HIS CONCLUSION AS TO WHAT THE ARTICLE OF MANUFACTURE

5      IS.

6           WE WANT TO USE THESE OTHER PATENTS WITH THE SAME LANGUAGE

7      TO SHOW HOW THAT CONCLUSION IS ABSURD, THAT THE INCLUSION OF

8      LANGUAGE IN THE PATENT THAT MR. BALL HAS IDENTIFIED IS IN

9      VIRTUALLY ALL OF THESE PATENTS, AND YOU WOULD NOT CONCLUDE FROM

10     THESE PATENTS THAT, FOR EXAMPLE, A DESIGN OF A SIM CARD SLOT,

11     THAT IF THAT IS INFRINGED, THAT THE ARTICLE OF MANUFACTURE IS

12     THE ENTIRE ELECTRONIC DEVICE.

13          THE COURT:  ALL RIGHT.  THANK YOU.

14     GO AHEAD, PLEASE.

15          MR. MUELLER:  THANK YOU, YOUR HONOR.

16     SO TO CONTINUE WITH THE SECOND CATEGORY OF REASONS, THE

17     LACK OF NEXUS, MR. PRICE MENTIONED THE '815 PATENT, WHICH IS

18     INDEED REFERENCED IN MR. LUCENTE'S REPORT IN PARAGRAPH 361.

19          THERE'S A SENTENCE THAT SAYS THE D638,815 PATENT SHOWN

20     BELOW THAT RELATES TO CERTAIN PHONES THAT ARE NAMED IN THAT

21     SENTENCE.

22          ONE SENTENCE SAYING A PATENT RELATES TO THE PRODUCTS DOES

23     NOT SUFFICE TO ESTABLISH THOSE PRODUCTS ACTUALLY PRACTICE THAT

24     PATENT.

25          SO EVEN IF OTHER PATENTS NOT IN SUIT COULD CONCEIVABLY BE

1    RELEVANT AS A MATTER OF LAW -- AND WE BELIEVE THEY'RE NOT

2    RELEVANT AS A MATTER OF LAW -- THERE'S NO LINKING EVIDENCE, NO

3    NEXUS ESTABLISHING THE ACTUAL CONNECTION BETWEEN THOSE PATENTS

4    AND THE PRODUCTS IN SUIT, AND THERE'S NO EXPERT OPINION THAT

5    DOES ANYTHING REMOTELY CLOSE TO THAT.

6         THE THIRD CATEGORY OF REASONS WHY THIS EVIDENCE SHOULD NOT

7    COME IN IS PREJUDICE.

8         THE FIRST FORM OF PREJUDICE IS, AGAIN, THIS IS ANOTHER

9    FORM OF SATELLITE LITIGATION.  IT WOULD REQUIRE THE JURY TO

10   CONSIDER THE RELATIONSHIP BETWEEN THE INFRINGING PRODUCTS IN

11   SUIT AND OTHER PATENTS, WHETHER THEY'RE HELD BY SAMSUNG OR

12   APPLE OR A THIRD PARTY.  THAT COULD LEAD TO CONFUSION, AND IT

13   WOULD CERTAINLY INCREASE THE COMPLEXITY OF THE TRIAL, AND IT

14   WOULD DISTRACT FROM THE CORE FOCUS ON THE FOUR FACTORS AND THE

15   RELATIONSHIP BETWEEN THE CLAIMED DESIGNS IN THE THREE

16   PATENTS-IN-SUIT, THREE DESIGN PATENTS-IN-SUIT, AND THE ARTICLE

17   OF MANUFACTURE TO WHICH THOSE CLAIMED DESIGNS HAVE BEEN

18   APPLIED.

19        THE JURY, WE BELIEVE, SHOULD KEEP ITS FOCUS ON THAT

20   QUESTION AND NOT BE DISTRACTED BY CONSIDERING THE RELATIONSHIP

21   BETWEEN THE PRODUCTS IN SUIT AND THE OTHER PATENTS.

22        AND THE FINAL FORM OF PREJUDICE IS IT IS AN ATTEMPT TO ASK

23   THE JURY TO QUESTION THE FAIRNESS OF THE STATUTE, AND YOUR

24   HONOR MENTIONED THAT YOU WERE NOT GOING TO PERMIT THAT SORT OF

25   ARGUMENT, AND WE BELIEVE THAT'S CORRECT.

1          CONGRESS STATED THE LAWS APPLICABLE TO DESIGN PATENTS.

2     YOUR HONOR HAS GIVEN US A TEST THAT THE JURY WILL APPLY IN

3     APPLYING THE STATUTE.  THAT'S IT.

4          THERE'S NO FURTHER INQUIRY INTO WHETHER THE NUMBER THAT

5     COMES OUT OF THAT ANALYSIS IS FAIR OR REASONABLE OR RIGHT IN

6     LIGHT OF OTHER PATENTS NOT ASSERTED IN THE CASE.

7          THE ONLY INQUIRY THE JURY SHOULD BE ENGAGED IN IS

8     IDENTIFYING THE RELEVANT ARTICLE OF MANUFACTURE TO WHICH THE

9     CLAIMED DESIGNS HAVE BEEN APPLIED AND THEN CALCULATING TOTAL

10    PROFITS FOR THE ARTICLE OF MANUFACTURE.

11         ANYTHING BEYOND THAT IS AN ATTEMPT TO QUESTION THE

12    FAIRNESS OF THE STATUTE, AND WHAT THE JURY SHOULD BE DOING IS

13    APPLYING YOUR HONOR'S LAW TO THE FACTS, FULL STOP.

14              THE COURT:  OKAY.  I THINK WHAT I WILL DO -- HOW MUCH

15     DO YOU NEED A RULING ON THIS QUESTION SOONER RATHER THAN LATER,

16     VERSUS JUST HAVING THE HIGH PRIORITY OBJECTIONS?

17         (PAUSE IN PROCEEDINGS.)

18              THE COURT:  MY INCLINATION WOULD BE, IN ADDITION TO

19     THE TWO RULINGS I'VE ALREADY MADE, JUST TO DENY WITHOUT

20     PREJUDICE THESE OTHER ASPECTS, ALTHOUGH SOME OF THESE WERE NOT

21     DEVELOPED IN THE MOTION, SO YOU HAVE MORE SPECIFIC DISPUTES

22     NOW.

23              MR. PRICE:  YOUR HONOR, I THINK IT WOULD HELP TO BE

24     IN TRIAL IN CONTEXT SO YOU CAN SEE HOW THIS IS BEING USED.

25              THE COURT:  UM-HUM.

1      MR. PRICE:  WE DON'T PLAN TO USE THESE SPECIFIC

2  PATENTS IN THE OPENING.

3      THE COURT:  OKAY.

4      MR. MUELLER:  AND THAT WOULD BE OUR MAIN CONCERN,

5  YOUR HONOR, UNDER A HIGH PRIORITY OBJECTION PROCESS IS JUST

6  THAT THERE BE NO SUCH ARGUMENT IN THE OPENING.

7      AND IF YOUR HONOR IS INCLINED TO TAKE IT UP WITH RESPECT

8  TO PARTICULAR ISSUES AT TRIAL, WE CAN DO THAT, BUT WE WOULD ASK

9  THAT THERE BE NO REFERENCE TO THESE TYPES OF ARGUMENTS AND

10  SPECIFIC PATENTS IN THE OPENING.

11      THE COURT:  IT'S JUST THAT YOU ALL KNOW THE ISSUES

12  MUCH BETTER AND SO FOR ME, UNTIL I START SEEING THE TRIAL AND

13  START SEEING THE EVIDENCE, I MAY NOT HAVE A GOOD SENSE OF

14  WHAT'S RELEVANT OR NOT.

15      SO THAT WOULD BE ONE BENEFIT OF WAITING FOR THE HIGH

16  PRIORITY OBJECTIONS, BECAUSE THEN I COULD PUT IT IN THE CONTEXT

17  OF WHAT APPLE IS ACTUALLY ARGUING AND DOES IT MAKE SENSE FOR IT

18  TO REBUT THEIR CLAIMS?

19      IT'S A LITTLE BIT HARD, BECAUSE THIS IS A NEW TEST, TO

20  SORT OF ENVISION HOW RELEVANT THIS IS AND HOW 403 WOULD BALANCE

21  OUT.

22      WOULD THAT BE OKAY IF YOU ALL DID NOT -- AGREED NOT TO

23  REFER TO THIS IN OPENING?  WILL THIS COME UP IN HPO'S EARLY

24  ENOUGH THAT YOU CAN INCORPORATE IT YOUR CASES, OR NOT?

25      MR. MUELLER:  I THINK IT DEPENDS ON HOW EARLY SAMSUNG

```
1       RAISES THE ISSUE.

2                 THE COURT:  UH-HUH.

3                 MR. PRICE:  WELL, IT'LL PROBABLY BE RAISED FIRST WITH

4       APPLE'S EXPERTS IS MY GUESS.  IT COULD BE RAISED WITH FACT

5       WITNESSES, TOO, BUT --

6                 THE COURT:  UM-HUM.

7                 MR. PRICE:  YOU WOULD GET THOSE EXHIBITS, YOU KNOW,

8       OBVIOUSLY WE HAVE TO -- WE'RE WORKING ON THOSE FOR THE

9       WITNESSES.

10                THE COURT:  UM-HUM.

11           HMM.  WELL, ONE OPTION, BECAUSE THE -- MY ONLY OTHER

12      CONCERN IS THAT THINGS WILL BE GOING SO FAST DURING THE TRIAL,

13      TO THE EXTENT THERE ARE THESE REALLY HARD QUESTIONS, TO DECIDE

14      THEM WITH THE BENEFIT OF SOME TIME VERSUS UNDER URGENT

15      CIRCUMSTANCES MIGHT BE BETTER AS WELL.

16           ARE YOU SATISFIED WITH THE ARGUMENTS THAT YOU'VE MADE --

17                MR. MUELLER:  I'M SORRY, YOUR HONOR?

18                THE COURT:  -- TODAY?  ARE YOU SATISFIED WITH THE

19      ARGUMENTS THAT YOU'VE MADE TODAY, OR DO YOU WANT THIS TO BE ONE

20      WHERE I CAN GIVE YOU AN ADDITIONAL TWO PAGES TO FLESH THIS OUT

21      A LITTLE FURTHER?

22           BECAUSE THE MOTION ITSELF DIDN'T SPECIFY EXACTLY WHAT

23      EVIDENCE WE'RE TALKING ABOUT.  IT JUST SAID UNASSERTED PATENTS.

24      SO I DIDN'T KNOW, IS THAT THIRD PARTY?  IS THAT APPLE?  IS THAT

25      SAMSUNG?  IT WAS A LITTLE BIT LESS CLEAR.
```

```
 1            MR. MUELLER:  ALSO, YOUR HONOR, WE DIDN'T HAVE THIS

 2   LIST OF PATENTS BEFORE TODAY, TOO, THAT WE'VE HEARD.  WE COULD

 3   CERTAINLY SUBMIT AN ADDITIONAL TWO PAGES TO ADDRESS THAT LIST.

 4            THE COURT:  YEAH.

 5            MR. PRICE:  AND I THINK THAT MAKES SENSE IF WE'RE

 6   FOCUSSING ON THE APPLE PATENTS AND THIS ONE SAMSUNG PATENT.

 7            THE COURT:  AND IF YOU WANT TO TALK ABOUT A THIRD

 8   PARTY ISSUE FOR STANDARD ESSENTIAL PATENTS.

 9            MR. PRICE:  RIGHT.

10            THE COURT:  OKAY.  SO THEN WE -- WE COULD DO THAT.

11       SO I'VE GIVEN YOU THE RULINGS SO FAR ON APPLE'S DECISIONS

12   ON WHICH PATENTS TO ASSERT AGAINST WHICH PARTIES AND THE

13   FAIRNESS POLICY ARGUMENT AND THAT BOTH SIDES CAN TALK ABOUT

14   BOTH SIDES' LARGE PATENT PORTFOLIOS THAT APPLIES TO PHONES, OR

15   RELATES TO PHONES.

16       SO YOU'RE GOING TO BRIEF THIS ISSUE.  HOW DO YOU WANT TO

17   DO THIS?  APPLE GO FIRST AND THEN SAMSUNG REPLY?

18            MR. PRICE:  I THINK THAT MAKES SENSE SINCE THEY'RE

19   MOVING TO EXCLUDE.

20            MR. MUELLER:  THAT'S FINE, YOUR HONOR.  I THINK WE

21   NEED A NON-MOVING TARGET.

22            THE COURT:  RIGHT.

23            MR. MUELLER:  AND TO THE EXTENT THAT'S A LIST, WE'LL

24   BRIEF THAT LIST.  I THINK THERE WAS A SUGGESTION THAT THERE

25   MIGHT BE MORE PATENTS COMING.  WE NEED TO KNOW THAT BEFORE WE
```

```
 1          SUBMIT THE BRIEF.  WE CAN CERTAINLY BRIEF THE LIST THAT
 2          MR. PRICE ARTICULATED TODAY.
 3                    MS. MAROULIS:  YOUR HONOR, WE'VE -- SINCE THE MOTIONS
 4          WERE BRIEFED, WE SUBMITTED THE EXHIBIT LISTS, SO APPLE NOW HAS
 5          OUR EXHIBIT LIST.  SO TO THE EXTENT THEY WANT TO SPECIFY THE
 6          EXHIBITS THEY WANT TO EXCLUDE, WE'LL RESPOND TO THAT.
 7                    MR. MUELLER:  THERE'S HUNDREDS OF PATENTS LISTED IN
 8          THEIR EXHIBIT LIST.
 9                    THE COURT:  YEAH, I THINK IT IS FAIR TO UNDERSTAND
10          WHAT THE UNIVERSE IS, ESPECIALLY IF I'M GOING TO GIVE YOU AN
11          ADVANCED RULING.  I DON'T WANT TO BE THEN HIT WITH A BUNCH MORE
12          PATENTS IN THE MIDDLE OF TRIAL.  SO --
13                    MR. PRICE:  YOUR HONOR, WE'LL CONFIRM WHETHER OR NOT
14          IT'S -- IF IT'S JUST THOSE FIVE.
15                    THE COURT:  OKAY.
16                    MR. PRICE:  IT'LL BE APPLE DESIGN PATENTS.
17                    THE COURT:  OKAY.  CAN WE DO THIS THEN:  I THINK -- I
18          THINK IT WOULD BE HELPFUL TO GET THE UNIVERSE FROM SAMSUNG,
19          HAVE APPLE RESPOND, AND THEN LET YOU REPLY.  OKAY?  SO WHEN CAN
20          WE -- OR I'M SORRY.  WHEN CAN YOU ALL DO THIS?  CAN YOU DO THAT
21          BY TOMORROW?  OR IS THAT TOO SOON?
22                    MR. PRICE:  THE UNIVERSE?
23                    THE COURT:  UM-HUM.
24                    MR. PRICE:  WE CAN DO THE UNIVERSE BY TOMORROW.
25                    THE COURT:  OKAY.  ALL RIGHT.  SO THEN -- NOW, DO YOU
```

```
1    WANT TO PUT IN, LIKE YOU DID TODAY, EXPLANATIONS FOR WHY YOU

2    THINK -- IT WOULD BE MAYBE MORE HELPFUL TO HAVE POINT,

3    COUNTER-POINT RATHER THAN HAVE THEM GUESSING AS TO WHY YOU WANT

4    TO USE IT.  THEN THEIR RESPONSE WILL NOT BE THAT RESPONSIVE.

5              MR. PRICE:  WE COULD DO BULLET POINTS.

6              THE COURT:  BUT THEN I'LL GIVE YOU MORE TIME.

7              MR. PRICE:  WE CAN DO BULLET POINTS.

8              MR. MUELLER:  THAT WOULD HELP US ON THE ISSUE.

9              THE COURT:  OKAY.  SO THEN WHEN CAN YOU DO THAT?  SO

10   YOU'RE GOING TO IDENTIFY THE UNIVERSE, AND IF YOU WOULD GIVE

11   CONTEXT OF WHY EACH THING SHOULD COME IN.

12             MR. PRICE:  SURE.

13             THE COURT:  WHEN DOES THAT SOUND DOABLE?

14             MS. MAROULIS:  YOUR HONOR, CAN WE HAVE UNTIL MONDAY

15   TO DO THAT?

16             THE COURT:  THAT'S FINE.  OKAY.  SO THAT WOULD BE

17   MAY 7TH.

18        AND THEN WHEN CAN YOU DO A RESPONSE?

19             MR. MUELLER:  WEDNESDAY, YOUR HONOR?

20             THE COURT:  OKAY.  THAT WOULD BE MAY 9TH.

21             MS. MAROULIS:  AND, YOUR HONOR, WHEN CAN WE DO THE

22   REPLY?  CAN WE HAVE TWO DAYS FOR THAT?  OR ONE DAY?

23             THE COURT:  YEAH.  NOW, WE'LL TALK ABOUT -- WE'LL BE

24   RULING ON THE OPENING DEMONSTRATIVE OBJECTIONS AND THE FIRST

25   DAY OF TRIAL OBJECTIONS, SO I CAN'T --
```

```
 1          MS. MAROULIS:  YOUR HONOR, MAYBE APPLE SHOULD OPPOSE
 2   ON TUESDAY AND WE'LL REPLY ON WEDNESDAY.  THAT WAY IT'LL BE
 3   BRIEFED FASTER.
 4          THE COURT:  BUT YOU GET FOUR DAYS AND THEN THEY GET
 5   ONE DAY?  I DON'T KNOW IF THAT MAKES SENSE.
 6      WELL, I COULD JUST SEE YOUR BRIEFS AND MAKE A DECISION
 7   WITH HPO'S, BUT THEN I'LL HAVE THE BENEFIT OF MORE INFORMATION
 8   AND MORE TIME TO THINK ABOUT IT, SO THAT'S ANOTHER POSSIBILITY.
 9          SO IF YOU WANT -- BUT I WOULD LIKE TO IMPOSE SOME LIMITS
10   ON THIS BECAUSE WE JUST HAVE SUCH LIMITED RESOURCES, WE CAN'T
11   HAVE THIS BE UNLIMITED.
12      SO IF YOU'RE GOING TO RESPOND -- COULD YOU REPLY BY THE
13   10TH?
14          MS. MAROULIS:  YES, YOUR HONOR.
15          THE COURT:  OKAY.  ALL RIGHT.
16      WHAT'S THE PAGE LIMIT THAT YOU WANT?
17      (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)
18          THE COURT:  AND I'M SORRY TO THE YAHOO! CASE.  I
19   THOUGHT THIS WAS GOING TO GO FASTER.  I APOLOGIZE FOR MAKING
20   YOU WAIT.
21          MS. MAROULIS:  YOUR HONOR, IF WE MAY HAVE THREE PAGES
22   FOR EACH BRIEF?  WOULD THAT WORK?
23          THE COURT:  OKAY.
24          MR. MUELLER:  IF IT WAS THREE AND THREE FOR THEIR
25   BRIEFS, I THINK WE CAN DO FIVE PAGES FOR OUR BRIEF.  THEY HAVE
```

```
1       SIX AND WE HAVE FIVE.

2              THE COURT:  DO YOU HAVE ANY RESPONSE TO THAT?

3              MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

4              THE COURT:  OKAY.  AND COULD YOU HAVE A COPY OF

5       THESE -- I'M WONDERING IF THESE PATENTS SHOULD BE FILED, OR I

6       SHOULD AT LEAST GET A CHAMBERS COPY.

7              MR. MUELLER:  WE CAN CERTAINLY DO THAT, YOUR HONOR.

8              MS. MAROULIS:  YES, YOUR HONOR.

9              THE COURT:  ALL RIGHT.  THANK YOU.

10             MR. MUELLER:  THANK YOU, YOUR HONOR.

11             THE COURT:  ALL RIGHT.  LET'S GO QUICKLY, IF WE CAN.

12         ALL RIGHT.  SO RIGHT NOW, I CAN'T TELL YOU WHERE WE'RE

13      GOING TO BE.  THERE'S A LOT OF HVAC WORK GOING ON, SO A LOT OF

14      THE COURTROOMS ARE CLOSED.  SO WE'LL EITHER BE IN

15      JUDGE DAVILA'S COURTROOM UPSTAIRS, OR WE MAY BE HERE.

16         IS THIS SUFFICIENT, OR IS THIS TOO SMALL?

17             MS. MAROULIS:  THAT'S FINE, YOUR HONOR.

18             MR. LEE:  THAT'S FINE.

19             THE COURT:  OKAY.  ALL RIGHT.

20         AND I DO HAVE ANOTHER TRIAL STARTING ON MAY 21ST.  IT'LL

21      GO TO JUNE 1ST.  BUT I'M HOPING IT WILL END BY THE 29TH BECAUSE

22      THEN I HAVE ANOTHER ONE STARTING MAY 31ST THROUGH JUNE 12TH.

23         SO THERE MAY BE SOME DELAYS IF WE GET JURY NOTES, AND I'M

24      NOT SURE PHYSICALLY WHERE YOU'LL BE BECAUSE I'LL HAVE TO USE

25      THIS COURTROOM FOR THE OTHER CASES.
```

```
 1          ARE YOU GOING TO HAVE ANY OTHER STIPULATIONS IN ADDITION
 2   TO THE ONES YOU FILED ON APRIL 23RD -- OR THE ONES THAT WERE
 3   GRANTED ON THE 23RD AND 24TH OF APRIL?
 4          MR. LEE:  I DON'T THINK SO.
 5          THE COURT:  OKAY.
 6          MR. LEE:  I RAISED WITH MR. PRICE AND MS. MAROULIS
 7   THE POSSIBILITY THAT WE COULD MEET AND CONFER AND TRY TO
 8   PRE-ADMIT SOME EXHIBITS TO MAKE THINGS MOVE ALONG FASTER, BUT
 9   WE'LL TALK ABOUT THAT OVER THE NEXT WEEK.
10          THE COURT:  ALL RIGHT, GREAT.  THANK YOU.
11       LET'S TALK ABOUT THE GALAXY S I9000 AND THE
12   GALAXY S II I9100.
13          IF I UNDERSTAND THIS, APPLE WANTS, AS PART OF THE CASE, TO
14   GET A VERDICT OF ZERO DAMAGES.  I JUST WONDER WHY YOU WON'T
15   STIPULATE.  WHY DOES THIS NEED TO BE PART OF THE CASE?
16          MR. SELWYN:  YOUR HONOR, WE HAVE NOT INCLUDED THOSE
17   ON THE VERDICT FORM.
18          THE COURT:  OKAY.
19          MR. SELWYN:  BUT THEY STILL MAY HAVE EVIDENCE
20   ASSOCIATED WITH THEM THAT'S RELEVANT FOR THE DETERMINATION OF
21   THE IDENTITY OF THE ARTICLE OF MANUFACTURE.
22       SO WE'RE NOT ASKING FOR THE JURY TO COME BACK WITH ANY
23   NUMBER ASSOCIATED WITH THEM, BUT WE MAY SEEK TO INTRODUCE
24   EVIDENCE REGARDING BOTH OF THOSE PRODUCTS BECAUSE IT IS
25   RELEVANT TO THE IDENTITY OF THE ARTICLE OF MANUFACTURE.
```

1          MS. MAROULIS:  YOUR HONOR, SAMSUNG'S POSITION IS

2     BECAUSE APPLE IS NOT SEEKING DAMAGES AND DID NOT INCLUDE THEM

3     IN THE PROPOSED VERDICT FORM, THERE'S NO REASON FOR THOSE TWO

4     PRODUCTS TO BE IN THE CASE.  THEY'RE NOT RELEVANT TO THE

5     DAMAGES DETERMINATION BECAUSE NO DAMAGES ARE BEING SOUGHT FOR

6     THEM.

7          MR. SELWYN:  YOUR HONOR, BOTH OF THOSE PRODUCTS WERE

8     FOUND TO INFRINGE.  THEY'RE BOTH INCLUDED IN THE PRELIMINARY

9     JURY INSTRUCTIONS BY AGREEMENT OF THE PARTIES, ALONG WITH THE

10    LIST OF PRODUCTS FOUND TO INFRINGE, AND THERE'S EVIDENCE THAT'S

11    ASSOCIATED WITH THEM THAT WILL BE RELEVANT FOR THE

12    DETERMINATION OF THE ARTICLE OF MANUFACTURE.

13         SO SIMPLY BECAUSE THERE'S ZERO DAMAGES ASSOCIATED WITH

14    THEM DOESN'T MEAN THAT THE EVIDENCE THAT RELATES TO THEM DOES

15    NOT HAVE SOME RELEVANCE TO THE JURY'S DETERMINATION.

16         THE COURT:  OKAY.  AND BECAUSE THOSE WERE PART OF THE

17    JURY VERDICT IN THIS CASE AND THIS IS THE SECOND DAMAGES

18    RETRIAL IN THIS CASE, I'LL ALLOW IT.

19         OKAY.  LET'S GO TO -- OH.  CAN YOU PROVIDE YOUR FINAL LIST

20    OF INDIVIDUALS AND ENTITIES, AS WELL AS TRIAL DATES, FOR THE

21    JURY SELECTION?  YOU KNOW THE JOINT LIST?

22         MS. MAROULIS:  YES, YOUR HONOR.

23         MR. SELWYN:  CERTAINLY.

24         THE COURT:  WHEN CAN YOU DO THAT?

25         MR. SELWYN:  AS SOON AS THE COURT NEEDS IT.

1          THE COURT:  I KNOW YOU HAVE A LOT GOING ON RIGHT NOW,

2     SO I DON'T WANT TO IMPOSE TOO MUCH --

3          MS. MAROULIS:  I THINK WE HAVE THEM FROM PRIOR CASES,

4     TRIALS, SO MAYBE MONDAY.

5          MR. SELWYN:  THAT'S FINE.

6          THE COURT:  YOU MAY HAVE TO ADD ANYONE NEW WHO'S

7     JOINED THE TEAMS, BUT, OKAY.  SO MAY 7TH OF 2018, PLEASE.

8       IF YOU WOULD FILE IT, AND ALSO E-MAIL A MICROSOFT WORD

9     VERSION, PLEASE, TO MS. MASON.

10          MS. MAROULIS:  WE'LL DO THAT, YOUR HONOR.

11          THE COURT:  AND THEN -- AND WE'LL MAKE THE -- WE CAN

12     MAKE THE COPIES FROM HERE.

13       OKAY.  WOULD YOU LIKE TO DO JURY BINDERS AS YOU DID IN THE

14     PAST?  THIS IS A RELATIVELY SHORT TRIAL.

15          MR. SELWYN:  YES, YOUR HONOR.

16          THE COURT:  I THINK IT WOULD BE HELPFUL.

17          MS. MAROULIS:  YES, YOUR HONOR.

18          THE COURT:  OKAY.  SO SAME THING.  ANYTHING IN THERE

19     HAS TO BE STIPULATED TO BY THE PARTIES.  IF THERE'S ANY

20     DISPUTE, IT'S NOT GOING IN THE BINDERS.

21       IF YOU WOULD PLEASE, CAN YOU BRING EIGHT COPIES FOR THE

22     JURORS AND FOUR FOR THE COURT?  WHEN CAN YOU DO THAT?  CAN YOU

23     DO THAT BY FRIDAY, THE 11TH?

24          MS. MAROULIS:  YES, YOUR HONOR.

25          MR. LEE:  YES, YOUR HONOR.

```
1              THE COURT:  OKAY.  LET'S DO THAT.

2          LET'S KEEP GOING.

3          SO YOU'RE FILING OBJECTIONS TO UPCOMING WITNESSES,

4      EXHIBITS, AND IMPEACHMENT MATERIALS AT THE SAME TIME YOU

5      EXCHANGE THEM?  IS THAT RIGHT?  OR WHEN -- NO.  YOU'RE FILING

6      THE MORNING BEFORE, CORRECT, THAT YOU INTEND TO USE THAT

7      EVIDENCE?

8              MR. LEE:  TWO MORNINGS.  TWO MORNINGS BEFORE, YOUR

9      HONOR.

10             MS. MAROULIS:  I KNOW IT'S AN AGREED UPON PROCEDURE

11     IN OUR PRETRIAL ORDER.  I DON'T HAVE THE HOURS MEMORIZED.

12             MR. LEE:  I THINK IT'S THE SAME ONE WE USED BEFORE.

13             MS. MAROULIS:  IT IS.

14             THE COURT:  LET'S DO THE SAME PROCEDURE.  I THINK

15     THAT YOU FILE THE OBJECTIONS AT THE SAME TIME YOU EXCHANGE

16     THEM, 9:00 P.M. TWO DAYS BEFORE THE WITNESSES TESTIFY.

17         THAT SOUNDS -- THAT DOESN'T SOUND RIGHT TO ME.

18             MS. MAROULIS:  YOUR HONOR, WE HAVE IT LAID OUT IN OUR

19     PRETRIAL -- LET ME GET THAT.

20             THE COURT:  OKAY.  AS LONG AS YOU FOLLOW THE SAME

21     PROCEDURE, I THINK THAT'S WORKED IN THE PAST.

22         AND YOU'LL ALSO FILE YOUR LIST OF NEXT SEVEN WITNESSES BY

23     7:00 P.M. --

24             MS. MAROULIS:  RIGHT.

25             THE COURT:  -- THE NIGHT BEFORE, THAT'S FINE.
```

```
1              I RECALL THAT WE HAD A LIMIT ON THE NUMBER OF PAGE

2     NUMBER -- THE NUMBER OF PAGES FOR HIGH PRIORITY OBJECTIONS.  IS

3     THAT CORRECT?

4              MS. MAROULIS:  WE DID.

5              THE COURT:  WHAT WAS THE LIMIT?  I'D LIKE TO KEEP THE

6     LIMIT JUST BECAUSE I'D LIKE TO AVOID WHAT HAPPENED AT THE FIRST

7     TRIAL.  I THINK MR. LEE REMEMBERS THAT ONE.

8              MR. LEE:  I DO.

9              THE COURT:  YEAH.

10             MR. LEE:  IT'S NOT -- IT'S EITHER THREE OR FIVE IS MY

11    RECOLLECTION.

12             MS. MAROULIS:  YOUR HONOR, IF WE MAY LET YOU KNOW

13    LATER?  WE DON'T HAVE THAT AT OUR FINGERTIPS.  I THINK IT'S

14    FIVE, BUT I DON'T WANT TO MISSTATE THE NUMBER.

15         BUT WE DID HAVE A COURT ORDERED LIMIT, AND WE CAN JUST GO

16    WITH WHATEVER THE COURT ORDERED LAST TIME.

17             THE COURT:  WELL, THIS IS THE THIRD TIME WE'RE DOING

18    THIS, SO, I MEAN, PRESUMABLY THERE SHOULD BE FEWER HOPEFULLY.

19    COULD WE SAY -- COULD WE SAY THREE PAGES OF OBJECTIONS, AND

20    THREE PAGES OF RESPONSES?

21             MR. LEE:  YES.

22             THE COURT:  OKAY.  THANK YOU.

23             MS. MAROULIS:  YES, YOUR HONOR.

24             THE COURT:  OKAY.  THANK YOU.

25         WHEN ARE YOU GOING TO EXCHANGE YOUR OPENING
```

```
 1    DEMONSTRATIVES?

 2              MS. MAROULIS:  ON THE 8TH.

 3              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

 4         ALL RIGHT.  WE'VE GONE OVER THE MOTIONS IN LIMINE, I'VE

 5    RULED ON YOUR EVIDENTIARY OBJECTIONS, THERE WAS A RULING -- AH.

 6         ON THE DISPUTED LEGAL ISSUES, HOW DO YOU PLAN TO DEAL WITH

 7    THE '915?  WILL THAT BE IN POST-TRIAL, OR -- I DON'T THINK THE

 8    '915 SHOULD GO BEFORE THE JURY.  THAT WAS ONE OF THE MOTIONS IN

 9    LIMINE.

10              MR. LEE:  YEAH.

11              MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.

12              THE COURT:  IS THAT GOING TO BE POST-TRIAL?

13              MS. MAROULIS:  '915 IS GOING TO BE BROUGHT DURING THE

14    POST-TRIAL MOTIONS AT YOUR HONOR'S DIRECTION EARLIER IN 2017.

15              MR. LEE:  AND OUR POSITION, AS YOUR HONOR KNOWS, IS

16    THE '915 IS DONE, MANDATE'S ISSUED.  BUT WE'LL BRIEF THAT

17    AFTER.  IT'S NOT GOING TO BE PART OF THIS TRIAL.

18              THE COURT:  RIGHT.  WHAT WILL THE POST-TRIAL MOTION

19    BE?

20              MS. MAROULIS:  THE POST-TRIAL MOTION WOULD BE FOR

21    FINDING OF RES JUDICATA AS TO THE '915 VALIDITY, AND

22    POTENTIALLY REVERSEMENT OF THE PRIOR PAID DAMAGES ON THAT.

23         BUT WE WERE INSTRUCTED TO BRIEF IT IN THE POST-TRIAL

24    BRIEFING.

25              THE COURT:  RIGHT, BECAUSE IT SHOULDN'T BE GOING
```

1    BEFORE THE JURY.

2              MS. MAROULIS:  CORRECT.

3              THE COURT:  BUT I WOULD HOPE THAT APPLE WOULD

4    STIPULATE ON -- MAYBE NOT THE MONEY AMOUNT, I KNOW YOU'LL

5    PROBABLY HAVE A DISPUTE OVER THAT, BUT AT LEAST THE FACT THAT

6    IT'S BEEN DECIDED.

7              MR. LEE:  YEAH, THAT'S EXACTLY RIGHT.

8              THE COURT:  RIGHT.

9              MR. LEE:  IT'S BEEN DECIDED TO THE PTO.

10        BUT BEFORE IT WAS DECIDED BY THE PTO -- IT'S ACTUALLY BACK

11   AT THE PTO.

12        THE CASE WENT UP ON APPEAL TO THE FEDERAL CIRCUIT, MANDATE

13   ISSUED, AND THE FEDERAL CIRCUIT WAS VERY SPECIFIC THAT THAT

14   PORTION OF YOUR HONOR'S JUDGMENT WAS AFFIRMED BEFORE THE '915

15   ACTION WAS TAKEN TO THE PTO.

16        SO THIS WAS DONE, RESOLVED, AND FINAL, AND A MANDATE

17   ISSUED BEFORE THAT OCCURRED.  SO THERE IS NO ISSUE.

18             THE COURT:  OH.  SO THAT MIGHT BE DISPUTED.  OKAY.

19   THAT'S FINE.  LET'S JUST TAKE CARE OF THAT IN THE POST-TRIAL.

20   THANK YOU.

21        OKAY.  WHAT'S THE STATUS OF THE D'677 RE-EXAM?

22             MS. MAROULIS:  IT IS PENDING, YOUR HONOR, IN THE

23   PATENT OFFICE.

24             MR. LEE:  THAT'S TRUE.

25             THE COURT:  OKAY.  DO WE NEED TO BREAK THAT OUT IN

```
1     THE VERDICT?

2              MS. MAROULIS:  WE DO NOT, YOUR HONOR.

3         THE PARTIES ARE ACTUALLY FAIRLY CLOSE ON SOME PARTS OF THE

4     VERDICT FORM.  IF YOU LOOK AT THE CHARTS THAT THE PARTIES

5     PROPOSED, BOTH PROPOSED GROUPING TOGETHER THE DESIGN PATENTS

6     AND THE UTILITY PATENTES.

7         THERE ARE OTHER DISAGREEMENTS IN THE VERDICT FORM, BUT

8     THEY DON'T GO TO THE WAY THE CHARTS ARE LAID OUT.

9              THE COURT:  OKAY.

10             MR. LEE:  AND IF YOU DO NOT -- YEAH, WE AGREE, YOU DO

11    NOT NEED TO TAKE IT OUT.

12             THE COURT:  I JUST THOUGHT IF IT GETS INVALIDATED,

13    WOULD IT BE EASIER TO TAKE THOSE OUT?  IF NEITHER SIDE WANTS

14    TO, THAT'S FINE.  THAT'S FINE.

15        OKAY.  MY VERY LAST ISSUE AND WE ARE DONE -- THANK YOU FOR

16    YOUR PATIENCE -- IS I THINK THERE'S GOING TO BE A RECURRING

17    ISSUE ON THIS ISSUE.  I HAD ASKED FOR A LIMITING INSTRUCTION

18    AND NEITHER SIDE HAS REALLY GIVEN ONE, AND SOME OF THE

19    POSITIONS TAKEN SEEM TO BE INCONSISTENT.

20        AND SO I WAS WONDERING WHETHER -- I JUST WANTED TO PROPOSE

21    SOMETHING SINCE NOTHING REALLY ON POINT HAS BEEN PROPOSED.

22        WHAT ABOUT SOMETHING LIKE, "NEITHER THE COURT NOR THE

23    PATENT AND TRADEMARK OFFICE HAS DETERMINED THE RELEVANT

24    ARTICLES OF MANUFACTURE IN THIS CASE.  THAT IS A QUESTION FOR

25    YOU TO DECIDE" AS A LIMITING INSTRUCTION?
```

```
1              MR. LEE:  OKAY.

2              THE COURT:  AND WHEN SHOULD IT BE GIVEN?

3              MS. MAROULIS:  YOUR HONOR, IT SOUNDS ABOUT RIGHT, BUT

4     I REALLY WOULD LIKE TO CHECK WITH MS. SULLIVAN IF POSSIBLE, WHO

5     IS OUR CHIEF ARCHITECT ON THE JURY INSTRUCTIONS.  WOULD IT BE

6     POSSIBLE TO RESPOND TO THE COURT MAYBE TOMORROW IN RESPONSE TO

7     THIS?

8              THE COURT:  THAT'S FINE.  AND I -- I MEAN, IF -- IF

9     YOU ALL COULD TRY TO REACH A JOINT PROPOSAL FOR A LIMITING

10    INSTRUCTION RELATED TO THE PATENT AND CLAIM CONSTRUCTION'S USE

11    OF THE TERM "ARTICLE OF MANUFACTURE," THAT WOULD BE REALLY

12    USEFUL.

13             MS. MAROULIS:  YES, YOUR HONOR.

14             THE COURT:  IS THAT SOMETHING YOU WANT TO DO?

15             MS. MAROULIS:  WE'LL MEET AND CONFER.

16             THE COURT:  IS THAT SOMETHING YOU WANT TO TRY ONE

17    MORE TIME --

18             MS. MAROULIS:  YES.

19             MR. LEE:  SURE.

20             THE COURT:  -- TO REACH AN AGREEMENT ON?

21        OKAY.  AND THEN I WILL JUST -- WE DON'T HAVE TO GO THROUGH

22    IT NOW, BUT BOTH SIDES TAKE ONE POSITION ON PRELIMINARY JURY

23    INSTRUCTIONS, AND IT SEEMS LIKE YOU TAKE THE OPPOSITE POSITION

24    IN YOUR FINAL JURY INSTRUCTIONS.  I DON'T KNOW IF THAT WAS

25    INADVERTENT, BUT YOU MIGHT WANT TO CHECK IT.
```

```
 1          SO I'LL JUST GIVE A QUICK -- SO FOR 3672-2 FILED ON

 2    APRIL 27, 2018, SAMSUNG'S PROPOSED JURY INSTRUCTION FOR PATENTS

 3    IN GENERAL IS THE SAME LANGUAGE THAT YOU OBJECTED TO IN APPLE'S

 4    PRELIMINARY JURY INSTRUCTIONS, WHICH I ADOPTED, WHICH IS JUST

 5    KEEPING THE JURY INSTRUCTIONS FROM THE PREVIOUS TRIAL, "FOR A

 6    DESIGN PATENT, THE SPECIFICATION MUST CONTAIN ONE OR MORE

 7    DRAWINGS OF THE DESIGNS AS WELL AS A DESCRIPTION OF THE

 8    DRAWINGS, AND IT SERVES AS A SINGLE CLAIM.  THE CLAIM FOR

 9    DESIGN PATENTS GENERALLY REFERS TO THE DRAWINGS AND HOW THEY

10    ARE DESCRIBED."

11          SO THIS IS SAMSUNG'S PROPOSED JURY INSTRUCTION NUMBER 20,

12    PATENTS IN GENERAL, AND THEN APPLE OBJECTS TO IT, BUT THAT'S

13    WHAT YOU PROPOSED IN YOUR PRELIMINARY.

14          SO APPLE'S OBJECTION IS "APPLE ALSO OBJECTS TO SAMSUNG'S

15    PROPOSED INSTRUCTION AS INACCURATE, CONFUSING, MISLEADING, AND

16    PREJUDICIAL TO APPLE.  FOR EXAMPLE, SAMSUNG'S STATEMENT THAT

17    'THE SPECIFICATION MUST CONTAIN ONE OR MORE DRAWINGS OF THE

18    DESIGNS AS WELL AS A DESCRIPTION OF THE DRAWINGS, AND IT SERVES

19    AS A SINGLE CLAIM' IS CONFUSING AND INACCURATE.  MOREOVER, THE

20    COURT HAS ALREADY CONSTRUED THE CLAIMS OF THE DESIGN

21    PATENTS-IN-SUIT."

22          BUT THIS --

23             MS. MAROULIS:  YOUR HONOR, IT'S -- I THINK WE SHOULD

24    MEET AND CONFER ON THAT ONE AS WELL.

25             THE COURT:  YEAH.  AND IT COULD BE THAT I'M
```

1    MISUNDERSTANDING OBJECTIONS AND WHAT YOU'RE PROPOSING.  THAT'S

2    ALWAYS A POSSIBILITY AS WELL.

3         BUT ON THIS QUESTION, THERE DOES SEEM TO BE A LITTLE BIT

4    OF TENSION BETWEEN WHAT'S BEING PROPOSED AT DIFFERENT POINTS

5    FOR PRELIMINARY AND FINAL.

6         BUT IF YOU COULD SEE IF YOU COULD REACH SOME AGREEMENT ON

7    THAT -- I EXPECT THIS WILL BE A CONTINUING PROBLEM AND A

8    CONTINUING DISPUTE, SO TO THE EXTENT WE CAN TRY TO GET CLOSER

9    TO AN ANSWER NEXT WEEK, IT WOULD BE, I THINK, BENEFICIAL AT

10   LEAST TO MOVE THE BALL FORWARD, EVEN IF WE CAN'T COME TO A

11   STIPULATION, WHICH WILL PROBABLY BE DIFFICULT.

12        AND THEN ALSO, IS THERE SOME AGREEMENT -- OR AT LEAST I'D

13   ASK YOU TO PLEASE MEET AND CONFER AND SEE IF YOU CAN REACH SOME

14   AGREEMENT AS TO WHEN IT SHOULD BE GIVEN.

15        SO WHEN WOULD YOU LIKE TO TRY TO PROPOSE SOMETHING ON THIS

16   SCORE?

17             MS. MAROULIS:  MONDAY?

18             MR. LEE:  TUESDAY?

19             MS. MAROULIS:  TUESDAY, YOUR HONOR?

20             THE COURT:  THAT'S FINE.  SO THEN I'M ASSUMING --

21   BECAUSE THE PRELIMINARY JURY INSTRUCTIONS, APPLE HAD NO

22   OBJECTIONS AND SAMSUNG JUST RESERVED FOR APPEAL ITS PREVIOUS

23   OBJECTIONS.  SO I WOULD -- I'M ASSUMING THOSE ARE FINAL.

24             MS. MAROULIS:  UNDERSTOOD, YOUR HONOR.

25             MR. LEE:  YEAH.

```
 1              THE COURT:  OKAY.  SO THEN THIS PROPOSED INSTRUCTION
 2    I'M ASSUMING THAT YOU WILL FILE ON TUESDAY WILL EITHER BE A
 3    FINAL JURY INSTRUCTION, OR IF YOU TELL ME YOU WANT IT AT A
 4    DIFFERENT TIME.
 5              MS. MAROULIS:  WE'LL SPECIFY WHETHER THE PARTIES
 6    ARE -- ONE PARTY WANTS IT AS PRELIMINARY.
 7              THE COURT:  OKAY.  SO MAY 15, 20 -- I'M SORRY, NO,
 8    THAT'S NOT RIGHT.  MAY 8TH.
 9              MR. LEE:  MAY 8TH.
10              THE COURT:  MAY 8TH.
11         OKAY.  I DIDN'T HAVE ANYTHING ELSE.  DID YOU HAVE ANYTHING
12    ELSE?
13         AND I'M SORRY THAT WE DON'T KNOW WHERE WE'RE GOING TO BE.
14    I ASSUME MS. MASON WILL GET IN TOUCH WITH YOU ONCE WE HAVE
15    CONFIRMATION ABOUT WHETHER WE'LL BE UPSTAIRS OR WE'LL BE HERE.
16         WE DEFINITELY WON'T BE IN THE CEREMONIAL COURTROOM.
17    THERE'S ANOTHER TRIAL GOING ON IN THAT SPACE.
18              MR. LEE:  JUST A COUPLE QUICK THINGS, YOUR HONOR.
19         THERE WAS A DISAGREEMENT IN THE JOINT PRETRIAL STATEMENT
20    ABOUT WHETHER TO SEND A TRIAL BRIEF TO YOUR HONOR NEXT MONDAY.
21    SAMSUNG WANTED TO.  OUR POSITION WAS THERE'S BEEN ENOUGH PAPER
22    AND WE'VE BRIEFED EVERYTHING TO YOUR HONOR, AND WE'RE NOW GOING
23    TO BRIEF A NUMBER OF, THREE OR FOUR ADDITIONAL ISSUES.
24         BUT WE ARE HAPPY TO DO WHATEVER YOUR HONOR WANTS.
25              MS. MAROULIS:  AND, YOUR HONOR, VERY BRIEFLY, A TRIAL
```

```
 1    BRIEF IS NOT SOMETHING THE COURT NEEDS TO RULE ON.  THIS IS

 2    JUST THE PARTIES' POSITION AND IT'S THERE TO EDUCATE THE COURT

 3    AND EDUCATE THE OTHER SIDE.

 4         WE, SAMSUNG, WOULD LIKE TO FILE ONE.  THEY DON'T HAVE TO

 5    FILE ONE IF THEY DON'T WANT IT.  IT'S NOT ANYTHING THE COURT

 6    NEEDS TO RULE ON EITHER BEFORE OR DURING THE TRIAL.

 7              THE COURT:  WELL, BUT I KNOW WHAT WILL HAPPEN.  THERE

 8    WEREN'T SUPPOSED TO BE ANY EVIDENTIARY OBJECTIONS HERE AND

 9    THERE WERE 24, OR 23 THAT SAMSUNG RAISED IN ITS PRETRIAL

10    STATEMENT.

11         SO I WOULD PREFER NOT HAVING THEM.  I MEAN, THIS CASE HAS

12    BEEN GOING ON FOR SEVEN YEARS.  I MEAN, YOU WANT TO EDUCATE ME

13    SOME MORE?  I MEAN, COME ON.  I THINK WE'RE GOOD.

14         AND YOUR -- YOUR PRETRIAL STATEMENT WAS 42 PAGES.  SAMSUNG

15    HAD 23 EVIDENTIARY OBJECTIONS.  THIS IS THE THIRD TIME WE'RE

16    DOING THIS.  I MEAN, WHAT MORE NEEDS TO BE SAID?

17              MS. MAROULIS:  YOUR HONOR, THERE'S ONE ISSUE THAT

18    KEEPS POPPING UP, WHICH IS LAW OF THE CASE, BECAUSE APPLE KEEPS

19    ARGUING THAT LAW OF THE CASE PREVENTS ADDITIONAL RULINGS MADE

20    AND THIS GROUNDHOG DAY, AND WE WANT TO REITERATE THAT WITH THE

21    CHANGE IN LAW AND THE NEW DECISION ON ARTICLE OF MANUFACTURE,

22    THERE ARE SOME ISSUES THAT NEED TO BE REVISITED.

23              THE COURT:  YEAH, BUT YOU HAD A PRETRIAL STATEMENT OF

24    42 PAGES TO DO THAT.  I THINK YOU VERY, VERY THOROUGHLY

25    RESERVED YOUR RIGHTS ON APPEAL.
```

1          AND YOU MAY LIKE THIS VERDICT.  IT MAY BE APPLE THAT NEEDS

2     TO APPEAL THIS ONE.  I MEAN, WE DON'T KNOW WHAT'S GOING TO

3     HAPPEN.

4          BUT I THINK THERE'S BEEN MORE THAN SUFFICIENT BRIEFING,

5     AND YOU HAVE HIGH PRIORITY OBJECTIONS TO RAISE SPECIFIC

6     OBJECTIONS TO SPECIFIC DEPOSITIONS, WITNESSES, EXHIBITS.  I

7     THINK THAT'LL BE THE BEST TIME TO RAISE THOSE.

8          MR. LEE:  ONE OTHER QUICK QUESTION, YOUR HONOR.

9          THE COURT:  I DO HAVE OTHER CASES AS WELL.  SO YOU

10    ALL ARE A BIG, BIG CONSUMPTION OF COURT RESOURCES AND I THINK

11    YOU'VE HAD A LOT OF DUE PROCESS HERE.

12         MR. LEE:  YOUR HONOR, PARTICULARLY WITH HAVING IN

13    MIND THAT YOUR HONOR HAS ANOTHER TRIAL STARTING THE 21ST, WOULD

14    IT BE YOUR HOPE THAT WE'LL OPEN ON MONDAY AFTERNOON NEXT WEEK?

15         THE COURT:  WELL --

16         MR. LEE:  I UNDERSTAND IT'S HARD TO PREDICT.

17         THE COURT:  THE PROBLEM IS I'M NOT SURE IF THAT'LL BE

18    POSSIBLE BASED ON -- HOW LONG DID IT TAKE -- I THOUGHT THE 2014

19    TRIAL, IT TOOK A FULL DAY, DIDN'T IT?

20         MR. LEE:  I THINK FOR BOTH OF THE -- THE LAST THREE

21    TRIALS, IT TOOK A FULL DAY, CLOSE TO A FULL DAY.

22         THE COURT:  YEAH.  SO I WASN'T THINKING THAT WAS

23    LIKELY.

24         MR. LEE:  OKAY.

25         THE COURT:  BUT IF WE HAVE THE TIME, YOU BETTER BE

```
 1        READY.
 2                MR. LEE:  WE WILL BE.
 3                THE COURT:  BUT I'M NOT GOING TO SPLIT OPENINGS OR
 4     CLOSINGS, SO IT HAS TO BE ENOUGH TIME FOR BOTH SIDES TO DO IT.
 5                MR. LEE:  OKAY.
 6                THE COURT:  SO WE MAY JUST NOT HAVE ENOUGH TIME.
 7                MR. LEE:  OKAY.  AND ONCE WE CONFER WITH MS. MASON ON
 8     THE COURTROOM, WE CAN ALSO CONFER ON GETTING ACCESS BEFORE TO
 9     GET SET UP AND EVERYTHING LIKE THAT?
10                THE COURT:  YES.  AND I APOLOGIZE, IF WE HAVE TO
11     MOVE, YOU MAY HAVE TO MOVE YOUR -- OR SHOULD WE JUST HAVE IT IN
12     HERE?  I JUST DON'T -- WHAT'S YOUR --
13                MR. LEE:  HAVING IT IN HERE IS FINE WITH US.  WE'RE
14     HAPPY TO DO WHATEVER --
15                MS. MAROULIS:  IT MIGHT BE GOOD TO HAVE CERTAINTY SO
16     THAT PEOPLE CAN START MOVING BINDERS.  SO IF THERE'S A CHANCE
17     THAT WE MIGHT NEED TO MOVE HERE MIDWAY, IT'D PROBABLY BE GOOD
18     TO START HERE.
19                MR. LEE:  I THINK IT WOULD BE BETTER TO START HERE
20     AND FINISH HERE.
21                THE COURT:  OKAY.  WILL WE HAVE ENOUGH ROOM FOR OUR
22     PROSPECTIVE JURY POOL?  BECAUSE YOU ALL TEND TO BRING A LOT OF
23     CLIENTS AND COUNSEL.
24                MR. LEE:  I THINK IF SOME OF THEM HAVE TO WAIT OUT IN
25     THE HALL WHILE THE VENIRE IS SITTING BACK THERE BEFORE THEY
```

1    COME DOWN IN THE WELL, THEY'LL HAVE TO SIT OUTSIDE.  BUT I

2    THINK WE CAN ADJUST TO THAT PORTION OF THE FIRST DAY.

3           THE COURT:  THE ONLY BENEFIT TO UPSTAIRS IS THAT

4    THERE IS AN EMPTY COURTROOM AND JURY ROOM THAT WE COULD USE.

5        SO I WAS GOING TO DO THE SAME THING AS THE LAST TWO TIMES

6    WHERE WE'LL PICK A GROUP OF, I DON'T KNOW -- IF IT'S HERE, IT'S

7    SMALL.  I CAN ONLY DO 32.  IF IT WAS UPSTAIRS, WE COULD GET UP

8    TO 36.

9        AND WE'LL ASK THEM FIRST WHO'S HEARD OF THE CASE -- WELL,

10   FIRST WE'LL GET TO THE 35 OR 36, EVERYONE ELSE WILL GO DOWN TO

11   THE JURY ASSEMBLY ROOM AND WAIT TO SEE IF THEY'RE EVER EVEN

12   RECALLED UP.

13       BUT THEN WITH THAT GROUP OF 32 TO 36, WE'LL ASK IF YOU'VE

14   HEARD ABOUT THE CASE; IF THEY HAVE, THEN I WANT TO INDIVIDUALLY

15   VOIR DIRE THEM, AS WE DID THE LAST TWO TIMES.

16       SO WE NEED A PLACE, PREFERABLY ON THIS FLOOR, FOR PEOPLE

17   TO WAIT BEFORE THEY'RE VOIR DIRED.

18       I DON'T KNOW, IS THERE AN EMPTY --

19           THE CLERK:  YOUR HONOR, I CAN CHECK, BUT I BELIEVE

20   ALL OF THEM ARE UNDER THE HVAC CONSTRUCTION CURRENTLY.

21           THE COURT:  YEAH, THAT'S THE PROBLEM.  I MEAN, I

22   GUESS I COULD SEND THEM UPSTAIRS.

23           MR. LEE:  WHAT IF WE -- I DON'T KNOW IF IT'S

24   POSSIBLE, BUT WHAT IF WE DID THE JURY SELECTION UPSTAIRS,

25   BECAUSE WE'RE NOT GOING TO NEED TO BE ALL SET UP WITH THE

```
1         ELECTRONICS AND EVERYTHING FOR THAT.  WE COULD PICK THE JURY

2         UPSTAIRS AND THEN MOVE DOWN HERE TO START THE TRIAL AND WE'LL

3         BE SET UP AND READY TO GO.

4               MS. MAROULIS:  THAT MAY MAKE SENSE.

5               THE COURT:  OKAY.  BUT THEN IF YOU DO OPENINGS ON

6         MONDAY, CAN YOU DO THAT WITHOUT ALL OF YOUR AV AND --

7               MR. LEE:  PROBABLY NOT.

8               MS. MAROULIS:  OKAY, THAT'S -- ON THE SECOND THOUGHT,

9         THAT'S PROBABLY A BAD IDEA.

10              MR. LEE:  THAT'S THE PROBLEM WITH LATE IN THE

11        AFTERNOON IDEAS.

12              THE COURT:  OKAY.  WELL, THAT WOULD BE FINE JUST TO

13        DO THE JURY SELECTION UPSTAIRS BECAUSE IT'S A MUCH BIGGER -- I

14        MEAN, I THINK WE'LL BE ABLE TO USE THAT ROOM.

15           I COULD PROBABLY GIVE YOU HOPEFULLY A DEFINITIVE ANSWER

16        TOMORROW, OR EVEN LATER TODAY.

17              MS. MAROULIS:  THAT'S FINE.

18              MR. LEE:  TOMORROW IS FINE.

19              THE COURT:  DO YOU THINK WE NEED -- I MEAN, IS THIS

20        GOING TO GET MUCH OF AN ATTENDANCE, OR NOT?

21              MR. LEE:  I BET LESS THAN THE FIRST ROUND.

22              MS. MAROULIS:  IT'S HARD TO PREDICT, YOUR HONOR, BUT

23        BOTH SIDES WILL HAVE CLIENT REPRESENTATIVES.

24              THE COURT:  SURE.  SURE.

25           BECAUSE THEN THE OTHER QUESTION IS, DO WE NEED AN OVERFLOW
```

```
1      ROOM?  OR NOT?
2              MS. MAROULIS:  I DON'T BELIEVE WE HAD ONE IN THE 2013
3      TRIAL.  I DON'T REMEMBER HAVING THAT.
4              MR. LEE:  I DON'T THINK SO, YOUR HONOR.
5              MS. MAROULIS:  I DON'T THINK SO.
6              THE COURT:  OKAY.  ALL RIGHT.
7          I THINK IT MAY BE EASIER TO DO JURY SELECTION UPSTAIRS
8      BECAUSE IT'LL BE VERY TIGHT.
9          HOW MANY CLIENT REPRESENTATIVES DOES EACH SIDE THINK
10     YOU'LL HAVE?
11             MS. MAROULIS:  WE MIGHT HAVE --
12             THE COURT:  AND LAWYERS FROM YOUR FIRMS?
13             MS. MAROULIS:  WE MIGHT HAVE ALTERNATING, BUT MAYBE
14     FIVE TO EIGHT FOLKS IN ATTENDANCE ON VARIOUS DAYS.
15             THE COURT:  OKAY.  AND --
16             MR. LEE:  I THINK WE'RE ABOUT THE SAME, ABOUT EIGHT,
17     INCLUDING THE CLIENTS, CLIENT REPRESENTATIVES.
18             MS. MAROULIS:  I'M SORRY.  THAT WAS THE CLIENT
19     REPRESENTATIVES.  OUR TEAM IS GOING TO BE EXTRA.
20             THE COURT:  OKAY.  AND HOW MUCH FOR YOUR TEAM?
21     BECAUSE I'M JUST ALSO TRYING TO THINK IN TERMS OF THE SPACE
22     THAT WE HAVE TO SIT HERE.
23             MS. MAROULIS:  PROBABLY FOUR TO FIVE AT ONE TIME.
24             THE COURT:  OKAY.  SO THAT IN ITSELF WILL BE A PRETTY
25     GOOD SIZE.
```

```
 1          WELL, I'D SAY LET'S TRY TO SEE IF WE CAN GET IN

 2   JUDGE DAVILA'S COURTROOM, AT LEAST FOR JURY SELECTION, JUST

 3   BECAUSE IT'S VERY TIGHT IN HERE.

 4          MR. LEE:  YES.

 5          THE COURT:  OKAY.  AND THEN IF WE DON'T NEED TO, WE

 6   COULD MOVE DOWN.  BUT I WOULD PLAN TO GIVE YOUR OPENINGS

 7   UPSTAIRS, SO GO AHEAD AND SET UP YOUR EQUIPMENT.

 8          MS. MAROULIS:  WE'LL DO THAT, YOUR HONOR.

 9          THE COURT:  OKAY.  ANYTHING ELSE?

10          MR. PRICE:  YOUR HONOR, IN CASE A MIRACLE HAPPENS AND

11   WE DO FINISH VOIR DIRE AND OPENINGS THAT MONDAY --

12          THE COURT:  YES.

13          MR. PRICE:  -- WOULD YOU ENTERTAIN REVISITING HOW

14   MUCH TIME THE PARTIES HAVE TO EXAMINE WITNESSES, KNOWING THAT

15   WE'VE GOT TO BE TO THE JURY --

16          THE COURT:  BY FRIDAY.

17          MR. PRICE:  -- BY THE END OF THE DAY ON FRIDAY?

18   BECAUSE 15 MINUTES HERE AND THERE CAN MAKE A DIFFERENCE.

19          MR. LEE:  I THINK WE OUGHT TO REVISIT THE ISSUE ONCE

20   IT'S A REAL ISSUE.  I MEAN, I THINK BY OUR COUNT, EVEN IF WE

21   OPEN ON MONDAY AFTERNOON, GIVEN JUST WHAT HAPPENS DURING THE

22   COURSE OF THE TRIAL, WE HAVE EIGHT HOURS EACH, MAYBE WE'LL GET

23   TO CLOSE ON FRIDAY IF WE'RE GOING TO DO BOTH CLOSINGS.

24          THE COURT:  OH, I'M HOPING YOU'RE CLOSING ON FRIDAY

25   BECAUSE I HAVE ANOTHER JURY SELECTION STARTING ON MONDAY AT
```

```
1        9:00.

2              MR. PRICE:  THAT WAS MY UNDERSTANDING OF WHAT THE

3        COURT WAS SAYING, THAT IT HAD TO HAPPEN.

4              THE COURT:  YEAH.

5              MR. LEE:  OKAY.

6              THE COURT:  SO, YOU KNOW, LET'S SEE HOW FAR WE GET.

7          THE MIRACLE WOULD BE IF YOU ALL WERE SETTLING, BUT I

8        ASSUME THAT'S NOT HAPPENING THIS WEEK OR NEXT WEEK.

9              MR. LEE:  THIS IS NOT THE WEEK OF MIRACLES, YOUR

10       HONOR.

11             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU ALL.

12             MS. MAROULIS:  THANK YOU, YOUR HONOR.

13             THE COURT:  THANK YOU VERY MUCH.

14         ALL RIGHT.  LET'S TAKE A FIVE MINUTE BREAK AND THEN WE'LL

15       DO THE YAHOO! CASE.

16             (THE PROCEEDINGS WERE CONCLUDED AT 2:50 P.M.)

17

18

19

20

21

22

23

24

25
```

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MAY 7, 2018

19

20

21

22

23

24

25