1  ERIK J. OLSON (CA SBN 175815)
   ejolson@mofo.com
2  NATHAN B. SABRI (CA SBN 252216)
   nsabri@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone:  (415) 268-7000
5  Facsimile:  (415) 268-7522

   WILLIAM F. LEE (*pro hac vice*)
   william.lee@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   60 State Street
   Boston, Massachusetts 02109
   Telephone:  (617) 526-6000
   Facsimile:  (617) 526-5000

   MARK D. SELWYN (CA SBN 244180)
   mark.selwyn@wilmerhale.com
   WILMER CUTLER PICKERING
     HALE AND DORR LLP
   950 Page Mill Road
   Palo Alto, California 94304
   Telephone:  (650) 858-6000
   Facsimile:  (650) 858-6100

*Attorneys for Plaintiff Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 11-cv-01846-LHK<br><br>**APPLE'S RESPONSE TO SAMSUNG'S BRIEF RE UNASSERTED PATENTS (DKT. 3711)** |

1   At the pretrial hearing, Samsung expressed its desire to introduce evidence of "a few
2   specific patents," and identified six exhibits—one Samsung and five Apple design patents. Dkt.
3   3703 at 17, 22-24; *see also id.* at 35 (Samsung counsel agreeing more briefing "makes sense if
4   we're focusing on the Apple patents and this one Samsung patent"). Samsung has now disclosed
5   thirteen exhibits that collectively include ***hundreds*** of unasserted patents. Samsung's apparent
6   hope is that by raising so many unasserted patents, the Court will permit at least some to be
7   introduced. But ***none*** of the patents is supported by a proper foundation establishing actual
8   relevance to the issues in this case, and ***all*** the patents would create satellite litigation that would
9   distract the jury from its actual charge: to apply the four article of manufacture ("AOM") factors
10  to identify the AOMs to which Samsung applied Apple's patented designs. The ensuing jury
11  confusion and waste of trial time would be highly prejudicial to Apple.

12  In particular, as discussed below and in Apple's motion in limine (Dkt. 3647-3), there is
13  no evidence that ***any*** of these patents is practiced by Samsung's infringing phones or by the
14  iPhone—there is literally zero expert opinion articulating a proper practicing-the-patent theory
15  for any unasserted patent, as is required for any such complex issue.   Yet many of Samsung's
16  arguments for relevance in both its current submission and its opposition to Apple's original
17  motion in limine (Dkt. 3658) are premised on an assumption (or attorney assertion) of either
18  Samsung or Apple practicing unasserted patents. There is no proper foundation for that
19  assumption, and without such a foundation, no relevance. That alone is sufficient to exclude the
20  unasserted patents under FRE 401 and 402.

21  But there is another independent ground for exclusion: if there were any relevance—
22  though there is not—it is far outweighed by the prejudicial effect of the evidence and Samsung's
23  intended use of it. Such evidence would disrupt the trial on damages with a satellite litigation
24  involving unasserted patents. The jury would need to confront how to construe the scope of such
25  patents (without any Markman order on those patents); how to apply those patents to Apple or
26  Samsung products (without any expert opinion on that question); and how to factor these
27  unasserted patents into its analysis of the patents-in-suit and the infringing products. The end
28

result would be confusion for the jury and prejudice for Apple.  Further, much of the evidence Samsung seeks to use is tied to its prior non-infringement, invalidity, and apportionment arguments.  Samsung thus would invite the jury to reconsider these long-resolved and now-irrelevant arguments.  Accordingly, the unasserted patents should be excluded under FRE 403.

*Samsung's D638,815 Patent.*  The D'815 patent (DX4580) is irrelevant and Samsung's intended use of it would prejudice Apple by inviting the jury to revisit the long-decided issues of validity and infringement.  Despite Samsung's current claim that the D'815 patent is relevant to Factors 1 and 2 of the Court's AOM test, Mr. Lucente—Samsung's only witness to opine on the identity of the AOMs—did not cite the D'815 patent in his discussion of either factor.  *See* Dkt. 3592-25, ¶¶ 54-220.  Samsung now alleges that "[t]he D'815 patent … shows that Samsung was able to obtain its own patent on the *entire* exterior design of the Mesmerize, Fascinate, and Showcase phones, illustrating that those phones contain prominent features" other than the designs found to infringe the D'677 patent.  But the PTO made no findings whatsoever regarding "prominent features."  And unsubstantiated statements by Samsung's counsel that these phones "plainly practice" this patent cannot substitute for the careful comparisons and expert opinion that would be necessary to support an argument that they do.  *See* Dkt. 3711 at 1 n.1.  Worse, Samsung's unsupported assertion that the D'815 patent covers the "*entire* exterior design" of those phones (*id.* at 1) would improperly call into question the prior jury's verdict that that the D'677 patent is valid and infringed.[1]  Finally, the D'815 does not rebut proof of Samsung's copying—it was applied for in June 2010, *after* Samsung began to develop the infringing phones.

*Apple's Unasserted Patents.*  Samsung seeks to use other Apple patents (e.g., DX4559-DX4563) to "help the jury to understand the scope of what the asserted patents cover."  Dkt. 3711 at 2.  But the ***patents-in-suit themselves*** define the scope of their claimed designs.  As the Court has held: "I don't believe that subsequently issued patents are relevant to the scope of an earlier patent and using non-prior art to determine the scope of the patent at issue is not part of

---

[1]     Mr. Lucente concedes his analysis of the D'815 patent is inconsistent with the jury's verdict.  *See* Dkt. 3592-25, ¶ 361.

the test set out in *Egyptian Goddess*." Dkt. 1272 at 129.

Samsung's assertion that because the D'310 and D'926 patents "claim[] only minor component[s]" they somehow "show that the titles and written descriptions… are not indicative of the AOMs" is also incorrect. The Court has rejected Samsung's argument that the claim scope is necessarily equivalent to the AOM (*see, e.g.*, Dkt. 3530 at 17), and Samsung should not be allowed to introduce evidence or argument suggesting the jury should disregard the written description of the patents-in-suit in contravention of Factor 1. Samsung is assuming that Apple will argue to the jury that an asserted patent title (e.g., "Electronic Device") is dispositive as to the relevant AOM. Apple has not made and will not make this argument. Rather, Apple will argue that the Court's four-factor test requires the jury to consider the full range of evidence implicated by the four factors. Thus, the scenario that Samsung is raising (i.e., the suggestion that a patent title is dispositive) will not happen. But what will happen if Samsung introduces unasserted patents is jury confusion in considering not only the full range of evidence for Factors 1-4 as applied to the asserted patents and the infringing Samsung products, but also new and different facts relating to the D'310 and D'926 patents.

Samsung's use of the D'248 and D'160 patents would be similarly irrelevant and prejudicial. Samsung alleges that "[u]nder Apple's analysis, *any* design related to a GUI would be 'applied' to the entire phone." Dkt. 3711 at 2. Apple does not and will not make, such a categorical argument. Introducing these patents would simply confuse the jury's charge to consider the four factors as applied to the asserted patents and the infringing Samsung products.

Moreover, for each of the D'310, D'926, D'248, and D'160 patents, there is no expert opinion that they are practiced by either Samsung's infringing phones or Apple's iPhones. The same is true of Samsung's attempt to use Apple's D'387 patent to show Samsung did not "cop[y] the *entire* 'look and feel'" of the iPhone: To make this argument would first require satellite litigation to establish that the iPhone practices the D'387—and that the infringing Samsung phones do not. And once again, there is no expert opinion on those issues.

Finally, unasserted patents are not relevant to Factor 3.  Samsung alleges only that these patents show "the variety of design concepts that *a* smartphone may contain" (Dkt. 3711 at 2 (emphasis added)), without stating what those concepts are or how, if at all, they are distinct. But Factor 3 asks whether the patented design is conceptually distinct *from the infringing product* as a whole.  There is no evidence that Samsung's infringing phones "contain" any of these unasserted Apple patents—and indeed, Samsung denies they do.  Dkt. 3703 at 29.

***Charts of Apple Patents.***  The Court has already ruled that evidence that both Apple and Samsung have large portfolios of patents, many of which relate to smartphones, is admissible at trial.  Dkt. 3689 at 2.  Samsung does not need—and should not be permitted—to introduce charts cataloguing over 225 unasserted patents to make this simple point.  As discussed above, introducing specific unasserted Apple patents would confuse the jury and prejudice Apple. These summary tables would only magnify the jury confusion and prejudice to Apple.

***Prior Art Patents.***  The prior art design patents Samsung identifies (DX511, DX727, and DX728) should also be excluded.  Samsung now contends that because these exhibits were admitted previously they "are thus admissible under the Groundhog Day rule."  Dkt. 3711.  But these patents were admitted in 2012 as relevant to Samsung's ***non-infringement*** arguments.  *See* Dkt. 1611 at 1110-1117.  Infringement has now been decided.

Samsung alleges only that these patents are "relevant to factor 1," but Mr. Lucente does not discuss them in his analysis of Factor 1 (or any other factor).  Dkt. 3592-25, *¶¶* 54-156.  To the contrary, he suggested prior art is not relevant to the scope of the claimed designs.  *Id.* ¶ 99. The only category of prior art either party has suggested is relevant to the AOM analysis is prior art cited on the face of the asserted patents, which these patents are not.

Finally, Samsung once again argues that it seeks to rebut an argument that Apple simply does not make: that the D'677 and D'087 patents "cover the general design concept of a 'screen-centric design.'" Dkt. 3711 at 3.  Apple has not and will not argue that.

***Standard Essential Patents ("SEPs").***  Samsung should not be permitted to introduce the study of LTE SEPs (DX4523) or its still undisclosed demonstrative regarding similar studies.

Samsung's suggestion that SEPs "by definition, are practiced by these phones" (Dkt. 3703 at 21) is wrong. Indeed, many patentees have failed to prove that patents alleged to be standard essential were actually infringed. *Standard Essential Patents: How Do They Fare*, RPX Corp. (2014) (https://www.rpxcorp.com/wp-content/uploads/2014/01/Standard-Essential-Patents-How-Do-They-Fare.pdf). Even in this case, Samsung alleged that two patents ('941 and '516) were standard essential and infringed by Apple, but the jury found otherwise. Dkt. 1931 at 17.

Finally, Samsung alleges that "this evidence is relevant to damages, because it confirms that components and features enabling cellular communication contribute to smartphone profitability." Dkt. 3711 at 3. But because there is no evidence that these SEPs are practiced by the infringing phones, there can be no suggestion that they contributed to the profitability of those phones. Further, the alleged profitability of phone features such as "cellular communication" has no bearing on the profits attributable to the ***components*** Samsung alleges are the AOMs. Mr. Wagner does not use any information from these studies to calculate damages under § 289, and to suggest that they bear on those calculations would encourage the jury to improperly apportion Samsung's profits between design and technical features.[2]

***Graph of Patents.*** The graph of patents granted between 2006 and 2016 to numerous entities including Apple, Samsung, and third parties (DX4557) is not relevant to rebut allegations of copying. Again, there is no evidence to tie any of the Samsung patents in this chart to the infringing products, and the chart extends years beyond the relevant timeframe.

\* \* \*

The jury should focus exclusively on the application of the asserted patents to the infringing Samsung products. Apple respectfully requests that the Court reject Samsung's efforts to confuse and prejudice the jury's analysis by injecting unasserted patents into the case.

---

[2] DX4523 should also be excluded (1) as hearsay, as Samsung relies on it for the truth of what is stated, and (2) under FRE 403, as it discusses "smartphone patent wars" (*e.g.*, "fierce litigation" such as "Apple versus Samsung") and irrelevant patent valuations. *E.g.*, DX4523.002.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: May 9, 2018 | */s/ Mark D. Selwyn* |
| 3 | | Mark D. Selwyn (SBN 244180) |
| 4 | | *Attorney for Plaintiff Apple Inc.* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 9, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

>   */s/ Mark D. Selwyn*
>   Mark D. Selwyn