# EXHIBIT 3

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5022**

WRITER'S EMAIL ADDRESS
**victoriamaroulis@quinnemanuel.com**

January 3, 2018

**VIA E-MAIL**
**MARK.SELWYN@WILMERHALE.COM**

Mark Selwyn
WilmerHale
950 Page Mill Road
Palo Alto, CA 94304

Re:   Your December 28, 2017 Letter Regarding Samsung's Document Production

Dear Mark:

Your December 28, 2017 letter regarding Samsung's document productions is not well taken. The parties are now involved in preparing for a third trial in this case because of a legal error that Apple invited into these proceedings. At great expense, Samsung has had to challenge that legal error for over four years to secure its right to a new trial. At Apple's own urging, Samsung has now been given a new burden of producing evidence regarding a newly articulated article of manufacture test that did not exist during the prior discovery period. In line with that new burden and legal test, the Court has reopened discovery for the parties to produce evidence they may wish to rely on. Your letter ignores the reasons we are here now and is directly at odds with the posture of this case, the current legal and factual issues at play, and the Court's new trial and case management orders. Samsung reserves all rights to oppose any preclusion motion Apple may bring and to move for any and all appropriate sanctions if Apple continues to burden Samsung with discovery disputes aimed at keeping relevant and timely produced evidence away from the jury.

Regarding your specific concerns:

*First*, the documents you reference as related to Mr. Blackard's deposition and as "design and development" documents (SAMNDCA30010154-SAMNDCA30010316; SAMNDCA30008790-SAMNDCA3001050) are all carrier-related documents that Samsung located and produced as a courtesy to Apple despite Apple's having chosen not to serve any requests for documents during this phase of discovery. These documents are not responsive to the prior RFPs you've listed; Apple requested them for the first time *after* Mr. Blackard's

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Mark Selwyn
January 3, 2018

deposition.  Samsung already made available thousands of pages of documents and hundreds of physical items relating to the hardware design of Samsung's accused products including designer sketchbooks, CAD files, physical models, Samsung design patents, design roadmaps, design presentations, design mock-up histories, and more; and Samsung also produced numerous carrier-related documents previously that Apple could have used in depositions had it wanted to do so.  (*See, e.g.*, SAMNDCA-CAD 0000001-97; SAMNDCA00197929-8057; SAMNDCA00197773-901; SAMNDCA00197131-263; SAMNDCA00201013-016; SAMNDCA00201017-020; SAMNDCA00202242-265; SAMNDCA00414846-5060; SAMNDCA00240672-676; SAMNDCA00246523-539; SAMNDCA00311685-86; SAMNDCA00320997-1027; SAMNDCA00321032-320; SAMNDCA00321339-817; SAMNDCA00321829-844; SAMNDCA00321846-50; SAMNDCA00321856; SAMNDCA00321891-908; SAMNDCA00321911-2152; SAMNDCA00255357-365; SAMNDCA00504192-210; SAMNDCA00508037-8074; S-ITC-000095567-5593; SAMNDCA10144232-281; SAMNDCA10217578; SAMNDCA10228191; SAMNDCA10228880; SAMNDCA10239623; SAMNDCA10240021; SAMNDCA10240645; SAMNDCA10243713.)  Samsung also made numerous designers available for depositions in 2012.  (*E.g.*, Jinsoo Kim, Yongseok Bang, Minhyouk Lee, Hyoung Shin Park, Gi Young Lee, Yunjung Lee, and Bo-Ra Kim.)  Apple questioned those witnesses at length about the design and development of the accused phones and about the documents and models that Samsung provided.  The fact that Samsung was able to voluntarily locate and produce more carrier-related documents at Apple's recent request is no indication that these documents were ever called for or that they were (or could have been) found through the reasonable and diligent searches that Apple and Samsung agreed to and that Samsung previously undertook with regard to Apple's hundreds of prior requests for production.

Regarding consumer surveys, Samsung previously undertook diligent searches, locating and producing tens of thousands of pages of market research materials subject to its objections and responses to Apple's RFPs.  (*See, e.g.*, SAMNDCA00230429-249673; SAMNDCA00352062-353566; SAMNDCA00526031-526681; SAMNDCA10855541-885405.) Samsung was well within its rights to conduct an additional search in response to the Court's order imposing a new burden of production on it under the new legal test.  Further, the consumer survey documents you identified were produced before the depositions of all Samsung witnesses in this new phase of discovery, yet Apple chose not to question Samsung's witnesses about them.

Regarding user interface guidelines, twenty three of the twenty four documents you cite relate to aspects of the phone's interface other than the accused applications menu, such as Daily Briefing, Dictionary, eBooks, and Social Hub screens and were therefore not relevant to Apple's prior claims or reasonably within any RFP for which Samsung agreed to locate and produce documents.  As you know, Apple's design patent infringement contentions were limited to the array of icons in the applications menus of the accused Samsung devices; they did not extend to other aspects of the phones' user interface screens.  (*See, e.g.*, Apple's Response to Samsung's Interrogatory No. 72, dated Mar. 10, 2012.)  Nevertheless, Samsung did previously conduct diligent searches for documents of this type, locating and producing over eleven thousand pages

2

Mark Selwyn
January 3, 2018

of similar GUI materials during the prior discovery period. (*See, e.g.*, SAMNDCA00299872-311336.)  Moreover, the additional materials Apple is challenging reflect GUI screens accessible from the actual physical phones Samsung produced and which were exhibits at trial, as well as the hierarchical relationship of the screens to each other, which are also embodied in the actual physical phones.  Apple has not shown how these particular pages are not similar to the many other documents and things Samsung already produced, nor how Apple could conceivably have been prejudiced by not having received these previously in light of the jury's findings with regard to the D'305 patent.  To the contrary, Apple had all the information it needed to question JeeYeun Wang, the designer of the Galaxy I UX, about the interface design, including particular screens and their relationship to each other, well before her deposition in December 2017—as well as in her deposition in 2012 or at trial in 2012.

*Second*, regarding metadata, we will look into this issue for you, but make no representation that any such data exists or is required.  We also note that Apple attorneys already questioned Samsung witnesses about this topic and that Apple did not provide metadata for its own productions.

*Third*, regarding the timing of Samsung's document production, you admit that the documents were produced within fact discovery.  You have identified no authority requiring the parties to produce documents ahead of that deadline, even though Samsung made every reasonable effort to identify and produce documents in advance of the various depositions that Apple requested.  Also, you mischaracterize the December 8, 2017 email from Ms. Jenkins to Ms. Frazier.  Here is what it said:

> Samsung is continuing to search for relevant information and materials responsive to Apple's requests.  Discovery is open until December 21 and Samsung has a right to supplement its production throughout the discovery period.  Samsung expects to produce by December 9 the materials it is currently aware of that are in its possession regarding the topics on which Mr. Blackard is expected to speak.

Consistent with this representation, Samsung worked to identify and produce as quickly as it could the documents that were in its possession.  Of the 5,500 pages you complain about, the overwhelming majority of these are (1) *public* materials that Apple had equal access to, including Apple's *own* patents (4,423 pages, SAMNDCA30011460-SAMNDCA30015883), and (2) additional carrier-related materials that Samsung located and produced as a courtesy to Apple after they were informally requested by email just one week prior (162 pages, SAMNDCA30010154-SAMNDCA30010316).  Moreover, the public documents Samsung produced were within the same categories of materials Samsung had already identified in its interrogatory responses as being relevant to its article of manufacture contentions, yet Apple spent no time asking Mr. Blackard about them.  (*See, e.g.*, Samsung's Responses to Interrogatories No. 1-3, dated Nov. 29, 2017 (identifying by type and/or Bates number: "the numerous other design patents that Apple sought and received with regard to the design of the iPhone that claim other aspects and components of the device," "Apple patents and file

3

Mark Selwyn
January 3, 2018

histories," "articles [and] reviews" of the parties' phones, and third-party materials "emphasiz[ing] other features [of the Samsung phones]").

As to the user interface guidelines, Apple already had in its possession over ten thousand pages similar to those that were produced in 2011-12 that it could have put before Ms. Wang had it wanted to do so, as discussed above.  Samsung also described for Apple in its interrogatory responses, well before Ms. Wang's deposition, that there is "extensive evidence regarding the numerous applications and GUI screens that are displayed on the phones apart from the specific array of icons accused of infringing the D'305 patent—including the unaccused Samsung home screen, the web browser, contacts program, and picture gallery."  (*See* Samsung's Response to Interrogatory No. 3 at 29, dated Nov. 29, 2017; *see also id.* at 31 ("[T]he image of the single, patented array of GUI icons can be removed from the phone by turning off the phone *or changing the image on the screen*.") (emphasis added); *id.* at 28 ("Each of the phones contains hundreds of distinct physical components and *innumerable graphical user interface images*, and embodies (at least) many tens of thousands of inventions….") (emphasis added).)  Despite having these contentions and previously produced GUI-related documents, Apple did not question Ms. Wang about them.

Moreover, Apple could have, but did not, request an order from the Court phasing discovery so that depositions occurred only after the deadline to produce documents.  The Court has already ruled in this case, at Apple's urging, that documents produced during the discovery period, including on the last day, are timely and can be relied on.  (*See, e.g.*, Dkt. 1611 at 941, Aug. 6, 2012 Trial Tr. ("Well, you can produce it on the last day of discovery. … The objection is overruled.").)

Samsung also made all of its witnesses available on an accelerated time frame, including presenting Mr. Blackard on the day that Apple noticed his deposition.  And Samsung made clear in its responses to Apple's interrogatories regarding the articles of manufacture that they prematurely called for information that would be the subject of expert opinions.  Apple will have an opportunity to take the depositions of Samsung's expert witnesses and question them about documents they may rely on in their reports.

*Fourth*, regarding Samsung's response to Apple's three RFPs, this is the first time you have asked to inspect anything other than what we provided to Apple's attorneys as an early courtesy at the Blackard and Sheppard depositions.  Despite having responded to your RFP on December 14, 2017, no one from your side has previously asked to arrange an inspection of any additional separated components.  Nevertheless, even though you have waited until after the fact discovery cutoff to do so, we will make them available for an inspection at a mutually agreeable time.

Samsung accordingly reserves all rights to rely on each and every document and thing produced or offered for inspection during the discovery period, which was allowed and ordered by the Court.

4

Mark Selwyn
January 3, 2018

Sincerely,

*/s/ Victoria F. Maroulis*

Victoria F. Maroulis