# EXHIBIT 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5   APPLE INC., a California        )
     corporation,                    )
 6                                   )
             Plaintiff,              )
 7                                   ) Case No.
        vs.                          ) 11-cv-01846-LHK
 8                                   )
     SAMSUNG ELECTRONICS CO., LTD.,  )
 9   a Korean business entity;       )
     SAMSUNG ELECTRONICS AMERICA,    )
10   INC., a New York corporation;   )
     SAMSUNG TELECOMMUNICATIONS      )
11   AMERICA, LLC, a Delaware        )
     limited liability company,      )
12                                   )
             Defendants.             )
13   _____
14
          HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY
15
16      The deposition of JULIE DAVIS, VOLUME III taken
17   before Maria S. Winn, CSR, RPR and CRR, pursuant to
18   the Federal Rules of Civil Procedure for the United
19   States District Courts pertaining to the taking of
20   depositions, at Quinn Emanuel, 191 North Wacker
21   Drive, Suite 2700, Chicago, Illinois, commencing
22   at 9:56 a.m. on February 15, 2018.
23
24
25   Pages 1 - 162
```

Page 1

```
 1   PRESENT:
 2   Appeared on behalf of the Plaintiff:
         MORRISON FOERSTER LLP
 3       MR. ERIK J. OLSON
         755 Page Mill Road
 4       Palo Alto, California  94304
 5       (650) 813-5825
 6       ejolson@mofo.com
 7           -  and  -
         WILMER HALE
 8       By MR. CHRISTOPHER R. LOONEY
         60 State Street
 9       Boston, Massachusetts 02109
10       (617) 526-6313
11       christopher.looney@wilmerhale.com
12
13   Appeared on behalf of the Defendants:
14       QUINN EMANUEL URQUHART & SULLIVAN, LLP
         By MR. WILLIAM C. PRICE and
15          MS. KARA BORDEN
16          MS. SCOTT B. KIDMAN
            MR. CARL G. ANDERSON
17       865 South Figueroa Street - 10th Floor
         Los Angeles, California  90017
18       (213) 443-3000
19       williamprice@quinnemanuel.com
20       karaborden@quinnemanuel.com
21       scottkidman@quinnemanuel.com
22       carlanderson@quinnemanuel.com
23
24   ALSO PRESENT:
25       MR. MICHAEL PRAGER, Legal Videographer.
```

```
 1                    I N D E X
 2   WITNESS
 3       Julie Davis
 4
 5   EXAMINED BY                                    PAGE
 6       Mr. Price                                     6
 7
 8
 9   DAVIS DEPOSITION EXHIBITS                      PAGE
10     Exhibit 1   Opening report of J. Davis        20
11
12     Exhibit 2   Reply report of J. Davis          52
13
14     Exhibit 3   Previously marked PX 174          65
15
16     Exhibit 4   Previously marked PX 35           72
17
18     Exhibit 5   Mr. Wagner's report              108
19
20     Exhibit 6   Schedules from Mr. Wagner's      128
21                 expert report
22
23     Exhibit 7   Amendment to opening             158
24                 expert report of J. Davis
25
```

Page 3

```
 1   was recommending that they include such              11:47:16
 2   containers.                                          11:47:19
 3   BY MR. PRICE:                                        11:47:20
 4       Q   Well, you quote, it says, "We would like     11:47:24
 5   to request our designers to take this into           11:47:27
 6   consideration."                                      11:47:31
 7           Correct?                                     11:47:32
 8       A   I say that.  I take that as a                11:47:33
 9   recommendation.                                      11:47:35
10       Q   I will go to my initial question then.       11:47:35
11           After you've seen this document, is          11:47:38
12   there a reason why you referred to Mr. Botello as    11:47:39
13   a Samsung designer?                                  11:47:41
14       A   I don't recall without reviewing the         11:47:50
15   rest of this document where I got the impression    11:47:51
16   that he might have been a Samsung designer.  It's    11:47:52
17   obvious that he was a Samsung employee who had       11:47:55
18   interaction with Samsung's customers and was         11:47:58
19   concerned about what the customers had to say.       11:48:02
20           Whether he was a designer or not is less     11:48:04
21   important than what he is relaying to the rest of    11:48:07
22   the team about what AT&T wants.                      11:48:10
23       Q   Ms. Davis, is it your opinion that           11:49:02
24   infringing designs caused Samsung's market share     11:49:08
25   to increase?                                         11:49:13
```

| | | |
|---|---|---|
| 1 | A    I am not expressing that opinion. | 11:49:14 |
| 2 | Q    Do you have enough information to give | 11:49:27 |
| 3 | the opinion that the infringing designs caused | 11:49:28 |
| 4 | Samsung's market share to increase? | 11:49:33 |
| 5 | A    I know that Samsung's market share did | 11:49:35 |
| 6 | increase.  It corresponds with the introduction | 11:49:38 |
| 7 | of the infringing products. | 11:49:41 |
| 8 | I do not have enough information to know | 11:49:45 |
| 9 | that it is related specifically to the | 11:49:47 |
| 10 | introduction of the patented designs. | 11:49:50 |
| 11 | Q    And why do you not have enough | 11:49:53 |
| 12 | information for that? | 11:49:55 |
| 13 | A    I am not aware of any surveys or other | 11:50:02 |
| 14 | evidence that explains why Samsung's market share | 11:50:05 |
| 15 | increased to the extent that it did, at a time | 11:50:08 |
| 16 | that overlaps with the introduction of the | 11:50:12 |
| 17 | infringing devices. | 11:50:16 |
| 18 | Q    Are you familiar with the fallacy, | 11:50:19 |
| 19 | Post hoc ergo propter hoc? | 11:50:21 |
| 20 | MR. OLSON:  Objection. | 11:50:27 |
| 21 | BY MR. PRICE: | 11:50:27 |
| 22 | Q    After this, therefore, because of this? | 11:50:27 |
| 23 | A    No. | 11:50:29 |
| 24 | Q    No?  That was in my statistics course... | 11:50:29 |
| 25 | Do you consider yourself an expert on | 11:50:38 |

| | | |
|---|---|---|
| 1 | statistical analysis? | 11:50:41 |
| 2 | A   I use statistics, but I don't consider | 11:50:42 |
| 3 | myself an expert on statistical analysis. | 11:50:45 |
| 4 | Q   Does your familiarity with statistics | 11:50:50 |
| 5 | allow you to agree with the proposition that a | 11:50:55 |
| 6 | correlation is not the same as causation? | 11:50:58 |
| 7 | A   Yes. | 11:51:01 |
| 8 | Q   If you wanted to see whether or not | 11:51:12 |
| 9 | Samsung's market share increase was a result of | 11:51:14 |
| 10 | the infringing designs, what sort of statistical | 11:51:16 |
| 11 | analysis would you have to do? | 11:51:21 |
| 12 | A   I don't know.  I haven't considered | 11:51:22 |
| 13 | that. | 11:51:23 |
| 14 | Q   Well, sitting here today, based upon | 11:51:29 |
| 15 | your expertise, do you have any ideas of the sort | 11:51:31 |
| 16 | of statistical analysis you'd have to do to | 11:51:34 |
| 17 | determine what caused Samsung's increase in | 11:51:39 |
| 18 | market share? | 11:51:40 |
| 19 | A   No. | 11:51:52 |
| 20 | Q   Well, do you agree that to determine | 11:51:52 |
| 21 | what caused an increase in market share, you'd | 11:51:55 |
| 22 | have to look at the factors that might contribute | 11:51:57 |
| 23 | to that increase? | 11:51:59 |
| 24 | MR. OLSON:  Objection to form. | 11:52:00 |
| 25 | A   That would be one thing to look at, yes. | 11:52:07 |

Page 76

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1   BY MR. PRICE:                                              11:52:08
2      Q    And in an analysis like that concerning            11:52:08
3   marketshare of Samsung's smartphones, what sort            11:52:11
4   of factors would you have to take into account?            11:52:13
5      A    I haven't done such an analysis, so I              11:52:21
6   don't know.                                                11:52:22
7      Q    In your opening report, you talked about           11:52:23
8   how you provide an economic and market related             11:52:48
9   analysis in connection with the articles of                11:52:49
10  manufacture.  Correct?                                     11:52:51
11     A    I do.                                              11:52:52
12     Q    And as an expert in a few of these                 11:52:59
13  Apple/Samsung cases, would it be fair to say that          11:53:02
14  you have familiarized yourself with the                    11:53:09
15  smartphone market in the years that are at issue           11:53:13
16  in this case?                                              11:53:16
17     A    I have familiarized myself with the                11:53:17
18  smartphone market, as it relates to the damages            11:53:21
19  period covered by this case.                               11:53:25
20          To be clear though, the front part of              11:53:27
21  your question had to do with being involved in a           11:53:30
22  number of Apple/Samsung cases, and I am not.  I'm          11:53:33
23  simply involved in this one.                               11:53:36
24     Q    Well, given your familiarity with the              11:53:49
25  smartphone market, are you in any position to              11:53:50
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | give any opinion as to the factors you'd have to | 11:53:52 |
| 2 | take into account to determine why Samsung's | 11:53:56 |
| 3 | market share rose at any particular time? | 11:54:01 |
| 4 |     A   I have not attempted such an analysis | 11:54:05 |
| 5 | and I would not be able to hypothesize, sitting | 11:54:07 |
| 6 | here right now, what all that might entail. | 11:54:14 |
| 7 |     Q   If someone were to conclude, just based | 11:54:15 |
| 8 | on the materials cited in your reports, that | 11:54:18 |
| 9 | infringement caused an increase in Samsung's | 11:54:20 |
| 10 | market share, that would be a mistake, right? | 11:54:24 |
| 11 |        MR. OLSON:  Objection to form. | 11:54:29 |
| 12 |     A   Not necessarily.  I'm not saying that | 11:54:31 |
| 13 | the infringement caused such an effect, but it is | 11:54:32 |
| 14 | corresponding with the period of time when that | 11:54:37 |
| 15 | infringement occurred. | 11:54:39 |
| 16 |        So if someone were to assume that, that | 11:54:41 |
| 17 | wouldn't necessarily be wrong. | 11:54:44 |
| 18 | BY MR. PRICE: | 11:54:45 |
| 19 |     Q   Well, what you're saying is if you did a | 11:54:52 |
| 20 | statistical analysis, you might be able to | 11:54:56 |
| 21 | determine one way or another, it could be that | 11:54:56 |
| 22 | the infringement caused a market share increase | 11:54:57 |
| 23 | or maybe it didn't.  Right? | 11:55:00 |
| 24 |        MR. OLSON:  Objection to form. | 11:55:01 |
| 25 |     A   I don't know if that would be possible | 11:55:02 |

Page 78

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | at this late date or not.  It might have been | 11:55:04 |
| 2 | more possible at a time concurrent with the | 11:55:06 |
| 3 | increase in the market share. | 11:55:08 |
| 4 | BY MR. PRICE: | 11:55:12 |
| 5 |     Q    It would be a mistake for someone to | 11:55:12 |
| 6 | conclude that your analysis establishes that | 11:55:20 |
| 7 | infringement caused an increase in Samsung's | 11:55:24 |
| 8 | market share, correct? | 11:55:27 |
| 9 |     A    I would agree that I have not attempted | 11:55:29 |
| 10 | to determine what caused the increase in market | 11:55:31 |
| 11 | share.  I am merely reporting that it occurred at | 11:55:34 |
| 12 | a time when Samsung was introducing infringing | 11:55:37 |
| 13 | phones. | 11:55:42 |
| 14 |     Q    Is there a reason why you did not do an | 11:55:49 |
| 15 | analysis to determine whether or not infringement | 11:55:51 |
| 16 | of Apple's patents caused an increase in | 11:55:53 |
| 17 | Samsung's market share? | 11:55:56 |
| 18 |     A    Yes. | 11:55:58 |
| 19 |     Q    What's that reason? | 11:55:59 |
| 20 |     A    I think there are two reasons.  One is | 11:56:01 |
| 21 | that would be new evidence that would not be | 11:56:02 |
| 22 | allowed under what I understand to be Judge Koh's | 11:56:04 |
| 23 | Groundhog Day rules. | 11:56:08 |
| 24 |         The second reason is I'm not sure that | 11:56:10 |
| 25 | kind of analysis can be done this many years | 11:56:12 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | after the fact, with the information that's been | 11:56:16 |
| 2 | produced in this case. | 11:56:17 |
| 3 | Q    Would you have to consult with a | 11:56:19 |
| 4 | statistician to determine whether or not that | 11:56:21 |
| 5 | kind of analysis could be done this many years | 11:56:24 |
| 6 | after the fact with the information that's been | 11:56:27 |
| 7 | produced in this case? | 11:56:28 |
| 8 | A    I don't know.  I haven't undertaken such | 11:56:33 |
| 9 | an analysis, so I do not know what it would | 11:56:35 |
| 10 | entail. | 11:56:45 |
| 11 | Q    Now, you state in paragraph 148 of your | 11:56:58 |
| 12 | reply report that the Samsung "devices | 11:57:00 |
| 13 | incorporating the patented designs earned a | 11:57:16 |
| 14 | substantially higher profit than those that did | 11:57:20 |
| 15 | not infringe an asserted design patent." | 11:57:22 |
| 16 | Do you see that? | 11:57:26 |
| 17 | A    I do. | 11:57:36 |
| 18 | Q    Does that correlation allow you to | 11:57:37 |
| 19 | conclude that the patented designs caused higher | 11:57:39 |
| 20 | profits? | 11:57:41 |
| 21 | A    No. | 11:57:41 |
| 22 | Q    Why not? | 11:57:42 |
| 23 | A    I don't think there is enough | 11:57:48 |
| 24 | information to know what gave rise to the | 11:57:49 |
| 25 | higher profits.  I am simply reporting | 11:57:51 |

Veritext Legal Solutions
866 299-5127