1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3             SAN JOSE DIVISION

4

5

APPLE INC., A CALIFORNIA          )  C-11-01846 LHK
6    CORPORATION,                     )
                                      )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,             )
                                      )  MAY 18, 2018
8         VS.                         )
                                      )  VOLUME 5
9    SAMSUNG ELECTRONICS CO., LTD.,   )
     A KOREAN BUSINESS ENTITY;        )  PAGES 1116 - 1375
10   SAMSUNG ELECTRONICS AMERICA,     )
     INC., A NEW YORK CORPORATION;    )
11   SAMSUNG TELECOMMUNICATIONS       )
     AMERICA, LLC, A DELAWARE         )
12   LIMITED LIABILITY COMPANY,       )
                                      )
13              DEFENDANTS.           )
     _____  )

14

15

16            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE LUCY H. KOH
17           UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22   OFFICIAL COURT REPORTERS:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
23                                IRENE RODRIGUEZ, CSR, CRR, CMR
                                  CERTIFICATE NUMBER 8074

24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
1      APPEARANCES

2      FOR PLAINTIFF          WILMER, CUTLER, PICKERING,
       APPLE:                 HALE AND DORR
3                             BY:  WILLIAM F. LEE
                                   JOSEPH J. MUELLER
4                                  SARAH R. FRAZIER
                              60 STATE STREET
5                             BOSTON, MASSACHUSETTS  02109

6                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
7                             PALO ALTO, CALIFORNIA  94304

8                             BY:  AMY K. WIGMORE
                              1875 PENNSYLVANIA AVENUE, N.W.
9                             WASHINGTON, D.C.  20006

10                            MORRISON & FOERSTER
                              BY:  NATHAN B. SABRI
11                            425 MARKET STREET, 32ND FLOOR
                              SAN FRANCISCO, CALIFORNIA  94105
12
                              BY:  ERIK OLSON
13                            755 PAGE MILL ROAD
                              PALO ALTO, CALIFORNIA  94304
14

15     ALSO PRESENT:          NOREEN KRALL
                              CYNDI WHEELER
16                            THOMAS LEE

17

18

19

20

21

22

23

24

25
```

1

2

APPEARANCES (CONTINUED)

3

4

FOR DEFENDANT            QUINN, EMANUEL, URQUHART & SULLIVAN
SAMSUNG:                 BY:   JOHN B. QUINN
                               WILLIAM C. PRICE
5                              SCOTT L. WATSON
                         865 SOUTH FIGUEROA STREET, 10TH FLOOR
6                        LOS ANGELES, CALIFORNIA  90017

7                        BY:  VICTORIA F. MAROULIS
                         555 TWIN DOLPHIN DRIVE
8                        SUITE 560
                         REDWOOD SHORES, CALIFORNIA  94065

9

10

ALSO PRESENT:            CHRIS GRANT
11                       KEN KOTARSKI

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           INDEX OF WITNESSES

2       DEFENDANTS'

3       **MICHAEL WAGNER**
              DIRECT EXAM BY MR. PRICE (RES.)          P. 1120
4             CROSS-EXAM BY MR. LEE                     P. 1130
              REDIRECT EXAM BY MR. PRICE               P. 1172
5             RECROSS-EXAM BY MR. LEE                   P. 1183

6

7

8

9       CLOSING ARGUMENT BY MR. MUELLER              P. 1241

10      CLOSING ARGUMENT MR. QUINN                   P. 1273

11      CLOSING ARGUMENT BY MR. PRICE                P. 1298

12      REBUTTAL ARGUMENT BY MR. LEE                 P. 1313

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    MAY 18, 2018 |
| 09:05:09 | 2 | P R O C E E D I N G S |
| 09:05:09 | 3 | (JURY IN AT 9:05 A.M.) |
| 09:05:34 | 4 | THE COURT:  OKAY.  GOOD MORNING.  WELCOME BACK. |
| 09:05:38 | 5 | PLEASE TAKE A SEAT. |
| 09:05:39 | 6 | MR. WAGNER, YOU'RE STILL UNDER OATH. |
| 09:05:41 | 7 | THE WITNESS:  THANK YOU, YOUR HONOR. |
| 09:05:42 | 8 | **(DEFENDANTS' WITNESS, MICHAEL WAGNER, WAS PREVIOUSLY** |
| 09:05:45 | 9 | **SWORN.)** |
| 09:05:45 | 10 | THE COURT:  OKAY.  PLEASE GO AHEAD, MR. PRICE. |
| 09:05:48 | 11 | MR. PRICE:  GOOD MORNING. |
| 09:05:49 | 12 | THE COURT:  TIME IS 9:05.  GO AHEAD, PLEASE. |
| 09:05:52 | 13 | **DIRECT EXAMINATION (RESUMED)** |
| 09:05:53 | 14 | BY MR. PRICE: |
| 09:05:54 | 15 | Q.   MR. WAGNER, WE WENT THROUGH A BUNCH OF CHARTS AT THE END |
| 09:05:57 | 16 | OF THE DAY YESTERDAY, A LONG, WARM DAY.  SO LET ME SEE IF I CAN |
| 09:06:04 | 17 | GET YOU TO SAY SOME THINGS A LITTLE SUCCINCTLY HERE. |
| 09:06:08 | 18 | SO YOU TOLD THE JURY THAT THE FIRST STEP IN CALCULATING |
| 09:06:11 | 19 | THE PROFITS ON WHAT SAMSUNG CLAIMS IS THE ARTICLE OF |
| 09:06:13 | 20 | MANUFACTURE IS TO GET THE TOTAL PROFITS ON ALL THE INFRINGING |
| 09:06:17 | 21 | PRODUCTS; CORRECT? |
| 09:06:18 | 22 | A.   THAT IS CORRECT. |
| 09:06:19 | 23 | Q.   AND THAT'S DX 781.003.  THIS WILL BE IN EVIDENCE. |
| 09:06:25 | 24 | AND THIS IS A CHART THAT SHOWS, BY PHONE, WHAT YOU FOUND |
| 09:06:29 | 25 | TO BE THE TOTAL PROFITS FOR THE PHONE; CORRECT? |

09:06:33  1    A.   CORRECT.

09:06:33  2    Q.   AND THAT'S ABOUT $371 MILLION; RIGHT?

09:06:37  3    A.   THAT'S THE NUMBER.

09:06:38  4    Q.   AND THEN TO FIND OUT WHAT THE PRODUCTS WERE ON WHAT

09:06:43  5    SAMSUNG CLAIMS IS THE ARTICLE OF MANUFACTURE, SOMETHING LESS

09:06:45  6    THAN THE PHONE, YOU LOOKED AT THE COST OF COMPONENTS OF THE

09:06:49  7    PHONE; CORRECT?

09:06:50  8    A.   YES.

09:06:50  9    Q.   AND THAT'S THE COST METHOD; RIGHT?

09:06:53  10   A.   IT IS.

09:06:53  11   Q.   THAT'S THE METHOD THAT MS. DAVIS SAID SHE AGREED WITH;

09:06:57  12   RIGHT?

09:06:57  13   A.   WELL, THE METHOD SHE AGREES WITH SHE DOES NOT AGREE WITH

09:07:01  14   THE FACTS THAT I USED.

09:07:02  15   Q.   AND SHE DOESN'T THINK YOU APPLIED THE METHOD CORRECTLY;

09:07:05  16   RIGHT?

09:07:05  17   A.   I DON'T THINK SHE HAS ANY CRITICISM OF MY APPLICATION.

09:07:08  18   Q.   WE'LL FIND OUT.  I THINK SHE MAY HAVE.

09:07:11  19        BUT THAT METHOD THEN, IF WE LOOK AT SDX 1709, IS YOU TAKE

09:07:15  20   THE COST OF THE COMPONENT DIVIDED BY THE ENTIRE PHONE COST,

09:07:24  21   MULTIPLY THAT TIMES YOUR 371 MILLION; CORRECT?

09:07:27  22   A.   WELL, NOT EXACTLY.  BUT YES.

09:07:30  23   Q.   OKAY.  AND WHAT DO YOU MEAN BY "NOT EXACTLY"?

09:07:33  24   A.   WELL, YOU LOOK AT EACH PRODUCT INDIVIDUALLY.

09:07:35  25   Q.   RIGHT.

09:07:35    1      A.   AND THE PART OF THAT THAT MAKES UP THE 371 MILLION.

09:07:39    2      Q.   I SEE.  SO YOU DO IT PHONE BY PHONE?

09:07:46    3      A.   PHONE BY PHONE, YES.

09:07:48    4      Q.   AND YOU START BY LOOKING AT THIS THING CALLED A DISPLAY

09:07:51    5      ASSEMBLY, AND IF WE CAN SHOW SDX 1712, AND LET'S EXPLAIN WHAT

09:07:55    6      THIS IS AGAIN.

09:07:56    7           SO THIS ASSEMBLY IS PART OF THESE PHONES; CORRECT?

09:08:00    8      A.   IT IS PROBABLY THE LARGEST COMPONENT.

09:08:02    9      Q.   OKAY.  AND THAT'S PURCHASED BY SAMSUNG FROM ANOTHER

09:08:06   10      VENDOR; CORRECT?

09:08:07   11      A.   IN A COMPLETED FORM, YES.

09:08:09   12      Q.   AND WHAT'S THE EVIDENCE OF WHAT THAT COMPONENT COSTS?

09:08:12   13      A.   IT'S IN THE BILL OF MATERIALS.

09:08:13   14      Q.   AND BY THE WAY, DID YOU CHECK TO SEE IF THE BILL OF

09:08:18   15      MATERIALS MATCHED UP WITH THE PROFIT AND LOSS STATEMENT?

09:08:21   16      A.   I DID.

09:08:21   17      Q.   IS THERE A CORRECT MATCH?

09:08:23   18      A.   NO, BECAUSE THERE'S TIMING PROBLEMS AND OTHER PROBLEMS.

09:08:25   19      THEY WILL NOT MATCH ON A MONTHLY BASIS.

09:08:27   20      Q.   SO WOULD YOU EXPECT THEM TO MATCH?

09:08:29   21      A.   I WOULD EXPECT THEM NOT TO MATCH.

09:08:31   22      Q.   HOW ABOUT -- HAVE YOU LOOKED AT APPLE'S RECORDS TO SEE IF

09:08:34   23      THEIR BILL OF MATERIALS MATCHES UP WITH THEIR PROFIT AND LOSS?

09:08:38   24      A.   NO.

09:08:38   25      Q.   SO THIS DISPLAY ASSEMBLY COST -- AND THIS DISPLAY ASSEMBLY

09:08:44  1    INCLUDES EVERYTHING WE SEE HERE AT THE BOTTOM; RIGHT?  THE

09:08:47  2    DISPLAY SCREEN, TWO TYPES OF CIRCUIT BOARDS, AND THIS WINDOW

09:08:52  3    GLASS; RIGHT?

09:08:52  4    A.   YES.

09:08:53  5    Q.   NOW, FOR THE ARTICLE OF MANUFACTURE FOR THE D'677, SAMSUNG

09:08:56  6    CLAIMS IT'S THE WINDOW GLASS COSTS; RIGHT?

09:08:58  7    A.   IT DOES.

09:09:00  8    Q.   AND FOR THE '305, IT CONTENDS THAT IT'S THE DISPLAY

09:09:06  9    SCREEN; CORRECT?

09:09:07  10   A.   THAT IS CORRECT.

09:09:08  11   Q.   AND THEN FOR THE D'087, IT'S THE WINDOW GLASS AND THE

09:09:12  12   BEZEL; RIGHT?

09:09:13  13   A.   THAT'S MY UNDERSTANDING.

09:09:14  14   Q.   OKAY.  SO IF YOU ASSUME THAT THIS BIG ASSEMBLY -- NOT BIG

09:09:21  15   IN TERMS OF SIZE -- BUT THAT THIS ASSEMBLY WHICH INCLUDES ALL

09:09:26  16   THIS, IF THAT WERE THE ARTICLE OF MANUFACTURE, HAVE YOU

09:09:29  17   PROVIDED NUMBERS FROM WHICH ONE COULD DO A CALCULATION FOR

09:09:32  18   THAT?

09:09:32  19   A.   THEY COULD DO IT.  IT WOULD BE DIFFICULT.  BUT IT'S IN MY

09:09:36  20   SCHEDULES.

09:09:36  21   Q.   AND IF WE COULD LOOK AT EXHIBIT 4536.02, AND SO THIS IS

09:09:49  22   THE SCHEDULE THAT SHOWS THE DISPLAY ASSEMBLY COST PERCENTAGE,

09:09:56  23   OVERALL COSTS FOR THE VARIOUS PHONES; CORRECT?

09:09:59  24   A.   YES, IT DOES.

09:09:59  25   Q.   AND AGAIN, THESE TWO NUMBERS ARE NOT ADDED TOGETHER;

09:10:03  1    RIGHT?

09:10:03  2    A.   CORRECT.  THEY'RE FOR DIFFERENT -- THEY'RE FOR DIFFERENT

09:10:06  3    PATENTS, DESIGN PATENTS.

09:10:08  4         BUT YOU COULD USE THOSE NUMBERS AND APPLY IT TO MY COST

09:10:13  5    RATIOS TO THE TOTAL REVENUES AND ACTUALLY CALCULATE WHAT THE

09:10:18  6    AOM, PROFIT PER UNIT FOR USING THESE FIGURES RATHER THAN USING

09:10:22  7    THE FIGURES THAT I USED.

09:10:23  8    Q.   AND IT'S AS LOW AS 12 PERCENT AND AS HIGH AS 36.8?

09:10:27  9    A.   CORRECT.

09:10:28  10   Q.   SO, FOR EXAMPLE, IF YOU USED THE ABSOLUTE HIGHEST AND

09:10:32  11   ASSUMED EVERY PHONE WAS 37 PERCENT, ASSUME EVERY ONE IS, THEN

09:10:37  12   THE -- THE PROFIT ON THAT DISPLAY ASSEMBLY OVERALL PHONES WOULD

09:10:41  13   BE ABOUT WHAT?

09:10:42  14   A.   I DON'T KNOW THAT.  BUT I DID USE THESE NUMBERS LAST NIGHT

09:10:46  15   MYSELF TO FIGURE IT OUT AND THE NUMBER, INSTEAD OF BEING 28

09:10:49  16   MILLION, WOULD BE 118 MILLION.

09:10:52  17   Q.   BUT YOU DIDN'T STOP AT THE DISASSEMBLY BECAUSE YOU

09:10:56  18   UNDERSTAND THAT YOU WERE ASKED TO ASSUME THE ARTICLES OF

09:10:58  19   MANUFACTURE WERE WHAT SAMSUNG CLAIMS; RIGHT?

09:11:00  20   A.   YES.

09:11:01  21   Q.   SO IF WE COULD GO BACK TO SDX 1712, AND THEN TO -- SO TO

09:11:14  22   CALCULATE THE PROFITS ON JUST THE WINDOW GLASS, YOU WANTED TO

09:11:17  23   TAKE A PERCENTAGE OF THE DISPLAY ASSEMBLY COST; RIGHT?

09:11:21  24   A.   CORRECT.

09:11:22  25   Q.   AND HOW DID YOU DO THAT?

09:11:23  1      A.   AGAIN, I WENT TO THE STA REPLACEMENT COST INFORMATION AND

09:11:28  2      THEY GAVE ME DATA ON THE PURCHASE OF 258,000 PIECES OF WINDOW

09:11:34  3      GLASS, AND I CALCULATED THE AVERAGE COST.

09:11:37  4      Q.   AND AFTER CALCULATING THAT AVERAGE COST, HOW DID YOU THEN

09:11:42  5      COME UP WITH A PERCENTAGE TO USE, YOU KNOW, FOR THE PROFIT OF

09:11:46  6      THE PHONE?

09:11:46  7      A.   WELL, I DETERMINED THAT WAS ABOUT 2 PERCENT ON AVERAGE OF

09:11:50  8      THE COST OF THE DISPLAY ASSEMBLY, SO NOW I KNOW THAT ABOUT,

09:11:54  9      SAY, IF THE DISPLAY WAS 29 PERCENT, 2 PERCENT OF THAT IS WINDOW

09:11:59  10     GLASS AND 27 PERCENT ARE THE OTHER THREE COMPONENTS.

09:12:02  11     Q.   WHAT WAS THE PRICE RANGE, BY THE WAY, THE WINDOW GLASS?

09:12:07  12     A.   IT WAS $3 TO $5.  IT'S THE SAME AS WHAT I HEARD

09:12:10  13     MR. SHEPPARD TELL THE JURY.

09:12:14  14     Q.   AND THEN IF YOU WANTED TO CALCULATE THE PERCENTAGE FOR THE

09:12:18  15     DISPLAY SCREEN, WHAT DID YOU USE?

09:12:22  16     A.   WELL, I DIDN'T HAVE THAT INFORMATION, SO I HAD TO INCLUDE

09:12:24  17     THE TWO P.C. B'S AS WELL, AND THAT'S THE NUMBER I USED.

09:12:28  18     Q.   SO THE NUMBER YOU USED AS A PERCENTAGE OF COSTS OF OVERALL

09:12:32  19     COSTS FOR THE DISPLAY SCREEN, THAT ACTUALLY WAS BROADER AND

09:12:37  20     INCLUDED THESE CIRCUIT BOARDS; CORRECT?

09:12:39  21     A.   IT DOES.

09:12:43  22     Q.   DO YOU HAVE ANY UNDERSTANDING OF WHAT THESE CIRCUIT BOARDS

09:12:46  23     DO?

09:12:47  24     A.   THEY'RE THE ONES THAT HAVE THE LOGIC THAT MAKE THE DISPLAY

09:12:51  25     SCREEN WORK.  IT'S NOT THE SCREEN ITSELF.  IT'S ALL THE

09:12:53  1    ELECTRONICS AND LOGIC THAT MAKES THAT SCREEN WORK.

09:12:56  2    Q.   AND SO THEN WE SHOWED THE JURY YESTERDAY DX 4537, AND I

09:13:05  3    THINK IT'S PAGE -- WHAT PAGE WAS IT?

09:13:24  4         PAGE 2.

09:13:29  5         AND USING THOSE CALCULATIONS, YOU KNOW, STARTING WITH THE

09:13:32  6    ENTIRE DISPLAY ASSEMBLY AND THEN DOING CALCULATIONS ON THE

09:13:36  7    BEZEL, YOU END UPCOMING UP WITH A NUMBER OF PROFITS ON THE

09:13:40  8    ARTICLES OF MANUFACTURE OF APPROXIMATELY $28 MILLION; CORRECT?

09:13:44  9    A.   THAT IS CORRECT.

09:13:45  10   Q.   AND IF WE COULD PUT UP DX 1714.

09:13:58  11        AND SO WHEN YOU DO THOSE CALCULATIONS, STARTING WITH THE

09:14:02  12   TOTAL PROFIT FOR THE ENTIRE PHONE, YOU END UP GOING FROM 371

09:14:06  13   MILLION TO 28 MILLION; CORRECT?

09:14:07  14   A.   YOU DO.

09:14:08  15   Q.   AND IS THAT -- WHY IS IT THAT YOU CONCLUDED THAT THE

09:14:26  16   NUMBER FOR THE AOM PROFIT, YOU KNOW, FOR THESE COMPONENTS IS

09:14:30  17   DIFFERENT THAN THE ENTIRE PHONE?  WHAT'S THE -- WHY WOULD YOU

09:14:34  18   CONCLUDE THAT?

09:14:35  19   A.   WELL, AS I TOLD THE JURY YESTERDAY, THERE'S 246 DIFFERENT

09:14:40  20   COMPONENTS IN THESE PHONES.  ONLY THREE OF THE COMPONENTS, AT

09:14:43  21   MOST, ARE ALLEGED TO INFRINGE THE DESIGN PATENTS ACCORDING TO

09:14:46  22   THE DESIGN EXPERT FOR YOUR CLIENT.

09:14:49  23        SO THAT'S ONLY 3 OUT OF 246.  SO IT'S ONLY GOING TO BE A

09:14:53  24   FRACTION OF THE $371 MILLION.

09:14:56  25        BUT THESE ARE SOME OF THE MORE EXPENSIVE COMPONENT PIECES,

09:15:00  1    SO THEY ARE GOING TO CONTRIBUTE MORE TO THE PROFIT, AND THAT'S

09:15:02  2    WHY IT COMES UP TO 28 MILLION.

09:15:04  3    Q.   NOW, IN YOUR REPORT, YOU CALCULATED THE -- AND THIS IS

09:15:11  4    YOUR JANUARY 2018 REPORT -- YOU CALCULATED THE -- SAMSUNG

09:15:16  5    TELECOMMUNICATIONS DIVISION PROFIT AND THEIR PROFIT RATIO;

09:15:19  6    CORRECT?

09:15:20  7    A.   I DID.

09:15:20  8    Q.   AND DO YOU RECALL WHAT YOU FOUND WERE THE PROFIT MARGIN

09:15:25  9    RATIO FOR SAMSUNG TELECOMMUNICATION'S DIVISION PROFITS IN 2010

09:15:29  10   AND 2011?

09:15:30  11   A.   YES.  I BELIEVE IT WAS ABOUT 10.9 PERCENT AND ABOUT

09:15:35  12   15 PERCENT.

09:15:35  13   Q.   AND THAT CALCULATION OF THE TELECOMMUNICATIONS DIVISION

09:15:40  14   PROFIT, IS THAT BASED UPON AUDITED FINANCIAL NUMBERS?

09:15:43  15   A.   YES.

09:15:43  16   Q.   AUDITED BY PRICEWATERHOUSE?

09:15:45  17   A.   PRICEWATERHOUSECOOPERS.

09:15:47  18   Q.   YES.  AND THE PART OF SAMSUNG THAT SELLS, IS THAT IN THE

09:15:59  19   SAMSUNG TELECOMMUNICATIONS DIVISION?

09:16:01  20   A.   IT IS.

09:16:02  21   Q.   MR. WAGNER, I'D LIKE YOU TO LOOK, IF YOU WOULD, AT YOUR

09:16:06  22   JANUARY 2018 REPORT, FIGURE 7, AT PAGE 27.

09:16:30  23        HAVE YOU FOUND THAT?

09:16:31  24   A.   I HAVE.

09:16:32  25   Q.   SO I HAVE SOME QUESTIONS FOR YOU.

09:16:34  1        IS THE GALAXY S I 9100 A NON-INFRINGING ALTERNATIVE TO THE

09:16:43  2   D'305 PATENT WITH THE ICONS AND THE D'087 PATENT?

09:16:48  3   A.   YES.

09:16:48  4   Q.   IS THE GALAXY S II AT&T A NON-INFRINGING ALTERNATIVE TO

09:16:52  5   THE D'305 PATENT, THE ICONS, AND THE D 087 PATENT, THE BEZEL?

09:16:58  6   A.   IT IS.

09:16:59  7   Q.   IS THE GALAXY S II EPIC 4G TOUCH A NON-INFRINGING

09:17:06  8   ALTERNATIVE TO THE D'305 PATENT AND THE D'087 BEZEL PATENT?

09:17:10  9   A.   YES.

09:17:11  10  Q.   IS THE GALAXY S II SKYROCKET A NON-INFRINGING ALTERNATIVE

09:17:15  11  TO THE D'305 PATENT AND THE D'087 PATENT?

09:17:20  12  A.   IT IS.

09:17:20  13  Q.   IS THE GEM A NON-INFRINGING ALTERNATIVE TO THE D'667

09:17:26  14  PATENT, THE FRONT SCREEN, AND THE D'087 PATENT?

09:17:30  15  A.   WHICH MODEL?

09:17:32  16  Q.   THE GEM, NUMBER 14.

09:17:39  17  A.   YES.

09:17:40  18  Q.   IS THE INDULGE A NON-INFRINGING ALTERNATIVE TO THE D'677

09:17:48  19  PATENT AND THE D'087 PATENT?

09:17:51  20  A.   IT LOOKS -- TO ME, IT'S A NON-INFRINGING ALTERNATIVE TO

09:18:01  21  THE D'087 PATENT.

09:18:05  22  Q.   LOOK UNDER THE COLUMN FOR --

09:18:07  23  A.   I'M SORRY, AND THE D'677, YOU'RE RIGHT.

09:18:10  24  Q.   NOW, WITH RESPECT TO THE GEM AND THE INDULGE, DO THEY USE

09:18:19  25  SOMETHING CALLED TFT, LCD SCREENS?

09:18:24   1      A.    YES.

09:18:25   2      Q.    AND DO THOSE SCREENS USE WINDOW GLASS AT ALL?

09:18:31   3      A.    NO.  THEY USE A TOUCH PANEL.

09:18:33   4      Q.    SO THESE TWO NON-INFRINGING ALTERNATIVES, THE GEM AND THE

09:18:38   5      INDULGE, DON'T HAVE GLASS SCREENS AT ALL; CORRECT?

09:18:41   6      A.    CORRECT.

09:18:42   7      Q.    SO, MR. WAGNER, GOING TO YOUR $28 MILLION DAMAGES NUMBER,

09:19:11   8      DOES THAT DAMAGES NUMBER INCLUDE EVERY DISPLAY SCREEN IN THIS

09:19:16   9      CASE THAT WAS ON AN INFRINGING PRODUCT?

09:19:22  10      A.    IT DOES.

09:19:22  11      Q.    AND EVERY GLASS WINDOW?

09:19:24  12      A.    YES.

09:19:25  13      Q.    AND EVERY BEZEL?

09:19:26  14      A.    IT DOES.

09:19:28  15            MR. PRICE:  JUST ONE SECOND, YOUR HONOR.

09:19:30  16         (PAUSE IN PROCEEDINGS.)

09:19:32  17            MR. PRICE:  NOTHING ELSE, YOUR HONOR.  THANK YOU.

09:19:35  18            THE COURT:  ALL RIGHT.  TIME IS NOW 9:19.

09:19:46  19            MR. LEE:  JUST A MINUTE TO SET UP, YOUR HONOR?

09:19:49  20            THE COURT:  THAT'S FINE.

09:19:51  21         (PAUSE IN PROCEEDINGS.)

09:20:04  22            MR. LEE:  ALL SET, YOUR HONOR.

09:20:06  23            THE COURT:  ALL RIGHT.  TIME IS 9:19 -- 9:20.  GO

09:20:10  24      AHEAD, PLEASE.

09:20:11  25      ///

**CROSS-EXAMINATION**

09:20:11  1

09:20:11  2    BY MR. LEE:

09:20:12  3    Q.   GOOD MORNING, MR. WAGNER.

09:20:13  4    A.   GOOD MORNING, MR. LEE.

09:20:15  5    Q.   YOU SHOULD HAVE BEFORE YOU A BINDER OF EXHIBITS, PLUS YOUR

09:20:18  6    VARIOUS EXPERT REPORTS.  DO YOU SEE THEM?

09:20:21  7    A.   THEY ARE HERE.  THANK YOU.

09:20:22  8    Q.   NOW, MR. WAGNER, I WANT TO ASK YOU ABOUT SOMETHING YOU

09:20:24  9    JUST SAID TO THE JURY, AND I WROTE IT DOWN OFF THE LIVENOTE.

09:20:27  10   YOU SAID THAT ONLY THREE OF THE COMPONENTS WERE ALLEGED TO

09:20:32  11   INFRINGE IN THE EARLIER CASE.  THAT'S NOT ACCURATE, IS IT?

09:20:38  12   A.   I'M TALKING ABOUT THIS CASE.  I'M SORRY.  DID I SAY THE

09:20:41  13   PREVIOUS CASE?

09:20:41  14   Q.   YOU SAID ONLY THREE OF THE COMPONENTS WERE ALLEGED TO

09:20:44  15   INFRINGE.

09:20:45  16        YOU UNDERSTAND THAT INFRINGEMENT WAS DECIDED; CORRECT?

09:20:47  17   A.   YOU'RE ABSOLUTELY CORRECT, MR. LEE.  I MISSPOKE.  THEY

09:20:50  18   HAVE BEEN FOUND TO INFRINGE.  THEY'RE ALLEGED AND FOUND TO

09:20:53  19   INFRINGE.

09:20:54  20   Q.   AND WHAT WAS FOUND TO -- WHAT WAS FOUND TO HAVE INFRINGED

09:20:58  21   THE DESIGN PATENTS IN THE FIRST CASE WERE THE PHONES; CORRECT?

09:21:03  22   A.   YES.

09:21:03  23   Q.   NOT GLASS SCREENS; CORRECT?

09:21:06  24   A.   THAT IS CORRECT.

09:21:07  25   Q.   NOT BEZELS; CORRECT?

09:21:09  1    A.   THAT IS CORRECT.

09:21:09  2    Q.   NOT DISPLAY SCREENS; CORRECT?

09:21:11  3    A.   THAT IS CORRECT.

09:21:12  4    Q.   IT WAS THE PHONES THAT WERE FOUND TO INFRINGE; CORRECT?

09:21:17  5    A.   YES, I AGREE.

09:21:18  6    Q.   NOW, YOU ALSO AGREE THAT THE EARLIER JURY FOUND THAT EACH

09:21:23  7    OF THE FIVE PATENTS AT ISSUE WERE VALID; CORRECT?

09:21:27  8    A.   WERE WHAT?  I'M SORRY.

09:21:29  9    Q.   EACH OF THE FIVE PATENTS WERE FOUND TO BE VALID; CORRECT?

09:21:32  10   A.   THEY WERE.

09:21:33  11   Q.   AND YOU UNDERSTAND THAT EACH OF THE FIVE PATENTS WERE

09:21:36  12   DEVELOPED AS PART OF THE DEVELOPMENT OF THE IPHONE; CORRECT?

09:21:40  13   A.   THAT'S MY UNDERSTANDING.

09:21:41  14   Q.   AND YOU AGREE THAT THE IPHONE REVOLUTIONIZED THE

09:21:45  15   SMARTPHONE MARKET; CORRECT?

09:21:46  16   A.   I DO.

09:21:47  17   Q.   YOU AGREE THAT THE IPHONE WAS A REVOLUTION; CORRECT?

09:21:50  18   A.   YES, I DO.

09:21:51  19   Q.   LET ME TURN YOU IN TAB 8 IN THE NOTEBOOK, IF YOU WOULD, TO

09:21:58  20   A CHART WHICH IS IN THE JURORS' NOTEBOOKS AS PRELIMINARY

09:22:03  21   INSTRUCTION NUMBER 21, AND WE'LL PUT IT ON THE SCREEN.

09:22:10  22        AND WE'LL PUT IT ON THE SCREEN AND IT'S IN THE NOTEBOOK,

09:22:15  23   WHICHEVER IS EASIER FOR YOU TO SEE.  OKAY, MR. WAGNER?

09:22:18  24   A.   THANK YOU.

09:22:19  25   Q.   OKAY.  YOU RECOGNIZE THIS CHART FROM PRELIMINARY JURY

09:22:24   1      INSTRUCTION NUMBER 21?

09:22:25   2      A.   I HAVEN'T LOOKED AT THE PRELIMINARY JURY INSTRUCTIONS, NO.

09:22:29   3      Q.   OKAY.  DOES THIS CHART ACCURATELY REFLECT THE PRODUCTS

09:22:33   4      THAT WERE FOUND TO INFRINGE THE FIVE PATENTS IN THE FIRST CASE?

09:22:37   5      A.   IT DOES.

09:22:38   6      Q.   IN MOST CASES, THE PRODUCTS INFRINGE MORE THAN ONE PATENT;

09:22:43   7      CORRECT?

09:22:43   8      A.   MOST OF THEM DO.  SOME OF THEM DO NOT.

09:22:48   9      Q.   YOU AGREE THAT THERE WERE MILLIONS AND MILLIONS OF ACTS OF

09:22:52   10     INFRINGEMENT; CORRECT?

09:22:53   11     A.   YES.

09:22:54   12     Q.   MORE THAN 15 MILLION ACTS OF INFRINGEMENT; CORRECT?

09:22:57   13     A.   I DON'T KNOW THE NUMBER IN THE ORIGINAL CASE.

09:23:05   14          BUT IN THIS CASE, THAT NUMBER IS OVERSTATED.  IT'S

09:23:08   15     11.2 MILLION.

09:23:09   16     Q.   IN THIS CASE, YOU HAVE THE NUMBER AT 11.2 MILLION.  THERE

09:23:13   17     IS A DOCUMENT CALLED JX 1500; CORRECT?

09:23:16   18     A.   I BELIEVE THERE IS.

09:23:17   19     Q.   AND IT'S A DOCUMENT YOU RELIED UPON; CORRECT?

09:23:19   20     A.   I DON'T -- UNLESS YOU TELL ME WHAT IT IS, I DON'T KNOW

09:23:22   21     WHETHER I DID OR NOT.

09:23:23   22     Q.   OKAY.  I'M GOING TO COME TO IT IN A LITTLE BIT.  LET ME

09:23:26   23     JUST COVER A FEW THINGS FIRST.

09:23:28   24          YOU WERE HERE WHEN DR. BALAKRISHNAN TESTIFIED; CORRECT?

09:23:31   25     A.   I WAS.

09:23:32   1    Q.   AND YOU WERE HERE WHEN DR. SINGH TESTIFIED; CORRECT?

09:23:36   2    A.   YES.

09:23:36   3    Q.   THEY BOTH TESTIFIED ABOUT THE UTILITY PATENTS; CORRECT?

09:23:39   4    A.   THEY DID.

09:23:40   5    Q.   MS. DAVIS TESTIFIED ABOUT A REASONABLE ROYALTY FOR THE

09:23:43   6    UTILITY PATENTS; CORRECT?

09:23:45   7    A.   SHE DID.

09:23:45   8    Q.   IN YOUR REPORT, YOU HAVE AN OPINION ON THE REASONABLE

09:23:50   9    ROYALTY FOR THE UTILITY PATENTS; CORRECT?

09:23:53  10         MR. PRICE:  I OBJECT.  THIS IS BEYOND THE SCOPE.  NO

09:23:55  11    OPINION HAS BEEN OFFERED TO THE JURY FROM MR. WAGNER ON THE

09:23:58  12    UTILITY PATENT ROYALTIES.

09:23:59  13         MR. LEE:  YOUR HONOR, THAT'S GOING TO BE PRECISELY MY

09:24:01  14    POINT.  HE HAD IT IN HIS REPORT, AND HE DIDN'T OFFER IT.

09:24:04  15         MR. PRICE:  THAT'S IRRELEVANT.  THAT'S --

09:24:08  16         THE COURT:  OVERRULED.  GO AHEAD.

09:24:09  17    YOU MAY ANSWER.

09:24:10  18    BY MR. LEE:

09:24:11  19    Q.   MR. WAGNER, IN THE EXTENSIVE REPORTS YOU PREPARED UNDER

09:24:14  20    THE COURT'S PROTOCOLS, YOU HAD AN OPINION FOR THE REASONABLE

09:24:20  21    ROYALTY FOR BOTH THE '381 AND THE '163 PATENTS; CORRECT?

09:24:24  22    A.   I DID.

09:24:24  23    Q.   IT WAS BASED UPON DESIGN AROUNDS?

09:24:27  24    A.   THAT WAS THE BASIS.

09:24:29  25    Q.   AND YOU DID NOT OFFER THAT OPINION; CORRECT?

09:24:31   1      A.   I DID NOT.

09:24:32   2      Q.   YOU HAVE SAID NOTHING DURING THE COURSE OF YOUR TESTIMONY

09:24:34   3      YESTERDAY AFTERNOON AND TODAY TO DISPUTE MS. DAVIS'S ANALYSIS

09:24:39   4      OF THE REASONABLE ROYALTY FOR THE '381 PATENT; CORRECT?

09:24:44   5      A.   I DID NOT.

09:24:45   6      Q.   OR THE '163 PATENT; CORRECT?

09:24:49   7      A.   SHE DIDN'T HAVE ANY OPINION ON THE '163 PATENT.

09:24:51   8      Q.   BECAUSE ALL OF THE '163 PATENT INFRINGING UNITS ARE ALSO

09:24:55   9      COVERED BY INFRINGEMENT OF A DESIGN PATENT; CORRECT?

09:24:58   10     A.   YES, THAT'S THE REASON.

09:24:59   11     Q.   OKAY.  AND YOU AGREE THAT THAT'S THE CORRECT ANALYSIS;

09:25:03   12     CORRECT?

09:25:03   13     A.   I WOULD DO THAT AS A DAMAGE EXPERT AS WELL.

09:25:06   14     Q.   CORRECT.  SO THERE WAS NO DISPUTE ON YOUR PART ABOUT

09:25:09   15     MS. DAVIS'S ANALYSIS OR THE BASIS OF THAT ANALYSIS; CORRECT?

09:25:13   16     A.   THAT I PROVIDED THIS JURY, THAT IS CORRECT.

09:25:16   17     Q.   AND PART OF THE BASIS FOR HER ANALYSIS WAS HER REVIEW OF

09:25:19   18     THE COMPETITIVE CONDITIONS IN THE MARKETPLACE; CORRECT?  YOU

09:25:22   19     HEARD THAT?

09:25:23   20     A.   YES.

09:25:23   21     Q.   PART OF HER ANALYSIS WAS HER REVIEW OF WHAT --

09:25:27   22          MR. PRICE:  YOUR HONOR, I OBJECT.  THIS IS BEYOND THE

09:25:30   23     SCOPE.  THERE'S BEEN NO OPINION BY MR. WAGNER ON THE UTILITY

09:25:33   24     PATENT ROYALTIES.

09:25:33   25          THE COURT:  OVERRULED.

09:25:35  1        BY MR. LEE:

09:25:35  2        Q.   PART OF HER ANALYSIS WAS BASED UPON HER REVIEW OF THE

09:25:39  3        MANNER IN WHICH SAMSUNG DEVELOPED ITS INFRINGING PRODUCTS;

09:25:42  4        CORRECT?

09:25:43  5        A.   THAT'S MY UNDERSTANDING.

09:25:44  6        Q.   AND YOU'RE NOT HERE TO DISPUTE ANY OF THAT; CORRECT?

09:25:47  7        A.   THAT IS CORRECT.

09:25:47  8        Q.   NOW, YOU KNOW MS. DAVIS WELL; CORRECT?

09:25:51  9        A.   I KNOW HER WELL.

09:25:52  10       Q.   YOU KNOW HER FROM WORKING ON THIS CASE AND IN OTHER CASES;

09:25:56  11       CORRECT?

09:25:56  12       A.   YES, I'VE WORKED BOTH WITH MS. DAVIS AS CO-EXPERTS, AND

09:26:00  13       I'VE WORKED AGAINST HER BEFORE.

09:26:02  14       Q.   AND YOU VIEW HER AS HIGHLY COMPETENT AND CAREFUL; CORRECT?

09:26:05  15       A.   I DO.  I'VE TOLD HER AND I'LL TELL THE JURY AND I'LL TELL

09:26:10  16       YOU THAT SHE IS A CREDIT TO MY PROFESSION.  SHE IS ONE OF THE

09:26:13  17       BEST IN THE BUSINESS.

09:26:15  18       Q.   SHE HAS A HIGH PERSONAL -- YOU HAVE A HIGH PERSONAL AND

09:26:18  19       PROFESSIONAL REGARD FOR HER AND SHE DOES FOR YOU AS WELL;

09:26:22  20       CORRECT?

09:26:22  21       A.   I DO.  I ACTUALLY CONSIDER HER A FRIEND.

09:26:24  22       Q.   GOOD.  NOW, LET'S TURN, IF WE COULD, TO THE DESIGN

09:26:28  23       PATENTS.  OKAY?

09:26:29  24            AND I WANT TO FOCUS YOU -- LET ME GET MYSELF TO THE RIGHT

09:26:33  25       PAGE.

09:26:53  1          SO I WANT TO TURN TO THE DESIGN PATENTS.  CAN WE DO THAT?

09:26:56  2     A.   WE CAN.

09:26:57  3     Q.   AND IF YOU CAN'T HEAR ME BECAUSE I WANDER FROM THE MIKE,

09:27:01  4     YOU LET ME KNOW.  OKAY?

09:27:02  5     A.   I'VE GOT MY HEARING AIDS ON.  I THINK I CAN HEAR YOU.

09:27:07  6     Q.   I KNOW, THAT'S WHY I MADE THE OFFER.

09:27:09  7          NOW, FOR DESIGN PATENTS, THERE IS A SPECIFIC REMEDY

09:27:12  8     AVAILABLE; CORRECT?

09:27:13  9     A.   YES, UNDER TITLE 35, SECTION 289.

09:27:17  10    Q.   AND IT'S A SPECIAL REMEDY FOR THE CIRCUMSTANCE WHEN

09:27:20  11    SOMEONE HAS MISAPPROPRIATED THE DESIGN INTELLECTUAL PROPERTY OF

09:27:26  12    ANOTHER; CORRECT?

09:27:27  13    A.   YES.

09:27:27  14    Q.   NOW, THERE WAS A LOT OF DISCUSSION YESTERDAY ABOUT

09:27:30  15    GENERALLY ACCEPTED ACCOUNTS PRINCIPLES.  DO YOU REMEMBER THAT?

09:27:34  16    A.   I DO.

09:27:34  17    Q.   THERE WAS A LOT OF DISCUSSION ABOUT WHAT PEOPLE MIGHT DO

09:27:37  18    IN THE ORDINARY COURSE OF THEIR BUSINESS; CORRECT?

09:27:40  19    A.   YES.

09:27:40  20    Q.   SECTION 289 IS DESCRIBING A SPECIFIC CIRCUMSTANCE;

09:27:44  21    CORRECT?

09:27:44  22    A.   I AGREE.

09:27:45  23    Q.   IT'S AN UNUSUAL CIRCUMSTANCE; CORRECT?

09:27:48  24    A.   IN MY EXPERIENCE, THERE'S NOT THAT MANY DESIGN PATENTS

09:27:52  25    THAT GO TO TRIAL.

09:27:53  1    Q.   AND IT'S AN UNUSUAL CIRCUMSTANCE WHEN SOMEONE HAS

09:27:56  2    MISAPPROPRIATED A DESIGN PATENT; CORRECT?

09:28:01  3    A.   I BELIEVE IT IS.

09:28:02  4    Q.   IT'S PARTICULARLY AN UNUSUAL CIRCUMSTANCE WHEN THE

09:28:06  5    MISAPPROPRIATION HAS BEEN DONE MILLIONS AND MILLIONS AND

09:28:08  6    MILLIONS OF TIMES; CORRECT?

09:28:11  7    A.   I'VE NOT SEEN MANY OTHER CASES AS LARGE AS THIS.

09:28:15  8    Q.   AND WHEN WE SAY "AS LARGE," WE'RE TALKING ABOUT THE

09:28:18  9    MAGNITUDE OR THE SCOPE, JUST THE NUMBER OF INFRINGING PRODUCTS;

09:28:21  10   CORRECT?

09:28:21  11   A.   YES.

09:28:22  12   Q.   NOW, THIS SPECIFIC REMEDY IS FOR THIS EXTRAORDINARY

09:28:27  13   CIRCUMSTANCE; CORRECT?

09:28:28  14   A.   IT'S FOR ANY CIRCUMSTANCE WHERE DESIGN PATENTS ARE

09:28:31  15   INFRINGED.

09:28:32  16   Q.   FAIR ENOUGH.

09:28:34  17        THIS STATUTORY, OR SPECIAL REMEDY, IS FOR THE CIRCUMSTANCE

09:28:37  18   WHERE SOMEONE HAS BEEN FOUND TO HAVE TAKEN OR USED THE

09:28:41  19   INTELLECTUAL PROPERTY OF ANOTHER IN THE DESIGN AREA; CORRECT?

09:28:45  20   A.   IT WOULD BE ONE OF THOSE TWO THINGS, YES.

09:28:48  21   Q.   RIGHT.  NOW, YOU AND MS. DAVIS HAVE FOCUSSED ON DIFFERENT

09:28:52  22   ARTICLES OF MANUFACTURE; CORRECT?

09:28:53  23   A.   WE HAVE.

09:28:54  24   Q.   YOU HAVE NOT OFFERED ANY OPINION ON THE RELEVANT ARTICLE

09:29:00  25   OF MANUFACTURE; CORRECT?

09:29:01  1    A.   I HAVE NOT.  THAT'S JUST AN INPUT TO MY WORK.

09:29:04  2    Q.   RIGHT.  YOU WERE HERE WHEN MR. BLACKARD TESTIFIED

09:29:06  3    YESTERDAY?

09:29:07  4    A.   I WAS.

09:29:08  5    Q.   YOU KNOW THAT HE WAS THE CORPORATE REPRESENTATIVE FOR

09:29:10  6    SAMSUNG ON THE ISSUE OF THE ARTICLE OF MANUFACTURE?

09:29:13  7    A.   I THINK I LEARNED THAT YESTERDAY, YES.

09:29:17  8    Q.   AND YOU ALSO KNOW THAT THE FIRST TIME THAT HE LEARNED THAT

09:29:20  9    THE GLASS FRONT FACE, THE BEZEL, AND THE DISPLAY SCREEN WERE

09:29:27  10   THE ARTICLES OF MANUFACTURE WAS WHEN A LAWYER HANDED THEM TO

09:29:31  11   HIM; CORRECT?

09:29:32  12            MR. PRICE:  I'M GOING TO OBJECT.  THAT'S

09:29:34  13   ARGUMENTATIVE.  THERE IS NO -- THIS WITNESS IS NOT GIVING AN

09:29:36  14   OPINION ON ARTICLE OF MANUFACTURE.  IT'S IMPROPER.

09:29:38  15            MR. LEE:  YOUR HONOR --

09:29:38  16            THE COURT:  OVERRULED.

09:29:39  17        GO AHEAD, PLEASE.

09:29:40  18   BY MR. LEE:

09:29:40  19   Q.   CAN YOU ANSWER THAT?

09:29:41  20   A.   I CAN.

09:29:42  21   Q.   THAT'S TRUE; CORRECT?

09:29:43  22   A.   THAT'S MY UNDERSTANDING OF THE FACTS.

09:29:45  23   Q.   AND THAT TOOK PLACE IN DECEMBER OF 2017; CORRECT?

09:29:49  24   A.   YES.

09:29:49  25   Q.   NOW, YOU GAVE SOME TESTIMONY ABOUT WHAT THE ARTICLE OF

09:29:55   1    MANUFACTURE WAS THAT WAS THE BASIS FOR YOUR CALCULATIONS;

09:29:58   2    CORRECT?

09:29:58   3    A.   I DID.

09:29:59   4    Q.   YOU WERE RELYING UPON THE TESTIMONY OF MR. LUCENTE;

09:30:03   5    CORRECT?

09:30:03   6    A.   THAT AND HIS REPORT.

09:30:05   7    Q.   YES.  AND, OF COURSE, WHAT THE LADIES AND GENTLEMEN OF THE

09:30:11   8    JURY HAVE IS JUST HIS TESTIMONY, NOT HIS REPORT; CORRECT?

09:30:15   9    A.   THAT'S ALL THEY HAVE.

09:30:15   10   Q.   NOW, YOU UNDERSTAND FROM HIS REPORT AND HIS TESTIMONY THAT

09:30:19   11   THE PATENTED DESIGN IS THE CREATIVE, ORNAMENTAL THING; CORRECT?

09:30:26   12   A.   I UNDERSTAND THAT.

09:30:26   13   Q.   SO, FOR INSTANCE, MR. LUCENTE, WHEN YOU WERE HERE

09:30:29   14   YESTERDAY, SHOWED A PLATE.

09:30:31   15        DO YOU REMEMBER THAT?

09:30:32   16   A.   I DO.

09:30:32   17   Q.   BUT THE ORNAMENTAL DESIGN ONLY WAS ON THE RIM OF THE

09:30:36   18   PLATE; CORRECT?

09:30:36   19   A.   I BELIEVE THAT'S TRUE.

09:30:37   20   Q.   BUT THE ARTICLE OF MANUFACTURE WAS THE ENTIRE PLATE

09:30:42   21   ACCORDING TO HIM; CORRECT?

09:30:43   22        MR. PRICE:  I OBJECT.  THIS IS WAY BEYOND THE SCOPE

09:30:46   23   OF THIS GENTLEMAN'S OPINION.  HE'S ASSUMING WHAT THE AOM IS.

09:30:49   24        THE COURT:  OVERRULED.

           25

09:30:50  1     BY MR. LEE:

09:30:51  2     Q.   CORRECT?

09:30:51  3     A.   THAT'S MY UNDERSTANDING.

09:30:52  4     Q.   ALL RIGHT.  NOW, MS. DAVIS CALCULATED THE TOTAL PROFITS ON

09:31:04  5     THE BASIS OF THE PHONES; CORRECT?

09:31:06  6     A.   SHE CALCULATED GROSS PROFIT, WHICH SHE BELIEVES IS EQUAL

09:31:09  7     TO TOTAL PROFIT.

09:31:10  8     Q.   FAIR ENOUGH.  SO YOU TWO DISAGREE ABOUT WHICH EXPENSES

09:31:14  9     SHOULD BE DEDUCTED; CORRECT?

09:31:15 10     A.   THAT'S THE PRINCIPAL DISAGREEMENT.

09:31:18 11     Q.   SO WE'LL COME BACK TO THAT IN A FEW MINUTES.

09:31:21 12          BUT YOU COMPUTED YOUR TOTAL PROFITS, YOUR $28 MILLION, ON

09:31:25 13     THE GLASS FRONT FACE, THE BEZEL, AND THE DISPLAY SCREEN AS YOU

09:31:30 14     SUMMARIZED THIS MORNING; CORRECT?

09:31:32 15     A.   I DID.

09:31:32 16     Q.   SO LET'S USE THE PHONE FIRST AS THE ARTICLE OF

09:31:34 17     MANUFACTURE.  CAN YOU TAKE THAT AS AN ASSUMPTION?

09:31:38 18     A.   CERTAINLY.

09:31:38 19     Q.   THAT IS WHAT WAS SOLD; CORRECT?

09:31:40 20     A.   IT IS.

09:31:40 21     Q.   THAT WAS WHAT WAS FOUND TO INFRINGE BY THE PRIOR JURY;

09:31:44 22     CORRECT?

09:31:44 23     A.   YES.

09:31:45 24     Q.   FOR THOSE SALES OF INFRINGING PHONES, YOU AND I AGREE --

09:31:49 25     YOU AND MS. DAVIS AGREE UPON THE TOTAL REVENUES; CORRECT?

09:31:53   1      A.   YEAH, 3.3 BILLION.

09:31:55   2      Q.   AND YOU AGREE UPON THE TOTAL NUMBER OF UNITS SOLD;

09:31:58   3   CORRECT?

09:31:58   4      A.   WE DO, ABOUT 8.6 MILLION.

09:32:01   5      Q.   SO THOSE ARE NUMBERS THAT THERE'S NO REAL DISPUTE OVER:

09:32:04   6   8.6 MILLION INFRINGING UNITS, $3.3 BILLION IN REVENUES;

09:32:10   7   CORRECT?

09:32:10   8      A.   CORRECT.

09:32:10   9      Q.   NOW, FOR PURPOSES OF COMPUTING TOTAL PROFITS, YOU

09:32:17  10   UNDERSTAND YOU THEN DEDUCT EXPENSES FROM TOTAL REVENUES;

09:32:20  11   CORRECT?

09:32:20  12      A.   YOU DO.

09:32:21  13      Q.   AND YOU HAVE TO DETERMINE WHICH EXPENSES YOU'RE ENTITLED

09:32:26  14   TO DEDUCT UNDER THIS SPECIAL REMEDY THAT CONGRESS HAS GIVEN TO

09:32:30  15   US; CORRECT?

09:32:31  16      A.   THAT IS CORRECT.

09:32:32  17      Q.   AND ONE OF THE CATEGORIES THAT YOU AND MS. DAVIS

09:32:36  18   CONSIDERED IS COSTS OF GOODS SOLD; CORRECT?

09:32:39  19      A.   YES.

09:32:39  20      Q.   NOW, YOU UNDERSTAND THAT UNDER THIS SPECIAL REMEDY, COSTS

09:32:45  21   CAN BE DEDUCTED ONLY IF THEY'RE DIRECTLY ATTRIBUTABLE TO THE

09:32:50  22   SALE OR MANUFACTURE OF THE INFRINGING ARTICLES -- LET ME

09:32:55  23   RESTATE IT.

09:32:56  24        YOU UNDERSTAND THAT COSTS MAY BE DEDUCTED AS DEDUCTIBLE

09:33:01  25   EXPENSES ONLY IF THEY ARE DIRECTLY ATTRIBUTABLE TO THE SALE OR

09:33:06   1      MANUFACTURE OF THE ARTICLES OF MANUFACTURE; CORRECT?

09:33:11   2      A.   I DO.   IN ORDER TO MAKE IT -- THERE'S A NEXUS BETWEEN

09:33:16   3      THOSE COSTS AND THE ULTIMATE SALE.

09:33:18   4      Q.   RIGHT.   BUT YOU DON'T DISAGREE.   THE PHRASE IS DIRECTLY

09:33:22   5      ATTRIBUTABLE; RIGHT?

09:33:22   6      A.   THAT IS PART OF THE PHRASE, YES.

09:33:24   7      Q.   AND IT'S DIRECTLY ATTRIBUTABLE TO THE INFRINGING PRODUCTS

09:33:28   8      OR TO THE ARTICLE OF MANUFACTURE, DEPENDING WHICH ARTICLE OF

09:33:31   9      MANUFACTURE YOU'RE USING; CORRECT?

09:33:36   10     A.   YES.

09:33:37   11     Q.   NOW, BOTH OF YOU HAVE DEDUCTED THE COSTS OF GOODS SOLD;

09:33:40   12     CORRECT?

09:33:41   13     A.   WE HAVE.

09:33:41   14     Q.   BECAUSE BOTH OF YOU HAVE CONCLUDED THAT THE COSTS OF GOODS

09:33:45   15     SOLD IS DIRECTLY ATTRIBUTABLE TO THE INFRINGING PRODUCTS;

09:33:51   16     CORRECT?

09:33:51   17     A.   YES.

09:33:52   18     Q.   AND BOTH OF YOU AGREE THAT THE AMOUNT TO BE DEDUCTED IS

09:33:54   19     WELL OVER -- OR OVER $2 BILLION; CORRECT?

09:33:57   20     A.   YES, FOR THAT ONE COST.

09:33:59   21     Q.   YES, THAT ONE COST ALONE.

09:34:01   22          AND YOU BOTH AGREE IT'S DIRECTLY ATTRIBUTABLE; CORRECT?

09:34:04   23     A.   THAT'S WHAT I JUST SAID.

09:34:06   24     Q.   NOW, THE CONCEPT, DIRECTLY ATTRIBUTABLE, IS NOT AN

09:34:09   25     ACCOUNTING TERM UNDER ANY ACCOUNTING STANDARD OF WHICH YOU'RE

09:34:13  1    FAMILIAR; CORRECT?

09:34:14  2    A.   THAT IS CORRECT.

09:34:15  3    Q.   SO ALL THE DISCUSSION YESTERDAY ABOUT THE DIFFERENT

09:34:17  4    ACCOUNTING STANDARDS, NONE OF THEM USE THE TERM "DIRECTLY

09:34:21  5    ATTRIBUTABLE;" CORRECT?

09:34:25  6    A.   I AGREE WITH THAT.

09:34:26  7    Q.   BUT THIS SPECIAL REMEDY DOES; CORRECT?

09:34:28  8    A.   BASED ON THE INSTRUCTIONS OF THIS COURT, YES.

09:34:32  9    Q.   AND YOU KNOW THE REASON FOR THAT IS THAT IF SOMEONE TAKES

09:34:35  10   SOMEONE ELSE'S DESIGN INTELLECTUAL PROPERTY, THE SPECIAL REMEDY

09:34:41  11   IS DESIGNED TO ENSURE THAT THE INFRINGER DOESN'T RETAIN ANY

09:34:44  12   PROFIT?

09:34:45  13         MR. PRICE:  YOUR HONOR, IT'S ASKING FOR A LEGAL

09:34:47  14   OPINION.

09:34:49  15         THE COURT:  SUSTAINED.

09:34:51  16   BY MR. LEE:

09:34:52  17   Q.   YOU UNDERSTAND THAT THE REMEDY IS TO TAKE THE TOTAL PROFIT

09:34:54  18   FROM THE INFRINGEMENT; CORRECT?

09:34:57  19   A.   I DO.  THAT LANGUAGE IS IN THE STATUTE.

09:34:59  20   Q.   NOW, UNDER GENERALLY ACCEPTED ACCOUNTS PRINCIPLES, AS YOU

09:35:06  21   TOLD US YESTERDAY, COSTS CAN BE DEDUCTED EVEN IF THEY'RE NOT

09:35:10  22   DIRECTLY ATTRIBUTABLE; RIGHT?

09:35:12  23   A.   NO, I DON'T THINK I SAID THAT.  I THINK WHAT I SAID IS

09:35:14  24   THERE HAS TO BE A RELATION, THERE HAS TO BE A CONNECTION

09:35:17  25   BETWEEN THOSE COSTS AND THE SALE.

09:35:19   1    Q.   RIGHT.  BUT YOU NEVER SAID THEY WERE DIRECTLY ATTRIBUTABLE

09:35:22   2    YESTERDAY; CORRECT?

09:35:23   3    A.   I DON'T KNOW IF I DID OR NOT.

09:35:25   4    Q.   OKAY.  FAIR ENOUGH.

09:35:27   5         SO LET'S LOOK AT THE DIFFERENT COSTS THAT YOU AND

09:35:29   6    MS. DAVIS AGREE UPON, BECAUSE YOU AGREE UPON REVENUE, YOU AGREE

09:35:34   7    UPON COST OF GOODS SOLD?

09:35:35   8    A.   WE DO.

09:35:36   9    Q.   AND TO BE CLEAR, IF YOU DEDUCT EVERYTHING THAT YOU THINK

09:35:38   10   SHOULD BE DEDUCTED, THERE'S STILL $370 MILLION IN PROFIT THAT

09:35:44   11   SAMSUNG RECEIVED FOR SELLING THE INFRINGING PHONES; CORRECT?

09:35:48   12   A.   THERE IS.

09:35:48   13   Q.   ALL RIGHT.  CAN I HAVE SDX 1702 ON THE SCREEN, PLEASE.

09:35:59   14        THIS IS YOUR DEMONSTRATIVE, MR. WAGNER?

09:36:02   15   A.   IT IS.

09:36:03   16   Q.   NOW, TO CALCULATE, YOU STARTED WITH TOTAL REVENUES;

09:36:07   17   CORRECT?

09:36:08   18   A.   I DID.

09:36:08   19   Q.   YOU SUBTRACTED TOTAL COSTS, SO THAT'S ABOUT WHERE WE ARE

09:36:13   20   SO FAR; CORRECT?

09:36:13   21   A.   WE'RE GOING TO START TALKING ABOUT WHAT ARE THE TOTAL

09:36:16   22   COSTS, BUT, YES, THAT'S WHERE WE ARE.

09:36:18   23   Q.   NOW, YOUR OPINION IS THAT ALL OF THE ADDITIONAL COSTS,

09:36:21   24   SALES EXPENSES, MARKETING, R&D EXPENSES, GENERAL AND

09:36:26   25   ADMINISTRATIVE ALL SHOULD BE DEDUCTED; CORRECT?

WAGNER CROSS BY MR. LEE

```
09:36:29   1    A.   I DO.  THAT'S MY PROFESSIONAL OPINION.

09:36:32   2    Q.   AND THAT'S WHAT LEADS YOU TO THE $370 MILLION NUMBER;

09:36:36   3    CORRECT?

09:36:36   4    A.   IT IS.

09:36:37   5    Q.   AND TO REMIND THE JURY, THAT'S -- THAT'S THE CHART THAT

09:36:41   6    MR. PRICE PUT UP ON THE SCREEN JUST A FEW MINUTES AGO; CORRECT?

09:36:45   7    A.   YES.

09:36:46   8    Q.   ALL RIGHT.  SO LET'S LOOK AT WHAT THE EXPENSES ARE THAT

09:36:48   9    CREATE THE DIFFERENCES.

09:36:51   10        YOU AGREE THAT SAMSUNG'S OPERATING EXPENSES INCLUDE SOME

09:36:55   11   EXPENSES THAT ARE RELATED TO SPECIFIC PRODUCTS; CORRECT?

09:36:59   12   A.   I DO.

09:37:00   13   Q.   AND AS YOU TOLD US IN YOUR REPORT, YOU ALSO AGREE THAT

09:37:04   14   THERE ARE EXPENSES THAT ARE NOT DIRECTLY RELATED TO SPECIFIC

09:37:08   15   PRODUCTS; CORRECT?

09:37:09   16   A.   YEAH.  USING THE WORD "DIRECT" BECAUSE THEY'RE COMMON

09:37:14   17   COSTS.  THEY'RE COSTS THAT ARE RELATED TO A NUMBER OF PRODUCTS,

09:37:17   18   NOT JUST ONE.

09:37:18   19   Q.   WELL, MR. WAGNER, MY QUESTION WAS, DID YOU, IN YOUR

09:37:21   20   REPORT -- SO THE LADIES AND GENTLEMEN OF THE JURY UNDERSTAND,

09:37:24   21   THE PURPOSE OF THESE REPORTS IS WHEN YOU'RE AN EXPERT LIKE

09:37:28   22   YOURSELF, YOU PREPARE A WRITTEN REPORT; CORRECT?

09:37:33   23   A.   I DO.  AND IT'S SUPPOSED TO EXPLAIN MY OPINION S AND ALL

09:37:36   24   THE BASES FOR MY OPINIONS.

09:37:38   25   Q.   AND IT'S SOMETHING THAT YOU WORK ON WITH THE LAWYERS;
```

09:37:40   1    CORRECT?

09:37:40   2    A.   NOT MUCH, BUT SOME.

09:37:42   3    Q.   AND MS. DAVIS DID THE SAME; CORRECT?

09:37:44   4    A.   I BELIEVE SHE DID.

09:37:45   5    Q.   NOW, IN YOUR REPORT DATED JANUARY 29, 2018, YOU SAY THAT

09:37:50   6    THERE ARE CERTAIN EXPENSES THAT ARE NOT DIRECTLY RELATED TO

09:37:55   7    SPECIFIC PRODUCTS.  THAT WAS YOUR PHRASE; CORRECT?

09:37:58   8    A.   I BELIEVE I USED THAT PHRASE.

09:37:59   9    Q.   AND THEN YOU WENT ON TO SAY WHAT THE EXPENSES WERE THAT

09:38:02   10   ARE NOT DIRECTLY RELATED TO A SPECIFIC PRODUCT; CORRECT?

09:38:06   11   A.   I DID.

09:38:09   12        MR. LEE:  AND COULD I APPROACH, YOUR HONOR?

09:38:10   13        THE COURT:  GO AHEAD, PLEASE.

09:38:11   14   BY MR. LEE:

09:38:11   15   Q.   OF THE EXPENSES ON YOUR CHART HERE, THERE'S THE

09:38:17   16   SUBCATEGORY MARKETING; CORRECT?

09:38:19   17   A.   THERE IS.

09:38:19   18   Q.   THERE ARE R&D EXPENSES?

09:38:21   19   A.   YES.

09:38:22   20   Q.   THERE ARE GENERAL AND ADMINISTRATIVE?

09:38:24   21   A.   THERE ARE.

09:38:25   22   Q.   MARKETING IS A SUBSET -- IS A PORTION OF SALES; CORRECT?

09:38:29   23   A.   IT IS.

09:38:30   24   Q.   BUT NOT ALL SALES?

09:38:31   25   A.   CORRECT.

09:38:32   1    Q.   AND YOU AND MS. DAVIS AGREE ACTUALLY ON MARKETING, R&D,

09:38:37   2    AND GENERAL AND ADMINISTRATIVE; CORRECT?

09:38:39   3    A.   I BELIEVE WE DO.  I DON'T KNOW WHAT -- I MEAN, THE AMOUNT

09:38:41   4    THAT'S CHARGED?

09:38:42   5    Q.   OR WHETHER THEY SHOULD BE DEDUCTED?

09:38:44   6    A.   WE DON'T AGREE.

09:38:45   7    Q.   YES.  YOU DISAGREE?

09:38:47   8    A.   I THOUGHT YOU SAID "YOU AGREE."

09:38:49   9    Q.   NO.  YOU DISAGREE ON WHETHER THOSE AMOUNTS SHOULD BE

09:38:51   10   DEDUCTED?

09:38:52   11   A.   WE DO.

09:38:55   12   Q.   BUT IN YOUR REPORT THAT YOU FILED IN JANUARY OF THIS YEAR,

09:38:59   13   YOU SAID THAT THE MARKETING EXPENSES WERE NOT DIRECTLY RELATED

09:39:02   14   TO SPECIFIC PRODUCTS; CORRECT?

09:39:03   15   A.   I DID.

09:39:03   16   Q.   IN YOUR REPORT EARLIER THIS YEAR, YOU SAID THAT THE R&D

09:39:08   17   EXPENSES WERE NOT DIRECTLY RELATED TO A SPECIFIC PRODUCT;

09:39:13   18   CORRECT?

09:39:13   19   A.   CORRECT.

09:39:14   20   Q.   IN YOUR REPORT, YOU SAID THAT THE GENERAL AND

09:39:16   21   ADMINISTRATIVE EXPENSES, THAT'S LIKE HR, ACCOUNTING, LAWYERS,

09:39:21   22   OTHER THINGS; CORRECT?

09:39:23   23   A.   YES.

09:39:23   24   Q.   YOU SAID THEY'RE NOT SPECIFICALLY RELATED TO -- THEY'RE

09:39:28   25   NOT DIRECTLY RELATED TO SPECIFIC PRODUCTS?

09:39:31  1    A.   THEY ARE NOT.

09:39:32  2    Q.   CORRECT?

09:39:32  3    A.   YES.

09:39:33  4    Q.   AND I WANT TO BE CLEAR, YOUR SPECIFIC PHRASING IN YOUR

09:39:36  5    REPORT AUTHORED BY YOU WAS "NOT DIRECTLY RELATED TO A SPECIFIC

09:39:41  6    PRODUCT;" CORRECT?

09:39:42  7    A.   CORRECT.

09:39:43  8    Q.   AND CERTAINLY NOT DIRECTLY RELATED TO ANY INFRINGING

09:39:46  9    PRODUCTS; CORRECT?

09:39:47 10    A.   WELL, THEY ARE SPECIFIC PRODUCTS, SO THEY WOULDN'T BE BY

09:39:51 11    DEFINITION.

09:39:52 12    Q.   SO I'M CORRECT?

09:39:53 13    A.   YES, YOU ARE CORRECT.

09:39:54 14    Q.   AND YOU STAND BY THAT OPINION TODAY?  FOR MARKETING, R&D

09:39:58 15    EXPENSES, AND GENERAL AND ADMINISTRATIVE, THE EXPENSES THAT ARE

09:40:03 16    ON THE SHEETS ARE NOT DIRECTLY RELATED TO THE SPECIFIC

09:40:07 17    INFRINGING PRODUCTS IN THIS CASE; CORRECT?

09:40:09 18    A.   CORRECT, BECAUSE THEY ARE RELATED TO A BUNCH OF

09:40:13 19    PROJECTS -- PRODUCTS, AND YOU CANNOT JUST SAY THAT THIS

09:40:16 20    PARTICULAR COMMON EXPENSE ONLY PERTAINS TO ONE PRODUCT.  THIS

09:40:21 21    PERTAINED TO A LOT OF PRODUCTS.

09:40:23 22    Q.   SURE.  I MEAN, SO IF YOU HAVE THE HR DEPARTMENT OR THE

09:40:26 23    LEGAL DEPARTMENT OR THE ACCOUNTING DEPARTMENT, THEY PERFORM

09:40:30 24    IMPORTANT FUNCTIONS FOR ANY COMPANY; CORRECT?

09:40:32 25    A.   I AGREE WITH THAT.

09:40:33  1    Q.   AND THEY ARE REAL COSTS; CORRECT?

09:40:37  2    A.   THEY ARE REAL COSTS.

09:40:39  3    Q.   AND MS. DAVIS AGREES THAT THEY ARE REAL COSTS AND SHE'S

09:40:42  4    NEVER DISPUTED THAT PEOPLE PAY THOSE COSTS; CORRECT?

09:40:45  5    A.   I THINK SHE DOES NOT SPEAK TO EITHER OF THOSE THINGS THAT

09:40:49  6    YOU SAID IN YOUR QUESTION.

09:40:50  7    Q.   BUT THE QUESTION NOW UNDER THE SPECIAL REMEDY OF

09:40:52  8    SECTION 289 IS ARE THEY DIRECTLY ATTRIBUTABLE, OR AS YOU SAY,

09:40:58  9    HAVE A NEXUS TO THE SPECIFIC INFRINGING PRODUCTS OR THE

09:41:01  10   SPECIFIC ARTICLES OF MANUFACTURE; YOU KNOW THAT; CORRECT?

09:41:05  11   A.   NO, I DON'T.  THE STATUTE DOES NOT USE THAT LANGUAGE.  THE

09:41:08  12   STATUTE ONLY SAYS TOTAL PROFITS.

09:41:10  13        BUT THIS COURT HAS ADDED SOME OTHER LANGUAGE WHICH WE HAVE

09:41:13  14   TO USE IN THIS CASE.

09:41:14  15   Q.   AND WHAT I JUST SAID IS PART OF THE COURT'S LANGUAGE;

09:41:16  16   CORRECT?

09:41:17  17   A.   YES.

09:41:17  18   Q.   FAIR ENOUGH.

09:41:19  19        MR. PRICE:  I'M GOING TO OBJECT.  THAT'S A

09:41:20  20   MISCHARACTERIZATION OF THE ENTIRE COURT LANGUAGE.  HE'S TAKING

09:41:23  21   A COUPLE OF PHRASES OUT OF THAT SENTENCE.

09:41:25  22        THE COURT:  OVERRULED.

09:41:26  23   BY MR. LEE:

09:41:27  24   Q.   NOW, LET'S TALK ABOUT THE DATA THAT YOU USED TO DO YOUR

09:41:30  25   ALLOCATION.

WAGNER CROSS BY MR. LEE

09:41:32  1          THIS IS WHAT YOU AND MR. PRICE WERE JUST TALKING ABOUT AT

09:41:35  2   THE END AND THERE WERE CHARTS WITH DIFFERENT PERCENTAGES FOR

09:41:39  3   DIFFERENT PRODUCTS.

09:41:40  4          DO YOU REMEMBER THAT?

09:41:41  5   A.   I DO.

09:41:41  6   Q.   I WANT TO TALK TO YOU A LITTLE BIT ABOUT THE SOURCES OF

09:41:44  7   THOSE INFORMATION, AND FOR YOUR OPINION ENTIRELY.  OKAY?

09:41:47  8          YOU'VE BEEN INVOLVED IN THIS CASE FOR A NUMBER OF YEARS

09:41:51  9   NOW; CORRECT?

09:41:52  10  A.   SEVEN YEARS.

09:41:53  11  Q.   YOU HAD A LOT OF DIFFICULTY GETTING INFORMATION FROM

09:41:56  12  SAMSUNG, DIDN'T YOU?

09:41:59  13  A.   I DID.

09:41:59  14  Q.   AND, IN FACT, YOU HAD TO GO BACK TO SAMSUNG MULTIPLE

09:42:05  15  TIMES; CORRECT?

09:42:06  16  A.   I DID.

09:42:06  17  Q.   NOW, YOU WERE RETAINED YEARS AGO BY SAMSUNG; CORRECT?

09:42:12  18  A.   BY SAMSUNG'S LAWYERS.

09:42:13  19  Q.   RIGHT.  YOU WERE RETAINED TO HELP AND CONSULT FOR

09:42:16  20  SAMSUNG'S LAWYERS; CORRECT?

09:42:17  21  A.   I AGREE WITH THAT.

09:42:18  22  Q.   YOU WERE RETAINED, GIVEN ALL OF YOUR EXPERIENCE AND

09:42:22  23  EXPERTISE, TO CONSULT ON THE ISSUE OF DAMAGES; CORRECT?

09:42:26  24  A.   THAT'S CORRECT.

09:42:26  25  Q.   AND YOUR AREA OF EXPERTISE, AS WITH MS. DAVIS, IS IN

09:42:31   1       EVALUATING FINANCIAL INFORMATION; CORRECT?

09:42:33   2       A.   AND OTHER INFORMATION THAT'S RELEVANT TO DAMAGES.

09:42:36   3       Q.   AND AS THE INFRINGER, IT WOULD HAVE BEEN IN SAMSUNG'S BEST

09:42:40   4       INTERESTS TO GIVE YOU COMPLETE INFORMATION AS BEST THEY COULD

09:42:45   5       SO YOU COULD COME TO A REASONED OPINION; CORRECT?

09:42:49   6       A.   I AGREE WITH THAT.

09:42:50   7       Q.   BUT YOU HAD LOTS OF DIFFICULTY GETTING INFORMATION FROM

09:42:54   8       YOUR OWN CLIENT; CORRECT?

09:42:55   9       A.   ON A TIMELY BASIS, YES.

09:42:57  10       Q.   NOW, EVENTUALLY THEY GAVE YOU A SPREADSHEET -- AFTER NINE

09:43:01  11       TRIES, THEY GAVE YOU A SPREADSHEET THAT WAS NOT PREPARED IN THE

09:43:04  12       ORDINARY COURSE OF BUSINESS; CORRECT?

09:43:06  13       A.   RIGHT.  IT WAS PREPARED AT MY DIRECTION.

09:43:08  14       Q.   CORRECT.  AND THAT IS THE SPREADSHEET THAT WAS USED FOR

09:43:12  15       YOU TO PREPARE YOUR FIRST REPORT; CORRECT?

09:43:14  16       A.   YES.

09:43:15  17       Q.   NOW, I WANT TO WALK THROUGH BRIEFLY AGAIN SOME OF THE

09:43:20  18       EXPENSES THAT WE JUST TALKED ABOUT BECAUSE I WANT TO BE SURE

09:43:24  19       THAT WE CAN SEE WHERE YOU AND MS. DAVIS AGREE AND WHERE YOU

09:43:28  20       DISAGREE.  OKAY?

09:43:29  21           CAN WE START WITH RESEARCH AND DEVELOPMENT COSTS?

09:43:32  22       A.   ABSOLUTELY.

09:43:33  23       Q.   YOU DISAGREE ON THE QUESTION OF WHETHER THEY SHOULD BE

09:43:37  24       DEDUCTED OR NOT; CORRECT?

09:43:38  25       A.   WE DO.

09:43:39  1    Q.   YOU DON'T DISAGREE THAT THEY WERE, IN FACT, INCURRED;

09:43:42  2    CORRECT?

09:43:43  3    A.   WE BOTH AGREE TO THAT.

09:43:45  4    Q.   THE QUESTION IS, WERE THEY DIRECTLY ATTRIBUTABLE UNDER THE

09:43:48  5    COURT'S STANDARD; CORRECT?

09:43:50  6    A.   I THINK THAT'S FAIR.

09:43:51  7    Q.   NOW, COULD I HAVE SDX 1706, PLEASE.

09:44:04  8         TO BE CLEAR, THE AMOUNT THAT YOU DEDUCTED FOR R&D EXPENSE

09:44:09  9    WAS ABOUT $270 MILLION; CORRECT?

09:44:12  10   A.   IT'S NOT EXACT, BUT YES.

09:44:16  11   Q.   CLOSE?

09:44:17  12   A.   THIS -- THIS SCHEDULE ACTUALLY GOES FOR A LONGER PERIOD

09:44:21  13   THAN THE NOTICE PERIODS IN THIS CASE, SO IT'S VERY CLOSE TO

09:44:24  14   THAT NUMBER, BUT IT'S NOT QUITE THAT NUMBER.

09:44:26  15   Q.   OKAY.  BUT CAN WE SAY APPROXIMATELY?

09:44:28  16   A.   WE CAN.

09:44:29  17   Q.   IS THAT GOOD ENOUGH?

09:44:30  18   A.   WE CAN.

09:44:30  19   Q.   I THINK THAT'S GOOD ENOUGH FOR BOTH OUR PURPOSES.

09:44:33  20        SO APPROXIMATELY $270 MILLION; CORRECT?

09:44:35  21   A.   YES.

09:44:36  22   Q.   NOW, YOU UNDERSTAND THAT THOSE RESEARCH AND DEVELOPMENT

09:44:40  23   COSTS WERE COSTS FOR FUTURE PRODUCTS; CORRECT?

09:44:44  24   A.   SOME OF THEM WERE.  SOME COSTS WERE NOT.

09:44:47  25   Q.   HOW MUCH OF THE COSTS WERE DIRECTLY ATTRIBUTABLE TO THE

09:44:52  1    INFRINGING PRODUCTS?

09:44:53  2    A.   WELL, BASED ON --

09:44:54  3         MR. PRICE:  YOUR HONOR, I THINK THAT CALLS FOR A

09:44:57  4    LEGAL CONCLUSION.  ALTHOUGH I DON'T MIND IF HE ANSWERS THE

09:45:00  5    QUESTION.

09:45:01  6         MR. LEE:  I'LL REPHRASE IT, YOUR HONOR.  I'LL

09:45:02  7    WITHDRAW THE QUESTION AND ASK IT IN A DIFFERENT WAY.

09:45:05  8    Q.   SO SOME OF THOSE COSTS WERE FOR FUTURE PRODUCTS; CORRECT?

09:45:10  9    A.   YES.

09:45:10  10   Q.   NOW, DO YOU RECALL THERE WAS ABOUT, ACCORDING TO YOU, SOME

09:45:18  11   WAY TO DETERMINE HOW MUCH OF THAT'S ATTRIBUTABLE TO FUTURE

09:45:21  12   PRODUCTS; CORRECT?

09:45:22  13   A.   I DON'T THINK I SAID THAT.  I DON'T THINK I HAVE THAT

09:45:24  14   INFORMATION.

09:45:25  15   Q.   OKAY.  FAIR ENOUGH.  YOU DON'T HAVE THAT INFORMATION;

09:45:27  16   CORRECT?

09:45:28  17   A.   YES.

09:45:28  18   Q.   OKAY.  NOW, THERE WERE COSTS ASSOCIATED WITH DEVELOPING,

09:45:33  19   RESEARCH AND DEVELOPMENT FOR THE INFRINGING PRODUCTS; CORRECT?

09:45:37  20   A.   YES.

09:45:38  21   Q.   THOSE WERE -- THOSE WERE INCURRED IN A PERIOD BEFORE THE

09:45:42  22   INFRINGEMENT BEGAN; CORRECT?

09:45:44  23   A.   ALL THE RESEARCH AND DEVELOPMENT THAT WAS NECESSARY TO

09:45:46  24   ACTUALLY HAVE A PHYSICAL PHONE THAT WORKED WAS DONE BEFORE THEY

09:45:50  25   WERE SOLD.

WAGNER CROSS BY MR. LEE

09:45:50  1    Q.   BUT SAMSUNG DIDN'T GIVE YOU THAT INFORMATION, DID THEY?

09:45:53  2    A.   WELL, THEY DIDN'T, AND THEY CAN'T BASED ON THE WAY THEY

09:45:56  3    KEEP THEIR BOOKS AND RECORDS.

09:45:58  4    Q.   MY QUESTION, MR. WAGNER, WAS DID THEY GIVE YOU THAT

09:46:01  5    INFORMATION?

09:46:02  6    A.   NO.

09:46:02  7    Q.   INSTEAD, THEY GAVE IT TO YOU FOR A DIFFERENT PERIOD;

09:46:05  8    CORRECT?

09:46:05  9    A.   THEY GAVE IT FOR THE PERIOD THAT THE PRODUCTS WERE SOLD,

09:46:08  10   WHICH IS THE WAY THAT ALL COMPANIES DO THIS.

09:46:10  11   Q.   WELL, MR. WAGNER, I UNDERSTAND THAT THIS IS THE WAY ALL

09:46:13  12   COMPANIES DO IT IN THE ORDINARY COURSE.

09:46:15  13        BUT WE'RE TALKING ABOUT A SITUATION THAT'S DIFFERENT,

09:46:18  14   AREN'T WE?

09:46:18  15   A.   YES, IT'S DIFFERENT.  AND IF COMPANIES KNEW THEY WERE

09:46:22  16   GOING TO HAVE TO DO THIS, MAYBE THEY WOULD KEEP A SECOND SET OF

09:46:24  17   BOOKS, BUT THEY DON'T DO THAT.

09:46:26  18   Q.   SO LET ME ASK YOU THIS QUESTION:  WOULD YOU AGREE WITH ME

09:46:29  19   THAT YOU CANNOT IDENTIFY FROM SAMSUNG'S FINANCIAL RECORDS ANY

09:46:34  20   RESEARCH AND DEVELOPMENT COSTS SPECIFIC TO THE PHONES AT ISSUE

09:46:38  21   IN THIS CASE?

09:46:39  22   A.   YES.

09:46:40  23   Q.   AND WE'VE ALREADY SAID -- YOU'VE SAID THAT THE RESEARCH

09:46:45  24   AND DEVELOPMENT COSTS ARE NOT DIRECTLY RELATED; CORRECT?  YOU

09:46:48  25   SAID IN YOUR REPORT THAT THE RESEARCH AND DEVELOPMENT COSTS

09:46:50   1   WERE NOT DIRECTLY RELATED TO THE INFRINGING PRODUCTS; CORRECT?

09:46:55   2   A.   YES, BECAUSE YOU CAN'T SPECIFICALLY IDENTIFY TO ONE

09:46:57   3   PRODUCT.

09:46:57   4   Q.   AND YOU AGREE WITH ME THAT NONE OF THE COSTS CAN BE

09:47:01   5   IDENTIFIED AS SPECIFIC TO THE INFRINGING PRODUCTS; CORRECT?

09:47:04   6   A.   I DID.

09:47:05   7   Q.   ALL RIGHT.

09:47:06   8        NOW, WOULD YOU ALSO AGREE WITH THIS STATEMENT:  DO YOU

09:47:12   9   AGREE THAT YOU DO NOT HAVE ANY ACCURATE INFORMATION ON THE

09:47:15  10   SPECIFIC AMOUNT THAT SAMSUNG SPENT TO DEVELOP THE ACCUSED --

09:47:19  11   THE INFRINGING PRODUCTS?

09:47:20  12   A.   I WOULD AGREE WITH THAT STATEMENT.

09:47:22  13   Q.   SO LET'S GO TO THE MARKETING EXPENSES.

09:47:27  14        ARE YOU WITH ME?

09:47:28  15   A.   I AM.

09:47:29  16   Q.   THIS IS A SUBSET OF THE SALES EXPENSES; CORRECT?

09:47:31  17   A.   AS WE'VE ALREADY SAID.

09:47:33  18   Q.   NOW, YOU DEDUCTED ABOUT HALF A BILLION DOLLARS IN SALES

09:47:36  19   EXPENSES; CORRECT?

09:47:38  20   A.   APPROXIMATELY.

09:47:38  21   Q.   AND THAT INCLUDED MARKETING EXPENSES; CORRECT?

09:47:42  22   A.   YES.

09:47:42  23   Q.   AND YOU DEDUCTED ABOUT $370 MILLION IN MARKETING EXPENSES;

09:47:47  24   CORRECT?

09:47:47  25   A.   AGAIN, APPROXIMATELY.

09:47:48   1      Q.   NOW, AGAIN, I WANT TO ASK YOU A VERY PRECISE QUESTION

09:47:53   2      GIVEN THE STANDARD WE HAVE AT ISSUE.

09:47:56   3           WOULD YOU AGREE WITH ME THAT YOU CANNOT IDENTIFY FROM

09:47:59   4      SAMSUNG'S FINANCIAL RECORDS ANY MARKETING COSTS SPECIFIC TO THE

09:48:04   5      INFRINGING PHONES?

09:48:05   6      A.   I CANNOT -- I DON'T HAVE THAT LEVEL OF DETAIL.

09:48:08   7      Q.   ALL RIGHT.  LET'S GO TO THE NEXT CATEGORY, GENERAL AND

09:48:12   8      ADMINISTRATIVE COSTS.

09:48:14   9           YOU DEDUCTED GENERAL AND ADMINISTRATIVE COSTS EXPENSES;

09:48:17   10     CORRECT?

09:48:18   11     A.   I DID.

09:48:18   12     Q.   NOW, CAN YOU TELL ME, AGAIN, WHETHER YOU AGREE OR DISAGREE

09:48:23   13     WITH THIS STATEMENT:  YOU CANNOT IDENTIFY FROM SAMSUNG'S

09:48:27   14     FINANCIAL RECORDS ANY GENERAL AND ADMINISTRATIVE COSTS SPECIFIC

09:48:33   15     TO THE INFRINGING PHONES?

09:48:35   16     A.   I CANNOT.

09:48:36   17     Q.   NOW, LET'S MOVE TO A DIFFERENT TOPIC IF WE COULD.  OKAY?

09:48:42   18          I'D LIKE TO TALK ABOUT YOUR ALLOCATION OF PROFITS TO THE

09:48:47   19     COMPONENTS.

09:48:49   20          COULD I HAVE SDX 1712 ON THE SCREEN.

09:48:56   21          NOW, MR. PRICE HAD SDX 1712 ON THE SCREEN AND YOU

09:49:02   22     IDENTIFIED THE WINDOW GLASS AS THE ARTICLE OF MANUFACTURE THAT

09:49:08   23     MR. LUCENTE IDENTIFIED; CORRECT?

09:49:10   24     A.   HE DID.

09:49:11   25     Q.   ALL RIGHT.  WE CAN AGREE THAT THE WINDOW GLASS DOES NOT

09:49:13  1      HAVE A BLACK FRONT FACE; CORRECT?

09:49:16  2      A.   IN THAT PICTURE, IT DOES NOT.

09:49:18  3      Q.   OKAY.  NOW, FOR THE 11 MILLION INFRINGING UNITS THAT WERE

09:49:27  4      SOLD, THEY WERE ALL SOLD AS PHONES; CORRECT?

09:49:30  5      A.   WELL, AGAIN, YOU'RE OVERSTATING IT.  IT'S 8.6 MILLION FOR

09:49:34  6      THE DESIGN PATENTS.

09:49:35  7      Q.   LET'S -- I ASKED YOU USING THE TOTAL NUMBER, INCLUDING THE

09:49:39  8      UTILITY PATENTS, BUT LET'S USE YOUR NUMBER.

09:49:41  9           THE NUMBER FOR THE DESIGN PATENTS IS A LITTLE BIT NORTH OF

09:49:45  10     8 MILLION; CORRECT?

09:49:46  11     A.   IT IS.

09:49:48  12     Q.   ALL OF THEM WERE SOLD AS COMPLETE PHONES; CORRECT?

09:49:53  13     A.   THEY WERE.

09:49:54  14     Q.   SAMSUNG DOES NOT SEPARATELY TRACK PROFITS ON THE SALE OF

09:49:59  15     GLASS FRONT FACES; CORRECT?

09:50:01  16     A.   THEY DO NOT.

09:50:04  17     Q.   BEZELS; CORRECT?

09:50:06  18     A.   THAT IS CORRECT.

09:50:06  19     Q.   OR DISPLAY SCREENS; CORRECT?

09:50:08  20     A.   I AGREE WITH THAT.

09:50:09  21     Q.   SO YOU COME UP WITH A METHODOLOGY TO TRY TO DETERMINE WHAT

09:50:15  22     THE TOTAL PROFITS MIGHT BE ON THOSE THREE ARTICLES OF

09:50:19  23     MANUFACTURE; CORRECT?

09:50:20  24     A.   I DID.

09:50:21  25     Q.   NOW, YOU -- YOUR STARTING POINT WAS $370 MILLION; CORRECT?

09:50:28   1      A.   YES.

09:50:28   2      Q.   AND THEN YOU TRIED TO IDENTIFY A PORTION THAT WENT TO EACH

09:50:31   3      OF THE THREE DIFFERENT ARTICLES OF MANUFACTURE?

09:50:35   4      A.   I DID.

09:50:36   5      Q.   RIGHT?  GLASS FRONT FACE; CORRECT?

09:50:38   6      A.   YES.

09:50:39   7      Q.   BEZEL; CORRECT?

09:50:41   8      A.   YES.

09:50:42   9      Q.   DISPLAY SCREEN; CORRECT?

09:50:43   10     A.   CORRECT.

09:50:45   11     Q.   INCIDENTALLY, YOU WERE HERE WHEN MR. LUCENTE HELD UP WHAT

09:50:48   12     HE CALLED A DISPLAY SCREEN?

09:50:50   13     A.   I WAS.

09:50:51   14     Q.   IT DOESN'T SHOW ANY ICONS, DOES IT?

09:50:55   15     A.   NO.

09:50:55   16     Q.   BUT THE DESIGN PATENT REQUIRES THE DISPLAY OF ICONS;

09:50:58   17     CORRECT?

09:50:59   18     A.   I BELIEVE IT DOES.

09:51:00   19     Q.   OKAY.  FAIR ENOUGH.

09:51:03   20          NOW, IF YOUR -- YOU AND MS. DAVIS DISAGREE, AS YOU TOLD

09:51:07   21     ME, UPON THE TOTAL PROFITS; CORRECT?

09:51:10   22     A.   WE DO.

09:51:10   23     Q.   IF YOUR TOTAL PROFITS NUMBER IS WRONG, THEN YOUR

09:51:15   24     $28 MILLION IS UNDERSTATED; CORRECT?

09:51:17   25     A.   IF YOU'RE ASSUMING THAT TOTAL COSTS ARE MORE THAN I'VE

09:51:21  1      CALCULATED, THAT WOULD BE TRUE.

09:51:24  2      Q.   SO, FOR INSTANCE, IF THE JURY WERE TO DETERMINE THAT

09:51:26  3      RESEARCH AND DEVELOPMENT COSTS WERE NOT DIRECTLY ATTRIBUTABLE

09:51:31  4      TO THE INFRINGING PRODUCTS OR ARTICLES OF MANUFACTURE, THEN

09:51:35  5      YOUR NUMBER WOULD BE UNDERSTATED; CORRECT?

09:51:37  6      A.   IT WOULD.

09:51:37  7      Q.   IN FACT, IF THE JURY FOUND, FOR INSTANCE, THAT GENERAL AND

09:51:42  8      ADMINISTRATIVE AND R&D WERE NOT DIRECTLY ATTRIBUTABLE, THE

09:51:48  9      TOTAL PROFITS EVEN UNDER YOUR ANALYSIS WOULD BE NORTH OF

09:51:52  10     $770 MILLION; CORRECT?

09:51:54  11            MR. PRICE:  I'M GOING TO OBJECT TO THE USE OF THE

09:51:57  12     PHRASE "DIRECTLY ATTRIBUTABLE" UNLESS YOU SAY THE ENTIRE

09:52:00  13     DEFINITION, SUCH AS --

09:52:02  14            MR. LEE:  THERE'S --

09:52:04  15     Q.   MR. WAGNER --

09:52:06  16            THE COURT:  OVERRULED.

09:52:07  17        GO AHEAD, PLEASE.

09:52:07  18            THE WITNESS:  I DON'T HAVE THOSE NUMBERS MEMORIZED,

09:52:10  19     BUT THAT SOUNDS LIKE THE RIGHT RANGE.

09:52:12  20     BY MR. LEE:

09:52:13  21     Q.   LET ME TRY TO NOT GET INTO A LEGAL ARGUMENT WITH

09:52:15  22     MR. PRICE, AND I'LL REPHRASE IT.

09:52:17  23        IF THE JURY WERE TO APPLY HER HONOR'S TEST AND DETERMINE

09:52:20  24     THAT THE RESEARCH AND DEVELOPMENT COSTS AND THE GENERAL AND

09:52:23  25     ADMINISTRATIVE COSTS WERE NOT DEDUCTIBLE, YOUR NUMBER WOULD BE

09:52:28  1    SOMEWHERE NORTH OF $770 MILLION; CORRECT?

09:52:31  2    A.   YOU KNOW, I DON'T HAVE THOSE NUMBERS MEMORIZED, BUT IT

09:52:35  3    WOULD BE SIGNIFICANTLY HIGHER AND THAT MAY BE RIGHT IF YOUR

09:52:40  4    EXPERTS HAVE MADE THAT CALCULATION.

09:52:42  5    Q.   BUT THAT'S IN THE BALLPARK; CORRECT?

09:52:44  6    A.   CERTAINLY.

09:52:47  7    Q.   AND IF THAT WERE THE STARTING POINT, THE END POINT IS

09:52:50  8    GOING TO BE HIGHER AS WELL?

09:52:52  9    A.   RIGHT.  THE JURY COULD USE A PRORATION, A DIVISION, AND

09:52:55  10   FIGURE OUT HOW TO INCREASE MY NUMBER.

09:52:57  11   Q.   SO NOW I WANT TO FIGURE OUT HOW YOU USED SOME OF THE DATA

09:53:01  12   THAT YOU HAD AND HOW MUCH OF THE DATA THAT YOU DID HAVE.  OKAY?

09:53:05  13        SO LET'S TALK ABOUT THE D'677 PATENT; CORRECT?

09:53:08  14   A.   YES.

09:53:09  15   Q.   YOU REFERRED EARLIER THIS MORNING WHEN YOU WERE TALKING TO

09:53:11  16   MR. PRICE ABOUT A BILL OF MATERIALS; CORRECT?

09:53:15  17   A.   I DID.

09:53:16  18   Q.   AND THAT'S A LIST OF PARTS OF DIFFERENT PARTS THAT MAKE UP

09:53:20  19   THE INFRINGING PHONES; CORRECT?

09:53:22  20   A.   I DID.

09:53:22  21   Q.   THAT LIST OF MATERIAL WAS A LIST OF COSTS TO SEC, THE

09:53:25  22   SAMSUNG PARENT COMPANY IN KOREA; CORRECT?

09:53:28  23   A.   IT WAS.

09:53:29  24   Q.   NOW, THE GLASS WINDOW, THE GLASS FRONT FACE WASN'T ON THAT

09:53:33  25   BILL OF MATERIALS; CORRECT?

09:53:34  1    A.   CORRECT.  IT'S PART OF THE DISPLAY ASSEMBLY, AND IT'S ONLY

09:53:37  2    THE DISPLAY ASSEMBLY THAT'S ON THE BILL OF MATERIALS.

09:53:40  3    Q.   RIGHT.  SO YOU HAD TO GO TO ANOTHER DOCUMENT; CORRECT?

09:53:42  4    A.   I DID.

09:53:43  5    Q.   LET ME BRING UP DX 4520.

09:53:53  6         MR. ANDERSON:  IT'S UNDER SEAL.

09:53:54  7         MR. LEE:  I'M SORRY.  YOUR HONOR, THIS IS IN

09:53:57  8    EVIDENCE, BUT IT'S UNDER SEAL APPARENTLY.

09:53:59  9         THE COURT:  OKAY.  SO THE PUBLIC MONITORS ARE OFF?

09:54:03  10        THE CLERK:  YES, YOUR HONOR.

09:54:04  11        THE COURT:  CAN EVERYONE MAKE SURE THAT THEIR

09:54:07  12   MONITORS ON THE TABLE AREN'T FACING THE AUDIENCE.  OKAY.  THANK

09:54:10  13   YOU.

09:54:11  14        MR. LEE:  OKAY.  MR. ANDERSON, OKAY?

09:54:14  15        THE CLERK:  AS LONG THE PROJECTOR IS DOWN.

09:54:27  16   BY MR. LEE:

09:54:27  17   Q.   DO YOU SEE DX 4520, WHICH IS IN EVIDENCE BUT UNDER SEAL?

09:54:33  18   A.   I DO.

09:54:33  19   Q.   THIS IS A PAGE FROM THE SPREADSHEET; CORRECT?

09:54:36  20   A.   YES.

09:54:37  21   Q.   NOW, THE SPREADSHEET DOESN'T HAVE DATA FOR SALES OF THE

09:54:42  22   WINDOW GLASS TO CONSUMERS; CORRECT?

09:54:45  23   A.   IT DOES NOT.

09:54:46  24   Q.   SAMSUNG NEVER SOLD THE WINDOW GLASS TO CONSUMERS; CORRECT?

09:54:50  25   A.   I HAVE NOT SEEN ANY EVIDENCE THAT THEY HAVE.

09:54:52   1    Q.   FAIR ENOUGH.

09:54:54   2         AND THE SPREADSHEET DOESN'T SHOW ANY SALES OF WINDOW

09:54:58   3    GLASS, OR THE GLASS FRONT FACE THAT'S BEEN REFERRED TO, TO ANY

09:55:02   4    EXTERNAL PARTY; CORRECT?

09:55:03   5    A.   CORRECT.

09:55:04   6    Q.   WHAT IT REALLY SHOWS ON THIS SPREADSHEET IS NUMBERS FOR

09:55:09   7    THE TRANSFER OF GLASS FRONT FACES BETWEEN DIFFERENT SAMSUNG

09:55:13   8    ENTITIES; CORRECT?

09:55:15   9    A.   IT'S THE TRANSFER AND SALE OF THOSE COMPONENTS BETWEEN

09:55:19  10    ENTITIES, YES.

09:55:20  11    Q.   NOW, DX 4520, WHICH YOU'VE RELIED UPON, DOESN'T SHOW SALES

09:55:25  12    OF GLASS FRONT FACES FOR NEW PHONES, DOES IT?

09:55:30  13    A.   NO.  THESE ARE FOR REPAIR PURPOSES.

09:55:32  14    Q.   RIGHT.  SO THIS DOCUMENT DOESN'T GIVE US ANY INFORMATION

09:55:40  15    ABOUT THE GLASS FRONT FACES THAT WERE INCLUDED IN THE 8 MILLION

09:55:44  16    INFRINGING PHONES FOR THE DESIGN PATENTS; CORRECT?

09:55:48  17    A.   IT DOES NOT.

09:55:49  18    Q.   NOW, I WANT TO FOCUS ON DX 4520, WHICH MR. PRICE PUT INTO

09:55:54  19    EVIDENCE WHEN YOU WERE ON THE STAND; CORRECT?

09:55:56  20    A.   YES.

09:55:57  21    Q.   AT THE TIME YOU WROTE YOUR REPORT, YOUR FIRST REPORT, YOU

09:56:01  22    HAD NO IDEA HOW THIS HAD BEEN CREATED; CORRECT?

09:56:04  23    A.   THAT'S CORRECT.

09:56:04  24    Q.   YOU HAD NO IDEA WHO HAD CREATED IT; CORRECT?

09:56:09  25    A.   I BELIEVE THAT'S CORRECT.

09:56:10   1    Q.   AND YOU DID NOT KNOW WHEN IT WAS CREATED; CORRECT?

09:56:13   2    A.   ALL I KNOW IS WHEN I GOT IT.  I DON'T KNOW WHEN IT WAS

09:56:19   3    CREATED.

09:56:19   4    Q.   FAIR ENOUGH.  YOU DO KNOW THAT IT WAS CREATED NOT IN THE

09:56:22   5    ORDINARY COURSE OF BUSINESS; CORRECT?

09:56:24   6    A.   CORRECT.  AGAIN, IT WAS PROVIDED TO ME BECAUSE I ASKED FOR

09:56:27   7    IT.

09:56:27   8    Q.   FAIR ENOUGH.  NOW, IT INCLUDES DATA FOR A THREE-YEAR

09:56:30   9    PERIOD; CORRECT?

09:56:31   10   A.   IT DOES.

09:56:32   11   Q.   THIRTY-SIX MONTHS; CORRECT?

09:56:34   12   A.   IT DOES.

09:56:39   13   Q.   YOU CALCULATED PROFITS ATTRIBUTABLE TO THE GLASS FRONT

09:56:42   14   FACES FOR THE PHONES FOUND TO INFRINGE THE D'677 PATENT;

09:56:45   15   CORRECT?

09:56:45   16   A.   YES.

09:56:46   17   Q.   THERE WERE TEN PHONES THAT INFRINGED THE D'677 PATENT;

09:56:52   18   CORRECT?

09:56:52   19   A.   I THOUGHT THERE WERE 12, BUT MAYBE I'M WRONG.

09:56:55   20   Q.   LET'S TAKE YOUR NUMBER OF 12.

09:56:58   21       IF YOU TOOK 3, A 3-YEAR PERIOD, THAT'S 12 MONTHS, RIGHT,

09:57:03   22   FOR 3 YEARS, 36, AND THERE WERE 12 PHONES, YOU'RE GOING TO HAVE

09:57:09   23   SOMEWHERE BETWEEN 350 AND 400 DIFFERENT DATA POINTS; CORRECT?

09:57:14   24   A.   WELL, IF REPAIR GLASS IS PURCHASED EVERY MONTH, YOU WOULD.

09:57:17   25   Q.   RIGHT.  NOW, DX 4520 ACTUALLY DOESN'T HAVE DATA FOR ALL OF

09:57:22   1    THE INFRINGING PHONES; CORRECT?

09:57:24   2    A.   CORRECT.

09:57:25   3    Q.   SO, FOR INSTANCE, IT DOESN'T HAVE ANY DATA FOR THE --

09:57:32   4    WELL, LET ME ASK YOU THIS:  DOES IT HAVE ANY DATA FOR THE

09:57:37   5    GALAXY S II EPIC, THE 4G TOUCH, THE FASCINATE, OR THE

09:57:42   6    MESMERIZE?

09:57:42   7    A.   I DON'T BELIEVE SO.

09:57:43   8    Q.   NOW, FOR THE OTHER PHONES THAT INFRINGE THE D'677 PATENT,

09:57:47   9    THIS EXHIBIT ON THE SCREEN, DX 4520, CONTAINS DATA FOR ONLY 1

09:57:53   10   MONTH OUT OF THE 36 MONTHS?

09:57:54   11   A.   THERE ARE ENOUGH OF THE PHONES THAT THERE'S ONLY A

09:57:57   12   PURCHASE OF REPAIR GLASS IN ONE MONTH IN THIS PERIOD.

09:58:01   13   Q.   SO FOR THE TOTAL OF 350 TO 400 POSSIBLE MONTHS, YOU HAD

09:58:06   14   ONE OR TWO DATA POINTS FOR THE 10 OR 12 MONTHS THAT INFRINGED

09:58:13   15   THE D'677 PATENT; CORRECT?

09:58:15   16   A.   SOME MODELS I HAD MORE AND SOME MODELS I ONLY HAD ONE OR

09:58:20   17   TWO MONTHS.

09:58:21   18   Q.   AND FOR SOME MODELS YOU HAD ZERO?

09:58:23   19   A.   I ALREADY SAID THAT.

09:58:25   20   Q.   AND IN TOTAL, FROM THE POSSIBLE 350 TO 400 MONTHS,

09:58:28   21   DEPENDING ON HOW YOU COMPUTE THE NUMBER OF MODELS, YOU HAD

09:58:33   22   ABOUT 6 DATA POINTS; CORRECT?

09:58:35   23   A.   SIX?

09:58:36   24   Q.   SIX MONTHS OF DATA?

09:58:37   25   A.   YOU MEAN FOR ONE PHONE, OR ALL PHONES?

09:58:42   1    Q.   ALL PHONES.

09:58:43   2    A.   WELL, I THINK THERE'S MORE DATA POINTS THAN THAT.  BUT IF

09:58:46   3    YOU'RE SAYING IN ONE MONTH THAT MAYBE TWO OF THE PHONES HAD

09:58:49   4    DATA POINTS, IT MIGHT BE SIX.

09:58:51   5         I DON'T KNOW WHERE THE SIX COMES FROM.

09:58:53   6    Q.   ALL RIGHT.  WE'LL COME BACK TO IT WITH MS. DAVIS, AND

09:58:55   7    WE'LL WALK HER THROUGH THE DATA YOU RELIED UPON.

09:59:01   8         THIS DOCUMENT DOESN'T CONTAIN ANY DATA FOR THE EPIC 4G

09:59:04   9    TOUCH; CORRECT?

09:59:05   10   A.   I DON'T HAVE THOSE MEMORIZED, AND THIS ISN'T THE WHOLE

09:59:08   11   THREE-YEAR PERIOD, BUT I'LL ACCEPT YOUR REPRESENTATION.

09:59:10   12   Q.   I THINK IT'S AN ACCURATE REPRESENTATION.

09:59:14   13        IT DOESN'T INCLUDE ANY INFORMATION ON THE FASCINATE;

09:59:17   14   CORRECT?

09:59:17   15   A.   I THINK THERE IS SEVEN OF THE PHONES THAT THERE'S NO DATA.

09:59:19   16   Q.   AND IF I SUGGESTED THOSE INCLUDED THE EPIC 4G, THE

09:59:22   17   FASCINATE, THE VIBRANT, WOULD THAT BE CONSISTENT WITH YOUR

09:59:25   18   MEMORY?

09:59:26   19   A.   YES, IT WOULD.

09:59:27   20   Q.   OKAY.  FOR THE CAPTIVATE, THAT'S ANOTHER INFRINGING PHONE;

09:59:32   21   CORRECT?

09:59:32   22   A.   IT IS.

09:59:33   23   Q.   THERE IS DATA FOR ONLY 1 OUT OF THE 36 MONTHS; CORRECT?

09:59:37   24   A.   I DO RECALL THAT, AND THAT IS CORRECT.

09:59:39   25   Q.   FOR THE INFUSE 4G, THAT'S ANOTHER INFRINGING PHONE;

09:59:42  1        CORRECT?

09:59:43  2        A.   IT IS.

09:59:43  3        Q.   THERE'S DATA FOR 1 OUT OF 36 MONTHS; CORRECT?

09:59:47  4        A.   I BELIEVE THAT'S CORRECT.

09:59:48  5        Q.   THE MESMERIZE IS ANOTHER INFRINGING PHONE; CORRECT?

09:59:51  6        A.   IT IS.

09:59:52  7        Q.   YOU HAD DATA FOR 1 OUT OF 36 MONTHS; CORRECT?

09:59:55  8        A.   I THINK THAT'S ACCURATE.

09:59:57  9        Q.   AND FOR THE GALAXY S II AT&T, ALSO AN INFRINGING PHONE;

10:00:04 10        CORRECT?

10:00:04 11        A.   IT IS.

10:00:05 12        Q.   AND YOU HAD 1 OUT OF 36 MONTHS; CORRECT?

10:00:09 13        A.   I BELIEVE THAT'S CORRECT.

10:00:10 14        Q.   ALL RIGHT.  NOW, MR. WAGNER, YOU CONSIDERED THE COSTS TO

10:00:17 15        SAMSUNG OF DESIGNING AROUND ALL OF THE APPLE PATENTS, ALL FIVE

10:00:22 16        OF THEM; CORRECT?

10:00:23 17        A.   I DID IN MY REPORT.

10:00:24 18        Q.   RIGHT.  AND YOU DETERMINED THAT IT WOULD HAVE TAKEN

10:00:27 19        SAMSUNG ABOUT $20,000 AND A FEW WEEKS TO DESIGN AROUND ALL FIVE

10:00:32 20        APPLE PATENTS?

10:00:33 21             MR. PRICE:  YOUR HONOR, I OBJECT.  THIS IS BEYOND THE

10:00:35 22        SCOPE.  HE'S GIVEN NO ROYALTY -- THERE'S NO DESIGN AROUND

10:00:39 23        PERIOD.

10:00:40 24             MR. LEE:  YOUR HONOR, THIS IS IN HIS REPORT.  IT GOES

10:00:42 25        DIRECTLY TO THE CREDIBILITY OF HIS OPINIONS.

10:00:43  1           MR. PRICE:  IF THEY'RE GOING TO ATTACK HIS

10:00:46  2    CREDIBILITY ON OPINIONS HE HASN'T STATED BECAUSE I DON'T WANT

10:00:48  3    TO TAKE AN HOUR AND A HALF TO GO THROUGH THOSE OPINIONS.

10:00:51  4           THE COURT:  SUSTAINED.  SUSTAINED.

10:00:52  5    BY MR. LEE:

10:00:53  6    Q.   NOW, YESTERDAY YOU TESTIFIED THAT YOU'D EXPECT R&D COSTS

10:00:56  7    FOR THE INFRINGING PHONES TO BE ROUGHLY THE SAME FOR FUTURE

10:01:00  8    PRODUCTS AS FOR THE PERIOD OF TIME DURING WHICH YOU DEDUCTED

10:01:04  9    THEM; CORRECT?

10:01:04  10   A.   I DID.

10:01:05  11   Q.   YOU HAVE SEEN THE DOCUMENTS FROM THE PERIOD -- THE SAMSUNG

10:01:11  12   INTERNAL DOCUMENTS FROM THE PERIOD BEFORE THE INFRINGING PHONES

10:01:16  13   CAME TO MARKET; CORRECT?

10:01:18  14   A.   I THINK I HAVE SOME OF THAT INFORMATION.

10:01:19  15   Q.   NOW, LET ME GO BACK, IF I COULD, TO DX 4537, WHICH

10:01:33  16   MR. PRICE HAS GONE THROUGH WITH YOU.

10:01:38  17   A.   ARE WE OFF THE PORTION THAT'S SEALED?

10:01:42  18   Q.   YES, I THINK, UNLESS SOMEONE TELLS ME I'M WRONG, I THINK

10:01:45  19   SO.

10:01:46  20       RIGHT?

10:01:46  21           MR. ANDERSON:  I'M NOT TELLING YOU.

10:01:47  22           THE COURT:  I DON'T THINK THAT DOCUMENT WAS SEALED.

10:01:49  23           MR. LEE:  I THINK WE JUST SAW IT THIS MORNING.

10:01:52  24   Q.   COULD I HAVE DX 4537.002.

10:02:02  25       DO YOU HAVE IT BEFORE YOU?

| | | |
|---|---|---|
| 10:02:03 | 1 | A.   I DO. |
| 10:02:04 | 2 | Q.   NOW, MR. WAGNER, THIS IS A DOCUMENT YOU LOOKED AT WITH |
| 10:02:09 | 3 | MR. PRICE; CORRECT? |
| 10:02:10 | 4 | A.   THAT IS CORRECT. |
| 10:02:11 | 5 | Q.   THIS IS A SUMMARY OF YOUR CALCULATIONS ON THE TOTAL |
| 10:02:15 | 6 | PROFITS ON THE ARTICLES OF MANUFACTURE THAT MR. LUCENTE AND |
| 10:02:21 | 7 | SAMSUNG HAVE IDENTIFIED; CORRECT? |
| 10:02:23 | 8 | A.   THAT IS CORRECT. |
| 10:02:24 | 9 | Q.   ON THE LEFT-HAND SIDE IS EACH PHONE ALLEGED TO INFRINGE; |
| 10:02:28 | 10 | CORRECT? |
| 10:02:29 | 11 | A.   NO. |
| 10:02:35 | 12 | Q.   EACH PHONE THAT'S IN YOUR DAMAGE ANALYSIS THAT WAS FOUND |
| 10:02:38 | 13 | TO INFRINGE? |
| 10:02:38 | 14 | A.   RIGHT. |
| 10:02:39 | 15 | Q.   FAIR ENOUGH. |
| 10:02:40 | 16 | A.   I WANT TO BE PRECISE BECAUSE YOU'RE ACCUSING -- 18 PHONES |
| 10:02:45 | 17 | WERE FOUND TO INFRINGE, BUT 2 OF THEM HAVE NO SALES. |
| 10:02:48 | 18 | Q.   FAIR ENOUGH.  SO WE'RE FOCUSSING ON THE 16 THAT HAD SALES. |
| 10:02:51 | 19 | OKAY? |
| 10:02:51 | 20 | SO THE 16 ON THE LEFT ARE THE 16 PHONES THAT WERE FOUND TO |
| 10:02:55 | 21 | INFRINGE; CORRECT? |
| 10:02:56 | 22 | A.   CORRECT. |
| 10:02:57 | 23 | Q.   NOW -- AND EACH OF THE PHONES ON THE LEFT WAS FOUND TO |
| 10:03:01 | 24 | INFRINGE ONE OF THE DESIGN PATENTS; CORRECT? |
| 10:03:03 | 25 | A.   YES. |

10:03:04   1    Q.   LET ME BRING YOU DOWN TO THE LINE THAT HAS THE CAPTIVATE;

10:03:08   2    CORRECT?  DO YOU SEE THAT?

10:03:09   3    A.   I DO.

10:03:10   4    Q.   FOR THE CAPTIVATE, SAMSUNG SOLD MORE THAN 300,000 UNITS,

10:03:17   5    INFRINGING UNITS DURING THE DAMAGES PERIOD; CORRECT?

10:03:20   6    A.   I DON'T HAVE THAT NUMBER MEMORIZED, BUT I WOULD EXPECT

10:03:22   7    THAT TO BE TRUE.

10:03:23   8    Q.   OKAY.  AND TO BE CLEAR, YOUR ANALYSIS AWARDS APPLE $0 FOR

10:03:28   9    THOSE 300,000 UNITS; CORRECT?

10:03:31   10   A.   YES.

10:03:32   11   Q.   NOW, FOR THE CONTINUUM, WHICH IS THE NEXT LINE DOWN,

10:03:36   12   SAMSUNG SOLD OVER 90,000 INFRINGING UNITS FOR THE DAMAGES

10:03:40   13   PERIOD; CORRECT?

10:03:40   14   A.   AGAIN, I DIDN'T MEMORIZE THOSE NUMBERS, BUT I ASSUME

10:03:44   15   YOU'RE TELLING ME THE NUMBERS THAT ARE IN MY REPORT AND THAT

10:03:46   16   WOULD BE TRUE.

10:03:47   17   Q.   AND YOUR DAMAGES ANALYSIS SAYS -- SUGGESTS THAT APPLE

10:03:53   18   SHOULD RECEIVE NOTHING FOR THOSE 90,000 UNITS; CORRECT?

10:03:57   19   A.   CORRECT, BECAUSE THAT PRODUCT LOST MONEY FOR SAMSUNG

10:04:00   20   DURING THE PERIOD THAT YOU CAN COLLECT DAMAGES.

10:04:03   21   Q.   SO THE FACT, ACCORDING TO YOUR ANALYSIS, THAT THE MATH

10:04:07   22   SUGGESTED THAT SAMSUNG LOST PROFITS ON THOSE ARTICLES OF

10:04:14   23   MANUFACTURE RESULTS IN APPLE GETTING 0 FOR THESE ACTS OF

10:04:19   24   INFRINGEMENT; CORRECT?

10:04:20   25   A.   YES, THAT'S CORRECT.

10:04:21  1    Q.   OKAY.  NOW, FOR THE DROID CHARGE, SAMSUNG SOLD OVER

10:04:26  2    400,000 INFRINGING UNITS IN THE DAMAGES PERIOD; CORRECT?

10:04:30  3    A.   MY SAME ANSWER, I'LL ACCEPT YOUR REPRESENTATION.

10:04:33  4    Q.   AND ACCORDING TO YOUR ANALYSIS AND MS. DAVIS, THE AMOUNT

10:04:35  5    RECEIVED FOR THESE 400,000 UNITS WAS ABOUT $187 MILLION;

10:04:41  6    CORRECT?

10:04:41  7    A.   AGAIN, IF YOU SHOW ME THE SCHEDULES, I CAN CONFIRM IT.

10:04:44  8    BUT THAT SOUNDS RIGHT.

10:04:45  9    Q.   AND YOUR NUMBER FOR DAMAGES FOR THOSE UNITS IS 0?

10:04:50  10   A.   YES.

10:04:50  11   Q.   NOW, THE GEM, WHICH IS A LITTLE FURTHER DOWN, SAMSUNG SOLD

10:04:55  12   OVER 150,000 UNITS; CORRECT?

10:04:58  13   A.   SAME ANSWER AS BEFORE.  I ASSUME THAT'S CORRECT.

10:05:02  14   Q.   IT IS.  I'VE TAKEN IT RIGHT OFF YOUR CHARTS?

10:05:05  15   A.   OKAY.

10:05:05  16   Q.   OKAY.  AND YOUR NUMBER IS 0; CORRECT?

10:05:08  17   A.   CORRECT.

10:05:09  18   Q.   SO TO BE CLEAR, ACCORDING TO THE ANALYSIS THAT LEADS YOU

10:05:12  19   TO THE $28 MILLION NUMBER, FOR ONE MILLION INFRINGING UNITS,

10:05:21  20   SAMSUNG SHOULD GET NOTHING?  I MEAN APPLE SHOULD GET NOTHING;

10:05:25  21   CORRECT?

10:05:25  22   A.   YES.

10:05:26  23   Q.   LET ME REPEAT THE QUESTION, AND I APOLOGIZE.

10:05:29  24        FOR ONE MILLION INFRINGING UNIT, ONE MILLION ACTS OF

10:05:33  25   INFRINGEMENT THAT RESULTED IN HUNDREDS OF MILLIONS OF DOLLARS,

10:05:37  1    YOUR BEST JUDGMENT IS APPLE SHOULD GET 0; CORRECT?

10:05:41  2              MR. PRICE:  YOUR HONOR, I OBJECT TO "RESULTED IN

10:05:43  3    HUNDREDS OF MILLIONS OF DOLLARS."  OF REVENUE OR PROFIT?

10:05:46  4              MR. LEE:  REVENUE.

10:05:47  5              THE COURT:  SPECIFY, PLEASE.

10:05:48  6         SUSTAINED.

10:05:49  7    BY MR. LEE:

10:05:50  8    Q.   DO YOU HAVE THAT IN MIND?  SO FOR THESE UNITS WE'VE JUST

10:05:53  9    GONE THROUGH, DO YOU HAVE THOSE IN MIND?

10:05:55  10   A.   I DO.

10:05:56  11   Q.   THERE WERE NEARLY ONE MILLION UNITS SOLD; CORRECT?

10:05:59  12   A.   YES.

10:06:00  13   Q.   THE SALE OF THE INFRINGING PRODUCTS RESULTED IN TOTAL

10:06:03  14   REVENUE OF HUNDREDS OF MILLIONS OF DOLLARS; CORRECT?

10:06:07  15   A.   I BELIEVE THAT'S CORRECT.

10:06:07  16   Q.   AND YOUR NUMBER FOR DAMAGES IS 0?

10:06:12  17   A.   UNDER THIS REMEDY, YES.

10:06:13  18   Q.   NOW, JUST A COUPLE MORE QUESTIONS, MR. WAGNER.

10:06:17  19        MR. PRICE ASKED YOU AT THE OUTSET ABOUT THE MANNER IN

10:06:20  20   WHICH YOU'RE BEING COMPENSATED.

10:06:22  21        DO YOU RECALL THAT?

10:06:23  22   A.   I DO.

10:06:23  23   Q.   AND THE NUMBER OF HOURS THAT YOU'VE SPENT ON THE PROJECT?

10:06:26  24   A.   YES.

10:06:26  25   Q.   AS OF JANUARY 31ST, YOUR FIRM HAD BEEN PAID IN EXCESS OF

10:06:33   1   $3 MILLION FOR YOUR WORK; CORRECT?

10:06:35   2   A.   YES.

10:06:35   3   Q.   AND THAT NUMBER IS HIGHER NOW BECAUSE THERE'S BEEN MORE

10:06:39   4   WORK TO GET US HERE TODAY; CORRECT?

10:06:41   5   A.   YES.

10:06:42   6        MR. LEE:  ALL RIGHT.  THANK YOU.

10:06:43   7        NOTHING FURTHER, YOUR HONOR.

10:06:44   8        THE COURT:  ALL RIGHT.  THE TIME IS 10:06.

10:06:53   9                    **REDIRECT EXAMINATION**

10:06:54  10   BY MR. PRICE:

10:06:55  11   Q.   MR. WAGNER, LET ME START WITH THE LAST QUESTION.  WERE YOU

10:06:57  12   HERE WHEN MS. DAVIS TALKED ABOUT THE TOTAL NUMBER OF HOURS THAT

10:07:01  13   SHE AND THE PRIOR FOLKS HAD WORKED ON THIS CASE?

10:07:04  14   A.   YEAH.  THERE ARE MORE HOURS THAN MY FIRM PUT IN THIS CASE.

10:07:08  15   Q.   AND I HATE TO ASK YOU THIS, BUT BETWEEN YOU AND MS. DAVIS,

10:07:12  16   WHO HAS THE HIGHER BILLING RATE?

10:07:14  17   A.   WELL, SINCE I HAVE NOT INCREASED MY BILLING RATE TO THIS

10:07:18  18   CLIENT SINCE 2011, HER RATE IS SIGNIFICANTLY HIGHER THAN MINE.

10:07:22  19   MINE IS 795 AN HOUR.  HERS IS 900.

10:07:27  20   Q.   NOW, MR. LEE ASKED YOU SEVERAL QUESTIONS ABOUT PHONES

10:07:32  21   FOUND TO INFRINGE AND WHETHER OR NOT BEZELS OR SOMETHING LIKE

10:07:37  22   THAT WERE FOUND TO INFRINGE IN THE PRIOR JURY VERDICT.

10:07:41  23        LET ME ASK YOU THIS:  IS IT YOUR UNDERSTANDING THAT THE

10:07:45  24   PRIOR JURY EXAMINED THE ISSUE OF WHAT THE ARTICLE OF

10:07:50  25   MANUFACTURE IS?

10:07:50   1      A.   THEY DID NOT.

10:07:51   2      Q.   DID THE PRIOR JURY HAVE A FOUR FACTOR TEST TO USE TO

10:07:54   3   DETERMINE THAT?

10:07:54   4      A.   THAT DIDN'T EXIST AT THAT TIME.  SO, NO, THEY DID NOT.

10:08:00   5      Q.   YOU WERE ASKED ABOUT MR. BLACKARD AND WHETHER HE FIRST SAW

10:08:03   6   THE ARTICLES OF MANUFACTURE AND SEPARATED -- YOU KNOW, IN 2017.

10:08:10   7           PRIOR TO 2017, DID THE FOUR FACTOR TEST EXIST?

10:08:15   8      A.   IT DID NOT.

10:08:16   9      Q.   IF ANYONE PRIOR TO THAT TIME HAD A CONCLUSION, "THIS IS AN

10:08:23  10   ARTICLE OF MANUFACTURE UNDER PATENT LAW," WOULD THEY HAVE BEEN

10:08:26  11   APPLYING A FOUR FACTOR TEST?

10:08:27  12      A.   NO.  IT DIDN'T EXIST AT THAT TIME.

10:08:30  13      Q.   NOW, YOU'VE BEEN -- YOU WERE ASKED A NUMBER OF QUESTIONS

10:08:33  14   WHERE MR. LEE USED THE WORD "DIRECTLY ATTRIBUTABLE."

10:08:39  15           DO YOU RECALL THAT?

10:08:40  16      A.   I DO.

10:08:41  17      Q.   AND YOU'RE AWARE OF THE JURY INSTRUCTION THAT WILL BE

10:08:43  18   GIVEN IN THIS CASE; CORRECT?

10:08:44  19      A.   I AM.

10:08:44  20      Q.   AND IS IT YOUR UNDERSTANDING THAT THAT INSTRUCTION WILL

10:08:48  21   SAY THAT EXPENSES CAN INCLUDE COSTS INCURRED IN PRODUCING THE

10:08:56  22   GROSS REVENUE, SUCH AS THE COSTS OF THE GOODS; CORRECT?

10:09:01  23      A.   YES.

10:09:02  24      Q.   AND THAT WOULD REFER TO THE COSTS OF GOODS SOLD; RIGHT?

10:09:05  25      A.   IT DOES.

10:09:05  1    Q.    AND THAT'S ALL THAT MS. DAVIS SUBTRACTS; CORRECT?

10:09:09  2    A.    THAT'S TRUE.

10:09:10  3    Q.    AND IT GOES ON TO SAY OTHER COSTS MAY BE INCLUDED AS

10:09:14  4    DEDUCTIBLE EXPENSES IF THEY ARE DIRECTLY ATTRIBUTABLE TO THE

10:09:17  5    SALE OR MANUFACTURE OF THE INFRINGING PRODUCTS RESULTING IN A

10:09:20  6    NEXUS BETWEEN THE INFRINGING PRODUCTS AND THE EXPENSES.

10:09:25  7         IS THAT THE COMPLETE SENTENCE?

10:09:26  8    A.    THAT'S MY RECOLLECTION.

10:09:27  9    Q.    ALL RIGHT.  AND IN LOOKING AT THAT CONCEPT, DO YOU HAVE,

10:09:33  10   IN YOUR PROFESSIONAL BACKGROUND, THE ABILITY TO DETERMINE

10:09:36  11   WHETHER AN EXPENSE IS SUCH THAT THERE IS A NEXUS OR A

10:09:39  12   RELATIONSHIP BETWEEN THE INFRINGING PRODUCT, BETWEEN THAT

10:09:42  13   PRODUCT AND THE EXPENSE?

10:09:43  14   A.    YES, THAT'S WHAT I DO.

10:09:45  15   Q.    SO, FOR EXAMPLE, YOU WERE ASKED SOME QUESTIONS ABOUT THE

10:09:50  16   OPERATING EXPENSES; RIGHT?

10:09:52  17   A.    I WAS.

10:09:52  18   Q.    AND YOU WERE ASKED ABOUT MARKETING EXPENSES; CORRECT?

10:09:57  19   A.    I WAS.

10:09:57  20   Q.    I MEAN, COULD YOU -- COULD YOU SAY A SPECIFIC AD, YOU

10:10:00  21   KNOW, COVERED FOUR PRODUCTS, FOR EXAMPLE?  COULD YOU SAY WHAT

10:10:03  22   THE EXPENSE OF THAT AD WAS TO A PARTICULAR PRODUCT?

10:10:07  23           MR. LEE:  YOUR HONOR, COULD WE HAVE A LITTLE LESS

10:10:09  24   LEADING?  IT'S REDIRECT, NOT CROSS.

10:10:13  25           MR. PRICE:  I'M GIVING HIM A HYPOTHETICAL.

10:10:17  1          THE COURT:  OVERRULED.

10:10:18  2          GO AHEAD, PLEASE.

10:10:20  3     BY MR. PRICE:

10:10:20  4     Q.   SO, FOR EXAMPLE, IF YOU HAD AN AD WITH FOUR PRODUCTS AND

10:10:25  5     YOU'RE TRYING TO FIGURE OUT HOW MUCH OF THAT AD, YOU KNOW, WAS

10:10:28  6     AN EXPENSE FOR ONE PRODUCT, RIGHT --

10:10:32  7     A.   I UNDERSTAND YOUR HYPOTHETICAL.

10:10:33  8     Q.   IS THERE A WAY THAT IS RECOGNIZED THAT YOU CAN RELATE THAT

10:10:42  9     EXPENSE TO THE PRODUCT?

10:10:43  10    A.   YES, AND THE MOST COMMON WAY IS TO ALLOCATE IT BASED ON

10:10:46  11    THE REVENUES OF THE FOUR PRODUCTS, AND EACH ONE OF THOSE WOULD

10:10:49  12    SHARE THE EXPENSES IN THAT RATIO.  THAT'S WHAT APPLE DOES WHEN

10:10:53  13    THEY PUT MARKETING EXPENSES ON THEIR FINANCIALS, AND THAT'S

10:10:55  14    WHAT SAMSUNG DOES.

10:10:56  15    Q.   AND IN YOUR OPINION, WOULD THERE BE THEN A COST THAT

10:11:01  16    RESULTS IN A NEXUS BETWEEN THAT PRODUCT AND THAT EXPENSE, THAT

10:11:06  17    COMMON ADVERTISING EXPENSE?

10:11:08  18    A.   YES.  OTHERWISE YOU WOULDN'T BE ATTRIBUTING ANY OF THOSE

10:11:11  19    EXPENSES TO ONE OR MORE OF THOSE PRODUCTS.

10:11:14  20    Q.   AND THOSE EXPENSES ARE, IN FACT, PAID; RIGHT?

10:11:17  21    A.   CLEARLY THEY'RE PAID.

10:11:18  22    Q.   AND ANOTHER EXAMPLE, DO YOU RECALL THE SALES PERSON

10:11:22  23    EXAMPLE THAT WE DISCUSSED WITH MS. DAVIS?

10:11:25  24    A.   I DO.

10:11:26  25    Q.   WHERE YOU HAD A SALES PERSON WHO SOLD, YOU KNOW, A TV,

10:11:29   1    TV'S AND PHONES AND YOU SOLD 50 PERCENT TV'S AND 50 PERCENT

10:11:35   2    PHONES; RIGHT?

10:11:36   3    A.   YES.

10:11:37   4    Q.   NOW, UNDER HER METHOD -- FIRST, LET ME ASK YOU, AS A

10:11:40   5    PROFESSIONAL, WOULD YOU CONCLUDE THAT THAT SALES PERSON'S

10:11:43   6    EXPENSE, YOU KNOW, WAS A, AN EXPENSE THAT WAS ATTRIBUTABLE TO

10:11:49   7    THE SALE OR MANUFACTURE OF THE INFRINGING PRODUCTS RESULTING IN

10:11:53   8    A NEXUS BETWEEN THE INFRINGING PRODUCTS AND THE EXPENSES?

10:11:56   9    A.   YES.   NEXUS IS DEFINED SIMPLY AS A CONNECTION OR A LINK

10:12:00   10   AND THERE'S CLEARLY A CONNECTION AND A LINK BETWEEN THOSE TYPES

10:12:03   11   OF COSTS AND THE REVENUES.

10:12:05   12   Q.   AND YOU HEARD MS. DAVIS SAY SHE WOULDN'T DEDUCT A PENNY OF

10:12:09   13   THAT SALES PERSON'S EXPENSE IN THAT SITUATION; CORRECT?

10:12:11   14   A.   THAT'S HER PROFESSIONAL OPINION, YES.

10:12:13   15   Q.   OR EVEN IN A SITUATION WHERE IT WAS 99 PERCENT OF PHONES

10:12:16   16   WERE SOLD AND 1 PERCENT TV'S; RIGHT?

10:12:20   17   A.   YES.

10:12:20   18   Q.   AND WHAT WOULD DO YOU IN THAT SITUATION?

10:12:22   19   A.   I WOULD ALLOCATE THEM EITHER BASED ON THE TIME THAT

10:12:25   20   SALESMAN SPENT, OR THE REVENUES OF THE PRODUCTS, OR THE UNITS

10:12:30   21   OF THE PRODUCTS.   I WOULD USE SOME APPROPRIATE AND REASONABLE

10:12:33   22   METRIC TO RELATE THOSE COSTS TO THE BUSINESS THAT WAS DONE.

10:12:37   23   Q.   AND LET'S BE CLEAR.   YOU USED THE WORD "ALLOCATE."

10:12:41   24        IF THAT COST OF GOODS CATEGORY THAT BOTH YOU AND MS. DAVIS

10:12:48   25   AGREED ON, IN THAT CATEGORY, ARE THERE ALLOCATED EXPENSES?

10:12:51  1    A.   YES, AND THAT'S WHAT'S INCONSISTENT, BECAUSE IN THE COST

10:12:54  2    OF GOODS SOLD THERE'S THREE MAIN CATEGORIES OF COSTS.  THERE'S

10:12:57  3    THE MATERIAL TO MAKE THIS BINDER.  IF THERE'S ANY LABOR

10:12:59  4    NECESSARY TO PUT THIS ALL TOGETHER, THOSE ARE DIRECT COSTS THAT

10:13:05  5    YOU CAN -- YOU KNOW THEY'RE DIRECTLY RELATED TO THIS BINDER.

10:13:09  6         BUT IN THESE TYPES OF PRODUCTS, THERE'S A LARGE

10:13:12  7    MANUFACTURING FACILITY, I'VE BEEN THERE IN GUMI, KOREA AND

10:13:16  8    THERE'S AUTOMATED PRODUCTION LINES WITH ROBOTS.  THOSE COSTS

10:13:20  9    ARE FIXED.  THEY'RE NOT GOING TO CHANGE WHETHER ONE UNIT GOES

10:13:24  10   THROUGH OR TWO DIFFERENT LINES GO THROUGH AT TWO DIFFERENT

10:13:26  11   TIMES.

10:13:27  12        BUT THOSE ARE TRUE COSTS AND THEY'RE COMMON COSTS AMONG

10:13:30  13   MANY PRODUCTS.  THOSE ARE ALLOCATED IN COST OF GOODS SOLD JUST

10:13:34  14   LIKE I'M ALLOCATING THE MARKETING, GENERAL AND ADMINISTRATIVE,

10:13:37  15   R&D AND SELLING EXPENSES.

10:13:41  16        SO IT'S ALREADY BEEN DONE TO GET TO THE STAGE THAT

10:13:43  17   MS. DAVIS GIVES TO YOU.  THERE'S NO DIFFERENCE IN WHAT I'M

10:13:46  18   DOING IN THAT PART OF THE COST OF GOODS SOLD.

10:13:49  19   Q.   LET ME ASK YOU ABOUT THE DATA.  MR. LEE ASKED YOU WHETHER

10:13:53  20   OR NOT YOU HAD SOME DIFFICULTY GETS DATA FROM SAMSUNG; CORRECT?

10:13:57  21   A.   HE DID.

10:13:58  22   Q.   AND DO YOU UNDERSTAND WHY?

10:13:59  23   A.   I HAVE A NUMBER OF REASONS WHY, YES.  I UNDERSTAND WHY.

10:14:02  24   Q.   WHAT'S YOUR UNDERSTANDING?

10:14:03  25   A.   WELL, THEY'RE PRODUCING TO ME THE MOST SENSITIVE

10:14:06  1    INFORMATION IN THE COMPANY THAT -- THEY DO NOT WANT TO PRODUCE

10:14:10  2    IT TO ANYBODY, EVEN TO THEIR OWN CONSULTANTS.  THIS IS VERY

10:14:14  3    IMPORTANT, PROPRIETARY INFORMATION.  THAT'S WHY THE COURT IS

10:14:17  4    SEALED, APPLE SEALS THE COURT AT THE TIME WHEN THEY HAVE THEIR

10:14:20  5    PRODUCT FINANCIALS DISPLAYED TO YOU.

10:14:25  6        I HAVE TO BE HONEST, THERE'S ALSO LANGUAGE PROBLEMS.  I

10:14:29  7    DON'T SPEAK KOREAN.  THERE'S TIME PROBLEMS, AND IT JUST TAKES

10:14:32  8    TIME TO GET THIS.  SO THAT'S WHY I WAS HAVING PROBLEMS.  IT'S

10:14:35  9    NOT UNEXPECTED.

10:14:37 10    Q.   NOW, IS IT YOUR UNDERSTANDING -- THE SPREADSHEET, BY THE

10:14:39 11    WAY, THAT WAS CREATED FOR THIS, THAT WAS CREATED AT YOUR

10:14:44 12    REQUEST; CORRECT?

10:14:45 13    A.   I'M THE ONE THAT ASKED SAMSUNG TO DO THAT TO HELP ME

10:14:48 14    CALCULATE THE DAMAGES IN THIS CASE.

10:14:49 15    Q.   AND WOULD YOU EXPECT THAT SPREADSHEET TO BE KEPT IN THE

10:14:53 16    ORDINARY COURSE OF BUSINESS?

10:14:55 17    A.   NO, BECAUSE, AGAIN, THE EXECUTIVES AT SAMSUNG, OR THE

10:14:59 18    EXECUTIVES AT APPLE, DON'T WANT THAT LEVEL OF GRANULARITY, THAT

10:15:03 19    LEVEL OF DETAIL OF THEIR BUSINESS.  THEY WOULD BE OVERWHELMED

10:15:07 20    WITH INFORMATION.  THEY MANAGE THEIR BUSINESS AT A MUCH HIGHER

10:15:10 21    LEVEL THAN THAT.

10:15:11 22    Q.   BUT IS THAT DATA IN THE AUDITED SAP SYSTEM, THE ACCOUNTING

10:15:17 23    SYSTEM THAT APPLE ALSO USES?

10:15:18 24    A.   IT IS.

10:15:19 25    Q.   AND DO YOU AGREE WITH MS. DAVIS THAT YOU FOUND NO EVIDENCE

10:15:22  1    THAT THE DATA CONCERNING THE OPERATING EXPENSE WAS UNRELIABLE

10:15:26  2    OR MONKEYED AROUND WITH?

10:15:28  3    A.   NO.

10:15:28  4    Q.   DO YOU AGREE THAT THERE IS NO SUCH EVIDENCE?

10:15:31  5    A.   NO, I DIDN'T SEE ANY EVIDENCE OF THAT.

10:15:39  6    Q.   BY THE WAY, YOU WERE ASKED WHETHER OR NOT THE GLASS WAS

10:15:42  7    CLEAR?

10:15:42  8    A.   I WAS.

10:15:43  9    Q.   IF YOU PUT IT AGAINST THAT DISPLAY ASSEMBLY, IS IT CLEAR?

10:15:47 10    A.   I DON'T BELIEVE SO.

10:15:48 11    Q.   IF THERE IS A LACK OF LIGHT, IS IT CLEAR?

10:15:51 12    A.   DEPENDS ON THE DEGREE OF LIGHT.

10:15:54 13    Q.   OKAY.  YOU WERE ASKED SOME QUESTIONS ABOUT THE BILL OF

10:15:56 14    MATERIALS THAT YOU USED WHICH WERE FROM THE STA, WHICH IS THE

10:16:00 15    AMERICAN SAMSUNG -- WELL, WHAT WERE THE -- I'M GOING TERRIBLE.

10:16:07 16    I'M SORRY.

10:16:07 17        YOU WERE ASKED QUESTIONS ABOUT THE GLASS COSTS.

10:16:11 18    A.   YEAH, THE STA PURCHASES OF GLASS FOR THE REPAIR PROGRAM.

10:16:15 19    Q.   AND YOU WERE ASKED QUESTIONS ABOUT, FOR EXAMPLE, THAT

10:16:21 20    SOMETIMES THERE ARE GLASSES THAT -- GLASS THAT WASN'T PURCHASED

10:16:26 21    FOR A SPECIFIC PHONE IN CERTAIN MONTHS; CORRECT?

10:16:28 22    A.   I WAS.

10:16:28 23    Q.   LET'S BE CLEAR.  WOULD YOU EXPECT GLASS NORMALLY TO BE

10:16:33 24    PURCHASED, YOU KNOW, IN SMALL AMOUNTS EACH MONTH?

10:16:36 25    A.   NO.  THIS IS A REPAIR PROGRAM AND SOMETIMES YOU DON'T NEED

10:16:40 1    A REPAIR TO A PHONE FOR YEARS AFTER IT'S PURCHASED.  SO HOW

10:16:44 2    THEY DECIDE TO KEEP THEIR INVENTORY, I WOULD NOT EXPECT THERE

10:16:48 3    TO BE PURCHASES EVERY MONTH.  THEY WOULD BUY IT PERIODICALLY.

10:16:51 4    WHEN THEY GET LOW ON INVENTORY, THEY'D MAKE ANOTHER PURCHASE.

10:16:57 5    Q.   AND HOW MANY UNITS DO YOU HAVE IN EXHIBIT 4520?  HOW MANY

10:17:01 6    UNITS OF GLASS WERE PURCHASED?

10:17:02 7    A.   THERE'S 258,000 PURCHASES OF INDIVIDUAL PIECES OF GLASS.

10:17:07 8    Q.   AND I THINK YOU TOLD US YOU, YOU FOUND THAT THE COST OF

10:17:10 9    THAT GLASS WAS BETWEEN $3 AND $5?

10:17:12 10   A.   RIGHT, AND I LOOKED TO SEE IF THERE'S ANY TRENDS.  IS IT

10:17:15 11   INCREASING OVER TIME, IS IT DECREASING OVER TIME, IS IT PRETTY

10:17:20 12   STABLE, AND I FOUND THAT IT WAS.

10:17:21 13   Q.   AND --

10:17:22 14   A.   AND FOR ALL OF THE GLASS THAT I HAD FOR PHONES, THEY ALL

10:17:25 15   WERE THE SAME RANGE OF PRICE.

10:17:27 16   Q.   AND ARE YOU AWARE OF ANY OPINION OR DATA THAT THE GLASS

10:17:33 17   COSTS THAT YOU USED WAS TOO LOW?

10:17:36 18   A.   NO.  IN FACT, BASED ON MY PROFESSIONAL JUDGMENT, IT'S

10:17:40 19   PROBABLY HIGH, AND I'LL TELL YOU WHY.  WHEN YOU'RE BUYING EIGHT

10:17:44 20   MILLION PIECES OF GLASS VERSUS 258,000, THERE'S SOMETHING

10:17:48 21   CALLED QUANTITY DISCOUNTS.  WHEN YOU BUY A LOT, YOU NORMALLY

10:17:51 22   GET A BETTER PRICE.

10:17:53 23        SO ACTUALLY, THE DATA SET THAT I HAD I THINK WOULD

10:17:56 24   OVERSTATE THE GLASS COST, NOT UNDERSTATE IT.

10:17:59 25   Q.   AND IN MS. DAVIS'S REPORTS, DID SHE SAY WHAT YOU CAME UP

10:18:04  1    WITH, THE FIGURES THAT YOU CAME UP WITH FOR THE COST OF THIS

10:18:08  2    GLASS WAS TOO LOW?

10:18:08  3    A.   I DON'T RECALL HER ADDRESSING THAT ISSUE.  SHE SHOULD HAVE

10:18:11  4    TO TELL YOU THAT, NOT ME.

10:18:13  5    Q.   SO FINALLY, LET ME ASK YOU ABOUT EXHIBIT 4537.002.  AND

10:18:21  6    YOUR UNDERSTANDING IN THIS CASE IS THAT IF THERE IS

10:18:24  7    INFRINGEMENT OF A DESIGN PATENT, THAT APPLE IS ENTITLED TO THE

10:18:28  8    TOTAL PROFITS OF --

10:18:30  9    A.   I BELIEVE THAT'S WHAT THEY'RE ENTITLED TO.

10:18:32  10   Q.   AND IF THERE ARE NO PROFITS ON THE PHONE, THEN WHAT WOULD

10:18:37  11   THEY BE ENTITLED TO IF THERE ARE NO PROFITS?

10:18:40  12   A.   NO PROFITS, THEY COULD SEEK ANOTHER REMEDY IF THEY WANTED

10:18:44  13   FOR THAT ITEM.  BUT THERE'S NO PROFITS TO DISGORGE.

10:18:47  14   Q.   SO LET ME ASK YOU IN THIS CALCULATION, YOU FOUND THAT WITH

10:18:51  15   RESPECT TO SOME PHONES, THERE WASN'T -- THERE WERE, IN FACT,

10:18:54  16   LOSSES; CORRECT?

10:18:55  17   A.   RIGHT, BECAUSE OF WHERE THEY WERE IN THEIR PRODUCT

10:18:57  18   LIFECYCLE.

10:18:58  19   Q.   AND WHAT DO YOU MEAN BY WHERE THEY WERE IN THEIR PRODUCT

10:19:01  20   LIFECYCLE?

10:19:02  21   A.   AGAIN, I THINK MOST OF YOU REALIZE THAT MOST PHONES ARE

10:19:05  22   ACTUALLY REALLY ABOUT A YEAR BEFORE THEY'RE REPLACED WITH THE

10:19:08  23   NEXT MODEL.

10:19:09  24       WHENEVER YOU BUY A PHONE, WITHIN A YEAR, THERE'S A NEWER,

10:19:12  25   BRIGHTER, BETTER PHONE FOR YOU TO BUY.  SO THEY GO THROUGH THIS

10:19:16   1        LIFECYCLE VERY QUICKLY.

10:19:18   2             BUT USUALLY WHEN THE GREATEST DEMAND FOR THE PHONE EXISTS

10:19:21   3        IS WHEN THEY'RE A BRAND NEW PHONE, AND THEY HAVE THE BEST

10:19:25   4        TECHNOLOGY, THEY SELL FOR A HIGHER PRICE.  SO THEY NORMALLY

10:19:28   5        MAKE MOST OF THEIR PROFIT RIGHT UPFRONT.  BUT THEN OVER TIME

10:19:31   6        THEY MAKE LESS PROFIT AND SOME OF THEM MAKE LOSSES.

10:19:35   7        Q.   SO LET ME ASK YOU, IN DOING THESE CALCULATIONS, IF THERE

10:19:38   8        WAS A LOSS, IF THERE WAS A NEGATIVE NUMBER WITH RESPECT TO A

10:19:41   9        PHONE, DID YOU SUBTRACT THAT FROM THE OVERALL PROFITS AND

10:19:46   10       REDUCE YOUR PROFIT FIGURE?

10:19:48   11       A.   I DIDN'T EITHER FOR THE ARTICLE OF MANUFACTURE PROFIT OR

10:19:52   12       THE TOTAL PROFIT ON THE PHONE.

10:19:54   13       Q.   IF YOU HAD DONE THAT, WOULD THE PROFIT FIGURES BE LOWER?

10:19:57   14       A.   THEY WOULD.

10:19:57   15       Q.   APPROXIMATELY HOW MUCH?

10:19:59   16       A.   YOU KNOW, I DON'T HAVE THAT MEMORIZED.

10:20:03   17            MR. PRICE:  OKAY.  NOTHING FURTHER, YOUR HONOR.

10:20:05   18            THE COURT:  ALL RIGHT.  THE TIME IS 10:19.

10:20:10   19       ANY FURTHER --

10:20:12   20            MR. LEE:  JUST VERY BRIEFLY, IF THAT'S ALL RIGHT,

10:20:15   21       YOUR HONOR.

10:20:15   22            THE COURT:  ALL RIGHT.

10:20:15   23            MR. LEE:  AND WE'LL FINISH BEFORE THE BREAK.

10:20:18   24            THE COURT:  TIME IS 10:20.  GO AHEAD, PLEASE.

10:20:21   25       ///

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 10:20:21 | 1  | **RECROSS-EXAMINATION**                                      |
| 10:20:22 | 2  | BY MR. LEE:                                                   |
| 10:20:22 | 3  | Q.   MR. WAGNER, I WANT TO GO BACK TO WHAT MR. PRICE COVERED |
| 10:20:25 | 4  | AND MAYBE I CAN GET YOU AND MS. DAVIS ON THE SAME PAGE AND   |
| 10:20:28 | 5  | MAYBE WE'LL SAVE OURSELVES SOME TESTIMONY.                   |
| 10:20:30 | 6  | ON THIS QUESTION OF THE DATA POINTS FOR THE NOTICE PERIOD,   |
| 10:20:34 | 7  | DO YOU RECALL THAT?                                          |
| 10:20:34 | 8  | A.   I DO.                                                   |
| 10:20:35 | 9  | Q.   AND YOU AND I DISCUSSED IT; CORRECT?                    |
| 10:20:37 | 10 | A.   WE DID.                                                 |
| 10:20:38 | 11 | Q.   AND YOU DISCUSSED IT WITH MR. PRICE; CORRECT?           |
| 10:20:40 | 12 | A.   WE DID.                                                 |
| 10:20:41 | 13 | Q.   IF I CAN SUMMARIZE, FOR SOME PRODUCTS, YOU HAD NO DATA  |
| 10:20:44 | 14 | POINTS; CORRECT?                                             |
| 10:20:44 | 15 | A.   ARE YOU TALKING ABOUT THE STA REPLACEMENT GLASS?       |
| 10:20:47 | 16 | Q.   YES.                                                    |
| 10:20:48 | 17 | A.   YES, THAT'S TRUE.                                       |
| 10:20:49 | 18 | Q.   AND FOR SOME PRODUCTS YOU HAD A COUPLE DATA POINTS;     |
| 10:20:51 | 19 | CORRECT?                                                     |
| 10:20:52 | 20 | A.   I AGREE.                                                |
| 10:20:52 | 21 | Q.   AND FOR SOME PRODUCT, YOU HAD A FEW; CORRECT?           |
| 10:20:55 | 22 | A.   THAT'S FAIR.                                            |
| 10:20:56 | 23 | Q.   BUT THE UNIVERSE OF POTENTIAL DATA POINTS WAS SOMEWHERE |
| 10:21:01 | 24 | BETWEEN 350 AND 400?                                         |
| 10:21:03 | 25 | A.   THAT WAS THE POTENTIAL, I AGREE.                        |

10:21:04  1    Q.   OKAY.  NOW, LET ME ASK YOU ABOUT MR. PRICE'S QUESTIONS

10:21:08  2    ABOUT DIRECTLY ATTRIBUTABLE, AND I WANT TO READ YOU THE FULL

10:21:12  3    SENTENCE TO BE SURE WE'RE ALL ON THE SAME PAGE.  "OTHER COSTS

10:21:15  4    MAY BE INCLUDED AS DEDUCTIBLE EXPENSES IF THEY ARE DIRECTLY

10:21:20  5    ATTRIBUTABLE TO THE SALE OR MANUFACTURE OF THE INFRINGING

10:21:22  6    PRODUCTS RESULTING IN A NEXUS BETWEEN THE INFRINGING PRODUCTS

10:21:25  7    AND THE EXPENSES."

10:21:26  8        DO YOU HAVE THAT IN MIND?

10:21:28  9    A.   I DO.

10:21:29  10   Q.   AND YOU WERE FAMILIAR WITH THAT STANDARD WHEN YOU PREPARED

10:21:31  11   YOUR REPORTS; CORRECT?

10:21:32  12   A.   I BELIEVE THOSE PRELIMINARY INSTRUCTIONS EXISTED AT THAT

10:21:35  13   TIME, YES.

10:21:36  14   Q.   AND SO WHEN YOU GAVE -- WHEN YOU WROTE IN YOUR REPORT THAT

10:21:41  15   FOR GENERAL AND ADMINISTRATIVE, MARKETING AND RESEARCH AND

10:21:44  16   DEVELOPMENT, THEY WERE NOT DIRECTLY RELATED, YOU KNEW ABOUT

10:21:48  17   THIS STANDARD; CORRECT?

10:21:49  18   A.   I DID, AND THAT'S WHAT I SAID.

10:21:50  19   Q.   AND WHEN YOU GAVE YOUR TESTIMONY THAT THESE THREE

10:21:54  20   CATEGORIES OF EXPENSES WERE NOT SPECIFICALLY RELATED TO THE

10:21:58  21   INFRINGING PRODUCTS, YOU HAD THAT IN MIND; CORRECT?

10:22:01  22   A.   I DID.

10:22:01  23   Q.   COULD I HAVE EXHIBIT 783.003 ON THE SCREEN, PLEASE.  I'M

10:22:08  24   SORRY.  MY APOLOGIES, YOUR HONOR.  781.003.  IT'S IN EVIDENCE

10:22:14  25   ALREADY?

10:22:14   1              THE COURT:  ALL RIGHT.  IT'S NOT SEALED?

10:22:15   2              MR. LEE:  NOT SEALED.

10:22:16   3              THE COURT:  OKAY.  GO AHEAD, PLEASE.

10:22:17   4    BY MR. LEE:

10:22:21   5    Q.   AND WE'LL GET IT ON THE SCREEN FOR YOU, MR. WAGNER.

10:22:23   6    A.   THAT'S WHAT I'M WAITING FOR.

10:22:25   7    Q.   OKAY.  ME, TOO.

10:22:30   8         HERE WE GO.  GOT IT?

10:22:32   9    A.   I DO.

10:22:32  10    Q.   NOW, THIS IS THE VERSION OF YOUR ANALYSIS THAT GETS YOU TO

10:22:38  11    THE $370 MILLION NUMBER; CORRECT?

10:22:41  12    A.   IT IS.

10:22:42  13    Q.   I JUST WANT TO ASK YOU A FEW FINAL QUESTIONS.

10:22:45  14         FOR --

10:22:46  15         COULD I APPROACH, YOUR HONOR?

10:22:48  16              THE COURT:  GO AHEAD, PLEASE.

10:22:49  17    BY MR. LEE:

10:22:49  18    Q.   IF THE ARTICLE OF MANUFACTURE IS THE ENTIRE PHONE, FOR THE

10:22:54  19    CAPTIVATE, THE CONTINUUM, THE ANDROID CHARGE, AND THE GEM, YOUR

10:23:04  20    NUMBER IS STILL 0; CORRECT?

10:23:07  21    A.   IT IS.

10:23:07  22    Q.   NOW, WITH THIS CHART ON THE SCREEN, IF THE JURY CONCLUDES

10:23:12  23    THAT THE ARTICLE OF MANUFACTURE IS THE PHONE AS SOLD, YOU

10:23:20  24    WOULD -- THE FLOOR IS $370 MILLION ACCORDING TO YOU; CORRECT?

10:23:25  25    A.   WELL, IT'S THE --

10:23:26   1    Q.   THAT'S YOUR NUMBER?

10:23:27   2    A.   THAT'S MY NUMBER.   THERE COULD BE A LOWER FLOOR, BUT I

10:23:30   3    HAVE NOT SUBTRACTED THE LOSSES.

10:23:32   4    Q.   OKAY.   AND IF THE JURY CONCLUDES THAT R&D AND GENERAL AND

10:23:38   5    ADMINISTRATIVE ARE NOT DIRECTLY ATTRIBUTABLE TO THE SALE OR

10:23:41   6    MANUFACTURE OF THE INFRINGING PRODUCTS RESULTING IN A NEXUS,

10:23:45   7    THAT NUMBER AT THE BOTTOM WOULD BE SOMEWHERE NORTH OF

10:23:49   8    $700 MILLION; CORRECT?

10:23:50   9    A.   I ALREADY TOLD YOU THAT, AND I'LL SAY IT AGAIN.   YES.

10:23:54  10    Q.   YEAH.   YOU STAND BY THAT; CORRECT?

10:23:55  11    A.   I DO.

10:23:56  12    Q.   AND IF THEY DECIDE THAT ALL THREE CATEGORIES, NOT ALL

10:23:59  13    SALES, JUST MARKETING, GENERAL AND ADMINISTRATIVE, AND --

10:24:05  14    A.   R&D?

10:24:08  15    Q.   -- R&D ARE NOT DIRECTLY ATTRIBUTABLE ACCORDING TO THAT

10:24:11  16    SENTENCE, OR NOT DIRECTLY RELATED ACCORDING TO YOU, THE NUMBER

10:24:15  17    WOULD BE MS. DAVIS'S NUMBER; CORRECT?

10:24:17  18    A.   YES.

10:24:17  19          MR. LEE:   OKAY.   THANK YOU.

10:24:19  20    NOTHING FURTHER, YOUR HONOR.

10:24:19  21          THE COURT:   ALL RIGHT.   TIME IS 10:24.

10:24:24  22    IS THERE ANY FURTHER REDIRECT?

10:24:25  23          MR. PRICE:   NO, YOUR HONOR.

10:24:26  24          THE COURT:   ALL RIGHT.   MAY THIS WITNESS BE EXCUSED,

10:24:28  25    AND IS IT SUBJECT TO RECALL OR NOT SUBJECT TO RECALL.

10:24:30  1          MR. LEE:  NOT SUBJECT TO RECALL, YOUR HONOR.

10:24:32  2          MR. PRICE:  YOUR HONOR, I WOULD LIKE TO HAVE THE

10:24:35  3    OPTION OF HAVING HIM SUBJECT TO RECALL.

10:24:37  4          THE COURT:  THAT'S FINE, I'LL HAVE HIM SUBJECT TO

10:24:39  5    RECALL.  SO YOU MAY STEP DOWN, BUT YOU MAY NOT HAVE NECESSARILY

10:24:42  6    COMPLETED YOUR TRIAL TESTIMONY.

10:24:44  7       LET'S GO UNTIL 10:30 AND THEN TAKE OUR BREAK.

10:24:47  8       DO YOU HAVE ANY FURTHER WITNESSES?

10:24:53  9          MR. PRICE:  I KNOW THE ANSWER FOR ME, THAT'S WHY I

10:24:56  10   WAS LOOKING HERE.

10:24:57  11      DO YOU HAVE ANY?

10:24:59  12      (LAUGHTER.)

10:24:59  13         MR. PRICE:  NO, YOUR HONOR, WE HAVE NO FURTHER

10:25:01  14   WITNESSES.

10:25:01  15         THE COURT:  ALL RIGHT.  AND THE PARTIES HAVE RESERVED

10:25:03  16   THEIR RULE 50 MOTIONS, SO --

10:25:05  17         MR. LEE:  SO SAMSUNG HAS RESTED?

10:25:07  18         THE COURT:  THEY HAVE RESTED.

10:25:08  19         MR. LEE:  APPLE RESTS, YOUR HONOR.

10:25:09  20         THE COURT:  OKAY.  THEN -- YOU MAY STEP DOWN.

10:25:15  21         THE WITNESS:  THANK YOU, YOUR HONOR.

10:25:16  22         THE COURT:  ALL RIGHT.  SO YOU HAVE HEARD ALL OF THE

10:25:19  23   EVIDENCE PORTION OF THE CASE.  YOU WILL HAVE FINAL JURY

10:25:26  24   INSTRUCTIONS READ TO YOU, AND THEN YOU'LL HAVE CLOSING

10:25:29  25   ARGUMENTS, AND THEN YOU CAN BEGIN DELIBERATING.

10:25:32 1        WE WILL NEED SOME TIME TO FINALIZE THOSE FINAL JURY

10:25:36 2   INSTRUCTIONS, SO -- IF YOU WOULDN'T MIND, LET'S TAKE OUR BREAK

10:25:44 3   BECAUSE I WILL HAVE A BETTER SENSE OF HOW LONG THAT WILL TAKE

10:25:48 4   IF I CAN JUST REVIEW SOME DOCUMENTS THAT WERE PROBABLY FILED AT

10:25:52 5   10:00 O'CLOCK TODAY.

10:25:53 6        SO LET'S JUST TAKE A 15 MINUTE BREAK FOR NOW, AND THEN

10:25:56 7   I'LL HAVE A BETTER SENSE OF HOW MUCH TIME WE NEED.  OKAY?

10:26:21 8        (JURY OUT AT 10:26 A.M.)

10:26:21 9           THE COURT:  OKAY.  THE RECORD SHOULD REFLECT THE

10:26:26 10  JURORS HAVE LEFT THE COURTROOM.

10:26:28 11       I'D LIKE TO GO AND REVIEW THE OBJECTIONS THAT YOU FILED TO

10:26:31 12  THE JURY INSTRUCTIONS.  THAT WILL GIVE ME A BETTER SENSE OF HOW

10:26:34 13  LONG A BREAK I WILL NEED.

10:26:36 14       BUT I WOULD LIKE TO HANDLE THE CLOSINGS TOGETHER IN THE

10:26:46 15  AFTERNOON AND NOT HAVE IT BROKEN UP BY LUNCH, SO IF POSSIBLE,

10:26:50 16  I'D LIKE TO SEE IF WE COULD AT LEAST READ THE FINAL JURY

10:26:53 17  INSTRUCTIONS AND THEN LEAVE AFTER LUNCH FOR CLOSINGS.

10:26:56 18       IS THAT ACCEPTABLE IF WE CAN DO THAT FAIRLY QUICKLY?

10:26:59 19          MR. LEE:  IT IS FOR APPLE, YOUR HONOR.

10:27:00 20          MS. MAROULIS:  YES, YOUR HONOR.

10:27:01 21          THE COURT:  IS THAT ACCEPTABLE FOR SAMSUNG?

10:27:03 22          MR. QUINN:  YES, YOUR HONOR.

10:27:03 23          THE COURT:  OKAY.  LET'S TAKE A BREAK NOW.  LET ME GO

10:27:06 24  LOOK AT THE OBJECTIONS.

10:27:07 25          MR. QUINN:  YOUR HONOR --

10:27:08   1          THE COURT:  LET ME ASK, I DON'T WANT TO TAKE UP TIME

10:27:10   2    THAT YOU NEED TO PREPARE FOR CLOSINGS.  IS THE SAME PEOPLE WHO

10:27:13   3    ARE DOING CLOSINGS THAT NEED TO BE HERE FOR RULE 50 ARGUMENT.

10:27:16   4          MR. LEE:  NO.  MR. SELWYN IS GOING TO COVER THE RULE

10:27:20   5    50 ARGUMENTS FOR US.

10:27:21   6          MS. MAROULIS:  MS. SULLIVAN WILL COVER THE JMOL'S.

10:27:24   7          THE COURT:  BECAUSE OTHERWISE I WOULD CONTINUE THAT

10:27:27   8    UNTIL AFTER CLOSINGS IF YOU NEEDED OVERLAPPING PEOPLE, BUT IF

10:27:30   9    THAT'S NOT AN ISSUE.

10:27:31   10          MR. LEE:  IT'S NOT.

10:27:31   11          MR. QUINN:  IT'S NOT AN ISSUE, YOUR HONOR.

10:27:33   12          THE COURT:  OKAY.  LET'S FOCUS ON FINAL JURY

10:27:35   13    INSTRUCTIONS, AND THEN WE CAN DO RULE 50'S, AND WE CAN HAVE THE

10:27:39   14    FOLKS WHO ARE WORKING ON CLOSING THEN GO AND PREPARE.  OKAY.

10:27:43   15          MR. QUINN:  YOUR HONOR, IN TERMS OF THE TIME ON THE

10:27:45   16    CLOSING.

10:27:45   17          THE COURT:  IT WAS ONE HOUR PER SIDE.

10:27:47   18          MR. QUINN:  NO, BUT TO START.  WOULD IT BE POSSIBLE

10:27:49   19    TO START AT 2:00 O'CLOCK?  OR --

10:27:52   20          THE COURT:  HMM.  MY ONLY CONCERN IS THAT WE NEED TO

10:27:56   21    HAVE BREAKS, AND SO I'D LIKE TO START, IF POSSIBLE, AT -- WELL,

10:28:00   22    IT DEPENDS ON IF I CAN READ THE FINAL JURY INSTRUCTIONS AND YOU

10:28:04   23    JUST HAVE THE AFTERNOON, WE COULD START MAYBE 1:30.  WOULD

10:28:07   24    THAT -- BUT IF I HAVEN'T READ THE JURY INSTRUCTIONS YET, THEN I

10:28:11   25    THINK I'D LIKE TO START AT 1:00 BECAUSE WE NEED TO GET IT DONE

10:28:14   1      THIS AFTERNOON, AND I SHOULDN'T PUSH PAST 4:30.

10:28:18   2              MR. QUINN:  OKAY.  UNDERSTOOD, YOUR HONOR.

10:28:20   3              THE COURT:  ALL RIGHT.  THANK YOU.  LET'S TAKE OUR

10:28:21   4      BREAK NOW.  LET ME GO LOOK AT THE OBJECTIONS.

10:28:24   5              THE CLERK:  COURT'S IN RECESS.

10:28:27   6          (RECESS FROM 10:28 A.M. UNTIL 10:55 A.M.)

10:56:12   7          (JURY OUT AT 10:56 A.M.)

10:56:13   8              THE COURT:  OKAY.  GOOD MORNING AND WELCOME BACK.

10:56:28   9          SO THERE'S ONLY A DISPUTE AS TO -- YOU'VE PRESERVED YOUR

10:56:31  10      OBJECTIONS TO THE REST OF THE INSTRUCTIONS -- AS TO NUMBER 33.

10:56:35  11          SO I WANTED TO TALK WITH THE PARTIES ABOUT THIS.

10:56:40  12          MR. WAGNER'S CALCULATION ACTUALLY DETERMINED SAMSUNG'S

10:56:44  13      PROFITS ON EACH OF SAMSUNG'S ARTICLE OF MANUFACTURE AND HE

10:56:50  14      DEDUCTS OUT ANY OVERLAP, BECAUSE AS I SAID IN THE SENTENCE --

10:56:55  15      THE REVISED TENTATIVE INSTRUCTIONS FILED LAST NIGHT THAT WE

10:56:58  16      CAN'T DOUBLE COUNT THAT GLASS FRONT FACE, WHICH IS IN TWO

10:57:02  17      DIFFERENT ARTICLES OF MANUFACTURE.

10:57:04  18          SO HE DOES BACK THAT OUT IN HIS CALCULATION, SO I DO THINK

10:57:07  19      IT IS APPROPRIATE TO HAVE SAMSUNG'S PROFITS ON EACH OF THE

10:57:12  20      ARTICLES OF MANUFACTURE.

10:57:16  21          BUT I GUESS THE QUESTION HERE IS WHAT DO WE SAY ABOUT THE

10:57:20  22      REASONABLE ROYALTY?

10:57:21  23          SO WHAT APPLE HAS PROPOSED IN ECF 3781-1 I GUESS IS

10:57:28  24      TECHNICALLY TRUE, "FOR ANY SALE OF AN INFRINGING PHONE WHERE

10:57:32  25      YOU AWARD A REASONABLE ROYALTY FOR UTILITY PATENT INFRINGEMENT,

10:57:36  1    YOU MAY INCLUDE ROYALTY AMOUNTS FOR EACH UTILITY PATENT

10:57:40  2    INFRINGED BY THE PHONE."  BUT APPLE'S EVIDENCE IS THAT YOU

10:57:43  3    DON'T GET -- WELL, I GUESS YOU WOULD ONLY GET REASONABLE

10:57:47  4    ROYALTY FOR BOTH UTILITY PATENTS IF THERE WERE NO SAMSUNG

10:57:53  5    PROFITS AWARDED ON THE PATENT THAT OVERLAPS; CORRECT?

10:57:57  6        MR. LEE:  THAT'S CORRECT.

10:57:58  7        THE COURT:  AND I'M WONDERING IF WE SHOULD SPELL THAT

10:58:01  8    OUT OR WHETHER THAT WOULD BE -- I MEAN, I WOULD PROPOSE ADDING

10:58:05  9    SOMETHING ALONG THE LINES OF, "IF YOU DO NOT AWARD SAMSUNG'S

10:58:10  10   PROFITS" -- OR "IF YOU DO NOT AWARD DESIGN PATENT DAMAGES, YOU

10:58:18  11   MAY AWARD A REASONABLE ROYALTY FOR UTILITY PATENT

10:58:23  12   INFRINGEMENT."

10:58:23  13       AND I GUESS THERE'S NO NUMBER THAT'S EVEN BEEN PROVIDED IN

10:58:28  14   THE EVENT THAT NO DESIGN PATENT DAMAGES ARE AWARDED FOR THAT --

10:58:35  15   FOR THE PRODUCTS THAT BOTH INFRINGE THAT ONE UTILITY PATENT AND

10:58:41  16   THE DESIGN PATENTS.

10:58:42  17       DO YOU WANT TO BE HEARD ON THAT?  DO YOU SEE WHAT I'M --

10:58:45  18   DO YOU SEE THE ISSUE THAT WE HAVE?  WHAT DO YOU THINK WE SHOULD

10:58:47  19   DO?

10:58:48  20       I'M FINE WITH APPLE'S PROPOSED INSTRUCTION, BUT I THINK

10:58:51  21   THAT LAST PARAGRAPH NEEDS WORK.

10:58:53  22       MS. SULLIVAN:  WE AGREE, YOUR HONOR.  WE SUPPORT THE

10:58:57  23   COURT INSTRUCTING THAT THEY CAN'T STACK A UTILITY PATENT

10:59:02  24   ROYALTY AWARD ON TOP OF A DESIGN PATENT PROFIT AWARD.

10:59:06  25       AND IF YOU WANT TO MAKE THAT EXPLICIT, WE WOULD BE

10:59:09  1      HAPPY -- OF COURSE, WE THINK OUR LANGUAGE IS BIT MORE NEUTRAL

10:59:12  2      IN OUR PROPOSED INSTRUCTION ON PAGE 1 OF DOCKET 3780.

10:59:17  3              THE COURT:  BUT MY CONCERN WITH YOUR LANGUAGE IS YOUR

10:59:19  4      LANGUAGE SAYS THAT YOU CAN'T EVEN GET SAMSUNG'S PROFITS ON ALL

10:59:23  5      THE DIFFERENT ARTICLES OF MANUFACTURE, THAT YOU ONLY GET THE

10:59:26  6      ONE AWARD, WHICH I THINK IS NOT ACCURATE, EITHER.

10:59:30  7              LET ME ASK, THERE IS THE SENTENCE IN PARAGRAPH 2 OF

10:59:34  8      APPLE'S INSTRUCTION THAT SAYS, YOU KNOW, "IF YOU AWARD PROFITS

10:59:39  9      ON THE WHOLE PHONE, YOU MAY NOT AWARD ANY FURTHER AMOUNTS FOR

10:59:42 10      THAT SAME SALE, EITHER FOR INFRINGEMENT OF ANOTHER DESIGN

10:59:46 11      PATENT OR FOR INFRINGEMENT OF ANY UTILITY PATENT."

10:59:50 12          SO THAT ALREADY PROVIDES NOTICE THAT YOU CAN'T DO THE

10:59:53 13      STACKING ON SAMSUNG PROFITS ON THE WHOLE PHONE PLUS UTILITY

11:00:02 14      PATENT REASONABLE ROYALTY.

11:00:05 15          SO DO WE EVEN NEED THAT FOURTH PARAGRAPH?

11:00:08 16          ONE OPTION WOULD BE TO JUST DELETE THAT FOURTH PARAGRAPH.

11:00:12 17          BUT WE HAVEN'T REALLY PROVIDED THE JURY INSTRUCTIONS ON

11:00:17 18      WHAT HAPPENS IF YOU FIND THAT APPLE HAS NOT SATISFIED ITS

11:00:24 19      BURDEN TO GET INFRINGER'S PROFITS AT ALL.

11:00:28 20              MS. SULLIVAN:  CORRECT.

11:00:29 21              THE COURT:  RIGHT?  THEN YOU WOULD ONLY GET THE

11:00:31 22      REASONABLE ROYALTY, AND THERE'S NO EVIDENCE PROVIDED AS TO WHAT

11:00:34 23      SHOULD BE THE REASONABLE ROYALTY FOR WHICH -- I APOLOGIZE.

11:00:42 24      WHICH IS THE ONE THAT -- THE '381 IS THE $5 MILLION NUMBER?

11:00:46 25              MS. SULLIVAN:  THAT'S RIGHT, YOUR HONOR.

11:00:48  1          MR. LEE:  THERE'S ACTUALLY EVIDENCE, YOUR HONOR, FROM

11:00:50  2   MS. DAVIS THAT THE $2.02 IS A REASONABLE ROYALTY FOR BOTH

11:00:54  3   PATENTS.

11:00:54  4          THE COURT:  OH, THAT'S CORRECT.

11:00:55  5          MR. LEE:  AND THEN WHAT SHE SAID IS THERE IS AN

11:00:57  6   OVERLAP IN HER ANALYSIS WITH THE '381 UNITS, SO IT'S ONLY THE

11:01:02  7   '163 UNITS THAT GET THE $2.02 ROYALTY.

11:01:08  8          THE COURT:  OKAY.  OKAY.  YOU'RE RIGHT.  I'M SORRY.

11:01:11  9   I'D FORGOTTEN THAT THAT EVIDENCE HAD BEEN ADMITTED DURING THE

11:01:16  10  TRIAL.

11:01:17  11      SO THERE IS EVIDENCE THEN TO AWARD TWO UTILITY PATENT

11:01:23  12  REASONABLE ROYALTIES.

11:01:25  13      WELL, LET ME ASK MR. LEE, ARE YOU -- IF WE ADDED SOMETHING

11:01:29  14  THAT SAID "IF YOU DO NOT AWARD DESIGN PATENT DAMAGES, YOU MAY

11:01:36  15  AWARD A REASONABLE ROYALTY FOR UTILITY PATENT INFRINGEMENT FOR

11:01:39  16  ANY SALE OF AN INFRINGING PHONE, AND YOU MAY INCLUDE ROYALTY

11:01:43  17  AMOUNTS FOR EACH UTILITY PATENT INFRINGED BY THE PHONE."

11:01:48  18      WOULD YOU OBJECT TO THAT?

11:02:01  19          MR. LEE:  I THINK -- CAN I JUST HAVE A SECOND, YOUR

11:02:04  20  HONOR.

11:02:04  21          THE COURT:  YES, YES, OR IF YOU HAVE ALTERNATIVE --

11:02:07  22          MS. SULLIVAN:  SAMSUNG WOULD BE FINE WITH THAT, YOUR

11:02:10  23  HONOR.  WE THINK IT WOULD BE HELPFUL.

11:02:11  24      THE ONLY REQUEST, YOUR HONOR, WOULD BE THAT YOU USE THE

11:02:13  25  TERM "DESIGN PATENT PROFIT" TO AVOID CONFUSION BECAUSE

11:02:17  1    REASONABLE ROYALTY IS OUT OF THE CASE.  SO DESIGN PATENT PROFIT

11:02:20  2    IS THE ONLY 289 REMEDY THAT'S LEFT.

11:02:22  3         THE COURT:  I AGREE, BUT I THOUGHT IT MIGHT BE

11:02:24  4    CLEARER TO THEM THAT IF THEY DON'T AWARD ANYTHING ON THE --

11:02:28  5    ANYTHING ON THE -- FOR THE DESIGN PATENT INFRINGEMENT, THEN --

11:02:33  6    WHAT DO YOU THINK?  OR WHAT'S YOUR PROPOSAL?

11:02:35  7         DO YOU SEE MY CONCERN WITH THIS?  IT'S A LITTLE BIT

11:02:38  8    UNCLEAR WHETHER YOU CAN STILL AWARD A REASONABLE ROYALTY WITH

11:02:46  9    SAMSUNG PROFITS IN THIS LAST PARAGRAPH OF YOUR PROPOSED

11:02:49  10   INSTRUCTION NUMBER 32.

11:02:53  11        MS. SULLIVAN:  YOUR HONOR, I WONDER IF YOU COULD WORK

11:02:55  12   WITH OUR FIRST SENTENCE AND INSERT SOME OF THE LANGUAGE YOU

11:02:58  13   SUGGESTED, I'M SORRY, OUR -- YES, OUR FIRST PROPOSED SENTENCE.

11:03:02  14        THE COURT:  WELL, THE FORM OF REMEDY IS NOT CLEAR,

11:03:06  15   AND I THINK THAT COULD CONFUSE THE JURY WHERE THEY MIGHT THINK,

11:03:09  16   OH, I CAN ONLY GIVE INFRINGER'S PROFITS ON ONE ARTICLE OF

11:03:12  17   MANUFACTURE FOR EACH GIVEN UNIT OR SALE, AND I DON'T THINK

11:03:15  18   THAT'S TRUE AND THAT'S NOT CONSISTENT WITH MR. WAGNER'S DAMAGES

11:03:19  19   PROPOSAL.

11:03:20  20        MS. SULLIVAN:  I APOLOGIZE, YOUR HONOR.  I WAS REALLY

11:03:23  21   MEANING TO REFER YOU TO OUR SECOND SENTENCE IN THE FIRST

11:03:25  22   PARAGRAPH, "IF YOU CHOOSE TO AWARD ANY AMOUNT OF SAMSUNG'S

11:03:29  23   DESIGN PATENT PROFIT FOR A PARTICULAR UNIT OR SALE, YOU MAY NOT

11:03:32  24   ALSO AWARD A REASONABLE ROYALTY FOR THAT SAME UNIT," AND

11:03:37  25   VICE-VERSA.

11:03:38   1          THE COURT:  I'M SORRY.  I'M LOOKING AT ECF 3780,

11:03:42   2    WHICH YOU FILED TODAY, AND MY PAGE 1 OF YOUR PROPOSED

11:03:46   3    INSTRUCTION LOOKS DIFFERENT.  I'M WONDERING IF I MAY NOT HAVE

11:03:48   4    THE RIGHT DOCKET.

11:03:50   5          MS. SULLIVAN:  IT IS THE SAME DOCUMENT, YOUR.

11:03:50   6          THE COURT:  OKAY.

11:03:52   7          MS. SULLIVAN:  HONOR.  I'M ON 3780, PAGE 1, LINE 16,

11:03:56   8    SECOND SENTENCE.  THE "IF YOU CHOOSE" SENTENCE, AND I WOULD --

11:04:03   9    I JUST ADDED SOME WORDS THAT YOUR HONOR WANTED TO USE TO MAKE

11:04:06  10    IT CLEAR, THAT YOU MODIFY --

11:04:09  11          THE COURT:  I'M NOT SURE I AGREE WITH THAT, RIGHT?  I

11:04:11  12    MEAN, YOU'RE SAYING -- LET'S SAY THEY ONLY AWARD SAMSUNG

11:04:15  13    PROFITS ON THE DISPLAY SCREEN OR JUST THE BEZEL AND THE GLASS

11:04:20  14    FRONT FACE.

11:04:21  15       I'M NOT PERSUADED THAT THEY CANNOT AWARD REASONABLE

11:04:25  16    ROYALTY FOR THE BOUNCEBACK OR THE TAP TO ZOOM.  I'M NOT

11:04:31  17    PERSUADED THAT THAT IS A LEGALLY ACCURATE STATEMENT.

11:04:34  18          MS. SULLIVAN:  AND, YOUR HONOR, WE ARGUE THAT

11:04:36  19    CATALINA LIGHTING WOULD REQUIRE THAT ANTI-STACKING PRINCIPLE

11:04:41  20    AND HASN'T BEEN OVERRULED BY THE FEDERAL CIRCUIT EN BANC OR BY

11:04:44  21    THE SUPREME COURT.

11:04:45  22       SO WITH CATALINA LIGHTING VERSUS LAMPS PLUS AS THE LAW,

11:04:49  23    THERE CAN'T BE STACKING BETWEEN THE 284 AND THE 289 REMEDIES.

11:04:52  24       WE ARE NOT DISAGREEING WITH YOUR HONOR'S ORDER FOR PRESENT

11:04:56  25    PURPOSES.  WE PRESERVE OBJECTION.  BUT WE ARE ALLOWING MULTIPLE

11:05:00  1    COMPONENT AWARDS AS LONG LOCK AS YOU DON'T AWARD ANYTHING ON

11:05:02  2    THE SAME COMPONENT TWICE.  THAT'S OUR SECOND PARAGRAPH.

11:05:05  3            THE COURT:  WELL, I -- YOU KNOW, IT'S THE SAME THING

11:05:08  4    WHERE YOU KEEP ASSERTING THAT ANY QUESTION ASKED BY A JUDGE IS

11:05:11  5    A HEARING AND A RULING.  WHAT I FILED LAST NIGHT WAS JUST A

11:05:15  6    REQUEST FOR BRIEFING.

11:05:17  7            MS. SULLIVAN:  UNDERSTOOD, YOUR HONOR.

11:05:18  8            THE COURT:  AND YOUR DOCUMENT SAYS IT REFLECTS THE

11:05:21  9    COURT'S RULING LAST NIGHT TO WHICH WE OBJECT.

11:05:23  10       THAT WAS NOT A RULING.  THAT WAS A REQUEST FOR INFORMATION

11:05:25  11   AND BRIEFING.  YOU KNOW, MAYBE FOR APPELLATE PURPOSES IT HELPS

11:05:28  12   TO SAY, WELL, WE WERE FORCED TO INTRODUCE THIS INSTRUCTION

11:05:31  13   BECAUSE THE COURT HAD ALREADY RULED ON THE ISSUE.

11:05:34  14       BUT THAT WASN'T A RULING.

11:05:36  15       ALL RIGHT.  LET ME HEAR FROM MR. LEE, PLEASE.

11:05:39  16            MR. LEE:  YOUR HONOR, THE REASON I'M STRUGGLING, I'M

11:05:41  17   TRYING TO PARSE THIS THROUGH, AND MAYBE WE CAN DO IT

11:05:43  18   COLLECTIVELY, I'M WONDERING WHETHER, ON THE PRESENT RECORD,

11:05:46  19   GIVEN WHAT MR. WAGNER HAS GIVEN AS HIS $28 MILLION NUMBER, AND

11:05:53  20   THE UTILITY PATENT DAMAGES, I WONDER IF A VERSION OF

11:06:01  21   MS. SULLIVAN'S SENTENCE -- WHILE I UNDERSTAND THIS WOULD NOT

11:06:05  22   NECESSARILY APPLY IN ALL CIRCUMSTANCES, IT MAY FIT WITH THE

11:06:08  23   EVIDENCE HERE, AND I THINK, MS. SULLIVAN, YOU'RE FOCUSSING ON

11:06:11  24   THE SECOND SENTENCE OF THE FIRST PARAGRAPH.

11:06:13  25            MS. SULLIVAN:  CORRECT, MR. LEE.

1197

| | |
|---|---|
| 11:06:16 | 1 |

```
11:06:16   1              MR. LEE:  SO IF YOU CHOOSE TO AWARD ANY AMOUNT OF

11:06:18   2   SAMSUNG'S PROFIT FOR A PARTICULAR UNIT OR SALE, YOU MAY NOT

11:06:21   3   ALSO AWARD A REASONABLE ROYALTY FOR THAT UNIT, PERIOD.

11:06:25   4         THAT MIGHT DO IT BECAUSE AS A PRACTICAL MATTER, GIVEN

11:06:28   5   MR. WAGNER'S $28 MILLION NUMBER AND THE SUBSET THAT IS COVERED

11:06:34   6   BY THE '381 AND THE '163, THE LIKELIHOOD THAT THEY'RE EVEN

11:06:39   7   USING HIS ANALYSIS AWARDING DAMAGES -- LOST PROFITS DAMAGES,

11:06:45   8   TOTAL PROFIT DAMAGES, THAT WON'T BE GREATER THAN UTILITY

11:06:52   9   REASONABLE ROYALTY IS PRETTY REMOTE, I THINK.  I THINK THAT'S

11:06:56  10   CORRECT.

11:06:56  11              THE COURT:  SO YOU'RE FINE WITH THAT?

11:06:57  12              MR. LEE:  WELL, I WOULD TAKE OUT THE DEVICE FIRST.

11:07:01  13   DEVICE FIRST SUGGESTS YOU GO BACK AND FORTH.

11:07:03  14         WHAT I'M TRYING TO DO IS SUGGEST SOMETHING THAT CONFORMS

11:07:05  15   TO THE RECORD THAT YOUR HONOR HAS WITH MS. DAVIS AND MR. WAGNER

11:07:09  16   AND THE RELATIVE NUMBER OF UNITS AND AMOUNT FOR THE UTILITY

11:07:16  17   DESIGN PATENTS.

11:07:16  18         SO I THINK IF YOU TOOK THAT SENTENCE AND JUST STOPPED IT

11:07:19  19   AT UNIT, PERIOD.  THE VICE-VERSA PROBLEM IS I DON'T KNOW IF IT

11:07:24  20   WORKS VICE-VERSA ON THE RECORD THAT WE ALL HAVE NOW.

11:07:27  21         BUT I THINK WE ALL AGREE THAT THE LIKELIHOOD IS ANYTHING

11:07:31  22   THAT WOULD BE AWARDED AS UNDER HIS ANALYSIS, THE $28 MILLION

11:07:35  23   NUMBER, FOR THOSE PATENTS THAT OVERLAP IS GOING TO BE GREATER

11:07:39  24   THAN OUR $2.02 NUMBER FOR THOSE UTILITY PATENT INFRINGEMENT.

11:07:46  25              THE COURT:  ALL RIGHT.  IF YOU'RE FINE WITH DOING IT,
```

11:07:48  1    THAT'S FINE WITH ME.  SO YOU'LL SAY -- STRIKE THE FOURTH

11:07:51  2    PARAGRAPH OF INSTRUCTION NUMBER 32 AND JUST SAY, "IF YOU CHOOSE

11:07:55  3    TO AWARD ANY AMOUNT OF SAMSUNG'S PROFIT FOR A PARTICULAR" --

11:08:03  4    NOW, ABOVE WE JUST SAY "SALE."

11:08:06  5        DO YOU WANT TO SAY "UNIT" OR "SALE"?  ARE THOSE NOT

11:08:09  6    SYNONYMOUS?

11:08:10  7            MR. LEE:  I THINK A PARTICULAR SALE IS FINE.

11:08:13  8            THE COURT:  YOU MAY NOT ALSO AWARD A REASONABLE

11:08:16  9    ROYALTY FOR THAT SAME SALE, OR FOR THAT SALE.

11:08:19  10           MR. LEE:  YES.

11:08:20  11           MS. SULLIVAN:  THAT'S FINE.

11:08:21  12           THE COURT:  AND, MS. SULLIVAN, IS SAMSUNG FINE WITH

11:08:24  13   THAT?

11:08:25  14           MS. SULLIVAN:  YES, YOUR HONOR.

11:08:25  15           THE COURT:  OKAY.  SO THEN WE'LL STRIKE THAT FOURTH

11:08:29  16   PARAGRAPH, ADD THAT, AND THEN I THINK WE'RE DONE.

11:08:31  17       EVERYONE HAS PRESERVED THEIR OBJECTIONS TO ALL THE OTHER

11:08:34  18   INSTRUCTIONS THAT ARE INCLUDED AND ARE NOT INCLUDED; CORRECT?

11:08:37  19           MR. LEE:  CORRECT.

11:08:38  20           MS. SULLIVAN:  YOUR HONOR --

11:08:39  21           THE COURT:  OKAY.  WERE YOU OKAY WITH THE FIRST THREE

11:08:41  22   PARAGRAPHS OF APPLE'S PROPOSED INSTRUCTION, THAT WAS THEIR

11:08:44  23   EXHIBIT A TO ECF 3781-1, WITH THE NOW INCLUSION OF YOUR SECOND

11:08:50  24   SENTENCE OF YOUR FIRST PARAGRAPH?

11:08:51  25           MS. SULLIVAN:  YOUR HONOR, COULD YOU JUST READ TO ME

11:08:54  1    AGAIN WHERE YOU HAVE INSERTED THAT?

11:08:55  2              THE COURT:  SURE.

11:08:56  3              MR. LEE:  IT'S RIGHT HERE.

11:08:57  4              THE COURT:  I CAN ALSO READ THE WHOLE PARAGRAPH.  WHY

11:08:59  5    DON'T I JUST READ THE WHOLE INSTRUCTION.

11:09:01  6              MS. SULLIVAN:  YES, THAT WOULD BE GREAT.

11:09:02  7              THE COURT:  OKAY.  "YOU SHOULD AWARD ANY REMEDY TO

11:09:05  8    WHICH APPLE HAS PROVEN IT IS ENTITLED WITH RESPECT TO EACH SALE

11:09:09  9    OF AN INFRINGING PHONE, EXCEPT THAT YOU SHOULD NOT AWARD MORE

11:09:16  10   THAN ONE FORM OF MONETARY RECOVERY FOR ANY GIVEN SALE."

11:09:23  11        I MEAN, I THINK "FORM OF MONETARY RECOVERY" IS AMBIGUOUS

11:09:28  12   BECAUSE THAT COULD MEAN THAT YOU CAN'T AWARD MORE THAN ONE

11:09:31  13   INFRINGER'S PROFIT AWARD EVEN IF YOU ADOPT SAMSUNG'S ARTICLES

11:09:38  14   OF MANUFACTURE.  I THINK THAT COULD BE AMBIGUOUS, BUT IF APPLE

11:09:42  15   IS FINE WITH IT, I'M FINE WITH IT.

11:09:44  16              MR. LEE:  WE'RE FINE WITH IT.

11:09:45  17              THE COURT:  OKAY.  "IF YOU DETERMINE, FOR A GIVEN

11:09:48  18    SALE OF AN INFRINGING PHONE, THAT SAMSUNG APPLIED ONE OF

11:09:51  19    APPLE'S PATENTED DESIGNS TO THE WHOLE PHONE, THEN APPLE IS

11:09:55  20    ENTITLED TO THE TOTAL PROFIT ON THE PHONE.

11:09:59  21        "IN THAT CASE, YOU MAY NOT AWARD ANY FURTHER AMOUNT FOR

11:10:03  22   THAT SAME SALE, EITHER FOR INFRINGEMENT OF ANOTHER DESIGN

11:10:07  23   PATENT OR FOR INFRINGEMENT OF ANY UTILITY PATENT.

11:10:12  24        "IF YOU DETERMINE, FOR A GIVEN SALE OF AN INFRINGING

11:10:16  25   PHONE, THAT SAMSUNG APPLIED APPLE'S PATENTED DESIGNS TO THE

11:10:19  1    COMPONENTS THAT SAMSUNG ALLEGES ARE THE ARTICLES OF

11:10:24  2    MANUFACTURE, YOU MAY AWARD APPLE TOTAL PROFITS ON MULTIPLE

11:10:28  3    COMPONENTS, BUT NOT ON THE SAME COMPONENT TWICE."

11:10:32  4         SO THAT HOPEFULLY TAKES CARE OF THE FRONT GLASS ISSUE.

11:10:39  5         "IF YOU CHOOSE TO AWARD ANY AMOUNT OF SAMSUNG'S PROFIT FOR

11:10:44  6    A PARTICULAR SALE, YOU MAY NOT ALSO AWARD A REASONABLE ROYALTY

11:10:50  7    FOR THAT SALE."

11:10:52  8         IS THAT ACCEPTABLE?

11:10:53  9              MR. LEE:  YES.

11:10:54  10             MS. SULLIVAN:  YOUR HONOR, THAT'S FINE WITH SAMSUNG.

11:11:10  11             THE COURT:  IS THAT FINE?  OKAY.

11:11:12  12        THEN I THINK WHAT I WILL DO, I WAS ORIGINALLY PLANNING TO

11:11:15  13   FILE A THIRD REVISED TENTATIVE FINAL JURY INSTRUCTION, BUT IF I

11:11:24  14   HAVE YOUR AGREEMENT ON THAT, WOULD IT BE OKAY IF WE THEN JUST

11:11:27  15   FILE THE FINAL?

11:11:28  16             MR. LEE:  YES.

11:11:29  17             THE COURT:  OKAY.

11:11:31  18             MS. SULLIVAN:  YOUR HONOR, THERE'S JUST ONE LAST

11:11:34  19   CURATIVE INSTRUCTION ISSUE I'D LIKE TO RAISE WITH YOUR HONOR

11:11:37  20   BEFORE YOU DO THAT.

11:11:37  21             THE COURT:  OKAY.

11:11:38  22             MS. SULLIVAN:  OTHERWISE YOUR PROPOSAL IS FINE WITH

11:11:41  23   SAMSUNG.

11:11:41  24             THE COURT:  OKAY.

11:11:42  25             MS. SULLIVAN:  I'M TAKING MY CUE FROM MR. LEE

11:11:45  1       YESTERDAY WHEN HE WAS CONCERNED ABOUT ADDING A THIRD STEP TO

11:11:47  2   YOUR HONOR'S ANALYSIS, AND WE'RE CONCERNED THAT APPLE MAY HAVE

11:11:50  3   ADDED A THIRD STEP TO THE FACTOR 4 ANALYSIS.

11:11:55  4       AND IN PARTICULAR WE'RE CONCERNED THAT YOUR INSTRUCTION ON

11:11:59  5   FACTOR 4 IS THAT THE DESIGN PERTAINS TO THE ARTICLE, AND YET

11:12:04  6   WE'VE HEARD A LOT OF TESTIMONY THAT EVEN IF A DESIGN PERTAINS

11:12:08  7   TO A COMPONENT, YOU NEED OTHER PARTS OF THE PHONE TO MAKE THAT

11:12:13  8   OPERATIVE.  FOR EXAMPLE, WITH THE '305, YOU NEED TO HAVE THE

11:12:17  9   DISPLAY SCREEN PLUGGED INTO A POWER SOURCE AND SO FORTH.

11:12:20 10       THE COURT:  UM-HUM.

11:12:21 11       MS. SULLIVAN:  SO WE'RE A LITTLE CONCERNED THAT

11:12:23 12   THERE'S A KIND OF THIRD STEP THAT'S BEEN ADDED.

11:12:26 13       THE PROPOSAL WOULD BE TO ADD AN INSTRUCTION ABOUT FACTOR 4

11:12:30 14   THAT CAUTIONS THE JURY AS FOLLOWS:  "AS I HAVE INSTRUCTED YOU,

11:12:34 15   UNDER FACTOR 4, YOU MUST CONSIDER WHETHER THE PATENTED --" I'M

11:12:39 16   SORRY, MR. LEE (HANDING).

11:12:41 17       "AS I HAVE INSTRUCTED YOU, UNDER FACTOR 4, YOU MUST

11:12:45 18   CONSIDER WHETHER THE PATENTED DESIGN PERTAINS TO OR IS EMBODIED

11:12:48 19   IN A COMPONENT THAT IS SEPARABLE FROM THE REMAINDER OF THE

11:12:52 20   PRODUCT.

11:12:52 21       "TO DECIDE THIS, YOU MUST FIRST CONSIDER WHETHER THE

11:12:55 22   DESIGN PERTAINS TO OR IS EMBODIED IN A COMPONENT OF THE PRODUCT

11:12:58 23   THAT IS SOLD.

11:12:59 24       "IF YOU FIND THAT IT DOES, YOU MUST DECIDE WHETHER THAT

11:13:02 25   COMPONENT IS SEPARABLE FROM THE REMAINDER OF THE PRODUCT.

11:13:06   1              "IT IS NOT RELEVANT WHETHER THAT COMPONENT CONTINUES TO

11:13:09   2       EMBODY THE PATENTED DESIGN AFTER IT IS SEPARATED FROM THE

11:13:12   3       PRODUCT AND YOU SHOULD NOT CONSIDER THAT QUESTION."

11:13:14   4           I'M OPEN TO WORDSMITH, YOUR HONOR.  I'M HAPPY TO HAND UP

11:13:19   5       THE DRAFT IF THAT WOULD BE HELPFUL TO YOUR HONOR.

11:13:21   6              THE COURT:  OKAY.  I'M INTERESTED IN HEARING WHAT

11:13:23   7        MR. LEE -- HAVE YOU SEEN IT?

11:13:24   8              MR. LEE:  NO.

11:13:25   9              THE COURT:  OKAY.  MAYBE YOU SHOULD SEE IT.

11:13:28  10              MR. LEE:  I'VE GOT IT NOW.  MS. SULLIVAN GAVE ME A

11:13:30  11        COPY.

11:13:30  12              THE COURT:  OKAY.

11:13:31  13              MR. LEE:  CHANGING FACTOR 4 NOW AFTER ALL THE

11:13:35  14       WITNESSES HAVE TESTIFIED TO THE FACTORS THAT WERE ARTICULATED

11:13:38  15       BY YOUR HONOR WOULD BE VERY PREJUDICIAL, COULD BE PREJUDICIAL

11:13:41  16       TO BOTH PARTIES, BUT THIS ONE IS PARTICULARLY PREJUDICIAL

11:13:44  17       BECAUSE IT'S SETTING FORTH THEIR ARGUMENT AS OPPOSED TO THE

11:13:46  18       ARGUMENT THAT MR. BALL AND DR. KARE MADE.

11:13:50  19           AS YOUR HONOR SAID YESTERDAY WHEN YOU WERE REFERRING TO,

11:13:54  20       WE WERE DISCUSSING THE PHYSICAL RELATIONSHIP PORTION, WHICH IS

11:13:56  21       THE LEAD IN, I DON'T THINK WE -- I DON'T THINK IT'S THE RIGHT

11:14:00  22       USE OF JURY INSTRUCTIONS TO CHANGE THE TEST AFTER PEOPLE HAVE

11:14:05  23       TESTIFIED TO IT AND PARTICULARLY TO HAVE IT CONFORM TO ONE

11:14:12  24       PARTY'S -- WHAT'S THE RIGHT WAY? -- ARTICULATION THROUGH THEIR

11:14:16  25       EXPERTS OF HOW IT SHOULD BE PURSUED.

1203

11:14:18   1          THIS IS JUST THEIR ARGUMENT.  AND JUST AS YOUR HONOR

11:14:21   2     SUGGESTED TO US THAT WE SHOULD ARGUE THE ISSUE OF UNDERMINING

11:14:25   3     THE VERDICT, THEY CAN ARGUE THIS.

11:14:27   4          BUT MR. BALL AND DR. KARE TESTIFIED TO THE FACTORS AS

11:14:31   5     DEFINED BY YOUR HONOR, SO DID MR. LUCENTE JUST YESTERDAY.

11:14:35   6          I DON'T THINK WE NEED TO CHANGE IT NOW.

11:14:38   7          MS. SULLIVAN:  YOUR HONOR, IT'S A CURATIVE

11:14:39   8     INSTRUCTION IN RESPONSE TO THE EVIDENCE AS IT'S BEEN PRESENTED,

11:14:43   9     AND WE THINK THE EVIDENCE WAS PRESENTED IN A WAY THAT DID NOT

11:14:47   10    PERTAIN TO YOUR INSTRUCTION AS WRITTEN.  THE INSTRUCTION

11:14:52   11    PERTAINS TO.  IT'S NOT PERTAINS TO IN COMBINATION WITH OTHER

11:14:55   12    PARTS OF THE PHONE.

11:14:57   13         SO IT'S A -- I'M PROPOSING IT AS A CURATIVE INSTRUCTION IN

11:15:01   14    LIGHT OF THE EVIDENCE, YOUR HONOR.  I APPRECIATE THE POINT THAT

11:15:03   15    THE HOUR IS LATE.  I JUST WANT TO MAKE SURE THAT WE ELIMINATE

11:15:07   16    ANY LEGAL ERROR WE CAN FROM THE CASE.

11:15:08   17         MR. LEE:  YOUR HONOR, CURATIVE INSTRUCTIONS ARE MOST

11:15:11   18    OFTEN GIVEN WHEN SOMEONE HAS OBJECTED OVER THE COURSE OF THE

11:15:15   19    EVIDENCE, OR AT LEAST RAISED THE ISSUE WITH YOUR HONOR ON A

11:15:17   20    TIMELY BASIS.

11:15:18   21         IF THIS WERE THE CONCERN, MR. BALL AND DR. KARE TESTIFIED,

11:15:23   22    I THINK, ON TUESDAY.  MAYBE TUESDAY AFTERNOON AND WEDNESDAY.

11:15:28   23         IF THERE WAS A CONCERN THAT THE TEST WAS NOT BEING

11:15:32   24    CORRECTLY REPRESENTED OR DEFINED DURING THE COURSE OF THEIR

11:15:37   25    TESTIMONY, THAT'S THE TIME TO OBJECT AND ASK FOR A CURATIVE

INSTRUCTION.

IT'S NOT AFTER EVERYBODY HAS RESTED.

AND IT'S PARTICULARLY NOT WHEN THIS MIGHT BE DR. LUCENTE'S THEORY, I'M NOT QUITE SURE ACTUALLY, BUT THIS IS CERTAINLY NOT OUR THEORY, AND I THINK YOUR HONOR'S WORDS ARE WHAT YOUR HONOR'S WORDS WERE, AND WE'VE ALL LIVED WITH THEM THROUGHOUT THE FOUR DAYS OF EVIDENCE, AND THAT'S WHAT SHOULD GOVERN.

THE COURT:  ALL RIGHT.  WELL, THAT REQUEST IS DENIED.

WHAT I'D LIKE TO DO IS TO FILE THE FINAL JURY INSTRUCTIONS AND TO INSTRUCT THE JURY BEFORE LUNCH, THEN TAKE AN EXTENDED LUNCH BREAK.

MY CONCERN IS IF WE END UP HAVING INTERRUPTIONS, AS WE DID IN OPENING, IT'S GOING TO TAKE LONGER THAN THE TIME ALLOTTED, PLUS NORMALLY SCHEDULED BREAKS.  SO THAT'S WHY I DON'T WANT TO WAIT UNTIL 2:00.

SO I'D LIKE TO HAVE US COME BACK THEN AT 1:30 FOR CLOSING. CAN WE DO THAT?  OKAY?

MR. PRICE:  YOUR HONOR, THAT'S FINE.  AND ADDRESSING YOUR ISSUE ABOUT OBJECTING DURING CLOSING, WE DON'T WANT TO DO THAT, SO I'D LIKE TO BRING UP ONE ISSUE THAT I THINK WILL BE IMPERMISSIBLE ARGUMENT.

THE COURT:  OKAY.

MR. PRICE:  DO YOU REMEMBER MR. LEE ASKED --

THE COURT:  CAN I ASK YOU A QUICK QUESTION.  CAN WE GET THIS JURY OUT?  THEY'VE BEEN WAITING FOR 45 MINUTES.  IT'S

1205

| | |
|---|---|
| 11:17:08 | 1 |
| 11:17:11 | 2 |
| 11:17:15 | 3 |
| 11:17:17 | 4 |
| 11:17:18 | 5 |
| 11:17:22 | 6 |
| 11:17:26 | 7 |
| 11:17:27 | 8 |
| 11:17:27 | 9 |
| 11:17:29 | 10 |
| 11:17:33 | 11 |
| 11:17:36 | 12 |
| 11:17:39 | 13 |
| 11:17:41 | 14 |
| 11:17:41 | 15 |
| 11:17:43 | 16 |
| 11:17:47 | 17 |
| 11:17:50 | 18 |
| 11:17:53 | 19 |
| 11:17:57 | 20 |
| 11:18:01 | 21 |
| 11:18:04 | 22 |
| 11:18:07 | 23 |
| 11:18:09 | 24 |
| 11:18:22 | 25 |

11:15.  SO WHAT I'D LIKE TO DO IS GET THE FINAL JURY

INSTRUCTIONS, PREINSTRUCT THEM, AND THEN SEND THEM OFF FOR A

LONGER LUNCH BREAK AND THEN PERHAPS WE CAN TAKE CARE OF THESE

ISSUES.

NOW, I APOLOGIZE, BECAUSE NOW THIS WILL BE THE THIRD TIME

I AM POSTPONING OUR RULE 50 ARGUMENT, BUT WOULD IT BE OKAY IF

WE DID THAT AFTER CLOSING?

MS. SULLIVAN:  YES, YOUR HONOR.

THE COURT:  OKAY.  THANK YOU.  AND I HAVE BEEN NOTING

EACH TIME -- ACTUALLY, I'M NOT SURE IF I NOTED IT THE VERY LAST

TIME.  BUT I HAVE NOTICED AFTER APPLE'S CASE AND AFTER

SAMSUNG'S CASE THAT IT WAS PRESERVED.  ACTUALLY, YOU DIDN'T

HAVE A REBUTTAL CASE, SO THAT WAS IT.

MR. LEE:  RIGHT.

THE COURT:  SO THAT'S CERTAINLY PRESERVED.

LET ME GO THEN AND MAKE THIS LAST CHANGE, FILE THE FINAL,

AND LET'S GET THE JURY OUT HERE AND THEN SEND THEM OFF TO

LUNCH, OKAY?  AND THEN WE'LL TAKE CARE OF ANY -- I ALSO DON'T

WANT ANY OBJECTIONS, AND THIS IS ARGUMENT WHICH I THINK IS MUCH

MORE FREE WHEELING, NOT THAT I'M ENCOURAGING ANYONE TO CROSS

THE LINE, BUT ARGUMENT IS MUCH MORE FREE WHEELING THAN

STATEMENTS.  SO LET ME TAKE CARE OF THIS, LET'S GET OUR JURY

INSTRUCTED, AND SEND THEM OFF TO LUNCH.

THE CLERK:  COURT'S IN RECESS.

(RECESS FROM 11:18 A.M. UNTIL 11:38 A.M.)

```
11:38:36   1              THE COURT:  OKAY.  WELCOME BACK.

11:38:38   2         HAVE YOU HAD A CHANCE TO LOOK AT THE FINAL INSTRUCTIONS?

11:38:40   3         PLEASE TAKE A SEAT.

11:38:42   4         DID THEY LOOK OKAY?

11:38:43   5         THERE WERE A COUPLE -- 28, 30, 32 WERE SOMETIMES WE SAY

11:38:50   6    PROFIT SINGULAR, SOMETIMES PLURAL WITHIN THE SAME SENTENCE.

11:38:54   7    THAT'S BEEN CLEANED UP, BUT NO OTHER CHANGE HAS BEEN MADE OTHER

11:38:57   8    THAN TO 32, AND I'VE JUST INCORPORATED THE LANGUAGE THAT

11:39:02   9    SAMSUNG PROPOSED FOR PARAGRAPH 4 WITH THE SLIGHT MODIFICATION.

11:39:11   10        SO DO YOU -- MS. SULLIVAN, DO YOU WANT ME TO MAKE YOU A

11:39:15   11   COPY?

11:39:16   12             MS. SULLIVAN:  YOUR HONOR, I DON'T HAVE A COPY.

11:39:17   13             THE COURT:  WELL, I'M HAPPY TO SHARE MY COPY BECAUSE

11:39:20   14   I DO WANT YOUR INPUT.  SO -- -- YOU KNOW WHAT, LET ME JUST --

11:39:26   15   TAKE A LOOK AT THAT, AND I'LL GO GRAB ANOTHER ONE.

11:39:30   16        MR. LEE, DO YOU HAVE ONE?

11:39:32   17             MR. LEE:  I'VE GOT ONE.

11:39:33   18             THE COURT:  OKAY.  GREAT.

11:39:37   19        (PAUSE IN PROCEEDINGS.)

11:42:39   20             THE COURT:  HAVE YOU BEEN ABLE TO REVIEW THE FINAL

11:42:42   21   JURY INSTRUCTIONS, WHICH ARE ECF 3782?

11:42:45   22             MR. LEE:  YES, YOUR HONOR.

11:42:46   23             THE COURT:  ARE THEY ACCEPTABLE TO APPLE?

11:42:48   24             MR. LEE:  YES, YOUR HONOR.

11:42:48   25             THE COURT:  ARE THEY ACCEPTABLE TO SAMSUNG,
```

11:42:50  1    UNDERSTANDING THAT BOTH SIDES HAVE OBJECTIONS PRESERVED?

11:42:53  2         MS. SULLIVAN:  YES, YOUR HONOR.  YOU WERE ABOUT TO

11:42:55  3    EXPLAIN THAT YOU CHANGED SOME LANGUAGE FOR SINGULAR AND PLURAL.

11:42:58  4         THE COURT:  OH, OKAY.  SO FOR 30, THE PREVIOUS

11:43:01  5    VERSION SAID DEFENDANTS PROFIT, PLURAL, IN THE TITLE AND IT

11:43:05  6    SAID CALCULATED TOTAL PROFIT, SINGULAR.  SO WITHIN THE SAME

11:43:09  7    SENTENCE, SOMETIMES IT WAS SINGULAR OR PLURAL, SO IT'S JUST

11:43:13  8    BEEN MADE PLURAL.  SO TOTAL PROFITS MEANS THE ENTIRE PROFITS ON

11:43:17  9    THE ARTICLE OF MANUFACTURE.

11:43:19 10       DO YOU SEE THAT?

11:43:21 11         MS. SULLIVAN:  YES, I DO.

11:43:22 12         THE COURT:  OKAY.  SO IT WAS JUST TO BE CONSISTENT,

11:43:24 13    BECAUSE WITHIN THE SAME SENTENCE, SOMETIMES IT'S SINGULAR,

11:43:27 14    SOMETIMES IT'S PLURAL.

11:43:29 15         MS. SULLIVAN:  YES.

11:43:30 16         THE COURT:  SO THAT WAS TO 30, IT WAS TO 32, WHICH

11:43:33 17    ALSO HAD THAT ISSUE.  BUT NOTHING ELSE WAS CHANGED.

11:43:40 18         MR. LEE:  THAT'S FINE.

11:43:41 19         THE COURT:  EXCEPT 32.  SO IF YOU LOOK AT 28, 30, AND

11:43:46 20    32, THAT'S THE ONLY PLACE.

11:44:41 21         MS. SULLIVAN:  YOUR HONOR, MAY I CONFER?

11:44:43 22         THE COURT:  YES.

11:44:44 23         MS. SULLIVAN:  YOUR HONOR, I WAS NOTING THAT THE

11:44:46 24    STATUTE SAYS PROFIT SINGULAR, BUT I DON'T WANT TO PROLONG THIS

11:44:50 25    AT THIS POINT.  IF YOUR HONOR IS READY TO GO WITH THE JURY, I

11:44:54  1    DON'T WANT TO KEEP THE JURY WAITING.  BUT I WOULD NOTE THAT THE

11:44:56  2    STATUTE USES THE WORD TOTAL PROFIT, SINGULAR.

11:44:59  3          THE COURT:  ALL RIGHT.  BUT YOU'RE FINE WITH MOVING

11:45:01  4    FORWARD?

11:45:02  5          MS. SULLIVAN:  YES, YOUR HONOR.

11:45:02  6          THE COURT:  ALL RIGHT.  THANK YOU.

11:45:04  7    SO CAN YOU BRING IN OUR JURORS BECAUSE THEY HAVE BEEN

11:45:06  8    WAITING.

11:45:07  9          THE CLERK:  YES, YOUR HONOR.

11:45:11  10     (JURY IN AT 11:45 A.M.)

11:45:50  11          THE COURT:  WELCOME BACK.  PLEASE TAKE A SEAT.  WE'RE

11:45:52  12    SORRY TO MAKE YOU WAIT.

11:45:54  13    IF YOU WOULD LIKE TO THREE HOLE PUNCH YOUR FINAL JURY

11:45:58  14    INSTRUCTIONS TO PUT THEM IN THE BINDERS, THERE IS A TAB IN YOUR

11:46:01  15    BINDERS FOR THEM, WE'LL GO AHEAD AND GIVE YOU MY THREE-HOLE

11:46:05  16    PUNCHER SO YOU CAN DO THAT.

11:46:07  17    LET'S GO AHEAD, PLEASE, TAKE A SEAT, AND AS WITH THE

11:46:14  18    PRELIMINARY JURY INSTRUCTIONS, EVEN THOUGH YOU HAVE A PHYSICAL

11:46:18  19    COPY, I AM REQUIRED TO READ THEM TO YOU.

11:46:24  20    SO LET'S PLEASE START WITH INSTRUCTION NUMBER 1.

11:46:28  21    MEMBERS OF THE JURY:  NOW THAT YOU HAVE HEARD ALL OF THE

11:46:32  22    EVIDENCE, IT IS MY DUTY TO INSTRUCT YOU ON THE LAW THAT APPLIES

11:46:36  23    TO THIS CASE.  EACH OF YOU HAS RECEIVED A COPY OF THESE

11:46:38  24    INSTRUCTIONS THAT YOU MAY TAKE WITH YOU TO THE JURY ROOM TO

11:46:41  25    CONSULT DURING YOUR DELIBERATIONS.

11:46:43  1      IT IS YOUR DUTY TO FIND THE FACTS FROM ALL THE EVIDENCE IN

11:46:46  2  THE CASE.  TO THOSE FACTS YOU WILL APPLY THE LAW AS I GIVE IT

11:46:49  3  TO YOU.  YOU MUST FOLLOW THE LAW AS I GIVE IT TO YOU, WHETHER

11:46:53  4  YOU AGREE IT OR NOT, AND YOU MUST NOT BE INFLUENCED BY ANY

11:46:57  5  PERSONAL LIKES OR DISLIKES, OPINIONS, PREJUDICES OR SYMPATHY.

11:47:01  6  THAT MEANS THAT YOU MUST DECIDE THE CASE SOLELY ON THE EVIDENCE

11:47:04  7  BEFORE YOU.  YOU WILL RECALL THAT YOU TOOK AN OATH TO DO SO.

11:47:07  8      PLEASE DO NOT READ INTO THESE INSTRUCTIONS OR ANYTHING

11:47:09  9  THAT I MAY SAY OR DO OR HAVE SAID OR DONE THAT I HAVE AN

11:47:14  10 OPINION REGARDING THE EVIDENCE OR WHAT YOUR VERDICT SHOULD BE.

11:47:17  11     IN FOLLOWING MY INSTRUCTIONS, YOU MUST FOLLOW ALL OF THEM

11:47:19  12 AND NOT SINGLE OUT SOME AND IGNORE OTHERS; THEY ARE ALL

11:47:22  13 IMPORTANT.

11:47:24  14     NUMBER 2.

11:47:26  15     WHEN A PARTY HAS THE BURDEN OF PROOF ON ANY CLAIM OR

11:47:30  16 DEFENSE BY A PREPONDERANCE OF THE EVIDENCE, IT MEANS YOU MUST

11:47:34  17 BE PERSUADED BY THE EVIDENCE THAT THE CLAIM OR DEFENSE IS MORE

11:47:37  18 PROBABLY TRUE THAN NOT TRUE.

11:47:39  19     YOU SHOULD BASE YOUR DECISION ON ALL OF THE EVIDENCE,

11:47:41  20 REGARDLESS OF WHICH PARTY PRESENTED IT.

11:47:44  21     NUMBER 3.

11:47:46  22     THE TRIAL IS NOW OVER.  THE EVIDENCE YOU ARE TO CONSIDER

11:47:49  23 IN DECIDING WHAT THE FACTS ARE CONSISTS OF:

11:47:52  24     1.  THE SWORN TESTIMONY OF ANY WITNESS;

11:47:55  25     2.  THE EXHIBITS WHICH ARE ADMITTED INTO EVIDENCE; AND,

11:47:59   1        3.  ANY FACTS TO WHICH THE LAWYERS HAVE AGREED.

11:48:02   2        NUMBER 4.

11:48:04   3        IN REACHING YOUR VERDICT, YOU MAY CONSIDER ONLY THE

11:48:07   4   TESTIMONY AND EXHIBITS THAT WERE RECEIVED INTO EVIDENCE.

11:48:11   5   CERTAIN THINGS ARE NOT EVIDENCE, AND YOU MAY NOT CONSIDER THEM

11:48:15   6   IN DECIDING WHAT THE FACTS ARE.  I WILL LIST THEM FOR YOU:

11:48:17   7        1.  ARGUMENTS AND STATEMENTS BY LAWYERS ARE NOT EVIDENCE.

11:48:21   8   THE LAWYERS ARE NOT WITNESSES.  WHAT THEY SAY IN THEIR OPENING

11:48:24   9   STATEMENTS AND THROUGHOUT THE TRIAL, AND WHAT THEY WILL SAY IN

11:48:27  10   THEIR CLOSING ARGUMENTS OR AT OTHER TIMES ARE ALL INTENDED TO

11:48:31  11   HELP YOU INTERPRET THE EVIDENCE.  BUT THESE ARGUMENTS AND

11:48:34  12   STATEMENTS ARE NOT EVIDENCE.  IF THE FACTS AS YOU REMEMBER THEM

11:48:38  13   DIFFER FROM THE WAY THE LAWYERS HAVE STATED THEM, YOUR MEMORY

11:48:41  14   OF THEM CONTROLS.

11:48:42  15        2.  QUESTIONS AND OBJECTIONS BY LAWYERS ARE NOT EVIDENCE.

11:48:45  16   ATTORNEYS HAVE A DUTY TO THEIR CLIENTS TO OBJECT WHEN THEY

11:48:47  17   BELIEVE A QUESTION IS IMPROPER UNDER THE RULES OF EVIDENCE.

11:48:50  18   YOU SHOULD NOT BE INFLUENCED BY THE OBJECTION OR BY THE COURT'S

11:48:54  19   RULING ON IT.

11:48:55  20        3.  TESTIMONY THAT HAS BEEN EXCLUDED OR STRICKEN, OR THAT

11:48:58  21   YOU HAVE BEEN INSTRUCTED TO DISREGARD IS NOT EVIDENCE AND MUST

11:49:02  22   NOT BE CONSIDERED.  IN ADDITION, SOMETIMES TESTIMONY AND

11:49:04  23   EXHIBITS ARE RECEIVED ONLY FOR A LIMITED PURPOSE; WHEN I HAVE

11:49:08  24   INSTRUCTED YOU TO CONSIDER CERTAIN EVIDENCE ONLY FOR A LIMITED

11:49:11  25   PURPOSE, YOU MUST DO SO, AND YOU MAY NOT CONSIDER THAT EVIDENCE

11:49:14  1    FOR ANY OTHER PURPOSE.

11:49:16  2        4.  ANYTHING YOU MAY HAVE SEEN OR HEARD WHEN THE COURT WAS

11:49:19  3    NOT IN SESSION IS NOT EVIDENCE.  YOU ARE TO DECIDE THE CASE

11:49:22  4    SOLELY ON THE EVIDENCE RECEIVED AT THE TRIAL.

11:49:25  5        NUMBER 5.

11:49:27  6        SOME EVIDENCE MAY HAVE BEEN ADMITTED FOR A LIMITED PURPOSE

11:49:30  7    ONLY.  YOU MUST CONSIDER IT ONLY FOR THAT LIMITED PURPOSE AND

11:49:33  8    FOR NO OTHER PURPOSE.

11:49:35  9        NUMBER 6.

11:49:37  10       CERTAIN CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE HAVE

11:49:41  11   BEEN SHOWN TO YOU IN ORDER TO HELP EXPLAIN THE CONTENTS OF

11:49:44  12   BOOKS, RECORDS, DOCUMENTS, OR OTHER EVIDENCE IN THE CASE.

11:49:48  13   CHARTS AND SLIDES ARE ONLY AS GOOD AS THE UNDERLYING EVIDENCE

11:49:51  14   THAT SUPPORTS THEM.  YOU SHOULD, THEREFORE, GIVE THEM ONLY SUCH

11:49:54  15   WEIGHT AS YOU THINK THE UNDERLYING EVIDENCE DESERVES.

11:49:57  16       NUMBER 7.

11:50:00  17       CERTAIN CHARTS AND SUMMARIES HAVE BEEN RECEIVED INTO

11:50:03  18   EVIDENCE TO ILLUSTRATE INFORMATION BROUGHT OUT IN THE TRIAL.

11:50:06  19   CHARTS AND SUMMARIES ARE ONLY AS GOOD AS THE TESTIMONY OR OTHER

11:50:10  20   ADMITTED EVIDENCE THAT SUPPORTS THEM.  YOU SHOULD, THEREFORE,

11:50:13  21   GIVE THEM ONLY SUCH WEIGHT AS YOU THINK THE UNDERLYING EVIDENCE

11:50:16  22   DESERVES.

11:50:17  23       NUMBER 8.

11:50:18  24       EVIDENCE MAY BE DIRECT OR CIRCUMSTANTIAL.  DIRECT EVIDENCE

11:50:21  25   IS DIRECT PROOF OF A FACT, SUCH AS TESTIMONY BY A WITNESS ABOUT

11:50:25  1    WHAT THAT WITNESS PERSONALLY SAW OR HEARD OR DID.

11:50:29  2    CIRCUMSTANTIAL EVIDENCE IS PROOF OF ONE OR MORE FACTS FROM

11:50:31  3    WHICH YOU COULD FIND ANOTHER FACT.  YOU SHOULD CONSIDER BOTH

11:50:35  4    KINDS OF EVIDENCE.  THE LAW MAKES NO DISTINCTION BETWEEN THE

11:50:40  5    WEIGHT TO BE GIVEN TO EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE.

11:50:42  6    IT IS FOR YOU TO DECIDE HOW MUCH WEIGHT TO GIVE TO ANY

11:50:45  7    EVIDENCE.

11:50:45  8         NUMBER 9.

11:50:47  9         IN DECIDING THE FACTS IN THIS CASE, YOU MAY HAVE TO DECIDE

11:50:50  10   WHICH TESTIMONY TO BELIEVE AND WHICH TESTIMONY NOT TO BELIEVE.

11:50:54  11   YOU MAY BELIEVE EVERYTHING A WITNESS SAYS, OR PART OF IT, OR

11:50:56  12   NONE OF IT.

11:50:57  13        IN CONSIDERING THE TESTIMONY OF ANY WITNESS, YOU MAY TAKE

11:51:01  14   INTO ACCOUNT:

11:51:02  15        THE OPPORTUNITY AND ABILITY OF THE WITNESS TO SEE OR HEAR

11:51:04  16   OR KNOW THE THINGS TESTIFIED TO;

11:51:06  17        THE WITNESS'S MEMORY;

11:51:07  18        THE WITNESS'S MANNER WHILE TESTIFYING;

11:51:10  19        THE WITNESS'S INTEREST IN THE OUTCOME OF THE CASE, IF ANY;

11:51:15  20        THE WITNESS'S BIAS OR PREJUDICE, IF ANY;

11:51:17  21        WHETHER OTHER EVIDENCE CONTRADICTED THE WITNESS'S

11:51:20  22   TESTIMONY;

11:51:21  23        THE REASONABLENESS OF THE WITNESS'S TESTIMONY IN LIGHT OF

11:51:23  24   ALL THE EVIDENCE; AND,

11:51:25  25        ANY OTHER FACTORS THAT BEAR ON BELIEVABILITY.

11:51:28  1          SOMETIMES A WITNESS MAY SAY SOMETHING THAT IS NOT

11:51:29  2    CONSISTENT WITH SOMETHING ELSE HE OR SHE SAID.   SOMETIMES

11:51:32  3    DIFFERENT WITNESSES WILL GIVE DIFFERENT VERSIONS OF WHAT

11:51:34  4    HAPPENED.   PEOPLE OFTEN FORGET THINGS OR MAKE MISTAKES IN WHAT

11:51:38  5    THEY REMEMBER.   ALSO, TWO PEOPLE MAY SEE THE SAME EVENT, BUT

11:51:43  6    REMEMBER IT DIFFERENTLY.   YOU MAY CONSIDER THESE DIFFERENCES,

11:51:45  7    BUT DO NOT DECIDE THAT TESTIMONY IS UNTRUE JUST BECAUSE IT

11:51:49  8    DIFFERS FROM OTHER TESTIMONY.

11:51:52  9          HOWEVER, IF YOU DECIDE THAT A WITNESS HAS DELIBERATELY

11:51:55  10   TESTIFIED UNTRUTHFULLY ABOUT SOMETHING IMPORTANT, YOU MAY

11:51:58  11   CHOOSE NOT TO BELIEVE ANYTHING THAT WITNESS SAID.

11:52:02  12         ON THE OTHER HAND, IF YOU THINK THE WITNESS TESTIFIED

11:52:05  13   UNTRUTHFULLY ABOUT SOME THINGS, BUT TOLD THE TRUTH ABOUT

11:52:09  14   OTHERS, YOU MAY ACCEPT THE PART YOU THINK IS TRUE AND IGNORE

11:52:11  15   THE REST.

11:52:12  16         THE WEIGHT OF THE EVIDENCE AS TO A FACT DOES NOT

11:52:14  17   NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY.

11:52:17  18   WHAT IS IMPORTANT IS HOW BELIEVABLE THE WITNESSES WERE, AND HOW

11:52:21  19   MUCH WEIGHT YOU THINK THEIR TESTIMONY DESERVES.

11:52:24  20         NUMBER 10.

11:52:26  21         THE EVIDENCE THAT A WITNESS LIED UNDER OATH OR GAVE

11:52:30  22   DIFFERENT TESTIMONY ON A PRIOR OCCASION MAY BE CONSIDERED,

11:52:33  23   ALONG WITH ALL OTHER EVIDENCE, IN DECIDING WHETHER OR NOT TO

11:52:36  24   BELIEVE THE WITNESS AND HOW MUCH WEIGHT TO GIVE TO THE

11:52:38  25   TESTIMONY OF THE WITNESS AND FOR NO OTHER PURPOSE.

```
11:52:41   1        YOU MAY HAVE TAKEN NOTES DURING THE TRIAL.  WHETHER OR NOT

11:52:44   2   YOU TOOK NOTES, YOU SHOULD RELY ON YOUR OWN MEMORY OF THE

11:52:47   3   EVIDENCE.  NOTES ARE ONLY TO ASSIST YOUR MEMORY.  YOU SHOULD

11:52:51   4   NOT BE OVERLY INFLUENCED BY YOUR NOTES OR THOSE OF YOUR FELLOW

11:52:56   5   JURORS.

11:53:07   6        NUMBER 12.

11:53:08   7        YOU HAVE HEARD SAME WITNESSES TESTIFY BY DEPOSITION.  A

11:53:11   8   DEPOSITION IS THE SWORN TESTIMONY OF A WITNESS TAKEN BEFORE

11:53:14   9   TRIAL.  THE WITNESS IS PLACED UNDER OATH TO TELL THE TRUTH AND

11:53:17   10  LAWYERS FOR EACH PARTY MAY ASK QUESTIONS.  THE QUESTIONS AND

11:53:20   11  ANSWERS ARE RECORDED.

11:53:22   12       INSOFAR AS POSSIBLE, YOU SHOULD CONSIDER DEPOSITION

11:53:25   13  TESTIMONY, PRESENTED TO YOU IN COURT IN LIEU OF LIVE TESTIMONY,

11:53:29   14  IN THE SAME WAY AS IF THE WITNESS HAD BEEN PRESENT TO TESTIFY.

11:53:33   15       NUMBER 13.

11:53:34   16       EVIDENCE WAS PRESENTED TO YOU IN THE FORM OF ANSWERS OF

11:53:37   17  ONE OF THE PARTIES TO WRITTEN INTERROGATORIES SUBMITTED BY THE

11:53:40   18  OTHER SIDE.  THESE ANSWERS WERE GIVEN IN WRITING AND UNDER

11:53:44   19  OATH, BEFORE THE TRIAL, IN RESPONSE TO QUESTIONS THAT WERE

11:53:46   20  SUBMITTED IN WRITING UNDER ESTABLISHED COURT PROCEDURES.  YOU

11:53:49   21  SHOULD CONSIDER THE ANSWERS, INSOFAR AS POSSIBLE, IN THE SAME

11:53:54   22  WAY AS IF THEY WERE MADE FROM THE WITNESS STAND.

11:53:58   23       NUMBER 14.

11:54:00   24       SOME WITNESSES, BECAUSE OF EDUCATION OR EXPERIENCE, WERE

11:54:03   25  PERMITTED TO STATE OPINIONS AND THE REASONS FOR THOSE OPINIONS.
```

1215

| | |
|---|---|
| 11:54:08 | 1 |   SUCH OPINION TESTIMONY SHOULD BE JUDGED LIKE ANY OTHER

11:54:11   2   TESTIMONY.  YOU MAY ACCEPT IT OR REJECT IT, AND GIVE IT AS MUCH

11:54:15   3   WEIGHT AS YOU THINK IT DESERVES, CONSIDERING THE WITNESS'S

11:54:19   4   EDUCATION AND EXPERIENCE, THE REASONS GIVEN FOR THE OPINION,

11:54:21   5   AND ALL THE OTHER EVIDENCE IN THE CASE.

11:54:23   6       NUMBER 15.

11:54:24   7       SOME EVIDENCE MAY BE SEALED FROM THE PUBLIC BECAUSE IT

11:54:27   8   CONTAINS HIGHLY CONFIDENTIAL BUSINESS INFORMATION OF THE

11:54:30   9   PARTIES.  YOU MUST NOT DRAW ANY INFERENCES ABOUT THE NATURE OF

11:54:33  10   THE EVIDENCE OR GIVE ANY GREATER OR LESSER WEIGHT TO THE

11:54:36  11   EVIDENCE BASED ON WHETHER IT WAS SEALED.

11:54:39  12       NUMBER 16.

11:54:41  13       THE PHYSICAL DEVICES YOU RECEIVED ARE -- I'M SORRY -- YOU

11:54:46  14   RECEIVED ARE EVIDENCE IN THIS TRIAL.

11:54:48  15       YOU MAY USE THEM IN YOUR DELIBERATIONS AND MAY CONNECT TO

11:54:51  16   THE INTERNET THROUGH THE WEB BROWSER APPLICATION, BUT MUST NOT

11:54:54  17   ALTER OR MODIFY THE DEVICES IN ANY WAY.  YOU ALSO MUST NOT USE

11:54:59  18   THE INTERNET TO RESEARCH THE CASE.

11:55:01  19       SOME OF THE DEVICES HAVE SIM CARDS IN THEIR PACKAGING.

11:55:06  20   THESE SIM CARDS ARE NOT TO BE INSERTED INTO THE PHONES.

11:55:10  21       LET ME ALSO ADD THAT YOU'RE NOT TO USE THE INTERNET TO

11:55:13  22   RESEARCH THE PARTIES OR THEIR PRODUCTS, EITHER.

11:55:16  23       SOME OF THE DEVICES HAVE A MOBILE DATA CONNECTION, AND YOU

11:55:20  24   WILL NOT NEED TO TAKE ANY ADDITIONAL ACTION TO USE THE WEB

11:55:22  25   BROWSER APPLICATION.

11:55:24  1        OTHERS MUST FIRST BE CONNECTED TO THE COURT'S WI-FI

11:55:29  2    NETWORK TO ACCESS THE INTERNET.

11:55:31  3        ONCE CONNECTED, YOU MUST DECLINE ANY SOFTWARE UPDATE

11:55:34  4    NOTIFICATIONS THAT MAY BE PRESENTED TO YOU.

11:55:37  5        YOU ALSO MUST NOT DOWNLOAD ANY CONTENT, SUCH AS APPS,

11:55:41  6    MUSIC, PHOTOGRAPHS, OR GAME, TO THE DEVICES.

11:55:45  7        TO CONNECT THE DEVICE TO THE COURT'S WI-FI NETWORK, SELECT

11:55:49  8    "USDCSJ01" FROM THE LIST OF AVAILABLE WIRELESS NETWORKS AS

11:55:57  9    DEPICTED BELOW.  FROM THE APPLICATION MENU, SELECT THE WEB

11:56:00 10    BROWSER APPLICATION.  FROM THE COURT'S WI-FI LOG IN PAGE,

11:56:04 11    SCROLL TO THE BOTTOM AND CLICK ON THE BLUE "CONNECT" BUTTON.

11:56:08 12        SOME DEVICES MAY DISPLAY A SYSTEM UPDATE NOTIFICATION LIKE

11:56:12 13    THE ONES BELOW.  IF YOU SEE SUCH A SCREEN, YOU MUST DECLINE THE

11:56:18 14    REQUEST TO UPDATE THE SYSTEM.  SELECT INSTALL LATER OR PRESS

11:56:22 15    THE HOME OR BACK BUTTON TO EXIT THE NOTIFICATION SCREEN.

11:56:26 16        NUMBER 17.

11:56:27 17        THIS CASE INVOLVES DISPUTES RELATING TO UNITED STATES

11:56:31 18    UTILITY AND DESIGN PATENTS.  BEFORE SUMMARIZING THE POSITIONS

11:56:34 19    OF THE PARTIES AND THE LEGAL ISSUES INVOLVED IN THE DISPUTE,

11:56:37 20    LET ME TAKE A MOMENT TO EXPLAIN AGAIN WHAT PATENTS ARE AND HOW

11:56:41 21    THEY ARE OBTAINED.

11:56:43 22        PATENTS ARE GRANTED BY THE UNITED STATES PATENT AND

11:56:46 23    TRADEMARK OFFICE, (SOMETIMES CALLED "THE PTO").

11:56:54 24        THERE TWO BASIC TYPES OF PATENTS IN THE UNITED STATES,

11:56:56 25    UTILITY PATENTS AND DESIGN PATENTS.  IN GENERAL TERMS, A

11:56:57  1    UTILITY PATENT PROTECTS THE WAY AN ARTICLE IS USED AND WORKS.

11:57:00  2    IT ALSO PROTECTS A METHOD OR PROCESS OF MAKING OR DOING

11:57:03  3    SOMETHING.  ON THE OTHER HAND, A DESIGN PATENT PROTECTS THE WAY

11:57:07  4    AN ARTICLE LOOKS.  A DESIGN PATENT PROTECTS THE ORNAMENTAL

11:57:11  5    DESIGN OF AN ARTICLE OF MANUFACTURE.  "ORNAMENTAL DESIGN" MEANS

11:57:16  6    THE SHAPE OF THE DESIGN AND/OR THE SURFACE DECLARATION ON THE

11:57:18  7    DESIGN.

11:57:19  8        A VALID UNITED STATES PATENT GIVES THE PATENT OWNER THE

11:57:23  9    RIGHT TO PREVENT OTHERS FROM MAKING, USING, OFFERING TO SELL,

11:57:28  10   OR SELLING THE PATENTED INVENTION WITHIN THE UNITED STATES, OR

11:57:32  11   FROM IMPORTING IT INTO THE UNITED STATES, DURING THE TERM OF

11:57:36  12   THE PATENT WITHOUT THE PATENT HOLDER'S PERMISSION.  A VIOLATION

11:57:39  13   OF THE PATENT OWNER'S RIGHTS IS CALLED INFRINGEMENT.

11:57:43  14       A PATENT INCLUDES WHAT IS CALLED A "SPECIFICATION."  FOR A

11:57:48  15   UTILITY PATENT, THE SPECIFICATION MUST CONTAIN A WRITTEN

11:57:52  16   DESCRIPTION OF THE CLAIMED INVENTION TELLING WHAT THE INVENTION

11:57:54  17   IS, HOW IT WORKS, HOW TO MAKE IT AND HOW TO USE IT SO OTHERS

11:57:59  18   SKILLED IN THE FIELD WILL KNOW HOW TO MAKE OR USE IT.  THE

11:58:02  19   SPECIFICATION CONCLUDES WITH ONE OR MORE NUMBERED SENTENCES.

11:58:06  20   THESE ARE THE PATENT "CLAIMS.  WHEN THE PATENT IS EVENTUALLY

11:58:11  21   GRANTED BY THE PTO, THE CLAIMS DEFINE THE BOUNDARIES OF ITS

11:58:14  22   PROTECTION AND GIVE NOTICE TO THE PUBLIC OF THOSE BOUNDARIES.

11:58:19  23       FOR A DESIGN PATENT, THE SPECIFICATION MUST CONTAIN ONE OR

11:58:23  24   MORE DRAWINGS OF THE DESIGNS AS WELL AS A DESCRIPTION OF THE

11:58:27  25   DRAWINGS, AND IT SERVES AS A SINGLE CLAIM.  THE "CLAIM" FOR

1218

11:58:33  1    DESIGN PATENTS GENERALLY REFERS TO THE DRAWINGS AND HOW THEY

11:58:36  2    ARE DESCRIBED.

11:58:38  3         NUMBER 18.

11:58:39  4         I WILL NOW SUMMARIZE FOR YOU EACH SIDE'S POSITIONS ON THE

11:58:42  5    ISSUES YOU MUST DECIDE.

11:58:44  6         DURING A PRIOR PROCEEDING, A JURY FOUND THAT SAMSUNG'S 18

11:58:48  7    PRODUCTS AT ISSUE IN THIS TRIAL INFRINGED ONE OR MORE OF THE

11:58:52  8    FOLLOWING APPLE PATENTS:  U.S. PATENT NUMBERS 7,469,381;

11:58:59  9    7,864,163, 3168,677; D593,087; AND D604,305.  THE JURY ALSO

11:59:10  10   FOUND THESE PATENTS VALID.  THESE PRIOR FINDINGS ARE REFLECTED

11:59:13  11   IN THE CHART ON THE NEXT PAGE.

11:59:15  12        APPLE SEEKS MONEY DAMAGES FOR SAMSUNG'S SALES OF 16 OF

11:59:19  13   THESE 18 PRODUCTS.  APPLE DOES NOT SEEK DAMAGES ON THE GALAXY S

11:59:24  14   I9000 OR THE GALAXY S II I 910.

11:59:30  15        SAMSUNG DISPUTES THE AMOUNT OF DAMAGES AM CLAIMS.

11:59:33  16        YOUR SOLE JOB IN THIS TRIAL IS TO DETERMINE THE AMOUNT OF

11:59:35  17   DAMAGES TO BE AWARDED TO APPLE.

11:59:40  18        NUMBER 19.

11:59:42  19        BEFORE YOU BEGIN YOUR DELIBERATIONS, ELECT ONE MEMBER OF

11:59:45  20   THE JURY AS YOUR PRESIDING JUROR.  THAT PERSON WILL PRESIDE

11:59:48  21   OVER THE DELIBERATIONS AND SERVE AS THE SPOKESPERSON FOR THE

11:59:50  22   JURY IN COURT.

11:59:52  23        YOU SHALL DILIGENTLY STRIVE TO REACH AGREEMENT WITH ALL OF

11:59:56  24   THE OTHER JURORS IF YOU CAN DO SO.  YOUR VERDICT MUST BE

11:59:59  25   UNANIMOUS.

```
12:00:00   1          EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF, BUT YOU

12:00:02   2     SHOULD DO SO ONLY AFTER YOU HAVE CONSIDERED ALL OF THE

12:00:06   3     EVIDENCE, DISCUSSED IT FULLY WITH THE OTHER JURORS, AND

12:00:09   4     LISTENED TO THEIR VIEWS.

12:00:11   5          IT IS IMPORTANT THAT YOU ATTEMPT TO REACH A UNANIMOUS

12:00:14   6     VERDICT BUT, OF COURSE, ONLY IF EACH OF YOU CAN DO SO AFTER

12:00:18   7     HAVING MADE YOUR OWN CONSCIENTIOUS DECISION.  DO NOT BE

12:00:24   8     UNWILLING TO CHANGE YOUR OPINION IF THE DISCUSSION PERSUADES

12:00:27   9     YOU THAT YOU SHOULD.  BUT DO NOT COME TO A DECISION SIMPLY

12:00:31  10     BECAUSE OTHER JURORS THINK IT IS RIGHT, OR CHANGE AN HONEST

12:00:35  11     BELIEF ABOUT THE WEIGHT AND EFFECT OF THE EVIDENCE SIMPLY TO

12:00:38  12     REACH A VERDICT.

12:00:41  13          NUMBER 20.

12:00:42  14          IF IT BECOMES NECESSARY DURING YOUR DELIBERATIONS TO

12:00:45  15     COMMUNICATE WITH ME, YOU MAY SEND A NOTE THROUGH THE BAILIFF,

12:00:49  16     SIGNED BY ANY ONE OR MORE OF YOU.  NO MEMBER OF THE JURY SHOULD

12:00:53  17     EVER ATTEMPT TO COMMUNICATE WITH ME EXCEPT BY A SIGNED WRITING.

12:00:57  18     I WILL NOT COMMUNICATE WITH ANY MEMBER OF THE JURY ON ANYTHING

12:01:01  19     CONCERNING THE CASE EXCEPT IN WRITING OR HERE IN OPEN COURT.

12:01:04  20          IF YOU SEND OUT A QUESTION, I WILL CONSULT WITH THE

12:01:07  21     LAWYERS BEFORE ANSWERING IT, WHICH MAY TAKE SOME TIME.  YOU MAY

12:01:11  22     CONTINUE YOUR DELIBERATIONS WHILE WAITING FOR THE ANSWER TO ANY

12:01:14  23     QUESTION.

12:01:14  24          REMEMBER THAT YOU ARE NOT TO TELL ANYONE -- INCLUDING THE

12:01:17  25     COURT -- HOW THE JURY STANDS, WHETHER IN TERMS OF VOTE COUNT OR
```

12:01:22  1     OTHERWISE, UNTIL AFTER YOU HAVE REACHED A UNANIMOUS VERDICT OR

12:01:25  2     HAVE BEEN DISCHARGED.

12:01:26  3         NUMBER 21.

12:01:28  4         A VERDICT FORM HAS BEEN PREPARED FOR YOU.  AFTER YOU HAVE

12:01:32  5     REACHED UNANIMOUS AGREEMENT ON A VERDICT, YOUR PRESIDING JUROR

12:01:36  6     SHOULD COMPLETE THE VERDICT FORM ACCORDING TO YOUR

12:01:38  7     DELIBERATIONS, SIGN AND DATE IT, AND ADVISE THE BAILIFF THAT

12:01:42  8     YOU ARE READY TO RETURN TO THE COURTROOM.

12:01:48  9         NUMBER 22.

12:01:51 10         A PATENT'S CLAIMS DEFINE WHAT IS COVERED BY THE PATENT.

12:01:57 11     UTILITY PATENT CLAIMS ARE NUMBERED SENTENCES AT THE END OF THE

12:02:00 12     PATENT THAT DESCRIBED BOUNDARIES OF THE PATENT'S PROTECTION.

12:02:05 13         IT IS MY JOB AS JUDGE TO EXPLAIN TO YOU THE MEANING OF ANY

12:02:08 14     LANGUAGE IN THE CLAIMS THAT NEEDS INTERPRETATION.  I HAVE

12:02:13 15     INTERPRETED THE MEANING OF SOME OF THE LANGUAGE OF THE UTILITY

12:02:16 16     PATENT CLAIMS INVOLVED IN THIS CASE.  YOU MUST ACCEPT THESE

12:02:19 17     INTERPRETATIONS AS CORRECT.

12:02:21 18         FOR CLAIM LANGUAGE WHERE I HAVE NOT PROVIDED YOU WITH ANY

12:02:25 19     MEANING, YOU SHOULD APPLY THE CLAIM LANGUAGE'S PLAIN AND

12:02:29 20     ORDINARY MEANING.

12:02:30 21         U.S. PATENT NUMBER 7,469,381, CLAIM 19.

12:02:34 22         THE TERM "DISPLAYING" MEANS "SHOWING OR REVEALING TO THE

12:02:39 23     VIEWER."

12:02:40 24         THE TERM "ELECTRONIC DEVICE" MEANS "A DOCUMENT STORED IN A

12:02:45 25     DIGITAL FORMAT.  AN ELECTRONIC DEVICE INCLUDES, BUT IS NOT

12:02:50  1    LIMITED TO, A WEB PAGE, A DIGITAL IMAGE, A WORD PROCESSING,

12:02:55  2    SPREADSHEET OR PRESENTATION DOCUMENT, OR A LIST OF ITEMS IN A

12:02:57  3    DIGITAL FORMAT.  AN ELECTRONIC DEVICE NEED NOT BE STORED IN A

12:03:01  4    SINGLE FILE.

12:03:02  5        THE TERM "FIRST DIRECTION" DOES NOT REQUIRE A STRICTLY

12:03:05  6    LINEAR FINGER MOVEMENT.

12:03:08  7        THE TERM "EDGE OF THE ELECTRONIC DEVICE" HAS ITS PLAIN AND

12:03:12  8    ORDINARY MEANING.  AN EDGE OF AN ELECTRONIC DEVICE IS NOT

12:03:15  9    LIMITED TO AN EXTERNAL EDGE AND MAY BE INTERNAL.

12:03:20  10       "U.S. PATENT NUMBER 7,864,163, CLAIM 50.

12:03:27  11       THIS -- THE COURT HAS NOT INTERPRETED ANY TERMS FROM THIS

12:03:30  12   PATENT.

12:03:31  13       NUMBER 23.

12:03:34  14       I WILL INSTRUCT YOU ABOUT THE MEASURE OF DAMAGES FOR

12:03:36  15   UTILITY PATENT INFRINGEMENT.  YOU MUST DETERMINE THE AMOUNT OF

12:03:40  16   MONEY DAMAGES TO AWARD TO APPLE FOR SAMSUNG'S INFRINGEMENT.

12:03:45  17       THE AMOUNT OF THOSE DAMAGES MUST BE ADEQUATE TO COMPENSATE

12:03:48  18   APPLE FOR THE INFRINGEMENT.  YOU SHOULD KEEP IN MIND THAT THE

12:03:51  19   DAMAGES YOU AWARD ARE MEANT TO COMPENSATE APPLE AND NOT TO

12:03:54  20   PUNISH SAMSUNG.

12:03:56  21       APPLE HAS THE BURDEN TO PERSUADE YOU OF THE AMOUNT OF ITS

12:04:00  22   DAMAGES.  YOU SHOULD AWARD ONLY THOSE DAMAGES THAT APPLE PROVES

12:04:03  23   IT SUFFERED BY A PREPONDERANCE OF THE EVIDENCE.  WHILE APPLE IS

12:04:07  24   NOT REQUIRED TO PROVE ITS DAMAGES WITH MATHEMATICAL PRECISION,

12:04:13  25   IT MUST PROVE THEM WITH REASONABLE CERTAINTY.  APPLE IS NOT

12:04:16  1    ENTITLED TO DAMAGES THAT ARE REMOTE OR SPECULATIVE.

12:04:20  2        NUMBER 24.

12:04:22  3        APPLE IS ENTITLED TO A REASONABLE ROYALTY FOR THE

12:04:25  4    INFRINGEMENT OF ITS UTILITY PATENTS.  A ROYALTY IS A PAYMENT

12:04:29  5    MADE TO A PATENT HOLDER IN EXCHANGE FOR THE RIGHT TO MAKE, USE,

12:04:34  6    OR SELL THE CLAIMED INFERENCE.  THIS RIGHT IS CALLED A

12:04:38  7    "LICENSE."  A REASONABLE ROYALTY IS THE PAYMENT FOR THE LICENSE

12:04:42  8    THAT WOULD HAVE RESULTED FROM A HYPOTHETICAL NEGOTIATION

12:04:45  9    BETWEEN THE PATENT HOLDER AND THE INFRINGER, TAKING PLACE AT

12:04:51  10   THE TIME WHEN THE INFRINGING ACTIVITY FIRST BEGAN.  IN

12:04:53  11   CONSIDERING THE NATURE OF THIS NEGOTIATION, YOU MUST ASSUME

12:04:56  12   THAT THE PATENT HOLDER AND THE INFRINGER WOULD HAVE ACTED

12:05:00  13   REASONABLY AND WOULD HAVE ENTERED INTO A LICENSE AGREEMENT.

12:05:03  14       YOU MUST ALSO ASSUME THAT BOTH PARTY BELIEVED THE PATENT

12:05:07  15   WAS VALID AND INFRINGED.

12:05:09  16       YOUR ROLE IS TO DETERMINE WHAT THE RESULT OF THAT

12:05:12  17   NEGOTIATION WOULD HAVE BEEN.  THE TEST FOR DAMAGES IS WHAT

12:05:17  18   ROYALTY WOULD HAVE RESULTED FROM THE HYPOTHETICAL NEGOTIATION

12:05:19  19   AND NOT SIMPLY WHAT EITHER PARTY WOULD HAVE PREFERRED.

12:05:24  20       A ROYALTY CAN BE CALCULATED IN SEVERAL DIFFERENT WAYS, AND

12:05:28  21   IT IS FOR YOU TO DETERMINE WHICH WAY IS THE MOST APPROPRIATE

12:05:31  22   BASED ON THE EVIDENCE YOU HAVE HEARD.

12:05:34  23       ONE WAY TO CALCULATE A ROYALTY IS TO DETERMINE WHAT IS

12:05:37  24   CALLED AN "ONGOING ROYALTY."  TO CALCULATE AN ONGOING ROYALTY,

12:05:42  25   YOU MUST FIRST DETERMINE THE "BASE," THAT IS, THE PRODUCT ON

12:05:46  1     WHICH THE INFRINGER IS TO PAY.  YOU THEN NEED TO MULTIPLY THE

12:05:50  2     REVENUE THE DEFENDANT OBTAINED FROM THAT BASE BY THE "RATE" OR

12:05:56  3     PERCENTAGE THAT YOU FIND WOULD HAVE RESULTED FROM THE

12:05:58  4     HYPOTHETICAL NEGOTIATION.  FOR EXAMPLE, IF A PATENT COVERS A

12:06:00  5     NAIL AND THE NAIL SELLS FOR $1 AND THE LICENSEE SOLD 200 NAILS,

12:06:05  6     THE BASE REVENUE WOULD BE $200.  IF THE RATE YOU FIND WOULD

12:06:09  7     HAVE RESULTED FROM THE HYPOTHETICAL NEGOTIATION IS 1 PERCENT,

12:06:11  8     THEN THE ROYALTY WOULD BE $2 OR THE RATE OF .01 TIMES THE BASE

12:06:17  9     REVENUE OF $200.  THESE NUMBERS ARE ONLY EXAMPLES AND ARE NOT

12:06:21  10    INTENDED TO SUGGEST THE APPROPRIATE ROYALTY RATE.

12:06:24  11         IF THE PATENT COVERS ONLY PART OF THE PRODUCT THAT THE

12:06:27  12    INFRINGER SELLS, THEN THE BASE WOULD NORMALLY BE ONLY THAT

12:06:30  13    FEATURE OR COMPONENT.  FOR EXAMPLE, IF YOU FIND THAT FOR A $100

12:06:35  14    CAR, THE PATENTED FEATURE IS THE TIRES WHICH SELL FOR $5, THE

12:06:40  15    BASE REVENUE WOULD BE $5.

12:06:45  16         INSTEAD OF A PERCENTAGE ROYALTY, YOU MAY DECIDE THAT THE

12:06:49  17    APPROPRIATE ROYALTY THAT WOULD HAVE RESULTED FROM A

12:06:51  18    HYPOTHETICAL NEGOTIATION IS A FIXED NUMBER OF DOLLARS PER UNIT

12:06:55  19    SOLD.  IF YOU DO THE ROYALTY WOULD BE THAT FIXED NUMBER OF

12:06:59  20    DOLLARS TIMES THE NUMBER OF UNITS SOLD.

12:07:03  21         IN THIS CASE, THE UTILITY PATENTS COVER ONLY SOME FEATURES

12:07:06  22    OF THE PRODUCTS THAT SAMSUNG SOLD.  IT IS APPLE'S BURDEN TO

12:07:09  23    DEMONSTRATE WHAT VALUE THOSE FEATURES HAVE ADDED TO THE

12:07:12  24    DESIRABILITY OF THE PRODUCT AS A WHOLE AND TO SEPARATE THE

12:07:16  25    VALUE OF THE PATENTED CONTRIBUTION FROM THE VALUE OF OTHER

12:07:19  1    PARTS OF THE PRODUCT THAT ARE NOT ATTRIBUTABLE TO THE PATENTED

12:07:22  2    INVENTION.

12:07:26  3        THE ULTIMATE COMBINATION OF ROYALTY BASE AND ROYALTY RATE

12:07:31  4    FOR THE UTILITY PATENTS MUST REFLECT THE VALUE ATTRIBUTABLE TO

12:07:35  5    THE INFRINGING FEATURES OF THE PRODUCT AND NO MORE.  WHEN THE

12:07:39  6    INFRINGING PRODUCTS HAVE BOTH PATENTED AND UNPATENTED FEATURES,

12:07:43  7    MEASURING THIS VALUE REQUIRES YOU TO IDENTIFY AND AWARD ONLY

12:07:47  8    THE VALUE OF THE PATENTED FEATURES.

12:07:49  9        ANOTHER WAY TO CALCULATE A ROYALTY IS TO DETERMINE A

12:07:54  10   ONE-TIME LUMP SUM PAYMENT THAT THE INFRINGER WOULD HAVE PAID AT

12:07:57  11   THE TIME OF THE HYPOTHETICAL NEGOTIATION FOR A LICENSE COVERING

12:07:59  12   ALL SALES OF THE LICENSED PRODUCT BOTH PAST AND FUTURE.  THIS

12:08:04  13   DIFFERS FROM PAYMENT OF AN ONGOING ROYALTY BECAUSE, WITH AN

12:08:08  14   ONGOING ROYALTY, THE LICENSEE PAYS BASED ON THE REVENUE OF

12:08:11  15   ACTUAL LICENSED PRODUCTS IT SELLS.  WHEN A ONE-TIME LUMP SUM IS

12:08:16  16   PAID, THE INFRINGER PAYS A SINGLE PRICE FOR A LICENSE COVERING

12:08:20  17   BOTH PAST AND FUTURE INFRINGING SALES.

12:08:23  18       IN DETERMINING A REASONABLE ROYALTY, YOU MAY CONSIDER THE

12:08:25  19   FOLLOWING FACTORS:

12:08:26  20       1.  THE ROYALTIES RECEIVED BY THE PATENTEE FOR THE

12:08:29  21   LICENSING OF THE PATENT-IN-SUIT, PROVING OR TENDING TO PROVE AN

12:08:33  22   ESTABLISHED ROYALTY;

12:08:35  23       2.  THE RATES PAID BY THE LICENSEE FOR THE USE OF OTHER

12:08:38  24   PATENTS COMPARABLE TO THE PATENT-IN-SUIT;

12:08:41  25       3.  THE NATURE AND SCOPE OF THE LICENSE, AS EXCLUSIVE OR

12:08:44  1    NONEXCLUSIVE, OR AS RESTRICTED OR NON-RESTRICTED IN TERMS OF

12:08:48  2    TERRITORY OR WITH RESPECT TO WHOM THE MANUFACTURED PRODUCT MAY

12:08:51  3    BE SOLD.

12:08:54  4         4.   THE LICENSOR'S ESTABLISHED POLICY AND MARKETING

12:09:00  5    PROGRAM TO MAINTAIN HIS OR HER PATENT MONOPOLY BY NOT LICENSING

12:09:05  6    OTHERS TO USE THE INVENTION OR BY GRANTING LICENSES UNDER

12:09:08  7    SPECIAL CONDITIONS DESIGNED TO PRESERVE THAT MONOPOLY.

12:09:11  8         NUMBER 5.  THE COMMERCIAL RELATIONSHIP BETWEEN THE

12:09:13  9    LICENSOR AND LICENSEE, SUCH AS WHETHER THEY ARE COMPETITORS IN

12:09:17 10    THE SAME TERRITORY IN THE SAME LINE OF BUSINESS, OR WHETHER

12:09:20 11    THEY ARE INVENTOR AND PROMOTER.

12:09:23 12         NUMBER 6.  THE EFFECT OF SELLING THE PATENTED SPECIALTY IN

12:09:27 13    PROMOTING SALES OF OTHER PRODUCTS OF THE LICENSEE, THE EXISTING

12:09:31 14    VALUE OF THE INVENTION TO THE LICENSOR AS A GENERATOR OF SALES

12:09:35 15    OF HIS NON-PATENTED ITEMS, AND THE EXTENT OF SUCH DERIVATIVE OR

12:09:40 16    CONVOYED SALES.

12:09:42 17         NUMBER 7.  THE DURATION OF THE PATENT AND THE TERM OF THE

12:09:44 18    LICENSE.

12:09:45 19         NUMBER 8.  THE ESTABLISHED PROFITABILITY OF THE PRODUCT

12:09:48 20    MADE UNDER THE PATENTS, ITS COMMERCIAL SUCCESS, AND ITS CURRENT

12:09:52 21    POPULARITY.

12:09:53 22         THE UTILITY AND ADVANTAGES OF THE PATENTED PROPERTY OVER

12:09:56 23    THE OLD MODES OR DEVICES, IF ANY, THAT HAD BEEN USED FOR

12:10:00 24    WORKING OUT SIMILAR RESULTS.

12:10:02 25         NUMBER 10.  THE NATURE OF THE PATENTED INVENTION, THE

CHARACTER OF THE COMMERCIAL EMBODIMENT OF IT AS OWNED AND

PRODUCED BY THE LICENSOR, AND THE BENEFITS TO THOSE WHO HAVE

USED THE INVENTION.

NUMBER 11.  THE EXTENT TO WHICH THE INFRINGER HAS MADE USE

OF THE INVENTION AND ANY EVIDENCE PROBATIVE OF THE VALUE OF

THAT USE.

NUMBER 12.  THE PORTION OF THE PROFIT OR OF THE SELLING

PRICE THAT MAY BE CUSTOMARY IN THE PARTICULAR BUSINESS OR IN

COMPARABLE BUSINESS TO ALLOW FOR THE USE OF THE INVENTION OR

ANALOGOUS INVENTIONS.

NUMBER 13.  THE PORTION OF THE REALIZABLE PROFITS THAT

SHOULD BE CREDITED TO THE INVENTION AS DISTINGUISHED FROM

NON-PATENTED ELEMENTS, THE MANUFACTURING PROCESS, BUSINESS

RISKS, OR SIGNIFICANT FEATURES OR IMPROVEMENTS ADDED BY THE

INFRINGER.

NUMBER 14.  THE OPINION AND TESTIMONY OF QUALIFIED

EXPERTS.

NUMBER 15.  THE AMOUNT THAT A LICENSOR (SUCH AS THE

PATENTEE) AND A LICENSEE (SUCH AS THE INFRINGER) WOULD HAVE

AGREED UPON (AT THE TIME THE INFRINGEMENT BEGAN) IF BOTH HAD

BEEN REASONABLY AND VOLUNTARILY TRYING TO REACH AN AGREEMENT;

THAT IS, THE AMOUNT WHICH A PRUDENT LICENSEE -- WHO DESIRED, AS

A BUSINESS PROPOSITION, TO OBTAIN A LICENSE TO MANUFACTURE AND

SELL A PARTICULAR ARTICLE EMBODYING THE PATENTED INVENTION

WOULD HAVE BEEN WILLING TO PAY AS A ROYALTY AND YET BE ABLE TO

12:11:25  1    MAKE A REASONABLE PROFIT AND WHICH AMOUNT WOULD HAVE BEEN

12:11:28  2    ACCEPTABLE BY A PRUDENT PATENTEE WHO WAS WILLING TO GRANT A

12:11:33  3    LICENSE.

12:11:33  4         IT IS UP TO YOU, BASED ON THE EVIDENCE, TO DECIDE WHAT

12:11:36  5    TYPE OF ROYALTY IS APPROPRIATE IN THIS CASE.

12:11:41  6         NUMBER 25.

12:11:42  7         DAMAGES THAT APPLE MAY BE AWARDED BY YOU COMMENCE ON THE

12:11:47  8    DATE THAT SAMSUNG HAS BOTH INFRINGED AND BEEN NOTIFIED OF THE

12:11:50  9    PATENT OR PATENTS SAMSUNG INFRINGED.

12:11:54  10        YOU MAY NOT AWARD APPLE DAMAGES FOR INFRINGING A PATENT

12:11:57  11   BEFORE SAMSUNG HAD NOTICE OF APPLE'S CLAIM OF INFRINGEMENT OF

12:12:00  12   THAT PATENT.

12:12:01  13        I HAVE DETERMINED THAT SAMSUNG RECEIVED NOTICE OF APPLE'S

12:12:05  14   CLAIM OF INFRINGEMENT FOR THE '381 PATENT ON AUGUST 4, 2010,

12:12:09  15   AND FOR THE '163 PATENT ON JUNE 16, 2011.

12:12:25  16        NUMBER 26.

12:12:27  17        DESIGN PATENTS PROTECT THE ORNAMENTAL APPEARANCE,

12:12:30  18   INCLUDING SHAPE OR CONFIGURATION OF AN ARTICLE OF MANUFACTURE.

12:12:30  19   DESIGN PATENTS DO NOT PROTECT THE FUNCTIONAL ASPECTS OF HOW THE

12:12:36  20   ARTICLE CLAIMED IN THE PATENT WORKS.

12:12:38  21        UNLIKE UTILITY PATENTS, A DESIGN PATENT CAN ONLY HAVE ONE

12:12:42  22   CLAIM.  THAT CLAIM COVERS ALL THE FIGURES IN THE PATENT.  IT IS

12:12:47  23   PERMISSIBLE TO ILLUSTRATE MORE THAN ONE EMBODIMENT OF A DESIGN

12:12:50  24   IN A SINGLE DESIGN PATENT APPLICATION.

12:12:53  25        EACH DESIGN PATENT CONTAINS MULTIPLE DRAWINGS TO

12:12:57 1    ILLUSTRATE THE CLAIMED DESIGN.  THE SCOPE OF THE CLAIM

12:13:00 2    ENCOMPASSES THE DESIGN'S VISUAL APPEARANCE AS A WHOLE.  IT DOES

12:13:04 3    NOT COVER A GENERAL DESIGN CONCEPT AND IS NOT LIMITED TO

12:13:08 4    ISOLATED FEATURES OF THE DRAWINGS.

12:13:11 5         ALL MATTER DEPICTED IN SOLID LINES CONTRIBUTES TO THE

12:13:13 6    OVERALL APPEARANCE OF THE DESIGN.

12:13:16 7         IT IS MY JOB AS A JUDGE TO INTERPRET FOR YOU WHAT IS

12:13:19 8    CLAIMED BY THE PATENTS.  YOU MUST ACCEPT MY INTERPRETATIONS AS

12:13:23 9    CORRECT.  MY INTERPRETATION OF THE CLAIMS SHOULD NOT BE TAKEN

12:13:26 10   AS AN INDICATION THAT I HAVE A VIEW REGARDING THE

12:13:28 11   IDENTIFICATION OF THE ARTICLES OF MANUFACTURE FOR THE PURPOSES

12:13:32 12   OF AWARDING SAMSUNG'S PROFITS, WHICH I WILL EXPLAIN IN MORE

12:13:36 13   DETAIL IN INSTRUCTIONS 27 AND 28.  THE DECISIONS REGARDING THE

12:13:41 14   IDENTITY OF THE ARTICLES OF MANUFACTURE ARE YOURS TO MAKE.

12:13:45 15        WHEN CONSIDERING THE DESIGN PATENTS, YOU SHOULD VIEW

12:13:49 16   CERTAIN FEATURES IN THE DRAWINGS IN THIS WAY:

12:13:53 17        D618,677 PATENT.

12:13:58 18        THE D'677 PATENT CLAIMS THE ORNAMENTAL DESIGN OF AN

12:14:02 19   ELECTRONIC DEVICE AS SHOWN IN FIGURES 1 THROUGH 8.  THE BROKEN

12:14:05 20   LINES IN THE D'677 PATENT CONSTITUTE UNCLAIMED SUBJECT MATTER.

12:14:09 21   THE USE OF SOLID BLACK SURFACE SHADING ON THE D'677 PATENT

12:14:14 22   REPRESENTS THE COLOR BLACK.  THE USE OF OBLIQUE LINE SHADING ON

12:14:20 23   THE D'677 PATENT IS USED TO SHOW A TRANSPARENT, TRANSLUCENT, OR

12:14:27 24   HIGHLY POLISHED OR REFLECTIVE SURFACE.

12:14:30 25        D 593,087 PATENT.

12:14:33  1       THE D'087 PATENT CLAIMS THE ORNAMENTAL DESIGN OF AN

12:14:37  2   ELECTRONIC DEVICE AS SHOWN IN FIGURES 1 THROUGH 48.  THE BROKEN

12:14:41  3   LINES IN THE D'087 PATENT CONSTITUTE UNCLAIMED SUBJECT MATTER.

12:14:46  4   THUS, THE D'087 PATENT CLAIMS THE FRONT FACE, A BEZEL

12:14:52  5   ENCIRCLING THE FRONT FACE OF THE PATENTED DESIGN THAT EXTENDS

12:14:56  6   FROM THE FRONT OF THE PHONE TO ITS SIDES, AND A FLAT CONTOUR OF

12:15:00  7   THE FRONT FACE, BUT DOES NOT CLAIM THE REST OF THE ARTICLE OF

12:15:03  8   MANUFACTURE.

12:15:05  9       DID THE D604,305 PATENT.

12:15:09  10      THE D'305 PATENT CLAIMS THE ORNAMENTAL DESIGN FOR A

12:15:14  11  GRAPHICAL USER INTERFACE FOR A DISPLAY SCREEN OR PORTION

12:15:17  12  THEREOF, AS SHOWN IN FIGURES 1 THROUGH 2.  THE BROKEN LINES

12:15:21  13  SHOWING OF A DISPLAY SCREEN IN BOTH VIEWS FORMS NO PART OF THE

12:15:25  14  CLAIMED DESIGN.

12:15:27  15      I'LL JUST REITERATE THAT I HAVE NOT DETERMINED THE ARTICLE

12:15:31  16  OF MANUFACTURE.  THAT IS FOR YOU TO DECIDE FOR ALL THREE

12:15:35  17  PATENTS.

12:15:36  18      OKAY.  LET'S GO TO NUMBER 27.

12:15:38  19      I WILL INSTRUCT YOU ABOUT THE MEASURE OF DAMAGES FOR

12:15:41  20  INFRINGEMENT OF APPLE'S DESIGN PATENTS.

12:15:44  21      YOU MUST DETERMINE THE AMOUNT OF DAMAGES TO AWARD TO APPLE

12:15:47  22  FOR SAMSUNG'S INFRINGEMENT.  THE AMOUNT OF THOSE DAMAGES MUST

12:15:51  23  BE ADEQUATE TO COMPENSATE APPLE FOR THE INFRINGEMENT.  YOU

12:15:56  24  SHOULD KEEP IN MIND THAT THE DAMAGES YOU AWARD ARE MEANT TO

12:16:00  25  COMPENSATE APPLE AND NOT TO PUNISH APPLE (SIC).

12:16:03  1          IN RELATION TO DESIGN PATENTS, APPLE SEEKS AN AWARD OF

12:16:07  2     SAMSUNG'S PROFITS AS ITS MEASURE OF POTENTIAL RECOVERY WITH

12:16:10  3     RESPECT TO THE SALE OF EACH UNIT OF AN INFRINGING PRODUCT.

12:16:14  4          APPLE HAS THE BURDEN TO PROVE THAT APPLE'S CALCULATION OF

12:16:17  5     DAMAGES IS CORRECT BY A PREPONDERANCE OF THE EVIDENCE.  WHILE

12:16:22  6     APPLE IS NOT REQUIRED TO PROVE ITS DAMAGES WITH MATHEMATICAL

12:16:26  7     PRECISION, IT MUST PROVE THEM WITH REASONABLE CERTAINTY.  APPLE

12:16:29  8     IS NOT ENTITLED TO DAMAGES THAT ARE REMOTE OR SPECULATIVE.

12:16:44  9          OH, I'M SORRY, I MISSPOKE.  IT'S NOT TO PUNISH APPLE, MY

12:16:51  10    MISTAKE ON LINE 8 ON PAGE 29 ON INSTRUCTION NUMBER 27.

12:16:56  11         NUMBER 28.

12:16:59  12         FOR DESIGN PATENTS, THE LAW PROVIDES THAT AN INFRINGER WHO

12:17:03  13    APPLIES THE PATENTED DESIGN TO ANY ARTICLE OF MANUFACTURE FOR

12:17:10  14    THE PURPOSE OF SALE OR SALES OR EXPOSES FOR SALE ANY ARTICLE OF

12:17:15  15    MANUFACTURE TO WHICH THE PATENTED DESIGN HAS BEEN APPLIED SHALL

12:17:19  16    BE LIABLE TO THE PATENT OWNER FOR THE AMOUNT OF THE INFRINGER'S

12:17:23  17    TOTAL PROFITS ON THE ARTICLE OF MANUFACTURE TO WHICH THE DESIGN

12:17:26  18    WAS APPLIED.

12:17:28  19         APPLE SEEKS SAMSUNG'S TOTAL PROFITS ON THE ARTICLES OF

12:17:32  20    MANUFACTURE TO WHICH SAMSUNG APPLIED THE D'677, D'087, AND

12:17:38  21    D'305 PATENTED DESIGNS.  DETERMINING SAMSUNG'S TOTAL PROFITS ON

12:17:45  22    THE ARTICLES OF MANUFACTURE INVOLVES TWO STEPS.  FIRST, YOU

12:17:50  23    SHOULD IDENTIFY THE ARTICLE OR ARTICLES OF MANUFACTURE TO WHICH

12:17:56  24    SAMSUNG APPLIED APPLE'S PATENTED DESIGNS.  SECOND, YOU SHOULD

12:17:59  25    CALCULATE SAMSUNG'S TOTAL PROFITS MADE FROM THOSE ARTICLES OF

```
12:18:03   1    MANUFACTURE.

12:18:06   2         29.

12:18:08   3         IT IS YOUR JOB AS THE JURY TO DETERMINE THE ARTICLES OF

12:18:11   4    MANUFACTURE TO WHICH SAMSUNG APPLIED APPLE'S PATENTED DESIGNS.

12:18:15   5    NEITHER THE UNITED STATES PATENT AND TRADEMARK OFFICE NOR THE

12:18:18   6    COURT NOR THE PREVIOUS JURY DETERMINED THE ARTICLES OF

12:18:23   7    MANUFACTURE IN THIS CASE.

12:18:26   8         AN "ARTICLE OF MANUFACTURE" IS A THING MADE BY HAND OR

12:18:30   9    MACHINE, AND IT MAY BE EITHER A PRODUCT AS A WHOLE OR A

12:18:33   10   COMPONENT OF THAT PRODUCT.

12:18:35   11        TO IDENTIFY THE ARTICLES OF MANUFACTURE TO WHICH SAMSUNG

12:18:39   12   APPLIED APPLE'S PATENTED DESIGNS, YOU SHOULD CONSIDER THE

12:18:42   13   FOLLOWING FOUR FACTORS:

12:18:44   14        NUMBER 1.  THE SCOPE OF THE DESIGN CLAIMED IN APPLE'S

12:18:47   15   PATENT, INCLUDING THE DRAWING AND WRITTEN DESCRIPTION;

12:18:51   16        2.  THE RELATIVE PROMINENCE OF THE DESIGN WITHIN THE

12:18:54   17   PRODUCT AS A WHOLE;

12:18:56   18        3.  WHETHER THE DESIGN IS CONCEPTUALLY DISTINCT FROM THE

12:19:01   19   PRODUCT AS A WHOLE; AND,

12:19:04   20        4.  THE PHYSICAL RELATIONSHIP BETWEEN THE PATENTED DESIGN

12:19:08   21   AND THE REST OF THE PRODUCT, INCLUDING WHETHER THE DESIGN

12:19:11   22   PERTAINS TO A COMPONENT THAT A USER OR SELLER CAN PHYSICALLY

12:19:16   23   SEPARATE FROM THE PRODUCT AS A WHOLE, AND WHETHER THE DESIGN IS

12:19:19   24   EMBODIED IN A COMPONENT THAT IS MANUFACTURED SEPARATELY FROM

12:19:23   25   THE REST OF THE PRODUCT, OR IF THE COMPONENT CAN BE SOLD
```

1    SEPARATELY.

2         IN WEIGHING THESE FACTORS, YOUR OBJECTIVE SHOULD BE TO

3    IDENTIFY THE ARTICLES OF MANUFACTURE THAT MOST FAIRLY CAN BE

4    SAID TO EMBODY SAMSUNG'S APPROPRIATION OF APPLE'S PATENTED

5    DESIGNS.

6         IN THIS CASE, APPLE CONTENDS THAT THE ARTICLES OF

7    MANUFACTURE TO WHICH SAMSUNG APPLIED APPLE'S PATENTED DESIGNS

8    ARE THE WHOLE PHONES.  SAMSUNG CONTENDS THAT THE ARTICLES OF

9    MANUFACTURE ARE A COMPONENT OR COLLECTION OF COMPONENTS OF EACH

10   PHONE.  SPECIFICALLY, FOR THE D'677 PATENT, SAMSUNG CONTENDS

11   THE ARTICLE OF MANUFACTURE IS A PHONE'S ROUND-CORNERED, BLACK

12   GLASS FRONT FACE.  FOR THE D'087 PATENT, SAMSUNG CONTENDS THE

13   ARTICLE OF MANUFACTURE IS A PHONE'S ROUND-CORNERED, GLASS FRONT

14   FACE AND SURROUNDING RIM OR BEZEL.  FOR THE D'305 PATENT,

15   SAMSUNG CONTENDS THAT THE ARTICLE OF MANUFACTURE IS A PHONE'S

16   DISPLAY SCREEN.

17        APPLE HAS THE BURDEN TO PROVE THAT ITS IDENTIFICATION OF

18   THE ARTICLES OF MANUFACTURE TO WHICH SAMSUNG APPLIED APPLE'S

19   PATENTED DESIGNS IS CORRECT BY A PREPONDERANCE OF THE EVIDENCE.

20        NUMBER 30.

21        ONCE YOU DETERMINE THE ARTICLE OF MANUFACTURE TO WHICH

22   SAMSUNG APPLIED APPLE'S PATENTED DESIGN, YOU MUST THEN

23   CALCULATE SAMSUNG'S TOTAL PROFITS ON THAT ARTICLE OF

24   MANUFACTURE.

25        SAMSUNG'S "TOTAL PROFITS" MEANS THE ENTIRE PROFITS ON THE

ARTICLE OF MANUFACTURE TO WHICH THE PATENTED DESIGN IS APPLIED,
AND NOT JUST THE PORTION OF PROFITS ATTRIBUTABLE TO THE DESIGN
OR ORNAMENTAL ASPECTS COVERED BY THE PATENT.  "TOTAL PROFITS"
DOES NOT INCLUDE PROFITS ATTRIBUTABLE TO OTHER PRODUCTS OR
OTHER ARTICLES OF MANUFACTURE THAT MAY BE SOLD IN ASSOCIATION
WITH AN ARTICLE EMBODYING THE PATENTED DESIGN.

PROFITS ARE DETERMINED BY DEDUCTING CERTAIN EXPENSES FROM
GROSS REVENUE.  APPLE HAS THE BURDEN OF PROVING SAMSUNG'S GROSS
REVENUE BY A PREPONDERANCE OF THE EVIDENCE.

EXPENSES CAN INCLUDE COSTS INCURRED IN PRODUCING THE GROSS
REVENUE, SUCH AS THE COST OF THE GOODS.  OTHER COSTS MAY BE
INCLUDED AS DEDUCTIBLE EXPENSES IF THEY ARE DIRECTLY
ATTRIBUTABLE TO THE SALE OR MANUFACTURE OF THE INFRINGING
PRODUCTS RESULTING IN A NEXUS BETWEEN THE INFRINGING PRODUCTS
AND THE EXPENSES.

SAMSUNG HAS THE BURDEN OF PROVING THE DEDUCTIBLE EXPENSES.

31.

DAMAGES THAT YOU MUST AWARD APPLE COMMENCE ON THE DATE
THAT SAMSUNG HAS BOTH INFRINGED AND BEEN NOTIFIED OF THE DESIGN
PATENT OR PATENTS SAMSUNG INFRINGED.  YOU MAY NOT AWARD APPLE
DAMAGES FOR INFRINGING A PATENT BEFORE SAMSUNG HAD NOTICE OF
APPLE'S CLAIM OF INFRINGEMENT OF THAT PATENT.

I HAVE DETERMINED THAT SAMSUNG RECEIVED NOTICE OF APPLE'S
CLAIM OF INFRINGEMENT FOR THE D'677 PATENT ON APRIL 15, 2011,
AND FOR THE D'305 AND D'087 PATENTS ON JUNE 16, 2011.

NUMBER 32.

YOU SHOULD AWARD ANY REMEDY TO WHICH APPLE HAS PROVEN IT
IS ENTITLED WITH RESPECT TO EACH SALE OF AN INFRINGING PHONE,
EXCEPT THAT YOU SHOULD NOT AWARD MORE THAN ONE FORM OF MONETARY
RECOVERY FOR ANY GIVEN SALE.

IF YOU DETERMINE FOR A GIVEN SALE OF AN INFRINGING PHONE
THAT SAMSUNG APPLIED ONE OF APPLE'S PATENTED DESIGNS TO THE
WHOLE PHONE, THEN APPLE IS ENTITLED TO THE TOTAL PROFITS ON THE
PHONE.  IN THAT CASE, YOU MAY NOT AWARD ANY FURTHER AMOUNTS FOR
THAT SAME SALE, EITHER FOR INFRINGEMENT OF ANOTHER DESIGN
PATENT OR FOR INFRINGEMENT OF ANY UTILITY PATENT.

IF YOU DETERMINE FOR A GIVEN SALE OF AN INFRINGING PHONE
THAT SAMSUNG APPLIED APPLE'S PATENTED DESIGNS TO THE COMPONENTS
THAT SAMSUNG ALLEGES ARE THE ARTICLES OF MANUFACTURE, YOU MAY
AWARD APPLE SAMSUNG'S TOTAL PROFITS ON MULTIPLE COMPONENTS, BUT
NOT ON THE SAME COMPONENT TWICE.

IF YOU CHOOSE TO AWARD ANY AMOUNT OF SAMSUNG'S PROFITS FOR
A PARTICULAR SALE, YOU MAY NOT ALSO AWARD A REASONABLE ROYALTY
FOR THAT SALE.

SO YOU HAVE NOW HEARD ALL OF THE JURY INSTRUCTIONS.  I'M
GOING TO EXCUSE YOU FOR A LATE LUNCH.  SORRY, WE WENT INTO YOUR
LUNCH TIME.  I'M GOING TO ASK THAT YOU COME BACK AT 1:45 AT
WHICH TIME YOU'LL HEAR CLOSING ARGUMENTS.

EACH DAY YOU CAN ONLY DELIBERATE UNTIL 4:30, SO WE WILL
MAKE YOU LEAVE AT 4:30.  BUT IF YOU WOULD PLEASE RETURN ON

12:24:13   1    MONDAY AT 9:00 A.M. AND EACH CONSECUTIVE BUSINESS DAY THAT YOU

12:24:16   2    NEED TO DELIBERATE.

12:24:19   3          THROUGHOUT THIS WHOLE TIME, THROUGHOUT THE WEEKEND, DO NOT

12:24:22   4    RESEARCH THE CASE, DO NOT DISCUSS OR LISTEN TO ANYTHING ABOUT

12:24:26   5    THE CASE, ABOUT THESE PARTIES, ABOUT THESE PRODUCTS.

12:24:29   6          SO THANK YOU FOR YOUR PATIENCE AND YOUR SERVICE.  WE'LL

12:24:31   7    SEE YOU BACK AT 1:45.

12:24:38   8          (JURY OUT AT 12:24 P.M.).

12:24:51   9          THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT THE

12:24:58  10    JURORS HAVE LEFT THE COURTROOM.

12:24:59  11          PLEASE TAKE A SEAT.

12:25:01  12          THERE'S ONE CHANGE I'D LIKE TO YOU MAKE TO THE EXHIBIT

12:25:03  13    LIST, AND THAT WAS THE LODGING OF THE DEPOSITION TRANSCRIPT IS

12:25:09  14    RECORDED ON THE EXHIBIT LIST AS HAVING BEEN ADMITTED, AND IT

12:25:13  15    ACTUALLY WAS NOT, AND I DON'T WANT THE JURORS TO THINK THAT THE

12:25:16  16    TRANSCRIPT IS THE EVIDENCE.  THE TESTIMONY WAS THE EVIDENCE.

12:25:20  17          SO IF YOU COULD PLEASE CHANGE, IT IS NUMBER 4072,

12:25:27  18    DEPOSITION DESIGNATIONS FOR JUNWON LEE.  IT SAYS DATE ADMITTED

12:25:33  19    5-15-2018.  NOW, THERE IS A NOTATION IN THE LIMITING

12:25:37  20    INSTRUCTION COLUMN THAT SAYS DOCUMENT HAS BEEN LODGED, BUT I'D

12:25:40  21    LIKE YOU TO REMOVE THAT DATE ADMITTED.

12:25:42  22          I DON'T MIND YOU KEEPING IT ON THE LIST, THAT'S FINE, BUT

12:25:47  23    IF YOU COULD JUST REMOVE THAT DATE.  CAN YOU REFILE IT AND YOUR

12:25:51  24    RE-FILED ONE IS THE ONE THAT WE WILL GIVE TO THE JURORS.  OKAY?

12:25:55  25    CAN YOU DO THAT DURING THE LUNCH BREAK?

```
12:25:57   1              MR. LEE:  YES.

12:25:58   2              THE COURT:  ALL RIGHT.  THANK YOU.

12:25:59   3         NOW, NORMALLY I TAKE BACK THE PRELIMINARY JURY

12:26:02   4    INSTRUCTIONS.  DO YOU WANT ME TO DO THAT OR DO YOU WANT THEM TO

12:26:05   5    KEEP IT?  I DON'T HAVE A STRONG PREFERENCE.  I'LL DEFER TO THE

12:26:08   6    PARTIES.

12:26:08   7              MR. LEE:  WE WOULD PREFER THAT THEY KEEP THEM.

12:26:10   8              THE COURT:  ARE YOU OKAY WITH THAT, MS. SULLIVAN?

12:26:13   9              MS. SULLIVAN:  YES, YOUR HONOR.

12:26:14  10              THE COURT:  OKAY.  THAT'S FINE.  SO WE DON'T TAKE

12:26:16  11     THAT BACK.  NO PROBLEM.

12:26:18  12         NOW, AS FAR AS DEMONSTRATIVES, I WOULD LIKE -- AND I THINK

12:26:21  13    YOU'VE DONE THAT FOR PREVIOUS TRIALS -- THAT THERE BE A

12:26:24  14    COMPLETE SET OF ALL THE DEMONSTRATIVES THAT WERE USED DURING

12:26:26  15    THE CASE LODGED.  SO FOR PURPOSES OF AN APPEAL, WE KNOW WHAT

12:26:30  16    PEOPLE ARE TALKING ABOUT AND KNOW WHAT OBJECTIONS WERE FILED

12:26:33  17    AND WHATNOT.

12:26:34  18              MR. LEE:  SURE.

12:26:35  19              THE COURT:  OKAY.  WHEN CAN YOU DO THAT?

12:26:41  20              MR. LEE:  CAN WE DO IT ON MONDAY, YOUR HONOR.

12:26:43  21              THE COURT:  OH, THAT'S FINE.  OKAY.  SO PLEASE LODGE

12:26:46  22     ALL OF THE DEMONSTRATIVES USED, AND THAT INCLUDES OPENING AND

12:26:50  23     CLOSING, BY MAY 21ST OF 2018.

12:26:53  24         I DID JUST WANT TO GIVE YOU YOUR TIME LIMITS FOR YOUR

12:27:00  25    PRURIENT INTEREST.  APPLE USED 7 HOURS AND 32 MINUTES.  YOU HAD
```

12:27:05  1    28 MINUTES LEFT.

12:27:07  2         SAMSUNG USED 7 HOURS AND 26 MINUTES AND YOU HAD 34 MINUTES

12:27:13  3    LEFT.

12:27:13  4         SO LET ME HEAR WHAT THE CONCERNS WERE YOU HAD ABOUT THE

12:27:16  5    CLOSING ARGUMENTS, AND THEN IT LOOKS LIKE I MIGHT HAVE TWO

12:27:20  6    COPIES OF THE CLOSING STATEMENT.  IS ONE A REVISED ONE?  ONE

12:27:23  7    FEELS THINNER.  DID I GET A SECOND ONE?  I FOUND IT UP HERE.

12:27:27  8              THE CLERK:  WE GOT ONE THIS MORNING, YOUR HONOR.

12:27:29  9              THE COURT:  OKAY.  ALL RIGHT.  I'LL LOOK THROUGH

12:27:31  10   THAT.  I DID LOOK THROUGH THE ONE LAST NIGHT.

12:27:33  11        WHAT IS YOUR CONCERN?

12:27:35  12             MR. PRICE:  YOUR HONOR, IN MR. WAGNER'S EXAMINATION,

12:27:38  13   MR. LEE ASKED HIM WHETHER HE USED THE PHRASE "DIRECTLY RELATED"

12:27:43  14   IN HIS REPORT, AND IF HE USED THAT PHRASE EVEN AFTER YOUR HONOR

12:27:49  15   CAME OUT WITH THE STANDARD THAT USES THE LANGUAGE "DIRECTLY

12:27:52  16   ATTRIBUTABLE."

12:27:53  17        NOW, IT WOULD BE UNFAIR TO ARGUE IN CLOSING THAT

12:27:56  18   MR. WAGNER REFUSED TO CHANGE HIS REPORT TO USE THE WORDS

12:28:01  19   "DIRECTLY ATTRIBUTABLE" BECAUSE HE WASN'T ALLOWED TO.  YOU

12:28:04  20   RECALL HIS FIRST REPORT WAS BEFORE YOUR HONOR DECIDED THAT

12:28:08  21   STANDARD AND THAT LANGUAGE, AND HE WASN'T PERMITTED TO CHANGE

12:28:11  22   HIS REPORT.  HE WASN'T PERMITTED TO USE THE WORDS "DIRECTLY

12:28:14  23   ATTRIBUTABLE."  HE WASN'T EVEN ALLOWED TO TESTIFY TO THOSE

12:28:18  24   WORDS.

12:28:19  25        SO IT WOULD BE AN UNFAIR ARGUMENT TO SAY THAT MR. WAGNER

| | | |
|---|---|---|
| 12:28:23 | 1 | INTENTIONALLY IGNORED USING THE STANDARD DIRECTLY ATTRIBUTABLE |
| 12:28:27 | 2 | AFTER YOUR HONOR SAID THAT WOULD BE THE LAW THAT WAS GIVEN TO A |
| 12:28:31 | 3 | JURY BECAUSE HE WASN'T ALLOWED TO. |
| 12:28:33 | 4 | MR. LEE:  YOUR HONOR, WE'RE NOT GOING TO ARGUE THAT. |
| 12:28:35 | 5 | WE'RE GOING TO ARGUE WHAT HE SAID, NOT WHAT HE DIDN'T SAY.  HE |
| 12:28:39 | 6 | USED THE WORDS "DIRECTLY RELATED," WHICH IS WHAT I -- NOT |
| 12:28:42 | 7 | DIRECTLY RELATED, WHICH IS WHAT I ELICITED TODAY, NOT SPECIFIC |
| 12:28:47 | 8 | TO.  THAT'S ALL.  WE'RE NOT GOING TO SAY THAT HE DIDN'T USE THE |
| 12:28:52 | 9 | WORDS IN HIS REPORT.  I DON'T THINK I DID THAT TODAY, EITHER. |
| 12:28:55 | 10 | SO -- |
| 12:28:56 | 11 | THE COURT:  DOES THAT BELIE YOUR CONCERN? |
| 12:29:00 | 12 | MR. PRICE:  I THINK SO. |
| 12:29:01 | 13 | THE COURT:  OKAY. |
| 12:29:02 | 14 | MR. PRICE:  THE ONLY THING, I WILL GIVE YOU NOTICE, |
| 12:29:04 | 15 | REMEMBER IN ONE TRIAL WE HAD FOUR ATTORNEYS ARGUING.  WE PLAN |
| 12:29:08 | 16 | TO SPLIT IT. |
| 12:29:09 | 17 | THE COURT:  I HAVE NO PROBLEM WITH THAT.  THAT'S |
| 12:29:11 | 18 | FINE.  HOWEVER YOU WANT TO PROCEED. |
| 12:29:12 | 19 | MR. LEE:  WE'RE SPLITTING, TOO. |
| 12:29:13 | 20 | THE COURT:  OKAY.  THAT'S FINE. |
| 12:29:15 | 21 | OKAY.  SHALL WE TAKE OUR BREAK, SO YOU HAVE AN HOUR AND |
| 12:29:18 | 22 | 15 MINUTES. |
| 12:29:19 | 23 | AND THEN I'D LIKE TO DO THE RULE 50 ARGUMENT AFTER THE |
| 12:29:22 | 24 | CLOSINGS, AFTER THE JURY HAS GONE IN. |
| 12:29:24 | 25 | OKAY.  ANYTHING MORE THAT WE NEED TO HANDLE TODAY? |

12:29:27   1                    MR. LEE:  NOTHING.  THANK YOU, YOUR HONOR.

12:29:28   2                    THE COURT:  OKAY.  THANK YOU.

12:29:32   3                    THE CLERK:  COURT'S IN RECESS.

12:29:36   4              (THE LUNCH RECESS WAS TAKEN FROM 12:29 P.M. UNTIL 1:46

12:29:36   5       P.M.)

           6

           7

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 12:29:36 | 1  | **AFTERNOON SESSION**                                        |
| 01:46:45 | 2  | (JURY OUT AT 1:46 P.M.)                                      |
| 01:46:46 | 3  | THE COURT:  GOOD AFTERNOON.  WELCOME.  ARE WE READY          |
| 01:46:49 | 4  | TO GO.                                                       |
| 01:46:49 | 5  | MR. LEE:  YES, YOUR HONOR.                                   |
| 01:46:50 | 6  | MR. QUINN:  YES, YOUR HONOR.                                 |
| 01:46:51 | 7  | THE COURT:  YES?  OKAY, GREAT.  PLEASE BRING IN OUR          |
| 01:46:56 | 8  | JURY.                                                        |
| 01:46:57 | 9  | MR. LEE:  YOUR HONOR, CAN WE SET UP THE PLACARD?            |
| 01:47:00 | 10 | THE COURT:  PLEASE, GO AHEAD.  DO WHATEVER YOU NEED          |
| 01:47:03 | 11 | TO DO.                                                       |
| 01:47:07 | 12 | (JURY IN AT 1:47 P.M.)                                       |
| 01:47:35 | 13 | THE CLERK:  PLEASE BE SEATED.                                |
| 01:47:37 | 14 | THE COURT:  OKAY.  GOOD AFTERNOON AND WELCOME BACK.          |
| 01:47:40 | 15 | MR. LEE:  YOUR HONOR, FOR APPLE'S CLOSING,                   |
| 01:47:42 | 16 | MR. MUELLER WILL DO THE OPENING CLOSE, AND THEN I'LL DO THE  |
| 01:47:45 | 17 | REBUTTAL CLOSE.                                              |
| 01:47:46 | 18 | THE COURT:  ALL RIGHT.  AND LADIES AND GENTLEMEN OF          |
| 01:47:48 | 19 | THE JURY, YOU HAVE NOW HEARD ALL THE EVIDENCE AND THE LAW.   |
| 01:47:50 | 20 | IT'S NOW TIME TO HEAR THE CLOSING ARGUMENTS OF COUNSEL.      |
| 01:47:54 | 21 | EACH WILL HAVE ONE HOUR TO REVIEW THE EVIDENCE AND ARGUE     |
| 01:47:57 | 22 | TO YOU WHAT HE OR SHE BELIEVES THE EVIDENCE HAS SHOWN.       |
| 01:48:00 | 23 | I AGAIN REMIND YOU THAT WHAT THE ATTORNEYS SAY DURING        |
| 01:48:04 | 24 | THEIR CLOSING ARGUMENTS IS NOT EVIDENCE.  IF ANY ATTORNEY    |
| 01:48:08 | 25 | MISSTATES THE EVIDENCE OR THE LAW, YOU ARE TO RELY ON YOUR OWN |

01:48:11   1    RECOLLECTION OF THE EVIDENCE AND TO THE JURY INSTRUCTIONS THAT

01:48:13   2    I HAVE PROVIDED TO YOU.

01:48:14   3        THE PLAINTIFF WILL GIVE THE FIRST ARGUMENT; THE DEFENSE

01:48:16   4    WILL GIVE ITS ARGUMENT; AND THEN BECAUSE THE PLAINTIFF HAS THE

01:48:19   5    BURDEN OF PROOF, THE PLAINTIFF WILL HAVE THE LAST OPPORTUNITY

01:48:22   6    TO ADDRESS YOU IN HIS CLOSING ARGUMENT.

01:48:25   7        AND UPON CONCLUSION OF THE ARGUMENT, YOU WILL BEGIN YOUR

01:48:28   8    DELIBERATIONS.  REMEMBER THAT YOU ARE NOT TO DISCUSS THE CASE

01:48:31   9    UNTIL AND UNLESS ALL EIGHT JURORS ARE PRESENT IN THE JURY ROOM.

01:48:34   10       ALL RIGHT.  WITH THAT, TIME IS NOW 1:48.

01:48:38   11       GO AHEAD, PLEASE.

01:48:39   12           MR. MUELLER:  THANK YOU, YOUR HONOR.

01:48:39   13       **(MR. MUELLER GAVE HIS CLOSING ARGUMENT ON BEHALF OF**

01:48:39   14   **APPLE.)**

01:48:42   15           **MR. MUELLER:**  GOOD AFTERNOON.  LET ME START BY

01:48:44   16   THANKING YOU.  ON BEHALF OF BILL LEE, AMY WIGMORE, NATE SABRI,

01:48:49   17   I WANT TO SAY THANK YOU FOR YOUR TIME AND YOUR CAREFUL

01:48:53   18   ATTENTION, AND I ALSO WANT TO THANK YOU ON BEHALF OF APPLE.

01:48:56   19   GREG JOSWIAK, WHO YOU HEARD TESTIFY IS HERE TODAY, AS IS

01:48:59   20   RICHARD HOWARTH, WHO YOU ALSO HEARD TESTIFY.  WE'RE ALL

01:49:02   21   GRATEFUL FOR YOUR PAYING SUCH CLOSE ATTENTION OVER THE COURSE

01:49:06   22   OF THE WEEK TO EVERYTHING YOU'VE HEARD.

01:49:08   23       OVER THE COURSE OF THE NEXT 40 MINUTES OR SO, I'M GOING TO

01:49:10   24   REVIEW THE EVIDENCE AS BEST I CAN, AND I'M GOING TO REFER TO

01:49:13   25   SOME EXHIBIT ALONG THE WAY, TRY TO HIGHLIGHT SOME OF THEM IN

01:49:18   1    CASE IT'S HELPFUL TO WRITE THEM DOWN, IT'LL HELP YOU LOCATE

01:49:23   2    THEM IN THE JURY ROOM AS YOU REVIEW THE EVIDENCE YOURSELVES.

01:49:25   3    WE VERY MUCH ENCOURAGE YOU TO READ THE DOCUMENT, HANDLE THE

01:49:29   4    EXHIBITS, LOOK AT THE PHONES.

01:49:31   5         WE BELIEVE THAT IF YOU UNDERSTAND THE EVIDENCE, IF YOU

01:49:33   6    UNDERSTAND THE FACTS AND APPLY THE LAW AS HER HONOR GIVES, IT

01:49:37   7    YOU'LL REACH A JUST VERDICT.

01:49:39   8         NOW, AS YOU KNOW, THIS IS A CASE THAT'S FOCUSSED ON

01:49:43   9    DESIGN, AND IT'S FOCUSSED ON A SPECIAL CATEGORY OF PATENT LAW,

01:49:47   10   DESIGN PATENT LAW, AND IT'S FOCUSSED ON THE APPLICATION OF

01:49:49   11   DESIGN TO SMARTPHONES.

01:49:51   12        AND IN THE SMARTPHONE INDUSTRY, AS I'M SURE YOU KNOW FROM

01:49:55   13   YOUR OWN LIVES AND YOU'VE HEARD FROM THE EVIDENCE THIS WEEK,

01:49:59   14   THERE'S MANY TYPES OF DESIGNS FOR PHONES, AND THAT'S A GOOD

01:50:01   15   THING.  THAT'S A GOOD THING.  THAT'S A GOOD THING WHEN

01:50:04   16   COMPANIES COMPETE ON A LEVEL PLAYING FIELD, THEY COME UP WITH

01:50:07   17   THEIR OWN DESIGNS AND CONSUMERS BENEFIT.

01:50:10   18        BUT WHEN ONE COMPANY TAKES ANOTHER COMPANY'S DESIGNS AND

01:50:14   19   APPLIES THEM TO THEIR PHONES FOR PURPOSES OF SALE, THE LAW

01:50:18   20   PROVIDES A REMEDY FOR WHEN THAT OCCURS, AND YOU'VE SEEN THE

01:50:21   21   REMEDY OVER THE COURSE OF THIS CASE, AND WE'RE GOING TO REVIEW

01:50:24   22   IT TODAY.  THAT'S NOT A LEVEL PLAYING FIELD, AND THAT'S JUST

01:50:27   23   NOT RIGHT.

01:50:28   24        SO WE'RE GOING TO START WITH WHAT YOU HEARD ABOUT THE

01:50:30   25   EARLY DAYS OF THE DEVELOPMENT OF THE IPHONE BACK IN 2004.  YOU

01:50:34   1    HEARD FROM MR. JOSWIAK, YOU HEARD FROM MR. HOWARTH AND

01:50:40   2    MR. BLEVINS.  MR. JOSWIAK HAS BEEN AT APPLE FOR OVER 30 YEARS;

01:50:43   3    MR. HOWARTH HAS BEEN THERE FOR OVER 20 YEARS; MR. BLEVINS FOR

01:50:47   4    OVER 18, AND ALL THREE OF THEM WERE INVOLVED IN THE DEVELOPMENT

01:50:50   5    OF THE ORIGINAL IPHONE PROJECT.

01:50:52   6         MR. HOWARTH, SITTING RIGHT THERE, WAS ONE OF THE TWO LEAD

01:50:55   7    DESIGNERS FOR THE ORIGINAL IPHONE.

01:50:59   8         AND YOU HEARD ABOUT ALL THE WORK AND EFFORT THAT WENT INTO

01:51:02   9    THAT PROJECT.  AS MR. JOSWIAK TOLD YOU, APPLE INVESTED OVER A

01:51:07  10    BILLION DOLLARS IN CAPITAL IN THAT PROJECT, AND THEY WERE

01:51:10  11    REALLY RISKING EVERYTHING THEY HAD.

01:51:14  12         IN MR. JOSWIAK WORDS, THEY WERE RISKING EVERYTHING THAT

01:51:17  13    WAS MAKING APPLE SUCCESSFUL AT THAT TIME ON THIS BIG EFFORT FOR

01:51:20  14    THE IPHONE, AND IF IT WASN'T SUCCESSFUL, WE REALLY WERE BETTING

01:51:23  15    THE COMPANY.  IT WAS A "BET THE COMPANY PROJECT," AND IT TOOK

01:51:28  16    YEARS.

01:51:29  17         MR. HOWARTH TOLD YOU ABOUT ALL OF THE DIFFERENT GROUPS

01:51:31  18    THAT WERE INVOLVED, HIS OWN DESIGN TEAM, ENGINEERING FROM

01:51:34  19    HARDWARE AND SOFTWARE AND MARKETING AND OPERATIONS AND

01:51:37  20    PROCUREMENT ON DOWN THE LINE.

01:51:39  21         AS HE SAID RIGHT HERE, A GOOD INTENSE FOUR YEARS WORTH OF

01:51:43  22    WORK TO DEVELOP THAT ORIGINAL DESIGN.

01:51:47  23         AND YOU SAW, AND I'D ENCOURAGE YOU TO REVIEW IN THE JURY

01:51:51  24    ROOM, PROTOTYPES THAT THEY DID NOT SELECT.  THIS IS PX 1.  WHEN

01:51:55  25    I REFER TO AN EXHIBIT NUMBER, YOU'LL SEE IT ON THE COVER OF THE

01:51:59  1    DOCUMENTS.  SO PX 1 IS A COLLECTION OF PHOTOGRAPHS OF DIFFERENT

01:52:02  2    PROTOTYPES FOR POSSIBLE IPHONE DESIGNS, AND AS MR. HOWARTH

01:52:07  3    EXPLAINED TO YOU, THEY WENT THROUGH HUNDREDS OF POTENTIAL

01:52:10  4    DESIGNS OVER THE COURSE OF THOSE YEARS OF DEVELOPMENT.

01:52:13  5         AND HERE'S JUST ONE EXAMPLE OF THE SCREEN, AND IF YOU

01:52:17  6    RECALL, MR. HOWARTH TOLD YOU WHY THEY DIDN'T SELECT CERTAIN OF

01:52:19  7    THESE DESIGNS, HOW THE CORNERS WEREN'T QUITE WHAT THEY WERE

01:52:23  8    LOOKING FOR, THE ICON LAYOUT WASN'T JUST RIGHT.

01:52:27  9         THERE WERE SOMETIMES FINE DISTINCTIONS BETWEEN THE MODELS,

01:52:30  10   AND IF YOU FLIP THROUGH THOSE PHOTOGRAPHS, YOU'LL SEE SOME THAT

01:52:34  11   LOOK SORT OF LIKE THE EVENTUAL IPHONE, BUT NOT QUITE.  THEY

01:52:37  12   WANTED TO BE PERFECT.  THEY WANTED THE DESIGN TO BE AS GOOD AS

01:52:40  13   IT COULD POSSIBLY BE, AND THAT'S WHY THEY SPENT YEARS WORTH OF

01:52:43  14   EFFORT, WENT THROUGH HUNDREDS OF PROTOTYPES TO ARRIVE AT THE

01:52:47  15   FINAL DESIGN.  AND THIS IS IT.  THIS IS THE ORIGINAL IPHONE.

01:52:50  16   THIS IS WHAT THEY DEVELOPED THROUGH ALL THEIR HARD WORK, ALL

01:52:54  17   THOSE HOURS OF EFFORT.

01:52:55  18        YOU CAN SEE THE DISTINCTIVE BLACK FRONT FACE WHICH YOU'VE

01:52:59  19   HEARD SO MUCH ABOUT OVER THE COURSE OF THE WEEK.

01:53:01  20        YOU CAN SEE THE DIMENSIONS, THE ROUNDED CORNERS, THE

01:53:05  21   COLORFUL ICON LAY OUT ACROSS THE CENTER OF THE SCREEN.

01:53:08  22        THESE ARE SOME OF THE FUNDAMENTAL DESIGN ELEMENTS THAT

01:53:11  23   DEFINES WHAT THE IPHONE WAS.

01:53:14  24        AND YOU'VE HEARD, OF COURSE, ABOUT THE AWARDS AND YOU'VE

01:53:17  25   HEARD ABOUT THE FACT THAT IT'S SHOWN IN MUSEUM EXHIBITIONS.

01:53:22   1    AND MR. HOWARTH TOLD YOU ABOUT WHY THEY LIKED IT.  THEY LIKED

01:53:25   2    IT BECAUSE THEY WANTED TO APPEAR LIKE A SINGLE THING, THE FRONT

01:53:30   3    FACE BLACK SO THAT EVERYTHING SORT OF BLENDED AWAY, THE SENSES

01:53:33   4    THAT YOU NEEDED TO WORK, YOU KNOW, TO TURN THE SCREEN ON AND

01:53:37   5    OFF AND THE RECEIVER, ALL THOSE THINGS WE WANTED TO DISAPPEAR

01:53:40   6    AND JUST BE THE ELEMENTS, THE ICONS ON THE SCREEN THAT CAME

01:53:43   7    THROUGH.

01:53:44   8        THEY WANTED THIS BLACK STRIKING SURFACE WITH THE ICONS

01:53:47   9    EMERGING FROM THAT SURFACE TO BE USED AS THE CORE APPLICATION

01:53:50   10   SCREEN ON THE IPHONE.

01:53:52   11       SO THESE ARE FUNDAMENTAL DESIGN ELEMENTS MR. HOWARTH AND

01:53:55   12   THE REST OF THE APPLE TEAM TOLD YOU HOW THEY WERE DEVELOPED.

01:54:00   13       AND HE IS, OF COURSE, PROUD OF HIS WORK.  IN HIS WORDS,

01:54:03   14   VERY, VERY, VERY PROUD.

01:54:07   15       AND MR. BLEVINS TALKED ABOUT HOW THEY WORKED LATE NIGHTS

01:54:11   16   AND WEEKENDS AND SACRIFICED FAMILY TIME, BUT THEY FELT LIKE

01:54:14   17   THEY WERE DOING SOMETHING THAT MIGHT BE THE BEST WORK OF THEIR

01:54:16   18   ENTIRE CAREER, AND THEY WERE VERY PROUD OF IT.

01:54:21   19       AND THEY DID THE RIGHT THING.  THEY WENT TO THE PATENT

01:54:24   20   OFFICE AND THEY APPLIED FOR PROTECTION ON THE DESIGN ELEMENTS,

01:54:27   21   AND THE PATENT OFFICE RECOGNIZED THAT THEY HAD COME UP WITH NEW

01:54:30   22   AND DIFFERENT DESIGNS AND GRANTED PATENTS ON THOSE INVENTIONS,

01:54:36   23   INCLUDING THE FIVE PATENTS AT ISSUE IN THIS CASE.

01:54:39   24       AND AS YOU NOW KNOW, THREE OF THESE PATENTS ARE DESIGN

01:54:42   25   PATENTS.  THEY COVER FUNDAMENTAL ASPECTS OF THE ORIGINAL IPHONE

01:54:46  1    DESIGN.  TWO OF THESE ARE UTILITY PATENTS, AND THOSE COVER TWO

01:54:50  2    FEATURES THAT YOU'VE HEARD ABOUT, DOUBLE CLICK TO ZOOM AND THE

01:54:55  3    BOUNCEBACK FEATURE.  THESE ARE A DIFFERENT CATEGORY OF PATENTS.

01:54:58  4    THEY'RE NOT DESIGN PATENTS.  THOSE ARE FUNCTIONALITY OR UTILITY

01:55:01  5    PATENTS.

01:55:01  6         BUT THESE ARE PATENTS THAT APPLE APPLIED FOR AND RECEIVED

01:55:04  7    FROM THE U.S. PATENT OFFICE ON THE ORIGINAL IPHONE DESIGN.

01:55:09  8         AND THEN APPLE WENT OFF INTO THE MARKET WITH THE IPHONE

01:55:11  9    AND HAS DONE ITS BEST IN THE YEARS SINCE TO MAKE AND SELL

01:55:15  10   IPHONES.

01:55:15  11        AND, AGAIN, IF YOU COMPETE ON A LEVEL PLAYING FIELD WHERE

01:55:19  12   EACH COMPANY DEVELOPS THEIR OWN DESIGNS, THAT'S A GOOD THING.

01:55:21  13   WE ALL BENEFIT.

01:55:23  14        SO LET'S TALK ABOUT SAMSUNG.  AND MR. LEE TOLD YOU IN THE

01:55:26  15   OPENING STATEMENT AND YOU'VE SEEN EVIDENCE OVER THE COURSE OF

01:55:29  16   THE WEEK ABOUT THE VARIOUS STAGES IN THE DEVELOPMENT OF SAMSUNG

01:55:33  17   PHONES.

01:55:34  18        YOU HEARD ABOUT THE SAMSUNG PHONES BEFORE THE IPHONE, YOU

01:55:37  19   HEARD ABOUT SAMSUNG PHONES IN THE EARLY YEARS AFTER THE IPHONE.

01:55:41  20   AND YOU KNOW THAT THEIR MARKET SHARE IN THE SMARTPHONE INDUSTRY

01:55:45  21   FELL ABOUT 10 PERCENT WHEN THE IPHONE WAS FIRST INTRODUCED DOWN

01:55:49  22   TO ABOUT 5 PERCENT IN EARLY 2010.

01:55:57  23        SO THE MARKET SHARE WAS SUFFERING AFTER THEY TRIED TO

01:56:00  24   REACT TO THE IPHONE WITH SOME OF THEIR DESIGNS OF THEIR OWN,

01:56:05  25   AND YOU KNOW EXACTLY WHAT THEY SAID WHEN THEY CONFRONTED THAT

01:56:08   1    CHALLENGE IN 2010.  THEY HAD A MEETING, AND YOU HEARD FROM ONE

01:56:11   2    OF THE ATTENDEES AT THAT MEETING, JINSOO KIM, AND YOU HAVE IN

01:56:17   3    FRONT OF YOU PORTIONS OF DOCUMENT THAT I WOULD ENCOURAGE YOU TO

01:56:20   4    READ IN ITS ENTIRETY.  THIS IS PX 40.  IT'S A COLLECTION OF

01:56:23   5    E-MAILS SUMMARIZING A MEETING OF HIGH LEVEL EXECUTIVES FROM THE

01:56:27   6    MOBILE DIVISION AT SAMSUNG ON FEBRUARY 10TH OF 2010.

01:56:31   7         NOW, AT THAT MEETING, AND AS YOU'LL SEE IN THE SUMMARY IF

01:56:34   8    YOU'RE READING FROM START TO FINISH, SOME GOOD THINGS WERE SAID

01:56:37   9    ABOUT SAMSUNG PHONES, THERE WERE QUITE COMPLIMENTARY ASPECTS OF

01:56:42   10   IT.  THESE ARE HIGH RANKING EXECUTIVES.

01:56:45   11        AND THEN THERE WERE CHALLENGES IDENTIFIED AS WELL, AND ONE

01:56:48   12   OF THOSE CHALLENGES WAS CALLED THE CRISIS OF DESIGN.  YOU'LL

01:56:50   13   SEE IT IN BOLD PRINT IN THE ORIGINAL DOCUMENT.

01:56:54   14        AND THE CRISIS OF DESIGN WAS WITH REFERENCE TO THE IPHONE.

01:56:56   15   IT STATES EXPLICITLY IN THESE E-MAILS THAT THE IPHONE HAS

01:57:01   16   BECOME THE STANDARD AND THAT YOU COMPARE THE UX WITH THE

01:57:05   17   IPHONE, IT'S THE DIFFERENCE BETWEEN HEAVEN AND EARTH.

01:57:08   18        NOW, OF COURSE, WE DIDN'T STOP WITH THOSE E-MAILS.  WE

01:57:11   19   SHOWED YOU OTHER INTERNAL SAMSUNG DOCUMENTS THAT WERE PRODUCED

01:57:14   20   IN THIS CASE AS A RESULT OF THE CASE.  THESE ARE DOCUMENTS THAT

01:57:17   21   NEVER WOULD HAVE SEEN THE LIGHT OF DAY OTHERWISE, AND WE'VE

01:57:20   22   SHOWN THEM TO YOU OVER THE COURSE OF THIS TRIAL.

01:57:22   23        AND YOU'VE SEEN DOCUMENT AFTER DOCUMENT -- THIS IS

01:57:27   24   PX 4071 -- WHICH INCLUDES COMPARISONS OF THE IPHONE ON THE ONE

01:57:31   25   HAND AND SAMSUNG PROTOTYPES ON THE OTHER.  IDENTIFICATIONS OF

01:57:35  1    DIFFERENCES BETWEEN THE TWO AND RECOMMENDATIONS TO MAKE IT MORE

01:57:40  2    LIKE THE IPHONE.

01:57:41  3         AND WE SHOWED YOU A FEW SELECTIONS FROM THESE DOCUMENTS, A

01:57:45  4    FEW PAGES.  IF YOU FLIP THROUGH THEM IN THE JURY ROOM -- AND

01:57:48  5    AGAIN, WE ENCOURAGE YOU TO READ ALL THE EXHIBITS FULLY --

01:57:51  6    YOU'LL SEE PAGE AFTER PAGE AFTER PAGE AFTER PAGE, HUNDREDS OF

01:57:54  7    PAGES COMPARING THE IPHONE TO SAMSUNG PROTOTYPES, IDENTIFYING

01:57:59  8    DIFFERENCES, AND RECOMMENDING MAKE IT MORE LIKE THE IPHONE.

01:58:02  9         SO PX 4071 IS ONE EXAMPLE OF SUCH A DOCUMENT.  PX 4061 IS

01:58:09  10   ANOTHER EXAMPLE.  PX 46 IS YET ANOTHER EXAMPLE.

01:58:17  11        PX 44, ANOTHER COMPARISON, SIDE BY SIDE, PAGE AFTER PAGE,

01:58:23  12   IDENTIFICATION OF DIFFERENCE, RECOMMENDATIONS TO MAKE IT MORE

01:58:26  13   LIKE THE IPHONE.

01:58:30  14        NOW, ONE THING I WANT TO MENTION HERE, AND I'LL COME BACK

01:58:33  15   TO THIS A BIT LATER, IS THIS IS RELEVANT TO YOUR ANALYSIS.

01:58:36  16   IT'S RELEVANT TO YOUR ANALYSIS BECAUSE IT SHOWS WHAT SAMSUNG

01:58:40  17   WAS IDENTIFYING AS PROMINENT FEATURES OF THE IPHONE ITSELF IN

01:58:43  18   ITS OWN INTERNAL DOCUMENTS, AND THEN IT WAS COPYING THOSE

01:58:47  19   FEATURES OVER INTO THE SAMSUNG PHONES.

01:58:49  20        SO ONE OF THE FACTORS IN THE ARTICLE OF MANUFACTURE TEST

01:58:52  21   IS PROMINENCE OF THE DESIGN.

01:58:54  22        WELL, YOU CAN READ THESE DOCUMENTS YOURSELF AND YOU CAN

01:58:58  23   SEE WHAT SAMSUNG WAS IDENTIFYING AS THE PROMINENT ASPECTS OF

01:59:01  24   THE IPHONE DESIGN AND HOW THOSE WERE CARRIED OVER INTO THE

01:59:04  25   SAMSUNG PRODUCTS.

01:59:05    1          THESE DOCUMENTS ESTABLISH A LINK BETWEEN THE IPHONE AND

01:59:07    2    THE SAMSUNG PRODUCTS AND CORROBORATE THAT THE DESIGNS AT ISSUE

01:59:12    3    IN THIS CASE ARE INDEED PROMINENT AND THEY WERE IN THE EYES OF

01:59:14    4    SAMSUNG ITSELF.

01:59:15    5          THERE'S ANOTHER THING I WANT TO MENTION HERE.  YOU'VE

01:59:17    6    HEARD SOME REFERENCES TO ALTERNATIVE DESIGNS, AND I'LL COME

01:59:21    7    BACK TO THAT.  BUT LOOK HOW CAREFUL SAMSUNG WAS IN STUDIOUSLY

01:59:25    8    REVIEWING AND METHODICALLY TAKING FINE DETAILS FROM THE IPHONE.

01:59:31    9    HERE WE HAVE THE SAMSUNG PROTOTYPE ON THE RIGHT, AND IT LOOKS

01:59:34   10    SOMEWHAT LIKE THE IPHONE SCREEN ON THE LEFT.

01:59:36   11          YET, THE DISTINCTION WAS IDENTIFIED BETWEEN THE TWO AND

01:59:39   12    THE RECOMMENDATION WAS MAKE IT EVEN MORE LIKE THE IPHONE.

01:59:43   13          THOSE DETAILS MATTER, AND SAMSUNG METHODICALLY AND

01:59:47   14    RIGOROUSLY COPIED OVER THOSE DETAILS INTO ITS OWN PRODUCT, PAGE

01:59:52   15    AFTER PAGE AFTER PAGE, AND YOU'LL SEE IT.

01:59:55   16          AND THIS WAS THE RESULT.  THESE ARE THE PHONES THAT WERE

01:59:59   17    INTRODUCED IN 2010, AND YOU CAN SEE AT FIRST GLANCE HOW

02:00:03   18    FAMILIAR THEY ARE TO THE IPHONE.

02:00:05   19          THERE'S FIVE PHONES ON THE SLIDE RIGHT HERE, BUT AS YOU

02:00:08   20    NOW KNOW, THERE ARE 18 PHONES THAT WERE FOUND TO INFRINGE THE

02:00:12   21    PATENTS AT ISSUE IN THIS CASE, THE THREE DESIGN PATENTS AT

02:00:15   22    ISSUE IN THIS CASE.  THIS PLACARD RIGHT HERE SHOWS THEM TO YOU.

02:00:20   23    WE HAVE PHONES THAT INFRINGE THE D'677, THE D'087, AND THE

02:00:23   24    D'305.

02:00:28   25          AND SAMSUNG'S MARKET SHARE WENT UP.

02:00:32  1          NOW, THERE'S BEEN A DEBATE ABOUT WHY IT WENT UP, AND IT'S

02:00:37  2     THERE'S BEEN AN ARGUMENT MADE TO YOU THAT THE TRAJECTORY WAS

02:00:39  3     UPWARD BECAUSE OF THE INTRODUCTION OF ANDROID OR 4G OR

02:00:43  4     DIFFERENT TYPES OF FUNCTIONALITY, AND THIS IS REALLY WHERE YOU

02:00:46  5     CAN BRING YOUR COMMON SENSE TO BEAR AS JURORS.

02:00:49  6          YOU KNOW, BECAUSE YOU HEARD THE TESTIMONY, 90 PERCENT OF

02:00:53  7     THE UNITS THAT CONTRIBUTED TO THIS SPIKE USED APPLE'S DESIGNS,

02:00:57  8     INFRINGING UNITS.

02:00:59  9          SO 10 PERCENT DIDN'T.  NOW, IF THERE WAS 10 PERCENT, IF

02:01:02 10     THOSE 10 PERCENT WERE SO GOOD, IF THOSE DESIGNS, THOSE OTHER

02:01:06 11     TYPES OF DESIGNS WERE SO VALUABLE, WOULDN'T THAT HAVE

02:01:09 12     CONTRIBUTED MORE TO THE RISE?

02:01:11 13          THE RISE WAS FUELLED BY 90 PERCENT APPLE DESIGN INFRINGING

02:01:17 14     PRODUCTS.

02:01:18 15          BUT AT THE END OF THE DAY, IT ALMOST DOESN'T MATTER.

02:01:21 16     WHATEVER THE FACTORS WERE THAT CONTRIBUTED TO THAT MARKET

02:01:24 17     SPIKE, WE HAVE TO FIGURE OUT IN THIS CASE WHAT DID SAMSUNG

02:01:28 18     APPLY THE CLAIMED DESIGNS TO?  WHAT IS THE ARTICLE OF

02:01:31 19     MANUFACTURE?  THAT'S THE FUNDAMENTAL ISSUE FOR YOU, THE LADIES

02:01:35 20     AND GENTLEMEN OF THE JURY, AND WE HAVE TO KEEP OUR EYES

02:01:38 21     FOCUSSED ON THE 18 PHONE MODELS AT ISSUE.

02:01:41 22          AND AT THIS POINT, I WANT TO FOCUS ON A QUESTION THAT'S

02:01:45 23     COME UP OVER THE COURSE OF THE CASE, AND THAT'S ALTERNATIVE

02:01:48 24     DESIGNS.

02:01:50 25          YOU'VE HEARD ABOUT SOMETHING CALLED THE F700 SAMSUNG

CLOSING ARGUMENT BY MR. MUELLER

02:01:53  1    PHONE.  YOU'VE HEARD ABOUT THE LG PRADA.  YOU'VE HEARD ABOUT

02:01:57  2    THE ACE.  YOU'VE HEARD ABOUT THESE VARIOUS OTHER PHONES, AND I

02:02:00  3    THINK THE SUGGESTION HAS BEEN MADE TO YOU THAT THE APPLE

02:02:03  4    PATENTS ARE NARROW, THAT IT'S EASY TO GET AROUND THEM, THAT

02:02:07  5    THERE'S ALTERNATIVE DESIGNS THAT LOOK AWFULLY CLOSE.

02:02:10  6         AND I THINK THE SUGGESTION IS, WE WOULDN'T HAVE HAD TO DO

02:02:13  7    MUCH TO NOT INFRINGE.  WE WOULDN'T HAVE HAD TO DO MUCH TO HAVE

02:02:18  8    A DIFFERENT DESIGN THAT WOULDN'T BE COVERED BY THESE PATENTS.

02:02:20  9    HOW VALUABLE COULD THEY BE?  I THINK THAT'S THE SUGGESTION

02:02:24  10   THAT'S BEING MADE TO YOU.

02:02:25  11        WELL, THERE'S A WAY TO CUT THROUGH THAT QUITE READILY, AND

02:02:29  12   IT'S THIS:  IF THESE PATENTS ARE SO NARROW AND SO EASY TO GET

02:02:33  13   AROUND AND NOT VALUABLE, WHY DIDN'T SAMSUNG DO JUST THAT?  WHY

02:02:39  14   DIDN'T SAMSUNG USE THESE ALTERNATIVE DESIGNS AND GO ON THEIR

02:02:44  15   WAY AND COMPETE IN THE MARKETPLACE ON A LEVEL PLAYING FIELD

02:02:47  16   USING THEIR OWN DESIGNS?

02:02:49  17        THEY DIDN'T DO THAT, AND THEY DIDN'T DO THAT EVEN AFTER

02:02:53  18   APPLE WENT TO THEM AND SAID "PLEASE STOP COPYING."

02:02:57  19        THIS IS PX 52.  PX 52, A PRESENTATION THAT WAS MADE BY

02:03:01  20   APPLE TO SAMSUNG IN 2010 SAYING, "YOU ARE COPYING OUR PATENTS.

02:03:09  21   WE WANT YOU TO STOP."

02:03:10  22        SO SAMSUNG HAD A CHOICE.  THEY COULD HAVE CHOSEN DOWN A

02:03:16  23   PATH WHERE THEY USED ALTERNATIVE DESIGNS, WHATEVER OTHER DESIGN

02:03:19  24   THEY WANTED TO USE, ONE OF THE ONES YOU HEARD ABOUT IN THIS

02:03:23  25   CASE OR SOMETHING ELSE.

02:03:23   1          BUT THEY DIDN'T DO THAT.  THEY DIDN'T DO THAT.

02:03:26   2          SO KEEP YOUR EYE ON THE BALL.  KEEP YOUR EYE ON THE 18

02:03:30   3   PHONES THAT INFRINGE.  THESE ALTERNATIVE DESIGNS HAVE

02:03:32   4   ABSOLUTELY NOTHING TO DO WITH THE QUESTION BEFORE YOU.  THESE

02:03:35   5   ARE THE PHONES THAT INFRINGE.  THESE ARE THE PHONES THAT WE

02:03:38   6   NEED TO EVALUATE TO FIGURE OUT THE ARTICLE OF MANUFACTURE TO

02:03:42   7   WHICH SAMSUNG APPLIED APPLE'S DESIGNS.

02:03:47   8          NOW, THERE'S A REASON WHY SAMSUNG DIDN'T SHIFT COURSE, WHY

02:03:52   9   THEY ACTUALLY PROCEEDED DOWN THE PATH OF INFRINGEMENT, AND

02:03:55  10   THAT'S BECAUSE THESE ARE VALUABLE PATENTS.  THEY'RE NOT NARROW.

02:03:58  11   THEY'RE NOT INCONSEQUENTIAL.  THESE ARE IMPORTANT PATENTS ON

02:04:02  12   IMPORTANT DESIGN ELEMENTS.

02:04:05  13          AND YOU KNOW HOW IMPORTANT DESIGN IS AT APPLE.

02:04:08  14   MR. HOWARTH TOLD YOU, DESIGN TEAM WORKS WITH PRODUCTS THE WHOLE

02:04:13  15   WAY THROUGH THEIR LIFECYCLE.

02:04:15  16          MR. BLEVINS TOLD YOU HOW DESIGN AFFECTS EVEN HIS JOB

02:04:18  17   OBTAINING COMPONENTS.  HE HAS TO MAKE SURE THEY FIT THE FINAL

02:04:23  18   DESIGN FOR THE PRODUCT.

02:04:24  19          AND YOU KNOW SAMSUNG CONSIDERS DESIGN IMPORTANT.  IT WAS A

02:04:26  20   CRISIS OF DESIGN THAT THEY WERE RECOGNIZING IN 2010, NOT A

02:04:32  21   CRISIS OF BATTERY LIFE OR A CRISIS OF ANDROID OR A CRISIS OF

02:04:36  22   4G.  IT WAS A CRISIS OF DESIGN.

02:04:39  23          IN FACT, IF YOU LOOK IN THIS E-MAIL, YOU'LL SEE THIS.

02:04:42  24   IT'S EASY TO FIND BECAUSE THERE'S THREE STARS IN THE ORIGINAL

02:04:45  25   DOCUMENT THAT STATE AS FOLLOWS "TO PRODUCE DESIGNER," THIS IS

02:04:53  1    RECORDING WHAT SOMEONE SAID AT THE MEETING, "YOU MUST MAKE

02:04:57  2    THREE OR FOUR DESIGN LANGUAGES A YEAR AND PUT THEM TO GOOD USE.

02:05:00  3    THE LOOK AND FEEL OF A PRODUCT MATTERS MOST."

02:05:03  4         SAMSUNG INTERNAL DOCUMENTS RECOGNIZING JUST HOW CENTRAL

02:05:07  5    DESIGN IS TO THEIR OWN PRODUCTS AND HOW CRITICAL IT WAS THAT

02:05:11  6    THEY ACHIEVE DESIGN SUCCESS, INCLUDING TO COMPETE WITH THE

02:05:14  7    IPHONE.

02:05:15  8         SO THAT'S WHY WE'RE HERE IN THIS CASE.  WE'RE TRYING TO

02:05:17  9    FIGURE OUT WHAT THE APPROPRIATE MEASURE OF DAMAGES IS IN THIS

02:05:22  10   VERY SPECIAL CIRCUMSTANCE WHERE ONE COMPANY HAS TAKEN ANOTHER

02:05:25  11   COMPANY'S DESIGNS AND APPLIED THEM TO THEIR PRODUCTS FOR

02:05:29  12   PURPOSES OF SALE, AND THE LAW PROVIDES A SPECIAL REMEDY IN

02:05:32  13   THOSE CIRCUMSTANCES.

02:05:34  14        THIS IS FROM HER HONOR'S INSTRUCTIONS WHICH YOU NOW HAVE,

02:05:38  15   NUMBER 28.  THE LAW PROVIDES THAT AN INFRINGER WHO APPLIES THE

02:05:43  16   PATENTED DESIGN TO ANY ARTICLE OF MANUFACTURE FOR PURPOSE OF

02:05:46  17   SALE SHALL BE LIABLE TO THE PATENT OWNER FOR THE AMOUNT OF THE

02:05:51  18   INFRINGER'S TOTAL PROFITS ON THE ARTICLE OF MANUFACTURE TO

02:05:54  19   WHICH THE DESIGN WAS APPLIED.

02:05:56  20        AND I'D LIKE YOU TO REMEMBER THIS LANGUAGE RIGHT HERE,

02:05:59  21   "APPLIES THE PATENTED DESIGN TO ANY ARTICLE OF MANUFACTURE FOR

02:06:02  22   THE PURPOSE OF SALE."

02:06:04  23        THAT'S THE FIRST CONDITION.  I'D JUST LIKE YOU TO KEEP

02:06:08  24   THAT IN MIND.  I'LL REFER TO IT A LITTLE BIT LATER ON.

02:06:11  25        SO HER HONOR HAS GIVEN US THE LEGAL TEST FOR HOW TO

02:06:16  1    ACHIEVE AN UNDERSTANDING OF WHAT THE ARTICLE OF MANUFACTURE IS

02:06:19  2    IN THIS CASE.  HERE'S THE FOUR FACTOR, YOU'VE SEEN THEM MANY

02:06:23  3    TIMES OVER THE COURSE OF THE WEEK, AND WE'LL GO THROUGH THEM

02:06:26  4    AGAIN IN A MOMENT.

02:06:27  5         AND AS HER HONOR HAS TOLD YOU IN FINAL INSTRUCTION NUMBER

02:06:30  6    29, IN WEIGHING THESE FACTORS, YOUR OBJECTIVE SHOULD BE TO

02:06:34  7    IDENTIFY THE ARTICLES OF MANUFACTURE THAT MOST FAIRLY CAN BE

02:06:38  8    SAID TO EMBODY SAMSUNG'S APPROPRIATION OF APPLE'S PATENTED

02:06:42  9    DESIGNS.

02:06:43  10        THAT'S THE LAW.  OKAY?  "MOST FAIRLY BE SAID TO EMBODY

02:06:48  11   SAMSUNG'S APPROPRIATION OF APPLE'S PATENTED DESIGNS."

02:06:51  12        SO WHAT IS IT?

02:06:53  13        WELL, WE OFFERED YOU TWO EXPERTS, MR. BALL AND DR. KARE,

02:06:57  14   TO HELP GO THROUGH THE FOUR FACTORS OF THE TEST AND APPLY THEM

02:07:00  15   TO THE SAMSUNG INFRINGING PRODUCTS.

02:07:02  16        AND AS THEY EXPLAINED, YOU HAVE TO LOOK AT ALL FOUR

02:07:05  17   FACTORS AS CAREFULLY AS YOU POSSIBLY CAN.

02:07:08  18        AND LET'S START WITH FACTOR 1, "THE SCOPE OF THE DESIGN

02:07:12  19   CLAIMED IN APPLE'S PATENT, INCLUDING THE DRAWING AND THE

02:07:14  20   WRITTEN DESCRIPTION."

02:07:15  21        AND I WANT TO MAKE TWO OBSERVATIONS ABOUT THIS RIGHT OFF

02:07:18  22   THE BAT.  THE FIRST IS WHEN WE LOOK AT THE SCOPE OF THE CLAIMED

02:07:24  23   DESIGN, IT'S IMPORTANT, WE HAVE TO DO THAT, WE HAVE TO

02:07:26  24   UNDERSTAND WHAT'S CLAIMED IN THE PATENT.

02:07:28  25        BUT THE PURPOSE OF THAT IS THEN TO SEE WHAT IT WAS APPLIED

02:07:31   1    TO.  I THINK THERE'S BEEN SOME SUGGESTIONS TO YOU OVER THE

02:07:34   2    COURSE OF THE WEEK THAT ONCE YOU HAVE THE CLAIM SCOPE, YOU STOP

02:07:36   3    RIGHT THERE, YOU DON'T GO TO ANYTHING ELSE.

02:07:39   4        THAT'S NOT RIGHT.  YOU HAVE TO LOOK AT FACTOR 1, 2, 3, AND

02:07:43   5    4 TO SEE WHAT THE CLAIM SCOPE WAS APPLIED TO.  THAT'S THE

02:07:47   6    ARTICLE OF MANUFACTURE.

02:07:50   7        THAT'S THE FIRST POINT.

02:07:51   8        THE SECOND POINT IS IN EVALUATING THE PATENT, WE HAVE TO

02:07:54   9    RECOGNIZE THAT THE PATENT OFFICE HAS NOT DETERMINED WHAT THE

02:07:56   10   ARTICLE OF MANUFACTURE IS IN THIS CASE, NOR HAS HER HONOR.

02:07:59   11   THAT'S FOR YOU GUYS, THE LADIES AND GENTLEMEN OF THE JURY, TO

02:08:02   12   DECIDE.

02:08:03   13       AND THERE'S A REASON FOR THAT.  THE PATENT OFFICE DID NOT

02:08:05   14   HAVE SAMSUNG'S PRODUCTS IN FRONT OF THEM.  IT HAD NO IDEA THAT

02:08:09   15   SAMSUNG WAS GOING TO BE INFRINGING THESE PATENTS YEARS DOWN THE

02:08:12   16   ROAD.  SO THERE WAS NO WAY FOR THEM TO DECIDE THAT QUESTION.

02:08:15   17       YOU HAVE THE EVIDENCE.  YOU UNDERSTAND WHAT SAMSUNG DID.

02:08:19   18   YOU UNDERSTAND THE SAMSUNG PRODUCTS AT ISSUE.  THIS IS A

02:08:22   19   QUESTION FOR YOU.

02:08:23   20       BUT THE PATENTS CAN GIVE US SOME INSIGHT INTO THE POSSIBLE

02:08:26   21   APPLICATIONS OF THE CLAIMS.  THEY CAN GIVE US SOME CLUES OR

02:08:31   22   SOME SUGGESTIONS AS TO WHAT MIGHT BE POSSIBLE FOR THE ARTICLE

02:08:34   23   OF MANUFACTURE, AND THEN WE HAVE TO KEEP GOING TO FACTOR 2, 3,

02:08:37   24   AND 4.

02:08:38   25       SO LET'S LOOK AT THE REST OF FACTOR 1.  FOR THE '677

02:08:41  1   PATENT, WE KNOW THAT THE PATENT IS TITLED "ELECTRONIC DEVICE,"

02:08:47  2   AND WE ALSO KNOW THAT THE WRITTEN DESCRIPTION, WHICH HER HONOR

02:08:50  3   HAS INSTRUCTED YOU MUST CONSIDER, STATES "THE ARTICLE OF

02:08:54  4   MANUFACTURE TO WHICH THE ORNAMENTAL DESIGN HAS BEEN APPLIED, IS

02:08:56  5   AN ELECTRONIC DEVICE, A MEDIA PLAYER, E.G., MUSIC, VIDEO,

02:09:01  6   AND/OR GAME PLAYER, MEDIA STORAGE DEVICE, PERSONAL DIGITAL

02:09:04  7   ASSISTANT, COMMUNICATION DENY, E.G. A CELLULAR PHONE, A NOVELTY

02:09:09  8   ITEM OR TOY."

02:09:11  9        NOW, AGAIN, THE PATENT OFFICE HASN'T DECIDED THE QUESTION

02:09:14  10  YOU NEED TO DECIDE.  THEY DIDN'T HAVE SAMSUNG'S PRODUCTS IN

02:09:17  11  FRONT OF THEM.

02:09:18  12       BUT THIS DOES GIVE US SOME INSIGHT INTO POSSIBLE

02:09:21  13  APPLICATIONS OF THE CLAIM SCOPE, AND AS YOU CAN SEE, THE

02:09:25  14  ARTICLES OF MANUFACTURE THAT ARE MENTIONED HERE ARE ALL

02:09:27  15  PRODUCTS, EVERY ONE OF THEM.  IT DOESN'T SAY PANE OF GLASS

02:09:32  16  ANYWHERE.

02:09:32  17       NOW, THIS PATENT DOES COVER THE BLACK FRONT FACE OF A

02:09:35  18  PRODUCT LIKE A SMARTPHONE, AND WE SEE THE EXAMPLE GIVEN IN THAT

02:09:40  19  LIST.  THE D'087 CLAIMS THE FRONT FACE, NOT NECESSARILY BLACK,

02:09:45  20  ALONG WITH THE BEZEL.

02:09:46  21       NOW, BOTH OF THOSE HAVE PARTICULAR REQUIREMENTS, INCLUDING

02:09:49  22  THE PROPORTIONS AND THE ROUNDED CORNERS, AND YOU DON'T HAVE TO

02:09:54  23  DECIDE WHETHER SAMSUNG HAS USED THOSE PARTICULAR REQUIREMENTS.

02:09:58  24  THEY HAVE.  AN EARLIER JURY FOUND THEY INFRINGE, AND THAT'S A

02:10:01  25  SETTLED VERDICT.  THEY INFRINGE THESE TWO PATENTS AND THE '305

CLOSING ARGUMENT BY MR. MUELLER

02:10:05  1      AS WELL.

02:10:06  2          THE '305 IS A GRAPHICAL USER INTERFACE FOR A DISPLAY

02:10:10  3      SCREEN OR A PORTION THEREOF.  AND HERE WE KNOW FROM THE WRITTEN

02:10:13  4      DESCRIPTION IT'S A GRAPHICAL USER INTERFACE.

02:10:16  5          AS YOU HEARD FROM DR. KARE, WHO'S WORKED ON GRAPHICAL USER

02:10:21  6      INTERFACES FOR ABOUT 30 YEARS, GRAPHICAL USER INTERFACES ARE

02:10:24  7      INTERFACES FOR PRODUCTS, LIKE THE ONE ON THE MACINTOSH, LIKE

02:10:27  8      THE ONE ON MANY ELECTRONIC DEVICES.  YOU CAN PRESS ON PICTURES

02:10:31  9      WITH THE COMPUTER MOUSE OR YOUR FINGER, AND BY USING THE

02:10:35  10     IMAGES, YOU'RE ABLE TO INTERACT WITH THE DEVICE.  BUT IT'S

02:10:38  11     INTERACTION WITH A DEVICE.  IT'S NOT A GRAPHICAL USER INTERFACE

02:10:42  12     ON A SHEET OR A PIECE OF PAPER.  IT'S A GRAPHICAL USER

02:10:47  13     INTERFACE.

02:10:49  14          GRAPHICAL USER INTERFACES ARE PRODUCT INTERFACES.

02:10:52  15          SO THOSE ARE SOME INSIGHTS THAT THE PATENTS GIVE US.

02:10:55  16          YOU'VE ALSO HEARD A LOT ABOUT THE DOTTED LINES IN SOME OF

02:10:59  17     THESE PATENTS AND HOW THAT'S NOT CLAIMED SUBJECT MATTER, WHICH

02:11:01  18     IS 100 PERCENT TRUE.  THE CLAIMED PORTION IN THE '677, FOR

02:11:05  19     EXAMPLE, IF WE GO BACK TO IT, IS THAT BLACK FRONT FACE.  THAT'S

02:11:09  20     THE CLAIMED PORTION.

02:11:10  21          THE DOTTED LINES ARE CONTEXT.  THEY SHOW YOU WHAT YOU CAN

02:11:13  22     APPLY THE CLAIM SCOPE TO, WHAT TYPE OF PRODUCT WOULD BE THE

02:11:18  23     TYPE OF PRODUCT YOU WOULD APPLY THAT DESIGN TO.

02:11:21  24          SO IT'S IMPORTANT CONTEXT, AND MR. HOWARTH TOLD YOU JUST

02:11:25  25     THAT, THAT THE DOTTED LINES ARE THERE FOR CONTEXT.

02:11:29  1        MR. BALL TOLD YOU THE SAME THING, THE DOTTED LINES ARE

02:11:32  2   THERE FOR CONTEXT.  AS HE SAID, THE BROKEN LINES COMPLETE THE

02:11:35  3   PICTURE, AND IT SHOWS THE ENTIRE SMARTPHONE UPON WHICH THE

02:11:40  4   CLAIMED DESIGN IS APPLIED.

02:11:41  5        NOW, MR. LUCENTE WAS THE ONLY SAMSUNG WITNESS WHO ACTUALLY

02:11:46  6   OFFERED A VIEW ON THE ARTICLE OF MANUFACTURE.  THEY CALLED FOUR

02:11:49  7   SAMSUNG WITNESSES TO THE STAND.  THIS WHOLE CASE IS ABOUT HOW

02:11:54  8   SAMSUNG HAS APPLIED APPLE'S DESIGNS TO SAMSUNG PRODUCTS, AND

02:11:58  9   SAMSUNG DIDN'T ASK ITS WITNESSES ONE QUESTION ABOUT HOW THEY

02:12:03  10  HAD APPLIED APPLE'S DESIGNS TO SAMSUNG'S PRODUCTS.  THEY LEFT

02:12:07  11  IT ALL FOR MR. LUCENTE.

02:12:09  12       AND HE ACKNOWLEDGED THAT THOSE DOTTED LINES PROVIDE

02:12:11  13  CONTEXT.  IF YOU RECALL, I ASKED HIM, IT PROVIDES CONTEXT,

02:12:15  14  IMPORTANT CONTEXT; CORRECT?

02:12:16  15       AND HIS ANSWER WAS, YEAH.

02:12:19  16       BUT THEN AS YOU SAW YESTERDAY, HE PROCEEDED TO ERASE ALL

02:12:23  17  OF THAT CONTEXT.  HE JUST TOOK OUT THE DOTTED LINES IN THE

02:12:26  18  DEMONSTRATIVES THAT HE SHOWED TO YOU, TOOK ALL THAT CONTEXT OUT

02:12:29  19  AND TOLD YOU NOT TO PAY ATTENTION TO THE SENTENCE THAT SAYS THE

02:12:33  20  ARTICLE OF MANUFACTURE COULD BE A LIST OF PRODUCTS.

02:12:35  21       SO HE EFFECTIVELY IGNORED THOSE PORTIONS OF THE WRITTEN

02:12:39  22  DESCRIPTION AND THE DRAWINGS THAT DIDN'T CORRESPOND TO HIS

02:12:42  23  OPINION AND YOU CAN'T DO THAT.  YOU HAVE TO CONSIDER THE

02:12:44  24  CONTEXT AND GIVE IT MEANING.  IT GIVES US CLUES AS TO THE TYPES

02:12:48  25  OF PRODUCTS THAT THE DESIGNS MIGHT BE APPLIED TO.

02:12:51  1          DOES IT FULLY ANSWER THE QUESTION BEFORE US?  NO.  WE NEED

02:12:54  2     TO LOOK AT THE SAMSUNG PRODUCTS AS WELL.

02:12:57  3          BUT IT'S IMPORTANT INSIGHT, AND HE IGNORED IT.

02:13:01  4          THAT TAKES US TO THE SECOND FACTOR, THE RELATIVE

02:13:04  5     PROMINENCE OF THE DESIGN IN THE PRODUCT AS A WHOLE.

02:13:07  6          AND WE STARTED BY SHOWING YOU THE RELATIVE PROMINENCE OF

02:13:11  7     THESE DESIGNS IN THE IPHONE.  NOW, WE DID SO FOR A REASON.  WE

02:13:14  8     DID BECAUSE, AS YOU'VE SEEN, SAMSUNG PROCEEDED TO COPY THOSE

02:13:17  9     DESIGNS.  SO THERE'S A LINK BETWEEN THE IPHONE ON THE ONE HAND

02:13:21 10     AND THE SAMSUNG PRODUCTS ON THE OTHER.  SAMSUNG TOLD YOU A FEW

02:13:26 11     TIMES THAT THE ULTIMATE INQUIRY HERE ISN'T HOW SAMSUNG APPLIED

02:13:30 12     THESE DESIGNS IN ITS OWN PRODUCTS.  THAT'S 100 PERCENT TRUE.

02:13:33 13     YOU HAVE TO STAY FOCUSSED ON THESE 18 INFRINGING MODELS AND

02:13:38 14     CONSIDER HOW THE CLAIMED DESIGNS WERE APPLIED IN THESE MODELS.

02:13:41 15          BUT IT'S CERTAINLY INSTRUCTIVE TO LOOK AT THE IPHONE, HOW

02:13:43 16     PROMINENT THE DESIGNS WERE IN THE IPHONE, HOW PROMINENT SAMSUNG

02:13:48 17     THOUGHT THOSE DESIGNS WERE AND HOW THEY METHODICALLY COPIED

02:13:50 18     THEM OVER TO THEIR OWN PRODUCTS.  IT'S RELEVANT TO FACTOR 2.

02:13:55 19          AND AS WE SHOWED YOU, THESE DESIGNS HAVE BECOME ICONIC,

02:13:58 20     INCLUDING IN OUR CULTURE, AND SAMSUNG RECOGNIZED THAT.  HERE'S

02:14:02 21     SOME OF THOSE DOCUMENTS THAT I NAMED FOR YOU EARLIER, PX 44 AND

02:14:07 22     PX 46, THE SIDE-BY-SIDE COMPARISONS OF THE DESIGN ELEMENTS OF

02:14:12 23     THE IPHONE AND THE COPYING OF THOSE ELEMENTS INTO THE SAMSUNG

02:14:15 24     PRODUCTS.

02:14:16 25          AND YOU CAN SEEN THE RESULT.  HERE'S ADVERTISING OF

02:14:19  1    SAMSUNG PRODUCTS.  THE BLACK FRONT FACE HERE COULDN'T BE MORE

02:14:22  2    PROMINENT, COULD NOT BE MORE PROMINENT, EDGE-TO-EDGE GLASS,

02:14:26  3    DIMENSIONS LIKE THOSE CLAIMED IN THE D'677 PATENT.

02:14:30  4         NOW, AT ONE POINT OVER THE COURSE OF TRIAL, SAMSUNG SHOWED

02:14:33  5    YOU SOME OTHER DESIGNS AND SAID CAN YOU SEE DIFFERENCES BETWEEN

02:14:36  6    THIS NON-INFRINGING ALTERNATIVE AND THE DESIGN?  THAT'S NOT THE

02:14:40  7    TEST.  THAT'S NOT THE TEST AT ALL.  A BLACK FRONT FACE CAN BE

02:14:43  8    PROMINENT IN BOTH DICES.

02:14:45  9         BUT AT THE END OF THE DAY, WHAT REALLY MATTERS IS, IS IT

02:14:49  10   PROMINENT?  IS THE CLAIMED DESIGN PROMINENT IN THE SAMSUNG

02:14:51  11   PRODUCTS?  AND IT CLEARLY IS.

02:14:53  12        IF YOU LOOK AT THE FRONT FACE, IF YOU WERE TO USE THE

02:14:56  13   PHONE AND HANDLE THE PHONE, WHICH WE ENCOURAGE YOU DO IN THE

02:14:59  14   JURY ROOM, YOU WILL SEE JUST HOW PROMINENT THESE DESIGNS ARE.

02:15:03  15   EVERY TIME YOU USE THESE PHONES, YOU WILL SEE THAT BLACK FRONT

02:15:06  16   FACE.  EVERY TIME YOU USE THE APPLICATION SCREEN, YOU WILL SEE

02:15:09  17   THAT GUI DISPLAY.  THEY'RE ABOUT AS PROMINENT AS THEY POSSIBLY

02:15:12  18   COULD BE.

02:15:14  19        AND HERE'S AN EXAMPLE.  HERE'S JUST ONE EXAMPLE OF THE

02:15:17  20   INFRINGING PHONES, THE SAMSUNG VIBRANT.  YOU CAN SEE THE BLACK

02:15:21  21   FRONT FACE, THAT STRIKING SURFACE, THE BEZEL, THE GRAPHICAL

02:15:27  22   USER INTERFACE, AND THAT GRAPHICAL USER INTERFACE, THAT IS THE

02:15:29  23   INTERACTION SCREEN.  YOU'VE HEARD ABOUT THE HOME SCREEN, IF YOU

02:15:33  24   PRESS THE BUTTON FOR THE APPLICATION SCREEN, THAT'S WHAT COMES

02:15:36  25   UP.

02:15:37   1        IF SAMSUNG HAD ALL THESE OPTIONS AND ALL THESE DIFFERENT

02:15:40   2    WAYS TO DESIGN APPLICATION SCREEN, THEY COULD HAVE SHOWN ONE.

02:15:44   3    THEY COULD HAVE USED A DIFFERENT DESIGN, AND THEY ESPECIALLY

02:15:47   4    COULD HAVE USED A DIFFERENT DESIGN AFTER APPLE SAID PLEASE STOP

02:15:50   5    USING OURS.  THEY DIDN'T.

02:15:52   6        AND THE PRESS RECOGNIZED EXACTLY WHAT THEY HAD DONE, AND

02:15:54   7    YOU'VE SEEN SOME OF THE ARTICLES OVER THE COURSE OF THIS CASE.

02:15:56   8    THESE PRODUCTS WERE RELEASED, DESCRIBED AS RIP-OFFS, AS HAVING

02:16:02   9    STRIKING SIMILARITY, AND INTERESTINGLY, THE FEATURES THAT WERE

02:16:05   10   CALLED OUT BY THE PRESS WERE PRECISELY THE ONES THAT ARE AT

02:16:09   11   ISSUE IN THIS CASE, THE GLOSSY BLACK FINISH, THE ROUNDED

02:16:12   12   CURVES, THE GRID OF ICON, VERY SIMILAR TO THE LOOKS OF THE

02:16:15   13   IPHONE.

02:16:16   14       SO THE PRESS RECOGNIZED THE PROMINENCE OF THESE DESIGN

02:16:19   15   CONCEPTS THAT ARE CLAIMED BY THE THREE PATENTS AT ISSUE IN THIS

02:16:22   16   CASE.

02:16:24   17       NOW, FACTOR 3, WHETHER THE DESIGN IS CONCEPTUALLY DISTINCT

02:16:29   18   FROM THE PRODUCT AS A WHOLE.

02:16:30   19       THE PRODUCT AT ISSUE IN THIS CASE FOR EACH OF THE

02:16:32   20   INFRINGING UNITS IS A PHONE.  IT'S A PHONE.  IT'S THE CONCEPT

02:16:36   21   HERE IS THE SMARTPHONE.  AND THE QUESTION FOR YOU IS, IS THAT

02:16:40   22   BLACK FRONT FACE CONCEPTUALLY TIED INTO THE SMARTPHONE?  OF

02:16:45   23   COURSE IT IS.  EVERYTHING YOU DO WITH THAT SMARTPHONE IS GOING

02:16:47   24   TO INVOLVE THAT BLACK FRONT FACE, THAT FRONT SURFACE WHERE

02:16:51   25   EVERYTHING HAPPENS, WHERE ALL THE ACTION OCCURS.

CLOSING ARGUMENT BY MR. MUELLER                                    1262

02:16:53   1        THE SAME WITH THE GRAPHICAL USER INTERFACE.  IT'S TIED IN

02:16:58   2   WITH THE IDENTITY OF THE PHONE, AND HERE'S ONE EASY WAY TO KNOW

02:17:01   3   IT.  IT HAS THE PHONE ICON.  IT HAS THE PHONE ICON.  IT'S TIED

02:17:05   4   INTO THE NOTION OF THIS IS A PHONE.

02:17:07   5        AND NOTE THAT THIS PHONE ICON, THIS GREEN PHONE ICON IS

02:17:11   6   ONE OF THE THINGS THAT SAMSUNG WAS SO CAREFUL TO STUDY AND TO

02:17:14   7   COPY FROM THE IPHONE.  YOU HAVE A GREEN PHONE ICON ON THE

02:17:19   8   ORIGINAL IPHONE.  IT'S COPIED OVER INTO THESE SAMSUNG

02:17:21   9   INFRINGING PRODUCTS.

02:17:23  10        SO THESE ARE CONCEPTUALLY INTERTWINED IN CRITICAL WAYS.

02:17:27  11        NOW, THERE'S ALTERNATIVE PRODUCTS THAT ARE NOT

02:17:30  12   CONCEPTUALLY INTERTWINED.  FOR EXAMPLE, IF YOU WERE TO PUT THE

02:17:33  13   EQUIVALENT OF A PHONE ON THE FRONT OF THE PRINTER, THAT'S NOT

02:17:36  14   CONCEPTUALLY TIED IN WITH THE PRINTER, YOU CAN TAKE IT OFF.

02:17:39  15        THIS MOTOROLA MODULAR PHONE THAT IS INTENDED TO HAVE THE

02:17:44  16   SNAP-OFF BACKS.  ANY ONE OF THOSE SNAP-OFF BACKS WOULD NOT BE

02:17:46  17   CONCEPTUALLY INTERTWINED.  BUT FOR A PHONE LIKE THIS, IT'S A

02:17:49  18   SINGLE UNIT, IT'S A SINGLE SMARTPHONE DEVICE, IT'S NOT MODULAR.

02:17:52  19   IT'S INTENDED TO BE A PHONE.  EACH AND EVERY ONE OF THE PATENTS

02:17:56  20   ARE CONCEPTUALLY INTERTWINED WITH THAT SMARTPHONE CONCEPT.

02:18:01  21        AND THAT TAKES US TO THE LAST FACTOR, FACTOR 4, THE

02:18:06  22   PHYSICAL RELATIONSHIP BETWEEN THE PATENTED DESIGN AND THE REST

02:18:08  23   OF THE PRODUCT, INCLUDING WHETHER THE DESIGN IS EMBODIED IN A

02:18:12  24   COMPONENT THAT'S MANUFACTURED SEPARATELY OR CAN BE SEPARATED.

02:18:15  25        AND HERE I ASKED YOUR HONOR IF I COULD PUBLISH THESE TO

02:18:22  1    YOU YESTERDAY, AND YOU'LL HAVE THEM IN THE JURY ROOM.  JUST

02:18:24  2    LOOK AT THE COMPONENTS YOURSELF AND USE YOUR COMMON SENSE.

02:18:27  3         SO WE HAVE THE D'677 COMPONENT.  THIS IS FROM THE BLACK

02:18:31  4    FRONT FACE DESIGN PATENT.  IT'S NOT BLACK.  IT'S NOT BLACK.  SO

02:18:35  5    IT CAN'T EMBODY THE DESIGN IF IT DOESN'T HAVE THE DESIGN.

02:18:39  6         THE DESIGN HASN'T BEEN APPLIED TO THIS.  IT'S NOT THERE.

02:18:42  7    THE DESIGN IS NOT THERE.

02:18:43  8         IN TURNS OUT THAT YOU NEED TO PUT IT AGAINST THE REST OF

02:18:46  9    THE PHONE, THE LCD, THE POLARIZATION TO ACHIEVE THAT BLACK

02:18:50  10   EFFECT.  PART OF THE PHONE, AND IT'S NOT APPLIED TO THE PHONE

02:18:54  11   OR APPLIED TO THE COMPONENT IF IT'S NOT THERE AT ALL.  IT'S

02:18:58  12   JUST NOT THERE.

02:18:59  13        THE SAME, TOO, WITH THE DISPLAY SCREEN.  THIS ONE IS

02:19:05  14   CRACKED, BUT YOU CAN LOOK AT IT FOR WEEKS.  AND, IN FACT, I

02:19:10  15   ASKED MR. LUCENTE THAT, DID YOU EVER SEE GRAPHICAL USER

02:19:14  16   INTERFACE APPEAR THERE?  IT HAS TO BE CONNECTED TO CIRCUITRY

02:19:17  17   RUNNING SOFTWARE AND A POWER SOURCE AND ONLY THEN WILL YOU SEE

02:19:21  18   A GRAPHICAL USER INTERFACE APPEAR.  SO IT'S JUST A MATTER OF

02:19:23  19   COMMON SENSE.  THESE CANNOT POSSIBLY BE THE ARTICLES OF

02:19:26  20   MANUFACTURE WHEN THE DESIGNS ARE NOT THERE.

02:19:28  21        THE FACT THAT YOU CAN PULL APART A PHONE, AS MR. LUCENTE

02:19:31  22   DID, MEANS ABSOLUTELY NOTHING.  IT MEANS ABSOLUTELY NOTHING.

02:19:34  23        THE QUESTION IS, WHAT DID THEY APPLY THOSE DESIGNS TO,

02:19:38  24   WHAT FAIRLY EMBODIES THOSE DESIGNS?  AND IT'S NOT A PANE OF

02:19:42  25   GLASS, AND IT'S NOT A DISPLAY SCREEN THAT DOESN'T SHOW A GUI.

02:19:46  1    IT'S THE PHONE.

02:19:47  2          AND MR. HOWARTH RECOGNIZED THAT.

02:19:49  3          "QUESTION:  WHAT DID SAMSUNG APPLY THOSE CLAIMED DESIGNS

02:19:52  4    TO?

02:19:53  5          "ANSWER:  TO THE PHONE."

02:19:55  6          MR. BALL "IN CONCLUSION, MR. BALL, BASED ON YOUR

02:19:59  7    APPLICATION OF THE FOUR FACTOR TEST, WHAT ARE THE ARTICLES OF

02:20:02  8    MANUFACTURE FOR THE PRODUCTS FOUND TO INFRINGE THE D'677 AND

02:20:05  9    THE D'087?"  THE SMARTPHONES.

02:20:10  10         DR. KARE, SHE'S ASKED THE SAME QUESTION FOR THE '305, WHAT

02:20:13  11   IS THE ARTICLE OF MANUFACTURE?

02:20:15  12         IT IS EACH FINISHED PHONE BECAUSE THEN YOU SEE THE D'305

02:20:19  13   GRAPHICAL USER INTERFACE.

02:20:20  14         NOW, MR. LUCENTE WAS HERE YESTERDAY AND YOU HEARD HIM

02:20:23  15   TESTIFY AND YOU SAW WHEN I SHOWED HIM HIS DEPOSITION TESTIMONY

02:20:26  16   WHERE HE CONCEDED THAT IT'S NOT COMPLETELY BLACK IN COLOR WHEN

02:20:29  17   YOU PURCHASE IT, BUT WHEN YOU APPLY IT, YOU KNOW, WHEN YOU PUT

02:20:32  18   IT ON THE LCD IN THE FINISHED PRODUCT, THEN IT IS ESSENTIALLY

02:20:35  19   WHAT'S IN THE '677.

02:20:38  20         HE TRIED TO EXPLAIN THAT YESTERDAY.  YOU'RE GOING TO HAVE

02:20:40  21   TO JUDGE FOR YOURSELF WHETHER HE WAS ABLE TO DO THAT.  BUT THE

02:20:43  22   TRUTH OF THE MATTER IS THE COMPONENT THAT THEY ALLEGE IS THE

02:20:45  23   '677 COMPONENT IS NOT BLACK AND HE RECOGNIZED THAT.

02:20:48  24         AND HE WAS MORE CANDID WITH RESPECT TO THE GRAPHICAL USER

02:20:51  25   INTERFACE.  THE JURY CAN LOOK AT THAT FOR WEEKS AND THE

02:20:54  1    GRAPHICAL USER INTERFACE WILL NEVER APPEAR ON THAT DISPLAY

02:20:57  2    SCREEN AS YOU HOLD IT IN YOUR HAND?

02:21:00  3         "ANSWER:  WELL, I -- I THINK WE CAN AGREE ON THAT."

02:21:03  4         AND IN AN UNGUARDED MOMENT WHEN HE WAS BEING EXAMINED BY

02:21:08  5    SAMSUNG'S COUNSEL, HE WAS ASKED IF YOU LOOKED AT THE IPHONE OR

02:21:13  6    IF YOU'RE LOOKING AT THE SAMSUNG PHONES THAT WERE FOUND TO BE

02:21:16  7    INFRINGING, HE SAID, YES, I'M FOCUSSED ON THE SAMSUNG PHONES.

02:21:19  8         AND WHY IS THAT?

02:21:21  9         BECAUSE THAT'S -- THEY -- THAT'S WHERE THE DESIGN APPEARS

02:21:25  10   IN THE SAMSUNG PHONES.

02:21:27  11        AND HE'S RIGHT.  THAT'S WHERE THE DESIGN ACTUALLY APPEARS.

02:21:29  12   THAT'S WHERE YOU SEE THE BLACK FRONT FACE.  THAT'S WHERE YOU

02:21:32  13   SEE THE GRAPHICAL USER INTERFACE.  IT'S IN THE PHONES.

02:21:35  14        THE BOTTOM LINE IS A PHONE IS A PHONE AND SAMSUNG HAS BEEN

02:21:39  15   TRYING TO DISASSEMBLE THEM OVER THE COURSE OF THE WEEK.  BUT

02:21:44  16   THEY APPLY THESE KINDS TO PHONES.

02:21:47  17        AND THE CONSEQUENCE IS THAT THE FIRST STEP IN THE DESIGN

02:21:49  18   PATENT DAMAGES TEST IS THAT THE ARTICLE OF MANUFACTURE IS THE

02:21:51  19   PHONE.  AND SO WE TURN TO DEDUCTION -- I'M SORRY, CALCULATION

02:21:55  20   OF PROFITS FOR THE PHONES.

02:21:58  21        ON THAT QUESTION, APPLE HAS THE BURDEN OF PROOF ON

02:22:03  22   SAMSUNG'S GROSS REVENUE, AND SAMSUNG HAS THE BURDEN OF PROVING

02:22:07  23   DEDUCTIBLE EXPENSES.

02:22:09  24        NOW, MR. WAGNER WAS CROSS-EXAMINED, OR EXAMINED AND

02:22:12  25   CROSS-EXAMINED JUST THIS MORNING AND YOU HEARD THE FACTS ON

02:22:14  1    THIS, AND YOU HEARD MR. WAGNER ACKNOWLEDGE THAT THE DESIGN

02:22:18  2    PATENT STATUTE IS A SPECIAL STATUTE FOR A SPECIAL CIRCUMSTANCE.

02:22:23  3         LAST QUESTION ON THIS PAGE, SECTION 289 IS DESCRIBING A

02:22:27  4    SPECIFIC CIRCUMSTANCE; CORRECT?

02:22:28  5         AND A LITTLE BIT EARLIER HE ACKNOWLEDGED THAT IT'S

02:22:32  6    DIFFERENT FROM THESE GENERALLY ACCEPTED ACCOUNTING PRINCIPLES,

02:22:36  7    IT'S A SPECIAL CIRCUMSTANCE.

02:22:37  8         AND MR. LEE ASKED HIM THE QUESTION, AND IT'S AN UNUSUAL

02:22:40  9    CIRCUMSTANCE WHEN SOMEONE HAS MISAPPROPRIATED A DESIGN PATENT;

02:22:43  10   CORRECT?

02:22:44  11        "ANSWER:  I BELIEVE IT IS.

02:22:46  12        "IT'S QUESTION IT'S PARTICULARLY AN UNUSUAL CIRCUMSTANCE

02:22:48  13   WHEN THE MISAPPROPRIATION HAS BEEN DONE MILLIONS AND MILLIONS

02:22:51  14   AND MILLIONS OF TIMES; CORRECT?

02:22:53  15        "ANSWER:  I'VE NOT SEEN MANY OTHER CASES AS LARGE AS

02:22:57  16   THIS."

02:22:58  17        SO THERE'S $3.3 BILLION IN REVENUE, AND THE QUESTION IS,

02:23:03  18   HOW DO WE CALCULATE PROFIT ON THAT REVENUE FOR THESE PHONES?

02:23:07  19        AND, AGAIN, WE HAVE TO FOLLOW HER HONOR'S INSTRUCTION ON

02:23:11  20   HOW WE DO THAT.  APPLE HAS THE BURDEN OF ESTABLISHING REVENUE,

02:23:15  21   AND THEY'VE DONE THAT.  THERE'S NO DISPUTE AS TO THE TOTAL

02:23:17  22   AMOUNT OF REVENUE.  THE DISPUTE IS HOW MUCH TO DEDUCT IN THE

02:23:20  23   WAY OF EXPENSES.

02:23:21  24        AND ON THAT QUESTION, SAMSUNG HAD THE BURDEN AND,

02:23:25  25   MOREOVER, SAMSUNG HAD THE BURDEN OF SHOWING THAT THE DEDUCTIBLE

02:23:29  1   EXPENSES ARE DIRECTLY ATTRIBUTABLE, DIRECTLY ATTRIBUTABLE TO

02:23:33  2   THE SALE OR MANUFACTURE OF THE INFRINGING PRODUCTS, RESULTING

02:23:36  3   IN A NEXUS BETWEEN THE INFRINGING PRODUCTS AND THE EXPENSES.

02:23:40  4   IT'S SAMSUNG'S BURDEN TO PROVE DIRECTLY ATTRIBUTABLE.

02:23:44  5        THE QUESTION IS, DID THEY MEET THAT BURDEN?

02:23:47  6        AND SO LET'S WALK THROUGH THE CATEGORIES OF EXPENSES AND

02:23:51  7   LET'S START WITH COSTS OF GOODS SOLD.  THESE ARE THE PHYSICAL

02:23:54  8   COSTS OF THE GOODS SOLD, AND EVERYONE AGREES ON THIS.

02:23:57  9   MS. DAVIS AGREES THAT THEY DID ESTABLISH DIRECTLY ATTRIBUTABLE

02:24:02  10  COSTS OF GOODS SOLD, AND SHE'S DEDUCTED THOSE FROM THE

02:24:05  11  REVENUES, AND MR. WAGNER DOESN'T QUESTION HER ANALYSIS ON THAT

02:24:08  12  ISSUE.  SO EVERYONE AGREES ON COST OF GOODS SOLD, THAT THOSE DO

02:24:11  13  NEED TO BE DEDUCTED, AND WE AGREE ON THE AMOUNT.

02:24:14  14        RESEARCH AND DEVELOPMENT.  NOW, HERE IT'S QUITE

02:24:18  15  INTERESTING.  SAMSUNG HAS RELIED ON SOME NUMBERS THAT ARE NOT

02:24:21  16  TIED TO THE PHONES.  THEY INVOLVE OTHER PHONES THAT WERE

02:24:23  17  RELEASED AFTER THE PHONES AT ISSUE IN THIS CASE.

02:24:31  18        NOW, MR. WAGNER TOLD YOU THIS MORNING THAT THAT'S DONE

02:24:34  19  BECAUSE THAT'S JUST THE WAY IT'S DONE, THAT WHEN THE NUMBERS

02:24:36  20  HIT THE BOOKS, THE RESEARCH AND DEVELOPMENT NUMBERS HIT THE

02:24:40  21  BOOKS AT THE SAME TIME AS OTHER PHONES THAT ARE CURRENTLY ON

02:24:42  22  THE MARKET.

02:24:44  23        THAT'S BESIDE THE POINT.  WHENEVER THEY HIT THE BOOKS, IN

02:24:47  24  THIS CASE, WE'RE DEALING WITH DESIGN PATENT INFRINGEMENT AND

02:24:49  25  THEY HAD AN OBLIGATION TO PROVIDE INFORMATION THAT LED THE

02:24:52  1    RESEARCH AND DEVELOPMENT FOR THE PHONES AT ISSUE IN THIS CASE

02:24:55  2    TO THOSE PHONES, AND THEY JUST DIDN'T DO IT.

02:24:58  3        AND THERE'S ANOTHER QUESTION YOU HAVE TO ASK YOURSELF:

02:25:01  4    THE RESEARCH AND DEVELOPMENT COSTS FOR THESE PHONES, OR THE 18

02:25:05  5    INFRINGING PHONES WAS DONE BEFORE THOSE PHONES, AND IT WAS DONE

02:25:08  6    IN A PERIOD WHEN SAMSUNG WAS COPYING.  AND YOU'LL SEE THOSE

02:25:12  7    COPYING DOCUMENTS YOURSELF.

02:25:14  8        SO THEY HAVEN'T GIVEN YOU THE RESEARCH AND DEVELOPMENT

02:25:17  9    EXPENSES FOR THE COPYING PERIOD, AND ONE REASON MIGHT BE

02:25:21 10    THEY'RE A LOT LOWER.  YOU'RE GOING TO BE SPENDING LESS ON R&D

02:25:25 11    WHEN YOU'RE COPYING.  SO FOR R&D, YOU SHOULDN'T GIVE THEM A

02:25:30 12    NICKEL BECAUSE THEY'VE GIVEN YOU THE WRONG PERIOD, AND THE

02:25:34 13    RIGHT PERIOD WOULD HAVE BEEN THE COPYING PERIOD WHICH WOULD

02:25:36 14    HAVE BEEN A LOWER AMOUNT THAT IN ANY EVENT WOULD HAVE BEEN THE

02:25:36 15    AMOUNT THAT'S TIED TO THE PHONES.  WITHOUT THAT NEXUS, IT'S NOT

02:25:40 16    A DEDUCTIBLE EXPENSE, AND MR. WAGNER CONCEDED, THE R&D EXPENSES

02:25:44 17    WERE NOT DIRECTLY RELATED TO A SPECIFIC PRODUCT.

02:25:47 18        AND THE SAME IS TRUE WITH THE OTHER CATEGORIES.  GENERAL

02:25:50 19    AND ADMINISTRATIVE EXPENSES, MR. WAGNER CONCEDED.  WHEN MR. LEE

02:25:54 20    ASKED HIM ABOUT THIS, HE SAID THE GENERAL AND ADMINISTRATIVE

02:25:57 21    EXPENSES, THAT'S LIKE HR, ACCOUNTING, LAWYERS, OTHER THINGS;

02:26:02 22    CORRECT?

02:26:02 23        "ANSWER:  YES.

02:26:04 24        "QUESTION:  YOU SAID THEY'RE NOT SPECIFICALLY RELATED

02:26:07 25    TO -- THEY'RE NOT DIRECTLY RELATED TO SPECIFIC PRODUCTS?

02:26:09   1          "ANSWER:  THEY ARE NOT.

02:26:10   2          "QUESTION:  CAN YOU TELL ME, AGAIN, WHETHER YOU AGREE OR

02:26:13   3   DISAGREE WITH THIS STATEMENT:  CAN YOU NOT IDENTIFY FROM

02:26:15   4   SAMSUNG'S FINANCIAL RECORDS ANY GENERAL AND ADMINISTRATIVE

02:26:19   5   COSTS SPECIFIC TO THE INFRINGING PHONES?

02:26:21   6          "ANSWER:  I CANNOT."

02:26:24   7          SALES EXPENSES, THE FINAL CATEGORY.

02:26:28   8          ONCE AGAIN:

02:26:30   9          "QUESTION:  BUT IN YOUR REPORT THAT YOU FILED IN JANUARY

02:26:32  10   OF THIS YEAR, YOU SAID THAT THE MARKETING EXPENSES WERE NOT

02:26:34  11   DIRECTLY RELATED TO SPECIFIC PRODUCTS; CORRECT?

02:26:37  12          "ANSWER:  I DID."

02:26:38  13          SO FOR CATEGORY AFTER CATEGORY, SAMSUNG HAD THE BURDEN OF

02:26:41  14   ESTABLISHING A DIRECT RELATIONSHIP, DIRECTLY ATTRIBUTABLE,

02:26:45  15   BETWEEN THESE 18 INFRINGING PRODUCTS AND THOSE EXPENSES AND DID

02:26:49  16   NOT MEET ITS BURDEN.

02:26:51  17          THE ONLY CATEGORY FOR WHICH THAT DIRECTLY ATTRIBUTABLE

02:26:56  18   LINK EXISTS, THAT NEXUS, IS THE COST OF GOODS SOLD.

02:27:01  19          AND THE FINAL QUESTION, AGAIN, MAKES THE SAME POINT.  "YOU

02:27:05  20   CANNOT IDENTIFY FROM SAMSUNG'S FINANCIAL RECORDS ANY MARKETING

02:27:07  21   COSTS SPECIFIC TO THE INFRINGING PHONES?

02:27:09  22          "ANSWER:  I CANNOT -- I DON'T HAVE THAT LEVEL OF DETAIL."

02:27:13  23          SO IF WE WERE TO -- IF WE REMOVED THE COST OF GOODS SOLD

02:27:18  24   AND THE REVENUE NUMBER THAT EVERYONE AGREES ON, IT'S

02:27:21  25   $1.067 BILLION IN TOTAL PROFIT FOR THE PHONES.

02:27:26   1        AND JUST TO REPEAT WHERE WE STARTED FROM, WE FIRST HAVE TO

02:27:30   2   FIGURE OUT THE ARTICLE OF MANUFACTURE.  IT'S THE PHONES.  THEN

02:27:33   3   APPLE HAS TO SHOW THE REVENUES FOR THOSE PHONES.  WE DID.

02:27:36   4   THERE'S NO DISPUTE ON THAT.

02:27:38   5        AND THEN WE NEED TO FIGURE OUT WHAT EXPENSES ARE DIRECTLY

02:27:41   6   ATTRIBUTABLE.  THE ONLY CATEGORY IS COST OF GOODS SOLD, THAT'S

02:27:44   7   THE 2.264 BILLION.  AND SO THE RIGHT NUMBER, THE ONLY NUMBER

02:27:51   8   THAT COMPORTS WITH BOTH THE FACTS AND THE LAW IS $1.067 BILLION

02:27:55   9   FOR THE PHONES AT ISSUE IN THIS CASE.

02:27:57  10        NOW, THAT'S A LOT OF MONEY.  BUT IT'S A SPECIAL REMEDY FOR

02:28:00  11   SPECIAL CONDUCT.  THIS IS AN UNUSUAL CASE AS MR. WAGNER HIMSELF

02:28:05  12   ADMITTED.  MILLIONS UPON MILLIONS OF ACTS OF INFRINGEMENT

02:28:09  13   DESIGN PATENTS WHERE THE LAW RECOGNIZES THE IMPORTANCE OF

02:28:12  14   DESIGN AND PROVIDES THAT SPECIAL REMEDY.

02:28:14  15        IN FACT, AS YOU SEE IN THE JURY INSTRUCTIONS, THERE'S AN

02:28:16  16   ENTIRE SEPARATE SECTION ON DESIGN PATENT REMEDIES.  THAT'S THE

02:28:20  17   SECTION THAT APPLIES TO THESE PATENTS.  THAT'S THE SECTION THAT

02:28:22  18   APPLIES TO THESE FACTS.

02:28:27  19        ON THE -- THIS IS, AGAIN, SHOWING THE SUMMARY.  I'LL ONLY

02:28:30  20   BRIEFLY MENTION REASONABLE ROYALTY BECAUSE THAT'S CONCEDED.

02:28:33  21   THIS IS FOR THE TWO UTILITY PATENTS, THE BOUNCEBACK PATENT AND

02:28:35  22   THE DOUBLE CLICK.  MR. WAGNER DID NOT CONTEST MS. DAVIS'S

02:28:39  23   NUMBERS.  $5.3 MILLION IN DAMAGES FOR THOSE.

02:28:44  24        AND SO AT THE END OF THE DAY, THE DAMAGES CALCULATION FOR

02:28:46  25   THE DESIGN PATENTS IS WHAT YOU SEE HERE.  FOR THE REASONABLE

02:28:50  1    ROYALTY, WHICH IS NOT IN DISPUTE, IT'S 5.3 MILLION.

02:28:54  2         ON THE VERDICT FORM, YOU'RE GOING TO SEE A CHART THAT

02:28:56  3    LOOKS JUST LIKE THIS, AND IT LISTS, PRODUCT BY PRODUCT, AND

02:29:00  4    THEN ASKS YOU TO PROVIDE THE AMOUNT FOR EACH.

02:29:02  5         AND YOU WILL SEE THE VERDICT FORM MAND YOU WILL UNDERSTAND

02:29:05  6    THAT VERDICT FORM, AND YOU WILL COME TO YOUR CONCLUSION AS TO

02:29:08  7    WHAT THE APPROPRIATE AMOUNT IS.

02:29:10  8         BUT I WILL ASK THAT YOU CONSIDER PX 25K -- LET ME MAKE

02:29:15  9    SURE I READ IT RIGHT -- 25K.4, WHICH GIVES A PRODUCT-BY-PRODUCT

02:29:20  10   BREAKDOWN OF THE APPROPRIATE AMOUNT THAT'S JUSTIFIED BY THE

02:29:24  11   FACTS AND THE LAW IN THIS CASE AND THAT CORRESPONDS TO WHAT YOU

02:29:29  12   ARE REQUESTED TO GIVE ON THE VERDICT FORM AS WELL.  WE HOPE

02:29:31  13   THAT YOU FIND THAT USEFUL IN TRYING TO GO THROUGH SOME OF THE

02:29:34  14   CALCULATIONS.

02:29:35  15        LAST POINT.  I ASKED YOU TO FOCUS ON THAT LANGUAGE IN THE

02:29:38  16   PATENT LAW STATUTE, THAT SPECIAL REMEDY ABOUT APPLYING AN

02:29:42  17   ARTICLE OF MANUFACTURE, OR APPLYING THE CLAIMED DESIGN TO AN

02:29:46  18   ARTICLE OF MANUFACTURE FOR PURPOSES OF SALE.  AND AS I TOLD

02:29:49  19   YOU, SAMSUNG'S LAWYERS DIDN'T ASK THEIR FACT WITNESSES A SINGLE

02:29:52  20   QUESTION ABOUT HOW THE APPLE DESIGNS HAD BEEN APPLIED TO THE

02:29:56  21   SAMSUNG PRODUCTS.

02:29:57  22        BUT I DID ASK MR. KIM, THE DESIGNER FROM SAMSUNG, THE

02:30:01  23   FOLLOWING:

02:30:04  24        "QUESTION:  SAMSUNG APPLIES YOUR TEAM'S DESIGNS TO PHONES;

02:30:07  25   CORRECT?

02:30:08   1                "ANSWER:  YES.

02:30:10   2                "QUESTION:  AND THOSE PHONES ARE SOLD; RIGHT?

02:30:12   3                "ANSWER:  YES.

02:30:15   4                "QUESTION:  SO SAMSUNG APPLIES DESIGNS TO PHONES FOR

02:30:20   5        PURPOSES OF SALE; CORRECT?

02:30:22   6                "ANSWER:  YES."

02:30:26   7                AND THAT'S WHAT HAPPENED IN THIS CASE WITH RESPECT TO

02:30:28   8        SAMSUNG'S USE OF APPLE'S DESIGNS.  IT APPLIED APPLE'S DESIGNS

02:30:33   9        TO PHONES FOR PURPOSES OF SALE, AND THAT TAKES THEM SQUARELY

02:30:38  10        WITHIN THE SPECIAL REMEDY THAT CONGRESS HAS CREATED FOR EXACTLY

02:30:41  11        THIS SITUATION, APPLYING THE PATENTED DESIGN TO ANY ARTICLE OF

02:30:46  12        MANUFACTURE FOR THE PURPOSE OF SALE.

02:30:48  13                SO WE ASK THAT YOU CAREFULLY CONSIDER THE EVIDENCE.  WE

02:30:51  14        THANK YOU FOR YOUR TIME, AND ON BEHALF OF APPLE, WE

02:30:54  15        RESPECTFULLY REQUEST THAT YOU RETURN A VERDICT IN FAVOR OF

02:30:57  16        APPLE.

02:30:59  17                THE COURT:  TIME IS 2:30.

02:31:00  18                MR. QUINN:  MAY WE HAVE JUST A MOMENT, YOUR HONOR?

02:31:04  19                THE COURT:  YES, PLEASE.  TAKE YOUR TIME.  I SEE

02:31:31  20        SOMEONE SITTING ON THE FLOOR.  CAN ANYONE WHO'S ON AN EDGE

02:31:35  21        PLEASE MOVE IN SO WE CAN CREATE SPACE SO NO ONE HAS TO SIT ON

02:31:40  22        THE FLOOR.  THANK YOU.

02:31:41  23                AND THERE ARE PEOPLE STANDING.  CAN EVERYONE PLEASE SCOOT

02:31:44  24        IN TOWARDS THE WALL SO WE CAN CREATE MORE ROOM FOR PEOPLE TO

02:31:47  25        SIT?  THANK YOU.

02:32:00   1              (PAUSE IN PROCEEDINGS.)

02:33:06   2                 THE COURT:  WHAT IS THE TIME NOW ON THE TRANSCRIPT?

02:33:09   3       OKAY.  2:32.  GO AHEAD, PLEASE.

02:33:09   4              **(MR. QUINN GAVE HIS CLOSING ARGUMENT ON BEHALF OF**

02:33:13   5       **SAMSUNG.)**

02:33:13   6                 MR. QUINN:  GOOD AFTERNOON, LADIES AND GENTLEMEN.

02:33:16   7              WHEN THE SAMSUNG PHONES THAT ARE THE SUBJECT OF THIS CASE

02:33:21   8       WERE INTRODUCED BACK IN 2010, THEY WERE INCREDIBLE, MARVELOUS

02:33:30   9       DEVICES, NOT GREAT INVENTIONS.  MANY GREAT INVENTIONS IN THOSE

02:33:34  10       PHONES, INDUSTRY LEADING INVENTIONS, THE AMOLED DISPLAY SCREEN

02:33:40  11       THAT YOU'VE HEARD ABOUT, THE 4G CONNECTIVITY, THE TURN-BY-TURN

02:33:44  12       GPS NAVIGATION, THE ABILITY TO HAVE A PHONE ON ALL THE

02:33:49  13       DIFFERENT CARRIERS, FAST PROCESSOR, A VIDEO CAMERA.  MANY, MANY

02:33:54  14       FEATURES THAT THE IPHONE DID NOT HAVE AT THAT TIME.

02:33:56  15              IT TURNS OUT, UNFORTUNATELY, HOWEVER, THAT ON THE OUTSIDE,

02:34:02  16       ON THE VISIBLE COMPONENTS OF THOSE PHONES, WE USED SMALL

02:34:07  17       DESIGN -- ELEMENTS OF DESIGN PATENTS THAT APPLE HAD.  AND A

02:34:10  18       YOU'VE SEEN IN LOOKING AT SOME OF THE INFRINGING PHONES AND

02:34:14  19       FEATURES AND THE NON-INFRINGING ONES, IT CAN SOMETIMES BE

02:34:19  20       DIFFICULT TO TELL WHAT IS COVERED BY A DESIGN PATENT AND WHAT

02:34:21  21       ISN'T.

02:34:22  22              IN THIS CASE, 11 OF THE PHONES, 1 APPLE DESIGN PATENT WAS

02:34:28  23       FOUND TO BE INFRINGED.  IN FOUR OF THE PHONES, TWO DESIGN

02:34:32  24       PATENTS.  IN THREE PHONES, ALL THREE DESIGN PATENTS WERE FOUND

02:34:35  25       TO BE INFRINGED.

CLOSING ARGUMENT BY MR. QUINN

02:34:36  1        AND TO BE CLEAR, APPLE IS SEEKING ALL OF THE PROFITS ON

02:34:40  2   EACH OF THOSE PHONES, WHETHER THERE'S JUST ONE DESIGN PATENT

02:34:44  3   INFRINGED, YOU KNOW, THAT GUI SCREEN, OR WHETHER TWO WERE

02:34:48  4   INFRINGED OR THREE WERE INFRINGED.

02:34:51  5        ALL THE PROFITS ON THOSE PHONES.  ALL THE PROFITS DERIVED

02:34:54  6   FROM ALL THOSE OTHER INVENTIONS IN THOSE PHONE, THE OTHER

02:34:57  7   PATENTS IN THE PHONES, THE SAMSUNG PATENTS, THE FEATURES THAT

02:35:01  8   APPLE DIDN'T HAVE, ALL OF THAT APPLE WANTS BECAUSE THESE SMALL,

02:35:07  9   NARROW DESIGN ELEMENTS WERE APPLIED TO THE PHONES.

02:35:10  10        THE APPLE DESIGN PATENTS DO NOT COVER ANYTHING ON THE

02:35:16  11   INSIDE OF THE PHONE.  NONE OF THOSE COMPONENTS.

02:35:19  12        THEY DON'T EVEN COVER THE ENTIRE OUTSIDE OF THE PHONE.

02:35:24  13        NOW, AS MR. MUELLER SAID, THE LAW DOES PROVIDE A VERY

02:35:28  14   SPECIFIC PROCESS FOR DECIDING WHAT IS THE RELEVANT ARTICLE OF

02:35:33  15   MANUFACTURE TO WHICH THEIR -- THE DESIGNS WERE APPLIED AND FOR

02:35:38  16   WHICH APPLE'S ENTITLED TO RECEIVE PROFITS.

02:35:41  17        THAT IS THE FIRST QUESTION, WHAT IS THE ARTICLE OF

02:35:45  18   MANUFACTURE?

02:35:45  19        AND REMEMBER, YOU'VE HEARD FROM THE INSTRUCTION.  ON

02:35:48  20   ARTICLE OF MANUFACTURE CAN BE ANYTHING THAT'S JUST MADE BY HAND

02:35:52  21   OR MACHINE, AND YOU'VE HEARD FROM THE INSTRUCTIONS, IT CAN BE A

02:35:54  22   PRODUCT OR IT CAN BE A COMPONENT OF A PRODUCT.

02:35:58  23        AND THERE'S FOUR FACTORS THAT YOU'VE HEARD AND YOU'VE SEEN

02:36:02  24   MANY TIMES, AND I WANT TO WALK THROUGH THEM.

02:36:05  25        BUT I JUST -- ONE THING THAT'S GOING TO BE KIND OF A THEME

02:36:07  1    HERE AS WE WALK THROUGH THESE IS THAT APPLE ISN'T REALLY

02:36:11  2    SATISFIED WITH THE LANGUAGE OF THESE FACTORS.  THE WORDS

02:36:16  3    MATTER.  THE WORDS MATTER.  WE HAVE TO FOCUS ON THIS.

02:36:19  4         AND THE EVIDENCE IN THIS CASE, I SUBMIT TO YOU, LADIES AND

02:36:22  5    GENTLEMEN, IT HAS SHOWN THAT THE ARTICLES OF MANUFACTURE TO

02:36:26  6    WHICH, UNDER THESE FACTS, APPLYING THESE FACTORS AS THEY'RE

02:36:29  7    WRITTEN, THE ARTICLES OF MANUFACTURE TO WHICH THESE DESIGNS

02:36:32  8    WERE APPLIED WERE THREE SPECIFIC PARTS:  THE DESIGN OF A BLACK

02:36:39  9    FRONT FACE WITH ROUNDED CORNERS.

02:36:43  10   WHERE DOES THIS DESIGN APPEAR ON SAMSUNG'S PHONES?  ONLY

02:36:46  11   ON THE FRONT FACE OF THE OUTSIDE OF THE SAMSUNG PHONE.  THAT IS

02:36:50  12   THE PART TO WHICH THE DESIGN WAS APPLIED.  THIS DESIGN, THIS

02:36:55  13   DESIGN THAT'S IN THIS PATENT APPEARS NOWHERE ELSE IN THE PHONE.

02:37:01  14        THE '087 PATENT, THE FRONT FACE WITH THE BEZEL, WHERE DOES

02:37:05  15   THIS DESIGN APPEAR IN THE SAMSUNG PHONE?  THE ONLY PARTS WHERE

02:37:11  16   THAT APPEARS IS IN THE BEZEL AND ON THE FRONT FACE.  IT APPEARS

02:37:15  17   NOWHERE ELSE, NOWHERE ELSE OUTSIDE, NOWHERE ELSE INSIDE.

02:37:20  18        THE '305 PATENT, THAT'S THE PATENT ON THE ICON DISPLAYS,

02:37:24  19   WHERE DOES THAT APPEAR?  IT APPEARS ON THE DISPLAY SCREEN.  IT

02:37:28  20   DOESN'T APPEAR ANYWHERE ELSE ON THE OUTSIDE OF THE PHONE.  IT

02:37:31  21   DOESN'T APPEAR ANYWHERE ELSE INSIDE OF THE PHONE.

02:37:35  22        THE DISPLAY SCREEN IS THE ARTICLE OF MANUFACTURE TO WHICH

02:37:38  23   THE DESIGN IS APPLIED.

02:37:40  24        UNDER THE LAW, APPLE IS NOT ENTITLED TO THE PROFITS ON ANY

02:37:44  25   ARTICLE OF MANUFACTURE TO WHICH THE DESIGNS WERE NOT APPLIED.

02:37:49  1          NOW, APPLE CONTENDS THAT IT'S THE ENTIRE PHONE.  WE ALL

02:37:53  2   KNOW THAT BY NOW.  JUST ONE THING I WANT TO MENTION.

02:37:56  3          IT'S APPLE'S BURDEN -- IF WE COULD LOOK AT 2307, SDX 2307,

02:38:02  4   YOU'VE RECEIVED THIS JURY INSTRUCTION.

02:38:05  5          APPLE HAS THE BURDEN TO PROVE, THE BURDEN OF PROOF HERE TO

02:38:09  6   PROVE THAT THE RELEVANT ARTICLE OF MANUFACTURE IS THE WHOLE

02:38:12  7   PHONE.

02:38:13  8          WE DON'T HAVE THAT BURDEN TO PROVE THAT IT'S THE THREE

02:38:16  9   COMPONENTS, BUT WE BELIEVE WE'VE MET THAT.

02:38:18  10         IF WE COULD LOOK AT THE FOUR FACTORS, SDX 2136, FACTOR 1

02:38:23  11  IS REALLY VERY SIMPLE.  APPLE TRIES TO MAKE IT COMPLICATED AND

02:38:27  12  CONFUSING, BUT THIS JUST ASKS, WHAT IS THE SCOPE OF THE CLAIMED

02:38:30  13  DESIGN?

02:38:31  14         AND AS DR. KARE TOLD YOU, SDX 2241, THAT LANGUAGE THERE,

02:38:38  15  INCLUDING THE DRAWINGS AND WRITTEN DESCRIPTION, DOES NOT EXPAND

02:38:42  16  THE SCOPE OF THE CLAIM.

02:38:45  17         IF WE HAVE THAT TESTIMONY, 2241.

02:38:52  18         THE WRITTEN DESCRIPTION AND DRAWINGS, THEY HELP DEFINE THE

02:38:58  19  CLAIM, BUT THEY DON'T EXPAND THE CLAIM.  SO THAT'S THE FIRST

02:39:02  20  QUESTION.

02:39:02  21         LOOKING AT THE PATENT, WHAT IS THE SCOPE OF THE CLAIM?  IF

02:39:05  22  WE LOOK AT THE '087 PATENT, SDX 2115, AS MR. LUCENTE EXPLAINED,

02:39:10  23  THE SCOPE OF THE CLAIMED DESIGN IS LIMITED TO THE SOLID LINES

02:39:13  24  AND HIS DEMONSTRATIVES SHOWED YOU EXACTLY WHAT THAT IS.

02:39:18  25         2221.

02:39:19  1          HE TOOK OUT THE DOTTED LINES.  REMEMBER, WE'RE ONLY

02:39:21  2     LOOKING AT WHAT'S CLAIMED.  DR. KARE TOLD YOU, YOU KNOW, THE

02:39:25  3     DRAWINGS, ANYTHING ELSE CANNOT ENLARGE THE SCOPE OF THE CLAIM

02:39:29  4     ITSELF.

02:39:31  5          FOR THE '087, IT'S THE FRONT FACE AND THE BEZEL.  IT'S NOT

02:39:35  6     ON ANY OTHER PART.

02:39:37  7          FOR THE '677, IT'S JUST THE GLASS FRONT FACE.  THAT'S THE

02:39:41  8     '677 PATENT.

02:39:44  9          AND YOU CAN SEE IT IN THE PHONES THAT YOU'LL HAVE WITH YOU

02:39:48  10    IN THE JURY ROOM.  IT DOES NOT APPEAR ON ANY OTHER PART.

02:39:53  11         AND YOU CAN SEE, YOU HAVE SEEN THAT THESE DESIGNS ARE

02:39:56  12    NARROW BECAUSE THERE ARE NONE -- YOU'VE SEEN THOSE

02:40:00  13    NON-INFRINGING ALTERNATIVES THAT ARE VERY, VERY CLOSE.  AND

02:40:04  14    MR. BALL, I'LL COME BACK TO THIS, ABOUT THAT SAME COMPARISON

02:40:08  15    ABOUT DETERMINING THE SCOPE OF THE CLAIM BY COMPARING PHONES

02:40:11  16    WITH OTHER PHONES, NON-INFRINGING ALTERNATIVES.

02:40:13  17         HERE IS THE '305, SDX 2122.  FOR THE '305, IT'S JUST THAT

02:40:19  18    ONE IMAGE THAT'S TUCKED BEHIND EVERYTHING ELSE IN THE GRAPHICAL

02:40:24  19    USER INTERFACE, AND APPLE ADMITS THIS.

02:40:26  20         SDX 2239.  DR. KARE TOLD YOU, THIS IS ABOUT JUST THIS ONE

02:40:32  21    PAGE, THIS ONE PAGE THAT'S CLAIMED IN THE PATENT.

02:40:36  22         COMPARING THAT -- IF YOU LOOK AT SDX 2120 -- 2132, WE

02:40:42  23    TALKED TO MS. -- OR DR. KARE ABOUT THIS, AND WE WERE COMPARING

02:40:47  24    THE INFRINGING DESIGN WITH THE NON-INFRINGING DESIGN.  JUST TO

02:40:52  25    BE CLEAR ON THAT, THE NON-INFRINGING ONE IS ON THE RIGHT.

02:40:55  1    DOESN'T HAVE THOSE CONTAINERS.  THE ANDROID CHARGE INFRINGES.

02:40:59  2    THE DIFFERENCE HERE IS YOU DON'T HAVE THOSE CONTAINERS.

02:41:02  3         APPLE'S POSITION IS THAT BECAUSE WE DIDN'T HAVE THE

02:41:05  4    CONTAINERS ON THIS ONE PAGE IN THE GRAPHICAL USER INTERFACE,

02:41:09  5    APPLE SHOULD GET ALL OF THE PROFITS ON THE PHONE BECAUSE THE

02:41:13  6    CONTAINERS ARE NOT THERE.

02:41:15  7         SO THIS FIRST FACTOR, WHAT DOES APPLE DO?  THEY BRING UP A

02:41:19  8    COUPLE OF RED HERRINGS.  THEY BASICALLY SAY, DON'T WORRY ABOUT

02:41:22  9    THE SCOPE OF THE CLAIMED DESIGN.  INSTEAD, LOOK AT WHAT ISN'T

02:41:25  10   CLAIMED.

02:41:26  11        AND YOU HEARD THAT, THE LANGUAGE ABOUT ELECTRONIC DEVICE

02:41:30  12   AND THE BROKEN LINES.

02:41:32  13        BUT THE FACTOR DOESN'T TELL YOU TO LOOK AT WHAT ISN'T

02:41:36  14   CLAIM.  IT DOESN'T SAY, IN APPLYING FACTOR 1, LOOK AT WHAT'S

02:41:39  15   CLAIMED AND NOT CLAIMED.  IT SAYS LOOK AT WHAT'S CLAIMED.

02:41:42  16        IT SAYS, ALSO LOOK AT THE ARTICLE OF -- THAT ARTICLE OF

02:41:48  17   MANUFACTURE LANGUAGE.

02:41:52  18        WHEN WE KNOW IT -- THE REASON THAT LANGUAGE IS THERE,

02:41:56  19   THEY -- YOU KNOW THAT THE FOUR FACTOR TEST, WHOEVER WROTE THAT,

02:42:00  20   THE FOUR FACTOR TEST WAS NOT BEING APPLIED.  THAT WASN'T

02:42:04  21   BECAUSE, YOU KNOW, AS COUNSEL JUST SAID, THE PATENT OFFICE DID

02:42:08  22   NOT HAVE SAMSUNG'S PHONES.  THAT WAS BECAUSE THE FOUR FACTOR

02:42:12  23   TEST DIDN'T EXIST THEN.

02:42:14  24        IF WE COULD LOOK AT MR. BALL'S TESTIMONY, HE ULTIMATELY

02:42:17  25   AGREED WITH THIS, SDX 2243.

02:42:22    1          THEY DIDN'T -- IT DIDN'T EVEN EXIST AT THE TIME.

02:42:26    2          WHERE DOES THIS LANGUAGE COME FROM?  WELL, MR. BALL

02:42:29    3   FINALLY ACKNOWLEDGED, IT CAME FROM APPLE'S LAWYERS.  SDX 2244.

02:42:37    4          WE ALL KNOW IT'S APPLE'S POSITION, AND I'M SURE THEY WOULD

02:42:40    5   HAVE LIKED IT TO HAVE BEEN THE CASE BACK WHEN THIS PATENT WAS

02:42:42    6   WRITTEN, THAT THIS NARROW PATENT WOULD COVER A WHOLE PRODUCT, A

02:42:46    7   WHOLE PHONE.

02:42:48    8          BUT THE ISSUE THAT YOU HAVE TO DECIDE WAS NOT DECIDED BY

02:42:51    9   ANYBODY BEFORE THEN, AND THIS LANGUAGE HAS -- THAT WAS WRITTEN

02:42:55   10   BY APPLE'S LAWYERS HAS NOTHING TO DO WITH IT.

02:43:00   11          ANOTHER INDICATION OF HOW NARROW THIS IS AND THIS LANGUAGE

02:43:02   12   OF ELECTRONIC DEVICE, THERE'S ANOTHER APPLE PATENT -- REMEMBER

02:43:05   13   THE LITTLE SLOT PATENT, SDX 2118, IF WE COULD TAKE A LOOK AT

02:43:10   14   THAT.

02:43:11   15          IN APPLE'S VIEW -- THIS IS ALSO ENTITLED AT THE TOP

02:43:15   16   "ELECTRONIC DEVICE," IT COVERS THAT LITTLE SLIVER.

02:43:19   17          IN APPLE'S VIEW, WHAT THEY WOULD HAVE US BELIEVE IS THAT

02:43:22   18   IF SOMEBODY USES THAT LITTLE SLIVER ON ANY KIND OF ELECTRONIC

02:43:26   19   DEVICE, THEY GET ALL -- THAT'S AN ARTICLE OF MANUFACTURE AND

02:43:29   20   THEY GET ALL THE PROFITS.

02:43:32   21          IT'S AS SIMPLE AS THAT.  IT DOESN'T MAKE SENSE.

02:43:35   22          YOU HAVE TO -- FACTOR 1 REQUIRES THAT YOU LOOK AT THE

02:43:38   23   SCOPE OF THE CLAIM.  THAT'S NOT BROADENED BY THE DRAWINGS IN

02:43:41   24   THE WRITTEN DESCRIPTION, AND YOU CAN SEE WHAT IT IS FROM THE

02:43:46   25   SOLID LINES.  YOU'VE GOT JURY INSTRUCTIONS ON THAT.

CLOSING ARGUMENT BY MR. QUINN

02:43:49  1        FACTOR 2, IF WE CAN GO BACK TO THE FOUR FACTOR TEST, KEN,

02:43:53  2   THIS DEALS WITH THE RELATIVE PROMINENCE OF THE DESIGN WITHIN

02:43:57  3   SAMSUNG'S PROFITS AS A PHONE.  THE WORDS MATTER HERE, IT'S THE

02:44:00  4   PHONE AS A WHOLE, NOT JUST THE RELATIVE PROMINENCE IN THE

02:44:04  5   DESIGN FROM A VISUAL STANDPOINT OR FROM THE STANDPOINT OF THE

02:44:07  6   DESIGN.

02:44:08  7        AS APPLE'S EXPERT, DR. KARE, ULTIMATELY HAD TO AGREE WITH

02:44:12  8   THIS.  AND SDX 2217.  IF YOU LOOK AT THE LANGUAGE THERE, SO THE

02:44:17  9   PRODUCT -- AT THE END.

02:44:18  10       THE QUESTION:  "SO THE PRODUCT AS A WHOLE WOULD INCLUDE A

02:44:22  11  LOT OF THINGS BESIDES THE DESIGN OF THE PRODUCT?  IT WOULD

02:44:25  12  INCLUDE ALL OF THESE FEATURES AND FUNCTIONS AND COMPONENTS,

02:44:28  13  THAT'S ALL PART OF THE PRODUCT AS A WHOLE?

02:44:30  14       "TRUE."

02:44:31  15       THIS IS AN EXAMPLE OF THE KIND -- OF AN INSTANCE APPLE

02:44:36  16  ISN'T CONTENT WITH THE LANGUAGE, THAT PRODUCT AS A WHOLE

02:44:40  17  LANGUAGE THAT IS IN THE FACTOR.

02:44:42  18       OF COURSE IF YOU LIMITED YOUR EXAMINATION ONLY TO THE

02:44:45  19  EXTERIOR, IF THE FACTOR SAID ONLY LOOK AT THE EXTERIOR OF THE

02:44:49  20  PRODUCT AND DECIDE WHETHER IT'S PROMINENT, ONE WOULD HAVE TO

02:44:52  21  SAY, YES, THE SCREEN IS PROMINENT.

02:44:54  22       BUT IF YOU LOOK AT THE PRODUCT AS A WHOLE, HOW

02:44:58  23  PROMINENT -- COMPARING TO THE OTHER THINGS A SMARTPHONE CAN DO,

02:45:01  24  HOW PROMINENT IS THE DESIGN OF A FRONT FACE OR A BEZEL COMPARED

02:45:05  25  TO ALL THOSE FEATURE, THE CAMERA, THE VIDEO, THE MUSIC, THE

02:45:09  1    GPS, THE WI-FI, THE DEVICES, THE FEATURES THAT HELP YOU FIND

02:45:12  2    YOUR CHILDREN OR TAKE A MOVIE OF A KID'S FIRST STEPS OR THINGS

02:45:16  3    LIKE THAT.  THOSE ARE THE THINGS, IT'S WHAT THE PHONE DOES THAT

02:45:19  4    IS PROMINENT.

02:45:21  5        AND THIS FACTOR DOESN'T FOCUS JUST ON THE VISUAL

02:45:23  6    APPEARANCE OR DESIGN.

02:45:26  7        AND DR. BALL, OR MR. BALL, THEIR EXPERT -- 2201 --

02:45:33  8    ULTIMATELY AGREED WITH HIMSELF.  WHEN WE QUESTIONED HIM ABOUT

02:45:37  9    THIS, HE ULTIMATELY AGREED, YES, THERE ARE ALSO THESE OTHER

02:45:41  10   THINGS THAT HAVE TO BE TAKEN INTO ACCOUNT.  FACTOR 2 ISN'T

02:45:44  11   LIMITED IN THE WAY THEY WOULD HAVE YOU READ IT.

02:45:47  12       CAN ANYONE SAY THAT THESE LITTLE DESIGN FEATURES ARE

02:45:50  13   PROMINENT COMPARED TO ALL OF THE THINGS THAT A SMARTPHONE CAN

02:45:54  14   DO?

02:45:55  15       EVEN FROM A VISUAL STANDPOINT, IF WE COULD LOOK AT SDX

02:46:00  16   2125, AND REMEMBER, DR. -- MR. LUCENTE SHOWED YOU THIS, AND HE

02:46:04  17   CONCLUDED COMPARING THESE TWO DESIGNS AND LOOKING AT THE

02:46:10  18   DIFFERENCES, HE SAID, I CANNOT SEE THAT THIS DESIGN, PROTECTED

02:46:13  19   DESIGN IS PROMINENT WHEN YOU LOOK AT WHAT IT PROTECTS AND WHAT

02:46:17  20   IT DOESN'T PROTECT.

02:46:19  21       HAD TO AGREE THAT THE DESIGN IN THE INFRINGING PHONE WAS

02:46:22  22   NOT PROMINENT COMPARED TO THE NON-INFRINGING PHONE.

02:46:26  23       THE '305 IS EVEN EASIER TO FIGURE OUT.  IT'S THEIR HOME

02:46:30  24   PAGE.  IT'S NOT OUR HOME PAGE.  IT ISN'T -- HOW DID THEY

02:46:35  25   DESCRIBE IT?  DR. KARE DESCRIBED IT AS THE GATEWAY, IT'S

02:46:39   1    BEAUTIFUL, ICONIC.  YOU TURN ON THE IPHONE AND THERE IT IS.

02:46:43   2        THAT'S NOT TRUE ON THESE PHONES.  YOU GET A HOME PAGE,

02:46:46   3    WHICH ISN'T ALLEGED TO INFRINGE, THAT HAS ICONS ON IT

02:46:51   4    PRE-INSTALLED.  MR. LUCENTE SHOWED YOU ALL THOSE DIFFERENT

02:46:53   5    THINGS THAT YOU CAN DO ON AN IPHONE.  IT'S COMPLETELY

02:46:56   6    DIFFERENT.

02:46:57   7        SO GET TO THE LIBRARY, YOU HAVE TO TAP AND YOU GO TO THE

02:47:00   8    LIBRARY.  THAT'S THE APP SCREEN.  THAT IS WHAT IS ALLEGED TO

02:47:03   9    INFRINGE.

02:47:04   10       ALL YOUR MOST FREQUENTLY USED APPS ARE ON THE HOME PAGE,

02:47:08   11   AND THERE WE SEE UP ON THE SCREEN EXAMPLES OF SCREENS OF THESE

02:47:11   12   PHONES, THE HOME PAGE, WHICH ARE NOT ALLEGED TO INFRINGE.

02:47:16   13       ON OUR PHONES, THAT GUI PAGE IS JUST ONE OF THOUSANDS OF

02:47:21   14   DIFFERENT, THOUSANDS OF DIFFERENT PAGE, SCREENS IN THE

02:47:27   15   GRAPHICAL USER INTERFACE.  REMEMBER WE SHOWED YOU SDX 2139 WHEN

02:47:31   16   MR. LUCENTE WAS HERE.  THESE ARE JUST EXAMPLES OF ALL THE

02:47:34   17   DIFFERENT PAGES.

02:47:38   18       FACTOR 3, IF WE COULD GO BACK TO THE FOUR FACTORS, AGAIN,

02:47:43   19   APPLE CHANGES THE WORDS.  THE QUESTION HERE:  IS THE DESIGN

02:47:48   20   CONCEPTUALLY DISTINCT FROM THE PHONE AS A WHOLE?  NOBODY TOLD

02:47:51   21   YOU THAT CONCEPTUALLY DISTINCT HAS SOME SPECIALIZED MEANING.

02:47:56   22   IT'S JUST, IS A DIFFERENT IDEA FROM THE DESIGN?  IS THE PRODUCT

02:48:00   23   A DIFFERENT IDEA FROM THE DESIGN.

02:48:02   24       AND THESE ARE OBVIOUSLY, YOU KNOW, THE CONCEPT OF A BEZEL,

02:48:06   25   OF A DISPLAY SCREEN, OF A GRAPHICAL USER INTERFACE IMAGE

02:48:10   1    OBVIOUSLY ARE DIFFERENT IDEAS THAN A SMARTPHONE COMPARED TO IF

02:48:15   2    WE COULD LOOK AT SDX 2161, THE CONCEPT IN THE LOWER LEFT THERE,

02:48:20   3    FOLKS, A PLATE.  THE DESIGN OF A PLATE, IT'S HARD TO SAY THAT'S

02:48:25   4    CONCEPTUALLY DISTINCT FROM A PLATE.

02:48:29   5         OR LIKE A SPOON, THE DESIGN OF A SPOON, IT'S KIND OF THE

02:48:32   6    THING ITSELF.

02:48:33   7         IT'S SIMPLY NOT TRUE IN THE CASE OF A SMARTPHONE.

02:48:38   8         ANOTHER EXAMPLE, A BOOK, A BOOK AND ITS COVER.  YOU MIGHT

02:48:41   9    HAVE A REALLY GOOD DESIGN FOR A BOOK, AND YOU HAVE THE CREATIVE

02:48:44   10   LITERARY WORK INSIDE.

02:48:46   11        BUT THE BOOK COVER IS A, HOWEVER BEAUTIFULLY IT'S

02:48:51   12   DESIGNED, IT'S CONCEPTUALLY DISTINCT THAN THE CREATIVE LITERARY

02:48:55   13   WORK THAT'S BETWEEN THE COVERS.

02:48:57   14        SO WE HAD TO ASK THESE QUESTIONS WHICH, FOR EXAMPLE, OF

02:49:00   15   MR. BALL, WHICH -- THIS IS THE POINT IS SO OBVIOUS, THE

02:49:03   16   QUESTIONS WERE KIND OF -- BECAME KIND OF SILLY.  IF YOU LOOK AT

02:49:07   17   EXHIBIT 2248, IS A BATTERY, A DIFFERENT CONCEPT THAN A GLASS

02:49:10   18   FACE, A VIDEO CAMERA, A DIFFERENT CONCEPT THAN A GLASS FACE, ET

02:49:14   19   CETERA?

02:49:14   20        AGAIN, THERE'S NO SPECIAL MEANING THAT'S BEEN GIVEN YOU

02:49:20   21   FOR CONCEPTUALLY DISTINCT.  USE YOUR COMMON SENSE.  USE THESE

02:49:23   22   WORDS THE WAY THAT YOU KNOW THEM.

02:49:26   23        MR. BALL AT ONE POINT KIND OF CHANGES THE SUBJECT.  HE

02:49:30   24   SAYS THE SAMSUNG PHONES, WELL, THEY'RE REALLY NOT CONCEPTUALLY

02:49:33   25   DISTINCT BECAUSE THEY'RE MONOLITHIC.  HE USED THAT WORD.  AND

02:49:37  1    THIS IS ON SDX 2249.  HE SAYS, YOU KNOW, THEY'RE KIND OF --

02:49:42  2    THEY'RE ALL A PIECE, BUT MR. LUCENTE SHOWED YOU THAT'S

02:49:45  3    SIMPLY -- FIRST OFF, WE'RE NOT DEALING WITH THE IDEA OF

02:49:49  4    CONCEPTUALLY DISTINCT, WHETHER THESE INDIVIDUAL SMALL DESIGNS

02:49:51  5    ARE DISTINCT FROM THE PHONE.  HE'S INTRODUCING NEW CONCEPTS,

02:49:55  6    WHICH ISN'T IN THE FACTOR, MONOLITHIC.

02:49:58  7        BUT HE SHOWED YOU, YOU CAN EASILY BREAK DOWN THE SAMSUNG

02:50:01  8    PHONE, YOU POP OFF THE BACK, YOU POP OFF THE BATTERY.  IT'S NOT

02:50:05  9    A MONOLITHIC DEVICE.

02:50:07  10       DR. KARE DOES THE SAME THING.  2250.  SHE SAYS, WELL,

02:50:12  11   THAT -- YOU KNOW, THAT GRAPHICAL USER INTERFACE, THAT GUI

02:50:15  12   SCREEN, YOU KNOW, IT'S BEAUTIFUL.  IT KIND OF BLENDS IN

02:50:19  13   SEAMLESSLY WITH THE PHONE, WITH THE BACKGROUND TO THE PHONE.

02:50:22  14       AGAIN, SHE'S ANSWERING A DIFFERENT QUESTION.  WHERE DOES

02:50:25  15   IT SAY, WHERE DOES IT SAY IN THE FACTOR WHETHER THE DESIGNS

02:50:29  16   VISUALLY LOOK DISTINCT FROM THE PHONE AS A WHOLE?  IT BLENDS IN

02:50:33  17   SEAMLESSLY, SHE SAYS.

02:50:35  18       THE ISSUE IS, IS IT CONCEPTUALLY DISTINCT, NOT IS IT

02:50:38  19   VISUALLY DISTINCT?  IT WOULD HAVE BEEN VERY EASY TO WRITE THIS

02:50:42  20   FACTOR IN A WAY THAT SAYS IS IT VISUALLY DISTINCT OR IS IT

02:50:46  21   DISTINCT FROM A DESIGN STANDPOINT.

02:50:48  22       AGAIN, APPLE ISN'T HAPPY WITH THE LANGUAGE OF THE WORDS AS

02:50:50  23   IT'S USED.

02:50:51  24       MR. LUCENTE HAD IT RIGHT WHEN HE SUMMED IT UP, DX 2251, HE

02:50:56  25   TOLD YOU, OBVIOUSLY A SMARTPHONE -- THESE DESIGNS, VERY

02:51:00   1    DIFFERENT IDEAS THAN A SMARTPHONE AND ALL THE DIFFERENT THINGS

02:51:03   2    THAT IT DOES.

02:51:05   3         FACTOR 4, THE PHYSICAL RELATIONSHIP BETWEEN THE PATENTED

02:51:09   4    DESIGNS AND THE REST OF THE PRODUCT.  YOU KNOW, LISTENING TO

02:51:13   5    MR. MUELLER IT KIND OF SOUNDED LIKE HE SAID THE ABILITY TO

02:51:16   6    SEPARATE MEANS NOTHING, WHETHER YOU CAN SEPARATE THESE

02:51:21   7    COMPONENTS KIND OF MEANS NOTHING.

02:51:23   8         IF YOU -- FACTOR 4 IS ALL ABOUT THE ABILITY TO SEPARATE

02:51:27   9    AND WHETHER THESE THINGS CAN BE SEPARATELY PROCURED AND

02:51:30  10    PURCHASED.

02:51:31  11         IT'S BROKEN DOWN INTO THREE DIFFERENT PARTS THERE.  THE

02:51:34  12    FIRST, WHETHER THE DESIGN PERTAINS TO A COMPONENT THAT A USER

02:51:37  13    OR SELLER CAN PHYSICALLY SEPARATE FROM THE PRODUCT AS A WHOLE.

02:51:41  14    SDX 2138.

02:51:42  15         THERE'S REALLY NO DOUBT THAT THAT CAN BE DONE.  YOU'VE

02:51:46  16    SEEN THAT DONE.  MR. LUCENTE TOLD YOU HE DID IT.

02:51:49  17         IF WE LOOK AT SDX 2110, ANOTHER EXAMPLE.  THIS IS A

02:51:52  18    DISASSEMBLY OF A SAMSUNG GALAXY S BY APPLE.  IT CAN BE DONE.

02:51:58  19    NO QUESTION ABOUT IT.

02:52:00  20         SECOND PART OF THAT FACTOR LOOKS AT WHETHER THE DESIGN IS

02:52:03  21    EMBODIED IN A COMPONENT THAT IS MANUFACTURED SEPARATELY FROM

02:52:05  22    THE REST OF THE PRODUCT.  SDX 2122.

02:52:10  23         MR. DONGWOOK KIM CAME HERE AND TESTIFIED AND HE TOLD YOU

02:52:14  24    ABOUT THE WORK THAT GOES INTO SOURCING THESE COMPONENTS.  APPLE

02:52:18  25    BUYS -- OR SAMSUNG BUYS THESE COMPONENTS FROM OTHERS.  THEY ARE

02:52:22   1    PURCHASED.  IT'S MANUFACTURED SEPARATELY, LITERALLY BY OTHER

02:52:26   2    COMPANIES.

02:52:27   3         THE THREE IMAGES AT THE BOTTOM OF THIS SLIDE SHOW THAT THE

02:52:30   4    GLASS FACE, THE DISPLAY SCREEN AND THE BEZEL FOR SAMSUNG

02:52:34   5    SMARTPHONES WERE MANUFACTURED SEPARATELY.

02:52:37   6         AND MR. KIM'S REQUISITION DOCUMENTS SHOW ALL THE BILL OF

02:52:41   7    MATERIAL COMPONENTS AND PART NUMBER, SDX 2128.  YOU SAW THAT.

02:52:45   8         THE THIRD FACTOR HERE UNDER SEPARABILITY IS IF THE

02:52:49   9    COMPONENT CAN BE SOLD SEPARATELY.  THE FRONT FACE AND THE

02:52:52   10   DISPLAY SCREEN CAN BE SOLD SEPARATELY FOR REPAIR OR

02:52:56   11   REPLACEMENT.

02:52:56   12        THOSE PARTS, BY THE WAY -- THE FOCUS WAS, A LOT OF THE

02:53:00   13   EXAMINATION WAS WHETHER CONSUMERS CAN BUY THESE SEPARATELY?  DO

02:53:03   14   YOU RECALL THAT?

02:53:04   15        THAT'S NOT THERE.  ANOTHER INSTANCE WHERE APPLE CANNOT

02:53:07   16   LIVE WITH THE LANGUAGE OF THE FACTOR THAT YOU NEED TO APPLY

02:53:10   17   HERE.

02:53:11   18        OBVIOUSLY THESE PARTS WERE SOLD TO SAMSUNG FOR -- FROM

02:53:15   19   OTHER VENDORS, LIKE, YOU HEARD THE NAME SAMKWANG -- SAMKWANG

02:53:21   20   COMPANY.

02:53:22   21        APPLE CAN'T SATISFY ANY OF THESE TESTS ON THIS FOURTH

02:53:25   22   FACTOR, SO THEY CHANGED THE SUBJECT.

02:53:27   23        WHAT DID WE HEAR?  WE HEARD THINGS LIKE YOU WOULD VOID THE

02:53:32   24   WARRANTY, YOU WOULD NEED SPECIAL TOOLS.  QUESTIONS LIKE DO WE

02:53:35   25   SELL TO CONSUMERS SEPARATELY?  IS IT DIFFICULT TO DO?  CAN IT

02:53:39  1    WORK IF IT'S BY ITSELF?

02:53:41  2         THIS FACTOR, FACTOR 4, ASKS NONE OF THOSE QUESTIONS.  THIS

02:53:45  3    IS AGAIN APPLE CHANGING THE SUBJECT.  IT'S ONLY WHETHER THE

02:53:48  4    PARTS CAN BE SOLD SEPARATELY OR CAN BE PHYSICALLY SEPARATED.

02:53:55  5         SO LADIES AND GENTLEMEN -- THE ONE THING I REALLY WOULD

02:53:58  6    ASK YOU, LADIES AND GENTLEMEN, IS FOCUS ON THE LANGUAGE OF THE

02:54:01  7    FACTORS, NOT SOME OF THE SPINS THAT YOU'VE HEARD.  THE WORDS

02:54:04  8    HERE REALLY MATTER.

02:54:08  9         AND I SUBMIT, APPLE CANNOT PROVE TO YOU THAT UNDER THOSE

02:54:11  10   FOUR TESTS, THAT THE ARTICLE OF MANUFACTURE RELEVANT HERE IS

02:54:16  11   THE PHONE AS A WHOLE.  THAT'S THEIR VEHICLE TO GETTING A

02:54:19  12   BILLION DOLLARS, BUT THEY CAN'T PROVE THAT.

02:54:22  13        SO INSTEAD OF FOCUSSING ON THOSE FACTORS, WHAT DID WE DO?

02:54:25  14   WE SAW A LOT OF MISDIRECTION IN THIS CASE.  WE HEARD A LOT

02:54:29  15   ABOUT APPLE, WE HAD WITNESSES WHO CAME AND TESTIFIED ABOUT HOW

02:54:33  16   HARD THEY WORKED AND HOW BEAUTIFUL THE IPHONE IS AND IT'S

02:54:38  17   GORGEOUS, IT'S PRETTY.

02:54:40  18        AND WHEN WE ASKED THEIR WITNESSES ABOUT THE FOUR FACTOR

02:54:42  19   TEST, THEY SAID THEY APPLIED IT TO THE IPHONE.  IF YOU REMEMBER

02:54:47  20   THAT TESTIMONY FROM THE BEGINNING OF THE TRIAL, SDX 3244, YOU

02:54:50  21   KNOW, MR. JOSWIAK, HIS TESTIMONY THERE I THINK, YOU KNOW, HE --

02:54:57  22   HE UNDERSTANDS THAT THE FOUR FACTORS, HE APPLIED THEM BOTH TO

02:55:01  23   THE SAMSUNG PHONE AND TO THE IPHONE.

02:55:04  24        AND RICHARD HOWARTH, 3235, HE'S ALSO SAYING, WELL, YOU'VE

02:55:08  25   GOT TO APPLY BOTH, YOU'VE GOT TO APPLY THE FACTORS BOTH TO

1    APPLE'S PRODUCT AND TO SAMSUNG'S PRODUCT.

2         YOU KNOW, WE HEARD ABOUT -- WE'VE HEARD A LOT ABOUT APPLE

3    AND ALL THE WORK THAT WENT INTO DEVELOPING THE IPHONE, AND, YOU

4    KNOW, YOU CAN ASK YOURSELF, WHY DID THEY DO THIS?  WHY WOULD

5    APPLE TRY TO CHANGE THE SUBJECT THIS WAY?

6         THE CASE IS NOT ABOUT THE APPLE.

7         IT DOESN'T EVEN MATTER, FOR THE PURPOSES OF THIS CASE, IF

8    APPLE HAD NEVER MADE AN IPHONE.  I MEAN, IF THEY HAD THESE

9    DESIGN PATENTS AND THEY'RE INFRINGED BY SOMEBODY, THEY HAVE THE

10   ABILITY TO EXERCISE THEIR REMEDIES UNDER THE LAW.

11        THE FOUR FACTOR TEST IS ABOUT WHAT SAMSUNG APPLIED THE

12   PATENTED DESIGNS TO, NOT HOW APPLE USED THEM.

13        AND ULTIMATELY, DR. KARE HAD TO ADMIT THAT HERSELF.  THIS

14   IS SDX 2237.  AND SHE ACKNOWLEDGED THE ISSUE HERE IS HOW WAS IT

15   APPLIED TO THE SAMSUNG DEVICE, OR TO THE SAMSUNG PHONES, NOT

16   THE APPLE PHONES.

17        THE OTHER -- OTHER INSTANCES OF WHAT I WOULD CALL,

18   FRANKLY, MISDIRECTION HERE.  YOU SAW THIS SDX 2166.  THIS KIND

19   OF GRAPH ABOUT HOW SAMSUNG'S MARKET SHARE TOOK OFF.

20        YOU KNOW, MR. LEE WENT THROUGH THIS WITH THEIR DAMAGES

21   EXPERT.  DO YOU RECALL MS. DAVIS WHEN SHE WAS ON THE STAND THE

22   OTHER DAY?

23        FIRST OFF, SHE'S A DAMAGES EXPERT.  SHE'S NOT AN EXPERT ON

24   THE SAMSUNG -- ON THE SMARTPHONE MARKET.

25        THEY WOULD -- AND BEFORE THEY SHOWED THIS, BEFORE THEY

CLOSING ARGUMENT BY MR. QUINN

02:56:43   1    BROUGHT THIS UP WITH MS. DAVIS, DO YOU REMEMBER THEY WENT

02:56:46   2    THROUGH COPYING DOCUMENT -- THESE DOCUMENTS THAT THEY SAY

02:56:50   3    SUGGEST COPYING ONE AFTER ANOTHER, ONE AFTER ANOTHER, AND THEN

02:56:54   4    THEY SHOWED YOU THIS.

02:56:56   5         THE CLEAR SUGGESTION, WHAT THEY WANT YOU TO BELIEVE IS

02:56:57   6    THAT OUR MARKET SHARE TOOK OFF BECAUSE WE APPLIED THESE THREE

02:57:04   7    ORNAMENTAL DESIGNS, THAT IT WAS BECAUSE OF THAT OUR MARKET

02:57:08   8    SHARE TOOK OFF.

02:57:09   9         IT WAS A VERY CAREFULLY CONSTRUCTED EXAMINATION.

02:57:13   10        BUT ON CROSS-EXAMINATION, MR. PRICE ASKED MS. DAVIS AND

02:57:16   11   SHE HAD TO ACKNOWLEDGE -- SDX 2230 -- THAT SHE'S NOT EXPRESSING

02:57:21   12   ANY OPINION ON CAUSATION.  SHE'S NOT SAYING ANYTHING ABOUT WHY

02:57:28   13   SAMSUNG'S SALES TOOK OFF AT THAT TIME.

02:57:32   14        SHE HAD TO ADMIT THAT SHE HAD NO OPINION ON CAUSE OR

02:57:35   15   EFFECT.

02:57:38   16        AND AS YOU KNOW FROM THE EVIDENCE, THERE WERE OTHER

02:57:40   17   REASONS FOR SAMSUNG'S SUCCESS.  YOU HEARD FROM MR. BLACKARD,

02:57:45   18   WHO TOLD YOU THESE MINOR FEATURES DON'T MATTER TO CONSUMERS.

02:57:49   19        THERE WERE DRAMATIC CHANGES GOING ON IN THE SMARTPHONE

02:57:52   20   MARKET.

02:57:53   21        IF WE CAN LOOK AT SDX 2143.

02:57:55   22        YOU REMEMBER THE SALES OF BLACKBERRY AT THIS TIME WERE

02:57:57   23   GOING DOWN, THEY WERE DECLINING, AND THE OTHER ANDROID

02:58:01   24   MANUFACTURERS -- IF WE CAN LOOK AT SDX 2142 -- THEY WERE

02:58:05   25   GETTING THAT MARKET SHARE.  THAT WAS TAKING OFF.

02:58:10   1          AND YOU REMEMBER AT THIS TIME MR. JOSWIAK TOLD YOU, YOU

02:58:13   2   COULD ONLY GET ON IPHONE IF YOU HAD AT&T.

02:58:16   3          WITH SAMSUNG, YOU KNOW -- IT WASN'T UNTIL 2012 THAT YOU

02:58:20   4   COULD GET AN IPHONE ON AT&T.

02:58:22   5          AND YOU SAW THIS -- APPLE'S OWN DOCUMENT, DX 572.82 FROM

02:58:32   6   APRIL 2011, APPLE'S OWN INTERNAL STUDY ABOUT WHY DO PEOPLE BUY

02:58:38   7   ANDROID PHONES?

02:58:39   8          LOOK AT THIS DOCUMENT, PLEASE.  WHAT ARE THE THINGS, WHY

02:58:43   9   DO THEY BUY?  DO YOU SEE THERE THE BEZEL?  DO YOU SEE THERE

02:58:48   10  THEIR PARTICULAR VERSION OF THE DESIGN PATENTED FRONT FACE?  DO

02:58:53   11  YOU SEE THEIR PARTICULAR VERSIONS OF ICONS ON THE HOME PAGE?

02:58:59   12  IT'S NOT THERE.

02:59:03   13         THE NUMBER ONE REASON, PEOPLE WANT TO STAY WITH THEIR

02:59:07   14  CURRENT CARRIER; SECOND FACTOR, THE GOOGLE BRAND; THIRD FACTOR,

02:59:11   15  THE LARGER SCREEN.  REMEMBER, SAMSUNG HAD THE LARGER SCREEN.

02:59:13   16  IT WASN'T UNTIL MUCH LATER THAT APPLE CAME OUT WITH THE LARGER

02:59:16   17  SCREEN.

02:59:17   18         AND MR. BLACKARD TOLD YOU ABOUT SAMSUNG'S STRATEGY, ABOUT

02:59:21   19  BEING AVAILABLE ON ALL CARRIERS AND ABOUT DEVELOPING THESE

02:59:25   20  LARGER, HIGH RESOLUTION AMOLED SCREENS.

02:59:29   21         SAMSUNG'S -- THESE MINOR FEATURES HAD ABSOLUTELY NOTHING

02:59:33   22  TO DO WITH THAT.  DON'T BUY IT, LADIES AND GENTLEMEN.  THERE IS

02:59:37   23  SIMPLY NO EVIDENCE THAT BECAUSE THESE SMALL DESIGNS WERE

02:59:40   24  APPLIED, THIS IS WHY PEOPLE BOUGHT SAMSUNG PHONES.

02:59:44   25         MR. BLACKARD EXPLAINED -- SDX 2109 -- THAT ULTIMATELY

CLOSING ARGUMENT BY MR. QUINN

02:59:48   1   SAMSUNG WAS ABLE TO OUTPERFORM ITS ANDROID COMPETITORS BY

02:59:53   2   CREATING A BRAND, LAUNCHING ACROSS MAJOR CARRIERS AND, FRANKLY,

02:59:58   3   SPENDS LOTS AND LOTS OF MONEY, INCLUDING MORE THAN APPLE.

03:00:02   4   THAT'S WHY OUR -- THAT'S WHY OUR SALES TOOK OFF.

03:00:06   5       IF WE LOOK AT SDX 2104, KIND OF A SUMMARY GRAPHIC OF THE

03:00:14   6   INTRODUCTION OF THE GALAXY S, THE ANDROID 4-INCH SCREEN, THE 4G

03:00:20   7   CAPABILITY, AND THEN AN EVEN LARGER SCREEN.

03:00:23   8       THE PHONES THAT SAMSUNG WAS SELLING AT THIS TIME HAD

03:00:26   9   FEATURES LIKE APPLE DIDN'T HAVE, OTHER CARRIERS DIDN'T HAVE, IT

03:00:32  10   WAS AVAILABLE ON ALL CARRIERS.

03:00:34  11       THIS WAS THE REASONS FOR SAMSUNG'S SUCCESS BECAUSE OF A

03:00:38  12   COMBINATION OF A GREAT STRATEGY AND GREAT PRODUCTS.

03:00:45  13       FROM THE VERY FIRST OF THIS CASE OPENING STATEMENT, WE'VE

03:00:49  14   HEARD ABOUT THIS CRISIS OF DESIGN DOCUMENT, AND I KNOW YOU'RE

03:00:51  15   GOING TO WANT TO READ IT, AND I HOPE YOU WILL READ IT.

03:00:55  16       IN OPENING STATEMENT, APPLE CALLED THIS A SUMMIT MEETING.

03:00:59  17   THIS IS PLAINTIFF'S EXHIBIT 40.  FEBRUARY 2010.

03:01:03  18       AND APPLE QUOTED FROM THAT IN OPENING STATEMENT TO YOU.

03:01:06  19       MR. LEE SAID, I HEAR THINGS LIKE THIS, LET'S MAKE

03:01:09  20   SOMETHING LIKE THE IPHONE.  THE IPHONE THAT'S BECOME THE

03:01:13  21   STANDARD.  IF YOU COMPARE THE UX, THAT USER EXPERIENCE WITH THE

03:01:17  22   IPHONE, IT'S THE DIFFERENCE BETWEEN HEAVEN AND EARTH.  IT'S A

03:01:20  23   CRISIS OF DESIGN.

03:01:21  24       I SHOWED YOU, IN MY OPENING, THAT THOSE QUOTATIONS WERE

03:01:25  25   MISLEADING, THAT THAT -- WHAT THAT MEETING WAS ABOUT WAS USER

03:01:30  1    EXPERIENCE, THE SEPARATING SYSTEM, AND SPECIFICALLY AT THAT

03:01:34  2    TIME, HE WAS TALKING ABOUT A PHONE, THE OMNIA PHONE THAT USED

03:01:40  3    THAT UNSUCCESSFUL WINDOWS OPERATING SYSTEM.

03:01:45  4         IT WASN'T ABOUT WE NEED TO CHANGE OUR HARDWARE.  IT'S NOT

03:01:48  5    ANYTHING ABOUT WE NEED TO CHANGE OUR BEZEL, WE NEED TO CHANGE

03:01:52  6    OUR FRONT FACE OR ANYTHING LIKE THAT.

03:01:54  7         IN FACT, IF YOU LOOK AT PAGE 5 OF THE DOCUMENT, PX 40.5,

03:01:59  8    SDX 2106, YOU'LL SEE THAT MR. SHIN ACTUALLY SAID, "I HAVE

03:02:05  9    CONFIDENCE IN OUR PRODUCTS, H/W," HARDWARE, "IN THEIR EXTERIOR

03:02:12  10   DESIGN, AND IN THEIR QUALITY.  BUT WHEN IT COMES TO THE EASE OF

03:02:17  11   USE OF OUR USER EXPERIENCE, I LACK SUCH CONFIDENCE."

03:02:20  12        AND OF COURSE THE OPERATING SYSTEM HAS EVERYTHING TO DO

03:02:23  13   WITH THE USER EXPERIENCE.

03:02:24  14        THE DIFFERENCE BETWEEN HEAVEN AND EARTH THAT HE REFERRED

03:02:27  15   TO IS EXACTLY WHAT I TOLD YOU IN MY OPENING STATEMENT.  HE WAS

03:02:30  16   TALKING ABOUT THE OPERATING SYSTEM ON THE OMNIA.

03:02:38  17        COUNSEL SAID, WELL, THE -- YOU KNOW, THE BLACK -- THE

03:02:42  18   PATENT ON THE SCREEN, YOU KNOW, IT'S -- BECAUSE YOU HOLD THE

03:02:47  19   SCREEN UP WHEN YOU TAKE IT OFF, IT'S CLEAR, IT'S NOT BLACK, SO

03:02:51  20   IT CAN'T BE -- THAT CAN'T BE WHERE, WHERE THE DESIGN IS.

03:02:57  21        THAT -- FOR THE BLACK GLASS IN THE '305, THE QUESTION --

03:03:03  22   THE PATENT DESIGN IS EMBODIED IN THAT COMPONENT.  IT DOESN'T

03:03:06  23   SAY THE GLASS HAS TO BE BLACK.  WHAT SENSE WOULD THAT MAKE, TO

03:03:11  24   HAVE A PIECE OF BLACK GLASS OVER A PHONE THAT YOU COULDN'T SEE

03:03:15  25   THROUGH?

CLOSING ARGUMENT BY MR. QUINN

03:03:15  1      THAT BECOMES BLACK, AS MR. LUCENTE SHOWED YOU, WHEN IT HAS

03:03:20  2   A DISPLAY SCREEN BEHIND IT OR WHEN IT HAS ANYTHING BLACK IN THE

03:03:24  3   BACKGROUND.

03:03:24  4      WHAT APPLE IS REALLY TRYING TO DO IS TO ADD A DIFFERENT

03:03:27  5   STEP TO THAT FOUR FACTOR ANALYSIS, OR THE FOURTH FACTOR ABOUT

03:03:32  6   WHETHER SEPARATION, WHETHER THE SEPARATION, THE ABSENCE OF A

03:03:37  7   DARK BACKGROUND, DOES IT STILL WORK AS DESIGNED.

03:03:40  8      THAT'S NOT A FACTOR.  IT DOESN'T SAY YOU LOOK AT IT, IS

03:03:43  9   THAT THE DESIGN THERE?  AND THEN CAN IT BE SEPARATED, A

03:03:47 10   SEPARATE POINT?

03:03:48 11      THE FACTOR DOESN'T SAY, CAN YOU SEPARATE IT AND STILL HAVE

03:03:53 12   IT BLACK?

03:03:53 13      AS TO THE '305 DESIGN, THE GRAPHICAL USER INTERFACE AND

03:04:00 14   THAT ICON IMAGE, COUNSEL SUGGESTED, WELL, THAT'S GOT TO BE THE

03:04:03 15   PHONE BECAUSE YOU CAN ONLY SEE IT WHEN IT'S ON THE PHONE.

03:04:07 16      THAT'S NOT TRUE.  ANY POWER SOURCE, ANY POWER SOURCE, IN

03:04:12 17   FACT, THEY USE.  THEY'VE USED THAT ON SOMETHING THAT'S NOT A

03:04:14 18   PHONE.  YOU HEARD ABOUT THAT, THE IPOD TOUCH.  IT'S THERE.

03:04:18 19   IT'S NOT A PHONE.

03:04:20 20      NOTWITHSTANDING THE FACT THAT THE, THE DESIGN PATENT HAS

03:04:23 21   THAT LITTLE PHONE ICON ON IT, YOU HEARD THE TESTIMONY, DR. KARE

03:04:28 22   ACKNOWLEDGED, THAT'S USED ON THE IPOD TOUCH.

03:04:31 23      ALL YOU NEED TO SEE THAT IS SOME TYPE OF POWER SOURCE, A

03:04:34 24   BATTERY.  YOU DON'T NEED A PHONE.  YOU DON'T NEED THE ABILITY

03:04:38 25   TO SEARCH THE INTERNET TO CALL THAT UP.  YOU DON'T NEED THE

03:04:41   1    ABILITY TO TRACK YOUR KIDS.  YOU DON'T NEED THE ABILITY TO MAKE

03:04:44   2    A VIDEO OR ANY OF THE OTHER WONDERFUL THINGS THAT YOU DO ON A

03:04:49   3    SMARTPHONE.

03:04:50   4        BUT THAT'S WHAT THEY WANT YOU TO BELIEVE.  THEY WANT YOU

03:04:52   5    TO BELIEVE THAT JUST BECAUSE, YOU KNOW, THOSE ICONS ARE THERE

03:04:56   6    AND THEY HAVE CONTAINERS AROUND THEM INSTEAD OF, YOU KNOW, THE

03:05:00   7    NON-INFRINGING ONES THAT DON'T HAVE CONTAINERS, THAT IT'S GOT

03:05:03   8    TO BE THE WHOLE PHONE BECAUSE IT DOESN'T APPEAR UNLESS IT'S IN

03:05:06   9    A WHOLE PHONE.

03:05:07   10       THAT'S NOT WHAT THE PATENT SAYS.  IT'S SIMPLY NOT THE

03:05:10   11   CASE.

03:05:14   12       COUNSEL SPENT A LOT OF TIME AND WE'VE HAD A LOT OF

03:05:17   13   TESTIMONY AND DOCUMENTS IN THIS CASE NOT TALKING ABOUT THE FOUR

03:05:21   14   FACTORS, NOT TALKING ABOUT THE FOUR FACTORS, BUT TALKING ABOUT

03:05:25   15   ALLEGED COPYING BY SAMSUNG, AND I SUBMIT TO YOU THAT'S INTENDED

03:05:31   16   JUST TO MAKE YOU ANGRY AT SAMSUNG, INTENDED TO MAKE YOU WANT TO

03:05:35   17   PUNISH, WHICH IS NOT THE APPROPRIATE REMEDY HERE.

03:05:38   18       WE LOOKED AT THESE DOCUMENTS.  COUNSEL JUST SHOWED YOU

03:05:42   19   THREE OF THEM FROM SOMETHING CALLED A SOFTWARE VERIFICATION

03:05:45   20   GROUP.  THEY GIVE YOU NO INFORMATION WHO THE SOFTWARE

03:05:50   21   VERIFICATION GROUP IS.  THERE'S NO TESTIMONY ABOUT THAT.

03:05:53   22       ALL THOSE DOCUMENTS, THOSE DOCUMENTS THAT HE SHOWED YOU

03:05:56   23   ARE DATED IN THE RANGE OF MARCH AND MAY OF 2010 AFTER THE

03:06:02   24   GRAPHICAL USER INTERFACE AT SAMSUNG HAD ALREADY BEEN DESIGNED.

03:06:05   25       THEY SHOWED YOU A DOCUMENT ENTITLED AMETHYST, THAT'S THE

03:06:09  1    4071, WHAT IS THAT?  YOU HAVE NO REASON TO THINK THAT THE

03:06:14  2    AMETHYST IS EVEN ONE OF THE PHONES THAT, YOU KNOW, THAT'S A

03:06:18  3    SUBJECT OF THIS CASE.

03:06:22  4         WE ASKED DR. KARE ABOUT THESE DOCUMENTS, DO YOU RECALL,

03:06:26  5    ABOUT THIS SOFTWARE VERIFICATION GROUP?

03:06:28  6         THIS IS HER TESTIMONY AT SDX 2298.

03:06:34  7         SHE HAD NO IDEA.  SHE'S SAYING, WELL, IT LOOKS LIKE THINGS

03:06:40  8    THAT DESIGNERS, YOU KNOW, SUGGESTIONS TO DESIGNERS, BUT SHE

03:06:45  9    DOESN'T KNOW WHETHER THE PEOPLE WHO DO THAT ACTUALLY ARE

03:06:48  10   DESIGNERS OR WHETHER ANY OF THEIR SUGGESTIONS WERE EVEN

03:06:53  11   IMPLEMENTED.

03:06:54  12        AND INTERESTINGLY, ONE OF THE SUGGESTIONS THAT COUNSEL

03:06:56  13   JUST SHOWED YOU, THIS IS PDX 1422, HE CALLED OUT THIS

03:07:01  14   PARTICULAR DOCUMENT.  AND WHAT YOU SEE HERE IS A COMMENT.  THE

03:07:06  15   SUGGESTION ON THE RIGHT IS THAT ON THE -- ON THE SAMSUNG I9000,

03:07:13  16   THEY SHOULD DIFFERENTIATE THE ICONS FOR TEXT AND E-MAIL BECAUSE

03:07:17  17   THEY'RE BOTH TOO MUCH LIKE ENVELOPES.  RIGHT?  THEY SHOULD

03:07:21  18   DISTINGUISH THOSE, CHANGE THE REPLICANT ICONS AND MAKE THEM

03:07:25  19   DIFFERENT.

03:07:26  20        THIS ISN'T ABOUT COPYING APPLE.  THIS IS A COMMENT ABOUT,

03:07:29  21   YOU KNOW, ON OUR ICONS, WE SHOULDN'T HAVE TWO ICONS THAT LOOK

03:07:34  22   TOO MUCH ALIKE FOR THOSE FEATURES.  AND YOU'LL HAVE THE PHONE,

03:07:37  23   YOU'LL HAVE THAT PARTICULAR PHONE.  IF YOU WANT TO LOOK AT IT,

03:07:40  24   YOU'LL SEE, FRANKLY, THE SUGGESTION WASN'T FOLLOWED.  IF YOU

03:07:42  25   LOOK AT THE GALAXY S I9000, THIS IS JOINT EXHIBIT 1007, YOU

03:07:48  1    LOOK AT THOSE TWO ICONS, THEY'RE STILL ENVELOPES.

03:07:52  2         SO IT'S JUST A MYSTERY.  YOU HAVE SOME PEOPLE IN SOMETHING

03:07:55  3    CALLED THE SOFTWARE VERIFICATION GROUP WHO ARE MAKING

03:07:57  4    SUGGESTIONS, AT LEAST IN THE ONE INSTANCE THAT HE CALLED UP

03:08:00  5    HERE, YOU'LL BE ABLE TO SEE THAT THE SUGGESTION SIMPLY WASN'T

03:08:04  6    FOLLOWED.

03:08:10  7         THERE'S ANOTHER DOCUMENT, PDX 1417 THEY SHOWED YOU,

03:08:17  8    FEASIBILITY REVIEW ON STANDALONE AP BUSINESS BY SOMETHING

03:08:24  9    CALLED LSI.

03:08:26 10         THE ONLY TESTIMONY, THE ONLY EVIDENCE THAT YOU HAVE ON

03:08:28 11    THIS CASE, IN THIS CASE, IS THAT THIS IS A SEPARATE GROUP THAT

03:08:36 12    MAKES CHIPS, MAKES CHIPSETS.  THEY DON'T MAKE SMARTPHONES.

03:08:40 13    SAMSUNG HAS A GROUP THAT MAKES CHIPSETS THAT THEY SELL TO OTHER

03:08:43 14    PEOPLE, THAT THEY SELL TO OTHER SMARTPHONE MANUFACTURERS, AND

03:08:46 15    ACTUALLY, MS. DAVIS CONFIRMED THIS.  THIS IS HER TESTIMONY AT,

03:08:53 16    TESTIMONY AT 824 AT 1 TO 3.

03:08:57 17         MAKES SEMICONDUCTOR CHIPS.

03:09:01 18         AND THEY QUOTE LANGUAGE IN THERE ABOUT, YOU KNOW, WE COULD

03:09:05 19    COPY HARDWARE OR WE COULD EASILY MAKE CHIPS OR HARDWARE LIKE

03:09:09 20    THIS.

03:09:09 21         IT'S GOT NOTHING TO DO WITH THE DESIGNS OF PHONES, AND YOU

03:09:13 22    HAVE NO EVIDENCE THAT IT HAS ANYTHING TO DO WITH DESIGNS OF

03:09:16 23    PHONES.

03:09:17 24         AGAIN, IT'S JUST MISDIRECTION.  IT'S SOMETHING THAT'S

03:09:19 25    INTENDED TO MAKE YOU ANGRY AT SAMSUNG AND SEEK TO HAVE YOU

1    PUNISH SAMSUNG.

2         SO I'M GOING TO TURN THE REST OF THIS OVER TO MR. PRICE TO

3    TALK ABOUT DAMAGES.  I'VE TRIED TO TELL YOU HOW TO APPLY THIS

4    ARTICLE OF MANUFACTURE TEST TO THE FACTS IN THIS CASE.  I'VE

5    TRIED TO SHOW YOU HOW APPLE HAS TALKED ABOUT -- TRIED TO CHANGE

6    THE SUBJECT, CHANGE THE WORDS, IGNORE WORDS IN THIS TEST.

7         MR. PRICE IS NOW GOING TO TALK TO YOU ABOUT DAMAGES.

8    YOU'LL HEAR SAMSUNG ISN'T CLAIMING THAT, YOU KNOW, IT ISN'T

9    CONTENDING IT SHOULDN'T HAVE TO PAY PROFITS.  IT'S JUST NOT

10   REQUIRED, SHOULDN'T BE REQUIRED TO PAY PROFITS ON THE WHOLE

11   PHONES.

12        THANKS VERY MUCH.

13           THE COURT:  DO YOU WANT TO TAKE A MINUTE TO -- DO YOU

14   WANT TO KEEP GOING OR DO YOU WANT TIME TO SET UP?

15           MR. PRICE:  CAN WE TAKE -- I THINK YOU CALL IT A BIO

16   BREAK.

17           THE COURT:  THAT'S FINE.  OKAY.  I'LL STOP THE CLOCK

18   AT 3:10.

19        LET'S TAKE A TEN MINUTE BREAK, PLEASE.  DO NOT RESEARCH OR

20   DISCUSS THE CASE.  THANK YOU FOR YOUR PATIENCE AND YOUR

21   SERVICE.

22        TEN MINUTE BREAK, PLEASE.

23        (JURY OUT AT 3:10 P.M.)

24           THE COURT:  LET'S TAKE OUR BREAK NOW.  THANK YOU.

25           MR. LEE:  CAN WE JUST GET YOUR HONOR'S TIME SO WE CAN

03:10:54    1    MANAGE THE TIME?

03:10:54    2            THE COURT:  SO MR. MUELLER USED 43 MINUTES, SO YOU

03:10:58    3    HAVE 17 LEFT.

03:10:59    4            MR. LEE:  GREAT.

03:10:59    5            THE COURT:  OKAY.

03:11:05    6        (RECESS FROM 3:11 P.M. UNTIL 3:23 P.M.)

03:23:36    7        (JURY IN AT 3:23 P.M.)

03:23:55    8            THE COURT:  WELCOME BACK, PLEASE TAKE A SEAT.

03:24:01    9        MR. PRICE, ARE YOU READY?

03:24:03   10            MR. QUINN:  I AM, YOUR HONOR.

03:24:04   11            THE COURT:  OKAY.  3:23 GO AHEAD, PLEASE.

03:24:04   12        **(MR. PRICE GAVE HIS CLOSING ARGUMENT ON BEHALF OF**

03:24:04   13    **SAMSUNG.)**

03:24:09   14            MR. PRICE:  GOOD AFTERNOON.  I APPRECIATE YOUR

03:24:12   15    PATIENCE.  I SPEAK LATE IN THE AFTERNOON.  I THING YOU HEARD

03:24:15   16    FROM APPLE'S INVENTORS, MR. BALAKRISHNAN AND MR. SINGH, AND

03:24:20   17    THEY TALKED ABOUT THE REVOLUTIONARY INVENTIONS THAT THEY

03:24:22   18    CREATED FOR THE IPHONE, WHICH ARE THE TWO UTILITY PATENTS IN

03:24:25   19    THIS CASE, AND ACCORDING TO MS. DAVIS, AS A RESULT OF THOSE

03:24:28   20    REVOLUTIONARY INVENTIONS, APPLE IS SEEKING A ROYALTY OF $2 PER

03:24:33   21    PHONE, ABOUT.

03:24:38   22        BUT APPLE IS ALSO ASKING FOR A BILLION DOLLARS, A BILLION

03:24:40   23    DOLLARS, FOR THE USE OF THESE DESIGN ELEMENTS, WHICH COMES OUT

03:24:49   24    TO ABOUT $100 PER PHONE, EVEN THOUGH THE PATENTS DON'T COVER

03:24:52   25    ANY OF THE INVENTIONS IN THE PHONE, THOSE DESIGN PATENTS, ANY

03:24:55  1     OF THE WONDERFUL THINGS THEY CAN DO.

03:24:57  2          SO HOW DO THEY GET THERE?  AND I WANT TO TALK TO YOU ABOUT

03:25:00  3     THE TESTIMONY YOU HEARD FROM THE DAMAGES EXPERTS, FROM

03:25:03  4     MS. DAVIS AND MR. WAGNER.

03:25:06  5          AND I DON'T KNOW IF YOU RECALL, BUT WHEN MS. DAVIS WAS ON

03:25:10  6     THE STAND ON DIRECT, ONE OF THE THINGS SHE DID WAS ATTACK

03:25:14  7     SAMSUNG, ATTACK ITS INTEGRITY, ATTACK THE INTEGRITY OF ITS

03:25:18  8     FINANCIAL SYSTEM.

03:25:19  9          DO YOU REMEMBER WHERE YOU SAW THIS CHART IN HER DIRECT,

03:25:22  10    IT'S PDX 14.59, AND SHE HAS MOUNTAINS OF DATA, THESE LONG,

03:25:29  11    DETAILED SPREADSHEETS ABOUT SAMSUNG'S COSTS, ABOUT THEIR

03:25:34  12    MARKETING EXPENSE, ABOUT THEIR SALES, EXPENSE, ET CETERA.

03:25:38  13         AND SHE SAID IN HER DIRECT, WELL, THOSE ALLOCATIONS WERE

03:25:41  14    UNRELIABLE.  AND I DON'T KNOW IF YOU REMEMBER SEEING THIS --

03:25:44  15    APPARENTLY THIS ISN'T WORKING.  SHE SAID IT'S NOT RELIABLE

03:25:47  16    BECAUSE THEY'RE DIFFERENT VERSIONS, AND THEY WERE RECLASSIFIED

03:25:53  17    1.3 BILLION.  DO YOU REMEMBER THAT?

03:25:55  18         AND THEN SHE SAID THESE WEREN'T USED IN THE ORDINARY

03:25:59  19    COURSE OF BUSINESS -- THANK YOU, KEN -- THESE SPREADSHEETS WERE

03:26:02  20    AND THAT WAS PREPARED SOLELY FOR LITIGATION, AND IT WASN'T

03:26:06  21    BACKED UP BY PRODUCT SPECIFIC RECORDS, THERE WERE NO BILLS OR

03:26:09  22    RECEIPTS.

03:26:09  23         SHE SAID AS A RESULT OF THAT, THAT DATA WAS UNRELIABLE,

03:26:13  24    AGAIN, KIND OF AN ATTACK ON THE SYSTEM ITSELF.

03:26:16  25         BUT DO YOU RECALL WHAT HAPPENED ON CROSS-EXAMINATION?  AND

03:26:18  1    I BRING THIS OUT BECAUSE YOU'VE GOT TWO EXPERTS HERE, AND YOU

03:26:21  2    HAVE TO ASK YOURSELF WHO'S SHADING THINGS A BIT?

03:26:24  3         AND ONE OF THE FIRST THINGS I ASKED HER ABOUT WAS ABOUT

03:26:27  4    THAT $1.3 BILLION, THAT THERE WERE DIFFERENT VERSIONS.  AND DO

03:26:32  5    YOU REMEMBER SHE SAID, SHE ADMITTED, WELL, THAT

03:26:34  6    RECLASSIFICATION WAS JUST IN COST OF GOODS SOLD.

03:26:37  7         IF WE CAN PUT UP 2287, KEN, AND THAT'S THE EXACT CATEGORY

03:26:43  8    THAT SHE WAS RELYING ON.

03:26:47  9         DO YOU REMEMBER SHE SUBTRACTS COST OF GOODS SOLD.  SHE

03:26:51  10   SAID DESPITE TELLING THE JURY THAT THAT WAS A $1.3 BILLION

03:26:56  11   SWITCH IN THAT CATEGORY, THAT'S THE VERY CATEGORY THAT YOU WERE

03:26:59  12   SAYING ACCURATELY DESCRIBES AND REPORTS THE EXPENSES, AND SHE

03:27:02  13   SAID, YES, I THINK THE FINAL SPREADSHEET ACCURATELY DOES SO FOR

03:27:07  14   THE COSTS OF GOODS SOLD.

03:27:09  15        SO THE ONLY DIFFERENCE IN THE SPREADSHEET SHE IDENTIFIES

03:27:11  16   IS SOMETHING THAT DOESN'T MATTER TO HER IN THE ONE CATEGORY SHE

03:27:15  17   USES.

03:27:16  18        BUT THEN I ASKED HER ABOUT THE OPERATING EXPENSES AND SHE

03:27:19  19   SAID, IF YOU RECALL, THAT THERE WERE NO SIGNIFICANT CHANGES

03:27:21  20   THERE AT ALL.

03:27:22  21        AND THEN I ASKED HER, THOSE OPERATING EXPENSES, I SAID

03:27:25  22   THAT DATA, THAT WAS INPUT YEARS AGO ON A MONTHLY BASIS.  YOU

03:27:29  23   BELIEVE THAT DATA IS RELIABLE?  THERE'S BEEN NO MONKEYING

03:27:32  24   AROUND WITH THAT DATA; RIGHT?

03:27:34  25        AND SHE SAID, I HAVE NO INFORMATION THAT WOULD SUGGEST

03:27:38  1     ANYBODY'S BEEN MONKEYING AROUND WITH THE DATA.

03:27:40  2          AND THEN A LITTLE LATER SHE SAID -- SHE AGREED THAT SHE

03:27:43  3     HAD NO INFORMATION TO SUGGEST THAT THAT INFORMATION WAS

03:27:45  4     UNRELIABLE, WHICH IS WHAT THEY HIGHLIGHTED IN THAT CHART TO YOU

03:27:48  5     RIGHT AT THE BEGINNING.

03:27:49  6          AND THEN THE SECOND PART, USED IN THE ORDINARY COURSE OF

03:27:52  7     BUSINESS.  IF WE GO TO PDX 14.59, YOU RECALL WHAT SHE SAID

03:27:58  8     ABOUT THAT WAS, AGAIN, ON CROSS-EXAMINATION, THAT SPREADSHEET,

03:28:02  9     THESE SPREADSHEETS IN THIS CASE WOULD NOT BE PRODUCED IN THE

03:28:06  10    ORDINARY COURSE OF BUSINESS.  THEY'RE TOO FINE OF DETAIL.

03:28:09  11         BUT WHAT SHE ADMITTED AND WHAT SHE SAID WAS THAT THAT DATA

03:28:12  12    THAT'S IN THOSE SPREADSHEETS ARE INPUT ON A DAILY OR MONTHLY

03:28:16  13    BASIS AT THAT TIME IT IS DONE THROUGH THE S.A.P.  DO YOU

03:28:22  14    REMEMBER THE S.A.P. SOFTWARE SYSTEM?  THIS IS DONE EVERY DAY,

03:28:25  15    AND THEN THERE ARE ALLOCATIONS EVERY MONTH, IT'S DONE AT THE

03:28:29  16    TIME BACK WHEN THE SALES ARE MADE.

03:28:31  17         THIS ISN'T SOMETHING -- THE DATA IS NOT CREATED FOR THIS

03:28:34  18    CASE.  AND SHE, SHE KNEW THAT.

03:28:37  19         SHE KNEW THAT THIS DATA WAS RELIABLE AND IT WAS PULLED UP,

03:28:41  20    AND SHE THOUGHT IT WAS RELIABLE.

03:28:43  21         BUT THERE'S A LITTLE BIT OF AN ATTEMPT TO MISLEAD YOU

03:28:47  22    HERE.

03:28:47  23         AND THEN SHE WAS ASKED ABOUT -- SHE SAID THAT THIS WAS

03:28:53  24    DONE FOR, I THINK THE -- IT WASN'T BACKED UP BY PRODUCT

03:28:58  25    SPECIFIC RECORDS.

03:29:00  1          AND I DON'T KNOW IF YOU REMEMBER HER TESTIMONY ON THIS,

03:29:03  2     SHE SAID THERE WERE NO BILLS AND RECEIPTS.

03:29:05  3          AND THEN WHEN I EXAMINED HER, SHE SAID, WELL, SHE

03:29:09  4     ADMITTED, YOU KNOW, THIS DATA IS PLUGGED IN ON A MONTHLY BASIS,

03:29:13  5     THE BILLS, THE RECEIPTS.  IT'S PUT INTO THE SYSTEM.  THAT'S HOW

03:29:18  6     IT'S DONE.

03:29:20  7          AND THEN I ASKED HER, WAIT A MINUTE, YOU RELIED ON COST OF

03:29:24  8     GOODS SOLD.  REMEMBER THAT CATEGORY SHE'S RELYING ON?  YOU SAY

03:29:27  9     THAT'S ACCURATE.  THERE WOULD HAVE BEEN LOTS AND BILLS OF

03:29:31  10    RECEIPTS FOR THAT IF THAT'S WHAT SHE NEEDED TO LOOK AT.  AND

03:29:35  11    SHE SAID, YEAH, I DIDN'T NEED THOSE RECEIPTS TO VERIFY THAT.  I

03:29:39  12    DIDN'T LOOK AT THAT.

03:29:39  13         IT WAS A MADE UP EXCUSE.  AS MR. WAGNER TOLD YOU, YOU'RE

03:29:43  14    NOT GOING TO FIND BILLS AND RECEIPTS FOR BILLIONS OF DOLLARS OF

03:29:46  15    SALES AND COSTS.  THAT WHAT YOU LOOK AT IS THE AUDITED

03:29:51  16    FINANCIAL SYSTEM THAT MS. DAVIS SAID, YES, IT WAS AUDITED BY

03:29:55  17    PRICEWATERHOUSE, AND I ASSUME THEY CHECKED THE RELIABILITY OF

03:29:59  18    THOSE INPUTS.

03:30:02  19         SO WE KNOW THEY DID HAVE RELIABLE DATA.  SHE ADMITTED

03:30:05  20    DURING CROSS-EXAMINATION THAT THIS WAS A SLEIGHT OF HAND

03:30:09  21    REALLY, A MISDIRECTION, THAT THERE IS RELIABLE DATA TO

03:30:11  22    DETERMINE NOT JUST THE REVENUES, BUT SAMSUNG'S COSTS.

03:30:16  23         AND SO NOW WE GO TO THE QUESTION OF WHAT SHE DEDUCTED, AND

03:30:20  24    THIS IS ANOTHER EXAMPLE OF MISDIRECTION.

03:30:24  25         I'D LIKE TO PUT UP, IF I COULD, JURY INSTRUCTION, IT'S

03:30:28  1    NUMBER 30, AND I THINK MR. MUELLER TALKED ABOUT IT AS WELL, AND

03:30:34  2    THERE'S A SECTION HERE ON WHAT EXPENSES SHOULD BE DEDUCTED.

03:30:37  3         AND YOU SAY EXPENSES CAN INCLUDE COSTS INCURRED IN

03:30:41  4    PRODUCING THE GROSS REVENUE, SUCH AS THE COSTS OF THE GOODS.

03:30:44  5    OTHER COSTS MAY BE INCLUDED AS DEDUCTIBLE EXPENSES IF THEY ARE

03:30:49  6    DIRECTLY ATTRIBUTABLE TO THE SALES OR MANUFACTURE OF THE

03:30:52  7    INFRINGING PRODUCTS RESULTING IN A NEXUS BETWEEN THE INFRINGING

03:30:55  8    PRODUCTS AND THE EXPENSES.

03:30:57  9         THE NEXUS.  I DON'T KNOW IF YOU REMEMBER HER SAYING IN HER

03:31:01 10    REPORT SHE NEVER USED THE WORD "NEXUS."  SHE NEVER LOOKED TO

03:31:04 11    SEE IF THERE WAS A NEXUS OR A RELATIONSHIP BETWEEN THE EXPENSES

03:31:10 12    TO SEE IF THEY WERE DEDUCTIBLE, AND THE REVENUES.

03:31:13 13         HERE IS WHAT SHE SAID, IF YOU RECALL IN EXAMINATION, SHE

03:31:16 14    SAID, LOOK, AS AN ACCOUNTANT, I'VE NEVER SEEN DIRECTLY

03:31:22 15    ATTRIBUTABLE IN ACCOUNTING LITERATURE, OKAY?  IT'S NOT

03:31:25 16    SOMETHING I'M AN EXPERT IN AS AN ACCOUNTANT, AND THAT'S HER

03:31:30 17    EXPERTISE, THAT'S WHY SHE'S HERE, TO ASSIST YOU AS AN

03:31:32 18    ACCOUNTANT.

03:31:33 19         AND SHE SAID, AND I'M NOT GIVING A LEGAL OPINION AS TO

03:31:37 20    WHAT THAT MEANS.  REMEMBER SHE SAID I'M NOT A LAWYER.  I'M NOT

03:31:41 21    GIVING AN OPINION ON WHAT THAT MEANS.  AND SHE'S BEEN IN LOTS

03:31:46 22    AND LOTS OF CASES, AND SHE SAID I'VE NEVER APPLIED THAT IN ANY

03:31:50 23    CASE.

03:31:50 24         BUT SHE'S BROUGHT HERE TO GIVE YOU EXPERT TESTIMONY TO

03:31:53 25    HELP YOU AS TO WHAT CAN BE DEDUCTED AND WHAT CAN'T.  IF YOU

03:31:56   1   BELIEVE HER, SHE CAN BE OF NO HELP TO YOU BECAUSE SHE CAN'T

03:31:59   2   HELP YOU AS AN ACCOUNTANT.  SHE CAN'T HELP YOU AS A LEGAL

03:32:03   3   INTERPRETATION.

03:32:04   4       AND YET SHE SAYS THAT WORD, DIRECTLY ATTRIBUTABLE MEANS

03:32:07   5   YOU CAN'T, YOU CAN'T COUNT SHARED COSTS.  SHE SAYS, I THINK

03:32:13   6   THAT'S WHAT THAT MEANS.

03:32:15   7       AND SHE HAS NO BASIS FOR IT.  IT DOESN'T COME FROM

03:32:18   8   ACCOUNTING LITERATURE.  SHE'S NOT GIVING YOU A LEGAL OPINION.

03:32:21   9       SHE BASICALLY SAYS, I'M COMING IN HERE AND TELLING YOU YOU

03:32:24  10   CAN'T DEDUCT THAT, AND THAT'S NOT MY EXPERTISE.

03:32:29  11       BUT YOU HEARD FROM TWO ACCOUNTANTS HERE AND THEY ARE

03:32:31  12   INCREDIBLY RELEVANT, THEY DO GIVE YOU EXPERTISE, AND HERE'S WHY

03:32:35  13   THEY GIVE YOU THE EXPERTISE.

03:32:37  14       IF YOU LOOK AT THE FULL SENTENCE AND NOT JUST THE TWO

03:32:39  15   WORDS, TWO WORDS WHICH MS. DAVIS SAID SHE DIDN'T KNOW WHAT THEY

03:32:43  16   MEANT, IF YOU LOOK AT THE WHOLE SENTENCE, YOU SEE IT'S ABOUT

03:32:46  17   DEDUCTIBLE EXPENSES IF THEY ARE DIRECTLY ATTRIBUTABLE TO THE

03:32:49  18   SALE OR MANUFACTURE OF THE INFRINGING PRODUCTS RESULTING IN A

03:32:53  19   RELATIONSHIP BETWEEN THE INFRINGING PRODUCTS AND THE EXPENSES.

03:32:56  20       NOW, HER STATEMENT, THAT MEANS YOU CAN'T DEDUCT ALLOCATED

03:33:00  21   COSTS.  AND ALLOCATED, YOU REMEMBER, IS, FOR EXAMPLE, IF

03:33:03  22   THERE'S AN ADVERTISEMENT WITH THREE PHONES, AND YOU PAY A LOT

03:33:08  23   OF MONEY FOR IT, SHE WAS SAYING THAT MEANS YOU CAN'T CHARGE

03:33:11  24   THAT COST TO A PHONE.  WHEN THOSE PHONES INFRINGE, YOU HAVE TO

03:33:14  25   PRETEND THAT THAT EXPENSE DIDN'T TAKE PLACE.  DO YOU REMEMBER

03:33:17  1    THAT?

03:33:17  2         BUT SHE ADMITTED THAT IN HER DEDUCTION OF COST OF GOODS

03:33:23  3    SOLD, THERE WERE ALLOCATED EXPENSES THERE.  THERE ARE EXPENSES

03:33:27  4    THERE THAT ARE COMMON TO ALL PHONES AND ARE ALLOCATED.

03:33:30  5         SO SHE WAS BEING INCONSISTENT IN HER OWN OPINION.  AND THE

03:33:35  6    REASON SHE SAID THAT, BY THE WAY, IS BECAUSE IT MAKES NO SENSE

03:33:39  7    NOT TO DEDUCT REAL, NECESSARY EXPENSES IN CREATING REVENUE, AND

03:33:45  8    THAT'S WHAT THIS IS GETTING AT.

03:33:47  9         WHAT THIS IS GETTING AT IS ARE THESE EXPENSES THAT ARE

03:33:52  10   BEING DEDUCTED, IS THERE A NEXUS BETWEEN THE INFRINGING

03:33:55  11   PRODUCTS AND THOSE EXPENSES?  ARE THEY -- IS THERE A

03:33:59  12   RELATIONSHIP BETWEEN THOSE EXPENSES AND CREATING REVENUE, THE

03:34:04  13   REVENUE THAT'S AT ISSUE HERE?

03:34:05  14        AND WHAT SHE ADMITTED -- AND THIS IS WHERE AN ACCOUNTANT

03:34:09  15   CAN HELP YOU.  THIS IS WHERE HER EXPERTISE AND MR. WAGNER'S

03:34:13  16   EXPERTISE CAN HELP YOU -- SHE CAME UP AND TOLD YOU, YES, THERE

03:34:16  17   IS A RELATIONSHIP BETWEEN MARKETING AND REVENUE; YES, THERE IS

03:34:21  18   A RELATIONSHIP BETWEEN HAVING SALESMEN IN THE FIELD AND

03:34:28  19   REVENUE; THERE'S A RELATIONSHIP WITH RESEARCH AND DEVELOPMENT;

03:34:31  20   THERE'S A RELATIONSHIP WITH ACTUALLY GENERAL OVERHEAD EXPENSES

03:34:34  21   SUCH AS, YOU KNOW, THE PEOPLE WHO SEND OUT THE BILLS.

03:34:38  22        YOU HAVE TO ACTUALLY SPEND THAT MONEY TO CREATE THAT

03:34:40  23   REVENUE, AND THAT'S WHAT AN ACCOUNTANT WOULD TELL YOU, AND, IN

03:34:44  24   FACT, THAT'S WHAT SHE TOLD YOU.

03:34:48  25        AND THE REASON YOU KNOW THAT THAT RELATIONSHIP EXISTS, BY

03:34:51  1   THE WAY, IS THAT APPLE, IN ITS FINANCIAL STATEMENTS, DEDUCTS

03:34:56  2   THOSE EXPENSES TO ARRIVE AT ITS PROFITS.  IT DEDUCTS MARKETING.

03:35:01  3   IT DEDUCTS SALES, IT DEDUCTS ADMINISTRATIVE, AND THEY COULD NOT

03:35:06  4   DO THAT UNLESS THERE WAS A NEXUS BETWEEN THOSE EXPENSES AND THE

03:35:13  5   REVENUE.

03:35:16  6        THERE IS.  IT'S -- THERE IS THAT RELATIONSHIP.

03:35:21  7        AND SO THEN THE QUESTION IS, HOW DO YOU, HOW DO YOU

03:35:26  8   ESTIMATE WHAT THOSE EXPENSES ARE?

03:35:30  9        THE STANDARD ISN'T THAT YOU HAVE TO HAVE YOUR EXPENSES

03:35:33  10  DOWN TO THE PENNY OR THAT YOU NEED RECEIPTS.  THE QUESTION IS,

03:35:38  11  IF YOU KNOW THAT THERE ARE EXPENSES THAT ARE -- THAT RESULT IN

03:35:42  12  INCOME, HOW DO YOU ESTIMATE THEM?

03:35:44  13       AND, AGAIN, THAT'S WHERE ACCOUNTANTS CAN HELP YOU.  THAT'S

03:35:47  14  WHERE MS. DAVIS COULD HAVE HELPED YOU.  THAT'S WHERE MR. WAGNER

03:35:51  15  DID HELP YOU.

03:35:52  16       HE SAID THE WAY YOU DO THAT IS YOU LOOK AT YOUR EXPENSES

03:35:56  17  THAT ARE PUT IN, YOU KNOW, EVERY DAY AND THEN THERE'S AN

03:35:59  18  ALLOCATION EVERY MONTH AT THE TIME; RIGHT?

03:36:02  19       AND THERE IS AN ALLOCATION OF THESE SHARED EXPENSES AT

03:36:08  20  THAT TIME AND IT'S BASED ON REVENUE, OR SOMETHING LIKE REVENUE.

03:36:13  21       AND I'M NOT GOING TO SHOW YOU THIS BECAUSE IT'S A

03:36:16  22  CONFIDENTIAL DOCUMENT, BUT IF YOU LOOK AT DX 4554, THAT IS AN

03:36:24  23  APPLE DOCUMENT, THAT'S ONE OF THEIR INTERNAL FINANCIAL REPORTS,

03:36:29  24  IT'S ABOUT THE IPHONE PRODUCT LINE, AND THERE ARE SHARED

03:36:33  25  EXPENSES BETWEEN THE IPHONE AND THE IPAD AND THE COMPUTERS IN

03:36:37   1    APPLE.

03:36:38   2         AND IF YOU LOOK AT THAT, THEY DEDUCT OPERATING EXPENSES.

03:36:42   3    AND THERE'S A LITTLE FOOTNOTE AT THE BOTTOM THAT SAYS THESE ARE

03:36:45   4    ALLOCATED BASED UPON PERFORMANCE BECAUSE THAT'S HOW YOU

03:36:49   5    ESTIMATE THEM.

03:36:51   6         IT'S NOT A QUESTION OF WHETHER -- THAT THEY'RE NOT

03:36:54   7    RELATED.  IT'S THAT THAT IS THE WAY YOU ESTIMATE THOSE

03:36:57   8    INCREDIBLY IMPORTANT EXPENSES THAT CREATE REVENUE.

03:37:00   9         APPLE ITSELF DOES THAT.

03:37:05  10         ALL THESE EXPENSES, THE SALES PEOPLE, THE MARKETING, THE

03:37:09  11    RESEARCH AND DEVELOPMENT.  YOU HEARD MR. WAGNER TALK ABOUT IT,

03:37:13  12    AND MS. DAVIS.  AGAIN, HOW DO YOU ESTIMATE THE RESEARCH AND

03:37:16  13    DEVELOPMENT EXPENSE?

03:37:17  14         IT IS NECESSARY, THERE'S A NEXUS BETWEEN THAT AND THE

03:37:21  15    REVENUE.  AND HE TOLD YOU THAT THE WAY YOU ESTIMATE THAT IS,

03:37:24  16    YES, THAT EXPENSE THAT YOU ARE ESTIMATING AT THE TIME, YOU USE

03:37:29  17    AN ALLOCATION.  YOU SAY HERE WE HAVE THESE PRODUCTS, HERE'S THE

03:37:33  18    CURRENT SPENDING; RIGHT?

03:37:34  19         AND HE SAID, YES, THAT ISN'T TECHNICALLY CURRENT SPENDING

03:37:38  20    ON THOSE PHONES.

03:37:39  21         BUT WHAT HE SAID WAS, THAT IS HOW YOU ESTIMATE IT.  IN

03:37:43  22    FACT, THAT'S HOW YOU'RE REQUIRED TO ESTIMATE IT.

03:37:47  23         LET ME SHOW YOU HIS TESTIMONY HERE.  THIS IS AT SDX 2310,

03:37:52  24    IF WE CAN PUT THAT UP.

03:37:54  25         HE SAID, SO WHAT COMPANIES DO THOUGH, THEY DO IT TODAY,

03:37:58  1    APPLE DOES IT FOR RESEARCH AND DEVELOPMENT.  SAMSUNG DOES IT

03:38:01  2    FOR RESEARCH AND DEVELOPMENT.  SAMSUNG WILL ALLOCATE THE

03:38:06  3    RESEARCH AND DEVELOPMENT TO THE NEXT GENERATION TO THE PHONES

03:38:09  4    THAT ARE BEING SOLD TODAY.

03:38:12  5         QUESTION:  AND YOU SAID THAT WAS REQUIRED?  BECAUSE HE HAD

03:38:14  6    GIVEN A LONG ANSWER BEFORE THAT.

03:38:16  7         HE SAID IT'S REQUIRED BY THE ACCOUNTANTS.  SAMSUNG IS

03:38:20  8    REQUIRED TO KEEP THEIR BOOKS AND RECORDS THAT WAY.  SO IS

03:38:22  9    APPLE.

03:38:23  10        SO THE QUESTION THAT YOU HAVE IN THE JURY INSTRUCTIONS, IS

03:38:25  11   THERE THAT RELATIONSHIP BETWEEN THE EXPENSES AND THE REVENUE?

03:38:27  12   THERE IS.  IT IS UNDISPUTED THERE'S A RELATIONSHIP.

03:38:30  13        THE NEXT QUESTION IS:  HOW DO YOU CAPTURE THAT?  HOW DO

03:38:33  14   YOU ESTIMATE IT?

03:38:34  15        AND THE WAY THE ACCOUNTING PROFESSION, WHICH HAS BUILT UP

03:38:38  16   THESE RULES OVER YEARS AND YEARS, ESTIMATES THAT THEY LOOK AT

03:38:43  17   THE R&D THAT ARE ON THE BOOKS AT THE TIME THE PRODUCTS ARE OUT.

03:38:47  18        AND THEY SAID THAT IS A FAIR ESTIMATION.

03:38:50  19        AND SO THE EXPENSES YOU SEE FOR R&D THAT WERE SPENT FOR

03:38:54  20   MARKETING, FOR SALES, ARE ALLOCATED.

03:38:57  21        AND IF YOU DON'T DO THAT, YOU'RE CREATING A WORLD THAT

03:39:01  22   DOES NOT EXIST IN THE REAL WORLD.  YOU'RE AWARDING PROFITS TO

03:39:07  23   APPLE, YOU'LL BE AWARDING PROFITS TO APPLE THAT AREN'T PROFITS

03:39:10  24   AT ALL BECAUSE REAL MONEY WAS SPENT ON SALESMEN AND MARKETING

03:39:15  25   AND FOR THE ACCOUNTANTS AND FOR THE RESEARCH AND DEVELOPMENT.

03:39:20  1        AND IF YOU WANT TO SEE A REALITY CHECK IN THE NUMBERS THAT

03:39:25  2   YOU HEARD FROM MS. DAVIS AND MR. WAGNER -- IF WE CAN PUT UP SDX

03:39:29  3   2137 -- IN THE AUDITED FINANCIAL STATEMENTS OF SAMSUNG, THE

03:39:34  4   OVERALL -- THE OVERALL PROFIT MARGIN WAS 10 PERCENT.

03:39:39  5        FOR THE PARTICULAR DIVISION, THE IPHONE DIVISION OF

03:39:46  6   SAMSUNG, THE PHONE SEGMENT, THE OPERATING -- THE PROFIT IS

03:39:50  7   15 PERCENT.

03:39:51  8        SO MR. WAGNER DID HIS CALCULATIONS.  YOU'VE GOT THE

03:39:55  9   INFORMATION OUT OF THE S.A.P. SYSTEM, AND HIS NUMBERS ARE ABOUT

03:40:01 10   12 PERCENT OPERATING PROFIT.

03:40:05 11        WHAT ARE MS. DAVIS'S NUMBERS, THAT BILLION DOLLAR NUMBER?

03:40:10 12   THAT GIVES YOU AN OPERATING PROFIT OF 36 PERCENT.  IT'S A

03:40:15 13   PROFIT THAT WAS NEVER MADE.  IT'S, IT'S MORE THAN DOUBLE WHAT

03:40:20 14   HAPPENS ON THE DIVISION LEVEL.  IT'S THREE TIMES WHAT

03:40:23 15   MR. WAGNER CALCULATED USING THE EXPERTISE THAT HE HAS AND

03:40:28 16   MS. DAVIS HAS.

03:40:32 17        MR. LEE SAID THIS, THE JURY INSTRUCTION HER HONOR GAVE

03:40:36 18   YOU, THIS IS A SPECIAL CIRCUMSTANCE, A SPECIAL RULE, CONGRESS

03:40:39 19   WANTED TO AWARD TOTAL PROFITS.

03:40:41 20        YES, TOTAL PROFITS MEANING TOTAL REVENUES MINUS TOTAL

03:40:46 21   COSTS IF THE EXPENSES ARE RELATED TO THE GENERATION OF THAT

03:40:52 22   REVENUE.

03:40:56 23        THERE IS NO INTENTION IN THAT STATUTE TO PUNISH, AND IF

03:41:00 24   YOU DON'T DEDUCT THOSE EXPENSES THAT ARE ACTUALLY MADE AND THAT

03:41:04 25   ARE ESTIMATED USING THE PRINCIPLES, THE FOUNDATIONS OF

03:41:10  1       ACCOUNTING, THEN YOU ARE PUNISHING.

03:41:15  2           AND YOU WERE TOLD, IF YOU LOOK AT JURY INSTRUCTION 27, THE

03:41:18  3   SECOND PARAGRAPH OF THAT, THAT YOU ARE NOT TO PUNISH.

03:41:23  4           SO MAKING THAT -- DEDUCTING THE EXPENSES YOU SHOULD

03:41:28  5   DEDUCT, MR. WAGNER CALCULATED THAT THE TOTAL PROFITS ON THESE

03:41:31  6   PHONES IS ABOUT $371 MILLION.  THAT'S ALL THE PROFITS ON THE

03:41:37  7   PHONES THAT ARE INVOLVED IN THIS CASE.

03:41:40  8           AND THEN WHAT HE DID WAS HE SAID, OKAY, THAT'S THE TOTAL.

03:41:43  9   THE ARTICLES OF MANUFACTURE ARE LESS THAN THAT.  THEY'RE BASED

03:41:46 10   ON A PERCENTAGE OF THE COMPONENT, AND THAT METHODOLOGY, TAKING

03:41:50 11   THE COST OF THE COMPONENT DIVIDED BY THE COST OF THE PHONE,

03:41:53 12   MS. DAVIS SAID THAT WAS THE APPROPRIATE METHODOLOGY TO DO THIS,

03:41:56 13   TO CALCULATE PROFITS ON SOMETHING LESS THAN THE PHONE.

03:41:59 14           AND HE LOOKED AT THE DISPLAY ASSEMBLY, WHICH IS MUCH

03:42:02 15   BIGGER THAN THE ARTICLES OF MANUFACTURE WHICH MR. LUCENTE

03:42:06 16   IDENTIFIED, THE DISPLAY ASSEMBLY, IF YOU LOOK AT SDX 2146,

03:42:10 17   INCLUDES THE WINDOW GLASS, THE DISPLAY SCREEN, AND ALSO THE

03:42:17 18   CIRCUIT BOARDS, THE CIRCUIT BOARDS THAT ARE ATTACHED TO THE

03:42:21 19   DISPLAY SCREEN.

03:42:21 20           SO IT'S ACTUALLY THIS PART HERE IS MORE THAN THE DISPLAY

03:42:25 21   SCREEN WHICH IS THE ARTICLE OF MANUFACTURE FOR THE '305.

03:42:28 22           SO HE TOOK THAT, HE LOOKED AT THE DISPLAY ASSEMBLY COSTS

03:42:31 23   AND SAID, OKAY, HOW MUCH IS THAT BIG THING OF THE TOTAL COST?

03:42:35 24           AND WHEN YOU GET IN THE JURY ROOM, YOU CAN LOOK AT, I

03:42:38 25   THINK IT'S DX -- OH, IT'S 4536 WHERE HE MAKES THAT CALCULATION.

CLOSING ARGUMENT BY MR. PRICE

03:42:51   1        AND HE SAID THAT -- NO, NO, NOT THAT ONE, KEN.  MAYBE YOU

03:42:56   2   CAN GIVE ME HIM THE RIGHT NUMBER IF I GAVE HIM THE WRONG

03:43:01   3   NUMBER.

03:43:01   4        BUT HE MAKES THE CALCULATION ON THE DISPLAY SCREEN, AND HE

03:43:03   5   TOLD YOU IF YOU LOOK AT THOSE CALCULATIONS AND YOU WERE GOING

03:43:06   6   TO CALCULATE PROFITS BASED UPON THE COST OF THAT BIG THING, IT

03:43:10   7   WOULD BE $118 MILLION.

03:43:11   8        BUT THAT DOESN'T FINISH THE EQUATION.  WHAT YOU NEED TO DO

03:43:15   9   IS THEN, HE LOOKS AT THE COST OF THE SCREEN ITSELF, THE WINDOW

03:43:19   10  GLASS THAT IS, SO IT'S THE COST OF THE WINDOW GLASS, AND TRIES

03:43:23   11  TO FIGURE OUT -- THAT'S EXHIBIT 4536 WHERE HE DOES THE DISPLAY,

03:43:28   12  THE ENTIRE DISPLAY ASSEMBLY.

03:43:29   13       SO THEN HE TAKES THE GLASS AND SAYS WHAT PERCENTAGE IS

03:43:33   14  THAT OF THE DISPLAY ASSEMBLY, AND HE USES THE DATA THAT HE GOT

03:43:35   15  ON THE SALE OF THE WINDOW GLASS.

03:43:38   16       HE SAID THAT THAT COSTS $3 TO $5.  AND NO ONE HAS COME

03:43:43   17  HERE.  MS. DAVIS DIDN'T TAKE THE STAND AND SAY THAT IS AN

03:43:46   18  ESTIMATION THAT'S INCORRECT.  YOU HEARD MR. LEE CRITICIZE

03:43:50   19  MR. WAGNER SAYING, WELL, THERE WEREN'T A LOT OF DATA POINTS.

03:43:53   20  THERE WERE 258,000 PURCHASES OF WINDOW GLASS THAT HE BASED HIS

03:43:57   21  NUMBERS ON.

03:43:58   22       AND HE THEN DOES A CALCULATION, OKAY, IF YOU THEN TAKE

03:44:01   23  THAT OUT AND YOU HAVE LESS THAN THE ENTIRE DISPLAY ASSEMBLY,

03:44:06   24  YOU HAVE THE WINDOW GLASS AND THEN YOU HAVE WHAT'S LEFT OF THE

03:44:09   25  DISPLAY ASSEMBLY, AND YOU CALCULATE PROFITS ON THESE MODULES,

03:44:13  1    THEN YOU END UP WITH -- AND THIS IS IN DX 4537.02, IF YOU WANT

03:44:19  2    TO LOOK AT THAT AND SEE THE CALCULATIONS -- YOU END UP WITH THE

03:44:22  3    PROFITS ON THOSE COMPONENTS OF ABOUT $28 MILLION.

03:44:26  4         AND THAT'S USING THE REAL EXPENSES, THE RELATED EXPENSES,

03:44:31  5    AND THEN TAKING IT DOWN TO THE COMPONENTS THAT MR. QUINN TALKED

03:44:35  6    TO YOU ABOUT WHERE YOU ACTUALLY HAVE THE DESIGNS.

03:44:38  7         AND SO WHEN YOU SEE THE VERDICT FORM, AND THAT'S

03:44:42  8    EXHIBIT 2135 -- NO, NOT EXHIBIT, THIS IS A DEMONSTRATIVE,

03:44:48  9    SORRY -- SDX 2135, YOU CAN GO TO MR. WAGNER'S CALCULATIONS AT

03:44:54  10   EXHIBIT 4537, AND YOU'LL SEE WHAT THOSE CALCULATIONS ARE FOR

03:44:59  11   THE PROFITS FOR EACH PHONE BASED UPON THESE ARTICLES OF

03:45:04  12   MANUFACTURE, AND THAT COMES TO ABOUT 28,085,000.

03:45:07  13        AND HE SAID, AGAIN, IF YOU USE THIS INTERMEDIATE STEP

03:45:11  14   WHERE YOU HAVE A DISPLAY ASSEMBLY, YOU KNOW, THAT WOULD BE

03:45:14  15   ABOUT $118 MILLION.

03:45:19  16        THAT IS THE SPECIFIC TASK YOU'RE ASKED TO DO HERE, AND --

03:45:25  17   BUT I -- WHAT I'D ASK YOU TO DO IS, YOU KNOW, FOCUS ON THE

03:45:30  18   FACTS.  FOCUS ON THE FACTORS, AND FOCUS ON THE FINANCIALS.

03:45:38  19        AND IF YOU DON'T DO THAT, IF YOU DO WHAT MS. DAVIS

03:45:41  20   SUGGESTS AND WHAT MR. LEE SUGGESTS THAT THE LAW WAS MEANT TO

03:45:46  21   DO, THEN YOU WOULD BE PUNISHING SAMSUNG BY AWARDING PROFITS

03:45:49  22   THAT AREN'T REAL PROFITS BECAUSE YOU WOULD NOT BE INCLUDING

03:45:52  23   THESE REAL COSTS THAT ARE RELATED TO THE REVENUE AND WHICH HAVE

03:45:57  24   BEEN ALLOCATED AT THE TIME ON A DAILY AND MONTHLY BASIS IN A

03:46:01  25   FAIR MANNER.

REBUTTAL ARGUMENT BY MR. LEE

03:46:03  1       I AM GOING TO BE TOLD I'M DONE SOON, I'M SURE.  SAMSUNG

03:46:07  2   THANKS YOU FOR YOUR ATTENTION.  WE DON'T GET THE LAST WORD.

03:46:11  3   MR. LEE DOES, AND HE DOES HAVE A WAY WITH WORDS.  AND I USED TO

03:46:19  4   WORRY THAT I DIDN'T GET THE LAST SAY IN THESE THINGS.

03:46:22  5       BUT THERE ARE EIGHT OF YOU.  COLLECTIVELY, YOU'RE A JURY

03:46:26  6   AND YOU COME TO THE RIGHT RESULTS.

03:46:28  7       SOMEONE IS GOING TO REMEMBER SOMETHING THAT SOMEONE ELSE

03:46:30  8   DOESN'T, YOU KNOW?  YOU'RE GOING TO TALK, AND YOU'RE GOING TO

03:46:35  9   DO JUSTICE.  WE THANK YOU FOR CONSIDERING THE EVIDENCE.

03:46:39  10       THANK YOU VERY MUCH.

03:46:41  11          THE COURT:  OKAY.  TIME IS 3:46.

03:47:08  12       GO AHEAD.  WHAT IS TRANSCRIPT TIME, PLEASE.

03:47:11  13          THE REPORTER:  3:47:08.

03:47:14  14          THE COURT:  GO AHEAD, PLEASE.

03:47:14  15       **(MR. LEE GAVE HIS REBUTTAL CLOSING ARGUMENT ON BEHALF OF**

03:47:16  16   **APPLE.)**

03:47:16  17          MR. LEE:  LADIES AND GENTLEMEN OF THE JURY, I'M THE

03:47:18  18   LAST PERSON THAT YOU HAVE TO LISTEN TO, AND THEN YOU'LL BE ABLE

03:47:21  19   TO DELIBERATE.

03:47:22  20       THIS CASE IS ABOUT ACCEPTING RESPONSIBILITY FOR YOUR

03:47:25  21   DECISIONS, OR, ALTERNATIVELY, MAKING EXCUSES FOR YOUR

03:47:30  22   DECISIONS.

03:47:30  23       THERE'S AN OLD SAYING AMONG TRIAL LAWYERS, IF YOU HAVE THE

03:47:33  24   FACTS, FOCUS ON THE FACTS.  IF YOU HAVE THE LAW, FOCUS ON THE

03:47:36  25   LAW.  IF YOU HAVE NEITHER, ATTACK.  ATTACK THE OTHER CLIENT,

03:47:42   1     ATTACK THE OTHER PARTY, ATTACK THE WITNESSES.

03:47:45   2          I SAT HERE DURING THESE CLOSINGS AND HEARD US BE ACCUSED

03:47:50   3     OF MISSPEAKING TO YOU, MISREPRESENTING TO YOU, GIVING YOU RED

03:47:54   4     HERRINGS.

03:47:56   5          MS. DAVIS, WHO YOU SAW TESTIFY, SHE SAT TEN FEET FROM YOU,

03:48:00   6     AND WHO MR. WAGNER DESCRIBED AS ONE OF THE BEST, MOST RESPECTED

03:48:04   7     PROFESSIONALS IN HER PROFESSION, ATTACKED FOR TEN MINUTES OF

03:48:08   8     THEIR CLOSING.

03:48:11   9          YOU WOULD HAVE THOUGHT THAT THE PARTY WHOSE INTELLECTUAL

03:48:20   10    PROPERTY WAS STOLEN WOULD BE THE PERSON WHO WAS ATTACKED.  YOU

03:48:23   11    WOULD HAVE THOUGHT THAT THE PERSON WHOSE INTELLECTUAL PROPERTY

03:48:25   12    WAS STOLEN MILLIONS OF TIMES WOULD BE THE ONE TOSSING

03:48:29   13    ADJECTIVES AND ADVERBS AROUND LIKE THAT, AND -- BUT IT'S NOT,

03:48:34   14    AND THERE'S A REASON, BECAUSE THE LAW AND THE FACTS ARE ON OUR

03:48:36   15    SIDE.

03:48:37   16         LET ME GIVE YOU THREE QUICK EXAMPLES OF THE MISDIRECTION,

03:48:40   17    AND IT'S NOT BY US.

03:48:41   18         A SUBSTANTIAL PORTION OF THIS TRIAL WAS ASKING YOU TO

03:48:46   19    REVISIT THE ISSUE OF INFRINGEMENT.  DO YOU REMEMBER THOSE

03:48:49   20    DEMONSTRATIVES WITH THE ACE ON ONE SIDE AND THE GALAXY ON THE

03:48:52   21    OTHER AND CROSS-EXAMINATION ABOUT WHAT THE DIFFERENCES WERE?

03:48:54   22         THEY HAVE NOTHING TO DO WITH THIS CASE.  NOTHING.

03:48:59   23         IN FACT, HER HONOR HAS INSTRUCTED YOU THAT THE PRIOR

03:49:04   24    JURY'S DETERMINED THE ISSUES OF INFRINGEMENT AND THE ISSUES OF

03:49:09   25    VALIDITY.

03:49:10  1        SHE ALSO HAS INSTRUCTED YOU THAT IT'S CONCLUSIVE.  IT'S

03:49:16  2   BEEN DECIDED.

03:49:17  3        BUT THIS CONSTANT EFFORT TO REVISIT THE ISSUES THAT THE

03:49:21  4   OTHER JURY DECIDED IS AN EFFORT TO HAVE YOU UNDERMINE THAT

03:49:25  5   VERDICT, AND THAT'S SOMETHING THAT YOU SHOULD NOT DO BECAUSE

03:49:29  6   THE LAW DOESN'T ALLOW IT, AND IT WOULD BE WRONG TO DO.

03:49:33  7        HERE'S THE SECOND EXAMPLE.  HOW MANY TIMES DID YOU HEAR

03:49:36  8   THE INVENTIONS DESCRIBED AS NARROW?  TRIVIAL?  MINOR TODAY?

03:49:43  9        I WANT YOU TO TAKE A MINUTE AND PUT YOURSELF IN THE SHOES

03:49:45  10  OF MR. JOSWIAK AND MR. HOWARTH AND MR. BLEVINS, THE PEOPLE WHO

03:49:52  11  CAME IN BEFORE THE SUN CAME UP, AND THEY WENT HOME AFTER THE

03:49:56  12  SUN WEND DOWN.  THEY WORKED WEEKENDS AND HOLIDAYS AND MISSED

03:50:00  13  FAMILY EVENTS FOR FOUR YEARS.  THEY TOOK A RISK FOR A COMPANY

03:50:03  14  THAT HAD NEVER MADE A PHONE BEFORE, AND THEY CAME TO THE MARKET

03:50:06  15  WITH A PHONE THAT MR. WAGNER SAID REVOLUTIONIZED THE MARKET.

03:50:12  16        THAT'S WHAT HE SAID TO YOU JUST THIS MORNING.

03:50:15  17        NOW, YOU'RE NOT GOING TO HEAR ME ATTACK MR. WAGNER.  MUCH

03:50:18  18  OF WHAT MR. WAGNER HAD TO SAY WE AGREE WITH.  I AGREE WITH.  I

03:50:23  19  THINK YOU SAW THAT.

03:50:24  20        HE'S A FAIR, STRAIGHTFORWARD PERSON.

03:50:28  21        WE DISAGREE ON SOME THINGS FOR SURE.  BUT THEY'RE JUST

03:50:31  22  MATTERS OF JUDGMENT AND OPINION, AND I'M NOT GOING TO ATTACK

03:50:34  23  HIM PERSONALLY THE WAY MS. DAVIS WAS JUST ATTACKED.

03:50:38  24        HE TOLD YOU IT WAS A REVOLUTION, BUT YOU DON'T EVEN HAVE

03:50:42  25  TO TAKE HIS WORD FOR IT.  DO YOU REMEMBER WHAT THE REACTION OF

03:50:46  1    THE MARKETPLACE WAS?

03:50:47  2        THE IPHONE WAS THE INVENTION OF THE YEAR.  WHAT WAS THE

03:50:50  3    FOCUS, LADIES AND GENTLEMEN?  THE FOCUS WASN'T ON WHAT WAS

03:50:54  4    INSIDE.  THE FOCUS WAS ON THE DESIGN OF THE IPHONE.  IT'S WHAT

03:51:03  5    BROUGHT EVERYTHING TOGETHER, AND THAT'S WHAT SAMSUNG COPIED.

03:51:07  6        WHEN YOU LOOK AT THOSE DOCUMENTS THAT FOLLOW THE CRISIS OF

03:51:10  7    DESIGN THAT MR. MUELLER GAVE YOU THE EXHIBITS FOR, YOU'LL HAVE

03:51:14  8    THE ANSWER TO WHAT WAS GOING ON AT THE CRISIS OF DESIGN.

03:51:17  9        THE INTERESTING THING IS SAMSUNG DIDN'T BRING YOU A SINGLE

03:51:22  10   AUTHOR OF ANY OF THOSE DOCUMENTS TO TELL YOU WHAT WAS GOING ON.

03:51:27  11   THINK ABOUT THAT.  THERE'S, LIKE, 300 PAGES OF COPYING

03:51:32  12   DOCUMENTS AND NO ONE BROUGHT IN TO EXPLAIN THEM.

03:51:36  13       SO YOU'RE SITTING THERE AND YOU'RE MR. HOWARTH AND

03:51:40  14   MR. BLEVINS AND MR. JOSWIAK, YOU'VE COME TO THE MARKET, YOU

03:51:43  15   TOOK THIS RISK, THE MARKET REACTS, AND YOU HAVE THE INVENTION

03:51:46  16   OF THE YEAR.  YOU FEEL PRETTY GOOD.  AS MR. BLEVINS SAID, YOU

03:51:53  17   HAVE DONE PROBABLY THE BIGGEST THING IN YOUR LIFETIME.

03:51:56  18       AND THEN SOMEONE TAKES IT.  SOMEONE JUST TAKES IT AND

03:52:02  19   COMES TO MARKET WITH SOMETHING THAT LOOKS JUST THE SAME.

03:52:06  20       AND AS MR. BLEVINS TOLD YOU, THERE'S A RANGE OF REACTIONS,

03:52:10  21   BUT THEY'RE ALL NEGATIVE.  AND EVERY SINGLE ONE OF US WOULD

03:52:14  22   HAVE HAD THOSE SAME REACTIONS.  THE FULL RANGE OF HUMAN

03:52:18  23   REACTIONS.

03:52:19  24       THE MARKETPLACE HAS SAID IT'S A REVOLUTION.  THE PATENT

03:52:24  25   OFFICE HAS SAID IT'S AN INVENTION.  THE COMPETITORS HAVE SAID

03:52:29   1    IT'S A REVOLUTION.

03:52:31   2         AND THEN SOMEONE TAKES IT AND YOU HAVE ALL THESE NEGATIVE

03:52:36   3    REACTIONS.

03:52:37   4         BUT A FIRST JURY COMES AND SAYS, NO, YOU CAN'T DO THIS.

03:52:43   5    THESE PATENTS ARE VALID AND INFRINGED.

03:52:46   6         NOW SOMEONE HAS TO BE COMPENSATED FOR THAT.

03:52:49   7         AND WHEN IT COMES TIME FOR THAT TO OCCUR, DOES SAMSUNG

03:52:53   8    TAKE RESPONSIBILITY?  NO.  IT ATTACKS.  IT ATTACKS PEOPLE; IT

03:52:58   9    ATTACKS APPLE; IT ATTACKS WITNESSES, BUT IT DOESN'T TAKE

03:53:03   10   RESPONSIBILITY.

03:53:06   11        LET ME GIVE YOU A THIRD EXAMPLE.

03:53:09   12        THERE'S SOME SUGGESTION THAT WE DON'T THINK THAT ALL OF

03:53:11   13   THESE PHONES HAVE LOTS OF OTHER FEATURES.  THEY DO, AND

03:53:14   14   EVERYBODY COMPETES ON THESE FEATURES.

03:53:17   15        THE DESIGNS ARE NOT THE FEATURES.  THE DESIGNS ARE THE

03:53:20   16   DESIGNS AS HER HONOR HAS TOLD YOU.  THE DESIGNS ARE APPLIED TO

03:53:25   17   A THING, AND THAT'S THE ARTICLE OF MANUFACTURE.

03:53:30   18        THINK ABOUT THIS.  MANY OF YOU ARE FAMILIAR WITH THE

03:53:36   19   VOLKSWAGEN BEETLE, THE SHAPE, RIGHT, THE ICONIC SHAPE OF THE

03:53:38   20   BEETLE.

03:53:39   21        THAT DESIGN WAS APPLIED TO A CAR.  THE ARTICLE OF

03:53:44   22   MANUFACTURE FOR THAT DESIGN WAS THE CAR.

03:53:47   23        SAMSUNG WANTS YOU TO BELIEVE THAT IF THEY HAD BEEN IN THE

03:53:51   24   CAR BUSINESS, OR A FORD AT THE TIME HAD DECIDED TO JUST RIP OFF

03:53:55   25   THE BEETLE SHAPE AND COME UP WITH A CAR, THE ARTICLE OF

03:54:00  1    MANUFACTURE WOULD HAVE BEEN THE EXTERIOR SHELL OF THE CAR.

03:54:04  2         DOES THAT MAKE SENSE TO YOU?  NO.

03:54:08  3         THEY TOOK THE SHAPE TO SELL CARS, JUST THE SAME WAY THAT

03:54:13  4    SAMSUNG TOOK THE SHAPE TO SELL PHONES.

03:54:15  5         THE ANSWER TO THE QUESTIONS ON THE ARTICLE OF MANUFACTURE

03:54:19  6    ARE BOTH IN YOUR COMMON SENSE AND IN THE INSTRUCTIONS.  YOUR

03:54:23  7    COMMON SENSE WILL TELL YOU THAT APPLE DESIGNED PHONES, MADE

03:54:30  8    PHONES, MARKETED PHONES AND SOLD THEM.

03:54:32  9         YOUR COMMON SENSE WILL TELL YOU THAT SAMSUNG DESIGNED

03:54:35  10   PHONES, MADE PHONES, MARKETED PHONES, AND SOLD THEM.

03:54:39  11        THE 300 PAGES OF DOCUMENTS WILL SHOW YOU THAT SAMSUNG

03:54:44  12   COPIED THE PHONES, NOT GLASS FRONT FACE, NOT BEZELS, NOT

03:54:50  13   DISPLAY SCREENS, BUT PHONES.

03:54:53  14        AND IT WILL ALL FIT WITHIN THE FOUR FACTOR TEST.  AND I'M

03:54:56  15   JUST GOING TO SAY TWO THINGS TO RESPOND TO WHAT MR. QUINN SAID.

03:55:00  16   THE FIRST IS THEY ARE SUGGESTING TO YOU THAT FACTOR 1 IS

03:55:04  17   LIMITED TO WHAT'S CLAIMED.  HOW MANY TIMES DID YOU HEAR ABOUT

03:55:10  18   WHAT'S WITHIN THE SOLID LINES, WHAT'S WITHIN THE DOTTED LINES?

03:55:14  19        THAT'S NOT WHAT FACTOR 1 SAYS.  THE FACTOR IS THE SCOPE OF

03:55:23  20   THE DESIGN CLAIMED IN APPLE'S PATENT INCLUDING THE DRAWINGS AND

03:55:29  21   WRITTEN DESCRIPTION.

03:55:29  22        AND I WOULD ASK YOU TO GO BACK AND LOOK AT HER HONOR'S

03:55:32  23   PRELIMINARY INSTRUCTION TO YOU ON THE VERY FIRST DAY OF THE

03:55:35  24   TRIAL.  SHE EXPLAINED TO YOU WHAT THE DESIGN PATENT CLAIM WAS.

03:55:39  25   SHE EXPLAINED TO YOU WHAT THE DRAWINGS WERE.  SHE EXPLAINED TO

03:55:45   1       YOU WHAT THE SPECIFICATION WAS.

03:55:47   2           AND THE SPECIFICATION AND DRAWINGS ARE MORE, MORE THAN THE

03:55:52   3       CLAIM.

03:55:53   4           AND IT INCLUDES THE PORTION THAT SAYS, FOR INSTANCE, IN

03:55:56   5       THE D'677, THE ARTICLE OF MANUFACTURE CAN BE THE PHONE, AND IT

03:56:05   6       CAN BE.

03:56:06   7           MR. QUINN WAS ALSO WRONG ON FACTOR 4.  HE FORGOT THE

03:56:10   8       PORTION THAT SAYS WHETHER THE DESIGN IS EMBODIED IN A COMPONENT

03:56:15   9       THAT IS MANUFACTURED SEPARATELY.  THE DESIGN HAS TO BE

03:56:19   10      EMBODIED.

03:56:21   11          HER HONOR REPEATED THAT CONCEPT IN THE VERY NEXT SENTENCE,

03:56:25   12      A SENTENCE THAT WE REALLY WOULD ASK YOU TO FOCUS ON.  "IN

03:56:30   13      WEIGHING THESE FACTORS, YOUR OBJECTIVE SHOULD BE TO IDENTIFY

03:56:33   14      THE ARTICLES OF MANUFACTURE THAT CAN FAIRLY BE SAID TO EMBODY

03:56:37   15      SAMSUNG'S APPROPRIATION OF APPLE'S PATENTED DESIGN."

03:56:40   16          WHAT DO YOU THINK, WHAT'S THE THING THAT MOST FAIRLY

03:56:49   17      EMBODIES WHAT SAMSUNG TOOK 15 MILLION TIMES?  EVERY SINGLE

03:56:55   18      THING SOLD WAS A PHONE.  EVERY INFRINGING PRODUCT WAS A PHONE.

03:57:01   19          IT IS THE PHONE THAT MOST FAIRLY EMBODIES THE DESIGN.

03:57:05   20          BUT IF YOU HAVE ANY DOUBT, HERE IS THE ANSWER:  FOR TWO OF

03:57:09   21      THE THREE PATENTS, THE D'677 PATENT, THE GLASS FRONT FACE

03:57:13   22      MR. MUELLER GAVE YOU YESTERDAY, THE D'305, THAT DISPLAY SCREEN,

03:57:18   23      YOU CAN LOOK AT THOSE FOREVER AND YOU WON'T FIND THE PATENTED

03:57:22   24      DESIGN.  FOREVER.

03:57:24   25          HOW CAN THEY SATISFY THAT REQUIREMENT, THE ONE THE JUDGE

03:57:29  1      GAVE YOU THIS MORNING, HOW CAN THEY SATISFY IT IF IT DOESN'T

03:57:34  2      EVEN HAVE THE DESIGN?

03:57:36  3           THEY CAN'T.

03:57:37  4           NOW, ONCE YOU'VE IDENTIFIED THE ARTICLE OF MANUFACTURE,

03:57:40  5      WHICH IS THE PHONE, THE QUESTION IS, HOW DO YOU COMPUTE TOTAL

03:57:44  6      PROFITS?

03:57:44  7           AND LET ME RESPOND VERY QUICKLY TO WHAT MR. PRICE JUST

03:57:48  8      SAID.  HE WENT FROM -- IF I COULD HAVE INSTRUCTION ON COMPUTING

03:57:55  9      TOTAL PROFITS, MR. PRICE STARTED AT THE CORRECT SENTENCE, THE

03:58:02  10     SENTENCE THAT SAID "DIRECTLY ATTRIBUTABLE," AND "NEXUS."  AND

03:58:08  11     I'LL POINT IT OUT TO YOU RIGHT HERE (INDICATING).

03:58:10  12          IF YOU GO DOWN A LITTLE BIT FURTHER.  JUST A LITTLE BIT.

03:58:18  13     NEXT.

03:58:36  14          ALL RIGHT.  THE NEXT PAGE.  THIS PAGE.

03:58:41  15          AND NEXT PAGE.

03:58:44  16          ALL RIGHT.  CALCULATING TOTAL PROFITS, IF WE CAN HAVE THAT

03:58:47  17     BLOWN UP.

03:58:49  18          SAMSUNG -- THIS IS THE CALCULATION OF TOTAL PROFITS.

03:58:52  19     SAMSUNG HAS THE BURDEN OF PROVING DEDUCTIBLE EXPENSES, SO IF

03:58:57  20     YOU'RE IN DOUBT, IF YOU'RE IN DOUBT, THEY HAVEN'T PROVEN IT TO

03:59:03  21     YOU.

03:59:03  22          WHAT DO THEY HAVE TO PROVE?  DIRECTLY ATTRIBUTABLE TO THE

03:59:05  23     SALE OR MANUFACTURE OF INFRINGING PRODUCTS RESULTING IN THE

03:59:08  24     NEXUS.

03:59:09  25          IF YOU LISTENED CAREFULLY TO MR. PRICE'S ARGUMENT, IT WENT

03:59:13  1    FROM DIRECTLY ATTRIBUTABLE TO ALLOCATABLE AND HIS LAST PHRASE

03:59:16  2    WAS RELATED.

03:59:18  3         LADIES AND GENTLEMEN, THERE'S A REASON HER HONOR USED THE

03:59:21  4    WORD "DIRECTLY ATTRIBUTABLE."  IF SHE WANTED IT JUST TO BE

03:59:25  5    RELATED, THAT'S WHAT IT WOULD SAY.  IF SHE WANTED IT JUST TO BE

03:59:28  6    ATTRIBUTABLE, THAT'S WHAT IT WOULD SAY.

03:59:31  7         IT SAYS, "DIRECTLY ATTRIBUTABLE" FOR THIS REASON:  THIS,

03:59:35  8    AS MR. WAGNER SAID HONESTLY AND CORRECTLY, IS A SPECIAL REMEDY

03:59:40  9    FOR A CIRCUMSTANCE WHERE SOMEONE STEALS SOMEONE ELSE'S

03:59:45  10   INTELLECTUAL PROPERTY, AND THE STATUTE IS DESIGNED TO ENSURE

03:59:49  11   THAT THE PERSON WHO DOES THAT DOESN'T PROFIT FROM IT.

03:59:54  12        AND THAT'S WHY THE WORD IS "TOTAL PROFIT," AND THAT'S WHY

03:59:58  13   THE BURDEN IS ON THE DEFENDANT TO SHOW THEIR DEDUCTIBLE

04:00:01  14   EXPENSES.

04:00:03  15        THE GOAL OF THE STATUTE IS NOT TO PUNISH.  IT'S TO ENSURE

04:00:07  16   THAT THE PERSON WHO HAS DONE THE DEED THAT HAS BEEN FOUND TO BE

04:00:12  17   INFRINGEMENT DOESN'T PROFIT FROM IT.

04:00:15  18        ASK YOURSELF THIS:  IF SAMSUNG REALIZED $3.3 BILLION IN

04:00:20  19   REVENUE AND THEY'RE GOING TO RETAIN $3.2 BILLION OF REVENUE,

04:00:26  20   HAVE THEY PROFITED?  YOU BET THEY HAVE.

04:00:31  21        IF THEY'RE ALLOWED TO KEEP THAT MUCH MONEY, THERE WILL BE

04:00:35  22   A CELEBRATION IN THE HALLS OF SAMSUNG.  I CAN PROMISE YOU THAT.

04:00:41  23        AT THE END OF THE DAY, AS I SAID, THIS CASE IS ABOUT THIS

04:00:46  24   SPECIAL REMEDY TO DEAL WITH THIS SPECIAL CIRCUMSTANCE.  THE

04:00:50  25   STANDARD IS DIRECTLY ATTRIBUTABLE NEXUS.

04:00:54  1    AS I SAID TO YOU, MR. WAGNER WAS VERY HONEST TODAY.  AND

04:00:58  2    WHAT DID HE SAY FOR MARKETING, FOR RESEARCH AND DEVELOPMENT AND

04:01:04  3    GENERAL AND ADMINISTRATIVE?  HE COULD NOT SAY -- IN FACT, HE

04:01:08  4    SAID AFFIRMATIVELY, NOT DIRECTLY RELATED.

04:01:11  5    HE SAID SPECIFICALLY, AFFIRMATIVELY, NOT SPECIFICALLY

04:01:16  6    TIED.

04:01:16  7    SO HER HONOR'S INSTRUCTION -- IF I COULD HAVE IT BACK ON

04:01:20  8    THE SCREEN -- REQUIRES THAT THE DEDUCTIBLE EXPENSES BE DIRECTLY

04:01:28  9    ATTRIBUTABLE TO THE SALE OR MANUFACTURE OF THE INFRINGING

04:01:32  10   PRODUCTS, RESULTING IN A NEXUS TO THE INFRINGING PRODUCTS, NOT

04:01:36  11   TO SIMILAR PRODUCTS, NOT TO SOME OTHER COSTS.

04:01:39  12   THESE COSTS WERE FOR SURE INCURRED.

04:01:41  13   BUT THE SPECIAL REMEDY EXISTS, AND THE LAW IMPOSES THIS

04:01:45  14   SPECIAL REMEDY BECAUSE A MISAPPROPRIATION HAS OCCURRED.

04:01:55  15   NOW, AT THE END OF THE DAY, AS I SAID, THIS CASE IS ABOUT

04:01:58  16   ACCEPTING RESPONSIBILITY.  OUR JUDICIAL SYSTEM RELIES UPON US

04:02:03  17   TO EITHER ACCEPT RESPONSIBILITY, OR IF WE WON'T, TO HAVE THE

04:02:06  18   JUDICIAL SYSTEM REQUIRE IT.

04:02:08  19   WHEN SAMSUNG'S MARKET SHARE WAS DECLINING, IT COULD HAVE

04:02:13  20   ADOPTED ANY DESIGNS IT WANTED FOR ITS SMARTPHONES, AND IT DID.

04:02:18  21   BUT ITS MARKET SHARE KEPT DECLINING.

04:02:21  22   WHEN SAMSUNG DECIDED THE SOLUTION TO ITS PROBLEM, IN PART,

04:02:26  23   WAS TO COPY THE IPHONE, THAT WAS A DECISION FOR WHICH IT SHOULD

04:02:30  24   BE HELD RESPONSIBLE.

04:02:32  25   WHEN 1 MONTH LATER APPLE CAME TO SAMSUNG AND SAID, "YOU

04:02:36   1    HAVE COPIED OUR DESIGNS.  YOU HAVE COPIED OUR PHONE."  NOT OUR

04:02:44   2    GLASS FRONT FACE, NOT OUR BEZEL, NOT OUR DISPLAY SCREEN, OUR

04:02:47   3    PHONES.  "PLEASE STOP.  PLEASE STOP."

04:02:55   4         SAMSUNG HAD A DECISION TO MAKE.  IT COULD HAVE STOPPED.

04:02:58   5    IT COULD HAVE USED ANY OF THE MANY DESIGNS THAT THEY'VE BEEN

04:03:01   6    TALKING TO YOU ABOUT DURING THIS TRIAL.

04:03:03   7         BUT THEY DIDN'T.  THEY KEPT SELLING PHONES WITH APPLE'S

04:03:07   8    DESIGNS.

04:03:09   9         WHY?  BECAUSE IT WAS THE KEY TO REGAINING MARKET SHARE.

04:03:15  10    THEY MADE A DECISION.  THEY SHOULD BE HELD RESPONSIBLE FOR THAT

04:03:22  11    DECISION.

04:03:23  12         THE FIRST STEP IN THAT PROCESS OF HOLDING THEM RESPONSIBLE

04:03:26  13    WAS WHEN THE FIRST JURY DETERMINED THAT THE PATENTS WERE VALID,

04:03:30  14    NOT NARROW, NOT TRIVIAL, NOT MINOR LIKE MR. QUINN SAID TODAY,

04:03:36  15    BUT PATENTS THAT DEMONSTRATED AN INVENTION THAT HAD NOT

04:03:39  16    OCCURRED BEFORE IN THE UNITED STATES OF AMERICA.

04:03:43  17         THE SECOND STEP WAS WHEN THE SAME JURY FOUND THOSE PATENTS

04:03:47  18    WERE INFRINGED.  THEY WERE INFRINGED BECAUSE THE DESIGNS HAD

04:03:52  19    BEEN INCORPORATED INTO A PRODUCT, THE INFRINGING PRODUCTS, 15

04:04:00  20    MILLION OF THEM, OVER AND OVER AND OVER AGAIN.

04:04:03  21         AND NOW WE'RE AT THE LAST STEP.  WE'RE AT THE LAST STEP,

04:04:08  22    WHICH IS, ARE THEY GOING TO BE HELD FINANCIALLY RESPONSIBLE FOR

04:04:11  23    THEIR DECISIONS?  ARE THEY GOING TO BE HELD FINANCIALLY

04:04:15  24    RESPONSIBLE FOR THE DECISION TO COPY THE DESIGN?  AND ARE THEY

04:04:19  25    GOING TO BE HELD RESPONSIBLE FOR THE DECISION NOT TO STOP?

04:04:25  1        THE LAW SAYS THEY SHOULD BE.  THE FACTS SAY THEY SHOULD

04:04:29  2   BE.  THE LAW AND THE FACTS DON'T SAY THEY GET TO KEEP

04:04:33  3   $3.2 BILLION OF THE $3.3 BILLION THEY MADE.

04:04:39  4        THE LAW AND THE FACTS HAVE DETERMINED WHAT THE FAIR

04:04:44  5   COMPENSATION IS.  THERE IS NO GROUP OF PEOPLE THAT APPLE WOULD

04:04:48  6   RATHER HAVE MAKE THAT DECISION THAN YOU.

04:04:51  7        THANK YOU.

04:04:52  8         THE COURT:  IT'S 4:04.  WE STARTED AT 3:47, SO THAT'S

04:04:58  9    17 MINUTES.

04:04:59  10       OKAY.  YOU HAVE NOW HEARD ALL OF THE ARGUMENTS, AND YOU

04:05:01  11  ARE NOW GOING TO GET ALL OF THE EXHIBITS, AND YOU WILL ALSO

04:05:06  12  RECEIVE THIS REDWELL, WHICH INCLUDES A VERDICT FORM, TEN BLANK

04:05:15  13  JUROR NOTES, AS WELL AS FOUR COPIES OF THE EXHIBIT LIST SO THAT

04:05:18  14  AT LEAST HALF OF YOU CAN BE LOOKING THROUGH THE LIST IN CASE

04:05:21  15  THERE'S ANYTHING IN PARTICULAR YOU'D LIKE TO SEE, AND YOU'LL

04:05:23  16  GET ONE COPY OF ALL OF THE EXHIBITS.

04:05:26  17       YOU WILL ALSO HAVE A VERY CLEANED, WHAT IS THAT, LAPTOP

04:05:31  18  AND MONITOR SO THAT IF YOU WANT TO SEE ANY OF THE SPREADSHEETS,

04:05:34  19  THE VIDEOS, YOU CAN DO THAT.

04:05:37  20       SO I'M GOING TO GO AHEAD AND ASK MS. MASON TO ESCORT YOU

04:05:43  21  BACK.

04:05:43  22       NOW, THERE WILL BE A BAILIFF WHO IS SITTING OUTSIDE THE

04:05:46  23  JURY ROOM AND THAT PERSON WILL BE EFFECTIVELY GUARDING,

04:05:51  24  GUARDING YOU ALL TO MAKE SURE THAT NO ONE AT ALL SPEAKS WITH

04:05:55  25  YOU.

04:05:55    1          BUT IF YOU NEED ANYTHING, YOU CAN JUST KNOCK ON THE DOOR

04:05:58    2     AND PASS A NOTE TO THE GUARD AND THEN WE WILL GET THAT AND

04:06:01    3     RESPOND.

04:06:01    4          SO -- YOU CAN DO THAT AFTER.

04:06:05    5          NO, WHY DON'T YOU GO AHEAD AND DO THAT.  SORRY.

04:06:08    6          THE CLERK:  WILL THE BAILIFF PLEASE COME FORWARD TO

04:06:11    7     BE SWORN?

04:06:18    8          PLEASE RAISE YOUR RIGHT HAND.

04:06:20    9          (COURT SECURITY OFFICER SWORN.)

04:06:24   10          COURT SECURITY OFFICER:  I DO.

04:06:34   11          THE CLERK:  THANK YOU.

04:06:36   12          THE COURT:  OKAY.  THANK YOU.  IF YOU WOULD PLEASE

04:06:38   13     TAKE THE JURORS AND THE REDWELL TO THE JURY ROOM.

04:06:42   14          THANK YOU.

04:06:55   15          (JURY OUT AT 4:06 P.M.)

04:07:06   16          THE COURT:  OKAY.  THE RECORD SHOULD REFLECT THE

04:07:08   17     JURORS HAVE LEFT.

04:07:09   18          PLEASE TAKE A SEAT.

04:07:10   19          DO COUNSEL STIPULATE THAT THE BAILIFF MAY EXCUSE THE

04:07:13   20     JURORS AT RECESS, LUNCH BREAK, AND AT THE END OF THE DAY

04:07:16   21     WITHOUT COURT BEING IN SESSION?

04:07:17   22          MR. LEE:  WE DO, YOUR HONOR.

04:07:18   23          MR. QUINN:  WE DO, YOUR HONOR.

04:07:19   24          THE COURT:  ALL RIGHT.  THANK YOU.

04:07:21   25          DO YOU HAVE THE SET OF ADMITTED EXHIBITS THAT CAN GO IN

04:07:26  1    THE JURY ROOM AND ARE BOTH SIDES SATISFIED THAT THAT IS AN

04:07:32  2    ACCURATE SET OF THE ADMITTED EXHIBITS?

04:07:34  3              MR. LEE:  WE DO, AND WE ARE.

04:07:36  4              THE COURT:  OKAY.  AND WHERE ARE THEY?

04:07:43  5              MR. LEE:  RIGHT UP HERE (INDICATING).

04:07:44  6              THE COURT:  OKAY.  IS IT ALL ON ONE CART?

04:07:46  7              THE CLERK:  YES, YOUR HONOR.

04:07:47  8              THE COURT:  OKAY.

04:07:48  9              THE CLERK:  IT IS.

04:07:48  10             THE COURT:  ALL RIGHT.  LET ME HEAR FOR SAMSUNG, ARE

04:07:52  11    YOU ALSO SATISFIED THAT THOSE ARE THE ACTUAL ADMITTED EXHIBITS?

04:07:56  12             MS. MAROULIS:  YES, YOUR HONOR.

04:07:56  13             THE COURT:  ALL RIGHT.  THANK YOU.

04:07:58  14        AND I'LL ASK MS. MASON TO PLEASE TAKE THAT BACK.

04:08:01  15        NOW, I UNDERSTAND THAT YOU HAD A CLEAN MONITOR AND LAPTOP;

04:08:05  16    IS THAT CORRECT?  ALL RIGHT.  LET ME JUST MAKE SURE THAT BOTH

04:08:11  17    SIDES ARE SATISFIED THAT THAT IS CLEAN, THERE'S NO INFORMATION

04:08:14  18    ON THAT MACHINE THAT THE JURY SHOULD NOT SEE.

04:08:18  19        ARE YOU SATISFIED THAT'S A CLEAN MACHINE?

04:08:20  20             MS. FRAZIER:  YES, YOUR HONOR.

04:08:22  21             THE COURT:  AND SAME FOR SAMSUNG AS WELL.

04:08:25  22             MS. MAROULIS:  YES, YOUR HONOR.

04:08:25  23             THE COURT:  OKAY.  THANK YOU.  SO ALL OF THE ADMITTED

04:08:27  24    EXHIBITS AND THE CLEAN LAPTOP AND MONITOR WILL GO INTO THE JURY

04:08:31  25    ROOM.

1327

04:08:35   1        NOW, IN THE PREVIOUS TRIALS, WE HAVE JUST FILED AT 4:30 A

04:08:41   2   NOTICE ON THE DOCKET SAYING THE JURY HAS ADJOURNED FOR THE DAY.

04:08:45   3   WE'LL DO THE SAME THING.

04:08:47   4        DOES MS. MASON HAVE ALL OF YOUR BEST CONTACT INFORMATION?

04:08:50   5   IF YOU CAN JUST GIVE HER PERHAPS ONE OR TWO PEOPLE ON EACH SIDE

04:08:54   6   AND THEN YOU CAN HAVE YOUR OWN PHONE FREE OR HOWEVER YOU'D LIKE

04:08:57   7   TO --

04:08:58   8        MR. LEE:  OKAY.

04:08:58   9        THE COURT:  AND HOW QUICKLY CAN YOU COME TO THE

04:09:01   10   COURTHOUSE IF THERE IS A NOTE?

04:09:04   11        MS. MAROULIS:  JUST A FEW MINUTES, YOUR HONOR.  WE'LL

04:09:06   12   BE HERE.

04:09:07   13        MR. LEE:  FIVE MINUTES.

04:09:07   14        THE COURT:  OKAY.  ALL RIGHT.  GREAT.

04:09:09   15        AND WHENEVER WE GET A NOTE, WE'LL ALSO FILE THAT ON THE

04:09:12   16   DOCKET SO YOUR TEAMS CAN ACCESS THAT ELECTRONICALLY AND NOTIFY

04:09:16   17   YOU AS WELL TO PLEASE COME IN.

04:09:19   18        IS THERE ANYTHING MORE WE NEED TO DO AS FAR AS THE JURY IS

04:09:23   19   CONCERNED?  OTHERWISE WE SHOULD DO OUR RULE 50 ARGUMENTS.

04:09:29   20   ANYTHING?  WE'LL TAKE A BREAK BEFORE WE DO OUR RULE 50

04:09:34   21   ARGUMENTS, BUT IS THERE ANYTHING ELSE?

04:09:35   22        MR. LEE:  NOT FOR APPLE, YOUR HONOR.

04:09:37   23        MS. MAROULIS:  NOT FOR SAMSUNG, YOUR HONOR.

04:09:39   24        THE COURT:  OKAY.  THEN LET'S TAKE A BREAK.

04:09:42   25        LET'S TAKE A FIVE MINUTE BREAK.  THANK YOU.

```
04:09:45   1              (RECESS FROM 4:09 P.M. UNTIL 4:15 P.M.)

04:15:07   2                  THE COURT:  ALL RIGHT.  COULD WE GET STARTED, PLEASE?

04:15:10   3      THANK YOU.

04:15:11   4              THANK YOU VERY MUCH.

04:15:16   5              ALL RIGHT.  THE PARTIES HAVE RESERVED -- MY REALTIME IS

04:15:23   6      OFF, BUT I THINK THAT'S OKAY.

04:15:25   7              THE PARTIES HAVE RESERVED THEIR RULE 50 MOTIONS, WHICH

04:15:29   8      WERE TIME REASSERTED AFTER THE CLOSE OF APPLE'S CASE AND AFTER

04:15:34   9      THE CLOSE OF SAMSUNG'S CASE.

04:15:37   10             WE HAVE POSTPONED ACTUAL ARGUMENT UNTIL AFTER THE JURY

04:15:43   11     DELIBERATED IN CONSIDERATION OF THE JURY'S TIME, BUT THOSE

04:15:47   12     RIGHTS HAVE BEEN APPROPRIATELY AND TIMELY ASSERTED.

04:15:50   13             SO WITH THAT, I UNDERSTAND THERE ARE CROSS MOTIONS, SO LET

04:15:53   14     ME -- ALL RIGHT.  LET'S GO AHEAD.  THERE ARE CROSS-MOTIONS.

04:16:25   15                  MS. SULLIVAN:  WHO WOULD YOU LIKE TO HEAR FIRST, YOUR

04:16:28   16     HONOR?

04:16:28   17                  THE COURT:  WHOEVER WOULD LIKE TO SPEAK FIRST IS

04:16:30   18     FINE.

04:16:32   19             ALL RIGHT.  GO AHEAD.

04:16:34   20                  MR. SELWYN:  GOOD AFTERNOON, YOUR HONOR.  MARK SELWYN

04:16:37   21     FOR APPLE.

04:16:38   22             YOUR HONOR, PURSUANT TO RULE 50(A), APPLE MOVES FOR

04:16:42   23     JUDGMENT AS A MATTER OF LAW THAT THE ARTICLE OF MANUFACTURE

04:16:45   24     UNDER 35 U.S.C. 289 IS THE ENTIRE PHONE FOR EACH OF THE SAMSUNG

04:16:49   25     PRODUCTS FOUND TO INFRINGE THE D'677, D'087, AND D'305 PATENTS.
```

04:16:57  1        APPLE HAS ESTABLISHED AS A MATTER OF LAW THAT SAMSUNG

04:17:00  2   APPLIED THOSE THREE PATENTED DESIGNS TO THE INFRINGING PRODUCTS

04:17:03  3   AS A WHOLE.

04:17:04  4        THE EVIDENCE, INCLUDING THE TESTIMONY OF MR. BALL AND

04:17:08  5   DR. KARE, ESTABLISHES THAT THE ARTICLE OF MANUFACTURE ARE THE

04:17:11  6   ENTIRE PHONES IN VIEW OF THE COURT'S FOUR FACTORS.

04:17:15  7        INDEED, EVEN MR. LUCENTE, IN RESPONSE TO MR. QUINN'S

04:17:19  8   REDIRECT QUESTION, SAID IT WAS THE SAMSUNG PHONES WHERE DESIGNS

04:17:24  9   WERE APPLIED.

04:17:26 10        WITH RESPECT TO FACTOR 1, THE SCOPE OF THE DESIGN CLAIMED

04:17:29 11   IN APPLE'S PATENTS, INCLUDING THE DRAWING AND WRITTEN

04:17:32 12   DESCRIPTION, DEMONSTRATED THAT THE CLAIMED DESIGN MAY BE, IN

04:17:35 13   THIS CASE ACTUALLY WERE, APPLIED TO THE ENTIRE PHONES.

04:17:38 14        THE D'677 AND D'087 PATENTS DESCRIBE AND SHOW THE CLAIMED

04:17:43 15   DESIGNS BEING APPLIED TO AN ELECTRONIC DEVICE, SUCH AS A PHONE.

04:17:49 16        THE D'305 DESCRIBES AND SHOWS THE CLAIMED DESIGN BEING

04:17:55 17   APPLIED TO A GRAPHICAL USER INTERFACE FOR A DISPLAY SCREEN

04:17:58 18   WHICH IS APPLIED TO AN ELECTRONIC DEVICE SUCH AS A PHONE.

04:18:00 19        WITH RESPECT TO FACTOR 2, THE CLAIMED DESIGNS ARE VERY

04:18:03 20   PROMINENT WITHIN THE PHONES AS A WHOLE.  THEY ALL RELATE TO THE

04:18:08 21   FRONT FACE OF THE PHONES, WHICH IS THE FEATURE PORTION OF THE

04:18:10 22   PHONE AND PROVIDES THE PRIMARY INTERACTION WITH THE USER AS A

04:18:14 23   WHOLE.

04:18:14 24        THE RELATIVE PROMINENCE OF THE CLAIMED DESIGNS CAN BE SEEN

04:18:18 25   FROM A VISUAL INSPECTION OF THE INFRINGING PHONES, AS WELL AS

04:18:21  1    SAMSUNG'S ADVERTISING AND PRODUCT PACKAGING, INCLUDING, FOR

04:18:24  2    EXAMPLE, PX 4055.

04:18:26  3         SAMSUNG'S COPYING OF THE CLAIMED DESIGNS AS SHOWN, FOR

04:18:30  4    EXAMPLE, IN PX 40, PX 44, AND PX 52, DEMONSTRATES THAT SAMSUNG

04:18:37  5    ITSELF VIEWED THE DESIGNS AS IMPORTANT AND VERY PROMINENT

04:18:39  6    ASPECTS OF THE PHONES.

04:18:41  7         AND THIRD PARTY COMMENTARY, SUCH AS PX 174 AND PX 6, ON

04:18:45  8    THE STRIKING SIMILARITY OF SAMSUNG'S INFRINGING PHONES,

04:18:49  9    INCLUDING THE FEATURES OF THE CLAIMED DESIGNS TO APPLE'S IPHONE

04:18:53  10   WHICH PRACTICES ALL THREE DESIGN PATENTS, DEMONSTRATES THAT

04:18:56  11   OTHERS ALSO VIEWED THE CLAIMED DESIGNS AS IMPORTANT AND VERY

04:19:00  12   PROMINENT ASPECTS OF THE INFRINGING PHONES.

04:19:03  13        WITH RESPECT TO FACTOR 3, THE CLAIMED DESIGNS ARE NOT

04:19:06  14   CONCEPTUALLY DISTINCT FROM THE INFRINGING PRODUCTS AS A WHOLE.

04:19:09  15   THE THREE DESIGN PATENTS THAT THE DESIGNS ARE FULLY INTEGRATED

04:19:12  16   INTO THE PHONES AS A WHOLE AND EACH CONTRIBUTE TO CREATING AN

04:19:16  17   INTUITIVE USER EXPERIENCE FOR THE PHONE AS A WHOLE.

04:19:19  18        MOREOVER, THERE IS A CONCEPTUAL SIMILARITY IN THE DESIGNS

04:19:22  19   THROUGHOUT THE PHONES, FROM THE ROUNDED CORNERS OF THE ICONS TO

04:19:25  20   THE ROUNDED CORNERS OF THE PHONES AS A WHOLE.

04:19:28  21        AND LAST, WITH RESPECT TO FACTOR 4, THE PHYSICAL

04:19:32  22   RELATIONSHIP BETWEEN THE PATENTED DESIGN AND THE REST OF THE

04:19:34  23   PRODUCT, THAT DEMONSTRATES THAT EACH CLAIMED DESIGN WAS APPLIED

04:19:38  24   TO THE PHONE AS A WHOLE.  EACH CLAIMED DESIGN PERTAINS TO THE

04:19:41  25   PHONE AS A WHOLE AND NOT A SEPARATE COMPONENT THAT A USER OR

1331

04:19:44   1    SELLER COULD PHYSICALLY SEPARATE FROM THE PRODUCT AS A WHOLE.

04:19:48   2    SAMSUNG SOLD EACH OF THE INFRINGING PRODUCTS AS A WHOLE AND

04:19:51   3    USERS USED EACH OF THE INFRINGING PRODUCTS AS A WHOLE.

04:19:55   4         SAMSUNG DID NOT INSTRUCT THE CUSTOMERS TO TAKE APART THE

04:19:58   5    PHONES.  TO THE CONTRARY, AS MR. BALL EXPLAINED, SEPARATING

04:20:04   6    COMPONENTS FROM THE PHONE WOULD BREAK THE PHONE AND WOULD

04:20:06   7    VIOLATE THE WARRANTY.

04:20:07   8         EACH CLAIMED DESIGN IS A FULLY ASSEMBLED PRODUCT MADE BY

04:20:12   9    SAMSUNG, NOT IN A COMPONENT MANUFACTURED SEPARATELY FROM THE

04:20:15   10   REST OF THE PRODUCT.

04:20:17   11        SAMSUNG SOLD THE CLAIMED DESIGNS EMBODIED IN THE PHONES AS

04:20:20   12   A WHOLE, NOT AS SEPARATE COMPONENTS.  MR. DONGWOOK KIM

04:20:24   13   TESTIFIED YESTERDAY, FOR EXAMPLE, THAT SAMSUNG HAS ACTUALLY

04:20:27   14   BANNED SELLING THE COMPONENTS TO CONSUMERS SEPARATELY FROM THE

04:20:31   15   PHONES.

04:20:32   16        AND TO THE EXTENT SAMSUNG SOLD COMPONENTS AS REPLACEMENT

04:20:36   17   PARTS, THAT WAS FOR THE PURPOSE OF MAKING THE PHONES WHOLE

04:20:39   18   AGAIN.

04:20:41   19        SAMSUNG'S OWN WITNESSES, SUCH A JINSOO KIM, ALSO ADMITTED

04:20:45   20   THAT IT APPLIES THE DESIGNS TO PHONES, NOT TO COMPONENTS.

04:20:49   21        IN ADDITION, THE EVIDENCE ESTABLISHES THAT THE IPHONE

04:20:51   22   EMBODIES THE CLAIMED DESIGNS AND APPLYING THE SAME FOUR FACTORS

04:20:57   23   REGARDING THE ARTICLE OF MANUFACTURE, THE EVIDENCE DEMONSTRATES

04:21:00   24   THAT THE CLAIMED PATENT DESIGNS WERE APPLIED TO THE IPHONE AS A

04:21:03   25   WHOLE.

04:21:03  1          ACCORDINGLY, THE INFRINGING PHONES AS A WHOLE ARE THE

04:21:06  2    ARTICLES OF MANUFACTURE THAT MOST FAIRLY CAN BE SAID TO EMBODY

04:21:10  3    SAMSUNG'S APPROPRIATION OF THE PATENTED DESIGNS.  NO REASONABLE

04:21:13  4    JURY COULD FIND THAT THE ARTICLES OF MANUFACTURE ARE ANYTHING

04:21:16  5    OTHER THAN THE PHONES IN THEIR ENTIRETY, AND APPLE'S ENTITLED

04:21:19  6    TO JUDGMENT AS A MATTER OF LAW ON THAT ISSUE.

04:21:22  7          SECOND, YOUR HONOR, APPLE MOVES FOR JUDGMENT AS A MATTER

04:21:25  8    OF LAW THAT THE ARTICLES OF MANUFACTURE UNDER 35 U.S.C. 289 ARE

04:21:30  9    NOT THE COMPONENTS PROPOSED BY SAMSUNG, SPECIFICALLY, WHAT IT

04:21:33  10   CALLS THE GLASS FRONT FACE FOR THE PRODUCTS FOUND TO INFRINGE

04:21:36  11   THE D'677 PATENT, WHAT IT CALLS THE GLASS FRONT FACE AND

04:21:40  12   SURROUNDING BEZEL FOR THE PRODUCTS THAT INFRINGE THE D'087

04:21:44  13   PATENT, AND WHAT IT CALLS THE DISPLAY SCREEN FOR THE PRODUCTS

04:21:47  14   FOUND TO INFRINGE THE D'305 PATENT.

04:21:51  15         APPLE HAS ESTABLISHED AS A MATTER OF LAW THAT SAMSUNG DID

04:21:53  16   NOT APPLY THE PATENTED DESIGN TO WHAT SAMSUNG HAS PROPOSED TO

04:21:57  17   BE THE ARTICLES OF MANUFACTURE.

04:21:59  18         AND HERE, YOUR HONOR, SAMSUNG GOT TO CHOOSE WHAT IT

04:22:03  19   CONTENDED TO BE THE ARTICLES OF MANUFACTURE, A STRATEGIC

04:22:08  20   CHOICE, AND THERE IS NO QUESTION, INDEED, MR. QUINN ADMITTED IN

04:22:11  21   HIS CLOSING, THAT WHAT SAMSUNG CHOSE AS THE ARTICLES OF

04:22:14  22   MANUFACTURE, WITHOUT MORE, DO NOT EMBODY THE PATENTED DESIGN OF

04:22:18  23   THE D'677 AND THE D'305.

04:22:22  24         WITH RESPECT TO THE D'677, THE EVIDENCE DEMONSTRATES, AS A

04:22:27  25   MATTER OF LAW, THAT SAMSUNG DID NOT APPLY THE CLAIMED DESIGN TO

04:22:30  1    THE D'677 TO JUST THE GLOSS FRONT FACE OF THE INFRINGING

04:22:35  2    PHONES.

04:22:36  3         THIS DESIGN CLAIMED IN THE D'677 PATENT REQUIRES THE FRONT

04:22:40  4    SURFACE OF THE DEVICE TO BE BLACK, AS THE FINAL JURY

04:22:44  5    INSTRUCTION 26 EXPLAINS TO THE JURY.

04:22:47  6         ANY ARTICLE OF MANUFACTURE EMBODYING THE D'677 DESIGN

04:22:51  7    MUST, THEREFORE, HAVE A BLACK SURFACE.

04:22:54  8         BUT IT WAS UNDISPUTED AT TRIAL THAT THE GLASS WINDOW

04:22:58  9    COMPONENTS ALLEGED BY SAMSUNG TO BE THE ARTICLES OF MANUFACTURE

04:23:02  10   FOR THE PHONES FOUND TO INFRINGE THE D'677 PATENT ARE NOT

04:23:06  11   BLACK.  THEY ARE CLEAR.  YOU CAN SEE THROUGH THEM.

04:23:09  12        MR. LUCENTE TESTIFIED YESTERDAY THAT THE GLASS FRONT FACE,

04:23:13  13   BY ITSELF, WAS CLEAR, WHICH IS SELF-EVIDENT SIMPLY BY A VISUAL

04:23:20  14   INSPECTION OF THE COMPONENT ITSELF.

04:23:21  15        AND HE SAID IT ONLY BECOMES BLACK WHEN YOU PUT IT AGAINST

04:23:25  16   A DISPLAY SCREEN OR SOMETHING ELSE, AND HE GAVE THE EXAMPLE OF

04:23:27  17   A DARK SURFACE SUCH AS HIS SUIT.

04:23:31  18        BECAUSE SAMSUNG'S ALLEGED ARTICLES OF MANUFACTURE FAIL TO

04:23:34  19   EMBODY THE D'677 CLAIMED DESIGN, NO REASONABLE JURY COULD FIND

04:23:39  20   THAT THERE ARE ARTICLES TO WHICH THE D'677 WAS APPLIED.

04:23:44  21        IF THE COURT GRANTS JMOL THAT THE COMPONENT IDENTIFIED BY

04:23:48  22   SAMSUNG IS NOT THE ARTICLE OF MANUFACTURE FOR THE PHONES FOUND

04:23:52  23   TO INFRINGE THE D'670 PATENT, THEN IT SHOULD ALSO GRANT JMOL

04:23:57  24   THAT THE ENTIRE PHONE IS THE ARTICLE OF MANUFACTURE FOR THOSE

04:24:00  25   PRODUCTS BECAUSE THERE WAS NO OTHER THEORY OR EVIDENCE

04:24:03  1        PRESENTED.

04:24:04  2             THE SAME, YOUR HONOR, IS TRUE WITH RESPECT TO THE D'305.

04:24:08  3        THE EVIDENCE DEMONSTRATES AS A MATTER OF LAW THAT SAMSUNG DID

04:24:11  4        NOT APPLY THE CLAIMED DESIGN OF THE D'305 PATENT TO JUST THE

04:24:16  5        DISPLAY SCREEN OF THE INFRINGING PHONES.

04:24:19  6             THE D'305 CLAIMS THE ORNAMENTAL DESIGN FOR A GRAPHICAL

04:24:23  7        USER INTERFACE FOR A DISPLAY SCREEN WHERE THE ORNAMENTAL DESIGN

04:24:26  8        INCLUDES AN ARRAY OF COLORFUL ICONS AS SHOWN IN FIGURES 1 AND

04:24:31  9        2.

04:24:32  10            AND SAMSUNG CONTENDS THAT THE DISPLAY SCREEN IN ISOLATION

04:24:36  11       FROM THE REST OF THE PHONE IS AN ARTICLE OF MANUFACTURE TO

04:24:39  12       WHICH THE D'305 APPLIED.

04:24:42  13            BUT THAT CAN'T BE TRUE.  THE UNDISPUTED EVIDENCE

04:24:45  14       DEMONSTRATES THAT NEITHER THE GRAPHICAL USER INTERFACE FOR THE

04:24:49  15       ARRAY OF COLORFUL ICONS CAN BE SEEN ON A DISPLAY SCREEN WHEN IT

04:24:54  16       IS SEPARATED FROM THE PHONE, AND THAT, OF COURSE, IS BECAUSE

04:24:57  17       THE DISPLAY SCREEN WOULD REQUIRE OTHER COMPONENTS, THE BATTERY,

04:25:00  18       WIRE, CHIPS, SOFTWARE, AND SO FORTH.

04:25:03  19            AND YOUR HONOR WILL RECALL MR. LUCENTE'S TESTIMONY FROM

04:25:07  20       YESTERDAY.

04:25:08  21            "QUESTION:  AND WE CAN AGREE ON THIS:  THE JURY COULD LOOK

04:25:10  22       AT THAT FOR WEEKS AND THE GRAPHICAL USER INTERFACE WILL NEVER

04:25:14  23       APPEAR ON THAT DISPLAY SCREEN AS YOU HOLD IT IN YOUR HAND?

04:25:18  24            "ANSWER:  WELL, I THINK WE CAN AGREE ON THAT."

04:25:21  25            SO, SO INTENT WAS SAMSUNG AT TRIVIALIZING THE CLAIMED

04:25:26   1    DESIGNS THAT IT SELECTED AS THE ARTICLES OF MANUFACTURE,

04:25:31   2    COMPONENTS THAT DON'T EMBODY THE PATENTED DESIGNS.

04:25:34   3         WITH RESPECT TO THE D'305, BECAUSE THE DISPLAY SCREEN DOES

04:25:37   4    NOT AND CANNOT DISPLAY THE CLAIMED DESIGN OF THE D'305, NO

04:25:42   5    REASONABLE JURY COULD FIND THAT THE DISPLAY SCREEN ALONE IS THE

04:25:47   6    ARTICLE OF MANUFACTURE TO WHICH THE DESIGN WAS APPLIED.

04:25:50   7         AND LIKE WITH THE D'677, SHOULD THE COURT GRANT JMOL TO

04:25:55   8    THE COMPONENT IDENTIFIED BY SAMSUNG IS NOT THE ARTICLE OF

04:25:59   9    MANUFACTURE FOR THE PHONES FOUND TO INFRINGE THE D'305 PATENT,

04:26:04   10   THEN IT SHOULD ALSO GRANT JMOL THAT THE ENTIRE PHONE IS THE

04:26:07   11   ARTICLE OF MANUFACTURE FOR THOSE PRODUCTS, AGAIN, BECAUSE NO

04:26:10   12   THEORY OR OTHER EVIDENCE WAS PRESENTED.

04:26:13   13        AND LAST WITH RESPECT TO THE D'087, THE EVIDENCE

04:26:16   14   DEMONSTRATES AS A MATTER OF LAW THAT SAMSUNG DID NOT APPLY THE

04:26:18   15   CLAIMED DESIGN OF THE D'087 TO JUST THE GLASS FRONT FACE PLUS

04:26:24   16   THE SURROUNDING BEZEL OF THE INFRINGING PHONES.

04:26:27   17        THE D'087 CLAIMS THE FRONT FACE AND THE BEZEL ENCIRCLING

04:26:32   18   THE FRONT FACE OF THE PATENTED DESIGN THAT EXTENDED TO THE

04:26:34   19   FRONT OF THE PHONE, TO ITS SIDES, A FLAT CONTOUR OF THE FONT

04:26:38   20   FACE.

04:26:39   21        SAMSUNG CONTENDS THAT THE ARTICLE OF MANUFACTURE FOR THE

04:26:42   22   PHONES FOUND TO INFRINGE FOR D'087 IS THE GLASS FRONT FACE AND

04:26:47   23   SURROUNDING BEZEL, BUT NO REASONABLE JURY COULD CONCLUDE THAT

04:26:50   24   BECAUSE, AS I SAID BEFORE, THE EVIDENCE SHOWED UNDER THE

04:26:54   25   COURT'S FOUR FACTOR TEST THAT THE CLAIMED DESIGN WAS APPLIED TO

1  INFRINGING DESIGNS AS A WHOLE.

2        AND HERE, TOO, IF THE COURT GRANTS JMOL THAT THE COMPONENT

3  IDENTIFIED BY SAMSUNG IS NOT THE ARTICLE OF MANUFACTURE FOR THE

4  PHONES FOUND TO INFRINGE THE D'087, THEN IT SHOULD GRANT JMOL

5  THAT THE ENTIRE PHONE IS THE ARTICLE OF MANUFACTURE FOR THOSE

6  PRODUCTS BECAUSE NO OTHER THEORY OR EVIDENCE WAS PRESENTED.

7        LASTLY, YOUR HONOR, APPLE MOVES FOR JMOL THAT IT'S

8  ENTITLED TO $1,067,128,207 OF DAMAGES UNDER 35 U.S.C. 289.

9  SECTION 289 ENTITLES A DESIGN PATENT OWNER TO THE INFRINGER'S

10  TOTAL PROFIT FOR THE ARTICLE OF MANUFACTURE TO WHICH THE

11  INFRINGER APPLIED THE PATENTED DESIGN.

12        AND APPLE HAS ESTABLISHED THAT THE SAMSUNG INFRINGING

13  PHONES IN THEIR ENTIRETY ARE THE ARTICLE OF MANUFACTURE TO

14  WHICH SAMSUNG APPLIED THE PATENTED DESIGN.  APPLE IS,

15  THEREFORE, ENTITLED TO SAMSUNG'S TOTAL PROFITS ON THE

16  INFRINGING PHONES AS A MATTER OF LAW.

17        APPLE HAS FURTHER PROVED AS A MATTER OF LAW THAT SAMSUNG'S

18  TOTAL PROFIT FROM THE PHONES FOUND TO INFRINGE THE THREE DESIGN

19  PATENTS IN SUIT IS $1,067,128,207.

20        THE EVIDENCE DEMONSTRATED THAT SAMSUNG GENERATED

21  $3.31 BILLION IN REVENUE FROM THOSE PRODUCTS.  SAMSUNG'S

22  DIRECTLY ATTRIBUTABLE EXPENSES FOR THOSE INFRINGES PHONES WAS

23  $2.264 BILLION.  THOSE ARE THE COST OF GOODS SOLD.

24        AND SAMSUNG FAILED TO MEET WHAT WAS ITS BURDEN TO PROVE

25  THAT ANY OTHER DEDUCTIBLE EXPENSES, SUCH AS RESEARCH AND

DEVELOPMENT, MARKETING, AND GENERAL AND ADMINISTRATIVE EXPENSES

WERE, TO USE THE WORDS OF THE JURY INSTRUCTIONS, DIRECTLY

ATTRIBUTABLE TO THE INFRINGING PHONES.

SAMSUNG PROVIDED NO DOCUMENTS, ZERO, SHOWING THAT ANY

EXPENSES BEYOND COSTS OF GOODS SOLD WERE DIRECTLY ATTRIBUTABLE

TO THE INFRINGING PHONES.

AND ON THIS POINT, AGAIN, THERE IS NO DISPUTE.  SAMSUNG'S

EXPERT, MR. WAGNER, CONCEDED IT TO BE TRUE.  HE CONCEDED IT

THIS MORNING AT PAGES 1156 OF THE TRANSCRIPT, THAT HE COULD NOT

SHOW ANY R&D EXPENSES DIRECTLY ATTRIBUTABLE.  HE CONCEDED AT

PAGES 1148 AND 1149 THAT HE COULD SHOW NO G&A EXPENSES DIRECTLY

ATTRIBUTABLE.  AND HE CONCEDED AT PAGE 1157 THAT HE COULD FIND

NO MARKETING EXPENSES DIRECTLY ATTRIBUTABLE.

SAMSUNG'S TOTAL PROFIT ON THESE INFRINGING PHONES IS,

THEREFORE, $1.067 BILLION.

AND NO REASONABLE JURY COULD FIND THAT SAMSUNG'S TOTAL

PROFIT ON THE PHONES FOUND TO INFRINGE THE THREE DESIGN PATENTS

IS ANYTHING BUT THAT FIGURE.

THANK YOU.

THE COURT:  LET ME ASK YOU A QUESTION.  YOUR POINT

ABOUT THE GLASS FRONT FACE NOT BEING BLACK AND NOT BEING ABLE

TO SAY -- TO SEE THE ARRAY OF ICONS FOR THE '305, ARE YOU

GETTING FROM FACTOR 4 THE LANGUAGE WHERE THE DESIGN IS EMBODIED

IN A COMPONENT THAT IS MANUFACTURED SEPARATELY FROM THE REST OF

THE PRODUCT, THAT THAT IS A REQUIREMENT THAT THE ARTICLE OF

04:30:13  1       MANUFACTURE ACTUALLY EMBODY THE PATENTED DESIGN?

04:30:19  2               MR. SELWYN:  IT COMES FROM SEVERAL PLACES.  IT COMES

04:30:21  3       FROM FACTOR 4, WHICH SPECIFICALLY REQUIRES THE DESIGN TO BE

04:30:25  4       EMBODIED IN A COMPONENT THAT IS MANUFACTURED SEPARATELY.

04:30:27  5               THE COURT:  UM-HUM.  BUT CAN I ASK YOU SOMETHING?

04:30:32  6       ISN'T THAT JUST A FACTOR THAT CAN BE CONSIDERED?  I DON'T KNOW

04:30:34  7       IF IT'S ACTUALLY A REQUIREMENT.  AREN'T THESE FOUR FACTORS JUST

04:30:38  8       FACTORS YOU CAN CONSIDER?  THERE'S NOT ONE THAT'S NECESSARILY

04:30:41  9       DISPOSITIVE OVER THE OTHER.  YOU HAVE TO DO A CASE-BY-CASE

04:30:44  10      ANALYSIS.  YOU JUST NEED TO CONSIDER THE FACTORS.  I DON'T KNOW

04:30:47  11      IF IT'S A REQUIREMENT.

04:30:49  12               MR. SELWYN:  THAT IS TRUE.  BUT THEN THE JURY

04:30:51  13      INSTRUCTIONS SAY, CORRECTLY, IN WEIGHING THESE FACTORS, YOUR

04:30:54  14      OBJECTIVE SHOULD BE TO IDENTIFY THE ARTICLES OF MANUFACTURE

04:30:58  15      THAT MOST FAIRLY CAN BE SAID TO EMBODY SAMSUNG'S APPROPRIATION

04:31:03  16      OF APPLE'S PATENTED DESIGN.

04:31:05  17          THE GOAL OF THE FOUR FACTOR TEST IS TO DO JUST THAT.  THE

04:31:09  18      ARTICLE OF MANUFACTURE MUST EMBODY APPLE'S PATENTED DESIGN.

04:31:13  19               THE COURT:  SO I WAS WONDERING IF PERHAPS ANOTHER

04:31:16  20      PART OF THE INSTRUCTION IS -- OR ACTUALLY, IT'S REALLY FROM THE

04:31:22  21      STATUTE OF 289.  IT'S THE ARTICLES OF MANUFACTURE TO WHICH THE

04:31:25  22      PATENTED DESIGN IS APPLIED.

04:31:27  23               MR. SELWYN:  CORRECT.

04:31:28  24               THE COURT:  DOES APPLIED MEAN IT HAS TO EMBODY THE

04:31:31  25      INVENTION?

04:31:32  1          MR. SELWYN:  IT DOES, AND THAT'S THE WAY THE JURY

04:31:34  2     INSTRUCTIONS, IN FACT, BEGIN TO IDENTIFY THE ARTICLES OF

04:31:37  3     MANUFACTURE TO WHICH SAMSUNG APPLIED SAMSUNG'S PATENTED

04:31:41  4     DESIGNS.

04:31:42  5          THOSE ARTICLES OF MANUFACTURE MUST EMBODY THE PATENTED

04:31:45  6     DESIGNS.

04:31:46  7          YOU APPLY THE FOUR FACTORS COLLECTIVELY IN WEIGHING THAT

04:31:50  8     IN DETERMINING WHICH ARTICLES OF MANUFACTURE MOST FAIRLY CAN BE

04:31:54  9     SAID TO EMBODY SAMSUNG'S APPROPRIATION OF APPLE'S PATENTED

04:31:57  10    DESIGN.

04:31:59  11         SO IF WHAT IS PRESENTED AS THE ARTICLE OF MANUFACTURE IS

04:32:03  12    NOT SOMETHING THAT ACTUALLY EMBODIES THE PATENTED DESIGN, IT

04:32:07  13    CAN'T BE THE ARTICLE OF MANUFACTURE, AND THAT'S EXACTLY WHAT

04:32:10  14    HAPPENED IN THIS CASE.  WHERE SAMSUNG MADE A STRATEGIC CHOICE,

04:32:15  15    AN EFFORT TO MINIMIZE THE PATENT, AN EFFORT TO MINIMIZE THE

04:32:19  16    IMPORTANCE OF THE INVENTION, OF CHOOSING WHAT IT FOUND TO BE

04:32:23  17    THE SMALLEST COMPONENT POSSIBLE, AND IN THE CASE OF THE D'305,

04:32:27  18    IT CHOSE THE DISPLAY SCREEN, WHICH CLEARLY CANNOT SHOW ANY

04:32:31  19    COLORFUL ICONS, AN ARRAY OF COLORFUL ICONS BY ITSELF, NO

04:32:36  20    DISPUTE ABOUT THAT.

04:32:37  21         IN THE CASE OF THE D'677, IT CHOSE A TRANSLUCENT WINDOW.

04:32:43  22    YOU CAN SEE THROUGH IT.  IT'S CLEARLY NOT BLACK.  THAT CANNOT

04:32:46  23    POSSIBILITY EMBODY THE PATENTED DESIGNS.

04:32:48  24          THE COURT:  LET ME ASK MS. SULLIVAN IF YOU WOULD

04:32:50  25     ADDRESS THIS POINT?  I WAS LISTENING, IN MR. QUINN'S OPENING,

04:32:55  1    HE KEPT SAYING, WHERE DOES THE DESIGN APPEAR?  WHICH TO ME IS

04:32:59  2    DIFFERENT THAN TO WHICH THE PATENTED DESIGN IS APPLIED.

04:33:04  3         LIKE YOU CAN SAY, YES, THE BLACK COLOR WILL APPEAR ON THIS

04:33:08  4    CLEAR SCREEN, OR YOU CAN SAY, YES, THE ICONS WILL APPEAR ON

04:33:13  5    THIS DISPLAY SCREEN, BUT THAT SEEMS LOOK A DIFFERENT TEST THAN

04:33:19  6    ARTICLE OF MANUFACTURE TO WHICH THE PATENTED DESIGN IS APPLIED.

04:33:23  7         WHAT'S YOUR RESPONSE TO THIS POINT?

04:33:26  8         MS. SULLIVAN:  THANK YOU, YOUR HONOR.

04:33:27  9         OUR RESPONSE IS THAT THE STATUTE REQUIRES THAT THE DESIGN

04:33:32  10   BE APPLIED TO THE ARTICLE OF MANUFACTURE TO GENERATE A PROFIT

04:33:38  11   AWARD.

04:33:39  12        IT DOES NOT REQUIRE THAT THE ARTICLE EMBODY THE DESIGN.

04:33:46  13   IT REQUIRES THAT IT BE APPLIED.  AND THE CORRECT INTERPRETATION

04:33:50  14   OF "APPLIED" IS NOT EMBODIED.  THE CORRECT INTERPRETATION OF

04:33:54  15   "APPLIED" IS WHERE, ON THE -- WHAT IT --

04:34:00  16        THE COURT:  I'M INTERESTED IN WHAT THIS NEXT ONE IS

04:34:02  17   GOING TO BE.

04:34:04  18        MS. SULLIVAN:  YEAH, I WANT TO GET IT RIGHT, YOUR

04:34:05  19   HONOR.

04:34:05  20        THE COURT:  IS IT APPEAR?

04:34:07  21        MS. SULLIVAN:  IT'S APPEAR.  IT'S WHERE IT APPEARS.

04:34:09  22        THE COURT:  OKAY.  BUT CAN I ASK YOU SOMETHING?  THAT

04:34:12  23   WOULDN'T BE INFRINGEMENT, WOULD IT?  WE'RE GETTING THIS APPLIED

04:34:15  24   LANGUAGE FROM THE STATUTE ITSELF.  289 SAYS WHOEVER DURING THE

04:34:18  25   TERM OF A PATENT FOR A DESIGN WITHOUT LICENSE OF THE OWNER

1341

04:34:21   1        APPLIES THE PATENTED DESIGN OR ANY COLORABLE IMITATION THEREOF

04:34:28   2    TO ANY ARTICLE OF MANUFACTURE FOR THE PURPOSE OF SALE.

04:34:30   3        THAT'S THE INFRINGEMENT DESCRIPTION.  I DON'T KNOW IF IT

04:34:34   4    WOULD BE INFRINGEMENT TO SAY WHOEVER DURING THE TERM OF A

04:34:42   5    PATENT FOR A DESIGN HAS A PATENTED DESIGN APPEAR ON ANY ARTICLE

04:34:47   6    OF MANUFACTURE FOR THE PURPOSE OF SALE.

04:34:50   7        IT'S JUST -- IT'S A DIFFERENT VERB THAN THE STATUTE ITSELF

04:34:54   8    USES.

04:34:58   9            MR. SELWYN:  THAT'S RIGHT.  THE PATENTED DESIGN HAS

04:35:00  10    TO BE APPLIED TO WHATEVER IS IDENTIFIED AS THE ARTICLE OF

04:35:03  11    MANUFACTURE.  THE ARTICLE OF MANUFACTURE HAS EMBODIED -- HAS TO

04:35:07  12    EMBODY THE PATENTED DESIGN, AND THAT MAKES SENSE.

04:35:10  13        IF IT WERE OTHERWISE, SOMEBODY COULD IDENTIFY SOMETHING,

04:35:12  14    WHICH IS EXACTLY WHAT WAS DONE HERE, THAT DOESN'T EMBODY THE

04:35:16  15    PATENTED DESIGN, THAT HAS A VERY LOW COST, AND, THEREFORE, TRY

04:35:20  16    TO EVADE THE TOTAL PROFITS REMEDY THAT'S AVAILABLE UNDER THE

04:35:24  17    STATUTE.

04:35:25  18            THE COURT:  WELL, LET ME HEAR FROM MS. SULLIVAN.

04:35:28  19            MS. SULLIVAN:  YOUR HONOR, IT WOULD INFRINGE IN

04:35:30  20    EXACTLY WHAT YOUR HONOR DESCRIBED, THAT IS, THE APPLICATION OF

04:35:34  21    THE DESIGN TO THE COMPONENT, HERE THE --

04:35:39  22            THE COURT:  I'M SORRY.

04:35:42  23            COURT SECURITY OFFICER:  I'M SORRY, YOUR HONOR.  IS

04:35:43  24    THE JURY FREE TO LEAVE AT 4:30?

04:35:47  25            THE COURT:  YES, THEY'RE FREE TO LEAVE.  THANK YOU.

1342

04:35:50  1      MS. SULLIVAN:  YOUR HONOR, THE PARTS THAT WE

04:35:53  2  RESPECTFULLY SUGGEST ARE THE ARTICLES OF MANUFACTURE ARE THE

04:35:56  3  ONLY PARTS THAT COULD BE FOUND TO LOOK LIKE THE DESIGN FOR

04:35:59  4  PURPOSES OF INFRINGEMENT.  THOSE ARE THE PARTS TO WHICH THE

04:36:02  5  DESIGN IS APPLIED.

04:36:03  6      REMEMBER, YOUR HONOR, WE'RE IN THE WORLD OF SURFACE

04:36:05  7  ORNAMENTATION.  THE LAW IS THAT A DESIGN PATENT CANNOT COVER

04:36:12  8  ANYTHING THAT DOES NOT AMOUNT TO SURFACE ORNAMENTATION.

04:36:16  9      AND, THEREFORE, THE PARTS TO WHICH THE DESIGN IS APPLIED

04:36:20 10  ARE, BY DEFINITION, THE PARTS ON WHICH THE DESIGNS APPEAR.

04:36:25 11      SO THE EMBODIMENT, WHICH IS A CONCEPT FAMILIAR IN UTILITY

04:36:29 12  PATENTS, IS NOT REALLY THE RIGHT WORD HERE.  IT'S APPEAR, WHICH

04:36:33 13  IS THE --

04:36:35 14      THE COURT:  WHERE DO YOU GET THAT?  IS THAT ANYWHERE

04:36:37 15  IN THE STATUTE?  WHERE CAN I LOOK TO SEE "APPEAR"?

04:36:40 16      MS. SULLIVAN:  WELL, IT'S AN INTERPRETATION OF THE

04:36:42 17  WORD "APPLIED," YOUR HONOR.  AND I WOULD CITE TO YOUR HONOR A

04:36:45 18  COUPLE OF CASES.  FIRST, IN RE: ZAHN, 617 F.2D 261.  THIS IS

04:36:53 19  THE C.C.P.A. 1980 CASE, A DECISION BY THE FEDERAL CIRCUIT'S

04:36:58 20  PREDECESSOR THAT ALLOWED FOR PARTIAL CLAIMING.

04:37:01 21      IT'S, IN A SENSE, THE GRANDDADDY OF THIS WHOLE CASE WHERE

04:37:05 22  WE HAVE PARTIAL CLAIMS ON JUST A PORTION OF THE EXTERIOR

04:37:08 23  APPEARANCE.

04:37:09 24      AND THE HOLDING IN ZAHN, IN ALLOWING A PARTIAL CLAIM FOR

04:37:14 25  SOMETHING THAT APPEARS ON A PART OF A PRODUCT AS SOLD, STATED

04:37:17   1    THAT IT'S REALLY SECTION 171 OF THE ACT INTERPRETED IN ZAHN.

04:37:22   2    THE WORD, THEREFORE, IN THE PHRASE "MAY OBTAIN A PATENT

04:37:25   3    THEREFORE," REFERS BACK TO DESIGN, NOT TO ARTICLE OF

04:37:29   4    MANUFACTURE.

04:37:30   5        SO THE DESIGN IS SOMETHING THAT IS APPLIED TO THE ARTICLE

04:37:34   6    OF MANUFACTURE.

04:37:36   7        IT'S -- THE DESIGN APPEARS -- I CAN'T CITE YOU THE WORD

04:37:42   8    "APPEAR" FROM ZAHN, BUT IT'S AN IMPLICATION OF 171 WHICH IT'S

04:37:46   9    UNDISPUTED APPLIES ONLY TO SURFACE ORNAMENTATION.

04:37:49   10       ORNAMENTATION, BY DEFINITION, IS AN APPEARANCE OF

04:37:54   11   SOMETHING AS OPPOSED TO A FUNCTION, WHICH IS WHY IT WOULD BE A

04:37:56   12   MISTAKE TO INTERPRET A DESIGN PATENT AS REQUIRING FUNCTIONAL

04:38:00   13   ATTRIBUTES IN ORDER TO APPEAR.

04:38:03   14       I MEAN, IF APPLE WERE RIGHT, THERE WOULD BE AN ENABLEMENT

04:38:06   15   PROBLEM WITH THEIR PATENT.

04:38:08   16       BUT THEY HAVE THEIR PATENT BECAUSE IT'S ALLOWED TO COVER

04:38:11   17   ONLY A SURFACE APPEARANCE.

04:38:13   18           MR. SELWYN:  YOUR HONOR, I THINK THAT MISSTATES WHAT

04:38:14   19   WE'VE BEEN DOING ALL WEEK AND WHAT WE JUST -- WHAT YOUR HONOR

04:38:17   20   JUST INSTRUCTED THE JURY.

04:38:19   21           THE COURT:  WELL, YOU KNOW, EMBODIMENT IS ALSO A

04:38:21   22   CONCEPT IN DESIGN PATENTS.  IT'S NOT LIMITED TO UTILITY

04:38:23   23   PATENTS.  I'M JUST LOOKING AT FINAL JURY INSTRUCTION NUMBER 26.

04:38:26   24   I THINK IF YOU DON'T EMBODY A DESIGN, THERE'S PROBABLY NO

04:38:29   25   INFRINGEMENT OR ARE YOU CONTESTING THAT?  YOU'RE SAYING YOU

04:38:32  1    DON'T HAVE TO EMBODY A DESIGN IN ORDER TO INFRINGE A DESIGN

04:38:35  2    PATENT?  IS THAT WHAT YOU'RE SAYING?

04:38:37  3         MS. SULLIVAN:  WELL, YOUR HONOR, I DO THINK THAT

04:38:39  4    APPEARANCE IS THE KEY TO APPLICATION.

04:38:41  5         BUT IF YOU -- EVEN IF YOU ACCEPT THAT THE INSTRUCTION IS

04:38:44  6    CORRECT AND THAT EMBODIMENT IS REQUIRED, THE POINT IS THAT OUR

04:38:50  7    ARTICLES OF MANUFACTURE TO EMBODY THE CLAIMED DESIGNS.  THEY

04:38:54  8    ARE WHAT EMBODIES THE CLAIMED DESIGNS, AS SOMETHING HAS TO.

04:38:59  9         OUR POINT IS THAT THEY NEED NOT EMBODY THE CLAIMED DESIGNS

04:39:02  10   AFTER THEY'RE DISASSEMBLED.

04:39:08  11        THE COURT:  BUT IF APPLE CAME AND SAID, I AM ACCUSING

04:39:10  12   THE DISPLAY SCREEN OF INFRINGING THE D'305, I THINK I WOULD

04:39:14  13   GRANT SUMMARY JUDGMENT IN YOUR FAVOR BECAUSE I DON'T THINK THAT

04:39:16  14   ALONE CAN INFRINGE.

04:39:18  15        DO YOU SEE WHAT I'M SAYING?  I DON'T THINK THE SCREEN IN

04:39:21  16   ISOLATION CAN INFRINGE THE D'305.

04:39:24  17        MR. SELWYN:  NOT ONLY THAT, IT WAS ADMITTED BY

04:39:27  18   MR. LUCENTE THAT THE DISPLAY SCREEN, BY ITSELF, CAN'T DISPLAY

04:39:31  19   ICONS.  YOU NEED TO PLUG IT INTO A BATTERY.  YOU NEED A

04:39:34  20   PROCESSOR.  YOU NEED SOFTWARE TO GO ALONG WITH IT.

04:39:37  21        WE JUST TOLD THIS JURY THAT ITS OBJECTIVE, THAT WAS THE

04:39:41  22   WORD THAT WAS USED IN INSTRUCTION 29, ITS OBJECTIVE WAS TO

04:39:45  23   FIGURE OUT THE ARTICLES OF MANUFACTURE THAT MOST FAIRLY CAN BE

04:39:48  24   SAID TO EMBODY SAMSUNG'S APPROPRIATION OF APPLE'S PATENTED

04:39:51  25   DESIGNS.

04:39:53  1          SO THE ARTICLE OF MANUFACTURE MUST EMBODY THE PATENTED

04:39:56  2    DESIGNS.  THAT'S THE WHOLE PURPOSE COLLECTIVELY OF THE FOUR

04:39:59  3    FACTORS.

04:40:00  4              MS. SULLIVAN:  YOUR HONOR, MAYBE I COULD HELP THIS

04:40:02  5    WAY:  IT'S PRODUCTS THAT ARE ACCUSED OF INFRINGEMENT, AND AFTER

04:40:06  6    THE SUPREME COURT DECISION, IT'S NOT NECESSARILY PRODUCTS THAT

04:40:09  7    ARE THE ARTICLES FOR 289 PROFIT PURPOSES.

04:40:12  8          SO WE WANT TO SEPARATE THOSE TWO THINGS OUT.  YOU ACCUSE

04:40:15  9    THE PRODUCT OF INFRINGEMENT, AND THE JURY CAN LOOK TO WHETHER

04:40:18  10   THE PRODUCT INFRINGES.

04:40:20  11         BUT WHEN IT COMES TO CALCULATING THE 289 PROFIT, THEN WE

04:40:24  12   HAVE A NEW STEP.  WE HAVE TO FIGURE OUT WHAT THE ARTICLE OF

04:40:27  13   MANUFACTURE IS TO WHICH THE DESIGN IS APPLIED, AND THAT'S A --

04:40:31  14   THAT'S A DAMAGES INQUIRY.  IT'S REALLY NOT AN INFRINGEMENT

04:40:35  15   INQUIRY.

04:40:36  16         AND IN FIGURING OUT WHAT THE ARTICLE IS, IT'S THE ARTICLE

04:40:39  17   TO WHICH THE DESIGN IS APPLIED, OR ON WHICH THE DESIGN HAS

04:40:42  18   APPEARED -- SORRY, ON WHICH THE DESIGN APPEARS.

04:40:45  19         YOU SEE MY CONCERN, YOUR HONOR?  I THINK IF WE TALK ABOUT

04:40:48  20   EMBODIMENT AND APPLE NEEDED -- YOU KNOW, IF THERE NEEDED TO BE

04:40:52  21   ALL THESE FUNCTIONAL ATTRIBUTES FOR THEIR DESIGN TO APPEAR,

04:40:57  22   THEY WOULDN'T HAVE GOTTEN THEIR PATENT.

04:40:59  23             THE COURT:  IT SEEMS LIKE IT BREAKS DOWN.

04:41:00  24         WHAT YOU TOLD THE SUPREME COURT IS, IT'S ONLY THE SMALL

04:41:03  25    THING THAT INFRINGES.  SO YOU CAN'T GIVE THEM THE WHOLE PROFITS

04:41:05  1    ON EVERYTHING; RIGHT?  IT'S ONLY THE CUP HOLDER.  SO YOU CAN'T

04:41:09  2    GIVE THEM THE WHOLE PROFITS ON THE CAR.  IT'S ONLY THE CUP

04:41:11  3    HOLDER THAT INFRINGES; RIGHT?

04:41:13  4         SO NOW WHAT I'M SEEING IS TWO ITEMS THAT DON'T INFRINGE.

04:41:17  5    I WOULD GRANT SUMMARY JUDGMENT IN YOUR FAVOR ON BOTH.  THAT

04:41:20  6    CLEAR GLASS IS NOT BLACK.

04:41:23  7         SO, YOU KNOW, THE -- I THINK THE ARTICLE OF MANUFACTURE

04:41:29  8    HAS TO BE THE THING TO WHICH THE DESIGN PATENT IS APPLIED.

04:41:36  9    SO -- BUT ON THE OTHER HAND, MR. SELWYN, I DON'T THINK THAT

04:41:42  10   GRANTING JMOL WOULD BE APPROPRIATE.  I THINK THIS SHOULD GO TO

04:41:45  11   THE JURY.

04:41:47  12        THIS IS, AS FAR AS I KNOW, THE ONLY SECOND DESIGN TRIAL

04:41:52  13   AFTER THE SUPREME COURT'S DECISION IN THIS CASE.

04:41:58  14        AND IT COULD BE THAT THE FEDERAL CIRCUIT MAY HAVE A

04:42:02  15   DIFFERENT UNDERSTANDING OF "APPLIED."  I THINK WHETHER THE

04:42:07  16   DESIGN IS EMBODIED IN A COMPONENT THAT IS MANUFACTURED

04:42:09  17   SEPARATELY FROM THE REST OF THE PRODUCT IS A CONSIDERATION, BUT

04:42:12  18   NOT A REQUIREMENT.

04:42:14  19        SO IT WOULD BE A DRAMATIC AND DRASTIC STEP TO GRANT JMOL

04:42:23  20   ON THOSE TWO ARTICLES OF MANUFACTURE.

04:42:25  21             MR. SELWYN:  YOUR HONOR, I UNDERSTAND THAT.  THE LAST

04:42:31  22   THING I'LL SAY, THOUGH, IS THAT WHILE NO ONE FACTOR IS

04:42:34  23   DISPOSITIVE, AND WE GENERALLY HAVEN'T ARGUED THAT, THE MISSION

04:42:37  24   OF THE FACTORS IS TO DETERMINE WHAT IS THE ARTICLE OF

04:42:40  25   MANUFACTURE THAT CAN MOST FAIRLY BE SAID TO EMBODY THE PATENTED

04:42:43  1      DESIGNS.

04:42:44  2           AT THE SUPREME COURT, SAMSUNG SAID IT COULD BE THE

04:42:46  3      PRODUCT, IT CAN BE THE COMPONENT THAT INFRINGES.

04:42:49  4           BUT THEY BOTH HAD TO INFRINGE.

04:42:52  5           SAMSUNG HAS NOW PIVOTED AND SAYS IT DOESN'T HAVE TO BE

04:42:55  6      SOMETHING THAT INFRINGES.  IT JUST HAS TO BE IN SOME WAY

04:42:59  7      CONNECTED TO WHAT INFRINGES COLLECTIVELY.

04:43:02  8           AND THERE'S NO DISPUTE.  THE WITNESSES AGREED.  IT WAS

04:43:05  9      ADMITTED DURING MR. QUINN'S CLOSING, THAT THE SCREEN BY ITSELF

04:43:11 10      DOESN'T INFRINGE THE D'677, THE FRONT GLASS, RATHER, DOESN'T

04:43:18 11      INFRINGE THE D'677, AND THE SCREEN DIDN'T INFRINGE THE D'305.

04:43:23 12           AND ONE OTHER POINT, YOUR HONOR.

04:43:23 13                THE COURT:  YEAH.

04:43:24 14                MR. SELWYN:  THE INSTRUCTION THAT SAYS THAT THE

04:43:26 15      OBJECTIVE TO IDENTIFY THE ARTICLE OF MANUFACTURE THAT EMBODIES

04:43:32 16      THE PATENTED DESIGNS, THAT IS THE LAW OF THE CASE.  THAT WAS

04:43:35 17      THE SAME INSTRUCTION GIVEN BEFORE.  THAT WAS NEVER CHALLENGED

04:43:40 18      ON APPEAL.  THAT IS THE LAW OF THE CASE.  IT'S NOT SUBJECT TO

04:43:43 19      FURTHER REVIEW.

04:43:45 20                THE COURT:  WELL, I GUESS I'M JUST CONCERNED.  NOW

04:43:47 21      THE TEST IS ANY SURFACE ON WHICH THE DESIGN CAN BE PROJECTED.

04:43:51 22      IT SEEMS LIKE NOW THAT'S THE TEST, ANY SURFACE ON WHICH THE

04:43:56 23      DESIGN -- THE PATENTED DESIGN CAN BE PROJECTED AND APPEAR.

04:44:01 24           I JUST AM NOT -- I DON'T THINK THAT'S CONSISTENT WITH

04:44:12 25      RULE -- WITH JURY INSTRUCTION 29.  I DON'T THINK IT'S

04:44:15  1    CONSISTENT WITH THE STATUTE, BUT I AM NOT GOING TO GRANT JMOL.

04:44:22  2         YOU WOULD AGREE -- THAT WOULD BE A VERY DRASTIC STEP.

04:44:26  3         AND IT COULD BE THAT PERHAPS I'M INTERPRETING "APPLIED"

04:44:32  4    TOO NARROWLY AND "APPLIED" CAN MEAN A SURFACE ON WHICH A

04:44:37  5    PATENTED DESIGN IS PROJECTED OR APPEARS.

04:44:44  6         I'VE NEVER HAD A CLAIM CONSTRUCTION ON "APPLIED," AND I

04:44:48  7    KNOW NO ONE ELSE HAS, EITHER.

04:44:50  8         ANYWAY, LET ME HEAR FROM MS. SULLIVAN, BECAUSE I KNOW YOU

04:44:55  9    ALSO HAD A PREPARED RULE 50 MOTION, AND I WANT TO GIVE YOU AN

04:44:59  10   OPPORTUNITY TO STATE YOUR MOTION ON THE RECORD AS WELL.

04:45:03  11        MS. SULLIVAN:  THANK YOU, YOUR HONOR.

04:45:06  12        SAMSUNG RESPECTFULLY MOVES UNDER RULE 50(A) FOR JUDGMENT

04:45:11  13   AS A MATTER OF LAW THAT THE ARTICLES OF MANUFACTURE IN THIS

04:45:15  14   CASE ARE NOT THE ENTIRE PHONES AND THAT IT'S APPLE'S BURDEN TO

04:45:21  15   HAVE PROVED SUCH ARTICLES AND THAT APPLE FAILED TO MEET ITS

04:45:24  16   BURDEN.

04:45:25  17        APPLYING THE FOUR FACTOR TEST, FIRST, ON FACTOR 1 THROUGH

04:45:30  18   APPLE WITNESSES' OWN ADMISSIONS, THE D'677 COVERS ONLY A BLACK

04:45:39  19   RECTANGULAR FRONT FACE WITH ROUNDED CORNERS.  THAT WAS ADMITTED

04:45:41  20   BY APPLE'S WITNESSES MR. HOWARTH, MR. BALL, AND OTHERS.

04:45:44  21        SECOND, THE D'087 CLAIMS ONLY, AND COVERS ONLY, A

04:45:50  22   RECTANGULAR FRONT FACE WITH ROUNDED CORNERS, AGAIN AS ADMITTED

04:45:54  23   BY MR. HOWARTH AND MR. BALL.

04:45:56  24        THE D'305 COVERS ONLY ONE SPECIFIC GRID OF 16 ICONS ON A

04:46:02  25   GRAPHICAL USER INTERFACE.

1349

04:46:04  1      THESE PATENTS -- NONE OF THE THREE PATENTS, AS A MATTER OF

04:46:08  2  LAW, CAN COVER THE ENTIRE PHONE BECAUSE AS A MATTER OF LAW,

04:46:12  3  DESIGN PATENTS CANNOT BE APPLIED TO THE INSIDES OF A PHONE.

04:46:17  4      SECTION 171 OF THE PATENT ACT MAKES THAT CLEAR, AS DOES

04:46:21  5  THE C.C.P.A. DECISION IN IN RE: STEVENS, 173 F.2D 1015 AT 1016

04:46:31  6  IN WHICH THE FEDERAL CIRCUIT'S PREDECESSORS HELD THAT FACTORS

04:46:36  7  CONCEALED OR OBSCURED IN NORMAL USE ARE NOT ELIGIBLE FOR DESIGN

04:46:39  8  PATENTS.

04:46:41  9      NONE OF THESE PATENTS COVER THE ENTIRE PHONE.  THIS IS --

04:46:44 10  THESE WERE NOT IPHONE PATENTS.  THEY WERE NOT EVEN DESIGN

04:46:49 11  PATENTS FOR THE ENTIRE EXTERIOR OF THE IPHONE.  THEY WERE

04:46:52 12  PARTIAL PATENTS AS ADMITTED BY APPLE'S WITNESSES, MR. BALL AND

04:46:58 13  DR. KARE.

04:47:02 14      MOREOVER, THE CLAIM IS LIMITED, THE DESIGN IS LIMITED AS A

04:47:07 15  MATTER OF LAW SOLELY TO THE DESIGN MATTER WITHIN THE SOLID

04:47:11 16  LINES IN THE PATENT FIGURES.  I CITED TO YOU A MOMENT AGO

04:47:14 17  IN RE: ZAHN.  THAT'S THE KEY CASE THAT SAYS THAT IT IS THE

04:47:17 18  DESIGN THAT IS CLAIMED.  IT'S NOT THE ARTICLE OF MANUFACTURE

04:47:20 19  THAT IS CLAIMED.  IT IS THE DESIGN THAT IS CLAIMED.  YOU MAY

04:47:25 20  OBTAIN A PATENT THEREFORE REFERS BACK TO THE DESIGN.

04:47:29 21      SO THE DESIGN IS WHAT IS DESCRIBED INSIDE THE SOLID LINES

04:47:34 22  OF THE PATENT FIGURE, NOTHING MORE.

04:47:37 23      THE CLAIM CANNOT COVER SEPARATE ARTICLES THAT DO NOT SHOW

04:47:40 24  THE DESIGN.

04:47:42 25      AS A MATTER OF LAW, WHAT THE SCOPE OF THE DESIGN CLAIMED

04:47:46  1    BY APPLE'S PATENTS CANNOT BE EXPANDED BY THE PATENT OFFICE AS

04:47:51  2    YOUR HONOR HAS INSTRUCTED IN JURY INSTRUCTION 29 AND AS WAS

04:47:54  3    ADMITTED BY APPLE'S WITNESS, MR. BALL.

04:47:58  4         AS A MATTER OF LAW, THE CLAIM -- THE SCOPE OF THE DESIGN

04:48:05  5    CLAIMED IN APPLE'S PATENT CANNOT INCLUDE THE TITLE, ELECTRONIC

04:48:09  6    DEVICE, IT CANNOT INCLUDE THE WORD ARTICLE OF MANUFACTURE IN

04:48:13  7    THE WRITTEN DESCRIPTION, AND IT CANNOT BE EXPANDED BY THE

04:48:19  8    PATENT OFFICE AS MR. BALL ADMITTED.  THE AUTHOR OF THE PATENTS

04:48:26  9    DID NOT APPLY THE ARTICLE OF MANUFACTURE TEST YOUR HONOR HAS

04:48:28  10   NOW APPLIED.  IT DID NOT EXIST BEFORE DECEMBER 2016 WITH THE

04:48:34  11   SUPREME COURT DECISION OR BEFORE YOUR HONOR IN DECEMBER 2017

04:48:39  12   CLARIFIED THE FOUR PART TEST.

04:48:41  13        SO THE WORDS IN THE TITLE AND THE WRITTEN DESCRIPTION, AS

04:48:44  14   A MATTER OF LAW, ARE NOT PART OF THE DESIGN THAT IS PROTECTED

04:48:46  15   BY THE PATENT CLAIM UNDER IN RE: ZAHN.

04:48:49  16        MOREOVER, AS A MATTER OF LAW, THE MATTER DISCLAIMED BY THE

04:48:53  17   DOTTED LINES FORMS NO PART OF THE SCOPE OF THE DESIGN CLAIMED

04:48:56  18   IN APPLE'S PATENTS.

04:48:58  19        THAT, TOO, WAS ADMITTED BY APPLE'S WITNESSES.  ADMISSIONS

04:49:02  20   ON THAT POINT WERE MADE BY MR. BALL AND DR. KARE.

04:49:05  21        FINALLY, ON THE -- TO CLOSE ON FACTOR 1, APPLE IS BARRED

04:49:09  22   BY ITS OWN PROSECUTION HISTORY ESTOPPEL FROM CLAIMING THAT THE

04:49:14  23   DESIGNS COVER ANYTHING BEYOND THE NARROW DESIGNS IN THE PATENT

04:49:17  24   FIGURES.

04:49:18  25        JX 1064 SHOWS THAT AS TO THE D'677, APPLE SOUGHT TO COVER

04:49:24  1    MULTIPLE DESIGNS, INCLUDING FOR THE BEZEL, BUT GAVE THEM UP TO

04:49:27  2    GET A PATENT ONLY ON THE BLACK FRONT FACE.

04:49:30  3         AS TO THE D'087, JX 1062 SHOWS THAT APPLE SOUGHT TO COVER

04:49:37  4    MULTIPLE DESIGN, INCLUDING FOR THE ENTIRE DEVICE, BUT GAVE THEM

04:49:41  5    UP TO GET A PATENT ON THE FRONT FACE OF THE BEZEL.

04:49:44  6         AND ON THE D'305, APPLE, AS SHOWN BY JX 1063, APPLE

04:49:50  7    ORIGINALLY CLAIMED NEARLY 200 GRAPHIC USER INTERFACE IMAGES,

04:49:57  8    BUT GAVE THEM ALL UP EXCEPT FOR THE ONE COVERED BY THE NARROW

04:50:01  9    D'305 CLAIMS.

04:50:03  10        THE PROSECUTION HISTORIES WERE ADMITTED AT THE TRIAL AND

04:50:05  11   INFORM FACTOR 1.

04:50:07  12        SO NO REASONABLE JURY COULD FIND FACTOR 1 SUPPORTS THE

04:50:12  13   ULTIMATE CONCLUSION THAT THE ARTICLES OF MANUFACTURE ARE THE

04:50:15  14   ENTIRE PHONES.

04:50:16  15        TURNING TO FACTOR 2, RELATIVE PROMINENCE OF THE DESIGN

04:50:19  16   WITHIN THE PRODUCT AS A WHOLE, AGAIN, SAMSUNG OBJECTS TO THIS

04:50:23  17   FACTOR AS NOT A PROPER PART OF THE FOUR PART TEST AFTER THE

04:50:28  18   SUPREME COURT DECISION.

04:50:30  19        BUT ASSUMING THAT IT IS, IT STILL WASN'T MET BY THE

04:50:32  20   EVIDENCE IN THIS CASE.  NO REASONABLE JUROR COULD FIND THAT THE

04:50:34  21   DESIGNS HERE ARE PROMINENT RELATIVE TO THE HUNDREDS OF OTHER

04:50:37  22   FEATURES IN THE PHONE AS A WHOLE.  NOT PROMINENT RELATIVE JUST

04:50:42  23   TO VISUAL APPEARANCE, BUT NOT PROMINENT RELATIVE TO ALL THE

04:50:48  24   OTHER FUNCTIONAL FEATURES OF THE PHONE THAT MAKES PROMINENT

04:50:50  25   WHAT YOU DO WITH THE PHONE.

04:50:52  1          THERE WERE ADMISSIONS THAT THE DESIGNS APPEAR ONLY IN

04:50:54  2     PARTS OF THE PHONE.  IT WAS UNDISPUTED, AND THERE WERE

04:50:57  3     ADMISSIONS AGAIN FROM APPLE'S WITNESSES, THAT THE PHONES

04:50:59  4     CONTAIN HUNDREDS OF OTHER COMPONENTS UNAFFECTED BY THE DESIGNS.

04:51:04  5          DR. KARE IN PARTICULAR ADMITTED THAT AS WE SAW IN CLOSING.

04:51:07  6          AND IT WAS ADMITTED, AGAIN BY DR. KARE, THAT THE PROPER

04:51:12  7     CONSIDERATION UNDER FACTOR 2 IS THE CLAIMED DESIGNS IN RELATION

04:51:16  8     TO ALL OF THE ELEMENTS AND FEATURES OF THE PHONE.

04:51:18  9          VIEWED THAT WAY, AND NOT BY THE NARROWER AND INCORRECT

04:51:21 10     TEST OF PROMINENT RELATIVE TO VISUAL APPEARANCE, IT IS -- NO

04:51:26 11     REASONABLE JURY COULD FIND THAT THE PATENTED FEATURES ARE

04:51:30 12     APPLIED HERE IN A WAY THAT MAKES THEM PROMINENT RELATIVE TO THE

04:51:33 13     PRODUCT AS A WHOLE.

04:51:35 14          DR. BALL -- SORRY.  MR. BALL ADMITTED, FOR EXAMPLE, THAT

04:51:39 15     PHONES HAVE PROMINENT FEATURES BESIDES THE PATENTED DESIGNS.

04:51:42 16          TURNING TO FACTOR 3, WHETHER THE DESIGN IS CONCEPTUALLY

04:51:46 17     DISTINCT FROM THE PRODUCT AS A WHOLE, THE UNDISPUTED EVIDENCE

04:51:49 18     MAKES CLEAR THAT NO REASONABLE JURY COULD FIND OTHERWISE THAN

04:51:53 19     THAT THE DESIGNS ARE CONCEPTUALLY DISTINCT FROM THE PRODUCT AS

04:51:55 20     A WHOLE.

04:51:59 21          AGAIN, SAMSUNG DOES NOT THINK THIS IS A PROPER FACTOR, AND

04:52:03 22     IT SHOULD NOT BE IN THE FOUR FACTOR TEST AND HAS OBJECTED TO

04:52:06 23     THAT INSTRUCTION.

04:52:07 24          BUT ASSUMING IT IS PART OF THE TEST, APPLE FAILED TO MEET

04:52:10 25     ITS BURDEN AND NO REASONABLE JURY COULD FAIL TO FIND THAT THE

04:52:14  1    ASSERTED DESIGNS ARE CONCEPTUALLY DISTINCT FROM SAMSUNG'S

04:52:16  2    PRODUCTS AS A WHOLE.  JUST AS A COVER IS CONCEPTUALLY DISTINCT

04:52:21  3    FROM A BOOK OR A PIANO CASE IS CONCEPTUALLY DISTINCT FROM A

04:52:25  4    PIANO BECAUSE THEY CORRESPOND TO DIFFERENT IDEAS.

04:52:28  5         IN PARTICULAR, MR. BALL TESTIFIED ABOUT A PRINTER WITH A

04:52:31  6    FRONT FACE OR A CONTROL PANEL THAT'S SIMILAR IN APPEARANCE TO

04:52:34  7    THE D'677 AND ADMITTED THAT A FRONT FACE IS A DIFFERENT CONCEPT

04:52:37  8    FROM A PHONE.

04:52:39  9         HE ALSO ADMITTED THAT A GLASS FRONT FACE IS A DIFFERENT

04:52:42  10   CONCEPT FROM OTHER INVENTIONS FROM THE PHONES.

04:52:44  11        SIMILARLY, MR. HOWARTH EXPLAINED THAT THE IDEA OF A BEZEL

04:52:47  12   IS TRADITIONALLY ASSOCIATED WITH A CLOCK OR A WATCH FACE AND

04:52:50  13   THUS A BEZEL IS A DISTINCT CONCEPT FROM A PHONE.

04:52:54  14        MR. BALL ALSO CONCEDED THAT SAMSUNG SMARTPHONES CONTAIN

04:52:58  15   OTHER COMPONENTS THAT ARE CONCEPTUALLY DISTINCT FROM APPLE'S

04:53:00  16   DESIGNS, INCLUDING BATTERIES, CAMERAS AND PROCESSORS.  SO ON

04:53:04  17   FACTOR 3, NO REASONABLE JURY COULD FIND THAT THE ARTICLES ARE

04:53:09  18   NOT -- SORRY -- THAT THE DESIGN IS NOT CONCEPTUALLY DISTINCT

04:53:12  19   FROM THE PRODUCT AS A WHOLE.

04:53:14  20        TURNING TO FACTOR 4, THE PHYSICAL RELATIONSHIP BETWEEN THE

04:53:19  21   PATENTED DESIGN AND THE REST OF THE PRODUCT, INCLUDING WHETHER

04:53:22  22   THE DESIGN PERTAINS TO A COMPONENT THAT A USER OR SELLER COULD

04:53:26  23   PHYSICALLY SEPARATE FROM THE PRODUCT AS A WHOLE, AND WHETHER

04:53:29  24   THE DESIGN IS EMBODIED IN A COMPONENT THAT IS MANUFACTURED

04:53:33  25   SEPARATELY FROM THE REST OF THE PRODUCT, OR IF THE COMPONENT

04:53:37  1    CAN BE SOLD SEPARATELY, AGAIN, NO REASONABLE JURY COULD FIND

04:53:41  2    THAT FACTOR 4 SUPPORTS A CONCLUSION THAT THE ENTIRE PHONES ARE

04:53:45  3    THE RELEVANT ARTICLES OF MANUFACTURE.

04:53:47  4         AS TO THE D'677 AND D'087 PATENTS, IT IS UNDISPUTED THAT

04:53:53  5    THE GLASS FRONT FACE AND THE GLASS FRONT FACE WITH BEZEL,

04:53:57  6    FIRST, CAN BE PHYSICALLY SEPARATED FROM THE PHONES, INCLUDING

04:54:00  7    FROM REPAIRS.

04:54:02  8         THERE ARE ADMISSIONS BY APPLE'S WITNESSES TO THAT EFFECT

04:54:05  9    FROM MR. HOWARTH, MR. JOSWIAK, AND MR. BLEVINS.

04:54:10  10        SECONDLY, THE -- IT IS -- THERE'S UNDISPUTED OR ADMITTED

04:54:15  11   EVIDENCE IN THE RECORD THAT THE GLASS FRONT FACE AND THE GLASS

04:54:18  12   FRONT FACE WITH BEZEL ARE MANUFACTURED SEPARATELY FROM THE REST

04:54:22  13   OF THE PHONES BEFORE THEY ARE ASSEMBLED.

04:54:25  14        THERE ARE ADMISSIONS ON THAT IN THE RECORD FROM MR. BALL,

04:54:27  15   MR. JOSWIAK, AND MR. BLEVINS.

04:54:32  16        THIRD, THE UNDISPUTED EVIDENCE IN THE RECORD OR APPLE'S

04:54:36  17   OWN ADMISSIONS SHOW THAT THE PHONE -- SORRY, THAT THE

04:54:40  18   COMPONENTS CAN BE SOLD SEPARATELY, INCLUDING FOR REPAIRS AND

04:54:43  19   REPLACEMENTS.

04:54:44  20        THERE ARE ADMISSIONS ON THAT FROM MR. HOWARTH, MR. BALL ,

04:54:47  21   AND MR. BLEVINS.

04:54:52  22        AND FINALLY, THE JURY HAS ONLY TO LOOK AT THE EXHIBITS,

04:54:55  23   WHICH IT WILL HAVE IN THE JURY ROOM, TO SEE THAT THE FRONT FACE

04:54:57  24   OF THE FRONT GLASS FACE AND THE FRONT GLASS FACE WITH BEZEL CAN

04:55:01  25   BE DISASSEMBLED FROM THE REST OF THE PHONE, CAN BE PHYSICALLY

04:55:04  1    SEPARATED, OR MANUFACTURED SEPARATELY, CAN BE SOLD SEPARATELY.

04:55:08  2    BUT THEY CERTAINLY CAN SEE THAT THEY CAN BE PHYSICALLY

04:55:11  3    SEPARATED.  ON THE D'677, THEY HAVE JX 5003, JX 5004, JX 5006,

04:55:22  4    JX 5011, JX 5012, JX 5013, JX 5014, JX 5015.  AS TO THE '677,

04:55:38  5    THOSE ARE THE EXHIBITS THEY HAVE.

04:55:39  6         AS TO BOTH THE '677 AND THE D'087, THE JURY WILL HAVE TO

04:55:44  7    LOOK FOR ITS -- WITH ITS OWN EYES AT THE DISASSEMBLY OF JX 5000

04:55:50  8    AND JX 5007.  THEY HAVE IMAGES OF DISASSEMBLIES AT DX 4569 AND

04:55:58  9    AT DX 2519 AND DX 4516.

04:56:06  10        SO AS TO THE -- AS TO FACTOR 4, AS TO DX '677 AND D'087,

04:56:13  11   THERE'S OVERWHELMING UNDISPUTED EVIDENCE THAT THE COMPONENTS

04:56:16  12   CAN BE PHYSICALLY SEPARATED FROM THE PHONE.

04:56:18  13        AS TO THE D'305, IT IS LIKEWISE UNDISPUTED OR SHOWN BY

04:56:23  14   APPLE'S OWN ADMISSIONS THAT THE DISPLAY SCREEN IS A SEPARATE

04:56:27  15   ARTICLE OF MANUFACTURE AND THAT THE SAMSUNG PHONES CONTAIN MANY

04:56:32  16   OTHER ARTICLES OF MANUFACTURE.  DR. KARE ADMITTED THAT.

04:56:35  17        IT WAS ADMITTED THAT THE DISPLAY SCREENS CAN BE PHYSICALLY

04:56:38  18   SEPARATED FROM THE PHONES, INCLUDING FOR REPAIR.  THERE ARE

04:56:41  19   ADMISSIONS ON THAT FROM BOTH MR. BLEVINS AND DR. KARE.  IT'S

04:56:45  20   ALSO SHOWN BY JX 5001.

04:56:48  21        AND, THIRD, THERE IS UNDISPUTED, OR ADMITTED EVIDENCE THAT

04:56:51  22   THE DISPLAY SCREEN IS MANUFACTURED SEPARATELY FROM THE REST OF

04:56:55  23   THE PRODUCT BEFORE IT IS ASSEMBLED.  THERE ARE ADMISSIONS ON

04:56:59  24   THAT SCORE FROM MR. BLEVINS AND MR. BALL WHO ADMITTED THAT ALL

04:57:02  25   PARTS ARE MANUFACTURED SEPARATELY.

1356

```
04:57:04   1          AGAIN, ON THE EXHIBITS, JX 5000, 5001, 5002, 5003, 5004,

04:57:15   2    5005, 5006, 5007, 5008, AND 5009, 5010, AND 5011 ALL SHOW THAT

04:57:29   3    THE DISPLAY SCREEN, AS A MATTER OF PHYSICAL DISASSEMBLY, IS A

04:57:33   4    SEPARATE AND SEPARABLE PRODUCT FROM THE REST OF THE PHONE.

04:57:36   5          APPLE ARGUED THAT THERE WAS SOME EMBELLISHMENTS TO YOUR

04:57:42   6    HONOR'S TEST WHICH DON'T PROPERLY STATE THE LAW AS YOUR HONOR

04:57:45   7    INSTRUCTED IT UNDER INSTRUCTION NUMBER 29.

04:57:48   8          FIRST, IT IS LEGALLY IRRELEVANT WHETHER OR NOT THE

04:57:50   9    COMPONENTS WERE REGULARLY SOLD SEPARATELY TO CONSUMERS.  THE

04:57:55  10    CORE HOLDING OF APPLE VERSUS -- THE SAMSUNG VERSUS APPLE

04:58:00  11    DECISION 137 S.CT. AT 436 WAS THAT A COMPONENT CAN BE THE

04:58:05  12    RELEVANT ARTICLE OF MANUFACTURE WHETHER SOLD SEPARATELY OR NOT.

04:58:11  13          IT IS -- SECOND, IT IS ALSO LEGALLY IRRELEVANT THAT USERS

04:58:15  14    DON'T REGULARLY SEPARATE THE COMPONENTS IN ORDINARY USE.

04:58:19  15          WHAT MATTERS, AS YOUR HONOR CORRECTLY INSTRUCTED UNDER

04:58:22  16    FACTOR 4, IS WHETHER THE COMPONENTS CAN BE SEPARATED, NOT

04:58:26  17    WHETHER THEY ARE REGULARLY BY CONSUMERS.

04:58:29  18          SO TO CLOSE ON THE IDENTITY OF THE ARTICLE OF MANUFACTURE,

04:58:32  19    TAKING THE FOUR FACTORS TOGETHER, NO REASONABLE JURY COULD FIND

04:58:36  20    THAT THE ARTICLE OF MANUFACTURE TO WHICH THE PATENTS ARE

04:58:39  21    APPLIED ARE THE ENTIRE PHONES.

04:58:41  22          NOW, APPLE HAS SUGGESTED, AS WE WERE DISCUSSING JUST

04:58:44  23    BEFORE YOUR HONOR, THAT THE D'677 WASN'T APPLIED TO THE FRONT

04:58:49  24    FACE BECAUSE THE GLASS ITSELF IS NOT BLACK.

04:58:51  25          BUT THAT IS WRONG.
```

04:58:53  1          THE COURT:  CAN I ASK YOU, I WANT TO UNDERSTAND

04:58:55  2   SAMSUNG'S POSITION.  SO YOU'RE SAYING ARTICLE OF MANUFACTURE

04:58:57  3   DOES NOT NEED TO INFRINGE THE PATENTED DESIGNS; CORRECT?

04:59:01  4          MS. SULLIVAN:  THE PRODUCT NEEDS TO INFRINGE.

04:59:03  5          THE COURT:  THE ARTICLES DO NOT.

04:59:04  6          MS. SULLIVAN:  THE ARTICLES DO NOT SEPARATELY NEED TO

04:59:07  7   INFRINGE, CORRECT.

04:59:08  8          THE COURT:  OKAY.  THE ARTICLES OF MANUFACTURE NEED

04:59:10  9   NOT EMBODY THE PATENTED DESIGNS; CORRECT?

04:59:12 10          MS. SULLIVAN:  WE THINK THE BEST EXPRESSION, YOUR

04:59:15 11   HONOR, IS THE ARTICLES NEED TO BE THE --

04:59:18 12          THE COURT:  SURFACE ON WHICH THE PATENTED DESIGN

04:59:20 13   APPEARS, OR IS PROJECTED.

04:59:22 14          MS. SULLIVAN:  THAT'S RIGHT, THE COMPONENT -- THE

04:59:24 15   COMPONENT TO WHICH THE DESIGN IS APPLIED.

04:59:27 16      NOW, THERE'S AN IMPORTANT POINT HERE, YOUR HONOR.

04:59:29 17          THE COURT:  OKAY, WAIT.  I JUST WANT SOME ANSWERS TO

04:59:32 18   MY QUESTIONS.  SO YOU'RE SAYING ARTICLES OF MANUFACTURE NEED

04:59:34 19   NOT INFRINGE THE PATENTED DESIGNS; CORRECT?

04:59:38 20          MS. SULLIVAN:  CORRECT.

04:59:38 21          THE COURT:  OKAY.

04:59:39 22          MS. SULLIVAN:  THE ARTICLE OF MANUFACTURE IS A

04:59:41 23   DAMAGES CONCEPT.  IT'S NOT AN INFRINGEMENT CONCEPT.

04:59:44 24          THE COURT:  OKAY.  BUT THAT'S WHAT'S IN THE STATUTE.

04:59:46 25   THAT'S WHAT 289 SAYS.  289 IS ADDITIONAL REMEDY FOR

04:59:52  1       INFRINGEMENT OF DESIGN PATENT.  IT SAYS WHOEVER, DURING THE

04:59:55  2       TERM OF A PATENT FOR A DESIGN, WITHOUT LICENSE OF THE OWNER,

04:59:59  3       APPLIES THE PATENTED DESIGN OR ANY COLORABLE IMITATION THEREOF

05:00:04  4       TO ANY ARTICLE OF MANUFACTURE FOR THE PURPOSE OF SALE, OR SELLS

05:00:07  5       ARE EXPOSES FOR SALE ANY ARTICLE OF MANUFACTURE TO WHICH SUCH

05:00:11  6       DESIGN OR COLORABLE IMITATION HAS BEEN APPLIED SHALL BE LIABLE

05:00:17  7       TO THE OWNER TO THE EXTENT OF HIS TOTAL PROFIT, BUT NOT LESS

05:00:22  8       THAN $250 RECOVERABLE IN UNITED STATES DISTRICT COURT HAVING

05:00:27  9       JURISDICTION OF THE PARTIES.

05:00:28  10           OKAY.  SO I JUST WANT TO UNDERSTAND THE POSITION.  I'M

05:00:31  11      GOING TO DENY ALL OF THE RULE 50 MOTIONS, BUT I JUST WANT TO

05:00:34  12      UNDERSTAND.

05:00:34  13           SO SAMSUNG'S POSITION IS THE ARTICLE OF MANUFACTURE NEEDED

05:00:37  14      TO INFRINGE THE PATENTED DESIGNS; CORRECT?

05:00:40  15               MS. SULLIVAN:  WELL, YOUR HONOR, WE'RE IN A DAMAGES

05:00:44  16      STATUTE.  INFRINGEMENT IS, IS SEPARATE.  THERE'S NO REQUIREMENT

05:00:48  17      THAT ONCE THE DESIGN IS APPLIED --

05:00:50  18               THE COURT:  SO THAT'S A YES?  THAT'S A YES?

05:00:52  19               MS. SULLIVAN:  UM --

05:00:53  20               THE COURT:  I JUST WANT TO UNDERSTAND WHAT YOUR

05:00:55  21      POSITION IS.  THERE'S GOING TO BE EXTENSIVE POST-TRIAL MOTIONS

05:01:01  22      IF THE LAST THREE TRIALS WERE ANY INDICATION, SO I JUST WANT TO

05:01:03  23      UNDERSTAND.

05:01:04  24           SO IT SOUNDS LIKE SAMSUNG IS SAYING THE ARTICLES OF

05:01:07  25      MANUFACTURE DO NOT NEED TO INFRINGE THE PATENTED DESIGNS.  THE

05:01:10  1    ARTICLES OF MANUFACTURE DO NOT NEED TO EMBODY THE PATENTED

05:01:13  2    DESIGNS.  IT JUST NEEDS TO BE A COMPONENT OR A SURFACE ON WHICH

05:01:17  3    THE PATENTED DESIGN APPEARS OR IS PROJECTED I GUESS.  I GUESS

05:01:22  4    IT COULD APPEAR IN ANYWAY.

05:01:24  5         DOES THAT SOUND CORRECT?

05:01:25  6            MS. SULLIVAN:  CORRECT, YOUR HONOR, THAT IS OUR

05:01:27  7    POSITION.

05:01:27  8            THE COURT:  OKAY.  ALL RIGHT.  SO WOULD SAMSUNG

05:01:29  9    CONCEDE THAT THE ARTICLES OF MANUFACTURE DON'T INFRINGE THE

05:01:31  10   D'677 AND THE D'305 THEN?

05:01:34  11           MS. SULLIVAN:  WELL, YOUR HONOR, IF YOU WANT TO GIVE

05:01:37  12   US A JUDGMENT THAT THEY DON'T INFRINGE, WE'LL TAKE IT, BUT I

05:01:41  13   THINK THAT WE'RE NOT HERE TO DISCUSS THE INFRINGEMENT DECISION.

05:01:44  14   WE'RE HERE TO DISCUSS THE DAMAGE.  WE'RE IN THE DAMAGES

05:01:46  15   STATUTE.

05:01:48  16       LET ME PUT IT THIS WAY.  OUR PHONE -- OUR INFRINGING

05:01:51  17   PHONES ARE NOT ALWAYS DISPLAYING THE DESIGNS.  THERE'S NO

05:01:56  18   REQUIREMENT THAT ONCE A DESIGN IS APPLIED THAT IT'S ALWAYS

05:01:59  19   THERE.

05:01:59  20       SO INFRINGEMENT IS A SEPARATE CONCEPT FROM WHAT THE

05:02:02  21   ARTICLE IS.

05:02:03  22       YOU KNOW, THE GUI IS NOT ALWAYS BEING DISPLAYED ON THE

05:02:10  23   DISPLAY SCREEN.  SO INFRINGEMENT IS A SEPARATE CONCEPT FROM

05:02:14  24   WHAT THE ARTICLE IS.

05:02:15  25       ONCE IT'S APPLIED, THERE CAN BE INFRINGEMENT.

05:02:18  1           BUT OUR ARTICLES OF MANUFACTURE ARE THE ONES THAT FAIRLY

05:02:21  2    EMBODY WHAT THE DESIGNS WERE APPLIED TO.

05:02:24  3           SO, YOUR HONOR, OUR ANSWER IS IT'S NOT ABOUT WHAT

05:02:26  4    INFRINGES OR WHAT EMBODIES.  IT'S ABOUT WHAT THE DESIGNS WERE

05:02:31  5    APPLIED TO FOR DAMAGES PURPOSES.

05:02:35  6           NOTHING IN THE SUPREME COURT DECISION SPOKE ABOUT WHAT

05:02:38  7    INFRINGES.  IT'S PRODUCTS THAT INFRINGE, PRODUCTS THAT ACCUSE.

05:02:45  8    NOW WE'RE IN THE DAMAGES STATUTE, AND WE'RE TRYING TO CALCULATE

05:02:47  9    WHAT THE ARTICLE OF MANUFACTURE TO WHICH THE DESIGN WAS

05:02:49  10   APPLIED.

05:02:51  11          SO THERE'S A VEN DIAGRAM.  THERE'S NOT PERFECT

05:02:53  12   CORRESPONDENT BETWEEN INFRINGEMENT AND ARTICLE FOR DAMAGES

05:02:57  13   PURPOSES.

05:02:58  14          I'D LIKE TO BE MORE HELPFUL TO YOUR HONOR.  I REALIZE

05:03:01  15   THESE ARE VERY DIFFICULT QUESTIONS.

05:03:08  16          THE COURT:  OKAY.  ALL RIGHT.  SO THE ARTICLES OF

05:03:15  17   MANUFACTURE DO NOT IN AND OF THEMSELVES INFRINGE, BUT WITH

05:03:24  18   OTHER COMPONENTS OF THE PRODUCT, THEY CAN?

05:03:27  19          MS. SULLIVAN:  THAT'S RIGHT, YOUR HONOR.

05:03:29  20          THE COURT:  OKAY.

05:03:29  21          MS. SULLIVAN:  AND THAT LEADS ME EXACTLY TO THE NEXT

05:03:32  22   REASON WHY APPLE IS NOT ENTITLED, AS A MATTER OF LAW, TO ENTIRE

05:03:35  23   PHONE AS THE ARTICLE OF MANUFACTURE, EVEN IF IT TAKES OTHER

05:03:39  24   COMPONENTS TO MAKE THE SCREEN LOOK BLACK, THE FACE LOOK BLACK,

05:03:43  25   OR TO MAKE THE SCREEN LOOK ILLUMINATED.

05:03:47  1       THE REASON IS, YOUR HONOR, APPLE WAS FREE TO, BUT FAILED

05:03:49  2   TO, DESCRIBE AN ALTERNATIVE ARTICLE OF MANUFACTURE OTHER THAN

05:03:54  3   THE ENTIRE PHONE THAT WAS NEEDED TO MAKE ALL THOSE IMAGES

05:03:58  4   APPEAR.

05:03:59  5       IT WAS FREE TO PROVE A COMBINATION OF COMPONENTS THAT MAKE

05:04:02  6   PHONES LOOK BLACK AND, THUS, APPLIED THE '677.

05:04:08  7       IT WAS FREE TO TRY TO SHOW THAT THERE WERE OTHER

05:04:10  8   COMPONENTS THAT WERE NEEDED TO MAKE THE DISPLAY SCREEN SHOW THE

05:04:14  9   PATENTED GUI DESIGN.

05:04:16  10      THEY FAILED TO DO SO.  IT'S THEIR BURDEN, AND THEY FAILED

05:04:19  11  TO DO IT.

05:04:20  12      AND IT DOES NOT TAKE THE ENTIRE PHONE TO MAKE THE FRONT

05:04:23  13  FACE BLACK.  IT DOESN'T TAKE THE CAMERA, THE SPEAKERS, THE

05:04:26  14  ANTENNA, THE SOFTWARE AND THE OTHERS OF THE 200,000 PATENTED

05:04:31  15  INVENTIONS INSIDE THE PHONE.

05:04:33  16      SO APPLE HAD THE BURDEN TO PROVE THE COMPONENTRY THAT

05:04:38  17  THEY -- THAT APPLE THINKS YOU NEED IN ADDITION TO THE FRONT

05:04:41  18  GLASS FACE TO MAKE IT APPEAR BLACK, IT FAILED TO DO SO.

05:04:46  19      APPLE HAD THE BURDEN TO PROVE WHAT OTHER ARTICLES OF

05:04:49  20  MANUFACTURE, IN COMBINATION WITH THE DISPLAY SCREEN, ARE NEEDED

05:04:52  21  TO MAKE THE GUI APPEAR.  IT FAILED TO DO SO.

05:04:56  22      SO, YOUR HONOR, THERE'S A BIG LEAP FROM DISPLAY SCREEN TO

05:05:00  23  THE WHOLE PHONE.

05:05:00  24          THE COURT:  BUT THERE'S BURDEN SHIFTING.  I DIDN'T

05:05:02  25   PUT THE BURDEN SHIFTING IN THE JURY INSTRUCTIONS BECAUSE I WAS

05:05:06  1    CONCERNED IT MIGHT CONFUSE THE JURY AND MAKE THEM IMPROPERLY

05:05:09  2    SHIFT THE BURDEN FROM APPLE TO SAMSUNG.  BUT THERE IS A BURDEN

05:05:13  3    SHIFTING SUCH THAT ONCE APPLE PRESENTS ITS ARTICLE OF

05:05:18  4    MANUFACTURE, THEN IT'S UP TO SAMSUNG TO PROVE, OR I SHOULD BE

05:05:24  5    CAREFUL AND USE THE RIGHT LANGUAGE FROM MY ORDER.

05:05:29  6         SO ONCE YOU COME BACK WITH, NO, IT'S JUST THE DISPLAY

05:05:32  7    SCREEN OR IT'S JUST THE FRONT GLASS FACE, THEN I THINK YOU DO

05:05:38  8    HAVE SOME -- I'LL JUST LOOK AT MY ORDER SO I DON'T MISSTATE.

05:05:46  9         SO APPLE HAS THE BURDEN OF PERSUASION ON IDENTIFYING THE

05:05:49  10   RELEVANT ARTICLE OF MANUFACTURE AND PROVING THE AMOUNT OF TOTAL

05:05:53  11   PROFIT ON THE SALE OF THAT ARTICLE.  THEY ALSO BEAR THE INITIAL

05:05:57  12   BURDEN OF PRODUCTION ON IDENTIFYING THE RELEVANT ARTICLE OF

05:06:00  13   MANUFACTURE AND PROVING THE AMOUNT OF TOTAL PROFIT ON THE SALE

05:06:03  14   OF THAT ARTICLE.

05:06:05  15        BUT IF THEY'VE SATISFIED THEIR BURDEN OF PRODUCTION ON

05:06:09  16   BOTH OF THESE ISSUES, WHICH I THINK THEY HAVE, THEN THE BURDEN

05:06:12  17   OF PRODUCTION SHIFTS TO THE DEFENDANT TO COME FORWARD WITH

05:06:14  18   EVIDENCE OF AN ALTERNATIVE ARTICLE OF MANUFACTURE AND ANY

05:06:19  19   DEDUCTIBLE EXPENSES.

05:06:21  20        SO I THINK THE BURDEN OF PRODUCTION WOULD BE ON SAMSUNG TO

05:06:27  21   SAY, OUR MUCH MORE LIMITED ARTICLE SATISFIES THE FACTORS -- I

05:06:38  22   JUST -- I DON'T THINK IT WAS APPLE'S BURDEN OF PRODUCTION ON

05:06:43  23   YOUR ARTICLE OF MANUFACTURE.

05:06:45  24        MS. SULLIVAN:  OKAY, YOUR HONOR.  BUT WHAT I'M SAYING

05:06:48  25   HERE, I'M STILL ON -- IF I COULD JUST REMIND YOUR HONOR, THE

05:06:51  1      INSTRUCTIONS -- I WOULD RESPECTFULLY DISAGREE THAT THERE'S A

05:06:54  2      BURDEN SHIFT IN THE CASE IN THE INSTRUCTIONS AS GIVEN.

05:06:56  3            THE COURT:  NO, THERE'S NOT.  I EXCLUDED IT TO YOUR

05:06:59  4      BENEFIT.

05:06:59  5            MS. SULLIVAN:  WHICH WE APPRECIATE IT.

05:07:01  6            THE COURT:  SO SAMSUNG'S BENEFIT, I HAD NO BURDEN

05:07:04  7      SHIFTING.  BUT I HAVE FOUND THAT THERE IS LEGALLY -- THAT THERE

05:07:07  8      IS SHIFTING, BUT I DID NOT INCLUDE ANY BURDEN SHIFTING IN THE

05:07:10  9      JURY INSTRUCTIONS, AND I THINK THAT'S TO SAMSUNG'S BENEFIT.

05:07:12  10     BUT THAT'S NOT TO SAY THAT YOU CAN COME AT TRIAL AND SAY I'M

05:07:15  11     GOING TO IGNORE THAT THERE WAS A PRIOR BURDEN SHIFTING RULING

05:07:18  12     AND NOW SAY IT WAS APPLE'S BURDEN TO PROVE MY COMPONENTS THAT

05:07:24  13     SUPPLEMENT MY ARTICLES OF MANUFACTURE.

05:07:26  14        AND I MIGHT BE MISUNDERSTANDING WHAT YOU ARE ARGUING.

05:07:29  15            MS. SULLIVAN:  YOUR HONOR, WHAT I'M SAYING IS THAT NO

05:07:32  16     REASONABLE JURY COULD FIND THAT THE PRODUCT IS THE ENTIRE PHONE

05:07:35  17     JUST BECAUSE YOU NEED SOME OTHER THINGS TO MAKE THE GUI APPEAR

05:07:39  18     OR TO MAKE THE FACE LOOK BLACK.

05:07:42  19        I'M STICKING TO THEIR CASE IN CHIEF AND THEIR ARGUMENT

05:07:45  20     THAT IT'S THE ENTIRE PHONE, AND I'M SIMPLY SAYING THAT NO

05:07:48  21     REASONABLE JURY COULD FIND THAT BECAUSE YOU NEED SOME OTHER

05:07:51  22     COMPONENTS, THE ARTICLE IS THE ENTIRE PHONE.

05:07:54  23        A REASONABLE JURY COULD FIND ONLY THAT YOU MIGHT NEED SOME

05:07:57  24     ADDITIONAL COMPONENTS LESS THAN THE ENTIRE PHONE, AND THEY

05:08:00  25     FAILED TO PROVE THAT.

05:08:02  1          SO I'M STILL SPEAKING ABOUT THEIR BURDEN ON PROVING THE

05:08:04  2     ENTIRE PHONE.

05:08:05  3          THE COURT:  I SEE.

05:08:06  4          MS. SULLIVAN:  I AGREE WITH, YOUR HONOR, IT WOULD BE

05:08:08  5     A DIFFERENT MATTER IF I WANTED TO HOLD AS A MATTER OF FACT THAT

05:08:11  6     OUR COMPONENTS ARE THE RIGHT ONES, BUT I HAVEN'T GOTTEN THERE

05:08:13  7     YET.  I JUST WANT TO FINISH WHY APPLE -- WE DESERVE JMOL THAT

05:08:17  8     THE ARTICLES ARE NOT THE ENTIRE PHONE, AND I'LL TRY TO FINISH

05:08:20  9     THAT BRIEFLY, YOUR HONOR.

05:08:21  10          I JUST WANT TO ARGUE THAT THE -- TAKING THE FOUR FACTORS

05:08:25  11     TOGETHER, NO REASONABLE JURY COULD FIND THAT THE ARTICLE OF

05:08:27  12     MANUFACTURE THAT FAIRLY EMBODIES THE DESIGNS IS THE ENTIRE

05:08:32  13     PHONE.

05:08:33  14          AND IT'S LEGALLY IRRELEVANT WHETHER THE COMPONENT

05:08:35  15     CONTINUES TO EMBODY THE DESIGN AFTER IT IS REMOVED.

05:08:39  16          SO THAT CONCLUDES THE MOTION ON -- THE MOTION FOR JUDGMENT

05:08:44  17     AS A MATTER OF LAW THAT APPLE IS NOT -- IS NOT ENTITLED TO THE

05:08:48  18     ARTICLES OF MANUFACTURE BEING DETERMINED TO BE THE ENTIRE

05:08:52  19     PHONES.

05:08:53  20          NOW, I WOULD TURN SECOND TO SAMSUNG DOES REQUEST JUDGMENT

05:08:59  21     AS A MATTER OF LAW THAT THE ARTICLES OF MANUFACTURE ARE THE

05:09:01  22     THREE COMPONENTS THAT SAMSUNG HAS IDENTIFIED.

05:09:06  23          AS TO THE D'677, JUST THE RECTANGULAR GLASS FRONT FACE

05:09:10  24     WITH ROUNDED CORNERS.

05:09:11  25          AS TO THE D'087, JUST THE RECTANGULAR FRONT GLASS FACE

1    WITH ROUNDED CORNERS PLUS A BEZEL.

2         AND AS TO THE D'305, JUST ONE SPECIFIC -- I'M SORRY.

3         AS TO THE D'305, JUST THE DISPLAY SCREEN.

4         WE THINK THAT NO REASONABLE JURY COULD DISAGREE THAT THOSE

5    ARE THE ARTICLES OF MANUFACTURE TO WHICH THE PATENTED DESIGNS

6    HAVE BEEN APPLIED FOR SUBSTANTIALLY THE REASONS I'VE ALREADY

7    COVERED, THAT UNDER FACTOR 1, THE CLAIMS ARE ALL LIMITED TO A

8    SCOPE THAT IS, IS NARROW AND CORRESPONDS TO THOSE THREE

9    COMPONENTS.

10        AS TO FACTOR 2, WHEN CONSIDERED PROPERLY IN RELATION TO

11   ALL THE FEATURES OF THE PHONE, NOT JUST VISUAL APPEARANCE,

12   THERE IS NOT ENOUGH PROMINENCE TO -- THEY'RE NOT

13   SUFFICIENTLY -- THE PLACE WHERE -- I'M SORRY.

14        THE PLACE WHERE THE DESIGN APPEARS PROMINENT IS ON THE

15   COMPONENTS WE'VE IDENTIFIED.

16        AS TO CONCEPTUALLY DISTINCT, WE BELIEVE IT'S UNDISPUTED OR

17   CANNOT BE REASONABLY DISPUTED THAT THESE THREE COMPONENTS ARE

18   CONCEPTUALLY DISTINCT FROM THE ENTIRE PHONE.

19        AND AS TO PHYSICAL SEPARABILITY, FOR THE REASONS I'VE

20   ALREADY DISCUSSED, WE THINK THAT NO REASONABLE JURY COULD FAIL

21   TO FIND THAT FACTOR 4 FAVORS SAMSUNG.

22        SO TO SUMMARIZE, WE THINK THAT NO REASONABLE JURY COULD

23   FAIL TO FIND THAT FACTORS 1, 3, AND 4 ARE -- FAVOR SAMSUNG, AND

24   NO REASONABLE JURY PROPERLY CONSIDERING RELATIVE PROMINENCE

25   UNDER FACTOR 2 RELATIVE TO ALL PHONE FEATURES COULD FIND THAT

05:10:48  1    FACTOR 2 FAVORS APPLE'S IDENTIFICATION OF THE ENTIRE PHONES AS

05:10:53  2    THE ARTICLE OF MANUFACTURE.

05:10:54  3        SO FOR THESE REASONS, WE THINK THAT THE ONLY THING A

05:10:59  4    REASONABLE JURY COULD DECIDE, WITH THE UNDISPUTED EVIDENCE,

05:11:03  5    PLUS APPLE'S ADMISSIONS, PLUS THE PHYSICAL EVIDENCE THAT'S BEEN

05:11:07  6    INTRODUCED AT TRIAL AND ADMITTED, THE ONLY CONCLUSION A

05:11:10  7    REASONABLE JURY COULD MAKE IS THAT THE RELEVANT ARTICLES OF

05:11:13  8    MANUFACTURE ARE THE THREE COMPONENTS I LISTED.

05:11:20  9        THIRD, SAMSUNG RESPECTFULLY REQUESTS ENTRY OF JUDGMENT AS

05:11:25  10   A MATTER OF LAW THAT APPLE IS NOT ENTITLED TO ITS CLAIMED

05:11:28  11   $1.07 BILLION FOR PROFIT ON THE ENTIRE PHONES.  NO REASONABLE

05:11:36  12   JURY COULD -- BECAUSE NO REASONABLE JURY COULD FIND FOR APPLE

05:11:39  13   ON THE IDENTITY OF THE ARTICLE OF MANUFACTURE BEING THE ENTIRE

05:11:43  14   PHONES, NO REASONABLE JURY COULD AWARD THAT AMOUNT.

05:11:50  15       WE BELIEVE THAT -- SO FOR -- THIS IS -- THIS ARGUMENT

05:11:55  16   DIRECTLY DEPENDS ON THE FIRST ARGUMENT THAT THEY ARE ENTITLED

05:11:58  17   TO JUDGMENT AS A MATTER OF LAW THAT THE ARTICLES ARE NOT THE

05:12:02  18   ENTIRE PHONES.

05:12:03  19       WE THINK THAT NO REASONABLE JURY COULD AWARD PROFITS TO

05:12:06  20   APPLE UNDER SECTION 289 IN ANY AMOUNT HIGHER THAN $28 MILLION

05:12:13  21   AS TESTIFIED TO BY MR. WAGNER AT TRANSCRIPT 1061 AND IN DX 4536

05:12:21  22   AND 4537, OR, ALTERNATIVELY, NO REASONABLE JURY COULD AWARD

05:12:27  23   SAMSUNG -- SORRY -- COULD AWARD APPLE PROFIT UNDER SECTION 289

05:12:34  24   IN AN AMOUNT EXCEEDING $118 MILLION, THE ALTERNATIVE AMOUNT

05:12:37  25   THAT MR. WAGNER TESTIFIED TO THIS MORNING -- I DON'T HAVE THE

| | |
|---|---|
| 05:12:40 | 1 |

TRANSCRIPT YET -- BUT IT WAS TESTIFIED TO THIS MORNING AT

9:08:00 A.M.

SO WE THINK THAT NO REASONABLE JURY COULD AWARD THE

1.07 BILLION, AND A REASONABLE JURY COULD AWARD NO AMOUNT

GREATER THAN EITHER $28.1 MILLION OR $118 MILLION BECAUSE THERE

IS ABSOLUTELY NO NUMBER IN BETWEEN, THERE'S NO NUMBER IN

BETWEEN 118 AND 1.07 BILLION.

MS. DAVIS RELIED ON THE BALL AND KARE OPINIONS TO ASSUME

THAT THE ARTICLES OF MANUFACTURE ARE ENTIRE PHONES.  THEY CAN'T

BE THE ENTIRE PHONES.

SO THAT MUST BE REJECTED AS A MATTER OF LAW FOR THE

REASONS I'VE ALREADY STATED.

AND APPLE FAILED TO PUT ON ANY EVIDENCE IN ITS CASE OF

PROFIT FROM ANY ARTICLE OF MANUFACTURE OTHER THAN THE ENTIRE

PHONES.  MS. DAVIS ADMITTED THAT AT TRANSCRIPT 826.

SO, RESPECTFULLY, WE THINK THAT THE PROPER AND THE ONLY

MONETARY AWARD UNDER 289 THAT IS SUPPOSED BY THE EVIDENCE THAT

A REASONABLE JURY COULD AWARD IS EITHER 28.1 OR $118 MILLION.

WE GET TO THAT CONCLUSION IN PART BECAUSE WE BELIEVE NO

REASONABLE JURY COULD FIND THAT SAMSUNG DID NOT INCUR THE

OPERATING COSTS THAT MR. WAGNER IDENTIFIED, IN PARTICULAR,

MARKETING COSTS, SALES COSTS, RESEARCH AND DEVELOPMENT COSTS,

AND ADMINISTRATIVE COSTS AND BECAUSE WE BELIEVE THAT NO

REASONABLE JURY COULD FAIL TO FIND A SUFFICIENT NEXUS UNDER THE

LAW TO THE INFRINGING PRODUCTS.

05:14:22  1        MS. DAVIS, FOR EXAMPLE, ADMITTED THAT IN DETERMINING

05:14:25  2    IPHONE PROFITS, APPLE DEDUCTS A PORTION OF SALES, MARKETING,

05:14:31  3    ADVERTISING EXPENSES BASED IN PART ON OVERALL COMPANY RESULTS.

05:14:34  4    THAT'S AT TRANSCRIPT 776 TO 777.

05:14:39  5        AND WE THINK UNDER THE PROPER LAW, YOUR HONOR'S

05:14:42  6    INSTRUCTION ABOUT NEXUS THAT CITE, FOR EXAMPLE, TO SCHNADIG,

05:14:47  7    S-C-H-N-A-D-I-G, VERSUS GAINES, G-A-I-N-E-S, 620 F.2D 1166,

05:14:58  8    AS -- TO SUGGEST THAT WHEN YOU'RE MAKING THIS ACCOUNTING

05:15:01  9    CONCLUSION, YOU ARE ALLOWED TO DEDUCT COSTS, COMMON COSTS

05:15:06  10   WHEREAS HERE THERE WAS EVIDENCE TO SUPPORT THE DEDUCTION.

05:15:08  11       WE THINK THAT THERE IS NO EVIDENCE SUFFICIENT TO SUPPORT

05:15:12  12   FOR A REASONABLE JURY'S CONCLUSION APPLE'S THEORY THAT NONE OF

05:15:16  13   THE MARKETING, SALES, RESEARCH AND DEVELOPMENT AND

05:15:19  14   ADMINISTRATIVE EXPENSES BEAR ANY RELATIONSHIP TO SAMSUNG'S

05:15:22  15   PHONES, OR ANY NEXUS TO SAMSUNG'S PHONES.

05:15:26  16       CLEARLY, SOME OF THOSE EXPENSES ARE RELATED TO THE PHONES,

05:15:29  17   AND MR. WAGNER'S CALCULATION IS THE ONLY AVAILABLE EVIDENCE OF

05:15:33  18   THAT AMOUNT, SO WE WOULD RESPECTFULLY SUGGEST THAT THE ONLY

05:15:36  19   EVIDENCE IN THE RECORD THAT IS ONE -- IS SUCH THAT A REASONABLE

05:15:39  20   JURY COULD RELY ON IT IS MR. WAGNER'S COST DEDUCTION EVIDENCE.

05:15:44  21       WE'D LIKE TO RENEW SAMSUNG'S OBJECTION TO OUR HAVING TO

05:15:48  22   BEAR THE BURDEN ON THAT, THE BURDEN SHIFT ON THAT.  YOUR HONOR

05:15:51  23   KNOWS THAT WE OBJECT TO THAT, I WON'T BELABOR IT HERE.

05:15:55  24       SO FOR ALL THESE REASONS, WE RESPECTFULLY SUGGEST THAT YOU

05:15:59  25   ENTER -- WE RESPECTFULLY REQUEST THAT YOU ENTER JUDGMENT AS A

05:16:04  1    MATTER OF LAW UNDER 50(A) THAT, NUMBER 1, THE ARTICLES OF

05:16:09  2    MANUFACTURE ARE NOT THE ENTIRE PHONES; NUMBER 2, THE ARTICLES

05:16:14  3    OF MANUFACTURE ARE THE THREE COMPONENTS I'VE DESCRIBED GLASS,

05:16:19  4    ROUND CORNERED, RECTANGULAR, FRONT FACE, GLASS ROUND CORNERED

05:16:26  5    RECTANGULAR FRONT FACE WITH BEZEL AND DISPLAY SCREEN; NUMBER 3,

05:16:29  6    WE RESPECTFULLY REQUEST JUDGMENT AS A MATTER OF LAW THAT APPLE

05:16:32  7    IS NOT ENTITLED TO $1.07 BILLION IN PROFIT UNDER SECTION 289;

05:16:38  8    AND, 4, WE RESPECTFULLY REQUEST JUDGMENT AS A MATTER OF LAW

05:16:39  9    UNDER 50(A), THAT APPLE IS ENTITLED TO AN AMOUNT UNDER 689 NOT

05:16:44  10   TO EXCEED EITHER 28.1 MILLION OR 118 UNTIL.

05:16:50  11        THANK YOU, YOUR HONOR.

05:16:51  12        DOES YOUR HONOR HAVE ANY QUESTIONS.

05:16:55  13            THE COURT:  THANK YOU.  I DO HAVE ONE QUESTION.

05:16:57  14        SO I UNDERSTAND ON THE INFRINGEMENT, YOUR POSITION IS

05:17:00  15   THAT, WELL, IT DOESN'T HAVE TO BE -- THE SCREEN DOESN'T HAVE TO

05:17:03  16   BE BLACK ALL THE TIME AND THE ICONS DON'T HAVE TO BE ON THE

05:17:06  17   SCREEN ALL THE TIME TO INFRINGE.

05:17:10  18        BUT DO YOU THINK THAT SAMSUNG'S ARTICLES OF MANUFACTURE

05:17:15  19   ALONE INFRINGE THOSE TWO DESIGN PATENTS?

05:17:20  20            MS. SULLIVAN:  YOUR HONOR, IT -- A DESIGN PATENT MAY

05:17:27  21    BE INFRINGED ONLY FOR PART OF THE TIME THAT A PRODUCT IS BEING

05:17:31  22    OPERATED.  SO -- AND YOUR HONOR KNOWS THAT WE'VE CITED BEFORE

05:17:36  23    THE CASE IN IN RE: HRUBY, H-R-U-B-Y, THAT'S THE WATER FOUNTAIN

05:17:41  24    CASE, 373 F.2D 997, C.C.P.A. 1962.  THAT'S WHERE THE ARTICLE OF

05:17:49  25    MANUFACTURE WAS THE FOUNTAIN THAT CREATED A WATER DISPLAY, EVEN

| | | |
|---|---|---|
| 05:17:52 | 1 | THOUGH THE FOUNTAIN MECHANIC -- THE FOUNTAIN MECHANISM WAS |
| 05:17:57 | 2 | NEEDED, OTHER PARTS WERE NEEDED TO CREATE THE WATER DISPLAY. |
| 05:18:00 | 3 | SO WHAT WAS INFRINGING WAS THE DESIGN AS APPLIED TO THE |
| 05:18:03 | 4 | ARTICLE OF MANUFACTURE CALLED THE WATER FOUNTAIN, OR CONSISTING |
| 05:18:06 | 5 | OF THE WATER FOUNTAIN, AND IT DOESN'T MATTER FOR INFRINGEMENT |
| 05:18:09 | 6 | PURPOSES, AND IT DIDN'T MATTER FOR DESIGN PATENT PROFIT AWARDS |
| 05:18:13 | 7 | PURPOSES THAT YOU NEEDED SOME OTHER PARTS, OTHER COMPONENTRY TO |
| 05:18:16 | 8 | MAKE THE DESIGN APPEAR THROUGH THE FOUNDATION. |
| 05:18:18 | 9 | AND WE THINK THAT'S CORRECTLY ON POINT FOR D'305 BECAUSE, |
| 05:18:22 | 10 | YOU KNOW, WE MAY INFRINGE FOR THE MOMENT THAT THE DESIGN |
| 05:18:27 | 11 | APPEAR, BUT THAT DOESN'T MEAN THAT THE ARTICLE IS EVERYTHING |
| 05:18:29 | 12 | ELSE NEEDED TO CREATE -- TO MAKE THE DESIGN APPEAR. |
| 05:18:33 | 13 | AND HRUBY, THE WATER FOUNTAIN POINT, IS KIND OF A |
| 05:18:38 | 14 | PRE-DIGITAL VERSION OF OUR '305 ISSUE. |
| 05:18:41 | 15 | THE COURT:  UM-HUM.  WHAT IS THE CITE ON THAT CASE |
| 05:18:43 | 16 | AGAIN, PLEASE? |
| 05:18:44 | 17 | MS. SULLIVAN:  YES, YOUR HONOR.  IT'S 373 F.2D 997. |
| 05:18:47 | 18 | THE COURT:  OKAY.  THANK YOU. |
| 05:18:50 | 19 | MR. SELWYN:  YOUR HONOR, EVEN IF YOU WERE TO ASSUME |
| 05:18:51 | 20 | THAT THERE'S SOME LEGALLY CORRECT POSITION IN WHAT MS. SULLIVAN |
| 05:18:55 | 21 | HAS JUST STATED, THE PROBLEM IS THE FRONT GLASS AND THE SCREEN |
| 05:19:01 | 22 | NEVER, NEVER EMBODY THE PATENTED DESIGNS.  THAT IS THE EVIDENCE |
| 05:19:04 | 23 | FROM TRIAL. |
| 05:19:06 | 24 | THE SCREEN BY ITSELF CAN NEVER DISPLAY THE COLORFUL ARRAY |
| 05:19:10 | 25 | OF ICONS.  THE FRONT GLASS IS ALWAYS SEES THROUGH, THAT'S WHAT |

05:19:15  1    THEY POINTED TO, THAT WAS THE SELECTION THEY MADE AS THE

05:19:18  2    ARTICLE OF MANUFACTURE.  THAT CAN NEVER, BY ITSELF, BE BLACK.

05:19:22  3         SO THIS ARGUMENT THAT IT'S OKAY BECAUSE SOME OF THE TIME

05:19:25  4    IT MIGHT INFRINGE IF IT'S CONNECTED TO SOMETHING ELSE, THAT'S

05:19:29  5    AN ATTEMPT TO CHANGE WHAT THE EVIDENCE WAS.

05:19:32  6         THE ONLY EVIDENCE THAT WAS PRESENTED, AND THE CONTENTION

05:19:37  7    THAT SAMSUNG MADE, WAS THAT THE ARTICLE OF MANUFACTURE FOR THE

05:19:39  8    D'677 WAS THE FRONT GLASS AND THE ARTICLE OF MANUFACTURE FOR

05:19:44  9    THE D'305 WAS THE SCREEN, THE DISPLAY SCREEN BY ITSELF.

05:19:50  10        THAT IS THE SELECTION THEY MADE.  THAT IS THEIR TACTICAL

05:19:53  11   CHOICE.

05:19:54  12        NEITHER OF THOSE EMBODY THE PATENTED DESIGN.  THERE CAN BE

05:19:57  13   NO DISPUTE ABOUT THAT.

05:19:59  14        AND I WOULD -- YOUR HONOR, I WOULD RESPECTFULLY JUST MAKE

05:20:02  15   THREE OTHER POINTS, AND I KNOW THE HOUR IS LATE.

05:20:05  16        WITH RESPECT TO INSTRUCT 29, I THINK IF YOUR HONOR LOOKS

05:20:08  17   BACK AT THE HISTORY OF THE PROPOSALS ON THIS INSTRUCTION, YOU

05:20:14  18   WOULD FIND THAT IT WAS ACTUALLY SAMSUNG WHO PROPOSED THE

05:20:17  19   LANGUAGE ABOUT "TO IDENTIFY THE ARTICLES OF MANUFACTURE TO

05:20:21  20   WHICH SAMSUNG APPLIED APPLE AS PATENTED DESIGN," AND YOU WOULD

05:20:25  21   FIND THAT IT WAS SAMSUNG THAT PROPOSED THE INSTRUCTION SAYING

05:20:27  22   "THE OBJECTIVE OF THE FOUR FACTORS IS TO DETERMINE THE ARTICLE

05:20:31  23   OF MANUFACTURE THAT MOST FAIRLY EMBODIES THE APPROPRIATION OF

05:20:33  24   THE CLAIMED DESIGNS."

05:20:35  25        SO IT'S A LITTLE SURPRISING NOW TO HEAR SAMSUNG TAKING THE

05:20:39  1    POSITION, AS I UNDERSTAND IT, THAT, IN FACT, THE ARTICLE OF

05:20:42  2    MANUFACTURE DOESN'T NEED TO EMBODY THE PATENTED DESIGN.

05:20:46  3         THE SECOND POINT, MS. SULLIVAN SAID THAT APPLE DIDN'T

05:20:56  4    PROVE EITHER THAT SOMETHING LESS THAN THE ENTIRE PHONE EMBODIED

05:21:02  5    THE PATENTED DESIGNS OR PROVE THE MINIMUM COMPONENTS NECESSARY

05:21:05  6    TO SHOW THE PATENTED DESIGNS.

05:21:07  7         THAT, OF COURSE, WAS NOT APPLE'S BURDEN, NOR WAS IT

05:21:10  8    APPLE'S POSITION.  APPLE'S POSITION, OF COURSE, IS THAT THE

05:21:14  9    DESIGNS ARE APPLIED TO THE PHONES AS A WHOLE, AND THAT'S WHAT

05:21:17  10   WE PROVED.

05:21:18  11        THE NOTION THAT WE HAD TO THEN PROVE SOMETHING ELSE AS

05:21:23  12   SOMETHING LESS THAN THE PHONE WAS PATENTED DESIGN IS COUNTER TO

05:21:26  13   WHAT OUR POSITION IS AND NOT SOMETHING THAT THE LAW IMPOSES.

05:21:31  14        THE THIRD POINT, JUST TO COME BACK TO WHAT SAMSUNG DID AT

05:21:36  15   THE CHARGE CONFERENCE OF TRYING TO PROPOSE A CURATIVE, A,

05:21:39  16   QUOTE, CURATIVE INSTRUCTION WITH RESPECT TO INSTRUCTION 29.  I

05:21:45  17   WOULD RESPECTFULLY SUGGEST THAT THE REASON FOR THAT PROPOSED

05:21:47  18   CURATIVE INSTRUCTION IS BECAUSE SAMSUNG FAILED TO PROVE THAT

05:21:51  19   WHAT IT WAS SHOWING AND CONTENDING TO BE ITS ARTICLE OF

05:21:56  20   MANUFACTURE EMBODIED THE PATENTED DESIGN.

05:21:58  21        SO HAVING PROPOSED THAT AS THE LANGUAGE FOR INSTRUCTION

05:22:02  22   29, IT WAS THEN TRYING TO REMOVE IT FROM THE INSTRUCTION.

05:22:05  23   THERE'S SIMPLY BEEN A FAILURE OF PROOF ON SAMSUNG'S PART WITH

05:22:09  24   RESPECT TO THOSE PATENTS.

05:22:14  25        MS. SULLIVAN:  SO, YOUR HONOR, TWO RESPONSES.

05:22:17   1          ONE, WE -- MR. SELWYN HAS QUOTED PART OF OUR PROPOSED

05:22:22   2   INSTRUCTION, BUT IF YOU READ IT IN ITS ENTIRETY, WE PROPOSED

05:22:26   3   OTHER LANGUAGE ABOUT NOT OVERCOMPENSATING FOR THE ARTICLE

05:22:32   4   RELATIVE TO THE DESIGN.

05:22:33   5          AND YOU DIDN'T TAKE THAT LANGUAGE, SO I DON'T THINK THAT

05:22:37   6   OUR SUGGESTION ON PART OF A PARAGRAPH THAT WASN'T ADOPTED CAN

05:22:42   7   BE USED AGAINST US.

05:22:43   8          I THINK MORE IMPORTANT, YOUR HONOR, YOU'RE WRESTLING WITH

05:22:47   9   A VERY IMPORTANT, WHICH IS WHAT IS THE RELATIONSHIP BETWEEN

05:22:49   10  INFRINGEMENT ON THE ONE HAND AND THE ARTICLE FOR DAMAGES

05:22:52   11  PURPOSES ON THE OTHER.

05:22:53   12         AND IT'S A NEW AREA OF LAW, SO I'M GRATEFUL TO YOUR HONOR

05:22:56   13  FOR THINKING ABOUT IT SO, SO PRECISELY.  AND I THINK THE BEST

05:23:00   14  WAY I CAN TRY TO ANSWER THIS QUESTION THAT YOU'VE ASKED IS TO

05:23:03   15  SAY THAT TO INFRINGE, WE HAVE TO HAVE A PRODUCT THAT PRACTICES

05:23:10   16  THE DESIGN.

05:23:12   17         AND IT MAY BE THAT WE PRACTICE THE DESIGN AS IN THE WATER

05:23:16   18  FOUNTAIN, USING SEVERAL PARTS.  BUT THEN WHEN WE GET TO THE

05:23:20   19  DAMAGES STAGE, WE ASK A DIFFERENT QUESTION.  WE ASK, UNDER

05:23:24   20  SECTION 289, WHAT IS THE COMPONENT OF THE PHONE, AND IT MAY BE

05:23:32   21  THE TOTAL PHONE, BUT WHAT IS THE PRODUCT OR COMPONENT TO WHICH

05:23:35   22  THE DESIGN HAS BEEN APPLIED?

05:23:38   23         NOW, EVEN IF I TAKE YOUR HONOR'S LANGUAGE THAT

05:23:42   24  MR. SELWYN --

05:23:42   25              THE COURT:  BUT YOU WON.  YOU WON AT THE SUPREME

05:23:45  1    COURT SAYING IT'S NOT THE PRODUCT, IT'S ALL ARTICLE OF

05:23:47  2    MANUFACTURE.

05:23:47  3             MS. SULLIVAN:  EXACTLY, YOUR HONOR.

05:23:49  4             THE COURT:  AND IF YOU LOOK AT 289, IT ONLY SAYS

05:23:52  5    ARTICLE OF MANUFACTURE, AND IT SAYS THE ARTICLE OF MANUFACTURE

05:23:54  6    IS WHAT HAS TO HAVE BEEN SOLD AND WHAT HAS TO HAVE THE PATENTED

05:23:58  7    DESIGN APPLIED TO.

05:24:00  8        SO IT NOW SEEMS SOMEWHAT INCONSISTENT, AFTER HAVING WON TO

05:24:05  9    SAY, NOPE, IT'S NOT THE PRODUCT, IT'S THE ARTICLE OF

05:24:08  10   MANUFACTURE WHICH CAN BE SOMETHING MUCH LESS THAN THE PRODUCT

05:24:10  11   AND THEN SAYING, OH, BUT THE ARTICLE OF MANUFACTURE DOESN'T

05:24:12  12   HAVE TO INFRINGE, IT DOESN'T HAVE TO EMBODY THE PATENT --

05:24:15  13            MS. SULLIVAN:  YEAH.

05:24:16  14            THE COURT:  -- APPLIES THE PATENTED DESIGN TO IT JUST

05:24:19  15   MEANS IT'S A SURFACE TO WHICH THE PATENTED DESIGN CAN BE

05:24:22  16   PROJECTED OR APPEAR.

05:24:29  17        IT JUST SEEMS IN TENSION.

05:24:31  18        BUT I'M GOING TO DENY BOTH PARTIES' RULE 50(A) MOTIONS.

05:24:36  19   RULE 50(A) REQUIRES THAT IF A PARTY HAS BEEN FULLY HEARD ON AN

05:24:42  20   ISSUE DURING A JURY TRIAL AND THE COURT FINDS THAT A REASONABLE

05:24:45  21   JURY WOULD NOT HAVE A LEGALLY SUFFICIENT EVIDENTIARY BASIS TO

05:24:48  22   FIND FOR THE PARTY ON THAT ISSUE, THE COURT MAY RESOLVE THE

05:24:52  23   ISSUE AGAINST THE PARTY AND GRANT A MOTION FOR JUDGMENT AS A

05:24:56  24   MATTER OF LAW AGAINST THE PARTY ON A CLAIM OR DEFENSE THAT,

05:24:58  25   UNDER THE CONTROLLING LAW, CAN BE MAINTAINED OR DEFEATED ONLY

05:25:01  1    WITH A FAVORABLE FINDING ON THAT ISSUE, AND I'M GOING TO DENY

05:25:04  2    ALL PARTIES' RULE 50(A) MOTIONS ON ALL THREE OF THE ISSUES THAT

05:25:10  3    EACH OF YOU MOVED FOR RELIEF ON.

05:25:15  4         OKAY.  ANYTHING ELSE?

05:25:16  5              MS. SULLIVAN:  THANK YOU, YOUR HONOR.

05:25:17  6              THE COURT:  OKAY.  THANK YOU VERY MUCH.

05:25:18  7              MR. SELWYN:  THANK YOU, YOUR HONOR.

05:25:19  8              THE COURT:  OKAY.  THANK YOU.

05:25:21  9              THE CLERK:  COURT'S ADJOURNED.

05:25:24  10             MS. MAROULIS:  YOUR HONOR, WE JUST WANTED TO THANK

05:25:27  11   THE COURT AND ITS STAFF ON BEHALF OF ALL THE PARTIES, BECAUSE

05:25:31  12   WE MOVED RIGHT INTO THE MOTION, AND WE TYPICALLY THANK THE

05:25:34  13   COURT.

05:25:35  14             THE COURT:  THANK YOU ALL.  THANK YOU VERY MUCH FOR

05:25:37  15   ALL OF YOUR HARD WORK AND PATIENCE.

05:25:39  16             MS. SULLIVAN:  THANK YOU, YOUR HONOR.

05:25:39  17             THE COURT:  AND THANK YOU.

05:25:41  18             MR. SELWYN:  THANK YOU, YOUR HONOR.

05:25:42  19             THE COURT:  OKAY.

05:25:48  20        (THE EVENING RECESS WAS TAKEN AT 5:25 P.M.)

          21

          22

          23

          24

          25

1

2

3                        CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16                         IRENE RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8076
17

18

19                         LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
20

21                         DATED:  MAY 18, 2018

22

23

24

25