QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and Samsung
Telecommunications America, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 11-cv-01846-LHK<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, AND/OR REMITTITUR PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50 AND 59**<br><br>**Date:** July 26, 2018<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 8, 4th Floor<br>**Judge:** Hon. Lucy H. Koh |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung")[1] shall and hereby do move the Court for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), renewing Samsung's prior request pursuant to Fed. R. Civ. P. 50(a), and alternatively for a new trial and/or remittitur pursuant to Fed. R. Civ. P. 59, as to each and every claim and issue on which Apple prevailed before the jury, as more fully set forth below.[2]

This motion for judgment as a matter of law is made on the grounds that no reasonable jury could have found that any of Apple's asserted design patents was applied to Samsung's entire accused smartphones; that no reasonable jury could have failed to find that Apple's D'305 patent was applied only to the smartphones' display screens; that no reasonable jury could have failed to find that Apple's D'677 patent was applied only to the smartphones' glass front faces; that no reasonable jury could have failed to find that Apple's D'087 patent was applied only to the smartphones' glass front faces with bezels; that no reasonable jury could have failed to adopt Samsung's proffered calculations of the proportion of its profits attributable to the above-identified component articles of manufacture; that no reasonable jury could have failed to find that Samsung's operating expenses (*i.e.*, sales, marketing, general and administrative (G&A), and research and development (R&D) costs) were reasonably allocated to the infringing products and therefore deductible in determining its "total profit" under 35 U.S.C. § 289; and that no reasonable jury could have determined that Samsung's "total profit" exceeded $28.085 million (or alternative calculations set forth herein should the Court grant this motion only in part). The motion for a new trial and/or remittitur is made on the grounds that the jury's verdict is excessive and against

---

[1]   Effective January 1, 2015, Samsung Telecommunications America ("STA") merged with and into Samsung Electronics America, and therefore STA no longer exists as a separate corporate entity.

[2]   Samsung is not hereby moving for relief with respect to the jury's damages awards regarding Apple's utility patent numbers 7,469,381 and 7,864,163. Accordingly, the references herein to the jury's damages awards refer to the awards for infringement of Apple's design patents.

1   the weight of the evidence on each and every issue identified above, and that the evidence

2   supports a verdict of no more than $28.085 million (or alternative calculations set forth herein

3   should the Court grant this motion only in part).

4        This motion is based on this notice of motion; the accompanying memorandum of points

5   and authorities; the accompanying declaration of Michael Wagner; the records of this Court, the

6   U.S. Court of Appeals for the Federal Circuit, and the U.S. Supreme Court; and such other written

7   or oral argument as may be presented at or before the time this motion is taken under submission

8   by the Court.

9                                **RELIEF REQUESTED**

10       Samsung respectfully requests that the Court enter judgment as a matter of law that:

11       i.    Apple's D'305 patent was not applied to Samsung's entire accused smartphones;

12       ii.   Apple's D'677 patent was not applied to Samsung's entire accused smartphones;

13       iii.  Apple's D'087 patent was not applied to Samsung's entire accused smartphones;

14       iv.   Apple's D'305 patent was applied only to the smartphones' display screens;

15       v.    Apple's D'677 patent was applied only to the smartphones' glass front faces;

16       vi.   Apple's D'087 patent was applied only to the smartphones' glass front faces with

17             bezels;

18       vii.  the proportions of Samsung's profits attributable to the above-identified

19             component articles of manufacture are as calculated by Samsung's expert Mr.

20             Wagner;

21       viii. Samsung's sales, marketing, G&A, and R&D costs are deductible in calculating

22             Samsung's "total profit" under 35 U.S.C. § 289; and

23       ix.   Samsung's "total profit" was no more than $28.085 million (or alternative

24             calculations set forth herein should the Court grant this motion only in part).

25       In the alternative, Samsung respectfully requests that the Court grant a new trial, or new

26   trial conditioned on Apple's rejection of a remittitur to $28.085 million (or alternative calculations

27   set forth herein should the Court grant this motion only in part).

28       Additionally, Samsung respectfully requests that the Court rule that the jury:

a.   found that Apple's D'305 patent was applied to Samsung's entire phones;

b.   found that Apple's D'677 patent was applied to the display assemblies of Samsung's phones;

c.   found that the proportions of Samsung's profits attributable to its display assemblies were as calculated by Samsung's expert Mr. Wagner; and

d.   did not deduct any of Samsung's sales, marketing, G&A, and R&D costs in calculating its "total profit" under 35 U.S.C. § 289.

DATED:  June 7, 2018                    QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By  /s/ Victoria F. Maroulis
                                            John B. Quinn
                                            Kathleen M. Sullivan
                                            William C. Price
                                            Michael T. Zeller
                                            Kevin P.B. Johnson
                                            Victoria F. Maroulis

                                            Attorneys for SAMSUNG ELECTRONICS CO.,
                                            LTD., SAMSUNG ELECTRONICS AMERICA,
                                            INC., and SAMSUNG
                                            TELECOMMUNICATIONS AMERICA, LLC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

STATEMENT OF FACTS................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

I.      SAMSUNG IS ENTITLED TO JMOL ON THE RELEVANT AOMS ................................ 5

     A.      Apple's Designs Were Not Applied To The Entire Phones As A Matter Of Law ..................................................................................................................... 5

     B.      No Reasonable Jury Could Find Under The Court's Four-Factor Test That The Designs Were Applied To Any Article Of Manufacture Other Than The Glass Front Face, Glass Front Face With Bezel, And Display Screen ...................... 8

           1.      Phones Found To Infringe Only The D'305 Patent ......................... 8

           2.      Phones Found To Infringe Only The D'677 Patent ....................... 12

           3.      Phones Found To Infringe The D'305 And D'677 Patents ............................ 15

           4.      Phones Found To Infringe The D'305, D'677, And D'087 Patents............... 16

     C.      No Reasonable Jury Could Find Under The Correct Two-Factor Test That The Designs Were Applied To Any Article Of Manufacture Other Than Those That Samsung Identified ................................................................................. 18

II.      SAMSUNG IS ENTITLED TO JMOL ON THE PERCENTAGES OF ITS ENTIRE-PHONE PROFITS THAT ARE ATTRIBUTABLE TO ITS COMPONENT AOMS ................................................................................................. 18

III.      SAMSUNG IS ENTITLED TO JMOL ON THE AMOUNT OF DEDUCTIBLE OPERATING EXPENSES ................................................................................. 19

     A.      Reasonably Allocated Operating Expenses Are Deductible Under § 289 As A Matter Of Law ....................................................................................... 19

     B.      No Reasonable Jury Could Find That Samsung's Expenses Were Not Reasonably Allocated To The Infringing Phones ....................................... 21

IV.      SAMSUNG IS ENTITLED TO JMOL ON THE AMOUNT OF DESIGN-PATENT DAMAGES OR AT MINIMUM TO REMITTITUR OR A NEW TRIAL ......... 23

     A.      The Record Lacks Sufficient Evidence To Support The Damages Verdict ............... 23

     B.      The Court Should At Minimum Grant A New Trial And/Or Remittitur ................... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bergstrom v. Sears, Roebuck & Co.*,
    496 F. Supp. 476 (D. Minn. 1980) ................................................................................ 20

*Bush & Lane Piano Co. v. Becker Bros.*,
    222 F. 902 (2d Cir. 1915) ............................................................................................. 6

*Bush & Lane Piano Co. v. Becker Bros.*,
    234 F. 79 (2d Cir. 1916) .......................................................................................... 10, 14

*Callicrate v. Wadsworth Mfg., Inc.*,
    427 F.3d 1361 (Fed. Cir. 2005) ..................................................................................... 4

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
    803 F.3d 620 (Fed. Cir. 2015) ..................................................................................... 19

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ....................................................................................... 8

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
    762 F.3d 829 (9th Cir. 2014) ....................................................................................... 25

*Fisher v. City of San Jose*,
    558 F.3d 1069 (9th Cir. 2009) .................................................................................. 5, 23

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ....................................................................................... 20

*Gillette v. Delmore*,
    979 F.2d 1342 (9th Cir. 1992) ....................................................................................... 4

*Gorham Mfg. Co. v. White*,
    81 U.S. 511 (1871) ......................................................................................................... 6

*Hamil Am. Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999) .......................................................................................... 20

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ......................................................................................... 2

*In re Hruby*,
    373 F.2d 997 (C.C.P.A. 1967) ....................................................................... 6, 7, 8, 12, 15

*In re Stevens*,
    173 F.2d 1015 (C.C.P.A. 1949) ..................................................................................... 6

*In re Zahn*,
    617 F.2d 261 (C.C.P.A. 1980) ......................................................................... 6, 12, 16

*Lakeside-Scott v. Multnomah Cty.*,
  556 F.3d 797 (9th Cir. 2009) ................................................................ 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ................................................ 2, 19, 24

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ................................................................................ 8

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) .............................................................. 25

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998) .......................................................... 20

*Oracle Am., Inc. v. Google Inc.*,
  2012 WL 4017808 (N.D. Cal. Apr. 10, 2012) .................................... 20

*Oracle Corp. v. SAP AG*,
  65 F.3d 1081 (9th Cir. 2014) .............................................................. 25

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
  739 F.3d 694 (Fed. Cir. 2014) ................................................ 9, 12, 16

*Rattray v. City of National City*,
  51 F.3d 793 (9th Cir. 1994) ................................................................ 25

*Samsung Elecs. Co. v. Apple Inc.*,
  137 S. Ct. 429 (2016) ..................................... 1, 5, 6, 12, 13, 15, 18

*Schnadig Corp. v. Gaines Manufacturing Co.*,
  620 F.2d 1166 (6th Cir. 1980) ............................................................ 20

*Sunbeam Products, Inc. v. Wing Shing Products (BVI) Ltd.*,
  311 B.R. 378 (S.D.N.Y. 2004) ............................................................ 20

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
  612 F.3d 1365 (Fed. Cir. 2010) ............................................................ 2

*Tremaine v. Hitchcock & Co.*,
  90 U.S. 518 (1874) .............................................................................. 20

*Untermeyer v. Freund*,
  50 F. 77 (C.C.S.D.N.Y. 1892), *aff'd*, 58 F. 205 (2d Cir. 1893) .......... 6

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) .............................................................. 25

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010) .......................................................... 25

*Young v Grand Rapids Refrigerator Co.*,
  268 F 966 (6th Cir. 1920) .................................................................... 6

### Statutes and Rules

35 U.S.C. § 271 ................................................................................................................ 7

35 U.S.C. § 289 ........................................................................................................ passim

Fed. R. Civ. P. 50(a) ........................................................................................................ 1

Fed. R. Civ. P. 50(b) .................................................................................................... 1, 4

Fed. R. Civ. P. 59 .......................................................................................................... 25

### Other Authorities

MPEP § 1504.01(a) .......................................................................................................... 7

H.R. Rep. No. 49-1966 .................................................................................................. 19

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 50(b), Samsung renews its Fed. R. Civ. P. 50(a) motion for judgment as a matter of law ("JMOL"), *see* Tr. 1348:12-1356:25.  Samsung respectfully requests that the total profit award be reduced as a matter of law to $28.085 million to reflect that the relevant articles of manufacture ("AOMs") are the glass front face, glass front face with bezel, and display screen of Samsung's phones (not the entire phones) and to deduct operating costs, or in the alternative reduced as a matter of law to the other amounts as set forth in Part IV below if the Court declines to adopt Samsung's position in full.  Alternatively, pursuant to Fed. R. Civ. P. 59, Samsung requests remittitur to those same amounts or a new trial.

## STATEMENT OF FACTS

At step one of the Supreme Court's § 289 framework—"identify the 'article of manufacture' to which the infringed design has been applied," *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016)—Apple sought to prove that the relevant AOMs for each asserted design patent were Samsung's entire smartphones.  Samsung rebutted Apple's position by introducing evidence that the patented designs were applied only to components of the phones: the glass front faces (D'677), glass front faces with bezels (D'087) and display screens (D'305). Apple offered no alternative AOM evidence of its own, resting its case on its entire-phone theory.

At step two—"calculate the infringer's total profit made on that article of manufacture," *Samsung*, 137 S. Ct. at 434—Apple  asserted that Samsung's total profit was $1,067,128,207.  Tr. PX25K.4.  Apple calculated that amount by subtracting Samsung's cost of goods sold from its total revenue, making no deduction for operating expenses.  *See* Tr. 825:22-826:3 (Davis assumed entire phone was AOM); Tr. 737:16-19, 739:12-15, 770:16-24, 826:19-22 (Davis; no deduction for operating expenses); PX25K.4.[3]

Samsung introduced evidence that the total profit from the relevant AOMs was $28.085 million.  Tr. 1060:17-1061:1 (Wagner); DX 4537.002.  Samsung's expert Wagner testified that he

---

[3]   Because of differences in notice dates, Apple sought total profit only based on the D'677 patent for the period April 15, 2011 through June 15, 2011.  Apple sought total profit for units found to infringe both the D'305 and D'677 patents for the period June 16, 2011 to June 30, 2012. *See* PX25L.3.  Each unit found to infringe the D'087 patent also infringed the D'305 patent, so Apple did not separately seek profits for the D'087 patent. *See* Tr. 708:2-8 (Davis).

derived this figure by (1) determining the amount of Samsung's profit on each phone by deducting costs of goods sold and operating expenses with a nexus to the adjudicated products, and then (2) multiplying that entire-phone profit figure by the percentage of each phone's total material costs that were attributable to each relevant AOM (the glass front face (D'677), glass front face with bezel (D'087), and display screen (D'305)).  Tr. 1031:3-1049:6 (Wagner; cost deduction); 1055:1-1061:1 (Wagner; component cost percentages); DX4536.004; DX4537.002-003.

The jury awarded Apple $533,316,606 in Samsung's profits, or 49.98% of the total amount that Apple had sought.  Dkt. 3806.  Over Samsung's objection (Dkt. 3720), the Court used a verdict form providing for a single damages amount for each product without identifying the relevant AOMs, as Samsung had requested (Dkt. 3671-2).  In this circumstance, it is appropriate to "work[] the math backwards" to determine the basis for the awards, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-37 (Fed. Cir. 2009); *see Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1001-03 (9th Cir. 2006), as this Court recognized in its 2013 order granting a partial retrial, Dkt. 2271, at 8.

Working the math backwards by comparing the jury's verdicts with the experts' damages calculations reveals the following:  *First*, because the jury awarded 100% of Apple's profit calculation for each unit found to infringe the D'305 patent, it must have found that the D'305 patent was applied to Samsung's entire phones.  *Second*, the jury must have found that the D'677 patent was applied to the display assemblies in Samsung's phones because, for each unit found to infringe only the D'677 patent, awarded a percentage of Apple's profit calculation that *precisely* reflected Wagner's calculation of the display assembly's cost as a percentage of each phone's total material cost.  *Third*, the jury did not deduct *any* of Samsung's operating costs for *any* of the phones.  *Fourth*, because each unit found to infringe the D'087 patent also infringed the D'305 patent, the jury (heeding the double recovery bar) must not have awarded any amounts for the D'087 patent separate from the D'305 patent.  The jury's awards are analyzed in the following chart (*see also* Wagner Decl. ¶¶ 11-21), which shows Apple's per-patent profit calculations (PX25.L3), Mr. Wagner's cost percentages for the display assembly (DX4536.002), and the jury's verdict (Dkt. 3761):

| Product | Design Patent(s)[4] | Apple Entire Phone Profit Calculations | Display Assembly Cost[5] | Jury's Award | Basis of Jury's Award |
|---|---|---|---|---|---|
| Captivate | D'305 only | $16,618,320 | -- | **$16,618,320** | **100% of Apple's request** |
| Continuum | D'305 only | $5,149,345 | -- | **$5,149,345** | **100% of Apple's request** |
| Droid Charge | D'305 only | $54,839,113 | -- | **$54,839,113** | **100% of Apple's request** |
| Epic 4G | D'305 only | $43,486,055 | -- | **$43,486,055** | **100% of Apple's request** |
| Gem | D'305 only | $4,434,398 | -- | **$4,434,398** | **100% of Apple's request** |
| Indulge | D'305 only | $15,681,286 | -- | **$15,681,286** | **100% of Apple's request** |
| Galaxy S II (AT&T) | D'677 only | $101,235,891 | 26.6% | **$26,928,747** | **26.6% of Apple's request** |
| Galaxy S II (Epic 4G Touch) | D'677 only | $250,817,469 | 25.3% | **$63,456,820** | **25.3% of Apple's request** |
| Galaxy S II (Skyrocket) | D'677 only | $80,683,895 | 24.9% | **$20,090,290** | **24.9% of Apple's request** |
| Galaxy S II (T-Mobile) | D'677 only | $209,479,270 | 25.8% | **$54,045,652** | **25.8% of Apple's request** |
| Fascinate | D'305/D'677 D'677-only period | $4,835,386 $13,865,764 | -- 29.2% | $4,835,386 $4,048,803 **$8,884,189** | **100% of Apple's D'305 request + 29.2% of Apple's D'677-only request** |
| Galaxy S Showcase (i500) | D'305/D'677 D'677-only period | $28,466,835 $8,070,867 | -- 27.2% | $28,466,835 $2,195,276 **$30,662,111** | **100% of Apple's D'305 request +** |

⁴    Although the Fascinate, Galaxy S 4G, Galaxy S Showcase (i500), Infuse 4G, Mesmerize, and Vibrant *products* were found to infringe multiple patents, some individual *units* of those phones infringe only the D'677, because of its earlier notice date. Wagner Decl. ¶ 15.
⁵    The display assembly cost percentages vary slightly due to differences in material costs between the particular phones and their components. Wagner Decl. ¶ 14.

| Product | Design Patent(s)[4] | Apple Entire Phone Profit Calculations | Display Assembly Cost[5] | Jury's Award | Basis of Jury's Award |
|---|---|---|---|---|---|
| | | | | | 27.2% of Apple's D'677-only request |
| Infuse 4G | D'305/D'677 D'677-only period | $69,223,026 $21,820,630 | -- 32.0% | $69,223,026 $6,982,602 **$76,205,628** | **100% of Apple's D'305 request + 32% of Apple's D'677-only request** |
| Mesmerize | D'305/D'677 D'677-only period | $30,560,743 $21,714,541 | -- 29.2% | $30,560,743 $6,340,646 **$36,901,389** | **100% of Apple's D'305 request + 29.2% of Apple's D'677-only request** |
| Galaxy S 4G | D'305/D'677/D'087 D'677-only period | $71,640,437 $14,476,115 | -- 29.6% | $71,640,437 $4,284,930 **$75,925,367** | **100% of Apple's D'305 request + 29.6% of Apple's D'677-only request** |
| Vibrant | D'305/D'677/D'087 D'677-only period | $0 $28,821 | -- 27.4% | $0 $7,897 **$7,897** | **27.4% of Apple's D'677-only request** |

## ARGUMENT

Under Fed. R. Civ. P. 50(b), JMOL is required where a plaintiff fails to present a legally sufficient basis for a reasonable jury to rule in its favor, *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009), *i.e.*, where the record does not contain "relevant evidence that a reasonable mind would accept as adequate to support a conclusion" for the plaintiff on a given issue, *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). "[A] reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Lakeside-Scott*, 556 F.3d at 802-03. The Court must "apply the law as it should be, rather than the law as it was

1   read to the jury, even if the [moving] party did not object to the jury instructions." *Fisher v. City*

2   *of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009) (en banc) (quotation omitted).

3        Calculating the amount of Samsung's "total profit" under § 289 requires determination of

4   two issues:  the identity of the relevant AOMs and the total profit from each relevant AOM.

5   *Samsung*, 137 S. Ct. at 434.  In this case, it was undisputed that if (at step one) the relevant AOM

6   was found to be a product component, then the total profit from that component (step two) could

7   be determined by (i) deducting entire-product expenses from entire-product revenues to calculate

8   Samsung's entire-product profit, and then (ii) multiplying that amount by the percentage of

9   Samsung's entire-phone material cost that was attributable to each AOM.  Tr. 826:9-18 (Davis);

10  1121:4-17 (Wagner).  As shown in Parts I-III below, Samsung is entitled to JMOL on each of

11  these issues.  It follows that Samsung is entitled to JMOL on the ultimate amount of its "total

12  profit" under § 289, or at minimum to a new trial conditioned on remittitur.

13  **I.    SAMSUNG IS ENTITLED TO JMOL ON THE RELEVANT AOMS**

14       As shown above, the jury necessarily found that the D'305 patent was applied to the

15  relevant phones in their entirety and that the D'677 patent was applied only to the relevant phones'

16  display assemblies (not the entire phones).  Those findings eliminated any need for the jury to

17  determine the relevant AOMs for the D'087 patent:  each unit found to infringe the D'087 patent

18  also infringed the D'305 patent, and the jury's entire-phone finding for the D'305 patent meant

19  that such units were already subject to an award of entire-phone profits.

20       While the jury rightly found that Apple had not carried its burden to show that the D'677

21  design was applied to Samsung's *entire* phones, no reasonable jury could find that Apple carried

22  its burden as to the other patented designs at issue as shown in Part I.A.  In fact, as shown in Part

23  I.B-C, no reasonable jury could find that Apple's designs were applied to any AOM other than

24  those that Samsung identified.

25       **A.    Apple's Designs Were Not Applied To The Entire Phones As A Matter Of Law**

26       Samsung is entitled to JMOL that *none* of Apple's patented designs was applied to any

27  entire Samsung product.  This conclusion follows from three related legal rules.

28       ***First***, under basic principles of design-patent law, a design that covers only a limited

exterior component of a complex device like a smartphone can *only* be applied to the *particular component* on which the design appears.  A design patent protects only "that which gives a peculiar or distinctive appearance to the [article of] manufacture," *i.e.*, the claimed design. *Gorham Mfg. Co. v. White*, 81 U.S. 511, 525 (1871), quoted in *Samsung*, 137 S. Ct. at 432; *see In re Zahn*, 617 F.2d 261, 268 (C.C.P.A. 1980).  And a patented design cannot cover an "article[] which [is] concealed or obscure in normal use…, since [its] appearance cannot be a matter of concern."  *In re Stevens*, 173 F.2d 1015, 1019 (C.C.P.A. 1949).  Thus, where a patented design appears only on exterior components of a device that contains concealed internal components, that design cannot be applied to the internal components.  For example, because a patented design covering a piano case appears only on the piano case, as a matter of law the design can be applied only to the piano case (and not to the piano inside).  *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 903-05 (2d Cir. 1915).  Likewise, because a patented design covering a watch case appears only on the watch case, as a matter of law the design can be applied only to the case (and not to the watch).  *See Untermeyer v. Freund*, 50 F. 77 (C.C.S.D.N.Y. 1892), *aff'd*, 58 F. 205 (2d Cir. 1893)).  Similarly, because a patented design covering a refrigerator latch appears only on the latch, as a matter of law the design can be applied only to the latch (and not to the refrigerator). *See Young v Grand Rapids Refrigerator Co.*, 268 F 966, 973-74 (6th Cir. 1920).  As in these cases, because Apple's patented designs for certain externally visible components of a smartphone appears only on those visible components, as a matter of law—and as Apple admitted before the Supreme Court—such designs can be applied only to those external components and are not applied to the internal "chips and wires" of Samsung's phones.  *Samsung Elecs. Co. v. Apple, Inc.*, No. 15-777, Tr. 40, (U.S.) (colloquy with Roberts, C.J.); *see id.* at 43, 51, 52 (Roberts, C.J., Alito & Sotomayor, JJ.).

   **Second**, a design that *appears* on a particular product component is *applied* only to that component, even if *other* components *cause the design to appear* on the component covered by the design.  As the Federal Circuit's predecessor explained in *In re Hruby*, 373 F.2d 997 (C.C.P.A. 1967), "the dependence of the existence of a design on something outside itself" is not a reason to hold that the design was applied to anything beyond the particular AOM on which the design

1  appears.  *Id.* at 1001.  Thus, a patented design covering the shape of a fountain's water spray

2  appears only on the water, so the design is applied only to the water (and not to the mechanism

3  that produces the water spray).  *See id.*

4      **Third**, the trier of fact must identify the relevant AOM based on the infringing product *as

5  it existed at the time of sale*.  Infringement occurs and a claim for Section 289 profits arises upon

6  the *sale* of an AOM to which a patented design has been applied, or of a product in which such an

7  AOM is a component.  *See* 35 U.S.C. §§ 271, 289.  The AOM to which a patented design was

8  applied must therefore be determined by considering whether, *as of the time of sale,* the patented

9  design was applied to the entire product or only a component of the product.  Whether the patented

10  design was applied to or appears on a component *after the component has been separated* from the

11  product is irrelevant, for the relevant AOM is determined as of the time of sale.

12      Under these principles, Apple's designs were not applied to Samsung's entire smartphones.

13  Apple bore the burden to show that they were, Tr. 1232:17-19, but failed to meet that burden.

14      **The D'305 design:**  This GUI design appears *only* on the display screen of Samsung's

15  phones and *not* on any other phone components.  Some internal phone components may *cause* the

16  GUI design to appear on the screen, but it does not follow that the design is *applied* to those

17  components.  *See Hruby,* 373 F.2d at 1001 (design was not applied to fountain mechanism even

18  though mechanism caused fountain design to appear).  Rather, as the PTO has stated, a GUI

19  design is necessarily "for" or "applied to" the "computer screen, monitor, [or] other display panel"

20  on which the design appears, and "[t]he dependence of a computer-generated icon on a central

21  processing unit and computer program for its existence" does *not* mean that the design is "for" or

22  applied to more than just the display screen.  MPEP § 1504.01(a) (citations omitted).  And because

23  the identity of the relevant AOM must be determined at the time of sale, it is immaterial that the

24  display screen is incapable of displaying the design after the screen is separated from the product.

25      In any event, the D'305 patent certainly is not applied to the entire smartphone.  Most

26  smartphone components have nothing to do with that design; a smartphone's external casing, its

27  speakers, or a camera lens, for example, neither show the patented design nor cause it to be shown.

28  The evidence at trial was undisputed that an entire phone was *not* necessary to show the D'305

SAMSUNG'S MOTION FOR JMOL, NEW TRIAL, AND/OR REMITTITUR

design on a display screen.  Tr. 1019:24-1020:20 (Lucente).  Indeed, there is no dispute that the D'305 patent is practiced by products like the iPod (Tr. 962:5-8 (Lucente)) that do *not* contain all the features and components of a smartphone.  For that reason alone, the D'305 design was not applied to Samsung's *entire* smartphones, as a matter of law.

**The D'677 design:**  The jury found that the D'677 design was not applied to Samsung's entire phones, *see supra*, at 2, and as a matter of law it could not have been.  The design appears only on the glass front face of Samsung's phones and nowhere else.  Although juxtaposition with the display assembly may cause the glass front face to appear black, that display assembly is merely the means through which one element of the patented design (the black color) is made to appear *on the glass front face*.  The D'677 design does not appear on the display assembly itself, and it therefore is not applied to that assembly.  *See Hruby*, 373 F.2d at 1001; Tr. 1013:19-1014:17 (Lucente).  In all events, the entire phone is *not* required to cause the front face to appear black, and therefore, the D'677 patent is not applied to an entire phone as a matter of law.

**The D'087 design:**  *A fortiori*, the D'087 design cannot be applied to an entire phone. The claimed design appears only a phone's front face and bezel, and there is no dispute that its appearance does *not* depend on any other component.

**B.     No Reasonable Jury Could Find Under The Court's Four-Factor Test That The Designs Were Applied To Any Article Of Manufacture Other Than The Glass Front Face, Glass Front Face With Bezel, And Display Screen**

Samsung is also entitled to JMOL that, under the Court's four-factor test, the AOMs to which it applied the patented designs are the particular components that Samsung identified at trial.  *See* Tr. 1231:11-1232:1 (four-factor test).

**1.     Phones Found To Infringe Only The D'305 Patent**

With respect to the six phones found to infringe only the D'305 patent (Captivate, Continuum, Droid Charge, Epic 4G, Gem, and Indulge), no reasonable jury could find that the relevant AOM is anything other than a phone's display screen.

**Factor 1**.  The scope of a patented design is a matter of law for the Court to decide.  *Cf. Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).  Here, it is undisputed that the D'305

patent covers a *single*, specific grid of 16 GUI icons.  JX1042; *see* Tr. 962:15-16 (Lucente: patent

claims "one single image of a graphical array of icons").   Apple's expert Kare admitted that

"nothing outside of th[e] image" depicted in the D'305 patent "is actually claimed," that the

patent's scope is "limited to what's inside" the broken lines on the image, that "it's just this one

image which is what is claimed in this patent," and that the patent "doesn't claim any part of the

inside of the phone or the outside of the phone."   Tr. 644:23-645:20, 646:5-7.   The patent

description confirms that the broken lines limit the scope of the claim.  JX1042.2 ("The broken

line showing of a display screen in both views forms no part of the claimed design."); Tr. 1229

(Instruction 26).   And Apple is *precluded* from seeking to expand the claim beyond the single

patented grid because, in order to obtain the D'305 patent, it affirmatively surrendered nearly 200

GUI images that had been included in its application.  *See Pac. Coast Marine Windshields Ltd. v.*

*Malibu Boats, LLC*, 739 F.3d 694, 701-02 (Fed. Cir. 2014); JX1063.117-.128; JX1042.2.

**Factor 2**.  No reasonable jury could find that the D'305 design "is a significant attribute of

the entire product, affecting the appearance of the product as a whole," as would be necessary for

factor two to support an entire-product AOM (U.S. Br. 28; *see* Dkt. 3645 at 11).   As Kare agreed,

this inquiry requires the factfinder to "look at the product as a whole," "assessing the prominence

of this one page of the graphical user interface" in relation to "all th[e] different functions,

features, components" that go into the product.  Tr. 650:1-18.[6]  But the D'305 design does not

even appear on the Samsung phones' home screens (Tr. 389:22-390:12 (Joswiak); Tr. 650:21-

651:13 (Kare)), and Apple did not accuse the home screens of Samsung phones of using the D'305

design, Tr. 661:11-16 (Kare).   Instead, the design appears only on an app menu that "you'd have

to go two screens in" to even see (Tr. 651:1-4 (Kare); *see* Tr. 964:5-14 (Lucente)), and the

Samsung devices allowed users put their most used icons on the home screen so that they rarely

needed to access the app menu (Tr. 967-968 (Lucente)), a fact that Kare did not consider (Tr.

652:1-653:8).   No reasonable jury could find that Apple carried its burden of proof (Tr. 1232:17-

---

[6]   This factor addresses the design's relative prominence within *Samsung's* phones, not the
iPhone.   Tr. 456:12-457:5 (Howarth).   For that reason, much of Apple's presentation was
irrelevant because it concerned the iPhone—not Samsung's phones.  *See, e.g.*, Tr. 606:16-607:6
(Kare testifying that the D'305 was prominent within the iPhone and had "cultural prominence").

19 (Instruction 29)) to establish that the D'305 design affected the appearance of Samsung's phones *as a whole*.

On the other hand, "[i]f the design is a minor component of the product …, or if the product has many other components unaffected by the design," then factor two supports a finding that the relevant AOM is a component. U.S. Br. 28; *see* Dkt. 3645 at 11. A reasonable jury could only find for Samsung on these issues: The relevant phones are in evidence and reveal many design and utilitarian features that are not affected by the patented design (including internal componentry). *See* JX1011 (Captivate); JX1016 (Continuum); JX1025 (Droid Charge); JX1012 (Epic 4G); JX1020 (Gem); JX1026 (Indulge); *see also* DX4569. Indeed, it is undisputed that the phones contain hundreds of components and features that are unaffected by the design. *See, e.g.*, Tr. 629:17-632:1 (Kare: Samsung's phones "are comprised of many parts"); Tr. 969:3-15 (Lucente: Samsung interface made up of "thousands of screens"); Tr. 973:18-19 (Lucente: "There are thousands of components in a smartphone."). Samsung advertising and marketing did not focus on the D'305 design, but instead highlighted other features. DX4606; DX4607; DX4528. And Apple's own survey data shows that while consumers find many phone features to be important to purchasing decisions, the D'305 design is not one of them. *See* DX572.027.

**Factor 3**. No reasonable jury could find that the D'305 design is not conceptually distinct from a smartphone, because the two plainly "respond to different concepts" or ideas. *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 82 (2d Cir. 1916) (*Piano II*). It is undisputed that a GUI image is displayed only for part of the time that the smartphone is turned on (*see* Tr. 389:22-390:12 (Joswiak); Tr. 650:21-651:13, Tr. 652:1-653:8 (Kare)), that a smartphone need not practice the D'305 patent (*e.g.*, JX5012 (Galaxy S II (AT&T)); JX5014 (Galaxy S II (Epic 4G Touch)); JX5015 (Galaxy S II (Skyrocket)); JX5013 (Galaxy S II (T-Mobile))), and that the D'305 design can be displayed on non-phone devices such as Apple's "iPod products" (Tr. 962:5-8 (Lucente)). Display screens likewise occur in myriad devices—televisions, computers, tablets, and so on. Tr. 537:12-13 (Ball); 887:25-888:1 (D. Kim); 941:1-943:10 (Lucente). It is, again, undisputed that a smartphone contains "thousands of components" (Tr. 973:18-19 (Lucente)), such as a battery and a camera, which embody concepts that are distinct both from one another and from a smartphone

1    (*see* Tr. 587:24-588:19 (Ball)).   And it is undisputed that at the relevant times, a typical

2    smartphone practiced more than 200,000 patents, each representing a discrete invention.   Tr.

3    973:23 (Lucente).  No reasonable jury could find that the *concept* of a smartphone is

4    indistinguishable from the *concept* of the D'305 design.

5    **Factor 4**.  It is undisputed that the display screen on which the D'305 design may appear is

6    "made by hand or machine" and "is an article [of manufacture] that is typically part of a device,"

7    and that the Samsung phones "are comprised of many parts" that are physically distinct from the

8    display screens.  Tr. 629:17-632:1 (Kare); *see* Tr. 878:15-23 (J. Kim: Samsung phones contain

9    "hundreds" of components).   The physically separated display screens are in evidence.   JX5001

10   (Captivate); JX5005 (Continuum); JX5009 (Droid Charge); JX5002 (Epic 4G); JX5008 (Gem);

11   JX5010 (Indulge); *see* DX4569 (images of disassemblies).   A display screen "can be physically

12   removed" from an iPhone once it is assembled (*see* Tr. 478:23 (Blevins)), and the same is true of

13   Samsung's phones (*see* Tr. 623:15-624:11 (Kare)); Tr. 660:17-25 (Kare acknowledging that "the

14   display screen" may be "separated from the phone")).   Lucente took a Samsung phone apart and

15   replaced the display screen himself.  Tr. 947:12-950:23.  Nor is it disputed that "all of the parts"—

16   including the display screen—"are manufactured separately and assembled into a smartphone."

17   Tr. 589:17-18 (Ball); Tr. 983:9-984:15 (Lucente: components are "manufactured separately");

18   DX4568 (specification documents showing separate manufacture of display screens).   The display

19   screens are both "sold to Samsung" before assembly and also sold separately for repairs.   Tr.

20   983:24-984:17 (Lucente); Tr. 948:9-15 (Lucente bought a screen repair kit); DX4568.

21   Apple thus could not refute the evidence that the display screen "is manufactured

22   separately from the rest of [Samsung's] product[s]," that the screen can be "physically separate[d]

23   from the product as a whole," and that the screen "can be sold separately" from the phones (Tr.

24   1231:11-1232:1 (Instruction 29)).   And Apple's testimony as to whether the screen is *easily*

25   separated, *regularly* sold separately to consumers, or whether the display screen needs additional

26   components like a power supply to create the infringing image (*e.g.*, Tr. 622-624 (Kare); Tr. 1017-

27   1018 (Lucente cross); Tr. 851-854 (Blackard cross); Tr. 896-897 (D. Kim cross); Tr. 1264-1265

28   (Apple closing argument)), is legally irrelevant.  The Court's test (Tr. 1231:11-1232:1) addresses

only whether one "can" separate or sell the relevant AOMs—whether it is *possible* to do so.  And the Supreme Court made clear that a component of a device may be the relevant AOM "whether sold separately or not."  *Samsung*, 137 S. Ct. at 436.  Under the correct test, no reasonable jury could find that the display screens are not physically separable from Samsung's phones.

In sum, applying the Court's four factors, a reasonable jury would be compelled to conclude that the D'305 design was applied only to a phone's display screen.  As shown (*supra* Part I.A), the design is *not* applied to the numerous phone components on which the design does not appear or the power supply and other components that may *cause* the design to be applied to the display screen.  *See Hruby*, 373 F.2d at 1001.  And Apple never even attempted to show that the D'305 design was applied to any phone component greater than the display screen itself.

### 2.  Phones Found To Infringe Only The D'677 Patent

With respect to the four phones found to infringe only the D'677 patent (Galaxy S II (AT&T), Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), and Galaxy S II (T-Mobile)), no reasonable jury could find that the relevant AOM is anything but the glass front face.  While the jury correctly found that the D'677 design was *not* applied to Samsung's *entire* phones (*see supra*, at 2), the Court should grant JMOL that the relevant AOM is in fact the glass front face.

**Factor 1**.  It is undisputed that the D'677 patent (JX1043) covers what its figures show in solid lines:  "a rectangular, round cornered, black front face."  Tr. 449:6-21 (Howarth); *see* Tr. 503:25-504:12 (Ball: "The solid lines indicate the protected or claimed design," namely "a rectangular surface" with "corners of a specific radius" and "a black top … that's got some reflectivity"); Tr. 562:12-14 (Ball agreeing that "the design claimed is just the front face"); Tr. 1228 (Instruction 26).  Apple's design expert Ball admitted that the patent "doesn't claim the back" of a device (Tr. 554:21) or "whatever is inside, whatever article … or device that this black face is on top of" (Tr. 554:22-24).  And Apple is precluded from seeking to recapture any of the many alternative designs that it surrendered (including for an entire exterior of a device) in order to receive the patent on a design for just a black front face.  *See Pac. Coast Marine*, 739 F.3d at 701-02; *see* JX1064.178-.179, .193, .202.

Moreover, because a design patent protects only *the claimed design*, *see Zahn*, 617 F.2d at

268, the scope of the design is not expanded by language in the patent that goes beyond what is claimed in the drawings. Thus, the words "electronic device" and "article of manufacture" do not alter the scope of the design under factor 1: As Ball admitted (Tr. 552:7-553:8), Apple's attorneys and designers selected those words, and did so *before* this Court adopted the four-factor test. And that language was selected *before* the Supreme Court held that the term "article of manufacture" is not a synonym for "an end product sold to a consumer." *Samsung*, 137 S. Ct. at 436; *see* JX1064 (D'677 file history); Tr. 1231 (Instruction 29: USPTO has not "determined the articles of manufacture in this case"); Tr. 955:4-9 (Lucente: the phrase "electronic device" does not "tell you anything about the scope of the claim"); Tr. 958:21-960:5 (similar); Tr. 955:16-956:13 (explaining same by reference to patent titled "Electronic Device" but claiming only a design for a small external slot (DX4561)).

Matter that is expressly *disclaimed* via broken lines likewise is not within the scope of the claim. *See* Tr. 1228 (Instruction 26: "The broken lines in the D'677 patent constitute unclaimed subject matter."); JX1064, at 14, 178, 200 (D'677 file history). As Ball admitted, "the entire phone isn't shown in solid line[s], so the entire design of the phone isn't claimed." Tr. 504:21-22; *see* Tr. 554:9-13 (Ball: broken lines "indicate[] areas that aren't part of the claim").

**Factor 2**. No reasonable jury could find that the D'677 design is a prominent feature relative to the whole of a smartphone. The design does not "affect[] the appearance of the product as a whole" (U.S. Br. 28; *see* Dkt. 3645 at 11), but appears only on "the front face of the Samsung phone" (Tr. 958:4-5 (Lucente)). And even the effect on the front face is minor, since "simply changing a small detail" can render a phone non-infringing. Tr. 970:13-971:2 (Lucente).

Conversely, it is again undisputed that Samsung's phones contain hundreds of components that are unaffected by the D'677 design. *See supra*, at 10; Tr. 629:17-632:1 (Kare); Tr. 973:18-19 (Lucente). Ball admitted that Samsung's phones "have features, such as taking pictures, taking video, [and] sending texts," that Samsung "advertise[s] those features extensively," and that Apple's "patents do not cover those prominent features." Tr. 587:3-11. The phones are in evidence (JX1031; JX1034; JX1035; JX1033), and they reveal many features and components *other than* the D'677 design. Samsung's advertising and marketing likewise highlighted design

1   and utilitarian features *other than* the phones' black front faces.  *See* DX4606; DX4607; DX4528;

2   *see also* DX572.027 (Apple survey showing features most significant to purchasing decisions). No

3   reasonable jury could find the D'677 design to be prominent within Samsung's phone as a whole.

4       **Factor 3**. No reasonable jury could fail to find that the concept of the D'677 design is

5   distinct from the concept of a smartphone.  Just as the design for a book's cover is conceptually

6   distinct from a book, and just as the design for a piano case is conceptually distinct from a piano,

7   *see Piano II*, 234 F. at 82, the concept of a smartphone's front face is distinct from the concept of

8   the smartphone itself:  the smartphone and the front face represent "very different ideas."  Tr.

9   972:21-973:12 (Lucente).  While Ball presented a printer with a "flat front face" "control panel" as

10  purported evidence that a front face is conceptually identical to a smartphone (Tr. 537:12-16), this

11  example shows the *opposite*:  A flat front face design like the D'677 design can be used in any

12  number of *different* devices (not just in a phone), because it represents *its own* discrete idea.  And

13  Ball also admitted that a glass front face is conceptually different from a phone's other

14  components and inventions, such as its battery and camera.  Tr. 587:24-588:10. No reasonable

15  jury could find the D'677 design to be conceptually indistinct from a phone as a whole.

16      **Factor 4**. It is undisputed that Samsung's glass front faces are manufactured separately

17  from the rest of a phone.  Tr. 589:16-18 (Ball); *see* Tr. 983:9-17 (Lucente); DX4568

18  (manufacturing specification showing glass manufactured separately); Tr. 889-890 (D. Kim);

19  DX4520 (Samsung window glass spreadsheet); Tr. 894-895 (D. Kim regarding DX4520); Tr. 912-

20  913 (Sheppard regarding repair glass component); Tr. 1051-1052 (Wagner); *see also* Tr. 395:10-

21  12 (Joswiak discussing iPhone); Tr. 483:10-22 (Blevins discussing iPhone); DX4549 (Apple

22  agreement with Dow Corning for front glass).  It is also undisputed that the glass front faces can

23  be physically separated from the phones, including for repair.  Tr. 540:11-13, 588:21-25 (Ball); Tr.

24  912-913 (Sheppard regarding repair process for Samsung phones); Tr. 460:20-461:13 (Howarth

25  agreeing that "glass front faces can be removed from [Samsung's] phones"); *see also* Tr. 395:21-

26  23 (Joswiak agreeing that iPhone's glass front face "can … be physically separated from the

27  product as a whole," "for a repair"); Tr. 475:19-24 (Blevins; similar).  The separated components,

28  including front glass, are in evidence (JX5012; JX5014; JX5015; JX5013), as are photographs of

disassemblies (DX4569) and of a teardown that Apple performed on a Samsung phone (DX2519). The glass front faces can be sold separately, including for repairs and replacement.  Tr. 589:19-25 (Ball); Tr. 466:14-16 (Howarth agreeing that "a lot of people  break the glass on their phones and get that replaced"); Tr. 883:16-884:4 (J. Kim) (Samsung sells replacement glass faces); Tr. 896:24-898:10 (D. Kim; similar); Tr. 912:8-913:14 (Sheppard; similar); Tr. 983:18-984:4 (Lucente; similar); DX4516 (compilation of Samsung repair parts, including glass faces, for sale online); Tr. 1051:1-1052:15 (Wagner); *see also* Tr. 484:17-485:2 (Blevins admitting iPhone glass is sold separately for replacement).  On these undisputed facts, no reasonable jury could find that the glass front face on which the D'677 design appears is *not* a physically distinct AOM from the phone as a whole.

As with the D'305 patent (*see supra*, at 11-12), Apple's evidence that Samsung did not typically sell the glass face component to consumers and that the glass needs something behind it to create the consistent black color is legally irrelevant.  *See, e.g.*, Tr. 851-854 (Blackard cross); Tr. 883-884 (J. Kim cross); Tr. 896-897 (D. Kim cross); Tr. 1013-1014 (Lucente cross); Tr. 1264 (Apple closing argument).  Those issues are irrelevant to this factor as described by the Court (Tr. 1231:11-1232:1), and any rule that the component must be regularly sold separately would conflict with the Supreme Court's holding that a component may be the relevant AOM "whether sold separately or not."  *Samsung*, 137 S. Ct. at 436.

Although the jury must have found (*see supra*, at 2) that the D'677 patent was applied to the display assemblies (not the glass front faces alone), the D'677 patent covers only a design for a front face with a particular shape and color.  While the color may be created by juxtaposition with display components that sit behind the glass face, those components are merely the *means* through which the color is applied *to the front face* of the phone.  As a matter of law, the design is not *applied* to those components, but rather *is applied by them* to the front face.  *See Hruby*, 373 F.2d at 1001.  Thus, no reasonable jury could have found that the D'677 design was applied to any portion of Samsung' phones beyond the glass front faces.

### 3.    Phones Found To Infringe The D'305 And D'677 Patents

With respect to the four phones found to infringe both the D'305 and the D'677 (Fascinate,

Galaxy S Showcase, Infuse 4G, and Mesmerize), no reasonable jury could find that the designs were applied to any AOM other than the display screen and the glass front face, respectively, for the reasons above.

### 4.    Phones Found To Infringe The D'305, D'677, And D'087 Patents

With respect to the two phones found to infringe all three of Apple's design patents (Galaxy S 4G and Vibrant), no reasonable jury could find that the D'305 and D'677 designs were applied to any AOM other than the display screen and glass front face, respectively, for the same reasons.  As to the D'087 patent, no reasonable jury could find that the design was applied to any AOM other than the glass front face plus bezel.

**Factor 1**.  It is undisputed that the D'087 patent (JX1041) claims a design for a "flat front face and [a] bezel."  Tr. 507:2-12 (Ball); *see* Tr. 562:12-21 (Ball; similar); Tr. 953:6-9 (Lucente; similar).  Howarth admitted that when he put the Galaxy S 4G's glass front face together with its corresponding bezel, the effect was to create a design that is "really similar" to (*i.e.*, a "colorable imitation" of, 35 U.S.C. § 289) the D'087 design.  Tr. 453:13-455:8.  The D'087 patent "doesn't … claim the internal component[s]" of a phone.  Tr. 953:23-954:2 (Lucente); *see* Tr. 507:13-15 (Ball: "[t]he actual claim [of the D'087] doesn't" "cover an entire phone").  The claimed design, moreover, does not include either the words in the patent or the broken lines in its figures.  *See supra*, at 6; *Zahn*, 617 F.2d at 268.  The description, however, confirms that the claim does *not* extend to anything in broken lines.  JX1041, at 4; Tr. 1229 (Instruction 26).  And prosecution history estoppel again bars Apple from recapturing the multiple different designs that it surrendered in order to secure the D'087 patent on the front face and bezel, including designs for an entire exterior of a device.  *Pac. Coast Marine*, 739 F.3d at 701-02; *see* JX1062, at 129, 165.

**Factor 2**.  No reasonable jury could find that the D'087 design is relatively prominent within Samsung's phones in the sense that it "affects the appearance of the product as a whole" (U.S. Br. 28; *see* Dkt. 3645, at 11).  To the contrary, the design affects the appearance of only "the front face and the bezel of the Samsung phones that infringe the D'087 patent" (Tr. 954:5-6 (Lucente)), and there again is no dispute that the phones (JX1019; JX1010) contain thousands of other components whose appearance is unaffected by the D'087 design (*see supra*, at 10).

**Factor 3**. Just as the D'677 front face design is conceptually distinct from a smartphone in that a front face may be used in other products (*see supra*, at 14), the same is true of the D'087 front face and bezel design.  As Howarth explained, the idea of a bezel is traditionally associated with a clock or watch face, where the bezel acts to protect a piece of glass from damage.  Tr. 431:18-24.  Given that admission, there can be no dispute that the *concept* of a front face and bezel is distinct from the *concept* a phone:  the two relate to distinct ideas.  And, again, it is also undisputed that Samsung's smartphones contain other components, such as the battery and camera, that are conceptually distinct from Apple's design.  Tr. 587:24-588:10 (Ball).   No reasonable jury could find that the D'087 design is conceptually indistinguishable from Samsung's smartphones.

**Factor 4**.  Finally, no reasonable jury could conclude that the glass front face and bezel are not physically separable components of Samsung's smartphones.  There is no dispute that those parts are manufactured separately from the rest of the product before it is assembled.  Tr. 589:17-18 (Ball: "all of the parts are manufactured separately and assembled into a smartphone"); Tr. 984:6-8 (Lucente: bezel was separately manufactured and sold to Samsung); DX4568 (manufacturing specification documents showing glass front face and bezel manufactured separately); *see also* Tr. 485:3-8 (Blevins: iPhone bezel is "separately manufactured").  Nor is there a dispute that the front face and bezel can be physically separated from the phones.  *See* Tr. 461:10-13 (Howarth admitting that "it's possible to disassemble" a Samsung phone); Tr. 540:11-13 (Ball acknowledging that the front face and bezel can be physically separated from a Samsung phone); Tr. 588:11-24 (Ball; similar); JX5007, JX5000 (disassembled components); DX4569 (photos of disassemblies); DX2519 (Apple teardown of Vibrant); *see also* Tr. 477:20-478:4 (Blevins:  bezel can be physically separated from the iPhone); Tr. 485:22-486:3 (Blevins:  bezel is a "somewhat commonly replaced" part of an iPhone).  And it is undisputed that the front face and bezel can be sold separately.  *See, e.g.*, Tr. 984:6-8 (Lucente); *see also* Tr. 485:22-486:3 (Blevins discussing iPhone); DX4516 (compilation of repair parts for sale online).

Apple's assertions that the front face and bezel are not sold directly to consumers, rather than on the wholesale level and for repairs, *see, e.g.*, Tr. 851:4-854:6 (Blackard cross); Tr. 883:14-

884:3 (J. Kim cross); Tr. 896:19-897:5 (D. Kim cross); Tr. 1013-1014 (Lucente cross); Tr. 1264 (Apple closing argument), thus cannot provide a legally sufficient basis to conclude that the D'087 patent is applied to Samsung's entire phones.  Factor four asks only whether it is *possible* to separate and to sell the components separately (Tr. 1231:11-1232:1), and (again) a product component may be the relevant AOM "whether sold separately or not," *Samsung*, 137 S. Ct. at 436.

In sum, under the four-factor test, a reasonable jury would be compelled to conclude that the D'087 design was applied only to the glass front faces and bezels of Samsung's phones.

### C.  No Reasonable Jury Could Find Under The Correct Two-Factor Test That The Designs Were Applied To Any Article Of Manufacture Other Than Those That Samsung Identified

As Samsung has previously explained (*e.g.*, Dkt. 3592-2, at 2-4; Dkt. 3723, at 3-5; Tr. 1351:15-18, 1352:21-23), determination of the relevant AOM under § 289 requires consideration only of the scope of the design and the physical nature of the product.  Factors 2 and 3 of the Court's test have no basis in the statute.  Under the correct two-factor test, and based on the evidence above, no reasonable jury could  conclude that the relevant AOMs are anything other than the components that Samsung has identified.  The Court should grant JMOL to Samsung.

## II.  SAMSUNG IS ENTITLED TO JMOL ON THE PERCENTAGES OF ITS ENTIRE-PHONE PROFITS THAT ARE ATTRIBUTABLE TO ITS COMPONENT AOMS

After identifying the relevant AOMs, the next step is to determine the amount of total profit from those AOMs.  *See Samsung*, 137 S. Ct. at 434.  It was undisputed at trial that, if the relevant AOMs are components of Samsung's phones, then the profit from each component may be reliably determined by multiplying Samsung's profit from the entire phone by the cost of the relevant component taken as a percentage of Samsung's entire-phone material cost.  *See* Tr. 826:9-18 (Davis); 1121:4-17 (Wagner).  Therefore, on the undisputed record here, the fact-finder's task upon determining that the relevant AOMs were components of Samsung's phones was to ascertain the percentages of entire-phone profit that are attributable to those component AOMs.

No reasonable jury could reject the undisputed evidence on this issue.  Samsung presented evidence of each relevant component's cost and the total material cost of each relevant phone,

from which Wagner calculated each relevant component's cost percentage—and, thus, the relevant profit percentage.  DX 4568 (Samsung components); Tr. 1058:5-1059:12 (Wagner testifying to window glass cost); Tr. 894:14-895:11 (D. Kim confirming window glass data); Tr. 913:15-17 (Sheppard testifying that window glass cost is "$3 to $5"); Tr. 1054:6-20 (Wagner testifying to bezel cost); Tr. 1053:7-16 (Wagner testifying to display assembly cost); DX4520 (Samsung's window glass cost); DX4509 (Samsung's costed bill of materials); Tr. 1123:21-1124:9 (Wagner testifying to cost percentages); DX4536.002-.004 (cost percentages).  Apple did not contest the reliability of the underlying data, Tr. 787:10-788:13 (Davis), and presented no rebuttal testimony or criticism of Wagner's profit-percentage calculations.  A reasonable jury thus would have no basis to reject these percentages.

## III.   SAMSUNG IS ENTITLED TO JMOL ON THE AMOUNT OF DEDUCTIBLE OPERATING EXPENSES

Regardless of whether the relevant AOMs are Samsung's entire phones or components thereof, the jury was required to calculate Samsung's profit on the entire phones in order to determine the profit from the relevant AOMs.  To determine entire-phone profit, deductible expenses are subtracted from revenues.  Here, the parties disputed at trial whether certain operating expenses (sales, marketing, general and administrative (G&A), and research and development (R&D) costs) are deductible.  Samsung is entitled to JMOL that they are.[7]

### A.   Reasonably Allocated Operating Expenses Are Deductible Under § 289 As A Matter Of Law

It is well established that operating expenses (sometimes referred to as overhead, or fixed

---

[7]   Although in prior trials Samsung bore the burden of proving its expenses, the Supreme Court's decision and this Court's subsequent decisions on remand require revisiting the issue.  *See Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 628 (Fed. Cir. 2015) (intervening change in law triggers exception to law of the case doctrine).  As the Court has ruled, Apple bears the burden to "identify[] the relevant article of manufacture for the purpose of § 289 and [to] prove[e] the defendant's total profit on [the relevant] article." Dkt. 3530, at 24.  The identification of the relevant costs is an aspect of determining the defendant's total profit, and the burden on each issue should accordingly lie with the same party—here, Apple.  Moreover, the law is clear that in general "[t]he burden of proving damages falls on the patentee," *Lucent*, 580 F.3d at 1324, and the legislative history of § 289 shows Congress's intent that the patentee may *only* recover "the profit actually made on the infringing article *if he can prove that profit*."  H.R. Rep. No. 49-1966, at 3 (emphasis added).  In any case, for the reasons set forth in text, Samsung is entitled to JMOL on the deduction of costs regardless of who bore the burden.

costs) should be deducted from revenues to determine "total profit" under § 289 so long as they are "attributable" to the sales at issue.  *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998).  The Federal Circuit affirmed a judgment that included such deductions in *Nike*, *id.*, and other courts have long applied the same basic rule.  For example, in *Schnadig Corp. v. Gaines Manufacturing Co.*, 620 F.2d 1166 (6th Cir. 1980), the Sixth Circuit allowed a deduction of two-thirds of the defendant's fixed costs because they were reasonably "allocable to the infringing production."  *Id.* at 1175.  More recently in *Sunbeam Products, Inc. v. Wing Shing Products (BVI) Ltd.*, 311 B.R. 378 (S.D.N.Y. 2004), the court ruled that "portions of fixed costs are deductible in calculating profit to the extent those portions can be attributed to the infringing product." *Id.* at 401.  The Federal Circuit affirmed, finding no legal error in such a deduction.  153 F. App'x 703 (Fed. Cir. 2005).  *See also, e.g.*, *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497-98 (D. Minn. 1980) (deducting 60% of fixed costs that were reasonably allocated to infringing product).  In the similar context of copyright, courts recognize that the party seeking to prove a deduction need only offer a "reasonably acceptable formula," *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985)—in other words, a "fair, accurate, and practical method of allocating the implicated overhead to the infringement," *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 105 (2d Cir. 1999) (cited in Dkt.  2947, at 17).

Courts thus recognize that a rule permitting deduction only of variable costs, and not of any operating expenses and fixed costs, would be "economically unrealistic" and contrary to common sense.  *Bergstrom*, 496 F. Supp. 476 at 498.  Indeed, "[t]he basic truth [is] that no article of manufacture can be profitable in a real sense if it cannot bear its proportionate share of the fixed costs." *Schnadig*, 620 F.2d at 1172 (citing *Tremaine v. Hitchcock & Co.*, 90 U.S. 518, 529 (1874)); *accord Sunbeam*, 311 B.R. at 401 (rejecting "dubious" argument that defendant "should not be allowed to deduct any portion of a fixed cost"); *Oracle Am., Inc. v. Google Inc.*, 2012 WL 4017808, *4-5 (N.D. Cal. Apr. 10, 2012) (in copyright case, it would be "certainly unjust [to] giv[e] the plaintiffs everything" by refusing to deduct any operating expenses).  Thus, the correct rule of law is that in calculating "total profit" under § 289, operating expenses should be deducted from revenues so long as they are reasonably allocable to the defendant's infringing sales.

**B.      No Reasonable Jury Could Find That Samsung's Expenses Were Not Reasonably Allocated To The Infringing Phones**

Under this settled standard, Samsung is entitled to JMOL because no reasonable jury could have failed to find that its operating expenses were reasonably allocable to the infringing sales.

*First,* Samsung indisputably incurred some $696 million in operating expenses (sales, marketing, G&A, R&D) in connection with the sale of the infringing products. *See* Tr. 735:4-11, 736:20-22, 738:6-8 (Davis admissions); *see* Tr. 906:10-907:12 (Sheppard); Tr. 1031:11-24 (Wagner); Tr. 1046:17-1047:19 (Wagner); Tr. 1152:8-16 (Wagner); Tr. 1155:13-25 (Wagner). Of these expenses, roughly 44% related to sales and marketing and roughly 32% related to R&D, Tr. 770:16-771:6 (Davis admissions), leaving about 24% related to G&A. There was no dispute about any of this at trial, and no contrary evidence was introduced.

*Second,* the data underlying these calculations (DX676) was indisputably reliable. This data was entered into SAP database software on an hourly basis and was subject to both internal Samsung checks and routine outside audits. Tr. 901:20-902:12, 911:2-20 (Sheppard). Apple did not dispute that Samsung's data was reliable and did not introduce any contrary evidence. In fact, Davis expressly admitted that she had "no information that would suggest that anybody's been monkeying around" with the data. Tr. 787:10-788:13.

*Third,* no reasonable jury could conclude that these operating expenses were not reasonably allocable to Samsung's infringing phones. The undisputed evidence showed that Samsung allocated these costs to its products on a monthly basis (Tr. 783:5-8 (Davis); 1037:13-1038:4 (Wagner)) and in the ordinary course of business (Tr. 907:23-908:16 (Sheppard)). Samsung used an allocation methodology that is such a "common practice" among accountants that it is part of the accounting curriculum; indeed, it is the *only* way that a company like Samsung could calculate its profits on a per-product basis (Tr. 908:17-909:5 (Sheppard)). Samsung's allocation methodology is "the most common allocation methodology in business" (Tr. 1045:2-22 (Wagner)). Other Samsung entities allocate their expenses in the same way (Tr. 938:8-11 (Sheppard)), as do most major, multi-product-line companies (Tr. 1037:13-1038:1 (Wagner); *see also* 782:12-783:1 (Davis)).

Moreover, the evidence was unequivocal that Samsung's operating expenses have a "clear relationship" to Samsung's profits (Tr. 1039:22 (Wagner); *see* Tr. 1035:1):   The operating expenditures are "necessary to create and sell the product[s]" (Tr. 907:20-22 (Sheppard)), and without (for example) Samsung's marketing and sales activities its "phones wouldn't have been sold," Tr. 1034:23-1035:9 (Wagner; marketing); *see* Tr. 1038:16-1040:12 (Wagner; similar as to sales expenses).   Similarly, Samsung "incurred" its R&D costs "during the period [when] the [relevant] phones [were] being sold," and therefore "expensed" them during that period—as is "required by the accounting standards" to give a "reasonable estimate" of Samsung's R&D costs for the phones at issue.   Tr. 1040:24-1043:10 (Wagner); *see* Tr. 1044:6-20 (Wagner; similar for G&A expenses).   The evidence thus overwhelmingly shows that Samsung's relevant operating expenses are deductible because there is a reasonable (and indeed necessary) "connection" between the expenses and Samsung's sales.   *See* Tr. 1033:13-1034:3, 1176:4-11 (Wagner).

Remarkably, *none* of this was disputed at trial as an *evidentiary* matter.   Apple did not dispute that Samsung's allocation methodology was reasonable and reliable—neither Davis nor any other witness did so, and indeed Apple could not have done so because it uses the same methodology itself.   DX4554; Tr. 776:23-777:2 (Davis); 1045:2-22 (Wagner).   Moreover, Davis admitted that Samsung's data was reliable, Tr. 787:10-788:13, and further admitted that Samsung's expenses for marketing, sales, and R&D were all related to the sales of Samsung's phones because it is not possible to produce or sell a smartphone without such costs, Tr. 770:1-15. Apple thus did not contest the deductibility of Samsung's expenses as a *factual* matter at all.

Instead, Apple sought to confuse the jury as to the *law*.   This Court instructed the jury that costs other than the costs of goods "may be included as deductible expenses if they are directly attributable to the sale or manufacture of the infringing products *resulting in a nexus between the infringing products and the expenses*."   Tr. 1233:11-15 (emphasis added).   Ms. Davis admitted that there need only be "some relationship between the expense and the revenue" for the "nexus" requirement to be met, Tr. 769:20-25, and thus that requirement permits the deduction of allocated costs—in fact, *Davis herself* deducted some fixed costs that "ha[d] to be allocated" to determine profits.   Tr. 777:6-17.   But rather than acknowledge that operating expenses *are* deductible if they

have a "nexus" to the infringing products, Apple leaned on the words "directly attributable" (*see, e.g.*, Tr. 734:20-735:15 (Davis)) and urged the jury in closing arguments to disallow Samsung's operating expenses *simply because they were allocated, rather than product specific, costs*.   Tr. 1268:18-1269:16 (Apple closing argument).  That is wrong as a matter of law because reasonably allocable expenses must be deducted, as shown above.  And on this motion, the Court must "apply the law as it should be," even if the jury instructions said (or were characterized by Apple to say) something different.  *Fisher*, 558 F.3d at 1074.[8]

At both prior trials, the juries deducted at least portions of Samsung's operating expenses. *See* Dkt. 1930 (2012 verdict deducting 60% of Samsung's related operating expenses); Dkt. 2822 (2013 verdict deducting 38.6% of Samsung's related operating expenses)).  No reasonable jury could have parted ways with both prior juries to find that *none* of Samsung's operating expenses were deductible.   Apple *did not dispute* that Samsung's operating-expense allocation was reasonable, and its claim that such expenses are not deductible as a *legal* matter is simply wrong. The Court should rule that Samsung's operating expenses are deductible as a matter of law.

## IV.   SAMSUNG IS ENTITLED TO JMOL ON THE AMOUNT OF DESIGN-PATENT DAMAGES OR AT MINIMUM TO REMITTITUR OR A NEW TRIAL

### A.   The Record Lacks Sufficient Evidence To Support The Damages Verdict

As set forth above, Samsung is entitled to JMOL on each of the issues subsidiary to the ultimate calculation of its "total profit" under § 289:  a reasonable jury would be constrained to adopt Samsung's identification of the relevant component AOMs (the glass front face (D'677); glass front face with bezel (D'087); and display screen (D'305)), and to deduct Samsung's operating expenses.  Based on those findings, which the trial record compels, the Court should grant JMOL that Samsung's "total profit" under § 289 is **$28,085,061**.  Wagner Dec. ¶ 23; DX4537.

In the alternative, if the Court grants JMOL on some issues but not others, the Court should "work[] the math backwards" and enter JMOL as to the total amount of damages in the

---

[8]  Notably, Davis admitted that "directly attributable" is not a term used in generally accepted accounting principles and she had not previously applied that standard.  Tr. 768:24-769:13; 780:8-14.

amount yielded by the following flowcharts. *Lucent*, 580 F.3d at 1336-38. The citations are to the Wagner Declaration, submitted herewith, which details the calculations.[9]



**B.** **The Court Should At Minimum Grant A New Trial And/Or Remittitur**

If the Court does not grant JMOL, it should at minimum order a new trial under Fed. R.

---

[9] If the D'305 design were applied to Samsung's entire phones, no additional award would be permitted for infringement of the D'087 patent (since all phones that infringed the D'087 patent also infringed the D'305 patent). Conversely, if the D'087 design were applied to Samsung's entire phones, then no additional award based on the D'305 patent would be permitted for units found to infringe the D'087 patent. *See supra*, at 2.

Civ. P. 59.  Such relief is warranted where (*inter alia*) "'the verdict is against the weight of the evidence, [or] the damages are excessive,'" *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007), or where necessary to prevent a "miscarriage of justice," *Rattray v. City of National City*, 51 F.3d 793, 800 (9th Cir. 1994).  The Court "is not required to view the trial evidence in the light most favorable to the verdict," and "can weigh the evidence and assess the credibility of the witnesses."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  A new trial may be conditioned on remittitur of damages to the maximum amount sustainable by the evidence.  *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1085 (9th Cir. 2014).

Here, even if the $533 million design-patent verdict were supported by substantial evidence (it is not), the award is excessive and against the weight of the evidence for the reasons above.  The weight of the evidence is against the jury's findings regarding the identities of the relevant AOMs.  And even accepting those findings *arguendo*, the jury's irrational failure to deduct *any* of Samsung's operating expenses inflated the amount of the damages award by some ***$380.6 million***—accounting for more than ***71% of the verdict*** (*see* Wagner Decl. ¶ 22).  This is a textbook case of excessive damages, and the Court should therefore grant a new trial.  *See, e.g.*, *Molski*, 481 F.3d at 732 (reversing denial of new trial where "undisputed testimony" showed that verdict "was against the clear weight of the evidence"); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012) (reversing denial of new trial where damages award was "out of line with economic reality"); *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010) (reversing denial of new trial in absence of a "plausible explanation[] for the verdict").  The new trial may be conditioned on remittitur to the maximum amount supported by the evidence.  *See* Part IV.A, *supra*.

## CONCLUSION

The Court should grant the motion and enter JMOL as set forth above.  In the alternative, the Court should order a new trial, which may be conditioned upon an appropriate remittitur.

1    DATED:  June 7, 2018                   Respectfully submitted,

2                                           QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
3

4                                    By  _/s/ Victoria F. Maroulis_____

5                                         John B. Quinn
                                          Kathleen M. Sullivan
6                                         William C. Price
                                          Michael T. Zeller
7                                         Kevin P.B. Johnson
                                          Victoria F. Maroulis
8

9                                         Attorneys for SAMSUNG ELECTRONICS CO.,
                                          LTD., SAMSUNG ELECTRONICS AMERICA,
10                                        INC., and SAMSUNG TELECOMMUNICATIONS
                                          AMERICA, LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28